# Exhibit 9
# Part 1 of 5



# NFL
# COLLECTIVE
# BARGAINING
# AGREEMENT
## 2002-2008

COLLECTIVE BARGAINING AGREEMENT
BETWEEN
THE NFL MANAGEMENT COUNCIL
AND
THE NFL PLAYERS ASSOCIATION
As Amended January 8, 2002



# TABLE OF CONTENTS

**INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

**PREAMBLE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

**ARTICLE I DEFINITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4
    Section 1.  General Definitions . . . . . . . . . . . . . . . . . . . . . . . . .4
    Section 2.  Free Agency Definitions . . . . . . . . . . . . . . . . . . . . . .5
    Section 3.  Salary Cap Definitions . . . . . . . . . . . . . . . . . . . . . . .6
    Section 4.  Further Definitions . . . . . . . . . . . . . . . . . . . . . . . . .7

**ARTICLE II GOVERNING AGREEMENT** . . . . . . . . . . . . . . . . . .9
    Section 1.  Conflicts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9
    Section 2.  Implementation . . . . . . . . . . . . . . . . . . . . . . . . . . . .9
    Section 3.  Management Rights . . . . . . . . . . . . . . . . . . . . . . . . .9
    Section 4.  Rounding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

**ARTICLE III SCOPE OF AGREEMENT** . . . . . . . . . . . . . . . . . . .10
    Section 1.  Scope . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10
    Section 2.  Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

**ARTICLE IV NO STRIKE/LOCKOUT/SUIT** . . . . . . . . . . . . . . . .11
    Section 1.  No Strike/Lockout . . . . . . . . . . . . . . . . . . . . . . . . . .11
    Section 2.  No Suit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11
    Section 3.  Releases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

**ARTICLE V UNION SECURITY** . . . . . . . . . . . . . . . . . . . . . . . .13
    Section 1.  Union Security . . . . . . . . . . . . . . . . . . . . . . . . . . . .13
    Section 2.  Check-off . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13
    Section 3.  NFLPA Meetings . . . . . . . . . . . . . . . . . . . . . . . . . .13
    Section 4.  NFLPA Player Group Licensing Program . . . . . . . . . .13
    Section 5.  Disputes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14
    Section 6.  Procedures for Enforcement . . . . . . . . . . . . . . . . . .14
    Section 7.  NFLPA Responsibility . . . . . . . . . . . . . . . . . . . . . .15
    Section 8.  Orientations . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

**ARTICLE VI NFLPA AGENT CERTIFICATION** . . . . . . . . . . . . . .17
    Section 1.  Exclusive Representation . . . . . . . . . . . . . . . . . . . . .17
    Section 2.  Enforcement . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17
    Section 3.  Penalty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

**ARTICLE VII PLAYER SECURITY** . . . . . . . . . . . . . . . . . . . . . . .19
    Section 1.  No Discrimination . . . . . . . . . . . . . . . . . . . . . . . . .19
    Section 2.  Personal Appearance . . . . . . . . . . . . . . . . . . . . . . .19

**ARTICLE VIII CLUB DISCIPLINE** . . . . . . . . . . . . . . . . . . . . . **20**
    Section 1.  Maximum Discipline . . . . . . . . . . . . . . . . . . . .20
    Section 2.  Published Lists  . . . . . . . . . . . . . . . . . . . . . . . .21
    Section 3.  Uniformity  . . . . . . . . . . . . . . . . . . . . . . . . . . .21
    Section 4.  Disputes . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21
    Section 5.  Deduction  . . . . . . . . . . . . . . . . . . . . . . . . . . .21

**ARTICLE IX NON-INJURY GRIEVANCE** . . . . . . . . . . . . . . . .**22**
    Section 1.  Definition  . . . . . . . . . . . . . . . . . . . . . . . . . . .22
    Section 2.  Initiation  . . . . . . . . . . . . . . . . . . . . . . . . . . . .22
    Section 3.  Filing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22
    Section 4.  Appeal  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22
    Section 5.  Discovery  . . . . . . . . . . . . . . . . . . . . . . . . . . . .23
    Section 6.  Arbitration Panel . . . . . . . . . . . . . . . . . . . . . .23
    Section 7.  Hearing  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24
    Section 8.  Arbitrator's Decision and Award  . . . . . . . . . .25
    Section 9.  Time Limits  . . . . . . . . . . . . . . . . . . . . . . . . . .25
    Section 10.  Representation . . . . . . . . . . . . . . . . . . . . . . . .25
    Section 11.  Costs  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26
    Section 12.  Payment  . . . . . . . . . . . . . . . . . . . . . . . . . . . .26
    Section 13.  Grievance Settlement Committee  . . . . . . . . . . .26

**ARTICLE X INJURY GRIEVANCE** . . . . . . . . . . . . . . . . . . . . .**27**
    Section 1.  Definition  . . . . . . . . . . . . . . . . . . . . . . . . . . .27
    Section 2.  Filing  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27
    Section 3.  Answer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27
    Section 4.  Neutral Physician  . . . . . . . . . . . . . . . . . . . . .28
    Section 5.  Neutral Physician List . . . . . . . . . . . . . . . . . . .28
    Section 6.  Appeal  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29
    Section 7.  Arbitration Panel . . . . . . . . . . . . . . . . . . . . . .29
    Section 8.  Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29
    Section 9.  Miscellaneous  . . . . . . . . . . . . . . . . . . . . . . . . .30
    Section 10.  Expenses  . . . . . . . . . . . . . . . . . . . . . . . . . . . .31
    Section 11.  Pension Credit . . . . . . . . . . . . . . . . . . . . . . . .31
    Section 12.  Payment  . . . . . . . . . . . . . . . . . . . . . . . . . . . .31
    Section 13.  Presumption of Fitness  . . . . . . . . . . . . . . . . . .31
    Section 14.  Playoff Money . . . . . . . . . . . . . . . . . . . . . . . .32
    Section 15.  Information Exchange . . . . . . . . . . . . . . . . . . .32
    Section 16.  Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

**ARTICLE XI COMMISSIONER DISCIPLINE** . . . . . . . . . . . . . . .**33**
    Section 1.  League Discipline  . . . . . . . . . . . . . . . . . . . . . .33
    Section 2.  Time Limits . . . . . . . . . . . . . . . . . . . . . . . . . . .33
    Section 3.  Representation  . . . . . . . . . . . . . . . . . . . . . . . .33
    Section 4.  Costs  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

Section 5. One Penalty . . . . . . . . . . . . . . . . . . . . . . . . .34
Section 6. Fine Money . . . . . . . . . . . . . . . . . . . . . . . . .34

**ARTICLE XII INJURY PROTECTION** . . . . . . . . . . . . . . . . . **35**
Section 1. Qualification . . . . . . . . . . . . . . . . . . . . . . . .35
Section 2. Benefit . . . . . . . . . . . . . . . . . . . . . . . . . . . .35
Section 3. Disputes . . . . . . . . . . . . . . . . . . . . . . . . . . .35

**ARTICLE XIII COMMITTEES** . . . . . . . . . . . . . . . . . . . **37**
Section 1. Joint Committee . . . . . . . . . . . . . . . . . . . . . .37
Section 2. Competition Committee . . . . . . . . . . . . . . . . .38
Section 3. Player/Club Operations Committee . . . . . . . . . .38

**ARTICLE XIV NFL PLAYER CONTRACT** . . . . . . . . . . . **39**
Section 1. Form . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39
Section 2. Term . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39
Section 3. Changes . . . . . . . . . . . . . . . . . . . . . . . . . . .39
Section 4. Conformity . . . . . . . . . . . . . . . . . . . . . . . . .40
Section 5. General . . . . . . . . . . . . . . . . . . . . . . . . . . . .41
Section 6. Commissioner Disapproval . . . . . . . . . . . . . . . .43
Section 7. NFLPA Group Licensing Program . . . . . . . . . . .44
Section 8. Good Faith Negotiation . . . . . . . . . . . . . . . . . .44

**ARTICLE XV OPTION CLAUSE** . . . . . . . . . . . . . . . . . **45**
Section 1. Prohibition . . . . . . . . . . . . . . . . . . . . . . . . .45
Section 2. Existing Option Clauses . . . . . . . . . . . . . . . . .45

**ARTICLE XVI COLLEGE DRAFT** . . . . . . . . . . . . . . . . . **46**
Section 1. Time of Draft . . . . . . . . . . . . . . . . . . . . . . . .46
Section 2. Number of Choices . . . . . . . . . . . . . . . . . . . .46
Section 3. Required Tender . . . . . . . . . . . . . . . . . . . . . .46
Section 4. Signing of Drafted Rookies . . . . . . . . . . . . . . .46
Section 5. Other Professional Teams . . . . . . . . . . . . . . . .47
Section 6. Return to College . . . . . . . . . . . . . . . . . . . . .48
Section 7. Assignment of Draft Rights . . . . . . . . . . . . . . .48
Section 8. Subsequent Draft . . . . . . . . . . . . . . . . . . . . .48
Section 9. No Subsequent Draft . . . . . . . . . . . . . . . . . . .49
Section 10. Compensatory Draft Selections . . . . . . . . . . . .49
Section 11. Undrafted Rookies . . . . . . . . . . . . . . . . . . . .49
Section 12. Notice of Signing . . . . . . . . . . . . . . . . . . . . .49
Section 13. Workouts of Draft-Eligible Players . . . . . . . . . .49

**ARTICLE XVII ENTERING PLAYER POOL** . . . . . . . . . . **51**
Section 1. Definition . . . . . . . . . . . . . . . . . . . . . . . . . .51
Section 2. Covered League Years . . . . . . . . . . . . . . . . . . .51

Section 3.  Calculation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .51
Section 4.  Operation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .53

**ARTICLE XVIII VETERANS WITH LESS THAN**
**THREE ACCRUED SEASONS** . . . . . . . . . . . . . . . . . . . . . . . . . .57
Section 1.  Accrued Seasons Calculation . . . . . . . . . . . . . . . . . . .57
Section 2.  Negotiating Rights of Players With Less
               Than Three Accrued Seasons . . . . . . . . . . . . . . . . . .57
Section 3.  Notice of Signing  . . . . . . . . . . . . . . . . . . . . . . . . . . .57

**ARTICLE XIX VETERAN FREE AGENCY**  . . . . . . . . . . . . . . . . . .59
Section 1.  Unrestricted Free Agents . . . . . . . . . . . . . . . . . . . . . .59
Section 2.  Restricted Free Agents . . . . . . . . . . . . . . . . . . . . . . . .60
Section 3.  Offer Sheet and First Refusal Procedures  . . . . . . . . . .64
Section 4.  Expedited Arbitration . . . . . . . . . . . . . . . . . . . . . . . . .67
Section 5.  Individually Negotiated Limitations
               on Player Movement . . . . . . . . . . . . . . . . . . . . . . . .67
Section 6.  Notices, Etc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .68

**ARTICLE XX FRANCHISE AND TRANSITION PLAYERS** . . . . . . . .70
Section 1.  Franchise Player Designations  . . . . . . . . . . . . . . . . . .70
Section 2.  Required Tender for Franchise Players  . . . . . . . . . . . .70
Section 3.  Transition Player Designations . . . . . . . . . . . . . . . . . .72
Section 4.  Required Tender for Transition Players  . . . . . . . . . . . .73
Section 5.  Right of First Refusal for Transition Players . . . . . . . .73
Section 6.  Lists . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .74
Section 7.  Salary Information . . . . . . . . . . . . . . . . . . . . . . . . . . .74
Section 8.  No Assignment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .74
Section 9.  Duration of Designation  . . . . . . . . . . . . . . . . . . . . . .75
Section 10.  Franchise Player Designation Period . . . . . . . . . . . . .77
Section 11.  Transition Player Designation Period  . . . . . . . . . . . .77
Section 12.  Prospective Designation *[no longer applicable]* . . . . . .78
Section 13.  Right to Decline *[no longer applicable]* . . . . . . . . . . .78
Section 14.  Other Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .78
Section 15.  Compensatory Draft Selection . . . . . . . . . . . . . . . . .78
Section 16.  Signing Period for Transition Players  . . . . . . . . . . . .78
Section 17.  Signing Period for Franchise Players . . . . . . . . . . . . .79

**ARTICLE XXI FINAL EIGHT PLAN** . . . . . . . . . . . . . . . . . . . . . . . .81
Section 1.  Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .81
Section 2.  Top Four Teams . . . . . . . . . . . . . . . . . . . . . . . . . . . . .81
Section 3.  Next Four Teams  . . . . . . . . . . . . . . . . . . . . . . . . . . . .81
Section 4.  Replacement of Free Agents Signed by Other Club  . . .81
Section 5.  Increases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .82
Section 6.  Salary Definition . . . . . . . . . . . . . . . . . . . . . . . . . . . .82

Section 7.  Trade Limitation . . . . . . . . . . . . . . . . . . . . . . . . . .82

**ARTICLE XXII WAIVER SYSTEM** . . . . . . . . . . . . . . . . . . . . . . . . . . **83**
    Section 1.  Release . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .83
    Section 2.  Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .83
    Section 3.  Ineligibility . . . . . . . . . . . . . . . . . . . . . . . . . . . .83
    Section 4.  Notice of Termination . . . . . . . . . . . . . . . . . . . .83
    Section 5.  NFLPA's Right to Personnel Information . . . . . . . . . .84
    Section 6.  Rosters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .84

**ARTICLE XXIII TERMINATION PAY** . . . . . . . . . . . . . . . . . . . . . . . . **85**
    Section 1.  Eligibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . .85
    Section 2.  Regular Season Signings . . . . . . . . . . . . . . . . . . . .85
    Section 3.  Ineligibility for Termination Pay . . . . . . . . . . . . . . .85

**ARTICLE XXIV GUARANTEED LEAGUE-WIDE SALARY,**
    **SALARY CAP, & MINIMUM TEAM SALARY** . . . . . . . . . . . . . . **86**
    Section 1.  Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . .86
    Section 2.  Trigger For Guaranteed League-wide Salary,
                Salary Cap, and Minimum Team Salary . . . . . . . . .94
    Section 3.  Guaranteed League-wide Salary . . . . . . . . . . . . . . . .95
    Section 4.  Salary Cap Amounts . . . . . . . . . . . . . . . . . . . . . .95
    Section 5.  Minimum Team Salary . . . . . . . . . . . . . . . . . . . . .97
    Section 6.  Computation of Team Salary . . . . . . . . . . . . . . . . .98
    Section 7.  Valuation of Player Contracts . . . . . . . . . . . . . . . . .99
    Section 8.  30% Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . .134
    Section 9.  Renegotiations and Extensions . . . . . . . . . . . . . . .135
    Section 10.  Accounting Procedures . . . . . . . . . . . . . . . . . . .137

**ARTICLE XXV ENFORCEMENT OF THE SALARY**
    **CAP AND ENTERING PLAYER POOL** . . . . . . . . . . . . . . . . **142**
    Section 1.  Undisclosed Terms . . . . . . . . . . . . . . . . . . . . . .142
    Section 2.  Circumvention . . . . . . . . . . . . . . . . . . . . . . . . .142
    Section 3.  Special Master Action . . . . . . . . . . . . . . . . . . . . .142
    Section 4.  Commissioner Disapproval . . . . . . . . . . . . . . . . . .142
    Section 5.  Special Master Review . . . . . . . . . . . . . . . . . . . .143
    Section 6.  Sanctions . . . . . . . . . . . . . . . . . . . . . . . . . . . .143
    Section 7.  DGR Circumvention . . . . . . . . . . . . . . . . . . . . .144
    Section 8.  Management Council Audit Rights . . . . . . . . . . . . .145
    Section 9.  Prior Consultation . . . . . . . . . . . . . . . . . . . . . . .145

