Exhibit 10
Part 1 of 4



# NFL

# COLLECTIVE

# BARGAINING

# AGREEMENT

## 2006-2012

COLLECTIVE BARGAINING AGREEMENT
BETWEEN
THE NFL MANAGEMENT COUNCIL
AND
THE NFL PLAYERS ASSOCIATION
March 8, 2006



## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

PREAMBLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

ARTICLE I  DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . .4
   Section 1.  General Definitions . . . . . . . . . . . . . . . . . . . . . . .4
   Section 2.  Free Agency Definitions . . . . . . . . . . . . . . . . . . . . .5
   Section 3.  Salary Cap Definitions . . . . . . . . . . . . . . . . . . . . .6
   Section 4.  Further Definitions . . . . . . . . . . . . . . . . . . . . .7

ARTICLE II  GOVERNING AGREEMENT . . . . . . . . . . . . . . . . . .8
   Section 1.  Conflicts . . . . . . . . . . . . . . . . . . . . . . . . . . . .8
   Section 2.  Implementation . . . . . . . . . . . . . . . . . . . . . . . .8
   Section 3.  Management Rights . . . . . . . . . . . . . . . . . . . . . .8
   Section 4.  Rounding . . . . . . . . . . . . . . . . . . . . . . . . . . .8

ARTICLE III  SCOPE OF AGREEMENT . . . . . . . . . . . . . . . . . . .9
   Section 1.  Scope . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9
   Section 2.  Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . .9

ARTICLE IV  NO STRIKE/LOCKOUT/SUIT . . . . . . . . . . . . . . . . .10
   Section 1.  No Strike/Lockout . . . . . . . . . . . . . . . . . . . . . . .10
   Section 2.  No Suit . . . . . . . . . . . . . . . . . . . . . . . . . . . .10
   Section 3.  Releases . . . . . . . . . . . . . . . . . . . . . . . . . . .11

ARTICLE V  UNION SECURITY . . . . . . . . . . . . . . . . . . . . . . .12
   Section 1.  Union Security . . . . . . . . . . . . . . . . . . . . . . . .12
   Section 2.  Check-off . . . . . . . . . . . . . . . . . . . . . . . . . . .12
   Section 3.  NFLPA Meetings . . . . . . . . . . . . . . . . . . . . . . .12
   Section 4.  NFLPA Player Group Licensing Program . . . . . . . . . .12
   Section 5.  Disputes . . . . . . . . . . . . . . . . . . . . . . . . . . .13
   Section 6.  Procedure for Enforcement . . . . . . . . . . . . . . . . . .13
   Section 7.  NFLPA Responsibility . . . . . . . . . . . . . . . . . . . .14
   Section 8.  Orientations . . . . . . . . . . . . . . . . . . . . . . . . .14
   Section 9.  Rookie Symposium . . . . . . . . . . . . . . . . . . . . . .14

ARTICLE VI  NFLPA AGENT CERTIFICATION . . . . . . . . . . . . . . .16
   Section 1.  Exclusive Representation . . . . . . . . . . . . . . . . . . .16
   Section 2.  Enforcement . . . . . . . . . . . . . . . . . . . . . . . . .16
   Section 3.  Penalty . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

i

**ARTICLE VII  PLAYER SECURITY** . . . . . . . . . . . . . . . . . . . . . . . . . .**18**
    Section 1.  No Discrimination  . . . . . . . . . . . . . . . . . . . .18
    Section 2.  Personal Appearance  . . . . . . . . . . . . . . . . . . . .18

**ARTICLE VIII  CLUB DISCIPLINE** . . . . . . . . . . . . . . . . . . . . . .**19**
    Section 1.  Maximum Discipline . . . . . . . . . . . . . . . . . . . . .19
    Section 2.  Published Lists  . . . . . . . . . . . . . . . . . . . . . .20
    Section 3.  Uniformity . . . . . . . . . . . . . . . . . . . . . . . . .20
    Section 4.  Disputes . . . . . . . . . . . . . . . . . . . . . . . . . .20
    Section 5.  Deduction  . . . . . . . . . . . . . . . . . . . . . . . . .20
    Section 6.  NFL Drug and Steroid Policies  . . . . . . . . . . . . . .21
    Section 7.  Cumulative Fines  . . . . . . . . . . . . . . . . . . . . .21
    Section 8.  Offset of Pre-Season Fine Amounts  . . . . . . . . . . . .21
    Section 9.  Effective Date  . . . . . . . . . . . . . . . . . . . . . .22

**ARTICLE IX  NON-INJURY GRIEVANCE** . . . . . . . . . . . . . . . . . .**23**
    Section 1.  Definition . . . . . . . . . . . . . . . . . . . . . . . . .23
    Section 2.  Initiation . . . . . . . . . . . . . . . . . . . . . . . . .23
    Section 3.  Filing  . . . . . . . . . . . . . . . . . . . . . . . . . .23
    Section 4.  Ordinary and Expedited Appeal  . . . . . . . . . . . . . .23
    Section 5.  Discovery . . . . . . . . . . . . . . . . . . . . . . . . .24
    Section 6.  Arbitration Panel . . . . . . . . . . . . . . . . . . . . .24
    Section 7.  Hearing . . . . . . . . . . . . . . . . . . . . . . . . . .25
    Section 8.  Arbitrator's Decision and Award  . . . . . . . . . . . . .26
    Section 9.  Time Limits . . . . . . . . . . . . . . . . . . . . . . . .26
    Section 10.  Representation  . . . . . . . . . . . . . . . . . . . . . .26
    Section 11.  Costs  . . . . . . . . . . . . . . . . . . . . . . . . . .26
    Section 12.  Payment  . . . . . . . . . . . . . . . . . . . . . . . . .27
    Section 13.  Grievance Settlement Committee . . . . . . . . . . . . . .27

**ARTICLE X  INJURY GRIEVANCE** . . . . . . . . . . . . . . . . . . . . . .**28**
    Section 1.  Definition . . . . . . . . . . . . . . . . . . . . . . . . .28
    Section 2.  Filing  . . . . . . . . . . . . . . . . . . . . . . . . . .28
    Section 3.  Answer  . . . . . . . . . . . . . . . . . . . . . . . . . .28
    Section 4.  Neutral Physician . . . . . . . . . . . . . . . . . . . . .29
    Section 5.  Neutral Physician List . . . . . . . . . . . . . . . . . .29
    Section 6.  Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . .30
    Section 7.  Arbitration Panel . . . . . . . . . . . . . . . . . . . . .30
    Section 8.  Hearing . . . . . . . . . . . . . . . . . . . . . . . . . .30
    Section 9.  Miscellaneous . . . . . . . . . . . . . . . . . . . . . . .31
    Section 10.  Expenses  . . . . . . . . . . . . . . . . . . . . . . . . .32
    Section 11.  Pension Credit  . . . . . . . . . . . . . . . . . . . . . .32
    Section 12.  Payment  . . . . . . . . . . . . . . . . . . . . . . . . .32
    Section 13.  Presumption of Fitness  . . . . . . . . . . . . . . . . . .32
    Section 14.  Playoff Money . . . . . . . . . . . . . . . . . . . . . . .33

ii

Section 15.  Information Exchange . . . . . . . . . . . . . . . . . . . . . . .33
Section 16.  Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

**ARTICLE XI  COMMISSIONER DISCIPLINE** . . . . . . . . . . . . . . **34**
Section 1.  League Discipline  . . . . . . . . . . . . . . . . . . . . . . . .34
Section 2.  Time Limits  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34
Section 3.  Representation  . . . . . . . . . . . . . . . . . . . . . . . . . .34
Section 4.  Costs  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35
Section 5.  One Penalty  . . . . . . . . . . . . . . . . . . . . . . . . . . . .35
Section 6.  Fine Money . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

**ARTICLE XII  INJURY PROTECTION** . . . . . . . . . . . . . . . . . . . **36**
Section 1.  Qualification  . . . . . . . . . . . . . . . . . . . . . . . . . . . .36
Section 2.  Benefit  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36
Section 3.  Disputes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

**ARTICLE XIII  COMMITTEES** . . . . . . . . . . . . . . . . . . . . . . . . . **38**
Section 1.  Joint Committee  . . . . . . . . . . . . . . . . . . . . . . . . . .38
Section 2.  Competition Committee . . . . . . . . . . . . . . . . . . . .39
Section 3.  Player/Club Operations Committee . . . . . . . . . . . . .39

**ARTICLE XIV  NFL PLAYER CONTRACT** . . . . . . . . . . . . . . . **40**
Section 1.  Form . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .40
Section 2.  Term . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .40
Section 3.  Changes  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .40
Section 4.  Conformity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .40
Section 5.  General, Notices, Prohibitions, etc. . . . . . . . . . . . . .40
Section 6.  Commissioner Disapproval . . . . . . . . . . . . . . . . . .42
Section 7.  NFLPA Group Licensing Program  . . . . . . . . . . . . .42
Section 8.  Good Faith Negotiation . . . . . . . . . . . . . . . . . . . . .43
Section 9.  Limitations on Salary Forfeitures . . . . . . . . . . . . . . .43

**ARTICLE XV  OPTION CLAUSE** . . . . . . . . . . . . . . . . . . . . . . . **45**
Section 1.  Prohibition  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .45

**ARTICLE XVI  COLLEGE DRAFT** . . . . . . . . . . . . . . . . . . . . . **46**
Section 1.  Time of Draft  . . . . . . . . . . . . . . . . . . . . . . . . . . . .46
Section 2.  Number of Choices and Eligibility . . . . . . . . . . . . .46
Section 3.  Required Tender  . . . . . . . . . . . . . . . . . . . . . . . . . .46
Section 4.  Signing of Drafted Rookies  . . . . . . . . . . . . . . . . . .46
Section 5.  Other Professional Teams  . . . . . . . . . . . . . . . . . . .47
Section 6.  Return to College  . . . . . . . . . . . . . . . . . . . . . . . . .48
Section 7.  Assignment of Draft Rights  . . . . . . . . . . . . . . . . . .49
Section 8.  Subsequent Draft  . . . . . . . . . . . . . . . . . . . . . . . . .49
Section 9.  No Subsequent Draft  . . . . . . . . . . . . . . . . . . . . . .49

iii

Section 10.  Compensatory Draft Selections . . . . . . . . . . . . . . . . 49
Section 11.  Undrafted Rookies . . . . . . . . . . . . . . . . . . . . . . . . . 49
Section 12.  Notice of Signing  . . . . . . . . . . . . . . . . . . . . . . . . . 50

**ARTICLE XVII  ENTERING PLAYER POOL** . . . . . . . . . . . . . . . . . **51**
Section 1.  Definition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
Section 2.  Covered League Years  . . . . . . . . . . . . . . . . . . . . . . 51
Section 3.  Calculation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
Section 4.  Operation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
Section 5.  Rookie Player Contract Length  . . . . . . . . . . . . . . . . 55

**ARTICLE XVIII  VETERANS WITH LESS THAN**
**THREE ACCRUED SEASONS** . . . . . . . . . . . . . . . . . . . . . . **56**
Section 1.  Accrued Seasons Calculation . . . . . . . . . . . . . . . . . 56
Section 2.  Negotiating Rights of Players With Less
Than Three Accrued Seasons . . . . . . . . . . . . . . . . . . . . . . 56

**ARTICLE XIX  VETERAN FREE AGENCY** . . . . . . . . . . . . . . . . . **57**
Section 1.  Unrestricted Free Agents . . . . . . . . . . . . . . . . . . . . 57
Section 2.  Restricted Free Agents . . . . . . . . . . . . . . . . . . . . . . 58
Section 3.  Offer Sheet and First Refusal Procedures  . . . . . . . . . . 63
Section 4.  Expedited Arbitration  . . . . . . . . . . . . . . . . . . . . . . 65
Section 5.  Individually Negotiated Limitations
on Player Movement  . . . . . . . . . . . . . . . . . . . . . . . . . . . 66
Section 6.  Notices, Etc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

**ARTICLE XX  FRANCHISE AND TRANSITION PLAYERS** . . . . . . . **68**
Section 1.  Franchise Player Designations . . . . . . . . . . . . . . . . . 68
Section 2.  Required Tender for Franchise Players . . . . . . . . . . . . 68
Section 3.  Transition Player Designations . . . . . . . . . . . . . . . . . 71
Section 4.  Required Tender for Transition Players  . . . . . . . . . . . 71
Section 5.  Right of First Refusal for Transition Players . . . . . . . . . 72
Section 6.  Lists . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72
Section 7.  Salary Information . . . . . . . . . . . . . . . . . . . . . . . . . 72
Section 8.  No Assignment . . . . . . . . . . . . . . . . . . . . . . . . . . . 73
Section 9.  Duration of Designation [*no longer applicable*]  . . . . . . . 73
Section 10.  Franchise Player Designation Period . . . . . . . . . . . . . 73
Section 11.  Transition Player Designation Period  . . . . . . . . . . . . 74
Section 12.  Prospective Designation [*no longer applicable*]  . . . . . . 74
Section 13.  Right to Decline [*no longer applicable*] . . . . . . . . . . . 74
Section 14.  Other Terms  . . . . . . . . . . . . . . . . . . . . . . . . . . . 74
Section 15.  Compensatory Draft Selection . . . . . . . . . . . . . . . . . 75
Section 16.  Signing Period for Transition Players  . . . . . . . . . . . . 75
Section 17.  Signing Period for Franchise Players  . . . . . . . . . . . . 75

iv

**ARTICLE XXI  FINAL EIGHT PLAN** . . . . . . . . . . . . . . . . . . . . . . . . . . **77**
    Section 1.  Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .77
    Section 2.  Top Four Teams . . . . . . . . . . . . . . . . . . . . . . . . . . . .77
    Section 3.  Next Four Teams . . . . . . . . . . . . . . . . . . . . . . . . . . .77
    Section 4.  Replacement of Free Agents Signed by Other Club . . .77
    Section 5.  Increases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .78
    Section 6.  Salary Definition . . . . . . . . . . . . . . . . . . . . . . . . . . .78
    Section 7.  Trade Limitation . . . . . . . . . . . . . . . . . . . . . . . . . . .78
    Section 8.  Transition and Franchise Players . . . . . . . . . . . . . . . .78
    Section 9.  Player Tenders . . . . . . . . . . . . . . . . . . . . . . . . . . . . .78

**ARTICLE XXII  WAIVER SYSTEM** . . . . . . . . . . . . . . . . . . . . . . . . . **79**
    Section 1.  Release . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .79
    Section 2.  Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .79
    Section 3.  Ineligibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .79
    Section 4.  Notice of Termination . . . . . . . . . . . . . . . . . . . . . . . .79
    Section 5.  NFLPA's Right to Personnel Information . . . . . . . . . .80
    Section 6.  Rosters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .80
    Section 7.  Procedural Recall Waivers . . . . . . . . . . . . . . . . . . . . .80

**ARTICLE XXIII  TERMINATION PAY** . . . . . . . . . . . . . . . . . . . . . . **81**
    Section 1.  Eligibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .81
    Section 2.  Regular Season Signings . . . . . . . . . . . . . . . . . . . . . .81
    Section 3.  Ineligibility for Termination Pay . . . . . . . . . . . . . . . .81

**ARTICLE XXIV  GUARANTEED LEAGUE-WIDE SALARY,**
    **SALARY CAP, & MINIMUM TEAM SALARY** . . . . . . . . . . . . . **82**
    Section 1.  Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .82
    Section 2.  Trigger For Guaranteed League-wide Salary,
       Salary Cap, and Minimum Team Salary . . . . . . . . . . . . . . . .95
    Section 3.  Guaranteed League-wide Salary . . . . . . . . . . . . . . . . .95
    Section 4.  Salary Cap Amounts . . . . . . . . . . . . . . . . . . . . . . . . .96
    Section 5.  Minimum Team Salary . . . . . . . . . . . . . . . . . . . . . . .102
    Section 6.  Computation of Team Salary . . . . . . . . . . . . . . . . . . .102
    Section 7.  Valuation of Player Contracts . . . . . . . . . . . . . . . . . .104
    Section 8.  30% Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .133
    Section 9.  Renegotiations and Extensions . . . . . . . . . . . . . . . . .134
    Section 10. Accounting Procedures . . . . . . . . . . . . . . . . . . . . . .135
    Section 11. Revenue Sharing . . . . . . . . . . . . . . . . . . . . . . . . . . .143

**ARTICLE XXV  ENFORCEMENT OF THE SALARY**
    **CAP AND ENTERING PLAYER POOL** . . . . . . . . . . . . . . . . . . **145**
    Section 1.  Undisclosed Terms . . . . . . . . . . . . . . . . . . . . . . . . . .145
    Section 2.  Circumvention . . . . . . . . . . . . . . . . . . . . . . . . . . . .145
    Section 3.  Special Master Action . . . . . . . . . . . . . . . . . . . . . . . .145

v

Section 4.  Commissioner Disapproval . . . . . . . . . . . . . . . . . . . . .145
Section 5.  Special Master Review . . . . . . . . . . . . . . . . . . . . . . . .146
Section 6.  Sanctions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .146
Section 7.  Revenue Circumvention . . . . . . . . . . . . . . . . . . . . . . .147
Section 8.  Management Council Audit Rights . . . . . . . . . . . . . .148
Section 9.  Prior Consultation . . . . . . . . . . . . . . . . . . . . . . . . . . .148

**ARTICLE XXVI  SPECIAL MASTER** . . . . . . . . . . . . . . . . . . . . .**149**
Section 1.  Appointment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .149
Section 2.  Scope of Authority . . . . . . . . . . . . . . . . . . . . . . . . . .149
Section 3.  Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .150
Section 4.  Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . .150
Section 5.  Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .150
Section 6.  Selection of Special Master . . . . . . . . . . . . . . . . . . .151
Section 7.  Penalties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .151

**ARTICLE XXVII  IMPARTIAL ARBITRATOR** . . . . . . . . . . . . . . .**152**
Section 1.  Selection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .152
Section 2.  Scope of Authority . . . . . . . . . . . . . . . . . . . . . . . . . .152
Section 3.  Effect of Rulings . . . . . . . . . . . . . . . . . . . . . . . . . . . .152
Section 4.  Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .152
Section 5.  Compensation of Impartial Arbitrator . . . . . . . . . . .152
Section 6.  Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .152
Section 7.  Selection of Impartial Arbitrator . . . . . . . . . . . . . . .153

**ARTICLE XXVIII  ANTI-COLLUSION** . . . . . . . . . . . . . . . . . . . .**154**
Section 1.  Prohibited Conduct . . . . . . . . . . . . . . . . . . . . . . . . .154
Section 1a.  Commissioner Approvals . . . . . . . . . . . . . . . . . . . .154
Section 2.  Other Club Conduct . . . . . . . . . . . . . . . . . . . . . . . . .154
Section 3.  Club Discretion . . . . . . . . . . . . . . . . . . . . . . . . . . . .154
Section 4.  League Disclosures . . . . . . . . . . . . . . . . . . . . . . . . . .155
Section 5.  Enforcement of Anti-Collusion Provisions . . . . . . . .155
Section 6.  Burden of Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . .155
Section 7.  Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . .156
Section 8.  Remedies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .156
Section 9.  Computation of Damages . . . . . . . . . . . . . . . . . . . .157
Section 10.  Player Election . . . . . . . . . . . . . . . . . . . . . . . . . . . .157
Section 11.  Payment of Damages . . . . . . . . . . . . . . . . . . . . . . .158
Section 12.  Effect on Cap Computations . . . . . . . . . . . . . . . . .158
Section 13.  Effect of Salary Cap . . . . . . . . . . . . . . . . . . . . . . . .158
Section 14.  No Reimbursement . . . . . . . . . . . . . . . . . . . . . . . .158
Section 15.  Costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .158
Section 16.  Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .158
Section 17.  Time Limits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .159
Section 18.  Prior Conference . . . . . . . . . . . . . . . . . . . . . . . . . .159

**ARTICLE XXIX  CERTIFICATIONS** . . . . . . . . . . . . . . . . . . . . . . .**160**
    Section 1.  Contract Certification . . . . . . . . . . . . . . . . . . . . . . . .160
    Section 2.  End of League Year Certification . . . . . . . . . . . . . . .160
    Section 3.  False Certification . . . . . . . . . . . . . . . . . . . . . . . . . .161

**ARTICLE XXX  CONSULTATION AND INFORMATION SHARING .163**
    Section 1.  Consultation and Communications . . . . . . . . . . . . .163
    Section 2.  Salary Summaries  . . . . . . . . . . . . . . . . . . . . . . . . . .163
    Section 3.  Notice of Invalid Contract . . . . . . . . . . . . . . . . . . . .163
    Section 4.  Neutral Verifier  . . . . . . . . . . . . . . . . . . . . . . . . . . . .163
    Section 5.  Copies  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .164
    Section 6.  Meetings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .164

**ARTICLE XXXI  EXPANSION** . . . . . . . . . . . . . . . . . . . . . . . . . .**165**
    Section 1.  Veteran Allocation . . . . . . . . . . . . . . . . . . . . . . . . . .165
    Section 2.  Additional Compensatory Picks . . . . . . . . . . . . . . . .165
    Section 3.  Entering Player Pool Adjustment  . . . . . . . . . . . . . . .165
    Section 4.  Relocation Bonus  . . . . . . . . . . . . . . . . . . . . . . . . . .165

**ARTICLE XXXII  OTHER PROVISIONS** . . . . . . . . . . . . . . . . . . .**166**
    Section 1.  CFL Rule  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .166
    Section 2.  Physically Unable to Perform . . . . . . . . . . . . . . . . . .166
    Section 3.  Non-Football Injury  . . . . . . . . . . . . . . . . . . . . . . . .166
    Section 4.  Roster Exemption  . . . . . . . . . . . . . . . . . . . . . . . . . .166
    Section 5.  Arena Football Players . . . . . . . . . . . . . . . . . . . . . . .167

