Exhibit 27
Part 1 of 2

# CONSTITUTION AND BYLAWS
## OF THE
# NATIONAL FOOTBALL LEAGUE



**Effective February 1, 1970**
**(2004 Rev.)**

*Provisions of the Constitution relating to players (in particular, Articles XII, XIV, XV, XVI, XVII, and XVIII) remain subject to the provisions of the Collective Bargaining Agreement.

# Table of Contents

| Article | | Page Number |
|---|---|---|
| Article I | Name and Principal Office | 1 |
| Article II | Purposes and Objects | 2 |
| Article III | Membership | 3 |
| Article IV | Territorial Rights | 12 |
| Article V | Meetings of the League | 20 |
| Article VI | Executive and Other Committees | 23 |
| Article VII | Officers | 26 |
| Article VIII | Commissioner | 28 |
| Article IX | Prohibited Conduct | 37 |
| Article X | Broadcasting and Television | 45 |
| Article XI | Playing Rules | 48 |
| Article XII | Eligibility of Players | 49 |
| Article XIII | Schedule | 58 |
| Article XIV | Selection Meeting | 60 |
| Article XV | Player Contracts | 67 |
| Article XVI | Assignment of Player Contracts | 69 |
| Article XVII | Player Limits and Eligibility | 72 |
| Article XVIII | Waivers | 88 |
| Article XIX | Conduct of Regular Season Games | 95 |
| Article XX | Divisional Playoff Games | 104 |
| Article XXI | Conference Championship Games | 109 |
| Article XXII | Super Bowl Game | 112 |
| Article XXIII | Preseason and Postseason Games | 113 |
| Article XXIV | Notices | 115 |
| Article XXV | Amendment of Constitution and Bylaws | 116 |
| Appendix of Resolutions | | A-i |

# Article I

## Name and Principal Office

1.1    The name of this association shall be National Football League, hereinafter called "League." The word "League" herein shall refer to the National Football League, unless otherwise specified.

1.2    The Commissioner shall select the location of the office of the League, which shall be located in or adjacent to a city in which a League franchise is operated.

# Article II

## Purposes and Objects

2.1     The purpose and objects for which the League is organized are:

    (A)     To promote and foster the primary business of League members, each member being an owner of a professional football club located in the United States.

    (B)     To do and perform such other functions as may be necessary to carry out the purpose and objects of the League.

2.2     The League is not organized nor to be operated for profit.

# Article III

## Membership

**Members**

3.1 (A) Membership in the League shall be limited to the thirty-two (32) member clubs specified in Section 4.5 hereof and such new members as may be thereafter duly elected.

   (B) The admission of a new member club, either within or outside the home territory of an existing member club, shall require the affirmative vote of three-fourths of the existing member clubs of the League.

   *See* 1995 Resolution G-4 (Los Angeles franchise opportunity), App., p. 1995-1
   1999 Resolution EC-1 (Houston expansion), App., p. 1999-1

## Eligibility of New Members

3.2 Any person, association, partnership, corporation, or other entity of good repute organized for the purpose of operating a professional football club shall be eligible for membership, except:

   (A) No corporation, association, partnership, or other entity not operated for profit nor any charitable organization or entity not presently a member of the League shall be eligible for membership.

   (B) If any privately held corporation, partnership, trust, or other entity owns or operates, directly or indirectly, any substantial non-football business or assets and owns, directly or indirectly, an interest in or otherwise operates a member club, then:

      (1) The member club shall be held in a separate corporation, partnership, or trust (the "Football Company"), the primary purpose of which shall at all times be and remain the operation of a professional football team as a member club of the League, which such primary purpose shall not be changed, and the only material asset of which shall be the member club;

      (2) The ownership interest in the Football Company shall be held directly by a holding company that shall have no operating business or material assets but only ownership interests in other entities, and the ownership interests in the holding company shall be owned directly by individuals (or certain

trusts or partnerships approved by the Commissioner's office); and

    (3)   The Football Company and all individuals or entities holding a direct or indirect interest in the Football Company shall be subject to all of the League policies and requirements on ownership that the members may from time to time adopt or apply, including, without limitation, all reporting, audit, ownership, and debt limitation requirements.

*See* 1985 Resolution FC-7 (rules governing limited partnerships), App., p. 1985-2
1988 Resolution FC-3 (club debt limitation requirements), App., p. 1988-2
1990 Resolution FC-2 (financial reporting), App., p. 1990-1
1996 Resolution FC-5 (rules governing limited partnerships: attribution), App., p. 1996-2
1996 Resolution FC-6 (rules governing corporations: attribution), App., p. 1996-3
1997 Resolution FC-3 (cross-ownership), App., p. 1997-1
1998 Resolution FC-10 (rules governing limited liability companies: attribution), App., p. 1998-12
2001 Resolution FC-4 (debt ceiling), App., p. 2001-1
2004 Resolution FC-1A (rules governing aggregation of a Principal Owner's ownership interest with those of immediate family members for the purposes of determining whether such Principal Owner holds at least a 30% beneficial interest), App., p. 2004-11
2004 Resolution FC-2 (cross-ownership), App., p. 2004-13
2004 Resolution FC-7 (financial reporting), App., p. 2004-14

**Admission for Members**

3.3    (A)   Each applicant for membership shall make a written application to the Commissioner. Such application shall describe the type of organization and shall designate the city in which the franchise of the applicant shall be located. Such application shall further describe and contain the following information:

    (1)   The names and addresses of all persons who do or shall own any interest or stock in the applicant, together with a statement that such persons will not own or hold such interest or stock for the benefit of any undisclosed person or organization;

    (2)   A detailed balance sheet of such company as of the date of organization and a pro forma statement as of the time it shall commence actual operation. A written financial statement

             Article III

shall be required from the applicant and from anyone owning an interest in any applicant, including stockholders and partners;

(3) If applicant is a corporation, a certified copy of the Articles of Incorporation, Bylaws and share certificate shall accompany such application, provided, however, that if the organization of such corporation has not been commenced or completed, a detailed statement summarizing the proposed plan of operation and the capital structure thereof shall be furnished;

(4) If applicant is a partnership, unincorporated association, or other entity, a certified copy of the Articles of Co-Partnership or organization agreement shall accompany such application;

(5) The names and addresses of all officers and directors; and

(6) All applications shall contain a representation that upon acceptance, the applicant will subscribe to and agree to be bound by the Constitution and Bylaws, Rules and Regulations of the League and any amendments or modifications thereto.

(B) Each application for membership shall be accompanied by a certified check for twenty-five thousand dollars ($25,000). Upon approval of any application for membership, an additional twenty-five thousand dollars ($25,000) shall be paid to the League. If any application for admission is rejected, the League shall repay to the applicant the sum of twenty-five thousand dollars ($25,000) paid by the applicant at the time of such application, less all expenses reasonably incurred in connection with the consideration and investigation of such application.

(C) Upon receipt of any application for membership in the League, the Commissioner shall conduct such investigation thereof as he deems appropriate. Following the completion of such investigation, the Commissioner shall submit the application to the members for approval, together with his recommendation thereon, and such information thereon that the Commissioner deems pertinent. Each proposed owner or holder of any interest in a membership, including stockholders in any corporation, members of a partnership, and all other persons holding any interest in the applicant, must be individually approved by the affirmative vote of not less than three-fourths or 20, whichever is greater, of the members of the League.

**Franchise Certificate of Membership**

3.4     Each member shall receive a Franchise Certificate of Membership signed by the Commissioner and Secretary of the League certifying that such member is a member of the League and holds a franchise from the League to operate a professional football club in a designated city. Such Franchise Certificate shall not be assignable nor transferable, except as provided in Section 3.5 hereof.

**Transfer of Membership**

3.5     No membership, or any interest therein, may be sold, assigned, or otherwise transferred in whole or in part except in accordance with and subject to the following provisions:

(A)     Application for the sale, transfer, or assignment of a membership, or of any interest therein, must be made in writing to the Commissioner. Upon receipt of such application, the Commissioner is empowered to require from applicant and applicant shall furnish such information as the Commissioner deems appropriate, including:

      (1)     The names and addresses of each of the buyers, transferees, or assignees thereof;

      (2)     The price to be paid for such sale, transfer, or assignment, and the terms of payment, including a description of the security for the unpaid balance, if any;

      (3)     A banking reference for each buyer, transferee, or assignee; and

      (4)     If the buyer, transferee, or assignee is a corporation, a copy of the Articles of Incorporation and Bylaws thereof, together with a copy of the share certificates of each class of stock to be outstanding, the names and addresses of the directors and officers thereof, the names and the addresses of the stockholders therein, and the price paid or to be paid and the time of payment for said stock, a copy of any proposed voting trust agreement and of any voting trust certificates.

(B)     Upon receipt thereof, the Commissioner shall conduct such investigation as he deems appropriate. Upon completion thereof, the Commissioner shall submit the proposed transfer to the members for approval, together with his recommendation thereon, and all information in respect thereto that the Commissioner deems pertinent. All sales, transfers, or assignments, except a transfer referred to in Section 3.5(C) hereof, shall only become effective if

approved by the affirmative vote of not less than three-fourths or 20, whichever is greater, of the members of the League.

(C)   If any person owning or holding a membership, or an interest therein, by stock ownership or otherwise, dies, such membership or interest therein may be transferred to a member of the "immediate family" of the deceased without requiring the consent or approval of the members of the League or the Commissioner. Similarly, if any person owning or holding a membership or an interest therein, by stock ownership or otherwise, seeks to transfer such membership or any interest therein by gift, such membership or the interest therein may be transferred to the donee if the donee is a member of the "immediate family" of the donor. In such event, no consent or approval of the members of the League or the Commissioner shall be required to complete such transfer. The "immediate family" for the purpose of this paragraph shall mean the wife, child, mother, father, brothers and sisters, or any other lineal descendant of the deceased or donor. In all other cases involving death or transfers by gift, any person succeeding to a membership or an interest therein, whether by gift, will, intestacy, or otherwise, must be first investigated by the Commissioner in such manner as the Commissioner deems appropriate. Upon the completion thereof, the Commissioner shall submit such succession or transfer to the membership for approval and shall accompany the same with his recommendation thereon. No such succession or transfer shall be effective unless first approved by the affirmative vote of not less than three-fourths or 20, whichever is greater, of the members of the League.

**Voluntary Withdrawal**

3.6    Any member of the League may withdraw from membership either:

(A)   By selling, assigning, or transferring its membership upon the terms and conditions set out in Section 3.5 hereof; or

(B)   A club may voluntarily withdraw from the League by tendering its written resignation to the Commissioner and simultaneously surrendering its Franchise Certificate of Membership, making full payment of any and all dues, assessments, or other debts owing to the League, and assigning to the League or its nominee all player contracts and the lease of its playing field, if and to the extent the lease is assignable; provided, however, that no voluntary withdrawal may be made in any year between March 1st and the date of the Super Bowl game of that year, except with the unanimous consent of all members.

