**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | MDL No. 2323<br>No. 12-md-2323-AB |
| THIS DOCUMENT RELATES TO:<br><br>LARRY BARNES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL FOOTBALL LEAGUE, et al.,<br><br>Defendants. | CIVIL ACTION<br>Case No. 12-cv-01024-AB |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE
NFL DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

MUNGER, TOLLES & OLSON LLP
RONALD L. OLSON (State Bar No. 44597)
*ron.olson@mto.com*
JOHN W. SPIEGEL (State Bar No. 78935)
*john.spiegel@mto.com*
JOHN M. RAPPAPORT (State Bar No. 254459)
*john.rappaport@mto.com*
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
Telephone:   (213) 683-9100
Facsimile:   (213) 687-3702

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
BRAD S. KARP *(Pro Hac Vice)*
*bkarp@paulweiss.com*
THEODORE V. WELLS, JR. *(Pro Hac Vice)*
*twells@paulweiss.com*
BRUCE BIRENBOIM *(Pro Hac Vice)*
*bbirenboim@paulweiss.com*
BETH A. WILKINSON *(Pro Hac Vice)*
*bwilkinson@paulweiss.com*
LYNN B. BAYARD *(Pro Hac Vice)*
*lbayard@paulweiss.com*
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:   (212) 373-3000
Facsimile:   (212) 757-3990

Attorneys for Defendants
NATIONAL FOOTBALL LEAGUE
and NFL PROPERTIES LLC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY BARNES, et al., | CASE NO. CV 11-08396 R(MANx) |
| Plaintiffs, | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE NFL DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |
| v. | |
| NATIONAL FOOTBALL LEAGUE, et al., | |
| Defendants. | Date:           February 6, 2012<br>Time:           10:00 AM<br>Courtroom:   8<br>Judge:          Hon. Manuel L. Real |
| | Notice of related cases:<br>No. CV 11-08394 R (MANx)<br>No. CV 11-08395 R (MANx) |

# Table of Contents

**Page**

Table of Authorities ................................................................... ii

Preliminary Statement ................................................................ 1

Argument .................................................................................. 3

I.      PLAINTIFFS' CLAIMS ARE PREEMPTED BY THE LMRA .................. 3

      A.     Plaintiffs' Claims Substantially Depend on an Analysis of the Terms of the CBAs ......................................................... 4

      B.     Plaintiffs' Claims Against the NFL Arise Under the CBA ............... 8

      C.     Plaintiffs Are Subject to the CBAs in Effect During Their Playing Careers ............................................................ 11

II.     PLAINTIFFS FAIL TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED ............................................................ 12

      A.     Plaintiffs' "Negligence-Monopolist" Claim is Fiction ................. 12

      B.     Plaintiffs Fail to State a Negligence Claim Against NFLP .............. 13

      C.     Plaintiffs Fail to State Claims for Fraud and Negligent Misrepresentation ........................................................ 14

      D.     The SAC Fails to State a Claim for Conspiracy ........................ 16

      E.     Plaintiffs Have Not Alleged Sufficient Facts to Rescue Their Time-Barred Negligence Claims ........................................ 16

Conclusion ............................................................................... 19

**Table of Authorities**

CASES                                                                                   PAGE(S)

*Adams* v. *I-Flow Corp.*,
   No. 09-CV-09550, 2010 WL 1339948 (C.D. Cal. Mar. 30, 2010) ................. 17

*Artiglio* v. *Corning, Inc.*,
   18 Cal. 4th 604, 76 Cal. Rptr. 2d 479 (1998) .................................................... 9

*Atwater* v. *Nat'l Football League*,
   626 F.3d 1170 (11th Cir. 2010) ................................................................. 8, 11

*Baidoobonso-Iam* v. *Bank of America (Home Loans)*,
   No. 10-CV-9171, 2011 WL 3103165 (C.D. Cal. July 25, 2011) ..................... 17

*Barnes* v. *Nat'l Football League*,
   No. 11-CV-08396, Dec. 8, 2011 Order at 1-2 .......................................... *passim*

*Bell Atlantic Corp.* v. *Twombly*,
   550 U.S. 544 (2007) ...................................................................................... 12

*Brown* v. *Nat'l Football League*,
   219 F. Supp. 2d 372 (S.D.N.Y. 2002) ........................................................... 10

*Cook* v. *Brewer*,
   637 F.3d 1002 (9th Cir. 2011) ....................................................................... 12

*Cook, Perkiss & LIehe* v. *N. Cal. Collection Serv.*,
   911 F.2d 242 (9th Cir. 1990) ......................................................................... 19

*Corazon* v. *Aurora Loan Servs., LLC*,
   No. 11-00542, 2011 WL 1740099 (N.D. Cal. May 5, 2011) .......................... 13

*Doe* v. *United States*,
   58 F.3d 494 (9th Cir. 1995) ........................................................................... 19

*Ebeid* v. *Lungwitz*,
   616 F.3d 993 (9th Cir. 2010) ......................................................................... 15

*G.D. Searle & Co.* v. *Superior Court*,
   49 Cal. App. 3d 22, 122 Cal. Rptr. 218 (Ct. App. 1975) ............................... 17

*Givens* v. *Tennessee Football, Inc.*,
   684 F. Supp. 2d 985 (M.D. Tenn. 2010) ................................................ 1, 6, 11

*Holmes* v. *Tenderloin Housing Clinic, Inc.*,
   No. 09-CV-5781, 2010 WL 1929586 (N.D. Cal. May 12, 2010) ................... 19

*Jeffers* v. *D'Allessandro*,
   199 N.C. App. 86, 681 S.E.2d 405 (N.C. Ct. App. 2009) ............................. 1, 6

*Johnson* v. *Lucent Techs., Inc.*,
   653 F.3d 1000 (9th Cir. 2011) ....................................................................... 15

REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS

# Table of Authorities

CASES                                                                    PAGE(S)

*Pooshs* v. *Philip Morris USA, Inc.*,
    51 Cal. 4th 788, 123 Cal. Rptr. 3d 578 (2011) ...................................... 18

