**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | MDL No. 2323<br>No. 12-md-2323-AB |
| THIS DOCUMENT RELATES TO:<br><br>VERNON MAXWELL, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL FOOTBALL LEAGUE, et al.,<br><br>Defendants. | CIVIL ACTION<br>Case No. 12-cv-01023-AB |

**NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED (FRCP 12(B)(6)); MEMORANDUM OF POINTS AND AUTHORITIES**

MUNGER, TOLLES & OLSON LLP
RONALD L. OLSON (State Bar No. 44597)
*ron.olson@mto.com*
JOHN W. SPIEGEL (State Bar No. 78935)
*john.spiegel@mto.com*
JOHN M. RAPPAPORT (State Bar No. 254459)
*john.rappaport@mto.com*
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
*(Admitted Pro Hac Vice)*
BRAD S. KARP
*bkarp@paulweiss.com*
THEODORE V. WELLS, JR.
*twells@paulweiss.com*
BRUCE BIRENBOIM
*bbirenboim@paulweiss.com*
BETH A. WILKINSON
*bwilkinson@paulweiss.com*
LYNN B. BAYARD
*lbayard@paulweiss.com*
1285 Avenue of the Americas
New York, NY 10019-3215
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

Attorneys for Defendants
NATIONAL FOOTBALL LEAGUE
and NFL PROPERTIES LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

VERNON MAXWELL, et al.,

Plaintiffs,

v.

NATIONAL FOOTBALL LEAGUE, et al.,

Defendants.

CASE NO. CV 11-08394 R(MANx)

**NOTICE OF MOTION AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED (FRCP 12(B)(6)); MEMORANDUM OF POINTS AND AUTHORITIES**

Date: January 17, 2012
Time: 10:00 AM
Courtroom: 8
Judge: Hon. Manuel L. Real

Notice of related cases:
No. CV 11-08395 R (MANx)
No. CV 11-08396 R (MANx)

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants National Football League (the "NFL") and NFL Properties LLC ("NFLP" and, collectively with the NFL, the "NFL Defendants"), by their attorneys, Paul, Weiss, Rifkind, Wharton & Garrison LLP and Munger, Tolles & Olson LLP, hereby move the Court to dismiss plaintiffs' First Amended Complaint ("FAC"). The hearing on this Motion is scheduled for January 17, 2012 at 10:00 a.m. at the above-entitled Court, located at 312 N. Spring Street, Los Angeles, CA 90012.

Plaintiffs' FAC fails to state a claim upon which relief can be granted because plaintiffs' causes of action are preempted by section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), are deficiently pleaded, and/or are time-barred.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the concurrently filed Declaration of Dennis L. Curran and the exhibits attached thereto, and the pleadings and papers filed herein.

Dated: December 20, 2011

Respectfully submitted,

MUNGER, TOLLES & OLSON LLP

By: /s/ *Ronald L. Olson*

-and-

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Attorneys for Defendants NATIONAL FOOTBALL LEAGUE and NFL PROPERTIES LLC

# TABLE OF CONTENTS

| | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| STATEMENT OF FACTS | 4 |
| The NFL Collective Bargaining Agreements | 5 |
| The First Amended Complaint | 7 |
| ARGUMENT | 8 |
| I. PLAINTIFFS' CLAIMS ARE PREEMPTED BY THE LMRA | 8 |
| A. Plaintiffs' Claims Are Substantially Dependent on an Interpretation of the Terms of the CBAs | 10 |
| 1. Plaintiffs' Claims Require Interpretation of the CBAs | 10 |
| 2. The Case Law Compels Preemption of Plaintiffs' Claims | 15 |
| B. Plaintiffs' Claims Against the NFL Arise Under the CBA | 17 |
| II. THE CBAS' "NO SUIT" PROVISION BARS PLAINTIFFS' CLAIMS | 19 |
| III. PLAINTIFFS FAIL TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED | 19 |
| A. Plaintiffs' "Negligence-Monopolist" Claim Fails as a Matter of Law | 19 |
| B. The FAC Fails to State a Claim for Negligence Against NFLP | 20 |
| C. The FAC Fails to State Claims for Fraud and Negligent Misrepresentation Against the NFL | 21 |
| D. The FAC Fails to State a Claim for Conspiracy | 23 |
| E. Plaintiffs' Negligence Claims are Time-Barred | 24 |
| CONCLUSION | 25 |
| APPENDIX A | A-1 |
| APPENDIX B | B-1 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams* v. *I-Flow Corp.*,
No. 09-CV-09550, 2010 WL 1339948 (C.D. Cal. Mar. 30, 2010) .................. 25

*Adkins* v. *Mireles*,
526 F.3d 531 (9th Cir. 2008) .................. 9

*Allis-Chalmers Corp.* v. *Lueck*,
471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) .................. 8, 9, 17

*Atwater* v. *Nat'l Football League*,
626 F.3d 1170 (11th Cir. 2010) .................. 14, 15, 17

*Bank of Am. Corp.* v. *Superior Court*,
198 Cal.App.4th 862, 130 Cal.Rptr.3d 504 (Cal. App. Ct. 2011) .................. 10

*Bell Atl. Corp.* v. *Twombly*,
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) .................. 20

*Brown* v. *Nat'l Football League*,
219 F. Supp. 2d 372 (S.D.N.Y. 2002) .................. 4, 5, 10, 18

*Century Sur. Co.* v. *Crosby Ins., Inc.*,
124 Cal.App.4th 116, 21 Cal.Rptr.3d 115 (Cal. App. Ct. 2004) .................. 21

*Clarett* v. *Nat'l Football League*,
369 F.3d 124 (2d Cir. 2004) .................. 5

*Conroy* v. *Regents of Univ. of Cal.*,
45 Cal.4th 1244, 91 Cal.Rptr.3d 532 (2009) .................. 21

*Ebeid* v. *Lungwitz*,
616 F.3d 993 (9th Cir. 2010) .................. 21

*Flood* v. *Kuhn*,
407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972) .................. 19

*Franchise Tax Bd.* v. *Constr. Laborers Vacation Trust*,
463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) .................. 9

Case 2:12-md-02323-AB Document 22 Filed 03/29/12 Page 6 of 44


*Friedman* v. *Merck & Co.*,
107 Cal.App.4th 454, 131 Cal.Rptr.2d 885 (Cal. App. Ct. 2003)....................10

*Frost* v. *F&R Realty Trust*,
No. 10-P-1079, 2011 WL 4563022 (Mass. App. Ct. Oct. 4, 2011) .................25

*Givens* v. *Tennessee Football, Inc.*,
684 F. Supp. 2d 985 (M.D. Tenn. 2010) .........................................3, 10, 16, 18

*Grisham* v. *Philip Morris U.S.A., Inc.*,
40 Cal.4th 623, 54 Cal.Rptr.3d 735 (2007).....................................................25

*Guzman* v. *Bridgepoint Educ., Inc.*,
No. 11-CV-69, 2011 WL 4964970 (S.D. Cal. Oct. 19, 2011) .........................22

*Hiraide* v. *Vast Sys. Tech. Corp.*,
No. 08-CV-04714 , 2009 WL 2390352 (N.D. Cal. Aug. 3, 2009)...................22

*Holmes* v. *Nat'l Football League*,
939 F. Supp. 517 (N.D. Tex. 1996).....................................................................4

*Idema* v. *Dreamworks, Inc.*,
162 F. Supp. 2d 1129 (C.D. Cal. 2001)..........................................................24

*Jeffers* v. *D'Allessandro*,
199 N.C.App. 86, 681 S.E.2d 405 (N.C. Ct. App. 2009).......................3, 10, 16

*Jenkins* v. *MCI Tel. Corp.*,
973 F. Supp. 1133 (C.D. Cal. 1997)................................................................18

*Johnson* v. *Lucent Techs., Inc.*,
653 F.3d 1000 (9th Cir. 2011).........................................................................21

*Kearney* v. *Salomon Smith Barney, Inc.*,
39 Cal.4th 95, 45 Cal.Rptr.3d 730 (2006).......................................................20

*Keech* v. *Berkeley Unified Sch. Dist.*,
162 Cal.App. 3d 464 210 Cal.Rptr. 7 (Cal. Ct. App. 1984).............................20

*In re Kirsh*,
973 F.2d 1454 (9th Cir. 1992).........................................................................14

*Klistoff* v. *Superior Court*,
157 Cal.App.4th 469, 68 Cal.Rptr.3d 704 (Cal. App. Ct. 2007)......................23

*Knievel* v. *ESPN*,
393 F.3d 1068 (9th Cir. 2005) .......................................................... 4

*Malone* v. *Marriott Int'l, Inc.*,
No. 09-CV-01980, 2010 WL 4537828 (C.D. Cal. Oct. 29, 2010) .................. 25

*Masco Contractors Servs. W.* v. *N.H. Ins. Co.*,
No. 04-CV-4183, 2005 WL 405361 (N.D. Cal. Feb. 17, 2005) ................ 23, 24

*Maxwell* v. *Nat'l Football League*,
No. 11-CV-08394 (C.D. Cal. Dec. 8, 2011) ............................................ *passim*

*Mirkin* v. *Wasserman*,
5 Cal.4th 1082, 23 Cal.Rptr.2d 101 (1993) .............................................. 22

*Nat'l Union Fire Ins. Co.* v. *Res. Dev. Servs., Inc.*,
No. 10-CV-01324, 2010 WL 4774929 (N.D. Cal. Nov. 16, 2010) .................. 23

*Neilson* v. *Union Bank of Cal., N.A.*,
290 F. Supp. 2d 1101 (C.D. Cal. 2003) ..................................................... 21

*Owner Operator Indep. Drivers Ass'n, Inc.* v. *Comerica Bank*,
540 F. Supp. 2d 925 (S.D. Ohio 2008) ...................................................... 25

*Partee* v. *San Diego Chargers Football Co.*,
34 Cal.3d 378, 194 Cal.Rptr. 367 (1983) .................................................. 20

*Powell* v. *Residential Mortg. Cap.*,
No. 09-CV-04928, 2010 WL 2133011 (N.D. Cal. May 24, 2010) .................. 20

*Sawhney* v. *Allstate Ins. Co.*,
No. 95-CV-2784, 1995 WL 500531 (C.D. Cal. June 23, 1995) ...................... 22

*Schuck* v. *Fed. Nat'l Mortg. Ass'n*,
No. 11-CV-691, 2011 WL 2580552 (E.D. Cal. June 28, 2011) ....................... 21

