**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | MDL No. 2323<br>No. 12-md-2323-AB |
| THIS DOCUMENT RELATES TO:<br><br>VERNON MAXWELL, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>NATIONAL FOOTBALL LEAGUE, et al.,<br><br>　　　　Defendants. | CIVIL ACTION<br>Case No. 12-cv-01023-AB |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE
NFL DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

1   MUNGER, TOLLES & OLSON LLP
    RONALD L. OLSON (State Bar No. 44597)
2   *ron.olson@mto.com*
    JOHN W. SPIEGEL (State Bar No. 78935)
3   *john.spiegel@mto.com*
    JOHN M. RAPPAPORT (State Bar No. 254459)
4   *john.rappaport@mto.com*
    355 South Grand Avenue, 35th Floor
5   Los Angeles, CA 90071-1560
    Telephone:  (213) 683-9100
6   Facsimile:   (213) 687-3702

7
    PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
8   BRAD S. KARP *(Pro Hac Vice)*
    *bkarp@paulweiss.com*
9   THEODORE V. WELLS, JR. *(Pro Hac Vice)*
    *twells@paulweiss.com*
10  BRUCE BIRENBOIM *(Pro Hac Vice)*
    *bbirenboim@paulweiss.com*
11  BETH A. WILKINSON *(Pro Hac Vice)*
    *bwilkinson@paulweiss.com*
12  LYNN B. BAYARD *(Pro Hac Vice)*
    *lbayard@paulweiss.com*
13  1285 Avenue of the Americas
    New York, NY 10019-6064
14  Telephone:  (212) 373-3000
    Facsimile:   (212) 757-3990
15
    Attorneys for Defendants
16  NATIONAL FOOTBALL LEAGUE
    and NFL PROPERTIES LLC

17              UNITED STATES DISTRICT COURT
18              CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 19  VERNON MAXWELL, et al., | CASE NO. CV 11-08394 R(MANx) |
| 20             Plaintiffs, | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE NFL DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |
| 21  v. | |
| 22 | |
| 23  NATIONAL FOOTBALL LEAGUE, et al., | Date:          February 6, 2012 |
| 24 | Time:          10:00 AM |
| 25             Defendants. | Courtroom:   8 |
| | Judge:         Hon. Manuel L. Real |
| 26 | Notice of related cases: |
| 27 | No. CV 11-08395 R (MANx) |
| | No. CV 11-08396 R (MANx) |
| 28 | |

# Table of Contents

**Page**

Table of Authorities ........................................................................................................ii

Preliminary Statement .....................................................................................................1

Argument .........................................................................................................................5

I      PLAINTIFFS' CLAIMS ARE PREEMPTED BY THE LMRA ....................5

      A.    Plaintiffs' Claims Substantially Depend on an Analysis of the
           Terms of the CBAs ..........................................................................6

      B.    *Brown* v. *National Football League* is Inapposite ...............................9

      C.    Plaintiffs' "Negligence-Monopolist" Claim is Preempted ...............11

      D.    Plaintiffs Are Subject to the CBAs in Effect During Their
           Playing Careers ................................................................................12

II     PLAINTIFFS FAIL TO STATE CLAIMS  UPON WHICH RELIEF
      CAN BE GRANTED ................................................................................15

      A.    Plaintiffs' "Negligence-Monopolist" Claim is Fiction .....................15

      B.    Plaintiffs Fail to State Claims for Fraud and Negligent
           Misrepresentation ............................................................................18

      C.    Plaintiffs Fail to State a Claim for Negligence Against NFLP
           and Conspiracy ................................................................................19

      D.    Plaintiffs Have Not Alleged Sufficient Facts to Rescue Their
           Time-Barred Negligence Claims ......................................................20

Conclusion .....................................................................................................................23

REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS

# Table of Authorities

**Page(s)**

**CASES**

*Adams* v. *I-Flow Corp.*,
No. 09-CV-09550, 2010 WL 1339948 (C.D. Cal. Mar. 30, 2010) ................. 21

*Atwater* v. *Nat'l Football League*,
626 F.3d 1170 (11th Cir. 2010) ................................................................... 8, 12

*Baidoobonso-Iam* v. *Bank of America (Home Loans)*,
No. 10-CV-9171, 2011 WL 3103165 (C.D. Cal. July 25, 2011) ......... 11, 15, 21

*Bank of the West* v. *Superior Court*,
2 Cal. 4th 1254, 10 Cal. Rptr. 538 (1992) ....................................................... 16

*Barnes* v. *Nat'l Football League*,
No. 11-CV-08396-R-MANx, Pl. Opp. 11 .......................................................... 15

*Bell Atlantic Corp.* v. *Twombly*,
550 U.S. 544 (2007) ........................................................................................ 14

*Brady* v. *Nat'l Football League*,
779 F. Supp. 2d 992 (D. Minn. 2011), *rev'd* 664 F.3d 661 (8th Cir. 2011) .... 13

*Brown* v. *Nat'l Football League*,
219 F. Supp. 2d 372 (S.D.N.Y. 2002) ........................................................... 2, 9

*Carden* v. *Arkoma Associates*,
494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990) ................................. 20

*Cel-Tech Commc'ns, Inc.* v. *Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163, 83 Cal. Rptr. 2d 548 (1999) ................................................. 15

*Chern* v. *Bank of Am.*,
15 Cal. 3d 866, 127 Cal. Rptr. 110 (1976) ...................................................... 15

*Cipollone* v. *Liggett Group, Inc.*,
505 U.S. 504 (1992) ........................................................................................ 16

*Comm. on Children's Television* v. *Gen. Foods Corp.*,
35 Cal. 3d 197, 197 Cal. Rptr. 783 (1983) ...................................................... 15

*Cook* v. *Brewer*,
637 F.3d 1002 (9th Cir. 2011) ......................................................................... 14

*Cook, Perkiss & Liehe* v. *N. Cal. Collection Serv.*,
911 F.2d 242 (9th Cir. 1990) ........................................................................... 22

*Doe* v. *United States*,
58 F.3d 494 (9th Cir. 1995) ............................................................................. 22

**Page(s)**

*Dosier* v. *Burns Int'l Sec. Serv.*,
   729 F. Supp. 695 (N.D. Cal. 1990)........................................................... 13

*Durell* v. *Sharp Healthcare*,
   183 Cal. App. 4th 1350, 108 Cal. Rptr. 3d 682 (2010) ..................................... 16

*Ebeid* v. *Lungwitz*,
   616 F.3d 993 (9th Cir. 2010) ............................................................... 18

*Flood* v. *Kuhn*,
   407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972) ................................ 15, 16

*G.D. Searle & Co.* v. *Superior Court*,
   49 Cal. App. 3d 22, 122 Cal. Rptr. 218 (Ct. App. 1975) ................................ 20

*Givens* v. *Tennessee Football, Inc.*,
   684 F. Supp. 2d 985 (M.D. Tenn. 2010) .................................................. 2, 7, 14

*Gwarduri* v. *I.N.S.*,
   362 F.3d 1144 (9th Cir. 2004) .............................................................. 19

*Holmes* v. *Tenderloin Housing Clinic, Inc.*,
   No. 09-CV-5781, 2010 WL 1929586 (N.D. Cal. May 12, 2010) .................. 22

