# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | MDL No. 2323<br>No. 12-md-2323-AB |
| THIS DOCUMENT RELATES TO: | CIVIL ACTION<br>Case No. 2:12-cv-1023 |
| VERNON MAXWELL, et al. | |
| Plaintiffs, | |
| v. | |
| NATIONAL FOOTBALL LEAGUE, et al., | |
| Defendants. | |

**RIDDELL DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SEVER PURSUANT TO FRCP 20 AND 21**

1  BOWMAN AND BROOKE LLP
2  Paul G. Cereghini (SBN: 148016)
   *Paul.Cereghini@bowmanandbrooke.com*
3  Vincent Galvin, Jr. (SBN: 104448)
4  *Vincent.Galvin@bowmanandbrooke.com*
   Marion V. Mauch (SBN: 253672)
5  *Marion.Mauch@bowmanandbrooke.com*
6  879 West 190th Street, Suite 700
   Gardena, CA 90248-4227
7  Tel:   (310) 768-3068
8  Fax:   (310) 719-1019

9
   Attorneys for Defendants RIDDELL, INC.; ALL AMERICAN
10 SPORTS CORPORATION; RIDDELL SPORTS GROUP, INC.;
11 EASTON-BELL SPORTS, INC.; EASTON-BELL SPORTS, LLC;
   EB SPORTS CORP.; and RBG HOLDINGS CORP.
12

13            **UNITED STATES DISTRICT COURT**

14            **CENTRAL DISTRICT OF CALIFORNIA**

15

16 | VERNON MAXWELL, et al.,          | CASE NO.:  CV 11-8394 R (MANx)
17 |         Plaintiffs,              | **RIDDELL DEFENDANTS' REPLY
18 |                                  | MEMORANDUM OF POINTS AND
   | v.                               | AUTHORITIES IN SUPPORT OF
19 |                                  | MOTION TO SEVER PURSUANT
20 | NATIONAL FOOTBALL LEAGUE,        | TO FRCP 20 AND 21**
   | et al.,
21 |                                  | Date:      February 6, 2012
22 |         Defendants.              | Time:      10:00 a.m.
   |                                  | Dept:      Courtroom 8
23 |
24 |                                  | Judge:  Hon. Manuel L. Real
25 |
26 |                                  | Notice of related cases:
   |                                  | No. CV 11-08395 R (MANx)
27 |                                  | No. CV 11-08396 R (MANx)
28

                                1

# TABLE OF CONTENTS

I.  ARGUMENT .................................................................................................. 1

    A.   The motion to transfer should not preclude this Court from ruling on the Riddell Defendants' motion. ................................... 1

    B.   Plaintiffs fail to show that their claims against the Riddell Defendants arise out of the same transaction, occurrence, or series of transactions or occurrences. ........................................... 2

    C.   Plaintiffs fail to demonstrate a question of law or fact common to properly support joinder. . .................................................. 8

    D.   Plaintiffs fail to show that severance of their separate and distinct claims would prejudice any substantial right. ...................... 12

    E.   Even if joinder were proper, which it is not, the Court should nonetheless exercise its wide discretion to sever................... 12

II. CONCLUSION ............................................................................................. 15

i

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Phelps*,
655 F. Supp. 560 (M.D. La. 1985)....................................................... 11

*Boschert v. Pfizer, Inc.*,
No. 4:08-CV-1714 CAS, 2009 WL 1383183
(E.D. Mo. May 14, 2009)............................................... 5, 6, 7, 8, 9, 12

*Chrysler Credit Corp. v. Country Chrysler, Inc.*,
928 F.2d 1509 (10th Cir. 1991) ................................................. 13, 14

*Coughlin v. Rogers*,
130 F.3d 1348 (9th Cir. 1997) ..................................................... 8, 12

*DIRECTV v. Loussaert*,
218 F.R.D. 639 (S.D. Iowa 2003) ...................................................... 5

*Grayson v. K-Mart Corp.*,
849 F. Supp. 785 (N.D. Ga. 1994)..................................................... 11

*Graziose v. Am. Home Prods. Corp.*,
202 F.R.D. 638 (D. Nev. 2001)............................................... 10, 11,14

*In Re Air Crash Disaster at Tenerife*,
435 F. Supp. 927 (J.P.M.L. 1977).......................................................... 2

*In re Baycol Prods. Liab. Litig.*,
MDL No. 1431, 2002 WL 32155269 (D. Minn. July 5, 2002) ............................ 6

*In re Diet Drugs Prods. Liab. Litig.*,
294 F. Supp. 2d 667 (E.D. Pa. 2003) ................................................... 6

*In re Diet Drugs Prods. Liab. Litig.*,
Civ.A 98-20478, 1203, 1999 WL 554584 (E.D. Pa. July 16, 1999) .................... 6

*In re Medtronic, Inc.*,
408 F. Supp. 2d 1351 (J.P.M.L. 2005).............................................................. 2, 4

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
MDL No. 1014, 1995 WL 428683 (E.D. Pa. July 17, 1995)................................ 6

