1  BOWMAN AND BROOKE LLP
2  Paul G. Cereghini (SBN: 148016)
   *Paul.Cereghini@bowmanandbrooke.com*
3  Vincent Galvin, Jr. (SBN: 104448)
4  *Vincent.Galvin@bowmanandbrooke.com*
   Marion V. Mauch (SBN: 253672)
5  *Marion.Mauch@bowmanandbrooke.com*
6  879 West 190th Street, Suite 700
   Gardena, CA 90248-4227
7  Tel: (310) 768-3068
8  Fax: (310) 719-1019
9
   Attorneys for Defendants RIDDELL, INC.; ALL AMERICAN
10 SPORTS CORPORATION; RIDDELL SPORTS GROUP, INC.;
11 EASTON-BELL SPORTS, INC.; EASTON-BELL SPORTS, LLC;
   EB SPORTS CORP.; and RBG HOLDINGS CORP.
12

13                **UNITED STATES DISTRICT COURT**

14                **CENTRAL DISTRICT OF CALIFORNIA**

15

16 VERNON MAXWELL, et al.,                CASE NO.: CV 11-8394 R (MANx)

17          Plaintiffs,                   **RIDDELL DEFENDANTS' NOTICE
18                                         OF MOTION AND MOTION TO
                                           DISMISS PLAINTIFFS' AMENDED
19 vs.                                     COMPLAINTS PURSUANT TO
20                                         RULES 8 AND 12(b)(6);
   NATIONAL FOOTBALL LEAGUE,               MEMORANDUM OF POINTS AND
21 et al.,                                 AUTHORITIES**
22          Defendants.
                                           Date:    January 17, 2012
23                                         Time:    10:00 a.m.
24                                         Dept:    Courtroom 8

25                                         Judge: Hon. Manuel L. Real

26                                         Notice of related cases:
27                                         No. CV 11-08395 R (MANx)
                                           No. CV 11-08396 R (MANx)
28

                              1

1  **TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR**

2  **THE CENTRAL DISTRICT OF CALIFORNIA AND ALL PARTIES AND**

3  **THEIR COUNSEL OF RECORD HEREIN:**

4      **PLEASE TAKE NOTICE THAT** on January 17, 2012, at 10:00 a.m., or as

5  soon thereafter as the matter may be heard in Courtroom 8 of the United States

6  District Court, Central District of California, Western Division, located at 312 N.

7  Spring Street, Los Angeles, California 90012, Defendants Riddell, Inc

8  (erroneously styled as "d/b/a Riddell Sports Group, Inc."); All American Sports

9  Corporation; Riddell Sports Group, Inc.; Easton-Bell Sports, Inc.; Easton-Bell

10 Sports, LLC; EB Sports Corp.; and RBG Holdings Corp. (collectively, the

11 "Riddell Defendants")[1] will move the Court for an order pursuant to Rules 8 and

12 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") to dismiss all

13 Plaintiffs' claims in the three related actions styled as *Maxwell v. National*

14 *Football League, et al.*, Case No. CV 11-8394 R (MANx), *Pear v. National*

15 *Football League, et al.*, Case No. CV 11-8395 R (MANx), and *Barnes v. National*

16 *Football League, et al.*, Case No. CV 11-8396 R (MANx), in their entirety.

17     The Riddell Defendants base this Motion on the Memorandum of Points and

18 Authorities set forth below and pleadings, records, and files in this action, and

19 such other and further evidence and argument as may be presented at the time of

20 the hearing.

21     By orders dated October 18, 2011, this Court accepted transfer of related

22 cases *Pear* and *Barnes*. In December 2011, all three sets of Plaintiffs amended

23 their Complaints (*Barnes* for a second time). All three Amended Complaints are

24 virtually identical, with only minimal distinctions between them. Moreover, all

25 three have alleged identical causes of action against the Riddell Defendants (with

26

27 [1] Referring to these Defendants collectively does not imply or concede that they

28 are properly joined or named as Defendants, and the "Riddell Defendants" reserve the right to move to dismiss some or all of them. The collective reference is merely for convenience.

the exception of a wrongful-death claim by *Barnes* Plaintiff Lens against all
Defendants), and all three have alleged that their basic claim against all
Defendants is essentially the same, which is that Defendants failed "to warn
Plaintiffs of traumatic brain injury and long-term risks associated with multiple
concussions and blows to the head sustained as a result of Plaintiffs playing
professional football with the NFL." (*See, e.g.*, *Maxwell* Pls.' Notice Mot. & Mot.
Remand at 1; *id.* at ii (explaining that the *Pear* and *Maxwell* filings were
identical); *see also Barnes* Pls.' Notice & Mot. Remand Removed Action at 1
(same); *see also, e.g.*, *Maxwell* First Am. Compl. ¶ 124.) Therefore, because their
claims are essentially all the same, and for convenience, the Riddell Defendants
combine their motions to dismiss as to all three actions – *Maxwell*, *Pear*, and
*Barnes* – into this one filing in *Maxwell*, with the filings in *Pear* and *Barnes*
incorporating this response by reference.

DATED: December 20, 2011          BOWMAN AND BROOKE LLP


                                  By   /s/ Paul G. Cereghini
                                       Paul G. Cereghini
                                       Vincent Galvin
                                       Marion V. Mauch
                                       Attorneys for Defendants RIDDELL,
                                       INC.; ALL AMERICAN SPORTS
                                       CORPORATION; RIDDELL
                                       SPORTS GROUP, INC.; EASTON-
                                       BELL SPORTS, INC.; EASTON-
                                       BELL SPORTS, LLC; EB SPORTS
                                       CORP.; and RBG HOLDINGS
                                       CORP.

CV 11-8394 R (MANx)
**Exhibit "A"**
**Page 7**

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................ 1

II.  LEGAL ARGUMENT ......................................................................... 2

    A.   The majority of the Plaintiffs' claims against the Riddell
        Defendants are time-barred .......................................................... 2

    B.   *Twombly* and *Iqbal* compel dismissal of threadbare, conclusory,
        and factually unsupported allegations ......................................... 4

    C.   Plaintiffs fail to state any plausible basis to assert claims against
        the alleged parent and affiliated "Riddell Defendants." ............. 6

    D.   Plaintiffs fail to state viable causes of action against any
        of the Riddell Defendants under *Twombly* and *Iqbal* .............. 8

        1.   *Maxwell* and *Pear* Plaintiffs still fail to allege they ever wore
            a Riddell helmet ................................................................. 8

        2.   Plaintiffs fail to identify any specific product defect ..........10

        3.   Plaintiffs' "catch-all" allegations fail ................................. 13

        4.   Plaintiffs fail to plead sufficient facts to support their
            failure-to-warn claim .........................................................14

        5.   Plaintiffs fail to plead causation sufficiently ..................... 16

        6.   Plaintiff Lens fails to plead a viable claim for wrongful
            death (*Barnes* only) .......................................................... 18

        7.   Plaintiffs' loss-of-consortium claims are deficient .............. 19

        8.   Plaintiffs allege no plausible basis for punitive damages ..... 19

    E.   The Labor Relations Management Act preempts Plaintiffs'
        claims against Riddell .................................................................21

    F.   Plaintiffs fail to state a claim for relief for alleged duties
        owed to others. ............................................................................ 25

III. CONCLUSION ................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Allis-Chalmers Corp. v. Lueck*,
    471 U.S. 202 (1985) ............................................................. 22

*Altman v. HO Sports Co.*,
    No. 1:09-cv-1000 AWI SMS, 2009 WL 4163512 (E.D. Cal.
    Nov. 19, 2009) ....................................................... 11, 16, 17

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937 (2009) ............................ *passim*

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................... *passim*

*Croskey v. BMW of N. Am., Inc.*,
    532 F.3d 511 (6th Cir. 2008) .......................................... 12

*Doe I v. Wal-Mart Stores, Inc.*,
    572 F.3d 677 (9th Cir. 2009) ............................................ 7

*Electro Sources, LLC v. Nyko Techs., Inc.*,
    Case No. CV 01-10825 DT (BQRx) 2002 WL 34536682, at *8
    (C.D. Cal. April 15, 2002) ................................................ 7

*Greenman v. Yuba Power Prods.*,
    59 Cal. 2d 57 (1963) ......................................................... 9

