Case 2:12-md-02323-AB Document 44-1 Filed 03/30/12 Page 2 of 33 Page ID
Case 2:11-cv-08395-R-MAN Document 34-1 Filed 01/26/12 Page 2 of 33 Page ID
#:11017

1   BOWMAN AND BROOKE LLP
2   Paul G. Cereghini (SBN: 148016)
    *Paul.Cereghini@bowmanandbrooke.com*
3   Vincent Galvin, Jr. (SBN: 104448)
4   *Vincent.Galvin@bowmanandbrooke.com*
    Marion V. Mauch (SBN: 253672)
5   *Marion.Mauch@bowmanandbrooke.com*
6   879 West 190th Street, Suite 700
    Gardena, CA 90248-4227
7   Tel: (310) 768-3068
8   Fax: (310) 719-1019

9
10  Attorneys for Defendants RIDDELL, INC.; ALL AMERICAN
    SPORTS CORPORATION; RIDDELL SPORTS GROUP, INC.;
11  EASTON-BELL SPORTS, INC.; EASTON-BELL SPORTS, LLC;
    EB SPORTS CORP.; and RBG HOLDINGS CORP.
12

13            **UNITED STATES DISTRICT COURT**

14           **CENTRAL DISTRICT OF CALIFORNIA**

15  VERNON MAXWELL, et al.,      CASE NO.: CV 11-8394 R (MANx)
16
17      Plaintiffs,       **RIDDELL DEFENDANTS' REPLY**
                  **MEMORANDUM OF POINTS AND**
18  v.                  **AUTHORITIES IN SUPPORT OF**
19                 **MOTION TO DISMISS; EXHIBITS**
    NATIONAL FOOTBALL LEAGUE,  **"A" – "B"**
20  et al.,
21                 Date:      February 6, 2012
        Defendants.     Time:     10:00 a.m.
22                  Dept:     Courtroom 8
23
24                 Judge: Hon. Manuel L. Real

25                 Notice of related cases:
26                 No. CV 11-08395 R (MANx)
                    No. CV 11-08396 R (MANx)
27
28

                        1

# **TABLE OF CONTENTS**

I.  ARGUMENT ....................................................................................... 1

    A.  Plaintiffs' claims are time-barred.  ................................................ 1

        1.  Plaintiffs fail to allege sufficient facts regarding the time and manner of discovery of their alleged claims.  ........... 2

        2.  Plaintiffs likewise fail to plead facts to support any claimed inability to have discovered their alleged claims earlier.  ........................................................... 4

        3.  Plaintiffs fail to allege sufficient facts that they sustained "separate and distinct" injuries with different accrual dates.  ............................................ 7

    B.  Plaintiffs have failed to plead any basis for claims against the alleged "Parent and Affiliated Riddell Defendants."  ......................... 9

    C.  Plaintiffs offer nothing but conclusory argument that their conclusory allegations pass *Twombly/Iqbal* muster.  ....................... 11

        1.  Plaintiffs fail to show that their purported design and manufacturing defect claims properly survive dismissal.  ...... 11

        2.  Plaintiffs likewise fail to show that their conclusory warnings claims withstand dismissal.  .................................... 14

        3.  Plaintiffs concede that if the player-Plaintiffs' claims fail, the spouse-Plaintiffs' loss-of-consortium claims also fail.  .... 16

        4.  *Barnes* Plaintiff Lens's wrongful-death claim fails.  .............. 16

    D.  Plaintiffs' total lack of opposition as to the deficiency of their punitive-damages allegations warrants summary dismissal of that aspect of their actions.  ............................................. 17

E.    Plaintiffs' claims against the Riddell Defendants are inextricably
      intertwined with the CBAs and, therefore, preempted.  ................... 18

      1.    The *Maxwell* and *Pear* Plaintiffs' argument that preemption
            is unavailable based on their filing suit during a period
            when the current CBAs were not in effect lacks merit.  ......... 18

      2.    The *Maxwell* and *Pear* Plaintiffs' retirees/spouses argument
            fails.  ................................................................................ 21

      3.    The *Maxwell* and *Pear* Plaintiffs' non-signatories argument
            likewise lacks merit.  ................................................... 21

      4.    The *Barnes* Plaintiffs ignore *Stringer* and instead improperly
            conflate the separate "arising under" and "inextricably
            intertwined" analyses.  ................................................ 23

F.    The Court should dismiss without leave to amend.  .......................... 24

II.   CONCLUSION ........................................................................... 25

iii

# TABLE OF AUTHORITIES

## *Cases*

*Adams v. I-Flow Corp.,*
 No. 2:09-cv-09550-R-SS, 2010 WL 1339948 (C.D. Cal. Mar. 30, 2010) ........ 2, 3

*Allen v. City of Beverly Hills,*
 911 F.2d 367 (9th Cir. 1990) ...................................................................... 24

*Allis-Chambers Corp. v. Lueck,*
 471 U.S. 202 (1985) ............................................................................ 21, 22

*Ashcroft v. lqbal,*
 556 U.S. 662, 129 S.Ct. 1937 (2009) ........................................................ 13

*Atwater v. Nat'l Football League Players Ass'n,*
 626 F.3d 1170 (11th Cir. 2010) ........................................................... 21, 22

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed. 929 (2007) .......................... 11, 12, 13

*Brady v. National Football League,*
 779 F. Supp. 2d 992 (D. Minn. 2011) ........................................................ 19

*Brady v. Nat'l Football League,*
 644 F.3d 661 (8th Cir. 2011) ..................................................................... 19

*Cement Masons Health & Welfare Trust Fund for No. Cal. v. Kirkwood-Bly, Inc.,*
 520 F. Supp. 942 (N.D. Cal. 1981), ........................................................... 20

*Conley v. Gibson,*
 355 U.S. 41, 78 S.Ct. 99 (1957) ................................................................ 11

*DaShields v.Robertson,*
 No. 99-1124, 2000 WL 564024 (4th Cir. May 10, 2000) ............................... 22

*Davies v. Krasna,*
 14 Cal. 3d 502, 121 Cal.Rptr. 705 (1975) .................................................... 9

*DeRose v. Carswell*,
   196 Cal. App. 3d 1011, 242 Cal. Rptr. 368 (1987)................................9

*Dosier v. Burns International Security Services*,
   729 F.2d 695 (N.D. Cal. 1990) ....................................................20, 21

*Finn v. G.D. Searle & Co.*,
   35 Cal. 3d 691, 200 Cal. Rptr. 870 (1984)...............................15, 17

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal. 4th 797, 110 P.3d 914 (2005) .........................................2, 8

*Givens v. Tenn. Football League*,
   684 F. Supp. 2d 985 (M.D. Tenn. 2010) .........................................21

*Grisham v. Philip Morris U.S.A., Inc.*,
   40 Cal. 4th 623, 54 Cal. Rptr. 3d 735 (2007) .................................7

*Health Plan, Inc.*,
   244 F.3d 708 (9th Cir. 2001) ...........................................................24

*Hopkins v. Dow Corning Corp.*,
   33 F.3d 1116 (9th Cir. 1994) .......................................................2, 4

*Int'l Union, United Mine Workers of Am. v. Covenant Coal Corp.*,
   977 F.2d 895 (4th Cir. 1992) ...........................................................22

*Jackson v. Bank of Hawaii*,
   902 F.2d 1385 (9th Cir. 1990) .........................................................24

*Jolly v. Eli Lilly & Co.*,
   44 Cal. 3d 1103, 245 Cal. Rptr. 658 (1988)....................................2

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) .........................................................25

*Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co.*,
   779 F.2d 497 (9th Cir. 1985) ...........................................................20

