Exhibit 4



# Collective Bargaining Agreement



# MANAGEMENT COUNCIL

# Table of Contents

| | | Page |
|---|---|---|
| PREAMBLE | | 6 |
| Article I. | GOVERNING AGREEMENT | 6 |
| Section 1. | Conflicts | 6 |
| Section 2. | Full Force and Effect | 6 |
| Section 3. | Implementation | 7 |
| Section 4. | Management Rights | 7 |
| Article II. | SCOPE OF AGREEMENT | 7 |
| Section 1. | Scope | 7 |
| Section 2. | Arbitration | 7 |
| Article III. | NO STRIKE/LOCKOUT/SUIT | 8 |
| Section 1. | No Strike/Lockout | 8 |
| Section 2. | No Suit | 8 |
| Article IV. | UNION SECURITY | 9 |
| Section 1. | Union Security | 9 |
| Section 2. | Check-off | 9 |
| Section 3. | NFLPA Meetings | 9 |
| Section 4. | Disputes | 9 |
| Article V. | PLAYER SECURITY | 10 |
| Section 1. | No Discrimination | 10 |
| Section 2. | Personal Appearance | 10 |
| Article VI. | CLUB DISCIPLINE | 10 |
| Section 1. | Maximum Discipline | 10 |
| Section 2. | Published Lists | 10 |
| Section 3. | Uniformity | 10 |
| Section 4. | Disputes | 10 |
| Article VII. | NON-INJURY GRIEVANCE | 11 |
| Section 1. | Definition | 11 |
| Section 2. | Initiation | 11 |
| Section 3. | Filing | 11 |
| Section 4. | Player-Club Relations Committee | 12 |
| Section 5. | Appeal | 12 |
| Section 6. | Arbitrators | 13 |
| Section 7. | Hearing | 13 |
| Section 8. | Integrity and Public Confidence | 14 |
| Section 9. | Miscellaneous | 14 |
| Section 10. | Representation | 14 |
| Section 11. | Costs | 14 |
| Article VIII. | COMMISSIONER DISCIPLINE | 14 |
| Section 1. | Commissioner Discipline | 14 |
| Section 2. | Miscellaneous | 15 |
| Section 3. | Representation | 15 |
| Section 4. | Costs | 15 |
| Article IX. | INJURY GRIEVANCE | 15 |
| Section 1. | Definition | 15 |
| Section 2. | Filing | 16 |
| Section 3. | Answer | 16 |
| Section 4. | Neutral Physician | 17 |
| Section 5. | List | 17 |
| Section 6. | Appeal | 17 |
| Section 7. | Hearing | 18 |
| Section 8. | Miscellaneous | 18 |
| Section 9. | Expenses | 18 |
| Section 10. | Pension Credit | 18 |
| Section 11. | Payment | 18 |
| Article X. | INJURY PROTECTION | 19 |
| Section 1. | Qualification | 19 |
| Section 2. | Benefit | 19 |
| Section 3. | Disputes | 19 |

                                                                    *Page*

Article XI.   COMMITTEE ON SAFETY AND WELFARE..   20
    Section   1.   Composition ........................................ 20
    Section   2.   Meetings ........................................... 20
    Section   3.   Powers ............................................. 20
    Section   4.   Scope .............................................. 20
    Section   5.   Consultants ........................................ 20
    Section   6.   Appointments ...................................... 20
    Section   7.   Initial Tasks ...................................... 21
    Section   8.   Playing Rules ...................................... 21
    Section   9.   Competition Committee ..................... 21
Article XII.   NFL PLAYER CONTRACT ....................... 21
    Section   1.   Form ............................................... 21
    Section   2.   Changes ............................................ 22
Article XIII.   COLLEGE DRAFT ............................... 22
    Section   1.   Time of Draft ..................................... 22
    Section   2.   Number of Choices ........................... 22
    Section   3.   Required Tenders ............................. 22
    Section   4.   Exclusive Right ................................. 24
    Section   5.   Subsequent Draft .............................. 24
    Section   6.   No Subsequent Draft ......................... 24
    Section   7.   No Required Tender ......................... 25
    Section   8.   Other Professional Team .................. 25
    Section   9.   Return to NFL ................................. 25
    Section  10.   Unlimited Terms .............................. 26
    Section  11.   Assignment ...................................... 26
    Section  12.   Notice ............................................. 26
Article XIV.   OPTION CLAUSE ............................... 26
    Section   1.   Vested Players ................................. 26
    Section   2.   Rookies and Non-Vested Players .... 26
    Section   3.   Compensation ................................... 27
Article XV.   RIGHT OF FIRST REFUSAL/
              COMPENSATION ............................... 27
    Section   1.   Applicability .................................... 27
    Section   2.   Contract Expiration Date ............... 27
    Section   3.   Offer Sheet ...................................... 27
    Section   4.   First Refusal Exercise Notice ......... 28
    Section   5.   No First Refusal Exercise Notice .... 28
    Section   6.   One Offer Sheet .............................. 28
    Section   7.   Principal Terms ............................... 28
    Section   8.   Non-Principal Terms ........................ 29
    Section   9.   Qualifying Offer .............................. 29
    Section  10.   Qualification for First Refusal ........ 29
    Section  11.   Qualification for Compensation ...... 30
    Section  12.   Amount of Compensation ............... 31
    Section  13.   Absence of Choice ........................... 31
    Section  14.   Copies ............................................. 32
    Section  15.   Circulation of Veteran Free
                   Agent List .................................... 32
    Section  16.   Notice ............................................. 32
    Section  17.   Re-Signing ...................................... 32
    Section  18.   Extreme Personal Hardship ............. 33
First Refusal Offer Sheet ................................... 34
First Refusal Exercise Notice ............................ 35
First Refusal/Compensation Charts .............. 36, 37
Article XVI.   WAIVER SYSTEM ............................... 38
    Section   1.   Release ........................................... 38
    Section   2.   Contact ........................................... 38
    Section   3.   Ineligibility .................................... 38
Article XVII.   EXPANSION ................................... 39

