(c)     Three times the amount of compensatory damages, plus, for each Club found to have violated Section 1 of this Article for at least the third time, a fine of $5,000,000 in the event that any of the Clubs found to have violated Section 1 of this Article have committed such violation for at least the third time. In the event that damages are awarded pursuant to this Subsection: (i) any Club found to have committed such a violation for the first time shall be jointly and severally liable for two times the amount of compensatory damages; (ii) any Club found to have committed such a violation for at least the second time shall be jointly and severally liable for three times the amount of compensatory damages; and (iii) any Club found to have committed such a violation for at least the third time shall, in addition, pay a fine of $5,000,000.

(d)     For each League Year after the 2011 League Year, each of the enumerated fines set forth in this Subsection (c) above shall be adjusted by the same percentage as the change in Projected AR for that League Year as compared to Projected AR for the prior League Year (up to a maximum of ten percent (10%) per League Year).

*Section 10.* **Player Election:** A proceeding prosecuting an alleged violation of Section 1 of this Article shall initially be limited to the issues of liability and damages sustained to the date of the System Arbitrator's determination. In the event the System Arbitrator finds a violation, the player shall make a determination within thirty (30) days of the date the System Arbitrator's determination is final, or within thirty (30) days after the last game of the season for such player (including any playoff games) if the finding is made during the course of the season, whether the player intends to void the applicable Player Contract or Draft right. If the player voids the applicable Player Contract or Draft right, the player may commence a supplemental proceeding before the System Arbitrator, for the purpose of determining his future damages, if any, only after the player has signed a new Player Contract or after the first scheduled game of the next regular season, whichever is earlier. If the player elects not to void the applicable Player Contract or Draft right, he may immediately commence a supplemental proceeding before the System Arbitrator for the purpose of determining his future damages, if any.

*Section 11.* **Payment of Damages:** In the event damages are awarded pursuant to Section 9 above, the amount of compensatory damages shall be paid to the injured player or players. The amount of non-compensatory damages, including any fines, shall be paid directly to any NFL player pension fund, any other NFL player benefit fund, or any charitable fund for the benefit of present or former NFL players, as selected by the NFLPA, subject to the reasonable approval of the NFL.

*Section 12.* **Effect on Cap Computations:** In the event that damages are awarded pursuant to Section 9 above, the amount of non-compensatory damages, including any fines, will not be included in any of the computations described in Article 12 or 13 above. The amount of compensatory damages awarded will be included in such computations.

*Section 13.* **Effect of Salary Cap:** In awarding any amount of damages, the System Arbitrator shall take into account that in any League Year no Club would have been authorized to pay out any Salary in excess of that permitted under the Salary Cap.

*Section 14.* **No Reimbursement:** Any damages awarded pursuant to Section 9 above must be paid by the individual Clubs found liable and those Clubs may not be reimbursed or indemnified by any other Club or the NFL.

*Section 15.* **Costs:** In any action brought for an alleged violation of Section 1 of this Article, the System Arbitrator shall order the payment of reasonable attorneys' fees and costs by any party found to have brought such an action or to have asserted a defense to such an action without any reasonable basis for asserting such a claim or defense. Otherwise, each party shall pay his or its own attorneys' fees and costs.

*Section 16.* **Termination:** The NFLPA shall have the right to terminate this Agreement, under the following circumstances:
    (a)    Where there has been a finding or findings of one or more instances of a violation of Section 1 of this Article with respect to any one NFL season which, either individually or in total, involved five or more Clubs and caused injury to 20 or more players; or
    (b)    Where there has been a finding or findings of one or more instances of a violation of Section 1 of this Article with respect to any two consecutive NFL seasons which, either individually or in total, involved seven or more Clubs and caused injury to 28 or more players. For purposes of this Subsection 16(b), a player found to have been injured by a violation of Section 1 of this Article in each of two consecutive seasons shall be counted as an additional player injured by such a violation for each such NFL season; or
    (c)    Where, in a proceeding brought by the NFLPA, it is shown by clear and convincing evidence that 14 or more Clubs have engaged in a violation or violations of Section 1 of this Article causing injury to one or more NFL players.
    (d)    In order to terminate this Agreement:
    (i)    The proceeding must be brought by the NFLPA;
    (ii)    The NFL and the System Arbitrator must be informed at the outset of any such proceeding that the NFLPA is proceeding under this Section for the purpose of establishing its entitlement to terminate this Agreement; and
    (iii)    The System Arbitrator must find that the Clubs engaged in willful collusion with the intent of restraining competition among teams for players.

