records and other information provided to the NFL Medical Advisor and/or any other members of such committees.

    (e)    **Home Game Medical Coverage-Neutral Physician:** All home teams shall retain at least one RSI physician who is board certified in emergency medicine, anesthesia, pulmonary medicine, or thoracic surgery, and who has documented competence in RSI intubations in the past twelve months. This physician shall be the neutral physician dedicated to game-day medical intervention for on-field or locker room catastrophic emergencies.

***Section 2.* Club Athletic Trainers:** All athletic trainers employed or retained by Clubs to provide services to players, including any part time athletic trainers, must be certified by the National Athletic Trainers Association and must have a degree from an accredited four-year college or university. Each Club must have at least two full-time athletic trainers. All part-time athletic trainers must work under the direct supervision of a certified athletic trainer. In addition, each Club shall be required to have at least one full time physical therapist who is certified as a specialist in physical therapy to assist players in the care and rehabilitation of their injuries.

***Section 3.* Accountability and Care Committee:**

    (a)    The parties agree to establish an Accountability and Care Committee, which will provide advice and guidance regarding the provision of preventive, medical, surgical, and rehabilitative care for players by all clubs during the term of this Agreement. The Committee shall consist of the NFL Commissioner and the NFLPA Executive Director (or their designees). In addition, the Commissioner and Executive Director shall each appoint three additional members of the Committee, who shall be knowledgeable and experienced in fields relevant to health care for professional athletes.

    (b)    The Committee shall meet in person or by conference call at least three times per year, or at such other times as the Commissioner and Executive Director may determine.

    (c)    The Committee shall: (i) encourage and support programs to ensure outstanding professional training for team medical staffs, including by recommending credentialing standards and continuing education programs for Team medical personnel; sponsoring educational programs from time to time; advising on the content of scientific and other meetings sponsored by the NFL Physicians Society, the Professional Football Athletic Trainers Association, and other relevant professional institutions; and supporting other professional development programs; (ii) develop a standardized preseason and postseason physical examination and educational protocol to inform players of the primary risks associated with playing professional football and the role of the player and the team medical staff in preventing and treating illness and injury in professional athletes; (iii) conduct research into prevention and treatment of illness and injury commonly experienced by professional athletes, including patient care outcomes from different treatment methods; (iv) conduct a confidential player survey at least once every two years to solicit the players' input and opinion regarding the adequacy of medical care provided by their respective medical and training staffs and commission independent analyses of the results of such surveys; (v) assist in the development and maintenance of injury sur-

veillance and medical records systems; and (vi) undertake such other duties as the Commissioner and Executive Director may assign to the Committee.

(d) If any player submits a complaint to the Committee regarding Club medical care, the complaint shall be referred to the League and the player's Club, which together shall determine an appropriate response or corrective action if found to be reasonable. The Committee shall be informed of any response or corrective action. Nothing in this Article, or any other Article in this Agreement, shall be deemed to impose or create any duty or obligation upon either the League or NFLPA regarding diagnosis, medical care and/or treatment of any player.

(e) Each Club shall use its best efforts to ensure that its players are provided with medical care consistent with professional standards for the industry.

*Section 4.* **Player's Right to a Second Medical Opinion:** A player will have the opportunity to obtain a second medical opinion. As a condition of the Club's responsibility for the costs of medical services rendered by the physician furnishing the second opinion, such physician must be board-certified in his field of medical expertise; in addition, (a) the player must consult with the Club physician in advance concerning the other physician; and (b) the Club physician must be furnished promptly with a report concerning the diagnosis, examination and course of treatment recommended by the other physician. A player shall have the right to follow the reasonable medical advice given to him by his second opinion physician with respect to diagnosis of injury, surgical and treatment decisions, and rehabilitation and treatment protocol, but only after consulting with the club physician and giving due consideration to his recommendations.

