be processed under Article VII of this Agreement, Non-Injury Grievance.

## ARTICLE XI

## COMMITTEE ON SAFETY AND WELFARE

A Joint Committee on Player Safety and Welfare (hereinafter the "Joint Committee") will be established for the purpose of discussing the player safety and welfare aspects of playing equipment, playing surfaces, stadium facilities, playing rules, player-coach relationships, drug abuse prevention programs, and any other relevant subjects.

Section 1. **Composition:** The Joint Committee will consist of six members: three club representatives (plus advisors) and three NFLPA representatives (plus advisors).

Section 2. **Meetings:** The Joint Committee will hold two regular meetings each year on dates and at sites selected by the Committee. Special meetings may be held at any time and place mutually agreeable to the Committee.

Section 3. **Powers:** The Joint Committee will not have the power to commit or bind either the NFLPA or the Management Council on any issue.

Section 4. **Scope:** The Joint Committee may discuss and examine any subject related to player safety and welfare it desires, and any member of the Committee may present for discussion any such subject. Any Committee recommendation will be made only to the NFLPA, the Management Council, the Commissioner of the NFL, or any appropriate committee of the NFL: such recommendation will be given serious and thorough consideration.

Section 5. **Consultants:** The Joint Committee may employ consultants to assist it in the performance of its functions; the compensation and expenses of any such consultants will be paid in such manner as the Committee decides.

Section 6. **Appointments:** The respective members of the Joint Committee will be selected and the length of their terms fixed under such rules as the NFLPA and the Management Council separately establish; the original appointees on the Committee will be selected within 30 days following the execution of this Agreement.

20

Section 7. **Initial Tasks:** The NFLPA and the Management Council agree that three tasks for the Joint Committee to undertake promptly upon the execution of this Agreement are: (a) a review of all current materials on the player safety aspects of player equipment, playing surfaces and other safety matters, and a determination of whether a moratorium on further installation of artificial turf in NFL stadia is desirable; (b) a determination of whether the convening of a conference on illegal drugs is desirable; and (c) an education program among clubs and players on workmen's compensation and preparation of guidelines on filing of workmen's compensation claims.

Section 8. **Playing Rules:** If, after the formation of the Joint Committee, any playing rule is proposed to be changed, and the Commissioner determines that the adoption of the playing rule change could adversely affect player safety, the Commissioner will refer the proposed playing rule change to this Committee for consideration and recommendation. After deliberation, this Committee may make whatever recommendation it deems appropriate to the Competition Committee of the NFL. No such playing rule change will be made by the clubs until it has been referred to this Committee for consideration and recommendation. Except as so limited, nothing in this section will impair or limit in any way the right of the clubs to make any playing rule change whatsoever.

Section 9. **Competition Committee:** One player-member of the Joint Committee will be invited to attend the annual meeting of the NFL Competition Committee as an observer, to represent the players' viewpoint on NFL playing rules.

## ARTICLE XII

## NFL PLAYER CONTRACT

Section 1. **Form:** The NFL Player Contract form will be revised to conform to the terms of this Agreement. The NFLPA and the Management Council will exert their best efforts to agree upon a revised NFL Player Contract form by April 15, 1977. Following adoption of a revised NFL Player Contract form, that form will be used by all players and clubs for subsequent signings.

21

**Section 2. Changes:** No amendment to the NFL Player Contract form will be effected without NFLPA approval; provided, however, that the player and his club will have the right to agree upon changes in his contract or contracts consistent with the provisions of this Agreement and with the provisions of the NFL Constitution and Bylaws not in conflict with this Agreement.

## ARTICLE XIII

## COLLEGE DRAFT

**Section 1. Time of Draft:** Commencing with the college draft to be held on or about May 1, 1977, and with respect to the college draft to be held on or about May 1 each year thereafter, through at least 1986, the following principles will apply; provided, nevertheless, that the dollar amounts specified in this Article XIII are subject to modification through negotiation between the parties whenever this Agreement or any successor agreement terminates:

**Section 2. Number of Choices:** There will be no more than 336 selection choices in any college draft (in the event of NFL expansion, there will be an additional 12 selection choices per expansion club, except in the first year of expansion, when the expansion clubs may be given additional choices). Subject to such maximum, the clubs may determine the number of choices alloted to a club in any given round, so long as such allotment does not diminish the number of choices available for compensation under Article XV of this Agreement or any successor agreement.

