Exhibit 5



# NFL MANAGEMENT COUNCIL

# 1982 COLLECTIVE BARGAINING AGREEMENT



NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION

# Table of Contents

**Page**

PREAMBLE ........................................................ 9
Article I.      GOVERNING AGREEMENT ................... 9
  Section  1.   Conflicts ........................................ 9
  Section  2.   Full Force and Effect ......................... 9
  Section  3.   Implementation .............................. 10
  Section  4.   Management Rights .......................... 10
Article II.     SCOPE OF AGREEMENT ..................... 10
  Section  1.   Scope .......................................... 10
  Section  2.   Arbitration ................................... 10
Article III.    NO STRIKE/LOCKOUT/SUIT .............. 11
  Section  1.   No Strike/Lockout ........................... 11
  Section  2.   No Suit ........................................ 11
Article IV.     UNION SECURITY ............................ 12
  Section  1.   Union Security ............................... 12
  Section  2.   Check-off ..................................... 12
  Section  3.   NFLPA Meetings ............................. 12
  Section  4.   Disputes ...................................... 12
  Section  5.   Other Check-off .............................. 13
  Section  6.   Procedure for Enforcement ................. 13
Article V.      PLAYER SECURITY ........................... 13
  Section  1.   No Discrimination ........................... 13
  Section  2.   Personal Appearance ........................ 13
Article VI.     CLUB DISCIPLINE ........................... 13
  Section  1.   Maximum Discipline ......................... 13
  Section  2.   Published Lists ............................... 14
  Section  3.   Uniformity .................................... 14
  Section  4.   Disputes ...................................... 15
  Section  5.   Deductions .................................... 15
Article VII.    NON-INJURY GRIEVANCE .................. 15
  Section  1.   Definition ..................................... 15
  Section  2.   Initiation ..................................... 15
  Section  3.   Filing .......................................... 16
  Section  4.   Joint Fact Finding ........................... 16
  Section  5.   Joint Fact Finding Report .................. 16
  Section  6.   Player-Club Relations Committee ....... 16
  Section  7.   Appeal ........................................ 17
  Section  8.   Arbitrators ................................... 17
  Section  9.   Hearing ....................................... 18
  Section 10.   Arbitrator's Decision and Award ........ 19
  Section 11.   Integrity and Public Confidence .......... 19
  Section 12.   Time Limits ................................... 19
  Section 13.   Representation ............................... 20
  Section 14.   Costs .......................................... 20

Article VIII.   COMMISSIONER DISCIPLINE ............... 20
   Section   1.   Commissioner Discipline ..................... 20
   Section   2.   Time Limits ........................................ 21
   Section   3.   Representation .................................. 21
   Section   4.   Costs ................................................ 21
   Section   5.   One Penalty ...................................... 21
   Section   6.   Fine Money ...................................... 21
Article IX.   INJURY GRIEVANCE ........................... 21
   Section   1.   Definition ......................................... 21
   Section   2.   Filing ............................................... 21
   Section   3.   Answer ............................................. 22
   Section   4.   Neutral Physician ............................ 22
   Section   5.   List .................................................. 23
   Section   6.   Appeal ............................................. 23
   Section   7.   Hearing ............................................ 23
   Section   8.   Miscellaneous .................................. 24
   Section   9.   Expenses .......................................... 24
   Section 10.   Pension Credit ................................. 25
   Section 11.   Payment .......................................... 25
Article X.   INJURY PROTECTION ......................... 25
   Section   1.   Qualification .................................... 25
   Section   2.   Benefit ............................................. 26
   Section   3.   Disputes ........................................... 26
Article XI.   COMMITTEE ON SAFETY AND
                        WELFARE ........................................ 26
   Section   1.   Composition ..................................... 26
   Section   2.   Meetings .......................................... 26
   Section   3.   Powers ............................................. 27
   Section   4.   Scope ............................................... 27
   Section   5.   Consultants ...................................... 27
   Section   6.   Appointments ................................... 27
   Section   7.   Initial Tasks .................................... 27
   Section   8.   Competition Committee ..................... 27
   Section   9.   Playing Rules ................................... 27
Article XII.   NFL PLAYER CONTRACT ................... 28
   Section   1.   Form ................................................ 28
   Section   2.   Changes ........................................... 28
Article XIII.   COLLEGE DRAFT ............................. 29
   Section   1.   Time of Draft ................................... 29
   Section   2.   Number of Choices ............................ 29
   Section   3.   Exclusive Right ................................. 29
   Section   4.   Subsequent Draft .............................. 29
   Section   5.   No Subsequent Draft ......................... 30
   Section   6.   Other Professional Team ................... 30
   Section   7.   Return to NFL .................................. 30
   Section   8.   Pre-1983 .......................................... 31
   Section   9.   Assignment ...................................... 31

4

Article XIV.    OPTION CLAUSE ..................................... 31
    Section  1.    Vested Players ................................. 31
    Section  2.    Rookies and Non-Vested Players ........ 31
    Section  3.    Compensation ................................. 31
Article XV.     RIGHT OF FIRST REFUSAL/
                COMPENSATION ................................. 32
    Section  1.    Applicability ................................... 32
    Section  2.    Contract Expiration Date ................... 32
    Section  3.    Offer Sheet ................................... 32
    Section  4.    First Refusal Exercise Notice ............. 32
    Section  5.    No First Refusal Exercise Notice ........ 32
    Section  6.    One Offer Sheet ............................. 33
    Section  7.    Principal Terms .............................. 33
    Section  8.    Non-Principal Terms ......................... 33
    Section  9.    Qualifying Offer .............................. 34
    Section 10.    Qualification for First Refusal .......... 34
    Section 11.    Qualification for Compensation ......... 34
    Section 12.    Amount of Compensation ................... 35
    Section 13.    Absences of Choice .......................... 37
    Section 14.    Copies ......................................... 37
    Section 15.    Circulation of Veteran Free
                Agent List ................................. 37
    Section 16.    Notice ......................................... 37
    Section 17.    Re-Signing ................................... 38
    Section 18.    Extreme Personal Hardship ............... 38
First Refusal Offer Sheet .................................... 40
First Refusal Exercise Notice ............................... 41
First Refusal/Compensation Charts ..................... 42, 43
Article XVI.    WAIVER SYSTEM ................................ 44
    Section  1.    Release ........................................ 44
    Section  2.    Contact ....................................... 44
    Section  3.    Ineligibility .................................. 44
    Section  4.    Notice of Termination ....................... 44
    Notice of Termination .................................... 45
Article XVII.   EXPANSION .................................... 46
    Section  1.    Veteran Allocation ........................... 46
    Section  2.    Future Expansion ............................ 46
Article XVIII.  OTHER PROVISIONS ............................ 46
    Section  1.    CFL Rule ..................................... 46
    Section  2.    Physically Unable to Perform ............ 46
    Section  3.    Non-Football Injury ........................ 46
Article XIX.    SQUAD SIZE .................................... 47
    Section  1.    Active List ................................... 47
    Section  2.    Pre-Season ................................... 47
    Section  3.    Inactive List ................................. 47

