# ARTICLE XIII
## COLLEGE DRAFT

Section 1. **Time of Draft:** Commencing with the college draft to be held on or about May 1, 1983, and with respect to the college draft to be held on or about May 1 each year thereafter, through at least 1992, the following principles will apply; provided, however, that commencing in 1984 the clubs will have the right during the term of this Agreement to move the date of the draft from on or about May 1 to on or about February 1 of the same year, but no later than six days after the Pro Bowl game or, in the absence of a Pro Bowl game, ten days after the Super Bowl game.

Section 2. **Number of Choices:** There will be no more than 336 selection choices in any college draft (in the event of NFL expansion, there will be an additional 12 selection choices per expansion club, except in the first year of expansion, when the expansion clubs may be given additional choices). Subject to such maximum, the clubs may determine the number of choices alloted to a club in any given round, so long as such allotment does not diminish the number of choices available for compensation under Article XV of this Agreement or any successor agreement.

Section 3. **Exclusive Right:** A club which drafts a player will, during the period from the date of such college draft (hereinafter "initial draft") to the date of the next college draft (hereinafter "subsequent draft"), be the only NFL club which may negotiate for or sign a contract with such player. If, within the period between the initial and subsequent draft, such player has not signed a contract with the club which drafted him in the initial draft, such club loses the exclusive right, which it obtained in the initial draft, to negotiate for a contract with the player and the player is then eligible to be drafted by another NFL club in the subsequent draft.

Section 4. **Subsequent Draft:** A club which, in the subsequent draft drafts a player who (a) was drafted in the initial draft, and (b) did not sign a contract with such first NFL club prior to the subsequent draft, will, during the period from the date of the college draft held in the following year, be the only NFL club which may negotiate for or sign a contract with such player. If such player has not signed a contract within the period between

29

the subsequent draft and the next college draft with the club which drafted him in the subsequent draft, that club loses its exclusive right, which it obtained in the subsequent draft, to negotiate for a contract with the player, and the player is free to sign a contract at any time thereafter with any NFL club, and any NFL club is then free to negotiate for and sign a contract with such player, without any compensation between clubs or first refusal rights of any kind.

Section 5. **No Subsequent Draft:** If a player is drafted by an NFL club in an initial draft and (a) does not sign a contract with an NFL club prior to the subsequent draft and (b) is not drafted by any NFL club in such subsequent draft, the player is free to sign a contract at any time thereafter with any NFL club, and any NFL club is then free to negotiate for and sign a contract with such player, without any compensation between clubs or first refusal rights of any kind.

Section 6. **Other Professional Team:** If a player is hereafter drafted by an NFL club in an initial draft and, during the period in which he may sign a contract with only the club which drafted him, plays for a professional football team not in the NFL under a contract that covers all or part of at least the season immediately following said initial draft, then such NFL club will retain the exclusive NFL rights to negotiate for and sign a contract with the player for the period ending four years from the date of the initial draft, following which four-year period the player is free to sign a contract with any NFL club, and any NFL club is free to negotiate for and sign a contract with such player, subject to Section 7 below.

Section 7. **Return to NFL:** If a player who hereafter signs a contract with a professional football team not in the NFL desires to return to the NFL four or more years following the date of his initial draft, the NFL club which had drafted the player will have no right of compensation under Article XV, but will have a right of first refusal under the applicable terms and conditions of that Article. The returning player will notify the NFLPA and the NFL of his desire to sign a contract with an NFL club, which notice will advise of the date on which he will be free of contractual obligations, if any. Within 30 days of receipt of such notice by the NFL or the date of the availability of such player, whichever is later, the NFL club which had drafted the player must tender a written contract offer to the

player in order to retain the right of first refusal under this Section.

Section 8. **Pre-1983:** A player drafted by an NFL club in 1980, 1981 or 1982 who signed a contract in another professional football league and desires to return to the NFL in 1983 or thereafter will be governed by the provisions set forth in Article XIII, Sections 8 and 9 of the 1977 Agreement.

Section 9. **Assignment:** In the event that the exclusive right to negotiate for a player or the right of first refusal under Section 7 above is assigned by an NFL club to another NFL club, the NFL club to which such right has been assigned will have the same, but no greater, right to negotiate for such player or to exercise the right of first refusal as is enjoyed by the club assigning such right, and such player will have the same, but no greater, obligation to the NFL club to which such right has been assigned as he had to the club assigning such right.

# ARTICLE XIV
## OPTION CLAUSE

Section 1. **Vested Players:** Any contract or series of contracts signed by a veteran player who has completed the season in which his fourth year or more of Credited Service under the Bert Bell NFL Player Retirement Plan has been earned will not include an option year, unless an option clause has been negotiated for the player for a specific consideration other than compensation for the player's services.

Section 2. **Rookies and Non-Vested Players:** Any one-year contract signed by a rookie player must include an option year; any other contract or series of contracts signed by a rookie player may include an option year; and any contract or series of contracts signed by a veteran player who has not completed the season in which his fourth year of Credited Service under the Bert Bell NFL Player Retirement Plan has been earned may include an option year.

