part of Team Salary that portion of the player's Salary which it might actually pay or might be obligated to pay that season.

*Section 7.* **30% Rules:**

(a)    No NFL Player Contract extending into a season beyond the Final League Year may provide for an annual increase in Salary, excluding any amount attributable to a signing bonus as defined in Section 6(b)(iii) above, of more than 30% of the Salary provided for in the Final League Year, per year, either in the season after the Final League Year or in any subsequent season covered by the Player Contract.

(b)    Any amount which a Club may pay to a player to buy out a right the player has or may have to terminate one or more contract years shall be treated as signing bonus at the time the buyout is exercised by the Club, and prorated at that time over the remaining term of the contract, including the current League Year, if the right to terminate and/or the right to buyout is based upon one or more incentives that are not "likely to be earned." Such a buyout amount shall not be included in any calculation for purposes of the 30% Rule, set forth above. (The parties acknowledge a disagreement as to the treatment of allocated signing bonus and buyout payments when a player's right to terminate one or more contract years and/or the Club's right to buyout is based upon one or more incentives that are "likely to be earned," and not upon any incentives that are not "likely to be earned." These issues are expressly left open. Except to enforce the terms of this Subsection (b), the terms of this Subsection may not be referred to or used by any of the parties in any proceeding, or otherwise, and the parties otherwise reserve all their rights with respect to the subject of this parenthetical.).

(c)    Any amount specified to be paid for the exercise of an option by a Club to extend the term of a Player Contract shall be treated as signing bonus, prorated over the remaining term of the contract commencing in the League Year in which it is exercised or the last League Year in which the option may be exercised, whichever comes first. Such an option amount shall, immediately upon execution of the contract, renegotiation or extension, be included in any calculation for purposes of the 30% Rule, set forth above, prorated over the remaining term of the contract commencing in the last League Year in which the option may be exercised. Notwithstanding the foregoing: (i) if a Club renounces its right to exercise the option, the option amount shall not be included in Team Salary as of the date of such renunciation; and (ii) if the club does not renounce, but nonetheless does not exercise the option, the full amount of the option amount previously counted against Team Salary shall be credited to the Club's Salary Cap in the next League Year.

*Section 8.* **Renegotiations and Extensions:**

(a)    Provided that all Salary Cap requirements are met, Player Contracts for current and future years may be renegotiated and/or extended except as follows:

(i)    The contract of a Veteran Player may not be renegotiated to increase the Salary to be paid to the player during the original terms of the contract for a period of twelve months after the player's most recent contract renegotiation. The first renegotiation of a Veteran Player Contract, however, may take place at any time.

(ii)     No Team and player may agree to renegotiate any term of a previously signed Player Contract for a prior League Year.

(iii)     No contract renegotiations may be done for a current season after the last regular season game of that season

(iv)     A Player Contract signed by a Rookie may not be renegotiated except as provided in Article 7.

(b)     No Player Contract, and no contract renegotiation or extension, may be agreed to between a Player and a Club for any term that expires prior to the last day of a League Year. All rights by a player to terminate a Player Contract must be exercised prior to the first day of any League Year to be terminated.

(c)     Any agreement to compensate a player at the minimum amount set forth in Article 21 for participation in an offseason workout program or classroom instruction shall not be treated as a renegotiation of a Player Contract. Any agreement to compensate a player for such participation above such amount shall be treated as a renegotiation. All such agreements shall be set forth in writing and promptly filed with the League Office.

(d)     Any salary deferral agreed to by club and player which does not affect the player's Salary for purpose of the Salary Cap and Rookie Compensation Pool shall not be treated as a renegotiation.

(e)     An amendment to a Player Contract that changes the terms under which signing bonus is paid is a renegotiation.

# ARTICLE 14
## ENFORCEMENT OF THE SALARY CAP
## AND ROOKIE COMPENSATION POOL

**Section 1. Undisclosed Terms:** A Club (or a Club Affiliate) and a player (or a Player Affiliate or player agent) may not, at any time, enter into undisclosed agreements of any kind, express or implied, oral or written, or promises, undertakings, representations, commitments, inducements, assurances of intent, or understandings of any kind: (a) involving consideration of any kind to be paid, furnished or made available or guaranteed to the player, or Player Affiliate, by the Club or Club Affiliate either prior to, during, or after the term of the Player Contract; and/or (b) concerning the terms of any renegotiation and/or extension of any Player Contract by a player subject to a Franchise Player or Transition Player designation.

