# ARTICLE 43
# NON-INJURY GRIEVANCE

*Section 1.* **Definition:** Any dispute (hereinafter referred to as a "grievance") arising after the execution of this Agreement and involving the interpretation of, application of, or compliance with, any provision of this Agreement, the NFL Player Contract, the Practice Squad Player Contract, or any applicable provision of the NFL Constitution and Bylaws or NFL Rules pertaining to the terms and conditions of employment of NFL players, will be resolved exclusively in accordance with the procedure set forth in this Article, except wherever another method of dispute resolution is set forth elsewhere in this Agreement.

*Section 2.* **Initiation:** A grievance may be initiated by a player, a Club, the Management Council, or the NFLPA. A grievance must be initiated within fifty (50) days from the date of the occurrence or non-occurrence upon which the grievance is based, or within fifty (50) days from the date on which the facts of the matter became known or reasonably should have been known to the party initiating the grievance, whichever is later. A player need not be under contract to a Club at the time a grievance relating to him arises or at the time such grievance is initiated or processed.

*Section 3.* **Filing:** Subject to the provisions of Section 2 above, a player or the NFLPA may initiate a grievance by filing a written notice by certified mail, fax, or electronically via .pdf with the Management Council and furnishing a copy of such notice to the Club(s) involved; a Club or the Management Council may initiate a grievance by filing written notice by certified mail, fax, or electronically via .pdf with the NFLPA and furnishing a copy of such notice to the player(s) involved. The notice will set forth the specifics of the alleged action or inaction giving rise to the grievance. If a grievance is filed by a player without the involvement of the NFLPA, the Management Council will promptly send copies of the grievance and answer to the NFLPA. The party to whom a Non-Injury Grievance has been presented will answer in writing by certified mail, fax, or electronically via .pdf within ten (10) days of receipt of the grievance. The answer will set forth admissions or denials as to the facts alleged in the grievance. If the answer denies the grievance, the specific grounds for denial will be set forth. The answering party will provide a copy of the answer to the player(s) or Club(s) involved and the NFLPA or the Management Council as may be applicable. See also Section 14 below regarding electronic exchange of Standard Grievance Correspondence.

*Section 4.* **Ordinary and Expedited Appeal:** If a grievance is not resolved after it has been filed and answered, either the player(s) or Club(s) involved, or the NFLPA, or the Management Council may appeal such grievance by filing a written notice of appeal with the Notice Arbitrator and mailing copies thereof to the party or parties against whom such appeal is taken, and either the NFLPA or the Management Council as may be appropriate. If the grievance involves a suspension of a player by a Club, the player or NFLPA will have the option to appeal it immediately upon filing to the Notice Arbitrator and a hearing will be held by an arbitrator designated by the Notice Arbitrator within

seven (7) days of the filing of the grievance. The NFLPA and the NFL will engage in good faith efforts to schedule grievances involving suspension of a player by a Club prior to the Club's next scheduled game. In addition, the NFLPA and the Management Council will each have the right of immediate appeal and hearing within seven (7) days with respect to four (4) grievances of their respective choice each calendar year. The arbitrator(s) designated to hear such grievances will issue their decision(s) within five (5) days of the completion of the hearing. Pre-hearing briefs may be filed by either party and, if filed, will be exchanged prior to hearing.

*Section 5.* **Discovery and Prehearing Procedures:**

(a)(i)   Any party may seek bifurcation of a grievance to assert a claim of untimeliness. Bifurcation motions shall be presented in writing to the other party and the arbitrator in the moving party's answer or at any time no later than seven (7) days prior to the scheduled hearing on the merits of the grievance. If an arbitrator has not yet been assigned to hear the grievance then the moving party shall file the motion with the Notice Arbitrator, who will decide the motion or assign it to a member of the Non-Injury Grievance Arbitration panel. A party's decision to pursue a bifurcated hearing may not delay the processing of a hearing scheduled on the merits of the grievance. For any motions made at least thirty (30) days before a hearing on the merits of the grievance, the parties will use their best efforts to schedule the bifurcated hearing at least ten (10) days before the scheduled hearing on the merits of the grievance. In any case where a timely motion for bifurcation is made, but a bifurcated hearing is not held, the arbitrator shall decide the issue of timeliness during the hearing on the merits.

(ii)   If a defense of untimeliness is not raised at least seven (7) days before the scheduled hearing on the merits of the grievance, the parties will be precluded from arguing that defense. However, where a party learns of facts supporting the defense fewer than seven days prior to the hearing, during the hearing, or in a post-hearing deposition, the party must present the defense to the opposing party and arbitrator within seven (7) days of when the facts supporting the defense became known or reasonably should have been known to the party. An assertion at the hearing, or subsequent to the hearing, of a newly-discovered untimeliness defense will enable either party to present additional testimony, including the opportunity to recall witnesses or call new witnesses.

