UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br>Plaintiffs' Amended Master Administrative Long-Form Complaint and the Applicable Associated Short-Form Complaints | |

**REPLY MEMORANDUM OF LAW OF DEFENDANTS NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC IN FURTHER SUPPORT OF MOTION TO DISMISS THE AMENDED MASTER ADMINISTRATIVE LONG-FORM COMPLAINT ON PREEMPTION GROUNDS**

**Table of Contents**

Table of Authorities ................................................................................................. ii

Preliminary Statement ............................................................................................. 1

Argument ................................................................................................................. 5

I. SECTION 301 OF THE LMRA PREEMPTS PLAINTIFFS' CLAIMS AGAINST
   THE NFL ............................................................................................................. 5

    A.  Plaintiffs Rely on an Inapposite Standard for Section 301 Preemption ...................... 5

    B.  Resolution of Plaintiffs' Claims Against the NFL Substantially Depends Upon
   an Interpretation of the Terms of the CBAs ............................................................ 8

        1.      Resolution of Plaintiffs' Negligence-Based Claims Requires
   Interpretation of the Terms of the CBAs ........................................................... 8

           (a)  The NFL's Duty, If Any, Cannot Be Assessed Absent an Interpretation
   of the CBAs ........................................................................................................ 9

           (b)  The Case Law Compels Preemption of Plaintiffs' Negligence-Based
   Claims ............................................................................................................. 15

        2.      Plaintiffs' Claims for Fraud Also Are Preempted ........................................... 19

    C.  Plaintiffs' Three Subsets of Allegations Are Not Exempted from the
   Preemptive Force of the LMRA ............................................................................. 22

    D.  Plaintiffs' Claims Against the NFL Arise Under the CBAs ...................................... 25

II. PLAINTIFFS' PREEMPTED CLAIMS SHOULD BE DISMISSED ................................... 27

III. SECTION 301 PREEMPTS PLAINTIFFS' CLAIMS AGAINST NFLP ........................... 29

Conclusion ............................................................................................................. 30

## Table of Authorities

**Page(s)**

**CASES**

*Aetna Health Inc.* v. *Davila*,
  542 U.S. 200 (2004).................................................................................................26

*Allis-Chalmers Corp.* v. *Lueck*,
  471 U.S. 202 (1985)................................................................................6, 11, 22, 27

*Antol* v. *Esposto*,
  100 F.3d 1111 (3d Cir. 1997)................................................................................6, 8

*Atwater* v. *Nat'l Football League Players Ass'n*,
  626 F.3d 1170 (11th Cir. 2010) .........................................................12, 21, 24, 25

*Augustin* v. *SecTek, Inc.*,
  807 F. Supp. 2d 519 (E.D. Va. 2011) ....................................................................20

*Banque Arabe et Internationale D'Investissement* v. *Maryland Nat'l Bank*,
  57 F.3d 146 (2d Cir. 1995).....................................................................................19

*Barrett* v. *Freifeld*,
  64 A.D.3d 736 (N.Y. App. Div. 2009) ...................................................................20

*Beidleman* v. *Stroh Brewery Co.*,
  182 F.3d 225 (3d Cir. 1999).......................................................................17, 22, 28

*Blessing* v. *United States*,
  447 F. Supp. 1160 (E.D. Pa. 1978) ........................................................................14

*Blue Nile, Inc.* v. *Ice.com, Inc.*,
  478 F. Supp. 2d 1240 (W.D. Wash. 2007)..............................................................29

*Brown* v. *Nat'l Football League*,
  219 F. Supp. 2d 372 (S.D.N.Y. 2002 .....................................................................11

*Caterpillar, Inc.* v. *Williams*,
  482 U.S. 386 (1987)..................................................................................................5

*Cavallaro* v. *UMass Memorial Healthcare, Inc.*,
  678 F.3d 1 (1st Cir. 2012).......................................................................................20

*Clarrett* v. *Nat'l Football League*,
  369 F.3d 124 (2d Cir. 2004)....................................................................................11

*Coronel* v. *U.S. Nat. Resources, Inc.*,
  No. SA-04-VA-0804, 2005 WL 831843 (W.D. Tex. 2005) ...................................15

*Duerson* v. *Nat'l Football League*,
   No. 12 C 2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012) ........................................ passim

*Espinoza* v. *Cargill Meat Solutions Corp.*,
   622 F.3d 432 (5th Cir. 2010) .................................................................................14

*Exal Corp.* v. *Roeslein & Assocs., Inc.*,
   No. 4:12-CV-01830, 2012 WL 4754748 (N.D. Ohio Oct. 2, 2012)......................................29

*Fafara* v. *Am. States Life Ins. Co.*,
   976 F. Supp. 1368 (D. Or. 1997) ..........................................................................19

*Gelow* v. *Central Pac. Mortg. Corp.*,
   No. Civ. S-07-1988, 2008 WL 436935 (E.D. Cal. Feb. 14, 2008) ........................................29

*Givens* v. *Tenn. Football, Inc.*,
   684 F. Supp. 2d 985 (M.D. Tenn. 2010)....................................................................27

*Guerrero* v. *Hovensa LLC*,
   259 Fed. App'x 453 (3d Cir. Dec. 21, 2007) .........................................................22

*Henderson* v. *Merck & Co.*,
   998 F. Supp. 532 (E.D. Pa. 1998) ...........................................................................6

*Hendy* v. *Losse*,
   No. 89-55430, 1991 WL 17230 (9th Cir. Feb. 12, 1991) ......................................................18

*Holbrook* v. *Woodham*,
   No. 05-304, 2008 WL 4425606 (W.D. Pa. Sept. 30, 2008)....................................................14

*Int'l Bhd. of Elec. Workers* v. *Hechler*,
   481 U.S. 851 (1987).........................................................................................14, 28

*Johnson* v. *NBC Universal, Inc.*,
   No. 08-cv-03780, 2009 WL 151673 (D.N.J. Jan. 22, 2009) ...................................................11

*Jurevicius* v. *Cleveland Browns Football Co.*,
   No. 09-cv-1803, 2010 WL 8461220 (N.D. Ohio Mar. 31, 2010)...........................................18

*Karambelas* v. *Hughes Aircraft Co.*,
   992 F.2d 971 (9th Cir. 1993) .................................................................................19

*Kline* v. *Security Guards, Inc.*,
   386 F.3d 246 (3d Cir. 2004)............................................................................ passim

*Levy* v. *Verizon Info. Servs.*,
   498 F. SUpp. 2d 586 (E.D.N.Y. 2007) .................................................................11, 28

*Lingle* v. *Norge Div. of Magic Chef, Inc.*,
    486 U.S. 399 (1988)..................................................................................27, 28

*Marshall* v. *Port Authority of Allegheny County*,
    568 A.2d 931 (Pa. 1990) ......................................................................14

*Maxwell* v. *Nat'l Football League*,
    No. 11-CV-08394, Dec. 8, 2011, Order (C.D. Cal.) ....................................... passim

*McCormick* v. *AT&T Techs., Inc.*,
    934 F.2d 531 (4th Cir. 1991) ................................................................8

*Mid-South Grizzlies* v. *Nat'l Football League*,
    550 F. Supp. 558 (E.D. Pa. 1982) .........................................................9

*Negron* v. *Oxford Airport Tech. Servs.*,
    No. 08-4326, 2009 WL 50158 (E.D. Pa. Jan. 7, 2009)..........................................26

*Pagano* v. *Bell Atlantic-New Jersey, Inc.*,
    988 F. Supp. 841 (D.N.J. 1997) ..........................................................28

*Peek* v. *Phila. Coca-Cola Bottling Co.*,
    No. 97-3372, 1997 WL 399379 (E.D. Pa. July 16, 1997) .........................................15, 17, 28

*Platt* v. *Jack Cooper Transp. Co.*,
    No. 88-0679-CV-W-9, 1990 WL 212106 (W.D. Mo. 1990).................................19

*Sherwin* v. *Indianapolis Colts, Inc.*,
    752 F. Supp. 1172 (N.D.N.Y. 1990)......................................................20, 26, 27

*Sluder* v. *United Mine Workers of Am., Int'l Union*,
    892 F.2d 549 (7th Cir. 1989) ..............................................................15

*Stringer* v. *Nat'l Football League*,
    474 F. Supp. 2d 894 (S.D. Ohio 2007) .................................................3, 11, 12, 17

*Trans Penn Wax Corp.* v. *McCandless*,
    50 F.3d 217 (3d Cir. 1995)..................................................................21

*In re StarLink Corn Prods. Liab. Litig.*,
    212 F. Supp. 2d 828 (N.D. Ill. 2002) .....................................................19

*In re U.S. Healthcare, Inc.*,
    193 F.3d 151 (3d Cir. 1999)................................................................17

*United Steelworkers of Am.* v. *Rawson*,
    495 U.S. 362 (1990)........................................................................26

iv

*Voilas* v. *General Motors Corp.*,
   170 F.3d 367 (3d Cir. 1999)............................................................................................21

*Williams* v. *Nat'l Football League*,
   582 F.3d 863 (8th Cir. 2009) ...........................................................................18, 21, 22, 23

*Wilson* v. *Donegal Mut. Ins. Co.*,
   598 A.2d 1310 (Pa. Super. Ct. 1991).............................................................................19

**STATUTES**

Labor Management Relations Act, § 301 ............................................................ passim

Defendants National Football League ("NFL") and NFL Properties LLC ("NFLP," and together with the NFL, the "NFL Defendants") respectfully submit this reply memorandum in support of their motion to dismiss, on preemption grounds, the Amended Master Administrative Long-Form Complaint (the "Complaint," "Master Administrative Complaint," or "MAC").

