UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB MDL No. 2323 |
| THIS DOCUMENT RELATES TO: Plaintiffs' Master Administrative Class Action Complaint for Medical Monitoring | |

### DECLARATION OF A. ELIZABETH BALAKHANI

A. Elizabeth Balakhani declares pursuant to 28 U.S.C. § 1746:

1.　　I am an associate at the law firm of Dechert LLP, counsel to Defendants National Football League and NFL Properties, LLC in the above-captioned matter.  I respectfully submit this declaration in support of the Reply Memorandum of Law of Defendants National Football League and NFL Properties LLC in Further Support of Motion to Dismiss the Master Administrative Class Action Complaint on Preemption Grounds.

2.　　Attached as Exhibit 1 is a true and correct copy of the transcript of the Organizational Courtroom Conference dated April 25, 2012 in *In re: National Football League Players' Concussion Injury Litigation*, 12-MDL-2323.

3.　　I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on December 17, 2012

/s/ A. Elizabeth Balakhani
A. Elizabeth Balakhani

EXHIBIT 1

```
             UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF PENNSYLVANIA



IN RE:                        )
                              )  12-MDL-2323
NATIONAL FOOTBALL LEAGUE      )
PLAYERS' CONCUSSION INJURY    )  Philadelphia, PA
LITIGATION                    )  April 25, 2012
                              )  10:39 a.m.
------------------------------------


     TRANSCRIPT OF ORGANIZATIONAL COURTROOM CONFERENCE
        BEFORE THE HONORABLE ANITA B. BRODY
            UNITED STATES DISTRICT JUDGE


APPEARANCES:


For the Plaintiffs,      JAMES R. DUGAN, II, ESQUIRE
  Tyrone Hughes, et al:  THE DUGAN LAW FIRM
                         365 Canal Street
                         Suite 1000
                         New Orleans, LA  70130

For the Plaintiffs,      THOMAS V. GIRARDI, ESQUIRE
  Vernon Maxwell, et al: GRAHAM B. LIPPSMITH, ESQUIRE
                         GIRARDI & KEESE
                         1126 Wilshire Boulevard
                         Los Angeles, CA  90017

For the Plaintiffs,      RICHARD S. LEWIS, ESQUIRE
  Brent Boyd, et al:     MICHAEL D. HAUSFELD, ESQUIRE
                         JEANNINE M. KENNEY, ESQUIRE
                         HAUSFELD, LLP
                         1700 K Street NW
                         Suite 650
                         Washington, D.C.  20006

For the Plaintiffs,      GENE LOCKS, ESQUIRE
  Ron Solt, et al:       DAVID LANGFITT, ESQUIRE
                         LOCKS LAW FIRM
                         601 Walnut Street
                         Suite 720
                         Philadelphia, PA  19106

For the Plaintiffs,      DANIEL LEVIN, ESQUIRE
  Fred Barnett, et al:   LEVIN, FISHBEIN, SEDRAN & BERMAN
                         510 Walnut Street
                         Suite 500
                         Philadelphia, PA  19106
```

```
APPEARANCES:              (Continued)

For the Plaintiffs,       MICHAEL L. McGLAMRY, ESQUIRE
  Dorsey Levens, et al:   POPE, McGLAMRY, KILPATRICK,
                          MORRISON & NORWOOD, LLP
                          The Pinnacle
                          3455 Peachtree Road N.E.
                          Suite 925
                          Atlanta, GA   31119

For the Plaintiffs,       DAVID A. ROSEN, ESQUIRE
  Larry Barnes, et al:    ROSE, KLEIN & MARIAS
                          801 South Grand Avenue
                          Los Angeles, CA   90017

For the Plaintiffs,       DIANNE M. NAST, ESQUIRE
  Andrew Glover, et al:   RODA & NAST, P.C.
                          801 Estelle Drive
                          Lancaster, PA   17601

For the Plaintiffs,       STEPHEN F. ROSENTHAL, ESQUIRE
  Marvin Jones, et al:    STEVEN C. MARKS, ESQUIRE
                          PODHURST, ORSECK, JOSEFSBERG
                          City National Bank Building
                          25 W. Flagler Street
                          Suite 800
                          Miami, FL   33130

For the Plaintiff,        FREDERICK SCHENK, ESQUIRE
  Bernard Parrish:        CASEY, GERRY, CASEY, WESTBROOK,
                          REED & HUGHES
                          110 Laurel Street
                          San Diego, CA   92101

For the Plaintiffs,       ANTHONY TARRICONE, ESQUIRE
  Kerry Justin, et al:    KREINDLER & KREINDLER
                          277 Dartmouth Street
                          Boston, MA   02116

For the Plaintiffs,       SOL H. WEISS, ESQUIRE
  Charles Easterling,     LARRY E. COBEN, ESQUIRE
  et al:                  ANAPOL, SCHWARTZ, WEISS, COHAN,
                          FELDMAN & SMALLEY, P.C.
                          1710 Spruce Street
                          Philadelphia, PA   19103

For the Plaintiffs,       CHARLES S. ZIMMERMAN, ESQUIRE
  Reginald Rucker,        ZIMMERMAN, REED, PLLP
  et al:                  1100 IDS Center
                          80 South Eighth Street
                          Minneapolis, MN   55402
```

APPEARANCES:                (Continued)


For the Plaintiffs:         DERRIEL C. McCORVEY, ESQUIRE
                            DERRIEL C. McCORVEY, LLC
                            115 West Main Street
                            Suite 14
                            Lafayette, LA  70502

For the Plaintiffs,         MOSHE HORN, ESQUIRE
  Jim Finn, et al:          SEEGER, WEISS, LLP
                            77 Water Street
                            New York, NY  10005

For the Defendant,          DANA B. KLINGES, ESQUIRE
  NFL:                      DUANE, MORRIS LLP
                            30 South 17th Street
                            Philadelphia, PA  19103

                            BETH A. WILKINSON, ESQUIRE
                            THEODORE V. WELLS, ESQUIRE
                            PAUL, WEISS, RIFKIND, WHARTON
                            & GARRISON, LLP
                            1285 Avenue of the Americas
                            New York, NY  10019

