# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

_____
                                               :
IN RE:  NATIONAL FOOTBALL          :           No. 12-md-2323-AB
LEAGUE PLAYERS' CONCUSSION     :
INJURY LITIGATION                         :           MDL No. 2323
                                               :
_____   :
                                               :
THIS DOCUMENT RELATES TO      :
ALL ACTIONS                                 :
                                               :
_____

## REPLY BRIEF IN SUPPORT OF RIDDELL DEFENDANTS' MOTION TO DISMISS BASED ON LMRA § 301 PREEMPTION

Paul G. Cereghini                             Robert L. Wise
Thomas C. Howard                           Eden M. Darrell
BOWMAN AND BROOKE LLP           BOWMAN AND BROOKE LLP
2901 N. Central Avenue, Suite 1600     1111 E. Main Street, Suite 2100
Phoenix, AZ  85012                          Richmond, VA 23219
Telephone:  (602) 643-2300               Telephone:  (804) 649-8200
paul.cereghini@bowmanandbrooke.com     rob.wise@bowmanandbrooke.com
thomas.howard@bowmanandbrooke.com     eden.darrell@bowmanandbrooke.com

Thomas P. Wagner
Mary C. Doherty
MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN
2000 Market St., Suite 2300
Philadelphia, PA 19103
tpwagner@mdwcg.com
mcdoherty@mdwcg.com

Attorneys for Defendants RIDDELL, INC.; ALL AMERICAN SPORTS CORPORATION; RIDDELL SPORTS GROUP, INC.; EASTON-BELL SPORTS, INC.; EASTON-BELL SPORTS, LLC; EB SPORTS CORP.; and RBG HOLDINGS CORP

## TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................1

ARGUMENT ....................................................................................................................2

I.  Preemption is properly before the court........................................................................2

II.  Plaintiffs' attempts to deny LMRA § 301 preemption fail..........................................3

   A.  Plaintiffs' claims require interpretation of the CBAs..............................................3

   B.  A properly performed "case-by-case" analysis dictates preemption of the
      claims against the Riddell Defendants. ................................................................8

III.  Plaintiffs fail to distinguish effectively the Riddell Defendants' cases....................12

IV.  Plaintiffs' argument concerning pre-1968 players and "gap" players is a non-issue. ..............14

V.  Plaintiffs have failed to support their vague request for leave to amend...................14

CONCLUSION................................................................................................................15

TABLE OF AUTHORITIES

Cases

*Allis-Chalmers Corp. v. Lueck,*
    471 U.S. 202 (1985).............................................................................................. passim

*Caterpillar, Inc. v. Shears,*
    911 S.W.2d 379 (Tex. 1995).......................................................................................... 7

*DeCoe v. Gen. Motors Corp.,*
    32 F.3d 212 (6th Cir. 1994) ........................................................................................ 11

*DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.,*
    No. 10-CV-1341 (JFB)(ETB), 2012 WL 748760 (E.D.N.Y. Mar. 7, 2012) ....................... 7, 15

*Duerson v. Nat'l Football League,*
    No. 12 C 2513, 2012 WL 1658353, at *4-6 (N.D. Ill. May 11, 2012) ..................... 10, 13, 14

*Givens v. Tenn. Football Inc.,*
    684 F. Supp. 2d 985 (M.D. Tenn. 2010)....................................................................... 13

*Henderson v. Merck & Co., Inc.,*
    998 F. Supp. 532 (E.D. Pa. 1998) ................................................................................. 4

*John v. Hittle Serv., Inc.,*
    219 Kan. 627, 549 P.2d 1383 (1976) ............................................................................ 7

*Johnson v. Auto Handling Corp.,*
    857 F. Supp. 848 (E.D. Mo. 2012)............................................................................... 13

*Jones v. ABN Amro Mortg. Grp., Inc.,*
    606 F.3d 119 (3d Cir. 2010)....................................................................................... 15

*Kline v. Sec. Guards, Inc.,*
    386 F.3d 246 (3d Cir. 2004)............................................................................... 3, 4, 12

*Lagueux v. Union Carbide Corp.,*
    861 So.2d 87 (Fla. App. 2003) .................................................................................... 11

*Maxwell v. Nat'l Football League*
    No. 2:11-cv-98394-R –MAN, Order at 1-2 (C.D. Cal. Dec. 8, 2011) ............................... 10

*McIntyre v. Balentine,*
    833 S.W. 2d 52 (Tenn. 1992)...................................................................................... 11

*Powers v. Cottrell*, Inc.,
    No. 3-11-1209, 2012 WL 1393044 (M.D. Tenn. Apr. 23, 2012) ................................ 13, 14

*Rycocline Prods., Inc. v. C&W Unlimited,*
    109 F.3d 883 (3d Cir. 1997)......................................................................................... 2

*Stringer v. Nat'l Football League,*
    474 F. Supp. 2d 894 (S.D. Ohio 2007) ........................................................................ 8, 9

