**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : | No. 12-md-2323-AB<br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO ALL ACTIONS | : | |

**RIDDELL DEFENDANTS' REPLY BRIEF IN IN SUPPORT OF MOTION TO SEVER**

Paul G. Cereghini
Thomas C. Howard
BOWMAN AND BROOKE LLP
2901 N. Central Avenue, Suite 1600
Phoenix, AZ 85012
Telephone: (602) 643-2300
paul.cereghini@bowmanandbrooke.com
thomas.howard@bowmanandbrooke.com

Robert L. Wise
Eden M. Darrell
BOWMAN AND BROOKE LLP
1111 E. Main Street, Suite 2100
Richmond, VA 23219
Telephone: (804) 649-8200
rob.wise@bowmanandbrooke.com
eden.darrell@bowmanandbrooke.com

Thomas P. Wagner
Mary C. Doherty
MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN
2000 Market St., Suite 2300
Philadelphia, PA 19103
tpwagner@mdwcg.com
mcdoherty@mdwcg.com

Attorneys for Defendants RIDDELL, INC.; ALL AMERICAN SPORTS CORPORATION; RIDDELL SPORTS GROUP, INC.; EASTON-BELL SPORTS, INC.; EASTON-BELL SPORTS, LLC; EB SPORTS CORP.; and RBG HOLDINGS CORP

TABLE OF CONTENTS

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. Plaintiffs fail to show that joinder of their claims meets the requirements or promotes the purpose of Rule 20 ..... 2

A. Plaintiffs fail to establish that their claims arise out of the same transactions or occurrences. ..... 3

1. Plaintiffs' argument that their claims arise out of the same transactions or occurrences contradicts established case law ..... 3

2. Plaintiffs' case law is both distinguishable and unhelpful. ..... 6

B. Plaintiffs fail to show that joinder of their factually and legally disparate claims is either permissible under or promotes the purpose of Rule 20 ..... 9

II. Severance and continued pre-trial MDL consolidation are not mutually exclusive. ..... 13

III. Waiting to sever or deferring the issue to the transferor courts will cause inefficiency, delay, and other pre-trial problems created by Plaintiffs' misjoinder and will prejudice the Riddell Defendants. ..... 13

CONCLUSION ..... 14

TABLE OF AUTHORITIES

Cases

*Alvarez v. Armour Pharm.*,
No. 94 C 3587, 1997 WL 566373 (N.D. Ill. Sept. 8, 1997) ........ 2

*Barnhart v. Town of Parma*,
252 F.R.D. 156, 161 (W.D.N.Y. 2008) ........ 8

*Baycol Prods. Liab. Litig.*,
MDL No. 1431, 2002 WL 32155269 (D. Minn. July 5, 2002) ........ 6

*Boschert v. Pfizer, Inc.*,
No. 4:08-cv-1714 CAS, 2009 WL 1383183 (E.D. Mo. May 14, 2009) ........ 4, 5, 11

*Bradley v. Choicepoint Servs., Inc.*,
No. 07-1255, 2007 WL 2844825 (E.D. Pa. Sept. 27, 2007) ........ 4

*Coffin v. S.C. Dep't of Soc. Servs.*,
562 F. Supp. 579 (D.S.C. 1983) ........ 8

*Cooper v. Fitzgerald*,
266 F.R.D. 86 (E.D. Pa. 2010) ........ 6

*Graziose v. Am. Home Prods. Corp.*,
202 F.R.D. 638 (D. Nev. 2001) ........ 9

*In re Accutane Prods. Liab. Litig.*,
MDL No. 1626, Case No., 8:12-cv-1426, 2012 WL 4513339 (M.D. Fla. Sept. 20, 2012) ........ 4

*In re Actos (Pioglitazone) Prods. Liab. Litig.*,
MDL No. 2299, Case. No. 6:12-cv-1041 (W.D. La. May 3, 2012) ........ 11, 12

*In re Asbestos Prods. Liab. Litig.*,
MDL 875, Nos. 01-cv-00162, 08-cv-71147, 2009 WL 959539 (E.D. Pa. Apr. 6, 2009) ........ 13

*In re Asbestos Prods. Liab. Litig.*,
MDL 875, Nos. 95-cv-89125, 2008 WL 4455838, at *1 (E.D. Pa. Oct. 1, 2008) ........ 13

*In re Diet Drugs Prods. Liab. Litig. (Diet Drugs I)*,
1999 WL 554584 (E.D. Pa. July 16, 1999) ........ 6, 12

*In re Diet Drugs Prods. Liab. Litig.* (*In re Diet Drugs II*),
No. 03-20229, 2004 WL 1211928 (E.D. Pa. June 2, 2004) ........ 13

