UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : No. 12-md-2323-AB : : MDL No. 2323 |
| THIS DOCUMENT RELATES TO ALL ACTIONS | : : : : |

**RIDDELL DEFENDANTS' REPLY IN SUPPORT OF
REQUEST FOR JUDICIAL NOTICE**

Plaintiffs' resistance to this Court taking judicial notice as the Riddell Defendants have requested is unwarranted.  *First*, the fact that football helmets have changed considerably over the more than sixty years covered by Plaintiffs' claims is not only commonly known, it is conceded by Plaintiffs' allegations and their reference to Riddell's website showing exactly that. *Second*, Plaintiffs have agreed that the Court can and should take judicial notice of the dates of incorporation of the various Riddell Defendants; Plaintiffs oppose only taking judicial notice of facts beyond that, which the Riddell Defendants have not requested.  Thus, the Court should grant the Riddell Defendants' request.

I. Plaintiffs' resistance to taking notice of the well-known and simple fact that football helmets changed considerably between 1950 and 2011 is unfounded.

The Riddell Defendants request notice of what should be a completely uncontroversial fact—football helmets have changed considerably over the more than sixty-year period covered by Plaintiffs' claims.  (Riddell Defs.' Req. for Judicial Notice in Supp. of Mot. to Sever (ECF No. 3594) ("Riddell Defs.' Req.").)  Plaintiffs' oppose this request primarily with a strawman. Specifically, they argue that the Riddell Defendants' request "attempts to take this issue [of

1

whether, as alleged, each and every one of the helmets produced between 1950 and 2011 were defective and unreasonably dangerous] entirely out of the hands of the fact-finder." (Mem. of Pls. in Opp. to Riddell Defs.' Req. (ECF No. 4136) ("Pls.' Opp.") at 2.) They also mischaracterize the Riddell Defendants' request as asking for notice of "intricate facts about the design detail and manufacturing process of Riddell helmets," and of "[h]ow, why, and when a particular helmet [was] designed or used . . . ." (*Id.* at 2-3.) This is simply not accurate.

The Riddell Defendants have not asked the Court to take notice of "how" the helmets changed or the "intricate details" of their manufacturing. They have asked only for notice of the indisputable fact that they have, in general, changed considerably. Indeed, the Riddell Defendants ask only that the Court judicially note that, for example, there was considerable change between this helmet below from the 1950s:



and this one below from the 2000s:



2

Plaintiffs fail to explain how taking notice of that bare and uncontroversial fact usurps a "fact finding" role in any way.

Moreover, contrary to Plaintiffs' implication, the Riddell Defendants are not asking the Court to make any qualitative assessments—i.e., they are not asking the Court to take notice of the fact that any one of the helmets was superior to any other.[1] Rather, the Riddell Defendants ask only that the Court note the obvious fact that the two helmets shown above, for example, are considerably different products, as can be seen simply by looking at them. Therefore, a plaintiff who alleges injury from using a helmet from the 1950s, for example, has a different product liability case than a player who used the helmet from the 2000s because they each used different products with distinct basic designs, different features, different components, etc.[2]

In addition, Plaintiffs' argument that judicial notice is inappropriate because their allegations "simply state that the Riddell Defendants' helmets failed ever to warn of the later life cognitive effects of concussive injury" misses the mark. (Pls.' Opp. at 3-4[3] (citing Am. Master Admin. Long-Form Compl. (ECF No. 2642) ("AMAC") ¶ 410).) The fact that Plaintiffs also allege a lack of warnings does not detract from or minimize the reality that the physical design of

---

[1] Although, as the evidence would show, technological advances have resulted in significant product evolution over the years.

[2] Plaintiffs also assert that the Riddell Defendants' ask the Court to "accept as fact certain 'issues,' yet, curiously, they file a Motion to Sever to show that there is no commonality of facts." (Pls.' Opp. at 3.) There is nothing "curious" or inconsistent about the Riddell Defendants' request or their arguments. Rather, they are entirely consistent. The Riddell Defendants maintain that the helmets each individual player wore were different, thus precluding any mass consolidation of their individual product liability claims, for this and many other reasons. The Riddell Defendants are not asking for resolution of any common fact or "issue" at all. Plaintiffs simply misconstrue the Riddell Defendants' request.

[3] Plaintiffs implication that they have alleged some uniform failure to warn contradicts their actual allegations, since they allege that in 2002, with the release of the Riddell Revolution, the Riddell Defendants provided "a notification reminding players to 'sit out' if they suffer a concussion." (AMAC ¶¶ 386(i), 390.) Thus, according to even Plaintiffs' own allegations, different players received different information based on when they played and what helmets they wore.

the helmets nonetheless changed considerably over the decades, which is relevant given Plaintiffs' allegations that the helmets were in some way defectively designed and/or manufactured.[4]  (*See, e.g.*, AMAC ¶¶ 397-405.)

Plaintiffs' opposition is perhaps most puzzling given that Plaintiffs, in their AMAC, paraphrased—and in some cases cut and pasted directly from—Riddell's website. (*Id.*)  But in their opposition, Plaintiffs argue that those same facts reflected on that website—from which Plaintiffs quoted verbatim—are in some way not reliable.  (Pls.' Opp. at 3.)  Plaintiffs fail to explain why it is proper for them to rely on Riddell's website for facts in their AMAC but it is improper for the Court to rely on that same website for judicial notice of a simple and widely known fact.  Further, regardless of whether the Court takes judicial notice of this website, Plaintiffs themselves allege that helmets changed considerably including changes by adding face-masks, nose protectors, adding foam and liners, air inflation technology, injection molding, increased energy absorption, liquid-filled padding, impact-sensing technology, and other advances.  (AMAC ¶ 386(a)-(m).)  Therefore, Plaintiffs' own allegations establish the point that helmets have changed considerably over the past sixty years.

