IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE NATIONAL FOOTBALL PLAYERS' CONCUSSION INJURY LITIGATION | : : : : : | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO<br><br>All Actions | : : : : : : | |

**MEMORANDUM OF LAW IN SUPPORT OF BRAIN INJURY ASSOCIATION OF AMERICA'S MOTION TO BE DESIGNATED AMICUS CURIAE WITH THE RIGHT TO REVIEW THE PROPOSED SETTLEMENT AND RELEVANT DOCUMENTS, AND FOR LEAVE TO FILE AN AMICUS CURIAE BRIEF**

### Introduction

Rarely is a subject so pervasive that it regularly crosses multiple sections of a newspaper, from headline news to sports, science, technology, and health. Rarer still is it when that subject, despite its ubiquity, is ill-understood by the public. Such is the case with brain injury. Founded in 1980, the Brain Injury Association of America ("BIAA") is the nation's oldest and largest nationwide brain injury advocacy organization. Its mission is to advance the causes of brain injury prevention, research, treatment, and education, and to improve the quality of life for all individuals affected by brain injury. Although BIAA has achieved noteworthy successes in its mission, much work remains on all fronts.

The case presently before the Court deals with one class of brain injury victims—retired professional football players—but its resolution likely will affect similar lawsuits brought on behalf of other classes of brain injury victims, as well as the treatment and prevention of brain

injury generally. Based on publicly available information, the proposed settlement in this case will include a provision of funds for research and education on brain injury, as well as an injury compensation fund that may disfavor persons whose injuries are not yet manifest even though scientific studies now identify brain injury as a progressive disease. As such, the resolution of this complicated case is of great public interest. After decades of work in the field, BIAA is uniquely capable of assisting the Court's evaluation of the public-interest consequences of the proposed settlement. Accordingly, BIAA respectfully asks the Court for leave to participate as *amicus curiae* so that BIAA can review the proposed settlement (once it is received by the Court), and comment on its fairness.

## Discussion

### A.   Standard

District courts have inherent authority and broad discretion to designate *amici curiae*. *Liberty Res., Inc. v. Philadelphia Hous. Auth.*, 395 F. Supp. 2d 206, 209 (E.D. Pa. 2005); *Sciotto v. Marple Newtown Sch. Dist.*, 70 F. Supp. 2d 553, 554 (E.D. Pa. 1999). Although no Federal Rule of Civil Procedure guides the analysis, district courts grant *amicus curiae* status where (1) the proposed *amicus* has a "special interest" in the particular case; (2) that interest is not represented competently or at all in the case; (3) the proffered information is timely and useful; and (4) the *amicus* is not partial to a particular outcome in the case. *Liberty Res.*, 395 F. Supp. 2d at 209. "'There is no rule . . . that amici must be totally disinterested,'" *id.* (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982)), and there is no requirement that *amicus* must not be motivated by pecuniary concerns, *see Neonatology Assocs., P.A. v. C.I.R.*, 293 F.3d 128, 131 (3d Cir. 2002). Participation by an *amicus* may be particularly appropriate where the *amicus* will "ensure a 'complete and plenary presentation of difficult issues' in a case involving important

public interests," *Liberty Res.*, 395 F. Supp. 2d at 209-10, or where the *amicus* "can contribute to the court's understanding of the consequences of the settlement proposed by the parties," *Harris v. Pernsley*, 820 F.2d 592, 603 (3d Cir. 1987). Indeed, some courts (including this Court) have granted "amicus 'plus'" status to qualified entities, which enables the *amicus* to receive documents and discovery, and file briefs and memoranda on motions before the court where *amicus*' "participation will assist the Court in reaching a just decision . . . ." *Liberty Res.*, 395 F. Supp. 2d at 210.

      **B.**     **BIAA Meets This Standard and Should be Designated *Amicus Curiae*, Permitted to Review the Proposed Settlement and Relevant Documents, and Given Leave to File an Amicus Curiae Brief Addressing the Fairness of the Settlement.**

BIAA should be designated *amicus curiae* because it has at least two special interests in this case. *See id.* at 209. First, based on publicly available information, defendant National Football League will reportedly allocate $10 million of the settlement funds toward "medical, safety, and injury-prevention research." *See* Press Release, Alt. Dispute Resolution Ctr., NFL, Retired Players Resolve Concussion Litigation; Court-Appointed Mediator Hails "Historic" Agreement, at 4, *available at* http://nfllabor.files.wordpress.com/2013/08/press-release-2.pdf. As the nation's leading advocate for all persons who have sustained brain injuries, BIAA has an interest in ensuring that these funds are directed toward projects with the greatest scientific promise and benefit for players and the public. BIAA's deep understanding of the disease-causative and disease-accelerative nature of brain injury, as well as the episodic and long-term treatment and support needs of patients and family caregivers, can help the Court evaluate questions of neuroscience and public health that the parties might not have sufficient incentive or expertise to bring to the Court's attention.

