# Exhibit A

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB |
|  | MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated,* Plaintiffs, | **Hon. Anita B. Brody** |
|  | CIVIL ACTION NO: *14-29* |
| v. |  |
| National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc., Defendants. |  |
| THIS DOCUMENT RELATES TO: ALL ACTIONS |  |

**[PROPOSED] ORDER**
**(1) GRANTING PRELIMINARY APPROVAL OF**
**THE PROPOSED CLASS ACTION SETTLEMENT AGREEMENT;**
**(2) CONDITIONALLY CERTIFYING A SETTLEMENT CLASS AND**
**SUBCLASSES;**
**(3) APPOINTING CO-LEAD CLASS COUNSEL, CLASS COUNSEL,**
**AND SUBCLASS COUNSEL;**
**(4) APPROVING THE DISSEMINATION OF CLASS NOTICE;**
**(5) SCHEDULING A FAIRNESS HEARING; AND**
**(6) STAYING CLAIMS AS TO THE NFL PARTIES AND**
**ENJOINING PROPOSED SETTLEMENT CLASS MEMBERS**
**FROM PURSUING RELATED LAWSUITS**

**AND NOW**, this ___ day of _____, 2014, upon consideration of the Motion of Proposed Co-Lead Class Counsel, Class Counsel, and Subclass Counsel, for an Order: (1) Granting Preliminary Approval of the Class Action Settlement; (2) Conditionally Certifying a Settlement Class and Subclasses; (3) Appointing Co-Lead Class Counsel, Class Counsel, and Subclass Counsel; (4) Approving the Dissemination of Class Notice; (5) Scheduling a Fairness Hearing; and (6) Staying Claims as to the NFL Parties and Enjoining Proposed Settlement Class Members from Pursuing Related Lawsuits (the "Motion for Preliminary Approval and Conditional Class Certification"), pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e), it is hereby **ORDERED** that:

1.      Capitalized terms used in this Order (the "Preliminary Approval and Conditional Class Certification Order") have the same meaning as those defined in the Settlement Agreement dated January 6, 2014, between the National Football League and NFL Properties LLC (collectively, the "NFL Parties") and Class and Subclass Representative Plaintiffs, attached as Exhibit B to the Motion for Preliminary Approval and Class Certification (the "Settlement").

2.      The Settlement Agreement, including all exhibits attached thereto, is preliminarily approved by the Court as being fair, reasonable and adequate. The Court preliminarily finds that the Settlement Agreement was negotiated and entered into at arm's length, in good faith, free of collusion, and without detriment to the proposed Settlement Class and Subclasses.    The Settlement is also found to be within the range possible for judicial approval at a prospective Fairness Hearing.

3.      The Court finds that the requirements of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(3) have been satisfied for purposes of preliminary approval of the Settlement.

1

4.      The following nationwide Settlement Class is conditionally certified, for settlement purposes only, and shall consist of:

a.      All living NFL Football Players who, prior to the date of the Preliminary Approval and Class Certification Order, retired, formally or informally, from playing professional football with the NFL or any Member Club, including American Football League, World League of American Football, NFL Europe League and NFL Europa League players, or were formerly on any roster, including preseason, regular season, or postseason, of any such Member Club or league and who no longer are under contract to a Member Club and are not seeking active employment as players with any Member Club, whether signed to a roster or signed to any practice squad, developmental squad, or taxi squad of a Member Club ("Retired NFL Football Players");

b.      Authorized representatives, ordered by a court or other official of competent jurisdiction under applicable state law, of deceased or legally incapacitated or incompetent Retired NFL Football Players ("Representative Claimants"); and

c.      Spouses, parents, children who are dependents, or any other persons who properly under applicable state law assert the right to sue independently or derivatively by reason of their relationship with a Retired NFL Football Player or deceased Retired NFL Football Player ("Derivative Claimants").

5.     The following Settlement Subclasses are conditionally certified for settlement purposes only:

a.     Subclass 1, which shall consist of:  Retired NFL Football Players who were not diagnosed with a Qualifying Diagnosis[1] prior to the date of the Preliminary Approval and Class Certification Order and their Representative Claimants and Derivative Claimants; and,

b.     Subclass 2, which shall consist of:  Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis prior to the date of the Preliminary Approval and Class Certification Order and their Representative Claimants and Derivative Claimants, and the Representative Claimants of deceased Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis prior to death or who died prior to the date of the Preliminary Approval and Class Certification Order and who received a post-mortem diagnosis of Chronic Traumatic Encephalopathy.

6.     The following Subclass representatives are preliminarily appointed for each of the Settlement Subclasses:

a.     Subclass 1: Shawn Wooden; and

b.     Subclass 2: Kevin Turner.

7.     Christopher A. Seeger and Sol Weiss are appointed as Co-Lead Class Counsel, and Steven C. Marks and Gene Locks are appointed as Class Counsel.

---

[1] A "Qualifying Diagnosis" is defined in the Settlement Agreement as Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, ALS and/or Death with CTE, as set forth in Exhibit 1 (Injury Definitions) to the Settlement Agreement.

8.     Arnold Levin is appointed as Subclass Counsel for Subclass 1 and Dianne M. Nast is appointed as Subclass Counsel for Subclass 2.

9.     Plaintiffs' Executive Committee and Plaintiffs' Steering Committee are appointed as Of Counsel.

10.    The Garretson Resolution Group, Inc. is preliminarily appointed to serve as the Baseline Assessment Program ("BAP") Administrator and Lien Resolution Administrator.

11.    BrownGreer PLC ("BrownGreer") is preliminarily appointed to serve as the Claims Administrator.

12.    Citibank, N.A. is preliminarily appointed as the Trustee.

13.    Kinsella Media, LLC is appointed to serve as the Settlement Class Notice Agent.

14.    The Long-Form Notice to Settlement Class Members and the Summary Notice, attached hereto as Exhibits 1 and 2, respectively, are approved and meet the requirements of Fed. R. Civ. P. 23(e) and Fed. R. Civ. P. 23(c)(2)(B) and of due process.

15.    The protocol for dissemination of notice to Settlement Class and Subclass Members, as set forth in the Settlement Class Notice Plan (attached to the Declaration of Katherine Kinsella), is approved.

16.    Within twenty-one (21) days of this Order, Co-Lead Class Counsel shall cause the Long-Form Notice to be sent via first-class mail, postage prepaid to: (i) all known Retired NFL Football Players, their Representative Claimants and Derivative Claimants and (ii) counsel for Retired NFL Football Players, their Representative Claimants and Derivative Claimants, if known. Where an attorney represents more than one Settlement Class Member, it shall be sufficient to provide that attorney with a single copy of the notice. Notice to a Settlement Class

4

Member's counsel of record shall constitute notice to the Settlement Class Member, even if the Settlement Class Member does not receive independent notice.

