UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 12-md-2323 (AB) <br><br> MDL No. 2323 |
|---|---|
| THIS DOCUMENT RELATES TO: <br><br> All Actions | |

STATEMENT REGARDING PROPOSED CLASS ACTION SETTLEMENT IN *IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION LITIG.*

I. INTRODUCTION AND SUMMARY OF THE ARGUMENT

The Court's January 14, 2014 denial of proposed conditional certification and preliminary approval of the proposed class action settlement (the "Settlement") preempted a planned objection by potential class members in the action, the Seau Family.  *See* Case No. 2:13-cv-01531-AB.  The Seau Family's filing would have opposed the Motion for Preliminary Approval of the Settlement, but on different grounds than those discussed in the Court's Order. Although the Motion for Preliminary Approval is currently moot, the Seau Family nonetheless respectfully requests that the Court consider two serious deficiencies with the Settlement which should not be included in any future Settlement and Motion for Preliminary Approval.

First, the Settlement fails to adequately address the claims of a distinct group of plaintiffs – those with wrongful death claims.  The Seau children hold claims against the National Football League ("NFL") which are separate and distinct from the claims of Mr. Seau's estate representative.  Despite the independent nature of the wrongful death claims, the Settlement treats these claims as cumulative of representative claims and assigns a mere 1% of any recovery to them.

Second, the Settlement proposes a vastly overbroad stay of all related actions for several years through appeal of the Settlement.  This broad stay, as defined in the proposed Settlement

1

Agreement, would preclude plaintiffs who may Opt Out[1] of the Settlement from pursuing their individual actions pending appeal. Appeals could take several years, during which time individual plaintiffs who opted out – which could include retired NFL players suffering from severe and debilitating injuries – would be barred from pursuing their claims. The inability to pursue their claims, including discovery of documents and depositions of witnesses, until years into the future is prejudicial to their rights.

The Motion for Preliminary Approval filed January 6, 2014 provided the first opportunity for plaintiffs in the MDL and counsel who are not class counsel to evaluate the Settlement. Like other plaintiffs, the Seau Family and its counsel have been excluded from participation in the negotiation of the Settlement.[2] As a result, the Seau Family asks that the Court consider these issues, including whether a class representative is necessary for wrongful death claims, when ruling on any future Motion for Preliminary Approval, and if necessary, return the parties to mediation in order to adequately address the wrongful death claims held by class members.

## II. THE SETTLEMENT DOES NOT ADEQUATELY ADDRESS WRONGFUL DEATH CLAIMS BY DERIVATIVE CLAIMANTS

The children of decedent Tiaina B. Seau, Jr. ("Junior Seau") and the Junior Seau Trust representative (collectively the "Seau Family"), filed an individual action against the NFL, NFL Properties LLC and Riddell Inc. (*See* Case No. 2:13-cv-01531-AB, Dkt. No. 1.) The action alleges that defendants are liable (1) to Mr. Seau's children for his wrongful death, and (2) to his estate for the claims held by Mr. Seau at the time of his death. (*Id*.)

Wrongful death claims are distinct from the claims held by the decedent at the time of death. They compensate the decedent's next of kin, often spouses and children, for the unique

---

[1] Unless otherwise noted, capitalized terms in this Statement have the same meaning as those in the Settlement Agreement.
[2] After the announcement of a settlement in August 2013, counsel for the Seau Family reached out to Plaintiffs' counsel and separately, to the NFL's counsel, via mediator Judge Phillips, to share the family's concerns that wrongful death plaintiffs' interests were not being represented in the settlement. The NFL refused to discuss the Seau family's concerns, citing the protective order.

harm they suffer. Dependents can generally recover (1) the present value of the decedent's future earnings, i.e. the financial harm suffered by the next of kin from the wrongful death, and (2) compensation for the loss of the decedent's guidance and personal services, i.e. the personal harm suffered by the next of kin. In short, Mr. Seau's children have their own claims for the wrong the NFL did to them. His children are not suing for their father's pain and suffering, they are suing for their own. Thus, a wrongful death claimant is not awarded a portion of the amount which may have been owed to the decedent; it is an independently compensable claim.

