**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| **IN RE: NATIONAL FOOTBALL** | : | **No. 2:12-md-02323-AB** |
| **LEAGUE PLAYERS' CONCUSSION** | : | |
| **INJURY LITIGATION** | : | **MDL No. 2323** |
| | : | |
| | : | **Hon. Anita B. Brody** |
| **THIS DOCUMENT RELATES TO:** | : | |
| | : | |
| **All Actions** | : | |
| | : | |

**PROPOSED CO-LEAD CLASS COUNSEL'S OPPOSITION TO
BLOOMBERG L.P.'S MOTION TO INTERVENE
TO SEEK DOCUMENTS AND INFORMATION**

## I.   INTRODUCTION

Proposed Co-Lead Class Counsel submit this response to the motion of Bloomberg L.P. ("Bloomberg") to intervene.  Pursuant to Fed.R.Civ.P. 24(b), Bloomberg seeks permissive intervention to modify this Court's existing protective orders to obtain access to all documents this Court directed the parties to furnish to the Special Master in its Order of January 14, 2014. Bloomberg's request for access to these documents pursuant to the common law and the First Amendment to the United States Constitution should be denied without prejudice because the motion is premature, and may become moot.[1]  Indeed, Co-Lead Counsel are not adverse to Bloomberg (or anyone else for that matter) obtaining these documents (subject to redaction

---

[1] Bloomberg asserts that these documents are somehow judicial records.  However, at this point in the litigation, they are work-product of the parties to a settlement which has not been preliminarily approved.  These documents have not been filed, and are not yet before the Court.

where appropriate),[2] but only after this Court determines whether and, if so, when they should be disseminated.

Bloomberg's motion follows closely in time to the motion filed by Plaintiff Tregg Duerson to permit the dissemination to counsel of record of all data utilized by Co-Lead Counsel to reach the proposed settlement [D.E. # 5686]. As noted in Co-Lead Counsel's response to that motion [D.E. # 5699], we do not oppose the orderly, stepped approach to the dissemination of information used in the settlement negotiations contemplated by this Court's January 14 Order. *See* D.E. # 5699 at 5-6. However, to grant Bloomberg's untimely intervention at this stage of the proceedings would be prejudicial to the litigating parties, who are still actively pursuing sensitive efforts to confirm to the Special Master and the Court the sufficiency of the Settlement Agreement, subject to this Court's confidentiality orders. The request to alter these orders would needlessly complicate this process.

Co-Lead Counsel therefore request that the Court deny Bloomberg's motion at this time. The orderly resolution of this case requires the Court to continue to use its fundamental power to manage the litigation, and to guide and supervise the phased dissemination of appropriate

---

[2] Without any intention of waiving any of the confidentiality of the mediation process, Co-Lead Counsel notes that the process, as would be expected, involved the close analysis of the voluminous medical records of thousands of retired NFL players. This health data is protected by the Health Insurance Portability & Accountability Act of 1996 ("HIPAA"), Pub.L. 104–191, 110 Stat. 1936 (codified at 42 U.S.C. § 1320d notes); *Burtner v. Pennsylvania State Police*, Civ. Act. No. 13-891, 2013 WL 5936427, at *2 (W.D. Pa. Nov. 5, 2013).

Mediator Layn Phillips, in his declaration to the Court, further described the materials. He noted that "both Plaintiffs and the NFL Parties retained various medical and actuarial/economics experts to assist them in the settlement negotiations." D.E. # 5634-4 at ¶8. "The parties' economists and actuaries assisted in modeling the likely disease incidence and adequacy of the funding provisions and benefit levels contained in the proposed settlement." *Id.*

Additionally, the parties submitted various mediation materials to him. *Id.* Medical information regarding a player's cognitive state is highly sensitive. Although this information was utilized in the mediation process, the protection of this information outside of this process must be carefully observed. And therefore, if this material is to be further disseminated, all personal identifying information in these records will, by necessity, have to be redacted.

information – first to the Special Master, then to Plaintiff's counsel of record, and then, once material is properly a part of the judicial record, to entities such as Bloomberg.

## II.   BACKGROUND

The Court's Order of July 8, 2013 ordered the parties into mediation.  D.E. # 5128.  The Court directed "the parties and their counsel to refrain from publicly discussing the mediation process or disclosing any discussions they may have as part of that process, without further order of the Court."  *Id.*  In the August 29, 2013 Order announcing the proposed settlement, the Court modified the confidentiality order, but only to "allow the parties to announce the terms of the settlement of the plaintiffs' claims against the NFL defendants."  D.E. # 5235 at 2.

In the Court's January 14, 2014 Order denying without prejudice Plaintiffs' motion for preliminary approval, the Court ordered, "[a]s a first step toward preliminary approval," that the parties "share the documentation referred to in their submissions with the Court through the Special Master."  D.E. # 5658.  That Order made no other provisions for the dissemination of the documentation, nor did it alter the confidentiality orders already in place.  As the parties comply with the Court's Orders, they have been beset by motions seeking to publicly reveal the work-product and other materials that supported the class action Settlement Agreement.  But because the motion for preliminary approval of that class action was denied without prejudice, no motion is currently before the court, we are not in the notice period, and the material Bloomberg seeks is not accessible because it is not part of the public record.

