IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323 (AB)<br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

THE MYERS PLAINTIFFS' STATEMENT REGARDING SETTLEMENT
APPROVAL PROCESS AND REQUEST FOR STATUS CONFERENCE TO
COORDINATE NON-SETTLING PLAINTIFFS

I.   INTRODUCTION

The Myers Plaintiffs are 214 former NFL players[1] who fall within the proposed settlement class. They submit this statement to register their disagreement with Proposed Class Counsel's position that class member concerns like those recently raised by the Seau Family should not be addressed until after the final approval hearing. (ECF No. 5771 at 1.) As the Court noted in its recent order, there is no reason that preliminary approval cannot involve a thorough analysis of the proposed settlement. (ECF No. 5667 at 9.) The reason that some courts wait until final approval to conduct that analysis is because class member input cannot be considered until after class notice has been disseminated. But here class members are well aware of the settlement and several thousand of them are represented by counsel and involved in this MDL. The concerns of these class members are an essential part of the settlement approval process and should be considered by Proposed Class Counsel and the Court sooner rather than

---

[1] The Myers Plaintiffs are parties in Case Nos. 2:12-cv-02800, 2:12-cv-0438, 2:12-cv-05476, 2:12-cv-07135, 2:13-cv-05206, and S.D. Miss. Case No. 3:14-cv-00045 (conditionally transferred Feb. 6, 2014).

1

later. The stakes are too high and the issues too complex to leave them all for a single fairness hearing.

This is particularly true with respect to class certification, which is a threshold issue that will need to be resolved before any settlement can be approved and which raises several fact-intensive questions that will benefit from the involvement of putative class members like the Myers Plaintiffs, Seau Family, and Duerson Plaintiffs. The Supreme Court has cautioned against certifying high-stakes personal injury claims and there are a number of circumstances here that will require extra scrutiny before any class or subclasses can be certified. No discovery was taken or class certification proceedings held before the parties agreed on class and subclass definitions for purposes of settlement—in fact, a complaint requesting that a personal injury class be considered for certification was not even filed until after the settlement was reached. The proposed classes include members with conflicting interests, potentially pitting current claimants against future claimants against derivative claimants. And the parties only seek appointment of separate counsel to represent conflicting groups of class members after negotiations have ended. To be clear, the Myers Plaintiffs are not suggesting that Proposed Class Counsel did anything inappropriate or that a class should not be certified. But the certification question is a complex one that has arisen in this mass tort MDL rather suddenly, that many of the plaintiffs who filed personal injury actions (and not class actions) will have impassioned arguments about, and that should not be put off until months down the road.

If properly organized, an approval process that allows MDL plaintiffs and other interested class members to participate at all stages will create greater consensus, avoid late-arising issues, and ensure that the Court's rulings are based on a robust record. The court in another pending MDL proceeding, *Hyundai and Kia Fuel Economy Litigation,* MDL No. 2424, has adopted just

such an approach—appointing Liaison Counsel to coordinate and convey non-settling plaintiffs' positions to Proposed Class Counsel and the Court in an orderly manner. *Id.*; Case No. 13-ML-02424-GW, ECF No. 32 (C.D. Cal.). The process has worked well and the Myers Plaintiffs believes a similar approach would work well in this MDL. They request that the Court set a Status Conference to consider that and other options, with the aim being to coordinate the many non-settling plaintiffs who wish to participate in the settlement approval process.

## II. CLASS MEMBER CONCERNS SHOULD BE ADDRESSED THROUGH THE PRELIMINARY APPROVAL PROCESS.

In response to concerns with the proposed settlement raised by the Seau Family, Proposed Co-Lead Class Counsel have taken the position that those sorts of issues are best addressed not during the preliminary approval process, but months down the road at a final fairness hearing. (ECF No. 5771 at 1.) In their view, "the proposed settlement and supporting documentation will be examined by the Court and the Special Master," and it is only "[i]f and when a settlement receives preliminary approval," that class members should have an opportunity to evaluate the settlement and raise any concerns or objections they may have. (*Id.*)

The Myers Plaintiffs hold a different point of view and believe that the class and the Court will be best served by front-loading the settlement approval process rather than back-loading it. As the Court observed in its recent order, "preliminary approval is not simply a judicial 'rubber stamp' of the parties' agreement," and "there is no bar to conducting a more thorough analysis." (ECF No. 5657 at 9.) This is not a settlement where a cursory analysis will suffice at preliminary approval; it is a settlement that will affect thousands of former players' lives and where those players' viewpoints should be seriously considered sooner rather than later.

