**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| IN RE: NATIONAL FOOTBALL | : | No. 2:12-md-02323-AB |
| LEAGUE PLAYERS' CONCUSSION | : | |
| INJURY LITIGATION | : | MDL No. 2323 |
| | : | |
| | : | Hon. Anita B. Brody |
| THIS DOCUMENT RELATES TO: | : | |
| | : | |
| All Actions | : | |
| | : | |

**PROPOSED CO-LEAD CLASS COUNSEL'S RESPONSE TO**
**THE MYERS PLAINTIFFS' STATEMENT REGARDING**
**SETTLEMENT APPROVAL PROCESS AND**
**REQUEST FOR STATUS CONFERENCE**
**TO COORDINATE NON-SETTLING PLAINTIFFS**

I.     **INTRODUCTION**

Proposed Co-Lead Class Counsel[1] submit this response to the Myers Plaintiffs' Statement

Regarding Settlement Approval Process and Request for Status Conference To Coordinate Non-

Settling Plaintiffs (hereinafter referred to as "Myers Plaintiffs" and "Myers' Statement").[2]  Since

January 14, 2014, when this Court denied the Motion for Preliminary Approval without

prejudice and directed "[a]s a first step toward preliminary approval," that the parties "share the

documentation referred to in their submissions with the Court through the Special Master" [D.E.

#5657, at 12], this is the fourth such motion or statement that has been filed seeking either

---

[1] Christopher A. Seeger and Sol Weiss already were appointed by the Court to serve as Plaintiffs' Co-Lead Counsel for the proceedings.  [D.E. #s 64, 72]  They currently seek to be appointed as Co-Lead Class Counsel in connection with preliminary approval.

[2] The undersigned believe that it is Tobiath "**Myles**," not "Myers," who is being referenced, as he is the first named plaintiff in Case No. 2:12-cv-02800 (E.D. Pa.). *See* Myers' Statement at p. 1 n. 1, identifying that case first.  Nevertheless, since their papers are titled as such, we refer herein to the movants as the "Myers Plaintiffs."

information currently under review by the Special Master and not yet ordered to be disseminated, and/or a seat at the settlement table.[3]   Proposed Co-Lead Class Counsel submit that all of these requests, including that of the Myers Plaintiffs, are premature at this juncture and, as such, they should be denied without prejudice, pending the Court's receipt and evaluation of the report from the Special Master on the economic and actuarial documentation submitted by the parties.

Specifically, the Myers Plaintiffs assert that they are entitled to a status conference, to be appointed as liaison counsel and to conduct discovery because the proposed Settlement was reached prior to formal discovery and because they are purportedly in the best position to ensure that the Settlement is fair, reasonable and adequate as to all Class members.   They further contend that the Court should act now to hold a status conference, to appoint liaison counsel and to order discovery.

Proposed Co-Lead Class Counsel submit that in a case such as this, wherein the proposed Settlement was reached as a result of a Court-ordered Mediation, presided over by a neutral Mediator selected by the Court, and where the Court thereafter appointed a Special Master to assist the Court in evaluating the resulting proposed Settlement, the Class members' interests are already being protected by several impartial fiduciaries in addition to Class Counsel, such that liaison counsel is unnecessary, as further explained below.   Nevertheless, we are not opposed to the ultimate appointment of a liaison counsel at the appropriate juncture and recognize that in certain situations a liaison counsel can be helpful, if his/her role is limited and clearly defined. Typically, a liaison counsel acts to promote efficiency for the Court's benefit, through the avoidance of duplicative motions.   If the Court is inclined to make such appointment and/or to

---

[3] Rather  than set forth again, for the fourth time, the procedural background of this case, with which this Court is already familiar, the proposed Co-Lead Class Counsel hereby incorporate by reference their responses to the motions of the Duersons, the Seau Family, and Bloomberg LLC, at D.E. #s 5699, 5771, and 5777, respectively.

hold a status conference in connection therewith, we simply suggest that these should occur after the Special Master's work has been concluded.

