# Exhibit 4

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | MDL 13-2424-GW(FFMx) | Date | December 9, 2013 |
| Title | *In Re: Hyundai and Kia Fuel Economy Litigation* | | |

Present: The Honorable **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | Pat Cuneo | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| **BY TELEPHONE** | John R. Ashby |
| Sara D. Avila | Dean Hansell |
| Derek Brandt | Benjamin W. Jeffers |
| Bryan Clobes | Michael L. Kidney - by telephone |
| Wesley W. Barnett | Shon Morgan |
| Robert Bonsignore | James P. Feeny |
| John Phillips | |
| Emily Kirk | |
| Justin Saif | |
| Justin B. Farar | |
| Francis Greene | |
| Richard E. Norman | |
| R. Martin Weber, Jr. | |
| Fran Whitaker | |
| | |
| **IN PERSON** | |
| William H. Anderson | |
| Robert B. Carey | |
| Eric H. Gibbs | |
| Scott M. Grzenczyk | |
| Richard D. McCune, Jr. | |
| Courtney L. Peinhardt | |
| Harvey Rosenfield | |
| Allison R. Willett | |

**PROCEEDINGS:** PLAINTIFFS' MOTION REGARDING DISCOVERY [153];

DEFENDANT KIA MOTORS AMERICA, INC.'S MOTION TO STRIKE NON-SETTLING PLAINTIFFS' SUPPLEMENTAL BRIEF [158];

STATUS CONFERENCE

                                                                            : 45

Initials of Preparer   JG

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | MDL 13-2424-GW(FFMx) | Date | December 9, 2013 |
|---|---|---|---|
| Title | *In Re: Hyundai and Kia Fuel Economy Litigation* | | |

The Court's Tentative is circulated and attached hereto. Court hears oral argument. Based on the Tentative and for reasons stated on the record, Plaintiffs' Motion Regarding Discovery is GRANTED IN PART and DENIED IN PART. Defendant KIA's motion to strike is deemed MOOT.

A Scheduling Conference is set for **January 9, 2014 at 9:30 a.m.** Joint Report as to each side's position re dates will be filed by January 7, 2014.

: 45

Initials of Preparer   JG

***In re: Hyundai and Kia Fuel Economy Litigation***; Case No. CV-13-ML-2424-GW-FFM
Tentative Ruling on Remaining Discovery Issues

*This memorandum contains information from documents filed under seal. Should any party seek to have it filed under seal or have parts of it redacted, it must advise the Court at the hearing on this matter or the Court will make the memorandum part of the public record.*

### I. Background

Following the September 26, 2013 status conference in this matter, the parties have continued to work to resolve their discovery disputes regarding confirmatory discovery regarding the proposed settlement of the case. While the parties represent that they have reached agreement as to many discovery issues, the parties now present to the Court their remaining discovery disputes for resolution. The parties filed a Joint Discovery Stipulation ("Joint Stip.") pursuant to Local Rule 37-2.1 on November 21, 2013 (Docket No. 154) and the Liaison Counsel plus the Non-Settling Plaintiffs ("Plaintiffs") filed a separate supplemental brief pursuant to Local Rule 37-2.3 on November 25, 2013 (Docket No. 157). It appears that Defendants Hyundai Motor America and Hyundai Motor Company ("HMA") and Kia Motors America, Inc. ("KMA") (collectively "Defendants") did not file a supplemental brief.

Generally speaking, Plaintiffs seek to compel additional discovery from Defendants. Defendants argue that the limited scope of confirmatory discovery should not extend to the information requested by Plaintiffs. Defendants claim that Plaintiffs fail to meaningfully explain how the additional information will assist Plaintiffs in evaluating the fairness of the proposed settlement. Defendants also argue that Plaintiffs fail to explain why other information that they have received is not adequate to conduct a proper evaluation.[1] Finally, in some instances Defendants argue that Plaintiffs request privileged and/or work product documents that cannot be compelled. Defendants argue that one purpose of settlement, namely to limit the amount of time and money spent by the parties on litigation, would be thwarted by requiring this additional discovery, as it would be extremely burdensome on Defendants to produce documents to fulfill some of the remaining discovery requests.

