IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE | : | MDL No. 2323 |
| PLAYERS' CONCUSSION INJURY | : | 12-md-2323 |
| LITIGATION | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| ALL ACTIONS | : | |

## [PROPOSED] ORDER

AND NOW, this _____ day of _____, 2014, after consideration

of ESPN, Inc.'s Motion to Join Bloomberg L.P.'s Motions to Intervene and for Access (Docket

No. 5766), and any responses thereto, it is hereby ORDERED that the Motion is GRANTED and

that Bloomberg L.P.'s Motion to Intervene, the Motion for Access attached to Bloomberg's

Motion to Intervene, and all associated Bloomberg L.P. briefing (Docket Nos. 5766 & 5852)

shall be treated as if filed on behalf of Bloomberg L.P. and ESPN, Inc.

BY THE COURT:

_____

ANITA B. BRODY
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE | : | MDL No. 2323 |
| PLAYERS' CONCUSSION INJURY | : | 12-md-2323 |
| LITIGATION | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| ALL ACTIONS | : | |

## ESPN, INC.'S MOTION TO JOIN BLOOMBERG L.P.'S
## MOTIONS TO INTERVENE AND FOR ACCESS (DOCKET NO. 5766)

For the reasons set forth in the accompanying Memorandum of Law, ESPN, Inc.,

hereby moves this Court for an Order permitting ESPN, Inc., to join Bloomberg L.P.'s Motions

to Intervene and for Access and all associated Bloomberg L.P. briefing (Docket Nos. 5766 &

5852).

WHEREFORE, ESPN, Inc., respectfully requests that the Court enter an Order

permitting ESPN, Inc., to join Bloomberg L.P.'s Motions to Intervene and for Access and all

associated Bloomberg L.P. briefing (Docket Nos. 5766 & 5852).

Respectfully submitted,

/s/ Eli Segal
Amy B. Ginensky (PA I.D. 22623)
Eli Segal (PA I.D. 205845)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000
*Attorneys for ESPN, Inc., and Bloomberg L.P.*

Dated:  April 7, 2014

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE | : | MDL No. 2323 |
| PLAYERS' CONCUSSION INJURY | : | 12-md-2323 |
| LITIGATION | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| ALL ACTIONS | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
ESPN, INC.'S MOTION TO JOIN BLOOMBERG L.P.'S
MOTIONS TO INTERVENE AND FOR ACCESS (DOCKET NO. 5766)**

ESPN, Inc. ("ESPN") owns and operates television networks, radio stations, websites, print magazines, and other media properties that report on sports-related news and issues. ESPN is widely known and recognized as the Worldwide Leader in Sports. ESPN thus shares Bloomberg L.P.'s ("Bloomberg") interest in obtaining access to the settlement-related documentation that the Court has ordered the parties to share with the Court through the Special Master. Given this shared interest, ESPN respectfully requests that the Court permit it to join Bloomberg's Motions to Intervene and for Access and all associated Bloomberg briefing, and that the Court grant the access that ESPN and Bloomberg both seek.

On January 14, 2014, "[a]s a first step toward preliminary approval," the Court ordered the parties "to share . . . with the Court through the Special Master" the documentation that allegedly shows that the proposed $760 million settlement adequately compensates over 20,000 proposed class members. (Docket Nos. 5657 at 3, 10-12 & 5658.) That documentation has not been made publicly available. Moreover, Proposed Co-Lead Class Counsel has stated that the Court's July 8, 2013 confidentiality order bars him from disclosing or discussing it. (Docket No. 5699.)

On January 31, 2014, Bloomberg filed a motion for leave to intervene (1) to seek access to the documentation, under the common law and First Amendment right of access to judicial records and proceedings, and (2) to seek clarification that the parties are not restricted from discussing or disclosing the documentation. (Docket No. 5766 (attached as Ex. 1).) On February 26, 2014, the Court docketed the reply brief that Bloomberg had moved for leave to file. (Docket No. 5852 (attached as Ex. 2).) ESPN now seeks permission from the Court to join Bloomberg's Motion to Intervene, the Motion for Access attached to Bloomberg's Motion to Intervene, and all associated Bloomberg briefing.

Recent comments by Proposed Co-Lead Class Counsel make clear that the documentation that the Court ordered the parties to "share . . . with the Court through the Special Master" has now been provided to the Special Master. (*See* Ex. 3.) Because the Special Master here is an agent of the Court—assisting the Court in fulfilling its adjudicatory responsibility to evaluate the fairness, adequacy, and reasonableness of the proposed settlement—the common law and First Amendment right of access began to apply to the documentation once it was submitted to him. *See In re Cendant*, 260 F.3d 183, 192 (3d Cir. 2001) (explaining that a document is a "judicial record" and thus subject to a right of access if it has been "somehow incorporated or integrated into a district court's adjudicatory proceedings," and emphasizing that filing on the docket is not necessary). And even if the physical location of the documentation with the Special Master (as opposed to at the Courthouse) were a basis for denying public access, that basis of course disappears once the documentation is provided to the Court itself for consideration. Indeed, Proposed Co-Lead Class Counsel's recent comments strongly suggest that the documentation will be provided to the Court shortly, if it has not been already. (*See* Ex. 3.) Finally, regardless of whether the documentation has been provided to the Court yet, the

Court should clarify as soon as possible that the July 8, 2013 confidentiality order does not prohibit the parties from voluntarily disclosing it to or discussing it with the general public.

