UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ROY GREEN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:14CV461 CDP |
| | ) | |
| ARIZONA CARDINALS FOOTBALL CLUB LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter involves a question of subject-matter jurisdiction after removal. Three former professional football players and their wives brought claims for negligence, negligent misrepresentation, fraudulent concealment, and loss of consortium against the players' former employer, the National Football League team now known as the Arizona Cardinals Football Club, LLC (the Team).[1]  The Team removed the case to federal court on the grounds that the Labor Management Relations Act preempts plaintiffs' state law claims.  The Team asks that I stay all proceedings in this matter pending a decision by the Judicial Panel on Multidistrict Litigation as to whether the case should be transferred to the Eastern District of Pennsylvania to become part of *In re: National Football League Players'*

---

[1] The Team was formerly known as the St. Louis Football Cardinals, Inc., and should not be confused with the similarly named St. Louis Cardinals, the baseball franchise that currently holds the National League pennant.

*Concussion Injury Litigation*, No. 12-md-2323. Plaintiffs ask me to remand the case to state court. Because the duties owed to the plaintiffs arise independently from the collective bargaining agreements and because the merits of the plaintiffs' claims can be evaluated without interpreting any of the agreements' terms, I will remand the case to state court.

## Background

Plaintiffs include three former professional football players employed by the Team during the following years: Roy Green from 1979 through 1987, John Thomas "J.T." Smith from 1985 through 1987, and Edward Scott in 1987 (the Players). The other two plaintiffs are Jade Scott and Monica Smith, who are the respective wives of Edward Scott and J.T. Smith (the Wives).

Green entered into two collective bargaining agreements (CBAs) with the agent of the Team. The first CBA was entered into on March 1, 1977 and expired on July 15, 1982 (the 1977 CBA). The second CBA was entered into on December 11, 1982, made effective July 16, 1982, and expired on August 31, 1987 (the 1982 CBA). Smith only entered into the 1982 CBA. Scott was never employed at a time during which a CBA was in effect.

The Players allege that they suffered multiple concussive and sub-concussive blows to the head between September 1, 1987 and December 1987.[2]

---

[2] Scott alleges that his injuries occurred between September 1, 1987 and November 1987.

- 2 -

They allege that the Team, as their employer, owed them several duties, including the duties to maintain a safe working environment, not to expose employees to unreasonable risks of harm, and to warn employees about the existence of concealed dangers. The Players allege that although these risks were outside of their own reasonable knowledge, the Team knew or should have known "for many years" that the sort of brain trauma to which the Players were exposed can lead to neurological impairments, including Chronic Traumatic Encephalopathy (CTE), and that studies demonstrating that link were published as early as the 1920s.[3] Despite this knowledge, the Team is alleged to have represented to the Players that concussions are not "serious" and lack long term effects.

The Players further allege that the Team increased the risk of exposure to brain trauma by forcing the Players to return to work after they were concussed and by installing AstroTurf, a playing surface that yields faster, more dangerous play and increases the risk of concussion.

The Players brought suit in state court against the Team for negligence, negligent concealment, and fraudulent concealment. The Wives brought claims for loss of consortium.[4]

---

[3] For the sake of brevity, I will refer to all the neurological impairments collectively as CTE.
[4] These claims are derivative of the Players' claims. Plaintiffs concede that the claims do not require independent preemption analysis. *See Johnson v. Anheuser Busch, Inc.*, 876 F.2d 620, 625 (8th Cir. 1989).

- 3 -

The Team argues that any duties owed by the Team to the Players, and the degree to which the discharge of those duties was reasonable, must be determined by interpreting the CBAs. The Team argues that the following sections of the 1982 CBA require interpretation in order to resolve the plaintiffs' claims:

> Section 1. **Club Physician**: Each club will have a board certified orthopedic surgeon as one of its club physicians. The cost of medical services rendered by Club physicians will be the responsibility of the respective clubs. If a Club physician advises a coach or other Club representative of a player's physical condition which could adversely affect the player's performance or health, the physician will also advise the player.
>
> Section 2. **Club Trainers**: All full-time head trainers and assistant trainers hired after the date of execution of this Agreement will be certified by the National Athletic Trainers Association. All part-time trainers must work under the direct supervision of a certified trainer.
>
> Section 3. **Player's Right to a Second Medical Opinion**: A player will have the opportunity to obtain a second medical opinion. . . .[5]

The 1982 CBA also incorporates a standard player contract that was used for players signed after that year. That contract has a paragraph governing injuries:

> 9. INJURY. If Player is injured in the performance of his services under this contract and promptly reports such injury to the Club physician or trainer, then Player will receive such medical and hospital care during the term of this contract as the Club's physician may deem necessary, . . .

