# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated,*<br><br>  Plaintiffs,<br><br>  v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br><br>  Defendants. | Civil Action No. 2:14-cv-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**MOTION OF SEAN MOREY, ALAN FANECA, BEN HAMILTON, ROBERT ROYAL, RODERICK CARTWRIGHT, JEFF ROHRER, AND SEAN CONSIDINE FOR LEAVE TO FILE A REPLY IN SUPPORT OF MDL DOCKET NO. 6019 (MOTION TO INTERVENE)**

For the reasons set forth in the accompanying Memorandum of Law and pursuant to Paragraph 2 of the Court's General Motion Practices, Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick "Rock" Cartwright, Jeff Rohrer, and Sean Considine (the "Intervenors") respectfully move for leave to file a reply in support of MDL Docket No. 6019, Intervenors' May 6, 2014 motion to intervene. A proposed reply memorandum is attached as Exhibit A.

WHEREFORE, for the reasons stated above and in the accompanying Memorandum of

Law, Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick Cartwright, Jeff Rohrer,

and Sean Considine respectfully request that this Court enter an order granting them leave to file

a reply memorandum in support of their motion to intervene.

Dated: May 27, 2014

Steven F. Molo (*pro hac vice*)
Thomas J. Wiegand (*pro hac vice*)
Kaitlin R. O'Donnell (*pro hac vice*)
MOLOLAMKEN LLP
540 Madison Ave.
New York, NY 10022
(212) 607-8160 (telephone)
(212) 607-8161 (facsimile)
smolo@mololamken.com
twiegand@mololamken.com
kodonnell@mololamken.com

Eric R. Nitz (*pro hac vice*)
MOLOLAMKEN LLP
600 New Hampshire Ave., N.W.
Washington, DC 20037
(202) 556-2000 (telephone)
(202) 556-2001 (facsimile)
enitz@mololamken.com

Linda S. Mullenix (*pro hac vice*)
2305 Barton Creek Blvd., Unit 2
Austin, TX 78735
(512) 263-9330 (telephone)
lmullenix@hotmail.com

/s/ William T. Hangley

William T. Hangley
Michele D. Hangley
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square
18th & Cherry Streets
27th Floor
Philadelphia, PA 19103
(215) 496-7001 (telephone)
(215) 568-0300 (facsimile)
whangley@hangley.com
mdh@hangley.com

*Attorneys for Intervenors*

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | Civil Action No. 2:14-cv-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## REPLY IN FURTHER SUPPORT OF
## MOTION TO INTERVENE (MDL DOCKET NO. 6019)

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................3

    I.    Intervenors Have Established Their Right to Intervention Under Rule 24(a) ...............3

        A.    Intervenors' Interests – and Those of Players Like Them – Are Not
             Adequately Represented Before the Court ........................................................3

        B.    Intervenors' Request Is Timely and Will Neither Prejudice the
             Parties Nor Cause Undue Delay ......................................................................5

        C.    Intervenors Have a Sufficient Interest in the Litigation That Would Be
             Impaired by the Proposed Settlement ..............................................................6

    II.    Alternatively, Permissive Intervention Should Be Granted Under Rule 24(b) ............7

CONCLUSION ....................................................................................................................9

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Alberto v. GMRI, Inc.*, 252 F.R.D. 652 (E.D. Cal. 2008) ................................................9

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997)................................................3, 7

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ...................8

*In re Cmty. Bank of N. Va.*, 418 F.3d 277 (3d Cir. 2005)......................................4, 5, 6

*Cordy v. USS–Posco Indus.*, No. 12-553, 2013 WL 4028627
    (N.D. Cal. July 31, 2013)...........................................................................................4

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).................................................8

*Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012) ........................3

*Green v. Ariz. Cardinals Football Club LLC*, No. 4:14-cv-461,
    2014 WL 1920468, at *4-8 (E.D. Mo. May 14, 2014) ...........................................7

