# Exhibit 1

# NFL Concussion Settlement

## All Valid Claims of Retired NFL Football Players to be Paid in Full for 65 Years

### Monetary Awards, Baseline Medical Exams and Other Benefits Provided

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

- The National Football League ("NFL") and NFL Properties, LLC (collectively, "NFL Parties") have agreed to a Settlement of a class action lawsuit seeking medical monitoring and compensation for brain injuries allegedly caused by head impacts experienced in NFL football. The NFL Parties deny that they did anything wrong.

- The Settlement Class includes all retired players of the NFL, American Football League ("AFL"), World League of American Football, NFL Europe League and NFL Europa League, as well as authorized representatives of deceased, legally incapacitated or incompetent retired players and family members of retired players who meet certain criteria.

- The Settlement will provide eligible retired players with:

  - Baseline neuropsychological and neurological exams to determine if retired players are: a) currently suffering from any neurocognitive impairment, including impairment serious enough for compensation, and b) eligible for additional testing and/or treatment ($75 million);

  - Monetary awards for diagnoses of ALS (Lou Gehrig's disease), Parkinson's Disease, Alzheimer's Disease, early and moderate Dementia and certain cases of chronic traumatic encephalopathy (CTE) (a neuropathological finding) diagnosed after death. The maximum monetary awards range from $1.5 million to $5 million depending on the diagnosis. There is no cap on the amount of funds available to pay these Monetary Awards and all valid claims will be paid in full for 65 years; and

  - Education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of retired players regarding the NFL's medical and disability programs and other educational programs and initiatives ($10 million).

- Authorized representatives of deceased, legally incapacitated or incompetent retired players and family members of retired players who meet certain criteria may also file claims for monetary awards (*see* Question 6).

- To get money, proof that injuries were caused by playing NFL football is not required.

- **Settlement Class Members will need to register to get benefits. Settlement Class Members may sign up at the website or call 1-855-887-3485 for additional information about the Settlement and updates on the registration process.**

(Continued on next page)

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **STAY IN THE SETTLEMENT CLASS** | To be included in the Settlement Class, no action is needed. Once the Court approves the Settlement, you will be bound by the terms and releases contained in the Settlement. To receive benefits, however, you will need to register at a later date (*see* Question 26). |
| **EXCLUDE YOURSELF (OPT OUT)** | If you exclude yourself (opt out), you will get no benefits from the Settlement. This is the only option that allows you to participate in any other lawsuit against the NFL Parties about the claims in this case (*see* Question 30). |
| **OBJECT** | Write to the Court if you do not like the Settlement (*see* Question 35). |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to grant final approval of the Settlement.

**This Notice is only a summary of the Settlement Agreement and your rights. You are encouraged to carefully review the complete Settlement Agreement at www.NFLConcussionSettlement.com.** The Settlement Agreement is also on file with the Clerk of the Court for the U.S. District Court for the Eastern District of Pennsylvania (*see* Question 35 for the address). You can also get this information by calling **1-855-887-3485**.

| What This Notice Contains |
| --- |

# CHAPTER 1:  INTRODUCTION

**BASIC INFORMATION**……………………………………………………………………………..**Page 5**
1.    Why is this Notice being provided?
2.    What is the litigation about?
3.    What is a class action?
4.    Why is there a Settlement?
5.    What are the benefits of the Settlement?

**THE SETTLEMENT**………………………………………………………………………………..**Page 7**
6.    Who is included in the Settlement Class?
7.    What players are not included in the Settlement Class?
8.    What if I am not sure whether I am included in the Settlement Class?
9.    What are the different levels of neurocognitive impairment?
10.   Must a retired player be vested under the NFL Retirement Plan to receive Settlement benefits?

# CHAPTER 2:  SETTLEMENT BENEFITS

**THE BASELINE ASSESSMENT PROGRAM**……………………………………………....**Page 9**
11.   What is the Baseline Assessment Program ("BAP")?
12.   Why should a retired player get a BAP baseline examination?
13.   How does a retired player schedule a baseline assessment examination and where will it be done?

**MONETARY AWARDS**……………………………………………………………………….. **Page 10**
14.   What diagnoses qualify for monetary awards?
15.   Do I need to prove that playing football caused the Qualifying Diagnosis?
16.   How much money will I receive?
17.   How does the age of the retired player at the time of first diagnosis affect a monetary award?
18.   How does the number of seasons a retired player played affect a monetary award?
19.   How do prior strokes or brain injuries of a retired player affect a monetary award?
20.   How is a retired player's monetary award affected if he does not participate in the BAP program?
21.   Can I receive a monetary award even though the retired player is dead?
22.   Will this Settlement affect a retired player's participation in NFL or NFLPA related benefits programs?
23.   Will this Settlement prevent retired players from bringing workers' compensation claims?

**EDUCATION FUND**…………………………………………………………………………….**Page 14**
24.   What types of education programs are supported by the Settlement?

# CHAPTER 3:  YOUR RIGHTS

**REMAINING IN THE SETTLEMENT**………………………………………………………..**Page 15**
25.   What am I giving up to stay in the Settlement Class?

**HOW TO GET BENEFITS**………………………………………………………………………**...Page 15**

26.     How do I get Settlement benefits?
27.     Is there a time limit to file claims for monetary awards?
28.     Can I re-apply for compensation if my claim is denied?
29.     Can I appeal the determination of my monetary award claim?

