# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 12-md-2323-AB<br><br>MDL No. 2323<br><br>Hon. Anita B. Brody |
| THIS DOCUMENT RELATES TO:<br><br>*ROY GREEN et al. v. ARIZONA CARDINALS FOOTBALL CLUB, LLC, corporate successor of ST. LOUIS CARDINALS, INC., CASE NO: 1422-CC00005-01, IN THE CIRCUIT COURT OF ST. LOUIS CITY, STATE OF MISSOURI* | *__Hearing Requested__* |

## MOTION BY ROY GREEN, JOHN THOMAS "J.T." SMITH, EDWARD SCOTT, JADE SCOTT AND MONICA SMITH FOR RELIEF FROM THE STAY AND INJUNCTION AS IT APPLIES TO *GREEN V. ARIZONA CARDINALS FOOTBALL CLUB, LLC*

Roy Green, John Thomas "J.T." Smith, Edward Scott, Jade Scott and Monica Smith (hereinafter referred to as "Plaintiffs" or "Movants") moves this Court to quash and/or modify the provision of the Order entered on July 7, 2014, by this Court, as it applies to them, which enjoins proposed class members, including Movants, from continuing to prosecute lawsuits against released parties, including the Arizona Cardinals Football Club, LLC, until they have been finally excluded from the settlement class by action of this Court or until this Court denies approval of the Class Action Settlement, or until the Settlement Agreement is otherwise terminated. (*See* Preliminary Approval Order at ¶6, Doc. No. 6084.)  The stay and injunction was presumably issued pursuant to the Court's authority under the All Writs Act, 28 U.S.C. § 1651, and the "necessary in aid of jurisdiction" exception to the Anti-Injunction Act, 28 U.S.C. § 2283. (*See* Preliminary Approval Op. at 20, Doc. No. 6083 (E.D. Pa. July 7, 2014).) For the reasons stated below, the stay and injunction, insofar as it purports to stay and enjoin Movants from

continuing to prosecute *Green v. Arizona Cardinals Football Club, LLC* (hereinafter referred to as "*Green*"), is in violation of the Anti-Injunction Act.

## BACKGROUND

I.   ***Green v. Arizona Cardinals Football Club, LLC,*** **Case No. 1422-CC00005-01, in the Circuit Court of the City of St. Louis, State of Missouri.**

Movants are three former professional football players and their wives who brought individual claims for negligence, negligent misrepresentation, fraudulent concealment, and loss of consortium against their former employer, the National Football League team now known as the Arizona Cardinals Football Club, LLC. *See Green v. Arizona Cardinals Football Club LLC*, 4:14CV461 CDP, 2014 WL 1920468 (E.D. Mo. May 14, 2014). The relevant facts, as set forth by United States District Court for the Eastern District of Missouri, are as follows:

> Plaintiffs include three former professional football players employed by the Team during the following years: Roy Green from 1979 through 1987, John Thomas "J.T." Smith from 1985 through 1987, and Edward Scott in 1987 (the Players). The other two plaintiffs are Jade Scott and Monica Smith, who are the respective wives of Edward Scott and J.T. Smith (the Wives).

> Green entered into two collective bargaining agreements (CBAs) with the agent of the Team. The first CBA was entered into on March 1, 1977 and expired on July 15, 1982 (the 1977 CBA). The second CBA was entered into on December 11, 1982, made effective July 16, 1982, and expired on August 31, 1987 (the 1982 CBA). Smith only entered into the 1982 CBA. Scott was never employed at a time during which a CBA was in effect.

> The Players allege that they suffered multiple concussive and sub-concussive blows to the head between September 1, 1987 and December 1987. They allege that the Team, as their employer, owed them several duties, including the duties to maintain a safe working environment, not to expose employees to unreasonable risks of harm, and to warn employees about the existence of concealed dangers. The Players allege that although these risks were outside of their own reasonable knowledge, the Team knew or should have known "for many years" that the sort of brain trauma to which the Players were exposed can lead to neurological impairments, including Chronic Traumatic Encephalopathy (CTE), and that studies demonstrating that link were published as early as the 1920s. Despite this knowledge, the Team is alleged to have represented to the Players that concussions are not "serious" and lack long term effects.

