Case 2:12-md-02323-AB   Document 6101-2   Filed 07/24/14   Page 1 of 10
Case 2:12-md-02323-AB   Document 5899   Filed 04/07/14   Page 27 of 36
Case 2:12-md-02323-AB   Document 5852   Filed 02/26/14   Page 2 of 6
Case 2:12-md-02323-AB   Document 5848   Filed 02/20/14   Page 7 of 11

process and obliging them "to respond to such motions" in the midst of their efforts to resolve the still-ongoing litigation. (Docket No. 5777 at 2-4.) If this inconvenience argument were a basis for denying intervention, then no third party would ever be permitted to intervene to gain access to documents or proceedings in an ongoing matter. This, of course, is not the case. *See, e.g., United States v. Wecht*, 537 F.3d 222, 229 (3d Cir. 2008) ("[T]he value of the right of access would be seriously undermined if it could not be contemporaneous. To delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression." (citation and internal quotation marks omitted)); *Republic of Phil. v. Westinghouse Elec. Corp.*, 949 F.2d 653, 664 (3d Cir. 1991) ("[T]he public interest encompasses the public's ability to make a contemporaneous review of the basis of an important decision of the district court."); *United States v. Simone*, 14 F.3d 833, 842 (3d Cir. 1994) ("[T]he value of 'openness' itself . . . is threatened whenever immediate access to ongoing proceedings is denied, whatever provision is made for public disclosure."). Plaintiffs' Counsel's proposal of allowing public access only after the Special Master, then the Court, and then all other counsel for plaintiffs have the opportunity to review and analyze the documents is thus contrary to the law and should be rejected. (*See* Docket No. 5777 at 2-3, 7-8.)

*Second*, Plaintiffs' Counsel insist that the settlement documentation is not a "judicial record"—and thus not subject to a presumptive right of access—"because it has not yet been filed, and the Court has directed that the materials be furnished directly to the Special Master rather than filed on the docket." (Docket No. 5777 at 5.) But as Bloomberg explained in its opening briefing, the Third Circuit has made clear that filing on the docket is not a judicial-record prerequisite; what matters is that the document has been "somehow incorporated or integrated into a district court's adjudicatory proceedings"—by filing or otherwise. *In re*

Case 2:12-md-02323-AB   Document 6101-2   Filed 07/24/14   Page 2 of 10

Case 2:12-md-02323-AB   Document 5899   Filed 04/07/14   Page 28 of 36

Case 2:12-md-02323-AB   Document 5852   Filed 02/26/14   Page 3 of 6
Case 2:12-md-02323-AB   Document 5848   Filed 02/20/14   Page 8 of 11

*Cendant*, 260 F.3d 183, 192 (3d Cir. 2001). For example, in *Cendant*, it was the trial court's responsibility, under the Private Securities Litigation Reform Act ("PSLRA"), to approve the selection of plaintiffs' lead class counsel. *Id.* at 188, 193. To help it to fulfill that adjudicatory responsibility, the court ordered all attorneys interested in serving as lead counsel to submit sealed bids to the court. *Id.* The Third Circuit held that these bids, which were not filed on the docket but were submitted "in direct response to the court's command," were judicial records to which the right of access applied. *Id.* at 192-93 & n.6. Just like in *Cendant*, this Court has an adjudicatory responsibility (here, to approve the settlement; there, to approve the selection of lead counsel) and required the parties to provide the Court with documentation that the Court deemed necessary to fulfill that responsibility (here, the underlying medical, actuarial, and economic analyses; there, the bids) but ordered the parties to do so by means other than filing on the docket (here, through the Special Master; there, through a sealed submission). Thus, just like in *Cendant*, the documentation warrants judicial-record status.[2]

*Third*, Plaintiffs' Counsel claim that, even if the documents are "judicial records," the interest in maintaining the confidentiality of the settlement-negotiation process outweighs both the common law and First Amendment rights of access. (Docket No. 5777 at 6-7.) Yet this vaguely articulated interest—for which Plaintiffs' Counsel have provided no supporting evidence—falls far short of meeting the heavy burden that the common law imposes on a party opposing public access, let alone the even heavier First Amendment burden. *See Bank of*

---

[2] While Plaintiffs' Counsel argue that *Cendant* is distinguishable because the pro-access decision "was predicated upon a federal statutory scheme" (Docket No. 5777 at 6 n.6), the Third Circuit's treatment of the bids as "judicial records" did not depend on the source of the adjudicatory responsibility—there, the PSLRA—in connection with which the trial court ordered the bids' submission. *See Cendant*, 260 F.3d at 192-93. Thus, it should make no difference that this Court's settlement-approval duty is rooted in Federal Rule of Civil Procedure 23, rather than a specific statute.

