UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : No. 2:12-md-02323-AB :  : MDL No. 2323 : |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | : Hon. Anita B. Brody : : : : |

**CO-LEAD CLASS COUNSEL'S OPPOSTION TO MOTION
FOR RELIEF FROM THE STAY AND INJUNCTION
AS IT APPLIES TO
<u>GREEN V. ARIZONA CARDINALS FOOTBALL CLUB, LLC</u>**

Co-Lead Class Counsel, on behalf of the Plaintiff Class, submit this opposition to the Motion by Roy Green, John Thomas "J.T." Smith, Edward Scott, Jade Scott and Monica Smith (hereinafter, referred to as the "Green Plaintiffs" or "Movants") for Relief from the Stay and Injunction as it Applies to *Green v. Arizona Cardinals Football Club, LLC* (hereinafter, referred to as the "*Green* action" and the "*Green* Motion"). The Green Plaintiffs contend that their case, pending in Missouri state court, will not threaten the jurisdiction of this Court nor disrupt or impede this Court's ability to proceed to the Fairness Hearing in an orderly fashion and to determine the fairness, reasonableness and adequacy of the proposed Class Action Settlement, and as such they claim that the stay and injunction should not apply to the *Green* action. This contention falls flat, however, in view of the fact that the Green Plaintiffs are Settlement Class members, *i.e.*, retired NFL football players (and their wives) who claim that the Arizona Cardinals, a Released Party[1] under the proposed Class Action Settlement Agreement, knew of the dangers of

---

1. "Released Parties" are defined in the Class Action Settlement Agreement as of June 25, 2014

1

concussive and sub-concussive blows to the head while playing football, but, failed to warn or adequately protect the Green Plaintiffs from same. In other words, the *Green* action is a Related Lawsuit[2] by proposed Settlement Class members, and this Court already made the determination that actions, like *Green*, need to be stayed, and their plaintiffs enjoined from further prosecution of their actions until "a proposed Settlement Class Member's Opt Out becomes effective on the date this Court grants Final Approval, approval of the Settlement Agreement is denied, or the Settlement Agreement is otherwise terminated." Order, dated July 7, 2014, at ¶6 [Doc. # 6084], as reported in *In re National Football League Players' Concussion Injury Litig*., ___ F. Supp. 2d ___, 2014 WL 3054250, at *14 (E.D. Pa. July 7, 2014).

The Court's authority to grant the stay and injunction is clear. As the Court held in its Preliminary Approval Memorandum:

> The All Writs Act authorizes courts to issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law. 28 U.S.C. § 1651(a). However, the Anti–Injunction Act limits a court's authority to issue an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments. 28 U.S.C. § 2283. The parallel "necessary in aid of jurisdiction" language is construed similarly in both the All–Writs Act and the Anti–Injunction Act. … The two statutes act in concert to permit issuance of an injunction.
>
> Under an appropriate set of facts, a federal court entertaining complex litigation, especially when it involves a substantial class of persons from multiple states, or

---

("Settlement Agreement") to include "each of the 'Member Clubs,'" which are, in turn, defined as "any past or present member club of the NFL …." *See* Settlement Agreement [Doc. # 6073-2] at ¶ 2.1 (bbbb) and (zz), respectively. The Arizona Cardinals are a Member Club.

2. "Related Lawsuits" are defined in the Settlement Agreement as "all past, present and future actions brought by one or more Releasors against one or more Released Parties pending in the Court, other than the Class Action Complaint, or in any other federal court, state court, … that arise out of, are based upon or are related to the allegations, transactions, facts, matters, occurrences, representations or omissions involved, set forth, alleged, or referred to in the Class Action Complaint …." *See* Settlement Agreement [Doc. # 6073-2] at ¶ 2.1 (zzz). "Releasors" are defined in Section 18.1 of the Settlement Agreement. *Id*. at ¶ 2.1 (dddd) and Section 18.1. Proposed Settlement Class Members, like the Green Plaintiffs, are Releasors.

