# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br><br>*ROY GREEN, et al. v. ARIZONA CARDINALS FOOTBALL CLUB LLC, corporate successor of ST. LOUIS CARDINALS, INC.* | **Hon. Anita B. Brody**<br><br>No. 1422-CC00005-01, Circuit Court of St. Louis City, State of Missouri |

**RESPONSE OF THE NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC IN OPPOSITION TO THE MOTION BY ROY GREEN, JOHN THOMAS "J.T." SMITH, EDWARD SCOTT, JADE SCOTT AND MONICA SMITH FOR RELIEF FROM THE STAY AND INJUNCTION AS IT APPLIES TO *GREEN* V. *ARIZONA CARDINALS FOOTBALL CLUB LLC***

As retired NFL players and their spouses, the *Green* Plaintiffs are members of the settlement class that was preliminarily certified by this Court in conjunction with the Court's preliminary approval of the proposed class action settlement. As such, they are subject to the properly issued and appropriately tailored stay and injunction entered by this Court on July 7, 2014.[1] That injunction enjoins the *Green* Plaintiffs from prosecuting any Related Lawsuits, including their pending case against the Arizona Cardinals Football Club LLC (the "Cardinals") in Missouri state court. The fact that their case has been brought against a Member Club, rather than the National Football League or NFL Properties LLC (the "NFL Parties") is of no consequence. Under the Court's carefully considered injunction, the Cardinals are a Released

---

[1] Except where otherwise noted, the capitalized terms in this Response have the same meaning as those in the Class Action Settlement Agreement. *See* Class Action Settlement Agreement dated as of June 25, 2014, MDL 2323, 12-md-02323, Doc. No. 6073-2 (E.D. Pa.) ("Settlement Agreement").

Party and the *Green* action is a Related Lawsuit that falls squarely within the injunction.  The *Green* plaintiffs allege the same causes of action at issue in MDL 2323—common law tort and negligence-based claims regarding alleged concussions and head trauma they suffered during their NFL careers—and seek the same relief.

The *Green* action is precisely the type of case that should be enjoined to prevent ongoing discovery and motion practice which—based on the *Green* Plaintiffs' allegations and discovery requests—has the potential to interfere directly with the administration of the proposed settlement.  As just one example, the *Green* plaintiffs have already sought discovery from the Cardinals regarding the concussion-related affairs of the NFL over many decades.  As discussed in detail below, such requests disrupt the settlement process established by this Court and disrupt this Court's jurisdiction over the ongoing settlement proceedings.

The Court's injunction enjoins the *Green* Plaintiffs from prosecuting their claims in state court until they have made their final decision whether to opt out of the proposed settlement and the Court considers final approval of the settlement.  At that time, the *Green* Plaintiffs—if they choose to opt out and go their own way—will be free to prosecute their claims as they see fit.  It is appropriate for this Court to stop them from doing so until final approval so that the settlement process may be appropriately administered.  The *Green* Plaintiffs' motion therefore should be denied.

## FACTUAL BACKGROUND

On July 7, 2014, this Court preliminarily approved the Class Action Settlement in *In re: National Football League Players' Concussion Injury Litigation* ("MDL 2323").  (Preliminary Approval Order, Doc. No. 6084 (the "Order").)  Under the Order, a Fairness Hearing will be held

on November 19, 2014 to determine if the Class Action Settlement should receive final approval. (*Id.* at ¶ 5.)

