IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323<br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>Plaintiffs, and<br><br>Richard Dent, Jeremy Newberry, Roy Green, J.D. Hill, Keith Van Horne, Ron Stone, Ron Pritchard, James McMahon, and Marcellus Wiley, *on behalf of themselves and other similarly situated,*<br><br>Proposed Intervenor-Plaintiffs<br><br>v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.<br><br>Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE**

Proposed Intervenor-Plaintiffs Richard Dent, Jeremy Newberry, Roy Green, J.D. Hill, Keith Van Horne, Ron Stone, Ron Pritchard, James McMahon and Marcellus Wiley, by and through undersigned counsel and pursuant to Rules 24(a) and (b) of the Federal Rules of Civil Procedure, file this memorandum in support of their Motion to Intervene and that Motion's accompanying pleading under Fed. R. Civ. P. 24(c), and state as follows.

## **INTRODUCTION**

On July 7, 2014 this Court granted preliminary settlement approval in the matter of *In re: National Football League Players Concussion Injury Litig.*, No. 2:12-md-02323-AB, MDL No. 2323 and *Keith Turner and Shawn Wooden v. National Football League and NFL Properties, LLC*, Civil Action No: 14-cv-0029 (the "Turner and Wooden Case") (collectively with MDL No. 2323, "the MDL"). The MDL Plaintiffs (sometimes the "NFL Players' Concussion Class") sought recovery for the "pathological and debilitating effects of mild traumatic brain injuries … caused by the concussive and sub-concussive impacts that have afflicted former professional football players in the NFL." Plaintiffs' July 17, 2012 Amended Master Administrative Long-Form Complaint ¶ 2 (ECF No. 2642) (the "MDL Am. Master Admin. Compl.").

A different putative class action against the NFL is pending in the Northern District of California before Judge William H. Alsup: *Dent, et al., v. National Football League*, Civil Action No. C 14-02324 WHA (the "*Dent* Litigation" or "*Dent*"). The *Dent* Litigation seeks relief for NFL player retirees' injuries and losses resulting from the NFL's illegal, medically improper and otherwise wrongful administration and provision of painkillers, controlled substances and other pharmaceutical and pharmacological agents. Amended Complaint ¶ 257, No. C 14-02324 (ECF No. 5) ("*Dent* Am. Compl.") (attached as **Exhibit A**).

Filed May 20, 2014, and with an initial Case Management Conference set for August 21, 2014, *Dent* has just started. With this Court's July 7 Order, the MDL appears close to conclusion. The claims of the MDL and *Dent* Plaintiffs are based on different factual predicates. Despite that important difference, the members of the putative classes in *Dent* and the MDL overlap substantially.

With its sweeping and open-textured language, Article XVIII (Releases and Covenant Not to Sue) of the Class Action Settlement Agreement of June 25, 2014 (ECF No. 6073-2) (the "MDL Settlement Agreement") may be interpreted to finally and forever release, discharge, waive and covenant not to sue the unrelated claims pled in *Dent*. But, as the Master Complaint in this MDL makes obvious, those *Dent* claims were neither pleaded nor litigated in the MDL. Nor does the MDL Settlement compensate or provide relief to MDL class members for the injuries and losses associated with the *Dent* claims.

In a July 11, 2014 letter, the *Dent* Plaintiffs asked of the MDL parties that their Release "be modified to clarify and confirm, expressly, that the allegations, facts, claims and circumstances in *Dent* are expressly preserved; are neither released, waived, discharged or otherwise limited or impaired; and are expressly excluded from [the Agreement's] discharge, waiver, release, and covenant not to sue provisions, and from [the Agreement's] definitions and related provisions and language." Letter from William N. Sinclair, Attorney for *Dent* Plaintiffs, to Counsel for the Parties (attached as **Exhibit B**). That letter also proposed a modified version of Section 18.6 that would expressly exclude the *Dent* claims from the released MDL claims.

