## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | |
| IN RE: NATIONAL FOOTBALL | : | No. 2:12-md-02323-AB |
| LEAGUE PLAYERS' CONCUSSION | : | |
| INJURY LITIGATION | : | MDL No. 2323 |
| | : | |
| | : | Hon. Anita B. Brody |
| THIS DOCUMENT RELATES TO: | : | |
| | : | |
| All Actions | : | |
| | : | |

## CO-LEAD CLASS COUNSEL'S OPPOSITION TO
## MOTION TO INTERVENE

Co-Lead Class Counsel, on behalf of the Plaintiff Class, submit this opposition to the

Motion by Richard Dent, Jeremy Newberry, Roy Green, J.D. Hill, Keith Van Horne, Ron Stone,

Ron Pritchard, James McMahon, and Marcellus Wiley (hereinafter, referred to as the "Dent

Plaintiffs" or "Movants") To Intervene ("Motion To Intervene" or "Intervention Motion") [ECF

No. 6131].  Movants seek leave to intervene in order to "address," *i.e.*, to attempt to change, the

release language of the preliminarily approved Class Action Settlement Agreement as of June 25,

2014 ("Settlement Agreement") to carve out the claims alleged in their putative class action,

*Richard Dent, et al. v. National Football League*, Case No. 3:14-cv-02324 (N.D. Cal.) ("*Dent*

action").  The Dent Plaintiffs seek either intervention as of right under Fed. R. Civ. P. 24(a)(2),

or alternatively, permissive intervention under Fed. R. Civ. P. 24(b)(1)(B). Neither is appropriate

because Movants are absent Class members in this case and, as such, they can object and retain

full rights to appeal should this Court grant final approval, they can opt out or they can remain in

the Settlement Class.

1

While the caselaw is discussed in detail in the Argument section, *infra*, it is vital to note at the outset that the Movants ignore the United States Supreme Court case that is directly on point and supports denial of their Intervention Motion, namely, *Devlin v. Scardelletti*, 536 U.S. 1 (2002), which held that absent class member objectors have standing to appeal a district court's grant of final approval to a class action settlement without intervening.  Movants instead rely heavily upon a case which is completely inapposite, *Benjamin v. Department of Public Welfare*, 701 F.3d 938 (3d Cir. 2012), which held that non-parties who were specifically excluded from the class definition should have been permitted to intervene as of right at remedy stage of a class action litigation.  Since the Dent Plaintiffs are class members in this Multidistrict Litigation ("MDL"), *Devlin* controls and intervention should be denied.

## I.     PROCEDURAL BACKGROUND

Over three years ago, in July of 2011, the first retired NFL football players filed lawsuits against the NFL Parties alleging, *inter alia*, that the NFL Parties breached their duties to the players by failing to take reasonable actions to protect the players from the chronic risks created by concussive and sub-concussive head injuries and that the NFL Parties concealed those risks from the players.  In January of 2012, this Multidistrict Litigation ("MDL") was created.  Since that time, more than 5,000 players have filed similar lawsuits, which have been consolidated in this MDL.

In Case Management Order Nos. 2 and 3, this Court, after careful consideration of the qualifications of the lawyers appearing in this matter, appointed the Co-Lead Counsel, Liaison Counsel, Plaintiffs' Executive Committee, and Plaintiffs' Steering Committee.  [ECF Nos. 64, 72.]

On July 8, 2013, the Court ordered Plaintiffs and the NFL Parties to enter mediation and held in abeyance its ruling on the NFL Parties' motions to dismiss on preemption grounds.  The Court appointed retired United States District Court Judge Layn R. Phillips as the mediator, and ordered that Judge Phillips report back to the Court on or before September 3, 2013, with the results of mediation.  [ECF No. 5128.]

Following his appointment by the Court, Judge Phillips actively supervised and participated in the mediation process.  He regularly kept the Court apprised of the status of the process.  Judge Phillips presided over numerous negotiation/mediation sessions, including in-person and telephonic meetings with counsel, either jointly or in separate groups.  The mediation process culminated in the execution of a Term Sheet on August 29, 2013.  *See* Declaration of Mediator and Former United States District Court Judge Layn R. Phillips, attached to the Motion for Preliminary Approval and Class Certification ("Phillips Declaration") [ECF No. 6073-4; ECF No. 5634-4].

