UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION : : : : : | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS : : : : |  |

### CO-LEAD CLASS COUNSEL'S RESPONSE TO DUERSON'S SECOND MOTION REQUESTING DISSEMINATION OF DATA

Absent Class Member, Tregg Duerson, Personal Representative of the Estate of David Duerson, deceased ("Movant" or "Duerson"), through his attorneys, Corboy & DeMetrio, P.C., moves for an Order directing Co-Lead Class Counsel to disseminate to *all* counsel of record *all* data utilized in reaching both the original proposed settlement announced on August 23, 2013 and the settlement preliminarily approved on July 7, 2014, and the settlement-related documentation requested in ECF Doc. 6101 ("Duerson Motion for Data") [ECF No. 6102 (emphasis in original)].  The referenced "ECF Doc. 6101" is Bloomberg LLP and ESPN, Inc.'s Amended Motion To Intervene To Seek Access to Documents and Data ("Bloomberg/ESPN Motion").

Co-Lead Class Counsel have responded separately to the Bloomberg/ESPN Motion and incorporate that response herein by reference.  Briefly, Co-Lead Class Counsel do not oppose the relief requested by the Bloomberg/ESPN Motion, that is, the disclosure of the actuarial report and tabulations that were provided to Special Master Perry Golkin, should the Court so direct. Co-Lead Class Counsel maintain the same position with regard to Movant's request for

dissemination of the documentation requested by Bloomberg and ESPN that we take in response to the Bloomberg/ESPN Motion.

Beyond requesting what was specifically requested by Bloomberg and ESPN, Movant broadly seeks "*all* data utilized by Co-Lead Counsel to help them reach the original proposed settlement as well as preliminarily approved class action settlement." [ECF No. 6102, at 1] Movant's papers are suspiciously silent as to the materiality or relevance of such open-ended discovery.  Movant submits no memorandum of law detailing exactly what data is needed, for what purpose and why such is germane to a decision whether to remain in the settlement class, object to the settlement, or to opt out, and the legal basis for same.  Instead, with his one-page motion, Duerson submits an Affidavit of his counsel, expressing counsel's "grave concerns," and "adopt[ing] the sound reasoning advanced by Bloomberg and ESPN," *see* Affidavit of Thomas A. DeMetrio ("DeMetrio Aff."), at ¶¶ 3, 6 [ECF No. 6102, at 2-3].  Further, Movant attaches his prior motion, filed on January 23, 2014, which similarly lacked a memorandum of law [Exhibit A;  ECF No. 6102, at 4-8;  ECF No. 5686],[1] and an article published in www.sportsonearth.com [Exhibit B, ECF No. 6102, at 9-21], which Movant's counsel alleges "summarizes some of the more serious deficiencies and inadequacies of the proposed settlement."  *See* DeMetrio Aff. at ¶ 4.  These "complaints" and the data allegedly required to make an informed decision about how to proceed going forward in the litigation are not remotely addressed by a general, broad-based, open-ended request for discovery.  While Movant wants *all* data Co-Lead Class Counsel has amassed in the two and one-half years since this MDL was created, he fails to articulate why these pertain to his position in a memorandum of law.

---

[1]  Co-Lead Class Counsel's response to Duerson's prior motion for the dissemination of all data is ECF No. 5699, filed on January 28, 2014.

There is no absolute right to discovery by objectors[2] to a proposed class action settlement. *In re Community Bank of Northern Virginia*, 418 F.3d 277, 316 (3d Cir. 2005); *In re Lorazepam & Clorazepate Antitrust Litig*., 205 F.R.D. 24, 26 (D.D.C. 2001). *See In re General Tire & Rubber Co. Sec. Litig.,* 726 F.2d 1075, 1084 n. 6 (6th Cir. 1984) ("While objectors are entitled to 'meaningful participation' in the settlement proceedings ... and 'leave to be heard' ... they are not automatically entitled to discovery or 'to question and debate every provision of the proposed compromise.'"); *In re Ford Motor Co. Bronco II Products Liability Litig*., MDL No. 991, 1994 WL 593998, at *3 (E.D. La. Oct. 28, 1994) ("Objecting class members do not, however, 'have an absolute right to discovery and presentation of evidence.'"); *In re Domestic Air Transp. Antitrust Litig*., 144 F.R.D. 421, 424 (N.D. Ga. 1992) ("Class members who object to a settlement of a class action do not have an absolute right to conduct discovery and presentation of evidence.").

