UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | Civil Action No. 2:14-cv-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**MEMORANDUM OF LAW IN SUPPORT OF SEAN MOREY, ALAN FANECA, BEN HAMILTON, ROBERT ROYAL, RODERICK CARTWRIGHT, JEFF ROHRER, AND SEAN CONSIDINE'S MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY**

Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick Cartwright, Jeff Rohrer, and Sean Considine (collectively, "Movants") – all members of the settlement class – respectfully request leave to conduct limited discovery in preparation for this Court's November 19, 2014 fairness hearing. The purpose of that hearing is to assess the adequacy, fairness, and reasonableness of the proposed settlement entered into between Class Counsel and the NFL Parties. Movants' proposed discovery requests, interrogatories, and depositions are attached as Exhibit A.

**BACKGROUND**

This Court granted preliminary approval of the settlement on July 7, 2014. It entered an Order setting a schedule leading up to a final fairness hearing to occur on November 19, 2014. The schedule set October 14, 2014 as the date by which Movants and any other class members must file any objection they have to the June 25, 2014 settlement.

Movants seek limited discovery into the process through which the settlement – which contains substantial conflicts as well as other flaws – was negotiated and the strength of the defenses to the core allegations.

## I.   The Absence of Discovery

As far as Movants know, no discovery was taken by Class Counsel. Class Counsel settled a case in which they raised serious allegations of misconduct by defendants without analyzing any evidence produced through the adversarial process. Such conduct by Class Counsel calls into question the adequacy of the representation of the class and the fairness of the negotiated settlement. *See, e.g.*, *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 307 (3d Cir. 2005) (absence of "adequate exploration of the absent class members' potential claims" through discovery made it "questionable whether class counsel could have negotiated in their best interests"); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 814 (3d Cir. 1995) (concluding that "the inchoate stage of case development reduces our confidence that the proceedings had advanced to the point that counsel could fairly, safely, and appropriately decide to settle the action"). Class Counsel has not yet explained why they entered into a settlement without utilizing any of the tools of discovery.

## II.   Defects in the Class

The class, as now certified, has several substantial conflicts that demonstrate a lack of adequate representation. The three primary substantial defects are: a failure to compensate class

members with CTE who die after the date of preliminary approval, notwithstanding that a class member who died with CTE prior to preliminary approval receives $4 million; a 75% reduction in awards to class members who experience TBI other than through football; and a failure to credit players for seasons played in NFL Europe.

A.  **Failure to Compensate CTE**

Class Counsel has estimated that thousands of class members, like Movants, experience symptoms associated with Mild Traumatic Brain Injury, or MTBI.[1] Those symptoms include visuospatial difficulties, executive function deficit, chronic headaches, dysnomia, decreased emotional stability, increased impulsivity, and attention and concentration deficits.[2] Class members who suffer from those symptoms are also at an increased risk of developing chronic traumatic encephalopathy, or "CTE." *See* A.C. McKee *et al.*, *The Spectrum of Disease in*

---

[1] In an apparent effort to attract clients and communicate with the class, Co-Lead Class Counsel, Seeger Weiss had on its website a tutorial relating to MTBI and football. *See Up-To-Date Information on NFL Concussions*, Seeger Weiss LLP, (Sept. 9, 2014), http://www.seegerweiss.com/football-concussions/#ixzz3CByVHxui (attached as Exhibit B). Up until it was raised at oral argument before the Third Circuit on September 10, 2014, the Seeger Weiss website stated:

> Frequent brain trauma or multiple football concussions . . . has shown to cause serious mental health problems. Thousands of football players, many of whom are thought to have suffered more than one hundred mild traumatic brain injuries, are dealing with horrible and debilitating symptoms.
>
> Multiple medical studies have found direct correlation between football concussions and suffering from symptoms of chronic traumatic encephalopathy, also known as CTE.  **CTE is believed to be the most serious and harmful disease that results from NFL and concussions.**  CTE is a progressive degenerative disease that causes damage to the brain tissue and the accumulation of Tau Proteins.

*Id.* (emphasis added). Seeger Weiss hurried to remove that language after oral argument in the Third Circuit on September 10, 2014, at which the inadequate representation and failure to compensate CTE, as well as this language on their website, was raised.

[2] These conditions are more fully described in the Objection to June 25, 2014 Class Action Settlement and Opposition to Motion for Preliminary Approval, filed on July 2, 2014. *See* Dkt. No. 6082 ("Objection," attached as Exhibit C).

