UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No.: 12-md-2323 (AB) <br><br> MDL No. 2323 |
| **THIS DOCUMENT RELATES TO:** <br><br> **ALL ACTIONS** | **Hon. Anita B. Brody** <br><br> Civ. Action No. 13-cv-01676 |

JOINDER IN EMERGENCY MOTION TO MODIFY OR AMEND THE

JULY 7, 2014 ORDER [6048] REQUIRING OPT-OUTS ON OR BEFORE

OCTOBER 14, 2014

I.  INTRODUCTION

Plaintiffs LEWIS BUSH, deceased by his Successor in Interest DEE BUSH, DEE BUSH an individual; DANIELLE BUSH, and individual, LEWIS BUSH, Jr., a minor, by his Guardian ad Litem, ELIZABETH FOX, AND MAKAI BUSH, a minor, by her Guardian ad Litem CLEO BUSH, hereby file this joinder to the Emergency Motion to Modify or Amend the July 7, 2014 Order [6048] Requiring Opt-Outs On or Before October 14, 2014 and supplements the good cause for the order as follows:

A.  Summary of the Argument.

While it is necessary to discuss the readily apparent inadequacy of the settlement agreement reached and conditionally approved in this case, the purpose of this joinder is not to debate its merits before the fairness hearing.  Rather, this joinder seeks to preserve

1

the right of those settlement class members whose interests were, at best, ignored to have a meaningful opportunity to object to the settlement by moving the opt-out date until after the terms of the settlement become final and binding.  Should this Court approve the settlement, moving the opt-out date will also provide the parties with an opportunity to send a notice that does not mislead Settlement Class members with legitimate claims who have no chance at a monetary award should they fail to opt out.

This case involves a conditionally certified Settlement Class that is significantly broader than the class of persons that have any potential to participate in the settlement benefits.  The family of Lewis Bush is within the group of Settlement Class members who will forfeit any monetary remedy they may have against the NFL should they become bound by the settlement.  This is because Lewis Bush died while suffering from all the horrible consequences of the repeated concussions he suffered playing linebacker for the San Diego Chargers, side-by-side with Junior Seau.  Unlike Junior Seau whose depression caused him to take his own life, Lewis Bush's depression caused his heart to fail; a process known as takotsubo cardiomyopathy.  But that is not why Junior Seau's family stands to get more than $4,000,000.00 from the settlement while Lewis Bush's family will get nothing.  Rather, the disparate treatment is due to the fact that Junior Seau is one of a handful of deceased NFL players who had a very new and specialized autopsy of his brain that revealed the presence of CTE.  Like other deceased NFL players who suffered concussion related disease included within the Settlement Class, Lewis Bush did not have that very rare and specialized autopsy.

This settlement is bad for the Bush family, but at least the Bush family is represented by counsel and aware of the peril the settlement presents.  The Notice of Settlement (hereinafter "Notice") already disseminated to Settlement Class members contains language that can only mislead class members whose claims arise out of their relationship with a deceased NFL Player who, by reason of their death, will be unable to receive a Qualifying Diagnosis.  The Notice states that "[a] Qualifying Diagnosis may occur at any time until the end of the 65-year term of the Monetary Award Fund." (Notice, pg. 12, para. 14 [6084-1].)  Indeed, <u>the very first line</u> of the Notice, in <u>large bold letters</u>, states "**All Valid Claims of Retired NFL Football Players to be paid in Full for 65 Years[.]**" (*Id.* at pg. 1.)  As will be demonstrated below, this is simply *not true* for the vast majority of players who died before preliminary approval.

The relief sought herein will preserve the ability of the Bush family to participate at the fairness hearing without risking forfeiture of their valid claims against the NFL. The relief will also allow this Court the opportunity to provide a non-misleading notice to those similarly situated Settlement Class members prior to the opt-out date.

