IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : No. 2:12-md-02323-AB : : MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated,* <br><br>Plaintiffs, <br><br>v. <br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc., <br><br>Defendants. | : : Hon. Anita B. Brody : : : : : CIVIL ACTION No. 14-00029-AB : : : : : : : |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | : : : |

**OBJECTION BY RETIRED NFL PLAYER ANDREW STEWART
TO PROPOSED SETTLEMENT**

I.    **INTRODUCTION**

Andrew Stewart, by his attorneys, Rosenthal Lurie LLC, hereby objects to the proposed Class Action Settlement ("Settlement") because the definition of "Eligible Season" does not include seasons where a player was placed on the injured reserve list prior to the third game of the regular season, unless the player was placed on the injured reserve list because of a concussion or head injury. Because of this unfairly narrow definition, Mr. Stewart may have his monetary award reduced by as much as eighty percent (80%). Many other players may also see a substantial reduction in their award

based on the definition of "Eligible Season." As will be discussed below, Mr. Stewart submits that the Settlement should use the definition of "Credited Season" contained in the Bert Bell/Pete Rozelle NFL Players Retirement Plan. *Indeed, the NFL's own actuarial report submitted in support of the settlement uses the concept of "Credited Season", not "Eligible Season", as the basis for its analysis.*

## II. OBJECTION

### A. Andrew Stewart's NFL Career and Qualifying Diagnosis

Andrew Stewart is a Retired NFL Player who played the position of defensive end from 1989 until 1993, first with the Cleveland Browns, then the Cincinnati Bengals and finally, in 1993 with the San Francisco 49ers. (Exhibit 1.) Mr. Stewart is forty-eight years of age and has been diagnosed with Parkinson's Disease. (*Id.*) Pursuant to the proposed Settlement, Parkinson's Disease is a Qualifying Diagnosis that entitles Mr. Stewart to a Monetary Award.

### B. Basis for the Objection

Under the proposed Settlement, the Monetary Award is based, in part, on the number of seasons played or practiced in the NFL. Retired players who are credited with at least five "Eligible Seasons" will receive the maximum Monetary Award for their injury and their age, absent other applicable Offsets. The Monetary Award, however, is subject to a downward adjustment to the extent a player has fewer than five "Eligible Seasons."

Section 2.1(kk) of the Settlement Agreement defines "Eligible Season" as follows:

> "Eligible Season" means a season in which a Retired NFL Football Player or deceased Retired NFL Football Player was: (i) on a Member Club's Active List on the date of

2

> three (3) or more regular season or postseason games; or (ii) on a Member Club's Active List on the date of one (1) or more regular or postseason games, and then spent at least two (2) regular or postseason games on a Member Club's injured reserve list or inactive list due to a concussion or head injury. A "half of an Eligible Season" means a season in which a Retired NFL Football Player or deceased Retired NFL Football Player was on a Member Club's practice, developmental, or taxi squad roster for at least eight (8) regular or postseason games.

Under this definition, a player who has suffered a severe injury before the third game of the regular season requiring his team to place him on injured reserve will not receive credit for an "Eligible Season" unless the player was placed on injured reserve because of a concussion or some other sort of head injury.

After playing one full season for the Bengals in 1989, Mr. Stewart spent the remainder of his NFL career on injured reserve for parts or all of the next four seasons. (Exhibit 1.) Under the definition of "Eligible Season" in the proposed Settlement, Mr. Stewart may qualify for as little as one Eligible Season, which could reduce his payment by as much as eighty percent (80%).

The basis for limiting the injured reserve credit to players on injured reserve due to a concussion or head injury is not explained in the proposed Settlement. The core theme of the Master Complaint is that the NFL for decades *deliberately* ignored the risk of head injuries and created a culture in which concussions and head injuries were dismissed as minor "dings" and players understood that they risked losing their jobs if they did not quickly return to the field. (Master Complaint, ¶ 50, 52, 107.) In that environment, concussions went unreported and players continued to play as best they could even after a head injury. (*Id.*) Thus, until recently at least, few players were placed on injured reserve as a result of a concussion. But that does not mean that retired players

did not suffer concussions during the preseason *before* being placed on injured reserve for a different injury. At least 61 concussions have been *reported* during the most recent NFL preseason as of August 24, 2014, an era when there is comparatively little contact during training camp. (Exhibit 2.) Training camps in years past, however, were far different.

