# EXHIBIT 6

# Bert Bell/Pete Rozelle NFL Player Retirement Plan

Amended and Restated as of April 1, 2009

# ARTICLE 1
# DEFINITIONS

The terms below have the following meaning unless the context clearly indicates otherwise.

**1.1** "**Active Player**" means a Player who is obligated to perform football playing services under a contract with an Employer; provided, however, that for purposes of Section 5.1 only, Active Player will also include a Player who is no longer obligated to perform football playing services under a contract with an Employer, but is within the period beginning when his last such contract expired or was terminated for any reason, and ending on the later of (a) the July 15 following the beginning of the period, or (b) the first day of preseason training camp.

**1.2** "**Actuarial Equivalent**" means a benefit of equal value when computed in accordance with the interest rate and mortality assumptions defined in Appendix B. For this purpose, a benefit determinable from the assumptions defined in Appendix B will always be deemed to be of equal value.

**1.3** "**Administrator**" means the Retirement Board, which will be considered to be the administrator of the Plan within the meaning of section 3(16)(A) of ERISA.

**1.4** "**Affiliate**" means, with respect to a particular Employer, (a) any corporation, other than the Employer, which is a member of a controlled group of corporations (within the meaning of Code section 414(b)) of which such Employer is a member, (b) any trade or business, other than the Employer, which together with such Employer are under common control (within the meaning of Code section 414(c)), (c) any employer, other than the Employer, which is a member of an affiliated service group (within the meaning of Code section 414(m)) of which such Employer is a member, and (d) any other entity required to be aggregated with the Employer under section 414(o) of the Code.

**1.5** "**Annuity Starting Date**" means the first day of the first period for which an amount is received as an annuity under Article 4, including any amount received under Article 4 by reason of Section 5.4, or any amount received as an early payment benefit under Section 4.5. A Player's Annuity Starting Date will not be earlier than the first day of the month coincident with or next following the date that the Player's benefit election form is received by the Retirement Board, except as provided in Sections 4.10, 4.11, and 4.12 (if elected in accordance with Treasury regulations section 1.417(e)-1(b)(3)(v)).

**1.6** "**Benefit Arbitrator**" means the arbitrator described in Article LII of the 1993 CBA to resolve certain disputes specifically described therein relating to employee benefits.

**1.7** "**Benefit Credit**" means the credit in Section 4.1 for the corresponding Credited Season.

**1.8** "**Code**" means the Internal Revenue Code of 1986, as amended.

2

1.9 "**Collective Bargaining Agreement**" or "**CBA**" means the Collective Bargaining Agreement, as amended, and any such future negotiated agreement, as applicable, between the Management Council and the NFLPA. "**1993 CBA**" means the Collective Bargaining Agreement in effect on May 6, 1993.

1.10 "**Credited Season**" means a Plan Year in which a Player:

(a) is an Active Player (including an injured Player who otherwise satisfies the definition of "Active Player") on the date of three or more Games, not including Game dates when he was on the Future List;

(b) after April 1, 1970, is injured in the course and scope of his employment for an Employer and by reason of such injury, and pursuant to an injury grievance settlement or an injury settlement waiver, receives payment equivalent to his salary for three or more Games or for a number of Games which, when added to the number of Games in such Plan Year for which he otherwise has credit, totals three or more;

(c) after reporting to at least one official pre-season training camp or official practice session during such Plan Year, (1) dies, (2) becomes totally and permanently disabled under Section 5.1(a) or Section 5.1(b), or (3) incurs a disability that subsequently qualifies for a benefit under Section 6.1;

(d) is absent from employment by an Employer while serving in the Armed Forces of the United States, provided such Player returns as an Active Player, after first being eligible for discharge from military service, by the later of (i) ninety days or any longer period prescribed by applicable law, or (ii) the opening of the official pre-season training camp;

(e) for payments on or after June 1, 1993, was absent from employment by an Employer while serving in the Armed Forces of the United States during the periods set forth in the table below if (1) during the one year period ending on the date he entered the Armed Forces, such Player either played professional football for an Employer or signed a contract (or a similar document) stipulating his intent to play professional football for an Employer, and (2) such Player was alive on the date set forth in the table below for the corresponding period:

| For Plan Years: | Such Player Was Alive On: |
| --- | --- |
| April 1, 1941 through March 31, 1947 | June 6, 1994 |
| April 1, 1950 through March 31, 1955 | May 1, 1996 |
| April 1, 1960 through March 31, 1976 | January 13, 2000 |

provided that Credited Seasons under this Section 1.10(e) will be granted only if and to the extent necessary for such Player to become a Vested Player; or

(f) effective April 1, 2001, has a season with at least eight games on the practice squad in a Plan Year (either before or after April 1, 2001) in which he did not otherwise earn a Credited Season, provided that he is otherwise vested and earns a Credited Season in 2001 or later. A Player may earn a maximum of one Credited Season under this Section 1.10(f) regardless of the

3

number of seasons in which he has at least eight games on the practice squad (as such term is or may be defined in Article XXXIV of the CBA).

A Player may earn no more than one Credited Season during a Plan Year. A Credited Season is identified by the calendar year in which it begins.

1.11 **"Dependent"** means a person for whom a personal exemption deduction is allowable under Code section 151, without regard to (a) the income of the Player, (b) whether the personal exemption deduction is allowable to or used by another person, or (c) whether the Player is divorced and/or has entered into a multiple support agreement with respect to such person.

1.12 **"Disability Initial Claims Committee"** means the committee described in Article 8.

1.13 **"Employee"** means an individual who (a) is employed by an Employer as an Active Player, or (b) is employed by an Employer or an Affiliate in a capacity other than as an Active Player (provided that such employment immediately precedes or immediately follows, without interruption, employment as an Active Player).

1.14 **"Employer"** means a member club of the League.

1.15 **"ERISA"** means the Employee Retirement Income Security Act of 1974, as amended.

1.16 **"Final League Year"** means the League Year which is scheduled prior to its commencement to be the final League Year of the Collective Bargaining Agreement.

1.17 **"Game"** means any regular-season League game and any post-season League game except the Pro Bowl.

1.18 **"Hour of Service"** means:

(a) An hour for which an Employee is paid, or entitled to payment, for the performance of duties for an Employer or Affiliate during a Plan Year, with such an Hour of Service being credited for the Plan Year in which the duties were performed;

(b) An hour for which an Employee is paid, or entitled to payment, by an Employer or Affiliate on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence, with such an Hour of Service being credited for the Plan Year or, on a ratable basis, for the Plan Years with respect to which the payments are made; provided, however, that (1) no more than 501 Hours of Service will be credited under this paragraph to an Employee on account of any single continuous period during which the Employee performs no services (whether or not such period occurs in a single Plan Year), (2) Hours of Service will not be credited for any payment made or due under a plan

4

# EXHIBIT 7

 **Bert Bell/Pete Rozelle NFL Player Retirement Plan** 

200 Saint Paul Street • Suite 2420 • Baltimore, Maryland 21202-2008
410-685-5069 • 800-638-3186 • Fax 410-783-0041

## MEMORANDUM

To Whom It May Concern

From:   Nicole Idowu
        Benefit Coordinator

Re:     **Mr. Andrew Stewart**

Date:   July 29, 2014

---

This memo is to confirm that Mr. Andrew Stewart has 4 credited seasons with the NFL and is a vested player.   If you have any questions, or need any additional information, please do not hesitate to contact us.   Thank you.