IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| IN RE NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : : : : | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO<br><br>All Actions | : : : : : | |

**MEMORANDUM OF LAW IN SUPPORT OF BRAIN INJURY ASSOCIATION OF AMERICA'S MOTION FOR LEAVE TO FILE AMICUS CURIAE BRIEF**

**Introduction**

In cases of great public concern, courts regularly receive input from experts in the relevant field as they work to reach a just decision. Here, the Court must decide whether to give final approval to a class settlement dealing with brain injury among retired National Football League ("NFL") professional football players. The decision will have an immense effect not only on the parties involved here, but also on all current and future victims of brain injury. It is for this reason the nation's oldest and largest nationwide brain injury advocacy organization, the Brain Injury Association of America ("BIAA"), now requests to submit an *amicus curiae* brief to assist the Court with its assessment of the ultimate fairness and consequences of the settlement.

BIAA's mission is to advance the causes of brain injury prevention, research, treatment, and education, and to improve the quality of life for all individuals affected by brain injury. Although BIAA has achieved noteworthy successes in its mission, much work remains on all fronts. After decades of work in the field, BIAA is uniquely capable of assisting the Court's

evaluation of the fairness and public-interest consequences of the preliminarily-approved settlement.  Accordingly, BIAA respectfully asks the Court for leave to file an *amicus curiae* brief.

## Discussion

### A. Standard

District courts have inherent authority and broad discretion to designate *amici curiae*. *Liberty Res., Inc. v. Philadelphia Hous. Auth.*, 395 F. Supp. 2d 206, 209 (E.D. Pa. 2005); *Sciotto v. Marple Newtown Sch. Dist.*, 70 F. Supp. 2d 553, 554 (E.D. Pa. 1999).  Although no Federal Rule of Civil Procedure guides the analysis, district courts grant *amicus curiae* status where (1) the proposed *amicus* has a "special interest" in the particular case; (2) that interest is not represented competently or at all in the case; (3) the proffered information is timely and useful; and (4) the *amicus* is not partial to a particular outcome in the case.  *Liberty Res.*, 395 F. Supp. 2d at 209.  "'There is no rule . . . that amici must be totally disinterested,'" *id.* (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982)), and there is no requirement that *amicus* must not be motivated by pecuniary concerns, *see Neonatology Assocs., P.A. v. C.I.R.*, 293 F.3d 128, 131 (3d Cir. 2002).  Participation by an *amicus* may be particularly appropriate where the *amicus* will "ensure a 'complete and plenary presentation of difficult issues' in a case involving important public interests," *Liberty Res.*, 395 F. Supp. 2d at 209-10, or where the *amicus* "can contribute to the court's understanding of the consequences of the settlement proposed by the parties," *Harris v. Pernsley*, 820 F.2d 592, 603 (3d Cir. 1987).

### B. BIAA Meets This Standard and Should be Given Leave to File an Amicus Curiae Brief Addressing the Fairness of the Settlement.

BIAA should be designated *amicus curiae* because it has at least two special interests in this case.  *See Liberty Res.*, 395 F. Supp. 2d at 209.  First, the NFL will allocate $10 million of

the settlement to "fund education programs promoting safety and injury prevention in football players, including youth football players, and the education of retired NFL Football Players regarding the NFL's medical and disability benefits programs and initiatives." (Dkt. 6073-5 at 16.) As the nation's leading advocate for all persons who have sustained brain injuries, BIAA has an interest in ensuring that these funds are directed toward educational projects with the greatest scientific backing and benefit for players and the public. BIAA's deep understanding of the disease-causative and disease-accelerative nature of brain injury, as well as the episodic and long-term treatment and support needs of patients and family caregivers, can help the Court evaluate questions of neuroscience and public health that the parties might not have sufficient incentive or expertise to bring to the Court's attention.

Second, the largest piece of the settlement is now an uncapped injury compensation fund for eligible retired players who manifest severe cognitive impairment. (*See id.* at 15-16.) BIAA and its team of experts (including National Medical Director Brent E. Masel, M.D., who authored the seminal paper, "Conceptualizing Brain Injury as a Chronic Disease") are uniquely qualified to help the Court evaluate questions of fairness with respect to eligibility parameters and compensation levels in the proposed settlement by analyzing how these determinations relate to the progressive physical, psychiatric, and cognitive disease processes that are caused and/or accelerated by brain injury, but may not manifest in clinically significant symptoms upon initial examination. The Declaration of Drs. Masel and O'Shanick, also attached to the Motion, more fully describes BIAA's expertise and preliminary insights on the current settlement.

