UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : : : : : | No. 2:12-md-02323-AB |
|  | : : : | MDL No. 2323 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | : : : | |

## CO-LEAD CLASS COUNSEL'S MEMORANDUM OF LAW IN RESPONSE TO MOTION OF SEAN MOREY, ALAN FANECA, BEN HAMILTON, ROBERT ROYAL, RODERICK CARTWRIGHT, JEFFREY ROHRER, AND SEAN CONSIDINE FOR LEAVE TO CONDUCT LIMITED DISCOVERY

Absent Class Members, Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick Cartwright, Jeff Rohrer, and Sean Considine ("Movants), by and through their counsel, move for leave to conduct what they describe as "limited discovery" in preparation for this Court's November 19, 2014 Fairness Hearing ("Morey Motion for Discovery") [ECF No. 6169]. Movants seek to depose Co-Lead Class Counsel, Christopher A. Seeger, Subclass Counsel for Subclass 1, Arnold Levin, and Subclass Counsel for Subclass 2, Dianne M. Nast. Movants also seek to serve Interrogatories and Document Requests upon all Settling Parties. [ECF No. 6169-2 (Exhibit A), at 1-6.]

There is no right to conduct *any* discovery until an absent class member elects to stay in the class, *i.e.*, does not opt out. *See In re Lorazepam & Clorazepate Antitrust Litig.,* 205 F.R.D. 363, 365 (D.D.C. 2001) (denying request to conduct discovery until absent class members decided whether or not to participate in class by not opting out). *See also In re Lorazepam & Clorazepate Antitrust Litig.,* 205 F.R.D. 24 (D.D.C. 2001) (two months later addressing

discovery request following absent class members electing to object rather than opt out; denying discovery of materials used by class counsel in determining damages).  Movants have yet to object to or to opt out of the preliminarily approved settlement.  Although the deadline to object is not until October 14, 2014, there is no reason Movants could not have filed their objections already, and thus availed themselves of the standing to seek discovery.[1]  Instead they flout the process and clear precedent, and attempt to have it both ways, *i.e.*, to obtain discovery before they make their election.

In order to not participate in gamesmanship similar to Movants, we address their request for discovery now on the merits, despite the fact that it is premature.  Movants must make their election in less than two weeks.  Should Movants decide to opt-out, their request for discovery will become moot.

Although Movants fail to describe or set forth any limitations on the inquiries they intend to explore with Mr. Seeger, Mr. Levin and Ms. Nast should they be permitted to take these depositions, we assume for purposes of this response that Movants intend to limit their inquiry to the several "Deposition Topics" identified in the proposed FED. R. CIV. P. 30(b)(6) Notice that they seek to serve upon the NFL Parties, as further described herein.  [ECF No. 6169-2 (Exhibit A), at 7-19.]  Additionally, while there are certain proposed discovery requests to which Co-Lead Class Counsel already have responded or are willing to respond, as further explained *infra*, Co-Lead Class Counsel submit that the vast majority of the discovery sought is inappropriate because: (1) it seeks impermissibly to delve into the settlement negotiations; (2) it seeks to

---

[1]  These Movants previously sought to intervene in this case.  [ECF No. 6019.]  This Court denied that motion on July 29, 2014.  [ECF No. 6107.]  Movants appealed that decision to the United States Court of Appeals for the Third Circuit based upon 28 U.S.C. § 1291, but, following their loss on a separate appeal to the Third Circuit based upon Rule 23(f) of the Federal Rules of Civil Procedure, on September 12, 2014, they withdrew their § 1291 appeal.

discover information that is protected by attorney-client privilege, the work product doctrine, and/or other confidentiality; and/or (3) it is irrelevant, overly broad, unduly burdensome and/or seeks publicly available documents and information.

While Movants have submitted a supporting Memorandum of Law [ECF No. 6169-1], it is disconnected from the specific discovery requests Movants propose that they be permitted to serve upon the settling parties [ECF No. 6169-2 (Exhibit A)].  Movants utterly fail to link their purported rationales for the discovery they claim they need, as set forth in their Memorandum, to each individual document request, interrogatory and deposition topic.  Indeed, Exhibit A is cited only once in Movants' Memorandum, on page 1, merely referring generally to the discovery they want to conduct.  Movants' suggestion that this Court simply should order wholesale *all* of the discovery they seek, namely, sixteen (16) individual requests for documents and information, plus inquiry into six (6) separate and broad-based deposition topics with three (3) separate Class Counsel deponents, when Movants themselves have not deigned to link each request to a specific rationale in their Memorandum, should not be countenanced.

Despite Movants' failure to explain why they purportedly need the information sought in each specific discovery request, Co-Lead Class Counsel analyze each request individually below, categorized by the type of information being sought.  In this way, we hope to highlight for the Court in a particularized manner why each discovery request should not be allowed.[2]  *See* Exhibit A hereto, a chart summarizing the analyses contained herein.

---

[2]  Because this Court is intimately familiar with the facts and procedural history of this case and the undersigned have filed numerous memoranda already including such recitations, we decline to do so again here.

