**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **Hon. Anita B. Brody** |

**RESPONSE OF THE NATIONAL FOOTBALL LEAGUE
AND NFL PROPERTIES LLC IN OPPOSITION TO
MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY (DOC. NO. 6169)**

The National Football League ("NFL") and NFL Properties LLC (collectively, the "NFL Parties") submit this Response in Opposition to the Motion for Leave to Conduct Limited Discovery filed by Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick Cartwright, Jeff Rohrer and Sean Considine (the "Morey Players"). (Doc. No. 6169 ("Mov. Br.").)

## PRELIMINARY STATEMENT

This motion—filed by absent Settlement Class Members improperly seeking premature, unnecessary and overbroad discovery—should be denied.

The Morey Players are Retired NFL Football Players who are members of the Settlement Class that was preliminarily certified by this Court in conjunction with its preliminary approval of the proposed Class Action Settlement. By their motion, the Morey Players seek leave to serve far-reaching discovery requests concerning, among other topics, settlement negotiations, the merits of plaintiffs' claims and the NFL Parties' defenses, and drafts of the Settlement Class Notice, allegedly to prepare for this Court's Fairness Hearing on November 19, 2014. But the

law in this Circuit and others is clear:  discovery by Settlement Class Members is permitted only after a Settlement Class Member has determined to remain in the Settlement Class *and filed objections to the Settlement's terms*, and only then if the discovery is necessary to create an adequate record for this Court to assess the fairness of the Class Action Settlement.   The Morey Players fall far short of the requisite showing here.

As an initial and dispositive matter, this motion is premature.  This Court set an orderly schedule for final approval of the Class Action Settlement; Settlement Class Members have until October 14, 2014 to opt out of the Settlement Class or remain in it and, if desired, object to the Settlement's terms.  The Morey Players have not yet made their choice.  Thus, under settled law, until the Morey Players elect to stay in the Settlement Class (by not opting out) and submit formal objections to some aspect of the Class Action Settlement, they have no colorable interest at stake in the Class Action Settlement and are not entitled to seek discovery.  The motion should be denied for that reason alone.

Even if the motion were not premature, this Court should not permit the discovery sought by the Morey Players for several additional reasons.

First, contrary to the Morey Players' contentions, there is no presumption of discovery simply because no formal discovery occurred in this case.  Rather, the Morey Players must show that discovery is necessary to create an adequate record for this Court to determine whether the Class Action Settlement is fair and reasonable.  That is not the case here.  Before and at the Fairness Hearing, Class Counsel and the NFL Parties will submit and present to the Court ample evidence to support the fairness of the Class Action Settlement, including affidavits, briefing and testimony on the significant benefits of the Class Action Settlement and the risks that Settlement Class Members would confront in establishing liability and damages through litigation,

including, without limitation, on preemption, statutes of limitation, assumption of risk, causation, and the lack of medical and scientific consensus on relevant issues at the time Settlement Class Members played NFL Football and today.

Second, the vast majority of the Morey Players' proposed discovery requests are grossly overbroad and improper.  Objectors are only entitled to seek discovery into settlement negotiations upon a showing of collusion between Class Counsel and the defendant.  The Morey Players have not made any such showing here.  Nor can they.  As the record reflects, and as this Court already has found, the parties negotiated the Class Action Settlement at arm's-length and in hard-fought negotiations over many months, overseen by both a Court-appointed mediator and a special master.  Thus, the settlement negotiation discovery requests should be rejected.

Discovery on the merits of plaintiffs' claims and the NFL Parties' defenses should also be denied because such requests—going to the heart of the underlying allegations in the litigation and improperly seeking to convert the Fairness Hearing into a mini merits trial—are overbroad and far from the minimal discovery that courts have discretion to permit in advance of a fairness hearing.  Moreover, those requests are wholly irrelevant to the Morey Players' claimed purported "deficiencies" of the Class Action Settlement.

Finally, discovery seeking drafts of the Settlement Notice is improper because it pertains to a legal, not a factual issue—the adequacy of the Settlement Class Notice on its face.  It is either legally sufficient or it is not.  Courts routinely deny motions where, as here, the discovery sought pertains to a purely legal argument and not to a "cogent factual objection" to the settlement because such discovery would not assist the moving party in establishing a point of law at the fairness hearing, and would therefore cause unnecessary delay in the settlement approval process.

In sum, there is no basis and, we respectfully submit, no need for the discovery sought by this motion.  To the extent the Morey Players file objections to the Class Action Settlement, the NFL Parties are prepared at that time to respond to limited discovery concerning the objections should this Court determine that such discovery is necessary for the Court's consideration of the fairness of the Class Action Settlement.

## FACTUAL BACKGROUND

### Litigation and Settlement Negotiation Background

On January 31, 2012, the Judicial Panel on Multidistrict Litigation created *In re National Football League Players' Concussion Litigation* ("MDL 2323") to coordinate and consolidate actions alleging, among other things, that the NFL Parties breached their duties to former players by failing to take reasonable actions to protect them from the alleged risks created by concussive and sub-concussive head injuries.  (Transfer Order, Doc. No. 1; Mem. Order 2, Doc. No. 6083.)

