EXHIBIT  A

```
1

2

3

4

5

6

7

8

9

10

11

12

13    T1000 - In re NFL Concussion

14    No. 14-8103

15

16

17

18

19

20

21

22

23

24

25
```

1                    JUDGE THOMAS AMBRO: We have one matter

2     this afternoon and that is In Re National

3     Football League Players Concussion Injury

4     Litigation, Number 14-8103. Mr. Molo, Mr.

5     Car...or Professor Issacharoff and Mr. Birenboim,

6     whenever you're ready.

7                    STEVEN MOLO: May it please the Court,

8     my name is Steven Molo and I represent the

9     Petitioners, seven former players in the NFL, who

10    are objecting to the class action settlement.

11                   JUDGE THOMAS AMBRO: Do you wish to

12    reserve any time for rebuttal?

13                   STEVEN MOLO: I would like to reserve

14    five minutes of time for rebuttal.

15                   JUDGE THOMAS AMBRO: That's fine. There

16    are essentially two questions. One that we've

17    asked you whether we have the authority or

18    discretion--

19                   STEVEN MOLO: I know.

20                   JUDGE THOMAS AMBRO: --to hear an appeal

21    under Rule 23(f) and whether if so, we should do

22    so. So let's begin with the first one, whether we

23    have the authority to hear--

24                   STEVEN MOLO: So--

25                   JUDGE THOMAS AMBRO: --this appeal.

1    JUDGE D. BROOKS SMITH: Of this order.

2    JUDGE THOMAS AMBRO: Of this order--

3    STEVEN MOLO: Of this order.

4    JUDGE THOMAS AMBRO: --the July 7th

5 order.

6    STEVEN MOLO: This court has the

7 authority to fix this because 23(f) says, "A

8 court of appeals may permit an appeal from an

9 order granting or denying class certification."

10    JUDGE D. BROOKS SMITH: So what this had

11 to be was an order granting or denying class

12 action certification?

13    STEVEN MOLO: That is correct, Judge

14 Smith, because--

15    JUDGE D. BROOKS SMITH: How is it then?

16    STEVEN MOLO: Because Rule 23 only has

17 one provision that says you're either granting a

18 class certification, or you're not. There's no

19 intermediate step that can be taken. And for the

20 court here, the court did two things. One, she

21 certified a class. And second, she preliminarily-

22 -

23    JUDGE D. BROOKS SMITH: How do you

24 certify a class and then set a date for the

25 certification of a class at a later time?

1            STEVEN MOLO: No, there wasn't a date

2    for certification of class. There was a date set

3    for a fairness hearing on whether or not the

4    settlement was fair, adequate and reasonable.

5            JUDGE D. BROOKS SMITH: What did she say

6    earlier in her order relative to certification?

7            JUDGE KENT A. JORDAN: Yeah, I thought

8    she stated quote "At the preliminary approval

9    stage, a court may conditionally certify the

10   class for purpose of providing notice, leaving

11   the final certification decision for the

12   subsequent fairness hearing."  That's on page 12

13   of her July 7th--

14            JUDGE THOMAS AMBRO: Seventh.

15            JUDGE KENT A. JORDAN: --memorandum

16   Opinion. So, Judge Brody clearly thought she was

17   not certifying the class; that she was only

18   giving a preliminary ruling for purposes of

19   providing notice and that she was "leaving final

20   certification" for a later point.

21            JUDGE D. BROOKS SMITH: And that's what

22   this all about, notice, right?

23            STEVEN MOLO: Well, no, it's kind of

24   about notice.

25            JUDGE D. BROOKS SMITH: It's not

1    certification. It's about notice.

2                   STEVEN MOLO: It's about certifying a

3    class and setting the rights--if I could just

4    step back for one second, Judge Smith. This

5    particular circumstance, all right, involves a

6    class of about 20,000 individuals who are

7    injured. We're not talking about insurance

8    policies. We're not talking about defects in

9    automobiles. We're not talking about how a bank

10   statement should've been written. We're talking

11   about injured individuals. The parties came

12   before the court and they said we've reached

13   settlement. We've met the requirements of Rule

14   23. They'd gone through, they filed a petition

15   that sets forth how they have met those

16   requirements and the Judge did say--that's

17   exactly right, Judge Jordan, the judge did say

18   preliminarily and conditionally upon settlement,

19   but Rule 23 eliminated the conditional class

20   action settlement in the 2003 Amendments. And the

21   Rule explicitly says--

22                   JUDGE D. BROOKS SMITH: So there is no

23   such thing as a conditional--

24                   STEVEN MOLO: There is no such thing as

25   conditional settlement.

1          JUDGE D. BROOKS SMITH: Well, doesn't

2    that actually work to your disadvantage by

3    suggesting this is all simply about setting up

4    notice to the class for purposes of the fairness

5    hearing?

6          STEVEN MOLO: That's not correct.

7          JUDGE D. BROOKS SMITH: She can't

8    conditionally approve.

9          STEVEN MOLO: Well, she stated that the

10   --she stated that the class was certified, so--

11         JUDGE KENT A. JORDAN: Well, that's not

12   quite right. She stated it was conditionally

13   certified, so the question is if she--since it

14   appears clear that what she was trying to do and

15   it was, and in fact expressly said was, I'm not

16   finally certifying the class. That's for a later

17   date. That if she couldn't conditionally certify

18   it for purposes of notice, and we can't view it

19   that way, isn't it in keeping with the express

20   intent of her order to say she did something--she

21   did something to provide a framework for notice,

22   but whatever it was she did, it wasn't a class

23   certification because she stated her intent to do

24   that later.

25         STEVEN MOLO: Well, first of all, the

1  2000 Amendments and the Advisory Committee's

2  Notes say "a court that is not satisfied with the

3  requirements of Rule 23 are met, should review

4  certification until they are met."  And so, the

5  court didn't do that. The court didn't say I've

6  been presented with arguments and a petition by

7  the parties--

8           JUDGE KENT A. JORDAN: No, no, what she

9  said was, I'm going to do this later. I'm going

10 to have a hearing on a later date and that's when

11 I'm going to decide on certification and on the

12 fairness.

13          STEVEN MOLO: Here's why that doesn't

14 work though because in the meantime all of those

15 class members' rights are being determined. She

16 decided who would represent the absent class

17 members. She determined their rights in setting

18 forth procedures and timelines for them to

19 follow.

20          JUDGE D. BROOKS SMITH: Doing so in a

21 manner whereby you and any other objector, could

22 shoot at that at the subsequent fairness hearing.

23          STEVEN MOLO: But--

24          JUDGE D. BROOKS SMITH: You want two

25 bites at the apple, don't you?

1          STEVEN MOLO: No, I actually want one

2     bite at the apple. And I'll tell you why I want

3     one bite at the apple, Judge Smith, because 23(f)

4     was designed for this very reason. We have a

5     situation where the class certification error is

6     grossly erroneous.

7          JUDGE D. BROOKS SMITH: No, no, 20--

8     that's not what [UNINTEL PHRASE] by 23(f).

9          JUDGE THOMAS AMBRO: 23(f) was designed

10    for two purposes. One, if you deny class

11    certification and it becomes the "death nail" to

12    plaintiffs because they don't have big enough

13    claims to really litigate them on their own, or

14    flip it. If you grant class certification,

15    usually conditionally, but what that means is it

16    puts quote "hydraulic pressure"--

17          STEVEN MOLO: Correct.

18          JUDGE D. BROOKS SMITH: --close quote on

19    defendants to settle rather than going to trial.

20    So the idea was, hey, let's see if we can get

21    this out of the way sooner as opposed to later--

22          JUDGE D. BROOKS SMITH: Final judgment

23    is too late. That's what [UNINTEL] realized.

24          JUDGE THOMAS AMBRO: That's exactly,

25    exactly.

1          STEVEN MOLO: That's correct. And there

2    were--

3          JUDGE KENT A. JORDAN: Well, here--

4          STEVEN MOLO: --two examples that were

5    given.

6          JUDGE KENT A. JORDAN: No, those aren't

7    just two examples. That's the only--those are the

8    only purposes for 23(f), right?

9          STEVEN MOLO: That's not correct, Judge

10   Jordan. The Rule does not say those are the only

11   purposes. The Rule says that this court can, in

12   its unfettered discretion exercise--

13          JUDGE D. BROOKS SMITH: But those are

14   the principal reasons why you have a 23--

15          STEVEN MOLO: Those are the principal

16   reasons, all right?  I wouldn't disagree those

17   are the principal reasons. But what we have here,

18   Judge Smith, what the rule was designed for and

19   what those reasons are furthered by at earlier

20   review, is that the parties shouldn't have to

21   waste the time, the money, the expense, the

22   effort to go through a litigation. And the two

23   circumstances, Judge--

24          JUDGE D. BROOKS SMITH: And how is this

25   not an invitation to an exquisite example of such

1   waste when we are being asked to review something

2   that even the district court has not yet had an

3   opportunity to examine in depth, but which, at a

4   later date already set by the district court, she

5   will have such opportunity. You're asking us to

6   review a record that is barren of the kind of

7   facts that even a district court should have for

8   purposes of ruling on both certification and

9   approval of the settlement.

10           STEVEN MOLO: On the certification

11   issues and on the approval of settlement, Judge

12   Smith, this Court has said that you can look at

13   the face of the agreement in G.M. Trucks, in

14   Dewey v. Volkswagen; you need not look beyond

15   that where there is a significant conflict. And

16   the conflict here was raised before the district

17   court twice. It was raised in the Petition to

18   Intervene. The Judge had the opportunity to rule

19   that it's laid out in those papers very clearly.

20   And the conflicts were also laid out in an

21   objection to the Motion for Preliminary Approval

22   of Class Certification--

23           JUDGE KENT A. JORDAN: But assume that's

24   true--

25           STEVEN MOLO: --so the district court

1    had two opportunities to address this and chose

2    not to do so.

