# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **Hon. Anita B. Brody** |

## RESPONSE OF THE NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC IN OPPOSITION TO EMERGENCY MOTION TO MODIFY OR AMEND THE JULY 7, 2014 ORDER REQUIRING OPT-OUTS ON OR BEFORE OCTOBER 14, 2014 (DOC. NO. 6172) AND JOINDER IN EMERGENCY MOTION (DOC NO. 6173)

The National Football League ("NFL") and NFL Properties LLC (collectively, the "NFL Parties") submit this Response in Opposition to the Emergency Motion to Modify or Amend the July 7, 2014 Order Requiring Opt-Outs on or Before October 14, 2014, filed by Tregg Duerson and Ray Austin (the "Duerson Plaintiffs") (Doc. No. 6172 ("Mov. Br.").)[1]

---

[1]    A Joinder in Emergency Motion was filed by Lewis Bush (deceased by his Successor in Interest Dee Bush), Dee Bush (as an individual), Lewis Bush Jr. (by his Guardian ad Litem, Elizabeth Fox) and Makai Bush (by her Guardian ad Litem, Cleo Bush) (the "Bush Family") (Doc. No. 6173) (the "Joinder Br.").   Twenty-three other Settlement Class Members (the "Lewis Plaintiffs") also seek to join the Duerson Plaintiffs in their motion.  (Doc. No. 6179 (the "Lewis Response").)

## PRELIMINARY STATEMENT

This motion—seeking to upend this Court's carefully structured timeline and process for considering final approval of the proposed Class Action Settlement—should be denied.[2]

The Duerson Plaintiffs are two plaintiffs in MDL 2323 who are asking this Court to move the deadline for filing requests to opt out from October 14, 2014 until after the November 19, 2014 Fairness Hearing to allow them to participate in the Fairness Hearing while maintaining their ability to opt out after it.  But the Duerson Plaintiffs ignore the standard for setting an opt out deadline and the settled practice for class action settlements:  Under Federal Rule of Civil Procedure 23 and due process, a court must provide settlement class members with sufficient notice of the terms of the proposed settlement and sufficient time to review and evaluate those terms.  After evaluating the terms, the class member then must—by a date certain in advance of the fairness hearing—decide whether to opt out of the settlement class or stay in it and object if he so desires; only objectors have an interest in the settlement and a right to participate at the fairness hearing.   Here, the Court provided Settlement Class Members with approximately 90 days to review the terms of the Settlement Agreement and decide whether to opt out or remain in the Settlement Class.  That 90-day time period is more than sufficient—indeed, generous by any standard—for the Duerson Plaintiffs to decide whether to remain in or opt out of the Settlement Class.

---

[2]    Except where otherwise noted, the capitalized terms in this Response in Opposition have the same meaning as those in the Settlement Agreement.  (*See* Class Action Settlement Agreement as of June 25, 2014 (Doc. No. 6087) ("Settlement Agreement").)

None of the Duerson Plaintiffs' arguments for deviating from the standard notice and opt out protocols implemented by this Court has merit.

Although the Duerson Plaintiffs contend that "the real terms" of the Settlement Agreement have remained "shrouded in secrecy" (Mov. Br. 1-2), the Settlement Class Notice—approved by the Court as satisfying Rule 23 and due process—informed Settlement Class Members of the nature of the pending litigation, the general terms of the Settlement Agreement, and the process through which Settlement Class Members may object to or opt out of the Class Action Settlement.  Indeed, far from being "secret," the terms of the settlement have been splashed across all media and the actual agreement has been publicly available for study by the Duerson Plaintiffs since June 25, 2014—giving them ample opportunity to review the terms of the Settlement.

The Duerson Plaintiffs further argue that an extension would allow them to participate in and be "swayed" by the Fairness Hearing.  (Mov. Br. 3.)  The law permits no such thing.  Class members who opt out have no interest in the settlement and no right and no standing to participate in the Fairness Hearing—either to "sway" other class members or to be "swayed" with respect to their decision to remain in the class.  Should the Duerson Plaintiffs' relief be granted, class members who approve of the Settlement and do not plan to opt out could see the Class Action Settlement delayed or derailed by those with no ultimate interest in the Settlement.

