# Exhibit A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE: CHINESE-MANUFACTURED     *     MDL NO. 2047
       DRYWALL PRODUCTS           *
       LIABILITY LITIGATION          *     SECTION: L
                                        *
                                        *     JUDGE FALLON
**This document relates to all cases**     *
                                        *     MAG. JUDGE WILKINSON
* * * * * * * * * * * * * * * * * * * * * * * *

**PRE-TRIAL ORDER NO. 28**
**(Attorney Fee and Cost Reimbursement Guidelines)**

As a result of defective Chinese Drywall being imported into the United States and ensuing litigation, separate Class Action Settlement Agreements were entered into between the Plaintiffs' Steering Committee ("PSC") and: (1) Interior Exterior Building Supply, LP ("InEx") and its insurers (the "InEx Settlement"), approved on February 7, 2013 [Rec. Doc. 16570]; (2) the Banner entities and their insurers (the "Banner Settlement"), approved on February 7, 2013 [Rec. Doc. 16570]; (3) L&W Supply Corporation ("L&W") and USG Corporation (the "L&W Settlement"), approved on February 7, 2013 [Rec. Doc. 16570]; (4) the Knauf Defendants (the "Knauf Settlement"), approved on February 7, 2013 [Rec. Doc. 16570]; (5) the Participating Builders, Suppliers, and Installers ("Participating Defendants"), and their Participating Insurers ("Participating Insurers") (together the "Global Settlement"), approved on February 7, 2013 [Rec. Doc. 16570]; (6) Non-Manufacturing Defendants insured by Nationwide (the "Nationwide Settlement"), approved on July 9, 2013 [Rec. Doc. 16934]; (7) Porter-Blaine Corp. and Venture Supply, Inc., and Certain of Their Insurers (the "Porter-Blaine Settlement"), approved on July 9, 2013 [Rec. Doc. 16934]; (8) Defendants Insured by Builders Mutual Insurance Company (the

1

"Builders Mutual Settlement"), approved on July 9, 2013 [Rec. Doc. 16934]; and (9) Tobin

Trading, Inc., Builders Plaster & Drywall, L.L.C., JMM Drywall Co., LLC and Participating

Insurers (the "Tobin Trading Settlement"), approved on July 9, 2013 [Rec. Doc. 16934].[1]

In order to provide for the orderly and efficient presentation and determination of a

request for the award of attorneys' fees and reimbursement of litigation expenses, settlement

funds from each of the Class Action Settlement Agreements have been deposited into various

Qualified Settlement Funds pursuant to this Court's Orders.

This Order provides direction and establishes guidelines for the efficient presentation to

this Court to allow for the determination of making an award of attorneys' fees and

reimbursement of litigation expenses, and subsequently an allocation from such an award.  The

proceeds potentially available for an award of attorney's fees and reimbursement of litigation

expenses collectively comprise a Settlement Fee and Cost Account.[2]  This Order also establishes

a Fee Committee ("FC").  At a later date, in accordance with Step Five herein, this Court shall

make an allocation from the total funds awarded for attorneys' fees amongst counsel seeking

common benefit fees and counsel fees for the handling of individual claims.[3]

IT IS HEREBY ORDERED THAT:

---

[1]   The Court is mindful that $2.4 million has been made in connection with the Plaintiffs' hours and expenses in the INEX trial [Rec. Doc. 16968].

[2]   The Settlement Fee and Cost Account is comprised of various accounts established at Esquire Bank pursuant to the Orders establishing Qualified Settlement Funds [Rec. Doc. Nos. 17064; 17069; 17072; 17073; 17076; 17078; 17080; 17082; and 17084] and the Court's Order dated April 13, 2011 [Rec. Doc. 8545] establishing a Court Supervised Account for Voluntary Deposit of Funds.

[3]   The guidelines set forth in this Order are addressed specifically to common benefit attorneys' fees, as well as expenses, which shall be evaluated by the FC in a manner consistent with the standards already employed by the accounting firm of Philip A. Garrett, CPA pursuant to PTO No. 9 and PTO No. 9A.

