**EXHIBIT A**

Clerk of the Distract Court/NFL Concussion Settlement
U. S. Distract Court for the Eastern District of Pennsylvania
United States Courthouse
601 Market St.
Philadelphia, PA 19106-1797

| | |
|---|---|
| In regards to: | National Football League Players Concussion Litigation, No. 2:12-md-02323 |
| Representative Claimant: | Susan Owens, Widow, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ |
| For Retired NFL Football Player: | R. C. "Alley Oop" Owens, aka, Raleigh Clement Owens |
| Relationship: | R. C. Owens was my husband for 25 years. We were married ▇▇▇▇▇▇▇▇ until his death on ▇▇▇▇▇▇ from complications associated with Alzheimer's disease. |
| Settlement Objections: | **Monetary Award Table by Age of Diagnosis** |

1.) When we first became aware of this lawsuit, a preliminary draft settlement grid for monetary awards was publicized. This draft grid showed the maximum award available would go to the appropriate family members of each of the qualifying diagnosis who had to endure the ultimate hardship – wrongful loss from death.

I understand and agree that a large amount of money is needed for treatment and sustainability for retired players who are suffering right now. I intimately understand the suffering endured by retired players because I lived it. I had to live it, all the way, through my marriage until my husband's death & continuing throughout this lawsuit without any help from the NFL.

I intimately know of the pain, responsibility and exacerbation and care taking of my husband who I thought would take care of me. Instead, my husband turned into a stranger who seemed to hate me for having to take care of him.

I intimately know of the disappointment, fear and financial doom associated with this disease. R. C. was fortunate to work as an Administrative Assistant to Bill Walsh, S.F. 49ers, for 23 years after his playing career. He loved his job and was so appreciated by the 49ers staff, he thought and hoped he would continue his employment well into his 80's, as his mentor, Bill Walsh had planned. At the end of the 2000 Football season, when R. C. was 66 years old, Bill Walsh had to ask R. C. to retire from the job he loved. He told me that R.C. could no longer remember vital parts of his job even though, for several years, he constantly wrote every conversation on his yellow note pad he always kept with him. After retirement, R.C. applied for disability retirement benefits 3 times for various physical disabilities and the Alzheimer's disease that was caused from his job as a football player. (Btw: in his very best year as a player he was paid $30,000.00.) He was denied each time because he didn't remember to apply in the short window of time that was open for him. (This left him with a $1,000.00 a month pension and now leaves me with an $800.00 pension.) Since R. C. was an expert lecturer throughout his career, he tried to continue with his speaking engagements and then couldn't understand why he was not asked back after

one appearance.  When R. C. was asked to retire, I retired with him in 2000.  To increase our income, I started 2 very successful small businesses which were only a mile away from where we lived and I was able to drive home to check on R. C. throughout the day.  It was necessary to abandon both businesses when it became apparent that R. C. was not capable of making everyday judgment calls to keep himself safe at home during my work days. (Ex: leaving home and getting lost, inviting strangers on the street into our home, cutting up raw meet for the dogs to eat, making upsetting telephone calls to family and friends, etc.)  Regretfully, in 2005, I had no choice but to give up my business and devote all of my resources to R. C.'s health, personal and financial care. With no financial or emotional help we were forced to file for bankruptcy and in 2011, our home we had lived in for 13 years was foreclosed.  When R. C. had to retire his Health & life Insurance were no longer available.

I intimately know of my own depression & overtaxed physical and mental strength of trying to help, care for, make excuses for and love a man who had turned into an unrecognizable stranger.  R. C. was adamant that we never discussed any of his physical, mental disabilities and especially not to ever mention his diagnosis of Alzheimer's disease with anyone.  Of course this left no emotional support for either one of us.

I intimately know of the overpowering heartache of watching someone you loved lose his mind and dignity to the point of no return.  Shortly before he died he spent months in the hospital for a severe spinal infection.  The images that the physician shared with me showed the bottom of his spine smashed up like tangled spaghetti.  Throughout everything he could still repeat, and often did, his entire football story.  One of those that come to mind, now, is the story when he or one of his beloved teammates would "get their bell rung" and knock out unconscious several times during a game.  The trainer would ask three questions and they were allowed to miss one to get back into the game.  The three questions were; what team do you play for? what state are you in? and what is your name?  If he couldn't remember his name he still would be considered fit enough to continue back in game for play.

A couple of weeks before he died R. C. seemed to be in a rare continued lucid manner of speech and mind, even though he looked so little, crumbled up but happy in his wheel chair.  I asked him, "knowing, now, how your life after foot ball has turned out, if you had the chance to do it all over – would you still play football?  He shook his head and said, "No".

2.  Monetary awards are reduced for players who are 45 years or older when diagnosed.  My objection for this is based on the many books, articles and videos that consumed my life while looking for answers when my own husband was afflicted with this disease.  From my researches I learned that early onset Alzheimer's disease, ages 40 – 60 years of age is predominately caused from a genetic component that is inherited.  Although Alzheimer's disease is difficult to diagnose, early onset diagnosis is relatively easy with available tests. Early onset Alzheimer's disease is the only type of Alzheimer's disease where causation can be at least disproved.

Literature proves that Alzheimer's disease at the ages 60 -80 can be caused from trauma and/or impact and those 80 years of age and up are considered causation from old age. (Please see attached publications from the Alzheimer's Society and the Mayo Clinic.)

http://www.alzheimers.org.uk/site/scripts/documents_info.php?documentID=164

http://www.mayoclinic.org/diseases-conditions/alzheimers-disease/in-depth/alzheimers/art-20048356?pg=1

Retired Football Players usually have great difficulties admitting to any type of injury or illness especially mental.  They tend to live their retired lives in denial, knowing that they could probably "suit up" any weekend and be ready to play even if they, at times, can't remember their names.  Consequently, they do not want to know nor seek professional help for diagnosis until urgent life crises encourages them to reveal their secret symptoms.  In R. C.'s life it took the fear of getting lost near his home several times and having someone, other than me, find him before he would agree to see a Neurologist.  Alzheimer's disease can begin and last through a 20 year span of time.  Getting lost is one of the later stages of Alzheimer's Disease yet that is the date that he allowed to be diagnosed because of his, "never say you can't go" football mentality.  Sadly, this was still the creed that retired football players lived by in 2006 before the awareness of playing the game of football that leads to concussions cause traumatic brain injuries.

3. My first request for the final settlement is for the NFL to recognize, with a separate group monetary award, those retired football players that lost their lives without knowing that this was their destiny from their jobs as football players.  Most did not play the game of football for financial gain rather they just played for the love of a sport they knew could bring with it many broken bones but never thought it would cause them to lose their minds.  These retired players had to bear all of their hardships & losses without any help from the NFL yet were instrumental in building this tremendous franchise into what it is today.  They, rightfully, should have their own special monetary award category.

   At the very least, the monetary award, especially for a disease that no one, most predominately ex-football players, would ever want to know they have, a disease that is eating away at their brain, should not be based on the day they had no other choice but to have a physician tell them that retirement from football didn't leave them with only broken bodies but also broken minds and that they soon will, additionally, lose their total sense of self.

   At the very least, the monetary award for a deceased player should not be (for Alzheimer's disease) determined by the date of Diagnosis from a neurologist but rather, at least, documented proof of the first day of knowledge. In R. C.'s case, neither was the first day of the disease wracking havoc in our lives.  Yet the date of diagnosis by a Neurologist is 2006 and his age was 72 – the documented date of proof of knowledge is 2000 when he was asked to retire from the 49ers at the age of 66.