# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | Civil Action No. 2:14-cv-00029-AB |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

**MEMORANDUM OF LAW IN REPLY TO CLASS COUNSEL'S AND NFL'S OPPOSITION TO SEAN MOREY, ALAN FANECA, BEN HAMILTON, ROBERT ROYAL, RODERICK CARTWRIGHT, JEFF ROHRER, AND SEAN CONSIDINE'S MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY**

Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick Cartwright, Jeff Rohrer, and Sean Considine (collectively, "Movants") – all members of the settlement class – request leave to conduct discovery in preparation for this Court's November 19, 2014 fairness hearing. The purpose of that hearing is to determine whether the proposed settlement is fair, adequate, and reasonable. Class Counsel (Dkt. No. 6183) and the NFL (Dkt. No. 6185) have filed oppositions, in which both parties apply the wrong standards of law and misconstrue Movants' proposed discovery requests. The motion should be granted.

**ARGUMENT**

The NFL and Class Counsel state that Movants are "improperly seeking premature, unnecessary and overbroad discovery." NFL Opp. 1; *see* Class Counsel Opp. 1-2. But they offer no support for that sweeping proposition. They argue that Movants cannot seek discovery before objecting to the Settlement. But Movants **have** objected. They contend that Movants' discovery requests are overbroad. The requests are, however, narrowly tailored to assist class members – and this Court – in determining whether the Settlement is fair. They state that discovery into settlement negotiations is categorically barred. But precedent and common sense make clear that class members should be permitted discovery regarding those negotiations where, as here, Class Counsel and the NFL gain so much from the Settlement but class members gain so little.

**I.     Movants Have Standing To Seek Discovery**

The NFL's and Class Counsel's primary argument against Movants' limited discovery request is that only objectors "are entitled to seek discovery in advance of the fairness hearing." NFL Opp. 9; *see also* Class Counsel Opp. 2 ("[T]here is no reason Movants could not have filed their objections already, and thus availed themselves of the standing to seek discovery."). That argument is now moot. On October 6, 2014, Movants filed a detailed Objection to the Settlement. *See* Dkt. No. 6201 ("Objection"). That Objection explains how three intra-class conflicts – the failure to compensate current and future cases of CTE, the 75% offsets for a single instance of non-football-related traumatic brain injury or stroke, and the failure to credit seasons played in NFL Europe, *id.* at 21-36 – demonstrate that the Representative Plaintiffs did not "fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4). The Objection also addressed how the short form notice and long form notice both contain numerous false and misleading statements that preclude class members from understanding even the basic terms of the Settlement. Objection at 37-53. And the Objection provided a litany of reasons

2

why the settlement is not "fair, reasonable, and adequate" under Rule 23(e) – including the complete absence of discovery. *Id.* at 54-86.  Because Movants have filed an objection, there can be no doubt that they have standing to seek discovery. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (vacating approval of settlement and remanding to allow objector to conduct discovery); *Newberg on Class Actions* § 13:32 (5th ed.) (section entitled "Discovery by objectors").

## II. The Court Should Grant Movants' Motion for Limited Discovery

### A. Limited Discovery Is Necessary To Assess the Fairness of the Settlement

Longstanding precedent establishes that objectors should be "afforded an adequate opportunity to test by discovery the strengths and weaknesses of the proposed settlement." *Girsh*, 521 F.2d at 157.[1]  Discovery should be permitted when "it will ultimately assist the court in determining the fairness of the settlement." *Newberg on Class Actions* § 13:32 (5th ed.).  The need for discovery here is acute.  As was the case in *Community Bank* – where the Third Circuit reversed the approval of a class settlement and remanded for further development of the record – "no formal discovery was conducted whatsoever." *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 307 (3d Cir. 2005).[2]  Movants have raised serious questions about the fairness of the settlement

---

[1] The NFL argues that Objectors are taking inconsistent positions by noting on the one hand that the Settlement is defective on its face and also seeking discovery on the other. NFL Opp. 7. But there is nothing inconsistent about those two positions. The Settlement on its face cannot satisfy Rule 23(a)(4)'s adequacy requirement because of the three intra-class conflicts addressed above. Discovery will reinforce that point. Discovery will also allow class members to evaluate whether the settlement is "fair, reasonable, and adequate" under Rule 23(e).

