# Bert Bell/Pete Rozelle NFL Player Retirement Plan

Amended and Restated as of April 1, 2012

# ARTICLE 1

## DEFINITIONS

The terms below have the following meanings unless the context clearly indicates otherwise.

**1.1** "**Active Player**" means a Player who is obligated to perform football playing services under a contract with an Employer; provided, however, that for purposes of Article 5 only, Active Player will also include a Player who is no longer obligated to perform football playing services under a contract with an Employer, but is within the period beginning when his last such contract expired or was terminated for any reason, and ending on the later of (a) the July 15 following the beginning of the period, or (b) the first day of pre-season training camp.

**1.2** "**Actuarial Equivalent**" means a benefit of equal value when computed in accordance with the interest rate and mortality assumptions defined in Appendix B. For this purpose, a benefit determinable from the assumptions defined in Appendix B will always be deemed to be of equal value.

**1.3** "**Administrator**" means the Retirement Board, which will be considered to be the administrator of the Plan within the meaning of section 3(16)(A) of ERISA.

**1.4** "**Affiliate**" means, with respect to a particular Employer, (a) any corporation, other than the Employer, which is a member of a controlled group of corporations (within the meaning of Code section 414(b)) of which such Employer is a member, (b) any trade or business, other than the Employer, which together with such Employer are under common control (within the meaning of Code section 414(c)), (c) any employer, other than the Employer, which is a member of an affiliated service group (within the meaning of Code section 414(m)) of which such Employer is a member, and (d) any other entity required to be aggregated with the Employer under Code section 414(o).

**1.5** "**Benefit Arbitrator**" means the arbitrator described in Article 66 of the 2011 CBA to resolve certain disputes specifically described therein relating to employee benefits.

**1.6** "**Benefit Credit**" means the credit in Section 4.1 for the corresponding Credited Season.

**1.7** "**Benefit Credit Annuity Starting Date**" means the first day of the first period for which an amount is received as an annuity under Article 4, including any amount received as an early payment benefit under Section 4.5. A Player's Benefit Credit Annuity Starting Date will not be earlier than the first day of the month coincident with or next following the date that the Player's benefit election form is received by the Retirement Board, except as provided in Sections 4.10, 4.11, and 4.12 (if elected in accordance with Treasury Regulations section 1.417(e)-1(b)(3)(v)).

**1.8** "**Benefit Credit Pension**" means the pension payable under Article 4 based on Benefit Credits.

**1.9** "**Code**" means the Internal Revenue Code of 1986, as amended.

**1.10** "**Collective Bargaining Agreement**" or "**CBA**" means the Collective Bargaining Agreement, as amended, and any such future negotiated agreement, as applicable, between the Management Council and the NFLPA. The term **"1993 CBA"** means the Collective Bargaining Agreement in effect on May 6, 1993, and **"2011 CBA"** means the Collective Bargaining Agreement entered into on August 4, 2011.

**1.11** "**Credited Season**" means a Plan Year in which a Player:

(a) is an Active Player (including an injured Player who otherwise satisfies the definition of "Active Player") on the date of three or more Games, not including Game dates when he was on the Future List;

(b) after April 1, 1970, is injured in the course and scope of his employment for an Employer and by reason of such injury, and pursuant to an injury grievance settlement or an injury settlement waiver, receives payment equivalent to his salary for three or more Games or for a number of Games which, when added to the number of Games in such Plan Year for which he otherwise has credit, totals three or more;

(c) after reporting to at least one official pre-season training camp or official practice session during such Plan Year, (1) dies, (2) becomes totally and permanently disabled under Section 5.3(a) or 5.3(b) of the Plan (or the corresponding section of prior Plan documents), or (3) incurs a disability that subsequently qualifies for a benefit under Section 6.1 of the Plan.

