UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:  NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 12-md-2323 (AB) <br><br> MDL No. 2323 |
| Michael Barber, Myron Bell, Jeff Blake, Larry Bowie, Ben T. Coates, Daunte Culpepper, Eric Curry, Edgerton Hartwell II, Johnny McWilliams, Adrian Murrell, Marques Murrell, Derek Ross, Benjamin Rudolph, Anthony Smith, Fernando Smith, Anthony ("Tony") Smith, and Jonathan Wells, *on behalf of themselves and others similarly situated* <br><br> Plaintiffs <br><br> v. <br><br> National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc. <br><br> Defendants | Hon. Anita B. Brody <br><br><br><br><br><br><br><br><br><br> CIVIL ACTION No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**OBJECTION BY MICHAEL BARBER, MYRON BELL, JEFF BLAKE, LARRY BOWIE, BEN T. COATES, DAUNTE CULPEPPER, ERIC CURRY, EDGERTON HARTWELL II, JOHNNY MC WILLIAMS, ADRIAN MURRELL, MARQUES MURRELL, DEREK ROSS, BENJAMIN RUDOLPH, ANTHONY SMITH, FERNANDO SMITH, ANTHONY ("TONY") SMITH AND JONATHAN WELLS, ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED TO PROPOSED SETTLEMENT**

1

I.  **INTRODUCTION**

Michael Barber, Myron Bell, Jeff Blake, Larry Bowie, Ben T. Coates, Daunte Culpepper, Eric Curry, Edgerton Hartwell II, Johnny McWilliams, Adrian Murrell, Marques Murrell, Derek Ross, Benjamin Rudolph, Anthony Smith, Fernando Smith, Anthony ("Tony") Smith and Jonathan Wells, by their undersigned attorney, Edward Stone Law, object to the proposed Class Action Settlement ("Settlement") because (1) the definition of "Qualifying Diagnosis" is too narrowly drawn, resulting in former NFL players diagnosed with clear cogitative impairments receiving no compensation; (2) the NFL should bear the burden of proving that the 75% offsets are equitable; and (3) the age bracket breakdowns should take into account situations where there is credible evidence that the date of diagnosis is significantly later than the date of onset of the illness or symptoms.

As is discussed below, all former NFL players that suffer from diagnosed, cognitive impairments should be entitled to a Monetary Award under the proposed Settlement, yet many do not and will not qualify under the current framework. These former NFL players submit that the Settlement should (1) broaden the class of Qualifying Diagnosis to fit all former NFL players diagnosed with a cognitive impairment; (2) provide that the NFL bears the burden of proving that 75% offsets are equitable; and (3) provide that the age bracket breakdowns take into account situations where there is credible evidence that the date of diagnosis is significantly later than the date of onset of the illness or symptoms.

## II.     OBJECTIONS

### A.     The Definition Of "Qualifying Diagnosis" Should Be Expanded To Fit All Former NFL Players Diagnosed With A Cognitive Impairment.

The definition of "Qualifying Diagnosis" should be expanded to include the following:

#### 1.   Post Traumatic Concussion Syndrome

Numerous former NFL players, who otherwise do not qualify for a Monetary Award under the proposed Settlement based on age and number of years played in the NFL, have been diagnosed with a host of cognitive impairments, including post- concussion syndromes and injuries, such as Post Traumatic Head Syndrome, Post-Concussion Syndrome ("PCS"), Traumatic Brain Injury ("TBI"), Post Traumatic Brain Injury Syndrome and Post-Traumatic Brain Syndrome.  However these symptoms and syndromes are labeled, they represent proof of a significant and life-altering cognitive impairment. Such diagnosis, called hereafter post-traumatic brain syndrome, should result in a Monetary Award.

#### 2.   Cognitive Impairments that Cause Permanent Disability

Numerous former NFL players, who otherwise do not qualify for a Monetary Award under the proposed Settlement based on age and number of years played in the NFL, have been found totally and permanently disabled by the NFL, due to significant and life-altering cognitive impairments.  Such diagnosis should result in a Monetary Award equal to at least Level 1.5 Neurocognitive Impairment (*i.e.,* early Dementia). Similarly, former NFL players who have been found permanently disabled by the Social Security Administration should qualify for the same minimum award threshold without requiring additional diagnoses.

