UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | Civil Action No. 2:14-cv-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

SUPPLEMENT TO OCTOBER 6, 2014 OBJECTION OF
SEAN MOREY, ALAN FANECA, BEN HAMILTON, ROBERT ROYAL, RODERICK
CARTWRIGHT, JEFF ROHRER, AND SEAN CONSIDINE

Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick Cartwright, Jeff Rohrer, and Sean Considine (collectively, "Objectors") submit the Declaration of Samuel Gandy, M.D., Ph.D. ("Gandy Decl.") in further support of their Objection filed on October 6, 2014, MDL Dkt. No. 6201 ("Objection").

Dr. Gandy is Professor of Alzheimer's Disease Research and Professor of Neurology and Psychiatry at Mt. Sinai School of Medicine in New York City. He is also the Associate Director of the Mount Sinai Alzheimer's Disease Research Center and Chairman Emeritus of the National Medical and Scientific Advisory Council of the Alzheimer's Association. Dr. Gandy received

both his M.D. and his Ph.D. from the Medical University of South Carolina. Dr. Gandy's *curriculum vitae* is attached to his declaration.

The declaration of this prominent researcher further demonstrates that the Settlement is not fair, adequate, and reasonable. The Settlement fails to compensate players who die with CTE after July 7, 2014 while awarding $4 million to the families of players who died with CTE before that date. As Co-Lead Class Counsel has admitted, "CTE is believed to be the most serious and harmful disease that results from NFL and concussions." Objection 2 & n.1.[1] Yet, the rights of class members with CTE were bargained away without adequate representation.

As Dr. Gandy explains, CTE results in mood and behavioral disorders that are "serious and devastating." Gandy Decl. ¶ 5. These symptoms include "poor impulse control" and "socially inappropriate, avolitional, and apathetic behaviors" as well as "impulsivity, aggression," and "'short fuse' explosive behaviors." Gandy Decl. ¶ 6. CTE's behavioral and mood symptoms are not compensated under the Settlement, however, in that class members receive no

---

[1] Co-Lead Class Counsel Seeger Weiss used to have on its website a tutorial relating to MTBI and football:

> Frequent brain trauma or multiple football concussions . . . has shown to cause serious mental health problems. ***Thousands of football players, many of whom are thought to have suffered more than one hundred mild traumatic brain injuries, are dealing with horrible and debilitating symptoms***.
>
> Multiple medical studies have found direct correlation between football concussions and suffering from symptoms of chronic traumatic encephalopathy, also known as CTE. ***CTE is believed to be the most serious and harmful disease that results from NFL and concussions.*** CTE is a progressive degenerative disease that causes damage to the brain tissue and the accumulation of Tau Proteins.

*Up-To-Date Information on NFL Concussions*, Seeger Weiss LLP, (Sept. 9, 2014), http://www.seegerweiss.com/football-concussions/#ixzz3CByVHxui (emphasis added) (Objection 2 n.1 & Ex. 1). Seeger Weiss quickly removed that language after oral argument in the Third Circuit on September 10, 2014, at which the inadequate representation and failure to compensate CTE, as well as this language on their website, was raised.


compensation for future cases of CTE and because the behavioral and mood symptoms do not qualify for payment under any of the other qualifying diseases.  Objection 21-32, 69-70 & n.83.

CTE typically presents in younger individuals when compared to other neurodegenerative conditions, like those that qualify for payment under the settlement (ALS, Parkinson's, Alzheimer's, and dementia).  Gandy Decl. ¶ 7.  Thus, individuals with CTE are left to cope with "decades of disability."  *Id.*  That is particularly true of CTE's mood and behavioral symptoms, which typically present in mid-life.  *Id.*  Thus, compensating CTE-related neurocognitive decline as Level 1.5 or Level 2.0 dementia is inadequate – it would leave many class members afflicted with CTE to suffer years or decades of CTE's mood and behavioral symptoms before becoming eligible to participate in the Settlement.  Objection 28-30.  Many individuals with CTE, moreover, never develop dementia: "The high rates of suicides, accidents, and drug overdoses often lead to death before the individual reaches age 65," which is the age at which individuals with CTE might develop dementia.  Gandy Decl. ¶¶ 8-9.  For those individuals, the Settlement offers **nothing**.  *See* Objection 28-29.

The Settlement's testing protocols are also insufficient.  Although CTE is currently not amenable to a reliable, definitive diagnosis in living persons, there are recommended testing protocols for individuals suspected to have CTE.  That recommended testing includes "neuropsychological evaluation, neurological examination, brain imaging, and blood and CSF biomarkers."  Gandy Decl. ¶ 12.  The testing provided by the Baseline Assessment Program, however, does not meet those requirements:  It focuses only on cognitive function and lacks the neurological examination, brain imaging, and blood and CSF biomarker testing that should be included when screening for CTE.  *Id.*; *see also* Objection 72-73.  In any event, recent advances in diagnostic imaging technology have identified tracers that can spot the accumulation of brain

protein found in individuals suffering from CTE. Gandy Decl. ¶ 13. These tracers could soon allow for a more definitive diagnosis of CTE in a living person. *Id.* The Settlement, however, freezes science in place and does not account for such scientific advancements that aid physicians in identifying and treating CTE. Objection 26.

Dated: October 14, 2014

Respectfully submitted,

/s/ Steven F. Molo

William T. Hangley
Michele D. Hangley
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square
18th & Cherry Streets
27th Floor
Philadelphia, PA 19103
(215) 496-7001 (telephone)
(215) 568-0300 (facsimile)
whangley@hangley.com
mdh@hangley.com

Steven F. Molo
Thomas J. Wiegand
Kaitlin R. O'Donnell
MOLOLAMKEN LLP
540 Madison Ave.
New York, NY 10022
(212) 607-8160 (telephone)
(212) 607-8161 (facsimile)
smolo@mololamken.com
twiegand@mololamken.com
kodonnell@mololamken.com

Martin V. Totaro
Eric R. Nitz
MOLOLAMKEN LLP
600 New Hampshire Ave., N.W.
Washington, DC 20037
(202) 556-2000 (telephone)
(202) 556-2001 (facsimile)
mtotaro@mololamken.com
enitz@mololamken.com

Linda S. Mullenix
2305 Barton Creek Blvd., Unit 2
Austin, TX 78735
(512) 263-9330 (telephone)
lmullenix@hotmail.com

*Attorneys for Objectors*

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2014, I caused the foregoing Supplement to October 6, 2014 Objection and supporting declaration to be filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel of record.

/s/ Steven F. Molo
Steven F. Molo