IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION LITIGATION | § § § § § § § § § | No. 12-md-2323 (AB)<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | | |

### OBJECTIONS TO JUNE 25, 2014 CLASS ACTION SETTLEMENT AGREEMENT

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Settlement Class Members Liyongo Patrise Alexander, Charlie Anderson, Charles E. Arbuckle, Cassandra Bailey, as Representative of the Estate of Johnny Bailey Jr., deceased, Ben Bronson, Curtis Ceaser, Jr., Larry Centers, Darrell Colbert, Harry Colon, Christopher Crooms, Jerry W. Davis, Tim Denton, Michael Dumas, Corris Ervin, Doak Field, Baldwin Malcolm Frank, Derrick Frazier, Murray E. Garrett, Clyde Glosson, Roderick Harris, Wilmer K. Hicks, Jr., Patrick W. Jackson, Gary D. Jones, Ryan McCoy, Jerry James Moses, Anthony E. Newsom, Rance Olison, John Owens, Robert Pollard, Derrick Pope, Glenell Sanders, Thomas Sanders, Dwight Scales, Todd C. Scott, Frankie Smith, Jermaine Smith, Tyrone Smith, James A. Young Sr. (collectively, the "Alexander Objectors") file these Objections to the revised settlement in the Class Action Settlement Agreement as of June 25, 2014 (Doc. #6087) (the "RSA"), and respectfully show the following:

### **OBJECTIONS TO THE RSA**

The Alexander Objectors, all Retired NFL Football Players (or Representative Claimants) represented by the undersigned counsel (see attached declarations), object to the RSA because of

the following deficiencies:

1. *Lack of adequate representation*.  The Alexander Objectors object to the RSA because the class representatives have not fairly and adequately protected the interests of the class given intra-class conflicts.  Fed. R. Civ. P. 23(a)(4).  This is evidenced in part by the RSA limiting compensation for CTE to individuals who died before preliminary approval of the Settlement; a class member whose CTE is discovered in the future receives nothing.  Additionally, lack of adequate representation is evidenced by the RSA's significant offsets for non-football-related traumatic brain injury or stroke; the class representatives did not adequately represent objectors' interest in eliminating or reducing such offset.  Finally, intra-class conflicts exist as to players, unlike the class representatives, with experience playing in NFL Europe, given that the RSA purports to release those claims but fails to give the players "eligible season" credit for playing in NFL Europe.  These intra-class conflicts preclude certification of the settlement class.  *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).  On these points, the Alexander Objectors incorporate by reference as though fully set forth at length herein the Objection of Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick "Rock" Cartwright, Jeff Rohrer, and Sean Considine to Class Action Settlement (Dkt. No. 6201, pp. 20-36).

2. *The notice is misleading and inadequate under Rule 23*.  The Alexander Objectors further object to the RSA because the notice is ambiguous, misleading and inadequate.  Notice is insufficient when it is false or misleads class members about the terms of the settlement.  *See, e.g., Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014).  Here, the notice is misleading to class members for the reason that it fails to alert them to the fact that they will not be compensated for current or future CTE; fails to reveal that the estimated age of diagnosis will significantly reduce

any associated award; and fails to note that only a tiny fraction of the class members are estimated to receive any monetary compensation at all. For example, the notice and accompanying charts and tables create the impression that future claims of "Death w/ CTE" will be compensated like the other diseases listed as a "Qualifying Diagnosis," which is untrue. Moreover the notice fails to disclose that many class members will never realize the maximum awards or otherwise receive any compensation under the Settlement. On these points, the Alexander Objectors incorporate by reference as though fully set forth at length herein the Objection of Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick "Rock" Cartwright, Jeff Rohrer, and Sean Considine to Class Action Settlement (Dkt. No. 6201, pp. 37-53).

