# Ex-players clash on NFL concussion lawsuit settlement

 **Brent Schrotenboer**, USA TODAY Sports      6:20 p.m. EDT August 19, 2014



*(Photo: Michael Madrid, USA TODAY Sports)*

Sean Morey has a pretty short temper.

Sometimes he's even flown into a rage without knowing why — a problem he attributed to brain injuries he suffered as an NFL player.

"I take an antidepressant to lengthen my fuse," Morey told USA TODAY Sports.

But his passion still flares, especially when talking about one of his least favorite groups of people: the lawyers for retired players in the NFL concussion lawsuit.

Morey says these attorneys brokered a proposed settlement with the NFL that is grossly inadequate and unfair to thousands of ex-players. So he's pursuing legal action against it, a move that pits him against those who are anxious to have the deal finalized.



USA TODAY

Attorneys' fees criticized in NFL concussion settlement

(http://www.usatoday.com/story/sports/nfl/2014/08/19/nfl-concussion-lawsuit-settlement-attorney-fees-craig-mitnick/14306571/)

And now both sides are getting peeved about it.

Morey is "stubborn" and his attorneys are "selfish," said Craig Mitnick, an attorney who supports the settlement and represents 1,400 former players who sued the NFL over head trauma.

Mitnick says Morey's action will drag out the case, prolonging the suffering of ex-players who badly need the medical benefits that would be provided by the NFL in the proposed deal.

Morey's camp is "basically putting their middle finger up to (former NFL player) Kevin Turner and to every other former player suffering from dementia or Alzheimer's or Parkinson's," Mitnick told USA TODAY Sports. "They are delaying medical treatment. They are ignoring the fact that there are people out there that need this now … and they are attempting to hold this thing up for their own selfish purpose."

Morey, in turn, has characterized the plaintiff's attorneys as greedy: They stand to get $112.5 million in attorney fees and costs from the NFL if the deal goes through. To push their case, Morey said Mitnick and his colleagues are treating the sickest former players like captives for ransom — do what these attorneys want or watch these players suffer.



USA TODAY

Suing NFL rife with conflicts for several ex-players

(http://www.usatoday.com/story/sports/nfl/2014/08/05/nfl-concussion-lawsuit-settlement-merril-hoge-marcellus-wiley-brian-baldinger/13612953/)

"Frankly, I'm very offended that they are essentially allowing the NFL to take hostages," said Morey, 38, a former special teams player who retired from the NFL after the 2009 season.

It's a hot subject in a hot summer. While ex-players are receiving notices about the proposed settlement, some are asking questions about it in advance of a fairness hearing on Nov. 19.

Is it fair enough to former players suffering from brain damage? Or did it leave too many of them out in the cold, particularly those suffering from the dreaded brain disease known as chronic traumatic encephalopathy (CTE)?

It depends on the fine print — and whom you ask.

**'SOME WILL DIE'**

Mitnick says that the settlement is "not perfect" but is a fair resolution after nearly 5,000 former players sued the NFL and accused it of keeping them in the dark about the dangers of head injuries. It covers a class of nearly 20,000 former players, providing them with medical testing and treatment, along with compensation to those with Alzheimer's, Parkinson's, Lou Gehrig's disease, dementia and, in some cases, death with CTE.

Shawn Wooden, a former safety with the Miami Dolphins, told USA TODAY Sports that a key goal for the plaintiffs was to "be able to help the guys who need it now."

"When you look at any type of settlement, you're never going to be 100% satisfied," Wooden told USA TODAY Sports. "Because it was a settlement, that means you settled on something, just by definition. We didn't get 100% our whole wish list, but I do think it's fair."

On the other side of the debate are the dissenters — Morey, six other former players and their attorneys. They have tried to intervene in the case and then filed a 58-page objection to the settlement last month. To avoid delaying the case, they also asked a federal appeals court to review their concerns now instead of waiting to go through the fairness hearing. That appeal is pending.

"Time is of the essence," they wrote in their request. "Some will die — from the injuries that are at the root of this litigation — as this process plays out."

