UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION<br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _<br><br>**THIS DOCUMENT RELATES TO:**<br><br>**ALL ACTIONS** | No. 12-md-2323 (AB)<br><br>MDL No. 2323 |

**CO-LEAD CLASS COUNSEL'S RESPONSE TO
BRAIN INJURY ASSOCIATION OF AMERICA'S MOTION FOR LEAVE TO FILE
AMICUS CURIAE BRIEF
[ECF No. 6180]**

## I.  INTRODUCTION

Presently before the Court is Brain Injury Association of America's (BIAA) Motion For Leave To File An Amicus Curiae Brief [ECF No. 6180], BIAA's second attempt to inject itself into this litigation.  Co-Lead Class Counsel oppose this motion because BIAA – an attorney-sponsored advocacy organization[1] – cannot satisfy any of the well-established requirements to participate as an *amicus curiae*.  It has no interest in the case, much less a "special interest," because it does not represent any individuals with a legally cognizable interest in the litigation. All interested individuals are more than adequately represented by competent counsel.  The information it proffers is neither timely nor useful, as it waited several months to file its motion, it misunderstands key components of the settlement, and numerous objectors, along with their putative experts, have already presented the same information to the Court.  And, notwithstanding its claimed neutrality, it is obviously partial to the objectors.  Indeed, demonstrating this alignment, one group of objectors has expressly adopted BIAA's positions.

---
[1] *See* BIAA website, http://www.biausa.org/index.htm (identifying several "preferred attorneys" as its sponsors).

BIAA's primary motive apparently is to guide the allocation of the settlement's $10 million Education Fund, perhaps with the hope of securing some of those funds for its own programs. But the allocation of the Education Fund is not an issue presently before the Court, so BIAA's claimed interest in the issue cannot justify its participation as an *amicus curiae* at this stage. If and when the settlement becomes effective, Co-Lead Class Counsel will be more than willing to consider BIAA's views on the most effective ways to allocate the Education Fund.

Permitting the BIAA to participate as an *amicus curiae* and, in essence, act as an additional objector to a class settlement that in no way affects its interests will not assist the Court in evaluating the fairness and adequacy of the settlement. Instead, it will needlessly impose a burden on the Court to review another brief, and on the parties to prepare another response, and will impermissibly allow an organization to influence litigation in which it really has no stake.

BIAA's Motion should be denied.

## II.   BACKGROUND

BIAA first attempted to inject itself into this litigation almost a year ago, with its unusual request to be designated as an *amicus curiae* with the right to review the proposed settlement and relevant documents even before they were presented to the Court and Class. [ECF No. 5608.] Co-Lead Class Counsel opposed that request because it was premature, the Court already had appointed a Special Master to evaluate the financial aspects of the settlement, and BIAA had not demonstrated any need for its designation as an *amicus curiae*. [ECF No 5633.] The Court ultimately denied BIAA's motion as moot after it denied preliminary approval to the initial, capped settlement. [ECF No. 6103.]

Over three months ago, on July 7, 2014, this Court issued its Order granting Plaintiffs' motion for preliminary approval of the revised, uncapped settlement. [ECF No. 6083.] BIAA, however, waited almost three months, until September 30, 2014, to file the present motion, seeking leave to file an *amicus* brief at some unspecified time prior to the fairness hearing. In its motion and memorandum of law, BIAA claims that it has two "unique interests" in this case that support its request to file an *amicus* brief. First, it claims to have an interest in the allocation of the settlement's $10 million Education Fund, despite the fact that such allocation decisions are not presently before the Court. Second, it claims, without any explanation, that this settlement will have "an immense effect not only on the parties involved here, but also on all current and future victims of brain injury," and that it is uniquely qualified to advise the Court regarding the fairness of the settlement. [ECF No. 6180-1 at 1.] Neither of these purported interests justifies its participation as an *amicus curiae.*

### III.    ARGUMENT

The decision whether or not to allow the filing of an *amicus curiae* brief is "a matter of judicial grace." *Nat'l Org.for Women, Inc. v. Scheidler*, 223 F.3d 615, 616 (7th Cir. 2000). Several established principles have emerged from decisions on the subject to guide the Court's discretion. First, leave to participate as *amicus curiae* should be denied when the petitioners "do not purport to represent any individual or organization with a legally cognizable interest in the subject matter at issue, and give only their concern about the manner in which [the] court will interpret the law as the basis for their brief." *American College of Obstetricians & Gynecologists v. Thornburgh*, 699 F.2d 644, 645 (3d Cir. 1983). Second, leave should be denied "[w]hen a court determines the parties are already adequately represented and participation of a potential *amicus curiae* is unnecessary because it will not further aid in consideration of the

