UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : No. 2:12-md-02323-AB<br>:<br>: MDL No. 2323<br>: |
| | : Hon. Anita B. Brody |
| THIS DOCUMENT RELATES TO: | : |
| ALL ACTIONS | :<br>:<br>: |

**CO-LEAD CLASS COUNSEL'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR AN ORDER PROHIBITING IMPROPER
COMMUNICATIONS WITH THE CLASS BY MOLOLAMKEN LLP**

**I.     INTRODUCTION**

Co-Lead Class Counsel have worked diligently to present to their clients, the proposed class of Retired NFL Football Players, and the Court, a comprehensive and effective settlement that fully satisfies the fair, reasonable and adequate standard for final approval of *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).   On July 7, 2014, this Court recognized that one milestone towards Co-Lead Class Counsel meeting that goal was passed when it preliminarily approved the Settlement Agreement as of June 25, 2014, and provisionally certified the class.   Following this Court's Preliminary Approval Order, notice to the class issued through the U.S. Mail, print and broadcast media, and the internet, specifically through this Court's *officially sanctioned website* www.nflconcussionsettlement.com.

Immediately following this Court's Preliminary Approval Order, the settlement was widely commented upon in the press and discussed elsewhere.   Amongst the few dissenters, seven (7) NFL Retired Football Players including Sean Morey, Robert S. Royal, Jr., Roderick R. Cartwright, and Benjamin Hamilton, Alan Faneca, Jeff Rohrer, and Sean Considine, filed motions

1

and other papers opposed to the settlement.  These seven class members were all represented by the same counsel, Steven Molo of MoloLamken LLP, and their co-counsel, Linda S. Mullinex, Esq., and Hangley Aronchick Segal Pudlin & Schiller.  Amongst the papers they filed were:

1) Petition of Objecting Class Members Pursuant to Fed. R. Civ. P. 23(f) for Leave To Appeal from the District Court's Order Granting Settlement Class Certification, Dkt. No. 14-8103 (3d Cir.)[1];

2) Appeal from the Order Denying Morey's Motion To Intervene, pursuant to 28 U.S.C. §1291 (ECF No. 6136)[2];

3) Response in Opposition to Motion for Preliminary Approval (ECF No. 6082);

4) Motion for Leave to Conduct Limited Discovery (ECF No. 6169);

5) Objections to the Settlement (ECF No. 6201); and

6) Supplemental Objections to the Settlement (ECF No. 6232).

All of these court filings are fairly described as being uncomplimentary to the Settlement Agreement, and indeed, in opposition to the realization of the Settlement Agreement. Throughout all of these court filings the seven players are described as petitioners, movants, or objectors.  But on October 14, 2014, four of these "objectors" submitted requests for exclusion from the settlement.  Specifically, Mssrs. Sean Morey, Robert S. Royal, Jr., Roderick R. Cartwright, and Benjamin Hamilton opted out of the settlement.  As a result, they are without

---

[1] By Order dated September 11, 2014, the Third Circuit denied this petition.  *See In re National Football League Players Concussion Injury Litigation*, Dkt. No. 14-8103 (3d Cir. Sept. 11, 2014).

[2] Attorney Molo moved to withdraw this second appeal to the Third Circuit following the loss of his appeal pursuant to Fed.R.Civ.P. 23(f).  *See In re National Football League Players Concussion Injury Litig.*, Dkt. No. 14-3693 (3d Cir. Sept. 12, 2014).

standing to object to the settlement.[3]  Yet, as recently, as October 21, 2014, Mr. Molo, and his co-counsel continue to identify these Retired NFL Players as movants who intend to appear and present objections at the November 19, 2014 Fairness Hearing.  *See, e.g.*, Motion of Sean Morey *et al.*, to Order Class Counsel and the NFL to Produce Evidence (ECF No. 6252).[4]  This cannot stand given the improper conduct of these objectors.

