**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>        Plaintiffs,<br><br>              v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br><br>        Defendants. | Civil Action No. 2:14-cv-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**MEMORANDUM IN OPPOSITION TO CO-LEAD CLASS COUNSEL'S MOTION FOR AN ORDER PROHIBITING IMPROPER COMMUNICATIONS WITH THE CLASS**

Co-Lead Class Counsel contend that a website hosted by seven Objectors to the proposed class action settlement is "counterfeit." Mem. 4. Objectors, however, have engaged in no effort to deceive the website's visitors regarding its sponsorship and content. They signed their names to the site's homepage and clearly identified themselves as Objectors. They stated that the purpose of the website is to explain their opposition to the Settlement. They did not make the website publicly available until after they filed their Objection on October 6, 2014. And the statements on the website are not false. In short, Co-Lead Class Counsel – who themselves have

spread misinformation about the terms and benefits of the Settlement for months[1] – have failed to carry their burden of showing that the website contains falsehoods that would warrant taking the site down.

In any event, Co-Lead Class Counsel's request is moot.  Co-Lead Class Counsel ask that the website be taken down because it could induce opt-outs and objections.  But the date for opting out and objecting to the settlement has passed.  Besides, while not required to do so under the law, Objectors have taken their website offline in an effort to keep all attention focused on the main issue currently pending in this litigation: whether the Settlement is fair, adequate, and reasonable.

## BACKGROUND

On October 6, 2014, Sean Morey, Alan Faneca, Jeff Rohrer, Sean Considine, Ben Hamilton, Robert Royal, and Roderick Cartwright (collectively, "Objectors") filed an 86-page objection to the proposed class action settlement ("Settlement").  Dkt. No. 6201.  The following day, Objectors launched a website to explain the grounds for their objection.[2]

The website (www.nflconcussionsettlementfacts.com) clearly identifies each of the seven Objectors by name.  The site identifies their status as objectors to the Settlement and their

---

[1] As noted in Objectors' objection, Co-Lead Class Counsel have engaged in a propaganda campaign that has compounded the false and misleading nature of the class notice.  *See* Dkt. No. 6201 at 38-53.  For example, Co-Lead Class Counsel stated that any player who "thinks he has any symptoms of" CTE will be compensated under the Settlement.  *Id.* at 49.  In an article that appeared on *profootballconcussions.com*, Co-Lead Class Counsel is quoted as saying "If you get sick, period, you still get paid."  *Id.* at 49-50.  And in *SportsIllustrated.com*, Co-Lead Class Counsel explained "There is no scenario where a player won't get paid."  *Id.* at 50.  These statements are untrue.  The Settlement does not compensate CTE's mood and behavioral symptoms.  Class members suffering from CTE who present only with mood and behavioral symptoms will not receive payment.  *See id.* at 49 & n.45.

[2] Co-Lead Class Counsel states that Objectors have been "operating" the website "[s]ince October 3, 2014."  Mem. 4 & Ex. A.  Although Objectors purchased the domain name on October 3, the website did not go "live" to the public until October 7, 2014.

purpose for creating the website on its homepage:  "Those of us objecting to the current deal want to share a summary of our position and the reasons we are standing up for a more fair, reasonable, and adequate settlement."  *Id.*  The site also notes Objectors' challenges to the Settlement (http://www.nflconcussionsettlementfacts.com/site/what_is_wrong_with_the_settlement.html), explains where class members can access the class notice (http://www.nflconcussion settlementfacts.com/site/what_if_i_did_not_receive_the_notice.html), and identifies many relevant deadlines (http://www.nflconcussionsettlementfacts.com/site/important_dates.html).  It even provides a link to the "Frequently Asked Questions" section of the Settlement website (http://www.nflconcussionsettlementfacts.com/site/what_if_i_did_not_receive_the_notice.html).

## ARGUMENT

### I.      Co-Lead Class Counsel Have Not Identified False or Misleading Communications That Would Warrant Taking the Website Down

"There is no *per se* bar on nonparty communications with class members."  *Newberg on Class Actions* § 9:10 (5th ed.).  Restrictions on communications with class members "involve 'serious restraints on expression'" under the First Amendment "and therefore, 'at [a] minimum, counsel[ ] caution . . . and attention to whether the restraint is justified by a likelihood of serious abuses."  *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 312 (3d Cir. 2005) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 104 (1981)); *see also In re Sch. Asbestos Litig.*, 842 F.2d 671, 680 (3d Cir. 1988) ("Orders regulating communications between litigants . . . pose a grave threat to first amendment freedom of speech.").  As a result, the moving party must make a "showing . . . of the particular abuses by which it is threatened."  *Gulf Oil*, 452 U.S. at 102.

