Clerk of the District Court/NFL Concussion Settlement
U.S. District Court for the Eastern District of Pennsylvania
United States Courthouse
601 Market Street
Philadelphia, PA 19106-1797



**Re:** In re: National Football League Players' Concussion Injury Litigation, No. 2:12-md-02323

To the Clerk of the District Court/NFL Concussion Settlement,

My name is James Mayberry, I was born on November 5, 1957, I reside at 1600 NW 12th Street, Apt. A, Amarillo, Texas, 79107, and my telephone number is (806) 236-3279. I was drafted in 1979 by the Atlanta Falcons. I played for the Atlanta Falcons for 3 seasons, from 1979-1981. Thus, I am a Settlement Class Member.

I object to the proposed Class Action Settlement (the "Settlement") for the following reasons:

### 1. Neither Shawn Wooden nor Kevin Turner adequately represents my interests.

The Complaint names Shawn Wooden and Kevin Turner as the Representative Plaintiffs for the class. Two named plaintiffs and their lawyers cannot fairly represent the wide range of players who make up the class among the 20,000 or more class members. Specifically, Mr. Wooden represents Subclass A, the Subclass to which I belong.

Mr. Wooden is alleged to have "experienced" unspecified "neurological symptoms" but "has not been diagnosed with any neurocognitive impairment." The Complaint states that Mr. Wooden has an "increased risk of developing dementia, Alzheimer's, Parkinson's, or ALS." Remarkably, Mr. Wooden does not plead an increased risk of developing chronic traumatic encephalopathy ("CTE"). Thus, Mr. Wooden willingly agrees to a settlement that provides a $4 million payment for death by players diagnosed with CTE before July 7, 2014, but nothing for players suffering from CTE after that date. In other words, if I develop CTE, which I apparently am at risk of developing, neither I nor my family will be compensated. Such a settlement is unconscionable. Not enough is known about CTE to agree to a settlement at this time that releases all future claims related to CTE. Scientists are currently working on tests to diagnose the condition during my lifetime. Why should players who are at risk of developing CTE release all rights to be compensated for the condition? The answer, of course, is they should not.

The full release of compensation for CTE is especially troublesome in light of the fact that current studies suggest an alarming number of NFL players will be afflicted with CTE. Indeed, of the 34 deceased NFL retirees whose brains have been tested for CTE, 33 had the disease. And almost all of these players displayed symptoms during their lifetimes, including symptoms which I currently exhibit such as short-term memory loss, attention problems, and concentration problems. Given that 33 of the 34 deceased NFL players whose brains have been examined for CTE have been diagnosed with the condition, it appears that almost every single

football player is at risk for CTE. Mr. Wooden simply does not adequately represent my interests and the Settlement should be rejected.

Mr. Wooden's failure to adequately represent my interest is further evidenced by his comments in an opinion piece published in the Miami Herald about why players should accept the Settlement. In the article, Mr. Wooden argues that:

> No settlement is perfect, but that doesn't change the reality that *many retired players are sick today*, and the NFL is not going to simply hand out more money to anyone who asks for it. If our past experience with the NFL is any indication, it will fight for years against every player who opts out of this settlement.
>
> Meanwhile, *the clock is ticking for our sickest teammates. Since waiting is not an option, we must band together to support this agreement in order to get much-needed help to retired players* and improve our health and financial security for the future.

A copy of this editorial is attached to my objection. Mr. Wooden's sentiments are moving, but those sentiments plainly reveal that he is representing the players who are currently diagnosed, not those like me who are not. As a sub-class representative, he must strive to obtain the best result for undiagnosed retired players, like myself. He cannot compromise our interests for the benefit of the other sub-class. And that is exactly what he admits to having done in this editorial. Again, Mr. Wooden simply does not adequately represent my interests or the interests of other undiagnosed retired players in this lawsuit.

## 2. The Settlement offsets demonstrate a lack of adequate representation.

The Settlement offsets create impermissible class conflict. The Settlement reduces a claimant's award by 75% for, among other things, a single instance of a stroke. Instances of stroke, however, should be compensated injuries, not offsets that reduce recovery, because the NFL itself is responsible for the increased risk of stroke for the players. Remarkably, neither Mr. Turner nor Mr. Wooden claimed an increased risk of stroke, even though repetitive hitting has been statistically linked to increased risk of stroke. Thus, neither can adequately represent the class members who may someday suffer a stroke and then have their compensation reduced under the Settlement.

