# James D. McFarland
# McFarland Law Office
# Attorney at Law

1106 E Street, Suite 101
P.O. Box 94772
Lincoln, NE 68509-4772

jimmcfarl@aol.com

Phone  (402) 435-8080
FAX No.  (402) 477-0962

October 14, 2014

Clerk of the U.S. District Court/NFL Concussion Settlement
U.S. District Court for the Eastern District of Pennsylvania
United States Courthouse
601 Market Street
Philadelphia, PA 19106-1797

    RE:  In Re: National Football League Players Concussion Injury Litigation
           No. 2:12-md-02323
           Turner et al. V. NFL et al.
           Civil Action No. 2.14-cv-00029-AB

Dear Clerk:

    Please find enclosed for filing in the above matters, my Objection to June 25, 2014 Class Action Settlement.

    Should you need any additional information, please contact me. Thank you.

                                    Sincerely,

                                    James D. McFarland

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In Re: National Football League Players Concussion Injury Litigation | No. 2.12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden,k *on behalf of themselves and others similarly situated,* | |
| | Civil Action No. 2.14-cv-00029-AB |
| Plaintiffs, | |
| | **OBJECTION TO JUNE 25, 2014** |
| vs. | **CLASS ACTION SETTLEMENT** |
| National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc., | |
| Defendants. | |

The undersigned Settlement Class Member hereby objects to the Class Action Settlement Agreement dated as of June 25, 2014 (the "Settlement") based upon knowledge and belief for reasons including, but not limited to, the following:

1. This Settlement is apparently not a concussion or brain injury settlement, but is a neurocognitive symptom settlement that includes ALS and Parkinson's Disease.

2. This Settlement apparently is not uncapped. The Monetary Award Fund (MAF) is uncapped in total, but the Baseline Assessment Program (BAP) is capped at $75 Million.

3. Chronic Traumatic Encephalopathy (CTE) is apparently not considered worthy of compensation even though diagnosis of CTE in former NFL players is imminent or even available at the present time.

4. The rights of compensation for families, wives, and children who suffer distinct damages resulting from an impaired family member, spouse, or parent are apparently waived or terminated in this Settlement.

5. Future Cases of CTE are apparently not included as a qualifying diagnosis.

6. The Plaintiffs' actuaries apparently estimate that the average claimant's age of diagnosis for the MAF will be 77 years of age, an age many players may not reach.

7. Qualifying Diagnosis for deceased players is apparently permitted for deceased players from January 1, 2006, to July 7, 2014, but not permitted for deceased players after July 7, 2014.

8. In order to receive a qualifying diagnosis, a player, regardless of his condition, must apparently pay to be examined by a program doctor. Players with a Plan 88 diagnosis, connected to a ventilator, or in a long term care facility could have a diagnosis conducted through a medical records review or a telemedicine visit.

9. Representations that all CTE symptoms will be identified and compensated through the BAP or MAF are apparently inaccurate. This Settlement apparently considers cognitive symptoms, which excludes common early onset psychiatric, behavioral, motor, and movement symptoms.

10. The BAP is apparently only budgeted to pay for treatment of 750 players, or 3.5% for only one year based upon Plaintiffs actuarial projections.

11. The BAP is apparently chartered to last 10 years, but treatment for brain injury tends to last a lifetime.

12. Apparently 9% of the class is projected to suffer a stroke and 9% of players have microhemorrhages and are thus subject to a 75% discount.

13. Apparently 4% of the class is projected to suffer, or have previously suffered a Traumatic Brain Injury (TBI) before they collect payment and are therefore subject to a 75% discount.

14. There is apparently No Minimum Payment Guarantee to any player or all players together for the claims permanently released in this Settlement.

15. The National Football League (NFL) apparently has the right to approve or not approve all Qualified Physicians required for Monetary Awards to players. Once approved, Qualifying Physicians apparently cannot continue to serve if they become experts in an Opt Out case.

16. Qualified BAP Medical Doctors who can diagnose Neurocognitive Impairment are apparently also subject to NFL approval or disapproval and termination for serving as medical experts in any similar cases, instead of being approved simply by objective medical standards.

17. The NFL apparently has the right to appeal every monetary award, while players must pay a $1,000 amount plus their own legal fees to do so. The NFL apparently has no such fee.

18. The NFL apparently approves all members of the Appeals Advisory Panel and Appeals Advisory Consultants, who the Court may ask to assist in deciding appeals. Like Qualified Physicians, they apparently cannot continue to serve if they serve as experts in any similar case.

19. Apparently no player payments are made until all appeals of the Settlement itself are concluded, possibly several years from now.

20. The NFL and Class Counsel attorneys negotiating the Settlement have apparently agreed upon up to $112,500,000 "class attorney fees and reasonable costs" if ordered by the Court. This amount apparently is escrowed to be paid once the Settlement becomes final, no matter what amount retired players ultimately receive. There is no apparent escrow for player Monetary Awards. Class counsel may also apparently receive fees from individual clients. The attorney fees and costs are apparently payments for an action with no discovery or documents, witnesses or facts, and only one adversarial motion, never decided.

21. This Settlement if approved will apparently occur before any discovery whatsoever has been conducted meaning that players and families will never know whether the NFL hid brain injury risks. Apparently no documents, witnesses or information on what the NFL knew about brain injuries, when the NFL knew it, and what, if anything, the NFL did about brain injuries were produced.

I am an attorney at law and a Settlement Class Member, as that term is defined in the Settlement, because I am a "Retired NFL Football Player" under the Settlement in that I retired before July 7, 2014, from playing for a past or present member club of the National Football League as follows:

Buffalo Bills - 1970

St. Louis Football Cardinals - 1970-74

Miami Dolphins - 1975

My date of birth is October 4, 1947.

Dated: October 14, 2014

                    James D. McFarland, Pro Se

By: *[signature: J. D. M. Fee]*

                    James D. McFarland, NSBA No. 16307
                    1106 E Street, Suite 101
                    P.O. Box 94772
                    Lincoln, NE 68509-4772
                    (402) 435-8080 (phone)
                    (402) 477-0962 (fax)
                    jimmcfarl@aol.com



Clerk of the U.S. District Court for the Eastern District of Pennsylvania
Settlement
U.S. District Court for the Eastern District of Pennsylvania
United States Courthouse
601 Market Street
Philadelphia, PA 19106-1797

*James D. McFarland*
*Attorney at Law*
*1186 E Street, Suite 101*
*P.O. Box 94772*
*Lincoln, NE 68509-4772*