Darren Russell Carrington
14097 Montfort Court
San Diego, CA 92128
858.967.4797

October 14, 2014

Clerk of the District Court/NFL Concussion Settlement
U.S. District Court for the Eastern District of Pennsylvania
United States Courthouse
601 Market Street
Philadelphia, PA 19106-1797



Re:     *In re: National Football League Players' Concussion Injury Litigation*
        Case No. 2:12-md-02323

## OBJECTIONS TO SETTLEMENT

With this settlement, the NFL seeks to discharge its potential liability to thousands of retired football players. After years spent denying repeated brain trauma has long term consequences, the NFL appeared to do an about face, funding a prominent brain research center. and entering into a settlement which may require the NFL pay hundreds of millions of dollars for the treatment of former players with serious neurodegenerative conditions, as well as lump sum settlements for certain conditions.

So what's the catch? Much as we, the retired players may owe to the game of football and the NFL, we need to be wary. Football is big business, and we need to recognize that in entering into this settlement, the NFL has made a business decision. The league that helped many of us achieve our dreams and win glory on the field, has a darker side that this lawsuit has revealed. That side knew about, but hid the dangers of brain trauma from players and the public for decades. That side plans to earn $25 billion in annual revenue by 2027, while minimizing potential liabilities to retired players.

The lawsuit seems to offer hope for the families of many NFL players currently suffering from degenerative conditions such as Alzheimer's and ALS. A website created to provide a forum for communication among former players suggests that those who oppose the settlement are standing in the way of suffering players in need of medical attention. Although the individual football players writing and speaking in support of this settlement may be acting in good faith, after careful consideration of the settlement, I believe they do not fully understand the settlement. The settlement is fundamentally flawed for a number of reasons, and is calculated to ensure that the vast majority of retired football players who suffer from neurodegenerative diseases will receive little if any monetary compensation. At the same time, those players will forever release claims potentially worth millions of dollars.

Clerk of the District Court/NFL Concussion Settlement
October 14, 2014
Page 2

### A. The most prevalent degenerative illness affecting former football players is CTE.

For years the NFL denied that concussions and repeated brain trauma caused long term damage to the brains of the players. The "punch drunk syndrome" was identified in boxers as early as the 1930's. But the NFL denied this affected football players. The NFL was able to hide much information regarding brain injury because it controlled the doctors the players were seeing. By the 1980's published research had shown the connection between repeated brain injury and concussions and neurodegenerative diseases. Despite this, the NFL continued to claim repeated trauma to the brain (or MTBI) had little or no long-term effects on football players.

As information regarding the effects of MTBI emerged, the NFL went on the offensive, created an MTBI committee, and sponsored its own research on the effects of brain injury in football players. Despite possessing knowledge and information about research tying repeated head injury to neurodegenerative disease, the committee published misleading research. For example, the committee's first published paper concluded concussions presented no long-term health risks. Complaint, ¶ 147. Between 2003 and 2009, another 15 such studies were published. Complaint, ¶ 148.The Committee's reports misled many players in that era, and contributed to the suffering many former players are currently experiencing. We now know these reports were utterly false and fraudulent.

The last few years have changed the playing field regarding our understanding of the connection between degenerative neurological diseases and football. And principally, we have learned that an overwhelming majority of former professional football players suffer from a condition known as Chronic Traumatic Encephalopathy (CTE). CTE was identified as early as the 1960's, but prior to 2009, only 49 cases of CTE were described in medical literature, and 39 of these were boxers. See http://www.sportslegacy.org/research/cte/.

As described in the award winning PBS documentary, League of Denial, the first case of documented CTE among NFL players was former Pittsburgh Steeler Mike Webster. A forensic pathologist and medical examiner, Dr. Bennet Omalu, diagnosed CTE in Webster after his death in 2002. He went on to diagnose CTE in Terry Long and Andre Waters – both retired players who committed suicide. Although the NFL rejected his work (Omalu claims on Frontline the NFL suggested his work was "voodoo"), his findings started the ball rolling in CTE research. His work got the attention of Chris Nowinski, a former professional wrestler and college football player who began researching his book *Head Games: Football's Concussion Crisis* after he suffered his own serious concussion. Nowinski, along with other scientists, founded the Sports Legacy Institute, a non-profit focused on advancing the study, treatment and prevention of brain trauma in athletes. Boston University School of Medicine established a Center for the Study of Traumatic Encephalopathy, which was the world's first research center dedicated to studying CTE, soon followed.

