# EXHIBIT 5

**The New York Times**

August 29, 2013

# N.F.L. Agrees to Settle Concussion Suit for $765 Million

By **KEN BELSON**

The National Football League has agreed to pay $765 million to settle a lawsuit brought by more than 4,500 players and their families, largely closing the legal front in the league's battle against accusations that it concealed what it knew about the dangers of repeated hits to the head.

The settlement, announced Thursday, will be seen as a victory for the league, which has nearly $10 billion in annual revenue and faced the possibility of billions of dollars in liability payments and a discovery phase that could have proved damaging if the case had moved forward.

The league has changed its rules to make the game safer and modified its medical protocols for concussions as mounting scientific evidence in recent years linked head trauma sustained on the field to long-term cognitive damage. Among the terms of the agreement is that the settlement is not to be regarded as an admission of guilt by the league.

"The settlement seems low considering the number of claimants and the severity of their conditions, but it also shows the uphill climb in proving the league was responsible for the players' injuries," said Michael LeRoy, who teaches labor law at the University of Illinois at Urbana-Champaign. "The league is keenly sensitive to its public image. It changes the conversation and really lets the air out of the publicity balloon."

The case was widely considered a possible reckoning for the N.F.L., which has been criticized in recent years after dozens of former players were found to have chronic traumatic encephalopathy, or C.T.E., a degenerative brain disease similar to Alzheimer's disease. It is believed to be caused only by repeated head trauma. While the settlement closes a legal case for the league, brain trauma among current and former players may continue to vex a sport that embraces violent collisions.

"Settlement on concussions not gonna make up for early death, forgetting kids stuff that come w/ brain trauma," the former N.F.L. player Aaron Curry, who ◄ the suit, said on Twitter.

Lawyers for the plaintiffs were eager to reach a settlement because many of th

OPEN

**MORE IN PR**

**Steelers**
**Terrible**
**Find Li**

**Read More**

NFL Agrees to Settle Concussion Suit for $765 Million - NYTimes.com

debilitating neurological problems that need attention. Without a deal, a legal remedy might have taken years, with no guarantee that the courts would rule in favor of the players.

"The big picture was we got immediate care to the retired players, and I think we accomplished that," Christopher Seeger, a lawyer for the plaintiffs, said.

A court-appointed mediator helped the two sides reach the settlement; it now needs approval from Judge Anita B. Brody of United States District Court in Philadelphia.

The money would be used for medical exams, concussion-related compensation and a program of medical research for retired players and their families. The money, which may not be distributed for many months, will be available to all retired players with neurological problems, not just the plaintiffs. The N.F.L. also agreed to pay legal fees for the plaintiffs' lawyers, a sum that could reach tens of millions of dollars.

The pool of beneficiaries could be smaller or larger than the number of plaintiffs in the case, depending on how many retired players with neurological problems come forward. The settlement does not cover current players.

"Rather than litigate literally thousands of complex individual claims over many years, the parties have reached an agreement that, if approved, will provide relief and support where it is needed at a time when it is most needed," Layn Phillips, the mediator, said in a statement.

The settlement will include $675 million for players or the families of players who sustained cognitive injury. As much as $75 million will be set aside for baseline medical exams. A $10 million research fund will be established. Assuming Judge Brody signs off, the deal could take about 180 days for the players to start receiving compensation, Mr. Seeger said.

Mr. Seeger added that the players would not have to prove that their health issues were the result of head injuries sustained in the N.F.L. Compensation will be based solely on a player's age and years in the league, not the position he played or the number of concussions he might have sustained.

If the deal is approved, approximately half of the settlement amount will be paid over the next three years, with the balance issued over the next 17 years.

"This agreement lets us help those who need it most and continue our work to make the game safer for current and future players," Jeffrey Pash, the N.F.L.'s executive vice president, said.

Kevin Turner, 44, a former fullback for the Philadelphia Eagles and the New England Patriots who has had A.L.S., also known as Lou Gehrig's disease, for four years, said he was happy with

N.F.L. Agrees to Settlement of Concussion Suit for $765 Million - NYTimes.com

the settlement because it will provide money to needy players like himself and avoid years of potential litigation.

"I thought five years would be great and maybe I could live to see that," said Turner, who spends about $8,500 a month on medicine and doctor visits, some of which is covered by existing N.F.L. health plans, which will remain in effect regardless of the settlement. "There will always be people who said there should have been more, but they are probably not the ones with A.L.S. and at home."

Turner said he and other plaintiffs wanted to raise awareness about their injuries, not hurt the N.F.L. But the case threatened to contribute to the waves of negative publicity the league received in recent years as researchers began examining the brains of former players.

C.T.E. was found in the brain of the former Eagles defensive back Andre Waters after his suicide in 2006. Since then, the disease has been found in nearly every former player whose brain was examined. (C.T.E. can be diagnosed only posthumously.) Most notably, the former N.F.L. linebacker Junior Seau was found to have the disease after he committed suicide last year, and in 2011, Dave Duerson, a former Chicago Bears player, shot himself in the chest, saying in a note that he wanted his brain donated for research. Doctors determined that Duerson had C.T.E.

"On the eve of a new season, to put this litigation in the past, has to be the best news for the N.F.L.," said Robert Boland, who teaches sports management at New York University.

The plaintiffs said that the N.F.L. took until 2010 to properly warn players about how concussions could affect their brain functions long after they had retired. They said that the league did so despite scientific evidence to the contrary, and that the league failed to regulate the sport in a manner that would prevent brain injuries. Many players said they sustained multiple concussions that were improperly treated by team medical personnel.

The N.F.L. denied it knowingly misled players about head injuries and said it relied on the best science available at the time to create its concussion policies. It argued that the collective bargaining agreements signed by the league and its players union should govern any disputes, not the courts.

Judge Brody was expected to rule on the league's motion to dismiss in July, three months after she heard oral arguments by the lawyers representing both sides. Instead, she appointed a mediator to work with the league and the plaintiffs to see if a settlement could be reached out of court. Mediators do not make binding rulings, but instead try to help the participants to narrow their differences.

Case 2:12-md-02323-AB Document 6422-6 Filed 11/12/14 Page 5 of 5

The first concussion-related cases against the N.F.L. and Riddell, the helmet manufacturer, were filed more than two years ago. To streamline adjudication, the cases were consolidated in federal court in Philadelphia a year ago. Riddell did not agree to take part in the settlement. The plaintiffs' lawyers will continue their case against the company.

The size of the N.F.L. settlement could motivate other athletes to sue their leagues, including the N.C.A.A. But those players may not get as far as the N.F.L. retirees if they are unable to show that a league or governing body knowingly withheld information about the dangers of head injuries.

"The big difference between the N.F.L. and other cases is that in the N.F.L. case, the league may have known more than the players and taken active steps to misinform them," said Gabe Feldman, the director of the sports law program at Tulane University. "But as far as I know, we don't have that in other leagues. That won't necessarily stop other lawsuits, but it will prompt other leagues to get ahead of this."