**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : : : : | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | : : : : : | Hon. Anita B. Brody |

### SECOND OPT OUT REPORT
### SUBMITTED BY THE CLAIMS ADMINISTRATOR

BrownGreer PLC ("BrownGreer"), the Claims Administrator under the proposed Class Action Settlement Agreement ("Settlement Agreement") in this matter, submits this Second Opt Out Report to supplement the initial Opt Out Report filed on November 3, 2014 (Document 6340, "First Opt Out Report"):

    **1.** *Opt Out Report by the Claims Administrator.* Pursuant to Paragraph 4.j of the July 7, 2014 Preliminary Approval Order (Document 6084, "Preliminary Approval Order"), BrownGreer filed its First Opt Out Report to provide the Court with a list of all of the individuals who mailed the Claims Administrator apparent requests to be excluded from the Settlement. The First Opt Out Report summarized the Opt Out-related correspondence we had received as of the Report's November 3, 2014 filing date and detailed the process by which we reviewed and reported on Opt Outs.

    **2.** *Timeliness Designations in First Opt Out Report.* As detailed in Paragraph 14 of the First Opt Out Report, BrownGreer tracked whether an Opt Out request appeared to be timely or untimely under the directive in Paragraph 4.g of the Preliminary Approval Order that such

1

requests be "postmarked" on or before October 14, 2014.  Paragraph 3 of the First Opt Out Report explained that we had received 220 Opt Out requests that appeared to be timely and 14 Opt Out requests that appeared to be untimely.

3. *New Opt Out Correspondence and Supporting Materials.* Since the November 3, 2014 filing of the First Opt Out Report, we have received additional correspondence and inquiries from certain Class Members whose Opt Out requests had been identified in the First Opt Out Report as appearing to be untimely, including correspondence from Class Members voicing disagreement with the First Opt Out Report's timeliness assessment.  We analyzed all of this material thoroughly and conducted additional research where appropriate to assess the proper classification of Opt Out requests as timely or untimely. After this analysis and investigation, five Opt Out requests that appeared to be untimely as of the First Opt Out Report now appear to be timely, as explained more fully in Paragraph 4 below. Exhibit 1 to this Second Report identifies the 225 Opt Out requests that appear to be timely after these events.  Exhibit 2 lists the 10 Opt Out requests that appear to be untimely. This table summarizes the two Exhibits:

| OPT-OUT REQUESTS:  SUMMARY OF SECOND REPORT | | |
|---|---|---|
| **A.  TIMELY OPT OUT REQUESTS (See Exhibit 1)** | | |
| **1.** | **Retired NFL Football Players** | 201 |
| **2.** | **Relatives of a Retired NFL Football Player** | 22 |
| **3.** | **Unable to Identify Settlement Class Member Type** | 2 |
| **4.** | **TOTAL** | 225 |

| OPT-OUT REQUESTS:  SUMMARY OF SECOND REPORT ||  |
|---|---|---|
| **B.  UNTIMELY OPT-OUT REQUESTS (See Exhibit 2)** |||
| 5. | **Retired NFL Football Players** | 9 |
| 6. | **Relative of a Retired NFL Football Player** | 1 |
| 7. | **TOTAL** | 10 |
| **C.  REVOCATION REQUEST** |||
| 8. | **Retired NFL Football Player** | 1 |

4.  *Developments Since the Filing of the First Opt Out Report.*  We provide this update to the Court and the Parties:

(a) Moffitt, John (classified as untimely; #7 in Exhibit 2):  On November 13, 2014, we received an Opt Out request from this Class Member, postmarked on November 10, 2014.  Because of that postmark date, we have classified this request as appearing to be untimely.

(b) Gayle, Shaun (reclassified to timely as #74 in Exhibit 1):  Mr. Gayle's Opt Out request postmarked on the Opt Out deadline of October 14, 2014, and thus timely submitted, did not arrive in the Claims Administrator's P.O. Box until November 4, 2014, the day after the filing of the First Opt Out Report on November 3, 2014.  On November 4, 2014, we received an envelope from Mr. Gayle's counsel containing a copy of Mr. Gayle's Opt Out request. Mr. Gayle himself also had mailed us his Opt Out request from London, England, but we had received his envelope on October 21, 2014, without a postmark or date of any kind.  According to the timeliness assessment rules set out in Paragraph 14 of the First Opt Out Report, we identified this Opt Out request as appearing to be untimely in the First Report because its October 21, 2014 date of receipt was controlling at that time.  The copy of this Opt Out request that we received on November 4, 2014, bearing an October 14, 2014 postmark by the United States Postal Service now moves Mr. Gayle's request into the group that appear to be timely.

(c) Anderson, Ottis J. (reclassified to timely as #5 in Exhibit 1):  The envelope of this Opt Out request bore competing October 15, 2014, and October 14, 2014 dates.  The October 15 postmark clearly shown on the envelope was the date on which the United States Postal Service processed the mail.  The October 14 date was the date shown in the postage placed on the envelope by Mr. Anderson using a Pitney Bowes postage machine.  Under the rules by which we measure timeliness, the office mark by the Postal Service controls, rather than the date shown in the postage placed on the item by an office postage machine, for we use the official mail handling date rather than a

3

date placed on the envelope by the sender.  On November 7, 2014, we received an email from Mr. Anderson's counsel containing a copy of a Receipt for Certified Mail issued by the Postal Service showing an October 14, 2014 postmark date for the mailing of Mr. Anderson's opt out to us.  A Receipt for Certified Mail has two components: (1) a sticker that is placed on the envelope that bears a bar code and a tracking number: and (2) a receipt retained by the sender that bears the same tracking number and a hand-stamped postmark date.  We did not have the Receipt for Certified Mail bearing the October 14, 2014 date until Mr. Anderson's counsel sent it to us on November 14.  This Second Opt Out Report now classifies this Opt Out request as timely, using the hand-stamped postmark date on the Receipt for Certified Mail as indicating from an official source that the Opt Out request was placed in the custody of the Postal Service on October 14, 2014.

