IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | ) ) ) ) No. 2:12-md-02323-AB ) ) MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*, | ) ) ) Hon. Anita B. Brody ) ) |
| Plaintiffs, | ) Civil Action File No. 2:14-cv-01480-AB ) |
| v. | ) ) |
| National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc., | ) ) ) ) |
| Defendants. | ) ) ) |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | ) ) ) |

## SUPPLEMENT TO OBJECTION BY ESTATE OF RETIRED NFL PLAYER DELANO ROPER WILLIAMS TO PROPOSED CLASS SETTLEMENT

Linda Williams, individually, and as representative of the Estate of Delano R. Williams ("Ms. Williams"), by her attorney, Parag Shah, hereby submits this motion in further support of her Objection filed on October 14, 2014, Dkt. No. 6221 ("Objection"). Objector supplements her argument, set forth in Part II.B.b of the Objection, that the proposed Settlement unfairly prejudices claimants whose access to their medical records has been diminished by the passage of time. There is no material distinction between her claims and those asserted by the representatives of deceased retired NFL players who died after January 1, 2006, and even though Mr. Williams' records are no longer available, objective evidence shows that he died from Amyotrophic Lateral Sclerosis ("ALS").

1

This Objection is about whether Del Williams died with ALS, as indicated by the following three documents:

(1) Del Williams' death certificate lists his cause of death as: "Cardiac arrest, due to respiratory acidosis, as a consequence of Amyotrophic Lateral Sclerosis." (Exhibit 1)

(2) The NY Times obituary for Del Williams dated November 30, 1984 states, "Del Williams, a former star offensive guard at Florida State University and with the New Orleans Saints, died Wednesday at age 39 of amyotrophic lateral sclerosis, the illness known as Lou Gehrig's disease." (Exhibit 2)

(3) The Tallahassee Democrat obituary for Del Williams dated November 29, 1984 states, "Earlier this year, Williams came in a wheelchair to Live Oak for a last reunion with old teammates, schoolmates and coaches. The disease that struck down Lou Gehrig . . . hit Williams late last season. . . . The disease is usually fatal within two to six years. Williams' time was shorter. With Williams, it apparently started in the summer of '83. The little finger on his left hand started to droop. It seemed like nothing. Then it worsened. In October, he saw a neurologist, but it was not until last February that his affliction was diagnosed by the Mayo Clinic." The article goes on to quote Bobby Bowden, assistant coach in 1964 with the FSU Seminoles while Williams: "'The last time I saw Del was last August,' said Florida State's head coach. 'He was lying in a van, had been to Live Oak and was returning to Slidell. He could talk only a little then. But there was that old smile'." (Exhibit 3)

Under this Settlement as proposed, the NFL will not acknowledge that Del Williams died with ALS. By negotiating this settlement, the NFL has made a commitment to fully compensate

those retired athletes who suffered the worst neurological diseases. The NFL has made it clear that ALS is the worst of these diseases, as evidenced by the proposed compensation grid. They have agreed that those athletes who played at least 5 eligible seasons and were diagnosed before the age of 45 deserve to be fully compensated because they have the strongest causal link between playing in the NFL and being inflicted with one of the qualified neurological diseases.

Mr. Williams is the person this settlement is intended to protect. He played for the New Orleans Saints for 7 seasons and died at the age of 39, just 10 years after retiring from the NFL. The NFL has acknowledged that such a diagnosis of a qualified neurocognitive disease at a young age and within a relatively short period of time post-playing career is most indicative of a causal relationship. As indicated by the NFL's response brief where, on page 99, they state, "the assertion by BIAA that an 80-year old Retired NFL Football Player diagnosed with Alzheimer's Disease should be awarded the same monetary amount as a 40-year old who receives the same diagnosis runs contrary to medical, scientific and societal expectations . . . ." However, this settlement requires Mr. Williams' family to prove his diagnosis only through certain medical records.[1]

In February of 1984, Mr. Williams was diagnosed with ALS by Dr. Peter Dyck at the Mayo Clinic. He was admitted to Baptist Memorial Hospital in November, 1984, where he was treated by pulmonologist Dr. John Thiele. Mr. Williams died on November 28, 1984. Dr. Thiele died in January, 2011. In addition, Baptist Memorial Hospital was destroyed by Hurricane Katrina. As a result of Katrina, as well as the expiration of any legal duty to retain medical records, Mr. Williams' family has no medical records to submit.

---

[1] This Settlement is not about proving causation. That element has been negotiated out of the Settlement. This is about how to show the former player's condition by objective sources.

The NFL, on pages 132-133 of their response to our objection, states that a Death Certificate can be considered a medical record. However, the response states that the death certificate has to be signed by a credentialed physician as defined by the settlement, which would be neurologist, neurosurgeon, or other neuro-specialist physician.

This rigid requirement regarding what type of physician issues the death certificate prohibits Mr. Williams and others in similar situations from proving their debilitating neurocognitive illnesses as the majority of death certificates are signed by doctors other than neurologists. In fact, according to the Mayo Clinic, the most common cause of death for people with ALS is respiratory failure. (Exhibit 4) This means that in a patient's final days, he or she will be under the care of a pulmonologist, such as Dr. Thiele, which is who signed Mr. Williams' death certificate.

The NFL suggests that this is an anti-fraud measure. However, there is nothing unreliable about the contents of a death certificate if it is signed by someone other than a neurologist.[2] In fact, the American Academy of Neurology, in their paper linking neurodegenerative causes of death among retired NFL players, based their conclusions on findings made by reviewing death certificates. (Exhibit 5) Additionally, the Journal of Epidemiology and Community Health, in 1992, concluded that death certificate diagnoses of ALS were accurate. (Exhibit 6)

Furthermore, the anti-fraud argument made by the NFL is hypocritical. On page 131 of their response, the NFL makes this same argument of anti-fraud when addressing how the eligibility requirement is to be proven. There the NFL says that players may use objective evidence (See fn. 67) such as pay stubs, newspaper printouts, etc. When discussing proving

---

[2] Furthermore, Mr. Williams' Death Certificate was completed and signed before this litigation was filed. Therefore, there was no incentive for committing the "fraud" the NFL insists they are attempting to preclude.

4

qualifying diagnoses however, the NFL states that obituaries and similar testimony would not provide objective evidence.

ALS is a debilitating illness and the physical ailments associated with the disease are well-known. A player would be unable to fraudulently claim to be inflicted with ALS, because the disease manifests distinct symptoms which create objective corroborating evidence of the diagnosis. Thus, any objective, credible evidence should be available to the Class Administrator to review to determine whether a former player was diagnosed with a qualifying diagnosis.

## CONCLUSION

Ms. Williams renews her objection to the proposed Settlement and the NFL's response to her original objection, because it unfairly and arbitrarily prohibits her from proving that her husband was diagnosed with ALS, suffered from ALS, and died as a consequence of this qualifying diagnosis. The NFL's requirement that a qualified physician, namely a neurologist, neurosurgeon, or neuro-specialist physician, sign the death certificate in order for it to be a valid form of proof is both unfair to plaintiffs and a completely and arbitrary decision on the part of the NFL. All objective, credible evidence should be allowed to prove diagnosis of a qualifying neurocognitive disorder.

Respectfully submitted,

Dated: November 18, 2014

Parag Shah
The Shah Law Firm
1355 Peachtree St.
Suite 1800
Atlanta, Georgia 30309
Tel. (404) 844-4874
Fax (404) 410-6933
Shah@shahlawfirm.com
*Attorney for Linda Williams*