**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | NO. 2:12-md-02323-AB MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*, Plaintiffs, v. National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc., Defendants. | Civil Action No. 2:14-cv-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**SETTLEMENT CLASS MEMBER, BEN UTECHT'S, REBUTTAL TO  NATIONAL FOOTBALL LEAGUE'S AND NFL PROPERTIES LLC'S MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AGREEMENT AND IN RESPONSE TO OBJECTIONS**


**AND**


**SUPPLEMENT TO UTECHT OBJECTIONS**

## Table of Contents

I.    INTRODUCTION    1

    A.    CTE Will Never be Added as a Qualified Diagnosis    1

    B.    There is No Security of Any Kind Whatsoever    1

    C.    Releases Will Not be Rendered Null and Void if the NFL Does Not Pay as Promised    1

    D.    It is Highly Unlikely the Funds Sufficient to Pay All Future Claims Will be Available From Years 11 – 65    2

II.   THE COURT SHOULD REJECT THE RSA BECAUSE THERE IS NO ASSURANCE THAT ALL MONETARY AWARDS WILL ACTUALLY BE PAID    2

    A.    The Court Should Reject the RSA Unless it Confirms with Certainty that the Promised Reserve Fund Will, In Fact, Contain Funds "Sufficient" to Pay All Future Monetary Awards from Year 11 Through Year 65 as Promised in the RSA    2

    B.    The RSA Guarantees That an Initial One-Time Deposit Into the Statutory Trust Reserve Fund Will be Sufficient to Pay All Monetary Awards (and Other Expenses) From Year 11 Through Year 65.    3

    C.    Since the NFL Has Sole Discretion to Determine the Amount it Will Not be Sufficient to Pay All Awards From Year 11 Through Year 65    4

    D.    The Court Should Reject the RSA Unless and Until it is Certain That Three Propositions Necessary to the RSA's Performance as Promised are True    6

    E.    It is Not Possible to Determine in the 10th Year How Much Money Must be Reserved to Guarantee That Funds Will be Sufficient Through Years 11 – 65—55 Years Later    7

    F.    Because the NFL Has Sole Discretion to Determine the Amount it Will Deposit the Court Must Presume the Amount Will be Insufficient Unless and Until the NFL Rebuts the Presumption    8

G.     No Standard is Possible by Which the NFL's Discretion May be Tested so That a Court May (i) Order a Larger Amount, or (ii) Deny an NFL Requested Withdrawal on the Grounds That Funds Will Not be Sufficient     8

H.     The NFL Has Not Agreed to Actually Pay ANY Monetary Awards: It Has Agreed Only to Pay Money Into Certain Trusts From Which Awards May be Paid     10

I.     The RSA Acknowledges That the NFL Might Not Perform its Payment Obligations; Settlement Class Members Not Yet Paid Have No Meaningful Recourse     11

III.     THE STATUTORY TRUST HAS BEEN FALSELY REPRESENTED AS A GUARANTEED RESERVE FUND WHICH UNCONDITIONALLY GUARANTEES THE PAYMENT OF ALL MONETARY AWARDS     12

A.     Section 25.6 Creating the Statutory Trust Reserve Fund Represents That Funds Sufficient to Satisfy All of the NFL's Payment Obligations From Year 11 Through Year 65 Will be Reserved and Available to Pay Monetary Awards Received by Settlement Class Members at Any Time During Those Years— This is a False Representation     14

B.     Section 25.6 is Captioned "Security" and Has Been Sold to Settlement Class Members as a Guaranteed Reserve Fund; Class Counsel Used it to Sell the RSA to Settlement Class Members     14

C.     The RSA Has Been Used as a Sales Brochure by Class Counsel Falsely Representing That The Investment They Have Made in the Form of Their Releases is Guaranteed When it Is Not, In Fact, Guaranteed     14

IV.     HOW THE NFL PAYMENT OBLIGATIONS WORK UNDER THE RSA: SELECTED SECTIONS     16

A.     Terminology     16

B.     Art. XXIII: NFL Payment Obligations     17

V.     CONCLUSION     20

## I.    INTRODUCTION

Ben Utecht ("Utecht") filed objections to several sections of the revised settlement agreement ("RSA") on the grounds that the language used purports to provide benefits to Settlement Class Members that are not actually delivered as advertised.

A.    <u>CTE Will Never be Added as a Qualified Diagnosis</u>.  Settlement Class Members are misled to believe that if medical science develops so that CTE may be diagnosed during a lifetime, it may be added to Qualified Diagnoses for which Monetary Awards might be made. While this is not impossible, it is highly improbable since it may only occur with the NFL's consent; and there is no reason for the NFL to consent to accept many millions of dollars of additional liability after they have already obtained the Settlement Class Members' brain injury releases under the RSA. (*Utecht Objection*: II,C,1, p. 7).

B.    <u>There is No Security of Any Kind Whatsoever</u>.  Settlement Class Members are led to believe that the NFL's obligation to pay Monetary Awards is backed up by "security" during the first ten years when no security, in fact, is provided by the RSA. (*Utecht Objection*: II,C,2, p. 8).  Utecht's claim is that the RSA uses misleading language to create the appearance that there is "security" backing the NFL's obligations to pay during the first 10 years when no security is, in fact, provided.

