UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS'
CONCUSSION INJURY LITIGATION,

Kevin Turner and Shawn Wooden,
*on behalf of themselves and others similarly situated,*

Plaintiffs,

– against –

National Football League and NFL Properties, LLC,
successor-in-interest to NFL Properties, Inc.,

Defendants.

No. 2:12-md-02323-AB
MDL No. 2323

Civil Action No. 2:14-cv-00029-AB

**AMICUS CURIAE OBJECTION OF DAWN ASTLE AND CLAIRE ASTLE TO CLASS ACTION SETTLEMENT**

## INTRODUCTION

Dawn and Claire Astle (the "Astles") are the daughters of English football star Jeff Astle. The Astles are in the planning stages of founding an organization based in the United Kingdom dedicated to educating the public concerning and fighting the ongoing battle against concussions and Chronic Traumatic Encephalopathy ("CTE") in the game of football and supporting its players affected by these issues. The Astles have reviewed the Objection of Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick "Rock" Cartwright, Jeff Rohrer, and Sean Considine to Class Action Settlement (the "Morey Objection") and write as amicus curiae in support of it.

## JEFF ASTLE

Jeff Astle was an English football (soccer) player who was born in Eastwood, Nottinghamshire, England on May 13, 1942. A skilled and precocious athlete, Astle turned professional at the age of 17 with Notts County Football Club. Astle is best known as an all-time hero of West Bromwich Albion football club, for which he played between 1964 and 1974.

During that time period, Astle made 292 appearances for the club and scored 137 of his 174

professional goals for the Albion side.  Astle also made five appearances for the national team

representing England in international play.

In 1998, when Jeff was only 55 years of age, his family began to notice that he was

forgetting things.  Jeff could not remember such things as his grandson's name and whether his

mother (who had died some thirty years earlier) was still alive.  Shortly thereafter Jeff was

diagnosed with a degenerative brain disease, and eventually succumbed to his illness on January

19, 2002 at the age of 59.

English authorities conducted an inquest into Astle's death.  Her Majesty's Coroner,

Andrew Haigh, ruled that "Mr. Astle's type of dementia was entirely consistent with heading a

ball and the occupational exposure has made at least a significant contribution to the disease

which had caused his death."  Although the English Football Association and the Professional

Footballer's Association had committed to performing a 10-year study into the links between

heading footballs and degenerative brain disease, no such research has been concluded as of yet.

Dawn and Claire Astle are in the process of organizing a foundation in their father's

name with three principal aims: to support those in football and their families who suffer from

CTE-based dementia; to educate the public of the risks of head injuries in sports and the long

terms risks associated therewith as a major public health issue; and to conduct independent

research into sports-related head injuries.

### <u>OBJECTION</u>

As an organization devoted to combating brain injuries in all sports, Justice for Jeff has

an interest in voicing its objection to the proposed settlement in the instant matter.  Simply put,

the Astles do not feel as though the settlement goes far enough in providing for those athletes

diagnosed with CTE but who did not die prior to the approval of the settlement. ***All sufferers*** should be compensated, not just those who died prior to the arbitrary settlement approval date.

The Astles believe that it is unfair for class members who are not diagnosed prior to the certification of the class to receive nothing. Symptoms of CTE can take years to develop. Jeff's CTE did not become fully apparent until he was 55 years old and had been retired from football for years. As in Jeff's case, present class members who do not show signs of CTE prior to the preliminary approval of the settlement will be left with woefully inadequate compensation. As rightly stated in Point I of the Morey Objection, the rights of more than 20,000 former NFL players, many of whom are suffering from the football-industrial disease of CTE will be left without rights against the NFL. On this point, the settlement is not in accord with our stated objective of supporting the players and family members suffering from CTE, whether now or in the future.

More research is being done and needs to continue to be done to ensure that CTE is properly diagnosed before death. The Astles believe that if resources are devoted to this worthy study, CTE will be diagnosed in the living. If the appropriate medical research had been advanced enough at the time of the settlement, many living players could be diagnosed and would arguably fall into the compensated sufferers group. Current and future living CTE sufferers should not be denied compensation solely because the medical science has not quite developed to the point where CTE can be reliably diagnosed in a living person.

As mentioned above, we are committed to the furtherance of independent research into CTE and related illnesses. But for some members of the class, that research cannot come soon enough. It simply is not fair to exclude certain sufferers because of an arbitrary deadline set forth in the current proposed settlement. In so doing, the settlement fails to take into account the

rapidly developing science in this area.  Indeed, as pointed out in the Morey Objection, "the

Settlement anticipates relevant advances in science and medicine that will allow a more precise

diagnosis of diseases related to MTBI – ***but only to disallow recovery***."  Morey Objection at 26.

In sum, we strongly request that the Court reject the proposed settlement.  The Astles

believe that the current agreement fails to provide the support for current and future CTE

sufferers.  The public needs to be educated about these issues so that they may be prevented in

the future.  The Astles sincerely hope that the settlement will be rejected.


Dated:  New York, New York
        November 19, 2014

                                                GALLUZZO & JOHNSON LLP


_

                                                _____/s_____

                                                By: Zachary H. Johnson
                                                *Pro Bono Attorneys for Justice for Jeff*
                                                Galluzzo & Johnson LLLP
                                                48 Wall Street, 11th Floor
                                                New York, New York 10005
                                                Tel: 212.918.4661