UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,<br><br>            Plaintiffs,<br><br>      v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br><br>            Defendants. | Civil Action No. 2:14-cv-00029-A |

SUPPLEMENTAL MEMORANDUM OF
AMICUS CURIAE PUBLIC CITIZEN, INC.

Whether this Court should grant class certification—a precondition to settlement approval—turns on whether, under our adversary system, Rule 23, and the Due Process Clause, the lawyers who were appointed as class and sub-class counsel adequately represent the interests of the class as a whole in a way that allows them to decide who is entitled to recover under the settlement and, if so, how much. Amicus does not question the good faith of class counsel. Nonetheless, Rule 23 does not allow class counsel, representing only two of several necessary subclasses, to make decisions that they and defendants accurately describe as a compromise among the disparate interests of 20,000 class members with a wide range of differing present and potential injuries.

In their submission of November 12, 2014, class counsel forthrightly illustrate the fundamental reason why class certification in this case must be denied: Class counsel themselves undertook to mediate dramatically conflicting interests within the class without providing representation for (at least) the class's major subgroups. The declarations of Christopher Seeger, Arnold Levin, and Dianne Nast, as well as the supporting memorandum of class counsel, demonstrate that class counsel drew the lines on the key issues of (1) which diseases and conditions would and would not be eligible for payment from the Monetary Benefit Fund; (2) what the amounts would be on the Fund's grid; and (3) what reductions from the grid there would be for age at time of diagnosis and years of eligible service, among other factors. Class Counsel's Exh. 1 (Seeger Decl.) ¶¶ 18, 19, 20, 22, 30, 32, 36, 42, 51; Exh. 8 (Levin Decl.) ¶¶ 15, 19, 26, 32; Exh. 9 (Nast Decl.) ¶¶ 13, 14, 18, 24, 30. That is, class counsel decided which subgroups among the 20,000 members of the plaintiff class would receive which levels of benefits under the settlement and which would receive none at all.

The concern is not that the settlement was negotiated by counsel. Rather, the issue is the lack of representation of all affected interests. The role of class representatives is not just to supervise counsel, which in any event might be particularly difficult for class members affected by the kinds of injuries and resulting effects at issue here, but to exemplify the interests particular class counsel are legally and ethically bound to represent. The class here has only two representatives: Kevin Turner, who played more than five years, was under 45 when he was diagnosed with ALS, and will receive the highest benefits under the grid, and Shawn Wooden, who played more than five years, has no currently compensable diseases, but may be at risk of developing any number of diseases or conditions, only some of which are compensable. Given the wide range of diseases and conditions suffered by the class as a whole, the two class

representatives and their lawyers could not properly and adequately represent the divergent interests of the class as a whole. *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) ("[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members.") (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)).

The declaration of class counsel's proffered expert Professor Robert Klonoff highlights why counsel representing Mr. Turner and counsel representing Mr. Wooden alone cannot adequately represent the entire class. Professor Klonoff's premise is that the amount to which the NFL agreed originally for the Monetary Benefit Fund ($675 million), although later uncapped, is probably about as much as the NFL will agree to pay. Thus, the benefits must be defined in a way that would not increase the NFL's ultimate liability much beyond the $675 million figure. Accordingly, Professor Klonoff explains, any decision to allow coverage for, say, CTE, would necessarily reduce the amounts the NFL would be willing to pay for other conditions: "Expanding the settlement to include CTE would mean making cuts elsewhere, such as abandoning coverage for ALS, Alzheimer's Disease, or Parkinson's Disease." Exh. 7 (Klonoff Decl.) ¶ 85. That same reasoning applies to all other diseases, symptoms, or conditions suffered by class members who will receive no compensation from the Fund, as well as those who will receive reduced compensation based on age or years in the NFL. Allowing or increasing coverage for any condition or any set of players that is disfavored under the proposed settlement could be achieved only by decreasing the amounts payable for conditions covered by the grid.

Far from demonstrating that this consideration indicates that the reasonableness of counsel's decisions as to which lines to draw and where, Professor Klonoff's point illustrates why this set of lawyers cannot represent the entire class in this case: When the size of the

settlement pie is relatively fixed, the issue is not whether the settlement reflects the best way to divide the pie among the class—on that question, there can be no objectively correct answer—but whether Rule 23(a)(4) allows class counsel to do the dividing without providing separate representation to each of the major groups whose interests they are trading off against one another. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.").

