IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL<br>LEAGUE PLAYERS' CONCUSSION<br>INJURY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | No. 2:12-md-02323 (AB)<br>MDL No. 2323 |

### RESPONSE OF SIXTEEN OBJECTORS TO THE MOTIONS FOR SETTLEMENT APPROVAL FILED BY THE NFL AND CLASS PLAINTIFFS

The settlement in its present form contains a central flaw rendering it unfair, unreasonable and inadequate.[1] The central flaw is this: thousands of former NFL players who currently suffer, or will suffer, from chronic traumatic encephalopathy ("CTE") were not represented as a subclass and have been carved out of the settlement entirely. The law of the Third Circuit and the Supreme Court do not permit certification of a class or the approval of a class settlement in such circumstances. Accordingly, the settlement should not be approved unless or until there is a CTE class representative and/or the benefits for "Death with CTE" before July 7, 2014 are extended after July 7, 2014 and throughout the class period.

It is abundantly clear that the objection to the settlement based on the CTE carve-out is, by far and away, the most significant hurdle for counsel for the NFL and the Class Plaintiffs as they seek settlement approval. To exclude CTE from the settlement, a reasonable, fair and

---

[1] Undersigned counsel filed a timely objection to the approval of the proposed settlement on October 14, 2014 (ECF No. 6242) on behalf of Aloyouis Chesley, Delbert Cowsette, Dustin Fox, James "Scottie" Graham, Frank Grant, Jimmie Jones, Herb Mul-key, Spain Musgrove, Lonnie Perrin, Kurt Pierce, Ricky Ray, Virgil Seay, Jesse Solomon (Mr. Solomon is represented by the law firm of Zuckerman Spaeder LLP for purposes of his NFL disability claims and by the firm of Rose, Klein & Marias LLP for purposes of the NFL concussion lawsuit. Mr. Solomon has requested to join in this objection, which request is approved by all counsel), John Stufflebeem, Ted Vactor, and Michael Wilcher. Undersigned counsel largely agrees with the arguments made by Steven Molo on CTE at the Fairness Hearing, but submits the following additional and largely unaddressed arguments for the Court's consideration.

adequate justification must exist. Yet in their filings on November 12, 2014 and at the Fairness Hearing on November 19, 2014, those advocating for the proposed settlement provided no reasonable explanation for this extraordinary carve-out. The reason for this glaring omission is simple – there is absolutely no legal justification for a class structure that fails to include a representative for CTE and there is no logic to a settlement that carves out all recovery for CTE after July 7, 2014, while providing recovery for this insidious and prevalent disease before July 7, 2014. The excision of the most serious and harmful disease caused by concussions from the NFL concussion lawsuit is not mere "line-drawing." Instead, this carve-out represents the results of an intra-class conflict between those who did not have subclass representation in the settlement and suffer from the most prevalent and significant injury complained of in the Complaint (CTE) and those who did have subclass representation during the settlement and received substantial benefits for injuries that are less prevalent in former NFL players like ALS, Parkinson's, and Alzheimer's.

The law does not permit approval of a class settlement here because certification of the class as presently constituted would be improper.[2] Adequate representation is a precondition for a valid class action settlement. *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 627 (1997). Without it, there is no valid class action to settle, and surely no basis for presuming that the settlement is "fair" as the NFL contends. ECF No. 6422 at 38. Just as this Court previously insisted on removing the settlement cap to assure that there was no intra-class conflict, the Court must now insist on the appointment of additional subclass representatives to protect the interests of former NFL players who—under the proposed settlement—will develop chronic traumatic encephalopathy (CTE) as a result of repeated traumatic brain injuries sustained in the NFL but

---

[2] *See* Objs. of Sixteen Pls. to Approval of Settlement 3-4, 10-15 (ECF No. 6242).

receive no compensation because neither CTE nor any symptoms of CTE other than certain forms of dementia are included as a qualifying diagnosis.

