**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | NO. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden,<br>*on behalf of themselves and*<br>*others similarly situated*,<br><br>        Plaintiffs,<br><br>            v.<br><br>National Football League and<br>NFL Properties, LLC,<br>successor-in-interest to<br>NFL Properties, Inc.,<br><br>        Defendants. | Civil Action No. 2:14-cv-00029-AB |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

**FINAL SUPPLEMENT TO UTECHT OBJECTIONS**

IN RESPONSE TO THE COURT'S *ORDER* DATED NOVEMBER 24, 2014
INVITING OBJECTING SETTLEMENT CLASS MEMBERS TO SUBMIT
SUPPLEMENTAL BRIEFING AT OR BEFORE 5:00 P.M., TUESDAY, DECEMBER 2, 2014.

**Table of Contents**

I.      INTRODUCTION: There is no guarantee that all Monetary Awards will be paid in the RSA.  It remains entirely possible that some Settlement Class Members who receive Monetary Awards will not be paid.    1

II.     ARGUMENT    1

     A.    Class Counsel and the NFL Falsely Claim, Often and Repeatedly, That All Monetary Awards Are Guaranteed.    1

     B.    The NFL and Class Counsel Falsely Represent That the Statutory Trust Will Have Funds Sufficient to Pay the NFL's Obligations if the NFL Fails to Pay Them.    4

     C.    Unless the Promised Guaranty is Made Valid the NFL Will Have a Powerful Incentive not to Timely Pay Monetary Awards.    6

III.    CONCLUSION    8

# I.     INTRODUCTION

Ben Utecht ("Utecht") filed objections to several sections of the revised settlement agreement ("RSA") on the grounds that the language used purports to provide benefits to Settlement Class Members that are not actually delivered as advertised.   By far the most significant is the objection that, contrary to claims made by Class Counsel in the announcement of the RSA, and often repeated by both Class Counsel and the NFL, including during the Fairness Hearing, **there is no guarantee that all Monetary Awards will be paid in the RSA. It remains entirely possible that some Settlement Class Members who receive Monetary Awards will not be paid.**

# II.     ARGUMENT

A.     <u>Class Counsel and the NFL Falsely Claim, Often and Repeatedly, That All Monetary Awards Are Guaranteed</u>.   They both repeated this again on the record at the Fairness Hearing.   They are saying that there is no risk that a Settlement Class Member holding a Monetary Award might not get paid because (i) the NFL is obligated to fund the Monetary Award Fund monthly, (RSA, Sec. 23(b)); and (ii) the Statutory Trust will be established before the end of the 10th year with an amount sufficient to guaranty payment of all Monetary Awards (among other things) for the balance of the sixty-five (65) years remaining (which cannot be less than 55 years) (RSA, Sec. 25.6(d)).

1.     *The RSA acknowledges that the NFL might not pay and requires the establishment of the Statutory Trust from which Monetary Awards will be paid if the NFL fails to pay.*   It is required to be funded with "[t]he amount of money sufficient to make all payments set forth in Section 23.3(b) for sixty-five (65) years from the Effective Date . . . " (Sec. 23.1(a)) so

that there is no risk that money will not be available to pay in the event that the NFL does not timely pay. The RSA provides that,

> (e) In the event of a material default by the NFL Parties in satisfying their payment obligations as set forth in this Settlement Agreement, . . . Co-Lead Class Counsel shall have the right to petition the Court . . . to enter an order directing the NFL Parties to meet their payment obligations. Beginning on the Tenth Anniversary Date, any such petition by Co-Lead Class Counsel may request that the Court direct the NFL Parties <u>to meet their payment obligations with the funds available in the Statutory Trust established by the NFL Parties pursuant to Section 25.6(d)</u>. (Art. 25.6(e)) (emphasis added).

**Simply put, the Statutory Trust is represented as the guarantor of the NFL's payment obligations:  If the NFL does not pay after the tenth anniversary, the Court can order payment made from trust funds.**  But this guaranty is no good because it is highly likely that a time will come when funds securing it will not be sufficient to pay all awards.  When this happens, the NFL will have the obligation to pay, but that does not guarantee that payment will be made.  There are a host of reasons that the NFL might not pay.[1]

2.      *Class Counsel and the NFL do not dispute that the Statutory Trust is likely <u>not</u> to contain assets "sufficient to satisfy the NFL Parties' remaining anticipated payment obligations" as promised*. They do not argue that this claim is false.  Rather, they deflect the Court's attention from this serious anticipated breach of contract arguing that it does not matter whether the Statutory Trust is, <u>in fact</u>, funded as promised because the NFL would still be liable to make monthly payments to fund the targeted reserves. Their agreement and joint deflection of

