# 611506                              TAD\WTG\2012S-1000

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden,<br>*on behalf of themselves and*<br>*others similarly situated*, | Civil Action No. 2:14-cv-00029-AB |
| Plaintiffs, | |
| v. | |
| National Football League and<br>NFL Propoerties, LLC,<br>Sucessor-in-interest to<br>NFL Properties, Inc., | |
| Defendants. | |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

**ESTATE OF DAVID DUERSON, ESTATE OF FORREST BLUE, THOMAS DELEONE, GERALD SULLIVAN, BARRY DARROW, RAY AUSTIN, BRUCE HERRON, JOHN CORNELL, TORI NOEL and MIKE ADAMLE'S SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR OBJECTIONS TO CLASS ACTION SETTLEMENT**

## INTRODUCTION

The Fairness Hearing of November 19, 2014 demonstrated an incomplete, unclear and highly controverted record regarding the symptoms of CTE and its devastating impact on former NFL football players and their families. Strikingly, the NFL presented arguments that CTE research is "in its infancy." (*See* NFL Memorandum of Law at 101–105, *In re: NFL Players' Concussion Injury Litigation,* MDL No. 2:12-md-02323 (E.D. Penn Nov. 12, 2014), ECF No. 6422, *citing* Dr. Yaffe Decl ¶¶ 17, 56; Dr. Schneider Decl., ¶¶ 18, 20; Dr. Millis Decl. ¶ 27.)[1] This position simply ignores the plain facts relating to CTE research and the specific findings of those who have died with, or as a result of, CTE.

In February 2011, Dave Duerson died as a result of a self-inflicted gunshot wound to his chest. He requested that his brain be donated to the 'NFL Brain Bank'. Attached hereto, and incorporated herein, is video footage from the Center for the Study of Traumatic Encephalopathy at Boston University's May 2, 2011 Press Conference. (*See* Exhibit A, *available at* www.youtube.com/watch?v=hs1A50i4rFU.) At the 2011 press conference, Ann C. McKee, M.D., a neuropathologist and expert in neurodegenerative disease and a leading authority on CTE; Robert Cantu, M.D., Clinical Professor of Neurosurgery at BUSM and a world-renowned expert on concussions; and Robert A. Stern, Ph.D., Professor of Neurology and Neurosurgery at BUSM and Director of the BU ADC Clinical Core, explained the history of the progressive, degenerative disease known as CTE; the impact that CTE had upon Dave Duerson's quality and

---

[1] The NFL incongruously claims CTE research is lacking "large-scale, prospective, longitudinal, clinicopathological studies" yet seeks a release *today* of all CTE claims, even if these studies further confirm CTE's prevalence, distinct features, causal linkages or associated symptomologies. (*See* NFL Memorandum of Law at 102, *In re: NFL Players' Concussion Injury Litigation,* MDL No. 2:12-md-02323 (E.D. Penn Nov. 12, 2014), ECF No. 6422.)

dignity of life, specifically in the realms of mood and behavior; and their findings of CTE upon post-mortem, neuropathological review of his brain.  (*See* Center for the Study of Traumatic Encephalopathy Neuropathology Report, attached hereto as Exhibit B.)

Duerson's tragic death in 2011 was neither the first nor the last. Others have died and will die tragically from, and with, CTE.  Attached hereto, and incorporated herein, is a recent HBO SPORTS segment detailing the changes Chelsea Oliver noticed in her husband, Paul Oliver, prior to his September 24, 2013, suicide. (*See* Exhibit C, *available at* http://www.hbo.com/real-sports-with-bryant-gumbel#/real-sports-with-bryant-gumbel/episodes/0/210-episode/video/ep-210-web-extra-football-panel.html.)

CTE is not going away.

## ARGUMENT

A District Court reviewing a settlement like the one proposed must analyze two questions:  (1) Can the case be certified for settlement? (2) Can the settlement be approved as being fair, reasonable and adequate?  *In re: Prudential,* 148 F.3d 283, 308–309 (3d Cir. 1998). Here, the filings and presentations at the November 19, 2014 Fairness Hearing cry out that the answer to both questions is "no."

I.   **This Case Is Not a Class Action And Should Not Be Settled As If It Were**

The NFL "believes it is doing the right thing by . . . agreeing to provide substantial compensation to its retired players when they experience debilitating neurocognitive[2] and

---

[2] According to the NFL's actuarial data, only five-hundred-eighty-three (583) retired NFL players (i.e., 2.7% of the Settlement Class) will qualify for an Alzheimers or Dementia 'award' in the first year of this settlement. (Material Provided by Counsel to the NFL, Paul, Weiss, Rifkind, Wharton & Garrison LLP Exhibit F at 4, *In re: NFL Players' Concussion Injury Litigation,* MDL No. 2:12-md-02323 (E.D. Penn Sep. 12, 2014), ECF No. 6168-7, attached in part as Exhibit D).

