

--- F.3d ----, 2015 WL 110334 (C.A.8 (Mo.))
**(Cite as: 2015 WL 110334 (C.A.8 (Mo.)))**

Only the Westlaw citation is currently available.

United States Court of Appeals,
Eighth Circuit.
In re BANKAMERICA CORPORATION SECURITIES LITIGATION.
David P. Oetting, Class Representative, Plaintiff–Appellant
v.
Green Jacobson, P.C., Appellee
National Legal Aid and Defender Association; Association of Pro Bono Counsel; Missouri Lawyer Trust Account Foundation, Amici on Behalf of Appellee.

No. 13–2620.
Submitted: Sept. 10, 2014.
Filed: Jan. 8, 2015.

**Background:** Shareholders brought securities fraud class action against individual bank officers and bank formed by merger. After settlement and initial distribution of proceeds, the United States District Court for the Eastern District of Missouri, Carol E. Jackson, J., 2013 WL 3212514, ordered cy pres distribution of unclaimed settlement funds. Class representative and non-named class members appealed.

**Holdings:** The Court of Appeals, Loken, Circuit Judge, held that:
(1) district court could not order cy pres distribution;
(2) agreement and order stating that cy pres distribution would be made in district court's "sole discretion" was void ab initio as contrary to controlling precedent;
(3) non-profit legal services organization was not "next best" recipient of unclaimed settlement funds; and
(4) release of supplemental attorneys' fees to class counsel had to wait until completion of distribution of unclaimed settlement funds to classes.

Vacated and remanded.

Murphy, Circuit Judge, filed dissenting opinion.

West Headnotes

**[1] Federal Civil Procedure 170A** ⚷**164**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)1 In General
            170Ak164 k. Representation of Class; Typicality; Standing in General. Most Cited Cases

A class representative assumes a position of a fiduciary character such that he is not only entitled to represent the interests of the class, but has a duty to do so. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[2] Federal Courts 170B** ⚷**3255**

170B Federal Courts
   170BXVII Courts of Appeals
      170BXVII(B) Appellate Jurisdiction and Procedure in General
         170Bk3253 Persons Entitled to Seek Review or Assert Arguments; Parties; Standing
            170Bk3255 k. Particular Persons. Most Cited Cases

Non-named class members who have timely objected to a district court's order of a cy pres distribution of settlement funds may appeal. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[3] Deposits in Court 123** ⚷**11**

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2015 WL 110334 (C.A.8 (Mo.))
**(Cite as: 2015 WL 110334 (C.A.8 (Mo.)))**

123 Deposits in Court
    123k11 k. Disposition Under Judgment or Order of Court. Most Cited Cases

District court could not order cy pres distribution, in shareholders securities fraud class action against individual bank officers and bank formed by merger, where further distribution to classes was feasible. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[4] Deposits in Court 123** 🔑11

123 Deposits in Court
    123k11 k. Disposition Under Judgment or Order of Court. Most Cited Cases

A cy pres distribution to a third party of unclaimed settlement funds is permissible only when it is not feasible to make further distributions to class members, except where an additional distribution would provide a windfall to class members with liquidated damages claims that were 100 percent satisfied by the initial distribution. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[5] Deposits in Court 123** 🔑11

123 Deposits in Court
    123k11 k. Disposition Under Judgment or Order of Court. Most Cited Cases

The possibility that distributing a private settlement to class members long after the events that gave rise to their claims may not inure to the benefit of those actually harmed does not give a court presiding over class action litigation power to confiscate the settlement proceeds. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[6] Deposits in Court 123** 🔑11

123 Deposits in Court
    123k11 k. Disposition Under Judgment or Order of Court. Most Cited Cases

In shareholders securities fraud class action against individual bank officers and bank formed by merger, agreement and order stating that cy pres distribution would be made in district court's "sole discretion" was void ab initio as contrary to controlling precedent. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[7] Deposits in Court 123** 🔑11

123 Deposits in Court
    123k11 k. Disposition Under Judgment or Order of Court. Most Cited Cases

Unless the amount of funds to be distributed cy pres is de minimis, a district court should make a cy pres proposal publicly available and allow class members to object or suggest alternative recipients before the court selects a cy pres recipient; this gives class members a voice in choosing a "next best" third party and minimizes any appearance of judicial overreaching. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[8] Deposits in Court 123** 🔑11

123 Deposits in Court
    123k11 k. Disposition Under Judgment or Order of Court. Most Cited Cases

When a district court concludes that a cy pres distribution otherwise is appropriate, a distribution must be for the next best use for indirect class benefit, and for uses consistent with the nature of the underlying action and with the judicial function. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[9] Deposits in Court 123** 🔑11

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2015 WL 110334 (C.A.8 (Mo.))
**(Cite as: 2015 WL 110334 (C.A.8 (Mo.)))**

123 Deposits in Court
   123k11 k. Disposition Under Judgment or Order of Court. Most Cited Cases

In a cy pres distribution, non-profit legal services organization was not "next best" recipient of unclaimed settlement funds in nationwide class action seeking damages for violations of federal and state securities laws; a district court must carefully weigh all considerations, including the geographic scope of the underlying litigation and make a thorough investigation to determine whether a recipient can be found that most closely approximates the interests of the class, and the court must look for a recipient that relates directly to the injury alleged in this lawsuit and settled by the parties. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[10] Deposits in Court 123** 🔑11

