# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | **Hon. Anita B. Brody** |
| | No. 12-md-2323-AB |
| THIS DOCUMENT RELATES TO: | No. 14-01995-AB |
| *LEWIS et al., v. KANSAS CITY CHEIFS FOOTBALL CLUB, INC.,* | No. 14-03383-AB |
| and | No. 14-03382-AB |
| *SMITH et al., v. KANSAS CITY CHIEFS FOOTBALL CLUB, INC.,* | No. 14-04779-AB |
| and | MDL No. 2323 |
| *HORN, et al. v. KANSAS CITY CHIEFS FOOTBALL CLUB, INC.* | |
| and | |
| *KENNEY, et al. v. KANSAS CITY CHIEFS FOOTBALL CLUB, INC.* | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND

Kenneth B. McClain
Lauren E. McClain
Timothy J. Kingsbury
HUMPHREY, FARRINGTON & MCCLAIN
221 West Lexington, Suite 400
Independence, MO 64051
Telephone: (816) 836-5050
Facsimile: (816) 836-8966

Paul D. Anderson
Andrew Schermerhorn
John Klamann
THE KLAMANN LAW FIRM
4435 Main, Ste. 150
Kansas City, MO 64111
Telephone: (816) 421-2626
Facsimile:  (816) 421-8686

Wm. Dirk Vandever
THE POPHAM LAW FIRM
712 Broadway, Suite 100
Kansas City, Missouri
Telephone: (816) 221-2288
Facsimile: (816) 221-3999

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................... iii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 3

I.    Standard on Motion to Remand ...................................................................................... 4

II.   Federal-Question Jurisdiction ......................................................................................... 4

     A.   The Well-Pleaded Complaint Rule ......................................................................... 4

     B.   The Doctrine of "Complete Preemption" ............................................................... 6

III.  Analysis of Third Circuit Case Law .............................................................................. 11

     A.   *Kline v. Sec. Guards, Inc* .................................................................................... 11

     B.   *Trans Penn Wax Corp. v. McCandless* ............................................................ 12

III.  Analysis of Plaintiffs' Claims through the Lens of *Stellar v. Allied Signal, Inc.* ..... 13

     1.   Negligence ............................................................................................................ 15

     2.   Fraudulent Concealment ...................................................................................... 24

     3.   Loss of Consortium ............................................................................................. 26

IV.  *Green v. Arizona Cardinals Football Club, LLC* ...................................................... 26

V.   This Case is Not Removable Pursuant to 28 U.S.C. § 1445(c) ................................... 27

CONCLUSION....................................................................................................................... 28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amesquita v. Gilster-Mary Lee Corp.*,
  408 S.W.3d 293 (Mo. Ct. App. 2013)................................................................ 28
*Anderson v. Ford Motor Co.*,
  803 F.2d 953 (8th Cir.1986) ....................................................................... 21, 25
*Antol v. Esposto*,
  100 F.3d 1111 (3rd Cir. 1996).................................................................... 8, 10
*Arceneausx v. Amstar Corp.*,
  2004 WL 574718 (E.D.La Mar. 22, 2004) ........................................................ 21
*Arceneaux v. Amstar Corp.*,
  2004 WL 574718 (E.D. La. Mar. 22, 2004) ...................................................... 20
*Beneficial Nat. Bank v. Anderson*,
  539 U.S. 1 (2003)..................................................................................... 4, 5
*Berda v. CBS Inc.*,
  881 F.2d 20 (3d Cir. 1989)........................................................................ 2, 10
*Bethel v. Sunlight Janitor Service*,
  551 S.W.2d 616 (Mo.1977) ............................................................................ 22
*Blanton v. Dold*,
  18 S.W. 1149 (1892)...................................................................................... 22
*Casselli v. City of Philadelphia*,
  54 F. Supp. 3d 368 (E.D. Pa. 2014) .............................................................. 10
*Charlton v. St. Louis & S.F.R. Co.*,
  98 S.W. 529 (1906)....................................................................................... 22
*Coggins v. Keystone Foods, LLC*,
  No. CIV.A. 15-480, 2015 WL 3400938 (E.D. Pa. May 27, 2015) ........................ 4
*Dent v. National Football League*,
  No. C-14-02324-WHA, 2014 U.S. Dist. LEXIS 174448 (N.D. Pa. 2014).............. 15
*DiPilato v. Commonwealth Ass'n of Sch. Administrators, Local 502*,
  588 F. Supp. 2d 631 (E.D. Pa. 2008) .............................................................. 8
*Duerson v. Nat'l Football League*,
  No. 13 C 2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012) ............................. 18
*Fox v. Parker Hannifin Corp.*,
  914 F.2d 795 (6th Cir. 1990) ....................................................................... 26
*Francis v. Noranda Aluminum, Inc.*,
  No. 1:12CV0104 JAR, 2013 WL 1090300 (E.D. Mo. Mar. 15, 2013) ................... 15
*Glatts v. Crozer-Keystone Health Sys.*,
  645 F. Supp. 2d 446 (E.D. Pa. 2009) ............................................................... 9
*Hamilton v. Palm*,
  621 F.3d 816 (8th Cir. 2010) ....................................................................... 21
*Hanks v. Gen. Motors Corp.*,
  859 F.2d 67 (8th Cir. 1988) ......................................................................... 21
*Hannah v. Mallinckrodt, Inc.*,
  633 S.W.2d 723 (Mo. banc 1982)................................................................... 21
In re Diet Drugs Prods. Liab. Litig.,

294 F.Supp.2d 667 (E.D.Pa.2003) ............................................................. 3

*In re National Football League Players' Concussion Injury Litigation*,
2:12-md-02323-AB ............................................................................... 3

*In Re: Asbestos Products Liability Litigation, MDL-875*,
Civil Action No.: 01-md-0875. No. 15-00324-ER (February 24, 2015) ................. 26

*Johnson v. Auto Handling Corp.*,
857 F. Supp. 2d 848 (E.D. Mo. 2012) .......................................................... 22

*Kline v. Sec. Guards, Inc*.,
386 F.3d 246 (3d Cir. 2004) ........................................................... passim

*Kutilek v. Union Pac. R.R.*,
454 F. Supp. 2d 871 (E.D. Mo. 2006) ........................................................... 16

*La Chemise Lacoste v. Alligator Co.*,
506 F.2d 339 (3d Cir.1974) ..................................................................... 4

*Lafarge N. Am., Inc. v. Discovery Grp. L.L.C.*,
574 F.3d 973 (8th Cir. 2009) ................................................................... 25

*Lambert v. Highlands Hosp*.,
No. 2:12-CV-733, 2012 WL 4762197 (W.D. Pa. Oct. 5, 2012) .................... 8, 9, 10

*Livadas v. Bradshaw*,
512 U.S. 107 (1994) ............................................................................. 9

*Manning v. Merrill Lynch Pierce Fenner & Smith, Inc*.,
772 F.3d 158 (3d Cir. 2014) ..................................................................... 4

*McKnight v. Dresser, Inc*.,
676 F.3d 426 (5th Cir. 2012) ................................................................... 23

*Medlin v. Boeing Vertol Co*.,
620 F.2d 957 (3d Cir. 1980) ................................................................... 11

*Merrell Dow Pharmaceuticals Inc. v. Thompson*,
478 U.S. 804 (1986) ............................................................................. 5

*New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*,
760 F.3d 297 (3d Cir. 2014) ................................................................. 8, 9

*Palmer v. Kraft Foods Global, Inc.*,
No. CIV.A. 13-6260, 2014 WL 317876, at *4 (E.D. Pa. Jan. 29, 2014) .......... 5, 11

*Poulter v. Cottrell, Inc.*,
12 C 01071, 2013 WL 3455839 (N.D. Ill. July 9, 2013) .................................. 20

*Samuel–Bassett v. KIA Motors Am., Inc.*,
357 F.3d 392 (3d Cir.2004) ..................................................................... 4

*State ex rel. Brewen–Clark Syrup Co. v. Missouri Workmen's Compensation Commission*,
8 S.W.2d 897 (Mo.1928) (*en banc* ) ........................................................ 28

*State ex rel. KCP & L Greater Missouri Operations Co. v. Cook*, 353 S.W.3d 14 (Mo. Ct. App.
2011) ............................................................................................... 28

*Stellar v. Allied Signal, Inc.*, No.
5:14-CV-05083-ER, 2015 WL 1654839 (E.D. Pa. Apr. 15, 2015). .............. passim

*The Fair v. Kohler Die & Specialty Co.*,
228 U.S. 22 (1913) ............................................................................... 5

*Thompson v. Kroeger*,
380 S.W.2d 339 (Mo.1964) ..................................................................... 23

