| | |
|---|---|
| 1 | MUNGER, TOLLES & OLSON LLP |
| 2 | RONALD L. OLSON (State Bar No. 44597)<br>*Ron.Olson@mto.com* |
| 3 | JOHN M. RAPPAPORT (State Bar No. 254459)<br>*John.Rappaport@mto.com* |
| 4 | 355 South Grand Avenue, Thirty-Fifth Floor<br>Los Angeles, CA 90071-1560 |
| 5 | Telephone: (213) 683-9100<br>Facsimile: (213) 687-3702 |
| 6 | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |
| 7 | BRAD S. KARP    *(Pro Hac Vice applications to be filed)*<br>*bkarp@paulweiss.com* |
| 8 | THEODORE V. WELLS, JR.<br>*twells@paulweiss.com* |
| 9 | LYNN B. BAYARD<br>*lbayard@paulweiss.com* |
| 10 | 1285 Avenue of the Americas<br>New York, NY 10019-6064 |
| 11 | Telephone: (212) 373-3000<br>Facsimile: (212) 757-3990 |
| 12 | Attorneys for Defendants |
| 13 | NATIONAL FOOTBALL LEAGUE<br>and NFL PROPERTIES LLC |

FILED
CLERK U.S. DISTRICT COURT
OCT 1 1 2011
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 16 | VERNON MAXWELL; BRODERICK JONES; KENDALL WILLIAMS and INGRID WILLIAMS, his wife; MIKE C. RICHARDSON; RENARD YOUNG and VANESSA YOUNG, his wife; LONZELL HILL and LANITA HILL, his wife; GEORGE VISGER and KRISTIE VISGER, his wife; TERRY WRIGHT; NEWTON WILLIAMS; DUANE GALLOWAY; GEORGE JAMISON and ARNELLA JAMISON, his wife; BRYAN HOOKS; FRED McNEILL and TIA McNEILL, his wife; REGINALD ROGERS, SR.; MELVIN JENKINS and JAVONI JENKINS, his wife; ANTONIO GIBSON and BETTY GIBSON, his wife; ALVIN MOORE and ODETTA MOORE, his wife; LYVONIA A. MITCHELL; KIRK CAMERON JONES; JAMES E. ROBBINS and SHANEETA ROBBINS, his wife; ROBERT J. FREDRICKSON and BARBARA FREDRICKSON, his wife; CHARLES E. MILLER; EDWARD P. LEE and SUSAN LEE, his wife; PATRICK HEENAN and | CASE NO. CV11 08394 R(MANx)<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1441**<br><br>**COMPLAINT FILED**:<br>Los Angeles Superior Court<br>Case No. BC465842<br>July 19, 2011 |

15377760.2

1    SHARRON HEENAN, his wife; TOBY L.
WRIGHT; KELLY KIRCHBAUM; JAMES
2    HOOD and BONITA HOOD, his wife;
RICHARD MERCIER and YADIRA
3    MERCIER, his wife; BRETT ROMBERG
and EMILY ROMBERG, his wife; STEVE
4    KORTE and KARELIS KORTE, his wife;
JOE HARRIS and LYDIA HARRIS, his wife;
5    RODNEY HAMPTON and ANDETRIA
HAMPTON, his wife; LEWIS D. TILLMAN
6    and KATHY TILLMAN, his wife; LARRY
KAMINSKI and LINDA KAMINSKI, his
7    wife; DAVID KOCOUREK and MARY LEE
KOCOUREK, his wife; ROBERT
8    WEATHERS and DENISE WEATHERS, his
wife; WAYNE HAWKINS and SHARON
9    HAWKINS, his wife; ANTHONY
HARGAIN; EDWARD PAYTON and RICA
10    PAYTON, his wife; WILLIAM H.
MANDLEY and TERESA MANDLEY, his
11    wife; SHANTE CARVER; GEORGE
GOEDDEKE and GENEVA GOEDDEKE,
12    his wife; JAMES MICHAEL SCHNITKER
and BEVERLEE SCHNITKER, his wife;
13    CHRISTOPHER CALLOWAY;
THOMAS C. RANDOLPH, II and EVELYN
14    RANDOLPH, his wife; GARY JONES and
TINA JONES, his wife; OTTIS ANDERSON
15    and WANDA ANDERSON, his wife;
LEONARD RUSSELL and TASHA
16    RUSSELL, his wife; RORY GRAVES;
DAVID M. WHITE and MONICA WHITE,
17    his wife; PHILIP SMITH and GAIL SMITH;
W. VERNON DEAN; ANTHONY
18    COVINGTON; ANTHONY JONES and
VALERIE JONES, his wife; STEVE REESE
19    and MARILYN REESE, his wife; DONALD
BESSELLIEU; HAROLD L. JACKSON and
20    CAROLYN JACKSON, his wife; TODD
JOHNSON and SHANNON JOHNSON, his
21    wife; CHRIS GOODE; BRUCE WALKER
and VANISHA WALKER, his wife;
22    DERRICK S. REYNOLDS; DAVID LEWIS
and BONNIE LEWIS, his wife; RONNIE
23    LIPPETT and SHERYL LIPPETT, his wife;
ROLAND JAMES and CARMEL JAMES,
24    his wife; MARK S. DUPER; BRIAN
INGRAM and SARCA INGRAM, his wife;
25    ANTHONY COLLINS and TRUDY
COLLINS, his wife; STEVE NELSON and
26    ANGELA NELSON, his wife; JAMES E.
WILLIS and SHALANE WILLIS, his wife;
27    ANTHONY HANCOCK and PAULA
HANCOCK, his wife; JEFF BURRIS;
28    WILLIAM C. BRADLEY and SUSAN

NOTICE OF REMOVAL OF CIVIL
ACTION UNDER 28 U.S.C. § 1441

BRADLEY, his wife; KERRY GOODE and TANJA GOODE, his wife; RAYMOND CLAYBORN and KIMBERLEY CLAYBORN, his wife: STEVEN ZABEL and SUSAN ZABEL, his wife,

        Plaintiffs,

v.

NATIONAL FOOTBALL LEAGUE; NFL PROPERTIES LLC; RIDDELL, INC. d/b/a RIDDELL SPORTS GROUP, INC.; ALL AMERICAN SPORTS CORPORATION, d/b/a RIDDELL/ALL AMERICAN; RIDDELL SPORTS GROUP, INC.; EASTON-BELL SPORTS, INC.; EASTON-BELL SPORTS, LLC; EB SPORTS CORP.; and RBG HOLDINGS CORP., and John Does 1 through 100 inclusive

        Defendants.

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:

      PLEASE TAKE NOTICE that, for the reasons set forth below, Defendants National Football League ("NFL") and NFL Properties LLC ("NFL Properties"), collectively the "NFL Defendants," by their undersigned attorneys, file this Notice of Removal to remove the claims against them in this action from the Superior Court of the State of California, Los Angeles County, to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1367, 1441 and 1446. Removal is made pursuant to 28 U.S.C. § 1331 on the basis of federal question jurisdiction. The grounds for removal are as follows:

## I.    **INTRODUCTION AND BACKGROUND**

      1.    On September 9 and 12, 2011, NFL Properties and the NFL, respectively, were served by plaintiffs, former NFL players and certain of their wives, with a Summons and Complaint (the "Complaint") filed in the Superior Court of the State of California, Los Angeles County, No. BC 465842. Copies of these papers and other documents filed in the action are annexed as **Exhibit A**. On

September 9 and 12, 2011, NFL Properties and the NFL, respectively, were also served with a Summons and Complaint filed in the Superior Court of the State of California, Los Angeles County, in *Pear, et al.* v. *National Football League, et al.*, No. LC094453. On October 4, 2011, the NFL Defendants were served with a Summons and First Amended Complaint filed in the Superior Court of the State of California, Los Angeles County, in *Barnes, et al.* v. *National Football League, et al.*, No. BC468483. The *Pear* and *Barnes* actions have been designated as related to this action pursuant to Cal. Rules of Court, rule 3.300, and the NFL Defendants are filing notices of removal in each of the three actions.

2. The Complaint alleges, among other things, that the NFL failed to "warn and protect NFL players . . . against the long-term brain injury risks associated with football-related concussions," failed to "enact league-wide guidelines and mandatory rules regulating post-concussion medical treatment and return-to-play standards for players who suffer a concussion," and fraudulently misrepresented "that there was no link between concussions and later life cognitive/brain injury." (Compl. ¶¶ 114-15, 556.) The Complaint further alleges that NFL Properties "breached its duty to ensure that the equipment it licensed and approved were of the highest possible quality and sufficient to protect NFL players." (Compl. ¶ 563.) The Complaint alleges causes of action for negligence, "negligence-monopolist," fraud, and loss of consortium against the NFL, and negligence and loss of consortium against NFL Properties. (Compl. ¶¶ 524-66, 587-89.) The Complaint also alleges causes of action for strict liability for manufacturing and design defects, failure to warn, negligence, and loss of consortium against Riddell, Inc. d/b/a Riddell Sports Group, Inc.; All American Sports Corp. d/b/a Riddell/All American; Riddell Sports Group, Inc.; Easton-Bell Sports, Inc.; Easton-Bell Sports, LLC; EB Sports Corp.; and RBG Holdings Corp. (collectively, the "Riddell Defendants"). (Compl. ¶¶ 567-89.) Plaintiffs seek recovery of compensatory and general damages, special and incidental damages,

1  punitive damages, and costs. (Compl. p. 81.)

2        3.    The relationship between the NFL Defendants and NFL players

3  who played in the NFL from 1968 through 2010 is governed by various collective

4  bargaining agreements ("CBAs") that were executed and operative during those

5  periods.[1]  The CBAs are the product of exhaustive arm's-length negotiations

6  between the NFL Management Council (the exclusive bargaining representative of

7  the NFL) and the NFL Players Association (the exclusive bargaining representative

8  of NFL players), and "represent[] the complete understanding of the parties on all

9  subjects covered [t]herein." (CBA Art. II § 1 (1977-87; 1993-2010).) The CBAs

10  include, among other terms, provisions relating to player medical care and safety,

11  equipment and dispute resolution.

12  ## II.   **GROUNDS FOR REMOVAL**

13        4.    This Court has original jurisdiction of this action under 28

14  U.S.C. § 1331 because the action is one that is founded on a claim or right "arising

15  under the Constitution, laws, or treaties of the United States."  A defendant may

16  remove an action to federal court under 28 U.S.C. § 1441 if the complaint presents

17  a federal question, such as a federal claim. *See Avco Corp.* v. *Aero Lodge No. 735,*

18  390 U.S. 557, 560, 88 S. Ct. 1235, 1237, 20 L. Ed. 2d 126 (1968).

19        5.    Federal question jurisdiction exists in this case based on

20  complete preemption under section 301 of the Labor Management Relations Act

---

21  [1] During certain periods of time, following the expiration of a CBA, but before the
22  effective date of the following CBA (*e.g.*, 1987-1993), no CBA was operative.
    During these periods, however, certain provisions of the expired CBAs, including
23  the arbitration provisions, remained in effect.  *See Hayes* v. *Nat'l Football*
24  *League*, 469 F. Supp. 252, 254 (C.D. Cal. 1979) ("[E]xpiration of the [CBA]
    between the [NFL and NFLPA] . . . does not excuse an otherwise existing
25  requirement to exhaust the [CBA's] grievance procedures."); *Sherwin* v.
26  *Indianapolis Colts, Inc.*, 752 F. Supp. 1172, 1174-75 & n.2 (N.D.N.Y. 1990)
    ("[T]he [expired] 1982 CBA continues to govern the relationship of the parties at
27  least with respect to arbitration since the parties have continued to honor and
28  utilize the arbitration provisions of the 1982 CBA.").

("LMRA") of all claims by plaintiffs who played in the NFL from 1968 to 2010 under operative CBAs.[2] *See Young* v. *Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 998 (9th Cir. 1987) ("[I]f federal law completely preempts a state law claim and supplants it with a federal claim, the state law claim may be removed to federal court.").

6.    The claims in the Complaint brought by plaintiffs who played prior to 1968 and during any interim periods between CBAs "form part of the same case or controversy." 28 U.S.C. § 1367. This Court thus has supplemental jurisdiction over all claims and parties. *See Bobadilla-German* v. *Bear Creek Orchards, Inc.*, 641 F.3d 391, 394 (9th Cir. 2011) (holding that district court "had jurisdiction over [plaintiffs'] state-law claims under 28 U.S.C. § 1367"); *Garcia* v. *Am. Red Cross*, No. CV-92 2513, 1992 WL 470325, at *1 (C.D. Cal. Aug. 12, 1992) (denying plaintiffs' motion for remand based on lack of jurisdiction over a pendent party co-defendant).

