# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| : | |
| IN RE: NATIONAL FOOTBALL LEAGUE: | No. 2:12-md-02323-AB |
| PLAYERS' CONCUSSION : | |
| INJURY LITIGATION : | MDL No. 2323 |
| : | |
| : | **Hon. Anita B. Brody** |
| THIS DOCUMENT RELATES TO: : | |
| : | |
| *Lewis, et al.,* v. *Kansas City* : | No. 14-cv-01995-AB |
| *Chiefs Football Club, Inc.* : | |
| : | |
| and : | |
| : | |
| *Smith, et al.* v. *Kansas City* : | No. 14-cv-03383-AB |
| *Chiefs Football Club, Inc.* : | |
| : | |
| and : | |
| : | |
| *Horn, et al.* v. *Kansas City* : | No. 14-cv-03382-AB |
| *Chiefs Football Club, Inc.* : | |
| : | |
| and : | |
| : | |
| *Kenney, et al.* v. *Kansas City* : | No. 14-cv-04779-AB |
| *Chiefs Football Club, Inc.* : | |

## KANSAS CITY CHIEFS FOOTBALL CLUB, INC.'S
## OPPOSITION TO AMENDED MOTION TO REMAND

The Kansas City Chiefs Football Club, Inc. (the "Chiefs") respectfully submit this

response in opposition to Plaintiffs'[1] Amended Motion to Remand (12-md-02323, Doc.

No. 6712) (the "Motion" or "Pls.' Mot.").

---

[1]   The term "Plaintiffs" includes solely plaintiffs in the *Lewis*, *Smith*, *Horn*, and *Kenney* actions but does
not include Darrell Colbert or Tamarick Vanover—named plaintiffs in *Smith* and *Horn*, respectively—
because Colbert did not opt out of the Class Action Settlement and Vanover revoked his opt-out
request.  Their claims are therefore dismissed with prejudice pursuant to the Court's Amended Final
Order and Judgment dated May 8, 2015.

## PRELIMINARY STATEMENT

Plaintiffs' request that their remand motions be decided before the Court decides the NFL Defendants' motion to dismiss the other opt-out cases on preemption grounds should be denied because both sets of motions raise substantially similar preemption arguments.[2]  This Court has wide discretion to, and should, coordinate its consideration of the motions for the sake of judicial efficiency and consistent rulings.  Plaintiffs have provided no legitimate ground for this Court to do otherwise.

*First*, Plaintiffs' decision to sue the Chiefs, as opposed to the NFL, in no way negates the need for this Court to analyze the same CBAs and preemption case law that will be analyzed as part of the NFL Defendants' motion to dismiss the other opt-out cases.  There is a long line of NFL preemption cases involving former players bringing common law tort claims against their former employer Member Clubs in which federal courts have rightly and consistently found the claims to be preempted.  Plaintiffs' efforts to distinguish their actions as purportedly based on non-negotiable Missouri common law employer duties is unavailing because, contrary to Plaintiffs' argument, the Eighth Circuit has ruled that such duties *are negotiable* through CBAs.  As a result, claims premised facially on the common law duties are preempted when the negotiated CBA provisions must be interpreted to determine the scope of the employer's duty.  That is the case here where Plaintiffs' bargaining representatives negotiated various relevant duties with regard to player health and safety issues.  Thus, just as the NFL Defendants argued in their motion to dismiss, these same provisions will need to be analyzed to resolve

---

[2]  Pursuant to the Court's order and notice (12-md-02323, Doc. Nos. 6705, 6710), the Chiefs address only the question of whether Plaintiffs' remand motions should be heard before the NFL Defendants' motion to dismiss on preemption grounds, and reserve the right to argue the merits of remand in subsequent briefing.

