# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | **Hon. Anita B. Brody** |
| | No. 12-md-2323-AB |
| THIS DOCUMENT RELATES TO: | No. 14-01995-AB |
| | No. 14-03383-AB |
| *LEWIS et al., v. KANSAS CITY CHEIFS FOOTBALL CLUB, INC.,* | No. 14-03382-AB |
| and | No. 14-04779-AB |
| *SMITH et al., v. KANSAS CITY CHIEFS FOOTBALL CLUB, INC.,* | MDL No. 2323 |
| and | |
| *HORN, et al. v. KANSAS CITY CHIEFS FOOTBALL CLUB, INC.* | |
| and | |
| *KENNEY, et al. v. KANSAS CITY CHIEFS FOOTBALL CLUB, INC.* | |

## REPLY IN SUPPORT OF MOTION # 6660 (AMENDED MOTION TO REMAND)

Kenneth B. McClain
Lauren E. McClain
Timothy J. Kingsbury
HUMPHREY, FARRINGTON & MCCLAIN
221 West Lexington, Suite 400
Independence, MO 64051
Telephone: (816) 836-5050
Facsimile: (816) 836-8966

Paul D. Anderson
Andrew Schermerhorn
John Klamann
THE KLAMANN LAW FIRM
4435 Main, Ste. 150
Kansas City, MO 64111
Telephone: (816) 421-2626
Facsimile:  (816) 421-8686

Wm. Dirk Vandever
THE POPHAM LAW FIRM
712 Broadway, Suite 100
Kansas City, Missouri
Telephone: (816) 221-2288
Facsimile: (816) 221-3999

Plaintiffs, by and through their undersigned counsel, respectfully submit this reply in support of their Amended Motion to Remand.

## Preliminary Statement

This Court ordered that Movants file an amended Motion to Remand limited to addressing why the issue of preemption with respect to Movants' claims differs from and should be considered separate and apart from the issue of preemption previously briefed and considered by the Court in connection with the Motion to Dismiss. After inquiry by counsel for the Kansas City Chiefs (hereinafter referred to as the "Chiefs" or "Defendant"), the Court reiterated that Plaintiffs' Amended Motion to Remand "must only address the question of whether the Plaintiffs' Claims should be heard first." (ECF No. 6710.)  Therefore, Plaintiffs limited their memorandum solely to the question of whether their Motion to Remand (ECF No. 6660) should be considered first and without further delay.

In summary, Movants asserted that because they chose to pursue claims against their *former employer* grounded *solely* in the unique substantive rights granted them under Missouri state law, the preemption analysis will necessarily differ from that which the Court will undertake in deciding the Motion to Dismiss. The reason for this is simple; in the MAC, it is repeatedly asserted that the NFL violated duties arising as a result of its *assumed* and *voluntary* undertaking to study the issue of mild traumatic brain injury. Since the NFL did not directly employ those whose claims are asserted in the MAC, it is not alleged that the duty owed by the NFL arose as a result of the ordinary common law duty to exercise reasonable care in providing a safe workplace. Thus, in deciding the Motion to Dismiss, the Court will necessarily have to look elsewhere, beyond the ordinary employer-employee relationship, to determine first, the source of the duties alleged in the MAC and, second, whether the scope of those duties can be

measured without having to interpret the provisions of a collective bargaining agreement ("CBA").

Movants, on the other hand, assert that the Chiefs have violated duties arising as a result of an ordinary common-law duty to provide a safe workplace. Movants have sued their ***former employer*** and invoke ***only*** those duties prescribed by state law**.** In accord with *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987); *Kline v. Sec. Guards, Inc.*, 386 F.3d 246 (3d Cir. 2004); *Stellar v. Allied Signal, Inc.*, 98 F. Supp. 3d 790, 802 (E.D. Pa. 2015); *McNeal v. ArcelorMittal USA, Inc.*, No. CV 15-03517, 2015 WL 7014654, at *8 (E.D. Pa. Nov. 12, 2015)("*McNeal I*"); *McNeal v. Arcelormittal USA, Inc., No*. CV 15-03517, 2015 WL 9489590, at *2 (E.D. Pa. Dec. 29, 2015)("*McNeal II*"); and *Green v. Arizona Cardinals Football Club LLC*, 21 F. Supp. 3d 1020, 1027-28 (E.D. Mo. 2014); Movants have elected to vindicate their interests by bringing a state court action. Therefore, the Court need not search for the source or the scope of the duties alleged—the sole source of the duty is the ordinary common-law duty to provide a safe workplace and the scope of the duty is determined solely by reference to Missouri state law. *Stellar*, 98 F. Supp. 3d at 798 ("The duty to provide a safe work environment preceded and exists independent of the CBAs."); *Green*, 21 F. Supp. 3d at 1027-28 ("[H]ere the duties arise out of the common law based upon the employer-employee relationship and not out of any particular terms in the CBAs."); *McNeal I*, 2015 WL 7014654, at *6 ("[T]he duty at issue here—a parent company's duty to maintain a safe work environment for a subsidiary's employees—is a duty that precedes and stands independent of the CBA[.]").

