# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | **Hon. Anita B. Brody** |
| | No. 12-md-2323-AB |
| THIS DOCUMENT RELATES TO: | No. 16-cv-01704-AB |
| *SMITH et al., v. ARIZONA FOOTBALL CLUB, LLC* | MDL No. 2323 |

## <u>MOTION TO REMAND AND MEMORANDUM IN SUPPORT</u>

Kenneth B. McClain
Lauren E. McClain
Timothy J. Kingsbury
HUMPHREY, FARRINGTON & MCCLAIN
221 West Lexington, Suite 400
Independence, MO 64051
Telephone: (816) 836-5050
Facsimile: (816) 836-8966

Paul D. Anderson
Andrew Schermerhorn
John Klamann
THE KLAMANN LAW FIRM
4435 Main, Ste. 150
Kansas City, MO 64111
Telephone: (816) 421-2626
Facsimile:  (816) 421-8686

Wm. Dirk Vandever
THE POPHAM LAW FIRM
712 Broadway, Suite 100
Kansas City, Missouri
Telephone: (816) 221-2288
Facsimile: (816) 221-3999

Plaintiffs, by and through undersigned counsel, respectfully submit this Motion to Remand and Memorandum in Support.

## INTRODUCTION

Plaintiffs initially resisted transfer of their claims to MDL No. 2323 for fear that it would not support the just and efficient conduct of their claims. *See* 28 U.S.C. § 1407(a)(permitting transfers of actions "[for] just and efficient conduct of such actions"). Plaintiffs were particularly troubled by the protracted pendency of the Motion to Remand filed on behalf of the 23 former Kansas City Chiefs in *Lewis et al., v. Kansas City Chiefs Football Club, Inc.,* 14-01995-AB; *Smith et al., v. Kansas City Chiefs Football Club, Inc.*, 14-03383-AB; *Horn et al., v. Kansas City Chiefs Football Club, Inc.,* 14-03382-AB; and *Kenny et al., v. Kansas City Chiefs Football Club, Inc.,* 14-04779-AB (ECF Nos. 6660, 6712). The United States Judicial Panel on Multidistrict Litigation, however, found that transfer of this action would likely promote the just and efficient conduct of the litigation. (*See* ECF No. 6784.) Upon further consideration, Plaintiffs agree. The unique factual and legal issues presented by this case convincingly demonstrate the propriety of remand not only here, but also in *Lewis, Smith*, *Horn,* and *Kenny*. Efficiency can therefore be achieved by considering these cases together. Justice, however, will be achieved only if the pendency of these motions finally comes to an end.

While Plaintiffs would not ordinarily quarrel with the deferment of matters pending before the Court, Plaintiffs' Motion to Remand directly challenges the Court's jurisdiction over their claims. Thus, while a short delay may be in the normal course of proceeding, an indefinite suspension of claims over which the Court does not have jurisdiction assuredly falls outside the normal course of proceeding. Plaintiffs therefore strongly urge that the Court expedite its consideration of the Motion to Remand in this case as well as in *Lewis, Smith*, *Horn,* and *Kenny.*

## BACKGROUND

Plaintiffs in this case are two former professional football players and their wives who bring claims against the players' former employer, the National Football League team now known as the Arizona Cardinals Football Club, LLC, corporate successor of the St. Louis Football Cardinals, Inc. (hereinafter "Defendant" or the "Team"). Plaintiff John Thomas "J.T." Smith was employed by the Defendant between 1985 and 1987. Plaintiff Edward Scott was employed by the Defendant in late 1987.

As their employer, Defendant owed Plaintiffs duties under the common law that precede and exist entirely independent of a Collective Bargaining Agreement ("CBA"). Plaintiffs' claims arise out of and can be adjudged in accord with the common law. In fact, Defendant admits that since Scott was never employed at a time during which a CBA was in effect, his claims *must* arise and be adjudged independent of a CBA.[1]

Originally, Plaintiffs filed their claims in the Circuit Court of the City of St. Louis, Missouri and limited the scope of their claims to the period from September 1, 1987 to March 28, 1993 (the "gap period"), during which no CBA was in effect. Defendant, however removed Plaintiffs' claims to the United States District Court for the Eastern District of Missouri on the grounds that § 301 of the Labor Management Relations Act preempts Plaintiffs' state law claims.[2] Defendant argued that any duties owed to Smith by the Team, and the degree to which its discharge of those duties was reasonable, must be determined by interpreting a CBA.[3]

---

[1] *See* 4:15-cv-01903-JCH, ECF No. 21, pp. 3, 7, 9.
[2] *See Green v. Arizona Cardinals Football Club LLC*, 21 F. Supp. 3d 1020 (E.D. Mo. 2014).
[3] *Id.* at 1024.

