UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARRY E. HAMILTON,<br>    Plaintiff<br>v.<br><br>BERT BELL/PETE ROZELLE<br>NFL PLAYER RETIREMENT PLAN,<br>RETIREMENT BOARD OF THE BERT<br>BELL NFL RETIREMENT PLAN,<br>BECKY SUE THOMPSON, ESQ.<br>JOHN DOE, JANE DOE, ABC<br>CORPORATION (FICTIOUS ENTITIES<br>OR PERSONS TO BE DISCOVERED)<br>    Defendants | MDL No. 2323<br>12-md-2323 and 14-6353 |

## AMENDED DECLATORY JUDGEMENT AND PRELIMINARY INJUNCTION WITH COMPLAINT

The events foundationally supporting this amended action has its genesis hundreds of years ago.[1] During the last twenty to thirty years, Hamilton's actions under the common law ultimately took shape when seeking health coverage for his unborn child and the mother of the child (a common law that noted scholars of the Pennsylvania Court system with all the scholarly clerks would view differently between 2003 and 2005 when

---

[1] Given the climate of the times, i.e. the need for movements such as Black Lives Matter (an any other related movements seeking to expose the racial divide still existent in America), Hamilton remembers well the words of his late father – i.e., one case controls Dred Scott v. Sanford (specifically a Black man has no rights worthy of respect – commentators have illustrated that the same philosophy is at the heart of all profiling. Hence comments are made about the parents of a veteran (one Presidential Nominee). Hamilton quickly adds that this amended action seeks primarily to address supposed laudatory comments about swiftness of adoption of foster children or the alacrity with which the state disrupts the lives of African/Aboriginal American families fattening the coffers of other corporate interests under the guise of doing good [another Presidential Nominee – who had written extensively on the disruption of the family court system to the family] and the actions of all concerned with the funding provided by 42 USC 651 et. seq. as its impetus). For balance Hamilton does not know more about another Nominee by takes this time to mention the likes of Cornell West and Michael Dyson as noted orators and writers who may speak to how any proposed settlement of a case has to take on different considerations when viewing the 'Black' litigant. Look to the complexion and the pockets in most instances to determine the winner in court was Hamilton's law school observation. Hamilton simply cannot ignore the race factor (and to borrow a phrase for anyone asserting Hamilton's incessant use of the so called 'race card' – Hamilton was 'dealt in' at birth, so kindly and respectfully deal with it! Because these pages will reflect that Hamilton continues to 'deal with it' at every turn).

common law marriage was statutorily abolished). Litigation ensued in 2004. Defendants knowledgeable of Hamilton's status as a retired NFL player have become increasingly involved since Hamilton's October 2014 filing and disclosure of the NFL Concussion Settlement.

This amended declaratory judgement and preliminary injunction with complaint has been a long time in the making and has been a difficult undertaking with drafts occurring in the mind and some in print but finally started and completed in the recent days/weeks. In many respects this amended action is cathartic and wistful in its attempt to convey not only the existent and multiple causes of action but also, in a broader sense, the current state of affairs for plaintiff (Hamilton) inclusive of the effects of chronic traumatic encephalopathy (CTE) to the extent of our knowledge.[2] Hamilton's prior affidavits, motion for temporary restraining order to curtail discovery (that has subsequently been publicly filed causing embarrassment and humiliation contrary to Pennsylvania Rules of Civil Procedure, following orders of recused judges and denying Due Process Constitutional guarantees).

The amended action follows the execution of orders by recused judges directing that income or benefits of Hamilton be forwarded to the Commonwealth of Pennsylvania or otherwise withheld. The NFL has given considerable assistance to Thompson

---

[2] Hamilton contends that the following pages attempt to illustrate the effects of CTE that may well have led to the self-destructive behaviors seen in others. One day the country may talk about placing the football players on a pedestal, the advertising accompanying the glamour, the failure to warn of the pitfalls and those complicit or conspiring in their demise and then casting them aside to the sharks to return them in many instances to the status they once held (for purposes of this amended complaint, Hamilton focuses upon economics). As Hamilton attempts to illustrate, a system designed to reward the transfer of wealth so that it first passes through state coffers to be counted sustains itself by taking from those who have and have achieved to increase numbers and thereby obtain rewards through grants. Hamilton who has been reduced to very little having been in one sense forced to be very present for his sons, barely makes ends meet and is on the verge of losing Hamilton's property if not through a taking or divorce court, then through taxes. This amended complaint in many ways speaks truth (to power depending) certainly about power. The effects of which have begun to come forward as Hamilton has repeatedly appeared before a local school board to urge teaching or doing something to address racial profiling.

