# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : : : : : | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>Hon. Anita B. Brody |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | : : : : | |

### DECLARATION OF ORRAN L. BROWN, SR. ON PREPARATION TO IMPLEMENT THE SETTLEMENT PROGRAM AFTER THE EFFECTIVE DATE

I, ORRAN L. BROWN, SR., hereby declare and state as follows:

1. My name is Orran L. Brown, Sr. I am the Chairman and a founding partner of BrownGreer PLC, located at 250 Rocketts Way, Richmond, Virginia 23231.

2. I submit this Declaration to provide an update to the Court on the preparations by BrownGreer as the Court-appointed Claims Administrator in conjunction with Co-Lead Class Counsel and Counsel for the NFL Parties (the "Parties") to launch the Settlement Program after the Effective Date in accordance with the terms of the Settlement Agreement.

3. ***Executive Summary.*** To date, over 11,000 Settlement Class Members and their counsel have "signed up for more information" to ensure that they are notified as soon as the Settlement Program becomes effective and to receive directions on how to register to participate in the Settlement Program. In addition, we will be providing Supplemental Notice after the Effective Date to over 34,000 Settlement Class Members who have contacted BrownGreer or whose address is otherwise on file. Although the Settlement Program is not yet effective, we have been working diligently with the Parties and the BAP and Lien

Resolution Administrator to prepare for implementation of the Settlement Program so that we will meet the various deadlines set forth in the Settlement Agreement.

4.  *Notice Mailing List.*  Beginning on October 8, 2013, BrownGreer aggregated and analyzed various sets of data to assemble a list of known retired players.  The goals of this effort were to identify from available sources:  (1) as many living Retired NFL Football Players as possible; (2) as many deceased Retired NFL Football Players as possible; (3) the family members of deceased Retired NFL Football Players; and (4) the best known mailing address of living Retired NFL Football Players and the family members of deceased Retired NFL Football Players.  We concluded our analysis in June of 2014, and prepared a list (the "Notice Mailing List") of 33,984 names with addresses that the Settlement Class Notice Agent used for the Settlement Class Notice mailing.  Since the Settlement Class Notice mailing, BrownGreer has added individuals to the Notice Mailing List at their or their attorneys' request after contacting us as the Claims Administrator.  We also have maintained a record of address changes obtained through direct requests sent to us, National Change of Address ("NCOA") updates, forwarding addresses provided on returned mail, and address database searches.  As a result of these updates, the current Notice Mailing List includes 34,205 names with addresses.

5.  *NFL Concussion Settlement Website.*  Pursuant to Section 4.1 of the Settlement Agreement, and in consultation with the Parties and the Settlement Class Notice Agent, BrownGreer developed a public, informational website, www.NFLConcussionSettlement.com (the "Settlement Website"), to provide notice and additional courtesy information and services to the Settlement Class.  On July 7, 2014, immediately following the Court's entry of the Preliminary Approval Order, BrownGreer launched an initial version of the website to make available for viewing, printing, and

downloading PDF versions of the Settlement Class Notice and Settlement Agreement. On July 14, 2014, BrownGreer launched the comprehensive version of the Settlement Website that included—and continues to include—notice materials, Court documents, frequently asked questions ("FAQs"), and a link to sign up for future information.

6. ***Website Visitor Activity.*** As of September 19, 2016, the Settlement Program's website had received 149,077 unique visitors, with representation from all 50 states as determined by IP Address. Through September 19, 2016, 8,303 visitors have used the "Sign Up for Future Information" feature and provided contact information for the Settlement Program to use to reach them, including, among others, Retired NFL Football Players, family members of Retired NFL Football Players, and counsel for Retired NFL Football Players (including those with large client inventories). Anyone who provides contact information through the "Sign Up for Future Information" feature or who is automatically signed up through the processes described in Paragraphs 11 through 13 of this Declaration will be sent further updates about the Settlement Program to the address provided. We will add them to the Notice Mailing List, if not already included, for receipt of the Settlement Class Supplemental Notice. Tables 1 and 2 in the Attachment to this Declaration present detailed information on website visitor activity and sign ups.

