UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARRY E. HAMILTON,<br>Plaintiff<br>v.<br><br>BERT BELL/PETE ROZELLE<br>NFL PLAYER RETIREMENT PLAN,<br>RETIREMENT BOARD OF THE BERT<br>BELL NFL RETIREMENT PLAN,<br>BECKY SUE THOMPSON, ESQ.<br>JOHN DOE, JANE DOE, ABC<br>CORPORATION (FICTIOUS ENTITIES<br>OR PERSONS TO BE DISCOVERED)<br>Defendants | :<br>:<br>:  MDL No. 2323<br>:  12-md-2323 and 14-6353<br>:<br>:<br>:<br>:<br>:  DEC - 1 2016<br>:  LUCY V CHIN Interim Clerk<br>:  By _____ D. Clerk<br>: |



## SECOND AMENDED DECLATORY JUDGEMENT, PRELIMINARY INJUNCTION WITH COMPLAINT AND REQUEST FOR TEMPORARY RESTRAINING ORDER

AND NOW Comes, Plaintiff, Harry Hamilton, proceeding pro se, and pursuant to applicable Rules of Civil Procedure, files this second amended action averring as follows:

76. Plaintiff incorporates by reference all prior filings and paragraphs 1-75 as if more fully and completely set forth herein. To any extent a more concise and plain complaint is needed, Plaintiff, Harry Hamilton (Hamilton), with a military record address in New Jersey and a home address of 167 Oak Street, P.O. Box 1737, Wilkes-Barre, Pa. 18702 sets for the following paragraphs.

77. Defendant, Becky Sue Thompson, Esq. (hereinafter Thompson) has a business address of 112 W Foster Avenue, State College, Pennsylvania 16801.

78. Defendant, National Football League (NFL), does business through or as the Bert Bell/Pete Rozelle NFL Player Retirement Plan and Retirement Board of the Bert Bell NFL Retirement Plan (hereinafter NFL) has a business address at 200 St. Paul Street, Suite 2420, Baltimore, Maryland, 21202. Upon information and belief, the NFL is doing business with or has otherwise contracted another entity to make determinations

concerning NFL retirement pay (AON Hewitt based on correspondence that Hamilton cannot currently locate and to which Hamilton attributes the symptoms of Chronic Traumatic Encephalopathy (CTE))

79. To the best of Hamilton's information the mentioned defendants Thompson and NFL are aware of this litigation through email or direct service for considerable time.

80. This Honorable Court has jurisdiction pursuant to 29 U.S.C. 1132(a)(3), under state law claims that do not appear in this paragraph due to the emergent nature of this filing (although all filings are emergent as history and recent publications would indicate Plaintiff's mental decline is inevitable), and to any extent not heretofore indicated in any pleading Plaintiff seeks immediate injunction pursuant to 28 USC 1331. Further, Plaintiff maintains that jurisdiction is based upon a 2004 case resembling the issues in a contemporaneous state law case, to wit:

> International Painters and Allied Trades Industry Pension Fund v. Calabro, 312 F. Supp. 2d 697 (2004) (a determination by this Honorable Court determining common law marriage in Pennsylvania) that stated as a basis for jurisdiction over the matter in material part:
>
> This suit arises under 29 U.S.C. § 1132(a)(3), which provides that "a participant, beneficiary, or fiduciary, [may bring a civil action] (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3) (emphasis added). Plaintiffs Pension Fund and Gary Meyers, fiduciary of the Funds, filed this action for equitable relief to enforce the terms of the plan at issue. Citation Omitted. Because this action arises under federal law, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Id.

81. Prior to or on November 1, 2016, defendants acting in concert and individually have arranged or otherwise orchestrated holding one thousand, one hundred and ninety-three dollars and thirty-four cents ($1,193.34), now representing one hundred

percent of Hamilton's retired pay based upon that which should be the only controlling order, i.e. the divorce decree and settlement agreement from Florida. See attached.

82. The NFL, in concert with or under the direction of Thompson, has acted upon an order or combination of orders to write or re-write or re-direct the contracts between individuals contrary to the intent of the parties, interfering with the parties' common law right of contract. The result is that retirement income is no longer being paid directly to Hamilton and Hamilton contends contrary to the Employee Retirement Income Security Act of 1974, as amended (ERISA). See Title 29 USC Chapter 18.

83. Given that which has been documented about the effects of CTE of which both defendants are well aware, Hamilton specifically contends the action of withholding that which now represents one hundred percent (100%) of retired pay is tantamount to pulling the trigger of a loaded weapon (and the NFL knows or should know by now, domestic issues in particular underlie the unfortunate demise of former NFL players. Further, Hamilton discussed this with Thompson with a view toward representation during the summer of 2014). Hamilton quickly adds that statistics indicate that holiday time is particularly burdensome and defendants should be held accountable for acting at this time.

