IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated, | No. 2:12-md-02323-AB |
| Plaintiffs, | MDL No. 2323 |
| v. | **Hon. Anita B. Brody** |
| National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc., | |
| Defendants. | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**ESTATE OF KEVIN TURNER'S MOTION TO RESOLVE ATTORNEY FEE DISPUTE
AND TO APPEAR AS COUNSEL FOR PAUL RAYMOND TURNER,
THE PERSONAL REPRESENTATIVE OF THE ESTATE OF KEVIN TURNER**

1.      The duly appointed Personal Representative of the Estate of Kevin Turner (the "Estate"), Paul Raymond Turner, respectfully moves the Court to resolve an attorney fee dispute between the Estate and Class Counsel[1] at the law firm of Podhurst Orseck P.A ("Podhurst"). The dispute hinges on whether Steven Marks at Podhurst, as Class Counsel, is entitled not only to his sizeable share of the $112.5 million attorney fee award explicitly provided by the court as part of the class settlement, but may additionally extract from Kevin Turner's $5 million class recovery millions of dollars in additional fees pursuant to a contingency fee agreement that Kevin Turner and Podhurst entered into before any class action proceedings began in 2012 and which, of

---

[1] Capitalized Terms not otherwise defined in this Motion have the same meanings ascribed to them in the Class Action Settlement Agreement as amended on February 13, 2015.

course, was superseded by the certification of a national class of which Mr. Turner was a member and which Podhurst freely elected to represent.

2.     Given this actual controversy between the Estate and Podhurst, the Estate further requests that the Court allow R. Montgomery Donaldson, Robert A. Penza and P. John Brady of Polsinelli PC, to serve as counsel for the Estate for the remainder of this case and for the purposes of submitting a claim and collecting the Monetary Award authorized under the Class Action Settlement Agreement. Messrs. Donaldson and Penza are located at Polsinelli PC 222 Delaware Avenue, Suite 1101, Wilmington, DE 19801. The attorneys at Polsinelli have represented Kevin Turner, and now represent the Estate, on a *pro bono* basis. Accordingly, their representation will eliminate the apparent conflict of interest between Podhurst and the Estate in collecting the Monetary Award. In further support of this Motion, the Estate states as follows:

## PRELIMINARY STATEMENT

3.     After playing professional football for the National Football League ("NFL") for eight years, Kevin Turner was diagnosed with Amyotrophic Lateral Sclerosis ("ALS") in June 2010. As the disease progressed, Kevin's quality of life became increasingly impaired. He lost muscle movement, motor function, the ability to speak, bathe, and feed himself, and eventually he lost his life. Despite the tremendous pain and suffering that he and his family endured, Kevin never grew bitter toward football or the NFL. Rather, he wanted all players who were suffering from serious neurocognitive symptoms allegedly caused by repetitive, traumatic sub-concussive and concussive head impacts to be helped and to be treated fairly. Therefore, when Kevin's attorney, Steven Marks at Podhurst, informed Kevin Turner of settlement negotiations with the NFL Parties and asked him to serve as a Class Representative on behalf of the Class Members in Subclass 2 in July 2013, Kevin Turner selflessly agreed to give up his right to pursue a

potentially more substantial recovery in a separate action against the NFL in order to help pave the way for other Class Members.

4.      While Kevin lost valuable rights when he agreed to participate in the class action and serve as a class representative, his attorneys at Podhurst, by contrast, gained material financial benefits by taking on the representation of a national class. As one of only six attorneys serving as Class Counsel, Steven Marks and the Podhurst firm will be entitled to a significant share of the $112.5 million deposited in the Attorneys' Fees Qualified Settlement Fund set up under the Class Action Settlement Agreement. Without such an impactful client and Class Representative, Podhurst would enjoy no such position. Nonetheless, contrary to law and the Class Action Settlement Agreement, Podhurst has informed Kevin Turner's Estate that Podhurst is entitled (under the now-inoperative pre-class contingent fee agreement) to extract additional attorney fees from the Estate by taking a portion of Kevin Turner's $5 million Monetary Award, even as it *also* collects attorneys' fees as Class Counsel from the NFL fund.

