# EXHIBIT B

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc., <br><br> Defendants. | No. 2:12-md-02323-AB <br><br> MDL No. 2323 <br><br> **Hon. Anita B. Brody** <br><br> CIVIL ACTION NO: 2:14-cv-00029-AB |
| THIS DOCUMENT RELATES TO: <br> ALL ACTIONS | |

**AFFIDAVIT OF KEVIN TURNER IN SUPPORT OF FINAL APPROVAL OF
SETTLEMENT AND CERTIFICATION OF CLASS AND SUBCLASSES**

STATE OF ALABAMA :
:
COUNTY OF JEFFERSON :

I, Kevin Turner, being duly sworn according to law, depose and state as follows:

1. I am a citizen of the State of Alabama and I reside in Birmingham, Alabama. I have three young children. My son Nolan is 16 years old, my daughter Natalie is 14 years old, and my other son Cole is 11. They also reside in Birmingham, Alabama. I am a retired NFL football player. I played professional football in the NFL from 1992-1994 for the New England Patriots and from 1995-1999 for the Philadelphia Eagles as a fullback. In June 2010, I was diagnosed with Amyotrophic Lateral Sclerosis ("ALS"). I submit this Affidavit in support of final approval of the Class Action Settlement ("Settlement") dated June 25, 2014 between the

Plaintiff Class and Defendants National Football League and NFL Properties, LLC (collectively, the "NFL Parties") and certification of the Class and Subclasses.

2.  Beginning about January 2009, I started noticing weakness in my left hand when I was trying to play the guitar but my fingers would not play. The weakness gradually spread to my right arm whereby it became increasingly difficult to hold a razor to shave, lift a glass to drink, or play the guitar. In June 2010, I was diagnosed with ALS, also referred to as Lou Gehrig's disease.

3.  As the disease has progressed, my quality of life has been increasingly impaired; robbing me of muscle movement, motor function and a noticeable decline in my ability to speak. I no longer am able to feed myself, brush my teeth, shave, bathe or dress myself and require round-the-clock assistance. I have been hospitalized numerous times and, due to severe dehydration and being unable to eat properly so my body can receive the proper nutrients, have recently required the insertion of a feeding tube. My health has deteriorated to the point where I am unable to travel to Philadelphia to attend the Fairness Hearing scheduled for November 19, 2014 even though I desperately want to be present.

4.  As a father, one of the most difficult things I have had to face was telling my children that I was diagnosed with this fatal, incurable disease and knowing that I may not be able to be there for them in the future to offer the support and care they will need. I have participated in various research studies in an effort to slow down the progress of this disease and to hopefully assist in finding a cure, which realistically may not come in time for me. So for my family, my countless brothers who are suffering from serious neurocognitive symptoms, and myself, it is imperative that we receive help now.

5.      On January 20, 2012, I filed a complaint, through my attorney Steve Marks of Podhurst Orseck, PA, against the NFL Parties in the United States District Court for the Southern District of Florida (*Jones, et al. v. National Football League*, Case No. 1:11-cv-24594-JEM). That action was transferred to this MDL on February 14, 2012. Thereafter, on July 11, 2012, I filed a Short Form Complaint against the NFL Parties. In that complaint, I incorporated by reference the allegations of the Master Administrative Long-Form Complaint and specifically alleged that I sustained repetitive, traumatic sub-concussive and/or concussive head impacts during NFL games and/or practices, and that I suffer from symptoms of brain injury caused by these head impacts.

6.      Throughout these proceedings, I have followed the litigation closely. I have had countless meetings, telephone conferences and email exchanges with my counsel Steve Marks about the status of proceedings, the NFL Parties' motions to dismiss my case on grounds of preemption, and the oral argument on the NFL Parties' motions to dismiss, among other things. Beginning in about July, 2013, my counsel informed me of the settlement negotiations between the Plaintiffs and the NFL Parties and my possible representation of Subclass 2 Class Members. I had a number of questions regarding the settlement and proposed class action, and I conferred with Steve Marks about these issues. In August, 2013, I met with Dianne Nast of Nast Law, and her partner Daniel Gallucci, in her offices in Philadelphia, Pennsylvania regarding my representation of Subclass 2 Class Members in the proposed class action. I understood that Dianne Nast was the proposed Subclass 2 Counsel. Steve Marks accompanied me to that meeting. I discussed in detail with both Dianne Nast and Steve Marks the impending class settlement and my representation of Subclass 2. Dianne Nast answered all of my questions, and I supported the settlement. I also reviewed the proposed Term Sheet and approved it.

7. After the Term Sheet was executed, I continued to monitor the progress of settlement negotiations through Dianne Nast and Steve Marks, and I reviewed with counsel drafts of the Settlement Agreement and exhibits. I also followed the press stories about the settlement.

8. In or about early January, 2014, I authorized the filing of Plaintiffs' Class Action Complaint on my own behalf and on behalf of Class Members in Subclass 2 [ECF No. 5634-1]. At the same time I also authorized and approved of the Class Action Settlement Agreement dated January 6, 2014, which was filed with the Court [ECF No. 5634-2].

9. After the Court denied Plaintiffs' motion for preliminary approval of the Settlement without prejudice, through communications with Dianne Nast and Steve Marks, I continued to stay apprised of the settlement talks and of the numerous drafts of the revised Settlement Agreement, and I ultimately approved the final Settlement and exhibits submitted to the Court on June 25, 2014 [ECF No. 6073-2].

10. On July 7, 2014, the Court preliminarily approved the Settlement and conditionally certified the Settlement Class and two Subclasses [ECF No. 6084]. In its Preliminary Approval Order, the Court appointed me to serve as Subclass Representative for Subclass 2 (¶ 2(c)(ii)), which consists of "Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis [Level 1.5 Neurocognitive Impairment (early Dementia), Level 2 Neurocognitive Impairment (moderate Dementia), Alzheimer's Disease, Parkinson's Disease, ALS, and/or Death with CTE (chronic traumatic encephalopathy)] prior to the date of the Preliminary Approval and Class Certification Order and their Representative Claimants and Derivative Claimants, and the Representative Claimants of deceased Retired NFL Football Players who were diagnosed with a Qualifying Diagnosis prior to death or who died prior to the

date of the Preliminary Approval and Class Certification Order and who received a post-mortem diagnosis of CTE." (¶ 2(b)(ii)). The Court appointed my attorney Steve Marks to serve as Class Counsel (¶ 3(a)) and Dianne Nast to serve as Subclass Counsel for Subclass 2 (¶ 3(c)).

11.  I strongly support this Settlement and urge the Court to grant final approval to the Settlement and to certify the proposed Class and Subclasses.

I declare that the foregoing is true and correct.

Executed this 11 day of November, 2014.

KEVIN TURNER

Sworn and Subscribed before me
this 11 day of November, 2014

NOTARY PUBLIC



- 5 -