# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 12-md-2323 (AB)<br><br>MDL No. 2323 |
| ———————————————— |  |
| Kevin Turner and Shawn Wooden,  on behalf of themselves and others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties LLC,  successor-in-interest to NFL Properties, Inc.,<br><br>       Defendants. | **Hon. Anita B. Brody** |
| – – – – – – – – – – – – – – – – – – – – – – – |  |
| **THIS DOCUMENT RELATES TO:**<br>***Kevin Turner, et al., v. National Football League, et al.,***<br><br>**E.D. Pa. No. 2:12-cv-01027**<br>**S.D. Fla.: No. 1:11-cv-24594** |  |

## <u>RESPONSE IN OPPOSITION TO ESTATE OF KEVIN TURNER'S MOTION TO RESOLVE ATTORNEY FEE DISPUTE</u>

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3ʳᵈ Avenue, Suite 2700, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346  www.podhurst.com

Podhurst Orseck, P.A. ("Podhurst") responds in opposition to the motion to resolve an individual attorney's fee dispute (ECF No. 7029) filed by the Estate of Kevin Turner (the "Turner Estate").[1]

<u>**INTRODUCTION**</u>

Podhurst devoted itself to the successful representation of Kevin Turner in this litigation for more than four years, pursuant to a retainer agreement Kevin signed in January 2012. Kevin tragically passed away from Amyotrophic Lateral Sclerosis ("ALS") just days before the Third Circuit affirmed this Court's Order granting final approval of the landmark settlement that he championed as a class representative. Now that the settlement has become effective, the Turner Estate seeks to invalidate the retainer agreement that formed the basis of Podhurst's entire four-year representation of Kevin, even though Podhurst voluntarily reduced the contingency fee percentage in the agreement to a maximum of 25%. Notwithstanding our great affection for the Turner family, the extreme position taken by the Turner Estate unfortunately compels us to oppose this motion, which, if granted, would undercut not just Podhurst's hard-earned contractual rights, but also potentially thousands of similar retainer agreements in this MDL.

The singular premise of the Turner Estate's motion is inconsistent with binding Third Circuit precedent. The Turner Estate claims that the class-action nature of the settlement rendered Kevin's 2012 retainer agreement "inoperative as a matter of law." (ECF No. 7029 at 4.) This claim cannot be squared with a Third Circuit decision that the Tuner Estate itself cites, *Dunn v. H.K. Porter Co.*, 602 F.2d 1105, 1112-13 (3d Cir. 1979), which reversed a district court

---

[1] The Turner Estate's motion also requests that several attorneys from Polsinelli PC be permitted to serve as counsel for the Turner Estate. (ECF No. 7029 at 2.) While Podhurst remains willing to represent the Turner Estate, Podhurst does not oppose this aspect of the motion.

1

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2700, Miami, FL 33131 Miami 305.358.2800 Fax 305.358.2382 • Ft. Lauderdale 954.463.4346          www.podhurst.com

order that invalidated individual contingency fee agreements in connection with a class-action settlement.

The Turner Estate's position also conflicts with a host of district court decisions. Far from nullifying individual fee agreements in the context of class action or mass tort settlements, district courts, including this Court, routinely hold that attorneys *are* permitted to receive contract-based compensation for representing individual class members who receive monetary awards through such settlements. While this Court unquestionably has the authority to supervise the enforcement of individual retainer agreements, and if necessary, to modify their terms to ensure that they are reasonable, it requires a startling, unjustifiable leap to then claim, as the Turner Estate does, that courts may completely void such agreements, absent some finding of misconduct or abuse.

The fundamental problem with the Turner Estate's motion is that it disregards the difference between common benefit work performed on behalf of the entire class, which the NFL has agreed to compensate under Article XXI of the settlement, and work performed for and on behalf of an individual client, which must be compensated pursuant to the client's private contractual undertaking with his counsel. Podhurst's attorneys, in their capacity as Class Counsel and members of several leadership committees, including the Plaintiffs' Executive Committee and Class Settlement Committee, performed thousands of hours of important common-benefit work that materially contributed to the creation and realization of the settlement. At the same time, as Kevin's individual counsel, Podhurst's attorneys performed a substantial amount of work and employed firm resources directly for him, incurring the risk that this investment of time and resources would be lost if Kevin did not obtain a recovery on his claims. For the substantial common-benefit work Podhurst performed for all class members,

2

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2700, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346

www.podhurst.com

Podhurst will seek compensation from the fees awarded under Article XXI of the settlement, not from the Turner Estate's Monetary Award.  But for the work Podhurst performed and risk it incurred for Kevin, it will seek reasonable compensation based on the retainer agreement from the Turner Estate's Monetary Award.  In no way is Podhurst seeking to "double-dip" or receive double payment for the same work, as the Turner Estate charges.  Instead, Podhurst is seeking reasonable compensation for its common-benefit work from the fees that the NFL agreed to pay, and reasonable compensation for its work performed for Kevin from the fees he agreed to pay, as the law clearly permits.  The common benefit fees that Podhurst is ultimately awarded are completely irrelevant to the contract-based fees it receives for representing individual clients, and vice versa.

