**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION

Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated,*

Plaintiffs,

v.

National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,

Defendants.

THIS DOCUMENT RELATES TO: ALL ACTIONS

No. 2:12-md-02323-AB

MDL No. 2323

Hon. Anita B. Brody

Civ. Action No. 14-00029-AB

**JOINDER BRIEF OF THE LOCKS LAW FIRM**
**IN OPPOSITION TO MOTION OF ESTATE OF KEVIN TURNER**

The Locks Law Firm respectfully submits this Joinder Brief to aid the Court in its resolution of the Motion ("Motion") filed by the Estate of Kevin Turner through its representative Paul Raymond Turner (Movant) regarding the contingency fee arrangement between the late Mr. Turner and the law firm of Podhurst Orseck P.A.

## PRELIMINARY STATEMENT

Locks expresses no view on the specific nature of the promises that Podhurst made to Mr. Turner about the terms of their contingency agreement, a matter about which the firm has no knowledge. But Movant also bases its motion on a broader set of

categorical arguments about the impact of class certification on contingency fee arrangements between all class counsel and their individual clients. Those categorical arguments are wrong on the law and mischaracterize the nature of the representation that class counsel and the participants in the Plaintiffs Executive Committee have provided throughout the multiple stages of this complex proceeding.

According to Movant, an attorney who represents a named plaintiff in a class action can never earn compensation through both common benefit fees and an individually negotiated contract for a contingency fee. That is flatly incorrect. When a firm provides representation in furtherance of class certification, class adjudication and class settlement — particularly in a massive action consolidated for pre-trial purposes through the Judicial Panel on Multi-District Litigation — the firm works on behalf of the class and is entitled to compensation through common benefit fees. When the same firm provides representation to individual clients in order to protect their interests and secure compensation under a settlement, the firm works on behalf of the individual client and is entitled to the compensation the firm and the client have agreed to through contract. The work is different, the beneficiaries of the work are different, and the basis for compensation is different.

Here, Movants allege double compensation, but no double compensation is involved in the award of properly allocated common benefit fees and reasonable individual contingency fees. Common benefit fees compensate for work done on behalf of the class; reasonable contingency fees compensate for work done in securing compensation for individual claimants. In many actions, including this one, the two types of work are distinct and do not substantially overlap. Movant would have this Court

ignore these realities altogether in favor of its categorical argument that class counsel can never secure individual contingency fees. Insofar as Movant grounds its request for the Court's intervention on this categorical position, the Locks Law Firm urges the Court to deny the Motion.

## ARGUMENT

### I. Movant's Categorical Arguments Ignore the History and Reality of this Proceeding and Would Upend the Allocation and Award of Common Benefit Fees.

We begin by setting forth some basic principles concerning advocacy on behalf of a class and representation of individual clients in the context of a large and complex action consolidated through the Judicial Panel on Multidistrict Litigation (JPML). These principles are reflected in the representation that the Locks Law Firm has provided throughout the course of these proceedings.

The Locks Law Firm represents approximately 1,400 former NFL players, the largest number of any firm several times over. The firm represented hundreds of those players before any prospective class action was filed and soon after the JPML consolidated these cases into an MDL proceeding. It participated in representing the class throughout the long and difficult litigation surrounding the request for class certification and the negotiation of a proposed class settlement. Lawyers from the Locks Law Firm worked individually with hundreds of the firm's clients — and also with scores of absent class members who are not clients of the firm — to guide them through the benefits they could expect under the settlement and compare those benefits to the prospects for recovery through individual litigation. That work was indispensable to the success of the settlement, which required a participation rate that depended on the buy-in

of the vast majority of Locks' clients — a goal that the firm achieved with close to 99% of its clients choosing to remain in the class. The Locks Law Firm will continue to work with its 1,400 clients to secure the full measure of damages and medical benefits that each of them may be owed under the uncapped settlement: guiding them through the diagnostic procedures that they will require in order to secure recovery, working with them to obtain the highest quality medical assistance, and representing them in any disputes over recovery that may arise through the dispute-resolution mechanisms that the Settlement establishes.

