UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:  NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323<br><br>**DECLARATION OF SHANNON R. WHEATMAN ON SETTLEMENT CLASS SUPPLEMENTAL NOTICE** |

I, Shannon R. Wheatman, being duly sworn, hereby declare as follows:

1.      I am president of Kinsella Media, LLC ("KM"), an advertising and legal notification firm in Washington, D.C. specializing in the design and implementation of notification programs to reach putative class members primarily in consumer and antitrust class actions and claimants in bankruptcy and mass tort litigation.  My business address is 2101 L Street, NW Suite 800, Washington, DC 20037.  My telephone number is (202) 686-4111.

2.      KM was previously appointed the Settlement Class Notice Agent for *In re: National Football League Players' Concussion Injury Litigation* (Dkt. 6084) and was retained to design the Settlement Class Supplemental Notice proposed here to advise Settlement Class Members of the previously disclosed deadlines, how to register for participation in the Class Action Settlement, how to participate, if eligible, in the Baseline Assessment Program ("BAP"), and how to submit Claim Packages or Derivative Claim Packages.

3.      This declaration will describe my experience in designing and implementing notices and notice plans.  It will also describe the Settlement Class Supplemental Notice, including how it was developed and why I believe it will be effective.

## RELEVANT EXPERIENCE

4.      I have served as a qualified class action notice expert in many major class actions. State and federal courts have accepted my analyses and expert testimony on whether information is effectively communicated to people.  My curriculum vitae is attached as **Exhibit 1**.

5.      I have testified in court as an expert in *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2672 (N.D. Cal.); *State v. Farmers Group Inc.*, No. D-1-GV-02-002501 (D. Ct. Tex., Travis County); *Scharfstein v. BP West Coast Products, LLC*, No. 1112-17046 (Cir. Ct. Ore.); *Spillman v. RPM Pizza, Inc.*, No. 10-349 (M.D. La.); *PRC Holdings, LLC v. East Resources, Inc.*, No. 06-C-81 (Cir. Ct. W. Va.); *Guidry v. American Public Life Ins. Co.*, No. 2008-3465 (14th Jud. Dist. Ct., Calcasieu Parish); *Webb v. Liberty Mutual Ins. Co.*, No. CV-2007-418-3 (Cir. Ct. Ark); and *Beasley v. The Reliable Life Insurance Co.*, No. CV-2005-58-1 (Cir. Ct. Ark).  I have been deposed as an expert in *Hale v. CNX Gas Company, LLC*, No. 10-CV-59 (W.D. Va.) and *Thomas v. A. Wilbert Sons, LLC*, No. 55,127 (18th Jud. Dist. Ct., Iberville Parish).

6.      I have been involved in some of the largest and most complex national notification programs in the country, including: *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2672 (N.D. Cal.); *Precision Associates, Inc. v. Panalpina World Transport*, No. 08-CV-00042 (E.D.N.Y.); *In re Transpacific Passenger Air Transportation Antitrust Litigation,* MDL No. 1913 (N.D. Cal.) (involving millions of international airline passengers); *In re Dynamic Random Memory Antitrust Litig.,* MDL No. 1486 (N.D. Cal.) (involving tens of millions of consumers); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827 (N.D. Cal.) (involving millions of indirect purchasers); *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010,* MDL No. 2179 (E.D. La.); *Kramer v. B2Mobile, LLC*, No. 10-CV-02772 (N.D. Cal.) (text messaging case involving tens of millions of consumers); *In re Target Corp. Customer Data Security Breach Litig.*, MDL No. 14-2522 (D. Minn.) (data breach); *In re Sony Gaming Networks &*

*Customer Data Security Breach Litig.*, No. 11-MD-2258 (S.D. Cal.) (data breach); *Fogel v. Farmers Group, Inc.*, No. BC300142 (Cal. Super. Ct., LA County) ($455 million settlement involving tens of millions of insureds); *In re Katrina Canal Breaches Consolidated Litig.*, No. 05-4182 (E.D. La.) (settlement obtained for Hurricane Katrina and Rita survivors); and many others.

7.    Courts have admitted my expert testimony on quantitative and qualitative evaluations of the effectiveness of notice programs, and several courts have commented favorably, on the record, regarding the effectiveness of notice plans I have done.   Selected judicial comments are included in the attached curriculum vitae.

8.    My qualifications include expertise in the form and content of notice.   For example, while serving with the Federal Judicial Center ("FJC"), I played an integral part in the development of the illustrative "model" forms of notice designed to satisfy the plain language requirements of Federal Rule of Civil Procedure 23(c)(2).   This research formed the basis for my doctoral dissertation, *The Effects of Plain Language Drafting on Layperson's Comprehension of Class Action Notices* (2001) (Ph.D. dissertation, University of Georgia).   To assist judges and attorneys, both in state and federal courts, the FJC posted the notices at www.fjc.gov.

9.    I have authored and co-authored articles on notice and due process.   I believe notice and due process depend upon clear communication with the people affected.   *See, e.g.,* Shannon R. Wheatman & Katherine M. Kinsella, *International Class Action Notice,* in WORLD CLASS ACTION:  A GUIDE TO GROUP AND REPRESENTATIVE CLASS ACTIONS AROUND THE GLOBE 673-686 (Paul Karlsgodt ed., 2012); Katherine Kinsella & Shannon Wheatman, *Class Notice and Claims Administration,* in PRIVATE ENFORCEMENT OF ANTITRUST LAW IN THE UNITED STATES: A HANDBOOK 338-348 (Albert A. Foer & Randy M. Stutz eds., 2012); Shannon R. Wheatman & Terri R. LeClercq, *Majority of Class Action Publication Notices Fail to Satisfy Rule 23 Requirements*, 30 REV. LITIG. 53 (2011); Katherine Kinsella & Shannon R. Wheatman, *Class Notice and Claims Administration*, in THE INTERNATIONAL PRIVATE ENFORCEMENT OF

3

COMPETITION LAW 264–274 (Albert A. Foer & Jonathan W. Cuneo eds., 2010); Todd B. Hilsee, Shannon R. Wheatman & Gina M. Intrepido, *Do you really want me to know my rights? The ethics behind due process in class action notice is more than just plain language:  A desire to actually inform*, 18 GEO. J. LEGAL ETHICS 1359 (2005); and Todd B. Hilsee, Gina M. Intrepido & Shannon R. Wheatman, *Hurricanes, Mobility and Due Process:  The "Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 TULANE LAW REV. 1771 (2006).

## OVERVIEW

10.    I have been involved in drafting the Settlement Class Supplemental Notice as described below and attached as **Exhibit 2**.  The form is noticeable, clear, concise, and written in plain, easily understood language.

### *Individual Direct Mail Notice*

11.    Direct Mail Notice will consist of mailing the Settlement Class Supplemental Notice (attached as **Exhibit 2**) via first-class mail to Settlement Class Members to inform them how they may participate in the Class Action Settlement (register, participate in the BAP, and submit Claim Packages or Derivative Claim Packages) and advise them of the deadlines.  The mailing will be made to all Settlement Class Members who had been mailed the original Long Form Notice as part of the initial Court-Approved Notice Plan (Dkt. 6084), including updates made in response to returned mailings, as well as to all additional Settlement Class Members who have since been in contact with the Claims Administrator and provided their contact information or updated their contact information.

12.    The Settlement Class Supplemental Notice will also be available (as a PDF) at www.NFL ConcussionSettlement.com, the official Settlement Website, or by calling the toll-free number that was established as part of the Settlement.

**SETTLEMENT CLASS SUPPLEMENTAL NOTICE FORM AND CONTENT**

13.      Attached as **Exhibits 2 and 3** are copies of the Settlement Class Supplemental Notice and envelope.

14.      Rule 23(c)(2) of the Federal Rules of Civil Procedure requires class action notices to be written in "plain, easily understood language."  KM applies the plain language requirement in drafting notices in federal and state class actions, including the Settlement Class Supplemental Notice prepared for this litigation.  The firm maintains a strong commitment to adhering to the plain language requirement, while drawing on its experience and expertise to draft notices that effectively convey the necessary information to Settlement Class Members.

15.      The Settlement Class Supplemental Notice is designed to capture Class Members' attention.  It directs readers to the Settlement Website for more information.  The text provides important information regarding how Class Members can participate in the Settlement and includes all specific instructions Class Members need to follow to properly exercise their rights. It is designed to encourage readership and understanding, in a well-organized and reader-friendly format.

