# Exhibit A

**SETTLEMENT TRUST AGREEMENT**

**among**

**NATIONAL FOOTBALL LEAGUE,**

**NFL PROPERTIES LLC,**

**SEEGER WEISS LLP,**

**ANAPOL WEISS,**

**WENDELL PRITCHETT,**

**JO-ANN M. VERRIER**

**and**

**CITICORP TRUST DELAWARE, N.A., as Trustee**

**Dated as of [      ], 2017**

# TABLE OF CONTENTS

**Page**

1.  Beneficiaries ................................................................................................ 2
2.  Deposit of Initial Trust Deposits ................................................................ 2
3.  Organization ................................................................................................ 4
4.  Release from Trust Funds ........................................................................... 5
5.  Additional Funding of the Trust ................................................................. 7
6.  Investment of Funds .................................................................................... 8
7.  Final Distribution of the Trust Funds ........................................................ 8
8.  Accounting ................................................................................................... 9
9.  Tax Matters ................................................................................................ 10
10. Concerning the Trustee ............................................................................. 11
11. Compensation, Expense Reimbursement and Indemnification ............... 13
12. Dispute Resolution .................................................................................... 14
13. Exclusive Benefit ...................................................................................... 14
14. Resignation and Removal .......................................................................... 15
15. Governing Law; Jurisdiction; Waivers ..................................................... 16
16. Representations and Warranties ................................................................ 16
17. Notices; Instructions ................................................................................. 16
18. Amendment; Waiver .................................................................................. 19
19. Severability ................................................................................................ 19
20. Mergers and Conversions .......................................................................... 20
21. Termination ................................................................................................ 20
22. Counterparts ............................................................................................... 20
23. Defined Terms ........................................................................................... 20

**SETTLEMENT TRUST AGREEMENT** (this "Agreement"), dated as of [     ], 2017, by and among the National Football League ("NFL"), NFL Properties LLC, a Delaware limited liability company ("NFL Properties" and together with NFL, the "NFL Parties"), Seeger Weiss LLP and Anapol Weiss (together (or any successors thereto appointed by the Court), "Co-Lead Class Counsel"), Special Master (as defined below), and Citicorp Trust Delaware, N.A., a national banking association organized and existing under the laws of the United States of America ("Citibank") and acting through its Agency and Trust Division and solely in its capacity as trustee under this Agreement, and any successors appointed pursuant to the terms hereof (Citibank in such capacity, the "Trustee") is entered into to establish the Settlement Trust (the "Trust") to hold, administer and distribute certain assets, as set forth below.  The NFL Parties, Co-Lead Class Counsel and the Special Master are sometimes collectively referred to herein as the "Parties"; provided that such the term "Parties" shall not include the Special Master after the expiration of the term of the Special Master and any extensions thereof in accordance with the Settlement Agreement (as defined below).

**WHEREAS**, the NFL Parties have executed and delivered a certain Class Action Settlement Agreement, dated June 25, 2014 and amended February 13, 2015 (as amended, supplemented or otherwise modified from time to time, the "Settlement Agreement"), whereby the NFL Parties have agreed to provide for certain payments to be made to a "Settlement Trust" in consideration of, among other things, the compromise, settlement, and release of claims of the settlement class members in that certain class action litigation in the United States District Court for the Eastern District of Pennsylvania (the "Court")  captioned *In re: National Football League Players' Concussion Injury Litigation* (MDL No. 2323) (the "Class Action Litigation"); and

**WHEREAS**, the Settlement Agreement has been approved by the Court by Order dated April 22, 2015, as amended May 8, 2015 (the "Final Approval Order"), affirmed by the United States Court of Appeals for the Third Circuit on April 18, 2016 (with petitions for rehearing *en banc* denied on June 1, 2016), and rendered effective on [_____], 2017, and the NFL Parties desire to establish the Trust as the "Settlement Trust" as envisioned by the Settlement Agreement and the Trustee is willing to serve as trustee of the Trust under the terms hereinafter set forth; and

**WHEREAS**, Wendell Pritchett and Jo-Ann M. Verrier (Wendell Pritchett and Jo-Ann M. Verrier or any person(s) replacing Wendell Pritchett and/or Jo-Ann M. Verrier as Special Master in accordance with the Settlement Agreement, the "Special Master"), The Garretson Resolution Group, Inc. (The Garretson Resolution Group, Inc. or any person replacing The Garretson Resolution Group, Inc. in its capacity as the BAP Administrator in accordance with the Settlement Agreement, the "BAP Administrator"), BrownGreer PLC (BrownGreer PLC or any person replacing BrownGreer PLC as the Claims Administrator in accordance with the Settlement Agreement, the "Claims Administrator") and The Garretson Resolution Group, Inc. (The Garretson Resolution Group, Inc. or any person replacing The Garretson Resolution Group, Inc. in its capacity as the Lien Resolution Administrator in accordance with the Settlement Agreement, the "Lien Resolution Administrator") have each been appointed for the purpose of administering the settlement program in accordance with the Settlement Agreement. For purposes of this Agreement, "person" means any natural person,

business, corporation, company, partnership, association, limited liability company, limited partnership, limited liability partnership, joint venture, business enterprise, trust or other legal entity; and

**WHEREAS**, the parties hereto intend that the Trust will qualify as a "qualified settlement fund" (a "QSF") within the meaning of Section 1.468B-1 *et seq.* of the Treasury Regulations (the "Regulations") promulgated under Section 468B of the Internal Revenue Code of 1986, as amended from time to time (the "Code").

**NOW, THEREFORE,** for good and valuable consideration, the receipt and adequacy of which is hereby irrevocably acknowledged, the parties hereto agree as follows:

1.     **Beneficiaries.**

(a)     The beneficiaries ("Beneficiaries") of the Trust are all settlement class members in the Class Action Litigation (the "Class Members") entitled to receive benefits under the Settlement Agreement pursuant to the granting, by the Final Approval Order, of the approval of the Settlement Agreement by the Court.  Except as otherwise determined by the Court or as expressly set forth herein, no other person shall be deemed a beneficiary of the Trust.

(b)     Nothing in this Agreement is intended to confer any rights or benefits on any individual Class Member other than as specifically set forth herein.  Neither the NFL Parties nor the Trustee shall have any obligation or duty hereunder to any individual Class Member, and no individual Class Member shall have the direct right to exercise rights, claims or remedies against the parties hereto except as otherwise set forth under this Agreement or the Settlement Agreement.

(c)     The Trust Funds (as defined below), if any, to which a Class Member is entitled shall be determined only in accordance with the Settlement Agreement and the Final Approval Order, the terms of each of the foregoing documents are hereby incorporated by reference.  The Trustee shall have no authority under this Agreement or otherwise to make, alter or otherwise influence benefit determinations with respect to, or distribute or to withhold the distribution of, Trust Funds  to, Class Members except as specifically set forth herein.

2.     **Deposit of Initial Trust Deposits.**

(a)     In accordance with Section 23.3(a) of the Settlement Agreement, no later than the date that is thirty (30) days following the Effective Date (as defined in the Settlement Agreement), the NFL Parties shall deposit, or cause to be deposited into the Trust, in immediately available funds, which funds are to be held in trust hereunder, the amount of Ten Million Dollars ($10,000,000) (the "Education Trust Deposit", and together with any investment income or proceeds received from the investment thereof from time to time pursuant to Section 6 below, collectively, the "Education Trust Funds") into an account of the Trust for which the Trustee or the Paying Agent (as defined below) serves as custodian (the "Settlement Trust Account"), and the Trustee shall transfer the Education Trust Funds to, and hold the Education Trust Funds in, a separate account of the Trust established by the Trustee

for which the Trustee or the Paying Agent serves as custodian (the "Education Trust Account").

(b)     In accordance with Section 23.3(b) of the Settlement Agreement, beginning no later than the date that is thirty (30) days following the Effective Date, the NFL Parties shall deposit, or cause to be deposited into the Trust, in immediately available funds, which funds are to be held in trust hereunder, six (6) monthly installments, each in the amount of Twenty Million Dollars ($20,000,000) (together with any additional amounts deposited into the Monetary Award Trust Account (as defined below) from time to time pursuant to Section 5 or Section 7 below, the "Monetary Award Trust Deposits", and together with any investment income or proceeds received from the investment thereof from time to time in accordance with Section 6 below, collectively, the "Monetary Award Trust Funds") into the Settlement Trust Account, and the Trustee shall transfer the Monetary Award Trust Funds to, and hold the Monetary Award Trust Funds in, a separate account of the Trust established by the Trustee for which the Trustee or the Paying Agent serves as custodian (the "Monetary Award Trust Account").

(c)     In accordance with Section 23.3(d) of the Settlement Agreement, no later than the date that is thirty (30) days following the Effective Date, the NFL Parties shall deposit, or cause to be deposited into the Trust, in immediately available funds, which funds are to be held in trust hereunder, the amount of Thirty-Five Million Dollars ($35,000,000) (together with any additional amounts deposited into the BAP Trust Account (as defined below) from time to time pursuant to Section 5 below, the "BAP Trust Deposit", and together with any investment income or proceeds received from the investment thereof from time to time pursuant to Section 6 below, collectively, the "BAP Trust Funds" and together with the Education Trust Funds and the Monetary Award Trust Funds, the "Trust Funds") into the Settlement Trust Account, and the Trustee shall transfer the BAP Trust Funds to, and hold the BAP Trust Funds in, a separate account of the Trust established by the Trustee for which the Trustee or the Paying Agent serves as custodian (the "BAP Trust Account" and together with the Education Trust Account and the Monetary Award Trust Account, the "Trust Accounts"). The BAP Trust Deposit, the Education Trust Deposit and the Monetary Award Trust Deposits shall be collectively referred to as the "Trust Deposits."

(d)     The Trustee shall accept the assets and receive, hold, invest, manage, and distribute (or cause the Paying Agent to distribute) the Trust Funds in accordance with this Agreement. The Trustee shall also receive, hold, administer and distribute (or cause the Paying Agent to distribute) hereunder, as part of the Trust Funds: (i) the additional cash assets delivered to it from time to time by, or at the direction of, the NFL Parties; (ii) any recoveries with respect to amounts previously expensed by the Trust (such as, without limitation, refunds of taxes or administrative expenses previously paid by the Trust); and (iii) any interest or other earnings on any of the foregoing.