**ARTICLE XXVI SPECIAL MASTER** . . . . . . . . . . . . . . . . . . . . . . **146**
    Section 1.  Appointment . . . . . . . . . . . . . . . . . . . . . . . . . .146
    Section 2.  Scope of Authority . . . . . . . . . . . . . . . . . . . . . . .146
    Section 3.  Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . .147

Section 4.  Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . .147
Section 5.  Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . .147
Section 6.  Selection of Special Masters . . . . . . . . . . . . . . . . . . .148
Section 7.  Penalties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .148

**ARTICLE XXVII IMPARTIAL ARBITRATOR** . . . . . . . . . . . . . . . . . .**149**
Section 1.  Selection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .149
Section 2.  Scope of Authority . . . . . . . . . . . . . . . . . . . . . . . . .149
Section 3.  Effect of Rulings . . . . . . . . . . . . . . . . . . . . . . . . . .149
Section 4.  Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .149
Section 5.  Compensation of Impartial Arbitrator . . . . . . . . . . . .149
Section 6.  Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . .149
Section 7.  Selection of Impartial Arbitrator . . . . . . . . . . . . . . . .150

**ARTICLE XXVIII ANTI-COLLUSION** . . . . . . . . . . . . . . . . . . . . . . .**151**
Section 1.  Prohibited Conduct . . . . . . . . . . . . . . . . . . . . . . . .151
Section 2.  Other Club Conduct . . . . . . . . . . . . . . . . . . . . . . . .151
Section 3.  Club Discretion . . . . . . . . . . . . . . . . . . . . . . . . . .152
Section 4.  League Disclosures . . . . . . . . . . . . . . . . . . . . . . . .152
Section 5.  Enforcement of Anti-Collusion Provisions . . . . . . . . .152
Section 6.  Burden of Proof . . . . . . . . . . . . . . . . . . . . . . . . . .152
Section 7.  Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . .153
Section 8.  Remedies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .153
Section 9.  Computation of Damages . . . . . . . . . . . . . . . . . . . .154
Section 10.  Player Election . . . . . . . . . . . . . . . . . . . . . . . . . .154
Section 11.  Payment of Damages . . . . . . . . . . . . . . . . . . . . . .155
Section 12.  Effect of Cap Computations . . . . . . . . . . . . . . . . . .155
Section 13.  Effect of Salary Cap . . . . . . . . . . . . . . . . . . . . . . .155
Section 14.  No Reimbursement . . . . . . . . . . . . . . . . . . . . . . .155
Section 15.  Costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .155
Section 16.  Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . .156
Section 17.  Time Limits . . . . . . . . . . . . . . . . . . . . . . . . . . . .156
Section 18.  Prior Conference . . . . . . . . . . . . . . . . . . . . . . . . .156

**ARTICLE XXIX CERTIFICATIONS** . . . . . . . . . . . . . . . . . . . . . . . .**157**
Section 1.  Contract Certification . . . . . . . . . . . . . . . . . . . . . .157
Section 2.  End of League Year Certification . . . . . . . . . . . . . . .157
Section 3.  False Certification . . . . . . . . . . . . . . . . . . . . . . . . .158

**ARTICLE XXX CONSULTATION AND INFORMATION SHARING** .**160**
Section 1.  Consultation and Communications . . . . . . . . . . . . . .160
Section 2.  Salary Summaries . . . . . . . . . . . . . . . . . . . . . . . . .160
Section 3.  Notice of Invalid Contract . . . . . . . . . . . . . . . . . . .160
Section 4.  Neutral Verifier . . . . . . . . . . . . . . . . . . . . . . . . . .160
Section 5.  Copies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .161

Section 6.  Meetings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .161

**ARTICLE XXXI EXPANSION** . . . . . . . . . . . . . . . . . . . . . . .**162**
    Section 1.  Veteran Allocation . . . . . . . . . . . . . . . . . . . . . .162
    Section 2.  Additional Compensatory Picks . . . . . . . . . . . . .162
    Section 3.  Entering Player Pool Adjustment . . . . . . . . . . . .162
    Section 4.  Relocation Bonus . . . . . . . . . . . . . . . . . . . . . . .162

**ARTICLE XXXII OTHER PROVISIONS** . . . . . . . . . . . . . . . .**163**
    Section 1.  CFL Rule . . . . . . . . . . . . . . . . . . . . . . . . . . . . .163
    Section 2.  Physically Unable to Perform . . . . . . . . . . . . . . .163
    Section 3.  Non-Football Injury . . . . . . . . . . . . . . . . . . . . .163
    Section 4.  Roster Exemption . . . . . . . . . . . . . . . . . . . . . . .163

**ARTICLE XXXIII SQUAD SIZE** . . . . . . . . . . . . . . . . . . . . . .**165**
    Section 1.  Active List . . . . . . . . . . . . . . . . . . . . . . . . . . . .165
    Section 2.  Pre-Season . . . . . . . . . . . . . . . . . . . . . . . . . . . .165
    Section 3.  Inactive List . . . . . . . . . . . . . . . . . . . . . . . . . . .165
    Section 4.  Active and Inactive List Limit . . . . . . . . . . . . . . .165

**ARTICLE XXIV PRACTICE SQUADS** . . . . . . . . . . . . . . . . . .**166**
    Section 1.  Practice Squads . . . . . . . . . . . . . . . . . . . . . . . .166
    Section 2.  Signing With Other Clubs . . . . . . . . . . . . . . . . .166
    Section 3.  Salary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .166
    Section 4.  Eligibility . . . . . . . . . . . . . . . . . . . . . . . . . . . .166

**ARTICLE XXXV OFF-SEASON WORKOUTS** . . . . . . . . . . . . .**168**
    Section 1.  Voluntary Workouts . . . . . . . . . . . . . . . . . . . . .168
    Section 2.  Time Periods . . . . . . . . . . . . . . . . . . . . . . . . . .168
    Section 3.  Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . .168
    Section 4.  Injuries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .169
    Section 5.  Miscellaneous . . . . . . . . . . . . . . . . . . . . . . . . .169
    Section 6.  Pre-Training Camp Period . . . . . . . . . . . . . . . . .169
    Section 7.  Enforcement . . . . . . . . . . . . . . . . . . . . . . . . . .170

**ARTICLE XXXVI MINICAMPS** . . . . . . . . . . . . . . . . . . . . . .**172**
    Section 1.  Number . . . . . . . . . . . . . . . . . . . . . . . . . . . . .172
    Section 2.  Length . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .172
    Section 3.  Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . .172
    Section 4.  Contact . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .172
    Section 5.  Injuries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .172

**ARTICLE XXXVII PRE-SEASON TRAINING CAMPS** . . . . . . . . . .**173**
    Section 1.  Definition . . . . . . . . . . . . . . . . . . . . . . . . . . . .173
    Section 2.  Room and Board . . . . . . . . . . . . . . . . . . . . . . .173

**vii**

Section 3.  Rookie Per Diem . . . . . . . . . . . . . . . . . . . . .173
Section 4.  Veteran Per Diem . . . . . . . . . . . . . . . . . . . .173
Section 5.  Reporting . . . . . . . . . . . . . . . . . . . . . . . . . .173
Section 6.  Number of Pre-Season Games . . . . . . . . . . . .173
Section 7.  Telephones . . . . . . . . . . . . . . . . . . . . . . . . .174
Section 8.  Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . .174

**ARTICLE XXXVIII SALARIES** . . . . . . . . . . . . . . . . . . . . . . . . .**175**
Section 1.  1993 Minimum Salaries *[no longer applicable]* . . . . . . .175
Section 2.  Minimum Salaries For 1994-1998 League Years
                   *[no longer applicable]* . . . . . . . . . . . . . . . . .175
Section 3.  Credited Season *[no longer applicable]* . . . . . . . . . . .175
Section 4.  Other Compensation *[no longer applicable]* . . . . . . . .175
Section 5.  Arbitration *[no longer applicable]* . . . . . . . . . . . . . .175
Section 6.  Minimum Salaries After the 2001 League Year . . . . .175
Section 7.  Credited Season . . . . . . . . . . . . . . . . . . . . . .175
Section 8.  Other Compensation . . . . . . . . . . . . . . . . . . .176
Section 9.  Arbitration . . . . . . . . . . . . . . . . . . . . . . . . .176
Section 10.  Payment . . . . . . . . . . . . . . . . . . . . . . . . . .176
Section 11.  Deferred Paragraph 5 . . . . . . . . . . . . . . . . . .176
Section 12.  Number of Regular Season Games . . . . . . . . . . .176
Section 13.  Copies of Contracts . . . . . . . . . . . . . . . . . . .177
Section 14.  Split Contracts . . . . . . . . . . . . . . . . . . . . . .177
Section 15.  Funding of Deferred and Guaranteed Contracts . . . .177

**ARTICLE XXXVIII—A MINIMUM SALARY BENEFIT** . . . . . . . . .**178**
Section 1.  Qualifying Players . . . . . . . . . . . . . . . . . . . . .178
Section 2.  Qualifying Contracts . . . . . . . . . . . . . . . . . . .178
Section 3.  Transition Rules . . . . . . . . . . . . . . . . . . . . . .178
Section 4.  Payments . . . . . . . . . . . . . . . . . . . . . . . . . .178
Section 5.  Reduced Salary Cap Count . . . . . . . . . . . . . . . .179
Section 6.  Minimum Salary Benefit Calculation . . . . . . . . . .179
Section 7.  League-wide Salary Cap Treatment . . . . . . . . . . .179
Section 8.  League-wide Cash Treatment . . . . . . . . . . . . . . .179
Section 9.  Terminated Qualifying Players . . . . . . . . . . . . . .179
Section 10.  Players Moving to a New Club . . . . . . . . . . . . . .179
Section 11.  Player Returning to Old Club . . . . . . . . . . . . . .180
Section 12.  Players with Expired Contract . . . . . . . . . . . . . .180
Section 13.  Guarantees . . . . . . . . . . . . . . . . . . . . . . . . .180
Section 14.  Termination Pay . . . . . . . . . . . . . . . . . . . . . .181
Section 15.  No Benefit for Non-Qualifying Contracts . . . . . . . .181

**ARTICLE XXXVIII—B PERFORMANCE-BASED POOL** . . . . . . . .**183**
Section 1.  Creation of Fund . . . . . . . . . . . . . . . . . . . . . .183
Section 2.  Annual Projection . . . . . . . . . . . . . . . . . . . . .183

Section 3.  Mandatory Distribution Each Year . . . . . . . . . . . . . . .183
Section 4.  Qualifying Players . . . . . . . . . . . . . . . . . . . . . . . . . . .183
Section 5.  Methodology . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .183

**ARTICLE XXXIX MEAL ALLOWANCE** . . . . . . . . . . . . . . . . . . . . **184**
Section 1.  Reimbursement . . . . . . . . . . . . . . . . . . . . . . . . . . . . .184
Section 2.  Travel Day . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .184

**ARTICLE XL DAYS OFF** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **185**
Section 1.  Rate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .185
Section 2.  Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .185

**ARTICLE XLI MOVING AND TRAVEL EXPENSES** . . . . . . . . . . . . **186**
Section 1.  Qualification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .186
Section 2.  Moving Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . .186
Section 3.  Travel Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . .186
Section 4.  Transportation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .187

**ARTICLE XLII POST-SEASON PAY** . . . . . . . . . . . . . . . . . . . . . . **188**
Section 1.  System . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .188
Section 2.  Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .188
Section 3.  Wild Card Game; Division Play-off Game . . . . . . . . .188
Section 4.  Conference Championship; Super Bowl Game . . . . . .188
Section 5.  Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .189

**ARTICLE XLIII PRO BOWL GAME** . . . . . . . . . . . . . . . . . . . . . . **190**
Section 1.  Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .190
Section 2.  Selection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .190
Section 3.  Wives . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .190
Section 4.  Injury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .190
Section 5.  Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .190

**ARTICLE XLIV PLAYERS' RIGHTS TO MEDICAL**
**CARE AND TREATMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **191**
Section 1.  Club Physician . . . . . . . . . . . . . . . . . . . . . . . . . . . . .191
Section 2.  Club Trainers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .191
Section 3.  Players' Right to a Second Medical Opinion . . . . . . . .191
Section 4.  Players' Right to a Surgeon of His Choice . . . . . . . . .191
Section 5.  Standard Minimum Pre-Season Physical . . . . . . . . . .191
Section 6.  Substance Abuse . . . . . . . . . . . . . . . . . . . . . . . . . . . .192

**ARTICLE XLV ACCESS TO PERSONNEL AND**
**MEDICAL RECORDS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **193**
Section 1.  Personnel Records . . . . . . . . . . . . . . . . . . . . . . . . . . .193
Section 2.  Medical Records . . . . . . . . . . . . . . . . . . . . . . . . . . . .193

**ARTICLE XLVI PLAYER BENEFIT COSTS** . . . . . . . . . . . . . . . . . . . .**194**
    Section 1.  Right of Reduction   . . . . . . . . . . . . . . . . . . . . . .194
    Section 2.  Right of Restoration . . . . . . . . . . . . . . . . . . . . . . .195
    Section 3.  Definition . . . . . . . . . . . . . . . . . . . . . . . . . . . . .195
    Section 4.  Resolution of Disputes   . . . . . . . . . . . . . . . . . . . .196
    Section 5.  1998 Amendment Benefits   . . . . . . . . . . . . . . . . . . .197
    Section 6.  Limitations on Contributions   . . . . . . . . . . . . . . . . .197

**ARTICLE XLVII RETIREMENT PLAN**  . . . . . . . . . . . . . . . . . . . . . .**199**
    Section 1.  Maintenance and Definitions . . . . . . . . . . . . . . . . . .199
    Section 2.  Additional Credited Seasons *[no longer applicable]*  . . .199
    Section 3.  Contributions . . . . . . . . . . . . . . . . . . . . . . . . . .199
    Section 4.  Benefit Credits . . . . . . . . . . . . . . . . . . . . . . . . .199
    Section 5.  Decrease in Vesting Requirement . . . . . . . . . . . . . . .200
    Section 6.  Medical Standards for Line-of-Duty Disability Benefits .200
    Section 7.  Practice Squad Credited Season . . . . . . . . . . . . . . .201
    Section 8.  Increase in Past Service Credit . . . . . . . . . . . . . . . .201

**ARTICLE XLVIII SECOND CAREER SAVINGS PLAN**  . . . . . . . . . . .**202**
    Section 1.  Maintenance . . . . . . . . . . . . . . . . . . . . . . . . . . .202
    Section 2.  Contributions . . . . . . . . . . . . . . . . . . . . . . . . . .202
    Section 3.  Expansion of Eligible Employees . . . . . . . . . . . . . . .203

**ARTICLE XLVIII - A PLAYER ANNUITY PROGRAM**
    Section 1.  Establishment . . . . . . . . . . . . . . . . . . . . . . . . . .204
    Section 2.  Contributions . . . . . . . . . . . . . . . . . . . . . . . . . .204
    Section 3.  Eligibility and Allocation . . . . . . . . . . . . . . . . . . .204
    Section 4.  Distributions . . . . . . . . . . . . . . . . . . . . . . . . . .205
    Section 5.  Structure . . . . . . . . . . . . . . . . . . . . . . . . . . . . .206