**ARTICLE XXXIII  SQUAD SIZE** . . . . . . . . . . . . . . . . . . . . . . . . .**169**
    Section 1.  Active List . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .169
    Section 2.  Pre-Season . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .169
    Section 3.  Inactive List  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .169
    Section 4.  Active and Inactive List Limit  . . . . . . . . . . . . . . . . .169

**ARTICLE XXXIV  PRACTICE SQUADS** . . . . . . . . . . . . . . . . . . .**170**
    Section 1.  Practice Squads . . . . . . . . . . . . . . . . . . . . . . . . . . . .170
    Section 2.  Signing With Other Clubs . . . . . . . . . . . . . . . . . . . .170
    Section 3.  Salary  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .171
    Section 4.  Eligibility  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .171
    Section 5.  Active List . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .171

**ARTICLE XXXV  OFF-SEASON WORKOUTS** . . . . . . . . . . . . . .**172**
    Section 1.  Voluntary Workouts . . . . . . . . . . . . . . . . . . . . . . . . .172
    Section 2.  Time Periods . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .172
    Section 3.  Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .172
    Section 4.  Injuries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .173
    Section 5.  Miscellaneous . . . . . . . . . . . . . . . . . . . . . . . . . . . . .173

Section 6.  Pre-Training Camp Period . . . . . . . . . . . . . . . . . . . . .173
Section 7.  Rookie Premiere . . . . . . . . . . . . . . . . . . . . . . . . . .174
Section 8.  Enforcement . . . . . . . . . . . . . . . . . . . . . . . . . . . .174

**ARTICLE XXXVI  MINICAMPS** . . . . . . . . . . . . . . . . . . . . . . .**176**
Section 1.  Number . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .176
Section 2.  Length . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .176
Section 3.  Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . .176
Section 4.  Contact . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .176
Section 5.  Injuries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .176

**ARTICLE XXXVII  PRE-SEASON TRAINING CAMPS** . . . . . . . . . . .**177**
Section 1.  Definition . . . . . . . . . . . . . . . . . . . . . . . . . . . . .177
Section 2.  Room and Board . . . . . . . . . . . . . . . . . . . . . . . . . .177
Section 3.  Rookie Per Diem . . . . . . . . . . . . . . . . . . . . . . . . . .177
Section 4.  Veteran Per Diem . . . . . . . . . . . . . . . . . . . . . . . . .177
Section 5.  Reporting . . . . . . . . . . . . . . . . . . . . . . . . . . . . .177
Section 6.  Number of Pre-Season Games . . . . . . . . . . . . . . . . . .177
Section 7.  Telephones . . . . . . . . . . . . . . . . . . . . . . . . . . . .178
Section 8.  Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . .178

**ARTICLE XXXVIII  SALARIES** . . . . . . . . . . . . . . . . . . . . . . .**179**
Sections 1-5.  [*no longer applicable*] . . . . . . . . . . . . . . . . . . . .179
Section 6.  Minimum Salaries . . . . . . . . . . . . . . . . . . . . . . . . .179
Section 7.  Credited Season . . . . . . . . . . . . . . . . . . . . . . . . . .180
Section 8.  Other Compensation . . . . . . . . . . . . . . . . . . . . . . .180
Section 9.  Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . .180
Section 10.  Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . .180
Section 11.  Deferred Paragraph 5 . . . . . . . . . . . . . . . . . . . . . .180
Section 12.  Number of Regular Season Games . . . . . . . . . . . . . . .181
Section 13.  Copies of Contracts . . . . . . . . . . . . . . . . . . . . . . .181
Section 14.  Split Contracts . . . . . . . . . . . . . . . . . . . . . . . . . .181
Section 15.  Funding of Deferred and Guaranteed Contracts . . . .181

**ARTICLE XXXVIII-A  MINIMUM SALARY BENEFIT** . . . . . . . . . . .**183**
Section 1.  Qualifying Players . . . . . . . . . . . . . . . . . . . . . . . .183
Section 2.  Qualifying Contracts . . . . . . . . . . . . . . . . . . . . . . .183
Section 3.  Additional Compensation Rules . . . . . . . . . . . . . . . .183
Section 4.  Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . .184
Section 5.  Reduced Salary Cap Count . . . . . . . . . . . . . . . . . . .184
Section 6.  Minimum Salary Benefit Calculation . . . . . . . . . . . .185
Section 7.  Extensions of Qualified Contracts . . . . . . . . . . . . . .185
Section 8.  [*no longer applicable*] . . . . . . . . . . . . . . . . . . . . .185
Section 9.  Terminated Qualifying Players . . . . . . . . . . . . . . . . .185

viii

Section 10.  Players Moving to New Club . . . . . . . . . . . . . . . . . .185
Section 11.  Player Returning to Old Club  . . . . . . . . . . . . . . . . .185
Section 12.  Players with Expired Contract . . . . . . . . . . . . . . . .186
Section 13.  Guarantees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .186
Section 14.  Termination Pay  . . . . . . . . . . . . . . . . . . . . . . . . .186
Section 15.  No Benefit for Non-Qualifying Contracts . . . . . . . .187

**ARTICLE XXXVIII-B  PERFORMANCE-BASED POOL** . . . . . . . . .**188**
Section 1.  Creation of Fund . . . . . . . . . . . . . . . . . . . . . . . . . .188
Section 2.  Amount of Fund . . . . . . . . . . . . . . . . . . . . . . . . . .188
Section 3.  Mandatory Distribution Each Year . . . . . . . . . . . . .188
Section 4.  Qualifying Players . . . . . . . . . . . . . . . . . . . . . . . . .188
Section 5.  Methodology . . . . . . . . . . . . . . . . . . . . . . . . . . . . .188
Section 6.  Corrections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .189

**ARTICLE XXXIX  MEAL ALLOWANCE** . . . . . . . . . . . . . . . . . . .**190**
Section 1.  Reimbursement . . . . . . . . . . . . . . . . . . . . . . . . . .190
Section 2.  Travel Day . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .190

**ARTICLE XL  DAYS OFF**  . . . . . . . . . . . . . . . . . . . . . . . . . . . .**191**
Section 1.  Rate  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .191
Section 2.  Requirements  . . . . . . . . . . . . . . . . . . . . . . . . . . .191

**ARTICLE XLI  MOVING AND TRAVEL EXPENSES**  . . . . . . . . . .**192**
Section 1.  Qualification . . . . . . . . . . . . . . . . . . . . . . . . . . . .192
Section 2.  Moving Expenses  . . . . . . . . . . . . . . . . . . . . . . . . .192
Section 3.  Travel Expenses  . . . . . . . . . . . . . . . . . . . . . . . . . .192
Section 4.  Transportation . . . . . . . . . . . . . . . . . . . . . . . . . . .193

**ARTICLE XLII  POST-SEASON PAY** . . . . . . . . . . . . . . . . . . . . .**194**
Section 1.  System . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .194
Section 2.  Compensation  . . . . . . . . . . . . . . . . . . . . . . . . . . .194
Section 3.  Wild Card Game; Division Play-off Game  . . . . . . . .194
Section 4.  Conference Championship; Super Bowl Game . . . . .194
Section 5.  Payment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .195

**ARTICLE XLIII  PRO BOWL GAME** . . . . . . . . . . . . . . . . . . . . .**196**
Section 1.  Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . .196
Section 2.  Selection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .196
Section 3.  Wives . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .196
Section 4.  Injury . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .196
Section 5.  Payment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .196

**ARTICLE XLIV  PLAYERS' RIGHTS TO MEDICAL
   CARE AND TREATMENT** . . . . . . . . . . . . . . . . . . . . . . **197**
   Section 1.  Club Physician . . . . . . . . . . . . . . . . . . . . . . . . .197
   Section 2.  Club Trainers  . . . . . . . . . . . . . . . . . . . . . . . . .197
   Section 3.  Players' Right to a Second Medical Opinion . . . . . . . .197
   Section 4.  Players' Right to a Surgeon of His Choice  . . . . . . . .197
   Section 5.  Standard Minimum Pre-Season Physical  . . . . . . . . .197
   Section 6.  Substance Abuse . . . . . . . . . . . . . . . . . . . . . . . .198

**ARTICLE XLV  ACCESS TO PERSONNEL AND
   MEDICAL RECORDS** . . . . . . . . . . . . . . . . . . . . . . . . . **199**
   Section 1.  Personnel Records . . . . . . . . . . . . . . . . . . . . . . .199
   Section 2.  Medical Records  . . . . . . . . . . . . . . . . . . . . . . . .199

**ARTICLE XLVI  PLAYER BENEFIT COSTS** . . . . . . . . . . . . . . . . . . **200**
   Section 1.  General Right of Reduction  . . . . . . . . . . . . . . . . .200
   Section 2.  Right of Restoration . . . . . . . . . . . . . . . . . . . . . .200
   Section 3.  Definition  . . . . . . . . . . . . . . . . . . . . . . . . . . . .200
   Section 4.  Resolution of Disputes  . . . . . . . . . . . . . . . . . . . .200
   Section 5.  [no longer applicable]  . . . . . . . . . . . . . . . . . . . .201
   Section 6.  Limitations on Contributions  . . . . . . . . . . . . . . . .201
   Section 7.  Application of a Salary Cap to Plan Years  . . . . . . . . .202
   Section 8.  Timing  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .202

**ARTICLE XLVII  RETIREMENT PLAN** . . . . . . . . . . . . . . . . . . . . **203**
   Section 1.  Maintenance and Definitions . . . . . . . . . . . . . . . . .203
   Section 2.  [no longer applicable] . . . . . . . . . . . . . . . . . . . . .203
   Section 3.  Contributions  . . . . . . . . . . . . . . . . . . . . . . . . . .203
   Section 4.  Benefit Credits  . . . . . . . . . . . . . . . . . . . . . . . . .203
   Section 5.  Disability Benefits  . . . . . . . . . . . . . . . . . . . . . . .204
   Section 6.  Joint and Survivor Reset  . . . . . . . . . . . . . . . . . . .205
   Section 7.  Death Benefits . . . . . . . . . . . . . . . . . . . . . . . . . .205

**ARTICLE XLVIII  SECOND CAREER SAVINGS PLAN**  . . . . . . . . .**206**
   Section 1.  Maintenance  . . . . . . . . . . . . . . . . . . . . . . . . . .206
   Section 2.  Contributions . . . . . . . . . . . . . . . . . . . . . . . . . .206

**ARTICLE XLVIII-A  PLAYER ANNUITY PROGRAM**  . . . . . . . . . .**208**
   Section 1.  Establishment . . . . . . . . . . . . . . . . . . . . . . . . . .208
   Section 2.  Contributions  . . . . . . . . . . . . . . . . . . . . . . . . . .208
   Section 3.  Timing  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .208
   Section 4.  Structure . . . . . . . . . . . . . . . . . . . . . . . . . . . . .209
   Section 5.  New Tax-Qualified Portion  . . . . . . . . . . . . . . . . .209
   Section 6.  NFL Player Annuity & Insurance
       Company Net Worth . . . . . . . . . . . . . . . . . . . . . . . . . .209

x

**ARTICLE XLVIII-B  TUITION ASSISTANCE PLAN** . . . . . . . . . . . . **210**
    Section 1.  Establishment . . . . . . . . . . . . . . . . . . . . . . . . .210
    Section 2.  Eligibility  . . . . . . . . . . . . . . . . . . . . . . . . . .210
    Section 3.  Reimbursement . . . . . . . . . . . . . . . . . . . . . . . .211

**ARTICLE XLVIII-C  NFL PLAYERS HEALTH
REIMBURSEMENT ACCOUNT** . . . . . . . . . . . . . . . . . **212**
    Section 1.  Establishment . . . . . . . . . . . . . . . . . . . . . . . . .212
    Section 2.  Contributions . . . . . . . . . . . . . . . . . . . . . . . . .212
    Section 3.  Eligibility . . . . . . . . . . . . . . . . . . . . . . . . . .212
    Section 4.  Health Reimbursement Accounts  . . . . . . . . . . . . . .213
    Section 5.  Payments from Health Reimbursement Accounts . . . .213
    Section 6.  Structure . . . . . . . . . . . . . . . . . . . . . . . . . . .214
    Section 7.  Plan Operation in Uncapped Years  . . . . . . . . . . . .214

**ARTICLE XLVIII-D  88 BENEFIT** . . . . . . . . . . . . . . . . . . . **215**
    Section 1.  Establishment  . . . . . . . . . . . . . . . . . . . . . . . .215
    Section 2.  Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . .215
    Section 3.  Funding  . . . . . . . . . . . . . . . . . . . . . . . . . . .216
    Section 4.  Term . . . . . . . . . . . . . . . . . . . . . . . . . . . . .216

**ARTICLE XLVIII-E  NFL PLAYERS BENEFITS COMMITTEE** . . . . **217**
    Section 1.  Establishment . . . . . . . . . . . . . . . . . . . . . . . .217
    Section 2.  Function . . . . . . . . . . . . . . . . . . . . . . . . . . .217
    Section 3.  Expenses  . . . . . . . . . . . . . . . . . . . . . . . . . .217
    Section 4.  Uncapped Years  . . . . . . . . . . . . . . . . . . . . . .217

**ARTICLE XLIX  GROUP INSURANCE** . . . . . . . . . . . . . . . . . **218**
    Section 1.  Group Benefits  . . . . . . . . . . . . . . . . . . . . . . .218
    Section 2.  Extended Post-Career Medical and Dental Benefits  . .219
    Section 3.  Limitations and Rules For Extended Insurance  . . . .219
    Section 4.  *[no longer applicable]* . . . . . . . . . . . . . . . . . .220
    Section 5.  Administration  . . . . . . . . . . . . . . . . . . . . . . .220

**ARTICLE L  SEVERANCE PAY** . . . . . . . . . . . . . . . . . . . . . **221**
    Section 1.  Eligibility  . . . . . . . . . . . . . . . . . . . . . . . . . .221
    Section 2.  Amount  . . . . . . . . . . . . . . . . . . . . . . . . . . .221
    Section 3.  Application  . . . . . . . . . . . . . . . . . . . . . . . . .221
    Section 4.  Payment  . . . . . . . . . . . . . . . . . . . . . . . . . . .221
    Section 5.  Failure to Apply  . . . . . . . . . . . . . . . . . . . . . .222
    Section 6.  Only One Payment  . . . . . . . . . . . . . . . . . . . . .222
    Section 7.  Payable to Survivor  . . . . . . . . . . . . . . . . . . . .222
    Section 8.  Prior Severance Pay  . . . . . . . . . . . . . . . . . . . .222
    Section 9.  Nonassignability  . . . . . . . . . . . . . . . . . . . . . .222

**ARTICLE LI  DISABILITY PLAN** . . . . . . . . . . . . . . . . . . . . . . . **223**
    Section 1.  Maintenance . . . . . . . . . . . . . . . . . . . . . . . . .223
    Section 2.  Contributions . . . . . . . . . . . . . . . . . . . . . . . .223
    Section 3.  Extension . . . . . . . . . . . . . . . . . . . . . . . . . .223

**ARTICLE LII  BENEFIT ARBITRATOR** . . . . . . . . . . . . . . . . . . **224**
    Section 1.  Selection . . . . . . . . . . . . . . . . . . . . . . . . . .224
    Section 2.  Compensation . . . . . . . . . . . . . . . . . . . . . . . .224
    Section 3.  Role . . . . . . . . . . . . . . . . . . . . . . . . . . . .224

**ARTICLE LIII  RETENTION OF BENEFITS** . . . . . . . . . . . . . . . **226**

**ARTICLE LIV  WORKERS' COMPENSATION** . . . . . . . . . . . . . . **227**
    Section 1.  Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . .227
    Section 2.  Rejection of Coverage . . . . . . . . . . . . . . . . . . . .227
    Section 3.  Arbitration . . . . . . . . . . . . . . . . . . . . . . . . .227
    Section 4.  Worker's Compensation Offset Provisions . . . . . . . .227
    Section 5.  Preservation of Rights . . . . . . . . . . . . . . . . . . .231

**ARTICLE LV  MISCELLANEOUS** . . . . . . . . . . . . . . . . . . . . . . **233**
    Section 1.  Endorsements . . . . . . . . . . . . . . . . . . . . . . . .233
    Section 2.  Game Day Attire . . . . . . . . . . . . . . . . . . . . . .233
    Section 3.  Appearances . . . . . . . . . . . . . . . . . . . . . . . . .233
    Section 4.  Promotion . . . . . . . . . . . . . . . . . . . . . . . . . .233
    Section 5.  Deduction . . . . . . . . . . . . . . . . . . . . . . . . . .233
    Section 6.  Public Statements . . . . . . . . . . . . . . . . . . . . . .234
    Section 7.  Address . . . . . . . . . . . . . . . . . . . . . . . . . . .234
    Section 8.  NFLPA Tickets . . . . . . . . . . . . . . . . . . . . . . .234
    Section 9.  Player Tickets . . . . . . . . . . . . . . . . . . . . . . . .234
    Section 10.  Tests . . . . . . . . . . . . . . . . . . . . . . . . . . . .234
    Section 11.  League Security . . . . . . . . . . . . . . . . . . . . . .234
    Section 12.  Career Planning Program . . . . . . . . . . . . . . . . .235
    Section 13.  Delivery of Documents . . . . . . . . . . . . . . . . . .235
    Section 14.  Binding Effect . . . . . . . . . . . . . . . . . . . . . . .235
    Section 15.  Authorization . . . . . . . . . . . . . . . . . . . . . . . .235
    Section 16.  Headings . . . . . . . . . . . . . . . . . . . . . . . . . .235
    Section 17.  Time Periods . . . . . . . . . . . . . . . . . . . . . . . .235
    Section 18.  Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . .235
    Section 19.  Parol Evidence . . . . . . . . . . . . . . . . . . . . . . .235
    Section 20.  Prior Side Letters . . . . . . . . . . . . . . . . . . . . .235

**xii**

**ARTICLE LVI  FINAL LEAGUE YEAR** . . . . . . . . . . . . . . . . .237
    Section 1.  No Salary Cap . . . . . . . . . . . . . . . . . . . .237
    Section 2.  Free Agency if Salary Cap in League
        Year Prior to Final League Year . . . . . . . . . . . . . . . . .237
    Section 3.  Free Agency if No Salary Cap in League
        Year Prior to Final League Year . . . . . . . . . . . . . .237
    Section 4.  Franchise and Transition Players . . . . . . . . . . . . .237

**ARTICLE LVII  MUTUAL RESERVATION OF RIGHTS:**
**LABOR EXEMPTION** . . . . . . . . . . . . . . . . . . . . . . . . . .238
    Section 1.  Rights Under Law . . . . . . . . . . . . . . . . . . . .238
    Section 2.  Labor Exemption . . . . . . . . . . . . . . . . . .238
    Section 3.  CBA Expiration . . . . . . . . . . . . . . . . . . . . .238

**ARTICLE LVIII  DURATION OF AGREEMENT** . . . . . . . . . . . .240
    Section 1.  *[no longer applicable]* . . . . . . . . . . . . . . . . . .240
    Section 2.  Effective Date/Expiration Date . . . . . . . . . . .240
    Section 3.  Termination Prior to Expiration Date . . . . . . . . . . .240
    Section 4.  Effect of Early Termination on Player Contracts . . . . .241
    Section 5.  Ratification . . . . . . . . . . . . . . . . . . . . .241

**ARTICLE LIX  GOVERNING LAW** . . . . . . . . . . . . . . . . . . .243

**ARTICLE LX  NOTICES** . . . . . . . . . . . . . . . . . . . . . . . .244

**APPENDIX A—CHECK-OFF AUTHORIZATION FOR**
    **NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION**
    **DEDUCTIONS** . . . . . . . . . . . . . . . . . . . . . . . . . .245

**APPENDIX B—INJURY PROTECTION/EARLY WAIVER** . . . . . . .247

**APPENDIX C—NFL PLAYER CONTRACT** . . . . . . . . . . . . . . .248

**APPENDIX D—FIRST REFUSAL OFFER SHEET** . . . . . . . . . . . .257

**APPENDIX E—FIRST REFUSAL EXERCISE NOTICE** . . . . . . . . .258

**APPENDIX F—WAIVER OF FREE AGENT RIGHTS** . . . . . . . . . .259

**APPENDIX G—NOTICE OF TERMINATION** . . . . . . . . . . . . . .260

**APPENDIX H—ACCOUNTANTS' REVIEW PROCEDURES** . . . . . .261

xiii

APPENDIX H.1—ACCOUNTANTS' AGREED-UPON
    PROCEDURES REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . .267

APPENDIX H.2—LOCAL ACCOUNTANTS' AGREED-UPON
    PROCEDURES REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . .268

APPENDIX H.3—REVENUE ACCOUNTING RULES . . . . . . . . . .269

APPENDIX I—STANDARD MINIMUM PRE-SEASON
    PHYSICAL EXAMINATION  . . . . . . . . . . . . . . . . . . . . . . . . .279

APPENDIX J—ACTUARIAL ASSUMPTIONS AND
    ACTUARIAL COST METHOD  . . . . . . . . . . . . . . . . . . . . . . .282

APPENDIX J.1—HEALTH REIMBURSEMENT PLAN
    ACTUARIAL ASSUMPTIONS AND FUNDING  . . . . . . . . . . .285

APPENDIX K—EXTENSION CHART  . . . . . . . . . . . . . . . . . . . . .287

APPENDIX L—OFF-SEASON WORKOUT RULES  . . . . . . . . . . .288

APPENDIX M—PSL EXAMPLES  . . . . . . . . . . . . . . . . . . . . . . . .289

APPENDIX N—WRITTEN WARNING GOOD FAITH EFFORT  . . .296

APPENDIX O—SALARY CAP CALCULATION EXAMPLE  . . . . . .297

APPENDIX P—ADJUSTMENT MECHANISM EXAMPLES  . . . . . .298

INDEX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .302

xiv

## INTRODUCTION

This booklet contains the text of the Collective Bargaining Agreement between the National Football League Management Council and the National Football League Players Association effective March 8, 2006. To the extent that any differences exist between this booklet and the original signed Agreement maintained by the parties, the original shall control.