**Involuntary Termination**

3.7     Membership in the League shall be automatically terminated whenever:

(A)     An individual or corporate member or a partnership member or any general partner therein makes an assignment for the benefit of his or its creditors or files a voluntary petition in bankruptcy or whenever a receiver or trustee in bankruptcy is appointed for the property and assets of the member or of any general partner of a partnership member or whenever reorganization proceedings in bankruptcy are instituted by or against the member or by or against any general partner possessing an interest in a partnership membership. In the event the partnership agreement of a partnership member provides for automatic termination of the interest of any general partner who makes an assignment for the benefit of his creditors or who becomes the subject of any such bankruptcy proceedings and also provides for the continuation of such partnership in any such event and the remaining partners satisfy the requirements of Sections 3.5(A) and (B) hereof, then this Section 3.7(A) shall be inoperative with respect to such partnership member; or

(B)     A member disbands its team during the regular season; or

(C)     A member permanently disbands its business organization or ceases its business.

**Effect of Termination**

3.8     (A)     Upon the expulsion of a member or upon any other involuntary termination of membership, the following shall occur:

(1)     The lease of its playing field or interest of the member therein, if and to the extent the lease or interest is assignable, shall, upon demand of the League, be assigned to the League or its nominee, provided, however, that the assignment of said lease to the League shall first be approved by the affirmative vote or written consent of no less than three-fourths or 20, whichever is greater, of the members of the League. Said lease shall therefore be handled or disposed of in such manner as the remaining League members, by the affirmative vote of not less than three-fourths or 20, whichever is greater, of the members shall decide.

(2)     Title to all player contracts of the terminated member and title to all players on the Reserve or Selection List of such terminated member and any interest or right to such players and contracts shall, if demanded by the League, be assigned to

the League or its nominee, provided that such assignments are first approved by the affirmative vote or written consent of not less than three-fourths or 20, whichever is greater, of the remaining League members. Said players and contracts so acquired shall thereafter be handled and disposed of within the League in such manner as the remaining member clubs by the affirmative vote of not less than three-fourths or 20, whichever is greater, members of the League shall decide.

    (3)  All interests of the terminated member in and to any funds or property of the League, or any right or interest therein, shall cease.

(B)    Whenever any stockholder, partner, or holder of any interest in a member club is requested to sell or dispose of his stock or an interest in a membership in the League by reason of an expulsion or other involuntary termination, such sale or disposition must be completed within one hundred twenty (120) days after such action has been ordered. If such stock or interest is not sold or disposed of within one hundred twenty (120) days, then the price and other terms of the sale or disposition shall be fixed by mutual agreement between the person affected and the Commissioner; if such cannot be accomplished by mutual agreement, then the price and other terms shall be fixed by arbitration with one arbitrator to be selected by the Commissioner and the other by the affected holder of the stock or interest. If within five (5) days the two arbitrators cannot agree on the price and terms, then the two arbitrators shall select a third arbitrator and the decision of the majority of the arbitrators shall be binding on all parties. If any person required to name an arbitrator fails to do so, or if the two arbitrators cannot agree on a third arbitrator, then such arbitrator in either case shall be named by the Commissioner.

### Capital Contribution of Transferee

3.9    A new member acquiring its membership by transfer from another member shall succeed to the interest of the transferor in and to the funds, property, rights, and interests of the League and shall not be obligated to make the capital contribution required under Section 3.3(B) hereof.

**Membership Fees and Assessments**

3.10    Whenever monies are required to meet the expenses of the League and League funds are not available for that purpose, then, upon demand by the Commissioner, each member shall be obligated to contribute equally its share of the required monies.

> *See* 1984 Resolution (Finance: interest charged on delinquent club payments), App., p. 1984-2

**Membership Covenants and Obligations**

3.11    Each member club, and each and all of the owners, officers, stockholders, directors, or partners therein, as well as any other person owning any interest in such member club, assumes and agrees to be bound by the following obligations of membership in the League:

(A)    They, and each of them, shall be bound by and will observe all decisions of the Commissioner of the League in all matters within his jurisdiction.

(B)    They, and each of them, shall be bound by and will observe all decisions, rulings, and action of the Executive Committee or the member clubs of the League in every matter within the jurisdiction of such Committee or such member clubs, as the case may be.

> *See* 2004 Resolution BV-4 (All agreements existing as of the date of, and relating to the matters covered by, 2004 Resolution BV-4 remain in effect, with clubs to continue to participate and support implementation of such agreements), App., p. 2004-3

(C)    They, and each of them, to the fullest extent permitted by law, release and indemnify the Commissioner, the League and every employee thereof, every member club and every officer, director, or employee thereof, and every holder of an interest therein, from and against any and all claims, demands, suits or other proceedings, whether for damages or otherwise, which they, or any of them, or any other party, may at any time have or assert in connection with or by reason of any action taken or not taken by the released/indemnified parties in their official capacities on behalf of the League or any committee thereof.

> *See* 1997 Resolution FC-6 (reimbursement of legal fees and expenses), App., p. 1997-3

(D)   They, and each of them, shall include in every contract between any member club and its employees, including coaches and players, a clause wherein the parties to such contract agree to be bound by the Constitution and Bylaws of the League.

(E)   That after becoming a member of the League, the primary purpose of the corporation, partnership, or other entity operating the club shall at all times be and remain the operation of a professional football team as a member club of the League, and such primary purpose shall not be changed.

*See* 1993 Resolution FC-5 (primary purpose requirement), App., p. 1993-6

(F)   They, and each of them, consent to be bound by the provisions of the Final Judgment of the United States District Court for the Eastern District of Pennsylvania entered against the National Football League and certain of its member clubs on December 28, 1953, and as thereafter modified and for the purpose of said Judgment submit to the jurisdiction of said Court.

(G)   They, and each of them, agree to be bound by all of the terms and provisions of the Constitution and Bylaws of the League as now or hereafter in effect.

(H)   They, and each of them, agree to be represented at each and every meeting of the League and of the Executive Committee of the League by a representative duly authorized and empowered to cast a binding vote of the member club on all questions coming before such meeting.

*See* 1984 Resolution (Long Range Planning Committee, League meetings), App., p. 1984-4

# Article IV

## Territorial Rights

### Home Territory Defined

4.1     "Home Territory" with respect to any club means the city in which such club is located and for which it holds a franchise and plays its home games and includes the surrounding territory to the extent of 75 miles in every direction from the exterior corporate limits of such city, except as follows:

    (A)   Whenever any two member clubs, other than the San Francisco 49ers and the Oakland Raiders, are located and hold franchises for different cities within 100 miles of each other measured from the exterior corporate limits of such city, then the territorial rights of each of such clubs shall only extend to and include an area of one-half the distance between such cities.

    (B)   The "home territory" of the Green Bay Packers shall extend to and include all of Milwaukee County, Wisconsin, despite the fact that portions of such County are outside the 75 mile limits from the exterior corporate limits of the City of Green Bay.

### Rights Within Home Territory

4.2     Each member shall have the exclusive right within its home territory to exhibit professional football games played by teams of the League except that:

    (A)   Whenever two club franchises in the League are located in the same city, then the owners of each of such franchises shall have equal rights within the home territory of such city.

    (B)   In respect to the San Francisco and Oakland franchises the following provisions shall apply:

        (1)   The home club in each city shall have the exclusive right to exhibit professional football games played by teams in the League in its city, and neither the San Francisco nor the Oakland club shall have any right to play professional football in the city of the other without the consent of the other club.

        (2)   In respect to the area included in the home territory of both clubs, but located outside the city limits of both cities, both clubs shall have joint rights of exclusivity, and both of said clubs may play games with other clubs in the League within

such area without the consent of the other club also operating in the same home territory or any part thereof.

(C)     Subject to the provisions of Sections 4.2(A) and (B) above, no club in the League shall be permitted to play games within the home territory of any other club unless a home club is a participant.

(D)     In the event the Baltimore franchise is forfeited or surrendered, or is transferred to a city other than Baltimore, all rights to the Baltimore territory shall revest in the Washington Redskins, and the area included in the Baltimore territory shall be reconstituted and become part of the Home Territory of the Washington Redskins pursuant to the Constitution and Bylaws of the League.

(E)     The Home Territory of the Washington Redskins and the Home Territory of the Baltimore Ravens, respectively, shall remain as defined in Article 4.1(A) above except that the Home Territory of the Redskins shall include all of Montgomery and Prince Georges Counties and no other part of the State of Maryland and the Home Territory of the Baltimore Ravens shall include all of Anne Arundel and Howard Counties in the State of Maryland.

**League Control of Games**

4.3     The League shall have exclusive control of the exhibition of football games by member clubs within the home territory of each member. No member club shall have the right to transfer its franchise or playing site to a different city, either within or outside its home territory, without prior approval by the affirmative vote of three-fourths of the existing member clubs of the League.

*See* 2002 Resolution G-7 (confirming League control of sidelines for marketing and broadcasting purposes), App., p. 2002-8

**Home Marketing Area**

4.4     Home Marketing Area Defined.

(A)     Each club shall have a Home Marketing Area in which it may engage in the commercial activities set forth in Section 4.4(B) below. The Home Marketing Area shall be defined as (i) the Home Territory (including the portion of any foreign country within a club's Home Territory, provided however, that activities within a foreign country are coordinated with and approved in advance by the League on behalf of NFL International) and (ii) the State within which the City for which the club holds a franchise is located.

13                                          Article IV

Where two or more clubs share a Home Territory, each club shall have equal rights under Section 4.4(B) below with respect to the Home Territory and Home Marketing Area. Where two or more clubs hold franchises within the same state but do not share a Home Territory, each club shall have equal rights within the Home Marketing Area, except for the Home Territory of another club.

The Home Marketing Area of any club shall also include the county in which the club's preseason training camp is located (if located within the United States) for the duration of such training camp only, unless the training camp is located within the Home Territory of another member club.

(B)   Club Rights Within Home Marketing Area: Exclusivity and Other Terms

(1)   Subject to the terms of Section 4.4(A), each club shall have exclusive rights vis-à-vis other clubs to use its trademarks, including without limitation, the names, nicknames, logos, colors, slogans, symbols, or any other identifying indicia in their present form or as may be adopted in the future (the "Club Marks") within its Home Marketing Area with respect to NFL football activities involving (i) local advertising, sponsorship, naming rights, and related promotional arrangements; (ii) retail stores and other club-identified physical structures and ventures; (iii) promotional and public awareness campaigns, including "image" advertising; and (iv) club-sponsored events.

(2)   A club's rights to use its Club Marks within its Home Marketing Area shall at all times be subject to: (i) League agreements, including with manufacturers of licensed products; (ii) the rights of League sponsors and business partners, including television partners and the NFL Network; (iii) the right of the League to promote League initiatives and events; and (iv) the rights of the League and individual clubs to reach fans outside of their Home Marketing Area through e-commerce and other Internet related activities, catalog sales and database marketing. Except as otherwise set forth in this Section, no club shall have any rights to use or license its Club Marks in the Home Marketing Area of another club.