*Scognamillo* v. *Credit Suisse First Boston LLC*,
    No. 03-CV-2061, 2005 WL 2045807 (N.D. Cal. Aug. 25, 2005).................... 19

*Sherwin* v. *Indianapolis Colts, Inc.*,
    752 F. Supp. 1172 (N.D.N.Y. 1990) ..................................... 1, 6, 10, 11

*Smith* v. *Pac. Bell Tel. Co.*,
    No. 06-CV-1756, 2007 WL 1114044 (E.D. Cal. Apr. 13, 2007)..................... 19

*Steel* v. *City of San Diego*,
    726 F. Supp. 2d 1172 (S.D. Cal. 2010) ............................................ 14

*Stringer* v. *Nat'l Football League*,
    474 F. Supp. 2d 894 (S.D. Ohio 2007).......................................*passim*

*Tietsworth* v. *Sears*,
    720 F. Supp. 1123 (N.D. Cal. 2010)............................................. 17

*In re Toyota Motor Corp. Litig.*,
    No. 10-ML-02151, 2011 WL 6004569 (C.D. Cal. Nov. 30, 2011) ................ 16

*Truex* v. *Garrett Freightlines, Inc.*,
    784 F.2d 1347 (9th Cir. 1985)................................................. 12

*United Steelworkers of Am.* v. *Rawson*,
    495 U.S. 362, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990) .................................. 9

*Williams* v. *Nat'l Football League*,
    582 F.3d 863 (8th Cir. 2009) ................................................. 8

*Wynn* v. *Nat'l Broad. Co.*,
    234 F. Supp. 2d 1067 (C.D. Cal. 2002)........................................... 19

STATUTES AND RULES

29 U.S.C. § 185(a) ..........................................................*passim*

Cal. Civ. Proc. Code § 335.1 ................................................ 16

Fed. R. Civ. P. 9(b) ....................................................... 2, 15

Minn. Stat. Ann. § 573.02 .................................................. 16

MOTION TO DISMISS

# Table of Authorities

**CASES** **PAGE(S)**

**OTHER AUTHORITIES**

Nancy Hersh, *et al.*, *Cal. Civ. Prac. Torts* (Oct. 2011) .........................................13

Restatement (Second) of Torts § 323 .......................................................2, 8, 9, 13

MOTION TO DISMISS

Defendants National Football League (the "NFL") and NFL Properties LLC ("NFLP" and, collectively with the NFL, the "NFL Defendants"), by their attorneys Paul, Weiss, Rifkind, Wharton & Garrison LLP and Munger, Tolles & Olson LLP, respectfully submit this reply memorandum of points and authorities in support of their motion to dismiss plaintiffs' Second Amended Complaint (the "SAC").

<strong>Preliminary Statement</strong>

The NFL Defendants' moving papers demonstrated that this action is fundamentally a labor dispute  completely preempted by section 301 of the Labor Management Relations Act ("LMRA") and should be dismissed.   None of plaintiffs' arguments in opposition refutes this showing.

First, as the NFL Defendants showed, plaintiffs' claims substantially depend on an analysis of the numerous health and safety provisions of the collective bargaining agreements and accompanying NFL Constitution and Bylaws (together, the "CBAs") pursuant to which the vast majority of plaintiffs played NFL football. Plaintiffs concede as much, acknowledging that—as this Court found in denying plaintiffs' remand motion—the CBAs delegate to others duties regarding player health and safety.  In order to assess the degree of care owed by the NFL, the Court must first evaluate these preexisting duties, and plaintiffs' claims are thus preempted under section 301.  *See, e.g.*, *Barnes v. Nat'l Football League*, No. 11-CV-08396, Dec. 8, 2011 Order, ECF No. 58 at 1-2 (denying plaintiffs' motion to remand); *Givens* v. *Tennessee Football, Inc.*, 684 F. Supp. 2d 985, 990-91 (M.D. Tenn. 2010); *Stringer* v. *Nat'l Football League*, 474 F. Supp. 2d 894, 909-11 (S.D. Ohio 2007); *Sherwin* v. *Indianapolis Colts, Inc.*, 752 F. Supp. 1172, 1177-79 (N.D.N.Y. 1990); *Jeffers* v. *D'Allessandro*, 199 N.C. App. 86, 95-96, 681 S.E.2d 405, 412 (N.C. Ct. App. 2009).

Second, plaintiffs fail to rebut the NFL Defendants' showing that plaintiffs' claims are also preempted because they rest on purported obligations that

arise under the CBAs. Plaintiffs' attempt to avoid this conclusion by arguing that the NFL assumed a duty to plaintiffs under Restatement (Second) of Torts § 323 fails. The NFL did not—as plaintiffs contend—assume an independent duty to plaintiffs by promulgating player safety rules; rather, the duty to promulgate such rules is expressly delegated to the NFL and its Member Clubs *by the CBAs*. Nor have plaintiffs pleaded that the MTBI Subcommittee's actions were undertaken on plaintiffs' behalf, as the Restatement requires. Moreover, plaintiffs offer no legal support—because there is none—for their novel argument that the NFL Defendants somehow owed a duty to the general public to warn about the dangers of concussions.

Third, plaintiffs' assertion that the LMRA does not apply to their claims because they are retirees (or spouses of retirees) is without merit. Putting aside that plaintiffs raised this argument in their failed remand motion, this contention ignores the well-settled principle that section 301 applies where, as here, plaintiffs allege misconduct that occurred when they were employed pursuant to a CBA.

Beyond failing to refute the NFL Defendants' preemption arguments, plaintiffs have not cured, and cannot cure, the pleading defects of their tort claims. As the NFL Defendants' moving brief showed, plaintiffs' "negligence-monopolist" claim does not exist. Plaintiffs' negligence claim against NFLP—and the derivative wrongful death claim—fail to allege any duty whatsoever owed by NFLP to plaintiffs, and plaintiffs' opposition continues improperly to lump NFLP in with the NFL. Plaintiffs' fraud and negligent misrepresentation claims fail because plaintiffs do not allege with specificity, as Rule 9(b) requires, how plaintiffs— nearly all of whom retired before the NFL made any alleged statements regarding concussions—could have justifiably relied on such statements, or how the NFL's conduct caused plaintiffs' purported injuries. Plaintiffs' conspiracy claim fails

REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS

because plaintiffs do not identify a single co-conspirator by name, let alone specifics regarding the purported conspiracy.