*Scognamillo* v. *Credit Suisse First Boston LLC*,
No. 03-CV-2061, 2005 WL 2045807 (N.D. Cal. Aug. 25, 2005) .................... 22

*Sherwin* v. *Indianapolis Colts, Inc.*,
752 F. Supp. 1172 (N.D.N.Y. 1990) ........................................................ *passim*

*Steel* v. *City of San Diego*,
726 F. Supp. 2d 1172 (S.D. Cal. 2010) ..................................................... 20

*Stringer* v. *Nat'l Football League*,
474 F. Supp. 2d 894 (S.D. Ohio 2007) .................................................. *passim*

*Toomer* v. *United States*,
615 F.3d 1233 (9th Cir. 2010) .................................................. 10

*In re Toyota Motor Corp. Litig.*,
No. 10-ML-02151, 2011 WL 6004569 (C.D. Cal. Nov. 30, 2011) ........... 21, 23

*Truex* v. *Garrett Freightlines, Inc.*,
784 F.2d 1347 (9th Cir. 1985) .................................................. 18

*United Steelworkers of Am.* v. *Rawson*,
495 U.S. 362, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990) .............................. 8, 18

*In re Wash. Trust Deed Serv. Corp.*,
224 B.R. 109 (9th Cir. 1998) .................................................. 22

*Westinghouse Hanford Co.* v. *Hanford Atomic Metal Trades Council*,
940 F.2d 513 (9th Cir. 1991) .................................................. 9

*Williams* v. *Nat'l Football League*,
582 F.3d 863 (8th Cir. 2009) .................................................. 14, 17

**STATUTES AND RULES**

28 U.S.C. § 1331 .................................................. 7

29 U.S.C. § 185(a) .................................................. 8

Cal. Civ. Proc. Code § 335.1 .................................................. 24

Fed. R. Civ. P. 9(b) .................................................. 21

Fed. R. Civ. P. 12(b)(6) .................................................. 1, 4

Fla. Stat. Ann. § 95.11 .................................................. 24

N.Y. C.P.L.R. § 214 .................................................. 24

Minn. Stat. Ann. § 541.05 .................................................. 24

Tenn. Code Ann. § 28-3-104(a)(1) .................................................. 24

V.A.M.S. § 516.120(4) .................................................. 24

Case 2:12-md-02323-AB Document 22 Filed 03/29/12 Page 9 of 44

**OTHER AUTHORITIES**

12 CAL. JUR. 3D *Civil Conspiracy* § 2 .......... 23

16 AM. JUR. 2D *Conspiracy* § 51 .......... 20

37 AM. JUR. 2D *Fraud and Deceit* § 26 .......... 20

37 C.J.S. *Fraud* § 12 .......... 20

37 C.J.S. *Fraud* § 28 .......... 20

57A AM. JUR. 2D *Negligence* § 71 .......... 20

**Preliminary Statement**

This action—contending that the NFL breached its duty to regulate the sport of professional football to minimize the risk of concussions to NFL players—is fundamentally a labor dispute that depends upon an interpretation of the terms of collective bargaining agreements and thus is completely preempted under section 301 of the Labor Management Relations Act (the "LMRA"). This Court has already made this precise determination with respect to plaintiffs' negligence claim against the NFL. *Maxwell* v. *Nat'l Football League*, No. 11-CV-08394, Dec. 8, 2011 Order at 1-2 (denying plaintiffs' motion to remand).

Plaintiffs are 73 former players (and the wives of some of them) who played in the NFL during various periods from 1960-2009. The vast majority of plaintiffs played NFL football pursuant to the terms of a collective bargaining agreement and the accompanying NFL Constitution and Bylaws (together, the "CBAs"). Although the CBAs evolved over time, each is a labor agreement that painstakingly details and comprehensively governs the relationship between the NFL, its Member Clubs, and its players. Among numerous other provisions, the CBAs (i) address the promulgation and review of rules and regulations, including those relating to player safety; (ii) delegate to the NFL's Member Clubs and their medical staff the responsibility for treating player injuries, including making "return-to-play" decisions; (iii) establish a joint committee, consisting of representatives from the NFL Players Association ("NFLPA") and Member Clubs, whose sole function is to address issues, and make recommendations, concerning player safety and welfare generally, and player equipment and playing rules specifically; (iv) provide for a player's right to compensation and other benefits in the event of injury; and (v) set forth the dispute resolution procedures to be followed in the event of a dispute involving any provision of the CBAs.

The CBAs—like all collective bargaining agreements affecting interstate commerce—are governed by section 301 of the LMRA. Section 301 is

intended to ensure that labor disputes are resolved under a uniform body of federal labor law and adjudicated in accordance with the grievance procedures set forth in collective bargaining agreements. Thus, section 301 completely preempts all state law claims—including tort claims—that are substantially dependent upon or inextricably intertwined with the terms of, or arise under, a collective bargaining agreement.

That is the case here with respect to the claims of plaintiffs who played NFL football pursuant to the terms of the CBAs. Plaintiffs' grievance—dressed up as tort claims for "negligence-monopolist," negligence, fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, conspiracy, and loss of consortium—hinges on allegations that the NFL had a "duty to protect the health and safety of its players by implementing rules, policies and regulations," yet purportedly failed to warn players of the risks of repeated concussions, did not "enact league-wide guidelines and mandatory rules regulating post-concussion medical treatment and return-to-play standards," and misrepresented certain facts relating to concussions. Plaintiffs also assert in conclusory fashion that NFLP breached its purported duty to ensure that "equipment it licensed and approved were [sic] of the highest possible quality and sufficient to protect the NFL players . . . from the risk of concussive brain injuries." At bottom, plaintiffs accuse the NFL Defendants of failing to act reasonably.

Adjudication of plaintiffs' claims substantially depends on an interpretation of the many CBA provisions addressing player health and safety. For example, the Court will be required to ascertain what duties, if any, the NFL Defendants owed to plaintiffs, and the scope of those duties, in order to evaluate whether the NFL Defendants acted reasonably. Because the CBAs allocate responsibility for treating player injuries generally—and making "return-to-play" decisions specifically—to Member Clubs and their physicians, a court cannot make such an assessment in a vacuum; it must first consider the scope of pre-existing

duties delegated to the Clubs and their physicians under the CBAs. Indeed, numerous courts have so held in determining that near-identical claims against the NFL and its Clubs by former NFL players seeking to impute to others duties expressly prescribed in the CBAs are preempted under section 301. *See, e.g.*, *Maxwell*, Dec. 8, 2011 Order at 1-2; *Givens* v. *Tennessee Football, Inc.*, 684 F. Supp. 2d 985, 990-91 (M.D. Tenn. 2010); *Stringer* v. *Nat'l Football League*, 474 F. Supp. 2d 894, 909-11 (S.D. Ohio 2007); *Sherwin* v. *Indianapolis Colts, Inc.*, 752 F. Supp. 1172, 1177-79 (N.D.N.Y. 1990); *Jeffers* v. *D'Allessandro*, 199 N.C.App. 86, 95-96, 681 S.E.2d 405, 412 (N.C. Ct. App. 2009). The result here should be no different.

Plaintiffs' claims against the NFL are also preempted because they rest on purported obligations that arise under the CBAs. The crux of the FAC is that the NFL failed to implement adequate rules and regulations regarding player health and safety. The CBAs, however, expressly delineate the obligations of the NFL with respect to both the promulgation and enforcement of health and safety-related rules for NFL players.

To the extent that plaintiffs' claims are not preempted, they cannot survive in any event either because the CBAs contain a "no suit" provision that expressly bars these claims and/or the claims are deficiently pleaded and time-barred. *First*, plaintiffs' "negligence-monopolist" claim against the NFL fails because the claim is fiction. Monopoly power does not create a duty to the public at large to minimize the risks of concussions. *Second*, plaintiffs' negligence claim against NFLP consists solely of five boilerplate paragraphs in the proper count that fail to allege any duty whatsoever owed by NFLP to plaintiffs. *Third*, plaintiffs fail to allege the essential elements of their fraud and negligent misrepresentation claims, including how plaintiffs—nearly all of whom retired before the NFL made any alleged statements regarding concussions—could have justifiably relied on such statements, or how the NFL's conduct caused plaintiffs' purported injuries.

*Fourth*, plaintiffs' conspiracy claim, consisting of three conclusory paragraphs, does not identify by name a single co-conspirator, let alone specifics regarding the purported conspiracy. *Finally*, plaintiffs' negligence claims are time-barred because no jurisdiction provides more than a six-year limitations period for personal injury claims, and plaintiffs' purported injuries occurred during their respective NFL careers—nearly all of which concluded by 2005. Furthermore, to the extent plaintiffs' claims could be tolled by a "discovery rule," plaintiffs have failed to allege facts sufficient to invoke such a rule.

In sum, the FAC—a workplace grievance improperly (and insufficiently) pleaded in tort—should be dismissed with prejudice.

**Statement of Facts**[1]

The NFL is an unincorporated association of 32 Member Clubs. (*See* FAC ¶¶ 74, 90.) The NFL promotes, organizes, and regulates the sport of professional football in the United States. *Stringer*, 474 F. Supp. 2d at 898. NFLP is a limited liability company organized under the laws of the State of Delaware and headquartered in New York. (FAC ¶ 75.) NFLP "serves as the representative of the [NFL and its Clubs] for the licensing of their trademarks and logos." (www.nfl.info/NFLConsProd/Welcome/cpAgreement.htm.)

[1] This summary is based on the allegations of the FAC—the factual averments of which the NFL denies but assumes to be true for purposes of this motion only—and, where applicable, public records and documents integral to plaintiffs' claims, including the CBAs. This Court may consider the CBAs in adjudicating this motion under Rule 12(b)(6) because the CBAs are integral to plaintiffs' claims and judicially noticeable, and because plaintiffs cited the CBAs in their remand motion. *See Knievel* v. *ESPN*, 393 F.3d 1068, 1077 (9th Cir. 2005) (permitting reference to a document when "plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document"); *Brown* v. *Nat'l Football League*, 219 F. Supp. 2d 372, 376, 386-87 (S.D.N.Y. 2002) (considering CBA provisions in order to adjudicate NFL's motion to dismiss); *Holmes* v. *Nat'l Football League*, 939 F. Supp. 517, 520 n.2 (N.D. Tex. 1996) (same); *cf. Stringer*, 474 F. Supp. 2d at 902 (considering CBA provisions and converting the NFL's motion to dismiss into a summary judgment motion). Moreover, the NFL has publicly posted certain CBAs on its website at the following address: http://static.nfl.com/static/content/public/image/cba/nfl-cba-2006-2012.pdf.