*Jeffers* v. *D'Allessandro*,
   199 N.C. App. 86, 681 S.E.2d 405 (N.C. Ct. App. 2009)............................ 2, 7

*Jenkins* v. *MCI Tel. Corp.*,
   973 F. Supp. 1133 (C.D. Cal. 1997)....................................................... 12

*Khoury* v. *Maly's of Cal., Inc.*,
   14 Cal. App. 4th 612, 17 Cal. Rptr. 2d 708 (1993) ........................................ 15

*Kwikset Corp.* v. *Superior Court*,
   51 Cal. 4th 310, 120 Cal. Rptr. 3d 741 (2011) ........................................... 16, 17

*Maxwell* v. *Nat'l Football League*,
   No. 11-CV-08394, Dec. 8, 2011 Order at 1-2...........................................*passim*

*Office & Prof. Ins. Trust Fund* v. *Laborers Funds Administration Office*,
   783 F.2d 919 (9th Cir. 1986) ................................................................. 13

*Partee* v. *San Diego Chargers Football Co.*,
   34 Cal. 3d 378, 194 Cal. Rptr. 367 (1983) ............................................... 15, 16

*Pooshs* v. *Philip Morris USA, Inc.*,
   51 Cal. 4th 788, 123 Cal. Rptr. 3d 578 (2011) ............................................. 21

*Powell* v. *Nat'l Football League*,
   764 F. Supp. 1351 (D. Minn. 1991) ....................................................... 13

REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS

**Page(s)**

*Scognamillo* v. *Credit Suisse First Boston LLC*,
     No. 03-CV-2061, 2005 WL 2045807 (N.D. Cal. Aug. 25, 2005)...................23

*Sherwin* v. *Indianapolis Colts, Inc.*,
     752 F. Supp. 1172 (N.D.N.Y. 1990) ....................................................2, 7, 10, 12

*Smith* v. *Pac. Bell Tel. Co.*,
     No. 06-CV-1756, 2007 WL 1114044 (E.D. Cal. Apr. 13, 2007)...................22

*Stringer* v. *Nat'l Football League*,
     474 F. Supp. 2d 894 (S.D. Ohio 2007).........................................................*passim*

*Stutz Motor Car, Inc.* v. *Reebok Int'l, Ltd.*,
     909 F. Supp. 1353 (C.D. Cal. 1995)................................................................17

*Team Obsolete Ltd.* v. *AHRMA Ltd.*,
     216 F.R.D. 29 (E.D.N.Y. 2003) .......................................................................15

*Tietsworth* v. *Sears*,
     720 F. Supp. 2d 1123 (N.D. Cal. 2010)..........................................................11

*In re Tobacco II Cases*,
     46 Cal. 4th 298, 93 Cal. Rptr. 3d 559 (2009) ...............................................17

*Truex* v. *Garrett Freightlines, Inc.*,
     784 F.2d 1347 (9th Cir. 1985)..........................................................................14

*United Steelworkers of Am.* v. *Rawson*,
     495 U.S. 362, 110 S.Ct. 1904, 109 L.Ed. 2d 362 (1990) .............................9, 10

*Williams* v. *Nat'l Football League*,
     582 F.3d 863 (8th Cir. 2009)...............................................................................8

*Wynn* v. *Nat'l Broad. Co.*,
     234 F. Supp. 2d 1067 (C.D. Cal. 2002)...........................................................22

**STATUTES AND RULES**

29 U.S.C. § 185(a) .............................................................................................*passim*

28 U.S.C. § 1331.......................................................................................................20

Cal. Bus. & Prof. Code § 17001 ........................................................................3, 15

Cal. Bus. & Prof. Code § 17200 ...........................................................3, 15, 16, 17

Fed. R. Civ. P. 9(b) ...................................................................................3, 18, 19

REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS

Defendants National Football League (the "NFL") and NFL Properties LLC ("NFLP" and, collectively with the NFL, the "NFL Defendants"), by their attorneys Paul, Weiss, Rifkind, Wharton & Garrison LLP and Munger, Tolles & Olson LLP, respectfully submit this reply memorandum of points and authorities in support of their motion to dismiss plaintiffs' First Amended Complaint (the "FAC").

## Preliminary Statement

The NFL Defendants' moving papers demonstrated that this action is fundamentally a labor dispute completely preempted by section 301 of the Labor Management Relations Act ("LMRA") and should be dismissed. None of plaintiffs' arguments in opposition refutes this showing.

First, there is no reason that the Court should—as plaintiffs urge— "decline to rule on the NFL Defendants' motion to dismiss pending the JPML's decision on coordination." (Pl. Opp., ECF No. 81 at 3.) Indeed, this Court has already expended a substantial amount of time considering plaintiffs' claims—and the preemption issues raised by the FAC, in particular—having proceeded at plaintiffs' request to hear and adjudicate plaintiffs' motion to remand. Declining to rule on the NFL Defendants' pending motion would waste the valuable resources the Court has already invested in this case. Moreover, even if the JPML ultimately transfers and coordinates the cases pending against the NFL, disposition of the pending motion to dismiss will likely further judicial efficiency by obviating the need to include this case in the resulting MDL proceeding.

Second, as the NFL Defendants' moving brief showed, plaintiffs' claims substantially depend on an analysis of the numerous health and safety provisions of the collective bargaining agreements and accompanying NFL Constitution and Bylaws (together, the "CBAs") pursuant to which the vast majority of plaintiffs played NFL football. Plaintiffs concede as much,

- 1 -

acknowledging that—as this Court found in denying plaintiffs' remand motion—the CBAs delegate to others duties regarding player health and safety.  In order to assess the degree of care owed by the NFL, the Court must first evaluate these preexisting duties, and plaintiffs' claims are thus preempted under section 301.  *See, e.g.*, *Maxwell* v. *Nat'l Football League*, No. 11-CV-08394, Dec. 8, 2011 Order, ECF No. 58 at 1-2 (denying plaintiffs' motion to remand); *Givens* v. *Tennessee Football, Inc.*, 684 F. Supp. 2d 985, 990-91 (M.D. Tenn. 2010); *Stringer* v. *Nat'l Football League*, 474 F. Supp. 2d 894, 909-11 (S.D. Ohio 2007); *Sherwin* v. *Indianapolis Colts, Inc.*, 752 F. Supp. 1172, 1177-79 (N.D.N.Y. 1990); *Jeffers* v. *D'Allessandro*, 199 N.C. App. 86, 95-96, 681 S.E.2d 405, 412 (N.C. Ct. App. 2009).

Third, plaintiffs fail to rebut the NFL Defendants' showing that plaintiffs' claims are also preempted because they rest on purported obligations that arise under the CBAs.  Instead, plaintiffs rely on inapposite case law—*Brown* v. *Nat'l Football League*, 219 F. Supp. 2d 372 (S.D.N.Y. 2002)—for the assertion that the NFL Defendants owe a duty to the general public to reduce concussion risks.  But plaintiffs' reliance on *Brown* is misplaced because, unlike the allegations in *Brown*, plaintiffs' allegations that the NFL Defendants failed to establish and enforce safety-related rules invoke a duty that is expressly assigned to the NFL and its Member Clubs in the CBAs.  Plaintiffs' attempt to argue that their "negligence-monopolist" claim is not preempted because it arises under state statutes, rather than the CBAs, also fails.  Plaintiffs amended their complaint to *remove* the statutory basis for this claim, and their amended complaint alleges violations of common law duties grounded in the NFL's purported monopoly power.  This claim is preempted for the same reason as plaintiffs' negligence claim:  If any such duties exist, their scope cannot be assessed without an analysis of the terms of the CBAs.