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
MDL No. 1014, 1996 WL 900346 (E.D. Pa. July 11, 1996)................................ 6

*In re Prempro Prods. Liab. Litig.*,
417 F. Supp. 2d 1058 (E.D. Ark. 2006)............................................................... 7

*In re Repetitive Stress Injury Litig.*,
11 F.3d 368 (2d Cir. 1993),.................................................................... 9, 10, 14

*In re Rezulin Prods. Liab. Litig.*,
168 F. Supp. 2d 136 (S.D.N.Y. 2001) ................................................................. 7

*Martinez v. Safeway Stores, Inc.*,
66 F.R.D. 446 (N.D. Cal. 1975)......................................................................... 11

*McNaughton v. Merck & Co.*,
No. 04-CV-8297, 2004 WL 5180726 (S.D.N.Y. Dec. 17, 2004)........................ 6

*Mosley v. General Motors Corp.*,
497 F.2d 1330 (8th Cir. 1974) ........................................................................ 5, 8

*Sabolsky v. Budzanoski*,
457 F.2d 1245 (3d Cir. 1972)............................................................................ 12

*Saval v. BL Ltd.*,
710 F.2d 1027 (4th Cir. 1983) ........................................................................ 6, 8

*Smith v. N. Am. Rockwell Corp.*,
50 F.R.D. 515 (N.D. Okla. 1970)........................................................................ 1

**Rules**

Fed. R. Civ. P. 5(b)(2) ....................................................................................... 16

iii

Case 2:12-md-02323-AB Document 30 Filed 02/30/12 Page 6 of 23

Fed. R. Civ. P. 20. ................................................................................ 5, 9, 11, 15

Fed. R. Civ. P. 20(a) ....................................................................................... 6, 8

Fed. R. Civ. P. 21 ................................................................ 9, 11, 12, 13, 14, 15

Fed. R. Civ. P. 42 ............................................................................................ 14

J.P.M.L. Rule 2.1(d) ........................................................................................ 2

L.R. 7-12 ......................................................................................................... 10

iv

# REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## I.    ARGUMENT

Defendants Riddell, Inc.; All American Sports Corporation; Riddell Sports Group, Inc.; Easton-Bell Sports, Inc.; Easton-Bell Sports, LLC; EB Sports Corp.; and RBG Holdings Corp. (collectively, the "Riddell Defendants"),[1] pursuant to L.R. 7-10, submit this reply memorandum in response to Plaintiffs' Opposition and in support of the Riddell Defendants' motions to sever in all three related cases.[2] In short, Plaintiffs in these three cases fail to cite to any case that has upheld as proper the joinder of claims involving anywhere near the number of plaintiffs attempted to be joined together here in these three related actions, much less for claims spanning more than half a century. As abundant case law shows, Plaintiffs' attempted joinder here is patently improper. Following that case law, including a prior ruling by this very Court, the Court should grant the Riddell Defendants' motions and sever the individual Plaintiffs' claims in all three of these actions.

### A.    The motion to transfer should not preclude this Court from ruling on the Riddell Defendants' motion.

Plaintiffs argue that the instant motion may be premature given the NFL Defendants' pending motion before the Judicial Panel on Multidistrict Litigation ("JPML") to transfer and consolidate these cases with other cases. (*Maxwell* Pls.' Opp. to Riddell Defs.' Mot. to Sever (Dkt No. 91) ("*Maxwell* Opp.") at 3.) That motion does not preclude this Court from ruling on the motions to sever, nor should it, for several reasons.

---

[1] Referring to these Defendants collectively does not imply or concede that they are properly joined or named as Defendants, and the "Riddell Defendants" reserve the right to move to dismiss some or all of them. The collective reference is merely for convenience.

[2] As with its opening motion and memorandum, the Riddell Defendants address all three sets of Plaintiffs' misjoinder collectively, since their claims in *Maxwell*, *Pear*, and *Barnes* are virtually identical, as are their arguments.

CV 11-8394 R (MANx)

*First*, the JPML's rules provide that the mere pendency of a motion to transfer "does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court." *See* Rule 2.1(d). The JPML may defer its ruling concerning transfer of particular actions to allow the potential transferor court to rule on pending motions. *See In Re Air Crash Disaster at Tenerife*, 435 F. Supp. 927, 928 n.3 (J.P.M.L. 1977) ("On principles of comity, after receiving a request from the judge to whom [one of the actions] is assigned, we are deferring our ruling concerning [that] action pending that judge's decision on a matter he has under consideration."); *In re Medtronic, Inc.*, 408 F. Supp. 2d 1351, 1352, 1352 (J.P.M.L. 2005) (deferring transfer of one action at the request of the district judge assigned to that action so that the judge could rule on a pending motion.). Additionally, there is no stay of proceedings before this Court pending a ruling on the motion to transfer. Thus, there is nothing by rule or case law that prevents this Court from proceeding to adjudicate the currently pending matters.