*Kelley v. Corr. Corp. of Am.*,
    750 F. Supp. 2d 1132 (E.D. Cal. 2010) ......................... 19

*Malone v. Marriott Int'l, Inc.*,
    No. 09-CV-01980, 2010 WL 4537828 (C.D. Cal. Oct. 29, 2010) .... 19

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) ............................................ 5

*Peck v. Bridgeport Machs., Inc.*,
    237 F.3d 614 (6th Cir. 2001) .......................................... 15

*Plenger v. Alza Corp.*,
    11 Cal. App. 4th 349 (Ct. App. 1992) ............................ 15

*Rhynes v. Stryker Corp.*,
    No. 10-5619 SC, 2011 WL 2149095 (N.D. Cal. May 31, 2011) .... 21

*Sonora Diamond Corp. v. Superior Court*,
    83 Cal. App. 4th 523 (2000) ............................................. 7

*Soule v. Gen. Motors Corp.*,
    8 Cal. 4th 548 (1994) ......................................................... 9

*Sparks v. Owens-Illinois, Inc.,*
   32 Cal. App. 4th 461 (1995) ............................................................ 9

*Starr v. Baca,*
   633 F.3d 1191 (9th Cir. 2011) ........................................................ 5

*Stringer v. Nat'l Football League,*
   474 F. Supp. 2d 894 (S.D. Ohio 2007) .......................... 22, 23, 24

*Timmons v. Linvatec Corp.,*
   263 F.R.D. 582 (C.D. Cal. 2010) ................................................ 13

*Whittlestone, Inc. v. Handi-Craft Co.,*
   618 F.3d 970 (9th Cir. 2010) ........................................................ 25

**Statutes**

Cal. Civ. Code § 3294 ............................................................................ 21

Cal. Civ. Proc. Code § 377.60 ............................................................... 18

Mich. Comp. Laws § 600.2946(2) .......................................................... 11

**Rules**

Fed. R. Civ. P. 8 ................................................................................ 4, 13

Fed. R. Civ. P. 8(a)(2) ............................................................................. 4

Fed. R. Civ. P. 11 ................................................................................. 13

Fed. R. Civ. P. 11(b) ............................................................................. 13

Fed. R. Civ. P. 11(b)(3) ......................................................................... 13

Fed. R. Civ. P. 12(b)(6) ............................................................. 4, 21, 25

Fed. R. Civ. P. 12(f) ............................................................................. 25

**Other Authorities**

*Madden & Owen on Products Liability* § 16:1 (3rd ed. 2011) ............ 2, 3

1 James Wm. Moore, et al., *Moore's Federal Practice,*
   § 9:07[1], [2], (3d ed. 2011) ......................................................... 4

22 Am. Jur. *Damages* § 559 (2003) ...................................................... 20

41 Am. Jur. 2d *Husband and Wife* §§ 219, 215 (2005) .......................... 19

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Through these three related actions – *Maxwell*, *Pear*, and *Barnes* – 220 combined Plaintiffs (136 player-Plaintiffs (one deceased) and 84 spouse-Plaintiffs)[2] have sued the National Football League, NFL Properties LLC, and the "Riddell Defendants" for claims allegedly arising out of the player-Plaintiffs careers in the NFL which collectively spanned a period from 1953 to 2009. (*See generally*, *Maxwell* First Am. Compl. ("*Maxwell* FAC"); *Pear* First Am. Compl. ("*Pear* FAC"); *Barnes* Second Am. Compl. ("*Barnes* SAC").)   In general, Plaintiffs all claim the Riddell Defendants failed to warn the player-Plaintiffs of the risks of concussive brain injury while playing football in the NFL – despite the fact that they allege the basis for knowledge of these alleged risks was all publicly available and "easily accessible" for decades. (*Maxwell* FAC ¶¶ 124, 127.)

In addition, Plaintiffs allege four identical causes of action for strict liability for design defect and manufacturing defect, failure to warn, and negligence, arising from some of those Defendants' involvement in the design, manufacture, sales, or distribution of football helmets. (*E.g.*, *Maxwell* FAC ¶¶ 608-18, 624-40.) Plaintiffs also allege loss of consortium on behalf of the spouse-Plaintiffs, and, in *Barnes*, one claim of wrongful death. (*Id.* ¶¶ 641-43; *Barnes* SAC ¶¶ 297-99.)

Originally, none of the 136 player-Plaintiffs alleged they ever actually wore a helmet designed, manufactured, sold, or distributed by the Riddell Defendants. Now, even in their amended filings, the *Maxwell* and *Pear* Plaintiffs still fail to so allege, instead averring only that "[u]pon information and belief, Plaintiffs wore Riddell helmets *at times* while playing and/or practicing during their NFL

---

[2] The Maxwell action includes seventy-three (73) player-Plaintiffs and forty-eight (48) spouse-Plaintiffs, the *Pear* action includes forty-seven (47) spouse-Plaintiffs, and the *Barnes* action includes sixteen (16) player-Plaintiffs (including deceased player Lens) and four (4) spouse-Plaintiffs.

1

1   careers." (*Maxwell* FAC ¶ 99 (emphasis added).) They never allege they were
2   wearing a Riddell helmet when they suffered their alleged concussions.[3]

3       Moreover, all Plaintiffs fail to allege when, where, or how they were
4   allegedly injured, what kind of helmet(s) they were wearing, what specifically was
5   wrong with the helmet(s), or how that alleged problem supposedly caused their
6   injuries. In addition, using *Maxwell* as an example, after introducing the NFL and
7   the Riddell Defendants (*Id.* ¶¶ 87-100), Plaintiffs mention "the Riddell
8   Defendants" specifically only three times in the next seventy-two (72) paragraphs
9   outlining the alleged underlying facts. (*Id.* ¶¶ 101-72.)

10       In short, Plaintiffs present nothing against the Riddell Defendants but
11   boilerplate, conclusory allegations that the Supreme Court, the Ninth Circuit, and
12   this Court have repeatedly rejected as being insufficient to state a plausible, viable
13   claim for relief on any of their theories, for multiple reasons. Moreover, their
14   claims are almost all, if not all, woefully stale and barred by any properly
15   applicable statute of limitations. Finally, their claims are almost all, if not all,
16   barred as preempted by § 301 of the Labor Relations Management Act. For all of
17   these reasons, the Riddell Defendants ask this Court to grant their motion and to
18   dismiss these actions with prejudice as to all Plaintiffs in their entirety.

19  **II.**   **LEGAL ARGUMENT**

20       **A.**   **The majority of the Plaintiffs' claims against the Riddell**
21           **Defendants are time-barred.**

22       Statutes of limitation "impose a time limitation within which a claimant
23   must bring a cause of action following an injury to person or property. As a
24   general proposition, a tort claim is considered to have 'accrued' at the time of the
25   injury or loss." *Madden & Owen on Products Liability* § 16:1 (3rd ed. 2011). It is
26   not yet clear which of thirty-three (33) different jurisdictions' limitations periods
27   would potentially apply to each of the 220 total Plaintiffs' product liability claims.

28   ---

[3] As for the *Barnes* Plaintiffs, see *infra* p. 8 n.12.

1    But overall, while those periods may range "from as short as one year and to as

2    long as six," the prevailing approach "has been to require the complainant to bring

3    the claim within two or three years of the accrual of the cause of action." *Id.*

4        The player-Plaintiffs' claims all arise from their allegations that they

5    suffered "multiple concussions" for which they received medical treatment while

6    playing in the NFL. (*See, e.g., Maxwell* FAC ¶ 178.) Thus, their claims accrued,

7    at the latest, within the periods of their playing careers. Among the 135 total

8    player-Plaintiffs (not including deceased *Barnes* player Lens), viewing the facts as

9    liberally as appropriate in their favor,[4] only four players ended their playing

10    careers within six years of the filing of these actions in the summer of 2011: Fred

11    McCrary and Lional Dalton in *Pear*, whose last years in the NFL were 2007 and

12    2006, respectively; Michael Cloud in *Barnes*, whose last NFL year was 2005; and

13    Todd Johnson in *Maxwell*, whose last NFL year was 2009.[5] (*Maxwell* FAC ¶¶

14    452-56; *Pear* FAC ¶¶ 284-88, 369-73; *Barnes* SAC ¶¶ 164-68.) Thus, without

15    further inquiry, the Court can and should dismiss with prejudice outright all but

16    those four Plaintiffs' claims as being facially time-barred.[6]

17        As for remaining Plaintiff Michael Cloud, his playing career ended in 2005.

18    (*Barnes* SAC ¶ 165.) Under any likely potentially applicable statute of limitations

19    (California, Delaware, Illinois, Massachusetts, Missouri, New Jersey, New York,

---

20  [4] And without conceding the timeliness of any of their claims.