*McGlinchy v. Shell Chemical Co.,*
   845 F.2d 802 (9th Cir. 1988) ............................................................. 25

*NLRB v. Washington Aluminum Co.,*
   370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1962).............................. 19

*Office and Professional Employees Insurance Trust Fund v. Laborers Funds*
   *Administrative Office of Northern California, Inc.,*
   783 F.2d 919 (9th Cir. 1986) ............................................................. 20

*Pooshs v. Philip Morris USA, Inc.,*
   51 Cal. 4th 788, 250 P.3d 181 (2011) ............................................. 8, 9

*Powell v. National Football League*
   764 F. Supp. 1351 (D. Minn. 1991) .................................................. 19

*Saliter v. Pierce Bros. Mortuaries,*
   81 Cal. App. 3d 292, 146 Cal. Rptr. 271 (1978)................................. 2

*Saul v. United States,*
   928 F.2d 829 (9th Cir. 1991) ............................................................. 24

*Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.,*
   806 F.2d 1393 (9th Cir. 1986) ........................................................... 24

*Shermoen v. United States,*
   982 F.2d 1312 (9th Cir. 1992) ........................................................... 24

*Stringer v. Nat'l Football League,*
   474 F. Supp. 2d 894 (S.D. Ohio 2007) ............................................. 22

*Sun Microsystems, Inc.,*
   368 F.3d 1053 (9th Cir. 2004) ........................................................... 24

*Timmons v. Linvatec Corp.,*
   263 F.R.D. 582 (C.D. Cal. 2010) ................................................. 10, 13

**Rules**

L.R. 7-10............................................................................................... 1

**Exhibit "A" - Page 10**

Fed. R. Civ. P. 8 .......................................................................................... 11

Fed. R. Civ. P. 12(b)(6) .............................................................................. 11

Fed. R. Civ. P. 15(a)(2) .............................................................................. 24

CV 11-8394 R (MANx)

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

**I.** **ARGUMENT**

The "Riddell Defendants,"[1] pursuant to L.R. 7-10, reply to Plaintiffs' Oppositions and in support of the Riddell Defendants' motions to dismiss in all three related cases.[2] (*Maxwell* Pls.' Opp. to Riddell Defs.' Mot. to Dismiss (ECF No. 82) ("*Maxwell* Opp."); *Barnes* Pls.' Opp. to Riddell Defs.' Mot. to Dismiss Pls.' Second Am. Compl. (ECF No. 81) ("*Barnes* Opp.").)  In short, Plaintiffs fail to show why their claims should not be dismissed for multiple reasons, and they further fail to demonstrate that leave to amend would do anything to correct these multiple deficiencies.  Therefore, this Court should dismiss their claims in their entirety with prejudice.

**A.** **Plaintiffs' claims are time-barred**.

Plaintiffs do not contest that their actions rightly appear to be facially time-barred.  Instead, they argue now, for the first time, that their claims are subject to California's "delayed discovery" rule. (*Maxwell* Pls.' Opp. to Riddell Defs.' Mot. to Dismiss (ECF No. 82) ("*Maxwell* Opp.") at 14-16;[3] *Barnes* Pls.' Opp. to Riddell Defs.' Mot. to Dismiss Pls.' Second Am. Compl. (ECF No. 81) ("*Barnes* Opp.") at 3-5.) They are incorrect.

In general, California's discovery rule can postpone accrual of a cause of action for purposes of the statute of limitations until the plaintiff knew or should

---

[1] Referring to these Defendants collectively does not imply or concede that they are properly joined or named as Defendants, and the "Riddell Defendants" reserve the right to move to dismiss some or all of them.  The collective reference is merely for convenience.

[2] As with its opening motion and memorandum, the Riddell Defendants address all three sets of Plaintiffs' oppositions collectively, since their claims in *Maxwell*, *Pear*, and *Barnes* are virtually identical, as are their arguments.

[3] Given that the *Maxwell* and *Pear* Plaintiffs have said their oppositions are identical, unless otherwise appropriate, the Riddell Defendants will refer to the *Maxwell* filings for both of those actions.

1    have known of his injury and its cause through the exercise of reasonable

2    diligence. *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1109 (1988). However, as

3    this Court has explained, a plaintiff who attempts to rely on the delayed discovery

4    rule must first plead sufficient facts to support delayed accrual and that he could

5    not, through reasonable diligence, have learned of his action and filed suit within

6    the normal limitations period. *E.g.*, *Adams v. I-Flow Corp.*, No. 2:09-cv-09550-R-

7    SS, 2010 WL 1339948, at * 4 (C.D. Cal. Mar. 30, 2010). Specifically, "[t]o invoke

8    the discovery rule, plaintiff must plead facts which show '(1) the time and manner

9    of discovery and (2) the inability to have made earlier discovery despite reasonable

10   diligence.'" *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1120 (9th Cir. 1994)

11   (quoting *Saliter v. Pierce Bros. Mortuaries*, 81 Cal. App. 3d 292, 146 Cal. Rptr.

12   271, 274 (1978)) (emphasis added); *Adams*, 2010 WL 1339948, at *4 (citing *Fox v.*

13   *Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005)).

14        The delayed discovery rule does not apply here to save Plaintiffs' claims

15   from dismissal as being time-barred, for several reasons. First, Plaintiffs fail to

16   allege facts sufficient to invoke the discovery rule. Second, the facts they have

17   alleged squarely contradict that they did not and could not know of their alleged

18   causes of action until less than two years ago. Third, they fail to allege any facts

19   to support their argument that their alleged injuries are, indeed, medically "separate

20   and distinct" from their alleged concussive injuries.

21        **1.    Plaintiffs fail to allege sufficient facts regarding the time and
             manner of discovery of their alleged claims.**

22

23        Plaintiffs wholly ignore in their opposition briefs the requirement that a

24   party seeking to invoke the delayed discovery rule must, for starters, "plead facts

25   which show '(1) the time and manner of discovery" of their alleged claims.

26   *Hopkins*, 33 F.3d at 1120. Thus, not surprisingly, all their Amended Complaints

27   fail to meet this "time and manner" requirement. (*See, e.g.*, *Maxwell* First Am.

28   Comp. ("FAC") ¶ 180 (alleging only that the *Maxwell* player-Plaintiffs now suffer

1  from "multiple past traumatic brain injuries with various symptoms"); *Barnes*

2  Second Am. Compl. ("SAC") ¶ 53 (asserting conclusorily that the *Barnes* player-

3  Plaintiffs' alleged injuries were not diagnosed "as being football related until

4  September 2009, at the earliest").)

5        Instead, Plaintiffs merely conclusorily assert – with attorney argument only

6  and with no supporting facts – that the earliest that all 136 player-Plaintiffs

7  "learned about their injuries and that the injuries were related to the high-velocity

8  impacts and concussions they experienced in the NFL was when the later life

9  cognitive problems developed," and that these "long-term cognitive problems were

10  only recently discovered." (*Maxwell* Opp. at 15-16; *see also Barnes* Opp. at 4

11  ("The earliest date that Plaintiffs learned about their injuries and that the injuries

12  were related to high-velocity impacts and concussions experienced in the NFL was

13  following retirement, when symptoms of said injuries somewhat progressed and

14  they were first diagnosed by a medical professional to that effect.").) Nowhere do

15  they provide any facts of the time or manner for these alleged discoveries.