*Page*

| | | | |
|---|---|---|---|
| Section | 1. | Seattle and Tampa Bay | 39 |
| Section | 2. | Veteran Allocation | 39 |
| Section | 3. | Future Expansion | 39 |
| Article XVIII. | | OTHER PROVISIONS | 39 |
| Section | 1. | CFL Rule | 39 |
| Section | 2. | Physically Unable to Perform | 39 |
| Section | 3. | Non-Football Injury | 39 |
| Article XIX. | | SQUAD SIZE | 40 |
| Section | 1. | Active List | 40 |
| Section | 2. | Pre-Season | 40 |
| Section | 3. | Inactive List | 40 |
| Section | 4. | Moves | 40 |
| Section | 5. | Definitions | 40 |
| Article XX. | | OFF-SEASON TRAINING CAMPS | 41 |
| Section | 1. | Number | 41 |
| Section | 2. | Length | 41 |
| Section | 3. | Expenses | 41 |
| Section | 4. | Contact | 41 |
| Section | 5. | Injuries | 41 |
| Article XXI. | | PRE-SEASON TRAINING CAMPS | 41 |
| Section | 1. | Definition | 41 |
| Section | 2. | Room and Board | 42 |
| Section | 3. | Rookie Per Diem | 42 |
| Section | 4. | Veteran Per Diem | 42 |
| Section | 5. | 16 and 4 | 42 |
| Section | 6. | Reporting | 42 |
| Section | 7. | Telephones | 42 |
| Section | 8. | Expenses | 42 |
| Article XXII. | | SALARY MINIMA AND PAYMENT | 43 |
| Section | 1. | Definition | 43 |
| Section | 2. | Rookie Minimum | 43 |
| Section | 3. | Rookie Payment | 43 |
| Section | 4. | Veteran Minima | 43 |
| Section | 5. | Pre-July 19, 1974 | 43 |
| Section | 6. | Post-July 19, 1974 | 44 |
| Section | 7. | 16 and 4 | 44 |
| Section | 8. | Individual Negotiations | 44 |
| Section | 9. | Right to Representation | 44 |
| Section | 10. | Method of Payment | 44 |
| Section | 11. | 10% Grievance | 44 |
| Article XXIII. | | MEAL ALLOWANCES | 45 |
| Section | 1. | Reimbursement | 45 |
| Section | 2. | Travel Day | 45 |
| Article XXIV. | | DAYS-OFF | 45 |
| Section | 1. | Rate | 45 |
| Section | 2. | Requirements | 45 |
| Article XXV. | | MOVING AND TRAVEL EXPENSES | 45 |
| Section | 1. | Qualification | 45 |
| Section | 2. | Reimbursement | 46 |
| Section | 3. | Trip for Wife | 47 |
| Section | 4. | Transportation | 47 |
| Article XXVI. | | PLAY-OFF GAMES | 47 |
| Section | 1. | Divisional | 47 |
| Section | 2. | Wild-Card | 47 |
| Section | 3. | Payment | 47 |
| Article XXVII. | | CONFERENCE CHAMPIONSHIP GAMES | 48 |
| Section | 1. | Compensation | 48 |
| Section | 2. | Payment | 49 |