*Section 17.* **Time Limits:** Any action under Section 1 of this Article must be brought within ninety (90) days of the time when the player knows or reasonably should have known with the exercise of due diligence that he had a claim, or within ninety (90) days of the first scheduled regular season game in the season in which a violation of Section 1 of this Article is claimed, whichever is later. Any party alleged to have violated Section 1 of this Article shall have the right, prior to any proceedings on the merits, to make an

initial motion to dismiss any complaint that does not comply with the timeliness requirements of this section.

*Section 18.* **Prior Conference:** Prior to the initiation of any proceeding under this Article by the NFLPA, the parties shall confer in person or by telephone to attempt to negotiate a resolution of the dispute.

# ARTICLE 18
# CERTIFICATIONS

*Section 1.* **Contract Certification:**

    (a) Every Player Contract, or any renegotiation, extension or amendment of a Player Contract, entered into during the term of this Agreement shall contain a certification, executed separately by: (i) the person who executed the Player Contract on behalf of the Club, (ii) the player, and (iii) any player representative who negotiated the contract on behalf of the player confirming that the Player Contract, renegotiation, extension or amendment sets forth all components of the player's remuneration for his playing of professional football from the Club or Club Affiliate and that there are no undisclosed agreements of any kind, express or implied, oral or written, or promises, undertakings, representations, commitments, inducements, assurances of intent, or understandings of any kind: (a) involving consideration of any kind to be paid, furnished or made available or guaranteed to the player, or Player Affiliate, by the Club or Club Affiliate either prior to, during, or after the term of the Player Contract; or (b) concerning terms of any renegotiation and/or extension of any Player Contract by a player subject to a Franchise Player or Transition Player designation.

    (b) In the same certification, the Club, player, and player representative will either confirm that, to the best of their knowledge, no conduct violative of Article 17 took place with respect to the contract, renegotiation, extension or amendment in question, or describe such conduct of which they are aware.

    (c) No contract will be approved by the Commissioner unless accompanied by the certifications required by Subsections (a) and (b) above.

    (d) Any failure to execute and submit a certification as required under Subsection 1(a) above shall be deemed evidence of a violation of Article 14, Section 1 of this Agreement. Any failure to execute and submit a certification as required under Subsection 1(b) above shall be deemed evidence of a violation of Article 17 of this Agreement.

*Section 2.* **End of League Year Certification:**

    (a) Within fourteen (14) days of the conclusion of each League Year, the executive primarily responsible for football operations on behalf of each Club shall submit to the Management Council a certification confirming that the Club has not, to the extent of his knowledge after reasonable inquiry of all owners and all employees with authority to negotiate Player Contracts, entered into any undisclosed agreements of any kind, express or implied, oral or written, or promises, undertakings, representations, commitments, inducements, assurances of intent, or understandings of any kind, as described in Article 14, Section 1. Upon receipt of such certification, the Management Council shall forward a copy of the certification to the NFLPA.

    (b) Within fourteen (14) days of the conclusion of each League Year, each player agent representing a player who was under contract to an NFL Club during that League Year shall submit to the NFLPA a certification confirming, after reasonable inquiry of all personnel in his or her agency with authority to negotiate Player Contracts, that neither he nor she nor they has entered into any undisclosed agreements of any kind, express or implied, oral or written, or promises, undertakings, representations,

commitments, inducements, assurances of intent, or understandings of any kind, as described in Article 14, Section 1. Upon receipt of such certification, the NFLPA shall forward a copy of the certification to the Management Council.

 (c) Any failure to execute and submit a certification as required under Section 2(a) or 2(b) above, shall be deemed evidence of a violation of Article 14, Section 1 of this Agreement.

 (d) At the conclusion of each League Year, the executive primarily responsible for football operations on behalf of each Club shall submit to the Management Council a certification confirming that the Club has not, to the extent of his knowledge after reasonable inquiry of all owners and all employees with authority to negotiate Player Contracts, violated the terms of Article 17, Section 1, nor received from the NFL or the Management Council any communication disclosing that an NFL Club had negotiated with or is negotiating with any Restricted Free Agent, unless and until an Offer Sheet has been given to the Prior Club, or any Unrestricted Free Agent, prior to the execution of a Player Contract with that Unrestricted Free Agent, where such communication or disclosure is inconsistent with Article 17, Section 1. Upon receipt of each such certification, the NFL shall forward a copy of the certification to the NFLPA.