*Section 5.* **Player's Right to a Surgeon of His Choice:** A player will have the right to choose the surgeon who will perform surgery provided that: (a) the player will consult unless impossible (e.g., emergency surgery) with the Club physician as to his recommendation regarding the need for, the timing of and who should perform the surgery; (b) the player will give due consideration to the Club physician's recommendations; and (c) the surgeon selected by the player shall be board-certified in his field of medical expertise. Any such surgery will be at Club expense; provided, however, that the Club, the Club physician, trainers and any other representative of the Club will not be responsible for or incur any liability (other than the cost of the surgery) for or relating to the adequacy or competency of such surgery or other related medical services rendered in connection with such surgery.

*Section 6.* **Standard Minimum Preseason Physical:** Each player will undergo the standardized minimum preseason physical examination and tests outlined in Appendix K, which will be conducted by the Club physician(s) as scheduled by the Club. No Club may conduct its own individual testing for anabolic steroids and related substances or drugs of abuse or alcohol.

*Section 7.* **Substance Abuse:**

(a) **General Policy.** The parties agree that substance abuse and the use of anabolic steroids are unacceptable within the NFL, and that it is the responsibility of the

173

parties to deter and detect substance abuse and steroid use and to offer programs of intervention, rehabilitation, and support to players who have substance abuse problems.

    (b)    **Policies.** The parties confirm that the Program on Anabolic Steroids and Related Substances will include both annual blood testing and random blood testing for human growth hormone, with discipline for positive tests at the same level as for steroids. Over the next several weeks, the parties will discuss and develop the specific arrangements relating to the safe and secure collection of samples, transportation and testing of samples, the scope of review of the medical science, and the arbitrator review policy, with the goal of beginning testing by the first week of the 2011 regular season. Pending agreement by both parties regarding the implementation of this program of blood testing, and such other policy amendments as the parties may agree upon, the Policy and Program on Substances of Abuse and the Policy on Anabolic Steroids and Related Substances, will remain in full force and effect as each existed during the 2010 season.

# ARTICLE 40
## ACCESS TO PERSONNEL AND MEDICAL RECORDS

*Section 1.* **Personnel Records:** Each Club will within seven (7) days after a written request of any player, permit the player to inspect and copy his individual personnel file and any other document which objectively relates to his performance and which in turn relates to any grievance. Each Club may, at its discretion, exclude from an individual player's personnel file attorney-client privileged material, subjective coaching and scouting reports, or any other subjective material. This Section 1 shall not affect the player's rights under any grievance procedure.

*Section 2.* **Medical Records:**
    (a)    A player may examine his medical and trainers' records in the possession of the Club or Club physician two times each year, once during the preseason and again after the regular season. Any player or former player may obtain a copy of his medical or trainer's records without charge upon request during the offseason. A player's personal physician may, upon presentation to the Club physician of an authorization signed by the player, inspect the player's medical and trainers' records in consultation with the Club physician or have copies of such medical and trainers' records forwarded to such player's personal physician. Upon request by the player or player's personal physician as described in this Subsection, such records shall be provided as soon as possible, and in no event later than seven (7) business days from the receipt of the request.
    (b)    To the extent that a player's medical or trainer records contain information that is subject to the Health Insurance Portability and Accountability Act of 1996 (as amended and as implemented through regulations) or other applicable laws, nothing in this Section shall be construed to restrict a player's right to access his information under such laws.

*Section 3.* **Electronic Medical Record System:** The NFL shall develop and implement an online, 24-hour electronic medical record system within 24 months of the effective date of this Agreement or such longer period as the parties may agree. Fifty percent (50%) of the costs of developing and implementing such system shall be a Player Benefit Cost. Once implemented and operational, the cost of maintaining the system thereafter shall not be counted as a Player Benefit Cost.