**Section 3. Required Tenders:** In order to qualify within the definition of the term "required tender" as used hereinafter in this Article, the contract or contracts tendered to a rookie player must be, at the club's option, either:

(a) An NFL Player Contract with a stated term of one year, which contract must call for a salary of at least $20,000 ($22,000 in 1980 through 1982), with no signing or reporting bonus and no advances; and the contract must contain an option clause of one year, exerciseable once for at least 110% of the salary in year one; **or**

(b) Two NFL Player Contracts with stated terms of

22

one year each, which contracts must call for salaries in years one and two, respectively, of at least $25,000 and $35,000 ($27,500 and $37,500 in 1980 through 1982), with no signing or reporting bonus and no advances; the contract for year two may contain an option clause of one year, exerciseable once for at least 110% of the salary as in year two; and the contract for year one must provide that in the event the contract is terminated by the club in accordance with its terms, the club will nevertheless be obligated to pay the player the guaranteed amount of $25,000 ($27,500 in 1980 through 1982), less all amounts paid or owing to the player as a result of service rendered under such contract, but not including performance bonus compensation, prior to the termination of the contract; **or**

(c) Three NFL Player Contracts with stated terms of one year each, which contracts must call for salaries in years one through three, respectively, of at least $30,000, $40,000 and $50,000 ($33,500, $43,500 and $53,500 in 1980 through 1982), with no signing or reporting bonus and no advances; the contract for year three may contain an option clause of one year, exerciseable once for at least 110% of the salary as in year three; and the contracts for years one and two, respectively, must provide that in the event that either contract is terminated by the club in accordance with its terms, the club will nevertheless be obligated to pay the player the guaranteed amount of $30,000 and $20,000, respectively ($33,500 and $21,750 in 1980 through 1982), less all amounts paid or owing to the player as a result of service rendered under such contract, but not including performance bonus compensation, prior to the termination of the contract; **or**

(d) Four NFL Player Contracts with stated terms of one year each, which contracts must call for salaries in years one through four, respectively, of at least $35,000, $45,000, $55,000 and $65,000 ($40,000, $50,-000, $60,000 and $70,000 in 1980 through 1982), with no signing or reporting bonus and no advances; the contract for year four may contain an option clause of one year exerciseable once for at least 110% of the salary as in year four; and the contracts for years one and two, respectively, must provide that in the event either contract is terminated by the club in accordance with its terms, the club will nevertheless be obligated

23

to pay the player the guaranteed amount of $35,000 and $45,000, respectively ($40,000 and $50,000 in 1980 through 1982), less all amounts paid or owing to the player as a result of service rendered under such contract, but not including performance bonus compensation, prior to the termination of the contract.

Section 4. **Exclusive Right:** A club which drafts a player will, during the period from the date of such college draft (hereinafter "initial draft") to the date of the next college draft (hereinafter "subsequent draft"), be the only NFL club with which such player may negotiate or sign a contract; provided that, on or before the June 7 immediately following the initial draft, such club has tendered to such player a contract or contracts in the form prescribed in Article XII above, giving the player 15 days to accept (a "required tender"). If, within the period between the initial and subsequent draft, such player has not signed a contract with the club which drafted him in the initial draft, such club loses the exclusive right, which it obtained in the initial draft, to negotiate with the player and the player is then eligible to be drafted by another NFL club in the subsequent draft.

Section 5. **Subsequent Draft:** A club which, in the subsequent draft, drafts a player who (a) was drafted in the initial draft; (b) received a "required tender" from the NFL club which drafted him in the initial draft; and (c) did not sign a contract with such first NFL club prior to the subsequent draft, will, during the period from the date of the college draft held in the following year, be the only NFL club with which such player may negotiate or sign a contract, provided such club has made a "required tender". If such player has not signed a contract within the period between the subsequent draft and the next college draft with the club which drafted him in the subsequent draft, that club loses its exclusive right, which it obtained in the subsequent draft, to negotiate with the player, and the player is free to negotiate and sign a contract at any time thereafter with any NFL club, and any NFL club is then free to negotiate and sign a contract with such player, without any compensation between clubs or first refusal rights of any kind.