5

Article XX.      OFF-SEASON TRAINING CAMPS ......... 47
    Section   1.   Number ............................................... 47
    Section   2.   Length ............................................... 47
    Section   3.   Expenses ............................................. 48
    Section   4.   Contact .............................................. 48
    Section   5.   Injuries ............................................. 48
Article XXI.     PRE-SEASON TRAINING CAMPS ......... 48
    Section   1.   Definition ........................................... 48
    Section   2.   Room and Board ................................. 48
    Section   3.   Rookie Per Diem ............................... 48
    Section   4.   Veteran Per Diem .............................. 48
    Section   5.   Reporting ........................................... 49
    Section   6.   Telephones ......................................... 49
    Section   7.   Expenses ............................................. 49
Article XXII.    SALARIES ....................................... 50
    Section   1.   Salary ............................................... 50
    Section   2.   Other Compensation ........................... 51
    Section   3.   Arbitration ......................................... 51
    Section   4.   Payment ............................................. 51
    Section   5.   Re-opener ........................................... 51
    Section   6.   Length of Regular Season ................... 52
Article XXIII.   MONEY NOW ................................... 53
    Section   1.   Amount .............................................. 53
    Section   2.   Payment ............................................. 53
    Section   3.   Game Pay ........................................... 53
Article XXIV.    SEVERANCE PAY ............................ 53
    Section   1.   Amount .............................................. 53
    Section   2.   Payment ............................................. 54
Article XXV.     MEAL ALLOWANCE ....................... 55
    Section   1.   Reimbursement ................................... 55
    Section   2.   Travel Day .......................................... 55
Article XXVI.    DAYS OFF ...................................... 55
    Section   1.   Rate ................................................... 55
    Section   2.   Requirements ...................................... 55
Article XXVII.   MOVING AND TRAVEL EXPENSES .... 55
    Section   1.   Qualification ....................................... 55
    Section   2.   Moving Expenses ................................ 56
    Section   3.   Travel Expenses .................................. 56
    Section   4.   Transportation ..................................... 56
Article XXVIII.  POST-SEASON PAY ........................ 57
    Section   1.   System ............................................... 57
    Section   2.   Compensation ..................................... 57
    Section   3.   Wild Card Game; Division
                       Play-off Game ............................. 57
    Section   4.   Conference Championship;
                       Super Bowl Game ......................... 57
    Section   5.   Payment ............................................. 58

Article XXIX. PRO BOWL GAME ................................... 59
Section 1. Compensation ............................... 59
Section 2. Selection ................................... 59
Section 3. Wives ...................................... 59
Section 4. Injury ..................................... 59
Section 5. Payment ................................... 59
Article XXX. RETENTION OF BENEFITS ................... 59
Article XXXI. PLAYERS' RIGHTS TO MEDICAL
CARE AND TREATMENT ................... 59
Section 1. Club Physician ........................... 59
Section 2. Club Trainers ............................. 60
Section 3. Players' Right to a Second Medical
Opinion ................................. 60
Section 4. Players' Right to a Surgeon of
His Choice .............................. 60
Section 5. Standard Minimum Pre-Season
Physical ................................. 60
Section 6. Chemical Dependency Program .......... 60
Section 7. Testing .................................... 61
Section 8. Confidentiality ........................... 61
Article XXXII. ACCESS TO PERSONNEL AND
MEDICAL RECORDS ........................ 61
Section 1. Personnel Records ......................... 61
Section 2. Medical Records .......................... 62
Article XXXIII. GROUP INSURANCE ........................... 62
Section 1. Life ....................................... 62
Section 2. Major Medical ........................... 62
Section 3. Dental .................................... 62
Section 4. Other Benefits ........................... 62
Section 5. Carrier .................................... 62
Article XXXIV. RETIREMENT PLAN ........................... 63
Section 1. Maintenance .............................. 63
Section 2. Contributions ............................. 63
Section 3. 1974 and 1975 ........................... 64
Section 4. Number of Clubs ......................... 64
Section 5. Obligations ............................... 64
Section 6. Retirement Board ......................... 64
Section 7. Actuaries ................................. 64
Section 8. Amendments .............................. 65
Section 9. Conformance .............................. 66
Article XXXV. TERMINATION PAY ........................... 66
Section 1. Payment .................................. 66
Section 2. One Week ................................ 66
Article XXXVI. WORKER'S COMPENSATION ............ 67
Section 1. Benefits ................................... 67
Section 2. Rejection of Coverage ..................... 67
Section 3. Arbitration ................................ 67