Section 3. **Compensation:** The option will be exercised by the club at no less than 110% of the player's salary provided in his contract for the previous year, excluding any signing or reporting bonus. Player will receive 100% of performance bonus provisions where the bonus is earned in the option year.

31

# ARTICLE XV
## RIGHT OF FIRST REFUSAL/COMPENSATION

Section 1. **Applicability:** For players who play out the option in their contracts or whose contracts otherwise expire (hereinafter referred to as "Veteran Free Agents") the following principles will apply; provided, however, that in the event the clubs make a determination during the term of this Agreement to move the date of the draft from on or about May 1 to on or about February 1 of the same year, any compensation under Section 12 of this Article XV will be in the next subsequent college draft.

Section 2. **Contract Expiration Date:** The expiration date of all player contracts will be February 1. After February 1, any NFL club will be free to negotiate for a contract with a veteran free agent.

Section 3. **Offer Sheet:** When the NFLPA receives an offer from a new club to sign a contract or contracts, which is acceptable, the NFLPA will on or before April 15 give to the player's old club a completed Offer Sheet substantially in the form of Exhibit A attached hereto, signed by the player and by the chief operating officer of the new club, which will contain the "principal terms" (as defined in Section 7 below) of the new club's offer. Subject to Section 10 below, the player's old club, upon receipt of the Offer Sheet, may exercise its "right of first refusal", which will have the legal consequences set forth in Section 4 below.

Section 4. **First Refusal Exercise Notice:** Subject to Section 18 below, if, within seven days from the date it receives an Offer Sheet, the veteran free agent's old club gives to the NFLPA a First Refusal Exercise Notice substantially in the form of Exhibit B attached hereto, such player and his old club will be deemed to have entered into a binding agreement, which will be promptly formalized in an NFL Player Contract(s); containing all the "principal terms" of the Offer Sheet and those terms of the NFL Player Contract(s) not modified by the "principal terms."

Section 5. **No First Refusal Exercise Notice:** Subject to Sections 6 and 10 below, if, within seven days from the date it receives an Offer Sheet, the veteran free agent's old club does

32

not give the NFLPA a First Refusal Exercise Notice, the player and the new club will be deemed to have entered into a binding agreement, which will be promptly formalized in an NFL Player Contract(s), containing all the "principal terms" of the Offer Sheet, those terms of the NFL Player Contract(s) not modified by the "principal terms", and the non-principal terms offered by the new club.

Section 6. **One Offer Sheet:** There may be only one Offer Sheet signed by both a club and a veteran free agent outstanding at any one time. An Offer Sheet, before it is given to the veteran free agent's old club, may be revoked or withdrawn only upon the written consent of the new club and the NFLPA. An Offer Sheet, after it is given to a veteran free agent's old club, may be revoked or withdrawn only upon the written consent of the old club, the new club and the NFLPA. In either of such events, any NFL club will be free to negotiate for a contract with such player, subject only to his old club's renewed right of first refusal.

Section 7. **Principal Terms:** For purposes of this Article, the "principal terms" will include the following: (a) the salary the new club will pay to the veteran free agent and/or his designees, currently and/or as deferred compensation in specified installments on specified dates, in consideration for his services as a football player under the contract or contracts; (b) any signing or reporting bonus the new club will pay to the veteran free agent and/or his designees, currently and/or deferred, and the terms thereof; and (c) any modification of and/or addition to the terms contained in the NFL Player Contract form requested for the veteran free agent and acceptable to the new club, which relate to terms of the player's employment as a football player (which will be evidenced by a copy of the NFL Player Contract form, marked to show changes).

Section 8. **Non-Principal Terms:** For purposes of this Article, the "principal terms" will not include any of the following: (a) any loan the new club will make to the veteran free agent and/or his designees under the contract or contracts, and the terms thereof and security therefor, if any; (b) any performance bonus the new team will pay to the veteran free agent under the contract or contracts; (c) a description of any property other than money which the new club will provide or make available to the veteran free agent and/or his designees under the

contract or contracts; (d) any investment opportunity which the new club will provide or make available to the veteran free agent and/or his designees; (e) any money and/or property the new club will pay, provide or make available to the veteran free agent and/or his designees in consideration for services by him or others; (f) any intangible benefits or advantages that might accrue to the veteran free agent as a consequence of living and playing in the geographic area of the new club; (g) any promise by the new club of a try-out, audition or introduction for the possibility of performing services or earning income other than that as a football player; and (h) any other terms not included within the "principal terms" set forth in Section 7 above.

Section 9.   **Qualifying Offer:** For purposes of Sections 10, 11, and 12 of this Article, a "qualifying offer" will include the sum of: (a) the total amount of salary to be paid under the contract or contracts, averaged over the full number of years of the contract or contracts, but no more than five years; and (b) any signing or reporting bonus to be paid under the contract or contracts, prorated over the full number of years of the contract or contracts, but no more than five years.