**Section 2. Circumvention:** Neither the parties hereto, nor any Club or player shall enter into any agreement, Player Contract, Offer Sheet or other transaction which includes any terms that are designed to serve the purpose of defeating or circumventing the intention of the parties as reflected by the provisions of this Agreement. However, any conduct permitted by this Agreement shall not be considered to be a violation of this Section.

**Section 3. System Arbitrator Proceeding:** Any individual player or the NFLPA acting on that player's or any number of players' behalf, the NFL, and any Club may bring a proceeding before the System Arbitrator alleging a violation of Article 7, Article 12, Article 13 or Article 14, Section 2 of this Agreement. Issues of relief and liability shall be determined in the same proceeding. Other than as set forth in Article 7, the complaining party shall bear the burden of demonstrating by a clear preponderance of the evidence that the challenged conduct was in violation of such Article.

**Section 4. Commissioner Disapproval:** In the event the Commissioner disapproves any Player Contract as being in violation of Article 7, Article 9, Article 10, or Article 13, he shall at the time of such disapproval notify the NFLPA, all affected Clubs, and all affected players of such disapproval in writing and the reasons therefor. Except as required by the terms of this Agreement, nothing in this Agreement is intended to affect (i) any authority of the Commissioner to approve or disapprove Player Contracts and (ii) the effect of the Commissioner's approval or disapproval on the validity of such Player Contracts.

**Section 5. System Arbitrator Review:** In the event that the Commissioner disapproves a Player Contract pursuant to Section 4 above, the NFLPA, any affected Club, and any affected player shall have the right within thirty (30) days of such person's notice of such disapproval to initiate a proceeding before the System Arbitrator to determine whether such contract is in violation of this Agreement. The System Arbitrator shall review the dispute de novo, and shall have the authority to approve such Player Contracts in lieu of the Commissioner's approval, or confirm the Commissioner's disapproval. In the event

the Commissioner's disapproval is upheld, the player and the Club shall have ten (10) days to attempt to renegotiate such Player Contract notwithstanding any other time period set forth in this Agreement. The System Arbitrator does not have the authority to impose any revisions to such Player Contract on the player or the Club.

*Section 6.* Sanctions:

(a)     **Players and Agents**. In the event that the System Arbitrator finds a violation of Subsections 1(a) or 1(b) of this Article, for each such violation: (i) (1) the System Arbitrator may impose a fine of up to $500,000 on any player or player agent found to have committed such violation, and (2) shall, unless the parties to this Agreement otherwise agree, order the player to disgorge any undisclosed compensation found to have been paid in violation of Section 1 of this Article unless the player establishes by a preponderance of the evidence that he was unaware of the violation; and (ii) the Commissioner shall be authorized to void any Player Contract(s) that was (or were) the direct cause of such violation.

(b)     **Clubs**. In the event that the System Arbitrator finds a violation of Subsection 1(a) of this Article, for each such violation, the Commissioner shall be authorized to: (i) impose a fine of up to $6,500,000, payable to the NFL, upon any Club found to have committed such violation; (ii) order the forfeiture of up to a maximum of two draft choices (without limitation as to round) by the Club found to have committed such violation; (iii) impose a fine of up to $500,000 on any Club executive or other Club personnel found to have committed such violation; and/or (iv) suspend for up to one year any Club executive or other Club personnel found to have committed such violation. In the event that the System Arbitrator finds a violation of Subsection 1(b) of this Article, for each such violation, the System Arbitrator may: (i) impose a fine of up to $6,500,000, payable to the NFL, upon any Club found to have committed such violation; and (ii) impose a fine of up to $500,000 on any Club executive or other Club personnel found to have committed such violation. In addition, in the event that the System Arbitrator finds a violation of Subsection 1(b) of this Article, for each such violation, the Commissioner (i) shall be authorized to order the forfeiture of up to a maximum of two Draft choices (without limitation as to round) by the Club found to have committed such violation; and (ii) shall, unless the parties agree otherwise, suspend for up to one year any Club executive or other Club personnel found to have committed such violation. In imposing sanctions pursuant to the immediately preceding sentence, the Commissioner shall apply the same standards that he would apply in the event of a violation of Subsection 1(a), taking into account the sanctions, if any, imposed by the System Arbitrator. In agreeing to the two preceding sentences, the parties have not waived or affected their respective positions as to whether the Commissioner does or does not have the authority to impose discipline for such violations against any Club, Club executive, or other Club personnel greater than the sanctions set forth in this Article, and the preceding two sentences shall not be considered in any resolution of that issue. For purposes of this Subsection 6(b), the term "Club personnel" shall not include players.