(iii)   If a grievance is ultimately dismissed based on a finding of untimeliness, the arbitrator shall issue a written decision limited to that issue, and such ruling shall be final.

(b)   No later than fourteen (14) days prior to the date set for any hearing, each party will submit to the other copies of all documents, reports and records relevant to the dispute. Failure to submit such documents, reports and records no later than fourteen (14) days prior to the hearing will preclude the non-complying party from submitting such documents, reports and records into evidence at the hearing, but the other party will have the opportunity to examine such documents, reports and records at the hearing and to introduce those it desires into evidence, except that relevant documents submitted to the opposing party less than fourteen (14) days before the hearing will be admissible provided that the proffering party and the custodian(s) of the documents made a good faith effort to obtain (or discover the existence of) said documents or that

188

the document's relevance was not discovered until the hearing date. In the case of an expedited grievance pursuant to Section 4, such documentary evidence shall be exchanged on or before two (2) days prior to the date set for the hearing unless the arbitrator indicates otherwise.

*Section 6.* **Arbitration Panel:** There will be a panel of four (4) arbitrators, whose appointment must be accepted in writing by the NFLPA and the Management Council. The parties will designate the Notice Arbitrator within ten (10) days of the execution of this Agreement. In the event of a vacancy in the position of Notice Arbitrator, the senior arbitrator in terms of service as a Non-Injury Grievance Arbitrator will succeed to the position of Notice Arbitrator, and the resultant vacancy on the panel will be filled according to the procedures of this Section. Either party to this Agreement may discharge a member of the arbitration panel by serving written notice upon the arbitrator and the other party to this Agreement from July 10 through July 20 of each year, but at no time shall such discharges result in no arbitrators remaining on the panel. If an arbitrator has been discharged, he or she shall retain jurisdiction for any case in which the hearing has commenced. If either party discharges an arbitrator, the other party shall have two (2) business days to discharge any other arbitrator. If the parties are unable to agree on a new arbitrator within thirty (30) days of any vacancy, the Notice Arbitrator shall submit a list of ten (10) qualified and experienced arbitrators to the NFLPA and the Management Council. Within fourteen (14) days of the receipt of the list, the NFLPA and the Management Council shall select one arbitrator from the list by alternately striking names until only one remains, with a coin flip determining the first strike. The next vacancy occurring will be filled in similar fashion, with the party who initially struck first then striking second. The parties will alternate striking first for future vacancies occurring thereafter during the term of this Agreement. If either party fails to cooperate in the striking process, the other party may select one of the nominees on the list and the other party will be bound by such selection.

*Section 7.* **Hearing:**

(a)     Each arbitrator will designate a minimum of twelve (12) hearing dates per year, exclusive of the period July 1 through September 10 for non-expedited cases, for use by the parties to this Agreement. Upon being appointed, each arbitrator will, after consultation with the Notice Arbitrator, provide to the NFLPA and the Management Council specified hearing dates for such ensuing period, which process will be repeated on a regular basis thereafter. The parties will notify each arbitrator thirty (30) days in advance of which dates the following month are going to be used by the parties. The designated arbitrator will set the hearing on his next reserved date in the Club city unless the parties agree otherwise. If a grievance is set for hearing and the hearing date is then postponed by a party within thirty (30) days of the hearing, the postponement fee of the arbitrator will be borne by the postponing party unless the arbitrator determines that the postponement was for good cause. Should good cause be found, the parties will bear any postponement costs equally. If the arbitrator in question cannot reschedule the hearing within thirty (30) days of the postponed date, the case may be reassigned by the Notice Arbitrator to another panel member who has a hearing date available within the thirty

189

(30) day period. At the hearing, the parties to the grievance and the NFLPA and Management Council will have the right to present, by testimony or otherwise, and subject to Section 5, any evidence relevant to the grievance. All hearings will be transcribed.

(b)      If a witness is unable to attend the hearing, the party offering the testimony shall inform the other party of the identity and unavailability of the witness to attend the hearing. At the hearing or within fourteen (14) days thereafter, the parties will agree upon dates to take testimony of unavailable witnesses, which dates will be within forty-five (45) days of the parties' receipt of the hearing transcript. The record should be closed sixty (60) days after the hearing date unless mutually extended notwithstanding any party's failure to present post-hearing testimony within the above-mentioned time period. If a witness is unavailable to attend the hearing, the witness' testimony may be taken by telephone conference call if the parties agree.  In instances in which the parties agree that the material facts giving rise to the grievance are not in dispute, the arbitrator shall have the authority to decide the merits of the case solely on the written submissions of the parties. In cases where the amount claimed is less than $25,000, the parties may agree to hold the hearing by telephone conference call. If either party requests post-hearing briefs, the parties shall prepare and simultaneously submit briefs except in grievances involving non-suspension Club discipline where less than $25,000 is at issue, in which cases briefs will not be submitted, unless requested by the arbitrator.