## Preliminary Statement

Section 301 of the Labor Management Relations Act (the "LMRA") requires that this Court dismiss Plaintiffs' claims against the NFL.  Plaintiffs' arguments to the contrary are based on a misunderstanding of labor preemption law, binding precedents, and the Collective Bargaining Agreements (the "CBAs") to which they agreed.  Try as they might, Plaintiffs simply cannot wish away the reality that they are not ordinary plaintiffs bringing claims against unrelated parties.  Nor are they even ordinary employees suing their employer.  The claims here are fundamentally about workplace safety in a unionized setting in which workplace safety issues loom large and have long been the subject of bargaining.  In that context, Plaintiffs' remedies lie in the uniform federal labor law and its unique procedural scheme, not in the disparate common law of fifty different States.

This case underscores the critical nature of such uniformity.  In its absence, the NFL would owe different duties to a current or former Seahawk than it owes to a current or former Dolphin, even when the two players are governed by the same labor agreement.  Such variation would be problematic in any unionized setting—which is, in large part, why § 301 exists—but it would be wholly impractical here.

As described in detail in the NFL's moving brief, since 1968, CBAs and the NFL Constitution and Bylaws (the "Constitution") have set forth the terms and conditions of

employment of NFL players and the rules that govern professional football.[1]  The CBAs, for example, provide that the NFL's Member Clubs and their medical staffs have the responsibility for treating player injuries, including determining injury recovery times, deciding when players may return to play, and advising the players of the risks of continued performance.  Such provisions reflect the complicated reality of player safety in professional sports leagues where both players and Clubs have incentives—sometimes parallel, sometimes conflicting—for healthy players to play and injured players to heal.  These issues are thus natural subjects of bargaining as reflected in the CBAs.  The CBAs also set forth procedures governing the NFL's promulgation and review of rules and regulations relating to player safety and the basic rules of the game, which also obviously impact player safety.

        In light of these provisions, to determine whether the NFL breached a purported duty "to exercise reasonable care in safeguarding Players from neurological injuries" (Pls. Br. at 6; *see also* MAC ¶¶ 6, 9, 291), the Court would need to interpret the CBA provisions setting forth the player safety responsibilities of the Member Clubs and their physicians.  As numerous courts have already held, any duty owed by the NFL (an element of all of Plaintiffs' negligence-based and fraudulent concealment claims), could not be defined or considered without also taking into account the "physician provisions" of the CBAs.  That is because "determining the degree of care owed by the NFL and how it relates to the NFL's alleged failure to establish guidelines or policies to protect the mental health and safety of its players" cannot be ascertained without a consideration of the nature and scope of the duties that these provisions impose. *Maxwell* v. *Nat'l Football League*, No. 11-CV-08394, Dec. 8, 2011, Order at 1-2 (C.D. Cal.) (ECF Dkt. No. 58); *see also Duerson* v. *Nat'l Football League*, No. 12 C 2513, 2012 WL

---

[1]   For ease of reference, the NFL refers generally to the "CBAs" throughout this memorandum, but cites, where applicable, to both the CBAs and the Constitutions.

1658353, at *4 (N.D. Ill. May 11, 2012); *Stringer* v. *Nat'l Football League*, 474 F. Supp. 2d 894, 910-11 (S.D. Ohio 2007).

Faced with multiple CBA provisions addressing player health and safety and these on-point precedents, Plaintiffs attempt to narrow the basis for labor preemption to "bona fide interpretive dispute[s]." (Pls. Br. at 13.)  But that effort plainly contravenes long-standing Supreme Court precedent, which provides for preemption of claims that substantially depend on analysis of a CBA *or* are founded on rights created by a CBA.  And even if a "bona fide" interpretive dispute were required, the starkly different views of the relevant CBA provisions advanced by Plaintiffs and the NFL in their filings to date surely constitute such a dispute. Plaintiffs' claims are preempted and their remedy lies in the uniform labor law and agreed-to grievance procedures, not in the disparate laws of fifty States.

Plaintiffs attempt to evade that straightforward conclusion by attempting to isolate the NFL from its Member Clubs and invoking concepts of joint and several liability.  But the possibility of multiple tortfeasors (*i.e.*, that the Clubs and NFL might all owe players duties) is wholly irrelevant to the dispositive questions: whether the NFL owed a duty to Plaintiffs, and if so, whether the scope of that duty depends on an interpretation of the CBAs.  Indeed, the possibility that the Member Clubs might owe a duty to players *under the CBAs* is precisely why any effort to define the NFL's own duty vis-à-vis the Clubs' duties, but independent of the CBAs, would be wholly artificial.  That is why two district courts have already held that Plaintiffs' negligence claims here are preempted.  *See Maxwell*, No. 11-CV-08394, Order at 1-2; *Duerson*, 2012 WL 1658353, at *4.

Plaintiffs' fraud claims fare no better.  Those claims hinge on an alleged duty of the NFL to disclose—but that duty cannot be measured without first considering the CBAs'

health and safety provisions allocating to Club physicians the task of providing injury-related information to players, including information on the risks of continuing to play football.  And while Plaintiffs now seek to recast their claims as implicating affirmative misrepresentations instead of fraudulent concealment, the MAC makes clear that Plaintiffs' claims include allegations of fraudulent concealment, such that the resolution of these claims depends upon an assessment of the duties set forth in the CBAs.  In any event, a court cannot determine whether Plaintiffs justifiably relied on any information provided by the NFL without first interpreting these same provisions.

In implicit recognition of the serious labor preemption obstacle facing most of their claims, Plaintiffs suggest that three subsets may be salvageable: claims involving (1) "the NFL's negligent performance of its own voluntary undertaking"; (2) "the NFL's conduct toward retired Players"; and (3) players who played only when no CBA was in effect.  Plaintiffs' clip-and-save effort fails.  Their "voluntary undertaking" argument simply ignores the centrality of the CBAs in assessing relative duties.  Their effort to carve out retired players ignores the fact that the CBAs place responsibility on the players themselves for seeking medical care during retirement.  And Plaintiffs' argument regarding individuals who played only when no CBA was in effect ignores the fact that such players have long relied on subsequent CBAs, making plain that CBA-imposed duties remain a crucial part of any analysis of the NFL's duties to those players.

In a final attempt to fend off dismissal, Plaintiffs argue that preempted claims need not be dismissed, and that this Court should instead apply federal law to the preempted claims.  That is just one more instance in which Plaintiffs ignore settled principles of preemption.  Labor law preempts not so that federal courts can apply federal common law, but so that no

court—state or federal—may interfere with the distinct, collectively bargained apparatus for resolving labor disputes.  That is where Plaintiffs must direct their claims.

**<u>Argument</u>**

**I.**

**<u>SECTION 301 OF THE LMRA PREEMPTS PLAINTIFFS'</u>**
**<u>CLAIMS AGAINST THE NFL</u>**

Section 301 of the LMRA preempts Plaintiffs' claims for two basic reasons. First, resolution of Plaintiffs' claims substantially depends upon an analysis of numerous CBA provisions addressing player health and safety.  Second, Plaintiffs' claims—seeking redress for the NFL's purported failure to implement rules and regulations to protect Plaintiffs' health and safety—arise under the CBAs because any such duties exist as a result of the CBAs; they are not duties owed to the general public.  Plaintiffs' effort to evade those two obstacles contravenes Supreme Court precedent, Third Circuit law, and the allegations of their own Complaint.

**A.**     **<u>Plaintiffs Rely on an Inapposite Standard for Section 301 Preemption</u>**

At the outset, both the standard for labor preemption and the justification for that standard should not be open to serious dispute.  Although Plaintiffs would like the test to be narrower, the Supreme Court has long held that § 301 preempts all state law claims that (1) "substantially depend[] on analysis of a collective bargaining agreement" or (2) are "founded directly on rights created by collective-bargaining agreements."  *Caterpillar, Inc.* v. *Williams*, 482 U.S. 386, 394 (1987).  The law in the Third Circuit is no different.  *See Kline* v. *Security Guards, Inc.*, 386 F.3d 246, 253 (3d Cir. 2004) (quoting *Caterpillar, Inc.*, 482 U.S. at 394); Defs. Br. at 14 (citing cases).