For the Defendants,         PAUL G. CEREGHINI, ESQUIRE
  Riddell, Inc., et al:     THOMAS C. HOWARD, ESQUIRE
                            BOWMAN & BROOKE
                            2901 North Central Avenue
                            Phoenix, AZ  85012

                            THOMAS P. WAGNER, ESQUIRE
                            MARSHALL, DENNEHEY, WARNER,
                            COLEMAN & GOGGIN
                            1845 Walnut Street
                            Philadelphia, PA  19103


Audio Operator:             JAMES F.G. SCHEIDT


Transcribed by:             DIANA DOMAN TRANSCRIBING
                            P.O. Box 129
                            Gibbsboro, NJ  08026-0129
                            Office:  (856) 435-7172
                            Fax:     (856) 435-7124
                            E-mail:   dianadoman@comcast.net


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

```
 1              (The following was heard in open court at 10:39 a.m.)
 2                   THE COURT:  Okay, we're here in the matter of
 3    In Re: National Football League Players' Concussion litigation
 4    at Multi-District 2012-2323.  Good morning.  You hear me?
 5                   COUNSEL:  Yes, Your Honor.
 6                   THE COURT:  Okay, all right, I just want to go over
 7    who's here -- well, we won't do that yet.
 8                   I want you to know that I have carefully reviewed
 9    all your submissions, and I will make some conclusions I've
10    come to myself and I'm not going to have oral argument on, and
11    others I will.  So -- and some of them I'm just going to make
12    decisions based upon the papers.
13                   First we're going to discuss the plaintiff's
14    Executive Committee.  Would you like to introduce yourselves
15    to me?
16                   MR. WEISS:  Thank you.  Good morning, Your Honor.
17    Sol Weiss and behind me is Larry Coben.
18                   MR. COBEN:  Good morning, Your Honor.
19                   THE COURT:  Okay.
20                   MR. WEISS:  From the Anapol firm.
21                   MR. LEWIS:  Good morning, Your Honor.  Richard Lewis
22    from Hausfeld in Washington.
23                   MR. LOCKS:  Gene Locks from Locks Law Firm.
24                   MR. GIRARDI:  Good morning, Your Honor.  Tom Girardi
25    from Los Angeles.
```

Colloquy                                                      5

1           THE COURT:  I can't hear you.

2           MR. GIRARDI:  Tom Girardi from Los Angeles.

3           THE COURT:  Okay.

4           MR. MARKS:  Good morning, Your Honor.  Steve Marks

5    with Podhurst, Orseck and Steven Rosenthal.

6           MR. LIPPSMITH:  Good morning, Your Honor.  Graham

7    Lippsmith also from Los Angeles.

8           MR. HAUSFELD:  Good morning, Your Honor.  Michael

9    Hausfeld from the Hausfeld firm from Washington, D.C.

10          MR. LANGFITT:  And David Langfitt from Locks Law

11   Firm.

12          THE COURT:  Okay.  And is Mr. Seeger here?

13          MR. HORN:  Good morning, Your Honor.  Moshe Horn

14   from Seeger, Weiss for Mr. Seeger.

15          THE COURT:  You are?

16          MR. HORN:  Moshe Horn.  I'm Mr. Seeger's partner.

17   He's in depositions, Your Honor, in California, representing

18   our firm.

19          THE COURT:  Okay.  All right.  Are there any other

20   people who are here who wish to be heard on the issue of

21   membership on the Steering Committee or the Executive

22   Committee?

23          MR. DUGAN:  Good morning, Your Honor.  I'd like to

24   introduce myself.  James Dugan with the Dugan Law Firm,

25   proposed PSC, Your Honor.

Colloquy                                    6

1          THE COURT:  Proposed what?

2          MR. DUGAN:  PSC, Your Honor, plaintiff's Steering

3    Committee member.

4          THE COURT:  All right.  And your name is Dugan?

5          MR. DUGAN:  James Dugan, D-U-G-A-N, Your Honor.

6          THE COURT:  Okay.

7          MR. ZIMMERMAN:  Good morning, Your Honor.  I'm

8    Charles Zimmerman, proposed plaintiff's Steering Committee,

9    from the law firm of Zimmerman, Reed.

10         THE COURT:  Okay.

11         MR. McGLAMRY:  Your Honor, Mike McGlamry from Pope,

12   McGlamry, Kilpatrick, Morrison & Norwood from Atlanta, also

13   with the Steering Committee.

14         THE COURT:  You are on the Steering Committee?

15         MR. McGLAMRY:  I'm part of the joint application for

16   the Steering Committee as Mr. Zimmerman and others, and Mr.

17   Dugan has also --

18         THE COURT:  Oh, so the three of you are from the

19   same firm?

20         MR. McGLAMRY:  No, no, Your Honor.

21         THE COURT:  Oh, okay.

22         MR. ZIMMERMAN:  We're on the proposed Steering

23   Committee.

24         THE COURT:  Okay.

25         MR. WEISS:  Your Honor, Sol Weiss, if I could help

1    the Court.  There's seven people on our slate on the Steering

2    Committee, and those gentlemen are three of them, and there's

3    four others.

4              THE COURT:  Okay.  Oh, so they're introducing

5    themselves.  I wanted people who -- I wasn't going to take the

6    Steering Committee -- people who have applications to be on

7    those committees that have not been selected.

8              MR. McCORVEY:  Your Honor, Derriel McCorvey with the

9    Law Office of Derriel McCorvey, LLC.  I filed an application

10   for appointment to the plaintiff's Steering Committee.

11             THE COURT:  Is there anyone else who has?

12             MR. SCHENK:  Yes, good morning, Your Honor.

13   Frederick Schenk of the Casey, Gerry law firm in San Diego.  I

14   too have filed papers to be appointed independently.

15             THE COURT:  Okay.

16             MR. SCHENK:  Thank you.

17             THE COURT:  Have you -- I think I asked originally

18   Mr. Coben to --

19             MR. WEISS:  Yes, Your Honor.

20             THE COURT:  -- to organize this, or -- well, I guess

21   you're from the same firm.  Is there any -- have you

22   considered this or what conclusions did you come to when you

23   talked with everyone?  There's only two people, I think.