*Taylor v. John Crane Inc.,*
    113 Cal. App. 4th 1063, 6 Cal. Rptr. 695 (2003)............................................................ 11

*Trans Penn Wax Corp. v. McCandless*
   50 F.3d 217 (3d Cir. 1995)........................................................................................... 5

*Violas v. Gen. Motors Corp.,*
   170 F.3d 367 (3d Cir. 1999)....................................................................................... 4

*Wolf v. Rawlings Sporting Goods Co., Inc.*
   2010 U.S. Dist. LEXIS 116294 (S.D.N.Y. Oct. 26, 2010) ...................................... 12

*Zinser v. Accufix Research Inst., Inc.,*
   253 F. 3d 1180 (9th Cir. 2001) .................................................................................. 9


Statutes

42 Pa. Cons. Stat. § 7102 (2011) ................................................................................ 11

F.R.C.P. 12(b)(6) ......................................................................................................... 2

N.Y. C.P.L.R. 1601 ..................................................................................................... 11

## INTRODUCTION

Plaintiffs' various oppositions reveal their claims against the Riddell Defendants to be primarily about one thing—an alleged negligent failure to provide medical warnings to former NFL players about the purported long-term risk of brain damage from blows to the head while playing football.  (*See* Mem. of Pls. in Opp. to Defs.' Nat'l Football League & NFL Props LLC's Mot. to Dismiss the Am. Master Admin. Long-Form Compl. (ECF No. 4130) ("Pls.' NFL Opp.") at 1; Mem. of Pls. in Opp. to Riddell Defs.' Mot. to Sever (ECF No. 4137) (Pls.' Severance Opp.") at 7 n.2 ("Here, the defect is clearly and unquestionably a common one, i.e., Riddell's uniform failure to warn of long-term effects of repetitive head trauma while wearing Riddell helmets."); *see also* Am. Master Admin. Long-Form Compl. ("AMAC") (ECF No. 2642) ¶¶ 2-3, 389-421.)  Yet, for decades, Collective Bargaining Agreements ("CBAs") have established and defined various responsibilities and expectations concerning Plaintiffs' medical knowledge, information, supervision, diagnosis, treatment, and care.  As a result, Plaintiffs' claims against the Riddell Defendants cannot be adjudicated without substantial interpretation of those CBAs.

Plaintiffs' claims require far more than mere "consultation" of the CBAs, as Plaintiffs conclusorily argue.  Rather, their claims against the Riddell Defendants require reasonableness, degree-of-care, product liability, causation, punitive damages, and third-party liability analyses that are inextricably intertwined with at least 17 separate CBA provisions as explained in the Riddell Defendants' motion, but largely ignored in Plaintiffs' opposition.  Indeed, none of Plaintiffs' claims can be resolved without substantive interpretation of multiple CBA provisions.

One obvious and unavoidable "interpretive dispute" concerns the extent of various duties and degrees of care imposed on NFL Club physicians and trainers under the CBAs, which in turn will significantly impact the "degree-of-care" analysis required to adjudicate Plaintiffs' negligence and warnings-based claims.  Indeed, this is exactly the reason why several other

courts—including transferor courts—concluded that claims like Plaintiffs' negligence-based actions against the NFL Defendants were preempted.  There is no meaningful distinction between the NFL and Riddell Defendants when it comes to the "degree-of-care" analysis implicated by Plaintiffs' similar negligence and warnings-based claims.  Yet, in their opposition to the Riddell Defendants' motion, Plaintiffs ignore the issue altogether, never once citing *Duerson* or *Maxwell*, never once mentioning "degree of care," and never once claiming that this analysis is flawed or does not apply here.  Plaintiffs' total lack of meaningful response on this issue with regard to the Riddell Defendants is telling and impacts all of Plaintiffs' claims.[1]

ARGUMENT

I.  <u>Preemption is properly before the Court</u>.

The issue of LMRA § 301 preemption is properly before the Court for consideration pursuant to Rule 12(b)(6).  While Plaintiffs cite *Rycocline Prods., Inc. v. C&W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997), for the proposition that a 12(b)(6) motion "is not the 'proper vehicle' for adjudicating" an affirmative defense of preemption "unless it is 'apparent on the face of the complaint,'" they never argue that the issue is not properly determined on the face of their AMAC and must instead be considered as a motion for summary judgment.  (*See* Mem. of Pls. in Opp. to Riddell Defs.' Mot. to Dismiss Based on LMRA § 301 Preemption ("Pls.' Opp.") (ECF No. 4133) at 2.)  Moreover, Plaintiffs have been aware for months that the issue of LMRA § 301 preemption would be presented by motion to dismiss—all the while, they have never objected.