*In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*,
MDL 2243, Case No., 11-3045, 2012 WL 1118780 (D.N.J. Apr. 3, 2012) ........ 9

*In re Orthopedic Bone Screw Prods. Liab. Litig. (In re Bone Screw I)*,
MDL 1014, 1995 WL 428683, at *1 (E.D. Pa. July 17, 1995) ........ 4, 6, 12

*In re Orthopedic Bone Screw Prods. Liab. Litig. (In re Bone Screw II)*,
MDL 1014, 1996 WL 900346 (E.D. Pa. July 11, 1996) ........ 3, 12

*In re Rezulin Products Liability Litigation*,
168 F. Supp. 2d 136 (S.D.N.Y. 2001) ........ 10, 11

*In re Seroquel Prods. Liab. Litig.*,
MDL No. 1769 (M.D. Fla Orders dated Dec. 22, 2006 & Jan. 26, 2007), ............................... 13

*Kedra v. City of Philadelphia*,
454 F. Supp. 652, 662 (E.D. Pa. 1978) ......................................................................... 8

*Montgomery v. STG International, Inc.*,
532 F. Supp. 2d 29, 36 (D.D.C. 2008) ......................................................................... 8

*Morrison v. Williams*,
Case No. 98-2408, 1998 WL 372655 (E.D. Pa. May 14, 1998) ................................................ 3

*Mosley v. General Motors Corp.*,
497 F.2d 1330 (8th Cir. 1974) ........................................................................... 7, 9

*Puricelli v. CNA Ins. Co.*,
185 F.R.D. 139, 142-43 (N.D.N.Y. 1999) ....................................................................... 8

*Saval v. BL Ltd.*,
710 F.2d 1027 (4th Cir. 1983) ............................................................................ 9, 12

*Simmons v. Wyeth Labs.*,
No. 96-cv-6631, 1996 WL 617492, at *3 (E.D. Pa. Oct. 24, 1996) ........................................... 4

*Thorn v. Novartis Pharm. Corp.*,
No. 3:04-cv-586 (E.D. Tenn. Aug. 30, 2003), ECF No. 7 ......................................................... 2

*Zinser v. Accufix Research Inst., Inc.*,
253 F. 3d 1180 (9th Cir. 2001) ............................................................................. 8

## INTRODUCTION

Plaintiffs' Opposition to the Riddell Defendants' Motion to Sever ("Pls.' Opp.") reveals that their claims are, in fact, not properly joined, and they have no legitimate basis to oppose severance. They fail to cite any products liability or other analogous cases upholding joinder of claims as highly individualized, factually disparate, and numerous as Plaintiffs'. Moreover, they fail to address or distinguish in any meaningful way the many cases from this Court and others severing personal injury, product liability claims like these. Instead, they call the Riddell Defendants' request for this Court to follow that precedent and to grant similar relief from Plaintiffs' misjoinder a "'divide and conquer' ploy." (Pls.' Opp. at 1.) Other than claimed inconvenience to themselves, Plaintiffs present no reason at all why the Court should not sever their claims.

Moreover, Plaintiffs wholly ignore the significant prejudice their misjoinder causes, not only on the Riddell Defendants but on the Court as well. Indeed, they fail to address or mention at all the numerous MDL cases the Riddell Defendants cited explaining the rationale for and necessity of severing misjoined claims such as these during consolidated pretrial proceedings because of the complication of discovery and other pretrial proceedings. In short, Plaintiffs fail to show either that their claims are properly joined or that their claims should not be severed. Thus, the Court should do exactly that.

## ARGUMENT

I. Plaintiffs fail to show that joinder of their claims meets the requirements or promotes the purpose of Rule 20.

Despite the varied circumstances of Plaintiffs' alleged personal injury, products liability claims, Plaintiffs argue that joinder of as many as several dozen of their claims is proper. Yet, Plaintiffs largely ignore and fail to distinguish the long line of cases holding that multi-plaintiff joinder of factually disparate products liability claims is improper.[1] Instead, Plaintiffs rely primarily on employment discrimination cases, which are factually and legally dissimilar and distinguishable from Plaintiffs' claims and, thus, wholly inapposite.

Plaintiffs also attempt to gloss over the many differences between their claims by pointing to broad, superficial similarities that provide little relevant commonality between them (and which are mostly inaccurate or inconsistent with Plaintiffs' other allegations). Plaintiffs also ignore the many examples the Riddell Defendants provided regarding how questions of liability, causation, and damages will be distinct and varied for each player-Plaintiff depending on his individual circumstances, as well as how joinder of their claims actually impedes judicial economy given these distinctions.