Finally, Plaintiffs' misplace their reliance on *Victaulic Co. v. Tieman*.  (*Id.*)  In *Victaulic*, the Court found that taking judicial notice of "a bare 'fact' that is reflected not in the pleadings, but on a corporate website" was inappropriate.  499 F.3d 227, 237 (3d Cir. 2007).  Unlike the

---

[4] Plaintiffs' reference to their AMAC as "simply" alleging a purported lack of warnings implies that they are not pursuing a claim for alleged physical design and manufacturing defect.  If that is the case, then Plaintiffs need to amend their consolidated complaint yet again to remove those allegations and to clarify that they are proceeding solely on a warnings theory.  Otherwise, Plaintiffs cannot ignore that they have alleged purported physical product defects across the entire more than sixty-year period covered by their claims. Further, even if Plaintiffs are now pursuing only a warnings claim, the fact that physical aspects of helmets have changed considerably over the last six decades is nonetheless relevant given that product warnings are integral to the product itself.

situation in *Victaulic*, information from Riddell's website and statements that support the fact that helmets have changed considerably is reflected in Plaintiffs' pleadings themselves. (AMAC ¶ 386(a)-(m).)

The Riddell Defendants ask merely that the Court take notice of a fact it likely already well knows and that anyone who has even occasionally observed the game of football well knows—football helmets changed considerably over the sixty-plus years covered by Plaintiffs' claims. Plaintiffs fail to present any legitimate reason why this Court should not take notice of that indisputable fact. *Vitaulic*, 499 F.3d at 236 ("[I]t is proper for a court to take judicial notice of facts not reasonably subject to dispute.").

II. <u>Plaintiffs agree to judicial notice of the dates of the Riddell Defendants' formation.</u>

Plaintiffs do not object to the Court taking judicial notice of the dates of incorporation of the Riddell Defendants. (Pls.' Opp. at 4.) That is all the Riddell Defendants requested. (Riddell Defs.' Req. at 2-3.)

Nonetheless, despite agreeing with the propriety of taking notice of the dates of incorporation, Plaintiffs argue that the Court should not take judicial notice of the date those entities were "formed," as if those dates will differ. (Pls.' Opp . at 4.) The dates of incorporation <u>are</u> the dates of formation. *See* Del. Code Ann. Tit. 8 §106 (providing that corporate existence commences upon filing with the Secretary of State a certificate of incorporation duly executed and acknowledged, unless a delayed effective date not to exceed 90 days is specified under § 103(d)); 805 Ill. Comp. Stat. 5/2.15 (providing that corporate existence shall begin upon the filing of the articles of incorporation by the Secretary of State).

In addition, Plaintiffs' argument regarding the need for discovery as to "when assets and liabilities of other Riddell Defendants were sold and purchased" is irrelevant. (*Id.*) Plaintiffs

5

have not pled any basis for successor liability against any of the Riddell Defendants. Moreover, Plaintiffs' request for discovery concedes that they currently have no facts to support any such allegations or that any Riddell Defendants "came into existence" at any date other than as shown in the state filings. This concession not only supports dismissal of claims against certain entities,[5] it shows that Plaintiffs cannot legitimately rebut Riddell Defendants' request for judicial notice. Therefore, the Court can and should take judicial notice of the dates of incorporation and formation of the Riddell Defendants, which are available on the Delaware and Illinois Secretaries of State online databases and matters of public record. S*ee Pension Benefit Gaur. Corp. v. White Consol. Indus., Inc*. 998 F.2d 1192, 1196 (3d Cir. 1993) (recognizing that in resolving the defendant's motion for failure to state a claim, the court could consider matters of public record); *Amalgamated Bank v. Yost*, No. 04-0972, 2005 WL 226117, at *3 (E.D. Pa. Jan. 31, 2005) (denying motion to strike certificate of incorporation attached as exhibit to motion to dismiss since the document was a public document filed with the Delaware Secretary of State).

Respectfully Submitted,

/s/ Paul G. Cereghini_____
Paul G. Cereghini
Thomas C. Howard
BOWMAN AND BROOKE LLP
2901 N. Central Avenue
Suite 1600
Phoenix, AZ 85012
Telephone: (602) 643-2300
Fax: (602)248-0947
paul.cereghini@bowmanandbrooke.com
thomas.howard@bowmanandbrooke.com

---

[5] The Riddell Defendants are not moving to dismiss any entities in their request for judicial notice, but reserve the right to do so, if necessary, at the appropriate time.

Robert L. Wise
Eden M. Darrell
BOWMAN AND BROOKE LLP
1111 East Main Street, Suite 2100
Richmond, VA 23219
Telephone: (804) 649-8200
Fax: (804) 649-1762
rob.wise@bowmanandbrooke.com
eden.darrell@bowmanandbrooke.com

Thomas P. Wagner
MARSHALL, DENNEHY, WARNER,
COLEMAN & GOGGIN
2000 Market Street, Suite 2300
Philadelphia, PA 19103
Telephone: (215) 575-4562
Facsimile: (215) 575-0856
tpwagner@mdwcg.com

Attorneys for Defendants RIDDELL, INC.; ALL AMERICAN SPORTS CORPORATION; RIDDELL SPORTS GROUP, INC.; EASTON-BELL SPORTS, INC.; EASTON-BELL SPORTS, LLC; EB SPORTS CORP.; and RBG HOLDINGS CORP.

## CERTIFICATE OF SERVICE

The undersigned certifies that on December 13, 2012, the foregoing Riddell Defendants' Reply Brief in Support of Request for Judicial Notice was electronically filed and served via ECF on all counsel of record registered to receive service via the Court's CM/ECF system.

          /s/ Paul G. Cereghini