Second, according to the same report, the largest piece of the settlement (at least $675 million) will go toward an injury compensation fund for retired players for eligible retired players who manifest severe cognitive impairment within 10 years of the date of the proposed settlement. *Id.* at 3–4.  BIAA and its team of experts (including National Medical Director Brent E. Masel, M.D., who authored the seminal paper, "Conceptualizing Brain Injury as a Chronic Disease"), are uniquely qualified to help the Court evaluate questions of fairness with respect to eligibility parameters and compensation levels in the proposed settlement by analyzing how these determinations relate to the progressive physical, psychiatric, and cognitive disease processes that are caused and/or accelerated by brain injury, but may not manifest in clinically significant symptoms upon initial examination.

In addition, BIAA satisfies *Liberty Resources*' second prong because its special interests are not represented currently in the litigation.  395 F. Supp. 2d at 209.  Whereas both plaintiffs and defendants represent their own limited constituencies, BIAA is an established, recognized, and independent national organization, whose interest is in the entire field of brain injury, and whose work benefits all who suffer because of it.  For example, there is no particular reason to expect either the plaintiffs or the defendants to care, to any meaningful degree, where the money for brain injury research and education is allocated, but the public has a strong interest in ensuring that these funds are not squandered as a public-relations afterthought to the overall settlement.  Similarly, while plaintiffs' counsel are understandably and quite properly focused on the existing plaintiffs, there is a strong public interest in ensuring that the eligibility criteria adopted in this settlement do not exclude individuals who may already be at great risk of future neurological deficits, and who ultimately could make significant future claims on public health resources.

In *Liberty Resources*, this Court bestowed *amicus*-plus status on a party after denying its motion to intervene where the proposed intervenor was a "stakeholder" in that case's core debate, but had "no place at the table." *Id.* at 210.  Similarly, BIAA, as the voice of brain injury in the United States, is a recognized and uniquely qualified stakeholder in the discussion of how best to prevent and treat brain injury at large, and how to improve the quality of life for all individuals affected by brain injury.  Its participation in this case can help the Court ensure that these larger public interests are not neglected in the settlement.

BIAA also satisfies *Liberty Resources*' third prong because it proffers timely and useful information that will aid the Court in assessing the fairness of the proposed settlement.  *Id.* at 209.  BIAA's expertise regarding brain injury, rooted in its comprehensive, nationwide network of physicians, researchers, rehabilitation experts and facilities, caregivers, and brain injury sufferers and their families, makes it uniquely qualified to proffer useful information to the Court.  In particular, BIAA's expert knowledge of how brain injuries evolve and progress across a lifespan will aid the Court in assessing the fairness of how eligibility determinations for the injury compensation fund are determined, and its work advocating for brain injury prevention, research, treatment, and education will enable BIAA to advise the Court on the fairness of any allocation of funds toward these activities.  Further, because the parties have not yet submitted the proposed settlement to the Court, BIAA's participation and briefing will be timely and will not delay the Court's assessment of the settlement's fairness.

Moreover, BIAA is not partial to a particular outcome in this case, and thus satisfies the final prong of the *Liberty Resources* test.  *Id.*  BIAA is not partial to whether the case settles; and if it does, BIAA does not care whether any defendant admits liability as part of the settlement, or whether any particular amount goes to any specific player.  BIAA's mission is to help the

5

victims (and their families) whose lives have been devastated by brain injury, to educate the public (including present and future participants in contact sports) about brain injury, and to work toward preventing brain injury.

Finally, this case is one of great public concern, not only because of professional football's popularity, but also (and more importantly) because of the ripple effects—beyond the gridiron—any resolution here will have on the future of education, research, diagnosis, and treatment of brain injury. Particularly with regard to the proposed settlement's research and injury compensation funds, and owing to BIAA's unique expertise in the field, BIAA's participation in this case will serve the Court well as it seeks to reach a proper decision on the fairness of the proposed settlement.

*   *   *

## Conclusion

For the foregoing reasons, BIAA respectfully requests that the Court grant BIAA's motion to participate in this case as *amicus curiae*, with the right to review the proposed settlement agreement (once it is received by the Court) and relevant documents, so that BIAA can file an *amicus curiae* brief to assist the Court in assessing the fairness of the proposed settlement.

Dated this 17th day of December, 2013.

Respectfully submitted,

Brain Injury Association of America, Proposed *Amicus Curiae*

By: /s/ Christopher J. Wright

Christopher J. Wright, DC Bar No. 367384
Mark A. Grannis, DC Bar No. 429268
Stephen W. Miller,* NY Bar No. 4826061
Wiltshire & Grannis LLP
1200 Eighteenth Street NW
12th Floor
Washington, DC 20036
(202) 730-1300
(202) 730-1301 (fax)
cwright@wiltshiregrannis.com
mgrannis@wiltshiregrannis.com
smiller@wiltshiregrannis.com
(Admitted *pro hac vice*)
*Admitted only in New York; supervised by Patrick O'Donnell, a member of the DC Bar, while DC Bar application pending.