17.     On or before _____, 2014, Co-Lead Class Counsel shall cause Publication Notice to be initiated by consumer publications in various Media as follows:

        a.     Print Publications – Time, Jet, People, and Sports Illustrated;

        b.     Broadcast Television – Network Television and Cable (which may include ABC, CBS, CNN, Headline News and The Weather Channel) and NFL Network;

        c.     Broadcast Radio (which may include American Urban Radio Networks);

        d.     Online Media – Internet Banner Ads (NFL.com, CNN.com, Facebook.com, Weather.com, Senior Living Executive, Microsoft Media Network, Specific Media and Yahoo!) and Keyword Search (Google, including Google, AOL, and Ask.com and Bing, including Bing/MSN and Yahoo!).

18.     The NFL Parties shall pay the cost of Settlement Class Notice, up to $4,000,000, as set forth in the Settlement Agreement.

19.     The Settlement Class Notice shall be posted on the Court's website so as to commence the notice period.

20.     The Opt Out procedure set forth in Section 14.2 of the Settlement Agreement is approved. Any Settlement Class Member wishing to Opt Out of the Settlement Class must notify BrownGreer (as the preliminarily approved Claims Administrator), in writing, of his or her intention to Opt Out of the Settlement Class, postmarked no later than _____, 2014, which is the last day of the Opt Out/objection period. To be effective, the Opt Out notice must set forth the Settlement Class Member's printed name, address, telephone number, and date of birth and enclose a copy of his or her driver's license or other government issued

identification, along with a sentence stating: "I wish to exclude myself from the Settlement Class in *In re: National Football League Players' Concussion Injury Litigation*, No. 2:12-md-02323" (or substantially similar clear and unambiguous language). The Opt Out notice must contain the dated Personal Signature of the individual Settlement Class Member. Attorneys for Settlement Class Members may submit a written request to Opt Out on behalf of a Settlement Class Member, but such request must contain the Personal Signature of the Settlement Class Member.

21.    The procedure for objecting to the Settlement, as set forth in Section 14.3 of the Settlement Agreement, is approved.    All objections shall be postmarked no later than _____, 2014, or they will be deemed waived. All objections must contain the Personal Signature of the individual Settlement Class Member.

22.    No later than fifteen (15) days prior to the Fairness Hearing, BrownGreer (as the preliminarily appointed Claims Administrator) shall prepare and file with the Court, and serve on Counsel for the NFL Parties, Co-Lead Class Counsel, Class Counsel and Subclass Counsel, a list of all persons who have timely Opted Out of the Settlement Class or objected to the Settlement.

23.    Co-Lead Class Counsel, Class Counsel, Subclass Counsel and Counsel for the NFL Parties shall file any response to the objections, or any papers in support of final approval of the Settlement, no less than five (5) days prior to the date set for the Fairness Hearing.

24.    Any Settlement Class Member (or counsel individually representing him or her, if any) seeking to make an appearance at the Fairness Hearing must file with the Court no later than _____, 2014, a written notice of his or her intention to appear at the Fairness Hearing.

6

25.     A formal Fairness Hearing shall take place on the ___ day of _____,

2014 at _____ o'clock in the a.m./p.m., in order to consider comments on and objections to the

proposed Settlement and to consider whether: (a) to approve thereafter the Settlement as fair,

reasonable and adequate, pursuant to Rule 23 of the Federal Rules of Civil Procedure, (b) to

finally certify the Settlement Class and Subclasses, and (c) to enter the Final Order and

Judgment, as provided in Article XX of the Settlement Agreement.  However, the Fairness

Hearing shall be subject to adjournment by the Court without further notice, other than that

which may be posted by the Court, on the Court's website.

26.     This matter and all Related Lawsuits in this Court are stayed as to the NFL

Parties.  All proposed Settlement Class Members are enjoined from filing, commencing,

prosecuting, intervening in, participating in, continuing to prosecute and/or maintaining, as

plaintiffs, claimants, or class members in, any other lawsuit or administrative, regulatory,

arbitration, or other proceeding in any jurisdiction based on, relating to, or arising out of the

claims and causes of action, or the facts and circumstances at issue, in the Class Action

Complaint and/or the Released Claims, unless and until they have been excluded from the

Settlement Class by action of the Court, or until the Court denies approval of the Class Action

Settlement (and such denial is affirmed by the Court of last resort), or until the Settlement

Agreement is otherwise terminated, except that claims for workers' compensation and claims

alleging entitlement to NFL CBA Medical and Disability Benefits will not be stayed or enjoined.

There is no stay of any actions against Riddell.

27.     The NFL Parties have the right to communicate orally and in writing with, and to

respond to inquiries from, Settlement Class Members on matters unrelated to the Class Action

Settlement in connection with the NFL Parties' normal business.

7

28.    If the Settlement Agreement is terminated or is not consummated for any reason, the preliminary certification of the Settlement Class and Subclasses shall be void, and the Plaintiffs and NFL Parties shall be deemed to have reserved all of their rights to propose or oppose any and all class certification issues.


SO ORDERED this _____ day of _____, 2014.




                                          _____
                                          Anita B. Brody
                                          United States District Court Judge

8

# Exhibit A-1

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

# $760 Million NFL Concussion Litigation Settlement

## Retired NFL Football Players May Be Eligible for Money and Medical Benefits

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

- The National Football League ("NFL") and NFL Properties LLC (collectively, "NFL Parties") have agreed to a $760 million Settlement of a class action lawsuit seeking medical monitoring and compensation for brain injuries allegedly caused by head impacts experienced in NFL football. The NFL Parties deny that they did anything wrong.

- The Settlement includes all retired players of the NFL, the American Football League ("AFL") that merged with the NFL, the World League of American Football, NFL Europe League, and NFL Europa League, as well as immediate family members of retired players and legal representatives of incapacitated, incompetent or deceased retired players.

- The Settlement will provide eligible retired players with:

    - Baseline neuropsychological and neurological exams to determine if retired players are: a) currently suffering from any neurocognitive impairment, including impairment serious enough for compensation, and b) eligible for additional testing and/or treatment ($75 million);

    - Monetary awards for diagnoses of ALS (Lou Gehrig's disease), Parkinson's Disease, Alzheimer's Disease, early and moderate Dementia and certain cases of chronic traumatic encephalopathy (CTE) (a neuropathological finding) diagnosed after death ($675 million); and

    - Education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of retired players regarding the NFL's medical and disability programs and other educational programs and initiatives ($10 million).