While the Settlement recognizes the separate nature of these claims by establishing a category of "Derivative Claimants," it provides no independent compensation to these plaintiffs of any kind and provides zero justification for its award allocation. *See* S.A. §§ 2.1(ee) (defining Derivative Claimants); Article VII (discussing Derivative Claimant Awards). Although Subclass 2 includes "Representative Claimants" and "Derivative Claimants" (i.e., those with claims arising from a player's death), neither of the two proposed Class Representatives qualify as a Representative Claimant or Derivative Claimant and neither hold a wrongful death claim. Further, there is no indication that separate counsel negotiated on behalf of wrongful death claimants during Settlement negotiations. *See In re Cmty. Bank of N. Va.*, 622 F.3d 275, 292 (3rd Cir. 2010) ("experience teaches that it is counsel for the class representative and not the named parties . . . who direct and manage [class] actions.").

In release of their claims, Derivative Claimants may receive a maximum of 1% of any Monetary Award paid to the retired NFL player (or his estate) which forms the relationship entitling the Derivative Claimant to a separate claim. S.A. § 7.3. If multiple Derivative Claimants make valid claims on the estate of the same retired NFL player, the Derivative Claimants must share the 1% award. *Id*. These awards will only occur if the Claims Administrator affirms that the Derivative Claimant is entitled to an action under state law. S.A. § 7.2. Any awards to Derivative Claimants will reduce the Monetary Award paid to the retired NFL player's estate. S.A. § 6.5(a). Thus, for instance, if a decedent with four children is

awarded $3.2 million dollars for his injuries his children would each receive only $8,000 to compensate them for their personal and financial harm from the loss of their father.

The random structure and paltry recovery afforded to such claimants strongly suggests that Derivative Claimant's independent causes of action were not valued in any meaningful way. *See In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 252 (2nd Cir. 2011) (holding the court may examine the settlement's substance for evidence of prejudice to the interests of a subset of plaintiffs).[3]  This result suggests a classic intra-class conflict.  The Class Representatives, none of whom hold wrongful death claims, structured an agreement which does not provide separate representation for the wrongful death claims and does not separately value those claims.  This concern is not ameliorated by the Class Representatives' interest in maximizing the total recovery or their good faith efforts to represent the class, because whatever the size of the fund, the Class Representatives must make decisions allocating relief among different types of claimants.  *See Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 182 (3rd Cir. 2012) (affirming the Third Circuit's statement in *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 630 (3rd Cir. 1996), "the settlement does more than simply provide a general recovery fund, rather, it makes important judgments on how recovery is to be *allocated* among different kinds of plaintiffs, decisions that necessarily favor some claimants over others.").

The only way in which the wrongful death claims held by class members can be assured of adequate representation is by designation of a separate subclass which is afforded independent counsel.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 627 (1997) ("adversity among subgroups requires that the members of each subgroup cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups.") (citations omitted).  Such separate counsel ensures structural fairness, so that the interests of each subgroup are advocated in a fair and reasonable manner.  *See In re Cmty. Bank of N. Va.*, 622 F.3d at 311 (vacating certification "because the settlement appear[ed]

---

[3] The NFL did not include the actuarial and economic data used to support the Settlement.  The Seau Family urges the Court to require disclosure of that information if any further motion for preliminary approval is filed.

to lack 'structural assurance of fair and adequate representation for the diverse groups and individuals affected'") (quoting *Amchem*, 521 U.S. at 627); *Literary Works*, 654 F.3d at 252 (holding "[o]nly the creation of subclasses, and the advocacy of an attorney representing each subclass, can ensure that the interests of that particular subgroup are in fact adequately represented"). Only such a subclass, and representation by independent counsel as part of that subclass, can ensure that the claims of the wrongful death claimants are fairly addressed by the proposed Settlement as required by Federal Rule of Civil Procedure 23(a)(4).

### III. THE SETTLEMENT INCLUDES AN UNCERTAIN, AND POTENTIALLY OVERBROAD, STAY OF OPT OUT PLAINTIFFS' LITIGATION

The Seau Family is also concerned about the scope of the litigation stay for plaintiffs who may choose to Opt Out of any settlement. The Seau children lost their father almost two years ago, and the Seau Family filed suit more than a year ago. During the last year, the Seau Family has been unable to take any discovery, including obtaining documents from the NFL or deposing witnesses. The Seau Family has been prevented from pursuing justice for Junior Seau, and the proposed stay would continue that standstill for years, all while memories of witnesses, and potentially the truth, grow more distant.