III.  **ARGUMENT**

    A.  **BLOOMBERG HAS NOT MET ITS BURDEN FOR OBTAINING PERMISSIVE INTERVENTION**

Bloomberg's motion for intervention is based upon the watershed case of *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994) and Fed.R.Civ.P. 24(b).[3]  In *Pansy*, several news organizations sought to obtain a confidential settlement agreement over 6 months *after* the settlement had occurred, and *after* the case had already been terminated.  These third parties moved for permissive intervention pursuant to Rule 24(b) in order to modify the confidentiality orders then in place at the time of the settlement agreement.  The district court denied intervention by finding the motion untimely; and, in the alternative, because the settlement agreement was never filed, it was not obtainable under the right of access doctrine.  Ordinarily, the denial of a motion to intervene is governed by an abuse of discretion standard, but because the district court applied the wrong legal standard, the Third Circuit under a plenary review standard found reversible error.   *Id.* at 778.

The Third Circuit found that intervention can be granted on ancillary issues such as seeking leave from a protective order where the "potential for prejudice to the original parties due to the delay in intervention is minimized[.]"  *Id.* at 779.  If, however, motions practice on the ancillary issue will "disrupt the resolution of the underlying merits," *id., quoting, Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 786 (1st Cir. 1988), *cert. denied*, 488 U.S. 1030 (1989), then, the court indicated that the parties are likely to be prejudiced.  That is the scenario presented by Bloomberg's motion – in the midst of ongoing efforts to resolve this litigation and comply with this Court's January 14 Order, we are obliged to respond to such motions.

---

[3] Rule 24(b) states:  On timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact.

4

Bloomberg's motion, apparently is not seeking contemporaneous access of the public record; but in essence, it wants a seat at the negotiating table to report contemporaneously.   That unworkable tenet is not, nor can it be, the law.

Whether or not Bloomberg's request for access to the actuarial and other materials provided to the Special Master fits within the right of access doctrine, the rationale employed in *Pansy* should guide the Court in deciding <u>*when and what*</u> aspects of the settlement negotiation process and data shared with the Court should be made public.[4]   To be clear, the Settlement Agreement that was filed with the Court is a "judicial record," and Bloomberg has ready access to it on PACER.   What is not yet a "judicial record"— because it has not yet been filed, and the Court has directed that the materials be furnished directly to the Special Master rather than filed on the docket — is the supporting data (work-product) of the parties.[5]   Co-Lead Counsel notes this distinction in an effort to guide the Court's resolution of the instant Motion – not because Plaintiffs believe transparency is not required.   To that end, *Pansy* recognized that:  "Simply because a court has entered a confidentiality order over documents does not automatically convert those documents into 'judicial records' accessible under the right of access doctrine."  23 F.3d at 782.

---

[4] In most instances, private parties conduct settlement negotiations – including offers and counter-offers to settle and the rationale each side uses to justify its settlement posture – in confidence. Whether that practice requires a hybrid disclosure rule here is something we leave for the Court to resolve.

[5] Bloomberg twice asserts in its brief that the Court "has effectively ordered the Plaintiffs to supplement their motion for preliminary approval."  *See* Mot. at 2, 5.  Co-Lead Counsel submit that, at this time, the Court has not ordered Plaintiffs to do this – what the Court has ordered is that expert reliance information be turned over to the Special Master for review.  Once that process is complete, the parties, with the Court's guidance, will determine what is required in the preliminary approval motion papers.  As discussed above, Co-Lead Counsel believe that some materials – including player health records and the expert's proprietary information – would receive continued protection.

The decision in *Pansy* stands for the proposition that once documents are filed with the Court, then the necessity to gauge the disclosure of those materials to the public takes on a different analysis.

> In the instant case, the Settlement Agreement which is subject to the Order of Confidentiality was never filed with, interpreted or enforced by the district court. The district court has not ordered any of the terms of the Settlement Agreement to be complied with. Accordingly, *Enprotech* controls the instant case and leads us to conclude that the Settlement Agreement is not a judicial record, and the right of access doctrine cannot be a basis for the Newspapers to obtain access to the Agreement. In contrast, in *Rittenhouse* we found that the settlement agreement was a judicial record because it had been filed with and enforced by the district court.[6]

*Id.* at 781.

Despite the fact that the work-product of the parties has been submitted to the Special Master, it may remain subject to the existing confidentiality orders. It is well-established that a district court retains the power to modify or lift confidentiality orders that it has entered. *See, e.g.*, *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990), *cert. denied*, 498 U.S. 1073 (1991); *In re "Agent Orange" Prod. Liab. Litig.*, 821 F.2d 139, 145 (2d Cir.), *cert. denied*, 484 U.S. 953 (1987).