The primary reason that courts sometimes reserve an exacting analysis for the final approval stage is because class member input is often lacking at the preliminary approval stage. Most of the time, class members do not know that a settlement is being considered until they receive a formal class notice and so cannot be expected to express their views until then. In those cases, a more cursory analysis can be appropriate because the courts' primary concern is whether class notice should issue so that class members' views can be considered. *See, e.g, Garcia v. Pancho Villa's of Huntington Vill., Inc.,* 09-CV-486 ETB, 2012 WL 1843785, *3 (E.D.N.Y. May 21, 2012) ("Preliminary approval … allows Class Counsel to send notice to class members regarding the settlement.").

This case is quite different from the typical class action, as thousands of class members are already before the Court and represented by their own attorneys. They are well aware of the settlement, and thanks to widespread press coverage of this settlement, so are most other class members. Under these circumstances, there is no need to disseminate class notice before opposing viewpoints can be considered by the Court. The focus of preliminary approval should not be on notifying class members as quickly as possible—that has already been accomplished— but rather on ensuring that any deficiencies are identified now rather than much farther down the road—when the cost and delay associated with addressing them will be much higher. The role of class notice in this case will not be so much to alert class members as to allow them to opt-out or to lodge a formal objection. That process will proceed much more smoothly and efficiently if the lawyers already representing class members in this MDL are given an opportunity to participate in the preliminary approval process, obtain the information needed to determine how the settlement will affect their particular clients, and address their clients' individual concerns in a manner that may obviate the need to object or opt out.

The Court's latest order requires proposed Class Counsel to furnish additional information "[a]s a first step toward preliminary approval." One of the next steps should be to involve the other parties in this MDL, as well as any absent class members who may wish to participate. Plaintiffs recognize that the Court is taking its position as fiduciary for the class seriously, that it intends to undertake an exacting and thorough review of the settlement, and that "[t]he task is demanding because the adversariness of litigation is often lost after the agreement to settle." (ECF No. 5657 at 7, 9.) But one of the advantages of this MDL is that many of the benefits of the adversarial process can be preserved.

Proposed Class Counsel and the NFL cannot be expected to question the substantive or procedural fairness of the settlement they negotiated, but the other lawyers who have appeared in this MDL are in a perfect position to identify potential issues with the settlement and elicit the information needed to resolve those issues. The lawyers representing class members like the Myers Plaintiffs, Seau Family, and Duerson Plaintiffs owe a fiduciary duty to their clients to evaluate the settlement's substantive fairness from each individual's perspective. They also are highly motivated to identify and resolve procedural issues—particularly those pertaining to class certification—with the potential to disrupt an otherwise favorable settlement. As the Seau Family has pointed out, this class settlement is virtually certain to be subjected to appellate review if approved. (ECF No. 5695 at 6.) Even if the settlement is ultimately approved, a multi-year delay on appeal (and potential reversal) is in no one's interest. The best way to ensure that does not happen is to involve other Plaintiffs throughout the settlement approval process, so that if the settlement is ultimately approved, the appellate record will reflect a strong, well-vetted factual record and maximum buy-in from the other MDL Plaintiffs affected by the settlement.

### III. CLASS CERTIFICATION SHOULD BE ADDRESSED AT THE PRELIMINARY APPROVAL STAGE AND BASED ON A STRONG FACTUAL RECORD.

One of the most important issues the Court will need to address before granting preliminary approval—and one where the participation of counsel who were not privy to the settlement negotiations can be of greatest assistance to the Court—is whether the proposed classes can be certified. As Proposed Class Counsel have acknowledged, personal injury settlement classes have rarely been certified since the Supreme Court's *Amchem* decision. (ECF No. 5634-5 at 30-32.) They contend that class certification is nonetheless appropriate here, and they may well be right, but it remains the case that the proposed settlement class raises many serious issues that require added scrutiny:

(i) Personal Injury Claims: *Amchem* does not preclude class certification of personal injury claims, but it does "call for caution when individual stakes are high and disparities among class members great." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). The stakes are certainly high in this case, but whether the disparities amongst class members preclude class certification will require a more developed record than is presently before the Court. One of the principle benefits of involving other Plaintiffs in the preliminary approval process would be to facilitate the development of such a record.