However, the Myers Plaintiffs go one step further than the other movants. They do not simply want discovery now of the information currently before the Special Master concerning the adequacy of the amount of the fund, which information we contend ultimately will be provided to all absent Class members, when so ordered by the Court. The Myers Plaintiffs seek to be appointed as liaison counsel to conduct other discovery, beyond what is before the Special Master. We submit that their request is not only premature, it is outright improper, because, although their request is vague, they seem to be seeking to inquire into the settlement negotiations, which is impermissible, as explained below.

Further, in seeking their appointment as liaison counsel and in arguing that the procedural framework they endorse is appropriate in this case, the Myers Plaintiffs rely exclusively on an MDL currently pending in the Central District of California, *Hyundai and Kia Fuel Economy Litig.*, MDL No. 2424 (C.D. Cal.) before the Honorable George H. Wu. In fact, counsel for the Myers Plaintiffs herein include the same counsel, Girard Gibbs LLP, who represented the "non-settling plaintiffs" in the *Hyundai* case and who sought and were appointed as liaison counsel in that case.

Proposed Co-Lead Class Counsel submit that this case is not analogous to *Hyundai* and whether the suggested procedure "worked well" there, as the Myers Plaintiffs claim [D.E. #5778, at 3], remains to be seen. Nevertheless, since the procedure from the *Hyundai* case is being held up as a model allegedly worth repeating here, a review of what occurred in *Hyundai* is instructive.

II.    **THE REQUEST OF THE SO-CALLED "NON-SETTLING PLAINTIFFS" IS PREMATURE – THEY LACK STANDING TO OBJECT OR TO OPT OUT AT THIS JUNCTURE.**

Calling themselves "non-settling Plaintiffs" at this juncture is a misnomer. The proposed Settlement has not yet received Preliminary Approval from the Court. So, there technically are no "settling Plaintiffs" or "non-settling Plaintiffs" at the current time.

Further, Class certification pursuant to FED. R. CIV. P. 23(b)(3) is being sought, which provides class members with the right to opt out.[4] Once a settlement is preliminarily approved (assuming that ultimately occurs), those who are not satisfied with the settlement can either remain in the class and object, or they can opt out. Those who elect to opt out will be the non-settling Plaintiffs, and they will not have standing to object. FED. R. CIV. P. 23(e)(5). *See In re Vioxx Products Liab. Litig*., No. 09-30446, 2010 WL 2802352, at *3 (5th Cir. July 16, 2010) ("[I]n the context of class settlements, non-settling parties generally have no standing to challenge the settlement."). At any rate, the movants are acting more like objectors.

Should preliminary approval be granted and should the Myers Plaintiffs decide to remain in the Class and to object, they will have ample opportunity to inform themselves of the details of the proposed Settlement. As the undersigned noted in the responses to the papers filed by the Duersons, the Seau Family and Bloomberg, we anticipate that once the Court and the Special Master have reviewed and evaluated the proposed Settlement, the Court will order that the documentation currently under review by the Special Master should be made available to other Plaintiffs' counsel. Absent Class members, including any who intend to object, will have the information needed to be able to prepare to address any concerns at the Fairness Hearing, where

---

[4] There is no suggestion that this is a limited fund situation that would warrant the creation of a mandatory class pursuant to FED. R. CIV. P. 23(b)(1)(B), a questionable proposition at any rate in light of the limitations imposed on limited fund settlements by the United States Supreme Court. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999).

they will have the opportunity to cross-examine the experts presented in support of the proposed Settlement and to present argument to the Court.   Simply because the majority of the absent Class members already are aware of the proposed Settlement and many are represented by counsel is not a basis to alter the approval process.

The Myers Plaintiffs contend that they urgently need this information now, in advance of preliminary approval, and that "front-loading" the process is the most stream-lined approach.  To the contrary, should they be permitted to interject themselves into the process now and to conduct the discovery they apparently intend to seek, undoubtedly substantial delays will result.[5] Further, this "front-loading" would result in inefficiency and duplication, as it would not prevent others from coming forward with their objections at the time of the Fairness Hearing, consistent with the usual process.   Judicial economy is served by having all such objections brought at one time, in conjunction with the Fairness Hearing.