### II. Remaining Discovery Disputes
#### A. Issue No. 1 (Liaison Counsel)

Liaison Counsel made the following discovery request: "Documents projecting the anticipated cost of the voluntary reimbursement program. This includes documents discussing the projected participation in the reimbursement program, the anticipated ownership lengths of the class vehicles, and the amounts Defendants expect to revert back to them as a result of unused debit cards." Grzenczyk Decl., Exh. B. Defendants responded that "Defendants' internal

---

[1] As claimed by Defendants, "Defendants have produced more than 300,000 pages of documents. Plaintiffs conducted on-the-record, under oath interviews of eleven company representatives in both the United States and Korea. Significantly, one of the witnesses plaintiffs were permitted to question was the CEO of HMA." *See Joint Stip.* at 2, Docket No. 154.

-1-

analysis of the reimbursement program is irrelevant and is protected by the attorney work product doctrine." *Id.* at Exh. C. Defendants therefore refused to produce documents in response to this request.

Plaintiffs argue that they further clarified the nature of the information sought in this discovery request in a November 1, 2013 letter, which explained that "the narrow category of information sought includes objective data related to the anticipated costs of the reimbursement program; not legal advice or work product that may have been considered in formulating the program." *Id.* at Exh. D. Plaintiffs give an example of the type of document they seek: a purchasing request from the customer service department to fund the reimbursement program.[2] Plaintiffs argue that this clearly was not prepared in anticipation of litigation and is highly relevant to allow Plaintiffs to "evaluate the potential scope of compensation provided by the reimbursement program." Joint Stip. at 5.

The information that Plaintiffs seek appears to be somewhat relevant to an evaluation of the fairness of the settlement. The projected participation in the program, the projected ownership length of class vehicles, and the unspent amounts that Defendants expect to revert back to them are all germane to an analysis of whether class members are likely to actually obtain and use the benefits offered under the reimbursement program. However, in light of the data *already* offered to Plaintiffs regarding *actual* claims made, dollars distributed, and amount spent, the additional data now sought by Plaintiffs would not seem to add much to their ability to analyze settlement fairness.[3]

Further, the information Plaintiffs seek appears (in part) to be entitled to protection under the work product doctrine. Defendants have the burden of demonstrating that the documents sought were prepared by an attorney or an attorney's agent in anticipation of litigation. The sample document that Plaintiffs say they are requesting indicates that it was sent to "Legal" and signed by a member of the "Legal" department on October 30, 2012. On the date the memorandum was sent, the reimbursement program had not yet been finalized; therefore, it is an internal document regarding the reimbursement program that was prepared in anticipation of litigation. Finally, the fact that the program was a "customer service program" that may have served a business purpose does nothing to remove such documents from work product protection. Settlement of a lawsuit of this magnitude nearly always involves a "business purpose;" the fact that Hyundai and Kia designed the program to establish goodwill with their customers does not mean that they did not also create the program at the time and in the manner they did in anticipation of

---

[2]This document was originally produced by Hyundai, but on September 3, 2013, Liaison Counsel received a clawback request from Hyundai. Liaison Counsel removed the document from its database. Plaintiffs currently use this document only in connection with their discovery disputes.

[3]As noted by Defendants, the only additional information that Plaintiffs appear to seek are the Defendants' *projections* as to what they expect the aggregated amounts that the reimbursement program/settlement will eventually cost the Defendants. Given that the information consist of projections, the actual cost will vary depending on the number of vehicle owners who take advantage of the program before it expires. In the end, it may be higher or lower than the Defendants' estimates. Thus, it is somewhat unclear as to how that information will actually assist Plaintiffs in assessing the fairness of the program. Additionally, to the extent that such calculations would be helpful, the materials already provided to Plaintiffs would enable them to make their own projections based upon that information and their own estimate as to the number of class members who will ultimately elect to participate.

impending litigation.[4]

Therefore, the Court would DENY the discovery request because the requested documents are protected as work product. Further, the information sought in part appears to be duplicative of information that Plaintiffs already have, and is therefore unnecessary for Plaintiffs to possess in order to evaluate the fairness of the settlement.

### B. Issue No. 2 (Krauth and Hasper Plaintiffs)

Plaintiffs seek more information regarding documents that HMA listed in its privilege log. Plaintiffs argue that HMA has not complied with federal law and that the privilege log that HMA provided is insufficient. Plaintiffs request that the Court order immediate production of all of the documents listed in the privilege log, undertake *in camera* review of all documents and release those not subject to privilege, or, at a minimum, require that HMA prepare a revised privilege log that properly substantiates each assertion of privilege.