For all these reasons, ESPN respectfully requests that the Court permit it to join Bloomberg's Motions to Intervene and for Access and all associated Bloomberg briefing, and that the Court grant the access that ESPN and Bloomberg both seek.

Respectfully submitted,

/s/ Eli Segal
Amy B. Ginensky (PA I.D. 22623)
Eli Segal (PA I.D. 205845)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000
*Attorneys for ESPN, Inc., and Bloomberg L.P.*

Dated: April 7, 2014

## CERTIFICATE OF SERVICE

I, Eli Segal, hereby certify that on this 7th day of April, 2014, a true and correct copy of the foregoing ESPN, Inc.'s Motion to Join Bloomberg L.P.'s Motions to Intervene and for Access (Docket No. 5766), along with the accompanying Memorandum of Law and Proposed Order, was served electronically upon all counsel of record via the Court's ECF filing system.

/s/ Eli Segal
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : : : | MDL No. 2323 12-md-2323 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | : : : | |

## [PROPOSED] ORDER

AND NOW, this _____ day of _____, 2014, after consideration

of Bloomberg L.P.'s Motion to Intervene to Seek Access to Documents and Information, and any

responses thereto, it is hereby ORDERED that the Motion is GRANTED and that Bloomberg

L.P. is granted leave to intervene to seek access to documents and information and may file the

Motion and Memorandum of Law attached to its Motion to Intervene as Exhibit A.

BY THE COURT:


_____
ANITA B. BRODY
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : : : : | MDL No. 2323 12-md-2323 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | : : | |

## BLOOMBERG L.P.'S MOTION TO INTERVENE TO SEEK DOCUMENTS AND INFORMATION

Pursuant to Federal Rule of Civil Procedure 24 and for the reasons set forth in the accompanying Memorandum of Law, Bloomberg L.P. hereby moves this Court for leave to intervene to seek access to documents and information and for leave to file the Motion and Memorandum of Law attached hereto as Exhibit A.

WHEREFORE, Bloomberg L.P. respectfully requests that the Court grant it leave to intervene to seek access to documents and information and grant it leave to file the Motion and Memorandum of Law attached hereto as Exhibit A.

Respectfully submitted,

/s/ Eli Segal
Amy B. Ginensky (PA I.D. 22623)
Eli Segal (PA I.D. 205845)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

Dated: January 31, 2014

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE | : | MDL No. 2323 |
| PLAYERS' CONCUSSION INJURY | : | 12-md-2323 |
| LITIGATION | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| ALL ACTIONS | : | |

### MEMORANDUM OF LAW IN SUPPORT OF
### BLOOMBERG L.P.'S MOTION TO INTERVENE TO SEEK ACCESS TO
### DOCUMENTS AND INFORMATION

Bloomberg L.P. ("Bloomberg") operates Bloomberg News, a 24-hour global news service based in New York with more than 2,400 journalists in more than 150 bureaus around the world. Bloomberg supplies real-time business, financial, and legal news to the more than 319,000 subscribers to the Bloomberg Professional service world-wide and is syndicated to more than 1000 media outlets across more than 60 countries. Bloomberg television is available in more than 340 million homes worldwide, and Bloomberg radio is syndicated to 200 radio affiliates nationally. In addition, Bloomberg publishes Bloomberg Businessweek, Bloomberg Markets, and Bloomberg Pursuits magazines with a combined circulation of 1.4 million readers, and Bloomberg.com and Businessweek.com receive more than 24 million visitors each month. In total, Bloomberg distributes news, information, and commentary to millions of readers and listeners each day, and has published more than one hundred million stories.

On January 14, 2014, the Court ordered the parties to share with it, through the Special Master, the documentation that allegedly shows that the proposed $760 million settlement adequately compensates over 20,000 proposed class members. (Docket Nos. 5657 at 3, 10-12 & 5658.) The documentation, however, has not been made publicly available.

Moreover, Proposed Co-Lead Class Counsel has stated that a confidentiality order bars him from disclosing or discussing the documents.  (Docket No. 5699.)

As explained in Bloomberg's Motion for Access and accompanying Memorandum of Law, attached as Exhibit A and incorporated herein as though fully set forth, Bloomberg and the public as a whole have the right to access this documentation, under both the common law and the First Amendment.  Bloomberg now seeks to intervene, under Federal Rule of Civil Procedure 24, to seek such access.  A motion to intervene is the proper "procedural device" for a third party to use to assert its rights in situations like this one. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3d Cir. 1994).