---

[5] 1982 CBA, Art. XXXI.

- 4 -

## Legal Standards

Any civil action brought in a state court over which the federal district courts have original jurisdiction may be removed to the proper district court. 28 U.S.C. § 1441(a). "The presence of even one federal claim gives the defendant the right to remove the entire case to federal court." *Williams v. Ragnone*, 147 F.3d 700, 703 (8th Cir. 1998) (alteration and citation omitted). If the district court determines it does not have subject-matter jurisdiction over a removed action, it must remand the action to state court where it originated. 28 U.S.C. § 1447(c). Removal statutes are strictly construed, and any doubts about the propriety of removal must be resolved in favor of remand. *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993). As the party invoking jurisdiction, the defendant has the burden of establishing that prerequisites to jurisdiction have been satisfied. *Id.*; *Hatridge v. Aetna Cas. & Sur. Co.*, 415 F.2d 809, 814 (8th Cir. 1969). Generally, when determining whether removal was proper, the court must look to the plaintiff's pleadings at the time of removal. *Pullman Co. v. Jenkins*, 305 U.S. 534, 537–38 (1939). The basis for federal jurisdiction must be apparent from the face of the plaintiff's properly pleaded complaint. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

Section 301 of the Labor Management Relations Act states that federal law governs "suits for violation of contracts between an employer and a labor

organization." 29 U.S.C. § 185(a). Section 301 completely preempts state law claims that are "substantially dependent upon analysis" of a CBA, *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985), because "the application of state law . . . might lead to inconsistent results since there could be as many state law principles as there are States." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 406 (1988); *see also Williams v. National Football League*, 582 F.3d 863, 874 (8th Cir. 2009). Where a complaint raises issues to which federal law applies with complete preemptive force, the Court must look beyond the face of the complaint in determining whether remand is proper. *Williams*, 582 F.3d at 874.

In applying the § 301 complete preemption doctrine, the court begins with the "claim itself," *Trs. of the Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 331 (8th Cir. 2006), and applies a two-step approach in order to determine if the claim is sufficiently "independent" to survive complete preemption. *Williams*, 582 F.3d at 874. First, a state law claim is preempted if it is "based on" a provision of the CBA, meaning that "the CBA provision is at issue" and "it actually sets forth the right upon which the claim is based." *Id.* Second, § 301 complete preemption applies where a state law claim "is dependent upon an analysis of the relevant CBA," meaning that the resolution of plaintiff's state law claim requires interpretation of a provision of the CBA. *Id.* The Eighth Circuit in *Williams* reiterated that § 301 preemption only

applies to claims that "require interpretation or construction of the CBA" as opposed to "those which only require reference to it" or where "the CBA need only be consulted during its adjudication." *Id.* at 876 (quoting *Superior Waterproofing*, 450 F.3d at 33). Purely factual inquiries into an employer's conduct or motives that do not require construction of a CBA will not necessitate preemption. *Gore v. Trans World Airlines*, 210 F.3d 944, 949 (8th Cir. 2000).

"The fact that a defendant might ultimately prove that a plaintiff's claims are preempted . . . does not establish that they are removable to federal court." *Caterpillar*, 482 U.S. at 398. This is because § 301 preemption does not override the basic principle that the plaintiff is the master of the complaint. *Id.* at 398–99. Courts must be careful to ensure that interpretation of a CBA is required by the plaintiff's claim itself and not by a defense injected by the defendant. *Id.* at 399.

## Discussion

As a preliminary matter, I will not stay ruling on remand. "A putative transferor court need not automatically postpone rulings on pending motions, or in any way generally suspend proceedings, merely on grounds that an MDL transfer motion has been filed." *Tortola Rests., L.P. v. Kimberly-Clark Corp.*, 987 F. Supp. 1186, 1188–89 (N.D. Cal. 1997) (citing Manual for Complex Litigation 3d § 31.131, p. 252 (3d ed. 1995)). This is especially true where, as here, the pending motion is one for remand and goes to the Court's subject-matter jurisdiction. *See*

*Thompson v. Apple, Inc.*, No. 3:11-CV-03009-PKH, 2011 WL 2671312, at *4 (E.D. Ark. July 8, 2011).