*In re Gen. Motors Pick-Up Truck Fuel Tank Prods. Litig.*, 55 F.3d 768
    (3d Cir. 1995)........................................................................................................3, 7

*Jenkins ex rel. Jenkins v. Missouri*, 78 F.3d 1270 (8th Cir. 1996) ................................3

*McKowan Lowe & Co. v. Jasmine, Ltd.*, 295 F.3d 380 (3d Cir. 2002) ...........................5

*In re Nat'l Football League Players' Concussion Litig.*,
    961 F. Supp. 2d 708 (E.D. Pa. 2014)......................................................................4

*In re Pet Foods Prods. Liab. Litig.*, 629 F.3d 333 (3d Cir. 2010)..................................4

*In re Stingfree Techs. Co.*, 427 B.R. 337 (E.D. Pa. 2010) .............................................8

*United States v. Virgin Islands*, No. 12-4305, 2014 WL 1395669
    (3d Cir. Apr. 11, 2014) ............................................................................................8

*Waudby v. Verizon Wireless Servs.*, LLC, 248 F.R.D. 173, 175 (D.N.J. 2008) ..............7

## STATUTES AND RULES

Fed. R. Civ. P. 23..............................................................................................................6

Fed. R. Civ. P. 23(b)(3) ....................................................................................................7

Fed. R. Civ. P. 24.................................................................................................................2, 5

Fed. R. Civ. P. 24(a)...............................................................................................................3

Fed. R. Civ. P. 24(b)...........................................................................................................7, 8

## OTHER AUTHORITIES

Brent Schrotenboer, *NFL Takes Aim at $25 Billion, but at What Price?*, USAToday.com
    (Feb. 5, 2014 1:42 PM EST),
    http://www.usatoday.com/story/sports/nfl/super/2014/01/30/super-bowl-nfl-revenue-
    denver-broncos-seattle-seahawks/5061197/ ............................................................................2

NFL Concussion Class Settlement (May 1, 2014),
    https://www.youtube.com/watch?v=9EWNBNgMoEk ..........................................................8

Ryan Wilson, *Report: NFL Paid Roger Goodell $35.1 Million Last Year*, CBSSports.com
    (Feb. 14, 2014 3:25 PM ET), http://www.cbssports.com/nfl/eye-on-
    football/24443392/report-nfl-paid-roger-goodell-351-million-last-year..................................2

# INTRODUCTION

The only opposition to Intervenors' motion has come from Co-Lead Class Counsel, who, along with the Representative Plaintiffs, have a conflict in their representation of Intervenors and similarly situated class members.[1]   That conflict was writ large through their crafting and advocating a settlement that would compensate a subset of class members – as well as class counsel to the tune of over $112 million – yet provide no financial compensation for other injured class members while having them release their claims.

Co-Lead Class Counsel do not address, let alone attempt to justify, this conflict.  Instead, the crux of their response is that they generally are doing a good job for the class and should be left alone, and that Intervenors have an "ulterior motive" of "want[ing] a seat at the negotiating table." Opp. 1, 5-6.  Neither contention holds water.

As for the good job they are doing – perhaps the failure to cite specific examples is due to the absence of any.  Apart from their conflict, Co-Lead Class Counsel do not address: their failure to take *any discovery*; the inclusion of the inexplicable 75% offset for a single instance of non-football related traumatic brain injury or stroke; the failure to account for the NFL's widespread administration of the drug Toradol, which masks injuries and increases the risk of stroke; the absence of any indication that the mediator met with Sub-Class Counsel individually; the lack of transparency concerning negotiations; and the negotiation of a $112 million-plus fee for themselves for the 12-day mediation.  And there is no defense of the $675 million monetary award fund – already questioned by this Court – which, of course, is not really a $675 million fund.  It is a $300 million fund paid over two years, with another $375 million paid over 17 years

---

[1] Neither the NFL Defendants nor counsel for any of the other 4,800-plus plaintiffs – including Class Counsel, Sub-Class Counsel, and counsel on the Plaintiffs' Executive Committee – has filed an opposition to Intervenors' motion.