**EXCLUDING YOURSELF (OPTING OUT) FROM THE SETTLEMENT**…………………**Page 16**

30.     How do I get out of the Settlement?
31.     If I do not exclude myself (opt out), can I sue the NFL Parties for the same thing later?
32.     If I exclude myself (opt out), can I still get benefits from this Settlement?

**THE LAWYERS REPRESENTING YOU**………………………………………………**Page 17**

33.     Do I have a lawyer in the case?
34.     How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT**……………………………………………………**...Page 18**

35.     How do I tell the Court if I do not like the Settlement?
36.     What is the difference between objecting to the Settlement and excluding myself (opting out)?

**THE COURT'S FAIRNESS HEARING**……………………………………………………**...Page 19**

37.     When and where will the Court hold a Fairness Hearing concerning the Settlement?
38.     Do I have to attend the hearing?
39.     May I speak at the hearing?

**GETTING MORE INFORMATION**…………………………………………………………**Page 19**

40.     How do I get more information?

# CHAPTER 1:  INTRODUCTION

## BASIC INFORMATION

### 1.  Why is this Notice being provided?

The Court in charge of this case authorized this Notice because you have a right to know about the proposed Settlement of this lawsuit and about all of your options before the Court decides whether to give final approval to the Settlement.   This Notice summarizes the Settlement and explains your legal rights and options.

This case is being heard in the U.S. District Court for the Eastern District of Pennsylvania.   The case is known as *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323.   The people who sued are called the "Plaintiffs."   The National Football League and NFL Properties, LLC are called the "NFL Defendants."

The Settlement may affect your rights if you are:  (a) a retired player of the NFL, AFL, World League of American Football, NFL Europe League or NFL Europa League, (b) an authorized representative of a deceased, legally incapacitated or incompetent retired player of those leagues, or (c) an individual with a close legal relationship with a retired player of those leagues, such as a spouse, parent or child.

### 2.  What is the litigation about?

The Plaintiffs claim that retired players experienced head trauma during their NFL football playing careers that resulted in brain injuries, which have caused or may cause them long-term neurological problems.   The Plaintiffs accuse the NFL Parties of being aware of the evidence and the risks associated with repetitive traumatic brain injuries but failing to warn and protect the players against the long-term risks, and ignoring and concealing this information from the players.   The NFL Parties deny the claims in the litigation.

### 3.  What is a class action?

In a class action, one or more people, the named plaintiffs (who are also called proposed "class representatives") sue on behalf of themselves and other people with similar claims.   All of these people together are the proposed "class" or "class members."   When a class action is settled, one court resolves the issues for all class members (in the settlement context, "settlement class members"), except for those who exclude themselves (opt out) from the settlement.   In this case, the proposed class representatives are Kevin Turner and Shawn Wooden.   Excluding yourself (opting out) means that you will not receive any benefits from the Settlement.   The process for excluding yourself (opting out) is described in Question 30.

### 4.  Why is there a Settlement?

After extensive settlement negotiations mediated by retired United States District Court Judge Layn Phillips, and further settlement negotiations under the supervision of the Court-appointed Special Master, Perry Golkin, the Plaintiffs and the NFL Parties agreed to the Settlement.

A settlement is an agreement between a plaintiff and a defendant to resolve a lawsuit.  Settlements conclude litigation without the court or a jury ruling in favor of the plaintiff or the defendant.  A settlement allows the parties to avoid the cost and risk of a trial, as well as the delays of litigation.

If the Court approves this Settlement, the litigation between the Settlement Class Members and the NFL Parties is over.  Only Settlement Class Members are eligible for the benefits summarized in this Notice.  The NFL Parties will no longer be legally responsible to defend against the claims by Settlement Class Members made in this litigation.

The Court has not and will not decide in favor of the retired players or the NFL Parties.  By reviewing this Settlement, the Court is not making and will not make any findings that any law was broken or that the NFL Parties did anything wrong.

The proposed Class Representatives and their lawyers ("Co-Lead Class Counsel," "Class Counsel," and "Subclass Counsel," *see* Question 33) believe that the proposed Settlement is best for everyone who is affected.  The factors that Co-Lead Class Counsel, Class Counsel and Subclass Counsel considered included the uncertainty and delay associated with continued litigation, a trial and appeals and the uncertainty of particular legal issues that are yet to be determined by the Court.  Co-Lead Class Counsel, Class Counsel and Subclass Counsel balanced these and other substantial risks in determining that the Settlement is fair, reasonable and adequate in light of all circumstances and in the best interests of the Settlement Class Members.

The Settlement Agreement is available at www.NFLConcussionSettlement.com.  The Settlement Agreement is also on file with the Clerk of the Court for the U.S. District Court for the Eastern District of Pennsylvania (*see* Question 35 for the address).  You can also get this information by calling **1-855-887-3485**.

| 5.   What are the benefits of the Settlement? |
|---|

Under the Settlement, the NFL Parties will pay to fund:

- Baseline neuropsychological and neurological examinations for eligible retired players, and additional medical testing, counseling and/or treatment if they are diagnosed with moderate cognitive impairment during the baseline examinations (up to $75 million, "Baseline Assessment Program") (*see* Questions 11-13);

- Monetary awards for diagnoses of Death with CTE prior to **July 7, 2014**, ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia) and Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) (*see* Questions 14-21); **All valid claims under the Settlement, without limitation, will be paid in full throughout the 65-year life of the Settlement (the "Monetary Award Fund")**; and

- Education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of retired players regarding the NFL's medical and disability programs and other educational programs and initiatives  ($10 million) (*see* Question 24).