2

The Players further allege that the Team increased the risk of exposure to brain trauma by forcing the Players to return to work after they were concussed and by installing AstroTurf, a playing surface that yields faster, more dangerous play and increases the risk of concussion.

The Players brought suit in state court against the Team for negligence, negligent concealment, and fraudulent concealment. The Wives brought claims for loss of consortium.

*Id* at pp. 1-2.

The District Court held, in ruling on Plaintiffs' Motion to Remand, that "Plaintiffs' negligence claims are premised upon the [Missouri] common law duties to maintain a safe working environment, not to expose employees to unreasonable risks of harm, and to warn employees about the existence of dangers of which they could not reasonably be expected to be aware." *Id.* at 5 (citing with approval *Carman v. Wieland*, 406 S.W.3d 70, 76–77 [Mo.Ct.App.2013] which identifies an employer's non-delegable duties arising under Missouri common law as including "1) to provide a safe workplace; 2) to provide safe equipment in the workplace; 3) to warn employees of the existence of dangers of which the employees could not reasonably be expected to be aware; 4) to provide a sufficient number of competent fellow employees; and 5) to promulgate and enforce rules governing employee conduct for the purpose of enhancing safety"). "The scope of the duty," the District Court held, " 'is measured by whether a reasonably prudent person would have anticipated danger and provided against it.' " *Id.* (quoting *Smith v. Dewitt & Assoc.*, 279 S.W.3d 220, 224 (Mo.Ct.App.2009).

Since Plaintiffs allege that the Arizona Cardinals Football Club violated its common law duties by failing to inform them of the long-term risks to which they were exposed in their employment and by failing to provide a reasonably safe workplace, the District Court held that Plaintiffs' negligence claims "derive from and can be adjudged in accordance with standards set

forth in the Missouri common law." *Id.* at 6. Moreover, the District Court held that the duties owed Plaintiffs by the Arizona Cardinals Football Club "arise out of the common law based upon the employer-employee relationship and not out of any particular terms in the CBAs." *Id.* Thus, the District Court held that Plaintiffs negligence claims were not preempted by Section 301 of the Labor Management Relations Act. *Id.*

Similarly, the District Court reasoned, "[a]s with their negligence claims, the [P]laintiffs' negligent misrepresentation and fraudulent concealment actions arise independent of the CBAs as a function of the common law and thus are not preempted." *Id.* at 7. Accordingly, the District Court held that "[b]ecause the plaintiffs' claims can be determined without interpreting the CBAs, [the District Court] do[es] not have subject-matter jurisdiction over this case." *Id.* at 8. Thus, *Green* was remanded to the Circuit Court for the Twenty-Second Judicial Circuit, St. Louis, Missouri, from which it was removed. *Id.*

## II.    This Court's Preliminary Approval Order, Doc. No. 6084.

On July 7, 2014, this Honorable Court entered an Order which, among other provisions, grants preliminary approval of a proposed class action settlement agreement and enjoins proposed class members, including Movants, from continuing to prosecute related lawsuits against released parties, including the Arizona Cardinals Football Club, until they have been finally excluded from the settlement class by action of this Court or until this Court denies approval of the class action settlement, or until the settlement agreement is otherwise terminated. (Preliminary Approval Order at ¶6.) The injunction was presumably issued pursuant to the court's authority under the All Writs Act and "necessary in aid of jurisdiction" exception to the Anti-Injunction Act. However, this Court did not to assess the character of Plaintiffs' action or the level of interference actually threatened by *Green v. Arizona Cardinals Football Club, LLC.*,

which is required prior to the entry of an injunction against an ongoing state action. As shown herein, the character of *Green*—three former players alleging individual occupational disease claims arising under Missouri law—and the level of interference actually threatened—none—renders the stay and injunction entered by this Court a violation of the Anti-Injunction Act. Plaintiffs therefore respectfully request that this Court amend its Order so as not to stay or enjoin Movants' state court action.