Case 2:12-md-02323-AB Document 6101-2 Filed 07/24/14 Page 3 of 10
Case 2:12-md-02323-AB Document 5899 Filed 04/07/14 Page 29 of 36
Case 2:12-md-02323-AB Document 5852 Filed 02/26/14 Page 4 of 6
Case 2:12-md-02323-AB Document 5848 Filed 02/20/14 Page 9 of 11

*America National Trust and Savings Ass'n v. Rittenhouse*, 800 F.2d 339, 346 (3d Cir. 1986) ("Even if we were to assume that some settlements would not be effectuated if their confidentiality was not assured, the generalized interest in encouraging settlements does not rise to the level of interests that we have recognized may outweigh the public's common law right of access."). As discussed in Bloomberg's opening briefing, overcoming the common law right of access requires, as to each particular document, *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 166 (3d Cir. 1994), a "showing that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure," *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (citation omitted); see also *Cendant*, 260 F.3d at 194 ("Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient."). And overcoming the First Amendment right of access requires "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 510 (1984).

Bloomberg is not, as Plaintiffs' Counsel suggest in advocating their alleged secrecy interest, seeking "all materials involved in [the] settlement negotiations" or "a seat at the negotiating table." (Docket No 5777 at 5, 7 & n.7.) Bloomberg is seeking access to just those settlement-related documents that the Court has ordered the parties to share with the Court "[a]s a first step toward preliminary approval"—documents that Plaintiffs' Counsel told the Court in their motion for preliminary approval demonstrate that the settlement warrants Court approval. (Docket Nos. 5657 at 11-12 & 5658.) To the extent that Plaintiffs' Counsel argue that the parties, in negotiating their settlement, relied on the confidentiality of the actual documents at issue, Plaintiffs' Counsel have not substantiated that reliance with any evidence. (*See* Docket

Case 2:12-md-02323-AB   Document 6101-2   Filed 07/24/14   Page 4 of 10
Case 2:12-md-02323-AB   Document 5899   Filed 04/07/14   Page 30 of 36
Case 2:12-md-02323-AB   Document 5852   Filed 02/26/14   Page 5 of 6
Case 2:12-md-02323-AB   Document 5848   Filed 02/20/14   Page 10 of 11

No. 5777 at 7.) Indeed, the purported reliance is contradicted by Plaintiffs' Counsel's statements elsewhere in their brief that they do not oppose the eventual, phased release of the documents to the public. (*See* Docket No. 5777 at 2-3, 7-8.) Moreover, given that Rule 23(e) provides that the Court must satisfy itself that any settlement is "fair, reasonable, and adequate," any expectation of wholesale confidentiality as to the documentation that, according to the parties themselves, shows that the settlement meets this threshold would have been unreasonable.

For all these reasons and all those discussed in its opening briefing, Bloomberg respectfully requests that the Court grant its motion to intervene and its motion for access to documents and information, subject to redactions that are necessary to protect truly private personal medical information.

Respectfully submitted,

/s/ Eli Segal
Amy B. Ginensky (PA I.D. 22623)
Eli Segal (PA I.D. 205845)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4000

Dated: February 19, 2014

Case 2:12-md-02323-AB   Document 6101-2   Filed 07/24/14   Page 5 of 10

Case 2:12-md-02323-AB   Document 5899   Filed 04/07/14   Page 31 of 36

Case 2:12-md-02323-AB   Document 5852   Filed 02/26/14   Page 6 of 6
Case 2:12-md-02323-AB   Document 5848   Filed 02/20/14   Page 11 of 11

## CERTIFICATE OF SERVICE

I, Eli Segal, hereby certify that on this 19th day of February, 2014, a true and correct copy of the foregoing Bloomberg L.P.'s Reply in Support of Docket No. 5766 (Intervention and Access) was served electronically upon all counsel of record via the Court's ECF filing system.