represents a consolidation of cases from multiple districts, may appropriately enjoin state court proceedings in order to protect its jurisdiction. Thus, the "necessary in aid of its jurisdiction" exception to the Anti–Injunction Act applies to consolidated multidistrict litigation, where a parallel state court action threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation. … The threat to the federal court's jurisdiction posed by parallel state actions is particularly significant where there are conditional class certifications and impending settlements in federal actions. **In complex cases where certification or settlement has received conditional approval the challenges facing the overseeing court are such that it is likely that almost any parallel litigation in other fora presents a genuine threat to the jurisdiction of the federal court.**

This is a complex, multidistrict litigation involving more than 300 consolidated actions with over 5,000 plaintiffs and a proposed class with over 20,000 members. Without the requested stay and injunction, the NFL Parties and other Released Parties remain exposed to countless suits in state court despite settlement of the federal claims that would seriously undermine the possibility for settling this large, multi-district class action. Therefore, I will issue the requested stay and injunction.

*Id* at *11-12 (citations and internal quotation marks omitted) (emphasis added).

Importantly, this Court carefully tailored both the scope and the timing of the stay and injunction so as to affect only those claims as to which continuing litigation would disrupt this Court's evaluation of the Settlement during the period leading up to the November 19, 2014 Fairness Hearing and for the time period thereafter until a decision is rendered:

This action and all actions consolidated before the Court in this Multidistrict Litigation are stayed. All proposed Settlement Class Members are enjoined from filing, commencing, prosecuting, intervening in, participating in, continuing to prosecute and/or maintaining, as plaintiffs, claimants, or class members, any other lawsuit, including, without limitation, a Related Lawsuit, or administrative, regulatory, arbitration, or other proceeding in any jurisdiction (whether state, federal or otherwise), against Released Parties based on, relating to, or arising out of the claims and causes of action, or the facts and circumstances at issue, in the Class Action Complaint, Related Lawsuits and/or the Released Claims. However, claims for workers' compensation and claims alleging entitlement to NFL CBA Medical and Disability Benefits are not stayed or enjoined. **The stay and injunction will remain in effect unless and until a proposed Settlement Class Member's Opt Out becomes effective on the date this Court grants Final Approval, approval of the Settlement Agreement is denied, or the Settlement**

> **Agreement is otherwise terminated**.  No such stay or injunction applies to the Riddell Defendants.

*Id*. at *14 (emphasis added).

This Court already has considered the ramifications of the issuance of the stay and injunction and has made the determination that such is necessary in aid of its jurisdiction.  The *Green* Motion raises no new or unique issues which should persuade this Court to revisit its decision to stay Related Litigation and to enjoin proposed Settlement Class members or to carve out an exception for the *Green* action.

## FACTUAL BACKGROUND

The plaintiffs in the *Green* action are Settlement Class members.  They are retired NFL football players and their wives.  The *Green* action, pending in Missouri state court, alleges claims against the Arizona Cardinals Football Club, LLC, a Released Party, under Missouri law.  Unlike most other states, Missouri has carved out an exception to the workers' compensation bar/exclusive remedy doctrine, which enables employees to sue their direct employers for occupational disease claims.  Each of the player plaintiffs in the *Green* action played for the St. Louis Football Cardinals, the predecessor to the Arizona Cardinals, which had operated in Missouri prior to moving to Arizona.[3]  The retired players claim to have suffered concussive and

---

3. Counsel for the Green Plaintiffs also represent twenty-two other players or their representatives, and certain wives, pending before this Court, specifically, the plaintiffs in *Lewis, et al. v. Kansas City Chiefs Football Club, Inc*., 14-cv-01995-AB, *Smith, et al. v. Kansas City Chiefs Football Club, Inc*., 14-cv-03383-AB, and *Manuel v. Kansas City Chiefs Football Club, Inc*., 14-cv-03384-AB.  The players involved in *Lewis*, *Smith* and *Manuel* also played in Missouri, but for the Kansas City Chiefs.  The claims in these cases, like Green, were brought under Missouri law and against only the Member Club.  Each of those cases was removed and transferred by the Judicial Panel on Multidistrict Litigation ("JPML") to this Court.  *See* Transfer Orders for *Lewis* [Doc. # 5894 ("We are not persuaded that the absence of the NFL as a defendant weighs against transfer in this instance.  Several actions naming other NFL member clubs, as well as the NFL, have been transferred to MDL No. 2323 …. [T]he defendant in this action (the Chiefs) shares counsel with the primary MDL defendant (the NFL).  Additionally, discovery in this action will overlap with that in the MDL, particularly involving expert discovery regarding causation.") and *Smith* and

subconcussive blows to the head resulting in brain injuries for the time periods during which they were playing for an NFL football team in Missouri, which are Released Claims under the proposed Settlement.