In conjunction with the preliminary approval of the Class Action Settlement, the Court preliminarily approved a Settlement Class that includes "[a]ll living NFL Football Players who . . . retired . . . from playing professional football with the NFL or any Member Club" and their "spouses." (Preliminary Approval Order ¶ 2.a.)  The *Green* Plaintiffs are three Retired NFL Football Players and two of their spouses.  As former NFL players and their spouses, the *Green* Plaintiffs squarely fall within the settlement class definition.  Each of the former player *Green* Plaintiffs also is a named plaintiff in an action pending before this Court as part of MDL 2323 where these plaintiffs assert common law fraud and negligence-based claims for injuries allegedly caused by repetitive head trauma while playing NFL Football.[2]

The proposed Class Action Settlement includes a release of claims by all participating Settlement Class Members (and other Releasors), which would include the *Green* Plaintiffs.  The Released Claims include claims "that were, are or could have been asserted in the Class Action Complaint or any other Related Lawsuit."  (Settlement Agreement at § 18.1(a)(i).)  And those Released Claims will be released against Released Parties—whom are defined to include not only the NFL Parties, but also NFL Member Clubs, such as the Cardinals.  (*Id.* at § 2.1(bbbb).)

---

[2] Plaintiffs Green and Smith are named in *Monk, et al.* v. *National Football League, et al.* ("*Monk*"), which was filed in California Superior Court, removed to the United States District Court for the Central District of California, and transferred (without opposition) to MDL 2323. (*See* Stipulation to Stay the Case at 3, *Monk*, No. 2:12-cv-4759, Doc. No. 16 (C.D. Cal. June 5, 2012); *Monk*, No. 2:12-cv-3533, Doc. No. 1 (E.D. Pa. June 22, 2012).)  Plaintiff Scott is named in *Brister, et al.* v. *NFL, et al.* ("*Brister*"), which was filed directly in this Court.  (Compl., *Brister*, No. 2:12-cv-3693, Doc. 1 (E.D. Pa. June 29, 2012); Am. Compl., *Brister*, Doc. 91 (Aug. 30, 2012).)  Thereafter, each of these Retired NFL Football Players continued to litigate against the NFL in the MDL 2323 proceedings before this Court by filing short form complaints.   (*See* MDL 2323, 12-md-02323, Doc. Nos. 1572, 1772, 2760 (E.D. Pa. July 12 and July 24, 2012).)

Approximately eighteen months after suing the NFL, the *Green* Plaintiffs filed an action in Missouri state court against the Cardinals alleging common law tort and negligence-based causes of action for the *same* purported physical injuries on which they sue the NFL in MDL 2323. (Compl., *Green, et al.* v. *Arizona Cardinals Football Club LLC*, No. 1422-CC000005 (Mo. Cir. Ct. Dec. 31, 2013); *see also* Am. Pet., *Green* (Jan. 10, 2014) (the "*Green* Action"). Consequently, the *Green* Action is a Related Lawsuit. The Settlement Agreement defines a Related Lawsuit to include an action brought "against one or more Released Parties . . . in any . . . state court . . . related to the allegations, transactions, facts, matters, occurrences, representations or omissions involved . . . in the [MDL] Class Action Complaint." (Settlement Agreement at § 2.1(zzz). The allegations in the *Green* Action, which alleged the same purported injuries based on alleged fraud and negligence committed by a Member Club of the NFL, clearly relate to the allegations in the MDL.

In short, if the proposed settlement is finally approved and the *Green* Plaintiffs do not opt out, their claims against the Cardinals in the *Green* Action will be released in their entirety.

If allowed to proceed with their case in Missouri at this time, pending motions and discovery in the state court case could affect the ultimate resolution of the case before this Court. On July 3, 2014, the Cardinals filed a dispositive motion to dismiss the *Green* Action that asserts that each of the common law tort claims are untimely and that certain of the claims are insufficiently pled. (*See* Mot. to Dismiss, *Green* Action (July 3, 2014).) That motion remains pending before the Missouri state court. Separately, the *Green* Plaintiffs have issued a series of interrogatories and document requests on the Cardinals (attached as Exhibits A and B to the Declaration of Douglas M. Burns). In part, these discovery requests seek: information deriving from the NFL and dating back nearly one hundred years, including (i) documents relating to

4

concussions, and (ii) documents created and/or maintained by any NFL internal working group, committee, or task force charged with researching concussions.  The discovery requests also seek information regarding Settlement Class Members that are not plaintiffs in the *Green* Action.[3]