On July 25, the League's MDL counsel responded, stating: "we cannot agree to your request and will oppose any application or objection that seeks to amend the Class Action Settlement in this fashion." Letter from Brad S. Karp to William N. Sinclair (attached as **Exhibit C**). That letter added: "[t]o the extent we correctly read the *Dent* complaint as seeking to recover for head, brain and/or cognitive injuries, these claims are released as part of the Class Action Settlement, and we decline to amend the Class Action Settlement to exclude them." *Id*. Finally, the League's letter stated that any such overlapping head, brain and/or cognitive injury claims alleged in *Dent* – apparently even to the extent such claims arise from the different

3

proximate cause of illicit painkiller and pharmacological administration – are now "enjoined." *Id*. Counsel for the plaintiffs in this MDL did not respond to Sinclair's Letter.

To protect their claims and those of the absent class members, the *Dent* plaintiffs are compelled to move to intervene in the MDL.

## BRIEF BACKGROUND

### I.  MDL Is About Concussions and Brain Injuries

On January 31, 2012, the MDL was established in this Court and the MDL Plaintiffs filed their Amended Master Administrative Long-Form Complaint on July 17, 2012. Unlike *Dent*, the MDL claims "arise from the alleged effects of mild traumatic brain injury allegedly caused by the concussive and sub-concussive impacts experienced by former NFL Football players." MDL Settlement Agreement, Recital B. The MDL Plaintiffs also allege that the NFL Defendants "breached a duty to NFL Football players to warn and protect them from the long-term health problems associated with concussions and that the NFL Parties allegedly concealed and misrepresented the connection between concussions and long-term chronic brain injury." *Id*.

### II.  *Dent* Is About the Illicit Administration of Painkillers

After filing their initial Class Action Complaint on May 20, 2014, the *Dent* Plaintiffs filed an Amended Complaint on June 4 (ECF No. 5). *See* Exhibit A. The *Dent* claims differ dispositively, legally and factually, from the MDL claims. As the accompanying Fed. R. Civ. P. 24(c) pleading details, *Dent* centrally alleges the NFL's violation of Federal criminal laws, detailing the League's free-wheeling supply and administration of controlled substances and other pharmaceuticals. Citing many and specific facts that do not merely "nudge" but drive their claims over the line from "conceivable to plausible" (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), the *Dent* Amended Complaint shows, not just tells, how the League "has

4

intentionally, recklessly, and negligently created and maintained a culture of Painkiller misuse, putting profit in place of players' health." *Dent* Am. Compl., ¶ 1.

Distinct from the head injuries, concussions, and neurological damage resulting from the concussive and sub-concussive head impacts sustained by former players at issue in the MDL (MDL Am. Master Admin. Compl. ¶¶ 51-61), the injuries the *Dent* Plaintiffs suffered include:

- Opioid Tolerance, Dependence and Addiction (*Dent* Am. Compl., ¶¶ 145-60);
- Severe and Permanent Musculoskeletal Injuries (*Id*. ¶¶ 161-69);
- Long-Term Health Consequences Caused by Prescription Pain Killers (*Id.* ¶¶ 170-76); and
- Health Effects Specifically Stemming from Use of Non-Steroidal Anti-Inflammatory Medications (*Id*. ¶¶ 177-84).

### III.   Proposed MDL Settlement and Release Reaches Painkiller Case Claims

The MDL Class Action Settlement Motion filed June 25, 2014 states that the "Parties desire to settle, compromise, and resolve fully all Released Claims."  MDL Settlement Agreement, Recital L.

Immediately relevant for intervention purposes is the scope of "all Released Claims." Art. II, styled "Definitions" in the revised MDL Settlement Agreement (p.4), includes definition (aaaa) of "'Released Claims.'"  *Id*. p. 13.  That definition incorporates the extremely comprehensive textual description of "'Released Claims' ... as set forth in Section 18.1 and 18.2." *Id*.  Section 18.1, styled "Releases," extends for over two pages of single spaced text describing the broad universe of finally and forever released and discharged claims.  *Id*. pp. 71-73.  Section 18.2, titled "Release of Unknown Claims," (*id*. p. 73) further widens the already vast scope of Released Claims.

Article XVIII of the Class Action Settlement, called "Release and Covenant not to Sue,"

5

(the "Release") extends over four pages. It includes not only Sections 18.1 and 18.2, but additional release provisions. Section 18.3 (*id*. pp. 73-74) removes the protection of California Civil Code Sec. 1542. Section 18.4 (*id*. p. 74) provides a belt-and-suspenders covenant not to sue on any Released Claim. Section 18.5 (*id*. p. 74) excludes certain "Insurance Coverage" claims from the release. Section 18.6 (*id*. pp. 74-75) excludes "Workers Compensation and NFL CBA Medical and Disability Claims" from the release.