In addition to proposed Co-Lead Class Counsel for Plaintiffs, Christopher A. Seeger and Sol Weiss, proposed Class Counsel, Steven C. Marks and Gene Locks, and proposed Subclass Counsel, Arnold Levin and Dianne M. Nast, all highly experienced and qualified counsel, were brought into the mediation on behalf of Plaintiffs.  All of these counsel, who collectively have been retained separately by hundreds of class members, participated fully in the mediation.  Many of their clients herein also fall within the asserted class definition in *Dent*, as further described *infra*.[1]

 Upon receipt of Judge Phillips' report that a Term Sheet with principal terms of a settlement had been signed, the Court commented "I commend the parties and their counsel on

---

[1]  Several of the Movants filed Short Form Complaints in this MDL.  *See* ECF No. 157 (James McMahon);  ECF No. 277 (Keith Van Horne);  ECF No. 1338 (Ron Pritchard);  ECF No. 1572 (Roy Green);  ECF No. 1971 (J.D. Hill); and ECF No. 3304 (Ron Stone).

their extensive and good faith negotiations and thank Judge Phillips for his diligence in assisting the parties in reaching an agreement."  The Court further commented that "the interests of all parties would be best served by a negotiated resolution of this case.  The settlement holds the prospect of avoiding lengthy, expensive and uncertain litigation …."  [ECF No. 5235.]

On December 16, 2013, pursuant to FED. R. CIV. P. 53, the Court appointed Perry Golkin to serve as Special Master to assist the Court in evaluating the economic aspects of the proposed settlement in view of its financial complexities.  [ECF No. 5607.]

Following months of further negotiations on numerous specific details related to the agreement in principal reached in the Term Sheet, the Plaintiffs and the NFL Parties ultimately agreed upon a Class Action Settlement Agreement, and on January 6, 2014, Proposed Co-Lead Class Counsel, Class Counsel and Subclass Counsel moved for the entry of the Proposed Preliminary Approval and Class Certification Order.  [ECF No. 5634.]  The Class Action Complaint, *Turner, et al. v. National Football League, et al.*, C.A. No. 14-29, also was filed on January 6, 2014.

On January 14, 2014, this Court denied the motion without prejudice.  [ECF No. 5657.] The Court praised the "commendable effort" of the parties to reach the negotiated class action settlement as the result of "good faith, arm's length negotiations" [ECF No. 5657, at 10], but expressed concern as to the adequacy of the proposed $675 million Monetary Award Fund, in light of the 65-year lifespan of the Monetary Award Fund, the Settlement Class size of more than 20,000 members and the potential magnitude of the awards.  The motion was denied without prejudice so as to allow the parties to provide the Court "with the information needed to evaluate the fairness of the proposed settlement."  The Court directed the parties to share the documentation described in their submissions with the Special Master.  [ECF No. 5658.]

4

Guided by the Court's Memorandum Opinion and the Special Master, the parties worked from January to June to provide the Court with the assurance that "all Retired NFL Football Players who ultimately receive a Qualifying Diagnosis or their related claimants will be paid." *See* ECF No. 5657, at p. 10. These further analyses led to an uncapping of the deal and the new Settlement Agreement under which the NFL Parties must pay all valid claims for the next 65 years, and the Monetary Award Fund is no longer fixed at $675 million.

Plaintiffs filed a second Motion for Preliminary Approval on June 25, 2014. [ECF No. 6073.] This Court granted preliminary approval to the Settlement Agreement on July 7, 2014. [ECF Nos. 6083 & 6084.] Citing to the involvement of Judge Phillips and Special Master Golkin, *inter alia,* the Court concluded that the "hard-fought negotiations," were conducted in good faith and at arms' length. [ECF No. 6083, at 10.]