The limitations on an objector's ability to obtain discovery are set forth in the Manual for Complex Litigation:

> Discovery should be minimal and conditioned on a showing of need, because it will delay settlement, introduce uncertainty and might be undertaken primarily to justify an award of attorney's fees to the objector's counsel. A court should monitor post[-]settlement discovery by objectors and limit it to providing objectors with information central to the fairness of the proposed settlement. A court should not allow discovery into the settlement-negotiation process unless the objector makes a preliminary showing of collusion or other improper behavior.

MANUAL FOR COMPLEX LITIGATION (FOURTH) ("MCL") § 21.643 (2004).

The Unites States Court of Appeals for the Third Circuit has recognized that this Court has the discretion to "employ the procedures that it perceives will best permit it to evaluate the fairness of the settlement." *In re Community Bank*, 418 F.3d at 316 (quoting *In re Prudential*

---

[2] Mr. Duerson has yet to object to or to opt out of the preliminarily approved settlement, as the deadline to do so is not until October 14, 2014.

*Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 563 (D.N.J. 1997)). "The objector does not have an absolute right to discovery and presentation of evidence. The court, in its discretion, may limit the discovery or presentation of evidence to that which may assist it in determining the fairness and adequacy of the settlement." A. Conte and H. Newberg, NEWBERG ON CLASS ACTIONS § 11.57 (4th ed. 2002).

Movant states no basis, reasonable or otherwise, for his evidentiary request. Certainly, the type of vague, overly broad, unduly burdensome and unexplained request by Movant that Co-Lead Class Counsel give all counsel separately representing absent class members "all data" that Co-Lead Class Counsel collected should not be permitted. *See In re Checking Account Overdraft Litig.*, 830 F. Supp.2d 1330, 1337 n.6 (S.D. Fla. 2011) (denying Objectors' motions for discovery because Objectors failed to "make any attempt to identify specifically or narrowly the precise discovery they were seeking or the reasons they were seeking such discovery. Rather, it was clear to the Court that these Objectors were seeking to engage in a broad 'fishing expedition.'"). *See also In re Lupron Marketing & Sales Practices Litig.*, MDL No. 1430, 2005 WL 613492, at *3-*4 (D. Mass. Mar. 16, 2005) (denying discovery to objectors who failed to specify why requested depositions were necessary to court adjudication of fairness of settlement). Since Movant articulates no basis for his broad, non-specific request, the reasonableness of the request cannot be evaluated.

Further, it appears that this overly broad and vague request for discovery may be designed to include documents and data related to the mediation and settlement negotiations, which is not permissible. The initial proposed settlement was mediated by the Court-appointed mediator, Layne Phillips, and the preliminarily approved Settlement Agreement was reached through the further settlement negotiations of the parties under the guidance of the Special

Master.[3]  The mediation and further settlement negotiations were conducted initially pursuant to the Court's confidentiality orders of July 8, 2013 [ECF No. 5128] and August 29, 2013 [ECF No. 5235],[4] and later pursuant also to the Court's January 14, 2014 Order directing disclosure to the Special Master, which further involved a confidentiality agreement signed by the Special Master.[5]  *See* Co-Lead Class Counsel's Response to Bloomberg/ESPN Motion.  "[O]bjectors are not entitled to discovery concerning settlement negotiations between the parties in the absence of evidence indicating that there was collusion between plaintiffs and defendants in the negotiating process."  *In re Domestic Air Transp. Antitrust Litig.*, 144 F.R.D. at 424 (citing *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir. 1987)).[6]  *See supra*