3

*Chronic Traumatic Encephalopathy*, 136 Brain: A Journal of Neurology 43, 52, 55-59 (2012). Class Counsel has consistently told class members that CTE is "***the most serious and harmful disease that results from NFL and concussions***." Ex. B.  CTE is the only one of the diseases that the Class Complaint alleges results from MTBI, which can be had *only* through MTBI.  It is the industrial disease of football.  But class members who have CTE or are at risk of developing CTE remain inadequately represented in the proposed settlement.

    First, the class representatives *do not* allege that they have CTE or even that they are at risk of developing CTE.  This is the class's most obvious fatal defect because there is disparate and arbitrary treatment of class members who have developed or who suffer from a risk of developing CTE.  For example, while a retired player with CTE who died before July 7, 2014 could receive a $4 million payment under the settlement, a player who dies only one day later with the same condition receives *nothing*.  Dkt. No. 6019-1 at 13-19; Ex. B at 19-26.  That is because the settlement defines "qualifying diagnoses" to include "a post-mortem diagnosis of CTE" *only* "[f]or Retired NFL Football Players who died *prior to the date* of the Preliminary Approval and Class Certification Order."  Revised Settlement Ex. B-1 ¶ 5; *see also* Revised Settlement ¶¶ 2.1(yyy), 6.3(a).  Class Counsel have yet to explain the reasons for such a striking difference in treatment among players suffering from CTE based on when a class member dies from the disease.[3]  And Class Counsel have had multiple opportunities to do so:  Movants identified those deficiencies in both their Motion to Intervene and Objection to the Preliminary Settlement.  For class members whose current MTBI-related afflictions have been linked to CTE,

---

[3] CTE, moreover, is likely the most prevalent serious disease faced by class members.  Thirty-three of 34 deceased NFL players whose brains have been examined for CTE have been diagnosed with the condition.  McKee, *supra*, at 59.

4

the bargaining away of all compensation for all future cases of CTE provides a substantial incentive to carefully scrutinize the settlement's terms and ensure its fairness.

Other class members, moreover, suffer from numerous CTE symptoms that go completely uncompensated under the terms of the proposed settlement. Visuospatial difficulties, chronic headaches, dysnomia, decreased emotional stability, increased impulsivity, depression, and suicidality are not compensated. Memory problems, language impairment, attention and concentration deficits, and executive function deficit likewise go uncompensated if they do not rise to the level of 1.0 dementia as defined in the settlement. *See* Revised Settlement Ex. B-5. The "linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012). Because the class representatives do not allege that they suffer from CTE, suffer from CTE symptoms, or suffer from an increased risk of developing CTE, their interests are fundamentally misaligned with the rest of the class.

B.   **The 75% Offsets**

The proposed settlement also imposes extreme offsets that create an additional class conflict. It reduces a claimant's award by **75%** for a single instance of non-football-related traumatic brain injury or stroke. Revised Settlement § 6.7(b)(ii)-(iii). That 75% offset applies regardless of the severity of traumatic brain injury that the player sustained while playing football. As the Seeger Weiss website had noted until it was changed following the Third Circuit argument, many NFL players "are thought to have suffered more than one hundred mild traumatic brain injuries." Ex. B. The 75% offset assumes that a single non-football-related instance of TBI accounts for 75% of a player's MTBI-related injuries, even though that player may have sustained numerous head traumas throughout his NFL career. Neither of the class representatives alleges that he would be subject to this offset.

5

### C. The Failure to Credit Seasons Played in NFL Europe

The proposed settlement, moreover, does not award "Eligible Season" credit for time spent playing in NFL Europe. Revised Settlement § 6.7(c)(i). As a result, a class member who played five years in the NFL will receive a larger settlement award than a class member who played part of his five-year career in NFL Europe. That is true despite players' undoubted exposure to numerous sub-concussive impacts comparable to those of their NFL counterparts in the United States. Neither class representative alleges that he played in NFL Europe.

### III. Other Deficiencies in the Settlement

In addition to these class conflicts, the proposed settlement is seriously flawed. For example, the notice – already distributed to players – is not only inadequate, but false on its face. "To satisfy due process," notice to class members "'must be sufficiently informative and give sufficient opportunity for response.'" *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1317 (3d Cir. 1993). Such is not the case here. The notice here states:

> **Monetary awards are available for** the diagnosis of ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) or **Death with CTE** (the "Qualifying Diagnoses"). ***A Qualifying Diagnosis may occur at any time*** until the end of the 65-year term of the Monetary Award Fund.