      B.    <u>The Bush Family</u>

Lewis Bush was a player in the NFL for 10 consecutive seasons; playing for the San Diego Chargers from 1993 through 1999 and the Kansas City Chiefs from 2000 through 2002.  The Bush family has alleged, and intends to prove, that Lewis Bush died from depression induced heart failure (takotsubo cardiomyopathy) on December 8, 2011. Lewis Bush left behind three children and a wife who are pursuing a wrongful death case under California law against the NFL.  Additionally, Ms. Bush is the duly appointed

successor in interest pursuing a survival claim under California law on behalf of the estate of Lewis Bush.

## II. ARGUMENT

### A. The Settlement Class is Broader than the Settlement's Beneficiaries.

The Settlement Class conditionally certified by this Court includes *each and every* authorized representative of a deceased Retired NFL Football Player (included within the definition of the "Representative Claimants") and *each and every* person who may assert an independent or derivative claim under applicable state law based upon their relationship with a deceased Retired NFL Football Player (included within the definition of "Derivative Claimants"). (Settlement Agreement [6073-2], pg. 4, sec. 1.1(a), pg. 8, sec. 2.1(ee), and pg. 14, sec. 2.1(eeee).) Thus, the entire universe of potential claimants whose claims arise out of a deceased NFL Football Player's relationship with the NFL is included in the Settlement Class. Some, but by no means all, of the Representative Claimants and the Derivative Claimants are included within the two subclasses. All of the claimants in the Settlement Class will have their claims released by the settlement, but only those in the subclasses are eligible for a monetary award. (Compare the definition of subclasses with the eligibility requirements to obtain monetary benefits in Exhibit 1 of the Settlement)

**Subclass 1** includes Representative Claimants and Derivative Claimants who's deceased NFL Football Player **was not** diagnosed with a Qualifying Diagnosis before July 7, 2014, the date of preliminary approval. ([6073-2]pg. 4, sec. 1.2(a).) **Subclass 2** includes Representative Claimants and Derivative Claimants whose deceased NFL

Football Player **was** diagnosed with a "Qualifying Diagnosis" before July 7, 2014, and Representative Claimants of deceased NFL Football Players who were diagnosed with a "Qualifying Diagnosis" prior to death, and Representative Claimants of deceased NFL Football Players who died prior to July 7, 2014 and received a post-mortem Diagnosis of CTE.  ([6073-2] pg. 4, sec. 1.2(b).)

The rigorous criterion that must be met in order to receive a "Qualifying Diagnosis", however, reveals the emptiness of the promise that **"[a] Qualifying Diagnosis may occur at any time** until the end of the 65-year term of the Monetary Award Fund" and "**All Valid Claims of Retired NFL Football Players to be paid** in Full for 65 Years[.]"  ([6084-1], Notice of Settlement, pg. 1, and pg. 12, para. 14.)  For a deceased Retired NFL Football Player to receive a Qualifying Diagnoses based upon Level 1.5 or Level 2 Neurocognitive Impairment, the player must have received the diagnosis *while he was alive*.  ([6073-2]Exhibit B-1 to Settlement Agreement, pg. 2-4.) Moreover, the diagnosis must have been "generally consistent" with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement. (*Id*.)  The only limited exception is where the diagnosing physician certifies that certain testing was medically unnecessary "because the Retired NFL Football Player's dementia is so severe[.]"  (*Id*. at pg. 3.)

So unless the deceased Retired NFL Football Player who suffered neurocognitive impairment underwent the newly described battery of tests before death, the player's Representative and Derivative Claimants take nothing from the settlement.  This is true even for perfectly valid claims involving evidence sufficient to sustain a finding of

5

neurocognitive impairment in the jurisdiction in which the claim arose.[1] For example, under California law, evidence sufficient to support a medical diagnosis or medical causation may be offered by a medical expert and based "on matter (including [a medical expert's] special knowledge, skill, experience, training, and education) . . . made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates[.]" (*California Evidence Code* § 801(b).)  "Testimony regarding objectively verifiable physical symptoms leading to a medical diagnosis is admissible as garden variety expert testimony." (*Ramona v. Superior Court* (1997) 57 Cal.App.4th 107, 121.)