Mr. Stewart played in an era when training camps and the preseason were much more brutal than today. Training camps were full contact, twice a day for 3.5 hours each session. (Exhibit 1). One example of a practice technique was the "Oklahoma Drill." This practice technique involves two players lined up a few yards opposite each other in a confined corridor about one yard wide. The players run at each other "full tilt" until one of the players is blocked to the ground or the ball carrier is tackled.[1] When Mr. Stewart played, these collisions often resulted on helmet on helmet contact. (*Id.*) This drill was repeated multiple times during many of the practice sessions. Securing a position on the team depended on how much a player could impress the coaches with the physicality of his play. (*Id.*) Training camp and preseason games were Mr. Stewart's opportunity to demonstrate toughness and an ability to hit as hard or harder than other defensive ends. (*Id.*) Moreover, in Mr. Stewart's era, players on injured reserve actually returned to practice as soon as the injury healed sufficiently. The practices were full contact. (*Id.*) In other words, many players on injured reserve served as a "practice squad" for the team and continued to risk receiving concussive head injuries.

---

[1] An example of the Oklahoma Drill can be seen at http://www.nfl.com/videos/nfl-training-camps/0ap2000000222471/Not-your-average-football-drill. According to one expert, this drill increases the likelihood of concussions the more it is repeated. (Exhibit 3.)

Mr. Stewart's experience is typical for older retired players. In July of this year, the Philadelphia Eagles published an article titled "NFL's Evolution of Training Camp." (Exhibit 4.) In the 1980s, training camp lasted as long as seven weeks with routine "two-a-day" full contact practices lasting as long as 3.5 hours per practice. One former Eagles player who played from 1998-2004, an era when two-a-days were still common but full contact was somewhat less frequent, was quoted as saying:

> And for me, Training Camp gave me the opportunity to prove myself and to win a job every year. My mentality was always that I had to go out and earn a roster spot. So I was willing to do anything the coaches asked me to do to make a positive impression.
>
> I embraced the chance to make plays in practice and then in the preseason games. As a backup player, you get your most snaps in the preseason games, so I looked forward to them.

(*Id.*, p. 2)

As cogently stated in the Master Complaint, players are "'risk[ing] life and limb to catch the coach's eye' for a spot on the team." (Master Complaint, ¶ 107.) Here is how one player who played in the mid-2000s described rookie training camp experience:

> [I]t's on the field where your spot on the roster is either won or lost. This is your battlefield, and the spoils of this war are employment in the National Football League. In this sport, there is no space for the weak. Everyday, every play must be executed with the intent to impress.
>
> Being drafted in the later rounds afforded me little-to-no latitude in taking a single day off. Everyday was a Super Bowl.
>
> Some of the most violent drills in training camp would come during our full-contact, goal-line stand. This was 11-on-11 with the ball at the 1-yard line. We would run play after play of full-speed, head-on-collision football.

(Exhibit 5, p. 5.)

The NFL has for decades glorified these head-to-head collisions and minimized concussions as mere "dings" or an instance of "getting your bell rung." (Master Complaint, ¶50, 58). In so doing, the NFL created a warrior ethos that encouraged players to deny or hide their concussive symptoms and return to the field as if nothing had happened. "[A] failure to play through such an injury creates the risk that the NFL player will lose playing time, a starting position, and possibly a career." (Master Complaint, ¶ 62.) This was just as true during training camp, preseason, and the first two games of the regular season as it was during the remainder of the regular season, and perhaps even more so. For many players, especially those who were second and third stringers, jobs were won and lost during training camp and the preseason.

### C.   A Better Approach

The definition of "Eligible Season" in the proposed Settlement differs from the definition of "Credited Season" under the terms of the Bert Bell/Pete Rozelle NFL Players Retirement Plan (the "Retirement Plan"). (Exhibit 6.) For purposes of determining a retired player's eligibility for certain retirement and disability benefits, a "Credited Season" includes seasons spent on injured reserve list, regardless of when during the season the player was placed on that list. (*Id.*)[2] Mr. Stewart has four "Credited Seasons" in the NFL for purposes of his eligibility for retirement and disability benefits, compared to perhaps one "Eligible Season" under the terms of the proposed Settlement. (Exhibit 7.)

---

[2] Mr. Stewart previously filed a lawsuit against the Bert Bell/Pete Rozelle NFL Players Retirement Plan regarding a claim for disability benefits. *See Stewart v. Bert Bell/Pete Rozelle NFL Player Retirement Plan, et al.,* Case No. 1:09-cv-02612-WDQ (D. Md.), filed October 6, 2009.