In addition, BIAA satisfies *Liberty Resources*' second prong because its special interests are not represented in the litigation. 395 F. Supp. 2d at 209. Whereas both plaintiffs and defendants represent their own limited constituencies, BIAA is an established, recognized, and

independent national organization, whose interest is in the entire field of brain injury, and whose work benefits all who suffer because of brain injury.  For example, there is no particular reason to expect either the plaintiffs or the defendants to care, to any meaningful degree, how the money for brain injury education is allocated, but the public has a strong interest in ensuring that these funds are not squandered as a public-relations afterthought to the overall settlement.  Similarly, while class counsel are understandably and quite properly focused on the existing plaintiffs, there is a strong public interest in ensuring that the eligibility criteria adopted in this settlement do not exclude individuals who may already be at great risk of future neurological deficits, and who ultimately could make significant future claims on public health resources.

Importantly, BIAA's interests were not represented by the Special Master, and its efforts will not duplicate the Special Master's.  Whereas the Special Master was well equipped to assist the Court with the financial complexity of the settlement, BIAA will aid the Court in evaluating questions of neuroscience and public health as they relate to determinations of eligibility for the injury compensation fund and of which activities should receive proceeds from the education fund.  BIAA's expertise, as demonstrated in the Declaration of Drs. Masel and O'Shanick, is rooted in its deep understanding of the disease-causative and disease-accelerative nature of brain injury, as well as the episodic and long-term treatment and support needs of brain injury patients and family caregivers.

In *Liberty Resources*, this Court permitted a party to participate as *amicus* where it was a "stakeholder" in that case's core debate, but had "no place at the table." *Id.* at 210.  Similarly, BIAA, as the voice of brain injury in the United States, is a recognized and uniquely qualified stakeholder in the discussion of how best to prevent and treat brain injury at large, and how to improve the quality of life for all individuals affected by brain injury.  Its submission of an

*amicus curiae* brief at this stage in the case can help the Court ensure that these larger public interests are not neglected in the settlement.

      BIAA also satisfies *Liberty Resources*' third prong because it proffers timely and useful information that will aid the Court in assessing the fairness of the proposed settlement.  *Id.* at 209.  BIAA's expertise regarding brain injury, compiled from its comprehensive, nationwide network of physicians, researchers, rehabilitation experts and facilities, caregivers, and brain injury sufferers and their families, makes it uniquely qualified to proffer useful information to the Court.  In particular, BIAA's expert knowledge of how brain injuries evolve and progress across a lifespan will aid the Court in assessing the fairness of how eligibility determinations for the injury compensation fund are determined, and its work advocating for brain injury education, prevention, and treatment will enable BIAA to advise the Court on the fairness of any allocation of funds toward these activities.  Further, BIAA's briefing will be timely and will not delay the Court's assessment of the settlement's fairness.

      Moreover, BIAA is not partial to a particular outcome in this case, and thus satisfies the final prong of the *Liberty Resources* test.  *Id.*  BIAA is not partial to whether the case settles; and if it does, BIAA does not care whether any defendant admits liability as part of the settlement, or whether any particular amount goes to any specific player or group of players.  BIAA's mission is to help the victims (and their families) whose lives have been devastated by brain injury, to educate the public (including present and future participants in contact sports) about brain injury, and to work toward preventing brain injury.

      Finally, this case is one of great public concern, not only because of professional football's popularity, but also (and more importantly) because of the ripple effects any resolution here will have on the future of education, research, diagnosis, and treatment of brain injury.

Particularly with regard to the proposed settlement's education and injury compensation funds, and owing to BIAA's unique expertise in the field, BIAA's participation in this case will serve the Court well as it seeks to reach a just decision on the ultimate fairness of the preliminarily-approved settlement.

## Conclusion

For the foregoing reasons, BIAA respectfully requests that the Court grant BIAA's motion for leave to file an *amicus curiae* brief to assist the Court in assessing the fairness of the preliminarily-approved settlement.

Dated this 30th day of September, 2014.

Respectfully submitted,

Brain Injury Association of America, Proposed *Amicus Curiae*

By: /s/ Christopher J. Wright

Christopher J. Wright, DC Bar No. 367384
Stephen W. Miller, DC Bar No. 1018103
Harris, Wiltshire & Grannis LLP
1919 M Street, NW, Eighth Floor
Washington, DC 20036
(202) 730-1300
(202) 730-1301 (fax)
cwright@hwglaw.com
smiller@hwglaw.com
(Admitted *pro hac vice*)