I.      **CO-LEAD CLASS COUNSEL ALREADY HAVE PROVIDED OR ARE WILLING TO PROVIDE AT THE APPROPRIATE TIME CERTAIN INFORMATION AND/OR DOCUMENTATION RESPONSIVE TO THE PROPOSED DISCOVERY REQUESTS.**

Deposition Topic Nos. 4 and 5 address the analysis of the number of Retired NFL Players in the past and projections for the future as to those who already have contracted and those expected to contract in the future Alzheimer's Disease, Parkinson's Disease, ALS or CTE [Chronic Traumatic Encephalopathy].[3]  Interrogatory Nos. 1 and 2, and Document Request No. 6 also seek information in this regard.  Deposition Topic No. 6 addresses calculations for the Baseline Assessment Program and the Monetary Award Fund under the previously proposed settlement.[4]  Co-Lead Class Counsel already stated our lack of opposition and, as per the Court's Order, Special Master Golkin already released the actuarial report and subsequent tabulations of Co-Lead Class Counsel's expert containing this information.  [ECF No. 6167.]

---

[3]  Movants' request for data on the projected number of players expected to develop CTE reflects their fundamental misunderstanding of CTE, as well as the structure of the proposed Settlement.  CTE is a neuropathological characterization of brain tissue.  As a result, it is a diagnosis that can only be rendered post-mortem.  The proposed Settlement, however, is designed to compensate players and their families for the specific deficits and diseases that retired players may manifest while living – *i.e.*, severe cognitive impairment/dementia (Levels 1.5 and 2), Alzheimer's Disease, Parkinson's Disease, and ALS (Lou Gehrig's disease).  To be sure, as described in Sections 6.3(e) and 8.2(a) of the Settlement Agreement, those retired players who died before preliminary approval will likewise be afforded an opportunity for compensation if they were diagnosed with a compensable disease while living.  However, as retired players deceased before preliminary approval would not have recognized the need to seek or obtain a medical diagnosis to confirm their rights and entitlements under the Settlement, the proposed Settlement affords an opportunity for compensation to their families in the event the retired player received a post-mortem neuropathological diagnosis of CTE.

[4]  Co-Lead Class Counsel submit that any requests for information concerning the previously proposed settlement, which is not before the Court, are irrelevant, and are tantamount to a "fishing expedition."  *See In re Checking Account Overdraft Litig.*, 830 F. Supp.2d 1330, 1337 n.6 (S.D. Fla. 2011) (denying Objectors' motions for discovery because Objectors failed to "make any attempt to identify specifically or narrowly the precise discovery they were seeking or the reasons they were seeking such discovery.  Rather, it was clear to the Court that these Objectors were seeking to engage in a broad 'fishing expedition.'").

To the extent that Movants seek to depose Co-Lead Class Counsel and Subclass counsel concerning calculations, analyses and projections performed by Co-Lead Class Counsel's retained expert, as per Deposition Topic Nos. 4, 5 and 6, such is improper and harassing, as discussed in Section IV, *infra*.  *See In re Celexa and Lexapro Marketing and Sales Practices Litig.*, No. 09–2067–NMG, 2014 WL 2547543, at *4 (D. Mass. June 3, 2014) (denying objector's request to depose MDL class counsel, defense counsel or their respective experts and noting that objector "is entitled to file a meaningful objection based upon *her own expert's interpretation of that* data") (emphasis added).  To the extent that Document Request No. 6 seeks underlying documents upon which the expert consulted or relied, as discussed *infra* in Section IV, certain of those documents, like the medical literature, are publicly available and thus it is unduly burdensome for Co-Lead Class Counsel to have to produce these documents, and, as discussed *infra* in Section III, certain of those documents are the proprietary information of a third party.

Interrogatory No. 7 seeks the "name and professional qualifications of each individual on whose testimony (written or oral) any of the Settling Parties intends to rely at the fairness hearing, and for each such person [identification of] the substance of the testimony."  Following the receipt of all objections and the receipt of all notices of intent to speak at the Fairness Hearing, Co-Lead Class Counsel intend to provide this information on the date set by the Court for Co-Lead Class Counsel to respond to objections, namely, on November 12, 2014.  Similarly, at that time, to the extent that objections call into question why the Settlement provides for certain opportunities for compensation, and also provides for certain reductions and offsets, as queried by Interrogatory Nos. 3, 4 and 5, Co-Lead Class Counsel also will address these issues. *See supra* fn. 3 and *see infra* Section II.B.2.

## II. CERTAIN PROPOSED DISCOVERY REQUESTS SHOULD BE PROHIBITED BECAUSE THE REQUESTS IMPERMISSIBLY SEEK TO INQUIRE INTO THE SETTLEMENT NEGOTIATIONS PROCESS.

### A. Discovery Concerning the Settlement Negotiations Should Not Be Permitted Because Movants Failed To Make the Mandatory Independent Showing of Collusion Between the Settling Parties;  Movants Fail Even To Address the Clear Legal Precedent on This Prerequisite.