At the initial organizational conference, this Court decided that the NFL Parties' threshold jurisdictional challenge—that Section 301 of the Labor Management Relations Act preempted plaintiffs' claims—should be heard before proceeding to the merits of plaintiffs' claims.  (Tr. of Organizational Courtroom Conference at 28:14-22, Apr. 25, 2012, Doc. No. 71.) Accordingly, the Court ordered expedited briefing on the NFL Parties' motions to dismiss on jurisdictional grounds and stayed all other matters, including discovery.  (*See* Case Management Order No. 2, Doc. No. 64.)  For this same reason, the Court denied a pending discovery motion filed by Co-Lead Class Counsel Sol Weiss of Anapol Schwartz, P.C.  (Order, Aug. 20, 2012, Doc. No. 3384.)

While the NFL Parties' motions to dismiss on jurisdictional grounds were pending, the Court ordered the parties to mediate possible settlement before retired U.S. District Court Judge

Layn R. Phillips.  (Order, July 8, 2013, Doc. No. 5128.)  This "hard-fought" mediation continued over the course of two months, culminating in the execution of a Term Sheet on August 29, 2013.  (*See* Decl. of Layn R. Phillips In Supp. of Prelim. Approval of Settlement ¶¶ 5-6, Doc. No. 6073-4.)  On January 6, 2014—after four additional months of negotiation—a motion for preliminary approval of a proposed settlement agreement and preliminary class certification was filed in this Court.  (Mem. Order 3, Doc. No. 6083.)  Approximately one week later, the Court denied the motion for preliminary approval of the settlement without prejudice and assigned a Special Master, Perry Golkin, to supervise the parties' efforts to reach a revised settlement addressing the Court's concern as to the sufficiency of the proposed settlement fund.  (*Id.* at 3.)

Guided by the Court's opinion and the Special Master, the parties negotiated for another five months and agreed to a revised settlement nearly a year after being ordered to the negotiation table.  The revised Settlement Agreement provided the Court with the assurance that "all Retired NFL Football Players who ultimately receive a Qualifying Diagnosis or their related claimants will be paid."  (*Id.*)  On June 25, 2014, Class Counsel filed a motion seeking preliminary approval of the revised Class Action Settlement Agreement and class certification. (Doc. No. 6073.)

### Preliminary Settlement Approval and Certification

On July 7, 2014, this Court preliminarily approved the Class Action Settlement and preliminarily certified a Settlement Class.  (Order, July 7, 2014, Doc. No. 6084 (the "Prelim. Approval Order").)  The Court concluded that the proposed settlement was the "product of good faith, arm's length negotiations."  (Mem. Order 10, Doc. 6083.)  The Court found that "[t]he parties attended numerous mediation sessions and aggressively asserted their respective positions" over the course of two months of mediation, and "since the denial without prejudice of

5

the prior motion for preliminary approval, the parties, with guidance from Special Master Golkin, conducted further hard-fought negotiations[.]" (*Id.*)  The Court further held that the various counsel "possess adequate information concerning the strengths and weaknesses of Plaintiffs' claims against the NFL Parties," "ensure[d] that all Settlement Class Members' interests were protected," and reached a proposed Settlement Agreement that "does not appear to provide undue preferential treatment to any individual Settlement Class Member or Subclass." (*Id.* at 10, 11.)  The Court established a schedule in which Settlement Class Members may object to the Settlement Agreement, or opt out of the Class Action Settlement, by October 14, 2014, and may notice their intent to speak at the November 19, 2014 Fairness Hearing by November 3, 2014.  (Prelim. Approval Order ¶ 4(g)-(i).)

**The Morey Players**

The Morey Players are seven Retired NFL Football Players and Settlement Class Members, none of whom filed suit against the NFL Parties.  Instead, the Morey Players' involvement in this litigation began on May 5, 2014—approximately four months after the Court's denial of the January 6, 2014 motion for preliminary approval and class certification, and only weeks before the parties announced a proposed revised Settlement Agreement they had negotiated over the prior five months under the supervision of Special Master Golkin.  In their motion, the Morey Players sought to intervene on the grounds that the proposed Class Representatives purportedly did not adequately represent them and the rejected settlement purportedly did not compensate Settlement Class Members with symptoms associated with Chronic Traumatic Encephalopathy ("CTE").  (Mot. to Intervene 1-2, Doc. 6019.)[1]  Following

---

[1]     On July 29, 2014, the Court denied the Morey Players' motion to intervene, and the Morey Players appealed to the Third Circuit.  On September 12, 2014, the Morey Players filed a motion to withdraw their appeal and it was closed on September 18, 2014.

submission of the revised settlement in June 2014, the Morey Players filed objections to preliminary approval.  After the Court issued the July order preliminarily approving the Class Action Settlement and preliminarily certifying the class, the Morey Players petitioned the Third Circuit for leave to file an interlocutory appeal of that order.  (Pet. of Objecting Class Members, *In re Nat'l Football League Players' Concussion Injury Litig.*, No. 14-8103 (3d Cir. July 21, 2014).)  The Third Circuit held oral argument on September 10, 2014, at which time—in contrast to the instant motion—the Morey Players asserted that no discovery was necessary to determine if the proposed Class Representatives were adequate for purposes of Rule 23 based on the distribution terms of the Settlement Agreement.  (*See* Decl. of Douglas M. Burns Ex. A, at 31, *In re Nat'l Football League Players' Concussion Injury Litig.*, No. 14-8103 (3d Cir. Sept. 10, 2014) (arguing the inadequacy of the class representatives is "clear on the face of the record.").)  On September 11, 2014, the Third Circuit denied the Morey Players' petition.  (Order at 1, *In re Nat'l Football League Players' Concussion Injury Litig.*, No. 14-8103 (3d Cir. Sept. 11, 2014).)