3              JUDGE KENT A. JORDAN: If that's true,

4    Mr. Molo, why isn't the right thing for us to do

5    to let her examine them at the time she planned

6    to examine them in a final way?  Why--your

7    opponents say in their filings, the objectors are

8    coming in here when they're going to have their

9    full fair opportunity to go with this within a

10   matter of a matter of a very few months. And I -

11   and that did prompt in my mind the question, why

12   now?  Why do you want to do this right now, on

13   this record, instead of waiting until she gives

14   what, in her mind, is the final certification and

15   then saying, okay, take it up at that point?

16             STEVEN MOLO: Because for three reasons.

17   First, the district court has had an opportunity

18   to address these issues twice and has chosen not.

19   Whatever conclusion we want to draw from that,

20   the issue was brought before the judge quite

21   clearly and she did not address the second

22   [PART?].

23             JUDGE D. BROOKS SMITH: How--just for

24   detail and for my understanding, how was that

25   done and through what extent of process was it

1   done?

2                   STEVEN MOLO: There was a detailed

3   Motion for Leave to Intervene--Petition for Leave

4   to Intervene filed with the district court while

5   the settlement agreement was being renegotiated

6   between the time that the judge, sua sponte, said

7   I'm not going to allow it and there was a five-

8   month gap, there was a Motion for Leave to

9   Intervene. Within a week of the Motion for

10  Preliminary Approval for Class Certification,

11  there was a 48-page objection or 45-page

12  objection and opposition to the Motion for

13  Preliminary Approval that was filed with the

14  district court. All of the issues that are before

15  you, these very basic conflicts, most notably the

16  CTE issue was brought before the district court--

17                   JUDGE D. BROOKS SMITH: Okay.

18                   STEVEN MOLO: --and the problem that

19  we're faced with and the problem we're faced with

20  on the time issue, that these are people whose

21  medical conditions are significantly

22  deteriorating. In some cases, they're dying,

23  while this litigation--

24                   JUDGE D. BROOKS SMITH: There's no

25  question about that.

1          STEVEN MOLO: --goes on.

2          JUDGE D. BROOKS SMITH: But, Mr. Molo,

3    the role of the district judge in handling and

4    monitoring and managing a class action, is truly

5    unique. In fact, it is unique to the extent that

6    almost uniformly, courts of appeals have

7    characterized district judges as fiduciaries for

8    the class. Don't you think that what you are

9    doing is asking us to intervene in such a way

10   that we are interrupting and, in fact,

11   insinuating ourselves into a process wherein a

12   judicial officer has a fiduciary role that we, as

13   an Appellate Panel do not.

14          STEVE MOLO: Actually, the rules as they

15   were changed in 2003, the Advisory Committee

16   Notes make clear that once an objector comes

17   before the Appellate Court, the control of the

18   proceeding lies in the Court of Appeals and the

19   Court of Appeals may undertake review and

20   approval of the settlement--

21          JUDGE D. BROOKS SMITH: That puts--

22          STEVEN MOLO: --with the objector

23   [UNINTEL PHRASE].

24          JUDGE D. BROOKS SMITH: --a rabbit in a

25   hat if we take the 23(f).

1                 STEVEN MOLO: Or may--that's correct. Or

2      may remand to the district court, but just--

3                 JUDGE D. BROOKS SMITH: And in fact, the

4      - there are cases that say that the district

5      court has an ongoing responsibility to monitor

6      adequacy, which is part of your attack here.

7                 STEVEN MOLO: I agree, I agree. The

8      problem is this though. Because this issue was

9      brought before the district court twice, and the

10     district court chose not to act on it. It was

11     brought before the court in a fulsome way. This

12     wasn't just some passing footnote--

13                JUDGE KENT A. JORDAN: Yeah, but you

14     said that multiple times and I'm trying to

15     grapple a little bit with the relevance of that.

16     Is the implication of what you're saying that you

17     don't think Judge Brody is going to give you a

18     fair consideration of that later?  That you -

19     because she didn't do it on the timeline you

20     wanted, you're not going to have a fair

21     consideration at the hearing?

22                STEVEN MOLO: Experience would suggest

23     that if it's been raised twice, and the court has

24     not done anything with it, because--

25                JUDGE KENT A. JORDAN: But--

1          JUDGE THOMAS AMBRO: But, but--

2          JUDGE KENT A. JORDAN: Wouldn't

3    experience just perhaps tell you that she's

4    managing the case the way thinks it ought to be

5    managed, and you're going to have a full and fair

6    hearing.

7          STEVEN MOLO: But here's the problem,

8    Judge Jordan, if I may. When I was talking about

9    the injuries to these class members, all right,

10   and we're talking about the opportunity here to

11   fix a problem. This court can fix this problem,

12   so that when we go forward with the fairness

13   hearing, we're not dealing with this issue again-

14   -

15         JUDGE THOMAS AMBRO: But by coming to

16   us, you're asking us to fix the problem, take the

17   matter, deal with the objections on the merits

18   and thereby delay a matter that you claim needs

19   to be expedited. You don't really want to delay

20   the November 19 hearing, do you?

21         STEVEN MOLO: No. And I don't think we

22   need to. I don't think we need to.

23         JUDGE THOMAS AMBRO: But if you're

24   successful with regard to this appeal, would you

25   not delay it?

1          STEVEN MOLO: I don't believe so because

2    the ultimate delay is going arise if we go

3    through that fairness hearing. We have this class

4    as certified, right?  That's going to before that

5    court to make that determination. There are clear

6    errors in this class. I mean there's clearly--

7          JUDGE KENT A. JORDAN: Well--

8          JUDGE THOMAS AMBRO: Let's assume that

9    there are.

10          STEVEN MOLO: Okay.

11          JUDGE THOMAS AMBRO: Why not have those

12    dealt with at the November 19th fairness hearing?

13          STEVEN MOLO: Because it will delay

14    things. You know, the delay in Rodriguez between

15    the time--

16          JUDGE THOMAS AMBRO: Wait a minute, time

17    out. How will it delay things?

18          STEVEN MOLO: Because what will happen

19    is we're going through the fairness hearing. If

20    the court, at that point, does what we're asking

21    this court to do right now, which is to say, the

22    class was erroneously certified due to the

23    inadequate representation and the conflicts that

24    are there, that if we go through the fairness

25    hearing and that happens then, then we're back to

1   square one. We--

2              JUDGE D. BROOKS SMITH: You're not

3   suggesting--

4              STEVEN MOLO: --could be there now.

5              JUDGE D. BROOKS SMITH: --are you, Mr.

6   Molo, that somehow an attenuation in the approval

7   process required because of the requirement of a

8   fairness hearing, ought somehow to affect how we

9   construe whether this is an order granting or

10  denying class action certification, are you?

11             STEVEN MOLO: No, Judge Smith, I think

12  that there's no question it's an order--

13             JUDGE D. BROOKS SMITH: I mean that is

14  the sole issue before this court, isn't it?

15  Whether or not the order appealed from is an

16  order granting or denying the class action

17  [UNINTEL].

18             JUDGE THOMAS AMBRO: Yeah, hang on. If

19  he would just finish this. You were going to

20  answer that before you went to the second part of

21  that.

22             STEVEN MOLO: Okay, so I--

23             JUDGE D. BROOKS SMITH: And I'm sorry if

24  I stepped--

25             JUDGE THOMAS AMBRO: You were starting

1    to say something and then you got interrupted

2    before you finished your answer.

3                      STEVEN MOLO: All right.

4                      JUDGE D. BROOKS SMITH: I apologize.

5                      STEVEN MOLO: First of all, it isn't--

6    your question, Judge Ambro, you were asking me--

7    okay.

8                      JUDGE THOMAS AMBRO: No, he was asking

9    the first question and you were responding to his

10   first question.

11                     STEVEN MOLO: Okay.

12                     JUDGE THOMAS AMBRO: Maybe it's now

13   passed.

14                     STEVEN MOLO: Is why--what it was-- what

15   we're here before. The issue here, Judge Smith,

16   again, you go to the rules, go to Advisory

17   Committee, it's clear. If the rules say up or

18   down, it's a class or it's not a class. And the

19   judge set forth, you know, an adjudication of the

20   parties' rights as--through that class

21   certification process, the preliminary approval

22   [STAY?]. She did. And that what happens--

23                     JUDGE D. BROOKS SMITH: Can you point us

24   to a single case where a court has found that an

25   order, whether it be characterized as conditional

1   or tentative or some--with some similar modifier,

2   has--and at the same time, set a subsequent date

3   in that order for ultimate certification has

4   considered that to be an appealable order under

5   23(f)?

6             STEVEN MOLO: There's no case that I can

7   point you to where a court--

8             JUDGE D. BROOKS SMITH: I couldn't find

9   one.

10            STEVEN MOLO: Well, where a court

11  decided this issue, what the rule provides for.

12  And the one case that was cited by the other

13  side, the Liles case, out of the 8th Circuit, the

14  court had the issue before it. It was admitted--

15            JUDGE THOMAS AMBRO: Well, they didn't

16  quite. The 2003 Amendments went into effect on

17  December 1. The case was argued orally before

18  December 1 and the opinion issued on December 2

19  with no discussion whatsoever whether the court

20  had the authority or jurisdiction to entertain a

21  23(f) appeal.

22            STEVEN MOLO: Well, you're correct,

23  Judge Ambro. It didn't discuss it, but what it

24  did do, was say that we're--that there's a

25  limited fund here and we're going to send it back

1 to the district court. It didn't say that it

2 couldn't review it.

3                    JUDGE THOMAS AMBRO: Well--

4                    STEVEN MOLO: And I'm not arguing--

5                    JUDGE THOMAS AMBRO: But that case

6 really cuts against you if--even if we do have

7 the authority to--because what it is says is

8 we're not going to get into premature--if a

9 matter is prematurely before us, we're going to

10 let the district court have the first cut at it

11 before it comes back to us.

12                    STEVEN MOLO: It actually the case says

13 that there--because there was a limited amount of

14 money, it wasn't going to require the litigants--

15 it was a [UNINTEL]

16                    JUDGE THOMAS AMBRO: But they also used

17 the word "premature."