Moreover, under well-established Third Circuit precedent, in analyzing the fairness of a proposed class action settlement, the Court must look to, among other things, how the settlement class has reacted to the proposed settlement, including how many settlement class members have opted out.  Here, if Settlement Class Members are

permitted to opt out after the Fairness Hearing and after the Court's ruling on final approval of the Class Action Settlement, then the Court will be unable to address this necessary factor and the parties and objectors will not be able to present argument to the Court regarding the factor at the Fairness Hearing.

Finally, an extension would violate the NFL Parties' rights under the Settlement Agreement.  The NFL Parties negotiated for a walk-away right in the Settlement Agreement.  Such a provision is typical in class action settlements and allows the settling defendant to determine if the settlement agreement will resolve most of the unresolved claims against it before finally committing to settlement.  Because the Settlement Agreement provides that the walk-away right here must be exercised, if at all, "prior to the Fairness Hearing," the NFL Parties will suffer substantial prejudice if Settlement Class Members can opt out after the Fairness Hearing.

In sum, the Duerson Plaintiffs' request to extend the opt out deadline until after the Fairness Hearing should be denied.  The Settlement Class Members have been provided with notice that satisfies the requirements of Rule 23 and due process, and such notice allows the Settlement Class Members to fully evaluate the proposed terms of the Settlement Agreement in order to determine whether they would like to participate in the proposed settlement or opt out of it.  The Duerson Plaintiffs would like to have it both ways:  they would like to be able to object to the settlement while also maintaining their ability to later opt out if final approval of the Settlement Agreement is granted.  Because Rule 23, due process and established law, however, do not support the relief requested, this motion, as well as the joinder in this motion by the Bush Family, should be denied.[3]

---

[3]    The Lewis Plaintiffs' response should also be denied for the reasons below.

## BACKGROUND

### The Class Action Settlement and Notice

On July 7, 2014, this Court preliminarily approved the Settlement Agreement and preliminarily certified a settlement class of Retired NFL Football Players and their Representative and Derivative Claimants in *In re National Football League Players' Concussion Litigation* ("MDL 2323").  (Order ¶¶ 1-2, July 7, 2014, Doc. No. 6084 ("Prelim. Approval Order").)  The Settlement Agreement includes a provision that provides the NFL Parties a walk-away right to unilaterally terminate the Class Action Settlement and Settlement Agreement "following notice of Opt Outs and prior to the Fairness Hearing."  (Settlement Agreement § 16.1.)  The Court also approved the settling parties' Settlement Class Notice and Settlement Class Notice Plan as "meet[ing] the requirements of Rule 23 and due process."  (Mem. Op. 20, Doc. No. 6083.)

The Court's July 7, 2014 Order also established a schedule for considering final approval of the Settlement Agreement and Settlement Class.  Pursuant to the Court's order:  (i) Class Counsel was required to post the Settlement Class Notice on the Settlement Website by July 14, 2014; (ii) Class Counsel was required to mail the Settlement Class Notice to all known Settlement Class Members and their counsel by July 24, 2014; (iii) any Settlement Class Members wishing to opt out must request to do so by October 14, 2014—which is over 90 days after Settlement Class Notice was published on the Settlement Website and over 80 days after Class Counsel mailed Settlement Class Notice to known Settlement Class Members and their counsel; (iv) any Settlement Class Members wishing to object must do so by October 14, 2014; (v) the settling parties must file any responses to objections and papers in support of final approval of the settlement by November 12, 2014; and (vi) the Court will hold a Fairness

Hearing to determine whether to grant final approval of the Settlement Agreement and certify the Settlement Class on November 19, 2014.  (Prelim. Approval Order ¶¶ 4-5.)