## STEP ONE:  REVIEW OF TIME AND EXPENSES

1.      Counsel and their respective law firm which seeks compensation for common benefit time and reimbursement of expenses shall review their submissions made pursuant to Pre-Trial Order Nos. 9 and 9A which have been submitted to Philip Garrett, CPA. Counsel shall review their own firm's entries posted on the Philip Garrett Case Cost Management System located at www.garrettco-ccms.com and assure that the recorded time and expense records are complete and accurate.  Only time and expense records submitted pursuant to Pre-Trial Order Nos. 9 and 9A shall be considered by the Court.

2.      Any counsel who has submitted time pursuant to Pre-Trial Order Nos. 9 and 9A is encouraged to and may conduct an audit of its firm's time and expense submission on the Philip Garrett Case Cost Management System to assure that their firm's information recorded is accurate and correct.  By no later than February 14, 2014, Counsel may request that Philip Garrett modify certain time or expenses to amend or correct any submission to disallow[4] for any of the following:

   a.      Any submission of professional time or expenses in which the hours of service or expense were not properly submitted or coded in accordance with Pre Trial Order No. 9.

   b.      Any item of expense for which proper receipts or other proof of payment has not been submitted in accordance with Pre Trial Order No. 9.

   c.      Any item of time or expense which was incurred in connection with the litigation of an individual case or group of individual cases involving a Chinese Drywall claimant, unless counsel was authorized by either the Lead Counsel appointed pursuant to Pre-Trial Order No. 8 or Liaison Counsel appointed pursuant to Pre-Trial Order No. 3 to perform such work primarily for the common benefit of the litigants in MDL No. 2047 and the state litigation with which it is coordinated.

---

[4] Counsel are to modify prior entries made in submissions to Philip Garrett pursuant to Pre-Trial Order Nos. 9 and 9A.  The intent is to correct prior submissions but not to increase Counsel's time or expense entry.

d.      Any submission which is not based on time which was contemporaneously recorded at the time the professional services were rendered.

e.      Any item of expense which does not meet the requirement of Pre-Trial Order No. 9.

f.      Any item of time or expense which is not described in sufficient detail to determine the nature and purpose of the service or expense involved.

g.      Any item of professional time which was expended to "review" pleadings, emails, correspondence and similar items unless such "review time" was directly related to and reasonably necessary for the performance of that particular timekeeper's approved assignments from Lead or Liaison Counsel.

h.      Any submission of professional time in which the amount of "review" time is excessive as a whole when judged in reference to the role of the timekeeper and which did not substantially benefit any of the classes certified in the various settlements, or in the performance of assigned common benefit functions on behalf of Chinese Drywall claimants who were subject to consolidated pre-trial proceedings in MDL 2047 and coordinated state court litigation.

i.      Any submission of time and expense which is grossly excessive on its face, when considered as a whole in light of the role(s) of a timekeeper(s) had which did not substantially benefit any of the class actions certified in MDL 2047, or in performance of common benefit assigned functions on behalf of Chinese Drywall litigants who were subject to consolidated pre-trial proceedings in MDL 2047 and the coordinated state court litigation.

j.      Unnecessary and/or excessive items of time and expense for "monitoring" or review of Electronic Court Filings ("ECF") in this MDL and coordinated state court litigation.

k.      Unnecessary and/or excessive items of time and expense for "monitoring" or review of Lexis Nexis File & Serve Xpress in this MDL and coordinated state court litigation.

l.      Any submission of time and expense for services performed on behalf of Chinese Drywall claimants who objected to any of the class action settlements.

m.      Any item of time or expense not reasonably necessary and not part of a bona fide effort in state or federal litigation advance the interest of the various settlements and the common interest of Chinese Drywall claimants who were plaintiffs in the actions subject to consolidated pre-trial proceedings in MDL 2047 and coordinated state court proceedings.

n.   Any time in which more than one timekeeper within one (1) firm reviewed a single document or email without a clear independent reason for review by more than one timekeeper.

o.   Any time within one (1) firm for the purpose of monitoring or reviewing the work of a timekeeper for that firm's internal purposes.