[2] Class Counsel and the NFL cite *Community Bank* for the proposition that absent class members do not have an "absolute right" to discovery. Class Counsel Opp. 12; NFL Opp. 12. The Third Circuit in *Community Bank* did note that objectors have no "absolute right" to discovery. 418 F.3d at 316. *Community Bank* also states, however, that "discovery may be appropriate if lead counsel **has not conducted adequate discovery** or if the discovery conducted by lead counsel is not made available to objectors." *Id.* (emphasis added). Both of those conditions have been met here. Class Counsel have not only failed to conduct "adequate discovery"; they have failed to

3

and the adequacy of the notice given to the class. Discovery would allow inquiry into those issues. Moreover, the Complaint alleges fraud and negligent concealment – the best evidence of which is likely in the NFL's hands. Objection at 55.

The proposed discovery requests are narrowly tailored to yield that information and aid the absent class members in determining whether the proposed settlement is fair and adequate. Dkt. No. 6169, Ex. A. Specifically:

- Document Request Nos. 1, 2, 4, and 6 are necessary to understand whether the conflict between class members who have or are at risk of developing CTE, which will not be compensated under the proposed settlement, and those at risk for diseases that will be compensated, like ALS, resulted in a bargaining-away of the interests of the class members in the former category. Deposition Topic Nos. 3, 4, 5, and 6 are relevant to the same important consideration.

- Document Request No. 3 is relevant to the question of whether class members received notice of the proposed settlement that was adequate to inform them of the terms of the settlement and allow them to make a reasoned decision as to whether to stay in the settlement or opt out.

- Document Request Nos. 5, 7, 8, and 9 are relevant to evaluating whether the proposed settlement is fair in light of the claims and defenses of the parties. Deposition Topic Nos. 1 and 2 are relevant to the same issue.

- Interrogatory Nos. 1 and 2 are crucial to determining whether the representative plaintiffs are representative of the class. Each of the interrogatories are relevant to determining whether the proposed settlement bargains away the rights of certain members of the class, specifically those at risk for developing CTE, those who suffer a stroke before a qualifying diagnosis, or those who played in NFL Europe, to the benefit of other members of the class.

Both Class Counsel and the NFL nonetheless oppose those limited requests. Their arguments fail. For example, they argue that the discovery requests are overly broad, unrelated

---

conduct *any discovery*. Because Class Counsel never conducted any discovery, they never shared any discovery with absent class members. The NFL also attempts to distinguish *Community Bank* by stating that the Third Circuit in that case determined that the failure to conduct discovery was offset by counsel having previously litigated similar suits. NFL Opp. 14. That distinction has no bearing on this case because the litigation at issue here is unprecedented and involves a body of scientific facts that have not yet been explored through discovery in other litigation. *Community Bank* supports Movants, not Class Counsel and the NFL.

4

to Movants' concerns about the settlement, and seek to turn the fairness hearing into a "mini trial" or "full merits review."  See NFL Opp. 19-20; Class Counsel Opp. 13, 21-22.  Class Counsel cites *Union Asset Management Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012), for the proposition that "a fairness hearing is not a full trial proceeding . . . [a] court does not need to open to question and debate every provision of the proposed compromise."  *Id*. at 641-42 (quotations marks omitted).  The NFL similarly asserts that "the weight of the authority in this Circuit cautions against a full merits review in favor of a determination of the 'burden' plaintiffs would face in establishing liability and damages at trial."  NFL Opp. 20 (citing *In re Prudential Ins. Co. Am. Sales Litig.*, 148 F.3d 283 (3d Cir. 1998)).  But Movants are not questioning every provision of the Settlement or asking for a full merits review.  Movants merely challenge specific provisions of the Settlement that bear on its ultimate fairness to the class.  Each of Movants' proposed discovery requests is relevant to a specific issue with the Settlement that Movants have raised in their objection.