(d) is absent from employment by an Employer while serving in the Armed Forces of the United States, provided such Player returns as an Active Player, after first being eligible for discharge from military service, by the later of (1) ninety days or any longer period prescribed by applicable law, or (2) the opening of the official pre-season training camp;

(e) for payments on or after June 1, 1993, was absent from employment by an Employer while serving in the Armed Forces of the United States during the periods set forth in the table below if (1) during the one-year period ending on the date he entered the Armed Forces, such Player either played professional football for an Employer or signed a contract (or a similar document) stipulating his intent to play professional football for an Employer, and (2) such Player was alive on the date set forth in the table below for the corresponding period:

| For Plan Years: | Such Player Was Alive On: |
|---|---|
| April 1, 1941 through March 31, 1947 | June 6, 1994 |
| April 1, 1950 through March 31, 1955 | May 1, 1996 |

3

| For Plan Years: | Such Player Was Alive On: |
|---|---|
| April 1, 1960 through March 31, 1976 | January 13, 2000 |

provided that Credited Seasons under this Section 1.11(e) will be granted only if and to the extent necessary for such Player to become a Vested Player; or

(f) effective April 1, 2001, has a season with at least eight games on the practice squad in a Plan Year (either before or after April 1, 2001) in which he did not otherwise earn a Credited Season, provided that he is otherwise vested and earns a Credited Season in 2001 or later. A Player may earn a maximum of one Credited Season under this Section 1.11(f) regardless of the number of seasons in which he has at least eight games on the practice squad (as such term is or may be defined in Article XXXIV of the 1993 CBA or in Article 33 of the 2011 CBA).

A Player may earn no more than one Credited Season during a Plan Year. A Credited Season is identified by the calendar year in which it begins.

**1.12** **"Dependent"** means a person for whom a personal exemption deduction is allowable under Code section 151, without regard to (a) the income of the Player, (b) whether the personal exemption deduction is allowable to or used by another person, or (c) whether the Player is divorced and/or has entered into a multiple support agreement with respect to such person.

**1.13** **"Disability Initial Claims Committee"** means the committee described in Article 8.

**1.14** **"Employee"** means an individual who (a) is employed by an Employer as an Active Player, or (b) is employed by an Employer or an Affiliate in a capacity other than as an Active Player (provided that such employment immediately precedes or immediately follows, without interruption, employment as an Active Player).

**1.15** **"Employer"** means a member club of the League.

**1.16** **"ERISA"** means the Employee Retirement Income Security Act of 1974, as amended.

**1.17** **"Game"** means any regular-season League game and any post-season League game except the Pro Bowl.

**1.18** **"Hour of Service"** means:

(a) An hour for which an Employee is paid, or entitled to payment, for the performance of duties for an Employer or Affiliate during a Plan Year, with such an Hour of Service being credited for the Plan Year in which the duties were performed;

(b) An hour for which an Employee is paid, or entitled to payment, by an Employer or Affiliate on account of a period of time during which no duties are performed (irrespective of

4

whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence, with such an Hour of Service being credited for the Plan Year or, on a ratable basis, for the Plan Years with respect to which the payments are made; provided, however, that (1) no more than 501 Hours of Service will be credited under this paragraph to an Employee on account of any single continuous period during which the Employee performs no services (whether or not such period occurs in a single Plan Year), (2) Hours of Service will not be credited for any payment made or due under a plan maintained solely for the purpose of complying with applicable workers' compensation, unemployment compensation or disability insurance laws or for any payment which solely reimburses an Employee for medical or medically related expenses incurred by the Employee, and (3) a payment will be deemed to be made by or due from an Employer or Affiliate regardless of whether such payment is made by or due from the Employer directly, or indirectly through, among others, a trust fund or insurance company to which the Employer or Affiliate contributes or pays premiums and regardless of whether contributions made or due to the trust fund, insurance company or other entity are for the benefit of particular Employees or on behalf of a group of Employees in the aggregate; and