3

### 3. Basis for the Objection

This Settlement purports to adjudicate forever the claims of cogitative impairments suffered by former NFL players due to their sustaining repeated head trauma, including concussions. Former NFL players that suffer clearly documented concussion-related cognitive impairments should, therefore, have a simple path to receiving a Monetary Award through the settlement agreement process. However, the proposed Settlement, as currently constructed, only makes a Monetary Award available where a former NFL player receives a Qualifying Diagnosis involving certain, specific medical conditions. While these medical condition: ALS, Alzheimer's; Level 1.5 Dementia; Level 2 Dementia; CTE and Parkinson's are major examples of the type of diseases that players with concussion-related cognitive impairments suffer, they are by no means the only serious medical conditions related to those concussions. This Settlement should broaden the class of Qualifying Diagnosis to fit all former NFL players diagnosed with a cognitive impairment.

Post-traumatic brain syndrome for example, carries symptoms that are similar to Dementia and Parkinson's, and neurological impacts that are virtually the same. Medical research documents this similarity of symptoms. See, for example, the February 18, 2013 Medical News Today article discussing long-term effects of concussions, which noted that older athletes that suffered concussions experienced symptoms "similar to those of early Parkinson's disease - as well as memory and attention deficits." [1] The Settlement should

---

[1] Concussions Cause Long-Term Effects Lasting Decades, www.medicalnewstoday.com/articles/256518.php.

therefore award the same level of compensation to former NFL players with post-traumatic brain syndrome, as it does to a former NFL player diagnosed with Dementia.

Players with documented findings from the defendant NFL provides another example of how the overly narrow Qualifying Diagnosis definition unfairly keeps cognitively impaired former NFL players from qualifying for a Monetary Award. The former NFL players involved in this Settlement all suffered TBI while playing in the NFL. These brain injuries now cause these players to suffer from persistent pain and have trouble sleeping or remembering basic things like the names of their friends, or the street they live on. The resulting frustration leads to heightened anger, anxiety and depression. Examinations of these former NFL players via NFL-sponsored programs routinely finds extensive cognitive impairments that qualify the former NFL players for permanent disability. The symptoms that form the basis for this cognitive impairment-related disability cause these former NFL players tremendous suffering and loss of income due to a permanent inability to work. However, as the Settlement is currently set up, these players will receive no Monetary Award unless their symptoms also fit within the current Qualifying Diagnosis category.

**B.     The Age Bracket Breakdowns Should be Expanded.**

The age bracket breakdown that is based upon the date of the diagnosis of a Qualifying Diagnosis does not take into account situations where there is credible evidence that the date of diagnosis is significantly later than the date of onset of the illness and should be expanded.

The NFL encouraged a warrior mentality, leading its players to ignore pain and eventually, the damaging symptoms of brain disease. This Settlement attempts to achieve

just compensation for the qualifying diseases that former NFL players suffer, or suffered prior to their death. Due to the inflexibility of the current age bracket breakdowns in many cases, the monetary awards will be significantly less than they would have been had former NFL players been diagnosed at the onset of their illnesses, rather than many years later. The court can correct for this inequitable result quite simply by assigning an age bracket that is one level higher (younger) than the assigned age bracket based on date of diagnosis where there is credible evidence that the date of diagnosis is later than the date of onset.

We submit that, where credible evidence demonstrates that the player suffered from a Qualifying Diagnosis before any official diagnosis was rendered, the Settlement should include provisions for slotting the former NFL players in an age bracket based on the date of onset rather than date of diagnosis.

## C. The NFL Should Bear The Burden of Proving That 75% Offsets Are Equitable.

The Settlement also imposes offsets that unfairly limit a claimant's award without adequate proof. The proposed Settlement currently reduces a claimant's award by 75% if the NFL can point to a non-football-related TBI or stroke. Settlement § 6.7(b)(ii)-(iii). The NFL does not have the burden of proving that the stroke or non-football-related TBI was severe enough to account for 75% of the player's cognitive injuries.  The NFL does not even need to prove that a stroke was unrelated to the TBI that the player sustained during his NFL career.  This, despite medical evidence that TBI can increase the risk that a former NFL player has a stroke.[2]

---

[2] See Burke et al., Traumatic Brain Injury May Be an Independent Risk Factor for Stroke, 81 Neurology 1 (2013) (attached as Exhibit 21 to docket #6201).

Given the clear evidence in the medical and scientific community regarding the devastating cognitive impairments that former NFL players suffer as a result of numerous documented and undocumented TBI, and the evidence that such TBI could be a risk factor for stroke, the Settlement should assume, without further evidence, that any stroke or non-football-related TBI had no incremental effect on the player's cognitive impairments. There should be no reduction in percentage of a Monetary Award unless and until the NFL can produce credible evidence to the contrary.

In the case of a stroke, that evidence should include an independent evaluation that takes into account documentary or oral descriptions of the player's symptoms of cognitive impairment prior to the stroke. It should also factor in the likelihood that prior TBI were connected to the stroke. The independent evaluator can then, much like in a worker's compensation case, balance the factors to determine whether, or to what extent, the Monetary Award should be offset based on the stroke at issue.