      3.    *The RSA is unfair, unreasonable and inadequate*. The Alexander Objectors further object because the RSA is unfair, unreasonable and inadequate. Factors relevant to a determination of the fairness of a class-wide settlement include: (1) the stage of the proceedings and the amount of discovery completed; (2) the ability of the defendant to withstand a greater judgment; (3) the reaction of the class to the settlement; (4) the risks of establishing liability and damages; (5) the range of reasonableness of the settlement fund in light of the best possible recovery in light of all the attendant risks of litigation; (6) the risks of maintaining the class action through the trial; and (7) the complexity, expense and likely duration of the litigation. *Girsh v. Jepson*, 521 F.3d 153, 157 (3d Cir. 1975). Each such factor demonstrates why the settlement should not be approved:

    a.    Class counsel appear to have conducted no discovery to develop the merits of the claims, choosing instead to settle without any basic factual record;

    b.    With annual multi-billion dollar revenues, the NFL can withstand a judgment many times the amount of the settling parties' own valuation of the settlement;

      c.      The reaction from the class has been negative from the outset;

      d.      The risks of establishing liability and damages cannot be fully analyzed, given the absence of any discovery; nevertheless, publicly-available information demonstrates the strength of the plaintiffs' claims and the weaknesses of the NFL's defenses;

      e.      The "real value" of the settlement to the class falls well short of its face value and thus, the settlement is not reasonable in light of the best possible recovery;

      f.      The likelihood of maintaining class status through trial weighs against approval; that is, aside from the adequacy of the representation, the remaining requirements of Rule 23(a)—numerosity, commonality and typicality—are satisfied; and

      g.      The potential complexity, expense and duration of the litigation weighs against approval.

On these points, the Alexander Objectors incorporate by reference as though fully set forth at length herein the Objection of Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick "Rock" Cartwright, Jeff Rohrer, and Sean Considine to Class Action Settlement (Dkt. No. 6201, pp. 54-84).

      4.      *<u>The RSA incorporates terms, standards, provisions, and other documents that are not sufficiently disclosed</u>*.  The Alexander Objectors also object to the RSA for the additional reason that portions of the RSA are vague, ambiguous, and/or not sufficiently disclosed.  For example, the RSA references terms, standards, provisions, and other documents that are not disclosed in advance so that a Settlement Class Member may ascertain the fairness, reasonableness, or adequacy of the same.  Specifically, Exhibit 2 (p. 5) to the RSA states that "a user manual will be provided to neuropsychologist setting out the cut-off scores, criteria for identifying impairment in each cognitive domain, and statistical and normative data to support the impairment criteria" and "additional information relating to the evaluation of effort and performance validity will be provided in a clinicians interpretation guide" (p. 3).  User manuals and guides that will determine whether a claim meets the definition of a qualifying diagnosis

should be provided to class members to evaluate prior to the Court determining the fairness of the settlement.

     5.    *The underlying analyses and supporting documents have been withheld*. The Alexander Objectors further object to the RSA because the underlying analyses, documents and information on which the RSA is predicated has not been disclosed. Brain damage from playing football is a public health issue. If the NFL has information about the incidence and prevalence of the cognitive costs of playing football, such information should be shared with the public. The public has a need and a right to know. But, the RSA will foreclose any future discovery on the issue from the NFL, which means the public will never know what the NFL knew and when the NFL knew it. Therefore, the RSA should be revised to require the NFL and Co-Lead Class Counsel to disclose the analyses, documents and other information supporting the RSA.

     6.    *The additional attorneys' fees and 5% set aside are excessive*. The Alexander Objectors further object to the up-front fee and expense payment to Co-Lead Class Counsel of $112.5 million, as well as the 5% set aside, both of which are in addition to the contingent attorneys' fees payable to the lawyers by the players under their individual fee agreements. To the extent the NFL has agreed to pay the additional, excessive sum of $112 million, it appears to have done so in trade for Co-Lead Class Counsel agreeing to a release of all future CTE claims. And, despite having conducted no discovery, Co-Lead Class Counsel negotiated this preferential payment for themselves, while settlement class members will have to wait up to 65 years for their benefits, if any. Finally, the 5% set aside, which is in addition to the up-front payment of $112 million, is likewise excessive and constitutes "double-dipping." The RSA should be revised to reduce the $112.5 million award of additional attorneys' fees and expenses and to eliminate the 5% set aside completely.

7. *Maximum monetary awards are insufficient*. The Alexander Objectors further object to the RSA because individual awards for qualifying players and/or their families remain capped. (*See* Monetary Award Grid, Exhibit B-3 to the RSA). These amounts, which are subject to further reductions (see below), are insufficient to compensate the injured players and/or their families.