They say the plaintiffs' attorneys didn't adequately represent the class of 20,000, in large part because the deal doesn't provide for a large percentage of them who have CTE, a degenerative brain disease found in many dead ex-players, including Junior Seau, who committed suicide in 2012.



USA TODAY

Q&A: Players' lawyer discusses NFL settlement

(http://www.usatoday.com/story/sports/nfl/2014/07/18/q-a-players-lawyer-discusses-nfl-settlement/12851463/)

For the families of those who died with CTE, the settlement provides up to $4 million in compensation, but only if they perished between 2006 and July 7, 2014, when Judge Anita Brody granted preliminary approval to the deal.

"The guys who died of CTE after that date, then you're not covered at all — I don't agree with that," said Wooden, a headline plaintiff in the lawsuit.

Steven Molo, Morey's attorney, said it's like "having a settlement for an asbestos case without providing for compensation for asbestosis."

Mitnick says that's not true. He said the compensation cutoff dates for CTE-related deaths resulted from negotiation. He said the NFL wanted to cover no deaths before 2010 but that the plaintiffs' attorneys negotiated it back to 2006. Mitnick also said the July 7 cutoff was added to take away any financial incentive for suffering players to commit suicide.

"Initially the league was willing or at least considering paying any guy who died and whose brain was examined and found to have CTE — they would be put in a category," Mitnick said. "But then the players themselves, some of them made comments that they were going to take their own lives because they weren't going to wait until they were in a wheelchair. These were emotional players. The league took that as, 'We have to change this. It's going to incentivize guys to take their own lives.'"

He notes that CTE currently only can be diagnosed after death. He said those who currently might be living with CTE will be covered if they have qualifying symptoms of cognitive impairment.

It was part of the tradeoffs, he said.



Sean Morey played in the NFL from 1999-2009, and is now one of the plaintiffs opposed to a proposed settlement.*(Photo: Ross D. Franklin, AP)*

'BROTHERS OF MINE'

Among the biggest concessions won by the plaintiffs is that the ex-players don't need to show causation in order to collect benefits. They just need to show qualifying symptoms, not how those symptoms were caused, which can be difficult.

With CTE, Mitnick said many ex-players might have the disease but won't experience adverse cognitive symptoms while they are alive, much like living with "a benign tumor," he said.

"That's why the league said this settlement has to be symptomatically based," Mitnick said. "This is for the guys who really need the help. It's not meant to be a money jar for guys to all get money."

In Morey's opinion, too much was given away to the NFL. Many common CTE symptoms are neurobehavioral and can lead to hardship in family and work life — rage, emotional instability and impulsivity. But ex-players with these symptoms won't qualify for treatment or compensation in the settlement unless their condition includes cognitive impairment, Morey said.

Why wouldn't these symptoms be part of the settlement?

Morey said a plaintiffs' attorney told him the NFL pushed away from the bargaining table when the discussion turned to neurobehavioral symptoms.

"When they push away from the table, they know that's the issue we're dealing with," Morey said. "It's a cost they don't want to incur because it's what the majority of players suffer with."

Molo also said the settlement is a "complete set-up for failure" because it doesn't adequately provide for advances in medical science. For example, if CTE soon can be diagnosed in living persons, shouldn't such a diagnosis qualify for compensation then?

The proposed agreement states the NFL and plaintiff attorneys shall meet to discuss possible changes to the deal "in light of generally accepted advances in medical science." Such meetings must happen at least once every 10 years, and any changes require the approval of both parties.

Molo says this provision is "outrageous" because 10 years is too long. "And both sides have to agree, so if the NFL just disagrees with it, that's the end of it," he said.

Meanwhile, the end of this debate appears far from over. Wooden see it as part of the process.

The objectors "are brothers of mine," he said. "Am I going to agree with everything all 18,000 players (in the class) think? But when you are doing stuff like this stuff, you have to look at, 'Are we delaying the process for guys who need it now? Are we doing the best we can do and getting the best we can get?'"

*Follow Brent Schrotenboer on Twitter @Schrotenboer (http://twitter.com/schrotenboer). E-mail: bschrotenb@usatoday.com*

**RELATED VIDEO**



**NFL power rankings: Cowboys, Browns on the rise**