3

relevant issues." *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65, 82 (D.N.J. 1993).  Third, leave should be denied when the proffered brief is partisan in nature.  *See Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) ("The term 'amicus curiae' means friend of the court, not friend of the party."); *Leigh v. Engle*, 535 F. Supp. 418, 420 (N.D. Ill. 1982) ("[I]f the proffer comes from an individual with a partisan, rather than an impartial view, the motion for leave to file an amicus brief must be denied.").  Fourth, leave should be denied when the proffered brief "merely duplicates the brief of one of the parties." *Scheidler*, 223 F.3d at 617.

Additionally, "[a]t the trial level, where issues of fact as well as law predominate, the aid of *amicus curiae* may be less appropriate than at the appellate level." *Liberty Lincoln Mercury, Inc.*, 149 F.R.D. at 82 (quoting *Yip v. Pagano*, 606 F. Supp. 1566, 1568 (D.N.J. 1985)).  Similarly, "a district court lacking joint consent of the parties should go slow in accepting, and even slower in inviting, an amicus brief unless . . . the party has a special interest that justifies his having a say, or unless the court feels that existing counsel may need supplementing assistance." *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970).

In sum, as this Court has recognized, *amicus curiae* status is generally granted only when "(1) the petitioner has a 'special interest' in the particular case; (2) the petitioner's interest is not represented competently or at all in the case; (3) the proffered information is timely and useful; and (4) the petitioner is not partial to the outcome in the case." *Liberty Resources, Inc. v. Philadelphia Housing Authority*, 395 F. Supp. 2d 206, 209 (E.D. Pa. 2005).  BIAA cannot meet any of these requirements.

### A. BIAA Has No Special Interest In This Case.

To satisfy the "special interest" requirement, the petitioner generally must either have (1) "a direct interest in another case, and the case in which he seeks permission to file an amicus curiae brief may, by operation of stare decisis or res judicata, materially affect that interest," *Scheidler*, 223 F.3d at 617,[2] or (2) "represent [an] individual or organization with a legally cognizable interest in the subject matter at issue," *Thornburgh*, 699 F.2d at 645.  BIAA cannot satisfy this requirement.  It does not have an interest in another case that will be materially affected by the outcome of this litigation, nor does it represent any individuals or organizations that have a legally cognizable interest in this litigation.

The two "special interests" it claims to have do not withstand scrutiny.  First, it claims to have an interest in ensuring that the settlement's $10 million Education Fund is "directed toward educational projects with the greatest scientific backing and benefit for players and the public," and that its participation is necessary because "there is no particular reason to expect either the plaintiffs or the defendants to care, to any meaningful degree, how the money for brain injury education is allocated."  [ECF No. 6180-1 at 3-4.]  The accusation that neither plaintiffs nor defendants care about how the Education Fund is allocated is baseless and offensive.  In addition, BIAA has misunderstood the nature of the Education Fund.  It is not a general purpose research fund that will be available for brain injury research for the public at large. Rather, the fund will be available "to fund programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of Retired NFL Football Players regarding the NFL CBA Medical and Disability Benefits programs and

---

[2] *See also Neonatology Associates, P.A. v. C.I.R.*, 293 F.3d 128, 130, 133 (3d Cir. 2002) (finding that proposed *amici* had an adequate interest in the litigation because one of the parties intended to induce the court to address an issue that would impact the rights of the proposed *amici* in a related case).

other education initiatives benefitting Retired NFL Football Players." [ECF No. 6073-2 at 63.] BIAA does not claim to have any expertise with respect to, or interest in, these football-specific issues.

Additionally, any guidance BIAA could offer with respect to the allocation of the Education Fund is completely irrelevant to the issue presently before the Court: whether to grant final approval to the settlement. All that matters at this point is whether the settlement is "fair, reasonable, and adequate," and whether the requirements for class certification are satisfied. Fed. R. Civ. P. 23. The allocation of the Education Fund will occur only if, and after, the settlement becomes effective, and will require Court approval at that time. [ECF No. 6073-2 at 63, 79.] Only then might BIAA's proposed input on this topic be of any conceivable relevance.