---

[3] Settlement class members have the right to participate in the fairness hearing or to opt out of it entirely.  Settlement class members are not entitled to have it both ways.  *See Rubenstein, Newberg on Class Actions* § 13:23 at 363 (5th ed. 2014) ("[C]lass members may either object or opt out, but they cannot do both.").  Indeed, being an opt-out or an objector are "mutually exclusive options."  *Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922, 935-36 (E.D. Mich. 2007)("[N]either the public interest nor the interest of the greater class is served by allowing disgruntled members to exercise both options.").  Lodging an objection to a proposed settlement is "an act wholly inconsistent with any intent to be excluded from the class." *Mortimer v. River Oaks Toyota, Inc.*, 663 N.E.2d 113, 117 (Ill. App. Ct. 1996) (decided under Illinois' analog to Rule 23(e)).  *See also Mayfield v. Barr*, 985 F.2d 1090, 1090 (D.C. Cir. 1993) (opt-outs "have no standing to challenge the court's approval of the Agreement as it relates to the class action").

[4] MoloLamken, Professor Mullinex and Hangley, Aronchick, Segal Pudlin & Schiller are the same counsel concurrently representing three (3) known class members who have not opted out of the settlements, namely, Alan Faneca, Jeff Rohrer and Sean Considine, and who, subject to their objections, will receive settlement benefits, and who, therefore, have interests directly adverse to the four (4) known opt-out clients of MoloLamken and co-counsel.  This situation creates an impermissible conflict of interest for these counsel in violation of governing ethical rules, and it renders them unqualified to represent any plaintiff in these proceedings.  *See In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 162 (3d Cir. 1984), *cert. denied*, 472 U.S. 1008 (1985).  In order to fulfill that promise of fidelity, an attorney must not actively represent clients who have interests adverse to one another.  *See generally* Pa.R.Prof.Conduct 1.7.  And while the conflict may be relaxed in the context of a class action, *Corn Derivatives,* 748 F.2d at 164 (Adams, J., concurring), the circumstances justifying such relaxation are not present here.  *See Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 589-90 (3d Cir. 1999)(class counsel's ethical duties to his client, the class representative plaintiff, were relaxed in the context of a class action settlement because class counsel owed a broader duty to the class as a whole).  MoloLamken and co-counsel have not been appointed as class counsel in this case, and thus, they are not entitled to the relaxed standard.  They should be required to cure their conflict by withdrawing their representation from one of their two camps of clients.

Since October 3, 2014, MoloLamken's clients have been operating a counterfeit website to the official settlement website approved by this Court on July 7, 2014.[5] The website is similarly named, www.nflconcussionsettlementfacts.com. Co-Lead Class Counsel have learned the creation date of the misleading website through Register.com, which only provides the alias name of the entity or person responsible for creating the website.[6] Although Sports Illustrated reports that the seven MoloLamken objectors sponsored the website, it is believed that MoloLamken assisted with the creation of the counterfeit website since the website provides a link to the MoloLamken law firm's official website.[7] And, the MoloLamken website has a link offering visitors an objection form for them to complete to object to the Settlement Agreement.[8]

The counterfeit website, www.nflconcussionsettlementfacts.com, is plainly designed to confuse, mislead and deceive class members into objecting or opting out of the Settlement

---

[5] *See Ex-NFL Players Launch Website About League's Concussion Settlement*, posted Oct. 9, 2014 on http://www.si.com/nfl/2014/10/09/nfl-concussion-settlement-facts-website ("The website was recently commissioned by Roderick "Rock" Cartwright, Sean Considine, Alan Faneca, Ben Hamilton, Sean Morey, Jeff Rohrer and Robert Royal."). *See also* http://www.register.com/whois.rcmx, last visited October 23, 2014 (stating that the website was created on October 3, 2014)[Attached hereto as Exhibit "A"].

[6] *See* Register.com search results, Exhibit "A."

[7] The link, "Click here for a complete guide to both the objection and joining the effort," exists on the page entitled, "How to Participate in, Opt-In, Opt-Out and Object." *See* http://www.nflconcussionsettlementfacts.com/site/how_to_optin.html, a copy of which is attached hereto as Exhibit "B." Also included within Exhibit B are the "source codes" for this page, evidencing that the "Click here" drives the user to the MoloLamken website.