To carry that burden, the movant must show that "the particular form of communication at issue is abusive in that it threatens the proper functioning of the litigation."  *Newberg on Class Actions* § 9:3 (5th ed.).  Truthful communications that are one-sided or not neutral do not qualify:

"[I]f one-sidedness [is] the only issue," the "communications at issue [are] not . . . actionable." *Georgine v. Amchem Prods., Inc.*, 160 F.R.D. 478, 496 n.29 (E.D. Pa. 1995); *see also Warnell v. Ford Motor Co.*, 189 F.R.D. 383, 391 (N.D. Ill. 1999) (finding "nothing improper" in communication that did not "tell [class members the defendant's] side of the story"); *Manual for Complex Litigation* § 21.33 (4th ed.) ("Objectors to a class settlement or their attorneys may not communicate ***misleading or inaccurate*** statements to class members about the terms of the settlement to induce them to file objections or to opt out." (emphasis added)).  However, when the "negative aspects of the settlement" were not included in the class notice, class members "rightfully can be informed of them."  *Georgine*, 160 F.R.D. at 496 n.29.

Co-Lead Class Counsel argue that the website is "plainly designed to confuse, mislead and deceive class members into objecting or opting out of the Settlement" and is "replete with incorrect and false representations masquerading as fact."  Mem. 4-5.  Co-Lead Class Counsel point to six statements.  Each of the alleged falsehoods that Co-Lead Class Counsel identify, however, is actually true:

- *"The tests offered in the BAP are not designed to measure brain injury but are intended to promote a lack of cooperation."*  Dr. Robert Stern, a leading researcher in CTE and neuropsychological testing, explained in his declaration in support of the Objection that the BAP testing battery would require "approximately five hours without any break" to complete and that "this length of testing would be excessive, ***would result in refusals to complete the evaluation***, and would result in inaccurate results."  Dkt. No. 6201-16 ¶ 44 (emphasis added).

- *"The BAP tests are culturally biased against NFL players who emerged from poor school systems."*  Dr. Stern noted that, to qualify as neurocognitively impaired under the Settlement, a "class member who . . . is in the Below Average category" for premorbid intellectual functioning "would have to perform more poorly on more tests [to qualify as cognitively impaired under the Settlement] than a Class Member who is in the Average or Above Average categories."  Dkt. No. 6201-16 ¶ 53.

- *"If you are African-American, the settlement is tilted against you, since you are more likely to have hypertension and more likely to suffer a stroke."*  As Objectors noted, "African-Americans are 1.3 times more likely to have a stroke

4

than others" and the Settlement imposes a 75% offset for stroke. Dkt. No. 6201 at 70 & n.84 (citing Ayala *et al.*, *Racial/Ethnic Disparities in Mortality by Stroke Subtype in the United States 1995-1998*, 154 Am. J. Epidemiology 1057 (2001)).

- *"The NFL and the plaintiffs' lawyers have called the settlement 'uncapped.' As recently-retired players are aware, everyone should be cautious when hearing the league use that term. The total amount of theoretical compensation to all retirees is uncapped – but the specific payments to each player and/or their families are VERY MUCH CAPPED."* *See, e.g.*, Dkt. No. 6073-5 at 2 (referring to "uncapped fund"). The Settlement, however, sets a maximum award for each qualifying diagnosis. *See* Settlement Ex. 3 (capped Monetary Award Grid).

- *"The only way one gets a settlement so poorly structured is if one side knows what it wants while the other side's representatives are only interested in quickly getting paid. No settlement is perfect. Compromise is part of the effort. This settlement clearly does not reflect compromise, but capitulation."* Co-Lead Class Counsel have publicly proclaimed "CTE is believed to be the most serious and harmful disease that results from NFL and concussions."[3] Yet, class members release their claims for CTE while receiving no monetary award if they have CTE unless they died before July 7, 2014. Numerous other defects render the Settlement incredibly unfair and inadequate. Nonetheless, the Settlement provides a "clear sailing" provision, which would allow a $112.5 million attorneys' fee award to be paid within 60 days of the Effective Date. *See* Settlement § 21.2. The circumstances under which the fee award was negotiated suggest Class Counsel bargained away something of value. *See* Dkt. No. 6201 at 79-80; Dkt. No. 6082 at 37-38. The website's statement is clearly one of opinion – but it is opinion supported by facts.