Additionally, class members who, like me, played fewer "Eligible Seasons" in the NFL receive only a percentage of the maximum award for their condition. The two class representatives played eight and nine years, respectively, so they will be unaffected by these reductions and had no interest in negotiating full compensation for retired players with fewer eligible seasons. Thus, they are inadequate class representatives for the players whose recoveries are reduced.

Similarly, the level of compensation varies depending on the disease contracted and the player's age. For example, the compensation for ALS is set at a maximum of $5 million, but the compensation for Alzheimer's is set at $3.5 million. The sole class representative for the entire

range of diseases has ALS, which receives compensation at the highest level. Similarly, the settlement grid provides that a player who is 45 at the time of diagnosis receives the maximum amount for that disease, with reductions as the age of diagnosis increases. Not surprisingly, the same class representative is 45 years old, and there is no class representative who is older and might have argued against the reduction or for a different degree of reduction. Again, the players whose recoveries are reduced are not adequately represented.

### 3. A complex series of administrative procedures governs the distribution of benefits.

Class members must register with the Claims Administrator within 180 days of Settlement Class Supplemental Notice. Failure to do so renders the player completely ineligible for any benefits, yet the release would be binding. Additionally, the undiagnosed players in Subclass 1 like me must undergo the baseline assessment examination to receive the full award, and failure to undergo the examination results in a 10% reduction in benefit.

The Baseline Assessment Program itself imposes a series of deadlines. Players aged 43 and older like me must obtain the BAP examination within two years after the BAP commences. The BAP requires players to participate in neuropsychological tests that reportedly do not evaluate the relevant neurodegenerative diseases for purposes of determining relief. In addition, no consideration about the expense of obtaining the BAP is provided in the settlement. Players such as me who live far from major metropolitan areas will have to travel great distances, without any compensation, to receive the BAP examination. Moreover, players have no discretion to choose their own doctors to provide the BAP examination. I question the independence of doctors specially selected and paid by the Defendants. It was such a lack of independence by team doctors that led to many players being allowed to return to games with concussions. Doctors should be selected by the players, or at a minimum, in some neutral way. And those doctors need to be accessible to people in rural areas like myself, rather than forcing us to expend money to travel to those doctors.

Once diagnosed, players must fill out a complex, extensive claim package within two years of receiving a qualifying diagnosis. Of course, a proposed claim form or instructions have not been provided to class members to use to navigate this procedural maze.

Once a claim is filed, a claims administrator can investigate and request additional documentation, and if the claim is denied, a player must pay a $1,000 fee to appeal. Oddly, the NFL, a multi-billion dollar organization, does not have to pay a fee to appeal. Once the claim is appealed, players must submit to and pay for a complex mini-trial if they ever hope to receive their benefit awards. Why a player who has suffered mental impairment due to playing in the NFL has to endure such an ordeal is inexplicable. Remarkably, the counsel who were supposed to represent the players' interest will receive their entire $112.5 million payment within 60 days after the Settlement takes effect. However, their clients – many suffering serious cognitive impairment – will be left to figure everything out on their own, wandering through an administrative maze that allows the NFL to say "gotcha" at every turn. Such a settlement should be rejected by this Court. It also raises questions in my mind that the NFL agrees not to challenge the $112.5 million payment to the lawyers. What did the lawyers concede in the

negotiations to secure such a fee? The fee also seems to me to be an incredible and unwarranted amount of money given the results of the settlement and the work done.

### 4. Lack of proper notice

The notice provided to players fails to fairly inform class members of their rights in "plain, easily understood language." Fed. R. Civ. P. 23(c)(2)(B). The notice is misleading and Class Counsel and their representatives have compounded the problem with an aggressive campaign riddled with inaccuracies urging players to accept the settlement.

The notice is plainly false in that it states that retired NFL players will be paid in full for 65 years. As set forth above, this claim is simply untrue. Many players such as me will have their compensation reduced if they have a stroke, if they are older when they are diagnosed, or if they stumble in the complex claims process. Moreover, the notice misleadingly claims that the Settlement provides monetary awards for a diagnosis of CTE, and further assures that such valid claims will be paid in full for 65 years, but fails to mention that the only players who are compensated for CTE are those who have died prior to the Settlement.

For these reasons and all other reasons set forth in the objections filed by other class members, I urge that this Court reject the proposed Class Settlement.