As a result of this work and the work of other scientists, we now know that most former football players suffering from brain injuries suffer from CTE, not ALS, Alzheimers or Dementia. Studies conducted at BU's CSTE reveal that 76 of 79 former football players studied

Clerk of the District Court/NFL Concussion Settlement
October 14, 2014
Page 3

had CTE. An earlier study revealed that of 34 NFL retirees whose brains were tested for CTE, 33 had CTE, and 94% were symptomatic during their lifetimes.

Studies done at Boston University and elsewhere, including interviews with family members of those diagnosed with CTE reveal, have added to our understanding of CTE. CTE can develop very slowly over decades, and its early symptoms include significant mood and behavioral problems, including aggression, apathy, and depression, as well as lack of impulse control. Suicide rates among CTE sufferers are extremely high. Severe headaches as well as behavioral and mood problems are often the earliest symptoms. These symptoms progress over four stages of the illness, and can have a devastating effect on a victim's life and loved ones. The symptoms often ruin relationships, and may lead to financial troubles or substance abuse. In the later phases of the illness, CTE symptoms may mirror dementia or Alzheimer's – but many CTE sufferers will die long before they reach this phase of the illness.

Junior Seau's death brought a shocking example of the effects of CTE into public focus. But autopsies performed on other players who committed suicide had already revealed these players suffered from CTE. Terry Long, for example, committed suicide after drinking antifreeze at age 45. His autopsy revealed CTE, but he had never been diagnosed with Alzheimer's or dementia. John Grimsley, who died of a gunshot wound in an apparent gun-cleaning incident, was also diagnosed with CTE. He was also 45 when he died. Andre Waters committed suicide at 44. Justin Strzelczyk's death while driving 90 miles per hour against oncoming traffic has been attributed to CTE as well. He was just 36 when he died.

In contrast to CTE, which appears almost ubiquitous among former players, Parkinsons, ALS and Alzheimers are more infrequent consequences of traumatic brain injury. A study of 3,439 retired players between 1959 and 1988 recorded 7 cases of ALS, 7 cases of Alzheimers, and 3 cases of Parkinsons. (See National Institute for Occupational Safety and Health, Brain and Nervous System Disorders Among NFL Players (Jan. 2013), http://www.cdc.gov/niosh/pgms/worknotify/pdfs/NFL_Notification_02.pdf. Combined, this is less than one half of one percent of the former players studied. CTE is the deadly mental illness most likely to affect most football players, not ALS, Parkinson's or Alzheimers.

### B. The Settlement Does Not Provide Monetary Compensation To Former Players Who Currently Suffer From CTE Or Are Diagnosed With CTE In The Future.

Despite the prevalence of CTE among former NFL players, shockingly, this settlement only provides monetary compensation for CTE to families of former players who died before July 7, 2014 – the day of the preliminary approval hearing. Former players who die of CTE just two weeks later, get nothing. Players currently suffering from CTE get nothing. Players who die from CTE many years from now may recover nothing from this settlement, unless they are eventually diagnosed with advanced dementia, ALS or Alzheimer's (meaning only a small percentage will recover) Even now, many of the athletes suffering from CTE may believe they will recover under this settlement because they know they suffer from the effects of traumatic brain injury.

Clerk of the District Court/NFL Concussion Settlement
October 14, 2014
Page 4

The Settlement defines Agreement "qualifying diagnosis" to include "a post-mortem diagnosis of CTE" only for Retired NFL Football Players "who died prior to the date of the Preliminary Approval and Class Certification Order." See Settlement Agreement, Doc. 6201, page 17 [¶¶ 2.1(yyy)] (definition of qualifying diagnosis, which refers readers to Ex. B-1, ¶ 5, at page 111).