(d) Ford, Bernard (reclassified to timely as #71 in Exhibit 1):  The envelope containing this Opt Out request did not bear any postmark date or date of any kind.  According to the timeliness assessment rules set out in Paragraph 14 of the First Opt Out Report, we identified this Opt Out request as appearing to be untimely in the First Report because the missing a postmark made the date we received it, October 18, 2014, controlling.  On November 6, 2014, at the request of Mr. Ford's counsel, we emailed him a high resolution scanned image of the front and back of this envelope.  On November 10, 2014, Mr. Ford's counsel emailed us a letter from an employee with a local United States Postal Service Consumer Affairs office explaining that she was able to scan an Intelligent Mail Barcode sprayed onto the envelope when it passed through a cancelling machine in a Postal Service Sorting Facility to determine the date the envelope passed through the machine.  This Consumer Affairs employee stated that her scan of the bar code indicated that this envelope had run through her cancelling machine on October 14, 2014.  We confirmed this sequence of events in a telephone conversation with this Postal Service representative. This Second Opt Out Report now classifies this Opt Out request as timely, using the October 14 date that the envelope passed through the cancelling machine and this was in the custody of the Postal Service.

(e) Bebout, Nick (reclassified to timely as #18 in Exhibit 1) and Thomas L. Rentzel (reclassified to timely as #157 in Exhibit 1):  The envelopes of these two Opt Out requests bore competing October 15 and October 14 dates.  The October 15 postmark clearly shown on each envelope and used as controlling in the First Opt Out Report was the date on which the United States Postal Service processed those mail items, and normally is the only official Postal Service date mark that would appear on a mailed letter.  These two envelopes also bear an October 14 date that we have confirmed is the result of the manner in which the two Post Office facilities that received these letters handle mail dropped at the facility after mail processing closes for the day.  As a courtesy, the window tellers at the Post Office in Riverton, Wyoming, that handled Mr. Bebout's envelope will, upon affirmative request from a customer, provide a red ink hand-stamped date at closing time that is technically intended for use on "nonmachinable" or oddly shaped mail that cannot be run through the Post Office's standard, automated processing machine.  This "nonmachinable"

4

mail requires an additional 21 cents in postage to cover the manual handling. If the teller does not collect that additional postage, the letter receives "machinable" treatment that results in the envelope receiving a competing official postmark when it is actually processed by the Post Office. Mr. Bebout's envelope bears this courtesy hand-stamped October 14 mark but also received a competing October 15 mark from the automated mail processing machine when the Post Office actually processed the envelope the next day. The Fairfax, Virginia Post Office that handled Mr. Rentzel's envelope confirmed a similar courtesy manual stamping process. The Fairfax Post Office will hand stamp in red an item that is received after processing hours if the teller window is still open. At one time, the office sorted any such hand-stamped mail out of the machine-processed mail to prevent competing postmarks, but the volume of mail that particular facility's processing plant now experiences has required them to cease that practice. As a result, Mr. Rentzel's envelope shows the October 15 mail processing date, and an October 14 hand stamp indicating receipt by the Fairfax Post Office. It thus appears that both these Opt Outs were in the custody of an office of the United States Postal Service on October 14, even though they did not actually process them as mail until the next day, October 15. This Second Opt Out Report now classifies these two Opt Out requests as timely, using the date of receipt by the United States Postal Service as controlling, rather than the date of mail processing.

(f) Horn, Joseph (still classified as untimely as #6 in Exhibit 2): We were contacted by counsel for Joseph Horn, who has contended that the October 14 date shown in the postage placed on the envelope by his firm's postage machine should control rather than the Postal Service postmark of October 15, 2014, on the envelope. Because the Postal Service mark is an official indication of the date that the Postal Service processed the letter, this Second Opt Out Report continues to classify this Opt Out request as appearing to be untimely.

There have been no further developments regarding the other Opt Out requests identified in the First Opt Out Report.

Respectfully submitted,

**CLAIMS ADMINISTRATOR**

By:  /s/ Orran L. Brown
Orran L. Brown
VSB No. 25832
BROWNGREER PLC
250 Rocketts Way
Richmond, VA  23231
Telephone:  (804) 521-7201
Facsimile:  (804) 521-7299

Date:  November 13, 2014          Email:  obrown@browngreer.com

5

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Second Opt Out Report was filed electronically this 13th day of November, 2014, and was served electronically upon Class Counsel, counsel for the NFL Parties and all counsel of record by the United States District Court for the Eastern District of Pennsylvania's electronic filing system, and was further served on such date, along with a copy of the First Opt Out Report, by United States mail upon each person who submitted an Opt Out request, or upon the counsel for such person, if represented.

/s/ **Orran L. Brown**
Orran L. Brown
Virginia State Bar No. 25832
BrownGreer PLC
250 Rocketts Way
Richmond, Virginia  23231
Telephone:  (804) 521-7201
Facsimile:  (804) 521-7299
Email:  obrown@browngreer.com