C.    <u>Releases Will Not be Rendered Null and Void if the NFL Does Not Pay as Promised</u>.  Settlement Class Members are led to believe that if the NFL does not pay, the RSA entitles them to obtain a court order cancelling their releases.  This, too, is highly unlikely.  Since the NFL has not agreed to grant Settlement Class Members anything more than their existing breach of contract remedies (for breach of the RSA), the motion for an order to show cause promised in the RSA at Sec. 25.6 will almost certainly be denied.  Rescission of the releases is

an equitable remedy.  Equitable relief will not be available to Settlement Class Members because they already have a breach of contract claim for damages at law.  It is black letter law that an equitable remedy cannot be granted in cases where a claim for monetary damages is available. (*Utecht Objection*: II,C,4, p. 16).

D.      It is Highly Unlikely the Funds Sufficient to Pay All Future Claims Will be Available From Years 11 - 65.  Finally, and most importantly, the RSA and statements made to the Settlement Class Members lead them to reasonably believe that Sec. 25.6 of the RSA guarantees that a reserve fund will be available throughout all years from year 11 − 65 so that each player who wins a Monetary Award will be guaranteed payment even if the NFL for some reason will not, or cannot, pay the award.  This is the most devastating misleading provision addressed in Utecht's Objections because: If cash available to pay Monetary Awards is not guaranteed to be paid promptly when an award is made, then there is a risk that Settlement Class Members holding Monetary Awards won't get paid or that they will face costly and cumbersome further procedures or litigation to collect payment.  According to Class Counsel, it is to address this concern that the holders of Monetary Awards might not get paid, voiced by the Court and Settlement Class Members, that the Statutory Trust reserve fund is established in Sec. 25.6. (*See* Email of Class Counsel at Exhibit A).

## II.      THE COURT SHOULD REJECT THE RSA BECAUSE THERE IS NO ASSURANCE THAT ALL MONETARY AWARDS WILL ACTUALLY BE PAID.

A.      The Court Should Reject the RSA Unless it Confirms with Certainty that the Promised Reserve Fund Will, In Fact, Contain Funds "Sufficient" to Pay All Future Monetary Awards From Year 11 Through Year 65 as Promised in the RSA.  In order to focus the Court's attention on the most important of his objections, Utecht's Rebuttal is limited to discussion of the reserve fund promised by the Statutory Trust under Sec. 25.6 of the RSA.

2

B.     The RSA Guarantees That an Initial One-Time Deposit[1] Into the Statutory Trust Reserve Fund Will be Sufficient to Pay All Monetary Awards (and Other Expenses) From Year 11 Though Year 65.

1.     *Section 25.6(d) creates a "a special-purpose Delaware [Statutory Trust]" for the purpose of holding and administering reserves sufficient to pay Monetary Awards and other costs from year 11 though year 65 (a total of 55 years).*  To give effect to this payment obligation of the NFL, Sec. 25.6(d) of the RSA states that,

> [T]he NFL Parties shall contribute cash to the Statutory Trust so that as of the Tenth Anniversary Date, it shall contain funds that, in the reasonable belief of the NFL Parties, and after taking into account reasonably expected investment returns over time, will be sufficient to satisfy the NFL Parties' remaining anticipated payment obligations, as set forth in Section 23.5(d)(ii), as they come due.  (emphasis added).

2.     *Section 23.5(d)(ii) states that the Monetary Award Fund will be used to make Monetary Awards.*

> The Monetary Award Fund, … will be used to make payments for: (a) all Monetary Awards and Derivative Claimant Awards, as set forth in ARTICLE VI and ARTICLE VII; (b) certain costs and expenses of the appeals process, as set forth in ARTICLE IX; (c) costs and expenses of claims administration, as set forth in ARTICLE X; and (d) certain costs and expenses of the Lien identification and resolution process, as set forth in ARTICLE XI; . . . (emphasis added).

It is important to realize that the Monetary Award Fund must pay for a great deal more than Monetary Awards.  The amount of the one-time deposit into the Statutory Trust reserve fund required under Art. 25.6, and addressed at length below, must be enough to make all

---

[1] The RSA in Sec. 25.6 provides that a reserve fund be established not later than the end of year 10.  But it could be established and funded sooner than that.  Provisions are made in Sec. 25.6 to account for that.  This argument

disbursements described above.  This means that other disbursements compete with Monetary Awards to Settlement Class Members.  If the amount of the one-time deposit required to be made by the NFL into the Statutory Trust reserve fund turns out not to be sufficient to pay all obligations of the Monetary Award Fund, that will mean that Settlement Class Members' Monetary Awards would not be paid to the extent that funds were used to pay other disbursements.

        3.      *Sec. 2.1 of the RSA defines the following terms:*

> (aaa) "Monetary Award" means the payment of money from the Monetary Award Fund to a Settlement Class Member, . . .
> (bbb) "Monetary Award Fund" or "MAF" means the sixty-five (65) year fund, as set forth in Section 6.10.