      Class counsel's declarations state that they took all the relevant evidence into account in reaching what they consider to be balanced and reasonable judgments, and we do not doubt that they made every effort to do that. Counsel assigned themselves, however, an impossible task because no lawyers in their position could fairly balance the many contradictory factors that must be considered in making such decisions. The declaration of Dianne Nast illustrates the problem. Her declaration notes that Kevin Turner, the sole class representative for the Monetary Fund subclass for which she is counsel, will receive "a larger award" than others, and she defends that decision because "[o]bjectively …. ALS is a rapidly progressing neurological disease that invariably leads to death, usually within three (3) to five (5) years after the onset of symptoms." Exh. 9, ¶ 30; *see also* Exh. 1 (Seeger Decl.) p. 26, n.11. But the "objective" fact that ALS usually causes death within five years does not "objectively" require the conclusion that a former player who lives for 20 years with Level 2 dementia is entitled to at most 60% of that sum. There are no "objective" criteria on which such line-drawing can be based. Similarly, if all ALS victims live about the same length of time, it is not "objectively" the case that a player who is diagnosed at 45 should receive twice the amount of one who is diagnosed at 65. Moreover, if a class member with ALS were entitled to "a larger amount" than other class members, that point would not

"objectively" answer the question of how much larger, or why the amounts on the top row of the grid are the correct ones. In a case of this nature, with a varied group of class members, decisions of this kind cannot be made by lawyers representing two class members.

*Amchem* compels this conclusion. Although the intra-class conflict on which the Supreme Court focused there was between those presently injured and those who were not yet injured, the case stands for the principle that class counsel may not represent class members with conflicting interests in a settlement that allocates among differently situated members of a class a fund that cannot provide full compensation for all: "The settling parties, in sum, achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected. Although the named parties alleged a range of complaints, each served generally as representative for the whole, not for a separate constituency." 521 U.S. at 627.

Class counsel and Professor Klonoff argue that, if separate representation were required for each of the categories of class members who claim they are not being adequately represented, it would be impossible to negotiate a resolution. Class Counsel Memo at 27 (claiming that reasoning of objectors would require "veritable battalion of subclasses"); Exh. 7 (Klonoff Decl.) ¶¶ 39, 44 (suggesting the need for "neverending number of subclasses" with "dozens" of lawyers and subclass representatives). To begin with, this concern cannot override the requirements of Rule 23 and due process. *See Amchem*, 521 U.S. at 627. Moreover, although the major groupings of differently situated class members require representation, not every possible variation among class members need have its own sub-class. In this case, the major groups for which separate representation is required include players not yet manifesting any symptoms, players with each of the five diseases on the grid, players with CTE, and perhaps players with other common

diseases or conditions that were excluded. And if negotiating counsel proposed reductions for categories such as years played in the NFL or age of diagnosis for a compensable disease, or exclusions for time played in NFL Europe, separate counsel and class representatives would have to be added for those subgroups. Overall perhaps a dozen representatives would be needed—not an overwhelming number for a negotiation. Once chosen, those representatives, through counsel, would negotiate and, one hopes, reach a settlement, but one in which all affected interests would have their say, if not their way. This is what class counsel said they sought to do, but they did so without the full range of representatives at the bargaining table. Finally, if providing adequate representation during negotiations were in fact too unwieldy, the parties could have settled on behalf of the subclass that was in fact represented. Certification and settlement on behalf of absent class members without adequate and unconflicted representation, however, is not permitted by due process or Rule 23.

## CONCLUSION

Because the proposed settlement class does not adequately protect the interests of all class members, it cannot be certified.

December 1, 2014                                                                 Respectfully submitted,

                                                                                 */s Alan B. Morrison*

Allison M. Zieve                                             Alan B. Morrison
Scott L. Nelson                                              George Washington University
Public Citizen Litigation Group                                 Law School
1600 20th Street NW                                          2000 H Street NW
Washington, DC 20009                                         Washington, DC 20052
(202) 588-1000                                               (202) 994-7120
                                                              abmorrison@law.gwu.edu

Counsel for Amicus Curiae