I.   **There is no Dispute that CTE, the Most Serious, Harmful and Prevalent Brain Disease Caused by Football Related Concussions, is a Distinct and Identifiable Disease.**

There is no dispute in the scientific community or in this lawsuit that CTE is a disease characterized microscopically by the proliferation of tau proteins that is distinct from ALS, Parkinson's, and Alzheimer's. CTE is characterized symptomatically by emotional and behavioral abnormalities in addition to the neurocognitive decline that may (or may not) also result in certain forms of dementia. Co-lead class counsel once proclaimed on their website that, "CTE is believed to be the most serious and harmful disease that results from NFL and concussions." In their opposition to the NFL's motion to dismiss, they noted the prevalence and severity of CTE: "Players who sustain repeated concussive and sub-concussive impacts are at great risk of developing chronic traumatic encephalopathy ("CTE") and other serious neurological disorders. *Id.* ¶¶ 72-74. Those disorders, which remain latent for years, can culminate in severe disability and death. *Id.* ¶¶ 74, 133, 238." ECF No. 4130 at 4. Further, they acknowledged the emotional and behavioral toll of CTE: "football players contract CTE and other brain diseases at alarming rates and that the rate of depression among former NFL players is almost triple that of the general population. *Id.* ¶¶ 76-78. All told, brain disease has claimed the lives of at least 40 football players – and has ruined many more. *Id.* ¶ 122." *Id.* at 5.

By including benefits of up to $4 million for "Death with CTE" in instances where the former NFL player's death occurs before July 7, 2014 (but not after), counsel for the NFL and the Class explicitly recognize, as they must, that CTE is a serious, identifiable medical condition that can be diagnosed with certainty after death. By including this settlement provision they also acknowledge that CTE is distinct and distinguishable from all other medical conditions including

ALS, Parkinson's, Alzheimer's and Dementia Level 1.5 and 2.0. The settlement structure, which creates financial offsets when players suffer from more than one qualifying diagnosis, also explicitly recognizes that a player may suffer from more than one distinct medical condition. For example, a player may suffer from Alzheimer's and Dementia Level 1.5. A player may suffer from Parkinson's and Alzheimer's. A player may suffer from CTE and any of the other qualifying conditions. But, as the settlement structure acknowledges, these medical conditions are distinct. Yet the settlement only provides for compensation for former players with CTE who died before July 7, 2014, while denying compensation to former player who die after July 7, 2014 or those who may be diagnosed with CTE while living. This is the definition of an unfair, unreasonable and inadequate settlement provision. The CTE carve-out is arbitrary and extreme.

## II.     Jesse Solomon – A Case Study in the Unfairness, Unreasonableness, and Inadequacy of the Settlement Proposal.

A former player who endures years of misery or disability, or who commits suicide as a result of CTE after preliminary approval will get nothing, while a former player with the same condition and experience who dies before preliminary approval will receive up to $4 million. Likewise, a former player who endures years of misery or disability as a result of CTE – a disease not found in the general population – will get nothing if he dies with the disease after July 7, 2014, yet a player who develops a disease found in the general population (like Alzheimer's) receives compensation under the settlement, even if it actually has nothing to do with playing in the NFL. These are not hypothetical or theoretical problems with the settlement. They are real problems that dramatically impact real people.

Take the example of one of the objectors here – Jesse Solomon. Mr. Solomon played linebacker in the NFL linebacker for 9 years and is only 51 years old. He had "too many [concussions] to count" often suffering from "triple vision" and "amnesia" after impact. After a

hit he would often "lose sense of who you are." Today, he can't hold a job. He loses track of time. He forgets if he has eaten. He gets lost while driving. He falls asleep during interviews. He is completely and permanently disabled.[3]

Mr. Solomon has received a medical examination in the context of applying for NFL disability benefits. Dr. Jamie Fernandez, a Neuropsychologist, examined Mr. Solomon and found that he is suffering from a history of traumatic brain injury. He concluded that "Mr. Solomon is exhibiting the signs and symptoms of chronic traumatic encephalopathy (CTE)." Ex. 3 at 5. On February 17, 2011, a neurologist appointed *by the NFL Plan*, Dr. Adam DiDio, examined Mr. Solomon to review the earlier diagnosis and to address complaints of anxiety, depression, severe headaches and cognitive impairment. These included "severe problems with" Mr. Solomon's memory, "poor concentration and focus," becoming "easily distracted," being "easily angered" and "prone to outbursts," "severe headaches on a near daily basis," and dizziness. After examination, the NFL's doctor agreed with the earlier assessment that Mr. Solomon "is exhibiting the signs and symptoms of [CTE]" stating that Mr. Solomon "probably is demonstrating features of [CTE]," but Dr. DiDio was "more comfortable labeling [Mr. Solomon's] condition as severe postconcussion/posttraumatic head syndrome," given the current standard for diagnosing CTE only after death. *Id.* at 8.