---

[1] *E.g.*, the RSA administration process itself might become bogged down in litigation; some Settlement Class Members might sue the NFL and Class Counsel for fraud in their inducement not to opt-out; the criminal investigation now underway against the NFL for illegally administering controlled substances to players, or some future scandal, might cause too many sponsors and fans to stop supporting the NFL; the NFL might be reorganized in ways that affect payments if it loses its tax or anti-trust exemption; or another market crash might lead to a depression forcing the NFL, along with many other large companies, banks, and even cities into bankruptcy— pensions of Detroit workers were just cut 25%.

the Court's attention to the issue is highly suspect considering that the NFL has agreed to pay and not oppose Class Counsel's request to the Court for a fee award of $112.5 million.

3.      *Either Class Counsel fails to understand that the NFL's failure to "sufficiently" fund the Statutory Trust would constitute a breach of contract by the NFL or they are openly colluding with the NFL anticipating the breach.*   The only defense against one or the other conclusion is that the NFL would not, technically, be breaching the contract:   After all, Class Counsel might <u>correctly</u> argue, the NFL is only obligated to make a one-time payment into the Statutory Trust in the amount that the "NFL believes" will be sufficient to pay all Monetary Awards; they are <u>not</u> technically obligated to make a payment that will, <u>in fact</u>, be "sufficient". But, if Class Counsel attempts to excuse themselves with this argument they have some serious explaining to do: They have sold the RSA to 20,000 Settlement Class Members representing to them that all Monetary Awards are guaranteed.[2]

4.      *It is near certain that a time will come when the Statutory Trust will <u>not</u> contain the promised funds sufficient to pay all Monetary Awards for the following reasons*:

a.      The NFL is obligated to make only <u>one, single payment</u> into the Statutory Trust before the end of the tenth year in an amount "the NFL reasonably believes" will be sufficient to pay all Monetary Awards and other expenses of the Monetary Award Fund (e.g. claims administration and appeals costs) for the following 55 years or longer (i.e. if the NFL elects to establish the trust years before the end of the 10th year).   Any additional payment obligation is explicitly ruled out (RSA at Sec. 23.2): Sec. 23 of the RSA states all of the NFL's payment obligations.   Sec. 23.2 provides: "Exclusive Payments. For the avoidance of any doubt, other than as set forth in Section 21.2 [(involving legal fees)], the NFL Parties will have no

---

[2] Utecht is among the large majority of Settlement Class Members whose claims are likely to appear decades into the future.  They are highly concerned that the guaranty is delivered as promised to eliminate the risk that they might receive a Monetary Award many years from now and not be able to collect it.

additional payment obligations in connection with this Settlement Agreement."  Therefore, the NFL has no obligation to pay more money into the Statutory Trust when it runs out of money.

   b. The amount that will be sufficient is impossible even for experts acting in the best of good faith to predict because it is impossible for anyone—even a stadium full of the world's best investors—to predict investment returns 55 years or more into the future.

   c. The NFL will exercise its "reasonable belief" discretion under an absurdly gross conflict of interest.  This makes it highly likely that the NFL will resolve the massive doubt about what amount is "sufficient" in favor of underfunding the Statutory Trust rather than over funding it.

   d. There is no legal standard against which the reasonableness of the NFL's belief can be tested because no "belief" can be shown to be un-reasonable since it is not possible to predict the amount that will be sufficient 55 years in advance.  Therefore, no one can compel the NFL to deposit more than it "believes" is reasonable.

   e. The NFL has the right to withdraw funds from the Statutory Trust at any time unless it is shown by "clear and convincing evidence" that sufficient funds will not be available after the withdrawal—this is impossible to show for the same reasons stated in paragraphs (b)-(d) above.

   B. <u>The NFL and Class Counsel Falsely Represent That the Statutory Trust Will Have Funds Sufficient to Pay the NFL's Obligations if the NFL Fails to Pay Them.</u>

   1. *Merriman Webster defines "guaranty" as "[A]n undertaking to answer for the payment of a debt or the performance of a duty of another in case of the other's default or miscarriage*."  (http://www.merriam-webster.com/dictionary/guaranty).  This is what has been promised to Settlement Class Members by the Statutory Trust required under Sec. 25.6(d).