2

neuromuscular[3] decline." (NFL Memorandum of Law at 17, *In re: NFL Players' Concussion Injury Litigation,* MDL No. 2:12-md-02323 (E.D. Penn Nov. 12, 2014), ECF No. 6422.) But in reality, the NFL, by seeking approval of this Settlement as a Class Action, is eliminating its biggest exposure (CTE) and precluding all Absent Class Members' CTE claims forever, in exchange for virtually nothing.

If final approval is granted, CTE will forever disappear from the NFL's lexicon, as no player's family will ever qualify for a death benefit after July 7, 2014. The settling parties respond that "if you get sick, you will get paid" during one's lifetime. (Transcript of Fairness Hearing at 34, *In re: NFL Players' Concussion Injury Litigation,* MDL No. 2:12-md-02323 (E.D. Penn Sep. 12, 2014)). This is a distortion of the truth. In fact, according to the actuarial data released, the anticipated average age at diagnosis of a Qualifying Diagnosis will be seventy-seven (77) years old. The reality is that many former NFL players will perish prior to ever obtaining a Qualifying Diagnosis that gives rise to the potential for presenting a claim. (Ex. E at 7.)

In *Amchem*, our Supreme Court detected an intra-class conflict between those currently injured as a result of exposure to asbestos and those who were exposed, but whose injuries may not manifest for years due to the long latency period associated with asbestos diseases. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). The Court noted that generous immediate payments for those currently injured tugged against the goal of ensuring an ample fund for the

---

[3] While ALS and Parkinson's are horrific, debilitating diseases, the thirty-two (32) former players that have suffered from these diseases (i.e., .15% of the Settlement Class) and the one-hundred-ninety-six (196) cases that are predicted to occur from now until 2080 can, and should, be settled on an individual basis. (*See* Ex. D at 6; Material Provided by Counsel to the Plaintiffs, Seeger Weiss LLP, *In re: NFL Players' Concussion Injury Litigation,* MDL No. 2:12-md-02323 (E.D. Penn Sep. 12, 2014), ECF No. 6167, attached in part as Exhibit E).

future exposure-only plaintiffs. *Id*. at 626–627. Because the proposed settlement in *Amchem* reflected "essential allocation decisions designed to confine compensation and to limit the defendants' liability" with only a few back-end opt outs allowed per year and a complete abolition of loss of consortium claims, the settling parties "achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected." *Id*. at 627.

Here, too, the diverse individuals and families affected by brain injury as a result of an NFL playing career are being short-changed. All injured and exposed NFL players have had their compensation confined, or worse, entirely bargained away, in an effort to limit the defendants' liability and exposure. It is now clear: Wrongful Death claims have been compromised without any representation; future diagnoses of latent injuries will result in little to no compensation, in part because the settlement fails to account for medical advancements; and (like the loss of consortium claims in *Amchem*), an otherwise available remedy (i.e., Wrongful Death with CTE) is eliminated, forever. Without *any* back end opt outs allowed, in contrast to the few per year allowed in *Amchem*, there is simply no structural assurance that the thousands of Absent Class Members that do not now comprehend the extent to which their brain damage may progress over time are protected.[4] Accordingly, as the fiduciary of the Absent Class Members, this Court must deny certification and final approval.

---

[4] On September 19, 2014, Duerson filed an Emergency Motion to Modify or Amend the July 7, 2014 Order Requiring Opt-Outs on or Before October 14, 2014. (Duerson Emergency Motion, *In re: NFL Players' Concussion Injury Litigation,* MDL No. 2:12-md-02323 (E.D. Penn Sep. 12, 2014), ECF No. 6172). This motion was denied. (October 10, 2014 Order on Motion to Modify, *In re: NFL Players' Concussion Injury Litigation,* MDL No. 2:12-md-02323 (E.D. Penn Sep. 12, 2014), ECF No. 6204). This Court should reconsider. Implementation of a delayed opt out procedure into any future Settlement Agreement should be a necessity.

Neurodegenerative diseases and diagnoses, like CTE, are latent (and, arguably, not detectable by today's medical technology).  Yet, pursuant to the terms of the Proposed Settlement, many men and their families will be left with nothing upon their death, even if their brains objectively demonstrate signs of a debilitating disease.  This result is primarily due to the same deficiency seen in *Amchem*—interests of some class members and the class representatives sharply conflicted with those of other members and their heirs.  *See Amchem Products, Inc.,* 521 U.S. at 625–626.  The failure to create subclasses for those that *have suffered* Death with CTE and those that *inevitably will suffer* the same should not be tolerated by this Court.  No argument has been made and no averment has been presented addressing this complete lack of representation of these Wrongful Death cases.