123 Deposits in Court
   123k11 k. Disposition Under Judgment or Order of Court. Most Cited Cases

Release of supplemental attorneys' fees to class counsel had to wait until completion of distribution of unclaimed settlement funds to classes, in shareholders securities fraud class action against individual bank officers and bank formed by merger. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[11] Federal Civil Procedure 170A** 🔑2737.13

170A Federal Civil Procedure
   170AXIX Fees and Costs
      170Ak2737 Attorney Fees
         170Ak2737.13 k. Class Actions; Settlements. Most Cited Cases

In general, post-settlement monitoring is a compensable activity for which class counsel is entitled to a reasonable fee. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[12] Deposits in Court 123** 🔑11

123 Deposits in Court
   123k11 k. Disposition Under Judgment or Order of Court. Most Cited Cases

**Federal Civil Procedure 170A** 🔑2737.13

170A Federal Civil Procedure
   170AXIX Fees and Costs
      170Ak2737 Attorney Fees
         170Ak2737.13 k. Class Actions; Settlements. Most Cited Cases

Where a district court has reason to believe that class counsel has not met its responsibility to seek an award that adequately prioritizes direct benefit to the class, the court may decrease the fee award; evaluating whether attorneys' fees should be reduced for this reason may require the court to withhold all or a substantial part of the fee until the distribution process is complete. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

Appeal from United States District Court for the Eastern District of Missouri—St. Louis.Theodore H. Frank, argued, Washington, DC (Frank Hilton Tomlinson, Birmingham, AL, on the brief), for Appellant.

Joe David Jacobson, argued, Saint Louis, MO (Martin M. Green, and Jonathan F. Andres, Saint Louis, MO, on the brief), for Appellee.

Timothy M. Kennedy, argued Chicago, IL (Eric John Magnuson, Minneapolis, MN, Wilber H. Boies, Timothy Michael Kennedy, and Latonia Haney Keith, Chicago, IL, on the brief), for amicus curiae National Legal Aid and Defender Association and the Association of Pro Bono Counsel in support of appellee.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2015 WL 110334 (C.A.8 (Mo.))
**(Cite as: 2015 WL 110334 (C.A.8 (Mo.)))**

William E. Quirk, Anthony W. Bonuchi and Jon R. Dedon, Kansas City, MO, on the brief, for amicus brief in support of appellee by Missouri Lawyer Trust Account Foundation.

Before WOLLMAN, LOKEN, and MURPHY, Circuit Judges.

LOKEN, Circuit Judge.

*1 Following the 1998 merger of NationsBank and BankAmerica to form Bank of America Corporation, shareholders filed multiple class actions around the country alleging violations of federal and state securities laws. The cases were transferred by the Judicial Panel on Multidistrict Litigation to the Eastern District of Missouri. That court certified four plaintiff classes, two classes of NationsBank shareholders and two classes of BankAmerica shareholders. The transferred cases were resolved when the court approved a $490 million global settlement, overruling an objection by NationsBank class representative David P. Oetting that allocating $333.2 million to those classes was inadequate because their claims had greater merit than the claims of the BankAmerica Classes. *In re BankAmerica Corp. Sec. Litig.,* 210 F.R.D. 694, 704–05, 714 (E.D.Mo.2002), and 227 F.Supp.2d 1103 (E.D.Mo.2002).

After an initial December 2004 distribution, approximately $6.9 million remained in the NationsBank settlement fund. The district court ordered a second distribution of $4.75 million to NationsBank claimants in April 2009. After that distribution, $2,440,108.53 remained. In September 2012, class counsel for the NationsBank Classes, appellee Green Jacobson, P.C., filed a motion to terminate the case with respect to the NationsBank Classes, to award class counsel $98,114.34 in attorneys' fees for work done after the distribution in December 2004, and to distribute *cy pres* the remainder of the "surplus settlement funds" to three St. Louis area charities suggested by class counsel. The district court granted the motion over Oetting's objections and ordered "that the balance of the NationsBank Classes settlement fund shall be distributed *cy pres* to the Legal Services of Eastern Missouri, Inc." (LSEM). *In re Bank of America Corp. Sec. Litig.,* No. 4:99–MD–1264, 2013 WL 3212514, at *5–6 (E.D.Mo. June 24, 2013) ("*Bank of America*").

[1][2] Oetting appeals the *cy pres* distribution and the award of attorneys' fees. As to the former, he argues the district court abused its discretion in ordering a *cy pres* distribution because a further distribution to the classes is feasible, and in any event LSEM is unrelated to the classes or the litigation and is therefore an inappropriate "next best" *cy pres* recipient.[FN1] We agree and therefore reverse. As our disposition results in the case not being terminated, we vacate the award of additional attorneys' fees as premature, leaving that issue to be resolved, consistent with this opinion, when administration of the NationsBank Classes settlement fund can be terminated.