*Tietjens v. General Motors Corp*.,

418 S.W.2d 75 (Mo.1967) ........................................................................... 25
*Tooey v. AK Steel Corp.*,
81 A.3d 851 (2013) ..................................................................................... 14
*Trans Penn Wax Corp. v. McCandless*,
50 F.3d 217 (3d Cir.1995)..................................................................... 12, 24
*Voilas v. Gen. Motors Corp.*,
170 F.3d 367 (3d Cir. 1999)..................................................................... 7, 22
*Wengler v. Druggists Mut. Ins. Co.,*
583 S.W.2d 162 (Mo.1979) ....................................................................... 22

## Statutes

R.S.Mo. § 287.010 ....................................................................................... 27
R.S.Mo. § 287.110(2) ................................................................................... 28

## Other Authorities

Mo. Approved Jury Instr. (Civil) 11.02 (7th ed)......................................... 21

Plaintiffs, Albert Lewis, Art Still, Lizabeth Still, Barry Hackett, Cynthia Hackett, Todd McNair, Lynette McNair, Fred Jones, Tim Barnett, Chelonda Barnett, Walker Lee Ashley, Emile Harry, Lori Harry, Chris Smith, Billie Smith, Alexander Cooper, Leonard Griffin, Dawn Griffin, Christopher Martin, Yolanda Thompson-Martin, Joseph Phillips, Kevin Porter, Annjela Hynes-Porter, Neil Smith, Jayice Pearson, Trent Bryant, Robin Bryant, Charles Mincy, Paul Palmer, Douglas Terry, Joseph Horn, William Kenney, Sandra Louise Kenney, Thomas Baugh, and Jean Baugh (hereinafter "Plaintiffs"), by and through undersigned counsel, respectfully submit this Memorandum in Support of their Motion to Remand.

## **INTRODUCTION**

Plaintiffs are 23 former professional football players and certain of their wives who brought claims for negligence, negligent misrepresentation, fraudulent concealment, and loss of consortium against the players' former employer, the Defendant Kansas City Chiefs Football Club, Inc. (referred to hereinafter as the "Chiefs" or "Defendant"). Plaintiffs' claims against the Chiefs are made in one of four separate actions originating in the Circuit Court of Jackson County, Missouri. The crux of Plaintiffs' allegations is that the players' former employer, the Chiefs, failed to discharge specific duties imposed by Missouri state law.

Like all employers in Missouri, the Chiefs owed Plaintiffs a duty to maintain a safe working environment, a duty not to expose Plaintiffs to unreasonable risks of harm, a duty to warn Plaintiffs about the existence of dangers and a duty to exercise reasonable care so as not to expose Plaintiffs to an unreasonable risk of injuries. The Chiefs breached each of these duties through various acts, errors, omissions and misrepresentations that caused or contributed to cause Plaintiffs' occupational diseases. Therefore, in compliance with Missouri's Workers' Compensation Law and pursuant to Missouri's common law, Plaintiffs in each of the above-

1

captioned cases filed a Petition in the Circuit Court of Jackson County, Missouri, seeking relief from Defendant for their employment-related occupational diseases.

The Chiefs, however, removed each of Plaintiffs' cases to the United States District Court for the Western District of Missouri, asserting that Plaintiffs' claims are preempted by § 301 of the Labor Management Relations Act ("LMRA"), because Plaintiffs' claims are "inextricably intertwined with consideration of the terms of [the CBA]" or "substantially dependent on an analysis of the relevant provisions of the CBAs"[1] and because they "arise under the CBA."[2] Defendant is wrong.

Relying upon federal procedural law as interpreted by the Eighth Circuit, where the United States District Court for the Western District of Missouri sits, Plaintiffs filed motions to remand in each of their respective actions.[3] While their motions to remand were pending, however, the United Sates Judicial Panel on Multidistrict Litigation (the "JPML") transferred Plaintiffs' cases to the Eastern District of Pennsylvania for consolidation or coordinated pretrial proceedings.

Plaintiffs now wish to present their Motion to Remand to this Court. While Plaintiffs' assertions remain the same as when they filed their original motions to remand, the authority upon which their assertions rely must be supplemented.

---

[1] In *Berda v. CBS Inc.,* 881 F.2d 20, 27 n. 8 (3d Cir.1989), the Third Circuit stated that "substantially depends" and "inextricably intertwined" were equivalent and interchangeable. *See also Stellar v. Allied Signal, Inc.*, No. 5:14-CV-05083-ER, 2015 WL 1654839, at n.14 (E.D. Pa. Apr. 15, 2015).

[2] *Lewis,* 4:14-cv-00004-BP, Doc. 1, p. 6; *Horn,* 4:14-cv-00133-BP, Doc. No. 1, p. 6; *Smith,* 4:14-cv-00195, Doc. No. 1, p. 6; and *Kenney,* 4:14-cv-00255-BP, Doc. No. 1, pp. 5-6.

[3] *Lewis,* 4:14-cv-00004-BP, Doc. 17 (Jan. 21, 2014); *Horn,* 4:14-cv-00133-BP, Doc. No. 21 (March 10, 2014); *Smith,* 4:14-cv-00195, Doc. No. 18 (March 18, 2014); *Kenney*, 4:14-cv-00255-BP, Doc. No. 20 (April 16, 2014).

On matters of federal procedural law, the transferee court must apply federal law as interpreted by the court of the district where the transferee court sits. *See In re Diet Drugs Prods. Liab. Litig.*, 294 F.Supp.2d 667, 672 (E.D.Pa.2003). Since this Court sits in the Third Circuit, federal procedural law as interpreted by the Third Circuit applies to the Plaintiffs' motions to remand. Plaintiffs, therefore, have consolidated their motion and present a revised Motion to Remand so as to reflect federal procedural law as interpreted by the Third Circuit.

Although made clear in their respective Petitions and in the body of this brief, Plaintiffs wish to expressly point out that their claims, and thus, the arguments presented, are quite different from those made in opposition to the NFL's and the NFL Properties LLC's Motion to Dismiss the Amended Master Administrative Long-Form Complaint (the "Motion to Dismiss").[4] Most notably, Plaintiffs in the above-captioned cases are not suing the NFL Parties; but rather, are suing their former employer for occupational disease. Equally important, Plaintiffs' Motion to Remand raises the question of whether this Court has jurisdiction over Plaintiffs' claims; an issue not raised by the previously briefed Motion to Dismiss.

Finally, the Court must decide Plaintiffs' Motion to Remand as soon as possible. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *Steel Company v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998)(jurisdiction is a "first and fundamental question" that a court is "bound to ask and answer for itself") (quotations omitted); *J.C. ex rel. Cook v. Pfizer, Inc.*, No. 3:12-CV-04103, 2012 WL 4442518, at *1 (S.D.W. Va. Sept. 25, 2012)("[T]he propriety of removal jurisdiction should be determined as soon as possible."). Indeed, as a court of limited jurisdiction, this Court cannot proceed to the merits of Plaintiffs' cases or otherwise

---

[4] *See In re National Football League Players' Concussion Injury Litigation*, 2:12-md-02323-AB, Doc. No. 4130 (October 31, 2012).

rule unless it possesses the requisite subject matter jurisdiction. *Steel Company*, 523 U.S. at 101-02; *see also Coggins v. Keystone Foods, LLC*, No. CIV.A. 15-480, 2015 WL 3400938, at *2 (E.D. Pa. May 27, 2015). Since jurisdiction is a "first and fundamental question," it must answered posthaste.

## ARGUMENT

### I.      Standard on Motion to Remand

A district court has original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A civil action brought in a state court may be removed to federal court only if the district court has original jurisdiction over the case. 28 U.S.C. § 1441. The removing party bears the burden of demonstrating that the district court has jurisdiction over the case. *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 162 (3d Cir. 2014); *Samuel–Bassett v. KIA Motors Am., Inc.,* 357 F.3d 392, 396 (3d Cir.2004). Because federal courts are courts of limited jurisdiction, 28 U.S.C. § 1441 is to be strictly construed against removal. *La Chemise Lacoste v. Alligator Co.,* 506 F.2d 339, 344 (3d Cir.1974). If for any reason the grounds for federal jurisdiction are questionable, the issue should be resolved in favor of remanding the case to state court. *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir.2009).

### II.     Federal-Question Jurisdiction

#### A.      The Well-Pleaded Complaint Rule

Federal question jurisdiction has long been governed by the well-pleaded-complaint rule, which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987). "A federal question 'is presented' when the complaint invokes federal law as the basis for relief." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 13 (2003) (Scalia, J., dissenting).

4

It does not suffice that the facts alleged in support of an asserted state-law claim would *also* support a federal claim, because the well-pleaded complaint rule grants plaintiffs the right chose to vindicate their interests by means of an action brought under state or federal law, if both provide cause a action. *Caterpillar* at 394–95.[5] By relying exclusively on state law, a plaintiff may avoid federal jurisdiction. *Id. See also The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25 (1913) ("Of course the party who brings a suit is master to decide what law he will rely upon").