7.    The Central District of California is the federal district in which the Superior Court of the State of California, County of Los Angeles—where plaintiffs filed their Complaint—is located.

8.    This Notice of Removal is timely under 28 U.S.C. § 1446(b), which states that "notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."

9.    Written notice of the filing of this Notice of Removal will be

---

[2] The CBAs were signed by the NFL Management Council, an entity created by the NFL for the purpose of collective bargaining. The NFL is bound by the CBAs' terms and may invoke section 301 preemption because plaintiffs' claims arise under the CBA and require the Court to interpret numerous CBA provisions. *See Atwater* v. *Nat'l Football League*, 626 F.3d 1170, 1178-79 (11th Cir. 2010); *Stringer* v. *Nat'l Football League*, 474 F. Supp. 2d 894, 901-92 (S.D. Ohio 2007).

provided to plaintiffs, and a copy of this Notice will be filed in the appropriate state court, as required by 28 U.S.C. § 1446(d).  This Notice of Removal is signed pursuant to Fed. R. Civ. Proc. 11.  *See* 28 U.S.C. § 1446(a).

10.     Counsel for the Riddell Defendants has consented to the removal of the action.  All defendants thus have consented to removal of the action.  *See Parrino* v. *FHP, Inc.*, 146 F.3d 699, 703 (9th Cir. 1998) ("All defendants must join a notice of removal.").

## III.   PLAINTIFFS' CLAIMS ARE PREEMPTED UNDER SECTION 301 OF THE LMRA

11.     Section 301 of the LMRA provides that the federal courts have original jurisdiction over all "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a).  The Supreme Court has held that "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Allis-Chalmers Corp.* v. *Lueck*, 471 U.S. 202, 211, 105 S. Ct. 1904, 1911, 85 L. Ed. 2d 206 (1985); *see also Hubbard* v. *United Airlines, Inc.*, 927 F.2d 1094, 1098-99 (9th Cir. 1991) (holding that plaintiff's fraud and RICO claims were preempted because allegations "involve[d] violation of a right created by the CBA").  Thus, section 301 preempts tort claims seeking to vindicate "state-law rights and obligations that do not exist independently of [collective bargaining] agreements" and also claims "substantially dependent upon analysis of the terms of [a collective-bargaining] agreement." *Allis-Chalmers*, 471 U.S. at 213, 220; *Young*, 830 F.2d at 1001 (holding that plaintiff's fraud and misrepresentation claims were preempted by section 301).

12.     Here, the claims of plaintiffs who played in the NFL from 1968 to 2010 when CBAs were effective are preempted by section 301 because the

rights those plaintiffs seek to vindicate were created by the CBAs, and are not based on an independent duty "owed to every person in society." *See United Steelworkers of Am.* v. *Rawson*, 495 U.S. 362, 370-71, 110 S. Ct. 1904, 1910, 109 L. Ed. 2d 362 (1990) (holding in the context of a labor dispute involving unionized employees that, absent an independent duty running from defendants "to every person in society," any such duty to plaintiffs must arise out of the CBA); *see also Adkins* v. *Mireles*, 526 F.3d 531, 540-41 (9th Cir. 2008) (holding that plaintiffs' negligent misrepresentation claim was preempted because plaintiffs "failed to show a separate, independent duty upon which to base this claim").

13. Plaintiffs' claims also are preempted because those claims, and the scope of any duty owed by the NFL Defendants, are "inextricably intertwined with consideration of the terms of [the CBAs]" or "substantially dependent" on an analysis of the relevant provisions of the CBAs. *Allis-Chalmers*, 471 U.S. at 213, 215, 220; *see also Bale* v. *Gen. Tel. Co. of Ca.*, 795 F.2d 775, 780 (9th Cir. 1986) (holding that plaintiffs' fraud and negligent misrepresentation claims were preempted because their "adjudication . . . would require reference to, and interpretation of, the terms of the collective bargaining agreement"); *Stringer* v. *Nat'l Football League*, 474 F. Supp. 2d 894, 909-10 (S.D. Ohio 2007) (wrongful death claim against the NFL based on, among other things, the NFL's alleged failure to regulate adequately practices, games, equipment, and medical care to minimize the risk of heat-related illness, was preempted because the claim was "inextricably intertwined and substantially dependent upon an analysis of certain CBA provisions imposing duties on the clubs with respect to medical care and treatment of NFL players").

14. For example, adjudicating plaintiffs' claims will hinge on provisions of the CBAs relating to player medical care, rule-making, and equipment safety. *See, e.g.*, NFL CBA Art. XXXI § 1 (1982), Art. XLIV § 1 (1993) (requiring physician on staff of Member Clubs to inform a player in writing

if he has a physical condition that "could be significantly aggravated by continued performance"); NFL CBA Art. XXXI § 2 (1982-87), Art. XLIV § 2 (1993-2010) ("[F]ull-time head trainers and assistant trainers . . . [must] be certified by the National Athletic Trainers association."); Constitution and By-Laws for Major Professional Football Operations as Conducted by the National Football League and the American Football League, Art. XIX, § 19.5 (1969), and NFL Constitution and Bylaws Art. XIX § 19.5 (1970-2010) (requiring that the home team provide a doctor and ambulance for each game since the AFL-NFL merger);[3] NFL Constitution and Bylaws Art. XVII supplement 12 (1980), Art. XVII (1984-85), Art. XVII § 17.16(E) (1988-2010) ("All determinations of recovery time for major and minor injuries must be by the club's medical staff and in accordance with the club's medical standards" for players categorized as "Reserve/Injured" on the Reserve List); NFL CBA Art. V §§ 1-4 (1970-77), Art. XI § 8 (1977-87), Art. XIII § 1(a) (1993-2010) (creating a Joint Committee to study, among other things, player safety issues); NFL CBA Art. XI § 8 (1977-82), Art. XIII § 1(d) (2002-10), Art. XI § 8 (1982-87), Art. XIII § 1(b)-(c) (1993-2010) (mandating procedures for review, investigation and resolution of disputes involving proposed rule changes that "could adversely affect player safety"); Art. XI § 9 (1977-87), Art. XIII § 2 (1993-2010) (inviting player representatives to the Competition Committee meetings "to represent the players' viewpoint on rules").   Indeed, a court considering allegations similar to those alleged here determined that plaintiff's claim was substantially dependent on, and inextricably intertwined with, an analysis of CBA provisions concerning medical care and treatment of NFL players. *See Stringer*, 474 F. Supp. 2d at 911.

15. Although plaintiffs allege that they are not covered by CBAs

---

[3] The Constitution and Bylaws are incorporated by reference in the CBA.  *See Hill* v. *Potter*, No. 06-7051, 2010 WL 4450405, at *4 (C.D. Cal. Oct. 29, 2010) (documents referenced in CBA are incorporated into the CBA).

- 9 -

because "NFL retired players have never been the subject of or a party to Collective Bargaining" (Compl. ¶ 96), plaintiffs' claims are premised solely on alleged conduct occurring at the time that they played NFL football. (*See, e.g.*, Compl. ¶ 110(a) ("[The NFL] owed a duty to protect Plaintiffs on the playing field"); Compl. ¶ 110(d) ("[The NFL] owed a duty to Plaintiffs to have in place strict return-to-play guidelines to prevent CTE and/or concussion injury").) Therefore, to resolve plaintiffs' claims, the Court will need to interpret provisions of the CBAs that were operative during plaintiffs' NFL careers. *See Mendes* v. *W.M. Lyles Co.*, No. CIV F 07-1265, 2008 WL 171003, at *10 (E.D. Cal. Jan. 18, 2008) (dismissing plaintiff's underpayment claims for failure to exhaust grievance remedies contained in an expired collective bargaining agreement that was operative during the time the alleged underpayment took place); *Cameron* v. *Idearc Media Corp.*, No. 08-12010, 2009 WL 2496439, at *6 (D. Mass. Aug. 13, 2009) (finding section 301 preemption of tortious interference claim brought after expiration of CBA when claim related to termination of employment prior to expiration).

16.     In filing this Notice of Removal, the NFL Defendants do not waive any defenses that may be available to them, including without limitation jurisdiction, venue, standing, or procedures for the disposition of this action in accordance with the terms of the CBA. Nor do the NFL Defendants admit any of the factual allegations in the Complaint; they expressly reserve the right to contest those allegations at the appropriate time.

WHEREFORE, the NFL Defendants remove the above-captioned action brought against them in the Superior Court of the State of California, Los Angeles County.

DATED: October 11, 2011

MUNGER, TOLLES & OLSON LLP

By: _Ron Olson \jr_____
      RONALD L. OLSON

-and-

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

Attorneys for Defendants
NATIONAL FOOTBALL LEAGUE
and NFL PROPERTIES LLC

NOTICE OF REMOVAL OF CIVIL
ACTION UNDER 28 U.S.C. § 1441

# EXHIBIT A

# Case Summary

Please make a note of the Case Number.

Click here to access document images for this case.
If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page.

**Case Number:** BC465842
VERNON MAXWELL ET AL VS NATIONAL FOOTBALL LEAGUE ET AL

**Filing Date:** 07/19/2011
**Case Type:** Prdct Liablty (not asbes,tox,envir (General Jurisdiction)
**Status:** Pending

---

## Future Hearings

**11/21/2011** at 08:45 am in department 51 at 111 North Hill Street, Los Angeles, CA 90012
Conference-Case Management

---

Documents Filed | Proceeding Information

## Parties

Click on any of the below link(s) to see names that begin with the letter indicated:
A - E    F - H    I - K    L - N    P - R    S - W    Y - Z

ALL AMERICAN SPORTS CORPORATION - Defendant/Respondent

ANDERSON OTTIS - Plaintiff/Petitioner

ANDERSON WANDA - Plaintiff/Petitioner

BESSILLIEU DONALD - Plaintiff/Petitioner

BRADLEY SUSAN - Plaintiff/Petitioner

BRADLEY WILLIAM C. - Plaintiff/Petitioner

BURRIS JEFF - Plaintiff/Petitioner

CALLOWAY CHRISTOPHER - Plaintiff/Petitioner

CARVER SHANTE - Plaintiff/Petitioner

CLAYBORN KIMBERLEY - Plaintiff/Petitioner

CLAYBORN RAYMOND - Plaintiff/Petitioner

Ex A_000012

COLLINS ANTHONY - Plaintiff/Petitioner

COLLINS TRUDY - Plaintiff/Petitioner

COVINGTON ANTHONY - Plaintiff/Petitioner

DEAN W. VERNON - Plaintiff/Petitioner

DOES 1 THROUGH 100 - Defendant/Respondent

DUPER MARK S. - Plaintiff/Petitioner

EASTON-BELL SPORTS INC. - Defendant/Respondent

EASTON-BELL SPORTS LLC - Defendant/Respondent

EB SPORTS CORP. - Defendant/Respondent

Click on any of the below link(s) to see names that begin with the letter indicated:
TOP   A - E   F - H   I - K   L - N   P - R   S - W   Y - Z

FREDRICKSON BARBARA - Plaintiff/Petitioner

FREDRICKSON ROBERT J. - Plaintiff/Petitioner

GALLOWAY DUANE - Plaintiff/Petitioner

GIBSON ANTONIO - Plaintiff/Petitioner

GIBSON BETTY - Plaintiff/Petitioner

GIRARDI THOMAS V. ESQ. - Attorney for Plaintiff/Petitioner

GOEDDEKE GENEVA - Plaintiff/Petitioner

GOEDDEKE GEORGE - Plaintiff/Petitioner

GOODE CHRIS - Plaintiff/Petitioner

GOODE KERRY - Plaintiff/Petitioner

GOODE TANJA - Plaintiff/Petitioner

GRAVES RORY - Plaintiff/Petitioner

HAMPTON ANDETRIA - Plaintiff/Petitioner

HAMPTON RODNEY - Plaintiff/Petitioner

HANCOCK ANTHONY - Plaintiff/Petitioner

Ex A_000013

HANCOCK PAULA - Plaintiff/Petitioner

HARGAIN ANTHONY - Plaintiff/Petitioner

HARRIS JOE - Plaintiff/Petitioner

HARRIS LYDIA - Plaintiff/Petitioner

HAWKINS SHARON - Plaintiff/Petitioner

HAWKINS WAYNE - Plaintiff/Petitioner

HEENAN PATRICK - Plaintiff/Petitioner

HEENAN SHARRON - Plaintiff/Petitioner

HILL LANITA - Plaintiff/Petitioner

HILL LONZELL - Plaintiff/Petitioner

HOOD BONITA - Plaintiff/Petitioner

HOOD JAMES - Plaintiff/Petitioner

HOOKS BRYAN - Plaintiff/Petitioner

Click on any of the below link(s) to see names that begin with the letter indicated:
TOP   A-E   F-H   I-K   L-N   P-R   S-W   Y-Z