Plaintiffs' remand motions.  This warrants coordination of both sets of motions for the sake of judicial efficiency and consistent rulings—as the Judicial Panel on Multidistrict ("JPML") held in transferring Plaintiffs' cases to this Court—because transfer would "allow a single court to *efficiently* and consistently address" whether the Labor Management Relations Act ("LMRA") preempts the various plaintiffs' claims "due to the existence of collective bargaining agreements."[3]

*Second*, the alleged distinction in procedural posture between the NFL Defendants' motion and Plaintiffs' "jurisdictional" motions makes no difference. Because the NFL Defendants, like the Chiefs, argue that resolution of plaintiffs' *claims* (and not, as Plaintiffs argue, the NFL Defendants' defenses) is substantially dependent upon or inextricably intertwined with an interpretation of the terms of NFL CBAs, the motions ask the Court to address the *same* issues with respect to the *same* CBAs. Reviewing, hearing and deciding the motions separately would be inefficient.  Nor is there any support—and Plaintiffs provide none—for their argument that the Court lacks discretion to coordinate these motions because, as a jurisdictional motion, Plaintiffs' remand motions must be decided "forthwith."  In coordinating the motions, the Court would not be taking any action that affects Plaintiffs' substantive rights, such as deciding a motion to dismiss their claims based on untimeliness.  Instead, the Court merely would be coordinating Plaintiffs' motions with the NFL Defendants' motion that the Court already has decided to expedite and hear before other motion practice and discovery in MDL No. 2323.  There is no supportable rationale for stripping this Court of its ample

---

[3]   *See, e.g.*, Transfer Order at 1-2, *In re: Nat'l Football League Players' Concussion Injury Litig.*, MDL No. 2323 (J.P.M.L. Apr. 2, 2014), Doc. No. 582 ("*Lewis* Transfer Order") (emphasis added).

discretion to manage its docket to streamline proceedings, and Plaintiffs have provided no apposite authority to support their request.

For the reasons set forth below, the Chiefs respectfully request that the motion to remand filed by Plaintiffs on July 30, 2015 (12-md-02323, Doc. No. 6660) be held in abeyance until the Court issues a case management order permitting and scheduling supplemental briefing on all preemption-related motions in the opt-out litigation.

## ARGUMENT

This Court should coordinate briefing and decision on Plaintiffs' pending remand motions and the NFL Defendants' motion to dismiss the other opt-out cases on preemption grounds for a simple, but dispositive, reason:  Both sets of motions require the Court to consider the *same* NFL CBA provisions and the *same* preemption case law. Thus, as the JPML found when it initially transferred Plaintiffs' actions to this Court as part of MDL No. 2323, coordinating these motions will promote judicial efficiency and consistent pre-trial rulings—the very purpose of this MDL.

Nothing in Plaintiffs' Motion—hinging on the irrelevant arguments that Plaintiffs' actions are factually distinct because they involve only a Member Club and raise a jurisdictional issue—compels a contrary conclusion.

I.     **Plaintiffs' Motion Turns on the Same Preemption Case Law as the NFL Defendants' Motion to Dismiss**

Plaintiffs' principal argument for this Court to sever its coordination of their remand motions from the NFL Defendants' motion to dismiss is that Plaintiffs are suing the Chiefs (a Member Club), as opposed to the NFL itself.  But that "difference" is immaterial.  As a long line of cases involving former players bringing common law tort claims against Member Clubs makes clear, Plaintiffs' motions require the Court to

4

consider the very same CBA provisions and the very same preemption case law as is at issue in the NFL Defendants' motion to dismiss. *See, e.g.*, *Sherwin* v. *Indianapolis Colts, Inc.*, 752 F. Supp. 1172, 1177-78 (N.D.N.Y. 1990) (finding former player's claims that the Club provided negligent medical treatment and fraudulently concealed the extent of the player's injury was preempted because the Club "did not owe a duty to provide medical care to the plaintiff independent of the relationship established in the" CBAs); *Jeffers* v. *D'Alessandro*, 681 S.E.2d 405, 412 (N.C. Ct. App. 2009) (finding former player's claim against Member Club—that team physician performed unauthorized procedures during knee surgery—was preempted because resolution of the claim was substantially dependent upon an analysis of CBA provisions setting forth the Club's and players' rights and duties in connection with medical care); *cf. Duerson* v. *Nat'l Football League, Inc.*, 2012 WL 1658353, at *4 (N.D. Ill. May 11, 2012) (CBA provisions requiring that the Member Clubs pay the costs of certain medical care for players and requiring that the Member Club's physician perform a pre-season and, in some cases, a post-season, physical examination could be "plausibly interpret[ed] . . . to impose a duty on the NFL's clubs to monitor a player's health and fitness to continue to play football.").[4]