This distinction is critical. As the Third Circuit recognized in *Kline*, the Supreme Court's decision in *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987), "holds that an ***employee*** has the option of vindicating his interests by seeking a remedy available under a collective-bargaining

agreement *or* by bringing a state court action[.]" 386 F.3d 246, 258 (3d Cir. 2004)(emphases added). *See also Caterpillar*, 482 U.S. at 396 ("Caterpillar's basic error is its failure to recognize that a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights independent of that agreement[.]"); *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25 (1913) ("Of course the party who brings a suit is master to decide what law he will rely upon"); *McNeal II*, 2015 WL 9489590, at \*2 (E.D. Pa. Dec. 29, 2015)("Plaintiffs may maintain their claim pursuant to an independent common law cause of action separate and apart from the CBA."); *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 305-06 (3d Cir. 2014)(observing that when a state law claim exists independent of a CBA, the state law claim is not preempted by § 301); *DiPilato v. Commonwealth Ass'n of Sch. Administrators, Local 502*, 588 F. Supp. 2d 631, 634 (E.D. Pa. 2008)("[T]he *Caterpillar* Court held that the claims in that case were not completely preempted because, even though respondents could have brought suit under the collective agreement, they chose not to."); *McNeal II*, 2015 WL 9489590, at \*2 ("[P]arallelism between the duties in the CBA and the duties allegedly breached does not render the state-law analysis dependent upon the contractual analysis.")(quotation omitted). Movants, as former *employees* of the Chiefs, have chosen to vindicate their interests by bringing a state court action.

The Chiefs, however, insist that this distinction is meaningless. ECF No. 6719, at p. 4 ("But that 'difference' is immaterial."). According to the Chiefs, it makes no difference whatsoever that Movants' claims invoke only those duties prescribed by state law and are made against their former employer. The Chiefs insist that the preemption analysis is the same *regardless* of the source of the duties alleged. Defendant is clearly wrong. The source of the duty is plainly pivotal in determining *the source* of the duty and is no less pivotal in determining

whether there is some substantial interpretive dispute over the *scope* of the duty alleged. The Chiefs completely avoid this obvious distinction between Movants' claims and those asserted in the MAC. Instead, Defendant's opposition ignores or wholly misconstrues relevant law counter to its untenable assertion, bemoans a decision by the Eastern District of Missouri and, in contravention of the Court's order, degenerates into an argument about how Movants' claims are preempted.

Defendant gives especially short shrift to the fact that Movants have challenged this Court's jurisdiction over their claims. But this distinction is *most significant*. The jurisdictional grant of Section 301 is unquestionably narrower in scope than its ordinary preemptive reach. *More* is required to establish jurisdiction than is necessary to establish an affirmative defense. *McNeal I*, 2015 WL 7014654, at *2 ("The defendant's right to remove and the plaintiff's right to choose the forum are not equal[.]" (citing 16 James Wm. Moore et al., Moore's Federal Practice § 107.05 (3d ed. 2003))). In other words, the standard against which this Court will decide the Motion to Dismiss differs from the standard against which it will decide the Motion to Remand. The Chiefs say nothing of this despite the NFL's prior admission that "[t]he standard for complete preemption [subject-matter jurisdiction] is *higher* than that for ordinary preemption [affirmative defense]." (ECF No. 4252, p. 17)(emphasis added).

Finally, the Chiefs insist that there is no valid support for Movants' request that their Motion to Remand be decided now, without any further delay. "It is axiomatic," however, "that a court's *first order of business* is to determine if it has jurisdiction to entertain an action." *Chas. Kurz Co. v. Lombardi*, 595 F. Supp. 373, 376 (E.D. Pa. 1984)(emphasis added). "This principle is *so* fundamental that the court may consider jurisdiction at any time by suggestion of the parties or *sua sponte*." *Id.* (emphasis added). The time is now.