Plaintiffs countered that by relying exclusively on Missouri state law, they could properly avoid federal jurisdiction.[4] Alternatively, Plaintiffs argued that because they had restricted their claims to the time during which no CBA was in effect, § 301 of the Labor Management Relations Act could not provide a jurisdictional anchor.[5]

In ruling on Plaintiffs' Motion to Remand, Judge Catherine D. Perry, Chief Judge of the United States District Court for the Eastern District of Missouri, considered both of Plaintiffs' contentions and found the second to be unavailing. The Court reasoned that "given that [Smith] [was] employed when CBAs were in effect and that [Plaintiffs] allege that symptoms of CTE may not appear until months, years, or even decades after the last traumatic impact[,]" Plaintiffs cannot claims to the gap period.[6] In other words, the Court decided that Plaintiffs' claims *necessarily* extend beyond the limited timeframe pleaded in Plaintiffs' First Amended Petition.[7]

However, as to Plaintiffs' first contention – that they could avoid federal jurisdiction by relying exclusively on Missouri state law, the Court agreed. "Plaintiffs' negligence claims," the Court ruled, "are premised upon the common law duties to maintain a safe working environment, not to expose employees to unreasonable risks of harm, and to warn employees about the existence of dangers of which they could not reasonably be expected to be aware."[8] The Court held that these duties "exist independent of the CBAs."[9] The same was said of Plaintiffs' negligent misrepresentation and fraudulent concealment causes of actions.[10]

---

[4] *Id. See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 398-99 (1987)("the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court.").

[5] *See Green*, 21 F. Supp. 3d. at 1026.

[6] *Id.* at 1026-27.

[7] *Id.* at 1026. In fact, the Court categorically held that J.T. Smith's claims "arose while the CBAs operated." *Id.*

[8] *Id.* at 1027.

[9] *Id.* at 1028.

[10] *Id.* at 1030.

The Court held also that Plaintiffs' claims can be *adjudged* through interpretation of Missouri's common law and that there existed no substantial dispute over the meaning of any terms of CBA, even assuming *reference* to a CBA is needed.[11] The Court therefore remanded Plaintiffs' claims to the Circuit Court from which it was removed.[12]

Significantly, at the time of her ruling, Judge Perry was fully aware of the premises. The Court observed, for example, that Plaintiffs were only employed with the Team during the period from 1985 through 1987.[13] It was clear on the face of the First Amended Petition, meanwhile, that Plaintiffs alleged that the Team's common law duty of disclosure extended from September 1, 1987 to March 28, 1993, or *for at least six years after the employer-employee relationship ended*. (*See* Plaintiffs' First Amended Petition, ECF No. 1-4, ¶¶ 46-47, 54-55, 57, 63-64.) And, contrary to Defendant's contention, rather than consider Plaintiffs' claims as if limited to the period of their employment, Judge Perry *expanded* the relevant period of Plaintiffs' claims even further, announcing that Plaintiffs claims did not end on March 28, 1993.[14] Thus, when the Court decided that Plaintiffs could avoid federal jurisdiction by relying exclusively on Missouri state law, the decision was premised on Plaintiffs' claims extending well beyond the period of their employment.

However, after remand, Defendant moved to dismiss Plaintiffs' First Amended Petition on the grounds that each of Plaintiffs' claims is time-barred since Plaintiffs chose to limit their claims to the gap period. In light of the Court's decision and the premises upon which it was decided, Plaintiffs obtained the consent of the Defendant to file a Second Amended Petition so as

---

[11] *Id.* at 1029.
[12] *Id.* at 1030.
[13] *Id.* at 1023.
[14] *Green*, 21 F. Supp. 3d at 1026-27.

to remove the time limitation that Judge Perry had rendered a nullity.[15] Significantly, none of Plaintiffs' amendments allege *new* duties. Rather, Plaintiffs continue to pursue only those claims arising under the common law.

In fact, so as to remove any doubt, Plaintiffs specifically alleged that they were asserting the *very same* claims that Judge Perry had ruled were not preempted:

> 13. This is an action requesting relief solely under the common and statutory laws of the State of Missouri. *See Green v. Arizona Cardinals Football Club LLC*, 21 F.Supp.3d 1020 (E.D.Mo.2014). Plaintiffs' claims are premised upon the common law and do not arise from nor do they require the interpretation of a CBA. *See id.*

(*See* Plaintiffs' Second Amended Petition, ECF No. 1-12, ¶13.) Elsewhere in the Second Amended Petition, Plaintiffs repeatedly state that the duties upon which their claims are based arise *solely from the common law* and that their "right to rely" derives *solely from their status as employees* and not from any terms in the CBA.[16] It is therefore accurate to say that in all relevant respects, Plaintiffs' amended claims are *identical* to those considered in *Green*.