allowing her to not only to publicly file discovery contrary to Pennsylvania Rules of Civil Procedure but also pursue matters entered by recused judges

Additionally, this short plain statement in many instances tends to show the after effects of the much publicized findings of the linkage of CTE and traumatic brain injury and resultant decline including behavioral changes, i.e. exactly what is at play when players turn to self-destructive behavior. Hamilton believes and therefore asserts that underlying are the issues depicted in the following pages with the domestic relations laws providing a vehicle for the economic decline perhaps leading to ultimate disaster (Hamilton can only speak to the fact that this written outlet with the hope of matters being addressed is beneficial and Hamilton is unaware of the intricacies of those taking their life or burying themselves in health effecting behaviors but is all but certain domestic family law matters are closely intertwined). Stated another way, the defendants seek assets (for various reasons non-of which directly benefit the family members without first distributing the assets to others for various pecuniary reasons): (1) Becky Sue Thompson, Esq. builds her practice disguised as advocating for a client while acting as agent to deprive Hamilton of assets, (2) the state (or Commonwealth by and through its agent and other unspecified entities perhaps the state disbursing unit) perhaps protected by the Eleventh Amendment acts by and through Ms. Thompson as its lead agent (and others knowledgeable of the ultimate goal, i.e. conference officers serving as support enforcement officer with the threat of swift jailing for non-compliance of transferring assets and property without due process) to ensure that assets pass immediately and directly through its coffers not only gaining the interest on amounts but also ensuring statistical support for federal grant money through 42 USC 561 et. seq., and (3) the NFL

knowing that decline of the family follows departure from the NFL in some instances and that mental failings linked with CTE follows in many other instances all with a vested interest in facilitating the knowledge of assets and assisting with the swift jailing for non-compliance or otherwise blindly assisting with the transfer of assets under color of law without regard to the prior recusal of judges or any failures under the United States Constitution Due Process guarantees (The NFL is currently holding or diverting money under color of law that benefits someone or other entities beyond the family and child that should receive the benefit swiftly and directly– adding to the alacrity of an imminent tax sale and other property loss. Lost, however, is the supposed best interest of the family?

      Hamilton hesitates to add the Internal Revenue Service but most recently, they too have held or diverted money based upon an order fostered, supported, directed by Thompson, state disbursing officials, enforcement officers and ultimately recused judges depriving Hamilton of Due Process. The police department in Long Branch, NJ has essentially allowed a taking of the property without due process in failing to enforce the trespass laws yet curtailing Hamilton's attempt to look after the property.[3] Recently, the

---

[3] Not so amazingly to Hamilton, at or about the same time Henry Louis Gates, Jr., a noted African/Aboriginal American scholar was detained on his porch, so too was Hamilton by the Long Branch, NJ police (this remains Hamilton's only overnight incarceration/so-called detention). Hamilton was charged. Hamilton's car was towed from the yard (Hamilton contends because the minority non-Black police officer living in an adjacent property did not like the car's presence in the yard). Hamilton was charged. Hamilton forgot or otherwise had misplaced mail something more and more common the court date and was ultimately charged with and fined locally for contempt of court over the car in the yard charge (the magistrate judge did permit Hamilton to send support indicating anything affecting his memory but Hamilton has not remembered or has otherwise forgotten to do so). Hamilton was also provided a letter from code enforcement demanded cleanings and certain improvements (Hamilton contends because the non-Black minority police officer did not like the looks of Hamilton's property). Now, relatives or persons known to the non-Black minority police officer have taken over much of Hamilton's home despite Hamilton's written reports of trespass. Hamilton remains fearful to even approach home at this time given the history through the years. See generally Dred Scott v. Sanford

police in State College have visited the home in Centre County with no further explanation as to why.[4]

Hamilton has been working on this matter as police came to Hamilton's home recently (the same department that actually took the child from the back seat of Hamilton's car at a time when the court order gave Hamilton custody – mother had called 911 to report kidnapping but was never charged with filing a false report leaving many to actually believe Hamilton did attempt to abduct his own child causing damage to reputation that has been unrelenting).[5] Hence, Hamilton is very hesitant to even suggest sensitivity training, i.e. treat Hamilton as if he was something other than a common criminal, since Hamilton's son has several years of high school.