7. ***Post Office Box.*** On July 2, 2014, BrownGreer established a P.O. Box (P.O. Box 25369, Richmond, VA 23260) to which Settlement Class Members and others can send general questions about the Settlement Agreement or Settlement Program. We retrieve mail from this P.O. Box each business day. As of September 19, 2016, we have received 114 letters to this P.O. Box and responded to 72 of these letters. We did not respond to the remaining 42 inquiries because they did not pose questions, were requests to update contact

3

information only, or we consolidated multiple letters from one individual into a single response. In addition to responding to the letters, we also signed up 61 individuals for more information as a result of receiving their letter. We have added these individuals to the Notice Mailing List. Table 3 in the Attachment to this Declaration presents additional information on communications sent to and from BrownGreer as the Claims Administrator.

8. *Claims Administrator Email Inbox.* BrownGreer established the email address ClaimsAdministrator@NFLConcussionSettlement.com ("CA Inbox") to allow Settlement Class Members and others to submit general questions about the Settlement Agreement and the Settlement Program. This email address appears on the Settlement Website. We monitor the CA Inbox, respond to all inquiries, and convert each email exchange into a PDF and save it to a secured drive. As of September 19, 2016, we have received 721 emails to this CA Inbox and responded to 698 of these emails. We did not respond to the remaining 23 inquiries because they did not pose questions, we consolidated multiple emails from an individual into a single response, or we forwarded the questions to the Parties or Garretson Resolution Group ("GRG") as the parties more appropriate for handling the inquiry. In addition to responding to the emails, we also signed up 532 individuals for more information as a result of receiving their email, and added them to the Notice Mailing List.

9. *Additional Contacts and Sign Ups to Receive More Information.* In addition to communications sent to the P.O. Box and CA Inbox, we also received 15 emails, letters and faxes directly to individuals at BrownGreer. We responded to nine of these communications. We did not respond to the remaining six inquiries because they did not pose questions or we forwarded the questions to GRG as the party more appropriate for

handling the inquiry. We received 17 inbound phone calls and made 11 outbound phone calls. As a result of these additional contacts, we signed up 10 individuals for more information and added them to the Notice Mailing List.

10. ***Call Center Activity***. In addition to the above communications with Settlement Class Members, as of September 16, 2016, the Settlement Program's Call Center has received 13,032 calls, logging over 764 hours of call time with 6,704 of these callers speaking with live operators for over 444 hours. Through these communications, individuals have received updates on the status of the litigation and had other questions answered. As a result of these additional calls, we signed up 2,421 individuals for more information and added them to the Notice Mailing List.

11. ***Opt Outs and Revocations of Opt-Out Requests.*** In its April 22, 2015 Final Approval Order and Judgment, the Court directed the Claims Administrator to post a list of Opt Outs as of that date. Accordingly, BrownGreer posted on the Settlement Website a list of the 175 Opt-Out requests that were timely and included all elements required by Section 14.2(a) of the Settlement Agreement. This total reflected the 27 individuals who provided timely requests to revoke their Opt-Out requests before April 22, 2015 that contained all of the information required by Section 14.2(c) of the Settlement Agreement. BrownGreer also posted a list of the 33 Opt-Out requests that were untimely and/or missing one or more requirements set forth in Section 14.2(a).

**(a) Court-Approved Revocation Requests:** Since April 22, 2015, 11 individuals who were included on the list of timely and complete Opt Outs have submitted untimely requests to revoke their Opt-Out requests. BrownGreer reported each of these untimely revocation requests to the Parties, and the Parties agreed to accept the revocations. BrownGreer then submitted Declarations to the Court that described each revocation request. The Court has approved those revocation requests and we removed those 11 individuals from the list of timely and complete Opt-Out requests.

5

    **(b) Court-Approved Opt-Out Requests:**  Additionally, five individuals whose Opt-Out requests were previously categorized as untimely and/or incomplete have had their Opt-Out requests approved by the Court.  We removed these five individuals from the untimely list and added them to the list of timely and complete Opt-Out requests.

Accordingly, as of September 19, 2016, there are 169 Opt Outs whose requests were categorized as timely and containing all information required by Section 14.2(a) of the Settlement Agreement or whose requests were otherwise approved by the Court.  There remain 28 Opt-Out requests that were categorized as untimely and/or missing information required by Section 14.2(a) of the Settlement Agreement.  We posted both updated lists on the Settlement Website under the Court Documents page. Table 4 in the Attachment to this Declaration provides additional information on Opt Outs and Opt-Out revocations.