84. Though Hamilton attaches that which Hamilton respectfully maintains is the controlling divorce settlement agreement pursuant to the common law contract rights as well as other issues, Hamilton maintains that prior filings (as well as investigations by the United States Army) will indicate at least one other marriage. Hamilton filed to vacate that other marriage finding/judgement and has already sought appeal of any adverse ruling.

85. Because of the impact to the family, and specifically to Hamilton's children, Hamilton contends the defendants actions cause undue and severe emotional distress for which both should be held accountable.

86. As indicated in prior pleadings there are a multitude of additional issues to include recent determinations by Federal entities tied directly to the resultant effects of CTE, but Hamilton focuses on bringing immediate cessation to the issues during holiday time when basic means of sustenance have been severed as a result of the actions of defendants contrary to law.

87. For all of the foregoing reasons, and particularly those in paragraphs 77 through 85 above, defendants should have to pay immediately for harm caused to include the time to draft and file this document at a minimum. Additionally, Hamilton requests an immediate hearing to alleviate the immediate suffering of no income during the holiday.

Wherefore, Hamilton respectfully requests immediate and permanent injunctive relief, all attendant costs, damages including any punitive amount, and declaratory relief aside from the relief previously requested.

Respectfully submitted,

Harry Hamilton, Plaintiff, Pro Se
167 Oak Street, P.O. Box 1737
Wilkes-Barre, PA 18702
Cellular (973)-951-9091

Public Records of St. Johns County, FL Clerk # 2011060487, O.R. 3499 PG 1281, 12/01/2011 at 10:30 AM REC. SUR.

Pasco case # 986115575
Docket # 1290-2015

HEREBY CERTIFY THAT THIS DOCUMENT IS A TRUE AND CORRECT COPY AS APPEARS ON RECORD IN ST. JOHNS COUNTY, FLORIDA WITNESS MY HAND AND OFFICIAL SEAL THIS ___ DAY OF _____ 20__
CHERYL STRICKLAND, CLERK
BY: _____ D.C.

IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT,
IN AND FOR ST. JOHNS COUNTY, FLORIDA

Case No.: DR11-1788
Division: 58

DONNA MANCINO
    Petitioner,

and

HARRY HAMILTON
    Respondent.

FILED 2011 NOV 30 P 4: __ CHERYL STRICKLAND CLERK OF CIRCUIT COURT ST. JOHNS COUNTY

**FINAL JUDGMENT OF DISSOLUTION OF MARRIAGE WITH MINOR CHILD(REN) (UNCONTESTED)**

This cause came before this Court for a hearing on a Petition for Dissolution of Marriage. The Court, having reviewed the file and heard the testimony, makes these findings of fact and reaches these conclusions of law:

1. The Court has jurisdiction over the subject matter and the parties.
2. At least one party has been a resident of the State of Florida for more than 6 months immediately before filing the Petition for Dissolution of Marriage.
3. The marriage between the parties is irretrievably broken. Therefore, the marriage between the parties is dissolved, and the parties are restored to the status of being single.
4. Marital Settlement Agreement. The parties have voluntarily entered into a Marital Settlement Agreement and Parenting Plan, and each party has filed the required Family Law Financial Affidavit. Therefore, the Marital Settlement Agreement and Parenting Plan is filed as Exhibit A in this case and is ratified and made a part of this final judgment. The parties are ordered to obey all of the provisions.
5. The Court finds that the parties have the present ability to pay support as agreed to in the marital settlement agreement as ratified and made part of this final judgment.
6. ( ) yes (✓) no. The wife's former name of {full legal name} _____ is restored.
7. The Court reserves jurisdiction to modify and enforce this final judgment.

DONE AND ORDERED at St. Johns County, Florida, on __11/29/11__.

_____
CIRCUIT JUDGE

COPIES TO: 11/30/2011
Petitioner (or his or her attorney)
Respondent (or his or her attorney)

Florida Supreme Court Approved Family Law Form 12.990(b)(1), Final Judgment of Dissolution of Marriage with Minor Child(ren) (Uncontested) (12/10)

closed DR11-1788 R

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARRY E. HAMILTON, | : |
| Plaintiff | : |
| v. | : MDL No. 2323 |
| | : 12-md-2323 and 14-6353 |
| BERT BELL/PETE ROZELLE | : |
| NFL PLAYER RETIREMENT PLAN, | : |
| RETIREMENT BOARD OF THE BERT | : |
| BELL NFL RETIREMENT PLAN, | : |
| BECKY SUE THOMPSON, ESQ. | : |
| JOHN DOE, JANE DOE, ABC | : |
| CORPORATION (FICTIOUS ENTITIES | : |
| OR PERSONS TO BE DISCOVERED) | : |
| Defendants | : |

### AMENDED MOTION FOR TEMPORARY RESTRAINING ORDER AND RECONIDERATION

AND NOW, Comes Harry E. Hamilton, Plaintiff appearing pro se, and in accordance with appropriate Rules of Federal Civil Procedure files this motion averring as follows:

    5. Plaintiff, Harry Hamilton (Hamilton) incorporates by reference paragraphs 1-4 in the prior filing for a restraining order as if more fully set forth herein noting the prior denial entered November 7, 2016.