5.      Because such a reduction in the Estate's individual award is inconsistent with the Class Action Settlement Agreement, is otherwise unlawful and would result in an inherently unfair outcome, the Estate respectfully asks the Court to resolve this controversy by issuing an order prohibiting Podhurst from depriving Kevin Turner's Estate of the full Monetary Award that Kevin Turner, as a Class Representative, would be entitled to under the Class Action Settlement Agreement. Moreover, since this Court has continuing and exclusive jurisdiction "to interpret, implement, administer and enforce the Settlement Agreement in accordance with its terms" (Section 20.1(n) of the Class Action Settlement Agreement) and the Effective Date of the Class Action Settlement Agreement is now in effect, this dispute is ripe for adjudication and should be resolved at the earliest practical time so as to prevent the Estate from being unfairly

delayed in recovering its Monetary Award, as contemplated by the Class Action Settlement Agreement.

## BACKGROUND

6.     On January 18, 2012, before this class action litigation against the National Football League began, Kevin Turner retained and employed the law firms of Podhurst Orseck, P.A., James E. Doddo, P.A., and Bradley K. Blank, Esq. to represent him in a claim for damages against the NFL and others for the injuries sustained while he was a player in the NFL. *See* Authority to Represent, attached hereto as **Exhibit A**. As reflected in the Authority to Represent, Kevin agreed to pay the three law firms a contingent fee of forty percent (40%) of any recovery, plus an additional five (5%) of any recovery if any appellate proceeding was filed or post-judgment relief or action was required for recovery on any judgment. *Id.*

7.     At the time the Authority to Represent agreement was entered into, however, the parties did not contemplate that Kevin's claim would become part of a class action lawsuit. Nor did they contemplate that Kevin would relinquish his individual suit and instead agree to serve as a Class Representative for thousands of other NFL players; or that his Podhurst lawyers would serve as Class Counsel, thereby entitling them to a very substantial fee recovery through a class action settlement agreement with the NFL. Consequently, the Authority to Represent did not account for, and consequently did not apply to, these changes and developments in the case. And even though these changes and developments in the case occurred, and the scope of Podhurst's representation changed from being Kevin's  individual counsel to being Class Counsel for the entire class of Plaintiffs in the *In re: National Football League Players' Concussion Injury Litigation*, Podhurst never attempted to amend the Authority to Represent, presumably recognizing that it had become inoperative as a matter of law when Podhurst

undertook to represent a national class, not Kevin individually.

8.      Beginning in about July 2013, Steven Marks at Podhurst informed Kevin that Plaintiffs and the NFL Parties had engaged in settlement negotiations and that there was a possible settlement if the pending litigation was resolved as a class action. Kevin was informed by his counsel at Podhurst that within this class action Kevin was in a position to serve as a class representative of Subclass 2 Class Members.  During July and August 2013, Kevin discussed the terms of the proposed class action settlement agreement in detail with his counsel at Podhurst, and what it would provide to him and other class members if he approved and supported it. From these discussions, Kevin understood that by agreeing to the proposed class action settlement, based upon his ALS diagnosis, his age and number of seasons he played in the NFL, he would be entitled to a $5 million Monetary Award and any attorney fees due to Podhurst would be paid separately by the NFL as part of the class action settlement agreement. Notwithstanding these discussions, Steven Marks never informed Kevin that if he approved the class action settlement terms, Podhurst would attempt to double-dip by collecting fees from a portion of Kevin's Monetary Award in addition to collecting attorney fees as Class Counsel paid by the NFL.  In early January 2014, Kevin authorized the filing of Plaintiffs' Class Action Complaint in his name as Class Representative and on behalf of other Class Members and approved the terms of the Class Action Settlement Agreement filed with the Court. *See* Affidavit from Kevin Turner dated November 11, 2014 filed with the Court as ECF 6423-7, attached as **Exhibit B**.