Indeed, as a leading authority on class action fees, Professor Charles Silver, attests in a declaration submitted in support of this response, the Turner Estate's position is "jarring," as it "repeatedly elides the distinction between common fund and statutory 'fee awards,' on the one hand, and contractual 'fee payments,' on the other."  Ex. A (Silver Dec.), ¶ 36.  If the Turner Estate's position were adopted, it also would create problematic incentives that would discourage beneficial class-action settlements like this one and ultimately deny civil justice to victims of wrongful conduct.  *Id.*, ¶¶ 24-29, 47-55.

For these reasons and those discussed in more detail below, the Turner Estate's request to nullify Kevin's retainer agreement with Podhurst should be denied.

## BACKGROUND

### I.   Podhurst's Representation of Kevin Turner.

Podhurst's relationship with Kevin began on September 26, 2011, when one of the attorneys who is representing the Turner Estate in this fee dispute, Robert Penza, accompanied

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2700, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382  •  Ft. Lauderdale 954.463.4346     www.podhurst.com

Kevin to Miami to meet with two partners at Podhurst, Stephen Rosenthal and Ricardo Martinez-Cid.  Podhurst was researching and investigating potential claims against the National Football League ("NFL") for head injuries at the time.  After the meeting, Kevin decided that he wished to be represented by Podhurst, notwithstanding overtures to him by other law firms.  Kevin ultimately signed an Authority to Represent with Podhurst and sent it to Podhurst's office in Miami.  Stephen Rosenthal then signed it in Miami on January 18, 2012.  Ex. B (Authority to Represent).  This is the operative retainer agreement at issue in this dispute.[2]  Under the Authority to Represent, Kevin agreed to pay "40% of any recovery" plus "[a]n additional 5% of any recovery after institution of any appellate proceeding" as attorneys' fees for Podhurst's services.  Nothing in the Authority to Represent suggests that Kevin's agreement to pay these fees was conditioned on his recovery through an individual settlement, as opposed to a class-action settlement.

For the next four-plus years, Podhurst zealously represented Kevin under this contingency agreement, investing substantial amounts of time and resources with the knowledge that it would not receive any compensation unless Kevin prevailed on his claims.  After having thoroughly investigated and researched potential claims against the NFL, Podhurst originally filed suit on Kevin's behalf in the U.S. District Court for the Southern District of Florida on January 20, 2012.  Ex. C (First Amended Complaint, *Jones v. National Football League*, No. 11-cv-24594 (S.D. Fla.)) at 1, 20, 92.  After this MDL was established, Podhurst filed a short-form

---

[2] Two other law firms, James E. Doddo, P.A. and Bradley K. Blank, Esq., are also parties to the Authority to Represent.  These referral counsel also agreed to be responsible and available to Kevin for consultation, to participate and assist in the preparation of the case, and to bear full responsibility for the legal representation.  This response is filed on behalf of these referral counsel, as well.

4

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2700, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346          www.podhurst.com

complaint for Kevin in this Court on July 11, 2012.  Ex. D (Short Form Complaint, *Jones v. National Football League*, No. 12-cv-01027 (E.D. Pa.)).

Podhurst's representation of Kevin in his individual case involved myriad tasks. Podhurst attorneys and staff spoke with his doctors and collected, organized, and reviewed Kevin's medical records.  Its attorneys accompanied him to various speaking events at his request.  When Kevin was deposed in a worker's compensation case, Podhurst's attorneys coordinated with his worker's compensation counsel in preparing Kevin for deposition, advising him as to the interplay between his testimony and his claims against the NFL.  Its attorneys and staff advised him regarding, and prepared for him, an application for neurocognitive benefits under the NFL collective bargaining agreement.  Its attorneys advised him regarding his individual media appearances, which he often did for the Kevin Turner Foundation.  Its attorneys counseled him regarding the settlement and obtaining an advance of his monetary award.  And in general, its attorneys and staff made themselves available to speak with him on a regular, ongoing basis to address his various concerns over the years.  Indeed, as Kevin attested in a declaration submitted in support of preliminary approval of the settlement, he "had countless meetings, telephone conferences and email exchanges with [his] counsel Steve Marks about the status of proceedings, the NFL Parties' motions to dismiss [his] case on grounds of preemption, and the oral argument on the NFL Parties' motions to dismiss, among other things."  (ECF No. 7029-3, ¶ 6.)

In addition to Kevin, Podhurst and its various referral counsel have diligently represented nearly 500 class members in this action, pursuant to private contingency fee agreements much like Kevin's Authority to Represent.  Podhurst has invested thousands of hours of time and

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3ʳᵈ Avenue, Suite 2700, Miami, FL 33131 Miami 305.358.2800 Fax  305.358.2382 • Ft. Lauderdale 954.463.4346          www.podhurst.com

substantial resources pursuing these class members' individual claims, aside from its common-benefit work.