No firm involved in these consolidated proceedings has performed the scope of work in all these different modes that the Locks Law Firm has. Co-lead counsel for the class, Seeger Weiss, represents few individual clients. Their work has focused primarily on the class as a whole. Other firms represent a significant number of individual clients (though none approaching the number represented by the Locks Law Firm) but have played little or no role in the class proceedings. As a result, Seeger Weiss will be compensated primarily or exclusively through common-benefit fees, while firms with large numbers of clients but little or no role in the class proceedings will be compensated primarily or exclusively through appropriate individual fee arrangements. The Locks Law Firm has operated in both roles throughout the course of these proceedings and will receive compensation through both mechanisms.

Locks has agreed to a lesser and reasonable contingency fee for any individual recovery with all of its clients in this proceeding, a rate that reflects the dual role that Locks agreed to play in the years-long effort to secure relief for its clients. The firm understood from the beginning that a class action would be a likely vehicle for obtaining

relief and filed national and statewide class actions for medical monitoring — the only such actions filed in these proceedings, filed early in the litigation and, therefore, placing settlement pressure on defendants. These actions were ultimately consolidated through the MDL and merged into the present class proceeding. Locks negotiated those individual contingency rates to reflect the expectation that compensation for the firm's efforts would come both from common benefit fees and from contingency fees, depending on the nature of the work performed. Locks expressly set forth these expectations about compensation with each former player. If no class action were certified and common benefit fees were not available for work done on behalf of the class, then contingency fees might increase as Locks pursued individual litigation and obtained financial recovery for each player. From the beginning, Locks made these realities clear to its individual clients and they were the basis for the structure of its individual contingency fee contracts — a lower rate if common benefit fees were available for work done to support the class, a higher rate if individual litigation became the only route for securing relief for former players.

Movant's categorical arguments would sweep these realities away. If this Court were to accept Movant's categorical arguments suggesting that class counsel may never maintain contingency fee arrangements with any of their individual clients, then the negative impact on the common benefit fee allocation process and on the interests of the players in securing speedy and effective recovery would be profound.

First. If this Court were to accept Movant's categorical arguments, then the allocation of all common benefit fees among class counsel would have to be driven

primarily by the number of individual clients each lawyer represents and the size of their recovery.

The number of clients represented by participating counsel and the value of their claims already plays a necessary role in the allocation of common benefit fees when the representation of those clients has a substantial impact on the viability of the settlement, as was true in this case. The present Settlement would have failed without a high participation rate. The announcement of the Settlement terms produced confusion and anger among many class members (most of whom are college graduates) for a number of reasons, including the substantial differences in rates of recovery among different players under the matrix. Time spent talking with clients about the rationale of the Settlement and educating them about the risk of opting out to pursue individual litigation was vital to the success of the accord and compromise supported by this Court. That counseling, in turn, depended on relationships of trust forged during years of individual representation. Without those relationships with hundreds of individual players, there would have been no Settlement. Thus, the size of class counsel's client base and the time spent securing their voluntary participation in the Settlement are necessary and substantial factors in the award of common benefit fees.

If this Court were to accept Movant's categorical arguments, however, then the size of class counsel's client base and the value of their claims would have to become not just a substantial factor but the principal driver of common benefit fees. If individual contingency fee contracts were deemed unenforceable, then well-established principles of *quantum meruit* and basic fairness would require that the years spent by class counsel representing, counseling, and advocating for individual clients — both before the

Settlement was reached and in securing compensation under the Settlement matrix — be compensated fully from the common benefit fees.

The Locks Law Firm is seeking appropriate compensation through common benefits fees for the extensive work it undertook with its clients to ensure the Court-approved Settlement, in addition to the other extensive work that the firm performed on behalf of the class and in the MDL. But it has never been the firm's position that its unique status as the holder of the single largest portfolio of clients entitled it to the largest portion of the common benefit fees. If this Court accepts Movant's categorical arguments, then the Locks Law Firm reserves its right to advocate accordingly, but we urge this Court not to take that step.