**CONCLUSION**

It is my opinion that the content of the Settlement Class Supplemental Notice is adequate and reasonable under the circumstances.  This document is consistent with the standards regularly employed by KM in notification programs designed to reach class members.

I declare under penalty of perjury that the foregoing is true and correct.  Executed in Souderton, PA this 18th day of January 2017.


_____
Shannon R. Wheatman, Ph.D.

# EXHIBIT 1



# Shannon R. Wheatman, Ph.D.

President

Kinsella Media, LLC

2001 Pennsylvania Avenue NW, Suite 300

Washington, DC 20006

2010 – Present

Dr. Wheatman specializes in designing, developing, analyzing, and implementing large-scale legal notification plans. She is a court-recognized expert who provides testimony on the best notice practicable. Dr. Wheatman began her class action career in 2000 at the Federal Judicial Center where she was instrumental in the development of model notices to satisfy the plain language amendment to Rule 23. Her plain language expertise was advanced by her education, including her doctoral dissertation on plain language drafting of class action notice and her master's thesis on comprehension of jury instructions. Dr. Wheatman has been involved in over 400 class actions. Her selected case experience includes:

### *Antitrust*

*Allen v. Dairy Farmers of America, Inc*., No. 5:09-CV-00230-CR (D. Vt.).

*Blessing v. Sirius XM Radio, Inc.*, No. 09-CV-10035 HB (S.D.N.Y.).

*Brookshire Bros. v. Chiquita*, No. 05-CIV-21962 (S.D. Fla.).

*Cipro Cases I and II*, No. 4154 and No. 4220 (Super. Ct. Cal.).

*In re Automotive Parts Antitrust Litigation,* MDL No. 2311 (E.D. Mich.).

*In re Dynamic Random Memory (DRAM) Antitrust Litig.,* MDL No. 1486 (N.D. Cal.).

*In re Flonase Antitrust Litig*., No. 08-CV-3301 (E.D. Pa.).

*In re Metoprolol Succinate End-Payor Antitrust Litig.*, No. 06-CV-71 (D. De.).

*In re NYC Bus Tour Antitrust Litig.,* No. 13-CV-0711 (S.D. N.Y.).

*In re Online DVD Rental Antitrust Litig.*, MDL No. 2029 (N.D. Cal.).

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827 (N.D. Cal.).

*In re Transpacific Passenger Air Trans. Antitrust Litig.*, MDL No. 1913 (N.D. Cal.).

*Precision Associates, Inc. v. Panalpina World Transport*, No. 08-cv-00042 (E.D. N.Y.).

*Roos v. Honeywell Int'l, Inc.*, No. CGC 04-0436205 (Super. Ct. Cal.).

*Sweetwater Valley Farm, Inc. v. Dean Foods*, No. 2:07-CV-208 (E.D. Tenn.).

*The Shane Grp., Inc., v. Blue Cross Blue Shield of Michigan*, No. 2:10-CV-14360 (D. Minn.).

**Consumer and Personal Injury/Product Liability**

*Abbott v. Lennox Industries, Inc.,* No.16-2011-CA-010656 (4th Jud. Cir. Ct., Dade Cty. Fla).

*Beringer v. Certegy Check Servs., Inc.*, No. 8:07-CV-1434-T-23TGW (M.D. Fla.) (data breach).

*Chaudhri v. Osram Sylvania, Inc.,* No. 2:11-CV-05504 (D.N.J.) (false advertising).

*CSS, Inc. v. FiberNet, L.L.C.*, No. 07-C-401 (Cir. Ct. W. Va.) (telecommunications).

*Donovan v. Philip Morris USA, Inc.,* No. 06-12234 NG (D. Mass.) (medical monitoring).

*FIA Card Servs., N.A. v. Camastro*, No. 09-C-233 (Cir. Ct. W.Va.) (credit card arbitration).

*George v. Uponor Corp.*, No. 12-249 (D. Minn.) (defective product).

*Glazer v. Whirlpool Corp.*, No. 1:08-WP-65001 (N.D. Ohio)(defective product).

*Grays Harbor v. Carrier Corp.*, No. 05-CIV-21962 (W.D. Wash.) (defective product).

*In re Building Materials Corp. of America Asphalt Roofing Shingle Prods. Liab. Litig.,* No. 8:11- 02000 (D.S.C.) (roofing shingles).

*In re Checking Account Overdraft Litig.*, MDL No. 2036 (S.D. Fla.) (JP Morgan, U.S. Bank, BOA settlements; overdraft fees).

*In re Enfamil LIPIL Mktg. & Sales Practs. Litig.*, No. 11-MD-02222 (S.D. Fla.) (false advertising).

*In re M3Power Razor System Mktg. & Sales Practs. Litig.*, MDL No. 1704 (D. Mass.) (false advertising).

*In re: National Football League Players' Concussion Injury Litigation,* No. 2:12-md-02323 (E.D. Pa.).

*In re Netflix Privacy Litig.*, No. 5:11-CV-00379 (N.D. Cal.) (privacy).

*In re Pharm. Industry Average Wholesale Price Litig.*, MDL No. 1456 (D. Mass.) (pharmaceutical).

*In re SCBA Liquidation, Inc., f/k/a Second Chance Body Armor, Inc.,* No. 04-12515 (Bankr. W.D. Mich.) (defective product).

*In re Sony Gaming Networks & Customer Data Security Breach Litig.*, No. 11-MD-2258 (S.D. Cal.) (data breach).

*In re Target Corp. Customer Data Security Breach Litig.*, MDL No. 14-2522 (D. Minn.) (data breach).

*In re Toyota Motor Corp. Unintended Acceleration Mktg, Sales Practs, & Prods. Litig.,* No. 8:10ML2151



(C.D. Cal.) (unintended acceleration).

*In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 3:15-md-2672 (N.D. Cal.)

*In re Vioxx Products Liab. Litig.*, No. 05-MD-01657 (E.D. La) (pharmaceutical).

*In re Wachovia Corp. "Pick-a-Payment" Mortgage Mktg & Sales Practs. Litig.*, No. M:09-CV-2015 (N.D. Cal.) (negative amortization).

*In re Wirsbo Non-F1807 Yellow Brass Fittings*, No. 2:08-CV-1223 (D. Nev.) (defective product).

*Keilholtz v. Lennox Hearth Prods.*, No. 08-CV-00836 (N.D. Cal.) (defective product).

*Kramer v. B2Mobile, LLC*, No. 10-CV-02722 (N.D. Cal.) (TCPA).

*Lee v. Carter Reed Co., L.L.C.*, No. UNN-L-39690-04 (N.J. Super. Ct.) (false advertising).

*Mirakay v. Dakota Growers Pasta Co., Inc.*, No. 13-CV-4229 (D.N.J.) (false advertising).

*Palace v. DaimlerChrysler*, No. 01-CH-13168 (Cir. Ct. Ill.) (defective product).

*Rowe v. UniCare Life & Health Ins. Co.*, No. 09-CV-02286 (N.D. Ill.) (data breach).

*Spillman v. Domino's Pizza*, No. 10-349 (M.D. La.) (robo-call).

*Trammell v. Barbara's Bakery, Inc.*, No. 3:12-CV-02664 (N.D. Cal.) (false advertising).

*United Desert Charities v. Sloan Valve Company*, No. CV12-06878 (C.D. Cal.)(defective product).

*Wolph v. Acer America Corp.*, No. 09-CV-01314 (N.D. Cal.) (false advertising).

### Environmental/Property

*Allen v. Monsanto Co.*, No. 041465 and *Carter v. Monsanto Co.*, No. 00-C-300 (Cir. Ct. W. Va.) (dioxin release).

*Angel v. U.S. Tire Recovery*, No. 06-C-855 (Cir. Ct. W.Va.) (tire fire).

*Cather v. Seneca-Upshur Petroleum Inc.*, No. 1:09-CV-00139 (N.D. W.Va.) (oil & gas rights).

*Ed Broome, Inc. v. XTO Energy, Inc.*, No. 1:09-CV-147 (N.D. W.Va.) (oil & gas rights).

*In re Katrina Canal Breaches Litig.*, No. 05-4182 (E.D. La.) (Hurricanes Katrina and Rita).

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010,* MDL No. 2179 (E.D. La.) (BP oil spill).

*Jones v. Dominion Transmission Inc.*, No. 2.06-CV-00671 (S.D. W.Va.)  (oil & gas rights).

*Thomas v. A. Wilbert & Sons, LLC*, No. 55,127 (18th Jud. Dist. Ct., Iberville Parish) (vinyl chloride



water contamination).