(e)     Any and all Trust Funds in the Trust Accounts shall be held by the Trustee, whether through the Paying Agent or otherwise, in a fiduciary capacity (as defined in 12 CFR 9.2(e)).

(f)     All Trust Funds held in each Trust Account shall be segregated from all other cash and property held by the Trustee or the Paying Agent and shall be identified as

being held in a fiduciary account (as defined in 12 CFR 9.2(d)) pursuant to this Agreement. Segregation will be accomplished by appropriate identification of the Trust Funds held in each Trust Account on the books and records of the Trust.

3.    **Organization.**

(a)    <u>Name</u>.  The Trust is hereby created on the terms and conditions set forth herein. The Trust created hereby will be known as NFL Players' Concussion Injury Litigation Settlement Trust, in which name the Trustee may conduct the business of the Trust, make and execute contracts and other instruments on behalf of the Trust and be sued on behalf of the Trust.

(b)    <u>Situs; Office</u>.  The situs of the Trust created hereunder shall be Delaware. The office of the Trust will be in care of the Trustee at 20 Montchanin Road, Suite 180, Greenville, Delaware 19807, or at such other address as the Trustee may designate from time to time by written notice to the Parties.

(c)    <u>Purposes and Powers</u>.  The purpose of the Trust created hereby is, and the Trustee shall have the power and authority and is hereby authorized, to hold, protect and preserve the Trust Funds in accordance with, and subject to, the provisions of this Agreement, to qualify at all times as a QSF, and to make payments and disburse funds upon the written instructions of the Claims Administrator, the BAP Administrator, the Lien Resolution Administrator or the Special Master, as applicable, and to take all such other actions as contemplated by the Settlement Agreement and the Final Approval Order and to undertake the duties and obligations expressly set forth herein. In the event of any inconsistency between this Agreement and the Settlement Agreement, the Settlement Agreement shall control. The Trustee hereby consents to the jurisdiction of the Court for all purposes related to the performance under or interpretation of this Agreement.  The Trustee shall have no authority or duty to exercise discretion with respect to the performance of obligations under, or the interpretation of, the Settlement Agreement, other than in connection with the exercise of its own duties to the extent provided therein.  Any questions of performance or interpretation under the Settlement Agreement shall be determined by the written agreement of the NFL Parties and Co-Lead Class Counsel or as otherwise determined by the Court, and in each case, the Trustee shall be entitled to conclusively rely on such determination without independent inquiry or verification and without incurring liability therefor to the extent the Trustee acts in accordance with such determination.  Except as expressly set forth herein, no creditor of the NFL Parties shall have any right, lien, claim or other interest in the Trust or the assets that comprise the corpus (whether classified as principal or income) of the Trust.

(d)    <u>Appointment of Trustee</u>.  The Trustee is hereby appointed as trustee of the Trust, effective as of the date hereof, to have all the rights, powers and duties set forth herein.

(e)    <u>Declaration of Trust</u>.  The Trustee hereby declares that it will hold the Trust Funds in the Trust, subject to the obligations of the Trust under this Agreement.  The parties hereto intend that the Trust constitute a trust under the laws of the State of Delaware and that this Agreement constitutes the governing instrument of such. The Trust shall not be a grantor trust. The Trust is hereby established as the Settlement Trust (as defined in the

Settlement Agreement) in accordance with the terms and conditions of the Settlement Agreement and the Final Approval Order. Subject to Section 18, the Trust shall be irrevocable and upon the termination of the Trust, the Trust Funds shall be distributed in accordance with Section 7.

(f)     Title to Trust Funds.  Legal title to the Trust Funds will be vested at all times in the Trust except where applicable law in any jurisdiction requires title to any part of the Trust Funds to be vested in a trustee or trustees, in which case title will be deemed to be vested in the Trustee, a co-trustee or a separate trustee, as the case may be.

(g)     The Trustee, on behalf of the Trust, may appoint any depository institution that, alone or with its affiliated depository institutions, has total capital and surplus of at least $300 million or that, alone or with its affiliated institutions, has assets under management of at least $2 billion to serve as the paying agent of the Trust (the "Paying Agent").  The initial Paying Agent shall be Citibank, N.A.  The Paying Agent shall have the revocable power to withdraw funds from each Trust Account solely as instructed to the extent such instruction is in accordance with the terms of this Agreement.  The Trustee may revoke such power and remove the Paying Agent at any time.  In the event that a Paying Agent shall cease to act as such, the Trustee may appoint a successor Paying Agent provided that it meets the qualifications set forth above in the first sentence.  The Trustee shall cause such successor Paying Agent appointed hereunder to execute and deliver to the Trustee a joinder to this Agreement in which such successor Paying Agent shall agree with the Trustee that, as Paying Agent, such successor Paying Agent shall hold all sums, if any, held by it for payment to the Beneficiaries in trust for the benefit of the Beneficiaries entitled thereto until such sums shall be paid to such Beneficiaries.   The Paying Agent shall return all unclaimed funds to the Trustee upon the expiration of the applicable claims period. Upon removal of a Paying Agent, such Paying Agent shall also return all funds in its possession to the Trustee or, at the direction of the Trustee, to the successor Paying Agent appointed hereunder.

4.     **Release from Trust Funds.**

(a)     During the term of the Trust, the Trustee shall, or shall cause the Paying Agent to, make payments from time to time as follows:

(i)     *Education Trust Funds*. The Special Master (or, after the expiration of the term of the Special Master and any extensions thereof in accordance with the Settlement Agreement, the Claims Administrator), where authorized by the Settlement Agreement as certified in the Notice for Withdrawal Form (as such term is defined below), may direct the Trustee to disburse, or cause to be disbursed, funds from the Education Trust Account, by submitting a notice in the form attached hereto as Exhibit A (a "Notice for Withdrawal Form") to the Trustee;

(ii)     *Monetary Award Trust Funds*. The Special Master, the Claims Administrator, or the Lien Resolution Administrator, where authorized by the Settlement Agreement as certified in the Notice for Withdrawal Form, may direct the Trustee to disburse, or cause to be disbursed, funds from the Monetary Award Trust Account, by submitting a Notice for Withdrawal Form to the Trustee.  The Trustee may disburse funds, or may cause the Paying Agent to disburse funds, from the

-5-

Monetary Award Trust Account, upon notice to (but without any need for consent from) the Special Master, the Claims Administrator and the Lien Resolution Administrator to the extent required for the purpose of reimbursing the Trustee, the Paying Agent or the Trust Accountant with respect to any fees, expenses or indemnities of the Trustee, the Paying Agent or the Trust Accountant, in each case, to the extent incurred in accordance with the terms hereof; and

        (iii)    *BAP Trust Funds*. The Special Master (or, after the expiration of the term of the Special Master and any extensions thereof in accordance with the Settlement Agreement, the Claims Administrator) or the BAP Administrator, where authorized by the Settlement Agreement as certified in the Notice for Withdrawal Form, may direct the Trustee to distribute, or cause to be distributed, funds from the BAP Trust Account, by submitting a Notice for Withdrawal Form to the Trustee. Such Notice for Withdrawal Form may specify that such funds be distributed to the BAP Payment Account (as defined below). The Trustee shall, or shall cause the Paying Agent to, establish a separate account of the Trust for which the Trustee or the Paying Agent serves as custodian (the "BAP Payment Account") and provide the BAP Administrator with the ability to draw checks or funds on the BAP Payment Account as directed by an Authorized Person of the BAP Administrator to directly effect distributions to Beneficiaries in accordance with the Settlement Agreement.

The Trustee shall not comply with requests for disbursement of funds submitted from any person or source other than the Special Master, the BAP Administrator, the Claims Administrator or the Lien Resolution Administrator, as applicable. In the event that a Notice for Withdrawal Form is delivered by any such Person, the Trustee, the Paying Agent or their respective agents, are each authorized to seek confirmation of such instructions by telephone call-back to the Authorized Persons (as defined below) of such Person in accordance with this Agreement, and the Trustee, the Paying Agent, as well as their respective agents, may rely (assuming compliance by them with this Agreement) upon the confirmation of anyone purporting to be such Authorized Person or Authorized Persons. The Trustee shall not comply with requests submitted in a manner other than pursuant to the Notice for Withdrawal Form.

        (b)    Upon the receipt of a Notice for Withdrawal Form from the Special Master, the BAP Administrator, the Claims Administrator or the Lien Resolution Administrator, as applicable, the Trustee shall confirm that (1) the Notice for Withdrawal Form has been properly completed with all required information; and (2) the Notice for Withdrawal Form has been executed by an Authorized Person (as defined in Section 17) of the Special Master, the BAP Administrator, the Claims Administrator or the Lien Resolution Administrator, as applicable. If the Notice for Withdrawal Form fails to contain the necessary items (1) and (2), the Trustee shall return the Notice for Withdrawal Form to the Special Master, the BAP Administrator, the Claims Administrator or the Lien Resolution Administrator, as applicable, and shall be under no further obligation to act until a completed, properly authorized and executed Notice for Withdrawal Form is resubmitted by the Special Master, the BAP Administrator, the Claims Administrator or the Lien Resolution Administrator, as applicable.

        (c)    Within five (5) Business Days following the date of receipt of a properly completed, authorized and executed Notice for Withdrawal Form from the Special Master, the

BAP Administrator, the Claims Administrator or the Lien Resolution Administrator, as applicable, the Trustee shall initiate or cause the Paying Agent to initiate a wire transfer of immediately available funds or issue a trust account check, as specified in the Notice for Withdrawal Form, to the payees listed in the Notice for Withdrawal Form and in the amounts set forth on the Notice for Withdrawal Form, and, if applicable, mail (or cause the mailing of) the checks to the Special Master, the BAP Administrator, the Claims Administrator, the Lien Resolution Administrator or the applicable payee, as applicable, at the address set forth on the Notice for Withdrawal Form.  The Trustee shall have no discretion to refuse to pay (or cause the payment of) the designated payees upon the submission of a duly-completed and executed Notice for Withdrawal Form, except to the extent that a disagreement arises to be resolved in accordance with Section 12.  Each payment made pursuant to a Notice for Withdrawal Form shall be debited against the current balance in the applicable Trust Account.  Notwithstanding anything contained herein to the contrary, the Trustee, whether acting directly or through the Paying Agent, shall only be required to make distributions pursuant to a properly completed, authorized and executed Notice for Withdrawal Form solely to the extent that funds are available therefor in the applicable Trust Account(s).