**ARTICLE XLVIII - B TUITION ASSISTANCE PLAN**
    Section 1.  Establishment . . . . . . . . . . . . . . . . . . . . . . . . . .207
    Section 2.  Eligibility . . . . . . . . . . . . . . . . . . . . . . . . . . . .207
    Section 3.  Reimbursement . . . . . . . . . . . . . . . . . . . . . . . . .207

**ARTICLE XLIX GROUP INSURANCE** . . . . . . . . . . . . . . . . . . . . . .**208**
    Section 1.  Group Insurance Benefits   . . . . . . . . . . . . . . . . . . .208
    Section 2.  Extended Post-Career Medical and Dental Insurance .209
    Section 3.  Limitations and Rules For Extended Insurance   . . . . .210
    Section 4.  Financing For Extended Insurance
                 *[no longer applicable]*   . . . . . . . . . . . . . . . . . . . . .210
    Section 5.  Administration   . . . . . . . . . . . . . . . . . . . . . . . . .210

**ARTICLE L SEVERANCE PAY** . . . . . . . . . . . . . . . . . . . . . . . . **211**
    Section 1. Eligibility . . . . . . . . . . . . . . . . . . . . . . . . . . . .211
    Section 2. Amount . . . . . . . . . . . . . . . . . . . . . . . . . . . . .211
    Section 3. Application . . . . . . . . . . . . . . . . . . . . . . . . . . .211
    Section 4. Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . .211
    Section 5. Failure to Apply . . . . . . . . . . . . . . . . . . . . . . .212
    Section 6. Only One Payment . . . . . . . . . . . . . . . . . . . . .212
    Section 7. Payable to Survivor . . . . . . . . . . . . . . . . . . . . .212
    Section 8. Prior Severance Pay . . . . . . . . . . . . . . . . . . . .212
    Section 9. Nonassignability . . . . . . . . . . . . . . . . . . . . . . .212

**ARTICLE LI SUPPLEMENTAL DISABILITY BENEFITS** . . . . . . . .**213**
    Section 1. Maintenance . . . . . . . . . . . . . . . . . . . . . . . . . .213
    Section 2. Contributions . . . . . . . . . . . . . . . . . . . . . . . . .213
    Section 3. Extension . . . . . . . . . . . . . . . . . . . . . . . . . . . .213
    Section 4. Automatic Payment and Waiver . . . . . . . . . . . . . .213

**ARTICLE LII BENEFIT ARBITRATOR** . . . . . . . . . . . . . . . . . . .**214**
    Section 1. Selection . . . . . . . . . . . . . . . . . . . . . . . . . . . .214
    Section 2. Compensation . . . . . . . . . . . . . . . . . . . . . . . . .214
    Section 3. Role . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .214

**ARTICLE LIII RETENTION OF BENEFITS** . . . . . . . . . . . . . . . . .**216**

**ARTICLE LIV WORKERS' COMPENSATION** . . . . . . . . . . . . . . . .**217**
    Section 1. Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . .217
    Section 2. Rejection of Coverage . . . . . . . . . . . . . . . . . . .217
    Section 3. Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . .217
    Section 4. Joint Study . . . . . . . . . . . . . . . . . . . . . . . . . . .217
    Section 5. Moratorium *[no longer applicable]* . . . . . . . . . . . . .217
    Section 6. Preservation of Rights . . . . . . . . . . . . . . . . . . .217
    Section 7. Reopener . . . . . . . . . . . . . . . . . . . . . . . . . . . .218

**ARTICLE LV MISCELLANEOUS** . . . . . . . . . . . . . . . . . . . . . . . .**219**
    Section 1. Endorsements . . . . . . . . . . . . . . . . . . . . . . . . .219
    Section 2. On-Field Attire . . . . . . . . . . . . . . . . . . . . . . . .219
    Section 3. Appearances . . . . . . . . . . . . . . . . . . . . . . . . . .219
    Section 4. Promotion . . . . . . . . . . . . . . . . . . . . . . . . . . .219
    Section 5. Deduction . . . . . . . . . . . . . . . . . . . . . . . . . . .219
    Section 6. Public Statements . . . . . . . . . . . . . . . . . . . . . .219
    Section 7. Address . . . . . . . . . . . . . . . . . . . . . . . . . . . . .219
    Section 8. NFLPA Tickets . . . . . . . . . . . . . . . . . . . . . . . .219
    Section 9. Player Tickets . . . . . . . . . . . . . . . . . . . . . . . . .220
    Section 10. Tests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .220
    Section 11. League Security . . . . . . . . . . . . . . . . . . . . . . .220

Section 12.  Career Planning Program . . . . . . . . . . . . . . . . . . . . . .220
Section 13.  Delivery of Documents . . . . . . . . . . . . . . . . . . . . . . .220
Section 14.  Binding Effect . . . . . . . . . . . . . . . . . . . . . . . . . . . .220
Section 15.  Authorization . . . . . . . . . . . . . . . . . . . . . . . . . . . .220
Section 16.  Headings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .221
Section 17.  Time Periods . . . . . . . . . . . . . . . . . . . . . . . . . . . .221
Section 18.  Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .221
Section 19.  Parol Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . .221

**ARTICLE LVI FINAL LEAGUE YEAR** . . . . . . . . . . . . . . . . . . . . . . . .**222**
Section 1.  No Salary Cap . . . . . . . . . . . . . . . . . . . . . . . . . . . .222
Section 2.  Free Agency If Salary Cap In League
            Year Prior to Final League Year . . . . . . . . . . . . . . . .222
Section 3.  Free Agency If No Salary Cap In League
            Year Prior To Final League Year . . . . . . . . . . . . . .222
Section 4.  Franchise and Transition Players . . . . . . . . . . . . . . .222

**ARTICLE LVII MUTUAL RESERVATION OF RIGHTS:**
**LABOR EXEMPTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**223**
Section 1.  Rights Under Law . . . . . . . . . . . . . . . . . . . . . . . . .223
Section 2.  Labor Exemption . . . . . . . . . . . . . . . . . . . . . . . . . .223
Section 3.  CBA Expiration . . . . . . . . . . . . . . . . . . . . . . . . . . .223

**ARTICLE LVIII DURATION OF AGREEMENT** . . . . . . . . . . . . . . . .**224**
Section 1.  Effective Date . . . . . . . . . . . . . . . . . . . . . . . . . . . .224
Section 2.  Expiration Date . . . . . . . . . . . . . . . . . . . . . . . . . . .224
Section 3.  Termination Prior to Expiration Date . . . . . . . . . . . .224
Section 4.  Ratification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .225

**ARTICLE LIX GOVERNING LAW** . . . . . . . . . . . . . . . . . . . . . . . .**226**

**ARTICLE LX NOTICES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**227**

**APPENDIX A—CHECK-OFF AUTHORIZATION FOR NATIONAL**
**FOOTBALL LEAGUE PLAYERS ASSOCIATION DEDUCTIONS** . .**228**

**APPENDIX B—INJURY PROTECTION/EARLY WAIVER** . . . . . . . .**230**

**APPENDIX C—NFL PLAYER CONTRACT** . . . . . . . . . . . . . . . . . .**231**

**APPENDIX D—FIRST REFUSAL OFFER SHEET** . . . . . . . . . . . . .**240**

**APPENDIX E—FIRST REFUSAL EXERCISE NOTICE** . . . . . . . . . .**241**

APPENDIX F—WAIVER OF FREE AGENT RIGHTS . . . . . . . . . . .242

APPENDIX G—NOTICE OF TERMINATION . . . . . . . . . . . . . . . .243

APPENDIX H—ACCOUNTANTS' REVIEW PROCEDURES . . . . .244

APPENDIX I—STANDARD MINIMUM PRE-SEASON
    PHYSICAL EXAMINATION  . . . . . . . . . . . . . . . . . . . . . . . .252

APPENDIX J—ACTUARIAL ASSUMPTIONS AND
    ACTUARIAL COST METHOD  . . . . . . . . . . . . . . . . . . . . . .255

APPENDIX K—EXTENSION CHART . . . . . . . . . . . . . . . . . . . . . .257

APPENDIX L—OFF-SEASON WORKOUT RULES . . . . . . . . . . . .258

APPENDIX M—PSL EXAMPLES . . . . . . . . . . . . . . . . . . . . . . . . .259

APPENDIX N—WRITTEN WARNING GOOD FAITH EFFORT . . .266

APPENDIX O—CALCULATION EXAMPLE . . . . . . . . . . . . . . . . . .267

# INTRODUCTION

On January 8, 2002, the National Football League Management Council ("Management Council" or "NFLMC") and the National Football League Players Association ("NFLPA") agreed to extend, with certain modifications, the 1993 NFL Collective Bargaining Agreement ("CBA"), which was previously amended June 6, 1996, February 25, 1998, and December 4, 2000. This booklet incorporates the 1998, 2000, and 2002 amendment agreements into the text of the CBA and omits provisions relating exclusively to past seasons (although any such omitted terms, if subsequently determined to be applicable, have the same force and effect as the terms set forth herein. Any persons with questions about provisions concerning seasons before 2002 should refer to prior printed versions of the CBA). The 2000 and 2002 amendment language is set forth in italic copy with applicable notations to the extension agreements. In addition, side letter agreements between the NFLMC and the NFLPA setting forth the parties' interpretation of various provisions of the CBA are reprinted and indented within the appropriate articles. Relevant side letters that were agreed to after the 1998 extension are added to this booklet, and are set forth in italics. For easy reference, the article names can be found at the top of each two-page set of this booklet.

1

# PREAMBLE

This Agreement, which is the product of bona fide, arm's length collective bargaining, is made and entered into on the 6th day of May, 1993, in accordance with the provisions of the National Labor Relations Act, as amended, by and between the National Football League Management Council ("Management Council" or "NFLMC"), which is recognized as the sole and exclusive bargaining representative of present and future employer member Clubs of the National Football League ("NFL" or "League"), and the National Football League Players Association ("NFLPA"), which is recognized as the sole and exclusive bargaining representative of present and future employee players in the NFL in a bargaining unit described as follows:

1.    All professional football players employed by a member club of the National Football League;

2.    All professional football players who have been previously employed by a member club of the National Football League who are seeking employment with an NFL Club;

3.    All rookie players once they are selected in the current year's NFL College Draft; and

4.    All undrafted rookie players once they commence negotiation with an NFL Club concerning employment as a player.

**3**

# ARTICLE I
# DEFINITIONS

As used in this Agreement, the following terms shall have the following meanings:

***Section 1.* General Definitions:**

(a)    "Agreement" means this Collective Bargaining Agreement, dated May 6, 1993.

(b)    "Class Counsel" means the law firm of Weil, Gotshal & Manges, 767 Fifth Avenue, New York, New York 10153, and the law firm of Lindquist & Vennum, 4200 IDS Center, Minneapolis, Minnesota 55402.

(c)    "Club" or "Team" or "Member," used interchangeably herein, means any entity that is a member of the NFL or operates a franchise in the NFL at any time during the term of this Agreement.

(d)    "Club Affiliate" or "Team Affiliate" means any entity or person owned by (wholly or partly), controlled by, affiliated with, or related to a Club or any owner of a Club.

(e)    "Commissioner" means the Commissioner of the NFL.

(f)    "Impartial Arbitrator" means the person authorized by this Agreement and the Settlement Agreement to hear and resolve specified disputes as provided in this Agreement and the Settlement Agreement.

(g)    "League Year" means the period from February 20 of one year through and including February 19 of the following year, or such other one year period to which the NFL and the NFLPA may agree.

(h)    "NFL Player Contract" means the form of Player Contract utilized in the NFL.

(i)    "NFL Rules" means the Constitution and By-Laws, rules, and regulations of the NFL and/or the Management Council.

(j)    "Player Affiliate" means any entity or person owned by (wholly or partly), controlled by, affiliated with, or related to a player.

(k)    "Salary" means any compensation of money, property, investments, loans, or anything else of value that a Club pays to, or is obligated to pay to, a player or Player Affiliate, or is paid to a third party at the request of and for the benefit of a player or Player Affiliate, during a League Year, as calculated in accordance with the rules set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary).

(l)    "Settlement Agreement" means the Stipulation and Settlement Agreement, dated February 26, 1993.

(m)    "Special Master" means the special master appointed and authorized by this Agreement and the Settlement Agreement to hear and resolve specified disputes as provided in this Agreement and the Settlement Agreement.

4

**Section 2**. **Free Agency Definitions:**

(n)    "Accrued Season" means any playing season for which a player received credit with respect to his qualifications for Unrestricted Free Agency or Restricted Free Agency, as described in Article XIX (Veteran Free Agency).

(o)    "Compensatory Draft Selection" means an additional Draft choice awarded to a Club as described in Article XIX (Veteran Free Agency) and Article XX (Franchise and Transition Players).

(p)    "Draft" or "College Draft" means the NFL's annual draft of Rookie football players as described in Article XVI (College Draft).

(q)    "Draft Choice Compensation" means the right of any Club, as described in Article XIX (Veteran Free Agency) and Article XX (Franchise and Transition Players), to receive draft pick(s) from any other Club.

(r)    "Drafted Rookie" means a person who is selected in the current League Year's Draft or whose Draft rights are held, or continue to be held, consistent with this Agreement, by an NFL Club that selected the Rookie in a prior Draft.

(s)    "Final Eight Plan" means the rules whereby signings of Unrestricted Free Agents are limited in Uncapped Years for the final eight playoff Clubs, under the limited circumstances described in Article XXI (Final Eight Plan).

(t)    "Free Agent" means a player who is not under contract and is free to negotiate and sign a Player Contract with any NFL Club, without Draft Choice Compensation or any Right of First Refusal.

(u)    "Minimum Salary" means the minimum annual Paragraph 5 Salary which shall be paid to an NFL player not on any Active list, and not on the Inactive list, pursuant to this Agreement.

(v)    "Minimum Active/Inactive List Salary" means the minimum annual Paragraph 5 Salary which shall be paid to an NFL player on any Active list, or on the Inactive list, pursuant to this Agreement.

(w)    "Negotiate" means, with respect to a player or his representatives on the one hand, and an NFL Club or its representatives on the other hand, to engage in any written or oral communication relating to efforts to reach agreement on employment and/or terms of employment between such player and such Club.

(x)    "New Club" means any Club except the Prior Club (as defined below).

(y)    "Player Contract" means a written agreement or series of such agreements executed at or about the same time between a person and an NFL Club pursuant to which such person is employed by such Club as a professional football player.

(z)    "Prior Club" means the Club that contracted with or otherwise held the NFL playing rights for the player for the previous NFL League Year.

(aa)    "Prior Year Salary" means the total of the Paragraph 5 Salary, roster and reporting bonuses, pro-rata portion of signing bonus, and other

Article I, Definitions

payments to a player in compensation for the playing of professional football for the last League Year of the player's most recently negotiated Player Contract, except for performance bonuses other than roster and reporting bonuses. Prior Year Salary shall also include any unrepaid loans made, guaranteed or collateralized by a Team or its Team Affiliate to a player or Player Affiliate during or after the 1993 League Year.

(ab)   "Renegotiate" means any change in Salary or the terms under which such Salary is earned or paid, or any change regarding the Club's right to trade the player, during the term of a Player Contract.

(ac)   "Required Tender" means a Player Contract tender that a Club is required to make to a player pursuant to this Agreement, either as a matter of right with respect to the player, or to receive Rights of First Refusal, Draft Choice Compensation and/or other rights with respect to the player, as specified in this Agreement.