1

## PREAMBLE

This Agreement, which is the product of bona fide, arm's length collective bargaining, is made and entered into as of the 8th day of March, 2006, in accordance with the provisions of the National Labor Relations Act, as amended, by and between the National Football League Management Council ("Management Council" or "NFLMC"), which is recognized as the sole and exclusive bargaining representative of present and future employer member Clubs of the National Football League ("NFL" or "League"), and the National Football League Players Association ("NFLPA"), which is recognized as the sole and exclusive bargaining representative of present and future employee players in the NFL in a bargaining unit described as follows:

1.    All professional football players employed by a member club of the National Football League;

2.    All professional football players who have been previously employed by a member club of the National Football League who are seeking employment with an NFL Club;

3.    All rookie players once they are selected in the current year's NFL College Draft; and

4.    All undrafted rookie players once they commence negotiation with an NFL Club concerning employment as a player.

3

# ARTICLE I
# DEFINITIONS

As used in this Agreement, the following terms shall have the following meanings:

*Section 1.* **General Definitions:**

(a)    "Agreement" means this Collective Bargaining Agreement.

(b)    "Class Counsel" means the law firm of Weil, Gotshal & Manges, 767 Fifth Avenue, New York, New York 10153, the law firm of Dewey Ballantine, LLP, 1301 Avenue of the Americas, New York, New York 10019, and the law firm of Lindquist & Vennum, 4200 IDS Center, Minneapolis, Minnesota 55402.

(c)    "Club" or "Team" or "Member," used interchangeably herein, means any entity that is a member of the NFL or operates a franchise in the NFL at any time during the term of this Agreement.

(d)    "Club Affiliate" or "Team Affiliate" means any entity or person owned by (wholly or partly), controlled by, affiliated with, or related to a Club or any owner of a Club.

(e)    "Commissioner" means the Commissioner of the NFL.

(f)    "Impartial Arbitrator" means the person authorized by this Agreement and the Settlement Agreement to hear and resolve specified disputes as provided in this Agreement and the Settlement Agreement.

(g)    "League Year" means the period from March 1 of one year through and including the last day of February of the following year, or such other one year period to which the NFL and the NFLPA may agree.

(h)    "NFL Player Contract" means the form of Player Contract utilized in the NFL.

(i)    "NFL Rules" means the Constitution and Bylaws, rules, and regulations of the NFL and/or the Management Council.

(j)    "Player Affiliate" means any entity or person owned by (wholly or partly), controlled by, affiliated with, or related to a player.

(k)    "Salary" means any compensation of money, property, investments, loans, or anything else of value that a Club pays to, or is obligated to pay to, a player or Player Affiliate, or is paid to a third party at the request of and for the benefit of a player or Player Affiliate, during a League Year, as calculated in accordance with the rules set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary).

(l)    "Settlement Agreement" means the Stipulation and Settlement Agreement, dated February 26, 1993, as amended.

(m)    "Special Master" means the special master appointed and authorized by this Agreement and the Settlement Agreement to hear and resolve specified disputes as provided in this Agreement and the Settlement Agreement.

4

Article I, Definitions

**Section 2.** *Free Agency Definitions*:

(n)      "Accrued Season" means any playing season for which a player received credit with respect to his qualifications for Unrestricted Free Agency or Restricted Free Agency, as described in Article XIX (Veteran Free Agency).

(o)      "Compensatory Draft Selection" means an additional Draft choice awarded to a Club as described in Article XIX (Veteran Free Agency) and Article XX (Franchise and Transition Players).

(p)      "Draft" or "College Draft" means the NFL's annual draft of Rookie football players as described in Article XVI (College Draft).

(q)      "Draft Choice Compensation" means the right of any Club, as described in Article XIX (Veteran Free Agency) and Article XX (Franchise and Transition Players), to receive draft pick(s) from any other Club.

(r)      "Drafted Rookie" means a person who is selected in the current League Year's Draft or whose Draft rights are held, or continue to be held, consistent with this Agreement, by an NFL Club that selected the Rookie in a prior Draft.

(s)      "Final Eight Plan" means the rules whereby signings of Unrestricted Free Agents are limited in Uncapped Years for the final eight playoff Clubs, under the limited circumstances described in Article XXI (Final Eight Plan).

(t)      "Free Agent" means a player who is not under contract and is free to negotiate and sign a Player Contract with any NFL Club, without Draft Choice Compensation or any Right of First Refusal.

(u)      "Minimum Salary" means the minimum annual Paragraph 5 Salary which shall be paid to an NFL player not on any Active list, and not on the Inactive list, pursuant to this Agreement.

(v)      "Minimum Active/Inactive List Salary" means the minimum annual Paragraph 5 Salary which shall be paid to an NFL player on any Active list, or on the Inactive list, pursuant to this Agreement.

(w)      "Negotiate" means, with respect to a player or his representatives on the one hand, and an NFL Club or its representatives on the other hand, to engage in any written or oral communication relating to efforts to reach agreement on employment and/or terms of employment between such player and such Club.

(x)      "New Club" means any Club except the Prior Club (as defined below).

(y)      "Player Contract" means a written agreement or series of such agreements executed at or about the same time between a person and an NFL Club pursuant to which such person is employed by such Club as a professional football player.

(z)      "Prior Club" means the Club that contracted with or otherwise held the NFL playing rights for the player for the previous NFL League Year.

(aa)     "Prior Year Salary" means the total of the Paragraph 5 Salary, roster and reporting bonuses, pro-rata portion of signing bonus, and other

5

payments to a player in compensation for the playing of professional foot-ball for the last League Year of the player's most recently negotiated Player Contract, except for performance bonuses other than roster and reporting bonuses. Prior Year Salary shall also include any unpaid loans made, guaranteed or collateralized by a Team or its Team Affiliate to a player or Player Affiliate.

(ab)   "Renegotiate" means any change in Salary or the terms under which such Salary is earned or paid, or any change regarding the Club's right to trade the player, during the term of a Player Contract.

(ac)   "Required Tender" means a Player Contract tender that a Club is required to make to a player pursuant to this Agreement, either as a matter of right with respect to the player, or to receive Rights of First Refusal, Draft Choice Compensation and/or other rights with respect to the player, as specified in this Agreement.

(ad)   "Restricted Free Agent" means a Veteran who has three or more Accrued Seasons and who completes performance of his Player Contract, but who is still subject to a Right of First Refusal and/or Draft Choice Compensation in favor of his Prior Club.

(ae)   "Right of First Refusal" means the right of an NFL Club, as described in Article XIX (Veteran Free Agency) and Article XX (Franchise and Transition Players) to retain the services of certain Veteran players by matching offers made to those players.

(af)   "Rookie" means a person who has never signed a Player Contract with an NFL Club.

(ag)   "Undrafted Rookie" means a Rookie who was eligible for but not selected in a College Draft.

(ah)   "Unrestricted Free Agent" means a Veteran who completes performance of his Player Contract, and who is no longer subject to any exclusive negotiating rights, Right of First Refusal, or Draft Choice Compensation in favor of his Prior Club.

(ai)   "Veteran" means a player who has signed at least one Player Contract with an NFL Club.

**Section 3. Salary Cap Definitions:**

(aj)   "Benefits" or "Player Benefit Costs" means the specific benefits paid to players set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary).

(ak)   "Capped Year" means any League Year for which a Salary Cap is in effect.

(al)   "Total Revenues" or "TR" means all of the League and Team revenues that are included within the definition of Total Revenues, as set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary).

(am)   "Guaranteed League-wide Salary" means the minimum amount that the Teams in the NFL must pay in Player Costs during a League Year, if

6

applicable, as set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary).

(an)    "Minimum Team Salary" means the minimum amount that each Team must pay in Salaries during a League Year, if applicable, as set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary), Section 5.

(ao)    "Paragraph 5 Salary" means the compensation set forth in paragraph 5 of the NFL Player Contract, or in any amendments thereto.

(ap)    "Player Costs" means the total Salaries and Benefits attributable to a League Year for all NFL Teams under all of the rules set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary), but not including loans, loan guarantees, unpaid grievances attributions, and unearned incentives.

(aq)    "Projected Benefits" means the amount of Benefits projected in accordance with the rules set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary).

(ar)    "Projected Total Revenues" means the amount of Total Revenues projected in accordance with the rules set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary).

(as)    "Room" means the extent to which a Team's then-current Team Salary is less than either the Salary Cap or Entering Player Pool, as applicable.

(at)    "Salary Cap" means the absolute maximum amount of Salary that each Club may pay or be obligated to pay or provide to players or Player Affiliates, or may pay or be obligated to pay to third parties at the request of and for the benefit of Players or Player Affiliates, at any time during a particular League Year, in accordance with the rules set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary), if applicable.

(au)    "Team Salary" means the Team's aggregate Salary for Salary Cap purposes, as calculated in accordance with the rules set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary).

(av)    "Uncapped Year" means any League Year for which a Salary Cap is not in effect.

### Section 4. Further Definitions:

(aw)    "Final League Year" means the League Year which is scheduled prior to its commencement to be the final League Year of this Agreement. As of the date hereof, the Final League Year is the 2012 League Year. The Final League Year shall always be an Uncapped Year.

(ax)    "Final Capped Year" means the League Year immediately prior to the Final League Year. The Final Capped Year shall be Capped unless the Salary Cap is removed pursuant to Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary), Section 2(b).

7

## ARTICLE II
## GOVERNING AGREEMENT

**Section 1. Conflicts:** The provisions of this Agreement supersede any conflicting provisions in the NFL Player Contract, the NFL Constitution and Bylaws, or any other document affecting terms and conditions of employment of NFL players, and all players, Clubs, the NFLPA, the NFL, and the Management Council will be bound hereby. The provisions of the Stipulation and Settlement Agreement, as *amended*, in <u>White</u> v. <u>NFL</u>, No. 4-92-906 (D. Minn.) ("Settlement Agreement"), shall supersede any conflicting provisions of this Agreement.

**Section 2. Implementation:** The NFLPA and the Management Council will use their best efforts to faithfully carry out the terms and conditions of this Agreement and to see that the terms and conditions of this Agreement are carried out in full by players and Clubs. The NFLPA will use its best efforts to see that the terms and conditions of all NFL Player Contracts are carried out in full by players.

**Section 3. Management Rights:** The NFL Clubs maintain and reserve the right to manage and direct their operations in any manner whatsoever, except as specifically limited by the provisions of this Agreement and the Settlement Agreement.

**Section 4. Rounding:** For the purposes of any amounts to be calculated or used pursuant to this Agreement with respect to Required Tenders, Qualifying Offers, Minimum Salaries, Minimum Active/Inactive List Salaries, Team Salary, Total Revenue ("TR"), Benefits, Player Costs, Projected TR, Projected Benefits, or Salary, such amounts shall be rounded to the nearest $1,000.

8

# ARTICLE III
# SCOPE OF AGREEMENT

**Section 1. Scope:** This Agreement represents the complete understanding of the parties on all subjects covered herein, and there will be no change in the terms and conditions of this Agreement without mutual consent. Except as otherwise provided in Article V (Union Security), Section 6, on Union Security, the NFLPA and the Management Council waive all rights to bargain with one another concerning any subject covered or not covered in this Agreement for the duration of this Agreement, including the provisions of the NFL Constitution and Bylaws; provided, however, that if any proposed change in the NFL Constitution and Bylaws during the term of this Agreement could significantly affect the terms and conditions of employment of NFL players, then the Management Council will give the NFLPA notice of and negotiate the proposed change in good faith.

**Section 2. Arbitration:** The question of whether the parties engaged in good faith negotiations, or whether any proposed change in the NFL Constitution and Bylaws would violate or render meaningless any provision of this Agreement, may be the subject of a non-injury grievance under Article IX (Non-Injury Grievance), which shall be the exclusive method for resolving disputes arising out of this Section 2. If the arbitrator finds that either party did not engage in good faith negotiations, or that the proposed change would violate or render meaningless any provision of this Agreement, he may enter an appropriate order, including to cease and desist from implementing or continuing the practice or proposal in question; provided, however, that the arbitrator may not compel either party to this Agreement to agree to anything or require the making of a concession by either party in negotiations.

9

# ARTICLE IV
# NO STRIKE/LOCKOUT/SUIT

*Section 1.* **No Strike/Lockout:** Except as otherwise provided in Article V (Union Security), Section 6, neither the NFLPA nor any of its members will engage in any strike, work stoppage, or other concerted action interfering with the operations of the NFL or any Club for the duration of this Agreement, and no Clubs, either individually or in concert with other Clubs, will engage in any lockout for the duration of this Agreement. Any claim by the Management Council that the NFLPA has violated this Section 1 will not be subject to the grievance procedure or the arbitration provisions of this Agreement and the Management Council will have the right to submit such claim directly to the courts.

*Section 2.* **No Suit:** The NFLPA agrees that neither it nor any of its members, nor agents acting on its behalf, nor any member of its bargaining unit, will sue, or support financially or administratively, or voluntarily provide testimony or affidavit in, any suit against, the NFL or any Club with respect to any claim relating to any conduct permitted by this Agreement, the Settlement Agreement, or any term of this Agreement or the Settlement Agreement, including, without limitation, the Articles concerning the College Draft, the Compensatory Draft, the Option Clause, the Entering Player Pool, Veterans With Less Than Three Accrued Seasons, Veteran Free Agency, Franchise and Transition Players, the Final Eight Plan, Guaranteed League-wide Salary, Salary Cap and Minimum Team Salary, and the Waiver System, and provisions applicable to the trading of players; provided, however, that nothing contained in this Section 2 will prevent the NFLPA or any player from asserting that any Club, acting individually or in concert with other Clubs, or the Management Council, has: (1) breached the terms of this Agreement, the NFL Player Contract, the revised NFL Player Contract, or the NFL Constitution and Bylaws, and from processing such asserted breach as a non-injury grievance under Article IX (Non-Injury Grievance) or asserting any claim before the Special Master or the Impartial Arbitrator as provided in this Agreement; or (2) breached the terms of the Settlement Agreement and from asserting such a claim before the Special Master, Impartial Arbitrator, or the Federal District Court, as provided for in the Settlement Agreement. In addition, neither the NFLPA nor any of its members, agents acting on its behalf, nor any members of its bargaining unit will sue, or support financially or administratively any suit against, the NFL or any Club relating to the provisions of the Constitution and Bylaws of the NFL, which are appended to the Side Letter dated July 24, 2006 from Harold Henderson to Eugene Upshaw, as they were operative and administered at the beginning date of the 2006 League Year (except any provisions relating to the 1982 CBA, which have been superseded by this Agreement); provided, however, that nothing herein shall prevent the NFLPA, its members,

10

agents or bargaining unit members from asserting any rights they may have under the federal labor laws or under this Agreement or the Settlement Agreement.

**Section 3. Releases:** The releases and covenants not to sue contained in Article XIX (Releases and Covenants Not to Sue) of the Settlement Agreement are hereby incorporated by reference.

11

## ARTICLE V
## UNION SECURITY

*Section 1.* **Union Security:** Every NFL player has the option of joining or not joining the NFLPA; provided, however, that as a condition of employment commencing with the execution of this Agreement and for the duration of this Agreement and wherever and whenever legal: (a) any active player who is or later becomes a member in good standing of the NFLPA must maintain his membership in good standing in the NFLPA; and (b) any active player (including a player in the future) who is not a member in good standing of the NFLPA must, on the 30th day following the beginning of his employment or the execution of this Agreement, whichever is later, pay, pursuant to Section 2 below or otherwise to the NFLPA, an annual service fee in the same amount as any initiation fee and annual dues required of members of the NFLPA.

*Section 2.* **Check-off:** Commencing with the execution of this Agreement, each Club will check-off the initiation fee and annual dues or service charge, as the case may be, in equal weekly or biweekly installments from each pre-season and regular season paycheck, beginning with the first paycheck after the date of the first pre-season squad cutdown, for each player for whom a current check-off authorization (copy attached hereto as Appendix A and made a part of this Agreement) has been provided to the Club. The Club will forward the check-off monies to the NFLPA within seven days of the check-off.

*Section 3.* **NFLPA Meetings:** The NFLPA will have the right to conduct three meetings on Club property each year, including one at the time of a Club's minicamp, provided that the player representative or NFLPA office has given the Club reasonable notice of its desire to hold such a meeting by the close of business on Friday of the week before the week in which the meeting is to take place, or by the close of business Thursday if the meeting is scheduled for the following Monday. No meeting will be held at a time which would disrupt a coach's team schedule.

*Section 4.* **NFLPA Player Group Licensing Program:** The NFL recognizes that players have authorized the NFLPA to act as their agent in a Group Player Licensing program (defined below) for their benefit. The NFL hereby agrees that neither it, any Club, nor any affiliate of the NFL and/or any Club shall acquire, seek to acquire, induce others to acquire, or assist others in acquiring Group Player Licensing rights, or interfere in any manner with any player's conveyance of such rights pursuant to the NFLPA Group Player Licensing program, except as otherwise explicitly agreed to between the NFLPA and the NFL. Any disputes that arise regarding the NFL's conduct in this regard shall be submitted for expedited arbitration pursuant to

12

Article IX (Non-Injury Grievance). The first such grievance in any calendar year shall be treated on an expedited basis without counting against the number of grievances the NFLPA may expedite pursuant to Article IX, Section 4; all subsequent such grievances in that calendar year shall count against the number of grievances the NFLPA may expedite pursuant to Article IX, Section 4. For the purposes of this Section 4, Group Player Licensing shall be defined as the use of a total of six or more NFL players' names, signatures facsimiles, voices, pictures, photographs, likenesses and/or biographical information on or in conjunction with products (including, but not limited to, trading cards, clothing, videogames, computer games, collectibles, internet sites, fantasy games, etc.): (a) in any one product category, as defined by industry standards; or (b) in different categories if a total of six or more players are used and (i) the products all use similar or derivative design or artwork or (ii) one such player product is used to promote another player product. For the purposes of this Section 4, Group Player Licensing includes, without limitation, products sold at retail and products that are used as promotional or premium items.

**Section 5.** Disputes: Any dispute over compliance with, or the interpretation, application or administration of this Article will be processed pursuant to Article IX (Non-Injury Grievance). Any decision of an arbitrator pursuant thereto will constitute full, final and complete disposition of the dispute, and will be binding on the player(s) and Club(s) involved and the parties to this Agreement.

**Section 6. Procedure for Enforcement:**

(a)     Upon written notification to the Management Council by the NFLPA that a player has not paid any initiation fee, dues or the equivalent service fee in violation of Section 1 of this Article V (Union Security), the Management Council will within seven days consider the matter. If there is no resolution of the matter within seven days, then the Club will, upon notification of the NFLPA, suspend the player without pay. Such suspension will continue until the NFLPA has notified the Club in writing that the suspended player has satisfied his obligation as contained in Section 1 of this Article V (Union Security). The parties hereby agree that suspension without pay is adopted as a substitute for and in lieu of discharge as the penalty for a violation of the union security clause of the Agreement and that no player will be discharged for a violation of that clause. The player's contract will be tolled during the period of any such suspension. A copy of all notices required by this "Procedure for the Enforcement of the Union Security Agreement Between the NFL Management Council and the NFLPA" will be simultaneously mailed to the player involved and the Management Council.

(b)     It is further agreed that the term "member in good standing" as used in this Article V (Union Security) applies only to payment of dues or

13

initiation fee and not any other factors involved in union discipline.

(c)      It is further agreed that notwithstanding Article III (Scope of Agreement), Article IV (No Strike/Lockout/Suit), and Article LVIII (Duration of Agreement), that if at any time in the term of the Agreement, any court or agency shall wholly or partially invalidate the provisions of Article V (Union Security) relating to Union Security, then the NFLPA may reopen this Agreement upon the giving of 10 days' written notice, with reference solely to the issue of Union Security, and both parties will have an obligation to resume negotiations limited to the issue of Union Security, and both parties will be free to engage in whatever concerted or other action may be permitted by law in support of their positions.

**Section 7. NFLPA Responsibility:** It is agreed that neither the NFL nor any Club shall be liable for any salary, bonus, or other monetary claims of any player suspended pursuant to the terms of Section 6 above. Collection of initiation fees, annual dues, service charges or other check-off amounts missed because of inadvertent errors shall be the responsibility of the NFLPA. The NFLPA shall be solely responsible for refunds to players in the case of any sums deducted not in conformity with the provisions of the NFLPA Constitution and Bylaws or applicable law.

**Section 8. Orientations:** During the annual Timing and Testing Sessions of the Scouting Combines, the NFL will use best efforts to ensure that the NFLPA will be permitted to present one-hour orientations for all of the college players attending the session. The orientation will include only information on the Career Planning Program, the Chemical Dependency Program, the NFLPA Agent Certification System, and other information contained in this Agreement and will encourage the players to participate fully in all activities of the Scouting Combine. The NFLPA will also have the right to space in the public area of the players' hotel, staffed by NFLPA employees, to provide information requested by players during their free time at the Combine. The NFLPA and the NFL will also sponsor an orientation with an agreed-upon agenda for all rookies on a Club-by-Club basis during the first half of the NFL regular season, which meetings may take place on the players' day off if no other mutually acceptable day is agreed upon.