(C)   A club may request a limited expansion of its Home Marketing Area into a border state. Such requests will be evaluated based on the effect of the proposed expansion on the interests of the League or another member club.

(D)   Consistent with prior resolutions, the Los Angeles home territory shall remain owned and controlled by the League, and pending a decision by the League to place one or more franchises in the Los Angeles area, no club shall have rights to use Club Marks in the Los Angeles Home Territory for the purposes set forth in Section 4.4(B) above.

(E)   The League directly and/or through one or more entities collectively owned by the clubs (e.g., NFL Ventures, NFL Enterprises, NFL Properties, NFL International, and NFL Productions) (the "League affiliates") shall retain exclusive control of all trademarks owned by the League entities (including, without limitation, NFL, the NFL Shield design, Super Bowl game, Pro Bowl game, NFL Kickoff, NFL Playoffs, in their present form or as may be adopted in the future; collectively the "League Marks") and the collective use of Club Marks (the use of all clubs' Club Marks with equal emphasis) in any context. No club may license or use League Marks or any other Club Marks, nor permit a third party to use any of its Club Marks together with the Club Marks of another club absent prior League approval.

(F)   The League shall retain exclusive worldwide control to license and otherwise use League Marks and individual Club Marks during the term of 2004 Resolution BV-4, in respect of the following business operations: (i) the promotion of the League; (ii) game presentation including presentation and promotion of NFL football through game telecasts and related programming in all forms of media; (iii) international operations; (iv) apparel, accessories, footwear and fitness products; (v) computer and video games; (vi) trading cards; (vii) footballs, helmets, and other equipment used on the playing field; (viii) player-identified product; (ix) home videos and related NFL Films products; (x) products including the marks of all clubs; and (xi) licensing, advertising, product or service placement, sponsorships and promotional agreements relating to commercial identification on the sidelines or playing field or otherwise subject to television exposure during NFL games. With respect to any such operations, no club may "opt out" of any League arrangement in such business operations or "go dark" by refusing to cooperate with any such arrangement.

(G)   The League may enter into sponsorship and promotional agreements licensing the use of League Marks and collective use of Club Marks. Except as set forth in Section 4.4(F) above, each club shall retain the right to have a separate sponsorship and promotional arrangement for individual use of its Club Marks within its Home Marketing Area, subject to rules and policies established by the League and/or a League affiliate, including without limitation, regulations based on taste, image, health or

safety, or integrity of the game considerations, and relating to premium products and branding. The clubs, by a three-fourths vote, may authorize a League affiliate to enter into a particular sponsorship agreement for a specific category licensing the use of League Marks and the individual use of all of the Club Marks.

(H)   Any club that licenses or authorizes use of its Club Marks in violation of this section 4.4 or related rules or policies, shall, in addition to any other penalty that may be assessed, pay to the League or a League affiliate all proceeds and other consideration received for such license and not be entitled to share in any revenues generated by the use of League Marks and Club Marks under Resolution BV-4.

(I)   Any disputes arising out of or relating to 2004 Resolution BV-4, any policies or rules developed to implement 2004 Resolution BV-4, the NFL trademark trust and any related agreements, or the rights and obligations of NFL Ventures and its affiliates, shall be resolved exclusively under the mechanism set forth in Article VIII hereof.

*See* 2004 Resolution BV-4 (Rights of clubs in Home Marketing Area; NFL right to enter into license agreements to use League and club marks for non-apparel products to be distributed nationally; League responsibilities for trademark and related intellectual property activities of the NFL and the clubs; dispute resolution), App., p. 2004-3

**Conference Alignment**

4.5   The League shall be divided into two conferences called the National Football Conference and the American Football Conference. The National Football Conference shall consist of sixteen (16) teams, and the American Football Conference shall consist of sixteen (16) teams as follows:

**National Football Conference**

| | |
|---|---|
| Arizona Cardinals | New Orleans Saints |
| Atlanta Falcons | New York Giants |
| Carolina Panthers | Philadelphia Eagles |
| Chicago Bears | St. Louis Rams |
| Dallas Cowboys | San Francisco 49ers |
| Detroit Lions | Seattle Seahawks |
| Green Bay Packers | Tampa Bay Buccaneers |
| Minnesota Vikings | Washington Redskins |

**American Football Conference**

| | |
|---|---|
| Baltimore Ravens | Kansas City Chiefs |
| Buffalo Bills | Miami Dolphins |
| Cincinnati Bengals | New England Patriots |
| Cleveland Browns | New York Jets |
| Denver Broncos | Oakland Raiders |
| Houston Texans | Pittsburgh Steelers |
| Indianapolis Colts | San Diego Chargers |
| Jacksonville Jaguars | Tennessee Titans |

Such Conferences shall be operated under the following terms and conditions:

(A)   Each conference shall be divided into four (4) divisions:

(B)   The divisions of the clubs in the American Football Conference are as follows:

**South:**

| | |
|---|---|
| Houston Texans | Jacksonville Jaguars |
| Indianapolis Colts | Tennessee Titans |

**North:**

| | |
|---|---|
| Baltimore Ravens | Cleveland Browns |
| Cincinnati Bengals | Pittsburgh Steelers |

**West:**

| | |
|---|---|
| Denver Broncos | Oakland Raiders |
| Kansas City Chiefs | San Diego Chargers |

**East:**

| | |
|---|---|
| Buffalo Bills | New England Patriots |
| Miami Dolphins | New York Jets |

(C)   The divisions of the clubs in the National Football Conference are as follows:

**South:**

| | |
|---|---|
| Atlanta Falcons | New Orleans Saints |
| Carolina Panthers | Tampa Bay Buccaneers |

**North:**

| | |
|---|---|
| Chicago Bears | Green Bay Packers |
| Detroit Lions | Minnesota Vikings |

**West:**

| | |
|---|---|
| Arizona Cardinals | San Francisco 49ers |
| St. Louis Rams | Seattle Seahawks |

**East:**

| | |
|---|---|
| Dallas Cowboys | Philadelphia Eagles |
| New York Giants | Washington Redskins |

(D)   The scheduling of games within each conference and between the two conferences shall be governed by the provisions of Article XIII hereof.

(E)   The New York Giants and the New York Jets shall not be assigned to the same conference without the consent of both clubs.

(F)   The San Francisco 49ers and the Oakland Raiders shall not be assigned to the same conference without the prior consent of both clubs unless the conferences are divided into smaller numerical groupings, i.e., divisions: in such case, the 49ers and the Raiders may be assigned to the same conference, but may not be placed in the same division or other smallest numerical grouping of clubs within the same conference.

(G)   Any realignment of the League must be approved by the affirmative vote of three-fourths of the existing member clubs of the League, except that in the case of two-franchise areas (e.g., New York Giants/New York Jets), no realignment placing both franchises in the same conference can be approved without the consent of the two franchises.

(H)   Subject to the other provisions of this Section 4.5, whenever the League proposes or seeks to realign the clubs into conferences or other groups for scheduling or standing purposes, the following factors shall be considered in order not to unfairly prejudice the rights of any club in the League: geographical location, natural rivalries, stadium capacity, gate attendance, weather conditions, relative team strength, and baseball conflicts involving clubs playing home games in baseball stadiums.

*See* 1995 Resolution G-4 (giving Rams' realignment vote to Commissioner), App., p. 1995-1

1996 Resolution G-1 (giving Ravens' realignment vote to Commissioner via referenced settlement agreement), App., p. 1996-5

1996 Resolution G-4 (giving Oilers' realignment vote to Commissioner), App., p. 1996-6

1999 Resolution EC-1 (approving expansion to Houston and League realignment), App., p. 1999-1

2001 Resolution G-5 (realignment into two conferences, each with four divisions of four teams), App., p. 2001-7

# Article V

## Meetings of the League

**Annual Meetings**

5.1    The Annual Meeting of the League shall be held not earlier than the second Monday in February of each year and not later than April 1 in such year; such meeting shall be held on such date and at such places and times as the Commissioner shall designate in the notices of the meeting.

**Special Meetings**

5.2    Special meetings of the League may be held at any place upon call by the Commissioner.

**Notice of Annual and Special Meetings**

5.3    (A)    Written notice of the time and place of holding any meeting shall be given to each member at least thirty (30) days in advance of the day fixed for the Annual Meeting or at least seven (7) days in advance of the day fixed for any special meetings.

       (B)    Notice of a special meeting shall state the time, place, and purpose of the meeting. The notice of the Annual Meeting must state the time and place of the meeting, but not the purpose. If any amendments to the Constitution and Bylaws are to be considered at the Annual Meeting, the submission of such proposals must be in accordance with Article XXV hereof, except that, any other provisions of this Constitution notwithstanding, the Commissioner may propose in his sole discretion amendments which he considers to be of an emergency nature, and such amendments at a special meeting will require an affirmative vote of three-quarters or 20, whichever is greater, of the member clubs for passage.

       (C)    Notices of any meeting may be waived by the unanimous consent of all member clubs.

**Quorum**

5.4    At all meetings of the League, whether Annual or Special, three-fourths or 20, whichever is greater, of the members of the League in good standing, present in person or by authorized representatives, shall constitute a quorum for the transaction of business and shall have the power to adjourn the meeting from time to time without notice other than announcement at the meeting until the requisite numbers of members shall be present.

**Voting and Representation**

5.5   (A)   At each meeting of the League, each member shall be limited to two (2) representatives. Each member shall be limited to only one (1) vote upon any matter presented to the meeting. Each member shall file with the League within the time designated by the Commissioner a written designation of the representative and alternate to vote and act for it. The Commissioner or presiding officer may require proof satisfactory to the Commissioner or presiding officer of the authority of any representative to represent a member. In all meetings, both Executive Session and general, proxy voting is prohibited. If a member is not represented at the time of a vote, the three-fourths requirement for a vote to carry will be based on the number of members present. This special voting procedure when a quorum but not all clubs are represented shall not apply whenever a unanimous vote is required by the Constitution and Bylaws.

(B)   Any proposal introduced to the membership at a meeting of the League at which a quorum is present or otherwise properly before the membership, may be voted upon either during or following such meeting by NFLNet, e-mail or facsimile or by similar means of communication.

**Number of Votes**

5.6   Except as herein otherwise specifically provided, the affirmative vote of not less than three-fourths or 20, whichever is greater, of the members of the League at any Annual Meeting of the League shall be required for action.

**Order of Business at Annual Meeting**

5.7   The order of business for the Annual Meeting shall be as follows:

Roll call
Reading of minutes of the previous meeting
Report of the Commissioner
Report of the Treasurer
Report of other League officers
Report of the Public Relations Department
Report of other committees
Unfinished business
Nomination and election of officers
Installation of officers
New business
Adjournment

**Executive Session**

5.8     Upon call of the Commissioner or by majority vote of the members of the League, the League may go into Executive Session. Each member shall designate its duly authorized representative to act for it in such Executive Session. In any Executive Session, unless otherwise designated by the Commissioner, two representatives of each member and the Commissioner shall be present together with such other persons as either the Commissioner or the members by majority vote shall invite; provided that when two representatives of a member club are present in Executive Session, one of them must own an equity interest in such club. The Commissioner shall be Chairman of the Executive Session and may appoint the Secretary of the Session. Action at any Executive Session shall constitute action of the League.