Finally, plaintiffs have not rebutted the NFL Defendants' showing that their negligence claims are time-barred because no jurisdiction provides more than a six-year limitations period for personal injury claims, and plaintiffs' purported injuries occurred during their respective NFL careers—nearly all of which concluded by 2005. Plaintiffs' arguments that the negligence claims are tolled by a "discovery rule," and that the injuries for which they seek redress are "separate and distinct" from concussions that they allegedly suffered during their NFL careers, also fail. Plaintiffs may not invoke a "discovery rule" because they do not—and cannot—point to a single allegation in the SAC that could support application of the rule, and their assertion that their injuries are "separate and distinct" is belied by the SAC in which they allege injuries sustained during their careers.

For these reasons, the NFL Defendants respectfully request that this Court dismiss the SAC with prejudice. Plaintiffs cannot cure their pleading by alleging different facts: plaintiffs' claims are preempted by federal labor law, plaintiffs' "negligence-monopolist" claim does not exist, and plaintiffs' fraudulent and negligent misrepresentation claims hinge on misrepresentations that allegedly occurred after plaintiffs retired. As any amendment would be futile, dismissal of the SAC with prejudice is warranted.

**Argument**

## I.  <u>PLAINTIFFS' CLAIMS ARE PREEMPTED BY THE LMRA</u>

As the NFL Defendants' moving papers showed, section 301 of the LMRA preempts plaintiffs' claims for two reasons. (Def. Br., ECF No. 69 at 8-19.) First, resolution of plaintiffs' claims substantially depends upon an analysis of numerous provisions in the CBAs addressing player health and safety. Indeed, in denying plaintiffs' remand motion and holding plaintiffs' negligence claim against the NFL "preempted," this Court concluded that the claim is "substantially

1    dependent upon an analysis of certain CBA provisions," because  "[t]he CBA

2    places primary responsibility for identifying . . . physical conditions on the team

3    physicians . . . .  The physician provisions of the CBA must be taken into account in

4    determining the degree of care owed by the NFL and how it relates to the NFL's

5    alleged failure to establish guidelines or policies to protect the mental health and

6    safety of its players."  *Barnes*, Dec. 8, 2011 Order at 1-2; *see also Stringer*, 474 F.

7    Supp. 2d at 910-11.  Second, plaintiffs' claims—seeking redress for the NFL

8    Defendants' purported failure to implement rules and regulations to protect

9    plaintiffs' health and safety in the workplace—arise under the CBAs because any

10   such duties of the NFL exist only under the CBAs and are not duties owed to the

11   general public.

12          Plaintiffs' arguments in opposition lack any basis in law or fact,

13   entirely ignore this Court's order denying their remand motion, and are without

14   merit.

15   **A.    Plaintiffs' Claims Substantially Depend on an Analysis of the Terms of**

16          **the CBAs**

17          Plaintiffs' attempt to avoid well-established preemption doctrine—

18   arguing that their claims may be resolved without consulting the CBAs, while

19   acknowledging the health and safety provisions (and their "relevance") in them—

20   only underscores that plaintiffs' claims require interpretation of the CBAs and thus

21   are preempted.

22          First, plaintiffs argue that their claims are not substantially dependent

23   on the terms of the CBA provisions regarding player health and safety because

24   there are few such provisions and "the terms are not ambiguous, not applicable, and

25   not in dispute."  (Pl. Opp., ECF No. 80 at 8.)  But the test for whether plaintiffs'

26   claims are preempted is whether the Court will need to interpret the provisions in

27   order to resolve those claims.  *See Stringer*, 474 F. Supp. 2d at 909-11.  Plaintiffs'

28   opposition papers prove the point.  Plaintiffs acknowledge—contradicting their

-4-

assertion that "the CBAs are largely silent on the topic of equipment safety and diagnosing, treating, and warning about the long-term latent concussive injury" (Pl. Opp. 6.)—that the 21 provisions cited by the NFL Defendants are "relevant" and concede that "the CBAs include provisions regarding NFL Member Clubs providing their players with physicians, certified trainers, and an ambulance, the circumstances under which physicians must disclose information of a player's condition that adversely affects the player's performance and health, determination of recovery time for all injuries, and other medical care provisions." (*Id.* 8.)

As this Court determined in denying plaintiffs' motion to remand, a court cannot evaluate "the degree of care owed by the NFL" or whether the NFL acted "reasonably" without "tak[ing] into account" the "physician provisions of the CBA." *Barnes*, Dec. 8, 2011 Order at 2. For example, assessing whether the NFL failed to act "reasonably" by not "enact[ing] league-wide guidelines and . . . mandatory rules regulating . . . return-to-play" would first require interpretation of the CBA provision that "[a]ll determinations of recovery time for . . . injuries must be by the Club's medical staff and in accordance with the Club's medical standards"—specifically, what Club medical staff was tasked to do and what standards were applicable in order to determine what NFL conduct would be "reasonable" under the circumstances. (SAC ¶ 62; Def. Br. Ex. 20, 1980 Supp. to NFL Constitution and Bylaws Art. XVII; *see also* Def. Br. Ex. 6, 1993 CBA Art. XLIV § 1 (requiring a Club physician to notify a player "of a player's physical condition which adversely affects the player's performance or health" and to notify the player in writing "[i]f such condition could be significantly aggravated by continued performance"); Def. Br. Ex. 5, 1982 CBA Art. XXXI § 3 (conferring players with the right "to obtain a second medical opinion," with the Club bearing "the responsibility" for "the cost of [these] medical services").)