Plaintiffs are 73 former NFL players who played during various periods from 1960-2009, and the spouses of some of them. (FAC ¶¶ 176-541.)

**The NFL Collective Bargaining Agreements**

The relationship between the NFL and plaintiffs is defined by the CBAs that were operative during the vast majority of plaintiffs' careers.[2] The CBAs are the product of exhaustive arm's-length negotiations between the NFL Management Council ("NFLMC"), the exclusive bargaining representative of the NFL, and the NFLPA, the exclusive bargaining representative of NFL players. As "the union for professional football players," the NFLPA "[r]epresents all players in matters concerning . . . working conditions and protects their rights as professional football players." (www.nflplayers.com/about-us.) The CBAs negotiated by the NFLPA and NFLMC, along with the NFL Constitution and Bylaws to which the NFLPA agreed to be bound, thus "represent[] the complete understanding of the parties on all subjects covered [t]herein" and are binding on the NFL and on all players and their heirs, executors, administrators, and representatives.[3] (Ex. 4,[4] 1977 CBA Preamble and Art. II § 1; Ex. 5, 1982 CBA Preamble and Art. II § 1; Ex. 6, 1993 CBA Preamble and Art. III § 1; Ex. 10, 2006 CBA Preamble and Art. III § 1; *see also* Ex. 3, 1970 CBA Preamble and Art. II § 4.)[5]

The CBAs cover a broad range of subjects affecting the terms and conditions of employment of NFL players; although the CBAs have changed over

---

[2] Appendix A sets forth the former player plaintiffs and the operative CBAs under which they played.

[3] *See Clarett* v. *Nat'l Football League*, 369 F.3d 124 (2d Cir. 2004) ("In the [CBA], the union agreed to waive any challenge to the Constitution and Bylaws and thereby acquiesced in the continuing operation of the . . . rules contained therein."); *see also Brown*, 219 F. Supp. 2d at 386 ("[The NFL Constitution and Bylaws were] bargained over and included within the scope of the CBA.").

[4] All exhibits cited in this memorandum are attached to the accompanying Declaration of Dennis L. Curran, dated December 15, 2011.

[5] The NFL has operated continuously under a CBA since 1968, except between August 31, 1987 and March 29, 1993, when no CBA was in place. (*See* Ex. 5, 1982 CBA Art. XXXVIII § 2; Ex. 6, 1993 CBA Art. LVIII § 1.)

time pursuant to the collective bargaining process, every CBA addresses player health and safety and provides grievance procedures for the resolution of disputes under the CBAs. Appendix B sets forth examples of these CBA provisions.

Thus, the CBAs delegate to the NFL's Member Clubs and their medical staff the responsibility for treating player injuries. For example, certain CBAs delegate to Club physicians the responsibility for making "return to play" decisions and advising players of the risk of continued performance, and set forth the qualifications for Club medical staff. (*See* Appx. B, Section A.)

Certain CBAs also set forth player rights and obligations related to medical care. For example, the CBAs provide that players have the right to investigate the adequacy of medical care provided by a Club physician and to obtain a second medical opinion. (*See* Appx. B, Section B.)

The CBAs also delineate the manner in which rules, including rules concerning player safety, are promulgated and enforced. For example, all rule changes must be presented to the NFL or approved by a standing committee of the NFL vested with the authority to recommend playing rule changes, and the Clubs, the NFLPA, and the NFL all are charged with the responsibility for reviewing player safety aspects of playing rules. (*See* Appx. B, Section C.)

Furthermore, the CBAs include numerous provisions regarding players' rights to compensation and benefits in the event of injuries, including the right to workers' compensation, supplemental disability benefits, and termination pay. (*See* Appx. B, Section D.)

Finally, the CBAs provide for an exclusive dispute resolution procedure to address disputes arising under the CBAs, and bar players from bringing any suit against the NFL related to the CBAs or NFL playing rules. (*See* Appx. B, Section E.)

**The First Amended Complaint**

Notwithstanding that the NFLPA, on behalf of all NFL players, agreed to CBAs that expressly address issues relating to player health and safety and require that all disputes arising under the CBAs be resolved through grievance procedures—and that this Court, in ruling on plaintiffs' motion to remand, recently held that plaintiffs' negligence claim was preempted—plaintiffs filed their FAC asserting claims for "negligence-monopolist," negligence, fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, conspiracy, and loss of consortium against the NFL, and claims for negligence and loss of consortium against NFLP, and seeking, among other relief, damages for concussion-related injuries sustained during their football careers. (FAC ¶¶ 542-607, 619-23, 641-43, p. 89.)[6]

The FAC alleges that the NFL has a "duty to protect the health and safety of its players by implementing rules, policies and regulations." (*Id*. ¶¶ 561-62.) Plaintiffs allege that the NFL breached this duty by, among other things, "failing to . . . enact league-wide guidelines and mandatory rules regulating post-concussion medical treatment and return-to-play standards for players who suffer a concussion," and "fail[ing] to regulate and monitor practices, games, rules, equipment, and medical care so as to minimize the long-term risks associated with concussive brain injuries suffered by the NFL players." (*Id*. ¶¶ 125, 567(b)); *see also id*. ¶¶ 124, 126, 567(a), 567(c)-(f), 569.) The FAC asserts that the NFL failed to "take reasonable and prudent actions to protect the health and safety of its players," thereby injuring plaintiffs. (*Id*. ¶¶ 562, 572; *see also id*. ¶¶ 112, 113, 126, 128(a)-(l), 543, 552(a)-(b), 555, 570.)

[6] Although plaintiffs assert that this Court has subject matter jurisdiction over this action because "there is diversity of citizenship," the Court in fact has jurisdiction because plaintiffs' claims raise a federal question. 28 U.S.C. § 1331; *Maxwell*, Dec. 8, 2011 Order at 2 ("removal of this action was proper" because "at least one federal claim is present"); FAC ¶ 84.

Plaintiffs also contend that "[f]rom 2005 through June of 2010, the NFL made . . . material misrepresentations . . . that there was no link between concussions and later life cognitive/brain injury." (*Id.* ¶ 575; *see also id.* ¶¶ 596-604.) According to the FAC, "[t]he NFL knew as early as the 1920's of the harmful effects . . . of concussions," and fraudulently concealed those effects. (*Id.* ¶¶ 121, 127; *see also id.* ¶¶ 129-60, 585-95.)

Finally, plaintiffs allege—absent any supporting factual allegations—that because "the NFL possesses monopoly power over American Football," it somehow "owed a duty to everyone" to "protect against the long-term effects of CTE and/or concussion injury"; that the NFL "conspired with its team members and/or independent contractors, who were directed to . . . reject the" link between concussions and long-term injuries; that NFLP breached its "duty to ensure that the equipment it licensed and approved were [sic] of the highest possible quality and sufficient to protect the NFL players"; and that "the wife Plaintiffs have been damaged" as a "result of the carelessness, negligence and recklessness of" the NFL Defendants. (*Id.* ¶¶ 120, 606, 620, 642.)

**Argument**

## I. PLAINTIFFS' CLAIMS ARE PREEMPTED BY THE LMRA

It is well settled that section 301 of the LMRA completely preempts all state law claims—including tort claims—that are substantially dependent on an interpretation of the terms of, or arise under, a collective bargaining agreement. 29 U.S.C. § 185(a) (codifying section 301); *Allis-Chalmers Corp.* v. *Lueck*, 471 U.S. 202, 213, 220, 105 S.Ct. 1904, 1913, 1916, 85 L.Ed.2d 206 (1985) (claims that are "substantially dependent upon analysis of the terms of [a collective bargaining] agreement," and "state-law rights and obligations that do not exist independently of [collective bargaining] agreements," are preempted); *United Steelworkers of Am.* v.

*Rawson*, 495 U.S. 362, 368, 110 S.Ct. 1904, 1909, 109 L.Ed.2d 362 (1990); *Adkins* v. *Mireles*, 526 F.3d 531, 539 (9th Cir. 2008) (same).[7]

The "preemptive force of § 301 is so powerful" because Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules. *Franchise Tax Bd.* v. *Constr. Laborers Vacation Trust*, 463 U.S. 1, 23, 103 S.Ct. 2841, 2854, 77 L.Ed.2d 420 (1983); *Adkins*, 526 F.3d at 539 ("This interpretation minimizes the danger that contract terms 'might have different meanings under state and federal law[,] . . . inevitably exert[ing] a disruptive influence upon . . . collective agreements'" (quoting *Allis-Chalmers*, 471 U.S. at 210-11)). Moreover, "a central tenet of federal labor-contract law under § 301 [is] that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance." *Allis-Chalmers*, 471 U.S. at 220. Section 301 preemption thus "preserves the central role of arbitration in our system of industrial self-government." *Id*. at 219; *Westinghouse Hanford Co.* v. *Hanford Atomic Metal Trades Council*, 940 F.2d 513, 517 (9th Cir. 1991) ("[T]he grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government.").

Plaintiffs' claims here are completely preempted by section 301 because, among other reasons, these claims are substantially dependent upon an interpretation of numerous provisions in the applicable CBAs. Indeed, a federal court, in *Stringer* v. *National Football League*, considered a claim against the NFL nearly identical to the claims here—premised on the NFL's alleged failure "to minimize the risk of heat-related illness," and "establish regulations" to ensure "adequate care and monitoring of players suffering from heat-related illness"—and, like numerous other courts considering state law tort claims against the NFL or its

[7] One plaintiff, Patrick Heenan, played professional football prior to the enactment of any CBA. (FAC ¶ 293.) Nevertheless, for ease of reference, the NFL Defendants refer to "plaintiffs" in this section.

Member Clubs by NFL players relating to health and safety provisions, held that plaintiff's claim was completely preempted by section 301. 474 F. Supp. 2d at 903, 909-11; *see also Maxwell*, Dec. 8, 2011 Order at 1 (negligence claim against NFL preempted); *Givens*, 684 F. Supp. 2d at 990-91 (negligent infliction of injury, outrageous conduct, and bad faith performance of contract claims against Member Club preempted); *Sherwin*, 752 F. Supp. at 1177-79 (negligence, fraud, negligent misrepresentation, negligent and intentional infliction of emotional distress, and medical malpractice claims against Member Club preempted); *Jeffers*, 199 N.C.App. at 94 (negligent retention and intentional misconduct claims against Member Club preempted).[8]

**A. <u>Plaintiffs' Claims Are Substantially Dependent on an Interpretation of the Terms of the CBAs</u>**

Plaintiffs' claims—all of which are substantially dependent on an interpretation of the numerous CBA provisions concerning player health and safety—are preempted by section 301 of the LMRA.