Moreover, contrary to plaintiffs' position, monopoly power does not establish a duty to the general public to minimize the risk of concussions.

Fourth, plaintiffs' assertions that the LMRA does not apply to their claims because they are retirees (or spouses of retirees) and because there was no CBA in effect when they filed their complaint, are both without merit. Putting aside that plaintiffs raised similar arguments in their failed remand motion, both contentions ignore the well-settled principle that section 301 applies where, as here, plaintiffs allege misconduct that occurred when they were employed pursuant to a CBA.

Beyond failing to refute the NFL Defendants' preemption arguments, plaintiffs have not cured, and cannot cure, the pleading defects of their tort claims. As the NFL Defendants' moving brief showed, plaintiffs' "negligence-monopolist" claim does not exist, and plaintiffs' late attempt to establish a statutory basis for the claim in their opposition brief, after having deleted this basis from their FAC, is improper. Even if plaintiffs could amend their complaint in their opposition brief to bring claims under the California Unfair Practices Act ("CUPA"), Cal. Bus. & Prof. Code § 17001, and the Unfair Competition Law ("UCL"), *id.* § 17200, these claims would fail. Plaintiffs lack standing to bring either a CUPA or a UCL claim. They are further barred from bringing a CUPA claim because "negligence-monopolist" does not exist as a claim under the statute, the statute may not be applied to conduct outside of the State of California, and claims under the statute against professional sports leagues are barred by the Commerce Clause.

With respect to their fraud, negligent misrepresentation, and conspiracy claims, and negligence claim against NFLP, plaintiffs fail to allege critical elements of each claim and ignore Rule 9(b)'s requirement that fraud-based claims be pleaded with particularity. Plaintiffs' fraud and negligent misrepresentation claims fail because plaintiffs fail to allege, among other things,

REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS

how plaintiffs—nearly all of whom retired before the NFL made any alleged statements regarding concussions—could have justifiably relied on such statements, or how the NFL's conduct caused plaintiffs' purported injuries. Plaintiffs' conspiracy claim fails because plaintiffs do not identify a single co-conspirator by name, let alone specifics regarding the purported conspiracy. Plaintiffs' negligence claim against NFLP fails to allege any duty whatsoever owed by NFLP to plaintiffs.

Finally, plaintiffs have not rebutted the NFL Defendants' showing that their negligence claims are time-barred because no jurisdiction provides more than a six-year limitations period for personal injury claims, and plaintiffs' purported injuries occurred during their respective NFL careers—nearly all of which concluded by 2005. Plaintiffs' arguments that the negligence claims are tolled by a "discovery rule," and that the injuries for which they seek redress are "separate and distinct" from concussions that they allegedly suffered during their NFL careers, also fail. Plaintiffs may not invoke a "discovery rule" because they do not—and cannot—point to a single allegation in the FAC that could support application of the rule, and their assertion that their injuries are "separate and distinct" is belied by the FAC in which they allege injuries sustained during their careers.

For these reasons, the NFL Defendants respectfully request that this Court dismiss the FAC with prejudice. Plaintiffs cannot cure their pleading by alleging different facts: plaintiffs' claims are preempted by federal labor law, plaintiffs' "negligence-monopolist" claim does not exist, and plaintiffs' fraudulent and negligent misrepresentation claims hinge on misrepresentations that allegedly occurred after plaintiffs retired. As any amendment would be futile, dismissal of the FAC with prejudice is warranted.

REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS

Case 2:12-md-02323-AB  Document 92  Filed 03/29/12  Page 11 of 30
Case 2:12-cv-03394-R-MAN  Document 23  Filed 01/26/12  Page 10 of 29  Page ID
#:11011

**Argument**

**I**   **PLAINTIFFS' CLAIMS ARE PREEMPTED BY THE LMRA**

As the NFL Defendants' moving papers showed, section 301 of the LMRA preempts the claims of plaintiffs who played NFL football pursuant to the terms of the CBAs for two reasons.[1]   (Def. Br., ECF No. 67 at 8-19.)   First, resolution of plaintiffs' claims substantially depends upon an analysis of numerous provisions in the CBAs addressing player health and safety.   Indeed, in denying plaintiffs' remand motion and holding plaintiffs' negligence claim against the NFL "preempted," this Court concluded that the claim is "substantially dependent upon an analysis of certain CBA provisions," because "[t]he CBA places primary responsibility for identifying . . . physical conditions on the team physicians . . . . The physician provisions of the CBA must be taken into account in determining the degree of care owed by the NFL and how it relates to the NFL's alleged failure to establish guidelines or policies to protect the mental health and safety of its players." *Maxwell*, Dec. 8, 2011 Order at 1-2; *see also Stringer*, 474 F. Supp. 2d at 910-11.   Second, plaintiffs' claims—seeking redress for the NFL Defendants' purported failure to implement rules and regulations to protect plaintiffs' health and safety in the workplace—arise under the CBAs because any such duties of the NFL exist only under the CBAs and are not duties owed to the general public.

Plaintiffs' arguments in opposition lack any basis in law or fact, entirely ignore this Court's order denying their remand motion, and are without merit.

---

[1]   One plaintiff, Patrick Heenan, played professional football prior to the enactment of any CBA.  (FAC ¶ 293.)  For ease of reference, the NFL Defendants refer to "plaintiffs" in addressing preemption of claims.

## A.    Plaintiffs' Claims Substantially Depend on an Analysis of the Terms of the CBAs

Plaintiffs' sole argument in opposition to the NFL Defendants' showing that plaintiffs' claims are substantially dependent on an interpretation of the terms of the CBAs is that "the CBAs expressly delegate to the NFL Member Clubs the duties at issue here . . . leaving California common law as the only other remaining source of the NFL Defendants' duties for the claims at issue here." (Pl. Opp. 4.)  Plaintiffs' argument, in fact, proves the NFL Defendants' point.

As plaintiffs now concede, and as the NFL Defendants' moving brief showed, the CBAs expressly delegate—*to others*—"the duties at issue" in this case. Thus, as this Court determined in denying plaintiffs' motion to remand, a court cannot evaluate "the degree of care owed by the NFL," or whether the NFL acted "reasonably" without "tak[ing] into account" the "physician provisions of the CBA." *Maxwell*, Dec. 8, 2011 Order at 2.  For example, assessing whether the NFL failed to act "reasonably" by not "enact[ing] league-wide guidelines and . . . mandatory rules regulating . . . return to play" would first require interpretation of the CBA provision that "[a]ll determinations of recovery time for . . . injuries must be by the Club's medical staff and in accordance with the Club's medical standards"—specifically, what Club medical staff was tasked to do and what standards were applicable in order to determine what NFL conduct would be "reasonable" under the circumstances.  (FAC ¶ 125; Def. Br. Ex. 20, 1980 Supp. to NFL Constitution and Bylaws Art. XVII; *see also* Def. Br. Ex. 6, 1993 CBA Art. XLIV § 1 (requiring a Club physician to notify a player "of a player's physical condition which adversely affects the player's performance or health" and to notify the player in writing "[i]f such condition could be significantly aggravated by continued performance"); Def. Br. Ex. 5, 1982 CBA Art. XXXI § 3 (conferring on

players the right "to obtain a second medical opinion," with the Club bearing "the responsibility" for "the cost of [these] medical services").)