*Second*, Plaintiffs neglected to mention that the Riddell Defendants opposed the motion to transfer because, among other reasons, it is premature given the imminent hearing scheduled in this case on this motion. Moreover, this Court's rulings on the Riddell Defendants' pending Motions to Sever (and their Motions to Dismiss) may greatly streamline issues and claims sought to be transferred.

**B.     Plaintiffs fail to show that their claims against the Riddell Defendants arise out of the same transaction, occurrence, or series of transactions or occurrences.**

In arguing that all of their claims spanning a period of more than fifty (50) years "arise from the same transaction or occurrence," Plaintiffs promote an overly simplified and erroneous interpretation of the appropriate analysis. Essentially, Plaintiffs conclusorily assert that their claims are properly joined because they purportedly all involve "enough related operative facts," that "arise out of a

1  systematic pattern of events," and are all "logically related." (*See, e.g.*, *Maxwell*

2  Pls.' Opp. at 5-6; *Barnes* Pls.' Opp to Riddell Defs.' Mot. to Sever (Dkt. No. 82)

3  ("*Barnes* Opp.") at 4-5.) Plaintiffs' argue they satisfy these criteria because they

4  "were part of the same league, playing the same sport, and wearing the same brand

5  of helmets while engaging in the same or similar activities or movements."

6  (*Maxwell* Opp. at 7.) They are incorrect both factually and legally.

7     Plaintiffs' argument for joinder under such a generalized view of their

8  claims would represent a massive expansion of joinder principles which finds no

9  support in the rules or case law. Indeed, Plaintiffs cite no analogous cases finding

10  joinder proper under even remotely similar facts to these. That is because joinder

11  under such facts is not proper.

12     Under Plaintiffs' interpretation, for example, 136 different plaintiffs from

13  across the country who, over the period from 1953 to 2009, bought, drove, and

14  were differently injured in Ford automobiles ranging from the 1953 Mainline to the

15  2009 Focus could all sue Ford together in one action alleging that the vehicles

16  were "defective" because they failed to provide "adequate protection" in a crash.

17  Following Plaintiffs' logic, those claims would be properly joined because all of

18  the driver-plaintiffs were part of the same class (Ford owners) who were engaged

19  in the same activity (driving on the roads) while driving "the same brand of

20  [vehicle]" (Ford). (*See id.*) Joinder under those facts would be patently improper,

21  just as it is here.

 

*1952 Ford Mainline*                    *2009 Ford Focus*

27     Plaintiffs also attempt to avoid the numerous significant differences between

28  all of their claims by arguing that focusing on those dissimilarities "wholly

1    ignore[s] the allegations pertaining to the NFL," which, they allege, support a
2    pattern of conduct. (*Id.* at 6.)  Plaintiffs fail to cite any law to support their
3    argument that their claims against the NFL are relevant at all in determining
4    whether their claims against the Riddell Defendants are properly joined.

5          Plaintiffs offer summary conclusions and bald assertions of a purported
6    logical relationship between their claims, but they fail to explain in any detail how,
7    for example, the claims of a player-Plaintiff who played in 1960 for the Los
8    Angeles Chargers are "logically related" to those of one who played in 2009 for
9    the St. Louis Rams, given that each player wore a completely different helmet,
10   played under different rules for different teams in different cities almost fifty (50)
11   years apart, and allegedly suffers from different symptoms and conditions (e.g.,
12   dementia versus memory loss).  (*Compare, e.g., Maxwell* First Am. Compl.
13   ("*Maxwell* FAC") ¶¶ 342-46 (player-Plaintiff David Kocourek), *with id.* ¶¶ 452-56
14   (player-Plaintiff Todd Johnson).)  Moreover, while the *Maxwell* Plaintiffs resist the
15   Court taking judicial notice of the fact that football helmets changed considerably
16   between the earlier- and later-playing Plaintiffs, their own allegations support this
17   reality.[3]  (*See, e.g., Id.* ¶¶ 95-99 (discussing the considerable changes in designs
18   and the significant safety advancements the Riddell Defendants introduced over
19   the span covered by Plaintiffs' claims).)

20         Plaintiffs' oversimplified analysis is similar to that advanced in *Boschert v.*
21   *Pfizer, Inc.*, No. 4:08-CV-1714 CAS, 2009 WL 1383183 (E.D. Mo. May 14,
22   2009), in which four plaintiffs asserted product liability claims, including claims of
23

24   [3] While the *Maxwell* and *Pear* Plaintiffs challenged the propriety of the Court
25   taking judicial notice of the seemingly obvious fact that football helmets have
26   changed considerably since the 1950s, the *Barnes* Plaintiffs did not.  Thus, based
     on that lack of opposition, the Court can and should take judicial notice of that fact,
27   at least in *Barnes*. *See* L.R. 7-12 ("The failure to file any required paper, or the
28   failure to file it within the deadline, may be deemed consent to the granting or
     denial of the motion.").