21  [5] *Maxwell* Plaintiffs Brett Romberg and his wife voluntarily dismissed their claims

22  after Mr. Romberg re-signed with the Atlanta Falcons for the 2011 season.

23  [6] *Barnes* Plaintiff Lens's wrongful-death claim for the 2009 death of her husband
   Greg Lens may, depending on what state's law were to apply to that claim, also be

24  barred as untimely, given that Plaintiff Lens alleges her husband was injured at
   some time between 1970 and 1972 and all of the information concerning the

25  alleged risks of which he was not warned was publicly available to him for

26  decades. (*Barnes* SAC ¶¶ 3, 134-38, 300-06.) However, as with Plaintiffs
   McCrary, Dalton, and Johnson, *infra*, Plaintiff Lens's failure to properly plead the

27  date and place of player Lens's alleged concussion(s) warrants dismissing her

28  action, especially in light of the other deficiencies discussed *infra*.

or Texas), his claims are facially time-barred, as none of those jurisdictions provides a limitations period longer than five years for his claims, and *Barnes* was not filed until 2011.[7]

As for the other remaining three Plaintiffs – McCrary (*Pear*), Dalton (*Pear*), and Johnson (*Maxwell*) – their claims are very likely time-barred under any potentially applicable statute of limitations, but Plaintiffs have attempted to avoid such scrutiny by improperly omitting such basic and necessary information as when and where they were allegedly injured. (*See Pear* FAC ¶¶ 28, 45, 284-88, 369-73; *Maxwell* FAC ¶¶ 452-56.)

Allegations of time and place are necessary for pleading personal injury claims. 1 James Wm. Moore, et al., *Moore's Federal Practice*, § 9:07[1] (3d ed. 2011) (explaining that for personal injury claims, "allegations of time and place are more likely to be considered important and therefore necessary for pleadings") (citing cases); *see also id.* § 9.07[2] (explaining that a motion to dismiss is appropriate to attack a personal injury claims that fail to allege the time and place of the alleged injury). Lacking the necessary allegations of time and place of the alleged injuries, these remaining three Plaintiffs' claims are deficient. Therefore, the Court should dismiss them as well.[8]

**B.** ***Twombly* and *Iqbal* compel dismissal of threadbare, conclusory, and factually unsupported allegations.**

A proper complaint requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a

---

[7] (*See also* NFL Defs.' Notice of Mot. & Mot. to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted (FRCP 12(b)(6)) at 25 (discussing inapplicability of discovery rule to Plaintiffs' claims).)

[8] The Riddell Defendants acknowledge that the dismissal on this ground may, in general, be without prejudice and with leave to amend, if possible. However, the other deficiencies in Plaintiffs' claims render leave to amend futile, and Plaintiffs have already amended their complaints in response to prior motions to dismiss.

complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1950. A complaint must be dismissed if the plaintiff cannot "nudge[] [its] claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570.

In addition, while the Court "must take all of the factual allegations in the complaint as true" for purposes of a motion to dismiss, this does not extend to "a legal conclusion couched as a factual allegation." *Iqbal,* 129 S.Ct. at 1950-51 (quoting *Twombly,* 550 U.S. at 555). Thus, "for a complaint to survive a motion to dismiss, the nonconclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009).

One of the central purposes of *Twombly* and *Iqbal* is to shield parties and courts from costly or disruptive discovery proceedings where the plaintiff cannot allege a "plausible" claim. *Twombly,* 550 U.S. at 558 ("So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court."); *see also Starr v. Baca,* 633 F.3d 1191, 1204 (9th Cir. 2011) ("Second, the allegations must be sufficiently plausible that it is not unfair to require the opposing party to be

subjected to the expense of discovery."). Thus, early dismissal of factually unsupported and implausible claims is all the more appropriate when dealing with larger actions in which the costs will likely be higher, such as these.

### C. Plaintiffs fail to state any plausible basis to assert claims against the alleged parent and affiliated "Riddell Defendants."

Plaintiffs allege that only Riddell, Inc. and All American Sports Corporation were actually "engaged in the business of designing, manufacturing, selling and distributing . . . helmets, to the NFL . . . ."[9] (*See, e.g., Maxwell* FAC ¶¶ 76-77.) They fail to allege any involvement whatsoever in the design, manufacture, sales, or distribution of helmets used in the NFL by any of the other named "Riddell Defendants" – Riddell Sports Group, Inc., Easton-Bell Sports, Inc., Easton-Bell Sports, LLC, EB Sports Corp., and RBG Holdings Corp. (*Id.* ¶¶ 78-82.)

Plaintiffs conclusorily allege that Riddell, Inc. does business as "Riddell Sports Group, Inc.," that Easton-Bell Sports, Inc. "is a parent of Riddell Sports Group, Inc.," and that, in turn, Easton-Bell Sports, LLC "is a parent of Easton-Bell Sports, Inc.," (*see, e.g., Maxwell* FAC ¶¶ 76, 79, 80). However, they allege no facts at all that Riddell, Inc. truly does business as "Riddell Sports Group, Inc.," which is a wholly separate corporate entity, according to Plaintiffs' own allegations. (*See id.* ¶ 78.) They likewise fail to explain how one corporation can "d/b/a" another corporation.

The Complaints are also deficient in terms of their assertion of claims against all of the "Riddell Defendants" in light of the fact that, as public records show, the majority of those Defendants did not even exist during the player-Plaintiffs' careers. (Riddell Defs.' Mot. to Sever at 18 n.14 (explaining the corporate existence of the various Riddell Defendants and how the Court can

---

[9] This allegation is factually incorrect.

1  properly take judicial notice of the dates of incorporation of various Riddell
2  Defendants.).)[10]

3  In addition, the Amended Complaints contain no facts whatsoever of any
4  involvement by any of these parent/affiliated entities in the activities alleged,
5  beyond the mere existence of a parent-subsidiary relationship. That is not enough
6  to create any plausible basis for potential liability on the part of any of these
7  entities. *See, e.g.*, *Electro Sources, LLC v. Nyko Techs., Inc.*, Case No. CV 01-
8  10825 DT (BQRx) 2002 WL 34536682, at *8 (C.D. Cal. April 15, 2002)
9  ("Ordinarily, a corporation is regarded as a separate legal entity, separate and
10 distinct from its stockholders, officers and directors, with separate and distinct
11 liabilities and obligations."); *see also Sonora Diamond Corp. v. Superior Court*,
12 83 Cal. App. 4th 523, 536-39 (2000) (rejecting application of "alter ego doctrine"
13 to two separate and affiliated, yet distinct and separate corporate entities).[11]

14 Plaintiffs have alleged no facts to support a plausible claim for parent- or
15 affiliated-company liability against Riddell Sports Group, Inc., Easton-Bell Sports,
16 Inc., or Easton-Bell Sports, LLC. They likewise fail to plead any facts whatsoever
17 as to *any* involvement by EB Sports Corp. and RBG Holdings Corp. or any basis
18 to pursue claims against them. (*See, e.g.*, *Maxwell* FAC ¶¶ 81-82.) Therefore, the
19 Court should dismiss Plaintiffs' claims against all of those entities. *See Doe I v.*
20 *Wal-Mart Stores, Inc.*, 572 F.3d 677, 680 (9th Cir. 2009) (affirming dismissal of
21 corporate defendant based on insufficient and conclusory allegations of
22 involvement with operations of second corporate defendant).

23
24
25
26
---
27 [10] Plaintiffs did not contest the propriety of the Court taking judicial notice of these facts in their oppositions to the original motions to sever.
28 [11] Again, the reference to California law here is merely for example.