16        Additionally, Plaintiffs' fail to plead anywhere the facts showing the time

17  and manner of their purported discovery that their alleged injuries were supposedly

18  caused by the Riddell Defendants' products or conduct. Plaintiffs' only

19  generically allege that they "could not have known or discovered with reasonable

20  certainty that the cause of their injuries were due to Defendants' fraudulent

21  concealment of this information"[4] (*Maxwell* FAC ¶ 158), and in *Barnes* that "[a]t

22  no time prior to October 28, 2009 did any Plaintiff, or decedents, to this action

23  have knowledge of the connection between football head injuries and dementia,

24  memory loss, CTE and related symptoms" (*Barnes* SAC ¶ 53). As this Court

25  recently recognized, these types of conclusory allegations are insufficient to invoke

26  the discovery rule. *See Adams*, 2010 WL 1339948, at *4 (finding allegation that

27

28

---

[4] Plaintiffs have also failed to plead any facts to support the Riddell Defendants' "fraudulent concealment" of anything.

all 141 plaintiffs were unaware of causal link between their injuries and defendants' products until less than a year before filing to be insufficient to invoke discovery rule).

### 2. Plaintiffs likewise fail to plead facts to support any claimed inability to have discovered their alleged claims earlier.

As with their failure to plead the "time and manner" of their alleged discovery of their claims, Plaintiffs have also failed to plead any facts to support their purported "inability to have made earlier discovery despite reasonable diligence." *Hopkins*, 33 F.3d at 1120. To the contrary, what facts they have alleged show that the information Plaintiffs allege the Riddell Defendants failed to provide them with was all publicly and readily available and accessible, had Plaintiffs exercised due diligence.

Specifically, Plaintiffs primarily allege that their action against the Riddell Defendants is that they all failed "to warn Plaintiffs of traumatic brain injury and long-term risks associated with multiple concussions and blows to the head sustained as a result of Plaintiffs playing professional football in the NFL." (*See, e.g., Maxwell* ECF No. 21 at 6; *Barnes* ECF No. 18 at 6.) They conclusorily assert that they "did not know, nor did they have reason to know, the long-term effects of concussions and relied on the NFL and the Riddell Defendants to protect them." (*Maxwell* FAC ¶ 122; *Barnes* SAC ¶ 59.) Yet, throughout their Complaints, they repeatedly allege that those purported long-term risks were well known based on publicly available information.

For instance, the *Maxwell* Plaintiffs allege multiple sources of purported public knowledge of concussion risks since the 1890s, including numerous publicly available articles. (*See, e.g., Maxwell* FAC ¶ 127(a)-(jj).) They also allege the same information the Riddell Defendants failed to warn them of comprises "75 years of published medical literature on concussions." (*Maxwell* FAC ¶ 137; *see also id.* ¶¶ 144, 549 ("It has been well established since 1928 that

4

repeated blows to the head can lead to CTE, commonly known as 'punch drunk
syndrome.'"), 565 (same), 590 (discussing purported duty to acknowledge "clear
link between concussions and brain injuries beings [sic] suffered by NFL
players"), & 637.)

In addition, *Pear* Plaintiff Lional Dalton, (*Pear* FAC ¶¶ 45, 369-73), is also
a named plaintiff in a more recently filed, separate lawsuit alleging identical claims
against the NFL for the same alleged injuries pending in the United States District
Court for the Southern District of Florida, *Jones v. National Football League*, Case
No. 1:11-cv-24594-JEM.[5] (*Jones* Compl. ¶¶ 13, 147-54 (describing the same NFL
player Lional Dalton who is already a plaintiff in *Pear*).) Plaintiff Dalton's
allegations in *Jones* further establish the time-barred nature of his – and his fellow
Plaintiffs' – claims.

For example, player-Plaintiff Dalton alleges that "[f]or close to a century,
evidence has linked concussions and long-term neurological problems, and
specialists in brain trauma have been warning about the risks of permanent brain
damage from repetitive concussions for decades." (*Jones* Compl. ¶ 1; *see also id.* ¶
3 (alleging "clear medical evidence that on-field concussions led directly to brain
injuries and frequently had tragic repercussions for its retired players").) He
alleges that '[i]t has been well known for nearly a century that concussions and
repetitive head injuries cause a myriad of long-term sequelae." (*Id.* ¶ 38.) He
alleges "numerous studies published in medical journals including the Journal of
the American Medical Association, Neorology, and the New England Journal of
Medicine, warning of the dangers of single concussions, multiple concussions, and
football-related head trauma from multiple concussions" between 1952 and 1995.

---

[5] A copy of the *Jones* Complaint is attached as Exhibit "A." While the *Jones*
plaintiffs allege mostly the same claims against the NFL as in *Pear* (negligent
undertaking, fraudulent concealment, and misrepresentation), they do not name the
Riddell Defendants as defendants.

CV 11-8394 R (MANx)
**Exhibit "A" - Page 16**

1    (*Id.* ¶ 58.)  Moreover, he alleges that "[i]n 1995, a group of neurological doctors,

2    NFL team doctors, and some NFL players participated in the NFL Players' head

3    Concussion Brain Injury Seminar," and that "[a]t this seminar, many of the

4    independent neurological doctors confirmed that concussions can have long-term

5    negative health consequences and warned of the dangers associated with

6    concussions and with returning to play too soon after having received a

7    concussion." (*Id.* ¶ 61 (emphasis added); *see also id.* ¶¶ 51-95 (asserting various

8    other bases for alleged widespread, public knowledge of concussion risks).)

9         The *Barnes* Plaintiffs similarly plead facts squarely contradicting their

10   conclusory arguments and supporting a long-standing public availability of the

11   very same information of which they allege the Riddell Defendants failed to warn

12   them.  For instance, the *Barnes* Plaintiffs baldly assert that October 28, 2009 "was

13   the first instance in which the connection between football head injuries and

14   dementia, memory loss, CTE and related symptoms was disseminated to the public

15   at large." (*Barnes* SAC ¶ 52.)  Yet, only a few paragraphs later, they allege:

16        Throughout the past century and through the present, the published frank
          medical literature in the United States and other industrialized countries has
17        included case reports, studies, reviews, and peer-reviewed articles relating to
          and discussing the harmful effects on humans, and particularly players of
18        American football, of repeated concessive [sic] blows to the head.  These
19        publications were all available and easily accessible to all Defendants.

20   (*Barnes* SAC ¶ 64 (emphasis added).)    Thus, according to Plaintiffs, this

21   information about the alleged long-term risks of concussive brain injuries were

22   equally available to Plaintiffs and their physicians. (*See also, e.g., Barnes* SAC ¶¶

23   72 (discussing contemporaneous comments to a 2004 article noting "literature

24   published over the last twenty years suggesting that athletes be returned to play

25   only after they are asymptomatic, and in some cases for seven days"), 73 (alleging

26   a 2003 NCAA study warning against return to play after a concussion), ¶ 75

27   (alleging that "a series of clinical and neuropathological studies performed by

28

1    independent scientists and physicians demonstrated that multiple NFL-induced

2    concussions cause cognitive problems such as depression, early on-set dementia

3    and CTE and its related symptoms" between 2002 and 2005"), 78, 81-82, 211 ("It

4    has been well established since 1928 that repeated blows to the head can lead to

5    CTE, commonly known as 'punch drunk syndrome.'"), & 227 (same).)   The

6    *Barnes* Plaintiffs also allege that other professional contact sports "decades ago

7    established standardized association-wide concussion management rules," further

8    demonstrating the publicly-available nature of the very information they claim the

9    Riddell Defendants failed to provide (i.e., that there are concussion risks associated

10   with playing contact sports, even when helmeted).

11       Overall, Plaintiffs fail to rebut the presumption that, in general, plaintiffs

12   have "knowledge of the wrongful cause of an injury" at the time the injury occurs.