Page

Article XXVIII.   SUPER BOWL GAME ...................... 49
  Section   1.  Compensation ..................................... 49
  Section   2.  Payment ............................................... 50
Article XXIX.   PRO BOWL GAME ........................... 50
  Section   1.  Compensation ..................................... 50
  Section   2.  Selection .............................................. 50
  Section   3.  Wives .................................................... 50
  Section   4.  Injury ................................................... 50
  Section   5.  Payment ............................................... 50
Article XXX.   GROUP INSURANCE ........................... 51
  Section   1.  Life ....................................................... 51
  Section   2.  Major Medical .................................... 51
  Section   3.  Dental .................................................. 51
  Section   4.  Other Benefits .................................... 51
  Section   5.  Joint Board ........................................ 51
Article XXXI.   RETIREMENT PLAN ......................... 51
  Section   1.  Maintenance ........................................ 51
  Section   2.  Contributions ...................................... 51
  Section   3.  1974 and 1975 ..................................... 52
  Section   4.  Number of Clubs ................................ 53
  Section   5.  Obligations .......................................... 53
  Section   6.  Retirement Board ................................ 53
  Section   7.  Investment .......................................... 53
  Section   8.  Amendments ........................................ 54
  Section   9.  Conformance ....................................... 55
  Section  10.  Reopener ............................................. 55
Article XXXII.   TERMINATION PAY .......................... 56
  Section   1.  14 and 6 .............................................. 56
  Section   2.  16 and 4 .............................................. 56
  Section   3.  One Week ............................................ 57
Article XXXIII.   WORKMEN'S COMPENSATION ......... 57
  Section   1.  Benefits ............................................... 57
  Section   2.  Rejection of Coverage ....................... 57
Article XXXIV.   MISCELLANEOUS ............................ 57
  Section   1.  Endorsements ...................................... 57
  Section   2.  Appearances ........................................ 57
  Section   3.  Promotion ........................................... 58
  Section   4.  Deductions .......................................... 58
  Section   5.  Public Statements .............................. 58
  Section   6.  Addresses ............................................ 58
  Section   7.  NFLPA Tickets .................................... 58
  Section   8.  Player Tickets ..................................... 58
  Section   9.  Tests ..................................................... 58
  Section  10.  Club Fines ........................................... 59
  Section  11.  League Security ................................... 59
Article XXXV.   RETENTION OF BENEFITS ................ 59
  Section   1.  Individual Benefits ............................. 59
  Section   2.  Group Benefits .................................... 59
Article XXVI.   DURATION OF AGREEMENT .............. 59
  Section   1.  Effective Date ...................................... 59
  Section   2.  Termination Date ............................... 59
  Section   3.  Stipulation and Settlement
                       Agreement ...................................... 59
Appendix A   APPLICABLE NFL CONSTITUTIONAL
                       PROVISIONS WILL BE AVAILABLE
                       ON A FUTURE DATE
Appendix B   CHECK-OFF AUTHORIZATION ............... 61
Appendix C   ENFORCEMENT OF UNION SECURITY . 63
Appendix D   CLASS ACTION SETTLEMENT .............. 64

# PREAMBLE

THIS AGREEMENT is made and entered into on the 1st day of March, 1977, by and between the National Football League Players Association (hereinafter referred to as the "NFLPA") on behalf of present and future employee players in the National Football League (hereinafter referred to as the "NFL") and the National Football League Management Council (hereinafter referred to as the "Management Council") on behalf of the present and future employer member clubs of the NFL (hereinafter referred to as the "clubs"):

WHEREAS, the NFLPA is recognized by the Management Council as the sole and exclusive bargaining representative of present and future professional football players employed by the clubs and as set forth in the NLRB Certification dated January 22, 1971; and

WHEREAS, the Management Council is recognized by the NFLPA as the collective bargaining representative of the clubs, and any additional clubs which may become members of the NFL during the term of this Agreement, acting individually, collectively or through their agents; and

WHEREAS, the NFLPA and the Management Council mutually acknowledge that this Agreement is the product of bona fide, arms-length collective bargaining;

NOW, THEREFORE, in consideration of the mutual covenants and promises herein contained, it is hereby agreed as follows:

# ARTICLE I

## GOVERNING AGREEMENT

Section 1. **Conflicts:** The provisions of this Agreement supersede any conflicting provisions in the Standard Player Contract, the NFL Player Contract, the NFL Constitution and Bylaws, the Bert Bell NFL Player Retirement Plan and Trust Agreement, or any other document affecting terms and conditions of employment of NFL players, and all players, clubs, the NFLPA, the NFL, and the Management Council will be bound hereby.