 (e) Any failure to execute a certification as required under Section 2(d) above shall be deemed evidence of a violation of Article 17, Section 1 of this Agreement.

*Section 3.* **False Certification:** Any person or Club who knowingly executes or files a false certification required by Sections 1(a), 1(b), 2(a), or 2(b) of this Article shall be subject to a fine of up to $375,000, upon a finding of such violation by the System Arbitrator. Authority to impose such a fine shall rest with the System Arbitrator or the Commissioner, consistent with the allocation of authority in Article 14, Section 6(b). Notwithstanding the foregoing, in no circumstances shall a fine under this Section be imposed upon any person or Club if such person or Club is also being sanctioned for the same conduct under Article 14, Section 6 above. The fine amount set forth in this Section shall be adjusted each year by the percentage change in Projected AR for that League Year as compared to Projected AR for the prior League Year.

# ARTICLE 19
# CONSULTATION AND INFORMATION SHARING

*Section 1.* **Salary Summaries:** During the period between the first day of the League Year and the first day of the regular season of that League Year, the NFL shall provide the NFLPA with Salary and Team Salary summaries for each Team on a weekly basis. Upon the first date of the regular season and during the remainder of the League Year, such information shall be provided as often as it is prepared for use by the NFL (but no less often than once each week).

*Section 2.* **Consultation and Communications:** At either party's request, the parties shall meet in good faith to reconcile any differences with regard to the Salary Cap treatment of any Player Contract, or of the amount of any Required Tender, Franchise Player Tender, Transition Player Tender, or Rookie Fifth-Year Option.

*Section 3.* **Notice of Invalid Contract:** If the NFL informs a Club that a proposed player transaction would be inconsistent with or in violation of the terms of this Agreement as interpreted by the NFL, the NFL shall promptly notify the NFLPA that such an interpretation has been communicated and the basis for such interpretation. The NFL shall provide such notice as soon as possible, but in no event later than five (5) business days following the communication of such interpretation to the Club.

*Section 4.* **Copies:** Within two (2) business days of their receipt by the NFL, the NFL shall provide to the NFLPA, at no expense, a copy (by .pdf, if the Player Contract or Offer Sheet is provided by .pdf to the NFL) of any and all Player Contracts and Offer Sheets that are entered into or extended during the term of this Agreement.

# ARTICLE 20
# OTHER PROVISIONS

*Section 1.* **CFL Rule:** No Club may sign any player who in the same year has been under contract to a Canadian Football League ("CFL") club at the end of that CFL club's season (regular season or postseason, whichever is applicable).

*Section 2.* **Physically Unable to Perform:** Any player placed on a Physically Unable to Perform list ("PUP") will be paid his full Paragraph 5 Salary while on such list. His contract will not be tolled for the period he is on PUP, except in the last year of his contract, when the player's contract will be tolled if he is still physically unable to perform his football services as of the sixth regular season game.

*Section 3.* **Nonfootball Injury:**
 (a) A player who is placed on a Nonfootball Injury or Illness list ("N-F/I") will not be entitled to any compensation under his contract while on such list but, except as provided below, his contract will continue to run while in such status.
 (b) A player on N-F/I who is in the final year of his contract (including an option year) will have his contract tolled. However, if the player is physically able to perform his football services on or before the sixth regular season game, the club must pay the player his negotiated Paragraph 5 Salary (pro rata) for the balance of the season in order to toll such player's contract. If such player is taken off N-F/I during the period when such action is allowed by League rules, his contract will not be tolled.