## ARTICLE 41
## WORKERS' COMPENSATION

The parties shall continue to discuss in good faith appropriate reforms and revisions to the provisions of this Agreement and the Player Contract related to workers' compensation issues. Absent such agreement, the following terms shall apply:

***Section 1.* Benefits:** In any state where workers' compensation coverage is not compulsory or where a Club is excluded from a state's workers' compensation coverage, a Club will either voluntarily obtain coverage under the compensation laws of that state or otherwise guarantee equivalent benefits to its players. In the event that a player qualifies for benefits under this section, such benefits will be equivalent to those benefits paid under the compensation law of the state in which his Club is located.

***Section 2.* Rejection of Coverage:** Nothing in this Article is to be interpreted as preventing a Club that has the legal right to do so from rejecting coverage under the workers' compensation law of its state. However, if a Club elects to reject coverage under the compensation law of its state, it must nevertheless guarantee benefits to its Players in the manner provided in Section 1 above. Moreover, any Club may be excluded from those laws if it elects to do so, but any such Club will be obligated to guarantee benefits to its Players in the same manner provided in Section 1 above.

***Section 3.* Arbitration:** In any state where a Club (e.g., Miami Dolphins/Florida) has legally elected not to be covered by the workers' compensation laws of that state, the equivalent benefit, if any, to which a player may be entitled under this Article will be determined under the grievance procedure of Article 43 or, where applicable, a separate method of alternative dispute resolution negotiated by the parties (e.g., Miami Dolphins/Implementation Agreement).

***Section 4.* Workers' Compensation Offset Provisions:** The parties agree that the following provisions shall exclusively govern any and all rights Clubs have with respect to workers' compensation credits or offsets during the term of this Agreement.

  (i) **"Dollar-for-Dollar" Credits or Offsets.** No Club shall be entitled to claim or receive any dollar-for-dollar credit or offset, other than as provided for in Article 3 of this Agreement, for salary, benefits, or other compensation paid or payable to a player against any award or settlement of workers' compensation benefits, either pursuant to Paragraph 10 of the NFL Player Contract or any provision of state law.

  (ii) **"Time" Credits or Offsets.** All Clubs are instead entitled only to a "time" credit or offset under Paragraph 10 of the NFL Player Contract or state law, as set forth more specifically in Subsections (A)–(E) below. This "time" credit or offset shall in all cases be expressed or granted as a reduction in the number of weeks of a player's workers' compensation award or settlement that is attributable to the same period of weeks in which the player is deemed entitled to salary payments described in this Section. The credit or offset shall be at the weekly rate specified under the state workers' compensation law in question. Because the period from the beginning of the regular

176

season to the end of the League Year (25 weeks) is approximately 1.5 times longer than the seventeen week period over which players receive salary, the parties agree that, in calculating the "time" credit or offset as set forth more particularly herein, the Club is entitled to a reduction of 1.5 weeks of a player's workers' compensation award or settlement for each week during the regular season for which a player is awarded or executes a settlement agreement for workers' compensation benefits and for the same period of weeks is paid his full Paragraph 5 Salary.

(A) In the case of salary payments pursuant to Paragraph 5 or 9 of the NFL Player Contract, the Club shall be entitled to a reduction of 1.5 weeks of a player's workers' compensation award or settlement for each week during the regular season in which the player is physically unable to perform his services under his contract due to an injury he suffers while performing services during that contract year, to a maximum of 25 weeks, provided that the player receives his full salary as set forth in Paragraph 5 of his contract for the period in question. For example, if a player receives 3 weeks of Paragraph 5 Salary subsequent to an injury that rendered him unable to perform for three games (regardless of whether the payments were made on a weekly or bi-weekly basis), the Club will be entitled to a reduction of 4.5 (= 3 × 1.5) weeks of the player's workers' compensation award or settlement. As another example, if a player receives 17 weeks of Paragraph 5 Salary subsequent to an injury that rendered him unable to perform all 16 games of the regular season (regardless of whether the payments were made on a weekly or bi-weekly basis), the Club will be entitled to a reduction of 25 (= 17 × 1.5) weeks of the player's workers' compensation award or settlement.