Section 6. **No Subsequent Draft:** If a player is drafted by an NFL club in an initial draft and (a) receives a

24

"required tender"; (b) does not sign a contract with an NFL club prior to the subsequent draft; and (c) is not drafted by any NFL club in such subsequent draft, the player is free to negotiate and sign a contract at any time thereafter with any NFL club, and any NFL club is then free to negotiate and sign a contract with such player, without any compensation between clubs or first refusal rights of any kind.

Section 7. **No Required Tender:** If a player is drafted by an NFL club in either an initial or subsequent draft and does not receive a "required tender", the player is free to negotiate and sign a contract with any NFL club on June 8 following such draft and at any time thereafter, and any NFL club is then free to negotiate and sign a contract with such player, without any compensation between clubs or first refusal rights of any kind.

Section 8. **Other Professional Team:** If a player is drafted by an NFL club in an initial draft and, during the period in which he may negotiate and sign a contract with only the club which drafted him, signs a contract with a professional football team not in the NFL that covers at least the season immediately following said initial draft, then such NFL club will retain the exclusive NFL rights to negotiate with and sign the player for the period ending two years from the date of the initial draft, following which two-year period the player is free to negotiate with any NFL club, and any NFL club is free to negotiate with such player, subject to Section 9 below.

Section 9. **Return to NFL:** If a player who has signed a contract with a professional football team not in the NFL desires to return to the NFL two or more years following the date of his initial draft, the NFL club which had drafted the player will have no right of compensation under Article XV, but will have a right of first refusal under the applicable terms and conditions of that Article. The returning player will notify the NFLPA and the NFL of his desire to negotiate a contract with an NFL club, which notice will advise of the date on which he will be free of any contractual obligations, if any. Within 30 days of receipt of such notice by the NFL or the date of the availability of such player, whichever is later, the NFL club which had drafted the player must tender a written contract

25

offer to the player in order to retain the right of first refusal under Section 9.

Section 10. **Unlimited Terms:** Nothing contained herein will prohibit a club from making an offer to a rookie player of a contract containing any terms (such as, without limitation, duration, salary or other compensation, etc.) that are not prohibited by this Agreement, or a rookie player from accepting any such offer and making any proposal or counter-proposal relating to the terms of a contract not prohibited by this Agreement.

Section 11. **Assignment:** In the event that the exclusive right to negotiate with a player is assigned by an NFL club to another NFL club in accordance with NFL procedures, the NFL club to which such right has been assigned will have the same, but no greater, right to negotiate with such player as enjoyed by the club assigning such right, and such player will have the same, but no greater, obligation to the NFL club to which such right has been assigned as he had to the club assigning such right.

Section 12. **Notice:** A "required tender" will be deemed tendered by an NFL club when hand delivered or sent by prepaid certified or registered mail to the player or, if he has designated one in writing, his designated representative.

## ARTICLE XIV

## OPTION CLAUSE

Section 1. **Vested Players:** Upon the execution of this Agreement, any contract or series of contracts thereafter signed by a veteran player who has completed the season in which his fourth year or more of Credited Service under the Bert Bell NFL Player Retirement Plan has been earned will not include an option year, unless an option clause has been individually negotiated by the player and his club for a specific consideration other than compensation for the player's services.

Section 2. **Rookies and Non-Vested Players:** Upon the execution of this Agreement, any one-year contract thereafter signed by a rookie player must include an option year; any other contract or series of contracts thereafter signed by a rookie player may include an option year; and any contract or series of contracts

26

thereafter signed by a veteran player who has not completed the season in which his fourth year of Credited Service under the Bert Bell NFL Player Retirement Plan has been earned may include an option year.

Section 3. **Compensation:** Following the execution of this Agreement, for contracts currently in existence and those signed in the future with option years, the option will be exercised by the club at no less than 110% of the player's salary provided in his contract for the previous year, excluding any signing or reporting bonus. Player will receive 100% of performance bonus provisions where the bonus is earned in the option year.