7

Article XXXVII. MISCELLANEOUS ................................. 67
   Section  1.  Endorsements ............................... 67
   Section  2.  Appearances ........................................ 67
   Section  3.  Promotion ............................................. 67
   Section  4.  Deductions ........................................... 68
   Section  5.  Public Statements ................................ 68
   Section  6.  Addresses ............................................ 68
   Section  7.  NFLPA Tickets .................................. 68
   Section  8.  Player Tickets ..................................... 68
   Section  9.  Tests .................................................... 68
   Section 10.  League Security ................................. 69
Article XXXVIII. DURATION OF AGREEMENT .......... 69
   Section  1.  Effective Date .................................... 69
   Section  2.  Termination Date ............................... 69
   Section  3.  Termination ........................................ 69
   Section  4.  Ratification ........................................ 69
Appendix A   CHECK-OFF AUTHORIZATION ............ 71
Appendix C   ENFORCEMENT OF UNION
              SECURITY ........................................ 72
Appendix D   STANDARD MINIMUM PRE-SEASON
              PHYSICAL EXAMINATION ................. 74
Appendix E   .................................................................. 77
Appendix F   .................................................................. 78
Appendix G   .................................................................. 79
Appendix H   .................................................................. 81
Appendix I   .................................................................. 82
Appendix J   .................................................................. 84
Appendix K   .................................................................. 85
Appendix L   .................................................................. 86
Appendix M   .................................................................. 87

# PREAMBLE

This Agreement, which is the product of bona fide, arms-length collective bargaining, is made and entered into on the 11th day of December, 1982, in accordance with the provisions of the National Labor Relations Act, as amended, by and between the National Football League Management Council ("Management Council"), which is recognized as the sole and exclusive bargaining representative of present and future employer member clubs of the National Football League, and the National Football League Players Association ("NFLPA"), which is recognized as the sole and exclusive bargaining representative of present and future employee players in the NFL and as set forth in NLRB Certification #18-RC-8308, dated January 22, 1971.

# ARTICLE I
## GOVERNING AGREEMENT

Section 1. **Conflicts:** The provisions of this Agreement supersede any conflicting provisions in the Standard Player Contract, the NFL Player Contract, the NFL Constitution and Bylaws, the Bert Bell NFL Player Retirement Plan and Trust Agreement, or any other document affecting terms and conditions of employment of NFL players and all players, clubs, the NFLPA, the NFL, and the Management Council will be bound hereby.

Section 2. **Full Force and Effect:** Any provisions of the Standard Player Contract, the NFL Player Contract, the NFL Constitution and Bylaws, the Bert Bell NFL Player Retirement Plan and Trust Agreement, or any other document affecting terms and conditions of employment of NFL players, which are not superseded by this Agreement, will remain in full force and effect for the continued duration of this Agreement, and, where applicable, all players, clubs, the NFLPA, the NFL, and the Management Council will be bound thereby. It is recognized that the NFLPA has not participated in the promulgation of the NFL Constitution and Bylaws. However, the provisions of the NFL Constitution and Bylaws will apply to players except where superseded by the provisions of this Agreement.

Section 3. **Implementation:** The NFLPA and Management Council will use their best efforts to faithfully carry out the terms and conditions of this Agreement and to see that the terms and conditions of this Agreement are carried out in full by players and clubs.

Section 4. **Management Rights:** The NFL clubs maintain and reserve the right to manage and direct their operations in any manner whatsoever, except as specifically limited by the provisions of this Agreement.

# ARTICLE II
## SCOPE OF AGREEMENT

Section 1. **Scope:** This Agreement represents the complete understanding of the parties on all subjects covered herein, and there will be no change in the terms and conditions of this Agreement without mutual consent. Except as otherwise provided in Article XXII, Section 5 on Salaries and Appendix C on Union Security, the NFLPA and the Management Council waive all rights to bargain with one another concerning any subject covered or not covered in this Agreement for the duration of this Agreement; provided, however, that if any proposed change in the NFL Constitution and Bylaws during the term of this Agreement could significantly affect the terms and conditions of employment of NFL players, then the Council will give the NFLPA notice of and negotiate the proposed change in good faith.

Section 2. **Arbitration:** The question of whether or not the parties engaged in good faith negotiations, or whether any proposed change in the NFL Constitution and Bylaws would violate or render meaningless any provision of this Agreement, may be the subject of a noninjury grievance under Article VII of this Agreement. If the arbitrator finds that either party did not engage in good faith negotiations, or that the proposed change would violate or render meaningless any provision of this Agreement, he may enter an appropriate order, including to cease and desist from implementing or continuing the practice or proposal in question; provided, however, that the arbitrator may not compel either party to this agreement to agree to anything or require the making of a concession by either party in negotiations.

10

# ARTICLE III
## NO STRIKE/LOCKOUT/SUIT

Section 1. **No Strike/Lockout:** Except as otherwise provided in Article XXII, Section 5 on Salaries and Appendix C on Union Security neither the NFLPA nor any of its members will engage in any strike, work stoppage, or other concerted action interfering with the operations of the NFL or any club for the duration of this Agreement, and no club, either individually or in concert with other clubs, will engage in any lockout for the duration of this Agreement. Any claim by the Management Council that the NFLPA has violated this Article III, Section 1, will not be subject to the grievance procedure or the arbitration provisions of this Agreement and the Management Council will have the right to submit such claim directly to the courts.

Section 2. **No Suit:** The NFLPA agrees that neither it nor any of its members nor any member of its bargaining unit will sue, nor support financially or administratively, nor provide testimony or affidavit in, any suit against the NFL or any club with respect to any claim relating to any aspect of the NFL rules, including, without limitation, the Standard Player Contract, the NFL Player Contract, the NFL Constitution and Bylaws, the college draft, the option clause, the right of first refusal or compensation, the waiver system, the trading of players, tampering, and the maintenance of certain reserve lists; provided, however, that nothing contained in this Section 2 will prevent the NFLPA or any player from asserting that any club, acting individually or in concert with other clubs, or the Management Council has breached the terms of this Agreement, the Standard Player Contract, the NFL Player Contract, or the NFL Constitution and Bylaws, and from processing such asserted breach as a non-injury grievance under Article VII of this Agreement. The Management Council agrees that neither it nor any of its member clubs will sue any player with regard to his participation in any NFLPA-sponsored "All-Star" game in 1982.