Section 10.   **Qualification for First Refusal:** Anything above in this Article to the contrary notwithstanding, in order for a veteran free agent's old club to be entitled to a right of first refusal, the old club must have given a "qualifying offer" in writing to the NFLPA on or before February 1 in the following amounts: (a) $60,000 ($75,000 in 1985 through 1987) or more if the player has not yet completed the season in which his 3rd year of Credited Service under the Bert Bell NFL Player Retirement Plan has been earned; (b) $70,000 ($85,000 in 1985 through 1987) or more if the player has not yet completed the season in which his 4th year of Credited Service has been earned; (c) an increase of $10,000 for each year of Credited Service thereafter, in accordance with the graphs portrayed in Exhibits C and D attached hereto.

Section 11.   **Qualification for Compensation:** In order for a veteran free agent's old club to be entitled to a right of compensation, the old club must have qualified for a right of first refusal under Section 10 above and the new club must have given a "qualifying offer" in writing to the NFLPA on or before April 15, to be represented by an Offer Sheet, in the following amounts: (a) $80,000 ($100,000 in 1985 through 1987)

34

or more if the player has not yet completed the season in which his 3rd year of Credited Service under the Bert Bell NFL Player Retirement Plan has been earned; (b) $90,000 ($110,000 in 1985 through 1987) or more if the player has not yet completed the season in which his 4th year of Credited Service has been earned; and (c) an increase of $10,000 for each year of Credited Service thereafter, in accordance with the graphs portrayed in Exhibits C and D attached hereto. Anything in Subsections (a) through (c) to the contrary notwithstanding, the "qualifying offer" with respect to veteran free agent quarterbacks will increase by $5,000 for each year of Credited Service if the player has not yet completed the season in which his 8th year of Credited Service has been earned and thereafter.

Section 12. **Amount of Compensation:** Subject to Section 10 above, if, within seven days from the date it receives an Offer Sheet, a veteran free agent's old club, which is entitled to a right of first refusal or a right of compensation, chooses not to exercise its right of first refusal, then the player and the new club will be deemed to have entered into a binding agreement as provided in Section 5 above, and the player's old club will receive the following compensation: (a) the new club's 3rd round selection choice or a better 3rd round choice obtained by assignment from another NFL club, in the next immediate college draft: (i) if the player has not completed the season in which his 3rd year of Credited Service under the Bert Bell NFL Player Retirement Plan has been earned and if the "qualifying offer" is $80,000 or more but less than $95,000 ($100,000 and $120,000 in 1985 through 1987); (ii) if the player has not completed the season in which his 4th year of Credited Service has been earned and if the "qualifying offer" is $90,000 or more but less than $105,000 ($110,000 and $130,000 in 1985 through 1987); and (iii) an increase of $10,000 for each year of Credited Service thereafter, in accordance with the graphs portrayed in Exhibits C and D attached hereto; (b) the new club's 2nd round selection choice or a better 2nd round choice obtained by assignment from another NFL club, in the next immediate college draft: (i) if the player has not completed the season in which his 3rd year of Credited Service has been earned and if the "qualifying offer" is $95,000 or more but less than $110,000 ($120,000 and $140,000 in 1985 through 1987); (ii) if the player has not completed the season in which his 4th year of Credited

35

Service has been earned and if the "qualifying offer" is $105,000 or more but less than $120,000 ($130,000 and $150,000 in 1985 through 1987); and (iii) an increase of $10,000 for each year of Credited Service thereafter, in accordance with the graphs portrayed in Exhibits C and D attached hereto; (c) the new club's 1st round selection choice or a better 1st round choice obtained by assignment from another NFL club in the next immediate college draft: (i) if the player has not completed the season in which his 3rd year of Credited Service has been earned and if the "qualifying offer" is $110,000 or more but less than $150,000 ($140,000 and $180,000 in 1985 through 1987); (ii) if the player has not completed the season in which his 4th year of Credited Service has been earned and if the "qualifying offer" is $120,000 or more but less than $160,000 ($150,000 and $190,000 in 1985 through 1987); and (iii) an increase of $10,000 for each year of Credited Service thereafter, in accordance with the graphs portrayed in Exhibits C and D attached hereto; (d) the new club's 1st and 3rd round selection choices, or better 1st and 3rd round choices obtained by assignment from other NFL clubs in the next immediate college draft: (i) if the player has not completed the season in which his 3rd year of Credited Service has been earned and if the "qualifying offer" is $150,000 or more but less than $200,000 ($180,000 and $230,000 in 1985 through 1987); (ii) if the player has not completed the season in which his 4th year of Credited Service has been earned and if the "qualifying offer" is $160,000 or more but less than $210,000 ($190,000 and $240,000 in 1985 through 1987); and (iii) an increase of $10,000 for each year of Credited Service thereafter, in accordance with the graphs portrayed in Exhibits C and D attached hereto; (e) the new club's 1st round and 2nd round selection choices or better 1st and 2nd round choices obtained by assignment from other NFL clubs in the next immediate college draft: (i) if the player has not completed the season in which his 3rd year of Credited Service has been earned and if the "qualifying offer" is $200,000 or more but less than $250,000 ($230,000 and $280,000 in 1985 through 1987); (ii) if the player has not completed the season in which his 4th year of Credited Service has been earned and if the "qualifying offer" is $210,000 or more but less than $260,000 ($240,000 and $290,000 in 1985 through 1987); and (iii) an increase of $10,000 for each year of