(c)     Subject to the next to last sentence of Subsection 6(b) above, the sanctions set forth in Subsections 6(a) and 6(b) above shall be the sole penalties under this Agreement for conduct in violation of Section 1 of this Article or Sections 1–3 of Article

18, and each of the sanctions set forth in Subsections 6(a) or 6(b) above may not be imposed more than once on the same person or Club for the same conduct, even if such conduct constitutes a violation of both Section 1 of this Article and Sections 1–3 of Article 18. All fines collected from players and agents, and all disgorged compensation collected from players pursuant to this Section 6, shall be contributed and allocated as prescribed in Article 46, Section 5(c). For each League Year after the 2011 League Year, each of the maximum fines set forth in this Section 6 shall be adjusted by the same percentage as the change in Projected AR for that League Year as compared to the Projected AR for the prior League Year (up to a maximum of ten percent (10%) per League Year).

(d)      The sanctions set forth in Sections 6(a) and 6(b) above shall not be implemented until the conclusion of any appeals thereof.

*Section 7.* **Revenue Circumvention:** In the event that a Club or anyone acting on its behalf fails to materially report or materially misreports AR or non-AR in a manner designed to serve the purpose of defeating or circumventing the intention of the parties as reflected by the provisions of this Agreement with respect to such revenues, the NFLPA and/or the NFL shall have the right to initiate a proceeding before the System Arbitrator to determine whether such conduct is in violation of this Section 7 of this Article. In the event that the System Arbitrator finds a violation of this Section 7, the System Arbitrator may impose a fine upon the Club of up to $5,000,000, payable to the NFL for donation to charitable funds as agreed to by the parties. For each League Year after the 2011 League Year, the maximum fine set forth in this Section shall be adjusted by the same percentage as the change in Projected AR for that League Year as compared to the Projected AR for the prior League Year (up to a maximum of ten percent (10%) per League Year).

*Section 8.* **NFL Audit Rights:**

(a)      The NFL shall have the right to audit records of Clubs and Club Affiliates to investigate allegations of violations of Section 1 of this Article.

(b)      In agreeing to this Section, the parties have not waived or affected their respective positions as to whether the NFL may conduct any Club-related audits beyond those set forth in the preceding sentence, and this Section shall not be considered in any resolution of that issue.

**Section 9. Prior Consultation:** Reasonably prior to the initiation of a proceeding alleging a violation of Subsection 1(a) or 1(b) above, the parties shall confer in person or by telephone to attempt to negotiate a resolution of the dispute, and the charging party shall disclose to the other party (either the NFLPA or the NFL, as the case may be) all evidence (whether exculpatory or inculpatory) concerning such alleged violation (and provide a copy of all such evidence in documentary form), including but not limited to any such evidence that is the product of any investigation by or on behalf of the charging party. All such evidence subsequently acquired by the charging party shall be subject to disclosure to the other party in any resulting proceeding. This Section shall not require the disclosure of any attorney-client communication, or any work product created by or

at the request of an attorney. In addition, any attempt by the League, the NFL, or any Club to have discipline imposed on any person (including but not limited to a Club) for conduct in violation of Subsection 1(a) or 1(b) above shall be immediately disclosed to the NFLPA.

# ARTICLE 15
## SYSTEM ARBITRATOR

*Section 1.* **Appointment:** The parties agree that the System Arbitrator shall have exclusive jurisdiction to enforce the terms of Articles 1, 4, 6–19, 26–28, 31, or 68–70 of this Agreement (except as provided in those Articles with respect to disputes determined by the Impartial Arbitrator, the Accountants, or another arbitrator).