(c)      In each instance in which briefs are not submitted, within fourteen (14) days of the closing of the record, either party may submit to the Arbitrator prior opinions for the arbitrator's consideration in issuing the decision. Briefs must be submitted to the arbitrator no later than sixty (60) days after receipt of the last transcript.

*Section 8.* **Arbitrator's Decision and Award:** The arbitrator will issue a written decision within thirty (30) days of the submission of briefs, but in no event shall he or she consider briefs filed by either party more than sixty (60) days after receipt of the last transcript, unless the parties agree otherwise. The decision of the arbitrator will constitute full, final and complete disposition of the grievance, and will be binding upon the player(s) and Club(s) involved and the parties to this Agreement, provided, however, that the arbitrator will not have the jurisdiction or authority: (a) to add to, subtract from, or alter in any way the provisions of this Agreement or any other applicable document; or (b) to grant any remedy other than a money award, an order of reinstatement, suspension without pay, a stay of suspension pending decision, a cease and desist order, a credit or benefit award under the Bert Bell/Pete Rozelle NFL Player Retirement Plan, or an order of compliance with a specific term of this Agreement or any other applicable document, or an advisory opinion pursuant to Article 50, Section 1(c). In the event the arbitrator finds liability on the part of any party, he or she shall award Interest beginning one year from the date of the last regular season game of the season of the grievance.

*Section 9.* **Time Limits:** Each of the time limits set forth in this Article may be extended by mutual written agreement of the parties involved. If any grievance is not processed or resolved in accordance with the prescribed time limits within any step, unless an extension of time has been mutually agreed upon in writing, either the player,

190

the NFLPA, the Club or the Management Council, as the case may be, after notifying the other party of its intent in writing, may proceed to the next step.

*Section 10.* **Representation:** In any hearing provided for in this Article, a player may be accompanied by counsel of his choice and/or a representative of the NFLPA. In any such hearing, a Club representative may be accompanied by counsel of his choice and/or a representative of the Management Council.

*Section 11.* **Costs:** Subject to Section 7, all costs of arbitration, including the fees and expenses of the arbitrator and the transcript costs, will be borne equally between the parties. Notwithstanding the above, if the hearing occurs in the Club city and if the arbitrator finds liability on the part of the Club, the arbitrator shall award the player reasonable expenses incurred in traveling to and from his residence to the Club city, lodging, and meal expenses in accordance with Article 34.

*Section 12.* **Payment:** If an award is made by the arbitrator, payment will be made within thirty (30) days of the receipt of the award to the NFL or Club, to the player, or jointly to the player and the NFLPA provided the player has given written authorization for such joint payment. The time limit for payment may be extended by mutual consent of the parties or by a finding of good cause for the extension by the arbitrator. Where payment is unduly delayed beyond thirty (30) days, double Interest will be assessed from the date of the decision. The arbitrator shall retain jurisdiction of the case for the purpose of awarding post-hearing interest pursuant to this Section.

*Section 13.* **Grievance Settlement Committee:** A grievance settlement committee consisting of representatives of the NFLPA and representatives of the Management Council shall meet annually between the end of the regular season and the annual arbitration scheduling conference. The committee shall engage in good faith efforts to settle or bifurcate any pending grievances. No evidence will be taken at such meetings, except parties involved in the grievance may be contacted to obtain information about their dispute. If the committee resolves any grievance by mutual agreement of its members, such resolution will be made in writing and will constitute full, final and complete disposition of the grievance and will be binding upon the player(s) and the Club(s) involved and the parties to this Agreement.

*Section 14.* **Standard Grievance Correspondence:**
    (a)    Standard Grievance Correspondence is defined as and includes the following documents: Injury and Non-Injury Grievance filings; answers; appeals; arbitration selection letters; hearing setup letters; discovery letters and documents; correspondence regarding neutral physician examination(s), including requests by the neutral physician for tests, films or other documents; hearing, deposition, or other general scheduling letters; withdrawal letters; pre- and post-hearing briefs; and settlement and release agreements.

(b)      Standard Grievance Correspondence may be sent via .pdf e-mail; all parties shall use their best efforts to send Standard Grievance Correspondence via e-mail.