The reason for federal exclusivity over such disputes is equally clear:  "the need for uniform interpretation of contract terms to aid both the negotiation and the administration of"

5

CBAs. *Antol* v. *Esposto*, 100 F.3d 1111, 1115 (3d Cir. 1997). This uniformity is particularly critical in situations like this where both employees and management operate in multiple jurisdictions subject to a single, nationwide CBA. Accordingly, "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law." *Henderson* v. *Merck & Co.*, 998 F. Supp. 532, 536 (E.D. Pa. 1998) (citing *Allis-Chalmers Corp.* v. *Lueck*, 471 U.S. 202, 211 (1985)). And that uniform federal law is to be applied via grievance procedures to which the parties agreed—"it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance." *Allis-Chalmers*, 471 U.S. at 219-20.

Plaintiffs ignore this controlling precedent and suggest a more stringent preemption standard. Plaintiffs would limit labor preemption to "bona fide interpretative dispute[s]" where the parties have "staked out" conflicting interpretations. (Pls. Br. at 13.) Plaintiffs further assert that, despite Supreme Court precedent setting forth two independent bases for labor preemption, the Third Circuit "does not recognize" the second (*i.e.*, that claims premised on rights "arising under" a CBA are preempted). (Pls. Br. at 34.) In reality, labor preemption is not so narrow, and the Third Circuit has not been so bold as to disregard half the Supreme Court's governing test.

As the NFL's moving brief fully describes, it is a well-accepted principle of labor law that claims that substantially depend on analyzing a labor agreement are preempted. Plaintiffs' cases are not to the contrary. For example, Plaintiffs invoke dicta from *Kline* v. *Security Guards, Inc.*, 386 F.3d 246, 257 (3d Cir. 2004), and fault the NFL for failing to identify a "substantial dispute over the meaning" of a CBA provision. But *Kline* held that claims

stemming from an employer's allegedly unreasonable electronic surveillance were not preempted because defendants there failed to point to a specific CBA provision requiring interpretation. That holding is hardly surprising and hardly assists Plaintiffs.  It will be the rare CBA that addresses a subject as far removed from the terms and conditions of employment as surreptitious electronic surveillance.  Perhaps a CBA involving unionized spies might touch on such a subject, but not the CBA in *Kline.*  Workplace safety, by contrast, is a common subject for CBAs, especially in an industry like professional football where the players face safety issues that are integrally related to the basic conditions of employment, not to mention the basic rules of the game.  Thus, while the CBA in *Kline* "ma[de] no mention of the use of video cameras, microphones, or other surveillance of any kind," 386 F.3d at 256, here, by contrast—as Plaintiffs acknowledge—the CBAs expressly address the duties at issue in this case, namely duties "to warn Players about neurological risks," to establish "return to play" guidelines, and "to advocate rules changes to protect [players] from concussive injury."  (Pls. Br. at 15 & n.12.)

Even if Plaintiffs' heightened standard were accepted, their claims would be preempted:  it is plain that the parties to this case have "staked out" conflicting interpretations of the CBAs, resulting in a "bona fide interpretive dispute."  Plaintiffs—aware that such a dispute would be fatal to their claims—purport to avoid interpreting the CBA and insist that they are relying on the CBAs' "silence" as to the NFL's duties.  But that argument simply reflects one interpretation of the CBA.  As the moving brief makes clear, the NFL has a competing interpretation:  the CBAs, in comprehensively assigning roles and responsibilities for regulating player safety, create a scheme in which the duties of any single actor, including the NFL, can be defined only by assessing the overall allocation of duties.  Moreover, in contractually defining the roles of various actors, the CBA effectively authorized the NFL to rely on the Member Clubs

to handle matters that state tort law might otherwise have assigned to it.  *See McCormick* v. *AT&T Techs., Inc.*, 934 F.2d 531, 536-37 (4th Cir. 1991) (en banc) (finding preemption appropriate because the CBA was relevant to "ascertain[ing] the extent of any duty" the employer owed, even though "management's rights and responsibilities . . . *are not explicitly delineated in the agreement*") (emphasis added).  Plaintiffs, of course, dismiss the relevance of the CBAs' provisions addressing player medical care, health and safety, and rulemaking, but at most this just illustrates the bona fide interpretive dispute that Plaintiffs claim is wanting.

Plaintiffs assert that the Third Circuit "does not recognize" that claims founded directly on rights arising under CBAs are preempted.  That assertion is similarly unfounded. Consistent with binding Supreme Court precedent, the Third Circuit recognizes that "§ 301 'governs claims founded directly on rights created by collective-bargaining agreements, *and also* claims substantially dependent on analysis of a collective bargaining agreement.'"  *Kline*, 386 F.3d at 253 (quoting *Caterpillar*, 482 U.S. at 394) (emphasis added); *Antol*, 100 F.3d at 1117 ("[C]laims based squarely on a collective bargaining agreement *or* requiring analysis of its terms are preempted . . . .") (emphasis added).  This alternative ground for preemption, fully recognized by the Third Circuit and the Supreme Court, provides an independent basis for finding Plaintiffs' claims preempted. *See supra* at 5-6.

**B.    Resolution of Plaintiffs' Claims Against the NFL Substantially Depends Upon an Interpretation of the Terms of the CBAs**

**1.    Resolution of Plaintiffs' Negligence-Based Claims Requires Interpretation of the Terms of the CBAs**

As the NFL's moving brief demonstrated (at pp. 17-25), and as numerous courts have already held, resolution of Plaintiffs' negligence-based claims requires interpretation of the CBAs' numerous medical care provisions.  A court cannot assess the scope of the NFL's duty without first interpreting the scope of the duties imposed on the Clubs and their medical staff by

the CBAs.  (*See* Defs. Br. at 17, 24-25; *cf. Kline*, 386 F.3d at 261 (finding no preemption because "no consultation with the CBA is necessary in order to define the scope of the duties alleged to have been breached").)  Notwithstanding those myriad provisions, Plaintiffs attempt to sever the NFL from its Member Clubs and argue that "[t]he CBAs are silent as to the NFL's duties to safeguard player health" and that it is "no defense that a similar duty rested upon another person" and thus their claims "do not turn in any way on the scope of the Club doctors' separate duty." (Pls. Br. at 13, 16, 19.)  Plaintiffs' arguments miss the mark and only underscore the centrality of the CBAs to the resolution of their claims.

> **(a)      The NFL's Duty, If Any, Cannot Be Assessed Absent an Interpretation of the CBAs**

Plaintiffs do not deny that the CBAs address the duties of the NFL's Member Clubs.  Nor could they—CBAs have addressed player health and return-to-play conditions for decades.  In an attempt to circumvent the fact that any common law tort case against the Member Clubs would indisputably be preempted, Plaintiffs instead sued the NFL.  But Plaintiffs cannot escape preemption by targeting the NFL instead of the NFL's Member Clubs.

In adjudicating Plaintiffs' claims, it is impossible for the Court to assess the relationship between Plaintiffs and the NFL concerning medical care—and thus the scope of the duty, if any, owed by the NFL to Plaintiffs—without interpreting the CBAs to assess the duties of the players and Clubs.  The NFL is an unincorporated association of 32 Member Clubs.  The NFL and the Clubs engage in a joint enterprise to organize and promote professional football in the United States.  "For example, they set rules for the games, schedule contests, provide for joint marketing of national broadcast rights and . . . decide the locations and owners of new franchises."  *Mid-South Grizzlies* v. *Nat'l Football League*, 550 F. Supp. 558, 562 (E.D. Pa. 1982).  The joint effort also requires the scheduling and production of football games, which

entails the employment of professional football players, the establishment of rules for the game, and the provision of a safe workplace for those players. *See id.* Plaintiffs' effort to separate the NFL from its Member Clubs is thus artificial, but it is also unavailing because the NFL's own duties to players cannot be assessed independently of the Clubs' duties to the players, and any consideration of the latter undeniably requires analysis of the CBAs.