24             MR. WEISS:  Your Honor, we are fine with adding

25   these two people to the Steering Committee, if that's what the

1    Court would like to do.  We'd like to work with them.

2              THE COURT:  I'm not -- I wonder whether -- I want

3    you to take it under advisement, okay?

4              MR. WEISS:  Certainly.

5              THE COURT:  And if there's any dispute about it, I

6    will hear it again on the telephone.  Okay?

7              MR. WEISS:  Very good, Your Honor.

8              THE COURT:  So in other words, if you're not

9    appointed, then I will discuss it with you and see why and

10   what we can do about it.  Okay?

11             MR. WEISS:  Thank you, Your Honor.

12             THE COURT:  You're welcome.

13             MR. WEISS:  For your direction.

14             THE COURT:  All right.  Now, I'd like to hear from

15   the Steering Committee.  Can you just introduce yourselves?

16             MR. ZIMMERMAN:  I'm Charles Zimmerman of Zimmerman,

17   Reed for the proposed plaintiff Steering Committee.

18             THE COURT:  Okay.

19             MR. DUGAN:  James Dugan again, Your Honor, from the

20   Dugan Law Firm in New Orleans, proposed PSC member.

21             THE COURT:  Welcome to Philadelphia.

22             MR. DUGAN:  Thank you.  Glad to be here, Your Honor.

23             THE COURT:  Okay.

24             MR. McGLAMRY:  Your Honor, again, Mike McGlamry from

25   Atlanta, also with the Steering Committee.

Colloquy                                                          9

1              THE COURT:  Okay.

2              MS. NAST:  Dianne Nast, Your Honor.  I'm also

3     included in the proposed committee.

4              THE COURT:  Anyone else?  Yes?

5              MR. LEVIN:  Your Honor, Daniel Levin on behalf of

6     Ronald Levin for the Steering Committee.

7              THE COURT:  You're from Philadelphia?

8              MR. LEVIN:  Yes.

9              THE COURT:  Yes.

10             MR. ROSEN:  Good morning, Your Honor.  David Rosen,

11    Rose, Klein & Marias from Los Angeles also on the joint

12    application for the plaintiff Steering Committee.

13             THE COURT:  Okay.  And anyone else?  Yes?

14             MR. TARRICONE:  Good morning, Your Honor.  Anthony

15    Tarricone, Kreindler & Kreindler, with the group.

16             THE COURT:  And you've agreed to have your own

17    Steering Committee.

18             MR. TARRICONE:  Yes, I have, Your Honor.

19             THE COURT:  Okay.  Anyone else?  Are there any

20    people here who have objections, any objections to the

21    Steering Committee, other than those people who asked to be

22    included who have not been included?

23             All right.  I have read your -- oh, yes, who is the

24    liaison counsel?

25             MS. KENNEY:  Your Honor, Jeannine Kenney with

1   Hausfeld, LLC.  We're proposed liaison counsel.

2              THE COURT:  Okay.  Is there anyone who -- anyone

3   else who has any objections?

4              Well, I will appoint -- I've read all your resumes.

5   I've done some homework on this.  And I will in fact appoint

6   you as you've designated to the Executive Committee and to the

7   Steering Committee.

8              I have one concern though -- actually, let's talk

9   about the plaintiff first -- the defendant.

10             You have two counsel, one from New York and one from

11  Washington, isn't that correct, as lead counsel?

12             MS. WILKINSON:  Yes, Your Honor.  Beth Wilkinson and

13  you know Mr. Wells.

14             MR. WELLS:  Yes, Your Honor.

15             THE COURT:  Okay.  And do you have local counsel?

16             MS. KLINGES:  Yes, Your Honor, Dana Klinges from

17  Duane, Morris.

18             THE COURT:  And you represent the NFL.  And for the,

19  and for the Riddell?  Is that how you pronounce it correctly,

20  Riddell?

21             MR. CEREGHINI:  It is, Your Honor.  I'm Paul

22  Cereghini from Bowman & Brooke.  I'm Riddell's lead counsel.

23             THE COURT:  And where are you from?

24             MR. CEREGHINI:  I'm from Phoenix, Arizona with the

25  Bowman & Brooke law firm.

1          THE COURT:  Okay.

2          MR. HOWARD:  I'm Tom Howard, also with the Bowman &

3     Brooke law firm from the Phoenix, Arizona office.

4          THE COURT:  Okay.  And?

5          MR. WAGNER:  And Thomas Wagner, Your Honor, from the

6     Marshall, Dennehey firm in Philadelphia as local counsel.

7          THE COURT:  Okay.  I'm going to appoint everyone of

8     you -- I guess I don't have to really -- as lead counsel.  But

9     I'm going to ask for the Philadelphia people to be liaison

10    counsel.  Is that going to be any problem?

11         MR. CEREGHINI:  That's appropriate here.

12         THE COURT:  Okay.  Do you have any problem with

13    that?

14         MS. WILKINSON:  Not at all.

15         THE COURT:  Okay.  All right.

16         MR. WAGNER:  That's fine with us, Your Honor.

17         THE COURT:  Okay.  And have you made an appearance?

18    I know that Mr. Soroko has.

19         MS. KLINGES:  Yes.

20         THE COURT:  You have, okay.  All right, you're

21    appointed as liaison counsel, so if I need people here

22    quickly, I can call the Philadelphia people.

23         Now, the last item is appointment of lead counsel.

24    I know that -- have you gotten together and tried to work that

25    out?

Colloquy                                    12

1          MR. WEISS:  Your Honor, we will get back to you with

2     that, if that's okay.

3          THE COURT:  Yes.  I want lead counsel.  I have done

4     my homework on that too.  And I would very much like one of

5     co-lead counsel to be Mr. Seeger, Chris Seeger.  I have to

6     tell you, the ratings of people who have had MDLs with you

7     involved have been very, very high, your law firm.  So I'm

8     going to -- that's one.

9          But the other one I'd like to have from

10    Philadelphia.  I would like to have -- I think that -- is

11    there going to be any problem with that?  Are you going to be

12    able to decide which one of you is going to be doing it?