---

[1] Plaintiffs base all of their claims against the Riddell Defendants on negligence and failure-to-warn allegations.  Apart from Plaintiffs' candid statement that "the defect" they allege is warnings-based, Plaintiffs' product liability design and manufacturing defect claims also rely on express negligence and warnings allegations.  (AMAC ¶¶ 397-421.) Moreover, Plaintiffs are not "ordinary" product consumers.  Rather, they are a relatively small group of retired elite athletes who worked in a unionized work place with specialized and unique rules, medical care, return-to-play guidelines, and oversight of the equipment used, all of which were governed by CBAs. Therefore, under any theory Plaintiffs might pursue, CBAs are central to the environment in which they worked and the circumstances under which they sustained their alleged injuries.

(*See* Case Mgmt. Order ("CMO") No. 2 (ECF No. 64) at 3, § III (setting schedule for briefing preemption issue by motion to dismiss); *see also* 4/25/12 Hr'g Tr. (ECF No. 71) (discussing schedule for briefing preemption on motion to dismiss).)

II.   Plaintiffs' attempts to deny LMRA § 301 preemption fail.

Plaintiffs advance mainly two arguments against LMRA § 301 preemption.  (Pls.' Opp. at 2-7.)  First, they attempt to argue that the Third Circuit has adopted some different standard for finding preemption than that of the Supreme Court when it comes to analyzing whether claims may require a court to interpret or construe CBA provisions.  (*Id.* at 2-4.)  Second, they argue that *Stringer v. National Football League* already considered "and rejected" the "identical" preemption issues before this Court.  (*Id.* at 4-7.)  Neither argument is correct.

A.   Plaintiffs' claims require interpretation of the CBAs.

While Plaintiffs acknowledge generally the same controlling Supreme Court precedent the Riddell Defendants cited, they nonetheless primarily base their opposition on an erroneous notion that the Third Circuit's standard for determining whether a claim may require interpretation or construction of a CBA differs from the Supreme Court's.   (Pls.' Opp. at 2-4 (discussing *Kline v. Sec. Guards, Inc.*, 386 F.3d 246 (3d Cir. 2004)).)  Contrary to Plaintiffs' argument, neither  *Kline* nor any other Third Circuit precedent purported to alter the Supreme Court's analysis established in *Allis-Chalmers* and the like.  Rather, both the Supreme Court and the Third Circuit after it have established that LMRA § 301 preemption properly lies where the plaintiff's claims may require interpretation—rather than mere consultation—of a CBA.

Specifically, after reviewing largely the same precedent the Riddell Defendants cited and discussed, *Kline* confirmed that the proper inquiry in resolving preemption includes determining whether the plaintiff's "state law claims require any *interpretation* of a provision of a CBA." 386 F.3d at 251-56 (emphasis in original).  This is entirely consistent with the law the Riddell

Defendants cited.  *E.g.*, *Violas v. Gen. Motors Corp.*, 170 F.3d 367, 372-76 (3d Cir. 1999) (discussing at length Supreme Court and Third Circuit precedent on LMRA § 301 preemption); *Henderson v. Merck & Co., Inc.*, 998 F. Supp. 532, 536-37 (E.D. Pa. 1998) (Brody, J.) (same). Thus, Plaintiffs fail to show that the applicable standard for resolving preemption is anything other than what the Riddell Defendants explained.  *E.g.*, *Violas*, 170 F.3d at 372-73 ("Accordingly, the Court has held that state laws that might produce differing interpretations of the parties' obligations under a collective bargaining agreement are preempted.").

To the extent Plaintiffs attempt to argue that *Kline* is factually analogous and controlling of the specific outcome here, such reliance is misplaced for two reasons.

*First*, the Supreme Court has explained that preemption requires a case-by-case inquiry. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).  Thus, the result in *Kline*, decided on materially distinguishable facts and circumstances, cannot simply be mechanically applied here.

*Second*, the *Kline* court concluded that those defendants failed to show the plaintiffs' claims would require anything more than mere consultation of the CBAs because the defendants failed to "point to any specific provisions of [the applicable CBAs] that must be interpreted" in resolving those claims.  386 F.3d at 256.  Faced with the absence of any specific provisions requiring interpretation, the *Kline* court noted, "the mere fact that we must look at the CBA in order to determine that it is silent on any issue relevant to [the plaintiff's] state claims does not mean that we have 'interpreted' the CBA."  *Id.*  Here, unlike in *Kline*, the Riddell Defendants have pointed to 17 distinct CBA provisions that require interpretation based on Plaintiffs' claims,

and they have explained in detail why they must be interpreted.[2]  (Br. in Supp. of Riddell Defs.'

Mot. to Dismiss Based on LMRA § 301 Preemption ("Riddell Defs.' Br."). at 7-9.)