Plaintiffs' attempt to overgeneralize Rule 20 analysis and the nature of their claims fails. Contrary to Plaintiffs' urging, the differences between their claims and the inefficiencies and

---

[1] In addition to the numerous cases the Riddell Defendants provided in their opening brief and elsewhere in this reply, there are many more cases showing that courts overwhelmingly find joinder of multiple plaintiffs asserting products liability claims to be improper. *See, e.g.*, *Thorn v. Novartis Pharm. Corp.*, No. 3:04-cv-586 (E.D. Tenn. Aug. 30, 2003), ECF No. 73 (order denying motion to add additional products liability plaintiffs who had unique medical histories and were from different states because joinder was improper under Rule 20(a) and would impede the administration of justice); *Alvarez v. Armour Pharm.*, No. 94 C 3587, 1997 WL 566373 (N.D. Ill. Sept. 8, 1997) (denying motion to amend to add new plaintiffs and severing claims of misjoined plaintiffs because, among other things, proximate cause issues for each product liability plaintiff would be different and "predominate over common issues").

substantial prejudice caused by their improper joinder cannot be disregarded. Rather, their claims require severance.

A. Plaintiffs fail to establish that their claims arise out of the same transactions or occurrences.

1. Plaintiffs' argument that their claims arise out of the same transactions or occurrences contradicts established case law.

Plaintiffs argue that they satisfy Rule 20(a)'s same transaction or occurrence requirement under the "logical relationship" test simply because they claim they were injured by the same type of allegedly defective product—i.e., a Riddell helmet. (Pls.' Opp. at 6-7.) Plaintiffs have still never identified specifically how their helmets were purportedly all uniformly defective throughout this roughly 60-year period covered by their claims, much less how that unidentified, alleged common defect could possibly have uniformly caused their alleged brain injuries. But even putting that glaring omission aside, their argument is also inconsistent with the numerous holdings from this Court and others requiring product liability plaintiffs to allege more than merely similar problems with a generic type of product to support proper joinder under Rule 20(a)(1)(A). *See, e.g., In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL 1014, 1996 WL 900346 (E.D. Pa. July 11, 1996) (*In re Bone Screw II*) (Bechtle, J.) (holding joinder improper as to plaintiffs whose only common circumstances were that they had "received in the same state a pedicle screw implant manufactured by the same manufacturer").

Plaintiffs' joinder analysis also ignores the fact that vast temporal, geographic, factual, and other differences in their circumstances are far more than mere "idiosyncrasies," as they label them. (Pls.' Opp. at 5, 9.) Rather, those differences are highly relevant to and dispositive of the question of whether their claims are logically related for purposes of Rule 20(a)'s "same transaction or occurrence" requirement. *See, e.g., Morrison v. Williams,* Case No. 98-2408, 1998

WL 372655, at *1 (E.D. Pa. May 14, 1998) (finding plaintiffs' claims did not arise out of the same transactions or occurrences where plaintiffs did not allege that they worked at the same time or in the same location on the site where they were removing asbestos); *Boschert v. Pfizer, Inc.*, No. 4:08-cv-1714 CAS, 2009 WL 1383183, at *3 (E.D. Mo. May 14, 2009) (finding plaintiffs' claims did not arise out of the same transactions or occurrences in part because plaintiffs took the drug in question at different times for different lengths of time).

Indeed, these "idiosyncrasies" comprise the material circumstances of their claims, such as what helmet(s) the player was wearing when he was allegedly injured, what warnings-related materials were available, what specific injury he sustained, when and where he suffered his alleged head injury, and what treatment he sought and received. And as this Court has explained, a "logical relationship" exists only if each plaintiff's claim arises "out of *the same set of circumstances*."[2] *Bradley v. Choicepoint Servs., Inc.*, No. 07-1255, 2007 WL 2844825, at *2 (E.D. Pa. Sept. 27, 2007) (Diamond, J.) (citations omitted; emphasis added). This is especially true in products liability cases like this one where questions of liability, causation, and damages will necessarily be different and unique for each plaintiff depending on his individual circumstances. *See, e.g., In re Accutane Prods. Liab. Litig.*, MDL No. 1626, Case No. 8:12-cv-1426, 2012 WL 4513339, at *1 (M.D. Fla. Sept. 20, 2012) (severing claims in a large, multi-plaintiff complaint after recognizing that "[m]any federal courts hold that product liability cases