- To get money, proof that injuries were caused by playing NFL football is not required.

- **Settlement Class Members <u>must</u> register to get benefits. Sign up at the website for notification of the registration date.**

- Your legal rights are affected even if you do nothing. Please read this Notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **STAY IN THE SETTLEMENT CLASS** | You do not need to do anything to be included in the Settlement Class. However, once the Court approves the Settlement, you will be bound by the terms and releases contained in the Settlement. There will be later notice to explain when and how to register for Settlement benefits (*see* Question 26). |
| **ASK TO BE EXCLUDED** | You will get no benefits from the Settlement if you exclude yourself ("opt-out") from the Settlement. Excluding yourself is the only option that allows you to participate in any other lawsuit against the NFL Parties about the claims in this case (*see* Question 30). |
| **OBJECT** | Write to the Court if you do not like the Settlement (*see* Question 35). Ask to speak in Court about the fairness of the Settlement at the final approval hearing (*see* Question 39). |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

**QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

- The Court in charge of this case still has to decide whether to approve the Settlement.

- **This Notice is only a summary of the Settlement Agreement and your rights. You are encouraged to carefully review the complete Settlement Agreement at www.NFLConcussionSettlement.com.**

| What This Notice Contains | |
|---|---|

## CHAPTER 1: INTRODUCTION

**BASIC INFORMATION**................................................................................**Page 5**

1.  Why is this Notice being provided?
2.  What is the litigation about?
3.  What is a class action?
4.  Why is there a Settlement?
5.  What are the benefits of the Settlement?

**WHO IS PART OF THE SETTLEMENT?** ...............................................**Page 7**

6.  Who is included in the Settlement Class?
7.  What players are not included in the Settlement Class?
8.  What if I am not sure whether I am included in the Settlement Class?
9.  What are the different levels of neurocognitive impairment?
10. Must a retired player be vested under the NFL Retirement Plan to receive Settlement benefits?

## CHAPTER 2: SETTLEMENT BENEFITS

**THE BASELINE ASSESSMENT PROGRAM**............................................**Page 9**

11. What is the Baseline Assessment Program ("BAP")?
12. Why should I get a BAP baseline examination?
13. How do I schedule a baseline assessment examination and where can I get it done?

**MONETARY AWARDS**..............................................................................**Page 10**

14. What diagnoses qualify for monetary awards?
15. Do I need to prove that playing professional football caused my Qualifying Diagnosis?
16. How much money will I receive?
17. How does the age of the retired player at the time of first diagnosis affect his monetary award?
18. How does the number of seasons a retired player played affect his monetary award?
19. How do prior strokes or brain injuries of a retired player affect his monetary award?
20. How is a retired player's monetary award affected if he does not participate in the BAP program?
21. Can I receive a monetary award even though the retired player is dead?
22. Will this Settlement affect my participation in NFL or NFLPA related benefits programs?
23. Will this Settlement prevent me from bringing workers' compensation claims?

**EDUCATION FUND**.................................................................................**Page 14**

24. What type of education programs are supported by the Settlement?

## CHAPTER 3: YOUR RIGHTS

**REMAINING IN THE SETTLEMENT**......................................................**Page 14**

25. What am I giving up to stay in the Settlement Class?

**HOW TO GET BENEFITS**.......................................................................**Page 15**

**QUESTIONS? CALL 1-800-000-0000 OR VISIT www.NFLConcussionSettlement.com**

26.	How do I get Settlement benefits?
27.	Is there a time limit for Retired NFL Football Players to file claims for monetary awards?
28.	Can I re-apply for compensation if my claim is denied?
29.	Can I appeal the determination of my monetary award claim?

## EXCLUDING YOURSELF FROM THE SETTLEMENT..............................................Page 15
30.	How do I get out of the Settlement?
31.	If I do not exclude myself, can I sue the NFL Parties for the same thing later?
32.	If I exclude myself, can I still get benefits from this Settlement?

## THE LAWYERS REPRESENTING YOU................................................................Page 16
33.	Do I have a lawyer in the case?
34.	How will the lawyers be paid?

## OBJECTING TO THE SETTLEMENT....................................................................Page 17
35.	How do I tell the Court if I do not like the Settlement?
36.	What is the difference between objecting to the Settlement and excluding myself?

## THE COURT'S FAIRNESS HEARING...................................................................Page 18
37.	When and where will the Court decide whether to approve the Settlement?
38.	Do I have to attend the hearing?
39.	May I speak at the hearing?

## GETTING MORE INFORMATION.........................................................................Page 19
40.	How do I get more information?

# CHAPTER 1: INTRODUCTION

## BASIC INFORMATION

### 1. Why is this Notice being provided?

The Court in charge of this case authorized this Notice because you have a right to know about the proposed Settlement of this lawsuit and about all of your options before the Court decides whether to give final approval to the Settlement. This Notice summarizes the Settlement and explains your legal rights and options.

Judge Anita B. Brody of the United States District Court for the Eastern District of Pennsylvania is overseeing this case. The case is known as *In re: National Football League Players' Concussion Injury Litigation*, No. 2:12-md-02323. The people who sued are called the "Plaintiffs." The National Football League and NFL Properties LLC are called the "NFL Defendants."

The Settlement may affect your rights if you are: (a) a retired player of the NFL, AFL, World League of American Football, NFL Europe League, or NFL Europa League, (b) an authorized representative of a deceased or legally incapacitated or incompetent retired player of those leagues, or (c) an individual with a close legal relationship with a retired player of those leagues, such as a spouse, parent or child.

### 2. What is the litigation about?

The Plaintiffs claim that retired players experienced head trauma during their NFL football playing careers that resulted in brain injuries, which have caused or may cause them long-term neurological problems. The Plaintiffs accuse the NFL Parties of being aware of the evidence and the risks associated with repetitive traumatic brain injuries but failing to warn and protect the players against the long-term risks, and ignoring and concealing this information from the players. The NFL Parties deny the claims in the litigation.

### 3. What is a class action?

In a class action, one or more people, the named plaintiffs (who are also called proposed "class representatives") sue on behalf of themselves and other people with similar claims. All of these people together are the proposed "class" or "class members." When a class action is settled, one court resolves the issues for all class members (in the settlement context, "settlement class members"), except for those who exclude themselves from the settlement. In this case, the proposed class representatives are Kevin Turner and Shawn Wooden. Excluding yourself means that you will not receive any benefits from the Settlement. The process for excluding yourself is described in Question 30 of this Notice.

### 4. Why is there a Settlement?

After extensive settlement negotiations mediated by retired United States District Court Judge Layn Phillips, the Plaintiffs and the NFL Parties agreed to the Settlement.