The Motion and Proposed Preliminary Approval Order requested a stay of all related lawsuits "unless and until [Settlement class members] have been excluded from the Settlement Class by action of the Court . . . ." Although this request standing alone suggests that class members would be free to pursue their action if they elect to Opt Out from the Settlement, in reality the terms of the Settlement Agreement could prevent them from doing so for many years. Specifically, section 14.2(a) of the Settlement Agreement states that "[v]alid requests to Opt Out from the Settlement Class will become effective on the Effective Date." S.A. § 14.2(a). The "Effective Date" is the day on which no further appeals are possible. S.A. § 2.1(jj). Thus, the Settlement effectively seeks a stay of all actions related to the MDL until all appeals have been exhausted, including individual actions by class members who deem the Settlement inadequate

and on that basis Opt Out.

Given the complexity, size and impact of the Settlement it is highly likely that at least one or more appeals will be filed if the Court grants Final Approval.  Such appeals are incentivized by the opportunity for an award of attorneys' fees if the appeal is successful.  *See* Fed. R. Civ. P. 23, cmt. re Subdivision (h) in 2003 Amendments.  As such, the proposed stay, which purports to limit even the rights of class members who Opt Out of the Settlement, could halt all litigation for years while appeals are pending.  Such a delay may, and likely will, have the effect of discouraging class members from electing to exercise their Opt Out right, even if they feel the proposed Settlement does not adequately address their claims.  This may have been the intended result of such an expansive stay request, but it is inconsistent with the due process afforded to class members in 23(b)(3) settlements by the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 23(c)(2)(B)(v); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998) (class member's due process rights include "the right to intelligently and individually choose whether to continue in a suit as class members.").

Once a class member exercises their opt out right and that action is affirmed by the court in a final order and judgment, he or she is no longer a member of the class and his or her individual action cannot threaten the court's jurisdiction over or otherwise disturb the settlement.  As a result, stays of a MDL proceeding are only appropriate through the court's determination of final approval of the settlement.  *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 08-MDL-1958 ADM/AJB, 2012 WL 5055810, at *12 (D. Minn. Oct. 18, 2012) (staying proceedings "pending the final fairness hearing and the issuance of a final order and judgment"); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, MDL 2047, 2011 WL 2313866, at *7 (E.D. La. June 9, 2011) (noting stay of proceedings "is only temporary and contingent upon the successful final approval by the Court of the In Ex Settlement Agreement; thus, in the case the Court does not give its final approval, Southern will then be free to pursue its state court case against InEx, and if the Agreement is finally approved then presumably Southern will benefit as a class member or choose to opt-out.").

The Settlement overreaches beyond the normal application of stays under the All Writs Act and the Anti-Injunction Act. Such a stay would seriously discourage class members from exercising their constitutionally protected right to exclude themselves from the class and pursue individual claims. In the Seau Family's particular situation, Junior Seau's children could be forced to wait years for justice, while the NFL continues to make billions of dollars and the memories of witnesses grow ever more distant. As such, if the Court issues a future order preliminarily approving this or a future Settlement, the Seau Family requests that it clarify that any stay will apply only up to and until the Court issues an order on final approval of the Settlement.

### IV.  CONCLUSION

For the reasons discussed above, the Seau Family asks that the Court consider these issues when analyzing any future Motion for Preliminary Approval of the Settlement and clarify the scope of any stay.

Dated:  January 24, 2014

RESPECTFULLY SUBMITTED:

/s/ Steven M. Strauss
Steven M. Strauss

COOLEY LLP
STEVEN M. STRAUSS (SBN 99153)
(SMS@COOLEY.COM)
DENNIS C. CROVELLA (SBN 190781)
(DCROVELLA@COOLEY.COM)
MEGAN L. DONOHUE (SBN 266147)
(MDONOHUE@COOLEY.COM)
4401 Eastgate Mall
San Diego, CA 92121
Telephone: (858) 550-6000
Facsimile: (858) 550-6420

*Attorneys for Plaintiffs Tyler Seau, Sydney Seau, Jake Seau, Gina Seau as guardian ad litem for H. Seau, a minor, and Bette Hoffman, as trustee of the Tiaina B. Seau, Jr. 2002 Trust*

## **CERTIFICATE OF SERVICE**

I certify that I caused a copy of the foregoing document to be electronically filed with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

This the 24th date of January, 2014.

/s/ Steven M. Strauss
Steven M. Strauss