Bloomberg has asked the Court to decide at this preliminary stage in the litigation, before the Court has even reviewed the underlying data supporting the fairness of the settlement and before providing preliminary approval of the settlement, to lift the confidentiality orders and release all the information the parties provide to the Special Master. As the Third Circuit observed in *Pansy*, 23 F.3d at 790, the appropriate approach in considering motions to modify confidentiality orders is to use the same balancing test that is used in determining whether to

---

[6] *In re Cendant*, 260 F.3d 183 (3d Cir. 2001), another case relied upon by Bloomberg, is distinguishable because the court's decision to release for public dissemination the bids submitted for appointment as lead counsel was predicated upon a federal statutory scheme.

grant such orders in the first instance, with one difference: one of the factors the court should consider in determining whether to modify the order is the reliance by the original parties on the confidentiality order.   Here, both parties relied significantly on the confidentiality of the mediation proceedings and were only able to conduct lengthy, complicated mediation sessions which produced a proposed settlement of an extremely complicated litigation because they were not done under a public microscope.   These circumstances weigh in favor of maintaining the orders of confidentiality.

District courts should balance the relevant interests irrespective of whether the public has a First Amendment or common law right to the materials.   Confidentiality of the litigation process, including settlement terms, must meet the "good cause" criteria.   *Goldstein v. Forbes (In re Cendant Corp.)*, 260 F.3d 183 (3d Cir. 2001).   In this regard, to date, Co-Lead Counsel are unaware of any appellate court decision considering and deciding the propriety of giving public access to the negotiating process in settling a case.[7]   Likewise, Co-Lead Counsel have not uncovered any decision releasing to the public the work-product of counsel for the respective parties that was used in their efforts to reach a satisfactory accord before preliminary approval.   Thus, to the extent that any of the underlying data is released to Bloomberg, we ask that the Court specify the scope of access in order to minimize disclosure of counsel's work-product.

Under these circumstances, Bloomberg has failed to justify intervention at this time.   Its motion to intervene should be denied without prejudice.   However, looking forward, we believe the matter may also become moot.   The stepped process envisioned by the Court, if it leads to an acceptable settlement, is the proper way to sequence the dissemination of supporting settlement

---

[7] *Bank of America National Trust and Savings Ass'n v. Rittenhouse*, 800 F.2d 339, 343-45 (3d Cir. 1986), is not to the contrary.  In *Bank of America*, the Court granted access to a consummated Settlement Agreement and related motions to seal that document.  The case certainly does not support the proposition that all materials involved in settlement negotiations should be accessible to the public.

materials.  D.E. #5699 at 2.  As ordered by the Court in D.E. # 5658, the Special Master will first receive the underlying information.  Following analysis by the Special Master and the Court, the material may be provided to Plaintiffs' counsel.  After Plaintiffs' counsel have had a reasonable opportunity to advise their clients, the material, subject to the considerations discussed above, may be made publicly available.  If that process occurs, Bloomberg's motion will become moot.[8]

## IV.   CONCLUSION

The Court directed the parties to work in secret and do their best to negotiate a fair and reasonable settlement – without revealing to their co-counsel and the public the negotiations that transpired before an accord was reached.  Now, the Court has ordered the parties to submit to the Court-appointed Special Master, the underlying data to substantiate the fairness of the amount of the settlement.  Bloomberg seeks production of these underlying data even before the Court has reviewed them, and despite the fact that the resolution of this case remains on-going.

Controlling the flow of the details of the settlement negotiations, and the supporting material of these negotiations, while the Court continues to satisfy itself of the propriety of this settlement is critical to the success of the endeavor.  The Court's stepped process accomplishes these goals by allowing the Special Master to review the materials, then Plaintiffs' counsel, and finally, third parties.  While transparency of the terms and conditions of the settlement are critical, the Press' interest in these data can be accommodated in a timely fashion, thus protecting the parties' need for confidentiality during the early approval stages of this case.

---

[8] As Co-Lead Counsel discussed in D.E. # 5699, at 4, supporting materials to be presented to the Special Master are traditionally made available to interested parties after preliminary approval is granted.

For these reasons, Bloomberg's motion to intervene should be denied without prejudice.

Dated: February 10, 2014                           Respectfully Submitted:

                                               */s/ Christopher A. Seeger*
                                               Christopher A. Seeger
                                               **SEEGER WEISS LLP**
                                               77 Water Street
                                               New York, NY 10005
                                               Phone:  (212) 584-0700
                                               Fax:  (212) 584-0799
                                               cseeger@seegerweiss.com

                                               ***Co-Lead Counsel***

                                               Sol Weiss
                                               **ANAPOL SCHWARTZ**
                                               1710 Spruce Street
                                               Philadelphia, PA 19103
                                               Phone:  (215) 735-1130
                                               Fax:  (215) 735-2024
                                               sweiss@anapolschwartz.com

                                               ***Co-Lead Counsel***

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that a true copy of the foregoing was served electronically via the

Court's electronic filing system on the 10th day of February, 2014, upon all counsel of record.

Dated: February 10, 2014

<u>/s/ Christopher A. Seeger</u>
Christopher A. Seeger