(ii) Class Members with Conflicting Interests: As in *Amchem,* a conflict exists between those class members who have already been diagnosed with a debilitating medical condition (current claimants) and those who may be diagnosed in the coming years (future claimants). *See Amchem*, 521 U.S. at 626-27 ("[F]or the currently injured, the critical goal is generous immediate payments. That goal tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future."). Proposed Class Counsel have attempted to address this conflict by proposing two subclasses and separate counsel to represent each subclass's interests.

These measures may prove sufficient, but a factual inquiry and specific findings by the Court will be required. *See* Manual for Complex Litigation (Fourth) § 22.921 (2004) ("[T]he judge should examine the interests of all groups, including any future claimants, and make affirmative findings that each group is adequately represented by claimants and counsel who have no conflicting interests."). In addition, as the Seau Family's recent filing illustrates, there may be other discrete portions of the class—such as family members of deceased players—who need to be represented by separate counsel. (ECF No. 5695 at 2-4.)

    (iii)  <u>Settlement Prior to Discovery</u>: Class certification requires a rigorous analysis, regardless of whether the class to be certified is a litigation class or a settlement class. *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 380 (3d Cir. 2013). When discovery is advanced and the parties' have developed a detailed factual record through adversary proceedings, the court may already have enough information to conduct that rigorous analysis. But where, as here, discovery has not yet commenced, the Court will have to proactively solicit that record and should carefully scrutinize a factual record developed outside of the adversary process. *See* Manual for Complex Litigation (Fourth) § 22.921.

    (iv)  <u>Settlement Prior to Class Certification</u>: Similarly, where settlement negotiations precede class certification, the Court should be "even more scrupulous than usual." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004). This added scrutiny does not just apply to the fairness of the settlement; it applies to the Court's assessment of the Rule 23 requirements as well. *Amchem,* 521 U.S. at 620 ("a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold"). *See also In re Deepwater Horizon v. BP Exploration &*

*Production, Inc., et al.*, 732 F.3rd 326, 342 (5th Cir. 2013) (Article III bars court from approving class settlement of claims of class members who lack standing).

    (v) <u>Settlement Prior to Appointment of Class or Subclass Counsel</u>:  In MDL proceedings that begin as class actions, courts typically appoint interim class and/or subclass counsel pursuant to Rule 23(g).  *See* Manual for Complex Litigation (Fourth) § 22.62.  These interim appointments ensure that counsel knows the precise class of people they are charged with representing during settlement negotiations.  When this MDL began, however, the Plaintiffs were seeking monetary relief on an individual basis only (with class claims asserted only for medical monitoring).   The Court appointed Co-Lead Counsel and a Steering Committee to represent Plaintiffs, but did not appoint counsel to represent any class or subclass.  Nor did Co-Lead Counsel return to the Court when the prospect of a class settlement arose.  It is only now, after the negotiations are complete and a settlement has been signed, that the Court is being asked to appoint class counsel and subclass counsel.  This is not necessarily improper, but it does mean that class certification will require added scrutiny and specific factual findings in this respect as well, particularly with respect to the adequacy requirement.  *See In Re General Motors Corp. Pick-Up Truck Fuel Tank Liab. Litig.*, 55 F.3d 768, 788 (3d Cir. 1995).

    The Myers Plaintiffs point out these complications not because they contend the proposed classes cannot be certified, but to emphasize that the propriety of class certification will depend on a series of in-depth factual determinations that the Court should begin to address now.  Counsel for the Myers Plaintiffs and others who did not participate in the settlement negotiations are well situated to bring these issues to light, as they have an obligation to ensure that any class settlement in which their clients participate is structured to withstand appellate scrutiny.  The Myers Plaintiffs have engaged co-counsel who specialize in class action litigation precisely

because these class certification questions are so integral to their assessment of whether the settlement will ultimately be in their best interests.  Proceeding down the class action settlement path has serious consequences and it is in everyone's interests to ensure at the earliest opportunity that path is the right one.

Proposed Class Counsel have argued that Court should defer a serious class certification analysis and instead certify the proposed classes on a conditional basis.  (ECF No. 5634 at 40.) Rule 23 used to include a provision that class certification "may be conditional," but that clause has been deleted and courts advised to refuse certification until they are satisfied the Rule 23 requirements have been met.  Fed. R. Civ. P. 23, Advisory Committee Notes to 2003 Amendment, Subdivision (c)(1)(C).  Class certification issues are sometimes reserved when needed to facilitate speedy dissemination of class notice, but there is no need for that in a case that has drawn national attention and already involves several thousand class members.