**III.    LIAISON COUNSEL IS UNNECESSARY AS THE SPECIAL MASTER ALREADY IS SERVING IN THE ROLE OF REVIEWING THE SUPPORTING DOCUMENTATION AND IMPARTIALLY ADVISING THE COURT AS TO WHETHER THE PROPOSED SETTLEMENT IS SUFFICIENT TO FAIRLY COMPENSATE ALL CLASS AND SUBCLASS MEMBERS.**

The Myers Plaintiffs express concern that the proposed Settlement is presented in the context of a class action because of the potential of conflicts among class members.  As noted above, a mandatory class is not being sought.  If and when preliminary approval is granted, these non-settling Plaintiffs can opt out if they believe the proposed Settlement is not adequate.

Movants claim that they should be appointed as liaison counsel in order to explore the disparities amongst the class members by conducting discovery.   Numerous times in their

---

[5] *See infra*, discussions of delays in Sections III and IV.

Statement, the Myers Plaintiffs refer vaguely to the detailed factual record they want to create.[6]

And yet, the only factual inquiry they specifically identify, in the context of their citation to

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), is whether there is enough money both

to cover the immediate payments to the currently injured, and to insure an ample fund for the

future to protect the interests of the exposure-only plaintiffs.  *See* Myers' Statement [D.E.

#5778], at 6.  Their failure to articulate any other information they would seek to discover,

should the Court appoint them liaison counsel and allow them to conduct discovery, implies that

the sufficiency of the settlement amount is the only discoverable area of inquiry they intend to

pursue, and that already is being addressed by the Special Master, as discussed *infra*.

        In seeking to create this factual record, the Myers Plaintiffs are acting as premature

objectors.  The Manual for Complex Litigation provides:

> Objectors might seek intervention and discovery to demonstrate the inadequacy of
> the settlement.  Discovery should be minimal and conditioned on a showing of
> need, because it will delay settlement, introduce uncertainty, and might be
> undertaken primarily to justify an award of attorney fees to the objector's counsel.
> A court should monitor postsettlement discovery by objectors and limit it to
> providing objectors with information central to the fairness of the proposed
> settlement.  A court should not allow discovery into the settlement-negotiation
> process unless the objector makes a preliminary showing of collusion or other
> improper behavior.

MANUAL FOR COMPLEX LITIGATION (FOURTH), at 21.643 (2011).  *See* 7B FED. PRAC. & PROC.

CIV. § 1797.4 (3d ed.) (objectors to a proposed settlement are entitled to discovery only if there

is some evidence that the settlement was collusive).  Numerous courts have recognized that

"objectors are not entitled to discovery concerning settlement negotiations between the parties in

the absence of evidence indicating that there was collusion between plaintiffs and defendants in

---

[6] *See, e.g.,* Myers' Statement [D.E. #5778] at 2 ("fact-intensive questions"), 2 ("robust record"), 4
("obtain the information needed to determine how the settlement will affect their particular clients"), 5
("well-vetted factual record"), 6 ("more developed record"), 7 ("detailed factual record"), 8 ("specific
factual findings"), 8 ("in-depth factual determinations").

the negotiating process." *In re Domestic Air Transp. Antitrust Litig.*, 144 F.R.D. 421, 424 (N.D. Ga. 1992).  *See Vollmer v. Publishers Clearing House*, 248 F.3d 698, 708 (7th Cir. 2001); *Lobatz v. U.S. West Cellular of California, Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000); *Grant Thornton v. Syracuse Sav. Bank*, 961 F.2d 1042, 1046 (2d Cir. 1992); *In re Lupron Marketing and Sales Practices Litig.*, MDL No. 1430, 2005 WL 613492, at *2 (D. Mass. Mar. 16, 2005); *Hemphill v. San Diego Assoc. of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2005).

The Myers Plaintiffs maintain that they are not suggesting that there was collusion or any other inappropriate conduct in attaining the proposed Settlement.  Yet, they repeatedly express their concern as to the lack of formal discovery prior to the Settlement, and as to an alleged loss of the benefits of the adversarial process since the proposed Settlement was reached.