HMA's privilege log appears to be sufficient, especially given HMA's agreement to provide a list of the job titles of all those individuals listed on the privilege log and to review the withheld documents to determine whether any of them can be provided in redacted form instead of withholding them entirely without revealing privileged information.[5] *See* HMA Privilege Log, Grzenczyk Decl., Exh. G. HMA lists, for each communication that it claims is privileged, the sender and recipient of the communication and the specific privilege (attorney-client privilege and/or work product) that protects the communications. *Id.* HMA also explains the nature of each communication.

Plaintiffs' argument that HMA should be forced to list each email separately rather than one log entry for each email is not convincing; courts have split on this issue, and given the large number of communications at issue here, HMA's log should be deemed sufficient. Further, HMA points out that it may actually reveal privileged information if it were forced to list out every individual email communication, from which Plaintiffs may be able to construct or guess the nature of the communications, especially because most of them occurred within a short period of time immediately prior to the November 2, 2012 announcement of the reimbursement program and were likely related directly to conversations about the nature of the program. *See Muro v. Target Corp.*, 250 F.R.D. 350, 363 (N.D. Ill. 2007).

Further, the fact that an attorney was not the sender or recipient of every single email, but rather was cc'ed or bcc'ed or even left off of an email string entirely, does not mean that the communications were not privileged. *See In re New York Renu with Moistureloc Prod. Liab.*

---

[4] Defendants have proffered evidence that "Prior to the [reimbursement] program's announcement on November 2, 2012, HMA's in-house counsel oversaw a crisis management team that assessed and developed the logistics of the reimbursement program . . . . Discussions surrounding the reimbursement program began in mid-October 2012, when HMA's in-house counsel had become concerned about the prospect of litigation related to the announcement of adjusted EPA MPG estimates for certain Hyundai vehicles." *See* Joint Stip. at 9, Docket No. 154.

[5] The Court will discuss with the parties an additional option of allowing the Plaintiffs, after Defendants have provided any amendments to their privilege log, to select ten documents, which the Court will require Defendants to provide to the Court, and for the Court to determine the sufficiency and correctness of the delineated privilege.

*Litig.*, 2008 WL 2338552, at *10 (D.S.C. 2008). HMA employees and the crisis management team hired to assist HMA in designing the reimbursement program were likely all necessary parties to communications regarding legal advice relating to the program. Such advice or sharing of information is entitled to protection as long as the communication is made for purposes of obtaining, giving, or disseminating legal advice. *See Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 514-515 (S.D. Cal. 2003). California law recognizes that "in order to implement the advice of lawyers, the advice must be communicated to others within the corporation." *Zurich Am. Ins. Co. v. Superior Court*, 155 Cal. App. 4th 1485, 1498 (2007).

Therefore, the Court would DENY Plaintiffs' request for the wholesale production of documents listed on the privilege log and/or revisions to the privilege log, especially given HMA's offer to provide job titles for senders and recipients of emails on the privilege log and to review to see whether any additional documents could be offered in redacted form rather than withheld entirely (but subject to the additional step described in footnote 5, *supra*).

### C. Issue No. 3 (Krauth and Hasper Plaintiffs)

The Krauth and Hasper Plaintiffs made the following document request: "Documents and communications with the lawyers or law firms of McCune Wright, LLP or Hagens Berman Sobol Shapiro LLP related to possible or actual litigation concerning the affected vehicles." Grzenczyk Decl., Exh. K. Defendants provided some settlement mediation documents from the action filed by Hagens Berman. However, Defendants stated in response to this request that they "do not agree to produce documents in response to this request beyond the settlement mediation documents already produced." *Id.* at Exh. L.

Discovery of settlement negotiations is proper only in limited circumstances, such as where there is evidence from other sources that the settlement may be collusive. *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2005). Plaintiffs argue that they are entitled to this discovery because the facts surrounding the announcement of the revised fuel economy numbers and reimbursement program and the filing of a lawsuit by Hagens Berman suggest collusion. Plaintiffs point to the fact that the information regarding the fuel economy misstatements became public knowledge on November 2, 2012 at 4:00 a.m; Hagens Berman filed a complaint on behalf of Settling Plaintiffs at 4:02 p.m. the same day. Plaintiffs also point to citations that state that Hagens Berman last visited certain websites on November 1, 2012. Plaintiffs argue that these facts support an inference of collusion between HMA and Hagens Berman, who must have had non-public knowledge of the impending announcement to be able to file the case so quickly. Plaintiffs do not point to any facts supporting the conclusion that McCune Wright was involved in any sort of collusion.[6]

As to Hagens Berman, Defendants argue that the settlement was negotiated under the close supervision of a mediator and that Hagens Berman is experienced and knowledgeable counsel. As a result, those negotiations should be presumed to be arms-length and non-collusive.