Thus, Bloomberg respectfully requests leave to intervene pursuant to Rule 24, and it specifically requests leave to file the Motion for Access and Memorandum of Law attached hereto as Exhibit A.

Respectfully submitted,

/s/ Eli Segal
Amy B. Ginensky (PA I.D. 22623)
Eli Segal (PA I.D. 205845)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

Dated: January 31, 2014

## CERTIFICATE OF SERVICE

I, Eli Segal, hereby certify that on this 31st day of January, 2014, a true and correct copy of the foregoing Bloomberg L.P.'s Motion to Intervene to Seek Access to Documents and Information, along with the accompanying Memorandum of Law and Proposed Order, was served electronically upon all counsel of record via the Court's ECF filing system.

/s/ Eli Segal
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : : : : | MDL No. 2323 12-md-2323 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | : : | |

**[PROPOSED] ORDER**

AND NOW, this _____ day of _____, 2014, after consideration

of Bloomberg L.P.'s Motion for Access to Documents and Information, it is hereby ORDERED

that the Motion is GRANTED and that (1) the settlement-related documentation that the Court,

on January 14, 2014, ordered the parties to share with the Court through the Special Master shall

be made make publicly available and (2) the parties are not restricted from discussing the

documentation with or disclosing it to the general public.

BY THE COURT:


_____
ANITA B. BRODY
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE | : | MDL No. 2323 |
| PLAYERS' CONCUSSION INJURY | : | 12-md-2323 |
| LITIGATION | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| ALL ACTIONS | : | |

## BLOOMBERG L.P.'S MOTION FOR ACCESS TO DOCUMENTS AND INFORMATION

For the reasons set forth in the accompanying Memorandum of Law, Bloomberg

L.P. hereby moves this Court for an Order that (1) makes publicly available the settlement-

related documentation that the Court, on January 14, 2014, ordered the parties to share with the

Court through the Special Master and (2) clarifies that the parties are not restricted from

discussing the documentation with or disclosing it to the general public.

WHEREFORE, Bloomberg L.P. respectfully requests (1) that the settlement-

related documentation that the Court, on January 14, 2014, ordered the parties to share with the

Court through the Special Master be made publicly available and (2) that the Court clarify that

the parties are not restricted from discussing the documentation with or disclosing it to the

general public.

Respectfully submitted,

/s/ Eli Segal
Amy B. Ginensky (PA I.D. 22623)
Eli Segal (PA I.D. 205845)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

Dated: January 31, 2014

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : : : | MDL No. 2323 12-md-2323 |
| | : : | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | : : | |

**MEMORANDUM OF LAW IN SUPPORT OF
BLOOMBERG L.P.'S MOTION FOR ACCESS TO DOCUMENTS AND
INFORMATION**

On January 14, 2014, this Court ordered the parties to share with it, through the

Special Master, the documentation that allegedly shows that the proposed $760 million

settlement adequately compensates over 20,000 proposed class members.  Under the common

law and First Amendment right of access to judicial records and proceedings, Bloomberg L.P.

("Bloomberg") respectfully requests that the documentation be made available to the press and

the public once, in accordance with the Court's January 14 order, it has been submitted to the

Special Master.  In addition, in light of Proposed Co-Lead Class Counsel's statements that a July

8, 2013 confidentiality order prohibits him from publicly disclosing or discussing the documents,

Bloomberg further requests that the Court clarify that the confidentiality order does not do so.

**I.      FACTS**

On January 6, 2014, Proposed Co-Lead Class Counsel, Class Counsel, and

Subclass Counsel (collectively "Plaintiffs' Counsel") moved for preliminary approval of the

$760 million class action settlement that they reached with Defendants National Football League

and NFL Properties LLC on behalf of a proposed class of over 20,000 people.  (Docket Nos.

5634 & 5634-5 at 27.)  In their memorandum of law, Plaintiffs' Counsel referenced expert

medical, actuarial, and economic analyses that, according to them, showed that the settlement

would adequately compensate all class members.  (Docket No. 5634-5 at 22-23, 36.)  In addition, they attached a declaration in which the Court-appointed mediator based his conclusion that the settlement was "fair and reasonable" on these same medical, actuarial, and economic analyses. (Docket No. 5634-4 at ¶¶ 8, 20.)  Plaintiffs' Counsel did not include the expert analyses with their motion.

On January 14, 2014, the Court denied Plaintiffs' Counsel's motion without prejudice.  (Docket Nos. 5657 & 5658.)  The reason:  without the actual expert analyses referenced in Plaintiffs' Counsel's submission, the Court was unable to evaluate the fairness, adequacy, or reasonableness of the proposed settlement.  (Docket No. 5657 at 10-12.)  The same day, "[a]s a first step toward preliminary approval," the Court ordered the parties "to share the documentation referred to in their submissions with the Court through the Special Master." (Docket Nos. 5657 at 12 & 5658.)  Thus, the Court effectively ordered Plaintiffs' Counsel to supplement their motion for preliminary approval and specified precisely what that supplemental submission should include.