Plaintiffs argue that because their claims are restricted to the time during which no CBA was in effect (referred to as the "gap year"), § 301 cannot provide the jurisdictional anchor. *See Lumber Prod. Indus. Workers Local No. 1054 v. W. Coast Indus. Relations Ass'n, Inc.*, 775 F.2d 1042, 1046 (9th Cir. 1985) ("[A]n expired agreement cannot serve as the basis for a proper exercise of jurisdiction under section 301(a)."); *see also Derrico v. Sheehan Emergency Hosp.*, 844 F.2d 22, 25 (2d Cir. 1988) (collecting cases). Though the Team admits that Scott was not subject to a CBA during the tenure of his employment, it contends that the other Players cannot – or, alternatively, failed to – narrow the time frame of their complaint to the 1987 "gap year."

The plaintiffs allege that from the 1920s to the 1990s the Team knew of the hazards of repetitive head trauma but failed to warn the plaintiffs. Am. Pet. ¶ 43. Thus, at least one of the plaintiffs' claims arose while the CBAs operated. Moreover, Smith's and Green's injuries cannot realistically be restricted to the gap year, given that they were employed when CBAs were in effect and that they allege that symptoms of CTE "may not appear until months, years, or even decades after the last traumatic impact." Am. Pet. ¶ 27; *see Duerson v. Nat'l Football*

*League, Inc.*, No. 12 C 2513, 2012 WL 1658353 at *3 (N.D. Ill. May 11, 2012).[6] The plaintiffs cannot limit the facts of their case to the gap year, and so their claims are subject to a preemption analysis.

In *Gore v. Trans World Airlines*, 210 F.3d 944 (8th Cir. 2000), the Eighth Circuit found that claims by an airline employee were preempted under a doctrine "virtually identical" to the LMRA. *Id.* at 949. After another employee reported that Gore had made death threats against his coworkers, Gore was detained, his locker was searched, co-employees were warned he was dangerous, and he was prevented from returning to work. *Id.* at 947. Gore brought claims against the airline for false arrest, libel and slander, invasion of privacy, and negligence. *Id.* Gore had entered a CBA that included contractual provisions prohibiting threats against employees, reserving for the airline the right to inspect employee lockers where there was "reason to believe" they contained contraband, and requiring the airline to protect the safety of its employees and promptly handle safety complaints. *Id.* at 947–98. Gore's negligence claim – that the airline employees negligently investigated the threat – was preempted because the CBA was the source of the airline employees' duty. *Id.* at 951. Each of Gore's other claims was found to have at least one element that required an interpretation of the CBA. For example, as part of his false arrest claim, Gore had to prove that the airline acted

---

[6] The Team also cites to filings by Green and Smith in the MDL that allege the two players suffered multiple concussions "throughout" their careers.

- 9 -

"without legal justification" – an element determined by interpreting the CBA provisions requiring the airline to maintain a safe working environment. *Id.* at 950. Gore's claims were either created by or depended upon an interpretation of the CBA, and so removal was proper. *See id.* at 951.

Keeping in mind the two-step approach to preemption, I must now evaluate whether the CBA is the source of plaintiffs' claims or whether the claims are substantially dependent upon an interpretation of the CBAs.

Negligence Claims

"In any action for negligence, the plaintiff must establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the defendant's failure proximately caused injury to the plaintiff." *L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co., L.P.*, 75 S.W.3d 247, 257 (Mo. banc 2002) (citation omitted). Plaintiffs' negligence claims are premised upon the common law duties to maintain a safe working environment, not to expose employees to unreasonable risks of harm, and to warn employees about the existence of dangers of which they could not reasonably be expected to be aware. *See Carman v. Wieland*, 406 S.W.3d 70, 76–77 (Mo. Ct. App. 2013) (listing employer's non-delegable duties as including "1) to provide a safe workplace; 2) to provide safe equipment in the workplace; 3) to warn employees of the existence of dangers of which the employees could not reasonably be expected to be aware; 4)

- 10 -

to provide a sufficient number of competent fellow employees; and 5) to promulgate and enforce rules governing employee conduct for the purpose of enhancing safety"). The scope of the duty "is measured by 'whether a reasonably prudent person would have anticipated danger and provided against it.'" *Smith v. Dewitt & Assoc.*, 279 S.W.3d 220, 224 (Mo. Ct. App. 2009) (citing *Cupp v. Nat'l R.R. Passenger Corp.*, 138 S.W.3d 766, 772 (Mo. Ct. App. 2004)).