– with none of that available to assist retired players in Intervenors' position, should they be diagnosed with CTE post-settlement.[2]   These "skilled negotiators and zealous advocates" extracted those financial terms from a Defendant that last year had annual revenue of more than $10 billion,[3] earned a reported $1 billion from licensing alone,[4] and paid its commissioner more than $40 million.[5]

There is nothing at all "ulterior" about Intervenors' motive.  It is overt, explicit, and understandable, given the ineffectual, inadequate, and conflicted effort of Co-Lead Class Counsel to date.  As we clearly state, Intervenors seek "plaintiff-intervenor status in Civil Action No. 2:14-cv-00029-AB for purposes of participating in settlement negotiations on behalf of retired NFL players who, like themselves, have displayed medical conditions consistent with the symptoms of CTE and are at risk of developing CTE and whose interests are otherwise in conflict with those of Representative Plaintiffs, who have failed to adequately represent them." Mem. 27-28.

Intervenors seek to represent only the interests we have set forth.  The requirements of Federal Rule of Civil Procedure 24 are met and intervention should be allowed.

---

[2] MDL Dkt. No. 5634-5 at 22-23.  Given that the settlement would have permitted the NFL to spread its monetary award fund payments over 19 years, *id.* at 23 – and "not be subject to any interest obligation or inflation adjustment," Settlement § 23.6 – the true net present value of the settlement is far less than $675 million.

[3] Brent Schrotenboer, *NFL Takes Aim at $25 Billion, but at What Price?*, USAToday.com (Feb. 5, 2014 1:42 PM EST), http://www.usatoday.com/story/sports/nfl/super/2014/01/30/super-bowl-nfl-revenue-denver-broncos-seattle-seahawks/5061197/.

[4] *Id.*

[5] Ryan Wilson, *Report: NFL Paid Roger Goodell $35.1 Million Last Year*, CBSSports.com (Feb. 14, 2014 3:25 PM ET) (noting Goodell received $35.1 million in compensation plus another $9.1 million in deferred payments), http://www.cbssports.com/nfl/eye-on-football/24443392/report-nfl-paid-roger-goodell-351-million-last-year.

## ARGUMENT

I.   **Intervenors Have Established Their Right to Intervention Under Rule 24(a)**

A.   **Intervenors' Interests – and Those of Players Like Them – Are Not Adequately Represented Before the Court**

The "linchpin of the adequacy [of representation] requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012). The Representative Plaintiffs have alleged neither an increased risk of developing CTE nor that they suffer from the MTBI-related conditions that Intervenors are experiencing. Mem. 18. They therefore had no incentive to maximize recovery for ***all*** future cases of CTE or for the other MTBI-related conditions that Intervenors are currently experiencing. Thus, they negotiated a proposed settlement that did not compensate those conditions. Mem. 14-20.

Because the settlement would have compensated some injuries to the exclusion of Intervenors' injuries, Representative Plaintiffs could not adequately represent Intervenors' interests. *See In re Gen. Motors Pick-Up Truck Fuel Tank Prods. Litig.*, 55 F.3d 768, 801 (3d Cir. 1995) ("*GM Trucks*") (finding inadequate representation where segment of injured class "will never enjoy the benefits of the settlement terms . . . intended specifically for the benefit of" other class members); *see also Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625-27 (1997); *Dewey*, 681 F.3d at 183.[6] That is not merely a "'difference of opinion concerning litigation strategy or individual aspects of a remedy.'" Opp. 7 (quoting *Jenkins ex rel. Jenkins v. Missouri*,

---

[6] Representative Plaintiffs suggest Intervenors have "trumped up" the charge that recovery for Intervenors' injuries was bargained away. Opp. 10 n.4. "[A] judge," however, "must focus on the settlement's distribution terms (or those sought) to detect situations where some class members' interests diverge from those of others in the class." *GM Trucks*, 55 F.3d at 797. And even if Intervenors' interests were not bargained away, they were ignored. Either way, Representative Plaintiffs did not adequately represent Intervenors' interests.