In addition, the NFL Parties will pay the cost of notifying the Settlement Class.  Administrative costs and expenses will be paid out of the Monetary Award Fund.  The Baseline Assessment Program costs and expenses will be paid out of the Baseline Assessment Program Fund.

The details of the Settlement benefits are in the Settlement Agreement, which is available at www.NFLConcussionSettlement.com. The Settlement Agreement is also on file with the Clerk of the Court for the U.S. District Court for the Eastern District of Pennsylvania (*see* Question 35 for the address). You can also get this information by calling **1-855-887-3485**.

**Note:** The Baseline Assessment Program and Monetary Award Fund will be administered independently of the NFL Parties and any benefit programs that have been created between the NFL and the NFL Players Association. The NFL Parties are not involved in determining the validity of claims under the Settlement.

# THE SETTLEMENT

| **6. Who is included in the Settlement Class?** |
| --- |

This Settlement Class includes three types of people:

Retired NFL Football Players: All living NFL Football players who, prior to **July 7, 2014**, (1) have retired, formally or informally, from playing professional football with the NFL or any Member Club, including AFL, World League of American Football, NFL Europe League and NFL Europa League players, or (2) were formerly on any roster, including preseason, regular season, or postseason, of any such Member Club or league and no longer are under contract to a Member Club and are not seeking active employment as a player with any Member Club, whether signed to a roster or signed to any practice squad, developmental squad, or taxi squad of a Member Club.

Representative Claimants: Authorized representatives, ordered by a court or other official of competent jurisdiction under applicable state law, of deceased, legally incapacitated or incompetent Retired NFL Football Players.

Derivative Claimants: Spouses, parents, dependent children, or any other persons who properly under applicable state law assert the right to sue independently or derivatively by reason of their relationship with a living or deceased Retired NFL Football Player. (For example, a spouse asserting the right to sue due to the injury of a husband who is a Retired NFL Football Player.)

The Settlement recognizes two separate groups ("Subclasses") of Settlement Class Members based on the Retired NFL Football Player's injury status prior to **July 7, 2014**:

- Subclass 1 includes: Retired NFL Football Players who were not diagnosed with ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) or Death with CTE prior to **July 7, 2014**, and their Representative Claimants and Derivative Claimants.

- Subclass 2 includes:

  o Retired NFL Football Players who were diagnosed with ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia) or Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) prior to **July 7, 2014**, and their Representative Claimants and Derivative Claimants; and

o   Representative Claimants of deceased Retired NFL Football Players who were diagnosed with ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia) or Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) prior to death or who died prior to **July 7, 2014** and received a diagnosis of Death with CTE.

## 7.  What players are not included in the Settlement Class?

The Settlement Class does not include current NFL players.  The Settlement Class also does not include people who tried out for but did not make it onto preseason, regular season or postseason rosters or practice, developmental or taxi squads of the NFL or any Member Clubs.

## 8.  What if I am not sure whether I am included in the Settlement Class?

If you are not sure whether you are included in the Settlement Class, you may call **1-855-887-3485** with questions or visit www.NFLConcussionSettlement.com.  You may also write with questions to NFL Concussion Settlement, **P.O. Box 25369, Richmond, VA 23260**.  You may also consult with your own attorney.

## 9.  What are the different levels of neurocognitive impairment?

In addition to ALS, Parkinson's Disease and Alzheimer's Disease, various levels of neurocognitive impairment are covered by this Settlement.  More details can be found in the Injury Definitions, which are available at www.NFLConcussionSettlement.com or by calling **1-855-887-3485**.

The level of Neurocognitive Impairment will be established in part with evidence of decline in performance in at least two areas subject to clinical evaluative testing, provided one of the areas is executive function, learning and memory, or complex attention, and related functional impairment as follows:

| LEVEL OF NEUROCOGNITIVE IMPAIRMENT | TYPE OF IMPAIRMENT | DEGREE OF DECLINE |
|---|---|---|
| Level 1 | Moderate cognitive impairment | Moderate cognitive decline |
| Level 1.5 | Early Dementia | Moderate to severe cognitive decline |
| Level 2 | Moderate Dementia | Severe cognitive decline |

If neurocognitive impairment is temporary and only occurs with delirium, or as a result of substance abuse or medicinal side effects, it is not covered by the Settlement.

## 10.  Must a retired player be vested under the NFL Retirement Plan to receive Settlement benefits?

No.  A retired player can be a Settlement Class Member regardless of whether he is vested due to credited seasons or total and permanent disability under the Bert Bell/Pete Rozelle NFL Player Retirement Plan.

# CHAPTER 2:  SETTLEMENT BENEFITS

## THE BASELINE ASSESSMENT PROGRAM

| 11.  What is the Baseline Assessment Program ("BAP")? |
| --- |

All living retired players who have earned at least one-half of an Eligible Season (*see* Question 18), who do not exclude themselves (opt out) from the Settlement (*see* Question 30), and who timely register to participate in the Settlement (*see* Question 26) may participate in the Baseline Assessment Program ("BAP").

The BAP will provide baseline neuropsychological and neurological assessment examinations to determine whether retired players are currently suffering from cognitive impairment. Retired players will have from two to ten years, depending on their age as of the date the Settlement is finally approved and any appeals are fully resolved ("Final Settlement Approval"), to have a baseline examination conducted through a nationwide network of qualified and independent medical providers.