<u>**ARGUMENT**</u>

## I.      The Anti-Injunction Act.

It is a fundamental principle of our Nation's Constitution that "each State surrendered only a part of its sovereign power to the national government." *Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers*, 398 U.S. 281, 285, 90 S. Ct. 1739, 1742, 26 L. Ed. 2d 234 (1970). Those powers which were not surrendered "were retained by the States and unless a State [is] restrained by 'the supreme Law of the Land' as expressed in the Constitution, laws, or treaties of the United States, it [is] free to exercise those retained powers as it [sees] fit." *Id.*

One of the powers not surrendered to the national government was the maintenance of state judicial systems such as the Judicial Branch of the State of Missouri. "Thus from the beginning we have had in this country two essentially separate legal systems. Each system proceeds independently of the other[.]" 398 U.S. 281 at 286, 90 S. Ct. at 1743. "[I]n order to make the dual system work and to prevent needless friction between state and federal courts, it was necessary to work out lines of demarcation between the two systems." *Id.* The 1793 Anti-Injunction Act draws, in part, the lines of demarcation between the two systems. *Id.*

The Anti–Injunction Act prevents a federal court, including this Court, from enjoining the "proceedings in a State court except as expressly authorized by Act of Congress, or where

necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The limitations expressed in the Anti–Injunction Act "rest[ ] on the fundamental constitutional independence of the States and their courts," *Atlantic Coast Line R.R.*, 398 U.S. at 287, and reflect "Congress' considered judgment as to how to balance the tensions inherent in such a system." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988). "Due in no small part to the fundamental constitutional independence of the States, Congress adopted a general policy under which state proceedings "should normally be allowed to continue unimpaired by intervention of the lower federal courts[.]" *Id.* (quoting *Atlantic Coast Line R.R.*, 398 U.S. at 287).

Thus, although Congress has permitted injunctions in certain, specific circumstances—namely, when expressly authorized by statute, necessary in aid of the court's jurisdiction, or necessary to protect or effectuate the court's judgment—these exceptions "are narrow and are 'not [to] be enlarged by loose statutory construction.' " *Id.* (quoting *Atlantic Coast Line R.R.*, 398 U.S. at 287).

## II.    The All Writs Act.

The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a); *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 328 (3d Cir. 2007). The Anti–Injunction Act, described above, however, restricts injunctions under the All Writs Act that have the effect of staying an existing state court proceeding to those expressly authorized by Act of Congress, or where necessary in aid of a federal court's jurisdiction, or to protect or effectuate its judgments." *Id.* (internal

quotations omitted). Taken together, the two statutes limit the circumstances under which an injunction is appropriate. *Id.*

As the Third Circuit explained in *Grider*, "an injunction under the All Writs Act is appropriate ***only*** when the state court action threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation." *Id.* at 329 (internal quotation omitted)(emphasis added). Thus, it is not "sufficient that prior resolution of a state court action will deprive a federal court of the opportunity to resolve the merits of a parallel action in federal court," or that a "state action[] risk[s] some measure of inconvenience or duplicative litigation." *Id.* "Rather, the traditional notion is that *in personam* actions in federal and state court may proceed concurrently, without interference from either court, and there is no evidence that the exception to [the Anti-Injunction Act] was intended to alter this balance." *Id.* And, while state court actions *may* present a "special threat to the jurisdiction of the federal court" in a complex class action, it remains, even in the case of consolidation of cases from multiple districts, that an injunction is appropriate ***only*** when the state court action has the "potential to so interfere with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide the case." *Id.* at 330, fn. 3 (internal quotations omitted). That is not the case here.

The rare circumstance under which a federal court may enjoin an existing state court proceeding is the result of deference paid to the principles of federalism and comity. *See Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146, 108 S. Ct. 1684, 1689, 100 L. Ed. 2d 127 (1988). Thus, the United States Supreme Court has cautioned, that

> [a]ny doubts as to the propriety of a federal injunction against state court
> proceedings should be resolved in favor of permitting the state courts to proceed
> in an orderly fashion to finally determine the controversy. The explicit wording of

§ 2283 itself implies as much, and the fundamental principle of a dual system of courts leads inevitably to that conclusion.

*Atlantic Coast Line R.R. Co*., 398 U.S. 281, 297, 90 S.Ct. 1739, 1748, 26 L.Ed.2d 234 (1970).