/s/ Eli Segal
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

# EXHIBIT 3



# Pro32: Head to Head
## NFL concussion lawyer expects case to heat up soon

By MARYCLAIRE DALE
— Mar. 21, 2014 12:39 PM EDT
Home » Anita B. Brody » NFL concussion lawyer expects case to heat up soon

VILLANOVA, Pa. (AP) — The court fight over NFL concussions should heat up soon as a judge in Philadelphia weighs the fairness of the proposed $765 million settlement.

Lead players' lawyer Sol Weiss expects the court's financial expert to advise the judge "shortly" on his view of the class-action plan.

Senior U.S. District Judge Anita Brody has voiced concerns that the fund won't cover 20,000 retirees for 65 years. And critics believe the NFL is getting off lightly, given its $9 billion in annual revenues.

"When you look at it objectively, it didn't matter how much money the NFL had, it was, 'Is there enough money to take care of (people)?'" Weiss said Friday at a seminar at the Villanova University School of Law outside Philadelphia.

The proposed settlement would pay as much as $5 million for men with the most serious neurological injuries, such as Lou Gehrig's disease. The awards would depend on a retiree's age and diagnosis. Those with serious dementia would get $3 million, while an 80-year-old with early dementia would get $25,000. All plaintiffs would get cognitive testing, and follow-up care if needed.

"Even if only 10 percent of retired NFL football players eventually receive a qualifying diagnosis ... it is difficult to see how the monetary award fund would have the funds available over its lifespan to pay all claimants at these significant award levels," Brody wrote in January, when she asked for more actuarial details and appointed New York financier Perry Golkin to advise her.

Weiss remains confident the fund is sufficient, and that most players will sign on rather than spend years fighting the NFL in court. The surprise settlement emerged in August, after several months of closed-door meetings with a mediator.

"There were a lot of talks; they went on for a long period of time ... and the NFL's tough," Weiss said Friday. "We did get to a point where there was enough money on the table to take care of the sick players and their families, and that's the time we make the deal."

Brody was expected to hold a fairness hearing in the coming months, when objectors can challenge the plan, and decide whether to opt out.

"Those players and their lawyers who think it's not enough money will get an opportunity to be heard," Weiss said Friday.

Brody could approve the settlement, reject it, or perhaps suggest the two sides negotiate anew. However, the plaintiffs' lawyers consider time of the essence, especially for families dealing with the dementia, depression and even violence associated with traumatic brain injuries.

"These are profoundly injured people. Some of them are dead, and their families deserve compensation," said Weiss, whose lead plaintiff, former Atlanta Falcon safety Ray Easterling, committed suicide in 2012, a year after filing suit.

"They forget things. They have a lot of anger issues. They can't hold a job. They really can't have a meaningful relations," Weiss said. "Their lives are upside down."

## Tags

United States, North America, Sports, Football, Professional football, General news, National Football League, Lawsuits, NFL football, Legal proceedings, Law and order, Philadelphia, Pennsylvania, Health, Sports medicine, Athlete health, Anita B. Brody, Athlete injuries, Diseases and conditions, Neurological disorders, Seniors' health, Dementia

## Comments

Comments for this thread are now closed.                                                                    ✕

0 Comments     AP Pro32: Head to Head                                                          Login ▾

Sort by Best ▾                                                                          Share   Favorite ★

Be the first to comment.

✉ Subscribe      Add Disqus to your site

## Latest News



### Cleveland clash: Irving, Gordon in media spat

Apr. 7, 2014 12:06 PM EDT



### Pace of presidential prep picks up

Apr. 7, 2014 2:46 AM EDT

### Browns agree to terms with WR Burleson

Apr. 6, 2014 10:47 PM EDT



### Community taking a dive for young cancer patient

Apr. 6, 2014 7:50 PM EDT

### Bears agree to deal with C de la Puente

Apr. 6, 2014 6:16 PM EDT
Advertisement

# The AP Pro32

Poll Released: Dec 30

| RANK | TEAM | PV RANK |
|---|---|---|
| 1 | Seattle Seahawks (8) | 1 |
| 2 | Denver Broncos (4) | 2 |
| 3 | San Francisco 49ers | 3 |
| 4 | Carolina Panthers | 4 |
| 5 | New England Patriots | 5 |
| 6 | Cincinnati Bengals | 6 |
| 7 | New Orleans Saints | 9 |
| 8 | Indianapolis Colts | 8 |
| 9 | Kansas City Chiefs | 7 |
| 10 | Philadelphia Eagles | 11 |

# View Full Poll

Advertisement

AP Sports | © 2014 Associated Press