**ARGUMENT**

> **A.     Under the All Writs Act and the Anti-Injunction Act, This Court Has the Authority To Issue the Stay and Injunction in Aid of Its Jurisdiction.**

This Court's fundamental authority vis-à-vis the state courts derives from the Supremacy Clause of the United States Constitution, which provides that: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land;  and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. CONST. ART. VI, cl. 2.

Congress has since provided statutory constructs delimiting the ability of the federal district courts to protect their authority over competing state court rulings.  Pursuant to the All Writs Act, 28 U.S.C. § 1651, this MDL Court has the authority to "issue all writs necessary or appropriate in aid of [its] jurisdiction[] and agreeable to the usages and principles of law."  The Anti-Injunction Act, 28 U.S.C. §2283, a complement to the All Writs Act, also empowers this MDL Court to enjoin state court proceedings where "necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

As this Court aptly points out in its July 7, 2014 Memorandum, the "[t]he parallel 'necessary in aid of jurisdiction' language is construed similarly in both the All Writs Act and the Anti-Injunction Act."  *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 201 n.9 (3d Cir. 1993).

---

*Manuel* [Doc. # 6069].   Only the *Green* action was remanded by the transferor court before the JPML could issue a Final Transfer Order.   *Green v. Arizona Cardinals Football Club LLC*, 2014 WL 1920468 (E.D. Mo. May 14, 2014).

"The two statutes act in concert to permit issuance of an injunction." *Id*. Memorandum [Doc. # 6083], at 20.

The Third Circuit in *In re Diet Drugs*, 282 F.3d 220 (3d Cir. 2002), set forth the following factors relevant to determining whether sufficient interference is threatened to justify an injunction:

(1) The nature of the federal action must be examined to determine what kinds of state court interference would sufficiently impair the federal proceeding.

(2) The state court's actions must be assessed to determine whether they present a sufficient threat to the federal action.

(3) Principles of federalism and comity must be considered since a primary aim of the Anti-Injunction Act is to prevent needless friction between the state and federal courts.

*Id.* at 234. Courts liberally invoke the "necessary in aid of its jurisdiction" exception "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970); *In re Baldwin-United Corp.*, 770 F.2d 328, 337 (2d Cir. 1985) (same); *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1332, 1334 (5th Cir. 1981), *cert. denied*, 456 U.S. 936 (1982) (same); *In re Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. 32, 37 (E.&S.D.N.Y. 1990) (same); Martin H. Redish, *The Anti-Injunction Statute Reconsidered*, 44 U. CHI. L. REV. 717, 754 (1977) ("necessary in aid of jurisdiction" exception should be construed "to empower the federal court to enjoin a concurrent state proceeding that might render the exercise of the federal court's jurisdiction nugatory.").

As discussed below, these factors militate in favor of allowing the stay and injunction to stand as against the Green Plaintiffs.

**B.    The Pending Class Action Settlement and Fairness Hearing Proceedings in the Complex, Multidistrict Litigation Pending Before This Court Would Be Significantly Impaired by the Related State Court Litigation.**

This Court, in quoting from *Diet Drugs,* recognized one of the categories of federal cases for which the state court actions present a special threat, namely complex, multistate cases, like this case. "Under an appropriate set of facts, a federal court entertaining complex litigation, especially when it involves a substantial class of persons from multiple states, or represents a consolidation of cases from multiple districts, may appropriately enjoin state court proceedings in order to protect its jurisdiction." *Id.* at 235.   *See* Memorandum at 20; 2014 WL 3054250, at *11.