The *Green* Plaintiffs currently are enjoined, however, from prosecuting their case in Missouri.  At the same time the Court ordered preliminary approval of the Class Action Settlement, the Court issued an appropriately tailored stay and injunction enjoining Settlement Class Members from "continuing to prosecute . . . a Related Lawsuit . . . against Released Parties" until the Class Action Settlement is terminated or final approval is granted.  (Order at ¶ 6.)  On July 8, 2014, the Cardinals filed a Notice of Order Entered by Federal District Court with the Missouri state court alerting it to the injunction of the *Green* Action.  (*See* Notice of Order, *Green* Action (July 8, 2014).).  One week later, the *Green* Plaintiffs filed the motion before this Court seeking relief from the injunction by asking the Court to quash and/or modify the injunction to allow them to continue prosecuting their claims against the Cardinals.  (*See* Pls.' Mot. for Relief From Stay and Injunction at 1, MDL 2323, 12-md-02323, Doc. 6099 (July 15, 2014) ("Pls.' Mot.").)

---

[3] *See*, *e.g.*, Document Request #7 ("ALL DOCUMENTS RELATING TO CONCUSSION that were created and/or maintained by YOU and/or which were made available to YOU *by the NFL prior to 1988*.") (emphasis added); Document Request #13 ("ALL DOCUMENTS, including without limitation, ALL notes, agenda and meeting minutes, *created and/or maintained by any NFL internal working group and/or committee and/or task force charged with researching CONCUSSION* which were made available to YOU during the period *prior to 1988*") (emphasis added); Interrogatory #21 (IDENTIFY *each and every former CARDINALS football player*, including his name, position played, last known address and telephone number *whom you know was diagnosed with any neurological disorder,* including post-concussion syndrome, dementia, Alzheimer's, ALS, or Chronic Traumatic Encephalopathy") (emphasis added).

## ARGUMENT

### I.   THE COURT'S AUTHORITY TO ISSUE THE INJUNCTION IS NOT IN DISPUTE

The *Green* Plaintiffs do not dispute this Court's authority to issue the stay and injunction that is the subject of this motion.  Nor could they.

The All Writs Act authorizes courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).  While the Anti-Injunction Act limits a federal court's powers under the All Writs Act, it expressly authorizes a federal court to enjoin state court proceedings in certain enumerated instances, including "where necessary in aid of its jurisdiction." 28 U.S.C. § 2283.  The Supreme Court has long recognized that "some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case."  *Atlantic Coast Line R. Co.* v. *Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970).  More recently, the Third Circuit recognized that "district courts overseeing complex federal litigation are especially susceptible to disruption by *related actions* in state fora."  *In re Prudential Ins. Co. of Am. Sales Practices Litig.* ("*Prudential II*"), 314 F.3d 99, 104 (3d Cir. 2002) (emphasis added); *see also In re Diet Drugs*, 282 F.3d 220, 236 (3d Cir. 2002) ("In complex cases where certification or settlement has received conditional approval . . . the challenges facing the overseeing court are such that it is likely that almost any parallel litigation in other fora presents a genuine threat to the jurisdiction of the federal court.").

In the context of consolidated multi-district litigation ("MDL"), the injunction of concurrent state court *in personam* proceedings by the MDL transferee court is particularly justified in connection with the settlement process of complex litigation.  *In re Baldwin-United*

*Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 333 (2d Cir. 1985); *see also In re Diet Drugs*, 282 F.3d at 236 (explaining that "complicated, comprehensive settlements" in complex litigation seeking "to resolve as many claims as possible in one proceeding" embody "an enormous amount of time and expenditure of resources" and are "especially vulnerable" to state court actions that may frustrate the MDL transferee court's "efforts to craft a settlement").  Indeed, the Third Circuit has recognized that "a federal court entertaining complex litigation, especially when it involves a substantial class of persons from multiple states, or represents a consolidation of cases from multiple districts, may appropriately enjoin state court proceedings in order to protect its jurisdiction." *In re Diet Drugs*, 282 F.3d at 235-37 (holding that "[*a*]*ny* state court action that might interfere with the District Court's oversight of the settlement" after conditional class certification and preliminary settlement "was a serious threat to the District Court's ability to manage the final stages of the complex litigation").