> In pertinent part, the Release states:
>
> In consideration of the benefits described and the agreement and covenants contained in this Settlement Agreement, and by operation of the Final Order and Judgment, the Settlement Class, the Class and Subclass Representatives, and each Settlement Class Member, on his or her own behalf and on behalf of his or her respective predecessors, successors, assigns, assignors, representatives, attorneys, agents, trustees, insurers, heirs, next of kin, estates, beneficiaries, executors, administrators, and any natural, legal, or juridical person or entity to the extent he, she, or it is entitled to assert any claim on behalf of any Settlement Class Member (the "Releasors"), hereby waive and release, forever discharge and hold harmless the Released Parties, and each of them, of and from any and all past, present and future claims, counterclaims, actions, rights or causes of action, liabilities, suits, demands, damages, losses, payments, judgments, debts, dues, sums of money, costs and expenses (including, without limitation, attorneys' fees and costs), accounts, reckonings, bills, covenants, contracts, controversies, agreements, obligations, or promises, in law or in equity, contingent or non-contingent, known or unknown, suspected or unsuspected, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, liquidated or unliquidated, whether direct, representative, class or individual in nature, in any forum that the Releasors, and each of them, ***had, has, or may have in the future arising out of, in any way relating to or in connection with the allegations, transactions, facts, matters, occurrences, representations or omissions involved, set forth, referred to or relating to the Class Action Complaint and/or Related Lawsuits ("Claims"), including, without limitation, Claims:***
>
> (i) that were, are or could have been asserted in the Class Action Complaint or any other Related Lawsuit; and/or
>
> (ii) arising out of, or relating to, head, brain and/or cognitive injury, as well as any injuries arising out of, or relating to, concussions and/or subconcussive events (including, without limitation, prevention, diagnosis and treatment thereof) of whatever cause and its damages (whether short-term, long-term or death), whenever arising, including, without limitation, Claims for personal or bodily

>  injury, including disease, mental or physical pain or suffering, emotional or mental harm, or anguish or loss of enjoyment of life (and exacerbation and/or progression of personal or bodily injury), or wrongful death and/or survival actions as a result of such injury and/or exacerbation and/or progression thereof; and/or . . . .

*Id*. § 18.1(a)(i-ii) (emphasis added).

That language releases any and all claims, known or unknown, asserted or unasserted, that arise out of, relate to, or are in connection with any of the "allegations, transactions, facts, matters [and] occurrences" set forth explicitly, implicitly included in, or that remotely relate to the MDL Class Action Complaint or the Related Lawsuits. Among other things, the MDL Class Action Complaint and Related Lawsuits allege the fact of the Class Members' status as NFL players. *See* MDL Am. Master Admin. Compl. ¶ 2 ("This action arises from the pathological and debilitation effects of mild traumatic brain injuries caused by the concussive and sub-concussive impacts that have afflicted former professional football players in the NFL."); ¶ 99 ("since its inception and continuing into the present, the NFL has been in a position that affords it a special relationship to NFL players as the guardian of their health and safety."); ¶ 257 ("the NFL further breached its duty (which it had assumed as long ago as the 1930s) of reasonable and ordinary care to the Plaintiffs by failing to provide NFL players, including the Plaintiffs"). The MDL Class Action Complaint and Related Lawsuits also allege the matters of the injuries, immediate and latent, the Class Members suffered as NFL players.

Many express linguistic connections may be read by the NFL to bring the *Dent* claims within those encompassed in the NFL Release. A few examples suffice. Any claim, including the *Dent* claims, merely "relating to" an allegation in the NFL Complaint, such as a plaintiff's status as a former NFL player, are apparently released. *See* Release, § 18.1(a)(i-ii). Any claim, like the *Dent* claims, "arising out of" or, even more broadly, "in connection with," a plaintiff's

7

status as an NFL player – a "fact, matter and occurrence" alleged in the MDL Complaint – seem similarly open to an argument by the NFL that such claim is released. *Id*. And claims for injuries a plaintiff (such as the *Dent* plaintiffs) suffered while playing in the NFL – a "fact," "matter," or "occurrence" alleged in the MDL Complaint – seem similarly susceptible to a release argument by the NFL. *Id*.