The Court recognized all of the significant benefits of the Settlement. *Id.* at 5-7. One of the benefits the Court identified was the fact that "[t]he Settlement does not require Settlement Class Members to prove that the Retired NFL Football Player's cognitive injuries were caused by NFL-related concussions or sub-concussive head injuries." *Id.* at 6. The Court also noted that in exchange for all of these benefits, the Settlement Class Members agreed to provide the NFL Parties with releases and further highlighted that "[i]n contrast to the previous version of the Settlement Agreement, the Settlement Class Members who receive Monetary Awards are not required to dismiss pending and/or forebear from bringing litigation relating to cognitive injuries against the National Collegiate Athletic Association ("NCAA") and any other collegiate, amateur, or youth football organization." *Id.* at 7. Thus, the scope of the release language from the settlement proposed in January as compared to that proposed in June, narrowed in scope.[2]

---

[2] In comparing the settlement agreement filed in January with that filed in June, additional measures were added to detect and prevent possible fraud in connection with the uncapping of the Monetary Award

Further highlighting the benefits of settlement versus continued litigation, the Court recognized "hurdles" and "significant legal challenges facing Plaintiffs" in proving their case-in-chief.  Among those challenges, the Court specifically noted that "Plaintiffs would be required to demonstrate that retired players' injuries were caused by NFL Football play, as opposed to unrelated causes, the natural aging process, or concussions or sub-concussive hits experienced in youth or college football."  *Id.* at 11.

The Court approved the proposed Notice Plan and ordered that Notice be disseminated. The Court also set forth specific procedures for opting out of the Settlement and for lodging objections, with an opt-out/objection deadline of October 14, 2014.  Objectors have the opportunity to submit written objections and to speak at the Fairness Hearing, scheduled for November 19, 2014.  The Court specifically noted that the Court will "consider comments on and objections to the proposed Settlement Agreement" which are submitted and/or presented at the Fairness Hearing.  [ECF No. 6084, at 5-7.]

The *Dent* case was commenced on May 20, 2014.  An Amended Complaint was filed on June 4, 2014.  *See* PACER Dkt. 14-2324 (N.D. Cal.), at ECF No. 5.  On August 29, 2014, Movants filed a Motion for Leave to File Second Amended Complaint.  *Id.* at ECF No. 55.  The proposed class in *Dent* has not been certified.

On July 11, 2014, counsel for the Dent Plaintiffs sent a letter to the parties to this case asking the parties to revise the language of the Settlement Agreement to specifically carve out the claims set forth in the then two-month old *Dent* action.  *See* ECF No. 6131-5.  As per the

---

Fund, but, the scope of the Release was not broadened.  The language pertaining to "Released Claims," "Released Parties," "Releases" and "Releasors" in the Definitions Section (Article II) was unchanged. Article XVIII, Releases and Covenants Not To Sue did not undergo any material changes except for the elimination of the release of amateur football entities.  Thus, when the Dent Plaintiffs filed their original complaint in May of this year, they were aware of the substantially similar release language agreed upon in connection with the then-proposed settlement.

operative Amended Complaint against the NFL, the Dent Plaintiffs claim that the improper administration of painkillers caused the putative class members to become addicted to such drugs, resulting in the mental and physical injuries which are attendant thereto.  Further, they claim that the administration of painkillers was designed to allow players to continue to play, even though injured, resulting in further injury to all parts of the body.  *See generally* PACER Dkt. 14-2324 (N.D. Cal.), at ECF No. 5.  However the Dent Plaintiffs' claims are continually evolving as evidenced by the most recent stated intent to file a Second Amended Complaint since the action was commenced less than four months ago.  *Id.* at ECF No. 55.  In addition to a re-tooling of the release language in this Settlement, the Dent Plaintiffs' letter sought dissemination of a new Notice and the parties' agreement on their intent to intervene.  *See* ECF No. 6131-5.

## II.    THE CLASS DEFINITIONS IN THIS MDL AND IN DENT

Movants admit that "the members of the putative classes in Dent and the MDL overlap substantially."  Memorandum in Support of Motion to Intervene ("Intervention Mem."), at 2 [ECF No. 6131-2, at 2].  "Already included within the MDL settlement class as retired NFL players, the *Dent* Plaintiffs are part of the MDL litigation."  *See* Dent Plaintiffs' Federal Rule of Civil Procedure 24(c) Statement of Claim in Support of Intervention [ECF No. 6131-1] ("Fed. R. Civ. P. 24(c) Statement"), at 2 n.1.  Indeed, as per the class definitions, all members of the putative class in *Dent*, are members of the certified class in this case.