---

[3] Confidentiality is critical to the mediation process because it promotes the free flow of information that may result in the settlement of a dispute.  *See, e.g.*, Kenneth R. Feinberg, Mediation—A Preferred Method of Dispute Resolution, 16 Pepp. L. Rev. S5, S28–29 (1989).  Indeed, mediation is not effective unless parties are completely honest with the mediator.  *See In re Grand Jury Subpoena Dated Dec. 17, 1996*, 148 F.3d 487, 492 (5th Cir. 1998);  *see also  In re Teligent, Inc.*, 640 F.3d 53, 58 (2d Cir. 2011) ("Promising participants confidentiality in these proceedings 'promotes the free flow of information that may result in the settlement of a dispute.'") (collecting cases).  *Accord* Fed. R. Evid. 408.

[4]  The confidentiality imposed by the Court's Orders of July 8, 2013 and August 29, 2013 does not serve to transform any documents exchanged by the parties in connection with the mediation or further settlement negotiations or those submitted to the mediator into "judicial records."  *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 790 (3d Cir. 1994) ("Simply because a court has entered a confidentiality order over documents does not automatically convert those documents into judicial records accessible under the right of access doctrine.").

[5]  A party's reliance on the existing confidentiality of the process when the disclosure is made is also to be considered in determining whether disclosure is warranted.  *See supra, Pansy*, 23 F.3d at 790.

[6]  The documents related to settlement negotiations are not judicial records.  *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001) ("The status of a document as a 'judicial record,' in turn, depends on whether a document has been filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings.… While filing clearly establishes such status, a document may still be construed as a judicial record, absent filing, if a court interprets or enforces the terms of that document, or requires that it be submitted to the court under seal.").  Only the final settlement agreement, which was filed, is a judicial record.  "[A]ccess to settlement discussions and documents has no value to those monitoring the exercise of Article III judicial power by the federal courts.  The judge cannot act upon these discussions or documents until they are final, and the judge may not be privy to all of them.…In this case, before any of the draft settlement documents can result in judicial ratification or rejection, there must be a proceeding in open court, and the document sought to be acted upon by the judicial power will be placed on file and must become a public record.  The discussions and documents exchanged before an agreement has been reached in this case therefore play a negligible role in the trial judge's exercise of Article III judicial power until they are merged into a tentative final agreement for court action, thereby becoming public."  *United States v. Glens Falls Newspaper, Inc.*, 160 F.3d 853, 857

MCL at § 21.643.  *Accord* FED. R. EVID. 408.  Movant has not alleged collusion in the settlement negotiating process and, indeed, it was an "arm's length," "hard-fought," "good faith" process, overseen by the Mediator and the Special Master, as this Court already has recognized.  [ECF No. 6083, at 10.]

This "kitchen sink" request for all data could also encompass Co-Lead Class Counsel's work product, attorney-client privileged information and other documents and information, which are not subject to discovery.  *See* Notes of Advisory Committee on 2003 amendments to Rule 23(e)(2)("the court must provide an opportunity [for settling parties] to claim work-product").  Indeed, Co-Lead Class Counsel have undertaken their own independent investigation and retained and consulted their own experts.  That undertaking further included collecting privileged and otherwise protected documents from the clients of Class Counsel and Subclass Counsel, which included medical information, subject to the protections of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Public Law 104-91, 42 U.S.C. § 1320d-2.  Courts have recognized a privacy interest in keeping one's medical and mental health records confidential.  *See Whalen v. Roe*, 429 U.S. 589, 598 (1977).  *See also Olszewski v. Bloomberg L.P.*, No. 96 Civ. 3393(RPP), 2000 WL 1843236, at *2 (S.D.N.Y. Dec. 13, 2000).  The Duerson Motion for Data similarly encompasses Co-Lead Counsel's experts' and third parties'