Dkt. No. 6084-1 at 10 (emphasis added). That is flatly incorrect. Under the proposed settlement, Death with CTE is not compensable at "any time." It is only compensable if the death occurred before the date of the preliminary settlement. The notice currently being distributed to players is nothing more than misinformation targeted at inducing settlement, not at adequately informing players of the actual implications of the settlement's terms. Such muddled advisement falls far short of providing sufficiently informative notice upon which players may rely in deciding whether to remain in the class or opt out.

A class member who decides to remain in the class, moreover, must enter a procedural labyrinth that will surely prevent many class members from successfully receiving payment, even for those with a Qualifying Diagnosis. Ex. C at 32-35. Among other problems, the claims process imposes arbitrary deadlines, burdensome claims-form filing requirements, and places limitations and evidentiary burdens upon a claimant's ability to appeal a denial of benefits (without subjecting the NFL to such requirements). *See* Revised Settlement §§ 4.2(c), 5.4, 6.7(b)(iv), 8.2(a), 8.3(a)(i), 8.6(a), 9.6(b), 9l7(a), 9.8(a).

The timing of the $112.5 million legal fee – which the NFL Parties agreed not to oppose even before signing and public release of the settlement – and its size in comparison to the apparent amount of work done further illustrate class counsel's inadequacy and the need for discovery. Ex. C at 37-38; *see also* Fed. R. Civ. P. 23(g). Class members are entitled to know through discovery whether Class Counsel – who took no fact depositions, took no expert depositions, conducted no document discovery, and conducted no summary judgment practice – adequately protected their rights when they were negotiating that sum with the NFL.

**IV.    Class Counsel Have Implicitly Conceded Discovery Is Appropriate**

Class Counsel's ***own representations*** confirm that limited discovery is now appropriate. In opposing earlier requests for information pertaining to the settlement negotiation, Class Counsel explained that after preliminary approval, "without doubt, the materials can and should be made available to absent class members, as such access is traditionally allowed in between the time of preliminary approval and the final fairness hearing." Dkt. No. 5699 at 5. In ordering the release of the actuarial reports provided to the Special Master, this Court has recognized that this time has now come. But the class is entitled to more than just the actuarial reports. They need information pertaining to the merits of their claims and anything else that informed Class Counsel's negotiation of the settlement.

7

Class Counsel's effort to excuse such flaws in the settlement by emphasizing the danger of the NFL's defenses on the merits is a bark with little bite, given that Class Counsel have conducted no discovery into either the strength of the class's claims or the pitfalls of the NFL's defenses. Ex. C at 40-47.[4] Class members are entitled to discovery to test the strengths and weaknesses of the proposed settlement.

## ARGUMENT

Circuit precedent and common sense make clear that class members seeking to evaluate a proposed settlement must have the opportunity to test through discovery the strengths and weaknesses of the proposed settlement. Here, that discovery includes: (1) information Class Counsel relied on in entering the preliminary settlement; and (2) information the NFL has involving the cognitive injuries at issue in this case.

### I. Class Members Must Be Afforded the Opportunity To Evaluate the Settlement

Class members attempting to evaluate a class settlement that has been preliminarily approved must have "an adequate opportunity to test by discovery the strengths and weaknesses of the proposed settlement." *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). In *Girsh*, for example, after the fairness hearing date was set, a class member submitted four sets of interrogatories to both defendants and representative plaintiffs. *Id.* at 157. The defendants responded to the interrogatories by explaining they already had provided the requested information to representative plaintiffs' counsel. *Id.* at 157 n.8. The class member moved to compel. *Id.* at 157. The district court denied that motion, and later approved the settlement after the final fairness hearing. *Id.* The Third Circuit reversed and remanded "for a more complete development of the record." *Id.* at 159. The Third Circuit reasoned that the class member "was

---

[4] Movants have twice raised with this Court their concerns about Class Counsel's adequacy of representation for the class. *See* Dkt. Nos. 6019, 6082.

not afforded an adequate opportunity to test by discovery the strengths and weaknesses of the proposed settlement." *Id.* at 157.