      The criteria for a Qualifying Diagnosis of Death with Chronic Traumatic Encephalopathy (CTE) is even more exclusionary, requiring "a post-mortem diagnosis of CTE made by a board-certified neuropathologist." . ([6073-2] Exhibit B-1 to Settlement Agreement, pg. 5.)

      The validity of the Bush family claim is not dependent upon whether or not Lewis Bush underwent a particularized battery of neuropsychological tests or had a very specialized autopsy years before filing suit.  The evidentiary burden imposed upon settlement class members, however, renders the Bush family's valid claims uncompensatable.  The Bush family, and all those similarly situated will forfeit their valid claims against the NFL should they fail to opt-out of the settlement.

---

[1] Likewise, for a Qualifying Diagnosis of Alzheimer's Disease, Parkinson's Disease, ALS, the diagnosis also had to have been made while the Retired NFL Football Player was alive. (Ex "B" Exhibit B-1 to Settlement Agreement, pg. 4-5.)

      B.      The Bush Family and Those Similarly Situated have no Meaningful Opportunity to Object to the Settlement.

It is evident that the primary representation in the Notice already distributed to class members that all valid claims will be paid is, for the Bush family and those similarly situated, no more than "a promise to the ear to be broken to the hope, a teasing illusion like a munificent bequest in a pauper's will." (*Edwards v. People of State of California* (1941) 314 U.S. 160, 186, Jackson, J., concurring.)  For those who are sophisticated enough to see through the empty rhetoric, there is no choice but to opt-out.  But for the fairness hearing to live up to its name, the voices of those class members whose valid claims were sacrificed for the sake of expedience must be heard.  Several class members whose interests differ from the interests of the lead plaintiffs have tried and failed to intervene in in this litigation, preventing their voices from being heard during the negotiations of the settlement.   Compounding the unfairness of excluding their interests from the negotiations process, the terms of the Settlement reached may preclude these interests from being heard at the fairness hearing.  By making the opt-out and objection deadline the very same day, those whose interests were not adequately represented in settlement negotiations have a difficult choice.  For the Bush family, and those similarly situated, whose interests were simply sacrificed have no choice at all; they must opt-out or risk losing their valid claims.

WHEREFORE, Plaintiffs LEWIS BUSH, deceased by his Successor in Interest DEE BUSH, DEE BUSH an individual; DANIELLE BUSH, and individual, LEWIS BUSH, Jr., a minor, by his Guardian ad Litem, ELIZABETH FOX, AND MAKAI BUSH, a minor, by her Guardian ad Litem CLEO BUSH, move this Honorable Court to amend and/or modify paragraph 4(g) in its July 7, 2014 Order and extend the opt-out date to an appropriate time following the fairness hearing of November 19, 2014.

Dated: September 19, 2014      **RESPECTFULLY SUBMITTED:**

By:   /s/ Neal A. Markowitz
THORSNES BARTOLOTTA McGUIRE LLP
KEVIN F. QUINN (SBN 106224)
*quinn@tbmlawyers.com*
NEAL A. MARKOWITZ (SBN 201692)
*markowitz@tblawyers.com*
BENJAMIN I. SIMINOU (SBN 254815)
*siminou@tbmlawyers.com*
2550 Fifth Avenue, 11th Floor
San Diego, California 92103
Telephone: (619) 236-9363
Facsimile: (619) 236-9653

Attorneys for Plaintiffs LEWIS BUSH, DEE BUSH, DANIELLE BUSH, LEWIS BUSH, Jr., AND MAKAI BUSH

## *Certificate of Service*

On September 19, 2014, I electronically filed a copy of the foregoing document through the CM/ECF system for the United States District Court for the Eastern District of Pennsylvania, which will send a notice of electronic filing to all counsel of record and make it available for viewing and downloading from the CM/ECF system.

                              By:    /s/ Neal A. Markowitz

                                        Neal A. Markowitz