A definition of "Eligible Season" that fails to account for time spent on injured reserve is unfair to players who have a Qualifying Diagnosis. Concussive head impacts can occur during training camp, practices, preseason games or during the first two regular season games. The crux of the Master Complaint is that the NFL created a culture where concussions and head injuries were dismissed as minor "dings," despite known risks of short and long-term neurological damage. The NFL expected the players to play through any injury, including one to the head, despite the risk of additional neurological injury, and the players felt compelled to do so to maintain their position on team. (*Id.* at ¶62, 107.) In that environment, it is not surprising that training camp and preseason concussions were not reported and that few (if any) players were placed on injured reserve "because of" a concussion or head injury.

There is now ample evidence, however, that concussions are a regular feature of training camp and the preseason. (Exhibit 2.) A player *who has a Qualifying Diagnosis* should not have his Monetary Award reduced because he was unlucky enough to have been placed on injured reserve before the third game of the regular season when he could easily have suffered neurological damage from concussive head impacts that occurred during training camp or the preseason.

To be fair to players like Mr. Stewart, the Settlement should calculate the Monetary Award based on "Credited Seasons," not "Eligible Seasons." The term "Credited Season" is familiar to all players and is routinely used to determine eligibility pension and disability benefits. Indeed, the NFL's actuary analyzed the value of the proposed Settlement based on "Credited Seasons," not "Eligible Seasons," because "*the Credited Season data served as a reliable proxy for Eligible Season.*" See Report of The

Segal Group to Special Master Perry Golkin, (Doc. No. 6168), at p. 15, n. 11 (emphasis added). Accordingly, using "Credited Season" to calculate the Monetary Award rather than "Eligible Season" *will not affect the projected amount of money the NFL can expect to pay out over the life of the Settlement.* By contrast, using "Eligible Season" to determine the Monetary Award could *substantially reduce* the amount of money paid by the NFL and *substantially reduce* the value of the Settlement to the players. Under these circumstances, the decision to use the term "Eligible Season" instead of "Credited Season" is baffling.

Until at least 2010, the NFL "openly disputed that any short-term or long-term harmful effects arose from football-related sub-concussive and concussive injuries." (Master Complaint, ¶105.)[3] For players like Mr. Stewart *who have a Qualifying Diagnosis* but were placed on injured reserve before the third game of the regular season, using "Eligible Season" rather than "Credited Season" to calculate their Monetary Award rewards the NFL for its efforts to make light of concussions and conceal their risks from the players. The irony cannot be overstated.

---

[3] As recently as July 2013, one NFL owner dismissed the link between concussions and neurological injury as mere "speculation":

> Bengals owner Mike Brown spoke to reporters last Tuesday and said about concussions: "It's not only not proven, it's merely speculation that this is something that creates some form of dementia late in life. Our statistics—the ones I've seen anyway—don't show that ... I'm not convinced that anybody really knows what concussions bring, what they mean later in life, if anything."

(Exhibit 3, p.2.)

## III. <u>CONCLUSION</u>

Even in this more enlightened era, "teams don't release injury reports until Week 1 of the regular season, meaning most concussions from training camp are left off the [official injury] list." *See* PBS Frontline, "What We've Learned From Two Years of Tracking Concussions," http://www.pbs.org/wgbh/pages/frontline/sports/concussion-watch/what-weve-learned-from-two-years-of-tracking-nfl-concussions (last accessed September 12, 2014). A player who was placed on injured reserve for orthopedic or other injuries during the pre-season or early in regular season could easily also have suffered concussions which, until very recently, were routinely dismissed by teams, doctors and the NFL as minor "dings."

Accordingly, Mr. Stewart objects to the proposed Settlement because the definition of "Eligible Season" fails to include a season where the player was placed on injured reserve before the third game of the regular season unless the team placed the player on injured reserve specifically because of a concussion or head injury. Instead of "Eligible Season," the Settlement should use the familiar term "Credited Season" as defined in the Retirement Plan.

Dated: September 22, 2014

Respectfully submitted,

Michael H. Rosenthal (ID No. 48231)
Rosenthal Lurie LLC
Two Penn Center
1500 JFK Blvd., Suite 1230
Philadelphia, PA 19102
Tel. (215) 496.9404
Fax (215) 600.1728
Michael@RosenthalLurie.com
*Attorneys for Andrew Stewart*

9

Dated: September 19, 2014

_____
Andrew Stewart
3888 159th Street
Surrey, British Columbia, Canada
V3S0Y3
DOB: Redacted per Fed. R. Civ. P. 5.2 Original available for reivew upon request

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Objection by Retired Player Andrew Stewart to Proposed Settlement was served on September 22, 2014 on all counsel of record by the Court's ECF system.

*/s/ Michael H. Rosenthal*
Michael H. Rosenthal