It is axiomatic that a request for discovery concerning settlement negotiations cannot even be entertained unless there has been an independent showing of collusion between the settling parties that leads the court to conclude that additional information regarding the settlement negotiations is relevant to the court's evaluation of the settlement's fairness.  MANUAL FOR COMPLEX LITIGATION (FOURTH) ("MCL") § 21.643 (2004) ("A court should not allow discovery into the settlement-negotiation process unless the objector makes a preliminary showing of collusion or other improper behavior.").  *See Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 684 (7th Cir. 1987) (holding that discovery of settlement negotiations "is proper only where the party seeking it lays a foundation by *adducing from other sources* evidence indicating that the settlement may be collusive.") (emphasis added).  *See also Lobatz v. U.S. West Cellular of California, Inc.,* 222 F.3d 1142, 1148 (9th Cir. 2000) (citing to *Mars, supra,* denying discovery requested and holding "[w]e agree with the Seventh Circuit that "discovery [of settlement negotiations] is proper only where the party seeking it lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive.");  *Hemphill v. San Diego Ass'n of Realtors*, 225 F.R.D. 616, 620 (S.D. Cal. 2005)(same);  *In re Domestic Air Transp. Antitrust Litig.*, 144 F.R.D. 421, 424 (N.D. Ga. 1992) ("objectors are not entitled to discovery concerning settlement negotiations between the parties in the absence of evidence indicating that there was collusion between plaintiffs and defendants in the negotiating process");  *In re Lupron® Marketing and Sales Practices Litig.*, MDL No.

1430, 2005 WL 613492, at *3-4 (D. Mass. Mar. 16, 2005) (finding that objectors "failed to make any independent showing that the settlement may have been reached as the result of collusion," and that purported "'evidence' of collusion" put forth by objectors failed to demonstrate any collusion, and granting motions to quash subpoenas to depose MDL plaintiff counsel and defense counsel); *Smith v. Sprint Commun. Co., L.P.*, No. 99-C-3844, 2003 WL 715748, at * 2 (N.D. Ill. Feb. 27, 2003) ("This evidence must come from sources other than the settlement agreement itself, and only a showing of wrongdoing separate from the claim that the settlement is unfair or inadequate will meet this test.").

Movants have not even attempted to make the independent showing of collusion required to justify such discovery – nor could they.  As recognized by this Court multiple times, the settling parties negotiated in good faith and at arm's length.  On August 29, 2013, upon being advised by the court-appointed Mediator, Layn Phillips, that the parties had signed a Term Sheet incorporating principal terms of a settlement, this Court "commend[ed] the parties and their counsel on their extensive and good faith negotiations and thank[ed] Judge Phillips for his diligence in assisting the parties in reaching an agreement."  [ECF No. 5235.]  Again, on January 14, 2014, when the Court denied preliminary approval of the then-proposed settlement, without prejudice, the Court observed, "Counsel for the Plaintiffs and the NFL Parties have made a commendable effort to reach a negotiated resolution to this dispute.  There is nothing to indicate that the Settlement is not the result of good faith, arm's-length negotiations between adversaries."  [ECF No. 5657, at 10.]  Finally, in preliminarily approving the settlement proposed in June 2014, on July 7, 2014, the Court held:

> Here, the parties participated in settlement discussions under the auspices of Judge Phillips. *See generally* Pl.'s Mot. Ex. D, Declaration of Layn R. Phillips ("Phillips Decl."), June 25, 2014, ECF No. 6073.  Judge Phillips guided the parties through nearly two months of negotiations.  The parties attended numerous

mediation sessions and aggressively asserted their respective positions.  The
discussions were at times contentious.  *See* Phillips Decl. ¶¶ 5-6.  In the end, the
parties arrived at an agreement that remains the foundation for the revised
Settlement.  Since the denial without prejudice of the prior motion for preliminary
approval, the parties, with guidance from Special Master Golkin, conducted
further hard-fought negotiations to satisfy my concerns.  Therefore, it appears that
the proposed Settlement is the product of good faith, arm's length negotiations.

[ECF No. 6083, at 10.]

Indeed, the participation of a mediator "suggests an arms-length negotiation, rather than

collusion for the benefit of attorneys or named plaintiffs."  *Dugan v. Towers, Perrin, Forster &*

*Crosby, Inc*., No. 2:09–cv–5099, 2013 WL 5330116, at *4 (E.D. Pa. Sept. 24, 2013) (citing

*Mehling v. New York Life Ins. Co*., 246 F.R.D. 467, 473 (E.D. Pa. 2007)).  *See also In re Telik,*

*Inc. Sec. Litig*., 576 F. Supp.2d 570, 576-77 (S.D.N.Y. 2008) (proposed class settlement entitled

to presumption of fairness where negotiations were overseen by retired Judge Weinstein serving

as mediator and were conducted by sophisticated counsel in good faith);  *In re Elan Sec. Litig*.,

385 F. Supp.2d 363, 369 (S.D.N.Y. 2005) ("[T]he Court has no reason to question that the

Settlement was the product of extended 'arm's length' negotiations, including, among other

things, the two-day settlement conference before Judge Politan.");  *In re IPO Sec. Litig*., 226

F.R.D. 186, 194 & n. 42 (S.D.N.Y. 2005) (where negotiations were facilitated by Judge Politan,

settlement was "clearly the result of arm's-length bargaining");  *In re AMF Bowling Sec. Litig*.,

334 F. Supp.2d 462, 465 (S.D.N.Y. 2004) ("The participation of Judge Sweet and retired Judge

Politan in the settlement process gives me confidence that they were conducted in an arms-

length, non-collusive manner.").  In the instant case, not one, but two, objective third parties,

retired Judge Phillips and Special Master Golkin, were involved in the negotiations.[5]

---

[5]  To the extent that Movants' statements questioning Class Counsel's adequacy of
representation and references to a lack of discovery through the adversarial process might be
alluding to collusion, we note that Movants' reliance upon *In re Community Bank of N. Va.*, 418

**B.** **Because Movants Failed To Meet Their Burden To Demonstrate Collusion, the Following Discovery Requests, Which Are Designed To Delve Impermissibly into Settlement Negotiations, Should Not Be Permitted.**

The following discovery requests are prohibited because they impermissibly seek to delve into matters relating to the settlement negotiations.