**The Discovery Motion**

Three days after arguing to the Third Circuit that the record already was sufficient to review the Class Action Settlement, the Morey Players filed their Motion for Leave to Conduct Limited Discovery on September 13, 2014.  (Mov. Br.)  Although the Morey Players have not yet filed any objections to final approval of the proposed settlement, their motion claims that the Class Action Settlement suffers from three "substantial defects":  (1) the settlement fails to compensate CTE diagnosed after July 7, 2014, and the Class Representatives cannot adequately represent the Morey Players because neither alleges to suffer from CTE or an increased risk of CTE; (2) the settlement includes a 75% Offset for claimants suffering from a non-NFL Football-related Stroke or Traumatic Brain Injury; and (3) seasons played in NFL Europe are not credited

as Eligible Seasons when calculating a claimant's Monetary Award.  (Mov. Br. 2-6.)  The Morey Players also allege "other deficiencies," such as the purported inadequacy of the Settlement Class Notice sent to Settlement Class Members, the complexity of the claims process, and the amount of attorneys' fees sought by Class Counsel.[2]  (*Id.* at 6-7.)

The Morey Players' motion attaches nine proposed document requests, seven proposed interrogatories, and one proposed deposition notice that seek discovery from both Class Counsel and the NFL concerning:

- *Settlement negotiations between the parties*, including all documents and information "exchanged among [the settlement parties]" (Doc. Req. 1, Interrog. 6, Dep. Topic 3); all "drafts of the Settlement" and "the earlier settlement agreement that was filed in this action on January 6, 2014" (Doc. Req. 2); and deposition testimony concerning "[h]ow the amounts were calculated for the Baseline Assessment Program" and the "Monetary Award Fund in the initial settlement proposed to the Court on January 6, 2014" (Dep. Topic 6)

- *The merits of plaintiffs' claims and the NFL's defenses*, including "all player surveys, physician surveys, and data sets regarding the consequences of TBIs among football players" (Doc. Req. 4); any "cost/benefit analyses performed concerning injuries resulting from TBIs and changes to NFL football, including changes to the rules of the game" (Doc. Req. 5); "[m]aterials provided by the NFL Parties to members of the MTBI Committee" (Doc. Req. 7); "[a]ll documents reflecting health risks to football players associated with TBIs" (Doc. Req. 9); and deposition testimony concerning the NFL's "aware[ness] that multiple blows to the head can lead to long-term brain injury" (Dep. Topic 1) and whether "the NFL misled players, coaches, trainers, and the public, and actively spread disinformation regarding the potential consequences of TBIs" (Dep. Topic 2)

---

[2]  The NFL Parties expressly reserve the right to oppose the merits of the Morey Players' purported "deficiencies" with respect to the Class Action Settlement upon a properly filed objection to final approval of the Class Action Settlement, including, without limitation, because:  (i) the Settlement Agreement compensates known, studied conditions that manifest in actual neurocognitive or neuromuscular impairment and compensates Death with CTE prior to July 7, 2014 because Retired NFL Football Players who died prior to July 7, 2014 and were diagnosed post-mortem with CTE by a qualified neuropathologist were unable to avail themselves of the criteria set forth in the Settlement Agreement to receive a different Qualifying Diagnosis; (ii) the non-football-related Stroke and Traumatic Brain Injury Offsets are scientifically justified and otherwise fair and reasonable; and (iii) claims involving NFL Europe face unique legal and factual challenges beyond the substantial legal and factual challenges in litigation faced by former players who played in the NFL itself.

- *All "drafts of the long form and short form notice sent to the class"* (Doc. Req. 3)

- *Information underlying certain compensable injuries and Monetary Award Offsets under the Class Action Settlement*, including why the Settlement "provide[s] a Monetary Award of up to $4 million to retired NFL players who died with CTE prior to July 7, 2014, but does not provide the same Monetary Award to a retired NFL player who dies with CTE after that date" (Interrog. 3); why the Settlement "provide[s] a 75% reduction in any Monetary Award to retired NFL players who suffer a stroke or who incur a single TBI" (Interrog. 4); and why the Settlement "exclude[s] credit for years played in the World League of American Football, the NFL Europe League or the NFL Europa League" (Interrog. 5)

(*See* Mov. Br. Ex. A.)

For the reasons below, the motion should be denied.

## ARGUMENT

## I.   THE MOTION IS PREMATURE

Under settled Third Circuit law, only *objectors*—individuals who have elected to remain in the settlement class and, in turn, filed formal objections to final approval of the settlement—are entitled to seek discovery in advance of the fairness hearing.  *See* Manual for Complex Litigation § 21.643 (4th ed. 2004) ("*Objectors* might seek . . . discovery to demonstrate the inadequacy of the settlement.") (emphasis added); 4 Newberg on Class Actions § 13:32 (5th ed. 2014) ("[*O*]bjectors have a 'due process right to present their challenge in a meaningful way,' but [] they do not have an absolute right to discovery." (emphasis added) (quoting *Hershey* v. *ExxonMobile Oil. Corp.*, 2012 WL 4758040, at *1 (D. Kan. 2012))); *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 316 (3d Cir. 2005) ("*Girsh* cannot stand for the proposition that, as a general matter, *objectors* have an absolute right to discovery." (emphasis added)) (citing *In re*

*Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 24 (D.D.C. 2001)); *Greenfield* v. *Villager Indus., Inc.*, 483 F.2d 824, 833 (3d Cir.1973) ( "[A]n *objector* . . . is entitled to an opportunity to develop a record in support of his contentions by means of cross-examination and argument to the court." (emphasis added)); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 325 (3d Cir. 1998) (same).