18                    STEVEN MOLO: --a wasting. Yeah, wasting

19 insurance policy, but the point is that you do

20 have the authority under the rule. The rule talks

21 about unfettered discretion and the idea--

22                    JUDGE D. BROOKS SMITH: Unfettered

23 discretion to do what?

24                    STEVEN MOLO: To fix the problem now and

25 save us time--

1          JUDGE KENT A. JORDAN: Whoa, whoa, whoa-

2  -

3          JUDGE D. BROOKS SMITH: Wasn't that

4  unfettered to discretion to design and determine

5  those standards that courts would apply with

6  application of 23(f) in the wake of 23(f)'s

7  adoption?

8          STEVEN MOLO: It was unfettered

9  discretion to take a case under 23(f) or not take

10  a case. And it goes back, Judge Smith, to the

11  point that you make it was inherently class

12  actions are an equitable creature, in nature,

13  historically, correct?

14          JUDGE KENT A. JORDAN: Yeah, but it's

15  unfettered--

16          STEVEN MOLO: And so the opportunity now

17  to allow this court to exercise its jurisdiction,

18  23 gives a very broad authority--

19          JUDGE KENT A. JORDAN: That's where

20  you've got, you know, I know you want to--I know

21  you've got stuff you want to say and you want to

22  keep firing through this, but I'm struggling with

23  your assertion that this unfettered discretion

24  somehow eliminates the requirement that there be

25  a final order of certification for us to exercise

1  unfettered discretion on. I mean, does unfettered

2  discretion mean--assume Judge Brody were in the

3  hearing and said, "You know what? I think that

4  sounds pretty good. That's the sort of

5  certification order I think I can sign. It sounds

6  okay to me." You know, unfettered discretion,

7  would we be in a position where you could come to

8  us and say, "She said she liked it." She didn't

9  sign anything. She didn't even say she was going

10 to do it, but she said she liked it. You've got

11 unfettered discretion. You should take it now.

12            STEVEN MOLO: I don't believe that

13 probably would be a decision that would be

14 subject to--

15            JUDGE D. BROOKS SMITH: What if she said

16 she really, really, really liked it? [LAUGHTER]

17            STEVEN MOLO: I would say, "You really,

18 really, really shouldn't take it," because at

19 that point in time, it's not really an order that

20 is certifying a class. The rule says--

21            JUDGE KENT A. JORDAN: So you would

22 acknowledge, wouldn't you, that it's not

23 unfettered discretion, that there's got to be

24 some kind of an order that you can look at and

25 say, you know what?  That looks for the all

1  world, like it's the final decision on

2  certification. Because once you admit that a

3  preliminary comment or statement about

4  certification is really not a certification,

5  aren't you acknowledging that a judge can say

6  things that would tell you, wait I'm not done

7  here yet, and we should pay attention to that?

8            STEVEN MOLO: Judge, the answer is once

9  the judge says that it's certified, whether she

10  says it's preliminarily certified, conditionally

11  certified--

12            JUDGE KENT A. JORDAN: I don't want to

13  make an offend--her an offender for a word. If

14  the word "certification" is so troubling to you

15  that, let's focus on another word. She says

16  "final" in the same sentence. She says I'm going

17  to give final consideration to this at a later

18  date. Why not wait for that?

19            STEVEN MOLO: Because final

20  consideration--the only final consideration,

21  right, is at--with a final judgment. 23(c)(1)(C),

22  says, "  An order that grants or denies class

23  certification may be altered or amended before

24  final judgment." In fact, the rule was changed to

25  use the word "judgment" to make clear that that's

1   the case. It can always be altered or amended.

2           So once a judge says I'm certifying the

3   class and here for purposes to delay or hold a

4   fairness hearing, but also to adjudicate the

5   rights of the parties to say, either opt in, opt

6   out, object. And we're going to go forward with

7   this class certification, the fairness hearing on

8   the class that's certified. We have a right to

9   come before you. You don't have to say we have to

10  sit here--we get to sit here, but we have the

11  right under the rule to ask this court to

12  exercise jurisdiction to intervene earlier--if I

13  may just one second?

14          The purpose of the rule that Judge

15  Ambro was alluding to before, right, was to allow

16  for a Court of Appeals to have an early

17  intervention in an issue where a class--there was

18  a real problem with the class certification

19  because it would save the parties time and

20  effort. Here, if we can fix this now--

21          JUDGE THOMAS AMBRO: I mean, but

22  usually, when we talked about the reason for the

23  rule, usually that's a litigation class; is it

24  not?

25          STEVEN MOLO: I'm sorry?

1              JUDGE THOMAS AMBRO: It's usually a

2    litigation class.

3              STEVEN MOLO: It is, but in a--

4              JUDGE D. BROOKS SMITH: We wouldn't be

5    having this problem and this discussion if this

6    were a litigation class?

7              STEVEN MOLO: I wouldn't think so. But I

8    also think that this, just as a litigation class

9    gets the opportunity to come before you. Again,

10   not that you have to grant certification--or

11   grant a review of the case. It's akin to a

12   certification determination in a litigation

13   class. Think about that, right?

14              Because at the point in a litigation

15   class, you've got that decision made and then the

16   question is are going to go forward with the rest

17   of litigation?  Is it going to create the

18   hydraulic pressure?  It is going to force a party

19   to do one thing or another?  Here, that

20   preliminary decision, first-time decision on

21   class certification comes at the time of the

22   preliminary approval and the court says, in this

23   case, she set forth all kinds of--

24              JUDGE KENT A. JORDAN: Who's

25   disadvantaged by this?

1            JUDGE D. BROOKS SMITH: Yeah.

2            JUDGE THOMAS AMBRO: Yeah.

3            STEVEN MOLO: I'm sorry?

4            JUDGE KENT A. JORDAN: You know--

5            STEVEN MOLO: Who's disadvantaged?

6            JUDGE KENT A. JORDAN: --we've talked a

7    couple of times--

8            JUDGE THOMAS AMBRO: Who's disadvantaged

9    at this stage, today--

10           STEVEN MOLO: The disadvantage lies with

11   the 20,000--

12           JUDGE THOMAS AMBRO: --on September 10

13   when you have a hearing on November 19?

14           STEVEN MOLO: --class members those of

15   whom are seriously injured. The NFL has said--

16           JUDGE KENT A. JORDAN: So this depends

17   upon accepting the practical argument that you're

18   making. In other words, you're making a--the

19   practical argument that what you're proposing,

20   which is immediate appellate review and however

21   long that takes and then a ruling on it and then

22   sending it back down to her, will be shorter and

23   to provoke less delay than going forward with the

24   hearing and presenting things to her and letting

25   things--

1          STEVEN MOLO: That is correct.

2          JUDGE KENT A. JORDAN: --take their

3  ordinary course. Why on--I'm grateful for your

4  faith in us, but what is--what prompts you to

5  think that having appellate procedures in the

6  middle of the district court proceedings is going

7  to be less time-consuming than allowing the judge

8  to manage the case, get you to hearing in

9  November and having to deal with it at that time

10 and then bringing your issues to us?

11         STEVEN MOLO: If I may?

12         JUDGE KENT A. JORDAN: Usually, you

13 think if--you know, if you break a process that

14 you're going to actually lose momentum and

15 sidetrack things and you're going to add delay.

16 Why do you think that's not the case here?

17         STEVEN MOLO: Because we have a

18 situation in which a substantial percentage of

19 the class has not been adequately represented.

20 There is a group of people that the settlement

21 provides--

22         JUDGE KENT A. JORDAN: I'm not

23 understanding how that--and I apologize if I'm--

24         STEVEN MOLO: Sure.

25         JUDGE KENT A. JORDAN: --just being

1   obtuse. I don't see how that answers the

2   practical point. I understand you've got a legal

3   point. I understand your legal point, but I

4   understand you to be saying we can't wait to talk

5   about our legal point because people are sick and

6   dying. We've got to have this reviewed by you

7   right now and I'm, as a--sticking on a practical

8   point, I'm just trying to understand why you

9   think that's going to be faster than us

10  addressing that legal point, you know, a couple

11  months from now?

12          STEVEN MOLO: If you'll indulge me for

13  just one minute?

14          JUDGE KENT A. JORDAN: Sure.

15          STEVEN MOLO: Okay. We've first have the

16  issue that has been before the district court.

17  We've talked about that. We've got the 20,000

18  class members. The third point here, this is a

19  very rare situation, a significant percentage of

20  the class has not been adequately represented.

21  That issue, the sooner that's addressed, the

22  sooner--there's going to have to be a

23  renegotiation of this settlement. There are

24  people whose rights were bargained away, who had

25  zero.

1          JUDGE D. BROOKS SMITH: And who better

2    to weigh in on the question of adequacy than the

3    district judge who has the fiduciary

4    responsibility to the class?

5          STEVEN MOLO: And that same district

6    court judge had the problem for the adequacy

7    raised twice and allowed the matter to go

8    forward--

9          JUDGE THOMAS AMBRO: Well, it's the same

10   district judge who last January said go back to

11   the drawing boards and come back, so--

12         JUDGE D. BROOKS SMITH: And the same

13   district judge, who according to the news reports

14   I read just this week, has asked for a closer

15   look at actuarial calculations.

16         STEVEN MOLO: That's correct. Well, she

17   did actually--

18         JUDGE D. BROOKS SMITH: She's working on

19   it even now.

20         STEVEN MOLO: I believe it wasn't so

21   much a closer look, it was allowing the release

22   of some of that information on the motions of

23   Bloomberg and other news agency.

24         JUDGE THOMAS AMBRO: I have a final

25   question before we get back for rebuttal. When

1  you went through the process of considering

2  whether to file a 23(f) appeal, or an attempt at

3  a 23(f) appeal, the comments to the 1998

4  Amendment say that a stay should be sought first

5  from the trial court. If the trial court refuses

6  to stay its action and explanation of its view

7  should weigh heavily with the Court of Appeals.

8  Why didn't you seek a stay?

9           STEVEN MOLO: Because at this point in

10  time, we believe that we could get before this

11  court, have this issue address as this court has

12  the authority to do it. We've raised this issue

13  with Judge Brody twice.