Class Counsel mailed long-form Settlement Class Notice to Settlement Class Members based on lists of Settlement Class Members maintained by the NFL and/or the National Football League Players Association.   (Mot. for Approval of Completed Versions of Long-Form Notice and Sum. Notice, Ex. 1, Doc. No. 6086-1 ("Long-Form Notice").)   This direct mailing describes the Settlement Agreement in plain, easily understood language and advised Settlement Class Members of the definition of the Settlement Class, their rights regarding opting out of the Class Action Settlement or objecting thereto, and the date, time, and location of the Fairness Hearing.   The Settlement Class Notice also objectively and neutrally apprises all Settlement Class Members of the nature of the action and the Settlement Class claims and issues including, as relevant here, the maximum recovery Monetary Awards, Offsets to Monetary Awards, and that the Qualifying Diagnosis of Death with CTE includes only "diagnoses of Death with CTE prior to **July 7, 2014.**"  (Long-Form Notice at 6, 12-14 (emphasis in original).)

Pursuant to the Court's July 7, 2014 Order, Class Counsel also published the one-page short-form notice in various publications, including *Time*, *Ebony*, *People*, and *Sports Illustrated*.  (Prelim. Approval Order ¶ 4.)  The short-form notice provides similar information in condensed form, and states in relevant part that the Settlement Agreement provides recovery only for "*certain* cases of chronic traumatic encephalopathy or CTE . . . diagnosed after death."   (Mot. for Approval of Completed Versions of Long-Form Notice and Sum. Notice, Ex. 2, at 1, Doc. No. 6086-2 ("Short-Form Notice").)

Both the Short-Form Notice and Long-Form Notice are also available on the Settlement Website.  The Settlement Website has links to numerous other documents and

information related to the Class Action Settlement, including the Settlement Agreement, the Court's preliminary approval order and opinion, Class Counsel's moving papers in support of preliminary approval, and the declaration of Judge Layn R. Phillips in support of preliminary approval. (*See* https://www.nflconcussionsettlement.com/.) The Settlement Website also includes a Frequently Asked Questions page explaining, among other things, the basics of the Settlement Agreement and how to access additional information, including through use of a phone hotline. (*See id*.)

### The Motion to Amend or Modify the Opt Out Deadline

On September 19, 2014, the Duerson Plaintiffs filed their Emergency Motion to Modify or Amend the July 7, 2014 Order Requiring Opt-Outs on or Before October 14, 2014. (Mov. Br.) The Duerson Plaintiffs ask the Court to alter the existing schedule to allow Settlement Class Members to opt out of the Class Action Settlement at an "appropriate time" following the November 19, 2014 Fairness Hearing. (*Id*. at 5.)

On September 19, 2014, the Bush Family filed the Joinder to the Duerson Plaintiffs' motion. (Doc. No. 6173.) They assert that because the Settlement Agreement does not entitle them to any Monetary Awards they have "no choice but to opt out," but seek a postponement of the opt out deadline to allow them the opportunity to speak at the Fairness Hearing so that their voices can "be heard" about the fairness of the Settlement. (Joinder Br. 7.)

On September 26, 2014, the Lewis Plaintiffs filed a "Response" to the Duerson Plaintiffs' motion and the Bush Family's Joinder. They argue, incorrectly, that Rule 23 no longer allows the Court to conditionally certify a class action settlement, and therefore, an opt out cannot be required prior to actual certification. (Lewis Response 3.)

For the reasons below, all three motions should be denied.

## ARGUMENT

## I.   THE DUERSON PLAINTIFFS' PROPOSED EXTENSION HAS NO BASIS IN LAW

Nowhere do the Duerson Plaintiffs claim that the Court's schedule violates their *legal* rights as a matter of due process or Rule 23.  Nor could they.  "As long as the dissatisfied class member has the right either to object and attempt to influence the settlement from within the class, or to leave the class and make a separate peace with the defendant, as is the case here, due process is satisfied."  *Olden* v. *LaFarge Corp.*, 472 F. Supp. 2d 922, 935-36 (E.D. Mich. 2007) (overruling objection to proposed class action settlement when objectors complained that "the deadlines to object to the settlement and to opt out are the same"); *Cobell* v. *Salazar*, 679 F.3d 909, 922 (D.C. Cir. 2012) (listing the due process requirements).  And all Rule 23 requires is that class members be provided adequate notice on which to make a decision whether to stay in the class or opt out.