3.   Only time and expenses that are accurate and solely related to approved and assigned common benefit work shall be eligible for consideration of reimbursement for common benefit time and expenses. Counsel shall only include in its claim for consideration of reimbursement for common benefit time and expenses only time or expenses authorized by Pre-Trial Order Nos. 9, 9A or this Order. If any time or expense is denied by Philip Garrett, the counsel shall respond to the Garrett denial by February 25, 2014. The failure to comply and submit accurate and reliable time and expense records may result in sanctions which may include the denial in whole or part of an award for common benefit fees and/or reimbursement of expenses.

**STEP TWO: SUBMISSION OF INITIAL AFFIDAVIT FOR COMPENSATION FOR COMMON BENEFIT TIME AND REIMBURSEMENT OF EXPENSES TO FC AND IDENTIFICATION OF INDIVIDUAL CLAIMANTS RETAINED BY INDIVIDUAL COUNSEL**

4.   By no later than March 7, 2014, any counsel and their respective law firm that seeks compensation for common benefit attorneys' fees and reimbursement of expenses (including any state court counsel and their respective law firm) shall deliver to the FC a completed and signed Initial Affidavit for Compensation for Common Benefit Time and Reimbursement of Expenses ("Initial Affidavit") providing all information required in the form Initial Affidavit attached as Exhibit A. The Initial Affidavit is to be fully completed and signed by a partner of that law firm seeking reimbursement or compensation pursuant to this Order attesting to its truth and accuracy. Only one (1) Initial Affidavit shall be

5

submitted for a particular law firm and there is no need for individual counsel within a law firm to submit separate Initial Affidavits. Further at the time of submitting the Initial Affidavit any counsel that seeks reimbursement or compensation for common benefit time and expense shall attach to its Initial Affidavit, as an exhibit to the Initial Affidavit, a memorandum of no greater than five pages, detailing and describing with particularity the professional services performed and the common benefit contribution provided by the applicant for the benefit of all Chinese Drywall claimants in MDL 2047 or any coordinated state court litigation. Counsel signing the Initial Affidavit shall include in the Initial Affidavit a certification that its submission has been made following a review of the Philip Garrett Case Cost Management System and that the system contains applicant's true and correct time and expense information. The Initial Affidavit shall not be filed with the Court.[5]

5. By no later than February 14, 2014, primary counsel (and their respective law firm) for each individual claimant who seeks compensation or expenses for handling an individual Chinese Drywall claim that is eligible in any of the various settlements shall submit to Philip Garrett at cdw.clients@gmail.com a comprehensive list of all claimants retained by that counsel in an Excel spreadsheet format in the form of Exhibit "C" to this Order. The list submitted by primary counsel shall be comprehensive to include all clients represented by his/her respective law firm, co-counsel and referral counsel. Primary counsel's list shall identify each client, the address of that client's affected property and

---

[5] At the time the FC files with the Court the Joint Fee Petition, the FC shall file all Initial Affidavits received by the FC, under seal, with the Court.

the law firm retained by the particular client, as well as any co-counsel or other attorney or law firm that may be retained to represent each particular client.

### STEP THREE:  FILING OF A JOINT FEE PETITION

6.  The FC shall compile all of the Initial Affidavits which comply with the terms of this Order and which were timely provided to the FC.  By no later than April 8, 2014, the FC shall coordinate with the Plaintiffs' Steering Committee and submit jointly to the Court a consolidated, joint petition ("Joint Fee Petition") for an award of common benefit attorneys' fees and reimbursement of expenses.  The Joint Fee Petition shall be prepared considering the Initial Affidavits received by the FC and shall represent and encompass all timely and complete applications for common benefit fees and reimbursement of expenses.  The filing of the Joint Fee Petition is a matter of administrative convenience for the Court, but shall have substantive significance in any ruling by the Court as to the award of common benefit fee and expense reimbursement allowed from all applicable settlement sources.

7.  To the extent an applicant wants to receive an award of attorneys' fees or reimbursement of expenses for common benefit based on time or expense which is not present in the Joint Fee Petition, such applicant may submit a request to the Court by way of a separate petition provided the applicant has:  (1) complied fully with Pre-Trial Order No. 9, (2) met and conferred in advance of filing a separate fee petition with Philip Garrett and the FC; and (3) seeks common benefit attorneys' fees or reimbursement for items not covered by the Joint Fee Petition.  Any such submission shall include all supporting common benefit time records and expenses with backup invoices and bills.  The Court will independently determine the applicant's entitlement to an award of common benefit

fees and reimbursement of costs. The filing of any fee petition pursuant to this paragraph shall be made by no later than April 28, 2014.