The NFL further asserts that discovery is unnecessary because it, together with Class Counsel, will present sufficient information at the fairness hearing to allow the Court to make an informed decision about the adequacy of the Settlement.  See NFL Opp. 14-15.  But that argument ignores the Third Circuit's admonition in *Girsh* that objectors "are in an adversary relationship with both plaintiffs and defendants and [are] entitled to at least a reasonable opportunity to discovery against both."  521 F.2d at 157.  As the Seventh Circuit recently noted in *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014), a class-action settlement lacks the "clash of adversaries to generate the information the judge needs to decide the case."  *Id.* at 720.  That is precisely why, under *Girsh*, objectors are "afforded an . . . opportunity to test **by discovery** the

5

strengths and weaknesses of the proposed settlement." 521 F.2d at 157 (emphasis added). The NFL's position altogether ignores that fundamental principle.

### B. Discovery into the Settlement Negotiations Is Permissible

Class Counsel and the NFL both argue that there is a categorical bar to discovery into settlement negotiations absent "an independent showing of collusion between the settling parties that leads the court to conclude that additional information regarding the settlement negotiations is relevant to the court's evaluation of the settlement's fairness." Class Counsel Opp. 6; NFL Opp. 16-18. That argument fails for two reasons. **First**, Class Counsel and the NFL misstate the law. **Second**, Movants have alleged conduct that demonstrates a risk of collusion by the settling parties. Limited discovery into the negotiations is proper.

#### 1. Collusion Is Not a Prerequisite for Discovery Related to Settlement Negotiations

An absent class member does not have to prove collusion before obtaining discovery related to settlement negotiations. Even Class Counsel's own support states that discovery into settlement negotiations is permitted where an objector makes "a **preliminary showing** of collusion *or other improper behavior*." *Manual for Complex Litigation* § 21.643 (4th ed.) (emphasis added). As that catch-all category demonstrates, courts do not require a showing of collusion before allowing discovery into settlement negotiations. *See In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 (7th Cir. 1979) (district court's "refusal to permit discovery or examination of the negotiations constituted an abuse of discretion," even without allegations of collusion, where the court found it "irregular" that certain parties possibly entered into negotiations without leave of the court).

Even in the absence of a preliminary showing of collusion or other improper behavior, discovery into settlement negotiations is warranted where the adequacy and fairness of the

6

settlement are called into question.  In *UAW v. General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007), for example, the court ruled that objectors were not entitled to "discovery about the settlement negotiations" because a "district court need grant discovery only ***if the objectors make a colorable claim that the settlement should not be approved***."  *Id.* at 637 (emphasis added).  The court said nothing about collusion.

Here, there is much more than a "colorable claim" that the settlement should not be approved.  Movants have explained in great detail how the Settlement bargains away the rights of a significant portion of the class without adequate representation and is otherwise unfair.  *See* Objection at 21-86.  Discovery is warranted on this basis alone.

### 2. Even if Collusion Were a Prerequisite, That Standard Has Been Met Here

Several factors indicate that Class Counsel and the NFL entered into an agreement that benefits themselves at the expense of the class.  Most obviously, the NFL and Class Counsel agreed to a "clear sailing" clause whereby the NFL would not object to Class Counsel's ***$112.5 million attorneys' fee award***.  Settlement § 21.1.  As Judge Posner has recently explained:

> Because it's in the defendant's interest to contest that request in order to reduce the overall cost of the settlement, the defendant won't agree to a clear-sailing clause without compensation—namely a reduction in the part of the settlement that goes to the class members, as that is the only reduction class counsel are likely to consider. ***The existence of such clauses thus illustrates the danger of collusion in class actions between class counsel and the defendant, to the detriment of the class members.***

*Redman v. RadioShack Corp.*, __ F.3d __, 2014 WL 4654477, at *13 (7th Cir. Sept. 19, 2014) (emphasis added).  These clauses must be "subjected to intense critical scrutiny."  *Id.*  Indeed, the "'very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class.'"  *In re Bluetooth Headset Prods. Liab. Litig.*,

7

654 F.3d 935, 948 (9th Cir. 2011) (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991)). As a result, clear sailing agreements are "disfavored." *Id.* at 949.