(c) An hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by an Employer, with such Hours of Service being credited for the Plan Year or Plan Years to which the award or agreement pertains (rather than the Plan Year or Plan Years in which the award, agreement or payment is made). An Hour of Service credited under subsections (a) or (b) above will not also be credited under this subsection (c). Crediting of Hours of Service for back pay awarded or agreed to with respect to periods described in subsection (b) will be subject to the limitations set forth therein. The determination of Hours of Service for reasons other than the performance of services and the crediting of Hours of Service to the appropriate Plan Year will be made on a basis consistent with 29 C.F.R. § 2530.200b-2(b) and (c), which is incorporated herein by reference.

An Employee's total Hours of Service in a Plan Year are determined as follows, without regard to whether the Employee actually completes more or less than the applicable number of Hours of Service indicated: (a) from July 1 through the following January 31, the Employee will be credited with ten Hours of Service for each day on which he completes at least one Hour of Service; and (b) from February 1 through the following June 30, the Employee will be credited with 190 Hours of Service for each calendar month in which he completes at least one Hour of Service. Notwithstanding the prior sentence, an Employee whose first Hour of Service is after March 31, 2010 shall be credited at all times with ten Hours of Service for each day in which he completes at least one Hour of Service.

**1.19** "**League**" means the National Football League.

**1.20** [Reserved]

**1.21** "**Legacy Credit Annuity Starting Date**" means the first day of the first period for which an amount is received as an annuity under Article 4A. A Player's Legacy Credit Pension Annuity Starting Date will not be earlier than (1) the later of (a) the Player's Benefit

5

Credit Annuity Starting Date or (b) the first day of the month coincident with or next following the date that the Player's Legacy Credit Pension election form is received by the Retirement Board, or (2) August 1, 2011. Notwithstanding the foregoing, in the case of a Legacy Eligible Player whose Benefit Credit Annuity Starting Date is on or before August 1, 2011, and whose Legacy Credit Pension election form is received by the Retirement Board prior to August 1, 2012, his Legacy Credit Annuity Starting Date is the later of (1) the date he elects or (2) August 1, 2011.

**1.22** "**Legacy Credit Pension**" means the monthly pension payable to Legacy Eligible Players under Article 4A.

**1.23** "**Legacy Eligible Player**" means a Player who is (a) a Vested Player taking into account only his Credited Seasons prior to 1993, and (b) alive on August 4, 2011.

**1.24** "**Life and Contingent Annuitant Pension**" means a monthly annuity for the life of the Player, and if the Player predeceases the person designated by him as his contingent annuitant, a monthly survivor annuity equal to all or a fraction of the Player's monthly annuity payment, as designated by the Player in writing, payable for the life of the Player's contingent annuitant. The contingent annuitant must be the Player's Spouse, parent, child, brother, sister or Dependent, and the fraction must be one of the following percentages: 25%, 50%, 75%, or 100%. Notwithstanding the above, if the maximum percentage allowed by the incidental benefit rule of Section 4.7(b)(2) is less than 100%, then a Life and Contingent Annuitant Pension with such maximum percentage will be offered, and Life and Contingent Annuitant Pension forms with a higher survivor percentage will not be offered.

**1.25** "**Life Only Pension**" means a monthly annuity for the life of the Player only, with no benefit payable for any month which begins after the date of the Player's death.

**1.26** "**Management Council**" means the National Football League Management Council, which is the sole and exclusive collective bargaining representative of the Employers.

**1.27** "**Medical Advisory Physician**" or "**MAP**" means the health care professional(s) designated under Section 11.2.

**1.28** "**Medical Director**" means the health care professional designated under Section 11.1.

**1.29** "**Neutral Physician**" means the health care professional(s) designated under Section 11.3.

**1.30** "**NFLPA**" means the National Football League Players Association, which is the sole and exclusive bargaining representative of League professional football players.