The same process should apply to non-football-related TBI. The independent evaluator would examine the documentary or oral descriptions of the player's symptoms of cognitive impairment prior to the incident, the severity of the historic TBI suffered by that player. The evaluator would then balance the severity of the non-football-related TBI with the historic ones to determine whether, or to what extent, the Monetary Award should be offset based on the TBI at issue.

This is not just an empty exercise. The proposed Settlement will certainly lead to unjust and even absurd results, if allowed to continue in its present form. Imagine the former NFL player, wracked with a host of debilitating symptoms of cognitive impairment, who is involved in a minor car accident that leaves him feeling woozy for a couple of days.

Back during his days in the NFL, this player would be out there playing the next Sunday. Post-settlement, if that player developed early onset Dementia two years later, he would lose 75% of his Monetary Award on account of this minor TBI. The Settlement should correct this, and similar situations by placing the burden on the NFL to prove whether and to what extent stroke and non-football-related TBI should offset a player's Monetary Award.

### III.   A BETTER APPROACH

This case is about fairly compensating former NFL players for the long-term effects cognitive disorders they suffer as a result of concussion. Many former NFL Players have, or soon will be receive a Qualifying Diagnosis like Dementia, Parkinson's or Alzheimer's. Other players who experience symptoms very similar to these terrible diseases will receive no monetary compensation under the proposed Settlement as it is currently constructed, or they will receive reduced awards due to the age of their official diagnosis, or the presence of non-football-related TBI or stroke  Fortunately, a small change in "Qualifying Diagnosis," that broadens the definition to encompass other documented cognitive brain injuries, will remedy most of this threatened injustice. Such a change will be simple to administer, as it merely adds conditions for which a diagnosis from a qualified doctor leads to a Monetary Award. The grid will need expanding, but the process remains the same. So to with assigning an age bracket based on date of diagnosis where there is credible evidence that the date of diagnosis is later than the date of onset. Shifting the burden of proof for the above-discussed offsets will be similarly simple to administer and is change that is necessary to ensure that compensation is awarded commensurate with symptoms and suffering, These small expansions will make an enormous difference in the lives of

former NFL players, who gave of themselves on the field, unknowingly taking on a collection of injuries which render them unable to live normal lives. The Settlement is the mechanism by which they are compensated for what they are now losing, and for what they will lose for all the rest of their days. Its compensation structure should therefore set the bar for compensation based on the fundamental question of whether they suffer from cognitive brain injury, and not on a specific set of diseases that many players will not qualify for, despite the myriad of brain-related injuries that these players will live with for the rest of their lives.

## IV.     CONCLUSION

This Settlement attempts to achieve just compensation for the cognitive impairments that former NFL players suffer from, or suffered from prior to their death, due to the devastating impacts of numerous concussions. Many of these players are now suffering dramatic and negative life-changing consequences from those concussions. Justice requires a Monetary Award for cognitive impairment-related symptoms that do not qualify for one of the Qualifying Diagnosis, but which are sufficiently devastating to qualify the former player for permanent disability or post-traumatic concussion syndrome. Because of the cognitive impairments that will follow them for life, these former players cannot work, drive, or spend a day of their lives without significant head pain. It is no wonder that these symptoms qualify former NFL players for permanent disability and diagnosis' such as post-traumatic brain syndrome. Fundamental fairness requires the modification of the proposed Settlement so that these former players are compensated for the cognitive impairments they will struggle with for the remainder of their lives.

A fair solution is fortunately available and very easy to administer.  The proposed settlement should re-define the "Qualifying Diagnosis" definition to include a category for those players that the NFL or Social Security Administration deemed to be cognitively disabled, and a category for players with cognitive impairments, including post- concussion syndromes and injuries, such as Post Traumatic Head Syndrome, Post-Concussion Syndrome ("PCS"), Traumatic Brain Injury ("TBI"), Post Traumatic Brain Injury Syndrome and Post-Traumatic Brain Syndrome that receive a diagnosis of post-traumatic concussion syndrome.

Dated:  October 14, 2014

                                            Respectfully submitted,

                                            */s/ Marc Davies*
                                            Marc Davies (PA#81789), *Of Counsel*
                                            Edward S. Stone
                                            EDWARD STONE LAW P.C.
                                            175 West Putnam Avenue, 2nd Floor
                                            Greenwich, CT  06830
                                            eddie@edwardstonelaw.com
                                            Telephone:  203-504-8425
                                            Fax:  203-348-8477

                                            *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that the forgoing Objection was served on October 14, 2014 on all counsel of record by the Court's ECF system.

*/s/ Marc Davies*
Marc Davies