8. *Reductions to maximum monetary awards*. The Alexander Objectors object to the RSA for the additional reason that the maximum monetary awards are subject to reductions—often, significant reductions—based on offsets for age, career length, and other factors. (*See* RSA §6.7, Exhibit B-3). Former players with fewer than five years of NFL experience will see their awards reduced, some significantly. The same holds true for retirees over 45 — the older a player is when diagnosed with brain damage, the less money he will receive. The RSA also reduces monetary awards by 75% for any former player who has suffered a single non-football related traumatic brain injury or stroke, even though there is no scientific reason to presume that a single non-football brain injury accounts for 75% of a player's afflictions.

9. *Death with CTE*. The Armstrong Objectors object to the RSA because a "Death with CTE" qualifying diagnosis requires, as noted above, retirees to have died and been diagnosed with CTE prior to July 7, 2014. (*See* RSA, §6.3(f)). Thus, if an NFL retiree dies after that date, and regardless of whether the player commits suicide and it is ultimately determined he suffered from CTE, his family will not qualify for an award. An arbitrary cutoff date of July 7, 2014, when compensation drops from $4 million to zero for the same diagnosis, is unfair, unreasonable, and inadequate. Furthermore, it ignores that CTE is at the heart of this litigation and the disease that made football brain damage a public health concern. Yet the RSA forecloses every NFL retiree who has yet to die and be diagnosed with CTE from receiving a "Death by

CTE." What's more, the RSA does not assign similar cutoff dates to former players diagnosed with ALS, Alzheimer's or Parkinson's. The RSA should be revised to delete the date parameters of the "Death with CTE" qualifying diagnosis and expand the list of CTE symptoms that qualify for compensation and lift the restriction on the date of death as well as increase the size of the awards for death with CTE.

10.     *Baseline Assessment Program ("BAP")*. The Alexander Objectors further object to the RSA because of the length of the program and the tight deadlines under which retired NFL players must operate. (*See* RSA, Art. V.) Retired players must register within 180 days after notice is posted, otherwise, they will be deemed ineligible for baseline tests and awards. Thereafter, players older than age 43 must take their baseline exams within two years after the BAP is launched, while younger players must take the exams before their 45th birthday or within ten years of the start of the program. After 10 years, no baseline exams will be conducted, making it nearly impossible to qualify for a monetary award under the RSA. The BAP also screens for cognitive deficits and signs of dementia, but only offers monetary awards for specific neurodegenerative diseases, which leaves players who suffer from other significant ailments linked to repetitive brain injury, but which do not rise to the level of Parkinson's or ALS, to receive nothing more than counseling and prescription drug coverage. Additionally, the BAP program neuropsychologists cannot make qualifying diagnoses of Alzheimer's, Parkinson's or ALS. Instead, retirees must visit a settlement-approved doctor and pay for their own medical testing and related travel expenses.

11.     *Amount of compensation paid depends on fair providers*. The Alexander Objectors further object to the RSA because disability can only be determined by neuropsychologists who are pre-selected for the BAP, rather than a neuropsychologist chosen by

a player. (*See* RSA, Art. V)  Requiring neuropsychologists to pre-register for the BAP will substantially reduce the number of treating doctors involved, as such doctors rarely seek this kind of work. The physician selection criteria also will dissuade most busy treating doctors from participating. The RSA therefore should be revised to allow the players to select and utilize their treating physicians, without penalty, as long as the treating physicians are Board Certified in neurology.

12. *Neuropsychological opinion required*. The Alexander Objectors further object to the RSA because the determination of the cognitive impairment groups is based entirely on the neuropsychological determination of cognitive impairment. Type I CTE—which impacts younger players—is almost entirely a behavioral problem, not a cognitive problem. Any cognitive changes will be the type not susceptible to measurement in someone under age 60. While some behavioral problems may have cognitive manifestations, they are not likely to manifest themselves in examinations in non-stressful environments, like a neuropsychologist's office. The RSA should be revised to allow for compensation for these behavioral problems and the players should be entitled to rely on own physicians to diagnose same.