The second "special interest" BIAA claims to have is that it is "uniquely qualified to help the Court evaluate questions of fairness with respect to the eligibility parameters and compensation levels in the proposed settlement." [ECF No. 6180-1 at 3.] But merely being qualified to offer advice does not constitute a "special interest" in a case. *See Thornburgh*, 699 F.2d at 645. To bolster its claimed interest in the litigation, BIAA exaggerates the reach of the settlement. It claims that the Court's "decision will have an immense effect not only on the parties involved here, but also on all current and future victims of brain injury." [ECF No. 6180-1 at 1.] But, it fails to explain how the settlement will in any way affect anyone besides Class members and the NFL parties. While there is, no doubt, great public interest in the settlement, due to the popularity of the NFL, the proper focus of the evaluation of the fairness of the settlement is limited to the parties and Class members whom it will benefit and bind. What import this settlement may have on unrelated "future victims of brain injury" is simply not part of the proper calculus at the fairness hearing. Thus, BIAA's claim to represent this broader class

6

of current and future victims is irrelevant, because its interests, much less its legally cognizable interests, will not be affected by this litigation.

This case, therefore, is significantly different than *Liberty Resources, Inc.*, 395 F. Supp. 2d at 209, in which this Court granted a petitioner leave to participate as an *amicus curiae*. In that case, a disability rights advocacy group brought suit against a housing authority for failing to provide sufficient accommodations to disabled tenants. *Id.* at 207. The plaintiff sought discovery of certain documents that could reveal confidential information of non-disabled public housing residents. *Id.* at 207-08. Another advocacy group, RAB, which represented residents of public housing, then sought to intervene to protect the privacy rights of all public housing residents. *Id.* at 208. This Court permitted RAB to participate as an *amicus curiae* because it had a "'special interest' in ensuring that the rights of nonparty, non-disabled [public housing] tenants are represented in the litigation," and that interest was not adequately represented by the parties, since the plaintiff "must advocate for the rights of disabled tenants exclusively," and the defendant "may ultimately need to make concessions to disabled tenants at the expense of non-disabled tenants." *Id.* at 209.

This case is nothing like *Liberty Resources* because BIAA does not represent or advocate on behalf of any individuals whose rights could be affected by this litigation. Unlike *Liberty Resources*, this case does not involve "the proper allocation of limited federal government resources among numerous competing stakeholders." *Id.* at 210. Besides the parties to this action – the NFL parties and the Class – there simply are no other competing stakeholders. *Liberty Resources*, therefore, does not support BIAA's motion.

### B. The Parties And BIAA's Interests Are Competently Represented.

BIAA cannot satisfy the second requirement for participation as an *amicus curiae* because the parties and BIAA's claimed interests are competently represented in this litigation. BIAA does not dispute that Class Counsel and the NFL parties' counsel have competently represented their clients, nor can it. In addition, numerous objectors represented by skilled and competent counsel have already filed detailed objections, along with declarations from physicians, challenging, as BIAA intends to do, certain aspects of the settlement. [*See, e.g.,* ECF Nos. 6201, 6226, 6232, 6242.] Because the parties and BIAA's claimed interest in challenging the fairness of the settlement are more than adequately represented in this litigation, its participation as an *amicus curiae* is unwarranted. See *Scheidler*, 223 F.3d at 617.

### C. BIAA's Proffered Information Is Neither Timely Nor Useful.

BIAA cannot satisfy the third requirement for filing an *amicus curiae* brief because its request is untimely and the information it proffers is not useful. After jumping the gun by attempting to inject itself into this litigation even before the initial settlement agreement was finalized, BIAA inexplicably waited almost three months after the Court granted preliminary approval of the revised settlement to file the present motion. Now, with just a month left until the fairness hearing, BIAA requests leave to file a brief at some unspecified time prior to the fairness hearing. Although it attached a short declaration from its members outlining several issues it wishes to address, it chose not to attach its proposed brief to its motion. Permitting it to now file a full brief less than a month before the fairness hearing, when it could have presented its request months ago, would needlessly impose a "burden of study and the preparation of a possible response on the parties," *Scheidler*, 223 F.3d at 617, who are already occupied

preparing their presentations for the final fairness hearing and drafting responses to the objections that have been timely filed.