[8] Co-Lead Class Counsel are also aware of at least twenty-five objectors that completed and submitted an Objection Form obtained from the MoloLamken website. *See* http://www.mololamken.com/objection-nfl-concussion-litigation.html, attached hereto as Exhibit "C." Also, included in Exhibit C are the MoloLamken Objection Form itself, and another page of their website describing their objections. The objections of the twenty-five objectors using this Objection Form have not yet been filed via ECF with the Court, however, they will be filed shortly and can be made available in advance of being filed.

Agreement.   This unauthorized communication with the class is plainly improper and abusive. This is especially the case as the website is replete with incorrect and false representations masquerading as fact.   For example:

* The tests offered in the BAP are not designed to measure brain injury but are intended to promote a lack of cooperation.[9]

* The BAP tests are culturally biased against NFL players who emerged from poor school systems.[10]

* If you are African-American, the settlement is tilted against you, since you are more likely to have hypertension and more likely to suffer a stroke.[11]

* "The NFL and the plaintiffs' lawyers have called the settlement "uncapped."   As recently-retired players are aware, everyone should be cautious when hearing the league use that term. The total amount of theoretical compensation to all retirees is uncapped - but the specific payments to each player and/or their families are VERY MUCH CAPPED."[12]

* The only way one gets a settlement so poorly structured is if one side knows what it wants while the other side's representatives are only interested in quickly getting paid. No settlement is perfect. Compromise is part of the effort. This settlement clearly does not reflect compromise, but capitulation.[13]

---

[9]*See* http://www.nflconcussionsettlementfacts.com/site/what_is_wrong_with_the_settlement.html.

[10]*Id.*

[11]*Id.*

[12]*See* http://www.nflconcussionsettlementfacts.com/site/letter_to_nfl_player.html.

[13]*See* http://www.nflconcussionsettlementfacts.com/site/what_is_wrong_with_the_settlement.html.

> \*      The website also includes a "Calculator" where a person can input certain information such as "Brain condition" "Age of Diagnosis", "Seasons Played in the NFL", "Strokes suffered", etc., that does not precisely adhere to the terms of the Settlement Agreement and is therefore misleading.[11]

These statements are not judicially approved, and they are far from the neutral, truthful and accurate standard applicable to judicially sanctioned communications with class members. Inappropriate communications with the class such as these are properly prohibited in class action proceedings as they undermine this Court's authority over the settlement proceedings.

## II. ARGUMENT

**The Court Has Broad Authority To Prohibit and Regulate Improper Communications with Class Members Pursuant to Federal Rule of Civil Procedure 23(d) and Should Exercise That Authority To Curtail These Improper Communications**

District courts have broad discretionary powers under Fed.R.Civ.P. 23(d) to supervise communications with class members. Rule 23(d), in relevant part, states:

> **Conducting the Actions.** (1) In General. In conducting an action under this rule, the court may issue orders that:
>
> (B) require – to protect class members and fairly conduct the action – giving appropriate notice to some or all class members of:
>
> (i) any step in the action …
>
> (iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action.

Fed. R. Civ. P. 23(d)(1)(B)(i),(iii). Many courts have found that this regulatory power is adjunct to the authority of the courts themselves. In *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), the Supreme Court explained these plenary powers:

---

[11] *See* http://www.nflconcussionsettlementfacts.com/site/NFLSettlementCalculator.html.

> [A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.

*Id.* at 100.   *See also Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985) and *In re Federal Skywalk Cases*, 97 F.R.D. 370, 377 (W.D. Mo. 1983).   Rule 23(d) provides this Court broad authority to manage the conduct of class actions at "any step in the action," not only after class certification.   *See Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 171 (1989); *see also Gulf Oil Co.*, 452 U.S. at 100-01.