---

[3] Co-Lead Class Counsel Seeger Weiss used to have on its website a tutorial relating to MTBI and football:

> Frequent brain trauma or multiple football concussions . . . has shown to cause serious mental health problems. ***Thousands of football players, many of whom are thought to have suffered more than one hundred mild traumatic brain injuries, are dealing with horrible and debilitating symptoms***.

> Multiple medical studies have found direct correlation between football concussions and suffering from symptoms of chronic traumatic encephalopathy, also known as CTE. ***CTE is believed to be the most serious and harmful disease that results from NFL and concussions.*** CTE is a progressive degenerative disease that causes damage to the brain tissue and the accumulation of Tau Proteins.

*Up-To-Date Information on NFL Concussions*, Seeger Weiss LLP, (Sept. 9, 2014), http://www.seegerweiss.com/football-concussions/#ixzz3CByVHxui (emphasis added) (Objection 2 n.1 & Ex. 1). Seeger Weiss quickly removed that language after oral argument in the Third Circuit on September 10, 2014, at which the inadequate representation and failure to compensate CTE, as well as this language on their website, was raised.

- *"The website also includes a 'Calculator' where a person can input certain information such as 'Brain condition' 'Age of Diagnosis', 'Seasons Played in the NFL', 'Strokes suffered', etc., that does not precisely adhere to the terms of the Settlement Agreement and is therefore misleading."* Co-Lead Class Counsel ignore that website contains a "Note" explaining that the calculator provides "estimates" to assist class members, not precise figures.[4]

As these examples demonstrate, the publicly available website was not intended to – and does not – deceive anyone. In the complete absence of any explanation for *why* those statements are false, Co-Lead Class Counsel have not carried their burden of demonstrating that the communications on the website are abusive.[5] Nor have Co-Lead Class Counsel shown why, even if any particular statements were deemed false or misleading, the proper remedy would be to shut down the entire website rather than remove or correct those particular statements. Moreover, to the extent Co-Lead Class Counsel believes that the communications are abusive because they are "one-sided" or not "neutral," *see* Mem. 6, 7, such a lack of neutrality alone does not satisfy the *Gulf Oil* standard. *See* pp. 3-4, *supra*.[6]

---

[4] *See* http://www.nflconcussionsettlementfacts.com/site/NFLSettlementCalculator.html. The full note reads: "These are estimates based on age bands. The exact figure will be calculated based on the exact year of diagnosis. Every year results in additional discount within an age band. Finally, the exact amount of insurance lien will be determined by a negotiation between the lawyers and the parties seeking repayment." *Id.*

[5] *See, e.g., Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696, 699 (S.D. Ala. 2003) (*Gulf Oil* standard not met because movant "bears the burden of showing that information in the [communication] is false; simply implying that it *might* be false does not meet that burden"); *Payne v. Goodyear Tire & Rubber Co.*, 207 F.R.D. 16, 20 (D. Mass. 2002) (statement of disputed issues of fact on website cannot be characterized as "misleading"); *Burrell v. Crown Cent. Petroleum, Inc.*, 176 F.R.D. 239, 245 (E.D. Tex. 1997) (refusing to find communications coercive or misleading where movant offered only "generalizations" and described "the gist of" the communications); *Superior Beverage Co. v. Owens-Illinois, Inc.*, No. 83 C 512, 1988 WL 87038, at *2 (N.D. Ill. Aug. 16, 1988) (refusing to prohibit communications in part because opt-out plaintiffs and class representatives were "aligned in their interests").

[6] Co-Lead Class Counsel have not identified the number of opt-outs that have been filed. Because a remedy is necessary only if it "'appear[s]' that improper communications have been effective," *Georgine*, 160 F.R.D. at 498, Co-Lead Class Counsel's failure to identify the number of opt-out requests potentially induced by the allegedly misleading communications provides an independent reason to deny their motion.

## II.     Co-Lead Class Counsel's Motion Is Moot

Even if those statements were false or misleading – and, as explained above, they are not – Co-Lead Class Counsel's motion is moot.  "The court's ability to grant effective relief lies at the heart of the mootness doctrine."  *Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 216 (3d Cir. 2003).  Co-Lead Class Counsel insist that the website is "designed to confuse, mislead and deceive class members into objecting or opting out of the Settlement Agreement," Mem. 4-5; *see also id.* at 10 (noting website's "solicitations of opt-outs and objections from class members have obstructed the orderly process contemplated by this Court"), and, as a result, ask the Court to enter an order that the website be taken offline, *id.* at 11.  But the deadline for opting out and/or objecting passed on October 14.  Co-Lead Class Counsel's requested relief will thus have no practical impact on this litigation.