_____   10/14/14
James Mayberry                Date

4



James Mayberry
1600 NW 12th St. Apt. A
Amarillo, TX 79107

7013 3020 0000 8408 4628

U.S. POSTAGE PAID
$6.70

U.S. DISTRICT COURT FOR THE EASTERN
DISTRICT OF PENNSYLVANIA
UNITED STATES COURTHOUSE
601 MARKET ST
PHILADELPHIA PA 19106-1797

Clerk of the District Court/NFL Concussion Settlement
U.S. District Court for the Eastern District of Pennsylvania
United States Courthouse
601 Market Street
Philadelphia, PA 19106-1797

Re:   In re: National Football League Players' Concussion Injury Litigation
      No. 2:12-md-02323

Dear Clerk:

Enclosed is the complete copy of a letter that was mailed to you on October 14, 2014 – that letter inadvertently omitted the attachment. The attachment is enclosed herein. I have also enclosed a copy of the October 14 certified mail receipt for your reference.

Please see that the court's copy of this letter includes the attachment.

Thank you for your assistance.



Clerk of the District Court/NFL Concussion Settlement
U.S. District Court for the Eastern District of Pennsylvania
United States Courthouse
601 Market Street
Philadelphia, PA 19106-1797

Re: In re: National Football League Players' Concussion Injury Litigation, No. 2:12-md-02323

To the Clerk of the District Court/NFL Concussion Settlement,

My name is James Mayberry, I was born on November 5, 1957, I reside at 1600 NW 12th Street, Apt. A, Amarillo, Texas, 79107, and my telephone number is (806) 236-3279. I was drafted in 1979 by the Atlanta Falcons. I played for the Atlanta Falcons for 3 seasons, from 1979-1981. Thus, I am a Settlement Class Member.

I object to the proposed Class Action Settlement (the "Settlement") for the following reasons:

1. **Neither Shawn Wooden nor Kevin Turner adequately represents my interests.**

The Complaint names Shawn Wooden and Kevin Turner as the Representative Plaintiffs for the class. Two named plaintiffs and their lawyers cannot fairly represent the wide range of players who make up the class among the 20,000 or more class members. Specifically, Mr. Wooden represents Subclass A, the Subclass to which I belong.

Mr. Wooden is alleged to have "experienced" unspecified "neurological symptoms" but "has not been diagnosed with any neurocognitive impairment." The Complaint states that Mr. Wooden has an "increased risk of developing dementia, Alzheimer's, Parkinson's, or ALS." Remarkably, Mr. Wooden does not plead an increased risk of developing chronic traumatic encephalopathy ("CTE"). Thus, Mr. Wooden willingly agrees to a settlement that provides a $4 million payment for death by players diagnosed with CTE before July 7, 2014, but nothing for players suffering from CTE after that date. In other words, if I develop CTE, which I apparently am at risk of developing, neither I nor my family will be compensated. Such a settlement is unconscionable. Not enough is known about CTE to agree to a settlement at this time that releases all future claims related to CTE. Scientists are currently working on tests to diagnose the condition during my lifetime. Why should players who are at risk of developing CTE release all rights to be compensated for the condition? The answer, of course, is they should not.

The full release of compensation for CTE is especially troublesome in light of the fact that current studies suggest an alarming number of NFL players will be afflicted with CTE. Indeed, of the 34 deceased NFL retirees whose brains have been tested for CTE, 33 had the disease. And almost all of these players displayed symptoms during their lifetimes, including symptoms which I currently exhibit such as short-term memory loss, attention problems, and concentration problems. Given that 33 of the 34 deceased NFL players whose brains have been examined for CTE have been diagnosed with the condition, it appears that almost every single

football player is at risk for CTE. Mr. Wooden simply does not adequately represent my interests and the Settlement should be rejected.

Mr. Wooden's failure to adequately represent my interest is further evidenced by his comments in an opinion piece published in the Miami Herald about why players should accept the Settlement. In the article, Mr. Wooden argues that:

> No settlement is perfect, but that doesn't change the reality that *many retired players are sick today*, and the NFL is not going to simply hand out more money to anyone who asks for it. If our past experience with the NFL is any indication, it will fight for years against every player who opts out of this settlement.
>
> Meanwhile, *the clock is ticking for our sickest teammates. Since waiting is not an option, we must band together to support this agreement in order to get much-needed help to retired players* and improve our health and financial security for the future.

A copy of this editorial is attached to my objection. Mr. Wooden's sentiments are moving, but those sentiments plainly reveal that he is representing the players who are currently diagnosed, not those like me who are not. As a sub-class representative, he must strive to obtain the best result for undiagnosed retired players, like myself. He cannot compromise our interests for the benefit of the other sub-class. And that is exactly what he admits to having done in this editorial. Again, Mr. Wooden simply does not adequately represent my interests or the interests of other undiagnosed retired players in this lawsuit.