The definition for CTE found in Exhibit 1 (Qualifying Diagnosis for Monetary Awards) is as follows: "For Retired NFL Football Players who died prior to the date of the Preliminary Approval and Class Certification Order, a post-mortem diagnosis of CTE made by a board certified neuropathologist." That's it. There is no additional monetary compensation for athletes who die after the preliminary approval order or who are diagnosed with CTE after the preliminary approval hearing.

The attorneys have justified the exclusion of CTE because at present CTE cannot be diagnosed definitively during one's lifetime. But this is a very new disease, and this is likely to change soon. A study at Boston University, called DETECT (Diagnosing and Evaluating Traumatic Encephalopathy Using Clinical Tests) is aimed at developing methods of diagnosing CTE in living subjects.

Another study at UCLA has identified tau proteins, the proteins identifying CTE, in living ex football players. See Small, G.W. et al., "PET scanning of brain tau in retired national football league players: preliminary findings." Am J Geriatr Psychiatry. 2013 Feb. 21(2):138-44. Discussed at http://www.technologyreview.com/news/522126/identifying-signs-of-chronic-brain-injury-in-living-football-players/

The settlement could allow for advances in medical diagnosis, and could also include compensation for the symptoms of CTE. At present, it only compensates those diagnosed with dementia. The suggestion that the settlement provides compensation for the symptoms of CTE is disingenuous.

The Parties are also hiding the fact that CTE sufferers will not be compensated. Although Class Counsel and indeed the NFL have implied in press interviews that those currently suffering from CTE would qualify based on their symptoms - that is not true. Many CTE sufferers do not meet the diagnostic criteria for dementia, and never will. The notice sent in the mail deliberately obscures the payments available under the Settlement Agreement. The notice states:

> Monetary awards are available for the diagnosis of ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (i.e., moderate Dementia), Level 1.5 Neurocognitive Impairment (i.e., early Dementia) or Death with CTE (the "Qualifying Diagnoses"). A Qualifying Diagnosis may occur at any time until the end of the 65-year term of the Monetary Award Fund.

> Long Form Notice, Section 14.

Clerk of the District Court/NFL Concussion Settlement
October 14, 2014
Page 5

This is misleading. As described above, payments for CTE are only available for those who died in 2014 – and will not be available for the next 65 years. Future payments are only available for individuals now alive who suffer from ALS, Parkinson's, Alzheimer's, and advanced Dementia (types 1.5 and 2.0).

In the press, the parties supporting this settlement imply that CTE sufferers will be compensated because of their symptoms. For example, David Steele's story, "Players Wrong on Key Factor in NFL Concussion Settlement" quotes class counsel as follows:

> CTE is not a relevant marker for anything in this settlement. It's the symptoms—if you have all the symptoms that are related to CTE, or the diseases that are related, like dementia and Alzheimer's and ALS, then that determines it," said Christopher Seeger, the co-lead counsel for the more than 5,000 players in the settlement.
>
> Available at http://www.sportingnews.com/nfl/story/2014-07-14/nfl-concussions-lawsuit-cte-symptoms-eligible-settlement-tony-dorsett-wycheck-seeger.

But as discussed above, CTE symptoms are not equivalent to dementia, ALS or Alzheimer's. The early symptoms of CTE can nonetheless cause devastating effects. The family lives of many young retired players will be destroyed by the mood disorders and lack of impulse control that can come with CTE. These are among the families that will be most in need of financial compensation over the next few years.

## C. The Settlement Has Other Features Unfairly Designed To Sharply Limit The Amount Of Compensation Former Players May Receive.

### 1. The Reduction Of Award Based On Age At Diagnosis Is Unfair.

Degenerative neurological conditions can easily be confused with other problems for many, many years. Over the next few years the tools and tests available to diagnose Alzheimers, dementia and CTE will no doubt change dramatically. But individuals suffering from these illnesses may only have been diagnosed after being ill for many years as well.