        4.      *Therefore, the amount that "the NFL Parties shall contribute" into the Statutory Trust "as of the Tenth Anniversary Date," must "be sufficient to satisfy the NFL Parties' remaining anticipated payment obligations from year 11 through year 65."*  As detailed below, this is what Class Counsel promised to all Settlement Class Members.  (The particular manner in which these funds are paid to holders of Monetary Awards is detailed in Paragraph II.C. below at p. 4)

      C.    <u>Since the NFL Has Sole Discretion to Determine the Amount it Will Not be Sufficient to Pay All Awards From Year 11 through Year 65.</u>

        1.      *Sec. 25.6(d) of the RSA states that the amount required to meet its obligation to fund the reserve is the amount that,*

> . . . in the <u>reasonable belief of the NFL</u> Parties, and after <u>taking into account reasonably expected investment returns over time,</u>, will be sufficient to satisfy the NFL Parties' remainin anticipated

payment obligations, as set forth in Section 23.5(d)(ii), as they come due.  (emphasis added).

2.      *The NFL's obligation to guarantee that funds "sufficient to satisfy the NFL Parties' remaining anticipated payment obligations" for years 11-65 will not be met.*

a.      This means that Class Members who receive Monetary Awards made in the distant future will not have access to reserve funds to collect awards from the Statutory Trust after the money runs out.  The promise made in Sec. 25.6 is that this cannot happen to a Class Member—that all awards after year 10 will be fully funded by a guaranteed reserve.  This is critical to all Settlement Class Members whose awards come after the first ten years to guarantee they will be paid even if the NFL refuses to pay or cannot pay.  Absent this guarantee, it's possible that the NFL won't promptly pay for a host of reasons (*e.g.*, the RSA administration process itself might become bogged down in litigation; some Class Members might sue the NFL and Class Counsel for fraud in their inducement not to opt-out; the criminal investigation now underway against the NFL for illegally administering controlled substances to players, or some future scandal, might cause too many sponsors and fans to stop supporting the NFL; the NFL might be reorganized in ways that affect payments if it loses its tax or anti-trust exemption;  or another market crash might lead to a depression forcing the NFL, along with many other large companies, banks, and even cities into bankruptcy—pensions of Detroit workers were just cut 25%).  A lot can happen during the 55 years that Settlement Class Members will be relying upon the Statutory Trust reserve fund.

b.      The reason the NFL's obligation will not be met is that they are not, in fact, required to meet it as the RSA is presently worded. Sec. 25.6(d) does not empower a panel of independent financial experts to determine that the amount the NFL is required to

deposit at the end of year 10 is "sufficient". It does not even require the NFL to add more money to the reserve if funds run low. It requires only that the NFL makes a <u>one-time deposit</u> before the end of year 10 in the amount determined by the NFL itself based on its "<u>reasonable belief of the NFL</u> Parties, and after taking into account <u>reasonably expected investment returns</u> over time, will be sufficient to satisfy the NFL Parties' remaining anticipated payment obligations . . ." over the next 55 years! (Emphasis added).

D.     <u>The Court Should Reject the RSA Unless and Until it is Certain That Three Propositions Necessary to the RSA's Performance as Promised are True</u>. For the Court to approve the RSA, in reliance upon a high level of certainty that the reserve fund promised by the Statutory Trust promised in the Sec. 25.6 will actually be performed, the Court would have to find that <u>all</u> of the following propositions are reasonably reliable.

(i)     That it is indeed possible (*i.e.*, not impossible) to determine how much would have to be reserved in year 10 to guarantee that funds would be "sufficient" through year 65—55 years later.

(ii)     Since the NFL has sole discretion to determine the amount, that the NFL will not be biased toward underfunding when they calculate what they "reasonably [believe]", based on their "reasonably expected investment returns", will be sufficient to guarantee payment of all Monetary Awards through the following 55 years.

(iii)     That some standard exists by which the NFL's reasonableness can be tested so that a court could require a larger amount without being reversed on the grounds that it was arbitrary and capricious.

<u>Utecht submits that NONE of these propositions are reliable</u>—certainly not reliable enough for him to depend on them for the long-term well being of himself and his family.

E.    It is Not Possible to Determine in the 10th Year How Much Money Must be Reserved to Guarantee That Funds Will be Sufficient Through Years 11 - 65—55 Years Later. Even the world's best independent investment experts cannot predict investment returns accurately enough to determine what amount would be sufficient to pay all awards for 55 years into the future.  Believing that they could would be to believe that an investor who started with a fixed amount in his investment fund when Eisenhower was president could have predicted how much he would have in his account today.  If this were possible, the world would have a lot more Warren Buffets than just the one we have.  Furthermore, the financial press has widely reported how over optimistic financial models not only failed to perform as promised but actually precipitated the 2008 financial catastrophe that required America's five largest investment banks to be bailed out by taxpayers.  Lehman Brothers, the one who wasn't, suddenly went from a global financial powerhouse into bankruptcy.  Simply put, long-term investment performance is very hard to predict and projections are notoriously unreliable.   Studies have shown that monkeys throwing darts at a list of stocks sometime do better than the average investment professional.  Yet, the NFL has promised the Settlement Class Members that they can better predict future returns than a stadium full of the world's most successful investment managers. This is a patently false claim.  Someone promising this to investors to obtain their money would go to prison.  Yet, the Court is asked to approve the RSA in which Settlement Class Members are induced to give their brain injury releases to the NFL in exchange for a promise that funds "sufficient" to pay their awards will be available up to 65 years from now to eliminate any possibility that they won't get paid.  It is not possible for the NFL to choose any number, however large or small, that will be "sufficient" to eliminate the risk that some Settlement Class Members might not be able to collect their awards.