Thus, two qualified Neuropsychologists, one working for the NFL Plan, agree that Mr. Solomon is exhibiting the classic symptoms of CTE. If Mr. Solomon dies tomorrow – or at any time in the next 65 years – and CTE is confirmed through an autopsy, he will receive zero compensation for this CTE diagnosis under the settlement. The same is true if CTE is confirmed before death by diagnostic methods under development. Yet if he had died or committed suicide

---

[3] All cites are from Exhibit 3 to Objections of Sixteen Plaintiffs to Approval of Settlement at pages 4-5 and is referred to herein as "Ex. 3."

before July 7, 2014 he would have received up to $4 million.  The fact that Mr. Solomon might receive prescription drug benefits under the settlement if, at some point, he receives a diagnosis of Dementia Level 1.0; or that he might receive some lesser amount of compensation if, at some point, he is also diagnosed with ALS, Parkinson's, Alzheimer's or Level 1.5 or Level 2 Dementia, is no answer at all to the stark fact that he will receive nothing at all for CTE, a condition which has rendered him permanently disabled at a young age.

### III.  It is a Fact, not a Distortion, to say that CTE is Not Covered by the Settlement.

At the Fairness Hearing and in their Memoranda, counsel for the NFL argued that it is a "fundamental distortion" to say that CTE is not covered under the settlement agreement.  ECF No. 6422 at 77-80.  This is preposterous.  The Settlement explicitly carves out CTE from the settlement.  The settlement includes "Death with CTE" and excludes CTE after July 7, 2014.  The fact that certain types of dementia are covered and that dementia is one symptom that may be included in a CTE diagnosis does not mean that CTE is covered by the settlement.  CTE after July 7, 2014 was explicitly carved out of the compensation scheme and CTE was explicitly included in the Release.

CTE's absence from the settlement agreement class counsel have negotiated—except for players who died from CTE before the preliminary approval date—is not and cannot be explained by the NFL's assertion that "[m]ood disorders and depression are not compensable under the proposed settlement because these conditions are widely distributed across the general population and have multiple proven causes entirely unrelated to football and/or CTE."  ECF No. 6422 at 6.  That is also true of ALS, Parkinson's, Alzheimer's, and dementia.  Yet those conditions are covered.  *See* Fischer Decl. ¶ 13 (ECF No. 6423-17).  CTE is more closely associated with repeated traumatic brain injury than any of the diseases or conditions that are covered by the settlement, so uncertainty about causation cannot explain CTE's exclusion. Nor

can the CTE carve-out be justified by uncertainty about whether a particular former player's symptoms can be attributed to CTE, as co-lead class counsel argue, ECF No. 6423-1 at 54-58. *First*, the settlement compensates conditions regardless whether they can be linked to CTE or football.  *Second*, the settlement denies compensation for CTE symptoms that do not meet the settlement criteria for dementia, even if CTE is definitively proven, either post-mortem or through improved diagnostic techniques that are likely to be developed during the period of the settlement.  *Third*, other conditions, such as Alzheimer's, also cannot be definitively diagnosed until after death, yet they are compensated.  Finally, a diagnosis of CTE can be verified upon death.

**IV.    The Carve-Out of CTE is not Reasonable "Line-Drawing."**

Excising CTE – the principal basis for a lawsuit – from the settlement is not just "line-drawing" as class counsel argue.  Rather, it is evidence of the structural problem identified in our Objection: the interests of players at risk of developing CTE were not adequately represented. In our objection, we pointed out that Shawn Wooden, the representative plaintiff for Subclass 1, alleged only that he was at "increased risk of developing dementia, Alzheimer's Parkinson's or ALS"—*i.e.*, the qualifying diagnoses under the settlement—not CTE.  ECF No. 6242 at 4 n.3. Yet the affidavit Mr. Wooden submitted in support of settlement approval only confirms that he did not see himself as representing the interests of players who recognize the substantial risk of developing CTE.  He states that he has "experienced neurological symptoms, including migraine headaches, sleep problems, concentration issues, and mood swings" characteristic of CTE, ECF No. 6423-8 ¶ 1.  Yet, Mr. Wooden  describes himself  as "at increased risk of developing a range of neuromuscular and neurocognitive diseases associated with mild traumatic brain injuries, such as Dementia, Alzheimer's Disease, Parkinson's Disease, and/or Amyotrophic Lateral Sclerosis ("ALS"), as a result of having played professional football in the NFL," **but not CTE**. *Id.*  Given