4

2.    *The Statutory Trust is established so that, in the event that the NFL does not pay, (i) an order from a court may be obtained and payment collected from funds in the Statutory Trust, and that (ii) the Statutory Trust will contain funds "sufficient" to pay all awards through the 65th year.*  Here is how Class Counsel put it to Settlement Class Members in their announcement that they had satisfied the Court's reasons for rejecting the first settlement proposal (Exhibit A):

> First, the revised Settlement Agreement guarantees that **ALL AWARDS WILL BE PAID.  Article III . 3.1** states that the NFL agrees to pay all monetary awards and **Article XXIII 23.1** mandates the NFL to pay all claims for 65 years after the effective date of the settlement. Under **Article XXIII. 23.3** the NFL will make [monthly payments] . . . .  **Article XXV 25.6** secures all future payments.  It states that no later than the tenth anniversary of the effective date of the Settlement, the NFL will establish a Special Purpose Delaware Statutory Trust and immediately fund it to cover all future Payments.   (Exhibit A) (emphasis in the original).

This boils down to the following representation made by the NFL and Class Counsel to Settlement Class Members:

> "[T]he [RSA] . . . **guarantees** that ALL AWARDS WILL BE PAID. Article III . 3.1 states that the NFL agrees to pay all monetary awards [for 65 years] . . . Under Article XXIII. 23.3 the NFL will make [monthly payments] . . .  Article XXV 25.6 **secures** all future payments. . . . [T]he NFL will establish a Special Purpose Delaware Statutory Trust and **immediately fund it** to **cover all future Payments**.  (Id.) (emphasis added).

Class Counsel uses the word "guarantee" rather than "guaranty" but Class Counsel's own definition of what it means is unmistakable:  It means that the Statutory Trust is established to back up the NFL's payment obligations with collateral after the tenth year.

3.    *According to Class Counsel and the NFL, the Statutory Trust "guarantees" and "secures" payment of all Monetary Awards in the event that the NFL does not pay them.*  But, this is only true if sufficient funds are, in fact, held by the trust.  It is made to

appear true by the requirement for the NFL to deposit sufficient funds into the trust.  But it is near certain that funds will not be sufficient.

        4.    *The NFL and Class Counsel acknowledge (i) that the NFL might not pay all Monetary Awards; (ii) that the Statutory Trust guarantees and secures Monetary Awards; and (iii) yet, that funds in the Statutory Trust might not be available to pay all Monetary Awards as promised*.  The NFL and Class Counsel agreed on language in the RSA that makes it highly likely that the promised "guarantee" will <u>not</u> be performed because the "security" promised to guarantee it might not be "sufficient to make all payments set forth in Section 23.3(b) for sixty-five (65) years from the Effective Date . . ."  Indeed, even if the NFL was not outrageously conflicted, as it is, and acted in the best of good faith, it is still highly likely that funding will not be "sufficient" as promised since it is not possible to predict investment returns 55 years in advance.  And even if the amount was sufficient when deposited the NFL is entitled to make withdrawals that cannot be stopped.  And when the money runs out the NFL is not required to deposit any more.  Settlement Class Members holding unpaid Monetary Awards would therefore not be paid.

        C.    <u>Unless the Promised Guaranty is Made Valid the NFL Will Have a Powerful Incentive not to Timely Pay Monetary Awards</u>.  The existence of a real guaranty would remove the incentive the NFL has to attempt to avoid payment of its obligations under the RSA as proposed.

        1.    *Without a valid, fully collateralized guaranty as promised, the NFL stands to gain a great deal by obstructing the claims process and resisting payments*.  The NFL can easily find grounds to withhold payment in the many pages of the complex labyrinth that is the RSA—it is made for disputes (e.g. procedures being used do not effectively control for false

claims).  When, not if, the NFL fails to pay it will assert seemingly legitimate reasons.  A new lawsuit will be necessary seeking enforcement of the RSA as explicitly contemplated in Sec. 25.6(e).  (*See* ¶ A.1., *supra*).[3]  Settlement Class Members will then have to negotiate a second settlement (this time of breach of contract claims which might not be certified as a class).  Class Counsel will then assert reasons why the breach of contract claims should be compromised and compromises will be required in order to persuade the NFL to write the checks necessary to pay its obligations under Sec. 23(b).  And Class Counsel will be asking for millions more in fees. But, this time, since the NFL will already have the releases they bought from Class Counsel with the $112.5 million paid to them under the RSA, it will be the Settlement Class Members paying the fees.  And this is on top of the hefty contingent fees that dozens of lawyers will be collecting from hundreds or thousands of Settlement Class Member for merely processing their claims under the RSA.  Ethical questions abound.