Thousands of former NFL players and/or their families filed <u>individual</u> injury and Wrongful Death claims against the League.  The alleged injuries and deaths stem from a plethora of neurodegenerative diseases resulting from repetitive head trauma sustained during an NFL career.  Certainly, CTE and/or symptomology associated with CTE are the most prevalent complaints and concerns amongst the Plaintiffs.[5]

Now, the settling parties have completely abrogated the rights of the future claimants in exchange for virtually nothing.  The Proposed Settlement Agreement's class-wide release is remarkable, as it releases claims without compensating for them.  The release requires ***all*** *retired players* to "waive and release, forever discharge and hold harmless the [NFL] of and from any and all past, present or future claims . . . including, without limitation, claims . . . arising out of,

---

[5] Astonishingly, the NFL had no specific diagnosis information on 3,320 of the approximately 5,000 Plaintiffs in the litigation when they structured this proposed settlement.  (p. 23 of Segal Group Report).

5

or related to, CTE." Class Action Settlement Agreement as of June 25, 2014, *In re: NFL Players' Concussion Injury Litigation,* MDL No. 2:12-md-02323 (2014), ECF No. 6073-2 at § 18.1(a)(iv). In exchange, the NFL's total CTE payment—the consideration for the release of nearly 20,000 claims over the next 65 years—is less than $2 million per NFL franchise.

"The settlement, a selfish deal between class counsel and the defendant, disserves the class." *Pearson v. NBTY, Inc.*, Nos. 14-1198, 2014 U.S. App. LEXIS 21874, at *27–28 (7th Cir. 2014). It should not be approved.

## II. The Settlement Before the Court is Not Fair, Reasonable or Adequate

As a separate inquiry, this Court must determine the fairness of any class action settlement. Fed. R. Civ. P. 23(e). Assuming, *arguendo*, that a Settlement Class could be certified in this case, this Proposed Settlement fails the test as it is unfair, unreasonable and inadequate. *See Amchem,* 521 U.S. at 627.

The filings and presentations to date reveal that this settlement is unfair, as its compensation scheme is completely arbitrary:

- The Settlement *arbitrarily caps* all wrongful death damages without regard to number of survivors, expected work life, and other factors applicable in Wrongful Death compensation analyses such as loss of love, affection, comfort, companionship, and guidance. In addition, the Settlement *arbitrarily further reduces* Monetary Awards further by *arbitrarily selected* age at death;

- The Settlement *arbitrarily extinguishes* Wrongful Death claims after July 7, 2014;

- The Settlement *arbitrarily imposes* a *75% (!)* penalty upon claimants who have suffered stroke or TBI;

- The Settlement *arbitrarily eliminates* certain diagnoses and diseases (i.e., Post-Concussion Syndrome, Deafness, Multiple Sclerosis, Epilepsy[6]), both now, and in the future, from any level of compensation;

- The Settlement *arbitrarily sets* a ten year period for review of scientific and medical advancement with no provision for judicial intervention or oversight in the event of an impasse in anticipated 'good faith' discussions about the relevance of these inevitable evolutions; and

- The Settlement *arbitrarily requires* claimants to post $1,000.00 'appeal bond', while the Defendants have unlimited rights to appeal with no 'appeal bond' requirement.

Pursuant to case law, former NFL players and their affected families deserve a Settlement that is fair, reasonable and adequate. *See, e.g., Amchem Prods v. Windsor*, 521 U.S. 591, 625 (1997), *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), *In re: General Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995), *Carrera v. Bayer Corp.*, 727 F. 3d 300 (3d Cir. 2013), *Marcus v. BMW of North America, LLC*, 687 F. 3d 583 (3d Cir. 2012). This proposed settlement is not and final approval should be denied.

---

[6] The agreement does not compensate Epilepsy, even though the NFL admits that a concussion resulting in loss of consciousness results in an increased risk of epilepsy. (NFL Memorandum of Law at 110, *In re: NFL Players' Concussion Injury Litigation,* MDL No. 2:12-md-02323 (E.D. Penn Nov. 12, 2014), ECF No. 6422.))

## **CONCLUSION**

For these reasons, and the reasons stated in the previously filed Objections, and the Objections adopted and incorporated therein, and the reasons stated at the Fairness Hearing, and the December 1, 2014, Supplemental Memorandum of *Amicus Curiae* Public Citizen Inc., ECF No. 6451-1, which these Objectors hereby adopt, the Objectors respectfully request that this Court deny Final Approval of the Proposed Settlement Agreement.

Respectfully submitted,

| */s/ Thomas A. Demetrio* | */s/ William T. Gibbs* |
|---|---|
| Thomas A. Demetrio | William T. Gibbs |

## CERTIFICATE OF SERVICE

      I hereby certify that on December 2, 2014, I caused the foregoing Supplemental Brief to be filed with the United State District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel of record.

                                                           */s/ William T. Gibbs*
                                                         William T. Gibbs