**I.**

[3] In recent years, federal district courts have disposed of unclaimed class action settlement funds after distributions to the class by making "*cy pres* distributions."[FN2] Such distributions "have been controversial in the courts of appeals." *Powell v. Ga.-Pac. Corp.,* 119 F.3d 703, 706 (8th Cir.1997). Indeed, many of our sister circuits have criticized and severely restricted the practice. *See, e.g., Ira Holtzman, C.P.A. v. Turza,* 728 F.3d 682, 689–90 (7th Cir.2013); *In re Baby Prods. Antitrust Litig.,* 708 F.3d 163, 172–73 (3d Cir.2013); *In re Lupron,* 677 F.3d at 29–33; *Nachshin,* 663 F.3d at 1038–40; *Klier v. Elf Atochem N. Am., Inc.,* 658 F.3d 468, 473–82 (5th Cir.2011); *In re Katrina Canal Breaches Litig.,* 628 F.3d 185, 196 (5th Cir.2010); *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 434–36 (2d Cir.2007); *Wilson v. Sw. Airlines, Inc.,* 880 F.2d 807, 816 (5th Cir.1989). These contrary authorities were not even acknowledged by Green Jacobson in urging a *cy pres* distribution in this

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2015 WL 110334 (C.A.8 (Mo.))
**(Cite as: 2015 WL 110334 (C.A.8 (Mo.)))**

case, nor by the district court in ordering the requested distribution. Recently, echoing these views, Chief Justice Roberts noted "fundamental concerns surrounding the use of such remedies in class action litigation" while nonetheless agreeing with the denial of certiorari in *Marek v. Lane,* ––– U.S. ––––, ––––, 134 S.Ct. 8, 9, 187 L.Ed.2d 392 (2013).

*2 The American Law Institute addressed the issue of Cy Pres Settlements in § 3.07 of its published Principles of the Law of Aggregate Litigation (2010). The ALI recommended:

> A court may approve a settlement that proposes a cy pres remedy.... The court must apply the following criteria in determining whether a cy pres award is appropriate:
>
> (a) If individual class members can be identified through reasonable effort, and the distributions are sufficiently large to make individual distributions economically viable, settlement proceeds should be distributed directly to individual class members.
>
> (b) If the settlement involves individual distributions to class members and funds remain after distributions (because some class members could not be identified or chose not to participate), the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair.
>
> (c) If the court finds that individual distributions are not viable based upon the criteria set forth in subsections (a) and (b), the settlement may utilize a cy pres approach. The court, when feasible, should require the parties to identify a recipient whose interests reasonably approximate those being pursued by the class. If, and only if, no recipient whose interest reasonably approximate those being pursued by the class can be identified after thorough investigation and analysis, a court may approve a recipient that does not reasonably approximate the interests being pursued by the class.

We have approved *cy pres* distribution of unused or unclaimed class action settlement funds in two cases. In both, the distributions met each of the criteria in ALI § 3.07, even though our decisions antedated the ALI's work. *See Powell,* 119 F.3d at 706–07; *Airline Tickets I,* 268 F.3d at 626; *In re Airline Ticket Comm'n. Antitrust Litig.,* 307 F.3d 679, 682–84 (8th Cir.2002) ("*Airline Tickets II* "). Similarly, the First Circuit approved a substantial *cy pres* distribution, concluding it was appropriate in part because the district court's actions were "entirely congruent" with the then-proposed ALI § 3.07. *In re Pharm. Indus. Avg. Wholesale Price Litig.,* 588 F.3d 24, 35 (1st Cir.2009). By contrast, class counsel and the district court entirely ignored this now-published ALI authority.

Given the substantial history of district courts ignoring and resisting circuit court *cy pres* concerns and rulings in class action cases, we conclude it is time to clarify the legal principles that underlay our *Powell* and *Airline Tickets* decisions:

[4] First, we agree with the Fifth Circuit that, "Because the settlement funds are the property of the class, a *cy pres* distribution to a third party of unclaimed settlement funds is permissible '*only* when it is not feasible to make further distributions to class members' .... except where an additional distribution would provide a windfall to class members with *liquidated*-damages claims that were 100 percent satisfied by the initial distribution." *Klier,* 658 F.3d at 475 (quoting ALI § 3 .07; emphasis added). Here, from the perspective of administrative cost, a further distribution to the class was clearly feasible. Class counsel advised the district court, "Claims Administrator would distribute, free of charge, the remaining Set-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2015 WL 110334 (C.A.8 (Mo.))
**(Cite as: 2015 WL 110334 (C.A.8 (Mo.)))**

tlement Fund in the amount of $2,445,248.07, for which the administration fee is estimated to be $27,000."