"Nor does it even suffice that the facts alleged in support of an asserted state-law claim *do not support* a state-law claim and would *only* support a federal claim." *Beneficial* at 12 (emphasis in the original). Moreover, "[j]urisdiction may not be sustained on a theory that the plaintiff has not advanced," *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 809, n. 6 (1986), and "allusions to claims that [Plaintiffs] could have raised—but did not—are irrelevant" *Palmer v. Kraft Foods Global, Inc.*, No. CIV.A. 13-6260, 2014 WL 317876, at *4 (E.D. Pa. Jan. 29, 2014).

Finally, to determine whether the claim arises under federal law, the Court is to ignore potential defenses. *Beneficial*, 539 U.S. at 6 ("It is not enough that the plaintiff alleges some anticipated defense to his cause of action and asserts that the defense is invalidated by some

---

[5] In *Caterpillar*, the Supreme Court considered whether § 301 permitted employees, some of whom were covered by a CBA, to bring state law contract claims for breach of individual contracts. The employer sought removal on the basis that the contract claims were completely preempted because the contracts allegedly breached had been "superseded," as a matter of federal labor-contract law, by collective bargaining agreements. "Not so, said the Court. Analyzing the preemption question as a jurisdictional one and addressing it in light of the "well pleaded complaint" rule and its "independent corollary," the complete preemption doctrine, the Court found the claim not completely preempted and removal therefore improper." *McCormick*, 934 F.2d at 540 (Phillips, J., dissenting). Since the claims, as pleaded, did not rely on a collective bargaining agreement as the source of the allegedly violated rights, defendant's attempt to insert the collective bargaining agreement into the matter as a defense could not create a basis for complete preemption. *Caterpillar* at 397.

provision of the Constitution of the United States." (quotation omitted)). It is, in fact, "firmly established that a federal defense, including a preemption defense, does not provide a basis for removal, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue in the case." *Caterpillar* at 392 (internal quotation omitted). In sum, "a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." *Id.* at 399 (emphasis in original). In such a situation, the state-law claim remains just that and must be remanded.

> **B.**     **The Doctrine of "Complete Preemption"**

There is a limited corollary to the well-pleaded complaint rule, however, that precludes Plaintiffs from "avoiding a federal forum by 'artfully pleading' what is, in essence, a federal claim solely in terms of state law." *Kline v. Sec. Guards, Inc.*, 386 F.3d 246, 252 (3d Cir. 2004)(quotation omitted). Plaintiffs may not evade the preemptive effect of § 301 of the LMRA by relabeling their contract claims as claims for tortious breach of contract under state common law. Thus, while § 301 on its face grants Federal courts original jurisdiction only over claims formally alleging violations of labor contracts, as a matter of judicial interpretation, § 301 grants Federal courts with original jurisdiction over state-law claims that are, in fact, claims for violation of labor contracts in substance though not in form, "out of the felt necessity that parties not be allowed 'to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract.' " *McCormick*, 934 F.2d at 543 (Phillips, J., dissenting)(quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 2011 (1985)).

While the "complete preemption" doctrine is not limited solely to state-based claims for tortious breach of contract, the doctrine is nevertheless extremely limited. In *Allis-Chalmers*, the

6

Supreme Court articulated the standard for § 301 preemption as follows: "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted...." *Id.* at 220 (citation omitted); *Kline v. Sec. Guards, Inc*., 386 F.3d 246, 252 (3d Cir. 2004); *Voilas*, 170 F.3d at 373.[6, 7]

The Supreme Court took care, however, to define the precise limits of its holding in *Allis-Chalmers*, emphasizing that "[i]n extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, *independent* of a labor contract." *Allis–Chalmers* at 212 (emphasis added); *Kline*, 386 F.3d at 252. Thus, the Supreme Court held that the complete preemption doctrine *cannot* be relied upon as the basis for removal of claims arising under "state rules that proscribe conduct, or establish rights and obligations,

---

[6] In *Allis-Chalmers*, an employee alleged that his employer tortiously breached a collective-bargaining agreement by having failed to make required disability payments and that, in doing so, had breached a state-law duty to act "in good faith" in paying disability benefits. *Id.* at 206. The Supreme Court observed, however, that assessing whether the claim was handled in a dilatory manner would inevitably involve interpretation of the underlying collective-bargaining contract, where the duty arose. Indeed, the CBA provided both the basis for the agreement and the right to have payments made in a timely manner. *Id*., at 213-216. Since the "parties' agreement as to the manner in which a benefit claim would be handled [was] necessarily […] relevant to any allegation that the claim was handled in a dilatory manner," the Court concluded that § 301 pre-empted the application of the Wisconsin tort remedy. *Id.* at 218.

[7] In *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace, Agric. Implement Workers of Am., Int'l Union*, 523 U.S. 653, 656 (1998), the Supreme Court casts serious doubt over the jurisdictional grant of § 301 by stating that "[b]y its terms, this provision confers federal subject-matter jurisdiction only over "[s]uits for violation of contracts." The Court reasoned that the phrase "for violations of contracts" encompassed only suits "filed *because a contract has been violated*." *Id.* at 657 (emphasis in the original). The Court concluded that where a "complaint alleges no violation of the collective bargaining agreement, neither [the Supreme Court] nor the federal courts below have subject-matter jurisdiction over this case under § 301(a) of the Labor-Management Relations Act." *Id.* at 661. The Third Circuit was quick to note that *Textron* took "a very narrow view of federal jurisdiction under section 301," and that it "signal[ed] a narrow approach to section 301 jurisdiction." *Voilas v. Gen. Motors Corp*., 170 F.3d 367, 375, n.1 (3d Cir. 1999)

independent of a labor contract." *Allis–Chalmers* at 212; *Antol v. Esposto*, 100 F.3d 1111, 1115 (3d Cir. 1996)(holding that while § 301 ensures that federal law will be the basis for interpreting CBAs, it "does not address the substantive benefits a state may provide to workers 'when adjudication of those rights does not depend upon the interpretation of such agreements.'")(quoting *Lingle v. Norge Div. of Magic Chef*, Inc., 486 U.S. 399, 409 (1988)); *New Jersey Carpenters*, 760 F.3d at 306 (observing that § 301 says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not substantially depend upon the interpretation of CBAs); *Lambert*, No. 2:12-CV-733, 2012 WL 4762197, at *2.

The Third Circuit has "described *Caterpillar* as standing for the proposition that employees have the option of vindicating their interests by means of either a section 301 action or an action brought under state law, as long as the state-law action as pleaded does not require interpretation of the collective bargaining agreement." *Kline*, 386 F.3d at 253 (internal quotation and citation omitted); *Lambert v. Highlands Hosp*., No. 2:12-CV-733, 2012 WL 4762197, at *2 (W.D. Pa. Oct. 5, 2012)(same). *See also New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 305-06 (3d Cir. 2014)(observing that when a state law claim exists independent of a CBA, the state law claim is not preempted by § 301); *DiPilato v. Commonwealth Ass'n of Sch. Administrators, Local 502*, 588 F. Supp. 2d 631, 634 (E.D. Pa. 2008)("[T]he *Caterpillar* Court held that the claims in that case were not completely preempted because, even though respondents could have brought suit under the collective agreement, they chose not to.").

Moreover, it is irrelevant that "the state-law analysis might well involve attention to the same factual considerations" as the determination of whether the employer violated a CBA. *Lingle* at 407. "Such parallelism, according to the Court, would not render the state-law analysis

8

dependent upon the contractual analysis." *Kline*, 386 F.3d at 253-54 (internal quotations omitted). In fact, the Supreme Court "explicitly held that even if dispute resolution pursuant to a CBA and a state law would require addressing 'precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes.' "*New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 306 (3d Cir. 2014)(quoting *Lingle*, 486 U.S. at 410).

Rather, § 301 preemption requires that the well-pleaded complaint *necessarily* require that the Court resolve a *substantial dispute* as to the meaning of a term or provision of a CBA. *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994)("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."); *See also Glatts v. Crozer-Keystone Health Sys.*, 645 F. Supp. 2d 446, 451 (E.D. Pa. 2009)(stating that where there is no disagreement as to the meaning of a provision of a CBA, the bare fact that a CBA will be consulted does not mean that an otherwise independent claim is preempted). That is to say, the adjudication of a well-pled complaint *must* depend *substantially* on the resolution of a disputed term or provision of a CBA. Thus, "[s]ubstantive employment rights *can* exist under state laws which *do not* require an interpretation of a CBA, and claims to enforce such independent rights are not completely preempted by the LMRA." *Lambert*, No. 2:12-CV-733, 2012 WL 4762197, at *3 (citing *Kline,* 386 F.3d at 254–56)(emphasis added).