INGRAM BRIAN - Plaintiff/Petitioner

INGRAM SARCA - Plaintiff/Petitioner

JACKSON CAROLYN - Plaintiff/Petitioner

JACKSON HAROLD L. - Plaintiff/Petitioner

JAMES CARMEL - Plaintiff/Petitioner

JAMES ROLAND - Plaintiff/Petitioner

JAMISON ARNELLA - Plaintiff/Petitioner

JAMISON GEORGE - Plaintiff/Petitioner

JENKINS JAVONI - Plaintiff/Petitioner

JENKINS MELVIN - Plaintiff/Petitioner

JOHNSON SHANNON - Plaintiff/Petitioner

Ex A_000014

JOHNSON TODD - Plaintiff/Petitioner

JONES ANTHONY - Plaintiff/Petitioner

JONES BRODERICK - Plaintiff/Petitioner

JONES GARY - Plaintiff/Petitioner

JONES KIRK CAMERON - Plaintiff/Petitioner

JONES TINA - Plaintiff/Petitioner

JONES VALERIE - Plaintiff/Petitioner

KAMINSKI LARRY - Plaintiff/Petitioner

KAMINSKI LINDA - Plaintiff/Petitioner

KIRCHBAUM KELLY - Plaintiff/Petitioner

KOCOUREK DAVID - Plaintiff/Petitioner

KOCOUREK MARY LEE - Plaintiff/Petitioner

KORTE KARELIS - Plaintiff/Petitioner

KORTE STEVE - Plaintiff/Petitioner

Click on any of the below link(s) to see names that begin with the letter indicated:
TOP   A-E   F-H   I-K   L-N   P-R   S-W   Y-Z

LEE EDWARD P. - Plaintiff/Petitioner

LEE SUSAN - Plaintiff/Petitioner

LEWIS BONNIE - Plaintiff/Petitioner

LEWIS DAVID - Plaintiff/Petitioner

LIPPETT RONNIE - Plaintiff/Petitioner

LIPPETT SHERYL - Plaintiff/Petitioner

LUCKASEVIC JASON E. - Attorney for Plaintiff/Petitioner

MANDLEY TERESA - Plaintiff/Petitioner

MANDLEY WILLIAM H. - Plaintiff/Petitioner

MAXWELL VERNON - Plaintiff/Petitioner

Ex A_000015

MCNEILL FRED - Plaintiff/Petitioner

MCNEILL TIA - Plaintiff/Petitioner

MERCIER RICHARD - Plaintiff/Petitioner

MERCIER YADIRA - Plaintiff/Petitioner

MILLER CHARLES E. - Plaintiff/Petitioner

MITCHELL LYVONIA A. - Plaintiff/Petitioner

MOORE ALVIN - Plaintiff/Petitioner

MOORE ODETTA - Plaintiff/Petitioner

NATIONAL FOOTBALL LEAGUE - Defendant/Respondent

NELSON ANGELA - Plaintiff/Petitioner

NELSON STEVE - Plaintiff/Petitioner

NFL PROPERTIES LLC - Defendant/Respondent

Click on any of the below link(s) to see names that begin with the letter indicated:
TOP  A - E  F - H  I - K  L - N  P - R  S - W  Y - Z

PAYTON EDWARD - Plaintiff/Petitioner

PAYTON RICA - Plaintiff/Petitioner

RANDOLPH EVELYN - Plaintiff/Petitioner

RANDOLPH THOMAS C. II - Plaintiff/Petitioner

RBG HOLDINGS CORP. - Defendant/Respondent

REESE MARILYN - Plaintiff/Petitioner

REESE STEVE - Plaintiff/Petitioner

REYNOLDS DERRICK S. - Plaintiff/Petitioner

RICHARDSON MIKE C. - Plaintiff/Petitioner

RIDDELL INC. - Defendant/Respondent

RIDDELL SPORTS GROUP INC. - Defendant/Respondent's DBA

RIDDELL SPORTS GROUP INC. - Defendant/Respondent

Ex A_000016

RIDDELL/ALL AMERICAN - Defendant/Respondent's DBA

ROBBINS JAMES E. - Plaintiff/Petitioner

ROBBINS SHANEETA - Plaintiff/Petitioner

ROGERS REGINALD SR. - Plaintiff/Petitioner

ROMBERG BRETT - Plaintiff/Petitioner

ROMBERG EMILY - Plaintiff/Petitioner

RUSSELL LEONARD - Plaintiff/Petitioner

RUSSELL TASHA - Plaintiff/Petitioner

RUSSOMANO & BORRELLO P.A. - Attorney for Plaintiff/Petitioner

Click on any of the below link(s) to see names that begin with the letter indicated:
TOP   A - E   F - H   I - K   L - N   P - R   S - W   Y - Z

SCHNITKER BEVERLEE - Plaintiff/Petitioner

SCHNITKER JAMES MICHAEL - Plaintiff/Petitioner

SMITH GAIL - Plaintiff/Petitioner

SMITH PHILIP - Plaintiff/Petitioner

TILLMAN KATHY - Plaintiff/Petitioner

TILLMAN LEWIS D. - Plaintiff/Petitioner

VISGER GEORGE - Plaintiff/Petitioner

VISGER KRISTIE - Plaintiff/Petitioner

WALKER BRUCE - Plaintiff/Petitioner

WALKER VANISHA - Plaintiff/Petitioner

WEATHERS DENISE - Plaintiff/Petitioner

WEATHERS ROBERT - Plaintiff/Petitioner

WHITE DAVID M. - Plaintiff/Petitioner

WHITE MONICA - Plaintiff/Petitioner

WILLIAMS INGRID - Plaintiff/Petitioner

Ex A_000017

WILLIAMS KENDALL - Plaintiff/Petitioner

WILLIAMS NEWTON - Plaintiff/Petitioner

WILLIS JAMES E. - Plaintiff/Petitioner

WILLIS SHALANE - Plaintiff/Petitioner

WRIGHT TERRY - Plaintiff/Petitioner

WRIGHT TOBY L. - Plaintiff/Petitioner

Click on any of the below link(s) to see names that begin with the letter indicated:
TOP   A - E   F - H   I - K   L - N   P - R   S - W   Y - Z

YOUNG RENARD - Plaintiff/Petitioner

YOUNG VANESSA - Plaintiff/Petitioner

ZABEL STEVEN - Plaintiff/Petitioner

ZABEL SUSAN - Plaintiff/Petitioner

Click on any of the below link(s) to see names that begin with the letter indicated:
TOP   A - E   F - H   I - K   L - N   P - R   S - W   Y - Z

---

Case Information **|** Party Information **|** Proceeding Information

Please make a note of the Case Number.

Click here to access document images for this case.
If this link fails, you may go to the Case Document Images site and search using
the case number displayed on this page.

**Documents Filed** (Filing dates listed in descending order)

**09/27/2011** Proof-Service/Summons
Filed by Attorney for Pltf/Petnr

**08/29/2011** Partial Dismissal (w/o Prejudice) (AS TO PLAINTIFFS BRETT
ROMBERG AND EMILY ROMBERG ONLY )
Filed by Attorney for Pltf/Petnr

**07/26/2011** Notice-Case Management Conference
Filed by Clerk

**07/25/2011** Partial Dismissal (w/o Prejudice) (AS TO PLAINTIFFS OTTIS
ANDERSON AND WANDA ANDERSON HIS WIFE ONLY )
Filed by Attorney for Pltf/Petnr

**07/25/2011** Partial Dismissal (w/o Prejudice) (AS TO PLAINTIFF TINA JONES

Ex A_000018

ONLY )
Filed by Attorney for Pltf/Petnr

**07/19/2011** Complaint

---

Case Information | Party Information | Documents Filed

**Proceedings Held** (Proceeding dates listed in descending order)
None

---

Case Information | Party Information | Documents Filed | Proceeding Information

Ex A_000019

ORIGINAL

7260
90017

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

JUL 19 2011

John A. Clarke, Executive Officer/Clerk
BY _____, Deputy
    Shaunya Wesley

1   GIRARDI | KEESE
2   THOMAS V. GIRARDI, Bar No. 36603
    1126 Wilshire Boulevard
3   Los Angeles, California 90017
    Telephone: (213) 977-0211
4   Facsimile: (213)481-1554

5   RUSSOMANNO & BORRELLO, P.A.
    Herman Russomanno, (Florida Bar No. 240346)
6   Robert Borrello, (Florida Bar No. 764485)
    150 West Flagler Street - PH 2800
7   Miami, FL 33130
    Telephone: (305) 373-2101
8   Facsimile: (305) 373-2103

9   GOLDBERG, PERSKY & WHITE, P.C.
10  Jason E. Luckasevic, (Pennsylvania Bar No. 85557)
    John T. Tierney, III (Pennsylvania Bar No. 00287)
11  1030 Fifth Ave.
    Pittsburgh, PA 15219
12  Telephone: (412) 471-3980
    Facsimile: (412) 471-8308

13

14  *Attorneys for Plaintiffs*

15           SUPERIOR COURT OF THE STATE OF CALIFORNIA

16                    COUNTY OF LOS ANGELES          BY FAX

17                                          B C 4 6 5 8 4 2

18  VERNON MAXWELL; BRODERICK          )   CASE NO.
    JONES; KENDALL WILLIAMS and        )
19  INGRID WILLIAMS, his wife; MIKE C. )   **PLAINTIFFS' COMPLAINT FOR**
    RICHARDSON; RENARD YOUNG and       )   **DAMAGES AND DEMAND FOR JURY**
20  VANESSA YOUNG, his wife; LONZELL   )   **TRIAL**
    HILL and LANITA HILL, his wife;    )
21  GEORGE VISGER and KRISTIE          )
22  VISGER, his wife; TERRY WRIGHT;    )   1. Negligence – Monopolist
    NEWTON WILLIAMS; DUANE             )   2. Negligence
23  GALLOWAY; GEORGE JAMISON and       )   3. Fraud
    ARNELLA JAMISON, his wife; BRYAN   )   4. Negligence
24  HOOKS; FRED MCNEILL and TIA        )   5. Strict Liability – Design Defect
25  MCNEILL, his wife; REGINALD        )   6. Strict Liability – Manufacturing Defect
    ROGERS, SR.; MELVIN JENKINS and    )   7. Failure to Warn
26  JAVONI JENKINS, his wife; ANTONIO  )   8. Negligence
    GIBSON and BETTY GIBSON, his wife; )   9. Loss of Consortium
27  ALVIN MOORE and ODETTA MOORE,      )
28

                            -1-

                    COMPLAINT FOR DAMAGES

Ex A_000020

| | |
|---|---|
| 1 | his wife; LYVONIA A. MITCHELL; KIRK) |
| | CAMERON JONES; JAMES E. ROBBINS ) |
| 2 | and SHANEETA ROBBINS, his wife; ) |
| 3 | ROBERT J. FREDRICKSON and ) |
| | BARBARA FREDRICKSON, his wife; ) |
| 4 | CHARLES E. MILLER; EDWARD P. LEE) |
| | and SUSAN LEE, his wife; PATRICK ) |
| 5 | HEENAN and SHARRON HEENAN, his ) |
| | wife; TOBY L. WRIGHT; KELLY ) |
| 6 | KIRCHBAUM; ) |
| 7 | JAMES HOOD and BONITA HOOD, his ) |
| | wife; RICHARD MERCIER and YADIRA ) |
| 8 | MERCIER, his wife; ) |
| | BRETT ROMBERG and EMILY ) |
| 9 | ROMBERG, his wife; STEVE KORTE and ) |
| 10 | KARELIS KORTE, his wife; JOE HARRIS ) |
| | and LYDIA HARRIS, his wife; RODNEY ) |
| 11 | HAMPTON and ANDETRIA HAMPTON, ) |
| 12 | his wife; LEWIS D. TILLMAN and ) |
| | KATHY TILLMAN, his wife; LARRY ) |
| 13 | KAMINSKI and LINDA KAMINSKI, his ) |
| | wife; DAVID KOCOUREK and MARY ) |
| 14 | LEE KOCOUREK, his wife; ROBERT ) |
| 15 | WEATHERS and DENISE WEATHERS, ) |
| | his wife; WAYNE HAWKINS and ) |
| 16 | SHARON HAWKINS, his wife; ) |
| 17 | ANTHONY HARGAIN; EDWARD ) |
| | PAYTON and RICA PAYTON, his wife; ) |
| 18 | WILLIAM H. MANDLEY and TERESA ) |
| | MANDLEY, his wife; SHANTE CARVER;) |
| 19 | GEORGE GOEDDEKE and GENEVA ) |
| | GOEDDEKE, his wife; JAMES MICHAEL ) |
| 20 | SCHNITKER and BEVERLEE ) |
| 21 | SCHNITKER, his wife; CHRISTOPHER ) |
| | CALLOWAY; ) |
| 22 | THOMAS C. RANDOLPH, II and ) |
| | EVELYN RANDOLPH, his wife; GARY ) |
| 23 | JONES and TINA JONES, his wife; OTTIS ) |
| | ANDERSON and WANDA ANDERSON, ) |
| 24 | his wife; LEONARD RUSSELL and ) |
| 25 | TASHA RUSSELL, his wife; RORY ) |
| | GRAVES; DAVID M. WHITE and ) |
| 26 | MONICA WHITE, his wife; PHILIP ) |
| 27 | SMITH and GAIL SMITH; W. VERNON ) |
| | DEAN; ANTHONY COVINGTON; ) |
| 28 | ANTHONY JONES and VALERIE ) |