Seeking to avoid this substantial preemption overlap on the motions at issue, Plaintiffs purport to distinguish their cases by arguing that, allegedly unlike certain other states, Missouri purportedly imposes "non-negotiable" common law duties on employers—namely, duties (1) to maintain a safe working environment, (2) not to expose

---

[4]   *See also* Order at 1-2, *Maxwell* v. *Nat'l Football League*, No. 11-cv-08394 (C.D. Cal. Dec. 8, 2011, Doc. No. 58) ("The CBA places primary responsibility for identifying . . . physical conditions on the team physicians . . . . The physician provisions of the CBA must be taken into account in determining the degree of care owed by the NFL and how it relates to the NFL's alleged failure to establish guidelines or policies to protect the mental health and safety of its players.").

employees to unreasonable risks of harm, and (3) to warn employees about the existence of dangers of which they could not reasonably be expected to be aware.  (Pls.' Mot. at 1; *see also* Mem. in Supp. of Pls.' Mot. to Remand at 2, *Lewis* v. *Kansas City Chiefs Football Club, Inc*., No. 14-cv-01995 (E.D. Pa. Apr. 4, 2014) (Doc. No. 1-15) ("Like all employers in Missouri, Defendant owed a non-negotiable duty . . . .").  But that is *not* the case under Missouri law, where an employer's common law duties *are* negotiable.[5] As the Eighth Circuit in *Gore* v. *Trans World Airlines*, 210 F.3d 944, 950 (8th Cir. 2000)—a decision noticeably absent from Plaintiffs' Motion—determined upon analyzing Missouri law:  "Employers and employees are free to negotiate what actions an employer may take to preserve the safety and security of the workplace and the safety of other employees."  As the *Gore* decision illustrates, this right to negotiate the scope of a Missouri employer's duty will result in the preemption of an employee's common law claim against the employer where, as here, a CBA provision requires interpretation to resolve the claim.  *Id.*; *see also Espinoza* v. *Cargill Meat Solutions Corp.*, 622 F.3d 432, 444 (5th Cir. 2010) (concluding that the Court would need to interpret CBA provisions relating to negotiated duties of workplace safety under Texas law in order to resolve employee negligence claim against employer involving workplace accident).

---

[5]   Even if the Missouri common law duties were non-negotiable, which they are not, the Court still may need to interpret the NFL CBAs to resolve Plaintiffs' claims.  *See Lingle* v. *Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 n.7 (1988) ("It is conceivable that a State could create a remedy that, although nonnegotiable, nonetheless turned on the interpretation of a collective-bargaining agreement for its application" and "[s]uch a remedy would be pre-empted by § 301.").  For example, the Court may look to the CBA health and safety provisions to determine how the Member Clubs structured their duty to maintain a safe working environment.  *See Atchley* v. *Heritage Cable Vision Assocs.*, 101 F.3d 495, 499-500 (7th Cir. 1996) (finding § 301 LMRA preemption where right to wage increase was non-negotiable under state law but CBA interpretation was necessary as to when such increases were to be implemented and paid); *Reece* v. *Hous. Lighting & Power Co*., 79 F.3d 485, 487-88 (5th Cir. 1996) (same, where right to be free of discrimination was a non-negotiable state-law right but claim turned on questions of promotion, seniority, and assignment to training programs, all of which were provided for in the CBA).

The *Gore* case is instructive on how the scope of an employer's duty may be negotiated.  Gore, a union member, sued his employer, TWA, asserting common law tort claims under Missouri law.  *Gore*, 210 F.3d at 948.  The terms of his employment were subject to a collective bargaining agreement.  *Id*. at 947.  After TWA removed the action to federal court on the ground of complete preemption under the Railway Labor Act (which has a "virtually identical" complete preemption analysis to § 301 of the LMRA), Gore filed a motion to remand, asserting that his state-law claims existed independent of the collective bargaining agreement and were not preempted.  *Id*. at 949.  The federal district court disagreed and "concluded that [plaintiff's] state-law claims are preempted because they are inextricably intertwined with a consideration or interpretation of the collective bargaining agreement."  *Id*.  On appeal, the Eighth Circuit affirmed dismissal of the case on preemption grounds under the Railway Labor Act.  *Id*. at 947.  After reviewing Missouri law, the Eighth Circuit held "that the rights asserted in Gore's tort suit are *not* nonnegotiable, independent state-law rights."  *Id*. at 949 (emphasis added).  "While state law has created these tort actions, the collective bargaining agreement is the defining source of the duties specifically owed by the defendants for each claim asserted."  *Id*. at 949-50.  The Eighth Circuit explained:

> While Gore's complaint avoids mention of the collective bargaining agreement, it indicates that the actions took place in the course and scope of the defendants' employment with TWA, a relationship in fact governed by a collective bargaining agreement that specifically requires TWA to provide a safe working environment and to promptly investigate and handle complaints relating to worker safety.

*Id*. at 950.  The Eighth Circuit thus concluded that "Gore cannot establish liability on his tort claims without demonstrating that the defendants' actions were wrongful under a proper interpretation of the relevant rights and duties bargained for in the collective

bargaining agreement." *Id.* at 952; *see also Kmetz* v. *Permacel St. Louis, Inc.*, 2008 WL 4643868, at *3 (E.D. Mo. Oct. 20, 2008) (denying motion to remand on finding of complete preemption under § 301 of the LMRA because employee's "[Missouri] state law claims of negligence relating to workplace safety" against defendant employer required interpretation of a CBA "to determine whether and to what extent defendants' alleged negligent actions violated a duty owed to plaintiff, and specifically, the duty to provide a safe work environment").

The same is true of Plaintiffs' claims here.   Through the NFL collective bargaining process, the parties negotiated CBA provisions that altered the source and scope of the Chiefs' duties to Plaintiffs.   For example, while Missouri common law imposes a duty on employers to warn employees about the existence of dangers of which they could not reasonably be expected to be aware, a negotiated 1993 NFL CBA provision requires of Member Clubs that where a player's physical condition "could be significantly aggravated by continued performance, the physician will advise the player . . . before the player is again allowed to perform on-field activity."  1993 CBA Art. XLIV § 1 ("Players' Rights to Medical Care and Treatment") (12-md-02323, Doc. No. 3589-30); 1982 CBA Art. XXXI § 1 (Doc. No. 3589-13).   Moreover, the negotiated CBAs "represent[] the *complete understanding* of the parties on all subjects covered [t]herein," including "Players Rights to Medical Care and Treatment."   1993 CBA Art. III § 1 (emphasis added) (Doc. No. 3589-23), Art. XLIV (Doc. No. 3589-30); 1982 CBA Art. II § 1 (Doc. 3589-11), Art. XXXI § 1 (Doc. No. 3589-13).

For this very reason, numerous other federal courts have found preemption of Plaintiffs' health and safety-related common law tort claims against Member Clubs.   For

8

example, in *Sherwin*, a former NFL player brought common law negligence and fraud claims against a Member Club alleging that the team failed to provide adequate medical care and intentionally withheld information from him regarding his health. *Sherwin*, 752 F. Supp. at 1174, 1178. As the United States District Court for the Northern District of New York held in *Sherwin*, Plaintiffs' claims are preempted here because the Court cannot "resolve plaintiff's fraud and negligent misrepresentation claims without reference to Article XXXI, section 1 of the [1982] CBA, which establishes the duty of a club physician, and arguably the club, to inform a player of physical conditions 'which could adversely affect the player's performance or health.'" *Id.* at 1178; *see also, e.g.*, 1980 Supp. to NFL Constitution Art. XVII ("All determinations of recovery time for major and minor injuries must be by the club's medical staff and in accordance with the club's medical standards . . . . The prognosis of the player's recovery time should be as precise as possible.") (12-md-02323, Doc. No. 3589-95); 1993 CBA Appx. C § 9 ("[I]f Player is injured in the performance of his services under this contract and promptly reports such injury to the Club physician or trainer, then Player will receive such medical and hospital care during the term of this contract as the Club physician may deem necessary . . . .") (Doc. No. 3589-31); 1982 CBA Art. XXXI § 2 ("All full-time head trainers and assistant trainers . . . will be certified by the National Athletic Trainers Association. All part-time trainers must work under the direct supervision of a certified trainer.") (Doc. No. 3589-11). Those are the precise CBA provisions (among others) at issue in the NFL Defendants' motion to dismiss, thereby necessitating judicial examination of the same CBA provisions on both sets of preemption-related motions and warranting coordination here.