For the reasons set forth below, Movants respectfully request that the Court finally decide, forthwith, Movants' Motion to Remand. (12-md-02323, Doc. No. 6660).

## ARGUMENT

Movants remain mindful of the Court's order that they only address the question of whether their Motion to Remand should be heard first. Movants are compelled, however, to respond to each of the arguments made by the Defendant in its Opposition.

**I.     Movants' Claims are *Factually* Different than those Asserted in the Amended Master Administrative Long-Form Complaint and Therefore Require that the Court Employ a Different Analysis.**

Defendant insists that despite having sued their employer for the violation of duties prescribed by state law, Movants' claims are no different from those asserted against the NFL. Defendant is wrong.

**A.     Defendant's Reliance on *Sherwin*, *Jeffers*, and *Duerson* is Misplaced**

Defendant relies on three wholly inapplicable cases that say nothing about the need or needlessness of addressing the issue or preemption separately as urged by Movants. Instead, each of the cases is cited for the proposition that Movants' claims *are preempted*. However, even in this regard, the cases are to no avail.

*First*, Defendant cites *Sherwin v. Indianapolis Colts, Inc*., 752 F. Supp. 1172 (N.D.N.Y. 1990). But in *Sherwin*, the plaintiff did not even contend that the club owed an independent duty arising out of the employer-employee relationship. *Id.* at 1178. Moreover, the Court in *Sherwin* explicitly relied on its interpretation of the relevant case law as requiring that only duties "owed to every person in society" can exist independent of CBA. *Id.* But this is clearly not the law in the Third Circuit or elsewhere. *See e.g., Kline*, 386 F.3d 246; *Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217 (3d Cir.1995); *Stellar,* 98 F. Supp. 3d at 802; *McNeal I*, 2015 WL

7014654; *McNeal II*, 2015 WL 9489590.

 **Second**, Defendant cites *Jeffers v. D'Allessandro*, 199 N.C. App. 86, 92 (2009). But in *Jeffers,* the plaintiff *explicitly* relied on the provisions of a CBA as the source of the duty alleged. *Id.* at 92. *Jeffers* is therefore wholly inapplicable.

 **Finally**, Defendant cites *Duerson v. Nat'l Football League*, No. 13 C 2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012). But *Duerson* was a wrongful death case asserted against the NFL and a helmet manufacturer, ***neither of which was decedent's employer.*** Thus, *Deurson* is inapposite.

 In sum, none of the three cases relied upon by the Chiefs are even remotely applicable.

 **B.**  **Defendant's Reliance on *Gore* is Misplaced**

 Next, Defendant turns to its assertion that under Missouri law, an employer's common-law duties are negotiable. Movants are at a loss. This question—whether the duties owed under Missouri common law are negotiable or not—clearly evidences the need to consider Movants' claims separately and apart from those asserted in the MAC, which allege nothing with regards to Missouri's common law. Moreover, *Gore v. Trans World Airlines*, 210 F.3d 944 (8th Cir. 2000), says nothing about the need or needlessness of addressing the issue or preemption separately as urged by Movants. *Gore*, like *Sherwin*, *Jeffers*, and *Duerson*, is completely inapposite.

 **First**, *Gore* did not involve a challenge to the court's subject-matter jurisdiction. Therefore, the court was not called upon to apply the *higher* standard applicable to complete preemption. *Id.* **Second**, Defendant misinterprets *Gore*.

### 1.   The Common-Law Duties Owed by an Employer *are* Non-Negotiable

In *Gore*, the Eight Circuit stated in *dicta* that, under Missouri law, "[e]mployers and employees are free to negotiate what actions an employer *may* take to preserve the safety … of the workplace and … employees." 210 F3d at 950 (emphasis added). This may be true. In the State of Missouri, employers may be free to negotiate what actions they *may take* to preserve a safe workplace. They **may not**, however, negotiate what actions they **must take**. *Charlton v. St. Louis & S.F.R. Co*., 200 Mo. 413, 98 S.W. 529, 536 (1906).