Nevertheless, Defendant tries differentiating the Second Amended Petition from the First by asserting that in their First Amended Petition, Plaintiffs limited their claims strictly to the period of their employment. (*See* Defendant's Opposition to Plaintiffs Motion to Remand, 4:15-cv-01903-JCH, ECF No. 21, at 6.) Defendant goes so far to say that Plaintiffs' First Amended Petition "did not allege post-employment wrongdoing," (*id*. at 11), and that "[a]t the time of [the Court's ruling in *Green*], Plaintiffs expressly limited their injuries to their period of

---

[15] Defendant also asserted that Plaintiffs' First Amended Petition failed to identify "*any* specific person associated with the Cardinals who allegedly had knowledge of a material fact concerning the risks of repetitive head trauma and yet, purposefully concealed it from them." (*See* Defendant's Memorandum in Support of its Motion to Dismiss, ECF No. 1-6, at p. 18.) Rather than file an opposition to the motion, Plaintiffs identified with specificity the persons associated with the Cardinals who Plaintiffs allege concealed the risks of repetitive head trauma.

[16] *See* Plaintiffs' Second Amended Petition, ECF No. 1-12, ¶¶ 2, 4, 7, 9, 21-24, 27, 34, 39.

employment." (*Id.* at 14.) But this is plainly wrong. Plaintiffs unequivocally asserted post-employment wrongdoing in their First Amended Petition. (*See* Plaintiffs' First Amended Petition, ECF No. 1-4, ¶¶ 46-47, 54-55, 57, 63-64.) And, even if they hadn't, the Court held that, as a matter of fact, Plaintiffs claims extended "months, years, or even decades after the last traumatic impact." *Green*, 21 F. Supp. 3d at 1026.

Defendant also claims that the addition of specific persons alleged to have breached the common-law duties, a level of specificity Defendant urged was lacking, "puts at issue" CBA provisions governing medical staff-player interactions. (*See* Defendant's Opposition to Plaintiffs Motion to Remand, 4:15-cv-01903-JCH, ECF No. 21, at 5.) This, too, is false. Defendant does not identify a single provision "put at issue" by Plaintiffs' innocuous reference to the Team's physicians, medical staff, and owner. Moreover, Plaintiffs do not allege the breach of any duties owed by *these* persons. Rather, Plaintiffs merely identify the Team's physicians, medical staff, and owner as those persons through whom *the Team* breached *its* duties. (*See* Plaintiffs' Second Amended Petition, ECF No. 1-12, ¶¶ 37, 46.)

In sum, Plaintiffs' Second Amended Petition asserts the exact same claims that were previously considered by Judge Perry and properly remanded.

That being said, the question of whether the Second Amended Petition differs from the first is a red herring. It is a ploy intended to distract the Court from the holding in *Green*. Judge Perry held that by relying exclusively on Missouri state law, Plaintiffs could properly avoid federal jurisdiction. *This is the law of the case*. Thus, the extent to which the Second Amended Petition differs from the First is entirely immaterial. From a removal perspective, this case is the same as it ever was. The same Plaintiffs have sued the same Defendant, alleging that Defendant breached the common law duties arising from the employer-employee relationship. Plaintiffs

bring the same legal claims and seek the same relief as sought previously. Precisely "nothing of significance has changed since the prior removal." *Hughes v. Mylan Inc.*, No. CIV.A. 11-5543, 2011 WL 5075133, at *6 (E.D. Pa. Oct. 25, 2011). To the extent Plaintiffs cannot recover under Missouri law, Defendant will be entitled to judgment. Plaintiffs' claims will not, as Defendant suggests, undergo metamorphosis. Plaintiffs continue to pursue only those claims arising under the Missouri common law which, in accord with the holding by Judge Perry *in this case*, stand independent of a CBA.

To be very clear, a court of coordinate jurisdiction has already ruled, *in this case*, that Plaintiffs may avoid federal jurisdiction by relying exclusively on Missouri state law. Since Plaintiffs continue to rely exclusively on Missouri state law in their Second Amended Petition, this case should be remanded forthwith and the Defendant be ordered to pay the just costs and expenses, including all attorney fees, incurred as a result of its improper removal.

<u>**ARGUMENT**</u>

**I.      The Law of the Case Doctrine and the Principle of Comity Mandate Remand**

In *Green*, Judge Catherine D. Perry held that Plaintiffs John "J.T." Smith and Edward Scott could choose to have their cause heard in state court by relying exclusively on the common law duties that arise out of employer-employee relationship. This is the law of the case.

In *Arizona v. California,* 460 U.S. 605 (1983), the Supreme Court noted:

> Unlike the more precise requirements of res judicata, law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.

*Id.* at 618 (citations omitted). The "[l]aw of the case rules have developed 'to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'" *Casey v. Planned Parenthood of Se. Pa.,* 14 F.3d 848, 856 (3d Cir.1994) (quoting 18 Charles A. Wright, Arthur R. Miller, Edward Cooper, *Federal Practice and Procedure* § 4478 at 788 (2d ed.1981)); *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009).