Count 1 Negligence

Defendant Becky Sue Thompson as a relatively new attorney used the information she gathered after referral from a mutual friend to Plaintiff's disadvantage and essentially the economic disadvantage of not only her client but also and more importantly, the child of Hamilton and her client. She was negligent in that she

---

[4] This has been the latest visit, meaning the local police have been to the home on multiple occasions (as even calls have been made by locals about Hamilton's dog) for various non-crime matters otherwise made criminal in nature to justify police presence. Despite Hamilton's contact with the department and inquiries since July 28, 2016, Hamilton has received no answers actually causing Hamilton to finally submit this document in the event of unforeseen matters because Hamilton has been vocal about profiling and a recent pool incident involving Hamilton's son that Hamilton again cited as profiling – Hamilton's son happened to be at the pool with other persons of color to include his brother, another child of Hamilton's, however only the darker of the 9 children of color and 5 white children were ordered out of the pool area ultimately by police. Many fail to realize that Hamilton's son is likely listed in an incident report titled under some provision of the crimes code when he simply asked what rule had he broken, i.e. a civil matter made criminal because an A student and stand out athlete of color had the seeming audacity to question. Hamilton's request for documents and video may prove unavailing (and probably only a federal lawsuit such as this will help protect this juvenile's record). Other than Hamilton's visit to the Penn State University Office of the President to deliver a letter, Hamilton can think of no reason for the observed presence of multiple officers to Hamilton's home – maybe to deliver a tax sale notice because delivering Hamilton a copy of an incident report or video is not likely possible but not likely

[5] As indicated in footnote one, the belief upon encountering police however fine (as many are), well-trained or conscientious the officer, is that with a Black African/Aboriginal male a crime has likely occurred (or can be found to have occurred). Hamilton was then limited to the State College area whenever visiting with his son.

undertook representation contrary to her rules of professional conduct, i.e. breached a duty of care and the damages are still being measured as the subject child was not allowed into the home of her client in contravention of not only a current order but also common decency with immeasurable consequences to the detriment of all involved while seeking to benefit herself economically.

29. Hamilton incorporates by reference the introductory paragraphs above, the initial filing on or about October 14, 2014 and paragraphs 1-28 of the subsequent filing as if more fully and completely set forth herein.

30. During the summer of 2014 upon the referral of a mutual friend, defendant Becky Sue Thompson (Thompson) and Hamilton discussed various aspects of the common-law divorce and child custody case. Hamilton specifically stated that given the relative inexperience of Thompson at the time and volumes of material involved in Hamilton's case (10 years of litigation by summer 2014) would require her to garner some experience.

31. Hamilton explained that by 2010 Hamilton had learned the issue was not that which was in my son's best interest but rather more a matter of how best to ensure the person making the most money paid into the state coffers to ensure that numbers and amounts satisfied necessary threshold to obtain federal money, i.e. remove a child and income without the due process guarantees of the Fifth and Fourteenth Amendments.

32. Hamilton also explained that a new attorney despite having taken an oath to uphold the United States Constitution would have a difficult road representing 'bread-winning fathers' since one would have to risk ruining a practice by exposing the systemic flaws that included not only a need to have the most money flowing into and through

state (more specifically Commonwealth) coffers but also, as Hamilton later learned even by, thru, and under the directed orders of recused jurists working in concert. Hamilton explained that a general disdain for the Black African/Aboriginal American male would prove to be perhaps an insurmountable obstacle given the sheer number of years Hamilton has fought for custody and took appeals (causing even greater disdain).[6]

33. Hamilton went further and allowed that Sherrilyn Washington mother of Hamilton's child actually had a cause of action that no local judge or local attorney would bring forward since her attorneys exited the case in 2012 without ever informing the parties of clerkships with deciding judges and they left Ms. Washington without counsel for over 2 years.[7] Hamilton explained that Ms. Washington had suggested that she follows every instruction given to her (by her attorney – in an effort to paint Hamilton in a negative light, Ms. Washington testified that she was following Hamilton's advice when Hamilton represented Ms. Washington suggesting a control issue) and thus Hamilton knew Washington had help with moving forward for divorce without counsel.[8]