    12.    *Planning and Implementation of Settlement Program.*  Beginning on April 19, 2016, BrownGreer and GRG have had regular working calls with the Parties to review work plans, draft materials and Settlement Agreement implementation issues.  Paragraphs 13 and 14, below, provide illustrative examples of the ongoing progress made to date.

    13.    *Status of Registration.*  BrownGreer is preparing to launch the Registration process contemplated by Article IV of the Settlement Agreement promptly after the Effective Date.  To date, we have invested significant time and resources to the following categories of registration-related tasks:

    **(a) Registration Methods.**  We plan to implement three registration methods:

        **(1) Online Registration.**  Settlement Class Members or their attorneys can register by completing an online Registration Form, which we have designed and programmed to be dynamic to help guide the registrant through the registration requirements.

        **(2) Bulk Registration.**  To assist attorneys with large client inventories, we have designed and programmed an online Bulk Registration Spreadsheet, which allows an attorney to enter information for all of his or her clients on one spreadsheet, submit it to us online, and then sign electronically one time on behalf of all clients on that spreadsheet.

      **(3) Hard Copy Registration.** If a Settlement Class Member or attorney does not want to use the online Registration Form, he or she can register by using a hard copy Registration Form that we have drafted, which will be available on the Settlement Website or by mail upon request.

  **(b) Registration Notices.** We have also worked with Co-Lead Class Counsel and Counsel for the NFL Parties to draft the various notices for use during the registration process. These notices will inform registrants if they: (1) are Settlement Class Members who timely and properly registered, and whether they are eligible for the Baseline Assessment Program; (2) provided incomplete registration information and need to supplement their registration submission; or (3) are ineligible for the Settlement Program because they opted out or do not satisfy the definition of a Settlement Class Member. If a Settlement Class Member is eligible for the Baseline Assessment Program, the notice will provide instructions for the Retired NFL Football Player to schedule his baseline assessment examination.

  **(c) Attorney Representation Notices.** Section 30.2(a) requires attorneys representing Settlement Class Members to provide notice of representation to the Claims Administrator within 30 days of the Effective Date or within 30 days of retention if the attorney is retained after the Effective Date. Rather than creating an additional step that attorneys must complete before registration opens, we incorporated this requirement into the registration process. We have drafted a Notice of Representation Form that an attorney will sign after registering his or her clients. We will then send a Notice of Attorney Representation Form to the Settlement Class Member clients informing them that an attorney has registered them in the Settlement Program and all future communications about their claim will be with that attorney.

    14.    *Qualified MAF Physicians List.* Section 6.5 of the Settlement Agreement requires the Claims Administrator to establish within 90 days of the Effective Date a list of Qualified MAF Physicians eligible to provide Qualifying Diagnoses. Section 2.1(www) defines a Qualified MAF Physician as "a board-certified neurologist, board-certified neurosurgeon, or other board-certified neuro-specialist physician, who is part of an approved list of physicians authorized to make Qualifying Diagnoses." Because board-certified neurologists also are eligible to serve as Qualified BAP Providers, we are coordinating with GRG in identifying and recruiting key provider organizations in 53 target cities in or near where the majority of living Retired NFL Football Players currently reside, and together with GRG, we have been recruiting the board-certified neurologists affiliated with each of these

organizations to apply to be considered for both roles.  Separately, we are identifying and contacting additional providers who may wish to serve as Qualified MAF Physicians.

Section 6.5(b) of the Settlement Agreement requires the Claims Administrator to select Qualified MAF Physicians based on several criteria.  We list those criteria here together with the steps we are taking to satisfy each one:

(a) **Education, training, licensing, credentialing, board-certification and insurance coverage:**  Through the application and credentialing process, we elicit from each provider organization information and supporting documents to prove each applicant's education, licensing, board-certification, training, liability insurance coverage, and other required information.  We verify the provided information through independent third-party sources, including the National Plan & Provider Enumeration System, board-certifying bodies' official websites and rosters, and other commercial databases such as LexisNexis.

(b) **Ability to provide the specified examination necessary to make Qualifying Diagnoses:**  We determine through the information submitted on the Provider Application, as well as that obtained through our verification process, each applicant's specific certifications, specialties and experience to ensure that all applicants have the background in diagnosing cognitive impairment and neuromuscular impairment that is necessary to make each Qualifying Diagnosis.