    6. Based on the urgency of the matter and the immediately prior denial, Hamilton incorporates by reference paragraph 80 of the contemporaneously filed second amended complaint indicating this Honorable Court's jurisdiction pursuant to 29 USC 1132(a)(3), to wit:

> International Painters and Allied Trades Industry Pension Fund v. Calabro, 312 F. Supp. 2d 697 (2004) (a determination by this Honorable Court determining common law marriage in Pennsylvania) that stated as a basis for jurisdiction over the matter in material part:
>
> This suit arises under 29 U.S.C. § 1132(a)(3), which provides that "a participant, beneficiary, or fiduciary, [may bring a civil action] (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29

U.S.C. § 1132(a)(3) (emphasis added). Plaintiffs Pension Fund and Gary Meyers, fiduciary of the Funds, filed this action for equitable relief to enforce the terms of the plan at issue. Citation Omitted. Because this action arises under federal law, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Id.

7. Hamilton adds the urgency now although foreshadowed for years (not unlike the NFLs knowledge of concussions and the resultant damage) because Hamilton needs a means to subsist and as such files contemporaneously by hand delivery on December 1, 2016, yet another day payment was to be forthcoming (no payment on November 1, 2016) as Hamilton (and therefore Hamilton's children). Hamilton (and Hamilton's children) immediately needs what amounts to two thousand three hundred and eighty six dollars and sixty eight cents ($2,286.68), the amount currently held by defendants, in combination but specifically, the National Football League through various entities.

8. The Internal Revenue Service has redirected funds that Hamilton (and Hamilton's family have not received but that matter goes to a host of additional issues in the case, including legal malpractice, and may involve defendants yet to be discovered).

9. Specifically, Hamilton contends that the requirements of 29 USC 1056 (d) (3) have not been satisfied. Even more specifically, any plausible contention that the requirements of 29 USC 1056 (d)(3)(B)(ii)(II) can be satisfied, Hamilton contends is highly suspect and contrary to law.

10. For the foregoing reasons, and a host of additional reasons more specifically contained in affidavits, Hamilton respectfully requests an order restraining the NFL, by and through whatever departments and entities, from withholding funds and directing immediate payment of all funds currently withheld.

11. Hamilton must take time to mention/reference that nearly two years ago to month, Hamilton found himself in a similar situation concerning Hamilton's son in a group home when Hamilton sought immediate child custody after a since recused jurist referenced termination of Hamilton's parental rights (and was able to obtain an immediate conference albeit after the child was released from the group home). Hamilton took an oath to defend the Constitution and has recently resisted a suggestion that the oath has limitations about which Hamilton was unaware at the time of taking the oath. Hamilton contends this filing, not unlike the filing two years ago, is the constitutionally protected right to the pursuit of life and liberty. Hamilton remains resolute in Hamilton's protection of family as Hamilton has defined family and can only point to the various and a sundry pitfalls between the United States Supreme Court decisions in Marbury v. Madison, Troxel v. Granville, Dred Scott v. Sandford, Elk Grove Unified School Dist. v. Newdow, and the various state laws and cases deciding rights to the basic fabric of human existence that Hamilton respectfully contends are the underpinnings of the tragedies of many military veterans (committing suicide at a rate of 22 a day??) and NFL players. Citations omitted.

Wherefore Hamilton requests a temporary restraining order on the withholding of retirement pay currently withheld with direction to make payment of all funds currently withheld immediately pending further order of court and any other appropriate relief.

Respectfully submitted,

Harry Hamilton, Plaintiff, Pro Se
167 Oak Street
P.O. Box 1737
Wilkes-Barre, PA 18702
Cellular (973)-951-9091

Harry Hamilton, Esq.
167 Oak Street
P.O. Box 1737/P.O. Box 986
Wilkes-Barre, PA 18702/Lemont, PA 16851
973-951-9091
May 3, 2016

Honorable Anita B. Brody
C/O Chambers
Eastern Federal District Court
601 Market Street, Suite 7613
Philadelphia, PA 19106

Re: In Re National Football League Players' Concussion Injury Litigation No. 2:12-md-02323-AB MDL 2323 - Letter Complaint – Jury Demand, Hamilton v. National Football League 14-6353, and State Court Litigation

Affidavit as I Harry Hamilton do affirm that:

1. Defendant's Becky Sue Thompson, Esq. and the National Football League act or conspire to act contrary to Federal law when communicating and obtaining guidance given the status of the cases at Centre County Case Nos. 04-2534 and recently opened 04-0339.