9.      Prompted by an oblique suggestion during a dinner meeting in Tampa, Florida that his $5 million recovery may be subject to a further fee reduction (Steven Marks advised at one point that he thought it was very unfair that the players who initiated and fought this battle

could conceivably end up paying private attorneys fees under their contracts), on April 13, 2015, as the amended Class Action Settlement Agreement was awaiting Court approval and Kevin's health was declining rapidly (prompting efforts to shore up his estate planning), Kevin contacted Steven Marks at Podhurst in an effort to seek confirmation about his understanding of the applicability of the Authority to Represent agreement and the payment of Podhurst's attorney fees pursuant to the Class Action Settlement Agreement. *See* April 13, 2015 Email from Kevin Turner, attached as **Exhibit C.**   As expressed in the email, Kevin recognized and pointed out to Podhurst that it would not be fair for class attorneys with prior contingency fee agreements to get paid twice by two different sources. *Id.*   He further explained, "I just can't believe that this is what Judge Brody had in mind when reviewing [the] settlement." *Id.*

      10.    Indeed, if the Class Action Settlement Agreement intended to provide class attorneys with the ability to recover attorneys' fees by "double-dipping," it would have been necessary to clearly disclose this intent to the Court.   But the Class Action Settlement Agreement in fact provides otherwise, stating in Section 21.1 of Article XXI that the NFL Parties will pay attorneys' fees "[s]eparately and in addition to" the Monetary Award paid to class members. *See* ECF 6481, Exhibit A.   The Court's Final Approval Memorandum also confirms that attorneys' fees are not to be taken from the Monetary Award or funds available to the class. *See* ECF 6509. Specifically, the Final Approval Memorandum states:

> A fee award in this case will not come from a common fund.   The ultimate amount the NFL Parties must pay in attorneys' fees will have no impact on the Monetary Award paid or baseline assessment examinations given because the NFL Parties have already guaranteed these benefits, in full, to eligible claimants.

ECF 6509, p. 31 (citing § 21.1 of the Class Action Settlement Agreement); *see also* ECF 6509, p. 21 and 30 ("Any fee award will be separate from, and in addition to, the NFL Parties' other obligations under the Settlement.").

11.     Despite the unambiguous language of the Class Action Settlement Agreement and the indisputable fact that Podhurst discontinued its representation of Turner individually in favor of representing a national class through which it gained a tremendous financial benefit, Podhurst now claims that it is contractually entitled under the Authority to Represent to collect fees not just from the NFL through the $112.5 million Attorneys' Fees Qualified Settlement Fund, but *also* from the Monetary Award given to Kevin's Estate.

12.     This fee dispute first revealed itself when Podhurst failed simply to confirm in response to Kevin's concerns that Podhurst would not seek to recover additional attorney fees from Kevin's class action Monetary Award once the Settlement Agreement was final. *See* April 22, 2015 Email from Steven Marks, attached hereto as **Exhibit D.** In that email, Steven Marks responded to Kevin's concerns about attorneys' fees by acknowledging that he thought "it was very unfair that the players who initiated and fought this battle could conceivably end up paying private attorneys under their contracts, thus potentially receiving less than other who had not brought suit or retained counsel." *Id.* He assured Kevin that he and his firm would act "reasonably and ethically" and "do the right thing at the right time for [him], and be fair even if that meant reducing or possibly waiving [their] contractual fee." *Id.* Despite these assurances, however, Steven Marks never conceded that the contingency fee agreement under the Authority to Represent was unenforceable; instead, he left Kevin's concerns unresolved.