## II. Podhurst's Common-Benefit Work.

Over the past five years, Podhurst also performed thousands of hours of common-benefit work on behalf of the class.[3]   Podhurst's attorneys have held numerous important leadership positions in this MDL.  Podhurst was appointed to the Plaintiffs' Executive Committee, and three of its attorneys co-chaired or served on several sub-committees, including the Communications and Ethics Committee, the Class Settlement Committee, the Legal and Briefing Committee, and the Discovery and Document Repository Committee.

At the outset of the MDL, Podhurst took a lead role with several other Plaintiff's Executive Committee firms in drafting the Master Administrative Long-Form Complaint and in researching and preparing the briefing in response to the NFL's motion to dismiss the case on federal labor preemption grounds.  When the focus of the case turned to an exploration of the possibility of a settlement, Podhurst was actively involved in the complicated and extensive negotiation of the settlement as a member of the Class Settlement Committee.  Along with the members of the Class Settlement Committee, Podhurst was instrumental in drafting the basic framework of the settlement, working with actuarial experts to develop the appropriate charts and criteria for diagnosing class members, reviewing medical records and historical and demographic information, and developing the compensation grid in the settlement.  Podhurst also reviewed and contributed to drafts of various proposals, and provided background research and recommendations as to the terms of the settlement.   Once the settlement was negotiated,

---

[3] As a more detailed account of Podhurst's common benefit work, Podhurst incorporates by reference the declaration that will be submitted in support of the forthcoming petition for common benefit fees.

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2700, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346          www.podhurst.com

Podhurst drafted parts of and edited the district court and appellate briefs to support approval of the settlement.

### III. The Fee Dispute.

As the NFL agreed, in Article XXI of the settlement, to pay common benefit fees to Class Counsel, Podhurst proactively reduced the contingency fee percentage in its retainer agreements, to account for the efficiencies of the class action and ensure that fees paid to attorneys, whether they are paid to Class Counsel or individual attorneys, would not exceed a reasonable percentage of the amount awarded to class members. Thus, even though the Authority to Represent called for a 45% contingency fee in Kevin's case (the initial 40% plus 5% for the appeal), Podhurst agreed to seek no more than a 25% fee from the Monetary Award.

Surprisingly, the Turner Estate's motion claims that Podhurst never informed Kevin that it would seek to collect both fees under the Authority to Represent for work performed on his case, and fees under the settlement for common benefit work performed as Class Counsel. (ECF No. 7029 at 5.) This claim is inconsistent with the evidence. As recounted in an email attached to the Turner Estate's motion, this very issue was discussed just before the settlement was announced, and Kevin said that he did not want Podhurst to reduce its fee and believed that Podhurst "deserved every penny under [its] contract with [Kevin]." (ECF No. 7029-5 at 2.) Although Kevin's opinion apparently changed two years later, as he sent an email in April 2015 expressing a different view, it cannot be said that the validity of the Authority to Represent was never discussed.

Following Kevin's death, the Turner Estate, through its counsel, requested that Podhurst sign an amended Authority to Represent that waived any claim to compensation from the Turner Estate's Monetary Award. As the emails and letters attached to the Turner Estate's motion make

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2700, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346    www.podhurst.com

clear, Podhurst repeatedly sought to resolve this dispute without Court intervention and reassured the Turner Estate that it would seek only a reasonable fee that would not exceed 25% of the Monetary Award.   Nonetheless, because Podhurst would not accede to the Turner Estate's inflexible demand that the firm completely waive its right to any fees from the Monetary Award, the Turner Estate elected to file the present motion.

<u>**ARGUMENT**</u>

## I.   **The Class Action Settlement Did Not Invalidate Kevin's Retainer Agreement With Podhurst.**

It is important to note the narrow scope of the Turner Estate's position in its motion.  It does not dispute (1) that the Authority to Represent was valid when signed, (2) that the fee it provided for was reasonable under the circumstances that existed at the outset of litigation, (3) that Podhurst performed the services it was contractually bound to provide, nor (4) that Podhurst performed work and incurred risks that would have sufficed to justify it in collecting the fee provided for in the Authority to Represent, had there been no class action.  Thus, the Turner Estate does not deny that, but for the occurrence of the class-action settlement, the Authority to Represent would be valid, ethical, and binding.

The sole claim of the Turner Estate's motion is that the class-action nature of the settlement somehow made Kevin's Authority to Represent "inoperative as a matter of law." (ECF No. 7029 at 4.)  Variations of this extreme claim, all offered without authoritative support, appear throughout the motion:  it alleges that the Retainer Agreement was "superseded" (*id.* at 2, 8); that the Authority to Represent "no longer governs" (*id.* at 10); and that Podhurst "gave up its right to enforce" the Authority to Represent by serving as Class Counsel (*id.* at 14).  Repetition of this untenable claim, however, cannot compensate for the fact that it clearly is inconsistent with the law.