Second. If this Court were to accept Movant's categorical arguments, then the award of common benefit fees would have to be delayed until all or most of the awards are paid to former players under the Settlement Agreement. This, of course, makes no sense. The incentives of attorneys representing clients under the matrix must remain properly aligned, and the allocation of fees must reflect actual work performed. If common benefit fees are to cover all work done by class counsel in conjunction with these proceedings — not just work performed on behalf of the class in furtherance of the Settlement and MDL, but also work performed for individual clients to secure full compensation under the matrix — then the Court could not allocate those fees without knowing which attorneys have secured compensation for their clients in what amounts. It could not pay those fees to class counsel until counsel had actually secured compensation for their clients.

The process that this Court has already initiated for the allocation of common benefit fees makes clear that Movant's categorical arguments must be rejected. This Court has instructed class counsel to work with designated members of the Plaintiffs Executive Committee to collect timesheet and expense records to support an allocation of fees for work performed through July 1, 2016. No former NFL player has yet received payment of a monetary award under the Settlement, and substantial work remains to be done by firms representing individual clients to prepare and submit claims and advocate for full relief under the matrix. This Court obviously does not intend for class counsel to speculate about the amount of time they will spend for each of their clients in that claims process, and this Court cannot intend to allocate fees to lawyers and firms for work they have not yet performed. Yet that is the implication of the categorical arguments that Movant has advanced.

Third. Movant's attempt to portray individual contingency fee contracts as some kind of unfair double recovery would in fact produce unfair differences in the total recovery available to former players based on the fortuity of the lawyers who represent them. There are many attorneys who have never played any role in the class action or the MDL but who represent individual players and will advocate for them in the claims administration process. Compensation for those lawyers will come through contracts with their clients. (Movant presumably does not mean to suggest that lawyers with no role of any kind in the class or the MDL would be compensated through common benefit fees.) Thus, former players who are represented by lawyers and firms unrelated to the class proceeding will pay some reasonable fee to their lawyers for assistance in pursuing claims through the Settlement matrix. There is no reason that former players should

receive different total recoveries based on whether they are represented by class counsel or by unrelated lawyers. But that is the result that Movant's categorical arguments would produce, since Movant takes the position that no individual fee agreement between class counsel and a former player is enforceable.

Indeed, the opinion from the Northern District of Illinois on which Movant relies so heavily emphasizes that forcing one set of class members to "shoulder the burden of attorneys' fees to a significantly greater extent than the rest of the class" is inappropriate. Motion at 13, *quoting Warnell v. Ford Motor Co.*, 205 F. Supp. 25 956, 962 (N.D. Ill. 2002). If this Court were to accept Movant's categorical arguments and apply them to all class counsel, it would create the very inequity among class members that Movant says is impermissible.

Movant's categorical arguments are at odds with the reality and long history of this litigation. They are inconsistent with the process this Court has already initiated for the allocation of common benefit fees. And they would result in misaligned incentives, delay, and unequal treatment of similarly situated former players.

## II. Movant's Categorical Arguments are Foreclosed by Controlling Authority.

Movant's categorical arguments would also violate well-established statutory and common-law principles. Movant argues that the certification of the class under Rule 23, by its own force, abrogated preexisting contracts between lawyers and their clients. That argument is foreclosed by the Rules Enabling Act, which forbids any Federal Rule of Civil Procedure to "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). And Movant attempts to rely on precedents holding that this Court has the inherent power to supervise contingency fee awards in order to ensure that they are not

excessive. But the undoubted supervisory authority of a district court to prevent abusive contingency fees is not specific to class actions and provides no authority for denying altogether the compensation of class counsel through individual fee agreements.

### A. The Rules Enabling Act Forecloses Movant's Argument that the Certification of a Class Under Rule 23 Abrogates Contingency Fee Contracts by its Own Force.

Movant asserts that the certification of the class under Rule 23, by its own force, abrogated the contract for representational services between Kevin Turner and his attorneys. *See, e.g.*, Motion at 1–2 ("[The] contingency fee agreement that Kevin Turner and Podhurst entered into . . . was superseded by the certification of a national class of which Mr. Turner was a member"); *id.* at 4 ("[The contingency fee agreement] had become inoperative as a matter of law when Podhurst undertook to represent a national class."). That is incorrect. The certification of a class pursuant to Rule 23 is subject to the constraints of the Rules Enabling Act. By its own force, Rule 23 cannot abridge or modify any contract.