**Government**

*Cobell v. Salazar*, No. 1:96-CV-01285 (D. D.C.), Depts. of Interior and Treasury.

Countrywide Mortgage Settlement, Department of Justice.

Iovate Settlement, Federal Trade Commission.

National Mortgage Settlement, Attorneys General.

Walgreens Settlement, Federal Trade Commission.

**Insurance**

*Beasley v. Hartford Ins. Co. of the Midwest*, No. CV-2005-58-1 (Cir. Ct. Ark.) (homeowners insurance).

*Bond v. Am. Family Ins. Co.*, No. CV-06-01249 (D. Ariz) (property insurance).

*Burgess v. Farmers Ins. Co.*, No. 2001-292 (Dist. Ct. Okla.) (homeowners insurance).

*Cole's Wexford Hotel, Inc. v. UPMC,* No. 2:10-CV-01609 (W.D. Pa.)(health insurance).

*Campbell v. First Am. Title Ins. Co.*, No. 2:08-CV-311-GZS (D. Me.) (title insurance).

*DesPortes v. ERJ Ins. Co.,* No. SU2004-CV-3564 (Ga. Super. Ct.) (credit premium insurance).

*Fogel v. Farmers Grp., Inc.*, No. BC300142 (Super. Ct. Cal.)(management exchange fees).

*Guidry v. Am. Public Life Ins. Co.*, No. 2008-3465 (14th Jud. Dist. Ct.) (cancer insurance).

*Gunderson v. F.A. Richard & Assocs., Inc.*, No. 2004-2417-D. (14th Jud. D. Ct. La.) (PPO).

*Johnson v. Progressive Casualty Ins., Co.*, No. CV-2003-513 (Cir. Ct. Ark.) (automobile insurance).

*McFadden v. Progressive Preferred*, No. 09-CV-002886 (Ct. C.P. Ohio) (UM/UIM).

*Orrill v. Louisiana Citizens Fair Plan*, No. 05-11720 (Civ. Dist. Ct., Orleans Parish) (Hurricane Katrina property insurance).

*Press v. Louisiana Citizens Fair Plan Prop. Ins. Co.*, No. 06-5530 (Civ. Dist. Ct., Orleans Parish) (Hurricane Katrina property insurance).

*Purdy v. MGA Ins. Co.*, No. D412-CV-2012-298 (4th Jud. Ct. N. Mex.) (UM/UIM).

*Shaffer v. Continental Casualty Co.*, No. 06-2235 (C.D. Cal.) (long term care insurance).

*Sherrill v. Progressive Northwestern Ins. Co.*, No. DV-03-220 (18th D. Ct. Mont.) (automotive premiums).



*Soto v. Progressive Mountain Ins. Co.*, No. 2002-CV-47 (Dist. Ct. Mont.) (personal injury insurance).

*Webb v. Liberty Mutual Ins. Co.*, No. CV-2007-418-3 (Cir. Ct. Ark) (bodily injury claims).

### Securities

*In re Municipal Derivatives Antitrust Litig.*, MDL No. 1950 (S.D.N.Y.).

*In re Mutual Funds Inv. Litig.,* MDL No. 1586 (D. Md.) (Allianz Sub-Track).

### Canada

*Bechard v. Province of Ontario*, No. CV-10-417343 (Ont. S.C.J.) (personal injury).

*Clarke v. Province of Ontario*, No. CV-10-411911 (Ont. S.C.J.) (personal injury).

*Dolmage v. Province of Ontario*, No. CV-09-376927CP00 (Ont. S.C.J.) (personal injury).

*Donnelly v. United Technologies Corp.,* No. 06-CV-320045 CP (Ont. S.C.J.) (defective product).

*Hall v. Gillette Canada Co.*, No. 47521CP (Ont. S.C.J.) (false advertising).

*Wener v. United Technologies Corp.*, 2008 QCCS 6605 (Québec) (defective product).

## Articles and Presentations

Shannon Wheatman, Webinar Speaker, *Balancing Due Process and Claims: A Conversation on Strategies to Safeguard Your Settlement*, American Association for Justice (Sept. 2016).

Shannon Wheatman & Alicia Gehring, *Mixed Media: A Smarter Approach To Class Action Notice*, Law360.com (June 11, 2015).

Shannon Wheatman, Speaker, *Balancing Due Process and Claims: A Conversation on Strategies to Safeguard Your Settlement*, Plaintiffs' Forum, Rancho Palos Verdes, CA (Apr. 2015).

Joshua Davis, Shannon Wheatman & Cristen Stephansky, *Writing Better Jury Instructions: Antitrust as an Example*, Paper presented at 15th Annual Loyola Antitrust Colloquium, Chicago, IL (Apr. 2015).

Shannon R. Wheatman, Speaker, *Can Competition Concepts be Made Comprehensible to Juries (and Judges)*, American Antitrust Institute's Business Behavior & Competition Policy in the Courtroom: Current Challenges for Judges, Stanford, CA (Aug. 2014).

Shannon R. Wheatman, Webinar Speaker, *Crafting Class Settlement Notice Programs: Due Process,*



*Reach, Claims Rates, and More*, Strafford Publications (Feb. 2014).

Shannon R. Wheatman, *Cutting Through the Clutter: Eight Tips for Creatively Engaging Class Members and Increasing Response*, CLASS ACTION LITIGATION REPORT, 15 CLASS 88 (Jan. 24, 2014).

Shannon Wheatman & Michelle Ghiselli, *Privacy Policies: How To Communicate Effectively with Consumers*, International Association of Privacy Professionals (2014).

Shannon R. Wheatman, Speaker, *Report on Model Jury Instructions in Civil Antitrust Cases, Presentation*, American Antitrust Institute's 7th Annual Private Antitrust Enforcement Conference, Washington, DC (Dec. 2013).
Shannon R. Wheatman, Speaker, Class Action Notice, Reach & Administration, CLE International's 9th Annual Class Action Conference, Washington, DC (Oct. 2013).

Shannon R. Wheatman, *Ensuring Procedural Fairness Through Effective Notice, in* NATIONAL CONFERENCE ON CLASS ACTIONS: RECENT DEVELOPMENTS IN QUÉBEC, IN CANADA AND IN THE UNITED STATES 83-99 (Yvon Blais ed., 2013).

Shannon R. Wheatman, Speaker, *Class Action Developments and Settlements*, 18th Annual Consumer Financial Services Institute, New York, New York (Apr. 2013).

Shannon R. Wheatman, Speaker, *Recent Trends in Class Actions in the United States*, National Conference on Class Actions: Recent Developments in Québec, in Canada and in the United States, Montreal, Canada (Mar. 2013).

Shannon R. Wheatman, Speaker, *Report on Model Jury Instructions in Civil Antitrust Cases, Presentation*, American Antitrust Institute's 6th Annual Private Antitrust Enforcement Conference, Washington, DC (Dec. 2012).

Shannon R. Wheatman & Katherine M. Kinsella, *International Class Action Notice, in* WORLD CLASS ACTION: A GUIDE TO GROUP AND REPRESENTATIVE ACTIONS AROUND THE GLOBE 673-686 (Paul Karlsgodt ed., 2012).

Katherine Kinsella & Shannon Wheatman, *Class Notice and Claims Administration, in* PRIVATE ENFORCEMENT OF ANTITRUST LAW IN THE UNITED STATES: A HANDBOOK 338–348 (Albert A. Foer & Randy M. Stutz eds., 2012).



Shannon R. Wheatman, Webinar Speaker, *Class Action Notice Requirements:  Challenges for Plaintiffs and Defendants*, Strafford Publications (July 2012).

Shannon R. Wheatman, Webinar Speaker, *How to Craft Plain Language Privacy Notices*, Int'l Assoc. of Privacy Professionals (Oct. 2011).

Shannon R. Wheatman, Speaker, *Improving Take-Up Rates in Class Actions*, The Canadian Institute's 12th Annual National Forum on Class Actions, Ontario, Canada (Sept. 2011).

Shannon R. Wheatman & Terri R. LeClercq, *Majority of Publication Class Action Notices Fail to Satisfy Rule 23 Requirements*, 30 REV. LITIG. 53 (2011).
Shannon R. Wheatman & Terri R. LeClercq, *Majority of Publication Class Action Notices Fail to Satisfy Rule 23 Requirements*, CLASS ACTION LITIGATION REPORT, 12 CLASS 560, (June 24, 2011).