(d)     Each of the Special Master, the BAP Administrator, the Claims Administrator and the Lien Resolution Administrator (collectively, the "Distribution Advisers") shall be an "adviser" of the Trust within the meaning of 12 Del. C. § 3313(a).  As provided in 12 Del. C. § 3313(b), absent wilful misconduct on the part of the Trustee or any of its affiliates proven by clear and convincing evidence in any Chosen Court, the Trustee shall incur no liability for any act or failure to act by a Distribution Adviser, or for acting on a direction of any of the Distribution Advisers, and the Trustee shall not be liable for any loss to the Trust or any claim of inequality, partiality or unreasonableness resulting from any action taken in accordance with the direction of a Distribution Adviser.  As provided in 12 Del. C. § 3313(e), the Trustee shall have no duty to monitor the conduct of any of the Distribution Advisers, provide advice to any of the Distribution Advisers or consult with any of the Distribution Advisers or communicate with or warn or apprise any beneficiary or third party concerning instances in which the Trustee would or might have exercised the Trustee's own discretion in a manner different from the manner directed by a Distribution Adviser.  The Trustee and the Distribution Advisers shall not be liable for the acts or defaults of the other.  Furthermore, in accordance with 12 Del. C. § 3302(e) and § 3586, the Trustee shall have no liability under this Trust to any Trust beneficiary or any other person whose interest arises under this Trust for the Trustee's good faith reliance on the provisions of this Section or any other provision of this Trust Agreement concerning distribution decisions (unless the Trustee has acted with wilful misconduct proven by clear and convincing evidence in any Chosen Court). As used in this Trust Agreement, the term "wilful misconduct" shall have the same meaning given to such term in 12 Del. C. § 3301(g).

(e)     The Paying Agent has established and will maintain a website (the "Claims Website") into which it will accept delivery of payment files substantially in the form attached hereto as Exhibit C (or other electronic means to facilitate ACH payments) and submitted pursuant to a properly authorized and executed Notice for Withdrawal Form being tendered by the applicable Distribution Advisers, as may be necessary from time to time.  The

Parties hereby authorize the Trustee to grant view-only (or appropriate level) access of the Claims Website to the Authorized Persons of such Distribution Advisers.

      **5.**    **Additional Funding of the Trust**.  In accordance with Section 23.3(b) and Section 23.3(d) of the Settlement Agreement, the NFL Parties are obligated under certain circumstances to contribute, or cause to be contributed, additional amounts from time to time to the Settlement Trust Account.  At the written direction of the Special Master (or, after the expiration of the term of the Special Master and any extensions thereof in accordance with the Settlement Agreement, the Claims Administrator), any such additionally funded amounts shall be accepted by the Trustee, and the Trustee shall cause such funds to be deposited in the Monetary Award Trust Account or BAP Trust Account, as applicable, and shall constitute Monetary Award Trust Deposits or BAP Trust Deposits, as applicable. To the extent there are any other funds deposited into the Settlement Trust Account, the Trustee shall accept such funds and shall cause such funds to be transferred from the Settlement Trust Account into one or more of the Trust Accounts at the written direction of the Special Master (or, after the expiration of the term of the Special Master and any extensions thereof in accordance with the Settlement Agreement, the Claims Administrator).

      **6.**    **Investment of Funds.**

      (a)    The Trustee shall invest (or cause the investment of) the Trust Deposits in accordance with Exhibit B (the "Investment Policy").  Initially, the Trust Deposits shall be invested in JPMorgan 100% U.S. Treasury Securities Money Market Fund (3163) Capital Share Class, CUSIP: 4812A0375 (the "Initial Investment"), which investment is in accordance with the Investment Policy, unless and until the Trustee receives written direction from the Special Master or the Court to invest in a different investment that is in accordance with the Investment Policy.  The Trustee, with the approval of the Court for good cause shown, may amend the Investment Policy at any time and from time to time; provided however that the Trustee may not amend the Investment Policy in a manner which causes its terms to be inconsistent with (i) the requirements of this Agreement or (ii) the requirement that the Trust Deposits be administered in the manner in which individuals of ordinary prudence, discretion, and judgment would act in the management of their own affairs. The Trustee shall invest (or cause the investment of) the Trust Funds on the date of deposit provided that the Trust Funds are received on or before 11:00 a.m. Eastern Standard Time/Eastern Daylight Time.  Any Trust Deposit received by the Trustee after 11:00 a.m. Eastern Standard Time/Eastern Daylight Time shall be treated as if received on the following Business Day, shall be deposited in a non-interest bearing account with the Paying Agent and shall not be invested by the Trustee until the next Business Day.  For purposes of this Agreement, "Business Day" shall mean any day that the Trustee and the Paying Agent are open for business.  The Trustee shall have no liability for any loss as a result of the selection of any investment made in good faith and in accordance with the terms of this Agreement, including any required approval of the Special Master or the Court.

      (b)    The Trustee is hereby authorized and directed to sell or redeem (or cause the sale or redemption of) any such investments as it deems necessary to make any payments or distributions required under this Agreement. The Trustee shall have no responsibility or liability for any loss in the value of any investment made in accordance with the terms of this Agreement, or for any loss, cost or penalty resulting from any sale or

liquidation of the Trust Funds made in accordance with the terms of this Agreement, except to the extent of its or any of its affiliates' willful misconduct or negligence as determined by a court of competent jurisdiction through a final non-appealable order.  The Trustee is hereby authorized to execute (or cause the execution of) purchases and sales of investments through the facilities of its own trading or capital markets operations or those of any affiliated entity.

7.     **Final Distribution of the Trust Funds.**

(a)     Upon written notification from the BAP Administrator at the end of the term of the BAP Trust Funds (which shall in no event be longer than fifteen (15) years) (the date on which the Trustee receives such notice from the BAP Administrator, the "BAP Termination Date"), the BAP Trust Account shall be closed and the Trustee, through the Paying Agent, shall transfer any remaining BAP Trust Funds from the BAP Trust Account to the Monetary Award Trust Account and such remaining BAP Trust Funds shall thereupon constitute Monetary Award Trust Deposits and Monetary Award Trust Funds. Following the BAP Termination Date, the Trust and the Trust Funds shall consist of only the Education Trust Funds (if any) and the Monetary Award Trust Funds. Upon exhaustion of the Education Trust Funds, the Education Trust Account shall be closed.

(b)     The term of the Trust shall expire upon the sixty-fifth (65th) anniversary of the Effective Date (the "Termination Date").  The Trustee shall, prior to the Termination Date, make arrangements for the payment of final expenses of the Trust out of the Trust Funds, including the payment of outstanding invoices from the Claims Administrator, the Lien Resolution Administrator, any Special Master, and all remaining amounts in the Trust Funds that are not used to satisfy the obligations of the Trust, including the compensation and expenses of the Trustee, the Paying Agent and the Trust Accountant, shall be distributed as directed by the Court upon petition by Co-Lead Class Counsel and the NFL Parties.

8.     **Accounting.**

(a)     The Trustee will send account statements to the Parties on a monthly basis reflecting activity with respect to each Trust Fund for the preceding month within fifteen (15) days following the end of the month, including a list of all investments and setting forth the initial principal of each Trust Fund, all additions to the principal of such Trust Fund, any earnings of such Trust Fund, disbursements to Beneficiaries and other persons and all expenses incurred by the Trustee in connection with the management and administration of the Trust Funds.  In the event that the Trustee grants the Parties online read-only access to the Trust Accounts, such grant shall fulfill any requirement on the part of the Trustee to distribute monthly account statements to the Parties.

(b)     The Trustee will send account statements to the Claims Administrator, BAP Administrator and the Lien Resolution Administrator on a monthly basis reflecting activity with respect to the BAP Trust Account or the Monetary Award Account, as appropriate, for the preceding month within fifteen (15) days following the end of the month, including a list of all investments and setting forth the initial principal of such Trust Fund, all additions to the principal of such Trust Fund, any earnings of the BAP Trust Account or the Monetary Award Account, as appropriate, disbursements to Beneficiaries and other persons and all expenses incurred by the Trustee in connection with the management and

administration of the BAP Trust Account or the Monetary Award Account, as appropriate.  In the event that the Trustee grants the Claims Administrator, BAP Administrator or the Lien Resolution Administrator online access to the BAP Trust Account or the Monetary Award Account, such grant shall fulfill any requirement on the part of the Trustee to distribute monthly account statements to the Claims Administrator, BAP Administrator or the Lien Resolution Administrator, as applicable.  From time to time, upon written request of the Special Master, the Claims Administrator, the BAP Administrator or the Lien Resolution Administrator, the Trustee shall provide such information in the possession of the Trustee or the Paying Agent (solely to the extent the Paying Agent is an affiliate of the Trustee) and shall use commercially reasonable efforts to cause to be provided such additional information in the possession of any other Person to whom the Trustee has delegated obligations under this Agreement, in each case, as the Special Master, the Claims Administrator, the BAP Administrator or the Lien Resolution Administrator, as applicable, reasonably requests in order to satisfy its obligations under the Settlement Agreement.

(c)     Upon the expiration of the Trust, the Trustee shall undertake a final accounting (the "Final Accounting") and furnish a final report to the NFL Parties, Co-Lead Class Counsel and the Court within forty-five (45) days following the Termination Date setting forth the initial principal of each Trust Fund, all additions to the principal of such Trust Fund, any earnings of such Trust Fund, disbursements to Beneficiaries and other persons and all expenses incurred by the Trustee in connection with the management and administration of the Trust Funds, and the final distributions from the Trust.

9.     **Tax Matters.**

(a)     The Trust is intended to qualify as a QSF within the meaning of Section 1.468B-1 *et seq.* of the Regulations promulgated under Section 468B of the Code; and the provisions of this Agreement shall at all times be construed and administered in such manner to be consistent with these intentions and in accordance with the provisions of the Regulations and the Code.  No provision of this Agreement shall be of any force or effect if such provision would result in the disqualification of the Trust as a QSF; and all provisions of the Regulations and the Code required for qualification of the Trust as a QSF are hereby incorporated by reference.  In furtherance of the foregoing, the Trustee, with the written consent of the Special Master (or, after the expiration of the term of the Special Master and any extensions thereof, the Claims Administrator), which consent shall be based upon an opinion of counsel (which opinion of counsel shall be addressed to the Trustee and the Special Master (or, after the expiration of the term of the Special Master and any extensions thereof, the Claims Administrator)), are authorized to amend this Agreement at any time and from time to time by written instrument, but only for the purpose of complying with all of the requirements of the Regulations and the Code with respect to QSFs.