(ad)   "Restricted Free Agent" means a Veteran who has three or more Accrued Seasons and who completes performance of his Player Contract, but who is still subject to a Right of First Refusal and/or Draft Choice Compensation in favor of his Prior Club.

(ae)   "Right of First Refusal" means the right of an NFL Club, as described in Article XIX (Veteran Free Agency) and Article XX (Franchise and Transition Players) to retain the services of certain Veteran players by matching offers made to those players.

(af)   "Rookie" means a person who has never signed a Player Contract with an NFL Club.

(ag)   "Undrafted Rookie" means a Rookie who was eligible for but not selected in a College Draft.

(ah)   "Unrestricted Free Agent" means a Veteran who completes performance of his Player Contract, and who is no longer subject to any exclusive negotiating rights, Right of First Refusal, or Draft Choice Compensation in favor of his Prior Club.

(ai)   "Veteran" means a player who has signed at least one Player Contract with an NFL Club.

### Section 3. Salary Cap Definitions:

(aj)   "Benefits" or "Player Benefit Costs" means the specific benefits paid to players set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary).

(ak)   "Capped Year" means any League Year for which a Salary Cap is in effect.

(al)   "Defined Gross Revenues" or "DGR" means all of the League and Team revenues that are included within the definition of Defined Gross Revenues, as set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary).

(am)   "Guaranteed League-wide Salary" means the minimum amount that the Teams in the NFL must pay in Player Costs during a League Year, if

**6**

applicable, as set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary).

(an)   "Minimum Team Salary" means the minimum amount that each Team must pay in Salaries during a League Year, if applicable, as set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary), Section 5.

(ao)   "Paragraph 5 Salary" means the compensation set forth in paragraph 5 of the NFL Player Contract, or in any amendments thereto.

(ap)   "Player Costs" means the total Salaries and Benefits attributable to a League Year for all NFL Teams under all of the rules set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary), but not including loans, loan guarantees, unpaid grievances attributions, and unearned incentives.

(aq)   "Projected Benefits" means the amount of Benefits projected in accordance with the rules set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary).

(ar)   "Projected Defined Gross Revenues" means the amount of Defined Gross Revenues projected in accordance with the rules set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary).

(as)   "Room" means the extent to which a Team's then-current Team Salary is less than either the Salary Cap or Entering Player Pool, as applicable.

(at)   "Salary Cap" means the absolute maximum amount of Salary that each Club may pay or be obligated to pay or provide to players or Player Affiliates, or may pay or be obligated to pay to third parties at the request of and for the benefit of Players or Player Affiliates, at any time during a particular League Year, in accordance with the rules set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary), if applicable.

(au)   "Team Salary" means the Team's aggregate Salary for Salary Cap purposes, as calculated in accordance with the rules set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary).

(av)   "Uncapped Year" means any League Year for which a Salary Cap is not in effect.

***Section 4*. Further Definitions:**

(aw)   "Final League Year" means the League Year which is scheduled prior to its commencement to be the final League Year of this Agreement. As of the date hereof, the Final League Year is the *2007* League Year. The Final League Year shall always be an Uncapped Year.

*\* Extension Agreement 1/8/02*

(ax)   "Final Capped Year" means the League Year immediately prior to the Final League Year. The Final Capped Year shall be Capped unless the

Article I, Definitions

Salary Cap is removed pursuant to Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary), Section 4(b)(ii)(4).

# ARTICLE II
# GOVERNING AGREEMENT

*Section 1*. **Conflicts**: The provisions of this Agreement supersede any conflicting provisions in the NFL Player Contract, the NFL Constitution and Bylaws, or any other document affecting terms and conditions of employment of NFL players, and all players, Clubs, the NFLPA, the NFL, and the Management Council will be bound hereby. The provisions of the Stipulation and Settlement Agreement, *as amended*, in <u>White</u> v. <u>NFL</u>, No. 4-92-906 (D. Minn.) ("Settlement Agreement"), shall supersede any conflicting provisions of this Agreement.

*Section 2*. **Implementation**: The NFLPA and the Management Council will use their best efforts to faithfully carry out the terms and conditions of this Agreement and to see that the terms and conditions of this Agreement are carried out in full by players and Clubs. The NFLPA will use its best efforts to see that the terms and conditions of all NFL Player Contracts are carried out in full by players.

*Section 3*. **Management Rights**: The NFL Clubs maintain and reserve the right to manage and direct their operations in any manner whatsoever, except as specifically limited by the provisions of this Agreement and the Settlement Agreement.

*Section 4*. **Rounding**: For the purposes of any amounts to be calculated or used pursuant to this Agreement with respect to Required Tenders, Qualifying Offers, Minimum Salaries, Minimum Active/Inactive List Salaries, Team Salary, DGR, Excluded DGR, Benefits, Player Costs, Projected DGR, Projected Benefits, or Salary, such amounts shall be rounded to the nearest $1,000.

9

# ARTICLE III
# SCOPE OF AGREEMENT

**Section 1. Scope:** This Agreement represents the complete understanding of the parties on all subjects covered herein, and there will be no change in the terms and conditions of this Agreement without mutual consent. Except as otherwise provided in Article V (Union Security), Section 6, on Union Security, and on Article LIV (Workers' Compensation), Section 7, on Workers' Compensation, the NFLPA and the Management Council waive all rights to bargain with one another concerning any subject covered or not covered in this Agreement for the duration of this Agreement, including the provisions of the NFL Constitution and Bylaws; provided, however, that if any proposed change in the NFL Constitution and Bylaws during the term of this Agreement could significantly affect the terms and conditions of employment of NFL players, then the Management Council will give the NFLPA notice of and negotiate the proposed change in good faith.

**Section 2. Arbitration:** The question of whether the parties engaged in good faith negotiations, or whether any proposed change in the NFL Constitution and Bylaws would violate or render meaningless any provision of this Agreement, may be the subject of a non-injury grievance under Article IX (Non-Injury Grievance), which shall be the exclusive method for resolving disputes arising out of this Section 2. If the arbitrator finds that either party did not engage in good faith negotiations, or that the proposed change would violate or render meaningless any provision of this Agreement, he may enter an appropriate order, including to cease and desist from implementing or continuing the practice or proposal in question; provided, however, that the arbitrator may not compel either party to this Agreement to agree to anything or require the making of a concession by either party in negotiations.

# ARTICLE IV
# NO STRIKE/LOCKOUT/SUIT

**Section 1. No Strike/Lockout:** Except as otherwise provided in Article V (Union Security), Section 6, or Article LIV (Workers' Compensation), Section 7, neither the NFLPA nor any of its members will engage in any strike, work stoppage, or other concerted action interfering with the operations of the NFL or any Club for the duration of this Agreement, and no Clubs, either individually or in concert with other Clubs, will engage in any lockout for the duration of this Agreement. Any claim by the Management Council that the NFLPA has violated this Section 1 will not be subject to the grievance procedure or the arbitration provisions of this Agreement and the Management Council will have the right to submit such claim directly to the courts.

**Section 2. No Suit:** The NFLPA agrees that neither it nor any of its members, nor agents acting on its behalf, nor any member of its bargaining unit, will sue, or support financially or administratively, or voluntarily provide testimony or affidavit in, any suit against, the NFL or any Club with respect to any claim relating to any conduct permitted by this Agreement, the Settlement Agreement, or any term of this Agreement or the Settlement Agreement, including, without limitation, the Articles concerning the College Draft, the Compensatory Draft, the Option Clause, the Entering Player Pool, Veterans With Less Than Three Accrued Seasons, Veteran Free Agency, Franchise and Transition Players, the Final Eight Plan, Guaranteed League-wide Salary, Salary Cap and Minimum Team Salary, and the Waiver System, and provisions applicable to the trading of players; provided, however, that nothing contained in this Section 2 will prevent the NFLPA or any player from asserting that any Club, acting individually or in concert with other Clubs, or the Management Council, has: (1) breached the terms of this Agreement, the NFL Player Contract, the revised NFL Player Contract, or the NFL Constitution and Bylaws, and from processing such asserted breach as a non-injury grievance under Article IX (Non-Injury Grievance) or asserting any claim before the Special Master or the Impartial Arbitrator as provided in this Agreement; or (2) breached the terms of the Settlement Agreement and from asserting such a claim before the Special Master, Impartial Arbitrator, or the Federal District Court, as provided for in the Settlement Agreement. In addition, neither the NFLPA nor any of its members, agents acting on its behalf, nor any members of its bargaining unit will sue, or support financially or administratively any suit against, the NFL or any Club relating to the presently existing provisions of the Constitution and Bylaws of the NFL as they are currently operative and administered (except any provisions relating to the 1982 CBA, which have been superseded by this Agreement); provided, however, that nothing herein shall prevent the NFLPA, its members, agents or bargaining unit members from asserting any

11

Article IV, No Strike/Lockout/Suit

rights they may have under the federal labor laws or under this Agreement
or the Settlement Agreement.

***Section 3. Releases***: The releases and covenants not to sue contained in Ar-
ticle XIX (Releases and Covenants Not to Sue) of the Settlement Agreement
are hereby incorporated by reference.

12

# ARTICLE V
# UNION SECURITY

**Section 1. Union Security:** Every NFL player has the option of joining or not joining the NFLPA; provided, however, that as a condition of employment commencing with the execution of this Agreement and for the duration of this Agreement and wherever and whenever legal: (a) any active player who is or later becomes a member in good standing of the NFLPA must maintain his membership in good standing in the NFLPA; and (b) any active player (including a player in the future) who is not a member in good standing of the NFLPA must, on the 30th day following the beginning of his employment or the execution of this Agreement, whichever is later, pay, pursuant to Section 2 below or otherwise to the NFLPA, an annual service fee in the same amount as any initiation fee and annual dues required of members of the NFLPA.

**Section 2. Check-off:** Commencing with the execution of this Agreement, each Club will check-off the initiation fee and annual dues or service charge, as the case may be, in equal weekly or biweekly installments from each pre-season and regular season pay check, beginning with the first pay check after the date of the first pre-season squad cutdown, for each player for whom a current check-off authorization (copy attached hereto as Appendix A and made a part of this Agreement) has been provided to the Club. The Club will forward the check-off monies to the NFLPA within seven days of the check-off.

**Section 3. NFLPA Meetings:** The NFLPA will have the right to conduct three meetings on Club property each year, including one at the time of a Club's minicamp, provided that the player representative or NFLPA office has given the Club reasonable notice of its desire to hold such a meeting by the close of business on Friday of the week before the week in which the meeting is to take place, or by the close of business Thursday if the meeting is scheduled for the following Monday. No meeting will be held at a time which would disrupt a coach's team schedule.

**Section 4. NFLPA Player Group Licensing Program:** The NFL recognizes that players have authorized the NFLPA to act as their agent in a Group Player Licensing program (defined below) for their benefit. The NFL hereby agrees that neither it, any Club, nor any affiliate of the NFL and/or any Club shall acquire, seek to acquire, induce others to acquire, or assist others in acquiring Group Player Licensing rights, or interfere in any manner with any player's conveyance of such rights pursuant to the NFLPA Group Player Licensing program, except as otherwise explicitly agreed to between the NFLPA and the NFL. Any disputes that arise regarding the NFL's conduct in this regard shall be submitted for expedited arbitration pursuant to

**13**

Article V, Union Security

Article IX (Non-Injury Grievance). For the purposes of this Section 4, Group Player Licensing shall be defined as the use of a total of six or more NFL players' names, signatures facsimiles, voices, pictures, photographs, likenesses and/or biographical information on *or in conjunction with* products (*including, but not limited to, trading cards, clothing, videogames, computer games, collectibles, internet sites, fantasy games, etc.): (a)* in any one product category, as defined by industry standards; or (b) in different categories if a total of six or more players are used and (i) the products all use similar or derivative design or artwork or (ii) one such player product is used to promote another player product. For the purposes of this Section 4, Group Player Licensing includes, without limitation, products sold at retail and products that are used as promotional or premium items.

*\* Extension Agreement 1/8/02*

**Section 5. Disputes**: Any dispute over compliance with, or the interpretation, application or administration of this Article, except any dispute concerning Section 4 of this Article, will be processed pursuant to Article IX (Non-Injury Grievance). Any decision of an outside arbitrator pursuant thereto will constitute full, final and complete disposition of the dispute, and will be binding on the player(s) and Club(s) involved and the parties to this Agreement.

**Section 6. Procedure for Enforcement:**

(a)      Upon written notification to the Management Council by the NFLPA that a player has not paid any initiation fee, dues or the equivalent service fee in violation of Section 1 of this Article V (Union Security), the Management Council will within seven days consider the matter. If there is no resolution of the matter within seven days, then the Club will, upon notification of the NFLPA, suspend the player without pay. Such suspension will continue until the NFLPA has notified the Club in writing that the suspended player has satisfied his obligation as contained in Section 1 of this Article V (Union Security). The parties hereby agree that suspension without pay is adopted as a substitute for and in lieu of discharge as the penalty for a violation of the union security clause of the Agreement and that no player will be discharged for a violation of that clause. The player's contract will be tolled during the period of any such suspension. A copy of all notices required by this "Procedure for the Enforcement of the Union Security Agreement Between the NFL Management Council and the NFLPA" will be simultaneously mailed to the player involved and the Management Council.

(b)      It is further agreed that the term "member in good standing" as used in this Article V (Union Security) applies only to payment of dues or initiation fee and not any other factors involved in union discipline.

(c)      It is further agreed that notwithstanding Article III (Scope of Agreement), Article IV (No Strike/Lockout/Suit), and Article LVIII (Dura-

**14**

tion of Agreement), that if at any time in the term of the Agreement, any court or agency shall wholly or partially invalidate the provisions of Article V (Union Security) relating to Union Security, then the NFLPA may reopen this Agreement upon the giving of 10 days' written notice, with reference solely to the issue of Union Security, and both parties will have an obligation to resume negotiations limited to the issue of Union Security, and both parties will be free to engage in whatever concerted or other action may be permitted by law in support of their positions.

**Section 7. NFLPA Responsibility**: It is agreed that neither the NFL nor any Club shall be liable for any salary, bonus, or other monetary claims of any player suspended pursuant to the terms of Section 6 above. Collection of initiation fees, annual dues, service charges or other check-off amounts missed because of inadvertent errors shall be the responsibility of the NFLPA. The NFLPA shall be solely responsible for refunds to players in the case of any sums deducted not in conformity with the provisions of the NFLPA Constitution and Bylaws or applicable law.

**Section 8. Orientations**: During the annual Timing and Testing Sessions of the Scouting Combines, the NFL will use best efforts to ensure that the NFLPA will be permitted to present one-hour orientations for all of the college players attending the session. The orientation will include only information on the Career Planning Program, the Chemical Dependency Program, the NFLPA Agent Certification System, and other information contained in this Agreement and will encourage the players to participate fully in all activities of the Scouting Combine. The NFLPA will also have the right to space in the public area of the players' hotel, staffed by NFLPA employees, to provide information requested by players during their free time at the Combine. The NFLPA and the NFL will also sponsor an orientation with an agreed-upon agenda for all rookies on a Club-by-Club basis during the first half of the NFL regular season, which meetings may take place on the players' day off if no other mutually acceptable day is agreed upon.