**Section 9. Rookie Symposium:** Attendance at the annual Rookie Symposium shall be mandatory for all Rookies invited to the Symposium. A material failure to attend the entire Symposium (e.g., missing more than one presentation) that is unexcused by the NFLMC will result in a maximum fine of $50,000 for the 2006-09 League Years and $75,000 for the 2010-12 League Years. The NFLPA and the NFLMC shall each use its best efforts to encourage players to participate fully in all symposium activities and to abide by all symposium rules (e.g., dress code, curfew, etc.). Being late for or missing curfew will result in a fine at the then applicable amount under

14

Article VIII of the CBA. Other lateness for meetings or similar Article VIII violations will be disciplined at the applicable fine amounts. Discipline shall be imposed, if appropriate, by the NFLMC, not by any Club.

15

# ARTICLE VI
## NFLPA AGENT CERTIFICATION

*Section 1.* **Exclusive Representation:** The NFLMC and the Clubs recognize that, pursuant to federal labor law, the NFLPA regulates the conduct of agents who represent players in individual contract negotiations with Clubs. The NFLMC and the Clubs agree that the Clubs are prohibited from engaging in individual contract negotiations with any agent who is not listed by the NFLPA as being duly certified by the NFLPA in accordance with its role as exclusive bargaining agent for NFL players. The NFLPA shall provide and publish a list of agents who are currently certified in accordance with its agent regulation system, and shall notify the NFLMC and the Clubs of any deletions or additions to the list pursuant to its procedures. The NFLPA agrees that it shall not delete any agent from its list until that agent has exhausted the opportunity to appeal the deletion pursuant to the NFLPA's agent regulation system, except: (i) where an agent has failed to pass a written examination given to agents by the NFLPA or (ii) in extraordinary circumstances where the NFLPA's investigation discloses that the agent's conduct is of such a serious nature as to justify immediately invalidating the agent's certification. The NFLPA shall have sole and exclusive authority to determine the number of agents to be certified, and the grounds for withdrawing or denying certification of an agent. The NFLPA agrees that it will not discipline, dismiss or decertify agents based upon the results they achieve or do not achieve in negotiating terms or conditions of employment with NFL Clubs. This section shall not limit the NFLPA's ability to discipline agents for malfeasance.

*Section 2.* **Enforcement:** Under procedures to be established by agreement between the NFL and the NFLPA, the Commissioner shall disapprove any NFL Player Contract(s) between a player and a Club unless such player: (a) is represented in the negotiations with respect to such NFL Player Contract(s) by an agent or representative duly certified by the NFLPA in accordance with the NFLPA agent regulation system and authorized to represent him; or (b) acts on his own behalf in negotiating such NFL Player Contract(s).

*Section 3.* **Penalty:** Under procedures to be established by agreement between the NFL and the NFLPA, the NFL shall impose a fine of $15,000 upon any Club that negotiates any NFL Player Contract(s) with an agent or representative not certified by the NFLPA in accordance with the NFLPA agent regulation system if, at the time of such negotiations, such Club either (a) knows that such agent or representative has not been so certified or (b) fails to make reasonable inquiry of the NFLPA as to whether such agent or representative has been so certified. Such fine shall not apply, however, if the negotiation in question is the first violation of this Article by the

16

Club during the term of this Agreement. It shall not be a violation of this Article for a Club to negotiate with any person named on (or not deleted from) the most recently published list of agents certified by the NFLPA to represent players.

17

## ARTICLE VII
## PLAYER SECURITY

*Section 1.* **No Discrimination:** There will be no discrimination in any form against any player by the Management Council, any Club or by the NFLPA because of race, religion, national origin or activity or lack of activity on behalf of the NFLPA.

*Section 2.* **Personal Appearance:** Clubs may make and enforce reasonable rules governing players' appearance on the field and in public places while representing the Clubs; provided, however, that no player will be disciplined because of hair length or facial hair.

18

# ARTICLE VIII
# CLUB DISCIPLINE

***Section 1.*** **Maximum Discipline:**

(a)    For the 2006 League Year, the following maximum discipline schedule will be applicable:

Overweight—maximum fine of $400 per lb., which fine may be assessed no more than twice per week, with each week beginning on Monday and ending on Sunday, and with each fine at least three days apart (e.g., Monday-Thursday, Tuesday-Friday, etc.).

Unexcused late reporting for mandatory off-season minicamp, team meeting, practice, transportation, curfew, scheduled appointment with Club physician or trainer, or scheduled promotional activity—maximum fine of $1,500.

Failure to promptly report injury to Club physician or trainer—maximum fine of $1,500.

Losing, damaging or altering Club-provided equipment—maximum fine of $1,500 and replacement cost, if any.

Throwing football into stands—maximum fine of $1,500.

Unexcused late reporting for or absence from pre-season training camp by a player under contract except those signed as an Unrestricted Free Agent pursuant to Article XIX (Veteran Free Agency)—maximum fine of $14,000 per day.

Unexcused late reporting for or absence from pre-season training camp by a player under contract signed as an Unrestricted Free Agent pursuant to Article XIX (Veteran Free Agency)—maximum fine of $14,000 per day, plus one week's regular season salary for each pre-season game missed.

Unexcused missed mandatory off-season minicamp, team meeting, practice, curfew, bed check, scheduled appointment with Club physician or trainer, material failure to follow Club rehabilitation directions, or scheduled promotional activity—maximum fine of $8,000.

Material failure to follow rehabilitation program prescribed by Club physician or trainer—maximum fine of $8,000.

Unexcused missed team transportation—maximum fine of $8,000 and transportation expense, if any.

Loss of all or part of playbook, scouting report or game plan—maximum fine of $8,000.

Ejection from game—maximum fine of $14,000.

Conduct detrimental to Club—maximum fine of an amount equal to one week's salary and/or suspension without pay for a period not to exceed four (4) weeks. This maximum applies without limitation to any deactivation of a player in response to player conduct (other than a deactivation in response to a player's on-field playing ability), and any such deactivation, even with pay, shall be considered discipline subject to the limits set forth in this section. The Non-Injury Grievance Arbitrator's decision in *Terrell*

19

*Owens* (Nov. 23, 2005) is thus expressly overruled as to any Club decision to deactivate a player in response to the player's conduct.

The Club will promptly notify the player of any discipline; notice of any Club fine in a category subject to a maximum of $14,000 or above and of any "conduct detrimental" fine or suspension will be sent to the NFLPA.

(b)     The amounts set forth in Section 1(a) above and Section 7 below shall be increased for the 2007 League Year, and each League Year thereafter during the term of this Agreement, at the rate of annual TR growth, up to a maximum annual growth of 10% per year.

*Section 2.* **Published Lists:** All Clubs must publish and make available to all players at the commencement of pre-season training camp a complete list of the discipline which can be imposed for designated offenses within the limits set by the maximum schedule referred to in Section 1 above.

*Section 3.* **Uniformity:** Discipline will be imposed uniformly within a Club on all players for the same offense; however, if the Club's published list of discipline imposes fines for designated offenses that are less than the limits set by the maximum schedule set forth in Section 1 above, the Club may specify the events which create an escalation of the discipline, not to exceed such maximum limits, provided the formula for escalation is uniform in its application. Nothing in this Section 3 shall preclude any Club from imposing a fine and/or a suspension without pay for conduct detrimental to the Club, as set forth in Section 1(a) above, in any case in which the same player has committed repeated offenses in the same League Year, whether or not the fines imposed for the player's prior offenses were escalated as described in the immediately preceding sentence of this Section; provided, however, that the NFLPA expressly reserves the right to challenge the imposition of such discipline for conduct detrimental to the Club based upon the absence of just cause and/or any other allowable bases for opposing discipline. Any disciplinary action imposed upon a player by the Commissioner pursuant to Article XI (Commissioner Discipline) will preclude or supersede disciplinary action by the Club for the same act or conduct.

*Section 4.* **Disputes:** Any dispute involved in Club discipline may be made the subject of a non-injury grievance under Article IX (Non-Injury Grievance).

*Section 5.* **Deduction:** Any Club fine will be deducted at the rate of no more than $1,000 from each pay period, if sufficient pay periods remain; or, if less than sufficient pay periods remain, the fine will be deducted in equal installments over the number of remaining pay periods. This will not apply to a suspension.

*Section 6.* **NFL Drug and Steroid Policies:** No Club may impose any dis-

20

Article VIII, Club Discipline

cipline against a player, including but not limited to terminating the player's Player Contract, as a result of that Player's violation of the Policy on Anabolic Steroids and Related Substances or the NFL Policy and Program for Substances of Abuse, or for failing any drug test, provided, however, that the fact that a player has violated the Policy on Anabolic Steroids and Related Substances or the NFL Policy and Program for Substances of Abuse, or has failed a drug test will not preclude the termination of his Player Contract if such termination is otherwise expressly permissible under this Agreement or the player's Player Contract.

**Section 7. Cumulative Fines:** Any player who commits multiple offenses on the same day (e.g., missed mandatory team meeting, late for practice and missed scheduled appointment with trainer) shall be subject to a separate fine for each such offense, within the limits set by the maximum schedule set forth in Section 1 above; provided, however, that the cumulative amount for all such fines on a given day during pre-season training camp shall not exceed $14,000, and that the cumulative amount for all such fines on a given day during the regular season or post-season shall not exceed $20,000. The cumulative fine limits set forth in this Section shall not apply to any violation as to which a player may be fined one week's regular season salary or to conduct detrimental to the Club. Nothing in this Section shall preclude the Club from denying payment of the Player's weekly salary or from seeking reimbursement from the Player under any forfeiture provision in the Player's Contract if such denial of payment or forfeiture is otherwise permissible under both the Player's Contract and this Agreement. Nor shall anything in this Section preclude a Club from imposing a fine and/or suspension without pay for conduct detrimental to the Club, as set forth in Section 1(a) above, in any case in which the same player has committed repeated offenses in the same League Year, as described in Section 3 above; provided, however, that the NFLPA expressly reserves the right to challenge the imposition of such discipline for conduct detrimental to the Club based upon the absence of just cause and/or any other allowable bases for opposing discipline.

**Section 8. Offset of Pre-Season Fine Amounts:** In the event that a player under contract is fined in the maximum category of $14,000 per day for unexcused late reporting for or absence from pre-season training camp and, as the result of such late reporting or absence, the Club also witholds payment, or claims reimbursement, under any forfeiture provision in a Player Contract executed prior to March 8, 2006, then there shall be an offset of the cumulative amount of such daily fines against the amount claimed by the Club under the forfeiture provision, or vice versa. In the 2006 League Year, the offset shall be $8,000 per day for each day the player has been fined, representing the difference between the CBA's prior maximum fine for this category of offense ($6,000 per day) and the new maximum fine for

21

this category of offense ($14,000 per day) effective on March 8, 2006. The amount of such offset shall be increased for the 2007 League Year and each League Year thereafter during the term of this Agreement, at the rate of annual TR growth, up to a maximum of 10% per year. Other than as specifically set forth in this Section, there shall be no offset of fines imposed under this Agreement against claims made by a Club under any forfeiture provision in a Player Contract.

**Section 9. Effective Date:** The maximum discipline rules set forth above apply to all discipline imposed on or after March 8, 2006.

22

# ARTICLE IX
# NON-INJURY GRIEVANCE

*Section 1.* **Definition:** Any dispute (hereinafter referred to as a "grievance") arising after the execution of this Agreement and involving the interpretation of, application of, or compliance with, any provision of this Agreement, the NFL Player Contract, or any applicable provision of the NFL Constitution and Bylaws pertaining to terms and conditions of employment of NFL players, will be resolved exclusively in accordance with the procedure set forth in this Article, except wherever another method of dispute resolution is set forth elsewhere in this Agreement, and except wherever the Settlement Agreement provides that the Special Master, Impartial Arbitrator, the Federal District Court or the Accountants shall resolve a dispute.

*Section 2.* **Initiation:** A grievance may be initiated by a player, a Club, the Management Council, or the NFLPA. A grievance must be initiated within forty-five (45) days from the date of the occurrence or non-occurrence upon which the grievance is based, or within forty-five (45) days from the date on which the facts of the matter became known or reasonably should have been known to the party initiating the grievance, whichever is later. A player need not be under contract to a Club at the time a grievance relating to him arises or at the time such grievance is initiated or processed.

*Section 3.* **Filing:** Subject to the provisions of Section 2 above, a player or the NFLPA may initiate a grievance by filing a written notice by certified mail or fax with the Management Council and furnishing a copy of such notice to the Club(s) involved; a Club or the Management Council may initiate a grievance by filing written notice by certified mail or fax with the NFLPA and furnishing a copy of such notice to the player(s) involved. The notice will set forth the specifics of the alleged action or inaction giving rise to the grievance. If a grievance is filed by a player without the involvement of the NFLPA, the Management Council will promptly send copies of the grievance and the answer to the NFLPA. The party to whom a non-injury grievance has been presented will answer in writing by certified mail or fax within seven (7) days of receipt of the grievance. The answer will set forth admissions or denials as to the facts alleged in the grievance. If the answer denies the grievance, the specific grounds for denial will be set forth. The answering party will provide a copy of the answer to the player(s) or Club(s) involved and the NFLPA or the Management Council as may be applicable.

*Section 4.* **Ordinary and Expedited Appeal:** If a grievance is not resolved after it has been filed and answered, either the player(s) or Club(s) involved, or the NFLPA, or the Management Council may appeal such grievance by filing a written notice of appeal with the Notice Arbitrator and mailing copies thereof to the party or parties against whom such appeal is taken,

23

and either the NFLPA or the Management Council as may be appropriate. If the grievance involves a suspension of a player by a Club, the player or NFLPA will have the option to appeal it immediately upon filing to the Notice Arbitrator and a hearing will be held by an arbitrator designated by the Notice Arbitrator within seven (7) days of the filing of the grievance. In addition, the NFLPA and the Management Council will each have the right of immediate appeal and hearing within seven (7) days with respect to four (4) grievances of their respective choice each calendar year. The arbitrator(s) designated to hear such grievances will issue their decision(s) within five (5) days of the completion of the hearing. Prehearing briefs may be filed by either party and, if filed, will be exchanged prior to hearing.

**Section 5. Discovery:** No later than ten (10) days prior to the hearing, each party will submit to the other copies of all documents, reports and records relevant to the dispute. Failure to submit such documents, reports and records no later than ten (10) days prior to the hearing will preclude the non-complying party from submitting such documents, reports and records into evidence at the hearing, but the other party will have the opportunity to examine such documents, reports and records at the hearing and to introduce those it desires into evidence, except that relevant documents submitted to the opposing party less than ten (10) days before the hearing will be admissible provided that the proffering party and the custodian(s) of the documents made a good faith effort to obtain (or discover the existence of) said documents or that the document's relevance was not discovered until the hearing date. In the case of an expedited grievance pursuant to Section 4, such documentary evidence shall be exchanged on or before two (2) days prior to the hearing unless the arbitrator indicates otherwise.

**Section 6. Arbitration Panel:** There will be a panel of four (4) arbitrators, whose appointment must be accepted in writing by the NFLPA and the Management Council. The parties will designate the Notice Arbitrator within ten (10) days of the execution of this Agreement. In the event of a vacancy in the position of Notice Arbitrator, the senior arbitrator in terms of affiliation with this Agreement will succeed to the position of Notice Arbitrator, and the resultant vacancy on the panel will be filled according to the procedures of this Section. Either party to this Agreement may discharge a member of the arbitration panel by serving written notice upon the arbitrator and the other party to this Agreement between December 1 and 10 of each year, but at no time shall such discharges result in no arbitrators remaining on the panel. If either party discharges an arbitrator, the other party shall have two (2) business days to discharge any other arbitrator. If the parties are unable to agree on a new arbitrator within thirty (30) days of any vacancy, the Notice Arbitrator shall submit a list of ten (10) qualified and experienced arbitrators to the NFLPA and the Management Council. With-

24

in fourteen (14) days of the receipt of the list, the NFLPA and the Management Council shall select one arbitrator from the list by alternately striking names until only one remains, with a coin flip determining the first strike. The next vacancy occurring will be filled in similar fashion, with the party who initially struck first then striking second. The parties will alternate striking first for future vacancies occurring thereafter during the term of this Agreement. If either party fails to cooperate in the striking process, the other party may select one of the nominees on the list and the other party will be bound by such selection.

***Section 7. Hearing:*** Each arbitrator will designate a minimum of twelve (12) hearing dates per year, exclusive of the period July 15 through September 10 for non-expedited cases, for use by the parties to this Agreement. Upon being appointed, each arbitrator will, after consultation with the Notice Arbitrator, provide to the NFLPA and the Management Council specified hearing dates for such ensuing period, which process will be repeated on an annual basis thereafter. The parties will notify each arbitrator thirty (30) days in advance of which dates the following month are going to be used by the parties. The designated arbitrator will set the hearing on his next reserved date in the Club city unless the parties agree otherwise. If a grievance is set for hearing and the hearing date is then postponed by a party within thirty (30) days of the hearing date, the postponement fee of the arbitrator will be borne by the postponing party unless the arbitrator determines that the postponement was for good cause. Should good cause be found, the parties will share any postponement costs equally. If the arbitrator in question cannot reschedule the hearing within thirty (30) days of the postponed date, the case may be reassigned by the Notice Arbitrator to another panel member who has a hearing date available within the thirty (30) day period. At the hearing, the parties to the grievance and the NFLPA and Management Council will have the right to present, by testimony or otherwise, and subject to Section 5, any evidence relevant to the grievance. All hearings will be transcribed.

If a witness is unable to attend the hearing, the party offering the testimony shall inform the other party of the identity and unavailability of the witness to attend the hearing. At the hearing or within fourteen (14) days thereafter, the party offering the testimony of the unavailable witness must offer the other party two possible dates within the next forty-five (45) days to take the witness' testimony. The other party shall have the opportunity to choose the date. The record should be closed sixty (60) days after the hearing date unless mutually extended notwithstanding any party's failure to present post-hearing testimony within the above-mentioned time period. If a witness is unavailable to come to the hearing, the witness' testimony may be taken by telephone conference call if the parties agree. In cases where the amount claimed is less than $25,000, the parties may agree to hold the hearing by telephone conference call. If either party requests post-

25

hearing briefs, the parties shall prepare and simultaneously submit briefs except in grievances involving non-suspension Club discipline where less than $25,000 is at issue, in which cases briefs will not be submitted. Briefs must be submitted to the arbitrator postmarked no later than sixty (60) days after receipt of the last transcript.

**Section 8. Arbitrator's Decision and Award:** The arbitrator will issue a written decision within thirty (30) days of the submission of briefs, but in no event shall he consider briefs filed by either party more than sixty (60) days after receipt of the last transcript, unless the parties agree otherwise. The decision of the arbitrator will constitute full, final and complete disposition of the grievance, and will be binding upon the player(s) and Club(s) involved and the parties to this Agreement; provided, however, that the arbitrator will not have the jurisdiction or authority: (a) to add to, subtract from, or alter in any way the provisions of this Agreement or any other applicable document; or (b) to grant any remedy other than a money award, an order of reinstatement, suspension without pay, a stay of suspension pending decision, a cease and desist order, a credit or benefit award under the Bert Bell/Pete Rozelle NFL Player Retirement Plan, or an order of compliance, with a specific term of this Agreement or any other applicable document, or an advisory opinion pursuant to Article XIII (Committees), Section 1(c). In the event the arbitrator finds liability on the part of the Club, he shall award interest beginning one year from the date of the last regular season game of the season of the grievance. The interest shall be calculated at the one-year Treasury Note rate published in *The Wall Street Journal* as of February 1 (or the next date published) of each year, and such rate shall apply to any interest awarded during each such subsequent twelve (12) month period.

**Section 9. Time Limits:** Each of the time limits set forth in this Article may be extended by mutual written agreement of the parties involved. If any grievance is not processed or resolved in accordance with the prescribed time limits within any step, unless an extension of time has been mutually agreed upon in writing, either the player, the NFLPA, the Club or the Management Council, as the case may be, after notifying the other party of its intent in writing, may proceed to the next step.

**Section 10. Representation:** In any hearing provided for in this Article, a player may be accompanied by counsel of his choice and/or a representative of the NFLPA. In any such hearing, a Club representative may be accompanied by counsel of his choice and/or a representative of the Management Council.

**Section 11. Costs:** All costs of arbitration, including the fees and expenses of the arbitrator and the transcript costs, will be borne equally between the

26

parties. Notwithstanding the above, if the hearing occurs in the Club city and if the arbitrator finds liability on the part of the Club, the arbitrator shall award the player reasonable expenses incurred in traveling to and from his residence to the Club city and one night's lodging.

**Section 12. Payment:** If an award is made by the arbitrator, payment will be made within thirty (30) days of the receipt of the award to the player or jointly to the player and the NFLPA provided the player has given written authorization for such joint payment. The time limit for payment may be extended by mutual consent of the parties or by a finding of good cause for the extension by the arbitrator. Where payment is unduly delayed beyond thirty (30) days, interest will be assessed against the Club from the date of the decision. Interest shall be calculated at double the one-year Treasury Note rate published in *The Wall Street Journal* as of February 1 (or next date published) of each year, and such rate shall apply to the interest awarded during each subsequent twelve (12) month period in lieu of continuation of any pre-award interest. The arbitrator shall retain jurisdiction of the case for the purpose of awarding post-hearing interest pursuant to this Section.