*See also* 1984 Resolution (Long Range Planning Committee; League meetings), App., p. 1984-4

**Conduct of Meeting**

5.9     Except in respect to matters covered specifically in the Constitution and Bylaws of the League, Roberts Rules of Order shall prevail in all meetings of the League; provided, however, that any action taken in any meeting of the League involving a matter not covered specifically in the Constitution and Bylaws of the League shall require the affirmative vote of not less than three-fourths or 20, whichever is greater, of the members of the League for approval.

**Action Without a Meeting**

5.10    Any action or resolution which may be taken or adopted at a League meeting may be taken or adopted by an instrument in writing signed by all members of the League.

# Article VI

## Executive and Other Committees

**Number**

6.1     The League shall have an Executive Committee composed of one (1) representative from each member club. Each representative shall be appointed by the member club by written notice to the Commissioner. Each club may name an alternate representative in the same manner. Said alternate shall have the same authority as the regular appointee in the absence of such appointee. Each appointee and alternate on the Executive Committee shall serve until his appointment is revoked in writing by the appointing member club.

> *See* 1997 Resolution FC-3 (permitting Commissioner to disapprove Executive Committee appointments), App., p. 1997-1
> 2004 Resolution FC-2 (permitting Commissioner to disapprove Executive Committee appointments), App., p. 2004-13

**Voting Qualifications**

6.2     At all meetings of the Executive Committee, each member of the Committee shall have one (1) vote.

6.3     All Executive Committee members must be either owners or holders of an interest or officers of member clubs in the League.

**Vacancies**

6.4     In case any vacancy occurs in the Executive Committee, a successor shall be appointed by the member affected by the vacancy.

**Powers and Duties**

6.5     The Executive Committee shall have the following powers and duties:

(A)     It shall have the power, after notice and hearing, to impose fines upon any member or any owner, director, partner, officer, stockholder, player, or employee of a member of the League.

(B)     It shall have the power, after notice and hearing, to increase or impose other or additional penalties after action of the Commissioner upon any matter submitted to it by the Commissioner for that purpose, pursuant to Section 8.13(B)

hereof; provided, however, that the Executive Committee shall have no power to modify, reduce, remit, or suspend any fine, penalty, or suspension imposed by the Commissioner under Section 8.13(A) hereof.

(C) It shall have the power and duty to investigate and report its findings and recommendations to the League on any matter referred to it by the Commissioner or the members.

(D) It shall have power to cause an audit of the books and records of the League and the Treasurer thereof and shall report its findings to the members and the Commissioner promptly.

(E) If the Commissioner dies, is unwilling, or is by reason of physical or mental disability unable to discharge his duties as Commissioner, the Executive Committee shall have the power to decide that an emergency exists in the League. It shall thereupon call a special meeting of the members at a time and place selected by the Committee. Such meeting shall be held within thirty (30) days after the declaration of such emergency, and notice of such meeting shall be given as in the case of any other special meeting. The purpose of such meeting shall be either to remove such Commissioner or to elect a new Commissioner or to appoint an acting Commissioner to serve until the next succeeding Annual Meeting.

(F) It is empowered to borrow in the name of the League such sum or sums of money as it may from time to time deem necessary or appropriate and to authorize the Commissioner and Treasurer, individually or jointly, to make and deliver in the name of the League a promissory note or notes evidencing any such loan and to pledge as security therefor any stocks, bonds, or other securities owned by the League.

(G) In the event that the Commissioner or any other officer of the League shall be convicted of a crime involving moral turpitude or be physically or mentally incapacitated to perform his duties or shall fail or refuse to abide by the Constitution and Bylaws of the League, and the Executive Committee finds that such action by such officer is detrimental to the best interests of the League, or in the event the Commissioner or any other officer of the League fails or is unwilling to perform his duties, then such Committee shall have the power after notice and hearing to suspend or remove said officer and to terminate any contract between such Commissioner or officer and the League.

**Approval**

6.6    All actions and decisions of the Executive Committee must be approved by the affirmative vote of not less than three-fourths or 20, whichever is greater, of the members of the Executive Committee provided, however, that:

(A)    Any decisions to proceed under Section 6.5(C), (D), or (E) hereof may be taken by majority vote of the Executive Committee; and

(B)    In any hearing involving charges against any club or whenever one club is making charges against another, the member club or clubs so involved shall not vote.

**Other Committees**

6.7    The Commissioner of the League may appoint such other committees as the League deems necessary and appropriate. All committees shall act under the direction and chairmanship of the Commissioner, who shall be a member "ex-officio" of each committee. The League shall pay each member of the committee the expenses of his attendance at committee meetings.

*See* 2004 Resolution BV-4 (Formation of a special committee to evaluate key financial aspects of the operations of all member clubs in relation to all revenue sources and opportunities and to make recommendations on these matters, including revenue and cost sharing alternatives), App., p. 2004-3

**Vacancies**

6.8    Subject to the provisions of Section 8.1 hereof, the Executive Committee shall have the power to fill by appointment any and all vacancies in any elective offices of the League for the balance of the term of such office or until a successor is duly elected for such office in the prescribed manner.

**Meetings**

6.9    At each meeting of the Executive Committee, the Commissioner of the League shall preside.

# Article VII

## Officers

**Officers**

7.1   (A)   The officers of the League shall be the Commissioner, a Secretary, and a Treasurer. The Secretary and Treasurer shall be appointed by the Commissioner. The Commissioner shall have the right to appoint any other officers or assistants thereto as he, in his sole discretion, deems necessary. The duties and compensation thereof shall be fixed by the Commissioner.

      (B)   The sole officer in each Conference of the League shall be the President thereof. The President of each Conference shall be selected by the affirmative vote of not less than three-fourths or 10, whichever is greater, of the members of the Conference for which such person is to serve as President.

**Voting**

7.2   The Commissioner shall be elected pursuant to and in accordance with the provisions of Section 8.1 hereof. Any other officer of the League shall be appointed by the Commissioner in accordance with the provisions of Section 7.1(A) hereof, provided, however, that if the Commissioner is unable so to do by reason of death or disability, then such officer shall be elected by the affirmative vote of not less than three-quarters or 20, whichever is greater, of the member clubs of the League.

**Commissioner**

7.3   The powers and duties of the Commissioner shall be such as are described in Article VIII hereof.

**Treasurer**

7.4   The Treasurer shall have charge and custody of, and be responsible for, all funds and securities of the League, receive and give receipts for monies due and payable to the League from any source whatsoever, and deposit all such monies in the name of the League in such depositories as the Commissioner may determine, keep full and accurate accounts of the receipts and disbursements of the League, and in general perform all of the duties incident to the office of Treasurer and such other duties as from time to time may be assigned to him by the Commissioner or the Executive Committee. In addition, the Treasurer shall:

      (A)   Pay all current bills and salaries after approval by the Commissioner;

          Article VII

(B)     Annually submit to the member clubs detailed financial statements;

(C)     He shall give a surety bond in the principal sum of not less than two hundred fifty thousand dollars ($250,000) for the faithful discharge of his duties, with the League named as obligee thereon. The premium shall be paid by the League; and

(D)     During the playing season, he shall report weekly to each member on attendance and receipts for all games played by member clubs during the preceding week. Such report shall also include any delinquency in any amounts owing to the League and such other information as the Treasurer deems expedient.

> *See also*   1983 Resolution (Finance; clubs' share of coaches' pension plans). App., p. 1983-1
> 1990 Resolution FC-2 (club financial reporting). App., p. 1990-1
> 1993 Resolution FC-1 (Deferred Compensation Reserve Mechanism) App., p. 1993-3
> 2004 Resolution FC-7 (club financial reporting). App., p. 2004-14

## Secretary

7.5     The Secretary shall keep records of all proceedings of the League and the minutes of the meetings of the members and of the Executive Committee in one or more books provided for that purpose, cause all notices to be duly given in accordance with the provisions of this Constitution, or as required by law, be custodian of the League records, keep a register of the Post Office addresses of each member, and in general perform all of the duties incident to the office of Secretary and such other duties as may from time to time be assigned to him by the Commissioner.

The Secretary will supply the member clubs with a record of the action taken at any meeting within twenty (20) days following the adjournment thereof and shall also furnish the member clubs formal minutes of each meeting within ninety (90) days following the adjournment of each meeting.

## Disability of Commissioner

7.6     If, by reason of physical or mental disability, the Commissioner is unable to discharge or perform the duties of his office, or is unwilling so to do, then, during any such period, the Executive Committee may require any other member of the Commissioner's staff to perform such duties of the Commissioner.

# Article VIII

# Commissioner

**Employment**

8.1    The League shall select and employ a person of unquestioned integrity to serve as Commissioner of the League and shall determine the period and fix the compensation of his employment. All voting requirements and procedures for the selection of or successor to the office of Commissioner shall be determined by the affirmative vote of not less than two-thirds or 18, whichever is greater, of the members of the League.

**Independence**

8.2    The Commissioner shall have no financial interest, direct or indirect, in any professional sport.

**Jurisdiction to Resolve Disputes**

8.3    The Commissioner shall have full, complete, and final jurisdiction and authority to arbitrate:

(A)    Any dispute involving two or more members of the League or involving two or more holders of an ownership interest in a member club of the League, certified to him by any of the disputants;

(B)    Any dispute between any player, coach, and/or other employee of any member of the League (or any combination thereof) and any member club or clubs;

(C)    Any dispute between or among players, coaches, and/or other employees of any member club or clubs of the League, other than disputes unrelated to and outside the course and scope of the employment of such disputants within the League;

(D)    Any dispute between a player and any official of the League;

(E)    Any dispute involving a member or members in the League or any players or employees of the members of the League or any combination thereof that in the opinion of the Commissioner constitutes conduct detrimental to the best interests of the League or professional football.

**Financial and Other Authority**

8.4    (A)    The Commissioner, on behalf of the League, may incur any expense which, in his sole discretion, is necessary to conduct and transact the ordinary business of the League, including but not limited to, the leasing of office space and the hiring of employees and other assistance or services; provided, however, that the Commissioner shall not have authority to incur any expense for any extraordinary obligations or make any capital investment on behalf of the League without prior approval by the Executive Committee.

       (B)    The Commissioner shall: (1) preside at all meetings of the League and the Executive Committee; (2) be the principal executive officer of the League and shall have general supervision of its business and affairs; and (3) approve for payment all proper charges.

**Policy and Procedure**

8.5    The Commissioner shall interpret and from time to time establish policy and procedure in respect to the provisions of the Constitution and Bylaws and any enforcement thereof.

**Detrimental Conduct**

8.6    The Commissioner is authorized, at the expense of the League, to hire legal counsel and take or adopt appropriate legal action or such other steps or procedures as he deems necessary and proper in the best interests of either the League or professional football, whenever any party or organization not a member of, employed by, or connected with the League or any member thereof is guilty of any conduct detrimental either to the League, its member clubs or employees, or to professional football.