Numerous courts—including the court in *Stringer*, addressing near-identical claims to those here—have so held in ruling that negligence claims against

REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS

the NFL or its Member Clubs seeking to impute to others health and safety obligations delegated by the CBAs are preempted because the health and safety provisions of the CBAs must be interpreted to assess the duty owed by the defendant at issue. *See, e.g.*, *Stringer*, 474 F. Supp. 2d at 903-04, 09-11 (holding that claims that the NFL assumed a duty to its players "to use ordinary care in overseeing, controlling, and regulating . . . practices, policies, procedures, equipment, working conditions, and culture . . . to minimize the risk of heat-related illness," and that the NFL breached this duty by "failing to establish regulations" to ensure "adequate care and monitoring of players suffering heat-related illness" and "regulation of . . . return to practice," were preempted); *Barnes*, Dec. 8, 2011 Order at 1-2 (denying plaintiffs' motion to remand); *Givens*, 684 F. Supp. 2d at 990-91; *Sherwin*, 752 F. Supp. at 1177-79; *Jeffers*, 199 N.C. App. at 95-96.

Indeed, as this Court found, *Stringer* provides "persuasive" authority. *Barnes*, Dec. 8, 2011 Order at 1; *see also Sherwin*, 752 F. Supp. at 1177-78 (former player's claims, that Club provided negligent medical treatment and fraudulently concealed the extent of the player's injury, preempted because Club "did not owe a duty to provide medical care to the plaintiff independent of the relationship established in the" CBAs); *Jeffers*, 199 N.C. App. at 95-96 (former NFL player's claims against Club—that team physician performed unauthorized procedures during knee surgery—preempted because the claim was substantially dependent on an analysis of CBA provisions setting forth the Clubs' and players' rights and duties in connection with medical care).

Seeking to avoid this "persuasive" authority, plaintiffs mischaracterize it and the NFL Defendants' arguments (and simply ignore this Court's prior ruling that plaintiffs' negligence claim against the NFL is preempted). First, plaintiffs call these NFL preemption cases "completely unrelated" to the SAC because "each of these cases found that the players' physician-patient relationship with physicians arose out of the CBA." (Pl. Opp. 6.) As the NFL Defendants showed, however, the

REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS

*Stringer* court held that claims nearly identical to the claims here—premised on the *NFL's* alleged failure "to minimize the risk of heat-related illness" and "establish regulations" to ensure "adequate care and monitoring of players suffering heat-related illness"—were preempted because they were "substantially dependent upon an analysis of certain CBA provisions imposing duties on the clubs with respect to medical care and treatment of NFL players." (Def. Br. 15 (quoting *Stringer*, 474 F. Supp. 2d at 899, 903, 909 (internal quotations omitted).)

Second, plaintiffs contend that their allegation—that the NFL Defendants assumed a duty to promulgate rules, and that such a duty "is separate from any provision in the CBA" and therefore not preempted—went unrebutted. Plaintiffs again are wrong. The NFL Defendants' moving papers could not be more clear that "the NFL Defendants' alleged duties—*even if 'assumed' as plaintiffs allege*—cannot be considered in a 'vacuum,' but must be calibrated according to the scope of the duties contractually delegated to others by the CBAs." (Def. Br. 13 (citing *Stringer*, 474. F. Supp. 2d at 910-11) (emphasis added)); *see also Barnes*, Dec. 8, 2011 Order at 2 ("The physician provisions of the CBA must be taken into account in determining the degree of care owed by the NFL and how it relates to the NFL's alleged failure to establish guidelines or policies to protect the mental health and safety of its players.").

As the NFL Defendants showed, this same analysis requires dismissal of plaintiffs' negligence claim against NFLP. Plaintiffs' only defense of this claim is to state in passing that "the CBAs are largely silent on the topic of equipment safety" and that the Joint Committee on Player Safety and Welfare "is not binding on any of the Defendants or NFL clubs." (Pl. Opp. 6.) However, plaintiffs' allegations that NFLP was obligated to protect NFL players from the risk of brain injury will require the Court to interpret the numerous provisions that delegate responsibility for treating player injuries and implementing safety-related rules and

regulations among the NFL, its Member Clubs, and the NFLPA to assess any duty allegedly owed by NFLP.

Plaintiffs also ignore the NFL Defendants' argument that resolution of the element of justifiable reliance of their fraud and negligent misrepresentation claims requires an interpretation of the CBAs, and fail to address the cases cited by the NFL Defendants in which similar claims against the NFL were found to be preempted.[1] *See Williams* v. *Nat'l Football League*, 582 F.3d 863, 881-82 (8th Cir. 2009) (players' fraud claim—that the NFL knew that a supplement contained a banned substance but failed to warn the players—was "preempted because the Players cannot demonstrate the requisite reasonable reliance . . . without resorting to the CBA," which tasked specific individuals with responsibility for knowing the contents of supplements); *see also Atwater* v. *Nat'l Football League*, 626 F.3d 1170, 1183 (11th Cir. 2010) (former players' negligent misrepresentation claim— that the NFL provided inaccurate background information regarding investment advisors for the players—was preempted because "whether Plaintiffs reasonably relied on Defendants' alleged misrepresentations is substantially dependent on the CBA's language," which delegated responsibility for player finances to specific individuals); Def. Br. 14-15.

In sum, plaintiffs' claims against the NFL Defendants are preempted and should be dismissed.

## B. Plaintiffs' Claims Against the NFL Arise Under the CBA

In attempting to refute the NFL Defendants' showing that plaintiffs' claims are preempted because they also arise under the CBAs, plaintiffs contend that the NFL assumed an independent duty to plaintiffs under Restatement (Second)

---

[1] As shown in the NFL Defendants' moving brief, in an argument unopposed by plaintiffs, plaintiffs' fraudulent concealment and negligent misrepresentation claims are also preempted for the same reasons as their negligence claim: Each requires a duty to disclose, and any such duty cannot be assessed without an interpretation of the terms of the CBAs. (Def. Br. 10, n.8.)

of Torts § 323 by "promulgating various rules of safety," establishing the MTBI Committee, and publishing various articles in medical journals on the dangers and effects of multiple concussions. (Pl. Opp. 10.) Plaintiffs are mistaken.