**1. Plaintiffs' Claims Require Interpretation of the CBAs**

Plaintiffs' claims against the NFL, at their core, are premised on the NFL's alleged "duty to take reasonable and prudent actions to protect the health and safety of its players."[9] (FAC ¶ 562; *see also id.* ¶¶ 120(a)-(g), 545-48, 553, 562,

---

[8] *But see Brown*, 219 F. Supp. 2d at 379-80, 382 (negligence claim against NFL not preempted because referee hired by NFL owed a duty to the "general public" to "use due care in throwing small weighted objects" because the "careless throwing of objects" could have harmed "any bystander"; the alleged duty therefore existed "independent of any CBA").

[9] "The first element of any negligence claim is the existence of a duty." *Toomer* v. *United States*, 615 F.3d 1233, 1236 (9th Cir. 2010). "Negligence-monopolist"—although a fictional claim, as discussed in Section III.A., *infra*—is premised on numerous purported duties. (FAC ¶¶ 120, 552.) Similarly, an essential element of fraudulent concealment is a duty to disclose, and negligent misrepresentation requires a duty to provide accurate information. *Bank of Am. Corp.* v. *Superior Court*, 198 Cal.App.4th 862, 871, 130 Cal.Rptr.3d 504, 510 (Cal. App. Ct. 2011); *Friedman* v. *Merck & Co.*, 107 Cal.App.4th 454, 477, 131 Cal.Rptr.2d 885 (Cal. App. Ct. 2003). Plaintiffs' conspiracy claim is premised on the allegation that the NFL—in conjunction with others—breached its alleged duty by "reject[ing] the causal connection between multiple concussions" and long-term

564.) As discussed above, plaintiffs contend that the NFL breached that purported duty by, among other alleged acts, "failing to . . . enact league-wide guidelines and mandatory rules regulating post-concussion medical treatment and return-to-play standards for players who suffer a concussion," "fail[ing] to warn and protect NFL players . . . against the long-term brain injury risks associated with football-related concussions," and "fail[ing] to regulate and monitor practices, games, rules, equipment, and medical care so as to minimize the long-term risks associated with concussive brain injuries." (*Id.* ¶¶ 124-25, 567(b); *see also id.* ¶¶ 126, 561-63, 552-54.) Those allegations strike at the heart of the myriad health and safety provisions in the CBAs and plainly require interpretation of them.

As detailed above, the CBAs contain numerous provisions that delegate responsibilities for player health and safety to NFL committees, the NFL's Member Clubs and their medical staff, and the NFLPA (or the players themselves). Regarding the "identification and treatment of concussive brain injury," "return to play" decisions, and "warn[ings] . . . against the long-term brain injury risks associated with . . . concussions," the CBAs charge Club medical staff with such obligations. (*See* Appx. B, Section A; FAC ¶¶ 124, 567(e).) As to providing "competent information and directions to NFL athletic trainers," the CBAs already mandate that "[a]ll full-time head trainers [be] certified by the National Athletic Trainers Association," and that "[a]ll part-time trainers must work under the direct supervision of a certified trainer." (*See* Appx. B, Section A; FAC ¶ 569.)

Regarding the "enact[ment of] league-wide guidelines and mandatory rules" on player health and safety issues, the CBAs task the NFL and Member Clubs with "amend[ing] or chang[ing]" the NFL "[p]laying rules"; all proposed rule

---

injuries. (FAC ¶ 606; *compare id.* ¶¶ 552(h), (j), 569-70, 572.) Plaintiffs' fraudulent misrepresentation claim is preempted because it substantially depends on the interpretation of CBA provisions, as discussed below.

changes voted on by the Clubs must first be presented to the NFL or approved by a standing committee of the NFL. (*See* Appx. B, Section C; FAC ¶ 125.)

Finally, the CBAs grant NFL players certain rights and obligations relating to health and safety issues. (*See* Appx. B, Section B.)

As these (and other) CBA provisions make clear, an assessment of plaintiffs' claims against the NFL necessarily and substantially depends on an interpretation of the CBAs. Plaintiffs allege that the NFL failed to "take *reasonable* and prudent actions to protect the health and safety of its players," and having "assumed an independent tort duty to invoke rules that protect the health and safety of its players," the NFL had a duty to do so with reasonable care pursuant to "Section 323 of the Restatement (Second) of Torts." (FAC ¶¶ 126, 560; emphasis added; *see also id*. ¶¶ 112, 113, 124, 128(a)-(l), 543, 552(a)-(b), 555, 562, 563, 570.) But as discussed above, the CBAs already delegate responsibility for each of these tasks. (*See* Statement of Facts at pp. 5-6; Appx. B, Sections A-C.)

Thus, a court cannot evaluate the purported duties owed by the NFL, the scope of those duties, or whether the NFL acted "reasonably" without first considering these preexisting obligations regarding player health and safety imposed by the CBAs. For example, assessing whether the NFL failed to act "reasonably" by not "enact[ing] league-wide guidelines and . . . mandatory rules regulating . . . return to play" would first require interpretation of the CBA provision that "[a]ll determinations of recovery time for . . . injuries must be by the Club's medical staff and in accordance with the Club's medical standards"—specifically, what Club medical staff was tasked to do and what standards were applicable in order to determine what NFL conduct would be "reasonable" under the circumstances. (FAC ¶ 125; Ex. 20, 1980 Supp. to NFL Constitution and Bylaws Art. XVII.)

Indeed, in finding plaintiffs' negligence claim "substantially dependent upon an analysis of certain CBA provisions" and thus "preempted," this Court so

held: "The CBA places primary responsibility for identifying . . . physical conditions on the team physicians . . . . The physician provisions of the CBA must be taken into account in determining the degree of care owed by the NFL and how it relates to the NFL's alleged failure to establish guidelines or policies to protect the mental health and safety of its players." *Maxwell*, Dec. 8, 2011 Order at 1-2; *see also Stringer*, 474 F. Supp. 2d at 910-11.

Plaintiffs' negligence claim against NFLP—based solely on NFLP's purported "duty to ensure that the equipment it licensed and approved [was] . . . sufficient to protect the NFL players . . . from the risk of concussive brain injuries"—is preempted for the same reasons. (FAC ¶ 620.) Although plaintiffs assert that NFLP was obligated to protect NFL players from the risk of brain injury, as discussed, the CBAs contain numerous provisions that delegate responsibility for treating player injuries and implementing safety-related rules and regulations among the NFL, its Member Clubs, and the NFLPA, all of which must be interpreted to assess any such duty of NFLP. Moreover, the CBAs establish the Joint Committee on Player Safety and Welfare specifically to address, among other issues, "playing equipment." (Ex. 4, 1977 CBA Art. XI; Ex. 5, 1982 CBA Art. XI; Ex. 6, 1993 CBA Art. XIII § 1(a); Ex. 10, 2006 CBA Art. XIII § 1(a); *see also* Ex. 3, 1970 CBA Art. V.) Thus, the scope of NFLP's alleged duty to license equipment that adequately protects players can only be assessed by reviewing and interpreting the Joint Committee's concomitant duty to discuss "playing equipment."

Simply put, the NFL Defendants' alleged duties—even if "assumed" as plaintiffs allege—cannot be considered in a "vacuum," but must be calibrated according to the scope of the duties contractually delegated to others by the CBAs. *Stringer*, 474 F. Supp. 2d at 910-11; FAC ¶ 560.[10]

---

10 Although the *Stringer* court held that a negligence claim based on the NFL Defendants' purported duty "to ensure that the players had safe equipment," was not preempted, its decision is predicated on two faulty premises. 474 F. Supp. 2d at 912. First, the court found the claim was not inextricably intertwined with the CBA because—although the CBA plainly establishes the "Joint Committee" for the

Plaintiffs' fraudulent misrepresentation claim—as well as their fraudulent concealment and negligent misrepresentation claims—must also be considered in the context of the CBAs. The Court cannot determine whether plaintiffs justifiably relied on information provided by the NFL without interpreting the CBAs' health and safety provisions. *See Williams* v. *Nat'l Football League*, 582 F.3d 863, 881 (8th Cir. 2009) (players' fraud claim—that the NFL knew that a supplement contained a banned substance but failed to warn the players—was "preempted because the Players cannot demonstrate the requisite reasonable reliance . . . without resorting to the CBA," which tasked specific individuals with responsibility for knowing the contents of supplements); *see also Atwater* v. *Nat'l Football League*, 626 F.3d 1170, 1183 (11th Cir. 2010) (former players' negligent misrepresentation claim—that the NFL provided inaccurate background information regarding investment advisors for the players—was preempted because "whether Plaintiffs reasonably relied on Defendants' alleged misrepresentations is substantially dependent on the CBA's language," which delegated responsibility for player finances to specific individuals). Plaintiffs must demonstrate that reliance was justified in light of "all of the circumstances surrounding the particular transaction." *In re Kirsh*, 973 F.2d 1454, 1460 (9th Cir. 1992). Thus, any analysis of plaintiffs' purported reliance on alleged statements by the NFL necessarily depends on an interpretation of the numerous CBA provisions that define the obligations of the NFL, Member Clubs, Club physicians, and players regarding

---

"'purpose of discussing the player safety and welfare aspects of playing equipment'"—the "NFL Defendants are not members of that committee and are not required to adopt [its] recommendations." *Id*. (quoting CBA). But, as discussed, whether or not the NFL Defendants are members of the Committee, it is impossible to determine the scope of the NFL Defendants' purported duty—or whether they acted "reasonably" with regard to playing equipment—without first considering the express "purpose" of the Committee and the equipment-related obligations of its members. (FAC ¶ 555.) Second, the *Stringer* court determined that "the CBA imposes no duty on [the NFL Defendants] to ensure that the equipment . . . adequately protects from . . . injury." 474 F. Supp. 2d at 912. But, as noted, numerous CBA provisions do in fact delegate responsibility to the NFL for implementing equipment-related rules and regulations. (*See* Appx. B, Section C.)

player health and safety and—as the parties bargained—expressly delegate those duties to the Member Clubs and their medical staff. *See Sherwin*, 752 F. Supp. at 1177-79 (fraud claim against Member Club preempted because CBA establishes "duty of a club physician, and arguably the club," to inform player of adverse physical conditions).[11]

**2. The Case Law Compels Preemption of Plaintiffs' Claims**

As this Court found in holding that plaintiffs' negligence claim is preempted, *Stringer* v. *National Football League*—holding that a wrongful death claim against the NFL founded on allegations substantially similar to those advanced here was preempted under section 301—provides "persuasive" authority. *Maxwell*, Dec. 8, 2011 Order at 1; *Stringer*, 474 F. Supp. 2d at 909-11. In *Stringer*, the widow of an NFL player, Korey Stringer, brought a wrongful death claim against the NFL (and others) after Stringer died from heatstroke suffered at the Minnesota Vikings' training camp. Like plaintiffs here, the *Stringer* plaintiff alleged that the NFL assumed a duty to its players "to use ordinary care in overseeing, controlling, and regulating practices, policies, procedures, equipment, working conditions and culture of the NFL teams . . . to minimize the risk of heat-related illness," and that the NFL breached this duty by "failing to establish regulations" to ensure "adequate care and monitoring of players suffering from heat-related illness" and "regulation of . . . return to practice." 474 F. Supp. 2d at 899, 903-04; *cf.* FAC ¶¶ 567(b), (e), 569.