Numerous courts—including the court in *Stringer*, addressing near-identical claims to those here—have so held in ruling that negligence claims against the NFL or its member clubs seeking to impute to others health and safety obligations delegated by the CBAs are preempted because the health and safety provisions of the CBAs must be interpreted to assess the duty owed by the defendant at issue. *See, e.g.*, *Stringer*, 474 F. Supp. 2d at 903-04, 09-11 (holding that claims that the NFL assumed a duty to its players "to use ordinary care in overseeing, controlling, and regulating . . . practices, policies, procedures, equipment, working conditions, and culture . . . to minimize the risk of heat-related illness," and that the NFL breached this duty by "failing to establish regulations" to ensure "adequate care and monitoring of players suffering heat-related illness" and "regulation of . . . return to practice," were preempted); *Maxwell*, Dec. 8, 2011 Order at 1-2 (denying plaintiffs' motion to remand); *Givens*, 684 F. Supp. 2d at 990-91; *Sherwin*, 752 F. Supp. at 1177-79; *Jeffers*, 199 N.C. App. at 95-96.

Indeed, as this Court found, *Stringer* provides "persuasive" authority. *Maxwell*, Dec. 8, 2011 Order at 1; *see also Sherwin*, 752 F. Supp. at 1177-78 (former player's claims, that Club provided negligent medical treatment and fraudulently concealed the extent of the player's injury, preempted because Club "did not owe a duty to provide medical care to the plaintiff independent of the relationship established in the" CBAs); *Jeffers*, 199 N.C. App. at 95-96 (former NFL player's claims against Club—that team physician performed unauthorized procedures during knee surgery—preempted because the claim was substantially dependent on an analysis of CBA provisions setting forth the Clubs' and players' rights and duties in connection with medical care).

1    Lacking a response to this "persuasive" authority (and this Court's

2    prior ruling that plaintiffs' negligence claim against the NFL is preempted),

3    plaintiffs simply ignore it.  But as those cases and the NFL Defendants' moving

4    brief demonstrate, the CBAs cannot be disregarded, and must be interpreted, in

5    adjudicating plaintiffs' claims.

6    As the NFL Defendants also showed, the same is true for plaintiffs'

7    negligence claim against NFLP and their fraud claim.  Plaintiffs' only defense of

8    their negligence claim against NFLP is to state, without explanation, that the claim

9    "is viable based on" *Stringer*.  (Pl. Opp. 1.)  But, as the NFL Defendants argued in

10   their moving brief, the decision in *Stringer* holding that a negligence claim against

11   NFLP was not preempted was based on two faulty premises:  The *Stringer* court

12   failed adequately to consider the role of the Joint Committee on Player Safety and

13   Welfare and its effect on the scope of the duty owed by NFLP regarding equipment

14   safety, and failed to consider that numerous provisions in the CBAs delegate

15   responsibility to the NFL for implementing equipment-related rules.  (Def. Br. 13-

16   14, n.10.)  Plaintiffs do not address these flaws in their opposition.

17   Plaintiffs also ignore the NFL Defendants' argument that resolution of

18   the element of justifiable reliance of their fraud and negligent misrepresentation

19   claims requires an interpretation of the CBAs (Def. Br. 14-15), and fail to address

20   the cases cited by NFL Defendants in which fraud and negligent misrepresentation

21   claims similar to plaintiffs' were held to be preempted.[2]  *See Williams* v. *Nat'l*

22   *Football League*, 582 F.3d 863, 881-82 (8th Cir. 2009) (players' fraud claim—that

23   the NFL knew that a supplement contained a banned substance but failed to warn

24   the players—was "preempted because the Players cannot demonstrate the requisite

---

25   [2]    As shown in the NFL Defendants' moving brief, in an argument unopposed
26   by plaintiffs, plaintiffs' fraudulent concealment and negligent misrepresentation
     claims are also preempted for the same reasons as their negligence claim:  Each
27   requires a duty to disclose, and any such duty cannot be assessed without an
     interpretation of the terms of the CBAs.  (Def. Br. 10, n.8.)
28

- 8 -

reasonable reliance . . . without resorting to the CBA," which tasked specific individuals with responsibility for knowing the contents of supplements); *see also Atwater* v. *Nat'l Football League*, 626 F.3d 1170, 1183 (11th Cir. 2010) (former players' negligent misrepresentation claim—that the NFL provided inaccurate background information regarding investment advisors for the players—was preempted because "whether Plaintiffs reasonably relied on Defendants' alleged misrepresentations is substantially dependent on the CBA's language," which delegated responsibility for player finances to specific individuals).

In sum, plaintiffs' claims against the NFL Defendants are preempted and should be dismissed.

## B.     *Brown* v. *National Football League* Is Inapposite

Beyond ignoring persuasive authority, plaintiffs rely on inapposite case law.

In attempting to refute the NFL Defendants' showing that plaintiffs' claims are preempted because they also arise under the CBAs, plaintiffs cite *Brown* v. *National Football League* to support their argument that the NFL Defendants "owed and/or assumed a duty to the public[.]" (Pl. Opp. 7.) Plaintiffs' reliance on *Brown* is misplaced. In *Brown*, plaintiff was hit in the eye by a penalty flag thrown by a referee. 219 F. Supp. 2d at 375. The court held that, because the NFL had a "duty 'owed to every person in society,' as opposed to a duty owed only to employees covered by the collective bargaining agreement," plaintiff's negligence claim was not preempted. *Id.* at 380 (quoting *United Steelworkers of Am.* v. *Rawson*, 495 U.S. 362, 362, 110 S.Ct. 1904, 1904, 109 L.Ed.2d 362 (1990)). The duty to the public in *Brown*, however, is inapplicable to the allegations in this case. In *Brown*, the duty to the public was to protect it from the "careless throwing of objects." *Id.* at 380. Because a negligently thrown flag could just as foreseeably

harm a spectator as a player, the contractual relationship between the NFL and its employees was not implicated.  *Id.* at 382.

Unlike those in *Brown*, the duties alleged here do not extend to "every person in society."  *Brown*, 219 F. Supp. 2d at 380 ("To be independent of the CBA, a tort claim must allege a violation of a duty 'owed to every person in society' as opposed to a duty owed only to employees covered by the collective bargaining agreement.") (quoting *Rawson*, 495 U.S. at 362).[3]  Rather, as the NFL Defendants established in their moving papers, any obligations concerning health and safety owed by the NFL specifically to *NFL players* do not exist in the absence of the CBAs—whether the NFL is the "preeminent football entity in the world" or not.  (Pl. Opp. 7.)