4

failure to warn, against Pfizer arising out of their use of the smoking-cessation drug Chantix. The *Boschert* plaintiffs argued that their claims arose out of the same transaction or occurrence or series of transactions or occurrences "because they all ingested the drug Chantix, albeit for different times and for different durations, and they all developed, to varying degrees, the same type of mental or behavioral injury as a result of defendant's alleged misconduct." *Id.* at *2. "In short, according to [the *Boschert*] plaintiffs, the common transaction or occurrence in this case is Chantix." *Id.*

The *Boschert* court noted that although the "same transaction or occurrence" requirement under Rule 20 "may be construed liberally, this does not mean joinder is proper in the absence of a transactional link." *Id.* at *3 (quoting *DIRECTV v. Loussaert*, 218 F.R.D. 639, 642 (S.D. Iowa 2003) (citing *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974)). After examining the factual allegations in the complaint, the court held that joinder was improper. *Id.* Specifically, the court noted that the prescriptions were provided through different health care providers, and the drug was taken at different times for various durations." *Id.*

Moreover, while the *Boschert* plaintiffs all alleged behavioral and mental side-effects, their alleged symptoms were not the same and their medical histories differed. *Id.* Finally, the court noted, "not insignificantly," the fact that the plaintiffs were all from different states. *Id.* Thus, the court concluded "the mere fact the four plaintiffs took Chantix at some point in time and suffered some sort of mental or behavioral side-effect is not enough of a logical or factual connection to satisfy the same transaction or occurrence requirement." *Id.* (citing *McNaughton v. Merck & Co.*, No. 04-CV-8297, 2004 WL 5180726, at *2 (S.D.N.Y. Dec. 17, 2004) (rejecting argument that alleged failure to warn consumers and doctor of the potential harms of Vioxx satisfied the requirements of Rule 20(a)); *Saval v. BL Ltd.*, 710 F.2d 1027, 1031-32 (4th Cir. 1983) (rejecting argument that allegations

CV 11-8394 R (MANx)

of fraud and breach of federal warranties concerning similar problems with automobiles satisfied the transactional test); *In re Prempro Prods. Liab. Litig.*, 417 F. Supp. 2d 1058, 1059 (E.D. Ark. 2006) (finding plaintiffs were not properly joined where the only thing common among them was that they took a similar drug); *In re Diet Drugs Prods. Liab. Litig.*, 294 F. Supp. 2d 667, 679 (E.D. Pa. 2003) (same); *In re Baycol Prods. Liab. Litig.*, 2002 WL 32155269, at *2 (D. Minn. July 5, 2002) (finding, in a case involving an anti-cholesterol drug, that "the fact that defendants' conduct is common to all of plaintiffs' claims and that the legal issues of duty, breach of duty and proximate cause and resulting harm are common do not satisfy Rule 20's requirements"); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 144 (S.D.N.Y. 2001) (finding misjoinder because plaintiffs, who ingested the same drug, had different exposures to the drug, different injuries, and different medical histories); *In re Diet Drugs Prods. Liab. Litig.*, 1999 WL 554584, at *3 (E.D. Pa. July 16, 1999) (dropping misjoined plaintiffs from different states whose only commonality was ingestion of the same drugs in question); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 1996 WL 900346, at *3 (E.D. Pa. July 11, 1996) (noting the many differences among the plaintiffs, including their unique medical histories, prevented joinder under Rule 20(a)); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 1995 WL 428683, at *1 (E.D. Pa. July 17, 1995) (same).

The relevant factors here on the "same transaction or occurrence" analysis point even more compellingly to misjoinder. Here, there are not four plaintiffs, but 136 different player-Plaintiffs alleging injury from purportedly defective products. Moreover, unlike in *Boschert*, in which the plaintiffs all took the same drug, the player-Plaintiffs here are not even attacking the same product, given that they largely all necessarily wore different model helmets over the course of the fifty-six year period at issue, and some still do not even allege that they were injured while wearing helmets designed, manufactured, distributed or sold by any of the named

defendants. And like in *Boschert*, although the player-Plaintiffs all allege generally that they received "permanent traumatic brain injuries" (*Maxwell* Pls.' Opp. at 7), their Amended Complaints show they largely allegedly suffer from different symptoms from those alleged injuries. (*Compare, e.g., Maxwell* FAC ¶ 210 (alleging "various CTE symptoms including but not limited to frontal and temporal lobe damage, multiple past traumatic brain injuries affecting multiple areas of his brain, intermittent explosive disorder, cognitive impairment, poor judgment in regard to finances and relationships, and early on-set dementia), *with id.* ¶ 215 (alleging as only example of symptoms "short-term memory loss").)

Plaintiffs' Oppositions simply ignore that helmet industry standards, state-of-the-art, warnings, competition, available scientific research and knowledge, materials, engineering processes, manufacturing techniques, marketing, advertising, and many, many other facets of helmet design, manufacturing, distribution and sales all changed significantly over almost 60 years, as they have in virtually every industry over the past half century. At the same time, the state laws governing product liability claims have evolved, though plaintiffs' improperly-consolidated complaints and amended complaints totally ignore player-by-player choice-of-law distinctions just as they ignore the temporal distinctions in choice-of-law issues spanning almost six decades.