7

**D.** **Plaintiffs fail to state viable causes of action against any of the Riddell Defendants under *Twombly* and *Iqbal*.**

Neither Plaintiffs' purported background sections nor their causes of action themselves provide any supporting facts for their legal conclusions of liability on the part of the Riddell Defendants. Rather, they contain only boilerplate and conclusory recitations of the base elements of the various causes of action and requested relief, without any actual facts to make those claims sufficiently plausible. (*See generally, e.g., id.* ¶¶ 101-643.)

The Amended Complaints' shortcomings are due, in no small part, to the fact that they have combined across these three largely identical amended complaints 220 Plaintiffs' claims, with no regard for either proper joinder or providing any actual plaintiff-specific facts as to any one particular plaintiff's claims.[12] While a detailed choice-of-law analysis may be appropriate at some point to determine which state's laws properly apply to each individual Plaintiff's claims, that analysis is unnecessary to discern that their boilerplate allegations against the Riddell Defendants are wholly insufficient under any state's laws.

**1.** **The *Maxwell* and *Pear* Plaintiffs still fail to allege they ever wore a Riddell helmet.**

While all Plaintiffs generally allege some generic and undisclosed defect in helmets manufactured by certain Riddell Defendants over the span of fifty-plus years, the *Maxwell* and *Pear* Plaintiff have yet to allege that any of them actually ever wore a Riddell helmet when they allegedly sustained their concussions.[13] Under any state's laws, such a blatant omission is fatal.

---

[12] This misjoinder is the basis for the Riddell Defendants' motions to sever.

[13] The *Barnes* Plaintiffs offer the conclusory and boilerplate assertion that "NFL players, including Plaintiffs, wore helmets designed, manufactured, sold, and distributed by the Riddell Defendants when they sustained concussive brain injuries during play in their NFL careers." (*Barnes* SAC ¶ 266.) There are no player-specific allegations in *Barnes*, however, that each of those individual player-Plaintiffs sustained an injury as a result of an alleged helmet defect, and

For example, in California, as in every jurisdiction, a product-liability plaintiff must allege and prove that he or she was injured from use of the defendant's product or due to the defendant's product. *See, e.g., Soule v. Gen. Motors Corp.*, 8 Cal. 4th 548, 560 (1994); *Sparks v. Owens-Illinois, Inc.*, 32 Cal. App. 4th 461, 472 (1995); *Greenman v. Yuba Power Prods.*, 59 Cal. 2d 57 (1963). The Riddell Defendants had no duties and have no liability to any player unless, first, that player actually wore a Riddell helmet and suffered some alleged injury resulting from that actual use, which the *Maxwell* and *Pear* Plaintiffs never allege. Their failure to allege even this most basic element renders their claims patently deficient and implausible from the start.

The *Maxwell* and *Pear* Plaintiffs make a vague assertion that Riddell, Inc. and All American Sports Corporation have supplied "the official helmet of the NFL" since 1989. (*See, e.g., Maxwell* FAC ¶¶ 76-77.) No proper inference can or should arise that any player-Plaintiffs were wearing a Riddell helmet when they suffered their alleged concussions based on this bare assertion, for several reasons.

First, this assertion obviously has no relevance at all to any players who played before 1989. Second, it is undisputed – and this Court can and should take judicial notice of the fact that – even after 1989, Riddell was not (and is not to this day) the exclusive helmet of the NFL. In fact, these same Plaintiffs' counsel, in an action filed in Los Angeles Superior Court and recently dismissed on the eve of removal to this Court, alleged that Riddell is <u>not</u> the exclusive helmet of the NFL. *Hardman v. Nat'l Football League*, Case No. BC471229, ¶ 100 ("The NFL has estimated that 75% of the helmets used in the League are manufactured by Riddell; Riddell estimated that the figure was 77%."). Thus, the *Maxwell* and *Pear* Plaintiffs are not entitled to any justifiable inference that, simply because they played in the NFL, they must have been wearing a Riddell helmet when

these Plaintiffs still fail to allege what helmets they wore, when they were injured, or any other facts to support this conclusory allegation.

1  they suffered their alleged injuries, and their failure to allege this basic, necessary

2  element of their claims warrants dismissal.

3      **2.    Plaintiffs fail to identify any specific product defect.**

4      All Plaintiffs' Amended Complaints still fail to identify what specific

5  helmets they are referring to over the course of the fifty-plus-year period they

6  cover, despite the fact that the player-Plaintiffs obviously wore very different

7  helmets over that period. To the contrary, Plaintiffs instead lump all of the

8  helmets together, referring to them generically and often singularly, as the "subject

9  helmet," "their helmets," "the helmet model," and "the product," implying they are

10 all allegedly defective for the same undisclosed reason. (*See, e.g.*, *Maxwell* FAC

11 ¶¶ 609(a)-(b) & (d), 611, 612.) This boilerplate, generic, and factually

12 unsupported accusation that every single Riddell helmet potentially worn by all

13 136 players from 1953 to 2009 was identically defective is facially implausible.

14 This is especially true in light of the *Maxwell* and *Pear* Plaintiffs' amended

15 allegations detailing the significant advancements in Riddell helmets over the

16 years and Riddell's role as an innovator and leader in helmet design and safety.

17 (*Maxwell* FAC ¶¶ 95-98(a)-(m).)

18     In addition to failing to identify with appropriate facts any allegedly

19 defective helmet models or designs, Plaintiffs also fail to provide any facts to

20 support the existence of a specific defect in each specific helmet model over this

21 fifty-six-year period. Such a failure is unacceptable under any jurisdiction's

22 product-liability laws.

23     For example, under California law,[14] a design-defect requires a showing

24 under either (1) the consumer expectations test, which asks whether the product

25 performed as safely as an ordinary consumer would expect when used in an

26 intended and reasonably foreseeable manner, or (2) the risk/benefit test, which

27

28 [14] Again, the Riddell Defendants do not concede that California law applies to all or any of Plaintiffs' claims, but merely offer this discussion as an example.

1    asks whether the benefits of the challenged design outweigh the risk of danger

2    inherent in the design. *Altman v. HO Sports Co.*, No. 1:09-cv-1000 AWI SMS,

3    2009 WL 4163512, at *6 (E.D. Cal. Nov. 19, 2009). Under the "consumer

4    expectations test," a plaintiff should describe how the product failed to meet the

5    minimum safety expectations of an ordinary consumer" of that product. *Id.*

6    Under the risk-benefit test, a plaintiff should allege in the complaint that the

7    risks of the design outweigh the benefits, and then "explain how the particular

8    design of the [product] caused [plaintiff] harm." *Id.* at *8. A bare allegation that

9    the product "suffered from a 'design defect' is an insufficient legal conclusion"

10   under *Twombly* and *Iqbal*. *Id.*

11       Here, Plaintiffs provide insufficient facts as to how any particular helmets

12   were allegedly defectively designed. Instead, they make only bald assertions that

13   "[a]t the time the helmets were designed . . . , the helmets were defective in design

14   . . . ." (*See, e.g., Maxwell* FAC ¶ 609.) Plaintiffs also generally claim that the

15   alleged helmets "did not provide adequate protection" because they had a "shock

16   attenuating system which was not safely configured . . . ." (*Id.* ¶ 609(a).) Failing

17   to "safely configure" a product or to provide "adequate protection" is not a defect

18   – it is, at most, the *result* of some unspecified defect. A properly pleaded

19   complaint should allege what the actual defective condition is as to each helmet

20   worn by each player, rather than the vague, boilerplate, and conclusory manner in

21   which Plaintiffs have pleaded.

22       As further example of the facial deficiencies in Plaintiffs' aggregate and

23   conclusory pleadings, many states, such as Michigan,[15] require a plaintiff to plead

24   and prove an alternative feasible design. *See* Mich. Comp. Laws § 600.2946(2)

---

[15] It is possible that several Plaintiffs' claims might be properly decided under Michigan products-liability law, given that several players played for the Detroit Lions, and several more reside in Michigan. (*See, e.g., Maxwell* FAC ¶¶ 11, 42, 177, 222, 227, 243, 248, 258, 278, 288, 363, 368; *Pear* FAC ¶¶ 7, 191, 196, 226, 375, 380; *Barnes* SAC ¶¶ 145, 185.)