13   *See, e.g., Grisham v. Philip Morris U.S.A., Inc.,* 40 Cal.4th 623, 638, 54

14   Cal.Rptr.3d 735, 745 (2007).   This is especially true considering that, even

15   assuming they were wearing Riddell helmets when they sustained their alleged

16   concussions, they knew, as of that moment, that the helmet did not prevent them

17   from sustaining a concussion.  This is not like a case in which a plaintiff does not

18   know who manufactured a product or that the product did not perform as they

19   allegedly expected.  Indeed, *Pear* Plaintiff Dalton confirms this point.  In *Jones,* he

20   alleges he knew he first suffered a concussion during a practice sometime before

21   the regular season in 2006, and that immediately afterward he "approached his

22   team doctor to discuss his continuing concussion symptoms."  *Jones* Compl. ¶¶

23   147-54, No. 1:11-cv-24594-JEM (ECF No. 1).  The "delayed discovery" rule is,

24   quite simply, wholly unapplicable on these facts.

25      **3.**    **Plaintiffs fail to allege sufficient facts that they sustained**

26            **"separate and distinct" injuries with different accrual dates.**

27       Plaintiffs all conclusorily assert that their claims are not barred because,

28   while their concussions occurred years ago – in some cases, decades ago – they

1   filed suit only recently because "[w]here one event causes two physical injuries,

2   and one is discovered before the other, the injuries bear differing accrual dates if

3   the later injury is 'separate and distinct' from the earlier injury." (*Maxwell* Opp. at

4   15 (citing *Pooshs v. Philip Morris USA, Inc.*, 51 Cal. 4th 788, 792 (2011)); *Barnes*

5   Opp. at 4 (same).) Plaintiffs' argument is incorrect.

6        First, Plaintiffs have not shown their alleged injuries are "separate and

7   distinct" under *Pooshs*.  In *Pooshs*, the issue came to the Supreme Court of

8   California by certified question under which the court "accept[ed] as true

9   plaintiff's factual assertion 'that COPD is a separate illness, which does not pre-

10  dispose or lead to lung cancer and that it has nothing medically, biologically, or

11  pathologically to do with lung cancer.'" *Id.* at 802.  In referring the certified

12  question to the Supreme Court, the Ninth Circuit explained that, for purposes of

13  answering the question, it was "uncontested that the etiology for lung cancer is

14  distinct from the etiology for COPD and periodontal disease." *Id.* at 793.  Thus,

15  the Supreme Court never endeavored to decide whether the plaintiff's earlier-

16  diagnosed COPD was truly "separate and distinct" from her later-diagnosed lung

17  cancer, for which she sued.  51 Cal. 4th at 793, 801-02.  However, as the *Pooshs*

18  court explained, determining whether the two diseases were, in fact, separate and

19  distinct "requires medical expertise." *Id.* at 793.

20       Plaintiffs' attempted reliance on *Pooshs* fails primarily because, as the

21  parties bearing the burden of showing the presence of facts supporting application

22  of the delayed discovery rule, *Fox*, 35 Cal. 4th at 808, they have wholly failed to

23  plead any facts in their Amended Complaints or to otherwise produce any facts –

24  much less, any evidence – in their briefs to render plausible their conclusory

25  assertion that their injuries for which they are suing now are properly considered,

26  from a medical perspective, to be "separate and distinct" diseases from their

27  injuries suffered at the time of their concussions.  Indeed, there is simply no basis

28

8

**Exhibit "A" - Page 19**

on this record to support that these 136 different player-Plaintiffs' earlier-manifested injuries did not "pre-dispose or lead to" the injuries for which they are suing now, or that those earlier injuries had "nothing medically, biologically, or pathologically to do with" their sued-for injuries.

As the *Pooshs* court explained, the "separate and distinct disease" rule espoused in that tobacco litigation was an exception to the longstanding general rules in California that "'[a] single tort can be the foundation for but one claim for damages,'" 51 Cal. 4th at 796 (quoting *DeRose v. Carswell*, 196 Cal. App. 3d 1011, 1024 n.5 (1987)), and that "'the infliction of appreciable and actual harm, however uncertain in amount, will commence the statutory period,'" *id.* (quoting *Davies v. Krasna*, 14 Cal.3d 502, 514 (1975)). *Pooshs* does not support Plaintiffs' attempt to expand its application beyond that case's limited factual context.

**B. Plaintiffs have failed to plead any basis for claims the alleged "Parent and Affiliated Riddell Defendants."**

Plaintiffs' attempted defense of their claims against the "parent and affiliated 'Riddell Defendants'" exemplifies the flaws in the manner in which they have pleaded the entirety of their claims against the Riddell Defendants. The *Maxwell* Plaintiffs maintain, without any supporting facts, that they "have stated a claim against the alleged parent and affiliated 'Riddell Defendants' because upon information and belief they, Plaintiffs sued all appropriate Riddell Defendants responsible for Plaintiff's injuries." (*Maxwell* Opp. at 3.) This argument is entirely circular. Moreover, immediately after that, they admit they do not know which, if any, of the named Riddell Defendants they should have sued; specifically, they admit "[i]t is possible that one or more Riddell Defendants may be subject to voluntary dismissal as not responsible for manufacturing or designing the Riddell helmets at issue," but argue, "at this stage, it is premature to determine which specific Riddell Defendants are responsible." (*Id.* at 3-4.)

1       Contrary to Plaintiffs' unsupported argument, the time to determine whether
2   they had any viable claims against the various "parent and affiliated Riddell
3   Defendants" was <u>before</u> they sued them, not afterward. *See, e.g., Timmons v.*
4   *Linvatec Corp.*, 263 F.R.D. 582, 585 (C.D. Cal. 2010) (Real, J.) ('allowing
5   plaintiffs to file first and investigate later . . . would be contrary to Rule 11(b),
6   which mandates an 'inquiry reasonable under the circumstances' into the
7   evidentiary support for all factual contentions prior to filing a pleading'"). In fact,
8   the *Maxwell* and *Pear* Plaintiffs go so far as to argue it was somehow the Riddell
9   Defendants' duty to tell Plaintiffs whom to sue. (*Id.* at 4 ("It should be noted that
10  counsel for the Riddell Defendants have never contacted Plaintiffs' counsel to
11  voluntarily stipulate which of the Riddell companies or company is responsible.").)
12  In short, Plaintiffs maintain that it is proper to sue in shotgun fashion multiple
13  defendants without proper factual basis, and then it is up to the Riddell Defendants
14  to clean it up. This position is wholly unsupported in law.

15      Moreover, Plaintiffs' argument misses the point. Plaintiffs named Riddell,
16  Inc. and All American Sports Corp. as the entities they believe were responsible
17  for "designing, manufacturing, selling and distributing" football helmets to the
18  NFL. (*See, e.g., Maxwell* FAC ¶¶ 77-78.) The issue on this motion to dismiss is
19  whether Plaintiffs have alleged any basis to hold the parent and affiliated
20  companies of those Defendants liable. They have not. To the contrary, their
21  oppositions admit that they have no such basis. (*Id.* at 3.) Thus, Plaintiffs fail to
22  show why the Court should not dismiss the claims against those entities with
23  prejudice.

24      The *Barnes* Plaintiffs fare no better. They point to California law holding
25  that a parent exercising sufficient control over the subsidiary's activities may be
26  held liable, but they fail to point to any facts alleged in their SAC as to any such
27  purported "control" by the Riddell parent entities. Moreover, their boilerplate
28

allegation that "each entity acted individually and in concert when committing the tortuous [sic] actions" is entirely conclusory and wholly devoid of any supporting facts. (*Barnes* Opp. at 6.)