Section 2. **Full Force and Effect:** Any provisions of the Standard Player Contract, the NFL Player Contract, the NFL Constitution and Bylaws (those provisions per-

6

taining to terms and conditions of employment of NFL players attached hereto as Appendix A[1]), the Bert Bell NFL Player Retirement Plan and Trust Agreement, or any other document affecting terms and conditions of employment of NFL players, which are not superseded by this Agreement, will remain in full force and effect for the continued duration of this Agreement, and, where applicable, all players, clubs, the NFLPA, the NFL, and the Management Council will be bound thereby.

Section 3. **Implementation:** The NFLPA and Management Council will use their best efforts to faithfully carry out the terms and conditions of this Agreement and to see that the terms and conditions of this Agreement are carried out in full by players and clubs.

Section 4. **Management Rights:** The NFL clubs maintain and reserve the right to manage and direct their operations in any manner whatsoever, except as specifically limited by the provisions of this Agreement.

# ARTICLE II

## SCOPE OF AGREEMENT

Section 1. **Scope:** This Agreement represents the complete understanding of the parties on all subjects covered herein, and there will be no change in the terms and conditions of this Agreement without mutual consent. Except as otherwise provided in Article XXXI, Section 10 on Retirement Plan, the NFLPA and the Management Council waive all rights to bargain with one another concerning any subject covered or not covered in this Agreement for the duration of this Agreement; provided, however, that except as provided otherwise in this Agreement, if any proposed change in the NFL Constitution and Bylaws during the term of this Agreement could significantly affect the terms and conditions of employment of NFL players, then the Council will give the NFLPA notice of and negotiate the proposed change in good faith.

Section 2. **Arbitration:** The question of whether or not the parties engaged in good faith negotiations, or whether any proposed change in the NFL Constitution and Bylaws would violate or render meaningless any provision of this Agreement, may be the subject of a non-injury grievance under Article VII of this Agreement. If the

outside arbitrator finds that either party did not engage in good faith negotiations, or that the proposed change would violate or render meaningless any provision of this Agreement, he may enter an appropriate order, including to cease and desist from implementing or continuing the practice or proposal in question; provided, however, that the outside arbitrator may not compel either party to this Agreement to agree to anything or require the making of a concession by either party in negotiations.[1]

## ARTICLE III

## NO STRIKE/LOCKOUT/SUIT

Section 1. **No Strike/Lockout:** Except as otherwise provided in Article XXXI, Section 10 on Retirement Plan, neither the NFLPA nor any of its members will engage in any strike, work stoppage, or other concerted action interfering with the operations of the NFL or any club for the duration of this Agreement, and no club, either individually or in concert with other clubs, will engage in any lockout for the duration of this Agreement.

Section 2. **No Suit:** Upon court approval of the Stipulation and Settlement Agreement referred to in Article XXXVI, Section 3 of this Agreement, the NFLPA agrees that it will not sue, nor support financially or administratively, any suit against the NFL or any club· with respect to any claim relating to any aspect of the NFL rules, including, without limitation, the Standard Player Contract, the NFL Player Contract, the NFL Constitution and Bylaws, the college draft, the option clause, the right of first refusal or compensation, the waiver system, the trading of players, tampering, and the maintenance of certain reserve lists; provided, however, that nothing contained in this Section 2 will prevent the NFLPA or any player from asserting that any club, acting individually or in concert with other clubs, or the Management Council has breached the terms of this Agreement, the Standard Player Contract, the NFL Player Contract, or the NFL Constitution and Bylaws, and from processing such asserted breach as a non-injury grievance under Article VII of this Agreement.

---

[1] Appendix A has not been prepared as yet.

# ARTICLE IV

## UNION SECURITY

Section 1. **Union Security:** Every NFL player has the option of joining or not joining the NFLPA; provided, however, that as a condition of employment commencing with the beginning of the 1977 pre-season training camp and for the duration of this Agreement and wherever and whenever legal: (a) any active player who is or later becomes a member in good standing of the NFLPA must maintain his membership in good standing in the NFLPA; and (b) any active player (including a player in the future) who is not a member in good standing of the NFLPA and whose initial employment with an NFL club began or begins subsequent to February 1, 1974 must, on the 30th day following the beginning of his employment or the commencement of the 1977 pre-season training camp, whichever is later, pay, pursuant to Section 2 below or otherwise, to the NFLPA an annual service fee in the same amount as any initiation fee required of members of the NFLPA and the annual dues.