*Section 4.* **Roster Exemption:**
 (a) **Certain Players Not Under Contract.** After the final roster reduction a Club must agree in writing with an unsigned player who is either an Unrestricted Free Agent, Transition Player, or Franchise Player, prior to signing a Player Contract with such player, on what compensation, if any, the player will be paid if he is placed in a roster exempt status.
 (b) **Players Under Contract.** If a Club obtains a roster exemption for a player under contract who does not report to his Club until after the first roster reduction, the player will not be entitled to preseason or regular season compensation until such exemption is removed, provided the player is given written notice of such fact upon reporting to the Club. If such notice is not given to the player, the player must be paid his Paragraph 5 Salary during his exemption.
 (c) **Restricted Players.** Any player whose contract has expired and who either (i) has two but less than three Accrued Seasons or (ii) is a Restricted Free Agent pursuant to Article 9, Section 2, and who has been given the Required Tender pursuant to Article 8, Section 2, or Article 9, Sections 2(b)(i) or (ii), and who has not signed a contract and has not reported to his Club's preseason training camp, may be placed on the roster exempt list of his Club under the following conditions:
 (i) If the player has not reported at least the day before the Club's second preseason game, he may be placed on roster exempt until the day following the Club's first regular season game.

  (ii) If the player has not reported at least the day before the Club's third preseason game, he may be placed on roster exempt until the day following the Club's second regular season game.

  (iii) If the player has not reported at least the day before the Club's fourth preseason game, he may be placed on roster exempt until the day following the third regular season game scheduled after the date he actually reports.

  (iv) Any roster exemption imposed under this Subsection (c) shall commence with the first game immediately after a Restricted Free Agent reports and signs a Player Contract during the pendency of any League-imposed suspension.

  (v) Any roster exemption imposed under this Subsection (c) shall continue for its full duration after any trade of the player to another Club.

  (vi) Any player who is placed on the roster exempt list of his Club pursuant to Section 4(c) shall be entitled to full compensation from his Club for any week in which his Club has a "bye" after the date he reports, but while he is still on the roster exempt list. Thus, any such player may not lose more than three weeks of Paragraph 5 Salary as a result of being placed on the roster exempt list. This Subsection shall not affect the number of regular season games for which the player can be placed on the roster exempt list, and thus for which the player may not play for his Club, in accordance with Subsections (i)–(iii) above. Nothing herein shall affect any right or obligation the player or Club otherwise may have concerning compensation to the player.

  (vii) No player may be placed on roster exempt under this Section 4(c) unless the Club has provided written notice to the player and the NFLPA of its intent to place the player on roster exempt at least five days prior to the Club's second preseason game. Once such written notice is provided, the Club must place the player on roster exempt in accordance with Subsections (i)–(iii) above.

  (viii) For purposes of this Article, extra preseason games such as the Canton Hall of Fame Game and the American Bowl shall not count.

  (ix) When placed on roster exempt pursuant to this Section, the player shall not be entitled to compensation.

  (d) Except as provided in Subsection (c) above, for purposes of this Section, roster exemptions shall be for no more than two weeks of the regular season.

### *Section 5.* Arena Football Players:

  (a) Players under an NFL Player Contract may not be allocated to a club in the Arena Football League (("AFL") or ("Arena League")), whether or not that Arena League club is commonly owned with an NFL Club.

  (b) Otherwise eligible Arena League players who would be Rookies in the NFL may be drafted by any NFL Club pursuant to current draft procedures even if under contract to an Arena League Club.

  (c) Before a player under contract in the Arena League may be signed to an NFL Player Contract, he must be released by the Arena League club from any preexisting contract obligations in the Arena League, including any residual contract rights relating to negotiation, first refusal, etc., and except for players to whom an NFL Club has Draft rights, will be considered an Unrestricted Free Agent. This provision refers solely to contractual rights between a player and a team in the Arena Football League

and does not refer to the terms of any collective bargaining agreement in the Arena League.

(d) A player whose most recent contract to play professional football was with an AFL team that shares common ownership with an NFL Club (such AFL team being a "Related AFL Team" and such Club being a "Related NFL Club") may not sign a Player Contract with that Related NFL Club until after a period of 72 hours following the termination or expiration of the player's contract with the Related AFL Team. During that 72-hour period, the player shall be completely free to negotiate and sign a Player Contract with any other Club. The terms of this Subsection (d) are subject to any rights that any Club may have under Article 6, and any Club that has drafted such a player consistent with the terms of this Agreement may sign such a player at any time permitted by this Agreement.

(e) NFL clubs and Arena League clubs may have common practice facilities, but may not participate in common classroom work, film study, drills, scrimmages, or other on- or off-field work.

(f) Any NFL player suspended for one year or less in the NFL by the Commissioner or his Club may not play for an Arena League team that is commonly-owned with his NFL Club during any term of his suspension that overlaps with the period of time the player is under contract to his NFL Club.