(B) In the event that an Injury Grievance, injury guarantee, or other arbitrable claim where workers' compensation offsets or credits is at issue and within the jurisdiction of the arbitrator, is settled between the player and the Club, or in the event that a Club and player execute an injury-related settlement agreement, the Club shall be entitled to a reduction of 1.5 weeks of a player's workers' compensation award or settlement for each week that the player is deemed entitled to receive his full Paragraph 5 Salary pursuant to the settlement, to a maximum of 25 weeks. The Club and player shall be required to specify in the written settlement agreement the number of weeks for which the player is receiving his full Paragraph 5 Salary under the settlement so that the appropriate number of weeks of the player's workers' compensation award or settlement can be reduced. For example, if a player and a Club settle an Injury Grievance or injury guarantee claim for a specified period of 3 weeks, the Club will be entitled to a reduction of 4.5 (= 3 × 1.5) weeks of the player's workers' compensation award or settlement.

(C) In the event that an arbitrator awards Paragraph 5 Salary in an Injury Grievance, injury guarantee, or other arbitrable claim where workers' compensation offsets or credits is at issue and within the jurisdiction of the arbitrator, for the same period of weeks for which a player has already been awarded workers' compensation benefits or received a workers' compensation settlement, the Club shall be entitled to a reduction of 1.5 weeks of the player's workers' compensation award or settlement for each week the player is deemed entitled to receive his full Paragraph 5 Salary pursuant to the arbitrator's award. For example, if an arbitrator awards a player 3 weeks of Paragraph 5 Salary pursuant to an Injury Grievance award and the player has already been awarded workers' compensation benefits or received a workers' compensation settlement for that

same period, the arbitrator shall reduce the award by an amount equal to 4.5 (= 3 × 1.5) weeks of workers' compensation benefits.

(D) Clubs are not entitled to any credit or offset under this Article against any workers' compensation benefits attributable to the period of time after the last League Year for which the player is entitled to receive salary payments from the Club, even if the player's entitlement to such payments is not determined until after the League Year in question. No payment of any of the following may be used by a Club as a basis for claiming any workers' compensation credit or offset under this Article:

(1) signing bonus;
(2) option bonus;
(3) roster bonus;
(4) incentive bonus;
(5) Performance-based pay earned prior to the date of injury (unless, for any period of time in which a Club would otherwise be entitled to a credit or offset pursuant to this Section, the player's weekly salary would be less than the amount of weekly workers' compensation benefits payable under state law, in which case the performance-based pay could be added by the Club to the player's Paragraph 5 Salary for those weeks in which the Club would be entitled to a credit or offset under this Section);
(6) Deferred compensation (except where the deferred compensation is salary attributable to the weeks for which the player has been awarded or has executed a settlement agreement for workers' compensation benefits as described in this Section in which case the Club is permitted a credit or offset in the same manner as if the salary was not deferred and instead was paid during the League Year in which the player was physically unable to perform his services under his NFL Player Contract due to an injury he suffered while performing services during that contract year);
(7) Severance pay; or
(8) Any other form of compensation other than Paragraph 5 Salary under the NFL Player Contract.

Nothing in this Subsection shall limit or otherwise restrict the Club's ability to claim or receive the dollar-for-dollar credit or offset for an Injury Protection benefit or Extended Injury Protection benefit provided for in Article 3 of this Agreement.

(E) Total and Permanent, Line of Duty and Degenerative Disability Benefits paid pursuant to the Bert Bell/Pete Rozelle NFL Player Retirement Plans and/or related documents are not subject to any credit or offset for workers' compensation benefits, whether or not those benefits are payable during the same period in which the disability payments are payable. Clubs are not entitled to any credit or offset under this Article for any workers' compensation benefits payable to any player against any payments made to any player under the Bert Bell/Pete Rozelle NFL Player Retirement Plans and/or related documents; provided, however, that the receipt of such disability payments by the player shall not affect the Club's right to claim or receive any offsets or credits set forth elsewhere in this Article.