# ARTICLE XV

## RIGHT OF FIRST REFUSAL/COMPENSATION

Section 1. **Applicability:** Commencing with players who play out the options in their contracts or whose contracts otherwise expire (hereinafter referred to as "veteran free agents") in 1977, and with respect to veteran free agents through at least 1982, the following principles will apply:

Section 2. **Contract Expiration Date:** Commencing in 1978, the expiration date of all then current and future player contracts will automatically be moved up to February 1 of the same year. After February 1, a veteran free agent will be free to negotiate with any club, and any NFL club will be free to negotiate with such player. During 1977 only, a player who has played out the option in his contract or whose contract otherwise would expire in 1977 will be free to negotiate with any NFL club, and any NFL club will be free to negotiate with such player, immediately upon execution of this Agreement.

Section 3. **Offer Sheet:** When a veteran free agent receives an offer to sign a contract or contracts from a new club, which he desires to accept, he will on or before April 15 give to his old club a completed Offer Sheet substantially in the form of Exhibit A attached hereto, signed by the player and by the chief operating officer of the new club, which will contain the "principal terms" (as defined in Section 7 below) of the new club's offer. Subject to Section 10 below, the player's old club, upon receipt of the Offer Sheet, may exer-

27

cise its "right of first refusal", which will have the legal consequences set forth in Section 4 below.

Section 4. **First Refusal Exercise Notice:** Subject to Section 18 below, if, within seven days from the date it receives an Offer Sheet, the veteran free agent's old club gives to him a First Refusal Exercise Notice substantially in the form of Exhibit B attached hereto, such player and his old club will be deemed to have entered into a binding agreement, which they will promptly formalize in an NFL Player Contract(s), containing all the "principal terms" of the Offer Sheet and those terms of the NFL Player Contract(s) not modified by the "principal terms".

Section 5. **No First Refusal Exercise Notice:** Subject to Sections 6 and 10 below, if, within seven days from the date it receives an Offer Sheet, the veteran free agent's old club does not give him a First Refusal Exercise Notice, the player and the new club will be deemed to have entered into a binding agreement, which they will promptly formalize in an NFL Player Contract(s), containing all the "principal terms" of the Offer Sheet, those terms of the NFL Player Contract(s) not modified by the "principal terms", and the non-principal terms offered to the player by the new club.

Section 6. **One Offer Sheet:** There may be only one Offer Sheet signed by both a club and a veteran free agent outstanding at any one time. An Offer Sheet, before it is given to the veteran free agent's old club, may be revoked or withdrawn only upon the written consent of the new club and the player. An Offer Sheet, after it is given to a veteran free agent's old club, may be revoked or withdrawn only upon the written consent of the old club, the new club and the player. In either of such events, a veteran free agent will be free to negotiate with any NFL club, and any NFL club will be free to negotiate with such player, subject only to his old club's renewed right of first refusal.

Section 7. **Principal Terms:** For purposes of this Article, the "principal terms" will include the following: (a) the salary the new club will pay to the veteran free agent and/or his designees, currently and/or as deferred compensation in specified installments on specified dates, in consideration for his services as a football player under the contract or contracts; (b) any signing or reporting bonus the new club will pay to the veteran free

28

agent and/or his designees, currently and/or deferred, and the terms thereof; and (c) any modification of and/or addition to the terms contained in the NFL Player Contract form requested by the veteran free agent and acceptable to the new club, which relate to terms of the player's employment as a football player (which will be evidenced by a copy of the NFL Player Contract form, marked to show changes).

Section 8. **Non-Principal Terms:** For purposes of this Article, the "principal terms" will not include any of the following: (a) any loan the new club will make to the veteran free agent and/or his designees under the contract or contracts, and the terms thereof and security therefor, if any; (b) any performance bonus the new team will pay to the veteran free agent under the contract or contracts; (c) a description of any property other than money which the new club will provide or make available to the veteran free agent and/or his designees under the contract or contracts; (d) any investment opportunity which the new club will provide or make available to the veteran free agent and/or his designees; (e) any money and/or property the new club will pay, provide or make available to the veteran free agent and/or his designees in consideration for services by him or others; (f) any intangible benefits or advantages that might accrue to the veteran free agent as a consequence of living and playing in the geographic area of the new club; (g) any promise by the new club of a try-out, audition or introduction for the possibility of performing services or earning income other than that as a football player; and (h) any other terms not included within the "principal terms" set forth in Section 7 above.