11

# ARTICLE IV
## UNION SECURITY

Section 1. **Union Security:** Every NFL player has the option of joining or not joining the NFLPA; provided, however, that as a condition of employment commencing with the execution of this Agreement and for the duration of this Agreement and wherever and whenever legal: (a) any active player who is or later becomes a member in good standing of the NFLPA must maintain his membership in good standing in the NFLPA; and (b) any active player (including a player in the future) who is not a member in good standing of the NFLPA whose initial employment with an NFL club began or begins subsequent to February 1, 1974 must, on the 30th day following the beginning of his employment or the execution of this Agreement, whichever is later, pay, pursuant to Section 2 below or otherwise to the NFLPA an annual service fee in the same amount as any initiation fee and annual dues required of members of the NFLPA.

Section 2. **Check-off:** Commencing with the execution of this Agreement, each club will check-off the intiation fee and annual dues or service charge, as the case may be, in equal weekly or biweekly installments from each pre-season and regular season pay check, beginning with the first pay check after the date of the first pre-season squad cutdown, for each player for whom a current check-off authorization (copy attached hereto as Appendix A and made a part of this Agreement) has been provided to the club. The club will forward the check-off monies to the NFLPA within seven days of the check-off.

Section 3. **NFLPA Meetings:** The NFLPA will have the right to conduct three meetings on club property each year, provided that the player rep or NFLPA office has given the club at least seven days notice of its desire to hold such a meeting. No meeting will be held at a time which would disrupt a coach's team schedule.

Section 4. **Disputes:** Any dispute over compliance with, or the interpretation, application or administration of this Article will be processed pursuant to Article VII. Any decision of an outside arbitrator pursuant thereto will constitute full, final

12

and complete disposition of the dispute, and will be binding on the player(s) and club(s) involved and the parties to this agreement.

Section 5. **Other Check-off:** Commencing with the execution of this Agreement, the clubs will be required to honor any request by an individual player for check-off of: (a) Savings deposits in the Professional Athletes Federal Credit Union; (b) Installment payments on any individual player's loan from the Professional Athletes Federal Credit Union; (c) Contributions to the Professional Athletes Youth Foundation. Check-off of contributions and/or payments for the above purposes will be made pursuant to a written authorization signed by the player in the form prescribed in Appendix B, a copy of which is attached hereto and made a part of this Agreement.

Section 6. **Procedure for Enforcement:** The parties will continue to use the procedure for enforcement of the Union Security Agreement which was attached as Appendix C to the 1977 Collective Bargaining Agreement. Such procedure is attached hereto and incorporated herein by reference and made a part of this Agreement.

# ARTICLE V
# PLAYER SECURITY

Section 1. **No Discrimination:** There will be no discrimination in any form against any player by the Management Council, any club, or by the NFLPA because of race, religion, national origin, or activity or lack of activity on behalf of the NFLPA.

Section 2. **Personal Appearance:** Clubs may make and enforce reasonable rules governing players' appearance on the field and in public places while representing the clubs; provided, however, that no player will be disciplined because of hair length or facial hair.

# ARTICLE VI
# CLUB DISCIPLINE

Section 1. **Maximum Discipline:** The following maximum discipline schedule will be applicable for the duration of this Agreement:

13

Overweight—maximum fine of $25 per lb./per day.

Unexcused late reporting for mandatory off-season training camp, team meeting, practice, transportation, curfew, scheduled appointment with club physician or trainer, or scheduled promotional activity—maximum fine of $100.

Failure to promptly report injury to club physician or trainer—maximum fine of $100.

Losing, damaging or altering club-provided equipment—maximum fine of $100 and replacement cost, if any.

Throwing football into stands—maximum fine of $100.

Unexcused late reporting for or absence from pre-season training camp—maximum fine of $1,000 per day.

Unexcused missed mandatory off-season training camp, team meeting, practice, curfew, bed check, scheduled appointment with club physician or trainer, or scheduled promotional activity—maximum fine of $500.

Unexcused missed team transportation—maximum fine of $500 and transportation expense, if any.

Loss of all or part of playbook, scouting report or game plan—maximum fine of $500.

Ejection from game—maximum fine of $500.

Conduct detrimental to club—maximum fine of an amount equal to one week's salary and/or supension without pay for a period not to exceed four (4) weeks.

> Discipline will be imposed uniformly within a club on all players for the same offense; however, the club may specify the events which create an escalation of the discipline, provided the formula for escalation is uniform in its application.
>
> The club will promptly notify the player of any discipline; notice of any club fine in the $1,000 maximum category and of any "conduct detrimental" fine or suspension will be sent to the NFLPA.

Section 2. **Published Lists:** All clubs must publish and make available to all players at the commencement of pre-season training camp a complete list of the discipline which can be imposed for designated offenses within the limits set by the maximum schedule referred to in Section 1 above.

Section 3. **Uniformity:** Discipline will be imposed uniformly within a club on all players for the same offense; however, the club may specify the events which create an escalation of the

14

discipline, provided the formula for escalation is uniform in its application. Any disciplinary action imposed upon a player by the Commissioner pursuant to Article VIII of this Agreement will preclude or supersede disciplinary action by the club for the same act or conduct.

Section 4. **Disputes:** Any dispute involved in club discipline may be made the subject of a non-injury grievance under Article VII of this Agreement, Non-Injury Grievance.

Section 5. **Deductions:** Any club fine will be deducted at the rate of no more than $250 from each pay period, if sufficient pay periods remain; or, if less than sufficient pay periods remain, the fine will be deducted in equal installments over the number of remaining pay periods. This will not apply to a suspension.