36

Credited Service thereafter, in accordance with the graphs portrayed in Exhibits C and D attached hereto; (f) the new club's 1st round selection choices or better 1st round choices obtained by assignment from other NFL clubs, in the next immediate two college drafts: (i) if the player has not completed the season in which his 3rd year of Credited Service has been earned and if the qualifying offer is $250,000 or more ($280,000 in 1985 through 1987); (ii) if the player has not completed the season in which his 4th year of Credited Service has been earned and if the "qualifying offer" is $260,000 or more ($290,000 in 1985 through 1987); and (iii) an increase of $10,000 for each year of Credited Service thereafter, in accordance with the graphs portrayed in Exhibits C and D attached hereto. Anything in Subsections (a) through (f) to the contrary notwithstanding, the "qualifying offer" with respect to veteran free agent quarterbacks will increase by $5,000 for each year of Credited Service if the player has not yet completed the season in which his 8th year of Credited Service has been earned and thereafter.

Section 13. **Absences of Choice:** A club not having the future selection choice or choices necessary to provide compensation in the event the veteran free agent's old club chooses to exercise its right of compensation, if any, may not sign an Offer Sheet as provided in Section 3 above.

Section 14. **Copies:** Within seven days after an Offer Sheet is signed by a player and a new club, that club will cause a copy thereof to be given to the NFL; and within seven days after the giving of a First Refusal Exercise Notice to the veteran free agent, the old club will cause a copy thereof to be given to the NFL.

Section 15. **Circulation of Veteran Free Agent List:** The NFL will prepare and circulate to all NFL clubs and the NFLPA a list containing the names of all players who will become veteran free agents as of February 1. The list will be circulated between January 1 and February 1 of each year.

Section 16. **Notice:** Any Offer Sheet, First Refusal Exercise Notice, or other writing required or permitted to be given under this Article will be hand delivered or sent by prepaid certified or registered mail addressed as follows: (a) To any club: addressed to that club at the principal address of such club as then listed on the records of the NFL or at that club's

37

principal office, to the attention of the club president; (b) To the NFL: addressed to the NFL at 410 Park Avenue, New York, New York 10022, to the attention of the Commissioner; (c) To the NFLPA: addressed to the NFLPA at 1300 Connecticut Avenue, N.W., Washington, D.C. 20036, to the attention of the Executive Director; and (d) To a veteran free agent: to his address listed on the Offer Sheet. An Offer Sheet will be deemed given only when actually received by the player's old club. A First Refusal Exercise Notice will be deemed given when sent by the player's old club. Other writings required or permitted to be given under this Article (including a "qualifying offer") will be deemed given when hand delivered or sent by prepaid certified or registered mail addressed as above required.

Section 17. **Re-Signing:** If no offer to sign a contract or contracts with a new NFL club pursuant to this Article is received by a player, and his old club advises the NFLPA in writing by June 1 that it desires to re-sign him, the player may, at his option within 15 days sign either (a) a contract or contracts with his old club at its last best written offer given on or before February 1 of that year, or (b) a one-year contract (with no option year) with his old club at 110% of the salary provided in his contract for the last preceding year (if the player has just played out the option year, the rate will be 120%). If the player's old club does not advise the NFLPA in writing by June 1 that it desires to re-sign the player, he will be free on June 2 to sign a contract or contracts with any NFL club, and any NFL club will be free to negotiate for and sign a contract or contracts with such player, without any compensation between clubs or first refusal rights of any kind.

Section 18. **Extreme Personal Hardship:** In the event of alleged extreme personal hardship or an alleged violation of Article V, Section 1, of this Agreement, a veteran free agent may, within seven days after the February 1 expiration date of his contract, unless the condition arises after that date, file a non-injury grievance pursuant to Article VII of this Agreement. If the PCRC is unable to resolve the grievance, and should the outside arbitrator conclude that such extreme personal hardship objectively exists or that there has been a substantive violation of Article V, Section 1, then he may deny to the

38

player's old club its right of first refusal. In the event a club's first refusal rights are denied under this Section because of extreme personal hardship, the club's last written contract offer for the player to the NFLPA will constitute a "qualifying offer" for compensation pursuant to Section 11 of Article XV.