*Section 2.* **Scope of Authority:**

(a)    The System Arbitrator shall make findings of fact and determinations of relief including, without limitation, damages (including damages referred to in Article 17, Section 9), injunctive relief, fines, and specific performance.

(b)    The Appeals Panel shall accept the System Arbitrator's findings of fact unless clearly erroneous and the System Arbitrator's recommendations of relief unless based upon clearly erroneous findings of fact, incorrect application of the law, or abuse of discretion, except that, as to any finding concerning Article 17, any imposition of a fine of $1 million or more, or any finding that would permit termination of this Agreement, review shall be de novo.

(c)    Subject to Subsections (a) and (b) above, the Appeals Panel shall determine all points of law and finally make the award of all relief including, without limitation, contract damages, injunctive relief, fines, and specific performance.

(d)    Except for any matters for which the Appeals Panel has de novo review of the System Arbitrator's determinations, rulings of the System Arbitrator shall upon their issuance be binding upon and followed by the parties unless stayed, reversed, or modified by the Appeals Panel. In entertaining a request for a stay of a ruling of the System Arbitrator, the Appeals Panel shall apply the standard that the United States Court of Appeals for the Second Circuit would apply to a request for a stay of a ruling of a district court within that Circuit. If and when a decision of the System Arbitrator is reversed or modified, the effect of such reversal or modification shall be deemed by the parties to be retroactive to the time of issuance of the ruling of the System Arbitrator.

(e)    The System Arbitrator's and Appeals Panel's authority shall be limited to the terms of 1, 4, 6–19, 26–28, 31, or 68–70 of this Agreement (except as provided in those Articles with respect to disputes determined by the Impartial Arbitrator, the Accountants, or another arbitrator).

(f)    **Statute of Limitations.** Unless otherwise specified in this Agreement, a three year statute of limitations shall apply to the initiation of proceedings before the System Arbitrator, which statute begins to apply on the date upon which the facts giving rise to the proceeding are known or reasonably should have been known to the party bringing the proceeding.

*Section 3.* **Discovery:** In any of the disputes described in this Agreement over which the System Arbitrator has authority, the System Arbitrator shall grant reasonable and expedited discovery upon the application of any party where, and to the extent, he determines it is reasonable to do so. Such discovery may include the production of documents and the taking of depositions. Subject to rules to be agreed to by the parties,

in any proceeding to review any alleged violation of Article 12 of this Agreement regarding any AR issue, the System Arbitrator shall have the authority, upon good cause shown, to direct any Club to produce any tax materials disclosing any income figures for such Club or Club Affiliate (non-income figures may be redacted) which in his or her judgment relates to any such alleged violation, including but not limited to portions of any tax returns or other documents submitted to the Internal Revenue Service. Subject to rules to be agreed to by the parties, in any proceeding to review any alleged violation of Article 13 and/or Article 7 of this Agreement regarding any Salary paid to any player(s), the System Arbitrator shall have the authority, upon good cause shown, to direct any such player(s) to produce any tax materials disclosing any income figures for any such player or Player Affiliate (non-income figures may be redacted) which in his or her judgment relates to any such alleged violation, including but not limited to portions of any tax returns or other documents submitted to the Internal Revenue Service. In each case the System Arbitrator shall not release such tax materials to the general public, and any such tax materials shall be treated as strictly confidential under an appropriate protective order.

*Section 4.* **Compensation:** The compensation and costs of retaining the System Arbitrator and the Appeals Panel shall be equally borne by the NFL and the NFLPA. In no event shall any party be liable for the attorneys' fees incurred in any such enforcement proceeding by any other party, except as set forth in Article 17.

*Section 5.* **Procedures:** All matters in enforcement proceedings before the System Arbitrator shall be heard and determined in an expedited manner. An enforcement proceeding may be commenced upon 72 hours written notice (or upon shorter notice if ordered by the System Arbitrator) served upon the party against whom the enforcement proceeding is brought and filed with the System Arbitrator. All such notices and all orders and notices issued and directed by the System Arbitrator shall be served upon the NFL and the NFLPA, in addition to any counsel appearing for individual NFL players or individual NFL Clubs. The NFL and the NFLPA shall have the right to participate in all such enforcement proceedings, and the NFLPA may appear in any enforcement proceedings on behalf of any NFL player who has given authority for such appearance. Unless otherwise agreed, all hearings will be transcribed.