(c)      The NFL and NFLPA will provide each other with a list of designated e-mail addresses for the receipt of Standard Grievance Correspondence. The subject line of any Standard Grievance Correspondence sent via e-mail shall include the full name of the player(s),  the name of the Club(s) involved  and the date of filing.

(d)      The parties shall agree to additional procedures to govern the electronic transmission of Standard Grievance Correspondence, as may be warranted.

## ARTICLE 44
## INJURY GRIEVANCE

*Section 1.* **Definition:** An "Injury Grievance" is a claim or complaint that, at the time a player's NFL Player Contract or Practice Squad Player Contract was terminated by a Club, the player was physically unable to perform the services required of him by that contract because of an injury incurred in the performance of his services under that contract. All time limitations in this Article may be extended by mutual agreement of the parties.

*Section 2.* **Filing:** Any player and/or the NFLPA must present an Injury Grievance in writing to a Club, with a copy to the Management Council, within twenty-five (25) days from the date it became known or should have become known to the player that his contract had been terminated. The grievance will set forth the approximate date of the alleged injury and its general nature. If a grievance is filed by a player without the involvement of the NFLPA, the Management Council will promptly send copies of the grievance and the answer to the NFLPA.

*Section 3.* **Answer:**

(a)     The Club to which an Injury Grievance has been presented will answer in writing within ten (10) days. If the answer contains a denial of the claim, the general grounds for such denial will be set forth. The answer may raise any special defense, including but not limited to the following:

(1)     That the player did not pass the physical examination administered by the Club physician at the beginning of the preseason training camp for the year in question. This defense will not be available if: (i) the Player was injured during offseason workouts at the club facility under the direction of a club official prior to not passing the physical examination or (ii) the player participated in any team drills following his physical examination or in any preseason or regular season game; provided, however, that the Club physician may require the player to undergo certain exercises or activities, not team drills, to determine whether the player will pass the physical examination;

(2)     That the player failed to make full and complete disclosure of his known physical or mental condition when questioned during a physical examination by the Club;

(3)     That the player's injury occurred prior to the physical examination and the player knowingly executed a waiver or release prior to the physical examination or his commencement of practice for the season in question which specifically pertained to such prior injury;

(4)     That the player's injury arose solely from a non-football-related cause subsequent to the physical examination;

(5)     That subsequent to the physical examination the player suffered no new football-related injury;

(6)     That subsequent to the physical examination the player suffered no football-related aggravation of a prior injury reducing his physical capacity below the level

193

existing at the time of his physical examination as contemporaneously recorded by the Club physician.

(b)     The Club or the Management Council must advise the grievant and the NFLPA in writing no later than seven (7) days before the hearing of any special defense to be raised at the hearing. Failure to provide such notice will preclude the Club and Management Council from arguing that defense. However, where the Club and Management Council learn of facts supporting a special defense fewer than seven days prior to the hearing, during the hearing or in a post-hearing deposition, the Club and the Management Council must present notice of that special defense to the arbitrator and opposing party within seven (7) days of when the facts supporting that defense became known or reasonably should have become known to the Club and/or Management Council. An assertion at the hearing, or subsequent to the hearing, of a newly-discovered special defense will enable either party to present additional testimony, including the opportunity to recall witnesses or call new witnesses.

*Section 4.* **Neutral Physician:**

(a)     The player must present himself for examination by a neutral physician in the Club city or the Club city closest to the player's residence within twenty (20) days from the date of the filing of the grievance. This time period may be extended by mutual consent if the neutral physician is not available. Neither Club nor player may submit any medical records to the neutral physician, nor may the Club physician or player's physician communicate with the neutral physician. The neutral physician will not become the treating physician nor will the neutral physician examination involve more than one office visit without the prior approval of both the NFLPA and Management Council. The neutral physician may not review any objective medical tests unless all parties mutually agree to provide such results. The neutral physician may not perform any diagnostic tests unless all parties consent. The neutral physician is required to submit to the parties a detailed medical report of his examination.