As Plaintiffs admit, and as detailed in the NFL's moving brief, the CBAs expressly address duties central to this case—namely, duties "to warn Players about neurological risks," to establish "return to play" guidelines, and "to advocate rules changes to protect [players] from concussive injury." (Pls. Br. at 15 & n.12; *see also* MAC ¶¶ 6, 90, 248, 333.) To be sure, the CBAs focus on the responsibilities of the Clubs and their medical staffs. But that is precisely the arrangement the players bargained for, assigning the NFL and the Member Clubs (and, in some instances, the players and their Union) their respective responsibilities. Plaintiffs, after agreeing to this structure, cannot evade preemption simply by suing the NFL, rather than the Clubs, because any consideration of the NFL's duty to the players requires an evaluation of the Clubs' duties *under the CBAs.*

For example, assessing the existence or scope of the NFL's duty "to warn Players about neurological risks" will require the Court to interpret the CBAs to determine the scope of the duties placed on the Clubs' medical staffs. Thus, if Plaintiffs' alleged medical conditions were ones that "could be significantly aggravated by continued performance," the Clubs' medical staffs may have had a duty to warn players before returning to play, which "would be one factor tending to show that the NFL's alleged failure to take action to protect [them] from concussive brain trauma was reasonable." *Duerson*, 2012 WL 1658353, at *4. Moreover, if, as part of the certifications required of team medical personnel by the CBAs—and attendant

education, training, and experience—the Club trainers and surgeons received instruction on the

risks of repetitive head impacts, then the degree of care owed by the NFL in warning players

about these issues necessarily would be diminished.  *See Stringer*, 474 F. Supp. 2d at 910 ("If, by

virtue of the certification process, the trainers are fully prepared to handle heat-related illnesses,

the degree of care owed by the NFL in publishing the Hot Weather Guidelines is diminished.");

*see also* Defs. Br. at 19-20.

> Similarly, to assess whether the NFL acted reasonably by failing to establish

return-to-play guidelines, the Court would first need to interpret the scope of the duty imposed

by the CBA provisions providing that "[a]ll determinations of recovery time for . . . injuries" are

to be made "by the Club's medical staff and in accordance with the Club's medical standards."[2]

*See Maxwell*, No. 11-CV-08394, Order at 1-2 ("The CBA places primary responsibility for

identifying . . . physical conditions on the team physicians . . . .  The physician provisions of the

CBA must be taken into account in determining the degree of care owed by the NFL and how it

relates to the NFL's alleged failure to establish guidelines or policies to protect the mental health

and safety of its players.").  In fact, Plaintiffs' own arguments firmly establish that preemption is

---

[2]   Contrary to Plaintiffs' arguments, this "recovery time" provision, which appears in the NFL
Constitution and Bylaws (*see, e.g.*, Ex. 13, 1980 Supp. to NFL Constitution Art. XVII; Ex.
14, 1984 NFL Constitution Art. XVII), unquestionably can serve as the basis for preemption.
It is well settled that a document incorporated into a collective bargaining agreement, like the
collective bargaining agreement itself, can form the basis for preemption.  *See, e.g., Allis-
Chalmers Corp.*, 471 U.S. at 204 (analyzing preemption in the context of the collective
bargaining agreement and its incorporated documents); *Levy* v. *Verizon Info. Servs.*, 498 F.
Supp. 2d 586, 597-98 (E.D.N.Y. 2007) (finding plaintiffs' claims preempted because in order
to resolve them, "the court would necessarily have to analyze § C.7 of the Encompass Plan
that is incorporated in the CBA"); *Johnson* v. *NBC Universal, Inc.*, No. 08-cv-03780, 2009
WL 151673, at *4 (D.N.J. Jan. 22, 2009) ("A state law claim is preempted when the claim is
'substantially dependent' upon the interpretation of a collective bargaining agreement
including all incorporated sub-agreements.").  The NFL Constitution and Bylaws are so
incorporated.  *See Clarett* v. *Nat'l Football League*, 369 F.3d 124, 142 (2d Cir. 2004); *Brown*
v. *Nat'l Football League*, 219 F. Supp. 2d 372, 386 (S.D.N.Y. 2002).

required. Plaintiffs, for example, contend that only the NFL had the ability to address concussions systematically as the Member Clubs and doctors lacked "a means for addressing the concussion crisis writ large." (Pls. Br. at 17; *see id.* at 33 ("The NFL—not trainers and doctors—was best positioned to spearhead reforms addressing those injuries at a systemic level.").) Whether or not Plaintiffs are correct requires a thorough consideration of the CBAs.

That the CBAs' numerous provisions concerning player health and safety would need to be interpreted to assess the degree of care owed to Plaintiffs by the NFL makes perfect sense, because together the NFL (which is bound by the CBAs) and its Member Clubs (to whom the duties at issue are ascribed by the CBAs) promote professional football in the United States, stage professional football games, and employ professional football players. *See, e.g.*, Ex. 4, 1977 CBA Art. I § 2; Ex. 5, 1982 CBA Art. I § 2; *see also Atwater* v. *Nat'l Football League Players Ass'n*, 626 F.3d 1170, 1177-78 (11th Cir. 2010) ("[T]he NFL is bound by the CBA's terms."). Unlike some employers who owe a general duty to workers *and the public* to keep the premises safe, issues related to player health generally, and rules concerning play and return-to-play specifically, involve duties unique to the players and addressed by the CBAs.

Indeed, the duties of the parties would obviously be very different were collective bargaining and the resulting agreements not involved. That is why numerous courts—in this and other contexts—have properly concluded that the NFL's conduct concerning player health and safety "cannot be considered in a vacuum," but "must be considered in light of pre-existing contractual duties imposed by the CBA on the individual NFL clubs concerning the general health and safety of the NFL players." *Stringer*, 474 F. Supp. 2d at 910; *see also Maxwell*, No. 11-CV-08394, Order at 1-2 (holding that the numerous health and safety provisions of the CBAs "must be taken into account in determining the degree of care owed by the NFL and how it

relates to the NFL's alleged failure to establish guidelines or policies to protect the mental health and safety of its players"); *Duerson*, 2012 WL 1658353, at *4 (determining that any duty to warn imposed on the Clubs and their physicians under the CBA to protect player health and safety "would be one factor tending to show that the NFL's alleged failure to take action to protect [NFL players] from concussive brain trauma was reasonable").

Plaintiffs' only other argument against preemption rests on the unremarkable proposition that joint tortfeasors may be held jointly and severally liable for damages resulting from their alleged negligence. True enough—a party can be jointly liable for "shirk[ing] its own duty," *to the extent that is has that duty*. (Pls. Br. at 17.) But if the duties of the NFL cannot be assessed in the first place without determining the duties of the Clubs under the CBAs, then the possibility of joint and several liability is beside the point. Put differently, Plaintiffs are focusing on what happens when two parties share a co-extensive duty; but the threshold issues are whether such a co-extensive duty exists in the first place and, if so, what its scope may be, and, if not, what duty, if any, does the NFL have vis-à-vis the Clubs.

The Clubs' duties under the CBAs are the starting point for any analysis of the NFL's duties, and any assessment of the former requires interpreting the CBAs. Moreover, because the NFL's alleged actions and omissions must be understood in the context of the CBAs' allocation of duties, Plaintiffs are impermissibly objecting to the NFL's reliance on the CBA in guiding its conduct. *See Kline*, 386 F.3d at 259 (distinguishing cases that found preemption because "the collective bargaining agreement could fairly be read to authorize the employer's conduct"). Thus, labor preemption squarely applies.

It is well settled that where the actions of multiple parties are at issue, assessing the scope of a duty on the part of one actor necessarily involves calibrating it against duties of

other actors.  For example, in *Marshall* v. *Port Authority of Allegheny County*, 568 A.2d 931 (Pa. 1990), the court assessed the scope of a construction site engineer's duty to maintain a safe worksite by analyzing the engineer's duties in the context of the duties owed by other parties such as the construction contractor.  *Id.* at 936.  The court concluded that "imposing a duty on [the engineer] to be actively involved in procedures for safety compliance would be inconsistent with the provision in the [contractor's] contract stating that [the contractor] 'shall supervise and direct' the work and be '*solely* responsible for all construction means.'"  *Id*.  Calibrating parties' relative duties in this manner is equally appropriate where defendants are alleged to have assumed duties that have been contractually assigned to others.  *See Holbrook* v. *Woodham*, No. 05-304, 2008 WL 4425606, at *14-15 (W.D. Pa. Sept. 30, 2008) (rejecting argument that defendant had a duty to provide a safe worksite because it "was best able to coordinate the work of various contractors to prevent conflicts and undertook a duty to do so because of its intense involvement in the construction process"), *amended by* 2009 WL 365681 (W.D. Pa. Feb. 13, 2009); *Blessing* v. *United States*, 447 F. Supp. 1160, 1194 (E.D. Pa. 1978) (requiring proof that defendant "undertook not merely to supplement" duties assigned to others, "but rather to supplant" them).  Tellingly, Plaintiffs cite no cases to the contrary.