13         MR. WEISS:  We'll get back to you, Your Honor, very

14    shortly.

15         THE COURT:  Okay.  And I will -- and I will make an

16    appointment if you can't work this out.

17         MR. WEISS:  Thank you, Your Honor.

18         THE COURT:  And if necessary, you can take a vote of

19    the Executive Committee.  That may be the way to go about

20    doing it.  So -- but I don't really care which one of you is

21    counsel, but I will make a decision if I have to make one.

22    Okay?  All right.

23         Now, I think we've covered that.  I'm going to ask

24    Mr. Weiss to really lead this.  Related cases pending in other

25    Courts and current status.  Are there any additional cases

Colloquy                                    13

1    that I should know about?

2                 MR. WEISS:  Yes, Your Honor.  There are filings, I

3    think this week by the Locks Law Firm.  I believe there are a

4    few cases that were filed in State Court, in Philadelphia,

5    that are in the process, there are 11 had been -- in the

6    process of being removed here.

7                 THE COURT:  Okay.  Is that accurate, Ms. Wilkinson?

8                 MS. WILKINSON:  Yes, Your Honor.

9                 THE COURT:  Okay.

10                MR. WEISS:  And I believe there are a couple of

11   State Court class actions that the Locks Law Firm has filed.

12                THE COURT:  Here?

13                MR. WEISS:  One in Pennsylvania and one in New

14   Jersey.

15                THE COURT:  Is that correct?

16                MR. LOCKS:  That's correct.

17                THE COURT:  Have you asked for those to be removed?

18                MS. WILKINSON:  We will, Your Honor, within the time

19   period.  Some I think were just filed days ago --

20                THE COURT:  Okay.

21                MS. WILKINSON:  -- and hours ago --

22                THE COURT:  Okay.

23                MR. WEISS:  And then there's the Duerson case, the

24   death case that's in Illinois and that has been removed, and

25   the judge there is going to, I think, decide the remand motion

Colloquy                                        14

1    in two weeks, is my understanding.

2              MS. WILKINSON:  That's not clear, Your Honor.  There

3    was a -- we filed a motion to stay because there was a

4    conditional transfer order to your Court.  They opposed that.

5    We lost the motion to stay and the Court asked for briefing on

6    the remand issue but did not say, you know, whether it will

7    get decided before the --

8              THE COURT:  Is it in Federal Court now?

9              MS. WILKINSON:  It is.

10             THE COURT:  It's in Federal Court, there's an order

11   from the MDL and they have not -- is it still an issue?

12             MS. WILKINSON:  It is, unfortunately.  We asked to

13   stay the remand process and move it to your Court, honor the

14   conditional transfer order, and the plaintiffs disagreed and

15   the federal judge in Illinois agreed not to stay.  And so that

16   transfer order's been technically not in place, and the remand

17   briefing can go forward.

18             THE COURT:  Who's the judge in Chicago?  Was it

19   Chicago?

20             MS. WILKINSON:  It is Chicago.  Let me look up the

21   name, I'm sorry, Your Honor.

22             THE COURT:  All right, just --

23             MS. WILKINSON:  I know he knew who you were because

24   he mentioned your name when the motion was argued.

25             THE COURT:  He did?

1          MS. WILKINSON:  Holderman, Judge Holderman.

2          THE COURT:  H-O-L-D-E-R-M-A-N?

3          MS. WILKINSON:  Yes.

4          THE COURT:  Okay.  I don't know what has to be done

5    about something like that, but I will find out.

6          MS. WILKINSON:  Thank you.

7          MR. WEISS:  And my understanding is that the judge

8    is going to hold a hearing in the next two weeks, for

9    argument.

10         THE COURT:  Well, I'll talk to him today.

11         MR. WEISS:  Okay.

12         THE COURT:  Is it a him?

13         MS. WILKINSON:  It is a him, Your Honor.

14         MR. WEISS:  It is a him.

15         THE COURT:  Okay, I'll talk to him.  I'll try and

16   get to him today, if he takes my call.

17         Okay.  The only order that I have gleaned that is

18   from other Courts that I have to be aware of at this point is

19   the motion to remand in California which was denied.  Is that

20   correct?

21         MS. WILKINSON:  That's right.  Judge Real decided

22   that there was a preemption issue that --

23         THE COURT:  Yes.

24         MS. WILKINSON:  -- and of course, then the case

25   would get transferred to --

Colloquy                                    16

1        THE COURT:  That's what -- okay.  Now we're going to

2   talk about a master complaint.

3        MR. WEISS:  Mr. Locks will speak to --

4        THE COURT:  What's your position, Mr. Locks?

5        MR. WEISS:  Mr. Locks will speak to that, Your

6   Honor, if you don't mind.

7        THE COURT:  Okay, no, of course not.

8        MR. WEISS:  If we do it from here which --

9        THE COURT:  No, you can do it from there.  Don't

10  worry.

11       MR. LOCKS:  Your Honor, we're prepared to file a

12  master administrative complaint.  We suggested that we'll do

13  it within 45 days.  We've suggested time lines for responding

14  to it, relatively quickly, because we don't think it has to be

15  a very, very long process.

16       I think fundamentally the disagreement with the

17  defendants is they want to meet and confer for 90 days or so.

18       THE COURT:  I don't understand that.  Why do you

19  have to meet and confer?  I mean, isn't this pretty standard

20  in every case like this to have an administrative complaint?

21       MS. WILKINSON:  It has been done in other personal

22  injury or product liability cases, Your Honor.  The difficult

23  -- and we're not opposed to it -- is making sure that when we

24  move to dismiss, we are moving to dismiss each and every

25  claim.  So we need to know which ones are going to be in

1    specific, in claims specific.  And so because, obviously each

2    plaintiff is not similarly situated, it is difficult in a

3    master complaint to ensure that you're addressing all of those

4    issues, that we don't have to move again or, you know,

5    inadvertently not move to dismiss claims we think we can.

6          So that was the only issue for us.  I mean, Riddell

7    may have a different position.