Plaintiffs' argument that there is no "interpretive dispute" here overlooks obvious and important implications of the interpretation of the referenced CBA provisions, which define the setting in which Plaintiffs' claimed injuries occurred and are central to identifying duties and calibrating degrees of care owed by the Clubs, the NFL, team physicians and trainers, the players themselves, and their union.  And since the identification and calibration of these duties and degrees of care may substantially limit or even fully eliminate any liability on the part of the Riddell Defendants, not only are interpretations necessary, but disputes over those CBA interpretations are inevitable.

For example, the Riddell Defendants have argued that the provisions in all of the CBAs since 1982 requiring licensed Club physicians and trainers necessarily eliminate—or, at a minimum, drastically reduce—the degree of care the Riddell Defendants allegedly owed to provide medical advice and warnings to the player-Plaintiffs of the purported long-term risks of brain injury from concussions and sub-concussive collisions.  (*See, e.g.*, Riddell Defs.' Br. at 22-25.)  By arguing that there can be no preemption because there is supposedly no "interpretive dispute," including as to the Club physicians and trainers provisions, Plaintiffs would necessarily have to concede the Riddell Defendants' interpretation of those provisions.   But, surely, Plaintiffs do not concede that interpretation.  And it is exactly because they do not that there is an "interpretive dispute" about the proper interpretation of those provisions, as well as many more.

---

[2] Plaintiffs' other cited cases are likewise materially factually distinguishable, such as *Trans Penn Wax Corp. v. McCandless*, in which the defendant, unlike the Riddell Defendants, failed to explain how the claims against it were substantially dependent on analysis or interpretation of the CBA.  50 F.3d 217, 231(3d Cir. 1995).

Other "interpretive disputes" are obvious.  For example, if the obligation of Club medical staff to make "all determinations of recovery time for major and minor injuries"[3] is interpreted to include determinations about the medical risks of additional head impacts, then the Riddell Defendants' alleged duties, if any, and any degree of care owed would be reduced.  Similarly, if the provisions for "board-certified orthopedic surgeon(s),"[4] "full-time head trainers and assistant trainers,"[5] sideline "physician(s),"[6] "club physician(s),"[7] "surgeon(s),"[8] and club "medical staff"[9] are interpreted to require Clubs to provide medical professionals with knowledge of the available medical information and warnings Plaintiffs say the Riddell Defendants should have given them, then the duty, if any, and any degree of care owed by these defendants would be similarly reduced or even eliminated.  Likewise, if evaluation of potential head injury risk is interpreted to be part of the CBA-mandated "standardized minimum preseason physical examination" and "post-season physical examination,"[10] then the duty, if any, and any degree of care owed by the Riddell Defendants to warn of such risks would be correspondingly impacted.  Moreover, beyond the implications of these interpretations on the existence of legal duties and required degrees of care, in each of these examples, the necessary CBA interpretations would significantly impact determination of causation and third-party comparative fault.

In this manner, there are necessary interpretations and unavoidable "interpretive disputes" with each of the 17 referenced CBA provisions.  With regard to the equipment-related provisions in various CBAs, for example, if the mandate to the Joint Committee on Player Safety

---

[3] *See. e.g.*, 1980 Supp. to NFL Const. & Bylaws Art. XVII.
[4] 1982 CBA Art. XXXI, § 1; 1993 CBA Art. XLIV, § 1; 2006 CBA Art. XLIV, § 1.
[5] 1982 CBA Art. XXXI, § 2; 1993 CBA Art. XLIV, § 2; 2006 CBA Art. XLIV, § 2.
[6] *See, e.g.*, 1969 NFL & Am. Football League Const. & Bylaws Art. XIX, § 19.5.
[7] 1993 CBA Art. XLIV, § 1; 2006 CBA Art. XLIV, § 1; *see also* 1982 CBA Art. XXI, § 1.
[8] 1982 CBA Art. XXXI, § 4; 1993 CBA Art. XLIV, § 4; 2006 CBA Art. XLIV, § 4.
[9] *See, e.g.,* 1980 Supp. to NFL Const. & Bylaws Art. XVII.
[10] 1982 CBA Art. XXI § 5; *see also* 1993 CBA Art. XLIV, § 5; 2006 CBA Art. XLIV, § 5.

and Welfare to perform "a review of all current materials on the player safety aspects of player equipment"[11] is interpreted to obligate the Joint Committee and its players' association members to obtain and review the same information that Plaintiffs claim the Riddell Defendants should have provided to them, this would obviously affect determinations of liability,[12] causation, and third-party fault under the various states' laws applicable to Plaintiffs' claims.  Similarly, the interpretation of the Joint Committee's ability to "employ outside parties"[13] to evaluate equipment and recommend changes to "playing rules"[14] will also impact these same determinations.