---

[2] Plaintiffs incorrectly argue that the Riddell Defendants ignored the "logical relationship" test. (Pls.' Opp. at 4.) This Court has explained that "[a] logical relationship exists when 'the central facts of each plaintiff's claim arise on a somewhat individualized basis out of the same set of circumstances." *Bradley*, 2007 WL 2844825, at *2 (Diamond, J.) (*quoting Simmons v. Wyeth Labs.*, No. 96-cv-6631, 1996 WL 617492, at *3 (E.D. Pa. Oct. 24, 1996) (Bartle, J.) (quoting *In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL 1014, 1995 WL 428683, at *1 (E.D. Pa. July 17, 1995) (*In re Bone Screw I*) (Bechtle, J.)). In their opening brief, the Riddell Defendants quoted the same language from *In re Bone Screw I* summarizing the "logical relationship" test and this very standard. (Riddell Defs.' Br. at 7.)

are generally inappropriate for multi-plaintiff joinder because such cases involve highly individualized facts and liability, causation, and damages will . . . be different with each individual plaintiff") (internal quotation marks and citations omitted).

Plaintiffs further erroneously argue that, despite the numerous, material differences the Riddell Defendants highlighted, their claims are nonetheless sufficiently similar to support joinder because "each and every Player was part of the same football league with the same rules and regulations, played the same sport, and suffered traumatic brain injury because of the defective helmets each wore – helmets the NFL required Players to wear . . . ." (Pls.' Opp. at 5.) This level of superficial, non-detailed analysis is exactly what courts have rejected in ordering severance of factually disparate claims. Indeed, the *Boschert* court rejected joinder of only four plaintiffs who were prescribed Chantix and allegedly suffered mental or behavioral side-effects from it. 2009 WL 1383183, at *3-4. Despite the same sort of overly generalized purported "similarities" as Plaintiffs argue, the *Boschert* court held that the circumstances of each plaintiff's claim were too different to support proper joinder, including that they were prescribed the drug by different health care providers and took the drug at different times for various lengths of time. *Id*. Plaintiffs' claims here are equally factually disparate, if not far more so.

Moreover, many of the purported "similarities" Plaintiffs point to either do not exist or are inaccurate and inconsistent with their other allegations. For example, Plaintiffs did not all play under "the same rules and regulations"; rather, as they alleged, the rules changed significantly over the decades covering their claims. (AMAC (ECF No. 2642) ¶¶ 88, 92.) Plaintiffs also incorrectly assert they wore Riddell "helmets the NFL required Players to wear"; yet, in their opposition to the preemption motion, they purport to "challenge the assertion that the

NFL mandated the use of Riddell helmets."[3] (Mem. of Pls. in Opp. to Riddell Defs. Mot. to Dismiss (ECF No. 4133) at 5 n.1.) But even if Plaintiffs' overly-generalized purported "similarities" were consistent with their actual allegations, those "similarities" would nonetheless fail to override the numerous material dissimilarities the Riddell Defendants cited. (Riddell Defs.' Br. at 12-18.)

2. Plaintiffs' case law is both distinguishable and unhelpful.

Instead of meaningfully distinguishing the cases the Riddell Defendants cited or explaining why the joinder analysis in those cases is inapplicable,[4] Plaintiffs rely on a few unemployment discrimination cases and one civil rights case to argue that their joinder is proper

[3] The Riddell Defendants have never asserted that the NFL mandated the use of Riddell helmets.

[4] Plaintiffs complain that many of the Riddell Defendants' cases "involve pharmaceuticals or medical devices." (Pls.' Opp. at 5.) But Plaintiffs fail to expand on this statement or explain why the joinder analysis in those products liability cases is less analogous than the discrimination cases on which they rely. Like pharmaceutical and medical device cases, this litigation involves the need to prove individualized causation and damages; and the importance of the player-Plaintiffs' individual medical histories, as well as many other individual factors, is as significant here as it is in the pharmaceutical and medical device cases. In fact, unlike in typical pharmaceutical and medical device cases, here there are many distinct helmet designs and forms of helmet warnings and other product-associated materials spanning six decades. Further, given that helmets were often reconditioned, modified, or otherwise altered by the players and others, this litigation presents an even greater need for individualized treatment, even without considering individual player histories such as the length of playing careers, mixed use of other manufacturers' helmets, personal concussion experience, and Plaintiffs' individualized medical treatment and advice, and so forth. In short, Plaintiffs' argument for consolidation here is far less persuasive than those unsuccessfully advanced in pharmaceutical and medical device cases that rejected consolidation.