A settlement is an agreement between a plaintiff and a defendant to resolve a lawsuit. Settlements conclude litigation without the court or a jury ruling in favor of the plaintiff or the defendant. A settlement allows the parties to avoid the cost and risk of a trial, as well as the delays of litigation.

If the Court approves this Settlement, the claims of all persons affected (*see* Question 6) and the litigation between these persons and the NFL Parties are over. The persons affected by the Settlement are eligible for the benefits summarized in this Notice and the NFL Parties will no longer be legally responsible to defend against the claims made in this litigation.

The Court has not and will not decide in favor of the retired players or the other persons affected by the Settlement or the NFL Parties, and by reviewing this Settlement the Court is not making and will not make any findings that any law was broken or that the NFL Parties did anything wrong.

The proposed Class Representatives and their lawyers ("Co-Lead Class Counsel," "Class Counsel," and "Subclass Counsel," *see* Question 33) believe that the proposed Settlement is best for everyone who is affected. The factors that Co-Lead Class Counsel, Class Counsel, and Subclass Counsel considered included the uncertainty and delay associated with continued litigation, a trial and appeals, and the uncertainty of particular legal issues that are yet to be determined by the Court. Co-Lead Class Counsel, Class Counsel and Subclass Counsel balanced these and other substantial risks in determining that the Settlement is fair, reasonable and adequate in light of all circumstances and in the best interests of the Settlement Class Members.

The Settlement Agreement is available at www.NFLConcussionSettlement.com.

## 5. What are the benefits of the Settlement?

Under the Settlement, the NFL Parties will pay $760 million to fund:

- Baseline neuropsychological and neurological examinations for eligible retired players, and additional medical testing, counseling and/or treatment if they are diagnosed with moderate cognitive impairment during the baseline examinations (up to $75 million, "Baseline Assessment Program") (*see* Questions 11-13);

- Monetary awards for diagnoses of ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) and Death with CTE prior to [Date of Preliminary Approval Order] ($675 million, "Monetary Award Fund") (*see* Questions 14-21); and

- Education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of retired players regarding the NFL's medical and disability programs and other educational programs and initiatives. ($10 million) (*see* Question 24).

In addition, the NFL Parties will pay the cost of notice (up to $4 million) and half of the compensation for a Special Master to assist the Court in overseeing aspects of the Settlement,  for the first 5 years of the Settlement.  The Court may extend the term for the Special Master.  Other administrative costs and expenses will be paid out of the Monetary Award Fund, except for Baseline Assessment Program costs and expenses, which will be paid out of the Baseline Assessment Program Fund.

In the event the Monetary Award Fund is insufficient to pay all approved monetary claims, the NFL Parties have agreed to contribute up to an additional $37.5 million, subject to Court approval.  Based on extensive consultation with economic and medical experts, Co-Lead Class Counsel, Class Counsel, and Subclass Counsel believe the funding will be sufficient to pay all eligible monetary claims.

The details of the Settlement benefits are in the Settlement Agreement, which is available at www.NFLConcussionSettlement.com.

**Note:** The Baseline Assessment Program and Monetary Award Fund are completely independent of the NFL Parties and any benefit programs that have been created between the NFL and the NFL Players Association. The NFL Parties are not involved in determining the validity of claims.

# WHO IS PART OF THE SETTLEMENT?

You need to decide whether you are included in the Settlement.

**6. Who is included in the Settlement Class?**

This Settlement Class includes three types of people:

Retired NFL Football Players:  Prior to [Date of Preliminary Approval Order], you (1) have retired, formally or informally, from playing professional football with the NFL or any Member Club, including AFL, World League of American Football, NFL Europe League, and NFL Europa League players, or (2) were formerly on any roster, including preseason, regular season, or postseason, of any such Member Club or league and no longer are under contract to a Member Club and are not seeking active employment as a player with any Member Club, whether signed to a roster or signed to any practice squad, developmental squad, or taxi squad of a Member Club.

Representative Claimants:  An authorized representative, ordered by a court or other official of competent jurisdiction under applicable state law, of a deceased or legally incapacitated or incompetent Retired NFL Football Player.

Derivative Claimants:  A spouse, parent, dependent child, or any other person who properly under applicable state law asserts the right to sue independently or derivatively by reason of his or her relationship with a living or deceased Retired NFL Football Player.  (For example, a spouse asserting the right to sue due to the injury of a husband who is a Retired NFL Football Player.)

The Settlement recognizes two separate groups ("Subclasses") of Settlement Class Members based on the Retired NFL Football Player's injury status as of [Date of Preliminary Approval Order]:

- Subclass 1 includes Retired NFL Football Players who were not diagnosed with ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) or Death with CTE prior to [Date of Preliminary Approval Order], and their Representative Claimants and Derivative Claimants.

- Subclass 2 includes:

  (a) Retired NFL Football Players who were diagnosed with ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), or Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) prior to [Date of Preliminary Approval Order], and their Representative Claimants and Derivative Claimants; and

(b) Representative Claimants of deceased Retired NFL Football Players who were diagnosed with ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), or Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) prior to death or who died prior to [Date of Preliminary Approval Order] and received a diagnosis of Death with CTE.

## 7.  What players are not included in the Settlement Class?

The Settlement Class does not include:  (a) current NFL players, and (b) people who tried out for NFL or AFL Member Clubs, or World League of American Football, NFL Europe League or NFL Europa League teams, but did not make it onto preseason, regular season or postseason rosters, or practice squads, developmental squads or taxi squads.

## 8.  What if I am not sure whether I am included in the Settlement Class?

If you are not sure whether you are included in the Settlement Class, you may call 1-800-000-0000 with questions or visit www.NFLConcussionSettlement.com.  You may also write with questions to NFL Concussion Settlement, P.O. Box 0000, City, ST 00000.  You may also consult with your own attorney.

## 9.  What are the different levels of neurocognitive impairment?

Various levels of neurocognitive impairment are used in this Notice.  More details can be found in the Injury Definitions, which are available at www.NFLConcussionSettlement.com or by calling 1-800-000-0000.

- Level 1 Neurocognitive Impairment covers ***moderate cognitive impairment***.  It will be established in part with evidence of decline in performance in at least two areas subject to clinical evaluative testing (such as complex attention, executive function, learning, memory, language and perceptual skill) and related functional impairment.

- Level 1.5 Neurocognitive Impairment covers ***early Dementia***.  It will be established in part with evidence of moderate to severe cognitive decline, which includes a decline in performance in at least two areas subject to clinical evaluative testing (such as complex attention, executive function, learning, memory, language and perceptual skill) and related functional impairment.