Addressing these serious certification issues now, through an orderly process where all plaintiffs' views can be considered, will not only help ensure that the Court's decision rests on an adequate record, it will set the stage for the remainder of the settlement approval process. Whereas the class certification question can and should be largely decided without regard to any settlement, *Amchem*, 521 U.S. at 621, settlement approval necessarily depends on how the Court rules on class certification.  For example, if the Court decides that additional subclasses are warranted or that the class should otherwise be redefined, the parties will need to take those findings into account before any settlement is approved.  And if the Court decides that class certification is not warranted at all, the parties will not need to spend any more time debating the merits of the settlement and can either return to pre-trial litigation or attempt to negotiate a more conventional mass tort settlement.

## IV. THE COURT SHOULD SCHEDULE A STATUS CONFERENCE TO COORDINATE THE NON-SETTLING PARTIES' INVOLVEMENT IN THE SETTLEMENT APPROVAL PROCESS.

The advantage to an MDL with so many diverse and willing participants is that the Court need not lose all the benefits of the adversarial process now that Co-Lead Counsel and Defendants are aligned in their support for class certification and the proposed class settlement. The disadvantage is that chaos and an overwhelming workload for the Court may result if MDL plaintiffs and class members proceed separately. Several parties have already begun to express concerns through filings, many more have done so in the press, and even more can be expected as additional information about the settlement is disclosed. The Myers Plaintiffs recognize that the Court has restricted the dissemination of information concerning the settlement negotiations for the time being, and do not propose to interfere with the work of the settling parties, but rather propose the creation of an orderly process for non-participants in the negotiations to satisfy themselves in regards to the substantive and procedural fairness of the settlement.

The Myers Plaintiffs therefore propose that the Court schedule a Status Conference to coordinate the non-settling plaintiffs' involvement in the settlement approval process. The goal should be to establish an orderly process for non-settling plaintiffs' counsel to request information about the settlement, communicate amongst themselves before conveying class members' concerns to Proposed Class Counsel and the Court, and ultimately to present their views to the Court in an organized fashion.

The approach adopted by the Court in the pending *Hyundai and Kia Fuel Economy Litigation*, MDL No. 2424, is instructive. At the initial status conference, proposed class counsel announced that they had reached a class settlement with the Hyundai and Kia defendants on a $400 million settlement that would resolve the MDL. As in this MDL, many of the other plaintiffs' counsel had strong views on the proposed settlement and immediately began

10

requesting a range of kinds of information from the settling parties.  To effectively manage these diverse viewpoints, the Court appointed Liaison Counsel for the Non-Settling Parties.  *Hyundai and Kia Fuel Economy Litig.*, Case No. 13-ML-02424-GW, ECF No. 32 (C.D. Cal.).  Throughout the settlement approval process, Liaison Counsel has acted as coordinator and conduit for the non-settling parties, coordinating discovery into the fairness of the settlement, filtering and refining the respective positions when possible and otherwise conveying all positions to the Court in streamlined fashion.  For example, Liaison Counsel recently filed a report that collected the various views on the settlement in a single document.  *Id.*, ECF No. 211.  The process has worked well and however the Court ultimately rules on preliminary and final approval, has resulted in a robust factual record upon which the Court can assess the settlement.

      The liaison-counsel approach used in the *Hyundai and Kia* MDL is not the only way to organize non-settling plaintiffs, but it does illustrate how the many participants in an MDL like this one can be harnessed to assist the Court in building consensus and creating an adequate record.  The Myers Plaintiffs look forward to discussing an approach with the Court that makes sense for this MDL and respectfully suggest that a Status Conference be scheduled for that purpose.

Dated: February 10, 2014

                                                        Respectfully Submitted,

                                                        /s/ Daniel C. Girard
                                                       Daniel C. Girard
                                                       Geoffrey A. Munroe
                                                       **GIRARD GIBBS LLP**
                                                       601 California Street, 14th Floor
                                                      San Francisco, CA 94108
                                                      Telephone:  (415) 981-4800
                                                      Facsimile:  (415) 981-4846
                                                      dcg@girardgibbs.com

Philip W. Thomas
**PHILIP W. THOMAS LAW FIRM**
Post Office Box 24464
Jackson, Mississippi 39225-4464
747 North Congress St. (39202)
Telephone:  (601) 714-5660
pthomas@thomasattorney.com

John D. Giddens
Baskin Jones
**GIDDENS LAW FIRM**
226 North President Street (39236)
Post Office Box 22546
Jackson, Mississippi 39225-2546
Telephone:  (601) 355-2022
Facsimile:  (601) 355-0012

*Counsel for 214 Former NFL Players*