If it is the intent of the Myers Plaintiffs to seek discovery into the settlement negotiation process, such is improper here, as there is no evidence of collusion.  Unlike many other cases, the proposed Settlement here arose out a Court-ordered Mediation, under the auspices of the neutral Mediator appointed by the Court, Layn R. Phillips.  *See* Court's Order, dated July 8, 2013 [D.E. #5128]  ("I ORDER parties, through their lead counsel, to engage in mediation to determine if consensual resolution is possible.").  Judge Phillips already has advised the Court, in a publicly filed Declaration that the "parties engaged in arm's length, hard-fought negotiations," "the parties aggressively asserted their respective positions," "the negotiations were contentious," and "Plantiffs' counsel zealously represented the proposed class and subclasses."  [D.E. #5634-4, at ¶¶ 5, 6, 11]  As to the subclasses and the area of the Myers' concern, Judge Phillips specifically noted "[b]y resolving the litigation at this time, Plaintiffs' counsel, in part, sought to compensate impaired retired NFL players who need money now in order to address their medical conditions.

They also ensured that compensation and medical testing will be available for retired NFL players who are not impaired at present, but may become so in the future." *Id*. at ¶ 12.

If, on the other hand, it is the intent of the Myers Plaintiffs to seek discovery concerning the adequacy of the amount of the proposed Settlement, the Special Master already has been tasked by the Court with obtaining and evaluating these data and advising the Court as to the sufficiency of the settlement amount.  *See* Court's Memorandum and Order, dated January 14, 2014 [D.E. #s 5657, 5658].  The Myers Plaintiffs not only take the position that they are in a better position to represent alleged conflicting groups of absent Class member than are the members of the proposed Executive Committee who negotiated the settlement,[7] they also seem to be claiming that they are in a better position to act as fiduciary than the Court and the Special Master.  To the contrary, the Court and the Special Master are entirely capable of evaluating the settlement, and protecting the interests of all Class members without any assistance or interference from proposed liaison counsel.  Proposed Co-Lead Class Counsel submit that the Court will be able to conduct the rigorous analysis necessary to determine whether the proposed class action Settlement is fair, reasonable and adequate for purposes of Preliminary Approval. There is no need to appoint liaison counsel at all, let alone now, before the Court and Special Master Golkin have completed their evaluations of the submitted material.

---

[7] The Myers Plaintiffs incorrectly imply that the interests of the current claimants and the future claimants were not separately represented in the settlement process.  This is not true.  Proposed Co-Lead Counsel seek appointment of Subclass Counsel, counsel who already had served in the roles of protecting the interests of the two factions during the settlement negotiations – Arnold Levin for Subclass 1 (the so-called future injured claimants) and Dianne M. Nast for Subclass 2 (the currently injured claimants).  *See also* Declaration of Layn R. Phillips [D.E. #5634-4, at ¶ 7] ("Moreover, in order to ensure the adequate and unconflicted representation of all of the proposed class members, Plaintiffs agreed during the negotiations to create two proposed separate subclasses, each represented by separate counsel.  Generally speaking, one subclass is composed of retired NFL players who have diagnosed cognitive impairments; the other subclass is composed of retired players without a diagnosis of cognitive impairment.").  *See also* the *Amchem* discussion in the Memorandum of Law in Support of Preliminary Approval [D.E. #5634-5], at pp. 45-47.  As to the Myers Plaintiffs' reference to the possibility that the Derivative Claimants might also need separate representation, *see* Myers' Statement, at pp. 2, 7, the undersigned addressed the fairness to Derivative Claimants in the Response to the Seau Family's Statement [D.E. #5771].

That being said, the proposed Co-Lead Class Counsel recognize that district courts have appointed liaison counsel to fill certain roles at various stages in the settlement process, with the purpose being to promote efficiency for the benefit of the court.  For instance, in *In re: Vioxx Prods. Liab. Litig.*, the Honorable Eldon E. Fallon appointed liaison counsel to coordinate with the many law firms and the court on the handling of ineligible and not enrolled claims (which would be akin to those ultimately deciding to opt out in this case).  *See In re: Vioxx Prods. Liab. Litig.*, MDL No. 1657 (E.D. La.) at D.E. # 18735, dated April 28, 2009.  *See also In re Chinese-Manufactured Drywall Prod. Liab. Litig.,* MDL No. 2047 (E.D. La.), at D.E. #5314 (Aug. 25, 2010) (appointing committee and "establishing a system for setting the numerous, pending motions in MDL 2047 for hearing" in a "sensible manner");  *In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, 2004 WL 2065813, at *3 (E.D. Pa. Aug. 26, 2004) (appointing of liaison committee by the Honorable Harvey Bartle, III).  If this Court were to create such a role in the future, the undersigned do not oppose the appointment of Daniel C. Girard of Girard Gibbs LLC, as we recognize that he is competent to fill that role.