---

[6] It is noted that McCune Wright had brought and (as of November 2, 2012) had been litigating for about eleven months a related fuel economy class action against HMA. *See Espinoza v. Hyundai Motor America*, CV-12-0800. McCune Wright had also been involved in other fuel mileage cases filed years earlier. *See e.g. Kim v. General Motors LLC*, CV-11-6454. Therefore, the speed with which McCune Wright churned out its complaint herein is not surprising.

-4-

Plaintiffs, they argue, should have to show more evidence of collusion to be entitled to discovery into the "collusive" settlement.

Plaintiffs offer no evidence of collusion other than the rapidity with which Hagen Berman filed suit after the information regarding the fuel economy misstatements became public[7] and also the speed with which the case settled. That evidence of collusion would not be deemed sufficient to create a reasonable suspicion of collusion (so long as the settlement itself appears fair and rational), and therefore the Court would DENY this discovery request.

### D. Issue No. 4 (Krauth and Hasper Plaintiffs)

The Krauth and Hasper Plaintiffs made the following document request: "Documents and communications related to Consumer Watchdog, including lawyers employed by or counsel to Consumer Watchdog, except for documents filed in the above-captioned litigation OR in *Bird v. Hyundai Motor America*." By way of background, Consumer Watchdog brought the potential inaccuracies of the fuel economy of the Elantra to the attention of the EPA and HMA in November 2011, approximately one year before HMA admitted that the numbers had been inaccurate. Plaintiffs allege that the information is relevant to a determination of whether the settlement is fair because is may provide information as to when Defendant first became aware of the inaccuracies of its fuel economy representations. Defendants have refused to provide such documents because (1) they allege that the documents are not relevant to an assessment of whether the proposed settlement is fair and (2) forcing HMA to do a company-wide search at this point for the requested information would be unduly burdensome.

Defendants' argument that the documents are not relevant to an assessment of the fairness of the settlement is persuasive. Defendants argue that there is no proof that statements by Consumer Watchdog are sufficiently influential or credible to actually cause a business to conduct an internal investigation or to believe that those statements must be true. However, the documents may have some relevance, at least as to the degree of culpability of HMA in continuing to misrepresent fuel economy numbers after it was put on notice by Consumer Watchdog that its numbers might be wrong.

However, requiring Defendants to locate, cull, scan for potential privileged information, and then deliver the requested documents to Plaintiffs would appear to be highly burdensome. The information seems marginally relevant, and the burden on Defendant of providing this information far outweighs the value the information would have to Plaintiffs.[8]

Therefore, the Court would DENY this request for discovery, certainly as it is currently stated.

---

[7]Defendants also point out that McCune Wright and Hagens Berman were not the only law firms which managed to file a fuel economy lawsuit against the Defendants on November 2, 2012. *See Joint Stip.* at 40, Docket No. 154, referencing *Lipman v. HMA, et. al.*, Case No. 2012-L-12496 (Cook County Circuit Court, Illinois) (filed November 2, 2012).

[8]A better request would have been for Plaintiffs to request documents located within certain parameters of Defendants' operations which specifically reference Consumer Watchdog's November 2012 letter or discuss/delineate the Defendants consideration of that letter or any actions taken as a result of the receipt of that letter.

### E. Issue No. 6 (Plaintiff Figueroa)[9]

Plaintiff Figueroa made the following discovery request: "Please identify any messaging systems utilized by HMA. Please confirm whether HMA's searches for documents included searches of any messaging program, system, or related files and messages, including archived and any other retained records. If so, please confirm that those documents were produced. If not, please produce them." Clobes Decl., Exh. A. Defendants contend that (1) the designation of this issue as a remaining discovery issue was untimely and therefore the request should be denied on that basis alone, (2) Defendants have responded by stating that all such messages, to the extent that they were maintained by one of the designated custodians, were already turned over, and (3) Plaintiffs have not shown that there are likely to be any relevant messaging communications or that any such communications will not be duplicative of information already obtained.

It appears that Defendants have actually responded to this issue sufficiently in the joint stipulation. HMA states that "HMA has messaging systems known as Autoway and M-Channel." Joint Stip., p. 48. Further, "HMA's collection and search efforts included the internal messaging systems . . . to the extent that information from the internal messaging systems was saved to custodians' local hard drives." *Id.* KMA has the same systems and did the same thing. *Id.* Further, given that the issue was not designated as a remaining discovery issue in a timely manner and that Defendants did provide a reasonable response, the Court would DENY Plaintiffs' request for additional discovery.