It is unclear from the docket whether the parties have now provided the settlement-related documentation to the Court via the Special Master.  Further, Proposed Co-Lead Counsel, Christopher Seeger, has stated that a confidentiality order bars him from publicly disclosing or discussing the documents.  (Docket No. 5699 at 4.)  What is clear, however, is that the contents of that Court-ordered submission are judicial records of significant public interest, to which Bloomberg and the public as a whole are entitled access.  They should be made available to all who wish to inspect them, and the parties should not be restricted from discussing or disseminating them.

## II.   ARGUMENT

### A.   The Settlement Documentation Should Be Made Publicly Available, Under the Common Law and First Amendment Right of Access.

The common law and the First Amendment provide a general right of public access to judicial proceedings and records. *See, e.g.*, *Del. Coalition for Open Gov't, Inc. v. Strine*, 733 F.3d 510 (3d Cir. 2013) (First Amendment); *In re Cendant*, 260 F.3d 183, 192 (3d Cir. 2001) (common law); *Publicker Indus. v. Cohen*, 733 F.2d 1059 (3d Cir. 1984) (both). As for judicial records in particular, the Third Circuit has explained:

> The existence of a pervasive common law right to inspect and copy public records and documents, including judicial records and documents . . . , which antedates the Constitution and which is applicable in both criminal and civil cases, is now beyond dispute. In addition, . . . the First Amendment, independent of the common law, protects the public's right of access to the records of civil proceedings.

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 161 & n.6 (3d Cir. 1994) (internal quotation marks, citations, and footnotes omitted).

This long-standing tradition of openness is crucial to the functioning of our democratic society, as it "promotes public confidence in the judicial system, diminishes possibilities for injustice, incompetence, perjury, and fraud, and provides the public with a more complete understanding of the judicial system and promotes the public perception of fairness." *United States v. Wecht*, 484 F.3d 194, 204 (3d Cir. 2007) (internal quotation marks and brackets omitted). "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980) (plurality).

Whether a document qualifies as a "judicial record" and is thus subject to a right of access "depends on whether [it] has been filed with the court, or otherwise somehow

incorporated or integrated into a district court's adjudicatory proceedings." *Cendant*, 260 F.3d at

192. Thus, "[w]hile filing clearly establishes such status, a document may still be construed as a

judicial record, absent filing, if a court interprets or enforces the terms of that document, or

requires that it be submitted to the court under seal." *Id.*

       Moreover, the public right of access—be it grounded in the common law, the First

Amendment, or both—applies at all stages of civil litigation, including settlement. For example,

in *Bank of America National Trust and Savings Ass'n v. Rittenhouse*, 800 F.2d 339, 343-45 (3d

Cir. 1986), the court held that the right of access applied to a settlement agreement and a motion

to enforce it, declaring that "the court's approval of a settlement or action on a motion are

matters which the public has a right to know about and evaluate" and "[d]isclosure of settlement

documents serves as a check on the integrity of the judicial process." *See also, e.g., Cendant*,

260 F.3d at 192-93 (bids to be chosen as lead counsel in class action); *Republic of Phil. v.

Westinghouse Elec. Corp.*, 949 F.2d 653, 659-62 (3d Cir. 1991) (summary judgment record);

*Publicker*, 733 F.2d at 1066-67 (preliminary injunction hearing transcripts); *Leucadia*, 998 F.2d

at 165 ("all material filed in connection with nondiscovery pretrial motions, whether these

motions are case dispositive or not").

       Access to judicial records subject to the common law or First Amendment right of

access may be denied only in the rarest of circumstances. The common law right creates a

"strong" presumption of access, and a party seeking to overcome it must show that "the interests

in secrecy outweigh the presumption." *Leucadia*, 998 F.2d at 165. Put differently, a party

opposing access "bears the heavy burden of showing that the material is the kind of information

that courts will protect and that disclosure will work a clearly defined and serious injury to the

party seeking closure." *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (citation

omitted).  And the party must make that showing as to each and every document that it wishes to

protect.  *Leucadia*, 998 F.2d at 166.  Where the First Amendment right applies, "the presumption

of openness may be overcome only by an overriding interest based on findings that closure is

essential to preserve higher values and is narrowly tailored to serve that interest."  *Press-Enter.*

*Co. v. Superior Court*, 464 U.S. 501, 510 (1984).

   Both the common law and the First Amendment require a court denying access to

articulate its justifications and its careful weighing of competing interests.  *See Leucadia*, 998

F.2d at 167 (common law); *Press-Enter.*, 464 U.S. at 510-11 (First Amendment).  Further, both

mandate an opportunity for the public to be heard before closure.  *See Miller*, 16 F.3d at 549

(common law); *United States v. Antar*, 38 F.3d 1348, 1362 n.18 (3d Cir. 1994) (First

Amendment).