The Team argues that an analysis of the CBA and its incorporated documents is necessary to determine the scope of the above duties. The Team points to paragraph 9 of the standard player contract, which sets forth conditions under which the Team is obligated to provide medical care. But the Players do not claim that they were not treated when contractually entitled to the care; rather, they claim that they were not informed of long-term risks inherent in their employment. The Team also argues that the duty to warn players of health risks arise from the CBA's requirement that the Team provide a pre-season physical examination and from language in Article XXXI: "[i]f a Club physician advises a coach or other Club representative of a player's physical condition which could adversely affect the player's performance or health, the physician will also advise the player." As discussed above, the duties at issue exist independent of the CBAs.

As to the duty to maintain a safe work environment and to warn of unforeseen dangers, the Team cites an Article within the CBAs that establishes a

- 11 -

"Joint Committee on Player Safety and Welfare"[7] and a clause granting players the right to obtain a second medical opinion at the Team's expense.[8] Mere reference to part of a CBA is insufficient for preemption; the relevant inquiry is whether the resolution of the claim depends upon the meaning of the CBA. *Williams*, 582 F.3d at 876 (citation omitted). The Team does not show how the interpretation of either of these sections is essential to plaintiffs' case.

The Team argues that the collectively bargained requirement that the head trainer be certified by the National Athletic Trainers Association[9] must be interpreted because that certification may have included training on the risks of CTE. This argument yet again fails to distinguish between the need to interpret the meaning of the CBA and the need to merely reference its substance. The Players are not suing for the failure to employ "certified" trainers. Any question as to the content of the trainers' certification programming is one of fact and does not require a court to interpret the CBA.

The Team finally points to provisions within the NFL Constitution and Bylaws that it alleges must be interpreted in order to determine whether the Team acted reasonably when returning concussed players to play: "All determinations of

---

[7] 1982 CBA, Art. XI; 1977 CBA, Art. XI. This Article establishes a joint committee of club and union representatives may meet to discuss potential rule changes, but will not have the power to bind any of the signatories to the CBA.
[8] 1982 CBA, Art. XXXI § 3.
[9] 1982 CBA, Art. XXXI § 2.

recovery time for major and minor injuries must be made by the club's medical staff and in accordance with the club's medical standards."[10] This section exists solely as part of the documentation required by the NFL related to the "Reserve/Injured" list, which pertains to club roster size. The Team does not articulate how the plaintiffs' claims are "substantially dependent" upon an interpretation of this language, and so it fails in its burden of persuasion.

Unlike the negligence claim in *Gore*, here the duties arise out of the common law based upon the employer-employee relationship and not out of any particular terms in the CBAs. The reasonableness of the Team's actions towards Scott cannot depend upon an interpretation of a CBA, as Scott was never bound by the contract. It stands to reason, then, that the other plaintiffs' negligence claims do not necessarily depend upon an interpretation of the CBAs, so far as the duties owed them and the standards applied to their claims derive from the same source as for Scott.

The Team hypothesizes that the CBAs could establish a contractually agreed upon standard of reasonableness less stringent than what would be applied in the absence of the contracts. But even were that the case, the terms of the CBAs would not be part of the plaintiffs' claims, which derive from and can be adjudged

---

[10] NFL Constitution and Bylaws, Art. XVII sup. (1982). By definition, a minor injury is "one which renders a player physically unable to play for any period of less than four weeks" from the date he is added to Reserve/Injured, and a major injury must last at least four weeks. Players placed on the list for a minor injury may not be reactivated during the season.