78 F.3d 1270, 1275 (8th Cir. 1996)). The Court itself is "not yet satisfied that the Settlement '. . . grants *no preferential treatment to segments of the class*, and falls within the range of possible approval.'" *In re Nat'l Football League Players' Concussion Litig.*, 961 F. Supp. 2d 708, 715 (E.D. Pa. 2014) (emphasis added) (quoting *Cordy v. USS–Posco Indus.*, No. 12-553, 2013 WL 4028627, at *3 (N.D. Cal. July 31, 2013)); *see also In re Cmty. Bank of N. Va.*, 418 F.3d 277, 315 (3d Cir. 2005) (noting potential inadequacy of class counsel where "[c]lass counsel failed to assert, *inter alia*, what appear to be facially viable . . . claims, conducted no formal discovery, and negotiated an extremely generous fee").

Representative Plaintiffs make no effort to rebut Intervenors' showing of inadequate representation, offering only the conclusory – and incorrect – assertion that "Intervenors have failed to demonstrate any interest that is not protected . . . ." Opp. 8. But Intervenors identified specific and vital ways in which the Representative Plaintiffs' settlement treated Intervenors differently than other class members. Mem. 14-20. Representative Plaintiffs offer *no justification* for those arbitrary distinctions. They further suggest that "liability issues like CTE . . . are better left to traditional class procedures . . . by means of expert testimony." Opp. 4. But Intervenors are not raising "liability issues" – they identify serious injuries that disparately would receive no treatment or compensation under the earlier settlement. Besides, no expert testimony is necessary to recognize that the settlement negotiated by Representative Plaintiffs "grants . . . preferential treatment to segments of the class." *NFL Players*, 961 F. Supp. 2d at 715.[7]

---

[7] Representative Plaintiffs' reliance on *In re Pet Foods Products Liability Litigation* is misplaced. 629 F.3d 333 (3d Cir. 2010). The adequate class representatives in *Pet Foods* claimed *the same injuries* as the intervenors, and the *Pet Foods* settlement "allocate[d] a portion of the recovery to those claims." *Id.* at 345. By contrast, neither Representative Plaintiff has alleged that he risks developing CTE or that he suffers from the conditions that Intervenors are

**B.      Intervenors' Request Is Timely and Will Neither Prejudice the Parties Nor Cause Undue Delay**

Intervenors' request is timely.  In fact, the timing is *ideal*.  Given that the Court has already rejected a settlement that ignored Intervenors' interests, this is the perfect time to allow Intervenors a voice in the process.  In any event, putative class members have no "'duty to take note of the suit or to exercise any responsibility with respect to it'" until "'the existence and limits of the class have been established and notice of membership has been sent out.'"  *Cmty. Bank*, 418 F.3d at 314 (quoting *McKowan Lowe & Co. v. Jasmine, Ltd.*, 295 F.3d 380, 384 (3d Cir. 2002)).  Thus, the "time frame in which a class member may file a motion to intervene challenging the adequacy of class representation must be at least as long as the time in which s/he may opt-out of the class."  *Id.*  Because the deadline for opting out of the class has not passed, Intervenors' application is timely.  *See* Mem. 21-23.

Representative Plaintiffs ignore *Community Bank*, offering only the conclusory assertion that Intervenors' application is "ill-timed."  Opp. 5.  Indeed, they do not even identify whether they believe Intervenors' application comes too early or too late.  To the extent Representative Plaintiffs suggest the application is too early, they argue "the better course is to . . . allow[] those who are not satisfied with the next settlement filing to . . . object or to opt out."  Opp. 2.  As an initial matter, nothing in Rule 24 imposes a "ripeness" requirement on a motion to intervene. But more to the point, Representative Plaintiffs bargained away or ignored Intervenors' interests when crafting the initial settlement proposal.  Intervention now will allow Intervenors' interests to be represented in future proposals.