- Retired players 43 or older as of the date of Final Settlement Approval will need to have a baseline examination within two years of the start of the BAP.

- Retired players under the age of 43 as of the date the date of Final Settlement Approval will need to have a baseline examination within 10 years of the start of the BAP, or before they turn 45, whichever comes sooner.

Retired players who are diagnosed with Level 1 Neurocognitive Impairment (*i.e.*, moderate cognitive impairment) are eligible to receive further medical testing and/or treatment (including counseling and pharmaceuticals) for that condition during the ten-year term of the BAP or within five years from diagnosis, whichever is later.

Retired players who participate in the BAP will be encouraged to provide their confidential medical records for use in research into cognitive impairment and safety and injury prevention with respect to football players.

Although all retired players are encouraged to take advantage of the BAP and receive a baseline examination, they do not need to participate in the BAP to receive a monetary award. Any award to a retired player may be reduced by 10% if the retired player does not participate in the BAP, as explained in more detail in Question 20.

| 12.  Why should a retired player get a BAP baseline examination? |
| --- |

Getting a BAP baseline examination will be beneficial. It will determine whether the retired player has any cognitive impairment. If he is diagnosed with Level 1 Neurocognitive Impairment (*i.e.*, moderate cognitive impairment), he will be eligible to receive further medical testing and/or treatment for that condition. In addition, regardless of any cognitive impairment today, the results of the BAP baseline examination can be used as a comparison to measure any subsequent deterioration of cognitive condition over the course of his life. Participants also will be examined by at least two experts during the BAP baseline examinations, a

neuropsychologist and a neurologist, and the retired player and/or his family members will have the opportunity to ask questions relating to any cognitive impairment during those examinations.

Participation in the BAP does not prevent the retired player from filing a claim for a monetary award. For the next 65 years, retired players will be eligible for compensation paid from the Monetary Award Fund if the player develops a Qualifying Diagnosis (*see* Question 14). Participation in the BAP also will help ensure that, to the extent the retired player receives a Qualifying Diagnosis in the future, he will receive the maximum monetary award to which he is entitled (*see* Question 20).

### 13. How does a retired player schedule a baseline assessment examination and where will it be done?

Retired players need to register for Settlement benefits before they can get a baseline assessment examination. Registration for benefits will not be available until after Final Settlement Approval. **A retired player may provide his name and contact information now at www.NFLConcussionSettlement.com or by calling 1-855-887-3485. This ensures that the retired player will receive additional notice about the registration process and deadlines when it becomes available.**

The BAP Administrator will send notice to those retired players determined during registration to be eligible for the BAP, explaining how to arrange for an initial baseline assessment examination. The BAP will use a nationwide network of qualified and independent medical providers who will provide both the initial baseline assessment as well as any further testing and/or treatment. The BAP Administrator, which will be appointed by the Court, will establish the network of medical providers.

# MONETARY AWARDS

### 14. What diagnoses qualify for monetary awards?

Monetary awards are available for the diagnosis of ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) or Death with CTE (the "Qualifying Diagnoses"). A Qualifying Diagnosis may occur at any time until the end of the 65-year term of the Monetary Award Fund.

If a retired player receives a monetary award based on a Qualifying Diagnosis, and later is diagnosed with a different Qualifying Diagnosis that entitles him to a larger monetary award than his previous award, he will be eligible for an increase in compensation. This would also apply to Derivative Claimants.

Qualifying Diagnoses must be made by approved qualified specialists. Any time prior to Final Settlement Approval, only board-certified neurologists, board-certified neurosurgeons or board-certified neuro-specialist physicians or similarly qualified specialists can make Qualifying Diagnoses. Following Final Settlement Approval, only qualified specialists approved by the Claims Administrator will be able to make Qualifying Diagnoses with the exception of Qualifying Diagnoses made through the BAP.

### 15. Do I need to prove that playing football caused the Qualifying Diagnosis?

No. No proof is necessary that a retired player's Qualifying Diagnosis was caused by playing football or that he experienced head injuries in the NFL, AFL, World League of American Football, NFL Europe

League or NFL Europa League in order to receive a monetary award.  The fact that a retired player receives a Qualifying Diagnosis is sufficient to be eligible  for a monetary award.

You also do not need to exclude the possibility that the Qualifying Diagnosis was caused or contributed to by amateur football or other professional football league injuries or by various risk factors linked to the Qualifying Diagnosis.

### 16.  How much money will I receive?

The amount of money you will receive depends on the retired player's:
- Specific Qualifying Diagnosis,
- Age at the time of diagnosis (*see* Question 17),
- Number of seasons played or practiced in the NFL or the AFL (*see* Question 18),
- Diagnosis of a prior stroke or traumatic brain injury (*see* Question 19), and
- Participation in a baseline assessment exam (*see* Question 20).

The amount of money you will receive also depends on:
- Any legally enforceable liens on the award,
- Any retainer agreement with an attorney, and
- Any further assessments ordered by the Court (*see* Question 34).

Certain costs and expenses related to resolving any liens for Settlement Class Members will be paid out of such Settlement Class Members' monetary awards or derivative claimant awards.