## III.    The Limited Exception to the Anti-Injunction Act[1]

As stated above, an exception in the Anti–Injunction Act exists ***only*** when the existing state court action threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation—i.e., necessary in aid of the court's jurisdiction. *Grider*, 500 F.3d at 329. The exception is to be construed narrowly. *In re Diet Drugs*, 282 F.3d 220, 233-34 (3d Cir. 2002). *See also Chick Kam Choo*, 486 U.S. at 146, 108 S. Ct. at 1689, 100 L. Ed. 2d 127 (1988) ("the exceptions are narrow and are not to be enlarged by loose statutory construction") (quotation omitted). Indeed, under the exception, "an order directed at a state court proceeding must be ***necessary*** in aid of jurisdiction—it is not enough that the requested injunction is related to that jurisdiction." *In re Diet Drugs*, 282 F.3d at 234 (emphasis in the original)(internal quotation omitted). *Atlantic Coast Line*, supra, 398 U.S. at 287 ("Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court.").

Moreover, "[b]ecause an injunction must be ***necessary*** in aid of jurisdiction to fall under this application to the Anti-Injunction Act, it is important to carefully tailor such injunctions to meet the needs of the case." *In re Diet Drugs*, 282 F.3d at 238. A sweeping injunction that stays

---

[1] By its terms, the Anti–Injunction Act allows injunctions when expressly authorized by statute, necessary in aid of the court's jurisdiction, or necessary to protect or effectuate the court's judgment. 28 U.S.C. § 2283. Because an injunction staying a state proceedings is proper only if it falls within one of the statutory exceptions, *Atlantic Coast Line*, supra, 398 U.S. at 286-287, 90 S.Ct., at 1742-1743, and because the second of the three exceptions is the only one even arguably applicable here, the central question is whether the injunction is necessary in aid of the Federal Court's jurisdiction.

all existing state court actions without an assessment of the character of each action and the level of interference actually threatened is never appropriate. *Id.*

Thus, to determine whether a state court proceeding presents a genuine threat to the Court's jurisdiction, and, thus, a possible exception to the prohibition against an injunction, the Federal Court contemplating an injunction must assess "the character of [each existing] state court action" and "the level of interference with the federal action actually threatened by [each] state court proceeding." *Id.* at 237.

In this case, there was no assessment made of the character of *Green* and the level of interference actually threatened. Plaintiffs submit, however, that the character of *Green* and the level of interference actually threatened ***do not*** pose a genuine threat to this Court's jurisdiction over MDL 2323. Therefore, the stay and injunction, as applied to *Green*, violate the Anti-Injunction Act insofar as it purports to enjoin Plaintiffs in *Green* from continuing to prosecute and/or maintain their state action.

## A.   *Green* Does Not Constitute a Genuine Threat to this Court's Jurisdiction.

Not every state court action pending against the NFL and/or the Arizona Cardinals Football Club necessarily presents a genuine threat to the jurisdiction of this Court. In the Third Circuit, for example, individual actions, as opposed to parallel class actions, ***do not*** pose a threat to the jurisdiction of a federal court overseeing an impending class action settlement. *See Carlough v. Amchem Products, Inc.*, 10 F.3d 189, 204 (3d Cir. 1993) (holding that it was within the sound discretion of the district court to enjoin *a class action* in state court *in light of plaintiffs' ability to pursue litigation of their individual claims in the forum of their choice*). Thus, in *Carlough*, the Third Circuit upheld an injunction of the portion of a suit seeking a ruling from a West Virginia state court permitting a mass opting out of all West Virginia plaintiffs but

opined that the narrowness of the injunction provided plaintiffs the right pursue litigation of their individual claims in the forum of their choice. *Id.* According to *Carlough*, while a parallel *class action* that challenges validity of the proposed federal settlement—i.e., a "preemptive attack"—presents a genuine threat to the jurisdiction of a federal Court overseeing a complex, multidistrict class action, individual actions do not. Movants submit that their individual action likewise does not present a genuine threat to the jurisdiction of this Court over MDL 2323.

In *In re Diet Drugs*, the Third Circuit again upheld the propriety of an injunction against a parallel state court *class action*. 282 F.3d 220. Just as in *Carlough*, the Court of Appeals explicitly relied on the narrowness of the injunction—it only prevented application of a particular order that was directed squarely at the federal action—and on the fact that the class members enjoined *retained the option to commence and prosecute individual lawsuits in the forum of their choice*. *Id.* at 239.