Another category identified by the Third Circuit in *Diet Drugs* where a threat is posed by state court action is where both court proceedings are over the same res in actions *in rem*.   282 F.3d at 234.   *See also* Wright & Miller, Fed. Prac. & Proc. § 4225 (3d ed.) (The "in aid of jurisdiction" exception was seen, historically, as expressing the "well settled rule that if an action is in rem the court first obtaining jurisdiction over the res could enjoin suits in other courts involving the same res.").   "The threat to the federal court's jurisdiction posed by parallel state actions is particularly significant where there are conditional class certifications and impending settlements in federal actions. … Many – though not all – of the cases permitting injunction in complex litigation cases involve injunctions issued as the parties approached settlement."   *Diet Drugs*, 282 F.3d at 236.   *See* Memorandum at 21;   2014 WL 3054250, at *11.

Since a proposed Class Action Settlement has been preliminarily approved by this Court, this Court is presiding over what is tantamount to a *res*.   *See In re Baldwin-United Corp.*, 770 F.2d 328, 337 (2d Cir. 1985) ("the need to enjoin conflicting state court proceedings arises because

7

the jurisdiction of a multi-district court is analogous to that of a court in an *in rem* action … where it is intolerable to have conflicting orders from different courts"); *Battle v. Liberty National Life Ins. Co.*, 877 F.2d 877, 882 (11th Cir. 1989) ("makes sense to consider this case, involving years of litigation and mountains of paperwork, as similar to a res to be administered").  *See also In re Prudential Ins. Co. of Am.*, 261 F.3d 355, 365 (3d Cir. 2001) (couching as an exception to the *in rem* requirement, rather than being analogous thereto, but, nevertheless holding that an injunction is appropriate in aid of the federal court's jurisdiction in "consolidated multidistrict litigation, where a parallel state court action threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation."); *Winkler v. Eli Lilly & Co.,* 101 F. 3d 1196, 1202 (7th Cir. 1996) (approving application of the exception for the Anti-Injunction Act that "ordinarily" applies only to *in rem* actions, to MDL Litigation);  *Corrugated Container*, 659 F.2d at 1334-35 (injunction proper because "complicated antitrust action ... required a great deal of the district court's time and necessitate[d] its ability to maintain a flexible approach in resolving the various claims of the many parties.").

The Green Plaintiffs repeatedly cite *Grider v. Keystone Health Plan Central, Inc*., 500 F.3d 322 (3d Cir. 2007), but, tellingly, fail to set forth the facts of *Grider*.  *See* Green Motion at pp. 6, 7 & 8.  *Grider* does not support their request that the stay and injunction be lifted as to their case.[4]  First, *Grider* involved two federal courts and an attempt to thwart settlement, rather than to encourage and/or preserve a settlement.   In that case the United States District Court for the Eastern District of Pennsylvania issued an injunction barring the defendant health plan from

---

4.  Further, the Green Plaintiffs cite *Grider* for the proposition that "the traditional notion is that *in personam* actions in federal and state court may proceed concurrently, without interference from either court, and there is no evidence that the exception to [the Anti-Injunction Act] was intended to alter this balance."   Green Motion at 7 (citing *Grider*, 500 F.3d at 329).   As previously discussed, we submit that the proposed Class Action Settlement before this MDL Court is more akin to an *in rem* action.

settling or attempting to settle, claims pending in the parallel multi-district litigation which the JPML had consolidated in the United States District Court for the Southern District of Florida, where the parties had been moving toward a comprehensive settlement. The injunction issued in *Grider* is in no way analogous to the injunction issued here.

> C. **The *Green* Case Does Pose a Sufficient Threat to this Court's Jurisdiction To Justify the Stay and Injunction.**

Movants repeatedly contend that this Court made no assessment of the character of the *Green* case and the level of interference actually threatened, *see* Green Motion at pp. 4-5, 9. However, counsel for the Green Plaintiffs have gone out of their way to insure that this Court is aware of the Missouri common law-based arguments against the Member Clubs of the Lewis and Green Plaintiffs and the success of the Green Plaintiffs on their motion to remand. *See* Plaintiffs' Motion To Modify Case Management Order No. 4 [Doc. # 5941] and Lewis Complaint attached thereto [Doc. # 5941-1], and the Plaintiffs' Notice of Supplemental Authority in Support of Plaintiffs' Motion To Remand [Doc. # 6039] and attached Memorandum and Order granting motion to remand in *Green* [Doc. # 6039-1].