## II.    THE GREEN PLAINTIFFS ARE NOT UNDULY PREJUDICED

The *Green* Plaintiffs are not unduly prejudiced by the injunction ordered by the Court. "It is undisputed that if the Settlement is finally approved, all of the cases that would be subject to the injunction would become moot absent timely and valid opting out by the involved Settlement Class member on an individual basis." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2012 WL 5055810, at *12, 14 (D. Minn. Oct. 18, 2012)  (thereby holding that plaintiffs in the enjoined lawsuits would not "be unduly prejudiced by a temporary injunction pending the final fairness hearing"); *In re In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2011 WL 2313866, at *7 (E.D. La. June 9, 2011) ("Notably, the stay is only temporary and contingent upon the successful final approval by the Court of the [MDL Settlement] Agreement; thus, in the

case the Court does not give its final approval, [movant] will then be free to pursue its state court case against [defendant], and if the Agreement is finally approved then presumably [movant] will benefit as a class member or choose to opt-out.").

The ability of the *Green* Plaintiffs to opt out of the Class Action Settlement and pursue the Missouri state court action when the opt out becomes effective is "consistent with considerations of federalism and comity." *See In re Diet Drugs*, 292 F.3d at 239.

## III.   PLAINTIFFS SHOULD NOT BE EXCLUDED FROM THE INJUNCTION

The *Green* Plaintiffs argue that the Court's injunction should not apply to them, even if it is otherwise authorized. Their arguments are without merit. *First*, the *Green* Plaintiffs ignore the standard of review applicable to their claims and are unable to meet that standard—manifest injustice or extreme and unexpected hardship. *Second*, the *Green* Plaintiffs' argument that the injunction is not appropriately tailored ignores the details of the injunction itself, which are fully consistent with Third Circuit precedent. *Third*, the *Green* Plaintiffs' argument that only parallel class actions can pose a threat to the jurisdiction of a federal court overseeing a class action settlement is unsupported by any precedent. Each argument is addressed in turn.

### A. Standard of Review

As an initial matter, the *Green* Plaintiffs have failed to identify the Federal Rule of Civil Procedure pursuant to which they bring their motion seeking "relief" and "to quash and/or modify" the Court's Order. (Pls.' Mot. at 1.) Presumably, the *Green* Plaintiffs move under either Rule 59(e) (altering or amending a judgment) or Rule 60(b) (relief from a judgment or order). *See Boone* v. *Daughtery*, 2013 WL 5836329, at *1 (W.D. Pa. Oct. 30, 2013) ("A motion for reconsideration may be filed pursuant Federal Rule of Civil Procedure 59(e) or Federal Rule of Civil Procedure 60(b).").

Regardless of which Federal Rule of Civil Procedure applies, the *Green* Plaintiffs fail to satisfy the necessary showing to succeed on their motion.   Under Rule 59(e), a party must establish that the Court made a *manifest* legal error.  *Max's Seafood Café* v. *Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999) ("The purpose of a motion for reconsideration… is to correct manifest errors of law or fact . . . .") (quotations omitted);  *Lazaridis* v. *Wehmer,* 591 F.3d 666, 669 (3d Cir. 2010) (same).[4]  Similarly, Rule 60(b) is "extraordinary relief" appropriately relied upon only in "exceptional circumstances."  *Coltec Indus., Inc.* v. *Hobgood*, 280 F.3d 262, 273 (3d Cir. 2002) (quotations omitted).  The moving party bears the burden of showing that relief is necessary to avoid "extreme and unexpected hardship."  *Mayberry* v. *Maroney*, 558 F.2d 1159, 1163 (3d Cir. 1977); *In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig*., MDL 1712, 2011 WL 6046737, at *5 (E.D. Pa. Dec. 6, 2011).  As discussed below, the *Green* Plaintiffs cannot make either showing here.