Expanding still further the Release's scope, the specific examples of released claims are of the illustrative, not exhaustive, "including, but not limited to" variety. *See*, *e.g.*, *Cooper Distrib. Co., Inc. v. Amana Refrigeration, Inc.*, 63 F. 3d 262 (3d Cir. 1995) (Iowa law; "By using the phrase 'including, but not limited to,' the parties unambiguously stated that the list was not exhaustive;" citing *Jackson v. O'Leary*, 689 F. Supp. 846, 849 (N.D. Ill. 1988), as "noting that the phrase 'including, but not limited to' is 'the classic language of totally unrestricted (and hence totally discretionary) standards'" (other citations omitted)). *See also Smith v. Fidelity Consumer Disc. Co.*, 898 F. 2d 896, 901 (3d Cir. 1989) ("use of the term 'means' in defining material disclosures, rather than a phrase such as 'including but not limited to' or 'among other things,' compels the conclusion that the list of material disclosures was meant to be exhaustive rather th[a]n illustrative").

The first two illustrative, but not exclusive, examples of released claims include those directly at issue in the MDL: claims asserted in the MDL (*see* Release, §18.1(a)(i)) and concussion and head-injury related claims. *See* Release §18.1(a)(ii). That means the general release language preceding those two examples encompasses many more claims than those specifically alleged in the MDL.

Publicly discussed and formally alleged before the Preliminary Approval of the MDL Settlement, the *Dent* claims may in the NFL's view be those that arguably "could have been


Case 2:12-md-02323-AB   Document 6131-2   Filed 08/13/14   Page 9 of 19


asserted" in the MDL case. *See* Release, §18.1(a)(i). That fact betokens apparent inclusion of those claims in the MDL Release.

Although the MDL dealt only with concussion and sub-concussive injuries, the Release includes far more than only claims "arising out of, or relating to, head, brain and/or cognitive injury, as well as any injuries arising out of, or relating to, concussions and/or subconcussive events (including, without limitation, prevention, diagnosis and treatment thereof) of whatever cause and its damages (whether short-term, long-term or death)." Release, §18.1(a)(ii). Not a limitation on Released Claims, that phrase, which *follows* the "including but not limited to" expander, is but one example of Released Claims. Any cognitive injuries – which could, it seems, include mood disorders, attention deficit problems and myriad other mental problems – caused by painkiller administration may also be released. The only express limitations of the expansively broad Release are the carve-outs for Workers' Compensation claims and NFL CBA Medical and Disability Benefits.

## ARGUMENT

### I.  The *Dent* Plaintiffs Are Entitled to Intervene as of Right Under Rule 24(a)(2)

Rule 24(a)(2) of the Federal Rules of Civil Procedure governs intervention as of right:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).[1]

---

[1] Although they can and do, "[m]ovants…need not show that they have Article III standing as a prerequisite for intervention as of right." *Am. Farm Bureau Fed'n. v. U.S. E.P.A.*, 278 F.R.D. 98, 111 n. 6 (M.D. Pa. 2011) ("case law in the Third Circuit indicates that Article III standing is not a prerequisite for intervention as a matter of right" (citing *CSX Transp., Inc. v. City of Phila.*, 2005 WL 1677975, *2, 2005 U.S. Dist. LEXIS 14300, *5-6 (E.D. Pa. July 15,

Consistent with Fed. R. Civ. P. 1's mandate to interpret the Federal Rules to promote "just, speedy, and inexpensive" resolutions, established law compels liberal treatment of Rule 24(a) applications to intervene as of right. *See*, *e.g.*, *Nat'l Parks Conservation Ass'n. v. U.S. E.P.A.*, No. 13–2613, 2014 WL 3608523, at *3 (8th Cir. Jul. 23, 2014) ("A court ruling on a motion to intervene must accept as true all material allegations in the motion to intervene and must construe the motion in favor of the prospective intervenor."); *id.* at *5 ("Rule 24 should be construed liberally, with all 'doubts resolved in favor of the proposed intervenor.'" (quoting *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F. 3d 1080, 1081 (8th Cir. 1999)); *N. Cal. River Watch v. Fluor Corp.*, No. 10–cv–05105–MEJ, 2014 WL 3385287, at *14 (N.D. Cal. July 9, 2014) ("In general, the Court must construe Rule 24(a) liberally in favor of potential intervenors." (citing *Citizens for Balanced Use v. Mont. Wilderness Ass'n.*, 647 F. 3d 893, 896-97 (9th Cir. 2011)).