 The certified Class in this MDL consists of:

(i) All living NFL Football Players who, prior to the date of the Preliminary Approval and Class Certification Order, retired, formally or informally, from playing professional football with the NFL or any Member Club, including American Football League, World League of American Football, NFL Europe League and NFL Europa League players, or were formerly on any roster, including preseason, regular season, or postseason, of any such Member Club or

league and who no longer are under contract to a Member Club and are not seeking active employment as players with any Member Club, whether signed to a roster or signed to any practice squad, developmental squad, or taxi squad of a Member Club **("Retired NFL Football Players")**;

(ii) Authorized representatives, ordered by a court or other official of competent jurisdiction under applicable state law, of deceased or legally incapacitated or incompetent Retired NFL Football Players ("Representative Claimants"); and

(iii) Spouses, parents, children who are dependents, or any other persons who properly under applicable state law assert the right to sue independently or derivatively by reason of their relationship with a Retired NFL Football Player or deceased Retired NFL Football Player ("Derivative Claimants").

*See* Preliminary Approval Order [ECF No. 6084, at 2-3] (emphasis added).

The Class definition in the *Dent* action, as per the Amended Complaint, is, in pertinent part:

All **retired NFL football players** ("Retirees"), including without limitation all Named Plaintiffs ("Named Plaintiffs") and their respective spouses, dependent children, and all person and entities, heirs, successors and assigns who would have rights under applicable state law to sue the NFL independently or derivatively as a result of their relationship with a retired NFL player ("Successors") (collectively the Retirees, Named Plaintiffs and Successors are the "Class Members") who, at any time during their NFL careers …

received or were administered:

(i) Prescription pain killers … (ii) Other anti-inflammatory agents and analgesics, such as NSAIDs, including without limitation Aspirin, Ibuprofen, … (iii) Local anesthetics, … (iv) Sleeping aids, …

from

(i) Any person or entity on, employed by, affiliated or associated with an NFL team training staff; or … (ii) …NFL team medical staff; …

without

(i) a valid prescription; or (ii) An objective and neutral medical examination and diagnosis …

or

(i) In amounts exceeding recommended dosages; or (ii) For periods exceeding recommended dosage periods; …

*See Dent* Amended Complaint at PACER No. 14-2324 (N.D. Cal.) ECF No. 5 at ¶ 257 (emphasis added).

So, since inclusion in this MDL requires only that the retired NFL Players have played NFL Football, necessarily, all putative class members in *Dent* are included as absent class members in this MDL.

III.   **ARGUMENT**

    A.   **MOVANTS HAVE FAILED TO MEET THE STANDARD FOR INTERVENTION AS OF RIGHT.**

To intervene as of right under Fed. R. Civ. P. 24(a), Movants must demonstrate all four of the following requirements: (1) the application for intervention must be timely; (2) the applicant must have a sufficient interest in the litigation; (3) the interest must be such that it may be affected or impaired, as a practical matter, by the disposition of the action; and (4) the interest must not be adequately represented by an existing party in the litigation. *United States v. Territory of the Virgin Islands,* 748 F.3d 514, 519 (3d Cir. 2014) (affirming district court's denial of intervention as of right and permissive intervention). *See also Brody v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992); *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987).  Clearly, Movants cannot satisfy requirement (3) and thus, the Court's inquiry should end there.  In the unlikely event that the Court finds Movants have met requirement (3), an analysis of why they also fail to meet requirement (4) is set forth below.[3]

    1.   **Movants' Interests Will Not Be Affected or Impaired, As a Practical Matter, by the Disposition of the Action.**

Movants claim that if they are not permitted to intervene, they will be "practically disadvantaged." [ECF No. 6131-2, at 13.]  They claim that they need show only a "threat" that their "interests may be impaired." *Id.* at 15.  They cite to *Benjamin, supra,* repeatedly, as support

---

[3]  Additionally, Movants seek to intervene, not as individuals, but "on behalf of themselves and other similarly situated Plaintiffs in the pending putative class action" in *Dent*.  [ECF No. 6131, at 1.]  No class has been certified in *Dent*.  Movants cite no authority on which they rely in attempting intervention of a separate uncertified class into an existing certified class case.

for why they should be permitted to intervene.  However, *Benjamin* is inapposite.  Unlike the proposed intervenors in *Benjamin*, Movants are absent class members and as such, they possess already the right to opt out, to object, to participate in the Fairness Hearing, and to appeal (should they object), without intervening, so their rights and interests already are protected.