---

(2d Cir. 1998) (prohibiting disclosure of settlement negotiation information and denying intervention by newspaper and reporter who sought to intervene in CERCLA action regarding town's water supply).  *See also In re September 11 Litig.*, 723 F. Supp.2d 526, 533 (S.D.N.Y. 2010) ("Confidential documents exchanged in discovery, negotiation, and mediation, and submitted in connection with the motion for approval of the property damage settlement will not be disclosed to the public.  These documents are preliminary materials that did not bear on my adjudication of the motion for approval.  They are not the type of document to which the public has historically had access nor would public disclosure enhance the function of settlement negotiations.  If any presumption of access attaches merely from the fact that these documents were submitted in the course of briefing on the motion for approval, it is small and outweighed by the chilling of settlement negotiations that could result from disclosure.").

proprietary information, which information is independently subject to protections.[7] *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994) (noting protections to trade secret information).

Additionally, where the objectors represent a small percentage of the class, the likelihood of the court granting their discovery requests decreases because the court will give great weight to the interests of the majority of the class members. NEWBERG ON CLASS ACTIONS § 11.57 (4th ed. 2002). *See also In re Lorazepam*, 205 F.R.D. at 27 n.5 (noting that fact that objectors represented only small number of thousands of class members "does not aid the movants' request"). Here, out of the approximately twenty thousand class members, only a handful are seeking discovery. The burden Movants seek to impose is disproportionate to the costs that would result in forcing compliance by Co-Lead Class Counsel.

Co-Lead Class Counsel submit that what the class members deciding whether to remain in the Class should do is to review the Class Action Settlement Agreement as of June 25, 2014 ("Settlement Agreement") and its Exhibits. If the Retired NFL Football Player has been diagnosed with a Qualifying Diagnosis, *i.e.*, he is a member of Subclass 2, the Class Member or his/her counsel should review the Injury Definitions [ECF No. 6087, at 105-110, Exhibit 1 to the Settlement Agreement], the Monetary Award Grid [ECF No. 6087, at 121-22, Exhibit 3 to the Settlement Agreement], and the Settlement terms, to determine his Monetary Award and then, the Class Member can decide whether the Settlement is a good deal. If the Retired NFL Football Player has not been diagnosed, *i.e.*, he is a member of Subclass 1, the Class Member similarly will have to decide whether he wants to remain in the Class and take advantage of the BAP benefits, and, if he ultimately develops a Qualifying Diagnosis during the term of the Settlement,

---

[7] While Co-Lead Class Counsel do not object to the release of the expert report and tabulations, we do oppose the release of the underlying data.

also to obtain a Monetary Award, *i.e.*, whether he wants to take advantage of the "insurance policy" that is the Settlement.  Additionally, Co-Lead Class Counsel, Class Counsel and Subclass Counsel remain available to discuss Settlement with Class Members and/or their individual counsel.

In conclusion, we defer to the Court as to how we should proceed concerning the request that is before the Court on the Duerson Motion for Data.

Dated:  September 2, 2014

>Respectfully submitted,
>/s/ Christopher A. Seeger
>Christopher A. Seeger
>SEEGER WEISS LLP
>77 Water Street
>New York, NY 10005
>Phone: (212) 584-0700
>Fax: (212) 584-0799
>cseeger@seegerweiss.com
>
>**Co-Lead Class Counsel**
>
>Sol Weiss
>ANAPOL SCHWARTZ
>1710 Spruce Street
>Philadelphia, PA 19103
>Phone: (215) 735-1130
>Fax: (215) 735-2024
>sweiss@anapolschwartz.com
>
>**Co-Lead Class Counsel**

## **CERTIFICATE OF SERVICE**

It is hereby certified that a true copy of the foregoing was served electronically via the Court's electronic filing system on the 2nd day of September, 2014, upon all counsel of record.

Dated: September 2, 2014

/s/ Christopher A. Seeger

Christopher A. Seeger