More recently, in *In re Community Bank of Northern Virginia*, 418 F.3d 277 (3d Cir. 2005), the Third Circuit confronted a proposed settlement where "no formal discovery was undertaken by class counsel." *Id.* at 316. "[I]n an effort to establish the inadequacy of the settlement," one objector served several deposition requests and subpoenaed other parties to appear at the fairness hearing. *Id.* at 291. The settling parties moved to quash the discovery requests and subpoenas, requesting an order that no discovery be taken. *Id.* Four days before the fairness hearing, the district court granted that motion. It quashed the outstanding subpoenas and deposition notices and required the court's pre-approval of any future discovery request. *Id.*

The Third Circuit reversed, holding that precluding discovery was an abuse of discretion. 418 F.3d at 316-17. Although the district court "purport[ed] to permit discovery" by absentee class members, its order "in all practical respects barred discovery altogether" because it issued just four days before the hearing and required pre-approval for any discovery. *Id.* at 316. The Third Circuit remanded with instructions that the district court "develop fully the record and reevaluate whether an order limiting discovery is appropriate in light of its duty to 'employ procedures that it perceives will best permit it to evaluate the fairness of the settlement.'" *Id.* (quoting *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 563 (D.N.J. 1997)); *see also Charron v. Wiener*, 731 F.3d 241, 248 (2d Cir. 2013) (noting that where objectors "raise cogent factual objections to the settlement and prior discovery was insufficient or nonadversarial . . . district courts [must] exercise particular care to see to it that the non-assenting plaintiff . . . has had a full opportunity to develop the basis for his objection" (punctuation and citations omitted)); *In re Gen. Motors Corp. Engine Interchange Litig.*, 594

F.2d 1106, 1123-24 (7th Cir. 1979) (holding district court abused its discretion in "refus[ing] to permit discovery" into the settlement negotiations); Newberg on Class Actions §11:57 (4th ed.) (noting "proponent's prior discovery . . . most probably will not supply the objector with the material necessary to support an attack on the proposed settlement" so "the objector must secure evidence through independent discovery").

## II.     Movants Are Entitled to Limited Discovery

Discovery should be permitted so that objectors and absentee class members understand how the settlement was reached and receive the required "opportunity to test by discovery the strengths and weaknesses of the proposed settlement." *Girsh*, 521 F.2d at 157; *Cmty. Bank*, 418 F.3d at 316-17.

### A.     Class Members Are Entitled To Know How the Settlement Was Reached

Class Counsel have not made available information on which they relied in negotiating the settlement. They have not disseminated the results of any investigation into the merits of class members' claims. They have not released the information "exchanged" with the NFL Defendants during the mediation. Dkt. No. 6073-5 at 43. And they have not disclosed sufficient medical, actuarial, and economic studies on which they purportedly based the settlement's terms. Indeed, Class Counsel have actively resisted disclosing such information, *see* Dkt. No. 5699 (opposing request to release data utilized by Class Counsel during negotiations), doing so only after a Court order, *see* Dkt. No. 6160.[5] The negotiation process has been a black box to all but

---

[5] The reports provided to the Special Master were drafted *after* this Court's January 14, 2014 Order denying preliminary approval. *See* Dkt. No. 6167 (Class Counsel's report dated February 10, 2014); Dkt. No. 6168 (NFL report referencing the January 14, 2014 Order). These post-hoc summaries thus cannot be the information "exchanged" by the settling parties nor can these reports be the actual studies on which the settlement was based. Dkt. No. 6073-5 at 43.

the select few who directly participated in it. Unless that black box is opened, absentee class members have no way to assess the value of the settlement.

The information – for example, negotiation documents and studies exchanged among the settling parties, Mediator, and Special Master – will help class members understand the number and value of the claims being released. This information will also help class members assess the adequacy of the Baseline Assessment Program Fund, which is capped at $75 million and has a lifespan of only ten years, with a possible extension of another five years.

It makes no difference whether Class Counsel had access to this information. "[A]n objector [is] in an adversary relationship with both plaintiffs and defendants and [is] entitled to at least reasonable discovery against both." *Girsh*, 521 F.2d at 157; *see also* Newberg on Class Actions § 11:57 (4th ed.) (noting "the objector's request for discovery should be granted if he or she can demonstrate to the court that the previous discovery undertaken by the proponents was not adversarial in nature"); *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014) (rejecting class settlement and noting "when a judge is being urged by both adversaries to approve the class-action settlement that they've negotiated, he's at a disadvantage in evaluating the fairness of the settlement to the class"). An objector thus has a right to discovery ***independent*** of any discovery or exchange of information conducted by the settling parties. *Girsh*, 521 F.2d at 157.