### 1.   Document Requests Nos. 1, 2, and 3

Document Request No. 1 seeks as follows:  "The documents exchanged among one or more of Representative Plaintiffs, the NFL Parties, the Mediator, and/or the Special Master, to the extent not already disclosed in Docket Entries 6167 and 6168, relating to settlement discussions in this lawsuit."  This request clearly goes directly to settlement negotiations and thus is prohibited.  As discussed *infra*, this request is also improper because it seeks information protected by the attorney-client privilege and other confidentiality.

Document Request No. 2 seeks "[a]ll drafts of the Settlement and all drafts of the earlier settlement agreement that was filed in this action on January 6, 2014."  Document Request No. 3 seeks "[a]ll drafts of the long form and short form notice."  Drafts of the settlement agreements, both that which was presented to the Court in January and the proposed Settlement Agreement currently before the Court, that were exchanged between the parties are clearly part of the

---

F.3d 277 (3dCir. 2005) and *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) is misplaced.  [ECF No. 6169-1, at 2.]  No mediator or special master was used in either of those cases, making them distinguishable from this case.  The other case cited by Movants in connection with their contention of a lack of an adversarial process, *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014), *see* ECF No. 6169-1, at 11, is also distinguishable because, although retired judge mediators were involved initially in that case, they ultimately were not involved in the negotiated settlement presented for approval.  *Id.* at 727-28 ("One [mediator], however, stopped mediating (we don't know why) before the negotiations were completed and the other limited his mediation to issues of attorneys' fees.").  Further, the objectors in *Eubank* specifically alleged collusion and pointed to various facts in support of their allegation, including the fact that the class representative was a relative of lead counsel. Movants have not specifically alleged collusion, nor have they pointed to any facts in support of such an allegation.  A lack of formal discovery prior to settlement is not, we submit, evidence of collusion.  *See* discussion *infra* at Section VI.

settlement negotiations process.  Further, the long form and short form notice language was also a matter that the parties negotiated.  To the extent that various attorneys at Co-Lead Class Counsel's firms and counsel at other firms who were appointed as Class Counsel or Subclass Counsel exchanged drafts of these documents among one another, these drafts are additionally protected by the work product doctrine.  *See* Section III, *infra*.

### 2.    Interrogatory Nos. 3, 4, 5, and 6

Interrogatory Nos. 3, 4 and 5 seek to discover "why" the Settlement provides for certain benefits and not others.  Specifically, Interrogatory No. 3 queries "[w]hy … the Settlement provide[s] a Monetary Award of up to $4 million to retired NFL players who died with CTE prior to July 7, 2014, but does not provide the same Monetary Award to a retired NFL player who dies with CTE after that date."[6]  Interrogatory No. 4 asks "[w]hy … the Settlement provide[s] a 75% reduction in any Monetary Award to retired NFL players who suffer a stroke or who incur a single TBI [Traumatic Brain Injury]."[7]  Interrogatory No. 5 seeks to know "[w]hy …

---

[6]  *See supra* fn. 3.

[7]  Calculations of awards to class members through the use of formulas according to matrices are not uncommon.  Such conventions are used to account for varying diseases and ages of onset, as well as reductions for prior events.  Settlement matrices, as well as an offset for a prior health event, were approved by the Third Circuit in *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.,* 200 Fed. Appx. 95 (3d Cir. Aug. 9, 2006):

> For claimants who claim benefits based on damage to their mitral valve, one of the conditions that moves such claimants from Matrix A to Matrix B is 'acute myocardial infarction associated with acute mitral regurgitation.' … If claimants suffer from that condition and are unable to establish that the regurgitation existed prior to the myocardial infarction, they are given benefits according to Matrix B, and not under the more generous Matrix A.
>
> Within the two matrices, benefits are determined according to two factors: 1) the severity of the disease; and 2) "the age at which the Diet Drug Recipient is first diagnosed as suffering from that level of disease severity." … The severity of the disease determines one's "Level" in the matrix (the matrix row).  Benefits increase with the level of severity.  One's age at first diagnosis of the particular level of severity determines the age bracket used to calculate benefits (the matrix

the Settlement exclude[s] credit for years played in the World League of American Football, the NFL Europe League, or the NFL Europa League."[8]   The simple answer is that each of these was a negotiated term of the Settlement Agreement.   Objectors are not entitled to discovery "to question and debate every provision of the proposed compromise."   *See e.g., Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 619 (S.D. Cal. 2005)(citing cases)(denying objectors' request for discovery on allegation of collusion and on adequacy of counsel). Nevertheless, at the appropriate time, specifically in the papers to be filed on November 12, 2014 in opposition to objections and in further support of final approval, as well as at the Fairness Hearing, Co-Lead Class Counsel will provide detailed explanations as to the rationales for opportunities for compensation and for offsets and reductions in benefits for differing class member circumstances.   *See* fns. 3 and 7.