This is because until an absent class member has committed to remaining in the settlement class (by not opting out), such class member has no "colorable" interest in the settlement and is not entitled to delay the approval process by seeking discovery. *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 363, 366 (D.D.C. 2001) (finding that if courts permitted absent class members access to class discovery in order to help them decide whether to opt out of the settlement class, all parties "could be overwhelmed with discovery and information requests by innumerable potential class members whose ultimate allegiance may not be disclosed until an election is made to participate within the class or to be excluded") (internal citations omitted). Thus, courts deny discovery motions in these circumstances because delaying the settlement process before a class member has filed objections is inappropriate and "could contravene the interests of the class as a whole, particularly if [the class member] should ultimately decide to opt-out of the class." *In re Potash Antitrust Litig.*, 162 F.R.D. 559, 561 n.3 (D. Minn. 1995).

For example, in *In re Lorazepam & Clorazepate Antitrust Litigation*, absent settlement class members sought leave to propound a document request seeking class counsel's expert damages analysis. *Id.*, 205 F.R.D. 363, 365. As here, the absent settlement class members had neither filed objections to final settlement approval nor opted out of the settlement class. *Id.* Nevertheless, relying on the same cases that the Morey Players cite here—*Girsh* and *In re*

*General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106 (7th Cir. 1979) ("*In re G.M. Engine Interchange*")—the class members argued that discovery "concerning the adequacy of the settlement fund" was needed to advise their clients about whether to opt out of the settlement. *Lorazepam*, 205 F.R.D. 363, 365. The *Lorazepam* court denied the motion as premature, agreeing with the plaintiffs that:

> [The moving] class members have three choices at this juncture: participate in the class by not opting out, participate in the class and file objections to the terms of the settlement to be heard at the fairness hearing in November 2001, or opt out and preserve their rights separately to prosecute their claims. Until the [class members] have made their decision to stay in the class by not opting out or until they have properly intervened, [the class members] are not entitled discovery.

*Id.* 205 F.R.D. 363, 365-66. In so holding, the district court noted that *Girsh* and *In re G.M. Engine Interchange* were "inapposite" because both cases "were decided in the context of appeal from final approval of the settlements," and "involved actual class members—individuals that had not opted out—who had objected to the fairness of settlement and had been denied relevant and important discovery." *Id.* at 366. The court contrasted that situation from the one before it, in which the court had "not yet determined the fairness of the settlement for final approval purposes" and the moving settlement class members "have not committed to remaining in the class, let alone made objections to the settlement." *Id.* (noting similarities to *Potash*, 162 F.R.D. at 560-61).

That is precisely the case here. This Court has provided the Morey Players with a vehicle and a forum to present their concerns about the fairness of the Class Action Settlement. The Court's July 7, 2014 Order provides that Settlement Class Members, including the Morey Players, may file objections by October 14, 2014 and request to speak at the November 19, 2014 Fairness Hearing. (Prelim. Approval Order at ¶ 4(h)-(i).) Alternatively, the Morey Players may

opt out of the Class Action Settlement by October 14, 2014.  (*Id.* at ¶ 4(g).)  Until the Morey Players make an election to remain in the Settlement Class—which they have not yet done—they have no "colorable" interest in the settlement and their motion to conduct discovery is premature and should be denied.  *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 363, 366-67; *Potash*, 162 F.R.D. at 560-62.

## II.   THE MOREY PLAYERS ARE NOT ENTITLED TO THE DISCOVERY THEY SEEK

Even if the motion were not premature, the Morey Players have no absolute right to discovery; rather, they must show that such discovery is necessary for this Court to have an adequate record on which to determine whether the Class Action Settlement is fair and reasonable.  The Morey Players—seeking to propound overbroad and irrelevant discovery— make no such showing here.

### A.   The Morey Players Have No Presumptive Right To Discovery

Objectors do not have an absolute right to discovery to prepare for a fairness hearing. *See, e.g.*, *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 316 (3d Cir. 2005); *see also* 4 Newberg on Class Actions § 13:32 (5th ed. 2014) ("[objectors] do not have an absolute right to discovery" (internal quotation marks omitted)); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 24, 26 (D.D.C. 2001) ("Class members who object to a class action settlement do not have an absolute right to discovery.").  Instead, the Court has wide discretion to permit objectors to take "minimal" discovery only where it will aid the Court in evaluating the fairness of the settlement. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 342 (3d Cir. 1998) ("[W]hether to grant discovery is committed to the sound discretion of the court."); Manual for Complex Litigation § 21.643 (4th ed. 2004) ("Discovery should be minimal and

conditioned on a showing of need, because it will delay settlement, introduce uncertainty, and might be undertaken primarily to justify an award of attorney fees to the objector's counsel.").