14           And I don't, for a minute, question her

15  desire to reach a settlement that would be fair

16  and prompt. It isn't. There are a significant

17  group of people whose rights have been bargained

18  away, who get nothing in this settlement. They

19  get nothing.

20           JUDGE THOMAS AMBRO: But the question

21  then becomes why come to us?  You say, well,

22  she's decided against us twice--

23           JUDGE KENT A. JORDAN: Actually, I think

24  you said she hasn't decided twice, right?  Isn't

25  that your problem? It's not that she's decided

1    against you, it's she hasn't decided the issue

2    and you want it decided now.

3                    STEVEN MOLO: She certified the class.

4    She allowed the money to be spent on notice. She

5    allowed the parties rights to be [UNINTEL].

6                    JUDGE KENT A. JORDAN: Well, you just--

7                    JUDGE THOMAS AMBRO: So all the--then

8    all the more the reason if she hasn't dealt with

9    it twice in a way that you think as a full

10   addressing of the issue, why not put it front and

11   center at the November 19 fairness hearing?

12                   STEVEN MOLO: Because if this court were

13   to address this issue now and tell the judge that

14   based upon the record before it, it's clear on

15   the face of the record, there is a substantial

16   percentage of class members who lack adequate

17   representation. They've got nothing. Their rights

18   were bargained away and that must be addressed.

19   This court has the authority to do that.

20                   JUDGE THOMAS AMBRO: But what makes you

21   think that we're better equipped to do that with

22   a meager record than she is with a full record?

23                   STEVEN MOLO: Because G.M. Trucks and in

24   Dewey, say that you look to the terms, the

25   distribution terms of the settlement on its face.

1  There's no need for any kind of evidentiary

2  record beyond that here to see that their--

3  parties who had CTE, a disease that the

4  plaintiffs--the lawyer for the class counsel says

5  on his website, that it's believed to be the most

6  serious and harmful disease that results from NFL

7  and concussions. It was on his website yesterday

8  and today, may not be there tomorrow. But it--

9  that gets nothing under the settlement.

10              And if this court isn't going to direct

11  the district court to act on that, then we're

12  back at square one. And if we raise this, yet, a

13  third time, it's not clear that the district

14  court would act on it.

15              JUDGE KENT A. JORDAN: Well, you don't

16  think that before class certification is made a

17  matter of final order by the district court that

18  she's going to actually rule on your motion?  I

19  mean, you've got an issue. She hasn't ruled on it

20  yet when you wanted her to, but she said I'm

21  going to have this hearing. I'm going to be

22  ruling on things. I'm still struggling a little

23  bit to understand why you think she's not going

24  to give you a response.

25              JUDGE THOMAS AMBRO: A full hearing.

1          JUDGE KENT A. JORDAN: A full and fair

2    hearing. I've asked you before, do you have--are

3    you implying that you're not going to get a full,

4    fair consideration of your position? Because if

5    you are, other than the fact that she hasn't done

6    it yet, which sounds to me like a case management

7    question on your part, I'm not--I'm going to ask

8    you to tell me why. Why you think you're not

9    going to get a full, fair consideration of your

10   question when she sits down with all the people,

11   including objectors, in November?

12          STEVEN MOLO: And whether I do or I

13   don't--okay, whether I do or I don't, we have the

14   opportunity to fix a significant issue now and

15   expedite the process, so that these people who

16   are in need of relief can get it.

17          JUDGE KENT A. JORDAN: Right.

18          JUDGE THOMAS AMBRO: Okay.

19          STEVEN MOLO: The NFL said that they're

20   willing to now put a billion dollars to solve

21   this problem. These people are in need of relief.

22   That's the reason, Judge Jordan. If it's a matter

23   of six months, eight months, that's still

24   valuable. And I don't know whether the district

25   court is going to do anything differently based

1   upon what's happened before. No one has note. She

2   didn't write an opinion. She didn't write an

3   order. But she did write one order. She said the

4   class was certified for purposes of going

5   forward.

6           JUDGE THOMAS AMBRO: All right. We'll

7   get back on rebuttal. I think we've given you

8   about 25 minutes already. Thank you very much.

9           JUDGE D. BROOKS SMITH: Professor

10  Issacharoff?

11          SAMUEL ISSACHAROFF: May it please the

12  court, Samuel Issacharoff, on behalf of the

13  proposed settlement class. If I may, I'd like to

14  go right to the question that was left off at the

15  end about the authority of this court and the

16  jurisdictional basis for this.

17          Counsel opposite makes a lot of the

18  quotes from several cases in this court about the

19  unfettered discretions this court has under

20  23(f). In each of those cases, there was a final

21  order from the court below. All the cases

22  involving unfettered discretion go to whether or

23  not what are the standards for the application of

24  Rule 23(f). They don't go to the question whether

25  Rule 23(f) itself applies. And there's a reason

1  for that.

2          JUDGE KENT A. JORDAN: Well, let's take

3  that as a given. Why shouldn't we view this as

4  tantamount to a final certification?  She's

5  talked about certification. She's gone through

6  the factors. She's looked at 23(a). She's looked

7  at 23(b). She said what she's going to do.

8          And, you know, it waddles and quacks

9  like a certification, why shouldn't we call it

10  what it is and as Mr. Molo says, if there's a

11  problem, fix it so that it's fixed?

12          SAMUEL ISSACHAROFF: Your Honor, I think

13  that the main reason is that 23(f) is actually a

14  jurisdictional provision and not simply a case

15  administration provision. And if I may, I'll walk

16  through why. 23(f) is a grant of jurisdictional

17  authority for interlocutory appeals.

18          Under 1292, there are four conditions

19  for interlocutory appeals. Not one of those is

20  met. There's no dispute about that, so we're

21  under 1290--

22          JUDGE THOMAS AMBRO: Yeah, but 23(f) is

23  different than 1292.

24          SAMUEL ISSACHAROFF: Well, 1292(e) says

25  that jurisdictionally, there can be an expansion

1  by Supreme Court Rules. So, in other words, 23(f)

2  has to be construed the way that jurisdictional

3  statutes are construed. 23(f) has a requirement

4  of certification.

5            Certification under 23(e)(2) is defined

6  by it--by the very terms of the rule, by the

7  language of the rule, as something that must

8  follow a fairness hearing and a determination by

9  the court that the settlement is fair, adequate

10 and reasonable. Neither one of those condition's

11 predicate has been satisfied here, which means

12 that the term "certification" for purposes of

13 23(f) has not had its day. It hasn't had its day

14 in court.

15            JUDGE D. BROOKS SMITH: Beyond that, Mr.

16 Issacharoff, wasn't the district court here doing

17 nothing more than engaging in the kind of case

18 management steps that are called for in the

19 Manual for Complex Litigation--

20            SAMUEL ISSACHAROFF: Absolutely, Your

21 Honor.

22            JUDGE D. BROOKS SMITH: --which she

23 specifically cites to section 21.632? And in

24 relevant part that reads "The judge should make a

25 preliminary determination that the proposed class

1   satisfies the criteria set out in Rule 23(a) and

2   at least one of the subsections of Rule 23(b)."

3                  SAMUEL ISSACHAROFF: I fully agree with

4   that, Your Honor. The problem that we have in

5   this case is that you can only--this is not a

6   question of moving first base back five feet,

7   this is moving it forward five feet infinitely

8   closer to home plate, because there has to be

9   some--

10                 JUDGE THOMAS AMBRO: But this is--this

11  is football. [LAUGHTER]

12                 JUDGE KENT A. JORDAN: Yeah, we've got

13  to-- we're mixing our sports metaphors.

14                 JUDGE D. BROOKS SMITH: Coming from a

15  guy who roots from the [BRAWNS?], he doesn't know

16  much about football. [LAUGHTER] And [UNINTEL

17  PHRASE].

18                 SAMUEL ISSACHAROFF: I should've known

19  better. I walked into that one. I apologize.

20                 JUDGE D. BROOKS SMITH: Can a district

21  court certify a settlement class conditionally?

22                 SAMUEL ISSACHAROFF: Can a district

23  court--I don't think that has meaning after the

24  2003 Amendments, Your Honor.

25                 JUDGE D. BROOKS SMITH: If you're right,

1   how do we tell a district court that we can't do

2   that--that it can't do that if we don't have

3   jurisdiction?

4                  SAMUEL ISSACHAROFF: I don't think that

5   there's a basis for this court to say that. I

6   agree with--

7                  JUDGE D. BROOKS SMITH: But I'm saying,

8   if it's wrong, if it did something that's wrong,

9   it conditionally certified a settlement class and

10  it cannot do that, how do we, the Court of

11  Appeals, tell a district court it is wrong if we

12  don't have the authority to do so?

13                 SAMUEL ISSACHAROFF: Well, there's

14  always mandamus and there's always 1292

15  certification. There is an order of this court in

16  1997, there's no opinion attached to it, but

17  there's an order in the Bone Screw litigation.

18  This is a year prior to 23(f), in which someone

19  tried to take an appeal from the preliminary

20  approval of a settlement for purposes of sending

21  out notice. It came up to this court and this

22  court said, flatly, we don't have jurisdiction,

23  we dismiss. Now, in that case, it was closer--

24                 JUDGE D. BROOKS SMITH: But I'm asking

25  you a practical question.

1      SAMUEL ISSACHAROFF: As a practical

2  question, it can't come up in a way that's

3  meaningful for appellate review. The same problem

4  is going to come up that we have in this case.

5  There's factual allegations all over the place. A

6  drug exposure causes stroke--

7      JUDGE D. BROOKS SMITH: Well, the point

8  is--the point being that a district court, you

9  say, cannot conditionally certify any longer a

10  settlement class. How can we, as a Court of

11  Appeals, tell a district court today, it can't do

12  that if we don't have jurisdiction?

13      SAMUEL ISSACHAROFF: I don't believe you

14  can under the terms of 23(f). You can do so if

15  there is a 1292 certification, or you can do so

16  by mandamus. I do not believe that 23(f) gives

17  this court the authority to act, except as a

18  consequence of a certification, which the rule--

19      JUDGE KENT A. JORDAN: Of course, they--

20      SAMUEL ISSACHAROFF: --and the cases

21  define in a certain way as requiring findings.