That standard is easily met here.  None of the Duerson Plaintiffs' arguments to the contrary have merit.  Indeed, the Duerson Plaintiffs' requested extension would conflict with settled law of class action settlements, hinder the Court's analysis of the fairness of the Settlement Agreement, and directly interfere with its terms.

### A.   The Settlement Class Notice and Court Schedule Comply with Rule 23 and Due Process

The standard under which class members must be provided notice of their rights to object from within the class or to opt out of the class is clear.  Under Federal Rule of Civil Procedure 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who

can be identified through reasonable effort."  Where a settlement class is preliminarily certified, Rule 23 and due process require that settlement class members receive notice of the terms of the class settlement agreement, and that they be given time to evaluate it.  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 230-32 (D.N.J. 1997); *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 483 (E.D. Pa. 2010) (holding that when "the substantive information contained in the notice complie[s] with the specific requirements of Rule 23(c)," then notice is "sufficient under Rule 23 and due process").  Such notice "must inform [settlement] class members (1) of the nature of the pending litigation, (2) of the settlement's general terms, (3) that complete information is available from the court files, and (4) that any class member may appear and be heard at the Fairness Hearing."  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. at 230; *see also* Fed. R. Civ. P. 23(c)(2)(B) (listing topics the notice must cover "clearly and concisely" and "in plain, easily understood language").  Notice need only be a "summary of the litigation and settlement"; it "need not be unduly specific."  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. at 231 (citations and quotation omitted).

Here, the Settlement Class Notice informed Settlement Class Members of the nature of the pending litigation, the general terms of the Settlement Agreement, and the process through which Settlement Class Members may object to or opt out of the Class Action Settlement.  As this Court recognized, "[t]he form and content of the proposed Long-Form Notice and Summary Notice . . . satisfy the requirements of Rule 23 and the Due Process clause." (Mem. Op. 19, Doc. No. 6083).)  In addition, the Court found that the Settlement Class Notice was written in plain and straightforward language and

apprised all Settlement Class Members of:  the nature of the action; the definition of the Settlement Class; the Settlement Class claims and issues; that Settlement Class Members may enter an appearance through an attorney at the Fairness Hearing; that Settlement Class Members may elect to opt out of the Class Action Settlement; the binding effect of a class judgment on Settlement Class Members; and the date, time, and location of the Fairness Hearing.[4]  (*Id*.; *see also* Fed. R. Civ. P. 23(c)(2)(B).)

Here, the Court provided approximately 90 days for Settlement Class Members to evaluate the Settlement Class Notice and the terms of the proposed Settlement Agreement before requiring them to object or opt out.  Generally, a 30 to 60 day period between sending notice and the opt out deadline satisfies due process.  *See, e.g., In re Prudential*

---

[4]  Although the Duerson Plaintiffs make the conclusory claim that "many Absent Class Members and their families were not aware of the significant rights that were negotiated away in this Proposed Settlement" (Mov. Br. 2), they only point to, at most, two specific examples of alleged deficiencies in the Settlement Class Notice. First, the Duerson Plaintiffs claim the notice falsely states that the Settlement Agreement provides recovery for Death with CTE when, in fact, the Settlement Agreement only provides recovery for Settlement Class Members who died with CTE prior to the date of preliminary approval (July 7, 2014).  (Mov. Br. 2 n.2.)  Contrary to the Duerson Plaintiffs' assertion, the Long-Form Notice states clearly:  the Settlement Agreement provides recovery for "diagnoses of Death with CTE prior to **July 7, 2014**."  (Long-Form Notice 6 (emphasis in original).)  Similarly, the Short-Form Notice cautions that the Settlement Agreement provides recovery only for "*certain* cases of chronic traumatic encephalopathy or CTE . . . diagnosed after death."  (Short-Form Notice 1 (emphasis added).)  As such, the Settlement Class Notice accurately describes the scope of the recovery provided for Death with CTE.