8. To the extent a Class Member in any of the Class Action Settlement Agreements objects to the Joint Fee Petition or any other fee petition, the objector shall file with the Court its objection by April 28, 2014. Any responses to objections shall be filed with the Court by May 23, 2014.

<u>**STEP FOUR:  COMMON BENEFIT REQUEST FOR OTHER CASES**</u>

9. By June 17, 2014, the Plaintiffs' Steering Committee ("PSC") may file a request for common benefit assessment for any Chinese Drywall case or claim not participating as a Class Member or claimant in any of the various Class Action Settlement Agreements. Any request for common benefit assessment shall be made in contemplation of increasing the amount of funds included in the Settlement Fee and Cost Account and available for award by the Court. Any objection to the request for common benefit assessment shall be filed with the Court by July 3, 2014 and any responses to objections shall be filed with the Court by July 18, 2014.

<u>**STEP FIVE:  ESTABLISHMENT OF<br>COMMON BENEFIT AND INDIVIDUAL FEES**</u>

10. After the filing of the Joint Fee Petition and any other fee petition, if any, the Court shall set the amount of the award of attorneys' fees and expenses to be compensated and reimbursed and at the appropriate time, determine the total amount of the common benefit fund and the amount of funds for individual counsel for claimants. The Court shall also address post-settlement and administrative matters for counsel performing work

8

relating to the administering of settlements.[6]  After the amount of the award is determined, the Court shall establish the allocation between the common benefit fee and individual counsels' fee.

**STEP SIX:  COMMON BENEFIT FEE ALLOCATION**

11.     In order to assist the Court, the FC shall recommend an allocation of the amounts awarded by the Court to compensate counsel for common benefit fees and reimbursement of reasonable expenses.  In making the recommendation, the FC shall review the time records and expense reports submitted to Philip Garrett pursuant to Pre Trial Order Nos. 9 and 9A, as well as each of the Initial Affidavits and take into consideration the time and common benefit work of all counsel in the MDL and coordinated state actions. The FC may take testimony if necessary.

12.     The FC shall evaluate common benefit counsel's contributions, using objective measures and the committee's subjective understanding of the relevant contributions of counsel toward generating the various Settlement Funds in accordance with established protocols, and make a recommendation to the Court for consideration as to each common benefit counsel's request.[7]

13.     The FC's implementation of this Pre-Trial Order and its recommendation to the Court regarding allocation of attorneys' fees, should be governed and guided by this comprehensive statement of general principles.   The over-arching guideline that the FC

---

[6]     See Section 14.8.1 of the Settlement Agreement regarding claims against the Knauf Defendants in MDL No. 2047 as amended in the Fourth Amendment [Rec. Doc. 17165-1].

[7]  This Order shall also apply to the funds to be allocated that are subject to the Court's Order dated April 13, 2011 [Rec. Doc. 8545] establishing a Court Supervised Account for Voluntary Deposit of Funds to compensate and reimburse common benefit counsel.

is to consider is the relative contribution of each common benefit attorney to the outcome of the litigation.

14. The FC will implement additional processes to provide appropriate deliberative fairness to those participating attorneys. The process outlined below will afford participating attorneys opportunities to advocate their positions in a variety of ways in addition to providing time record submissions. Under existing fee jurisprudence, the FC will look to general fee jurisprudence to identify the factors that should be applied in making appropriate allocations. The *Johnson* factors are applicable to this litigation and should be considered in addition to other matters considered by the courts to evaluate fee allocations. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974); *In re High Sulfur Gulf Content Gasoline Prods. Liab. Lit.,* 517 F.3d 220, 226 n.6 (5th Cir. 2008); *In re: Vioxx Products Liability Litigation*, 802 F.Supp.2d 740 (E.D. La. 2011); and *Union Asset Mgmt Holding AG v. Dell, Inc.,* 669 F.3d 632, 644 (5th Cir. 2012). As such, the FC should determine and weigh the following criteria: (1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or the circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The "undesirability" of the case; (11) The nature and length of the professional relationship with the client; and (12) Awards in similar cases.[8] Numerous