There is also no question that Class Counsel bargained away substantial rights of absent class members. Co-Lead Class Counsel have proclaimed that "CTE is believed to be the most serious and harmful disease that results from NFL and concussions."[3] "Thousands of football players, many of whom are thought to have suffered more than one hundred mild traumatic brain injuries, are dealing with horrible and debilitating symptoms."[4] Yet, a player who dies of CTE after July 7, 2014 gets no monetary award. Other conflicts and inadequacies abound. *See* Objection at 21-36. The Settlement here smacks of a "sell-out of an otherwise strong case." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995)[5]; *see also Eubank*, 753 F.3d at 720 (class counsel have "the incentive . . . , in complicity

---

[3] Co-Lead Class Counsel Seeger Weiss used to explain on its website the prevalence of CTE among current and future NFL players:

> Frequent brain trauma or multiple football concussions . . . has shown to cause serious mental health problems. ***Thousands of football players, many of whom are thought to have suffered more than one hundred mild traumatic brain injuries, are dealing with horrible and debilitating symptoms***.
>
> Multiple medical studies have found direct correlation between football concussions and suffering from symptoms of chronic traumatic encephalopathy, also known as CTE. ***CTE is believed to be the most serious and harmful disease that results from NFL and concussions.*** CTE is a progressive degenerative disease that causes damage to the brain tissue and the accumulation of Tau Proteins.

*Up-To-Date Information on NFL Concussions*, Seeger Weiss LLP, (Sept. 9, 2014), http://www.seegerweiss.com/football-concussions/#ixzz3CByVHxui (emphasis added) (*See* Dkt. No. 6201, Exhibit 1). Seeger Weiss quickly removed that language from its website following oral argument in the Third Circuit on September 10, 2014, after the inadequate representation and failure to compensate CTE, as well as this language on their website, was raised.

[4] *Id.*

[5] The NFL tries to distinguish Movants' reliance on *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768 (3d Cir. 1995), by noting that, in that case, "Class Counsel had inadequately represented the objectors' interests due not only to their failure to conduct discovery . . . [but also] the conspicuous evidence of intra-class conflict, [and] the fact

with the defendant's counsel, to sell out the class by agreeing with the defendant to recommend that the judge approve a settlement involving a meager recovery for the class but generous compensation for the lawyers").

### 3. Discovery into Settlement Negotiations Will Be Circumscribed

Only a small portion of the proposed discovery inquires into settlement negotiations. Dkt. No. 6169, Ex. A. Specifically, only Document Requests No. 1 and 2 directly pertain to information discussed in settlement negotiations. *Id.* at 3. The other document requests all address the fairness and adequacy of the settlement, as well as the adequacy of the class notice. For example, Document Request No. 6 requests "[a]ll documents regarding projections of the incidence of CTE, Alzheimer's Disease, Parkinson's Disease, or ALS in retired NFL players, including any documents consulted or relied upon in determining responses to Interrogatory Nos. 1 and 2 below." *Id.* It is conceivable that such projections may have been exchanged by the parties during settlement negotiations, or may have informed the parties' positions during settlement negotiations. However, that does not mean that their discovery impermissibly delves into the settlement negotiations. Rather, these documents establish the fairness of the settlement. The Court cannot evaluate the fairness of the settlement without information concerning, for example, the relative projected incidence of CTE, which is not covered by the settlement, versus ALS, which is covered.

None of the proposed Interrogatories, moreover, impermissibly seeks to delve into the settlement negotiations. Class Counsel incorrectly describe Interrogatory Nos. 3-6 as seeking to delve into settlement negotiations. Dkt. No. 6183, Ex. A at 4-5. But the answers to these

---

that the settlement . . . arguably did not maximize the class members' interests." NFL Opp. 13 n.3 (quotation marks omitted). Movants have raised ***precisely*** these criticisms in their Objection. *See* Objection 21-36. Far from supporting the NFL, *General Motors* reinforces Movants' arguments about why discovery is necessary here.

questions all go to the fairness of the settlement, not whether there was anything improper about the settlement negotiations themselves. For example, Interrogatory No. 3, which asks why cases of death with CTE before July 7, 2014 are compensated but not cases of death with CTE after that date, requests an answer to one of the essential questions of the settlement: Why does one of the largest potential sources of liability in the action not merit compensation? This question has nothing to do with the propriety of the settlement negotiations, but its answer is crucially necessary to evaluate whether the settlement is fair. Finally, while Deposition Topic No. 3 does seek to delve into the settlement discussions – which are not privileged – this is justified to explore the roots of the intra-class conflicts and the timing of the agreement to the $112 million attorneys' fee.[6]

## CONCLUSION

The Court should grant Movants leave to conduct limited discovery and order the Settling Parties to respond to the discovery requests, interrogatories, and depositions attached as Exhibit A to Dkt. No. 6169. As we have stated since filing our motion seeking discovery, Movants are prepared to meet and confer with Class Counsel and the NFL forthwith to address any issues they may have concerning the discovery. *See* Dkt. No. 6169, at 13; Letter from Thomas Wiegand to Christopher Seeger, Sol Weiss, and Brad Karp (Sept. 22, 2014) (offering to meet and confer) (attached as Exhibit 1).