**1.31** "**Normal Retirement Date**" means the first day of the calendar month coincident with or next following a Player's fifty-fifth birthday.

6

1.32 "**Plan**" means this Bert Bell/Pete Rozelle NFL Player Retirement Plan.

1.33 "**Plan Director**" means the individual named by the Retirement Board to act on its behalf in performing ministerial functions. The Plan Director will not have any discretionary authority or discretionary responsibility in the administration of the Plan, nor any discretionary control with respect to the management of the Plan or its assets.

1.34 "**Plan Year**" means the twelve-month period from April 1 to March 31. A Plan Year is identified by the calendar year in which it begins.

1.35 "**Player**" means any person who is or was employed under a contract by an Employer to play football in the League and who is or was: (a) on the Active List or the Inactive List (as such lists are or have been defined in the Constitution and By-Laws of the League) of an Employer; (b) on an Employer's roster without being on the Active List by reason of injuries sustained in the Chicago Tribune All-Star Game; (c) injured in the course and scope of his employment for an Employer and by reason of such injury paid under such contract for all or part of the Plan Year in which the injury occurs or occurred; (d) on the Move List, or, for the purposes of the benefits provided by Articles 5, 6, and 7 of the Plan, on the Future List of an Employer after April 1, 1970 (as such lists have been defined in the Constitution and By-Laws of the League); or (e) on the Reserve/Physically Unable to Perform or the Reserve/NFI-EL Lists of an Employer (as such lists have been defined in the Constitution and By-Laws of the League).

1.36 "**Prior Benefit Credit Pension**" means the Benefit Credit Pension that a Legacy Eligible Player in pay status as of August 4, 2011 was receiving as of August 2011, taking into account any adjustments for early or deferred retirement, the form of payment elected, and the prior election of an early payment benefit.

1.37 "**QDRO**" means a Qualified Domestic Relations Order as defined in Code section 414(p).

1.38 "**Qualified Election**" means a waiver of a Qualified Joint and Survivor Annuity. The waiver must be in writing and must be consented to by the Player's Spouse. The Spouse's consent to a waiver must be witnessed by a notary public and, if benefits are to be paid to an alternate beneficiary, must be limited to a benefit for a specific alternate beneficiary or beneficiaries. Notwithstanding this consent requirement, if the Player establishes to the satisfaction of the Retirement Board that such written consent cannot be obtained because there is no Spouse, because the Spouse cannot be located, or because of such other circumstances as may be provided in Treasury Regulations, a Player's waiver will be deemed a Qualified Election without a Spouse's consent. Any consent (or establishment that consent is not required) necessary under this provision will be valid only with respect to such consenting Spouse, who may not revoke such consent. A revocation of a prior waiver may be made by a Player without the consent of the Spouse at any time before the commencement of benefits. The number of revocations by a Player is not limited. Any new waiver or change of beneficiary will require a new spousal consent.

7

The Retirement Board will give each Player, not more than 180 days before each of his Benefit Credit Annuity Starting Date and his Legacy Credit Annuity Starting Date, as applicable, a written explanation of (a) the terms and conditions of the Qualified Joint and Survivor Annuity, (b) the Player's right to make (and the effect of) an election to waive the Qualified Joint and Survivor Annuity, (c) the rights of the Player's Spouse, (d) the Player's right to make (and the effect of) a revocation of a previous election to waive the Qualified Joint and Survivor Annuity, and (e) the amounts of the various optional forms of benefit.

A Player will have at least thirty days to decide whether to waive the Qualified Joint and Survivor Annuity with respect to his Benefit Credit Pension or Legacy Credit Pension, as applicable. A Player may waive his right to this thirty-day period by making an affirmative election to commence benefits, with, if applicable, spousal consent; however, benefits will not commence before the expiration of the seven-day period that begins on the day after the Player receives the written explanation of the Qualified Joint and Survivor Annuity. Additionally, the Player has the right to revoke an affirmative election to commence benefits until the Benefit Credit Annuity Starting Date or the Legacy Credit Annuity Starting Date, as applicable, or, if later, until the expiration of the seven-day period referred to in the preceding sentence.