13. *Unlimited appeals*. The Alexander Objectors further object to the RSA because the NFL may appeal as many monetary awards as it chooses.  Under the RSA, the NFL can delay simply by appealing an unlimited number of claims. (RSA, § 9.6(b))).  And, while there is no charge for the NFL to appeal, players must pay a $1,000 fee.  The RSA also requires an appealing player to prove his appeal with "clear and convincing evidence," (RSA, § 9.8), yet authorizes only five pages of argument to carry that burden. (RSA, § 9.7(a)). The "clear and convincing" standard is substantially more difficult to prove than the "proximate cause" standard — the normal burden of proof in a civil lawsuit at the courthouse. The RSA be revised to

eliminate (or limit) the NFL's right to appeal a player's monetary award; eliminate (or reduce) the $1,000 fee charged to players for filing an appeal; and change the "clear and convincing" standard to the "proximate cause" standard.

14.     *No consideration of scientific advances*. The Alexander Objectors object to the RSA for the additional reason that it does not adequately account for advances in neuroscience. The term of the RSA is expected to span 65 years.  Despite that span and the anticipated advances in neuroscience, the RSA prohibits the NFL and Co-Lead Class Counsel from meeting more than once every ten (10) years to discuss potential changes to the qualifying diagnoses and/or the protocols for making them.  And, it requires that any actual modifications be approved by both sides. (RSA, §6.6(a)).  Thus, even if scientifically supported, if the NFL does not want to accept a new method of detecting CTE, for example, it is not required to do so, and there is no mechanism in the RSA to force the NFL to do so. The RSA should be revised to provide for a more frequent and democratic mechanism for reviewing, identifying, incorporating, and implementing qualifying diagnoses and the protocols for making them based on scientific advances over the term of the RSA.

15.     *The release is too broad*. The Alexander Objectors object to the RSA for the additional reason that the release is too broad. First, the RSA releases claims "arising out of, or relating to CTE."  (RSA, § 18.1(a)(iv)).  Thus, it releases future claims for CTE or Death with CTE, while providing zero compensation.  Accordingly, CTE and Death with CTE claims should be excepted from the release such that it releases only the claims being compensated in the settlement of this litigation.  On this point, the Alexander Objectors incorporate the Objection to Settlement of Cleo Miller, et. al (Dkt. No. 6213, pp. 8-9).  Second, the release in the RSA arguably releases the class members' claims in *Dent, et al, v. National Football League*; Cause

No. C-14-2324 KAW; in the United States District Court for the Northern District of California, a putative class action against NFL regarding the promotion and use of various medications that were either improperly or illegally used and dispensed. Again, the release in the RSA be revised and narrowed to release only the claims being compensated in the settlement of this litigation.

## REQUEST FOR RELIEF

For the reasons stated above, as well as those set forth in detail in the objections incorporated herein, the Alexander Objectors respectfully request that the Court (i) enter an order (a) denying final approval of the settlement embodied in the Class Action Settlement Agreement as of June 25, 2014 (Doc. #6087), and/or (b) recommending the Parties revise the Class Action Settlement Agreement in consideration of the above, and (ii) grant such other and further relief to the former NFL players the Court deems just and proper.

Date:   October 14, 2014                                   Respectfully Submitted,

Mickey Washington
Texas State Bar No.: 24039233
WASHINGTON & ASSOCIATES, PLLC
1314 Texas Ave., Suite 811
Houston, Texas 77002
Telephone: (713) 225-1838
Facsimile: (713) 225-1866
Email: mw@mickeywashington.com

James Carlos Canady
Texas State Bar No.: 24034357
MCGINNIS FEATHERSTON CANADY
1080 W Sam Houston Pkwy N., Suite 260
Houston, Texas 77043
Telephone: (713) 973-2050
Facsimile: (713) 973-2060
Email: carlos@lawfirm2012.com

/s/ Lance H. Lubel
Lance H. Lubel
Texas State Bar No.: 12651125
Adam Voyles
Texas State Bar No.: 24003121
LUBEL VOYLES LLP
Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (713) 284-5200
Facsimile: (713) 284-5250
Email: lance@lubelvoyles.com
adam@lubelvoyles.com

ATTORNEYS FOR THE ALEXANDER PLAINTIFFS/OBJECTORS

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of October, 2014, a true and correct copy of the foregoing *Objections to June 25, 2014 Class Action Settlement Agreement* has filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel of record and a copy is also being served by First Class Mail on:

Clerk of the District Court/NFL Concussion Settlement
U.S. District Court for the Eastern District of Pennsylvania
United States Courthouse
601 Market Street
Philadelphia, PA 19106-1797

/s/ Adam Q. Voyles
Adam Q. Voyles