In addition, the information it seeks to present will not be useful to the Court, because it merely "repeat[s] the arguments already submitted by" the objectors. *See Liberty Lincoln Mercury*, 149 F.R.D. at 83. In particular, according to the declaration attached to its motion, BIAA intends to criticize the eligibility criteria for compensation, the offsets for Eligible Seasons and a prior stroke, the connection between age of diagnosis and compensation level, the requirement that diagnosing physicians be board certified, and the pharmacy and treatment benefits of the Baseline Assessment Program. [ECF No. 6180-2 at 3-9.] All of these arguments have already been raised by objectors, some of whom have also presented declarations from physicians. [ECF Nos. 6201, 6226, 6232, 6242.] Indeed, one group of objectors has expressly adopted BIAA's arguments and attached BIAA's declaration to its objection. [ECF No. 6233.] In addition, the parties will be presenting testimony from physicians and other experts at the fairness hearing to address the scientific issues pertinent to the settlement. As a result, BIAA's proffered information will not "add anything consequential to [the Court's] consideration of this case." *In re Halo Wireless, Inc.*, 684 F.3d 581, 596 (5th Cir. 2012); *Ryan*, 125 F.3d at 1064 (denying leave to file an *amicus* brief that "echoes" the parties' briefs).[3]

### D. BIAA Is Partial To The Objectors.

BIAA cannot satisfy the final requirement for participation as an *amicus curiae* because it is transparently opposed to the current settlement, and seeks to be, in essence, an objector, even though it obviously lacks standing. BIAA's patently partisan view of the settlement is evident

---

[3] BIAA also claims that its expertise will enable it to advise the Court on the fairness of any allocation of funds toward education activities. [ECF No. 6180-1 at 5.] But, as discussed earlier, the allocation of the Education Fund is not at issue at this juncture, and thus the BIAA's knowledge with respect to education will not be "useful" to the Court at this time.

from the fact that, despite the indisputable, substantial benefits that the settlement provides Class members, BIAA does not say a ***single*** positive word about it.  Rather, its motion and memorandum and the declaration of its members exclusively criticize aspects of the settlement.  This hardly comports with the "objective, dispassionate, neutral discussion of the issues" that an *amicus curiae* is required to provide.  *United States v. Gotti*, 755 F. Supp. 1157, 1159 (E.D.N.Y. 1991).

Moreover, permitting BIAA essentially to act as an additional objector to the settlement would be inconsistent with the well-established principle that only members of the Class have standing to object to the class settlement.  *See In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 28-29 (D.C. Cir. 2000).  The overwhelming majority of the Class has shown its support for the settlement by choosing neither to object nor to opt out.  It would be patently unfair to the thousands of Class members who support the settlement to permit an organization that has no real stake in this litigation to interfere with it.  *Cf. Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922, 931 (E.D. Mich. 2007) (rejecting as "unacceptable" a conditional objection that "would countenance the practice of influencing litigation – or attempting to do so – in which the class member really has no stake").  The fact that BIAA offers no unique or objective information and only serves to inject additional partisan argument into this litigation should disqualify BIAA from *amicus* status.

### IV.     CONCLUSION

For the foregoing reasons, BIAA's motion to file an *amicus curiae* brief should be denied.

Dated:  October 17, 2014

                                                Respectfully submitted,

                                                 /s/ Christopher A. Seeger
Christopher A. Seeger
SEEGER WEISS LLP
77 Water Street
New York, NY 10005
Phone:  (212) 584-0700
Fax:  (212) 584-0799
cseeger@seegerweiss.com

**Co-Lead Class Counsel**

Sol Weiss
ANAPOL SCHWARTZ
1710 Spruce Street
Philadelphia, PA 19103
Phone:  (215) 735-1130
Fax:  (215) 735-2024

**Co-Lead Class Counsel**

### CERTIFICATE OF SERVICE

It is hereby certified that a true copy of the foregoing was served electronically via the Court's electronic filing system on the 17th day of October, 2014, upon all counsel of record.

Dated:  October 17, 2014

                                                 /s/ Christopher A. Seeger
Christopher A. Seeger