    Courts have long recognized the potential for abuse that may occur when a party or its counsel communicate with members of a class or proposed class.   *See Gulf Oil Co.*, 452 U.S. at 99-100; *In re School Asbestos Litig.*, 842 F.d 671, 679 -80 (3d Cir. 1988); *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 601-02 (2d Cir. 1986); *Kleiner*, 751 F.2d at 1201-03.   Specifically, misleading communications to class members or putative class members regarding the litigation pose a significant threat to the fairness of the proceedings, the fundamental rights of parties, the adequacy of representation and the general administration of justice generally.   *In re School Asbestos Litig.*, 842 F.2d at 680; *See Waldo v. Lakeshore Estates, Inc.*, 433 F.Supp. 783, 790-91 (E.D. La. 1977), *appeal dismissed*, 579 F.2d 642 (5th Cir. 1978) ("Unapproved communications to class members that misrepresent the status or effect of the pending action also have an obvious potential for confusion and/or adversely affecting the administration of justice."). "Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of one-sided presentation of the facts, without opportunity for rebuttal.   The damage from misstatements could be irreparable."   *Kleiner*, 751 F.2d at 1203.

Because of the potential for abuse, district courts have "both the duty and the broad authority to...enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co.*, 452 U.S. at 100; *In re School Asbestos Litig.*, 842 F.2d at 679-80. In *Gulf Oil v. Bernard*, the Supreme Court advised courts that any order regulating communications with putative class members should be "based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil*, 452 U.S. at 101. "The judge has ultimate control over communications among the parties, third parties, or their agents and class members on the subject matter of the litigation to ensure the integrity of the proceedings and the protection of the class." Manual for Complex Litigation, Fourth §21.33, at 300 (2004)[hereafter "MCL"].

In discussing the requirements for an order regulating communications with potential class members, the Supreme Court in *Gulf Oil* quoted *Coles v. Marsh*, 560 F.2d 186 (3d Cir. 1977), *cert. denied*, 434 U.S. 985 (1977):

> [T]o the extent that the district court is empowered...to restrict certain communications in order to prevent frustration of the policies of Rule 23, it may not exercise the power without a specific record showing by the moving party of the particular abuses by which it is threatened. Moreover, the district court must find that the showing provides a satisfactory basis for relief and that the relief sought would be consistent with the policies of Rule 23 giving explicit consideration to the narrowest possible relief which would protect the respective parties.

*Coles*, 560 F.2d at 189 (quoted in *Gulf Oil,* 452 U.S. at 102). In seeking an order limiting a party's communications with putative Class Members, plaintiffs must show that a restricting order would guard against the likelihood of serious abuses. *Gulf Oil*, 452 U.S. at 104. Plaintiffs do not have to show actual harm. *See Jennifer v. Delaware Sold Waste Authority*, 1999 WL 117762 (D. Del. Feb. 25, 1999). Showing that the "interests embodied in Rule 23 might be hindered is a

sufficient finding upon which to base an order limiting contacts." *See Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 633 (N.D. Tex. 1994).

Following *Gulf Oil*, many courts have been confronted with the need to supervise inherently coercive communications with absent class members. That is the issue presented in this litigation. In these situations, courts almost uniformly order limitations on such communications, if not curtailing the communications altogether. *In re School Asbestos Litig.*, 842 F.2d 671 (3d Cir. 1988); *In re Community Bank of Northern Virginia,* 418 F.3d 277 (3d Cir. 2005); *Georgine v. Amchem Prods., Inc.*, 160 F.R.D. 478 (E.D. PA. 1995); *Haffer v. Temple University*, 115 F.R.D. 506, 512 (E.D. Pa. 1987); *see Kleiner v. First National Bank of Atlanta*, 751.2d 1193 (11th Cir. 1985); *Erhardt v. Prudential Group, Inc*., 629 F.2d 843, 845 (2d Cir. 1980); *In re Federal Skywalk Cases*, 97 F.R.D. 370, 377 (W.D. Mo. 1983); *Impervious Paint Industries, Inc. v. Ashland Oil*, 508 F. Supp. 720, 722-24 (W.D. Ky.) *appeal dismissed without opinion*, 659 F.2d 1081 (6th Cir. 1981); *Tedesco v. Mishkin*, 629 F. Supp. 1474, 1484 (S.D.N.Y. 1986); *Resnick v. American Dental Ass'n*, 95 F.R.D. 372, 376-377 (N.D. Ill. 1982); *Bower v. Bunker Hill Co*., 689 F. Supp. 1032, 1033-34 (E.D. Wash. 1985); *Zarate v. Younglove*, 86 F.R.D. 80 (C.D. Cal. 1982); *Ralph Oldsmobile, Inc. v. General Motors Corp.*, 2001 WL 1035132, *2 (S.D.N.Y. Sept. 7, 2001); *Jenifer v. Delaware Solid Waste Authority*, 1999 WL 117762 (D. Del. Feb. 25, 1999); *Burrell v. Crown Ent. Petroleum, Inc.*, 176 F.R.D. 239, 242-43 (E.D. Tex. 1997).