Co-Lead Class Counsel could easily have sought the relief they now request earlier in this litigation.  Objectors' website went live to the public on October 7, 2014.  Yet Co-Lead Class Counsel did not file its motion until 17 days after the website publicly launched, and 10 days after the deadline to opt out and/or object had passed.  Because Co-Lead Class Counsel filed their motion after that deadline, the relief they seek is moot.

## III.    The Website Is No Longer Active

Were there any doubt about the mootness of Co-Lead Class Counsel's motion, that doubt has been removed.  The administrator of www.nflconcussionsettlementfacts.com has been asked to take the website down, and the administrator has done so.  Although Co-Lead Class Counsel fall far short of meeting their burden to demonstrate that the website is false or misleading, ***Objectors do not wish to distract from the main issue before this Court:*** evaluating whether the Settlement is fair, adequate, and reasonable.   For that additional reason, Objectors have decommissioned the website, and Co-Lead Class Counsel's motion is moot.  *See Payne v.*

*Goodyear Tire & Rubber Co.*, 207 F.R.D. 16, 20 (D. Mass. 2002) (denying order prohibiting communications were website statements that "could potentially have created some confusion" were eliminated).

## IV.   An Objector Is Not Precluded From Opting-Out of the Settlement After Objecting

Co-Lead Class Counsel contend, in a footnote, that MoloLamken and its co-counsel should "withdraw[ ] their representation" from either the four objecting players who have opted out or the three objecting players who have not opted out.  Mem. 3 n.4.  While the representation of clients with "interests adverse to one another" may not be allowed, *id.*, Class Counsel never identify how the interests of objectors and opt-outs could possibly be adverse where, as here, the opt-outs have the right to opt back in before final approval.  Settlement § 14.2(a) ("Valid requests to Opt Out from the Settlement Class will become effective on the Final Approval Date."); *id.* § 14.2(c) (opt-out requests revocable until Final Approval Date).  At this stage, both objectors and opt-outs have the same interest: maximizing the value of the Settlement to ensure that it is fair, adequate, and reasonable.

Even assuming that the opt-out requests were effective upon submission, the interests of opt-outs are not adverse to objectors.  "By fully preserving their right to litigate their claims independently, [opt-outs] escape[ ] the binding effect of the class settlement."  *Mayfield v. Barr*, 985 F.2d 1090, 1093 (D.C. Cir. 1993).  Opt-outs thus have no interest in the Settlement either way: Their interests are not impaired if the Settlement is approved and therefore cannot be adverse to those who would partake of the Settlement's benefits.  If anything, the interests of objectors – who are advocating that the Settlement not be approved – are in alignment with opt-outs, who could benefit from a renegotiated settlement more favorable to class members.[7]

---

[7] For that reason, *In re Corn Derivatives Antitrust Litigation*, 748 F.2d 157 (3d Cir. 1984), is inapposite.  That case involved the representation of an objector advocating the settlement's

**CONCLUSION**

For these reasons, the Court should deny Co-Lead Class Counsel's motion.


Dated: October 30, 2014

William T. Hangley
Michele D. Hangley
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square
18th & Cherry Streets
27th Floor
Philadelphia, PA 19103
(215) 496-7001 (telephone)
(215) 568-0300 (facsimile)
whangley@hangley.com
mdh@hangley.com

/s/ Steven F. Molo

Steven F. Molo
Thomas J. Wiegand
Kaitlin R. O'Donnell
MOLOLAMKEN LLP
540 Madison Ave.
New York, NY 10022
(212) 607-8160 (telephone)
(212) 607-8161 (facsimile)
smolo@mololamken.com
twiegand@mololamken.com
kodonnell@mololamken.com

Martin V. Totaro
Eric R. Nitz
MOLOLAMKEN LLP
600 New Hampshire Ave., N.W.
Washington, DC 20037
(202) 556-2000 (telephone)
(202) 556-2001 (facsimile)
mtotaro@mololamken.com
enitz@mololamken.com

Linda S. Mullenix
2305 Barton Creek Blvd., Unit 2
Austin, TX 78735
(512) 263-9330 (telephone)
lmullenix@hotmail.com

*Attorneys for Objectors*

---

disapproval and a class member who had completely dropped its objections to partake in the settlement. *Id.* at 159-60. *Corn Derivatives* thus displayed true adversity.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 30, 2014, I caused the foregoing Opposition to Co-Lead Class Counsel's Motion for an Order Prohibiting Improper Communications to be filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel and parties.

<u>/s/ Steven F. Molo</u>