2. **The Settlement offsets demonstrate a lack of adequate representation.**

The Settlement offsets create impermissible class conflict. The Settlement reduces a claimant's award by 75% for, among other things, a single instance of a stroke. Instances of stroke, however, should be compensated injuries, not offsets that reduce recovery, because the NFL itself is responsible for the increased risk of stroke for the players. Remarkably, neither Mr. Turner nor Mr. Wooden claimed an increased risk of stroke, even though repetitive hitting has been statistically linked to increased risk of stroke. Thus, neither can adequately represent the class members who may someday suffer a stroke and then have their compensation reduced under the Settlement.

Additionally, class members who, like me, played fewer "Eligible Seasons" in the NFL receive only a percentage of the maximum award for their condition. The two class representatives played eight and nine years, respectively, so they will be unaffected by these reductions and had no interest in negotiating full compensation for retired players with fewer eligible seasons. Thus, they are inadequate class representatives for the players whose recoveries are reduced.

Similarly, the level of compensation varies depending on the disease contracted and the player's age. For example, the compensation for ALS is set at a maximum of $5 million, but the compensation for Alzheimer's is set at $3.5 million. The sole class representative for the entire

2

range of diseases has ALS, which receives compensation at the highest level. Similarly, the settlement grid provides that a player who is 45 at the time of diagnosis receives the maximum amount for that disease, with reductions as the age of diagnosis increases. Not surprisingly, the same class representative is 45 years old, and there is no class representative who is older and might have argued against the reduction or for a different degree of reduction. Again, the players whose recoveries are reduced are not adequately represented.

### 3. A complex series of administrative procedures governs the distribution of benefits.

Class members must register with the Claims Administrator within 180 days of Settlement Class Supplemental Notice. Failure to do so renders the player completely ineligible for any benefits, yet the release would be binding. Additionally, the undiagnosed players in Subclass 1 like me must undergo the baseline assessment examination to receive the full award, and failure to undergo the examination results in a 10% reduction in benefit.

The Baseline Assessment Program itself imposes a series of deadlines. Players aged 43 and older like me must obtain the BAP examination within two years after the BAP commences. The BAP requires players to participate in neuropsychological tests that reportedly do not evaluate the relevant neurodegenerative diseases for purposes of determining relief. In addition, no consideration about the expense of obtaining the BAP is provided in the settlement. Players such as me who live far from major metropolitan areas will have to travel great distances, without any compensation, to receive the BAP examination. Moreover, players have no discretion to choose their own doctors to provide the BAP examination. I question the independence of doctors specially selected and paid by the Defendants. It was such a lack of independence by team doctors that led to many players being allowed to return to games with concussions. Doctors should be selected by the players, or at a minimum, in some neutral way. And those doctors need to be accessible to people in rural areas like myself, rather than forcing us to expend money to travel to those doctors.

Once diagnosed, players must fill out a complex, extensive claim package within two years of receiving a qualifying diagnosis. Of course, a proposed claim form or instructions have not been provided to class members to use to navigate this procedural maze.

Once a claim is filed, a claims administrator can investigate and request additional documentation, and if the claim is denied, a player must pay a $1,000 fee to appeal. Oddly, the NFL, a multi-billion dollar organization, does not have to pay a fee to appeal. Once the claim is appealed, players must submit to and pay for a complex mini-trial if they ever hope to receive their benefit awards. Why a player who has suffered mental impairment due to playing in the NFL has to endure such an ordeal is inexplicable. Remarkably, the counsel who were supposed to represent the players' interest will receive their entire $112.5 million payment within 60 days after the Settlement takes effect. However, their clients – many suffering serious cognitive impairment – will be left to figure everything out on their own, wandering through an administrative maze that allows the NFL to say "gotcha" at every turn. Such a settlement should be rejected by this Court. It also raises questions in my mind that the NFL agrees not to challenge the $112.5 million payment to the lawyers. What did the lawyers concede in the

3

negotiations to secure such a fee? The fee also seems to me to be an incredible and unwarranted amount of money given the results of the settlement and the work done.

### 4. Lack of proper notice

The notice provided to players fails to fairly inform class members of their rights in "plain, easily understood language." Fed. R. Civ. P. 23(c)(2)(B). The notice is misleading and Class Counsel and their representatives have compounded the problem with an aggressive campaign riddled with inaccuracies urging players to accept the settlement.