The objection filed by Susan Owens, as successor for R.C. "Alley OOp Owens, aka Raleigh Clement Owens (Doc. 6210), provides an example of how the settlement is unfair to those who are not diagnosed with relevant diseases until later in life. Owens played with the NFL from 1957 through 1964. He also worked in an administrative later in life. He was asked to retire at the age of 66 because he could not handle his job due to memory issues and confusion. Clearly he suffered during his lifetime for several years prior to his formal diagnosis with Alzheimer's in 2006 at age 72. Because he was not diagnosed until age 72, he will only be eligible for a $380,000 award. Had he been diagnosed earlier, when he was clearly already suffering from symptoms of the disease, his widow would be eligible for $620,000. This feature of the settlement is unfair.

Clerk of the District Court/NFL Concussion Settlement
October 14, 2014
Page 6

2. **The Reduction Of 75% When The Player Suffered Either A Stroke Or Another Brain Trauma Is Unfair.**

In Owens case, if he had either a stroke or a head injury outside of the NFL his award would be reduced by another 75%. So instead of the $380,000 award, his widow would only be eligible at most for $95,000. This is another unfair aspect of the settlement.

Former football players may be at increased risk of stroke because of medication prescribed by NFL doctors. As discussed in the Morey Objection, the NFL prescribed Toradol for many of its players, which is known to have increased risk of stroke. Doc. 6201, page 48. Despite this, the monetary portion of the settlement will be reduced by 75% for any player who has a stroke. Stroke and brain injury are joint effects of the injury caused by their play in the NFL. Purporting to compensate one effect, while making an exclusion based on the other effect, is another example of the way the NFL is essentially playing dodge ball here.

Exclusions based on just one other traumatic brain incident are also unfair. In any given game a football player might suffer from dozens of traumatic brain incidents, hundreds over a season, possibly thousands in the course of a career. Reducing compensation for players who have a single incident outside the NFL by 75% is absurd, and is just another indication of the way the parties have structured this Settlement to limit the NFL's liability while undercompensating the majority of players. This exclusion will be used to exclude most players – any player documented to have suffered any trauma, such as a very minor car accident.

3. **Government liens may take away many individuals' monetary compensation**

The Settlement Administrator is the Garretson Resolution Group. Review of their website, available at www.garretsongroup.com, indicates that their specialty is handling Medicare and healthcare liens. This suggests another aspect of this settlement that has gotten little attention so far.

Article XI of the Settlement Agreement explains that state and federal governments have the right to recover expenses associated with treatment for a player's illness. If a player were eligible for a $500,000 award and Medicare had paid $200,000 to treat his condition, the player would receive only $300,000. Unfortunately, the reverse might be true as well. The government's lien might far exceed the award under the settlement. This is another uncertainty to the settlement, which makes the representations made by the attorneys all the more misleading.

In a New York Times article, class counsel Chris Seeger is quoted as saying that in other settlements he had worked on, he negotiated a fixed deduction that was drastically lower than the amount that the recipients owed. The government, he said, prefers the certainty of receiving small amounts from every recipient rather than spending years trying to claw back money from many people. "The government likes these deals because rather than chasing these people individually, they can receive a fixed amount for each disease," he said. *See* Ken Belson, "For

Clerk of the District Court/NFL Concussion Settlement
October 14, 2014
Page 7

Retirees, Decision on Concussion Settlement Will Not Be a Simple One: N.F.L. Concussion
Settlement Divides Former Players," July 22, 2014, available at:
http://www.nytimes.com/2014/07/23/sports/football/nfl-concussion-settlement-divides-former-
players.html?_r=0. Unfortunately, in this settlement no fixed compensation has been arranged
with the government, so the players do not know how much, if anything, they will actually
recover from the settlement. Although the settlement covers medical treatment, it does not
appear to cover nursing home care. Liens for nursing home care can be extremely high, so the
advanced care that may be required for the most seriously ill athletes may not be covered. For
those not receiving any monetary compensation, that is particularly troubling.

### 4. *The Registration Procedures may exclude former players already suffering from diminished capacity*

For athletes already suffering from cognitive impairment the registration timing
requirements may preclude their participation. They simply may not be able to stay on top of the
deadlines for registering and seeking initial medical evaluation. These deadlines are arbitrary
and only meant to exclude. If the settlement is intended to last for 65 years as the NFL claims,
players should have a much longer window to register and seek medical evaluation.