F.     Because the NFL Has Sole Discretion to Determine the Amount it Will Deposit the Court Must Presume the Amount Will be Insufficient Unless and Until the NFL Rebuts the Presumption.  The NFL has an outrageous conflict of interest:  It has sole discretion to decide how much of its money will be required to be sufficient to pay all awards over a 55 year period of time.  Meanwhile, the actual amount is not knowable (*see* Paragraph D, above).  And no opinion but the NFL's is permitted to be considered—there is no check against the NFL's abuse of this power. The beneficiaries of the NFL's determination are the Settlement Class Members and their families.  And the less they decide to put in reserve the greater the risk that some might not be paid.  It was to assuage this concern that the Statutory Trust appears in the RSA as a guarantee that this cannot happen.  This is a classical case of the fox guarding the chicken coop.  And, here, there is absolutely no check against the hungry guard eating the chickens.  The Court should assume that the amount that is determined by the NFL is not fair to the Settlement Class Members unless and until the NFL rebuts the presumption.    Anything less would be a serious miscarriage of justice.

G.     No Standard is Possible by Which the NFL's Discretion May be Tested so That a Court May (i) Order a Larger Amount, or (ii) Deny an NFL Requested Withdrawal on the Grounds That Funds Will Not be Sufficient.

1.     *The Initial One-Time Deposit*.  The NFL has sole discretion to determine the amount sufficient to pay all awards in years 11 – 65.  Its discretion may be challenged only on the ground that it is not "reasonable."  There is no analysis, outside expert, or reference to any authority but the NFL itself—a football company.  The language of Sec. 25.6(d) requires only the "reasonable belief of the NFL Parties, . . . after taking into account reasonably expected investment returns over time, . . ." to support any amount determined by the NFL. Whether a

subjective or objective standard is applied it won't be possible to show that the NFL's determination of the amount is not reasonable—regardless of what the amount is—because it is not possible to predict the correct amount. Therefore, Settlement Class Members who challenge the "reasonableness" of the NFL's determination when they make it—ten years from now— cannot establish that whatever the NFL says it "believes" it is unreasonable.  <u>This is quite literally a matter of pure faith</u>. So the amount of the one-time payment that the NFL is obligated to make into the Statutory Trust reserve will be whatever the NFL says it will be based on their faith that they have selected the correct amount.

2.    *Subsequent Withdrawals from the Reserve Fund*. To make matters <u>much</u> worse, the NFL has the unilateral right to withdraw money from the Statutory Trust reserve fund under various circumstances—*i.e.*, attaining investment returns exceeding the amount necessary to satisfy the NFL Parties' remaining anticipated payment obligations; or reductions to the NFL Parties' remaining anticipated payment obligations.  In theory, such withdrawals appear reasonable.  No point in tying up the NFL's money if it won't be needed to fund its payment obligations.  But, in practice, it might not work that way. The RSA requires court approval of such withdrawal requests.  But court approval is meaningless because the court is required to grant any request at any time unless Settlement Class Members opposing it can prove something that it is impossible to prove.  Sec. 25.6 provides,

> To the extent that Court approval is required for the withdrawal of funds from the Statutory Trust, such approval shall be granted unless there has been either a material default on the NFL Parties' payment obligations within the prior thirty (30) days, or upon a showing, by clear and convincing evidence, that the proposed withdrawal would materially impair the Settlement Agreement.

The impairment that would affect Settlement Class Members (whose only interest in the Statutory Trust is to collect their awards) would be that there might not be enough money left to pay them after the withdrawal.  Assuming that the NFL keeps its nose clean for at least 30 days the court is required to approve a withdrawal request unless Settlement Class Members prove by "clear and convincing evidence" that remaining funds will not be sufficient to pay all claims through the 65th year.  For the same reason that the world's best independent investment experts cannot accurately determine the amount that would <u>be sufficient</u> to pay all future awards for many years into the future, the Settlement Class Members will not be able to prove that remaining funds will <u>not be sufficient</u> by any standard; much less by the clear and convincing evidence standard of the RSA.

      H.     <u>The NFL Has Not Agreed to Actually Pay ANY Monetary Awards: It Has Agreed Only to Pay Money Into Certain Trusts From Which Awards May be Paid</u>.

      1.     *Section III details the manner in which the NFL will fulfill its payment obligations*.  The reader is referred there for a fuller understanding of the NFL Payment Obligations under the RSA.

      2.     *Art. XXIII of the RSA is titled "NFL Payment Obligations."*  It provides:

> Section 23.1 Funding Amount. <u>In consideration of the Releases and Covenant Not to Sue</u> set forth in ARTICLE XVIII, and the dismissal with prejudice of the Class Action Complaint and the Related Lawsuits, and subject to the terms and conditions of this Settlement Agreement, <u>the NFL Parties will pay in accordance with the funding terms set forth herein</u>:
>
>     (a) Monetary Award Fund Amount. <u>The amount of money sufficient to make all payments set forth in Section 23.3(b) for sixty-five (65) years from the Effective Date</u>….
>
>     . . . . . . . . . . .

Section 23.2 Exclusive Payments. For the avoidance of any doubt, other than as set forth in Section 21.2[2], **the NFL Parties will have no additional payment obligations** in connection with this Settlement Agreement. (emphasis added).