7

the opportunity to clarify, Mr. Wooden's affidavit does not support the NFL's assertion that Mr. Wooden regards himself as at risk of developing CTE on the basis of an ambiguous allegation about "further adverse neurological symptoms" in the complaint.  ECF No. 6422 at 90.  Nor is there any factual support in Mr. Wooden's affidavit (or elsewhere in the record) for the NFL's assertion that Mr. Wooden believed he "had every incentive to negotiate to include as many conditions in the Settlement Agreement as possible, including CTE."  *Id.*  It is irrelevant whether class counsel discussed covering CTE in the negotiations (as the NFL vaguely asserts), because there is simply no way to be confident that the negotiations would have unfolded in the same way if the interests of former players at risk of developing CTE had been adequately represented.

Class counsel also argues that it is unreasonable for objectors to expect that every conceivable type of injury required a subclass representative.  The undersigned has never made this argument.  CTE was the focal point of the complaint, so black letter class certification law required the class representatives to include someone who faced the prospect of harm from CTE, whether or not other particular diagnosis related to repeated concussions were also represented.  Recognizing that the settlement process was structurally defective because there was no class representative to advocate for the interests of former players at risk of developing CTE (*the major injury alleged in the Complaint*) does not imply that a subclass needs to be created for every condition or diagnosis that is, or should be, covered by the settlement.  That argument is nothing more than an effort to build a rhetorical haystack to cover up the fact that a case principally based on recent science concerning CTE has been settled by disavowing or disregarding much of that science.

Furthermore, while Class counsel recite various challenges to the link between NFL football and CTE and between CTE and behavioral and mood disorders, the same can be said

8

with far more force of the link between NFL football and ALS, Parkinson's, and Alzheimer's, conditions that do qualify for compensation under the settlement. ECF No. 6423-1 at 54-58. The observation that the settlement "compensates several of the most serious conditions that have been reported as outcomes and co-morbid conditions of advanced CTE in the literature" (*id.* at 56), is not an explanation for not covering CTE, the condition that is most squarely and definitively associated with repeated concussions from NFL play. Class counsel say that "certain objectors make similar claims about the causal relationship between concussions and a host of other conditions, including aggression, depression and other mood disorders, vertigo, and sleep disorders." *Id.* at 55. But so does the complaint they filed themselves. The real questions—unaddressed by the proponents of the settlement—is whether the claims about CTE were stronger or weaker than those of the qualifying diagnoses and whether there was an advocate for CTE – and only CTE – at the bargaining table. The exclusion of CTE cannot be explained by the give and take in the bargaining process or ubiquitous references to reasonable "line-drawing." Rather, it can only be explained by the absence of adequate representation for former players at risk of developing CTE that is required by Supreme Court law. As the Second Circuit noted in a passage approvingly quoted in Justice Ginsberg's opinion for the Court in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997):

> [W]here differences among members of a class are such that subclasses must be established, we know of no authority that permits a court to approve a settlement without creating subclasses on the basis of consents by members of a unitary class, some of whom happen to be members of the distinct subgroups. The class representatives may well have thought that the Settlement serves the aggregate interests of the entire class. But the adversity among subgroups requires that the members of each subgroup cannot be bound to a settlement except by the consents of those who understand that their role is to represent solely the members of their respective subgroups.

*Id.* at 627 (citations omitted).

**CONCLUSION**

The Court should defer consideration of the settlement until representatives and counsel have been appointed to represent the subclass of former players who currently have, or are at risk of developing, CTE.

s/ Dwight P. Bostwick
Dwight P. Bostwick
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
Fax: (202) 822-8106
E-mail: dbostwick@zuckerman.com

*Attorney for Plaintiffs*

Dated: December 2, 2014

**CERTIFICATE OF SERVICE**

I, Dwight P. Bostwick, hereby certify that on this 2nd day of December, 2014, a true and correct copy of the foregoing **RESPONSE OF SIXTEEN OBJECTORS TO THE MOTIONS FOR SETTLEMENT APPROVAL FILED BY THE NFL AND CLASS PLAINTIFF**, was served electronically upon all counsel of record via the Court's ECF filing system.

/s/ Dwight P. Bostwick