2. *On the other hand, if the promised fully collateralized guaranty is delivered, the NFL will have nothing to gain by attempting to avoid payment of Monetary Awards since the NFL's money in the Statutory Trust will be used to pay them if the NFL does not pay them as provided under Sec. 23(b) of the RSA.*  Therefore, it is much less likely that the NFL will seek to avoid paying them.

3. *Indeed, this is the ONLY way to make sure that all Monetary Awards are timely paid through the 65th year.*  The Court rejected the previous agreement due to the risk that Monetary Awards might be received but not paid. This fact is cited by Class Counsel in their announcement of the new RSA.  First, they cite the reasons for the Court's prior rejection.

---

[3] The argument that Settlement Class Members' releases might be rendered null and void is deceptive because what the Member needs is payment of his claim, not the right to sue that NFL 25-40 years from now when the class of plaintiffs would not be enough to prevail against the massive defense that the NFL would mount.  This argument does not even pass the good faith test.  Class counsel should be ashamed to even assert it.

Second, they explain how the problem is solved: Payment is "guaranteed" and "secured" they say by that "Statutory Trust". (Exhibit A). These claims were made to induce Settlement Class Members not to opt out. The Court should not approve the RSA unless it is fully satisfied that these representations are actually true in the final version of the RSA. Anything short of this would be to lend the offices of the Court to a fraudulent scheme.

## III.    CONCLUSION

Every Settlement Class Member owns an asset: A claim for compensation against the NFL for his brain injury. Therefore, the legal release of liability that each Settlement Class Member gives to the NFL under the RSA represents a valuable economic asset. The RSA has been sold to Settlement Class Members based on the promise that the Statutory Trust will be established by the end of the 10th year with funds sufficient to pay all future Monetary Awards through the 65th year. This promise is so essential to Settlement Class Members that Class Counsel represented it to them as a "guarantee" that their Monetary Awards will be paid—that their awards will be "secured" by sufficient funds to pay all awards through the 65th year. This secured guaranty—if it really did exist—would eliminate the risk that a Monetary Award might not be paid. And it would take away the NFL's incentive to try to avoid payment. Without it, there are a host of reasons that an award, maybe hundreds or thousands of them, might not be paid decades into the future. Or that a second lawsuit will one day be necessary to enforce the NFL's payment obligations; one in which Settlement Class Members will have to compromise to settle. Were these risks not present, Class Counsel would not have promised their clients that they have a secured guaranty so these things cannot happen.

Truth is, the secured guarantee, as presently drafted is neither secured nor guaranteed. What the Court is witnessing here is a scheme by which, if not stopped by the Court, the NFL

will obtain maybe $1 billion dollars worth of valuable assets (the releases) from nearly 20,000 Americans.  Worse, the NFL will obtain these assets by paying Class Counsel up $112.5 million to deliver their clients' assets to the NFL.  To convince the clients that their investment will be safe—that there is NO RISK that Monetary Awards will go unpaid—they falsely represent, unequivocally and with absolute certainty, that that their future awards are "guaranteed" and backed by "secured" collateral.

This, alone, is plenty of reason that the Court should reject the RSA.  Any approval should be conditioned on changes to the RSA that make the representations that have been made by the NFL and Class Counsel to Settlement Class Member actually TRUE.  Otherwise the Court would be facilitating fraud.  If this RSA is approved as now written it will open up a Pandora's Box of consequences for all concerned.  Instead, there are many ways to structure an actual collateralized guarantee.  The Court should require the NFL and Class Counsel choose one as a condition of approving the RSA.

Dated: December 2, 2014                              Respectfully submitted,

                                                     /s/ Scott D. Hillstrom
                                                     Scott D. Hillstrom
                                                     GUARDIAN LAW GROUP, LLC
                                                     527 Marquette Avenue South, Suite 1660
                                                     Minneapolis, Minnesota 55402
                                                     Phone: (612) 730-5884
                                                     Email: scott.hillstrom@me.com

                                                     **Attorney for Ben Utecht**

9

**Certificate of Service**

I hereby certify that I am an employee of Guardian Law Group, LLC and that on December 2, 2014 I caused the foregoing *FINAL SUPPLEMENT TO UTECHT OBJECTIONS* to be filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel of record.

/s/ Andrew R. Lewis_____
Andrew R. Lewis