***3** Class counsel nonetheless contended, and the district court agreed, that "further identification of members for additional distribution would be difficult and costly, considering the time that has passed since the initial distribution." *Bank of America,* 2013 WL 3212514, at *3. We disagree. As the Claims Administrator's cost estimate confirms, lists of NationsBank class members who received and cashed prior distribution checks exist and would form the basis of a further distribution to the classes. The district court previously ordered that no further search need be made for class members whose checks were returned undelivered, so that potentially burdensome expense need not be incurred.[FN3] The district court erred in finding that further distributions would be so "costly and difficult" as to preclude a further distribution; that inquiry *must* be based primarily on whether "the amounts involved are too small to make individual distributions economically viable." ALI § 3.07(a). The court's ultimate conclusion that it was appropriate to order a *cy pres* distribution to unrelated third party charities was therefore an error of law.[FN4]

Class counsel also argues that a further distribution to the class is inappropriate because it would primarily benefit large institutional investors, who are less worthy than charities such as LSEM. We flatly reject this contention. It endorses judicially impermissible misappropriation of monies gathered to settle complex disputes among private parties, one of the "opportunities for abuse" that make it "inherently dubious" to apply the *cy press* doctrine from trust law "to the entirely unrelated context of a class action settlement." *Klier,* 658 F.3d at 480 (Jones, C.J., concurring).

[5] The district court also relied on class counsel's contention that "a third distribution simply would not inure to the benefit of those actually harmed; institu-

tional investors would be the primary recipients of the distribution, and beneficial ownership of the [Bank of America] shares has shifted over time." *Bank of America,* 2013 WL 3212514 at *3. This is simply irrelevant. Though the beneficial ownership of outstanding Bank of America shares changes often, no doubt daily, the identity of the NationsBank *class members* entitled to receive the settlement funds does not change. The possibility that distributing a private settlement to class members long after the events that gave rise to their claims may not "inure to the benefit of those actually harmed" does not give the court presiding over class action litigation power to confiscate the settlement proceeds.

*Second,* a *cy pres* distribution is not authorized by declaring, as class counsel and the district court did in this case, that "all class members submitting claims have been satisfied in full." *Id.* at *3. It is not true that class members with unliquidated damage claims in the underlying litigation are "fully compensated" by payment of the amounts allocated to their claims in the settlement. *See Klier,* 658 F.3d at 479 ("the fact that the members of [one subclass] have received the payment authorized by the settlement agreement does not mean that they have been fully compensated"); *Masters,* 473 F.3d at 434–35 (district court in ordering *cy pres* distribution failed to consider that full restitution to antitrust plaintiffs includes treble damages); ALI § 3.07, cmt. b ("few settlements award 100 percent of a class member's losses, and thus it is unlikely in most cases that further distributions to class members would result in more than 100 percent recovery for those class members").

***4** In this case, the shareholder lawsuits were filed when, after the merger, Bank of America reported that it had written off $372 million of old BankAmerica loans, and its stock closed down $5.87 that day. 210 F.R.D. at 696–97. The district court approved a global settlement in which plaintiffs would recover "only a percentage of the damages that they sought," but which was "neither meager nor inadequate, particu-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2015 WL 110334 (C.A.8 (Mo.))
**(Cite as: 2015 WL 110334 (C.A.8 (Mo.)))**

larly in light of the many hurdles plaintiffs would face if they chose to proceed to trial." *Id.* at 701. The April 2002 settlement notice to the class stated: "the settling parties disagree as to both liability and damages, and do not agree on the average amount of damages per share that would be recoverable by any of the Classes." Thus, the notion that class members were fully compensated by the settlement is speculative, at best.

[6] *Third,* we reject Green Jacobson's contention that the *cy pres* distribution must be affirmed because the district court and this court are bound by language in the settlement agreement stating that the balance in the settlement fund "shall be contributed" to non-profit organizations "determined by the court in its sole discretion." [FN5] In the first place, the agreement and order stating that a *cy pres* distribution would be made in the district court's "sole discretion" was contrary to our controlling decisions in *Airline Tickets I* and *Airline Tickets II;* that provision was void *ab initio. See In re Lupron,* 677 F.3d at 38 ("Distribution of funds at the discretion of the court is not a traditional Article III function."). More importantly, we agree with the Ninth Circuit that "[a] proposed *cy pres* distribution must meet [our standards governing *cy pres* awards] regardless of whether the award was fashioned by the settling parties or the trial court." *Nachshin,* 663 F.3d at 1040. In arguing to the contrary, Green Jacobson misstates the holding of *Klier,* which *overturned* the district court's *cy pres* award because "a cy pres distribution to a third party of unclaimed settlement funds is permissible only when it is not feasible to make further distributions to class members." 658 F.3d at 475. (Quite properly, the district court did not rely on the "sole discretion" language in its earlier distribution order.)