Moreover, as the Third Circuit observed, in some situations, although federal law may govern the interpretation of a CBA where necessary, as long as the adjudication of claims does not *substantially* depend on the resolution of a disputed term or provision of a CBA, "the

9

underlying state law claim, not otherwise preempted, would prevail." *Antol*, 100 F.3d at 1115-16. Hence, the resolution of a state law claim *could* depend upon both the interpretation of the collective bargaining agreement *and* a separate state law analysis, and remain outside the reach of § 301 preemption. *Antol*, 100 F.3d at 1115-16. This is because "a state-law tort claim is preempted by § 301 only if its resolution is '*substantially* dependent upon analysis of the terms of a collective bargaining agreement.'" *Berda v. CBS Inc.*, 881 F.2d 20, 26-27 (3d Cir. 1989)(quoting *Allis–Chalmers*, 471 U.S. at 210)(emphasis added); *Casselli v. City of Philadelphia*, 54 F. Supp. 3d 368, 375 (E.D. Pa. 2014)("The fact that a CBA or a union constitution is 'part of the context' in which a plaintiff's claim must be addressed does not 'trigger complete preemption in the absence of some substantial dispute over the meaning of the collective bargaining agreement.'" (quoting *Kline* at 257).

Finally, try as they might, a party seeking removal may not ignore the facts presented by plaintiffs in their well-pleaded complaint, along with their legal characterizations of those facts, in an attempt to create the prerequisites to removal. *Caterpillar*, 482 U.S. at 398. Simply put, "the plaintiff is the master of the complaint, [] a federal question must appear on the face of the complaint, and [] the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Id.* at 398-99. Moreover, the "well-pleaded complaint" rule prevents removal to federal court if a plaintiff chooses to present only a state law claim and preemption is raised solely as a defense. "Although preemption may be a valid defense, jurisdiction remains with the state court." *Antol*, 100 F.3d at 1117 (3rd Cir. 1996).[8] In short, in

---

[8] If, for example, "an employer alleges a conflict between the state law and federal law, it may assert—as a defense—that the state law is preempted." *Lambert* at *3. More artful attempts to raise the CBA as a defense so as to establish the prerequisites to removal – arguing, for example, that the CBA is inextricably intertwined with Plaintiff's claims because the Court will need to interpret the CBA in order to evaluate Defendant's actions – fair no better. Arguing that a CBA

spite of the complete preemption doctrine, "[t]he well pleaded complaint rule is alive and well and a plaintiff 'may [in most instances] avoid federal jurisdiction by exclusive reliance on state law.'" *Ry. Labor Executives Ass'n v. Pittsburgh & Lake Erie R. Co.*, 858 F.2d 936, 941-42 (3d Cir. 1988)(quoting *Caterpillar,* 107 S.Ct. at 2429). "This remains true whether or not the state law exclusively relied on is preempted by federal law." *Id.*

## III.   Analysis of Third Circuit Case Law

### A.   *Kline v. Sec. Guards, Inc*

The Supreme Court's § 301 "complete preemption" jurisprudence was applied by the Third Circuit most recently in *Kline*, 386 F.3d 246.

> In *Kline,* various union employees brought an action in state court against their employers alleging numerous violations of Pennsylvania law, including: (1) claims under the Pennsylvania Wire Tap Act; (2) claims under the Pennsylvania Private Detective Act; and (3) various common law tort claims including invasion of privacy, negligent or reckless supervision, and failure to exercise reasonable care to protect the employees. *Id.* at 250–51. The employers were allegedly monitoring conversations between employees through a video feed with built-in microphones at the entrance to the facility. *Id.* The employers removed the case pursuant to the LMRA and the district court denied the employees' motion to remand. *Id.*

*Stellar*, No. 5:14-CV-05083-ER, 2015 WL 1654839, at *8-9 (E.D. Pa. Apr. 15, 2015).

The employers maintained that the employees' state law claims went to the "core" of the employers' "management rights," which was a subject of collective bargaining, and thus, "necessarily implicated" the "Management Rights" and "Shop Rules" clauses of the CBA. *Kline*,

---

justified an employers' actions is just an artful way of raising the CBA as a defense. *Palmer*, No. CIV.A. 13-6260, 2014 WL 317876, at *5.

The same is true for arguments that unionized employees, through a CBA, waived any pre-existing or common law rights. Since waiver is a defense, it does <u>not</u> transform an otherwise well-pleaded state law action into one arising under federal law. *Caterpillar*, 482 U.S. at 398; *Medlin v. Boeing Vertol Co*., 620 F.2d 957, 963 (3d Cir. 1980)("It is well settled that the existence of a federal defense to a nonfederal claim is insufficient to satisfy the "arising under" requirement.").

386 F.3d at 255. The Third Circuit held that "[w]hile it is true that the CBA may be consulted in the course of litigating [the employees'] claims, it does not follow that their claims are completely preempted." *Id.* "A finding of § 301 preemption is not mandated simply by the contention that [plaintiffs'] state law claims "necessarily implicate" the CBA." *Id.* at 256. The Court determined the claims were properly grounded in substantive rights granted under state law and, thus, did not require an interpretation of a CBA. *Id.* at 263. Therefore, the Court held that the employees' claims were not preempted by § 301 and instructed the district court to remand the case to state court. *Id.* at 263.

Moreover, the Court reasoned that even assuming plaintiffs' claims did not demonstrably arise under state law, § 301 preemption was unjustified "in the absence of some substantial dispute over the meaning" of a CBA provision. *Id.* at 257. Because the employer identified no substantial interpretive dispute, and instead could show only that the employees "claims might relate to a subject . . . contemplated by the CBA," the court rejected its preemption argument. *Id.* at 256.

*Kline* compels the same result here. Since Plaintiffs' claims are grounded in substantive rights granted under Missouri State law, they do not require an interpretation of a CBA. Moreover, since the Chiefs fail to identify any actual and substantial dispute over the proper interpretation of any CBA provisions, § 301 preemption is simply unjustified. Therefore, Plaintiffs' claims must be remanded to state court.[9]

### B.  *Trans Penn Wax Corp. v. McCandless*

Prior to *Kline*, the Third Circuit considered *Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217 (3d Cir.1995). In that case, employees were subject to a CBA between their employer

---

[9] This conclusion is reinforced by the now questionable jurisdictional reach of § 301. *See, supra*, fn. 7.

and their union, but had also entered into individual employment contracts in which their employer guaranteed their job security. Several employees who were later terminated brought claims against their employer for breach of contract, fraud, and intentional infliction of emotional distress, relating to the representations made by the employer in their individual employment contracts.

The plaintiffs' employer asserted that the "foundation" of the state law tort and contract claims was "job security in the face of layoffs or discharge," a subject covered in the CBA. *Id.* at 230. Thus, the employer argued that the claims were dependent upon the CBA and should be preempted. The Third Circuit rejected this argument, reasoning that

> [t]he employees have not alleged [that the employer] violated the terms and conditions of the collective bargaining agreement. While the state law claims here relate to job security, they are grounded in the guarantee given the employees by [the employer]. The collective bargaining agreement does not mention the individual employment contracts, nor does [the employer] explain how the claims are substantially dependent on analysis of the collective bargaining agreement. The fact that job security is addressed in the collective bargaining agreement is "of no consequence, because [the employees] need not refer to ... the collective bargaining agreement in order to make out [their] claim." *Berda,* 881 F.2d at 27.

> *Id.* at 230–31 (footnote omitted). In rejecting the employer's argument, we also noted that "there is nothing novel about recognizing that substantive rights in the labor relations context can exist without interpreting collective-bargaining agreements." *Id.* at 231 (quoting *Lingle,* 486 U.S. at 411, 108 S.Ct. 1877).

*Kline*, 386 F.3d at 255-56.

*Trans Penn Wax*, like *Kline*, affirms that Plaintiffs' claims, grounded in substantive rights given employees by Missouri state law, can exist without interpreting collective-bargaining agreements. Thus, *Trans Penn Wax*, like *Kline*, compels that Plaintiffs' claims be remanded.

## III.   Analysis of Plaintiffs' Claims through the Lens of *Stellar v. Allied Signal, Inc.*

While the binding precedent of *Kline* and *Trans Penn Wax* compel that Plaintiffs' claims be remanded, *Stellar v. Allied Signal, Inc.*, most closely resembles Plaintiffs' claims. In *Stellar*,

Frank and Mary Schaffer filed a complaint against various defendants in the Northampton County Court of Common Pleas on February 15, 2013. *Stellar*, No. 5:14-CV-05083-ER, 2015 WL 1654839, at *1. The complaint alleged that Mr. Schaffer developed mesothelioma as a result of his exposure to asbestos while working for Mack Trucks. *Id.* Notably, Mack Trucks was not named as a defendant in the initial complaint because, at the time, the Pennsylvania Workers' Compensation Act precluded employees from asserting tort claims for occupational injuries against their employers. *Id.* However, just as happened in Missouri, a court decision in Pennsylvania allowed employees to seek common law remedies against their employers for occupational diseases. *Id. See Tooey v. AK Steel Corp.*, 81 A.3d 851, 856 (2013). Thus, Mary Schaffer and Rita Stellar (as Personal Representative of the Estate of Frank J. Schaffer who in the interim passed away) (hereinafter referred to jointly as Ms. Schaffer) filed an amended complaint pleading claims of (1) Strict Liability; (2) Breach of Warranty; (3) Negligence; (4) Fraud; (5) Conspiracy; (6) Loss of Consortium; and (7) Wrongful Death relating to Frank Schaffer's occupation disease. *Id.*

Just as happened in Plaintiffs' cases, Frank Schaffer's employer removed the case to federal court asserting a federal question pursuant to section 301 of the LMRA. *Id.* The case was then transferred to the Honorable Eduardo C. Robreno, as related to *In Re: Asbestos Products Liability Litigation, MDL-875*, Civil Action No.: 01-md-0875. No. 5:14-CV-05083-ER, Doc. No. 72 (March 3, 2015). However, prior to transfer, Judge Edward G. Smith considered a motion to remand, noting during oral arguments the importance of getting the decision right and the strangeness of the defendant's asserted basis of federal jurisdiction. *Id.*, Doc. No. 73 at pp. 5-6.[10]

---

[10] "And the basis of jurisdiction is very novel so there's a real issue here that if this is decided wrongly, everything you're doing to try to pursue this actually would be for naught -- whereas if it was remanded down improperly and there is exclusive jurisdiction in Federal Court under

Judge Smith also observed the uniqueness of Pennsylvania's Workman's Compensation law, stating that "we're probably not going to see a lot of cases in other states except to the extent that they have adopted a similar rule with respect to Workman's Comp that you can sue, because the right to sue the employer[.]" *Id.* at p. 27.