-2-

COMPLAINT FOR DAMAGES

Ex A_000021

| | |
|---|---|
| 1 | JONES, his wife; STEVE REESE and |
| 2 | MARILYN REESE, his wife; DONALD |
| | BESSILLIEU; HAROLD L. JACKSON |
| 3 | and CAROLYN JACKSON, his wife; |
| | TODD JOHNSON and SHANNON |
| 4 | JOHNSON, his wife; CHRIS GOODE; |
| 5 | BRUCE WALKER and VANISHA |
| | WALKER, his wife; DERRICK S. |
| 6 | REYNOLDS; DAVID LEWIS and |
| | BONNIE LEWIS, his wife; RONNIE |
| 7 | LIPPETT and SHERYL LIPPETT, his |
| 8 | wife; ROLAND JAMES and CARMEL |
| | JAMES, his wife; MARK S. DUPER; |
| 9 | BRIAN INGRAM and SARCA INGRAM, |
| | his wife; ANTHONY COLLINS and |
| 10 | TRUDY COLLINS, his wife; STEVE |
| 11 | NELSON and ANGELA NELSON, his |
| | wife; JAMES E. WILLIS and SHALANE |
| 12 | WILLIS, his wife; ANTHONY HANCOCK |
| | and PAULA HANCOCK, his wife; JEFF |
| 13 | BURRIS; WILLIAM C. BRADLEY and |
| | SUSAN BRADLEY, his wife; KERRY |
| 14 | GOODE and TANJA GOODE, his wife; |
| 15 | RAYMOND CLAYBORN and |
| | KIMBERLEY CLAYBORN, his wife; |
| 16 | STEVEN ZABEL and SUSAN ZABEL, his |
| 17 | wife, |
| 18 |                  Plaintiffs, |
| 19 | vs. |
| 20 | NATIONAL FOOTBALL LEAGUE; NFL |
| | PROPERTIES LLC; RIDDELL, INC. d/b/a |
| 21 | RIDDELL SPORTS GROUP, INC., ALL |
| 22 | AMERICAN SPORTS CORPORATION, |
| | d/b/a RIDDELL/ALL AMERICAN; |
| 23 | RIDDELL SPORTS GROUP, INC, |
| | EASTON-BELL SPORTS, INC.; |
| 24 | EASTON-BELL SPORTS, LLC; EB |
| | SPORTS CORP.; and RBG HOLDINGS |
| 25 | CORP.; and JOHN DOES 1 through 100, |
| 26 | Inclusive, |
| 27 |                  Defendants. |
| 28 | |

-3-

COMPLAINT FOR DAMAGES

Ex A_000022

The Plaintiffs, all individuals, hereby complains of Defendants listed above and hereby alleges as follows:

## PARTIES

### Plaintiffs:

1. Mr. Vernon Maxwell is a resident of and domiciled in the State of Arizona.

2. Mr. Broderick Jones is a resident of and domiciled in the State of Alabama.

3. Mr. Kendall Williams and his wife, Ingrid, are residents of and domiciled in the State of Nevada.

4. Mr. Mike C. Richardson is a resident of and domiciled in the State of California.

5. Mr. Renard Young and his wife, Vanessa, are residents of and domiciled in the State of California.

6. Mr. LonZell Hill and his wife, Lanita, are residents of and domiciled in the State of Ohio.

7. Mr. George Visger and his wife, Kritsie, are residents of and domiciled in the State of California.

8. Mr. Terry Wright is a resident of and domiciled in the State of Arizona.

9. Mr. Newton Williams is a resident of and domiciled in the State of North Carolina.

10. Mr. Duane Galloway is a resident of and domiciled in the State of California.

11. Mr. George Jamison and his wife, Arnella, are residents of and domiciled in the State of Michigan.

12. Mr. Bryan Hooks is a resident of and domiciled in the State of Arizona.

13. Mr. Fred McNeill and his wife, Tia, are residents of and domiciled in the State of California.

14. Mr. Reginald Rogers, Sr. is a resident of and domiciled in the State of Washington.

15. Mr. Melvin Jenkins and his wife, Javoni, are residents of and domiciled in the State of Arizona.

-4-

COMPLAINT FOR DAMAGES

Ex A_000023

16. Mr. Antonio Gibson and his wife, Betty, are residents of and domiciled in the State of Texas.

17. Mr. Alvin Moore and his wife, Odetta, are residents of and domiciled in the State of Arizona.

18. Mr. Lyvonia A. Mitchell is a resident of and domiciled in the State of Louisiana.

19. Mr. Kirk Cameron Jones is a resident of and domiciled in the State of Florida.

20. Mr. James E. Robbins and his wife, Shaneeta, are residents of and domiciled in the State of Arizona.

21. Mr. Robert J. Fredrickson and his wife, Barbara, are residents of and domiciled in the State of Arizona.

22. Mr. Charles E. Miller is a resident of and domiciled in the State of California.

23. Mr. Edward P. Lee and his wife, Susan, are residents of and domiciled in the State of Maryland.

24. Mr. Patrick Heenan and his wife, Sharron, are residents of and domiciled in the State of Tennessee.

25. Mr. Toby L. Wright is a resident of and domiciled in the State of Arizona.

26. Mr. Kelly Kirchbaum is a resident of and domiciled in the State of Kentucky.

27. Mr. James Hood and his wife, Bonita, are residents of and domiciled in the State of California.

28. Mr. Richard Mercier and his wife, Yadira, are residents of and domiciled in the State of Florida.

29. Mr. Brett Romberg and his wife, Emily, are residents of and domiciled in the State of Florida.

30. Mr. Steve Korte and his wife, Karelis, are residents of and domiciled in the State of Louisiana.

31. Mr. Joe Harris and his wife, Lydia, are residents of and domiciled in the State of Georgia.

-5-

COMPLAINT FOR DAMAGES

Ex A_000024

32. Mr. Rodney Hampton and his wife, Andetria, are residents of and domiciled in the State of Texas.

33. Mr. Lewis D. Tillman and his wife, Kathy, are residents of and domiciled in the State of Mississippi.

34. Mr. Larry Kaminski and his wife, Linda, are residents of and domiciled in the State of Washington.

35. Mr. David Kocourek and his wife, Mary Lee, are residents of and domiciled in the State of Florida.

36. Mr. Robert Weathers and his wife, Denise, are residents of and domiciled in the State of Florida.

37. Mr. Wayne Hawkins and his wife, Sharon, are residents of and domiciled in the State of California.

38. Mr. Anthony Hargain is a resident of and domiciled in the State of California.

39. Mr. Edward Payton and his wife, Rica, are residents of and domiciled in the State of Mississippi.

40. Mr. William H. Mandley and his wife, Teresa, are residents of and domiciled in the State of Arizona.

41. Mr. Shante Carver is a resident of and domiciled in the State of Arizona.

42. Mr. George Goeddeke and his wife, Geneva, are residents of and domiciled in the State of Michigan.

43. Mr. James Michael Schnitker and his wife, Beverlee, are residents of and domiciled in the State of Colorado.

44. Mr. Christopher Calloway is a resident of and domiciled in the State of Georgia.

45. Mr. Thomas C Randolph, II and his wife, Evelyn, are residents of and domiciled in the State of Virginia.

46. Mr. Gary Jones and his wife, Tina, are residents of and domiciled in the State of Texas.

-6-

COMPLAINT FOR DAMAGES

47.  Mr. Ottis Anderson and his wife, Wanda, are residents of and domiciled in the State of New Jersey.

48.  Mr. Leonard Russell and his wife, Tasha, are residents of and domiciled in the State of California.

49.  Mr. Rory Graves is a resident of and domiciled in the State of Georgia.

50.  Mr. David M. White and his wife, Monica, are residents of and domiciled in the State of New York.

51.  Mr. Philip Smith and his wife, Gail, are residents of and domiciled in the State of California.

52.  Mr. W. Vernon Dean is a resident of and domiciled in the State of Texas.

53.  Mr. Anthony Covington is a resident of and domiciled in the State of Pennsylvania.

54.  Mr. Anthony Jones and his wife, Valerie, are residents of and domiciled in the State of Alabama.

55.  Mr. Steve Reese and his wife, Marilyn, are residents of and domiciled in the State of Georgia.

56.  Mr. Donald Bessillieu is a resident of and domiciled in the State of Georgia.

57.  Mr. Harold L. Jackson and his wife, Carolyn, are residents of and domiciled in the State of California.

58.  Mr. Todd Johnson and his wife, Shannon, are residents of and domiciled in the State of Florida.

59.  Mr. Chris Goode is a resident of and domiciled in the State of Alabama.

60.  Mr. Bruce Walker and his wife, Vanisha, are residents of and domiciled in the State of California.

61.  Mr. Derrick S. Reynolds is a resident of and domiciled in the State of Florida.

62.  Mr. David Lewis and his wife, Bonnie, are residents of and domiciled in the State of Florida.

-7-

COMPLAINT FOR DAMAGES

63.    Mr. Ronnie Lippett and his wife, Sheryl, are residents of and domiciled in the State of Massachusetts.

64.    Mr. Roland James and his wife, Carmel, are residents of and domiciled in the State of Massachusetts.

65.    Mr. Mark S. Duper is a resident of and domiciled in the State of Florida.

66.    Mr. Brian Ingram and his wife, Sarca, are residents of and domiciled in the State of Georgia.

67.    Mr. Anthony Collins and his wife, Trudy, are residents of and domiciled in the State of North Carolina.

68.    Mr. Steve Nelson and his wife, Angela, are residents of and domiciled in the State of Massachusetts.

69.    Mr. James E. Willis and his wife, Shalane, are residents of and domiciled in the State of Alabama.

70.    Mr. Anthony Hancock and his wife, Paula, are residents of and domiciled in the State of Tennessee.

71.    Mr. Jeff Burris is a resident of and domiciled in the State of Indiana.

72.    Mr. William C. Bradley and his wife, Susan, are residents of and domiciled in the State of Texas.

73.    Mr. Kerry Goode and his wife, Tanja, are residents of and domiciled in the State of Georgia.

74.    Mr. Raymond Clayborn and his wife, Kimberley, are residents of and domiciled in the State of Georgia.

75.    Mr. Steven Zabel and his wife, Susan, are residents of and domiciled in the State of Georgia.

**Defendants:**

-8-

COMPLAINT FOR DAMAGES

76.     Defendant National Football League ("the NFL") is an unincorporated association with its headquarters located in the State of New York.  The NFL regularly conducts business in California.

77.     Defendant NFL Properties, LLC as the successor-in-interest to National Football League Properties Inc. ("NFL Properties") is a limited liability company organized and existing under the laws of the State of Delaware with its headquarters in the State of New York.  NFL Properties is engaged, among other activities, approving licensing and promoting equipment used by all the NFL teams.  NFL Properties regularly conducts business in California.

78.     Defendant Riddell, Inc. (d/b/a Riddell Sports Group, Inc.) is a corporation organized and existing under the laws of the State of Illinois, and is engaged in the business of designing, manufacturing, selling and distributing football equipment, including helmets, to the NFL and since 1989 has been the official helmet of the NFL.  Riddell, Inc. regularly conducts business in California.

79.     Defendant All American Sports Corporation, d/b/a Riddell/All American, is a corporation organized and existing under the laws of the State of Delaware and is engaged in the business of designing, manufacturing, selling and distributing football equipment, including helmets, to the NFL and since 1989 has been the official helmet of the NFL.  All American Sports regularly conducts business in California.

80.     Defendant Riddell Sports Group, Inc. is a Delaware corporation with its principal place of business at 6255 N. State Highway, #300, Irving, Texas 76038.  Riddell Sports Group, Inc. regularly conducts business in California.