Recognizing that the Eighth Circuit's decision in *Gore* rejects the arguments in their remand motions and makes clear the case for this Court's coordination of the instant motions, Plaintiffs simply ignore *Gore* in their Motion and instead rely heavily on the remand decision in *Green* v. *Arizona Cardinals Football Club LLC*, 21 F. Supp. 3d 1020 (E.D. Mo. 2014).  But as the Cardinals have contended (including in their recent second notice of removal), *Green* was wrongly decided and conflicts with *Gore*.  The United States District Court for the Eastern District of Missouri in *Green* accurately and approvingly cited *Gore* for the proposition that Missouri employees may "enter[] a CBA that include[s] contractual provisions . . . requiring the [employer] to protect the safety of its employees," thereby preempting claims premised on a duty to "maintain a safe working environment" and conferring federal jurisdiction.  *Green*, 21 F. Supp. 3d at 1027; *see also Gore*, 210 F.3d at 950.  But in deciding to remand *Green*, the court erroneously conflated the claims of one plaintiff who never played under a CBA with the two plaintiffs who did.  Thus, the court found that because the duties applicable to the plaintiff who never played under a CBA arise out of the common law, it "stands to reason" that "the duties owed [to the two plaintiffs who played under CBAs] and the standards applied to their claims derive from the same source"—the common law. *Green*, 21 F. Supp. 3d at 1028-29.  This finding ignores the very holding of the Eighth Circuit in *Gore* that—regardless of otherwise existing Missouri common law duties of employers to employees regarding workplace safety—where the employees worked pursuant to negotiated CBAs that set forth workplace health and safety related duties, the resolution of those employee plaintiffs' claims substantially depends upon an

interpretation of those provisions regarding the source and scope of the duties owed by the employer (here, the Chiefs).

Plaintiffs also rely on two Eastern District of Pennsylvania remand decisions— *Stellar* v. *Allied Signal, Inc*., 98 F. Supp. 3d 790 (E.D. Pa. 2015) and *McNeal* v. *ArcelorMittal USA, Inc.*, No. 15-cv-03517, 2015 WL 7014654 (E.D. Pa. Nov. 12, 2015)—but neither case addresses the issue here of whether *Missouri* common law duties of employers are negotiable such that CBA provisions must be interpreted with regard to the source and scope of the duty of an employer. Moreover, these decisions concede that "[w]hen an independent common law duty exists, a court may still find Section 301 preemption if the collective-bargaining agreement modifies that duty in any way." *McNeal*, 2015 WL 7014654, at *6 (citing *Stellar*, 98 F.Supp.3d at 801 ("Defendant has not pointed to any portion of the CBAs that somehow modifies—either by enlarging, diminishing or even refining—the duty imposed by the common law.")). And, in fact, in order to reach their remand decisions, Judge Robreno and Judge Pappert reviewed the CBA provisions that defendants argued required interpretation and analyzed that question under the prevailing Section 301 LMRA case law—illustrating how the Court here would need to interpret the CBAs at issue in deciding both Plaintiffs' motions to remand and the NFL Defendants' motion to dismiss. *See Stellar*, 98 F. Supp. 3d at 800-04; *McNeal*, 2015 WL 7014654, at *7.

In sum, this Court should coordinate supplemental briefing and related hearings on all preemption-related motions in a manner that allows the Court to consider efficiently and consistently the same CBA provisions and the same preemption case law at issue for these remand briefs and the NFL Defendants' motion to dismiss on

preemption grounds.[6] *See, e.g.*, *Lewis* Transfer Order at 1-2 (recognizing that transfer of Plaintiffs' actions would *promote* judicial efficiency because Plaintiffs' remand motions "will involve issues that also are implicated in the NFL's motion to dismiss in MDL No. 2323," thereby "allow[ing] a single court to efficiently and consistently address" whether the LMRA preempts various plaintiffs' claims).