In Missouri, an employer *must* "exercise reasonable care, commensurate with the nature of the business, to protect his servant from the hazards incident to it." *Id.* Significantly, "[t]his duty the law imposes on the master, and will not allow him to cast it off. It is contrary to public policy to allow the master to relieve himself by contract from liability for his own negligence." *Id. See also Blanton v. Dold*, 109 Mo. 64, 18 S.W. 1149, 1151 (1892)("An express contract, in most solemn form, by an employe[e], exempting his master from liability for negligence in the performance of his personal duties towards the former, has been often declared in American courts illegal, its subject-matter being considered as contrary to a sound public policy.").[1]

In other words, in the State of Missouri, though an employer may negotiate what actions they *may* take to preserve a safe workplace, any such negotiation will invariably consist only of *additional duties* arising independent of the non-delegable **and non-negotiable** duty to maintain a safe workplace. This is because in Missouri, the common-law "duty of the master to exercise

---

[1] Missouri's Workers' Compensation Law was adopted by the legislature in 1925, approved by the voters of Missouri in 1926, and became effective in 1927. *See Bethel v. Sunlight Janitor Service,* 551 S.W.2d 616, 618 (Mo.1977); *Wengler v. Druggists Mut. Ins. Co.,* 583 S.W.2d 162, 164 (Mo.1979). The pre-2005 exclusivity of the workers' compensation administrative remedy effectively silenced expression by Missouri courts of the non-negotiable nature of the duties owed by employers. Thus, though the case law describing the nature of the common law duties owed by an employer in the State of Missouri are dated, they are no less precedential.

reasonable care, commensurate with the nature of the business, to protect his servant from the hazards incident to it," is **not** negotiable. *Id.* But whatever the case, *Gore* is inapposite.

### 2.    Gore is Inapposite

In *Gore*, plaintiff was a former airline employee accused of having made death threats against his coworkers. After another employee reported that Gore had made threats, Gore was detained, his locker was searched, co-employees were warned, and he was prevented from returning to work. 210 F.3d. at 947. Gore brought claims against his former employer for false arrest, libel and slander, invasion of privacy, and negligence. *Id.* Gore, however, had previously entered a CBA that included contractual provisions prohibiting threats against employees, reserving for the airline the right to inspect employee lockers where there was "reason to believe" they contained contraband, and requiring the airline to protect the safety of its employees and promptly handle safety complaints. *Id.* at 947–98. Gore's negligence claim—that the airline employees negligently investigated the threat—was preempted, under the Railway Labor Act, because the CBA was the **sole** source of the duty allegedly breached. *Id.* at 951. Gore's other claims were similarly reliant upon the CBA. For example, as part of his false arrest claim, Gore had to prove that the airline acted "without legal justification." *Id.* at 950. In other words, Gore had to defeat an affirmative defense *in order to state a claim. Id.* Therefore, each of Gore's claims was either created by or dependent upon an interpretation of the CBA. *See id.* at 951.

In *Green*, a case the Defendant derides, the District Court for Eastern District of Missouri considered *Gore* in deciding a motion to remand that, in all relevant respects, is identical to Movants' motion. In *Green*, three former NFL players sued the Arizona Cardinals Football Club, LLC, corporate successor of the St. Louis Football Cardinals, Inc.  (hereinafter the "Cardinals").

*Green*, 21 F. Supp. 3d at 1027. In deciding whether the claims were completely preempted, the Court in *Green* considered *Gore*, but found it distinguishable. "Unlike the negligence claim in *Gore*, here the duties arise out of the common law based upon the employer-employee relationship and not out of any particular terms in the CBAs." *Green*, 21 F. Supp. 3d at 1028. In arriving at this conclusion, the Court considered the various provisions of the relevant CBAs offered by the Cardinals and found that none provided the source of the duty alleged and that none required interpretation in order to resolve a substantial dispute between the parties over the meaning of a CBA. *Green*, 21 F. Supp. 3d at 1027. The same can be said of the CBA provisions upon which the Chiefs rely.

### C.     None of the Provisions Offered by the Chiefs Require Interpretation to Resolve a Substantial Dispute

The Chiefs identify four CBA provisions which it contends trigger complete preemption. Put another way, the Chiefs assert that the following four provisions *require* interpretation. *See Antol v. Esposto*, 100 F.3d 1111, 1124 (3d Cir.1996)("In order to determine whether a party's state law claim is preempted per section 301, we look to see whether resolution of the claim depends on the meaning, or requires the interpretation of, a collective bargaining agreement."); *DiPilato v. Commonwealth Ass'n of Sch. Administrators, Local 502*, 588 F. Supp. 2d 631, 634 (E.D. Pa. 2008)(same). More than that, the Chiefs insist that the following four provisions are the subject of a substantial interpretive dispute. *See Kline*, 386 F.3d at 258 ("When the meaning of contract terms is not the subject of dispute, the bare fact that a collective bargaining agreement will be consulted in the course of state law litigation plainly does not require the claims to be extinguished." (quotation omitted)).