The law-of-the-case doctrine recognizes, as a matter of comity, that a successor judge should not lightly overturn the decision of her predecessor in a given case. *Fagan v. City of Vineland,* 22 F.3d 1283, 1290 (3d Cir.1994) (citations omitted). Accordingly, it has been said that a matter previously ruled upon should be revisited only in "extraordinary circumstances," as where, e.g.: 1) new evidence becomes available; 2) a supervening new law has been announced; or 3) the earlier decision was clearly erroneous and would create manifest injustice. *Tse v. Ventana Medical Systems, Inc.,* 123 F.Supp.2d 213, 221 (D.Del.2000) (citing *Schultz v. Onan Corp.,* 737 F.2d 339, 345 (3d Cir.1984)). *See also Al Tech Specialty Steel Corp. v. Allegheny Internat'l Credit Corp.,* 104 F.3d 601, 605 (3d Cir.1997) (discussing "exceptional circumstances"

1

which may justify a court's reconsideration of a prior ruling); *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d at 439.

The doctrine applies both to transfers from judge to judge in the same district, *see Fagan,* 22 F.3d at 1290, and to transfers from district to district, *Hayman Cash Register Co. v. Sarokin,* 669 F.2d 162, 165 (3d Cir.1982). However, "[a]dherence to law of the case principles is … more important … where the transferor judge and the transferee judge are not members of the same court," *Hayman*, 669 F.2d at 169, and "is particularly applicable to multidistrict litigation[.]" *Id.* (citation omitted).

If given their due consideration, the law of the case doctrine and the principle of comity preclude this Court from reconsidering the matter previously ruled upon by Judge Perry. ***First***, no additional evidence has become available rendering Judge Perry's decision contestable. In fact, all discovery in this and similar matters has been effectively stayed and Defendant did not cite to new evidence as the basis for its removal. ***Second***, no supervening new law has been announced to place in doubt the propriety of Judge Perry's decision. On the contrary, the continued development of the law, particularly in this district, *supports* rather than detracts from Judge Perry's decision. *See Stellar v. Allied Signal, Inc.*, 98 F. Supp. 3d 790, 798 (E.D. Pa. 2015)("The duty to provide a safe work environment preceded and exists independent of the CBAs."); *McNeal v. ArcelorMittal USA, Inc.*, No. CV 15-03517, 2015 WL 7014654, at *6 (E.D. Pa. Nov. 12, 2015)("*McNeal I*")("[T]he duty at issue here—a parent company's duty to maintain a safe work environment for a subsidiary's employees—is a duty that precedes and stands independent of the CBA[.]"); *McNeal v. Arcelormittal USA, Inc., No*. CV 15-03517, 2015 WL 9489590, at *2 (E.D. Pa. Dec. 29, 2015)("*McNeal II*")("Plaintiffs may maintain their claim pursuant to an independent common law cause of action separate and apart from the CBA. That

2

is sufficient to defeat Section 301 preemption."); *Roberts v. Spruce Manor Nursing & Rehab. Ctr.*, No. 14-CV-4338, 2016 WL 693486, at *3 (E.D. Pa. Feb. 22, 2016)("If state law provides a complete remedy for an employee, there is no pre-emption.").That Judge Robreno (in *Stellar*), Judge Pappert (in *McNeal I* and *McNeal II*), and Judge Ditter (in *Roberts*) each arrived at the same conclusion as Judge Perry is, if nothing else, compelling evidence that Judge Perry's decision has not been superseded by new and persuasive authority. ***Third***, the earlier decision was *not* clearly erroneous and would *not* create manifest injustice. On this point, Plaintiffs will expand.

### A.    The Decision in *Green* is Not Clearly Erroneous

In *Green*, Judge Perry held that Plaintiffs could choose to have their cause heard in state court by relying on the common law duties that arise as a result of the employer-employee relationship. This is precisely the same conclusion reached by the Third Circuit Court of Appeals in *Kline v. Security Guards, Inc.* 386 F.3d 246 (2004).

In *Kline*, the Third Circuit reaffirmed that in accord with Supreme Court's decision in *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987), employees have the option of vindicating their interests by means of *either* a section 301 action *or* an action brought under state law, as long as the state-law action as pleaded does not require interpretation of the collective bargaining agreement. 386 F.3d at 253. Indeed, although state claims may "relate to conduct that Defendants engaged in at Plaintiffs' workplace, those claims, as in *Trans Penn Wax* [*Corp. v. McCandless*, 50 F.3d 217, 228–30 (3d Cir.1995)]*,* are nonetheless grounded in substantive rights granted under state law." *Id.* at 256. Moreover, while the need may arise to consult a CBA, "it does not follow that their claims are completely preempted." *Id.* at 255. Thus, employees may avoid

federal subject matter jurisdiction by choosing only to pursue claims for the breach of duties arising out of the employer-employee relationship. *Id.* at 261.