34. Hamilton even spoke about a since recused jurist holding up proceedings in early 2007 so that a fairly young beginning counsel from his former law firm (who had clerked for a former President Judge who had denied relief at one time during Hamilton's

---

[6] Hamilton had to announce that perhaps arguing about race might prove easier coming from her as not only is Hamilton Black African/Aboriginal male but also her husband a renowned tax attorney who teaches at the law school and written extensively (who is often seen assisting Thompson in court) is of color (through the years we have changed how we refer to persons of color at one time [mine also] the term colored was acceptable and politically correct [though I do not recall 'political correctness' as a descriptive phrase back then]).
[7] Hamilton believes and would therefore aver that given Ms. Washington's own comments about guidance concerning her actions, she had help with her decision to pursue a divorce decree and renew her claims for discovery (careful review of the rules of procedure regarding discovery would reveal not only many of the contents of this amended complaint but also the coordination of effort among some of the defendants)
[8] Proof of how Ms. Washington has maintained she does not move without counsel/direction is that Hamilton's son with Ms. Washington was left standing outside her home while she checked to see if she could let son come into the home (the importance of this is better explained by examining the financial incentives associated with keeping separation of children from parents). son's mother)

case with Ms. Washington – the clerkship was never revealed and Hamilton uncovered the clerkship years later) could enter her appearance. Hamilton opined that the purpose was to get the young counsel's name in the mainstream because going after a former National Football League player's assets would bode well for a beginning lawyer in family law.

    35. During those three days in or about June 2014, Hamilton spoke about his number of appeals and how ten years of litigation and research had given him quite an education as Hamilton failed to understand why an individual with his background and credentials would be relegated to a traditional every other weekend and alternating holiday's with no extended time during the summer months. Hamilton explained that the deciding judge had searched outside the record as Hamilton and Ms. Washington's then counsel had agreed to the existence of at least one prior marriage. Further, that a second counsel for Ms. Washington had clerked for the judge finding a common law marriage without disclosing the clerkship (Hamilton found out years later in or about 2011 or 2012).

    a. Hamilton explained that the award of discovery in 2013 after a hearing with no further action on discovery in 2011 was contrary to law. The purpose of the discovery is simply to get at the National Football League benefits and salary because everyone believes there is a 'pot of gold' and that the concerted effort by those seeking the funds meant any hearing on the objections would not be forthcoming.

    b. Hamilton allowed that knowing Ms. Washington since she was 15 years of age (now over 35 years ago), Ms. Washington was likely getting direction right from the

since recused jurist regarding her discovery pursuit (hence she and any counsel could be assured that no request to strike objections would be required).

c. Ultimately, it would be an uphill difficult battle to undertake representation of me given all of the above.

36. Hamilton maintains that within six to eight months, to Hamilton's surprise, Thompson entered her appearance on behalf of Ms. Washington and conspiring with a since recused jurist essentially deprived Hamilton of parental rights to protect his child under the PFA process (and a subsequent jurist has enforced multiple orders to include the common law marriage finding of recused jurists or a jurist that violated judicial cannon to find a marriage).

37. Hamilton maintains that Ms. Thompson used the information obtained via the initial consultations to Hamilton's detriment and that of the child who was recently denied entry into Ms. Washington's home.

38. Thompson owed a duty of care regarding the information and breached that duty by then undertaking to represent Ms. Washington and advising Ms. Washington to continue pursuit of Hamilton's NFL and other assets despite knowledge of a prior marriage.

39. Thompson has used the proceeding to wrongfully obtain information using the proceedings despite the recusal of judges from the National Football League and filing publicly private information without any order or direction to file the information contrary to the Rules and law with the intent of building her practice and embarrassing the family members.

40. In the months following Thompson's and Hamilton's meeting, Hamilton made local headlines filing against the NFL and Thompson has since sought to build her practice by encouraging if not directing Ms. Washington to pursue the proceeds of any settlement or payment from Hamilton's suit.

41. Thompson has elicited the help of the NFL Benefits department to deprive Hamilton of assets by using the orders of recused judges or a judge who acted contrary judicial cannon to justify Ms. Washington's presumed status.