(c) **Ability to provide all required examinations and services in a timely manner:**  Also through the application process, we elicit each applicant's availability to take on new patients as well as average wait times between requests for appointments and actual examinations.  We will use this information to confirm that we have sufficient Qualified MAF Physicians available to provide all required examinations in a timely manner.

(d) **Insurance accessibility:**  Because each visit to see a Qualified MAF Physician is at the Retired NFL Football Player's own expense, we ask applicants for their accepted insurance plans through the Provider Application to ensure that the selected Qualified MAF Physicians accept a variety of health insurance plans, including Medicare.  We may select Qualified MAF Physicians from multiple organizations within a geographic area to provide sufficient insurance accessibility.

(e) **Geographic proximity to Retired NFL Football Players:**  We use the address information from the Notice Mailing List to determine where Retired NFL Football Players live.  We then select Qualified MAF Physicians proportionally according to the geographic concentration of Retired NFL Football Players.  This ensures that sufficient Qualified MAF Physicians are available to meet higher demand in more heavily populated areas.

We have started identifying and contacting providers and collecting Provider Applications from potential Qualified MAF Physicians.  As we receive completed Provider Applications, we will verify credentials and submit applicants to the Parties for approval to serve as Qualified MAF Physicians.  We expect to have all steps completed and establish a list of Qualified MAF Physicians within 90 days after the Effective Date, as required by Section 6.5(a) of the Settlement Agreement.

15.     *Additional Information.*  We have prepared this Declaration and its Attachment to provide the Court with a status update on our preparatory work in anticipation of implementing the Settlement Program after the Effective Date.  We can make available any additional information or explanation the Court may find helpful.

I, Orran L. Brown, Sr., declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.  Executed on this 7th day of October, 2016.

_____
Orran L. Brown, Sr.

# ATTACHMENT

# NFL CONCUSSION SETTLEMENT
IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION
No. 2:12-md-02323 (E.D. Pa.)

| NFL 1002 | CLAIMS ADMINISTRATOR UPDATE (AS OF 9/19/16) | | | | | |
|---|---|---|---|---|---|---|
| **TABLE 1** | **WEBSITE VISITORS BY STATE** | | | | | |
| Row | Location | Unique Visitors | Visits | Average Actions[1] Per Visit | Average Time (Minutes) | Bounce Rate[2] |
| 1. | California | 11,281 | 11,948 | 2 | 2 | 71.2% |
| 2. | Texas | 8,268 | 9,330 | 2 | 2 | 65.5% |
| 3. | Florida | 7,348 | 7,878 | 2 | 2 | 68.5% |
| 4. | New York | 7,262 | 8,054 | 2 | 2 | 68.3% |
| 5. | Pennsylvania | 4,472 | 4,704 | 2 | 1 | 72.0% |
| 6. | Illinois | 4,102 | 4,284 | 2 | 1 | 74.1% |
| 7. | Georgia | 3,784 | 4,067 | 2 | 2 | 67.2% |
| 8. | New Jersey | 3,510 | 3,698 | 2 | 1 | 72.9% |
| 9. | Virginia | 3,349 | 3,518 | 2 | 1 | 72.9% |
| 10. | Ohio | 3,200 | 3,333 | 2 | 1 | 73.7% |
| 11. | North Carolina | 3,176 | 3,366 | 2 | 1 | 74.1% |
| 12. | Michigan | 3,155 | 3,311 | 2 | 1 | 73.7% |
| 13. | Unknown | 41,635 | 45,211 | 3 | 3 | 66.8% |
| 14. | Other | 44,535 | 47,621 | 2 | 1 | 73.4% |
| 15. | **Totals** | **149,077** | **160,323** | **2** | **2** | **70.2%** |

[1] An action occurs anytime the visitor views a new webpage, follows a link or takes any other action on the website.
[2] The Bounce Rate is the percentage of visitors who leave website after viewing only one page.