2. I am aware that this hastily prepared though often contemplated statement may be used for several purposes to include the purpose at the end of this document even though this is rushed to serve as a basis to reconsider injunctive relief due to a complete failure of due process under the Fourteenth Amendment in the Court of Common Pleas Centre County. Ultimately, the pecuniary interest generated by the relevant portions of 42 USC 651 et. seq. (parts reproduced infra), the noted recusal of the Court at the trial level occurring during the month before and months after an appellate upholding of a common law marriage, and the decisional law of Pennsylvania to include the findings in International Painters and Allied Trades Industry Pension Fund v. Calabro, 312 F. Supp. 2d 697 (2004) (a determination by this Honorable Court determining common law marriage in Pennsylvania) that stated as a basis for jurisdiction over the matter in material part:

> This suit arises under 29 U.S.C. § 1132(a)(3), which provides that "a participant, beneficiary, or fiduciary, [may bring a civil action] (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3) (emphasis added). Plaintiffs Pension Fund and Gary Meyers, fiduciary of the Funds, filed this action for equitable relief to enforce the terms of the plan at issue. Citation Omitted. Because this action arises under federal law, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

Id. Defendant, Becky Sue Thompson, Esq. the attorney for the Plaintiff in Court of Common Pleas Case Nos. 04-2534, 04-0339 (and others given the multiple captions concerning the same parties) set to be heard tomorrow, May 4, 2016 over multiple objections, represented in Court on March 1, 2016 that she had spoken with the NFL as she sought to obtain and ensure the collection of money through the Commonwealth of Pennsylvania in her capacity as Officer of the Court securing a qualified domestic relations order. I respectfully maintain that Becky Sue Thompson's negligence has resulted in making of public record private information to embarrass and humiliate me while acts contrary to ethics in representing opposing party after obtaining a theory of the case from me. The NFL cannot conduct business as usual given all that has transpired to include the recusal of judges and the reliance of those judge's decisions forming a basis for actions and communication with Defendant Becky Sue Thompson, Esq. and forming a conspiracy to deprive me of Fourteenth Amendment protections. This case is governed by the following and the conspiratorial conduct by the NFL and Defendant Becky Sue Thompson, Esq. as officer of the court to benefit from the funding lure of 42 USC 651 et. seq. deprives me of due process under the Fourteenth Amendment, violates my right to privacy, and requires more than just purporting to follow federal law:

> From the inception of their relationship in 1966, through April 14, 1977, the date of Dorothy's divorce decree, Victor and Dorothy could not enter into either a common law or a traditional marriage. As such, the vows they exchanged during Dorothy's sister's wedding on January 8, 1977, did not create a valid common law marriage. Likewise, Victor's marriage proposal to Dorothy on Christmas eve of 1969 was insufficient to create a common law marriage. Not only were both Dorothy and Victor married to other persons at that time, Victor did not use *verba in praesenti*, rather, he asked Dorothy to marry him at some future time.

3. My hope is that this statement might form a comprehensive purpose and serve as almost my manifesto since I am uncertain about my memory, my ability to focus, and the future.

4. I have been writing this document for considerable time but while I write in my head during early morning hours, I have rarely actually written.

5. This document is hurried to serve as an affidavit in support of injunctive relief along with special relief against the National Football League (NFL) and defendant Becky Sue Thompson, Esq. to ensure no money is taken from potentially my only income at present (I do get benefits from the Office of Personnel Management but much of that income goes to health benefits). I wish this Honorable Court accept and execute of the attached child support qualified domestic relations draft order for the benefit of my son in favor of his mother. The Court of Common Pleas has stated jurisdiction lies in Florida leaving the parties without an executed order in the event my health declines with the swiftness that appears to have befallen Fred McNeill (a former attorney and NFL player who passed November 2015)

6. I seek to illustrate the negligence cause of action against Becky Sue Thompson, Esq. who is serving as the fifth (5th counsel) appearing on Centre County Case No. 04-2534 after Plaintiff in the case had been without counsel for over two years.

7. I hope this document will also serve to illustrate that which the NFL knew or should have known would be the case as players are glamorized and ultimately become targets given heftier than average salaries and incomes. Not only did the NFL know about concussions and chronic traumatic encephalopathy but also about the losses suffered to include disintegration of families.[1]