13.     On March 24, 2016, Kevin died after his long battle with ALS. Just three weeks later, Steven Marks began contacting Kevin's family and asking them to sign the same Authority to Represent agreement that Kevin had signed in January 2012. *See* April 15, 2016 Email from Podhurst, attached hereto as **Exhibit E.** Since the Authority to Represent had not been amended and thus did not take into account the Class Action Settlement Agreement approved by this

Court and affirmed by the Third Circuit, the Estate, through the undersigned counsel, asked Steven Marks to provide an alternative representation agreement for the Estate to sign.  *See* April 21, 2016 Email from Robert Penza, attached as **Exhibit F.**   The Estate pointed out what should have been obvious—that attorney fees were going to be paid not from Kevin's award, but separately by the NFL under the Class Action Settlement Agreement.  Thus, the provision in the Authority to Represent requiring the Estate to agree to pay 45% of any gross recovery was inappropriate and inconsistent with the Class Action Settlement Agreement approved by the Court.  *Id.*  In response to the Estate's request, Podhurst proposed an amendment to the Authority to Represent that would give the Estate "the right to object" to the contingency fee percentages provided for in the Authority to Represent.  *See* April 27, 2016 Email from Steven Marks, attached as **Exhibit G.**

14.     The Estate firmly believes that the Class Action Settlement Agreement does not permit Podhurst to deduct any attorney fees from Kevin Turner's $5 million Monetary Award, under a superseded individual contingent fee agreement or otherwise.  Instead, in accordance with the Class Action Settlement Agreement, all of Podhurst's fees will be paid, upon application and with Court approval, by the NFL out of the $112.5 million Attorneys' Fees Qualified Settlement Fund.  Accordingly, the Estate, through counsel, has told Podhurst that it is unwilling to execute a new Authority to Represent agreement that contains any contingency fee provision, even if the agreement contains a qualifier that the Estate reserves the right to object to the fee percentages stated in the Authority to Represent.  *See* May 3, 2016 Email from Robert Penza, attached as **Exhibit H.**

15.     In an effort to resolve the ongoing fee dispute, the undersigned counsel for the Estate, who at all times have represented Kevin and now represent his Estate on a *pro bono*

basis, provided Steven Marks with an Amended Authority to Represent on August 15, 2016. *See* August 15, 2016 Letter from Robert Penza and accompanying Amended Authority to Represent, attached as **Exhibit I.** The Amended Authority to Represent seeks to define the parties' position, going forward, with regard to fees and requires Podhurst to agree that it "will not seek any payment of a contingent fee or reimbursement of case expenses out of the $5,000,000 Monetary Award or from the compensation obtained for Paul Kevin Turner's services as class representative that the estate is entitled to pursuant to the NFL Concussion Settlement Agreement." *Id.*

16.     Despite several extensions of time to accept this offer, Podhurst has refused to execute the Amended Authority to Represent and continues to maintain that, irrespective of its role as Class Counsel and its right to seek attorney fees and costs from the NFL pursuant to the Class Action Settlement Agreement, Podhurst is also entitled to claim a portion of Kevin Turner's Monetary Award under the inoperative 2012 Authority to Represent agreement against the Estate. *See* October 17, 2016 Letter from Steven Marks, attached as **Exhibit J.** As authority for its position, Podhurst has argued that:

> Courts routinely enforce contingency fee agreement in connection with class settlements and similar mass-tort settlements. *See, e.g., In re Zyprexa Prod. Liab. Litig.*, 424 F. Supp. 2d 488 (E.D.N.Y. 2006); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine)*, No. CIV.A.99-20593, 2004 WL 1243736 (E.D. Pa. June 4, 2004); *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 290 F. Supp. 2d 840 (N.D. Ohio 2003); *Fanning v. Acromed Corp.*, No. 1014, 2000 WL 1622741, at *1 (E.D. Pa. Oct. 23, 2000).

*Id.* at 3.

17.     None of the cases cited by Podhurst, however, support the enforcement of the contingency fee agreement in this case. Indeed, none of the cases involve a settlement agreement like the Class Action Settlement Agreement here, nor do any of them involve a

situation where *class counsel* is seeking to enforce a contingency fee agreement against a *class representative*, in addition to seeking attorney fees provided for by the defendants under the class action settlement agreement.  Given the lack of relevant case law supporting Podhurst's position (as well as the obvious fact that the individual contingent fee agreement no longer governs) and the need to consider and interpret the Class Action Settlement Agreement at issue in this case, the Estate respectfully requests that the Court address this issue concerning attorney fees under the Class Action Settlement Agreement and resolve this dispute in the Estate's favor so that the Estate may receive the Monetary Award, in full, as provided for under the Class Action Settlement Agreement.