8

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2700, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346          www.podhurst.com

### A.  The Turner Estate's position conflicts with Third Circuit precedent.

As the Turner Estate's motion acknowledges, one of the controlling authorities on this issue is the Third Circuit's decision in *Dunn v. H.K. Porter*, 602 F.2d 1105 (3d Cir. 1979).  In that case, the district court had "set aside private contingent fee agreements" with members of a class in connection with a class settlement.  *Id.* at 1106.  The Third Circuit recognized that "courts have the power to monitor [contingency fee] contracts either through rule-making or on an Ad hoc basis," *id.* at 1108, and that "[w]hen a contingent fee contract is to be satisfied from a settlement fund approved by the trial judge pursuant to Fed. R. Civ. P. 23(e), the court has an even greater necessity to review the fee arrangement," *id.* at 1109.  When reviewing such fee agreements for reasonableness, the Third Circuit further instructed that

> the court must consider a number of critical factors, including the manner into which the contract was entered, the status and sophistication of the plaintiffs, whether the source of the fee payment is a settlement fund or a tax against the defendants, the size of the proposed award and whether the fee allowed is sufficient to encourage capable counsel to undertake such litigation in the future.

*Id.* at 1110.

At the same time, however, in a part of the opinion that the Turner Estate does not address, the Third Circuit cautioned that "***the courts should be loathe to intrude into a contractual relationship between an attorney and client***," cogently reasoning that

> [w]here . . . the lawyer and client have entered into a contractual fee agreement prior to the litigation, the considerations stressed above argue in favor of ***deference to the parties' contractual arrangement***. The strong judicial reluctance to enforce the terms of a judicially fashioned bargain upon the parties now ***presses in favor of honoring the express terms of the fee agreement***. The equities are also altered. If the client has entered the contract freely and advisedly, his claim of unfairness is reduced in force. The risk of unfairness to the attorney, in contrast, is sharply increased. For ***it cannot be said that the attorney is receiving more than he bargained for at the outset of litigation***. He may well have relied upon the fee contracts in deciding to undertake the litigation at the outset. Unduly close review of the allocation of risks in a contract entered into before the outcome of the litigation was known

9

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2700, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346          www.podhurst.com

or knowable might also discourage the prosecution of risky, but meritorious lawsuits.

*Id.* at 111-12 (emphasis added).

Applying these principles, the Third Circuit *reversed* the district court's order that invalidated individual fee agreements.  It concluded that the record failed to support the district court's order, for "the contracts were entered into prior to the institution of the suit," and "[t]he district court expressly found there was no misconduct on the part of the lawyers."  *Id.* at 1112.

The *Dunn* decision conclusively rejects the sole premise of the Turner Estate's motion— i.e., that the class-action nature of the settlement, itself, rendered Kevin's Authority to Represent with Podhurst "inoperative as a mater of law."  (ECF No. 7029 at 4.)  As the Third Circuit unequivocally established, a district court cannot abrogate a private contingency fee agreement with a class member unless the record shows, and the court makes an explicit finding, that the contract is unreasonable based on a number of factors, such as the manner in which it was entered, the status and sophistication of the plaintiffs, whether it was entered into before or after the institution of the suit, and misconduct on the part of the lawyers.  602 F.2d at 1110, 1112-13.  The Turner Estate has not attempted to, nor could it, demonstrate that even one these factors, let alone a majority of them, rendered Kevin's Authority to Represent unreasonable.

In particular, the Turner Estate does not and cannot contest that the Authority to Represent was entered into as a result of arms-length negotiations and that Kevin was a sophisticated plaintiff.  After all, Kevin was accompanied by one of the attorneys now representing the Turner Estate when he first met with Podhurst attorneys and selected Podhurst to represent him.  Further, as in *Dunn*, 602 F.2d at 1112, the Authority to Represent was entered into prior to the institution of Kevin's suit, and most importantly, long before the settlement was negotiated and approved, a factor that "presses in favor of honoring the express terms of the fee

10

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2700, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346          www.podhurst.com

agreement. . . . For it cannot be said that [Podhurst] is receiving more than [it] bargained for at the outset of litigation."  *Id.* at 1111.  And, as in *Dunn*, there is not even a hint of attorney misconduct here.  Under *Dunn*, therefore, the Authority to Represent cannot be set aside.

This conclusion also finds support in two additional Third Circuit decisions, *Lindy Brothers Builders of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973) ("*Lindy I*"), and *Lindy Brothers Builders of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 119–20 (3d Cir. 1976) ("*Lindy II*"), both of which *Dunn* relied upon.  In *Lindy I*, the Third Circuit, following longstanding Supreme Court precedent, recognized a district court's authority to award class counsel fees from a class-action settlement under the "equitable fund doctrine," reasoning that "the award of fees under the equitable fund doctrine is analogous to an action in quantum meruit: the individual seeking compensation has, by his actions, benefited another and seeks payment for the value of the service performed."  487 F.2d at 165.  The court further observed that such fees are based on the attorney's claim "that his conduct of the suit conferred a benefit on all the class members, that one or more class members has agreed by contract to pay for the benefit the attorney conferred upon him, and that the remaining class members should pay what the court determines to be the reasonable value of the services benefiting them."  *Id.* (citing *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 120-21 (1885)).