Like all Federal Rules of Civil Procedure, Rule 23 was adopted pursuant to the Rules Enabling Act of 1934, which commands that no rule may "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). As the Supreme Court emphasized in *Amchem*, "Rule 23's requirements must be interpreted in keeping . . . with the Rules Enabling Act" and its prohibition against abridgement or modification of rights that are substantive in character. *Amchem Prods. v. Windsor*, 521 U.S. 591, 612–613 (1996). The enforceability of a contract is a question of substantive right that Rule 23 cannot abridge. Thus, in *American Express v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2309–2310 (2013), the Supreme Court said "it is likely that" an interpretation of Rule 23

"invalidating private arbitration agreements denying class adjudication[] would be an 'abridg[ment]' or 'modif[ication]' of a 'substantive right' forbidden to the Rules." (quotations and alterations in original).

As the next Section explains, federal district courts do have inherent authority to supervise the terms of contingency fee contracts in the proceedings they hear and, in appropriate cases, to order adjustments to the terms of those contracts in order to ensure that the court's processes are not used to exploit litigants. That power is not particular to class proceedings and does not depend on Rule 23 for its authority, nor could it. The limited power that courts enjoy to modify contingency fee contracts arises from sources of substantive authority. The Rules Enabling Act forbids Rule 23, or any other Federal Rule, to abrogate or modify contractual rights.

### B. This Court's Power to Review Contingency Fees Arises from its Supervisory Authority, Not Rule 23, and that Power Should Be Used Sparingly When Class Members Have Voluntarily Signed Individual Fee Contracts.

Movant also argues that this Court should use its supervisory authority to eliminate the contracts that class counsel negotiated with their individual clients prior to the adoption of the Settlement. There is no authority to support this suggestion. This Court has undoubted power to ensure that its processes are not used to extort improper or abusive fees from individual claimants. But it has no power to abrogate a valid contingency fee contract altogether simply because a class has been certified.

The Court's power to review the terms of a negotiated contingency fee contract arises from its supervisory authority. As the Third Circuit has explained, "in its supervisory power over the members of its bar, a court has jurisdiction of certain activities of such members, including the charges of contingency fees." *Schlesinger v.*

*Teitelbaum*, 475 F.2d 137, 141 (3d Cir. 1973). That authority rests on the Court's inherent powers, and also on the substantive law underlying the particular dispute before the Court. Thus, in *Schlesinger*, the Third Circuit emphasized the importance of federal admiralty law and the status of a seaman as a "special ward" when describing the review of contingency fee awards by district courts in maritime cases. *Id.* at 140–141. *See also* Tobias Barrington Wolff, Managerial Judging and Substantive Law, 90 Wash. U. L. Rev. 1027, 1048–1060 (2013) (discussing the relationship between the underlying substantive law and a district court's use of its inherent powers to review contingency fee awards).

The same principles hold true in a class action. As explained in the previous Section, the Rules Enabling Act forbids any Federal Rule from abridging or modifying substantive rights of contract of its own force. Rather, as the Third Circuit explained in *Dunn v. H.K. Porter, Inc.*, 602 F.2d 1105, 1114 (1979) — a case on which Movant places great weight — a district court relies on its "supervisory authority over those practicing before it" when it fulfills the "duties imposed by Fed. R. Civ. P. 23(e)" to review contingency fee contracts between class counsel and class members. And, as the Third Circuit also held in *Dunn*, where a fee has been expressly and voluntarily negotiated by the class member, "courts should be loathe to intrude into a contractual relationship between an attorney and client" for fear of "discourage[ing] the prosecution of risky, but meritorious lawsuits." *Id.* at 1111–1112. Such intervention is not warranted in a class action proceeding where contingency fee contracts between class counsel and their clients "were entered into prior to the initiation of suit, and apparently with considerable preliminary discussion" and there was "no misconduct on the part of the lawyers." *Id.* at 1112–1113.