Katherine Kinsella & Shannon Wheatman, *Class Notice and Claims Administration*, *in* THE INTERNATIONAL PRIVATE ENFORCEMENT OF COMPETITION LAW 264–274 (Albert A. Foer & Jonathan W. Cuneo eds., 2010).

Shannon R. Wheatman, Speaker, *Majority of Publication Class Action Notices Fail to Satisfy Plain Language Requirements*, Clarity International Conference, Lisbon, Portugal (Oct. 2010).

Shannon R. Wheatman, Webinar Speaker, *Class Action Notification with Electronic Media: Emerging Legal Issues*, Stratford Publications (Sept. 2010).

Shannon R. Wheatman & Thomas E. Willging, *Does Attorney Choice of Forum in Class Action Litigation Really Make a Difference?* 17 CLASS ACTIONS & DERIVATIVES SUITS 1 (2007).

Todd B. Hilsee, Gina M. Intrepido & Shannon R. Wheatman, *Hurricanes, Mobility and Due Process: The "Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 TULANE LAW REV. 1771 (2006).

Thomas E. Willging & Shannon R. Wheatman, *Attorney Choice of Forum in Class Action Litigation: What Difference Does it Make?* NOTRE DAME L. REV., 81 (2), 101, 161 (2006).

Todd B. Hilsee, Shannon R. Wheatman & Gina M. Intrepido, *Do you really want me to know my rights? The ethics behind due process in class action notice is more than just plain language: A desire to actually inform*. GEO. J. LEGAL ETHICS, 18 (4), 1359-1382 (2005).



Thomas E. Willging & Shannon R. Wheatman, *An Empirical Examination of Attorneys' Choice of Forum in Class Action Litigation*. FEDERAL JUDICIAL CENTER (2005).

Elizabeth C. Wiggins & Shannon R. Wheatman, *So what's a concerned psychologist to do? Translating the research on interrogations, confessions, and entrapment into policy*, in INTERROGATIONS, CONFESSIONS AND ENTRAPMENT 265–280 (G. Daniel Lassiter ed., 2004).

Thomas E. Willging & Shannon R. Wheatman, *Attorneys' Experiences and Perceptions of Class Action Litigation in Federal and State Courts. A Report to the Advisory Committee on Civil Rules Regarding a Case Based Survey*. FEDERAL JUDICIAL CENTER (2003).

Shannon R. Wheatman, *Survey of Bankruptcy Judges on Effectiveness of Case-Weights*. FEDERAL JUDICIAL CENTER (2003).

Elizabeth C. Wiggins & Shannon R. Wheatman, *Judicial Evaluation of Bankruptcy Judges*. FEDERAL JUDICIAL CENTER (2003).

Robert Niemic, Thomas Willging, & Shannon Wheatman, *Effects of Amchem/Ortiz on Filing of Federal Class Actions: Report to the Advisory Committee on Civil Rules*. FEDERAL JUDICIAL CENTER (2002).

Shannon Wheatman, Robert Niemic & Thomas Willging, *Report to the Advisory Committee on Civil Rules: Class Action Notices*. FEDERAL JUDICIAL CENTER (2002).

Elizabeth C. Wiggins & Shannon R. Wheatman, *Implementation of Selected Amendments to Federal Rule of Civil Procedure 26 by United States Bankruptcy Courts*. FEDERAL JUDICIAL CENTER (2001).

Shannon R. Wheatman & David R. Shaffer, *On finding for defendants who plead insanity: The crucial impact of dispositional instructions and opportunity to deliberate*. LAW & HUM. BEH., 25(2), 165, 181 (2001).

Shannon R. Wheatman, *Distance Learning in the Courts*. FEDERAL JUDICIAL CENTER (2000).

David R. Shaffer & Shannon R. Wheatman, *Does personality influence the effectiveness of judicial instructions?* PSYCHOL. PUB. POL'Y & L., 6, 655, 676 (2000).



## Court Testimony

*In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 3:15-md-2672 (N.D. Cal.)

*State v. Farmer Group Inc.*, No. D-1-GV-02-002501(D. Ct. Tex., Travis County).

*Scharfstein v. BP West Coast Products, LLC*, No. 1112-17046 (Cir. Ct. Ore.).

*Spillman v. Domino's Pizza*, No. 10-349 (M.D. La.)

*PRC Holdings LLC v. East Resources, Inc.*, No. 06-C-81 (Cir. Ct. W. Va.).

*Guidry v. Am. Public Life Ins. Co.*, No. 2008-3465 (14th Jud. Dist. Ct., Calcasieu Parish).

*Webb v. Liberty Mutual Ins. Co.*, No. CV-2007-418-3 (Cir. Ct. Ark).

*Beasley v. The Reliable Life Ins. Co.*, No. CV-2005-58-1 (Cir. Ct. Ark).

## Depositions

*Hale v. CNX Gas Co., LLC*, No. 10-CV-59 (W.D. Va.).

*Thomas v. A. Wilbert Sons, LLC*, No. 55,127 (18th Jud. Dist. Ct., Iberville Parish).

## Judicial Comments

*In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 3:15-md-2672 (N.D. Cal.)

The Notice Program included 811,944 mailings, 453,797 emails, 125 newspaper insertions and targeted online advertising. "The Court is satisfied that the extensive Notice Program was reasonably calculated to notify Class Members of the proposed Settlement. The Notice 'apprise[d] interested parties of the pendency of the action and afford them an opportunity to present their objections.' Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Indeed, the Notice Administrator reports the Notice Program reached more than 90% of potential Class Members. (Dkt. No. 1978 ¶ 35.)" – Hon. Charles R. Breyer (2016)

*In re Transpacific Passenger Air Trans. Antitrust Litig.*, MDL No. 1913 (N.D. Cal.)

In overruling an objection that direct notice should have been done, the Court found "[T]he notice program, which the Court already approved, reached 80.3% of the potential class members in the United States an average of 2.6 times and "at least 70%" of members of the Settlement Classes living in Japan. See Mot. for Final Approval at 4; Wheatman Decl. ¶¶ 8, 18. The notice also included paid media in 13 other countries. Id.; ¶ 25. There were 700,961 unique visits to the website, toll-free



numbers in 15 countries received over 2,693 calls, and 1,015 packages were mailed to potential class members. Id. ¶¶ 6, 9, 10. It was therefore adequate." – Hon. Charles R. Breyer (2015)

*In re Target Corp. Customer Data Security Breach Litig.*, MDL No. 14-2522 (D. Minn)
"The parties accomplished notice here through direct notice, paid and earned media, and an informational website… [T]he notice program reached 83% of potential class members. The notice here comports with Rule 23(e)… Class notice reached more than 80 million people, with direct notice sent to 61 million consumers… [The] infinitesimally small amount of opposition weighs in favor of approving the settlement." – Hon. Paul A. Magnuson (2015)

*In re Sony Gaming Networks & Customer Data Security Breach Litig.*, No. 11-MD-2258 (S.D. Cal.)
"The form, content, and method of dissemination of the notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Persons entitled to such notice, and said notice fully satisfied requirements of Rule 23 of the Federal Rules of Civil Procedure and due process."– Hon. Anthony J. Battaglia (2015)

*The Shane Grp., Inc., v. Blue Cross Blue Shield of Michigan*, No. 2:10-CV-14360 (D. Minn.)
"The notice to Settlement Class Members consisted of postcard notices to millions of potential class members, as well as advertisements in newspapers and newspaper supplements, in People magazine, and on the Internet… The Court finds that this notice…was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice; and . . . fully complied with due process principles and Federal Rule of Civil Procedure 23." – Hon. Denise Page Hood (2015)

*Mirakay v. Dakota Growers Pasta Co., Inc.*, No. 13-CV-4229 (D. N.J.)
"Having heard the objections made, the Court is unimpressed with the Objectors argument that there was somehow insufficient notice . . . This notice program has fully informed members of their rights and benefits under the settlement, and all required information has been fully and clearly presented to class members. Accordingly, this widespread and comprehensive campaign provides sufficient notice under the circumstances, satisfying both due process and Rule 23 and the settlement is therefore approved by this Court. " – Hon. Joel A. Pisano (2014)

*In re Dynamic Random Memory Antitrust Litig.*, MDL No. 1486 (N.D. Cal.)
"The Court confirms its prior findings that the Notices given pursuant to the Preliminary Approval Order were the best notice practicable under the circumstances. The Court further confirms its prior findings that said notices provided due, adequate, and sufficient notice of these proceedings and of the matters set forth herein, including the proposed settlements set forth in the Settlement Agreements,



and that said notice fully satisfied the requirements of due process, the Federal Rules of Civil Procedure, and all applicable state laws." – Hon. Phyllis J. Hamilton (2014)