(b)     The Trustee shall (i) file or cause to be filed an application with the United States Internal Revenue Service (the "IRS") for a taxpayer identification number with respect to the Trust created hereby, (ii) subject to Section 9(c) below, timely file or cause to be filed such income tax and other returns and statements, shall timely pay all taxes required to be paid and comply with all withholding obligations, as required under the applicable provisions of the Code, the Regulations and any applicable state law or the regulations promulgated thereunder; (iii) be empowered and authorized to take all such actions as may be

necessary to ensure that the Trust is treated as a Qualified Settlement Fund under Section 468B of the Code, and the Regulations promulgated pursuant thereto; and (iv) not fail to take any action directed in writing by the Court, the Special Master or any NFL Party to the extent necessary to ensure that the Trust is treated as a Qualified Settlement Fund under Section 468B of the Code, and the Regulations promulgated pursuant thereto (provided, that any action taken by the Trustee to the extent in accordance with this clause (iv) shall not constitute a breach of any other section of this Agreement).

(c)     The Trustee shall on behalf of the Trust utilize the services of a nationally recognized independent accounting firm that is one of the five largest (by revenue) accounting firms in the United States (the "Trust Accountant") to manage the tax reporting and tax payment obligations of the Trust.  The Trust Accountant shall initially be [PricewaterhouseCoopers LLP]. On behalf of the Trust, the Trust Accountant shall cause the preparation and timely filing of all necessary tax returns required to be filed by the Trust pursuant to the Code or any applicable state or local law.  Final copies of all such returns as filed shall be furnished to the Special Master, the NFL Parties, Co-Lead Class Counsel and the Trustee within a reasonable time after the end of each taxable period.  The Parties shall furnish the Trust Accountant all pertinent information in their possession relating to the Trust's operations that is necessary to enable the Trust's tax returns to be prepared and filed. All fees of the Trust Accountant and all other reasonably documented costs of tax and information return preparation and filing pursuant to this Section 9 shall be treated as expenses of the Trust and shall be satisfied from the Monetary Award Trust Account.

(d)     The BAP Administrator, the Lien Resolution Administrator, the Claims Administrator or the Special Master, as applicable, shall upon issuance of a Notice for Withdrawal Form, where applicable, and as required, provide the Trustee and the Trust Accountant with a duly completed and properly executed IRS Form W-9 or applicable IRS Form W-8 for the payee set forth in the Notice for Withdrawal Form, together with any other documentation and information requested by the Trustee in connection with the Trustee's tax reporting and withholding obligations under the Code, the Regulations and any other applicable law.  With respect to the Trustee's tax reporting and withholding obligations under the Code and any other applicable law or regulation, the Parties understand that, in the event a properly executed IRS Form W-9 or applicable IRS Form W-8 and other required supporting documentation are not provided to the Trustee and Trust Accountant, or as otherwise required by applicable law, the Trustee and/or the Trust Accountant may be required to withhold tax and report account information on any earnings, proceeds or distributions from the Trust.  The Parties, the Claims Administrator, the BAP Administrator and the Lien Resolution Administrator each understand and intend that any income tax returns required to be filed with respect to the receipt by a Beneficiary of a distribution shall be prepared and filed by the applicable Beneficiary with the IRS and any other taxing authority as required by law.

**10.     Concerning the Trustee.**

(a)     Duties.  Each Party acknowledges and agrees that (i) the duties, responsibilities and obligations of the Trustee shall be limited to those expressly set forth in this Agreement in order to satisfy the Trustee's obligations pursuant to the Settlement Agreement, and no duties, responsibilities, covenants or obligations shall be inferred or implied, and (ii) the Trustee shall not be required to expend or risk any of its own funds to

satisfy payments from the Trust Funds hereunder. In carrying out its duties hereunder, the Trustee shall have powers and authority vested in a trustee under Delaware law, including 12 Del. C. § 3325, except as otherwise expressly provided herein. The Special Master, the BAP Administrator, the Claims Administrator and the Lien Resolution Administrator shall act under this Agreement in accordance with the Settlement Agreement and shall comply with all duties and standards set forth therein.

(b)     Liability of Trustee.  The Trustee shall not be liable for any damage, loss or injury resulting from any action taken or omitted in good faith in accordance with this Agreement except to the extent caused by its or any of its affiliates' negligence or willful misconduct (as finally adjudicated by a court of competent jurisdiction and no longer subject to appeal).  In no event shall the Trustee be liable for any indirect, incidental, consequential, punitive or special losses or damages (including but not limited to lost profits), regardless of the form of action and whether or not any such losses or damages were foreseeable or contemplated.  The Trustee may act in reliance upon any resolution, certificate, statement, instrument, opinion, notice, request, direction, consent, order, approval, bond or any other paper or document (including any of the foregoing delivered in electronic format) reasonably believed by it to be genuine and may assume that any person purporting to make any statement or execute any document in connection with the provisions hereof has been duly authorized to do so.  The Trustee need not investigate any statement, warranty or representation or any fact or matter stated in any such document and may conclusively rely as to the truth of the statements and the correctness of the opinions expressed therein.  The Trustee may consult with external legal counsel with relevant expertise selected by it in good faith and with reasonable care in the event of any dispute or question as to the meaning or construction of any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected in acting in accordance with the advice or opinion of such counsel.  The Trustee shall not incur any liability for not performing any act or fulfilling any obligation hereunder by reason of any occurrence beyond its control, including, without limitation, a failure, termination, or suspension of a clearing house, securities depositary, settlement system or central payment system in any applicable part of the world, acts of God, flood, war (whether declared or undeclared), civil or military disturbances or hostilities, nuclear or natural catastrophes, political unrest, explosion, severe weather or accident, earthquake, terrorism, fire, riot, labor disturbances, strikes or work stoppages for any reason, embargo, government action, including any laws, ordinances, regulations or the like (whether domestic, federal, state, county or municipal or foreign) which delay, restrict or prohibit the providing of the services contemplated by this Agreement, or the unavailability of communications or computer facilities, the failure of equipment or interruption of communications or computer facilities, or the unavailability of the Federal Reserve Bank wire or telex or other wire or communication facility, or any other causes beyond the Trustee's control whether or not of the same class or kind as specified above, in each case, which by their nature were not foreseen (and were not reasonably foreseeable) by the Trustee, or, if it was foreseen (or was reasonably foreseeable), was not reasonably avoidable. The Trustee shall promptly give notice of any such event to the Parties and shall indicate in such notice the effect of such event on its ability to perform hereunder and the anticipated duration of such event. During the duration of such an event, the Trustee shall, and shall cause its relevant affiliates to, use reasonable efforts to minimize to the extent practicable the effect of such

event on its obligations hereunder and use commercially reasonable efforts to avoid or remove such event and to resume delivery of the affected services.

(c)  <u>Reliance on Orders</u>.  The Trustee is authorized to comply with final orders issued or process entered by the Court or the Chancery Court of the State of Delaware (each, a "<u>Chosen Court</u>"). The Chosen Courts have continuing jurisdiction over the parties hereto with respect to the terms of the Settlement Agreement and the Trust Funds.  If any portion of the Trust Funds is at any time attached, garnished or levied upon under any Chosen Court order, or in case the payment, assignment, transfer, conveyance or delivery of any such property shall be stayed or enjoined by any Chosen Court order, or in case any order, judgment or decree shall be made or entered by any Chosen Court affecting such property or any part thereof, then and in any such event, the Trustee is authorized to rely upon and comply with any such order, writ, judgment or decree which it is advised is binding upon it without the need for appeal or other action; and if the Trustee complies with any such order, writ, judgment or decree, it shall not be liable to any of the Parties hereto or to any other person or entity by reason of such compliance even though such order, writ, judgment or decree may be subsequently reversed, modified, annulled, set aside or vacated.

(d)  <u>Rights and Protections</u>. The Trustee shall not be bound to make any investigation into the performance or observance by the Parties, the Claims Administrator, the BAP Administrator or the Lien Resolution Administrator of any of the covenants, agreements or other terms or conditions set forth in the Settlement Agreement.  The right of the Trustee to perform any discretionary act enumerated in this Agreement shall not be construed as a duty. The Trustee may act through its attorneys, custodians, nominees and agents appointed in good faith and with due care.  The Trustee shall not be liable for failing to comply with its obligations under this Agreement in so far as the performance of such obligations is dependent upon the timely receipt of instructions and/or other information from any other Person which are not received or not received by the time required.  The Trustee shall be fully justified in failing or refusing to take any action under this Agreement if such action (i) would, in the reasonable opinion of the Trustee, in good faith (based on the advice or opinion of counsel), be contrary to applicable law, this Agreement or any other related document, or (ii) is not provided for in this Agreement.  The Paying Agent shall be entitled to the same protections, indemnities and immunities (and subject to the same limitations) as are afforded to the Trustee under this Agreement (other than, for the avoidance of doubt, the ability to delegate the duties and responsibilities (including those associated with the Paying Agent) under this Agreement or otherwise engage agents, nominees and the like).

(e)  <u>Know Your Customer</u>.  In order to comply with laws, rules, regulations and executive orders in effect from time to time applicable to banking institutions, including those relating to the funding of terrorist activities and money laundering ("<u>Applicable Law</u>"), the Trustee is required to obtain, verify and record certain information relating to individuals and entities which maintain a business relationship with the Trustee.  Accordingly, each of the Parties, the Claims Administrator, the BAP Administrator, the Lien Resolution Administrator and the Beneficiaries shall provide to the Trustee upon its reasonable request from time to time such identifying information and documentation as may be available for such party in order to enable the Trustee to comply with Applicable Law.