> *\* Attendance at the annual Rookie Symposium shall be mandatory for all Rookies invited to the Symposium. A material failure to attend the entire Symposium (e.g., missing more than one presentation) that is unexcused by the NFLMC will result in a fine of $11,000 for the 2002-04 League Years and $12,000 for the 2005-07 League Years. The NFLPA and the NFLMC shall each use its best efforts to encourage players to participate fully in all symposium activities and to abide by all symposium rules (e.g., dress code, curfew, etc.). Being late for or missing curfew will result in a fine at the then applicable amount under Article VIII of the CBA. Other lateness for meetings or similar Article VIII violations*

Article V, Union Security

*will be disciplined at the applicable fine amounts. Discipline shall be imposed, if appropriate, by the NFLMC, not by any Club.*

    *\* Side Letter 1/25/99, as modified by Extension Agreement 1/8/02*

# ARTICLE VI
# NFLPA AGENT CERTIFICATION

**Section 1. Exclusive Representation:** The NFLMC and the Clubs recognize that the NFLPA regulates the conduct of agents who represent players in individual contract negotiations with Clubs. The NFLMC and the Clubs agree that the Clubs are prohibited from engaging in individual contract negotiations with any agent who is not listed by the NFLPA as being duly certified by the NFLPA in accordance with its role as exclusive bargaining agent for NFL players. The NFLPA shall provide and publish a list of agents who are currently certified in accordance with its agent regulation system, and shall notify the NFLMC and the Clubs of any deletions or additions to the list pursuant to its procedures. The NFLPA agrees that it shall not delete any agent from its list until that agent has exhausted the opportunity to appeal the deletion to a neutral arbitrator pursuant to its agent regulation system, *except: (i) where an agent has failed to pass a written examination given to agents by the NFLPA or (ii) in extraordinary circumstances where the NFLPA's investigation discloses that the agent's conduct is of such a serious nature as to justify immediately invalidating the agent's certification.* The NFLPA shall have sole and exclusive authority to determine the number of agents to be certified, and the grounds for withdrawing or denying certification of an agent. The NFLPA agrees that it will not discipline, dismiss or decertify agents based upon the results they achieve or do not achieve in negotiating terms or conditions of employment with NFL Clubs.

*\* Side Letter 8/1/00*

**Section 2. Enforcement:** Under procedures to be established by agreement between the NFL and the NFLPA, the Commissioner shall disapprove any NFL Player Contract(s) between a player and a Club unless such player: (a) is represented in the negotiations with respect to such NFL Player Contract(s) by an agent or representative duly certified by the NFLPA in accordance with the NFLPA agent regulation system and authorized to represent him; or (b) acts on his own behalf in negotiating such NFL Player Contract(s).

**Section 3. Penalty:** Under procedures to be established by agreement between the NFL and the NFLPA, the NFL shall impose a fine of $10,000 upon any Club that negotiates any NFL Player Contract(s) with an agent or representative not certified by the NFLPA in accordance with the NFLPA agent regulation system if, at the time of such negotiations, such Club either (a) knows that such agent or representative has not been so certified or (b) fails to make reasonable inquiry of the NFLPA as to whether such agent or representative has been so certified. Such fine shall not apply, however, if the negotiation in question is the first violation of this Article by the Club during the term of this Agreement. It shall not be a violation of this Article for a Club to negotiate with any person named on (or not deleted

**17**

Article VI, NFLPA Agent Certification

from) the most recently published list of agents certified by the NFLPA to represent players.

# ARTICLE VII
# PLAYER SECURITY

*Section 1*. **No Discrimination**: There will be no discrimination in any form against any player by the Management Council, any Club or by the NFLPA because of race, religion, national origin or activity or lack of activity on behalf of the NFLPA.

*Section 2*. **Personal Appearance**: Clubs may make and enforce reasonable rules governing players' appearance on the field and in public places while representing the Clubs; provided, however, that no player will be disciplined because of hair length or facial hair.

# ARTICLE VIII
# CLUB DISCIPLINE

**Section 1. Maximum Discipline:**

(a)      For the 1993 League Year, the following maximum discipline schedule will be applicable:

Overweight—maximum fine of $50 per lb./per day.

Unexcused late reporting for mandatory off-season training camp, team meeting, practice, transportation, curfew, scheduled appointment with Club physician or trainer, or scheduled promotional activity—maximum fine of $200.

Failure to promptly report injury to Club physician or trainer—maximum fine of $200.

Losing, damaging or altering Club-provided equipment—maximum fine of $200 and replacement cost, if any.

Throwing football into stands—maximum fine of $200.

Unexcused late reporting for or absence from pre-season training camp by a player under contract except those signed as an Unrestricted Free Agent pursuant to Article XIX (Veteran Free Agency)—maximum fine of $4,000 per day for the 1993-95 League years, $5,000 per day for the *1996-2004 League Years and $6,000 per day for the 2005-07* League Years.

Unexcused late reporting for or absence from pre-season training camp by a player under contract signed as an Unrestricted Free Agent pursuant to Article XIX (Veteran Free Agency)—maximum fine of $4,000 per day for the 1993-95 League years, $5,000 per day for the *1996-2004 League Years and $6,000 per day for the 2005-07* League Years, plus one week's regular season salary for each pre-season game missed.

Unexcused missed mandatory off-season training camp, team meeting, practice, curfew, bed check, scheduled appointment with Club physician or trainer, material failure to follow Club rehabilitation directions, or scheduled promotional activity—maximum fine of $1,000.

Material failure to follow rehabilitation program prescribed by Club physician or trainer—maximum fine of $1,000.

Unexcused missed team transportation—maximum fine of $1,000 and transportation expense, if any.

Loss of all or part of playbook, scouting report or game plan—maximum fine of $1,000.

Ejection from game—maximum fine of $2,000.

Conduct detrimental to Club—maximum fine of an amount equal to one week's salary and/or suspension without pay for a period not to exceed four (4) weeks.

The Club will promptly notify the player of any discipline; notice of any Club fine in the $4,000/$5,000/*$6,000* maximum category and of any "conduct detrimental" fine or suspension will be sent to the NFLPA.

*\* Extension Agreement 1/8/02*

Article VIII, Club Discipline

(b)     The amounts set forth in Section 1(a) above shall be in effect for the 1993-95 League Years. Such fines shall be increased by 25% each for the 1996 League Year and each year thereafter during the term of this Agreement, except for those fines for which the specific increase is set forth in Section 1(a) above.

**Section 2. Published Lists:** All Clubs must publish and make available to all players at the commencement of pre-season training camp a complete list of the discipline which can be imposed for designated offenses within the limits set by the maximum schedule referred to in Section 1 above.

**Section 3. Uniformity:** Discipline will be imposed uniformly within a Club on all players for the same offense; however, the Club may specify the events which create an escalation of the discipline, provided the formula for escalation is uniform in its application. Any disciplinary action imposed upon a player by the Commissioner pursuant to Article XI (Commissioner Discipline) will preclude or supersede disciplinary action by the Club for the same act or conduct.

**Section 4. Disputes:** Any dispute involved in Club discipline may be made the subject of a non-injury grievance under Article IX (Non-Injury Grievance).

**Section 5. Deduction:** Any Club fine will be deducted at the rate of no more than $1,000 from each pay period, if sufficient pay periods remain; or, if less than sufficient pay periods remain, the fine will be deducted in equal installments over the number of remaining pay periods. This will not apply to a suspension.

21

# ARTICLE IX
# NON-INJURY GRIEVANCE

***Section 1*. Definition:** Any dispute (hereinafter referred to as a "grievance") arising after the execution of this Agreement and involving the interpretation of, application of, or compliance with, any provision of this Agreement, the NFL Player Contract, or any applicable provision of the NFL Constitution and Bylaws pertaining to terms and conditions of employment of NFL players, will be resolved exclusively in accordance with the procedure set forth in this Article, except wherever another method of dispute resolution is set forth elsewhere in this Agreement, and except wherever the Settlement Agreement provides that the Special Master, Impartial Arbitrator, the Federal District Court or the Accountants shall resolve a dispute.

***Section 2*. Initiation:** A grievance may be initiated by a player, a Club, the Management Council, or the NFLPA. A grievance must be initiated within forty-five (45) days from the date of the occurrence or non-occurrence upon which the grievance is based, or within forty-five (45) days from the date on which the facts of the matter became known or reasonably should have been known to the party initiating the grievance, whichever is later. A player need not be under contract to a Club at the time a grievance relating to him arises or at the time such grievance is initiated or processed.

***Section 3*. Filing:** Subject to the provisions of Section 2 above, a player or the NFLPA may initiate a grievance by filing a written notice by certified mail or fax with the Management Council and furnishing a copy of such notice to the Club(s) involved; a Club or the Management Council may initiate a grievance by filing written notice by certified mail or fax with the NFLPA and furnishing a copy of such notice to the player(s) involved. The notice will set forth the specifics of the alleged action or inaction giving rise to the grievance. If a grievance is filed by a player without the involvement of the NFLPA, the Management Council will promptly send copies of the grievance and the answer to the NFLPA. The party to whom a non-injury grievance has been presented will answer in writing by certified mail or fax within seven (7) days of receipt of the grievance. The answer will set forth admissions or denials as to the facts alleged in the grievance. If the answer denies the grievance, the specific grounds for denial will be set forth. The answering party will provide a copy of the answer to the player(s) or Club(s) involved and the NFLPA or the Management Council as may be applicable.

***Section 4*. Appeal:** If a grievance is not resolved after it has been filed and answered, either the player(s) or Club(s) involved, or the NFLPA, or the Management Council may appeal such grievance by filing a written notice of appeal with the Notice Arbitrator and mailing copies thereof to the party or parties against whom such appeal is taken, and either the NFLPA or

the Management Council as may be appropriate. If the grievance involves a suspension of a player by a Club, the player or NFLPA will have the option to appeal it immediately upon filing to the Notice Arbitrator and a hearing will be held by an arbitrator designated by the Notice Arbitrator within seven (7) days of the filing of the grievance. In addition, the NFLPA and the Management Council will each have the right of immediate appeal and hearing within seven (7) days with respect to four (4) grievances of their respective choice each calendar year. The arbitrator(s) designated to hear such grievances will issue their decision(s) within five (5) days of the completion of the hearing. Prehearing briefs may be filed by either party and, if filed, will be exchanged prior to hearing.

**Section 5. Discovery:** No later than ten (10) days prior to the hearing, each party will submit to the other copies of all documents, reports and records relevant to the dispute. Failure to submit such documents, reports and records no later than ten (10) days prior to the hearing will preclude the non-complying party from submitting such documents, reports and records into evidence at the hearing, but the other party will have the opportunity to examine such documents, reports and records at the hearing and to introduce those it desires into evidence, except that relevant documents submitted to the opposing party less than ten (10) days before the hearing will be admissible provided that the proffering party and the custodian(s) of the documents made a good faith effort to obtain (or discover the existence of) said documents or that the document's relevance was not discovered until the hearing date. In the case of an expedited grievance pursuant to Section 4, such documentary evidence shall be exchanged on or before two (2) days prior to the hearing unless the arbitrator indicates otherwise.

**Section 6. Arbitration Panel:** There will be a panel of four (4) arbitrators, whose appointment must be accepted in writing by the NFLPA and the Management Council. The parties will designate the Notice Arbitrator within ten (10) days of the execution of this Agreement. In the event of a vacancy in the position of Notice Arbitrator, the senior arbitrator in terms of affiliation with this Agreement will succeed to the position of Notice Arbitrator, and the resultant vacancy on the panel will be filled according to the procedures of this Section. Either party to this Agreement may discharge a member of the arbitration panel by serving written notice upon the arbitrator and the other party to this Agreement between December 1 and 10 of each year, but at no time shall such discharges result in no arbitrators remaining on the panel. If either party discharges an arbitrator, the other party shall have two (2) business days to discharge any other arbitrator. If the parties are unable to agree on a new arbitrator within thirty (30) days of any vacancy, the Notice Arbitrator shall submit a list of ten (10) qualified and experienced arbitrators to the NFLPA and the Management Council. With-

Article IX, Non-Injury Grievance

in fourteen (14) days of the receipt of the list, the NFLPA and the Management Council shall select one arbitrator from the list by alternately striking names until only one remains, with a coin flip determining the first strike. The next vacancy occurring will be filled in similar fashion, with the party who initially struck first then striking second. The parties will alternate striking first for future vacancies occurring thereafter during the term of this Agreement. If either party fails to cooperate in the striking process, the other party may select one of the nominees on the list and the other party will be bound by such selection.

*Section 7.* **Hearing**: Each arbitrator will designate a minimum of twelve (12) hearing dates per year, exclusive of the period July 15 through September 10 for non-expedited cases, for use by the parties to this Agreement. Upon being appointed, each arbitrator will, after consultation with the Notice Arbitrator, provide to the NFLPA and the Management Council specified hearing dates for such ensuing period, which process will be repeated on an annual basis thereafter. The parties will notify each arbitrator thirty (30) days in advance of which dates the following month are going to be used by the parties. The designated arbitrator will set the hearing on his next reserved date in the Club city unless the parties agree otherwise. If a grievance is set for hearing and the hearing date is then postponed by a party within thirty (30) days of the hearing date, the postponement fee of the arbitrator will be borne by the postponing party unless the arbitrator determines that the postponement was for good cause. Should good cause be found, the parties will share any postponement costs equally. If the arbitrator in question cannot reschedule the hearing within thirty (30) days of the postponed date, the case may be reassigned by the Notice Arbitrator to another panel member who has a hearing date available within the thirty (30) day period. At the hearing, the parties to the grievance and the NFLPA and Management Council will have the right to present, by testimony or otherwise, and subject to Section 5, any evidence relevant to the grievance. All hearings will be transcribed.

If a witness is unable to attend the hearing, the party offering the testimony shall inform the other party of the identity and unavailability of the witness to attend the hearing. At the hearing or within fourteen (14) days thereafter, the party offering the testimony of the unavailable witness must offer the other party two possible dates within the next forty-five (45) days to take the witness' testimony. The other party shall have the opportunity to choose the date. The record should be closed sixty (60) days after the hearing date unless mutually extended notwithstanding any party's failure to present post-hearing testimony within the above-mentioned time period. If a witness is unavailable to come to the hearing, the witness' testimony may be taken by telephone conference call if the parties agree. In cases where the amount claimed is less than $25,000, the parties may agree to hold the hearing by telephone conference call. If either party requests post-

24

hearing briefs, the parties shall prepare and simultaneously submit briefs except in grievances involving non-suspension Club discipline where less than $25,000 is at issue, in which cases briefs will not be submitted. Briefs must be submitted to the arbitrator postmarked no later than sixty (60) days after receipt of the last transcript.

**Section 8. Arbitrator's Decision and Award**: The arbitrator will issue a written decision within thirty (30) days of the submission of briefs, but in no event shall he consider briefs filed by either party more than sixty (60) days after receipt of the last transcript, unless the parties agree otherwise. The decision of the arbitrator will constitute full, final and complete disposition of the grievance, and will be binding upon the player(s) and Club(s) involved and the parties to this Agreement; provided, however, that the arbitrator will not have the jurisdiction or authority: (a) to add to, subtract from, or alter in any way the provisions of this Agreement or any other applicable document; or (b) to grant any remedy other than a money award, an order of reinstatement, suspension without pay, a stay of suspension pending decision, a cease and desist order, a credit or benefit award under the Bert Bell/Pete Rozelle NFL Player Retirement Plan, or an order of compliance, with a specific term of this Agreement or any other applicable document, or an advisory opinion pursuant to Article XIII (Committees), Section 1(c). In the event the arbitrator finds liability on the part of the Club, he shall award interest beginning one year from the date of the last regular season game of the season of the grievance. The interest shall be calculated at the one-year Treasury *Note* rate published in the Wall Street Journal as of *February* 1 (or the next date published) of each year, and such rate shall apply to any interest awarded during each such subsequent twelve (12) month period.