**Section 13. Grievance Settlement Committee:** A grievance settlement committee consisting of the Executive Director of the NFLPA and the Executive Vice President for Labor Relations of the NFL shall have the authority to resolve any grievance filed under this Article. This committee shall meet periodically to discuss and consider pending grievances. No evidence will be taken at such meetings, except parties involved in the grievance may be contacted to obtain information about their dispute. If the committee resolves any grievance by mutual agreement of the two members, such resolution will be made in writing and will constitute full, final and complete disposition of the grievance and will be binding upon the player(s) and the Club(s) involved and the parties to this Agreement. Consideration of any grievance by this committee shall not in any way delay its processing through the non-injury grievance procedure described in this Article, and no grievance may be resolved pursuant to this Section once an arbitration hearing has been convened pursuant to Section 7 hereof.

27

## ARTICLE X
## INJURY GRIEVANCE

**Section 1. Definition:** An "injury grievance" is a claim or complaint that, at the time a player's NFL Player Contract was terminated by a Club, the player was physically unable to perform the services required of him by that contract because of an injury incurred in the performance of his services under that contract. All time limitations in this Article may be extended by mutual agreement of the parties.

**Section 2. Filing:** Any player and/or the NFLPA must present an injury grievance in writing to a Club, with a copy to the Management Council, within twenty-five (25) days from the date it became known or should have become known to the player that his contract had been terminated. The grievance will set forth the approximate date of the alleged injury and its general nature. If a grievance is filed by a player without the involvement of the NFLPA, the Management Council will promptly send copies of the grievance and the answer to the NFLPA.

**Section 3. Answer:** The Club to which an injury grievance has been presented will answer in writing within seven (7) days. If the answer contains a denial of the claim, the general grounds for such denial will be set forth. The answer may raise any special defense, including but not limited to the following:

(a)    That the player did not pass the physical examination administered by the Club physician at the beginning of the pre-season training camp for the year in question. This defense will not be available if the player participated in any team drills following his physical examination or in any pre-season or regular season game; provided, however, that the Club physician may require the player to undergo certain exercises or activities, not team drills, to determine whether the player will pass the physical examination;

(b)    That the player failed to make full and complete disclosure of his known physical or mental condition when questioned during the physical examination;

(c)    That the player's injury occurred prior to the physical examination and the player knowingly executed a waiver or release prior to the physical examination or his commencement of practice for the season in question which specifically pertained to such prior injury;

(d)    That the player's injury arose solely from a non-football-related cause subsequent to the physical examination;

(e)    That subsequent to the physical examination the player suffered no new football-related injury;

(f)    That subsequent to the physical examination the player suffered no football-related aggravation of a prior injury reducing his physical ca-

28

pacity below the level existing at the time of his physical examination as contemporaneously recorded by the Club physician.

*Section 4.* **Neutral Physician:** The player must present himself for examination by a neutral physician in the Club city or the Club city closest to the player's residence within twenty (20) days from the date of the grievance. This time period may be extended by mutual consent if the neutral physician is not available. Neither Club nor player may submit any medical records to the neutral physician, nor may the Club physician or player's physician communicate with the neutral physician. The player will notify the Club of the identity of the neutral physician by whom he is to be examined as soon as possible subsequent to a selection by the player. The neutral physician will not become the treating physician nor will the neutral physician examination involve more than one office visit without the prior approval of both the NFLPA and Management Council. The neutral physician may review any objective medical tests which all parties mutually agree to provide. The neutral physician is further authorized to perform any necessary diagnostic tests after consultation with the parties. The neutral physician is required to submit to the parties a detailed typewritten medical report of his examination. In order to facilitate settlement of grievances, the parties periodically will consult with neutral physicians by telephone conference call to obtain preliminary opinions as to the length of time, if any, after their examinations before players would be physically able to perform contract services. The NFLPA will use its best efforts to make the neutral physicians in each Club city equally available to the players who file injury grievances.

*Section 5.* **Neutral Physician List:** The NFLPA and the Management Council will maintain a jointly approved list of neutral physicians, including at least two orthopedic physicians in each city in which a Club is located. This list will be subject to review and modification between February 1 and April 15 of each year, at which time either party may eliminate any two neutral physicians from the list by written notice to the other party. When vacancies occur, the NFLPA and the Management Council will each submit a list of three (3) orthopedic physicians to the other party within thirty (30) days for each NFL city where a vacancy exists. If the parties are unable to agree on a replacement, within ten (10) days they will select a neutral physician for each city by alternately striking names. The party to strike a name first will be determined by a flip of a coin. If either party fails to cooperate in the striking process the other party may select one of the nominees on its list, and the other party will be bound by such selection. The next vacancy occurring will be filled in similar fashion with the party who initially struck first then striking second. The parties will alternate striking first for future vacancies occurring thereafter during the term of this Agreement.

29

*Section 6.* **Appeal:** A grievance may be appealed to an arbitrator by filing of written notice of appeal with the chairman of the arbitration panel within thirty (30) days from the date of receipt of the neutral physician's written report.

*Section 7.* **Arbitration Panel:** There will be a panel of five (5) arbitrators, whose appointment must be accepted in writing by the NFLPA and the Management Council. The parties shall designate the Chairman of the panel. In the event of a vacancy in the position of the Chairman of the panel, the senior arbitrator in terms of affiliation with this Agreement will succeed to the position of Chairman of the panel, and the resultant vacancy on the panel will be filled according to the procedures of this Section. Either party to this Agreement may discharge a member of the arbitration panel by serving written notice upon the arbitrator and the other party to this Agreement between December 1 and 10 of each year, but at no time shall such discharges result in no arbitrators remaining on the panel. If either party discharges an arbitrator, the other party shall have two (2) business days to discharge any other arbitrator. Any vacancies occurring on the arbitration panel will be filled as follows: If the parties are unable to agree to a new arbitrator within thirty (30) days of the occurrence of the vacancy, the Chairman of the panel shall submit a list of ten (10) qualified and experienced arbitrators to the NFLPA and the Management Council. Within fourteen (14) days of the receipt of the list, the NFLPA and the Management Council shall select one arbitrator from the list by alternately striking names until only one remains, with a coin flip determining the first strike. The next vacancy occurring will be filled in similar fashion, with the party who initially struck first then striking second. The parties will alternate striking first for future vacancies occurring thereafter during the term of this Agreement. If either party fails to cooperate in the striking process, the other party may select one of the nominees on the list and the other party will be bound by such selection.

*Section 8.* **Hearing:** Each arbitrator shall designate a minimum of twelve (12) hearing dates per year, exclusive of the period July 15 through September 10, for use by the parties to this Agreement. Upon being appointed, each arbitrator will, after consultation with the Chairman, provide to the NFLPA and the Management Council specified hearing dates for each of the ensuing six months, which process will be repeated on a semiannual basis thereafter. The parties will notify each arbitrator thirty (30) days in advance of which dates the following month are going to be used by the parties. The designated arbitrator will set the hearing on his or her next reserved date in the Club city, unless the parties agree otherwise. If a grievance is set for hearing and the hearing date is then postponed by a party within thirty (30) days of the hearing date, the postponement fee of the arbitrator will be borne by the postponing party unless the arbitrator deter-

30

mines that the postponement was for good cause. Should good cause be found, the parties will share any postponement costs equally. If the arbitrator in question cannot reschedule the hearing within thirty (30) days of the postponed date, the case may be reassigned by the Chairman to another panel member who has a hearing date available within the thirty (30) day period. At the hearing, the parties to the grievance and the NFLPA and Management Council will have the right to present, by testimony or otherwise, any evidence relevant to the grievance. The NFLPA and the Management Council have the right to attend all grievance hearings. All hearings shall be transcribed.

If a witness is unable to attend the hearing, the party offering the testimony shall inform the other party of the identity and unavailability of the witness to attend the hearing. At the hearing or within fourteen (14) days thereafter, the party offering the testimony of the unavailable witness must offer the other party two possible dates within the next forty-five (45) days to take the witness' testimony. The other party shall have the opportunity to choose the date. The record should be closed sixty (60) days after the hearing date unless mutually extended notwithstanding any party's failure to present post-hearing testimony within the above-mentioned time period. If a witness is unavailable to come to the hearing, the witness' testimony may be taken by telephone conference call if the parties agree. In cases where the amount claimed is less than $25,000, the parties may agree to hold the hearing by telephone conference call.

Post-hearing briefs must be submitted to the arbitrator postmarked no later than sixty-five (65) days after receipt of the last transcript. The arbitrator will issue a written decision within thirty (30) days of the submission of briefs but shall not consider briefs filed by either party more than sixty-five (65) days after receipt of the last transcript, unless the parties agree otherwise. The arbitrator's decision will be final and binding; provided, however, that no arbitrator will have the authority to add to, subtract from, or alter in any way any provision of this Agreement or any other applicable document. In the event the arbitrator finds liability on the part of the Club, he shall award interest beginning one year from the date of the last regular season game of the season of injury. The interest shall be calculated at the one-year Treasury Note rate published in *The Wall Street Journal* as of February 1 (or the next date published) of each year, and such rate shall apply to any interest awarded during each such subsequent twelve (12) month period.

*Section 9.* **Miscellaneous:** The arbitrator will consider the neutral physician's findings conclusive with regard to the physical condition of the player and the extent of an injury at the time of his examination by the neutral physician. The arbitrator will decide the dispute in light of this finding and such other issues or defenses which may have been properly submitted to him. The Club or the Management Council must advise the grievant and

31

the NFLPA in writing no later than seven (7) days before the hearing of any special defense to be raised at the hearing. The arbitrator may award the player payments for medical expenses incurred or which will be incurred in connection with an injury.

*Section 10.* **Expenses:** Expenses charged by a neutral physician will be shared equally by the Club and the player. All travel expenses incurred by the player in connection with his examination by a neutral physician of his choice will be borne by the player. The parties will share equally in the expenses of any arbitration engaged in pursuant to this Article; provided, however, the respective parties will bear the expenses of attendance of their own witnesses. Notwithstanding the above, if the hearing is held in the Club city and if the arbitrator finds liability on the part of the Club, the arbitrator shall award the player reasonable expenses incurred in traveling to and from his residence to the Club city and one night's lodging.

*Section 11.* **Pension Credit:** Any player who receives payment for three or more regular season games during any year as a result of filing an injury grievance or settlement of a potential injury grievance will be credited with one year of Credited Service for the year in which injured under the Bert Bell/Pete Rozelle NFL Player Retirement Plan as determined by the Retirement Board.

*Section 12.* **Payment:** If an award is made by the arbitrator, payment will be made within thirty (30) days of the receipt of the award to the player or jointly to the player and the NFLPA, provided the player has given written authorization for such joint payment. The time limit for payment may be extended by mutual consent of the parties or by a finding of good cause for the extension by the arbitrator. Where payment is unduly delayed beyond thirty (30) days, interest will be assessed against the Club from the date of the decision. Interest shall be calculated at double the one-year Treasury Note rate published in The Wall Street Journal as of February 1 (or next date published) of each year, and such rate shall apply to the interest awarded during each such subsequent twelve (12) month period in lieu of continuation of pre-award interest. The arbitrator shall retain jurisdiction of the case for the purpose of awarding post-hearing interest pursuant to this Section.

*Section 13.* **Presumption of Fitness:** If the player passes the physical examination of the Club prior to the pre-season training camp for the year in question, having made full and complete disclosure of his known physical and mental condition when questioned by the Club physician during the physical examination, it will be presumed that such player was physically fit to play football on the date of such examination.

32

***Section 14.* Playoff Money**: If the arbitrator finds that an injured player remained physically unable to perform the services required of him by his contract during the NFL postseason playoffs and if the Club in question participated in the playoffs that season, the player will be entitled to and the arbitrator shall award, such playoff money as though he had been on the Injured Reserve list at the time of the playoff games in question, should he otherwise qualify for such pay pursuant to Article XLII (Postseason Pay).

***Section 15.* Information Exchange:** The NFLPA and the Management Council must confer on a regular basis concerning the status of pending injury grievances and the attribution of any injury grievance exposure to Team Salary under Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary). Any communications pursuant to this Section are inadmissible in any grievance hearing.

***Section 16.* Discovery:** No later than ten (10) days prior to the hearing, each party will submit to the other copies of all documents, reports and records relevant to the injury grievance hearing. Failure to submit such documents, reports and records no later than ten (10) days prior to the hearing will preclude the non-complying party from submitting such documents, reports and records into evidence at the hearing, but the other party will have the opportunity to examine such documents, reports and records at the hearing and to introduce those it so desires into evidence, except that relevant documents submitted to the opposing party less than ten (10) days before the hearing shall be admissible provided the offering party and the custodian(s) of the documents made good faith effort to obtain (or discover the existence of) such documents or that the documents' relevance was not discovered until the hearing.

33

# ARTICLE XI
# COMMISSIONER DISCIPLINE

*Section 1.* **League Discipline:** Notwithstanding anything stated in Article IX (Non-Injury Grievance):

(a)      All disputes involving a fine or suspension imposed upon a player for conduct on the playing field other than as described in Subsection (b) below, or involving action taken against a player by the Commissioner for conduct detrimental to the integrity of, or public confidence in, the game of professional football, will be processed exclusively as follows: the Commissioner will promptly send written notice of his action to the player, with a copy to the NFLPA. Within twenty (20) days following such written notification, the player affected thereby, or the NFLPA with the player's approval, may appeal in writing to the Commissioner.

(b)      Fines or suspensions imposed upon players for unnecessary roughness or unsportsmanlike conduct on the playing field with respect to an opposing player or players shall be determined initially by a person appointed by the Commissioner after consultation concerning the person being appointed with the Executive Director of the NFLPA, as promptly as possible after the event(s) in question. Such person will send written notice of his action to the player, with a copy to the NFLPA. Within ten (10) days following such notification, the player, or the NFLPA with his approval, may appeal in writing to the Commissioner.

(c)      On receipt of a notice of appeal under subsection (a) or (b) above, the Commissioner will designate a time and place for a hearing to be commenced within ten (10) days thereafter, at which he or his designee (other than the person appointed in (b) above) will preside. The Commissioner will consult with the Executive Director of the NFLPA concerning the person to serve each season as the Commissioner's designee.

The hearing may be by telephone conference call, if the player so requests. As soon as practicable following the conclusion of such hearing, the Commissioner will render a written decision which will constitute full, final and complete disposition of the dispute and will be binding upon the player(s) and Club(s) involved and the parties to this Agreement with respect to that dispute. Any discipline imposed pursuant to subparagraph (b) above may only be affirmed, reduced, or vacated by the Commissioner in such decision, and may not be increased.

*Section 2.* **Time Limits:** Each of the time limits set forth in this Article may be extended by mutual agreement of the Commissioner and the player(s) and the Club(s) involved.

*Section 3.* **Representation:** In any hearing provided for in this Article, a player may be accompanied by counsel of his choice. A representative of

34

the NFLPA may also participate in such hearing and represent the player. In any such hearing, a Club representative may be accompanied by counsel of his choice. A representative of the Management Council may also participate in such hearing and represent the Club. The NFLPA and Management Council have the right to attend all hearings provided for in this Article. At the hearing, the player, the NFLPA and the Management Council will have the right to present, by testimony or otherwise, any evidence relevant to the hearing. All hearings shall be transcribed.

**Section 4. Costs:** Unless the Commissioner determines otherwise, each party will bear the cost of its own witnesses, counsel and the like.

**Section 5. One Penalty:** The Commissioner and a Club will not discipline a player for the same act or conduct. The Commissioner's disciplinary action will preclude or supersede disciplinary action by any Club for the same act or conduct.

**Section 6. Fine Money:** Any fine money collected pursuant to this Article will be contributed to the Brian Piccolo Cancer Fund, the Vincent T. Lombardi Cancer Research Center, ALS Neuromuscular Research Foundation, and the NFLPA Players Assistance Trust ("P.A.T.") or will be used for such other purpose as the Parties may agree. In the absence of any such agreement, any such fine money shall be allocated equally among the four (4) organizations mentioned in the preceding sentence.

35

# ARTICLE XII
# INJURY PROTECTION

*Section 1.* **Qualification**: A player qualifying under the following criteria will receive an injury protection benefit in accordance with Section 2 below:

(a)   The player must have been physically unable, because of a severe football injury in an NFL game or practice, to participate in all or part of his Club's last game of the season of injury, as certified by the Club physician following a physical examination after the last game; or the player must have undergone Club-authorized surgery in the off-season following the season of injury; and

(b)   The player must have undergone whatever reasonable and customary rehabilitation treatment his Club required of him during the off-season following the season of injury; and

(c)   The player must have failed the pre-season physical examination given by the Club physician for the season following the season of injury because of such injury and as a result his Club must have terminated his contract for the season following the season of injury. This pre-season physical may be given by the Club physician prior to the beginning of pre-season camp, so long as such fact is clearly communicated to the player at the time of the physical exam. The past understanding of the parties concerning a Club releasing a player who otherwise qualifies under (a) and (b) above prior to the pre-season physical examination will apply during the term of this Agreement (see Appendix B).

*Section 2.* **Benefit**: A player qualifying under Section 1 above will receive an amount equal to 50% of his contract salary for the season following the season of injury, up to a maximum payment of $275,000, if he is released pursuant to Section 1(c) above in the 2006-08 League Years unless he has individually negotiated more injury protection or a larger guaranteed salary into his contract. This amount shall be increased to $300,000 in the 2009 League Year and, if they are Uncapped Years, in the 2010-11 League Years; to $325,000 in the 2010-11 League Years, if they are Capped Years; and to $350,000 in the 2012 League Year. A player will receive no amount of any contract covering any season subsequent to the season following the season of injury, except if he has individually negotiated injury protection into that contract. The benefit will be paid to the player in equal weekly installments commencing no later than the date of the first regular season game, which benefit payments will cease if the player signs a contract for that season with another Club. A player will not be entitled to such benefit more than once during his playing career in the NFL, and such benefit shall be reduced by any salary guaranteed to the player for the season following the season of injury.

36

Article XII, Injury Protection

**Section 3. Disputes:** Any dispute under this Article will be processed under Article IX (Non-Injury Grievance). In any grievance in which the NFLPA or a player is claiming an injury protection benefit, the NFLPA or the player may contend that the player should not have passed the pre-season physical examination given by a Club following the season of a player's injury. In any such grievance, the NFLPA or the player may introduce evidence from a physician selected by and paid for by the player regarding the player's physical condition at the time of the Club's pre-season physical exam, provided that such physician conducted his examination of the player within fourteen (14) days of the player's contract termination, but no later than the date of the first pre-season cutdown. Any such evidence will be considered with the evidence from the Club physician, and the arbitrator shall give no special deference to the evidence presented by either physician. If the NFLPA prevails in such a grievance, then the requirements of Section 1(c) above shall be deemed to have been satisfied.

37

# ARTICLE XIII
# COMMITTEES

***Section 1.*** **Joint Committee:**

(a)      A Joint Committee on Player Safety and Welfare (hereinafter the "Joint Committee") will be established for the purpose of discussing the player safety and welfare aspects of playing equipment, playing surfaces, stadium facilities, playing rules, player-coach relationships, and any other relevant subjects. The Joint Committee will consist of six members: three Club representatives (plus advisors) and three NFLPA representatives (plus advisors). The Joint Committee will hold two regular meetings each year on dates and at sites selected by the Committee. Special meetings may be held at any time and place mutually agreeable to the Committee. The Joint Committee will not have the power to commit or bind either the NFLPA or the Management Council on any issue. The Joint Committee may discuss and examine any subject related to player safety and welfare it desires, and any member of the Committee may present for discussion any such subject. Any Committee recommendation will be made only to the NFLPA, the Management Council, the Commissioner, or any appropriate committee of the NFL; such recommendation will be given serious and thorough consideration.

(b)      The Joint Committee may employ consultants to assist it in the performance of its functions; the compensation and expenses of any such consultants will be paid in such manner as the Committee decides. The respective members of the Joint Committee will be selected and the length of their terms fixed under such rules as the NFLPA and the Management Council separately establish; the original appointees on the Committee will be selected within thirty (30) days following the execution of this Agreement. The NFLPA and the Management Council agree that a task for the Joint Committee to undertake promptly upon the execution of this Agreement is a review of all current materials on the player safety aspects of player equipment, playing surfaces, including artificial turf and other safety matters.

(c)      Immediately following the NFL annual meeting, the NFLPA will be given notice of all proposed playing rule changes, either tentatively adopted by the Clubs or put over for further consideration at a later league meeting. If the NFLPA believes that the adoption of a playing rule change would adversely affect player safety, then within seven (7) days of receiving such notice the NFLPA may call a meeting of the Joint Committee to be held within one (1) week to discuss such proposed rule change. Within five (5) days after such meeting, if the NFLPA continues to believe that the adoption of a playing rule change would adversely affect player safety, the NFLPA may request an advisory decision by one of the arbitrators designated in Article IX (Non-Injury Grievance). A hearing before such arbitrator must be held within seven (7) days of the Joint Committee meeting and

38

the arbitrator must render his decision within one (1) week of the hearing. No such playing rule change will be made by the Clubs until after the arbitrator's advisory decision unless the arbitrator has not rendered his decision within one (1) week of the hearing. The arbitrator's decision will be advisory only, not final and binding. Except as so limited, nothing in this section will impair or limit in any way the right of the Clubs to make any playing rule change whatsoever.

(d)     The NFLPA shall have the right to commence an investigation before the Joint Committee if the NFLPA believes that the medical care of a team is not adequately taking care of player safety. Within 60 days of the initiation of an investigation, two or more neutral physicians will be selected to investigate and report to the Joint Committee on the situation. The neutral physicians shall issue a written report within 60 days of their selection, and their recommendations as to what steps shall be taken to address and correct any issues shall be acted upon by the Joint Committee.