**Game Officials**

8.7    The Commissioner shall select and employ a Supervisor of League Game Officials and shall further select and approve all game officials for all preseason, regular season, and postseason games. All fees and traveling expenses of game officials shall be paid by the League after approval by the Commissioner. It shall be the duty of each member to accept as game officials for any game such game officials as the Commissioner shall assign to such game.

**Public Relations Department**

8.8    The Commissioner shall have authority to establish a Public Relations Department for the League, and such department shall be under his exclusive control and direction. He may employ persons to staff said department and shall fix and determine the compensation thereof.

**Broadcasts and Television**

8.9    Subject to the provisions of Article X hereof, the Commissioner shall have the exclusive authority to arrange for and sell all broadcasting and television rights to the Conference Championship games and the Super Bowl game.

**League Contracts**

8.10    The Commissioner shall have authority to arrange for and negotiate contracts on behalf of the League with other persons, firms, leagues, or associations; provided, however, that except in instances where the Commissioner is otherwise specifically authorized herein, any contract involving a substantial commitment by the League or its members shall not be binding unless first approved by the affirmative vote of not less than three-fourths or 20, whichever is greater, of the members of the League.

**Reports**

8.11    The Commissioner shall render an annual report to the League members at each Annual Meeting.

**Bond**

8.12    The Commissioner shall file and maintain in effect a surety bond with the League in the sum of fifty thousand dollars ($50,000). Said bond shall be conditioned upon faithful performance by the Commissioner of his duties and shall name the League as obligee. The expenses for such bond shall be paid by the League.

**Disciplinary Powers of Commissioner**

8.13    (A)    Whenever the Commissioner, after notice and hearing, decides that an owner, shareholder, partner or holder of an interest in a member club or any player, coach, officer, director, or employee thereof, or an officer, employee or official of the League has either violated the Constitution and Bylaws of the League or has been or is guilty of conduct detrimental to the welfare of the League or professional football, then the Commissioner shall have complete authority to:

(1)   Suspend and/or fine such person in an amount not in excess of five hundred thousand dollars ($500,000), or in the case of an unrescinded unauthorized sale, transfer, or assignment of a membership or an interest therein to any person other than a member of the transferor's immediate family in violation of Section 3.5 hereof, the greater of (i) five hundred thousand dollars ($500,000), and (ii) an amount equal to 15% of the transaction value; and/or

(2)   Cancel any contract or agreement of such person with the League or with any member thereof;

(3)   In cases involving a violation of the prohibitions against tampering as set forth in Sections 9.1(C)(10) and (11), 9.2 and 12.1(B) hereof, award or transfer selection choices and/or deprive the offending club of a selection choice or choices; and

(4)   In cases involving a violation affecting the competitive aspects of the game, award selection choices and/or deprive the offending club of a selection choice or choices and/or cancel any contract or agreement of such person with the League or with any member thereof and/or fine the offending club in an amount not in excess of five hundred thousand dollars ($500,000), or in the case of an unrescinded unauthorized sale, transfer, or assignment of a membership or an interest therein to any person other than a member of the transferor's immediate family in violation of Section 3.5 hereof, the greater of (i) five hundred thousand dollars ($500,000), and (ii) an amount equal to 15% of the transaction value.

(B)   Whenever the Commissioner determines that any punishment that the Commissioner has the power to impose pursuant to Section 8.13(A), is not adequate or sufficient, considering the nature and gravity of the offense involved, he may refer the matter to the Executive Committee, with a recommendation that all or any part of the following additional or increased punishments or discipline be imposed:

(1)   Cancellation or forfeiture of the franchise in the League of any member club involved or implicated. If such occurs, the affected franchise shall be sold and disposed of under the provisions of Section 3.8(B) hereof;

(2) Cancellation or forfeiture of the interest in a member club or in the franchise thereof owned by a person involved or implicated therein. If such occurs, the interest held by any person so implicated shall be sold and disposed of under the provisions of Section 3.8(B) hereof;

(3) Declare one or more players of the offending club to be a free agent or that one or more players, and the contracts thereon held by the offending club, be assigned to another club or clubs;

(4) Assignment to another club or a nominee of the League of the lease on any stadium or playing field held for or owned by the defending club or any person owning any interest therein;

(5) Assignment to one or more clubs of players on the Selection or Reserve Lists of the offending club;

(6) Require the sale of any stock or interest in a member club of such offending person by the method and under the procedure specified in Section 3.8(B) hereof; and

(7) Make any other recommendation he deems appropriate.

The Executive Committee may impose such other or additional discipline or punishment as it may decide.

Any such ruling or decision by the Commissioner under the circumstances referred to in this Section 8.13(B), after approval or ratification by the affirmative vote of no less than three-fourths or 20, whichever is greater, of the members of the League, as aforesaid, shall be final, conclusive, and unappealable. Any party involved in or affected by any such decision agrees to release and waive any and all claims that such party may now or hereafter have or possess arising out of or connected with such decision against the Commissioner, individually and in his official capacity, as well as against the League and any officer or employee thereof and every member club therein and against any director, officer, shareholder, or partner thereof or the holder of any interest therein, whether for damages or for any other remedy or relief.

The word "person," for the purposes of this subparagraph (B) of Article VIII, Section 8.13, shall mean and include a member club and any owner, officer, stockholder, or partner thereof, or anyone holding any interest therein.

The membership of a member or the interest of any person owning a share or interest therein shall be suspended or terminated under this Section 8.13(B) only by resort to the following procedure:

    (a)  Any member of the Executive Committee or the Commissioner may prefer charges against a member or the holder of any interest therein on the ground that such a member or holder has violated the provisions of the Constitution and Bylaws or is or has been guilty of conduct detrimental to the League or to professional football. Said charges shall be in writing and filed with the Secretary of the League. The Commissioner shall first conduct such investigation as he deems appropriate. Upon the completion thereof, the Commissioner shall submit a copy of the charges by mail to each member club and to the member or person against whom such charges have been made and shall make his recommendation thereon to the member clubs.

    (b)  The member or person so charged may, within fifteen (15) days after receipt of the charges, file with the Commissioner its or his written answer thereto. The Commissioner shall thereupon deliver a copy of such answer to all members of the League.

    (c)  A special meeting of the League shall be called to hear charges; the time and place of such meeting shall be fixed by the Commissioner.

    (d)  At such hearing the Commissioner shall preside, unless he is the complainant. In such event, the presiding officer shall be elected by majority vote of the members attending the meeting.

    (e)  At the hearing the member or person so charged shall have the right to appear in person and by counsel. Strict rules of evidence shall not apply, and any testimony and documentary evidence submitted to the hearing shall be received and considered. Either the complainant or the member or person charged shall be entitled to an adjournment for a reasonable time to enable it or him to present rebuttal evidence.

    (f)  After considering all the evidence, the members shall vote upon the charges and fix the punishment. An affirmative vote of not less than three-fourths or 20, whichever is greater, of the members shall be required to sustain the charges and fix the punishment, excluding the

33                                              Article VIII

vote of any member in which the person charged has an interest.

(g) If the members vote to terminate the membership or the interest of any member in a club of the League, then the member club or person charged shall be required to dispose of such membership or interest in the affected club in accordance with the provisions of Section 3.8(B) hereof.

(C)   Whenever the Commissioner, after notice and hearing, determines that a person employed by or connected with the League or any member club thereof has bet money or any other thing of value on the outcome or score of any game or games played in the League or has had knowledge of or has received an offer, directly or indirectly, to control, fix, or bet money or other consideration on the outcome or score of a professional football game and has failed to report the same in the manner hereinafter prescribed, then the Commissioner shall have complete and unrestricted authority to enforce any or all of the following penalties:

(1)   Suspend such person indefinitely or for a prescribed period of time;

(2)   Bar such person from the League for life;

(3)   Cancel or terminate the contract of such person in the League or any member club thereof;

(4)   Require the sale of any stock, or other interest of such offending person in any member club by the method and under the procedure specified in Section 3.8(B) hereof;

(5)   Fine such person in an amount not in excess of five hundred thousand dollars ($500,000);

(6)   Cancel or declare to be forfeited any interest in a member club, or in the franchise thereof, owned by any person so involved. In such event, any interest of the offending person so implicated in the club or any stock owned by such person in any member club shall be sold under the procedure provided in Section 3.8(B) hereof;

(7)   Assign to another club or a member of the League the lease on any stadium or playing field held for or owned by the offending club or by any person owning any interest therein;

(8)   Assign to one or more other clubs players on the Selection or Reserve Lists of the offending club;

(9)   Impose such other or additional punishment or discipline as the Commissioner may decide.

If the person involved is a player in the League, such player is obligated to report immediately such incident to the head coach, owner, or managing officer of the club with which he is affiliated. If the person involved is either an owner, officer, director, stockholder, or a partner of a member club or owns or holds an interest therein, or is a coach or employee (other than a player) thereof, such report shall be made promptly to the Commissioner. Any decision by the Commissioner under the circumstances referred to in this Section 8.13(C) shall be final, conclusive, and unappealable. All persons involved in or affected by any such decision agree to release and waive any and all claims arising out of or connected with such decision that such person may now have or hereafter possess against the Commissioner, individually and in his official capacity, as well as against the League or any officer or employee thereof and against every member club therein and any director, officer, shareholder, or partner thereof or against the holder of any interest therein, either for damages or for any other remedy or relief. The word "person" wherever used in this subparagraph (C) of Article VIII, Section 8.13, shall mean and include a member club, or any club owner, official, officer, stockholder, partner thereof, or anyone holding any interest therein, as well as a coach, player, or other employee thereof; it shall also include an officer or employee of the League or any official employed by the League.

(D)   Whenever the Commissioner finds, in his sole and exclusive discretion, that any person, whether or not connected or affiliated with the League or a member club therein, is guilty of conduct detrimental to the best interests of the League or professional football, then in addition to his other powers prescribed in the Constitution and Bylaws of the League, the Commissioner shall have the right to bar and prohibit such person from entry to any stadium or park used by the League or its member clubs or affiliates for the practice or exhibition of professional football.

(E)   The Commissioner shall have authority to change, reduce, modify, remit, or suspend any fine, suspension, or other discipline imposed by the Commissioner and not requiring approval of the member clubs.

**Miscellaneous Powers of the Commissioner**

8.14 (A)  The Commissioner shall have the power, without a hearing, to disapprove contracts between a player and a club, if such contracts have been executed in violation of or contrary to the Constitution and Bylaws of the League, or, if either or both of the parties to such contracts have been or are guilty of an act or conduct which is or may be detrimental to the League or to the sport of professional football. Any such disapproval of a contract between a player and a club shall be exercised by the Commissioner upon written notice to the contracting parties within ten (10) days after such contracts are filed with the Commissioner. The Commissioner shall also have the power to disapprove any contract between any club and a player or any other person, at any time pursuant to and in accordance with the provisions of Section 8.13(A) of the Constitution and Bylaws.