First, any duty to "promulgat[e] various rules of safety" is expressly assigned to the NFL and its Member Clubs by the CBAs and therefore was not "independent of the collective-bargaining agreement." *United Steelworkers of Am.* v. *Rawson*, 495 U.S. 362, 371, 110 S.Ct. 1904, 1910, 109 L.Ed.2d 362 (1990); *see* Def. Br. Ex. 23, 1984 NFL Constitution and Bylaws Art. XI § 11.2 ("Playing rules may be amended or changed at any Annual Meeting by the affirmative vote of not less than three-fourths . . . of the members of the League, provided the proposed amendment or change has been presented to the League . . . prior to the Annual Meeting[.]").) To the extent the NFL promulgated rules regarding player health and safety, it did so pursuant to duties assigned to it by the CBAs. Thus, plaintiffs' claims arise under the CBAs and do not allege a breach of a duty "independent of the collective-bargaining agreement." *Rawson*, 495 U.S. at 371; *see also* SAC ¶ 63 (describing the NFL's alleged duty to "enact reasonable and prudent rules to protect players against the risks associated with repeated brain trauma").

Second, plaintiffs have not alleged that the MTBI Subcommittee's actions and publications were undertaken *on behalf of plaintiffs*, as required by Restatement (Second) Torts § 323. Indeed, in their opposition papers, plaintiffs acknowledge that "the MTBI was not established until after nearly all Plaintiffs had retired[.]" (Pl. Opp. 10; *see also* SAC ¶¶ 66; 71-73; 124-203.) Because plaintiffs had retired years before the NFL allegedly undertook a duty to study concussions in NFL players, "it cannot reasonably be concluded that [defendants] should have recognized those services were necessary for the protection of plaintiffs." *Artiglio* v. *Corning, Inc.*, 18 Cal. 4th 604, 618, 76 Cal. Rptr. 2d 479, 487 (1998) (holding that defendant did not assume a duty to recipients of breast implants by conducting

-9-

1    safety tests on silicon thirty years earlier) (internal quotations and citations
2    omitted).

3          Finally, plaintiffs rely on inapposite case law.  Plaintiffs cite *Brown* v.
4    *Nat'l Football League*, 219 F. Supp. 2d 372 (S.D.N.Y. 2002), in support of their
5    argument that their allegations are based on "a free-standing state tort duty."  (Pl.
6    Opp. 9.)  Plaintiffs' reliance on *Brown* is misplaced.  In *Brown*, plaintiff was hit in
7    the eye by a penalty flag thrown by a referee.  219 F. Supp. 2d at 375.  The court
8    held that because the NFL had a "duty 'owed to every person in society,' as
9    opposed to a duty owed only to employees covered by the collective bargaining
10   agreement," plaintiff's negligence claim was not preempted.  *Id.* at 380 (quoting
11   *Rawson*, 495 U.S. at 371).   The duty to the public in *Brown*, however, is
12   inapplicable to the allegations in this case.  In *Brown*, the duty to the public was to
13   protect it from the "careless throwing of objects."  *Id.* at 380.  Because a negligently
14   thrown flag could just as foreseeably harm a spectator as a player, the contractual
15   relationship between the NFL and its employees was not implicated.  *Id.* at 382.

16         Unlike those in *Brown*, the duties alleged here do not extend to "every
17   person in society."  *Brown*, 219 F. Supp. 2d at 380 ("To be independent of the
18   CBA, a tort claim must allege a violation of a duty 'owed to every person in
19   society' as opposed to a duty owed only to employees covered by the collective
20   bargaining agreement.") (quoting *Rawson*, 495 U.S. at 362).[2]  Rather, as the NFL
21   Defendants established in their moving papers, any obligations concerning health
22   and safety owed by the NFL specifically to *NFL players* do not exist in the absence
23   of the CBA.[3]

---

24   [2]      *But see Stringer*, 474 F. Supp. 2d at 908 (suggesting *Brown*'s reading of
25   *Rawson* is "too broad").

26   [3]      *Sherwin*, which found a former player's state law claims preempted, is
     instructive.  In that case, plaintiff alleged that he suffered an injury for which
27   defendants, the Colts and their team doctors, failed to provide adequate medical
     care, and that defendants intentionally withheld information regarding the true
28   nature of his injury.  752 F. Supp. at 1173.  Citing *Rawson*, the court held that

## C.      Plaintiffs Are Subject to the CBAs in Effect During Their Playing Careers

Recognizing that their claims are preempted, plaintiffs argue that the terms of the CBAs simply do not apply to the claims of former players.  (Pl. Opp. 6.)   Plaintiffs advanced this same argument nearly verbatim in their remand motion—and this Court denied the motion, concluding that plaintiffs' negligence claim was indeed preempted.  (*Compare* Pl. Mem. in Support of Mot. to Remand, ECF No. 18, at 11 *with* Pl. Opp. 6.)  In reviving this futile argument, plaintiffs do not, and cannot, distinguish the cases cited by the NFL Defendants in their moving brief refuting this premise.  (*See* Def. Br. 14-15, n.10.)  As the case law makes clear, because plaintiffs' claims are premised on alleged conduct that occurred when plaintiffs played in the NFL, resolution of those claims will require the Court to interpret provisions of those CBAs that were operative during plaintiffs' careers. *See, e.g.*, *Atwater*, 626 F.3d at 1175 n.3 (analyzing CBA provision that "was in effect at the time the events underlying this litigation occurred"); *Stringer*, 474 F. Supp. 2d at 906 n.7 (referring to CBA "in effect at the time of" the events at issue in the litigation); SAC ¶ 57(a) ("[The NFL] owed a duty to protect Plaintiffs on the playing field[.]").

*            *            *

In sum, plaintiffs' opposition fails to rebut the conclusion that all of plaintiffs' claims are preempted under section 301 and should be dismissed. *Givens*, 684 F. Supp. 2d at 991-92 ("[B]ecause preempted claims must first be presented through the arbitration procedure established in a collective bargaining

---

plaintiffs' various tort claims—including claims for negligence, fraud, and negligent misrepresentation—were preempted because "[t]he Colts owed a duty to provide adequate medical care, or to provide truthful information regarding medical treatment and diagnoses, *only* to their players covered by the standard player agreement and the CBA," and not to "every person in society."  *Id.* at 1178 (emphasis added).  The same conclusion follows here.

agreement, those claims should be dismissed"); *Truex* v. *Garrett Freightlines, Inc.*, 784 F.2d 1347, 1353 (9th Cir. 1985) (same).