[11] Plaintiffs' attempt to avoid preemption—by asserting that they are not covered by CBAs because "NFL retired players have never been the subject of or a party to Collective Bargaining"—is unavailing. (FAC ¶ 101.) Plaintiffs' claims are premised solely on alleged conduct occurring at the time that they played NFL football. (*See, e.g.*, *id.* ¶ 120(a) ("[The NFL] owed a duty to protect Plaintiffs on the playing field").) Therefore, to resolve plaintiffs' claims, the court will need to interpret provisions of the CBAs that were operative during plaintiffs' NFL careers—the time period of the alleged misconduct. *See, e.g.*, *Atwater*, 626 F.3d at 1175 n.3 (analyzing CBA provision that "was in effect at the time the events underlying this litigation occurred"); *Stringer*, 474 F. Supp. 2d at 906 n.7 (referring to CBA "in effect at the time of" the events at issue in the litigation).

The *Stringer* court determined that plaintiff's claim was preempted because it was "substantially dependent upon an analysis of certain CBA provisions imposing duties on the clubs with respect to medical care and treatment of NFL players." 474 F. Supp. 2d at 909 (internal quotations omitted). Specifically, and among other reasons, the court found because the CBA "places primary responsibility" for treating player physical conditions on the team physicians, the CBA provisions doing so "must, therefore, be taken into account in determining the degree of care owed by the NFL and what was reasonable under the circumstances." *Id*. at 910-11. The court thus held that, even if the NFL had voluntarily assumed a duty, "the degree of care owed cannot be considered in a vacuum" but instead "must be considered in light of pre-existing contractual duties imposed by the CBA on the individual NFL Clubs concerning the general health and safety of the NFL players." *Id*. at 910.

*Stringer* is consistent with numerous other decisions holding that player injury claims that seek to impute to NFL Clubs duties owed by others under the CBA are preempted because they require interpretation of CBA terms. *See, e.g.*, *Givens*, 684 F. Supp. 2d at 990-91 (former player's claim that Club failed to inform him of a knee defect that was detected by a Club physician preempted because "whether a physician's failure to advise a player of his medical condition should be imputed to the club or whether the club has a duty independent of the physician to advise a player of his medical condition, are 'inextricably intertwined' with the provisions of the CBA"); *Sherwin*, 752 F. Supp. at 1177-78 (former player's claims that Club provided negligent medical treatment and fraudulently concealed the extent of the player's injury preempted because Club "did not owe a duty to provide medical care to the plaintiff independent of the relationship established in the" CBAs); *Jeffers*, 199 N.C.App. at 95-96 (former NFL player's claims against Club—that team physician performed unauthorized procedures during knee surgery—preempted because the claim was substantially dependent on

an analysis of CBA provisions setting forth the Clubs' and players' rights and duties in connection with medical care); *see also Williams*, 582 F.3d at 881 (negligence claim against the NFL preempted because "whether the NFL . . . owed the Players a duty to provide . . . a warning [that a supplement contained a banned substance under the NFL Drug Policy] cannot be determined without examining the parties' legal relationship and expectations as established by the CBA and the Policy"); *Atwater*, 626 F.3d at 1182 (former players' claims preempted because court "would . . . have to consult the CBA to determine the scope of the legal relationship between Plaintiffs and the NFL").

**B. Plaintiffs' Claims Against the NFL Arise Under the CBA**

Plaintiffs' claims against the NFL are preempted by section 301 for an additional reason: They are premised on rights and obligations that arise under the CBAs. *See Allis-Chalmers*, 471 U.S. at 213. As the FAC makes clear, plaintiffs' claims hinge fundamentally on the NFL's purported failure to implement adequate "rules" regarding player health and safety. (*See, e.g.*, FAC ¶¶ 125, 126, 560, 564, 567(e).) The CBAs, however, establish the duty of the NFL and its Clubs to implement and enforce rules regarding professional football generally, and health and safety-related rules in particular. Indeed, the CBAs delegate to the NFL and its Clubs the obligation to "amend[] or change[]" all NFL "[p]laying rules," and further require that all proposed rule changes be presented to the NFL prior to a vote. (*See* Appx. B, Section C.) Thus, the NFL's alleged duty—to "enact reasonable and prudent rules to protect players against the risks associated with repeated brain trauma"—arises under the CBAs.[12] (FAC ¶ 126.)

---

[12] The *Stringer* court concluded that the NFL's alleged duties did not arise under the CBA. Unlike the *Stringer* plaintiff—who alleged "that in issuing the [Hot Weather] guidelines," the NFL assumed a duty and breached it because the Guidelines were allegedly "incomplete and contrary to the best practices"—plaintiffs here allege that the NFL "fail[ed] to enact rules" relating to player health and safety—obligations that are, as discussed, created by the CBAs. *Stringer*, 474 F. Supp. 2d at 905; FAC ¶ 546; *see also id*. ¶¶ 125, 126, 547, 563.

That this purported obligation arises under the CBAs is confirmed by the fact that the duty does not exist independent of the CBAs: The NFL does not owe duties to promulgate rules regarding player health and safety to "every person in society." *See Rawson*, 495 U.S. at 371 (holding a state law right only arises outside of a CBA where defendant is "accused of acting in a way that might violate the duty of reasonable care owed to every person in society"); *Brown*, 219 F. Supp. 2d at 380 ("To be independent of the CBA, a tort claim must allege a violation of a duty 'owed to every person in society' as opposed to a duty owed only to employees covered by the collective bargaining agreement" (quoting *Rawson*, 495 U.S. at 362)); *Sherwin*, 752 F. Supp. at 1178 (finding fraud claim arose under CBA because "[t]he Colts owed a duty to . . . provide truthful information regarding medical treatment . . . only to their players covered by the standard player agreement and the CBA," not "to every person in society" (quoting *Rawson*, 495 U.S. at 371)). *But see Stringer*, 474 F. Supp. 2d at 908 (suggesting *Brown*'s reading of *Rawson* is "too broad").[13]

* * *

In sum, all of plaintiffs' claims are preempted under section 301 and should be dismissed.[14] *Givens*, 684 F. Supp. 2d at 991-92 ("[Because] preempted claims must first be presented through the arbitration procedure established in a collective bargaining agreement, those claims should be dismissed"); *Truex* v. *Garrett Freightlines, Inc.*, 784 F.2d 1347, 1353 (9th Cir. 1985) (same).

---

13 Plaintiffs' attempt to avoid preemption—by alleging that the NFL "owed a duty to everyone" by virtue of its purported "monopoly power over American Football"—fails. (FAC ¶ 120.) As discussed in Section III.A., *infra*, monopoly power does not establish a duty to the general public to minimize the risk of concussions, and plaintiffs appear to have concocted this claim solely in an attempt to avoid preemption of their claims.

14 The plaintiff spouses' loss of consortium claims are derivative of the former players' claims and should therefore be dismissed. *Jenkins* v. *MCI Tel. Corp.*, 973 F. Supp. 1133, 1139-40 (C.D. Cal. 1997) (finding spouse's derivative loss of consortium claim failed because husband's state law claims were preempted); *cf. Sherwin*, 752 F. Supp. at 1179 (staying loss of consortium claim pending arbitration of underlying preempted claims).

## II. THE CBAS' "NO SUIT" PROVISION BARS PLAINTIFFS' CLAIMS[15]

All claims against the NFL brought by the 69 plaintiffs who played after 1977 must be dismissed because, since 1977, all CBAs have contained a "no suit" provision that bars the very claims asserted here. (*See* Appx. B, Section E.) Specifically, the 1977 and 1982 CBAs prohibit claims "against the NFL . . . relating to any aspect of the NFL rules" and "the Constitution and Bylaws," and the 1993 and 2006 CBAs forbid claims against "the NFL . . . relating to any term of [the CBAs]" and "the Constitution and Bylaws." (*Id*.) As discussed, plaintiffs' claims by their terms are premised on the NFL's alleged "failure to . . . enact . . . rules regulating post-concussion medical treatment and return-to-play standards," and so undoubtedly "relat[e] to" the CBAs and the accompanying Constitution and Bylaws. (FAC ¶ 125; *see also id*. ¶ 120, 126, 546-47, 560-64, 567(e).) Thus, these plaintiffs' claims are barred.

## III. PLAINTIFFS FAIL TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED

Plaintiffs' claims also fail because they have no basis in law, are deficiently pleaded, or are time barred.

### A. Plaintiffs' "Negligence-Monopolist" Claim Fails as a Matter of Law

Plaintiffs' "negligence-monopolist" claim does not exist. Neither state law nor the Sherman Act recognizes such a cause of action because "monopoly power" does not—contrary to plaintiffs' allegations—create "a duty to . . . the public at large to protect against the long-term effects of CTE and/or concussion injury." (FAC ¶¶ 120(i), 543.) Nor do plaintiffs cite any basis for this purported duty. Moreover, the Commerce Clause bars application of state antitrust laws to professional football. *See Flood* v. *Kuhn*, 407 U.S. 258, 284-85, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972) (Commerce Clause bars application of state antitrust law to

---

15 The arguments set forth in Sections II and III apply to the extent that the Court finds that any of plaintiffs' claims is not preempted by section 301.

professional baseball); *Partee* v. *San Diego Chargers Football Co.*, 34 Cal.3d 378, 384-85, 194 Cal.Rptr. 367 (1983) (application of state antitrust law to professional football impermissibly burdens interstate commerce).