The CBAs delegate the power to enact and enforce rules regarding NFL play and the health and safety of NFL players to the NFL and its Member Clubs.  (*See* Def. Br. Ex. 23, 1984 NFL Constitution and Bylaws Art. XI § 11.2 ("Playing rules may be amended or changed at any Annual Meeting by the affirmative vote of not less than three-fourths . . . of the members of the League, provided the proposed amendment or change has been presented to the League . . . prior to the Annual Meeting[.]"); FAC ¶ 126 (describing the NFL's alleged duty to "enact reasonable and prudent rules to protect players against the risks associated with repeated brain trauma").)  Thus, plaintiffs' claims concerning NFL player health and safety arise under the CBAs.[4]

---

[3]     *But see Stringer*, 474 F. Supp. 2d at 908 (suggesting *Brown*'s reading of *Rawson* is "too broad").

[4]     *Sherwin*, which found a former player's state law claims preempted, is instructive.  In that case, plaintiff alleged that he suffered an injury for which defendants, the Colts and their team doctors, failed to provide adequate medical care, and that defendants intentionally withheld information regarding the true nature of his injury.  752 F. Supp. at 1173.  Citing *Rawson*, the court held that plaintiffs' various tort claims—including claims for negligence, fraud, and negligent misrepresentation—were preempted because "[t]he Colts owed a duty to provide adequate medical care, or to provide truthful information regarding medical

### C. Plaintiffs' "Negligence-Monopolist" Claim is Preempted

Plaintiffs' argument that their "negligence-monopolist" claim arises under a statute and not the CBAs is wrong. Plaintiffs specifically amended their complaint to *remove* the statutory basis for this claim (as there is none). (*Compare Maxwell* v. *Nat'l Football League*, BC465842, Compl. ¶ 525 (L.A. Sup. Ct. filed July 19, 2011), *with* FAC ¶¶ 543, 546.) Their opposition not only restores the statutory basis for the claim; it identifies a *new* statute under which the claim arises. Opposition briefs are not, however, a vehicle for amendment. *See Baidoobonso-Iam* v. *Bank of America (Home Loans)*, No. 10-CV-9171, 2011 WL 3103165, at *3 (C.D. Cal. July 25, 2011) ("It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss." (quoting *Tietsworth* v. *Sears*, 720 F. Supp. 2d 1123, 1145 (N.D. Cal. 2010))). Plaintiffs are bound by their claim as set forth in their FAC, which asserts the claim based on an alleged common law duty grounded in the NFL's purported "monopoly power over American Football." (FAC ¶ 120.) As established in the NFL Defendants' moving brief, however, plaintiffs' "negligence-monopolist" claim is preempted for the same reasons as their negligence claim: The claim is premised on various duties, the scope of which cannot be assessed without an analysis of the terms of the CBAs. (Def. Br. 10, n.8; *see also* FAC ¶ 543 ("The NFL, by and through its monopoly power, has historically had a duty to invoke rules that protect the health and safety of its players[.]").) Moreover, as shown in the NFL Defendants' moving brief, monopoly power does not establish a duty to the general public to minimize the risk of concussions and therefore plaintiffs' "negligence-monopolist" claim does not exist (even if considered under their belated, purported statutory basis). (*See* Section I.C., *supra*; Section II.A., *infra*; Def. Br. 19.)

---

treatment and diagnoses, *only* to their players covered by the standard player agreement and CBA," and not to "every person in society." *Id.* at 1178 (emphasis added). The same conclusion follows here.

REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS

**D.** **Plaintiffs Are Subject to the CBAs in Effect During Their Playing Careers**

Having failed to refute the NFL Defendants' showing that plaintiffs' claims are preempted, plaintiffs contend that: (1) as retirees and spouses, they are not subject to the LMRA; and (2) the LMRA does not apply to their claims because there was no CBA in effect when plaintiffs filed their original complaints. Each argument fails.

First, plaintiffs argued nearly verbatim in their remand motion that their status as retirees/spouses precludes application of the LMRA—and this Court denied the motion, concluding that plaintiffs' negligence claim was indeed preempted. (*Compare* Pl. Mem. in Support of Mot. to Remand, ECF No. 21, at 12-13, *with* Pl. Opp. 6.) In reviving this futile argument, plaintiffs do not, and cannot, distinguish the cases cited by the NFL Defendants in their moving brief refuting this premise. (*See* Def. Br. 15, n.11.) As the case law makes clear, because plaintiffs' claims are premised on alleged conduct that occurred when plaintiffs played in the NFL, resolution of those claims will require the Court to interpret provisions of those CBAs that were operative during plaintiffs' careers. *See, e.g.*, *Atwater*, 626 F.3d at 1175 n.3 (analyzing CBA provision that "was in effect at the time the events underlying this litigation occurred"); *Stringer*, 474 F. Supp. 2d at 906 n.7 (referring to CBA "in effect at the time of" the events at issue in the litigation); FAC ¶ 120(a) ("[The NFL] owed a duty to protect Plaintiffs on the playing field[.]"). [5]

---

[5] Plaintiffs fail to address the NFL Defendants' showing that the plaintiff spouses' loss of consortium claims are derivative of the former players' claims and should therefore be dismissed as well. *Jenkins* v. *MCI Telecomm. Corp.*, 973 F. Supp. 1133, 1139-40 (C.D. Cal. 1997) (finding spouse's derivative loss of consortium claim failed because, among other reasons, husband's state law claims were preempted); *cf. Sherwin*, 752 F. Supp. at 1179 (staying loss of consortium claim pending arbitration of underlying preempted claims). (Def. Br. 18, n.14.)

REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Plaintiffs' argument that the LMRA does not apply because the National Football League Players Association ("NFLPA") decertified and no operative CBA existed at the time plaintiffs filed their original complaint fails for the same reason. As the FAC makes clear, plaintiffs' claims are premised solely on alleged conduct occurring at the time they played NFL football. (*See, e.g.*, FAC ¶ 120(a) ("[The NFL] owed a duty to protect Plaintiffs on the playing field[.]").) Thus, the court will need to interpret provisions of the CBAs that were operative when the alleged misconduct occurred. Whether the NFLPA was certified or an operative CBA was in effect when plaintiffs filed their complaint is wholly irrelevant.

The cases cited by plaintiffs are inapposite. Both *Powell* v. *National Football League*, 764 F. Supp. 1351 (D. Minn. 1991) and *Brady* v. *National Football League*, 779 F. Supp. 2d 992, 1042 (D. Minn. 2011), *rev'd*, 664 F.3d 661, 673 (8th Cir. 2011), addressed whether the non-statutory labor exemption from violations of the Sherman Act applied to claims against the NFL after the NFLPA decertified, and do not, as plaintiffs imply, have anything to do with LMRA preemption.[6] Moreover, plaintiffs in *Powell* and *Brady* alleged violations based on conduct that occurred *after* the NFLPA decertified, not, as here, allegations of conduct that took place years before decertification. Indeed, in *Dosier* v. *Burns International Security Services*, 729 F. Supp. 695 (N.D. Cal. 1990), a case on which plaintiffs rely, the court held that the question whether plaintiff's claims were

---

[6] Although plaintiffs aver that *Brady* was reversed on other grounds (Pl. Opp. 5), the very proposition plaintiffs quote from the district court's opinion—that a labor dispute governed by federal labor law does not exist in the absence of a union—was directly addressed and rejected by the Eighth Circuit. *See Brady*, 664 F.3d at 673 ("The text of the Norris-LaGuardia Act and the cases interpreting the term 'labor dispute' do not require the present existence of a union to establish a labor dispute.").

REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS

preempted was based on "whether plaintiff was covered by a collective bargaining agreement in 1986," when the alleged misconduct occurred. *Id.* at 696-97.[7]

*          *          *

In sum, plaintiffs' opposition fails to rebut the conclusion that all of plaintiffs' claims are preempted under section 301 and should be dismissed. *Givens*, 684 F. Supp. 2d at 991-92 ("[B]ecause preempted claims must first be presented through the arbitration procedure established in a collective bargaining agreement, those claims should be dismissed"); *Truex* v. *Garrett Freightlines, Inc.*, 784 F.2d 1347, 1353 (9th Cir. 1985) (same).

As the NFL Defendants' moving brief also established, and plaintiffs failed to rebut, because the CBAs apply to plaintiffs' claims, all claims against the NFL brought by the 69 Plaintiffs who played after 1977 must also be dismissed pursuant to the CBAs' "no suit" provision. (Def. Br. 19.) Specifically, the 1977 and 1982 CBAs prohibit claims "against the NFL . . . relating to any aspect of the NFL rules" and "the Constitution and Bylaws," and the 1993 and 2006 CBAs forbid claims against "the NFL . . . relating to any term of [the CBAs]" and "the Constitution and Bylaws." (*Id.*)

---

[7]     The other case cited by plaintiffs in support of this argument, *Office & Professional Insurance Trust Fund* v. *Laborers Funds Administration Office*, 783 F.2d 919 (9th Cir. 1986), has no applicability to the issues in this case where plaintiffs' claims are premised solely on alleged conduct occurring at the time that they played NFL football and CBAs were in place. In *Office & Professional Insurance Trust Fund*, the Ninth Circuit held that claims seeking to require employers to continue to make trust contributions after a CBA expires cannot be alleged as section 301 violations, but rather must be heard by the National Labor Relations Board as an unfair labor practice. *Id.* at 921-22.

## II    PLAINTIFFS FAIL TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED[8]

As demonstrated in the NFL Defendants' moving papers, plaintiffs' claims also fail because they have no basis in law, are deficiently pleaded, or are time-barred.  Nothing in plaintiffs' opposition supports a different conclusion.

### A.    Plaintiffs' "Negligence-Monopolist" Claim is Fiction

In their opposition, plaintiffs cite no authority recognizing their supposed claim for "negligence-monopolist."  Instead—after amending their complaint to *remove* the alleged statutory basis for this claim, in apparent recognition that no statute provides such a basis—plaintiffs now rest on two California statutes, CUPA, Cal. Bus. & Prof. Code § 17001, and the UCL, *id.* § 17200.  Neither statute is cited in plaintiffs' FAC and neither supports plaintiffs' claim.[9]  (*See* FAC ¶¶ 543, 546.)

To the extent that plaintiffs rely on CUPA, their "negligence-monopolist" claim should be dismissed for four independent reasons.  First, CUPA does not provide a cause of action for "negligence-monopolist."  *See Cel-Tech Commc'ns, Inc.* v. *Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 179-81, 83 Cal. Rptr. 2d 548 (1999) (setting forth the specific practices precluded under CUPA, of

---

[8]    As a threshold matter, plaintiffs argue that granting motions to dismiss is disfavored.  (Pl. Opp. 3.)  In support of this proposition, plaintiffs cite eight opinions that were issued before *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  As the Ninth Circuit has acknowledged, post-*Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Cook* v. *Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citing *Twombly* in affirming district court's dismissal of complaint).

[9]    Notably, the *Barnes* plaintiffs concede that this claim has no statutory basis. (*See Barnes* v. *Nat'l Football League*, No. 11-CV-08396-R-MANx, Pl. Opp., ECF No. 80, at 11.)  In any event, plaintiffs may not amend their pleadings in their opposition brief.  *See Baidoobonso-Iam*, 2011 WL 3103165, at *3 (noting the court may not consider allegations asserted in a brief in opposition to a motion to dismiss that were not set forth in the complaint).

which negligence-monopolist is not included). Second, plaintiffs lack standing because they do not compete with the NFL, and CUPA does not confer standing on non-competitors. *See Khoury* v. *Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619, 17 Cal. Rptr. 2d 708 (1993) ("The facts do not involve monopolistic or anticompetitive practice . . . because appellant is not in competition with respondent."). Third, CUPA does not reach the conduct plaintiffs attack, as it does not apply extraterritorially. *See Team Obsolete Ltd.* v. *AHRMA Ltd.*, 216 F.R.D. 29, 40-41 (E.D.N.Y. 2003). Finally, the Commerce Clause bars application of California's antitrust laws to professional football. *See Flood* v. *Kuhn*, 407 U.S. 258, 284-85, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972) (Commerce Clause bars application of state antitrust law to professional baseball); *Partee* v. *San Diego Chargers Football Co.*, 34 Cal. 3d 378, 384-85, 194 Cal. Rptr. 367 (1983) (application of state antitrust law to professional football impermissibly burdens interstate commerce).[10]

Plaintiffs' reliance on the UCL fares no better, as plaintiffs lack standing to bring a UCL claim. Proposition 64, passed in 2004, "substantially revised the UCL's standing requirement; where once private suits could be brought by 'any person acting for the interests of itself, its members or the general public' . . . , now private standing is limited to any 'person who has suffered injury in fact and has lost money or property' as a result of unfair competition." *Kwikset Corp.* v.

---

[10]    Plaintiffs' argument that their "negligence-monopolist" claim is "not preempted by the federal antitrust laws" is misplaced. (Pl. Opp. 9 (*citing Cipollone* v. *Liggett Group, Inc.*, 505 U.S. 504 (1992)).) The NFL Defendants have not argued that federal antitrust laws preempt plaintiffs' state antitrust claims, but rather that application of state antitrust law impermissibly burdens interstate commerce. *See Flood*, 407 U.S. at 284-85; *Partee*, 34 Cal. 3d at 384-85. Plaintiffs' hasty retreat from CUPA notwithstanding, their amended complaint alleges—and they continue to argue in their opposition brief—that the NFL committed antitrust violations under state law by abusing its purported monopoly power. (*See, e.g.*, FAC ¶ 545 ("As a monopoly, the NFL has a duty to protect the health and safety of its players, as well as the public at large."); Pl. Opp. 8 ("Plaintiffs allege that the NFL used its monopoly status to affect the market of good science on concussion injuries.").) Such claims are barred by the Commerce Clause.

REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS

*Superior Court*, 51 Cal. 4th 310, 320-21, 120 Cal. Rptr. 3d 741 (2011) (citations omitted). Thus, in order to have standing to bring a claim under the UCL, "a plaintiff 'proceeding on a claim of misrepresentation as the basis of his or her UCL action'"—invoking the UCL's fraud prong—"'must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions.'" *Id.* at 326-27 (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 306, 93 Cal. Rptr. 3d 559 (2009)).[11]

In an apparent effort to evade the UCL's standing requirement, plaintiffs ignore the clear holdings of *Kwikset* and *In re Tobacco II Cases* and instead rely on outdated case law: namely, pre-Proposition 64 cases. (*See* Pl. Opp. 10 (citing *Bank of the West* v. *Superior Court*, 2 Cal. 4th 1254, 10 Cal. Rptr. 538 (1992); *Comm. on Children's Television* v. *Gen. Foods Corp.*, 35 Cal. 3d 197, 197 Cal. Rptr. 783 (1983); *Chern* v. *Bank of Am.*, 15 Cal. 3d 866, 127 Cal. Rptr. 110 (1976).) However, after Proposition 64, and contrary to plaintiffs' assertions, they are not excused from showing that they "actually relied on the misrepresentation" to establish standing under the UCL. (*Id.*) As demonstrated in the NFL Defendants' moving papers, because nearly all plaintiffs had retired before the NFL made its purported misrepresentations, they could not have relied on those statements. (Def. Br. 22–23 n.18.) Indeed, the only specific reliance on NFL concussion publications alleged by plaintiffs comes in August 2007 with the publication of a pamphlet on concussions. (*See* FAC ¶ 149.) Plaintiffs therefore lack standing to sue under the UCL.[12]

---

[11]     The same requirement "applies equally to the 'unlawful' prong of the UCL when, as here, the predicate unlawfulness is misrepresentation and deception." *Durell* v. *Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363, 108 Cal. Rptr. 3d 682 (2010).

[12]     Plaintiffs' attempt to shoehorn their "negligence-monopolist" claim into the UCL fails for another reason: the statute of limitations for a UCL claim is 4 years,

**B. Plaintiffs Fail to State Claims for Fraud and Negligent Misrepresentation**

The NFL Defendants' moving papers identified several critical deficiencies in plaintiffs' fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation claims: Plaintiffs fail to allege that they reasonably relied on the NFL's purported misrepresentations, or that the NFL's statements caused plaintiffs' injuries, because nearly every plaintiff retired before the NFL made its alleged statements. In addition, plaintiffs' fraudulent concealment claim lacks a single factual allegation regarding an alleged concealment that occurred before 2004, when almost every plaintiff played football. (Def. Br. 21-23.)

Plaintiffs' opposition is as deficient as their pleading. Plaintiffs do not address their fraudulent concealment claim, even in passing. And plaintiffs' defense of their inadequate reliance and causation allegations—elements required for both fraud and negligent misrepresentation claims—fills all of two lines: "Plaintiffs allege that they relied on . . . inaccurate information throughout their NFL careers," and "Plaintiffs sufficiently allege that they suffered damages by these misrepresentations." (Pl. Opp. 12.) Plaintiffs nowhere explain, as required by Rule 9(b), how they could have relied on information *during* their careers that the NFL allegedly provided in 2007 *after* all but one of their careers ended or how such statements could have caused injury to plaintiffs. Indeed, no plaintiff alleges having received or read the 2007 pamphlet on concussions. In sum, Fed. R. Civ. 9(b) requires plaintiffs to "state with particularity the circumstances constituting"

---

Cal. Bus. & Prof. Code § 17208, and the discovery rule is inapplicable to claims under § 17200. *Stutz Motor Car, Inc.* v. *Reebok Int'l, Ltd.*, 909 F. Supp. 1353, 1363 (C.D. Cal. 1995) ("[T]he statute begins to run when [the] cause of action accrues, irrespective of whether plaintiff knew of its accrual, unless plaintiff can successfully invoke the equitable tolling doctrine."), *aff'd*, 113 F.3d 1258 (Fed. Cir. 1997). As such, plaintiffs' "negligence-monopolist" claim is time-barred, like their negligence claims. (*See* Def. Br. 24–25.)

each of their claims "including the who, what, when, where, and how of the misconduct charged." *Ebeid* v. *Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotations omitted). Plaintiffs have not.

**C.      Plaintiffs Fail to State a Claim for Negligence Against NFLP and Conspiracy**

The NFL Defendants' moving brief established that plaintiffs' negligence claim against NFLP—resting solely on five boilerplate paragraphs in the proper count that lacked factual allegations as to NFLP's purported duty or how the breach of that purported duty proximately caused plaintiffs' alleged injuries—and conspiracy claim—failing to allege the identity of a single co-conspirator, any details about the alleged conspiracy or the unlawful act underlying it—were insufficient to state a claim and should be dismissed. (Def. Br. 20-21, 23-24.)

Plaintiffs do not even mention, let alone attempt to refute, the NFL Defendants' arguments as to why the negligence claim against NFLP should be dismissed. As for trying to salvage their conspiracy claim, plaintiffs' conclusory briefing—a single sentence asserting that they state a claim—is no more availing than their conclusory pleading.[13] Accordingly, because plaintiffs have not opposed, and cannot oppose, the NFL Defendants' arguments in favor of dismissal, their negligence claim against NFLP and their conspiracy claim should be dismissed. *See Gwarduri* v. *I.N.S.*, 362 F.3d 1144, 1146 (9th Cir. 2004) ("It is well within our discretion to determine that the government's lack of timely opposition is tantamount to a concession that its position in the litigation was not substantially justified.").

---

[13]     Plaintiffs mention their conspiracy claim once in their opposition brief, stating in the Introduction, "Plaintiffs have stated claims for . . . conspiracy . . . with sufficient particularity to satisfy [Rule] 9(b)." (Pl. Opp. 1-2.) Plaintiffs offer no further explanation.

REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS

### D. Plaintiffs Have Not Alleged Sufficient Facts to Rescue Their Time-Barred Negligence Claims

The NFL Defendants' moving brief established that plaintiffs' negligence claims against the NFL Defendants are barred because no state provides a limitations period for personal injury claims that is longer than six years, and plaintiffs' alleged injuries occurred during their respective NFL playing careers—nearly all of which concluded by 2005.[14]

Each of plaintiffs' arguments in opposition is flawed. As a threshold matter, plaintiffs incorrectly assert that California's statute of limitations—and its "discovery rule"—control because this is "a federal diversity action based on alleged violations of [California] state law." (Pl. Opp. 12.) First, this is not a diversity action. This Court has subject matter jurisdiction because plaintiffs' claims raise a federal question. 28 U.S.C. § 1331; *Maxwell*, Dec. 8, 2011 Order at 2 ("removal of this action was proper" because "at least one federal claim is present").[15] Second, plaintiffs have not alleged violations of California law. Indeed, the 73 player plaintiffs hail from 22 different states and played for 28 different clubs in 20 different states, and the NFL Defendants are headquartered in New York. (*See* FAC ¶¶ 176-541.) Therefore, plaintiffs have not established that California's discovery rule controls.

---

[14] Todd Johnson is the only plaintiff who played professional football later than 2005. (FAC ¶ 453.) Mr. Johnson, however, does not make specific time-related allegations regarding his injuries, and the NFL Defendants therefore reserve all rights to move for the dismissal of his claim on the basis of statute of limitations, pending the completion of discovery. (*See id.* ¶ 454.)