Finally, while the player-Plaintiffs were all former NFL players, as they implicitly acknowledge, that factor provides little commonality between them, given that the rules of play changed significantly over the fifty-plus-year span covering their claims. (*See, e.g., Maxwell* FAC ¶ 128 (cataloging various rules changes between 1956 amd 2005).) Moreover, the CBAs under which the vast majority of them played also changed significantly over that period. (*See, e.g., Maxwell* NFL Defs.' Opp. to Plfs.' Mot. to Remand (Dkt No. 31)).

CV 11-8394 R (MANx)

1   As in *Saval*, Plaintiffs here have "conveniently glosse[d] over the

2   differences between" their claims. 710 F.2d at 1031.[4] Plaintiffs' attempts to crowd

3   all under the same umbrella fail. Their claims do not arise from the same

4   transaction, occurrence, or series of transactions or occurrences. *See* Fed. R. Civ.

5   P. 20(a). Therefore, their claims are misjoined.

6   **C. Plaintiffs fail to demonstrate a question of law or fact common to**

7   **properly support joinder.**

8   Plaintiffs' failure to show that their claims arise from the same transaction,

9   occurrence, or series of transactions or occurrences, should end the inquiry

10  altogether and result in severance. *See, e.g.*, *Boschert*, 2009 WL 1383183, at *4

11  ("Because the first requirement of Rule 20, is not met, the Court need not address

12  whether there is a common question of law or fact.") (citing Fed. R. Civ. P. 20(a);

13  *Mosley*, 497 F.2d at 1332). However, even assuming Plaintiffs could make that

14  showing, which they cannot, they must also show common issues of law or fact,

15  which they have also failed to do. *See In re Repetitive Stress Injury Litig.*, 11 F.3d

16  368, 374 (2d Cir. 1993), *reh'g denied* 35 F.3d 637 (2d Cir. 1994) ("the burden is

17

18  [4] Plaintiffs also attempt to distance themselves from relevant joinder precedent by

19  arguing that the *Saval* case is "not binding authority" and "distinguishable."

20  (*Maxwell* Pls.' Opp. at 8; *Barnes* Pls.' Opp. at 3.) *Saval* is not distinguishable in
    any meaningful way. Moreover, both the Ninth Circuit and this Court have

21  recognized the precedential value of *Saval* and both cited and followed it. *See,*

22  *e.g.*, *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997) (citing *Saval*);
    *Huezo v. Westfield Topanga Owner L.P.*, No. CV 11-00800 MMM (PJWx) (C.D.

23  Cal. May 9, 2011) (Morrow, J.) (citing *Saval* as supporting conclusion that
    plaintiffs' claims of violations of Americans with Disabilities Act involved

24  separate and distinct injuries and, therefore, were distinct transactions). Moreover,

25  Plaintiffs' attempts to distinguish *Huezo* are irrelevant. (*See Maxwell* Pls.' Opp. at
    9.) The import of *Huezo* is to demonstrate that this Court has followed *Saval* as

26  valid precedent, which Plaintiffs do not and cannot refute. Thus, *Huezo* squarely

27  rebuts Plaintiffs' argument that this Court should not likewise follow *Saval*

28  because it is "not binding authority."

CV 11-8394 R (MANx)

on the party seeking aggregation to show common issues of law or fact; the burden is not on the party opposing aggregation to show divergences"); *see also Graziose v. Am. Home Prods. Corp.*, 202 F.R.D. 638, 640 (D. Nev. 2001) (quoting *In re Repetitive Stress Injury Litig.*).

Overall, Plaintiffs attempt to over-generalize the nature of their claims and Rules 20 and 21 analysis by arguing that "[r]egardless of any alleged differences that the Riddell Defendants point to among Plaintiffs, the Court will ultimately face the identical question in every case, *i.e.*, whether Defendants are liable to Plaintiffs for their injuries based upon the allegations of Plaintiffs' First Amended Complaint." (*Maxwell* Pls.' Opp. at 12.) Such an oversimplified analysis would completely gut permissive joinder principles and eviscerate Rules 20 and 21. Contrary to Plaintiffs' urging, it would be improper to disregard the extensive differences between these Plaintiffs' claims against the Riddell Defendants and to oversimplify the analysis, as they request.

Plaintiffs point to no genuine common issues of law or fact to properly support joinder. The only example they proffer is that they all "allege that the Riddell Defendants failed to warn that their helmets would not prevent concussions which could lead to later cognitive brain injuries." (*Maxwell* Pls.' Opp. at 12.) This generalization of their claims presents no common issues of either law or fact.

Primarily, the law on this alleged failure to warn will be different for these various Plaintiffs, considering that they played for different teams, were allegedly injured in different places, played at different times, and reside in different states. Thus, their claims will require not a common analysis, but "separate legal analyses." *See, e.g.*, *Boschert*, 2009 WL 1383183, at *4 (noting the fact that the plaintiffs' claims would all be "based on each plaintiff's respective state's laws" thus requiring "separate legal analyses," further compelled severance).