11

(requiring a plaintiff, in all product liability actions, to show a "feasible alternative production practice"); *see also Croskey v. BMW of N. Am., Inc.*, 532 F.3d 511, 516 (6th Cir. 2008) (recognizing that this statutory provision constitutes an element of a design defect claim). Yet, Plaintiffs wholly fail to allege properly any alternative feasible design, instead alleging only conclusorily that "[a] safer alternative design was economically and technologically feasible at the time the product left the control of the Riddell Defendants." (*See, e.g., Maxwell* FAC ¶¶ 612, 617; *see also id.* ¶ 627 (alleging "that other model helmets provided greater shock attenuation from blows to the head area," without alleging what those models were or any facts to make such a conclusory assertion plausible).)[16] The Complaint is devoid of any facts to reasonably support that such an allegedly safer design existed at every point in time over a span of fifty-plus years, that it was truly safer, and that it was technologically and economically feasible. In the absence of any such actual facts, it is wholly implausible that, at every step over this half-century period, there was a safer alternative design to the specific helmet worn by each player when he suffered his concussions, as Plaintiffs conclusorily assert, especially in light of the *Maxwell* and *Pear* Plaintiffs' factually-detailed recitation of Riddell's impressive design history. (*See Maxwell* FAC ¶¶ 95-98(a)-(m).)

Plaintiffs' manufacturing defect claims are similarly vague and conclusory. They generically allege that "[t]he Riddell Defendants' failure to design the helmets to design and manufacturing specifications" caused them to be defective, but they fail to allege what the "design and manufacturing specifications" were, how the helmets deviated from those specifications, or how the helmets deviated from other seemingly identical models. (*See, e.g., Maxwell* FAC ¶¶ 615-18.) Instead, they simply regurgitate their deficient

---

[16] The *Barnes* Plaintiffs offer little more in content and nothing more in factual substance on any alleged alternative design. (*See, e.g., Barnes* SAC ¶ 270.)

12

1    "design defect" allegations substituting the words "manufacture" and

2    "manufacturing" for "design" and "designing." (See *id.*) Such boilerplate,

3    conclusory pleading fails to pass muster under *Twombly* and *Iqbal.*

4          **3.    Plaintiffs' "catch-all" allegations fail.**

5        Plaintiffs exemplify the deficiencies of their allegations by their repeated

6    attempts to rely on vague, catch-all assertions of "[o]ther acts of negligence that

7    *may be* discovered during the course of this matter; . . . ." (*See, e.g., Maxwell* FAC

8    ¶ 609(c), 615(d) (emphasis added).) These improper catch-all runs violate the

9    Federal Rules, *Twombly,* and *Iqbal.*

10       Rule 8 "does not unlock the doors of discovery for a plaintiff armed with

11    nothing more than conclusions." *Iqbal,* 129 S.Ct. at 1951. As this Court has

12    explained, "a plaintiff who fails to meet the pleading requirements of Rule 8 is

13    not entitled to conduct discovery with the hope that it might then permit her to

14    state a claim." *Timmons v. Linvatec Corp.,* 263 F.R.D. 582, 585 (C.D. Cal.

15    2010) (Real, J.). As *Twombly* and *Iqbal* explain, the problem is not only that

16    such boilerplate complaints violate the letter of the rules, but that such

17    violations impose significant burdens on parties and courts, including costly

18    litigation and discovery expenses, before it has been shown that the claim is or

19    ever can be properly factually supported. *See, e.g., Iqbal,* 556 U.S. at 129 S.Ct. at

20    1953 (noting the practical consequences, including the "burdens of discovery,"

21    caused by a lack of sufficient factual allegations).

22       Also, Rule 11 requires a plaintiff to conduct an appropriate pre-filing

23    investigation. *See* Fed. R. Civ. P. 11. As this Court has noted, "allowing

24    plaintiffs to file first and investigate later . . . would be contrary to Rule 11(b),

25    which mandates an 'inquiry reasonable under the circumstances' into the

26    evidentiary support for all factual contentions prior to filing a pleading."

27    *Timmons,* 263 F.R.D. at 585 (quoting Fed. R. Civ. P. 11(b)(3)). Plaintiffs have

28    had years – in some cases, decades – to conduct proper pre-suit investigation.

1   They should be able to plead specific alleged defects, as opposed to vague
2   generalities and "catch-alls." The fact that they cannot, and instead rely on
3   speculative and improper pleading methods, supports dismissing their claims.

4       **4.   Plaintiffs fail to plead sufficient facts to support their**
5            **failure-to-warn claims.**

6       As Plaintiffs' themselves characterize them, their claims against the
7   Riddell Defendants are that they failed "to warn Plaintiffs of traumatic brain
8   injury and long-term risks associated with multiple concussions and blows to
9   the head sustained as a result of Plaintiffs playing professional football with
10  the NFL." (*See, e.g., Maxwell* Mot. Remand at 1; *see also Maxwell* FAC
11  ¶ 124.) Moreover, their claims against the Riddell Defendants all allege
12  generally (and vaguely) a purported failure to warn. (*See, e.g., Maxwell* FAC
13  ¶¶ 609(d), 615(e), 624-33, 638.) And as to each player-Plaintiff, Plaintiffs
14  allege they were "not warned by [the Riddell Defendants] of the risk of long-
15  term injury due to football-related concussions or that league-mandated
16  equipment did not protect him from such injury." (*See, e.g., id.* ¶ 179.) These
17  warnings-based claims against the Riddell Defendants are also entirely
18  factually unsupported and fail under any applicable state's laws.

19      Primarily, Plaintiffs' warnings claims fail because they allege no basis
20  for any such supposed duty with respect to the Riddell Defendants. Indeed, the
21  Amended Complaints evince the reality that Plaintiffs have no such allegations
22  to offer. The lone references to the Riddell Defendants throughout the
23  purported facts sections are as afterthoughts, in conclusory fashion, and with
24  no supporting facts. (*See, e.g., id.* ¶¶ 122, 171, 172.)

25      Plaintiffs' warnings claims also fail because they allege no facts to
26  support that the Riddell Defendants possessed knowledge and information
27  about which the players were unaware or to which they otherwise had no
28  access except from the Riddell Defendants. While a detailed choice-of-law

analysis may be appropriate at some point, it is unlikely Plaintiffs could point to any jurisdiction's laws that require a defendant to warn a plaintiff of information that was equally known by or available to the plaintiff.

For example, under Michigan law, a failure-to-warn claim requires a plaintiff to show that a manufacturer or seller "(1) had actual or constructive knowledge of the alleged danger, (2) had no reason to believe that consumers would know of this danger, and (3) failed to exercise reasonable care to inform consumers of the danger." *Peck v. Bridgeport Machs., Inc.*, 237 F.3d 614, 618-19 (6th Cir. 2001). Likewise, the California Court of Appeals has explained that it is "aware of no authority which requires a manufacturer to warn of a risk which is readily known and apparent to the consumer." *Plenger v. Alza Corp.*, 11 Cal. App. 4th 349, 362 (Ct. App. 1992).

Plaintiffs allege that the risk of concussive injury from playing football, even while helmeted, was or should have been widely known through publicly available information for decades. (*See, e.g.*, *Maxwell* FAC ¶¶ 123, 127(a)-(jj) (cataloging alleged publicly available literature on concussive brain injury dating back to 1928), 549 (same), & 565 (same); *see also, e.g.*, *Barnes* FAC ¶ 64 (generally same).) Plaintiffs allege nothing the Riddell Defendants did to suppress this publicly available information, nor have they alleged any basis in fact to support that the Riddell Defendants possessed superior knowledge over Plaintiffs (or their physicians) or had any reason to believe that the players did not have – or have access to – any of this alleged information, such that the Riddell Defendants could reasonably be argued to have had a duty to warn Plaintiffs. *See, e.g.*, *Peck*, 237 F.3d at 618-19 (noting as an element of a failure-to-warn claim the need to prove that the defendant had no reason to believe that consumers would know of the alleged danger). Thus, the Amended Complaints fail to state of what the Riddell Defendants had a duty to

15

1  warn them, or how that alleged failure to warn Plaintiffs of something they
2  already knew or should have known was the proximate cause of their injuries.