C.    **Plaintiffs offer nothing but conclusory argument that their conclusory allegations pass *Twombly/Iqbal* muster.**

The *Barnes* Plaintiffs appear to acknowledge the *Twombly/Iqbal* standard, albeit, they mistakenly argue that they meet it. (*Barnes* Opp. at 5-6.) Meanwhile, the *Maxwell* and *Pear* Plaintiffs appear to reject this new standard. (*Maxwell* Opp. at 2-4.) In fact, they go so far as to attempt to revive the "no set of facts" standard from *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99 (1957), despite the Supreme Court famously putting that standard into permanent "retirement" in *Twombly*. 550 U.S. 544, 562-63, 127 S.Ct. 1955, 1969, 167 L.Ed 929 (2007) ("But the [*Conley* 'no set of facts'] passage so often quoted fails to mention this understanding on the part of the Court, and after puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."). Whether they accept or reject *Twombly/Iqbal*, the fact remains that their allegations fail to withstand scrutiny under that standard or Rules 8 and 12(b)(6).

1.    **Plaintiffs' fail to show that their purported design and manufacturing defect claims properly survive dismissal.**

Plaintiffs' defense of their purported design and manufacturing defect claims consists of nothing more than obstinate insistence that their claims are sufficient – a conclusory argument totally in keeping with the conclusory nature of their pleadings in general. (*Maxwell* Opp. at 4-9; *Barnes* Opp. at 7-10, 11-13.) Indeed, after reciting the bare elements of strict liability and negligence claims, Plaintiffs largely do nothing more than regurgitate their boilerplate and barebones allegations

1   from their amended complaints, which, as the Riddell Defendants have already

2   explained are insufficient under precedent from this Court and the Ninth Circuit.

3   (Riddell Defs.' Mot. at 8-14.)

4       For instance, the *Maxwell* Plaintiffs insist their strict liability allegations are

5   sufficient because they alleged "that the Riddell Defendants' helmets were

6   defective in design, unreasonably dangerous, and unsafe for their intended purpose

7   because they did not provide adequate protection against the foreseeable risk of

8   concussive brain injury." (*Maxwell* Opp. at 6.)  This is nothing more than a

9   conclusory allegation, akin to asserting that an automobile is defective because it

10  failed to provide adequate protection in a crash, without any statement of any

11  actual defect and how or why that allegedly defective condition resulted in the lack

12  of such protection.  Such conclusory pleading fails the plausibility standard.

13      Moreover, as the purported factual support for this conclusory assertion,

14  Plaintiffs allege that all Riddell helmets – each and every single one of them over

15  the course of nearly sixty years – purportedly lacked a "safe means of attenuating

16  and absorbing the foreseeable forces of impact in order to minimize and/or reduce

17  the forces and energy directed to the player's head" and had "a shock attenuating

18  system that was not safely configured." (*Id.* (parroting the language from *Maxwell*

19  FAC ¶¶ 609, 615).)  These assertions are not "facts."  They are merely puffed up

20  ways of making the same general and overarching conclusory assertion – i.e., that

21  the helmets were defective because they did not prevent concussions and

22  concussion-related injuries.  Yet, Plaintiffs have, despite amendment, pled no facts

23  whatsoever to render it plausible that a helmet would properly be considered

24  defective merely because it fails to prevent a concussion when used in high-

25  velocity, physical contact sports like football, or that helmets are expected to

26  provide such protection.

27

28

1       In addition, Plaintiffs insist that their allegations are sufficient because "the

2  lack of a safety device can be construed as a defect in design and may give rise to

3  strict liability; . . . ." (*Maxwell* Opp. at 9.) Yet, not only have Plaintiffs failed to

4  plead any facts of any actual safety <u>device</u> (as opposed to a vague characteristic,

5  like "shock attenuation) that the helmets purportedly lacked, but they have actually

6  pleaded that Riddell helmets, over the past sixty-plus years, have consistently

7  contained cutting-edge safety <u>advancements</u>. (*Maxwell* FAC ¶ 98(a)-(m).) For

8  instance, the *Maxwell* and *Pear* Plaintiffs alleged that in 1973, Riddell introduced

9  "an air cushion helmet whose interior consisted of individual vinyl air cushions

10  with layers of fitting and energy absorbing foam." (*Id.* ¶ 98(e).) "When a blow

11  was struck, the air in the cushion was expelled through a single vent, <u>greatly</u>

12  <u>reducing the initial impact</u>." (*Id.* (emphasis added).) Plaintiffs added, "[w]ith the

13  exhausting of the air cushion, the compressed fitting foam was further compressed,

14  <u>reducing impact</u>." (*Id.* (emphasis added).)

15       As a further example, the *Maxwell* and *Pear* Plaintiffs specifically allege

16  that in 1982, Riddell helmets contained a "combination of foam and liquid-filled

17  cells used for padding," which, on impact, "would be throttled down from one cell

18  to the next, <u>resulting in energy attenuation</u>." (*Id.* ¶ 98(h) (emphasis added).) In

19  short, the only actual "facts" Plaintiffs have pleaded support that Riddell helmets

20  contained "safe means of attenuating and absorbing the foreseeable forces of

21  impact in order to minimize and/or reduce the forces and energy directed to the

22  player's head." In other words, their own pleadings and allegations render their

23  conclusory design-defect assertions decidedly implausible.

24       The *Maxwell* and *Pear* Plaintiffs further demonstrate their misunderstanding

25  of the standards for proper pleading by insisting the allegation that the Riddell

26  Defendants committed "other acts of negligence that may be discovered during the

27  course of this matter" satisfies the *Twombly/Iqbal* standard. (*Maxwell* Opp. at 6.)

28

1  It does not.  *See, e.g., Iqbal,* 129 S.Ct. at 1951; *see also Timmons v. Linvatec*

2  *Corp.,* 263 F.R.D. 582, 585 (C.D. Cal. 2010) (Real, J.) ("a plaintiff who fails to

3  meet the pleading requirements of Rule 8 is not entitled to conduct discovery with

4  the hope that it might permit her to state a claim").

5      Also, Plaintiffs have still, despite prior amending their complaints, failed to

6  identify any facts supporting any defect whatsoever in manufacture.  And they

7  likewise have failed to show how their Amended Complaints properly – instead of

8  conclusorily – plead an alternative feasible design.  To the contrary, their

9  allegations of Riddell's significant safety advancements over the decades lead to

10  the only plausible inference that Riddell helmets were, throughout the past six

11  decades, the industry leader in helmet safety.  (*See Maxwell* FAC ¶ 98(a)-(m).)

12      Finally, the *Maxwell* and *Pear* Plaintiffs improperly attempt to bolster their

13  Amended Complaints by arguing that they alleged facts that they did not allege.

14  For example, they argue that "Plaintiffs allege on information and belief that the

15  NFL had a long-standing business relationship prior to 1989 where Riddell helmets

16  were solely promoted to league players." (*Maxwell* Opp. at 6 (citing *Maxwell* FAC

17  ¶ 76).)  This allegation appears nowhere in paragraph 76.[6]  The fact that the

18  *Maxwell* and *Pear* Plaintiffs must resort to misstating the content of their pleadings

19  only further demonstrates the patent deficiencies of those pleadings.

20          **2.    Plaintiffs likewise fail to show that their conclusory
                   warnings claims withstand dismissal.**
21

22      As with their strict liability and negligence claims, Plaintiffs' arguments in

23  support of their warnings claims are nothing more than adamant denial with no

24  factual substance.  (*Maxwell* Opp. at 8; *Barnes* Opp. at 10-11.)  Primarily, their

25  claims that the Riddell Defendants "failed to manufacture a helmet that could

26  attenuate and absorb the foreseeable forces of impact" fail the plausibility test

27  ───────────────────
[6] Even if true, and even if actually alleged, which it was not, this purported fact
28  would not save Plaintiffs' complaints from dismissal.