Section 2. **Check-Off:** Commencing with the 1977 season, each club will check-off the initiation fee and annual dues or service charge, as the case may be, in equal weekly or biweekly installments from each pre-season and regular season pay check, beginning with the first pay check after the date of the first pre-season squad cutdown, of each player for whom a current check-off authorization (copy attached hereto as Appendix B and made a part of this Agreement) has been provided to the club. The club will forward the check-off monies to the NFLPA within seven days of the check-off.

Section 3. **NFLPA Meetings:** The NFLPA will have the right to conduct two meetings on club property each year, one during the pre-season and another during the regular season, provided that the player rep or NFLPA office has given the club at least seven days notice of its desire to hold such a meeting. No meeting will be held at a time which would disrupt a coach's normal team schedule.

Section 4. **Disputes:** Any dispute over compliance with, or the interpretation, application or administration of this Article IV will be processed pursuant to Article VII,

9

Non-Injury Grievance. Any decision of an outside arbitrator pursuant thereto will constitute full, final and complete disposition of the dispute, and will be binding on the player(s) and club(s) involved and the parties to this Agreement.

## ARTICLE V

## PLAYER SECURITY

Section 1. **No Discrimination:** There will be no discrimination in any form against any player by the Management Council, any club, or by the NFLPA because of race, religion, national origin, or activity on behalf of the NFLPA.

Section 2. **Personal Appearance:** No player will be disciplined because of his personal appearance, including hair length, facial hair or dress; provided, however, that clubs may make and enforce reasonable rules governing players' appearance on the field and in public places while representing the clubs.

## ARTICLE VI

## CLUB DISCIPLINE

Section 1. **Maximum Discipline:** The NFLPA and the Management Council will agree upon and publish a maximum discipline schedule to be utilized beginning with the 1977 season; such schedule will include maximum discipline for offenses or categories of offenses.

Section 2. **Published Lists:** All clubs must publish and make available to all players at the commencement of pre-season training camp a complete list of the discipline which can be imposed for designated offenses within the limits set by the maximum schedule referred to in Section 1 above.

Section 3. **Uniformity:** Discipline will be imposed uniformly within a club on all players for the same offense; however, the club may specify the events which create an escalation of the discipline, provided the formula for escalation is uniform in its application.

Section 4. **Disputes:** Any dispute involved in club discipline may be made the subject of a non-injury grievance under Article VII of this Agreement, Non-Injury Grievance.

# ARTICLE VII
## NON-INJURY GRIEVANCE

Section 1. **Definition:** Any dispute (hereinafter referred to as a "grievance") involving the interpretation or application of, or compliance with, provisions of this Agreement (except as provided otherwise in Section 8 of this Article VII, in Article VIII, and in Article IX, the Standard Player Contract (except as provided in Paragraph 8 of the Standard Player Contract), the NFL Player Contract (except as provided in Paragraph 3 of the NFL Player Contract), the Bert Bell NFL Player Retirement Plan and Trust Agreement (only when submitted by a majority of the Retirement Board pursuant to Article XXXI, Section 6 of this Agreement), and the NFL Constitution and Bylaws (those provisions pertaining to terms and conditions of employment of NFL players, will be available at a future date in App. A),[1] will be resolved exclusively in accordance with the procedure set forth in this Article.

Section 2. **Initiation:** A grievance may be initiated, as set forth in Section 3 below, by a player, a club, the Management Council, or the NFLPA except that the NFLPA may not, without the approval of the player involved, initiate a grievance involving player discipline which has been imposed by a club. No party should initiate a grievance until and unless it has first discussed the matter with the party or parties against whom the grievance is to be initiated in an attempt to settle it. Except as provided otherwise in Article XV, Section 18 and Article XXII, Section 11, a grievance must be initiated within 60 days from the date of the occurrence or non-occurrence upon which the grievance is based, or within 60 days from the date on which the facts of the matter became known or reasonably should have become known to the party initiating the grievance, whichever is later. A player need not be under contract to an NFL club at the time a grievance relating to him arises or at the time such grievance is initiated or processed.

Section 3. **Filing:** Subject to the provisions of Section 2 above, a player or the NFLPA may initiate a grievance by filing written notice thereof with a club and furnishing a copy of such notice to the Management Council; and a club or the Management Council may initiate a grievance by filing written notice thereof with the

11

NFLPA and furnishing copies of such notice to the player(s) involved. The notice will set forth the specifics of the alleged action or inaction giving rise to the grievance. The party to whom a non-injury grievance has been presented will answer in writing within 10 days. If the answer contains a denial, the specific grounds will be set forth.