(g) If an Arena League club that is commonly-owned with an NFL Club engages in conduct that would violate NFL Rules, including but not limited to the NFL's anti-tampering policy, the violation shall be attributed to the NFL Club, so long as any sanctions are imposed consistent with the terms of this Agreement and the NFL Constitution and Bylaws.

*Section 6.* **Other Professional Leagues:** No player who is under contract in another football league is eligible to sign an NFL Player Contract or a Practice Squad Player Contract until the termination or expiration of his contract in the other league.

## ARTICLE 21
## OFFSEASON WORKOUTS

*Section 1.* **Voluntary Workouts:** No player shall be required to attend or participate in any offseason workout program or classroom instruction of a Club other than as provided in Article 22. Any other Club offseason workout programs and classroom instruction sessions shall be strictly voluntary and shall take place in the manner and time period set forth in this Article.

*Section 2.* **Time Periods:**

    (a)    Subject to the limitations in Subsections (b) and (c) below, from the end of the previous NFL season until the opening of training camp, Clubs may schedule or conduct offseason workout programs as follows. If a Club hires a new head coach after the end of the prior regular season, that Club may schedule or conduct an offseason workout program for no more than nine total weeks, with eight of the weeks required to be consecutive and subject to Article 22, Section 3, to be completed over a twelve-week period. All other Clubs may schedule or conduct offseason workout programs for no more than nine consecutive total weeks, to be completed over a ten-week period. In either case, Clubs may schedule no more than four workouts per week for any individual player. Such workout programs shall not be permitted on weekends. Nothing herein shall prevent a Club from permitting an individual player to work out on his own prior to the commencement of the Club's official offseason workout program using the Club facilities if the player wishes to do so, except that no club official may indicate to a player that such individual workouts are not voluntary, or that a player's failure to participate in such workouts will result in the player's failure to make the Club (or that a player's failure to participate in a workout program or classroom instruction will result in the player's failure to make the Club or result in any other adverse consequences affecting his working conditions). Prior to the commencement of the Club's official offseason workout program: (i) players may not receive daily workout payments or workout bonuses of any kind, and may not be paid or reimbursed expenses for travel, board or lodging; (ii) players are not permitted to participate in Club-supervised workouts, Club-supervised practices, group or individual meetings with coaches, group or individual film study with coaches, or group or individual playbook study with coaches; (iii) the Club's strength and conditioning coaches may not direct players' individual workouts, but may supervise use of the weight room to prevent injury and to correct misuse of equipment; and (iv) players' activities may not be directed or supervised by any coaches. In addition, nothing herein shall prevent a Club from permitting an individual player to work out on his own on weekends after the Club's official offseason program has commenced, or at any time after the Club's official offseason workout program has ended, using Club facilities if he wishes to do so, subject to the restrictions set forth in the immediately preceding sentence of this Subsection, except that no club official may indicate to a player that such individual workouts are not voluntary, or that a player's failure to participate in such workouts will result in the player's failure to make the Club (or that a player's failure to participate in a workout program or classroom instruction will result in the player's fail-

131

ure to make the Club or result in any other adverse consequences affecting his working conditions).

(b) Each Club's official nine-week offseason workout program shall be conducted in three phases, as follows:

(i) **Phase One.** Phase One shall consist of the first two weeks of the Club's offseason workout program. Subject to the additional rules set forth in Section 5 of this Article, Phase One activities shall be limited to strength and conditioning and physical rehabilitation only. During Phase One, only full-time or part-time strength and conditioning coaches, who have no other coaching responsibilities with the Club, shall be allowed on the field; no other coaches shall be allowed on the field or to otherwise participate in or observe activities. No footballs shall be permitted to be used (only "dead ball" activities), except that quarterbacks may elect to throw to receivers provided they are not covered by any other player. Players cannot wear helmets during Phase One.

(ii) **Phase Two.** Phase Two shall consist of the next three weeks of the Club's offseason workout program. Subject to the additional rules set forth in Section 5 of this Article, during Phase Two all coaches shall be allowed on the field. On-field workouts may include individual player instruction and drills, as well as "perfect play" drills (e.g., offense or defense only, but not offense vs. defense), or special teams drills on a "separates" basis (e.g., kicking team or return team only, but not kicking team vs. return team). No live contact or team offense vs. team defense drills are permitted. No offense vs. defense drills are permitted (e.g., no one-on-one offensive linemen vs. defensive linemen pass rush or pass protection drills, no wide receivers vs. defensive backs bump-and-run drills, and no one-on-one special teams drills involving both offense and defense are permitted.) Players cannot wear helmets during Phase Two.