(iii) **Remedies.** If, despite the terms of this Article, a state court or other competent authority nevertheless renders a decision or other determination with an outcome inconsistent with the terms of this Section 4, then the player shall have a right to immediate payment from the Club for the amount of any difference between such

178

outcome and the outcome specified in Subsections (i)–(ii) above. A player may initiate a claim under this Section by filing a written notice by certified mail, fax, or electronically via .pdf with the Management Council and furnishing a copy to the Club involved. The claim shall set forth the name of the matter and jurisdiction in which the improper award was made, the amount of payment requested and the basis for the calculation. The claim must be initiated within 45 days of either the date of execution of this Agreement or the date of any adverse order (whichever is later); provided, however, that in the event the player files an appeal of any adverse order, the time for the player to notify the Club will begin to run from the date the appeal is decided.

(iv) **Time-Offset Fund.** The NFL shall establish a fund which shall bear the cost of additional benefits or associated insurance and related costs (exclusive of professional fees, administrative overhead, penalties or similar costs) incurred by any Club that is unable to obtain a dollar-for-dollar credit or offset for salary, benefits, or other compensation paid or payable to a player against any award or settlement of workers' compensation benefits as a direct result of this Section 4 and/or NFL Arbitration precedent interpreting Paragraph 10 of the NFL Player Contract. For the avoidance of any doubt, the Clubs that were eligible to receive reimbursement under the Prior Agreement shall remain eligible under this Agreement. The parties shall use their best efforts to ensure that all parties involved including the Clubs and their insurance carriers will implement this Subsection (iv) in such a manner as to minimize the costs and expenses associated with this fund.

(v) **Disputes.** Any dispute concerning the operation of Section 4 and/or any payments to a player under Subsection (iii) will be determined under the grievance procedure of Article 43.

*Section 5.* **Carve-Out:** The parties shall immediately establish a joint committee that will make good faith efforts to negotiate a possible California Workers' compensation alternative dispute resolution program on a trial basis (i.e., carve out).

*Section 6.* **Reservation of Rights:** The parties shall retain the positions they held prior to this Agreement with respect to all existing litigation and arbitration involving workers' compensation issues, including without limitation, the federal and state court cases in California (Titans), Illinois (Bears) and New York (Mawae, Harvey) regarding offset issues or choice of law and forum provisions contained in NFL Player Contracts, and nothing in this Article shall affect positions taken in any such pending litigation.

## ARTICLE 42
## CLUB DISCIPLINE

*Section 1.* **Maximum Discipline:**

(a) **2011 League Year.** For the 2011 League Year, the following maximum discipline schedule will be applicable:

(i) Overweight—maximum fine of $470 per lb., which fine may be assessed no more than twice per week, with each week beginning on Monday and ending on Sunday, and with each fine at least three days apart (e.g., Monday–Thursday, Tuesday–Friday, etc.).

(ii) Unexcused late reporting for mandatory off-season minicamp, meeting, practice, transportation, curfew, scheduled appointment with Club physician or trainer, scheduled promotional activity, scheduled workout, weigh-in, or meal—maximum fine of $1,770.

(iii) Failure to promptly report injury to Club physician or trainer—maximum fine of $1,770.

(iv) Losing, damaging or altering Club-provided equipment—maximum fine of $1,770, and replacement cost, if any.

(v) Throwing football into stands—maximum fine of $1,770.

(vi) Unexcused late reporting for or absence from preseason training camp by a player under contract except those signed as an Unrestricted Free Agent pursuant to Article 9—fine of $30,000 per day. For this Subsection and Subsection (vii) below, preseason training camp shall be defined as the period beginning with the first day of a Club's training camp through the final preseason roster reduction date.