Section 9: **Qualifying Offer:** For purposes of Section 10, 11, and 12 of this Article, a "qualifying offer" will include the sum of: (a) the total amount of salary to be paid under the contract or contracts, averaged over the full number of years of the contract or contracts, but no more than five years; and (b) any signing or reporting bonus to be paid under the contract or contracts, prorated over the full number of years of the contract or contracts, but no more than five years.

Section 10. **Qualification for First Refusal:** Anything above in this Article to the contrary notwithstanding, in order for a veteran free agent's old club to be entitled

to a right of first refusal, the player must have been given a "qualifying offer" in writing either by his old club on or before February 1 (on or before 15 days from the date of execution of this Agreement in 1977), or by a new club on or before April 15 (but not before March 16 in 1977) to be represented by an Offer Sheet, in the following amounts: $30,000 or more ($35,000 in 1980 through 1982) if the player has not yet completed the season in which his 4th year of Credited Service under the Bert Bell NFL Player Retirement Plan has been earned; (b) $40,000 or more if he has not yet completed the season in which his 5th year of Credited Service has been earned; (c) $45,000 or more if he has not yet completed the season in which his 6th year of Credited Service has been earned; and (d) an increase of $5,000 for each year of Credited Service thereafter, in accordance with the graphs portrayed in Exhibit C and D attached hereto. If the veteran free agent has not been given a "qualifying offer" either by his old club or a new club by the dates specified above, then Section 17 below will come into play.

Section 11. **Qualification for Compensation:** In order for a veteran free agent's old club to be entitled to a right of compensation, the player must have been given a "qualifying offer" by a new club on or before April 15, to be represented by an Offer Sheet, in the following amounts: (a) $50,000 ($55,000 in 1980 through 1982) or more if the player has not yet completed the season in which his 7th year (8th year in 1980 through 1982) of Credited Service under the Bert Bell NFL Player Retirement Plan has been earned; (b) $55,000 or more if the player has not yet completed the season in which his 8th year of Credited Service has been earned; (c) $60,000 or more if the player has not yet completed the season in which his 9th year of Credited Service has been earned; (d) $65,000 or more ($70,000 in 1980 through 1982) if the player has not yet completed the season in which his 10th year of Credited Service has been earned; (c) $75,000 or more ($80,000 in 1980 through 1982) if the player has not yet completed the season in which his 11th year of Credited Service has been earned; (f) $90,000 or more ($95,000 in 1980 through 1982) if the player has not yet completed the season in which his 12th year of Credited Service has been earned; and (g) the same ratio of "qualifying

30

offer" to years of service thereafter, in accordance with the graphs portrayed in Exhibits C and D. Anything in Subsections (d) through (g) to the contrary notwithstanding, the "qualifying offer" with respect to veteran free agent quarterbacks will increase by $5,000 for each year of Credited Service after $60,000 if the player has not yet completed the season in which his 9th year of Credited Service has been earned, in accordance with Exhibits C and D.

Section 12. **Amount of Compensation:** Subject to Section 10 above, if, within seven days from the date it receives an Offer Sheet, a veteran free agent's old club, which is entitled to a right of first refusal or a right of compensation, chooses not to exercise its right of first refusal, then the player and the new club will be deemed to have entered into a binding agreement as provided in Section 5 above, and the player's old club will receive the following compensation: (a) if the "qualifying offer" is $50,000 or more, but less than $65,000 ($55,000 and $70,000 in 1980 through 1982), the new club's 3rd round selection choice, or a better 3rd round choice obtained by assignment from another NFL club, in the next immediate college draft; (b) if the "qualifying offer" is $65,000 or more, but less than $75,000 ($70,000 and $80,000 in 1980 through 1982), the new club's 2nd round selection choice, or a better 2nd round choice obtained by assignment from another NFL club, in the next immediate college draft; (c) if the "qualifying offer" is $75,000 or more, but less than $125,000 ($80,000 and $130,000 in 1980 through 1982), the new club's 1st round selection choice, or a better 1st round choice obtained by assignment from another NFL club, in the next immediate college draft; (d) if the "qualifying offer" is $125,000 or more, but less than $200,000 ($130,000 and $200,000 in 1980 through 1982), the new club's 1st and 2nd round selection choices, or better 1st and 2nd round choices obtained by assignment from other NFL clubs, in the next immediate college draft; and (e) if the "qualifying offer" is $200,000 or more, the new club's 1st round selection choices, or better 1st round choices obtained by assignment from other NFL clubs, in the next immediate two college drafts, all in accordance with Exhibit C and D.