# ARTICLE VII
# NON-INJURY GRIEVANCE

Section 1. **Definition:** Any dispute (hereinafter referred to as a "grievance") involving the interpretation or application of, or compliance with, any provision of this Agreement, the Standard Player Contract, the NFL Player Contract, and any provision of the NFL Constitution and Bylaws pertaining to terms and conditions of employment of NFL players, will be resolved exclusively in accordance with the procedure set forth in this Article; provided, however, that any dispute involving Section 1 of Article III, Section 11 of Article VII, Article VIII and Article IX of this Agreement, paragraph 8 of the Standard Player Contract and paragraph 3 of the NFL Player Contract will not be resolved under the procedure of this Article.

Section 2. **Initiation:** A grievance may be initiated by a player, a club, the Management Council, or the NFLPA. Except as provided otherwise in Article XV, Section 18, a grievance must be initiated within 45 days from the date of the occurrence or non-occurrence upon which the grievance is based, or within 45 days from the date on which the facts of the matter became known or reasonably should have been known to the party initiating the grievance, whichever is later. A player need not be under contract to an NFL club at the time a grievance relating to him arises or at the time such grievance is initiated or processed.

15

Section 3. **Filing:** Subject to the provisions of Section 2 above, a player or the NFLPA may initiate a grievance by filing a written notice by certified mail or TELEX with the Management Council and furnishing a copy of such notice to the club(s) involved; and a club or the Management Council may initiate a grievance by filing written notice by certified mail or TELEX with the NFLPA and furnishing a copy of such notice to the player(s) involved. The notice will set forth the specifics of the alleged action or inaction giving rise to the grievance. If a grievance is filed by a player without the involvement of the NFLPA, the Management Council will promptly send copies of the grievance and the answer to the NFLPA. The party to whom a non-injury grievance has been presented will answer in writing by certified mail or TELEX within seven (7) days of receipt of the grievance. The answer will set forth admissions or denials as to the facts alleged in the grievance. If the answer denies the grievance, the specific grounds for denial will be set forth. The answering party will provide a copy of the answer to the player(s) or club(s) involved and the NFLPA or NFLMC as may be applicable.

Section 4. **Joint Fact Finding:** Within ten days of the receipt of an answer, representatives of the NFLPA and the Management Council will meet in the appropriate team city to mutually determine the relevant facts of the grievance.

Section 5. **Joint Fact Finding Report:** The parties to any grievance will cooperate fully with the fact finding process by providing statements, witness identification, and production of relevant documents, all of which will be incorporated in and appended to a written report setting forth the facts not in dispute and, where appropriate, the facts in dispute. The report must be completed within fifteen (15) days after receipt of the answer and copies of the report will be provided to the grievant, the answering party, the NFLPA, the Management Council and the PCRC. The failure of either party to participate in the fact finding process may be immediately brought to the attention of the Notice Arbitrator who is authorized to issue an order directing prompt participation and cooperation in the fact finding process.

Section 6. **Player-Club Relations Committee:** If a grievance is not resolved after it has been filed and during the fact-finding process, it along with the answer and the fact finding report will

be referred for disposition to the next mid-month conference of the Player-Club Relations Committee (PCRC), which will consist of one representative appointed by NFLPA and one representative appointed by the Management Council. The PCRC will confer once each mid-month to discuss and consider all pending grievances. Such conference may be had by telephone if both representatives agree, or otherwise in person. Meetings of the PCRC will alternate between Washington and New York. No evidence will be taken during the conference except by mutual consent. Discussions between the PCRC representatives will be privileged. If the PCRC resolves any grievance by mutual agreement between the NFLPA and Management Council representatives, such resolution will be made in writing and will constitute full, final and complete disposition of the grievance and will be binding upon the player(s) and club(s) and the parties to this Agreement.

Section 7. **Appeal:** If the PCRC has not considered a grievance within 30 days after it has been filed, regardless of the reason, or has failed to resolve a grievance within five days of its conference, either the player(s) or club(s) involved, or the NFLPA, or the Management Council may appeal such grievance by filing a written notice of appeal with the Notice Arbitrator and mailing copies thereof to the party or parties against whom such appeal is taken, and either the NFLPA or the Management Council as may be appropriate. If the grievance involves a suspension of a player by a club, the player or NFLPA will have the option to appeal it immediately upon filing to the Notice Arbitrator and a hearing will be held by an arbitrator designated by the Notice Arbitrator within seven (7) days of the filing of the grievance.

Section 8. **Arbitration:** The parties to this Agreement have designated Sam Kagel as the Notice Arbitrator. Within 30 days after execution of this Agreement, Mr. Kagel will submit to the parties a list of fifteen qualified and experienced arbitrators. Within 10 days thereafter, representatives of the parties will confer by conference call(s) with Mr. Kagel for the purpose of selecting three arbitrators from the list who, along with Mr. Kagel, will constitute the non-injury arbitration panel. If the parties are unable to select three arbitrators from the original list, the selection process outlined in this section will continue until three arbitrators are selected. In the event of a vacancy in

17

the position of Notice Arbitrator, the senior arbitrator in terms of affiliation with this Agreement will succeed to the position of Notice Arbitrator, and the resultant vacancy on the panel will be filled according to the procedures of this section as well as any other vacancies occurring on the panel. The Notice Arbitrator will, so as to equalize the caseload of non-injury grievances between himself and the other arbitrators and without prior consultation with the NFLPA or the Management Council, designate himself or one of the other arbitrators to hear each case. Either party to this Agreement may discharge a member of the arbitration panel by serving written notice upon him and the other party to this Agreement between December 1 and 10 of each calendar year, but at no time will such discharges result in no arbitrators remaining on the panel.