**EXHIBIT A**

## FIRST REFUSAL OFFER SHEET

Name of Player:                      Date:

Address of Player:                   Name of New Club:

National Football League            Name of Old Club:
Players Association
1300 Connecticut Avenue, N.W.
Washington, D.C. 20036

### Principal Terms of NFL Player Contract or Contracts With New Club

(Supply Information on this Sheet or on Attachment)

(a)  Salary, including deferred compensation:

(b)  Signing or reporting bonus, if any:

(c)  Modifications and additions to NFL Player Contract(s):
     [attached marked-up copy of NFL Player Contract(s)]

Player:                        New Club:

By  ......................................   By  ...........................................
                                            Chief Operating Officer

40

**EXHIBIT B**

## FIRST REFUSAL EXERCISE NOTICE

Name of Player:                          Date:


Address of Player:                       Name of Old Club:


National Football League                 Name of New Club:
Players Association
1300 Connecticut Avenue, N.W.
Washington, D.C. 20036




    The undersigned member club of the NFL hereby exercises
its Right of First Refusal under the Collective Bargaining
Agreement dated December 11, 1982, so as to create a binding
agreement with the player named above containing the "princi-
pal terms" set forth in the First Refusal Offer Sheet, a copy of
which is attached hereto, and those terms of the NFL Player
Contract(s) not modified by such "principal terms."




                       Old Club




             **By**  ....................................
                  Chief Operating Officer

41

**EXHIBIT C**

## FIRST REFUSAL/COMPENSATION — 1983-1984



42

# EXHIBIT D

## FIRST REFUSAL/COMPENSATION — 1985-1986-1987



43

# ARTICLE XVI
## WAIVER SYSTEM

Section 1. **Release:** Whenever a player who has completed the season in which his fourth year or more of Credited Service under the provisions of the Bert Bell NFL Player Retirement Plan has been earned is placed on waivers, claimed and would be awarded, the club having requested waivers will immediately advise the player of such fact, provided the waiver request has taken place within the time period of February 1 to the end of the NFL trading period. Within 24 hours after receipt of such information, the player may, at his option, given written notice to the club having requested waivers that he desires to terminate his contract or contracts and obtain his unconditional release. However, should the player fail to give such notice within the 24-hour period, his contract will be awarded to the claiming club in accordance with the rules prescribed in the NFL Constitution and Bylaws. In the event the player requests his unconditional release, the player and the NFLPA will be advised promptly by the NFL which clubs claimed the player.

Section 2. **Contact:** Coaches or any other persons connected with another NFL club are prohibited from contacting any player placed on waivers until such time as the player is released by the waiving club.

Section 3. **Ineligibility:** Any NFL player who is declared ineligible to compete in a pre-season, regular season or post-season game because of a breach of waiver procedures and regulations or any other provision of the NFL Constitution and Bylaws by any NFL club by whom he is employed will be paid the salary or other compensation which he would have received if he had not been declared ineligible, which, in any event, will be a minimum of one week's salary and, when applicable, expense payments.

Section 4. **Notice of Termination:** The Notice of Termination form attached as Exhibit E will be used by all clubs. If possible, the Notice of Termination will be personally delivered to the player prior to his departure from the team. If the Notice of Termination has not been personally delivered to the player prior to his departure from the team, the Notice of Termination will be sent to him by certified mail at his last address on file with the club.

**EXHIBIT E**

## NOTICE OF TERMINATION

TO:

You are hereby notified that effective immediately your NFL Player Contract(s) with the Club covering the _____ football season(s) has(have) been terminated for the reason(s) checked below:

☐ You have failed to establish or maintain your excellent physical condition to the satisfaction of the Club physician.

☐ You have failed to make full and complete disclosure of your physical or mental condition during a physical examination.

☐ In the judgment of the Club, your skill or performance has been unsatisfactory as compared with that of other players competing for positions on the Club's roster.

☐ You have engaged in personal conduct which, in the reasonable judgment of the Club, adversely affects or reflects on the Club.

..............................................
Club

By:  .......................................

# ARTICLE XVII
## EXPANSION

Section 1. **Veteran Allocation:** In the event the clubs make a determination after the execution of this Agreement to expand the number of clubs, it is agreed upon that an expansion allocation of veteran players may be held on the terms decided by the clubs.

Section 2. **Future Expansion:** Any veteran player selected in any expansion allocation subsequent to the execution of this Agreement will receive a bonus of $6,000 upon making the expansion club's Active List at any time during the club's first regular season.

# ARTICLE XVIII
## OTHER PROVISIONS

Section 1. **CFL Rule:** A player who has practiced and/or played in the CFL may be employed by an NFL club in the same season so long as he is signed by the NFL club on or before July 15 of the year in question.

Section 2. **Physically Unable to Perform:** Any player placed on Reserve as Physically Unable to Perform under the terms and conditions of the NFL Constitution and Bylaws will be paid at the rate of his full contract salary while on such Reserve. His contract will not be tolled for the period he is on Reserve as PUP except for the option year or, in the absence of an option year, the last year of a player's contract, when the player's contract will be tolled.

Section 3. **Non-Football Injury:** The contract of a player placed on Reserve as Non-Football Injury or Illness (N-F/I) under the terms and conditions of the NFL Constitution and Bylaws will not be tolled for the period of his failure to perform his services under the contract and will continue to run as if the player were performing, but he will not be entitled to any compensation under his contract during that period. This modification will not apply to the option year of a player's contract or, in the absence of an option year, to the last year of a player's contract.