*Section 6.* **Selection of System Arbitrator:**

(a)     In the event that the NFL and NFLPA cannot agree on the identity of a System Arbitrator, the parties agree to ask the CPR Institute (or such other organization(s) as the parties may agree) for a list of eleven attorneys (none of whom shall have nor whose firm shall have represented within the past five years players, player representatives, clubs or owners in any professional sport). If the parties cannot within thirty days of receipt of such list agree to the identity of the System Arbitrator from among the names on such list, they shall alternately strike names from said list, until only three names remain, at which point the parties shall make reasonable efforts to interview the remaining candidates. After those interviews, and if the parties cannot agree on the selection, the striking process shall resume until only one name remains, and that person shall

be the System Arbitrator. The first strike shall be determined by a coin flip. Upon selection, the System Arbitrator shall serve for an initial eighteen-month term commencing on the date of entry of the order of appointment. Thereafter, the System Arbitrator shall continue to serve for successive two-year terms unless notice to the contrary is given either by the NFL or the NFLPA. Such notice shall be given to the other party and the System Arbitrator within the ninety days preceding the end of any term, but no later than thirty days prior to the end of such term. Following the giving of such notice, a new System Arbitrator shall be selected in accordance with the procedures set forth in this Section 6. The NFL and the NFLPA may dismiss the System Arbitrator at any time and for any reason upon their mutual consent. Unless the parties otherwise agree, a discharged System Arbitrator shall retain jurisdiction for any proceeding which has been commenced prior to such discharge.

(b)     In the event of the absence (or vacancy) of the System Arbitrator, one of the members of the Appeals Panel (to be chosen by the parties, confidentially using the strike system) shall serve as the System Arbitrator until a new System Arbitrator is chosen pursuant to Subsection (a) above.

*Section 7.* **Selection of Appeals Panel:**

(a)     There shall be a three-member Appeals Panel, at least one of whom must be a former judge. In the event the NFL and NFLPA cannot agree upon the members of such a panel, the parties will jointly ask the CPR Institute (or such other organization(s) as the parties may agree) to submit to the parties a list of fifteen (15) attorneys (none of whom shall have, nor whose firm shall have, represented within the past five (5) years any professional athletes; agents or other representatives of professional athletes; labor organizations representing athletes; sports leagues, governing bodies, or their affiliates; sports teams or their affiliates; or owners in any professional sport). If the parties cannot within fifteen (15) days from the receipt of such list agree to the identity of the Appeals Panel from among the names on such list, they shall meet and alternate striking one (1) name at a time from the list until three (3) names on the list remain. The first strike will be assigned to the party that received the second strike in the selection of the System Arbitrator, or a coin flip, if striking was not used in selecting the System Arbitrator. The three (3) remaining names on the list shall comprise the Appeals Panel. The compensation of the members of the Appeals Panel and the costs of proceedings before the Appeals Panel shall be borne equally by the parties to this Agreement; provided, however, that each participant in an Appeals Panel proceeding shall bear its own attorneys' fees and litigation costs.

(b)     In the event that there is a vacancy on the Appeals Panel, or in the event that an appeal is taken from a decision of a member of the Appeals Panel serving as the System Arbitrator pursuant to Subsection 6(b) above, the parties shall select another member to the Panel, using the procedures set forth in Subsection 7(a) above.

115

*Section 8.* **Procedure for Appeals:**

      (a)    Any party seeking to appeal (in whole or in part) an award of the System Arbitrator must serve on the other party and file with the System Arbitrator a notice of appeal within ten (10) days of the date of the award appealed from.

      (b)    Following the timely service and filing of a notice of appeal, the NFLPA and NFL shall attempt to agree upon a briefing schedule. In the absence of such agreement, and subject to Subsection (d) below, the briefing schedule shall be set by the Appeals Panel; provided, however, that any party seeking to appeal (in whole or in part) from an award of the System Arbitrator shall be afforded no less than fifteen (15) and no more than twenty-five (25) days from the date of the issuance of such award, or the date of the issuance of the System Arbitrator's written opinion, whichever is latest, to serve on the opposing party and file with the Appeals Panel its brief in support thereof; and provided further that the responding party or parties shall be afforded the same aggregate amount of time to serve and file its or their responding brief(s).