(b)     In cases in which the player alleges that he suffered a closed head injury or concussion with resulting cognitive deficit, somatic symptoms and/or other concussion symptoms, the player must present himself for cognitive functioning testing and/or other appropriate testing and examination by a neutral neuropsychologist in either the city nearest the player's residence or the Club city. Absent medical limitations, the unavailability of the neuropsychologist or the unavailability of medical records, such testing and examination must occur within thirty (30) days from the date of the filing of the grievance. The neutral neuropsychologist will be provided with all medical records of closed head trauma and/or concussions including baseline testing, within the possession of Club and player. All other requirements and limitations set forth in this Article regarding the neutral physician process shall apply to such testing and examination except that if a neutral neuropsychologist's examination spans multiple days, it will be considered one office visit. The neutral neuropsychologist must prepare and submit a detailed report regarding his examination and the player's cognitive functioning and other symptoms, if any, of concussion or closed head injury affecting the player's ability to return to play at the date of the examination. If the neutral neuropsychologist in his sole discretion determines that the player should be examined by another physician of appropriate

194

specialization in order to complete his neutral physician report, the neuropsychologist shall have the authority to refer such player for such additional examination. In such circumstances, the report of the neutral neuropsychologist shall be designated as the neutral physician report and may incorporate any findings or opinion of the referral doctor.

(c)     In order to facilitate settlement of grievances, the parties periodically will consult with neutral physicians by telephone conference call to obtain preliminary opinions as to the length of time, if any, after their examinations before players would be physically able to perform contract services. The NFLPA will use its best efforts to make the neutral physicians in each Club city equally available to the players who file Injury Grievances.

(d)     The arbitrator will consider the neutral physician's findings conclusive with regard to the physical condition of the player and the extent of an injury at the time of his examination by the neutral physician. The arbitrator will decide the dispute in light of this finding and such other issues or defenses which may have been properly submitted to him. In cases in which the player is alleging that he suffered a closed head injury or concussion with resulting cognitive deficit, somatic symptoms and/or other concussion symptoms the report of the neutral neuropsychologist shall be considered conclusive with regard to the player's cognitive functioning and other objective findings as well as the extent of the injury at the time of the examination.

*Section 5.* **Neutral Physician List:**
    The NFLPA and the Management Council will maintain a jointly-approved list of neutral physicians, including at least two orthopedic physicians and two neuropsychologists in each city in which a Club is located. This list will be subject to review and modification between February 1 and April 15 of each year, at which time either party may eliminate any two neutral physicians from the list by written notice to the other party. When vacancies occur, the NFLPA and the Management Council will each submit a list of three (3) replacements to the other party within thirty (30) days for each NFL city where a vacancy exists. If the parties are unable to agree on a replacement, within ten (10) days they will select a neutral for each city by alternately striking names. The party to strike a name first will be determined by a flip of a coin. If either party fails to cooperate in the striking process the other party may select one of the nominees on its list, and the other party will be bound by such selection. The next vacancy occurring will be filled in similar fashion with the party who initially struck first then striking second. The parties will alternate striking first for future vacancies occurring thereafter during the term of this Agreement.

*Section 6.* **Appeal:** An Injury Grievance may be appealed to an arbitrator by filing of written notice of appeal with the Chairperson of the arbitration panel at least seven (7) days prior to the Settlement Committee meeting, but no later than the Injury Grievance scheduling meeting.

*Section 7.* **Arbitration Panel:** There will be a panel of five (5) arbitrators, whose appointment must be accepted in writing by the NFLPA and the Management Council.

195

The parties shall designate the Chairperson of the panel. In the event of a vacancy in the position of the Chairperson of the panel, the senior Injury Grievance Arbitrator will succeed to the position of Chairperson of the panel, and the resultant vacancy on the panel will be filled according to the procedures of this Section. Either party to this Agreement may discharge a member of the arbitration panel by serving written notice upon the arbitrator and the other party to this Agreement from July 10 through July 20 of each year, but at no time shall such discharges result in no arbitrators remaining on the panel. If either party discharges an arbitrator, the other party shall have two (2) business days to discharge any other arbitrator. If an arbitrator has been discharged he or she shall retain jurisdiction for any case in which the hearing has commenced. Any vacancies occurring on the arbitration panel will be filled as follows: If the parties are unable to agree to a new arbitrator within thirty (30) days of the occurrence of the vacancy, the Chairperson of the panel shall submit a list of ten (10) qualified and experienced arbitrators to the NFLPA and the Management Council. Within fourteen (14) days of the receipt of the list, the NFLPA and the Management Council shall select one arbitrator from the list by alternately striking names until only one remains, with a coin flip determining the first strike. The next vacancy occurring will be filled in similar fashion, with the party who initially struck first then striking second. The parties will alternate striking first for future vacancies occurring thereafter during the term of this Agreement. If either party fails to cooperate in the striking process, the other party may select one of the nominees on the list and the other party will be bound by such selection.