When a duty has been allocated as part of the collective bargaining process, courts have held claims preempted where determining the scope of the duty owed to plaintiffs substantially depends upon an interpretation of the terms of a CBA.  *See Int'l Bhd. of Elec. Workers* v. *Hechler*, 481 U.S. 851, 862 (1987) ("In order to determine the Union's tort liability . . . a court would have to ascertain first, whether the collective-bargaining agreement in fact placed an implied duty of care on the Union . . . and, second, the nature and scope of that duty[.]"); *Espinoza* v. *Cargill Meat Solutions Corp.*, 622 F.3d 432, 444 (5th Cir. 2010) (holding that

14

plaintiff's negligence claim arising out of a workplace injury was preempted because "to define the scope of Cargill's legal duty for purposes of a negligence claim" required interpretation of the CBA's worker safety provisions); *Sluder* v. *United Mine Workers of Am., Int'l Union*, 892 F.2d 549, 554 (7th Cir. 1989) ("In order to define the scope of the duty assumed by the union, it would be necessary to establish the precise responsibility assumed by the union . . . . [I]t would not be possible to define . . . the scope of the union's duty without reference to the collective bargaining agreement that governs the relationship between the company and the union."); *Peek* v. *Phila. Coca-Cola Bottling Co.*, No. 97-3372, 1997 WL 399379, at *5 (E.D. Pa. July 16, 1997) ("[C]laims are . . . preempted where reference to a collective bargaining agreement is necessary to determine whether a duty of care exists or to define the nature and scope of that duty . . . .") (quotation omitted).  That is no less true when the party to whom the duty is assigned by the CBA is not the defendant, but the provision still must be interpreted to assess the degree of care owed by the defendant.  *See, e.g.*, *Coronel* v. *U.S. Nat. Resources, Inc.*, No. SA-04-VA-0804, 2005 WL 831843, at *2 (W.D. Tex. 2005) (holding negligence claim against employer preempted where CBA provisions establishing "that responsibility for workplace safety is shared among employees, the Union, and the Company" must be interpreted to assess the scope of each party's duty in order "to ascertain the nature and scope of the duty of care upon" the employer).

      **(b)**      **The Case Law Compels Preemption of Plaintiffs' Negligence-Based Claims**

Plaintiffs fail in their effort to undermine the wall of precedent finding preempted virtually identical claims against the NFL.  Plaintiffs assert that neither the *Duerson* nor *Maxwell* complaints contained "historical allegations" that the NFL long ago assumed a duty stemming from common law.  (Pls. Br. at 30.)  That is wrong as a matter of fact and irrelevant as a matter of law.  In fact, the *Maxwell* complaint is rife with allegations of the NFL's purported historical

15

conduct and alleged common law duties.  (*See, e.g.*, *Maxwell*, No. 11-CV-08394, July 19, 2011, Compl. ¶¶ 118, 527, 529, 541 (C.D. Cal.) (ECF Dkt. No. 1).)  But in all events, no amount of historical prologue can avoid preemption.  The problem with the complaints in *Duerson* and *Maxwell* is not that they pled too little, but that they required interpretation of the CBAs.

Plaintiffs also mistakenly contend that the *Duerson* and *Maxwell* courts did not consider efforts to isolate the NFL from its Member Clubs.  But both opinions resolved motions to remand in which plaintiffs made precisely these arguments.  *See, e.g.*, *Duerson*, 2012 WL 1658353, at *4 ("Duerson repeatedly insists he can establish the existence of the NFL's duty to keep NFL players reasonably safe without reference to the CBAs."); *Maxwell* Compl. ¶ 541 ("The NFL has historically assumed an independent tort duty to invoke rules that protect the health and safety of its players, but it has violated Section 323 of the Restatement (Second) of Torts[.]").

In addition, Plaintiffs' argument that the allegations in *Maxwell* and *Duerson* differ significantly from those in the MAC is belied by their own opposition papers.[3]  Indeed, the JPML established the instant MDL and transferred *Duerson* to the MDL because "[l]ike the MDL No. 2323 actions, the *Duerson* action involves allegations that defendants are liable for, *inter alia*, failing to warn and protect players from the long-term risk of concussions."  *In re: Nat'l Football League Players' Concussion Injury Litig.*, MDL No. 2323, Aug. 3, 2012, Transfer Order, at 1 (J.P.M.L) (ECF Dkt. No. 169); *see also In re: Nat'l Football League Players' Concussion Injury Litig.*, MDL No. 2323, Jan. 31, 2012, Transfer Order, at 1 (J.P.M.L.) (ECF

---

[3]   *Compare* Pls. Br. at 15 n.12 (citing the NFL's "duty to warn Players about neurological risks") *with Maxwell* Compl. ¶ 114 ("This action arises from the [NFL's] failure to warn and protect NFL players . . . against the long-term brain injury risks associated with football-related concussions"); *Duerson*, No. 12-C-2513, Apr. 5, 2012, Compl. p. 4, ¶ 23(a) (N.D. Ill.) (ECF Dkt. No. 1) (citing the NFL's alleged "[f]ail[ure] to warn Dave Duerson and other NFL Players of the potential long-term impact of suffering numerous concussive head traumas).

Dkt. No. 61) ("The subject actions [including *Maxwell*] share factual issues arising from allegations against the NFL stemming from . . . damages resulting from the permanent long-term effects of concussions while playing professional football in the NFL.").

Plaintiffs ask the Court to ignore *Duerson* and *Maxwell* because both courts held that their claims were subject to *complete* preemption, rather than *ordinary* preemption—the standard for dismissal. But that gets matters backwards. The standard for complete preemption is higher than that for ordinary preemption: "Unlike ordinary preemption, . . . complete preemption operates to confer original federal subject matter jurisdiction . . . ." *In re U.S. Healthcare, Inc.*, 193 F.3d 151, 160 (3d Cir. 1999). Thus, completely preempted claims must be dismissed. *See, e.g.*, *Beidleman* v. *Stroh Brewery Co.*, 182 F.3d 225, 237 (3d Cir. 1999) (affirming district court's denial of employees' motion to remand and its order granting employers' motion to dismiss because plaintiffs' claims were completely preempted); *Peek*, 1997 WL 399379, at *6-7 (denying plaintiff's motion to remand and dismissing plaintiffs' claims as completely preempted).

Plaintiffs' attempt to distinguish *Stringer* is similarly unsuccessful. Plaintiffs wrongly assert that the preempted claims in *Stringer* are "substantially dissimilar" to those in the MAC, as a simple comparison of the allegations here and there confirms. In *Stringer*, the court held preempted allegations that the NFL had breached its alleged duty "to use ordinary care in overseeing, controlling, and regulating practices, policies, procedures, equipment, [and] working conditions . . . to minimize the risk of heat-related illness" by "failing to establish regulations" ensuring "adequate care and monitoring of players suffering from heat-related illness" and "regulation of . . . return to practice." *Stringer*, 474 F. Supp. 2d at 899, 903-04, 909-11. Here, Plaintiffs contend that the NFL breached its alleged duty to warn players that "the repeated

traumatic head impacts the Plaintiffs endured while playing NFL football were likely to expose them to excess risk to neurodegenerative disorders" by, among other things, failing "to promulgate rules affecting the return-to-play . . . when concussive events are detected." (MAC ¶¶ 102, 248, 333.) Indeed, far from being "dissimilar," *Stringer* provides "persuasive" authority for preemption. *Maxwell*, No. 11-CV-08394, Order at 1.

Plaintiffs also unsuccessfully try to explain away *Williams*. In reality, Plaintiffs' claims are directly analogous to the common law claims found preempted in *Williams* premised on allegations that the NFL "voluntarily undertook" to warn plaintiffs about the contents of dietary supplements. *Williams* v. *Nat'l Football League*, 582 F.3d 863, 881 (8th Cir. 2009). The court held those claims preempted because "whether the NFL . . . owed the Players a duty to provide . . . a warning cannot be determined without examining the parties' legal relationship and expectations established by the CBA and the [Drug] Policy." *Id.* So it is here.[4] In sum, Plaintiffs' negligence-based claims against the NFL are preempted and should be dismissed.[5]

---

[4]    The cases on which Plaintiffs rely provide them no aid. *Jurevicius* v. *Cleveland Browns Football Co.*, No. 09-cv-1803, 2010 WL 8461220 (N.D. Ohio Mar. 31, 2010), held that plaintiff's claims were not preempted because the relevant CBA provisions established a duty to disclose player medical conditions, not the safety conditions of team facilities—the issue in that case. 2010 WL 8461220, at *12. Here, Plaintiffs' claims are squarely based on an alleged duty to disclose medical conditions. (*See* MAC ¶ 14(a) (the NFL "failed to inform its current and former players of the true risks associated with MTBI")); *see also Duerson*, 2012 WL 1658353, at *5 (distinguishing *Jurevicius* and *Bentley* because "[i]n this case, by contrast, Duerson's claims relate to a player's physical condition, and thus are affected by the CBA provisions").) Indeed, the *Jurevicius* court held that claims for constructive fraud and breach of fiduciary duty were preempted, as those claims required interpretation of the CBA. *Jurevicius*, 2010 WL 8461220, at *15. Similarly, in *Hendy* v. *Losse*, No. 89-55430, 1991 WL 17230 (9th Cir. Feb. 12, 1991), an unreported case of no precedential value under Ninth Circuit law, the court dismissed the Club's argument that the CBA provisions might lower the Club's duty to exercise due care by stating that "the argument is in the nature of a defense," which does not lead to preemption under the well-pleaded complaint rule. *Id.* at *2. As the *Duerson* court noted, the *Hendy* court's conclusion is "unfounded" because "[e]stablishing the standard of care that a defendant must meet to avoid liability is an element of a negligence claim that the plaintiff must establish, not a defense." *Duerson*, 2012 WL

### 2.   Plaintiffs' Claims for Fraud Also Are Preempted

Plaintiffs' efforts to avoid preemption on their fraud claims fare no better.  Like the negligence claims, the fraud claims depend on a duty that either flows from or depends on the interpretation of the CBAs.