8          THE COURT:  Okay, well, I'm going to get to that in

9    a minute.  What's --

10         MR. LOCKS:  But that doesn't need a meet and confer.

11   We put together the master complaint.  We put together the

12   allegations.  And they can respond.  And we don't have to

13   spend 90 days going --

14         THE COURT:  I don't seen any reason why --

15         MR. LOCKS:  -- back and forth --

16         THE COURT:  I agree with you.

17         MR. LOCKS:  -- debating how and what's included.

18         THE COURT:  I agree.

19         MR. LOCKS:  And we've already informally, within our

20   Executive Committee subcommittees, have advanced the ball

21   substantially, where we've tried to work out the differences

22   that we believe are between us, and we're prepared to file, as

23   we said, within 45 days.

24         THE COURT:  Okay.  And if there is -- if there's a

25   problem after you see it, within five days, I'll give you a

Colloquy                                        18

1   date, a week, make sure that that goes on my order, to

2   complain about something not being included and you want to

3   know whether it is, or give them a call and ask him whether

4   there's a mistake.  Okay?

5              MS. WILKINSON:  Your Honor, could I ask just for one

6   additional week?  And the only reason I say that is because

7   there's over 2,000 plaintiffs now.  So to review the master

8   complaint to ensure that all the claims are included for us to

9   dismiss, it just may take a little bit of time.

10             THE COURT:  All right.  Well, then maybe, could you

11  do it in 40 days since you started already, and we'll give you

12  another two weeks, we'll give you two weeks, whatever the ten

13  days later.

14             MS. WILKINSON:  Thank you, Your Honor.

15             THE COURT:  Okay?  Now Riddell.

16             MR. CEREGHINI:  Yes, Your Honor.  We don't think

17  that a master administrative complaint is going to work with

18  respect to Riddell.  Because the claims against Riddell are

19  essentially individual product liability causes of action.

20             Right now we're involved in only 10 to 20 percent.

21  The numbers change every day but --

22             THE COURT:  I recognize that.

23             MR. CEREGHINI:  -- it's about 15 percent of the

24  cases that we're even named in.

25             THE COURT:  Yes.

Colloquy                                    19

1           MR. CEREGHINI:  So 85 percent don't involve us.

2           With respect to the ones that we're named in, by and

3    large the claims are product liability claims.  And for those

4    claims, we need to know the facts that will allow us to

5    determine what state's law will apply.

6           Once we can make that determination, based on this

7    50 or 60-year time period that plaintiffs played in the NFL,

8    we need to know what law of that state applied in the time

9    frame when the alleged injury happened.

10          We need to know what helmet is involved, or helmets

11   that are alleged to be defective, whether the alleged defect

12   is a design defect, a manufacturing defect, a warnings defect.

13   And all of these issues have very significant consequences

14   then for legal issues, for the claims, and for our defenses,

15   and ultimately how we resolve each one of the individual

16   claims.

17          So the claims are very highly individualized.  We're

18   concerned that any kind of master complaint will blur all of

19   those distinctions, and then if there are short form

20   complaints which we've been advised there would be, then what

21   would be in those quote short form complaints, and would they

22   contain --

23          THE COURT:  Well, that's a different issue.

24          MR. CEREGHINI:  It's a different issue, I realize.

25          But with respect to the master complaints, because

1    we're involved in such a small subset of cases, we don't want

2    to be in a situation where somebody's checking the box to add

3    claims against Riddell or where we can't tell what the issues

4    are.

5              And that's why we've raised these issues before

6    Judge Real in a motion to sever, because we really think the

7    individual player cases ought to be pled individually.

8              THE COURT:  There's no question that you're going to

9    be able to -- we're going to deal with that first.  So I think

10   we're going to get a master complaint.  You're going to have

11   the same period of time to query about what your relationship

12   is with that complaint.

13             And then the first thing we're going to do is get

14   the expedited motions.  And one is your motion to sever, so

15   you will be heard about that immediately.  And the NFL's

16   motion under 301 of the Labor Management Act.

17             So I have to take those right away.  And those are

18   going to be defining to this litigation.  We're going to know

19   one way or the other what -- where we are and whether I can

20   hear this case at all.  For you it's not a matter of hearing

21   the case, it's a matter of whether I'm going to sever your

22   claims and what I'm going to do about them after that.  Okay?

23   So that's where we are.

24             All right.  I am going to hear the NFL motion under

25   the LMRA 301 for preemption right away on an expedited basis,

1    and your motion to sever by Riddell on an expedited basis.

2    And I'll read you the time frames of all of this.  But

3    frankly, are there any other potential filings that I should

4    take on an expedited basis that I don't know about?

5              MR. LOCKS:  I think we still haven't addressed the

6    short form complaint.

7              THE COURT:  No, I'm going to do that in a minute.

8    Because that -- yes, that will have to be -- I think that

9    you're going to have to negotiate that with defense counsel.

10   And I'm not going to -- I'll take it in a minute but I don't

11   think -- the administrative complaint, that's in your ball

12   park, that's in your ball park, okay?  And you will decide

13   what's in there and they can complain about it.  I think we're

14   going to have to meet and confer on the other to make sure

15   that they are apprised, both defendants are apprised of what

16   you plan to put in the short complaint, and you are to -- you

17   will be also meeting and conferring with plaintiff's counsel

18   on that.  Okay?

19             There was also a motion -- is there any other

20   potential filings I don't know about?

21             MR. WEISS:  There will be more complaints filed, if

22   that's what you mean.

23             THE COURT:  Yes, well, I can't -- I'm sure, but I

24   can't stop the process because there might be more complaints.

25             MR. WEISS:  My question, Your Honor, is would you

1    entertain signing an order to allow us to put more than one

2    plaintiff on a complaint because there's some issue in the

3    Clerk's Office about that.

4             THE COURT:  I understand that.  And my decision on

5    that issue is that at this point I'm not going to make you do

6    that.  I'm not going to insist on it.  If in fact the case

7    goes forward and it's not preempted, then I will probably

8    insist that you have individual complaints.

9             But right now you do what -- the status quo is fine.

10            MR. WEISS:  So we can file more than one plaintiff

11   on a complaint?

12            THE COURT:  Yes, at this point.  At this point.  But

13   unless I hear from the clerk and I'm tarred and feathered.