Finally, Plaintiffs' argument that ruling on preemption now would be "premature" because it is purportedly "unclear" as yet whether there is any "interpretive dispute" and whether CBA interpretation is required is likewise invalid, and their cited case law is unavailing. (*See* Pls.' Opp. at 2 (citing *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, No. 10-CV-1341 (JFB)(ETB), 2012 WL 748760 (E.D.N.Y. Mar. 7, 2012)).)  Part of the reason it was unclear to the *DeSilva* court whether CBA interpretation might be required there was because those defendants failed to append the relevant CBAs and neglected to direct the court to the specific pertinent provisions.  2012 WL 748760, at *11.  Also, *DeSilva* relied on a string of cases in which courts deferred ruling on preemption after noting that it was not clear which plaintiffs in

---

[11] 1977 CBA Art. XI, § 7; 1982 CBA Art. XI, § 7.

[12] For example, many states do not recognize any duty to warn of known risks. *See, e.g.*, *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 382, 383 (Tex. 1995) ("[T]he duty to warn . . . applies only to hazards of which the consumer is unaware."); *John v. Hittle Serv., Inc.*, 219 Kan. 627, 639-40, 549 P.2d 1383 (1976) ("There is no duty to warn of dangers actually known to the user of a product.") (citation omitted).

[13] 1970 CBA Art. V, § 5 ("Employment of Outside Consultants "); *see also* 1977 CBA Art. XI, § 5 ("Consultants") (generally same); 1982 CBA Art. XI, § 5 ("Consultants") (same); 1993 CBA Art. XIII, § 1(b) (same); 2002 CBA Art. XIII, § 1(b) (same); 2006 CBA Art. XII, § 1(b) (same).

[14] *See, e.g.*, 1984 NFL Constitution and Bylaws Art. XI, § 11.2; 1982 CBA Art. XI, § 9; 1993 CBA Art. XIII, § 1(c); 2006 CBA Art. XIII, § 1(c).

those cases were covered by CBAs—which is not an issue here—or where it was not clear which bargaining units were implicated "and which CBA or CBAs apply"—which is also not an issue here.  *Id.* at *12.  Here, the covered players are all identifiable, and the CBAs have all been provided and their relevant provisions identified.

The parties have also known and agreed since April 2012—roughly eight months ago—that this would be the time to address motions to dismiss based on preemption.  (*See, e.g.*, CMO No. 2 at 3, § III.)  When this schedule was set, Plaintiffs specifically requested—and the Court granted them—the ability to request discovery related to the preemption motions.  (CMO No. 2 at 3.)  Yet, Plaintiffs never requested any such discovery.  In addition, many of the same arguments on preemption have been in play for over a year, based on the Riddell Defendants' filings in *Maxwell*, *Pear*, and *Barnes*.  Thus, this issue is appropriately mature for decision.

   B.   A properly performed "case-by-case" analysis dictates preemption of the claims against the Riddell Defendants.

Despite the requirement to examine preemption under § 301 on a "case-by-case" basis, *Allis-Chalmers*, 471 U.S. at 220, Plaintiffs nonetheless argue that the result here is already decided because of the outcome in another case, *Stringer v. National Football League*,  which involved different types of claims, distinct legal theories, and only a small subset of the CBAs and CBA provisions implicated by Plaintiffs' allegations here.  (*See* Pls.' Opp. at 4-7.)  Unlike the present litigation in which over 800 players assert a broad scope of warnings-based allegations against the Riddell Defendants, *Stringer* involved the estate of only one player who played under only a limited subset of CBAs and died of heat exhaustion during an  NFL training camp.  *See generally* 474 F. Supp. 2d 894 (S.D. Ohio 2007).

Moreover, the claims in *Stringer* were primarily focused on a specific product defect, namely a claim that the deceased player's helmet and shoulder pads were defectively designed or

manufactured "because they act as an insulating 'blanket,' preventing evaporation and heat dissipation," *id.* at 899, as opposed to here, where Plaintiffs' claims are primarily—if not exclusively—warnings-based.  (*See, e.g.*, Pls.' Severance Opp. at 7 n.2 ("Here, *the* defect is clearly and unequivocally a common one, *i.e.*, Riddell's failure to warn of long-term effects of repetitive head trauma while wearing Riddell helmets." (emphasis added)).)

Plaintiffs' blanket reliance on *Stringer* also conflicts with their own acknowledgement that the Riddell Defendants raise preemption arguments based on CBA provisions never even considered in *Stringer*.  (Pls.' Opp. at 6.)  For example, *Stringer* did not address the impact of the Club trainers and physicians provisions on the reasonableness and degree-of-care analyses implicated by Plaintiffs' claims here.  Nor did *Stringer*  discuss the entanglement of the CBA Joint Committee provisions with Plaintiffs' specific allegation that the Riddell Defendants failed "to provide necessary and adequate information and adequate safety and instructional materials and warnings of the risk and means available to reduce and/or minimize the risk of concussive brain injuries while playing football."  (*See* Riddell Defs.' Br. at 22-30.)  Indeed, *Stringer* did not address any of the specific claims that Plaintiffs make here or the manner in which the CBA provisions cited by the Riddell Defendants are intertwined with those claims.[15]

The material factual differences between this case and *Stringer* establish that the case-specific preemption arguments the Riddell Defendants present here were not and could not have been "litigated previously," much less "rejected" by the *Stringer* court, as Plaintiffs assert.  (Pls.'