In addition, Plaintiffs' comment about the Riddell Defendants citing "unreported cases" lacks merit. "Unreported opinions" are entirely appropriate persuasive authority, as this Court has confirmed by routinely citing and relying on its own "unreported" opinions. *See, e.g.*, *Cooper v. Fitzgerald*, 266 F.R.D. 86, 88 (E.D. Pa. 2010) (Kelly, J.) (citing multiple "unreported" opinions and quoting "unreported" opinions that cite other "unreported" opinions). Other federal courts also commonly cite and rely on this Court's "unreported" opinions that the Riddell Defendants cited. *See, e.g.*, *Baycol Prods. Liab. Litig.*, MDL No. 1431, 2002 WL 32155269, at *2 (D. Minn. July 5, 2002) (citing and finding persuasive *In re Bone Screw I*, 1995 WL 428683, and *In re Diet Drugs Prods. Liab. Litig.*, No. 98-20478, 1999 WL 554584, at *4 (E.D. Pa. July 16, 1999) (*In re Diet Drugs I*) (Bechtle, J.)).

despite the many factual differences between their claims. (*See* Pls.' Opp. at 3, 6.) In doing so, Plaintiffs promote an oversimplified joinder analysis that ignores important distinctions between their own individual claims, as well as between their particular claims and those involved in the cases they cite.

For example, in *Mosley v. General Motors Corp.*, a Title VII unemployment discrimination case, a finding of a discriminatory purpose behind the plaintiffs' employer's policy would have established liability in favor of all ten plaintiffs. 497 F.2d 1330, 1333-34 (8th Cir. 1974). In contrast, here, a finding of liability against the Riddell Defendants as to one Plaintiff based on some alleged product defect in one type of Riddell helmet, or an alleged manufacturing defect in one particular helmet, would not equate to a finding of liability as to all Plaintiffs across all eras and all models of Riddell helmets. Rather, as explained below and in their opening brief, whether the Riddell Defendants are liable to any individual Plaintiff would depend on numerous player-specific facts, including when a player played football, what helmet model he wore, what his distinct usage history was, the history of each individual helmet(s) the player wore (e.g., new, used, used and reconditioned, used and not reconditioned, reconditioned by authorized third party, reconditioned by unauthorized third party, altered, modified with accessories, etc.), and many others. In other words, unlike this product liability case, the factual differences between the *Mosley* plaintiffs' claims were not important to the question of whether the defendant there was liable to any particular plaintiff, thus making joinder of their race discrimination claims appropriate.

Additionally, the claims in Plaintiffs' cited cases were all brought under federal law or one state's laws. *E.g.*, *Mosley*, 497 F.2d at 1333-34 (considering all of plaintiffs' claims under

Title VII).[5] Here, the laws applicable to Plaintiffs' claims vary significantly given that Plaintiffs played and resided in different states at different times. *See Zinser v. Accufix Research Inst., Inc*., 253 F. 3d 1180, 1188 (9th Cir. 2001) (recognizing that the laws of negligence and products liability "all differ in some respects from state to state") (citation omitted).

There are multiple other reasons Plaintiffs' cited cases are materially distinguishable. For example, *Kedra v. City of Philadelphia* dealt not with joinder of plaintiffs but instead with whether those plaintiffs could join their civil rights claims against multiple defendants, which included the City of Philadelphia and various members of the Philadelphia Police Department. 454 F. Supp. at 661-62. Additionally, the individual causes of action in Plaintiffs' cited cases did not accrue over multiple decades, as Plaintiffs' did here. *See, e.g., Puricelli*, 185 F.R.D. at 142-43 (allowing two plaintiffs to sue in one action where they alleged they were "subjected to a similar method of removal from pre-takeover positions through performance evaluations, performed . . . *during the same time period, and left the employ of CNA within one month of each other*" (emphasis added)). Moreover, none of Plaintiffs' cited cases involve product liability claims or allegations even remotely similar to their own.[6]

---

[5] *Coffin v. S.C. Dep't of Soc. Servs*., 562 F. Supp. 579, 592 (D.S.C. 1983) (involving alleged violations of Age Discrimination in Employment Act, the Fourteenth Amendment, and South Carolina tort law); *Kedra v. City of Philadelphia*, 454 F. Supp. 652, 662 (E.D. Pa. 1978) (involving alleged violations of the Constitution, the Civil Rights Act, and various Pennsylvania laws); *Puricelli v. CNA Ins. Co*., 185 F.R.D. 139, 142-43 (1999) (involving alleged violations of the Age Discrimination in Employment Act, the New York State Human Rights Law, and intentional infliction of emotional distress under New York law).