- Level 2 Neurocognitive Impairment covers ***moderate Dementia***.  It will be established in part with evidence of severe decline in performance in at least two areas subject to clinical evaluative testing (such as complex attention, executive function, learning, memory, language and perceptual skill) and related functional impairment.

If neurocognitive impairment is temporary and only occurs with delirium, or as a result of substance abuse or medicinal side effects, it is not covered by the Settlement.

## 10.  Must a retired player be vested under the NFL Retirement Plan to receive Settlement benefits?

No.  A retired player can be a Settlement Class Member regardless of whether he is vested due to credited seasons or total and permanent disability under the Bert Bell/Pete Rozelle NFL Player Retirement Plan.

# CHAPTER 2:  SETTLEMENT BENEFITS

## THE BASELINE ASSESSMENT PROGRAM

### 11.  What is the Baseline Assessment Program ("BAP")?

All living retired players who have earned at least one-half of an Eligible Season (*see* Question 18), who do not exclude themselves from the Settlement (*see* Question 30), and who timely register to participate in the Settlement (*see* Question 26) may participate in the Baseline Assessment Program ("BAP").

The BAP will provide baseline neuropsychological and neurological assessment examinations to determine whether retired players are currently suffering from cognitive impairment.  Retired players will have from two to ten years, depending on their age as of the date the Settlement is finally approved and any appeals are fully resolved, to have a baseline examination conducted through a nationwide network of qualified and independent medical providers.

- Retired players 43 or older as of the date the Settlement goes into effect will need to have a baseline examination within two years of the start of the program.

- Retired players under the age of 43 as of the date the Settlement goes into effect will need to have a baseline examination within 10 years, or before they turn 45, whichever comes sooner.

Retired players who are diagnosed with Level 1 Neurocognitive Impairment (*i.e.*, moderate cognitive impairment) are eligible to receive further medical testing and/or treatment (including counseling and pharmaceuticals) for that condition for the ten-year term of the BAP or five years from diagnosis, whichever is longer.

Settlement Class Members who participate in the BAP will be encouraged to provide their confidential medical records for use in research into cognitive impairment and safety and injury prevention with respect to football players.

Although all retired players are encouraged to take advantage of the BAP and receive a baseline examination, you do not need to participate in the BAP to receive a monetary award, but your award may be reduced by 10% if you do not participate in the BAP, as explained in more detail in Question 20.

### 12.  Why should I get a BAP baseline examination?

Getting a BAP baseline examination will be beneficial to you and your family.  It will determine whether you have any cognitive impairment, and if you are diagnosed with Level 1 Neurocognitive Impairment (*i.e.*, moderate cognitive impairment), you are eligible to receive further medical testing and/or treatment for that condition.  In addition, whether or not you have any cognitive impairment today, the results of the BAP baseline examination can be used as a comparison to measure any subsequent deterioration of your cognitive condition over the course of your life.  Participants also will be examined by at least two experts during the BAP baseline examinations, a neuropsychologist and a neurologist, and the retired player and/or

his family members will have the opportunity to ask questions relating to any cognitive impairment during those examinations.

Participation in the BAP does not prevent you from filing a claim for a monetary award. For the next 65 years, retired players will be eligible for compensation paid from the Monetary Award Fund if they develop a Qualifying Diagnosis (*see* Question 14). Participation in the BAP also will help ensure that, to the extent you receive a Qualifying Diagnosis in the future, you receive the maximum monetary award to which you are entitled (*see* Question 20).

### 13. How do I schedule a baseline assessment examination and where can I get it done?

You need to register for Settlement benefits before you can get a baseline assessment examination. Registration will not be available until after the Court grants final approval to the Settlement and any appeals are fully resolved. **You can sign-up at www.NFLConcussionSettlement.com or by calling 1-800-000-0000 to receive additional notice about registration when it becomes available.**

The BAP Administrator will send notice to those retired players determined during registration to be eligible for the BAP, explaining how to arrange for an initial baseline assessment examination. The BAP will use a nationwide network of qualified and independent medical providers who will provide both the initial baseline assessment as well as any further testing and/or treatment. The BAP Administrator, which will be appointed by the Court, will establish the network of medical providers.

## MONETARY AWARDS

### 14. What diagnoses qualify for monetary awards?

Monetary awards are available for the diagnosis of ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia), or Death with CTE (the "Qualifying Diagnoses"). A Qualifying Diagnosis can occur at any time until the end of the 65-year term of the Monetary Award Fund.

If a retired player receives a monetary award based on a Qualifying Diagnosis, and later is diagnosed with a different Qualifying Diagnosis that entitles him to a larger monetary award than his previous award, he will be eligible for an increase in compensation.

### 15. Do I need to prove that playing professional football caused my Qualifying Diagnosis?

No. You do not need to prove that a Qualifying Diagnosis was caused by playing professional football or that you experienced head injuries in the NFL, AFL, World League of American Football, NFL Europe League, or NFL Europa League in order to receive a monetary award. The fact that a retired player receives a Qualifying Diagnosis is sufficient to be eligible for a monetary award.

You also do not need to exclude the possibility that the Qualifying Diagnosis was caused or contributed to by amateur football or other professional football league injuries or by various risk factors linked to the Qualifying Diagnosis.

### 16. How much money will I receive?

The amount of money you will receive depends on the retired player's:

**QUESTIONS? CALL 1-800-000-0000 OR VISIT www.NFLConcussionSettlement.com**

- Specific Qualifying Diagnosis,
- Age at the time he was diagnosed (*see* Question 17),
- Number of seasons played or practiced in the NFL or the AFL (*see* Question 18),
- Diagnosis of a prior stroke or traumatic brain injury (*see* Question 19),
- Participation in a baseline assessment exam (*see* Question 20), and
- Whether there are any legally enforceable liens on your award.

The table below lists the maximum amount of money available for each Qualifying Diagnosis before any adjustments are made.

| QUALIFYING DIAGNOSIS | MAXIMUM AWARD AVAILABLE |
|---|---|
| Amyotrophic lateral sclerosis (ALS) | $5 million |
| Death with CTE (diagnosed after death) | $4 million |
| Parkinson's Disease | $3.5 million |
| Alzheimer's Disease | $3.5 million |
| Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia) | $3 million |
| Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) | $1.5 million |

Monetary awards may be increased up to 2.5% per year during the 65-year Monetary Award Fund term for inflation.

To receive the maximum amount outlined in the table, a retired player must have played for at least five Eligible Seasons (*see* Question 18) and have been diagnosed when younger than 45 years old.