## IV.   THE *HYUNDAI* CASE IS DISTINGUISHABLE FROM THE INSTANT CASE.

The class action in which counsel for the Myers Plaintiffs, Girard Gibbs LLP, was involved and wherein a court used the procedure they urge this Court to follow, *Hyundai and Kia Fuel Economy Litig.*, MDL No. 2424 (C.D. Cal.), concerns a class of motor vehicle owners alleging that the defendant car manufacturers overstated their cars' gas mileage.[8]  Following transfer and consolidation by the Judicial Panel on Multidistrict Litigation on February 6, 2013, the parties advised the district court at a Status Conference held on February 14, 2013 that a proposed settlement had been reached with Hyundai.  *See* Docket Entries from *Hyundai* attached

---

[8] Many documents filed in *Hyundai* case, particularly those filed more recently, were filed under seal, so, a complete recitation of all that has transpired is impossible.

hereto as Exhibit 1, at D.E. #4.  The *Hyundai* Court ordered the plaintiffs participating in the

settlement negotiations to provide the non-settling plaintiffs with the general term sheet by

February 21, 2013.  *Id.*   The term sheet was disseminated.  Thereafter, the same terms were

offered to and accepted by defendant, Kia.  On March 28, 2013, the *Hyundai* Court appointed

counsel from Girard Gibbs as liaison counsel.  *See* Exhibit 1, at D.E. # 32 and *see* the Minutes of

the hearing held on March 28, 2013 [*Hyundai* D.E. #32], attached as Exhibit 2, at p. 2.

The proposed Settlement reached in *Hyundai* was contingent upon confirmatory

discovery from the outset.[9]  The defendant car manufacturers possessed reports of customer

complaints, as well as testing data and other documents relating to investigations by the

Environmental Protection Agency (EPA) and various state attorneys general, including EPA

MPG (miles per gallon) estimates, across various models and production years.  *See* Exhibit 3

hereto, a letter from Hyundai's counsel submitted as Exhibit B to Defendants' Status Conference

Report [*Hyundai* D.E. # 128-2], which sets forth the initial forty (40) Requests for Production

propounded upon Hyundai and Kia in the confirmatory discovery process.  The initial term sheet

and settlement negotiations had not addressed in detail the subclasses that might need to be

created to account for the variations in the levels of the manufacturers' misrepresentations over

time and over various models, and the resultant disparity in damage levels.

In contrast, here, based upon the Court's Order, the only type of information necessary to

evaluate the settlement is the anticipated amount of fund over time and its sufficiency to

compensate those with current disease and those expected to be diagnosed in the future, based

---

[9] In contrast to the instant case, although the proposed settlement in *Hyundai* was reached following mediation, only a two-day mediation was held in advance of the settlement with Hyundai and only a one-day mediation was held for the settlement with Kia.  *See generally* Phillips Declaration [D.E. #5634-4] regarding the protracted mediation process in this case.  While the mediations in *Hyundai* were conducted by a former California state court judge, Stephen J. Sundvold, he did not ultimately submit a declaration in support of the proposed settlement, as Judge Phillips did in the instant case.  Further, no Special Master was appointed in *Hyundai* to parallel the appointment of Special Master Golkin in this case.

upon anticipated participation rates.  This is information the Special Master is already evaluating, along with the underlying medical, actuarial and economic data, and what we expect will eventually be produced to absent class members for them to evaluate.  There is no further discovery, confirmatory or otherwise, to gather from the NFL.