### F. Issue No. 7 (Plaintiff Figueroa)

Plaintiff Figueroa made the following document request: "Documents relating to actual, average, and expected length of ownership of Hyundai and Kia vehicles by American consumers." Grzenczyk Decl., Exh. K.

Defendants argue that they should not be required to provide this information for three reasons: (1) Defendants do not have systematic data on length of ownership of their vehicles, (2) the settlement does not incorporate a negotiated value for length of ownership, and (3) analysis of the length of ownership by counsel is protected by the attorney-client privilege and work product doctrine. Defendants also state that they have already produced the discoverable data that they have regarding length of ownership. Ashby Decl., Exh. 8. The Court would DENY this request for additional discovery, assuming that the Court at the hearing is still convinced that Defendants have actually turned over all discoverable information in response to this request.

### G. Issue No. 8 (Maturani Plaintiffs)

The Maturani Plaintiffs made the following document request: "Documents and communications related to differences between the parts used on vehicles for certification testing and the parts installed on production vehicles." Grzenczyk Decl., Exh. K. Defendants contend that this request overlaps with EPA's request no. 3, which sought "a narrative description and documents describing any physical differences between the test vehicles and the corresponding production vehicles." Defendants allege that any non-privileged documents that would be responsive to Plaintiffs' request were already produced in response to the EPA request.

---

[9] It appears that there is no "Issue No. 5" in the Joint Stip.

It appears that Plaintiffs have not yet received the specific information they seek through this document request. Plaintiffs clarified that they want to see the design specifications for testing vehicles and the design specifications for production vehicles in order to be able to compare them to determine whether they really were identical, rather than relying on defense counsel's assertion that they were identical. The Court would GRANT this request for additional discovery; to the extent that Defendants believe that they have already produced documents that are responsive to this request, they should point out what those documents are.

### H. Issue No. 9 (Wilton and Washburn Plaintiffs) *moot - resolved*

The Wilton and Washburn Plaintiffs made the following document request: "Reports Michele Cameron made in Fall 2012 and April 2013 when asked to investigate consumer complaints related to fuel economy. *See* Cameron Transcript at 141-144." Grzenczyk Decl., Exh. K. Defendants responded that the documents prepared "were undertaken at the direction of counsel in response to threatened (and indeed pending) litigation and accordingly are protected by attorney-client privilege, the work product doctrine, and the exclusions in Fed. R. Civ. P. 26(b)(3)(A)."

KMA states that it believes this issue will be resolved prior to the December 9, 2013 hearing because (1) KMA has agreed to produce some additional documents and (2) KMA conducted further investigation which confirmed that certain reports were prepared in anticipation of litigation and therefore are privileged. Assuming KMA adds these documents to its privilege log, it appears that the Court would DENY any further discovery on this issue, as the parties will have already taken care of it prior to the hearing.

## III. Motion to Strike Supplemental Brief

Defendants filed a motion to strike Plaintiffs' supplemental briefing on the discovery disputes. Docket No. 158. Defendants argue that Plaintiffs violated Local Rule 37-2.3 and the Court's October 7, 2013 Order, which contemplated the filing of a single brief not to exceed 5 pages. Plaintiffs instead filed several supplemental briefs, all as Docket No. 157 and each 3-5 pages in length, for a total of 13 pages of supplemental briefing text. Defendants argue that the language of the Court's order and the Local Rules contemplates two parties to the discovery disputes and that each party is allotted only 5 pages of supplemental briefing under the Local Rules. The Nonsettling Plaintiffs should be regarded as one party. Therefore, Defendants argue, Plaintiffs' supplemental briefing should be stricken for failure to comply with the Local Rules.[10]

While not dispositive of the motion, the Court indicates that it was only expecting one supplemental brief from each side. For example, it would not have expected the Defendants to have been allowed to submit two separate briefs although they are separate entities.

The Court would discuss the issue at the hearing.

---

[10] Whether or not the Court strikes the supplemental briefing is largely irrelevant to analysis of the discovery disputes. Plaintiffs already presented the positions advocated in their supplemental briefing in the joint stipulation; therefore, the supplemental briefing is unnecessary to full presentation of Plaintiffs' arguments.

-7-