   Here, the expert medical, actuarial, and economic analyses that the Court ordered

the parties to provide it, through the Special Master, are "judicial records" subject to the common

law and First Amendment right of public access.  While it might not have been filed, the

documentation, in accordance with the Court's January 14 order, either has been or is about to be

"incorporated or integrated into [the] district court's adjudicatory proceedings."  *Cendant*, 260

F.3d at 192.  The Court ordered the parties to provide the documentation  "[a]s a first step toward

preliminary approval."  (Docket Nos. 5657 at 12.)  Again, in essence, the Court directed

Plaintiffs' Counsel to amend their preliminary approval motion to include documentation that the

Court deemed necessary to meaningfully evaluate the motion.  *See Cendant*, 260 F.3d at 193

(finding bids to be chosen as lead class counsel, provided to court upon court order but not filed,

to be "judicial records" and explaining that bids were "in essence" motions to be appointed lead

counsel).  And as the Third Circuit put it, a "court's approval of a settlement or action on a

motion are matters which the public has a right to know about and evaluate." *Bank of Am.*, 800

F.2d at 344.

"The right of public access is particularly compelling" where, as here, the judicial

records are from a class action in which "many members of the 'public' are plaintiffs." *Cendant*,

260 F.3d at 193. Indeed, the access policy rationales discussed above "apply with even greater

force" in this context:

> Protecting the access right in class actions "promotes [class
> members'] confidence" in the administration of the case.
> Additionally, the right of access diminishes the possibility that
> "injustice, incompetence, perjury, [or] fraud" will be perpetrated
> against those class members who have some stake in the case but
> are not at the forefront of the litigation. Finally, openness of class
> actions provides class members with "a more complete
> understanding of the [class action process] and a better perception
> of its fairness."

*Cendant*, 260 F.3d at 193 (citations omitted) (brackets in *Cendant*) (quoting *Littlejohn v. BIC*

*Corp.*, 851 F.2d 673, 678 (3d Cir. 1988)). As the Third Circuit recognized, "lead attorneys have

an unusual amount of control over information concerning the litigation." *Id.* Unfettered public

access to judicial records in a class action is a vital check on that control.

Finally, there are no interests here substantial enough to outweigh the strong

presumption of openness that accompanies the common law and First Amendment right of

access. To the extent the parties show there is a particular document or portion of a particular

document for which continued secrecy is in fact warranted (e.g., trade secret, social security

number, truly private personal medical information), redaction, not wholesale denial of access,

would be the proper approach.

**B.    The Court Should Clarify that the Parties May Publicly Discuss and Disseminate the Settlement Documentation.**

Proposed Co-Lead Class Counsel Mr. Seeger maintains that the Court's July 8, 2013 confidentiality order bars him from discussing or disseminating the expert analyses supporting the proposed settlement.  (Docket No. 5699.)  That order states that the parties and their counsel must "refrain from publicly discussing the mediation process or disclosing any discussions they may have had as part of that process, without further order of the Court."  (Docket No. 5128.)  This language does not prohibit discussing or disclosing the expert analyses that the Court ordered, on January 14, 2014, to be shared with it.  Bloomberg respectfully requests that the Court clarify that Bloomberg's interpretation of the order is correct.

**III.    CONCLUSION**

For all of these reasons, Bloomberg respectfully requests (1) that the settlement-related documentation that the Court, on January 14, 2014, ordered the parties to share with the Court through the Special Master be made publicly available and (2) that the Court clarify that the parties are not restricted from discussing the documentation with or disclosing it to the general public.  Every day that passes, "the information denied to the press and the public gr[ows] increasingly stale," *Antar*, 38 F.3d at 1362, and the fundamental "value of 'openness' itself" is further threatened, *United States v. Simone*, 14 F.3d 833, 842 (3d Cir. 1994) (internal quotation marks omitted).  Crucially, the right is not just to access; it is to "contemporaneous" access.  *Republic of Phil.*, 949 F.2d at 664.

Respectfully submitted,

/s/ Eli Segal
Amy B. Ginensky (PA I.D. 22623)
Eli Segal (PA I.D. 205845)

-7-

PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

Dated: January 31, 2014

**CERTIFICATE OF SERVICE**

I, Eli Segal, hereby certify that on this 31st day of January, 2014, a true and correct copy of the foregoing Bloomberg L.P.'s Motion for Access to Documents and Information, along with the accompanying Memorandum of Law and Proposed Order, was served electronically upon all counsel of record via the Court's ECF filing system.