in accordance with standards set forth in the Missouri common law. Rather, they would be a defense to liability, since the operation of the CBAs would be a "reason why the plaintiff should not recover." *See* DEFENSE, *Black's Law Dictionary* (9th ed. 2009) (quoting Edwin E. Bryant, *The Law of Pleading Under the Codes of Civil Procedure* 240 (2d ed. 1899)). Though there exists some conflicting case law on this issue, I agree with the Ninth Circuit's position. *Contrast Hendy v. Losse*, 925 F.2d 1470 (9th Cir. 1991) (unpublished table decision) ("If the Chargers argue [the CBA] limits their duty to exercise care in the hiring and retention of the team physician, the argument is in the nature of a defense and does not alter the state-law nature of Hendy's claim.") *with Duerson*, 2012 WL 1658353 at *5 (rejecting *Hendy* as "unfounded" after holding that contractual limit on standard of care is not a defense). Because the interpretation of the CBA would only be implicated by the defense, and not by the complaint itself, it could not serve as a basis for removal. *See Caterpillar*, 482 U.S. at 398–99 (holding that the presence of a § 301 question in a defensive argument "does not overcome the paramount policies embodied in the well-pleaded complaint rule"); *see also Williams*, 582 F.3d at 879 n.13 (distinguishing between plaintiff's claim and a defense to liability).

<u>Negligent Misrepresentation and Fraudulent Concealment Claims</u>

The elements of negligent misrepresentation are "(1) the speaker supplied information in the course of his business; (2) because of the speaker's failure to

- 14 -

exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information; and (5) due to the hearer's reliance on the information, the hearer suffered a pecuniary loss." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 134 (Mo. banc 2010). The elements of fraudulent misrepresentation are: "(1) a false, material representation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the representation; (5) the hearer's reliance on its truth; (6) the hearer's right to rely thereon; and (7) the hearer's consequent and proximately caused injury." *White v. Bowman*, 304 S.W.3d 141, 147 (Mo. Ct. App. 2009) (quotation marks and citation omitted). Where the speaker owes a duty of disclosure, however, the failure to disclose a material fact provides a substitute for reliance. *Lafarge N. Am., Inc. v. Discovery Group LLC*, 574 F.3d 973, 983 n.5 (8th Cir. 2009) (citing *Osterberger v. Hites Const. Co.*, 599 S.W.2d 221, 227 (Mo. Ct. App. 1980)).

The Team argues that the clauses of the CBAs establishing the Joint Committee on Player Safety and Welfare and granting its employees the "opportunity to obtain a second medical opinion" must be interpreted in order to

determine whether the Players justifiably relied upon any statement by the Team as to the effects of concussions. The Team also argues that it might have delegated its duty to warn the Players of health risks to the club physician, and so any reliance upon the Team would have been misplaced or would require an inquiry into the meaning of the CBAs' terms.

An employer owes a duty "to inform himself of those matters of scientific knowledge" that relate to the hazards of his business and to relay that knowledge to his employees. *Marsanick v. Luechtefeld*, 157 S.W.2d 537 (Mo. Ct. App. 1942) (collecting cases). The duty to warn is nondelegable. *Carman*, 406 S.W.3d at 76. An employee, in turn, has the right to rely on any absence of warning as a "tacit assurance" that no unusual danger exists. *Marsanick*, 157 S.W.2d at 542 (citations omitted). The Players allege that the Team knew of the risks of CTE, represented to the Players that concussions posed no long-term risks, the Players could not reasonably have been aware of the risks, and the Players relied upon the representations. Contrary to the Team's position, the Players' "right to rely" derives from their status as employees and not from any terms in the CBA that would require a court's construction. Any contractual terms that alter these common law rights would take the form of a defense and could not serve as the basis for removal. *See Hendy*, 925 F.2d 1470 at *2. As with their negligence claims, the plaintiffs' negligent misrepresentation and fraudulent concealment

actions arise independent of the CBAs as a function of the common law and thus are not preempted. *Cf. Anderson v. Ford Motor Co.*, 803 F.2d 953, 959 (8th Cir. 1986) (holding fraudulent and negligent misrepresentation claims not preempted as they "arise in state common law and are measured by standards of conduct and responsibility completely separate from and independent of a collective bargaining agreement").

Because the plaintiffs' claims can be determined without interpreting the CBAs, I do not have subject-matter jurisdiction over this case. I need not reach the parties' arguments relative to Missouri's worker's compensation laws.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion to remand [# 14] is granted, and the Clerk of the Court shall remand this action to the Circuit Court for the Twenty-Second Judicial Circuit, St. Louis, Missouri, from which it was removed.

**IT IS FURTHER ORDERED** that defendant's motion to stay proceedings [# 4] is denied.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 14th day of May, 2014.