---

experiencing.  Mem. 18.  Neither future cases of CTE nor Intervenors' MTBI-related conditions would receive a "portion of the recovery" under the proposed settlement.

Representative Plaintiffs also insist that the "unique circumstances" of this case render Intervenors' application untimely, arguing that "additional counsel could only serve to further delay these proceedings and prejudice the delicate settlement efforts presently being conducted before the Court." Opp. 5. But Intervenors' desire to identify and fix deficiencies in any settlement for the players' benefit will streamline – not delay – approval.[8] In any event, the critical timing inquiry is whether the request to intervene is too late, not too early.

**C.    Intervenors Have a Sufficient Interest in the Litigation That Would Be Impaired by the Proposed Settlement**

Because Intervenors are members of the putative class and because the settlement would dispose of Intervenors' claims without providing any compensation, Intervenors have a strong interest in the litigation that would be impaired by resolution of the case on the terms proposed by the Representative Plaintiffs. "In the class action context," the requirement that the intervenor have a sufficient interest in the litigation that is affected or impaired by the disposition of the case is "satisfied by the very nature of Rule 23 representative litigation." *Cmty. Bank*, 418 F.3d at 314.

Representative Plaintiffs ignore *Community Bank* and rather argue that Intervenors have no interest in the litigation because their "papers establish an ulterior motive to their seeking intervention" – obtaining a seat at the negotiation table. Opp. 5-6. That motive, however, exists

---

[8] Indeed, it is Representative Plaintiffs who have repeatedly caused unnecessary delay. Co-Lead Class Counsel announced a settlement in late August 2013 but did not file the final terms of the settlement until January 2014. MDL Dkt. No. 5235. And despite representing that actuarial data and economic studies were available and relied upon during the mediation, MDL Dkt. No. 5634-5 at 22-23, Representative Plaintiffs did not file that information in support of the class settlement and have continued to keep it from other players who have sought it, *see, e.g.*, MDL Dkt. No. 5849. It is not even clear that Representative Plaintiffs have produced the requested material to the Court or Special Master. Cryptically, they suggest "hav[ing] made concerted efforts to evaluate this Court's directives and address them in a fruitful and productive manner." Opp. 10.

*because* of Intervenors' interest in the litigation. Representative Plaintiffs and their lawyers have abandoned Intervenors. Protecting their interests requires nothing less than a seat at the negotiating table.

Representative Plaintiffs also insist that Intervenors' interests are not impaired because Intervenors may independently litigate their claims or object to any settlement that Representative Plaintiffs may yet file. Opp. 6. But as Intervenors previously explained, preliminary approval of a class settlement creates a presumption that the settlement is fair. *GM Trucks*, 55 F.3d at 785; *see* Mem. 22. Preliminary approval would itself impair Intervenors' rights, an argument to which Representative Plaintiffs have no response. Nor can the right to opt out of any settlement substitute for adequate representation. Both *Amchem* and *GM Trucks* involved opt-out class settlements under Rule 23(b)(3), yet both the Supreme Court and the Third Circuit concluded that inadequate representation precluded approval of the class settlement. *Amchem*, 521 U.S. at 622, 625-27; *GM Trucks*, 55 F.3d at 781, 800-04. This case is no different.

*Waudby v. Verizon Wireless Services, LLC*, on which Representative Plaintiffs rely, is inapposite. First, *Waudby* did not consider the presumption of fairness that results from preliminary approval. 248 F.R.D. 173, 175 (D.N.J. 2008). Second, *Waudby* denied intervention because "both [the intervenor] and [the representative plaintiff] ha[d] the same goal." *Id.* In other words, the *Waudby* plaintiff adequately represented the interests of the *Waudby* intervenor. By contrast, Representative Plaintiffs have acted for their own benefit, but contrary to Intervenors' interests. Mem. 14-20.