The table below lists the maximum amount of money available for each Qualifying Diagnosis before any adjustments are made.

| QUALIFYING DIAGNOSIS | MAXIMUM AWARD AVAILABLE |
|---|---|
| Amyotrophic lateral sclerosis (ALS) | $5 million |
| Death with CTE (diagnosed after death) | $4 million |
| Parkinson's Disease | $3.5 million |
| Alzheimer's Disease | $3.5 million |
| Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia) | $3 million |
| Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) | $1.5 million |

Monetary awards may be increased up to 2.5% per year during the 65-year Monetary Award Fund term for inflation.

To receive the maximum amount outlined in the table, a retired player must have played for at least five Eligible  Seasons (*see* Question 18) and have been diagnosed when younger than 45 years old.

Derivative Claimants are eligible to be compensated from the monetary award of the retired player with whom they have a close relationship in an amount of 1% of that award.  If there are multiple Derivative Claimants for the same retired player, the 1% award will be divided among the Derivative Claimants according to the law where the retired player (or his Representative Claimant, if any) resides.

**17.  How does the age of the retired player at the time of first diagnosis affect a monetary award?**

Awards are reduced for retired players who were 45 or older when diagnosed.  The younger a retired player is at the time of diagnosis, the greater the award he will receive.  Setting aside the other downward adjustments to monetary awards, the table below provides:

- The average award within each age range for people diagnosed between the ages of 45-79; and
- The amount of the award for those under age 45 and over 79.

The actual amount will be determined based on each retired player's actual age at the time of diagnosis and on other potential adjustments.

| AGE AT DIAGNOSIS | ALS | DEATH W/CTE | PARKINSON'S | ALZHEIMER'S | LEVEL 2 | LEVEL 1.5 |
|---|---|---|---|---|---|---|
| Under 45 | $5,000,000 | $4,000,000 | $3,500,000 | $3,500,000 | $3,000,000 | $1,500,000 |
| 45 - 49 | $4,500,000 | $3,200,000 | $2,470,000 | $2,300,000 | $1,900,000 | $950,000 |
| 50 - 54 | $4,000,000 | $2,300,000 | $1,900,000 | $1,600,000 | $1,200,000 | $600,000 |
| 55 - 59 | $3,500,000 | $1,400,000 | $1,300,000 | $1,150,000 | $950,000 | $475,000 |
| 60 - 64 | $3,000,000 | $1,200,000 | $1,000,000 | $950,000 | $580,000 | $290,000 |
| 65 - 69 | $2,500,000 | $980,000 | $760,000 | $620,000 | $380,000 | $190,000 |
| 70 - 74 | $1,750,000 | $600,000 | $475,000 | $380,000 | $210,000 | $105,000 |
| 75 - 79 | $1,000,000 | $160,000 | $145,000 | $130,000 | $80,000 | $40,000 |
| 80+ | $300,000 | $50,000 | $50,000 | $50,000 | $50,000 | $25,000 |

**Note:** The age of the retired player at diagnosis (not the age when applying for a monetary award) is used to determine the monetary amount awarded.

**18.  How does the number of seasons a retired player played affect a monetary award?**

Awards are reduced for retired players who played less than five "Eligible Seasons." The Settlement uses the term "Eligible Season" to count the seasons in which a retired player played or practiced in the NFL or AFL.  A retired player earns an Eligible Season for:

- Each season where he was on an NFL or AFL Member Club's "Active List" for either three or more regular season or postseason games, or

- Where he was on an Active List for one or more regular or postseason games and then spent two regular or postseason games on an injured reserve list or inactive list due to a concussion or head injury.

- A retired player also earns one-half of an Eligible Season for each season where he was on an NFL or AFL Member Club's practice, developmental or taxi squad for at least eight games, but did not otherwise earn an Eligible Season.

The "Active List" means the list of all players physically present, eligible and under contract to play for an NFL or AFL Member Club on a particular game day within any applicable roster or squad limits in the applicable NFL or AFL Constitution and Bylaws.

Time spent playing or practicing in the World League of American Football, NFL Europe League and NFL Europa League does not count towards an Eligible Season.

The table below lists the reductions to a retired player's (or his Representative Claimant's) monetary award if the retired player has less than five Eligible Seasons. To determine the total number of Eligible Seasons credited to a retired player, add together all of the earned Eligible Seasons and half Eligible Seasons. For example, if a retired player earned two Eligible Seasons and three half Eligible Seasons, he will be credited with 3.5 Eligible Seasons.

| NUMBER OF ELIGIBLE SEASONS | PERCENTAGE OF REDUCTION |
|---|---|
| 4.5 | 10% |
| 4 | 20% |
| 3.5 | 30% |
| 3 | 40% |
| 2.5 | 50% |
| 2 | 60% |
| 1.5 | 70% |
| 1 | 80% |
| .5 | 90% |
| 0 | 97.5% |

**19. How do prior strokes or traumatic brain injuries of a retired player affect a monetary award?**

It depends. A retired player's monetary award (or his Representative Claimant monetary award) will be reduced by 75% if he experienced: (1) a medically diagnosed stroke that occurred before or after the time the retired player played NFL football, but before he received a Qualifying Diagnosis; or (2) a severe traumatic brain injury unrelated to NFL football that occurred during or after the time the retired player played NFL football, but before he received a Qualifying Diagnosis.

The award will not be reduced if the retired player (or his Representative Claimant) can show by clear and convincing evidence that the stroke or traumatic brain injury is not related to the Qualifying Diagnosis.