In *Drelles v. Metro. Life Ins. Co.*, 357 F.3d 344 (3d Cir. 2003), the Third Circuit noted that there was **no caselaw** authorizing an injunction against plaintiffs from pursuing individual claims. The Court therefore upheld the denial of an injunction against individual state-based lawsuits.

In short, existing, individual, state-based lawsuits such as *Green **do not*** constitute a genuine threat to the jurisdiction of a federal court overseeing an impending class action settlement. The impropriety of the injunction staying *Green* is all the more obvious when one considers that the Movants have sued their *employer* as opposed to the NFL and are thus quite unlike the multitude of cases previously transferred to MDL No. 2323. Moreover, as a result of a law unique to Missouri, Movants are not barred by Missouri's Workers' Compensation Statute from pursuing occupational disease claims in state court.  *See Amesquita v. Gilster-Mary Lee*

*Corp.*, 408 S.W.3d 293, 301 (Mo. Ct. App. 2013). Thus, the claims brought by Movants are substantially different than those brought against the NFL and the prosecution of such claims, in the State of Missouri, poses absolutely no threat to the jurisdiction of this Court.

The character of *Green*—three former players alleging individual occupational disease claims arising under Missouri law—and the level of interference actually threatened—none— renders the injunction entered by this Court a violation of the Anti-Injunction Act. Plaintiffs therefore respectfully move the Court to quash the stay and injunction insofar as it applies to *Green v. Arizona Cardinals Football Club, LLC*, Case No. 1422-CC00005-01, in the Circuit Court of the City of St. Louis, State of Missouri.

## IV.    Conclusion

For all the reasons stated herein, and because the stay and injunction plainly violate the Anti-Injunction Act, this Court should quash and/or modify the stay and injunction insofar as it applies to *Green v. Arizona Cardinals Football Club, LLC*, Case No. 1422-CC00005-01, in the Circuit Court of the City of St. Louis, State of Missouri so as to allow it to proceed.  Movants respectfully request that oral arguments be heard.

Dated: July 15, 2014                         Respectfully Submitted,

                                             THE KLAMANN LAW FIRM, P.A.

                                             /s/ Andrew Schermerhorn
                                             John M. Klamann, MO            #29335
                                             Andrew Schermerhorn, MO        #62101
                                             Paul D. Anderson, MO           #65354
                                             929 Walnut Street, Suite 800
                                             Kansas City, MO 64106
                                             Telephone: (816) 421-2626
                                             Facsimile: (816) 421-8686
                                             jklamann@klamannlaw.com
                                             aschermerhorn@klamannlaw.com
                                             panderson@klamannlaw.com

HUMPHREY, FARRINGTON & McCLAIN, P.C.
Kenneth B. McClain, MO               #32430
Lauren E. McClain, MO                #65016
Timothy J. Kingsbury, MO             #64958
221 West Lexington, Suite 400
Independence, MO 64051
Telephone: (816) 836-5050
Facsimile: (816) 836-8966
kbm@hfmlegal.com
lem@hfmlegal.com
tjk@hfmlegal.com

THE POPHAM LAW FIRM, P.C.
Wm. Dirk Vandever, MO               #24463
712 Broadway, Suite 100
Kansas City, MO 64105
Telephone: (816) 221-2288
Facsimile: (816) 221-3999
dvandever@pophamlaw.com

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 15, 2014, I caused the foregoing Motion to be filed with the

United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF

system, which will provide electronic notice to all counsel of record. A copy was also sent, via

electronic mail, to the following counsel of record for the Arizona Cardinals Football Club, LLC.

Jeffrey D. Sigmund
Omri E. Praiss
HUSCH BLACKWELL LLP
The Plaza in Clayton, 190 Carondelet Plaza, Suite 600
Saint Louis, MO 63105
Jeffrey.sigmund@huschblackwell.com
Omri.praiss@huschblackwell.com
Telephone: (314) 480-1500

Brad S. Karp
Bruce Birenboim
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
bkarp@paulweiss.com
bbirenboim@paulweiss.com
Telephone: (212) 373-300

/s/ *Andrew Schermerhorn*
Andrew Schermerhorn, MO