There is no requirement that the state court action be a class action in order to pose a threat to the federal court's jurisdiction. The fact that the *Green* case involves three individual player plaintiffs and their wives, rather than a class action is not determinative as to the appropriateness of the stay and injunction. Contrary to the Green Plaintiffs' intimation, nowhere in *Carlough, supra,* or *Diet Drugs, supra,* does the Third Circuit guide that only state court *class* actions may be permissibly enjoined. Indeed, in *Carlough*, the Third Circuit cites to *In re Baldwin, supra*, wherein the attorneys general of several states were enjoined by the district court:

> In *In re Baldwin United Corp*., 770 F.2d 328 (2d Cir.1985), a consolidated MDL proceeding, over 100 lawsuits were brought against 26 defendants by holders of

9

securities.   After years of negotiations, many defendants agreed to a settlement and signed stipulations to that effect.   Prior to the entry of final judgment approving the settlements, the attorneys general of several states made known their intent to commence enforcement suits in their state courts seeking restitution and other damages against some of the defendants.   The district court enjoined the imminent state proceedings under the necessary in aid exception to the All–Writs Act, explaining:

that the existence of actions in the state court would jeopardize its ability to rule on the settlements, would substantially increase the cost of litigation, would create a risk of conflicting results, and would prevent the plaintiffs from benefitting from any settlement already negotiated or from reaching a new and improved settlement in federal court.
*Id.* at 333.

The Court of Appeals for the Second Circuit affirmed, adding that,
[t]he existence of multiple and harassing actions by the states could only serve to **frustrate the district court's efforts to craft a settlement in the multi-district litigation before it**.
\* \* \* \* \* \*
Under the circumstances we conclude that the injunction ... was ... unquestionably "necessary or appropriate in aid of" the federal court's jurisdiction.
 *Id*. at 337–38.

*Carlough*, 10 F.3d at 203 (emphasis added).[5]

Similarly, in *Diet Drugs*, the Third Circuit, held:

In complex cases where certification or settlement has received conditional approval the challenges facing the overseeing court are such that it is **likely that almost any parallel litigation in other fora presents a genuine threat** to the jurisdiction of the federal court.
\*\*\*

---

5.  The Green Plaintiffs misconstrue *Carlough*.   *See* Green Motion at pp. 9-10.   *Carlough* does not stand for the proposition that a stay and injunction as against individual state court litigants who choose to opt out is inappropriate **during the opt-out period.**   The *Carlough* Court was speaking to the fact that the stay and injunction of the state class action case would not affect the individual class members' future rights to opt out and to pursue litigation in the forum of their choice **prospectively**.   10 F.3d at 204 (referencing the establishment of the opt-out period and the fact that the class members "are only now receiving notice of the federal suit").   Similarly, the Class members in this case are only now receiving Class Notice.   The Green Plaintiffs will have the same rights as the class members in *Carlough* to opt out and pursue their claims, since this Court's stay and injunction is only for a limited time to allow the Court to conduct the Fairness Hearing and make its ruling.

> The central events in this dispute occurred after two years of exhaustive work by the parties and the District Court, and after a conditional class certification and preliminary settlement had been negotiated and approved by the District Court. There can be no doubt that keeping this enormously complicated settlement process on track required careful management by the District Court. **Any state court action that might interfere with the District Court's oversight of the settlement at that time, given the careful balancing it embodied, was a serious threat to the District Court's ability to manage the final stages of this complex litigation.**

282 F.3d at 236-37 (emphasis added).

Nor does the Third Circuit's decision in *Drelles v. Metro. Life Ins. Co.,* 357 F.3d 344 (3d Cir. 2003) support the Green Plaintiffs' contention that the stay and injunction should not apply as to them. As with the *Grider* case, the Green Plaintiffs skirt the facts of *Drelles*. *See* Green Motion at p. 10. In *Drelles*, a federal class action settled in December of 1999. Years later, when those who had opted out were pursuing their cases against the same defendant, that defendant sought an injunction barring discovery in the state court action from the federal court in which the class action had settled. The Third Circuit, affirming the district court's decision to deny the motion for an injunction, noted that allowing the defendant to limit or restrict the opt-outs in the prosecution of their case "would essentially nullify [their] decision to opt out." 357 F.3d at 347.[6] The injunction sought by the defendant in *Drelles* is incomparable to the limited stay and injunction that has been issued here.