**B.      The Injunction Is Tailored Appropriately for the Class Action Settlement**

The *Green* Plaintiffs unfairly and inaccurately imply that the injunction ordered by the Court is overbroad.  Specifically, they assert that "sweeping" injunctions that stay "all existing state court actions without an assessment of the character of each action and the level of interference actually threatened" are "never appropriate."  (Pls.' Mot. at 8-9.)  The *Green* Plaintiffs further imply that because "there was no assessment made of the character of *Green* and the level of interference actually threatened" the Court's injunction was issued in error.  Both arguments are wrong.  The injunction ordered by this Court specifically addressed the character of the covered actions in line with substantial federal case law precedent.

---

[4] Alternatively, the moving party may argue an intervening change in the controlling law or the availability of new evidence.  *Max's Seafood Café*, 176 F.3d at 677.  The *Green* Plaintiffs do not advance either argument.

Consistent with the Third Circuit's guidance in *In re Diet Drugs* "to carefully tailor such injunctions to meet the needs of the case" "[b]ecause an injunction must be *necessary* in aid of jurisdiction," this Court specifically limited its injunction to prevent Settlement Class Members from prosecuting "a Related Lawsuit . . . against Released Parties" until the Class Action Settlement is terminated or final approval is granted.  Order at ¶ 6; *In re Diet Drugs*, 282 F.3d at 238.  In this manner, the Court limited the injunction to parties in cases that are also part of the Class Action Settlement—and thus have the potential to interfere with the complex settlement process.  As important, the Court similarly limited the duration of the injunction to minimize prejudice to the enjoined parties.

The *Green* Plaintiffs do not and cannot explain how such a tailored injunction is "never appropriate."  (Pls.' Mot. at 8-9.)  Federal courts routinely issue such temporary, categorical injunctions of related litigation in conjunction with the class action settlement process of complex litigation.  *See*, *e.g.*, *In re Baldwin-United Corp.*, 770 F.2d at 336-40 (affirming injunction of any action or proceeding against MDL defendants that "may in any way affect the right of any plaintiff or purported class member in any proceeding under" the MDL); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2012 WL 5055810 at *11 (ordering temporary injunction "prohibiting Settlement Class members from participating in any other proceeding in any jurisdiction based on or relating to corrosion or potential corrosion of the [product at issue in the settlement] during the notice and opt-out period between preliminary approval and the final fairness hearing" of MDL class action settlement and noting that "[t]his type of injunctive relief is commonly granted in preliminary approvals of class-action settlements pursuant to the All Writs Act and the Anti-Injunction Act"); *In re In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2011 WL 2313866 at *1 (staying prosecution of "Related Actions" against the MDL

defendant, insurers and the other settling defendants during the Rule 23 class action settlement process); *Kaufman* v. *Am. Exp. Travel Related Serv. Co.*, *Inc.*, 264 F.R.D. 438, 450 (N.D. Ill. 2009) (stating "[d]istrict courts often issue injunctions against related state proceedings when a settlement has been at least preliminary approved."); *Nienaber* v. *Citibank (South Dakota) N.A.*, 2006 WL 2850535, at *4 (D.S.D. Sept. 26, 2006) (enjoining settlement class members from prosecuting "against the Released Parties . . . any action or proceeding in any court . . . asserting any of the Released Claims" as "necessary to protect and effectuate the Settlement, this Preliminary Approval Order, and this Court's flexibility and authority to effectuate this Settlement and to enter Final Judgment when appropriate").

Even if the Court were required to "assess the character of Plaintiffs' action or the level of interference actually threatened" at the time of its Order —as the *Green* Plaintiffs incorrectly argue[5]—the facts and circumstances of the Class Action Settlement and the Related Litigation (the *Green* Action) support the Court's legitimate exercise of its authority to issue the injunction. (*See*, *infra*, Section IV.)