A movant seeking to intervene pursuant to this Rule must show: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter, by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *In re Cmty. Bank of N. Va.*, 418 F. 3d 277, 314 (3d Cir. 2005). The movant "must meet each requirement before being entitled to intervene." *Borkowski v. Fraternal Order of Police, Phila. Lodge No. 5*, 155 F.R.D. 105, 108 (E.D. Pa. 1994).

---

2005), as "noting that neither the Supreme Court nor the Third Circuit have indicated that Article III standing is a requisite to Rule 24 intervention and denying intervention without analyzing Article III standing," and saying that *Am. Auto Ins. Co. v. Murray*, 658 F. 3d 311, 318 n. 4 (3d Cir. 2011) "noted the circuit split on this issue, but once again declined to address the issue"). The *Dent* Plaintiffs demonstrate the requisite injury-in-fact: the MDL Release will forfeit valuable claims that have neither been litigated nor compensated. Causation of that injury is clear: the MDL Release's seeming inclusion of those unalleged, unlitigated and uncompensated claims. Intervention provides redressability, offering a means of protecting those claims.

### A. The Motion to Intervene Is Timely

First, the *Dent* Plaintiffs could not know what the MDL Release would entail until that language was submitted to, and approved by, the Court. When the Court preliminarily approved the Release's language, the *Dent* Plaintiffs first sought consensual resolution. *See* Exhibit B. Being told "nothing doing," the *Dent* Plaintiffs have timely filed this motion.

The Third Circuit has identified three-factors for a court to consider when determining the timeliness of the intervention motion: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F. 3d 361, 369 (3d Cir. 1995) (citing *In re Fine Paper Antitrust Litig.*, 695 F. 2d 494, 500 (3d Cir. 1982)).

"There is a general reluctance to dispose of a motion to intervene as of right on untimeliness grounds because the would-be intervenor actually may be seriously harmed if not allowed to intervene." *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F. 3d 938, 949 (3d Cir. 2012). The simple passage of time does not measure timeliness. *Id*. at 950. Rather, the Court's assessment "should be measured from the time the proposed intervenor knows or should have known of the alleged risks to his or her rights or the purported representative's shortcomings." *Id*. (citing *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977)); *see also Pereira v. Foot Locker, Inc.*, No. 07-cv-2157, 2009 WL 4673865, at *2 (E.D. Pa. Dec. 7, 2009) ("It is well established that timeliness is determined by the totality of the circumstances, not just the counting days."). Here, that trigger date is the Court's Order of Preliminary Approval – July 7, 2014.

Instructively, the Third Circuit recently addressed the District Court's denial of a motion to intervene "filed in connection with the remedy stage of [a] complex and important case"

11

where intervenors sought to challenge the "propriety of both the Settlement Agreement and class certification." *Benjamin*, 701 F. 3d at 947-48. No prejudice existed and the intervenors were timely despite having sought this relief during the approval of the Class Settlement Agreement rather than the merits proceedings. *See id*. at 951.[2] The *Benjamin* court noted that "[t]he fairness of the Settlement Agreement appears to be intertwined with the cohesiveness requirement because the Settlement Agreement constitutes the relief that Plaintiffs ultimately obtained in this litigation." *Id*. at 950-51 ("'[e]ven after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation'" (quoting *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).

Ultimately, the *Benjamin* court vacated the District Court's certification of the class and approval of the Settlement Agreement, holding: "we believe that Appellants are entitled to participate as intervenors in the remedy stage of this case and – as intervenors – should thereby have the opportunity to challenge the parties' Settlement Agreement and to seek decertification of the underlying class." *Id*. at 948. *See also*, *e.g*., *Smith v. Sandals Resorts Int'l, Ltd*., No. 07-cv-03695, 2010 WL 9073572, at *1 (E.D. Pa. Feb. 3, 2010) (motion timely where intervenor moved "soon after he was informed of the settlement and its terms").