In *Benjamin*, the class representative plaintiffs were individuals with mental retardation who were institutionalized in intermediate care facilities for persons with mental retardation ("ICFs/MR"), operated by the Department of Public Welfare ("DPW").  They brought a class action suit alleging that the DPW was violating Title II of the Americans with Disabilities Act by failing to offer and provide plaintiffs with the opportunity to receive services in an integrated community setting.  The individuals who sought to intervene were also individuals with mental retardation who were institutionalized in ICFs/MR, however, those individuals opposed community placement.  When plaintiffs filed an unopposed motion to certify a litigation class, the district court granted the motion, but, specifically excluded from the class those who opposed community placement.  When the intervenors initially sought to intervene during the liability phase of the litigation, the district court denied the motion to intervene.  On appeal, the Third Circuit affirmed and held that the proposed intervenors' interest in maintaining their current form of care was not in jeopardy, since they were **not** class members, having been explicitly excluded from the class that the district court had certified.  The Third Circuit "agreed with the District Court 'that Intervenors' interest in maintaining their current form of care is not directly in jeopardy in this litigation.'"  701 F.3d at 944.  Thereafter, the plaintiffs and DPW reached a settlement and intervenors again sought to intervene during the remedy phase of the litigation.  The district court again denied the intervention motion, but, this time the Third Circuit vacated the order, reasoning that the proposed intervenors' interest in maintaining their desired form of

care could be jeopardized should the DPW, as a result of having to provide community placement to the class members, be forced to close of some ICFs/MR due to limited resources. The Third Circuit on that appeal held that intervenors should be permitted to intervene as of right in order to give them the "opportunity to be heard insofar as the Settlement Agreement may have an impact on the available resources as well as the needs of other individuals with mental disabilities, especially other ICF/MR residents." 701 F.3d at 957. The holding of the *Benjamin* Court in a case involving non-class member intervenors and a defendant with limited resources does not support the Dent Plaintiffs' motion for intervention in this MDL. The Dent Plaintiffs already have been given the opportunity to be heard at the Fairness Hearing. *See* ECF No. 6084, at 7.

Movants, as absent class members, will not be impaired by the disposition of this MDL, regardless of the outcome. As a practical matter, if Movants are dissatisfied with the Settlement, they can opt out or object. Should they choose to opt out of the Settlement, they can pursue their claims in the *Dent* action, or they can separately sue the NFL. Either way, this Settlement does not affect them. Should they choose to object, the Court will hear their concern at the final approval hearing. The right to object comes with the further right to appeal should the Dent Plaintiffs be dissatisfied with the Court's determination on the issue. They need not have intervened in this case in order to possess the right to appeal. *See Devlin*, 536 U.S. at 14. *See also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.643 (2004) (citing to Devlin, and providing: "A class member may appear at the settlement hearing and object without seeking intervention. Objectors need not formally intervene to appeal matters to which they objected during the fairness hearing.").

Citing to *Devlin*, the United States District Court for the District of New Jersey in *Little-King v. Hayt Hayt & Landau*, No. 11-5621, 2013 WL 4874349 (D.N.J. Sept. 10, 2013), denied a motion to intervene filed by objectors who, like the Dent Plaintiffs, took issue with the language of the release, holding:

> Carmona Objectors complain that the release may operate to waive their potential claims …. Unnamed class members are parties who may appeal the approval of a settlement. … Moreover, Objectors had a chance at the fairness hearing to object to the settlement …. **Although approval of the settlement affects the Objectors, the Court's decision regarding the intervention motion will not finally dispose of any right or claim they might have differently than if they were allowed to intervene.** … Therefore, the Court finds that Objectors' rights with respect to the Settlement Agreement are fully preserved without intervention.

*Id.* at *21 (citations omitted) (emphasis added).  For the same reasons, several appellate courts likewise have affirmed the denials of motions to intervene.  *See, e.g., In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 199 (2d Cir. 2000) ("Because appellants remain free to file a separate action, they have not established that they will be prejudiced if their motion to intervene is denied.");  *Grilli v. Metropolitan Life Ins. Co., Inc*., 78 F.3d 1533, 1536, 1538 (11th Cir. 1996) (affirming district court's denial of motion to intervene on grounds that movants "could protect their interest either by opting out of the class and litigating separately, or by remaining the case . . . and, if they thought the proposed settlement was unfair, by objecting to it.").  Because Movants similarly will have an opportunity to object, speak at the fairness hearing and appeal, should the Court grant final approval, they cannot demonstrate that their interests will be prejudiced by the denial of their motion.