> **B.  Class Members Are Entitled To Know the Strengths and Weaknesses of the NFL's Defenses**

Discovery is vital to understanding the strengths and weaknesses of the NFL's defenses on the merits. The ultimate viability of class members' claims was a pointed focus of this Court's Order granting preliminary approval, *see* Dkt. No. 6083 at 10-11, and will likely take center stage at the fairness hearing, *see Girsh*, 521 F.3d at 157 (noting court must consider "the risks of establishing liability" in granting final approval). Without discovery, class members

cannot meaningfully assess the viability of any defenses and cannot fully test the "strengths and weaknesses of the proposed settlement." *Id*.; *see also* Ex. C at 42-47 (discussing need for discovery in assessing potential defenses to the litigation).

The need for independent discovery is even more necessary here given the allegations at issue. Plaintiffs have set forth numerous troubling allegations concerning the NFL's knowledge of the harm to which its players were continually being exposed and its fraudulent conduct in response to that knowledge. These allegations include that the NFL knew or should have known of the numerous reports and studies showing the dangers of repeated head trauma, *Turner v. Nat'l Football League*, Civ. A. No. 2:14-cv-29-AB, Dkt. No. 1 ¶¶ 91, 95, 99, 105 (E.D. Pa. Jan. 6, 2014); the NFL's own independent examination of former Pittsburgh Steeler and Hall of Fame inductee Mike Webster – the player whose autopsy triggered the discovery of CTE in NFL players – caused it to conclude that Webster was "completely and totally disabled as of the date of his retirement and was certainly disabled when he stopped playing football sometime in 1990" because of his brain injuries, *id.* ¶ 114; the NFL published junk science to ease medical concerns about the effects of repeated head trauma, *id.* ¶¶ 168, 173, 197; the NFL issued a concussion pamphlet informing readers that "[c]urrent research with professional athletes has not shown that having more than one or two concussions leads to permanent problems if each injury is managed properly," *id.* ¶ 180; and the NFL took efforts to silence those who suggested a correlation between MTBI and long-term brain injury, *see id.* ¶¶ 168, 173, 197.

At a minimum, class members are entitled to know whether the NFL possesses information relevant to these claims and to test the strengths and weaknesses of the NFL's asserted defenses before being bound by a settlement already rife with numerous internal conflicts and fundamental structural defects.

**CONCLUSION**

The Court should grant Movants leave to conduct limited discovery and order the settling parties to respond to the discovery requests, interrogatories, and depositions attached as Exhibit A. Movants are prepared to meet and confer with Class Counsel and the NFL forthwith to address any issues they may have concerning the discovery.

Dated: September 13, 2014                                    /s/ Steven F. Molo

William T. Hangley                                           Steven F. Molo
Michele D. Hangley                                           Thomas J. Wiegand
HANGLEY ARONCHICK SEGAL                                      Kaitlin R. O'Donnell
PUDLIN & SCHILLER                                            MOLOLAMKEN LLP
One Logan Square                                             540 Madison Ave.
18th & Cherry Streets                                        New York, NY 10022
27th Floor                                                   (212) 607-8160 (telephone)
Philadelphia, PA 19103                                       (212) 607-8161 (facsimile)
(215) 496-7001 (telephone)                                   smolo@mololamken.com
(215) 568-0300 (facsimile)                                   twiegand@mololamken.com
whangley@hangley.com                                         kodonnell@mololamken.com
mdh@hangley.com

                                                             Eric R. Nitz
                                                             MOLOLAMKEN LLP
                                                             600 New Hampshire Ave., N.W.
                                                             Washington, DC 20037
                                                             (202) 556-2000 (telephone)
                                                             (202) 556-2001 (facsimile)
                                                             enitz@mololamken.com

                                                             Linda S. Mullenix
                                                             2305 Barton Creek Blvd., Unit 2
                                                             Austin, TX 78735
                                                             (512) 263-9330 (telephone)
                                                             lmullenix@hotmail.com

*Attorneys for Movants*

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 13, 2014, I caused the foregoing Motion for Leave to Conduct Limited Discovery, Memorandum of Law in Support of Motion for Leave to Conduct Limited Discovery, Proposed Order, and Limited Discovery Requests to be filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel and parties.

                                                        */s/ Steven F. Molo*
                                                        Steven F. Molo