Interrogatory No. 6 asks for the identification of "any information that was exchanged between the Representative Plaintiffs and the NFL Parties and that is not contained in the documents being produced in response to Document Request No. 1."   As explained *supra*, the Settling Parties should not be required to produce any documents in response to Document Request No. 1 because it impermissibly delves into the settlement negotiations.   That is, there were no documents exchanged between the Representative Plaintiffs and the NFL Parties that were unrelated to the settlement negotiations.

---

column).  At a given severity, benefits diminish the later in life one is diagnosed with the particular severity of disease.
*Id.* at 97.
[8]   *See supra* n. 7 discussing offsets and reductions for variations in exposure.

### 3. Deposition Topic No. 3

Deposition Topic No. 3 addresses "[t]he exchange of information and negotiations that resulted in the Settlement." The depositions of Class Counsel should not be permitted for this improper purpose.

### III. OBJECTORS DO NOT HAVE AN ABSOLUTE RIGHT TO ANY DISCOVERY; IN PARTICULAR, THEY DO NOT HAVE A RIGHT TO DISCOVER INFORMATION THAT IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE, THE WORK PRODUCT DOCTRINE AND/OR OTHER CONFIDENTIALITY AND, AS SUCH, CERTAIN OTHER DISCOVERY REQUESTS SOUGHT SHOULD NOT BE ALLOWED.

There is no absolute right to discovery by objectors to a proposed class action settlement. *In re Community Bank of Northern Virginia*, 418 F.3d 277, 316 (3d Cir. 2005); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 24, 26 (D.D.C. 2001). *See In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1084 n. 6 (6th Cir. 1984) ("While objectors are entitled to 'meaningful participation' in the settlement proceedings ... and 'leave to be heard' ... they are not automatically entitled to discovery or 'to question and debate every provision of the proposed compromise.'"); *In re Domestic Air Transp. Antitrust Litig.*, 144 F.R.D. 421, 424 (N.D. Ga. 1992) ("Class members who object to a settlement of a class action do not have an absolute right to conduct discovery and presentation of evidence.").

The limitations on an objector's ability to obtain discovery are set forth in the Manual for Complex Litigation:

> Discovery should be minimal and conditioned on a showing of need, because it will delay settlement, introduce uncertainty and might be undertaken primarily to justify an award of attorney's fees to the objector's counsel. A court should monitor post[-]settlement discovery by objectors and limit it to providing objectors with information central to the fairness of the proposed settlement.

MCL § 21.643 (2004).

The United States Court of Appeals for the Third Circuit has recognized that this Court has the discretion to "employ the procedures that it perceives will best permit it to evaluate the fairness of the settlement." *In re Community Bank*, 418 F.3d at 316 (quoting *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 563 (D.N.J. 1997)). "The objector does not have an absolute right to discovery and presentation of evidence. The court, in its discretion, may limit the discovery or presentation of evidence to that which may assist it in determining the fairness and adequacy of the settlement." A. Conte and H. Newberg, Newberg on Class Actions § 11.57 (4th ed. 2002).

The Fifth Circuit observed in *Union Asset Management Holding A.G. v. Dell, Inc*., 669 F.3d 632 (5th Cir. 2012):

> [A] fairness hearing is not a full trial proceeding. The court does not need to "open to question and debate every provision of the proposed compromise," and it may "limit its proceeding to whatever is necessary to aid it in reaching an informed, just and reasoned decision." The Sixth Circuit observed that "no court of appeals, to our knowledge, has demanded that district courts invariably conduct a full evidentiary hearing with live testimony and cross-examination before approving a settlement."

*Id.* at 641-42 (footnotes omitted) (quoting *Int'l Union v. Gen. Motors Corp*., 497 F.3d 615, 636 (6th Cir. 2007)). *See also Hemphill, supra*, 225 F.R.D. at 619. "'The temptation to convert a settlement hearing into a full trial on the merits must be resisted." *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1315 (3d Cir. 1993) (quoting *Mars Steel, supra*, 834 F.2d at 684). Indeed, "[t]he court need not possess sufficient 'evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation.'" *International Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. General Motors Corp.*, No. 07-CV-14074-DT, 2008 WL 2968408, at *26 (E.D. Mich. July 31, 2008) (quoting 2 Herbert B. Newberg &

Alba Conte, Newberg on Class Actions, § 11.45).  Because the Court need not conduct a full

hearing on the merits, Movants are not entitled to discovery on the merits.

In their Memorandum, Movants repeatedly cite to *Girsh v. Jepson*, 521 F.2d 153 (3d Cir.

1975) in support of their request for discovery.  However, in *In re Community Bank, supra*, the

Third Circuit concluded that "*Girsh* cannot stand for the proposition that, as a general matter,

objectors have an absolute right to discovery."  418 F.3d at 316.