Contrary to the Morey Players' contentions (*see* Mov. Br. 2), the absence of formal discovery does not create an automatic right to objector discovery.  Instead, the inquiry still turns on whether the court will have before it "sufficient facts intelligently to approve the settlement offer"; if it will, then there is no reason to conduct discovery.  *Wal-Mart Stores, Inc.* v. *Visa U.S.A., Inc.*, 396 F.3d 96, 120 (2d Cir. 2005); *cf. In re Cmty. Bank*, 418 F.3d at 316 (highlighting that [objector] likely "has developed sufficient facts regarding this matter and its prospective settlement value such that it would be able to present a cogent and supportable objection at the fairness hearing").

None of the cases the Morey Players cite holds otherwise.[3]  In *In re Community Bank of Northern Virginia*, 418 F.3d 277 (3d Cir. 2005), no formal discovery had occurred.  Prior to the final settlement fairness hearing, the objectors asked the court to lift a discovery ban so that they could depose several of the named plaintiffs and class counsel.  *Id.* at 291. The district court issued an order four days before the fairness hearing denying the requested discovery and ordering that objectors "[i] could not issue any further discovery requests or subpoenas without

---

[3]   *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768 (3d Cir. 1995), on which the Morey Players rely (Mov. Br. 2) is inapposite.  Contrary to the Morey Players' contention, the court there did not hold that the absence of discovery entitled objectors to settlement discovery.  Rather, the court found that Class Counsel had inadequately represented the objectors' interests due not only to their failure to conduct discovery, but also due to a range of factors including the fact that only "four months [had] elapsed from the filing of the consolidated complaint to the reaching of the settlement agreement," *id.* at 813, the "conspicuous evidence" of intra-class conflict, *id.* at 801, the fact that the settlement "involve[d] only non-cash relief," *id.* at 803, and "arguably did not maximize the class members' interests," *id.*, the "the failure to disclose the amount of the award in the class notice," *id.*, and the "strong indications that . . . at least some portion of the fees and expenses . . . [were] negotiated simultaneously with the settlement."  *Id.* at 804.  Such facts do not exist here.  The Morey Players' reliance on *Girsh* and *In re G.M. Engine Interchange*, 594 F.2d 1106, is similarly inapposite (*see infra*. pp. 10-11).

prior approval of the Court; . . . [ii] could not present testimony of any witness at the final fairness hearing without prior approval of the Court; and [iii] that all prior subpoenas purporting to require a witness or party to attend and testify at the final fairness hearing were thereby void." *Id*. at 292 (internal quotation marks omitted).   After the district court refused to approve discovery or allow testimony of any witnesses at the fairness hearing, the objectors appealed. The Third Circuit noted that although "no formal discovery was undertaken by class counsel," it was nevertheless "likely that [counsel for objectors] ha[d] developed sufficient facts regarding this matter and its prospective settlement value such that it would be able to present a cogent and supportable objection at the fairness hearing," given that counsel for objectors had previously litigated two similar suits.  *Id*. at 316.  As a result, the court stated that it was "inclined to *agree* with the settling parties that the District Court's Order limiting discovery was not an abuse of discretion," but noted that it was unable to conclusively so hold, given the limited record before it.  *Id*. at 317 (emphasis added).  The Third Circuit thus remanded so that the district court could "develop fully the record" and reevaluate whether discovery would aid the court   *Id*. Importantly, the Third Circuit did *not* hold that there was an absolute right to discovery where no formal discovery was conducted; nor did it hold that the objectors were entitled to discovery in that circumstance.  It simply confirmed the settled law that limited discovery is proper only where it will aid the court.

Here, the Morey Players have not been denied an opportunity to participate in the Fairness Hearing—indeed, as argued above, they have not even filed formal objections to final approval of the Class Action Settlement or noticed their intent to appear at the Fairness Hearing. They therefore cannot claim that they are being denied "meaningful participation" at the Fairness Hearing or that they are being presented with the Class Action Settlement as a "*fait accompli*."

*Bell Atl. Corp.* v. *Bolger*, 2 F.3d 1304, 1315 (3d. Cir. 1993) (distinguishing *Girsh* on this basis and affirming district court's holding that objectors not entitled to discovery).

More important, the Morey Players cannot demonstrate that this Court will lack a sufficient record to determine the fairness of the Class Action Settlement at the Fairness Hearing. On the contrary, this Court will have the opportunity to review all objections filed, responses to objections and papers in support of final approval of the Class Action Settlement filed by Class Counsel and the NFL Parties, and the record of the Fairness Hearing itself.  The NFL Parties and Class Counsel will present briefing in advance of the Fairness Hearing, and argument and evidence at the Fairness Hearing, on the significant benefits of the Class Action Settlement and the risks that Settlement Class Members would confront in establishing liability and damages through litigation, including, without limitation, on preemption, statutes of limitation, assumption of risk, causation, and the lack of medical and scientific consensus on relevant issues at the time Settlement Class Members played NFL Football.  (*See, e.g.*, Mem. Order 10-11, Doc. No. 6083.)  These presentations, on these issues and others, will be more than sufficient for the Court to assess whether the Class Action Settlement is fair, reasonable and adequate.  The Morey Players' blanket contention that the absence of formal discovery somehow creates an insufficient record falls short of justifying discovery, let alone the over-reaching discovery sought by the Morey Players here.