22      JUDGE KENT A. JORDAN: Well, they say

23  that those findings are effectively there and

24  they characterize all certifications as tentative

25  in a respect.

1          So I want you to respond, if you would,

2   assert to their footnote 2 in their Reply Brief

3   where they say "The Advisory Committee's

4   reference to tentative certification is merely

5   acknowledgement that all certifications are

6   tentative because every order that grants or

7   denies class certification may be altered or

8   amended before the judgment."

9          In other words, everything's tentative

10  in a respect, so there's no such thing here as a

11  preliminary. You both seem to agree that there's

12  no such thing as a preliminary certification. But

13  whereas you would say that means the real

14  certification is coming later, they say no. That

15  means it's now; it's happened. What's wrong with

16  their reasoning?

17          SAMUEL ISSACHAROFF: Well, their

18  reasoning is that in 2003, the rules were changed

19  to eliminate the condition that that was being

20  addressed in the 1998--

21          JUDGE KENT A. JORDAN: They claim that

22  you're conflating "tentative" and "conditional."

23  And that the one isn't the same as the other.

24  What's--

25          JUDGE THOMAS AMBRO: Well, tentative

1   appears in the notes, doesn't it?

2               SAMUEL ISSACHAROFF: Yes.

3               JUDGE THOMAS AMBRO: Somewhere. But

4   conditional certification was the phenomenon that

5   2003 Amendment was directed at.

6               SAMUEL ISSACHAROFF: Right. And there is

7   not a robust case law that distinguishes those

8   two terms. Those were terms that were

9   conventionally used by the district courts and I

10  don't think that there was a lot of attention

11  paid one way or the other.

12              But this court, in the Dewey case, for

13  example, says that it is a requirement that there

14  be certain kinds of findings that are made as a

15  condition of certification. This court has said

16  the same thing in Rodriguez. This court has said

17  this going back 40 years to the Girsh factors.

18              So, if you look at the uninterrupted

19  case law of this court, what you find over and

20  over again is that there is an obligation of the

21  district court when it certifies a settlement

22  class to engage in a prescribed set of practices.

23  And what's being asked--

24              JUDGE D. BROOKS SMITH: Well, it has to

25  comply with what, 23(a) and (b)?

1          SAMUEL ISSACHAROFF: That it has to

2    comply with 23(a) and (b) and--

3          JUDGE D. BROOKS SMITH: And a court did

4    that here under pages 13 to 17 of her Memorandum

5    Opinion.

6          SAMUEL ISSACHAROFF: No, I don't believe

7    she did, Your Honor. I think--

8          JUDGE D. BROOKS SMITH: Well, what did

9    she do on pages 13 to 17?

10         SAMUEL ISSACHAROFF: Yes, she made

11   preliminary findings based on the initial record,

12   but this is--the problem we have here is that

13   this is not the product for an adversarial

14   process. There is not notice out to potential

15   objectors at this point.

16         JUDGE D. BROOKS SMITH: I thought what

17   you were saying in answer to my question is when

18   she said in her order, that this is a conditional

19   approval of a settlement class, that she can't do

20   that.

21         SAMUEL ISSACHAROFF: No, she can't. It

22   can't have the effect of binding anybody to a

23   class in a--in what certification means.

24   Certification means you are a party as this court

25   discussed in the Dewey case--

1              JUDGE D. BROOKS SMITH: A party for

2    settlement purposes?

3              SAMUEL ISSACHAROFF: You're a party for

4    appellate purposes and party for res judicata

5    purposes, which is the most important thing. No

6    one is a party for res judicata purposes and at

7    this point, because nobody has been brought into

8    the class by operation of an order. The only

9    order is the permission of notice.

10             And how can you have--we're going to

11   keep jumping ahead. I used the baseball metaphor;

12   wrong one, but you're going to keep jumping ahead

13   of yourself here because now you're going to have

14   to--

15             JUDGE D. BROOKS SMITH: No, actually, I

16   don't want to jump ahead. I want to go back.

17   Because if the--what I'm trying to figure out is

18   I asked you can a district court conditionally

19   certify a settlement class?  You said no. Stop on

20   that first question. How do you--isn't that

21   intention with the Second Circuit case of Denney

22   v. Deutsche Bank in 2006, which is at 443 F.3d

23   that says "  we conclude that conditional

24   certification survives the 2003 amendment" and

25   that's a conditional certification of a

1   settlement class.

2                       SAMUEL ISSACHAROFF: Yes, Your Honor, I

3   think there's terminological confusion that has

4   been across the board in the courts. What were

5   the 2003 amendments directed at?  What the 2003

6   amendments were concerned about is courts that

7   said without benefit of a hearing, without

8   benefit of making all the determinations--

9                       JUDGE D. BROOKS SMITH: Correct.

10                      SAMUEL ISSACHAROFF: --under Rule 23--

11                      JUDGE D. BROOKS SMITH: They acted too

12  quickly and they put a lot of pressure on

13  defendants to settle.

14                      SAMUEL ISSACHAROFF: Yeah, it was a what

15  the heck-type of standard on class certification.

16  And that's what 2003 came along and said you

17  can't do that anymore.

18                      JUDGE D. BROOKS SMITH: You've got to

19  give a lot--you have to give a lot more analysis.

20                      SAMUEL ISSACHAROFF: Some courts call

21  that tentative. Some courts call that

22  conditional. Some courts said this is only on the

23  pleadings and we will deal with this--

24                      JUDGE D. BROOKS SMITH: But remember

25  this Denney decision is from 2006.

1          SAMUEL ISSACHAROFF: The Denney decision

2     is from 2006, but I don't recall the Denney

3     decision going up on that question. I recall the

4     Denney decision going up on the certification--

5          JUDGE D. BROOKS SMITH: Now it was the

6     holding of the court, on page 270, "We conclude

7     that conditional certification survives the 2003

8     amendment to Rule 23(c)(1)."

9          SAMUEL ISSACHAROFF: Okay. I can't

10    respond to that. I don't have the [UNINTEL] in

11    mind.

12          JUDGE D. BROOKS SMITH: Well, and you've

13    got some--you've got a former Chief Judge Jacobs.

14    You have the current Chief Judge-

15          SAMUEL ISSACHAROFF: Yes.

16          JUDGE D. BROOKS SMITH: --Katzmann. I

17    mean, these are pretty smart folks.

18          SAMUEL ISSACHAROFF: I don't dispute

19    that.

20          JUDGE D. BROOKS SMITH: And so I'm

21    trying to figure out why they say that so

22    conclusively and yet maybe that's not the case.

23          SAMUEL ISSACHAROFF: Well, I would

24    suggest, Your Honor, that what they--

25          JUDGE D. BROOKS SMITH: Because there's

1   an argument that the--what was done in 2003 does

2   support what you say.

3                   SAMUEL ISSACHAROFF: I don't think that

4   Denney, as I recall the case. I did not review

5   that case because it wasn't focused in any of the

6   briefs, but I did--but my recollection of Denney

7   was that that was--the question was on whether

8   the district court properly gave notice.

9                   And for that purpose, the conditional,

10  whatever term we used, the conditional term, is

11  adequate because it just says the court has done

12  enough to look at it to make sure that notice is

13  going to the right people.

14                  JUDGE KENT A. JORDAN: Well, you've

15  noticed the terminological muddle that folks seem

16  to be in. Is there something in the 2003

17  Amendments that implies or says that a court

18  can't take a preliminary step, whether you call

19  it certification or not, for purpose of

20  establishing the framework for notice?

21                  SAMUEL ISSACHAROFF: No, I think

22  absolutely not. I think that the 2003 Amendments

23  are entirely consistent with the Manual for

24  Complex Litigation in that regard.

25                  JUDGE KENT A. JORDAN: And which

1   continues the complex litigation manual, that she

2   cited was from 2004. So either that hadn't caught

3   up with the language, or the people putting the

4   manual together still seem to think that that's

5   the ordinary course of things, that there will be

6   some - whatever you call it, whatever label you

7   want to put on it, there'll be some decision by a

8   court, district court that will allow a notice to

9   go out based on early thinking on what the class

10  is going to look like. Is that right?

11             SAMUEL ISSACHAROFF: I think that's

12  correct. I think it's also correct that the

13  manual is out of date in terms of its language.

14  It's a source of irritation among district court

15  judges that it hasn't caught up.

16             JUDGE KENT A. JORDAN: So what should it

17  be called?  What should, and I'll be curious to

18  ask Mr. Molo the same question, what should she

19  have done to effectuate what it appears she was

20  trying to do?

21             SAMUEL ISSACHAROFF: She should've done

22  exactly what she did.

23             JUDGE KENT A. JORDAN: Well, evidently

24  not--

25             SAMUEL ISSACHAROFF: She engaged in a

1  preliminary review. She--

2           JUDGE KENT A. JORDAN: --because you're

3  saying she shouldn't have called this a

4  conditional certification. What should she have

5  called the thing she was doing?

6           SAMUEL ISSACHAROFF: No, there's nothing

7  wrong with calling it a conditional

8  certification. What the 2003 Amendments were very

9  clear on is that that is not a class

10 certification, whatever you call it.

11          JUDGE D. BROOKS SMITH: So it doesn't

12 matter what you call it.

13          SAMUEL ISSACHAROFF: Exactly.

14          JUDGE D. BROOKS SMITH: It matters what

15 it is and the degree of finality that it attaches

16 to it. Is that point?

17          SAMUEL ISSACHAROFF: That's exactly--

18          JUDGE THOMAS AMBRO: [YEAH, SAY YES?].

19          SAMUEL ISSACHAROFF: --correct, Judge

20 Smith. That's exactly my point here. [UNINTEL

21 PHRASE].

22          JUDGE KENT A. JORDAN: And what should

23 she have called it? If you folks were writing

24 this up in a way that would solve the

25 terminological muddle, what would you suggest the

1  district courts call that thing they're doing?