Second, the Duerson Plaintiffs' assertion that Settlement Class Members cannot "determine how much they may actually recover" under the Settlement Agreement is equally misguided. (Mov. Br. 4.)  The Settlement Class Notice lists the maximum Monetary Awards for each Qualifying Diagnosis based on the age of the Settlement Class Member at the time of diagnosis.  (Long-Form Notice 12.)  Then, subsequent pages show the Offsets that potentially reduce a Settlement Class Member's Monetary Award based on the number of Eligible Seasons played, participation (or lack thereof) in the Class Action Settlement's Baseline Assessment Program, and any non-NFL Football related Strokes or Traumatic Brain Injuries suffered.  (*Id*. at 12-14.)

*Ins. Co. of Am. Sales Practices Litig.,* 962 F. Supp. 450, 562 (D.N.J. 1997) (citing cases). The duration of the opt out period more than satisfies due process.

Contrary to the Duerson Plaintiffs' suggestion, the Third Circuit's 1973 decision in *Greenfield* v. *Villager Industries, Inc.*, 483 F.2d 834 (3d Cir. 1973), is completely consistent with this rule. In *Greenfield*, the court held that a 30-day opt out period was too short to satisfy due process because the notice was not sent directly to settlement class members and the brokerage firms that received the notice would need "to search their records, notify customers, probably by mail, for whom they held shares in street name, receive[] instructions from these customers, again probably by mail, and file the proofs of claim or request for exclusion." *Id.* at 834. Here, by contrast, the opt out period is three times longer, direct notice was provided to known Settlement Class Members, and there are no other logistical issues similar to those confronted by the *Greenfield* settlement class members.

In sum, the Settlement Class Members were given sufficient notice of the terms of the Settlement Agreement and time to be able to evaluate the proposed settlement and determine whether to participate in the Class Action Settlement, object to the Settlement, or opt out of the Settlement.

**B.      Extending the Opt Out Period Would Allow Settlement Class Members Impermissibly to Both Object and Opt Out**

Beyond complying with Rule 23 and due process, this Court's schedule requiring opt outs *before* the fairness hearing is consistent with settled class action settlement precedent that prohibits opt outs from objecting or otherwise participating in the fairness hearing.

Under established law, "class members may either object or opt out, but they cannot do both."  Newberg on Class Actions § 13:23 (5th ed.).[5]  These are "mutually exclusive options."  *Olden*, 472 F. Supp. 2d at 930, 936.  "[N]either the public interest nor the interest of the greater class is served by allowing disgruntled members to exercise both options."  *Id.*; *see also Mortimer* v. *River Oaks Toyota, Inc.*, 663 N.E.2d 113, 117 (Ill. App. Ct. 1996) (observing that, under Illinois' analog to Rule 23(e), objecting to a proposed settlement is "an act wholly inconsistent with any intent to be excluded from the class").

The Duerson Plaintiffs nevertheless argue that the Court should extend the opt out deadline to permit Settlement Class Members to be "swayed" by objections at the Fairness Hearing.  (Mov. Br. 3.)  In essence, the Duerson Plaintiffs argue that certain Settlement Class Members should be able to use the objection process and Fairness Hearing as a soapbox to encourage opt outs.  Such a scenario would violate principles of standing because it would permit persons not bound by a judicial decision on the fairness of the settlement—Settlement Class Members intending to opt out—to attempt to affect that same judicial decision.  *See Mayfield* v. *Barr*, 985 F.2d 1090, 1090 (D.C. Cir. 1993) (opt outs "have no standing to challenge the court's approval of the Agreement as it