---

[8] *See In re High Sulfur Gulf Content Gasoline Prods. Liab. Lit.,* 517 F.3d at 226 Fn6 citing *Johnson, supra.*

factors are pertinent for consideration to derive the appropriate allocation of fees among

participating attorneys.  Other special considerations include:

a.      Participating attorneys will not be compensated for work performed without authorization by Lead and/or Liaison Counsel or appropriate state court actions.

b.      Monitoring and review work not related to ongoing assignments is not compensable.

c.      Where work was performed by contract lawyers, those counsel are required to disclose the salary/wage of such contract lawyers to avoid paying windfall profits to such counsel.

15.      In addition to the traditional *Johnson* factors, this Court previously provided guidelines to a Fee Allocation Committee in *In re:  Vioxx Products Liability Litigation*, 802 F.Supp.2d 740, 764-765 (E.D. La. 2011), which directed that Fee Allocation Committee to consider certain aspects of the litigation in order to weigh reported hours of common benefit attorneys in degrees of importance to the relief achieved.   Similar additional considerations shall be employed here.  Therefore, on or before March 28, 2014, any attorney or law firm that seeks an award for common benefit fees and reimbursement of costs shall submit to the FC a Second Affidavit in Connection With Request for Allocation of Common Benefit Fee and Cost Award ("Second Affidavit") (not to exceed 20 pages) describing those aspects of counsels' work which they believe best describes their firm's common benefit contributions.  A form of the Second Affidavit is attached hereto as Exhibit "B," which is to be completed by each applicant law firm.  All Second Affidavits shall be kept confidential and only shared with the FC or the Court's designees (*e.g.* Phil Garrett).  The Second Affidavit shall not be filed with the Court.[9]  In preparing

---

[9]   At the time the FC files with the Court the Joint Fee Petition, the FC shall file all Second Affidavits received by the FC, under seal, with the Court.

such an affidavit, the following factors should be addressed with brevity and specificity

individually within the affidavit:

a.  The extent to which each common benefit firm made a substantial contribution to the outcome of the litigation;

b.  The consistency quantum, duration, and intensity of each firm's commitment to the litigation;

c.  The level of partner participation by each firm;

d.  Membership and leadership on the Plaintiffs' Steering Committee ("PSC");

e.  Participation and leadership in discovery (motions, depositions);

f.  Participation and leadership in law and briefing matters;

g.  Participation and leadership in science and experts;

h.  Participation and leadership in document review;

i.  Activities surrounding trials of individual Chinese Drywall claimants, including bellwether trials and non-MDL trials that impacted proceedings on a common benefit level (identify the claimant, docket number, the venue and outcome of each trial);

j.  Participation and leadership in settlement negotiations, drafting of settlement documentation and closing papers, and administration of settlement agreements (excluding individual representations);

k.  The jurisdiction in which non-MDL common benefit work occurred;

l.  Leadership positions on regular committees engaged in common benefit work;

m.  Participation in ongoing activities, such as the FC, Settlement Claims Administration, Court Appointed Committees (e.g. Settlement Allocation Committees, Claims Administration Committee, FC, etc.), that are intended to provide common benefits;

n.    Whether counsel was involved in the Chinese Drywall litigation prior to the JPMDL, and the time and expense incurred during such time that was for common benefit.

o.    Whether counsel made significant contributions to the funding of the litigation;

p.    Those PSC members or committee members whose commitment to the litigation did not ebb; and

q.    A certification by a partner in the firm seeking to recover common benefit fees and costs setting forth all sources and amounts of any other previous payments received from a Chinese Drywall claimant or other sources (broken down to identify amounts paid for fees and amounts paid for costs); and

r.    Any other relevant factors.