---

[6] Any concerns about attorney-client privilege or work product immunity can be mitigated by the creation of a privilege log. The mere possibility that some documents might be included on a privilege log does not justify barring discovery altogether.

Dated: October 13, 2014

William T. Hangley
Michele D. Hangley
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square
18th & Cherry Streets
27th Floor
Philadelphia, PA 19103
(215) 496-7001 (telephone)
(215) 568-0300 (facsimile)
whangley@hangley.com
mdh@hangley.com

/s/ Steven F. Molo

Steven F. Molo
Thomas J. Wiegand
Kaitlin R. O'Donnell
MOLOLAMKEN LLP
540 Madison Ave.
New York, NY 10022
(212) 607-8160 (telephone)
(212) 607-8161 (facsimile)
smolo@mololamken.com
twiegand@mololamken.com
kodonnell@mololamken.com

Martin V. Totaro
Eric R. Nitz
MOLOLAMKEN LLP
600 New Hampshire Ave., N.W.
Washington, DC 20037
(202) 556-2000 (telephone)
(202) 556-2001 (facsimile)
mtotaro@mololamken.com
enitz@mololamken.com

Linda S. Mullenix
2305 Barton Creek Blvd., Unit 2
Austin, TX 78735
(512) 263-9330 (telephone)
lmullenix@hotmail.com

*Attorneys for Movants*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | Civil Action No. 2:14-cv-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## DECLARATION OF MARTIN V. TOTARO IN SUPPORT OF
## MOTION OF SEAN MOREY, ALAN FANECA, BEN HAMILTON, ROBERT ROYAL, RODERICK CARTWRIGHT, JEFF ROHRER, AND SEAN CONSIDINE FOR LEAVE TO FILE A REPLY IN SUPPORT OF MDL DOCKET NO. 6169
## (MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY)

Martin V. Totaro declares, pursuant to 28 U.S.C. § 1746:

1. I am a partner at MoloLamken LLP, counsel for Movants Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick Cartwright, Jeff Rohrer, and Sean Considine.

2. Attached as Exhibit 1 is a true and correct copy of Letter from Thomas Wiegand to Christopher Seeger, Sol Weiss, and Brad Karp (Sept. 22, 2014).

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 13, 2014

                                                                           */s/ Martin V. Totaro*

                                                                     Martin V. Totaro



Thomas J. Wiegand
540 Madison Avenue
New York, NY 10022
T: 212.607.8180
F: 646.277.4955
twiegand@mololamken.com
www.mololamken.com

September 22, 2014

**VIA E-MAIL**

Christopher A. Seeger
SEEGER WEISS LLP
77 Water Street
New York, New York  10005

Brad S. Karp
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York  10019

Sol Weiss
ANAPOL SCHWARTZ
1710 Spruce Street
Philadelphia, Pennsylvania 19103

Re:   *In Re: National Football League Players' Concussion Injury Litigation*, No. 2:12-md-02323-AB (E.D. Pa.)

Dear Counsel:

As you know, on September 13 we filed a motion for leave to conduct discovery. We are writing to see whether you are willing to provide some of the requested discovery on an expedited basis, such as materials exchanged between the NFL and class counsel as part of the settlement process. It would help to obtain these and any other materials you are now able to provide by the end of the day this Thursday, September 25.

We are prepared to meet and confer to discuss timing and any issues you may have regarding our requests. To the extent you intend to oppose any of our requests, we stand ready to try to negotiate a solution to those areas as well. Deadlines for filing objections and opting out of the settlement are approaching and we would appreciate resolving any discovery issues as promptly as practicable.

Thank you.

Sincerely,

Thomas J. Wiegand

TJW:dmr
cc:   Arnold Levin (via e-mail)
      Gene Locks (via e-mail)
      Steven C. Marks (via e-mail)
      Dianne M. Nast (via e-mail)