**1.39** **"Qualified Joint and Survivor Annuity"** means a monthly annuity for the life of the Player with a monthly survivor annuity beginning after the death of the Player for the life of the Spouse equal to 50% of the amount of the monthly annuity payable during the life of the Player. The Qualified Joint and Survivor Annuity will be the Actuarial Equivalent of the Life Only Pension.

**1.40** **"Qualified Optional Joint and Survivor Annuity"** means a monthly annuity for the life of the Player with a monthly survivor annuity beginning after the death of the Player for the life of the Spouse equal to 75% of the amount of the monthly annuity payable during the life of the Player. The Qualified Optional Joint and Survivor Annuity will be the Actuarial Equivalent of the Life Only Pension.

**1.41** **"Retirement Board"** means the board described in Article 8.

**1.42** **"Spouse"** means a Player's lawful spouse, as recognized under applicable state law (but only to the extent such state law is consistent with 1 U.S.C. section 7), or a former spouse to the extent provided under a QDRO. A Player's Spouse on his Benefit Credit Annuity Starting Date or Legacy Credit Annuity Starting Date, as applicable, will be the Player's Spouse for purposes of Sections 1.38, 1.39, 1.40 and, if the beneficiary is the Spouse, Section 1.24, except as may be provided in a QDRO.

**1.43** **"Total Credits"** means the sum of a Player's Benefit Credits in Section 4.1 and Legacy Credits in Section 4A.1 for all of his Credited Seasons.

**1.44** **"Trust"** means the trust agreement for the Bert Bell/Pete Rozelle NFL Player Retirement Plan, as amended or restated from time to time.

**1.45** **"Trustee"** means the trustee of the Trust and any successor trustee(s) of such

Trust.

    **1.46**    "**Vested Inactive Player**" means a Vested Player who is not an Active Player.

    **1.47**    "**Vested Player**" means a Player who:

(a) earns five Credited Seasons;

(b) earns four Credited Seasons, including a Credited Season after the 1973 Plan Year;

(c) earns three Credited Seasons, including a Credited Season after the 1992 Plan Year;

(d) after the 1975 Plan Year, is an Employee on his Normal Retirement Date;

(e) after receiving total and permanent disability benefits under Article 5 of this Plan, is found to no longer qualify for total and permanent disability;

(f) is an Employee after the 1975 Plan Year and has at least ten Years of Service (only for the purpose of applying Article 4 or Section 7.3 and not for any other purpose);

(g) is an Employee after the 1988 Plan Year and has at least four Years of Service, at least one of which occurred after the 1988 Plan Year and is a Plan Year in which the Employee did not earn a Credited Season (only for the purpose of applying Article 4 or Section 7.3 and not for any other purpose);

(h) is an Employee after the 1992 Plan Year and has at least three Years of Service, at least one of which occurred after the 1992 Plan Year and is a Plan Year in which the Employee did not earn a Credited Season (only for the purpose of applying Article 4 or Section 7.3 and not for any other purpose); or

(i) (1) earned at least four Credited Seasons, the last of which is earned prior to the 1974 Plan Year, and (2) is alive on June 1, 1998 (only for the purpose of applying Article 4 or Section 7.3, and not for any other purpose).

(j) Notwithstanding the foregoing, effective April 1, 2012, a Player who first earns an Hour of Service during or after the 2012 Plan Year, and does not have three Credited Seasons, will not be a Vested Player until he has earned five Years of Service.

The Total Credits of a Vested Player are nonforfeitable, and the Total Credits of a nonvested Player are forfeitable.

    **1.48**    "**Year of Service**" means a Plan Year in which an Employee completes at least 1,000 Hours of Service or earns a Credited Season.