In *Erhardt*, the Second Circuit recognized that it was the responsibility of the district court to prevent any unauthorized notices to class members:

> It is the responsibility of the court to direct the "best notices practicable" to class members, Rule 23(c)(2), and to safeguard them from unauthorized, misleading communications from the parties or their counsel. Unapproved notices to class members which are factually or legally incomplete, lack objectivity and neutrality, or

> contain untruths will surely result in confusion and adversely affect the administration of justice. To prevent abusive practices in the absence of a local rule, the court should include in its order of notice a provision limiting within constitutional parameters any unauthorized correspondence by parties and their counsel with class members.

*Erhardt*, 629 F.2d at 846.

Of particular concern are communications by parties with putative class members that are misleading as to a proposed settlement, the status of pending class action, or that induce class members to opt-out or not cooperate with class counsel. *See In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp.2d 1239, 1244, 1245 (N.D. Cal. 2000) (finding that "solicitation materials were misleading, if not intentionally deceptive" and recognizing that while there may be "circumstances in which putative class members would seek separate representation and enter into agreements with their attorneys that give the attorneys authorization to opt out of a class," "when the agreements are solicited by mass mailings or over the internet … the prospects for abuse are simply too great"). *See also In re School Asbestos Litigation*, 842 F.2d at 682; *In re Community Bank of Northern* Virginia, 418 F.3d at 311-312; *Georgine*, 160 F.R.D. at 490; *Haffer*, 115 F.R.D. at 512-513; *Kleiner*, 751 F.2d at 1202; *Ralph Oldsmobile, Inc.*, 2001 WL 1035132 at *4-6; *Jenifer*, 1999 WL 117762 at *2; *Hampton Hardware*, 156 F.R.D. at 633; *Impervious Paint*, 508 F. Supp. at 721-723; *In re Lupron Marketing and Sales Practices Litigation*, No. 01-cv-10861-RGS, 2004 WL 3049754 (D. Mass. Dec. 21, 2004).

In the instant matter, the Molo clients' solicitations of opt-outs and objections from class members have obstructed the orderly process contemplated by this Court. An Order protecting class members and otherwise protecting the integrity of the class action process is therefore appropriate. A curative notice published at MoloLamken's expense would be justified but simply

requiring MoloLamken to pull down the improper website and links on the MoloLamken website should suffice.  *See* MCL §21.33 at 300 n. 917 ("Corrective or prophylactic notice to potential class members may ordered under Rule 23(d)(2) at any stage of the proceedings").

### III.     CONCLUSION

For the reasons stated, the improper conduct of MoloLamken should be prohibited. Co-Lead Class Counsel's motion to prohibit improper communications with the class should be granted.   And MoloLamken should be ordered to either take down the website, www.nflconcussionsettlementfacts.com, or submit an affidavit declaring under penalty of perjury that none of the lawyers from that firm, or its co-counsel, had any involvement with the registering, maintaining or providing content to that website, and that their clients have been instructed to remove any links to the firm's website.

Dated: October 24, 2014                                               Respectfully submitted,

/s/ Christopher A. Seeger
Christopher A. Seeger
SEEGER WEISS LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

**Co-Lead Class Counsel**

Sol Weiss
ANAPOL SCHWARTZ
1710 Spruce Street
Philadelphia, PA 19103
Phone: (215) 735-1130
Fax: (215) 735-2024
sweiss@anapolschwartz.com

**Co-Lead Class Counsel**

## CERTIFICATE OF SERVICE

It is hereby certified that a true copy of the foregoing was served electronically via the Court's electronic filing system on the 24th day of October, 2014, upon all counsel of record.

Dated: October 24, 2014

/s/ Christopher A. Seeger
Christopher A. Seeger