The notice is plainly false in that it states that retired NFL players will be paid in full for 65 years. As set forth above, this claim is simply untrue. Many players such as me will have their compensation reduced if they have a stroke, if they are older when they are diagnosed, or if they stumble in the complex claims process. Moreover, the notice misleadingly claims that the Settlement provides monetary awards for a diagnosis of CTE, and further assures that such valid claims will be paid in full for 65 years, but fails to mention that the only players who are compensated for CTE are those who have died prior to the Settlement.

For these reasons and all other reasons set forth in the objections filed by other class members, I urge that this Court reject the proposed Class Settlement.

James Mayberry

Date 10/14/14

# Concussion settlement a good deal for retired players

BY SHAWN WOODEN - WOODENWEALTH.COM
09/28/2014 3:15 PM | Updated: 09/28/2014 7:15 PM



MUSSER/MCT

Amid the many troubling headlines surrounding the National Football League the last several weeks, you might have missed this sobering fact: Experts predict that nearly three in 10 former NFL players will develop serious cognitive problems — dementia, Parkinson's, Alzheimer's or ALS — in their lifetime.

As a nine-year veteran of the NFL, those odds are terrifying. I worry about what would happen if I was diagnosed with one of these conditions and the burden it would have on my family -- how they would keep up with medical bills and also take care of themselves.

This alarming statistic — derived from actuarial reports that were released as part of the concussion settlement between the NFL and retired players — only underscores the importance and necessity of the agreement that now awaits final approval, more than three years after the first lawsuits were filed.

Fortunately, I am not currently suffering from dementia, Parkinson's, Alzheimer's or ALS, which means that I, like most retired players, don't stand to immediately receive any money under this agreement. What I will receive is just as valuable: a baseline exam to determine if I am suffering from any cognitive impairment, as well as access to a 65-year, uncapped compensation program that offers peace of mind to all retired players who worry that we might eventually be one of the three in 10 suffering from these serious conditions.

No step in the road toward these benefits has come easily, however, and even today there are still calls for players to reject this settlement and return to the long, uncertain path of litigation. Indeed, a very small group of retired players has used a distorted reading of the settlement to try to recruit objectors. Their complaints, however well intentioned, are not only misguided but misunderstand the entire purpose of this agreement.

Take, for example, the concerns they raise about the way Chronic Traumatic Encephalopathy (CTE) is treated by the settlement. Currently, there's no medically accepted way to diagnose CTE, except after death. This settlement, however, will provide compensation and medical care to retired players who are diagnosed with many symptoms of neurocognitive decline now and in the future — without the need to prove that those symptoms stem from playing in the NFL. We should not have to wait for benefits while the complicated and often-conflicting science on CTE continues to evolve.

Similarly, some have claimed that not enough former players will receive immediate compensation. But how can anybody say that when we now know that approximately 6,000 retired players are expected to someday develop a severe neurocognitive disease? Let me be clear: I hope that I never receive any compensation from this settlement because it will mean I never developed dementia, Parkinson's, Alzheimer's or ALS. But I can't predict the future; none of us can, and that's why this settlement is indispensible.

The vast majority of former players I have spoken with rejects these shortsighted arguments against the settlement. We signed on to this litigation to obtain security, care, and protection for the future to the men and families in deserving need. We never saw this as a route to an easy paycheck, and anyone who did misunderstood what this lawsuit was all about.

Indeed, more than 5,000 plaintiffs joined this lawsuit to get care to the former players who needed it, and this show of strength is what forced the NFL to come to the negotiating table and agree to this settlement. No settlement is perfect, but that doesn't change the reality that many retired players are sick today, and the NFL is not going to simply hand out more money to anyone who asks for it. If our past experience with the NFL is any indication, it will fight for years against every player who opts out of this settlement.

Meanwhile, the clock is ticking for our sickest teammates. Since waiting is not an option, we must band together to support this agreement in order to get much-needed help to retired players and improve our health and financial security for the future.

I have never regretted my decision to play in the NFL, but — knowing what I know now — I have to live with the uncertainty of my future. The settlement is a safety net for the sick and dying men of today and for the thousands more who will likely be diagnosed in the coming years. I will not roll the dice on my future or anyone else's.

*SHAWN WOODEN SPENT NINE SEASONS IN THE NFL PLAYING SAFETY FOR THE MIAMI DOLPHINS AND CHICAGO BEARS. HE IS ONE OF THE SUBCLASS REPRESENTATIVES IN THE NFL CONCUSSION LITIGATION.*



WOODEN

James Mayberry
1600 NW 12th St. Apt. A
Amarillo, TX 79107

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
UNITED STATES COURTHOUSE
601 MARKET ST
PHILADELPHIA PA 19106-1797





$07.61