### D. The Attorneys And Class Representatives Have Not Adequately Represented The Interests Of The Class.

The Class Reps do not represent the interests of the class. Shawn Wooden played with
the NFL from 1996 to 2004. He is still very young and does not allege that he has been
diagnosed with any neurocognitive impairment, or that he is at an increased risk of developing
CTE. Although he probably is, his lack of awareness of the risks of this condition renders him
unqualified to represent the interests of the class. An adequate class representative should at
least have done the work to familiarize himself with the scientific research coming out on this
disease. Representative plaintiff Kevin Turner suffers from ALS. Those diagnosed with ALS
represent only a small minority of the retired players in this settlement. His specific
individualized concerns, which are far different from the majority of the class create a conflict
with the class. He is also not an adequate representative plaintiff.

The lawyers are also not representing the interests of the class. They are asking for
excessive fees, but have not even give class members an opportunity to review their fee request.
I understand that this aspect of the settlement has already been challenged, and I intend to further
object to the attorneys' fees after review of their attorneys' fee motion.

### E. Conclusions.

This settlement is grossly unfair to the vast majority of retired NFL players who are
likely to suffer from the devastating effects of CTE. The early effects include mood disorders,
aggression, personality changes, depression, etc. For young men who often conquered great
odds to become professional athletes, it is tragic that they will be reduced to mere shadows of

Clerk of the District Court/NFL Concussion Settlement
October 14, 2014
Page 8

their former selves in this way.  Although it may be too late to reverse these tragic consequences
for these men, it is not too late to get compensation for them and their families, nor is it too late
to provide for adequate treatment – including nursing home coverage if needed.  Much as I
support my fellow athletes' desire to be compensated and get treatment as soon as possible, the
settlement as currently drafted is unfair and should not be approved.  The NFL should not be
allowed to release its liability for countless cases of CTE that may occur in the future for zero
compensation.

In conclusion, I would also like to join in the other meritorious objections filed in this
matter, specifically including the objections of Sean Morey, et al, Doc. 6201, including
specifically the declaration of neuropsychologist Dr. Robert Stern, Doc. 6201-16 (but not
excluding other meritorious objections).

This settlement is not fair to the players.  The NFL is making a fortune off its players, and
for years hid from us the risks we were assuming.  Please do not let them succeed in hiding the
ball with this settlement.

Sincerely,

Darren Russell Carrington

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB <br><br> MDL No. 2323 <br><br> **Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated,* | |
| Plaintiffs, | Civ. Action No. 14-00029-AB |
| v. | |
| National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc., | |
| Defendants. | |
| THIS DOCUMENT RELATES TO ALL ACTIONS | |

## DECLARATION OF DARREN RUSSELL CARRINGTON

I, Darren Russell Carrington, declare as follows:

1.      I am over the age of eighteen and a resident of the State of California.  The facts contained within this declaration are within my personal knowledge, except as to those facts alleged upon information and belief, which facts I believe to be true.  I make this declaration in support of my objection to the class action settlement in this matter.

2.      I am a settlement class member as I am a retired NFL football player.

3.      My date of birth is October 10, 1966.

4.      My career as an active NFL player was as follows:

    1989 - Denver Broncos;
    1990 - Detroit Lions;
    1991 to 1994 – San Diego Chargers;
    1995 - Jacksonville Jaguars; and
    1996 - Oakland Raiders.

I declare under penalty of the perjury under the laws of the United States of America

that the foregoing is true and correct. Executed this 14th day of October 2014 at San Diego,

California.

Darren Russell Carrington

- - - - - - - - FOLD HERE - - - - - - - -

U.S. POSTAGE
$2.25

APC

92024
Date of sale
10/14/14
906    2S00
083353448

A7894-10-M234942

Clerk of Court
NFL Concussion Case
US Dist Court
601 Market St
Philadelphia 19106~

U.S.M.S.
X-RAY

Ct
San Diego Ct 92128