All that the NFL actually agrees to pay in exchange for Settlement Class Members' releases of their brain injury claims is the "[t]he amount of money [that the NFL operating under an outrageous conflict of interest 'believes' is] sufficient to make all payments set forth in Section 23.3(b) for sixty-five (65) years from the Effective Date."   This fact is confirmed in Sec. 23.2 to eliminate any possibility of doubt that this is the NFL's ONLY payment obligation.  Individual Settlement Class Members will not  have a right to sue the NFL if they cannot collect a Monetary Award from the Statutory Trust reserve fund.  Rather, they will have to rely upon the same Class Counsel who has sold this deal to them; or some other class lawyer decades into the future.  One is left to his imagination to puzzle out what will happen to Settlement Class Members and their families 25 years from now, maybe sooner, when the amount that the NFL determined would be sufficient to pay all future awards IS NOT sufficient.

I.    The RSA Acknowledges That the NFL Might Not Perform its Payment Obligations; Settlement Class Members Not Yet Paid Have No Meaningful Recourse.

1.    *Art. 25.6(e) immediately follows Art. 25.6(d) discussed above concerning the Statutory Trust reserve fund.*  It provides that:

(e) In the event of a material default by the NFL Parties in satisfying their payment obligations as set forth in this Settlement Agreement, . . . Co-Lead Class Counsel shall have the right to petition the Court to make a finding that there has been a material,

---

[2] Section 21.2 Payment. No later than sixty (60) days after the Effective Date, the NFL Parties will pay, or cause to be paid, a total of One Hundred and Twelve Million Five Hundred Thousand United States dollars (U.S. $112,500,000) into the Attorneys' Fees Qualified Settlement Fund, as set forth in Section 23.7, to be held in escrow until such payment shall be made as directed by the Court.

> uncured default . . . and to enter an order directing the NFL Parties to meet their payment obligations. Beginning on the Tenth Anniversary Date, any such petition by Co-Lead Class Counsel may request that the Court direct the NFL Parties <u>to meet their payment obligations with the funds available in the Statutory Trust established by the NFL Parties pursuant to Section 25.6(d)</u>.

This clause is meaningless to Settlement Class Members whose awards are received after the tenth year.  If the problem they are having is that the Statutory Trust has run out of money, a court order to satisfy their obligation from the Statutory Trust will be worth no more than the paper it is written on.

        2.     *Art. 25.6(g) provides:*

> In the event the Court enters an order pursuant to Section 25.6(e) directing the NFL Parties to meet their payment obligations pursuant to Section 23.3 and the NFL Parties fail materially to comply with such Order, as set forth in Section 25.6(e), Co-Lead Class Counsel may request that the Court provide the NFL Parties sixty (60) days to show cause why the Court shall not render null and void the Releases and Covenants Not to Sue provided to Released Parties, as set forth in Section 18.1, . . .

This clause provides that in the event a court <u>does</u> order the NFL to meet its payment obligations and the NFL does not comply, the Class Counsel (not counsel for any particular unpaid Settlement Class Member) may ask a court to "render null and void the Releases and Covenants Not to Sue" provided under the RSA to certain but not all Settlement Class Members.[3]  There are two reasons that this gives little comfort to Settlement Class Members.  First, if the NFL has met its obligation to make the one time payment of the amount the NFL "believes" will be sufficient

---

[3] These include: Settlement Class Members who: (i) have received a final, favorable Notice of Registration Determination, as set forth in Section 4.3, and have not received a final and accrued Monetary Award or final and accrued Derivative Claimant Award as of the date of such application; or (ii) who have only received a final and accrued Monetary Award for a Level 1.5 Neurocognitive Impairment or a final and accrued Derivative Claimant Award for a Level 1.5 Neurocognitive Impairment as of the date of such application. For the avoidance of any doubt, all other Releases and Covenants Not to Sue shall remain effective.

to pay all awards (which it surely will) then it will have met its obligations even if many Settlement Class Members have unpaid awards. Second, the likely answer of the court when asked to rescind releases and covenants not to sue is that Settlement Class Members, as a class, have a contractual right to sue the NFL for breach of contract damages. The law of equity in U.S. courts generally provides that equitable remedies, like rescission, are not available to people who have a contractual right to recover damages. And even if a few Settlement Class Members did obtain rescission of their releases, it would only mean they are back where they were before the class action case began. Only, rather than joining a force of 20,000 plaintiffs they would have only the small number of allies who obtained releases to start a new class action against the NFL.

      3.    *What Settlement Class Members need is payment of their Monetary Awards.* <u>If the promise that the Statutory Trust reserve fund will have sufficient funds to pay all awards was made from what it now is into a legitimate guarantee fund, there would relatively little no risk that the NFL's failure to meet its monetary obligations would deprive a Settlement Class Member of full and prompt payment of his award</u>. Articles 25.6(e) and (g) provide no meaningful protection to Settlement Class Members. The protection they need is the Statutory Trust reserve fund that was sold to them as an inducement not to opt-out. Because they did not opt-out they no longer control their releases. So, it appears that the NFL has conspired with Class Counsel to secure the releases without the NFL actually legally binding itself to pay what has been promised.

**III.   THE STATUTORY TRUST HAS BEEN FALSELY REPRESENTED AS A GUARANTEED RESERVE FUND WHICH UNCONDITIONALLY GUARANTEES THE PAYMENT OF ALL MONETARY AWARDS.**

A.   <u>Section 25.6 Creating the Statutory Trust Reserve Fund Represents That Funds Sufficient to Satisfy All of the NFL's Payment Obligations From Year 11 Through Year 65 Will be Reserved and Available to Pay Monetary Awards Received by Settlement Class Members at Any Time During Those Years—This is a False Representation</u>.