[7] *Fourth,* Oetting argues that the award must be reversed because Green Jacobson did not notify the class of its motion for a *cy pres* distribution. We agree that, unless the amount of funds to be distributed *cy pres* is de minimis, the district court should make a *cy pres* proposal publicly available and allow class members to object or suggest alternative recipients before the court selects a *cy pres* recipient. This gives class members a voice in choosing a "next best" third party and minimizes any appearance of judicial over-reaching. *See In re Baby Prods.,* 708 F.3d at 180; ALI § 3.07(c), cmt b (encouraging courts to "solicit[ ] input from the parties" regarding *cy pres* recipients). As we are vacating the *cy pres* award on other grounds, we need not address whether class members were denied this opportunity and if so, the question of an appropriate remedy.[FN6]

**\*5** [8] *Fifth,* when a district court concludes that a *cy pres* distribution is appropriate after applying the foregoing rigorous standards, such a distribution *must be* "for the next best use ... for indirect class benefit," and "for uses consistent with the nature of the underlying action and with the judicial function." *In re Katrina,* 628 F.3d at 196 (quotations omitted); *accord Klier,* 658 F.3d at 474; *Nachshin,* 663 F.3d at 1040; *Holtzman,* 728 F.3d at 689–90; ALI § 307(c) ("a recipient whose interests reasonably approximate those being pursued by the class"). As we said in *Airline Tickets II,* 307 F.3d at 682, "the unclaimed funds should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated." [FN7]

[9] Applying this standard, it is clear that LSEM, though unquestionably a worthy charity, is not the "next best" recipient of unclaimed settlement funds in this nationwide class action seeking damages for violations of federal and state securities laws. In approving LSEM, the district court found that "there is no immediately apparent organization that will indirectly benefit NationsBank and BankAmerica class members," and that LSEM sufficiently approximated the interests of the class because it serves victims of fraud. *Bank of America,* 2013 WL 3212514, at \*4–5. But it is not sufficient to find that no "next-best" recipient is "immediately apparent." Rather, a district court must carefully weigh all considerations, in-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2015 WL 110334 (C.A.8 (Mo.))
**(Cite as: 2015 WL 110334 (C.A.8 (Mo.)))**

cluding the geographic scope of the underlying litigation, and make a "thorough investigation" to determine whether a recipient can be found that most closely approximates the interests of the class. ALI § 3.07, cmt b; *see Airline Tickets I,* 268 F.3d at 626. The court must look for a recipient that "relate[s] directly to the [ ] injury alleged in this lawsuit and settled by the parties." *Airline Tickets II,* 307 F.3d at 683. At oral argument, it became apparent there are non-profit organizations devoted to preventing and aiding the victims of securities fraud, such as the SEC Fair Funds. Those alternatives must be thoroughly explored before concluding that a totally unrelated charity such as LSEM is an acceptable "next best" recipient.

On remand, if any settlement funds remain after an additional distribution to the class, and if the district court concludes after proper inquiry that a *cy pres* award is appropriate, it must select next best *cy pres* recipient(s) more closely tailored to the interests of the class and the purposes of the underlying litigation.

## II.

[10][11] Oetting argues the award of supplemental attorneys' fees must be vacated because Green Jacobson may not seek an additional award when it was already awarded eighteen percent of the NationsBank fund. *See In re BankAmerica Corp. Sec. Litig.,* 228 F.Supp.2d 1061, 1066 (E.D.Mo.2002). In general, post-settlement monitoring is a compensable activity for which counsel is entitled to a reasonable fee. *Powell,* 119 F.3d at 707. Here, the district court found that the complexities of the case were unforeseeable at the time of the first award and that Green Jacobson was entitled to compensation for its additional work in this case. *Bank of America,* 2013 WL 3212514, at *6. The record on appeal gives us no reason to disagree.

**\*6** [12] On the other hand, the fee award was made in an order that accepted class counsel's suggestion of a *cy pres* distribution, which was contrary to the interests of the NationsBank Classes, and terminated the case with respect to those Classes. "Where a district court has reason to believe that [class] counsel has not met its responsibility to seek an award that adequately prioritizes direct benefit to the class, we therefore think it appropriate for the court to decrease the fee award." *In re Baby Prods.,* 708 F.3d at 178. Evaluating whether attorneys' fees should be reduced for this reason may require the court "to withhold all or a substantial part of the fee until the distribution process is complete." *Id.* at 179, quoting Manual for Complex Litigation § 21.71 (4th ed.2008). The factual context here is far different than in *Baby Products,* and we certainly do not mean to suggest that the final fee award be reduced for this reason. But it may be a relevant factor, and we therefor conclude that review of the award is premature. Accordingly, we vacate the award of supplemental attorneys' fees, to be redetermined in the exercise of the district court's discretion upon completion of the additional distribution(s) to the NationsBank Classes that result from this decision. *See Consol. Beef Indus., Inc. v. N.Y. Life Ins. Co.,* 949 F.2d 960, 966 (8th Cir.1991) (standard of review).

The Memorandum and Order of the district court dated June 24, 2013, is vacated and the case is remanded for further proceedings not inconsistent with this opinion. We deny the pending F.R.A.P. 10(e) motion.

MURPHY, Circuit Judge, dissenting.

I respectfully dissent because the record does not warrant the post hoc imposition of a new rule to this case. The district court's cy pres order grew out of its active supervision of this consolidated litigation and was not inconsistent with our then existing precedents. Section 3.07 of the American Law Institute's Principles of Aggregate Litigation, on which the majority relies, had neither been argued in the district court nor yet adopted by our court.

I.