Missouri, however, like Pennsylvania, also provides employees the right to seek common law remedies against their employers for occupational diseases. *See Francis v. Noranda Aluminum, Inc.*, No. 1:12CV0104 JAR, 2013 WL 1090300, at *3 (E.D. Mo. Mar. 15, 2013)(observing that in 2011, "the Missouri Court of Appeals held that Workers' Compensation Law does not provide the exclusive remedy for occupational diseases."). Thus, as Judge Smith suggested, while there are unlikely to be a lot of cases similar to those asserted in *Stellar*, Plaintiffs' claims are nearly identical.

The District Court was also made aware of the recent decision by a federal court in California which held in *Dent v. National Football League*, No. C-14-02324-WHA, 2014 U.S. Dist. LEXIS 174448 (N.D. Pa. Dec. 17, 2014), that former professional football players' common law claims against the NFL – claims which Mack Truck asserted were similar to the claims made in *Stellar* – were preempted by Section 301. *See Stellar*, No. 5:14-CV-05083-ER, Doc. No. 63 (Dec. 29, 2014). Nevertheless, Judge Robreno, who ultimately wrote the decision for the district court, held that Ms. Schaffer's claims were <u>not</u> preempted by section 301 of the LMRA.

### 1.    Negligence

As for the negligence claim, Judge Robreno observed that whether a defendant owes a duty of care to a plaintiff is a question of law. *Stellar*, No. 5:14-CV-05083-ER, 2015 WL

---

Federal law, then everything you do in State Court would ultimately be rendered meaningless because there would be no jurisdiction. So I guess it's important we get this decision right."

1654839, at *4. This is true in both Pennsylvania and Missouri. *See Kutilek v. Union Pac. R.R.*, 454 F. Supp. 2d 871, 874 (E.D. Mo. 2006)(Observing that under Missouri law, "[t]he existence of a duty is a question of law"). In *Stellar*, plaintiffs alleged that defendant Mack Truck breached its duty as an employer to provide a safe work environment for employees. *Stellar* at *5. Plaintiffs assert the same in their negligence claims against the Chiefs. Since Pennsylvania, like Missouri, provide employees the right to seek common law remedies against their employers for occupational diseases, Judge Robreno held that the duty allegedly violated by Mack Trucks is one imposed by Pennsylvania common law and not one derived from a CBA. *Id.* The same is true of the negligence claims made by Plaintiffs against the Chiefs.[11]

Defendant Mack Truck, however, asserted that even if the duty owed by Mack Truck arose under Pennsylvania's common law, the court would nevertheless have to analyze the CBAs to determine the scope of the duty. *Id.* The Chiefs assert the same.[12] Mack Truck pointed to numerous provisions concerning workplace safety and exposure to hazardous conditions but, as the district court observed, plaintiffs' claims were not based on defendant's breach of a CBA, as there was "no reference to the CBA in their complaint." *Id.* Judge Robreno stated, "Defendant cites to various portions of the CBAs relating to, *inter alia,* workplace health and safety; however, the pertinent question is not whether Plaintiffs' claim relates to a subject contemplated

---

[11] Without explanation, the Chiefs assert Plaintiffs' claims are not based on an independent duty "owed to every person in society." *See* e.g., *Lewis,* 4:14-cv-00004-BP, Doc. 1, p. 11. Plaintiffs, however, do not rely upon a duty "owed to every person in society," nor are they required. Rather, Plaintiffs' claims are based solely on the common-law duties arising from the establishment of an employer-employee relationship, such as they exist under Missouri law.

[12] *Lewis,* Doc. 1, p. 10 ("In resolving Plaintiffs' claims, the court will need to interpret these provisions to determine the scope of the Chiefs' alleged duty to Plaintiffs and whether the Chiefs acted reasonably."); *Smith,* Doc. No. 1, p. 10 (same); *Kenney,* 4:14-cv-00255-BP, Doc. No. 1, p. 9 (same); *Horn,* Doc. No. 1, p. 8 ("Determining whether the Club breached any duty to Plaintiffs or acted reasonably will require an interpretation of these CBA provisions and whether the Club met the standards imposed by these provisions.").

by the CBAs. Rather, the question here is whether Plaintiffs' claim requires the Court to 'interpret' a provision of a CBA." *Id.* at \*8. Judge Robreno continued:

> Here, Defendant points to workplace and safety clauses in the CBAs and asserts that complete preemption must apply to Plaintiffs' negligence claim. This argument fails. The Court does not have to interpret any of the clauses in the CBAs in order for Plaintiffs to establish the scope of the duty. While it is possible that Defendant could point to some portion of a CBA in arguing that it acted reasonably, or to establish that it provided some type of warning as to certain occupational hazards, whether these statements provide a defense (in that they show Defendant acted reasonably, or that Defendant did not breach its duty of care) is a question of fact for the jury.

*Id.* at \*9. Not only that, when preemption is raised as a defense, jurisdiction remains with the state court. *Antol*, 100 F.3d at 1117 (citing *Caterpillar*, 482 U.S. at 398-99).

The Chiefs, like Ms. Schaffer, rely on duties owed as a result of the employer-employee relationship—duties imposed by the common law of the State of Missouri. Thus, just as Judge Robreno held, a court does not have to interpret any of the clauses in the CBAs in order for Plaintiffs to establish the scope of the duty. Moreover, while it is possible that the Chiefs could point to some portion of a CBA in arguing that it acted reasonably, whether its conduct provides a defense (in that they show it acted reasonably, or that the Chiefs did not breach its duty of care) is a question of fact for the jury.[13]

In response to Mack Truck's reliance on *Hechler*, 481 U.S. 851, Judge Robreno stated the following:

> In *Hechler*, the Court was presented with the question of whether a state law tort claim involving a union's breach of a duty of care to provide a member of the bargaining unit with a safe workplace was preempted by § 301. 481 U.S. at 853,

---

[13] Moreover, where the elements of an employee's claim constitute "purely factual questions pertain[ing] to the conduct of the employee and the conduct and motivation of the employer," neither of which "require a court to interpret any term of a collective-bargaining agreement[,]" the employee's state claim is "independent" of the relevant CBA agreement for purposes of § 301 because "resolution of the state-law claim does not require construing the collective bargaining agreement." *Lingle* at 407; *Kline*, 386 F.3d at 253-54.

107 S.Ct. 2161. The Court stressed that "[u]nder the common law ... it is the *employer,* not a labor union, that owes employees a duty to exercise reasonable care in providing a safe workplace." *Id.* at 859, 107 S.Ct. 2161. Because the union's duty arose from the collective bargaining agreement, and therefore the scope of the duty substantially depended on the court's interpretation of the CBA, the plaintiff's state law claim was preempted under § 301. *Id.* at 862, 107 S.Ct. 2161. Here, Plaintiffs' negligence claim is brought against Mr. Schaffer's employer, not his union. Moreover, the duty does not arise from the collective bargaining agreements; rather, it exists independent of the CBAs. Therefore, *Hechler* is not on point.

*Id.* at *9 (emphasis in the original). The same is true of Plaintiffs' claims. Indeed, *Hechler* serves as an illustration of the error repeated throughout Defendant's notices of removal. The Chiefs was Plaintiffs' *employer*. This fact, alone, easily distinguishes Plaintiffs' cases from all those relied upon by the Chiefs.[14]

The district court similarly reasoned that defendant's reliance on *United Steelworkers of Am., AFL–CIO–CLC v. Rawson*, 495 U.S. 362 (1990), was misplaced since the duty alleged in *Rawson* did not exist independent of a CBA, as it did in *Stellar*, and as it does in Plaintiffs' cases.