81.     Defendant Easton-Bell Sports, Inc. is a California corporation, incorporated in Delaware with a principal place of business at 7855 Haskell Avenue, Suite 200, Van Nuys, California 91406 and is a parent corporation of Riddell Sports Group Inc.

82.     Defendant Easton-Bell Sports, LLC is the parent corporation of Easton-Bell Sports, Inc. and is incorporated in Delaware, with a principal place of business at 152 West 57th Street, New York, New York 10019.  Easton-Bell Sports, LLC regularly conducts business in California.

-9-

COMPLAINT FOR DAMAGES

83. Defendant EB Sports Corp. is a Delaware corporation with its principal place of business at 7855 Haskell Avenue, Van Nuys, California 91406.

84. Defendant RBG Holdings Corp. is a Delaware corporation with its principal place of business at 7855 Haskell Avenue, Suite 350, Van Nuys, California 91406.

85. Defendants Riddell, Inc., Riddell Sports Group Inc., All American Sports Corporation, Easton-Bell Sports, Inc., EB Sports Corp., Easton-Bell Sports, LLC, and RBG Holdings Corp., shall hereinafter be referred to collectively as the "Riddell Defendants."

## JURISDICTION AND VENUE

86. Jurisdiction is based upon the California Constitution Article 6, Section 10.

87. Venue is proper in this Court pursuant to Section 395 (A) of the California Code of Civil Procedure.

## INTRODUCTION

88. The National Football League was founded as the American Professional Football Association in 1920.

89. The American Professional Football Association changed its name to the National Football League in 1922. By 1924, there were 23 franchises or teams that devised the NFL.

90. The American Football League operated from 1960 to 1969. In 1970, it merged with the National Football League to create the American Football Conference.

91. Today, the National Football League consists of two structured conferences, the AFC and the NFC, with 32 team members.

92. Each team functions as a separate business but operates under shared revenue generated through broadcasting, merchandising and licensing.

93. The Supreme Court of the United States of America in *American Needle, Inc. v. NFL, et al.*, 130 S.Ct. 2201 (U.S. 2010), ruled that the NFL is a separate entity from each of its teams.

-10-

COMPLAINT FOR DAMAGES

Ex A_000029

94. The NFL is by far the most attended domestic sports league in the world by average attendance per game with 67,509 fans per game in the regular season (2009).

95. The NFL is a 9 billion dollar-a-year business.

## NFL AND THE CBA

96. Until March of 2011, NFL players were all members of a union called the National Football League Players Association ("NFLPA"). The NFLPA negotiates the general minimum contract for all players in the league with the National Football League Management Council ("NFLMC"). This contract is called the Collective Bargaining Agreement ("CBA") and it is the central document that governs the negotiation of individual player contracts for all of the league's players. However, historically, the NFL retired players have never been the subject of or a party to Collective Bargaining.

97. The CBA had been in place since 1993 and was amended in 1998 and again in 2006. The CBA was originally scheduled to expire at the end of the 2012 season but in 2008 the owners exercised their right to opt-out of the agreement two years earlier. In 2011, the parties in trying to negotiate a new CBA reached an impasse and the NFL owners locked the players out. Subsequently, the NFLPA decertified itself as the players' representative for bargaining.

98. The plaintiffs herein are all retirees and not covered by the CBA nor are they a subject of or parties to bargaining between the NFL and the NFLPA. Thus, the plaintiffs' claims are not preempted by federal labor law since the CBA does not apply to their present claims and, additionally, it does not currently exist.

## CTE AND CONCUSSION INJURY

99. In 2002, Dr. Bennet Omalu, a forensic pathologist and neuropathologist found Chronic Traumatic Encephalopathy (CTE) in the brain of Hall of Famer, Mike Webster.

100. By 2007, Dr. Omalu found a fourth case linking the death of a former NFL player to CTE brain damage from his football career.

-11-

COMPLAINT FOR DAMAGES

Ex A_000030

101.   Dr. Omalu says that the brain damage he found in four ex-players who died is the same condition found in punch-drunk boxers.

102.   Around the same time, researchers without NFL ties surveyed retired football players and their findings showed that players who had multiple concussions were more likely to report being diagnosed with depression.

103.   Dr. Omalu questioned "Where was the NFL when we found this disease?"

104.   The NFL undertook the responsibility of studying concussion research in 1994 through funding a Committee known as the "NFL Committee on Mild Traumatic Brain Injury".

105.   The NFL Committee on Mild Traumatic Brain Injury published their findings in 2004 showing "no evidence of worsening injury or chronic cumulative effects" from multiple concussions. In a related study, this Committee found "many NFL players can be safely allowed to return to play" on the day of a concussion if they are without symptoms and cleared by a physician.

106.   As further evidence, Commissioner Roger Goodell in June of 2007 admitted publicly that the NFL has been studying the effects of traumatic brain injury for "close to 14 years ..."

107.   It was not until June of 2010 that the NFL acknowledged that concussions can lead to dementia, memory loss, CTE and related symptoms by publishing warning to every player and team.

## NFL'S DUTY TO PLAYERS AND THE PUBLIC

108.   The NFL overtly undertook a duty to study concussions on behalf of all American Rules Football leagues and players.

109.   As the industry icon, all American Rules Football leagues modeled their programs after the NFL.

110.   In turn, the NFL possesses monopoly power over American Football. As such, it also possesses monopoly power over the research and education of football injuries to physicians, trainers, coaches and individuals with brain damage such as Plaintiffs who played in the NFL, as well as the public at large. As a result, it owed a duty to everyone including individuals such as Plaintiffs in the following respects:

-12-

COMPLAINT FOR DAMAGES

(a)    It owed a duty to protect Plaintiffs on the playing field;

(b)    It owed a duty to Plaintiffs to educate them and other players in the NFL about CTE and/or concussion injury;

(c)    It owed a duty to Plaintiffs to educate trainers, physicians, and coaches about CTE and/or concussion injury;

(d)    It owed a duty to Plaintiffs to have in place strict return-to-play guidelines to prevent CTE and/or concussion injury;

(e)    It owed a duty to Plaintiffs to promote a "whistleblower" system where teammates would bring to the attention of a trainer, physician or coach that another player had sustained concussion injury;

(f)    It owed a duty to Plaintiffs to design rules and penalties for players who use their head or upper body to hit or tackle;

(g)    It owed a duty to Plaintiffs to design rules to eliminate the risk of concussion during games and/or practices;

(h)    It owed a duty to Plaintiffs to promote research into and cure for CTE and the effects of concussion injury over a period of time; and

(i)    It owed a duty to State governments, local sports organizations, all American Rules Football leagues and players, and the public at large to protect against the long-term effects of CTE and/or concussion injury.

111.    The NFL knew as early as the 1920's of the harmful effects on a player's brain of concussions; however, until June of 2010 they concealed these facts from coaches, trainers, players, and the public.

112.    Plaintiffs did not know the long-term effects of concussions and relied on the NFL and the Riddell Defendants to protect them.

-13-

COMPLAINT FOR DAMAGES

Ex A_000032

## NFL'S KNOWLEDGE OF THE RISK OF CONCUSSIONS

113.   For decades, Defendants have known that multiple blows to the head can lead to long-term brain injury, including memory loss, dementia, depression and CTE and its related symptoms.

114.   This action arises from the Defendants' failure to warn and protect NFL players, such as Plaintiffs against the long-term brain injury risks associated with football-related concussions.

115.   This action arises because the NFL Defendants committed negligence by failing to exercise its duty to enact league-wide guidelines and mandatory rules regulating post-concussion medical treatment and return-to-play standards for players who suffer a concussion and/or multiple concussions.

116.   By failing to exercise its duty to enact reasonable and prudent rules to protect players against the risks associated with repeated brain trauma, the NFL's failure to exercise its independent duty has led to the deaths of some, and brain injuries of many other former players, including Plaintiffs.

117.   The following information, which is by no means comprehensive, was available and easily accessible to Defendants:

(a)    In the 1890's, Admiral Joseph Mason "Bull" Reeves, who is more known as the father of carrier aviation, played American football in the 1890's for the Naval Academy.   He had suffered so many blows to his head that a navy doctor advised him that he could risk death or insanity if he received another kick to his head.

(b)    In 1913, Glenn "Pop" Warner, commented that he had "many times seen cases when hard bumps on the head so dazed the player receiving them that he lost his memory for a time and had to be removed from the game.";

(c)    In 1928, the first case of "Punch Drunk" in boxers was published

-14-

COMPLAINT FOR DAMAGES

Ex A_000033

in the *American Association Journal* by HS Martland;

(d) A 1937 article on "Dementia puglisistica" was published in the *US Navy Medical Bulletin;*

(e) A 1952 article on "Electroencephalographic changes in professional boxers was published in the *American Medical Association Journal;*

(f) A 1952 New England Journal of Medicine Article Vol. 246, pp. 554-556 talked about a three strike rule for concussions in 1945 – three concussions and you should retire from football;

(g) A 1954 article on "Observations on the clinical and brain wave patterns of professional boxers" was published in the *American Medical Association Journal;*

(h) A 1956 article on "Diffuse degeneration of the cerebral white matter in severe dementia following head injury" was published in the *Neurological, Neurosurgery and Psychiatry Journal;*

(i) A 1957 article on the "Medical aspects of boxing, particularly from a neurological standpoint" was published in the *British Medical Journal;*

(j) A 1959 article on the "Observations of the pathology of insidious dementia following head injury" was published in the *Journal of Mental Science;*

(k) A 1966 article on "Concussion amnesia" in *Neurology;*

(l) A 1968 article on "brains of boxers" published in *Neurochirurgia;*

(m) A 1969 report by the Royal College of Physicians of London confirmed the danger of chronic brain damage occurring in boxers as a result of their careers;

(n) A 1969 article on "Organic psychosyndromes due boxing" in the

-15-

COMPLAINT FOR DAMAGES

Ex A_000034

*British Journal of Psychiatry;*

(o)  A 1969 book on "Brain damage in boxers – A study of the prevalence of traumatic encephalopathy among ex-professional boxers" by AH Roberts;

(p)  A 1970 article on "retrograde memory immediately after concussion" published in the *Lancet;*

(q)  In 1973, a disabling and sometimes deadly condition involving the second impact concussion occurring before symptoms of a first concussion was described by R.C. Schneider. This later was coined the Second Impact Syndrome in 1984;

(r)  A 1973 article on "the aftermath of boxing" published in *Psychology Medicine;*

(s)  JA Corsellis, CJ Bruton, D Freeman-Browne, *The Aftermath of Boxing,* 3 Psych. Med. 270-303 (1973);

(t)  A 1974 article on "Cerebral concussion and traumatic unconsciousness, Correlation of experimental and clinical observations of blunt head injuries" published in *Brain;*

(u)  A 1974 article on "Traumatic encephalopathy in a young boxer" published in the *Lancet;*

(v)  A 1974 article on "Delayed recovery after mild head injury" was published in the *Lancet;*

(w)  A 1975 article on "cumulative effect of concussion" was published in the *Lancet;*

(x)  J. A. Corsellis, *Brain Damage in Sport,* 1 LANCET 401, 401 (1976) (finding that the brain tissue of fifteen former boxers who sustained multiple head trauma evidenced neuropathological signs of CTE);

(y)  A 1978 article on "Posttraumatic dementia" published in *Aging;*

-16-

COMPLAINT FOR DAMAGES

Ex A_000035

(z)   J.C. Maroon, P.B. Steele, R. Berlin, *Football Head & Neck Injuries - An Update,* 27 Clin. Nurosurg. 414-29 (1980);

(aa)  A 1981 article on "Association football injuries to the brain: a preliminary report" published in the *British Journal of Sports Medicine;*

(bb)  H Hugenholtz, MT Richard, *Return to Athletic Competition Following Concussion,* 127(9) Can. Med. Assoc. J. 827-29 (1982);

(cc)  RC Cantu, *Guidelines to Return to Contact After Cerebral Concussion,* 14 The Physician and Sports Medicine 75-83 (1986);

(dd)  Daniel N. Kulund, The Injured Athlete 269 (1988). A boxer may be knocked unconscious by the pain of a shot to the eye or neck during a match. See id. Furthermore, a blow to the heart or solar plexus may block the flow of blood and render the fighter unconscious. Any punches to the temporal region may lead to a loss of balance or dizziness;

(ee)  JA Corsellis, *Boxing and the Brain,* 298 BMJ 105-109 (1989);

(ff)  James P. Kelly et al., *Concussion in Sports, Guidelines for the Prevention of Catastrophic Outcome,* 266 JAMA 2868 (1991);

(gg)  B.E. Leininger & J.S. Kreutzer, *Neuropsychological Outcome of Adults with Mild Traumatic Brain Injury: Implications for Clinical Practice and Research, in* REHABILITATION OF POST-CONCUSSIVE DISORDERS (L.J. Horn & N.D. Zasler eds., State of the Art Reviews, Physical Medicine and Rehabilitation, Hanley & Belfus, Inc. 1992);

(hh)  RC Cantu, *Cerebral Concussion in Sports,* 14(1) Sports Med. 64-74 (1992);

(ii)  RC Cantu, FO Mueller, *Catastrophic Football Injuries in the USA,* 2(3) Clin. J. Sports Med. 180-85 (1992); and

(jj)  Mild Traumatic Brain Injury Committee of the Head Injury Interdisciplinary Special Interest Group of the American Congress of Rehabilitation Medicine,

-17-

---

COMPLAINT FOR DAMAGES

*Definition of Mild Traumatic Injury*, 8 J. HEAD TRAUMA REHABIL. 86-87 (1993).