## II.   Judicial Efficiency Is Served by Coordinating Plaintiffs' Remand Motions with the NFL Defendants' Motion to Dismiss on Preemption Grounds

Notwithstanding the compelling reasons for coordination of Plaintiffs' motions to remand and the NFL Defendants' motion to dismiss, Plaintiffs nevertheless argue that any judicial efficiency is defeated by the alleged difference in procedural posture between the Chiefs' and NFL Defendants' actions.  To that end, Plaintiffs assert that the NFL Defendants' motion allegedly involves a preemption "defense" while the Chiefs must show in a remand opposition that resolution of Plaintiffs' claims requires interpretation of NFL CBAs and thus poses a jurisdictional issue that must be decided "forthwith."  (Pls.' Mot. at 6-7.)  Plaintiffs' argument has no merit.

First, it ignores that *both* the Chiefs and NFL Defendants argue that resolution of the respective plaintiffs' *claims* are preempted—that is, analysis of various elements of the *claim* substantially depends upon or is inextricably intertwined with an interpretation

---

[6]   Plaintiffs wrongly argue that the NFL "conceded" that the Court "need look no further than the employer-employee relationship" to determine the motions to remand because the NFL Defendants' reply brief in support of their motion to dismiss the Amended Master Administrative Long-Form Complaint on Preemption Grounds stated that plaintiffs are not "even ordinary employees suing their employer." (Pls.' Mot. at 5.)  Plaintiffs take the quote out of context.  The NFL Defendants were not distinguishing Clubs from the League, but instead ordinary at-will employees from these plaintiffs who were members of a unionized workforce that negotiated the scope of duties pursuant to a collective bargaining agreement. (*See* 12-md-02323, Doc. 4252, p.1.)  Specifically, the NFL wrote: "Try as they might, Plaintiffs simply cannot wish away the reality that they are not ordinary plaintiffs bringing claims against unrelated parties.  Nor are they even ordinary employees suing their employer.  The claims here are fundamentally about workplace safety in a unionized setting in which workplace safety issues loom large and have long been the subject of bargaining.  In that context, Plaintiffs' remedies lie in the uniform federal labor law and its unique procedural scheme, not in the disparate common law of fifty different States." *Id.*

of specific provisions of the NFL CBAs, or the claims arise under those provisions. Although it is true that a defendant can assert preemption as a *defense* on a motion to dismiss, but not on a jurisdictional remand motion, *see Caterpillar Inc*. v. *Williams*, 482 U.S. 386, 398-99 (1987), the NFL Defendants' motion to dismiss does *not* assert preemption as a *defense*.  Instead, the NFL Defendants, like the Chiefs, argue, among other things, that *duty*—an element of plaintiffs' negligence *claims*—requires interpretation of CBA provisions.  As this example illustrates, both sets of pending motions ask this Court to address the very same issues concerning the resolution of plaintiffs' claims.  Thus, reviewing, hearing argument on, and deciding these motions separately would be inefficient.

Second, Plaintiffs cite no valid support for the position that their remand motions must be decided with urgency that overcomes this Court's discretion to coordinate the motions with the NFL Defendants' motion to dismiss (which, in any event, this Court has already determined is being decided on an "expedited basis" before other motion practice and discovery in MDL No. 2323).  (*See* CMO #2 at 2 (12-md-02323, Doc. No. 64) (expediting NFL Defendants' preemption motion).)  The Chiefs are not asking this Court to abstain from deciding Plaintiffs' remand motions in lieu of deciding some alternative motion by the Chiefs that would affect Plaintiffs' substantive rights, such as a motion to dismiss for failure to state a claim, for untimeliness or on estoppel grounds.  Plaintiffs only cite cases where the Court was confronted with deciding two motions in the same plaintiffs' action—remand and otherwise—the order of which would determine substantive rights and/or whether the state or federal court would determine those substantive rights.  *See Coggins* v. *Keystone Foods, LLC*, No. 15-cv-480, 2015 WL

3400938, at *2 (E.D. Pa. May 27, 2015) (deciding motion to remand before motion to dismiss filed by defendant in *the same case*); *Huss* v. *Green Spring Health Servs., Inc.*, No. 18-cv-6055, 1999 WL 225885, at *2 (E.D. Pa. Apr. 16, 1999) (same); *J.C. ex rel. Cook* v. *Pfizer, Inc.*, 2012 WL 4442518, at *1-2 (S.D. W. Va. 2012) (same with motion to stay).  That is not the situation presented here.