As evidenced by the provisions, themselves, Defendant is clearly wrong.

### 1.      Article XVIV, § 1 of the 1993 NFL CBA

The Chiefs first insist that Article XVIV, § 1 of the 1993 NFL CBA ("Players' Rights to Medical Care and Treatment") requires interpretation. Section 1 states, in its entirety, the following:

> Each Club will have a board-certified orthopedic surgeon as one of its Club physicians. The cost of medical services rendered by Club physicians will be the responsibility of the respective Clubs. If a Club physician advises a coach or other Club representative of a player's physical condition which adversely affects the player's performance or health, the physician will also advise the player. If such condition could be significantly aggravated by continued performance, the physician will advise the player of such fact in writing before the player is again allowed to perform on-field activity.

(12-md-02323, ECF No. 3589-30).

This section imposes an obligation on the Club to "have a board-certified orthopedic surgeon as one of its Club physicians." *Id*. But Movants are not suing their former employer for failing to employ a board-certified orthopedic surgeon. Nor is there any dispute over the meaning of this provision.

The section also obliges Clubs to pay the cost of medical services rendered by Club physicians. But Movants are not suing the Chiefs for failing to pay for the costs of medical services rendered by a Club physician and Movants cannot conceive of a substantial dispute as to the meaning of this provision.

The section also requires that, in the event a Club physician reports an adverse physical condition to a coach or other Club representative, the physician must also advise the player of the same. But Movants are not suing the Chiefs for the failing to ensure that Club physicians advise them of an adverse physical condition reported to a coach or other Club representative and nothing in this provision requires interpretation.

Finally, the section mandates that in the event a Club physician determines that an

adverse condition could be significantly aggravated by continued performance, the physician will advise the player of such fact in writing before the player is again allowed to perform on-field activity. But Movants are not suing the Chiefs for failing to ensure that Club physicians apprise them, in writing, of the potential aggravating effects of continued on-field activity relating to an adverse physical condition reported by a physician to a coach or other Club representative nor is there a substantial dispute regarding the meaning of this provision.

In short, nothing in Article XVIV, § 1 of the 1993 NFL CBA even comes close to giving rise to a substantial interpretive dispute in need of resolution. The provision simply reveals the existence of *additional duties*, having nothing to do with the common-law claims asserted by Movants. Indeed, the provision says *nothing* about the common-law duties owed by the Chiefs. At most, the provision may be consulted, but "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Kline*, 386 F.3d at 254.

### 2.    Article XVII of the 1980 Supplement to the NFL Constitution

Next, the Defendant cites Article XVII of the 1980 Supplement to the NFL Constitution. But Article XVII deals solely with the management of a member club's "Reserve/Injured" list. (*See* 12-md-02323, ECF No. 3589-95.) In order to ensure that teams do not evade roster limits, member clubs are required by Article XVII to rely on medical staff, in accordance with club standards, to determine "as precise as possible" a player's recovery time. Clearly, nothing in Article XVII gives rise to or alters the common-law duty to provide a safe workplace, nor does the provision require interpretation to resolve a substantial dispute. The *additional duty* imposed on member clubs by operation of Article XVII is simply irrelevant to Movants' claims.

11

### 3. Appendix C, § 9, of the 1993 CBA

Next, the Chiefs cite to Appendix C, § 9, of the 1993 CBA. Section 9 provides, in pertinent part: "if Player is injured in the performance of his services under this contract and promptly reports such injury to the Club physician or trainer, then Player will receive such medical and hospital care during the term of this contract as the Club physician may deem necessary…." (12-md-02323, ECF No. 3589-31.) In other words, Section 9 assures players that to the extent a Club physician deems it necessary, they will receive medical and hospital care.

Movants, however, do not allege that the Chiefs denied them the medical and hospital care a Chiefs' physician deemed necessary. This provision is wholly irrelevant. But even if Movants had alleged that the Chiefs denied them the care a club physician deemed necessary (they don't), nothing in Section 9 is even arguably subject to an interpretive dispute.