This same conclusion was reached in this district by Judge Robreno (in *Stellar*), Judge Pappert (in *McNeal I* and *McNeal II*), and Judge Ditter (in *Roberts*). It should suffice to say that Judge Perry's decision in *Green* is not clearly erroneous. However, even if there remained any doubt, this Court has correctly stated "all doubts should be resolved in favor of remand." *Foster v. City of Philadelphia*, 826 F. Supp. 2d 778, 782 (E.D. Pa. 2011)(*quoting Boyer v. Snap–On Tools Corp.,* 913 F.2d 108, 111 (3d Cir.1990)).

For a far more thorough explanation of the doctrine of complete preemption and the soundness of Judge Perry's decision, the Court is referred to the memoranda accompanying the Motion to Remand filed on behalf of the 23 former Kansas City Chiefs which are incorporated as if fully set forth herein. (*See* ECF Nos. 6660 and 6712, incorporated by reference.)

### B.     The Decision in *Green* Does Not Work a Manifest Injustice

Even assuming Judge Perry erred in deciding the question of whether Plaintiffs could pursue their claims in state court, the decision does not work a manifest injustice against the Team. The result of the error, even assuming there was one, is that the Defendant will be made to litigate in a forum chosen by the Plaintiffs. This, of course, does not work a manifest injustice. Courts, including this one, recognize the "long-accepted practice of deferring to the Plaintiff's choice of forum by treating the Plaintiff as the master of his own complaint." *See e.g., Foster*, 826 F. Supp. 2d at 781.

## II.     Plaintiffs' Second Amended Petition Does Not Give Rise to Federal Jurisdiction

Setting aside the law of the case doctrine, Defendant asserts that "[f]ederal question jurisdiction exists under 18 U.S.C. § 1331 because Plaintiff Smith's *post-employment* negligent-

and fraudulent-misrepresentation claims necessarily arise (if they arise at all) out of the terms of the CBAs in effect during and after Plaintiff Smith's employment with the Cardinals in St. Louis; at a minimum his claims substantially depend upon an interpretation of those terms." (Opp. at 4 (emphasis provided by Defendant).) Defendant is wrong.

At the outset, Defendant willingly concedes that Plaintiff Scott's claims are <u>not</u> preempted.[17] The duties owed to Scott, Defendant concedes, necessarily arise independent of a CBA since Scott was never bound by one. Likewise, Defendant concedes that the scope of the duties owed to Scott, as well as the degree to which the discharge of those duties was reasonable, can be determined without interpretation of a CBA. Reason therefore dictates that Smith's claims *also* "do not *necessarily* depend upon an interpretation of the CBAs, so far as the duties owed [Smith] and the standards applied to [Smith's] claims derive from the same source as for Scott." *Green*, 21 F. Supp. 3d at 1028-29 (emphasis added). Defendant, however, avoids this logical and necessary conclusion by simply ignoring it.[18] The Court, however, cannot.

Accurately stated, Defendant's removal rests entirely on this Court finding that while Scott's post-employment negligent- and fraudulent-concealment claims arise independent of a CBA, Smith's do not. This finding, moreover, must be made in spite of Smith expressly asserting

---

[17] Defendant asserts, for example, only that "Plaintiff *Smith's* claims are substantially dependent upon interpretation of CBA provisions..." (*See* Defendant's Opposition to Plaintiffs Motion to Remand, 4:15-cv-01903-JCH, ECF No. 21, at 8 (emphasis added)). Elsewhere, Defendant states that "CBAs in effect after Plaintiff *Smith's* employment ended will require interpretation to determine whether the post-employment duties alleged by Plaintiffs arose from or require interpretation of provisions governing retired player benefits." (*Id.* at 9 (emphasis added)). Finally, Defendant concludes that "[b]ecause Plaintiff *Smith's* claims are substantially dependent on the interpretation of, or arise out of, CBAs, they are preempted by Section 301. (*Id.* at 10 (emphasis added)).
[18] Defendant also concedes that as a result of *Green*, claims for breaches committed during Smith's employment and Smith's claim for negligence is not preempted.

that his claims are based solely in the common law arising as a result of the employer-employee relationship. (SAP, ¶ 13.) This is asking too much.

It is well established that by relying exclusively on state law, both Scott *and* Smith may avoid federal jurisdiction. *Caterpillar,* 482 U.S. at 394–95. *See also The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25 (1913) ("Of course the party who brings a suit is master to decide what law he will rely upon"); *McNeal II*, 2015 WL 9489590, at *2 ("Plaintiffs may maintain their claim pursuant to an independent common law cause of action separate and apart from the CBA. That is sufficient to defeat Section 301 preemption."); *Roberts v. Spruce Manor Nursing & Rehab. Ctr.*, No. 14-CV-4338, 2016 WL 693486, at *3 (E.D. Pa. Feb. 22, 2016)("If state law provides a complete remedy for an employee, there is no pre-emption."); *Stellar*, 98 F. Supp. 3d at 798; *McNeal I*, 2015 WL 7014654, at *6.