42. Thompson as an officer of court acted in concert with the local conference officer and contrary to the Constitutional guarantees of due process to obtain a recused judge's signature on an order depriving Hamilton of property.[9]

---

[9] The now President Judge, years before recusal, had awarded Hamilton shared legal and physical custody before police (very key because of the alacrity of police action against Hamilton an officer of the court especially given the current times) action caused an immediate change to the custody order (a police officer/detective without consultation with a lawyer actually went before the court and obtained an immediate change to custody). Hamilton has come to believe that the now President Judge was initially attempting to do the just and fair thing when making the initial award – Hamilton now firmly believes that silent pressure caused a change to that which was fair to that which is more generally acceptable. The now President Judge had essentially announced disdain for the change when recusing in 2010. Ultimately, due to actions taken in furtherance of the broader acceptable scheme by several judges and the tacit admission (by a jurist that was only doing what all talked about) was there recusal. The overall scheme may well be the silent (impenetrable) impetus behind the disaster effecting those later found to have CTE (who would ever think to blame a stator scheme that takes everything but in a domestic setting – no one wants to blame the family for the disaster because everyone is only doing their job and purportedly looking out for the 'best interest of the family' without ever disclosing the other interests involved). More importantly, the NFL knows or should know that with the effects of CTE comes domestic decline also and the ultimate asset transfer inherent in our domestic structure – Hamilton recalls early in a legal career two things (1) an attorney saying of a judge 'he knows the game' and (2) when speaking about clients with means 'the best part is they hate each other' indicating huge paychecks from clients who were battling from emotion rather than ensuring economic best interest for the family. Shame on the NFL fully aware of the divorce rate, the statutory mandates of child custody to effectuate asset transfer and failing to warn (that the personality changes and difficulties later in life will only result in the asset transfer to attorneys and through courts who ultimately benefit through 42 USC 651 et. seq. This is submitted because at the very least my two children should benefit with home ownership (perhaps each owning a share in the two homes of Hamilton), have their education paid for through post graduate degrees, and a small lifetime monthly expense stipend (that the interest on 500,000 would bring). Hamilton's three nephews (sons of Lance) and niece (daughter of Sheila) should benefit as well since they too will go without the full benefit of the mental vitality of their uncle.

43. Defendant NFL adding insult to the injuries of CTE, has acted to assist Thompson by supplying information without first ensuring the judges issuing the orders had not recused to include the judges otherwise permitting discovery.

44. Defendant NFL adding further insult to the injuries of CTE, has now kept money meant for the family under color of law knowing the negative effect to a former player's financial state and that lawyers and courts are acting pursuant to 42 USC 651 et. seq. to ensure statistics meet federal guidelines in this case by allowing orders signed by recused judges.

45. Despite warning of the facts in the state court action, Defendant NFL still provided information that was mentioned during testimony and argument in the state court action to the detriment of Hamilton and Hamilton's children.

46. Defendant NFL should immediately release funds being held to Hamilton.

47. Thompson in conjunction with the NFL have sought to remove assets from Hamilton and benefit Thompson as her practice emerges and blossoms with the filing publicly of Hamilton's assets showing her ability to obtain results for any prospective clients and the NFL has an obligation to do more to protect known actions of lawyers showing the actions of Thompson.

48. The NFL owed a duty of care to protect private information before releasing the information to Thompson. The NFL knew or should have known that the effects of Chronic Traumatic Encephalopathy and the status of a former NFL player would make for easier and greater targets of attorneys acted by and on behalf of courts to obtain assets and benefits without due regard to whether decisions from courts were due in part from pecuniary interest as set out in 42 USC 651 et. seq. Further, in this case the decisions

relied upon were from recused judges and in the case of the common law marriage determination a decision reached after violating judicial cannon.

Wherefore Hamilton requests that Thompson and NFL be held liable for any and all damages up to and including five million dollars for pursing to her benefit the case as currently orders of recused judges are enforced.

## Count III Disbursing Officials Negligence

49. Hamilton incorporates by reference herein paragraphs 29 through 47 as if ore fully set forth herein.

50. Disbursing officials have used the signatures of recused judges to obtain withholding of income depriving Hamilton of property without the due process guarantees of the United States Constitution.