**CHART 1: WEBSITE VISITS FREQUENCY MAP**

# NFL CONCUSSION SETTLEMENT
IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION
No. 2:12-md-02323 (E.D. Pa.)

| NFL 1002 | | CLAIMS ADMINISTRATOR UPDATE (AS OF 9/19/16) | | | | | |
|---|---|---|---|---|---|---|---|
| **TABLE 2** | | **SIGN-UPS FOR FUTURE INFORMATION** | | | | | |
| Row | Sign-Up Method | Retired Player | Authorized Rep | Attorney for Player or Family | Family Member | Other/ Unknown | Total |
| 1. | Website | 5,174 | 492 | 317 | 1,512 | 808 | 8,303 |
| 2. | Call Center | 1,355 | 18 | 21 | 812 | 215 | 2,421 |
| 3. | P.O. Box | 36 | 1 | 7 | 11 | 6 | 61 |
| 4. | CA Inbox | 127 | 11 | 279 | 59 | 56 | 532 |
| 5. | Other | 2 | 0 | 2 | 4 | 2 | 10 |
| 6. | Totals | **6,694** | **522** | **626** | **2,398** | **1,087** | **11,327** |



**CHART 2: MONTHLY INFORMATIONAL SIGN-UPS**

| | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2014 | | | | | | 2015 | | | | | | | | | | | | 2016 | | | | | | | | |
| CA Inbox | 0 | 0 | 9 | 28 | 21 | 14 | 5 | 9 | 7 | 24 | 8 | 3 | 1 | 3 | 1 | 0 | 1 | 19 | 17 | 36 | 24 | 16 | 33 | 57 | 59 | 72 | 65 |
| P.O. Box | 3 | 12 | 8 | 3 | 3 | 6 | 1 | 4 | 1 | 0 | 3 | 0 | 0 | 2 | 0 | 1 | 0 | 0 | 1 | 2 | 2 | 3 | 1 | 0 | 0 | 5 | 0 |
| Call Center | 567 | 835 | 287 | 184 | 123 | 74 | 35 | 26 | 18 | 75 | 31 | 17 | 18 | 14 | 12 | 4 | 1 | 20 | 12 | 6 | 4 | 10 | 3 | 3 | 22 | 19 | 1 |
| Website | 937 | 1,487 | 502 | 621 | 192 | 129 | 109 | 79 | 72 | 186 | 209 | 147 | 173 | 82 | 90 | 153 | 83 | 125 | 111 | 158 | 130 | 269 | 301 | 529 | 532 | 814 | 83 |
| Other | 0 | 0 | 0 | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 2 | 0 |
| Total | 1,507 | 3,841 | 4,647 | 5,484 | 5,823 | 6,046 | 6,197 | 6,315 | 6,413 | 6,698 | 6,950 | 7,117 | 7,309 | 7,410 | 7,514 | 7,672 | 7,757 | 7,921 | 8,062 | 8,264 | 8,424 | 8,723 | 9,062 | 9,652 | 10,266 | 11,178 | 11,327 |

| **TABLE 3** | | **CLAIMANT CORRESPONDENCE AND CLAIMS ADMINISTRATOR RESPONSES** | | | |
|---|---|---|---|---|---|
| Row | Representation Status | Letters / Emails / Phone Calls / Faxes Received | Responses Sent | Response Not Required | Responses Including FAQs |
| 1. | Pro Se or Unknown | 409 | 371 | 38 | 72 |
| 2. | Represented | 458 | 414 | 44 | 51 |
| 3. | Totals | **867** | **785** | **82** | **123** |

| **TABLE 4** | | **POTENTIAL OPT-OUT SUMMARY** | | |
|---|---|---|---|---|
| Row | Settlement Class Member Type | Total Received | Revocation Requests Granted | Net Potential Opt-Outs |
| | **A. Timely Opt Out Requests Containing All Information Required by Section 14.2(a) or Otherwise Approved by the Court** | | | |
| 1. | Retired NFL Football Players | 184 | 34 | 150 |
| 2. | Relatives of a Retired NFL Football Player | 23 | 4 | 19 |
| 3. | Totals | **207** | **38** | **169** |
| | **B. Opt Out Requests That Were Untimely and/or Did Not Contain All Information Required by Section 14.2(a)** | | | |
| 4. | Retired NFL Football Players | 27 | | 27 |
| 5. | Relatives of a Retired NFL Football Player | 1 | | 1 |
| 6. | Totals | **28** | | **28** |
| 7. | Grand Totals | **235** | **38** | **197** |