8. During a summer football camp for our sons in 2014 pursuant to a recommendation/referral of a mutual friend, I engaged Ms. Thompson and began explaining in detail much of what is contained in this statement/affidavit. I went further and allowed that Plaintiff who has known me since the age of 15/16 when she was still in high school and I was a Pennsylvania State University freshman knew the philosophy that the system would be against a Black African/Aboriginal American male versus almost any other party. I explained that Plaintiff likely had a cause of action against her prior attorneys because that did not explain why the case had not moved forward under the recused jurist and then stalled after the discovery matter in December 2011 when the attorneys did not seek to strike objections. However, no cause of action would be successful because the court might ensure the failure of a case against local counsel, both of whom served under as clerks for successive President Judges. That the case was about getting at what is likely perceived as the deeper pocket since I was a former NFL player. I had learned that at the core of the matter was child support and spousal support that must be ensured due to 42 USC 651 et. seq. I further allowed that as an attorney for little more than a year, she might need more experience to take my case because of the insurmountable odds. She should spend some time building credibility by taking cases against the bread winner or deeper pocket. I was surprised that after listening to my case in great detail, she began representing Plaintiff less than a year after the discussions took place and immediately began doing that which I accused Plaintiff's prior attorneys of failing to do especially given the ease with which it could be accomplished in the trial court. Efforts to illustrate that Ms. Thompson's negligent actions violated her professional responsibility have been unsuccessful.

9. Above all else, my son is worried about what may happen on May 4, 2016 and in the event something other than the threat to take all my property, i.e. imprisonment as the President Judge sent a Christmas greeting with Blacks involved with prison in 2013 signaling to the undersigned an unwelcomed disposition. The picture came out within months of my sentence of imprisonment unless I 'again' respond to discovery. Therefore, I am sending this out on May 3, 2016 in case I have been wrongfully incarcerated because of my belief in the Constitutional Rights, specifically, Due Process and what appears to be a right to a fair and impartial tribunal and certainly the right to enjoin the informative efforts of the NFL (who benefits from helping state agencies?).[2]

---

[1] The divorce rate and how the family court system handles income and support in accordance with 42 USC 651 et. seq., I respectfully assert underlies much of what is now known following suicides and other behavioral issues for those later found to have CTE (I am fairly certain that the family law issues are present but likely unspecified because it would have the effect of essentially blaming family for the tragedy as we lose that which is most important to former players – significance and heightened relevance in the lives of family). We become most significant to the opposing attorneys, debt collectors, and all benefactors of the funding available through 42 USC 651 et. seq. This footnote contains the theory of the case against not only the NFL but also the collaborators as represented by the officer of the court, Becky Sue Thompson, Esq. who supports the deprivation of Constitutional rights under color of law.

[2] My father would often indicate that a Black African/Aboriginal American male needed one case when going into Court, Dred Scott v. Sanford 60 US 393 (1857) (Dred Scott). The abhorrent reference to a '[b]lack man having no

a. A fair reading of Tumey v. State of Ohio, 273 U.S. 510, 532 (1927) (a case in which a mayor could not sit and judge an offense given the pecuniary interest in the outcome) would suggest that if there is a pecuniary interest in the outcome perhaps through court grants (as provided in 42 USC 651 et. seq., then a different tribunal is necessary and appropriate.

b. In my case, I fear that a pecuniary interest may be such that summarily placing my son in a home is the desired result even if it means incarcerating me to achieve that end result. Despite the recusal of the Centre County Court, the state disbursing unit acting as a party, seeks contempt of an alimony award to a common law marriage completely outside any agreement of the parties. This touches upon questions of mootness in United State Court of Appeals for the Third Circuit Case No 15-3111 since my son was to be paid for keeping in touch with state agencies (perhaps a program generating federal funding), he still has a(n) (unnecessary yet court ordered) guardian ad litem (who also served as his counsel at one time in a related case – that conflict has gone unaddressed) paid for by County funds, and he still sees a therapist/psychologist. Thus, notwithstanding anything that has happened, the funding provisions of 42 USC 651 et. seq.. In writings or thoughts long since forgotten, I have indicated that what was known as the Kids for Cash (judges accepting payments for incarcerating children – essentially dissatisfied with the level of pecuniary interest already generated through 42 USC 651 et. seq.) scandal had its origins in the Orphan's Court of Luzerne County. Pertinent provisions that render the taking of my son capable of repetition without review are as follows (I left my job in part because of CTE but also because the local agency showed at my door simply because I was away on job related training):

42 USC 654
(6) (E) any costs in excess of the fees so imposed may be collected— (i) from the parent who owes the child or spousal support obligation involved; or…
(7) provide for entering into cooperative arrangements with appropriate **courts** and law enforcement officials and Indian tribes or tribal organizations (as defined in subsections (e) and (/) of section 450b of title 25) assist the agency administering the plan, including the entering into of financial arrangements with such **courts** and officials in order to assure optimum results under such program, and (B) with respect to any other matters of common concern to such **courts** or **officials and the agency administering the plan**; (emphasis added).