## ARGUMENT

**A.**   **Given the Court's continuing and exclusive jurisdiction to interpret and enforce the Class Action Settlement Agreement and the Court's inherent authority to ensure attorney fees are properly awarded, the Court should prohibit Class Counsel from extracting additional fees from the Estate's Monetary Award.**

18.    Courts have the inherent power to review attorney fees in contingency fee agreements, and to limit them to ensure that fee awards are reasonable.  *See, e.g., United States ex rel. Taxpayers against Fraud v. General Electric Co.*, 41 F.3d 1032, 1047 (6th Cir. 1994) ("'[A]n attorney's right to contract for a contingent fee is not completely beyond judicial control.'…. The district judge has broad equity power to supervise the collection of attorney's fees under contingency fee contracts."); *In re Agent Orange Product Liab. Lit.*, 818 F.2d 226, 240 (2d Cir. 1987) ("It is well established that a district court, pursuant to its rulemaking authority or on an ad hoc basis, may review a contingency fee agreement."); *Novinger v. DuPont*, 809 F.2d 212, 217 (3d Cir. 1987) ("[F]ederal courts have the power to monitor contingent fee arrangements."); *Schlesinger v. Teitelbaum*, 475 F.2d 137, 141 (3d Cir. 1973) ("[I]n its supervisory power over the members of its bar, a court has jurisdiction of certain

activities of such members, including the charges of contingent fees."); *Allen v. United States*, 606 F.2d 432, 435 (4th Cir. 1979) ("The district courts' supervisory jurisdiction over contingent fee contracts for services rendered in cases before them is well-established.").

19.     The Court's authority to ensure that attorney fees are properly awarded in cases involving contingency fee agreements was made clear by the Third Circuit in *Dunn v. H. K. Porter Co.*, 602 F.2d 1105 (3d Cir. 1979).  In *Dunn*, the Third Circuit emphasized the need for enhanced scrutiny of contingent fee arrangements:

> Because contingency fee agreements are of special concern to the courts and are not to be enforced on the same basis as are ordinary commercial contracts, *Spilker v. Hankin*, 88 U.S. App. D.C. 206, 210, 188 F.2d 35, 39 (1951), courts have the power to monitor such contracts either through rule-making or on an Ad hoc basis. Canon 13 of the Canons of Professional Ethics, promulgated by the American Bar Association, recognizes that an attorney is free to enter into such arrangements. The Canon, however, qualifies the right with the proviso that they are subject to the 'supervision of the courts, as to (their) reasonableness.' *See Fitzgerald v. Freeman*, 409 F.2d 427 (7th Cir.), *Cert. denied*, 396 U.S. 875, 90 S.Ct. 151, 24 L.Ed.2d 134 (1969) (court not bound by contingent fee agreement executed in conjunction with substitution of new counsel and could, in light of Canons 13 and 34, award fees on quantum meruit basis). We indicated the source of the power in *Schlesinger v. Teitelbaum*, 475 F.2d 137, 141 (3d Cir.), *Cert. denied*, 414 U.S. 1111, 94 S.Ct. 840, 38 L.Ed.2d 738 (1973), where we stated that 'in its supervisory power over the members of its bar, a court has jurisdiction of certain activities of (its) members, including the charges of contingent fees.'
>
> Power flowing from this source has been exercised more frequently to protect those unable to bargain equally with their attorneys and who, as a result, are especially vulnerable to overreaching. *Schlesinger v. Teitelbaum, Supra*, 475 F.2d at 140 (seamen); *Cappel v. Adams*, 434 F.2d 1278 (5th Cir. 1970) (children). However, it has also been exercised whenever a contingent fee agreement yields an unreasonable fee. *In re Michaelson*, 511 F.2d 882, 888 (9th Cir.), *Cert. denied*, 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 469 (1975) (court has inherent power to examine amount charged by attorney in order to protect client from excessive fees); *Farmington Dowell Products Co. v. Forster Manufacturing Co.*, 421 F.2d 61, 87 (1st Cir. 1969) (court has power to examine contingent fee contract in order to assure that it is not unwittingly an accessory to excessive fee). *See also, Pitchford v. Pepi, Inc.*, 531 F.2d 92, 110-11 (3d Cir. 1975), *Cert. denied*, 426 U.S. 935, 96 S.Ct. 2649, 49 L.Ed.2d 387 (1976).