In *Lindy II*, the Third Circuit addressed the interplay between class counsel's contingency fee agreements with class members and its request for court-awarded fees under the equitable fund doctrine.  540 F.2d at 119-20.  The district court had ordered unrepresented members of the class to pay a disproportionate amount of the common-benefit fee, based on the fact that other members of the class already were obligated to pay fees to class counsel and other attorneys

11

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2700, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346          www.podhurst.com

under contingency fee agreements.  *Id.* at 119.  The Third Circuit reversed this aspect of the

district court's order, holding that the court had improperly

> mixed considerations of the fee determined by equitable principles (the equitable
> fund award) with considerations of the fees dependent on private contracts. The
> fee with which the court was concerned is a child of equity not of express
> contract. . . . ***Private arrangements individual members of the class may have
> with counsel are simply irrelevant***.

*Id.* at 120 (emphasis added).  Thus, the Court permitted counsel to recover under both their

private contracts with their clients as well from court-awarded common-benefit fees.[4]

These two oft-cited Third Circuit precedents—*Lindy I* and *Lindy II*—further undermine

the Turner Estate's attempt to invalidate Kevin's Authority to Represent with Podhurst and

highlight a fundamental flaw in the Turner Estate's motion: it disregards the difference between

common benefit work performed on behalf of the entire class, which the NFL has agreed to

compensate under Article XXI of the settlement, and work performed for an individual client,

which must be compensated under the client's retainer agreement.  As *Lindy I* establishes, the

purpose of an equitable-fund fee award (the fees to be awarded under Article XXI of the

settlement) is to compensate class counsel for work that conferred benefits on the entire class,

particularly those with whom class counsel did not have a contract.  487 F.2d at 165.  *Lindy II*

then held that it is improper to "mix[] considerations of the fees determined by equitable

principles (the equitable fund award) with considerations of the fees dependent on private

---

[4] In *Lindy II*, the Third Circuit also rejected an argument similar to the Turner Estate's contention
that enforcing the Authority to Represent would unfairly cause it "to shoulder the burden of its
attorney fees to a significantly greater extent than the rest of the class."  (ECF No. 7029 at 14.)
The court observed that it is not unacceptably unfair to require class members who retain private
attorneys to pay more in fees, because "it would seem that one who commences a class action by
retaining an attorney on a contingent basis bargains for just the type of inequity."  *Lindy II*, 540
F.2d at 120 n.14.  In addition, as a factual matter, it is not clear how enforcing the Authority to
Represent will cause the Turner Estate to shoulder any more of an attorneys' fee burden than the
thousands of other class members represented by private attorneys.

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2700, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382  •  Ft. Lauderdale 954.463.4346          www.podhurst.com

contracts." 540 F.2d at 120.  The Turner Estate's view that private contingency agreements with class members are "superseded" or rendered "inoperative as a matter of law" by a class-action settlement engages in the very conceptual "mixing" that the Third Circuit rejected forty years ago.  The Turner Estate's position cannot be reconciled with these binding authorities.  The private contingency fee agreements in *Lindy II* were, after all, enforced, not invalidated.[5]

**B. The Turner Estate's motion is also inconsistent with more recent district court decisions involving complex litigation settlements.**

Nor is the Turner Estate's position reconcilable with numerous district court decisions addressing private contingency fee contracts in the context of class-action and mass-tort settlements.  For example, in the *Diet Drugs* MDL, which gave rise to a class-action settlement that served as a model for the settlement in this case, this Court (Bartle, J.) issued several decisions enforcing private contingency contracts charging as much as 33.33% of a class member's monetary award, reduced by the percentage of common-benefit fees awarded to Class Counsel, which ranged from 6.39% to 9%, depending on the fund from which the award was issued.  *See, e.g., In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, No. MDL 1203, 2011 WL 722217, at *2 (E.D. Pa. Feb. 25, 2011) (concluding that "an attorney's fee of 33.3 percent generally is fair and reasonable" and approving payment to class member's individual attorney of 26.94% fee, calculated by subtracting 6.39% common benefit fee from contract's 33.33% fee); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine)*, No. CIV.A. 99-20593, 2004 WL 1243736, at *3 (E.D. Pa. June 4, 2004)

---

[5] The Supreme Court's decision in *Venegas v. Mitchell*, 495 U.S. 82, 90 (1990), further belies the Turner Estate's position, for in that case, the Court held that a court-awarded fee, albeit under 42 U.S.C. § 1988, "does not interfere with the enforceability of a contingent-fee contract."

Podhurst Orseck, P.A.

(same for fee of 24.3% to class member's individual attorney, calculated by subtracting 9% common benefit fee from 33.3% contract fee).