The only precedent that Movant offers in its attempt to argue to the contrary is a district court ruling from Illinois in which class counsel "violated [their duty to the court] by failing to disclose their intent to enforce contingency fee agreements against the named plaintiffs' recovery from the settlement fund" in an act of deliberate deception. *Warnell v. Ford Motor Co.*, 205 F. Supp.2d 956, 957 (N.D. Ill. 2002). *Warnell* is a case about attorney misconduct from start to finish. *See, e.g.*, *id.* at 958 (counsel "failed to disclose their intent to enforce contingent fee agreements"); *id.* ("They argue that their failure was innocent, and was not intended to deceive. I find otherwise."). It provides no authority for Movant's categorical argument that class counsel can never recover through contingency fee contracts for work done on behalf of individual class members.

Movant is thus incorrect when it argues that certification of a class and approval of a class settlement automatically "supersede[s]" individual contingency fee contracts and forces class counsel to "[give] up [their] right to enforce" such agreements. Motion at 12, 14. *Dunn* holds to the contrary, and *Warnell* authorizes such extraordinary steps only where there is clear evidence of attorney misconduct and willful misrepresentations to the Court that would result in unauthorized double recovery.

Despite the strong rhetoric of its Motion, Movant alleges no misconduct by Podhurst of the type found by the district court in *Warnell* and no misrepresentations to this Court at all. The "even more compelling" argument that Movant promises is simply a recitation of the fact that Mr. Turner agreed to participate in the class and serve as a class representative. *See* Motion at 13–14 ("Kevin abandoned his individual lawsuit to serve as a class representative" . . . and "gave up valuable rights, including his right to a jury trial and his right to recover substantially more money than he would be entitled to

under the settlement agreement" if he prevailed in an individual action). The Locks Law Firm leaves it to this Court to determine whether there are any specific factual grounds for revisiting the terms of Podhurst's contingency fee arrangement with the Turner Estate. But Movant's argument that the certification of a class and approval of a class settlement automatically abrogate contingency contracts is wrong and contradicted by the very authorities on which Movant attempts to rely.

## CONCLUSION

Movant's request for relief is, fundamentally, a dispute about the terms on which Podhurst and Mr. Turner negotiated their contingency fee contract. The Locks Law Firm has no knowledge or view about those negotiations. It may be that the terms of the original contingency fee should change to reflect the compensation that Podhurst will receive through common benefit fees under the Settlement and that Mr. Turner's status as a named plaintiff will have some bearing on that analysis. That is a matter for Podhurst, the Turner estate, and this Court to resolve.

But Movant cannot use its dispute with Podhurst to advance a set of categorical arguments that would undermine or invalidate the contractual relationships that the Locks Law Firm and others have made with their individual clients. Those firms are entitled to be compensated appropriately for their years of work advocating for former players and for the years of work ahead in securing the proper measure of compensation under the Settlement matrix. Movant's categorical arguments are wrong on the law, would erase the history and on-the-ground reality of these proceedings, would require a complete restructuring of the common benefit fee allocation process, and would threaten to misalign the incentives of attorneys advocating for players under the Settlement and

delay payment of common benefit fees. There is no reason to permit such a disruption of these proceedings.

The Locks Law Firm therefore urges this Court to deny the Motion.

Dated: January 11, 2017

Respectfully submitted,

Gene Locks
David D. Langfitt
LOCKS LAW FIRM
The Curtis Center
Suite 720 East
601 Walnut Street
Philadelphia, PA 19106
Phone: 215-893-3423
Fax: (215) 893-3444
glocks@lockslaw.com
dlangfitt@lockslaw.com

and

Tobias Barrington Wolff
Professor of Law
University of Pennsylvania Law School
3501 Sansom Street
Philadelphia, PA 19104
Phone: 215-898-7471
twolff@law.upenn.edu

**CERTIFICATE OF SERVICE**

I, Gene Locks, hereby certify that true and correct copy of the foregoing Joinder Brief of the Locks Law Firm in connection with MDL No. 2323 was served via the District Court's Electronic Filing System on all counsel of record.

Dated: January 11, 2017

/s/ Gene Locks
Gene Locks
LOCKS LAW FIRM
The Curtis Center
Suite 720 East
601 Walnut Street
Philadelphia, PA 19106