*Trammell v. Barbara's Bakery, Inc.*, No. 12-CV-02664 (N.D. Cal.)
"The Class Notice, the Summary Settlement Notice, the website, the toll-free telephone number, all other notices in the Settlement Agreement, the Declaration of the Notice Administrator, and the notice methodology implemented pursuant to the Settlement Agreement: (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated to apprise Class Members of the pendency of the Action, the terms of the settlement, and their rights under the settlement, including, but not limited to, their right to object to or exclude themselves from the proposed settlement and to appear at the Fairness Hearing; (c) were reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (d) met all applicable requirements of law, including, but not limited to, the Federal Rules of Civil Procedure, 28 U.S.C. §1715, and the Due Process Clause(s) of the United States Constitution, as well as complied with the Federal Judicial Center's illustrative class action notices." – Hon. Charles R. Breyer (2013)

*Spillman v. Dominos Pizza, LLC.*, No. 10-349 (M.D. La.)
"At the fairness hearing notice expert Wheatman gave extensive testimony about the design and drafting of the notice plan and its implementation, the primary goal of which was to satisfy due process under the applicable legal standards…Wheatman, who has extensive experience developing plain-language jury instructions, class action notices and rules of procedure, testified that the notice was composed at a ninth grade reading level because many adults read below a high school level." – Hon. Stephen C. Riedlinger (2013)

*In re Metoprolol Succinate End-Payor Antitrust Litig.*, No. 06-CV-71 (D. Del.)
"In accordance with the Preliminary Approval Order, notice of the proposed Settlement and Plan of Allocation has been provided to the Class in the manner directed by the Court.  See Wheatman Dec. Such notice to members of the Class is hereby determined to be fully in compliance with requirements of Fed. R. Civ. P. 23(e) and due process of law and is found to be the best notice practicable under the circumstances and to constitute due and sufficient notice to all persons and entities entitled thereto." – Hon. Mary Pat Thynge (2013)

*PRC Holdings, LLC v. East Resources, Inc.,* No. 06-CV-81(E) (W.Va. Cir. Ct., Roane County)
"Notice was uniquely effective in this action because East's records of their leases allowed the Claims Administrator to provide individual notice by mail to most Class Members." - Hon. Thomas C. Evans, III (2012)

*Kramer v. B2Mobile, LLC*, No. 10-CV-02722 (N.D. Cal.)



"The Court approved Notice Plan to the Settlement Classes . . . was the best notice practicable under the circumstances, including comprehensive nationwide newspaper and magazine publication, website publication, and extensive online advertising.  The Notice Plan has been successfully implemented and satisfies the requirements of Federal Rule of Civil Procedure 23 and Due Process." - Hon. Claudia A. Wilken (2012)

*Cather v. Seneca-Upshur Petroleum, Inc.,* No. 1:09-CV-00139 (N.D. W. Va.)
"The Court finds that Class Members have been accorded the best notice as is practical under the circumstances, and have had the opportunity to receive and/or access information relating to this Settlement by reading the comprehensive written notice mailed to them . . . or by reading the published Notice in the local newspapers . . . The Court further finds that the Notice provided to the members of the Settlement Class had been effective and has afforded such class members a reasonable opportunity to be heard at the Final Fairness Hearing and to opt-out of the subject settlement should anyone so desire." – Hon. Irene M. Keeley (2012)

*In re Checking Account Overdraft Fee Litig.,* No. 1:09-MD-2036 (S.D. Fla.)  (JP Morgan Settlement)
"The Court finds that the Settlement Class Members were provided with the best practicable notice; the notice was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Shutts,* 472 U.S. at 812 (quoting *Mullane,* 339 U.S. at 314-15).  This Settlement with Chase was widely publicized, and any Settlement Class Member who wished to express comments or objections had ample opportunity and means to do so." - Hon. James Lawrence King (2012)

*In re Netflix Privacy Litig.,* No. 5:11-CV-00379 (N.D. Cal.)
"The Notice Plan and the intent of the forms of Notice to the Settlement Class as set forth in the Settlement Agreement and Exhibits B through E to the Wheatman Declaration are approved pursuant to subsections (c)(2)(B) and (ed) of Federal Rule of Civil Procedure 23." - Hon. Edward J. Davila (2012)

*Purdy v. MGA Ins. Co.,* No. D412-CV-2012-298 (N.M. 4th Jud. Dist. Ct.)
"Notice of the Settlement Class was constitutionally adequate, both in terms of it substance and the manner in which it was disseminated.  The Notice contained the essential elements necessary to satisfy due process . . .  [T]he Notice also contained a clear and concise Claim Form, and a described a clear deadline and procedure for filing of Claims.  Notice was directly mailed to all Class Members whose current whereabouts could be identified by reasonable effort.  Notice reached a large majority of the Class Members.  The Court finds that such notice constitutes the best notice practicable." – Hon. Eugenio Mathis (2012)



*Blessing v. Sirius XM Radio Inc.*, No 09-CV-10035 HB (S.D.N.Y.)
 "The Court finds that the distribution of the Notice and the publication of the Publication Notice . . . constituted the best notice reasonably practicable under the circumstances . . . was reasonably calculated . . . constituted due, adequate, and sufficient notice to all Class members who could be identified with reasonable efforts; and . . . satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, R 23.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, and all other applicable law and rules." - Honorable Harold Baer, Jr. (2011)

*Fogel v. Farmers Grp., Inc.*, No. BC300142 (Super. Ct. Cal.)
"The Court further finds and confirms that the Individual Notice (including the Proof of Claim), the Summary Notice, the reminder postcard, and the notice methodology: (a) constituted the best practicable notice . . . ; (b) constituted noticed that was reasonably calculated under the circumstances to apprise potential Class Members . . .; (c) were reasonable and constituted due, adequate, and sufficient notice to all persons or entities entitled to receive notice, and (d) met all applicable requirements of California law . . . ." - Hon. Laura Evans (2011)

*In re Enfamil LIPIL Mktg. & Sales Practs. Litig.*, No. 11-MD-02222 (S.D. Fla.)
"The Court finds that the Class Notice provided to Class Members, in the form and manner of distribution described above, constitutes the best notice practicable under the circumstances, and fully satisfies the requirements of Federal Rules of Civil Procedure, Rule 23, the requirements of due process, and any other applicable law.  The declarations filed with the Court demonstrate that the Parties have fully complied with the Court's Preliminary Approval Order (as amended by Order dated April 1, 201 1) and that the best notice practicable under the circumstances was in fact given to Class Members." - Hon. James I. Cohn (2011)

*Keilholtz v. Lennox Hearth Prods.*, No. 08-CV-00836 (N.D. Cal.)
"Notice has been provided to the Settlement Class of the pendency of the Actions, the conditional certification of the Settlement Class for purposes of this Settlement, and the preliminary approval of the Settlement Agreement and the Settlement contemplated thereby.  The Court finds that said notice and the related Notice Plan provided for the best notice practicable under the circumstances to all Persons entitled to such notice and fully satisfied the requirements of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure and the requirements of due process." - Hon. Claudia Wilken (2011)

*Rowe v. UniCare Life and Health Ins. Co.*, No. 09-CV-02286 (N.D.Ill.)
"The form, content, and method of dissemination of the notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances.  The



notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Persons entitled such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process." – Hon. William J. Hibbler (2011)

*Thomas v. A. Wilbert & Sons, LLC*, No. 55,127 (La. 18th Jud. Dist. Ct., Iberville Parish)
"[N]otices complied with all requirements of the federal and state constitutions, including the due process clauses, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Thomas Subclass." – Hon. Jerome M. Winsberg (2011)

*In re M3Power Razor System Mktg. & Sales Pract. Litig.*, MDL No. 1704 (D. Mass)
"The form, content, and method of dissemination of the notice given to the Settlement Class was adequate and reasonable, and constituted the best notice practicable under the circumstances.  The notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Amended Settlement Agreement, and these proceedings to all Persons entitled to such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process." - Hon. Douglas P. Woodlock (2011)

*Soto v. Progressive Mountain Ins. Co.*, No. 2002-CV-47 (Dist. Ct. Colo.)
"Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated.  The Notice contained the essential elements necessary to satisfy due process . . .  Finally, the Notice also contained a clear and concise Claim Form, and described a clear deadline and procedure for filing of claims. . . . Notice reached a large majority of the Class Members. The Court finds that such notice constitutes the best notice practicable." - Hon. J. Steven Patrick (2010)