11.   **Compensation, Expense Reimbursement and Indemnification.**

(a)   <u>Compensation</u>.   Each of the Parties agrees that the Trustee shall be entitled to the Trustee's fees specified in <u>Schedule A</u> and to be reimbursed for its reasonable costs and expenses (including the reasonable fees and disbursements of its counsel, agents and experts) incurred in connection with this Agreement, in each case, from the Monetary Award Trust Funds.   Each of the Parties agrees that the Paying Agent shall be entitled to the Paying Agent's fees specified in <u>Schedule A</u> and to be reimbursed for its reasonable costs and expenses (including the reasonable fees and disbursements of its counsel, agents and experts) incurred in connection with this Agreement, in each case, from the Monetary Award Trust Funds.

(b)   <u>Indemnification</u>. The Trust shall indemnify the Trustee, the Paying Agent and each of their respective employees, officers, directors, affiliates and agents (each, an "<u>Indemnified Party</u>") for, hold each Indemnified Party harmless from, and defend each Indemnified Party against, any and all claims, losses, actions, liabilities, costs, damages and expenses of any nature (including but not limited to reasonable attorney's fees costs and expenses of defending or preparing to defend against any claim of liability) (collectively, "<u>Losses</u>") incurred by any Indemnified Party arising out of or in connection with this Agreement or such Indemnified Party's performance of this Agreement, except to the extent that such Losses are determined by a court of competent jurisdiction through a final non-appealable order to have been caused by the negligence or willful misconduct, of such Indemnified Party or any of its affiliates; <u>provided</u> that any such indemnification shall be satisfied solely by and deducted from the Monetary Award Trust Account. The foregoing indemnification and agreement to hold harmless shall survive the termination of this Agreement and the resignation or removal of the Trustee or the Paying Agent.

12.   **Dispute Resolution**. In the event of any disagreement among any of the Parties to this Agreement, or between any of them and any other person, resulting in adverse claims or demands being made with respect to the subject matter of this Agreement, or in the event that the Trustee, in good faith, is in doubt as to any action it should take hereunder, the Trustee may, at its option, refuse to comply with any claims or demands and refuse to take any other action hereunder, so long as such disagreement continues or such doubt exists, and in any such event, the Trustee shall not be liable in any way or to any person for its failure or refusal to act, and the Trustee shall be entitled to continue to so refuse to act and refrain from acting until the Trustee shall have received (i) a final non-appealable order, judgment or decree by any Chosen Court, or (ii) a written agreement executed by each of the Parties involved in such disagreement, in which case the Trustee shall be authorized to disburse the Trust Funds in accordance with such final court order, judgment, decree or agreement.   The Trustee shall be entitled to receive (from and at the expense of the presenting party) an opinion of counsel to the effect that any order, judgment or decree is final and not subject to appeal.   The Trustee shall have the option, after thirty (30) calendar days' notice to the Parties of its intention to do so, to petition (by means of filing an action in interpleader or any other appropriate method) any Chosen Court for instructions with respect to any dispute or uncertainty, and to the extent required or permitted by law, pay into such court the Trust Funds for holding and disposition in accordance with the instructions of such court.   The costs and expenses (including reasonable attorneys' fees and expenses) incurred by the Trust or the

-14-

Trustee in connection with such proceeding shall be satisfied solely by and deducted from the Monetary Award Trust Account.

13.     **Exclusive Benefit**.  This Agreement, together with the Settlement Agreement, constitutes the entire agreement between the parties with respect to the obligations and duties of the Trustee and sets forth in its entirety the obligations and duties of the Trustee with respect to the Trust Funds.  This Agreement is for the exclusive benefit of the parties to this Agreement and their respective permitted successors, and shall not be deemed to give, either expressly or implicitly, any legal or equitable right, remedy, or claim to any other entity or person whatsoever, except that the Paying Agent shall be an express beneficiary of the terms and provisions of this Agreement applicable to the Paying Agent, entitled to enforce its rights with respect thereto.  Except as otherwise provided herein or with the approval of the Court, no party may assign any of its rights or obligations under this Agreement without the prior written consent of the other parties.

14.     **Resignation and Removal.**

(a)     No resignation or removal of the Trustee and no appointment of a successor Trustee pursuant to this Section 14 shall become effective until the acceptance of appointment by the successor Trustee under Section 14(c) below.  Subject to the prior sentence and Section 14(c), the Trustee may resign at any time by giving ninety (90) calendar days prior written notice thereof to the NFL Parties, Co-Lead Class Counsel and the Court, and may be removed at any time with the approval of the Court.  In addition, if at any time the Trustee shall become incapable of acting or shall be adjudged bankrupt or insolvent or a receiver of the Trustee or of its property shall be appointed or any public officer shall take charge or control of the Trustee or of its property or affairs for the purpose of rehabilitation, conservation, or liquidation, then all of the Trustee's powers and authority granted under the Trust shall be immediately suspended pending review by the Court, which shall be sought promptly by the NFL Parties and Co-Lead Class Counsel.  In so doing, the NFL Parties and Co-Lead Class Counsel may seek all appropriate relief from the Court including, if warranted, removal of the Trustee and appointment of a successor Trustee.  If an instrument of acceptance by a successor Trustee shall not have been delivered to the Trustee within thirty (30) days after the giving of such notice of resignation, the resigning Trustee may petition the Court for the appointment of a successor Trustee.  The costs of any such petition shall be borne by the Trust and satisfied from the Monetary Award Trust Account.  At any time, the Trustee may be removed by joint motion made by Co-Lead Class Counsel and Counsel for the NFL Parties, and granted by the Court.  In the case of either a resignation or removal of the Trustee, a successor Trustee may be appointed by joint motion made by Co-Lead Class Counsel and Counsel for the NFL Parties, and granted by the Court.  Any resignation or removal of the Trustee shall also automatically result in the resignation or removal of the services of any Paying Agent hereunder appointed by such Trustee pursuant to this Agreement, but will not automatically result in the resignation or removal of any of the Distribution Advisers.

(b)     Upon the acceptance of appointment by any successor Trustee, all rights, titles, duties, powers, and authority of the predecessor Trustee under this Agreement shall be vested in and undertaken by the successor Trustee without any further act being required.  No successor Trustee shall be liable for any act or omission of its predecessor and no resigning or

-15-

removed trustee shall be liable for any act or omission of its successor or for any loss occurring after the effective date of such succession.

(c)     Every successor Trustee appointed hereunder shall execute, acknowledge, and deliver to the Court and to the retiring Trustee an instrument accepting such appointment, and thereupon the resignation or removal of the retiring Trustee shall become effective and such successor Trustee, without any further act, deed, or conveyance, shall become vested with all the rights, powers, trusts, and duties of the retiring Trustee; but, on request of the Court or the successor Trustee, such retiring Trustee shall, upon payment of its outstanding reasonable fees and expenses (including the reasonable fees and disbursements of its agents, counsel and experts), execute and deliver an instrument transferring to such successor Trustee all of the rights, powers, and trusts of the retiring Trustee, and shall duly assign, transfer, and deliver to each successor Trustee all property and money held by such retiring Trustee hereunder.  Upon request of any such successor Trustee, the Parties shall execute any and all instruments reasonably necessary for more fully and certainly vesting in and confirming to each such successor Trustee all such rights, powers, and trusts.  A successor Trustee's acceptance of appointment shall not be deemed effective unless and until its appointment as Trustee has been approved by the Court.

(d)     Upon the resignation or removal of the Trustee, the Trustee shall within forty-five (45) days furnish a final report to the NFL Parties, Co-Lead Class Counsel and the Court setting forth the initial principal of the Trust Funds, all additions to the principal of the Trust Funds, any earnings of the Trust Funds, disbursements to Beneficiaries and other persons and all expenses incurred by the Trustee in connection with the management and administration of the Trust Funds during the Trustee's term of service. The costs of such report shall be shall be satisfied by and deducted from the Monetary Award Trust Account.

(e)     Notwithstanding any other provision in this Agreement, as long as the interpretation, validity, administration and operation of the Trust are governed by the laws of the State of Delaware, the Trustee must be a bank or trust company authorized by Delaware or U.S. federal law to exercise fiduciary powers in Delaware and have its principal place of business in the State of Delaware and no Trustee may take office unless it satisfies such requirements.

(f)     The Trustee may remove the Trust Accountant at any time by giving the Trust Accountant thirty (30) calendar days' prior written notice and the Trust Accountant may resign at any time by giving the Trustee thirty (30) calendar days' prior written notice.  Upon such removal or resignation, the Trustee shall appoint a successor Trust Accountant.

**15.    Governing Law; Jurisdiction; Waivers**. This Agreement and the interpretation and operation of the Trust shall be construed and interpreted in accordance with the laws of the State of Delaware without giving effect to the conflict of laws principles thereof that would result in the application of any laws other than the laws of the State of Delaware.   The parties hereto irrevocably and unconditionally submit to the jurisdiction of the Chosen Courts and no other court shall have jurisdiction over the parties with respect to this Agreement or the Trust.  The parties hereto irrevocably submit to the jurisdiction of the Chosen Courts for the determination of all issues in such proceedings and irrevocably waive any objection to venue or inconvenient forum for any proceeding brought in any such court.  The parties hereto

-16-

irrevocably and unconditionally waive any right to trial by jury with respect to any proceeding relating to this Agreement.

16. **Representations and Warranties**. Each of the parties hereto represents and warrants that it has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder; and this Agreement has been duly approved by all necessary action and constitutes its valid and binding agreement enforceable in accordance with its terms, except as such enforceability may be limited by (a) bankruptcy, insolvency or other similar laws affecting creditors' rights generally and (b) general principles of equity.

17. **Notices; Instructions.**

(a) Any notice or instruction hereunder shall be in writing, in English, may be sent by (i) secure file transfer or (ii) electronic mail with a scanned attachment thereto of an executed notice or instruction, and shall be effective upon actual receipt by the Trustee in accordance with the terms hereof (with a copy to each of the Parties).  Any notice or instruction must be executed by an authorized person of a Party, the Claims Administrator, the BAP Administrator or the Lien Resolution Administrator, as applicable, designated on Schedule B, Schedule C, Schedule D, Schedule E, Schedule F or Schedule G attached hereto (the person(s) so designated from time to time, the "Authorized Persons").   Each of the Authorized Persons have been duly appointed to act as Authorized Persons hereunder and individually have full power and authority to execute and deliver any notices or instructions, and to take any and all other actions permitted under this Agreement, all without further consent or direction from, or notice to, it or any other party.  Any notice or instruction must be originated from a corporate domain.  Any change in designation of Authorized Persons shall be provided by written notice, signed by an Authorized Person, and actually received and acknowledged by the Trustee.  Any communication from the Trustee that the Trustee deems to contain confidential, proprietary, and/or sensitive information shall be encrypted in accordance with the Trustee's internal procedures.   The Parties, the Claims Administrator, the BAP Administrator and the Lien Resolution Administrator each agree that the above security procedures are commercially reasonable.