*\*Extension Agreement 1/8/02*

**Section 9. Time Limits:** Each of the time limits set forth in this Article may be extended by mutual written agreement of the parties involved. If any grievance is not processed or resolved in accordance with the prescribed time limits within any step, unless an extension of time has been mutually agreed upon in writing, either the player, the NFLPA, the Club or the Management Council, as the case may be, after notifying the other party of its intent in writing, may proceed to the next step.

**Section 10. Representation**: In any hearing provided for in this Article, a player may be accompanied by counsel of his choice and/or a representative of the NFLPA. In any such hearing, a Club representative may be accompanied by counsel of his choice and/or a representative of the Management Council.

Article IX, Non-Injury Grievance

*Section 11.* **Costs**: All costs of arbitration, including the fees and expenses of the arbitrator and the transcript costs, will be borne equally between the parties. Notwithstanding the above, if the hearing occurs in the Club city and if the arbitrator finds liability on the part of the Club, the arbitrator shall award the player reasonable expenses incurred in traveling to and from his residence to the Club city and one night's lodging.

*Section 12.* **Payment**: If an award is made by the arbitrator, payment will be made within thirty (30) days of the receipt of the award to the player or jointly to the player and the NFLPA provided the player has given written authorization for such joint payment. The time limit for payment may be extended by mutual consent of the parties or by a finding of good cause for the extension by the arbitrator. Where payment is unduly delayed beyond thirty (30) days, interest will be assessed against the Club from the date of the decision. Interest shall be calculated at double the one-year Treasury *Note* rate published in the Wall Street Journal as of *February* 1 (or next date published) of each year, and such rate shall apply to the interest awarded during each subsequent twelve (12) month period in lieu of continuation of any pre-award interest. The arbitrator shall retain jurisdiction of the case for the purpose of awarding post-hearing interest pursuant to this Section.

*\*Extension Agreement 1/8/02*

*Section 13.* **Grievance Settlement Committee**: A grievance settlement committee consisting of the Executive Director of the NFLPA and the Executive Vice President for Labor Relations of the NFL shall have the authority to resolve any grievance filed under this Article. This committee shall meet periodically to discuss and consider pending grievances. No evidence will be taken at such meetings, except parties involved in the grievance may be contacted to obtain information about their dispute. If the committee resolves any grievance by mutual agreement of the two members, such resolution will be made in writing and will constitute full, final and complete disposition of the grievance and will be binding upon the player(s) and the Club(s) involved and the parties to this Agreement. Consideration of any grievance by this committee shall not in any way delay its processing through the non-injury grievance procedure described in this Article, and no grievance may be resolved pursuant to this Section once an arbitration hearing has been convened pursuant to Section 7 hereof.

# ARTICLE X
# INJURY GRIEVANCE

**Section 1. Definition:** An "injury grievance" is a claim or complaint that, at the time a player's NFL Player Contract was terminated by a Club, the player was physically unable to perform the services required of him by that contract because of an injury incurred in the performance of his services under that contract. All time limitations in this Article may be extended by mutual agreement of the parties.

**Section 2. Filing:** Any player and/or the NFLPA must present an injury grievance in writing to a Club, with a copy to the Management Council, within twenty-five (25) days from the date it became known or should have become known to the player that his contract had been terminated. The grievance will set forth the approximate date of the alleged injury and its general nature. If a grievance is filed by a player without the involvement of the NFLPA, the Management Council will promptly send copies of the grievance and the answer to the NFLPA.

**Section 3. Answer:** The Club to which an injury grievance has been presented will answer in writing within seven (7) days. If the answer contains a denial of the claim, the general grounds for such denial will be set forth. The answer may raise any special defense, including but not limited to the following:

(a)     That the player did not pass the physical examination administered by the Club physician at the beginning of the pre-season training camp for the year in question. This defense will not be available if the player participated in any team drills following his physical examination or in any preseason or regular season game; provided, however, that the Club physician may require the player to undergo certain exercises or activities, not team drills, to determine whether the player will pass the physical examination;

(b)     That the player failed to make full and complete disclosure of his known physical or mental condition when questioned during the physical examination;

(c)     That the player's injury occurred prior to the physical examination and the player knowingly executed a waiver or release prior to the physical examination or his commencement of practice for the season in question which specifically pertained to such prior injury;

(d)     That the player's injury arose solely from a non-football-related cause subsequent to the physical examination;

(e)     That subsequent to the physical examination the player suffered no new football-related injury;

(f)     That subsequent to the physical examination the player suffered no football-related aggravation of a prior injury reducing his physical ca-

**27**

Article X, Injury Grievance

pacity below the level existing at the time of his physical examination as contemporaneously recorded by the Club physician.

*Section 4*. **Neutral Physician:** The player must present himself for examination by a neutral physician in the Club city or the Club city closest to the player's residence within twenty (20) days from the date of the grievance. This time period may be extended by mutual consent if the neutral physician is not available. Neither Club nor player may submit any medical records to the neutral physician, nor may the Club physician or player's physician communicate with the neutral physician. The player will notify the Club of the identity of the neutral physician by whom he is to be examined as soon as possible subsequent to a selection by the player. The neutral physician will not become the treating physician nor will the neutral physician examination involve more than one office visit without the prior approval of both the NFLPA and Management Council. The neutral physician may review any objective medical tests which all parties mutually agree to provide. The neutral physician is further authorized to perform any necessary diagnostic tests after consultation with the parties. The neutral physician is required to submit to the parties a detailed typewritten medical report of his examination. In order to facilitate settlement of grievances, the parties periodically will consult with neutral physicians by telephone conference call to obtain preliminary opinions as to the length of time, if any, after their examinations before players would be physically able to perform contract services. The NFLPA will use its best efforts to make the neutral physicians in each Club city equally available to the players who file injury grievances.

*Section 5*. **Neutral Physician List:** The NFLPA and the Management Council will maintain a jointly approved list of neutral physicians, including at least two orthopedic physicians in each city in which a Club is located. This list will be subject to review and modification between February 1 and April 15 of each year, at which time either party may eliminate any two neutral physicians from the list by written notice to the other party. When vacancies occur, the NFLPA and the Management Council will each submit a list of three (3) orthopedic physicians to the other party within thirty (30) days for each NFL city where a vacancy exists. If the parties are unable to agree on a replacement, within ten (10) days they will select a neutral physician for each city by alternately striking names. The party to strike a name first will be determined by a flip of a coin. If either party fails to cooperate in the striking process the other party may select one of the nominees on its list, and the other party will be bound by such selection. The next vacancy occurring will be filled in similar fashion with the party who initially struck first then striking second. The parties will alternate striking first for future vacancies occurring thereafter during the term of this Agreement.

28

*Section 6.* **Appeal:** A grievance may be appealed to an arbitrator by filing of written notice of appeal with the chairman of the arbitration panel within thirty (30) days from the date of receipt of the neutral physician's written report.

*Section 7.* **Arbitration Panel:** There will be a panel of five (5) arbitrators, whose appointment must be accepted in writing by the NFLPA and the Management Council. The parties have designated Arthur Stark as the Chairman of the panel. In the event of a vacancy in the position of the Chairman of the panel, the senior arbitrator in terms of affiliation with this Agreement will succeed to the position of Chairman of the panel, and the resultant vacancy on the panel will be filled according to the procedures of this Section. Either party to this Agreement may discharge a member of the arbitration panel by serving written notice upon the arbitrator and the other party to this Agreement between December 1 and 10 of each year, but at no time shall such discharges result in no arbitrators remaining on the panel. If either party discharges an arbitrator, the other party shall have two (2) business days to discharge any other arbitrator. Any vacancies occurring on the arbitration panel will be filled as follows: If the parties are unable to agree to a new arbitrator within thirty (30) days of the occurrence of the vacancy, the Chairman of the panel shall submit a list of ten (10) qualified and experienced arbitrators to the NFLPA and the Management Council. Within fourteen (14) days of the receipt of the list, the NFLPA and the Management Council shall select one arbitrator from the list by alternately striking names until only one remains, with a coin flip determining the first strike. The next vacancy occurring will be filled in similar fashion, with the party who initially struck first then striking second. The parties will alternate striking first for future vacancies occurring thereafter during the term of this Agreement. If either party fails to cooperate in the striking process, the other party may select one of the nominees on the list and the other party will be bound by such selection.

*Section 8.* **Hearing:** Each arbitrator shall designate a minimum of twelve hearing dates per year, exclusive of the period July 15 through September 10, for use by the parties to this Agreement. Upon being appointed, each arbitrator will, after consultation with the Chairman, provide to the NFLPA and the Management Council specified hearing dates for each of the ensuing six months, which process will be repeated on a semiannual basis thereafter. The parties will notify each arbitrator thirty (30) days in advance of which dates the following month are going to be used by the parties. The designated arbitrator will set the hearing on his or her next reserved date in the Club city, unless the parties agree otherwise. If a grievance is set for hearing and the hearing date is then postponed by a party within thirty (30) days of the hearing date, the postponement fee of the arbitrator will be borne by the postponing party unless the arbitrator determines that the

Article X, Injury Grievance

postponement was for good cause. Should good cause be found, the parties will share any postponement costs equally. If the arbitrator in question cannot reschedule the hearing within thirty (30) days of the postponed date, the case may be reassigned by the Chairman to another panel member who has a hearing date available within the thirty (30) day period. At the hearing, the parties to the grievance and the NFLPA and Management Council will have the right to present, by testimony or otherwise, any evidence relevant to the grievance. The NFLPA and the Management Council have the right to attend all grievance hearings. All hearings shall be transcribed.

If a witness is unable to attend the hearing, the party offering the testimony shall inform the other party of the identity and unavailability of the witness to attend the hearing. At the hearing or within fourteen (14) days thereafter, the party offering the testimony of the unavailable witness must offer the other party two possible dates within the next forty-five (45) days to take the witness' testimony. The other party shall have the opportunity to choose the date. The record should be closed sixty (60) days after the hearing date unless mutually extended notwithstanding any party's failure to present post-hearing testimony within the above-mentioned time period. If a witness is unavailable to come to the hearing, the witness' testimony may be taken by telephone conference call if the parties agree. In cases where the amount claimed is less than $25,000, the parties may agree to hold the hearing by telephone conference call.

Post-hearing briefs must be submitted to the arbitrator postmarked no later than sixty-five (65) days after receipt of the last transcript. The arbitrator will issue a written decision within thirty (30) days of the submission of briefs but shall not consider briefs filed by either party more than sixty-five (65) days after receipt of the last transcript, unless the parties agree otherwise. The arbitrator's decision will be final and binding; provided, however, that no arbitrator will have the authority to add to, subtract from, or alter in any way any provision of this Agreement or any other applicable document. In the event the arbitrator finds liability on the part of the Club, he shall award interest beginning one year from the date of the last regular season game of the season of injury. The interest shall be calculated at the one-year Treasury *Note* rate published in The Wall Street Journal as of *February* 1 (or the next date published) of each year, and such rate shall apply to any interest awarded during each such subsequent twelve (12) month period.

*Extension Agreement 1/8/02*

**Section 9. Miscellaneous**: The arbitrator will consider the neutral physician's findings conclusive with regard to the physical condition of the player and the extent of an injury at the time of his examination by the neutral physician. The arbitrator will decide the dispute in light of this finding and such other issues or defenses which may have been properly submitted to him. The Club or the Management Council must advise the grievant and

**30**

as follows:

(i)     For Restricted Free Agents with three Accrued Seasons:

(1)    <u>Right of First Refusal</u>: one year Player Contract with Paragraph 5 Salary of at least $275,000;

(2)    <u>Right of First Refusal and Draft Selection at Player's Original Draft Round</u>: one year Player Contract with a Paragraph 5 Salary of at least (a) $275,000, or (b) 110% of the player's prior year's Paragraph 5 Salary, whichever is greater; in addition, if option (b) applies, all other terms of the player's prior year contract are carried forward unchanged (this subsection is subject to the rules of subsection (c) below);

(3)    <u>Right of First Refusal and One First Round Draft Selection</u>: one year Player Contract with a Paragraph 5 Salary of at least (a) $600,000, or (b) 110% of the player's prior year's Paragraph 5 Salary, whichever is greater; in addition, if option (b) applies, all other terms of the player's prior year contract are carried forward unchanged;

(4)    <u>Right of First Refusal, One First Round Draft Selection, and One Third Round Draft Selection</u>: one year Player Contract with a Paragraph 5 Salary of at least (a) $800,000, or (b) 110% of the player's prior year's Paragraph 5 Salary, whichever is greater; in addition, if option (b) applies, all other terms of the player's prior year contract are carried forward unchanged;

(ii)    For Restricted Free Agents with four Accrued Seasons (in Uncapped Years):

(1)    <u>Right of First Refusal</u>: one year Player Contract with Paragraph 5 Salary of at least $325,000;

(2)    <u>Right of First Refusal and Draft Selection at Player's Original Draft Round</u>: one year Player Contract with a Paragraph 5 Salary of at least (a) $325,000, or (b) 110% of the player's prior year's Paragraph 5 Salary, whichever is greater; in addition, if option (b) applies, all other terms of the player's prior year contract are carried forward unchanged (this subsection is subject to the rules of subsection (c) below);

(3)    <u>Right of First Refusal and One First Round Draft Selection</u>: one year Player Contract with a Paragraph 5 Salary of at least (a) $700,000, or (b) 110% of the player's prior year's Paragraph 5 Salary, whichever is greater; in addition, if option (b) applies, all other terms of the player's prior year contract are carried forward unchanged; and

(4)    <u>Right of First Refusal, One First Round Draft Selection, and One Third Round Draft Selection</u>: one year Player Contract with Paragraph 5 Salary of at least (a) $900,000, or (b) 110% of the player's prior year's Paragraph 5 Salary, whichever is greater; in addition, if option (b) applies, all other terms of the player's prior year contract are carried forward unchanged.

(c)    Notwithstanding subparagraphs 2(b)(i) and 2(b)(ii) above, in the event that a Prior Club tenders any of its Restricted Free Agents originally selected in a draft round lower than the first round a Qualifying Offer

that requires Draft Choice Compensation of one first round selection (the "Upgraded Tender"), the Prior Club shall only be eligible to receive Draft Choice Compensation of one second round selection for any of its Restricted Free Agents originally selected in the first round of the Draft, unless such Restricted Free Agents have each received a Qualifying Offer of at least the amount of the Upgraded Tender.

(d)      Notwithstanding subsections 2(b)(i) and 2(b)(ii) above, in the event that the player was originally selected in a draft round after the seventh round, a Qualifying Offer in the amount required to obtain a Right of First Refusal and Draft Choice Compensation at the Player's original Draft Round shall entitle a Club only to a Right of First Refusal for such player.

(e)      The amounts of the Qualifying Offers specified in this paragraph ($275,000, $325,000, $600,000, $700,000, $800,000 and $900,000) shall increase each League Year following the 1993 League Year by the same percentage as the increase in Projected DGR over the prior League Year's DGR (as defined in Article XXIV), up to a maximum of ten percent (10%) per League Year, but shall not in any event decrease in actual amount from League Year to League Year. Notwithstanding the foregoing, in no event shall Qualifying Offer amounts increase if the projected DGR for the League Year in question is not greater than the highest DGR of any previous League Year.