**Section 2. Competition Committee:** The NFLPA will have the right to appoint two persons to attend those portions of the annual meeting of the NFL Competition Committee dealing with playing rules to represent the players' viewpoint on rules. One of the appointees shall have a vote on all matters considered at the meeting which relate to playing rules. The NFLPA appointees will receive in advance copies of all agenda and other written materials relating to playing rules provided to other Committee members.

**Section 3. Player/Club Operations Committee:**

(a)     A Player/Club Operations Committee (hereinafter the "Operations Committee") shall be established for the purpose of examining issues arising with respect to the implementation of this Agreement. The Operations Committee may discuss and examine, and jointly decide, any such issues; provided, however, that any consideration by the Operations Committee shall not delay any grievance or other procedure under this Agreement, unless the Committee jointly decides otherwise.

(b)     The Operations Committee will consist of up to six (6) members: the Executive Vice President for Labor Relations of the NFL and a maximum of two (2) Club representatives (plus advisors), and the Executive Director of the NFLPA and a maximum of two (2) NFLPA representatives (plus advisors). The respective additional members of the Operations Committee will be selected and the length of their terms fixed under such rules as the NFLPA and the Management Council separately establish; the original additional members on the Operations Committee will be selected within thirty (30) days following the execution of this Agreement. An equal number on each side shall sit on all matters, and the Committee shall jointly decide whether the Committee shall sit with two (2), four (4) or six (6) members on any given matter. The Operations Committee will hold meetings on dates and at sites mutually agreeable to the Committee members.

39

# ARTICLE XIV
# NFL PLAYER CONTRACT

**Section 1. Form:** The NFL Player Contract form attached hereto as Appendix C will be used for all player signings. This form cannot be amended without the approval of the Management Council and the NFLPA.

**Section 2. Term:** The NFL Player Contract shall expire on the last day of the last League Year subject to such Contract.

**Section 3. Changes:**

(a)    Notwithstanding Section 1 above, changes may be agreed to between a Club and a player in a player's contract or contracts consistent with the provisions of this Agreement and the Settlement Agreement.

(b)    The NFL Player Contract shall provide that, other than any rights the player may have as a member of the class in White v. NFL, No. 4-92-906 (D. Minn.) to object to the Settlement Agreement during its review by the District Court, the player waives and releases any claims: (i) arising out of, related to, or asserted in that action; and (ii) for conduct engaged in pursuant to the Settlement Agreement during the express term of the Settlement Agreement.

**Section 4. Conformity:** All Player Contracts signed prior to the execution of this Agreement and in effect during the term of this Agreement shall be deemed amended in such a manner to require the parties to comply with the mandatory terms of this Agreement and the Settlement Agreement.

**Section 5. General, Notices, Prohibitions, etc.:**

(a)(i) Any agreement between any player and any Club concerning terms and conditions of employment shall be set forth in writing in a Player Contract as soon as practicable. Each Club shall provide to the NFLMC a copy of each such Player Contract within two days of the execution of such contract by the player and the Club. The NFLMC shall provide to the NFLPA a copy of each executed Player Contract it receives from a Club within two business days of its receipt of such Player Contract. It is anticipated that each Club will send a copy of each such Player Contract to the NFLMC by overnight mail the day it is so executed, and the NFLMC will send a copy of such copy to the NFLPA by overnight mail the day it is so received. The NFLMC shall provide to the NFLPA any salary information received from a Club which is relevant to whether such Player Contract complies with Article XVII (Entering Player Pool) and/or Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary), within two business days following the NFL's receipt of such information. Promptly upon but no later than two business days after the signing of any Veteran with less than three Accrued Seasons to a Player Contract, the signing

40

Club shall notify the NFLMC, which shall notify the NFLPA of such signing.

(ii) In the event that an Unrestricted Free Agent signs a Player Contract with a Club other than his prior Club between July 5 and July 15, the Player or his Agent shall promptly notify the Players Association, which will promptly notify the NFLMC in writing, and the New Club shall promptly notify the NFLMC, in writing, of such signing. If neither the NFLMC nor the Players Association has received any such written notice prior to midnight on July 15, such Player Contract shall be deemed not to have been signed within the signing period prescribed by Article XIX, Section 1(b)(i).

(b)     Any agreement between any player or Player Affiliate and any Club or Club Affiliate providing for the player to be compensated by the Club or Club Affiliate for non-football-related services shall be set forth in writing and disclosed and provided to the NFLMC within five business days of the execution or making of the agreement. The NFLMC shall provide such information to the NFLPA within two business days of the receipt of such information.

(c)     No Club shall pay or be obligated to pay any player or Player Affiliate (not including retired players) other than pursuant to the terms of a signed NFL Player Contract or a contract for non-football related services as described in Section 5(b) above. Nothing contained in the immediately preceding sentence shall interfere with a Club's obligation to pay a player deferred compensation earned under a prior Player Contract.

(d)     During the period any Salary Cap is in effect, in addition to any rights a Club may presently have under the NFL Player Contract, any Player Contract may be terminated if, in the Club's opinion, the player being terminated is anticipated to make less of a contribution to the Club's ability to compete on the playing field than another player or players whom the Club intends to sign or attempt to sign, or another player or players who is or are already on the roster of such Club, and for whom the Club needs Room. This Subsection shall not affect any Club or Club Affiliate's obligation to pay a player any guaranteed consideration.

(e)     No Player Contract may contain any individually negotiated provision transferring any player intellectual property rights to any Club or Club Affiliate or any Club sponsor.

(f)     No Club or player may agree upon any Player Contract provision concerning the termination of the contract that is inconsistent with the terms of this Agreement (including but not limited to the NFL Player Contract, Appendix C hereto), or the provisions of the NFL Constitution and Bylaws which are appended to the Side Letter dated July 24, 2006 from Harold Henderson to Eugene Upshaw, as they were operative and administered at the beginning date of the 2006 League Year (except any provisions relating to the 1982 CBA, which have been superseded by this Agreement). The parties disagree and reserve their rights with respect to whether a Player Contract may contain a commitment by the Club not to send a Qualify-

41

ing Offer to an eligible player or not to designate a player as a Franchise or Transition player.

*Section 6.* **Commissioner Disapproval:**

(a)    If the Commissioner disapproves a Player Contract for any reason, he must inform the NFLPA in writing of the reasons therefore by noon on the date following such disapproval.

(b)    In the event the Commissioner disapproves any Player Contract as being in violation of the Salary Cap or Entering Player Pool, or any other provision of the Settlement Agreement or corresponding provision of this Agreement, the filing of an appeal of such disapproval pursuant to Article XV, Paragraph 5 or Article XXII, Paragraph 1 of the Settlement Agreement, or Article XXV, Section 5 or Article XXVI, Section 1 of this Agreement, shall automatically stay the Commissioner's disapproval, and the player shall continue to be free to practice and play for the Club, until the Special Master (or the District Court acting in lieu of the Special Master) issues its ruling. Provided, however, that in the event such Special Master appeal is filed within one week of or after the first scheduled regular season game of the Club: (i) the appeal shall be conducted in an expedited manner and shall be concluded within five (5) days of the filing date of such appeal; and (ii) the Special Master shall issue his ruling by the end of such five (5) day period. Provided, further, that, in the event the appeal is filed after the Club's first pre-season game, but before the date one week before the Club's first scheduled regular season game: (i) the appeal shall be conducted in an expedited manner and shall be concluded within ten (10) days of the filing date of such appeal; and (ii) the Special Master shall issue his ruling by the end of such ten (10) day period. If there is no ruling by the end of the periods prescribed in the preceding two sentences, or, for earlier filed appeals, by the day following the Club's third pre-season game, the automatic stay shall be dissolved. If the Commissioner disapproves a Player Contract for any of the reasons stated above on a second occasion for the same player during a given League Year, and determines that such player should not be able to play, there shall be no stay of such disapproval pursuant to this agreement, unless it is determined that the Commissioner's second disapproval is arbitrary or capricious. This agreement shall not prejudice or affect in any way, or constitute a waiver with respect to, any rights of class members to seek a stay or injunctive relief before the District Court, pursuant to the Federal Rules of Civil Procedure; nor shall it prejudice or affect in any way the rights of the NFL to oppose, or the arguments of the NFL in opposition, to such a stay.

*Section 7.* **NFLPA Group Licensing Program:** The NFL Player Contract shall include, solely for the administrative convenience and benefit of the player and the NFLPA, the provision set forth in Paragraph 4(b) of the NFL Player Contract (Appendix C hereto), regarding the NFLPA Group Licens-

Article XIV, NFL Player Contract

ing Program. Neither the League nor any Club is a party to, or a beneficiary of, the terms of that provision. No Club may enter into any agreement with a Player or a Player Affiliate that is inconsistent with any rights granted to the NFLPA pursuant to Paragraph 4(b) of the NFL Player Contract; provided that this sentence is not intended and shall not be construed to override or restrict the rights granted to the Club and the League pursuant to Paragraph 4(a) of the NFL Player Contract.

### Section 8. Good Faith Negotiation:

(a)     In addition to complying with specific provisions in this Agreement, any Club or player engaged in negotiations for a Player Contract (including any Club extending, and any player receiving, a Required Tender) is under an obligation to negotiate in good faith.

(b)     A Club extending a Required Tender must, for so long as that Tender is extended, have a good faith intention to employ the player receiving the Tender at the Tender compensation level during the upcoming season. It shall be deemed to be a violation of this provision if, while the tender is outstanding, a Club insists that such a player agree to a Player Contract at a compensation level during the upcoming season below that of the Required Tender amount. The foregoing shall not affect any rights that a Club may have under the Player Contract, under this Agreement, or under the Settlement Agreement, including but not limited to the right to terminate the contract, renegotiate the contract, or to trade the player if such termination, renegotiation, or trade is otherwise permitted by the Player Contract, this Agreement, or the Settlement Agreement.

### Section 9. Limitations on Salary Forfeitures:

(a)     No forfeitures of signing bonuses shall be permitted, except that players and Clubs may agree: (i) to proportionate forfeitures of a signing bonus if a player voluntarily retires or willfully withholds his services from one or more regular season games; and/or (ii) that if a player willfully takes action that has the effect of substantially undermining his ability to fully participate and contribute in either pre-season training camp or the regular season (including by willfully withholding his services in either pre-season training camp or during the regular season or willfully missing one or more games), the player may forfeit the greater of: (a) 25% of the prorated portion of his signing bonus for the applicable League Year for the first time such conduct occurs after the beginning of training camp until the end of the season for his Club, and the remaining 75% prorated portion of his signing bonus for the applicable year for the second time such conduct occurs during that period that year; or (b) the proportionate amount of his signing bonus allocation for each week missed (1/17th for each regular season week or game missed).

(b)     If a player with a signing bonus forfeiture clause voluntarily retires and misses the remainder of the season, and the player then reports

43

back to the Club in the subsequent season, then the Club must either (i) take the player back under his existing contract with no forfeiture of the remaining proportionate signing bonus allocation, or (ii) release the player and seek repayment of any remaining proportion of the signing bonus allocated to future League Years.

(c)      No forfeitures permitted (current and future contracts) for signing bonus allocations for years already performed, or for other salary escalators or performance bonuses already earned.

(d)      A player's right to receive and/or retain a signing bonus may not be conditioned on the player's participation in voluntary off-season programs or voluntary minicamps, or for adverse public statements, provided that the Club may have non-proratable participation bonuses for its off-season workout program.

(e)      Player Contracts may not contain individually negotiated provisions for forfeiture relating to violations of the Policy on Anabolic Steroids and Related Substances or the NFL Policy and Program for Substances of Abuse (which policies will address this issue), or for failing any drug test.

(f)      Except as provided above, existing contract forfeiture provisions entered into before the end of the 2005 regular season will be in full force and effect for the duration of the current contract, and any extensions resulting solely from effectuation of existing contract provision (e.g., option years). If a Player Contract with a forfeiture provision entered into before the end of the 2005 regular season is otherwise extended or renegotiated, the amount of Salary agreed to in the contract prior to its extension or renegotiation shall be subject to forfeiture to the same extent as provided prior to such extension or renegotiation.

(g)      For purposes of this Section 9, the terms "proportionate forfeitures" and "proportionate amount" mean 1/17th of that year's signing bonus allocation for each regular season week or game missed.

44

## ARTICLE XV
## OPTION CLAUSE

*Section 1.* **Prohibition**: Any option clause must be negotiated as a separate addendum to the NFL Player Contract form. Any negotiated option clause must state the dollar amount(s) of Salary to be paid to the player during the option year.

# ARTICLE XVI
# COLLEGE DRAFT

***Section 1.* Time of Draft:** There shall be an Annual Selection Meeting (the "College Draft" or "Draft") each League Year during the term of this Agreement and in the League Year immediately following the expiration or termination of this Agreement, with respect to which the following rules shall apply:

***Section 2.* Number of Choices and Eligibility:**

(a)        The Draft shall consist of seven (7) rounds, with each round consisting of the same number of selection choices as there will be Clubs in the NFL the following League Year, plus a maximum number of additional Compensatory Draft Selections equal to the number of Clubs then in the League, with such Compensatory Draft Selections reserved for Clubs losing certain Unrestricted Free Agents. Each Draft shall be held between February 14 and May 2, on a date which shall be determined by the Commissioner.

(b)        No player shall be permitted to apply for special eligibility for selection in the Draft, or otherwise be eligible for the Draft, until three NFL regular seasons have begun and ended following either his graduation from high school or graduation of the class with which he entered high school, whichever is earlier. For example, if a player graduated from high school in December 2006, he would not be permitted to apply for special eligibility, and would not otherwise be eligible for selection, until the 2010 Draft.

(c)        If a player who was not eligible for the Draft in any League Year becomes eligible after the date of the Draft, he will be eligible to be selected in a supplemental Draft, if the League elects to conduct such a Draft, on or before the seventh calendar day prior to the opening of the first training camp that League Year. No player may elect to bypass a Draft for which he is eligible to apply for selection in a supplemental Draft. Any Club that selects a player in a supplemental Draft must forfeit a choice in the same round in the next succeeding principal Draft.

(d)        No player shall be eligible to be employed by an NFL Club until he has been eligible for selection in an NFL Draft.

***Section 3.* Required Tender:** A Club that drafts a player shall be deemed to have automatically tendered the player a one year NFL Player Contract for the Minimum Active/Inactive List Salary then applicable to the player pursuant to the terms of this Agreement. The NFL or the Club shall provide the player with notice of such Required Tender before or immediately following the Draft.

***Section 4.* Signing of Drafted Rookies:**

(a)        A drafted player may accept the Required Tender at any time up

46

to and including the Tuesday following the tenth week of the regular season immediately following the Draft, at 4:00 p.m. New York time. In the event the exclusive negotiating rights to the drafted player are assigned to another Club through the NFL waiver system, the acquiring Club must immediately extend the Required Tender following assignment. If released through waivers, the player shall be treated as an Undrafted Rookie Free Agent, with the right to sign an NFL Player Contract with any Club. If the Club that drafted the player signs the player after he is waived and becomes a Rookie Free Agent, the player's entire salary shall be counted against the Entering Player Pool, in the manner described in Article XVII (Entering Player Pool).

(b)    If a Drafted Rookie has not signed a Player Contract during the period from the date of such Draft to the thirtieth day prior to the first Sunday of the regular season: (i) the Club that drafted the player may not thereafter trade to another Club either its exclusive negotiating rights to such player or any Player Contract that it signs with such player for the player's initial League Year; and (ii) the Club that drafted the player is the only Club with which the player may sign a Player Contract until the day of the Draft in the subsequent League Year, at which time such player is eligible to be drafted in the subsequent League Year's Draft by any Club except the Club that drafted him in the initial Draft. (After the Tuesday following the tenth week of the regular season, the player and the Club may only sign a Player Contract for future League Year(s)).

(c)    If a Drafted Rookie has not signed a Player Contract by the Tuesday following the tenth week of the regular season, at 4:00 p.m. New York time, the player shall be prohibited from playing football in the NFL for the remainder of that League Year, absent a showing to the Impartial Arbitrator of extreme Club or extreme personal hardship. The determination of the Impartial Arbitrator shall be made within five days of the application, and shall be based upon all information relating to such hardship submitted by such date. The determination of the Impartial Arbitrator shall be final and binding upon all parties.

**Section 5. Other Professional Teams:**

(a)    Notwithstanding Section 4(b) above, if a player is drafted by a Club and, during the period between the Draft and the next annual Draft, signs a contract with, plays for or is employed by a professional football team not in the NFL during all or any part of the 12 month period following the initial Draft, then the drafting Club (or any assignee Club) shall retain the exclusive NFL rights to negotiate for and sign a contract with the player until the day of the Draft three (3) League Years after the initial Draft, and shall thereafter have a Right of First Refusal as described herein, and the player may receive offers from any Club at any time thereafter. The player shall notify the NFLPA and the NFL of his desire to sign a contract with an NFL Club, and of the date on which the player will be free of his other

47

contractual obligations of employment, if any. Within thirty (30) days of receipt of such notice by the NFL or the date of the availability of such player, whichever is later, the NFL Club that drafted the player must tender a one year written Player Contract to the player in order to retain its rights to that player, as detailed below.

(b)      For a player to whom the drafting Club retains the exclusive NFL rights to negotiate pursuant to Section 4(a) above, the Club must tender a one year Player Contract with salary of at least the Minimum Active/Inactive List Salary for players with less than one credited season, as defined in Article XXXVIII (Salaries), within the thirty (30) day period specified in Subsection (a) above. The amount of such tender and/or any Player Contract entered into with the player shall be subject to the Entering Player Pool, as set forth in Article XVII (Entering Player Pool). If the player is released through waivers, the player immediately becomes a Free Agent, with the right to sign an NFL Player Contract with any Club, and any Club is then free to negotiate for and sign a Player Contract with such player, without any Draft Choice Compensation between Clubs or First Refusal Rights of any kind, or any signing period.

(c)      For players with respect to whom the drafting Club retains a Right of First Refusal pursuant to this Section 5, during each League Year the player shall be treated as if he were a Restricted Free Agent not subject to Draft Choice Compensation, as described in Article XIX (Veteran Free Agency), Section 2, except as otherwise set forth in this Section 5. For such players subject to a Right of First Refusal, the Club must tender a one year Player Contract with at least the Minimum Active/Inactive List Salary for players with two (2) or more Credited Seasons, as defined in Article XXXVIII (Salaries), within the thirty (30) day period specified in Subsection (a) above. The amount of such tender and/or any Player Contract entered into with the player shall not be subject to the Entering Player Pool. If the Club does not make or withdraws the Required Tender, the player immediately becomes a Rookie Free Agent, with the right to negotiate and sign a Player Contract with any Club, and any Club is then free to negotiate for and sign a Player Contract with such player, without any Draft Choice Compensation between Clubs or First Refusal Rights of any kind, or any signing period.

**Section 6. Return to College:** If any college football player who becomes eligible for the Draft prior to exhausting his college football eligibility through participation is drafted by an NFL Club, and returns to college, the drafting Club's exclusive right to negotiate and sign a Player Contract with such player shall continue through the date of the Draft that follows the last season in which the player was eligible to participate in college football, and thereafter the player shall be treated and the Club shall have such exclusive rights as if he were drafted in such Draft by such Club (or assignee Club).

48

**Section 7. Assignment of Draft Rights:** In the event that the exclusive right to negotiate for a Drafted Rookie under Sections 4, 5 or 6 above is assigned from one Club to another Club, the Club to which such right has been assigned shall have the same, but no greater, right to such player, including the Right of First Refusal described in Section 5, as would the Club assigning such right, and such player shall have the same, but no greater, obligation to the NFL Club to which such right has been assigned as he had to the Club assigning such right.

**Section 8. Subsequent Draft:** A Club that, in a subsequent Draft, drafts a player who (a) was selected in an initial Draft, and (b) did not sign a contract with the NFL Club that drafted him or with any assignee Club during the signing period set forth in Sections 4 through 6 above, shall, during the period from the date of the subsequent Draft to the date of the Draft held the subsequent League Year, be the only NFL Club that may negotiate with or sign a Player Contract with such player. If such player has not signed a Player Contract within the period beginning on the date of the subsequent Draft and ending on the thirtieth day prior to the beginning of the regular season, the Club loses all rights to trade its exclusive negotiating rights to such player or any Player Contract that it signs with such player for the player's initial League Year. After the Tuesday following the tenth week of the regular season, the player and the Club may only sign a Player Contract for future League Year(s), except as provided in Section 4(c) above. If the player has not signed a Player Contract by the day of the next annual College Draft following the subsequent Draft, the player immediately becomes a Rookie Free Agent, with the right to negotiate and sign a Player Contract with any Club, and any Club is then free to negotiate for and sign a Player Contract with such player, without any Draft Choice Compensation between Clubs or First Refusal Rights of any kind, or any signing period.

**Section 9. No Subsequent Draft:** If a player is drafted by a Club in an initial Draft and (a) does not sign a contract with a Club during the signing period set forth in Sections 4 through 6 above, and (b) is not drafted by any Club in the subsequent Draft, the player immediately becomes an Undrafted Rookie, with the right to negotiate and sign a Player Contract with any Club, and any Club is then free to negotiate for and sign a Player Contract with such player, without any Draft Choice Compensation between Clubs or First Refusal Rights of any kind, or any signing period.

**Section 10. Compensatory Draft Selections:** The rules and procedures regarding Compensatory Draft Selections set forth in Section 2 above shall be as agreed upon by the NFL and the NFLPA.