(B)  The Commissioner shall have the power to hear and determine disputes between clubs in respect to any matter certified to him by either or both of the clubs. He shall also have the power to settle and determine any controversy between two clubs which, in the opinion of the Commissioner, involves or affects League policy.

(C)  The Commissioner shall have the right to propose amendments or modifications to the Constitution and Bylaws of the League by submitting such amendments or modifications in writing to the League no less than fifteen (15) days prior to the holding of any Annual Meeting of the League or recessed session thereof.

*See* 1990 Resolution SM-1 (confirming Commissioner's supervisory authority over the operations of Management Council, NFL Properties, and NFL Films), App., p. 1990-3
2004 Resolution BV-4 (Appointment by the Commissioner of members of a special committee to evaluate key financial aspects of the operations of all member clubs in relation to all revenue sources and opportunities and to make recommendations on these matters, including revenue and cost sharing alternatives), App., p. 2004-3

*See also* NFL Collective Bargaining Agreement ("CBA"), including Article XI (Commissioner Discipline)

# Article IX

## Prohibited Conduct

### Conflicting Interests and Prohibited Conduct

9.1    (A)    The violation of any of the provisions of this Article IX shall constitute conduct detrimental to the League and professional football.

      (B)    No member, or stockholder, officer, director, partner, or employee thereof, and no officer or employee of the League, including a game official, shall:

          (1)    Own or have any financial interest, directly or indirectly, in any other member club of the League;

          (2)    Directly or indirectly loan money to or become surety or guarantor for any other member club or any player, coach, or employee thereof, or holder of an interest therein;

          (3)    Directly or indirectly loan money or offer any gift or reward or become surety or guarantor for any game official or other official or employee of the League; or

          (4)    Act as the contracting agent or representative for any player or share or be financially interested in the compensation of any player in the League. Nothing herein shall prevent any player from negotiating on his own behalf or for his own account.

      (C)    No member, nor any stockholder, director, officer, partner, or employee thereof, or person holding an interest therein, nor any officer or employee of the League shall:

          (1)    Publicize or participate in the selection of any mythical All-League or All-Opponent team;

          (2)    Issue a free ticket of admission to a game to any visiting club or player thereof except pursuant to the Constitution and Bylaws of the League;

          (3)    Offer any gift or reward to a player, coach, or person connected with or employed by another member club for services promised, rendered, or to be rendered in defeating or attempting to defeat a competing club;

(4)  Publicly criticize any member club or its management, personnel, employees, or coaches and/or any football official employed by the League. All complaints or criticism in respect to the foregoing shall be made to the Commissioner only and shall not be publicized directly or indirectly;

(5)  Directly or indirectly pay a fine for a person who has been penalized;

(6)  Permit or state in any game program, or by means of its public address system or otherwise, that it, he, or they, offer or agree, either directly or indirectly, to pay or give money or any other thing of value to any member of the public; neither shall any club or other person referred to in this Section 9.1 be permitted to participate at any time, directly or indirectly, in any lottery of any kind, except that no provision of the Constitution and Bylaws shall prohibit a member club or any broadcasting or other entity with which a club has a contractual relationship from accepting advertising on club radio broadcasts, preseason telecasts, highlight shows or in game programs or stadiums from any state or municipal lottery or off-track betting organization that does not offer any lottery or other betting scheme based on the outcome of or any performance in any NFL game or in any other actual sporting event; provided that such advertising shall not (a) in any way involve club, coach, player, or other club employee affiliation with or endorsement of such lottery or off-track betting, nor (b) include promotion of any lottery game or betting scheme having a sports theme;

*See*  1985 Resolution G-2 (In-Stadium Giveaways), App., p. 1985-3
     1993 Resolution BC-2 (Lottery and Off-Track Betting Organization Advertising), App., p. 1993-1

(7)  Own, directly or indirectly, any interest whatsoever in a professional football organization, league, club, or team not a member of the League, except that these prohibitions shall not apply to the direct or indirect ownership by NFL owners of interests in clubs of the Arena Football League playing in the home territory of the owner's NFL club, provided that any players who have not executed an NFL Player Contract and who participate for such Arena League club shall be available to be signed by any National Football League club, subject to customary eligibility rules. Nor shall these prohibitions bar participation of NFL member clubs in an international Spring Football League to commence play no later than the Spring of 1991;

*See* 2002 Bylaw Proposal No. 6 (Arena Football League players).
App., p. 2002-1

(8) Offer or pay a player or coach, and no player or coach may
receive any bonus, money, or thing of value, for winning any
game played in the League.

No club or any representative thereof, shall offer to pay,
directly or indirectly, to a player, and no player shall receive,
any bonus of any kind unless such bonus provision is attached
to and/or incorporated in the contract of such player;

(9) Fail to present its team at the time and place where it is
scheduled to play in a preseason or regular season game,
unless such failure is caused by any unavoidable accident in
travel or by conditions beyond the control of the member;

(10) Tamper with players of college teams who are not eligible for
play in the League under the eligibility rules thereof.

(11) Tamper with a player or coaches or other employee under
contract to or the property of another member club;

(12) Offer, agree, conspire, or attempt to illegally influence the
outcome of the member or fail to suspend immediately any
officer or player or other employee of the member who shall
be proven guilty of offering, agreeing, conspiring, or
attempting to influence the outcome of any game or be
interested in any pool or wager of any game in which a
member club participates;

(13) Dispense beer or other beverage in NFL stadia except by
pouring into cups;

(14) Use at any time, from the start to the finish of any game in
which a club is a participant, any communications or
information gathering equipment, other than Polaroid-type
cameras or field telephones, including without limitation
videotape machines, telephone tapping or bugging devices, or
any other form of electronic device that might aid a team
during the playing of a game;

(15) In respect to minor league clubs and the Canadian Football
League, the following prohibitions shall apply to all clubs in
the League:

(a)   No club in the League shall own or have any financial interest, directly or indirectly, in any minor league club, except that these prohibitions shall not apply to the direct or indirect ownership by NFL owners of interests in clubs of the Arena Football League playing in the home territory of the owner's NFL club, provided that any players who have not executed an NFL Player Contract and who participate for such Arena League club shall be available to be signed by any National Football League club, subject to customary eligibility rules.

(b)   No club in the League shall, directly or indirectly, loan money to, nor make a gift or contribution to, nor become a surety or guarantor for any minor league club or for any player, coach, employee, owner, stockholder, officer, director, or partner therein, or to any holder of any interest in any minor league club.

(c)   The restrictions on the clubs in this League as set out in subparagraphs and (a) and (b) above, shall likewise apply to all owners, stockholders, officers, directors, partners, agents, representatives, or employees of clubs in the League, as well as to any other person owning any interest in any club in this League.

A "minor league club" shall include any professional football club not a member of this League, which has been designated by the Commissioner of this League as a minor league club.

Should any club in the League violate the provisions of this 9.1(C)(15), then, in addition to all other remedies available to the Commissioner under this Constitution and Bylaws, such club guilty of such violation shall not have the right to employ as a football player any player who was under contract to or played for such minor league club at the time of any such violation.

(D)   No player, coach, or manager shall, directly or indirectly, own stock or have any financial interest in the ownership or earnings of any member club of the League, other than in the member club with whom he is employed, and then only under an agreement approved by the Executive Committee stipulating for the immediate sale (and the terms thereof) of such stock or financial interest therein in the event of his transfer to, employment by, or association with, another member club. A player, coach, or manager financially interested in another member club shall be ineligible to play for, coach, or manage the club of any other member while, in the opinion of the Executive Committee, such interest is retained by or for him, directly or indirectly.

(E)     No player, coach, manager, or owner may remove his team, nor order his team removed, from the field during the playing of a game, regular or preseason, except at the direction of the referee. Should any club in this League violate the provisions of this subsection 9.1(E), then in addition to all other remedies available to the Commissioner under this Constitution and Bylaws, such club guilty of such violation shall face possible forfeiture of any victory or tie achieved in such game and in addition incur sole liability for financial losses suffered by the opposing team and any other member clubs so affected. All such determinations shall be made by the Commissioner.

(F)     No member shall permit access to the NFLNet, e-mail, facsimile or other similar means of communication by non-club personnel.

**Tampering**

9.2     If a member club or any officer, shareholder, director, partner, employee, agent, or representative thereof or any person holding an interest in said club shall tamper, negotiate with, or make an offer, directly or indirectly, to a player, or his representative, on the Active, Reserve, or Selection List of another member club, then unless the offending club shall clearly prove to the Commissioner that such action was unintentional, the offending club, in addition to being subject to all other penalties provided in the Constitution and Bylaws, shall lose its selection choice in the next succeeding Selection Meeting in the same round in which the affected player was originally selected in the Selection Meeting in which he was originally chosen. If such affected player was never selected in any Selection Meeting, the Commissioner shall determine the round in which the offending club shall lose its selection choice. Additionally, if the Commissioner decided such offense was intentional, the Commissioner shall have the power to fine the offending club and may award the offended club 50% of the amount of the fine imposed by the Commissioner. In all such cases the offended club must first certify to the Commissioner that such an offense has been committed.

*See* 1998 Resolution G-2 (tampering/non-player personnel), App., p. 1998-13
        2000 Resolution G-1B (tampering/non-player personnel), App., p. 2000-1
        2001 Resolution G-4 (tampering/non-player personnel), App., p. 2001-3
        2004 Resolution G-1 (tampering/non-player personnel), App., p. 2004-15
        2004 Resolution JC-1A (tampering/non-player personnel), App., p. 2004-16

9.3     (A)    (1)   No coach or administrative or supervisory employee, as hereinafter defined, may be employed by any member club of the League without the prior approval of the Commissioner. All coaches must have a written contract. Such contract shall be filed in the League office promptly following execution, and the terms thereof must be approved by the Commissioner. An administrator or supervisory employee, for the purpose of this Section, shall mean a general manager or any assistant to the president or executive officer of the club.

(2)   Every contract with any employee of the League or of a club therein shall contain a clause wherein the employee agrees to abide and be legally bound by the Constitution and Bylaws and the Rules and Regulations of the League, as well as by the decisions of the Commissioner, which decisions shall be final, conclusive, and unappealable. Such contract shall provide further that the contracting parties, if involved or affected in any manner by a decision of the Commissioner, agree to release the Commissioner and to waive every claim he, they, or it have against the Commissioner, individually and in his official capacity, as well as against the League, each and every member club thereof, and any and all directors, officers, stockholders, partners, or holders of an interest therein, for damages and for any other claims or demands arising out of or connected with any decision of the Commissioner. Every written employment contract with any non-player employee of a club shall be filed in the League office promptly following its execution and shall provide: that such contract sets forth the entire agreement between the parties; that no oral agreements, and no other written agreements, except as are attached to the contract or specifically incorporated by reference therein, exist between them; that such written contract (including agreements attached thereto or incorporated therein) sets forth the entire agreement with respect to the employee's services for the club; and that neither party will rely on any agreement or understanding not reduced to writing and specifically incorporated into such employment contract prior to its execution or when subsequently amended.