As the NFL Defendants' moving brief also established and plaintiffs failed to rebut, because the CBAs apply to plaintiffs' claims, all claims against the NFL brought by the 12 plaintiffs who played after 1977 must be dismissed pursuant to the CBAs' "no suit" provision. (Def. Br. 18.)[4] Specifically, the 1977 and 1982 CBAs prohibit claims "against the NFL . . . relating to any aspect of the NFL rules" and "the Constitution and Bylaws," and the 1993 and 2006 CBAs forbid claims against "the NFL . . . relating to any term of [the CBAs]" and "the Constitution and Bylaws." (*Id.* at 18-19.)

## II.  PLAINTIFFS FAIL TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED[5]

As demonstrated in the NFL Defendants' moving papers, in addition to the preemption and "no suit" grounds discussed above, plaintiffs' claims also fail because they have no basis in law, are deficiently pleaded, or are time-barred. Nothing in plaintiffs' opposition supports a different conclusion.

### A.  Plaintiffs' "Negligence-Monopolist" Claim is Fiction

In their opposition, plaintiffs cite no authority recognizing their supposed claim for "negligence-monopolist." In fact, plaintiffs concede that they are "not able to plead this particular cause of action" under the California Unfair

---

[4]     In response, plaintiffs simply state that the CBAs "do[] not apply" and "[t]herefore, the 'no suit' provision is inapplicable." (Pl. Opp. 20.) As discussed, however, Plaintiffs' claims substantially depend on an interpretation of numerous CBA provisions and thus "relat[e] to" the CBAs. (Def. Br. Appx. B, Section E.)

[5]     Plaintiffs begin their opposition by arguing that granting motions to dismiss is disfavored. (Pl. Opp. 3.) Each of the cases cited by Plaintiffs for this proposition was issued prior to *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). As the Ninth Circuit has acknowledged, post-*Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Cook* v. *Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citing *Twombly* in affirming district court's dismissal of complaint).

1  Practices Act, and argue only half-heartedly that their claim nonetheless exists

2  "under the common law." (Pl. Opp. 11.) In support of this statement, plaintiffs do

3  not cite a single opinion, treatise, or article recognizing the claim. Nor could they.

4  The Restatement (Second) of Torts discusses no such cause of action and the

5  California Civil Practice treatise on torts does not mention the word "monopoly"

6  once in 45 chapters. *See* Nancy Hersh, *et al.*, *Cal. Civ. Prac. Torts* (Oct. 2011).

7  Plaintiffs' fictitious claim should be dismissed.

8  **B.     Plaintiffs Fail to State a Negligence Claim Against NFLP**

9          The NFL Defendants' moving papers established that plaintiffs'

10 negligence claim against NFLP—resting solely on seven boilerplate paragraphs in

11 the proper count that lacked factual allegations as to NFLP's purported duty or how

12 the breach of that purported duty proximately caused plaintiffs' alleged injuries—

13 was insufficient to state a claim and should be dismissed. (Def. Br. 20-21.)

14         Like their SAC, plaintiffs' opposition brief simply conflates NFLP and

15 the NFL—a strategy that fails. *Corazon* v. *Aurora Loan Servs.*, *LLC*, No. 11-

16 00542, 2011 WL 1740099, at *4 (N.D. Cal. May 5, 2011) ("Undifferentiated

17 pleading against multiple defendants is improper."). Thus, plaintiffs argue that they

18 "allege sufficient facts to establish a duty on the part of . . . NFLP" because they

19 plead that—like the NFL—"NFLP possess[es] monopoly power over American

20 Football," "the list of rules . . . promulgated by the NFL . . . establish[es] that . . .

21 NFLP . . . accepted the duty to protect its players," and NFLP "knew as early as the

22 1920s . . . of the harmful effects" of concussions. (Pl. Opp. 12.) Plaintiffs do not

23 explain, however, how NFLP—which plaintiffs allege is the NFL's "licensing"

24 arm—could possibly wield monopoly power over football when the NFL allegedly

25 holds that monopoly, or how NFLP automatically assumed a duty of care to players

26 because a separate entity implemented safety rules. (*See* SAC ¶ 22.) Indeed,

27 plaintiffs do not even allege that NFLP existed in the 1920s.

28

REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS

1      Moreover, plaintiffs' brief states in conclusory fashion that "the SAC
2   pleads sufficient facts regarding how NFLP's breach caused Plaintiffs' injuries,"
3   and simply directs the Court to the SAC.  (Pl. Opp. 13.)  These allegations remain
4   insufficient as a matter of law.  Thus, plaintiffs' negligence claim against NFLP
5   should be dismissed.[6]  *Steel* v. *City of San Diego*, 726 F. Supp. 2d 1172, 1192 (S.D.
6   Cal. 2010) (dismissing claim where the "complaint is devoid of any facts regarding
7   how [defendant's] conduct injured" plaintiff).

8   **C.    Plaintiffs Fail to State Claims for Fraud and Negligent**
9   **Misrepresentation**

10      The NFL Defendants' moving papers identified several critical
11  deficiencies in plaintiffs' fraudulent misrepresentation, fraudulent concealment, and
12  negligent misrepresentation claims:  Plaintiffs fail to allege that they reasonably
13  relied on the NFL's purported misrepresentations, or that the NFL's statements
14  caused plaintiffs' injuries, because nearly every plaintiff retired before the NFL
15  made its alleged statements.  In addition, plaintiffs' fraudulent concealment claim
16  lacks a single factual allegation regarding an alleged concealment that occurred
17  before 2004, when almost every plaintiff played football. (Def. Br. 21-23.)

18      Plaintiffs' opposition is as deficient as their pleading.  Plaintiffs
19  completely ignore the NFL Defendants' arguments regarding fraudulent
20  misrepresentation and negligent misrepresentation and, in essence, abandon those
21  claims.  With respect to their claim for fraudulent concealment, plaintiffs do not
22  address—even in cursory fashion—their failure to plead causation or their failure to
23  plead even one fact in support of the claim.[7]  Instead, plaintiffs devote most of their
24  opposition brief to arguing, with respect to their concealment claim, that they

---

[6]     Plaintiffs also acknowledge that they "did not specifically allege" in their SAC whether they "wore helmets approved by NFLP."  (Pl. Opp. 13.)