**B. <u>The FAC Fails To State a Claim for Negligence Against NFLP</u>**

Plaintiffs' negligence claim against NFLP fares no better. To state a claim for negligence, plaintiffs must allege facts showing that NFLP owed a duty to plaintiffs; a breach of that duty; and injury to plaintiffs as a proximate result of the breach. *Keech* v. *Berkeley Unified Sch. Dist.*, 162 Cal.App. 3d 464, 468 210 Cal.Rptr. 7 (Cal. Ct. App. 1984).[16] Mere "labels and conclusions" or a "formulaic recitation of the elements . . . will not do." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007). Here, plaintiffs—resting solely on five boilerplate paragraphs in the proper count—allege *no* facts in support of their negligence claim against NFLP. (FAC ¶¶ 619-23.) Plaintiffs do not allege the source of NFLP's purported duty, that they wore helmets "approved" by NFLP at the time of their purported injuries, or how NFLP's purported breach proximately caused plaintiffs' injuries. *See Powell* v. *Residential Mortg. Cap.*, No. 09-CV-04928, 2010 WL 2133011, at *9 (N.D. Cal. May 24, 2010) (conclusory assertion that defendant owed a duty is insufficient because "the Court need not accept Plaintiffs' legal conclusions as true"); *Steel* v. *City of San Diego*, 726 F.

---

16 Although plaintiffs do not allege under which state laws their purported negligence, fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation and conspiracy claims arise, the elements of these claims are substantially similar across the various states and the Court need not conduct a choice of law analysis at this stage. *See Kearney* v. *Salomon Smith Barney, Inc.*, 39 Cal.4th 95, 107, 45 Cal.Rptr.3d 730, 740 (2006) (analysis is only necessary where the potentially relevant laws actually conflict); 57A AM. JUR. 2D *Negligence* § 71 (2011) (listing negligence elements and citing cases from numerous jurisdictions); 37 C.J.S. *Fraud* § 12 (2011) (fraudulent misrepresentation); 37 C.J.S. *Fraud* § 28 (fraudulent concealment); 37 AM. JUR. 2D *Fraud and Deceit* § 26 (negligent misrepresentation); 16 AM. JUR. 2D *Conspiracy* § 51 (2011) (conspiracy). While the NFL Defendants cite primarily to California law—as the law of the forum state—for ease of discussion of these claims, the NFL Defendants do not concede that California law governs any of plaintiffs' claims or that the NFL Defendants are restricted only to those defenses available under California law.

Supp. 2d 1172, 1192 (S.D. Cal. 2010) (dismissing claim where the "complaint is devoid of any facts regarding how [defendant's] conduct injured" plaintiff).

**C. The FAC Fails To State Claims for Fraud and Negligent Misrepresentation Against the NFL**

Plaintiffs' fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation claims against the NFL are equally deficient. To state each of these claims, plaintiffs must allege, among other things, that they justifiably relied on statements or omissions made by the NFL and were thereby damaged. *Conroy* v. *Regents of Univ. of Cal.*, 45 Cal.4th 1244, 1255, 91 Cal.Rptr.3d 532, 543 (2009) (listing fraud elements); *Johnson* v. *Lucent Techs., Inc.*, 653 F.3d 1000, 1011 (9th Cir. 2011) (listing concealment elements); *Century Sur. Co.* v. *Crosby Ins., Inc.*, 124 Cal.App.4th 116, 129, 21 Cal.Rptr.3d 115, 125 (Cal. App. Ct. 2004) (listing negligent misrepresentation elements). Rule 9(b) requires plaintiffs to "state with particularity the circumstances constituting" each of these claims "including the who, what, when, where, and how of the misconduct charged." *Ebeid* v. *Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010); *see also In re Toyota Motor Corp. Litig.*, No. 10-ML-02151, 2011 WL 6004569, at *20 (C.D. Cal. Nov. 30, 2011) (Rule 9(b) applies to concealment); *Neilson* v. *Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) (Rule 9(b) applies to negligent misrepresentation).

Plaintiffs' pleading falls far short. First, plaintiffs fail to plead that they justifiably relied on any statements allegedly made by the NFL. Plaintiffs do not allege that they were aware of the NFL's purported statements, let alone that they—or their treating Club physicians—relied on such statements. Nor could they have. Seventy-two of the 73 plaintiffs retired before 2005—the year in which, according to plaintiffs, the NFL made its alleged misrepresentations.[17] *Schuck* v.

[17] Todd Johnson, the sole plaintiff who played professional football after 2005, has, in any event, failed to plead with particularity the manner in which he relied on these purported statements and how his reliance was justified. (FAC ¶¶ 452-

*Fed. Nat'l Mortg. Ass'n*, No. 11-CV-691, 2011 WL 2580552, at *5 (E.D. Cal. June 28, 2011) (dismissing fraud claim when "Plaintiff has not specifically alleged . . . how [he] relied on the alleged misrepresentations"); *Mirkin* v. *Wasserman*, 5 Cal.4th 1082, 1093, 23 Cal.Rptr.2d 101 (1993) (dismissing concealment claim where plaintiffs failed to allege that "had the omitted information been disclosed, [plaintiffs] would have been aware of it and behaved differently"); *Guzman* v. *Bridgepoint Educ., Inc.*, No. 11-CV-69, 2011 WL 4964970, at *6 (S.D. Cal. Oct. 19, 2011) (dismissing negligent misrepresentation claim when plaintiff "failed to allege sufficient facts to show that . . . she relied on [the] misrepresentations"); FAC ¶¶ 176-541, 575. Plaintiffs' assertion that the NFL "created player reliance" by issuing a concussion pamphlet in 2007 is illogical: all but one of the plaintiffs had retired before this pamphlet was issued, and plaintiffs do not allege that they received or reviewed the pamphlet. (FAC ¶ 149.)

Second, plaintiffs do not adequately allege that the NFL's purported misrepresentations caused plaintiffs' injuries, asserting only that plaintiffs "were damaged by these misrepresentations." This is insufficient. *In re Wash. Trust Deed Serv. Corp.*, 224 B.R. 109, 113-14 (9th Cir. 1998) (dismissing fraud claim where plaintiff failed to plead that the statement "proximately caused" the purported harm); *Hiraide* v. *Vast Sys. Tech. Corp.*, No. 08-CV-04714 , 2009 WL 2390352, at *9 (N.D. Cal. Aug. 3, 2009) (dismissing concealment claim where "there are no allegations of . . . proximate cause"); *Sawhney* v. *Allstate Ins. Co.*, No. 95-CV-2784, 1995 WL 500531, at *4 (C.D. Cal. June 23, 1995) (dismissing negligent misrepresentation claim); FAC ¶¶ 121, 123, 576-83.[18]

---

56, 581.)

[18] Because nearly all plaintiffs retired before the NFL made its purported misrepresentations and plaintiffs could not have relied on or been damaged by such statements, any further amendment to plaintiffs' already amended complaint would be futile and plaintiffs' claims for fraudulent misrepresentation and negligent misrepresentation should therefore be dismissed with prejudice. *Scognamillo* v. *Credit Suisse First Boston LLC*, No. 03-CV-2061, 2005 WL 2045807, at *7 (N.D. Cal. Aug. 25, 2005) (dismissing fraud and negligent misrepresentation claims "with

Plaintiffs' fraudulent concealment claim fails for an additional, more fundamental reason: the FAC lacks any factual allegations regarding the purported concealment. In support of their claim that the NFL has concealed the effects of concussions since "the 1920s," plaintiffs rely solely on alleged statements that occurred after 2004, when nearly every plaintiff was retired. *In re Toyota*, 2011 WL 6004569, at *20 (dismissing claim in part because plaintiffs alleged "no facts suggest[ing] any named Plaintiff viewed and relied on" a statement that allegedly concealed information); FAC ¶¶ 121, 587-89. The FAC is devoid of any allegations as to who concealed information, what exactly was concealed, or how the NFL perpetrated this supposed fraud before 2004, when most plaintiffs actually played football. *Nat'l Union Fire Ins. Co.* v. *Res. Dev. Servs., Inc.*, No. 10-CV-01324, 2010 WL 4774929, at *5 (N.D. Cal. Nov. 16, 2010) ("[Plaintiff] must allege the basis upon which concealment . . . of material facts can be inferred.").

**D. The FAC Fails To State a Claim for Conspiracy**

Plaintiffs' conspiracy claim fails because plaintiffs do not plead the foundation of the claim: that two or more people agreed to do an unlawful act.[19] *See Klistoff* v. *Superior Court*, 157 Cal.App.4th 469, 479, 68 Cal.Rptr.3d 704, 712 (Cal. App. Ct. 2007). To state a claim, "a plaintiff must allege with sufficient factual particularity that defendants reached some explicit or tacit understanding or agreement." *Masco Contractors Servs. W.* v. *N.H. Ins. Co.*, No. 04-CV-4183, 2005 WL 405361, at *6 (N.D. Cal. Feb. 17, 2005) (dismissing claim where allegations fail to include "specific facts to support the inference of an agreement between" co-defendants, and "does not reference a single document, participant, or conversation that was involved in the alleged agreement"). Plaintiffs' sole allegation regarding

---

prejudice" where plaintiffs could not prove "reasonable reliance" as a "matter of law" and could "prove no set of facts that would entitle them to relief").

[19] To state a claim for conspiracy, plaintiffs must allege (1) an agreement to commit wrongful acts, (2) commission of the wrongful acts, and (3) resulting damage. 12 CAL. JUR. 3D *Civil Conspiracy* § 2.

the alleged conspiracy—that the NFL "conspired with its team members and/or independent contractors, who were directed to . . . reject the causal connection" between concussions and long-term injuries—is devoid of any concrete information regarding a conspiracy. (FAC ¶ 606.) Indeed, plaintiffs have alleged a nearly infinite number of possible co-conspirators (while identifying none specifically), and have offered not a shred of factual support—not "a single document, participant, or conversation"—demonstrating who at the NFL orchestrated this purported conspiracy or how they achieved it. *Masco Contractors Servs. W.*, 2005 WL 405361, at *6. Plaintiffs' conspiracy claim should also be dismissed because plaintiffs fail to state any other cognizable claims against the NFL, and conspiracy is not independently actionable. *See Idema* v. *Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1196 (C.D. Cal. 2001) ("civil conspiracy is not an independent tort").