[15] No diversity exists because the NFL is a citizen of every state where its members are citizens, and its members are citizens of the same states as many plaintiffs. *See Carden* v. *Arkoma Assoc.*, 494 U.S. 185, 195, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990) ("the Court will . . . count every member of an unincorporated association for purposes of diversity jurisdiction"); *see, e.g.*, FAC ¶¶ 1 (Arizona), 4 (California), 6 (Ohio), 9 (North Carolina), 11 (Michigan), 14 (Washington), 16 (Texas), 18 (Louisiana), 19 (Florida), 24 (Tennessee), 30 (Georgia), 42 (Colorado), 48 (New York), 51 (Pennsylvania), 61 (Massachusetts), 69 (Indiana).

REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS

Case 2:12-md-02323-AB Document 23 Filed 03/29/12 Page 27 of 30 Page ID
Case 2:11-cv-08394-R-MAN Document 92 Filed 01/26/12 Page 26 of 29 Page ID
#:11027

Even if a "discovery rule" were available to plaintiffs, plaintiffs nonetheless failed to allege facts sufficient to invoke this rule, as the NFL Defendants' moving brief showed. (Def. Br. 25.) In fact, the lead case cited by plaintiffs demonstrates as much: In *G.D. Searle & Co.* v. *Superior Court*, 49 Cal. App. 3d 22, 25-26, 122 Cal. Rptr. 218 (Ct. App. 1975), the court held that plaintiff's allegations were insufficient to invoke the discovery rule because "[a] plaintiff who relies on this exception must plead facts justifying delayed accrual; the complaint must allege (1) the time and manner of discovery and (2) the circumstances excusing delayed discovery." Plaintiffs allege none of these facts in their FAC. Rather, in an improper attempt to cure their pleading deficiencies in their brief, plaintiffs assert that their "neurological" injuries occurred "after they retired from the NFL," and thus they did not discover them before. *See Baidoobonso-Iam*, 2011 WL 3103165, at *3; Pl. Opp. 14. But such a conclusory assertion—even if taken as true—is plainly insufficient to invoke the discovery rule given that 72 of the 73 plaintiffs retired before 2005, 68 plaintiffs retired more than ten years ago, and plaintiffs therefore still may have discovered their injuries over six years ago. And although plaintiffs plead that they "could not have known or discovered with reasonable certainty that the cause of their injuries were due to Defendants' fraudulent concealment," plaintiffs do not allege even one fact regarding this purported concealment and, as discussed above, made no effort in their opposition to defend the claim. *Adams* v. *I-Flow Corp.*, No. 09-CV-09550, 2010 WL 1339948, at *4 (C.D. Cal. Mar. 30, 2010) (dismissing several plaintiffs' negligence claims as time-barred); FAC ¶ 127; Pl. Opp. 14.

Finally, plaintiffs' reliance on *Pooshs* v. *Philip Morris USA, Inc.*, 51 Cal. 4th 788, 792, 123 Cal. Rptr. 3d 578 (2011), to support their argument that their concussions and their cognitive problems are "separate and distinct" injuries that accrued on different dates, is misplaced. In *Pooshs*, plaintiff was diagnosed with

COPD, a pulmonary disease, in 1989 and lung cancer in 2003. *Id*. at 791. Plaintiff specifically alleged that COPD was "a separate illness, which does not pre-dispose or lead to lung cancer and that it has nothing medically, biologically, or pathologically to do with lung cancer." *Id*. at 796. In holding that "two physical injuries . . . can, in some circumstances, be considered 'qualitatively different' for purposes of determining when the applicable statute of limitations period begins to run," the Court expressly relied on this allegation regarding the "separate and distinct" nature of COPD and lung cancer. *Id*. at 792, 802-03 (citing *Grisham* v. *Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 645, 54 Cal. Rptr. 3d 735 (2007)).

Putting aside that plaintiffs have not alleged violations of California law and therefore cannot invoke California's "separate and distinct" injury doctrine, this doctrine would not rescue plaintiffs' claims in any event. Unlike the *Pooshs* plaintiff, plaintiffs here have failed to allege that their injuries were "separate and distinct" (let alone "medically, biologically, and pathologically" unrelated) and, in fact, repeatedly allege past traumatic brain injuries. (*See, e.g.*, FAC ¶ 180: "Plaintiff Vernon Maxwell suffers from multiple past traumatic brain injuries with various symptoms including, but not limited to, memory loss and headaches.") Accordingly, plaintiffs may not avail themselves of this doctrine, and their negligence claims should be dismissed.

*           *           *

The FAC should be dismissed because plaintiffs' claims are preempted by section 301 of the LMRA and the FAC fails to state claims upon which relief may be granted. Plaintiffs' request that the Court grant plaintiffs leave to amend the FAC should be denied for several reasons.

Most important, leave to amend is improper because the "pleading could not possibly be cured by the allegation of other facts." *Doe* v. *United States*, 58 F.3d 494, 497 (9th Cir. 1995) (quoting *Cook, Perkiss & Liehe* v. *N. Cal.*

- 22 -

*Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990)). Plaintiffs' claims are preempted by federal labor law, and no additional allegations will change that fact. *See, e.g.*, *Holmes* v. *Tenderloin Housing Clinic, Inc.*, No. 09-CV-5781, 2010 WL 1929586, at *5 (N.D. Cal. May 12, 2010) (dismissing preempted claim with prejudice); *Smith* v. *Pac. Bell Tel. Co.*, No. 06-CV-1756, 2007 WL 1114044, at *12 (E.D. Cal. Apr. 13, 2007) (same); *Wynn* v. *Nat'l Broad. Co.*, 234 F. Supp. 2d 1067, 1119-21, 1124 (C.D. Cal. 2002) (same).

In addition, plaintiffs' "negligence-monopolist" claim does not exist, and plaintiffs' fraudulent and negligent misrepresentation claims could not be cured because nearly all plaintiffs retired before the NFL made its purported misrepresentations, and plaintiffs therefore could not have relied on or been damaged by such statements. *Scognamillo* v. *Credit Suisse First Boston LLC*, No. 03-CV-2061, 2005 WL 2045807, at *7 (N.D. Cal. Aug. 25, 2005) (dismissing fraud and negligent misrepresentation claims "with prejudice" where plaintiffs could not prove "reasonable reliance" as a "matter of law" and could "prove no set of facts that would entitle them to relief"), *aff'd*, 254 Fed. Appx. 669 (9th Cir. 2007).

## Conclusion

For the foregoing reasons, and those set forth in the NFL Defendants' moving papers, the NFL Defendants respectfully submit that the FAC should be dismissed with prejudice.

REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS

1    Dated:   January 23, 2012              Respectfully submitted,

2                                           MUNGER, TOLLES & OLSON LLP

3
                                            By: _____/s/ *Ronald L. Olson*_____
4

5                                           -and-

6                                           PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

7
                                            Attorneys for Defendants
8                                           NATIONAL FOOTBALL LEAGUE
9                                           and NFL PROPERTIES LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                         REPLY MEMORANDUM IN
                                                      SUPPORT OF MOTION TO DISMISS