Moreover, while Plaintiffs offer that the player-Plaintiffs wore "the same brand of helmets," (*see, e.g.*, *Maxwell* Pls.' Opp. at 7), they still fail to identify

CV 11-8394 R (MANx)

1   what helmets they purportedly wore over the fifty-six-year period or to identify
2   any common fact in terms of a specific alleged defect in each helmet. Instead, they
3   claim that "each Plaintiffs' [sic] injuries resulted from a common defect:
4   Defendants' defective helmets and failure to warn." (*Maxwell* Pls.' Opp. at 10; *see*
5   *also Barnes* Pls.' Opp. at 5 (same quote).) In other words, according to Plaintiffs,
6   the similarity is in their allegation of some vague defect, regardless of myriad
7   differences in the designs of the helmets they wore, the condition of those helmets
8   at the time of their alleged injuries, the distinctions in the warnings and instructions
9   provided with those helmets and dozens of other considerations that are
10  fundamental in a product liability action. Again, it is Plaintiffs' burden to show
11  commonality. *In re Repetitive Stress Injury Litig.*, 11 F.3d at 374. This sort of
12  vague, circular argument fails to make that showing.[5]

13         In *Graziose*, six plaintiffs sued drug manufacturers alleging injuries from
14  medications. 202 F.R.D at 640. In ordering severance, and after noting that the
15  claims did not involve "the same transaction or series of transactions" because they
16  occurred at different times and the retailers and manufacturers were different,[6] the
17  court noted that the "questions of law and fact involved in each claim [are] also
18  different." *Id.* As that court explained:

19

20  _____

21  [5] This vague, circular argument, and Plaintiffs' continued inability to identify any
22  specific defect in the helmets also further supports the Riddell Defendants' motions
    to dismiss.
23  [6] The *Barnes* Plaintiffs argue that the Riddell Defendants "though consisting of
24  seven entities are in some form or another the principals [sic], subsidiaries and/or
    agents of each other," (*Barnes* Pls.' Opp. at 6 n.1.) This wholly unsupported
25  allegation appears nowhere in the parties' Complaints or Amended Complaints.
    Therefore, it is entitled to no consideration. Moreover, Plaintiffs did not oppose
26  the Riddell Defendants' request for the Court to take judicial notice of the facts
27  concerning the actual dates of incorporation of the various "Riddell Defendants,"
    which undermines Plaintiffs' argument that all of these Defendants were even in
28  existence at the relevant times at issue. *See* L.R. 7-12.

The damages involve different people with different sets
of facts. The purchases, the use, the need, the motivation,
the knowledge of the parties, the alleged reliance,
apparently the exact nature of the injuries or damages,
the potential for contributing factors, the relationships
between spouses, are all questions peculiar to each claim.
While there are the potentially common issues of whether
PPA is present, and whether it had an effect on the
person who took the medication, or was the cause of
some adverse reaction, these are not sufficiently common
to warrant joinder. There are distinct and varied
individual health conditions and histories, as well as
different medicines with distinct propensities, which may
have contributed to the effects of the individual
medicines on individual persons.[7]

*Id.* (emphasis added). These same disparities exist here among Plaintiffs.

In short, at most, Plaintiffs have only alleged against the Riddell Defendants
"claims based on the same general theories of law, but this is not sufficient" to
support joinder under Rule 20 or to prevent severance under Rule 21. *Grayson v.
K-Mart Corp.*, 849 F. Supp. 785, 789 (N.D. Ga. 1994) (quoting *Smith v. N. Am.
Rockwell Corp.*, 50 F.R.D. 515, 524 (N.D. Okla. 1970)); *see Anderson v. Phelps*,
655 F. Supp. 560 (M.D. La. 1985) (same); *Martinez v. Safeway Stores, Inc.*, 66
F.R.D. 446, 449 (N.D. Cal. 1975) (same); *see also Graziose*, 202 F.R.D. at 640
("Common issues of law does not mean common issues of an area of law."). For
many of the same reasons why their claims do not arise from the same transaction,
occurrence, or series of transactions or occurrences, they likewise lack common
issues of law or fact, preventing proper joinder under Rule 20(a) on that basis as
well.

---

[7] This last sentence thus disproves Plaintiffs' bald and unsupported assertion that
"the fact that each plaintiff may have suffered different effects from the conduct is
immaterial for the purposes of determining common issues of fact or law." (*See
Maxwell* Pls.' Opp. at 11.)

11

**D.     Plaintiffs fail to show that severance of their separate and distinct claims would prejudice any substantial right.**

As the Ninth Circuit has explained, if, as here, joined plaintiffs fail to meet both of the requirements for proper joinder under Rule 20(a), "the district court may sever the misjoined plaintiffs, as long as no substantial right will be prejudiced by the severance." *Coughlin*, 130 F.3d at 1351 (citing Fed. R. Civ. P. 21; *Sabolsky v. Budzanoski*, 457 F.2d 1245, 1249 (3d Cir. 1972)).  Plaintiffs make no argument whatsoever that severance will prejudice any substantial right of theirs.  Thus, with no substantial right prejudiced from severance, the Court can and should sever these misjoined claims.