3      Additionally, Plaintiffs' warnings-based claims allege that the Riddell
4  Defendants breached a duty to "provide necessary and adequate safety and
5  instructional materials and warnings of the risk and means available to reduce
6  and/or minimize the risk of concussive brain injuries while playing football
7  using their helmets." (*Maxwell* FAC ¶¶ 626, 638.) Unless Plaintiffs are
8  alleging there is some way to wear the helmet that would reduce the alleged
9  risks (which they certainly have not pleaded with any facts), they can only be
10 referring to some way to play the game of football while wearing a helmet that
11 can reduce the alleged risks. Yet, Plaintiffs have alleged that it is the NFL's
12 "duty to protect the health and safety of its players" by promulgating rules of
13 play. (*See, e.g., id.* ¶ 128(a)-(l); *see also id.* ¶¶ 543-547.)[17] Thus, not only have
14 Plaintiffs failed to allege any facts to support the Riddell Defendants owing
15 such a duty to warn and promulgate rules of play, their own allegations directly
16 contradict the existence of such a purported duty.

17         **5.   Plaintiffs fail to plead causation sufficiently.**

18     *Twombly* and *Iqbal* require a product-liability plaintiff to plead sufficiently
19 not only their defect allegations, but their causation allegations as well. *Altman v.*
20 *Ho Sports Co.*, No. 1:09-cv-1000 AWI SMS, 2009 WL 4163512 (E.D. Cal. Nov.
21 23, 2009). Here, Plaintiffs have not only failed to plead sufficient facts to render
22 their conclusory assertions of design defect, manufacturing defect, and failure to
23 warn plausible, they have also wholly failed to plead causation sufficiently and in
24 anything but the most boilerplate of terms.

25

26

_____

27 [17] In addition, these allegations bring preemption squarely into play by asserting as
28 a basis for liability issues that are inextricably intertwined with or substantially
dependent on the NFL's Collective Bargaining Agreements. *See infra* Part F.

16

In *Altman*, the Eastern District of California applied *Twombly* and *Iqbal* in dismissing product-liability claims against a wakeboard manufacturer. The plaintiff in *Altman* alleged that a pair of ankle bindings on a wakeboard were defectively designed and caused the plaintiff to suffer ankle and foot injuries. *See id.* at *1. Applying *Twombly* and *Iqbal,* the court dismissed the product-liability claims, in part, because the complaint failed to provide sufficient factual allegations "explain[ing] how the particular design of the [bindings] caused [plaintiff] harm." *Id.* at *8 (emphasis added). Specifically, the court explained that the plaintiff should have alleged "the particular aspect of the design that is at issue (an improper joining angle) and how that design caused [plaintiff] harm (did not allow for safe separation during the crash)." *Id.* As a result, the court concluded that the complaint's bare assertions that the alleged defects were "substantial causes in causing [plaintiff's] injuries [were] a legal conclusion that does not allege a plausible cause of action." *Id.*

Here, Plaintiffs make precisely the same sort of conclusory and boilerplate causation allegations. They assert, with no explanation, that the design and manufacturing defects were "a proximate and producing cause of the personal injuries suffered by the Plaintiffs . . . ," (*see, e.g., Maxwell* FAC ¶¶ 610, 616), that the "Riddell Defendants' failure to warn caused the Plaintiffs' personal injuries," (*id.* ¶ 632), and that "[a]s a result of the Riddell Defendants' breach of duty, Plaintiffs have sustained permanent injury," (*id.* ¶ 639). But as outlined above, they never identify any specific defect with the subject helmets or, as to the *Maxwell* and *Pear* Plaintiffs, allege that any of the player-Plaintiffs ever even wore a Riddell helmet at the time they allegedly sustained a concussion.

Moreover, Plaintiffs do not allege any specific causation between the undisclosed defect in each particular helmet and each Plaintiff's alleged injury. In other words, Plaintiffs fail to set out "how the particular design" was a substantial factor in causing the alleged harm. *Altman,* 2009 WL 4163512, at *8.

17

Likewise, for their warnings claims, Plaintiffs again allege only conclusorily that each player was not warned by the Riddell Defendants that "the league-mandated equipment did not protect him from such injury," and that this was allegedly "a substantial factor in causing his current injury." (*See, e.g.,* *Barnes* SAC ¶ 137 (alleging this as to Greg Lens, whose "current injury" is death); *see also id.* ¶ 285 (alleging the Riddell Defendants' "failure to warn caused the Plaintiffs[] to sustain repeated concussive brain injuries . . .").) Beyond their conclusory allegations, Plaintiffs fail to allege *how* any conduct or alleged failure to warn on the part of the Riddell Defendants proximately caused or was a substantial factor in their injuries (or death, in the case of *Barnes* player Greg Lens, who died 37 years after his playing career ended).

**6. Plaintiff Lens fails to plead a viable claim for wrongful death (*Barnes* only).**

Similar to the other claims, *Barnes* Plaintiff Lens fails to plead a plausible claim for wrongful death of her husband, Greg Lens. (*See Barnes* SAC ¶¶ 134-38, 301-06.) While it remains to be determined which state's wrongful-death law should apply to this claim, typically, a wrongful-death plaintiff must allege, at a bare minimum, sufficient facts to plausibly support that the death was "caused by the wrongful act or neglect of another." *See, e.g.,* Cal. Civ. Proc. Code § 377.60.

For the reasons outlined above, Plaintiff Lens fails to allege sufficient facts to render it plausible that the Riddell Defendants committed any "wrongful act or neglect" with respect to her deceased husband in the first place. In addition, she fails to allege sufficient facts to support her conclusory assertions that any conduct on the part of the Riddell Defendants was a proximate cause or substantial factor in either her husband's concussions or his death, which came at least 37 years after he played his last down in the NFL, and after he last could have suffered a concussion playing in the NFL. (*See Barnes* SAC ¶¶ 137, 303.) Moreover, Plaintiff Lens fails to allege any facts to support any medical causation between

her husband's alleged concussions and his death. Thus, just as with the other Plaintiffs' claims, Plaintiff Lens's bald and conclusory wrongful-death claim fails to pass *Twombly* and *Iqbal* muster.

### 7. Plaintiffs' loss-of-consortium claims are deficient.

Liability of a defendant for injuries to a person is a necessary element of a claim for loss of consortium by that injured person's spouse. 41 Am. Jur. 2d *Husband and Wife* § 219 (2005); *see also id.* § 215. Thus, "[g]enerally, a plaintiff spouse's claim for loss of consortium fails if the impaired spouse's claim fails, whether the claim is considered separate and independent from the impaired spouse's claim or derivative in nature." *Id.* § 227; *see also Malone v. Marriott Int'l, Inc.*, No. 09-CV-01980, 2010 WL 4537828, at *6 (C.D. Cal. Oct. 29, 2010) (dismissing spouse's loss-of-consortium claim after the underlying claims failed). The player-Plaintiffs failure to state viable and plausible causes of action against the Riddell Defendants dooms their spouses' loss-of-consortium claims as well.

The spouse-Plaintiffs' loss of consortium claims also fail because they offer nothing more than conclusory allegations without supporting facts as to how or why their husbands' alleged injuries have deprived them of services, society, or companionship, or why they will continue to spend money for the medical and household treatment for their husbands' injuries. For example, a vast number of the players allege to have suffered only memory loss, headaches, and vision problems, yet the Amended Complaints fail to explain how those conditions result in a loss of consortium. Additionally, they also lack any factual allegations to support how the player-Plaintiffs lost any earnings or why they will continue to lose future earnings as a result of their alleged injuries, which is particularly problematic for the numerous players who are now over seventy-years old.

### 8. Plaintiffs allege no plausible basis for punitive damages.

The *Twombly* and *Iqbal* pleading standards apply equally to claims of punitive damages. *Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d 1132, 1146-47

(E.D. Cal. 2010). In general, and without embarking on a detailed choice-of-law analysis, punitive damages may only be awarded for wrongdoing that was intentional, reckless, or malicious. 22 Am. Jur. *Damages* § 559 (2003). Thus, in states that allow such relief, to assert a *Twombly/Iqbal*-compliant request for punitive damages, Plaintiffs must set forth sufficient facts – as opposed to conclusory assertions – to support a plausible showing of intentional, reckless, or malicious wrongdoing.