14

1   because, as the *Maxwell* and *Pear* Plaintiffs specifically allege, Riddell helmets <u>did</u>

2   contain features that would attenuate and absorb foreseeable forces of impact. (*See*

3   *Maxwell* FAC ¶ 98(a)-(m); *see also Barnes* Opp. at 10.)

4         Likewise, Plaintiffs' allegations that they had no reason to know of the

5   alleged harms from playing football while wearing a helmet also lack plausibility,

6   considering Plaintiffs' allegations of the allegedly widespread knowledge of such

7   dangers and the copious amounts of publicly available literature on the topic. (*See,*

8   *e.g., Maxwell* FAC ¶¶ 127(a)-(jj); *Barnes* SAC ¶ 64.)  Thus, their own allegations

9   of this purportedly widespread knowledge make Plaintiffs' attempted analogy to

10  the pharmaceutical case, *Finn v. G.D. Searle & Co.*, 200 Cal. Rptr. 870, 35 Cal. 3d

11  691 (1984), particularly inappropriate.   Specifically, contrary to the *Barnes*

12  Plaintiffs' attempted characterization of *Finn* as supporting that manufacturers can

13  be held liable for "failure to warn of dangers that were known to the scientific

14  community at the time they manufactured and distributed their product," Plaintiffs'

15  claims involve alleged dangers purportedly known throughout the general public

16  for decades – i.e., playing football, even in a helmet, can result in concussions with

17  long-term risks. (*Maxwell* FAC ¶¶ 127(a)-(jj); *Barnes* SAC ¶ 64.)

18        In fact, *Pear* Plaintiff Lional Dalton went even further in the recently filed

19  *Jones* action. *See supra* Section I.A.2.  In *Jones*, *Pear* Plaintiff Dalton alleges even

20  more examples of public knowledge of the risks of concussions from playing

21  football helmeted and even describes a seminar attended by NFL players at which

22  "neurological doctors confirmed that concussions can have long-term negative

23  health consequences and warned of the dangers associated with concussions and

24  with returning to play too soon after receiving a concussion." *Jones* Compl. (Ex.

25  "A") ¶ 61; *see also id.* ¶¶ 38-73.

26        All of these allegations in these three actions, as well as *Pear* Plaintiff

27  Dalton's *Jones* action, undermine the plausibility of Plaintiffs' allegations that the

28

Riddell Defendants owed them some duty to warn them of information they did not already know or to which they did not have access. Those allegations also undermine Plaintiffs' indignant assertions that it would be "irrational to suggest that Plaintiffs" were or should have been knowledgeable about the risks of playing football helmeted. (*See Barnes* Opp. at 11.) Moreover, those allegations also disprove their assertion that they relied on Riddell to warn them about the risks associated with concussions while playing football. (*See Maxwell* FAC ¶¶ 122, 609(d); *Barnes* SAC ¶¶ 267(e), 274(e), 283-85.)

### 3. Plaintiffs' concede that if the player-Plaintiffs' claims fail, the spouse-Plaintiffs loss-of-consortium claims also fail.

The spouse-Plaintiffs offer no defense of their loss-of-consortium claims other than to deny that the underlying player-Plaintiffs' claims are not deficient. Thus, Plaintiffs implicitly concede, as they should, that if the underlying player-Plaintiffs' claims are deficient, then the spouses' claims fail as well.

### 4. *Barnes* Plaintiff Lens's wrongful-death claim fails.

Preliminarily, it should be noted that as with *Pear* Plaintiff Dalton, *Barnes* Plaintiff Lens is also engaged in an improper multiplicity of actions. Specifically, the "Estate of Gregory Lens" is also a named plaintiff in the recently filed *Boyd v. National Football League*, No. 2:12-cv-00092-AB, filed on January 9, 2012 in the Eastern District of Pennsylvania, alleging generally the same claims and seeking the same monetary relief for the same alleged injuries.[7] *See Boyd* Compl. ¶ 69 (identifying the same Greg Lens). As with *Barnes* Plaintiff Dalton, Lens's estate did not name the Riddell Defendants in the *Boyd* action.

*Barnes* Plaintiff Lens acknowledges that her wrongful-death claim hinges on the sufficiency of the warnings and defect allegations, and that if those allegations are not properly supported, then her wrongful-death claim also fails. (*See Barnes* Opp. at 13.) Since those allegations fail, so does the wrongful-death claim.

---

[7] A copy of the *Boyd* complaint is attached as Exhibit "B."

1    Moreover, while Plaintiff Lens insists she sufficiently pleaded facts to
2    support medical causation between her husband's alleged concussions and his
3    death, she points only to her conclusory assertion that his "multiple post traumatic
4    brain injuries while playing professional football for the Atlanta Falcons and the
5    Arizona Cardinals during the 1970-1972 seasons, proximately resulted in his death
6    on November 18, 2009." (*Barnes* Opp. at 14.)   Those are not facts – they are
7    conclusions.  Also, the allegations in "¶¶ 42-54 of the SAC" to which Plaintiff
8    Lens refers contain no facts at all concerning her husband. (*Id.*)

9    Finally, Plaintiff Lens misunderstands the reference to her husband's death
10   coming 37 years after he retired from the NFL and after he last suffered a
11   concussion. (*Barnes* Opp. at 13.)  That reference was not, as she misapprehends,
12   with regard to the statute of limitations (though her action is clearly time-barred).
13   Rather, that reference was with regard to the fact that the roughly four decades
14   between when her husband last played football and his death renders a causal
15   relationship between his alleged concussions and his death all the more
16   implausible, thereby requiring more – and not less – factual support of actual
17   medical causation.  Despite this facial implausibility, Plaintiff Lens has provided
18   nothing but conclusory allegations as to medical causation.

19   **D.    Plaintiffs' total lack of opposition as to the deficiency of their
20          punitive-damages allegations warrants summary dismissal of that
          aspect of their actions.**

21   Despite the Riddell Defendants' pointed attack on Plaintiffs' deficient
22   allegations of purported "reckless" conduct and their supposed entitlement to
23   punitive damages, nowhere in their oppositions do Plaintiffs contest the deficiency
24   of these allegations. (Riddell Defs.' Notice of Mot. & Mot. to Dismiss Pls.' Am.
25   Compls. Pursuant to R. 8 & 12(b)(6) (ECF No. 72) at 19-21 (containing argument
26   under heading titled "Plaintiffs allege no plausible basis for punitive damages.").)
27   Their total failure to respond on this issue warrants the Court summarily granting
28

1   the Riddell Defendants' motion to dismiss as to Plaintiffs' request for punitive

2   damages. (*See Maxwell* FAC ¶¶ 173-75; *Barnes* SAC ¶¶ 122-23.)[8]

3       **E.      Plaintiffs' claims against the Riddell Defendants are inextricably**

4               **intertwined with the CBAs and, therefore, preempted.**

5       The *Maxwell* and *Pear* Plaintiffs provide no substantive opposition to

6   LMRA § 301 preemption of their claims against the Riddell Defendants.  Instead,

7   they argue only procedural defenses to preemption, specifically, 1) that the lack of

8   a CBA in effect when they filed suit precludes preemption, 2) that preemption

9   cannot apply to them because they are retirees and spouses, and 3) that the Riddell

10  Defendants cannot rely on the CBA for preemption because they were not

11  signatories to it.  (*Maxwell* Opp. at 10-14.)  As explained below, none of their

12  arguments has merit.    Moreover, by not addressing the Riddell Defendants'

13  arguments in any substantive fashion, they essentially concede that once the Court

14  dispenses with their baseless procedural arguments, it should grant the motion to

15  dismiss on preemption.    While the *Barnes* Plaintiffs do not join in their

16  counterparts' baseless procedural arguments, their opposition likewise fails.