Section 4. **Player-Club Relations Committee:** If a grievance is not disposed of to the satisfaction of the parties involved within 20 days following the filing of the notice provided for in Section 3 above, such grievance will (unless the parties agree to submit the matter directly to the outside arbitrator) be referred to the Player-Club Relations Committee (hereinafter referred to as the "PCRC"), consisting of two representatives (at least one of whom will be an active player) appointed by the NFLPA and two club representatives appointed by the Management Council. Within 14 days following such reference, the PCRC will meet, on a date and at a time and place agreed upon by the NFLPA and the Management Council, to consider the grievance. Attendance at such meeting by only one of the persons appointed by the NFLPA and only one of the persons appointed by the Management Council will constitute a quorum. Notwithstanding the number of their appointees in attendance, both the NFLPA and the Management Council will each be entitled to cast two votes at any meeting of the PCRC.

Section 5. **Appeal:** If the PCRC resolves any grievance by majority vote or by mutual agreement, such resolution and the specific reasons therefore will be put in writing and will constitute full, final and complete disposition of the grievance, and will be binding upon the player(s) and club(s) involved and the parties to this Agreement. If the PCRC fails to resolve a grievance within five days following its meeting thereon, either the player(s) or club(s) involved, or the NFLPA or the Management Council, may, within 20 days following the meeting of the PCRC, appeal such grievance by filing written notice thereof with the outside arbitrator designated by the parties as the notice arbitrator, the party or parties against whom such appeal is taken, and either the NFLPA or the Management Council, as the case may be. If the grievance involves a suspension of a player by a club, a complaint under Article II on Scope

12

of Agreement, a dispute under Article XXXI on the Retirement Plan, or is one which the parties agree requires expeditious treatment, it will be appealed immediately upon filing to the outside arbitrator, unless the parties agree to refer it to the PCRC.

Section 6. **Arbitrators:** The parties to this Agreement have agreed upon the appointment of Paul Martha and James Scearce as the outside arbitrators, who will serve for the duration of this Agreement; provided, however, that as of March 1, 1978, and as of each successive March 1, either of the parties to this Agreement may discharge either outside arbitrator by serving 30 days' prior written notice upon him and upon the other party to this Agreement. The parties will thereupon agree upon a successor arbitrator. The arbitrator so discharged will continue to serve until his successor is agreed upon. One of the outside arbitrators will be designated by the parties as the notice arbitrator, with whom any notice of appeal must be filed.

Section 7. **Hearing:** Upon his receipt of notice of appeal of a grievance filed pursuant to Section 5 above, the notice arbitrator will, so as to equalize the caseload of non-injury grievances between himself and the other arbitrator, and without prior consultation with the NFLPA or the Management Council, designate himself or the other arbitrator to hear the case. The designated arbitrator will, after consultation with the NFLPA and the Management Council, set an early time and convenient place for hearing such grievance. The parties to the grievance, and the NFLPA and the Management Council, will have the right to present, by testimony or otherwise, any evidence relevant to the grievance. As soon as possible following the conclusion of such hearing, the outside arbitrator will render a written decision which will constitute full, final, and complete disposition of the grievance, and will be binding upon the player(s) and club(s) involved and the parties to this Agreement; provided, however, that the outside arbitrator will not have the jurisdiction or authority: (a) to add to, subtract from, or alter in any way the provisions of this Agreement or any other applicable document; or (b) to grant any remedy whatsoever other than a money award, an order of reinstatement, suspension without pay, a cease and desist order, a credit or benefit award under

13

the Bert Bell NFL Player Retirement Plan, or an order of compliance with a specific term of this Agreement or any other applicable document.

Section 8. **Integrity and Public Confidence:** In the event a matter filed as a grievance in accordance with the provisions of Section 3 above gives rise to issues involving the integrity of, or public confidence in, the game of professional football, the Commissioner may, at any stage of its processing, after consultation with the PCRC, order that the matter be withdrawn from such processing and thereafter be processed in accordance with the procedure provided in Article VIII of this Agreement, Commissioner Discipline.

Section 9. **Miscellaneous:** Each of the time limits set forth in this Article may be extended by mutual agreement of the parties involved. If any grievance is not processed or resolved in accordance with the prescribed time limits within any step, unless an extension of time has been mutually agreed upon, either the player, the NFLPA, the club or the Management Council, as the case may be, after notifying the other party of its intent in writing, may proceed to the next step.