(iii) **Phase Three.** Phase Three shall consist of the next four weeks of the Club's offseason workout program. Subject to the additional rules set forth in Subsections 5(a) and 5(c) of this Article and Appendix G to this Agreement, during Phase Three each Club may conduct a total of ten days of organized team practice activity ("OTAs" or "OTA days"). The restrictions set forth in Subsection 5(b) of this Article shall not apply to OTA days. The Club may conduct a maximum of three days of OTAs during each of the first two weeks of Phase Three. A maximum of four days of OTAs may be conducted during either the third week or the fourth week of Phase Three, with the Mandatory Veteran Minicamp (Article 22, Section 2) to be held during the other week. During weeks in which the Club conducts only three days of OTAs, the Club may also conduct a fourth day of non-OTA workouts, but such activities shall be subject to the rules governing Phase Two workouts, as set forth in Subsection 2(b)(ii) of this Article. During Phase Three, all coaches shall be allowed on the field. No live contact is permitted. No one-on-one offense vs. defense drills are permitted (i.e., no offensive linemen vs. defensive linemen pass rush or pass protection drills, no wide receivers vs. defensive backs bump-and-run drills, and no one-on-one special teams drills involving both offense and defense are permitted). Special teams drills (e.g., kicking team vs. return team) are permitted, provided no live contact occurs. Team offense vs. team defense drills, including all drills listed in Appendix G to this Agreement, are permitted, provided no live contact occurs. Clubs may require players to wear helmets; no shells are permitted during Phase Three of the Club's offseason workout program or any minicamp.

(c) Each year offseason workout programs cannot begin prior to the first Monday in April for Clubs that have hired a new head coach after the end of the prior regular season, and cannot begin prior to the third Monday in April for all other Clubs. Each year on a date to be agreed upon by the parties, but no later than twenty-one days before the scheduled commencement of a Club's program, each Club shall provide the NFL and the NFLPA with the Club's schedule for its offseason workout program that year, and shall advise the NFL and the NFLPA in writing in advance of any changes to that schedule; if the NFL provides such information to the NFLPA, the Club's obligation under this sentence shall be deemed satisfied.

*Section 3.* **Payment:** Each player shall receive at least the following amounts per day for any workouts or classroom instruction in which he participates pursuant to a Club's voluntary offseason workout program, provided the player fulfills the Club's reasonable offseason workout requirements: $155 (2011–12 League Years), $175 (2013–14 League Years), $195 (2015–16 League Years), $215 (2017–18 League Years), and $235 (2019–20 League Years), respectively. Players are required to complete three out of four scheduled workouts, including any scheduled OTAs, per week in order to be paid for any workout the player completes in that week, except that if there are less than four (4) scheduled workouts in a week the player will be paid for each workout in which he participates. A player can only be paid for offseason workouts pursuant to the terms of an executed offseason workout addendum, which shall be part of the player's NFL Player Contract. The NFL and the NFLPA shall agree upon a standard offseason workout addendum, which shall be incorporated as an Appendix to this Agreement. Any player under contract to a Club at the time of the start of the offseason workout program shall be invited to participate in the Club's program. A player subject to a Required Tender by a Club, but who has not signed a Player Contract, or an Unrestricted Free Agent whose Player Contract with that Club has expired may be invited to participate in that Club's offseason workout program, but must sign an Offseason Workout and Minicamp Participation Agreement prior to his participation in such activities. Players who are under contract or subject to a Required Tender to an NFL Club and who participate in a Club's offseason workout program may also receive expenses for travel, board, and lodging subject to the terms and conditions set forth in Article 13, Section 6(e)(iv)(3).

*Section 4.* **Injuries:** Any player injured during offseason workouts will be protected in the same manner as if injured during the Club's preseason training camp, provided he is working out at the Club's facility under the direction of a Club official.