(vii) Unexcused late reporting for or absence from preseason training camp by a player under contract signed as an Unrestricted Free Agent pursuant to Article 9—fine of $30,000 per day, plus one week's Paragraph 5 Salary for each preseason game missed.

(viii) Unexcused missed mandatory meeting, practice, curfew, scheduled appointment with Club physician or trainer, material failure to follow Club rehabilitation directions, scheduled promotional activity, scheduled workout, weigh-in, or meal—maximum fine of $9,440.

(ix) Unexcused failure to report to or unexcused departure from mandatory offseason minicamp—maximum fine of $10,000 for the first missed day, which amount shall increase by $10,000 per day for each day of the player's absence or departure (e.g., a player who misses all three days of minicamp may be fined up to $60,000).

(x) Material failure to follow rehabilitation program prescribed by Club physician or trainer—maximum fine of $9,440.

(xi) Unexcused missed team transportation—maximum fine of $9,440 and transportation expense, if any.

(xii) Loss of all or part of playbook, scouting report or game plan—maximum fine of $9,440.

(xiii) Ejection from game—maximum fine of $25,000.

(xiv) Any material curfew violation the night prior to the Club's game may be considered conduct detrimental to the Club.

(xv) Conduct detrimental to Club—maximum fine of an amount equal to one week's salary and/or suspension without pay for a period not to exceed four (4) weeks. This maximum applies without limitation to any deactivation of a player in response to player conduct (other than a deactivation in response to a player's on-field playing ability), and any such deactivation, even with pay, shall be considered discipline subject to the limits set forth in this section. The Non-Injury Grievance Arbitrator's decision in *Terrell Owens* (Nov. 23, 2005) is thus expressly overruled as to any Club decision to deactivate a player in response to the player's conduct.

(b) **Maximum Discipline in Other League Years.** The amounts set forth in Section 1(a) above and Section 7 below are for the 2011 League Year. The amounts for the 2012–2020 League Years shall be as set forth in Exhibit A to this Article.

*Section 2.* **Published Lists:**

(a) All Clubs must publish and make available to all players at the commencement of preseason training camp a complete list of the discipline that can be imposed for both designated offenses within the limits set by the maximum schedule referred to in Section 1 above and for other violations of reasonable Club rules. A Club may notify a player of a violation by providing written notice to the player at the Club or at any address where the Club reasonably expects the player to be located.

(b) The Club will promptly notify the player of any discipline; notice of any Club fine under Subsection 1(a)(vi) or 1(a)(vii) and of any "conduct detrimental" fine or suspension will be sent to the NFLPA.

*Section 3.* **Uniformity:**

(a) Discipline will be imposed uniformly within a Club on all players for the same offense; however, if the Club's published list of discipline imposes fines for designated offenses that are less than the limits set by the maximum schedule set forth in Section 1 above, the Club may specify the events which create an escalation of the discipline, not to exceed such maximum limits, provided the formula for escalation is uniform in its application. Nothing in this Section 3 shall preclude any Club from imposing a fine and/or a suspension without pay for conduct detrimental to the Club, as set forth in Section 1(a) above, in any case in which the same player has committed repeated offenses in the same League Year, whether or not the fines imposed for the player's prior offenses were escalated as described in the immediately preceding sentence of this Section; provided, however, that the NFLPA expressly reserves the right to challenge the imposition of such discipline for conduct detrimental to the Club based upon the absence of just cause and/or any other allowable bases for opposing discipline.

(b) Any disciplinary action imposed upon a player by the Commissioner pursuant to Article 46 will preclude or supersede disciplinary action by the Club for the same act or conduct.

*Section 4.* **Disputes:** Any dispute involving Club discipline must be processed exclusively under Article 43.

*Section 5.* **Deduction:**

(a) Any Club fine will be deducted at the rate of no more than $2,500 from each pay period, if sufficient pay periods remain; or, if less than sufficient pay periods remain, the fine will be deducted in equal installments over the number of remaining pay periods. For the 2016–2020 League Years, the amount will increase from a rate of $2,500 to $3,500 from each pay period. Nothing in this Subsection (a) will apply to a suspension or for a fine under Subsection 1(a)(vi) or 1(a)(vii).