Section 13. **Absences of Choice:** A club not having the future selection choice or choices necessary to provide

31

compensation in the event the veteran free agent's old club chooses to exercise its right of compensation, if any, may not sign an Offer Sheet as provided in Section 3 above.

Section 14. **Copies:** Within seven days after an Offer Sheet is signed by a player and a new club, that club will cause a copy thereof to be given to the NFL; and within seven days after the giving of a First Refusal Exercise Notice to the veteran free agent, the old club will cause a copy thereof to be given to the NFL.

Section 15: **Circulation of Veteran Free Agent List:** The NFL will prepare and circulate to all NFL clubs and the NFLPA a list containing the names of all players who will become veteran free agents as of February 1. The list will be circulated between January 1 and February 1 of each year following the date of this Agreement.

Section 16. **Notice:** Any Offer Sheet, First Refusal Exercise Notice, or other writing required or permitted to be given under this Article will be hand delivered or sent by prepaid certified or registered mail addressed as follows: (a) To any club: addressed to that club at the principal address of such club as then listed on the records of the NFL or at that club's principal office, to the attention of the club president; (b) To the NFL: addressed to the NFL at 410 Park Avenue, New York, New York, 10022, to the attention of the Commissioner; (c) To the NFLPA: addressed to the NFLPA at 1300 Connecticut Avenue, N.W., Washington, D.C., 20036, to the attention of the Executive Director; and (d) To a veteran free agent: to his address listed on the Offer Sheet and, if the player designates a representative on the Offer Sheet and lists such representative's address thereon, a copy will be sent to such representative at such address. An Offer Sheet will be deemed given only when actually received by the player's old club. A First Refusal Exercise Notice will be deemed given when sent by the player's old club. Other writings required or permitted to be given under this Article (including a "qualifying offer") will be deemed given when hand delivered or sent by prepaid certified or registered mail addressed as above required.

Section 17. **Re-Signing:** If a veteran free agent receives no offer to sign a contract or contracts with a new NFL club pursuant to this Article, and his old club advises

32

him in writing by June 1 that it desires to re-sign him, the player may, at his option within 15 days, sign either (a) a contract or contracts with his old club at its last best written offer given on or before February 1 of that year, or (b) a one-year contract (with no option year) with his old club at 110% of the salary provided in his contract for the last preceding year (if the player has just played out the option year, the rate will be 120%). If the player's old club does not advise him in writing by June 1 that it desires to re-sign him, the player will be free on June 2 to negotiate and sign a contract or contracts with any NFL club, and any NFL club will be free to negotiate and sign a contract or contracts with such player, without any compensation between clubs or first refusal rights of any kind.

Section 18. **Extreme Personal Hardship:** In the event of alleged extreme personal hardship or an alleged violation of Article V, Section 1, of this Agreement, a veteran free agent may, within seven days after the February 1 expiration date of his contract, unless the condition arises after that date, file a non-injury grievance pursuant to Article VII of this Agreement. If the PCRC is unable to resolve the grievance, and should the outside arbitrator conclude that such extreme personal hardship objectively exists or that there has been a substantive violation of Article V, Section 1, then he may deny to the player's old club its right of first refusal. In the event a club's first refusal rights are denied under this Section because of extreme personal hardship, the club's last written contract offer to the player will constitute a "qualifying offer" for compensation pursuant to Section 11 of Article XV.

33

**EXHIBIT A**

## First Refusal Offer Sheet

Name  of  Player:                              Date:


Address  of  Player:                      Name  of  New  Club:


Name and Address of Player's          Name of Old Club:
Representative   Authorized   to
Act for  Player:


### Principal Terms of NFL Player Contract or Contracts with New Club:

[Supply Information on this Sheet or on Attachment]


(a)  Salary, including deferred compensation:


(b)  Signing or reporting bonus, if any:


(c)  Modifications and additions to NFL Player Con-
      tract(s): [attached marked-up copy of NFL Play-
      er Contract(s)]


Player:                              New Club:


By .........................................     By ..................................
                                                 Chief Operating Officer

34

**EXHIBIT B**

## First Refusal Exercise Notice

Name of Player:                          Date:

Address of Player:                       Name  of  Old  Club:

Name  and  Address  of  Player's        Name  of  New  Club:
Representative  Authorized  to
Act  for  Player:

    The  undersigned  member  club  of  the  NFL  hereby
exercises  its  Right  of  First  Refusal  under  the  Collective
Bargaining  Agreement  dated  March  1,  1977,  so  as  to
create  a  binding  agreement  with  the  player  named  above
containing  the  "principal  terms"  set  forth  in  the  First
Refusal  Offer  Sheet,  a  copy  of  which  is  attached  hereto,
and  those  terms  of  the  NFL  Player  Contract(s)  not  modi-
fied  by  such  "principal  terms".