Section 9. **Hearing:** Each arbitrator will designate a minimum of one hearing date each month for use by the parties to this Agreement. Upon being appointed, each arbitrator will, after consultation with the Notice Arbitrator, provide to the NFLPA and the Management Council specified hearing dates for each of the ensuing 12 months, which process will be repeated on an annual basis thereafter. The parties will notify each arbitrator 30 days in advance of which dates the following month are going to be used by the parties. The designated arbitrator will set the hearing on his next reserved date and, after consultation with the parties, designate a convenient place for hearing such grievance. If a grievance is set for hearing and the hearing date is then cancelled by a party within 30 days of the hearing date, the cancellation fee of the arbitrator will be borne by the cancelling party unless the arbitrator determines that the cancellation was for good cause. Should good cause be found, the parties will share any cancellation costs equally. If the arbitrator in question cannot reschedule the hearing within 30 days of the postponed date, the case may be reassigned by the Notice Arbitrator to another panel member who has a hearing date available within the 30 days period. At the hearing, the parties to the grievance and the NFLPA and Management Council will have the right to present, by testimony or otherwise, any evidence relevant to the grievance. All hearings will be transcribed. In cases which require one full hearing day or less, the transcript will be prepared on an expedited, daily copy basis. In such cases, if either party

18

requests post-hearing briefs, the parties will prepare and simultaneously submit briefs to the arbitrator postmarked no later than twenty (20) days after receipt of the transcript. In cases requiring more than one full hearing day, the transcript may be prepared by ordinary means and the post-hearing briefs must be submitted to the arbitrator, postmarked no later than thirty (30) days after receipt of the last day's transcript.

Section 10. **Arbitrator's Decision and Award:** The arbitrator will, if at all possible considering the arbitrator's schedule and other commitments, issue a written decision within 30 days of the submission of briefs. The arbitrator may issue the decision after 30 days have passed from the date of receipt of the last day's transcript regardless of the failure of either party to submit a brief. The decision of the arbitrator will constitute full, final and complete disposition of the grievance, and will be binding upon the player(s) and club(s) involved and the parties to this Agreement; provided, however, that the arbitrator will not have the jurisdiction or authority: (a) to add to, subtract from, or alter in any way the provisions of this Agreement or any other applicable document; or (b) to grant any remedy whatsoever other than a money award, an order of reinstatement, suspension without pay, a stay of suspension pending decision, a cease and desist order, a credit or benefit award under the Bert Bell NFL Player Retirement Plan, an order of compliance with a specific term of this Agreement or any other applicable document, or an advisory opinion pursuant to Article XI, Section 9.

Section 11. **Integrity and Public Confidence:** In the event a matter filed as a grievance in accordance with the provisions of Section 3 above gives rise to issues involving the integrity of, or public confidence in, the game of professional football, the Commissioner may, at any stage of its processing, after consultation with the PCRC, order that the matter be withdrawn from such processing and thereafter be processed in accordance with the procedure provided in Article VIII of this Agreement on Commissioner Discipline.

Section 12. **Time Limits:** Each of the time limits set forth in this Article may be extended by mutual written agreement of the parties involved. If any grievance is not processed or resolved in accordance with the prescribed time limits within any step, unless an extension of time has been mutually agreed

19

upon in writing, either the player, the NFLPA, the club or the Management Council, as the case may be, after notifying the other party of its intent in writing, may proceed to the next step.

Section 13. **Representation:** In any hearing provided for in this Article, a player may be accompanied by counsel of his choice and/or a representative of the NFLPA. In any such hearing, a club representative may be accompanied by counsel of his choice and/or a representative of the Management Council.

Section 14. **Costs:** All costs of arbitration, including the fees and expenses of the arbitrator and the transcript costs, will be borne equally between the parties. When the arbitrator grants a money award, it will be paid within ten (10) days. Unless the arbitrator determines otherwise, each party will bear the cost of its own witnesses, counsel, and the like.

## ARTICLE VIII
## COMMISSIONER DISCIPLINE

Section 1. **Commissioner Discipline:** Notwithstanding anything stated in Article VII of this Agreement, Non-Injury Grievance, all disputes involving a fine or suspension imposed upon a player by the Commissioner for conduct on the playing field, or involving action taken against a player by the Commissioner for conduct detrimental to the integrity of, or public confidence in, the game of professional football, will be processed exclusively as follows: The Commissioner will promptly send written notice of his action to the player, with a copy to the NFLPA. Within 20 days following written notification of the Commissioner's action, the player affected thereby or the NFLPA, with the approval of the player involved, may appeal in writing to the Commissioner. The Commissioner will designate a time and place for hearing, which will be commenced within 10 days following his receipt of the notice of appeal. As soon as practicable following the conclusion of such hearing, the Commissioner will render a written decision, which decision will constitute full, final, and complete disposition of the dispute, and will be binding upon the player(s) and club(s) involved and the parties to this Agreement with respect to that dispute.

20

Section 2. **Time Limits:** Each of the time limits set forth in this Article may be extended by mutual agreement of the Commissioner and the player(s) and the club(s) involved.

Section 3. **Representation:** In any hearing provided for in this Article, a player may be accompanied by counsel of his choice. A representative of the NFLPA may also participate in such hearing and represent the player. In any such hearing, a club representative may be accompanied by counsel of his choice. A representative of the Management Council may also participate in such hearing and represent the club.

Section 4. **Costs:** Unless the Commissioner determines otherwise, each party will bear the cost of its own witnesses, counsel and the like.

Section 5. **One Penalty:** The Commissioner and a Club will not discipline a player for the same act or conduct. The Commissioner's disciplinary action will preclude or supersede disciplinary action by any club for the same act or conduct.

Section 6. **Fine Money:** Any fine money collected pursuant to this Article will be contributed to the Brian Piccolo Cancer Fund or the Vincent T. Lombardi Cancer Research Center, as the player shall choose.

# ARTICLE IX
## INJURY GRIEVANCE

Section 1. **Definition:** An "injury grievance" is a claim or complaint that, at the time a NFL player's Standard Player Contract or NFL Player Contract was terminated by a club, the player was physically unable to perform the services required of him by that contract because of an injury incurred in the performance of his services under that contract. All time limitations in this Article may be extended by mutual agreement of the parties.