46

# ARTICLE XIX
## SQUAD SIZE

Section 1. **Active List:** For each regular season, the Active List limit will be 45 players per club. This limit may not be reduced by the clubs for the duration of this Agreement; provided, however, that individual clubs may occasionally carry less than 45 players on their Active Lists during the regular season, but at no time less than 40.

Section 2. **Pre-Season:** The pre-season cutdown dates and active player limits on such dates will be as determined by the clubs. In the event the clubs make a determination during the term of this Agreement that they wish to institute a "down-and-up" once during the pre-season, they may do so, provided that the active player limit may not be reduced below 40 at any time during the pre-season and the Active List limit must return to 45 by the start of the regular season.

Section 3. **Inactive List:** For the 1982 regular and post-season, there will be an Inactive List of 4 players per club. For the 1983, 1984, 1985 or 1986 regular season, the clubs may determine to have an Inactive List limit of any number of players per club. Inactive List players will receive the same benefits and protections as Active List players.

# ARTICLE XX
## OFF-SEASON TRAINING CAMPS

Section 1. **Number:** Each club may hold a maximum of one mandatory off-season training camp for veteran players. If a club hires a new head coach after the end of the regular season, that club may hold two additional voluntary off-season training camps for veteran players. There is no limitation on the number of off-season training camps a club may hold for rookie players.

Section 2. **Length:** No off-season training camp may exceed three days in length, plus one day for physical examinations. If possible, off-season training camps should be scheduled for weekends and not in conflict with previously scheduled meetings of the NFLPA Board of Reps or the annual NFLPA convention.

Section 3. **Expenses:** Any veteran player who attends an off-season training camp will receive meal allowances in accordance with Article XXVI, Section 1 of this Agreement, plus all travel expenses to and from the camp, plus "per diem" payments at the rate provided in Article XXI, Section 4 of this Agreement. In addition, the club will provide housing at off-season training camps for players coming from out-of-town.

Section 4. **Contact:** There will be no contact work or use of pads (helmets permitted) at off-season training camps.

Section 5. **Injuries:** Any player injured in a club's off-season training camp will be protected in the same manner as if injured during the club's pre-season training camp.

# ARTICLE XXI
## PRE-SEASON TRAINING CAMPS

Section 1. **Definition:** For purposes of this Agreement, a "rookie player" is defined as any player who has not completed one season in which a year of Credited Service under the Bert Bell NFL Player Retirement Plan has been earned, and a "veteran player" is defined as any player who has completed one or more seasons in which a year of Credited Service has been earned under such Plan.

Section 2. **Room and Board:** All players will receive room and board during the pre-season training camp.

Section 3. **Rookie Per Diem:** Effective after the execution of this Agreement, a rookie player will receive "per diem" payments at the rate of $375 per week in 1983, $400 per week in 1984, $425 per week in 1985, and $450 per week in 1986, commencing with the first day of pre-season training camp and ending one week prior to the club's first regular season game.

Section 4. **Veteran Per Diem:** Effective after the execution of this Agreement, a veteran player will receive "per diem" payments at the rate of $425 per week in 1983, $450 per week in 1984, $475 per week in 1985, and $500 per week in 1986, commencing with the first day of pre-season training camp and ending one week prior to the club's first regular season game, and an additional $200 per week in each year of this Agreement

commencing with the club's first pre-season game (exclusive of the Canton Hall-of-Fame Game) and ending one week prior to the club's first regular season game (four weeks).

Section 5. **Reporting:** No veteran player, other than quarterbacks and injured players, will be required to report to a club's official pre-season training camp earlier than 15 days (including one day for physical examinations) prior to its first scheduled pre-season game or July 15, whichever is later. The July 15 date will not apply to clubs participating in the Canton Hall-of-Fame Game.

Section 6. **Telephones:** Whenever possible, a player will be permitted to have a telephone in his room at pre-season training camp at his own expense.

Section 7. **Expenses:** Clubs will reimburse all players under contract for reasonable traveling expenses incurred in reaching training camp from the players' residences, upon submission of vouchers. There will be no deductions by the clubs for these payments. Players who are released by club will be reimbursed for their return trips to their residences, upon submission of vouchers.