      (c)    The Appeals Panel shall schedule oral argument on the appeal(s) no less than five (5) and no more than ten (10) days following the service and filing of the responding brief(s), and shall issue a written decision within thirty (30) days from the date of argument. The Appeals Panel shall have the discretion to permit a reply brief.

      (d)    For good cause, either party may seek to accelerate the briefing, hearing, and decision schedule set forth in Subsections (b) and (c) above.

      (e)    The decision of the Appeals Panel shall constitute full, final, and complete disposition of the dispute. If there is no timely appeal of a decision of the System Arbitrator, the System Arbitrator's decision shall constitute the full, final and complete disposition of the dispute.

*Section 9.* **Decision:** Any decision issued by the System Arbitrator or the Appeals Panel may be enforced only against a Club or Clubs or the League, as applicable, found to have violated this Agreement. In no event may the System Arbitrator or Appeals Panel order relief, or assess any monetary award, against an individual Club owner, officer, or non-player employee.

*Section 10.* **Confidentiality:** Unless the parties agree otherwise, proceedings before the System Arbitrator and Appeals Panel, other than their decisions, shall be confidential, and may not be disclosed to persons other than counsel, senior executives of the NFL and any involved Club, senior executives of the NFLPA, the NFLPA Executive Committee, NFLPA Player Representatives, and any involved player(s), player agent(s), or Club or League personnel. The foregoing does not prejudice the right of any party to seek any additional confidentiality restrictions (including as to the decision) from the System Arbitrator or Appeals Panel, if such party demonstrates just cause.

116

# ARTICLE 16
## IMPARTIAL ARBITRATOR

*Section 1.* **Selection:** The parties shall select one of the Non-Injury Grievance Arbitrators who shall concurrently serve as the Impartial Arbitrator, who shall have exclusive jurisdiction to determine disputes that are specifically referred to the Impartial Arbitrator pursuant to the express terms of this Agreement.

*Section 2.* **Scope of Authority:** The powers of the Impartial Arbitrator and the rights of the parties in any proceeding before him or her shall be solely to determine disputes that are specifically referred to the Impartial Arbitrator pursuant to the express terms of this Agreement. In no event shall the Impartial Arbitrator have any authority to add to, subtract from, or alter in any way the provisions of this Agreement.

*Section 3.* **Effect of Rulings:** Rulings of the Impartial Arbitrator shall upon their issuance be final and binding upon all parties, except as expressly specified under this Agreement or as expressly agreed to among all parties.

*Section 4.* **Discovery:** In any of the disputes described in this Agreement over which the Impartial Arbitrator has authority, the Impartial Arbitrator shall, for good cause shown, grant reasonable and expedited discovery upon the application of any party where, and to the extent, he determines it is reasonable to do so and it is possible to do so within the time period provided for his determination. Such discovery may include the production of documents and the taking of depositions.

*Section 5.* **Compensation of Impartial Arbitrator:** The compensation to and costs of the Impartial Arbitrator in any proceeding brought pursuant to this Agreement shall be equally borne by the NFL and the NFLPA. In no event shall any party be liable for the attorneys' fees or litigation costs incurred in any such proceeding by any other party.

*Section 6.* **Procedures:** All matters in proceedings before the Impartial Arbitrator shall be heard and determined in an expedited manner. Unless otherwise specified in this Agreement, a proceeding may be commenced upon 48 hours written notice served upon the party against whom the proceeding is brought and the Impartial Arbitrator, and the arbitration, shall be deemed to have been commenced on the second business day after such notice was given. All such notices and all orders and notices issued and directed by the Impartial Arbitrator shall be served upon the NFL and the NFLPA, in addition to any counsel appearing for individual NFL players or individual Clubs. The NFL and the NFLPA shall have the right to participate in all such proceedings, and the NFLPA may appear in any proceedings on behalf of any NFL player who has given authority for such appearance.