*Section 8.* **Hearing:**

     (a)     Each arbitrator shall designate a minimum of twelve hearing dates per year, exclusive of the period July 1 through September 10, for use by the parties to this Agreement. Upon being appointed, each arbitrator will, after consultation with the Chairperson, provide to the NFLPA and the Management Council specified hearing dates for each of the ensuing six months, which process will be repeated on a semiannual basis thereafter. The parties will notify each arbitrator thirty (30) days in advance of which dates the following month are going to be used by the parties. The designated arbitrator will set the hearing on his or her next reserved date in the Club city, unless the parties agree otherwise. If a grievance is set for hearing and the hearing date is then postponed by a party within thirty (30) days of the hearing, the postponement fee of the arbitrator will be borne by the postponing party, unless the arbitrator determines that the postponement was for good cause. Should good cause be found, the parties will bear any postponement costs equally. If the arbitrator in question cannot reschedule the hearing within thirty (30) days of the postponed date, the case may be reassigned by the Chairperson to another panel member who has a hearing date available within the thirty (30) day period. At the hearing, the parties to the grievance and the NFLPA and Management Council will have the right to present, by testimony or otherwise, any evidence relevant to the grievance. The NFLPA and the Management Council have the right to attend all grievance hearings. All hearings shall be transcribed.

     (b)     If a witness is unable to attend the hearing, the party offering the testimony shall inform the other party of the identity and unavailability of the witness to attend the hearing. At the hearing or within fourteen (14) days thereafter, the party offer-

ing the testimony of the unavailable witness must offer the other party two possible dates within the next forty-five (45) days to take the witness' testimony. The other party shall have the opportunity to choose the date. The record should be closed sixty (60) days after the hearing date unless mutually extended notwithstanding any party's failure to present post-hearing testimony within the above-mentioned time period. If a witness is unavailable to come to the hearing, the witness' testimony may be taken by telephone conference call if the parties agree. In cases where the amount claimed is less than $25,000, the parties may agree to hold the hearing by telephone conference call.

(c)(i)    Any party may seek bifurcation of a grievance to assert a claim of untimeliness. Bifurcation motions shall be presented in writing to the other party and the arbitrator in the moving party's answer or at any time no later than seven (7) days prior to the scheduled hearing on the merits of the grievance. If an arbitrator has not yet been assigned to hear the grievance then the moving party shall file the motion with the Chairperson of the Arbitration panel, who will decide the motion or assign it to a member of the Injury Grievance Arbitration panel. A party's decision to pursue a bifurcated hearing may not delay the processing of a hearing scheduled on the merits of the grievance. For any motions made at least thirty (30) days before a hearing on the merits of the grievance, the parties will use their best efforts to schedule the bifurcated hearing at least ten (10) days before the scheduled hearing on the merits of the grievance. In any case where a timely motion for bifurcation is made, but a bifurcated hearing is not held, the arbitrator shall decide the issue of timeliness during the hearing on the merits.

(ii)    If a defense of untimeliness is not raised at least seven (7) days before the scheduled hearing on the merits of the grievance, the parties will be precluded from arguing that defense. However, where a party learns of facts supporting the defense less than seven days prior to the hearing, during the hearing, or in a post-hearing deposition, the party must present the defense to the opposing party and arbitrator within seven (7) days of when the facts supporting the defense became known or reasonably should have been known to the party.

(iii)    If a grievance is ultimately dismissed based on a finding of untimeliness, the arbitrator shall issue a written decision limited to that issue, and such ruling shall be final and binding.

(d)    Post-hearing briefs must be submitted to the arbitrator no later than sixty-five (65) days after receipt of the last transcript. The arbitrator will issue a written decision within thirty (30) days of the submission of briefs but shall not consider briefs filed by either party more than sixty-five (65) days after receipt of the last transcript, unless the parties agree otherwise. The arbitrator's decision will be final and binding; provided, however, that no arbitrator will have the authority to add to, subtract from, or alter in any way any provision of this Agreement or any other applicable document. In the event the arbitrator finds liability on the part of the Club, he or she shall award Interest beginning one year from the date of the last regular season game of the season of injury.

*Section 9.* **Expenses:** Expenses charged by a neutral physician will be shared equally by the Club and the player. All travel expenses incurred by the player in connection with his examination by a neutral physician of his choice will be borne by the player. The parties

will share equally in the expenses of any arbitration engaged in pursuant to this Article; provided, however, the respective parties will bear the expenses of attendance of their own witnesses. Notwithstanding the above, if the hearing is held in the Club city and if the arbitrator finds liability on the part of the Club, the arbitrator shall award the player reasonable expenses incurred in traveling to and from his residence to the Club city, lodging and meal expenses in accordance with Article 34. The arbitrator may award the player payments for medical expenses incurred or which will be incurred in connection with that injury.