At bottom, Plaintiffs "allege that the NFL defrauded them by concealing the risks of brain injury."  (Pls. Br. at 20.)  In many respects, this claim is little more than a repackaging of Plaintiffs' negligence claims—both claims depend on the nature and extent of an asserted duty owed to Plaintiffs by the NFL.[6]  Contrary to Plaintiffs' assertion, an essential element of their claims is a duty to disclose—a duty that cannot be assessed absent interpretation of the CBAs. Plaintiffs allege, among other things, "that the NFL defrauded them by *concealing* the risks of brain injury."  (Pls. Br. at 20 (emphasis added).)  "While concealment may constitute fraud, . . . mere silence is not sufficient in the absence of a duty to speak."  *Wilson* v. *Donegal Mut. Ins. Co.*, 598 A.2d 1310, 1316 (Pa. Super. Ct. 1991); *see also Banque Arabe et Internationale D'Investissement* v. *Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995) ("To establish

---

1658353, at *5.

[5]  Plaintiffs do not dispute that this category of claims includes Plaintiffs' claims for medical monitoring, negligent misrepresentation, negligence, negligent hiring, and negligent retention.  (*See* Pls. Br. at 14 n.10.)

[6]  Lest there be any doubt, Plaintiffs "cannot avoid preemption by artful pleading."  *In re StarLink Corn Prods. Liab. Litig.*, 212 F. Supp. 2d 828, 836 (N.D. Ill. 2002).  What is more, because the LMRA effects complete preemption, the true gravamen of Plaintiffs' action—the NFL's alleged violation of various duties under the CBAs—mandates preemption irrespective of the specific claims Plaintiffs advance.  *See Platt* v. *Jack Cooper Transp. Co.*, No. 88-0679-CV-W-9, 1990 WL 212106, at *8 (W.D. Mo. 1990) (it is the "true nature of plaintiff's cause of action" that matters for purposes of LMRA preemption); *cf. Fafara* v. *Am. States Life Ins. Co.*, 976 F. Supp. 1368, 1371 (D. Or. 1997) ("Because ERISA is an area of complete preemption, if the true gravamen of plaintiff's action is the deprivation of ERISA plan benefits, the plaintiff cannot avoid preemption by pleading a purported state claim."); *Karambelas* v. *Hughes Aircraft Co.*, 992 F.2d 971, 973 (9th Cir. 1993) (same).

fraudulent concealment, a plaintiff must also prove that the defendant had a duty to disclose the material information."); Defs. Br. at 26 n.13.  Indeed, one of the authorities on which Plaintiffs rely confirms as much, in language omitted by Plaintiffs.  *See Barrett* v. *Freifeld*, 64 A.D.3d 736, 738 (N.Y. App. Div. 2009) ("Since the fraud claim here is based on an omission or concealment of material fact, the plaintiff must also allege that [defendant] had a duty to disclose material information and failed to do so.").

   Thus, as the NFL showed in its moving brief and as set forth above, resolution of Plaintiffs' fraud-based claims substantially depends upon an interpretation of the terms of the CBAs; a court cannot evaluate the scope of the NFL's purported duties without first considering the obligations regarding player health and safety imposed by the CBAs.  *See, e.g.*, *Sherwin* v. *Indianapolis Colts, Inc.*, 752 F. Supp. 1172, 1178 (N.D.N.Y. 1990) (former player's claims that the Club fraudulently concealed the extent of the player's injury preempted because "the court cannot resolve plaintiff's fraud . . . claims without reference to . . . the CBA, which establishes the duty of a club physician, and arguably the club, to inform a player of physical conditions 'which could adversely affect the player's performance or health.'"); *Augustin* v. *SecTek, Inc.*, 807 F. Supp. 2d 519, 525 (E.D. Va. 2011) (finding common law fraud claim for concealment preempted because "the alleged misrepresentations and concealments are inextricably intertwined with an analysis of the terms contained in the CBA").  Nor can the Court determine whether Plaintiffs justifiably relied on information provided by the NFL without first interpreting the CBAs' health and safety provisions.  *See, e.g.*, *Cavallaro* v. *UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 6 (1st Cir. 2012) (finding fraud and negligent misrepresentation claims preempted because "plaintiffs, who say they were misled into thinking certain time was uncompensated, could not have *reasonably* relied on such statements without taking into account CBA provisions

like those guaranteeing payment for work performed during meals, and the practices such provisions embody."); *Williams*, 582 F.3d at 881 (finding fraud claims "preempted because the Players cannot demonstrate the requisite reasonable reliance to prevail on their claims without resorting to the CBA"); *see also Atwater*, 626 F.3d at 1183.[7]

Plaintiffs invoke several cases involving non-preempted fraud claims. (*See* Pls. Br. at 22-23.) None of these cases, however, stands for the principle that fraud claims should somehow be treated differently from negligence claims for preemption purposes. Nor do they conclude that repleading a negligence claim as a fraud claim somehow wards off preemption. Instead, each stands for only the unremarkable proposition that there can be no preemption absent a need to interpret the CBA. *See Trans Penn Wax Corp.* v. *McCandless*, 50 F.3d 217, 230-31 (3d Cir. 1995) ("The collective bargaining agreement does not mention the individual employment contracts, nor does Trans Penn explain how the claims are substantially dependent on analysis of the collective bargaining agreement."); *Voilas* v. *General Motors Corp.*, 170 F.3d 367, 377 (3d Cir. 1999) ("[T]he bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.") (quotation omitted).

In contrast, the reasonableness of Plaintiffs' purported reliance on the NFL's alleged omissions and misrepresentations cannot be assessed without interpretation of those

---

[7]  Plaintiffs attempt to circumvent the impact of *Atwater* by pointing to the "absence of [a] contractual disclaimer" here. (Pls. Br. at 23 n.18.) Thus, in *Atwater*, the court held that numerous claims were preempted because their resolution required interpretation of a provision incorporated into the CBA explaining "'that players shall be solely responsible for their personal finances.'" 626 F.3d at 1181. But just as the disclaimer required interpretation in *Atwater* because it assigned responsibility for the complained-of conduct to the players themselves, so, too, must the CBAs health and safety provisions be interpreted here because they also assign responsibility for the complained-of conduct. The holding of *Atwater* thus contradicts Plaintiffs' position.

terms of the CBAs by which the players—through their Union—agreed that the Clubs and their physicians would be responsible for player health and safety, including return-to-play decisions. *See, e.g.*, *Williams*, 582 F.3d at 882 (explaining that "the question of whether the Players can show that they reasonably relied on the lack of a warning that StarCaps contained bumetanide cannot be ascertained apart from the terms of the Policy," which delegated to the players themselves responsibility for knowing the contents of supplements).[8]

## C.   Plaintiffs' Three Subsets of Allegations Are Not Exempted from the Preemptive Force of the LMRA

Implicitly conceding the vulnerability of the bulk of their claims, Plaintiffs identify three "subsets" of claims that they contend survive preemption: "those that (1) allege the NFL's negligent performance of its own voluntary undertaking; (2) concern the NFL's conduct toward retired Players; and (3) belong to Players who played solely during periods not governed by any CBA."  (Pls. Br. at 25.)  But these subsets have the same basic flaws as the bulk of their claims.