14   But right now that seems to me fair, because you don't know

15   where this is going, and to insist that every plaintiff pay

16   the fee is really unfair when there is a preliminary issue

17   here.

18            MR. WEISS:  Thank you.  And the Court should also

19   know that we worked out a tolling agreement with the NFL.

20            THE COURT:  A what?

21            MR. WEISS:  A tolling agreement.

22            THE COURT:  Oh, great.  I was going to raise that as

23   a next issue.  Please, tell me about that, Mr. Weiss.

24            MR. WEISS:  The agreement relates back to February

25   24th of 2012.  And for all cases that had been filed, in the

1    event this Court doesn't have jurisdiction, the date of the

2    filing is February 24th.  For any case that has not yet been

3    filed, there's an agreement that within the next 150 days from

4    February 24th, if a complaint is filed, it relates back to

5    February 24th.

6            THE COURT:  Okay.  And you can -- if you don't mind,

7    would you please put that on ECF as a stipulation, get both

8    sides to --

9            MR. WEISS:  We are in the process, Your Honor, of

10   collecting some more signatures, and when it's completed, we

11   will put it on ECF.

12           THE COURT:  That's great.  Okay.  Is there still a

13   discovery issue preemption?

14           MR. WEISS:  Yes, there is.

15           THE COURT:  Okay.  I'm going to hear that.  Are you

16   prepared to address that today?

17           MS. WILKINSON:  We are, Your Honor.

18           THE COURT:  Okay.  All right, let me hear from --

19   who's going to --

20           MR. WEISS:  I will go first, Your Honor.

21           THE COURT:  Okay.

22           MR. WEISS:  On behalf of the plaintiffs.

23           THE COURT:  Okay.

24           MR. WEISS:  When we were before you in November, in

25   the Easterling case, we asked for leave to take discovery on

1    the issues, factual issue relating to preemption argument.  At

2    that time you deferred that, although you asked us to first

3    file with the Court what our proposed discovery was.  We did

4    it by letter, then we actually filed a document request and

5    followed it up with a motion to compel.  And there you wanted

6    to wait until the panel ruled.

7            The case is now before you, and those 28 items we

8    believe are very much bound into your determination of that

9    issue.  And that's because of the Third Circuit law that says

10   unless a claim is inextricably bound into the CBA, then it's

11   not preempted.

12           So, the requests go to the heart of that issue.  And

13   we think we need to have some discovery about that.

14           THE COURT:  Well, what do you specifically -- why

15   don't you just go through what you specifically --

16           MR. WEISS:  Okay.  So if you look at -- let me get

17   the page in our proposal.  I believe starting on the bottom of

18   page 16 in blue, discovery subjects.

19           THE COURT:  Oh, I was looking at your motion.  One

20   second.

21           MR. WEISS:  All the way down through --

22           THE COURT:  One second.  You're looking at your

23   proposed case management order, is that what you're looking

24   at?

25           MR. WEISS:  Yes, Your Honor.

1          THE COURT:  Okay.  All right.  I was looking at your

2    original -- and what page of the case management order?

3          MR. WEISS:  16.

4          THE COURT:  16.  Thank you.  Okay.

5          MR. WEISS:  And we start with the NFL at the bottom.

6    And go over to the next page and I believe it essentially

7    replicates what we asked in the document request and leave to

8    take discovery back in November.

9          THE COURT:  Well, some of these clearly go to the

10   merits, to the substantive issues.  And I am -- would consider

11   discovery relating solely to the motion to sever and the

12   expedited motions and the preemptive -- preemption motion.

13         MR. WEISS:  Right.  So we're talking now about the

14   preemption motion and you should have in front of you our

15   original request for discovery.

16         THE COURT:  Yes.  Is that what you want to deal

17   with?

18         MR. WEISS:  Yes, I --

19         THE COURT:  You want me to look at your proposed

20   order.

21         MR. WEISS:  Yes, which is essentially what we put in

22   here.  And we've already briefed it.

23         THE COURT:  Okay.  Would you like to -- and I've

24   read that.  So, it's not at my fingertips but I have read it.

25   Yes, what's your position on the discovery?

1          MS. WILKINSON:  Your Honor, as you might anticipate,

2     we don't think discovery is appropriate before the motion to

3     dismiss, the hearing that you just said which is, you are

4     considering it.

5          I'll start with that the requests they make here are

6     incredibly expansive and over-burdensome, as you pointed out.

7     And if you go through the list, it's much easier to see which

8     one relate to the merits than those that relate to the

9     supposed issue of the CBA --

10         THE COURT:  Which ones do you think relate to --

11    non-merits, just to the preemption.  That's the only issue.

12    If you think that there's anything that relates to the

13    preemption, let me know.  Do you want time to respond?

14         MS. WILKINSON:  Well, I mean, honestly it's hard for

15    me to say.  I think the first one, the structure of the NFL

16    and its relationship with its affiliates.  I'm not sure that

17    would.  That's not a really burdensome request.

18         THE COURT:  It's not a matter of burdensome.  Well,

19    it might or it might not.  I don't know, it depends what your

20    brief said.

21         MS. WILKINSON:  But all the other ones, you know,

22    whether we sponsored scientific reports, the Medical

23    Committee, the Executive Committee deliberations, any

24    misrepresentations, all meetings between the NFL officials and

25    scientific experts, none of those go to interpreting the CBA

1   or the preemption issue, and they go right to the merits.

2          MR. WEISS:  Well, we disagree -- I'm sorry.

3          THE COURT:  Tell me how it goes to anything -- how

4   does it go to the preemption issue?

5          MR. WEISS:  Because the issue is whether this was a

6   voluntary undertaking by the NFL to look into the long term

7   effects of head injuries while playing football.

8          And we believe it's not covered by the CBA.  It's --

9   you don't have to use this information to determine what the

10  CBA says.  And it really relates to an independent cause of

11  action that's not related to the CBA.

12         THE COURT:  And what would that be?  I mean, I don't

13  have your administrative complaint yet, but what would that

14  be?

15         MR. WEISS:  They fraudulently concealed and hid the

16  dangers that they knew of and didn't tell the teams of the

17  players.  And that takes it outside the CBA.