---

[15] Further, in *Stringer*, the court had to look only to Minnesota law.  Here, as more fully explained in the Riddell Defendants' severance motion, choice-of-law determinations must be made on a player-by-player basis.  Once that is done, dozens of states' different laws may apply.  *See Zinser v. Accufix Research Inst., Inc.*, 253 F. 3d 1180, 1188 (9th Cir. 2001) (recognizing that the laws of negligence and products liability "all differ in some respects from state to state").

Opp. at 4.)  As a result, Plaintiffs' assertion that the arguments in *Stringer* "are virtually identical and indistinguishable from those in this case" is simply incorrect.  (*See id.* at 5.)

At the same time that Plaintiffs argue for the Court to eschew the required case-by-case inquiry, they wholly ignore the "degree of care" analysis and reasoning upon which the *Stringer*, *Maxwell/Pear/Barnes*, and *Duerson* courts found preemption of various claims against the NFL Defendants.  Indeed, Plaintiffs make no attempt to distinguish the degree-of-care analysis necessary as to their claims against the Riddell Defendants with the comparable analysis repeatedly applied to similar claims against the NFL Defendants.  In fact, Plaintiffs do not even mention or cite *Maxwell/Pear/Barnes* or *Duerson* at all.  Rather, their 12-page opposition brief simply ignores these issues as well as many others set forth in the Riddell Defendants' filings.[16]

Plaintiffs argue that the Riddell Defendants "labored mightily" to find CBA provisions that must be "interpreted."  (Pls.' Opp. at 6.)  Yet, they never address any of those specific provisions or even try to explain with any substance why those provisions do not require interpretation in resolving the parties' claims and defenses.  Instead, Plaintiffs offer only the conclusory assertion that those other provisions are "tangential, at best," with no discussion whatsoever.  (*Id.*)  Indeed, Plaintiffs offer no substantive, non-conclusory explanation of the various specific ways in which the Riddell Defendants have shown Plaintiffs' claims implicate and require interpretation of the CBAs across a host of issues, including not only as to liability and the negligence or reasonableness of the Riddell Defendants' conduct, but also with regard to issues of causation, punitive damages, and third-party fault.  (Riddell Defs.' Br. at 22-33); *cf.*

---

[16] Plaintiffs also fail to address or rebut the impact of the interwoven nature of their claims against both the Riddell Defendants and the NFL Defendants, including the negligence claims, which transferor courts have already determined to be preempted.  (Riddell Defs.' Br. at 33-34); *see also Maxwell*, No. 2:11-cv-98394-R –MAN, Order at 1-2 (C.D. Cal. Dec. 8, 2011), ECF No. 58; *Duerson*, No. 12 C 2513, 2012 WL 1658353, at *4-6 (N.D. Ill. May 11, 2012).

*DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 219-20 (6th Cir. 1994) (affirming dismissal of plaintiff's intentional infliction of emotional distress claim because "reference must be made to the CBA in order to determine whether the defendants acted outrageously")

On the issue of third-party fault in particular, while Plaintiffs ignore that issue altogether in their response to the Riddell Defendants, they mention it briefly in response to the NFL, arguing there that third-party fault, such as against the Club physicians, does not implicate preemption but rather only gives rise to a separate third-party contribution action. (Pls.' NFL Opp. at 16-17.) Their argument is flawed for several reasons.

*First*, there does not have to be an actionable third-party contribution claim for analysis of the duties and obligations of those third parties to be relevant for preemption. Indeed, neither *Stringer* nor *Duerson*, for example, required an actionable third-party contribution claim against the Club trainers or physicians to support preemption based on the "degree of care" analysis with respect to those Club physician and trainer CBA provisions.

*Second*, Plaintiffs rely exclusively on Pennsylvania law on joint and several liability. (*Id.*) Yet, they offer no basis whatsoever to assert that Pennsylvania law would apply to all Plaintiffs' claims against the Riddell Defendants, and it certainly would not.[17] Moreover, even if a showing of actionable non-party fault were required to support preemption (which it is not), under the laws of many jurisdictions—such as California, Florida, New York, Tennessee, and others[18]—non-party fault would be a jury issue and a question on the verdict form. Thus, to

---

[17] Plaintiffs neglect to mention that Pennsylvania statutorily amended its law on comparative negligence law last year to remove joint liability. *See* 42 Pa. Cons. Stat. § 7102 (2011).