[6] Plaintiffs similarly misplace their reliance on *Barnhart v. Town of Parma* and *Montgomery v. STG International, Inc*.—both employment discrimination cases and both likewise entirely distinguishable. (Pls.' Opp. at 4.) In *Barnhart*, the court allowed joinder of two plaintiffs "who worked in the same department [and] . . . allege[d] that the same supervisor subjected them to a course of harassment based on their gender . . . [and] [t]he alleged harassing conduct occurred during the same general time frame . . ." 252 F.R.D. 156, 161 (W.D.N.Y. 2008). In *Montgomery*, the court declined severance where two plaintiffs worked on the same contract, alleged discrimination by the same person, complained to management at the same time about

In short, the employment discrimination and civil rights cases Plaintiffs rely on exclusively are materially distinguishable and inapplicable. Those cases provide no support for the argument that Plaintiffs' factually and legally disparate product liability claims satisfy Rule 20's "same transaction or occurrence" requirement.

B. Plaintiffs fail to show that joinder of their factually and legally disparate claims is either permissible under or promotes the purpose of Rule 20.

Plaintiffs agree that Rule 20 "should be construed in light of its purpose, which 'is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.'" *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (quoting *Mosley*, 497 F.2d at 1332); (Pls.' Opp. at 2-3.) However, they nonetheless fail to explain how joinder of factually and legally disparate claims would purportedly fulfill that purpose. To the contrary, continued misjoinder of Plaintiffs' claims would frustrate that purpose and delay the adjudication process, given that resolution of each Plaintiff's claims will require consideration of different facts and law with respect to liability, causation, and damages.[7] Indeed, as the Riddell Defendants' explained, the determination of each Plaintiff's design and manufacturing defect claims will be informed by different facts including which specific helmet model(s) the player wore and when he played football, among other things. In arguing that all of the materially

---

the contract, and were terminated within two months of each other. 532 F. Supp. 2d 29, 36 (D.D.C. 2008). In addition to the fact that both cases are unemployment discrimination cases involving only two plaintiffs and therefore non-analogous to Plaintiffs' product liability claims, the similarities between the plaintiffs in those cases simply do not exist here.

[7] Plaintiffs' assertion that they satisfy Rule 20(a)(1)(B) is incorrect. Because their claims are materially factually and legally disparate, their joinder does not satisfy either prong under Rule 20(a) or serve the purposes of Rule 20(a). *See, e.g.*, *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig*. (No. II), MDL 2243, Case No. 11-3045, 2012 WL 1118780, at *4-5 (D.N.J. Apr. 3, 2012) (finding misjoinder where, "given the complicated causation questions that pervade drug product liability claims, Plaintiffs' claims will require divergent questions of law and fact"); *Graziose v. Am. Home Prods. Corp.*, 202 F.R.D. 638 (D. Nev. 2001) (finding that joinder of plaintiffs with varied histories did not satisfy either prong of Rule 20(a)).

different circumstances between their claims are supposedly irrelevant, Plaintiffs wholly ignore the fact that helmet industry standards, state-of-the-art, available scientific research and knowledge, materials, engineering process, manufacturing techniques, and many other facets of helmet design and manufacturing changed significantly over the past six decades, as they have in virtually every industry.

Additionally, contrary to their assertion that Plaintiffs' assert a "uniform failure to warn," nothing about their warnings claims is "uniform." (Pls.' Opp. at 7 n.2, 8.)  Rather, each such claim would hinge on highly individualized circumstances.  For example, when an individual player-Plaintiff played will be relevant in evaluating what, if any, duty the Riddell Defendants owed to warn given the information available and state of knowledge at that time.  Also, evaluating Plaintiffs' warnings claims will depend on whether individual players received, read, and heeded different materials provided with their particular helmets (e.g., different versions of warnings, other product-associated materials, other warnings from other sources, warnings from third-party helmet reconditioners, etc.), as well as require analysis of each individual player's experience with concussions and interactions with physicians and trainers, among many other disparate facts. (Riddell Defs.' Br. at 15.)

Moreover, regardless of whether Plaintiffs intend to pursue defect claims based on physical aspects of their helmets or to assert only warnings-based theories (as their response implies (Pls.' Opp. at 7 n.2)), numerous disparate and player-specific facts relevant to causation must be considered, including but not limited to each player-Plaintiff's medical, injury, and helmet-usage history.  As with the misjoined and subsequently severed plaintiffs in *In re Rezulin Products Liability Litigation*, Plaintiffs "allege a defect (or defects) the precise contours of which are unknown and which may have caused different results–not merely different injuries–in

[Plaintiffs] depending on such variables as exposure to the [product], the [Plaintiff's] physical state at the time of [using the product] and a host of other known and unknown factors that must be considered at trial with respect to each individual plaintiff." 168 F. Supp. 2d 136, 146 (S.D.N.Y. 2001).