Derivative Claimants are eligible to be compensated from the monetary award of the retired player with whom they have a close relationship in an amount of 1% of that award. If there are multiple Derivative Claimants for the same retired player, the 1% award will be divided among the Derivative Claimants according to the law where the retired player (or his Representative Claimant, if any) resides.

**17. How does the age of the retired player at the time of first diagnosis affect his monetary award?**

Awards are reduced for retired players who were 45 or older when diagnosed. The younger a retired player is at the time of diagnosis, the greater the award he will receive. Setting aside the other downward adjustments to monetary awards, the table below provides:

- The average award for people diagnosed between the ages of 45-49; and
- The amount of the award for those under age 45 and over 79.

The actual amount will be determined based on each retired player's actual age at the time of diagnosis and on other potential adjustments.

| AGE AT DIAGNOSIS | ALS | DEATH w/CTE | PARKINSON'S | ALZHEIMER'S | LEVEL 2 | LEVEL 1.5 |
|---|---|---|---|---|---|---|
| Under 45 | $5,000,000 | $4,000,000 | $3,500,000 | $3,500,000 | $3,000,000 | $1,500,000 |
| 45 - 49 | $4,500,000 | $3,200,000 | $2,470,000 | $2,300,000 | $1,900,000 | $950,000 |
| 50 - 54 | $4,000,000 | $2,300,000 | $1,900,000 | $1,600,000 | $1,200,000 | $600,000 |
| 55 - 59 | $3,500,000 | $1,400,000 | $1,300,000 | $1,150,000 | $950,000 | $475,000 |
| 60 - 64 | $3,000,000 | $1,200,000 | $1,000,000 | $950,000 | $580,000 | $290,000 |
| 65 - 69 | $2,500,000 | $980,000 | $760,000 | $620,000 | $380,000 | $190,000 |
| 70 - 74 | $1,750,000 | $600,000 | $475,000 | $380,000 | $210,000 | $105,000 |
| 75 - 79 | $1,000,000 | $160,000 | $145,000 | $130,000 | $80,000 | $40,000 |
| 80+ | $300,000 | $50,000 | $50,000 | $50,000 | $50,000 | $25,000 |

**Note:** The age of the retired player at diagnosis (not the age when applying for a monetary award) is used to determine the monetary amount awarded.

### 18. How does the number of seasons a retired player played affect his monetary award?

Awards are reduced for retired players who played less than five "Eligible Seasons." The Settlement uses the term "Eligible Season" to count the seasons in which a retired player played or practiced in the NFL or AFL. A retired player earns an Eligible Season for:

- Each season where he was on an NFL or AFL Member Club's "Active List" for either three or more regular season or postseason games, or

- Where he was on an Active List for one or more regular or postseason games and then spent two regular or postseason games on an injured reserve list or inactive list due to a concussion or head injury.

- A retired player also earns one-half of an Eligible Season for each season where he was on an NFL or AFL Member Club's practice, developmental, or taxi squad for at least eight games, but did not otherwise earn an Eligible Season.

The "Active List" means the list of all players physically present, eligible and under contract to play for an NFL or AFL Member Club on a particular game day within any applicable roster or squad limits in the applicable NFL or AFL Constitution and Bylaws.

Time spent playing or practicing in the World League of American Football, NFL Europe League, and NFL Europa League does not count towards an Eligible Season.

The table below lists the reductions to a retired player's (or his Representative Claimant's) monetary award if the retired player has less than five Eligible Seasons. To determine the total number of Eligible Seasons

credited to a retired player, add together all of the earned Eligible Seasons and half Eligible Seasons. For example, if a retired player earned two Eligible Seasons and three half Eligible Seasons, he will be credited with 3.5 Eligible Seasons.

| NUMBER OF ELIGIBLE SEASONS | PERCENTAGE OF REDUCTION |
|---|---|
| 4.5 | 10% |
| 4 | 20% |
| 3.5 | 30% |
| 3 | 40% |
| 2.5 | 50% |
| 2 | 60% |
| 1.5 | 70% |
| 1 | 80% |
| .5 | 90% |
| 0 | 97.5% |

### 19. How do prior strokes or traumatic brain injuries of a retired player affect his monetary award?

It depends. A retired player's monetary award (or his Representative Claimant monetary award) will be reduced by 75% if he experienced a medically diagnosed stroke that occurred:

- Before receiving a Qualifying Diagnosis, or
- A severe traumatic brain injury unrelated to NFL football that occurred during or after the time the retired player played NFL football but before he received a Qualifying Diagnosis.

The award will not be reduced if the retired player (or his Representative Claimant) can show by clear and convincing evidence that the stroke or traumatic brain injury is not related to the Qualifying Diagnosis.

### 20. How is a retired player's monetary award affected if he does not participate in the BAP program?

It depends on when the retired player receives his Qualifying Diagnosis and the nature of the diagnosis. There is a 10% reduction to the monetary award if the retired player does not participate in the BAP and:

- Did not receive a Qualifying Diagnosis prior to [Date of Preliminary Approval Order], and
- Receives a Qualifying Diagnosis (other than ALS) after his deadline to receive a BAP baseline assessment examination.

### 21. Can I receive a monetary award even though the retired player is dead?

Yes. Representative Claimants for deceased retired players with a Qualifying Diagnoses will be eligible to receive monetary awards. If the deceased retired player died before January 1, 2006, however, the Representative Claimant will only receive a monetary award if the Court determines that a wrongful death or survival claim is allowed under applicable state law.

Derivative Claimants also will be eligible for a total award of 1% of the monetary award that the Representative Claimant for the deceased retired player receives (*see* Question 16).

**QUESTIONS? CALL 1-800-000-0000 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

**22.   Will this Settlement affect any participation in NFL or NFLPA-related benefits programs?**

No.  The Settlement benefits are completely independent of any benefits programs that have been created by or between the NFL and the NFL Players Association.  This includes the 88 Plan (Article 58 of the 2011 Collective Bargaining Agreement) and the Neuro-Cognitive Disability Benefit (Article 65 of the 2011 Collective Bargaining Agreement).

**Note:**  The Settlement ensures that a retired player who has signed, or will sign, a release as part of his Neuro-Cognitive Disability Benefit application, will not be denied Settlement benefits.

**23.   Will this Settlement prevent me from bringing workers' compensation claims?**

Claims for workers' compensation will not be released by this Settlement.

## EDUCATION FUND

**24.   What type of education programs are supported by the Settlement?**

The Settlement will provide $10 million in funding to support education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of retired players regarding the NFL's medical and disability programs and other educational programs and initiatives.

Retired players will be able to actively participate in such initiatives if they desire.