In *Hyundai*, the Court recently determined that both liaison counsel and other non-settling plaintiffs were overreaching in their attempts to obtain certain discovery from the defendant car manufacturers.  *See Hyundai* Court's Minutes from Status Conference on December 9, 2013 [*Hyundai* D.E. #182], attached as Exhibit 4.  As to the discovery sought by liaison counsel in *Hyundai*, who are seeking to be named liaison counsel here, the *Hyundai* Court denied the request for certain documents because they were protected as work product and/or were duplicative of information that plaintiffs already had and were "unnecessary for Plaintiffs to possess in order to evaluate the fairness of the settlement."  *See* Exhibit 4, at p. 3.   As to the other non-settling plaintiffs, the *Hyundai* Court held that they were not entitled to documents and communications related to settlement negotiations, noting:

> Plaintiffs offer no evidence of collusion other than the rapidity with which Hagens Berman filed suit after the information regarding the fuel economy misstatements became public and also the speed with which the case settled.  That evidence of collusion would not be deemed sufficient to create a reasonable suspicion of collusion (so long as the settlement itself appear fair and rational), and therefore the Court would DENY this discovery request.

*Id*. at p. 5.

Further, it should be noted that at the time of the appointment of liaison counsel, the *Hyundai* Court expected that confirmatory discovery would be concluded and the Motion for Preliminary Approval would be filed by June 3, 2013.  *See* Exhibit 2, at p. 4.  However, a delay in the filing of the preliminary approval occurred, at least in part as a result of the improper discovery which the non-settling plaintiffs, including liaison counsel, sought under the guise of

"confirmatory discovery," and the motion practice that surrounded same.  *See* Exhibit 4.  The Motion for Preliminary Approval was just filed on December 23, 2013.  *See* Exhibit 1 at *Hyundai* D.E. #s 184-87.  It remains to be seen whether the *Hyundai* Court will preliminarily approve that proposed class action settlement and whether the non-settling plaintiffs, including liaison counsel, did anything to improve the settlement in that case for the class members, or whether their tactics merely caused delay.[10]

Proposed Co-Lead Class Counsel suggest that following the procedure from *Hyundai* is not appropriate in this case.  The information needed to evaluate the proposed Settlement already has been collected and can be disseminated upon the Court's direction.  The Court and the Special Master are in the best position to act as fiduciaries to the absent Class members, along with proposed Class Counsel.  Should the Court determine that the appointment of liaison counsel here is appropriate at a later juncture, the role of liaison should be limited so as not to burden the Court or delay these proceedings.

## V.    CONCLUSION

For these reasons, proposed Co-Lead Class Counsel respectfully request that the Court decline to set a Status Conference or to appoint liaison counsel at this juncture.  If the Court is inclined to order a Status Conference to address the Myers Plaintiffs' Statement, proposed Co-Lead Class Counsel respectfully request that the Myers Plaintiffs be required to identify at that

---

[10] It appears that liaison counsel in *Hyundai* still object to certain aspects of the proposed Settlement as appended to the Motion for Preliminary Approval.  Attached hereto as Exhibit 5 is Liaison Counsel's Report Listing Non-Settling Plaintiffs' Cases and Positions Regarding Proposed Settlement with Exhibit B attached thereto, dated January 30, 2014 [Hyundai D.E. #211 and #211-2].  *See* Exhibit 5, at 211-2, at p. 6 (Girard Gibb's position).

time the discovery they would pursue, if appointed liaison counsel, in addition to the information already being evaluated by the Special Master.

Dated: February 21, 2014

Respectfully Submitted:


*/s/ Christopher A. Seeger*
Christopher A. Seeger
**SEEGER WEISS LLP**
77 Water Street
New York, NY 10005
Phone:  (212) 584-0700
Fax:  (212) 584-0799
cseeger@seegerweiss.com

*Co-Lead Counsel*

Sol Weiss
**ANAPOL SCHWARTZ**
1710 Spruce Street
Philadelphia, PA 19103
Phone:  (215) 735-1130
Fax:  (215) 735-2024
sweiss@anapolschwartz.com

*Co-Lead Counsel*

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that a true copy of the foregoing was served electronically via the

Court's electronic filing system on the 21st day of February, 2014, upon all counsel of record.

Dated: February 21, 2014

<u>/s/ Christopher A. Seeger</u>
Christopher A. Seeger