_/s/ Eli Segal_
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

# EXHIBIT 2

Case 2:12-md-02323-AB   Document 5899   Filed 04/07/14   Page 26 of 36

Case 2:12-md-02323-AB   Document 5852   Filed 02/26/14   Page 1 of 6
Case 2:12-md-02323-AB   Document 5848   Filed 02/20/14   Page 6 of 11

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE | : | MDL No. 2323 |
| PLAYERS' CONCUSSION INJURY | : | 12-md-2323 |
| LITIGATION | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| ALL ACTIONS | : | |
| | : | |

## BLOOMBERG L.P.'S REPLY IN SUPPORT OF
## DOCKET NO. 5766 (INTERVENTION AND ACCESS)

Plaintiffs, through their Proposed Co-Lead Class Counsel, Class Counsel, and

Subclass Counsel (collectively "Plaintiffs' Counsel"), and Defendants National Football League

and NFL Properties LLC have agreed to a $760 million class action settlement that requires

Court approval to take effect. Federal Rule of Civil Procedure 23(e) makes it the Court's

responsibility to determine, on behalf of the over 20,000 proposed class members, whether the

settlement is fair, adequate, and reasonable. To help it fulfill this adjudicatory responsibility, the

Court ordered the parties to "share . . . with the Court through the Special Master" the

documentation that, according to Plaintiff's Counsel, shows that the settlement is, in fact, fair,

adequate, and reasonable. (Docket Nos. 5657 at 11-12 & 5658.) Plaintiffs' Counsel insist that

neither Bloomberg L.P. ("Bloomberg") nor the general public should have access to this Court-

ordered submission at this time. But none of the reasons identified in Plaintiffs' Counsel's

opposition brief justifies the wholesale denial of access that they seek to maintain. Bloomberg's

motions to intervene and for access should therefore be granted.[1]

*First*, Plaintiffs' Counsel contend that intervention now would "disrupt the

resolution of the underlying merits" by "needlessly complicat[ing]" the settlement approval

---

[1] Bloomberg recognizes that the documentation at issue likely contains private personal
medical information for which redaction would be appropriate.

Case 2:12-md-02323-AB   Document 5899   Filed 04/07/14   Page 27 of 36

Case 2:12-md-02323-AB   Document 5852   Filed 02/26/14   Page 2 of 6
Case 2:12-md-02323-AB   Document 5848   Filed 02/20/14   Page 7 of 11

process and obliging them "to respond to such motions" in the midst of their efforts to resolve the still-ongoing litigation. (Docket No. 5777 at 2-4.) If this inconvenience argument were a basis for denying intervention, then no third party would ever be permitted to intervene to gain access to documents or proceedings in an ongoing matter. This, of course, is not the case. *See, e.g., Untied States v. Wecht*, 537 F.3d 222, 229 (3d Cir. 2008) ("[T]he value of the right of access would be seriously undermined if it could not be contemporaneous. To delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression." (citation and internal quotation marks omitted)); *Republic of Phil. v. Westinghouse Elec. Corp.*, 949 F.2d 653, 664 (3d Cir. 1991) ("[T]he public interest encompasses the public's ability to make a contemporaneous review of the basis of an important decision of the district court."); *United States v. Simone*, 14 F.3d 833, 842 (3d Cir. 1994) ("[T]he value of 'openness' itself . . . is threatened whenever immediate access to ongoing proceedings is denied, whatever provision is made for public disclosure."). Plaintiffs' Counsel's proposal of allowing public access only after the Special Master, then the Court, and then all other counsel for plaintiffs have the opportunity to review and analyze the documents is thus contrary to the law and should be rejected. (*See* Docket No. 5777 at 2-3, 7-8.)

     *Second*, Plaintiffs' Counsel insist that the settlement documentation is not a "judicial record"—and thus not subject to a presumptive right of access—"because it has not yet been filed, and the Court has directed that the materials be furnished directly to the Special Master rather than filed on the docket." (Docket No. 5777 at 5.) But as Bloomberg explained in its opening briefing, the Third Circuit has made clear that filing on the docket is not a judicial-record prerequisite; what matters is that the document has been "somehow incorporated or integrated into a district court's adjudicatory proceedings"—by filing or otherwise. *In re*

Case 2:12-md-02323-AB   Document 5899   Filed 04/07/14   Page 28 of 36

Case 2:12-md-02323-AB   Document 5852   Filed 02/26/14   Page 3 of 6
Case 2:12-md-02323-AB   Document 5848   Filed 02/20/14   Page 8 of 11

*Cendant*, 260 F.3d 183, 192 (3d Cir. 2001).  For example, in *Cendant*, it was the trial court's responsibility, under the Private Securities Litigation Reform Act ("PSLRA"), to approve the selection of plaintiffs' lead class counsel.  *Id.* at 188, 193.  To help it to fulfill that adjudicatory responsibility, the court ordered all attorneys interested in serving as lead counsel to submit sealed bids to the court.  *Id.*  The Third Circuit held that these bids, which were not filed on the docket but were submitted "in direct response to the court's command," were judicial records to which the right of access applied.  *Id.* at 192-93 & n.6.  Just like in *Cendant*, this Court has an adjudicatory responsibility (here, to approve the settlement; there, to approve the selection of lead counsel) and required the parties to provide the Court with documentation that the Court deemed necessary to fulfill that responsibility (here, the underlying medical, actuarial, and economic analyses; there, the bids) but ordered the parties to do so by means other than filing on the docket (here, through the Special Master; there, through a sealed submission).  Thus, just like in *Cendant*, the documentation warrants judicial-record status.[2]