## II.   Alternatively, Permissive Intervention Should Be Granted Under Rule 24(b)

Intervenors have satisfied the requirements for permissive intervention, showing common

questions of law or fact with Representative Plaintiffs.  Fed. R. Civ. P. 24(b).[9]  Unlike the cases Representative Plaintiffs invoke, Intervenors' participation is neither " 'unnecessary and unwarranted' " nor " 'superfluous' " because no one currently represents their interests.  *See* Opp. 9 (quoting *United States v. Virgin Islands*, No. 12-4305, 2014 WL 1395669, at *9 (3d Cir. Apr. 11, 2014), and *In re Stingfree Techs. Co.*, 427 B.R. 337, 350 (E.D. Pa. 2010)).

Nor does Intervenors' participation "threaten" settlement negotiations.  Opp. 9.  A settlement that, because of inadequate representation, is unfair and unreasonable at its inception will remain so regardless of Intervenors' participation.  Everyone – Intervenors, Representative Plaintiffs, the class members, Defendants, and the Court – has an interest in ensuring that any settlement submitted with a renewed motion for preliminary approval resulted from negotiations that included representatives of all class members and interests.[10]

Representative Plaintiffs cannot rely on the mediator to shield the settlement from scrutiny.  "[T]he mere presence of a neutral mediator . . . is not ***on its own*** dispositive of whether the end product is a fair, adequate, and reasonable settlement agreement."  *In re Bluetooth*

---

[9] Co-Lead Class Counsel's inability to assist the Court in evaluating the settlement is highlighted by their failure to notify the Court of *Green v. Arizona Cardinals Football Club LLC*, which held that the NFL's duties to its players did not arise under the collective bargaining agreements.  No. 4:14-cv-461, 2014 WL 1920468, at *4-8 (E.D. Mo. May 14, 2014).  Despite claiming "appoint[ment] by this Court to fulfill a leadership role," Opp. 6, Co-Lead Class Counsel did not alert the Court to that decision or its implications for Defendants' Motion to Dismiss.  Instead, other plaintiffs' counsel filed a notice of supplemental authority.  *See* MDL Dkt. No. 6039.  Co-Lead Class Counsel have narrowed their focus to the singular goal of forcing on the retired players and the Court their earlier proposed settlement.  Indeed, Co-Lead Class Counsel are featured in a slick video posted on YouTube on May 1, 2014, which extolls the virtues of the settlement.  The NFL Concussion Class Settlement (May 1, 2014), https://www.youtube.com/watch?v=9EWNBNgMoEk (last visited May 27, 2014).

[10] *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001), is not to the contrary.  That decision was rooted primarily in concerns over the timeliness of the motion to intervene, which was filed just three days before the settlement fairness hearing.  *Id.*  While the court expressed concern that intervention might derail the settlement, it concluded class counsel adequately represented the class and approved the settlement.  *Id.* at 85.

*Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (emphasis added); *see also Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 663 (E.D. Cal. 2008) ("The fact that the parties reached an agreement before an experienced mediator, while commendable, does not preclude a detailed review of the settlement terms.").

## CONCLUSION

Because the Representative Plaintiffs do not adequately represent the interests of all members of the class, the Court should grant Intervenors' motion to allow their participation in settlement negotiations on behalf of retired NFL players who, like themselves, have displayed medical conditions consistent with the symptoms of CTE and are at risk of developing CTE, and whose interests are otherwise in conflict with those of Representative Plaintiffs.

Dated:  May 27, 2014

Respectfully submitted,

*/s/ William T. Hangley*

<table>
<tr><td>

Steven F. Molo (*pro hac vice*)
Thomas J. Wiegand (*pro hac vice*)
Kaitlin R. O'Donnell (*pro hac vice*)
MOLOLAMKEN LLP
540 Madison Ave.
New York, NY 10022
(212) 607-8160 (telephone)
(212) 607-8161 (facsimile)
smolo@mololamken.com
twiegand@mololamken.com
kodonnell@mololamken.com