**20. How is a retired player's monetary award affected if he does not participate in the BAP program?**

It depends on when the retired player receives his Qualifying Diagnosis and the nature of the diagnosis. There is a 10% reduction to the monetary award only if the retired player:

- Did not receive a Qualifying Diagnosis prior to **July 7, 2014**, and

- Does not participate in the BAP, and

- Receives a Qualifying Diagnosis (other than ALS) after his deadline to receive a BAP baseline assessment examination.

### 21. Can I receive a monetary award even though the retired player is dead?

Yes.  Representative Claimants for deceased retired players with a Qualifying Diagnoses will be eligible to receive monetary awards.  If the deceased retired player died before January 1, 2006, however, the Representative Claimant will only receive a monetary award if the Court determines that a wrongful death or survival claim is allowed under applicable state law.

Derivative Claimants also will be eligible for a total award of 1% of the monetary award that the Representative Claimant for the deceased retired player receives (*see* Question 16).

Representative and Derivative Claimants will also need to register for Settlement benefits (*see* Question 26).

### 22. Will this Settlement affect a retired player's participation in NFL or NFLPA-related benefits programs?

No.  The Settlement benefits are completely independent of any benefits programs that have been created by or between the NFL and the NFL Players Association.  This includes the 88 Plan (Article 58 of the 2011 Collective Bargaining Agreement) and the Neuro-Cognitive Disability Benefit (Article 65 of the 2011 Collective Bargaining Agreement).

**Note:**  The Settlement ensures that a retired player who has signed, or will sign, a release as part of his Neuro-Cognitive Disability Benefit application, will not be denied Settlement benefits.

### 23. Will this Settlement prevent retired players from bringing workers' compensation claims?

No.  Claims for workers' compensation will not be released by this Settlement.

## EDUCATION FUND

### 24. What type of education programs are supported by the Settlement?

The Settlement will provide $10 million in funding to support education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of retired players regarding the NFL's medical and disability programs and other educational programs and initiatives.

Retired players will be able to actively participate in such initiatives if they desire.

# CHAPTER 3:  YOUR RIGHTS

## REMAINING IN THE SETTLEMENT

| 25. What am I giving up to stay in the Settlement Class? |
| --- |

Unless you exclude yourself (opt out) from the Settlement (*see* Question 30), you cannot sue the NFL Parties, the Member Clubs, or related individuals and entities, or be part of any other lawsuit against the NFL Parties about the issues in this case.  This means you give up your right to continue to litigate any claims related to this Settlement, or file new claims, in any court or in any proceeding at any time. **However, the Settlement does not release any claims for workers' compensation (*see* Question 23) or claims alleging entitlement to NFL medical and disability benefits available under the Collective Bargaining Agreement**.

Please note that certain Plaintiffs also sued the football helmet manufacturer Riddell and certain related entities (specifically, Riddell, Inc., Riddell Sports Group Inc., All American Sports Corporation, Easton-Bell Sports, Inc., EB Sports Corp., Easton-Bell Sports, LLC and RBG Holdings Corp.). **They are not parties to this Settlement and claims against them are not released by this Settlement**.

Article XVIII of the Settlement Agreement contains the complete text and details of what Settlement Class Members give up unless they exclude themselves (opt out) from the Settlement, so please read it carefully. The Settlement Agreement is available at www.NFLConcussionSettlement.com.  The Settlement Agreement is also on file with the Clerk of the Court for the Eastern District of Pennsylvania (*see* Question 35 for the address).  You can also get this information by calling **1-855-887-3485**.  If you have any questions you can talk to the law firms listed in the chart at the end of this Notice for free or you can talk to your own lawyer if you have questions about what this means.

## HOW TO GET BENEFITS

| 26. How do I get Settlement benefits? |
| --- |

To get benefits, you will need to register.  This is true for all Settlement Class Members, including Representative and Derivative Claimants.  Registration for benefits will not begin until after Final Settlement Approval (*see* Question 37).  If and when that occurs, further notice will be provided about the registration process and deadlines.  **However, you may provide your name and contact information now at www.NFLConcussionSettlement.com or by calling 1-855-887-3485.  This ensures that you will receive additional notice about the registration process and deadlines when that becomes available.** To receive any Settlement benefits, you must register on or before 180 days from the date that further notice about the registration process and deadlines is posted on www.NFLConcussionSettlement.com. Information about the registration deadline will also be available by calling **1-855-887-3485.**

| 27. Is there a time limit to file claims for monetary awards? |
| --- |

Yes.  Retired NFL Football Players and Representative Claimants for retired players who are diagnosed by the date of Final Settlement Approval must submit claims for monetary awards within two years of the date that further notice about the registration process and deadlines is posted on www.NFLConcussionSettlement.com.  Retired NFL Football Players and Representative Claimants for

retired players who are diagnosed after the date of Final Settlement Approval have two years from the date of diagnosis to file claims.  This deadline may be extended up to an additional two years upon a showing of substantial hardship.

Derivative Claimants must submit claims no later than 30 days after a Retired NFL Football Player or a Representative Claimant receives notice of an entitlement to a monetary award.  All claims must be submitted by the end of the 65-year term of the Monetary Award Fund.

**28.  Can I re-apply for compensation if my claim is denied?**

Yes.  A Settlement Class Member who submits a claim for a monetary award that is denied can re-apply in the future should the Retired NFL Football Player's medical condition change.