The *Green* case has been brought by individual plaintiffs, who are proposed Settlement Class members, against a Member Club, which is a Released Party. Unlike the situation where opt-outs proceed on their claims after final approval of a class settlement, here, if the stay and injunction were to be lifted as to the Green Plaintiffs, the Missouri court would be exercising its

---

6. In distinguishing *Carlough* from the situation before it, the *Drelles* Court noted that in *Carlough*, the enjoined plaintiffs had not yet been given the opportunity to opt out, so the state suit was premature. *Drelles*, 357 F.3d at 347 (citing *Carlough*, 10 F.3d at 204).

jurisdiction simultaneously, while this Court is exercising its jurisdiction over the same parties and over the *res* that is the proposed Settlement.  As quoted above from this Court's Memorandum opinion, *supra,* and as pronounced by the Third Circuit in *Diet Drugs, supra*:  "In complex cases where certification or settlement has received conditional approval the challenges facing the overseeing court are such that it is likely that **almost any parallel litigation in other fora presents a genuine threat to the jurisdiction of the federal court**." 2014 WL 3054250, at *11 (Memorandum at 21);  *Diet Drugs,* 282 F.3d at 236-37 (emphasis added).  Lifting the stay and injunction and allowing the Green Plaintiffs to proceed, now, in Missouri state court, would pose a clear threat to this Court's jurisdiction.[7]

### D.   The Stay and Injunction Issued in This Case Is Consistent with the Principles of Federalism and Comity.

As noted in *Diet Drugs*, "the principle embodied in the Anti-Injunction Act that federal courts maintain respect for state court proceedings is not undermined by the issuance of the injunction."  282 F.3d at 239.  The Class Notices were mailed to all known class members just last week.  The Opt-out/Objection deadline is October 14, 2014 and the Fairness Hearing is set for November 19, 2014.  The Green Plaintiffs have yet to exercise their opt out rights, but, they have been given those rights.  If and when they exercise those rights, and they become effective, they may pursue their litigation in Missouri.  As per this Court's Order "a proposed Settlement Class Member's Opt Out becomes effective on the date this Court grants Final Approval." Additionally, the stay and injunction will lift if "approval of the Settlement Agreement is denied, or the Settlement Agreement is otherwise terminated."  Nothing in the Court's Stay and

---

7. It should also be noted that the Green case was filed on December 31, 2013.  This was almost two years after the MDL had been created and four months after this Court's August 29, 2013 announcement that a settlement had been reached.  [Doc. # 5235]

Injunction will prevent the Green Plaintiffs from having their day in the Missouri state court, if that is what they ultimately desire.

**CONCLUSION**

Thus, Co-Lead Class Counsel respectfully request that the Stay and Injunction issued pursuant to this Court's Memorandum and Order, dated July 7, 2014, remain in place as to all related lawsuits, including *Green v. Arizona Cardinals Football Club, LLC*.

Dated:   July 29, 2014                                  Respectfully submitted,

/s/ Christopher A. Seeger
Christopher A. Seeger
SEEGER WEISS LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

**Co-Lead Class Counsel**

Sol Weiss
ANAPOL SCHWARTZ
1710 Spruce Street
Philadelphia, PA 19103
Phone: (215) 735-1130
Fax: (215) 735-2024
sweiss@anapolschwartz.com

**Co-Lead Class Counsel**

## **CERTIFICATE OF SERVICE**

It is hereby certified that a true copy of the foregoing was served electronically via the Court's electronic filing system on the 29th day of July, 2014, upon all counsel of record.

Dated: July 29, 2014

/s/ Christopher A. Seeger
Christopher A. Seeger