### C.   The Injunction Is Valid as Applied to State Court Individual Actions

The *Green* Plaintiffs also make the unsubstantiated assertion that "individual actions, as opposed to parallel class actions, **do not** pose a threat to the jurisdiction of a federal court overseeing an impending class action settlement."  (Pls.' Mot. at 9.)  But neither the Third Circuit nor any other federal circuit court has issued such a blanket holding.  In fact, the Third

---

[5] Specifically, Plaintiffs state that the Court "must assess 'the character of [each existing] state court action' and 'the level of interference with the federal action actually threatened by [each] state court proceeding.'"  (Pls.' Mot. at 9 (purporting to quote *In re Diet Drugs*).  But the hard-bracketed additions inserted by Plaintiffs are misleading.  The Court in *In re Diet Drugs* did not create a blanket rule that federal courts issuing an injunction in conjunction with preliminary approval of class action settlement must assess each and every state court action that may be subject to the injunction.

Circuit in *Prudential II* specifically held that an injunction issued under the All Writs Act and the "in aid of jurisdiction" exception to the Anti-Injunction Act *was applicable* to an action brought by three individual plaintiffs. *Id.*, 314 F.3d at 104-05. As the Third Circuit explained:

> Undeniably, this one discrete case would have provided little disruption to an eight-million-member class action. But while the Illinois litigation would not have brought down the settlement on its own, permitting this kind of action would open up the possibility of a large, or even an overwhelming, number of collateral attacks on the settlement itself, especially given the eight-million-member class."

*Id.*

Other federal courts routinely issue such injunctions without any distinction between individual and class actions. *See, e.g., Newby* v. *Enron Corp.*, 302 F.3d 295, 301-03 (5th Cir. 2002) (affirming federal district court injunction under All Writs Act that barred law firm from filing *any* lawsuits in state court related to debtor without permission of the federal district court); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2012 WL 5055810 at *12 (specifically enjoining both individual and class actions); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2011 WL 2313866 at *7 (denying motion to alter or amend order to allow enjoined individual plaintiff to proceed with state court action).

The *Green* Plaintiffs ignore this body of case law and instead misleadingly cite Third Circuit decisions in purported support of their argument. The *Green* Plaintiffs primarily rely on *Carlough* v. *Amchem Prods., Inc.*, 10 F.3d 189 (3d Cir. 1993) for the proposition that the Third Circuit held it could enjoin a state court class action "in light of plaintiffs' ability to pursue litigation of their individual claims in the forum of their choice." (Pls.' Mot. at 9.) But the Third Circuit did not distinguish between class actions and individual actions in the manner that the *Green* Plaintiffs argue. Instead, the Third Circuit merely noted the uncontroversial fact that a

plaintiff who timely *opts out* of a federal class action can thereafter proceed to litigate his or her claims when the opt out becomes effective.  That right further justifies the federal court's ability to enjoin the settlement class member during the complex settlement process.  *Carlough*, 10 F.3d at 204 (holding "that given the establishment of an opt out period and the [settlement class members'] ability to opt out, it is within the sound discretion of the district court to enjoin their action in state court").  So too here.  If the *Green* Plaintiffs timely exercise their opt out rights, they can proceed with the *Green* Action as of the date the Court grants Final Approval of the Class Action Settlement or the Class Action Settlement is otherwise terminated.  (Opinion at ¶ 6.)

Moreover, *Drelles* v. *Metropolitan Life Insurance Co.*, 357 F.3d 344 (3d Cir. 2003)—which Plaintiffs cite generally in support of their argument that injunctions are not issued against plaintiffs pursuing individual claims (Pls.' Mot. at 10)—is inapposite.  *Drelles* addresses the issue of whether a MDL transferee court can enjoin discovery in a state court action on the grounds that it would disturb an already settled MDL litigation *after* a settlement class member's opt out of a MDL class action settlement becomes effective.  *Id*. at 347.  Here, again, the injunction at issue ceases to enjoin the *Green* Plaintiffs when any opt out becomes effective.  (Opinion at ¶ 6.)