The *Dent* Plaintiffs have moved promptly to protect their rights. Rather than running straight to the Court after the MDL Class Settlement Agreement was preliminarily approved on July 7, 2014, the *Dent* Plaintiffs first wrote to counsel on July 11 seeking to resolve the dispute over the NFL's interpretation of the Release by modifying some of the Release's language and a

---

[2] *See Mountain Top* at 370 (rejecting claim that allowing intervention after settlement negotiations occurred "would essentially "deep six" any possible settlement;" "[e]ven if we were to accept the . . . argument that intervention would prejudice settlement negotiations, that prejudice would not be attributable to any time delay.")

12

carve-out of the *Dent* litigation. The NFL flatly said "No."

With confirmation of the NFL's seeming view that the Release may result in impairing the *Dent* class's interests, both by releasing *Dent* claims and enjoining the prosecution of claims for "head, brain and/or cognitive" injuries that arise out of the NFL's provision and administration of painkillers and other drugs rather than from concussions and sub-concussive impacts (*see* Exhibit C), the *Dent* Plaintiffs timely move to intervene.

### B. *Dent* Plaintiffs Possess a Legally Cognizable Interest

An intervenor must demonstrate its interest in the litigation is "a legal interest as distinguished from interests of a general and indefinite character." *Harris v. Pernsley*, 820 F. 2d 592, 601 (3rd Cir. 1987); *see*, *e.g.*, *Mountain Top*, 72 F. 3d at 366 ("a mere economic interest in the outcome of the litigation is insufficient to support a motion to intervene"). "A proposed intervenor's interest need not be a legal interest, ***provided that he or she will be practically disadvantaged by the disposition of the action***." *Benjamin* at 951 (emphasis added). In *Kleissler v. U.S. Forest Service*, a Third Circuit panel explained:

> [T]he polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote. Due regard for efficient conduct of the litigation requires that intervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought. The interest may not be remote or attenuated.

157 F. 3d 964, 972 (3d Cir. 1998).

As substantial as they are obvious, the interests of the *Dent* Plaintiffs, many of whom have an interest in the MDL litigation, also include ensuring the preservation of their very different *Dent* claims. *See*, *e.g.*, *Aurora Loan Servs., Inc. v. Craddieth*, 442 F. 3d 1018, 1022 (7th Cir. 2006) ("applicant's interest must be one on which an independent federal suit could be based"). Further confirming the requisite interest for intervention, many *Dent* class members

would, absent opt-out, be bound by final judgment in the MDL case.  *See*, *e.g.*, *City of Emeryville v. Robinson*, 621 F. 3d 1251, 1260 (9th Cir. 2010) (interest in preserving state law contribution rights sufficed for intervention in CERCLA case).

The Third Circuit has recently reaffirmed that "proposed intervenors need not possess an interest ***in each and every aspect of the litigation***."  *Benjamin* at 951 (emphasis added).  For example, proposed intervenors "are entitled to intervene ***as to specific issues*** so long as their interest in those issues is significantly protectable."  *Mountain Top*, 72 F. 3d at 368 (emphasis added).  It is therefore "'appropriate in certain cases to conduct a two-step examination, separately evaluating whether the applicant has a right to intervene at the merits stage and ***whether he or she may intervene to participate in devising the remedy***.'"  *Benjamin* at 951 (emphasis added) (quoting *Brody v. Spang*, 957 F. 2d 1108, 1116 (3d Cir. 1992)).

Here, intervening at the remedy stage is appropriate.  The *Dent* Plaintiffs possess a cognizable and legal interest in preserving their *Dent* claims in the face of the MDL Release by which the NFL may seek to claim releases those claims without pleading, litigation or consideration.  *See, e.g., Benjamin* at 952 (considering terms of class settlement agreement, court found proposed intervenors "possess 'a sufficient interest' in the remedy stage of the litigation."); *Mountain Top* at 367-68 (beneficiaries of express trust have cognizable interest "in seeing that the assets of the trust are not diverted in a manner that will defeat the purpose of the trust" as well as "an interest in being heard with respect to the disposition of that fund").

Because absent *Dent* class members – perhaps thousands – are currently within the MDL Class, the proposed intervenors' interest at the remedy stage is neither indirect nor attenuated.  *See*, *e.g.*, *Pereira*, 2009 WL 4673865, at *3 ("based on the fact that Cortes plaintiffs will be asked to opt-in to the Pereira action and become members of the Pereira class, Cortes plaintiffs

14

have a sufficient legal interest in the Pereira action"). Such an interest in the remedy stage of the MDL suffices to support intervention as of right under Rule 24(a)(2).