Movants, however, envision another option in addition to objecting or opting out, should they be permitted to intervene.  The outcome they desire is for this Court to rewrite the Settlement Agreement to incorporate the release language that they propose, upon their moving

12

for same. *See* Fed. R. Civ. P. 24(c) Statement [ECF No. 6131-1], at 2 n.1 (suggesting that if the Court determines their Fed. R. Civ. P. 24(c) Statement insufficient that they be permitted to "re-frame and re-file that document as a Complaint in Intervention for Declaratory Relief seeking excision of the *Dent* claims from the scope of the MDL Settlement Agreement's Release and Covenant Not To Sue."). This option would not be available to them, even if they were permitted to intervene.

Absent the agreement of the parties, "[t]he settlement must be approved or disapproved as a whole. … The court is not to dictate or rewrite the terms of the proposed settlement." *White v. National Football League*, 836 F. Supp. 1458, 1487-88 (D. Minn. 1993) (citing *Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986) and other cases). "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026-27 (9th Cir. 1998) ("Neither the district court nor this court have the ability to 'delete, modify or substitute certain provisions.' … The settlement must stand or fall in its entirety.").

Therefore, even if Movants could demonstrate that their interests would be affected or impaired if they were not permitted to intervene, which they cannot show due to their status as absent class members, their purpose for seeking intervention, *i.e.*, changing the release language, cannot be accomplished by their unilateral demand, absent agreement of the parties.[4] They can state objections to the language as objectors at the Fairness Hearing and this Court will either agree with them and deny final approval, or disagree with them and grant final approval, leaving them free to appeal the decision. The Court cannot change the deal.

---

[4] *See White*, 836 F. Supp. at 1488 (distinguishing situation where parties amend settlement and seek court approval, which is permissible, from situation where objector seeks to amend settlement, which is not).

Since *Devlin, supra,* controls the requirement (3) inquiry, and since Movants fail to meet requirement (3) that they will be affected or impaired, as a practical matter, by the disposition of this action, the intervention as of right should be denied.  However, out of an abundance of caution, Movants' failure to meet requirement (4) is explained below.

### 2.    Movants' Interests Already Are Represented Adequately by Counsel Who Were Appointed by the Court.

The burden is on the applicant for intervention to show that his interests are not adequately represented by the existing parties.  *Olden v. Hagerstown Cash Register, Inc*., 619 F.2d 271 (3d Cir. 1980) (per curiam).  There is a presumption "that representation is adequate when the individual 'attempting to intervene [is a] member[ ] of a class already involved in the litigation.'"  *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig*., 716 F.3d 1057, 1066 (8th Cir. 2013) (quoting *Jenkins ex rel. Jenkins v. Missouri*, 78 F.3d 1270, 1275 (8th Cir. 1996)).  *See Dewey v. Volkswagen Aktiengesellschaft*, 558 Fed. Appx. 191, 199 (3d Cir. 2014) (affirming district court's denial of class member's motion to intervene because "the mere fact that he objected is insufficient to rebut the presumption" of adequate representation).  "To overcome the presumption of adequate representation, the proposed intervenor must ordinarily demonstrate adversity of interest, collusion, or nonfeasance on the part of a party to the suit."  *In re Community Bank of Northern Virginia*, 418 F.3d 277, 315 (3d Cir. 2005).

The Eighth Circuit in *Uponor*, found adequate representation, and analyzed:

> The objectors first argue that the class representatives' claims were not "typical" because they omitted a cause of action available under California Civil Code § 896(a)(15).  That statute allows California residents to seek recovery without demonstrating a leak or differential water pressure.  We conclude the objectors have failed to demonstrate inadequate representation based on the California statute.  Class representatives need not share identical interests with every class member, but only "common objectives and legal and factual positions."  …. All class members here share the common objective of recovering costs associated with replacing defective brass plumbing fittings in their homes.