Movants cite to no authority, and the undersigned are unaware of any, which stands for

the proposition that absent class members and their individual counsel are entitled, merely by

virtue of their status as absent class members, to attorney-client privileged, work product and/or

other confidential information collected, generated and/or possessed by Class Counsel.  *Cf. Aull*

*v. Cavalcade Pension Plan*, 185 F.R.D. 618, 625 (D. Colo. 1998) ("The Plaintiff has not cited,

and the Court is not aware of, any case which holds that absent members of a proposed class, for

which certification was denied, are entitled to all attorney client and work product material

generated by class counsel.").  The following discovery requests fall into this category and thus,

should not be allowed.

A.     <u>**Document Request No. 1**</u>

Document Request No. 1, which was discussed *supra* in terms of its attempt improperly

to delve into settlement negotiations, seeks as follows:  "The documents exchanged among one

or more of Representative Plaintiffs, the NFL Parties, the Mediator, and/or the Special Master, to

the extent not already disclosed in Docket Entries 6167 and 6168, relating to settlement

discussions in this lawsuit."  This request also seeks information protected by the attorney-client

privilege since Movants define "Representative Plaintiffs" as "Kevin Turner and Shawn

Wooden, as well as their legal counsel (including both class counsel and counsel for the two

subclasses), retained or advising experts or agents." *See* ECF No. 6169-2, at 3.  Also, this

Document Request implicates client medical information protected under the Health Insurance

Portability and Accountability Act of 1996 ("HIPAA"), Public Law 104-91, 42 U.S.C. § 1320d-

2.

### B.      Document Request Nos. 2 and 3

Document Request Nos. 2 and 3 seek all drafts of the settlement agreements and all drafts

of the long and short form notices. As discussed *supra*, to the extent that these drafts were

exchanged between Class Counsel and counsel for the NFL Parties, these requests seek to delve

into settlement negotiations.  To the extent drafts of these documents were exchanged among

Class Counsel, they are protected by the work product doctrine.  The "drafts" of these documents

are also irrelevant, as discussed *infra.*

### C.      Document Request No. 4

Document Request No. 4 seeks "[a]ll player surveys, physician surveys, and data sets

regarding consequences of TBIs among football players."  This request is not entirely clear in

terms of what is meant by "surveys."  To the extent that these documents exist and are possessed

by Class Counsel, if they came from the players, they may be subject to attorney-client privilege

and/or protected by HIPAA.  As to any "physician surveys," to the extent they exist and are

possessed by Class Counsel, if they came from Class Counsel's consulting experts, they are

Class Counsel's work product.  Otherwise, they are publicly available.

As to any "data sets," other than those data disclosed within the actuarial report and

tabulations of Co-Lead Class Counsel's expert, certain data are subject to other confidentiality

protections.  As noted in the report of Co-Lead Class Counsel's expert, Thomas Vasquez, Ph.D.

of Analysis Research Planning Corporation ("ARPC") [ECF No. 6167], at page 14, footnote 10,

one of the data sets was the proprietary database that came from STATS Inc. ("STATS").  ARPC paid to license this database from STATS and signed a licensing agreement restricting public disclosure of said data.  As these data are the proprietary information of a third party, Co-Lead Class Counsel submit that Movants are not entitled to these data.

The other two databases referenced on page 14 of the ARPC report came from the NFL Parties and were produced in connection with the ongoing settlement negotiations.[9]  *See Jaffe v. Morgan Stanley & Co.*, No. 06-3903, 2008 WL 346417, at *8-9 (N.D. Cal. Feb. 7, 2008) (referring to involvement of mediator and arms' length negotiations and holding "this Court will not grant Objectors discovery of workforce data [that Morgan Stanley provided to plaintiffs' counsel], or order disclosure of the privileged work product … so that Objectors can provide an alternative valuation of damages.").  At any rate, since these databases contain only former players' identifying information necessary to build a Class notice mailing list, it is difficult to see how these data will assist the Court in determining whether the proposed settlement should be finally approved or will assist an absent class member in deciding whether to object or to opt out.

### D.   Document Request No. 6

Document Request No. 6 seeks "[a]ll documents regarding projections of the incidence of CTE, Alzheimer's Disease, Parkinson's Disease, or ALS in retired NFL players, including any documents consulted or relied upon in determining responses to Interrogatory Nos. 1 and 2

---

[9]  A party's reliance on the existing confidentiality of the process when the disclosure is made is also to be considered in determining whether disclosure is warranted.  *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 790 (3d Cir. 1994).  Confidentiality is critical to the mediation process because it promotes the free flow of information that may result in the settlement of a dispute.  *See, e.g.*, Kenneth R. Feinberg, Mediation—A Preferred Method of Dispute Resolution, 16 PEPP. L. REV. S5, S28–29 (1989).  Indeed, mediation is not effective unless parties are completely honest with the mediator.  *See In re Grand Jury Subpoena Dated Dec. 17, 1996*, 148 F.3d 487, 492 (5th Cir. 1998); *see also  In re Teligent, Inc*., 640 F.3d 53, 58 (2d Cir. 2011) ("Promising participants confidentiality in these proceedings 'promotes the free flow of information that may result in the settlement of a dispute.'") (collecting cases).  Accord FED. R. EVID. 408.

below." To the extent that this request seeks the underlying documents upon which Co-Lead Class Counsel's expert, Dr. Vasquez, relied, *see supra* Section III.C. regarding Document Request No. 4.