### B.    The Discovery Requests Are Overbroad

To the extent that the Court finds that discovery would assist it, that discovery must be limited and directly related to the fairness of the settlement.  *See, e.g.*, Manual for Complex Litigation § 21.643 (4th ed. 2004) ("A court should monitor post-settlement discovery by objectors and limit it to providing objectors with information central to the fairness of the

proposed settlement."); A Practitioner's Guide to Class Actions § 7(VI)(B)(3) (2010) (same). Far from seeking limited discovery related to the fairness of the Class Action Settlement, the Morey Players' overbroad discovery requests should be rejected because: (i) discovery concerning settlement negotiations is improper where there is no evidence of collusion; (ii) discovery concerning the merits of the litigation is overbroad and risks converting the fairness hearing into a trial on the merits; and (iii) discovery concerning drafts of the Settlement Class Notice is improper as it serves only to further the Morey Players' legal argument—that the Notice is "false on its face"—and not a factual issue that would otherwise require discovery.

### 1. Discovery seeking settlement negotiations is improper absent evidence of collusion

The Morey Players contend that they are entitled to broad discovery concerning settlement negotiations between the parties.[4] They are wrong. Objectors may only seek discovery into settlement negotiations upon presenting evidence of collusion between class counsel and the defendants. *See Lobatz* v. *U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000) ("[s]ettlement negotiations involve sensitive matters" and "'discovery of settlement negotiations is proper only where the party seeking it lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive'") (quoting *Mars Steel Corp.* v. *Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 834 F.2d 677, 684 (7th Cir. 1987)

---

[4]   *See, e.g.*, Doc. Req. 1, Interrog. 6, Dep. Topic 3 (documents and information exchanged among the settlement parties); Doc. Req. 2 ("drafts of the Settlement" and "the earlier settlement agreement that was filed in this action on January 6, 2014"); and Dep. Topic 6 ("[h]ow the amounts were calculated for the Baseline Assessment Program" and the "Monetary Award Fund in the initial settlement proposed to the Court on January 6, 2014"). (Mov. Br. Ex. A.)

(Posner, J.)); *Thornton* v. *Syracuse Sav. Bank*, 961 F.2d 1042, 1046 (2d Cir. 1992) (quoting the same).[5] The Morey Players do not present any such evidence here.

Nor could they. The Court-appointed mediator submitted a declaration stating that "the parties engaged in arm's-length, hard-fought negotiations" conducted over "more than twelve full days" of formal mediation and through "considerable hours" outside the formal sessions during which the parties discussed issues relating to possible settlement with the mediator "[o]n almost every day between [his] appointment as mediator and the announcement of the settlement." (*See* Decl. of Layn R. Phillips In Supp. of Prelim. Approval of Settlement at ¶¶ 5-6, Doc. No. 6073-4.) The Court's preliminary approval opinion concluded that the proposed settlement was the "product of good faith, arm's length negotiations." (Mem. Order 10, Doc. No. 6083.) The Court found that "[t]he parties attended numerous mediation sessions and aggressively asserted their respective positions" over the course of two months of mediation, and "[s]ince the denial without prejudice of the prior motion for preliminary approval, the parties, with guidance from Special Master Golkin, conducted further hard-fought negotiations[.]" (*Id.*) The Court further held that the various counsel "possess adequate information concerning the strengths and weaknesses of Plaintiffs' claims against the NFL Parties," "ensure[d] that all Settlement Class Members' interests were protected," and reached a proposed Settlement

---

[5]   *See also Vollmer* v. *Publishers Clearing House*, 248 F.3d 698, 708 (7th Cir. 2001); *Hershey* v. *ExxonMobil Oil Corp.*, 2012 WL 4758040, at *1-2 (D. Kan. Oct. 5, 2012); *Jaffe* v. *Morgan Stanley & Co., Inc.*, 2008 WL 346417, at *6 (N.D. Cal. Feb. 7, 2008); *Hemphill* v. *San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 620 (S.D. Cal. 2005); *In re Lupron Marketing & Sales Practices*, 2005 WL 613492, at *2 (D. Mass. Mar. 16, 2005); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553, 562 (W.D. Wash. 2004) (citing *White* v. *Nat'l Football League*, 822 F. Supp. 1389, 1429 (D. Minn. 1993)); *Lorazepam*, 205 F.R.D. 24, 28; *In re Domestic Air Transp. Antitrust Litig.*, 144 F.R.D. 421, 424 (N.D. Ga. 1992); *Bowling* v. *Pfizer, Inc.*, 143 F.R.D. 141, 146 (S.D. Ohio 1992); A Practitioner's Guide to Class Actions § 7(VI)(B)(3) (2010); Manual for Complex Litigation § 21.643 (4th ed. 2004).

Agreement that "does not appear to provide undue preferential treatment to any individual Settlement Class Member or Subclass." (*Id.* at 10, 11.)