2          SAMUEL ISSACHAROFF: Well, I had some

3  occasion during the ALI process to look at this

4  question and we decided to call it preliminary

5  review. And we said the court should engage in a

6  preliminary review to make sure that the notice

7  is not wasted and to make sure that it looks and

8  smells like something that could pass muster. Not

9  that it has.

10          And there was a big concern that you

11  don't want judges to do too much because you want

12  Mr. Molo to have a fair shot at the fairness

13  hearing. You want the fairness hearing to be the

14  main event. There was also a problem prior to

15  2003 that judges did the whole work up at the

16  preliminary hearing and then got to the fairness

17  hearing and said already decided. We don't need

18  to have a hearing. And 2003 put an end to that.

19  It said you must have a hearing and you must make

20  these findings at that time.

21          JUDGE KENT A. JORDAN: Is there any

22  inference we should draw from the fact that Mr.

23  Molo raised at least three times, so it's clearly

24  of important feature for them--maybe four times,

25  that the issues that are being presented to us in

1   their argument about class certification today

2   were presented to Judge Brody twice before and

3   that they were not addressed.

4                Is that something that should be

5   troubling to us?  Should we be saying, wait a

6   second. They're not--they are indeed not going to

7   get the fair shot. This is--this train has gone

8   too far down the tracks. That certification is

9   going to be final in name only because the real

10  certification is final already.

11               SAMUEL ISSACHAROFF: Well, I'd say two

12  things about that. They presented it first in a

13  Motion to Intervene. And a Motion to Intervene

14  after Devlin v. Scardelletti, has no meaning at

15  this point because they are fully going to be

16  parties at the time of the fairness hearing if

17  there is a--

18               JUDGE THOMAS AMBRO: And with a right to

19  appeal, right?

20               SAMUEL ISSACHAROFF: With a right of

21  appeal. As this court said in Dewey--

22               JUDGE THOMAS AMBRO: Right.

23               SAMUEL ISSACHAROFF: You become a party

24  at that point anyway, so the intervention has no

25  meaning. So that's just a procedurally erroneous

1  step to be taken at this point in the

2  proceedings.

3              And the other was to say to put in the

4  papers at the preliminary stage and say, "We

5  object on the merits."  And Judge Brody says,

6  "Okay, we'll hear that, but we'll hear that in

7  November in an orderly way, the way that this is

8  supposed to be done."

9              So I don't think that there's anything

10  that can be--that can be taken from that except

11  that they were procedurally out of step in the

12  district court just like they're procedurally out

13  of step in this court. And--

14              JUDGE THOMAS AMBRO: Were you in any way

15  involved in 2003 when the amendments were

16  drafted?

17              SAMUEL ISSACHAROFF: No, not in any

18  direct way, Your Honor.

19              JUDGE THOMAS AMBRO: No, indirect way.

20  Because the question is that if you basically

21  change 23(c)(1)(C) and take "conditional" out of

22  the certification, why wasn't 23(f) changed to

23  put the word "final" in front of order, for

24  example?  Why weren't the notes to 23(f) changed

25  to say, hey, folks. It's no longer unfettered

1    discretion, et cetera.

2              SAMUEL ISSACHAROFF: Your Honor, the

3    notes to the Advisory Committee Notes and the

4    rules are problematic. They look like legislative

5    history and they have--there is an attempt by the

6    courts when there's ambiguity--

7              JUDGE THOMAS AMBRO: Although these are

8    - this is far more than legislative history. I

9    mean, they look like legislative history, but

10   legislative history often is written by a staffer

11   for a boss on a committee and not necessarily for

12   the whole the committee, and Lord knows if you

13   have amendment on the floor that somebody writes

14   something two weeks later.

15             SAMUEL ISSACHAROFF: Right.

16             JUDGE THOMAS AMBRO: This is a group

17   that is drafting the notes at the same time it is

18   drafting round after round after round of the

19   proposed rules. So it seems to be qualitatively

20   different.

21             SAMUEL ISSACHAROFF: I can't answer that

22   question. There are always errors, blips in

23   language that come up in these cases. But I can't

24   answer that question. I don't know why it wasn't

25   changed, but we have the language that we have

1  and the best indication of what is meant by

2  certification under 23(f) has to be the place

3  where settlement certification is defined which

4  is in 23(e)(2). And that has a set of procedural

5  requirements which the court hasn't had a chance

6  to do.

7            And if I could add one more thing, this

8  court, in several cases, most notably in the

9  Rodriguez case, admonished district courts that

10  they must complete their tasks. They must follow

11  the analytic steps, every analytic step of making

12  sure 23(a) and (b) are satisfied. It would be

13  tremendously paradoxical if this court now

14  interceded before the district court had a chance

15  to do that. You're being asked to preempt the

16  district court from doing what you have

17  repeatedly insisted that they do—--

18            JUDGE THOMAS AMBRO: All right. It isn't

19  the best argument that no matter what, whether we

20  have jurisdiction or we don't have jurisdiction,

21  authority or we don't have authority to enter

22  this fray. It's premature for us to do so.

23            SAMUEL ISSACHAROFF: It's absolutely

24  premature for the reasons the Liles court said

25  regardless of the jurisdictional question. It's

1   also premature as Judge Jordan was insisting as a

2   practical matter. There are all these factual

3   issues that have to be resolved here. There's not

4   a record to resolve them on.

5          So you would have to have some kind of

6   preliminary appellate ruling that looked--or

7   appellate argument where we would come forward

8   and tell you what we think the record will show.

9   And then you'd have to hear it again when we've

10  actually established what the record does show.

11         Because right now, every factual

12  assertion from the nature of CTE to the cause of

13  strokes to the relationship to NFL Europe, all

14  those sorts of things are matters of conjecture,

15  that there are no facts in the record that this

16  court can reasonably respond to.

17         JUDGE D. BROOKS SMITH: So, you could

18  have, right now, redeemed yourself for your

19  metaphoric missteps simply by saying "false

20  start" on the part of the offense.

21         SAMUEL ISSACHAROFF: I would say off

22  sides, but, yes, Your Honor.

23         JUDGE THOMAS AMBRO: Would the

24  petitioners, would they be compensated under the

25  proposed settlement?

1          SAMUEL ISSACHAROFF: The petitioners--

2          JUDGE THOMAS AMBRO: The people that Mr.

3    Molo represents.

4          SAMUEL ISSACHAROFF: Your Honor, I don't

5    know the answer to that because we don't have

6    facts of record on the petitioners. We know they

7    haven't filed suit, so we don't know any of the

8    particulars. We don't have any court pleadings of

9    them. They haven't put in their medical records.

10   I have no way of knowing that. This court has no

11   way of knowing that. Perhaps, even the

12   petitioners themselves don't know that yet

13   because they haven't done the work-up.

14          But one thing is clear, they haven't

15   filed suit. They're not sub judice anywhere in

16   the world.

17          JUDGE THOMAS AMBRO: Okay. Thank you

18   very much.

19          JUDGE D. BROOKS SMITH: Just one more

20   thing--

21          JUDGE KENT A. JORDAN: Go ahead.

22          JUDGE D. BROOKS SMITH: --if I could,

23   please, Mr. Issacharoff.  Am I putting in my

24   earlier questions too much emphasis on the role

25   of the district judge as fiduciary for the class

1    here, or should that be something that factors in

2    to our consideration for why the district court

3    should have the opportunity to continue moving

4    forward and protecting adequacy, among other

5    things?

6                    SAMUEL ISSACHAROFF: Well, the concept

7    of fiduciary for the class probably begins when

8    the Judge [POSER?] opinion--

9                    JUDGE D. BROOKS SMITH: Right.

10                   SAMUEL ISSACHAROFF: --as much

11   jurisprudence does singularly.

12                   JUDGE D. BROOKS SMITH: --Sure. But this

13   court has embraced--

14                   SAMUEL ISSACHAROFF: This court has

15   accepted it.

16                   JUDGE D. BROOKS SMITH: --the notion as

17   well.

18                   SAMUEL ISSACHAROFF: And in each case,

19   it's been used to impose upon the district a

20   heightened duty of scrutiny of the facts of the

21   case. That's how it began in the Reynolds case in

22   the Seventh Circuit. That's how it's been applied

23   in this case. Again, I go back to my point that

24   would paradoxical for this court to intercede

25   before the district court has done that in order

1  to say you've breached your fiduciary duty before

2  you've had a chance to exercise it in the way

3  that we, in cases like Dewey and Rodriguez and

4  Dewey and [WASHINGTON?] have insisted that you do

5  use it.

6            JUDGE D. BROOKS SMITH: Okay. Thank you

7  very much.

8            SAMUEL ISSACHAROFF: Thank you very

9  much, Your Honor.

10            BRUCE BIRENBOIM: May it please the

11  court, Bruce Birenboim from Paul, Weiss, Rifkind,

12  Wharton & Garrison for the NFL defendants. Let me

13  just make--

14            JUDGE D. BROOKS SMITH: Can I just ask a

15  question at the outset that I'd asked of your co-

16  counsel. Would the petitioners, to your

17  knowledge, be compensated under the proposed

18  settlement?

19            BRUCE BIRENBOIM: Well, my first answer

20  would be the same as my co-counsel here.  There's

21  no record on that, but it certainly is the case

22  that all members of this class are compensated by

23  a Baseline Assessment Program. Anyone in the

24  Baseline Assessment Program is entitled to

25  supplemental benefits if they had certain

1   conditions.

2            And I think they're--I think one thing

3   in the papers that objection--the objectors

4   ignore is that those clients today had certain

5   symptoms may have even greater symptoms tomorrow

6   or a year from now, or two years from now. So if

7   the question is will these objectors be

8   compensated at some point? [UNINTEL] only know

9   with time. But they will be compensated to the

10  extent of Baseline Assessment and Testing. At a

11  minimum.

12            JUDGE D. BROOKS SMITH: Okay.

13            BRUCE BIRENBOIM: Let me just address a

14  couple of points that came up in the oral

15  argument. First, I think it's fair to say that

16  the elimination of conditional certification was

17  intended to prevent situations where the district

18  court says I will conditionally certify this

19  class and now we will go forward, for example,

20  and litigate and incur expenses. But I may come

21  back and then decide whether the Rule 23

22  requirements are met. That's what was eliminated.