---

[5]   The Duerson Plaintiffs' concerns appear to be, at least in part, motivated by a misunderstanding of the law governing the Court's ability to modify the Class Action Settlement.  They assert that, by opting out by October 14, 2014, they will "potentially miss out on a modified settlement agreement" if and when "this Court demands modification of certain terms."  (Mov. Br. at 3-4.)  Not so.  Courts cannot modify a settlement agreement.  *See* Manual for Complex Litigation § 21.61 (4th ed. 2004) ("The judicial role in reviewing a proposed settlement is critical, but limited to approving the proposed settlement, disapproving it, or imposing conditions on it. The judge cannot rewrite the agreement.").  To the extent the Duerson Plaintiffs argue they merely seek to have the opt out deadline extended to a date after the Fairness Hearing, but prior to the Court's ruling on the Settlement's fairness, their position fails for the reasons set forth in this Response.

relates to the class action").  Other Settlement Class Members who approve of the settlement terms and do not plan to opt out could see the settlement delayed or derailed by those with ultimately no interest in the Class Action Settlement.  The Bush Family exemplifies this impermissible approach by alleging that they have "no choice but to opt out" yet seeking to speak at the Fairness Hearing so that their voices can "be heard" about the fairness of the Settlement.  (Joinder Br. 7.)

Courts routinely reject similar efforts to allow settlement class members to opt out after seeing how courts ruled on their objections.  *See Olden*, 472 F. Supp. 2d at 931, 935-36 (holding that schedule setting the same deadline for opt outs and objections was proper and stating that allowing class members to simultaneously opt out and object "would countenance the practice of influencing litigation—or attempting to do so—in which the class member really has no stake"); *In re Vitamins Antitrust Class Actions*, 215 F.3d 26 (D.C. Cir. 2000) (affirming denial of motion by opt out plaintiffs to intervene to object to class action settlement provision); *In re Ins. Brokerage Antitrust Litig*., 282 F.R.D. 92, 110 (D.N.J. 2012) ("The case law does not suggest that a class member requesting exclusion from a settlement may nonetheless object to that settlement."); *Gardner* v. *Lafarge Corp.*, 2007 WL 1695609, at *2 (E.D. Mich. 2007) (stating that "contingent requests for exclusion" were "impermissible").

Given the settled law that precludes their relief, the Duerson Plaintiffs not surprisingly fail to identify a single precedent for the relief they seek.  The only references cited by the Duerson Plaintiffs in alleged support of their position are sections 21.611 and 22.924 of the Annotated Manual for Complex Litigation.  The Duerson Plaintiffs cite those sections for the proposition that "[i]t is well within this Court's

discretion to amend or modify the order preliminarily approving the settlement to allow additional opt-outs beyond the . . . deadline currently established." (Mov. Br. 4.) But these sections address a wholly separate issue, namely Rule 23(e)'s authorization for courts to reject class settlements that do not provide a second opt out opportunity to class members in the narrow circumstance where "the class is certified [for trial] and the initial opt-out period expires before a settlement agreement is reached[.]" Annotated Manual for Complex Litigation § 21.611 (4th ed.); *see also id*. § 22.924 (same); Fed. R. Civ. P. 23(e)(4). In other words, the first opt out period is with regard to *litigation class certification*, while the second opt out period is with regard to *settlement*. Here, a class was never certified for trial, and therefore, Rule 23(e) has no application with regard to the opt out provision.

In short, the Duerson Plaintiffs have cited *no* authority for their proposal to extend the opt out deadline until after the Fairness Hearing.

### C.   Extending the Opt Out Period Would Interfere with the Court's Ability to Rule on the Settlement's Fairness

Extending the opt out deadline would also hinder the Court's ability to assess the settlement's fairness. "[T]he reaction of the class to the settlement" is one of the factors courts in the Third Circuit must look to when determining if a class settlement is fair and should be approved. *See Girsh* v. *Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). Courts analyze this factor by considering, among other things, the number of opt outs. *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004). Inherent in this exercise is the notion that opt outs must have declared their desire not to participate in the settlement as of the Fairness Hearing. In other words, in order to fully assess the fairness of the proposed settlement, the Court must know how many class members have opted

out of the settlement and intend to litigate their claims against the NFL Parties. The Duerson Plaintiffs' request that the Court allow them to opt out *after* the Court issues its final order would inhibit the Court's ability to comply with Third Circuit precedent in analyzing all of the *Girsh* factors. Moreover, although the Court could theoretically set an opt out deadline shortly after the Fairness Hearing, but before it issues any final order, such a schedule would deprive the parties and objectors of the opportunity to fully address "the reaction of the class to the settlement" at the Fairness Hearing. Thus, for that reason too, the request for an extension should be denied.