16.    On or before August 15, 2014, the FC, or a three-member panel of the Committee, shall begin conducting at least one (1) meeting (or as many as necessary) during which any participating attorney or law firm which has submitted a Second Affidavit may at his/her discretion and on its own volition separately appear and present the reasons, grounds and explanations for entitlement to common benefit fees and reimbursement of expenses. Meetings will be held in New Orleans, Louisiana, unless for good cause shown. The presentation should not last over 30 minutes (although this time may be extended at the discretion of the FC). Counsel should be prepared to respond to any questions or concerns raised by the FC during his/her presentation. Each presentation shall be recorded by a court reporter.

17.    On or before September 15, 2014, the FC may request that any participating attorney or law firm who has submitted a Second Affidavit appear separately before the Committee, or a three-member panel of the Committee, to answer questions or concerns addressing the reasons, grounds and explanations of that participating attorney's entitlement to

common benefit fees and reimbursement of expenses.  Each requested appearance shall be recorded by a court reporter.

18.     On or before October 15, 2014, the FC shall make separate recommendations of fee allocations and for cost reimbursement for each participating attorney or law firm which has submitted a Second Affidavit.  The FC shall provide to each participating attorney or law firm notice of the Committee's Recommendation as it pertains to the participating attorney or law firm.

19.     In the event a participating attorney or law firm objects to the Committee's Recommendation, a detailed written objection setting forth with specificity the basis of the objection shall be submitted to the FC within 14 days for consideration by the full FC. Thereafter, the FC shall make its final recommendation to the Court.

20.     In making the final recommendation to the Court, the FC shall exercise its discretion, as previously ordered by the Court, in evaluating which work and expenses furthered the common benefit of the litigation.  The above guidelines provide direction, but do not create entitlements and do not override the independent judgment and discretion of the FC and the Court.

**MISCELLANEOUS**

21.     The Court hereby appoints the FC to be responsible, together with the PSC, for submitting to the Court the Joint Fee Petition.   Further, the Court appoints the FC to make a recommendation for an allocation of awards from various funds that collectively comprise the Settlement Fee and Cost Account.  The FC shall be comprised of Arnold Levin (as the Chair), Russ M. Herman (as the Co-Chair/Secretary), Dawn M. Barrios,

Gerald E. Meunier, Michael J. Ryan, Christopher A. Seeger and Richard J. Serpe[10]. The Secretary shall maintain the books and records of the FC. Any notices or submissions made to the FC pursuant to this Pre-Trial Order or any application for fees for common benefit and reimbursement of expenses shall be made to Plaintiffs' Liaison Counsel, Russ M. Herman, c/o Herman, Herman & Katz, LLC, 820 O'Keefe Avenue, New Orleans, LA 70113; PH: (504) 581-4892; FAX: (504) 561-6024; E-Mail: rherman@hhklawfirm.com AND to Plaintiffs' Lead Counsel, Arnold Levin, c/o Levin, Fishbein, Sedran & Berman, 510 Walnut Street, Suite 500, Philadelphia, PA 19106; PH: (215) 592-1500; FAX: (215) 592-4663; E-Mail: alevin@lfsblaw.com.

22. If at any time the FC makes a filing with the Court that includes any Initial or Second Affidavits, such filing shall not be a violation of the confidentiality provision contained in this Order provided such filing is made under seal with the Court.

23. The Court will enter a separate order setting forth procedures for compensation of attorney fees for individual counsel in connection with their individual retainer agreements.

24. It is understood that time is of the essence so that distributions can be expedited. A Court representative shall participate in FC meetings as needed and shall assist in accordance with Pre-Trial Orders 9 and 9A.

25. This Court retains all authority and jurisdiction as to the final decisions of awards for common benefit fees, individual attorneys' fees and reimbursement of expenses. The

---

[10] These individuals have been involved since the beginning of the Chinese Drywall litigation and have performed significant roles in either or both the MDL and State Court litigation and are familiar with the work performed by common benefit counsel in all Chinese Drywall matters.

Court will consider any recommendations made by the FC and post the same on its website and invite comments or objections and institute any additional procedures it deems necessary, including the appointment of a Special Master to further consider these matters.

New Orleans, Louisiana, this 10th day of January, 2014

_____

ELDON E. FALLON
UNITED STATES DISTRICT JUDGE