B.   <u>Section 25.6 is Captioned "Security" and Has Been Sold to Settlement Class Members as a Guaranteed Reserve Fund; Class Counsel Used it to Sell the RSA to Settlement Class Members</u>. The NFL and Class Counsel attempt to mislead the Court by pointing out that the lack of funds in the Statutory Trust is irrelevant since the NFL continues to owe the same obligation to pay Settlement Class Members' awards whether or not the promise made in Sec. 25.6 is broken.  This is a red herring.  The Statutory Trust reserve fund in Sec. 25.6 is a substantive legal obligation so important that Messrs. Coben and Weiss used it to help persuade the Settlement Class Members to accept the RSA.  They cited the Court's concern that sufficient funds might not be available to pay all Monetary Awards when it rejected the previous agreement. *Then they cited the Sec. 25.6 reserve fund as a guarantee that no Plaintiff will go unpaid under the new RSA*.  They made similar oral statements in the course of selling the RSA to Settlement Class Members.

C.   <u>The RSA Has Been Used as a Sales Brochure by Class Counsel Falsely Representing That The Investment They Have Made in the Form of Their Releases is Guaranteed When it Is Not, In Fact, Guaranteed</u>.  And it worked.  Almost all Settlement Class Members decided to release their brain injury claims against the NFL.  In exchange for delivering them,

14

the NFL has promised to pay the lawyers up to $112.5 million! How did Class Counsel persuade the Settlement Class Members to release their claims against the NFL?

       1.    *Here's an example*.   In an email dated June 24, 2014, (*see* Exhibit A) Messrs. Coben and Weiss said this to the Class they represent:

> Good News!  Today, we filed our revised Petition for Preliminary Approval of the Settlement.  The revised Petition includes substantive changes to the Settlement Agreement, which we feel very strongly meet all of Judge Brody's concerns. It has obviously taken a considerable amount of time but the wait has been well worth it.
>
> You may recall that when Judge Brody denied our Petition she wrote that: " [*sic*] <u>I am primarily concerned that not all Retired NFL Football Players who ultimately receive a Qualifying Diagnosis or their related claimants will be paid …. In various hypothetical scenarios, the Monetary Award Fund may lack the necessary funds to pay Monetary Awards for Qualifying Diagnoses</u>". (emphasis added).

       2.    *Implying a presumption of the Court's approval of the new RSA Messrs. Coben and Weiss went on to assuage the concerns of thousands of Settlement Class Members by representing the Statutory Trust as a reserve fund guaranteeing that all Monetary Awards will be paid*.

> First, the revised Settlement Agreement guarantees that **ALL AWARDS WILL BE PAID. Article III . 3.1** states that the NFL agrees to pay all monetary awards and **Article XXIII 23.1** mandates the NFL to pay all claims for 65 years after the effective date of the settlement. Under **Article XXIII. 23.3** the NFL will make 6 initial monthly installments of $20mm into the MAF. After 6 months the Claims administrator will on the 10th day of the month request the NFL to add money to pay all final and accrued awards and (maintain a $10mm reserve through year 10, $5mm through years 11 to 50, and smaller sums thereafter. **Article XXV 25.6** secures all future payments. It states that no later than the tenth anniversary of the effective date of the Settlement, the NFL will establish a Special Purpose Delaware Statutory Trust and immediately fund it to cover all future Payments**.  (emphasis in the original).

15

The first and most important points they made to Settlement Class Members on the day they announced the RSA were that: (1) "Settlement Agreement **guarantees** that ALL AWARDS WILL BE PAID;' (2) "Article XXIII 23.1 mandates the NFL to pay all claims for 65 years after the effective date of the settlement;" and that "Article XXV 25.6 **secures** all future payments" and that the NFL will establish a trust in the tenth year and "immediately fund it to cover **all** future Payments." (emphasis added). **They plainly state to the Settlement Class Members that the Statutory Trust will be a fully funded reserve that guarantees that all Monetary Awards from the 11th through the 65th year will be paid.** The importance of assuring Settlement Class Members that "ALL AWARDS WILL BE PAID" is obvious from the use of extra-giant letters to say it. And from the references in the email to the Court's concern to make sure this is true at the outset of the email we hope the Court will be equally concerned. Unless this problem is solved, the bogus nature of the Statutory Trust is reason enough to reject the RSA and send the parties back to the bargaining table to fix it.

## IV.   HOW THE NFL PAYMENT OBLIGATIONS WORK UNDER THE RSA: SELECTED SECTIONS.

A.   Terminology.

1.   *The following definitions appear in Sec. 2.1 of the RSA:*

(aaa) "Monetary Award" means the payment of money from the Monetary Award Fund to a Settlement Class Member, . . .
(bbb) "Monetary Award Fund" or "MAF" means the sixty-five (65) year fund, as set forth in Section 6.10.
(oo) "Funds" means the Settlement Trust Account, the BAP Fund, the Monetary Award Fund, and the Education Fund.
(qqqq) "Settlement Trust" means the trust enacted pursuant to the Settlement Trust Agreement, as set forth in Section 23.5.
(rrrr) "Settlement Trust Account" means that account created under the Settlement Trust Agreement and held by the Trustee into which

the NFL Parties will make payments pursuant to ARTICLE XXIII of this Settlement Agreement.