In February 1999 the Judicial Panel on Multidis-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2015 WL 110334 (C.A.8 (Mo.))
**(Cite as: 2015 WL 110334 (C.A.8 (Mo.)))**

trict Litigation consolidated some 24 complaints that had been filed in four different districts in the fall of 1998 and then transferred them for case management to the United States District Court for the Eastern District of Missouri. The consolidated case was assigned to one of the district's most experienced trial judges, the Honorable John F. Nangle, for his oversight and development. After several years of management Judge Nangle approved a $490 million global settlement agreement in September 2002 and lead counsel's application for attorney fees in the next month.

NationsBank class representative David Oetting had objected to the proposed settlement in May 2002, claiming problems with the mediation process, the amount of the settlement, and payment of the settlement in cash rather than stock. He raised these issues in an appeal from the district court order approving the settlement. At that time Oetting did not raise any objection to either the fee award or to the provision that settlement funds remaining after one or two distributions "may be contributed as a donation to one or more non-sectarian, not-for-profit 501(c)(3) organizations as determined by the Court *in its sole discretion* " (emphasis added). We affirmed the district court's approval of the settlement. *In re BankAmerica Sec. Litig.,* 350 F.3d 747, 752 (8th Cir.2003).

**\*7** On June 14, 2004 Judge Nangle authorized the claims administrator to begin distributing the settlement funds. The distribution process was not without difficulties. Many class members had missed the initial deadline for filing complaints. The district court ordered class counsel to use a locator service to find some class members and made exceptions to allow several thousand late claims to be filed. The court observed that the NationsBank classes had had more problems with misidentified and late claims than the BankAmerica classes. Because many claimants failed to cash their checks on time, the court ordered that checks amounting to a total of over $1 million be reissued for good cause. Most of the reissued checks were for class members who had been customers of an investment management company which had failed to report their claims accurately.

Even after these exceptions in the distribution process, new problems surfaced. One year after the final claims filing deadline had passed, a brokerage firm discovered it had neglected to include in the claims notification process five million NationsBank shares held on behalf of its clients. After the district court declined to provide another exception to the final distribution deadline, class counsel negotiated an arrangement for the brokerage firm to pay its clients what they would have received from the settlement had their claims been timely. As Judge Nangle observed, the claims distribution process had been "inundated with inefficiency."

The district court ordered a second distribution on June 16, 2008 involving $4.75 million remaining in the settlement fund. During that same month, a substantial fraud on the settlement fund was discovered involving an accountant formerly employed by the claims administrator, amounting to a total loss of $5,879,073.36. The district court stayed the second distribution on August 6, 2008 pending further investigation. Judge Nangle unfortunately died on August 24, 2008. The consolidated case was briefly transferred to two other judges; no recorded proceedings occurred during that period. Then on December 1, 2008 the case was reassigned to United States District Judge Carol Jackson.

After the fraud investigation was completed, Judge Jackson lifted the stay on April 15, 2009. She then oversaw the second distribution, which included orders to reissue various settlement checks for good cause. After restitution had been ordered in the criminal fraud case, class counsel were notified in March 2011 that immediate recovery for the settlement fund would be less than $300,000. The fund eventually received $295,290.27 in January 2013. The administrative cost for the second distribution amounted to

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2015 WL 110334 (C.A.8 (Mo.))
**(Cite as: 2015 WL 110334 (C.A.8 (Mo.)))**

$336,611.41, leaving $2.4 million remaining in the settlement fund.

Class counsel then moved in September 2012 for a cy pres distribution of the remaining funds and for additional attorney fees; Oetting opposed these motions. On June 24, 2013 the court ordered a cy pres distribution of the remaining settlement funds to Legal Services of Eastern Missouri, a legal aid organization whose work includes representing victims of fraud. It also awarded $98,114.34 in additional attorney fees to class counsel.

II.

**\*8** We have explained that cy pres awards are appropriate "where class members 'are difficult to identify or where they change constantly,' or where there are unclaimed funds." *In re Airline Ticket Comm'n. Antitrust Litig.,* 268 F.3d 619, 625 (8th Cir.2001) ("*Airline Tickets I*") (quoting *Powell v. Georgia–Pacific Corp.,* 119 F.3d 703, 706 (8th Cir.1997)). In *Powell,* we reviewed for clear error a district court's factual findings about such circumstances. 119 F.3d at 706.

The record in the case now before our court shows that the identification of class members for the two earlier distributions had been difficult, and that a good part of any additional distribution would have to be made to institutional investors holding stock on behalf of clients. Prior distribution efforts had encountered difficulties in locating and correctly processing claims for such class members. Meanwhile, years had passed since the settlement was reached, and $2.4 million remained in the settlement fund because some class members had failed to cash their checks and interest had accumulated on these unclaimed funds. Oetting himself had offered no evidence to show that a further distribution to the class would have been feasible at that time. On this record, the district court did not clearly err in determining that the remaining funds had been unclaimed and that individual members of the class were difficult to identify.

The district court found that additional factors favored a cy pres distribution. The parties' settlement agreement, approved by the district court more than ten years earlier, provided that unclaimed funds remaining after one or two distributions "may be contributed as a donation to one or more non-sectarian, not-for-profit 501(c)(3) organizations as determined by the Court in its sole discretion." There was no objection to this provision by any party or counsel at the time of settlement.