With regard to plaintiffs' negligence claim, Judge Robreno concluded:

In sum, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement is preempted by § 301 or other provisions of the federal labor law." *Allis–Chalmers,* 471 U.S. at 211, 105 S.Ct. 1904. Here, Plaintiffs have pleaded a state law claim for negligence involving, *inter alia,* an alleged breach of a duty to provide a safe work environment. Pennsylvania recognizes such a duty as a matter of law, and the Pennsylvania Supreme Court has recently permitted former employees to pursue such claims as residing outside the scope of the Pennsylvania Workers' Compensation Act. Defendant has not shown how the common law duty is impacted by the mere

---

[14] Defendant relies on the unpublished decision, *Duerson v. Nat'l Football League*, No. 13 C 2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012), for example. *Duerson* was a wrongful death case asserted against the NFL and a helmet manufacturer, **neither of which was decedent's employer.** Since Plaintiffs are suing their former employer, the *Duerson* opinion is wholly irrelevant. The same is true of *Maxwell v. Nat'l Football League*, No. 1 1-cv-08394 Order at 2 (C.D. Cal. Dec. 8, 2011); *Pear v. Nat'l Football League*, No. 11-cv-08395, Order at 2 (C.D. Cal. Dec. 8, 2011); *Barnes v. Nat'l Football League*, No. 11-cv-08396, Order at 2 (C.D. Cal. Dec 8, 2011); and *Stringer v. Nat'l Football League*, 474 F. Supp. 2d 894, 901-02 (S.D. Ohio 2007).

> presence of various CBAs, nor has it shown that the Court will have to interpret
> any of the terms of the various CBAs in order to adjudicate Plaintiffs' negligence
> claim. Therefore, in the instant case, Plaintiffs' negligence claim is not preempted
> by § 301.

*Id.* at *10.

In relevant respects, Plaintiffs' negligence claims are identical to that alleged by Ms. Schaffer in *Stellar*, thus, federal procedural law as interpreted by the Third Circuit compels the same result. In fact, by specifically pleading that the Chiefs "had a common law duty, separate and independent of any CBA, to use ordinary care to make its work environment reasonably safe," Plaintiffs made clear on the face of their Petitions their choosing to vindicate their right to seek their *common law* remedies against their employers for occupational disease. Thus, even more than plaintiffs in *Stellar*, Plaintiffs' claims in the above-captioned cases are clearly not preempted for purposes of establishing federal subject matter jurisdiction.

Nevertheless, in its Notices of Removal, the Chiefs assert, without explanation, that adjudicating Plaintiffs' claims "will hinge on provisions of the CBAs relating to player medical care and rule-making." [15] However, the Chiefs are nearly silent as to *why* adjudication of

---

[15] The Chiefs cited, as examples, the following: NFL CBA Art. XLIV § 1 (1993)(requiring physician on staff of Member Clubs to inform a player in writing if he has a physical condition that "could be significantly aggravated by continued performance"), see also NFL CBA Art. XXXI § 1 (1982); NFL CBA Art. XXXI § 2 (1982), Art. XLIV § 2 (1993) ("[F]ulltime head trainers and assistant trainers ... [must] be certified by the National Athletic Trainers Association"); NFL Constitution and Bylaws Art. XVII supplement (1982), Art. XVII (1984)("All determinations of recovery time for major and minor injuries must be by the club's medical staff and in accordance with the club's medical standards" for players categorized as "Reserve/Injured" on the Reserve List); NFL CBA Art. XLIV § 3 (1993) ("A player will have the opportunity to obtain a second medical opinion," and the Club shall bear "the responsibility" for the "the costs of [these] medical services."); 1993 Standard Player Contract ~ 9 (requiring Member Clubs to provide medical and hospital care as deemed necessary by their physicians in the event a player is injured);1 NFL CBA Art. XIII§ l(a) (1993) (creating a Joint Committee to study, among other things, player safety issues); NFL CBA Art. XIII § 1 (1993) (mandating procedures for review, investigation and resolution of disputes involving proposed rule changes that "could adversely affect player safety"), see also Art. XI § 8 (1982); NFL CBA Art. XIII § 2

19

Plaintiffs' claims "hinge on provisions of the CBAs." The closest the Chiefs come to providing any explanation is their assertion that "the court will need to interpret these provisions to determine the scope of the Chiefs' alleged duty to Plaintiffs and whether the Chiefs acted reasonably."[16] But, as we have seen, this argument fails. The Court does <u>not</u> have to interpret any of the clauses in the CBAs in order for Plaintiffs to establish the scope of a duty imposed by state common law (*see Hansen v. Ritter*, 375 S.W.3d at 208-09),[17] and, while it is possible that the

---

(1993) (inviting player representatives to the Competition Committee meetings "to represent the players' viewpoint on rules"). By citing to a bevy of irrelevant CBA provisions regarding "health and safety," the Chiefs effective urge this Court to create a body of law that would make owners of professional sporting teams immune from liability. *See Arceneaux v. Amstar Corp.*, 2004 WL 574718 (E.D. La. Mar. 22, 2004) (unpublished) ("To hold otherwise would provide employers and labor unions the opportunity to place broad terms such as 'health and safety' in a CBA in order to skirt liability under state law. This is not the purpose of Section 301 preemption.")

[16] *Lewis,* Doc. 1, p. 10 ("In resolving Plaintiffs' claims, the court will need to interpret these provisions to determine the scope of the Chiefs' alleged duty to Plaintiffs and whether the Chiefs acted reasonably."); *Smith,* Doc. No. 1, p. 10 (same); *Kenney,* 4:14-cv-00255-BP, Doc. No. 1, p. 9 (same); *Horn,* Doc. No. 1, p. 8 ("Determining whether the Club breached any duty to Plaintiffs or acted reasonably will require an interpretation of these CBA provisions and whether the Club met the standards imposed by these provisions.").

[17] While it may be true that duties undertaken contractually may not be considered without reference to the contract, the same cannot be said of the non-delegable and non-negotiable duty to maintain a safe workplace. The standard and "degree" of care exists wholly independent of the CBA. *See McKnight v. Dresser, Inc*., 676 F.3d 426, 432-33 (5th Cir. 2012). *See also Poulter v. Cottrell, Inc*., 12 C 01071, 2013 WL 3455839 (N.D. Ill. July 9, 2013) (rejecting defendant's argument that the CBA supplies the common-law "degree of care" and holding that even if the CBA has to be referred to in analyzing the degree of care, that is not enough to trigger preemption). *See also Jurevicius v. Cleveland Browns Football Co. LLC*, 1:09 CV 1803, 2010 WL 8461220 (N.D. Ohio Mar. 31, 2010) ("The standard for which claims are preempted depends on whether they arose from the CBA or from common law tort because the relevant inquiry for preemption purposes [...] is not to whom the duty is owed, but how it came into being." (quotation omitted)); *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994) ("If the plaintiff can prove all of the elements of his claim without the necessity of contract interpretation, then his claim is independent of the labor agreement."); *Brocail v. Detroit Tigers, Inc*., 268 S.W.3d 90, 102 (Tex. App. 2008)(holding that Detroit Tigers baseball player's claims based on a duty to provide reasonable medical care were not pre-empted because the duty arose from and required interpretation of Michigan's Workers' Disability Compensation Act); *Lingle,* 486 U.S. at 409–10, 108 S.Ct. at 1883 ("[A]s long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 preemption purposes.").

Chiefs could point to some portion of a CBA in arguing that it acted reasonably, such does not convert a well-pled state law claim into a federal claim for purposes of federal subject matter jurisdiction. *Antol*, 100 F.3d at 1117 (citing *Caterpillar*, 482 U.S. at 398-99). *See also Hendy v. Losse*, 925 F.2d 1470 (9th Cir. 1991)(unpublished).[18]

To be sure, "[u]nder Missouri law, to establish a common law claim of employer liability, [Plaintiffs] must prove that the [Chiefs] negligently breached the employer's duty to maintain a safe workplace, and that this negligence was the direct and proximate cause of [Plaintiffs'] injuries." *Hamilton v. Palm*, 621 F.3d 816, 818 (8th Cir. 2010)(citing *Hannah v. Mallinckrodt, Inc.*, 633 S.W.2d 723, 724 (Mo. banc 1982)). The term "negligence" means "the failure to use that degree of care that an ordinarily careful person would use under the same or similar circumstances." Mo. Approved Jury Instr. (Civil) 11.02 (7th ed). Thus, while the Chiefs may *refer* to the CBA in its efforts to *defend* against Plaintiffs' claims, the common law torts asserted by Plaintiff "arise in state common law and are measured by standards of conduct and responsibility completely separate from and independent of a collective bargaining agreement." *Anderson v. Ford Motor Co*., 803 F.2d 953, 959 (8th Cir.1986), cert. denied, 483 U.S. 1011, 107 S.Ct. 3242 (1987); *Hanks v. Gen. Motors Corp*., 859 F.2d 67, 70 (8th Cir. 1988); *Lingle*, 486 U.S. at 407 ("Purely factual questions" about an employee's conduct or an employer's conduct and motives do not "require a court to interpret any term of a collective-bargain agreement.").[19]

---

[18] In *Hendy*, the Ninth Circuit easily disposed of the argument, made here, that the scope of an NFL team's common law duty to its employee players cannot be ascertained without interpretation of a CBA. The court held that the scope of the duty is determined by reference solely to state law, not a CBA. Moreover, insofar as a CBA limits or otherwise alters the duties imposed on an employer, "the argument is in the nature of a defense and does not alter the state-law nature of [plaintiffs'] claim." *Id.* (*citing Caterpillar*, 482 U.S. at 398-99.) The same is true of Plaintiffs' claims.