118.   In addition, the NFL's duty to protect the health and safety of its players is further underscored by the irrefutable evidence that the NFL has previously enacted the following non-exhaustive list of rules pertaining to players' health and safety:

(a)   In 1956, the NFL enacted a rule that prohibited the grabbing of any player's facemask, other than the ball carrier;

(b)   In 1962, the NFL enacted a rule that prohibited players from grabbing any player's facemask;

(c)   In 1976, the NFL enacted a rule that prohibited players from grabbing the facemask of an opponent. The penalty for an incidental grasp of the facemask was 5 yards. The penalty for twisting, turning, or pulling the facemask was 15 yards. A player could be ejected from the game if the foul is judged to be vicious and/or flagrant;

(d)   In 1977, the NFL enacted a rule that prohibited players from slapping the head of another player during play. This rule was referred to as the "Deacon Jones Rule", named after the Rams' defensive end who frequently used this technique;

(e)   In 1977, the NFL enacted a rule that prohibited Offensive Linemen from thrusting their hands into a defender's neck, face, or head;

(f)   In 1979, the NFL enacted a rule that prohibited players from using their helmets to butt, spear, or ram an opponent. Pursuant to this rule, any player who used the crown or the top of his helmet unnecessarily will be called for unnecessary roughness;

(g)   In 1980, the NFL enacted rule changes that provided greater restrictions on contact in the area of the head, neck, and face;

(h)   In 1980, the NFL enacted rule changes that prohibited players from directly striking, swinging, or clubbing the head, neck, or face ("personal foul"). Beginning in 1980, a penalty could be called for such contact whether or not the initial contact was made below the neck area;

-18-

COMPLAINT FOR DAMAGES

(i)    In 1982, the NFL enacted a rule change by which the penalty for incidental grabbing of a facemask by a defensive team was changed from 5 yards to an automatic first down plus a 5 yard penalty;

(j)    In 1983, the NFL enacted a rule that prohibited players from using a helmet as a weapon to strike or hit an opponent;

(k)    In 1988, the NFL enacted a rule that prohibited defensive players from hitting quarterbacks below the waist while they are still in the pocket. (The rule was unofficially called the "Andre Waters Rule" based upon a hit that Waters placed on Los Angeles Rams quarterback Jim Everett in 1988); and

(l)    Following the 2004-2005 season, the NFL's Competition Committee reviewed video of the entire season and concluded that the horse-collar tackle resulted in six serious injuries. On May 23, 2005, the NFL owners voted 27-5 to ban the tackle. The ban states that a horse-collar tackle is an open-field tackle in which a defender uses the shoulder pads to immediately bring a ball carrier down.

## NFL FRAUDUENTLY CONCEALED THE LONG-TERM EFFECTS OF CONCUSSIONS

119.   Instead of taking measures to actually protect its players from suffering long-term brain injuries, the NFL created the "Mild Traumatic Brain Injury Committee" in 1994 to purportedly study the effects of concussions on NFL players.

120.   The Mild Traumatic Brain Injury Committee was chaired by Dr. Elliot Pellman, a rheumatologist who is not certified as to brain injuries and/or concussions.

121.   After 14 years of purported studies, and after numerous medical journal articles were written by the NFL's Mild Traumatic Brain Injury Committee (the "NFL's Brain Injury Committee"), concluded that " [b]ecause a significant percentage of players returned to play in the same game [as they suffered a mild traumatic brain injury] and the overwhelming majority of players with concussions were kept out of football-related activities for less than 1 week, it can be concluded that mild TBI's in professional football are not serious injuries." *See* "Concussion in

-19-

COMPLAINT FOR DAMAGES

professional football: Summary of the research conducted by the National Football League's Committee on Mild Traumatic Brain Injury," *Neurosurg Focus* 21 (4):E12, 2006, E.J. Pellman and D.C. Viano.

122.     According to the NFL's own committee, the speedy return to play after suffering a concussion demonstrates that such players were not at a greater risk of suffering long-term brain injury.

123.     The NFL-funded study is completely devoid of logic and science.  More importantly, it is contrary to their Health and Safety Rules as well as 75 years of published medical literature on concussions.

124.     Between 2002 and 2005, a series of clinical and neuropathological studies performed by independent scientists and physicians demonstrated that multiple NFL induced-concussions cause cognitive problems such as depression, early on-set dementia and CTE and its related symptoms.

125.     In response to these studies, the NFL, to further a scheme of fraud and deceit, had members of the NFL's Brain Injury Committee deny knowledge of a link between concussion and cognitive decline and claim that more time was needed to reach a definitive conclusion on the issue.

126.     When the NFL's Brain Injury Committee anticipated studies that would implicate causal links between concussion and cognitive degeneration it promptly published articles producing contrary findings, although false, distorted and deceiving as part of the NFL's scheme to deceive Congress, the players and the public at large.

127.     Between 2002 and 2007, Dr. Bennet Omalu examined the brain tissue of deceased NFL players including Mike Webster, Terry Long, Andrew Waters and Justin Strzelczyk.  Dr. Omalu in an article in *Neurosurgery* concluded that chronic traumatic encephalopathy ("CTE") triggered by multiple NFL concussions represented a partial cause of their deaths.

-20-

COMPLAINT FOR DAMAGES

128.    In response to Dr. Omalu's article, the NFL acting thru the NFL's Brain Injury Committee, Drs. Ira Casson, Elliott Pellman and David Viano wrote a letter to the editor of *Neurosurgery* asking that Dr. Omalu's article be retracted.

129.    In 2005, a clinical study performed by Dr. Kevin Guskiewicz found that retired players who sustained three or more concussions in the NFL had a five-fold prevalence of mild cognitive impairment. The NFL's Brain Injury Committee, Dr. Mark Lowell, promptly attacked the article by refusing to accept a survey of 2,400 former NFL players.

130.    Because of Congressional scrutiny and media pressure, the NFL scheduled a league-wide Concussion Summit for June 2007. Unfortunately, the NFL in keeping with its scheme of fraud and deceit issued a pamphlet to players in August 2007, which stated: "there is no magic number for how many concussions is too many."

131.    When Boston University's Dr. Ann McKee found CTE in the brains of two more deceased NFL players in 2008, Dr. Ira Casson characterized each study as an "isolated incident" from which no conclusion could be drawn.

132.    At the October 2009 Congressional hearings of the House Judiciary Committee, committee member Linda Sanchez (D-CA) analogized the NFL's denial of a causal link between NFL concussion and cognitive decline to the Tobacco industry's denial of the link between cigarette consumption and ill health effects.

133.    Since at least 2002, the NFL Committee has been on direct notice of multiple NFL head injuries contributing to cognitive decline in later life, yet it has never amended the 2007 NFL's Brain Injury Committee statement: "Current research with professional athletes has not shown that having more than one or two concussions leads to permanent problems... It is important to understand that there is no magic number for how many concussions is too many."

134.    As of June 2010, the NFL had yet to amend these inaccurate and misrepresentative statements to any Plaintiff or retiree.

## THE NFL ACKNOWLEDGES THEIR DUTY TO PROTECT AGAINST THE LONG-TERM RISK OF CONCUSSIONS

-21-

COMPLAINT FOR DAMAGES

Ex A_000040

135. On August 14, 2007, the NFL acknowledged its duty to players by enacting rules to protect them against the risks associated with repeated brain trauma.

136. The NFL's 2007 concussion guidelines, many of which stemmed from an NFL conference in June of 2007 involving team trainers and doctors, were sent to all current players and other team personnel.

137. The NFL's 2007 guidelines on concussion management include a whistle-blower provision for individuals to report concussions with the league so that a player with a head injury is not forced to practice or play against medical advice.

138. The NFL's 2007 concussion guidelines also include an informational pamphlet provided to all current NFL players to aid in identifying symptoms of a concussion. This information was later withdrawn by one of the outside counsel of the NFL in a separate letter to its disability plan, as well as the NFL's August 14, 2007 press release denying that "more than one or two concussions leads to permanent problems".

139. In a statement issued by the NFL on August 14, 2007, Roger Goodell, the Commissioner of the NFL, introduced the NFL's 2007 concussion guidelines by saying, "We want to make sure all NFL players, coaches and staff members are fully informed and take advantage of the most up-to-date information and resources as we continue to study the long-term impact of concussions."

140. The NFL's Commissioner also stated, "[b]ecause of the unique and complex nature of the brain, our goal is to continue to have concussions managed conservatively by outstanding medical personnel in a way that clearly emphasizes player safety over competitive concerns."

141. The NFL's 2007 concussion guidelines provide when a player with a concussion can return to a game or practice.

142. The NFL's 2007 concussion guidelines specifically mandate that a player should have no concussion symptoms and normal neurological test results before returning to play.

-22-

COMPLAINT FOR DAMAGES

Ex A_000041

143.   For the past many decades until August 14, 2007, the NFL's duty to protect its players has never changed and has ever waned.  The only change that occurred is that on August 14, 2007, the NFL finally and unequivocally acted upon its longstanding duty to protect its member players by implementing league-wide concussion guidelines.

144.   Importantly, the NFL themselves acknowledged that the 2007 guidelines were inadequate and insufficient.  As a result, the NFL enacted more strict regulations to handle concussions starting in the 2009 season.  Specifically, the NFL announced new rules on managing concussions requiring players who exhibit any significant concussion signs to be removed from a game or practice and be barred from returning the same day.

145.   Nevertheless, it was not until June of 2010 that the NFL warned any player of the long-term risks associated with multiple concussions, including dementia, memory loss, CTE and its related symptoms.  The Riddell Defendants also failed to so warn active players until approximately the same time frame.

146.   As of today, the NFL Defendants and the Riddell Defendants have never warned any Plaintiff or retired player of the long-term health effects of concussions.

## THE DEFENDANTS' CONDUCT RISES BEYOND MERE NEGLIGENCE

147.   The aforementioned acts and omissions of the Defendants demonstrate that the Defendants acted with callous indifference to the rights and duties owed to Plaintiffs, all American Rules Football leagues and players and the public at large.

148.   The Defendants acted willfully, wantonly, egregiously, with reckless abandon, and with a high degree of moral culpability.

## VERNON MAXWELL

149.   Plaintiff Vernon Maxwell was born on October 25, 1961 in Birmingham, Alabama. He lives in Tempe, Arizona.

-23-

COMPLAINT FOR DAMAGES

Ex A_000042

150. Plaintiff Vernon Maxwell was drafted out of Arizona State University as a Linebacker. He played for the Baltimore Colts during the 1983 season and was NFL Defensive Rookie of the Year. During the 1984 season, he played for the Indianapolis Colts. During the 1985-1987 seasons, he played for the Detroit Lions. During the 1989 season, he played for the Seattle Seahawks.

151. Plaintiff Vernon Maxwell suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

152. Plaintiff Vernon Maxwell was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

153. Plaintiff Vernon Maxwell suffers from multiple past traumatic brain injuries with various symptoms including, but not limited to, memory loss and headaches.

### BRODERICK "RICK" JONES

154. Plaintiff Broderick "Rick" Jones was born on March 9, 1955 in Birmingham, Alabama. He lives in Birmingham, Alabama.

155. Plaintiff Broderick "Rick" Jones played Linebacker for the Cleveland Browns from 1977 to 1979 and for the Baltimore Colts from 1980 to 1983.

156. Plaintiff Broderick "Rick" Jones suffered multiple concussions in the NFL that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

157. Plaintiff Broderick "Rick" Jones was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

-24-

COMPLAINT FOR DAMAGES

Ex A_000043

158.   Plaintiff Broderick "Rick" Jones suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including, but not limited to, short-term memory loss.

## KENDALL and INGRID WILLIAMS

159.   Plaintiff Kendall Williams was born on February 7, 1959 in Long Beach, California. He is married to Ingrid Williams, and they live in Las Vegas, Nevada. He has three children.