The Chiefs merely argue that this Court should coordinate briefing, hearing and decision on the remand motions with the NFL Defendants' motion to dismiss because the motions raise substantially similar issues.  Coordination ensures that such substantially similar issues raised in multiple cases get decided efficiently and consistently—the very essence of why these cases were consolidated in the MDL No. 2323 proceedings in the first place.

*          *          *

In sum, this Court's coordination of supplemental briefing and related hearings on all preemption-related motions, including Plaintiffs' pending remand motions and the NFL Defendants' motion to dismiss, is amply supported by this Court's substantial authority to manage its docket.  It is well-recognized that district courts have broad discretion to manage their dockets to promote judicial efficiency and minimize burden on the parties.  *In re Asbestos Prods. Liab. Litig.*, 718 F.3d 236, 246 (3d Cir. 2013). Understandably, this discretion is especially far-reaching in complex cases and multidistrict litigations, where administrative burdens are particularly acute and the time saved by hearing and deciding similar issues in a coordinated manner is likely to be particularly significant.  *See id.* ("[D]istrict judges 'must have authority to manage their dockets, especially during [a] massive litigation.'" (alteration in original) (quoting *In re*

*Fannie Mae Sec. Litig.*, 552 F.3d 814, 824 (D.C. Cir. 2009))); *see also In re Phenylpropanolomine Prods. Liab. Litig.*, 460 F.3d 1217, 1232 (9th Cir. 2006) (district courts managing multidistrict litigation cases need "broad discretion to administer the proceeding as a whole"). That is the case where, as here, 53 actions remain pending in MDL No. 2323 on behalf of 82 opt-out plaintiffs. For this reason, as recognized by the JPML, the Court should manage its docket and coordinate these threshold motions to "serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation." *See Lewis* Transfer Order at 1-2. Plaintiffs have presented no sound basis for this Court to do otherwise.

## CONCLUSION

For the reasons stated, the Chiefs respectfully request that the motion to remand filed by Plaintiffs on July 30, 2015 be held in abeyance until the Court issues a case management order permitting and scheduling supplemental briefing on all preemption-related motions in the opt-out litigation.

Dated:  January 20, 2016                              Respectfully submitted

                                                     /s/ Brad S. Karp
                                                     Brad S. Karp
                                                     Bruce Birenboim
                                                     Lynn B. Bayard
                                                     PAUL, WEISS, RIFKIND, WHARTON &
                                                     GARRISON LLP
                                                     1285 Avenue of the Americas
                                                     New York, NY 10019-6064
                                                     (212) 373-3000
                                                     bkarp@paulweiss.com
                                                     bbirenboim@paulweiss.com
                                                     lbayard@paulweiss.com
                                                     (with respect to all actions)

and

Lee M. Baty, Esq.
Theresa A. Otto, Esq.
W. Christopher Hillman, Esq.
Elizabeth A. Murray, Esq.
BATY, HOLM, NUMRICH & OTTO, P.C.
4600 Madison Avenue, Suite 210
Kansas City, MO 64112-3019
lbaty@batyholm.com
totto@batyholm.com
chillman@batyholm.com
emurray@batyholm.com
(816) 531-7200
(with respect to *Lewis*, *Smith* and *Kenney*
actions)

and

Gregory S. Gerstner, Esq.
Frederick H. Riesmeyer II, Esq.
Christopher M. McHugh, Esq.
Kendra D. Hanson, Esq.
SEIGFREID BINGHAM, P.C.
2323 Grand Blvd., Suite 1000
Kansas City, Missouri 64108
ggerstner@seigfreidbingham.com
friesmeyer@seigfreidbingham.com
cmchugh@seigfreidbingham.com
khanson@seigfreidbingham.com
(816) 421-4460
(with respect to *Horn* action)

***Attorneys for the Kansas City Chiefs
Football Club, Inc.***

## CERTIFICATE OF SERVICE

It is hereby certified that a true copy of the foregoing document was served electronically via the Court's electronic filing system on the 20th day of January, 2016, upon all counsel of record.


Dated: January 20, 2016                              /s/  Brad S. Karp
                                                     Brad S. Karp