### 4. Article XXXI, § 2 of the 1982 CBA

Finally, Defendant cites Article XXXI, § 2 of the 1982 CBA. (12-md-02323, ECF No. 3589-13.) Section 2 of Article XXXI states that:

> All full-time head trainers and assistant trainers hired after the date of execution of this Agreement will be certified by the National Athletic Trainers Association. All part-time trainers must work under the direct supervision of a certified trainer.

Movants are not suing the Chiefs for failing to employ "certified" trainers. Nothing in Article XXXI bears on the source or the scope of the duties alleged.

In sum, not one of the provisions relied upon by the Chiefs support its assertion that Movants' claims are completely preempted. But more to the point, that the Court may consider these provisions twice—once when deciding the Motion to Remand and once when deciding the Motion to Dismiss—does not necessitate the joining together of the briefing and hearing on the Motion to Remand and the Motion to Dismiss.

C.    *Green* was Rightly Decided and Supports Movants' Claim that their Motion to Remand be Decided Swiftly and Separately from the Motion to Dismiss

The Chiefs accuse the District Court for the Eastern District of Missouri of "conflating" the claims of those who were bound by a CBA with those who were not. But this is wrong.

As stated above, in *Green*, three former professional football players and their wives brought claims against the Cardinals. The Cardinals removed the action on the grounds that plaintiffs' claims were completely preempted by § 301. 21 F. Supp. 3d 1020. The Cardinals argued that any duties owed to the players by the team, and the degree to which its discharge of those duties was reasonable, must be determined by interpreting a Collective Bargaining Agreement (a "CBA"). *Id.* at 1024. Plaintiffs countered that the Cardinals, as their employer, owed them duties grounded solely in the substantive rights granted them under Missouri state law. *See id.* The court agreed with plaintiffs: "Plaintiffs' negligence claims," the court held, "are premised upon the common law duties to maintain a safe working environment, not to expose employees to unreasonable risks of harm, and to warn employees about the existence of dangers of which they could not reasonably be expected to be aware." *Id.* at 1027. These duties, the court observed, "exist independent of the CBAs." *Id.* at 1028. Likewise, the court held that "[a]s with their negligence claims, the plaintiffs' negligent misrepresentation and fraudulent concealment actions arise independent of the CBAs as a function of the common law and thus are not preempted." *Id.* at 1030.

With respect to their negligence claims, in particular, the court observed that plaintiff Edward Scott's claims *cannot* depend upon an interpretation of a CBA, since one never bound Scott. That being said, Scott could nevertheless assert claims of negligence against the Cardinals on the basis of the common law duties owed to him by operation of Missouri's common law. "It stands to reason, then," the court observed, "that the other plaintiffs' negligence claims do not

*necessarily* depend upon an interpretation of the CBAs[.]" *Id.* at 1029 (emphasis added). This observation is the logical and necessary conclusion of *Caterpillar*.

*Caterpillar* "stand[s] for the proposition that employees have the option of vindicating their interests by means of either a section 301 action or an action brought under state law, as long as the state-law action as pleaded does not require interpretation of the collective bargaining agreement." *Kline*, 386 F.3d at 253. *See also The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25 (1913) ("Of course the party who brings a suit is master to decide what law he will rely upon"); *McNeal II*, 2015 WL 9489590, *2 ("parallelism between the duties in the CBA and the duties allegedly breached does not render the state-law analysis dependent upon the contractual analysis)(internal quotation omitted). That Scott *must* pursue his claims without reliance upon or interpretation of a CBA, it follows that others *may* pursue their claims without reliance upon or interpretation of a CBA. So far as the duties owed derive from the same common-law source as for Scott, it necessarily follows that the others may choose to vindicate their interests by the same means. *Green*, 21 F.Supp.3d at 1029-30. *See also Caterpillar,* 482 U.S. at 398-99 ("the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court.").

The same, of course, is true here. Movants have the option of vindicating their interests by means of either a section 301 action or an action brought under state law and, by relying exclusively on state law, Movants may avoid federal jurisdiction. *Id. See also DiPilato*, 588 F. Supp. 2d at 634 ("Without allegation of a collective bargaining agreement, section 301 does not completely preempt a party's state law claims and therefore does not provide a basis for federal question jurisdiction.")