Since Scott *must* rely exclusively on state law, it necessarily follows that Smith *may* elect to rely exclusively on state law. *Green*, 21 F.Supp.3d at 1029-30. *See also Caterpillar,* 482 U.S. at 398-99 ("the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court."). Moreover, it does not suffice that the facts alleged in support of an asserted state-law claim would *also* support a federal claim, because the well-pleaded complaint rule grants Smith the right to vindicate his interests by whichever means he chooses. By relying exclusively on state law, both Scott *and* Smith may avoid federal jurisdiction. *Id.*

Nor would it suffice if the facts alleged in support of Smith's asserted state-law claims *do not support* the claim alleged and would *only* support a federal claim. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 12 (2003)(Scalia, J., dissenting). "Jurisdiction may not be sustained on a theory that the plaintiff has not advanced." *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 809, n. 6 (1986). In other words, *even if Defendant were right* that its common-law

duties to Smith did not extend beyond the date of Smith's employment, Defendant will *not* have

established a basis for removal. Rather, it would be a defense to liability since the operation of

the common law would be a 'reason why the plaintiff should not recover.'" *Green*, 21 F. Supp.

3d at 1029 (citing DEFENSE, *Black's Law Dictionary* (9th ed.2009) (quoting Edwin E. Bryant,

*The Law of Pleading Under the Codes of Civil Procedure* 240 (2d ed. 1899)).

Still, despite the logical fallacy, Defendant argues that while Scott's claims are *not*

substantially dependent upon interpretation of CBA, Smith's negligent- and fraudulent-

misrepresentation claims are. (*See* Defendant's Opposition to Plaintiffs Motion to Remand, 4:15-

cv-01903-JCH, ECF No. 21, at 8.) Defendant asserts that for Smith, CBA provisions in effect

during his employment relating to player medical care and rulemaking require interpretation to

determine to what extent, if any, those duties extend *beyond* Smith's employment. (*Id.*) But this

makes no sense even if one is to ignore the absurdity of the assertion that Smith may not allege

the same common law claims as Scott.

There is no disputing that the Team owed a duty of disclosure to Smith during his

employment and that, while an employee, Smith's "'right to rely' derives from [his] status as

[an] employee[] and not from any terms in the CBA that would require a court's construction."

*Green*, 21 F. Supp. 3d at 1030. Smith merely asserts that the common law duty of disclosure,

which derives from his status as an employee, extends beyond his employment. Defendant, on

the other hand, insists that it does not. Resolution of this issue, however, will never, *under any*

*circumstance*, require the interpretation of a CBA. Instead, it is adjudged solely in accordance

with the common law of Missouri. *Green*, 21 F. Supp. 3d at 1029; *Caterpillar*, 482 U.S. at 394–

95. This is not to say that the Team is precluded from trying to establish that the CBA into which

Smith entered altered the duty of disclosure. "But even if that were the case, the terms of the

7

CBA would not be part of [Smith's] claims, which derive from and can be adjudged in accordance with standards set forth in the Missouri common law. Rather, they would be a defense to liability, since the operation of the CBAs would be a 'reason why the plaintiff should not recover.'" *Green*, 21 F. Supp. 3d at 102. But frankly, as shown below, Defendant does not seriously contend that the terms of a CBA give rise to or alter its post-employment duty of disclosure to Smith.

In its Notice of Removal, Defendant asserts that various provisions give rise to the duties alleged or give rise to a substantial interpretive dispute in need of resolution. As shown below, this is utterly false. Precisely none of the provisions give rise to claims alleged in the Second Amended Petition nor is there some substantial dispute over the meaning of any term. *See Kline*, 386 F.3d at 257; *see also Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994) ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.").

## 1. NFL CBA Art. XXXIV § 8 (1982)

Article 34, Section 8 of the 1982 CBA provides that "Subject to the limitations of ERISA, the Retirement Board will, by a vote of a majority (four) of the voting members, promptly amend the [Bert Bell NFL Retirement Plan and Trust Agreement] (subject to the restrictions contained in Article 8.5(A)(B)(C) and (E) of the Plan) to provide" a variety of disability and survivor benefits.

Plaintiffs are not suing the Defendant for failing to amend, by majority vote, the Bert Bell NFL Retirement Plan and Trust Agreement; rather, they claim that they were not informed of the latent risks of their employment. Likewise, while Plaintiffs cannot conceive how Article 34 may

be relevant, even if reference were made to provision there is simply no dispute over the meaning of the terms. Article 34, Section 8 cannot possibly serve as the basis for removal.