51. The disbursing officials acting in concert with Thompson have obtained relief with orders of recused judges by sending the orders to the Internal Revenue Service that is unaware of the litigation and the genesis of the orders being from recused judges.

52. Similarly, disbursing officials despite Hamilton being owed considerable money have continued to take from Hamilton and again damaged Hamilton's reputation by again alerting the Department of the Army that investigated Hamilton that Hamilton's income is to be withheld making employment with the Army tenuous.

## Count IV Declaratory and Injunctive Relief

Hamilton could name any number of defendant's as a review of the footnotes in this submission would reveal and determining exactly who those involved in the scheme would only come through discovery. But as discussed with Defendant Thompson in 2014 before her representation of Ms. Washington and while considering Hamilton (as an

overview of the system), her client's marriage claim is the rightful subject of a declaration of a void marriage under Pennsylvania law. Hamilton explained to Thompson that if the court is not going to hold a hearing on objections to discovery that included undisclosed clerkships of her client's prior attorney for judges making decisions on the case, then the likelihood of having a hearing on a void marriage is likely nil.[10] Hence, the finding of a marriage whose purported creation posted dated a prior marriage is void (as opposed to voidable). <u>The NFL was made aware of this fact and still failed to withhold private information sought in discovery and publicly filed</u>.

53. Hamilton incorporates by reference herein paragraphs 29 through 53 as if more fully and completely set forth herein to include the above introductory paragraph.

54. The appellate court in Pennsylvania upheld the finding of a marriage on or about January 2015 and the Pennsylvania Supreme Court has permitted a request for filing but there is no guarantee of the outcome.

55. No Court has opined on the merits of a declaration to determine the underlying common law marriage giving rise to much of the litigation of the last 12 plus years void.

56. Further, this Honorable Court would be asked to enjoin any efforts to obtain benefits even if the common law marriage is not voided as the assets are rightly assets of a prior marriage.[11]

---

[10] As of this writing, Hamilton believes that some of what has been produced in these pages is under consideration by the Pennsylvania Supreme Court – but Hamilton cannot take the emotional turmoil that persists when the failure of Due Process has persisted and Hamilton may have received mail that Hamilton has either lost track of or otherwise has not opened (perhaps the effects of CTE). It behooves Hamilton to mention that Hamilton has finally tried locking himself indoors to finalize this document to the greatest extent possible as Hamilton is uncertain why police who have Hamilton's contact information would suddenly appear at a home owned by Hamilton (at least owns pending the imminent tax sale)

[11] Adding to the overall confusion of just what constitutes a common law marriage not to mention subjecting Hamilton to the divorce code without consent, in what may be an unreported determination a

57. The jurist finding the common law marriage between Ms. Washington and Hamilton searched outside the record in contravention of judicial cannon.

58. The finding of common law marriage was found without any determination of the requested jury trial and without a hearing i.e. the Pennsylvania scheme actually works in two tiers for the same case contrary to Pa.R.C.P. 1931, i.e. there is the support action (to ensure the state coffers immediately obtain a flow of money and statistics are likely more easily tracked) and then the actual divorce and custody litigation. The litigant (Hamilton) is never informed that the challenge mounted in the support case before a jurist who finds a marriage by searching outside the record nullifies any hearing, any jury trial and the challenges in the divorce and child custody case bearing a different case number and caption, i.e. differently named parties.

59. Thus, there is no hearing or determination of the void marriage as Hamilton had at least one prior marriage admitted to by Ms. Washington (her then counsel accepted at least one prior marriage an agreement between Hamilton and Ms. Washington apparently rejected by the sitting jurist without explanation).[12]

60. This count provides the foundation for the prior negligence counts as Hamilton is essentially left without a forum and the draw of much publicized settlement and the lure of NFL player salaries has made Hamilton appealing to not only the lawyers

---

divided panel found that a prior marriage was an impediment to the division of assets in a subsequent marriage as against public policy (as Hamilton discussed with Thompson indicating the funding provided through 42 USC 651 et. seq. would determine how the local court would find).