42 USC 669b
(a) In General The Administration for Children and Families shall make grants under this section to enable States to establish and administer programs to support and facilitate noncustodial parents' access to and visitation of their children, by means of activities including mediation (both voluntary and mandatory), counseling, education, development of parenting plans,

---

rights that a white man need respect' is underlying modern day movements (for example Black Lives Matter). When the President Judge circulates a photograph among colleagues depicting Blacks in prison, does it support Chief Justice Taney's decision as a contempt hearing is set down for tomorrow, May 4, 2016 in the very court with orders to appear and answer or face possible incarceration? The very judge who has now twice recused signed the order (and this same Court of Common Pleas Centre County has come under recent headlines because of purported forged signatures of judges or a judge to accomplish court related matters). Are prosecutors and state officers infused with discretion to sign judge's signatures to orders to accomplish ensuring pecuniary interest or other court grants?

visitation enforcement (including monitoring, supervision and neutral drop-off and pickup), and development of guidelines for visitation and alternative custody arrangements.

(e) State Administration

Each State to which a grant is made under this section—

(1) may administer State programs funded with the grant, directly or through grants to or **contracts with courts**, local public agencies, or nonprofit private entities; (emphasis added).

(3) shall monitor, evaluate, and report on such programs in accordance with regulations prescribed by the Secretary.

42 USC 608

(a) In General

(1) No Assistance for Families without a minor child

A State to which a grant is made under section 603 of this title shall not use any part of the grant to provide assistance to a family, unless the family includes a minor child who resides with the family (consistent with paragraph (10)) or a pregnant individual.

(3) No Assistance for families not assigning certain support rights to the State

A State to which a grant is made under section 603 of this title shall require, as a condition of paying assistance to a family under the State program funded under this part, that a member of the family assign to the State any right the family member may have (on behalf of the family member or of any other person for whom the family member has applied for or is receiving such assistance) to support from any other person, not exceeding the total amount of assistance so paid to the family, which accrues during the period that the family receives assistance under the program.

c. The connection of the funding from the above needs to be examined to discern the profit level of state involvement with children. I reference Dred Scott because the current system with minorities over represented in the child welfare system and my treatment in the courtroom despite my 22 years as an attorney suggest that I as a Black African/Aboriginal American male have no rights to my child that need be respected such that my child can be taken essentially right from the living room of the home (and he fears such a result as contempt looms and the court acting a third party beneficiary continues to seek discovery with no hearing on the basis for objections and the guardian ad litem goes directly to the school to have him removed from class – bearing the glare of having done something wrong -- to meet or fear non-compliance means he returns to a group home).

5. Even though the judges of the 'court' have recused, I remain concerned that the bigger picture is a general predisposition going beyond race or ethnic background and toward the draw of money, i.e. the federal court grants/programs of 42 USC 651 et. seq. and the possibility that recusal, the basis for recusal, and any ensuing rationale will be found to be inconsequential despite case law to the contrary.

a. Therefore, because the judge finding the marriage in the contemporaneously filed support action at Case No. 04-0339 searched Colorado records (not to mention that his clerk would late represent the Plaintiff against me without ever disclosing the clerkship), I must indicate that my hasty research based on the time to submit this document (and can be more properly annotated later) uncovers that the preamble to the judicial code of conduct indicates:

b. This Code shall constitute the "canon of . . . judicial ethics" referenced in Article V, Section 17(b) of the Pennsylvania Constitution, which states, in pertinent part: "Justices and judges shall not engage in any activity prohibited by law and shall not violate any canon of legal or judicial ethics prescribed by the [Pennsylvania] Supreme Court.

c. Comment 2 to Rule (Canon) 2.3 maintains that "[a] judge must avoid conduct that may reasonably be perceived as prejudiced or biased" and the Centre County Court of Common Pleas President Judge after having been found to have circulated via email a photograph of Black African/Aboriginal Americans involving prison withdrew his nomination to the Pennsylvania Supreme Court that has had other removals or resignations based in part upon less than appropriate emails. Further, the President Judge who in 2004 split child custody evenly between mother and father issued an order within months (April 2015) of the finding of marriage being upheld by the Superior Court (January 2015) recusing the Judges of Centre County Court of Common Pleas (presumably the Court and those Judges of which he is President) after having recused himself years earlier (April 2010).

d. I make the lengthy observation because the judge authoring the recusal orders of himself in 2010 and of the Court in his capacity of President Judge (after having withdrawn his name for consideration to the Pennsylvania Supreme Court to fix problems locally) in 2015 had seemingly never sought to deal with the common law marriage issue after having found no parties to have contact with Centre County less than six months prior to commencement of the underlying action (convicted former Judge Conahan had summarily declined jurisdiction of the case in Luzerne County) (a lengthy docket in Centre County Case No. 04-2534 deals predominantly with child custody). Rather it was another jurist in Case No. 04-0339 who made a finding of marriage in a contemporaneously filed support action even though Pa.R.C.P. 1931 calls for combining actions (I tend to think there is a specific reason for separating the cases and docket numbers but can only assume that 42 USC 651 et. seq. has some relevance to the handling and docketing (hence, there is an order re-opening and joining Case No. 04-0339