*Id.* at 1108–09. The Third Circuit further observed that "[w]hen a contingent fee contract is to be satisfied from a settlement fund approved by the trial judge pursuant to Fed. R. Civ. P. 23(e), the

court has an even greater necessity to review the fee arrangement for this rule imposes upon it a responsibility to protect the interests of the class members from abuse." *Id.* at 1109.

20.     In the present case, the Class Action Settlement Agreement provides for two separate funds—one which is solely for the benefit of Class Members and the other which is solely for the payment of attorneys' fees and reasonable costs to Class Counsel.   Under this settlement structure, the amount of attorneys' fees collected by Class Counsel should have no impact on the Monetary Award collected by Class Members. *See* ECF 6509, p. 31 (citing § 21.1 of the Class Action Settlement Agreement).   Accordingly, Podhurst's position that it can enforce the superseded contingency fee agreement in the 2012 Authority to Represent by staking claim to to the Estate's proportionate share of the Monetary Award is inconsistent with the Class Action Settlement Agreement and the Court's Final Approval Memorandum.

21.     In a 2002 case, the Northern District of Illinois was presented with this very issue, and it expressly *rejected* the idea that class counsel could collect on their contingency fee agreements with the named plaintiffs in addition to collecting attorneys' fees through the separate attorneys' fee fund. *See Warnell v. Ford Motor Co.*, 205 F. Supp. 2d 956 (N.D. Ill. 2002).   There, after a class action settlement was reached, the named plaintiffs filed a motion with the court to resolve their dispute with counsel over whether the contingency fee agreements were enforceable.   Under the settlement agreement, Ford Motor had set up a $12 million settlement fund—$9 million of which was solely for the benefit of the class, and $3 million of which could be used for attorneys' fees. *Id.* at 957–58.   Class counsel argued that their contingency fee agreements were enforceable on top of the fees awarded out of the $3 million portion of the settlement fund, and that such enforcement of the contingency fee agreements did not result in an unreasonable fee award. *Id.* at 959.   But the *Warnell* court disagreed.   It first

noted that the separate funds set up under the settlement agreement "eliminated any potential conflict of interest between class counsel and the class, because the plaintiffs' awards were not to be reduced by the attorneys' fees." *Id*. at 960.  By enforcing the contingency fee agreements, however, class counsel collected funds from the named plaintiffs' recovery.  *Id*. at 960. According to the court, this conduct "directly contradict[ed] the settlement agreement that [the court] approved, which stated that attorneys' fees would not be paid out of the $9 million fund." *Id*. at 961.  Accordingly, the court held that the contingency fee agreements were unenforceable because they created a conflict of interest that was not disclosed to the court during the settlement approval or during the fee award.  *Id*.  Moreover, the court stated:

> I would not have approved the settlement or the award of fees here had I known that counsel intended to enforce the contingent fee agreements. It would have been within my discretion to insist, before approving the fee award, that counsel relinquish the right to enforce any fee agreements with the named plaintiffs, had I known that they planned to, *see In re Agent Orange Prod. Liability Litig.,* 818 F.2d 226, 240 (2d Cir.1987) (holding that district court properly "requir[ed] counsel, prior to receiving fees from the settlement, to certify that he or it had retained no fees or expenses from any class members"), and I would have done so.