Likewise, in *Martens v. Smith Barney, Inc.*, No. 96 CIV. 3779 (JGK), 2003 WL 21543506, at *8 n.3 (S.D.N.Y. July 9, 2003), which also was resolved through a class-action settlement, the court both awarded class counsel a fee equal to 10% of the compensation paid to the class, and permitted class counsel and other individual attorneys to collect 25% contingency fees under retainer agreements with class members. The court rejected the claim that this amounted to a "double recovery" for class counsel, reasoning that

> contingent fees in this complex settlement were appropriate. There was basic work for which Class Counsel were paid including its successful resolution of the class action and obtaining systemic relief for the class. For the late stages of the individualized [claims process], contingent fees, which could be paid either to Class Counsel or to outside counsel, provided a measure to assure continued quality representation for the individual Claimants.

*Id.* at *8 n.3.

Similarly, in *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 290 F. Supp. 2d 840, 854 n.17 (N.D. Ohio 2003), which also was resolved through a class-action settlement, the court enforced private contingency contracts entered into prior to the announcement of the settlement. The court reasoned that, prior to the settlement,

> it is clear that an attorney who agreed to represent a plaintiff class member ran a far greater risk that his client would not receive any benefits at all, and he (the attorney) would never receive any compensation because there remained a meaningful risk that, if the settlement funding were ultimately insufficient, the settlement would not come to fruition at all.

*Id.*; *see also Fanning v. Acromed Corp.*, No. 1014, 2000 WL 1622741, at *1 n.5 (E.D. Pa. Oct. 23, 2000) (Bechtle, J.) (deducting common benefit fee in class-action settlement from fees

14

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2700, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346          www.podhurst.com

otherwise payable to privately retained attorney and permitting rest of contingency fee to be paid to privately retained attorney).[6]

In each one of these cases, and many others, the court enforced private contingency agreements between individual class members and their attorneys, notwithstanding the existence of a class-action settlement and an award of common benefit fees to class counsel.  This substantial body of law undermines the Turner Estate's premise that the class-action nature of the settlement and the provision of common-benefit fees in the settlement "supersede" and render "inoperative as a matter of law" Kevin's Authority to Represent with Podhurst.

Moreover, these district court decisions confirm that the Authority to Represent, particularly as modified with a reduced fee not to exceed 25% of the Monetary Award, is reasonable.  In *Diet Drugs*, 2011 WL 722217, at *2,  and *Fanning*, 2000 WL 1622741, at *1 n.5, for example, courts within this District permitted the enforcement of modified retainer agreements, reducing the contingency fee by the percentage of the settlement fund awarded as a common benefit fee.  This modification ensured that the amount awarded as attorney's fees did not exceed a reasonable percentage of the total settlement.  Podhurst's voluntary reduction of its contractual contingency fee to 25% is consistent with these decisions.  If the Court awards the entire $112.5 million permitted in Article XXI as a common-benefit fee, that amount will represent no more than approximately 10% of the total monetary value of the settlement.  (ECF

---

[6] *See also In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.,* No. MDL 05-1708 DWF/AJB, 2008 WL 3896006, *8 (D. Minn. Aug. 21, 2008) (permitting the enforcement of contingency fee agreements in mass-tort settlement pursuant to a formula that resulted in claimants paying no more on a percentage basis for attorney fees (contingency plus common benefit attorney fees) than 37.18% of settlement amount, or the maximum allowable under state law or the contract); *In re Zyprexa Prod. Liab. Litig.*, 424 F. Supp. 2d 488, 491, 496 (E.D.N.Y. 2006) (permitting the enforcement of 35% contingency fees in private retainer agreements in mass-tort, "quasi-class action" settlement).

15

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2700, Miami, FL 33131 Miami 305.358.2800 Fax  305.358.2382 • Ft. Lauderdale 954.463.4346        www.podhurst.com

No. 6167 at 6 (estimating that monetary payouts, alone, will be $933.4 million).)  Adding a 10%
common benefit fee to the 25% private contingency fee produces a 35% overall fee, a figure that
is in line with what courts have deemed reasonable.  *See*, *e.g.*, *Diet Drugs*, 2011 WL 722217, at
*2; *In re Zyprexa Prod. Liab. Litig.*, 424 F. Supp. 2d at 496; *Martens*, 2003 WL 21543506, at *8
n.3.

Faced with binding Third Circuit decisions and countless persuasive district court
authorities that foreclose the Turner Estate's position, it relies on a single district court decision
that is completely inapplicable, *Warnell v. Ford Motor Co.*, 205 F. Supp. 2d 956, 961 (N.D. Ill.
2002).  (ECF No. 7029 at 12.)  In *Warnell*, the court approved a settlement that provided up to $3
million in attorneys' fees "for *all* services, expenses and administrative and other costs incurred
to date," and ultimately awarded class counsel $2.75 million of that $3 million.  *Id.* at 958-59
(emphasis in original).  When class counsel moved for attorneys' fees, however, it concealed its
intent to enforce contingent-fee agreements with class members, which "circumvented [the
Court's] role as fiduciary for the class."  *Id.* at 960.  Due to this failure to disclose, the court ruled
that that the contingent-fee contracts were waived and unenforceable.  *Id.* at 961.