*Press v. Louisiana Citizens Fair Plan Prop. Ins. Co.*, No. 06-5530 (Civ. Dist. Ct., Orleans Parish)
"This notice methodology . . . constitutes reasonable and best practicable notice . . . constitutes due, adequate and sufficient notice to all persons entitled to receive notice; and . . . meets the requirements of the United States Constitution, Louisiana law, the Federal Rules of Civil Procedure and any other applicable rules of the Court . . ." - Hon. Sidney H. Cates, IV (2010)

*In re Katrina Canal Breaches*, No. 05-4182 (E.D. La.)
"The notice here was crafted by Shannon Wheatman, Ph.D., whose affidavit was received as evidence. . . The entire notice was drafted in plain, comprehensible language . . .  The Court finds this notice adequately reached the potential class." - Hon. Stanwood R. DuVal, Jr. (2009)



*Jones v. Dominion Transmission Inc.*, No. 2.06-CV-00671 (S.D. W. Va.)
"The Parties' notice expert Shannon R. Wheatman, Ph.D. . . testified that in this case . . . that the mailed notices reached approximately 95.4 percent of the potential class . . . I HOLD that personal jurisdiction exists over the Class Members because notice was reasonable and afforded the Settlement Class an opportunity to be heard and to opt out." - Hon. Joseph R. Goodwin (2009)

*Guidry v. Am. Public Life Ins. Co.*, No. 2008-3465 (14th Jud. Dist. Ct.)
"The facts show that the notice plan . . . as adequate to design and implementation . . . Dr. Shannon R. Wheatman, a notice expert, also testified at the fairness hearing as to the sufficiency of the notice plan. Dr. Wheatman testified that the notice form, content, and dissemination was adequate and reasonable, and was the best notice practicable." - Hon. G. Michael Canaday (2008)

*Webb v. Liberty Mutual Ins. Co.*, (March 3, 2008) No. CV-2007-418-3 (Cir. Ct. Ark)
"Ms. Wheatman's presentation today was very concise and straight to the point . . . that's the way the notices were . . . So, I appreciate that . . . Having admitted and reviewed the Affidavit of Shannon Wheatman and her testimony concerning the success of the notice campaign, including the fact that written notice reached 92.5% of the potential Class members, the Court finds that it is unnecessary to afford a new opportunity to request exclusion to individual Class members who had an earlier opportunity to request exclusion but failed to do so . . . The Court finds that there was minimal opposition to the settlement. After undertaking an extensive notice campaign to Class members of approximately 10,707 persons, mailed notice reached 92.5% of potential Class members." - Hon. Kirk D. Johnson (2008)

*Sherrill v. Progressive Northwestern Ins. Co.*, No. DV-03-220 (18th D. Ct. Mont.)
"Dr. Wheatman's affidavit was very informative, and very educational, and very complete and thorough about the process that was undertaken here. . .  So I have reviewed all of these documents and the affidavit of Dr. Wheatman and based upon the information that is provided . . . and the significant number of persons who are contacted here, 90 percent, the Court will issue the order." - Hon. Mike Salvagni (2008)

*Shaffer v. Continental Casualty Co.*, No. 06-2235 (C.D. Cal.)
"The Class Notice and the notice methodology implemented pursuant to the Settlement Agreement, as described in part in the Declarations of . . . Shannon Wheatman . . . constituted the best practicable notice. . . was reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and met all applicable requirements of the Federal Rules of Civil Procedure, the Class Action Fairness Act, the United States Constitution (including the Due Process Clauses), the Rules of the Court, and any other applicable law." - Hon. Philip S. Gutierrez (2008)



*Gray's Harbor v. Carrier Corp*., No. 05-05437(W.D. Wash.)

"The Court finds that this notice was the best notice practicable under the circumstances, that it provided due and adequate notice of the proceedings and of the matters set forth therein, and that it fully satisfied all applicable requirements of law and due process." - Hon. Ronald B. Leighton (2008)

*Beringer v. Certegy Check Servs., Inc*., No. 8.07-CV-1434-T-23TGW (M.D. Fla.)

"The proposed form of notice and plan for publishing are reasonable and designed to advise members of the Settlement class of their rights . . . A nationally recognized notice specialist, Hilsoft Notifications, has developed the comprehensive Notice Plan. Here, Notice is reasonably calculated to reach the maximum number of potential Settlement Class Members and, thus, qualifies as the best notice practicable. The Notice Plan here is designed to reach the maximum number of Class Members, and it is Plaintiffs' goal to reach at least 80% of the Class—an extraordinary result in consumer class action litigation." - Hon. Steven D. Merryday (2008)

*Palace v. DaimlerChrysler Corp*., No. 01-CH-13168 (Cir. Ct. Ill.)

"The form, content, and method of dissemination of the notice given to the Illinois class and to the Illinois Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances.  The notice, as given, provided valid, due, and sufficient notice of the proposed Settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings, to all Persons entitled to such notice, and said notice fully satisfied the requirements of due process . . ." –Hon. Mary Anne Mason (2008)

*Johnson v. Progressive Casualty Ins., Co*., No. CV-2003-513 (Cir. Ct. Ark.)

"Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated . . . Notice was direct mailed to all Class members whose current whereabouts could be identified by reasonable effort.  Notice reached a large majority of the Class members. The Court finds that such notice constitutes the best notice practicable . . . The forms of Notice and Notice Plan satisfy all of the requirements of Arkansas law and due process." - Hon. Carol Crafton Anthony (2007)

*Beasley v. The Reliable Life Ins. Co*., No. CV-2005-58-1 (Cir. Ct. Ark)

"[T]he Court has, pursuant to the testimony regarding the notification requirements, that were specified and adopted by this Court, has been satisfied and that they meet the requirements of due process. They are fair, reasonable, and adequate. I think the method of notification certainly meets the requirements of due process . . . So the Court finds that the notification that was used for making the potential class members aware of this litigation and the method of filing their claims, if they chose to do so, all those are clear and concise and meet the plain language requirements and those are completely satisfied as far as this Court is concerned in this matter." - Hon. Joe Griffin (2007)



## Education and Experience

### Education

Ph.D., Social Psychology, 2001; The University of Georgia, Athens, GA
Dissertation Title: *The effects of plain language drafting on layperson's comprehension of class action notices*.

M.S., Social Psychology, 1999; The University of Georgia, Athens, GA
Thesis Title: *Effects of verdict choice, dispositional instructions, opportunity to deliberate, and locus of control on juror decisions in an insanity case*.

M.L.S., Legal Studies, 1996; The University of Nebraska-Lincoln, Lincoln, NE

B.A., Psychology, 1993; Millersville University of Pennsylvania, Millersville, PA
Honor's Thesis Title: *The effects of inadmissible evidence and judicial admonishment in individual versus group decisions in a mock jury simulation*.

### Related Experience

Hilsoft Notifications
Souderton, PA
2004-2009

Dr. Wheatman was the Vice President (2006-2009) and Notice Director (2004-2009) at Hilsoft Notifications, a legal notification firm.

Federal Judicial Center
Washington, DC
2000-2004

Dr. Wheatman was a Research Associate at the Federal Judicial Center. The Federal Judicial Center is the education and research agency for the Federal Courts. The Research Division performs empirical and explanatory research on federal judicial processes and court management. Dr. Wheatman worked with the Civil Rules Advisory Committee on a number of class action studies and with the Bankruptcy Administration Committee on judicial evaluations.



*Supplementary Background*

Dr. Wheatman has a strong statistical background, having completed nine graduate level courses as well as teaching undergraduate statistics at the University of Georgia.



# EXHIBIT 2

**NFL Concussion Settlement Update**

**Register for Monetary Awards, Baseline Medical Exams, and Other Benefits**

*A federal court authorized this Notice.  This is not a solicitation from a lawyer.*

- You are receiving this notice to inform you that the Settlement with the National Football League ("NFL") and NFL Properties LLC (together, "NFL Parties") was approved by the Court, and all appeals have been resolved in favor of the Settlement.  The Settlement is therefore final and effective as of **January 7, 2017,** which is the "Effective Date" of the Settlement.

- The Settlement Class includes all former players who retired before July 7, 2014 from the NFL, the American Football League ("AFL") that merged with the NFL, the World League of American Football, NFL Europe League, and NFL Europa League, as well as immediate family members of retired players and legal representatives of incapacitated, incompetent, or deceased retired players.