If to the NFL Parties:

National Football League
345 Park Avenue
New York, NY  10154
Attention:  Jeffrey Pash, Esq.
Facsimile: (212) 847-1877
E-mail: Jeff.pash@nfl.com

*With a copy* (which shall not constitute notice) to:

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019
Attention:      Brad S. Karp, Esq.
                      Edward T. Ackerman, Esq.
Facsimile: (212) 757-3990
E-mail: bkarp@paulweiss.com
            eackerman@paulweiss.com

If to Co-Lead Class Counsel:

Seeger Weiss LLP
77 Water Street
New York, NY 10005
Attention: Christopher A. Seeger
Telephone: 212-584-0700
Facsimile: 212-584-0799
E-mail: cseeger@seegerweiss.com

If to the Special Master:

Wendell Pritchett
3501 Sansom Street
Philadelphia, PA 19104
Telephone: 215.573.5086
Facsimile: 215.573.2025
E-mail: pritchet@law.upenn.edu

and

Jo-Ann M. Verrier
3501 Sansom Street
Philadelphia, PA 19104
Telephone: 215.898.6746
Facsimile: 215.573.2025
E-mail: jverrier@law.upenn.edu

If to the Trustee:

Citicorp Trust Delaware, N.A
20 Montchanin Road, Suite 180
Greenville, DE 19807
Attn.: Jason Concavage
Telephone: (302) 298-3694
Facsimile: (302) 724-6828
E-mail: NFLtrust@citi.com

*With a copy* (which shall not constitute notice) to:

Citibank, N.A.
Agency & Trust
480 Washington Boulevard, 18th Floor
Jersey City, NJ 07310
Attn.: Marion O'Connor
Telephone: (201) 763-3055
Facsimile: (201) 254-3965
E-mail: NFLtrust@citi.com

*With a copy* (which shall not constitute notice) to:

Seward & Kissel LLP
One Battery Park Plaza
New York, New York 10004
Attention: Gregg S. Bateman
Telephone: (212) 574-1436
Facsimile: (212) 480-8421
E-mail: bateman@sewkis.com

If to the BAP Administrator or Lien Resolution Administrator:

Garretson Resolution Group, Inc,
4064 Colony Road, Second Floor
Charlotte, NC  28211
Attn.:  Sylvius H. von Saucken, Fiduciary
Telephone:  (704) 559-4300
Facsimile:   (704) 559-4331
E-mail:  svs@garretsongroup.com

If to the Claims Administrator:

BrownGreer PLC
250 Rocketts Way
Richmond, VA 23231
Attn.:  Frank J. Trani
Telephone:  (804) 521-7212
Facsimile:   (804) 521-7299
E-mail:  ftrani@browngreer.com

(b)     Payments to the Trustee shall be sent by wire transfer pursuant to the following instructions: **CITIBANK, N.A.**, ABA: 0210-0008-9; Account Name: Escrow Concentration Account; A/C#.: 36855852; and including the applicable reference set forth below:

Ref: 117301-00 NFL BAP Trust Fund

Ref: 117300-00 NFL Monetary Award Trust Fund

Ref: 117299-00 NFL Education Trust Fund

Ref: 117298-00 NFL Settlement Trust AC.

**18.     Amendment; Waiver**. Subject to Section 9(a) and except as otherwise expressly provided herein (including Section 17), any or all of the provisions of this Agreement may be amended at any time and from time to time, in whole or in part, by an instrument in writing executed by the NFL Parties and Co-Lead Class Counsel, and approved by the Court.  No such amendment shall authorize or permit any part of the Trust Funds to be used for or diverted for purposes other than as envisioned by the Settlement Agreement and no such amendment which (i) affects the rights or duties of the Trustee may be made without the Trustee's written consent, or (ii) affects the rights or duties of the Paying Agent may be made without the Paying Agent's written consent. No waiver of any provision hereof shall be effective unless expressed in writing and signed by the party to be charged.

**19.     Severability**. The invalidity, illegality or unenforceability of any provision of this Agreement shall in no way affect the validity, legality or enforceability of any other provision.  If any provision of this Agreement is held to be unenforceable as a matter of law, the other provisions shall not be affected thereby and shall remain in full force and effect.

**20.     Mergers and Conversions**. Any corporation or entity into which the Trustee may be merged or converted or with which it may be consolidated, or any corporation or entity resulting from any merger, conversion or consolidation to which the Trustee will be a party, or any corporation or entity succeeding to the business of the Trustee will be the successor of the Trustee hereunder without the execution or filing of any paper with any party hereto or any further act on the part of any of the parties hereto except where an instrument of transfer or assignment is required by law to effect such succession, anything herein to the contrary notwithstanding.

21. **Termination**. This Agreement shall terminate upon the earlier of (i) the distribution of all Trust Funds from the Trust Account established hereunder in accordance with the terms of this Agreement and (ii) the written agreement of each of the Parties hereto, with the approval of the Court, subject, however, to the survival of obligations specifically contemplated in this Agreement to so survive.

22. **Counterparts**. This Agreement may be executed simultaneously in two or more counterparts, any one of which need not contain the signatures of more than one party, but all such counterparts taken together shall constitute one and the same agreement.  Facsimile or PDF signatures on counterparts of this Agreement shall be deemed original signatures with all rights accruing thereto except in respect to any non-US entity, whereby originals are required.

23. **Defined Terms**. The following terms shall have the meanings specified in the indicated section of this Agreement:

| **Term** | **Section** |
| --- | --- |
| Agreement | Preamble |
| Applicable Law | 10(e) |
| Authorized Persons | 17(a) |
| BAP Administrator | Recitals |
| BAP Payment Account | 4(a)(iii) |
| BAP Termination Date | 7(a) |
| BAP Trust Account | 2(c) |
| BAP Trust Deposit | 2(c) |
| BAP Trust Funds | 2(c) |
| Beneficiaries | 1(a) |
| Business Day | 6(a) |
| Chosen Court | 10(c) |
| Citibank | Preamble |
| Claims Administrator | Recitals |
| Claims Website | 4(e) |
| Class Action Litigation | Recitals |
| Class Members | 1(a) |
| Code | Recitals |
| Co-Lead Class Counsel | Preamble |
| Court | Recitals |
| Distribution Advisers | 4(d) |
| Education Trust Account | 2(a) |
| Education Trust Deposit | 2(a) |
| Education Trust Funds | 2(a) |
| Final Accounting | 8(c) |
| Final Approval Order | Recitals |
| Indemnified Party | 11(b) |
| Investment Policy | 6(a) |
| IRS | 9(b) |
| Lien Resolution Administrator | Recitals |
| Losses | 11(b) |

| Term | Section |
|------|---------|
| Monetary Award Trust Account | 2(b) |
| Monetary Award Trust Deposits | 2(b) |
| Monetary Award Trust Funds | 2(b) |
| NFL | Preamble |
| NFL Parties | Preamble |
| NFL Properties | Preamble |
| Notice for Withdrawal Form | 4(a)(i) |
| Parties | Preamble |
| Paying Agent | 3(g) |
| person | Recitals |
| QSF | Recitals |
| Regulations | Recitals |
| Settlement Agreement | Recitals |
| Settlement Trust Account | 2(a) |
| Special Master | Recitals |
| Termination Date | 7(b) |
| Trust | Preamble |
| Trust Accountant | 9(c) |
| Trust Accounts | 2(c) |
| Trust Deposits | 2(c) |
| Trust Funds | 2(c) |
| Trustee | Preamble |

**[Remainder of Page Left Intentionally Blank]**

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed by a duly authorized representative as of the day and year first written above.

**CITICORP TRUST DELAWARE, N.A.,**
as Trustee


By:_____
Name:
Title:
Date:

**NATIONAL FOOTBALL LEAGUE**


By:_____
Name:
Title:
Date:

**NFL PROPERTIES LLC**


By:_____
Name:
Title:
Date:

**CO-LEAD CLASS COUNSEL:**


By:_____
SEEGER WEISS LLP
Christopher A. Seeger
Date:


By:_____
ANAPOL WEISS
Sol Weiss
Date:

**SPECIAL MASTER:**

_____

Wendell Pritchett
Date:


_____

Jo-Ann M. Verrier
Date:

**SCHEDULE A**

**TRUSTEE AND PAYING AGENT FEE SCHEDULE**

See attached.



Citi Agency & Trust
388 Greenwich Street
New York, NY 10013

Douglas Tienken
Director
Tel 212 816-2335
Email:  douglas.tienken@citi.com

**SCHEDULE OF FEES
AS TRUSTEE AND PAYING AGENT
FOR
NATIONAL FOOTBALL LEAGUE,
NFL PROPERTIES LLC,
SEEGER WEISS LLP,
ANAPOL WEISS,
WENDELL PRITCHETT,
JO-ANN M. VERRIER**

**<u>Acceptance Fee:</u>**

To cover the acceptance of the trustee appointment, the study of the Settlement Trust Agreement and supporting documents submitted in connection with the execution and delivery thereof, and communication with other members of the working group:

> **$15,000**

**<u>Annual Trustee Fee:</u>**

To cover the normal administrative functions of the Trustee including: Establishment of the Settlement Trust Account, the Educational Trust Account, Monetary Award Trust Account, BAP Trust Account and the BAP Payment Account, maintenance and other duties required by the Trustee under the terms of the Settlement Trust Agreement:

> **$25,000 per annum**

**<u>Annual Paying Agent Fee:</u>**

To cover the paying agent function and other related duties to facilitate the payment of claims out of the Trust under the terms of the Settlement Trust Agreement:

$50 per payment processed

PLUS

An annual fee (the "<u>Paying Agent Annual Fee</u>") for each year of the Trust as determined below.