(f)      A Restricted Free Agent shall have the option of accepting a one year NFL Player Contract for 110% of his Prior Year Paragraph 5 Salary (with all other terms of his prior year contract carried forward unchanged) in lieu of a Player Contract for the applicable alternative amount specified in this paragraph, if he so wishes, regardless of which Player Contract is for a greater amount.

(g)      In the event a Prior Club withdraws its Qualifying Offer, the Restricted Free Agent shall immediately become an Unrestricted Free Agent and shall be completely free to negotiate and sign a Player Contract with any Club, and any Club shall be completely free to negotiate and sign a Player Contract with any such player, without being subject to First Refusal, Draft Choice Compensation, Signing Period, or any other limitation of any kind.

** See Page 44, Article XIV, Section 8 for Side Letter of 3/3/97, Section 1 re: Good Faith of Required Tender.


(h)      **Signing Period.** *The dates of the period in which Restricted Free Agents shall be free to negotiate and sign a Player Contract with any Club (the "Signing Period") shall be agreed upon by the NFL and the NFLPA by the previous September 1, but in no event may such Signing Period be less than a period of forty-five days, unless the parties agree otherwise.*

*\* Side Letter 1/22/01*

**62**

(i) (i)    In the event that a Restricted Free Agent has not signed a Player Contract with a Club within the Signing Period in the League Year following the expiration of his last Player Contract, and if the Prior Club by June 1 tenders to the Restricted Free Agent a one year Player Contract of at least 110% of his Paragraph 5 Salary (with all other terms of his prior year contract carried forward unchanged) or extends the player's Qualifying Offer, whichever is greater (the "June 1 Tender"), the Prior Club shall be the only Club with which the player may negotiate or sign a Player Contract during the period from June 1 until the Tuesday following the tenth week of the regular season, at 4:00 p.m. New York time. If the player's Qualifying Offer is greater than 110% of the player's Paragraph 5 Salary (with all other terms of his prior year contract carried forward unchanged), the Club may withdraw the Qualifying Offer on June 15 and retain its rights under the preceding sentence, so long as the Club immediately tenders the player a one year Player Contract of at least 110% of his Paragraph 5 Salary (with all other terms of his prior year contract carried forward unchanged) (the "June 15 Tender").

(ii)    If a Restricted Free Agent described in subsection (i)(i) above has not signed a Player Contract by the Tuesday following the tenth week of the regular season, at 4:00 p.m. New York time, the player shall not play football in the NFL for the remainder of that League Year, absent a showing to the Impartial Arbitrator of extreme Club or extreme personal hardship. The determination of the Impartial Arbitrator shall be made within five days of the application, and shall consider all information relating to such hardship submitted by such date. The determination of the Impartial Arbitrator shall be final and binding upon all parties.

(iii)    If a Restricted Free Agent does not play in the NFL in a League Year, his Prior Team shall have the right to tender such player any Qualifying Offer consistent with Section 2(b) prior to the next League Year's Restricted Free Agent Signing Period. In the event such a Qualifying Offer is tendered, the Prior Team shall have the applicable rights regarding such player according to such tender, and such player shall have the same rights regarding negotiations with other Clubs as he had the previous League Year.

(j)    In the event that a Restricted Free Agent has not signed a Player Contract with a Club by June 1 in the League Year following the expiration of his last Player Contract, and if his Prior Club has not by that date made the applicable June 1 Tender to such player, or withdraws the tender, or in the event the Club has withdrawn the applicable June 15 Tender, the player shall be completely free to negotiate and sign a Player Contract with any Club, and any Club may negotiate and sign a Player Contract with such player, without any penalty or restriction, including, but not limited to, Draft Choice Compensation between Clubs or First Refusal Rights of any kind, or any signing period.

(k)    Promptly upon but no later than two business days after the signing of any Restricted Free Agent to a Player Contract, or the extending

Article XIX, Veteran Free Agency

to any Restricted Free Agent of a Qualifying Offer, the signing or extending Club shall notify the NFL, which shall notify the NFLPA of such signing or offer.

** See Pages 41-42, Article XIV, Section 5(a) for Side Letter of 5/24/95, Section 13 and Side Letter 3/3/97, Section 2 re: Notice of Signing.

(l)    Draft Choice Compensation under this Article shall be due in that League Year's Draft unless the Offer Sheet is received by the Prior Club later than two days before that League Year's Draft, in which case Draft Choice Compensation shall be due in the following League Year's Draft.

(m)    Notwithstanding the foregoing, in the event that the Prior Club of a Restricted Free Agent has tendered the player a Qualifying Offer pursuant to this Article XIX, Section 2(m) in an amount at least $500,000 greater than that specified by Sections 2(b)(i)(4) or 2(b)(ii)(4) above, as applicable depending upon whether the League Year is a Capped Year or an Uncapped Year, or by Article LVI, Section 2(b), if applicable, then the Club shall have a Right of First Refusal and Draft Choice Compensation of only One First Round Selection, but any provision in an Offer Sheet to such player waiving or limiting the New Club's ability to designate the player as a Franchise Player or Transition Player in the future shall not be a Principal Term, and therefore need not be included in a contract formed with the Prior Club as a result of matching such an Offer Sheet (but shall be included in a contract formed with the New Club as a result of the Prior Club not matching such an Offer Sheet).

**Section 3. Offer Sheet and First Refusal Procedures:**

(a)    Offer Sheets. When a Restricted Free Agent receives an offer to sign a Player Contract from any Club (the "New Club") other than the Prior Club, which offer the player desires to accept, he shall give to the Prior Club a completed certificate substantially in the form of Appendix D, attached hereto (the "Offer Sheet"), signed by the Restricted Free Agent and the New Club, which shall contain the "Principal Terms" (as defined below) of the New Club's offer. The Prior Club, within seven days from the date it receives the Offer Sheet, may exercise or not exercise its Right of First Refusal, which shall have the legal consequences set forth below.

(b)    First Refusal Exercise Notice. If the Prior Club gives the Restricted Free Agent a "First Refusal Exercise Notice" substantially in the form of Appendix E, attached hereto, within seven days from the date the Prior Club receives an Offer Sheet, but not later than four days before the Draft, such Restricted Free Agent and the Prior Club shall be deemed to have entered into a binding agreement, which they shall promptly formalize in a Player Contract, containing (i) all the Principal Terms (subject to subsection (e) below); (ii) those terms of the NFL Player Contract not modified by the Principal Terms; and (iii) such additional terms, not less favor-

64

able to the player than those contained in the Offer Sheet, as may be agreed upon between the Restricted Free Agent and the Prior Club.

(c)     No First Refusal Exercise Notice. If the Prior Club does not give the Restricted Free Agent the First Refusal Exercise Notice within the applicable period, the player and the New Club shall be deemed to have entered into a binding agreement, which they shall promptly formalize in a Player Contract, containing (i) all the Principal Terms; (ii) those terms of the NFL Player Contract not modified by the Principal Terms; and (iii) such additional terms, not less favorable to the Restricted Free Agent than those contained in the Offer Sheet, as may be agreed upon between the Restricted Free Agent and the New Club (subject to Section 5 below), and the Restricted Free Agent's Prior Club shall receive from the New Club the Draft Choice Compensation, if any, specified in Section 2 above of this Article. Any Club that does not have available, in the upcoming Draft, the selection choice or choices (its own or better choices in the applicable rounds) needed to provide Draft Choice Compensation in the event of a timely First Refusal Exercise Notice may not sign an Offer Sheet in such circumstances. The player and the New Club may not renegotiate such Player Contract to reduce the Salary in such contract until the date after the trading deadline in that League Year.

> \* Neither the Player nor the New Club may exercise an option in such Player Contract that reduces Salary in the first League Year of such contract until the date after the trading deadline in that League Year.
>                                          *Side Letter 4/16/98

(d)     One Offer Sheet. There may be only one Offer Sheet signed by a Restricted Free Agent outstanding at any one time, provided that the Offer Sheet has also been signed by a Club. An Offer Sheet, before or after it is given to the Prior Club, may be revoked or withdrawn only by the Clubs upon the written consent of the Restricted Free Agent. In either of such events, the Restricted Free Agent shall again be free to negotiate and sign a Player Contract with any Club, and any Club shall again be free to negotiate and sign a Player Contract with such Restricted Free Agent, subject to the Prior Club's continued Right of First Refusal and/or Draft Choice Compensation as described in this section.

(e)     Principal Terms. For the purposes of this section, the Principal Terms of an Offer Sheet are only:

(i)     Salary, which shall consist only of: (a) the fixed and specified dollar amounts the New Club will pay, guarantee or lend to the Restricted Free Agent and/or his designees (currently and/or as deferred compensation in specified installments on specified dates) in consideration for his services as a football player under the Player Contract (i.e., signing bonus, Paragraph 5 Salary, and reporting and roster bonuses); and (b) Salary that is

Article XIX, Veteran Free Agency

variable and/or is subject to calculation only upon the following bases: (i) based upon performance of the Club extending the Offer Sheet (only those incentives which are "likely to be earned" by the player if he enters into a Player Contract with the New Club, pursuant to subsection (c) above, must be matched by the Prior Club for the purpose of exercising a Right of First Refusal, and such incentives may not exceed fifteen percent (15%) of the Salary in the Offer Sheet); and (ii) generally recognized league honors to be agreed upon by the parties; and

(ii)     Any modifications of and additions to the terms contained in the NFL Player Contract requested by the Restricted Free Agent and acceptable to the New Club, that relate to non-compensation terms (including guarantees, no-cut, and no-trade provisions) of the Restricted Free Agent's employment as a football player (which shall be evidenced either by a copy of the NFL Player Contract, marked to show changes, or by a brief written summary contained in or attached to the Offer Sheet).

(f)     No Property or Investments. A Club may not offer any item of property or investments other than Salary as part of the Principal Terms contained in an Offer Sheet.

(g)     Incentives. For those incentives which are based on Club performance, only those incentives which are "likely to be earned" by the player if he enters into a Player Contract with the New Club, pursuant to subsection (c) above, must be matched by the Old Club for the purpose of exercising a Right of First Refusal.

(h)     No Consideration Between Clubs. There may be no consideration of any kind given by one Club to another Club in exchange for a Club's decision to exercise or not to exercise its Right of First Refusal, or in exchange for a Club's decision to submit or not to submit an Offer Sheet to a Restricted Free Agent or to make or not to make an offer to enter into a Player Contract with a Restricted Free Agent. If a Club exercises its Right of First Refusal and matches an Offer Sheet, that Club may not trade that player to the Club that submitted the Offer Sheet for at least one calendar year, unless the player consents to such trade.

(i)     NFL Only. No Right of First Refusal rule, practice, policy, regulation, or agreement, including any Right of First Refusal applicable to any Restricted Free Agent or Transition Player pursuant to Article XX (Franchise and Transition Players) below, may apply to the signing of a Player Contract with, or the playing with, any club in any professional football league other than the NFL by any Restricted Free Agent (except as agreed by the player in the circumstances set forth in Section 5 below). This prohibition applies to any Right of First Refusal described in this Agreement (except as described in Section 5 below).

(j)     No Assignment. No Right of First Refusal may be assigned to any other Club (except as provided in Article XVI (College Draft), Section 7 or as agreed by the player in the circumstances set forth in Section 5 below). This prohibition applies to any Right of First Refusal described in this

**66**

Agreement (except as described in Section 5 below), including any Right of First Refusal with respect to Restricted Free Agents, Transition Players, or Drafted Rookies described in Article XVI (College Draft), Section 5.

(k)      Copies. Promptly upon but no later than two business days after the giving of an Offer Sheet to the Prior Club, the Restricted Free Agent shall cause a copy thereof to be given to the NFL, which shall notify the NFLPA. Promptly upon but no later than two business days after the giving of a First Refusal Exercise Notice to the Restricted Free Agent, the Prior Club shall cause a copy thereof to be given to the NFL, which shall notify the NFLPA. At any time after the giving of an Offer Sheet to a Prior Club, the NFL may require the New Club to cause a copy thereof to be given to the NFL and the NFLPA by telecopy.

**Section 4. Expedited Arbitration:** An expedited arbitration before the Impartial Arbitrator, whose decision shall be final and binding upon all parties, shall be the exclusive method for resolving the disputes set forth in this Section. If a dispute arises between the player and either the Prior Club or the New Club, as the case may be, relating to their respective obligations to formalize their binding agreements created under sections 3(b) or (c) above, or as to whether the binding agreement is between the Restricted Free Agent and the New Club or the Restricted Free Agent and the Prior Club, such dispute shall immediately be submitted to the Impartial Arbitrator, who shall resolve such dispute within ten days but in no event later than two (2) days before the Draft. The Impartial Arbitrator shall not have the power to terminate any such binding agreement; he shall have the power only to direct the parties to formalize such binding agreement into a Player Contract in accordance with the Principal Terms of the applicable Offer Sheet, as interpreted by the Impartial Arbitrator.

**Section 5. Individually Negotiated Limitations on Player Movement:**

(a)      All individually negotiated limitations on player movement are prohibited, except as specifically provided as follows:

(i)      If a Restricted Free Agent has been tendered a Qualifying Offer of (a) Paragraph 5 Salary of at least $275,000 for a player with three Accrued Seasons, or (b) at least $325,000 for a player with four Accrued Seasons, or (c) at least 110% of his prior year's Paragraph 5 Salary, whichever is greater (in each case with all other terms of his prior contract carried forward), and the Qualifying Offer is fully guaranteed for skill and injury, the Restricted Free Agent and his Prior Club may negotiate and contract for an individual Right of First Refusal with respect to the services of such player.

(ii)      Any Unrestricted Free Agent shall be permitted to negotiate and contract for an individual Right of First Refusal with any Club with respect to the services of such player so long as the player is not a Franchise Player or Transition Player at the time of such negotiation and contract.

Article XIX, Veteran Free Agency

(b)      Any player (other than a Free Agent) with less than three Accrued Seasons is prohibited from negotiating any individual limitations on his movement in his Player Contract or otherwise, and all Clubs are prohibited from negotiating any such limitations with such players.

(c)      Any individual Right of First Refusal that is negotiated and contracted for pursuant to subsection (a) or (b) above shall be void and unenforceable unless it is specified in a separate document signed by such player in the form annexed hereto as Appendix F, acknowledging such player's waiver of the express right that Unrestricted Free Agents have under this Agreement to be free of any Right of First Refusal restriction on their freedom of movement.

(d)      Any individually negotiated Rights of First Refusal in any Player Contract existing at the time of the execution of this Agreement shall remain in effect only if written to supersede any litigation settlement agreement or any collective bargaining agreement ("CBA"). Existing individually negotiated Rights of First Refusal that provide that a CBA will govern shall be deemed to be superseded by this Agreement to the extent of any conflict.

(e)      The amounts specified in this section ($275,000 and $325,000) shall increase each League Year following the 1993 League Year by the same percentage as the increase in Projected DGR over the prior League Year's DGR as defined in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary), up to a maximum of ten percent (10%) per League Year, but shall not in any event decrease in actual amount from League Year to League Year. Notwithstanding the foregoing, in no event shall such tender amounts increase if the Projected DGR for the League Year in question is not greater than the highest DGR of any previous League Year.

(f)      Rights of First Refusal negotiated pursuant to this Section 5 may be traded or assigned as part of a player's contract.