**Section 11. Undrafted Rookies:** Any person who has not been selected by a Club in a College Draft shall be free, after the completion of a College

49

Draft for which he is eligible, to negotiate and sign a Player Contract with any Club, and any Club shall be completely free to negotiate and sign a Player Contract with any such person after such date, without any penalty or restriction, including, but not limited to, Draft Choice Compensation between Clubs or First Refusal Rights of any kind.

***Section 12. Notice of Signing:*** Promptly following but no later than two (2) business days after receipt of notice of the signing of any Drafted or Undrafted Rookie, the NFL shall notify the NFLPA of such signing.

50

## ARTICLE XVII
## ENTERING PLAYER POOL

***Section 1.* Definition:** For purposes of this Article XVII of this Agreement, the following terms shall have the meanings set forth below:

(a)    "Entering Player Pool" means the League-wide limit on the total amount of Salary to which all of the NFL Clubs may contract for in signing Drafted Rookies (and certain amounts contracted to be paid to Undrafted Rookies as described below) during each League Year of this Agreement, as set forth below.

(b)    Salary shall be defined and calculated in the same manner as set forth in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary). In the event a Rookie who is subject to the Entering Player Pool signs a Player Contract after the commencement of the regular season, the Club must have Room under its Rookie Allocation for the entire Paragraph 5 amount of the contract.

***Section 2.* Covered League Years:** The Entering Player Pool will be in effect in all League Years, except as set forth below. The NFL may remove the Entering Player Pool at its option in any Uncapped Year, by notice to the NFLPA at least 60 days prior to the scheduled date of the Draft that League Year. Further, in any Capped Year, the NFL may remove the Pool, by notice to the NFLPA at least 60 days prior to the scheduled date of the Draft that League Year, but to the extent that any Club spends more than its Rookie Allocation in that League Year, the Club will pay an equivalent number of dollars to its Veteran players pursuant to reasonable allocation instructions by the NFLPA.

***Section 3.* Calculation:**

(a)    The Entering Player Pool shall consist on a League-wide basis of the amount of the Entering Player Pool for the immediately preceding League Year (excluding any formula allotments attributable to any Compensatory Draft Selections), increased by the same percentage as the increase in Projected TR for that League Year over the prior year's TR (as defined in Article XXIV (Guaranteed League-wide Salary, Salary Cap & Minimum Team Salary)), up to a maximum of five percent (5%) per season, but shall not in any event decrease in actual amount from League Year to League Year. Notwithstanding the foregoing, to the extent there are Compensatory Draft Selections as a result of Article XVI (College Draft), Section 2 and/or Article XX (Franchise and Transition Players), Section 15, the Entering Player Pool shall be increased in accordance with Subsection (c) below and as otherwise agreed upon by the NFL and the NFLPA.

(b)    For each League Year of this Agreement, each Club shall have a Rookie Allocation, which shall be its proportional share of the Entering Player Pool, calculated based on the number, round, and position of the

51

Club's selection choices in the Draft. The Rookie Allocation formula shall be agreed upon by the NFL and the NFLPA and shall remain in effect for the duration of the Agreement, unless the NFL and the NFLPA otherwise agree.

(c)     If, pursuant to Article XVI (College Draft), Section 2 and/or Article XX (Franchise and Transition Players), Section 15, a Club has one or more Compensatory Draft Selections, an amount shall be added to that Club's Rookie Allocation, and to the Entering Player Pool (notwithstanding Subsection (b) above), based upon the amount allotted to selection choices of that round and position in calculating the Rookie Allocation (the "Formula Allotment"). In the event that a Club signs a Player Contract with a Drafted Rookie who was drafted in a prior League Year, an additional amount shall be added to that Club's Rookie Allocation, and to the Entering Player Pool (notwithstanding Subsection (b) above), equal to the lower of the Club's original Formula Allotment for such draft choice or the amount of unused Room under the Club's Rookie Allocation during the League Year in which the player was originally drafted.

(d)     Notwithstanding the above, nothing shall prevent the Club from signing a player for an amount in excess of the player's Formula Allotment, if the Club has Room available under its Rookie Allocation.

(e)     In the event that the NFL holds a supplemental draft in addition to its annual Draft in advance of the next League Year's Draft, adjustments shall be made to the Entering Player Pool and Rookie Allocation in a manner to be agreed upon by the NFL and the NFLPA.

(f)     In any League Year in which one or more expansion Teams enter the League, the amount of the Entering Player Pool shall be increased to account for the draft selections of any such expansion Teams.

(g)     In the event the NFL holds a supplemental draft in addition to its annual College Draft in advance of the following League Year's College Draft, there shall be added to each selecting Club's Rookie Allocation, and (cumulatively, if more than one selecting Club) to the Entering Player Pool for that League Year, an amount equal to the Formula Allotment for the corresponding choice(s) in that League Year's College Draft. In the subsequent League Year, after Formula Allotments have been established for each selection position in the College Draft, the amount of the Formula Allotment(s) for the selections used in the prior year's supplemental draft shall be deducted from the Club's Rookie Allocation. *See* Section 3(e) above. For example: If Team A selects a player in a supplemental draft with the first choice in the third round, Team A's Rookie Allocation for that League Year shall be increased by an amount equal to the Formula Allotment for the first choice in the third round of that year's College Draft. An amount equal to the Formula Allotment for the first choice in the third round of the prior League Year's Draft shall be eliminated from the subsequent League Year's Entering Player Pool, in that Club's Rookie Allocation, but all other Rookie Allocations remain the same.

52

*Section 4.* **Operation:**

(a)      No Club may enter into Player Contracts with Drafted Rookies that, standing alone or in the aggregate, provide for Salaries in the first League Year of such Player contracts that would exceed the Club's Rookie Allocation for that year.

(b)      For the purposes of this Article XVII, the Salary of any Undrafted Rookie shall count toward the Club's Rookie Allocation only to the extent that it exceeds the then applicable Minimum Active/Inactive List Salary for that player.

(c)      In the event that a Draft selection is assigned to another Club prior to completion of the Draft, the amount of the Formula Allotment for such selection shall be assigned to the Club receiving the selection under the assignment. A Club may not assign the exclusive negotiating rights to a Drafted Player to another Club if such New Club does not have Room under its Rookie Allocation equal to at least the original Formula Allotment for the player, unless the player consents to such assignment.

(d)(i)   If a Drafted Player is placed on waivers, the player's Formula Allotment remains with the Club that requested waivers on him, and the assignee Club must have Room or make Room under its Rookie Allocation to make the Required Tender to the player.

(ii)      If a Club requests waivers on a Drafted Rookie and that player is released via waivers, the requesting Club can sign that player to a Player Contract during that League Year only if the Club has Room under its Rookie Allocation equal to the full Salary contracted for in that League Year.

(e)      No Player Contract signed by a Rookie may provide for an annual increase in Salary of more than twenty-five percent (25%) of the contract's first League Year Salary, unless such Player Contract provides for Salary which is equal to the then applicable Minimum Salary for each League Year of the contract. For the purposes of the calculation in this section only, any amount of a signing bonus attributed to the player's Salary shall not be counted.

(f)      If a Rookie contracts with a Club for the minimum workout payments set forth in Article XXXV, for his second or subsequent season, such payments shall not be included for purposes of the 25% Rule for Rookies set forth above. If a Rookie contracts with a Club for a workout payment in excess of the minimum, such excess amount shall be included for the purposes of the 25% Rule for Rookies set forth above. In all cases, a workout payment shall count toward Team Salary and a Team's Rookie Allocation.

(g)      Any amount which a Club may pay to a player to buy out a right the player has or may have to terminate one or more contract years shall be treated as a signing bonus at the time the buyout is exercised by the Club, and prorated at that time over the remaining term of the contract, including the current League Year, if the right to terminate and/or the right to buyout is based upon one or more incentives that are not "likely to be earned."

53

Such a buyout amount shall not be included in any calculation for purposes of the 25% Rule for Rookies set forth above. (The parties acknowledge that they disagree as to the treatment of allocated signing bonus and buyout payments when a player's right to terminate one or more contract years and/or the Club's right to buyout is based upon one or more incentives that are "likely to be earned," and not upon any incentives that are not "likely to be earned." These issues are expressly left open. Except to enforce the terms of this Subsection (g), the terms of this Subsection may not be referred to or used by any of the parties in any proceeding, or otherwise, and the parties otherwise reserve all their rights with respect to the subject of this parenthetical.).

(h)     Any amount specified to be paid for the exercise of an option by a Club to extend the term of a Player Contract shall be treated as signing bonus, prorated over the remaining term of the contract commencing in the League Year in which it is exercised or the last League Year in which the option may be exercised, whichever comes first. Such an option amount shall, immediately upon execution of the contract, renegotiation or extension, be included in any calculation for purposes of the 25% Rule for Rookies set forth above, prorated over the remaining term of the contract commencing in the last League Year in which the option may be exercised. Notwithstanding the foregoing: (i) if a Club renounces its right to exercise the option, the option amount shall not be included in Team Salary as of the date of such renunciation; and (ii) if the club does not renounce, but nonetheless does not exercise the option, the full amount of the option amount previously counted against Team Salary shall be credited to the Club's Salary Cap in the next League Year.

(i)     The Player Contract of a Rookie may not be renegotiated until after his Club's final game of the second NFL season following the signing of such Player Contract.

(j)     Nothing in this Agreement is intended to or shall be construed to mean that any Rookie's Salary is predetermined by any Allocation or Formula Allotment.

(k)     The list of each Formula Allotment attributed to each draft selection shall be agreed to by the NFL and the NFLPA, and shall not be disclosed to Clubs, Players, Player Agents or the public.

(l)     For purposes of the Entering Player Pool and a Team's Rookie Allocation, amounts contracted to be paid to Drafted Rookies, and amounts in excess of the applicable Minimum Active/Inactive List Salary contracted to be paid to Undrafted Rookies pursuant to Subsection 4(b) above shall be counted against the Entering Player Pool and a Team's Rookie Allocation, whether or not the amounts are actually paid, in the manner otherwise specified in the CBA.

(m)     In League Years for which no Salary Cap is in effect, 85% of any amount contracted by a Team to be paid from the Team's Rookie Allocation to a Rookie, but not actually paid by the Team to that player, either as a

54

rookie, or as a re-signed first year player or practice squad player, which amount was not paid because that player was released, will be distributed to all rookies on such Team promptly after the end of the season on a pro rata basis based upon the number of downs played.

(n)    If a Club has a Rookie Orientation Program apart from its allowable minicamp(s) and prior to its training camp, the following categories of per player reimbursements or payments will not be counted against the Entering Player Pool: (1) One Round Trip Airline Ticket or its cash equivalent from the player's place of residence to the Club city and back, not to exceed $1,250 for the 2006-09 League Years and $1,500 for the 2010-12 League Years; (2) Room and Board or its equivalent of up to $110 per day for the 2006 League Year, $120 per day for the 2007-08 League Years, $130 per day for the 2009-10 League Years and the 2011 League Year if it is an Uncapped Year, and $145 per day for the 2011 League Year if it is a Capped Year and the 2012 League Year, up to a maximum of sixty (60) days; and (3) ground transportation to and from the player's place of residence in the Club's city to the Club's facility. Any amounts in excess of the above reimbursements or payments will count against the Entering Player Pool. Costs associated with the Rookie Orientation Programs will be evaluated by the parties each year to determine if adjustment, with respect to the Entering Player Pool, is appropriate.

*Section 5.* **Rookie Player Contract Length:** The initial Player Contract of a Rookie, including any Club option, may not exceed four (4) years in length, except that the initial Player Contract of a Rookie drafted with a selection in the first half of the first round (e.g., the first sixteen (16) of thirty-two (32) selections in the 2006 Draft), including any Club option, may not exceed six (6) years in length, and the initial Player Contract of a Rookie drafted with a selection in the second half of the first round, including any Club option, may not exceed five (5) years in length.

# ARTICLE XVIII
# VETERANS WITH LESS THAN THREE
# ACCRUED SEASONS

*Section 1.* **Accrued Seasons Calculation:**

(a)     For the purposes of calculating Accrued Seasons under this Agreement, a player shall receive one Accrued Season for each season during which he was on, or should have been on, full pay status for a total of six (6) or more regular season games, but which, irrespective of the player's pay status, shall not include games for which the player was on: (i) the Exempt Commissioner Permission List, (ii) the Reserve PUP List as a result of a nonfootball injury, or (iii) a Club's Practice or Development Squad.

(b)     For the purposes of calculating Accrued Seasons under this Agreement, for any League Year beginning with the 1993 League Year, a player shall not receive an Accrued Season for any League Year in which the player is under contract to a Club and in which he failed to report to such Club at least thirty (30) days prior to the first regular season game of that season, or in which the player thereafter failed to perform his contract services for the Club for a material period of time, unless he demonstrates to the Impartial Arbitrator extreme personal hardship causing such failure to report or perform, such as severe illness or death in the family. The determination of the Impartial Arbitrator shall be made within thirty (30) days of the application by the player, and shall be based upon all information relating to such hardship submitted by such date. The determination of the Impartial Arbitrator shall be final and binding upon all parties.

*Section 2.* **Negotiating Rights of Players with Less Than Three Accrued Seasons:** Any Veteran with less than three (3) Accrued Seasons whose contract has expired may negotiate or sign a Player Contract only with his Prior Club, if on or before March 1 his Prior Club tenders the player a one year Player Contract with a Paragraph 5 Salary of at least the Minimum Active/Inactive List Salary applicable to that player. If the Prior Club has not by that date made the Required Tender or later withdraws such tender, the player shall be completely free to negotiate and sign a Player Contract with any Club, and any Club shall be completely free to negotiate and sign a Player Contract with such player, without any penalty or restriction, including, but not limited to, Draft Choice Compensation between Clubs or First Refusal Rights of any kind, or any signing period.

56

# ARTICLE XIX
# VETERAN FREE AGENCY

*Section 1.* **Unrestricted Free Agents:**

(a)      Subject to the provisions of Article XX (Franchise and Transition Players), any player with five (5) or more Accrued Seasons, or with four (4) or more Accrued Seasons in any Capped Year, shall, at the expiration of his Player Contract, become an Unrestricted Free Agent. Such player shall be completely free to negotiate and sign a Player Contract with any Club, and any Club shall be completely free to negotiate and sign a Player Contract with such player, without penalty or restriction, including, but not limited to, Draft Choice Compensation between Clubs or First Refusal Rights of any kind, subject to the signing period set forth below.

(b)      **Signing Period.**

(i)      In the event that an Unrestricted Free Agent has not signed a Player Contract with a Club by July 22 or the first scheduled day of the first NFL training camp, whichever is later, in the League Year following the expiration of his last Player Contract, he may negotiate or sign a Player Contract from July 22 until the Tuesday following the tenth week of the regular season, at 4:00 p.m. New York time, only with his Prior Club, provided that the Prior Club by June 1 has tendered to the player a one year Player Contract of at least 110% of either (a) his Prior Year Salary (if his expiring Player Contract is not a Player Contract he entered into as a Rookie), or (b) his Paragraph 5 Salary (if his expiring Player Contract is a Player Contract he entered into as a Rookie, without renegotiation), in each case with all other terms of his contract identical to his prior year's contract. For the purposes of this Subsection, "Prior Year Salary" means the total of the Paragraph 5 Salary, roster and reporting bonuses, pro-rata portion of signing bonus, and other payments to players in compensation for the playing of professional football for the last year of the player's most recently negotiated Player Contract, except for performance bonuses other than roster and reporting bonuses. Prior Year Salary shall also include any unpaid loans made, guaranteed or collateralized by a Team or its Team Affiliate to a player or Player Affiliate.

(ii)      If an Unrestricted Free Agent described in Subsection 1(b)(i) above has not signed a Player Contract by the Tuesday following the tenth week of the regular season, at 4:00 p.m. New York time, the player shall be prohibited from playing football in the NFL for the remainder of that League Year, absent a showing to the Impartial Arbitrator of extreme Club or extreme personal hardship. The determination of the Impartial Arbitrator shall be made within five days of the application and shall be based upon all information relating to such hardship submitted by such date. The determination of the Impartial Arbitrator shall be final and binding upon all parties.

(iii)      If an Unrestricted Free Agent does not play in the NFL for the

57

Article XIX, Veteran Free Agency

remainder of a League Year pursuant to Subsection 1(b)(ii) above, commencing the first day of the following League Year, the player shall be free to negotiate and sign a Player Contract with any Club, and any Club shall be completely free to negotiate and sign a Player Contract with such player, without penalty or restriction, including, but not limited to, Draft Choice Compensation between Clubs or First Refusal Rights of any kind, or any signing period.

(c)     In the event that an Unrestricted Free Agent has not signed a Player Contract with a Club by June 1 of the League Year following the expiration of his last Player Contract, and if his Prior Club has not by that date tendered to the player a one year Player Contract in accordance with the requirements of Subsection 1(b)(i) above, or has withdrawn the tender, the player shall continue to be an Unrestricted Free Agent and shall be completely free to negotiate and sign a Player Contract with any Club, and any Club shall be completely free to negotiate and sign a Player Contract with such player, without any penalty or restriction, including, but not limited to, Draft Choice Compensation between Clubs or First Refusal Rights of any kind, or any signing period.

(d)     An Unrestricted Free Agent shall not be subject to any limitations on the period of time before which he may qualify as an Unrestricted Free Agent again, or to any limitations on the number of times he may be an Unrestricted Free Agent.

(e)     Promptly upon but no later than two (2) business days after the signing of any Unrestricted Free Agent to a Player Contract, the signing Club shall notify the NFL, which shall notify the NFLPA of such signing.

*Section 2.* **Restricted Free Agents:**

(a)     Any Veteran player with three (3) or more Accrued Seasons, but less than five (5) Accrued Seasons (or less than four (4) Accrued Seasons in any Capped Year), shall, at the expiration of his last Player Contract during such period, become a Restricted Free Agent. Any such player shall be completely free to negotiate and sign a Player Contract with any Club, and any Club shall be completely free to negotiate and sign a Player Contract with any such player, subject to the restrictions set forth in this Article.

(b)     In order to receive the following specified Rights of First Refusal and/or Draft Choice Compensation with respect to a Restricted Free Agent, the Prior Club of a Restricted Free Agent must tender the player a Qualifying Offer on or before the first date of the Restricted Free Agent Signing Period, as follows:

(i)     For Restricted Free Agents with three (3) Accrued Seasons:

(1)     Right of First Refusal: one year Player Contract with Paragraph 5 Salary of at least $721,600 for the 2006 League Year, $850,000 for the 2007 League Year, $927,000 for the 2008 League Year, $1,010,000 for the 2009 League Year, $1,101,000 for the 2010 League Year, $1,200,000 for the 2011 League Year, or $1,308,000 for the 2012 League Year, as applicable;

58

Article XIX, Veteran Free Agency

(2)     Right of First Refusal and Draft Selection at Player's Original Draft Round: one year Player Contract with a Paragraph 5 Salary of at least (a) the amount set forth in Subsection (b)(i)(1) above, or (b) 110% of the player's prior year's Paragraph 5 Salary, whichever is greater; in addition, if option (b) applies, all other terms of the player's prior year contract are carried forward unchanged (this Subsection is subject to the rules of Subsection (c) below);

(3)     Right of First Refusal, One Second Round Draft Selection: one year Player Contract with a Paragraph 5 Salary of at least (a) $1,300,000 in the 2007 League Year, $1,417,000 in the 2008 League Year, $1,545,000 in the 2009 League Year, $1,684,000 in the 2010 League Year, $1,835,000 in the 2011 League Year, or $2,000,000 in the 2012 League Year, as applicable, or (b) 110% of the player's prior year's Paragraph 5 Salary, whichever is greater; in addition, if option (b) applies, all other terms of the player's prior year contract are carried forward unchanged;

(4)     Right of First Refusal and One First Round Draft Selection: one year Player Contract with a Paragraph 5 Salary of at least (a) $1,573,000 for the 2006 League Year, $1,850,000 for the 2007 League Year, $2,017,000 for the 2008 League Year, $2,198,000 for the 2009 League Year, $2,396,000 for the 2010 League Year, $2,611,000 for the 2011 League Year, or $2,846,000 for the 2012 League Year, as applicable, or (b) 110% of the player's prior year's Paragraph 5 Salary, whichever is greater; in addition, if option (b) applies, all other terms of the player's prior year contract are carried forward unchanged; and

(5)     Right of First Refusal, One First Round Draft Selection, and One Third Round Draft Selection: one year Player Contract with a Paragraph 5 Salary of at least (a) $2,096,600 for the 2006 League Year, $2,350,000 for the 2007 League Year, $2,562,000 for the 2008 League Year, $2,792,000 for the 2009 League Year, $3,043,000 for the 2010 League Year, $3,317,000 for the 2011 League Year, or $3,616,000 for the 2012 League Year, as applicable, or (b) 110% of the player's prior year's Paragraph 5 Salary, whichever is greater; in addition, if option (b) applies, all other terms of the player's prior year contract are carried forward unchanged.