(B)   No owner or person holding any interest in a member club, nor any officer, stockholder, director, or partner thereof, nor any officer or employee of the League or a member club thereof, shall enter the dressing room of a game official.

(C)   Subject to the provisions of Section 17.10 hereof for purposes of this subsection, a player shall be deemed to be an "active member of the Armed Forces" until he is discharged therefrom or listed as a

      Article IX

reserve member of the Armed Forces. No active member of the Armed Forces may play or practice with a club in the League, subject to the following limitations:

(1) In the event of a declaration of war, the Commissioner has the right to suspend this requirement for the duration thereof.

(2) This provision shall not apply to participation in preseason games.

(3) This provision shall not apply to any player who has been given a conditional release from the Armed Forces or is on terminal leave.

(4) Active members of the Armed Forces may play or practice with a club provided:

(a) The club, at the time the player is inducted into the Armed Forces of the United States, continues to carry such player as one of its active players and notifies the Commissioner to that effect at the time of said induction; and

(b) Such player receives permission from his commanding officer in the military service to play or practice with such club.

(D) No club, nor any coach, representative, or employee thereof, shall use or employ any mechanical or other equipment or device in connection with the staging or playing of any game, except such as has been normally and commonly used in games in former seasons in the League; no electronic magnifiers or loud speaker systems may be used or employed either from the stands, bench or sidelines to impart any information or instructions to players engaged in play on the field, but such instruction or information shall only be given orally or through substitution or through coach-to-quarterback radio systems approved by the membership.

(E) No films of prior games shall be shown or displayed on or by means of television other than complete game films. Such film shall not be stopped during any showing; provided, however, that in the staging of a regular quarterback show of a club, clips or portions of game films may be shown. In connection with the showing of films, no employee, officer, owner, or representative of a club shall make any comment or express any opinion, publicly or for publication, on the quality of the officiating or that any play shown was or was not illegal.

43                    Article IX

(F)   No bonus may be paid to a player or players for winning a particular game; neither may remuneration or gifts of any kind other than those listed in the contract of a player be announced, promised, or paid directly or indirectly by a member club or by any person connected with or employed by a club.

(G)   No blanket remuneration or bonuses shall be paid or given to players at any time.

(H)   There shall be no contact work prior to a club's official preseason camp. In any offseason camp, clubs may use helmets and protective pads for elbows and knees, but all other pads are prohibited. Blocking dummies, sleds, and similar apparatus may be used in offseason camps at club's option.

(I)   All clubs must pay the travel expenses of the players to training camp, and if a player thereafter is included on the Active List of the club for the first regular season game, travel expenses to training camp for that player, if previously paid, may be deducted from the salary of the player. If a player is waived out, then the waiving club shall pay the travel expenses of the player for the return trip to his house, provided, however, that if the player is claimed by another club under waivers, or is sold or traded, then the club acquiring the player shall pay the travel expenses of such player incurred in connection with reporting to the new club.

*See* CBA, Article XXXVII (Travel Expenses to Training Camp)

44                                                  Article IX

# Article X

## Broadcasting and Television

### Contract Conditions

10.1   Any contract entered into by any club for telecasting or broadcasting its games, and the sponsor or sponsors of each game telecast or broadcast pursuant to such a contract, must be approved in writing by the Commissioner in advance of such telecast or broadcast.

### Television Restrictions

10.2   Subject to the limitations and exceptions set forth in this Article, member clubs participating in any game are authorized to telecast and broadcast such game anywhere except as follows:

   (A)   No club shall cause or permit a game in which it is engaged to be telecast into any area included within the home territory of any other club on the day that such other club is engaged in playing a game at home;

   (B)   No telecast of a home game within the home territory of a club shall be caused or permitted, except by agreement between the participating clubs;

   (C)   Each home club grants to the visiting club the exclusive right to permit or license the telecast of the game being played between them back to the home territory of the visiting club.

The Commissioner will not approve any contracts that do not contain a provision stating that the contract is subject to Article X as now or hereafter in effect.

*See*   1984 Resolution BC-5 (preseason game telecast consent by visiting club), App., p. 1984-1

1984 Resolution (Broadcasting: preseason television rights contract requirements), App., p. 1984-3

**Television Income**

10.3   All regular season (and preseason network) television income will be divided equally among all member clubs of the League regardless of the source of such income, except that the member clubs may, by unanimous agreement, provide otherwise in a specific television contract or contracts.

*See* 1998 Resolution BC-7 (payments to participants in nationally televised preseason games), App., p. 1998-8

## Network Provisions

10.4   In any network television contract in effect in the League after 1970, the following provisions shall apply:

(A)   Each regular season road game of the New York Giants, New York Jets, Oakland Raiders, and San Francisco 49ers will be televised live back to the home territory of the club participating in the road game.

(B)   Without the prior consent of the home team, no road game of either the Oakland Raiders or the San Francisco 49ers respectively may be televised back to the home territory of the other club on any day when the other club is playing a game at home.

## Championship Games

10.5   The sale of radio and television and film rights for the Super Bowl game and Conference Championship games shall be under the sole jurisdiction of the Commissioner and be subject to the provisions of Article X.

In the Super Bowl game and Conference Championship games:

(A)   The participating clubs may broadcast by radio on a non-exclusive basis from a station located in its home territory; provided, (a) said club contributes to the gross receipts of the game (to be divided in the same manner as game receipts are distributed) a fair and equitable sum fixed by the Commissioner in his sole and absolute discretion; and (b) the Commissioner approves all sponsors and broadcasters involved in the game.

(B)   No television station may carry or broadcast the game if its signal is visible in the home territory (75 miles) of the home club in the city where the game is being played. The Commissioner's decision in this matter shall be final.

**Broadcast Facilities**

10.6    Each club when playing at home shall provide adequate space for use of the visiting club in telecasting and/or broadcasting each game.

**Player Depiction and Club Promotion**

10.7    The player grants to the club controlling his contract and to the League severally and jointly the privilege and authority to use his name and/or picture for publicity and/or advertising purposes in newspapers, magazines, motion pictures, game programs and annual roster manuals, radio material, television telecasts, and all other publicity and/or advertising media, provided such publicity and/or advertising does not in itself constitute an endorsement by that individual player of a commercial product.

**Judgment**

10.8    All provisions of Article X are intended to conform to and are subject to the Final Judgment of the United States District Court for the Eastern District of Pennsylvania, entered December 28, 1953, and as thereafter modified, against the National Football League and certain of its member clubs. In the event of any conflict between the Constitution and Bylaws and said judgment, the provisions of said Final Judgment, as modified, shall prevail.

**Replays in Stadiums**

10.9    In all NFL stadiums with the capability of displaying television replays on the scoreboard of action occurring on the field, such displays may be shown at any time during the game, provided, however, that the selection of material for the replays shall be at the home club's discretion.

        *See also* CBA, including Article LV (Miscellaneous/Appearances)

# Article XI

## Playing Rules

**Official Rules**

11.1    The playing rules of the League shall be those set out in the Official Playing Rules of the National Football League.

**Amendment of Rules**

11.2    Playing rules may be amended or changed at any Annual Meeting by the affirmative vote of not less than three-fourths or 21, whichever is greater, of the members of the League, provided the proposed amendment or change has been presented to the League in writing fifteen (15) days prior to the Annual Meeting or a recessed session thereof, or provided the proposed amendment or change carries the unanimous approval of a duly appointed standing committee of the League vested with the authority to make a recommendation on proposed playing rules changes, in which case notice of at least 12 hours prior to the vote is required; and further provided that all playing rules proposals from clubs must be submitted in writing to the League office a minimum of thirty (30) days in advance of any Annual Meeting of the League. Otherwise unanimous consent is required for any amendment to the Playing Rules.

**Rules Committee**

11.3    Each member club of the League shall have one representative only on the Rules Committee.

# Article XII

## Eligibility of Players

**General Rules of Eligibility**

12.1   (A)   No person shall be eligible to play or be selected as a player unless (1) all college football eligibility of such player has expired; or (2) at least five (5) years shall have elapsed since the player first entered or attended a recognized junior college, college, or university; or (3) such player receives a diploma from a recognized college or university prior to September 1st of the next football season of the League. The expression "recognized junior college, college, or university" shall be interpreted to mean any college listed in the Blue Book of College Athletics, published by the Athletic Publishing Company. P.O. Box 931, Montgomery, Alabama 36101-0931 and/or the Directory of Postsecondary Institutions, U.S. Dept. of Education, Washington, D.C.

The fact that a player has college eligibility remaining in another sport other than football shall not affect his eligibility under this Section, provided the player meets all other qualifications hereunder.

Despite the foregoing, if four college football seasons shall have elapsed since the player first entered or attended college and if such player did not at any time during such period participate in college football, such player shall be eligible for selection.

Special consideration shall be granted to those players whose colleges and/or conferences allow five years of football eligibility, during all of which the player may participate full-time, as distinguished from those who "red-shirt," i.e. do not participate during one particular year. If a player under the circumstances described above has completed four years of participating football eligibility and elects not to avail himself of his fifth year, such player shall be eligible for selection in this League.

Any player who does not attend college is automatically eligible for selection in the next principal draft that is conducted after four football seasons have elapsed since the player discontinued high school, and if not selected at that time, the player is eligible thereafter to be signed as a free agent, unless he subsequently attends college and participates in college football, in which case he shall be subject to Section 12.1(D) below. If four seasons have not elapsed since the player discontinued high school, he is ineligible for selection, but may apply to the Commissioner for special eligibility.

49                                    Article XII

*See* NFLNet Memorandum, February 16, 1990 (establishing policy and procedure pursuant to Article VIII, Section 8.5, permitting college players to apply for special draft eligibility if at least three football seasons have elapsed since graduation from high school). App., p. 1990-4

(B)     No player may be signed to a contract or any other document (including a letter of intent), directly or indirectly, until completion of all football games, including postseason bowl games in which the team of the school or college of such player is to participate and in which the player is to participate; such provision shall also apply to college football players competing in football in any season ending after that date when the original class of such player shall have been graduated. If a club violates this Section, it shall be subject to punishment by the Commissioner. Such punishment shall provide for the loss of selection choices of the offending club in the next or in succeeding Selection Meetings up to and including the entire Selection List. All negotiating rights to the player or players so involved shall be awarded to the club lowest in the League standings, excluding the offending club, at the time of the last Selection Meeting.

(C)     A diploma of graduation issued by a recognized college or university to a student under an accelerated course or program shall be acceptable for eligibility purposes despite the fact that the student actually attended such institution for a period of less than four (4) years.

(D)     No person who has never been selected in a Selection Meeting and who has college athletic eligibility remaining and who registers at a college for the fall term or semester may be signed to a contract by a club in the League until the close of the next succeeding Selection Meeting of the League, at which meeting he would be eligible for selection regardless of how many seasons in excess of five have elapsed since he first registered at a college and regardless of how many Selection Meetings for which he was eligible have transpired.