[7]     Plaintiffs also do not address their negligent misrepresentation claim at all, even though the NFL moved to dismiss this claim because plaintiffs fail adequately to plead reliance or causation.  (Def. Br. 21-23.)

REPLY MEMORANDUM IN
                                                                SUPPORT OF MOTION TO DISMISS

Case 2:12-md-02323-AB Document 89-19 Filed 03/29/12 Page 21 of 26
Case 2:11-cv-08396-R-MAN Document 80 Filed 01/26/12 Page 20 of 25 Page ID
#:11034

1  sufficiently allege that the NFL made "misrepresentations," "knew its statements

2  were false and intended to defraud Plaintiffs."  (Pl. Opp. 13-15.)

3         Plaintiffs' discussion of justifiable reliance—an element required for

4  both fraud and negligent misrepresentation claims—fills all of three lines:

5  "Plaintiffs allege that they justifiably . . . relied on the misrepresentations," and

6  "[t]he fact that . . . information was concealed from Plaintiffs limited their ability to

7  make an informed decision on when or if they would continue to play the game."

8  (*Id*. 14.)  Plaintiffs nowhere explain, as required by Rule 9(b), how they could have

9  relied on information *during* their careers that the NFL allegedly provided in 2007

10 *after* their careers ended or how such statements could have caused injury to

11 plaintiffs.  Indeed, no plaintiff alleges having received or read the 2007 pamphlet on

12 concussions.  In sum, Fed. R. Civ. 9(b) requires plaintiffs to "state with particularity

13 the circumstances constituting" each of their claims "including the who, what,

14 when, where, and how of the misconduct charged."  *Ebeid* v. *Lungwitz*, 616 F.3d

15 993, 998 (9th Cir. 2010) (internal quotations omitted).  Plaintiffs have not.

16        Plaintiffs further claim that they are not required to plead reliance

17 because "[t]he fraud by the NFL was more so in the fact that it concealed . . .

18 information, rather than on the misrepresentations made by Defendant in the early

19 21st century."  (Pl. Opp. 14; *see also id*. 15 ("Again, the allegation of fraud rests

20 more so on the issue of concealment than misrepresentation . . . .").)  In making this

21 assertion, plaintiffs ignore both the law and their own allegations.  Reliance is

22 indisputably an element of fraudulent concealment.  *Johnson* v. *Lucent Techs., Inc.*,

23 653 F.3d 1000, 1012 (9th Cir. 2011).  And plaintiffs have unquestionably asserted

24 two separate claims for "fraud" based on "material misrepresentations" and

25 "fraudulent concealment."  (SAC ¶¶ 236-57.)  Plaintiffs' abandonment of their

26 fraudulent and negligent misrepresentation claims does not relieve plaintiffs of their

27 obligation to plead reliance in support of their concealment claim.  *See Ebeid*, 616

28 F.3d at 998 (Rule 9(b) requires plaintiffs to "state with particularity the

REPLY MEMORANDUM IN
                                                                    SUPPORT OF MOTION TO DISMISS

1  circumstances constituting" each of their claims "including the who, what, when,

2  where, and how of the misconduct charged."); *In re Toyota Motor Corp. Litig.*, No.

3  10-ML-02151, 2011 WL 6004569, at *20 (C.D. Cal. Nov. 30, 2011) (Rule 9(b)

4  applies to concealment).

## D.   The SAC Fails to State a Claim for Conspiracy

6         The NFL Defendants' moving brief established that plaintiffs'

7  conspiracy claim—failing to allege the identity of a single co-conspirator, any

8  details about the alleged conspiracy, or the unlawful act underlying it—is

9  insufficient to state a claim and should be dismissed.  (Def. Br. 23-24.)

10        In response, plaintiffs literally cut and paste the entirety of their

11  conspiracy allegations into their opposition brief and—citing no case law in

12  support—declare them sufficient.  (Pl. Opp. 16.)  They are not.  And plaintiffs

13  concede as much, agreeing that they failed to "ma[k]e a showing [of] an explicit

14  agreement" and requesting "leave to amend."  (*Id.*)  The claim should be dismissed.

## E.   Plaintiffs Have Not Alleged Sufficient Facts to Rescue Their Time-Barred Negligence Claims

17        The NFL Defendants' moving brief established that plaintiffs'

18  negligence claims against the NFL Defendants are barred because no state provides

19  a limitations period for personal injury claims that is longer than six years, and

20  plaintiffs' alleged injuries occurred during their respective NFL playing careers—

21  nearly all of which concluded by 2005.[8]

---

22  [8]    Michael Cloud is the only plaintiff who played professional football in 2005,
23  but he does not make specific time-related allegations regarding his injuries, and the
   NFL Defendants therefore reserve all rights to move for the dismissal of his claim
24  on the basis of statute of limitations.  (SAC ¶¶ 165-66.)  In addition, Greg Lens's
   playing career ended in 1972, and he died 37 years later in 2009, allegedly "as a
25  result" of the concussions he suffered during his career.  (*Id.* ¶¶ 135-38.)  Carolyn
   Lens's wrongful death claim would thus be barred in states that begin the
26  limitations period on the date that the decedent suffers an injury that later causes
   death.  *See, e.g.*, Minn. Stat. Ann. § 573.02 (claim must be brought within three
27  years of death *and* within six years of injury); *cf.* Cal. Civ. Proc. Code § 335.1
28  (claim must be brought within two years of death).

REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS

Each of plaintiffs' arguments in opposition is flawed. As a threshold matter, plaintiffs incorrectly assert that California's statute of limitations and its "discovery rule" control. (*See* Pl. Opp. 17-19.) But plaintiffs have not alleged violations of California law. Indeed, the 15 player plaintiffs hail from eight different states, plaintiffs played for 22 different clubs in 15 different states, and the NFL Defendants are headquartered in New York. (*See* SAC ¶¶ 1-18, 124-203.) Therefore, plaintiffs have not established that California's discovery rule controls.