**E. Plaintiffs' Negligence Claims Are Time-Barred**

Plaintiffs' negligence claims against the NFL Defendants are barred because no state provides a limitations period for personal injury claims that is longer than six years, and plaintiffs' alleged injuries occurred during their respective NFL playing careers—nearly all of which concluded by 2005.[20] (*See* FAC ¶¶ 176-541, 559-73, 619-23.) Although plaintiffs have not alleged which state laws purportedly govern their claims, state limitation periods for personal injury claims based on negligence range from one year to a maximum of six years.[21] Thus, even if the most permissive limitations period applied to each claim, nearly all of these claims would be barred because plaintiffs allege that they suffered "past

[20] Only one of the 73 plaintiffs, Todd Johnson, played professional football later than 2005. (FAC ¶ 453.) Mr. Johnson, however, does not make specific time-related allegations regarding his injuries, and the NFL Defendants therefore reserve all rights to move for the dismissal of his claim on the basis of statute of limitations, pending the completion of discovery. (*See id*. ¶ 454.)

[21] *See, e.g.*, Tenn. Code Ann. § 28-3-104(a)(1) (one year); Cal. Civ. Proc. Code § 335.1 (two years); N.Y. C.P.L.R. § 214 (three years); Fla. Stat. Ann. § 95.11 (four years); V.A.M.S. § 516.120(4) (five years); Minn. Stat. Ann. § 541.05 (six years).

traumatic brain injuries" while they played professional football—that is, before 2005. (*See, e.g.*, FAC ¶ 180; *see also id*. ¶¶ 176-541.)

To the extent that some states toll the limitations period pending the "discovery" of the purported injury, plaintiffs fail to allege facts sufficient to invoke this rule. Generally, jurisdictions that recognize the discovery rule also recognize a rebuttable presumption that plaintiffs have "knowledge of the wrongful cause of an injury" at the time the injury occurs. *See, e.g.*, *Grisham* v. *Philip Morris U.S.A., Inc.*, 40 Cal.4th 623, 638, 54 Cal.Rptr.3d 735, 745 (2007). In order to rebut the presumption, a plaintiff whose complaint "shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Id*.; *see also Frost* v. *F&R Realty Trust*, No. 10-P-1079, 2011 WL 4563022, at *1 (Mass. App. Ct. Oct. 4, 2011) (same); *Owner Operator Indep. Drivers Ass'n, Inc.* v. *Comerica Bank*, 540 F. Supp. 2d 925, 930 (S.D. Ohio 2008) (same). Plaintiffs' sole (and bald) allegation—that they "could not have known or discovered with reasonable certainty that the cause of their injuries were due to" the NFL's fraud—"fails to state when and how [they] discovered [their] alleged injuries were caused by defendants' [conduct and] fails to provide any facts . . . as to why [they] could not have discovered this information earlier." *Adams* v. *I-Flow Corp.*, No. 09-CV-09550, 2010 WL 1339948, at *4 (C.D. Cal. Mar. 30, 2010) (dismissing claims); FAC ¶ 158.[22]

## **Conclusion**

For the foregoing reasons, the NFL Defendants respectfully submit that the FAC should be dismissed with prejudice.

---

[22] Because all of the player plaintiffs' claims against the NFL Defendants must be dismissed, the spouse plaintiffs' loss of consortium claims—which are derivative of the player plaintiffs' claims—must also be dismissed. *Malone* v. *Marriott Int'l, Inc.*, No. 09-CV-01980, 2010 WL 4537828, at *6 (C.D. Cal. Oct. 29, 2010) (dismissing loss of consortium claim where underlying claims failed).

Dated: December 20, 2011

Respectfully submitted,

MUNGER, TOLLES & OLSON LLP

By: /s/ *Ronald L. Olson*

-and-

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Attorneys for Defendants NATIONAL FOOTBALL LEAGUE and NFL PROPERTIES LLC

## Appendix A

| Plaintiff Player | Career | FAC Cite | Operative CBAs |
|---|---|---|---|
| Vernon Maxwell | 1983-1987, 1989 | ¶ 177 | 1982 |
| Broderick Jones | 1980-1983 | ¶ 182 | 1977, 1982 |
| Kendall Williams | 1982-1984 | ¶ 187 | 1982 |
| Mike C. Richardson | 1983-1989 | ¶ 192 | 1982 |
| Renard Young | 1984-1985, 1987 | ¶ 197 | 1982 |
| LonZell Hill | 1987-1990 | ¶ 202 | 1982 (expired) |
| George Visger | 1980-1981 | ¶ 207 | 1977 |
| Terry Wright | 1986-1988 | ¶ 212 | 1982 |
| Newton Williams | 1982-1984 | ¶ 217 | 1982 |
| Duane Galloway | 1983-1987 | ¶ 222 | 1982 |
| George Jamison | 1986-1998 | ¶ 227 | 1993 (and 1996, 1998 amendments thereto) |
| Bryan Hooks | 1993-1997 | ¶ 233 | 1993 (and 1996 amendment thereto) |
| Fred McNeill | 1974-1985 | ¶ 238 | 1977, 1982 |
| Reginald Rogers, Sr. | 1987-1988, 1991-1992 | ¶ 243 | 1982 (expired) |
| Melvin Jenkins | 1987-1993 | ¶ 248 | 1993 |
| Antonio Gibson | 1986-1992 | ¶ 253 | 1982 |
| Alvin Moore | 1983-1987 | ¶ 258 | 1982 |
| Lyvonia A. Mitchell | 1981-1989 | ¶ 263 | 1977, 1982 |
| Kirk Cameron Jones | 1997-2002 | ¶ 268 | 1993 (and all amendments thereto) |

| Plaintiff Player | Career | FAC Cite | Operative CBAs |
|---|---|---|---|
| James E. Robbins | 1982-1993 | ¶ 273 | 1982, 1993 |
| Robert J. Fredrickson | 1994-2002 | ¶ 278 | 1993 (and all amendments thereto) |
| Charles E. Miller | 1987-1989 | ¶ 283 | 1982 (expired) |
| Edward P. Lee | 1982-1984 | ¶ 288 | 1982 |
| Patrick Heenan | 1960-1961 | ¶ 293 | N/A |
| Toby L. Wright | 1994-1999 | ¶ 298 | 1993 (and 1996, 1998 amendments thereto) |
| Kelly Kirchbaum | 1979-1981, 1987 | ¶ 303 | 1977 |
| James Hood | 1987-1988 | ¶ 308 | 1982 (expired) |
| Richard Mercier | 2000-2003 | ¶ 313 | 1993 (and all amendments thereto) |
| Steve Korte | 1983-1990 | ¶ 318 | 1982 |
| Joe Harris | 1977-1983 | ¶ 323 | 1977, 1982 |
| Rodney Hampton | 1990-1997 | ¶ 328 | 1993 (and 1996 amendment thereto) |
| Lewis D. Tillman | 1989-1996 | ¶ 333 | 1993 (and 1996 amendment thereto) |
| Larry Kaminski | 1966-1973 | ¶ 338 | 1968 (AFL), 1970 |
| David Kocourek | 1960-1968 | ¶ 343 | 1968 (AFL) |
| Robert Weathers | 1982-1988 | ¶ 348 | 1982 |
| Wayne Hawkins | 1960-1971 | ¶ 353 | 1968 (AFL), 1970 |

| Plaintiff Player | Career | FAC Cite | Operative CBAs |
|---|---|---|---|
| Anthony Hargain | 1991-1993, 1996 | ¶ 358 | 1993 (and 1996 amendment thereto) |
| Edward Payton | 1977-1978, 1980-1982 | ¶ 363 | 1977, 1982 |
| William H. Mandley | 1984-1990 | ¶ 368 | 1982 |
| Shante Carver | 1994-1997 | ¶ 373 | 1993 (and 1996 amendment thereto) |
| George Goeddeke | 1967-1974 | ¶ 378 | 1968 (AFL), 1970, 1977 |
| James Michael Schnitker | 1969-1974 | ¶ 383 | 1968 (AFL), 1970, 1977 |
| Christopher Calloway | 1990-2000 | ¶ 388 | 1993 (and 1996, 1998, 2000 amendments thereto) |
| Thomas C. Randolph | 1994-1999 | ¶ 393 | 1993 (and 1996, 1998 amendments thereto) |
| Gary Jones | 1990-1996 | ¶ 398 | 1993 (and 1996 amendment thereto) |
| Leonard Russell | 1991-1996 | ¶ 403 | 1993 (and 1996 amendment thereto) |
| Rory Graves | 1988-1991, 1993 | ¶ 408 | 1993 |
| David M. White | 1993-1997 | ¶ 413 | 1993 (and 1996 amendment thereto) |

| Plaintiff Player | Career | FAC Cite | Operative CBAs |
|---|---|---|---|
| Philip Smith | 1983-1989 | ¶ 418 | 1982 |
| W. Vernon Dean[23] | 1982-1989 | ¶ 423 | 1982 |
| Anthony Covington | 1991-1995 | ¶ 428 | 1993 |
| Anthony Jones | 1984-1989 | ¶ 433 | 1982 |
| Steve Reese | 1974-1978 | ¶ 438 | 1977 |
| Donald Bessillieu | 1979-1985 | ¶ 443 | 1977, 1982 |
| Harold L. Jackson | 1968-1983; 1987 | ¶ 448 | 1968 (NFL), 1970, 1977, 1982 |
| Todd Johnson | 2003-2009 | ¶ 453 | 1993 (and all amendments thereto), 2006 |
| Chris Goode | 1987-1994 | ¶ 458 | 1993 |
| Bruce Walker | 1994-1996, 1998-1999 | ¶ 463 | 1993 (and 1996, 1998 amendments thereto) |
| Derrick S. Reynolds | 1987-1996 | ¶ 468 | 1993 (and 1996 amendment thereto) |
| David Lewis | 1977-1984 | ¶ 473 | 1977, 1982 |
| Ronnie Lippett | 1983-1991 | ¶ 478 | 1982 |
| Roland James | 1980-1990 | ¶ 483 | 1977, 1982 |
| Mark S. Duper | 1982-1992 | ¶ 488 | 1982 |
| Brian Ingram | 1982-1988 | ¶ 493 | 1982 |
| Anthony Collins | 1981-1990 | ¶ 498 | 1977, 1982 |

[23] The FAC asserts that W. Vernon Dean played for the Washington Redskins from 1982-1988 and for the Seattle Seahawks in 1999. (FAC ¶ 423.) Appendix A assumes that plaintiffs intended to plead that he played for the Seahawks in 1989 rather than 1999. (*Cf.* www.nfl.com; indicating that Mr. Davis played for the Redskins from 1982-1987 and for the Seahawks in 1988.)