**E.     Even if joinder were proper, which it is not, the Court should nonetheless exercise its wide discretion to sever.**

Plaintiffs urge that the misjoinder of these wildly disparate claims is beneficial because "Plaintiffs and their counsel will be able to coordinate discovery and any pretrial motions can be made with a singular motion to avoid duplication." (*Maxwell* Pls.' Opp. at 13.)  Plaintiffs' reasoning is erroneous.  Rather than promoting economy, Plaintiffs' joinder of these separate and distinct claims will only confuse these proceedings, including pretrial proceedings.

For example, while Plaintiffs brush aside the choice-of-law issues, those issues are anything but superfluous.  The vast majority of pretrial motions will not be generic, with no regard for whatever state's laws properly apply to the claims or the issue.  Instead, they will require detailed, case-specific analyses under the appropriate, applicable law, which will likely differ greatly among these 136 different claims.[8]  *See, e.g., Boschert*, 2009 WL 1383183, at *4.  Motions on the

---

[8] The *Maxwell* and *Pear* Plaintiffs mistakenly argue that "the Riddell Defendants fail to cite a single reported case supporting the proposition that a Court is required to perform a choice of law analysis in deciding a Motion to Sever like the one at present." (*Maxwell* Pls.' Opp. at 12.)  The Riddell Defendants are not arguing that the Court must perform a choice-of-law analysis at this time.  However, such

CV 11-8394 R (MANx)

1    same general topic would likely require briefing, addressing dozens of different

2    states' laws on the topic.[9]  As one court noted, "[v]ery little economy, if any at all,

3    would be realized" under such circumstances.  *Id.*

4          Plaintiffs are also mistaken when they argue that severance will "overwhelm

5    . . . the Court with 220 individual cases . . . ," for several reasons.  (*See Maxwell*

6    Pls.' Opp. at 13-14.)

7          *First*, the Riddell Defendants are not asking to sever the wife-Plaintiffs'

8    loss-of-consortium claims from their respective husbands' claims.  Thus, severance

9    would result in 136 separate actions, not 220.

10          *Second*, those Plaintiffs who may have never worn a Riddell helmet or who

11   do not allege an injury while doing so presumably would not file complaints

12   naming any of the Riddell Defendants in their individual actions.

13          *Third*, Plaintiffs are also mistaken in their assumption that all of those re-

14   filed actions would necessarily remain before this Court, since the overwhelming

15   majority of Plaintiffs have no demonstrated, relevant connection whatsoever with

16   California.[10]  (*See, e.g., Maxwell* FAC ¶¶ 226-27 (showing Plaintiff George

17   Jamison lives in Michigan and played only for the Detroit Lions and Kansas City

18   Chiefs)); *see also Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509,

19   1519 (10th Cir. 1991) ("But where certain claims in an action are properly severed

20   under Fed.R.Civ.P. 21, two separate actions result; a district court may transfer one

21   action while retaining jurisdiction over the other.") (citing cases ommited).  Thus,

22   rather than adding a burden to this Court's docket, severance would permit the

23   ─────────────────────────────────

24   analysis will, at some point, be necessary, and given the wide divergence among
     the various states' product liability laws, it is highly likely that different states'

25   laws will properly apply

     [9] In addition, given this Court's twenty-five-page limit on supporting memoranda,

26   Plaintiffs' joinder of these 136 different player-Plaintiffs into one action is wholly

27   impractical from a motions-practice perspective, at least without significantly
     increasing the page limits on all memoranda.

28   [10]

CV 11-8394 R (MANx)

1   Court to transfer and clear off many of these Plaintiffs' claims from its docket.  *See*

2   *Chrysler Credit*, 928 F.2d  at 1519-20 (explaining that transfer of certain claims or

3   parties first requires severance under Rule 21).

4          In fact, given several recently filed lawsuits, Plaintiffs apparently concede

5   that their claims should be adjudicated in other states under different laws.  For

6   example, *Barnes* Plaintiff Carolyn Lens recently joined as a plaintiff in a similar

7   lawsuit against the NFL in Pennsylvania, *Boyd v.  National Football League,* Case

8   No. 12-cv-00092-AB (E.D. Pa.), asserting the same injuries and damages as in

9   *Barnes*.   Likewise, *Pear* Plaintiff Lional Dalton joined as a plaintiff in a similar

10  lawsuit in Florida, *Jones v. National Football League*, Case No. 1:11-cv-24594-

11  JEM (S.D. Fla.), also for the same alleged injuries sued for in *Pear*.   Thus,

12  according to Plaintiffs Lens and Dalton, at least, their claims may be pursued

13  elsewhere.