Plaintiffs generally request punitive damages. (*See, e.g.*, *Maxwell* FAC at 89:19.) Yet, they allege no facts as against the Riddell Defendants to support such a request. Instead, the *Maxwell* and *Pear* Plaintiffs offer only two conclusory sentences alleging generally that all the Riddell Defendants "acted with callous indifference" and acted "willfully, wantonly, egregiously, with reckless abandon, and with a high degree of moral culpability." (*Id.* ¶¶ 173-175.) This, after they allege over two pages of facts about how Riddell's extensive design and safety innovations over the decades, including being "the first to use air inflation for fitting the helmet snug to the head," developing an "air cushion helmet . . . with layers of fitting and energy absorbing foam . . . greatly reducing the initial impact," and combining "foam and liquid-filled cells used for padding . . . resulting in energy attenuation." (*Id.* ¶¶ 95-98(a)-(m).)

The *Barnes* Plaintiffs offer little more, adding a third sentence in their boilerplate punitive damages section asserting, again conclusorily and with reference to no specific facts, that the Riddell Defendants knew of the risks of concussive brain injury and "consciously, willfully, and deliberately disregarded the safety of others in . . . continuing to manufacture, sell, and distribute football helmets which they knew would not protect against this risk." (*Barnes* SAC ¶ 123.) Aside from these conclusory assertions, nowhere do any Plaintiffs allege any facts of conduct by the Riddell Defendants that could support a plausible entitlement to punitive damages against them. To the contrary, the preceding

1     paragraphs in *Barnes*, as in *Maxwell* and *Pear*, mention the Riddell Defendants by

2     name only three times and only conclusorily. (*Id.* ¶¶ 59, 120, 121.)

3         In addition, many jurisdictions require a plaintiff pursuing punitive damages

4     against a corporate defendant to show some participation or ratification by a

5     managing agent, director, or officer in the wrongful conduct. *See, e.g.*, Cal. Civil

6     Code § 3294. Plaintiffs fail to provide any such facts of corporate or company

7     management involvement of any kind, primarily because they fail to allege any

8     punitive-damages-worthy conduct on the part of the Riddell Defendants in the first

9     place. This total lack of any allegations to support a claim for punitive damages

10    warrants dismissing this request for relief, pursuant to Rule 12(b)(6). *See, e.g.*,

11    *Rhynes v. Stryker Corp.*, No. 10-5619 SC, 2011 WL 2149095 (N.D. Cal. May 31,

12    2011) (granting motion to dismiss a request for punitive damages after holding

13    that similarly conclusory allegations that defendant "'provid[ed] insufficient,

14    misleading and deceptive information' to patients and doctors," "fail[ed] to

15    promptly and fairly investigate and identify the causes of the design [and

16    manufacturing] defects," "concealed the existence of patient complaints," and was

17    "well aware of numerous instances of product failure . . . at the time of Plaintiff's

18    surgery" were "merely conclusory statements not entitled to the presumption of

19    truth under *Iqbal* and *Twombly*").

20      **E.**     **The Labor Relations Management Act preempts Plaintiffs'**
21           **claims against the Riddell Defendants.**

22         Plaintiffs all refer to collective bargaining agreements ("CBA") between

23    the NFL Players Association and the NFL Management Council, as the

24    bargaining representatives of the players and the NFL, respectively, which have

25    been in effect since 1968.[18] (*See, e.g.*, *Maxwell* FAC ¶ 101; *Barnes* SAC ¶¶ 39-

26

27    _____

28    [18] The Riddell Defendants intend to rely on the CBAs as appended to the NFL's submissions and previously filed as docket entries No. 32, Exhibits 1 -10. In

21

40.) Despite Plaintiffs' protestations,[19] the CBAs apply to their claims[20] because Plaintiffs base those claims on alleged conduct occurring during their NFL careers, as this Court already necessarily determined in denying Plaintiffs' motions to remand. (*Id.*; *see also* Dec. 8, 2011 Order.)

In the interest of economy and avoiding duplication, the Riddell Defendants rely on their remand oppositions and this Court's order denying remand for background on the CBAs' applicability to Plaintiffs and their claims, as well as for a discussion of several bases for preemption, and incorporate those materials by reference. (Dec. 8, 2011 Order.) They do not intend to re-plow that same ground, but merely reiterate that the crux of the analysis applicable to Plaintiffs' claims against the Riddell Defendants is whether those claims are "substantially dependent" on or "inextricably intertwined" with the CBAs, including by virtue of the "degree of care" analysis. *See Stringer v. Nat'l Football League*, 474 F. Supp. 2d 894, 900 (S.D. Ohio 2007) ("If resolution of the state law claim is 'substantially dependent' on an analysis of the terms of the collective bargaining agreement, or 'inextricably intertwined with it, the claim will be preempted by § 301.") (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)).

As for new preemption grounds not previously discussed, the CBAs' numerous medical-care, rules of play, and Health and Safety Committee provisions are also implicated by Plaintiffs' allegations as to product defect and the alleged duty to provide helmets that could protect players from the effects of

---

addition, the Riddell Defendants echo the NFL's position that the CBAs are properly referred to on these motions to dismiss.

[19] Plaintiffs also refer to this summer's "lockout" and incorrectly assert that the CBA "does not currently exist." (*See, e.g., Maxwell* FAC ¶ 102.) There is currently a CBA in effect.

[20] *Maxwell* Player-Plaintiff Patrick Heenan played prior to 1968. Nevertheless, for convenience, the Riddell Defendants refer to "Plaintiffs" in this discussion.

"multiple concussions," (see, e.g., Maxwell FAC ¶¶ 608-18, 624-640), in that whatever degree of care was allegedly owed to design and manufacture a football helmet to protect from injury associated with "multiple concussions" cannot be considered "in a vacuum." Rather, it must be evaluated in terms of the circumstances of the helmet's intended use, the medical care players received from trainers and physicians following any alleged concussion, the rules promulgated and conditions under which the helmets would be used, and other relevant factors. Cf. Stringer, 474 F. Supp. 2d at 908-10 (discussing the degree of care analysis that implicated various CBA provisions).[21] See 1982 CBA Art. XXXI §§ 1-2 (providing for club physicians and trainers); 1977 CBA Art. XI (establishing a Joint Committee on Player Safety and Welfare to discuss "the player safety and welfare aspects of playing equipment, playing surfaces, . . . playing rules, . . . and other relevant subjects"); (see also NFL's Mem. Points & Auths. Supp. Mot. Dismiss Compl. ("NFL's Mem. Supp."), App. B §§ A-C).

Plaintiffs' allegations concerning product defect and the alleged duties to advise the players about alternative designs and to provide general information about helmet safety also implicate the Joint Committee on Player Safety and Welfare, which addressed, among other issues, "playing equipment" and safety issues associated with it. See, e.g., 1977 CBA Art. XI. The scope of duty and degree of care the Riddell Defendants supposedly had to provide such information can only be assessed by reviewing and interpreting the Joint Committee's duty to discuss "playing equipment."

In addition, Barnes Plaintiff Lens, whose husband played from 1970 to 1972, alleges in her wrongful-death claim that the Riddell Defendants "knew as early as the 1920's of the potential harmful effects on a player's brain of

---

[21] The Stringer court did not find preemption of the product claims against Riddell and All American. 474 F. Supp. 2d at 914-15. However, that court did not address either Plaintiffs' allegations or the Riddell Defendants responses.

concussions; however, until June of 2010 they concealed these facts from coaches, trainers, players and the public with negligent disregard for DECEDENT's safety and life." (*Barnes* SAC ¶¶ 303, 304.) These allegations are inextricably intertwined with those CBA provisions in 1970 establishing club physicians as well as allowing for independent and third-party medical reviews. *See* 1970 CBA Art. XI. As with the provisions at issue in *Stringer*, if those team physicians were knowledgeable as to concussion-related injuries and associated risks "by virtue of their medical school training and experience," then the players, including Mr. Lens, would not need to rely on the Riddell Defendants for such information. *See* 474 F. Supp. 2d at 910-11.

Moreover, in addition to the allegations in all three Complaints that the Riddell Defendants had some duty to warn of the "means available to reduce and/or minimize the risk of concussive brain injuries while playing football," (*see, e.g., Maxwell* FAC ¶ 638),[22] the *Barnes* Plaintiffs allege specifically that all "Defendants, and each of them," including the Riddell Defendants, "consciously, willfully, and deliberately disregarded the safety of others in continually undertaking to establish and promulgate safety rules for the NFL, but failing to address or disclose this substantial risk [of concussive brain injuries] in connection with such rules . . . ." (*Barnes* SAC ¶ 123.) This allegation further implicates the provisions on the Joint Committee on Player Safety and Welfare and NFL rulemaking, which has been in place since the 1977 CBA (effective 1974), since, by their allegations, Plaintiffs would ask a court to interpret those provisions as giving the Riddell Defendants a position and voice in that committee. *See, e.g.,* 1977 CBA Art. XI & 8.