17       **1.      The *Maxwell* and *Pear* Plaintiffs' argument that preemption**

18               **is unavailable based on their filing suit during a period**
            **when the current CBAs were not in effect lacks merit.**

19       The *Maxwell* and *Pear* Plaintiffs raise now an issue they never raised

20  previously in moving for remand – that the CBAs cannot be relied on for statutory

21  preemption under LMRA § 301 because, at the specific time they filed suit, there

22  was no current CBA in effect and the union had decertified.  (*Maxwell* Opp. at 10-

23  11.)  This argument is baseless, and none of the case law on which they attempt to

24  rely supports such a proposition.

25

26

27  [8] Plaintiffs likewise failed to respond to the request to dismiss their claims based on
    allegations of some duty owed to "all American Rules Football leagues and players
28  and the public at large."  (*See, e.g.*, Maxwell FAC ¶ 173.)

First, *Powell v. National Football League* dealt solely with whether the nonstatutory labor exemption defense under the Sherman Act continued to apply to bar the plaintiffs' antitrust action against the NFL, in light of the expiration of the collective bargaining agreement. The plaintiffs in *Powell* maintained that "the exemption expired no later than December of 1989 and thus the court may consider the merits of the *McNeil* plaintiffs' antitrust claims because they involve player restraints imposed by the NFL defendants <u>after</u> February 1, 1990." 764 F. Supp. 1351, 1354 (D. Minn. 1991) (emphasis added). Not only do Plaintiffs' claims not involve the nonstatutory labor exemption defense under the Sherman Act, but the conduct here which provides the basis for preemption occurred while the CBAs were in effect, not after, as in *Powell*. Thus, *Powell* is inapposite.

Plaintiffs' reliance on *Brady v. National Football League*, 779 F. Supp. 2d 992 (D. Minn. 2011), is similarly misplaced. Plaintiffs rely on *Brady* to argue that "the nation's labor laws have always applied only where an action involves or grows out of a labor dispute," and that "[s]uch a labor relationship exists only where a union exists to bargain on behalf of its members." (*Id.* at 10 (quoting *Brady*, 779 F. Supp. at 1042).) While Plaintiffs' cite to the Eighth Circuit's reversal of the district court's ruling in *Brady*, Plaintiffs maintain that reversal was "on other grounds," and that their quoted proposition from the district court opinion still stands. (*Id.*) They are incorrect. The Eighth Circuit reversed squarely on the very point on which Plaintiffs rely on the *Brady* district court's ruling. Specifically, addressing the district court's holding that there could be no "labor dispute" because there was no union in existence at the time of the dispute, the Eighth Circuit held that federal law does "<u>not</u> require the present existence of a union to establish a labor dispute." *Brady v. Nat'l Football League*, 644 F.3d 661, 673 (8th Cir. 2011) (emphasis added); *see also id.* at 672 ("Further confirmation that the present existence of a union is <u>not</u> required for a 'labor dispute' comes

1    from *NLRB v. Washington Aluminum Co.*, 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d
2    298 (1962)." (emphasis added)).  Thus, the very proposition for which Plaintiffs
3    rely on *Brady* is no longer good law.

4            Plaintiffs' also misplace their reliance on *Office and Professional Employees*
5    *Insurance Trust Fund v. Laborers Funds Administrative Office of Northern*
6    *California, Inc.*, 783 F.2d 919 (9th Cir. 1986) ("*OPEIT*").  *OPEIT* dealt with
7    whether the district court had jurisdiction to hear a dispute involving a benefits
8    trust fund in which the plaintiff sought to recover from union laborers trust fund
9    contributions for the period after their collective bargaining agreement expired.
10   783 F.2d at 920-21.  The Ninth Circuit held the district court did not have
11   jurisdiction, but not for the reason Plaintiffs argue.  (*Maxwell* Opp. at 10 (arguing
12   mistakenly that *OPEIT* stands for the proposition that "[a] federal court has
13   jurisdiction over a suit for violation of a CBA only while the agreement is in
14   force").)  Rather, the Ninth Circuit held there was no subject matter jurisdiction
15   because the dispute involved solely rights under the Employee Retirement Income
16   Security Act ("ERISA") and was thus subject to the National Labor Relations
17   Board's "exclusive primary jurisdiction" to decide such matters.  783 F.2d at 921-
18   22 (citing *Cement Masons Health & Welfare Trust Fund for No. Cal. v. Kirkwood-*
19   *Bly, Inc.*, 520 F. Supp. 942 (N.D. Cal. 1981), *aff'd*, 692 F.2d 641 (9th Cir. 1982);
20   *Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co.*,
21   779 F.2d 497 (9th Cir. 1985)).  Plaintiffs' actions do not implicate ERISA in any
22   way.  Thus, there is no lack of jurisdiction under *OPEIT*.

23           Plaintiffs' reliance on *Dosier v. Burns International Security Services* is
24   likewise misplaced because in *Dosier*, as in *Powell*, the conduct giving rise to the
25   plaintiff's claims occurred <u>after</u> the expiration of the collective bargaining
26   agreement.  729 F.2d 695, 696-97 (N.D. Cal. 1990) (explaining that the CBA

27

28

CV 11-8394 R (MANx)

**Exhibit "A" - Page 31**

expired in 1984 and the acts for which the plaintiff sued occurred in 1986). *Dosier* neither stands for the proposition Plaintiffs urge nor supports their arguments.

### 2. The *Maxwell* and *Pear* Plaintiffs' retirees/spouses argument fails.

The *Maxwell* and *Pear* Plaintiffs' argument about the CBAs not covering them as retirees and spouses is simply a retread of the same failed argument from the remand phase. (*See Maxwell* Opp. at 11-12; *see also Maxwell* ECF No. 21 at 17.) For the same reasons that argument failed then, it fails now.

As the Riddell Defendants previously explained, courts have already rejected the same argument Plaintiffs assert. Specifically, in *Atwater v. National Football League Players' Association*, the plaintiffs there raised the same argument that because certain of the *Atwater* plaintiffs were retired when they suffered their alleged economic injuries, LMRA § 301 could not preempt their claims. 626 F.3d 1170, 1184-85 (11th Cir. 2010). The *Atwater* court rejected this argument as irrelevant, noting that the "relevant question for § 301 preemption is, again, whether the court will be required to interpret or apply the CBA to resolve the retirees' claims." *Id.* at 1185; *id.* at 1184 (explaining, after finding preemption, that "[t]he status of some of Plaintiffs as retirees does not change this analysis"); *see also Givens v. Tenn. Football League*, 684 F. Supp. 2d 985, 990 (M.D. Tenn. 2010) (applying CBA in effect "at the time of the conduct complained of" to resolve retired player-plaintiff's tort claims).

The same result applies to the spouse-Plaintiffs. Indeed, among the plaintiffs whose claims the *Atwater* court found preempted under LMRA § 301 was "the spouse of one of the players," Letha Atwater. 626 F.3d at 1174.