Section 10. **Representation:** In any meeting or hearing provided for in this Article, a player may be accompanied by counsel of his choice. A representative of the NFLPA may also participate in such meeting or hearing and represent the player. In any such meeting or hearing, a club representative may be accompanied by counsel of his choice. A representative of the Management Council may also participate in such meeting or hearing and represent the club.

Section 11. **Costs:** All costs of arbitration, including the fees and expenses of the outside arbitrator, will be borne equally between the parties thereto. Unless the arbitrator determines otherwise, each party will bear the cost of its own witnesses, counsel and the like.

# ARTICLE VIII

## COMMISSIONER DISCIPLINE

Section 1. **Commissioner Discipline:** Notwithstanding anything stated in Article VII of this Agreement, Non-Injury Grievance, all disputes involving a fine or suspension imposed upon a player by the Commissioner for

conduct on the playing field, or involving action taken against a player by the Commissioner for conduct detrimental to the integrity of, or public confidence in, the game of professional football, will be processed exclusively as follows: The Commissioner will promptly send written notice of his action to the player, with a copy to the NFLPA. Within 20 days following written notification of the Commissioner's action, the player affected thereby or the NFLPA, with the approval of the player involved, may appeal in writing to the Commissioner. The Commissioner will designate a time and place for hearing, which will be commenced within 10 days following his receipt of the notice of appeal. As soon as practicable following the conclusion of such hearing, the Commissioner will render a written decision, which decision will constitute full, final, and complete disposition of the dispute, and will be binding upon the player(s) and club(s) involved and the parties to this Agreement with respect to that dispute.

Section 2. **Miscellaneous:** Each of the time limits set forth in this Article may be extended by mutual agreement of the Commissioner and the player(s) and the club(s) involved.

Secton 3. **Representation:** In any hearing provided for in this Article, a player may be accompanied by counsel of his choice. A representative of the NFLPA may also participate in such hearing and represent the player. In any such hearing, a club representative may be accompanied by counsel of his choice. A representative of the Management Council may also participate in such hearing and represent the club.

Section 4. **Costs:** Unless the Commissioner determines otherwise, each party will bear the cost of its own witnesses, counsel and the like.

# ARTICLE IX

## INJURY GRIEVANCE

Section 1. **Definition:** An "injury grievance" is a claim or complaint that, at the time an NFL player's Standard Player Contract or NFL Player Contract was terminated by a club, the player was physically unable to perform the services required of him by that contract because of an injury incurred in the performance of his services

15

under that contract. All time limitations in this Article may be extended by mutual agreement of the parties.

Section 2. **Filing:** Any NFL player and/or the NFLPA must present an injury grievance in writing to a club, with a copy to the Management Council, within 20 days from the date it became known or should have become known to the player that his contract had been terminated. The grievance will set forth the approximate date of the alleged injury and its general nature. If the player passes the physical examination of the club at the beginning of the pre-season training camp for the year in question, having made full and complete disclosure of his known physical and mental condition when questioned by the club physician during the physical examination, it will be presumed that such player was physically fit to play football on the date he reported.

Section 3. **Answer:** The club to which an injury grievance has been presented will answer in writing within five days. If the answer contains a denial of the claim, the general grounds for such denial will be set forth. The answer may raise any special defense, including but not limited to the following:

(a) That the player did not pass the physical examination administered by the club physician at the beginning of the pre-season training camp for the year in question. This defense will not be available if the player participated in any team drills following his physical examination or in any pre-season or regular season game; provided, however, that the club physician may require the player to undergo certain exercises or activities, not team drills, to determine whether the player will pass the physical examination;

(b) That the player failed to make full and complete disclosure of his known physical or mental condition when questioned during the physical examination;

(c) That player's injury occurred prior to the physical examination and the player knowingly executed a waiver or release prior to the physical examination or his commencement of practice for the season in question which specifically pertained to such prior injury;

(d) That the player's injury arose solely from a non-football related cause subsequent to the physical examination;

(e) That subsequent to the physical examination the player suffered no new football-related injury; or

(f) That subsequent to the physical examination the player suffered no football-related aggravation of a prior injury reducing his physical capacity below the level existing at the time of his physical examination as contemporaneously recorded by the club physician.

Section 4. **Neutral Physician:** If the answer to an injury grievance is not satisfactory to the grievant, the player may present himself for examination by a neutral physician within 20 days from the date of receipt of the answer. If the club fails to answer an injury grievance within the five-day period, the player may present himself for examination by a neutral physician within 20 days after the time for answering has elapsed. These time periods may be extended by mutual consent if a neutral physician is not available. The player will notify the club of the identity of the neutral physician by whom he is to be examined as soon as possible subsequent to a selection by the player.