*Section 5.* **Miscellaneous:**

(a) No Club official may indicate to a player that the Club's offseason workout program or classroom instruction is not voluntary (or that a player's failure to participate in a workout program or classroom instruction will result in the player's failure to make the Club or result in any other adverse consequences affecting his working conditions). Contact work (e.g., "live" blocking, tackling, pass rushing, bump-and-run) is expressly prohibited in all offseason workouts. All Clubs, coaches and other Club

133

officials shall follow all of the rules regarding offseason workouts set forth in Appendix G hereto.

(b) During the offseason program period, except for the ten days of organized team practice activity and minicamps, players may be (1) at the Club facility no more than four hours per day, no more than four days per week, and not during weekends; and (2) on the field no more than ninety minutes per day. In addition, the Club may not specify to any player more than two specific hours a day during which it suggests that the player be at club facilities. Any player participating in an offseason workout program may select the other two hours in which he wishes to attend to conduct his weight training, etc., as long as he does so during the hours of operations of the Club's weight room.

(c) Clubs shall film all three Phases of the on-field workout sessions and shall maintain a copy of such films until thirty days after the start of the regular season. The NFLPA may view such films (after signing a confidentiality agreement satisfactory to the NFL at the start of each League Year of this Agreement) only upon the filing of a complaint alleging a violation of this Article.

*Section 6.* **Pre-Training Camp Period:** During the period beginning with the end of the offseason program and ending with the mandatory reporting date for preseason training camp, no player shall be permitted to participate in any organized workouts or organized football activity of any kind, or any football activity with any coach, on either a voluntary or involuntary basis, in connection with or on behalf of the Club or a Club Affiliate. Notwithstanding the preceding sentence, during the five consecutive days immediately prior to the mandatory veteran reporting date for each Club's preseason training camp (as specified in Article 23, Section 5), no veteran player (other than (i) quarterbacks and (ii) other players who (1) were on the Injured Reserve, Physically Unable to Perform or Nonfootball Injury or Illness list at the end of the previous season; or (2) failed a physical examination given by a team physician at any time after the last game of the previous season; or (3) sustained a football-related or nonfootball-related injury or illness during the offseason; or (4) had surgery during the offseason regarding a football or nonfootball-related condition regardless of when such condition arose) shall be permitted to participate in any organized workouts or other organized football activity of any kind, or any football activity with any coach, on either a voluntary or involuntary basis, in connection with or on behalf of the Club or Club Affiliate. (Except that a player in categories (ii)(1)–(4) above who fully participates in all Phase Three activities and the Mandatory Veteran Minicamp during the club's offseason workout program shall not be permitted to participate during this five day period.) This prohibition shall apply notwithstanding any other provision of this Agreement, or any provision in any Player Contract. Notwithstanding the above, nothing in this Section shall prevent any player from using any Club facility, subject to League rules and the Club's permission, to work out on his own at any time on a voluntary basis without the participation of any coach, trainer or other Club personnel. Nothing in this Section shall prohibit organized player activity in personal appearances or promotional activities on behalf of the Club or the League that the player has agreed to.

*Section 7.* **Rookie Premiere:** Invited Rookies will be permitted by their respective Clubs to attend the NFL Players Rookie Premiere provided that: (i) such event is scheduled during the month of May; (ii) such event encompasses a maximum of four consecutive days, including both a Saturday and a Sunday; and (iii) the NFLPA provides the NFL with the dates for the next Rookie Premiere not later than February 1 of each year.

*Section 8.* **Enforcement:**

(a) The head coach and the Club, who are jointly responsible for any conduct in violation of Sections 1, 2, 5 or 6 of this Article (including but not limited to the rules in Appendix G), shall be subject to a fine to be determined by the Commissioner, which fine(s) shall not be reimbursable by the Club or any other person. The NFLPA and any player involved in any such violation shall each have the right to enforce Sections 1, 2, 5 or 6 of this Article (including but not limited to the rules in Appendix G), through an expedited arbitration proceeding before the Impartial Arbitrator. Any head coach or Club that is the subject of a proceeding under this Section shall have the right to participate in the proceeding and to present a defense.

(b)(i) The NFL and the NFLPA shall each designate one or more representatives to investigate claims of violations of the rules set forth above or any other rules set forth in this Agreement relating to offseason workouts. At the request of either party, these representatives will inspect appropriate areas of Club facilities without notice to the Club and, upon request from any representative, shall be provided, as quickly as reasonably possible, with a copy of all tape, film, other recorded evidence, or other documentation any representative deems relevant to any possible violation.