(b) A fine under Subsection 1(a)(vi) or 1(a)(vii) may be deducted from any payments owed to a player under any NFL Player Contract with the Club, or from any salary, bonus installments, Performance-Based Pay, Postseason Pay, Severance Pay or Termination Pay otherwise owed by the Club. The assignment and/or termination of a player's contract after events triggering a fine under Subsection 1(a)(vi) or 1(a)(vii) shall not result in any waiver of the assigning or terminating Club's right to seek to recover the full amount of the fines.

*Section 6.* **NFL Drug and Steroid Policies:** No Club may impose any discipline against a player, including but not limited to terminating the player's Player Contract, as a result of that Player's violation of the Policy on Anabolic Steroids and Related Substances or the NFL Policy and Program on Substances of Abuse, or for failing any drug test, provided, however, that the fact that a player has violated the Policy on Anabolic Steroids and Related Substances or the NFL Policy and Program on Substances of Abuse, or has failed a drug test will not preclude the termination of his Player Contract if such termination is otherwise expressly permissible under this Agreement or the player's Player Contract.

*Section 7.* **Cumulative Fines:** Any player who commits multiple offenses on the same day (e.g., missed mandatory team meeting, late for practice and missed scheduled appointment with trainer) shall be subject to a separate fine for each such offense, within the limits set by the maximum schedule set forth in Section 1 above; provided, however, that the cumulative amount for all such fines on a given day during preseason training camp shall not exceed $20,000, and that the cumulative amount for all such fines on a given day during the regular season or postseason shall not exceed $27,000. The cumulative fine limits set forth in this Section shall not apply to any violation as to which a player may be fined one week's regular season salary or to conduct detrimental to the Club. Nothing in this Section shall preclude the Club from denying payment of the Player's weekly salary or from seeking reimbursement from the Player under any forfeiture provision in the Player's Contract if such denial of payment or forfeiture is otherwise permissible under both the Player's Contract and this Agreement. Nor shall anything in this Section preclude a Club from imposing a fine and/or suspension without pay for conduct detrimental to the Club, as set forth in Section 1(a) above, in any case in which the same player has committed repeated offenses in the same League Year, as described in Section 3 above; provided, however, that the NFLPA expressly reserves the right to challenge the imposition of such discipline for conduct detrimental to the Club based upon the absence of just cause and/or any other allowable bases for opposing discipline.

*Section 8.* **Offset of Preseason Fine Amounts:** In the event that a player under con-

tract is fined under Subsection 1(a)(vi) or 1(a)(vii) for unexcused late reporting for or absence from pre-season training camp and, as the result of such late reporting or absence, the Club also withholds payment, or claims reimbursement, under any forfeiture provision in a Player Contract executed prior to March 8, 2006, then there shall be an offset of the cumulative amount of such daily fines against the amount claimed by the Club under the forfeiture provision, or vice versa. In the 2011 League Year, the offset shall be $13,477 per day for each day the player has been fined, representing the difference between the Prior Agreement's fine for this category of offense ($16,523 per day) and this Agreement's fine for this category of offense ($30,000 per day, or $40,000 per day for the 2016–2020 League Years) effective on August 4, 2011. The amount of such offset shall be increased for the 2012 League Year and each League Year thereafter during the term of this Agreement at the rate of 5% per year. Other than as specifically set forth in this Section, there shall be no offset of fines imposed under this Agreement against claims made by a Club under any permissible forfeiture provision in a Player Contract.

*Section 9.* **Effective Date:** The maximum discipline rules set forth above apply to all discipline imposed on or after August 4, 2011.