Old  Club

By  .............................................
    Chief  Operating  Officer

35

## EXHIBIT C

# FIRST REFUSAL \ COMPENSATION
### 1977, 1978 AND 1979



**Under red line**—NO FIRST REFUSAL

**Under black line**—NO COMPENSATION

36

## EXHIBIT D

# FIRST REFUSAL \ COMPENSATION
### 1980 AND 1981



**Under red line**—NO FIRST REFUSAL

**Under black line**—NO COMPENSATION

37

# ARTICLE XVI

## WAIVER SYSTEM

Section 1. **Release:** Whenever a player who has completed the season in which his fourth year or more of Credited Service under the provisions of the Bert Bell NFL Player Retirement Plan as of January 1, 1976, has been earned is placed on waivers, claimed and would be awarded, the club having requested waivers will immediately advise the player of such fact, provided the waiver request has taken place within the time period of February 1 to the end of the NFL intra-conference trading period. Within 24 hours after receipt of such information, the player may, at his option, give written notice to the club having requested waivers that he desires to terminate his contract or contracts and obtain his unconditional release. However, should the player fail to give such notice within the 24-hour period, his contract will be awarded to the claiming club in accordance with the rules prescribed in the 1976 NFL Constitution and Bylaws. In the event the player requests his unconditional release, the player and the NFLPA will be advised promptly by the NFL which clubs claimed the player.

Section 2. **Contact:** Coaches or any other persons connected with another NFL club are prohibited from contacting any player placed on waivers until such time as the player is released by the waiving club. Whenever possible, the club will give the player written notice that he has cleared waivers within 24 hours after he has cleared.

Section 3. **Ineligibility:** Any NFL player who is declared ineligible to compete in a pre-season, regular season or post-season game because of a breach of waiver procedures and regulations or any other provision of the 1976 NFL Constitution and Bylaws by any NFL club by whom he is employed will be paid the salary or other compensation which he would have received if he had not been declared ineligible, which, in any event, will be a minimum of one week's salary and, when applicable, expense payments.

## ARTICLE XVII

### EXPANSION

Section 1. **Seattle and Tampa Bay:** Within 30 days after execution of this Agreement, any veteran player selected in the 1976 expansion allocation by Seattle or Tampa Bay who was on that club's Active List or Injured Reserve List at the end of the 1976 regular season will receive a bonus of $2,500.

Section 2. **Veteran Allocation:** In the event the clubs make a determination after the execution of this Agreement to expand the number of clubs, it is agreed upon that an expansion allocation of veteran players may be held on the terms decided by the clubs.

Section 3. **Future Expansion:** Any veteran player selected in any expansion allocation subsequent to the execution of this Agreement will receive a bonus of $2,500 after reporting upon invitation to the expansion club's first pre-season training camp and passing the club's physical examination; and an additional bonus of $2,500 upon making the expansion club's Active List at any time during the club's first regular season.

## ARTICLE XVIII

### OTHER PROVISIONS

Section 1. **CFL Rule:** Commencing with the 1977 season, a player who has practiced and/or played in the CFL may be employed by an NFL club in the same season so long as he is signed by the NFL club on or before July 15 of the year in question.

Section 2. **Physically Unable to Perform:** Any player placed on Reserve as Physically Unable to Perform under the terms and conditions of the 1976 Constitution and Bylaws will be paid at the rate of his full contract salary while on such Reserve.

Section 3. **Non-Football Injury:** The contract of a player placed on Reserve as Non-Football Injury or Illness (N-F/I) under the terms and conditions of the 1976 NFL Constitution and Bylaws will not be tolled for the period of his failure to perform his services under the contract and will continue to run as if the player were