Section 2. **Filing:** Any NFL player and/or the NFLPA must present an injury grievance in writing to a club, with a copy to the Management Council, within 20 days from the date it became known or should have become known to the player that his contract had been terminated. The grievance will set forth the approximate date of the alleged injury and its general nature. If the player passes the physical examination of the club

21

at the beginning of the pre-season training camp for the year in question, having made full and complete disclosure of his known physical and mental condition when questioned by the club physician during the physical examination, it will be presumed that such player was physically fit to play football on the date he reported.

Section 3. **Answer:** The club to which an injury grievance has been presented will answer in writing within five days. If the answer contains a denial of the claim, the general grounds for such denial will be set forth. The answer may raise any special defense, including but not limited to the following:

(a) That the player did not pass the physical examination administered by the club physician at the beginning of the pre-season training camp for the year in question. This defense will not be available if the player participated in any team drills following his physical examination or in any pre-season or regular season game; provided, however, that the club physician may require the player to undergo certain exercises or activities, not team drills, to determine whether the player will pass the physical examination;

(b) That the player failed to make full and complete disclosure of his known physical or mental condition when questioned during the physical examination;

(c) That the player's injury occurred prior to the physical examination and the player knowingly executed a waiver or release prior to the physical examination or his commencement of practice for the season in question which specifically pertained to such prior injury;

(d) That the player's injury arose solely from a non-football related cause subsequent to the physical examination;

(e) That subsequent to the physical examination the player suffered no new football-related injury;

(f) That subsequent to the physical examination the player suffered no football-related aggravation of a prior injury reducing his physical capacity below the level existing at the time of his physical examination as contemporaneously recorded by the club physician.

Section 4. **Neutral Physician:** The player must present himself for examination by a neutral physician within 20 days from the date of the grievance. This time period may be

extended by mutual consent if the neutral physician is not available. Neither club nor player may submit any medical records to the neutral physician, nor may the club physician or player's physician communicate with the neutral physician. The player will notify the club of the identity of the neutral physician by whom he is to be examined as soon as possible subsequent to a selection by the player. The neutral physician will not become the treating physician nor will the neutral physician examination involve more than one office visit without the prior approval of both the NFLPA and Management Council.

Section 5. **List:** The NFLPA and the Management Council will maintain a jointly-approved list of neutral physicians, including at least two orthopedic physicians in each city in which an NFL club is located. The list will be subject to review and modification every 12 months, at which time either party may eliminate any two neutral physicians from the list by written notice to the other party. Each physician should be willing and able to examine NFL players promptly.

Section 6. **Appeal:** A grievance may be appealed to an arbitrator by filing of written notice of appeal with the chairman of the arbitration panel within 30 days from the date of receipt of the neutral physician's written report. There will be a panel of five (5) arbitrators, whose appointment must be accepted in writing by the NFLPA and the Management Council. The parties have designated Pat Fisher as the chairman of the panel. Either party to this Agreement may discharge a member of the arbitration panel by serving written notice upon the arbitrator and the other party to this Agreement between December 1 and 10 of each year, but at no time shall such discharges result in no arbitrators remaining on the panel.

Section 7. **Hearing:** Each arbitrator shall designate a minimum of one hearing date each month for use by the parties to this Agreement. Upon being appointed, each arbitrator will, after consultation with the Chairman, provide to the NFLPA and the Management Council specified hearing dates for each of the ensuing 12 months, which process will be repeated on an annual basis thereafter. The parties will notify each arbitrator 30 days in advance of which dates the following month are going to be used by the parties. The designated arbitrator will set the hearing on his or her next reserved date and, after

23

consultation with the parties, designate a convenient place for
hearing such grievance. If a grievance is set for hearing and the
hearing date is then cancelled by a party within 30 days of the
hearing date, the cancellation fee of the arbitrator will be borne
by the cancelling party unless the arbitrator determines that the
cancellation was for good cause. Should good cause be found,
the parties will share any cancellation costs equally. If the
arbitrator in question cannot reschedule the hearing within 30
days of the postponed date, the case may be reassigned by the
Chairman to another panel member who has a hearing date
available within the 30 day period. At the hearing, the parties
to the grievance and the NFLPA and Management Council will
have the right to present, by testimony or otherwise, any
evidence relevant to the grievance. All hearings shall be tran-
scribed. Post-hearing briefs must be submitted to the arbitrator
postmarked no later than thirty (30) days after receipt of the
last day's transcript. The arbitrator will, if at all possible
considering the arbitrator's schedule and other commitments,
issue a written decision within 30 days of the submission of
briefs. The arbitrator may issue the decision after 30 days have
passed from the date of receipt of the last day's transcript
regardless of the failure of either party to submit a brief. His
decision will be final and binding; provided, however, that no
arbitrator will have the authority to add to, subtract from, or
alter in any way any provision of this Agreement or any other
applicable document.

Section 8. **Miscellaneous:** The arbitrator will consider the
neutral physician's findings conclusive with regard to the
physical condition of the player and the extent of an injury at
the time of his examination by the neutral physician. The
arbitrator will decide the dispute in light of this finding and
such other issues or defenses which may have been properly
submitted to him. The club or the Management Council must
advise the grievant and the NFLPA in writing no later than
seven days before the hearing of any special defense to be raised
at the hearing. The arbitrator may award the player payments
for medical expenses incurred or which will be incurred in
connection with an injury.

Section 9. **Expenses:** Expenses charged by a neutral physi-
cian will be shared equally by the club and the player. All travel
expenses incurred by the player in connection with his examina-

tion by a neutral physician of his choice will be borne by the player. The parties will share equally in the expense of any arbitration engaged in pursuant to this Article; provided, however, the respective parties will bear the expenses of attendance of their own witnesses.

Section 10. **Pension Credit:** Any player who receives payment for three or more regular season games during any year as a result of filing an injury grievance or settlement of a potential injury grievance will be credited with one year of Credited Service for the year in which injured under the Bert Bell NFL Player Retirement Plan as determined by the Retirement Board.