# ARTICLE XXII
## SALARIES

Section 1. **Salaries:** Effective after the execution of this Agreement, the salary of a rookie player will be not less than $20,000 and the salary of any player who makes a club's Active List at any time during the regular season will be not less than the following:

| Length of Service | 1982 | 1983 | 1984 | 1985 | 1986 |
|---|---|---|---|---|---|
| Rookie | $ 30,000 | $ 40,000 | $ 40,000 | $ 50,000 | $ 50,000 |
| 2nd Year | 40,000 | 50,000 | 50,000 | 60,000 | 60,000 |
| 3nd Year | 50,000 | 60,000 | 60,000 | 70,000 | 70,000 |
| 4th Year | 60,000 | 70,000 | 70,000 | 80,000 | 80,000 |
| 5th Year | 70,000 | 80,000 | 80,000 | 90,000 | 90,000 |
| 6th Year | 80,000 | 90,000 | 90,000 | 100,000 | 100,000 |
| 7th Year | 90,000 | 100,000 | 100,000 | 110,000 | 110,000 |
| 8th Year | 100,000 | 110,000 | 110,000 | 120,000 | 120,000 |
| 9th Year | 110,000 | 120,000 | 120,000 | 130,000 | 130,000 |
| 10th Year | 120,000 | 130,000 | 130,000 | 140,000 | 140,000 |
| 11th Year | 130,000 | 140,000 | 140,000 | 150,000 | 150,000 |
| 12th Year | 140,000 | 150,000 | 150,000 | 160,000 | 160,000 |
| 13th Year | 150,000 | 160,000 | 160,000 | 170,000 | 170,000 |
| 14th Year | 160,000 | 170,000 | 170,000 | 180,000 | 180,000 |
| 15th Year | 170,000 | 180,000 | 180,000 | 190,000 | 190,000 |
| 16th Year | 180,000 | 190,000 | 190,000 | 200,000 | 200,000 |
| 17th Year | 190,000 | 200,000 | 200,000 | 200,000 | 200,000 |
| 18th Year and above | 200,000 | 200,000 | 200,000 | 200,000 | 200,000 |

For purposes of this Article, a player's salary under any contract in existence at the time of execution of this Agreement will include the amount of any signing or reporting bonus, prorated over the full number of years of the contract or contracts executed on the same date (including any option year). A player's salary under any contract executed after the time of execution of this Agreement will not include the

50

prorated amount of any signing or reporting bonus. No other type of incentive bonus will be included at any time in the computation of a player's salary under this Article. The length of service of a player will be determined by crediting one year of service for each year the player has been on the Active List of a club for at least three regular season games.

Section 2. **Other Compensation:** A player will be entitled to receive a signing or reporting bonus, additional salary payments, incentive bonuses and such other provisions as may be negotiated between his club (with the assistance of the Management Council) and the NFLPA or its agent. The club and the NFLPA or its agent will negotiate in good faith over such other compensation; provided, however, that a club will not be required to deal with the NFLPA or its agent on a collective or tandem basis for two or more players on that club. Nothing in this Section will be affected by Article II, Section 1 of this Agreement.

Section 3. **Arbitration:** The question of whether or not the club, the Management Council, the NFLPA or its agent has engaged in good faith negotiations over such other compensation may be the subject of a non-injury grievance under Article VII of this Agreement. If the arbitrator finds that any party did not engage in good faith negotiations, he may enter a cease and desist order; provided, however, that the arbitrator may not compel any party to agree to anything or require the making of a concession by any party in negotiations.

Section 4. **Payment:** Unless agreed upon otherwise between the club and the player, each player will be paid at the rate of 100% of his salary in equal weekly or bi-weekly installments over the course of the regular season commencing with the first regular season game. Nothing in this Article invalidates or otherwise affects any deferred compensation arrangement or any other method of payment which may have been entered into between a club and a player or which after the execution of this Agreement may be negotiated between a club and the NFLPA or its agent.

Section 5. **Re-opener:** In the event that the NFL enters into any contract covering any playing season from 1982 through 1986 for the sale of television rights such as, but not limited to, cable, pay cable, satellite, closed circuit broadcasts, or any form of pay television, or in the event that the NFL enters into any

51

new or renegotiated contract with CBS, NBC or ABC covering any season from 1982 through 1986 and providing for total revenues over and above those contracted for by the NFL as of the date of execution of this Agreement covering the 1982 through 1986 playing seasons, the Management Council will provide immediate written notice of same and information as to the amount of additional revenue to the NFLPA, and, upon receipt of such notice, the NFLPA may re-open this Agreement upon the giving of ten days' written notice to the Management Council. After re-opening, the parties will have an obligation to resume negotiations limited to the issue of player compensation reflecting solely the application of the additional revenue or portion thereof, and both parties will be free to engage in whatever concerted action may be permitted by law in support of their respective positions. This re-opener will not give the NFLPA the right to examine any contract between the NFL and any party; provided, however, that the NFLPA will have the right to choose a senior accountant from any of the "Big Eight" accounting firms who will have the right to examine any such contract to confirm the accuracy of any information regarding any such contract given to the NFLPA by the Management Council in the operation of this Section.

Section 6.  **Length of Regular Season:** The NFL clubs cannot increase the number of regular season games from the standard of sixteen (16) for the duration of this Agreement without providing ninety (90) days notice in writing to the NFLPA and thereafter negotiating with the NFLPA with regard to additional compensation to be paid to players for additional regular season games. If the parties are unable to agree on additional compensation within thirty (30) days after notice has been given, the issue of additional compensation may be submitted by either party to an arbitrator under Article VII of this Agreement for an expedited hearing and a final and binding decision. Notwithstanding the limitations on the arbitrator's powers contained in Article VII, Section 10, the arbitrator will have the full authority to decide the amount of additional compensation to which the players will be entitled. In no event will the regular season be extended for the duration of this Agreement to include more than eighteen (18) games.