*Section 7.* **Selection of Impartial Arbitrator:** In the event that the NFL and the NFLPA cannot agree on the identity of an Impartial Arbitrator, the parties agree that the Impartial Arbitrator shall be selected using the same method set forth in Article 15, Sec-

117

tion 6. The Impartial Arbitrator shall serve for a two-year term commencing on the date of entry of the order of appointment, unless the parties agree otherwise. The Impartial Arbitrator shall continue to serve for successive two-year terms unless notice to the contrary is given either by the NFL or the NFLPA. Such notice shall be given to the other party and the Impartial Arbitrator within the ninety days preceding the end of any term, but no later than thirty days prior to the end of such term. If necessary, a new Impartial Arbitrator shall be selected in accordance with the procedures of this Section. The NFL and NFLPA may dismiss the Impartial Arbitrator at any time and for any reason upon their mutual consent. Unless the parties otherwise agree, a discharged Impartial Arbitrator shall retain jurisdiction for any proceeding which has been commenced prior to such discharge.

## ARTICLE 17
## ANTI-COLLUSION

*Section 1.* **Prohibited Conduct:**

(a)     No Club, its employees or agents shall enter into any agreement, express or implied, with the NFL or any other Club, its employees or agents to restrict or limit individual Club decision-making as follows:

(i)     whether to negotiate or not to negotiate with any player;

(ii)     whether to submit or not to submit an Offer Sheet to any Restricted Free Agent;

(iii)     whether to offer or not to offer a Player Contract to any player;

(iv)     whether to exercise or not to exercise a Right of First Refusal; or

(v)     concerning the terms or conditions of employment offered to any player for inclusion, or included, in a Player Contract.

(b)     Any approval or disapproval of a player's contract by the Commissioner, or any communication thereof, timely notice of which is provided to the NFLPA cannot be the basis of any claim of collusion. The NFLPA or the affected Player shall have the right to appeal the Commissioner's disapproval of such player contract to the System Arbitrator, pursuant to Article 15 and Article 14.

*Section 2.* **Other Club Conduct:** No Club may have a policy not to negotiate with, or enter into a Player Contract with, any player who is free to negotiate and sign a Player Contract with any Club, on any of the following grounds, if such policy is inconsistent with Section 1 above:

(a)     that the player has previously been subject to the exclusive negotiating rights obtained by another Club in a College Draft, by virtue of a Required Tender to a player with less than three Accrued Seasons, or a Franchise Player designation; or

(b)     that the player has refused or failed to enter into a Player Contract for a prior season containing a Right of First Refusal or an option clause (i.e., any clause that authorizes an extension or renewal by a Club of a Player Contract beyond its stated term);

(c)     that the player has become a Restricted Free Agent or an Unrestricted Free Agent; or

(d)     that the player is or has been subject to any Right of First Refusal.

*Section 3.* **Club Discretion:** Section 2 above does not diminish any Club's right not to negotiate or contract with any particular player on any policy ground not specified above. In conjunction with other evidence of an alleged violation(s) of Section 1, a Club's adherence to a policy identified in Section 2 above may be offered as evidence of an alleged violation of Section 1 above, but may not be the basis of any separate proceeding seeking any penalty or other relief against any Club or the NFL.

*Section 4.* **League Disclosures:** Neither the NFL nor the Management Council shall knowingly communicate or disclose, directly or indirectly, to any NFL Club that another NFL Club has negotiated with or is negotiating with any Restricted Free Agent, unless

119

and until an Offer Sheet for such Restricted Free Agent has been given to the Prior Club, or with any Unrestricted Free Agent, prior to the execution of a Player Contract with that Unrestricted Free Agent, if such communication or disclosure is inconsistent with Section 1 above. It shall not be a violation of this Article for the NFL to respond to an inquiry from a Club about whether and under what circumstances proposed transactions would be permissible under this Agreement or NFL Rules consistent with this Agreement. In conjunction with other evidence of an alleged violation of Section 1 above, a Club's communication or disclosure of the kind identified in the first sentence of this Section may be offered as evidence of an alleged violation(s) of Section 1 above, but may not be the basis of any separate proceeding seeking any penalty or other relief against any Club or the NFL.

*Section 5.* **Enforcement of Anti-Collusion Provisions:** Except as provided in Section 16(d) below, any player or the NFLPA, acting on that player's or any number of players' behalf, may bring an action before the System Arbitrator alleging a violation of Section 1 of this Article. In any such proceeding, the Federal Rules of Evidence shall apply. Issues of relief and liability shall be determined in the same proceeding (including the amount of damages, pursuant to Section 9 below, if any). The complaining party shall bear the burden of demonstrating by a clear preponderance of the evidence that (1) the challenged conduct was or is in violation of Section 1 of this Article and (2) caused any economic injury to such player(s).

*Section 6.* **Burden of Proof:** The failure by a Club or Clubs to negotiate, to submit Offer Sheets, or to sign contracts with Restricted Free Agents or Transition Players, or to negotiate, make offers, or sign contracts for the playing services of such players or Unrestricted Free Agents, shall not, by itself or in combination only with evidence about the playing skills of the player(s) not receiving any such offer or contract, satisfy the burden of proof set forth in Section 1 above. However, any of the types of evidence described in the preceding sentence may support a finding of a violation of Section 1 of this Article, but only in combination with other evidence which, by itself or in combination with such evidence, indicates that the challenged conduct was in violation of Section 1 of this Article. Nothing in this Agreement shall preclude the NFL or its Clubs from arguing that any evidence is insufficient to satisfy the burden of proof set forth in Section 5 above. Nothing in this Agreement shall preclude the NFLPA or any player from arguing that any evidence is sufficient to satisfy the burden of proof set forth in Section 5 above, except as set forth above.

*Section 7.* **Summary Judgment:** The System Arbitrator may, at any time following the conclusion of the permitted discovery, determine whether or not the complainant's evidence is sufficient to raise a genuine issue of material fact capable of satisfying the standards imposed by Sections 5 and/or 6 above. If the System Arbitrator determines that complainant's evidence is not so sufficient, he shall dismiss the action.

*Section 8.* **Remedies:** In the event that an individual player or players or the NFLPA acting on his, or their, behalf, successfully proves a violation of Section 1 of this Article, the player or players injured shall have the right:

(a)     To terminate his (or their) existing Player Contract(s) at his (or their) option, or void any Club's Draft rights or other rights with respect to such player(s) at his (or their) option; any Player Contract terminated during the course of a playing season shall be terminated as of the end of that season. Such rights shall not arise until the recommendation of the System Arbitrator finding a violation is no longer subject to further appeal and must be exercised by the player within thirty (30) days therefrom. If, at the time the Player Contract is terminated, such player would have been a Restricted Free Agent pursuant to Article 9, such player shall immediately become a Restricted Free Agent upon such termination. If, at the time the Player Contract is terminated, such player would have been an Unrestricted Free Agent pursuant to Article 9, such player shall immediately become an Unrestricted Free Agent upon such termination. If, at the time the Player Contract is terminated, such player would have been subject to a Club's exclusive negotiating rights, such player shall remain subject to such rights upon such termination. In any case described in the preceding three sentences, the player shall not be subject to any signing period. In the case of a Drafted Rookie who does not sign a Player Contract and who is given the option of voiding a Club's Draft rights pursuant to this Subsection (a), such player shall then be treated as either: (i) a Drafted Rookie subject to the NFL waiver system as described in Article 6, Section 4, if the termination takes place during the player's first League Year; or (ii) a Drafted Rookie subject to the rules of Article 6, Section 9, if the termination takes place during the player's second League Year; or (iii) a Free Agent, if the termination takes place during the player's third League Year or thereafter; and

(b)     To recover all of his damages, as described in Section 9 below, for any alleged injuries suffered as a result of the violation.

*Section 9.* **Computation of Damages:** Upon any finding of a violation of Section 1 of this Article, compensatory damages (i.e., the amount by which any player has been injured as a result of such violation) shall be awarded. In addition, the System Arbitrator shall award non-compensatory damages (i.e., the amount exceeding compensatory damages) as follows:

(a)     Two times the amount of compensatory damages, in the event that all of the Clubs found to have violated Section 1 of this Article, have committed such a violation for the first time. Any Club found to have committed such a violation for the first time shall be jointly and severally liable for two times the amount of compensatory damages.

(b)     Three times the amount of compensatory damages, in the event that any of the Clubs found to have violated Section 1 of the Article, have committed such a violation for the second time. In the event that damages are awarded pursuant to this Subsection: (i) any Club found to have committed such a violation for the first time shall be jointly and severally liable for two times the amount of compensatory damages; and (ii) any Club found to have committed such a violation for the second time shall be jointly and severally liable for three times the amount of compensatory damages.