*Section 10.* **Pension Credit:** Any player who receives payment for three or more regular season games (or such other minimum number of regular season games required by the Bert Bell/Pete Rozelle NFL Retirement Plan for a year of Credited Service) during any year as a result of filing an Injury Grievance or settlement of a potential Injury Grievance will be credited with one year of Credited Service under the Bert Bell/Pete Rozelle NFL Player Retirement Plan for the year in which he was injured.

*Section 11.* **Payment:**
    (a)    If an award is made by the arbitrator, payment will be made within thirty (30) days of the receipt of the award to the player or jointly to the player and the NFLPA, provided the player has given written authorization for such joint payment. The time limit for payment may be extended by mutual consent of the parties or by a finding of good cause for the extension by the arbitrator. Where payment is unduly delayed beyond thirty (30) days, double Interest will be assessed against the Club from the date of the decision. The arbitrator shall retain jurisdiction of the case for the purpose of awarding post-hearing interest pursuant to this Section.
    (b)    Any player who does not qualify for group health insurance coverage in a given Plan Year under the NFL Player Insurance Plan as a result of being terminated while physically unable to perform and who receives payment for at least one (1) regular or post-season game via an injury grievance award or injury settlement for that Plan Year shall receive a payment in an amount determined by multiplying the number of months in that Plan Year for which he would have been eligible for coverage had he qualified for group health insurance coverage in that Plan Year by the premium the Player Insurance Plan charged for COBRA coverage during that period.

*Section 12.* **Presumption of Fitness:** If the player passes the physical examination of the Club prior to the preseason training camp for the year in question, having made full and complete disclosure of his known physical and mental condition when questioned by the Club physician during the physical examination, it will be presumed that such player was physically fit to play football on the date of such examination.

*Section 13.* **Playoff Money:** If the arbitrator finds that an injured player remained physically unable to perform the services required of him by his contract during the NFL postseason playoffs and if the Club in question participated in the playoffs that season, the player will be entitled to and the arbitrator shall award, such playoff money as though

ing the testimony of the unavailable witness must offer the other party two possible dates within the next forty-five (45) days to take the witness' testimony. The other party shall have the opportunity to choose the date. The record should be closed sixty (60) days after the hearing date unless mutually extended notwithstanding any party's failure to present post-hearing testimony within the above-mentioned time period. If a witness is unavailable to come to the hearing, the witness' testimony may be taken by telephone conference call if the parties agree. In cases where the amount claimed is less than $25,000, the parties may agree to hold the hearing by telephone conference call.

    (c)(i)    Any party may seek bifurcation of a grievance to assert a claim of untimeliness. Bifurcation motions shall be presented in writing to the other party and the arbitrator in the moving party's answer or at any time no later than seven (7) days prior to the scheduled hearing on the merits of the grievance. If an arbitrator has not yet been assigned to hear the grievance then the moving party shall file the motion with the Chairperson of the Arbitration panel, who will decide the motion or assign it to a member of the Injury Grievance Arbitration panel. A party's decision to pursue a bifurcated hearing may not delay the processing of a hearing scheduled on the merits of the grievance. For any motions made at least thirty (30) days before a hearing on the merits of the grievance, the parties will use their best efforts to schedule the bifurcated hearing at least ten (10) days before the scheduled hearing on the merits of the grievance. In any case where a timely motion for bifurcation is made, but a bifurcated hearing is not held, the arbitrator shall decide the issue of timeliness during the hearing on the merits.

    (ii)    If a defense of untimeliness is not raised at least seven (7) days before the scheduled hearing on the merits of the grievance, the parties will be precluded from arguing that defense. However, where a party learns of facts supporting the defense less than seven days prior to the hearing, during the hearing, or in a post-hearing deposition, the party must present the defense to the opposing party and arbitrator within seven (7) days of when the facts supporting the defense became known or reasonably should have been known to the party.

    (iii)    If a grievance is ultimately dismissed based on a finding of untimeliness, the arbitrator shall issue a written decision limited to that issue, and such ruling shall be final and binding.

    (d)    Post-hearing briefs must be submitted to the arbitrator no later than sixty-five (65) days after receipt of the last transcript. The arbitrator will issue a written decision within thirty (30) days of the submission of briefs but shall not consider briefs filed by either party more than sixty-five (65) days after receipt of the last transcript, unless the parties agree otherwise. The arbitrator's decision will be final and binding; provided, however, that no arbitrator will have the authority to add to, subtract from, or alter in any way any provision of this Agreement or any other applicable document. In the event the arbitrator finds liability on the part of the Club, he or she shall award Interest beginning one year from the date of the last regular season game of the season of injury.

*Section 9.* **Expenses:** Expenses charged by a neutral physician will be shared equally by the Club and the player. All travel expenses incurred by the player in connection with his examination by a neutral physician of his choice will be borne by the player. The parties

will share equally in the expenses of any arbitration engaged in pursuant to this Article; provided, however, the respective parties will bear the expenses of attendance of their own witnesses. Notwithstanding the above, if the hearing is held in the Club city and if the arbitrator finds liability on the part of the Club, the arbitrator shall award the player reasonable expenses incurred in traveling to and from his residence to the Club city, lodging and meal expenses in accordance with Article 34. The arbitrator may award the player payments for medical expenses incurred or which will be incurred in connection with that injury.

**Section 10. Pension Credit:** Any player who receives payment for three or more regular season games (or such other minimum number of regular season games required by the Bert Bell/Pete Rozelle NFL Retirement Plan for a year of Credited Service) during any year as a result of filing an Injury Grievance or settlement of a potential Injury Grievance will be credited with one year of Credited Service under the Bert Bell/Pete Rozelle NFL Player Retirement Plan for the year in which he was injured.

**Section 11. Payment:**
(a)     If an award is made by the arbitrator, payment will be made within thirty (30) days of the receipt of the award to the player or jointly to the player and the NFLPA, provided the player has given written authorization for such joint payment. The time limit for payment may be extended by mutual consent of the parties or by a finding of good cause for the extension by the arbitrator. Where payment is unduly delayed beyond thirty (30) days, double Interest will be assessed against the Club from the date of the decision. The arbitrator shall retain jurisdiction of the case for the purpose of awarding post-hearing interest pursuant to this Section.
(b)     Any player who does not qualify for group health insurance coverage in a given Plan Year under the NFL Player Insurance Plan as a result of being terminated while physically unable to perform and who receives payment for at least one (1) regular or post-season game via an injury grievance award or injury settlement for that Plan Year shall receive a payment in an amount determined by multiplying the number of months in that Plan Year for which he would have been eligible for coverage had he qualified for group health insurance coverage in that Plan Year by the premium the Player Insurance Plan charged for COBRA coverage during that period.

**Section 12. Presumption of Fitness:** If the player passes the physical examination of the Club prior to the preseason training camp for the year in question, having made full and complete disclosure of his known physical and mental condition when questioned by the Club physician during the physical examination, it will be presumed that such player was physically fit to play football on the date of such examination.

**Section 13. Playoff Money:** If the arbitrator finds that an injured player remained physically unable to perform the services required of him by his contract during the NFL postseason playoffs and if the Club in question participated in the playoffs that season, the player will be entitled to and the arbitrator shall award, such playoff money as though

he had been on the Injured Reserve list at the time of the playoff games in question, should he otherwise qualify for such pay pursuant to Article 37.

**Section 14. Information Exchange:** The NFLPA and the Management Council must confer on a regular basis concerning the status of pending Injury Grievances and the attribution of any Injury Grievance exposure to Team Salary under Article 13. Any communications pursuant to this Section are inadmissible in any grievance hearing.

**Section 15. Discovery:** No later than fourteen (14) days prior to the hearing, each party will submit to the other copies of all documents, reports and records relevant to the Injury Grievance hearing. Failure to submit such documents, reports and records no later than fourteen (14) days prior to the hearing will preclude the non-complying party from submitting such documents, reports and records into evidence at the hearing, but the other party will have the opportunity to examine such documents, reports and records at the hearing and to introduce those it so desires into evidence, except that relevant documents submitted to the opposing party less than ten (10) days before the hearing shall be admissible provided the offering party and the custodian(s) of the documents made good faith effort to obtain (or discover the existence of) such documents or that the documents' relevance was not discovered until the hearing.

**Section 16. Grievance Settlement Committee:** A grievance settlement committee consisting of representatives of the NFLPA and representatives of the NFL shall meet annually between the end of the regular season and the annual arbitration scheduling conference. The committee shall engage in good faith efforts to settle or bifurcate any pending Injury Grievances. No evidence will be taken at such meetings, except parties involved in the grievance may be contacted to obtain information about their dispute. If the committee resolves any grievance by mutual agreement of its members, such resolution will be made in writing and will constitute full, final and complete disposition of the grievance and will be binding upon the player(s) and the Club(s) involved and the parties to this Agreement.

**Section 17. Settlement Agreements:** Grievances settled prior to the issuance of an arbitration award will be memorialized in the standard Settlement and Release Agreement, which may include a notification of grievant's right to file a Workers' Compensation Claim, if applicable, as set forth in Appendix L. This form may be amended and/or supplemented if the parties agree and/or if required by state law.

**Section 18. Standard Grievance Correspondence:** The provisions of Article 43, Section 14 shall apply to Injury Grievances.

199