First, Plaintiffs' "voluntary undertaking" argument is simply a reiteration of its theory that the NFL, as distinct from the Clubs, made a voluntary undertaking independent of the CBA.  But even duties undertaken voluntarily must be calibrated in light of the duties of others,

---

[8]   Despite Plaintiffs' claims to the contrary, the Third Circuit has never held that "where a plaintiff alleges fraud stemming from statements issued outside of the CBA bargaining process, the elements of state law fraud do not depend on the CBA."  (Pls. Br. at 20-21 (quotation omitted).)  Rather, as the Supreme Court has explained, the test for preemption of all claims, including fraud claims, is the same: "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law."  *Allis-Chalmers Corp.*, 471 U.S. at 220; *see also Beidleman* v. *Stroh Brewery Co.*, 182 F.3d 225, 231-34 (3d Cir. 1999) (holding fraudulent misrepresentation claim preempted because its resolution required interpretation of a collective bargaining agreement); *Guerrero* v. *Hovensa LLC*, 259 Fed. App'x 453, 458 (3d Cir. Dec. 21, 2007) (finding preempted claim for fraud that required interpretation of the CBA).

and if the duties of others require interpretation of the CBA, a claim is preempted.  *See Williams*, 582 F.3d at 881 (finding allegations based on a violation of a duty "voluntarily undertook" preempted because whether the NFL owed such a duty could not "be determined without examining the parties' relationship and expectations as established by the CBA").

Second, Plaintiffs are wrong in arguing that claims "center[ed] on the NFL's treatment of retired players" are not preempted.  As an initial and dispositive matter, what Plaintiffs refer to are mere allegations—not independent claims; because each of Plaintiffs' claims is also premised on alleged conduct that occurred while Plaintiffs played in the NFL, resolution of those claims will require the Court to interpret provisions of the CBAs that were operative during Plaintiffs' careers.  In any event, the resolution of Plaintiffs' post-retirement allegations substantially depends upon interpreting the CBAs.  Plaintiffs allege that the NFL had a "duty of care" towards retired players "to protect . . . players from developing dementia," and that the NFL's breach of that alleged duty prevented them "from seeking timely 'treatment of their latent neurodegenerative conditions.'"  (Pls. Br. at 26 (quoting MAC ¶¶ 282, 317).)  The scope of any such duty—and Plaintiffs' purported reliance—cannot, however, be assessed absent an interpretation of the CBA provisions addressing the players' own duties and post-retirement benefits, which cover a wide range of subjects, including medical care and compensation for such medical care for eligible retirees, including, for example, in the case of "dementia."  *See, e.g.*, Ex. 10, 2006 CBA Art. XLVIII-D § 1 ("The parties agree to . . . establish a . . . plan . . . to provide medical benefits to former Players who are . . . determined . . . to have 'dementia.'").

Plaintiffs dismiss these provisions as "remedial," but that itself is an interpretation of the relevant CBA provisions, confirming that interpretation is needed and Plaintiffs' allegations are preempted.  If, instead, these provisions are interpreted to allocate to the NFL the

duty to pay for qualified care—and to allocate to the retirees themselves the responsibility for seeking such medical care—then the duty of care that Plaintiffs allege here, if any, would be reduced.  Nor can Plaintiffs avoid the preemptive effect of the many provisions addressing post-retirement benefits simply because the CBAs did not use the word "dementia" until 2006.  (*See* Pls. Br. at 26.)  It is undisputed that before that time, the CBAs provided for multiple post-retirement benefits in the event of "disability."  (*See, e.g.*, Ex. 3, 1970 CBA Art. VI § 2(c)(2); Ex. 4, 1977 CBA Art. XXXI § 8(d); Ex. 5, 1982 CBA Art. XXXIV § 8(b); Ex. 6, 1993 CBA Art. XLVII § 4(C), Art. LI.)

Similarly, the Court cannot determine whether Plaintiffs "reasonably relied" on information provided by the NFL "after their NFL careers" (MAC ¶ 283) without interpreting these provisions.  Thus, these "post-retirement" allegations, too, are preempted.  *See Atwater*, 626 F.3d at 1183 (former players' negligent misrepresentation claim—that the NFL provided inaccurate background information regarding investment advisors for the players—was preempted because "whether Plaintiffs reasonably relied on Defendants' alleged misrepresentations is substantially dependent on the CBA's language," which placed responsibility for player finances on players themselves).

Third, Plaintiffs argue that the claims of those players who retired before 1968 or who played exclusively between 1987 and 1993 are not preempted because no CBA was in effect at those times.  That argument, however, ignores both Plaintiffs' own Complaint and their opposition to this motion, in which Plaintiffs argue that the NFL is purportedly liable to any such players not only for the NFL's alleged conduct during their playing years, but also during their retirement.  As explained above, allegations concerning "the NFL's treatment of retired players" are preempted because the CBAs in effect at the time that the NFL allegedly made

misrepresentations to its retirees must be interpreted to resolve, among other things, whether the retirees reasonably relied on the NFL and the NFL's alleged duty to them.[9]

## D.   **Plaintiffs' Claims Against the NFL Arise Under the CBAs**

Plaintiffs' claims are preempted for a second, independent reason: they arise under the CBA.  Plaintiffs assert that because the NFL is not a party to the CBAs, its duties cannot arise out of them.  But Plaintiffs elsewhere in their opposition concede that, notwithstanding that the NFL is not a "formal signatory," it is bound by the CBAs and its duties can arise out of them.  (*See* Pls. Br. at 29 & n.23 (purporting to distinguish *Atwater* on the basis that "the alleged duty—for the NFL to recommend competent financial advisors—'arose directly from the CBA'"); *see also Atwater*, 626 F.3d at 1178 ("[A]lthough not a formal signatory, the NFL is bound by the CBA's terms.").)

As the NFL's moving brief showed, Plaintiffs' claims are founded directly on the CBAs.  Thus, Plaintiffs' claims hinge on the NFL's purported duty to "develop[] standardized return-to-play protocols" and to "implement[] rules changes to mitigate the incidence of traumatic blows to the head."  (Pls. Br. at 6.)  Plaintiffs' argument that these duties are "imposed by the common law" has no basis in the case law.  Thus, for example, in *United Steelworkers of America* v. *Rawson*, the Supreme Court held preempted a claim based on the union's alleged duty—to use care in conducting an inspection of the mine—that arose under the terms of a CBA providing, among other things, that "'a committee consisting of two (2) supervisory personnel

---

[9]   As the NFL explained in its moving brief, with respect to those Plaintiffs who played during 1968 or later, to the extent that any individual plaintiff's claim is not preempted, the NFL will move at a later date for the dismissal of any such claim for failure to follow the required grievance procedures.  (*See* Defs. Br. at 6 n.2.)  To the extent, however, that any claim is found not to be preempted, the NFL intends to argue at a later date that such claims should be dismissed for failure to state a claim and because they are time-barred.  (*See* CMO No. 4, at ¶ 3 (June 21, 2012, ECF Dkt. No. 98).)

and two (2) reliable employees, approved by the Union, shall inspect' the mine."  495 U.S. 362, 371, 374-75 (1990).  The Court expressly rejected an argument nearly identical to that made by Plaintiffs here, namely, that "Idaho law placed a duty of care on the Union because the Union did, in fact, actively inspect the mine, and the Union could be held liable for the negligent performance of that inspection," without reference to the CBA.  *Id.* at 370-71.  Rather, the Court held that plaintiffs' claims were preempted because "[t]his is not a situation where the Union's delegates are accused of acting in a way that might violate the duty of reasonable care owed to every person in society," thus, it was clear that plaintiffs' claims "cannot be described as independent of the collective-bargaining agreement."  *Id.* at 371.[10]

So it is here.  The alleged duties upon which Plaintiffs based their claims—such as the NFL's purported duty to "develop[] standardized return-to-play protocols" and to "implement[] rules changes to mitigate the incidence of traumatic blows to the head" (Pls. Br. at 6)—are duties that arise, if at all, under those provisions of the CBA addressing rule-making and player health and safety.  (*See* Defs. Br. at 30-32.)  Indeed, the NFL's alleged duties to implement rule changes and develop protocols are not "owed to every person in society." *Rawson*, 495 U.S. at 371.[11]  Accordingly, Plaintiffs' claims—premised on alleged duties owed to

---

[10]  In apparent recognition of the fact that under *Rawson* their claims are preempted, Plaintiffs argue that "the extent to which *Rawson* remains good law is unclear."  (Pls. Br. at 35 n.32.)  This argument fails; as demonstrated by numerous cases, *Rawson* remains good law.  *See, e.g.*, *Aetna Health Inc.* v. *Davila*, 542 U.S. 200, 213-14 (2004) (applying *Rawson* to find claim preempted under ERISA); *Negron* v. *Oxford Airport Tech. Servs.*, No. 08-4326, 2009 WL 50158, at *3 & n.4 (E.D. Pa. Jan. 7, 2009) (relying on *Rawson* to find preempted, under RLA—a preemption standard "virtually identical" to LMRA preemption—claims alleging dangerous working conditions).

[11]  *Sherwin*, which found a former player's state law claims preempted, is also instructive.  In that case, plaintiff alleged that he had suffered an injury for which defendants, the Colts and their team doctors, failed to provide adequate medical care, and that defendants intentionally withheld information regarding the true nature of his injury.  752 F. Supp. at 1173.  Citing *Rawson*, the court held that plaintiffs' various tort claims—including claims for negligence,

NFL players only—are directly founded on the CBAs and consequently are preempted by section 301.

## II.

### PLAINTIFFS' PREEMPTED CLAIMS SHOULD BE DISMISSED

As a last resort, Plaintiffs contend that "[e]ven if it applies, § 301 does not justify *dismissal* of" Plaintiffs' claims (Pls. Br. at 27), and invites this Court to apply federal law itself or allow for "fuller factual development." (Pls. Br. at 11 n.7.) Neither argument has merit.

First, Plaintiffs' request that this Court interpret the CBAs is just another example of how Plaintiffs ignore the settled law of labor preemption. Labor preemption protects not just substantive law but the unique federal apparatus for resolving labor disputes. "[A] central tenet of federal labor-contract law under § 301 [is] that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance." *Allis-Chalmers*, 471 U.S. at 219-20 (section 301 preemption "preserves the central role of arbitration in our system of industrial self-government"). Thus, "because preempted claims must first be presented through the arbitration procedure established in a collective bargaining agreement, those claims should be dismissed." *Givens* v. *Tenn. Football, Inc.*, 684 F. Supp. 2d 985, 991-92 (M.D. Tenn. 2010).

Plaintiffs do not even address the role of arbitration in federal labor law—let alone contest that it requires dismissal of preempted claims. Instead, Plaintiffs invoke a footnote in *Lingle* v. *Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988), which simply affirms the distinction between claims (such as those here) whose resolution substantially depends upon an

---

fraud, and negligent misrepresentation—were preempted because "[t]he Colts owed a duty to provide adequate medical care, or to provide truthful information regarding medical treatment and diagnoses, *only* to their players covered by the standard player agreement and the CBA," and not to "every person in society." *Id.* at 1178 (emphasis added). The same conclusion follows here.

interpretation of the terms of a CBA and must be dismissed, and those that require mere reference to the CBA (*e.g.*, to calculate wages for damages purposes).  *See Lingle*, 486 U.S. at 413 n.12.  Where, as here, the resolution of state law claims requires interpretation of the terms of a CBA, or the claims arise out of duties created by the CBA, dismissal is required.  *See, e.g.*, *Hechler*, 481 U.S. at 854 (reviewing dismissal of preempted negligence claim); *Beidleman*, 182 F.3d at 237 (affirming district court's order granting employers' motion to dismiss plaintiffs' fraudulent concealment claim); *Peek*, 1997 WL 399379, at *5-7 (dismissing plaintiffs' slander, negligence and gross negligence claims as preempted).

Plaintiffs' related assertion that courts require "a fuller factual development prior to ruling on preemption" (Pls. Br. at 11 n.7) is also mistaken.[12]  It is well settled that where, as here, a defendant has moved to dismiss a complaint on the basis that plaintiffs' claims are preempted by § 301 of the LMRA, the complaint and the CBAs are the only documents that the court need analyze to determine whether plaintiffs' claims are preempted.  *See, e.g.*, *Pagano* v. *Bell Atlantic-New Jersey, Inc.*, 988 F. Supp. 841, 847 n.3 (D.N.J. 1997) (granting motion to dismiss and disallowing discovery where claims were preempted by section 301); *Levy*, 498 F. Supp. 2d at 595 n.8 (granting motion to dismiss where claims were preempted, rejecting plaintiffs' contention "that they would need additional discovery to litigate" the issue, and suggesting the only conceivably relevant discovery would involve evidence disputing "the authenticity of the CBAs . . . or plaintiffs' union membership").  Thus, both the *Duerson* and

---

[12]   Indeed, this Court, in addressing Plaintiffs' prior request for discovery relating to the preemption arguments, noted its "inclination is that the NFL is correct, that you don't need this information" (Declaration of A. Elizabeth Balakhani, Ex. 1, Tr. of Apr. 25, 2012, Organizational Courtroom Conference, at 28:14-16.)  Even though this Court nevertheless provided Plaintiffs an opportunity to file specific requests for discovery in connection with the preemption arguments by June 19, 2012 (Case Management Order No. 2 at 3, Apr. 26, 2012, ECF Dkt. 64), Plaintiffs failed to do so.

*Maxwell* courts, without the aid of discovery, adjudicated motions to remand raising preemption questions identical to those here, in each case determining that plaintiff's concussion-related negligence claims were preempted.  *See Duerson*, 2012 WL 1658353, at *6; *Maxwell*, No. 11-cv-08394, Order at 2.[13]  For all the reasons set forth above, there is no need for discovery to rule on the preemption issue here.

## III.

## SECTION 301 PREEMPTS PLAINTIFFS' CLAIMS AGAINST NFLP

Plaintiffs fail to respond to the NFL Defendants' showing that the claims against NFLP must be dismissed, other than to assert, without explanation, analysis, or case law support, that "the distinction between" the NFL and NFLP "is immaterial to the arguments here."  (Pls. Br. at 1 n.1.)  Thus, because, as shown above and in the NFL Defendants' moving brief, Plaintiffs' claims against the NFL are preempted, so, too, are Plaintiffs' claims against NFLP.[14]

*               *               *

In sum, Plaintiffs' claims are preempted under section 301 and should be dismissed.

---

[13]   The cases cited by Plaintiffs are inapposite, as none involved LMRA preemption.  Indeed, as noted above, courts routinely dismiss preempted claims.  *See Exal Corp.* v. *Roeslein & Assocs., Inc.*, No. 4:12-CV-01830, 2012 WL 4754748, at *3 (N.D. Ohio Oct. 2, 2012) (addressing a motion to dismiss based on preemption by the Uniform Trade Secrets Act); *Blue Nile, Inc.* v. *Ice.com, Inc.*, 478 F. Supp. 2d 1240, 1245-46 (W.D. Wash. 2007) (addressing Lanham Act preemption); *Gelow* v. *Central Pac. Mortg. Corp.*, No. Civ. S-07-1988, 2008 WL 436935, at *6 (E.D. Cal. Feb. 14, 2008) (addressing preemption under the Employee Retirement Income Security Act of 1974).

[14]   Plaintiffs' refusal to distinguish between the NFL and NFLP, in either their Complaint or in their opposition to the NFL Defendants' motion to dismiss, confirms that to the extent any claim against NFLP is not dismissed as preempted, it is legally insufficient for failure to identify any conduct on the part of NFLP for which it is alleged to be liable.

## Conclusion

For the foregoing reasons, and those set forth in the NFL Defendants' moving papers, the NFL Defendants respectfully submit that section 301 preempts Plaintiffs' claims, and, as a result, the MAC should be dismissed with prejudice.

Dated: December 17, 2012

Respectfully submitted,

        */s/ Brad S. Karp*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Brad S. Karp
Theodore V. Wells, Jr.
Beth A. Wilkinson
Lynn B. Bayard
1285 Avenue of the Americas
New York, NY 10019-6064
Tel:     (212) 373-3000

BANCROFT PLLC
Paul D. Clement
1919 M Street, N.W., Suite 470
Washington, D.C. 20036
Tel:     (202) 234-0090

DECHERT LLP
Judy L. Leone (Pa. Atty. ID 41165)
Robert C. Heim (Pa. Atty. ID 15758)
Cira Centre
2929 Arch Street
Philadelphia, PA  19104-2808
Tel:     (215) 994-4000

DUANE MORRIS LLP
John J. Soroko (Pa. Atty. ID 25987)
Dana B. Klinges (Pa. Atty. ID 57943)
30 South 17th Street
Philadelphia, PA  19103-4196
Tel:     (215) 979-1000

*Attorneys for the National Football League and NFL Properties LLC*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO: Plaintiffs' Amended Master Administrative Long-Form Complaint and the Applicable Associated Short-Form Complaints | **Certificate of Service** |

I hereby certify that on December 17, 2012, I caused a true and correct copy of the foregoing REPLY MEMORANDUM OF LAW OF DEFENDANTS NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC IN FURTHER SUPPORT OF MOTION TO DISMISS THE AMENDED MASTER ADMINISTRATIVE LONG-FORM COMPLAINT ON PREEMPTION GROUNDS to be filed via CM/ECF system, which caused notice to be sent to all counsel of record.

Dated: December 17, 2012

/s/ Nathan M. McClellan
Nathan M. McClellan
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
Tel:    (215) 994-2436

*Attorney for the National Football League and NFL Properties LLC*