18         MS. WILKINSON:  I believe it's a very important

19  question for us, a simple question though of are the issues

20  that they are raising preempted because they are covered in

21  part of our negotiations with the NFL Players Union and the

22  CBAs.  And so it's not a matter of the merits of the case and

23  whether we did or didn't hide any information, which of course

24  we deny.  It is as a legal matter are these issues so

25  intertwined in our negotiations and in those agreement's

1    details that you would have to look to those to interpret

2    these claims.  It's clear they are almost by the discovery

3    that they're making that that's true because they're asking

4    for discussions with us and the union, they're asking for

5    discussions with the Scientific Committee.

6          So the legal issue, the first issue that we're

7    asking you to decide, doesn't really require any of the

8    discovery into the merits because it is interpreting the law

9    as we I think already convinced Judge Real and hope to

10   convince you are laid out in the case law and in the labor

11   statute where it's clear that these issues, the specific ones

12   they are raising, are under the CBA and would have to be

13   interpreted understanding the CBA.

14         THE COURT:  All right, well, my inclination is that

15   the NFL is correct, that you don't need this information.  And

16   I will stay discovery.

17         However, if there are certain items, specific items,

18   not this broad base request, and you wish to submit them

19   again, I will reconsider.  Okay?  But I am not going into the

20   substance of it because I do not believe that the substance at

21   this stage is relevant until I decide whether I can decide.

22   And that's what I really have to do under 301.

23         MR. WEISS:  So --

24         THE COURT:  Is there anything that the defense has

25   to say about this?

Colloquy                                    29

1          MR. CEREGHINI:  No, Your Honor.  I would just point

2    out that we were not a party to Easterling and no discovery

3    request has been made to us. These issues were fully briefed

4    in the Central District of California without even getting a

5    request for discovery in that venue.

6          THE COURT:  Okay, thank you.

7          MR. WEISS:  Your Honor, how much time do we have to

8    submit to you a --

9          THE COURT:  Revised?

10         MR. WEISS:  Yes.

11         THE COURT:  Okay.  We'll put it in our order.

12   Probably ten days, okay?

13         MR. WEISS:  And you want it with a brief?

14         THE COURT:  Frankly I don't really need a brief.  I

15   just need to know what you want to know.

16         MR. WEISS:  And why.

17         THE COURT:  Because I already have -- there'll be

18   some of these that you will eliminate, and I will decide

19   whether or not they are relevant.  It's unlikely that I'm

20   going to give you much discovery because I don't think that at

21   this point I have the right to hear the case yet.  And I may

22   very well, depending on what your complaint says.

23         There are situations, I have to tell you, in the

24   Third Circuit that allow a case like this to continue.  But,

25   at this point I have no reason to believe that discovery would

1    be helpful in making those arguments.  And I'm not sure, and

2    I'm not sure whether -- and I'm not sure whether there are any

3    arguments.

4              So when I figure all that out, I'll let you start

5    discovery but not before that.

6              MR. WEISS:  So let me ask this question.

7              THE COURT:  Yes.

8              MR. WEISS:  Do we have ten days from the date in

9    which we file the administrative complaint, or ten days from

10   now?

11             THE COURT:  Ten days from now.  I'm going to -- of

12   course you can -- oh, do you want it from the administrative

13   complaint?

14             MR. WEISS:  Yes, because you would need to know what

15   we're alleging --

16             THE COURT:  All right, okay, that's true.  Okay.

17   All right, I'll give you ten days from the administrative

18   complaint.

19             MR. WEISS:  Thank you, Your Honor.

20             THE COURT:  That's a good idea.  I appreciate that.

21             Okay.  Next.  As far as your request, conference

22   calls, I'm not going to have routine conference calls until I

23   decide that this case belongs before me, and until I've

24   decided the expedited discovery.  If you request, if you

25   request conference calls, I will in fact -- I may very well

1    give you one, but -- and liaison counsel will let me know or

2    liaison counsel here will let me know whether or not that is

3    going to be requested.

4          All right.  There are some -- I'm going to give you

5    the following dates and I'm going to have these out in an

6    order.

7          To file the master administrative complaint, Friday,

8    June 8th is when it's due.  Okay?  And an agreed upon short

9    form complaint should be filed at the same time.  So, I'm

10   going to have you work on that.

11         Ten days after that, you'll have ten days, and I'll

12   have to look and make sure it's not a weekend, but

13   approximately ten days to ask for new discovery.  And you have

14   ten days in which to respond.  Okay?

15         I'm going to give you 60 days -- give the NFL and

16   the Riddell defendants -- I assume you represent all of them,

17   is that correct?

18         MR. CEREGHINI:  That's correct, Your Honor.

19         THE COURT:  Okay.  I'm going to give you 60 days to

20   file a motion to dismiss, and that will be August 9th, 2012.

21   I don't want -- I have a rule, no associate stays up overnight

22   over any of my orders.  So, if that's the situation, let me

23   know and you can have a day -- I mean, I'm not going to be

24   harsh about this, but --

25         MS. WILKINSON:  You've made some people in the back

Colloquy                                            32

1    of the room feel very happy, Your Honor.

2                THE COURT:  Oh, good.  I'm glad I made someone

3    happy.

4                MR. WAGNER:  Does that apply to partners, Your

5    Honor?

6                THE COURT:  What?

7                MR. WAGNER:  Does that apply to partners?

8                THE COURT:  Yes, okay -- no.

9         (Laughter)

10               THE COURT:  I'm glad you asked, Mr. Wagner.  No.

11               Okay.  Then I'm going to file a response to it by

12   October 10th, 2012, which would give you 60 days or

13   approximately that.  I don't like 60 days, I don't have enough

14   fingers, so I like dates certain, so I know what the date is.

15   So if you're going to propose something make sure that it's a

16   date certain and that I -- I actually have ten fingers and ten

17   toes, but still, if it's more than 20 days, make sure you let

18   me know what the date is.

19               All right, and Monday the 26th for a reply brief.

20   Okay?  I'm sorry, Monday, November 26th for a reply brief.

21   That's 45 days.  And I'll issue an order now on these dates.

22   Okay, John, you have them down?

23               I'm also going to have some restrictions on the

24   length of the briefs.  I'm going to have a motion to dismiss,

25   you have 30 pages, response you have 30 days, and a reply 15

1    pages.  If you come crying to me, I might give you some more,

2    but I mean, you should be able to say everything you want to

3    say in that -- in a short brief if you write well.

4              Okay.  Other dates I'm going to schedule later, and

5    those dates will be if in fact the case stays with me, and

6    your case might stay severed, future status conferences,

7    commencement of fact discovery, timetable for fact discovery,

8    timetable for expert discovery and briefing schedules for

9    class certification and Daubert motions and everything else.

10             And there may be some claims that are preempted and

11   some claims that are not preempted, so it depends on what the

12   administrative complaint says.

13             And I think that's about it.  Is there anyone else

14   that has anything else that they want?  Yes?

15             MR. LOCKS:  Your Honor.

16             THE COURT:  Yes.

17             MR. LOCKS:  I think that there are certain things

18   that haven't been addressed yet that were on the agenda that

19   we proposed.  Specifically --

20             THE COURT:  That's true.

21             MR. LOCKS:  -- we've asked for certain types of

22   dealing with motions on an expedited basis.

23             THE COURT:  That's the motion -- I'm expediting

24   those motions, that's exactly what I'm doing.  I'm doing sever

25   and I'm doing --

Colloquy                                                                    34

1          MR. LOCKS:  No, no, no, let me be a little more

2    expansive.

3          THE COURT:  Yes.

4          MR. LOCKS:  And it deals with individual discovery

5    and preservation of testimony and facts for certain plaintiffs

6    who may be, shall I use the word, in extremis.  Unfortunately,

7    as you know, Mr. Easterling committed suicide last week.

8    There are other seriously injured players whose testimony

9    should be preserved as soon as possible.

10         THE COURT:  Well, I assume --

11         MR. LOCKS:  In addition --

12         THE COURT:  But your side is going to be able to

13   preserve that testimony.

14         MR. LOCKS:  Well --

15         THE COURT:  You don't need me --

16         MR. LOCKS:  We need the ability to start taking

17   discovery or depositions to preserve, and then the other issue

18   is the preservation of documents, particularly with the years

19   back of the NFL as to spoilage -- I always say it incorrectly

20   -- spoliation issues.

21         There are obviously preservation of document records

22   and information that may and would be applicable in individual

23   cases as well as across the board in part of the perhaps

24   generic things.

25         THE COURT:  Did you discuss this with opposing

 1    counsel?

 2              MR. LOCKS:  We have not gotten to that point.  There

 3    was a certain amount of discussions about it, but it was -- no

 4    one's agreed yet on the specifics to my --

 5              THE COURT:  Well, I'm going to ask you to meet and

 6    confer on that.  There's no reason for you not to keep

 7    records.  And there isn't -- and you want -- I'm not sure I

 8    have authority, and I'll have to canvass the law on this,

 9    authority to even set up depositions at this stage.

10              If I do agree to set up depositions, they will be

11    for attorneys' eyes only and of course I just may not have any

12    right.

13              The other thing is whether or not we're going to

14    need those even if you go to -- even if you go to arbitration,

15    whether you're going to need those.

16              So it may be that I'd be willing.  What's your

17    position on that, Ms. Wilkinson?

18              MS. WILKINSON:  Your Honor, I think it's almost

19    impossible.  If we haven't gotten their complaint, and we

20    haven't gotten discovery, how would we actually depose them in

21    a way that would be meaningful to the case?

22              This is not, sadly, a unique issue to these kind of

23    cases, as you know.  In personal injury cases and product

24    liability cases, even on this scale, people unfortunately pass

25    away during the time period of the litigation.  And I'm not

Colloquy                                    36

1    aware of any example they've given us where this has been done

2    before the master complaint has been filed, let alone before

3    the motion to dismiss --

4              THE COURT:  Well, I think it's premature, and I'm

5    going to allow you to make that motion after I know what the

6    case is about, because I don't know what the case is about.

7              Okay.  Yes?

8              MR. CEREGHINI:  Yes, Your Honor, just I want to

9    clarify the dates that you gave us for the motion to dismiss,

10   would be the same dates for the motion to sever?

11             THE COURT:  Oh, I'm going to send out an order so

12   you'll get them.

13             MR. CEREGHINI:  Okay.  But it's the same date, dates

14   for the motion to sever?

15             THE COURT:  It is, it is.

16             MR. CEREGHINI:  Okay, thank you.

17             THE COURT:  Okay.  Is there anything else?

18             All right, I'm going to ask counsel, the Executive

19   Committee and counsel for defense -- is there anyone here from

20   the NFL?

21             MS. WILKINSON:  Yes, Your Honor, we have -- our

22   clients are right here.

23             THE COURT:  Okay.  All right, I'm going to ask them

24   to come back with me too.  And are your clients here?

25             MR. CEREGHINI:  Yes, Your Honor.

1                THE COURT:  All right, I'm going to ask them --

2                MR. MERRIGAN:  Good morning, Your Honor.

3                THE COURT:  I'd like to meet them.  Okay.

4                But the whole Executive Committee, the liaison

5        counsel and the counsel for defendants, and I want to meet you

6        just a few minutes in my chambers.

7                Thank you, Court is adjourned.

8                MR. WEISS:  Thank you, Your Honor.

9                ALL COUNSEL:  Thank you, Your Honor.

10           (Proceedings concluded at 11:19 a.m.)

11                               *  *  *  *

38

1

2

3                        C E R T I F I C A T I O N

4

5          I, Sandra Carbonaro, court approved transcriber,

6   certify that the foregoing is a correct transcript from the

7   official electronic sound recording of the proceedings in the

8   above-entitled matter.

9

10

11       Sandra              Digitally signed by Sandra
                             Carbonaro
12       Carbonaro           DN  CN = Sandra
                             Carbonaro, C = US
                             Date  2012 05 03 13 47 13 -
13       _____     04'00'

14   SANDRA CARBONARO

15

16   Diana Doman Transcribing          _____

17   AGENCY                            DATE