[18] *See, e.g.*, *Taylor v. John Crane Inc.*, 113 Cal. App. 4th 1063, 1071, 6 Cal. Rptr. 695, 702 (2003) (recognizing that a jury may allocate fault of a non-party for purposes of determining a defendant's proportionate share of responsibility); *Lagueux v. Union Carbide Corp.*, 861 So.2d 87, 88 (Fla. App. 2003) (same); *McIntyre v. Balentine*, 833 S.W. 2d 52, 58 (Tenn. 1992) (same); N.Y. C.P.L.R. 1601 (providing for apportionment of fault to non-parties).

properly assess any alleged liability under those jurisdictions' laws, the jury would have to interpret the CBAs to determine, for example, what duties the Club physicians and trainers owed and whether any fault on their part should reduce or eliminate fault on the part of the NFL or Riddell Defendants.

III. Plaintiffs fail to distinguish effectively the Riddell Defendants' cases.

Plaintiffs' attempt to distinguish and attack the Riddell Defendants' case law fails largely because Plaintiffs misunderstand the purpose for which the Riddell Defendants cited those cases. (*See* Pls.' Opp. at 7-10.)   The cases Plaintiffs attack go to the point that, where the court determines a CBA preempts a claim, dismissal is the appropriate result, including as to a non-CBA-signatory defendant.  (Riddell Defs.' Br. at 13-15.)  The cases Plaintiffs counter with—"*Caterpillar*, *Berda*, *Trans Penn Wax Corp.*, [and] *Kline*"—all dealt primarily with the preliminary issue of whether the plaintiffs' claims there were completely preempted so as to support removal jurisdiction, and not with what would happen to the cases upon a determination of preemption.  (*See* Pls.' Opp. at 7.)  None of those cases Plaintiffs refer to undermine the Riddell Defendants' cited cases or contradict the point the Riddell Defendants made with them.

Also, while Plaintiffs are correct that *Wolf v. Rawlings Sporting Goods Co., Inc.*, No. 10 Civ. 3713 (JSR), 2010 U.S. Dist. LEXIS 116294 (S.D.N.Y. Oct. 26, 2010), involved the Federal Arbitration Act instead of LMRA § 301 preemption, the overall point of that case remains. Specifically, where a court concludes that certain claims against one party are required to be resolved according to a contractual grievance requirement rather than litigated, such a conclusion is equally appropriate as to the claims against a second party that are intertwined both with the claims against the first party and with the contract covering the plaintiff.

In addition, Plaintiffs' attempt to rely on two cases involving one defendant manufacturer and provisions from one set of CBAs to imply that courts more broadly hold preemption of

personal injury claims to be improper. (Pls.' Opp. at 9-10 (citing *Johnson v. Auto Handling Corp.*, 857 F. Supp. 848 (E.D. Mo. 2012) (addressing motion to remand following removal by car-carrier transport manufacturer Cottrell, Inc. based on LMRA § 301 preemption); *Powers v. Cottrell, Inc.*, No. 3-11-1209, 2012 WL 1393044 (M.D. Tenn. Apr. 23, 2012) (same) (collectively, the "Cottrell cases")).) Those cases are distinguishable and, for several reasons, do not support Plaintiffs' overgeneralized argument.

*First*, other than in the most general terms, the Cottrell cases do not involve the same claims as here. Indeed, the Cottrell courts addressed only a specific product defect claim raised in the circumstances of those cases. Whereas here, Plaintiffs' claims are based primarily (if not exclusively) on alleged failure to warn about the purported long-term risks of brain injuries, which is exactly the subject matter covered by CBA provisions regarding trainers and physicians, for example (as well as by several other CBA provisions). This material point of distinction alone defeats Plaintiffs' attempted extrapolation of the limited result in the Cottrell cases to these cases involving the Riddell Defendants. *See Allis-Chalmers*, 471 U.S. at 220 (explaining that preemption must be resolved "on a case-by-case basis").

*Second*, no part of the holdings in the Cottrell cases supports Plaintiffs' assertion that preemption cannot, as a general rule, apply to "personal injury claims." (Pls.' Opp. at 9.) To the contrary, numerous decisions have held that player-injury claims that seek to impute to a party duties owed by others under a CBA are preempted because they require interpretation of the CBA, including courts in this litigation and others. *E.g.*, *Duerson*, 2012 WL 1658353; *Givens v.*

13

*Tenn. Football Inc.*, 684 F. Supp. 2d 985 (M.D. Tenn. 2010).  Thus, there is no merit to the argument that preemption cannot apply to purported state-law personal injury claims.[19]

IV. <u>Plaintiffs' argument concerning pre-1968 players and "gap" players is a non-issue.</u>

The Riddell Defendants' motion acknowledged that there is "a very small percentage of players whose careers were not covered, in whole or in part, by one or more CBAs."  (Riddell Defs.' Br. at 6 n.8.)  Plaintiffs have not disputed that there are a relatively very small number of players who played in the NFL during these periods.[20]

However, Plaintiffs further argue that "claims arising from head trauma occurring during those time periods [i.e., pre-1968 or between 1987 and 1993] have no relevance to the CBA." (Pls.' Opp. at 11.)  To the extent Plaintiffs are arguing that players whose careers partially took place during CBA-covered periods may nonetheless claim that their alleged head injuries took place during the non-CBA-covered periods of their careers, at least one court has already rejected such an argument. *Duerson*, 2012 WL 1658353, at *3-4.

V. <u>Plaintiffs have failed to support their vague request for leave to amend.</u>

Considering the fact that the Master Administrative Long-Form Complaint was, in itself, an amendment to the original complaints, and the fact that many Plaintiffs had already amended their original complaints at least once (in some cases twice) before transfer to this MDL, for

---

[19] The Cottrell cases are further distinguishable and unhelpful for other reasons, including that they—like Plaintiffs—wholly fail to discuss or consider the *Duerson*, *Maxwell*, or *Stringer* degree-of-care analysis.  Instead, those cases offer essentially nothing more than conclusory statements that the claims in those cases, based on those specific allegations and theories, did not compel preemption.  The Cottrell cases also include some erroneous statements concerning § 301 preemption, such as that § 301 "confers federal subject-matter jurisdiction only over suits for violations of contracts."  *Powers* 2012 WL 1393044, at *1.  Section 301 preemption can apply to claims arising in contract, including violations of a CBA, *or* in tort, including claims that may require interpretation of the CBA.  *E.g.*, *Allis-Chalmers*, 471 U.S. at 213.

[20] Under the schedule established by CMO No. 4 (ECF No. 98), to the extent that any of Plaintiffs' claims are not dismissed pursuant to this motion, the Riddell Defendants will, at the appropriate time, move for their dismissal for failure to state a cause of action and as time barred.

many Plaintiffs, the AMAC is already effectively their *fourth* or even *fifth* amended complaint. *E.g.*, Ex Parte Appl. For Leave to File Second Am. Compl., *Barnes*, No. 2:11-cv-08396-R (C.D. Cal. Dec. 13, 2011), ECF Nos. 64 and 64-1 (containing second amended complaint). Despite this history of multiple prior amendments, Plaintiffs nonetheless request open leave to amend yet again, without explaining how further amendment would cure the deficiencies in their AMAC or the preemption of their claims against the Riddell Defendants. Plaintiffs' request ignores even their own cited case law holding that, even under Rule 15's liberal standard, leave to re-plead is "unwarranted as futile" where the plaintiff has already amended several times and has requested further leave only in a "conclusory manner" and without articulating "how another amended pleading could cure the defects . . . ." *DeSilva*, 2012 WL 748760, at *12; *see also Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 125-26 (3d Cir. 2010) (finding no abuse of discretion to deny "generalized request" for leave to amend where "there was no indication that repleading would correct the defects" (internal quotation marks omitted)).

Plaintiffs have failed to meet their burden to show that such leave is warranted and not futile. The Court should, therefore, deny Plaintiffs leave to amend.

<u>CONCLUSION</u>

Plaintiffs' response fails to provide the Court with any substantive basis on which to deny preemption. Instead, they offer only inaccurate and conclusory arguments, with no case-by-case analysis of preemption under the facts of this case and the specific CBA provisions the Riddell Defendants cited. For the reasons explained herein and in the opening brief, this Court should dismiss Plaintiffs' claims in their entirety against the Riddell Defendants with prejudice.

Respectfully Submitted,


/s/ Paul G. Cereghini
Paul G. Cereghini
Thomas C. Howard
BOWMAN AND BROOKE LLP
2901 N. Central Avenue
Suite 1600
Phoenix, AZ 85012
Telephone: (602) 643-2300
Fax: (602)248-0947
paul.cereghini@bowmanandbrooke.com
thomas.howard@bowmanandbrooke.com

Robert L. Wise
Eden M. Darrell
BOWMAN AND BROOKE LLP
1111 East Main Street, Suite 2100
Richmond, VA 23219
Telephone: (804) 649-8200
Fax: (804) 649-1762
rob.wise@bowmanandbrooke.com
eden.darrell@bowmanandbrooke.com

Thomas P. Wagner
MARSHALL, DENNEHY, WARNER,
COLEMAN & GOGGIN
2000 Market Street, Suite 2300
Philadelphia, PA 19103
Telephone: (215) 575-4562
Facsimile: (215) 575-0856
tpwagner@mdwcg.com

Attorneys for Defendants RIDDELL, INC.; ALL
AMERICAN SPORTS CORPORATION;
RIDDELL SPORTS GROUP, INC.; EASTON-
BELL SPORTS, INC.; EASTON-BELL SPORTS,
LLC; EB SPORTS CORP.; and RBG HOLDINGS
CORP.

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that this document was electronically filed and served via ECF on all counsel of record registered to receive service via the Court's ECF system.

/s/ Paul G. Cereghini_____