Plaintiffs also largely ignore the reality that their claims will all implicate materially different law, and they instead argue conclusorily that those material legal disparities are "not a reason militating against joinder." (Pls.' Opp. at 8 n.4.) Plaintiffs' argument is incorrect, as numerous courts have held. (Riddell Defs.' Br. at 19); *see also*, *e.g.*, *Boschert*, 2009 WL 1383183, at *4 (severing claims because they would necessarily "be based on each plaintiff's respective state's law," requiring "separate legal analyses"); *In re Actos (Pioglitazone) Prods. Liab. Litig.*, MDL No. 2299, Case. No. 6:12-cv-1041 (W.D. La. May 3, 2012), ECF No. 2 (order severing plaintiffs' claims in part because "the theories of law may differ as to the claims asserted by the individual plaintiffs").[8]

The Riddell Defendants provided many more examples (which are still only a mere sampling) of the numerous factual and legal disparities between Plaintiffs' claims. (Riddell Defs.' Br. at 12-23.) Plaintiffs fail to address those disparities in any meaningful way or to explain persuasively how continued joinder despite them would promote Rule 20's purpose.[9] Instead, Plaintiffs superficially argue that joinder is proper because "this Court will ultimately face at least one identical question in every case, *i.e.*, whether the Riddell Defendants are liable

[8] Plaintiffs also incorrectly state that the Riddell Defendants suggest California's "government interest" choice-of-law analysis would apply to all Plaintiffs' claims. The Riddell Defendants discussed California's choice-of-law analysis merely for example and "for the sake of argument only," as they explicitly stated. (Riddell Defs.' Br. at 19.)

[9] Plaintiffs assert that the Riddell Defendants fail to "discuss common issues of law and fact related to spouse Plaintiffs at all." (Pls.' Opp. at 8.) The spouse-Plaintiffs' claims are derivative of and dependent on their husbands'. Thus, their claims are dissimilar for the same reasons.

to Plaintiffs for injuries which stemmed from a common source: Riddell's defective helmets." (Pls.' Opp. at 9.) As this and other courts have concluded under analogous circumstances, such an overly simplistic analysis is incorrect. *Cf. In re Bone Screw II*, 1996 WL 900346, at *3 (Bechtle, J.) (rejecting joinder based on "common" circumstance that plaintiffs "received in the same state a pedicle screw implant manufactured by the same manufacturer").

Contrary to Plaintiffs' conclusory assertions that their joinder "clearly satisf[ies] the common issue requirement of Rule 20" and is "firmly in accord with the purposes of Rule 20," it is clear that it is neither. Rather, joinder of Plaintiffs' claims is improper, and their continued misjoinder would only frustrate the purpose of permissive joinder, significantly obstruct and delay the adjudication process, and substantially prejudice the Riddell Defendants.[10] *See, e.g.*, *In re Diet Drugs I*, 1999 WL 554584, at *3 ("[T]he joinder of such unconnected, geographically diverse plaintiffs that present individual circumstances material to the final outcome of their respective claims will obstruct and delay the adjudication process"); *Saval*, 710 F.2d at 1032 (finding that given the lack of commonality and factual differences between plaintiffs' claims, joinder was improper and would not further the purposes behind Rule 20 or enhance judicial economy); *In re Actos*, MDL No. 2299, Case. No. 6:12-cv-1041, ECF No. 2 (severing claims after finding "that the theories of law may differ as to the claims asserted by the individual plaintiffs; that the facts concerning each individual plaintiff's damages will differ; and that the existence of multiple actions presenting claims asserted on behalf of groups of disparate

---

[10] Apart from costs related to delay and inefficiency, Plaintiffs' improper joinder masks choice-of-law determinations that may lead to early resolution of hundreds of Plaintiffs' claims for lapse of applicable statutes of limitations and for other reasons. Other Plaintiffs may simply choose not to serve individualized complaints or may find that they are unable to do so as a result of various potential deficiencies with their individual causes of action.

plaintiffs will likely hamper the orderly, efficient, and expeditious handling of the plaintiffs' claims as the litigation progresses"). Therefore, the Court should sever them.

II. Severance and continued pre-trial MDL consolidation are not mutually exclusive.

Plaintiffs argue that the Riddell Defendants seek to force Plaintiffs to re-file and litigate their cases in different forums and outside of this MDL, suggesting that Rule 21 severance is inconsistent with MDL consolidation. (Pls.' Opp. at 2.) They are incorrect.

The Riddell Defendants have not suggested that severance is inconsistent or mutually exclusive with consolidation of cases for pre-trial purposes within an MDL. Rather, the Riddell Defendants request that the Court sever Plaintiffs' misjoined claims and order "each plaintiff to file a Severed and Amended Complaint that provides the necessary information about his . . . claims" against the Riddell Defendants, as has been ordered in other MDL litigation with misjoined claims. *E.g.*, *In re Diet Drugs Prods. Liab. Litig. (Diet Drugs II)*, No. 03-20229, 2004 WL 1211928, at *1 (E.D. Pa. June 2, 2004) (Bartle, J.); *In re Asbestos Prods. Liab. Litig.*, MDL 875, Nos. 01-cv-00162, 08-cv-71147, 2009 WL 959539 (E.D. Pa. Apr. 6, 2009) (Robreno, J.). Plaintiffs wholly ignore the case law the Riddell Defendants cited showing that MDL courts often sever misjoined multi-plaintiff actions while allowing those actions to proceed in a consolidated MDL, where MDL consolidation is otherwise appropriate. *E.g.*, *id*.[11]

III. Waiting to sever or deferring the issue to the transferor courts will cause inefficiency, delay, and other pre-trial problems created by Plaintiffs' misjoinder and will prejudice the Riddell Defendants.

Plaintiffs argue that severance is premature since the misjoinder concerns "even if meritorious, are matters for ***trial***, . . ." (Pls.' Opp. at 9 (emphasis in original).) Without

[11] *See also In re Asbestos Prods. Liab. Litig.*, MDL 875, Nos. 95-cv-89125, 2008 WL 4455838, at *1 (E.D. Pa. Oct. 1, 2008); *In re Seroquel Prods. Liab. Litig.*, MDL No. 1769 (M.D. Fla Orders dated Dec. 22, 2006 & Jan. 26, 2007), ECF Nos. 109 & 129.

explaining their contention, Plaintiffs state that it will be more efficient for transferor courts to consider severance after discovery and pretrial motions. Again, Plaintiffs' arguments are incorrect and ignore the numerous cases the Riddell Defendants cited rejecting them, including cases from this Court. (Riddell Defs.' Br. at 27-28.)

Plaintiffs' suggestion that none of the Riddell Defendants' cited MDL cases addressed alleviating pretrial concerns created by misjoinder is also inaccurate. The Riddell Defendants cited several examples of courts severing misjoined claims at the outset of litigation precisely for the purpose of facilitating the efficient *pre-trial* processing of the claims in an MDL. (*Id.*) Many of those cases rejected the very same purported prematurity and efficiency arguments Plaintiffs advance. Plaintiffs wholly fail to address those cases in any way.

CONCLUSION

For the reasons discussed above and in their opening brief, the Riddell Defendants respectfully request the Court sever the Plaintiffs' misjoined claims against the Riddell Defendants with an instruction that those Plaintiffs who wish to pursue claims against the Riddell Defendants each file separate individual complaints that provide the necessary information about their claims.

Respectfully Submitted,

/s/ Paul G. Cereghini
Paul G. Cereghini
Thomas C. Howard
BOWMAN AND BROOKE LLP
2901 N. Central Avenue
Suite 1600
Phoenix, AZ 85012
Telephone: (602) 643-2300
Fax: (602)248-0947
paul.cereghini@bowmanandbrooke.com
thomas.howard@bowmanandbrooke.com

Robert L. Wise
Eden M. Darrell
BOWMAN AND BROOKE LLP
1111 East Main Street, Suite 2100
Richmond, VA 23219
Telephone: (804) 649-8200
Fax: (804) 649-1762
rob.wise@bowmanandbrooke.com
eden.darrell@bowmanandbrooke.com

Thomas P. Wagner
MARSHALL, DENNEHY, WARNER, COLEMAN & GOGGIN
2000 Market Street, Suite 2300
Philadelphia, PA 19103
Telephone: (215) 575-4562
Facsimile: (215) 575-0856
tpwagner@mdwcg.com

Attorneys for Defendants RIDDELL, INC.; ALL AMERICAN SPORTS CORPORATION; RIDDELL SPORTS GROUP, INC.; EASTON-BELL SPORTS, INC.; EASTON-BELL SPORTS, LLC, EB SPORTS CORP.; and RBG HOLDINGS CORP.

CERTIFICATE OF SERVICE

The undersigned certifies that on December 17, 2012, the foregoing Riddell Defendants' Reply Brief in Support of Motion to Sever was electronically filed and served via ECF on all counsel of record registered to receive service via the Court's CM/ECF system.

/s/ Paul G. Cereghini__________________