# CHAPTER 3:  YOUR RIGHTS

## REMAINING IN THE SETTLEMENT

**25.   What am I giving up to stay in the Settlement Class?**

Unless you exclude yourself from the Settlement, you cannot sue the NFL Parties, the Member Clubs, or related individuals and entities, or be part of any other lawsuit against the NFL Parties about the issues in this case.  This means you give up your right to continue to litigate any claims related to this Settlement, or file new claims, in any court or in any proceeding at any time.  You also are promising not to sue the National Collegiate Athletic Association or other collegiate, amateur or youth football organizations and entities for your cognitive injuries if you receive a monetary award under this Settlement.  **However, the Settlement does not release any claims for workers' compensation (*see* Question 23) or claims alleging entitlement to NFL medical and disability benefits available under the Collective Bargaining Agreement.**

Please note that certain Plaintiffs also sued the football helmet manufacturer Riddell and certain related entities (specifically, Riddell, Inc., Riddell Sports Group Inc., All American Sports Corporation, Easton-Bell Sports, Inc., EB Sports Corp., Easton-Bell Sports, LLC, and RBG Holdings Corp.).  **They are not parties to this Settlement and claims against them are not released by this Settlement.**

Article XVIII of the Settlement Agreement contains the complete text and details of what Settlement Class Members give up unless they exclude themselves from the Settlement, so please read it carefully. The Settlement Agreement is available at www.NFLConcussionSettlement.com. If you have any questions you can talk to the law firms listed in Question 33 for free or you can talk to your own lawyer if you have questions about what this means.

## HOW TO GET BENEFITS

### 26. How do I get Settlement benefits?

To get benefits, you will need to register. Registration will not begin until after the Settlement is approved by the Court (*see* Question 37) and any appeals are fully resolved. Once that occurs, further notice will be provided about how to register for benefits. In the meantime, please go to www.NFLConcussionSettlement.com or call 1-800-000-0000 to sign-up for notice of registration. Registration must be completed in the time permitted (180 days from the time notice of registration is provided) if you wish to receive any of the benefits provided through this Settlement.

### 27. Is there a time limit for Retired NFL Football Players to file claims for monetary awards?

Yes. Retired NFL Football Players and Representative Claimants must submit claims for monetary awards within two years after the date of the diagnosis for which they claim a monetary award, or the date the Settlement is granted final approval and any appeals are fully resolved, whichever is later. This deadline may be extended to within four years of the Qualifying Diagnosis or the date the Settlement is granted final approval and any appeals are fully resolved if the Retired NFL Football Player or Representative Claimant can show substantial hardship beyond the Qualifying Diagnosis. Derivative Claimants must submit claims no later than 30 days after the Retired NFL Football Player through whom the close relationship is the basis for the claim (or the Representative Claimant of that retired player) receives a notice that he is entitled to a monetary award.

All claims must be submitted by the end of the 65-year term of the Monetary Award Fund.

### 28. Can I re-apply for compensation if my claim is denied?

Yes. A Settlement Class Member who submits a claim for a monetary award that is denied can re-apply in the future should the Retired NFL Football Player's medical condition change.

### 29. Can I appeal the determination of my monetary award claim?

Yes. The Settlement establishes a process for a Settlement Class Member to appeal the denial of a monetary award claim or the amount of the monetary award.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want to receive benefits from this Settlement, and you want to retain the right to sue the NFL Parties about the legal issues in this case, then you must take steps to remove yourself from the Settlement. You can do this by asking to be excluded – sometimes referred to as "opting out" of – the Settlement Class.

**30. How do I get out of the Settlement?**

To exclude yourself from the Settlement, you must mail a letter or other written document to the Claims Administrator.  Your request must include:

- Your name, address, telephone number, and date of birth;

- A copy of your driver's license or other government issued identification;

- A statement that "I wish to exclude myself from the Settlement Class in *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323" (or substantially similar clear and unambiguous language); and

- Your signature by hand (not any form of electronic signature), and the date on which you signed it (even if represented by an attorney).

You must mail your exclusion request, postmarked no later than **Month 00, 0000** [Date ordered by the Court], to [INSERT INFORMATION], City, ST 00000.

**31. If I do not exclude myself, can I sue the NFL Parties for the same thing later?**

No.  Unless you exclude yourself, you give up the right to sue the NFL Parties for all of the claims that this Settlement resolves.  If you want to maintain your own lawsuit relating to the claims released by the Settlement, then you must exclude yourself by **Month 00, 0000.**

**32. If I exclude myself, can I still get benefits from this Settlement?**

No.  **If you exclude yourself from the settlement you will not get any Settlement benefits**.  You will not be eligible to receive a monetary award or participate in the Baseline Assessment Program.

### THE LAWYERS REPRESENTING YOU

**33. Do I have a lawyer in the case?**

The Court has appointed a number of lawyers to represent all Settlement Class Members as "Co-Lead Class Counsel," "Class Counsel" and "Subclass Counsel" (*see* Question 6).  They are:

| Christopher A. Seeger<br>**SEEGER WEISS LLP**<br>77 Water Street<br>New York, NY 10005<br><br>*Co-Lead Class Counsel* | Sol Weiss<br>**ANAPOL SCHWARTZ**<br>1710 Spruce Street<br>Philadelphia, PA 19103<br><br>*Co-Lead Class Counsel* |
|---|---|
| Steven C. Marks<br>**PODHURST ORSECK P.A.**<br>City National Bank Building<br>25 W. Flagler Street, Suite 800 | Gene Locks<br>**LOCKS LAW FIRM**<br>The Curtis Center, Suite 720 East<br>601 Walnut Street |

QUESTIONS?  CALL **1-800-000-0000** OR VISIT **WWW.NFLCONCUSSIONSETTLEMENT.COM**

| Miami, FL 33130-1780 | Philadelphia, PA 19106 |
|---|---|
| *Class Counsel* | *Class Counsel* |
| Arnold Levin | Dianne M. Nast |
| **LEVIN FISHBEIN SEDRAN & BERMAN** | **NAST LAW LLC** |
| 510 Walnut Street, Suite 500 | 1101 Market Street, Suite 2801 |
| Philadelphia, PA 19106 | Philadelphia, Pennsylvania 19107 |
| *Counsel for Subclass 1* | *Counsel for Subclass 2* |

You will not be charged for contacting these lawyers. If you are already represented by an attorney, you may contact your attorney to discuss the proposed settlement. If you are not already represented by an attorney, and you want to be represented by your own lawyer, you may hire one at your own expense.

**34. How will the lawyers be paid?**

At a later date to be determined by the Court, Co-Lead Class Counsel, Class Counsel and Subclass Counsel will ask the Court for an award of attorneys' fees and reasonable costs. The NFL Parties have agreed not to oppose or object to the request for attorneys' fees and reasonable incurred costs if the request does not exceed $112.5 million, These fees and incurred costs will be paid separately by the NFL Parties and not from the $760 million settlement funds. Settlement Class Members will have an opportunity to comment on and/or object to this request at an appropriate time. Ultimately, the award of attorneys' fees and reasonable costs to be paid by the NFL Parties is subject to the approval of the Court.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the Settlement or some part of it.

**35. How do I tell the Court if I do not like the Settlement?**

If you do not exclude yourself from the Settlement Class, you can object to the Settlement if you do not like some part of it. The Court will consider your views. To object to the Settlement, you or your attorney must submit your written objection to the Court. The objection must include the following:

- The name of the case and multi-district litigation, *In re: National Football League Players' Concussion Injury Litigation*, No. 2:12-md-02323;

- Your name, address, telephone number, and date of birth;

- The name of the Retired NFL Football Player through which you are a Representative Claimant or Derivative Claimant (if you are not a retired player);

- Written evidence establishing that you are a Settlement Class Member;

- A detailed statement of your objections, and the specific reasons for each such objection, including any facts or law you wish to bring to the Court's attention;

- Any other supporting papers, materials or briefs that you want the Court to consider in support of your objection; and

- Your signature by hand (not any form of electronic signature), and the date on which you signed it (even if represented by an attorney).

In addition, if you intend to appear at the final approval hearing (the "Fairness Hearing"), you must submit a written notice of your intent [INSERT REQUIREMENTS FROM PRELIMINARY APPROVAL ORDER] by [INSERT DATE.]

The requirements to object to the Settlement are described in detail in the Settlement Agreement in section 14.3.

You must file your objection with the Court no later than **Month 00, 0000 [date ordered by the Court]**:

| COURT |
|---|
| Clerk of the Court/Judge Anita B. Brody |
| United States District Court for the Eastern District of Pennsylvania |
| James A. Byrne U.S. Courthouse, |
| 601 Market Street, |
| Philadelphia, PA 19106-1797 |

**36.  What is the difference between objecting to the Settlement and excluding myself?**

Objecting is simply telling the Court that you do not like something about the Settlement or want it to say something different.  You can object only if you do not exclude yourself from the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class and you do not want to receive any Settlement benefits.  If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement.  You may attend and you may ask to speak, but you do not have to.  The Court will determine if you are allowed to speak if you request to do so (*see* Question 39).

**37.  When and where will the Court decide whether to approve the Settlement?**

The Court will hold the Fairness Hearing at XX:00 x.m. on **Month 00, 0000**, at the United States District Court for the Eastern District of Pennsylvania, located at the James A. Byrne U.S. Courthouse, 601 Market Street, Philadelphia, PA 19106-1797.  The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.NFLConcussionSettlement.com or call 1-800-000-0000.  At this hearing, the Court will hear evidence about whether the Settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them and may elect to listen to people who have asked to speak at the hearing.  After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

QUESTIONS? CALL **1-800-000-0000** OR VISIT **www.NFLCONCUSSIONSETTLEMENT.COM**

The Court will consider the request for attorneys' fees and reasonable costs by Co-Lead Class Counsel, Class Counsel and Subclass Counsel (*see* Question 34) after the Fairness Hearing, which will be set at a later date by the Court.

## 38. Do I have to attend the hearing?

No.  Co-Lead Class Counsel, Class Counsel and Subclass Counsel will answer questions the Court may have.  But you are welcome to attend at your own expense.  If you timely file an objection, you do not have to come to Court to talk about it.  As long as you filed your written objection on time, the Court will consider it.  You may also have your own lawyer attend at your expense, but it is not necessary.

## 39. May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing.  The Court will determine whether to grant you permission to speak.  To make such a request, you must file a written notice stating that it is your intent to appear at the *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323 Fairness Hearing ("Notice of Intention to Appear").  Be sure to include your name, address, telephone number, and your signature.  Your Notice of Intention to Appear must be filed with the Court no later than **Month 00, 0000**.

# GETTING MORE INFORMATION

## 40. How do I get more information?

This Notice summarizes the proposed Settlement.  More details are in the Settlement Agreement.  You can get a copy of the Settlement Agreement at www.NFLConcussionSettlement.com.  You also may write with questions to NFL Concussion Settlement, P.O. Box 0000, City, ST 00000 or call 1-800-000-0000.

**PLEASE DO NOT WRITE OR TELEPHONE THE COURT OR THE NFL PARTIES FOR INFORMATION ABOUT THE SETTLEMENT OR THIS LAWSUIT.**

# Exhibit A-2



# $760 Million NFL Concussion Settlement

The NFL and NFL Properties have agreed to a Settlement with retired players who sued, accusing them of failing to warn of and hiding the danger of brain injury.

**Who is included in the Settlement?**

The Settlement generally includes all retired players of the NFL, AFL, World League of American Football, NFL Europe League and NFL Europa League. The Settlement includes immediate family members of retired players, and incompetent or deceased players. The NFL and NFL Properties deny that they did anything wrong.

**What does the Settlement provide?**

The Settlement provides $760 million in funds for three benefits:

- Baseline medical exams to determine if retired players suffer from neurocognitive impairment and are entitled to additional testing and/or treatment ($75 million),

- Monetary awards for diagnoses of ALS (Lou Gehrig's disease), Alzheimer's Disease, Parkinson's Disease, Dementia and certain cases of chronic traumatic encephalopathy or CTE (a neuropathological finding) diagnosed after death ($675 million), and

- Education programs and initiatives related to football safety ($10 million).

Retired players do <u>not</u> have to prove that their injuries were caused by playing NFL football to get money from the Settlement.

## How can I get benefits?

You will need to register for benefits. Please go to the website or call 1-800-000-0000 to learn more.

## What are my rights?

Even if you do nothing you will be bound by the Court's decisions. If you want to keep your right to sue the NFL yourself, you must exclude yourself from the Class by **Month 00, 2014**. If you stay in the Class, you may object to the Settlement by **Month 00, 2014**.

The Court will hold a hearing on **Month 00, 2014** to consider whether to approve the Settlement. You or your own lawyer may appear and request to speak at the hearing at your own expense. At a later date to be determined by the Court, the attorneys will ask the Court for approval of an award of attorneys' fees and reasonable costs. The NFL and NFL Properties have agreed not to oppose or object to the request for attorneys' fees and reasonable costs, if the request does not exceed $112.5 million. This money would be paid by the NFL and NFL Properties and would be in addition to the $760 million Settlement.

## Please Share this Notice with Other Retired Players and Their Families