  ***Third***, Plaintiffs' Counsel claim that, even if the documents are "judicial records," the interest in maintaining the confidentiality of the settlement-negotiation process outweighs both the common law and First Amendment rights of access.  (Docket No. 5777 at 6-7.)  Yet this vaguely articulated interest—for which Plaintiffs' Counsel have provided no supporting evidence—falls far short of meeting the heavy burden that the common law imposes on a party opposing public access, let alone the even heavier First Amendment burden.  *See Bank of*

---

[2] While Plaintiffs' Counsel argue that *Cendant* is distinguishable because the pro-access decision "was predicated upon a federal statutory scheme" (Docket No. 5777 at 6 n.6), the Third Circuit's treatment of the bids as "judicial records" did not depend on the source of the adjudicatory responsibility—there, the PSLRA—in connection with which the trial court ordered the bids' submission.  *See Cendant*, 260 F.3d at 192-93.  Thus, it should make no difference that this Court's settlement-approval duty is rooted in Federal Rule of Civil Procedure 23, rather than a specific statute.

Case 2:12-md-02323-AB   Document 5899   Filed 04/07/14   Page 29 of 36

Case 2:12-md-02323-AB   Document 5852   Filed 02/26/14   Page 4 of 6
Case 2:12-md-02323-AB   Document 5848   Filed 02/20/14   Page 9 of 11

*America National Trust and Savings Ass'n v. Rittenhouse*, 800 F.2d 339, 346 (3d Cir. 1986)

("Even if we were to assume that some settlements would not be effectuated if their

confidentiality was not assured, the generalized interest in encouraging settlements does not rise

to the level of interests that we have recognized may outweigh the public's common law right of

access."). As discussed in Bloomberg's opening briefing, overcoming the common law right of

access requires, as to each particular document, *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*,

998 F.2d 157, 166 (3d Cir. 1994), a "showing that the material is the kind of information that

courts will protect and that disclosure will work a clearly defined and serious injury to the party

seeking closure," *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (citation omitted); *see*

*also Cendant*, 260 F.3d at 194 ("Broad allegations of harm, bereft of specific examples or

articulated reasoning, are insufficient."). And overcoming the First Amendment right of access

requires "an overriding interest based on findings that closure is essential to preserve higher

values and is narrowly tailored to serve that interest." *Press-Enter. Co. v. Superior Court*, 464

U.S. 501, 510 (1984).

Bloomberg is not, as Plaintiffs' Counsel suggest in advocating their alleged

secrecy interest, seeking "all materials involved in [the] settlement negotiations" or "a seat at the

negotiating table." (Docket No 5777 at 5, 7 & n.7.) Bloomberg is seeking access to just those

settlement-related documents that the Court has ordered the parties to share with the Court "[a]s

a first step toward preliminary approval"—documents that Plaintiffs' Counsel told the Court in

their motion for preliminary approval demonstrate that the settlement warrants Court approval.

(Docket Nos. 5657 at 11-12 & 5658.) To the extent that Plaintiffs' Counsel argue that the

parties, in negotiating their settlement, relied on the confidentiality of the actual documents at

issue, Plaintiffs' Counsel have not substantiated that reliance with any evidence. (*See* Docket

Case 2:12-md-02323-AB   Document 5899   Filed 04/07/14   Page 30 of 36

Case 2:12-md-02323-AB   Document 5852   Filed 02/26/14   Page 5 of 6
Case 2:12-md-02323-AB   Document 5848   Filed 02/20/14   Page 10 of 11

No. 5777 at 7.) Indeed, the purported reliance is contradicted by Plaintiffs' Counsel's statements elsewhere in their brief that they do not oppose the eventual, phased release of the documents to the public. (*See* Docket No. 5777 at 2-3, 7-8.) Moreover, given that Rule 23(e) provides that the Court must satisfy itself that any settlement is "fair, reasonable, and adequate," any expectation of wholesale confidentiality as to the documentation that, according to the parties themselves, shows that the settlement meets this threshold would have been unreasonable.

      For all these reasons and all those discussed in its opening briefing, Bloomberg respectfully requests that the Court grant its motion to intervene and its motion for access to documents and information, subject to redactions that are necessary to protect truly private personal medical information.

Respectfully submitted,

/s/ Eli Segal
Amy B. Ginensky (PA I.D. 22623)
Eli Segal (PA I.D. 205845)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

Dated: February 19, 2014

Case 2:12-md-02323-AB   Document 5899   Filed 04/07/14   Page 31 of 36

Case 2:12-md-02323-AB   Document 5852   Filed 02/26/14   Page 6 of 6
Case 2:12-md-02323-AB   Document 5848   Filed 02/20/14   Page 11 of 11

### CERTIFICATE OF SERVICE

I, Eli Segal, hereby certify that on this 19th day of February, 2014, a true and

correct copy of the foregoing Bloomberg L.P.'s Reply in Support of Docket No. 5766

(Intervention and Access) was served electronically upon all counsel of record via the Court's

ECF filing system.

/s/ Eli Segal
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

# EXHIBIT 3



# Pro32: Head to Head
## NFL concussion lawyer expects case to heat up soon

By MARYCLAIRE DALE
— Mar. 21, 2014 12:39 PM EDT
Home » Anita B. Brody » NFL concussion lawyer expects case to heat up soon

VILLANOVA, Pa. (AP) — The court fight over NFL concussions should heat up soon as a judge in Philadelphia weighs the fairness of the proposed $765 million settlement.

Lead players' lawyer Sol Weiss expects the court's financial expert to advise the judge "shortly" on his view of the class-action plan.

Senior U.S. District Judge Anita Brody has voiced concerns that the fund won't cover 20,000 retirees for 65 years. And critics believe the NFL is getting off lightly, given its $9 billion in annual revenues.

"When you look at it objectively, it didn't matter how much money the NFL had, it was, 'Is there enough money to take care of (people)?'" Weiss said Friday at a seminar at the Villanova University School of Law outside Philadelphia.

The proposed settlement would pay as much as $5 million for men with the most serious neurological injuries, such as Lou Gehrig's disease. The awards would depend on a retiree's age and diagnosis. Those with serious dementia would get $3 million, while an 80-year-old with early dementia would get $25,000. All plaintiffs would get cognitive testing, and follow-up care if needed.

"Even if only 10 percent of retired NFL football players eventually receive a qualifying diagnosis ... it is difficult to see how the monetary award fund would have the funds available over its lifespan to pay all claimants at these significant award levels," Brody wrote in January, when she asked for more actuarial details and appointed New York financier Perry Golkin to advise her.

Weiss remains confident the fund is sufficient, and that most players will sign on rather than spend years fighting the NFL in court. The surprise settlement emerged in August, after several months of closed-door meetings with a mediator.

"There were a lot of talks; they went on for a long period of time ... and the NFL's tough," Weiss said Friday. "We did get to a point where there was enough money on the table to take care of the sick players and their families, and that's the time we make the deal."

Brody was expected to hold a fairness hearing in the coming months, when objectors can challenge the plan, and decide whether to opt out.

"Those players and their lawyers who think it's not enough money will get an opportunity to be heard," Weiss said Friday.

Brody could approve the settlement, reject it, or perhaps suggest the two sides negotiate anew. However, the plaintiffs' lawyers consider time of the essence, especially for families dealing with the dementia, depression and even violence associated with traumatic brain injuries.

"These are profoundly injured people. Some of them are dead, and their families deserve compensation," said Weiss, whose lead plaintiff, former Atlanta Falcon safety Ray Easterling, committed suicide in 2012, a year after filing suit.

"They forget things. They have a lot of anger issues. They can't hold a job. They really can't have a meaningful relations," Weiss said. "Their lives are upside down."

## Tags

United States, North America, Sports, Football, Professional football, General news, National Football League, Lawsuits, NFL football, Legal proceedings, Law and order, Philadelphia, Pennsylvania, Health, Sports medicine, Athlete health, Anita B. Brody, Athlete injuries, Diseases and conditions, Neurological disorders, Seniors' health, Dementia

## Comments

Comments for this thread are now closed.                                                    ✕

0 Comments          AP Pro32: Head to Head                                    ⓢ Login ⌄

Sort by Best ⌄                                                          Share ✉   Favorite ★

Be the first to comment.

✉ Subscribe    ⓓ Add Disqus to your site

## Latest News



## Cleveland clash: Irving, Gordon in media spat

Apr. 7, 2014 12:06 PM EDT



**Pace of presidential prep picks up**

Apr. 7, 2014 2:46 AM EDT

**Browns agree to terms with WR Burleson**

Apr. 6, 2014 10:47 PM EDT



**Community taking a dive for young cancer patient**

Apr. 6, 2014 7:50 PM EDT

**Bears agree to deal with C de la Puente**

Apr. 6, 2014 6:16 PM EDT

Advertisement

# The AP Pro32

Poll Released: Dec 30

| RANK | TEAM | PV RANK |
|------|------|---------|
| 1 | Seattle Seahawks (8) | 1 |
| 2 | Denver Broncos (4) | 2 |
| 3 | San Francisco 49ers | 3 |
| 4 | Carolina Panthers | 4 |
| 5 | New England Patriots | 5 |
| 6 | Cincinnati Bengals | 6 |
| 7 | New Orleans Saints | 9 |
| 8 | Indianapolis Colts | 8 |
| 9 | Kansas City Chiefs | 7 |
| 10 | Philadelphia Eagles | 11 |

# View Full Poll

Advertisement

AP Sports | © 2014 Associated Press