Eric R. Nitz (*pro hac vice*)
MOLOLAMKEN LLP
600 New Hampshire Ave., N.W.
Washington, DC 20037
(202) 556-2000 (telephone)
(202) 556-2001 (facsimile)
enitz@mololamken.com

Linda S. Mullenix (*pro hac vice*)
2305 Barton Creek Blvd., Unit 2
Austin, TX 78735
(512) 263-9330 (telephone)
lmullenix@hotmail.com

</td><td>

William T. Hangley
Michele D. Hangley
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square
18th & Cherry Streets
27th Floor
Philadelphia, PA 19103
(215) 496-7001 (telephone)
(215) 568-0300 (facsimile)
whangley@hangley.com
mdh@hangley.com

</td></tr>
</table>

*Attorneys for Intervenors*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden,<br>*on behalf of themselves and*<br>*others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>National Football League and<br>NFL Properties, LLC,<br>successor-in-interest to<br>NFL Properties, Inc.,<br><br>Defendants. | Civil Action No. 2:14-cv-00029-AB |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

**MEMORANDUM OF LAW IN SUPPORT OF INTERVENORS'
MOTION FOR LEAVE TO FILE A REPLY IN SUPPORT OF
MDL DOCKET NO. 6019 (MOTION TO INTERVENE)**

On May 6, 2014, Intervenors filed a motion for leave to intervene for purposes of participating in settlement negotiations on behalf of retired NFL players who, like themselves, have displayed medical conditions consistent with the symptoms of chronic traumatic encephalopathy (CTE), who are at risk of developing CTE, and whose interests are otherwise in conflict with those of Representative Plaintiffs.  MDL Dkt. No. 6019.  On May 19, 2014, Co-Lead Class Counsel filed a response.  MDL Dkt. No. 6046.

Intervenors respectfully request leave to file a reply memorandum so that Intervenors may respond to and rebut the contentions raised in the opposition to Intervenors' Motion to Intervene.  A reply is necessary because of the importance of the matter, the significance to many

putative class members of the issues raised in Intervenors' motion, the incorrect statements of

law and fact in the opposition, and the benefit to the Court of having Co-Lead Counsel's

arguments in opposition addressed by Intervenors.   The interests of justice therefore favor

granting leave to file a reply.  Intervenors' request for leave to file a reply memorandum is also

timely because it will not delay the Court's consideration of any pending motion and because it

is filed within five business days after Co-Lead Class Counsel's opposition was filed.


Dated:  May 27, 2014                                           Respectfully submitted,

                                                               */s/ William T. Hangley*

Steven F. Molo (*pro hac vice*)                                 William T. Hangley
Thomas J. Wiegand (*pro hac vice*)                              Michele D. Hangley
Kaitlin R. O'Donnell (*pro hac vice*)                           HANGLEY ARONCHICK SEGAL
MOLOLAMKEN LLP                                                 PUDLIN & SCHILLER
540 Madison Ave.                                               One Logan Square
New York, NY 10022                                             18th & Cherry Streets
(212) 607-8160 (telephone)                                     27th Floor
(212) 607-8161 (facsimile)                                     Philadelphia, PA 19103
smolo@mololamken.com                                           (215) 496-7001 (telephone)
twiegand@mololamken.com                                        (215) 568-0300 (facsimile)
kodonnell@mololamken.com                                       whangley@hangley.com
                                                               mdh@hangley.com
Eric R. Nitz (*pro hac vice*)
MOLOLAMKEN LLP
600 New Hampshire Ave., N.W.
Washington, DC 20037
(202) 556-2000 (telephone)
(202) 556-2001 (facsimile)
enitz@mololamken.com

Linda S. Mullenix (*pro hac vice*)
2305 Barton Creek Blvd., Unit 2
Austin, TX 78735
(512) 263-9330 (telephone)
lmullenix@hotmail.com

                           *Attorneys for Intervenors*

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2014, I caused the foregoing Motion for Leave to File Reply Brief, Proposed Order, Memorandum of Law, and Proposed Reply to be filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel and parties.

*/s/ William T. Hangley*