**29.  Can I appeal the determination of my monetary award claim?**

Yes.  The Settlement establishes an independent process for a Settlement Class Member to appeal the denial of a monetary award claim or the amount of the monetary award.

## EXCLUDING YOURSELF (OPTING OUT) FROM THE SETTLEMENT

If you want to retain the right to sue the NFL Parties about the legal issues in this case, then you must take steps to remove yourself from the Settlement.  You may do this by asking to be excluded from—opting out of—the Settlement Class.  If you exclude yourself (opt out), you cannot receive benefits from this Settlement.

**30.  How do I get out of the Settlement?**

On or before **October 14, 2014**, you must mail a letter or other written document to the Claims Administrator requesting exclusion from the Settlement Class.  Your request must include:

- Your name, address, telephone number, and date of birth;

- A copy of your driver's license or other government issued identification;

- A statement that "I wish to exclude myself from the Settlement Class in *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323" (or substantially similar clear and unambiguous language); and

- Your signature by hand, and the date on which you signed it (even if represented by an attorney).

You must mail your exclusion (opt out) request, postmarked on or before **October 14, 2014**, to:
NFL Concussion Settlement
P.O. Box 25369
Richmond, VA 23260

Your request to exclude yourself (opt out) is not effective unless and until the District Court grants Final Approval.

QUESTIONS?  CALL 1-855-887-3485  OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM

**31.  If I do not exclude myself (opt out), can I sue the NFL Parties for the same thing later?**

No.  Unless you exclude yourself (opt out), you give up the right to sue the NFL Parties for all of the claims that this Settlement resolves.  If you want to maintain your own lawsuit relating to the claims released by the Settlement, then you must exclude yourself (opt out) on or before **October 14, 2014.**

**32.  If I exclude myself (opt out), can I still get benefits from this Settlement?**

No.  **If you exclude yourself (opt out) from the Settlement you will not get any Settlement benefits**.  You will not be eligible  to receive a monetary award or participate in the Baseline Assessment Program.

# THE LAWYERS REPRESENTING YOU

**33.  Do I have a lawyer in the case?**

The Court has appointed a number of lawyers to represent all Settlement Class Members as "Co-Lead Class Counsel," "Class Counsel" and "Subclass Counsel" (*see* Question 6).  They are listed at the end of this Notice with their contact information.

You will not be charged for contacting these lawyers.  If you are represented by an attorney, you may contact your attorney to discuss the proposed Settlement.  You do not have to hire your own attorney.  However, if you want to be represented by your own lawyer, you may hire one at your own expense.

**34.  How will the lawyers be paid?**

At a later date to be determined by the Court, Co-Lead Class Counsel, Class Counsel and Subclass Counsel will ask the Court for an award of attorneys' fees and reasonable costs.  The NFL Parties have agreed not to oppose or object to the request for attorneys' fees and reasonable incurred costs if the request does not exceed $112.5 million.  These fees and incurred costs will be paid separately by the NFL Parties and not from the Baseline Assessment Program Fund, Education Fund or Monetary Award Fund.  Settlement Class Members will have an opportunity to comment on and/or object to this request at an appropriate time.  Ultimately, the award of attorneys' fees and reasonable costs to be paid by the NFL Parties is subject to the approval of the Court.

After Final Settlement Approval, Co-Lead Class Counsel may ask the Court to set aside up to five percent of each monetary award and derivative claimant award to facilitate the Settlement program and related efforts of Co-Lead Class Counsel, Class Counsel and Subclass Counsel.  If approved, this money would be held in a separate fund overseen by the Court.  Any future request for a set-aside will describe:  (1) the proposed amount; (2) how the money will be used; and (3) any other relevant information.  This "set-aside" would come out of the claimant's attorney's fee if represented by individual counsel or, if not represented, out of the monetary award and derivative claimant award itself.  No money will be held back or set aside from any award without a Court order.  The set-aside is a matter between Class Counsel and individual counsel for Settlement Class Members.  The NFL Parties do not take a position on the proposal.

# OBJECTING TO THE SETTLEMENT

| **35. How do I tell the Court if I do not like the Settlement?** |
| --- |

If you have not excluded yourself (opted out), you may object to the Settlement or any part of it. The Court will consider your views. To object to the Settlement, you or your attorney must submit your written objection to the Court. The objection must include the following:

- The name of the case and multidistrict litigation, *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323;

- Your name, address, telephone number, and date of birth;

- If you are a Representative Claimant or Derivative Claimant, the name of the Retired NFL Football Player to whom you are related;

- Written statement or evidence establishing how you are a Settlement Class Member;

- A detailed statement of your objections, and the specific reasons for each such objection, including any facts or law you wish to bring to the Court's attention;

- Any other supporting papers, materials or briefs that you want the Court to consider in support of your objection; and

- Your signature by hand, and the date on which you signed it (even if represented by an attorney).

Attorneys filing objections on behalf of Settlement Class Members must follow the requirements in Section 14.3(b) of the Settlement Agreement.

You must mail your objection, postmarked on or before **October 14, 2014**, to:

| **COURT** |
| --- |
| Clerk of the District Court/NFL Concussion Settlement |
| U.S. District Court for the Eastern District of Pennsylvania |
| United States Courthouse |
| 601 Market Street |
| Philadelphia, PA 19106-1797 |

| **36. What is the difference between objecting to the Settlement and excluding myself (opting out)?** |
| --- |

Objecting is simply telling the Court that you do not like something about the Settlement or want it to say something different. You can object only if you do not exclude yourself (opt out) from the Settlement Class. Excluding yourself (opting out) is telling the Court that you do not want to be part of the Settlement Class and you do not want to receive any Settlement benefits. If you exclude yourself (opt out), you have no basis to object because the case no longer affects you.

**QUESTIONS? CALL 1-855-887-3485 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

# THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement.  You may attend and you may ask to speak, but you do not have to.  The Court will determine if you are allowed to speak if you request to do so (*see* Question 39).

## 37.  When and where will the Court hold a Fairness Hearing concerning the Settlement?

The Court will hold the Fairness Hearing on **Wednesday, November 19, 2014 at 10:00 a.m.** at the United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania 19106 in Courtroom 7B.  The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.NFLConcussionSettlement.com or call **1-855-887-3485**.  At this hearing, the Court will hear evidence about whether the Settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them and may elect to listen to people who have asked to speak at the hearing.  After the hearing, the Court will decide whether to approve the Settlement.  We do not know how long the decision will take.

After the Fairness Hearing, the Court will consider the request for attorneys' fees and reasonable costs by Co-Lead Class Counsel, Class Counsel and Subclass Counsel (*see* Question 34).

## 38.  Do I have to attend the hearing?

No.  Co-Lead Class Counsel, Class Counsel and Subclass Counsel will answer questions the Court may have.  But you are welcome to attend at your own expense.  If you timely file an objection, you do not have to come to Court to talk about it.  As long as you filed your written objection on time, the Court will consider it.  You may also have your own lawyer attend at your expense, but it is not necessary.

## 39.  May I speak at the hearing?

On or before **November 3, 2014**, you may ask the Court for permission to speak at the Fairness Hearing.  The Court will determine whether to grant you permission to speak.  To make such a request, you must send written notice to the Court stating your intention to speak at the *In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323 Fairness Hearing.  Be sure to include your name, address, telephone number, and your signature.  Your request to speak must be sent to the Court at the address in Question 35.

# GETTING MORE INFORMATION

## 40.  How do I get more information?

This Notice summarizes the proposed Settlement.  More details are in the Settlement Agreement.  You can get a copy of the Settlement Agreement at www.NFLConcussionSettlement.com.  The Settlement Agreement is also on file with the Clerk of the Court for the Eastern District of Pennsylvania (*see* Question 35 for the address).  You also may write with questions to NFL Concussion Settlement, **P.O. Box 25369, Richmond, VA 23260** or call **1-855-887-3485**.  **PLEASE DO NOT WRITE OR TELEPHONE THE COURT OR THE NFL PARTIES FOR INFORMATION ABOUT THE SETTLEMENT OR THIS LITIGATION.**

**QUESTIONS?  CALL 1-855-887-3485  OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

| IMPORTANT DATES & CONTACT INFORMATION | |
|---|---|
| **Exclusion (Opt Out) Deadline** | October 14, 2014 |
| **Objection Deadline** | October 14, 2014 |
| **Deadline to Request to Speak at the Fairness Hearing** | November 3, 2014 |
| **Fairness Hearing** | November 19, 2014 |
| **Start of Registration Period** | The date the announcement of the registration process is posted on the Settlement Website. (This will occur following Final Settlement Approval after all appeals.) |
| **Registration Deadline** | 180 days after the start of the registration period |
| **Deadline to Receive a BAP** | • For retired players age 43 or older:  Within two years of Final Settlement Approval<br>• For retired players under age 43: Within ten years of Final Approval or before age 45, whichever comes sooner |
| **Deadline to Submit a Claim** | • For retired players (and their Representative Claimants) diagnosed by the date of Final Settlement Approval:  Within two years from the start of the Registration Period<br>• For retired players (and their Representative Claimants) diagnosed after the date of Final Settlement Approval:  Within two years from the date of diagnosis |
| **Settlement Administrator** | **NFL Concussion Settlement**<br>**P.O. Box 25369**<br>**Richmond, VA 23260**<br>**Tel: 1-855-887-3485** |
| **Court** | Clerk of the District Court/NFL Concussion Settlement<br>U.S. District Court for the Eastern District of Pennsylvania<br>United States Courthouse<br>601 Market Street<br>Philadelphia, PA 19106-1797 |
| **Class Counsel** | Christopher A. Seeger<br>Co-Lead Class Counsel<br>SEEGER WEISS LLP<br>77 Water Street<br>New York, NY 10005 / Sol Weiss<br>Co-Lead Class Counsel<br>ANAPOL SCHWARTZ<br>1710 Spruce Street<br>Philadelphia, PA 19103 |
| | Steven C. Marks<br>Class Counsel<br>PODHURST ORSECK P.A.<br>City National Bank Building<br>25 W. Flagler Street, Suite 800<br>Miami, FL 33130-1780 / Gene Locks<br>Class Counsel<br>LOCKS LAW FIRM<br>The Curtis Center, Suite 720 East<br>601 Walnut Street<br>Philadelphia, PA 19106 |
| | Arnold Levin<br>Counsel - Subclass 1<br>LEVIN FISHBEIN SEDRAN & BERMAN<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106 / Dianne M. Nast, Counsel –<br>Counsel - Subclass 2<br>NAST LAW LLC<br>1101 Market Street, Suite 2801<br>Philadelphia, Pennsylvania 19107 |