## IV.     THE *GREEN* ACTION IS PRECISELY THE TYPE OF CASE THAT SHOULD BE ENJOINED

The *Green* Action is precisely the type of action that should be enjoined.  The Third Circuit has made clear that an injunction need not be based on absolute knowledge that a state court action will frustrate the orderly resolution of the federal litigation; rather, the state court action must "threaten[] to frustrate" the MDL settlement proceedings in a manner that may

"disrupt the orderly resolution" of the litigation.  *In re Diet Drugs*, 282 F.3d at 234 (quotations omitted).  In other words, the injunction is appropriate if the state court action has the "potential" to interfere in a way that impairs the MDL transferee court's flexibility and authority to decide the case.  *Id*. at 236.  But here, there is more than mere *potential* for disruption—if allowed to go forward, the *Green* Action *will* cause disruption in the MDL.

This inevitable disruption is evidenced by the pending discovery requests made by the *Green* Plaintiffs (let alone the potential for additional discovery requests issued to the Cardinals, the NFL, or individuals associated with the NFL), and the dispositive motion practice pending in the Missouri state court.

*First*, allowing the *Green* Plaintiffs, as Settlement Class Members, to seek discovery while the Court oversees the final approval of the Class Action Settlement will be highly disruptive.  Even a cursory review of the *Green* Plaintiffs' initial discovery requests to the Cardinals illustrates their aggressive desire to delve into the affairs of the NFL over countless decades and into the facts and circumstances surrounding potential claims of other Settlement Class Members.  For now, they seek documents from the Cardinals as detailed below.  But if allowed to prosecute their case, while there will be objections to their efforts to seek broad discovery that goes beyond their limited allegations, there will be no bar to their seeking discovery directly or indirectly from the NFL or from deposing witnesses associated with the NFL Parties or about the NFL Parties.  For example, even their initial discovery requests that have been issued to the Cardinals demonstrate the high probability of disruption:

- Document Request #7:  "ALL DOCUMENTS RELATING TO CONCUSSION that were created and/or maintained by YOU and/or which were made available to YOU *by the NFL prior to 1988*." (emphasis added);

- Document Request #13:  "ALL DOCUMENTS, including without limitation, ALL notes, agenda and meeting minutes, *created and/or maintained by any NFL internal working group and/or committee and/or task force charged with researching CONCUSSION* which were made available to YOU during the period *prior to 1988*." (emphasis added);  and

- Interrogatory #21:  IDENTIFY *each and every former CARDINALS football player*, including his name, position played, last known address and telephone number *whom you know was diagnosed with any neurological disorder, including post-concussion syndrome, dementia, Alzheimer's, ALS, or Chronic Traumatic Encephalopathy*." (emphasis added).

Setting aside the Cardinals' numerous objections to these discovery requests, the *Green* Plaintiffs' conduct in requesting such documents and information, standing alone, demonstrates their belief that the MDL 2323 allegations concerning the NFL and other Settlement Class Members are at issue.  Such discovery will be disruptive to the Class Action Settlement.  It may become the improper focus of other Settlement Class Members who could seek the same discovery.  Thus, the Court has the power to issue an injunction on this ground alone.  *See In re Prudential Ins. Co. of Am. Sales Practices Litig.* ("*Prudential I*"), 261 F.3d 355, 368 (3d Cir. 2001) (holding the All-Writs Act and exceptions to the Anti-Injunction Act "extend to discovery" and "give a district court the power to enjoin state discovery in order to protect the integrity of a federal court order").

Moreover, the pending motion to dismiss filed by the Cardinals in the *Green* Action seeks in part to dispose of the litigation on the grounds that the claims regarding injuries that occurred decades ago are untimely under the statutes of limitation.  Although the applicable

15

statute of limitations may differ for various Settlement Class Members, this defense, as recognized by this Court, is also a legitimate threat to the successful prosecution of claims in MDL 2323 because the same defense is at issue in MDL 2323.  (*See* Opinion at 10-11 ("The NFL Parties could also invoke a statute of limitations defense, given that many of the Retired NFL Football Players have not played for years, or even decades, and may have had their injuries or symptoms for the same amount of time.").)  Arguments and rulings on dispositive motion practice in related actions can threaten to disrupt the settlement resolution practice of complex federal litigation.  *See In re Diet Drugs*, 282 F.3d at 236 (holding that "while the potentially preclusive effects of the state action may not themselves justify an injunction, they might do so indirectly," including when "the possibility of an earlier state court judgment is disruptive to settlement negotiations in federal court"); *In re Chinese-Manufactured Drywall Prods. Liab. Litig*., 2011 WL 2313866 at *7 (denying motion to alter or amend order to allow enjoined individual plaintiff to proceed with state court summary judgment hearing on claims against MDL defendant and non-MDL defendant because "there [was] a possibility that [movant's] state court hearing and proceedings could affect and potentially disrupt the [MDL Settlement] Agreement"); *see also In re Baldwin-United Corp.*, 770 F.2d at 333 (affirming injunction of state court actions where district court held that such impending suits "are likely to impair th[e] federal court's jurisdiction and . . . to impair the judgments to be made in these on-going cases, [including] as to the adequacy and fairness of the settlements proposed by the parties to the settling actions").  Here, a state court ruling on the pending motion to dismiss, if adverse to the Cardinals, could incorrectly suggest to members of the settlement class preliminarily certified by this Court that they also will survive a motion to dismiss by raising similar arguments (even if under different applicable state law or under different circumstances).  On the other hand, a

favorable decision dismissing the *Green* Action threatens to upset the *status quo* in MDL 2323 and may affect the opt out decisions of Settlement Class Members.

For these reasons, the Court's Order enjoining the *Green* Action is appropriate and justified.

## **CONCLUSION**

In sum "[t]he complexity of this multidistrict class action in its mature stages—with a provisionally certified class and preliminarily approved settlement—entailed that the District Court required flexibility to bring the case to judgment." *In re Diet Drugs*, 292 F.3d at 239. The *Green* Plaintiffs have failed to demonstrate as a matter of law that the Court's order issuing the injunction was in error, let alone that it constituted a manifest injustice or caused them extreme and unexpected hardship. Instead, for the reasons stated herein, the Court's Order enjoining Settlement Class Members from litigating Related Lawsuits until the Court finally approves the Class Action Settlement (or the Settlement is otherwise terminated) is a legitimate, circumscribed, and necessary exercise of the Court's authority in overseeing the finalization of a global settlement in a complex MDL proceeding.

For the reasons set forth above, the Court should deny the *Green* Plaintiffs' motion and dispose of the motion without hearing or oral argument pursuant to Local Rule 7.1(f).

Dated:  August 1, 2014

Respectfully submitted,

/s/ Brad S. Karp
Brad S. Karp
Theodore V. Wells Jr.
Bruce Birenboim
PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Main: 212.373.3000
Fax: 212.757.3990
bkarp@paulweiss.com
twells@paulweiss.com
bbirenboim@paulweiss.com

and

Beth A. Wilkinson
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Main: 202.223.7300
Fax: 202.223.7420
bwilkinson@paulweiss.com

**Attorneys for National Football League and
NFL Properties LLC**

### ***Certificate of Service***

On August 1, 2014, I electronically filed a copy of the foregoing document through the CM/ECF system for the United States District Court for the Eastern District of Pennsylvania, which will send a notice of electronic filing to all counsel of record and make it available for viewing and downloading from the CM/ECF system.

/s/ Brad S. Karp
Brad S. Karp