### C. *Dent* Plaintiffs' Interests May Be Impaired by MDL Settlement

To satisfy the third requirement, the proposed intervenor "must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene." *Harris*, 820 F. 2d at 601. Would-be intervenors need not demonstrate with certainty that their interests will be impaired. Intervenors need only show that, as a practical matter, their interests "may be" impaired. *See*, *e.g.*, *Benjamin* at 948. Because the expansive MDL Release does not just "threaten" but may be argued by the NFL to extinguish the *Dent* claims, the *Dent* Plaintiffs have "demonstrate[d] . . . a tangible threat to a legally cognizable interest" sufficient to trigger "'the right to intervene.'" *Id.* at 951 (quoting *Harris* at 601). Absent intervention, the NFL might subsequently argue in *Dent* that the *Dent* plaintiffs acquiesced to the NFL's position concerning the *Dent* claims and the MDL Settlement Agreement's broad language.

In *Benjamin*, the Third Circuit "determine[d] that, given the possible effects of the Settlement Agreement, Appellants possess 'a sufficient interest' in the remedy stage of the litigation and that their 'interest may be affected or impaired as a practical matter' by the disposition of this distinct stage of this complex yet important case." *Id.* at 957. The breadth of the MDL Release, confirmed by the League's MDL Counsel's Letter (*see* Exhibit C) threatens the extinction, not just the diminishment, of the *Dent* Plaintiffs' claims. Absent intervention, the *Dent* Plaintiffs may be barred from pursuing their as yet unlitigated and uncompensated claims, which are based on very different factual predicates, and asserted in very different claims, from those in the MDL. Intervention permits the *Dent* Plaintiffs to demonstrate that any such interpretation of the MDL Release would violate black letter law. *See Wal-Mart Stores, Inc. v.*

*Visa U.S.A., Inc.*, 396 F. 3d 96, 106 (2d Cir. 2005) ("Plaintiffs' authority to release claims is limited by the 'identical factual predicate' and 'adequacy of representation' doctrines."); *accord Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 376-77 (1996) ("'In order to achieve a comprehensive settlement that would prevent relitigation of **settled questions at the core of a class action**, a court may permit the release of a claim based on the **identical factual predicate** as that underlying the claims in the settled class action . . .'") (emphasis added); *see also Nat'l Super Spuds Inc., v. N.Y. Mercantile Exch.*, 660 F. 2d 9, 18 n.7 (2d Cir. 1981) (Friendly, J.) (reversing settlement approval where it released claims "depend[ing] not only upon a **different legal theory** but upon **proof of further facts**") (emphasis added); *Newby v. Enron Corp.*, 394 F. 3d 296, 305 n.15 (5th Cir. 2004) (commenting that the proposed settlement complied with *Super Spuds* because it "grants releases only for claims within the set of those **arising out of the facts asserted** in the Consolidated Complaint") (emphasis added); *Grimes v. Vitalink Commc'ns Corp.*, 17 F. 3d 1553, 1564 (3d Cir. 1994) (noting that the Court's affirmance of the settlement approval "is not inconsistent with the holding of the *Nat'l Super Spuds* court that a state court class representative *cannot* release federal claims arising from a **different factual predicate** than that before the state court") (emphasis added); *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 700 (M.D. Fla. 2005) ("The Court may approve a settlement which releases claims not specifically alleged in the complaint **as long as they are based on the same factual predicate** as those claims litigated and contemplated by the settlement") (emphasis added); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ.1262 RWS, 2002 WL 31663577, at *11 (S.D.N.Y. Nov. 26, 2002) (noting that "class action settlements have in the past released claims against non-parties where, as here, the claims against the non-party being released were based on the **same underlying factual predicate** as the claims asserted against parties to the action being settled") (citing *Class*

16

*Plaintiffs v. City of Seattle*, 955 F. 2d 1268, 1287-89 (9th Cir. 1992)); *see also Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 578 (E.D. Pa. 2001) (striking down proposed class action settlement because there was "'inadequate consideration' for the broad release of claims proposed by the parties").

        **D.**      **The MDL Plaintiffs Do Not Adequately Represent *Dent* Plaintiffs' Interests**

Intervention as of right requires the movant to establish inadequacy of representation. The burden of that showing is "minimal." *Benjamin* at 958. "The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).

Neither the NFL nor the MDL Plaintiffs seem to care about representing the *Dent* Plaintiffs' interests. *See* Exhibit C. Confirming their disregard for the *Dent* plaintiffs' claims, the NFL Defendants contend that the Release bars any "head, brain and/or cognitive injuries" alleged in the *Dent* Amended Complaint – even those resulting from the very different *Dent* predicate alleged acts of pharmacological misconduct. *Id*. The NFL Defendants insist that *Dent* Plaintiffs who are also part of the MDL Class cannot pursue "any claims related to head, brain and/or cognitive injuries" even if strictly confined to those proximately caused by the misconduct at issue in the Dent case. *Id.*

Letting the NFL carry their water, the MDL Plaintiffs, copied on the NFL's response to the *Dent* Plaintiffs (*see* Exhibit C) have remained silent concerning the *Dent* Plaintiffs' request for modification of the MDL Release.

The MDL Plaintiffs inadequately represent the *Dent* Plaintiffs' claims. As the NFL would have it, the MDL Release would presumably forfeit the unlitigated and uncompensated *Dent* claims for nothing. The claims and goals of the *Dent* and MDL Plaintiffs diverge.

17

Seemingly unconcerned about the *Dent* claims, the MDL Plaintiffs seek to finalize their proposed Class Settlement Agreement at the apparent expense of the *Dent* claims. Particularly for those MDL class members who will receive nothing under the proposed MDL Settlement, this representation is inadequate.

## II.     The *Dent* Plaintiffs Also Satisfy Requirements for Permissive Intervention Under Rule 24(b)(1)(B)

Even where intervention as of right is unavailable, Rule 24(b)(1)(B) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). When deciding whether to permit "intervention under Rule 24(b), courts consider whether the proposed intervenors will add anything to the litigation." *Am. Farm Bureau Fed'n*, 278 F.R.D. at 111 (M.D. Pa. 2011).

The *Dent* Plaintiffs will protect the valuable *Dent* claims of absent class members in both *Dent* and the MDL. *See*, *e.g.*, *Beer v. XTO Energy, Inc.*, No. CIV-07-798-L, 2010 WL 2773311, at *5 (W.D. Okla. July 13, 2010) (granting intervention where "there is no question that the Intervenors' interests are not adequately represented by the existing parties, as the court's decertification order found that those parties and their counsel were not adequate representatives for the absent class members").

As described above, the MDL and *Dent* share common questions of fact and law relating to the remedy stage of this litigation – the scope and meaning of the Release terms in the Class Settlement Agreement. The motion is timely and the intervention will not unduly delay or prejudice the adjudication of the original parties' rights. The MDL Final Settlement Hearing is months away, and a ruling that the Release does not affect the claims raised in *Dent* will not in any way prejudice the MDL parties who never alleged or litigated the *Dent* claims, and who have

preliminarily settled the different MDL claims that arise out of different facts and circumstances. Permissive intervention is appropriate.

## CONCLUSION

The *Dent* Plaintiffs satisfy all criteria for intervention as of right under Rule 24(a)(2) and for permissive intervention under Rule 24(b) and respectfully request that this Court grant them leave to intervene as a matter of right or, in the alternative, permissively.

Respectfully submitted,

Date: August 12, 2014                                /s/

Ramsay M. Whitworth Esq. (Fed. Bar No. 85208)
rwhitworth@mdattorney.com
Stephen G. Grygiel (*Pro Hac* Pending)
sgrygiel@mdattorney.com
William N. Sinclair (*Pro Hac* Pending)
bsinclair@mdattorney.com
SILVERMAN|THOMPSON|SLUTKIN|WHITE|LLC
201 North Charles Street, Suite 2600
Baltimore, Maryland 21201
Tel:  (410) 385-2225
Fax:  (410) 547-2432

Stuart A. Davidson (*Pro Hac* Pending)
SDavidson@rgrdlaw.com
Mark J. Dearman (*Pro Hac* Pending)
MDearman@rgrdlaw.com
Robbins Geller Rudman & Dowd LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Tel:    (561) 750-3000
Fax:   (561) 750-3364

*Attorneys for Dent Plaintiffs*