14

* * *

The objectors finally have provided no reason why they could not have simply
opted out of the class and instead chosen to pursue their claims separately under
California law.

716 F.3d at 1063-64.

"A difference of opinion concerning litigation strategy or individual aspects of a remedy
does not overcome the presumption of adequate representation." *Jenkins*, 78 F.3d at 1275; *see
also In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 2012 WL 2325798, at *4
(D. Minn. June 19, 2012) (same).  In fact, the presumption of adequate representation is virtually
non-rebuttable in these circumstances, as the Third Circuit found in *In re Community Bank*:

> To be clear, we are in no way suggesting that absent class members who merely
> express dissatisfaction with specific aspects of the proposed settlement or that
> attorneys (who, after finding one or more class members as clients, and wish to
> share in the forthcoming fee), have the right to intervene.  The goals of Rule 23
> would be seriously hampered if that were permitted.

418 F.2d at 315.  *See In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 (3d Cir.
2010)(holding that objectors were not entitled to intervene as a matter of right because, despite
differences in claims, allocation amounts and state laws, absent class members' interests were
adequately represented).  *See also American Pipeline & Constr. Co. v. Utah*, 414 U.S. 538, 550-
51 (1974)(noting that filing of individual motions to intervene was just type of activity Rule 23
was designed to avoid).

This Court preempted any attempt by the Movants to claim collusion or a lack of
diligence.  In January, when the initial settlement was proposed, this Court praised the
"commendable effort" of the parties to reach the negotiated class action settlement as the result
of "good faith, arm's length negotiations"  [ECF No. 5657, at 10.]  Again, upon granting
preliminary approval, in reference to the mediation before Judge Phillips and the further
presentations to Special Master Golkin and negotiations in connection therewith, the Court

15

noted that the parties "aggressively asserted their respective positions," "[t]he discussions were at times contentious," the negotiations were "hard-fought," "the proposed Settlement is the product of good faith, arm's length negotiations," and there was no "undue preferential treatment to any individual Settlement Class Member or Subclass."  [ECF No. 6083, at 10-11.]

Co-Lead Class Counsel have now negotiated an uncapped deal on behalf of the Class. Class members need not prove that NFL Football play caused their cognitive injuries, nor need they surmount the numerous other hurdles recognized by the Court, which they would face in litigation.  *Id.* at 11.  The release language, as per the Settlement Agreement, is part of the deal. The Court recognized that "Co-Lead Class Counsel, Class Counsel and Subclass Counsel possess adequate information concerning the strengths and weaknesses of Plaintiffs' claims against the NFL Parties."  *Id.* at 10.  Knowing that the members of this certified Class are also members of the putative class in *Dent* and *vice versa*, Co-Lead Class Counsel, Class Counsel and Subclass Counsel endorse the deal for the Class.  If Movants disagree, they should object or opt out.

The Dent Plaintiffs have failed to overcome the presumption that their interests are adequately represented by the existing parties.  Their motion to intervene as of right is unfounded.  Accordingly, the motion should be denied.

###### B.   PERMISSIVE INTERVENTION IS UNWARRANTED BECAUSE IT WOULD CAUSE UNDUE DELAY AND IT WOULD BE PREJUDICIAL TO THE PARTIES.

Permissive intervention, pursuant to FED. R. CIV. P. 24(b), requires consideration of the effect of intervention with respect to delay or prejudice to the rights of the original parties, together with the balance of such delay or prejudice, if it would occur, against the weight of the benefits to be derived from intervention.  *Jones v. United Gas Improvement Co.*, 69 F.R.D. 398, 401 (E.D. Pa. 1975).  "[T]he law is clear that permissive intervention has universally been left to

the sound discretion of the district court." *In re Safeguard Scientifics*, 220 F.R.D. 43, 49 (E.D. Pa. 2004).

As discussed *supra,* if allowed to intervene, it is Movants' intent to seek to rewrite the Settlement Agreement, which is impermissible.  Nevertheless, that is what they will seek to do, and the motion practice that would be involved would unduly delay the Fairness Hearing, currently scheduled for November 19, 2014, and prejudice the parties.  *See In re Johnson & Johnson Derivative Litig*., 900 F. Supp. 2d 467, 478 (D.N.J. 2010) (denying permissive intervention because granting motion to intervene will cause delay, as it would also require court to rule on proposed intervenor's motion to dismiss, as well as because intervenor had lodged objection and as such did not need to intervene to be able to appeal).  This Court has emphasized the importance of "quickly mak[ing] resources and compensation available for these retired players," and the need for "prompt relief."  [ECF No. 6083, at 17.]

There are no "benefits" to be derived from intervention by the Movants against which to balance this delay and prejudice.[5]  Movants are permitted to object or to opt out, absent intervention, and to appeal should their objection fail and this Court grant final approval.  *See Little-King*, 2013 WL 4874349, at *22 (denying permissive intervention because movants "have had a chance to be heard, both on paper and at final fairness hearing.  Further, they have an

---

[5]  The case Movants cite in support of permissive intervention, *Beer v. XTO Energy, Inc.*, No. CIV-07-798, 2010 WL 2773311 (W.D. Okla. July 13, 2010), is inapposite.  In that case, after class certification, the plaintiffs' attorneys filed a motion for summary judgment on behalf of the class representatives, in their individual capacity, rather than as class representatives, and the court noted that the named plaintiffs "demonstrated an ambivalent attitude toward the class," and "[t]heir failure to attend the class certification hearing evidenced indifference."  Further, the *Beer* Court noted that following the court's grant of summary judgment in their favor "called into question whether plaintiffs maintained a sufficient interest in the class to ensure their vigorous representation."  *Id.* at 2.  Also, the *Beer* Court noted that class counsel's briefing was "woefully inadequate."  *Id.*  Finally, in *Beer*, the intervention was not sought until after the court determined that the class representatives were inadequate and decertified the class.

opportunity to appeal.").  An intervention to attempt to alter the preliminarily approved

Settlement Agreement would be futile and should be denied.

IV.     **CONCLUSION**

      For these reasons, we respectfully request that the Motion To Intervene be denied.

Dated: September 2, 2014                                    Respectfully Submitted:


                              */s/ Christopher A. Seeger*
                              Christopher A. Seeger
                              **SEEGER WEISS LLP**
                              77 Water Street
                              New York, NY 10005
                              Phone:  (212) 584-0700
                              Fax:  (212) 584-0799
                              cseeger@seegerweiss.com

                              *Co-Lead Class Counsel*

                              Sol Weiss
                              **ANAPOL SCHWARTZ**
                              1710 Spruce Street
                              Philadelphia, PA 19103
                              Phone:  (215) 735-1130
                              Fax:  (215) 735-2024
                              sweiss@anapolschwartz.com

                              *Co-Lead Class Counsel*


                              *Class Counsel*

| | |
|---|---|
| *Steven C. Marks* | *Gene Locks* |
| *PODHURST ORSECK P.A.* | *LOCKS LAW FIRM* |
| *City National Bank Building* | *The Curtis Center* |
| *25 W. Flagler Street, Suite 800* | *Suite 720 East* |
| *Miami, FL 33130-1780* | *601 Walnut Street* |
| *Phone: (305) 358-2800* | *Philadelphia, PA 19106* |
| *Fax: (305) 358-2382* | *Phone: 866-562-5752* |
| *smarks@podhurst.com* | *Fax: (215) 893-3444* |
| | *glocks@lockslaw.com* |

### Subclass Counsel

| | |
|---|---|
| *Arnold Levin* | *Dianne M. Nast* |
| *LEVIN FISHBEIN SEDRAN & BERMAN* | *NAST LAW LLC* |
| *510 Walnut Street, Suite 500* | *1101 Market Street, Suite 2801* |
| *Philadelphia, PA 19106* | *Philadelphia, Pennsylvania 19107* |
| *Phone: (215) 592-1500* | *Phone: (215) 923-9300* |
| *Fax: (215) 592-4663* | *Fax: (215) 923-9302* |
| *alevin@lfsblaw.com* | *DNast@nastlaw.com* |
| *Counsel for Subclass 1* | *Counsel for Subclass 2* |

**<u>CERTIFICATE OF SERVICE</u>**

It is hereby certified that a true copy of the foregoing was served electronically via the

Court's electronic filing system on the 2 day of September, 2014, upon all counsel of record.

Dated: September 2, 2014

/s/ Christopher A. Seeger
Christopher A. Seeger