### E.     Document Request No. 8

Document Request No. 8 seeks "[a]ll documents reflecting communications by the NFL Parties to NFL players or teams concerning the risks, or lack thereof, associated with TBIs." As to the documents reflecting communications by the NFL Parties to teams, those documents would be in the NFL's exclusive possession, unless they are public, as discussed *infra* at Section IV.D., regarding Deposition Topics 1 and 2. As to documents reflecting communications by the NFL Parties to NFL players, which are not public, to the extent they exist, those would have been collected by Class Counsel from our clients and may be subject to attorney-client privilege and/or the work product doctrine. To the extent they may reflect a client's specific medical history, such documents would be subject to HIPAA protections.

### F.     Document Request No. 9

Document Request No. 9 seeks "[a]ll documents reflecting health risks to football players associated with TBIs." To the extent that Class Counsel collected this information from various sources (in addition to the medical literature already disclosed in Dr. Vasquez's report), including our retained consultants, this may be protected by the work product doctrine. *See also* Section IV.D., *infra*.

## IV.   CERTAIN PROPOSED DISCOVERY REQUESTS ARE IRRELEVANT, OVERLY BROAD, UNDULY BURDENSOME, AND/OR SEEK PUBLICLY AVAILABLE DOCUMENTS AND INFORMATION.

### A.   Document Request Nos. 2 and 3

Document Request Nos. 2 and 3 seek all drafts of the settlement agreements and all drafts of the long and short form notices.  In addition to impermissibly delving into settlement negotiations and/or being protected by the work product doctrine, the drafts of the settlement agreements and the notices are irrelevant.  The proposed Settlement Agreement actually presented to the Court, containing all the terms to which the parties agreed, is the Settlement on which the Court is being asked to determine the fairness, reasonableness and adequacy.  The notices actually published and disseminated to the class members are the notices which must be sufficient under FED. R. CIV. P. 23(c)(2)(B).

### B.   Document Request No. 6

Document Request No. 6 seeks "[a]ll documents regarding projections of the incidence of CTE, Alzheimer's Disease, Parkinson's Disease, or ALS in retired NFL players, including any documents consulted or relied upon in determining responses to Interrogatory Nos. 1 and 2 below."  Dr. Vasquez identified in his report that has now been released all of the medical literature upon which he relied in formulating his opinions – those are articles are publicly available.  [ECF No. 6167.]

### C.   Document Request No. 9

Document Request No. 9 seeks "[a]ll documents reflecting health risks to football players associated with TBIs.  These are publicly available.  *See infra* Section IV.D.

### D.   <u>Deposition Topic Nos. 1 and 2</u>

Deposition Topic No. 1 addresses "[w]hether 'the NFL has been aware that multiple blows to the head can lead to long-term brain injury, including but not limited to memory loss, dementia, depression, and CTE and its related symptoms,' as alleged in paragraph 89 of the Complaint."  Deposition Topic No. 2 addresses "[w]hether 'the NFL misled players, coaches, trainers, and the public, and actively spread disinformation' regarding the potential consequences of TBIs, as alleged in paragraph 223 of the Complaint."  The Class Action Complaint lays out the multiple articles that support these paragraphs.  Specifically, paragraphs 90-92, 94-101, 104-107, 112, 115, 117-119, and 122-23, discuss studies, articles, or papers that support the proposition that the NFL knew the risks of head injuries and failed to inform the players. [*Turner, et al. v. National Football League, et al.*, Case No. 14-cv-00029-AB (E.D. Pa.), ECF No. 1.]

All of the referenced articles and studies are publicly available.  In fact, numerous other filed complaints against the NFL Parties, including those filed by the law firms seeking discovery or alteration of the schedule set by the Court in the July 7, 2014 Order, make the same allegations – that the NFL Parties had knowledge of the long-term effects of concussive and sub-concussive blows to the head but kept this information from the players.  *See, e.g., Duerson v. National Football League, et al.*, No. 12-02513 (N.D. Ill.), at ECF No. 1-1, at 9, ¶¶ 11, 12 of Count II ("the NFL knew of the harmful effects of poorly managed concussions, sub-concussive brain trauma and repetitive brain trauma" and "the NFL embarked upon a propaganda scheme designed to mislead NFL players and retirees regarding long-term ramifications of concussions, sub-concussive brain trauma and repetitive brain trauma.");  *Myles v. National Football League, et al.*, No.  12-cv-00281-DPJ-FKB (S.D. Miss.), ECF No. 1, at 45-46, ¶ 185 ("For decades, the

NFL has known that multiple blows to the head can lead to long-term brain injury, including memory loss, dementia, depression and CTE and its related symptoms."); ¶ 187 ("Until June of 2010, the NFL concealed these facts from other players, coaches, trainers, and the public and actively spread disinformation to prevent the true facts from coming to light.").

Seeking the depositions of Mr. Seeger, Mr. Levin and Ms. Nast to pose questions about allegations which are contained in virtually every complaint that has been filed against the NFL Parties in this MDL appears designed to harass. Similarly, as discussed previously, asking these counsel to testify about the analyses, projections and calculations conducted by Dr. Vasquez, as per Deposition Topics 4, 5, and 6, is both inappropriate and harassing. *See supra In re Celexa and Lexapro*, 2014 WL 2547543, at *4 (denying objector's request to depose MDL class counsel, defense counsel or their respective experts and noting that objector "is entitled to file a meaningful objection based upon *her own expert's interpretation of that* data.") (emphasis added); *In re Lupron®,* 2005 WL 613492, at *4 (granting motions to quash subpoenas to depose MDL plaintiff counsel and defense counsel in advance of Fairness Hearing). *See also Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 66 (1st Cir. 2003) (recognizing that deposition of attorney for party should not be allowed except under exceptional circumstances). Aside from harassment, the only possible purpose for conducting these depositions, which, as discussed *supra,* is not permissible, would be to delve into the settlement negotiations.

## V.     CERTAIN DISCOVERY REQUESTS PERTAIN ONLY TO THE NFL PARTIES.

For certain discovery requests, the information and/or documents sought, assuming they exist, would lie solely in the possession of the NFL. Document Request No. 5 seeks as follows: "All documents reflecting any cost/benefit analyses performed concerning injuries resulting from TBIs [Traumatic Brain Injuries] and changes to NFL football, including changes to the rules of

the game."  Document Request No. 7 seeks "[m]aterials provided by the NFL Parties to members

of the MTBI [Mild Traumatic Brain Injury] Committee, and agendas and minutes of the

meetings of the MTBI Committee."  Document Request No. 8, which is discussed further *infra*,

seeks "[a]ll documents reflecting communications by the NFL Parties to NFL … teams

concerning the risks, or lack thereof, associated with TBIs."  It should be noted that Movants fail

to articulate how any information responsive to these inquiries would assist the Court in

determining whether the proposed Settlement should be finally approved, as these are merits-

based inquiries.

## VI.  MOVANTS' ARGUMENT THAT THE ABSENCE OF FORMAL DISCOVERY REQUIRES THAT THEY BE ENTITLED TO CONDUCT DISCOVERY IS UNAVAILING.

Movants make much of the fact that formal discovery had not yet commenced.[10]  But,

this Court and others have recognized that the absence of formal discovery is not determinative

in terms of the fairness, reasonableness and adequacy of the settlement.  *See, e.g., In re

Processed Egg Products Antitrust Litig.*, 284 F.R.D. 278, 299 (E.D. Pa. 2012) (granting final

approval of class action settlement and noting that fact that settlement occurred at early stage of

litigation did not signify lack of fairness and adequacy of settlement because there are other

means for class counsel to apprise themselves of merits of litigation.);  *Ripley v. Sunoco, Inc.*,

287 F.R.D. 300, 312 (E.D. Pa. 2012) (granting final approval of class action settlement at early

stage of discovery and noting parties' counsel engaged in "exhaustive investigation of the facts

and the underlying claims and defenses in this litigation").  *See also Trombley v. National City

Bank,* 826 F. Supp.2d 179, 199-200 (D.D.C. 2011) (rejecting objections "regarding the

---

[10]  The remainder of their Memorandum of Law consists of a recitation of Movants' views as to the alleged deficiencies in the Settlement, which they purport justify the wholesale discovery requests they seek.  These disconnected contentions are equally unavailing and do nothing to support their request for discovery.

sufficiency of pre-settlement discovery," finding "that a sufficient factual investigation was undertaken," recognizing that negotiations process was at arms' length and adversarial, and noting "'formal discovery' is not a prerequisite, even for final approval purposes.");  *Little-King v. Hayt Hayt & Landau*, No. 11–5621 (MAH), 2013 WL 4874349, at *10 (D.N.J. Sept. 10, 2013) ("Even settlements reached at a very early stage and prior to formal discovery are appropriate when there is no evidence of collusion and the settlement represents substantial concessions by both parties.").  The early stage of the litigation and lack of formal discovery is also not determinative with respect to the objectors' entitlement to discovery.

## VII.   **CONCLUSION**

In conclusion, Co-Lead Class Counsel submit that absent class members already have all of the information they need to determine whether to support, object to or opt out of the proposed Settlement.  In the submission on November 12, 2014 and at the Fairness Hearing, the undersigned will provide the Court with all it needs to determine whether the proposed Settlement should be finally approved.  The broad-based, impermissible discovery sought in the Morey Motion for Discovery will not assist this Court in making the requisite analysis, and as such, the Motion should be denied.

Dated:  October 2, 2014

Respectfully submitted,
/s/ Christopher A. Seeger
Christopher A. Seeger
SEEGER WEISS LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

**Co-Lead Class Counsel**

Sol Weiss
ANAPOL SCHWARTZ
1710 Spruce Street
Philadelphia, PA 19103
Phone: (215) 735-1130
Fax: (215) 735-2024
sweiss@anapolschwartz.com

**Co-Lead Class Counsel**

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that a true copy of the foregoing was served electronically via the

Court's electronic filing system on the 2nd day of October, 2014, upon all counsel of record.

Dated: October 2, 2014

/s/ Christopher A. Seeger

Christopher A. Seeger