The Morey Players' assertion that the "timing of [class counsel's] $112.5 million legal fee . . . and its size in comparison to the apparent amount of work done" somehow establishes collusion has no merit. (Mov. Br. 7.) The Morey Players cannot show that the parties so much as *discussed* the issue of attorneys' fees prior to reaching agreement on the key Settlement terms. As Class Counsel explained in its brief in support of preliminary approval, "the Settling Parties did not discuss the issue of attorneys' fees . . . until *after* an agreement in principal was reached on all material Settlement terms providing benefits to the Settlement Class and Subclass Members and *after* the Term Sheet was inked, in an abundance of caution and consistent with *Prandini* v. *National Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978)." (Mem. In Supp. of Prelim. Approval 30, Doc. No. 6073-5.) Courts deny discovery motions in these circumstances. *See*, *e.g.*, *Lobatz*, 222 F.3d at 1147-48 (objector failed to demonstrate collusion despite allegation that class counsel "agreed to take excessive attorney fees and costs from the defendants in exchange for entering into an unfair class settlement"); *see also In re Lupron Mktg. and Sales Practices*, 2005 WL 613492, at *3 (D. Mass. Mar. 16, 2005) (intervenors "failed to make any independent showing . . . of collusion," despite allegations that (1) the settlement was announced on the eve of intervenors' separate trial, (2) the class members were entitled to more money than the settlement provided, and (3) the settlement may have released non-contributing parties from liability); *Klein* v. *O'Neal, Inc.*, 2010 WL 234806, at *4 (N.D. Tex. Jan. 21, 2010) ("[Objector's] suspicion that class counsels' interest was mainly to get a deal done that would benefit the entire

class does not merit his open-ended and wide-ranging discovery request.") (internal quotation marks and citation omitted).[6]  So, too, here.

### 2.    Discovery concerning the litigation merits is overbroad because it risks turning the Fairness Hearing into a trial on the merits

The Morey Players further contend that they are entitled to discover any information that is "vital to understanding the strengths and weaknesses of the NFL's defenses on the merits."[7] (Mov. Br. 11.)  But such discovery requests are designed essentially to put them in a position to litigate the underlying claims at trial, not assist the Court in determining the fairness of the Class Action Settlement.  The case law is clear that settlement discovery must not convert settlement hearings into mini-trials on the merits.  *Bell Atl. Corp.*, 2 F.3d at 1315 ("the temptation to convert a settlement hearing into a full trial on the merits must be resisted") (quoting *Mars Steel Corp.* v. *Continental Ill. Nat'l Bank & Trust Co. of Chi.*, 834 F.2d 677, 684 (7th Cir.1987)).

Although the *Girsh* factors—which the Third Circuit considers in determining the settlement's fairness—require the Court to consider "the *risks* of establishing liability" and "the

---

[6]    The Morey Players' reliance on *Eubank* v. *Pella Corporation*, 753 F.3d 718 (7th Cir. 2014) to support the argument that they are entitled to discovery concerning settlement negotiations is misplaced.  (Mov. Br. 11.)  The settlement negotiations in *Eubank* involved serious conflicts of interest not present here, including the facts that the class representative was lead class counsel's son-in-law and that one lawyer "switch[ed] sides in the same lawsuit." *Id.* at 721-23.  These improprieties led the appellate court to conclude that "almost every danger sign in a class action settlement that our court and other courts have warned district judges to be on the lookout for was present in this case." *Id.* at 728.  No such facts exist here.

[7]    The Morey Players' discovery requests seek the following broad categories of information concerning the merits: *see* Doc. Req. 4 ("All player surveys, physician surveys, and data sets regarding the consequences of TBIs among football players."); Doc. Req. 5 ("cost/benefit analyses performed concerning injuries resulting from TBIs and changes to NFL football, including changes to the rules of the game"); Doc. Req. 7 ("Materials provided by the NFL Parties to members of the MTBI Committee"); Doc. Req. 9 ("All documents reflecting health risks to football players associated with TBIs."); Dep. Topic 1 (the NFL's "aware[ness] that multiple blows to the head can lead to long-term brain injury"); Dep. Topic 2 (whether "the NFL misled players, coaches, trainers, and the public, and actively spread disinformation" regarding the potential consequences of TBIs).  (Mov. Br. Ex. A.)

*risks* of establishing damages," *Girsh*, 521 F.2d at 157 (emphasis added), the full scope of discovery is inappropriate in the settlement context. *See, e.g.*, *In re Amsted Indus., Inc. Litig.*, 521 A.2d 1104, 1107 (Del. Ch. 1986) ("full scope of discovery afforded by Rule 26(b), which is designed to place a litigant in position to litigate his claims at trial, is not appropriate in [the settlement fairness hearing] setting" because purpose of the fairness hearing is "not the final determination of the merits of claims or defenses asserted in such litigation, but, rather, an assessment of the overall fairness of the compromise").  The Morey Players cite no authority that would support a full merits review like the one they seek here, as they cannot.  Indeed, the weight of the authority in this Circuit cautions against a full merits review in favor of a determination of the "burden" plaintiffs would face in establishing liability and damages at trial. *See In re Prudential*, 148 F.3d at 319-20 (assessing the possible risks of litigation and the legal and practical difficulties plaintiffs will face at trial, rather than conducting a full review of the merits of plaintiffs' claims).  No discovery is necessary to evaluate the risks to the class in litigating this action, especially given the clear issues of law, including, without limitation, on preemption, statutes of limitation, assumption of risk, causation, and the lack of medical and scientific consensus on relevant issues at the time Settlement Class Members played NFL Football and today.

Moreover, the merits discovery sought here has nothing to do with the Morey Players' criticisms of (and presumably objections to) the Class Action Settlement that they claim render it unfair:  the lack of compensation for CTE diagnosed after July 7, 2014; the 75% Monetary Award Offset for non-NFL Football related Strokes or Traumatic Brain Injury; and the decision not to treat years of play in NFL Europe as Eligible Seasons.  (Mov. Br. 3-6.)  Accordingly, their merits discovery requests should be rejected. *See, e.g.*, *In re Oil Spill by the Oil Rig "Deepwater*

*Horizon" in the Gulf of Mex.*, *on April 20, 2010*, 2012 WL 11875861, at *3 (E.D. La. Sept. 25, 2012) ("None of the Objectors demonstrate how their discovery is required to enable them to support their objections, . . .").

### 3. Discovery concerning the Settlement Notice is improper because it pertains to legal, not factual issues

So, too, should the Morey Players' discovery request seeking "[a]ll drafts of the long form and short form notice sent to the class." (*See* Doc Req. 3, Mov. Br. Ex. A.)  Discovery is "unnecessary" where the objection "focuse[s] primarily on legal issues," *In re Prudential,* 148 F.3d at 325, rather than "cogent factual objections."  *Weinberger* v. *Kendrick*, 698 F.2d 61, 79 (2d Cir. 1982) (denying discovery where "[t]he only objections raised by appellants which have required serious consideration deal with points of law").  The Morey Players do not and cannot explain how fact discovery concerning drafts of the Settlement Class Notice would aid the Court in determining the purely legal question of whether the final Notice was legally sufficient "on its face." (Mov. Br. 6.)  There is no dispute here what the Settlement Class Notice said.  It is either legally sufficient or it is not.  Nor can they explain why drafts of the Settlement Class Notice that were *not* sent to class members bear any relevance to determining whether the final notice that was distributed is legally sufficient.  None of the cases the Morey Players cite on this issue offers any justification for seeking drafts of the Settlement Class Notice because none of the cases deals at all with the issue of discovery.  *See Bell Atl. Corp.*, 2 F.3d at 1317 (articulating legal standard for notice to class members); *Dewey* v. *Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012) (opining on when intra-class conflicts will defeat the adequacy requirement).

**III.   THE NFL PARTIES WILL AGREE TO APPROPRIATELY CIRCUMSCRIBED DISCOVERY IN RESPONSE TO A TIMELY AND APPROPRIATELY TAILORED REQUEST**

If the Court determines that limited discovery is appropriate, the NFL Parties will, at the appropriate time after the filing of formal objections to the Class Action Settlement and in response to an appropriately tailored discovery request, provide relevant, non-privileged information directly related to the objections and designed to assist the Court in assessing the Settlement's fairness.   In particular, the NFL Parties would not object to responding to Interrogatory No. 3 (why Settlement provides Monetary Award to Retired NFL Football Players who died with CTE prior to July 7, 2014 but not to those who died with CTE after that date); Interrogatory No. 4 (why Settlement provides a 75% reduction in any Monetary Award to Retired NFL Football Players who suffer stroke or incur a non-football related TBI); and Interrogatory No. 5 (why Settlement excludes credit for years played in the World League of American Football, NFL Europe League or NFL Europa League).[8]

\*       \*       \*

In sum, Class Counsel and the NFL Parties will make an ample record in support of final approval of the Class Action Settlement—both through submissions in advance of the Fairness Hearing and at the Hearing itself—and in response to properly filed objections.   In addition, objectors will have the opportunity both to present their arguments through written objections

---

[8]   The Morey Players, however, are not entitled to discovery by deposition testimony, and their duplicative discovery requests—which propound numerous discovery devices—are improper and unduly burdensome, particularly in the settlement context where "[d]iscovery should be minimal and conditioned on a showing of need, because it will delay settlement, introduce uncertainty, and might be undertaken primarily to justify an award of attorney fees to the objector's counsel." Manual for Complex Litigation § 21.643 (4th ed. 2004); *see also* Fed. R. Civ. P. 26(b)(2)(C) ("the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive").

and to seek permission of the Court to present oral argument at the Fairness Hearing. The orderly schedule set forth by the Court in its July 7, 2014 Order will serve the interests of all interested parties. Discovery, particularly the type sought here, will only serve to delay the Fairness Hearing and the Class Action Settlement, contravening the interests of all involved.

## CONCLUSION

For the reasons set forth above, the Court should deny the Morey Players' motion.

Dated:  October 2, 2014      Respectfully submitted,

               /s/ Brad S. Karp
               Brad S. Karp
               Theodore V. Wells Jr.
               Bruce Birenboim
               Lynn B. Bayard
               PAUL, WEISS, RIFKIND, WHARTON &
                 GARRISON LLP
               1285 Avenue of the Americas
               New York, NY  10019-6064
               Main: 212.373.3000
               Fax: 212.757.3990
               bkarp@paulweiss.com
               twells@paulweiss.com
               bbirenboim@paulweiss.com

               Beth A. Wilkinson
               PAUL, WEISS, RIFKIND, WHARTON &
                 GARRISON LLP
               2001 K Street, NW
               Washington, DC 20006-1047
               Main: 202.223.7300
               Fax: 202.223.7420
               bwilkinson@paulweiss.com

               and

               Robert C. Heim (Pa. Atty. ID 15758)
               DECHERT LLP
               Cira Centre

2929 Arch Street
Philadelphia, PA 19104-2808
Main: 215.994.4000
Fax: 215.994.2222
Robert.heim@dechert.com

**Attorneys for National Football League and
NFL Properties LLC**

### ***Certificate of Service***

On October 2, 2014, I electronically filed a copy of the foregoing document through the CM/ECF system for the United States District Court for the Eastern District of Pennsylvania, which will send a notice of electronic filing to all counsel of record and make it available for viewing and downloading from the CM/ECF system.

/s/ Brad S. Karp
Brad S. Karp