23            But that's not the situation here

24  because between now and final approval, we are

25  not going forward either with litigation or with

1   settlement. We're simply going forward with the

2   process of developing a record so that the

3   district court can issue a ruling.

4          JUDGE THOMAS AMBRO: As I said, that

5   would seem to be the best argument that you have,

6   that it's premature for us to intercede at this

7   point in time prior to the November 19 hearing

8   and a final determination.

9          BRUCE BIRENBOIM: I think that's

10   correct, Judge Ambro. And I also think what

11   hasn't been mentioned is that there are

12   potentially a great many other objectors out

13   there who got notice of this proposed settlement

14   through the notice process. And the district

15   court should be permitted to develop a full

16   record that takes all objections into account,

17   not just these objections and balance all the

18   competing interests.

19          JUDGE KENT A. JORDAN: What's your

20   response though, Mr. Birenboim, to the argument

21   Mr. Molo made that the error the district court

22   has made with respect to his clients is manifest

23   on the record as it stands now. There's no need

24   for further development. Further development will

25   only delay, rectifying a problem that needs to be

1    fixed.

2              So, deal with it now, saves time, got

3    to save trouble later, everybody's going to be

4    better off if you just address the problem, which

5    is right there on the face of the papers in front

6    of you.

7              BRUCE BIRENBOIM: Well, the alleged

8    problem that's on the face of the papers is the

9    way CTE is treated, the way stroke is treated and

10   the way the European League is treated. There is

11   no record whatsoever on any of those three

12   complaints. Those three complaints should be

13   raised in the approval process before the

14   district court.

15             The parties and the objectors and other

16   objectors should be permitted to develop a

17   factual record to support or not support these

18   objections. And then when the district court has

19   had a chance to develop a full record and write a

20   considerate opinion on it, then Your Honors can

21   do your work, which is to review that record on

22   appeal. There is no record on any of the

23   allegations in objectors' briefs, other than the

24   mere fact that the settlement agreement says

25   certain diseases and certain conditions are

1    treated in certain ways.

2              And if there's one thing I think that's

3    as a practical matter, perfectly clear, which is

4    if this proposed settlement is to be considered

5    and be determined whether it is fair and adequate

6    by the district court, having what is in effect,

7    interlocutory review would slow that process

8    down.

9              The settlement should be permitted to

10   be reviewed by the district court on a full

11   record. All members of the class should be

12   permitted to make their objections. The district

13   court should be permitted to do its work and if

14   there are objections and appeals, we will be back

15   here in three or four months.

16             JUDGE THOMAS AMBRO: One question, which

17   if we ever did get to the merits of the

18   objections, and I'm not saying we should. Page 10

19   of the Notice of material states that "Monetary

20   awards are available for the diagnosis of ALS,

21   Parkinson's Disease--or Death with CTE. A

22   Qualifying Diagnosis may occur at any time until

23   the end of the 65-year term of the Monetary Award

24   Fund." How is that consistent with the terms of

25   the settlement agreement which it appears that if

1   you haven't died before July 7th, you can't be

2   diagnosed with CTE?

3            BRUCE BIRENBOIM: Well, Your Honor,

4   first, there are two other places in both the

5   long form notice and the short form notice that

6   they clear that CTE is awarded only in certain

7   circumstances. Concededly, the word "certain" is

8   not in the sentence, Your Honor read, but in that

9   same document it says "certain."

10           And just so the court understands the

11  situation, this settlement is intended to

12  compensate victims that have certain conditions.

13  It is not intended to compensate for diagnoses

14  absent conditions. So the issue is not whether

15  there is a diagnosis of CTE. The issue is whether

16  the player has certain conditions and certain

17  cognitive impairments.

18           JUDGE THOMAS AMBRO: Let's say that one

19  of the seven objectors is perfectly fine today,

20  but 10 years from now, after this settlement goes

21  through, dies and it's determined that that

22  person has CTE. You're saying that person is not

23  covered?

24           BRUCE BIRENBOIM: No, I think that

25  person in all likelihood, would be compensated

1    because they will have the time between now and

2    10 years from now to go see a doctor, get

3    diagnosed, get tested, and will be awarded

4    compensation if that--

5                    JUDGE THOMAS AMBRO: But if it's CTE,

6    for example, you can't, at this point in time, we

7    don't seem to have the scientific ability to

8    determine that it exists until a person has

9    passed away.

10                    BRUCE BIRENBOIM: That's correct because

11   CTE has not been scientifically proven to be a

12   disease. It's simply a pathology of brain

13   structure that leads to certain conditions. And

14   it's the conditions and the impairments and the

15   disabilities that entitle the player to an award.

16                    And the only reason that we award under

17   this settlement, CTE pre-preliminary approval, is

18   because by definition, if a member of a class was

19   deceased pre-approval, they could not have gone

20   to a physician and gotten the diagnosis that's

21   required. So adding that into the settlement was

22   actually an attempt by both sides to ensure

23   fairness among players, both predeceased and who

24   may have conditions in the future.

25                    JUDGE THOMAS AMBRO: Okay.

1          BRUCE BIRENBOIM: But I would emphasize

2     that there is no record. There is no medical

3     evidence whatsoever in this record right now to

4     even address what I'm saying to this Panel, which

5     is exactly why the district court should be

6     permitted to develop that record.

7          JUDGE THOMAS AMBRO: Thank you very

8     much.

9          BRUCE BIRENBOIM: Just one more point,

10    Your Honor. The--Mr. Molo mentioned several times

11    that he has grazed his objections with Judge

12    Brody and been denied. Objections were--

13          JUDGE THOMAS AMBRO: Denied or she

14    didn't deal with them?

15          BRUCE BIRENBOIM: She denied the

16    intervention and said that you may present your

17    objections at the fairness hearing. And I think

18    the law in the Third Circuit is that although

19    denials of intervention motions may be appealable

20    as a collateral order, they are not appealable if

21    the objector has a remedy, which is to appear at

22    the fairness hearing, make objections and then

23    take an appeal, which is this situation.

24          JUDGE THOMAS AMBRO: Thank you very

25    much.

1          BRUCE BIRENBOIM: Thank you, Your Honor.

2          JUDGE THOMAS AMBRO: Mr. Molo, you have

3    five minutes.

4          STEVEN MOLO: Thank you.

5          JUDGE THOMAS AMBRO: And because we gave

6    you, I think, 25, 26 minutes at the outset, we'll

7    probably pretty much stick to that, the five.

8          STEVEN MOLO: Thank you very much. I

9    appreciate the time the court has taken today.

10   First, can I address the CTE point, Judge Ambro?

11          JUDGE THOMAS AMBRO: Sure. Go ahead.

12          STEVEN MOLO: This is the fundamental

13   nature and Judge Jordan here raised, we're saying

14   here, is that this is such a blatant conflict

15   that it requires intervention now. The complaint

16   alleges that these MTBIs result in dementia,

17   Alzheimer's, Parkinson's, ALS and CTE. It clearly

18   alleges CTE. CTE is the only one of those

19   diseases that you get only by playing football or

20   by multiple brain injuries. The other diseases

21   can come upon a person apart from football. It's

22   the industrial disease of football, if you will.

23   The settlement compensates dementia, Alzheimer's,

24   Parkinson's and ALS, but not CTE. And unless you

25   die before the date of preliminary approval--

1      JUDGE KENT A. JORDAN: Well, help me out

2  here, Mr. Molo, because we just heard from Mr.

3  Birenboim telling us that there is a reason why

4  that order is structured the way it is set up.

5  And that the--that's going to be developed in

6  front of the district court judge and there'll be

7  factual underpinnings to explain why CTE is

8  treated one way and other things are treated

9  perhaps in a different way because CTE is, you

10  know, you get symptoms that get compensated

11  instead of the disease itself.

12      What--I take all that argument to be

13  another framing of the assertion that the

14  objectors are here too soon and you should wait,

15  judges, and they should wait, because this stuff

16  was going to be dealt with in an orderly manner.

17  What is the error in that kind of assertion?

18      STEVEN MOLO: The error is because the

19  error in the certification is so gross on its

20  face and there's such a large percentage, that

21  we're going to go through--

22      JUDGE KENT A. JORDAN: I didn't ask

23  [UNINTEL].

24      STEVEN MOLO: If I may, Judge Jordan,

25  we're going to go--

1          JUDGE KENT A. JORDAN: Let me try one

2    more time. I apologize because--

3          STEVEN MOLO: Okay.

4          JUDGE KENT A. JORDAN: --I didn't ask my

5    question in a succinct way. I think what they're

6    saying is the error is not on its face. You can't

7    look at the surface of this and say there's a

8    gross error there because in fact there's a whole

9    lot of factual stuff that you, judges, aren't

10   going to understand--

11         STEVEN MOLO: Well--

12         JUDGE KENT A. JORDAN: --until later.

13         STEVEN MOLO: --this is something that

14   can be understood just on the face. As I just

15   explained, the complaint alleges that CTE is one

16   of the diseases that is caused by MTBI. They pay

17   $4 million--the settlement gets--compensates

18   someone $4 million if you die with CTE before the

19   date of preliminary approval. If you die with CTE

20   after the date of preliminary approval, you get

21   nothing. And to your point, Judge Ambro, about

22   there's a debate about whether CTE can be

23   diagnosed now in someone who's living.

24          But assuming for the sake of argument

25   that it cannot be, that it only could be

1   diagnosed after you die, someone could be

2   diagnosed with CTE after the date of preliminary

3   approval and they get zero, they get zero. And

4   that's a problem here because it's the most

5   prominent disease. It's the most prevalent

6   disease to this class.

7               So this is not some small group that's

8   affected here. We're talking about the entire, a

9   significant portion of the class. Boston

10  University has been studying the brains of former

11  football players, 33 of 34 NFL players had been

12  diagnosed with CTE postmortem. And there's no

13  comparable prevalence of the other diseases in

14  this settlement. This is so gross on its face

15  that we think it should be addressed now. That's

16  what we're asking for.

17              And what's happened now is that the

18  district court has put in motion and adjudication

19  of parties' rights. The rules, by the way, say

20  that notice should only be sent after a class is

21  certified. When notice has been sent and the

22  parties have a choice, the parties can either

23  opt-out or they can object at the fairness

24  hearing, but that choice that they're required to

25  make, they're entitled to have made by a class--

1    or looking at a class that was appropriately

2    represented and it hasn't been represented here.

3    Neither have the two named representatives either

4    in subclass 1 or 2 allege that they either have

5    CTE or they were at risk of having CTE.

6                 JUDGE KENT A. JORDAN: Leave that--

7                 STEVEN MOLO: On its face, you can find

8    that.

9                 JUDGE KENT A. JORDAN: Leave that aside

10   for a moment and speak, if you would, to the

11   argument made by Mr. Issacharoff that the rules

12   contrary to what you just said, the rules

13   specifically contemplate under 23(e)(2), that

14   certain things have to happen in the settlement

15   before there can be a class certification and

16   that those things haven't happened here.

17                 STEVEN MOLO: Well, there was a--

18                 JUDGE KENT A. JORDAN: Is he just

19   mistaken about what 23(e)(2) means?

20                 STEVEN MOLO: There was a motion filed

21   setting forth the 23(a) factors and the 23(b)

22   factors. The court wrote an opinion. The court

23   issued notice. The court set the date for the

24   fairness hearing. And again--

25                 JUDGE KENT A. JORDAN: I'm--

1          STEVEN MOLO: --if we look through the

2    rules, it says up or down, a court shall not

3    certify if it has any doubts.

4          JUDGE KENT A. JORDAN: Speak to the

5    23(e)(2) point that I'm attempting to ask you

6    about.

7          STEVEN MOLO: I'm sorry.

8          JUDGE KENT A. JORDAN: I understand who

9    could be saying there could not be what in--what

10   could accurately be called certification under

11   these circumstances because there are steps under

12   23(e)(2) which have to have been taken. Or maybe

13   I misunderstood and--

14          JUDGE THOMAS AMBRO: Including a

15   hearing.

16          JUDGE KENT A. JORDAN: But if I

17   understood him, he's saying, look at 23(e)(2),

18   that tells you things that have to happen before

19   they're certification and circumstances like

20   this. And they haven't happened. Is he wrong

21   about what 23(e)(2) means?

22          STEVEN MOLO: I believe so because when

23   you read it with the clear language in--and the

24   Advisory Committee [UNINTEL] 23(a), there is no

25   conditional class. There is no--there's a class.

1   There's either a class or there's not a class and

2   the judge determined here and set in motion an

3   adjudication of people's rights who are affected.

4                    And they are titled "Due Process."  It

5   titles them to a choice between either

6   participating in the class settlement that is

7   appropriately represented by people who share

8   their conditions and lawyers who have acted that

9   way or not. And that didn't happen here. And it's

10  not going to happen here.

11                   And if we wait to go through a fairness

12  hearing and let's assume that we do have a

13  fairness hearing, and let's assume that Judge

14  Brody agrees with me and says, you know what?

15  There was inadequate representation. We could

16  have been dealing with that with an order from

17  this court saying that on the face of the

18  pleadings, just what I read to you, that there's

19  no class representative that claims to have CTE

20  or be at risk of contracting CTE. The complaint

21  alleges that it's serious. All CTE claims are

22  released. They are released. So a claim that the

23  parties, at $4 million, if you died before the

24  date of preliminary approval, that the person who

25  dies the date after preliminary approval of CTE,

1  gets zero.

2           JUDGE KENT A. JORDAN: Are you saying

3  that she can't fix that?  If she agrees that

4  that's the problem, that there's something that

5  she's - it's beyond her [AKIN?] to repair that?

6           STEVEN MOLO: It can be, but because

7  it's such a large group, all right?  This is

8  material. It's a flaw that is central to the

9  class, that's central to the settlement and the

10  court is entitled to have, the parties are

11  entitled to have, adequate representation. This

12  isn't just a simple little fix. There's a need

13  for separate counsel to represent the people

14  whose rights have been bargained away,

15  substantial rights that have been bargained away.

16           And rights that the parties, the NFL

17  and the class counsel have acknowledged are worth

18  in the case of CTE, $4 million at the time of

19  death. You can't just say--

20           JUDGE THOMAS AMBRO: And you don't think

21  Judge Brody--

22           STEVEN MOLO: --you go before the court

23  and fix that.

24           JUDGE THOMAS AMBRO: --with her past

25  record of having sent this case back is willing

1   to consider that fully and fairly?

2               STEVEN MOLO: I think that Judge Brody,

3   if she is instructed by this court, that there is

4   a flawed class.

5               JUDGE THOMAS AMBRO: But if your

6   argument is correct, why would she not just

7   accept what - that on her own? Why does she need

8   us to tell her?

9               STEVEN MOLO: Because even though it was

10  raised in the context of an intervention motion,

11  and even though it was raised in the context of

12  the preliminary--objection to preliminary

13  approval.

14              And it's true, the objection--the

15  motion to intervene was denied after we filed

16  this appeal. Because the judge had those

17  opportunities, this is such a fundamental flaw,

18  and if the judge didn't see it when we waved that

19  flag, waved two flags, high in the air, and did

20  nothing about it--

21              JUDGE THOMAS AMBRO: Well, but Mr.

22  Birenboim--

23              STEVEN MOLO: [OVERLAPPING] why would

24  you go through all this process--

25              JUDGE THOMAS AMBRO: --says is what she

1    didn't do was allow you to intervene to make that

2    argument.

3                    STEVEN MOLO: Or she didn't address the

4    objection that we made at the time of the motion

5    for preliminary approval. It's the--look,

6    anything could happen, but, you know, experience

7    suggests that if the issue that is this big where

8    the most predominant disease faced by class

9    members gets no relief is raised--

10                   JUDGE KENT A. JORDAN: Well, wasn't--

11                   STEVEN MOLO: [OVERLAPPING] and their

12   rights have been bargained away. They release any

13   claim they have, then Judge Brody--

14                   JUDGE KENT A. JORDAN: Doesn't it--

15                   STEVEN MOLO: --is now going to change

16   her mind. I mean--

17                   JUDGE KENT A. JORDAN: When you say she

18   "change her mind," I mean the whole point that

19   she hasn't made up her mind.

20                   STEVEN MOLO: She has with respect to

21   preliminary approval because certified a class

22   over our--

23                   JUDGE KENT A. JORDAN: She--

24                   JUDGE THOMAS AMBRO: Well, but what

25   you're saying is that even there, there's a

1    notice that went out that [MADE THE?] intention

2    with - intention with the proposed agreement.

3                    STEVEN MOLO: The--I'm sorry?

4                    JUDGE THOMAS AMBRO: That's--there are

5    claims or statements made in the notice that may

6    not--that may conflict with what is in the

7    proposed agreement as to who is actually covered,

8    for example, if somebody is diagnosed with CTE at

9    a later time.

10                   STEVEN MOLO: The notice is

11   substantially flawed. The notice, notwithstanding

12   what they said. There is mention in the long form

13   notice at one point--

14                   JUDGE THOMAS AMBRO: Yeah, but is it--

15                   STEVEN MOLO: --about the cutoff date.

16                   JUDGE THOMAS AMBRO: --even there, isn't

17   that all the more reason to put it before the

18   district judge who's been in charge of this

19   matter for quite some time?  And not just in

20   charge of it, but really actively involved from

21   day one.

22                   STEVEN MOLO: I don't disagree that

23   Judge Brody has approached this with, in my

24   judgment, the best of intention, and that she -

25   that we all wanted to get a--we want to see a

1  settlement done.

2              JUDGE KENT A. JORDAN: Not just with--

3              STEVEN MOLO: We just want one that

4  complies with Rule 23, and the sooner that the

5  fix happens, the better.

6              JUDGE KENT A. JORDAN: And best of

7  intentions sort of undersells it. She, as a very

8  experienced trial judge, has been all over this,

9  very careful and by all appearances, working this

10  hard. So there's more than good intentions here.

11  There's a lot of hard work that's going on in the

12  district court.

13              STEVEN MOLO: I don't mean for a moment

14  to disparage what Judge Brody has done, but I do

15  disagree. And it's very clear on the face.  It's

16  inconsistent with Dewey. It's inconsistent with

17  G.M. Trucks, that you cannot cut out a huge swath

18  of the class and not even give them

19  representation. Forget about the fact that their

20  rights were bargained away, they never even had

21  anybody at the bargaining table. Neither of the

22  class representatives claimed that they either

23  had CTE or were at risk of getting CTE.

24              JUDGE THOMAS AMBRO: So, if we go

25  forward on November 19, you'll be at that

1    hearing, right?

2                    STEVEN MOLO: With bells.

3                    JUDGE THOMAS AMBRO: Okay. All right.

4    Thank you very much.

5                    STEVEN MOLO: Thank you very much for

6    your time and [UNINTEL PHRASE]--

7                    JUDGE THOMAS AMBRO: And thank you to

8    all counsel. Exceptionally well-presented

9    arguments and we'll take the matter under

10   advisement and try to rule as quickly as we can.

11                   STEVEN MOLO: Thank you very much.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    Gotham Transcription states that the preceding

2    transcript was created by one of its employees

3    using standard electronic transcription equipment

4    and is a true and accurate record of the audio on

5    the provided media to the best of that employee's

6    ability. The media from which we worked was

7    provided to us. We can make no statement as to

8    its authenticity.

9

10                   Attested to by:

11

12

13                   Sonya Ledanski Hyde

14

15

16

17

18

19

20

21

22

23

24

25

1  Gotham Transcription states that the preceding

2  transcript was created by one of its employees

3  using standard electronic transcription equipment

4  and is a true and accurate record of the audio on

5  the provided media to the best of that employee's

6  ability. The media from which we worked was

7  provided to us. We can make no statement as to

8  its authenticity.

9

10                 Attested to by:

11

12

13                 Sonya Ledanski Hyde

14

15

16

17

18

19

20

21

22

23

24

25