### D. Extending the Opt Out Period Would Undermine the NFL Parties' Ability to Exercise Their Walk-Away Rights Under the Settlement

If that were not enough, the Duerson Plaintiffs' requested extension would also violate the NFL Parties' walk-away rights under the Settlement Agreement. The NFL Parties bargained for the right to terminate the Settlement Agreement "following notice of Opt Outs *and prior to the Fairness Hearing*." (Settlement Agreement § 16.1 (emphasis added).) Such a walk-away provision is typical in a class action settlement, and, indeed, essential to the NFL Parties because class actions settlements are only beneficial where settling defendants can "determine ahead of time whether the settlement would resolve most of the potential claims." *See, e.g., In re Diet Drugs Prods. Liab. Litig.*, 92 F. App'x. 890, 894 (3d Cir. 2004) (granting settling defendant the right "to terminate the settlement agreement, at its discretion, based on the number of opt outs"). Here, consistent with this purpose, the NFL Parties' walk-away right allows the NFL Parties to learn the total number of Opt Outs—*i.e.*, unresolved claims—before finally committing to the Class Action Settlement. The Duerson Plaintiffs' proposal would leave the NFL Parties without the necessary information—indeed, the only information—

on which to base their decision effectively, depriving the NFL Parties of their ability to exercise their bargained-for walk-away right.

*        *        *

In the end, the Duerson Plaintiffs have more than enough information and have had more than enough time to decide whether to remain in the class or opt out. Their proposal to extend the opt out deadline would violate the long-established principle that only those class members that intend to be bound by the Court's fairness determination can participate in the fairness hearing. In addition, it would impede the Court's ability to assess the fairness of the settlement and effectively would negate the ability of the NFL Parties to exercise, if they choose to do so, their bargained walk-away right. For all of the reasons discussed above, the Duerson Plaintiffs' motion and the Bush Family's Joinder in the motion should be denied.

## II.     THE LEWIS PLAINTIFFS' ARGUMENT THAT THERE IS NO CLASS TO OPT OUT OF IS WRONG AS A MATTER OF LAW

The Response filed by the Lewis Plaintiffs—also arguing that the opt out period must be extended until after the Court issues its fairness determination—fares no better. The Lewis Plaintiffs reason that the 2003 Amendments to Rule 23(c)(1)(C), which removed language stating that certification decisions "may be conditional," necessitates a finding that no class has been certified here for purposes of opting out of a class action settlement agreement. (*See* Lewis Response 3.) Not only do the Lewis Plaintiffs fail to cite a single authority supporting their argument, but adopting their theory runs counter to the well-established procedure for reviewing and approving class action settlement agreements.

16

This Court preliminarily approved class certification in connection with preliminary approval of the settlement in the manner accepted by the courts throughout the country—even in cases post-2003. *See, e.g., Gates* v. *Rohm & Haas Co.*, 248 F.R.D. 434, 447 (E.D. Pa. 2008) ("For purposes of effectuating the proposed Settlement, this action is conditionally certified for settlement purposes only as a class action[.]"); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2012 WL 92498, at *13 (E.D. La. Jan. 10, 2012) (conditionally certifying settlement class); *Collins* v. *Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 304 (E.D. Cal. 2011) ("Settlement Class is conditionally certified"); *see also* Mem. Op. 12-17, Doc. No. 6083 (finding that the requirements of Rule 23 are met). For instance, the term conditional certification is employed in the settlement context to describe the conditional nature of settlement class certification that "preserves the defendant's ability to contest certification should the settlement fall apart." *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 299 (3d Cir. 2005) (citation and quotation omitted).

Moreover, the practice of preliminarily certifying a settlement class at the preliminary approval stage serves the purpose of doing exactly what these plaintiffs seek—to provide notice to the class of the terms of the settlement. *Gates*, 248 F.R.D. at 438 ("Once a settlement is preliminarily approved by the Court, notice of the proposed settlement and the fairness hearing is provided to class members."); *see also* Newberg on Class Actions § 13:10 (5th ed.). Finally, in its Memorandum Opinion granting preliminary approval, the Court reviewed and analyzed each element of Rule 23's requirements, further showing that there was nothing cursory about the court's review. (Mem. Op. 12-17, Doc. No. 6083.)

Plaintiffs' cases—purporting to support the position that preliminary certification of settlement classes in connection with preliminary approval of the settlement are invalid—are entirely inapposite. Both cases address the certification standard for *litigation* classes, which arise in an entirely different context. *See* Manual for Complex Litigation § 21.612 (4th ed.) (unlike litigation classes, "[s]ettlement classes . . . permit defendants to settle while preserving the right to contest the propriety and scope of the class allegations if the settlement is not approved and, in Rule 23(b)(3) actions, to withdraw from the settlement if too many class members opt out."); *see also* Newberg on Class Actions § 13:16 (5th ed.) ("Just as the settlement approval unfolds through two levels of judicial review (preliminary and final), so, too, does the motion for settlement class certification. At the preliminary phase, putative class counsel will typically file a motion for 'conditional class certification' and then make a motion for final class certification in conjunction with the motion for final approval of the settlement."). The pre-2003 practice of conditional certification allowed courts to make provisional or almost hypothetical certification determinations, often on an abbreviated record. *See* Newberg on Class Actions § 7:33 (5th ed.) (after 2003 amendments to Rule 23, "initial class action decisions may be conditional in the sense they can later be amended but not conditional in the sense that the requirements of Rule 23 have yet to be met"); *see also In re Cordis Corp. Pacemaker Prod. Liab. Litig.*, 1992 WL 754061, at *16 (S.D. Ohio Dec. 23, 1992) (conditionally certifying class, subject to later decertification following trial, where court "freely admit[ted]" that action "pose[d] potential management problems which may prove insurmountable"); *Heights Cmty. Cong.* v. *Rosenblatt Realty, Inc.*, 73 F.R.D. 1, 4-5 (N.D. Ohio 1975) (ascertaining amenability of action to class treatment

solely for limited purposes of hearing on preliminary injunction application).  Simply, this is not the issue presented before this Court.  The certification of litigation and settlement classes are inherently different.  *See* Manual for Complex Litigation § 21.612 (4th ed.).  Because there is an existing conditionally certified Settlement Class, the Lewis Plaintiffs' argument that there is nothing for them to opt out of fails.

## III.    CONCLUSION

For these reasons, the Emergency Motion to Modify or Amend the July 7, 2014 Order Requiring Opt-Outs on or Before October 14, 2014, the Joinder filed by the Bush Family, and the Response filed by the Lewis Plaintiffs should be denied.

Dated:  October 2, 2014                    Respectfully submitted,

/s/ Brad S. Karp
Brad S. Karp
Theodore V. Wells Jr.
Bruce Birenboim
Lynn B. Bayard
PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Main: 212.373.3000
Fax: 212.757.3990
bkarp@paulweiss.com
twells@paulweiss.com
bbirenboim@paulweiss.com
lbayard@paulweiss.com

Beth A. Wilkinson
PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
Main: 202.223.7300
Fax: 202.223.7420
bwilkinson@paulweiss.com

and

Robert C. Heim (Pa. Atty. ID 15758)
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
Main: 215.994.4000
Fax: 215.994.2222
Robert.heim@dechert.com

**Attorneys for National Football League
and NFL Properties LLC**

### ***Certificate of Service***

On October 2, 2014, I electronically filed a copy of the foregoing document through the CM/ECF system for the United States District Court for the Eastern District of Pennsylvania, which will send a notice of electronic filing to all counsel of record and make it available for viewing and downloading from the CM/ECF system.

/s/ Brad S. Karp
Brad S. Karp