(ssss) "Settlement Trust Agreement" means the agreement that will establish the Settlement Trust and will be entered into by Co-Lead Class Counsel, the NFL Parties, and the Trustee, as set forth in Section 23.5(c).

2.      *This one from Section 6.10: Monetary Award Fund Term.* The Monetary Award Fund will commence on the Effective Date and will end sixty-five (65) years after the Effective Date.

B.      Art. XXIII: NFL Payment Obligations.

1.      *Section 23.1 states the maximum amount that the NFL can be required to pay under the RSA.*

Section 23.1 Funding Amount. In consideration of the Releases and Covenant Not to Sue set forth in ARTICLE XVIII, and the dismissal with prejudice of the Class Action Complaint and the Related Lawsuits, and subject to the terms and conditions of this Settlement Agreement, the NFL Parties will pay in accordance with the funding terms set forth herein:

(a) Monetary Award Fund Amount. The amount of money sufficient to make all payments set forth in Section 23.3(b) for sixty-five (65) years from the Effective Date….

. . . . . . . . . . .

Section 23.2 Exclusive Payments. For the avoidance of any doubt, other than as set forth in Section 21.2[4], the NFL Parties will have no additional payment obligations in connection with this Settlement Agreement. (Emphasis added).

Sec. 23.1 and 23.2 state plainly (i) that "The Monetary Award Fund Amount" is "[t]he amount of money sufficient to make all payments set forth in Section 23.3(b) for

---

[4] Section 21.2 Payment. No later than sixty (60) days after the Effective Date, the NFL Parties will pay, or cause to be paid, a total of One Hundred and Twelve Million, Five Hundred Thousand United States dollars (U.S. $112,500,000) into the Attorneys' Fees Qualified Settlement Fund, as set forth in Section 23.7, to be held in escrow until such payment shall be made as directed by the Court.

sixty-five (65) years from the Effective Date….” and, (ii) that the NFL will have no additional payment obligations under the RSA.

2.    *Sec. 23.3(b) states how and to what accounts the NFL will make payments.*

> Section 23.3 Funding Terms. The NFL Parties’ payment obligations will be funded as follows:
>
> . . . . . . . . . . .
>
> (b)    Monetary Award Fund. The NFL Parties will pay, or cause to be paid six initial monthly installments of Twenty Million United States dollars (U.S. $20,000,000) each, into the <u>Settlement Trust Account</u> for transfer by the Trustee into the Monetary Award Fund. (Emphasis added).

This section goes on to require the NFL to make six initial monthly deposits of $20 million each into this fund and detailing a complicated claims administration process and appeals procedure requiring the NFL to make additional monthly deposits as necessary to “maintain a targeted reserve” of  $10,000,000 during the first through tenth years of the Monetary Award Fund; $5,000,000 during the eleventh through fiftieth years of the Monetary Award Fund; $1,000,000 during the fifty-first through sixtieth years of the Monetary Award Fund; and $250,000 during the sixty-first through sixty-fifth years of the Monetary Award Fund.

3.    *Sec. 23.5 requires the establishment of a Settlement Trust to receive all NFL payments and administer them.*

> Section 23.5 Settlement Trust
>
> (a) Promptly following the Effective Date, [counsel for the parties] will file a motion seeking the creation of a Settlement Trust under Delaware law and the appointment of the Trustee. . . .
>
> . . . . . . . . . .
>
> (d) The Settlement Trust will be composed of the Funds. The Trustee will <u>also</u> establish three separate funds (the “Funds”), into which the <u>NFL Parties will make payments</u> as required by this Settlement Agreement.   The Trustee will <u>also</u> establish three

18

separate funds (the "Funds"), into which the <u>Trustee will transfer funds</u> at the direction of the Special Master (or the Claims Administrator after expiration of the term of the Special Master and extension(s) thereof) and pursuant to the terms of this Settlement Agreement and on which the Special Master (or the Claims Administrator after expiration of the term of the Special Master and any extension(s) thereof) will have signatory authority. These Funds will constitute a single qualified settlement fund:

This clause appears to say that the NFL will perform its payment obligations by depositing money into the Settlement Trust which will maintain separate accounts for the BAP Fund; the Monetary Award Fund; and the Education Fund or directly into one of these funds as the RSA provides.  There is no question that the NFL has this obligation.  **But that does not guarantee that they will perform it.**  The purpose of the Statutory Trust reserve fund is to guarantee payment of Monetary Awards even if they don't perform.

4.     *Section 23.5(d)(ii) states that after money is received into the Monetary Award Fund it will be used to make Monetary Awards.*

The Monetary Award Fund, … will be used to make payments for: (a) all Monetary Awards and Derivative Claimant Awards, as set forth in ARTICLE VI and ARTICLE VII; (b) certain costs and expenses of the appeals process, as set forth in ARTICLE IX; (c) costs and expenses of claims administration, as set forth in ARTICLE X; and (d) certain costs and expenses of the Lien identification and resolution process, as set forth in ARTICLE XI;

5.     *Section 23.6 provides that funds held in the Funds, which includes the Monetary Award Fund, must be managed conservatively to ensure "timely availability of funds, protection of principal and avoidance of concentration risk."*

Section 23.6 Funds Investment

(a) To the extent funds are available for investment, amounts deposited in each of the Funds <u>will be invested conservatively in a manner designed to assure timely availability of funds, protection of principal and avoidance of concentration risk</u>.   (Emphasis added).

That this clause is present is positive proof that the NFL acknowledges that it cannot predict how much money will be required to meet its obligations defined as the Monetary Fund Amount:  "The amount of money sufficient to make all payments set forth in Section 23.3(b) for sixty-five (65) years from the Effective Date . . . ."  (Sec. 23.1(a)).   This amount is plainly expected to run into hundreds of millions of dollars over 65 years' time.   Conservative investment is called for to guard against the countless risks that affect investment returns. <u>Notwithstanding their best efforts, the NFL may get terrible investment results.  If they do, there is every reason to expect the amount in the Statutory Trust reserve will not be sufficient to pay all awards as promised</u>.

## V.    CONCLUSION

Every Settlement Class Member owns an asset:  A legal claim against the NFL for his brain injury.  Its value is contingent upon later establishing his qualification for a Monetary Award.  It is highly likely that many will one day make a claim for a Monetary Award.  Indeed, the NFL and Class Counsel argue that even those with CTE will have legitimate claims based on other Qualified Diagnoses although CTE is not covered.[5]  So, it follows according to the NFL's and Class Counsel's own arguments to the Court that a large percentage of Settlement Class Members will receive a Monetary Award sometime within the next 65 years.

---

[5] Utecht disagrees with this and strongly objects to the fact that CTE is not covered but the NFL and Class Counsel should be held to the positions they advance as they seek the Court's approval.

Therefore, the legal release of liability that each Settlement Class Member gives to the NFL under the RSA represents a valuable economic asset.  Its value is whatever each Settlement Class Member stands to receive in the future.  The actual amount for many, maybe most, will exceed $1,000,000 if most awards are made before age 60.  Therefore, the value of each release that each Settlement Class Member is giving in exchange for his right to seek and obtain a future Monetary Award is substantial.  For many, this is the largest <u>investment decision</u> he will ever make in his life.

The RSA has been sold to Settlement Class Members based on the promise that that Statutory Trust will be established by the end of the 10th year with funds sufficient to pay all future Monetary Awards through the 65th year.  This promise is so essential to Settlement Class Members that Class Counsel represented it to them as a "guarantee" that their Monetary Awards will be paid.  A "guarantee' means there is <u>no</u> possibility that once an award is made that it will not be paid.  Without it, there are a host of possibilities that awards will not be paid.  Were it not so, Class Counsel would not have to promise their clients that they have a "guarantee."

The NFL claims that they are putting up "security" arguing that their credit rating on bonds will protect Settlement Class Members.   This is utterly false—that credit rating only suggest that the NFL is financially strong today.   It provides no security whatsoever against which Settlement Class Member's may collect awards if the NFL does not fulfill its payment obligation.  The NFL might default for a many reasons even though it has a billion dollars of cash on hand.  This happens ever day all throughout the American business community; the courts are full of cases where plaintiffs are suing to collect from big companies that didn't make a payment when due.  The only real security that Settlement Class Members may rely upon is the Statutory Trust reserve fund. But the NFL is obligated only to make a <u>one time</u> deposit of funds

sufficient to pay all Monetary Awards (and other expenses) for the next 55 years.  After the NFL makes this deposit, it has no further payment obligation to fund the Statutory Trust reserve fund—even if the fund runs out of money.  And it is highly likely the funds will not be sufficient as promised.  Especially after the NFL makes withdrawals from the Statutory Trust which no one will be able to prevent.

What the Court is witnessing here is a scheme by which the NFL will obtain maybe more than $1 billion dollars worth of valuable assets from nearly 20,000 Americans by paying Class Counsel up $112.5 million to deliver their clients' assets to the NFL in exchange for a bogus guarantee that there is NO RISK that Monetary Awards made more than 10 years into the future will go unpaid.  This, alone, is plenty of reason that the Court should reject the RSA.  Any approval should be conditioned on changes to the RSA that make the representations that have been made by the NFL and Class Counsel to Settlement Class Member actually TRUE.  Otherwise the Court would be facilitating fraud.  If this RSA is approved as now written it will open up a Pandora's Box of consequences for all concerned.


Dated: November 18, 2014                     Respectfully submitted,

                                             /s/ Scott D. Hillstrom
                                             Scott D. Hillstrom
                                             GUARDIAN LAW GROUP, LLC
                                             527 Marquette Avenue South, Suite 1660
                                             Minneapolis, Minnesota 55402
                                             Phone: (612) 730-5884
                                             Email: scott.hillstrom@me.com

                                             **Attorney for Ben Utecht**

**<u>Certificate of Service</u>**

I hereby certify that I am an employee of Guardian Law Group, LLC and that on November 18, 2014 I caused the foregoing SETTLEMENT CLASS MEMBER, BEN UTECHT'S, REBUTTAL TO NATIONAL FOOTBALL LEAGUE'S AND NFL PROPERTIES LLC'S MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AGREEMENT AND IN RESPONSE TO OBJECTIONS AND SUPPLEMENT TO UTECHT OBJECTIONS to be filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel of record.

/s/ Andrew R. Lewis
Andrew R. Lewis

23