Class members who had submitted claims had already received the full compensation due under the settlement agreement, as in *Powell,* 119 F.3d at 705, where "each class member had been fully compensated according to the terms of the consent decree." Many of those who were harmed by the underlying fraud had been beneficial owners of stock held by mutual funds and other institutional investors. Given that the beneficial ownership of such shares changes constantly and some 15 years had passed after the securities violations, the district court reasonably concluded that another distribution would not likely reach those who had been actually harmed. All these factors support the district court's determination that the required circumstances for a cy pres distribution existed and that such a distribution would not be unwise or unfair to any party.

Counsel were involved in the consideration of an appropriate recipient for a cy pres distribution. Class counsel had suggested a distribution among three organizations: Legal Services of Eastern Missouri (LSEM), the Mathews Dickey Boys' and Girls' Club of St. Louis, and The Backstoppers. In his response in the district court, Oetting opposed the suggested distributions to the Boys' and Girls' Club, a youth services organization, and The Backstoppers, a group supporting families of fallen police officers, firefighters, and emergency medical technicians. Oetting argued that the work of these charities was not related to the subject matter of the case before the court.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2015 WL 110334 (C.A.8 (Mo.))
**(Cite as: 2015 WL 110334 (C.A.8 (Mo.)))**

Nothing in the record at that stage, however, reflects any objection by Oetting to LSEM which was the third suggested recipient.FN8

**\*9** In its cy pres order the district court carefully considered Oetting's objections and the circuit precedent requiring it to "consider the full geographic scope of the case" as well as to "tailor[ ] a cy pres distribution to the nature of the underlying lawsuit." *In re Airline Ticket Comm'n. Antitrust Litig.,* 307 F.3d 679, 683 (8th Cir.2002) ("*Airline Tickets II* "). Finding that the "multi-district litigation was transferred to this district because much of the harm suffered by the class was felt by individuals in the St. Louis region," the district court found that distribution to an organization serving that area would be proper. Counsel had also pointed out that a St. Louis bank was a major predecessor in interest to NationsBank and that many of the individual stockholders of NationsBank resided in eastern Missouri. The district court found that a final distribution to LSEM would also be consistent with the nature of this securities fraud lawsuit since that organization serves victims of fraud. No party suggested any organization that would benefit class members more directly in these circumstances where the majority of shares were held by large investment firms. The district court found that distributions to the Boys' and Girls' Club or The Backstoppers would not be appropriate because their work did not focus on fraud.

We review the district court's selection of LSEM as the recipient of the cy pres distribution for abuse of discretion. *Powell,* 119 F.3d at 707. The district court's careful application of existing precedent to the facts of this case shows no abuse of its discretion. Unlike the decision we reversed in *Airline Tickets I,* the district court here "carefully weighed all the [applicable] considerations" and made findings that supported its decision. 268 F.3d at 626. All parties were given an opportunity for comment and the district court provided adequate reasons for selecting LSEM as the cy pres recipient based on the nature of its work as well as its situs in the area where many class members were located when their losses occurred. The district court appropriately "tailor[ed][the] cy pres distribution to the nature of the underlying lawsuit," as our precedent requires. *Airline Tickets II,* 307 F.3d at 683.

III.

Circuit courts which have adopted the American Law Institute's preference for pro rata distributions to class members also recognize that cy pres awards are appropriate in certain cases. The First Circuit, for example, endorsed the Institute's recommendation in *In re Lupron Marketing and Sales Practices Litigation* while also affirming a cy pres distribution of surplus funds as provided in a settlement agreement. 677 F.3d 21, 25–26, 31 (1st Cir.2012). In reversing a cy pres distribution of surplus funds in *Klier v. Elf Atochem North America, Inc.,* the Fifth Circuit acknowledged that such distributions are appropriate when contemplated in the parties' agreement or when the class has already been adequately compensated. 658 F.3d 468, 475–76 (5th Cir.2011). While the Third Circuit agrees with the Institute that "cy pres distributions are most appropriate where further individual distributions are economically infeasible," it has not so limited them and has recognized their potential role in settlements. *In re Baby Prods. Antitrust Litig.,* 708 F.3d 163, 172–73 (3d Cir.2013).

**\*10** Here, the district court's decision to order a cy pres distribution was supported by the principles outlined in these cited circuit cases. Problems with the first two distributions made the feasibility of a third distribution doubtful. Moreover, the court found that class members who had submitted claims had been fully compensated according to the settlement agreement. Unlike in *Klier,* 677 F.3d at 477–78, this record does not show that a particular subclass was seriously undercompensated. Moreover, this settlement agreement had not only been approved by the district court, but also by our circuit court. *In re BankAmerica Sec. Litig.,* 350 F.3d at 752. The settlement agreement authorized a cy pres distribution of

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2015 WL 110334 (C.A.8 (Mo.))
**(Cite as: 2015 WL 110334 (C.A.8 (Mo.)))**

unclaimed settlement funds remaining after one or two distributions to the class, and no objection was raised to that provision at the time of settlement.

The American Law Institute principles support the district court's selection of LSEM as the remainder cy pres recipient. The Institute recommends that cy pres distributions be awarded to a recipient "whose interests reasonably approximate those being pursued by the class." In applying the Institute's recommendation, the First Circuit cited our precedent in *Airline Tickets I* and *Airline Tickets II* in examining whether or not a cy pres recipient reflected the geographic scope and subject matter of the litigation. *In re Lupron,* 677 F.3d at 33, 36.

In the case now before our court, the district court similarly selected a recipient whose geographic location related to the underlying securities fraud and whose mission included combating fraud. LSEM related "as nearly as possible, to the original purposes of the class action and its settlement," taking into account "the amount of the remaining unclaimed funds and the costs of searching for another qualified recipient." *See Airline Tickets II,* 307 F.3d at 683.

On this record the district court did not abuse its discretion by applying such criteria and selecting LSEM as a cy pres recipient.

IV.

For all these reasons, I respectfully dissent. The district court's decision to distribute the remaining settlement funds cy pres to LSEM should be affirmed, as well as the award of additional attorney fees to the Green Jacobson law firm warranted by unforeseeable complexities in the settlement distribution.

> FN1. Green Jacobson argues that Oetting lacks standing to contest the manner in which the remainder of the NationsBank settlement fund is distributed because he did not cash his initial distribution check and therefore has no personal interest in the issues on appeal. This contention is frivolous. As class representative, Oetting "assume[d] a position of a fiduciary character" such that he is not only entitled to represent the interests of the class, but has a duty to do so. *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 549, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Therefore, Oetting has standing to ensure that the remainder of the fund—now some $2.7 million—is distributed in a manner that is most beneficial to the class. Indeed, not only representative class plaintiffs but also non-named class members who have timely objected may appeal a district court's order of a *cy pres* distribution of settlement funds. *See In re Lupron Mktg. & Sales Practices Litig.,* 677 F.3d 21, 29 (1st Cir.2012); *Nachshin v. AOL, LLC,* 663 F.3d 1034, 1037–41 (9th Cir.2011) (objecting class members successfully challenged the district court's choice of *cy pres* recipient on appeal).

> FN2. "The term 'cy pres' is derived from the Norman French expression *cy pres comme possible,* which means 'as near as possible.' The cy pres doctrine originated as a rule of construction to save a testamentary charitable gift that would otherwise fail, allowing 'the next best use of the funds to satisfy the testator's intent as near as possible.'" *In re Airline Ticket Comm'n Antitrust Litig.,* 268 F.3d 619, 625 (8th Cir.2001) ( "*Airline Tickets I* ") (quotation omitted).

> FN3. Class members who received but did not cash prior distributions might be included in a further distribution, because attitudes and financial conditions may change over ten years. Obviously, we leave the details of the further distribution, and the question how to dispose of any unclaimed funds after that

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2015 WL 110334 (C.A.8 (Mo.))
**(Cite as: 2015 WL 110334 (C.A.8 (Mo.)))**

distribution, to the discretion of the district court.

FN4. The separate BankAmerica settlement fund had $1,376,000 remaining after the second distribution. Counsel for the BankAmerica Classes moved to distribute that money to class members who cashed checks in the 2009 distribution and would receive at least $100 in this final distribution. Class counsel also moved for an award of attorneys' fees and requested that funds remaining after the final distribution be distributed *cy pres* in four equal parts to LSEM, the Federal Bar Foundation, MFY Legal Services, Inc. in New York charities, and the Kathryn A. McDonald Education Advocacy Project of the New York Legal Aid Society. The district court has not ruled on this motion.

FN5. The contention is factually inaccurate, as the settlement agreement only *permitted* distribution of remaining funds to charities at the court's sole discretion. The district court's June 2004 order authorizing an initial distribution improperly went further, stating that funds remaining "by reason of returned or unpaid checks or otherwise" would be paid to "Authorized Claimants" in a second distribution, and any remaining funds "shall be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s) as determined by the court in its sole discretion."

FN6. We also do not address the distinct question whether Rule 23(e) of the Federal Rules of Civil Procedure requires a district court to identify proposed recipients of any *cy pres* distribution of unclaimed funds in the original notice of a proposed class settlement. *Compare In re Baby Prods.,* 708 F.3d at 180, *with In re Katrina,* 628 F.3d at 198;

*see generally Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1153 (8th Cir.1999) (notice at this stage "need only satisfy the broad reasonableness standards imposed by due process").

FN7. Because Oetting objected generally to the proposed *cy pres* distribution, we may review whether the district court correctly interpreted and applied our precedent in *Airline Tickets I* and II. *See Lebron v. Nat'l. R.R. Passenger Corp.,* 513 U.S. 374, 379, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995).

FN8. Oetting did offer belated suggestions of potential cy pres recipients in a surreply never accepted for filing. He also failed to raise any issue before the district court about notice to class members of the proposed cy pres distribution.

C.A.8 (Mo.),2015.
In re BankAmerica Corp. Securities Litigation
--- F.3d ----, 2015 WL 110334 (C.A.8 (Mo.))

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.