[19] *See also Arceneausx v. Amstar Corp.*, 2004 WL 574718 (E.D.La Mar. 22, 2004) (plaintiff' state workplace safety claims were not preempted, even though the parties' CBA addressed

Inasmuch as the Chiefs assert that the common law duty was somehow expanded or that particular duties were agreed with respect to Plaintiffs' health and safety not otherwise required under Missouri's common law, Plaintiffs are not basing their claim on any such expansion of the common law duties owed to them, nor are they seeking redress for obligations assumed only as the result of a CBA. Thus, any such expansion of duties or the adoption of duties not otherwise imposed by Missouri law is of no relevance. *See Voilas,* 170 F.3d at 373–74 (noting that "employees have the option of vindicating their interests by means of either a section 301 action or an action brought under state law, as long as the state-law action as pleaded does not require interpretation of the collective bargaining agreement" (citing *Caterpillar,* 482 U.S. at 394–95)); *Stellar*, *supra*, at *7.[20]

For example, a negotiated expansion of the common law duty owed to Plaintiffs' that arises under the CBA includes the Chiefs' duty to ensure that the head trainer be certified by the

---

workplace safety, because plaintiff was asserting independent, nonnegotiable state law rights); *Johnson v. Auto Handling Corp.,* 857 F. Supp. 2d 848, 851 (E.D. Mo. 2012) (whether defendant satisfied its state-law duties to provide a reasonably safe product can be decided independent of the CBA).

[20] Plaintiffs do not deny that employers in the State of Missouri are free to negotiate what actions they *may* take to preserve a safe workplace. Employers may not, however, negotiate what actions they *must* take. *Charlton v. St. Louis & S.F.R. Co*., 98 S.W. 529, 536 (1906). In Missouri, an employer *must* "exercise reasonable care, commensurate with the nature of the business, to protect his servant from the hazards incident to it." *Id.* Significantly, "[t]his duty the law imposes on the master, and will not allow him to cast it off. It is contrary to public policy to allow the master to relieve himself by contract from liability for his own negligence." *Id. See also Blanton v. Dold*, 18 S.W. 1149, 1151 (1892)("An express contract, in most solemn form, by an employee, exempting his master from liability for negligence in the performance of his personal duties towards the former, has been often declared in American courts illegal, its subject-matter being considered as contrary to a sound public policy."). *This* is the duty relied upon by Plaintiffs in their causes of action against the Chiefs.

While the non-negotiable duty owed by an employer in Missouri is less often relied upon by employees since Missouri's Workers' Compensation Law was adopted by the legislature in 1925, *see Bethel v. Sunlight Janitor Service,* 551 S.W.2d 616, 618 (Mo.1977); *Wengler v. Druggists Mut. Ins. Co.,* 583 S.W.2d 162, 164 (Mo.1979), the case law describing the nature of the common law duties owed by an employer in the State of Missouri, though dated, are no less precedential.

National Athletic Trainers Associations.[21] If Plaintiffs were suing the Chiefs for negligently failing to hire certified trainers, then the claim would likely be preempted because this additional duty—a product of negotiation—arises solely under the CBA. Here, however, Plaintiffs are alleging the breach of five specific duties that are owed to every employee in the State of Missouri, regardless of whether a CBA was in effect or not. These are duties an employer cannot bargain away.[22]

In this case, all of Plaintiffs' well-pled claims arise in state common law and are measured by standards of conduct and responsibility completely separate from and independent of a CBA (to which the Chiefs were not a signatory). As Judge Robreno held, the jurisdictional grant of § 301 does not reach so far as to transform the claims into one arising under federal law.[23]

---

[21] NFL CBA Art. XXXI § 2 (1982), Art. XLIV § 2 (1993) ("[F]ulltime head trainers and assistant trainers ... [must] be certified by the National Athletic Trainers Association").

[22] See, *supra*, note 20. See also *Hannah*, 633 S.W.2d at 725-26 ("the exercise of due care requires precautions which a reasonably prudent employer would have taken in given circumstances, even though other employers may not have taken such commensurate precautions." (quoting *Thompson v. Kroeger*, 380 S.W.2d 339, 343 (Mo.1964)).

[23] Though not binding on this Court, *McKnight v. Dresser, Inc.*, 676 F.3d 426, 433 (5th Cir. 2012), illustrates precisely that Plaintiffs' claims are independent of a CBA and are therefore not subject to § 301 pre-emption. In *McKnight*, former employees of an industrial valve manufacturer brought state-court actions against their former employer alleging that it had been negligent in failing to maintain a safe workplace and that it had fraudulently misrepresented the dangers to which the employers were exposed. 676 F.3d at 428. The defendant employer removed the actions to federal court pursuant to § 301, asserting that the state court could not adjudicate the tort claims without interpreting the parties' CBA. *Id.* Plaintiffs filed motions to remand, contending that their claims were independent of the CBA. *Id.* at 428-29. On appeal, the United States Court of Appeals, Fifth Circuit, identified the narrow issue for review as whether (1) the claims are "inextricably intertwined" with the CBA, in which case the district court was correct to deny the motion to remand, or (2) the claims are based on independent, non-negotiable state law rights, in which case the district court was without jurisdiction and erred in denying the motion to remand. *Id.* at 431.

Finding that the workplace safety claims were based on precisely the type of independent, non-negotiable state law rights and obligations which the Supreme Court excepted from § 301 preemption in *Allis-Chalmers* and the string of cases that followed, the Fifth Circuit Court of

In sum, Plaintiffs' negligence-based claims (1) do *not* arise under any CBA; (2) do *not* substantially depend on the resolution of a disputed term or provision of a CBA (2); *can* be adjudicated with reference solely to Missouri common law; and (3) arise under *state* rules that proscribe conduct, and establish rights and obligations, *independent* of a CBA. Thus, they must be remanded.

### 2.    Fraudulent Concealment and Negligent Misrepresentation Claims

The Third Circuit's recent jurisprudence firmly establishes that Plaintiffs' fraudulent concealment and negligent misrepresentation claims are not preempted by § 301. [24] In *Trans Penn Wax*, the Third Circuit pointed out that "justifiable reliance" was a "purely factual questions" the resolution of which did not "require[ ] interpretation of the collective bargaining agreement [or] substantially depend[ ] on its construction." 50 F.3d at 232. This was reiterated by

---

Appeals held that although a CBA may elaborate on or provide identical workplace safety obligations, claims for the violation of state-imposed workplace safety obligations are ***not*** "inextricably intertwined" with the CBA. *Id.* at 432. The Fifth Circuit also dismissed the argument that the CBA provides the standard by which to judge whether the employer fulfilled its obligations to provide workplace safety. *Id.* at 432-33. The Court reasoned that a substantial body of state and Fifth Circuit case law as well as general tort principles apply to the claims in the complete absence of a CBA. *Id.* The same is true of the claims made by Plaintiffs in the above-captioned cases.

[24] Under Missouri law, the elements of fraudulent misrepresentation are: "(1) a false, material representation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be acted upon by the hearer in the manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the representation; (5) the hearer's reliance on its truth; (6) the hearer's right to rely thereon; and (7) the hearer's consequent and proximately caused injury." *White v. Bowman,* 304 S.W.3d 141, 147 (Mo.Ct.App.2009)(quotation marks and citations omitted). Similarly, the elements for negligent misrepresentation are (1) the speaker supplied information in the course of his business; (2) because of the speaker's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information; and (5) due to the hearer's reliance on the information, the hearer suffered a pecuniary loss. *Renaissance Leasing, LLC v. Vermeer Mfg. Co.,* 322 S.W.3d 112, 134 (Mo. banc 2010). Both claims require "justifiable reliance" and thus, the analysis of the fraud claim in *Trans Penn Wax, Kline* and *Stellar* are equally applicable to Plaintiffs' negligent misrepresentation claim.

the Third Circuit in *Kline*, discussed above. 386 F.3d at 257. The same is true in Missouri. *Tietjens v. General Motors Corp*., 418 S.W.2d 75, 83 (Mo.1967)(stating that the right to rely on a representation is a question of fact for the jury).

Moreover, as stated above, employers in the State of Missouri owe their employees a duty to provide a safe workplace, including the duty "to warn employees about the existence of dangers of which the employees could not reasonably be expected to be aware." *Hansen*, 375 S.W.3d at 208-09. Such a duty inevitably gives rise to the reasonable expectation that an employer will not do that which the law forbids—i.e. misrepresent or conceal information necessary to ensure a safe workplace. Indeed, "[c]oncealment of a fact which one has a duty to disclose properly serves as a substitute element for a false and fraudulent misrepresentation." *Lafarge N. Am., Inc. v. Discovery Grp. L.L.C.*, 574 F.3d 973, 983, fn. 5 (8th Cir. 2009) (quoting *Osterberger v. Hites Const. Co*., 599 S.W.2d 221, 227 (Mo. Ct. App. 1980)). Thus, pursuant to Missouri law, Plaintiffs can, in fact, demonstrate justifiable reliance without resorting to any CBA.[25]

Notably, in its notices of removal, the Chiefs' made *no* showing that Plaintiffs' fraudulent concealment or negligent misrepresentation claims, as pled, are substantially dependent upon an

---

[25] The Eighth Circuit has explained that because the torts of fraudulent concealment and negligent misrepresentation "arise in state common law and are measured by standards of conduct and responsibility completely separate from and independent of a collective bargaining agreement," as revealed by the elements of each claim, they are not pre-empted by § 301. *Anderson v. Ford Motor Co*., 803 F.2d 953, 959 (8th Cir.1986), cert. denied, 483 U.S. 1011, 107 S.Ct. 3242 (1987) ("Fraud is a common law tort action deeply rooted in local standards of individual and social responsibility. […] [A] claim of fraud does not derive from nor depend upon an underlying contract.").
*See also Jurevicius*, 1:09 CV 1803, 2010 WL 8461220 (holding that the elements of fraud can be proven without reference or interpretation of a CBA); *Foy v. Pratt & Whitney Grp.,* 127 F.3d 229, 233 (2d Cir. 1997) (holding that knowledge that a statement is false involves purely factual considerations and rejecting employer's argument that interpretation of CBA is necessary to prove justifiable reliance); *Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401, 1408 (9th Cir. 1991) (same).

analysis of a CBA. Thus, the Chiefs have utterly failed to satisfy the heavy burden of establishing federal jurisdiction over Plaintiffs' fraudulent concealment and negligent misrepresentation claims.[26]

For his part, Judge Robreno in *Stellar* simply stated that "For the same reasons [provided with respect to plaintiff's negligence claims], Plaintiffs' fraud claim is not preempted." *Stellar* at *14. The same is true here.

### 3.    Loss of Consortium

This claim is derivative of the underlying claims, and thus rises or falls based on Plaintiffs' underlying claims. *See Fox v. Parker Hannifin Corp*., 914 F.2d 795, 802-03 (6th Cir. 1990); *Stellar* at *14.

## IV.    *Green v. Arizona Cardinals Football Club, LLC*

On May 14, 2014, the United States District Court, Eastern District of Missouri, issued an Order remanding *Green v. Arizona Cardinals Football Club, LLC*, 4:14-cv-00461-CDP (E.D. Mo.) ("*Green*"), to the Circuit Court for the Twenty-Second Judicial Circuit, St. Louis, Missouri, from which it was removed. *See* Exhibit 1, Doc. #33, 4:14-cv-00461-CDP. The District Court denied defendant's motion to stay proceedings and remanded *Green* over the defendant's objections. The arguments made by the parties in *Green* are nearly identical to those made by the Chiefs in their notices of removal in the above-captioned cases.

In *Green*, the Court held that the players' claims were neither created by nor require the interpretation of a CBA. *Id*, at p. 13. As for the negligence claim, the Court held as follows:

> [H]ere the duties arise out of the common law based upon the employer-employee relationship and not out of any particular terms in the CBAs. The reasonableness of the Team's actions towards [Plaintiff] Scott cannot depend upon an

---

[26] *See e.g., In Re: Asbestos Products Liability Litigation, MDL-875*, Civil Action No.: 01-md-0875. No. 15-00324-ER, Doc. No. 42 (February 24, 2015).

> interpretation of a CBA, as Scott was never bound by the contract. It stands to reason, then, that the other plaintiffs' negligence claims do not necessarily depend upon an interpretation of the CBAs, so far as the duties owed them and the standards applied to their claims derive from the same source as for Scott.

*Id.* at p. 13. The same is true in each of the above-captioned cases.[27]

As for the negligent misrepresentation and fraudulent concealment claims, the District Court held that, "[a]s with their negligence claims, the plaintiffs' negligent misrepresentation and fraudulent concealment actions arise independent of the CBAs as a function of the common law and thus are not preempted." *Id.* at pp. 16-17. "***Because the plaintiffs' claims can be determined without interpreting the CBAs***," the Court stated, "***I do not have subject-matter jurisdiction over this case***." *Id.* (emphasis added).

*Green*, like *Kline, Trans Penn Wax*, and *Stellar*, compels that Plaintiffs' cases be remanded.

## V.     This Case is Not Removable Pursuant to 28 U.S.C. § 1445(c)

Federal law "unambiguously provides that "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." 28 U.S.C. § 1445(c). As a result, when Section 1445(c) is applicable, a case is nonremovable. The dispositive question, then, is whether this action arises under the Missouri Workers' Compensation Law. The question is easily answered by examining the statute itself.

The Missouri legislature has decreed that Chapter 287 "shall be known as 'The Worker's Compensation Law.' " Mo.Rev.Stat. § 287.010. First enacted in the 1925 version of the Missouri

---

[27] See also *Smith v. Nat'l Football League Players Ass'n*, No. 4:14CV01559 ERW, 2014 WL 6776306, at *8 (E.D. Mo. Dec. 2, 2014)(distinguishing *Green* from claims against the National Football League Players' Association on the basis that in *Green*, the claims were based on the common law duty that an employer owes to employee to exercise reasonable care in providing a safe workplace).

workers' compensation law, the law has long been recognized as the "Workmen's Compensation Law." *See Barnhill*, 2013 WL 6070012 (citing *State ex rel. Brewen–Clark Syrup Co. v. Missouri Workmen's Compensation Commission,* 320 Mo. 893, 8 S.W.2d 897, 900 (Mo.1928) (*en banc* )).

In relevant part, section 287.110(2), entitled "Scope of chapter as to injuries and diseases covered," provides:

> This chapter ***shall apply to all*** injuries received and ***occupational diseases contracted in this state***, regardless of where the contract of employment was made, ***and also to all*** injuries received and ***occupational diseases contracted outside of this state under contract of employment made in this state*** [.]

R.S.Mo. 287.110(2) (emphases added).   Since Plaintiffs allege in their Petitions that they contracted occupational diseases in the State of Missouri [*this state*] and while under contract of employment made in the State of Missouri [*this state*], the Workers' Compensation Law very clearly applies to Plaintiffs' action. *See Amesquita v. Gilster-Mary Lee Corp*., 408 S.W.3d 293, 301 (Mo. Ct. App. 2013); *see also State ex rel. KCP & L Greater Missouri Operations Co. v. Cook*, 353 S.W.3d 14, 28-29 (Mo. Ct. App. 2011)(observing that "occupational disease claims are covered by and compensable under the Act"). Moreover, while Plaintiffs seek a judicial ***remedy***, as opposed to an administrative one, section 1445 speaks of "*actions*," not remedies. Thus, removal of Plaintiffs' occupational-disease claims is expressly prohibited.

## CONCLUSION

For the reasons provided herein, Plaintiffs respectfully request that the Court enter an order remanding the case and requiring that Defendant pay just costs and actual expenses, including attorney fees, in accordance with 28 U.S.C. § 1447(c).

Respectfully submitted on Thursday, July 21, 2015.

THE KLAMANN LAW FIRM, P.A.

_____/s/ Andrew Schermerhorn_____
John M. Klamann, MO        #29335
Andrew Schermerhorn, MO   #62101
Paul D. Anderson, MO         #65354
4435 Main Street, Ste. 150
Kansas City, MO 64111
Telephone: (816) 421-2626
Facsimile: (816) 421-8686
jklamann@klamannlaw.com
ajs@klamannlaw.com
panderson@klamannlaw.com

Kenneth B. McClain, MO       #32430
Lauren E. McClain, MO        #65016
Timothy J. Kingsbury, MO     #64958
HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 West Lexington, Suite 400
Independence, MO 64051
Telephone: (816) 836-5050
Facsimile: (816) 836-8966
kbm@hfmlegal.com
lem@hfmlegal.com
tjk@hfmlegal.com

Wm. Dirk Vandever, MO        #24463
THE POPHAM LAW FIRM, P.C.
712 Broadway, Suite 100
Kansas City, MO 64105
Telephone: (816) 221-2288
Facsimile: (816) 221-3999
dvandever@pophamlaw.com

**ATTORNEYS FOR PLAINTIFFS**

29

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on Thursday, July 30, 2015, I caused the foregoing to be filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel of record.

/s/ <u>*Andrew Schermerhorn*</u>
Andrew Schermerhorn, MO