160.   Plaintiff Kendall Williams graduated from Arizona State University and played Defensive Back in the NFL during the 1982, 1983 and 1984 seasons for the Dallas Cowboys, the San Francisco 49er's, and the Baltimore/Indianapolis Colts. The Plaintiff is aware of an NFL film which showed him being knocked out on the playing field during a game.

161.   Plaintiff Kendall Williams suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

162.   Plaintiff Kendall Williams was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

163.   Plaintiff Kendall Williams suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing the following symptoms including but not limited to headaches, memory loss, difficulty reading, and sleeplessness.

## MIKE C. RICHARDSON

164.   Plaintiff Mike C. Richardson was born on May 23, 1961 in Compton, California. He was a second round draft pick out of Arizona State. He lives in Compton, California.

-25-

COMPLAINT FOR DAMAGES

Ex A_000044

165.   Plaintiff Mike C. Richardson played as a Defensive Back for the Chicago Bears from 1983-1988 and then for the Oakland Raiders and the San Francisco 49er's in the 1989 season.  He won the Super Bowl in 1985 and was a NFL All-Pro in 1986.

166.   Plaintiff Mike C. Richardson suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

167.   Plaintiff Mike C. Richardson was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

168.   Plaintiff Mike C. Richardson suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing the following symptoms including but not limited to depression, memory loss, poor judgment, and a history of substance abuse.

## RENARD and VANESSA YOUNG

169.   Plaintiff Renard Young was born on July 31, 1961 in Los Angeles, California.  He is married to Vanessa Young.  They live in Winnetka, California and have two children.

170.   Plaintiff Renard Young played the 1984 season for the Kansas City Chiefs. Subsequently, he played briefly for the Kansas City Chiefs in the 1985 season and then as Defensive Back for the Seattle Seahawks in the 1987 season.

171.   Plaintiff Renard Young suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

172.   Plaintiff Renard Young was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

-26-

COMPLAINT FOR DAMAGES

Ex A_000045

173.   Plaintiff Renard Young suffers from multiple past traumatic brain injuries affecting multiple areas of the brain and causing the following symptoms including but not limited to headaches and memory loss.

## LONZELL and LANITA HILL

174.   Plaintiff LonZell Hill was born on September 25, 1965 in Stockton, California. He is married to Lanita Hill with two children and stepchildren. They live in Cincinnati, Ohio.

175.   Plaintiff LonZell Hill was drafted out of the University of Washington as a Wide Receiver by the New Orleans Saints. He played for the Saints during the 1987, 1988, 1989 and 1990 seasons. While in the NFL, he had multiple concussions. He received no treatment and was returned to play.

176.   Plaintiff LonZell Hill suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

177.   Plaintiff LonZell Hill was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

178.   Plaintiff LonZell Hill suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including but not limited to severe short-term memory loss.

## GEORGE AND KRISTIE VISGER

179.   Plaintiff George Visger was born on September 26, 1958 in Stockton, California. He is married to Kristie Visger. They live in Grass Valley, California with their two minor children and one step child.

180.   Plaintiff George Visger was drafted out of the University of Colorado by the N.Y. Jets in the 1980 NFL draft as a Defensive Lineman. He was released after pre-season by the N.Y.

-27-

COMPLAINT FOR DAMAGES

Ex A_000046

Jets and signed shortly into the 1980 season by the San Francisco 49er's. He played with the 49ers until an abrupt ending to the season after winning the 1981 Super Bowl.

181. Plaintiff George Visger suffered multiple concussions that were improperly diagnosed and improperly treated during his career as a professional football player in the NFL.

182. Plaintiff George Visger was not warned by the NFL, NFL Properties Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

183. Plaintiff George Visger suffers from various CTE symptoms including but not limited to frontal and temporal lobe damage, multiple past traumatic brain injuries affecting multiple areas of his brain, intermittent explosive disorder, cognitive impairment, poor judgment in regard to finances and relationships, and early on-set dementia.

## TERRY WRIGHT

184. Plaintiff Terry Wright was born on July 17, 1965 in Phoenix, Arizona. He lives in Laven, Arizona.

185. Plaintiff Terry Wright was a graduate of Temple University. He played two seasons for the Indianapolis Colts in 1987 and 1988. Prior to that, he was on the practice squad for the Cleveland Browns from 1986-1987.

186. Plaintiff Terry Wright suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

187. Plaintiff Terry Wright was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

188. Plaintiff Terry Wright suffers from multiple past traumatic brain injuries including but not limited to short-term memory loss.

-28-

COMPLAINT FOR DAMAGES

## NEWTON WILLIAMS

189. Plaintiff Newton Williams was born on May 10, 1959 in Charlotte, North Carolina. He lives in Charlotte, North Carolina.

190. Plaintiff Newton Williams graduated from Arizona State University. He played in the NFL as a Running Back. Plaintiff Newton Williams played for the San Francisco 49er's during the 1982 season; played for the Baltimore Colts during the 1983 season; and then played for the Indianapolis Colts during the 1984 season.

191. Plaintiff Newton Williams suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional player in the NFL.

192. Plaintiff Newton Williams was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

193. Plaintiff Newton Williams has been diagnosed with various traumatic brain injury symptoms including but not limited to headaches and memory loss.

## DUANE GALLOWAY

194. Plaintiff Duane Galloway was born on November 7, 1961 in Los Angeles, California. He lives in Los Angeles, California.

195. Plaintiff Duane Galloway played in the NFL as a Cornerback for the Detroit Lions from 1983 until 1987.

196. Plaintiff Duane Galloway suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

197. Plaintiff Duane Galloway was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the

-29-

COMPLAINT FOR DAMAGES

Ex A_000048

league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

198. Plaintiff Duane Galloway has been diagnosed with various traumatic brain injury symptoms including but not limited to headaches and memory loss.

## GEORGE and ARNELLA JAMISON

199. Plaintiff George Jamison was born on September 30, 1962 in Bridgeton, New Jersey. He is married to Arnella Jamison. They live in Rochester Hills, Michigan and have been married for 16 years. He has two children ages 13 and 14, and one step child who is 25 years old.

200. Plaintiff George Jamison was drafted by the Detroit Lions in 1986. Plaintiff played for the Lions from 1986-1993, from 1994 to 1996 for Kansas City Chiefs, and from 1997 to 1998 for the Detroit Lions. During Plaintiff's entire NFL career, he played as a Linebacker and earned team awards.

201. Plaintiff George Jamison suffered multiple concussive head injuries. His symptoms included light-headedness, seeing stars and losing track of time. Jamison remembers times that he was dazed but continued to play because no one took him out of the games. On one occasion while playing for the Lions, he could not remember anything other than the beginning of a single quarter.

202. Plaintiff George Jamison suffered repeated concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

203. Plaintiff George Jamison was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

204. Plaintiff George Jamison suffers from multiple past traumatic brain injuries affecting multiple areas of his brain which includes but is not limited to the following problems: memory-related problems, blurred vision and constant headaches.

-30-

COMPLAINT FOR DAMAGES

Ex A_000049

## BRYAN HOOKS

205.   Plaintiff Bryan Hooks was born on September 15, 1970 in Tempe, Arizona. He lives in Tempe, Arizona.

206.   Plaintiff Bryan Hooks played for New England during the 1993, 1994 and 1995 seasons and for the Arizona Cardinals during the 1996 and 1997 season. He played Nose Tackle.

206.   Plaintiff Bryan Hooks suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

207.   Plaintiff Bryan Hooks was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

208.   Plaintiff Bryan Hooks suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and includes but is not limited to the following symptoms: distorted vision or blurry vision in the right eye requiring him to wear corrective glasses and memory loss.

## FRED and TIA MCNEILL

209.   Plaintiff Fred McNeill was born on May 6, 1952 in Durham, North Carolina. He is married to Tia McNeill. They live in Los Angeles, California.

210.   Plaintiff Fred McNeill was drafted in the first round out of UCLA. He played Linebacker with the Minnesota Vikings from 1974 to 1985 for twelve seasons and played in two Super Bowls.

211.   Plaintiff Fred McNeill suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

212.   Plaintiff Fred McNeill was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-

-31-

COMPLAINT FOR DAMAGES

Ex A_000050

mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

213. Plaintiff Fred McNeill suffers from multiple past traumatic brain injuries affecting multiple areas of his brain causing Plaintiff to suffer from the early stages of dementia.

## REGINALD ROGERS, SR.

214. Plaintiff Reginald Rogers, Sr. was born on January 21, 1964 in Sacramento, California. He lives in Seattle, Washington. He is engaged to be married to Lora Monan. He has six children ages 9, 11, 18, 21 twins and 26.

215. Plaintiff Reginald Rogers, Sr. was drafted in 1987 in the first round by the Detroit Lions. He played Defensive End for two seasons in 1987 and 1988, with Buffalo in the 1991 season, and for Tampa Bay in the 1992 season.

216. Plaintiff Reginald Rogers, Sr. suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

217. Plaintiff Reginald Rogers, Sr. was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

218. Plaintiff Reginald Rogers, Sr. suffers from past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including but not limited to: grand-mal seizures, headaches, loss of hearing and sleeplessness.

## MELVIN and JAVONI JENKINS

219. Plaintiff Melvin Jenkins was born on March 16, 1962 in Jackson, Mississippi. He is married to Javoni Jenkins. They live in Goodyear, Arizona.

-32-

COMPLAINT FOR DAMAGES

Ex A_000051

220.    Plaintiff Melvin Jenkins was selected to play in the NFL from Cincinnati University. He played as a Defensive Back from 1987 to 1990 for Seattle Seahawks, 1991 to 1993 for Detroit Lions and 1993 for the Atlanta Falcons.

221.    Plaintiff Melvin Jenkins suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

222.    Plaintiff Melvin Jenkins was not warned by the NFL, NFL Properties, Inc. or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

223.    Plaintiff Melvin Jenkins suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including memory loss.

**ANTONIO and BETTY GIBSON**

224.    Plaintiff Antonio Gibson was born on July 5, 1962 in Jackson, Mississippi. He is married to Betty Gibson, and they live in College Station, Texas.

225.    Plaintiff Antonio Gibson played Safety with the New Orleans Saints and Dallas Cowboys from 1986 to 1992.

226.    Plaintiff Antonio Gibson suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

227.    Plaintiff Antonio Gibson was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

-33-

COMPLAINT FOR DAMAGES

Ex A_000052

228. Plaintiff Antonio Gibson suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including memory loss, sleeplessness and headaches.

## ALVIN and ODETTA MOORE

229. Plaintiff Alvin Moore was born on May 3, 1959 in Randolph, Arizona. He is married to Odetta Moore. They live in Chandler, Arizona.

230. Plaintiff Alvin Moore played Running Back with the Baltimore and Indianapolis Colts from 1983 to 1984, for the Detroit Lions from 1985 to 1986, and for the Seattle Seahawks in 1987.

231. Plaintiff Alvin Moore suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

232. Plaintiff Alvin Moore was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

233. Plaintiff Alvin Moore suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including memory loss, ringing in his ears and headaches.

## LYVONIA A. "STUMP" MITCHELL

234. Plaintiff Lyvonia A. "Stump" Mitchell was born on March 15, 1959 in Kingsland, Georgia. He lives in Baton Rouge, Louisiana.

235. Plaintiff Stump Mitchell played Running Back and Kick Returner for the St. Louis/Phoenix Cardinals from 1981 to 1989. He has accumulated over 10,000 career all-purpose yards.

-34-

COMPLAINT FOR DAMAGES

236.  Plaintiff Stump Mitchell suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

237.  Plaintiff Stump Mitchell was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

238.  Plaintiff Stump Mitchell suffers from multiple past traumatic brain injuries including, but not limited to the following: headaches, neck problems, vision problems, and occasional confusion.

## KIRK CAMERON "K.C." JONES

239.  Plaintiff Kirk Cameron "K.C." Jones was born on March 28, 1974 in Midland, Texas. He lives in Lantana, Florida.

240.  Plaintiff Kirk Cameron "K.C." Jones played Center and Guard for the Denver Broncos from 1997 to 2002.

241.  Plaintiff Kirk Cameron "K.C." Jones suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

242.  Plaintiff Kirk Cameron "K.C." Jones was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

243.  Plaintiff Kirk Cameron "K.C." Jones suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including short-term memory loss, lethargy, headaches, and sleep-deprived anxiety.

-35-

COMPLAINT FOR DAMAGES

Ex A_000054

### JAMES E. "TOOTIE" and SHANEETA ROBBINS

244. Plaintiff James E. "Tootie" Robbins was born on June 2, 1958 in Windsor, North Carolina. He lives in Chandler, Arizona. He is married to Shaneeta.

245. Plaintiff James E. "Tootie" Robbins played Offensive Tackle for the St. Louis and Arizona Cardinals and the Green Bay Packers from 1982 to 1993.

246. Plaintiff James E. "Tootie" Robbins suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

247. Plaintiff James E. "Tootie" Robbins was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

248. Plaintiff James E. "Tootie" Robbins suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including headaches and short-term memory loss.

### ROBERT J. and BARBARA FREDRICKSON

249. Plaintiff Robert J., Fredrickson was born on May 13, 1971 in St. Joseph, Michigan. He lives in Paradise Valley, Arizona. He is married to Barbara and they have 3 children ages 13, 9 and 7 years old.

250. Plaintiff Robert J. Fredrickson played Linebacker for the Los Angeles/Oakland Raiders from 1994 to 1997, the Detroit Lions in 1998, and Arizona Cardinals from 1999 to 2002.

251. Plaintiff Robert J. Fredrickson suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

252. Plaintiff Robert J. Fredrickson Robbins was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or

-36-

COMPLAINT FOR DAMAGES

Ex A_000055

1    that the league-mandated equipment did not protect him from such injury. This was a substantial

2    factor in causing his current injury.

3       253.    Plaintiff Robert J. Fredrickson Robbins suffers from multiple past traumatic brain

4    injuries that include but are not limited to his various problems including headaches, memory loss,

5    light sensitivity and loss of attention span.

6

7                   **CHARLES E. "CHUCKIE" MILLER**

8       254.    Plaintiff Charles E. "Chuckie" Miller was born on May 9, 1965 in Anniston,

9    Alabama. He lives in Signal Hill, California. He has 4 children ages 7 months, 7, 19 and 21 years

10    old.

11       255.    Plaintiff Charles E. "Chuckie" Miller played Cornerback for the Indianapolis Colts

12    from 1987 to 1989.

13       256.    Plaintiff Charles E. "Chuckie" Miller suffered multiple concussions that were

14    improperly diagnosed and improperly treated throughout his career as a professional football player

15    in the NFL.

16       257.    Plaintiff Charles E. "Chuckie" Miller was not warned by the NFL, NFL Properties,

17    Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or

18    that the league-mandated equipment did not protect him from such injury. This was a substantial

19    factor in causing his current injury.

20       258.    Plaintiff Charles E. "Chuckie" Miller suffers from multiple past traumatic brain

21    injuries that include but are not limited to his various problems including headaches, short-term

22    memory loss, and sleeplessness.

23

24                   **EDWARD P. and SUSAN LEE**

25       259.    Plaintiff Edward P. Lee was born on December 8, 1959 in Washington, D.C. He is

26    married to Susan Lee. They live in Brookeville, Maryland. They have three children ages 18, 12

27    and 9.

28

-37-

COMPLAINT FOR DAMAGES

Ex A_000056

260.  Plaintiff Edward P. Lee played Wide Receiver for the Detroit Lions from 1982 to 1984.

261.  Plaintiff Edward P. Lee suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

262.  Plaintiff Edward P. Lee was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

263.  Plaintiff Edward P. Lee suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including memory loss.

## PATRICK and SHARRON HEENAN

264.  Plaintiff Patrick Heenan was born on March 1, 1938 in Detroit, Michigan. He is married to Sharron. They live in Lenoir City, Tennessee.

265.  Plaintiff Patrick Heenan played Cornerback for the Washington Redskins from 1960 to 1961.

266.  Plaintiff Patrick Heenan suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

267.  Plaintiff Patrick Heenan was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

268.  Plaintiff Patrick Heenan suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including short-term memory loss, headaches, and ringing in ears.

-38-

COMPLAINT FOR DAMAGES

## TOBY L. WRIGHT

269.   Plaintiff Toby L. Wright was born on November 19, 1970 in Phoenix, Arizona. He lives in Tempe, Arizona.

270.   Plaintiff Toby L. Wright played Strong Safety for the Los Angeles Rams in 1994, for the St. Louis Rams from 1995 to 1998, and for the Washington Redskins in 1999. He was selected as an NFL All-Pro in 1996.

271.   Plaintiff Toby L. Wright suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

272.   Plaintiff Toby L. Wright was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

273.   Plaintiff Toby L. Wright suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including short-term memory loss, headaches, depression, ringing in ears, and blurry vision.

## KELLY KIRCHBAUM

274.   Plaintiff Kelly Kirchbaum was born on June 14, 1957 in Fort Knox, Kentucky. He lives in Lexington, Kentucky.

275.   Plaintiff Kelly Kirchbaum played Middle Linebacker and Special Teams for the New York Jets from 1979 to 1980, for the Kansas City Chiefs in 1981, and for the Philadelphia Eagles in 1987.

276.   Plaintiff Kelly Kirchbaum suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

-39-

COMPLAINT FOR DAMAGES

Ex A_000058

277.   Plaintiff Kelly Kirchbaum was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

278.   Plaintiff Kelly Kirchbaum suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including from confusion, memory loss, and dizziness.

### JAMES and BONITA HOOD

279.   Plaintiff James Hood lives in Inglewood, California.  He was born on September 9, 1961.  He is married to Bonita Hood.  They have 3 children ages 23, 20 and 18 years old.

280.   Plaintiff James Hood played Wide Receiver for the Seattle Seahawks from 1987 to 1988.

281.   Plaintiff James Hood suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

282.   Plaintiff James Hood was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

283.   Plaintiff James Hood suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including memory loss and headaches.

### RICHARD and YADIRA MERCIER

284.   Plaintiff Richard Mercier was born on May 13, 1975 in Quebec, Canada.  He is married to Yadira Mercier.  They live in Miami, Florida.  The have one child age 9 months.

285.   Plaintiff Richard Mercier played Offensive Lineman for the Baltimore Ravens, Denver Broncos and Cleveland Browns from 2000 to 2003.

-40-

COMPLAINT FOR DAMAGES

286.    Plaintiff Richard Mercier suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

287.    Plaintiff Richard Mercier was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

288.    Plaintiff Richard Mercier suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including memory loss.

### BRETT and EMILY ROMBERG

289.    Plaintiff Brett Romberg was born on October 10, 1979 in Windsor, Canada.  He is married to Emily Romberg.  They live in Coral Gables, Florida.

290.    Plaintiff Brett Romberg played Center for the Jacksonville Jaguars, St. Louis Rams and Atlanta Falcons from 2003 to 2010.

291.    Plaintiff Brett Romberg suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

292.    Plaintiff Brett Romberg was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

293.    Plaintiff Brett Romberg suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including headaches.

### STEVE and KARELIS KORTE

-41-

COMPLAINT FOR DAMAGES

Ex A_000060

294.    Plaintiff Steve Korte was born January 15, 1960 in Denver, Colorado. He is married to Karelis Korte. They live in Covington, Louisiana. They have three children ages 25, 21 and 19.

295.    Plaintiff Steve Korte played Center for the New Orleans Saints from 1983 to 1990.

296.    Plaintiff Steve Korte suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

297.    Plaintiff Steve Korte was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

298.    Plaintiff Steve Korte suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including depression, short-term memory loss and headaches.

### JOE and LYDIA HARRIS

299.    Plaintiff Joe Harris was born on December 6, 1952 in Fayetteville, North Carolina. He is married to Lydia Harris. They live in Ellenwood, Georgia.

300.    Plaintiff Joe Harris played Linebacker for the Los Angeles Raiders, Baltimore Ravens, San Francisco 49ers, and Minnesota Vikings from 1977 to 1983.

301.    Plaintiff Joe Harris suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

302.    Plaintiff Joe Harris was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term, injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

303.    Plaintiff Joe Harris suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including memory loss, confusion and dementia.

-42-

COMPLAINT FOR DAMAGES

### RODNEY and ANDETRIA HAMPTON

304.    Plaintiff Rodney Hampton was born on April 3, 1969 in Houston, Texas.  He is married to Andetria Hampton.  They live in Houston, Texas.  They have three children ages 16, 12 and 4.

305.    Plaintiff Rodney Hampton played Running Back for the New York Giants from 1990 to 1997. He played in two Pro Bowls in 1992 and 1993 and won Super Bowl XXV.

306.    Plaintiff Rodney Hampton suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

307.    Plaintiff Rodney Hampton was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

308.    Plaintiff Rodney Hampton suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including short-term memory loss and headaches.

### LEWIS D. and KATHY TILLMAN

309.    Plaintiff Lewis D. Tillman was born on April 16, 1966 in Oklahoma City, Oklahoma. He is married to Kathy Tillman.  They live in Madison, Mississippi.  They have two children ages 19 and 15.

310.    Plaintiff Lewis D. Tillman played Running Back for the New York Giants and Chicago Bears from 1989 to 1996.

311.    Plaintiff Lewis D. Tillman suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

-43-

COMPLAINT FOR DAMAGES

Ex A_000062

312. Plaintiff Lewis D. Tillman was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

313. Plaintiff Lewis D. Tillman suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including poor memory and headaches.

## LARRY and LINDA KAMINSKI

314. Plaintiff Larry Kaminski was born on January 6, 1945 in Cleveland, Ohio. He is married to Linda Kaminski. They live in Poulsbo, Washington.

315. Plaintiff Larry Kaminski played Center for the Denver Broncos from 1966 to 1973.

316. Plaintiff Larry Kaminski suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

317. Plaintiff Larry Kaminski was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

318. Plaintiff Larry Kaminski suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including frontal temporal lobe damage, explosive mood changes, aggressiveness and depression.

## DAVID and MARY LEE KOCOUREK

319. Plaintiff David Kocourek was born on August 20, 1937 in Chicago, Illinois. He is married to Mary Lee Kocourek. They live in Marco Island, Florida.

-44-

COMPLAINT FOR DAMAGES

320.    Plaintiff David Kocourek played Tight End for the Los Angeles Chargers in 1960, for the San Diego Giants from 1961 to 1965, for the Miami Dolphins in 1966, and for the Oakland Raiders from 1967 to 1968.

321.    Plaintiff David Kocourek suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

322.    Plaintiff David Kocourek was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

323.    Plaintiff David Kocourek suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including dementia.

## ROBERT and DENISE WEATHERS

324.    Plaintiff Robert Weathers was born on September 16, 1960 in Westfield, NY. He is married to Denise Weathers. They live in Orlando, Florida.

325.    Plaintiff Robert Weathers played Running Back for the New England Patriots from 1982 to 1988.

326.    Plaintiff Robert Weathers suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

327.    Plaintiff Robert Weathers was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

-45-

COMPLAINT FOR DAMAGES

328.   Plaintiff Robert Weathers suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including short-term memory loss and headaches.

## WAYNE and SHARON HAWKINS

329.   Plaintiff Wayne Hawkins was born on June 17, 1938 in Fort Peck, Montana. He is married to Sharon Hawkins. They live in San Ramon, California.

330.   Plaintiff Wayne Hawkins played Right Guard for the Oakland Raiders from 1960 to 1971.

331.   Plaintiff Wayne Hawkins suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

332.   Plaintiff Wayne Hawkins was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

333.   Plaintiff Wayne Hawkins suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including dementia and myopathy.

## ANTHONY "TONY" HARGAIN

334.   Plaintiff Anthony "Tony" Hargain was born on December 26, 1967 in Palo Alto, California. He lives in Citrus Heights, California.

335.   Plaintiff Anthony "Tony" Hargain played Wide Receiver for the San Francisco Giants in 1991, for the Kansas City Chiefs from 1992 to 1993, for the Los Angeles Rams in 1993, and for the Denver Broncos in 1996.

-46-

COMPLAINT FOR DAMAGES

Ex A_000065

336.    Plaintiff Anthony "Tony" Hargain suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

337.    Plaintiff Anthony "Tony" Hargain was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

338.    Plaintiff Anthony "Tony" Hargain suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including headaches, memory loss, and sleeplessness.

## EDWARD "EDDIE" and RICA PAYTON

339.    Plaintiff Edward "Eddie" Payton was born on August 3, 1950 in Columbia, Mississippi.  He is married to Rica Payton.  They live in Madison, Mississippi.

340.    Plaintiff Edward "Eddie" Payton played Running Back and Kick Returner for the Cleveland Browns and the Detroit Lions in 1977, for the Kansas City Chiefs in 1978, and for the Minnesota Vikings from 1980 to 1982.

341.    Plaintiff Edward "Eddie" Payton suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

342.    Plaintiff Edward "Eddie" Payton was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

343.    Plaintiff Edward "Eddie" Payton suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including headaches, lack of focus, confusion, and short-term memory loss.

-47-

COMPLAINT FOR DAMAGES