Moreover, it would not suffice if the facts alleged in support of Movants' asserted state-

law claims *do not support* the claim alleged and would *only* support a federal claim. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 12 (2003)(Scalia, J., dissenting). "Jurisdiction may not be sustained on a theory that the plaintiff has not advanced." *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 809, n. 6 (1986). In other words, *even if* the Chiefs were right that its common-law duties to Movants were altered by operation of an applicable CBA, Defendant will *not* have established a basis for removal. Rather, it would be a defense to liability since the operation of the CBA would be a 'reason why the plaintiff should not recover.'" *Green*, 21 F. Supp. 3d at 1029 (citing DEFENSE, *Black's Law Dictionary* (9th ed.2009) (quoting Edwin E. Bryant, *The Law of Pleading Under the Codes of Civil Procedure* 240 (2d ed. 1899)).

In sum, *Green* was *rightly* decided and makes clear the need to consider Movants' Missouri-based common-law employment claims separately.

### D. *Stellar* and *McNeal* Supports Movants' Claim that their Motion to Remand be Decided Swiftly and Separately from the Motion to Dismiss

The Chiefs insist the two recent cases decided by this Court are silent as to the common-law duties owed by an employer in the State of Missouri. Movants do not dispute this. Movants will not repeat the significance of *Stellar* or *McNeal I*. Their precedential value is self-evident. However, Movants would be remiss not to inform the Court of further developments in *McNeal*.

After receipt of the remand order issued by Judge Pappert, the defendants in *McNeal* filed a motion for reconsideration. *McNeal II*, 2015 WL 9489590, at *1. The defendants argued that Judge Pappert wrongly decided that plaintiffs' claims do not require interpretation of a CBA. *Id.* at 2. According to the defendants, plaintiffs' claims necessarily required the interpretation of the CBA as each one of the duties alleged had "been negotiated and agreed upon by the parties to the CBA." *Id.* The Court found this argument unavailing.

"[P]arallelism between the duties in the CBA and the duties allegedly breached," the

Court held for a second time, "does not 'render the state-law analysis dependent upon the contractual analysis." *Id.* Quoting *McNeal I*, 2015 WL 7014654, at *7 (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 408–09 (1988)). Defendants, however, urged that "the parties to the CBA expressly defined their respective duties and obligations concerning the above functions, safety and work place conditions." Judge Pappert held that such was not enough to refute "the critical precept articulated by the Third Circuit Court of Appeals" and discussed in the Court's prior order that "employees have the option of vindicating their interests by means of either a section 301 action *or* an action brought under state law, as long as the state-law action as-pleaded does not require interpretation of the collective bargaining contract." *Id.* Citing *Voilas v. Gen. Motors Corp.*, 170 F.3d 367, 373–74 (3d Cir 1999) (emphasis added by Judge Pappert). "[T]he key inquiry," Judge Pappert held, "is not whether Plaintiffs' claims 'relate to a subject...contemplated by the CBA....Rather, the dispositive question here is whether [Plaintiffs'] state claims require *any interpretation* of a provision of the CBA.'" *Id.* Quoting *Kline*, 386 F.3d at 255–56 (3d Cir. 2004)(emphasis in original). In other words, the negotiability of duties contemplated by a CBA does *not* render common-law based claims dependent upon the negotiated contract.

The Chiefs repeat the same fallacy as asserted by the defendants in *McNeal II*—that parallelism between the CBA and the complaint must mean Section 301 preemption. But the Third Circuit has rejected this false notion. *See, McNeal II*, 2015 WL 9489590, at *2; *Kline*, 386 F.3d at 255–56; *Stellar v. Allied Signal, Inc.*, 98 F. Supp. 3d 790, 802 (E.D. Pa. 2015). Plaintiffs may clearly maintain their claims pursuant to an independent common-law cause of action separate and apart from the CBA. "That is sufficient to defeat Section 301 preemption." *McNeal II*, 2015 WL 9489590, at *2.

## II.   Movants' Claims are *Procedurally* Different than those Asserted in the Amended Master Administrative Long-Form Complaint that Requires that they be Considered at this Time.

In addition to the above, Movants' claims are also in a vastly different procedural posture.

At the outset, "[t]he complete-preemption doctrine must be distinguished from ordinary preemption, also known as defensive preemption." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005). "Ordinary," "defensive" or "substantive" preemption "may be invoked in both state and federal court as an affirmative defense to the allegations in a plaintiff's complaint. Such a defense asserts that the state claims have been substantively displaced by federal law." *Geddes v. Am. Airlines, Inc.*, 321 F.3d 1349, 1352 (11th Cir. 2003)(citing *Caterpillar,* 482 U.S. at 392). "Complete preemption, on the other hand, is a doctrine distinct from ordinary preemption. Rather than constituting a defense, it is a narrowly drawn jurisdictional rule for assessing federal removal jurisdiction when a complaint purports to raise only state law claims." *Id.*

The NFL's Motion to Dismiss asserts that the claims asserted in the MAC have been substantively displaced by federal law. That is the crux of the motion. It is a motion to dismiss on the basis of "ordinary" or "defensive" preemption. There is no disputing this.

In opposing Movants' Motion to Remand, on the other hand, the Chiefs raise the doctrine of "complete" preemption. The Chiefs raise preemption *for jurisdictional purposes*. This critical distinction is lost on the Chiefs. In fact, the Chiefs insist that the NFL's Motion to Dismiss "does *not* assert preemption as a *defense*." (ECF No. 6719, at 13.) This is obviously wrong. There is no disputing that the doctrine of complete preemption is complex. As Judge Robreno observed, "one respected authority has alluded to the complexity of complete preemption by calling it 'a doctrine only a judge could love,' further stating that it is 'a darling of judges but a bane of

17

practice.'" *Jacob v. SmithKline Beecham*, 824 F. Supp. 552, 555, fn. 5 (E.D. Pa. 1993)(quoting *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1075 (7th Cir.1992) (Easterbrook, J.)). But the parties and the Court are obliged to resist the temptation to conflate the jurisdictional doctrine of "complete preemption" with "ordinary preemption."  Indeed, failure to do so might needlessly lead to error. *See Joyce v. RJR Nabisco Holdings Corp.*, 126 F.3d 166, 171 (3d Cir. 1997)("The district court in this case erred in failing to distinguish between the complete preemption doctrine for jurisdictional purposes and ordinary preemption, which merely constitutes a defense to a state law cause of action."). *See also Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 355 (3d Cir. 1995)("The difference between preemption and complete preemption is important."); *Greenawalt v. Philip Rosenau Co.*, 471 F. Supp. 2d 531, 533 (E.D. Pa. 2007)("Complete preemption is not to be confused with "ordinary" preemption."). Thus, Movants strongly urge against the joining together of the briefing and hearing on the Motion to Remand and the Motion to Dismiss.

Finally, the Chiefs resist Movants' request that their Motion to Remand be decided without further delay. According to the Chiefs, there is no valid reason for the Court to determine, as soon a practical, whether it has jurisdiction. But "[i]t is axiomatic that a court's *first order of business* is to determine if it has jurisdiction to entertain an action."  *Chas. Kurz Co. v. Lombardi*, 595 F. Supp. 373, 376 (E.D. Pa. 1984)(emphasis added). "This principle is *so fundamental* that the court may consider jurisdiction at any time by suggestion of the parties or *sua sponte*." *Id.* (emphasis added). The Chiefs offer no just reason for delay.

## <u>CONCLUSION</u>

For the reasons provided herein and in their previously filed memoranda (ECF Nos. 6660, 6672, and 6712), Movants respectfully request that the Court enter an order remanding the above-captioned cases and requiring that the Kansas City Chiefs pay just costs and actual expenses, including attorney fees, in accordance with 28 U.S.C. § 1447(c).

Respectfully submitted on January 25, 2016.

<div style="margin-left: 40%">

THE KLAMANN LAW FIRM, P.A.

<u>   /s/ Andrew Schermerhorn  </u>
Paul D. Anderson, MO     #65354
Andrew Schermerhorn, MO  #62101
John M. Klamann, MO     #29335
4435 Main Street, Ste. 150
Kansas City, MO 64111
Telephone: (816) 421-2626
Facsimile: (816) 421-8686
panderson@klamannlaw.com
ajs@klamannlaw.com
jklamann@klamannlaw.com


Kenneth B. McClain, MO    #32430
Lauren E. McClain, MO     #65016
Timothy J. Kingsbury, MO  #64958
HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 West Lexington, Suite 400
Independence, MO 64051
Telephone: (816) 836-5050
Facsimile: (816) 836-8966
kbm@hfmlegal.com


Wm. Dirk Vandever, MO    #24463
THE POPHAM LAW FIRM, P.C.
712 Broadway, Suite 100
Kansas City, MO 64105
Telephone: (816) 221-2288
Facsimile: (816) 221-3999
dvandever@pophamlaw.com

**ATTORNEYS FOR PLAINTIFFS**

</div>

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 25, 2016, I caused the foregoing to be filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel of record.

<div align="right">

/s/ <u>*Andrew Schermerhorn*</u>
Andrew Schermerhorn, MO

</div>