### 2. NFL CBA Art. XLVIII-D (2006)

Article 48-D of the 2006 CBA provides that "The parties agree to design and establish a new plan, effective February 1, 2007, to be called the '88 Plan,' to provide medical benefits to former Players…"

Plaintiffs are not suing Defendant for failing to agree to, failing to design, or failing to establish a dementia-related benefits plan; rather, they claim that they were not informed of the latent risks of their employment. Article 48-D merely reveals the existence of *additional duties* that are wholly irrelevant to the common-law claims asserted by Plaintiffs. Thus, it is inconceivable that it would need interpretation. Nevertheless, even if it did, there is absolutely no dispute over the meaning of the provision. Article 48-D cannot serve as a basis for removal.

### 3. NFL CBA Art. XXXI § 1 (1982)

Article 31, Section 1 of the 1982 CBA state in its entirety: "Each club will have a board certified orthopedic surgeon as one of its club physicians. The cost of medical services rendered by Club physicians will be the responsibility of the respective clubs. If a Club physician advises a coach or other Club representative of a player's physical condition which could adversely affect the player's performance or health, the physician will also advise the player."

Section 1 imposes an obligation on NFL teams to "have a board-certified orthopedic surgeon as one of its Club physicians and obliges teams to pay the cost of medical services rendered by Club physicians. Section 1 requires that, in the event a Club physician reports an adverse physical condition to a coach or other Club representative, the physician must also advise the player of the same.

9

Plaintiffs, however, are not suing the Defendant for failing to employ a board-certified orthopedic surgeon or for failing to pay for the costs of medical services rendered by a Club physician; rather, they claim that they were not informed of the latent risks of their employment. Plaintiffs are also not suing for the failing to ensure that Club physicians advised them of any adverse physical conditions reported by a physician to a coach or other Club representative. Indeed, Judge Perry has already held *in this case* that the duties arising as a result of the employer-employee relationship "exist independent of the [duties established in Article XXXI]." *Green*, 21 F. Supp. 3d at 1028.

Moreover, even assuming reference was made to Article 31, its meaning is unambiguous. There is simply no dispute over the interpretation of the provision. Thus, Article 31 cannot serve as the basis for removal.

### 4.  NFL CBA Art. XXXI § 2 (1982)

Article 31, Section 2 of the 1982 CBA states: "All full-time head trainers and assistant trainers hired after the date of execution of this Agreement will be certified by the National Athletic Trainers Association. All part-time trainers must work under the direct supervision of a certified trainer." Plaintiffs, however, are not suing the Defendant for failing to employ "certified" trainers; rather, they claim that they were not informed of the latent risks of their employment. Moreover, as Judge Perry held, there is simply no interpretive dispute over the meaning of this provision, even assuming it were relevant. *See Green*, 21 F. Supp. at 1028. Article 31 cannot, therefore, serve as a basis for removal.

### 5.  NFL Constitution and Bylaws Art. XVII (1984)

Article 17 of the NFL Constitution and Bylaws deals solely with the management of a member club's "Reserve/Injured" list. In order to ensure that teams do not evade roster limits,

member clubs are required by Article 17 to rely on medical staff, in accordance with club standards, to determine "as precise as possible" a player's recovery time. Clearly, nothing in Article 17 gives rise to or alters the common-law duty to provide a safe workplace. Indeed, Judge Perry held, *in this case*, that Section 17 "exists solely as part of the documentation required by the NFL related to the 'Reserve/Injured' list, which pertains to club roster size." *Green*, 21 F. Supp. 3d at 1028.

In addition, Article 17 is unambiguously clear. Plaintiffs cannot conceive of, and Defendant does not suggest, a substantial dispute over the meaning of the terms. Since Defendant was unable to articulate how Plaintiffs' claims are "substantially dependent" upon an interpretation of Article 17, the Court *in this case* has already held that it had failed "in its burden of persuasion." *Id.* This is the law of the case. Article 17 cannot serve as a basis for removal.

### 6.  NFL CBA Art. XI § 8 (1982)

Article 11, Section 8 of the 1982 CBA establishes that "a joint committee of club and union representatives may meet to discuss potential rule changes, but will not have the power to bind any of the signatories to the CBA." *Id.* at 1028, fn. 7. Plaintiffs clearly do not allege the violation of Section 8; rather, they claim that they were not informed of the latent risks of their employment. Moreover, Judge Perry has already held, *in this case*, that the Defendant cannot show how the interpretation of this section is necessary. *Id.* at 1028. This is the law of the case. Article 11 cannot, therefore, serve as a basis for removal.

### 7.  Standard Player Contract ¶ 9

Paragraph 9 of the standard player contract "sets forth conditions under which the Team is obligated to provide medical care." *Id.* at 1027-28. "But the Players do not claim that they were not treated when contractually entitled to the care; rather, they claim that they were not

informed of the latent risks of their employment." *Id.* This duty, as Judge Perry determined *in this case*, exists independent of the contract and the CBAs. *Id.* Moreover, interpretation of this section is unnecessary and, even if it were, no substantial dispute exists over the meaning. Thus, Section 9 cannot serve as the basis for removal.

In sum, not one of the provisions relied upon by Defendant support its assertion that Plaintiffs' claims are completely preempted. And, at this stage of the litigation, this Court can no longer avoid the reality that the Defendant cannot, even when pressed, articulate how Plaintiffs' claims are "substantially dependent" upon an interpretation of the provisions it repeatedly cites. Judge Perry, after considering the very same provisions *in this case*, held that the Defendant could not establish that Plaintiffs' claims were "substantially dependent" upon an interpretation of a CBA. This Court must now do the same.

## III.     This Case is Not Removable Pursuant to 28 U.S.C. § 1445(c)

Federal law unambiguously provides that "a civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." 28 U.S.C. § 1445(c). The dispositive question, then, is whether this action arises under the Missouri Workers' Compensation Law. The question is easily answered by examining the statute itself.

The Missouri legislature has decreed that Chapter 287 "shall be known as 'The Worker's Compensation Law.' " Mo.Rev.Stat. § 287.010. First enacted in the 1925 version of the Missouri workers' compensation law, the law has long been recognized as the "Workmen's Compensation Law." *See Barnhill v. Allied Waste Indus.*, 13-00804-CV-W-JTM, 2013 WL 6070012 (W.D. Mo. Nov. 18, 2013)(citing *State ex rel. Brewen–Clark Syrup Co. v. Missouri Workmen's Compensation Commission,* 320 Mo. 893, 8 S.W.2d 897, 900 (Mo.1928) (*en banc* )).

In relevant part, section 287.110(2), entitled "Scope of chapter as to injuries and diseases covered," provides:

> This chapter **shall apply to all** injuries received and **occupational diseases contracted in this state**, regardless of where the contract of employment was made, **and also to all** injuries received and **occupational diseases contracted outside of this state under contract of employment made in this state** [.]

R.S.Mo. 287.110(2) (emphases added). Since Plaintiffs allege in the Petition that they contracted occupational diseases in the State of Missouri [*this state*] and while under contract of employment made in the State of Missouri [*this state*], the Workers' Compensation Law very clearly applies to Plaintiffs' action. *See Amesquita v. Gilster-Mary Lee Corp*., 408 S.W.3d 293, 301 (Mo. Ct. App. 2013); *see also State ex rel. KCP & L Greater Missouri Operations Co. v. Cook*, 353 S.W.3d 14, 28-29 (Mo. Ct. App. 2011)(observing that "occupational disease claims are covered by and compensable under the Act"). Moreover, while Plaintiffs seek a judicial *remedy*, as opposed to an administrative one, section 1445 speaks of "*actions*," not remedies. Thus, removal of Plaintiffs' occupational-disease claims is expressly prohibited.

## IV.    Plaintiffs' Request for Just Costs, Including Attorneys' Fees

Pursuant to 28 U.S.C. § 1447(c), an order remanding a case may require payment of just costs, including attorneys' fees, in the discretion of the Court. Costs and attorneys' fees are especially warranted where the removing party lacks an objectively reasonable basis for seeking removal. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Here, as shown above, Defendant lacks an objectively reasonable basis for seeking a successive removal. Accordingly, Plaintiffs request that they be awarded costs and attorneys' fees pursuant to 28 U.S.C. § 1447(c).

## **CONCLUSION**

For the reasons provided herein, Plaintiffs respectfully request that the Court enter an order remanding the case and requiring that Defendant pay just costs and actual expenses, including attorney fees, in accordance with 28 U.S.C. § 1447(c).

Respectfully submitted, this 19th day of April, 2016.

THE KLAMANN LAW FIRM, P.A.

/s/ Andrew Schermerhorn

John M. Klamann, MO        #29335
Andrew Schermerhorn, MO    #62101
Paul D. Anderson, MO       #65354
4435 Main Street, Ste. 150
Kansas City, MO 64111
Telephone: (816) 421-2626
Facsimile: (816) 421-8686
jklamann@klamannlaw.com
ajs@klamannlaw.com
panderson@klamannlaw.com

Kenneth B. McClain, MO     #32430
Lauren E. McClain, MO      #65016
Timothy J. Kingsbury, MO   #64958
HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 West Lexington, Suite 400
Independence, MO 64051
Telephone: (816) 836-5050
Facsimile: (816) 836-8966
kbm@hfmlegal.com
lem@hfmlegal.com
tjk@hfmlegal.com

Wm. Dirk Vandever, MO      #24463
THE POPHAM LAW FIRM, P.C.
712 Broadway, Suite 100
Kansas City, MO 64105
Telephone: (816) 221-2288
Facsimile: (816) 221-3999

14

dvandever@pophamlaw.com
**ATTORNEYS FOR PLAINTIFFS**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 19th day of April, 2016, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will provide electronic notice to all

counsel of record.

<u>/s/ *Andrew Schermerhorn*     </u>
Andrew Schermerhorn

15