[12] Hamilton now believes and would therefore aver particularly in light of the subsequent and recent recusals, the finding of common law marriage at any cost was to benefit others beyond the family pursuant to 42 USC 651 et. seq.

but also the state courts who stand to obtain some pecuniary gain when viewed through the statutory scheme of 42 USC 651 et. seq.[13]

Wherefore Hamilton seeks a declaration of a void marriage to Ms. Washington and an injunction for all proceedings and discovery obtained or sought based upon the void marriage.

Count V Injunctive Relief and Possible Habeas

61. Hamilton incorporates by reference herein paragraphs 29 through 60 as if ore fully set forth herein.

62. Hamilton seeks injunctive relief against various entities seeking to benefit or act detrimentally to Hamilton based on the assertions contained in the several filings in this case.

63. Pennsylvania Department of Transportation by and through counsel has sought suspension of license after obtaining suspension because Hamilton forgot the correct court date on multiple occasions following an out of state failure to appear in New York like the one mentioned in the footnote in New Jersey. Thus multiple departments have failed to make accommodations for memory issues and have acted upon forgetfulness rather than any provision of safety.

64. New Jersey police in Monmouth County have failed to pursue criminal trespass action against occupants of Hamilton's home and foreclosure on Hamilton record home is imminent.

---

[13] As indicated elsewhere in this document, ten years of litigation to include attending a hearing on a change in custody law on February 4, 2010 before a Pennsylvania Legislative body wherein testimony indicated that 'courts should not be involved in custody determinations' (testimony burned into Hamilton's mind and shared with Thompson as a turning point in understanding why Hamilton was having such tremendous difficulty being granted greater access to his son – the profound testimony did not explain why courts should not be involved but when viewed in the context of the pecuniary gain tied to such determinations, the profundity of the testimony only increases.

65. Hamilton received a phone call from the assigned care taker of the property and a SGT Gonzales who presumably occupies a property adjacent to Hamilton's took the phone and yelled at Hamilton suggesting Hamilton was engaged in something illegal. When Hamilton alerted that there were trespassers in Hamilton's home and further that Hamilton believed they either knew the officer or were relatives of the officer, SGT Gonzales passed the phone back to Hamilton's person looking into the property now making any approach to the property unavailable without the threat of likely arrest.

66. Under of color of state law, state actors are taking Hamilton's property without due process.

67. Similarly, Hamilton believes and therefore avers that Hamilton's home has been visited by police in Centre County for actions that are not criminal and certainly for actions that Hamilton is unaware.

68. Ultimately, Hamilton could only conceive of something related to the paragraphs and filings in this Honorable Court to include a search of Hamilton's belongings without probably cause or with manufactured probable cause as forming any basis to criminally involve Hamilton.

69. Due in part to the last 12 years of litigation having its underpinnings in Hamilton's prior involvement in professional sports, Hamilton is facing foreclosure and a taking in New Jersey, a tax sale in Pennsylvania, and continues to be unemployed after having filed equal employment opportunity complaints against the federal government for failing to promote due to race and failure to reasonable accommodate due to decreased productivity or substandard productivity.[14]

---

[14] While Hamilton has often challenged that GS-13 positions and above had a declining percentage of Black African/Aboriginal American males (the only minority category over a 20-year period), Hamilton

70. Evidence of the interest of disbursing units was observed in Luzerne and Centre County as the majority of litigants incarcerated for debt without Due Process, i.e. not informed that the initial conference is an effort at agreement with right to a hearing and that the parties may agree. Rather the state makes itself an immediate party.

71. Hamilton has received protection from abuse orders by since recused judges and now is faced with a seeming inability to expunge the records due in part for a failure of Due in that Pennsylvania did not follow Pa.R.C.P. 1931.

72. Pennsylvania now has records of a protection from abuse arrest and final order that was entered by a judge that another judge said in essence should have be recused before his ultimate recusal all within a few months denying Hamilton due process. The essential convictions based on one party seeking leverage in a child custody action should not form the basis for damage to reputation as Hamilton has been twice stopped entering airports from over-seas to be questioned about the record/arrest. Pennsylvania should be enjoined from entering or keeping records of Hamilton's essential conviction for protection from abuse that has been entered by a recused jurist.

73. In addition to failing to train workers who called police on Hamilton's minor son (only "kick[ing] out" the darker of his two sons as one is of a lighter complexion) creating an incident report, the local government entity has removed Hamilton right to contract by contracting with an entity that's only diversity in its front office consists of an

---

found himself seeking accommodation based on what Hamilton contends is decline from CTE, i.e. forgetfulness and focus capability. Hamilton has previously indicated in a prior filing a short list of attorneys in the event Hamilton is unable to pursue the matter. Hamilton has learned that there are two attorneys on a Third Circuit case with whom Hamilton has yet to consult to demonstrate the absence of mootness as Hamilton's son stays constantly vigilant to the very real prospect of forced separation for various reasons (based upon the statistical benefit to separation given Hamilton's assets and the pecuniary interest mandated by 42 USC 651 et. seq. – Hamilton believes and would aver that all eyes are on these cases as without federal involvement the danger of separation remains imminent as it regrettably was for many children in Pennsylvania's Luzerne and Centre Counties.

Information Technology member. In the same way Hamilton's son should not bear the brunt of the badges and incidents of slavery by now being labeled a 'problem' child (being placed in a group home over thanksgiving 2014, the subject of the Third Circuit case and now having police called because an untrained worker's remedy for 9 persons of color following instructions of one life guard with whom the worker disagreed did not like Hamilton's son asking questions about what rules were infringed upon much less broken – because Black African/Aboriginal American males standing 6' tall at age 14 are not supposed to ask questions in a calm and dignified manner even if they are regular volunteers at the local senior center and are straight 'A' students or not), Hamilton should not be required to contract with a firm showing no commitment to diversity on it's website.

74. The contents of paragraph 73 should be remedied by permitting Hamilton's sons to have unfettered and uncharged access to pools locally and across the Commonwealth and each should hold a summer job in 2017 with expenses that includes speaking to several life guard stations in the Commonwealth about this summer's experience and how a poorly trained life guard placed another obstacle in the life of a young Black African/Aboriginal American male by summoning police as if a crime had occurred when calling a parent would have more than sufficed. Additionally, the local government should provide services to the household without charge until such time as the website of the contracted company or another company's website reflects several persons of color.

75. For the above stated reasons, Hamilton would seek injunctive relief against several entities as mentioned and possible habeas relief as Hamilton is now without funds

necessary to make ends meet and has now sought to illustrate that underlying CTE (brought on or otherwise encouraged by Pennsylvania State University's failure to inform while preparing Hamilton for the NFL) are the effects of a failure to effectively deal with an embarrassing prevalent race issue that continues to divide America.

Wherefore Hamilton seeks injunctions to be determined with discovery and joint and several liability from multiple named and unnamed defendants for damages of five million dollars ($5,000,000), a stay of any foreclosures, enforcement of trespass laws in Long Branch, New Jersey, stay of any tax sale in Pennsylvania, expungement of protection from abuse orders and records, cessation of all currently litigated driver's license suspensions, re-employment with the federal government to include a paid position in the United States Army Reserves not subject to income withholding and employment within Pennsylvania State University.

Respectfully submitted,

*Harry Hamilton*

Harry Hamilton, Plaintiff, Pro Se
167 Oak Street, P.O. Box 1737
Wilkes-Barre, PA 18702
Cellular (973)-951-9091

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARRY E. HAMILTON,<br>    Plaintiff<br>v.<br><br>BERT BELL/PETE ROZELLE<br>NFL PLAYER RETIREMENT PLAN,<br>RETIREMENT BOARD OF THE BERT<br>BELL NFL RETIREMENT PLAN,<br>BECKY SUE THOMPSON, ESQ.<br>JOHN DOE, JANE DOE, ABC<br>CORPORATION (FICTIOUS ENTITIES<br>OR PERSONS TO BE DISCOVERED)<br>    Defendants | :<br>:<br>:    MDL No. 2323<br>:    12-md-2323 and 14-6353<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## **VERIFICATION**

I, Harry Hamilton, Plaintiff in the above-captioned matter, verify that the statements in the foregoing amended declaratory judgement and injunctive relief with complaint are true and correct to the best of my knowledge, information and belief understanding the penalties relating to penalty for perjury and unsworn falsification to authorities under 28 USC 1746 and 18 Pa.S.C. 4904.

October 27, 2015

_____
Harry Hamilton, Defendant Pro Se
167 Oak Street
P.O. Box 1737
Wilkes-Barre, Pa. 18703
Cellular (973) 951-9091