e. I can state that anyone, learned in law or not, executing an affidavit in 2000 and relying upon Staudenmayer v. Staudenmayer 714 A.2d 1016 (Pa. Supreme Court 1998) (a case upholding common law marriage in Pennsylvania but going beyond principles of contract and ensuring the burden is on Plaintiff to prove verbae in praesenti) has to and had to make a serious reassessment about the decisional law in the years of 2003 through 2005 following: PNC Bank Corp. v. WCAB (Stamos), 831 A.2d 1269, (Pa. Commonwealth Court 2003)(upholding a lower finding of common law marriage albeit involving death of a spouse but purporting to abolish common law marriage prospectively)(PNC Bank), Bell v Farraro, 849 A.2d 1233 (2004) (lower court finding no common law marriage despite execution of an affidavit of common law marriage upheld) Stackhouse v. Stackhouse, 862 A2d 102 (2004) (appellate court decided that because of PNC Bank, supra, there could be no common law marriage and no support pending litigation), Perrotti

v. Meredith, 868 A.2d 1240 (2005)(again upholding a trial court finding of no common law marriage).

f. In 2003, as indicated, PNC Bank purported to abolish Common Law Marriage perhaps causing the then sitting jurist in 04-2534 to eschew action on the divorce complaint (only the jurist can speak directly about this matter but at the time a junior member of his former law firm, i.e. she started within two or so years after his ascension to the bench, had taken over Plaintiff's case allowed the case to be dismissed in 2007 and another case docketed in 07-1480 – the direction of jurist to or with others in the court can only be gleaned by perhaps email communications and reading between lines in decisions something I am not about to speculate upon in this document). Notwithstanding, the PNC Bank decision could mean that formation may be possible but certainly division of assets would be foreclosed upon and all that remained was perhaps a share of an estate upon death, insurance benefits while living, and in my case perpetual support as long as the case remained in litigation (unlike PNC Bank involving a deceased spouse, the lower court or body did not uphold a common law marriage and the appellate court affirmed in most cases I find – wherein my case, the reverse is true in that the lower court jurist investigates outside the record to find a common law marriage which is subsequently upheld on appeal even though Plaintiff's co-counsel clerked for the trial court judge finding a marriage at or about the time when a decision on the case was rendered). I do know that the parties (me) specifically eschewed a license and state or institutional involvement and that I sought benefits at a time Plaintiff had no job and any insurance was inadequate as my basis for executing an affidavit (I could not find anywhere in the regulations researched at the time a need to assert that there was no prior marriage – polygamy permitted since a marriage license application asks the question of prior marriage?). Notwithstanding, any assessment in 2004/2005 was certainly different than 2000 based upon decisional law. The legislature spoke effective January 2005 (leaving in my mind the question that while formation may be sustainable for all marriages prior and estate or insurance proceeds available (or in my case perpetual support pending litigation), certainly any division of assets had been foreclosed upon?)(PNC Bank provides an overview of common law marriage before concluding it is no longer necessary)

10. The Pennsylvania Supreme Court is considering (and may decide not to take or otherwise address much of what is contained in this affidavit), Petitions for Allowance of Appeals on now three (3) determinations concerning mother, father, and child/son (mother has other children and father an additional son). In part, this filing/affidavit is necessary in the event no action is taken by the Pennsylvania Supreme Court and the trial court continues to rely on orders of recused judges perhaps in accordance with Riccio v. American Republic Ins. Co., 705 A.2d 422 (Pa. Supreme Court 1997) (a case indicating the obligation to follow the prior orders in the case)

11. Injunctive relief is again requested preventing the NFL and any government entity from accepting or directing any action based upon the decisions of recused judges of Centre County Court of Common Pleas as well as special relief and execution of the order on behalf of my son.

12. In the event decline continues, I incorporate my letter of December 24, 2015 and footnote 4 clarifying that "MK" is Michael Kostelaba, Esq., the third attorney beyond my brother that I trust. I hope this affidavit can be forwarded to any appointed counsel. (As this document was being prepared a call came from the domestic relations section indicating that they were withdrawing the contempt petition set for tomorrow, May 4, 2016 – but that unlike the April 8, 2016 hearing that was postponed because of considerations by the Pennsylvania Supreme Court, the May 4, 2016 hearing would continue.

                                          Respectfully submitted,

                                          In the Interest,

                                          /s/
                                          Harry Hamilton

cc: To Be Made Available to All Counsel of Record
     Through Applicable Electronic Service

Harry Hamilton, Esq.
167 Oak Street
P.O. Box 1737/P.O. Box 986
Wilkes-Barre, PA 18702/Lemont, PA 16851
973-951-9091
November 6, 2016

Honorable Anita B. Brody
C/O Chambers
Eastern Federal District Court
601 Market Street, Suite 7613
Philadelphia, PA 19106

Re: In Re National Football League Players' Concussion Injury Litigation No. 2:12-md-02323-AB MDL 2323 - Letter Complaint – Jury Demand, Hamilton v. National Football League 14-6353, and State Court Litigation

Amended Motion for Temporary Restraining Order and Affidavit as I Harry Hamilton do affirm that:

1. My most recent filing presents the federal question of whether the National Football League (NFL) unconstitutionally applies the Employee Retirement Income Security Act of 1974 (ERISA) or specifically, 29 USC 1065.

2. I believe there must be some manner of redress as 100% of my retirement income from the NFL has been withheld or diverted without an opportunity to be heard and presenting grave hardship. Thus, either ERISA is unconstitutional in that it permits no redress or is being unconstitutionally applied.

3. Please see the attached and forwarded letter/affidavit and kindly attach or supplement my mailed motion accordingly as I referenced a basis for jurisdiction, i.e. International Painters and Allied Trades Industry Pension Fund v. Calabro, 312 F. Supp. 2d 697 (2004) (a determination by this Honorable Court determining common law marriage in Pennsylvania) that stated as a basis for jurisdiction over the matter in material part:

> This suit arises under 29 U.S.C. § 1132(a)(3), which provides that "a participant, beneficiary, or fiduciary, [may bring a civil action] (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3) (emphasis added). Plaintiffs Pension Fund and Gary Meyers, fiduciary of the Funds, filed this action for equitable relief to enforce the terms of the plan at issue. Citation Omitted. Because this action arises under federal law, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

Id.

Re: In Re National Football League Players' Concussion Injury Litigation No. 2:12-md-02323-AB MDL 2323 - Letter Complaint – Jury Demand, Hamilton v. National Football League 14-6353, and State Court Litigation

4. I firmly believe that the denials to date have given energy to the idea that %100 percent withholding can be obtained regardless. The signatory on the enclosed order is a recused former jurist who did not seek re-election just prior to the execution of the document. Nonetheless, the NFL in conjunction, coordination, and conspiracy with defendant Becky Sue Thompson, Esq. have engineered a way to stop withhold 100% of the retirement income.

5. I seek a means to obtain immediate redress and an injunction preventing the withholding of more than 1100 monthly so that I may pay for shelter for my son.

Respectfully submitted,

In the Interest,

/s/
Harry Hamilton

cc: To Be Made Available to All Counsel of Record
    Through Applicable Electronic Service

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARRY E. HAMILTON, : <br> Plaintiff : <br> v. : <br> : <br> BERT BELL/PETE ROZELLE : <br> NFL PLAYER RETIREMENT PLAN, : <br> RETIREMENT BOARD OF THE BERT : <br> BELL NFL RETIREMENT PLAN, : <br> BECKY SUE THOMPSON, ESQ. : <br> JOHN DOE, JANE DOE, ABC : <br> CORPORATION (FICTIOUS ENTITIES : <br> OR PERSONS TO BE DISCOVERED) : <br> Defendants : | MDL No. 2323 <br> 12-md-2323 and 14-6353 |

### VERIFICATION

I, Harry Hamilton, Plaintiff in the above-captioned matter, verify that the statements in the foregoing affidavits by letter, second amended complaint for declaratory and injunctive relief and amended motion for temporary restraining order are true and correct to the best of my knowledge, information and belief understanding the penalties relating to penalty for perjury and unsworn falsification to authorities under 28 USC 1746 and 18 Pa.S.C. 4904.

December 1, 2015

Harry Hamilton, Pro Se
167 Oak Street
P.O. Box 1737
Wilkes-Barre, Pa. 18703
Cellular (973) 951-9091

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HARRY E. HAMILTON,
    Plaintiff
    v.

BERT BELL/PETE ROZELLE
NFL PLAYER RETIREMENT PLAN,
RETIREMENT BOARD OF THE BERT
BELL NFL RETIREMENT PLAN,
BECKY SUE THOMPSON, ESQ.
JOHN DOE, JANE DOE, ABC
CORPORATION (FICTIOUS ENTITIES
OR PERSONS TO BE DISCOVERED)
    Defendants

MDL No. 2323
12-md-2323 and 14-6353

## CERTIFICATE OF SERVICE

I, Harry Hamilton, Plaintiff in the above-captioned matter, hereby certify that I am causing a true and correct copy of the foregoing to be served this 1st day of December 2016 via United States mail postage prepaid to the following:

NFL through Ms. Meyli Markward
C/O Groom Law Group, Chartered
1701 Pennsylvania Avenue, N.W.
Washington, DC 20006-5811
(also via email)

Becky Sue Thompson, Esq.
112 W. Foster Av
State College, PA 16801

Harry Hamilton, Plaintiff, Pro Se
167 Oak Street
P.O. Box 1737
Wilkes-Barre, PA 18702