*Id*.  Even more compelling to the court was the fact that class counsel wanted to enforce the contingency fee agreements against the named plaintiffs.  *Id*. at 962.  The court stated that it "would never have approved a settlement that required the named plaintiffs to shoulder the burden of their attorneys' fees to a significantly greater extent than the rest of the class where the class got a significantly greater benefit."  *Id*.  Therefore, because the collection of the contingency fees was unfair to the named plaintiffs and resulted in an unreasonable award of attorneys' fees, the court required the attorneys to disgorge all the contingency fees that they collected from the named plaintiffs.  *Id*. at 963.

22.     The present case is even more compelling.  Here Kevin abandoned his individual lawsuit to serve as a class representative, thereby enabling Podhurst to participate as class

counsel in (and reap the extraordinary financial benefit of) the separate attorneys' fees award approved by the Court.  Like the court in *Warnell*, the Court should exercise its broad discretion and inherent authority to protect the Estate from Podhurst's attempt to recover attorney fees twice.

23.     When Kevin agreed to serve as a Class Representative and thereby limit his recovery to the $5 million Monetary Award provided for in the Class Action Settlement Agreement, he gave up a number of valuable rights, including his right to a jury trial and his right to recover substantially more money than he would be entitled to under the settlement agreement.  Similarly, when Podhurst agreed to serve as Class Counsel and thereby have the ability to recover a portion of the $112.5 million in the Attorneys' Fees Qualified Settlement Fund set up under the Class Action Settlement Agreement, Podhurst gave up its right to enforce the 40–45% contingency fee agreement in the 2012 Authority to Represent against Kevin. Therefore, in order to ensure that Podhurst's attorneys' fees are awarded in accordance with the Class Action Settlement Agreement and that Kevin Turner's Estate does not have to shoulder the burden of its attorney fees to a significantly greater extent than the rest of the class, the Court should issue an order prohibiting Podhurst from collecting attorney fees from the Estate's Monetary Award.

**B.    Given the actual controversy between the Estate and Podhurst, the Court should permit R. Montgomery Donaldson, Robert A. Penza and P. John Brady of Polsinelli PC to serve as counsel for the Estate for purposes of the claim and payment processes.**

24.     Given the current adversity (and in particular, the nature of that adversity) between Podhurst and the Estate, the Estate further requests that the Court allow R. Montgomery Donaldson, Robert A. Penza and P. John Brady of Polsinelli PC to serve as counsel for the Estate for the remainder of the case and for the purpose of submitting a claim and collecting the

Monetary Award.  Because the attorneys at Polsinelli are not seeking any fees from the Estate and are representing the Estate on a *pro bono* basis, their representation will not present any actual or apparent conflict of interest between Podhurst and the Estate with respect to the Monetary Award to which the Estate is entitled under the Class Action Settlement Agreement.

## CONCLUSION

25.     For these reasons, the Estate, through Paul Raymond Turner, respectfully requests (a) that the Court resolve the attorney fee dispute between the Estate and Class Counsel at Podhurst in its favor so that the Estate will be able to recover the full Monetary Award provided under the Class Action Settlement Agreement and (b) that the Court allow R. Montgomery Donaldson, Robert A. Penza and P. John Brady of Polsinelli PC to serve as counsel for the Estate for the remainder of the case and for the purposes of submitting a claim and collecting the Monetary Award.

Respectfully submitted,

/s/ R. Montgomery Donaldson
R. Montgomery Donaldson   (PA 63400)
Robert A. Penza   (*pro hac vice* to be filed)
POLSINELLI PC
222 Delaware Avenue, Suite 1101
Wilmington, DE  19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
rmdonaldson@polsinelli.com
rpenza@polsinelli.com

and

P. John Brady   (*pro hac vice* to be filed)
POLSINELLI PC
900 W. 48th Place, Suite 900
Kansas City, MO 64112
Telephone: (816) 374-0515
jbrady@polsinelli.com

Dated: December 14, 2016

## CERTIFICATE OF SERVICE

I, R. Montgomery Donaldson, hereby certify that on the 14th day of December 2016, a true and correct copy of the above and foregoing was filed using the CM/ECF System, which caused notice to be sent to all counsel of record.

*/s/ R. Montgomery Donaldson*