The circumstances of *Warnell* bear no resemblance to this case.  No one has concealed an
intent to enforce individual contingency agreements here, nor is there even an allegation to that
effect.  Rather, through this dispute and the many liens filed on the docket, the Court has been
made aware that attorneys intend to enforce their private contingency fee agreements.[7]  Indeed,

---

[7] Neither does *In re Agent Orange Product Liability Litigation*, 818 F.2d 226 (2d Cir. 1987), a
case cited in *Wardell*, 205 F. Supp. 2d at 961, assist the Turner Estate.  In that case, the district
court did not decide whether class members who were class counsel's private clients were
obligated to pay attorneys' fees under their private contingency agreements, "because no class
attorney requesting a fee award [from the equitable fund] ha[d] claimed the right to a contractual
fee from a client," and thus the court ruled that "any lawyer receiving a fee or expense award
from the fund will be deemed to have waived any private contractual right to a fee from

16

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2700, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346                    www.podhurst.com

because Class Counsel has yet to apply for a fee award under Article XXI, the error that was decisive in *Warnell* could not have been made here. Moreover, unlike the settlement language in *Warnell*, which suggested to the court that the award of attorneys' fees would cover "*all* services*" incurred to date, the settlement here expressly contemplates the enforcement of individual contingency agreements. *See* Section 21.1 (addressing how set-aside amounts will be deducted from fees payable to individual counsel). Likewise, the long-form notice approved by the Court and sent to all class members makes clear that privately retained attorneys will be compensated under retainer agreements. Ex. E (Long-Form Notice), ¶ 16 (the amount a class member will receive will depend on "[a]ny retainer agreement with an attorney"); *id.*, ¶ 33 ("[I]f you want to be represented by your own lawyer, you may hire one at your own expense.").

### C. Neither Rule 23 nor the text of the settlement agreement supports the Turner Estate's motion.

As Professor Silver thoroughly explains in the declaration submitted in support of this response, nothing in Rule 23 requires or even suggests that a class-action settlement operates to nullify retainer agreements between class members and their individual attorneys. *See* Ex. A (Silver Dec.), ¶¶ 30-35. Only two subparagraphs of Rule 23 mention attorneys' fees—subdivisions (g) and (h).[8] "Both provisions plainly relate to class counsel's compensation, not to

---

individual class members." *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1296, 1317–18 (E.D.N.Y. 1985). No such concessions or waivers have been made in this case. In any event, the *Agent Orange* court recognized that its view of the enforceability of private retainer agreements conflicted with the Third Circuit's decision in *Dunn*, which of course remains binding here. 611 F. Supp. at 1318 (citing *Dunn* as a "*but see*" authority).

[8] Rule 23(g) states, in relevant part, that a court "(C) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs; [and] (D) may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h)." Rule 23(h) states: "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2700, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346          www.podhurst.com

the rights of lawyers to collect fees and cost reimbursements pursuant to valid retainer agreements." Ex. A (Silver Dec.), ¶ 31. The Advisory Committee's Notes "leave no doubt" as to this conclusion, *id.*, as the Note to subdivision (g) specifically addresses "class counsel," and the Note to subdivision (h) addresses "an award of fees under the 'common fund' theory," without any mention of contractual fees or cost reimbursements. Advisory Committee's 2003 Note on subdivisions (g) and (h) of Fed. R. Civ. P. 23.

Nor does the text of the settlement agreement support the Turner Estate's request to nullify the Authority to Represent. The Turner Estate relies on Section 21.1 of Article XXI, which provides that "the NFL Parties shall pay class attorneys' fees and reasonable costs." As Professor Silver explains, however, the language of this section "make[s] it clear that the section has nothing to do with contractual fee payments." Ex. A (Silver Dec.), ¶ 37. Instead, "[i]t governs the NFL Parties' responsibilities for fees awarded to Class Counsel by the Court pursuant to a motion that Class Counsel will file." *Id.* Indeed, as Professor Silver explains, had the parties intended to abrogate attorneys' contractual rights to fees and reimbursements— something that they likely lack the authority to do, in the first place—the settlement surely would have clearly said so. *Id.*, ¶¶ 40-43.

The Turner Estate also misreads the Court's Final Approval Memorandum as "confirm[ing] that attorneys' fees are not to be taken from the Monetary Award or Funds available to the class." (ECF No. 7029 at 6 (citing ECF No. 6509 at 31).) In the passage of the Court's Order on which the Turner Estate relies, the Court was addressing the common-benefit fee that will be awarded to Class Counsel, not retained lawyers' contractual fee payments. This is clear from the Court's reference to a "common fund" and the "ultimate amount the *NFL Parties* must pay in attorneys' fees." (ECF No. 6509 at 31 (emphasis added).) The Court

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2700, Miami, FL 33131 Miami 305.358.2800 Fax 305.358.2382 • Ft. Lauderdale 954.463.4346          www.podhurst.com

recognized that an added benefit of the settlement was that an award of common-benefit fees would not reduce Monetary Awards or the Baseline Assessment Program.  The Court simply did not address, and did not need to address, the ultimate amount that *class members* must pay in private attorneys' fees, because that issue was not before the Court at that time.

*     *     *     *

In short, the Turner Estate's claim that the class-action settlement nullified Kevin's Authority to Represent is squarely foreclosed by binding Third Circuit precedent and numerous district decisions, and finds no support in Rule 23 or the text of the settlement agreement.

## II.  Nullifying The Authority To Represent Would Create Problematic Incentives In Class Action and Mass Tort Litigation.

The Turner Estate's extreme position that class-action settlements nullify private retainer agreements not only is inconsistent with the law, but if adopted, would also give rise to serious adverse consequences.  As Professor Silver explains, "a decision in the Turner Estate's favor would encourage some lawyers to opt their signed clients out of class actions," as inclusion in the class action would void the lawyers' contractual rights to fee and reimbursements.  Ex. A (Silver Dec.), ¶ 24.  This problematic incentive would create a formidable obstacle to the resolution of complex litigation through class-action settlements, as defendants would not be willing to settle if a substantial portion of the class opted out.  *Id.*, ¶¶ 24-29.  Indeed, had a large percentage of retired players opted out of the settlement here, it is likely that the NFL Parties would have exercised their "Walk-Away Right" under Article XVI of the settlement.

A decision in the Turner Estate's favor also "would close the courthouse doors to future claimants by making contingent fee agreements unreliable."  *Id.*, ¶ 49.  As Professor Silver attests, the contingent fee agreements "played an essential role in this litigation," *id.*, ¶ 52, serving as "the key to the courthouse door," *id.*, ¶ 48.  Recounting the history of the litigation,

19

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2700, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346          www.podhurst.com

Professor Silver explains that the litigation "flood" of hundreds of cases brought across the country, the vast majority, if not all, of which were filed by lawyers working on contingency agreements, triggered the need for an MDL and provided a source of considerable leverage in settlement negotiations with the NFL Parties. *Id.*, ¶¶ 50-52.  Litigation floods like this arise only "[b]ecause lawyers agree to work for dozens, hundreds, or thousands of clients on contingency. Without the wave of contingent fee lawsuits, there would be no litigation flood and no need for the MDL procedure either."  *Id.*, ¶ 52.  Podhurst certainly would not have undertaken this litigation on behalf of Kevin without a contingency fee agreement with him.

Now that the settlement has become effective, after years of litigation, invalidating private retainer agreements might benefit players now, "but it would have doomed them if it had been announced before the first cases were filed five years ago." *Id.*, ¶ 53.  Undermining the reliability of contingency fee agreements in this manner would make attorneys less likely to accept such cases in the future, reducing the access of injured persons to civil justice.  *Id.*

<u>CONCLUSION</u>

For the foregoing reasons, Podhurst respectfully requests that the Court deny the Turner Estate's motion to nullify Kevin's Authority to Represent.  It bears mentioning that the only contested relief the Turner Estate has sought is the nullification of the Authority to Represent, and has not expressed a view as to what a reasonable contractual fee would be, in the event that the contract is enforced.  Podhurst is hopeful that a ruling which validates its right to charge a contract-based fee for the work it performed and result it achieved for its client—the sole issue presented in the Turner Estate's motion—will enable the parties to work out privately an agreement as to a reasonable fee without the need for further Court intervention.

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2700, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346          www.podhurst.com

Dated: January 11, 2017                          Respectfully submitted,

                                                 **PODHURST ORSECK, P.A.**
                                                 SunTrust International Center
                                                 One S.E. 3rd Ave, Suite 2700
                                                 Miami, FL 33131
                                                 Telephone: (305) 358-2800
                                                 Fax: (305) 358-2382


                              By:      /s/ Steven C. Marks
                                                 STEVEN C. MARKS
                                                 Fla. Bar. No. 516414
                                                 Email: smarks@podhurst.com
                                                 STEPHEN F. ROSENTHAL
                                                 Fla. Bar No. 0131458
                                                 Email: srosenthal@podhurst.com
                                                 RICARDO M. MARTÍNEZ-CID
                                                 Fla. Bar No. 383988
                                                 Email: rmcid@podhurst.com
                                                 MATTHEW P. WEINSHALL
                                                 Fla. Bar No. 84783
                                                 Email: mweinshall@podhurst.com


                                                 *Attorneys for Plaintiffs*

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2700, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346      www.podhurst.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of January, 2017, I caused the foregoing Notice of Change of Address, to be served via the Electronic Case Filing (ECF) system in the United States District Court for the Eastern District of Pennsylvania, on all parties registered for CM/ECF in the above-captioned matter.

By:   /s/ Steven C. Marks
STEVEN C. MARKS

Podhurst Orseck, P.A.

SunTrust International Center, One S.E. 3rd Avenue, Suite 2700, Miami, FL 33131 Miami 305.358.2800  Fax  305.358.2382 • Ft. Lauderdale 954.463.4346          www.podhurst.com