- Settlement Class Members have given up the right to sue the NFL Parties for all of the claims that this Settlement resolves and are bound by the Amended Settlement Agreement, available at www.NFLConcussionSettlement.com.

- Settlement Class Members can now register to participate in the Settlement program.  This Notice explains how you do that.

- Those who opted out from the Settlement may still seek to revoke their decision to opt-out, and participate in the Settlement program by sending a revocation request to the Claims Administrator at NFL Concussion Settlement, P.O. Box 25369, Richmond, VA 23260.

| PARTICIPATION IN THE SETTLEMENT PROGRAM | | | |
|---|---|---|---|
| | **SUMMARY** | **DEADLINE** | **MORE INFO** |
| **REGISTER** | To receive any benefits from the Settlement, you need to register at www.NFLConcussionSettlement.com or submit a paper Registration Form to the Claims Administrator. | **August 7, 2017**<br><br>Derivative Claimants must register within 30 days after their Retired NFL Football Player submits a claim for a Monetary Award. | Questions 1 - 3 |
| **PARTICIPATE IN BASELINE ASSESSMENT PROGRAM (IF ELIGIBLE)** | After you register, eligible retired players will be able to participate in the Baseline Assessment Program ("BAP") and receive a baseline assessment examination from qualified and independent medical providers.  (Retired players must have at least one-half of an Eligible Season to participate in the BAP.) | The deadline to participate in the BAP is tied to your age:<br><br>Retired players born on or before January 7, 1974: **June 6, 2019**<br><br>Retired players born after January 7, 1974: **June 7, 2027** or before age 45, whichever comes first. | Questions 5 - 9 |

**QUESTIONS?  CALL 1-855-887-3485 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM**

| PARTICIPATION IN THE SETTLEMENT PROGRAM | | | |
|---|---|---|---|
| | **SUMMARY** | **DEADLINE** | **MORE INFO** |
| **SUBMIT CLAIM FOR MONETARY AWARD OR DERIVATIVE CLAIMANT AWARD (IF ELIGIBLE)** | If the retired player receives a Qualifying Diagnosis, you must submit a Claim Package or Derivative Claim Package to receive a Monetary Award or Derivative Claimant Award. | A Qualifying Diagnosis, other than Death with CTE, may be made at any time until the end of the 65-year term of the Settlement.  However:<br><br>Retired players diagnosed on or before February 6, 2017 must submit a claim by **February 6, 2019**; and<br><br>Retired players diagnosed after February 6, 2017 must submit a claim within two years from the date of diagnosis.<br><br>Derivative Claimants must submit a claim no later than 30 days after their Retired NFL Football Player or his legal representative receives notice of entitlement to a Monetary Award. | Questions 10 - 17 |

### AVAILABLE BENEFITS

- The Settlement provides eligible retired players with:
  - Baseline neuropsychological and neurological exams to determine if retired players are: a) currently suffering from any neurocognitive impairment, including impairment serious enough for compensation; and b) eligible for additional testing and/or treatment; and
  - Monetary Awards for diagnoses of ALS (Lou Gehrig's Disease), Parkinson's Disease, Alzheimer's Disease, early and moderate Dementia, and certain cases of Chronic Traumatic Encephalopathy ("CTE") diagnosed after death.

- Authorized representatives of deceased, legally incapacitated, or incompetent retired players and family members of retired players who meet certain criteria may also file claims for Monetary Awards or Derivative Claimant Awards.

- Proof that injuries were caused by playing NFL football is not required for any of the Settlement benefits.

- This Settlement does not affect a retired player's participation in NFL or NFLPA-related benefits programs.

- The Settlement also provides funding for education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of retired players regarding the NFL's medical and disability programs, and other educational programs and initiatives.

### HOW TO REGISTER FOR BENEFITS

| **1.  How do I register for Settlement benefits?** |
| --- |

Settlement Class Members must register online or by mail by **August 7, 2017**.

To register online, go to the settlement website at www.NFLConcussionSettlement.com, click REGISTER NOW, and follow the instructions provided on the screen.

You can download and print a Registration Form by clicking the Registration Form link on the settlement website.   Also, you can request a paper Registration Form by calling 1-855-887-3485, emailing ClaimsAdministrator@NFLConcussionSettlement.com, or writing to NFL Concussion Settlement, P.O. Box 25369, Richmond, VA 23260.

You must complete your registration on the settlement website or submit your paper Registration Form by emailing it to ClaimsAdministrator@NFLConcussionSettlement.com or mailing it to NFL Concussion Settlement, P.O. Box 25369, Richmond, VA 23260, on or before **August 7, 2017.**

**IF YOU DO NOT REGISTER, YOU WILL <u>NOT</u> BE ABLE TO PARTICIPATE IN THE BAP OR RECEIVE MONETARY AWARDS OR DERIVATIVE CLAIMANT AWARDS FROM THIS SETTLEMENT.**

Derivative Claimants may also register within 30 days after their Retired NFL Football Player submits a claim for a Monetary Award.

Even if you already signed up to receive future information or updates, you must still register.

If you are not sure whether you should register, you may call 1-855-887-3485; write to NFL Concussion Settlement, P.O. Box 25369, Richmond, VA 23260; email ClaimsAdminstrator@NFLConcussionSettlement.com with questions; or visit www.NFLConcussionSettlement.com.

### 2.  Does registering mean I filed a claim?

No.  Registering does not mean that you filed a claim.  Successful registration only means that you are eligible to file a claim and potentially receive Settlement benefits.  You must register to participate in the BAP and/or file a claim for a Monetary Award or Derivative Claimant Award.  If you do not register, you will not be eligible for any of the Settlement benefits.

### 3.  What happens after I register?

The Claims Administrator will review timely registrations and notify you within 45 days if your registration is approved.  If your registration is approved, you will be sent additional information on how to participate in the BAP (for eligible retired players) and submit a claim for a Monetary Award or Derivative Claimant Award.  If your registration is not approved, you will have the opportunity to challenge the determination to the Claims Administrator.  If that challenge is denied, you may appeal that decision to the Court.

### 4.  I originally opted out of the Settlement, can I still participate?

If you are reconsidering your decision to opt out of the Settlement, the time to revoke has passed.  However, you may request that a late revocation be considered by submitting a written request to the Claims Administrator at NFL Concussion Settlement, P.O. Box 25369, Richmond, VA 23260.

You can view a list of persons who opted out of the Settlement by visiting the settlement website at www.NFLConcussionSettlement.com.  Click on the "Documents" link under the Information tab at the top of the homepage and select "Timely Opt Out Requests Containing all Information Required by Section 14.2(a) or Otherwise Approved by the Court."

### THE BASELINE ASSESSMENT PROGRAM

### 5.  What is the Baseline Assessment Program ("BAP")?

The BAP provides baseline neuropsychological and neurological assessment examinations to determine whether retired players are currently suffering from cognitive impairment.

### 6.  Who can participate in the BAP?

All living retired players who have earned at least one-half of an Eligible Season, who did not exclude themselves (opt out) from the Settlement, and who timely register to participate in the Settlement may participate in the BAP.

### QUESTIONS?  CALL 1-855-887-3485 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM

"Eligible Season" is a term used to count the seasons in which a retired player played or practiced in the NFL, AFL, World League of American Football, NFL Europe League, or NFL Europa League.

A retired player earns an Eligible Season for:

- Each season in which he was on an NFL or AFL Member Club's "Active List" for three or more regular or postseason games, or

- Each season in which he was on an Active List for one or more regular or postseason games and then spent at least two regular or postseason games on an injured reserve list or inactive list due to a concussion or head injury.

A retired player also earns one-half of an Eligible Season for:

- Each season in which he was on an NFL or AFL Member Club's practice, developmental or taxi squad for at least eight games, but did not otherwise earn an Eligible Season, or

- Each season in which he was on a World League of American Football, NFL Europe League, or NFL Europa League team's active roster for three or more regular or postseason games, or

- Each season in which he was on a World League of American Football, NFL Europe League, or NFL Europa League team's active roster for one or more regular or postseason games and then spent at least two regular or postseason games on the World League of American Football, NFL Europe League, or NFL Europa League injured reserve list or team inactive list due to a concussion or head injury.

The "Active List" means the list of all players physically present, eligible, and under contract to play for an NFL or AFL Member Club on a particular game day within any applicable roster or squad limits in the applicable NFL or AFL Constitution and Bylaws.

**7.  What is the deadline for a retired player to get a BAP baseline assessment examination?**

The BAP deadline depends on the retired player's age.

- Retired players born **on or before** January 7, 1974, will need to have a baseline assessment examination on or before June 6, 2019 (within two years of the start of the BAP).

- Retired players born **after** January 7, 1974, will need to have a baseline assessment examination on or before June 7, 2027 or before they turn 45, whichever comes first.

**8.  Why should a retired player get a BAP baseline assessment examination?**

Getting a BAP baseline assessment examination will be beneficial.  It will determine whether the retired player has any cognitive impairment.  If he is diagnosed with Level 1 Neurocognitive Impairment (*i.e.*, moderate cognitive impairment), he will be eligible to receive further medical testing and/or treatment for that condition.  If he is diagnosed with Level 1.5 (*i.e.,* early dementia) or Level 2 (*i.e.,* moderate dementia)

Neurocognitive Impairment during the BAP examination, he will have a Qualifying Diagnosis to support a claim for a Monetary Award.

In addition, regardless of any cognitive impairment today, the results of the BAP baseline assessment examination can be used as a comparison to measure any subsequent deterioration of cognitive condition over the course of his life.  Participants also will be examined by at least two experts during the BAP baseline assessment examinations, a neuropsychologist and a neurologist, and the retired player and/or his family members will have the opportunity to ask questions relating to any cognitive impairment during those examinations.

Retired players do not need to participate in the BAP to receive a Monetary Award.  However, any award to a retired player may be reduced by 10% if the retired player does not participate in the BAP, receives a Qualifying Diagnosis on or after **January 7, 2017**, and receives a Qualifying Diagnosis (other than ALS) after his deadline to receive a BAP baseline assessment examination.

## 9.  How does a retired player schedule a BAP baseline assessment examination and where will it be done?

Retired players need to register for Settlement benefits before they can get a BAP baseline assessment examination.

The BAP Administrator will send notice to eligible retired players explaining how to arrange for an initial BAP baseline assessment examination.  The BAP uses a nationwide network of qualified and independent medical providers who will provide both the initial BAP baseline assessment examination as well as any further testing and/or treatment.  The BAP Administrator will attempt to find medical providers that are convenient to each eligible retired player.    A list of the medical providers will be available at www.NFLConcussionSettlement.com or by calling 1-855-887-3485.

### MONETARY AWARDS

## 10.  What diagnoses qualify for Monetary Awards?

Monetary Awards are available for the diagnosis of ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) or Death with CTE (each, a "Qualifying Diagnosis").  A Qualifying Diagnosis may occur at any time on or before January 7, 2082.  However, a Qualifying Diagnosis of Death with CTE can be made only for retired players who died before April 22, 2015.  Representative Claimants for a retired player who died between July 7, 2014 and April 22, 2015 had until 270 days from the retired player's date of death to obtain such a post-mortem diagnosis of CTE.

## 11.  Who is allowed to provide Qualifying Diagnoses?

Only qualified specialists are able to make a Qualifying Diagnosis.  Depending on the date of the diagnosis, a medical provider must meet certain requirements to be considered a qualified specialist.

| Date of Diagnosis | Credentials Required to Make a Qualifying Diagnosis (except for Death with CTE) |
|---|---|
| Before July 7, 2014 | Board-certified neurologist, board-certified neurosurgeon, or board-certified neuro-specialist physician (or otherwise qualified neurologist, neurosurgeon, or neuro-specialist physician). |
| July 7, 2014 through January 7, 2017 | Board-certified neurologist, board-certified neurosurgeon, or board-certified neuro-specialist physician. |
| After January 7, 2017 | Qualified MAF Physicians (or, alternatively, Qualified BAP Providers for diagnosis of Level 1.5 or Level 2 Neurocognitive Impairment). |

In addition, if the retired player died before January 7, 2017, the physician must have provided a Qualifying Diagnosis while the retired player was living, and if the physician does not meet the qualifications described above, the physician must have sufficient qualifications in the field of neurology or neurocognitive disorders.

A Qualifying Diagnosis of Death with CTE for retired players who died before April 22, 2015 must have been made by a board-certified neuropathologist.

## 12.  Who is a Qualified MAF Physician?

A Qualified MAF Physician is a board-certified neurologist, board-certified neurosurgeon, or other board-certified neuro-specialist physician, who is part of the Claims Administrator's approved list of physicians authorized to make a Qualifying Diagnosis.  The list of Qualified MAF Physicians will be available at www.NFLConcussionSettlement.com or by calling 1-855-887-3485.

## 13.   What if the deceased retired player received a Qualifying Diagnosis, but the medical records have been destroyed?

If the medical records showing the Qualifying Diagnosis are unavailable because of an event beyond the Representative Claimant's control (*e.g.*, flood, hurricane, fire), he or she may ask the Claims Administrator to review the claim anyway.  The Representative Claimant will need to show that he or she made a reasonable effort to obtain the medical records from any available source and present a certified death certificate that refers to a Qualifying Diagnosis made while the retired player was alive.

## 14.  How do I file a claim for a Monetary Award?

To receive a Monetary Award, all Settlement Class Members, including Representative and Derivative Claimants, must register by **August 7, 2017**.  Once you are registered, and after the retired player receives a Qualifying Diagnosis, then you may submit a Claim Package or Derivative Claim Package.

The Claim Package must include the Claim Form, a Diagnosing Physician Certification Form, a HIPAA Authorization Form, medical records supporting the Qualifying Diagnosis, and records demonstrating employment and participation in NFL football.

The Derivative Claim Package must include a Derivative Claim Form and records sufficient to verify the person's relationship with the retired player.

QUESTIONS?  CALL 1-855-887-3485 OR VISIT WWW.NFLCONCUSSIONSETTLEMENT.COM

The Claims Administrator can provide all forms necessary to submit a complete Claim Package and/or a Derivative Claim Package.  The forms [are/will be] also available at www.NFLConcussionSettlement.com or by calling 1-855-887-3485.

**15.  Is there a time limit to file claims for Monetary Awards?**

Yes.  While a Qualifying Diagnosis may be made at any time during the 65-year term of the Settlement, the deadline to file a claim is based on the date of diagnosis:

- Retired players who are diagnosed on or before February 6, 2017 must submit claims for Monetary Awards by **February 6, 2019**.

- Retired players who are diagnosed after February 6, 2017 have two years from the date of diagnosis to file claims.  This deadline may be extended up to an additional two years upon a showing of substantial hardship that precluded compliance with the deadline.  The Qualifying Diagnosis itself is not enough to show a substantial hardship.

- Derivative Claimants must submit claims no later than 30 days after their Retired NFL Football Player or a Representative Claimant receives notice of an entitlement to a Monetary Award.

- **All claims must be submitted by January 7, 2082**, the date that the term of the Monetary Award Fund expires.

**16.  Can I re-apply for a Monetary Award if my claim is denied?**

Yes.  A Settlement Class Member who submits a claim for a Monetary Award that is denied can re-apply in the future should the retired player's medical condition change.  The new claim must be timely submitted and satisfy all necessary requirements.

**17.  Can I appeal the determination of my Monetary Award or Derivative Claimant Award?**

Yes.  The Settlement establishes a process for a Settlement Class Member to appeal the denial of a claim for a Monetary Award or a Derivative Claimant Award, and/or the amount of the Monetary Award or Derivative Claimant Award.

Any Settlement Class Member who wants to appeal must pay a $1,000 fee to the Claims Administrator before his or her appeal will be reviewed.  If the appeal is successful, the fee will be refunded.  A Settlement Class Member can request that the $1,000 fee be waived due to hardship, but he or she will need to provide additional financial information upon request.

GETTING MORE INFORMATION

| 18.  How do I get more information? |
|---|

For more information, you may:

- Call **1-855-887-3485** (between 8:00 a.m. and 8:00 p.m. Eastern Time)
- Visit **www.NFLConcussionSettlement.com**
- Email **ClaimsAdministrator@NFLConcussionSettlement.com**
- Write **NFL Concussion Settlement, P.O. Box 25369, Richmond, VA 23260**

More details are in the Amended Settlement Agreement available at www.NFLConcussionSettlement.com.

# EXHIBIT 3

**NFL Concussion Claims Administrator**
**2867 E. Allegheny Avenue**
**Philadelphia, PA 19134**

## NFL Concussion Settlement

**Important Update Inside**

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID

NAME
ADDRESS
CITY STATE ZIP CODE

# NFL Concussion Settlement

## Retired NFL Players and Their Families
## Can Now Register for Money and Benefits