- <u>Paying Agent Annual Fee for Years 1-5 of the Trust</u> – $150,000 per annum



- <u>Paying Agent Annual Fee for Years 6-10 of the Trust</u> – an amount per annum determined in accordance with the following formula (using the variables set forth below the formula):

  (A/X) * $150,000, but in no event greater than $150,000 or less than $125,000

  A = Number of payments from the Trust actually processed by the Paying Agent in Year 5 of the Trust
  X = Average number of payments per year from the Trust actually processed by the Paying Agent in Years 1-5 of the Trust


- <u>Paying Agent Annual Fee for Years 11-15 of the Trust</u> – an amount per annum determined in accordance with the following formula (using the variables set forth below the formula):

  (B/Y) * $150,000, but in no event greater than $150,000 or less than $100,000

  B = Number of payments from the Trust actually processed by the Paying Agent in Year 10 of the Trust
  Y = Average number of payments per year from the Trust actually processed by the Paying Agent in Years 6-10 of the Trust


- <u>Paying Agent Annual Fee for Years 16-65 of the Trust</u> – $75,000 per annum


**<u>Annual Safekeeping  Fee:</u> (If Applicable)**

To cover the normal administrative functions of Safekeeping collateral, maintenance and other duties required under the terms of the Settlement Trust Agreement. This fee will be calculated based on the average monthly market value and billed quarterly in arrears

   **Waived for Money Market Mutual Funds and cash deposits** (the parties to the Settlement Trust Agreement agree that the Initial Investment satisfies this requirement and the annual safekeeping fee shall be waived with respect thereto)

   **OR**

   **1 BPS subject to a $20,000 minimum per Account for securities safekeeping**

**<u>Legal Fees:</u> (if applicable)**

To cover review of legal documents by Citibank's outside counsel on behalf of the Trustee

Schedule A-3


At Cost

**Amendment Fee:** **(if applicable)**

To cover the administrative functions of amending the Agreement.

**Fee to be mutually agreed upon prior to review by Citi of any amendment.**

**Schedule Assumptions**

- Initial trust deposits ~ $10MM Education Trust, $20MM Monetary Award Trust $35MM BAP Trust
- Citicorp Trust Delaware, N.A. as Trustee, Citibank, N.A. as Paying Agent
- Trust Funds will initially consist of cash on deposit or invested in a Money Market Mutual Fund from a list provided by Citibank
- Citi Agency & Trust will provide safekeeping and basic holdings reporting. No analytics or valuation services. Citi will not be called to act in a brokerage capacity
- The securities in the safekeeping account will be DTC or FED eligible securities
- The safekeeping account will be relatively static – minimal substitutions of securities expected
- Disbursements will occur once a month on the same date  for the Monetary Award Trust Account, the Education Trust Account and the BAP Trust Account
- Governed under Delaware law
- Accounting services including Tax preparation are not included and will be billed at cost
- Our appointments are subject to internal approval, KYC and satisfactory review of the documentation.

The above schedule of fees does not include charges for out-of-pocket expenses or for any services of an extraordinary nature that we or our legal counsel may be called upon from time to time to perform in either an agency or fiduciary capacity, nor does it include the fees of our legal counsel. Fees are also subject to satisfactory review of the documentation, and we reserve the right to modify them should the characteristics of the transaction change. Our participation in this transaction is subject to internal approval. The Acceptance Fee is payable upon closing. The Annual Administration Fees will be payable annually in advance on the anniversary of the Closing Date. Should this schedule of fees be accepted and agreed upon and work commenced on this transaction but subsequently halted, the Acceptance Fee and legal fees incurred will still be payable in full. This Fee Schedule is guaranteed for sixty days from the date on this proposal. After sixty days, this offer can be extended in writing only.

Citi may wish to refer to this transaction for marketing purposes, both internally and externally, without disclosing any confidential or sensitive non-publicly available information. By signing this proposal, you consent to Citi's use of this information, including company names and logos at its sole discretion.  If you wish to withdraw your consent for Citi to use any information externally, then please mark this box   .

In accordance with the U.S. Unlawful Internet Gambling Act (the "Act"), Citibank accounts or other Citibank, N.A. facilities in the United States may not be used to process "restricted transactions" as such term is defined in U.S. 31 CFR Section 132.2(y)**.** To help the US government fight terrorism and money laundering, Federal law requires us to obtain, verify and

record information that identifies each business or entity that opens an account or establishes a relationship. What this means for you: when you open an account or establish a relationship, we will ask for your business name, a street address and a tax identification number, that Federal law requires us to obtain. We appreciate your cooperation.

**SCHEDULE B**

**AUTHORIZED LIST OF SIGNERS**

Each of the following person(s) is authorized to execute documents and to direct the Trustee as to all matters, including funds transfers, on the NFL Parties' behalf.


**NFL PARTIES**

Specimen Signature

Name        _____
Title       _____
Phone       _____
E-mail Address  _____


Name        _____
Title       _____
Phone       _____
E-mail Address  _____


Name        _____
Title       _____
Phone       _____
E-mail Address  _____


The Trustee may confirm the instructions received by return call to one of the telephone numbers listed below.

*Telephone Number (including Country code)*
*Name*

|  |  |
| --- | --- |
|  |  |
|  |  |
|  |  |

Schedule B-1

## SCHEDULE C

## AUTHORIZED LIST OF SIGNERS

Each of the following person(s) is authorized to execute documents and to direct the Trustee as to all matters, including funds transfers, on Co-Lead Class Counsel's behalf.

## CO-LEAD CLASS COUNSEL

Specimen Signature

Name _____
Title _____
Phone _____
E-mail Address _____

Name _____
Title _____
Phone _____
E-mail Address _____

Name _____
Title _____
Phone _____
E-mail Address _____

The Trustee may confirm the instructions received by return call to one of the telephone numbers listed below.

*Telephone Number (including Country code)*
*Name*

| | |
|---|---|
| | |
| | |
| | |
| | |

## SCHEDULE D

## AUTHORIZED LIST OF SIGNERS

Each of the following person(s) is authorized to execute documents and to direct the Trustee as to all matters, including funds transfers, on the Special Master's behalf.

## SPECIAL MASTER

Specimen Signature

Name   _____
Title   _____
Phone   _____
E-mail Address   _____

Name   _____
Title   _____
Phone   _____
E-mail Address   _____

Name   _____
Title   _____
Phone   _____
E-mail Address   _____

The Trustee may confirm the instructions received by return call to one of the telephone numbers listed below.

*Telephone Number (including Country code)*
*Name*

|  |  |
|---|---|
|  |  |
|  |  |
|  |  |

**SCHEDULE E**

**AUTHORIZED LIST OF SIGNERS**

Each of the following person(s) is authorized to execute documents and to direct the Trustee as to all matters, including funds transfers, on the Claims Administrator's behalf.

## CLAIMS ADMINISTRATOR

Specimen Signature

Name  _____

Title  _____

Phone  _____

E-mail Address  _____

Name  _____

Title  _____

Phone  _____

E-mail Address  _____

Name  _____

Title  _____

Phone  _____

E-mail Address  _____

The Trustee may confirm the instructions received by return call to one of the telephone numbers listed below.

*Telephone Number (including Country code)*
*Name*

|  |  |
|---|---|
|  |  |
|  |  |
|  |  |

Schedule E-1

**SCHEDULE F**

**AUTHORIZED LIST OF SIGNERS**

Each of the following person(s) is authorized to execute documents and to direct the Trustee as to all account matters, including funds transfers, on the BAP Administrator's behalf.

## BAP ADMINISTRATOR

Specimen Signature

Name   _____
Title   _____
Phone   _____
E-mail Address   _____

Name   _____
Title   _____
Phone   _____
E-mail Address   _____

Name   _____
Title   _____
Phone   _____
E-mail Address   _____

The Trustee may confirm the instructions received by return call to one of the telephone numbers listed below.

*Telephone Number (including Country code)*
*Name*

| | |
|---|---|
| | |
| | |
| | |
| | |

Schedule F-1

**SCHEDULE G**

**AUTHORIZED LIST OF SIGNERS**

Each of the following person(s) is authorized to execute documents and to direct the Trustee to all account matters, including funds transfers, on the Lien Resolution Administrator's behalf.

## LIEN RESOLUTION ADMINISTRATOR

Specimen Signature

Name _____
Title _____
Phone _____
E-mail Address _____

Name _____
Title _____
Phone _____
E-mail Address _____

Name _____
Title _____
Phone _____
E-mail Address _____

The Trustee may confirm the instructions received by return call to one of the telephone numbers listed below.

*Telephone Number (including Country code)*
*Name*

|  |  |
|---|---|
|  |  |
|  |  |
|  |  |

Schedule G-1

**EXHIBIT A**

**NOTICE FOR WITHDRAWAL FORM**

---

NOTICE FOR WITHDRAWAL OF FUNDS
FROM NFL PLAYERS' CONCUSSION INJURY LITIGATION SETTLEMENT TRUST
IN RE NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY
LITIGATION
(MDL NO. 2323)

---

TO:    Citicorp Trust Delaware, N.A.
       Trustee, NFL Players' Concussion
       Injury Litigation Settlement Trust
       20 Montchanin Road, Suite 180
       Greenville, DE 19807
       Attention: Jason Concavage

       Citibank, N.A.
       Paying Agent
       480 Washington Boulevard, 18th Floor
       Jersey City, NJ 07310
       Attention: Marion O'Connor

Exhibit A-1

The undersigned representative of the Special Master, the Claims Administrator, the BAP Administrator or the Lien Resolution Administrator, as applicable, under that certain: (i) Class Action Settlement Agreement, dated June 25, 2014 and amended February 13, 2015 (as amended, supplemented or otherwise modified from time to time, the "Settlement Agreement"), and (ii) Settlement Trust Agreement, dated as of [__], 2017 (as amended, supplemented or otherwise modified from time to time, the "Trust Agreement") among the National Football League, NFL Properties LLC, Seeger Weiss LLP, Anapol Schwartz, Wendell Pritchett, Jo-Ann M. Verrier and Citicorp Trust Delaware, N.A., as trustee (in such capacity, the "Trustee"), provides this Notice for Withdrawal of Funds (this "Notice").  The undersigned certifies that (i) the total withdrawal request listed below, and the specific disbursement instructions attached to this Notice (or provided to the Trustee electronically substantially in the format specified in Exhibit C to the Trust Agreement or other electronic means to facilitate ACH payments) are true and correct and comply with the terms of the Settlement Agreement and the Trust Agreement, (ii) the requested payment referenced below has received all necessary approvals under the Settlement Agreement and the Trust Agreement, and (iii) it has either (a) provided a completed W-8 or W-9, as applicable, and if required, to the Trustee for each Beneficiary to receive funds as a result of the withdrawal request, or (b) hereby certifies to the Trustee that it has received a completed W-8 or W-9, as applicable, and if required, for each Beneficiary to receive funds as a result of the withdrawal request.  The Special Master, the Claims Administrator, the BAP Administrator or the Lien Resolution Administrator, as applicable, hereby submits this Notice pursuant to Section 4 of the Trust Agreement. Capitalized terms used herein and not otherwise defined herein shall have the meaning ascribed to them in the Trust Agreement.

| | | | |
|---|---|---|---|
| 1. | **Date of Notice**: | _____, 20__ | |
| 2. | **Releasor**: | ☐ Special Master Administrator<br>☐ BAP Administrator | ☐ Claims<br><br>☐ Lien Resolution Administrator |
| | **Releasor Contact Information**: | Name:_____<br>Email:_____<br>Address:_____<br>_____<br>_____ | |

Exhibit A-2

|  | ☐ Education Trust Funds (the Special Master (or, after the expiration of the term of the Special Master and any extensions thereof in accordance with the Settlement Agreement, the Claims Administrator) only) |
| 3.  **Trust Fund**: | ☐ Monetary Award Trust Funds (the Special Master, the Claims Administrator or the Lien Resolution Administrator only) |
|  | ☐ BAP Trust Funds (the Special Master (or, after the expiration of the term of the Special Master and any extensions thereof in accordance with the Settlement Agreement, the Claims Administrator) or the BAP Administrator only) |
| 4.  **Total Number of Transactions to be Disbursed from the Applicable Fund of the Trust under this Notice**: | **Total Amount to be Withdrawn from the Applicable Fund of the Trust under this Notice**: |
| _____ | $_____ |

**RELEASOR:**

_____

By:_____
Name:
Title:
Date:

Address (for Mailing Checks):
_____
_____
_____

**EXHIBIT B**

**INVESTMENT GUIDELINES**

The Trustee shall invest (or cause to be invested) all cash deposited in the Trust Funds conservatively in a manner designed to assure timely availability of funds, protection of principal and avoidance of concentration risk.  Acceptable investments will be comprised of United States government money market funds having a AAA/Aaa rating awarded by at least two of the three major rating agencies (Standard & Poor's, Moody's or Fitch), short-dated United States treasury bills and/or interest bearing bank deposits at banks that are at all times rated A+/A1 or higher by Standard & Poor's and Moody's provided such bank rated A+/A1 or higher at all times holds a stable or positive outlook.

By instructing the Trustee to invest only in a limited set of assets, the Parties intend to modify the "prudent person" rule, "prudent investor" rule, or any other rule of law that would require the Trustee to pursue investment options other than those outlined in this Agreement.

**EXHIBIT C**

**FORM OF DISBURSEMENT INSTRUCTIONS**

See attached.

Exhibit C-1

| NAME 1 | NAME 2 | NAME 3 | ADDR 1 | ADDR 2 | ADDR 3 | ADDR 4 | CITY | STATE | ZIP | COUNTRY | CLASS | TAXID | TAX FORM | TAX EXEMPT | TAX REPORTING | 1099MISC BOX NUMBER | PRINCIPAL | INTERMEDIARY (USA) BANK ABA NUMBER | INTERMEDIARY (USA) BANK NAME | BENE (USA) BANK ABA NUMBER | BENE (USA) BANK NAME | INTERMEDIARY ACCOUNT NAME | INTERMEDIARY ACCOUNT NUMBER | ULTIMATE BENEFICIARY ACCOUNT NUMBER | ULTIMATE BENEFICIARY ACCOUNT NAME | NON US BANK SWIFT CODE | NON US BANK SWIFT NAME | REFERENCE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| JANE DOE | | | 123 1ST STREET | 2nd Floor | | | New York | NY | 123456 | USA | INU | 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 | W9 | Yes | | | 1000.00 | | | 021000089 | Citibank N.A. | Ttee Coll Acct | 35555555 | 123456 | Ttee 1 Account | | | |
| ABC Law Firm Group | | | 55th STREET | | | | Jersey City | NJ | 07310 | USA | INU | 55-123654 | W9 | No | 1099MISC | 7 | 500000000.00 | 021000089 | Citibank | 121000098 | BBCD Bank | | | 789654 | Ttee 2 Legal | | | |

Exhibit C-2

| Column Name | Explanation of Column |
|---|---|
| ACCT NUMBER | Please create a unique identifier account number for each payee, maximum 11 numbers (i.e.. 1, 2, 3, 4, etc.), and is required. Use the same account number for future payments. |
| CLAIMANT ID | Please add Claimant ID (alpha/numeric), maximum [11] characters |
| NAME 1 - 3 | The holder's name. There are three fields for this purpose. Each field holds a **maximum of 40 characters** (including spaces). NAME 1 is a required field. If the name is longer than 40 characters enter the remainder in NAME 2, then NAME 3, if necessary. |
| | **Examples of Valid Name Formats:** |
| | |
| | **Individuals (first name first, last name last):** |
| | John Doe |
| | Mary L. Smith |
| | **Tenancies (Joint Tenants and Other Tenancies):** |
| | Robert Jones & Susan Jones JT TEN |
| | John Doe & Mary L. Smith TEN COM |
| | James Burns & Jennifer Burns JTWROS |
| | **Trust Accounts (Trustee is required, and Trust Date is required):** |
| | Jane Doe TRUSTEE U/A DTD 06-01-04 John Doe Trust |
| | Robert Cohen & Mary Smith TRUSTEES U/A DTD 07-25-99 John Smith Revocable Trust |
| ADDR 1 | The first line of the payee's address. This field is a **maximum of 40 characters** (including spaces) and is required. |
| ADDR 2 - ADDR 4 | The second, third, and fourth lines of the payee's address. This field is a **maximum of 40 characters** (including spaces). If not applicable, leave blank. |
| CITY | This field is a **maximum of 40 characters** (including spaces) and is required. |
| STATE | This field is a **maximum of 2 characters** (no spaces) and is required for addresses in the United States. |
| ZIP | The zip code for this address. This is required for payees in the United States. |
| | Either the five digit code or zip + 4 can be input (i.e.. 12340 or 12340-6789) |
| COUNTRY | This field is a **maximum of 40 characters** (including spaces) and is required. |

Exhibit C-3

| CLASS | The type of payee.  Types of  are: |
|---|---|
| | Corporations |
| | Individuals |
| | Partnerships |
| | Institutions and Foundations |
| | Charitable Institutions |
| | Individual Fiduciary (Trusts, Executors, Custodians, etc.) |
| | Corporate Fiduciary (Trusts, Executors, Custodians, etc.) |
| | Corporations and Banks |
| | Pension Funds |
| | Tenancy Phrases (Joint Tenants, Tenants in Common) |
| | This field is required. |
| | |
| TAXID | The accounts tax id or social security number. **This must be 9 characters and contain no dashes, spaces or slashes.** |
| TAX FORM | The tax form on file for this holders' account (e.g. **W9 for U.S.** holders with a Tax ID or social security number or 8BEN for accounts with **8BEN**). If a Tax ID or social security number is supplied and W-9 is not entered in this column, the account will be taxed at the current backup-withholding rate. |
| TAX EXEMPT | No if payment is tax reportable, Yes if exempt, not tax reportable |
| TAX REPORTING | Tax reporting form, i.e. 1099B, 1099MISC |
| 1099MISC BOX NUMBER | Add the 1099MISC reporting box number only, i.e. 7 |
| Principal | The gross dollar amount to be paid. **Must be rounded to 2 decimal places** |
| | |
| **For Check Payments** | Fill in Columns A - T and AE, as applicable. Columns U - AD should remain blank. |
| | |
| **For Domestic 2 Party Wire Payments** | Fill in columns A - T, W - AB, and AE, as applicable |
| USA Bank Name | sample: Citibank, N.A. |
| USA Bank ABA Number | sample:  021000089 |
| Intermediary Account Name | brokerage/financial institution/collections account name, if applicable |
| Intermediary Account Number | brokerage/financial institution/collections account number, if applicable |
| Ultimate Beneficiary Account | ultimate recipient account name - for further credit |

Exhibit C-4

| Name | account name |
|---|---|
| Ultimate Beneficiary Account Number | ultimate recipient account number - for further credit account number |
| | |
| **For Domestic 3 Party Wire Payments** | Fill in columns A - T, U - AB, and AE, as applicable |
| INTERMEDIARY (USA) BANK ABA NUMBER | sample: Citibank, N.A. |
| INTERMEDIARY (USA) BANK NAME | sample:  021000089 |
| USA Bank Name | sample: ABC Bank |
| USA Bank ABA Number | sample:  012000080 |
| Intermediary Account Name | brokerage/financial institution/collections account name, if applicable |
| Intermediary Account Number | brokerage/financial institution/collections account number, if applicable |
| Ultimate Beneficiary Account Name | ultimate recipient account name - for further credit account name |
| Ultimate Beneficiary Account Number | ultimate recipient account number - for further credit account number |
| | |
| **For Foreign Wire Payments** | Fill in columns A - T, Y - AD and AE, as applicable |
| SWIFT Bank Name | BANK LEUMI LE ISRAEL B.M. |
| SWIFT Code | LUMIILITXXX |
| Intermediary Account Name | brokerage/financial institution/collections account name, if applicable |
| Intermediary Account Number | brokerage/financial institution/collections account number, if applicable |
| Ultimate Beneficiary Account Name | ultimate recipient account name - for further credit account name |
| Ultimate Beneficiary Account Number | ultimate recipient account number - for further credit account number |

Exhibit C-5

JOINDER

The undersigned hereby agrees to provide the services of Paying Agent provided in the foregoing Settlement Trust Agreement on the terms set forth therein and shall hold all sums held by it for payment to the Beneficiaries in trust for the benefit of the Beneficiaries entitled thereto until such sums shall be paid to such Beneficiaries.

Dated: _____          CITIBANK, N.A., as Paying Agent


By:_____
Name:_____
Title:_____