**Section 6. Notices, Etc.:**

(a)      Any Offer Sheet, First Refusal Exercise Notice, or other writing required or permitted to be given under this Article XIX (Veteran Free Agency), shall be sent either by personal delivery or by overnight mail, or by telecopy (in each case a confirmation copy shall also be sent by certified or registered mail), addressed as follows:

> * The confirmation copy described in Article XIX, Section 6 (a) of the CBA may sent by first class mail, postage prepaid, instead of certified or registered mail.
> *Side Letter 5/24/95: Sec. 12

(i)      To any NFL Club: addressed to that Club at the principal address of such Club as then listed on the records of the NFL or at the Club's principal office, to the attention of the Club's president or general manager;

**68**

Article XIX, Veteran Free Agency

     (ii)     To the NFL, 280 Park Avenue, New York, New York  10017, to the attention of Executive Vice President-Labor Relations;

     (iii)     To a Restricted Free Agent: to his address listed on the Offer Sheet and, if the Restricted Free Agent designates a representative on the Offer Sheet and lists such representative's address thereon, a copy shall be sent to such representative at such address; and

     (iv)     To the NFLPA, 2021 L Street, N.W., Suite 600, Washington, D.C. 20036.

     (b)     An Offer Sheet shall be deemed given only when received by the Prior Club. A First Refusal Exercise Notice, a Qualifying Offer and any other writing required or permitted under Article XIX (Veteran Free Agency) shall be deemed given when sent by the Prior Club.

     (c)     Subject to Article XXVIII (Anti-Collusion), Section 1, below, the NFL shall have the right to prepare and circulate to all Clubs two lists containing, respectively, no more than the name, address, Social Security number, telephone number, college, position, Team, Right of First Refusal and/or any Draft Choice Compensation of each and every player who shall or has become (i) an Unrestricted Free Agent; or (ii) a Restricted Free Agent, as of March 1, or as of the first date of the Signing Period, respectively ("Free Agent Lists"), and no other list relating to free agents. Information shall not be selectively withheld for some players but not others. If one or more Free Agent Lists are so circulated, copies thereof shall be sent to the NFLPA.

# ARTICLE XX
# FRANCHISE AND TRANSITION PLAYERS

**Section 1.** Franchise Player Designations: Except as set forth in Sections 3, 9, *and 17* below, each Club shall be permitted to designate one of its players who would otherwise be an Unrestricted Free Agent as a Franchise Player each season during the term of this Agreement. The player so designated may be one who would otherwise be a Restricted Free Agent. Any Club that designates a Franchise Player shall be the only Club with which such Franchise Player may negotiate or sign a Player Contract, during the period the player is so designated, notwithstanding the number of his Accrued Seasons (except as provided in Sections 2(b) and 2(c) below). Any such designation must be made between February 1 and February 15 of each League Year or during such other period as may be agreed on by the Management Council and the NFLPA, with the period ending at 4:00 p.m. New York time.

* Extension Agreement 1/8/02

> *The period for Clubs to designate Franchise Players will begin on the twenty-second day preceding the first day of the new League Year and will end at 4:00 p.m. New York time on the eighth day preceding the first day of the new League Year.*
>
> * Side Letter 1/22/01

**Section 2. Required Tender for Franchise Players:**

    (a)-(b) *[no longer applicable]*

    (c)    *Any* Club that designates a Franchise Player shall on the date the designation is made notify the player and the NFLPA which one of the following two potential required tenders the Club has selected:

    (i)    A one year NFL Player Contract for the average of the five largest Prior Year Salaries for players at the position at which the Franchise Player played the most games during the prior League Year, or 120% of his Prior Year Salary, whichever is greater; if the Club extends the tender pursuant to this Subsection (c)(i), the player shall be permitted to negotiate a Player Contract with any Club as if he were a player subject to Section 5 below, except that Draft Choice Compensation of two first round draft selections shall be made with respect to such player in the event he signs with the New Club, and the Signing Period for such player shall be determined under Section 17 below; or

    (ii)    A one year NFL Player Contract for (1) the average of the five largest Salaries in Player Contracts for that League Year as of the end of the Restricted Free Agent Signing Period that League Year, as set forth in Article XIX (Veteran Free Agency), Section 2(h), for players at the position at which he played the most games during the prior League Year, or (2) the amount of the required tender under subsection (c)(i) above, whichever is greater.

70

(iii)     If a player subject to a Franchise Player designation accepts the Required Tender, the resulting Player Contract shall be fully guaranteed if the player's contract is terminated because of lack of comparative skill; as a result of an injury sustained in the performance of his services under his Player Contract; and/or due to a Club's determination to create Room for Salary Cap purposes. For purposes of this paragraph only, any contract termination due to the failure of the player to establish or maintain his excellent physical condition will be subject to review of a neutral physician appointed by the parties under Article X (Injury Grievance), whose physical findings will be conclusive in any arbitration proceeding relating to the physical condition of the player at the time of the exam, providing such exam takes place within twenty (20) days of the contract termination.

(d)     Any of the required tenders set forth in this Section 2 may be withdrawn at any time, but if such tender is withdrawn, the player immediately becomes an Unrestricted Free Agent and thereafter is completely free to negotiate and sign a Player Contract with any Club, and any Club shall be completely free to negotiate and sign a Player Contract with any such player, without any penalty or restriction, including, but not limited to, Draft Choice Compensation between Clubs or First Refusal Rights of any kind, or any signing period.

** See Page 44, Article XIV, Section 8 for Side Letter of 3/3/97, Section 1 re: Good Faith of Required Tender.

(e)     For the purpose of this Article, "Salary" means the total of the Paragraph 5 Salary, roster and reporting bonuses, pro-rata portion of signing bonus, and other payments to players in compensation for the playing of professional football for the applicable year of the player's most recently negotiated Player Contract, except for performance bonuses other than roster and reporting bonuses. Salary shall also include any unrepaid loans made, guaranteed or collateralized by a Team or its Team Affiliate to a player or Player Affiliate during or after the 1993 League Year.

(f)     The calculation of any five largest Salaries pursuant to this Article shall not include: (i) any Player Contract resulting from an acceptance of a tender extended pursuant to subsection (b)(i)(1) or (c)(ii) above, without any increase in Salary above the tender; or (ii) any Player Contract amount resulting from a renegotiation of an existing Player Contract between the time of the designation and any applicable later date; provided, however, that Player Contract amounts in existence prior to such renegotiations shall be used if otherwise appropriate.

(g)     If a Franchise Player receives a required tender pursuant to Section 2(c)(i) above, any provision in an Offer Sheet to such player waiving or limiting the New Club's ability to designate the player as a Franchise Player or Transition Player in the future shall not be a Principal Term, and therefore need not be included in a contract formed with the Prior Club as a re-

71

Article XX, Franchise and Transition Players

sult of matching such an Offer Sheet (but shall be included in a contract formed with the New Club as a result of the Prior Club not matching such an Offer Sheet). This subsection (g) shall not apply to a player who was designated as a Transition Player in lieu of being designated as a Franchise Player, pursuant to Section 3(a) below, or to any other Transition Player.

> * Extension Agreement 2/25/98

> * [T]he definition of a "Signing Bonus" for purposes of the top 5 and top 10 minimum tenders is the same under the Salary Cap, that the pro-rata portion of such Signing Bonuses includes prorated amounts from prior Player Contracts, and that the Salary Cap acceleration rules for unamortized Signing Bonus amounts do not apply to the calculation of the top 5 and top 10 minimum tenders.
>
> *Side Letter 2/14/94

> * For purposes of calculating the minimum tenders to Franchise and Transition players under Article XX, if the present value of any deferred Paragraph 5 amount (as defined in Article XXIV, Section 7, Paragraph (a)(ii)) is at least $100,000 less than the initial Paragraph 5 amount (before being present valued), then the present value amount shall be used.
>
> *Side Letter 6/23/93: Sec. 5

**Section 3.** **Transition Player Designations**:

(a)      Each Club shall be permitted to designate one Unrestricted Free Agent as a Transition Player between February 1 and February 15 in the Final League Year, with the period ending at 4:00 p.m. New York time. In addition, in each League Year during the term of this Agreement, each Club shall be permitted to designate one Unrestricted Free Agent or Restricted Free Agent as a Transition Player in lieu of designating a Franchise Player, if such Franchise Player designation is available to such Club, in addition to the Transition Player designation permitted by the immediately preceding sentence, during the same designation period as the Franchise Player designation period.

> *The period for Clubs to designate Transition Players will begin on the twenty-second day preceding the first day of the new League Year and will end at 4:00 p.m. New York time on the eighth day preceding the first day of the new League Year.*
>
> * Side Letter 1/22/01

(b)      Any Club that designates a Transition Player shall receive the

Rights of First Refusal specified in this Article notwithstanding the number of his Accrued Seasons. Any Transition Player shall be completely free to negotiate and sign a Player Contract with any Club during the period from the first day of the League Year following the expiration of his last player contract to July 22, and any Club shall be completely free to negotiate and sign a Player Contract with such player, without penalty or restriction, including, but not limited to, Draft Choice Compensation between Clubs of any kind, subject only to the Prior Club's Right of First Refusal described in this Article.

*Extension Agreement 1/8/02*

**Section 4. Required Tender for Transition Players:**
   (a)    Any Club that designates a Transition Player shall be deemed on the first day of the League Year following the expiration of the player's last contract to have automatically tendered the player a one year NFL Player Contract for the average of the ten largest Prior Year Salaries for players at the position at which he played the most games during the prior League Year, or 120% of his Prior Year Salary, whichever is greater. The tender may be withdrawn at any time, but if such tender is withdrawn, the player immediately becomes an Unrestricted Free Agent and thereafter is completely free to negotiate and sign a Player Contract with any Club, and any Club shall be completely free to negotiate and sign a Player Contract with such player, without any penalty or restriction, including, but not limited to, Draft Choice Compensation between Clubs or First Refusal Rights of any kind, or any signing period.

   ** See Pages 71-72, Article XX, Section 2(g) for Side Letter 6/23/93, Sec. 5 re: Calculation of Minimum Tender to Franchise and Transition Players.

   (b)    *[no longer applicable]*
   (c)    The calculation of any ten largest Salaries pursuant to this Article shall not include: (i) any Player Contract amount resulting from an acceptance of a tender pursuant to subsection (b)(i) above, without any increase in Salary above the tender; or (ii) any Player Contract amount resulting from a renegotiation of an existing Player Contract between the time of the designation and any applicable later date; provided, however, that Player Contract amounts in existence prior to such renegotiations shall be used if otherwise appropriate.

**Section 5. Right of First Refusal for Transition Players:** Any player designated as a Transition Player shall, at the expiration of his prior year Player Contract, be permitted to negotiate a Player Contract with any Club. When the Transition Player negotiates such an offer with a New Club, which the player desires to accept, he shall give to the Prior Club a completed Offer Sheet, signed by the player and the New Club, which shall contain the Prin-

Article XX, Franchise and Transition Players

cipal Terms (as defined in Article XIX (Veteran Free Agency)) of the New Club's offer. The Prior Club, within seven days from the date it receives the Offer Sheet, may exercise or not exercise its Right of First Refusal, which shall have the legal consequences set forth in Sections 3(b)-(h), 4 and 6 of Article XIX (Veteran Free Agency) above, except that no Draft Choice Compensation shall be made with respect to such player, and, for the purposes of those provisions, the player and each Club shall otherwise have the same rights and obligations as for a Restricted Free Agent set forth in those provisions, notwithstanding the number of his Accrued Seasons.

**Section 6. Lists:** On each date following the dates set forth in Sections 1 and 3 above, the NFL shall provide to the NFLPA a list of each Unrestricted Free Agent designated as a Franchise Player or a Transition Player.

**Section 7. Salary Information:**

(a)     No later than February 1 of each League Year during the term of this Agreement, the NFL shall compile and disclose to the NFLPA a list of each of the ten largest Prior Year Salaries for players at the following positions which shall be utilized for calculating the average Prior Year Salaries of players at the positions of Franchise Players and Transition Players: Quarterback, Running Back, Wide Receiver, Tight End, Offensive Line, Defensive End, Interior Defensive Line, Linebacker, Cornerback, Safety, and Kicker/Punter.

(b)     No later than ten days after the last day of the Restricted Free Agent Signing Period in each League Year during the term of this Agreement, the NFL shall compile and disclose to the NFLPA a list of each of the ten and five largest Salaries for players at the positions set forth in subparagraph (a) above which shall be utilized for calculating the applicable average Salaries of players at such positions as of the last day of the Restricted Free Agent Signing Period (including the amount of Salary in any executed Offer Sheets).

(c)     Any dispute concerning the identity and Salaries of players included within each player position category, or any other matter regarding these figures, shall be submitted to and resolved by the Impartial Arbitrator during the period from February 1 to February 15, or within twenty five days after the last day of the Restricted Free Agent Signing Period, respectively. The Impartial Arbitrator shall make an independent determination in writing. In arriving at his determination, the Impartial Arbitrator shall consider any relevant information furnished to him, and shall be provided access to all relevant Player Contracts. The Impartial Arbitrator's determination shall be final and binding upon all parties.

**Section 8. No Assignment:** No Club may assign or otherwise transfer to any other Club the exclusive negotiating rights or any Right of First Refusal it may have for any Franchise Player, nor any Right of First Refusal it may have for any Transition Player, nor any designation rights it may have.

74

**Section 9. Duration of Designation:**

(a)      Each Club that signs a player it designated as a Franchise Player to a Player Contract shall be deemed each League Year thereafter to have utilized its Franchise Player designation for each League Year for which such player entered into a Player Contract with such Club at the time when such player was subject to such designation (unless the Club exercised a Right of First Refusal with respect to a Franchise Player tendered a Player Contract pursuant to Sections 2(b)(ii) or 2(c)(i) above, in which case the Club shall be deemed to have utilized its Franchise Player designation only in the League Year of the designation). For example, without limitation on any other applicable example, a Franchise Player who signs a Player Contract for two League Years at a time when the player was subject to the designation shall be deemed to be the Club's Franchise Player for both such League Years. However, in the event that the designated player retires or suffers a career-ending injury (or an injury that prevents or will prevent the player from playing in 32 consecutive regular season games) which prevents him from playing a contract year entered into while under such designation (or is unavailable for the season due to non-injury circumstances beyond the control of the Club), such Club shall be permitted to designate another player in lieu of such injured, retired or unavailable player for each remaining League Year covered by the Club's prior designation for such player, provided that the Club designates a new Franchise Player during the designation period prior to the first League Year to be covered by the redesignation. Any dispute as to whether an injury is career-ending or prevents or will prevent a player from playing in 32 consecutive games shall be decided by the Impartial Arbitrator. If a Club and a player agree to extend (either separately or as part of a renegotiation) a Player Contract prior to July 15 in the League Year for which the Club designated the player as a Franchise Player, such Club shall also be deemed to have utilized its Franchise Player designation pursuant to this Section 9 for the full period of that extension. If a Club and a player agree to extend (either separately or as part of a renegotiation) a Player Contract on or after July 15 in the League Year for which the Club designated the player as a Franchise Player, such Club shall not be deemed to have utilized its Franchise Player designation pursuant to this Section 9 for the period of the extension, unless there has been a violation of the provisions of Article XXV (Enforcement of The Salary Cap And Entering Player Pool), Sections 1 or 2, with respect to such contract extension.

(b)      *Clubs will have a window, beginning the day after the last day of the Franchise Player designation period and ending 4:00 p.m., New York time, on the fourteenth day following the start of the League Year, during which, if the Club signs its Franchise Player to a multi-year contract or extension, the Club may nonetheless retain its Franchise Player designation rights the following year. (By way of clarification, if the League Year begins on March 1, the window will end at 4:00 p.m., New York time, on March 15.) If a multi-year contract or extension is not signed during the window period, the current rules continue to apply without*