(ii)     For Restricted Free Agents with four (4) Accrued Seasons (in Uncapped Years):

(1)     Right of First Refusal: one year Player Contract with Paragraph 5 Salary of at least $771,600 for the 2006 League Year, $925,000 for the 2007 League Year, $1,002,000 for the 2008 League Year, $1,085,000 for the 2009 League Year, $1,176,000 for the 2010 League Year, $1,275,000 for the 2011 League Year, or $1,383,000 for the 2012 League Year, as applicable;

(2)     Right of First Refusal and Draft Selection at Player's Original Draft Round: one year Player Contract with a Paragraph 5 Salary of at least (a) the amount set forth in Subsection (b)(ii)(1) above; or (b) 110% of the player's prior year's Paragraph 5 Salary, whichever is greater; in addition, if

59

option (b) applies, all other terms of the player's prior year contract are carried forward unchanged (this Subsection is subject to the rules of Subsection (c) below);

(3)   <u>Right of First Refusal and One Second Round Draft Selection</u>: one year Player Contract with a Paragraph 5 Salary of at least (a) $1,375,000 in the 2007 League Year, $1,492,000 in the 2008 League Year, $1,620,000 in the 2009 League Year, $1,759,000 in the 2010 League Year, $1,910,000 in the 2011 League Year, or $2,075,000 in the 2012 League Year, as applicable, or (b) 110% of the player's prior year's Paragraph 5 Salary, whichever is greater; in addition, if option (b) applies, all other terms of the player's prior year contract are carried forward unchanged;

(4)   <u>Right of First Refusal and One First Round Draft Selection</u>: one year Player Contract with a Paragraph 5 Salary of at least (a) $1,673,000 for the 2006 League Year, $1,975,000 for the 2007 League Year, $2,142,000 for the 2008 League Year, $2,323,000 for the 2009 League Year, $2,521,000 for the 2010 League Year, $2,736,000 for the 2011 League Year, or $2,971,000 for the 2012 League Year, as applicable, or (b) 110% of the player's prior year's Paragraph 5 Salary, whichever is greater; in addition, if option (b) applies, all other terms of the player's prior year contract are carried forward unchanged; and

(5)   <u>Right of First Refusal, One First Round Draft Selection, and One Third Round Draft Selection</u>: one year Player Contract with Paragraph 5 Salary of at least (a) $2,196,600 for the 2006 League Year, $2,475,000 for the 2007 League Year, $2,687,000 for the 2008 League Year, $2,917,000 for the 2009 League Year, $3,168,000 for the 2010 League Year, $3,442,000 for the 2011 League Year, or $3,741,000 for the 2012 League Year, as applicable, or (b) 110% of the player's prior year's Paragraph 5 Salary, whichever is greater; in addition, if option (b) applies, all other terms of the player's prior year contract are carried forward unchanged.

(c)(i) Notwithstanding Subsections 2(b)(i) and 2(b)(ii) above, in the event that a Prior Club tenders any of its Restricted Free Agents originally selected in a draft round lower than the first round a Qualifying Offer that requires Draft Choice Compensation of one first round selection (the "(c)(i) Upgraded Tender"), the Prior Club shall only be eligible to receive Draft Choice Compensation of one second round selection for any of its Restricted Free Agents originally selected in the first round of the Draft, unless such Restricted Free Agents have each received a Qualifying Offer of at least the amount of the (c)(i) Upgraded Tender.

(ii) Notwithstanding Subsections 2(b)(i) and 2(b)(ii) above, in the event that a Prior Club tenders any of its Restricted Free Agents originally selected in a draft round lower than the second round a Qualifying Offer that requires Draft Choice Compensation of one second round selection (the "(c)(ii) Upgraded Tender"), the Prior Club shall only be eligible to receive Draft Choice Compensation of one third round selection for any of its Restricted Free Agents originally selected in the second round of the Draft,

60

unless such Restricted Free Agents have each received a Qualifying Offer of at least the amount of the (c)(ii) Upgraded Tender.

(d)      [*Omitted*]

(e)      [*Omitted*]

(f)      A Restricted Free Agent shall have the option of accepting a one year NFL Player Contract for 110% of his Prior Year Paragraph 5 Salary (with all other terms of his prior year contract carried forward unchanged) in lieu of a Player Contract for the applicable alternative amount specified in this paragraph, if he so wishes, regardless of which Player Contract is for a greater amount.

(g)      In the event a Prior Club withdraws its Qualifying Offer, the Restricted Free Agent shall immediately become an Unrestricted Free Agent and shall be completely free to negotiate and sign a Player Contract with any Club, and any Club shall be completely free to negotiate and sign a Player Contract with any such player, without being subject to First Refusal, Draft Choice Compensation, Signing Period, or any other limitation of any kind.

(h)     **Signing Period.** The dates of the period in which Restricted Free Agents shall be free to negotiate and sign a Player Contract with any Club (the "Signing Period") shall be agreed upon by the NFL and the NFLPA by the previous September 1, but in no event may such Signing Period be less than a period of forty-five (45) days, unless the parties agree otherwise.

(i)(i)    In the event that a Restricted Free Agent has not signed a Player Contract with a Club within the Signing Period in the League Year following the expiration of his last Player Contract, and if the Prior Club by June 1 tenders to the Restricted Free Agent a one year Player Contract of at least 110% of his Paragraph 5 Salary (with all other terms of his prior year contract carried forward unchanged) or extends the player's Qualifying Offer, whichever is greater (the "June 1 Tender"), the Prior Club shall be the only Club with which the player may negotiate or sign a Player Contract during the period from June 1 until the Tuesday following the tenth week of the regular season, at 4:00 p.m. New York time. If the player's Qualifying Offer is greater than 110% of the player's Paragraph 5 Salary (with all other terms of his prior year contract carried forward unchanged), the Club may withdraw the Qualifying Offer on June 15 and retain its rights under the preceding sentence, so long as the Club immediately tenders the player a one year Player Contract of at least 110% of his Paragraph 5 Salary (with all other terms of his prior year contract carried forward unchanged) (the "June 15 Tender").

(ii)      If a Restricted Free Agent described in Subsection 2(i)(i) above has not signed a Player Contract by the Tuesday following the tenth week of the regular season, at 4:00 p.m. New York time, the player shall not play football in the NFL for the remainder of that League Year, absent a showing to the Impartial Arbitrator of extreme Club or extreme personal hardship. The determination of the Impartial Arbitrator shall be made within five (5)

61

days of the application, and shall consider all information relating to such hardship submitted by such date. The determination of the Impartial Arbitrator shall be final and binding upon all parties.

(iii)    If a Restricted Free Agent does not play in the NFL in a League Year, his Prior Team shall have the right to tender such player any Qualifying Offer consistent with Section 2(b) prior to the next League Year's Restricted Free Agent Signing Period. In the event such a Qualifying Offer is tendered, the Prior Team shall have the applicable rights regarding such player according to such tender, and such player shall have the same rights regarding negotiations with other Clubs as he had the previous League Year.

(j)    In the event that a Restricted Free Agent has not signed a Player Contract with a Club by June 1 in the League Year following the expiration of his last Player Contract, and if his Prior Club has not by that date made the applicable June 1 Tender to such player, or withdraws the tender, or in the event the Club has withdrawn the applicable June 15 Tender, the player shall be completely free to negotiate and sign a Player Contract with any Club, and any Club may negotiate and sign a Player Contract with such player, without any penalty or restriction, including, but not limited to, Draft Choice Compensation between Clubs or First Refusal Rights of any kind, or any signing period.

(k)    Promptly upon but no later than two (2) business days after the signing of any Restricted Free Agent to a Player Contract, or the extending to any Restricted Free Agent of a Qualifying Offer, the signing or extending Club shall notify the NFL, which shall notify the NFLPA of such signing or offer.

(l)    Draft Choice Compensation under this Article shall be due in that League Year's Draft unless the Offer Sheet is received by the Prior Club later than two days before that League Year's Draft, in which case Draft Choice Compensation shall be due in the following League Year's Draft.

(m)    Notwithstanding the foregoing, in the event that the Prior Club of a Restricted Free Agent has tendered the player a Qualifying Offer pursuant to this Article XIX, Section 2(m) in an amount at least $500,000 greater than that specified by Subsections 2(b)(i)(5) or 2(b)(ii)(5) above, as applicable depending upon whether the League Year is a Capped Year or an Uncapped Year, or by Article LVI, Section 2(b), if applicable, then the Club shall have a Right of First Refusal and Draft Choice Compensation of only one first round selection, but any provision in an Offer Sheet to such player waiving or limiting the New Club's ability to designate the player as a Franchise Player or Transition Player in the future shall not be a Principal Term, and therefore need not be included in a contract formed with the Prior Club as a result of matching such an Offer Sheet (but shall be included in a contract formed with the New Club as a result of the Prior Club not matching such an Offer Sheet).

62

Article XIX, Veteran Free Agency

***Section 3.*** **Offer Sheet and First Refusal Procedures:**

(a)      Offer Sheets. When a Restricted Free Agent receives an offer to sign a Player Contract from any Club (the "New Club") other than the Prior Club, which offer the player desires to accept, he shall give to the Prior Club a completed certificate substantially in the form of Appendix D, attached hereto (the "Offer Sheet"), signed by the Restricted Free Agent and the New Club, which shall contain the "Principal Terms" (as defined below) of the New Club's offer. The New Club and the player must specifically identify in the Offer Sheet those provisions they believe are Principal Terms. The Prior Club, within seven (7) days from the date it receives the Offer Sheet, may exercise or not exercise its Right of First Refusal, which shall have the legal consequences set forth below.

(b)      First Refusal Exercise Notice. If the Prior Club gives the Restricted Free Agent a "First Refusal Exercise Notice" substantially in the form of Appendix E, attached hereto, within seven (7) days from the date the Prior Club receives an Offer Sheet, but not later than four (4) days before the Draft, such Restricted Free Agent and the Prior Club shall be deemed to have entered into a binding agreement, which they shall promptly formalize in a Player Contract, containing (i) all the Principal Terms (subject to Subsection (e) below); (ii) those terms of the NFL Player Contract not modified by the Principal Terms; and (iii) such additional terms, not less favorable to the player than those contained in the Offer Sheet, as may be agreed upon between the Restricted Free Agent and the Prior Club.

(c)      No First Refusal Exercise Notice. If the Prior Club does not give the Restricted Free Agent the First Refusal Exercise Notice within the applicable period, the player and the New Club shall be deemed to have entered into a binding agreement, which they shall promptly formalize in a Player Contract, containing (i) all the Principal Terms; (ii) those terms of the NFL Player Contract not modified by the Principal Terms; and (iii) such additional terms, not less favorable to the Restricted Free Agent than those contained in the Offer Sheet, as may be agreed upon between the Restricted Free Agent and the New Club (subject to Section 5 below), and the Restricted Free Agent's Prior Club shall receive from the New Club the Draft Choice Compensation, if any, specified in Section 2 above of this Article. Any Club that does not have available, in the upcoming Draft, the selection choice or choices (its own or better choices in the applicable rounds) needed to provide Draft Choice Compensation in the event of a timely First Refusal Exercise Notice may not sign an Offer Sheet in such circumstances. The player and the New Club may not renegotiate such Player Contract to reduce the Salary in such contract until the date after the trading deadline in that League Year. Neither the Player nor the New Club may exercise an option in such Player Contract that reduces Salary in the first League Year of such contract until the date after the trading deadline in that League Year.

(d)      One Offer Sheet. There may be only one Offer Sheet signed by a Restricted Free Agent outstanding at any one time, provided that the Offer

63

Article XIX, Veteran Free Agency

Sheet has also been signed by a Club. An Offer Sheet, before or after it is given to the Prior Club, may be revoked or withdrawn only by the Clubs upon the written consent of the Restricted Free Agent. In either of such events, the Restricted Free Agent shall again be free to negotiate and sign a Player Contract with any Club, and any Club shall again be free to negotiate and sign a Player Contract with such Restricted Free Agent, subject to the Prior Club's continued Right of First Refusal and/or Draft Choice Compensation as described in this section.

(e)      Principal Terms. For the purposes of this Section, the Principal Terms of an Offer Sheet are only:

(i)      Salary, which shall consist only of: (a) the fixed and specified dollar amounts the New Club will pay, guarantee or lend to the Restricted Free Agent and/or his designees (currently and/or as deferred compensation in specified installments on specified dates) in consideration for his services as a football player under the Player Contract (i.e., signing bonus, Paragraph 5 Salary, and reporting and roster bonuses); and (b) Salary that is variable and/or is subject to calculation only upon the following bases: (i) based upon performance of the Club extending the Offer Sheet (only those incentives which are "likely to be earned" by the player if he enters into a Player Contract with the New Club, pursuant to Subsection (c) above, must be matched by the Prior Club for the purpose of exercising a Right of First Refusal, and such incentives may not exceed fifteen percent (15%) of the Salary in the Offer Sheet); and (ii) generally recognized league honors to be agreed upon by the parties; and

(ii)      Any modifications of and additions to the terms contained in the NFL Player Contract requested by the Restricted Free Agent and acceptable to the New Club, that relate to non-compensation terms (including guarantees, no-cut, and no-trade provisions) of the Restricted Free Agent's employment as a football player (which shall be evidenced either by a copy of the NFL Player Contract, marked to show changes, or by a brief written summary contained in or attached to the Offer Sheet).

(f)      No Property or Investments. A Club may not offer any item of property or investments other than Salary as part of the Principal Terms contained in an Offer Sheet.

(g)      Incentives. For those incentives which are based on Club performance, only those incentives which are "likely to be earned" by the player if he enters into a Player Contract with the New Club, pursuant to Subsection (c) above, must be matched by the Old Club for the purpose of exercising a Right of First Refusal.

(h)      No Consideration Between Clubs. There may be no consideration of any kind given by one Club to another Club in exchange for a Club's decision to exercise or not to exercise its Right of First Refusal, or in exchange for a Club's decision to submit or not to submit an Offer Sheet to a Restricted Free Agent or to make or not to make an offer to enter into a Player Contract with a Restricted Free Agent. If a Club exercises its Right of

64

First Refusal and matches an Offer Sheet, that Club may not trade that player to the Club that submitted the Offer Sheet for at least one calendar year, unless the player consents to such trade.

(i)     NFL Only. No Right of First Refusal rule, practice, policy, regulation, or agreement, including any Right of First Refusal applicable to any Restricted Free Agent or Transition Player pursuant to Article XX (Franchise and Transition Players) below, may apply to the signing of a Player Contract with, or the playing with, any club in any professional football league other than the NFL by any Restricted Free Agent (except as agreed by the player in the circumstances set forth in Section 5 below). This prohibition applies to any Right of First Refusal described in this Agreement (except as described in Section 5 below).

(j)     No Assignment. No Right of First Refusal may be assigned to any other Club (except as provided in Article XVI (College Draft), Section 7 or as agreed by the player in the circumstances set forth in Section 5 below). This prohibition applies to any Right of First Refusal described in this Agreement (except as described in Section 5 below), including any Right of First Refusal with respect to Restricted Free Agents, Transition Players, or Drafted Rookies described in Article XVI (College Draft), Section 5.

(k)     Copies. Promptly upon but no later than two (2) business days after the giving of an Offer Sheet to the Prior Club, the Restricted Free Agent shall cause a copy thereof to be given to the NFL, which shall notify NFLPA. Promptly upon but no later than two (2) business days after the giving of a First Refusal Exercise Notice to the Restricted Free Agent, the Prior Club shall cause a copy thereof to be given to the NFL, which shall notify the NFLPA. At any time after the giving of an Offer Sheet to a Prior Club, the NFL may require the New Club to cause a copy thereof to be given to the NFL and the NFLPA by telecopy.

**Section 4. Expedited Arbitration:** An expedited arbitration before the Impartial Arbitrator, whose decision shall be final and binding upon all parties, shall be the exclusive method for resolving the disputes set forth in this Section. If a dispute arises between the player and either the Prior Club or the New Club, as the case may be, relating to their respective obligations to formalize their binding agreements created under Subsections 3(b) or (c) above, or as to whether the binding agreement is between the Restricted Free Agent and the New Club or the Restricted Free Agent and the Prior Club, such dispute shall immediately be submitted to the Impartial Arbitrator, who shall resolve such dispute within ten (10) days but in no event later than two (2) days before the Draft. The Impartial Arbitrator shall not have the power to terminate any such binding agreement; he shall have the power only to direct the parties to formalize such binding agreement into a Player Contract in accordance with the Principal Terms of the applicable Offer Sheet, as interpreted by the Impartial Arbitrator.

65

*Section 5.* **Individually Negotiated Limitations on Player Movement:**

(a)　All individually negotiated limitations on player movement are prohibited, except as specifically provided as follows:

(i)　If a Restricted Free Agent has been tendered a Qualifying Offer of (a) Paragraph 5 Salary of at least the applicable amount stated in Section 2(b)(i)(1) above for a player with three (3) Accrued Seasons, or (b) at least the applicable amount stated in Section 2(b)(ii)(1) above for a player with four (4) Accrued Seasons, or (c) at least 110% of his prior year's Paragraph 5 Salary, whichever is greater (in each case with all other terms of his prior year contract carried forward), and the Qualifying Offer is fully guaranteed for skill and injury, the Restricted Free Agent and his Prior Club may negotiate and contract for an individual Right of First Refusal with respect to the services of such player.

(ii)　Any Unrestricted Free Agent shall be permitted to negotiate and contract for an individual Right of First Refusal with any Club with respect to the services of such player so long as the player is not a Franchise Player or Transition Player at the time of such negotiation and contract.

(b)　Any player (other than a Free Agent) with less than three (3) Accrued Seasons is prohibited from negotiating any individual limitations on his movement in his Player Contract or otherwise, and all Clubs are prohibited from negotiating any such limitations with such players.

(c)　Any individual Right of First Refusal that is negotiated and contracted for pursuant to Subsection (a) or (b) above shall be void and unenforceable unless it is specified in a separate document signed by such player in the form annexed hereto as Appendix F, acknowledging such player's waiver of the express right that Unrestricted Free Agents have under this Agreement to be free of any Right of First Refusal restriction on their freedom of movement.

(d)　[*Omitted*]

(e)　[*Omitted*]

(f)　Rights of First Refusal negotiated pursuant to this Section 5 may be traded or assigned as part of a player's contract.

*Section 6.* **Notices, Etc.:**

(a)　Any Offer Sheet, First Refusal Exercise Notice, or other writing required or permitted to be given under this Article XIX (Veteran Free Agency), shall be sent either by personal delivery or by overnight mail, or by telecopy (in each case a confirmation copy shall also be sent by first class mail), addressed as follows:

(i)　To any NFL Club: addressed to that Club at the principal address of such Club as then listed on the records of the NFL or at the Club's principal office, to the attention of the Club's president or general manager;

(ii)　To the NFL, 280 Park Avenue, New York, New York 10017, to the attention of Executive Vice President-Labor Relations;

(iii)　To a Restricted Free Agent: to his address listed on the Offer

66

Article XIX, Veteran Free Agency

Sheet and, if the Restricted Free Agent designates a representative on the Offer Sheet and lists such representative's address thereon, a copy shall be sent to such representative at such address; and

(iv)     To the NFLPA, 2021 L Street, N.W., Suite 600, Washington, D.C. 20036.

(b)     An Offer Sheet shall be deemed given only when received by the Prior Club. A First Refusal Exercise Notice, a Qualifying Offer and any other writing required or permitted under Article XIX (Veteran Free Agency) shall be deemed given when sent by the Prior Club.

(c)     Subject to Article XXVIII (Anti-Collusion), Section 1 below, the NFL shall have the right to prepare and circulate to all Clubs two (2) lists containing, respectively, no more than the name, address, Social Security number, telephone number, college, position, Team, Right of First Refusal and/or any Draft Choice Compensation of each and every player who shall or has become (i) an Unrestricted Free Agent; or (ii) a Restricted Free Agent, as of March 1, or as of the first date of the Signing Period, respectively ("Free Agent Lists"), and no other list relating to free agents. Information shall not be selectively withheld for some players but not others. If one or more Free Agent Lists are so circulated, copies thereof shall be sent to the NFLPA.

67

## ARTICLE XX
## FRANCHISE AND TRANSITION PLAYERS

*Section 1.* **Franchise Player Designations:** Except as set forth in Section 10 below, each Club shall be permitted to designate one of its players who would otherwise be an Unrestricted Free Agent as a Franchise Player each season during the term of this Agreement. The player so designated may be one who would otherwise be a Restricted Free Agent. Except as set forth in Section 2(a)(i) below, any Club that designates a Franchise Player shall be the only Club with which such Franchise Player may negotiate or sign a Player Contract, during the period the player is so designated, notwithstanding the number of his Accrued Seasons. The period for Clubs to designate Franchise Players will begin on the twenty-second day preceding the first day of the new League Year and will end at 4:00 p.m. New York time on the eighth day preceding the first day of the new League Year.

*Section 2.* **Required Tender for Franchise Players:**

(a)     Except as provided in Subsection (b) below, any Club that designates a Franchise Player shall on the date the designation is made notify the player and the NFLPA which one of the following two (2) potential required tenders the Club has selected:

(i)     A one year NFL Player Contract for the average of the five (5) largest Prior Year Salaries for players at the position (within the categories set forth in Section 7(a) below) at which the Franchise Player played the most games during the prior League Year, or 120% of his Prior Year Salary, whichever is greater; if the Club extends the tender pursuant to this Subsection (a)(i), the player shall be permitted to negotiate a Player Contract with any Club as if he were a player subject to Section 5 below, except that Draft Choice Compensation of two (2) first round draft selections shall be made with respect to such player in the event he signs with the New Club, and the Signing Period for such player shall be determined under Section 17 below; or

(ii)     A one year NFL Player Contract for (1) the average of the five (5) largest Salaries in Player Contracts for that League Year as of the end of the Restricted Free Agent Signing Period that League Year, as set forth in Article XIX (Veteran Free Agency), Section 2(h), for players at the position (within the categories set forth in Section 7(a) below) at which he played the most games during the prior League Year, or (2) the amount of the required tender under Subsection (a)(i) above, whichever is greater.

(b)     Any Club that designates a player as a Franchise Player for the third time shall, on the date the third such designation is made, be deemed to have tendered the player a one-year NFL Player Contract for the greater of: (1) the average of the five (5) largest Prior Year Salaries for players at the position (within the categories set forth in Section 7(a) below) with the highest such average; (2) 120% of the average of the five (5) largest Prior

68