(E)     No person who plays college football after the opening date of the training season in any year may play football in the League during the balance of the same calendar year.

(F)     No person eligible for the Selection Meeting in any calendar year may be signed to a contract with a club in the League until the Selection Meeting in that year.

(G)     A player, either under contract to or on the Reserve or Selection List of a League club, shall be a member of the team of the club until the Commissioner receives notice from such club that other League clubs are free to negotiate or contract with said player. Upon receipt of any such notice, the Commissioner shall promptly notify each other League club thereof. Until the notice is given by the Commissioner, no other club may sign a contract nor negotiate with such player unless prior written permission thereof has been given by the club owning rights to such player.

(H)     Any player who expects to graduate before his college football eligibility expires may become conditionally eligible for the League's principal Selection Meeting (i.e., the 12-round annual draft that includes approximately 373 choices) by declaring to the Commissioner in writing his intention to graduate before the League's next succeeding regular season, which declaration must be in the Commissioner's office no later than 15 days before the date of the opening of the principal Selection Meeting. The Commissioner has the authority to change the receipt date of the written declaration if he deems such change appropriate. If a player's written declaration is received in timely fashion and the League office determines that he has a reasonable opportunity to graduate before the next succeeding regular season of the League, all member clubs will be advised of his conditional eligibility for the principal Selection Meeting. Any player so designated cannot be signed to an NFL Player Contract, regardless of whether he is selected in the Selection Meeting, until the League office is advised by an appropriate authority at the player's college that he has graduated. Any player who makes such a declaration to graduate and who does not graduate before the next succeeding regular season of the League will be ineligible in the League for that season and postseason; and, if such player has been selected in the principal Selection Meeting, the selecting club will forfeit its selection choice. Any player who fails to make a timely written declaration of his intent to graduate but does graduate before his college football eligibility expires and before the beginning of the next succeeding regular season of the League will be eligible for a supplemental draft.

*But see* CBA, Article XVI (overriding this provision and limiting draft to seven rounds)

(I)     If a player who was not eligible for the principal Selection Meeting becomes eligible between the time of such principal Selection Meeting and the next succeeding regular season of the League, he will be eligible for a supplemental draft, subject to all provisions of subsection (J) below.

51                                           Article XII

(J)   Whenever a player or players become eligible for the League subsequent to the principal Selection Meeting, a supplemental draft will be conducted to admit such players. Supplemental draft procedures are as follows:

(1)   The League office will schedule a maximum of one supplemental draft in any year—to be conducted no later than the seventh calendar day prior to the opening of the first training camp. To be eligible for a supplemental draft, a player's petition for special eligibility must be approved by the League office and his name promulgated to clubs no later than 10 calendar days prior to the last day on which a supplemental draft can be conducted.

(2)   The League office will conduct each supplemental draft by electronic hookup with member clubs.

(3)   Immediately before each supplemental draft is to begin, the League office will conduct a lottery to determine the selection order of member clubs. Procedures of the lottery are:

(a)   A first step will be taken in which the order of the first round of the immediately prior principal draft, exclusive of any trades affecting that prior draft, will be weighted by assigning the weakest club the greatest number of lottery chances and the strongest club the fewest number (i.e., the weakest club will have its name in the drawing 32 times, the next weakest 31 times, etc., until the Super Bowl game winner will have its name in once.)

(b)   Lottery chances for the weakest teams, i.e., those which won no more than six games in the prior regular season, will be placed together in a container and drawn to determine a number of places in the selection order equal to the total number of those teams.

(c)   Lottery chances for the remaining teams, with the exception of the playoff teams, next will be placed together in a container and drawn to determine the places following those determined under (b) above.

(d)   Lottery chances for the playoff teams next will be placed together in a container and drawn to determine the remaining places in the selection order.

(4)   The Commissioner will determine an appropriate per-selection time limit for each supplemental draft.

(5)   Trades involving draft choices may not be made after clubs have been informed of the priority of a supplemental draft until the conclusion of such draft.

(6)   Each supplemental draft will proceed by rounds through 12 rounds.

(7)   Any club that selects a player in a supplemental draft must forfeit a choice in the same round in the next succeeding principal draft.

(8)   Any club that does not own a choice in a given round of the next succeeding principal draft may not select a player in that same round in a prior year's supplemental draft.

**Rules and Regulations**

12.2   (A)   A club, at its option, may adopt individual club rules and regulations not inconsistent with or contrary to the Constitution and Bylaws of the League and/or the Rules and Regulations of the League. The club shall give players reasonable notice of all rules and regulations adopted by the club. Any club adopting rules and regulations may suspend and/or fine a player for violation thereof.

(B)   The League may adopt League Rules and Regulations, and any Rules and Regulations so adopted must be printed on the reverse side of the standard form of player contract used by the League.

12.3   (A)   No person employed by a club as a coach, trainer, or in any capacity other than as a player, may play for that club or any other club in that same year unless said employee is:

(1)   Signed to a current year NFL Player Contract; and

(2)   Counted within the first applicable player limit of the preseason and all subsequent player cut downs. If such person is released through waivers or placed on the Reserve List after the first applicable player limit is in effect, he cannot return to any club in the League in the same season as an active player.

(B)   Whenever a player under contract or option to a member club in the League fails to report to that club prior to its first regular season game, then such player, without the prior consent of the Commissioner, may not play with any club in the League during that same season if said player played in any other league, or with any other team other than in or for the League during that same calendar year, unless such other league or other club in which or for whom such player played is designated by the Commissioner of

the League as a minor league; the decision of the Commissioner shall be final.

(C)   No club may sign any player who, in the same year, has been under contract to a Canadian Football League club at the end of the CFL club's season (regular season or postseason, whichever is applicable).

(D)   No player under contract to a club in the League shall be permitted to participate in any football game for or against any team, group, or organization outside the League, except in games officially approved and sanctioned by the League.

(E)   (1)   If a player reports to the club at its preseason training camp and is, in the opinion of the club physician, physically unable to perform his services as a player, the club will have the following options:

(a)   Place the player on waivers with the designation "Failed Physical;" or

(b)   Place him in the category of Active/Physically Unable to Perform. Players in this status count on the Active List and are allowed to attend meetings and undergo non-contact rehabilitative workouts up to the time of the second roster reduction in the preseason, at which time the club must either request waivers on the player as "Failed Physical," place him on Reserve/Physically Unable to Perform (see (c) below), trade the player, or continue to count him on the Active List. If the player continues to count on the Active List, he will be considered to have passed the club's physical examination. Any player in the status of Active/Physically Unable to Perform who appears in contact work during practice or any preseason game will be subject to all rules applicable to players who have passed the club's physical examination; or

(c)   Place him in the category of Reserve/Physically Unable to Perform. The following rules apply:

(i)   Upon receiving notification that the player has been placed on Reserve/Physically Unable to Perform, the League office will arrange to send the player to a neutral physician appointed by the Commissioner;

(ii) Players on Reserve/Physically Unable to Perform are ineligible for all games of the club and for all practice sessions, subject to the conditional practice described below. All players on Reserve/Physically Unable to Perform may attend meetings;

(iii) Commencing the day after the club's sixth regular season game (including any bye week), and continuing through the day after the club's ninth regular season game (including any bye week), clubs are permitted to begin practicing players on Reserve/Physically Unable to Perform for a period not to exceed 21 days. At any time during the 21-day practice period or not later than 4:00 p.m., New York time, on the day after the conclusion of the 21-day period, clubs are permitted to restore such players to their Active/Inactive list;

(iv) A club may at any time of the season request waivers on a player who is on Reserve/Physically Unable to Perform, provided, however, that if the player has not yet passed the club's physical examination, the waiver request will be marked "Failed Physical." Further, such player on waivers cannot return in the same season to the club which requested waivers;

(v) If the player is not restored to the Active/Inactive List by 4:00 p.m., New York time, on the day after the conclusion of the 21-day period and the club elects to continue to carry the player on Reserve/Physically Unable to Perform, the player shall not be permitted to practice during the remainder of the season, including the postseason;

(vi) Players on Reserve/Physically Unable to Perform shall not be traded; and

(vii) Clubs are required to notify the League office on the first day of the 21-day practice period, which information shall be promulgated to clubs on that day's personnel notice.

(2) No club will be permitted to use any of the procedures of Physically Unable to Perform unless it reports to the League office at the time physical examinations are given that the involved player has failed his physical.

(3)   If a player reports to a club at its preseason training camp and passes the club's physical, then later suffers an injury unrelated to football, the club may place him on Reserve as Non-Football Injury or Illness (N-F/I). Such a player may not play or practice with that club for the remainder of the season, including postseason, under any circumstances. Players on Reserve N-F/I shall not be traded. If suspended or placed on Reserve N-F/I, players shall not be entitled to compensation.

(4)   The club may also use the designation N-F/I for a player who fails the training camp physical, but said player will be governed by the provisions of 12.3(E)(1). Player shall not be entitled to compensation.

12.4   (A)   After the first mandatory roster reduction in the preseason and for the remainder of the season, a member club is permitted to transport a free agent player to its home city or any other site for two visits, one for the purpose of a tryout and/or physical examination, the other for a physical examination only. A visit for the purpose of a physical examination is limited to one day only, while a visit for a tryout and physical examination is limited to two days, but the tryout portion of the two-day visit must be completed in one day. The player's presence with the club must be reported to the League office prior to the completion of the visit. The League, in turn, shall promulgate all such visits to member clubs. Helmets and protective pads for elbows and knees are permitted for tryouts; all other pads are prohibited. The involved player or players shall not be on the club's practice field at the same time as regular practice is being conducted. The club shall be allowed a maximum of two players from its Active List to participate with the tryout player during his tryout. Multiple tryouts of the same player in the same session by a club are prohibited unless, following the most recent tryout, the player is placed under contract and released by another club in the League. Nothing in this subsection is to be interpreted in any way as a modification of Section 17.4(B) of this Constitution and Bylaws, and therefore such player may not participate in practice with the playing squad. No remuneration of any kind, except normal travel and lodging expenses, may be paid to such player while not under contract. Players tried out under this rule are not subject to the provisions of Section 17.4(C), which restrict the return to a former club.

The above restrictions also apply to any tryouts and/or physical examinations conducted for or administered to free agent players at any location, even if the club does not transport the player to the site.

(B)   A player on the Reserve List of a member club may, with the permission of that member club, try out with another member club on one day only and only if the club granting permission notifies the Commissioner's office of such permission by NFLNet, e-mail, facsimile or other similar means of communication, and the Commissioner's office, in turn, notifies each member club in advance of such tryout through the daily notice that such permission has been granted. Subsequently, the club conducting the tryout must notify the Commissioner's office by NFLNet, e-mail, facsimile or other similar means of communication, of the date of the player's presence with that club prior to the completion of such tryout.

*See also*   CBA, including Article XVI (College Draft), Article XVII (Entering Player Pool), and Article XXXII (Other Provisions)