Even if a "discovery rule" were available to plaintiffs, plaintiffs nonetheless failed to allege facts sufficient to invoke this rule, as the NFL Defendants' moving brief showed. (Def. Br. 25.) In fact, the lead case cited by plaintiffs demonstrates as much: In *G.D. Searle & Co.* v. *Superior Court*, 49 Cal. App. 3d 22, 25-26, 122 Cal. Rptr. 218 (Ct. App. 1975), the court held that plaintiff's allegations were insufficient to invoke the discovery rule because "[a] plaintiff who relies on this exception must plead facts justifying delayed accrual; the complaint must allege (1) the time and manner of discovery and (2) the circumstances excusing delayed discovery." Plaintiffs allege none of these facts in their SAC. Rather, in an improper attempt to cure their pleading deficiencies in their brief, plaintiffs assert that their "neurological and cognitive injuries" occurred "after Plaintiffs retired" and thus they did not discover them before. *See Baidoobonso-Iam* v. *Bank of America (Home Loans)*, No. 10-CV-9171, 2011 WL 3103165, at *3 (C.D. Cal. July 25, 2011) ("It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss." (quoting *Tietsworth* v. *Sears*, 720 F. Supp. 2d 1123, 1145 (N.D. Cal. 2010))); Pl. Opp. 18. But such a conclusory assertion—even if taken as true—is plainly insufficient to invoke the discovery rule given that 14 of the 15 plaintiffs retired before 2005 and retired more than ten years ago, and plaintiffs therefore still may have discovered their injuries over six years ago. *See Adams* v. *I-Flow Corp.*, No. 09-CV-09550, 2010 WL 1339948, at *4 (C.D. Cal. Mar. 30, 2010) (dismissing claims where plaintiffs'

complaint "fails to state when and how [they] discovered [their] alleged injuries were caused by defendants' [conduct and] fails to provide any facts . . . as to why [they] could not have discovered this information earlier.").

Finally, plaintiffs' reliance on *Pooshs* v. *Philip Morris USA, Inc.*, 51 Cal. 4th 788, 792, 123 Cal. Rptr. 3d 578 (2011), to support their argument that their concussions and their cognitive problems are "separate and distinct" injuries that accrued on different dates, is misplaced. In *Pooshs*, plaintiff was diagnosed with COPD, a pulmonary disease, in 1989 and lung cancer in 2003. *Id*. at 791. Plaintiff specifically alleged that COPD was "a separate illness, which does not pre-dispose or lead to lung cancer and that it has nothing medically, biologically, or pathologically to do with lung cancer." *Id*. at 796. In holding that "two physical injuries . . . can, in some circumstances, be considered 'qualitatively different' for purposes of determining when the applicable statute of limitations period begins to run," the Court expressly relied on this allegation regarding the "separate and distinct" nature of COPD and lung cancer. *Id*. at 792, 802-03 (citing *Grisham* v. *Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 645, 54 Cal. Rptr. 3d 735 (2007)).

Putting aside that plaintiffs have not alleged violations of California law and therefore cannot invoke California's "separate and distinct" injury doctrine, this doctrine would not rescue plaintiffs' claims in any event. Unlike the *Pooshs* plaintiff, plaintiffs here have failed to allege that their injuries were "separate and distinct" (let alone "medically, biologically, and pathologically" unrelated) and, in fact, repeatedly allege past traumatic brain injuries. (*See, e.g.*, SAC ¶ 128 ("Plaintiff Ralph Wenzel suffers from multiple past traumatic brain injuries with various symptoms including, but not limited to, memory loss, headaches, and sleeplessness.").) Accordingly, plaintiffs may not avail themselves of this doctrine, and their negligence claims should be dismissed.

*            *            *

REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS

1    The SAC should be dismissed because plaintiffs' claims are preempted

2 by section 301 of the LMRA and the SAC fails to state claims upon which relief

3 may be granted. Plaintiffs' request that the Court grant plaintiffs leave to amend

4 their complaint for a third time should be denied for several reasons.

5    Most importantly, leave to amend is improper because the "pleading

6 could not possibly be cured by the allegation of other facts." *Doe* v. *United States*,

7 58 F.3d 494, 497 (9th Cir. 1995) (quoting *Cook, Perkiss & Liehe* v. *N. Cal.*

8 *Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990)). All of plaintiffs' claims are

9 preempted by federal labor law, and no additional allegations will change that fact.

10 *See, e.g.*, *Holmes* v. *Tenderloin Housing Clinic, Inc.*, No. 09-CV-5781, 2010 WL

11 1929586, at *5 (N.D. Cal. May 12, 2010) (dismissing preempted claim with

12 prejudice); *Smith* v. *Pac. Bell Tel. Co.*, No. 06-CV-1756, 2007 WL 1114044, at *12

13 (E.D. Cal. Apr. 13, 2007) (same); *Wynn* v. *Nat'l Broad. Co.*, 234 F. Supp. 2d 1067,

14 1119-21, 1124 (C.D. Cal. 2002) (same).

15    In addition, plaintiffs' "negligence-monopolist" claim does not exist,

16 and plaintiffs' fraudulent and negligent misrepresentation claims could not be cured

17 because nearly all plaintiffs retired before the NFL made its purported

18 misrepresentations, and plaintiffs therefore could not have relied on or been

19 damaged by such statements. *Scognamillo* v. *Credit Suisse First Boston LLC*, No.

20 03-CV-2061, 2005 WL 2045807, at *7 (N.D. Cal. Aug. 25, 2005) (dismissing fraud

21 and negligent misrepresentation claims "with prejudice" where plaintiffs could not

22 prove "reasonable reliance" as a "matter of law" and could "prove no set of facts

23 that would entitle them to relief"), *aff'd*, 254 Fed. Appx. 669 (9th Cir. 2007).

24          **Conclusion**

25    For the foregoing reasons, and those set forth in the NFL Defendants'

26 moving papers, the NFL Defendants respectfully submit that the SAC should be

27 dismissed with prejudice.

28

REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS

Dated:   January 23, 2012

Respectfully submitted,

MUNGER, TOLLES & OLSON LLP

By: _____ /s/ *Ronald L. Olson* _____

-and-

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

Attorneys for Defendants
NATIONAL FOOTBALL LEAGUE
and NFL PROPERTIES LLC