| Plaintiff Player | Career | FAC Cite | Operative CBAs |
|---|---|---|---|
| Steve Nelson | 1974-1987 | ¶ 503 | 1977, 1982 |
| James E. Willis | 1993-2000 | ¶ 508 | 1992 (and 1996, 1998, 2000 amendments thereto) |
| Anthony Hancock | 1982-1988 | ¶ 513 | 1982 |
| Jeff Burris | 1998-2003 | ¶ 518 | 1993 (and all amendments thereto) |
| William C. Bradley | 1969-1977 | ¶ 523 | 1968 (NFL), 1970, 1977 |
| Kerry Goode | 1988-1989 | ¶ 528 | 1982 (expired) |
| Raymond Clayborn | 1977-1991 | ¶ 533 | 1977, 1982 |
| Steven Zabel | 1970-1979 | ¶ 538 | 1970, 1977 |

## Appendix B

### A. Player Medical Care Provisions

- "Each Club will have a board-certified orthopedic surgeon as one of its Club physicians. The cost of medical services rendered by Club physicians will be the responsibility of the respective Clubs." (Ex. 5, 1982 CBA Art. XXXI § 1; Ex. 6, 1993 CBA Art. XLIV § 1; Ex. 10, 2006 CBA Art. XLIV § 1.)
- "All full-time head trainers and assistant trainers . . . will be certified by the National Athletic Trainers Association. All part-time trainers must work under the direct supervision of a certified trainer." (Ex. 5, 1982 CBA Art. XXXI § 2; Ex. 6, 1993 CBA Art. XLIV § 2; Ex. 10, 2006 CBA Art. XLIV § 2.)
- "The home team shall provide a physician and an ambulance at each game available to both teams. Said ambulance facilities shall be located at or adjacent to the stadium, with the driver in attendance in the ambulance for the use of both competing teams." (*See, e.g.*, Ex. 11, 1969 NFL and American Football League Constitution and Bylaws Art. XIX § 19.5.)
- "If a Club physician advises a coach or other Club representative of a player's physical condition which adversely affects the player's performance or health, the physician will also advise the player. If such condition could be significantly aggravated by continued performance, the physician will advise the player of such fact in writing before the player is again allowed to perform on-field activity." (Ex. 6, 1993 CBA Art. XLIV § 1; Ex. 10, 2006 CBA Art. XLIV § 1.)
- "All determinations of recovery time for major and minor injuries must be by the Club's medical staff and in accordance with the Club's medical standards . . . . The prognosis of the player's recovery time should be as precise as possible." (*See, e.g.*, Ex. 20, 1980 Supp. to NFL Constitution and Bylaws Art. XVII.)
- "[I]f Player is injured in the performance of his services under this contract and promptly reports such injury to the Club physician or trainer, then Player will receive such medical and hospital care during the term of this contract as the Club physician may deem necessary . . . ." (Ex. 6, 1993 CBA Appx. C § 9; Ex. 10, 2006 CBA Appx. C § 9.)

### B. Player Rights and Obligations Related to Medical Care

- "The NFLPA shall have the right to commence an investigation before the Joint Committee [on Player Safety and Welfare] if the NFLPA believes that the medical care of a team is not

adequately taking care of player safety." (Ex. 9, 2002 Am. to 1993 CBA Art. XIII § 1(d); Ex. 10, 2006 CBA Art. XIII § 1(d).)

- "A player will have the opportunity to obtain a second medical opinion," and the Club shall bear "the responsibility" for "the cost of [these] medical services." (Ex. 5, 1982 CBA Art. XXXI § 3; Ex. 6, 1993 CBA Art. XLIV § 3; Ex. 10, 2006 CBA Art. XLIV § 3.)
- "A player will have the right to choose the surgeon who will perform surgery . . . . Any such surgery will be at Club expense." (Ex. 5, 1982 CBA Art. XXXI § 4; Ex. 6, 1993 CBA Art. XLIV § 4; Ex. 10, 2006 CBA Art. XLIV § 4.)
- "Each player will undergo a standardized minimum pre-season physical examination . . . which will be conducted by the Club physician," and will further undergo a "post-season physical examination" at the player or Club's request. (Ex. 5, 1982 CBA Art. XXXI § 5; *see also* Ex. 6, 1993 CBA Art. XLIV § 5; Ex. 10, 2006 CBA Art. XLIV § 5.)

**C. Player Safety Provisions**

- "Playing rules may be amended or changed at any Annual Meeting by the affirmative vote of not less than three-fourths or 21, whichever is greater, of the members of the League, provided the proposed amendment or change has been presented to the League in writing fifteen (15) days prior to the Annual Meeting or a recessed session thereof, or provided the proposed amendment or change carries the unanimous approval of a duly appointed standing committee of the League vested with the authority to make a recommendation on proposed playing rules changes, in which case notice of at least 12 hours prior to the vote is required; and further provided that all playing rules proposals from clubs must be submitted in writing to the League office a minimum of thirty (30) days in advance of any Annual Meeting of the League. Otherwise unanimous consent is required for any amendment to the Playing Rules." (Ex. 23, 1984 NFL Constitution and Bylaws Art. XI § 11.2.)
- "A Joint Committee on Player Safety and Welfare (hereinafter the 'Joint Committee') will be established for the purpose of discussing the player safety and welfare aspects of playing equipment, playing surfaces, stadium facilities, playing rules, player-coach relationships, and any other relevant subjects . . . . The Joint Committee may . . . examine any subject related to player safety and welfare it desires . . . ." (Ex. 4, 1977 CBA Art. XI; Ex. 5, 1982 CBA Art. XI; Ex. 6, 1993 CBA Art. XIII § 1(a); Ex. 10, 2006 CBA Art. XIII § 1(a); *see also* Ex. 3, 1970 CBA Art. V.)

- "If the NFLPA believes that the adoption of a playing rule change would adversely affect player safety," it may seek to investigate and "request an advisory decision by [an] arbitrator[]" regarding the proposed rule change. (Ex. 5, 1982 CBA Art. XI § 9; Ex. 6, 1993 CBA Art. XIII § 1(c); Ex. 10, 2006 CBA Art. XIII § 1(c).)
- "If . . . the Commissioner determines that the adoption of the playing rule change could adversely affect player safety, the Commissioner will refer the proposed playing rule change to [the Joint] Committee for consideration and recommendation." (Ex. 4, 1977 CBA Art. XI § 8.)

**D. Player Benefits**

- "The parties agree to . . . establish a . . . plan . . . to provide medical benefits to former Players who are . . . determined . . . to have dementia." (Ex. 10, 2006 CBA Art. XLVIII-D.)
- "[A] player . . . will receive an injury protection benefit [when t]he player [has] been physically unable, because of a severe football injury in an NFL game or practice, to participate in all or part of his Club's last game of the season of injury, as certified by the Club physician . . . or the player [has] undergone Club-authorized surgery in the off-season following the season of injury; and . . . The player [has] undergone whatever reasonable and customary rehabilitation treatment his Club required of him during the off-season following the season of injury; and (c) The player [has] failed the pre-season physical examination given by the Club physician for the season following the season of injury because of such injury and as a result his Club must have terminated his contract for the season following the season of injury. A player who qualifies under (a) and (b) above cannot be waived prior to such pre-season physician examination." (Ex. 4, 1977 CBA Art. X; Ex. 5, 1982 CBA Art. X; *see also* Ex. 6, 1993 CBA Art. XII § 1; Ex. 10, 2006 CBA Art. XII § 1.)
- *See also* Ex. 2, 1968 CBA Art. IX § 3; Ex. 3, 1970 CBA Art. XI; Ex. 4, 1977 CBA Art. IX; Ex. 5, 1982 CBA Art. IX; Ex. 6, 1993 CBA Art. X; Ex. 10, 2006 CBA Art. X (Injury Grievance); Ex. 3, 1970 CBA Art. IV § 12; Ex. 4, 1977 CBA Art. XXXII; Ex. 5, 1982 CBA Art. XXXV; Ex. 6, 1993 CBA Art. XXIII; Ex. 10, 2006 CBA Art. XXIII (Termination Pay); Ex. 3, 1970 CBA Art. XV § 7; Ex. 4, 1977 CBA Art. XXXIII; Ex. 5, 1982 CBA Art. XXXVI; Ex. 6, 1993 CBA Art. LIV; Ex. 10, 2006 CBA Art. LIV (Workers' Compensation); Ex. 5, 1982 CBA Art. XXIV; Ex. 6, 1993 CBA Art. L; Ex. 10, 2006 CBA Art. L (Severance Pay); Ex. 6, 1993 CBA Art. LI; Ex. 10, 2006 CBA Art. LI (Supplemental Disability Benefits); Ex. 6, 1993 CBA Art. LII;

Ex. 10, 2006 CBA Art. LII (Benefits Arbitrator); Ex. 10, 2006 CBA Art. XLVIII-D (88 Benefit); Ex. 4, 1977 CBA Art. X; Ex. 5, 1982 CBA Art. X; Ex. 6, 1993 CBA Art. XII § 1; Ex. 10, 2006 CBA Art. XII § 1 (Injury Protection Benefit).

**E. Grievance Procedures**

- "Any dispute (hereinafter referred to as a 'grievance') arising after the execution of this Agreement and involving the interpretation of, application of, or compliance with, any provision of this Agreement, the NFL Player Contract, or any applicable provision of the NFL Constitution and Bylaws pertaining to terms and conditions of employment of NFL players, will be resolved exclusively in accordance with the [arbitration] procedure set forth in this Article except wherever another method of dispute resolution is set forth elsewhere in this Agreement, and except wherever the Settlement Agreement provides that the Special Master, Impartial Arbitrator, the Federal District Court or the Accountants shall resolve a dispute." (Ex. 6, 1993 CBA Art. IX § 1; Ex. 10, 2006 CBA Art. IX § 1; *see also* Ex. 4, 1977 CBA Art. VII § 1; Ex. 5, 1982 CBA Art. VII § 1.)
- From 1968 to 1977, the CBA contained a similar dispute resolution procedure that required the NFL Commissioner to resolve all grievances arising under the CBA. (Ex. 3, 1970 CBA Art. X; *see also* Ex. 2, 1968 CBA Art. IX § 2.)
- The 1977 and 1982 CBAs expressly forbid players from bringing "any suit[] against the NFL or any Club with respect to any claim relating to any aspect of the NFL rules" or "the NFL Constitution and Bylaws." (Ex. 4, 1977 CBA Art. III § 2; Ex. 5, 1982 CBA Art. III § 2.)
- The 1993 and 2006 CBAs expressly forbid players from bringing "any suit against . . . the NFL or any Club with respect to any claim relating to any conduct permitted by [the CBAs] . . . or any term of [the CBAs]" or "the Constitution and Bylaws of the NFL." (Ex. 6, 1993 CBA Art. IV § 2; Ex. 10, 2006 CBA Art. IV § 2.)