14         Plaintiffs are also incorrect in asserting that severance is premature.

15  (*Maxwell* Pls.' Opp. at 13; *Barnes* Pls.' Opp. at 8.)   Severance under Rule 21 is

16  distinct from ordering a separate trial under Rule 42.   For sure, these individual

17  actions would have to be tried separately.   But they should also be litigated

18  separately, as opposed to in Plaintiffs' proposed "mass tort" approach.   Indeed,

19  courts have "warned against the urge to join or consolidate litigation, reminding

20  that we must remember our dedication to individual justice, to ensure that the

21  individual plaintiff's and defendant's causes and rights are not lost in the 'shadow

22  of a towering mass litigation.'"   *Graziose*, 202 F.R.D. at 641 (quoting *In re*

23  *Repetitive Stress Injury Litig.*, 11 F.3d at 373).

24  / / /

25  / / /

26  / / /

27

28

14

## II.    CONCLUSION

For the reasons set forth above and in their opening memorandum, the Riddell Defendants respectfully request that, pursuant to FRCP 20 and 21, the Court sever the individual player-Plaintiffs' claims in each of these three actions – *Maxwell*, *Pear*, and *Barnes* – leaving only the first-named Plaintiff in each action, and order that each of the remaining Plaintiffs' claims, if re-filed, be re-filed separately, in an appropriate venue, and captioned with new and separate case numbers, or for such other relief as the Court deems appropriate in its broad discretion to remedy the misjoinder of these disparate claims.

DATED:    January 23, 2012          BOWMAN AND BROOKE LLP


By:    /s/ Paul G. Cereghini
       Paul G. Cereghini
       Vincent Galvin
       Marion V. Mauch
       Attorneys for the Riddell Defendants

CV 11-8394 R (MANx)

## PROOF OF SERVICE
### F.R.C.P. Rule 5(b)(2)

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 879 West 190th Street, Suite 700, Gardena, CA 90248-4227.

I hereby certify that on **January 23, 2012**, I served the document: **RIDDELL DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SEVER PURSUANT TO FRCP 20 AND 21**on all interested parties in this action by placing **a true copy** thereof enclosed in sealed envelopes addressed as follows:

### SEE ATTACHED SERVICE LIST

( )   **BY MAIL (F.R.C.P. Rule 5(b)(2))**

( )   **BY OVERNIGHT DELIVERY (F.R.C.P. Rule 5(b)(2))**

( )   As follows: I am "readily familiar" with the firm's practice of collection and processing documents for mailing. Under the practice, the envelope would be put in a sealed envelope and deposited with the U.S. postal service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage date is more than **1** day after date of deposit for mailing in affidavit.

(X)   **BY CM/ECF:** I hereby certify that I electronically transmitted the attached document(s) to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the parties as shown on the attached Service List.

( )   **BY PERSONAL SERVICE (F.R.C.P. 5(2)):** I delivered such envelope by hand to the addressee.

Executed on **January 23, 2012,** at Gardena, California.

(X)   **(Federal)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Regina Foley

1

CV 11-8394 R (MANx)

# SERVICE/MAILING LIST

## Vernon Maxwell et al. v. National Football League, et al.

United States District Court–Central District of California - Western Division Case No: CV 11-8394 R (MANx)

| | |
|---|---|
| Thomas V. Girardi, Esq. | **Attorneys for Plaintiffs** |
| GIRARDI │ KEESE | |
| 1126 Wilshire Boulevard | Tel:   (213) 977.0211 |
| Los Angeles, CA  90017 | Fax:   (213) 481.1554 |
| | |
| Herman Russomanno, Esq. | **Attorneys for Plaintiffs** |
| Robert Borrello, Esq. | |
| RUSSOMANNO & BORRELLO, P.A. | Tel:   (305) 373.2101 |
| 150 West Flagler Street – PH 2800 | Fax:   (305) 373.2103 |
| Miami, FL  33130 | |
| | |
| Jason E. Luckasevic, Esq. | **Attorneys for Plaintiffs** |
| John T. Tierney, III, Esq. | |
| GOLDBERG, PERSKY & WHITE, P.C. | Tel:   (412) 471.3980 |
| 1030 Fifth Avenue | Fax:   (412) 471.8308 |
| Pittsburgh, PA  15219 | |
| | |
| Ronald L. Olson, Esq. | **Attorneys for Defendants** |
| Glenn d. Pomerantz, Esq. | **NATIONAL FOOTBALL LEAGUE and** |
| John M. Rappaport, Esq. | **NFL PROPERTIES LLC** |
| MUNGER, TOLLES & OLSON LLP | |
| 355 South Grand Avenue, 35th | Tel:   (213) 683.9100 |
| Los Angeles, CA 90071-1560 | Fax:   (213) 683.5100 |
| | |
| Brad S. Karp, Esq. | **Attorneys for Defendants** |
| Theodore V. Wells, Jr., Esq. | **NATIONAL FOOTBALL LEAGUE and** |
| Lynn B. Bayard, Esq. | **NFL PROPERTIES LLC** |
| Beth A. Wilkinson, Esq. | |
| Bruce Birenboim, Esq. | |
| PAUL, WEISS, RIFKIND, WHARTON | Tel:   (212) 373.3000 |
| & GARRISON LLP | Fax:   (212) 757.3990 |
| 1285 Avenue of the Americas | |
| New York, NY 10019-6064 | |

1496338-WE 1