Finally, the CBAs' numerous medical-care provisions are also implicated in terms of a proper causation analysis as to all of Plaintiffs' claims. Plaintiffs would

---

[22] The Riddell Defendants' remand filings addressed the preemption implications of this allegation.

be required to show that it was the Riddell Defendants' duty to protect them from the alleged risks of multiple concussions and that the supposed failure to do so was the proximate cause of their injuries. They cannot do this without implicating the CBAs and their extensive provisions on player safety, rules, injury treatment and care and the allocation of responsibility they provide among the NFL, its clubs, and players' association, all of which must be interpreted to assess causation properly. (*See* NFL's Mem. Supp., App. B §§ A-C.)

### F. Plaintiffs fail to state a claim for alleged duties owed to others.

Plaintiffs' conclusory assertion that the Riddell Defendants breached some undisclosed duties to "all American Rules Football leagues and players and the public at large," (*see, e.g., Maxwell* FAC ¶ 173), lacks any basis for such alleged duties. The Court should summarily dismiss this baseless assertion.[23]

## III. CONCLUSION

Even after amendment, Plaintiffs' actions are marked by an abundance of misjoined Plaintiffs, but a lack of factually supported allegations against the Riddell Defendants. For the foregoing reasons, as well as those explained in the Riddell Defendants' previously filed oppositions to Plaintiffs' motions to remand, this Court should dismiss Plaintiffs' claims in their entirety against the Riddell Defendants with prejudice.

DATED: December 20, 2011      BOWMAN AND BROOKE LLP

By  */s/ Paul G. Cereghini*
     Paul G. Cereghini
     Vincent Galvin
     Marion V. Mauch
     Attorneys for the Riddell Defendants

---

[23] In light of *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-75 (9th Cir. 2010), the Riddell Defendants have attacked this baseless and irrelevant allegation under Rule 12(b)(6), as opposed to by a motion to strike under Rule 12(f). Either way, this Court should dispense with this part of the Complaints with prejudice.

# PROOF OF SERVICE
## F.R.C.P. Rule 5(b)(2)

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 879 West 190th Street, Suite 700, Gardena, CA 90248-4227.

I hereby certify that on **December 20, 2011**, I served the document: **RIDDELL DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINTS PURSUANT TO RULES 8 AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES** on all interested parties in this action by placing **a true copy** thereof enclosed in sealed envelopes addressed as follows:

## SEE ATTACHED SERVICE LIST

( )    **BY MAIL (F.R.C.P. Rule 5(b)(2))**

( )    **BY OVERNIGHT DELIVERY (F.R.C.P. Rule 5(b)(2))**

( )    As follows: I am "readily familiar" with the firm's practice of collection and processing documents for mailing. Under the practice, the envelope would be put in a sealed envelope and deposited with the U.S. postal service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage date is more than **1** day after date of deposit for mailing in affidavit.

**(X)**    **BY CM/ECF:** I hereby certify that I electronically transmitted the attached document(s) to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the parties as shown on the attached Service List.

( )    **BY PERSONAL SERVICE (F.R.C.P. 5(2)):** I delivered such envelope by hand to the addressee.

Executed on **December 20, 2011,** at Gardena, California.

**(X)**    **(Federal)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Regina Foley

26

CV 11-8394 R (MANx)

# SERVICE/MAILING LIST

## Vernon Maxwell et al. v. National Football League, et al.

United States District Court–Central District of California - Western Division Case No: CV 11-8394 R (MANx)

| | |
|---|---|
| Thomas V. Girardi, Esq.<br>GIRARDI │ KEESE<br>1126 Wilshire Boulevard<br>Los Angeles, CA 90017 | **Attorneys for Plaintiffs**<br><br>Tel:   (213) 977.0211<br>Fax:  (213) 481.1554 |
| Herman Russomanno, Esq.<br>Robert Borrello, Esq.<br>RUSSOMANNO & BORRELLO, P.A.<br>150 West Flagler Street – PH 2800<br>Miami, FL 33130 | **Attorneys for Plaintiffs**<br><br>Tel:   (305) 373.2101<br>Fax:  (305) 373.2103 |
| Jason E. Luckasevic, Esq.<br>John T. Tierney, III, Esq.<br>GOLDBERG, PERSKY & WHITE, P.C.<br>1030 Fifth Avenue<br>Pittsburgh, PA 15219 | **Attorneys for Plaintiffs**<br><br>Tel:   (412) 471.3980<br>Fax:  (412) 471.8308 |
| Ronald L. Olson, Esq.<br>Glenn d. Pomerantz, Esq.<br>John M. Rappaport, Esq.<br>MUNGER, TOLLES & OLSON LLP<br>355 South Grand Avenue, 35th<br>Los Angeles, CA 90071-1560 | **Attorneys for Defendants**<br>**NATIONAL FOOTBALL LEAGUE and**<br>**NFL PROPERTIES LLC**<br><br>Tel:   (213) 683.9100<br>Fax:  (213) 683.5100 |
| Brad S. Karp, Esq.<br>Theodore V. Wells, Jr., Esq.<br>Lynn B. Bayard, Esq.<br>Beth A. Wilkinson, Esq.<br>Bruce Birenboim, Esq.<br>PAUL, WEISS, RIFKIND, WHARTON<br>& GARRISON LLP<br>1285 Avenue of the Americas<br>New York, NY 10019-6064 | **Attorneys for Defendants**<br>**NATIONAL FOOTBALL LEAGUE and**<br>**NFL PROPERTIES LLC**<br><br>Tel:   (212) 373.3000<br>Fax:  (212) 757.3990 |

# PROOF OF SERVICE

## F.R.C.P. Rule 5(b)(2)

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 879 West 190th Street, Suite 700, Gardena, CA 90248-4227.

I hereby certify that on **December 20, 2011**, I served the document: **RIDDELL DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT; EXHIBIT "A"** on all interested parties in this action by placing **a true copy** thereof enclosed in sealed envelopes addressed as follows:

## SEE ATTACHED SERVICE LIST

( )  **BY MAIL (F.R.C.P. Rule 5(b)(2))**

( )  **BY OVERNIGHT DELIVERY (F.R.C.P. Rule 5(b)(2))**

( )  As follows: I am "readily familiar" with the firm's practice of collection and processing documents for mailing. Under the practice, the envelope would be put in a sealed envelope and deposited with the U.S. postal service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage date is more than **1** day after date of deposit for mailing in affidavit.

(**X**)  **BY CM/ECF:** I hereby certify that I electronically transmitted the attached document(s) to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the parties as shown on the attached Service List.

( )  **BY PERSONAL SERVICE (F.R.C.P. 5(2)):** I delivered such envelope by hand to the addressee.

Executed on **December 20, 2011,** at Gardena, California.

(**X**)  (**Federal**) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Regina Foley

1526920-WE

CV 11-8396 R (MANx)

# SERVICE/MAILING LIST

## Larry Barnes et al. v. National Football League, et al.

United States District Court–Central District of California - Western Division Case No: CV 11-8396 ODW (JCGx)

David A. Rosen
ROSE, KLEIN & MARIAS LLP
801 S. Grand Avenue, 11th Floor
Los Angeles, CA 90017-4645

**Attorneys for Plaintiffs**

Tel:  (213) 626.0571
Fax:  (213) 623.7755

Ronald L. Olson, Esq.
Glenn d. Pomerantz, Esq.
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th
Los Angeles, CA 90071-1560

**Attorneys for Defendants
NATIONAL FOOTBALL
LEAGUE and NFL PROPERTIES
LLC**

Tel:  (213) 683.9100
Fax:  (213) 683.5100

Brad S. Karp, Esq.
Theodore V. Wells, Jr., Esq.
Lynn B. Bayard, Esq.
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064

**Attorneys for Defendants
NATIONAL FOOTBALL
LEAGUE and NFL PROPERTIES
LLC**

Tel:  (212) 373.3000
Fax:  (212) 757.3990