### 3. The *Maxwell* and *Pear* Plaintiffs' non-signatories argument likewise lacks merit.

The argument that "[t]ort claims are only preempted by Section 301 when the claims are brought against a party to the CBA . . ." is another retread from the

1  remand phase. (*Maxwell* Opp. at 12 (citing *Allis-Chambers Corp. v. Lueck*, 471

2  U.S. 202, 220 (1985).) This argument also remains incorrect.

3       First, *Allis-Chambers* does not support that non-signatories or non-parties to

4  a collective bargaining agreement cannot assert preemption based on that

5  agreement. In fact, that case mentioned nothing about non-signatories or

6  nonparties to a collective bargaining agreement. *See generally* 471 U.S. 202, 105

7  S.Ct. 1904.

8       Second, while Plaintiffs also cite to and quote *Stringer v. National Football

9  League* as purported authority for their argument that non-parties cannot rely on a

10  CBA for preemption, in fact, *Stringer* held exactly the opposite. (See *Maxwell*

11  Opp. at 13.) In *Stringer*, the plaintiffs made the similar threshold argument that

12  "because Defendants are not signatories to the CBA, they are precluded from

13  raising a defense of preemption under § 301." 474 F. Supp. 2d 894, 901 (S.D.

14  Ohio 2007). Explaining the question before it as "whether non-signatories to a

15  CBA can invoke § 301 preemption as a defense to a plaintiff's state law claims,"

16  the *Stringer* court noted, "[s]everal courts have held that they can." *Id.* at 901-02

17  (first emphasis in original; second emphasis added) (citing *Int'l Union, United

18  Mine Workers of Am. v. Covenant Coal Corp.*, 977 F.2d 895, 899-900 (4th Cir.

19  1992); *DaShields v.Robertson*, No. 99-1124, 2000 WL 564024, at *2 n.3 (4th Cir.

20  May 10, 2000) ("section 301 can preempt claims against non-signatories to a

21  collective bargaining agreement"). After discussing the abundance of law holding

22  that non-signatories can, in fact, assert CBA preemption, the *Stringer* court

23  concluded that the "Defendants' [including Defendants Riddell, Inc. and All

24  American Sports Corp.] status as non-signatories to the CBA does not prevent

25  them from raising the preemption defense." *Id.*

26       *Stringer*'s rejection of Plaintiffs' non-signatory argument is consistent with

27  law from other jurisdictions as well. *See, e.g., Atwater v. Nat'l Football League*

28

*Players Ass'n,* 626 F.3d 1170, 1177-78 (11th Cir. 2010). Plaintiffs entirely ignore this directly on-point law, as they did at the remand phase, instead relying on irrelevant and wholly distinguishable cases. (*See Maxwell* Opp. at 12-13.) Indeed, none of the cases Plaintiffs cite – *Rozay's Transfer*, *Painting and Decorating Contractors*, or *Teamsters Local Union No. 117* – address whether a non-signatory to a CBA may nonetheless assert § 301 preemption based on the fact that the claims against it are inextricably intertwined with that CBA.

> **4.** **The *Barnes* Plaintiffs ignore *Stringer* and instead improperly conflate the separate "arising under" and "inextricably intertwined" analyses.**

This Court has already found *Stringer* and its "degree of care"/inextricably intertwined analysis to be "persuasive." (Order Denying Pls.' Mot. to Remand (*Barnes* ECF No. 58) at 2:20-21.) The Riddell Defendants thoroughly explained how that same analysis leads to a similar finding of preemption of Plaintiffs' claims here as well. (Riddell Defs.' Mot. Dismiss Second Am. Compl. (*Barnes* ECF No. 69) at 21-25.) Nonetheless, despite this Court's finding regarding *Stringer*, the *Barnes* Plaintiffs wholly ignore it in their opposition and do not cite it at all. (*See generally Barnes* Opp. at 14-17.)[9] Their failure to address *Stringer*, after this Court's ruling finding that case "persuasive," is a tacit admission that they have no valid basis to contest the applicability of that opinion's "degree of care" analysis to Plaintiffs' claims against the Riddell Defendants. As previously explained, that same "degree of care" analysis applies to all of Plaintiffs' claims against the Riddell Defendants.

In addition to ignoring the relevant analysis, the *Barnes* Plaintiffs' argument improperly conflates the two standards for § 301 preemption and focus the lion's

---

[9] The *Barnes* Plaintiffs refer back to their remand filings, but those predated this Court's December 8, 2011 Order and its discussion of *Stringer*. The *Barnes* Plaintiffs fail to address *Stringer* in light of this Court's findings of that opinion's persuasiveness, especially with regard to its "degree of care" analysis.

1    share of their argument on the incorrect and irrelevant premise that their claims
2    against the Riddell Defendants are not preempted because those claims do not
3    "arise from the CBA." (*See Barnes* Opp. at 16-17.) The Riddell Defendants are
4    not arguing and have never argued that those claims "arise from the CBA."
5    Rather, they have always argued that Plaintiffs' claims against them are
6    substantially dependent on and inextricably intertwined with the CBAs. (*See, e.g.*,
7    Riddell Defs.' Mot. at 22.) Thus, the *Barnes* Plaintiffs' discussion of whether their
8    claims "arise from the CBA," "came into being" from the CBA, or had their
9    "origin of duty" in the CBA is entirely irrelevant. (*See Barnes* Opp. at 14-17.)

10       **F.    The Court should dismiss without leave to amend.**

11       Although, generally, leave to amend should be freely given when justice so
12   requires, "leave to amend is not to be granted automatically." *Jackson v. Bank of*
13   *Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). Granting leave to amend is always
14   left to the sound discretion of the district court, which decision will be upheld
15   absent a clear abuse of discretion. *Jackson*, 902 F.2d at 1387. "[I]n determining
16   whether leave to amend is appropriate, the district court considers the presence of
17   any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or
18   futility." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir.
19   2001) (citation omitted). "The district court's discretion to deny leave to amend is
20   particularly broad where plaintiff has previously amended the complaint." *Allen v.*
21   *City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).

22       The Court should deny leave to amend if it determines that "allegation(s) of
23   other facts consistent with the challenged pleading could not possibly cure the
24   deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d
25   1393, 1401 (9th Cir. 1986); *see also Thinket Ink Info. Res., Inc. v. Sun*
26   *Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).

27

28

1    Here, the Court should exercise its discretion to deny Plaintiffs leave to
2    amend. Primarily, Plaintiffs' additional amendments would be futile since they
3    cannot cure the numerous deficiencies in their Complaints. Indeed, the *Maxwell*
4    and *Pear* Plaintiffs have already amended their Complaints once and the *Barnes*
5    Plaintiffs have amended their Complaint twice, yet their prior amendments have all
6    failed to remedy their Complaints' numerous fatal deficiencies. *See McGlinchy v.*
7    *Shell Chemical Co.*, 845 F.2d 802, 809-10 (9th Cir. 1988) ("Repeated failure to
8    cure deficiencies by amendments previously allowed is . . . valid reason for a
9    district court to deny a party leave to amend.").

10    Moreover, while Plaintiffs generically ask for leave to amend, they have not
11    explained what amendments they could make to cure their still-deficient
12    Complaints. Their failure to explain this, on top of the failure to remedy any of the
13    deficiencies in their prior amendments, further supports denying leave to amend
14    the Complaints yet again. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051-52
15    (9th Cir. 2008) (concluding amendment would be futile where plaintiffs already
16    filed amended complaint containing same defects as their original complaint and
17    failed to state what additional facts they would plead if given leave to amend).

18    **II.    <u>CONCLUSION</u>**

19    Plaintiffs have failed to provide this Court with any valid reason why it
20    should not dismiss their claims, in their entirety, and with prejudice. For the
21    foregoing reasons, as well as those in its opening memorandum, the Riddell
22    Defendants ask this Court to do exactly that.

23    DATED:    January 23, 2012          BOWMAN AND BROOKE LLP
24
25                                         By:  /s/ Paul G. Cereghini
                                                Paul G. Cereghini
26                                              Vincent Galvin
27                                              Marion V. Mauch
                                                Attorneys for the Riddell Defendants
28