Section 5. **List:** The NFLPA and the Management Council will maintain a jointly-approved list of neutral physicians, including at least two orthopedic physicians in each city in which an NFL club is located. The list will be subject to review and modification every 12 months. Each physician should be willing and able to examine NFL players promptly. The club may present to the neutral physician, with a copy to the NFLPA and the Management Council, the medical history of the player; provided, however, that such medical history contain no opinions as to whether the player was physically able to perform the services required of him by his contract at the time it was terminated.

Section 6. **Appeal:** Any injury grievance may be appealed to an arbitrator by the filing of written notice of appeal with the chairman of the arbitration panel within 30 days from the date of receipt of the neutral physician's written report. There will be a panel of five arbitrators, whose appointments must be accepted in writing by the NFLPA and the Management Council. The parties hereto will agree on such panel by September 1, 1977. When the panel is determined, the parties hereto will choose one from among their number as the chairman of the panel. Whenever the chairman of the panel of arbitrators receives written notice of appeal of an injury grievance, he will promptly select one member of the agreed-upon panel to decide the grievance. The

**17**

chairman will rotate the selection of an arbitrator in such manner so as to equalize the caseload of injury grievances among the full panel.

Section 7. **Hearing:** The arbitrator will hold a hearing on an injury grievance at the earliest practicable time following referral to him. He will render a decision within 30 days from the date of the hearing or of final submission of the matter to him, whichever is later. His decision will be final and binding; provided, however, that no arbitrator will have the authority to add to, subtract from, or alter in any way any provision of this Agreement or any other applicable document.

Section 8. **Miscellaneous:** The arbitrator will consider the neutral physician's findings conclusive with regard to the physical condition of the player and the extent of an injury at the time of his examination by the neutral physician. The arbitrator will decide the dispute in light of this finding and such other issues or defenses which may have been properly submitted to him. The club or the Management Council must advise the grievant and the NFLPA in writing no later than seven days before the hearing of any special defense to be raised at the hearing. The arbitrator may award the player payments for medical expenses incurred or which will be incurred in connection with an injury.

Section 9. **Expenses:** Expenses charged by a neutral physician will be shared equally by the club and the player. All travel expenses incurred by the player in connection with his examination by a neutral physician of his choice will be borne by the player. The parties will share equally in the expense of any arbitration engaged in pursuant to this Article; provided, however, the respective parties will bear the expenses of attendance of their own witnesses.

Section 10. **Pension Credit:** Any player who receives payment for three or more regular season games during any year as a result of filing an injury grievance or settlement of a potential injury grievance will be credited with one year of Credited Service for the year in which injured under the Bert Bell NFL Player Retirement Plan as determined by the Retirement Board.

Section 11. **Payment:** If an award is made by the arbitrator, payment will be promptly made to the player or jointly to the player and the NFLPA provided the player has given written authorization for such joint payment.

18

# ARTICLE X

## INJURY PROTECTION

Section 1. **Qualification:** Beginning with the 1977 season, a player qualifying under the following criteria will receive an injury protection benefit in accordance with Section 2 below:

(a) The player must have been physically unable, because of a severe football injury in an NFL game or practice, to participate in all or part of his club's last game in the season of injury, as certified by the club physician following a physical examination after the last game; or the player must have undergone club-authorized surgery in the off-season following the season of injury; **and**

(b) The player must have undergone whatever reasonable and customary rehabilitation treatment his club required of him during the off-season following the season of injury; **and**

(c) The player must have failed the physical examination given by the club physician at the start of the pre-season training camp following the season of injury because of such injury and his club must have terminated his contract for the season following the season of injury. A player who qualifies under subsections (a) and (b) above cannot be waived prior to such pre-season physical examination.

Section 2. **Benefit:** A player qualifying under Section 1 above will receive an amount equal to 50% of his contract salary for the season following the season of injury, up to a maximum payment of $37,500, unless he has individually negotiated more injury protection into that contract. A player will receive no amount of any contract covering any season subsequent to the season following the season of injury, except if he has individually negotiated injury protection into that contract. The benefit will be paid to the player in equal weekly installments commencing no later than the date of the first regular season game, which benefit payments will cease if the player signs a contract for that season with another NFL club. A player will not be entitled to such benefit more than once during his playing career in the NFL.

Section 3. **Disputes:** Any dispute under this Article will

19