(ii) Within forty-eight (48) hours of the commencement of a complaint by the NFLPA to the NFL, or sooner if practical, the Executive Director of the NFLPA and the NFL Executive Vice President Labor & League Counsel shall be advised of the status of the complaint and these persons shall attempt to determine if a violation occurred. If they are unable to agree upon the outcome, the matter will be immediately referred to the Impartial Arbitrator who will render a decision within forty-eight hours of the submission of the dispute.

(c) As soon as practicable after the commencement of any proceeding before the Impartial Arbitrator, the NFLPA shall be provided with a copy of all tape, film, other recorded evidence, or other documentation of any workout that is the subject of the proceeding if such materials have not already been produced to the NFLPA pursuant to Subsection (b)(i). If the Club fails to produce such materials then the Club's next scheduled week of OTAs shall automatically be cancelled pursuant to Subsection (d)(ii) below, unless the Club proves that its failure to produce such materials is due to circumstances beyond the Club's control.

(d)(i) **Commissioner Fines.** In the event that the Arbitrator finds any violation of Sections 1, 2, 5 or 6 of this Article (including but not limited to the rules in Appendix G), or in the event that the NFL and the NFLPA agree that a violation has occurred as provided under Subsection (d)(ii) below, the head coach shall be subject to a fine in the amount of $100,000 for the first violation, and $250,000 for a second violation, and the Club shall be subject to a fine in the amount of $250,000 for the first

violation and $500,000 for a second violation. If such a violation is found by the Arbitrator, or the NFL and the NFLPA agree that such a violation has occurred, the Commissioner in his sole discretion: (1) may promptly fine the head coach and the Club in the amounts specified above; or (2) after consultation with the Executive Director of the NFLPA, may fine the head coach and the Club some lesser amount, or no amount, if the Commissioner determines that (A) the conduct of the head coach and the Club were based upon a good faith interpretation of Sections 1, 2, 5, 6 or 8 of this Article or the rules set forth in Appendix G; or (B) did not constitute a material violation of such Sections. Any fines assessed by the Commissioner pursuant to this Subsection shall be donated as follows: Fifty percent to the Gene Upshaw Players Assistance Trust, and fifty percent to the Player Care Foundation. The NFL shall promptly provide the NFLPA with written evidence that the fine has been paid and donated in accordance with this Section.

(ii) **Other Penalties.** If the arbitrator determines that a violation has occurred, or if the Executive Director of the NFLPA and the NFL Executive Vice President Labor & League Counsel agree that a violation has occurred, the Club's next scheduled week of OTAs shall be cancelled, excluding minicamps. If the arbitrator finds, or the Executive Director of the NFLPA and the NFL Executive Vice President Labor and League Counsel agree, that two separate violations of these rules occurred in the same League Year, the Club's next scheduled week of OTAs shall also be cancelled, excluding minicamps, and the Commissioner shall cause the Club to forfeit a fourth-round draft selection in the next draft in which the Club has such a selection. The penalties described in the immediately preceding two sentences shall be imposed whether or not the Commissioner imposes a fine under Subsection 8(d)(i) of this Article.

(iii) For each League Year after the 2011 League Year, the fine amounts described in Subsection (i) above shall be adjusted by the same percentage as the change in Projected AR for that League Year compared to the Projected AR for the prior League Year up to a maximum of ten percent (10%) per League Year.

(e) In the event any week of the Club's offseason workout program, excluding minicamps, is cancelled, no player may work out at any team facility during the cancelled week. However, in such event, players participating in the Club's offseason program shall be deemed to have participated in the required number of days for the cancelled week in order to qualify for offseason workout pay or any workout bonuses. No conduct occurring prior to the date upon which any arbitration proceeding is filed before the Impartial Arbitrator under these rules may serve as the basis for a finding of a second violation by a Club. A second violation by a Club in the same League Year must be predicated upon facts arising after the grievance alleging the first violation has been filed. Any violation that occurs in the last week of the Club's offseason workout program will result in a loss of the Club's first week of OTAs (3 OTAs) in the next offseason; provided, however, this carry-over cancellation will not constitute an independent violation in the next offseason. If the Club hires a new head coach after the offseason in which the violation occurs, the cancellation will not carry over for that Club; however, if the terminated head coach is hired by another NFL Club as a head coach, the carry-over cancellation will be assessed against the hiring Club in that offseason.