EXHIBIT A

## MAXIMUM FINE AMOUNTS FOR 2012–2020 LEAGUE YEARS

| Maximum Discipline for: | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| Overweight / lbs per day | $495 | $520 | $545 | $575 | $600 | $630 | $665 | $695 | $730 |
| Unexcused late reporting for an activity that has been listed in Article 42, Section 1(a)(ii), e.g., missed meal | $1,855 | $1,950 | $2,050 | $2,150 | $2,260 | $2,370 | $2,490 | $2,615 | $2,745 |
| Failure to promptly report injury | $1,855 | $1,950 | $2,050 | $2,150 | $2,260 | $2,370 | $2,490 | $2,615 | $2,745 |
| Losing, damaging or altering Club-provided equipment | $1,855 | $1,950 | $2,050 | $2,150 | $2,260 | $2,370 | $2,490 | $2,615 | $2,745 |
| Throwing football into stands | $1,855 | $1,950 | $2,050 | $2,150 | $2,260 | $2,370 | $2,490 | $2,615 | $2,745 |
| Unexcused late reporting for or absence from preseason training camp by a player under contract, except for those signed as an Un-restricted Free Agent pursuant to Article 9 (Veteran Free Agency); Maximum fine for each day of player's absence | $30,000 | $30,000 | $30,000 | $30,000 | $40,000 | $40,000 | $40,000 | $40,000 | $40,000 |

184

| Maximum Discipline for: | | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 |
|---|---|---|---|---|---|---|---|---|---|---|
| Unexcused late reporting for or absence from pre-season training camp by a player under contract signed as an Unrestricted Free Agent pursuant to Article 9 (Veteran Free Agency); Maximum fine for each day of player's absence, plus one week's regular season salary for each preseason game missed | | $30,000 | $30,000 | $30,000 | $30,000 | $40,000 | $40,000 | $40,000 | $40,000 | $40,000 |
| Unexcused failure to report to or unexcused departure from mandatory off-season minicamp — maximum fine per day for each day thereafter of player's absence | 1st Day | $10,500 | $11,025 | $11,575 | $12,155 | $12,765 | $13,400 | $14,070 | $14,775 | $15,515 |
| | 2nd Day | $21,000 | $22,050 | $23,150 | $24,300 | $25,525 | $26,800 | $28,150 | $29,550 | $31,030 |
| | 3rd Day | $31,500 | $33,075 | $34,730 | $36,465 | $38,290 | $40,205 | $42,215 | $44,325 | $46,540 |
| Cumulative fine amounts for preseason training camp | | $21,000 | $22,050 | $23,150 | $24,310 | $25,525 | $26,800 | $28,140 | $29,550 | $31,025 |
| Cumulative fine amounts for regular season or postseason | | $28,350 | $29,770 | $31,255 | $32,820 | $34,460 | $36,185 | $37,990 | $39,890 | $41,885 |
| Material failure to follow rehabilitation program prescribed by Club physician | | $9,915 | $10,410 | $10,930 | $11,475 | $12,050 | $12,655 | $13,285 | $13,950 | $14,650 |
| Unexcused missed activity that has been listed in Article 42, Section 1(a)(viii), e.g., missed meal | | $9,915 | $10,410 | $10,930 | $11,475 | $12,050 | $12,655 | $13,285 | $13,950 | $14,650 |

185

| Maximum Discipline for: | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 |
|---|---|---|---|---|---|---|---|---|---|
| Unexcused missed team transportation (transportation expenses not included) | $9,915 | $10,410 | $10,930 | $11,480 | $12,050 | $12,655 | $13,300 | $13,950 | $14,650 |
| Loss of all or part of playbook, scouting report or game plan | $9,915 | $10,410 | $10,930 | $11,475 | $12,050 | $12,655 | $13,285 | $13,950 | $14,650 |
| Ejection from game | $26,250 | $27,565 | $28,940 | $30,390 | $31,910 | $33,500 | $35,180 | $36,935 | $38,785 |

186