Section 11. **Payment:** If an award is made by the arbitrator, payment will be made within twenty (20) days of the receipt of the award to the player or jointly to the player and the NFLPA provided the player has given written authorization for such joint payment. The time limit for payment may be extended by mutual consent of the parties or by a finding of good cause for the extension by the arbitrator.

# ARTICLE X
## INJURY PROTECTION

Section 1. **Qualification:** A player qualifying under the following criteria will receive an injury protection benefit in accordance with Section 2 below:

(a) The player must have been physically unable, because of a severe football injury in an NFL game or practice, to participate in all or part of his club's last game of the season of injury, as certified by the club physician following a physical examination after the last game; or the player must have undergone club-authorized surgery in the off-season following the the season of injury; and

(b) The player must have undergone whatever reasonable and customary rehabilitation treatment his club required of him during the off-season following the season of injury; and

(c) The player must have failed the pre-season physical examination given by the club physician for the season following the season of injury because of such injury and as a result his club must have terminated his contract for the season

following the season of injury. The past understanding of the parties concerning a club releasing a player who otherwise qualifies under (a) and (b) above prior to the pre-season physical examination, will be continued during the term of this Agreement.

Section 2. **Benefit:** Effective after the execution of this Agreement, a player qualifying under Section 1 above will receive an amount equal to 50% of his contract salary for the season following the season of injury, up to a maximum payment of $65,000, unless he has individually negotiated more injury protection into that contract. A player will receive no amount of any contract covering any season subsequent to the season following the season of injury, except if he has individually negotiated injury protection into that contract. The benefit will be paid to the player in equal weekly installments commencing no later than the date of the first regular season game, which benefit payments will cease if the player signs a contract for that season with another NFL club. A player will not be entitled to such benefit more than once during his playing career in the NFL.

Section 3. **Disputes:** Any dispute under this Article will be processed under Article VII of this Agreement, Non-Injury Grievance.


# ARTICLE XI
## COMMITTEE ON SAFETY AND WELFARE

A Joint Committee on Player Safety and Welfare (hereinafter the "Joint Committee") will be established for the purpose of discussing the player safety and welfare aspects of playing equipment, playing surfaces, stadium facilities, playing rules, player-coach relationships, and any other relevant subjects.

Section 1. **Composition:** The Joint Committee will consist of six members: three club representatives (plus advisors) and three NFLPA representatives (plus advisors).

Section 2. **Meetings:** The Joint Committee will hold two regular meetings each year on dates and at sites selected by the Committee. Special meetings may be held at any time and place mutually agreeable to the Committee.

Section 3. **Powers:** The Joint Committee will not have the power to commit or bind either the NFLPA or the Management Council on any issue.

Section 4. **Scope:** The Joint Committee may discuss and examine any subject related to player safety and welfare it desires, and any member of the Committee may present for discussion any such subject. Any Committee recommendation will be made only to the NFLPA, the Management Council, the Commissioner of the NFL, or any appropriate committee of the NFL; such recommendation will be given serious and thorough consideration.

Section 5. **Consultants:** The Joint Committee may employ consultants to assist it in the performance of its functions; the compensation and expenses of any such consultants will be paid in such manner as the Committee decides.

Section 6. **Appointments:** The respective members of the Joint Committee will be selected and the length of their terms fixed under such rules as the NFLPA and the Management Council separately establish; the original appointees on the Committee will be selected within 30 days following the execution of this Agreement.

Section 7. **Initial Tasks:** The NFLPA and the Management Council agree that a task for the Joint Committee to undertake promptly upon the execution of this Agreement is a review of all current materials on the player safety aspects of player equipment, playing surfaces and other safety matters, and a determination of whether a moratorium on further installation of artificial turf in NFL stadia is desirable.

Section 8. **Competition Committee:** Two players appointed by the NFLPA will have the right to attend those portions of the annual meeting of the NFL Competition Committee dealing with playing rules in a non-voting capacity to represent the players' viewpoint on such rules. The player-appointees will receive in advance copies of all agenda and other written materials relating to playing rules provided to other Committee members.

Section 9. **Playing Rules:** Immediately following the NFL annual meeting, the NFLPA will be given notice of all proposed playing rule changes, either tentatively adopted by the clubs or put over for further consideration at a later league meeting. If the NFLPA believes that the adoption of a playing

27

rule change would adversely affect player safety, the NFLPA may call for a meeting of the Joint Committee within two weeks to discuss such proposed rule change. After such meeting, if the NFLPA continues to believe that the adoption of a playing rule change would adversely affect player safety, the NFLPA may request an advisory decision by one of the arbitrators designated in Article VII of this Agreement. A hearing before such arbitrator must be held within two weeks of the Joint Committee meeting and the arbitrator must render his decision within two weeks of the hearing. No such playing rule change will be made by the clubs until after the arbitrator's advisory decision unless the arbitrator has not rendered his decision within two weeks of the hearing. The arbitrator's decision will be advisory only, not final and binding. Except as so limited, nothing in this section will impair or limit in any way the right of the clubs to make any playing rule change whatsoever.

## ARTICLE XII
## NFL PLAYER CONTRACT

Section 1. **Form:** The NFL Player Contract form will be used for all player signings. This form cannot be amended without NFLPA approval. In connection with the NFLPA's exclusive right to represent all players in its bargaining unit in negotiations with NFL clubs under Article XXII, Section 2 of this Agreement on Salaries, it is agreed and understood that: (a) copies of all individual player contracts signed by rookie and veteran players before the date of execution of this Agreement covering the 1982 and future seasons will be provided to the NFLPA within 30 days of the execution of this Agreement; (b) copies of all contracts signed by rookie and veteran players after the date of execution of this Agreement covering the 1982 and future seasons will be provided to the NFLPA within 10 days of their execution; and (c) all information in such contracts will be made available to all clubs by the Management Council.

Section 2. **Changes:** Notwithstanding Section 1 above, changes may be made in a player's contract or contracts consistent with the provisions of this Agreement and with the provisions of the NFL Constitution and Bylaws not in conflict with this Agreement.