# ARTICLE XXIII
## MONEY NOW

Section 1. **Amount:** Any player who was on a club's Active, Inactive, Injured Reserve or Physically Unable to Perform list on September 20, 1982, will receive a payment based on the number of Credited Seasons earned under the Bert Bell NFL Player Retirement Plan as of that date in accordance with the following schedule:

| Credited  Seasons | Amount |
|---|---|
| None | $10,000 |
| One | 20,000 |
| Two | 30,000 |
| Three  or  more | 60,000 |

Section 2. **Payment:** The amount specified in Section 1 above will be paid to each player who qualifies for such payment on January 3, 1983, or 15 days following the date of execution of this Agreement, whichever occurs later.

Section 3. **Game Pay:** In consideration of payment of the amounts provided for in this Article, the NFLPA agrees that neither it nor any of its members nor any member of its bargaining unit will file any grievance, suit or any other type of action in any forum claiming that any NFL player is entitled to be paid any salary for the 1982 regular season in excess of the sum arrived at by dividing the yearly salary stated in paragraph 5 of his 1982 NFL Player Contract, or paragraph 3 of his 1982 Standard Player Contract (or 110% of the 1982 paragraph 5 or paragraph 3 salary, as may be the case, if player is in his option year) by 16, and multiplying the dividend by the total number of 1982 regular season games played on the dates of which the player was on a club's Active, Inactive, Injured Reserve or Physically Unable to Perform list. This Section does not apply to injury grievances under Article IX of this Agreement.

# ARTICLE XXIV
## SEVERANCE PAY

Section 1. **Amount:** Effective November 16, 1982, any player who has earned two (2) or more Credited Seasons under the

53

Bert Bell NFL Player Retirement Plan and leaves the National Football League, will be entitled to receive from the last NFL club to which he was under contract a severance payment in accordance with the following schedule:

| Credited Seasons | Last NFL Season 1982, 1983 or 1984 | Last NFL Season 1985 or 1986 |
|---|---|---|
| Two | $ 5,000 | $ 10,000 |
| Three | 20,000 | 30,000 |
| Four | 60,000 | 70,000 |
| Five | 70,000 | 80,000 |
| Six | 80,000 | 90,000 |
| Seven | 90,000 | 100,000 |
| Eight | 100,000 | 110,000 |
| Nine | 110,000 | 120,000 |
| Ten | 120,000 | 130,000 |
| Eleven | 130,000 | 140,000 |
| Twelve or more | 140,000 | 150,000 |

For the 1982 season only, a player who was on any club's Active, Inactive, Injured Reserve or Physically Unable to Perform list on the dates of a club's first two regular season games will be deemed to have earned a Credited Season for purposes of this Article only and for no other purpose, including pension plan purposes.

Section 2. **Payment:** The foregoing severance payment will be paid to the player immediately following the third game of the NFL regular season next following the player's leaving the National Football League or any other professional football league, whichever occurs later. The amount of the severance payment will be prorated among all clubs to which a player was under contract during his NFL career, except in the case of a player who left the NFL prior to September 20, 1982 and returns to a club after the execution of this Agreement, in which case the player will be entitled to only one-half of his accrued severance benefit and the club to which the player returns will be responsible for one-quarter of his accrued severance benefit as well as any full severance benefit earned following his return. A player may not qualify for more than one severance payment under this provision.

54

# ARTICLE XXV
## MEAL ALLOWANCE

Section 1. **Reimbursement:** Effective after the execution of this Agreement, a player will be reimbursed for meals not furnished by his club on travel days during the pre-season, regular season and post-season as follows: 1982 through 1984— Breakfast $7.00; Lunch $8.00; Dinner $20.00; 1985 and 1986— Breakfast $8.00; Lunch $9.00; Dinner $21.00.

Section 2. **Travel Day:** Each travel day will commence at the time a team leaves its home city and will terminate at the time the team arrives back at its home city. If a team is travelling for a day game and leaves its home city after 2:00 P.M. on the day prior to the game, players will receive dinner money if the team does not eat dinner together. When the pre-game meal on a travel day is after 9:00 A.M., players will receive breakfast money.

# ARTICLE XXVI
## DAYS OFF

Section 1. **Rate:** All players will be permitted days-off at least at the rate of four days per month as determined by the clubs, commencing with the first pre-season game and continuing until the last regular season or post-season game played by the respective clubs.

Section 2. **Requirements:** During the 24-hour period constituting a day-off, any injured player may be required to undergo medical treatment and quarterbacks may be required to attend coaches meetings.

# ARTICLE XXVII
## MOVING AND TRAVEL EXPENSES

Section 1. **Qualification:** Effective after the execution of this Agreement, a player qualifying under either of the following categories will receive reimbursement for moving expenses, upon presentation of vouchers, in accordance with Section 2: