IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**ESTATE OF KEVIN TURNER'S REPLY IN FURTHER SUPPORT OF ITS
MOTION TO RESOLVE ATTORNEY FEE DISPUTE**

The Turner Estate submits this reply in further support of its motion (the "Motion," ECF No. 7029) to resolve an attorney fee dispute with the Podhurst firm and requesting Court approval for R. Montgomery Donaldson, Robert A. Penza and P. John Brady of Polsinelli PC to serve as counsel for the Turner Estate for the remainder of this case and the claim submission process.[1] In addition, the Turner Estate replies briefly to the joinder filed by the Locks Law Firm filed in opposition to the Turner Estate's Motion (ECF No. 7072).

---

[1] In its response, the Podhurst firm states that it does not oppose the Turner Estate's application to have Polsinelli represent it. ECF No. 7071. Thus, only the attorney fee portion of the Motion remains in dispute.

## THE TURNER ESTATE'S MOTION AND PODHURST'S OPPOSITION

1. The December 14, 2016 Motion seeks to resolve a dispute between the Turner Estate and Podhurst over whether Podhurst may, in addition to the sizeable class recovery contemplated by the Class Action Settlement Agreement (providing for a $112.5 million Attorney's Fees Qualified Settlement Fund to be funded by the NFL Parties), extract from Kevin Turner's $5 million recovery $1.25 million dollars in additional fees pursuant to a contingency fee agreement (the "Authority to Represent" agreement, also referred to as the "2012 Retainer Agreement")[2] that Kevin Turner and Podhurst entered before any class action proceedings began. The 2012 Retainer Agreement contemplates and furnishes terms for an individual action (since dismissed), and contains no provision or terms covering this class action, Kevin Turner's service as a representative plaintiff or Podhurst's rights and obligations as national class action counsel.

2. Contrary to Podhurst's Response in Opposition to the Turner Estate's Motion (the "Response"), the Turner Estate is not asserting universally that all contingency fee agreements between all class members and their respective counsel involved in this action are unenforceable. The Motion takes no position as to counsel who are *not* Court-appointed Class Counsel, or did *not* assist Class Counsel or the Class Members as a whole, and who may be compensated only for their services on behalf of any Class Member through their respective retainer agreements and not from the NFL Parties. Rather, the Turner Estate asserts that, under the particular circumstances surrounding and terms of the 2012 Retainer Agreement relative to this class action, the 2012 Retainer Agreement between Podhurst and Kevin Turner should not be enforced here by this Court.

---

[2] *See* ECF No. 7029, Exhibit A, for a copy of the Authority to Represent.

3. Although Podhurst concedes, as it must, that this Court has authority to set aside its 2012 Retainer Agreement with Kevin Turner, Podhurst is mistaken that this Court's ability to do so is limited only to a finding of misconduct or abuse. Rather, the Turner Estate asserts that when determining a fee for Podhurst as Court-appointed Class Counsel in this action, this Court's objective should be to ensure that the overall fee is fair to Podhurst and *equitable within the class.* *See* Fed. R. Civ. P. 23(h) advisory committee's note (2003).

4. Podhurst's conclusory contention that it "performed a substantial amount of work" for Kevin Turner unrelated to the substantial common-benefit work Podhurst performed for all class members is not supported by evidence cited in Podhurst's Response or elsewhere and is irreconcilable with the record, which instead reveals that any work performed by Podhurst for Kevin Turner unrelated to its common-benefit work was *de minimus*. As explained below, Podhurst has failed to and cannot justify as reasonable, fair, or equitable an additional $1.25 million from the Turner Estate's $5 million Monetary Award.

5. In attacking its own client's legal and factual positions, Podhurst has submitted with its Response a declaration from Professor Charles Silver (the "Silver Declaration"). *See* ECF No. 7071, Exhibit A. The Silver Declaration should be reviewed, if at all, with the same level of scrutiny—perhaps greater scrutiny under these circumstances—that would apply to any expert proffering opinions in support of the client who hired him. In this case, neither Podhurst nor Mr. Silver reveals how or on whose behalf Mr. Silver was engaged to offer his opinions, nor do they indicate how and what Mr. Silver is being paid and by whom. In all respects, the Silver Declaration is biased advocacy for Podhurst's position, filled with legal opinions (thereby encroaching on the province of the Court), and does not provide a neutral analysis of the law in this area, which perhaps may have been more useful to the Court.

6. Podhurst's Response makes clear that any work ostensibly performed "individually" for Kevin either was nominal or was in fact work performed for the class. For example, Podhurst acknowledges that Kevin was not retained as a client until January 18, 2012. Yet, only two days later, on January 20, 2012, Podhurst "[a]fter having thoroughly investigated and researched potential claims against the NFL, . . . originally filed suit on Kevin's behalf in the U.S. District Court for the Southern District of Florida." ECF No. 7071 at 5. The complaint Podhurst filed, attached to Podhurst's Response as Exhibit C, is a ninety-nine (99) page complaint on behalf of ninety-nine (99) former players. Kevin is the 95th player listed. The entire universe of allegations relating specifically to Kevin is confined to five (5) paragraphs on half a page, and consist only of the following bare-bone contentions: that he played in the NFL from 1992–1999, he sustained approximately two (2) diagnosed and multiple undiagnosed concussions, he returned to play too soon, at no time did the NFL warn him of the risks and, as a result of his concussions, Kevin was suffering from ALS. ECF No. 7071, Exhibit C. at ¶ 684−688. This is hardly the product of rigorous research and investigation – *i.e.*, $1.25 million worth – on Kevin's behalf undertaken over the preceding forty-eight hours.

7. Podhurst's description of efforts by affiliated attorneys and staff to consult with Kevin's doctors and obtain copies of his medical records likewise disclose, at best, a *de minimus* investment of time and effort.

8. Similarly, Podhurst's description of its representation of Kevin in his "individual case," which included accompanying him to speaking events, coordinating with Kevin's other attorneys handling a worker's compensation case, media events, and the like, all relate to Podhurst's efforts to self-promote and strengthen its stable of claims against the NFL generally, not individually on behalf of Kevin. The fact that Kevin Turner was selected by Class Counsel

4

to be front and center on the media stage and in connection with other promotional events was hardly serendipitous, and evidences the fact that his public presence and advocacy was for the benefit of the claims and the class as a whole, not Kevin individually.

9.	Podhurst provides *no* time records (*i.e.*, none) or other quantitative information about its purported work for Kevin in his "individual case," much less information sufficient to justify the "reduced" bite ($1.25 million) it seeks to take from the Turner Estate's Monetary Award. The Turner Estate submits that there are no reasonably conceivable circumstances under which an additional fee award of $1.25 million carved from the Turner Estate's Monetary Award could be deemed fair or equitable within the class.

## **REPLY ARGUMENT**

**I.	This Court has jurisdiction over Podhurst and the authority to set aside Kevin Turner's Retainer Agreement with Podhurst upon a determination that it will yield an unreasonable fee.**

10.	Whether the 2012 Retainer Agreement would be enforceable if Kevin Turner had opted out of this class action and Podhurst pursued and obtained an individual recovery for Kevin is not in dispute, for the simple reason that this did not occur. Instead, Kevin's prior, individual case was dismissed with no recovery. What did occur (as described in the Motion) is Class Counsel informed Kevin of settlement negotiations with the NFL Parties and asked him to serve as a Class Representative. After consulting with Class Counsel, Kevin agreed to accept the terms offered in the Settlement Agreement and serve as a Class Representative, and Podhurst agreed to serve as Class Counsel under the terms of the Settlement Agreement. When the Court compares the *de minimus* work Podhurst performed individually on behalf of Kevin to the common benefit work as Class Counsel and for which it will be richly compensated by the NFL Parties under the terms of the Settlement Agreement, the Court then will be called upon to

determine a fee that is fair.  Fairness and equity within the class mandate that the 2012 Retainer Agreement be set aside.

        **A.**        **The Turner Estate's position does not conflict with Third Circuit precedent.**

        11.        Podhurst acknowledges controlling Third Circuit precedent, *Dunn v. H.K. Porter*, 602 F.2d 1105 (3d Cir. 1979), holding that this Court has the authority to completely set aside a private contingent fee agreement with class members in connection with a class-wide settlement. *See* ECF No. 7071 at 10.  To avoid any misconception that the Turner Estate is contending that the 2012 Retainer Agreement is "superseded" or rendered "inoperative as a matter of law" by the terms of the class action Settlement Agreement, the Turner Estate recognizes that it is a matter for this Court to determine under the law, Court rules, and the facts and circumstances of this class action settlement whether the 2012 Retainer Agreement should be set aside.

        12.        The Third Circuit in *Dunn* emphasized that the Court may set aside contingency fee agreements whenever the contingent fee agreement yields an unreasonable fee, *Dunn*, 602 F. 2d at 1108−09; *see also In re Michaelson*, 511 F.2d 882, 888 (9th Cir.), *cert. denied*, 421 U.S. 978, 95 S. Ct. 1979, 44 L.Ed.2d 469 (1975)), or to protect the client from excessive fees, *Farmington Dowell Products Co. v. Forster Manufacturing Co.*, 421 F.2d 61, 87 (1st Cir. 1969).

        13.        In a class action setting, as here, Fed. R. Civ. P. 23(h) provides: "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."

        14.        The Advisory Committee's Notes indicate that Rule 23(h)'s use of the term, "parties' agreement" does not refer to retainer agreements between class representatives and class counsel, but rather to agreements between class counsel and the defendants.  Newberg on Class Actions § 15:74 (5th ed.).  Further, the Rule 23(h) the Advisory Committee Notes state:

> In determining a fee for class counsel, the Court's objective is to ensure an overall fee that is fair for counsel and equitable within the class. In some circumstances individual fee agreements between class counsel and class members might have provisions inconsistent with those goals, and the court might determine that adjustments in the class fee award were necessary as a result.

Fed. R. Civ. P. 23(h) advisory committee's note (2003).

15. Podhurst is expected to seek a significant portion of the $112.5 million settlement fund paid by the NFL Parties, and wants to top it off by an additional 25% of the Turner Estate's Monetary Award. This aggregate amount is not authorized by and is contrary to the parties' Settlement Agreement, and if permitted it would yield an unreasonably excessive fee that is not equitable within the class.

16. Podhurst's reliance on *Lindy Brothers Builders of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973) ("*Lindy I*") and *Lindy Brothers Builders of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir. 1976) ("*Lindy II*") is misplaced. *Lindy I* and *Lindy II* involved a settlement agreement payment from a common fund for the plaintiffs. *See Lindy II*, 540 F.2d at 111. The litigation was not resolved as a Rule 23 class action; rather, the settlement was reached before there was a formal and final class certification. *Id*. at 112.

17. The Turner Estate and Podhurst agree that this Court is empowered under *Dunn* and its progeny to set aside Podhurst's 2012 Retainer Agreement with Kevin Turner. Counsel and client disagree, however, on the factors to be considered by the Court in exercising this authority. The Turner Estate contends that the Court's focus should be on the terms of the Settlement Agreement agreed to by the parties and approved by this Court, the reasonableness of the overall fee Podhurst seeks to receive, and whether the fee allowed is equitable within the class. Podhurst, by contrast, urges the Court to consider as factors only the manner in which the 2012 Retainer Agreement was entered, the status and sophistication of the plaintiff, whether it

7

was entered into before or after the institution of the suit, and misconduct on the part of the lawyers. ECF No. 7071 at 11. Under Podhurst's construct, the Court effectively is asked to set aside its fiduciary responsibility to ensure that the aggregate fee to be received by any member of the Class Counsel group (which indisputably includes Podhurst) is reasonable, not excessive, and equitable to the class members.

### B. The Turner Estate's Motion is distinguishable from district court decisions involving complex litigation settlements cited by Podhurst.

18. The recent district court decisions Podhurst cites are distinguishable because they either do not involve fee disputes with class counsel, or the settlement agreement terms in these other district court decisions are materially different from the terms of the 2012 Retainer Agreement Podhurst relies on.

19. Both *In re Diet Drugs Prod. Liab. Litig.*, No. MDL 1203, 2011 WL 722217 (E.D Pa. Feb. 25, 2011) and *In re Diet Drugs,* No. CIV.A. 99-20593, 2004 WL 1243736 (E.D. Pa. June 4, 2004) involved applications for fee awards by attorneys who were not class counsel. Additionally, in those cases the class action settlement agreement specified the percentage that would be deducted from any individual attorney's fee award to account for the common benefit fee award paid to class counsel.

20. In the Settlement Agreement in this action, Article XXI provides that the NFL Parties will pay class attorneys' fees and reasonable costs. Further, Article XXI provides that Class Counsel will be entitled to petition the Court for an award of class attorneys' fees and costs, and the NFL Parties agree not to oppose or object to such petition, up to $112.5 million. Finally, Article XXI provides that Class Counsel may receive *up to* an additional five percent (5%) of each Monetary Award, conditioned on a demonstration that the additional amount is

justified and subject to Court approval. Although this Article recognizes that a class member's individual counsel must deduct the amount of this "set-aside" of up to 5% from their fees, it certainly does not provide for Podhurst, a member of the Court-appointed Class Counsel, to receive an additional 25% of Kevin Turner's Monetary Award.

21. Podhurst cannot with a straight face contend that it seeks this additional 25% fee solely in its purported capacity as "individual counsel" when, in fact, it agreed to be Class Counsel, subject to the terms of this Settlement Agreement. Taken to its logical extreme, this could result in an additional $100 million or much more being paid to Class Counsel from the Class Members, in addition to the $112.5 million that will be paid to Class Counsel from the NFL Parties, if a substantial number of the Class Members have their Monetary Award claims handled by Class Counsel, and not by separate individual counsel. Surely, the Settlement Agreement cannot be interpreted to permit such a recovery by Class Counsel. And, indeed, not all Class Counsel even appear to agree with Podhurst's extreme position on this Motion, given the lack of support in response from several other members of Class Counsel.

22. Under the terms of the Settlement Agreement, if Class Counsel collectively believe that a reasonable aggregate fee for their efforts is $200 or $300 million, they are free to seek such an amount to be paid by the NFL Parties, not from the Class Members, subject to Court approval. Naturally, Class Counsel are not likely to seek a fee award in excess of $112.5 million, because that presumably would draw opposition the NFL Parties. They should not be permitted to do what Podhurst is attempting to do: extract in a back-door fashion additional fees from a now deceased Class Representative, despite the 5% cap on set-asides from Monetary Awards in the Settlement Agreement, for the efforts of Class Counsel.

23. Another critical element (nowhere acknowledged by Podhurst in its Response) that distinguishes the two *In re Diet Drugs* cases from this one is the fact that they involve fee petitions *by non-class counsel attorneys*. Additionally, the plaintiffs in each of those cases, like here, had signed contingency fee agreements and later died. Podhurst, like counsel in the *In re Diet Drugs* cases, must comply with the additional requirements of Rule 41.2 of the Local Rules of Civil Procedure for the United States District Court for the Eastern District of Pennsylvania, under which the Court is charged with a fiduciary duty to protect the interests of the estate in connection with the award of any counsel fee from estate funds. *See In re Diet Drugs*, 2011 WL 722217 at *1; *In re Diet Drugs*, 2004 WL 1243736 at *2.

24. Although *Martens v. Smith Barney, Inc.*, No. 96 CIV. 3779 (JGK), 2003 WL 21543506 (S.D.N.Y July 9, 2003), did involve a case where class counsel was permitted to recover fees in addition to the common benefit fee, *that additional fee expressly was provided for in the settlement agreement in that matter:* "Nothing in the Settlement Stipulation will prohibit any attorney (including class counsel) from entering into a fee agreement with any Claimant." *Id*. at *8. Accordingly, *Martens* involved settlement fee provisions dissimilar and therefore irrelevant to the fee provisions contained in the Settlement Agreement here. Additionally, the fee provision in *Martens* was justified by the unique circumstances of that case, because the settlement regime there imposed a complex and burdensome proof of claim process, requiring as a prerequisite to recovery the presentation of substantial proofs and related proceedings. By contrast, the settlement regime in this case involves a decidedly streamlined claim process that will be handled by a third-party administrator. The Estate believes that, under that process, it will be first in line to administratively receive its payment.

25. Podhurst's discussion of *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 290 F. Supp. 2d 840 (N.D. Ohio 2003) likewise omits the main thrust of the court's holding. That case did *not* involve contingency fee agreements with class counsel; it involved "the recurring contingent attorney fee problem" involving *non-class counsel attorneys obtaining contingent fees from class members*, contrary to the terms of the settlement agreement and claim administration procedures previously established by the court. *Id.* at *842. Further, the court was concerned about the ethical issues which prohibit an attorney from charging "in excess of a reasonable fee." *Id.* at *850. In fact, as a result of the "recurring contingent attorney fee problem" identified in the *In re Sulzer* case, the court entered an order prohibiting the enforcement of certain contingency fee agreements and requiring the disgorgement of fees deemed to be unreasonable. *Id.* at *856.

26. *Fanning v. Acromed Corp.*, No. 1014, 2000 WL 1622741 (E.D. Pa. Oct. 23, 2000), is likewise distinguishable. *Fanning* involved the resolution of multiple fee petitions relating to a $100 million common benefit settlement fund. Under the terms of the settlement agreement, the attorneys on the Plaintiffs' Legal Committee ("PLC") were to receive as fees 12% of the settlement fund, to be allocated in proportion to the work performed. Some of the attorneys on the PLC submitted fee petitions to obtain compensation for hours they expended before the PLC was created and not included in the PLC joint fee petition for the common benefit 12% award. The court *denied* the fee petitions.

27. Podhurst contends that the circumstances in *Warnell v. Ford Motor Co.*, 205 F. Supp. 2d 956 (N.D. Ill. 2002) "bear no resemblance to this case." ECF No. 7071 at 17. The contrary is true:

11

- The settlement agreement approved by the court involved a $12 million settlement fund with $9 million available solely for class members and a separate $3 million fund available for class counsel fees.

- A fee dispute arose over class counsels' anticipated efforts to collect and retain a contingency fee payment from the named class representative in addition to the fees class counsel received from the separate $3 million paid by the defendant for class counsel fees.

- The court held that class counsel's collection of a contingency fee from the class representative "directly contradicted" the terms of the settlement agreement the court approved which stated that class counsel's fee shall not be paid out of the separate settlement fund for the class members.

- Class counsel's contingency fee agreements were not enforceable because they were not disclosed to the court at the time of settlement approval or the fee award.

- Finally, the court stated that it "would never have approved a settlement that required the named plaintiffs to shoulder the burden of their attorneys' fees to a significantly greater extent than the rest of the class where the class got a significantly greater benefit."

*Warnell*, 205 F. Supp. 2d at 958−59, 961−62.

28. In fact, the only discernible distinction between this case and *Warnell* is that the Turner Estate, through its Motion, brought to the Court's attention Class Counsel's intention to extract a 25% contingency fee from the Turner Estate's Monetary Award before Podhurst actually succeeded in taking the money. Aside from that, however, the inequity, ethical conflicts

12

and conflict between the extra fee sought by class counsel from the named plaintiff and the terms of the settlement agreement are identical.

29. Podhurst asserts that "the long-form notice approved by the Court and sent to all class members makes clear that privately retained attorneys will be retained under retainer agreements." ECF No. 7071 at 18 (citing Long-Form Notice at ¶ 16, ¶ 33). However, Podhurst recites only the portions of the notice that pertain to *contingency fee agreement with non-class counsel.* The portion of ¶ 33 pertaining to Class Counsel, which Podhurst omits, states: "The Court has appointed a number of lawyers to represent all Class Members . . . . They are listed at the end of this Notice with their contact information. **You will not be charged for contacting these lawyers.**" Long-Form Notice at ¶ 33 (emphasis added). Also omitted from the Response is ¶ 34 of the notice, which states in relevant part: "At a later date to be determined by the Court, Co-Lead Class Counsel, Class Counsel and Subclass Counsel will ask the Court for an award of attorneys' fees and reasonable costs. . . . These fees and incurred costs will be paid separately by the NFL Parties and not from the . . . Monetary Award Fund." Long-Form Notice at ¶ 34.

30. Both this Court and the Third Circuit have determined that the class notice is sufficient and satisfied due process. In addressing disclosure of Class Counsel's attorneys' fees, the Third Circuit understood as well the source of Class Counsel's fees:

> The notice advised that the NFL would pay attorneys' fees from a separate fund and not object to an award up to $112.5 million and that the District Court would consider fees after final approval and afford players an opportunity to object. From this, Class Members knew from where the fees for Class Counsel were coming (a separate fund), what the NFL's position would be (no objection up to $112.5 million) and could ballpark the size of counsel's eventual fee request (a betting person would say it will be close to $112.5 million).

*In re NFL Players Concussion Injury Litigation*, 821 F.3d 410, 446 (3d Cir. 2016).

31. Individually, Kevin Turner only was ever represented by Podhurst, which was appointed Class Counsel in this matter. Kevin Turner was not represented by individual counsel

13

in connection with the class settlement proceedings. Thus, the arguments raised by Podhurst have no bearing on the fee dispute between the Turner Estate and Podhurst now before the Court. Podhurst should receive a reasonable fee that is fair to Podhurst and equitable to the class, paid out of the $112.5 million Attorneys' Fees Qualified Settlement Fund provided by the NFL Parties, in accordance with the terms of the Settlement Agreement and consistent with this Court's application of the law, equity and Court Rules.

### C. Both the proper application of Rule 23 and the terms of the Settlement Agreement support the Turner Estate's Motion.

32. Podhurst relies upon a Declaration submitted by Professor Charles Silver stating that there is nothing in Rule 23 that would permit setting aside a retainer agreement between class members and their individual attorneys. The Silver Declaration should be given little if any weight. First, it states legal conclusions that should be disregarded as improper incursions into the exclusive province of the Court. *See Witt v. Chesapeake Exploration, L.L.C.*, 2011 WL 2790174, at *2−3 (E.D. Tex. 2011) (granting defendant's motion to exclude Professor Silver from testifying at a certification hearing because his report contained impermissible legal conclusions).

33. Second, Professor Silver does not disclose the circumstances of his engagement; however, the Court fairly may infer that he was retained by Podhurst as its hired expert. Professor Silver's analysis of the law and tunnel vision-view of the facts reveal an inherent bias and call to question the reliability of his opinions.

34. Although Professor Silver purports to convey a thorough review of Rule 23 and the absence of any guidance from the Advisory Committees Notes as to whether class counsel's contingency fee agreements can be reduced or set aside, he omits any reference to the Advisory

Committees Notes that are directly on point. *Cf. supra* Part I.A. His Declaration is, therefore, facially deficient and poorly conceived.

35. Most damning, in discussing the Advisory Committee Notes to Rule 23(h), Professor Silver misleadingly opines that the exclusion of contractual fees from its scope can be inferred from a particular passage. To the contrary, the Advisory Committee Notes explicitly reference individual fee agreements between class counsel and class members, noting that they might have provisions inconsistent with the goals of ensuring that the overall fee to class counsel is fair and equitable within the class, and that the Court might determine that adjustments in the class fee award is necessary. *See supra* Part I.A.

36. While the Silver Declaration selectively lists a number of cases in which he offered opinions on fees, his opinions have not been universally accepted. *See, e.g.*, *Witt*, 2011 WL 2790174. In fact, in another case Professor Silver proffered an expert opinion supporting a class counsel fee award in approval proceedings, specifically urging the court to enforce the lead plaintiff's contingent fee agreement with class counsel. *See In re UnitedHealth Group Incorporated PSLRA Litigation*, 643 F. Supp. 2d 1094 (D. Minn. 2009). In applying Fed. R. Civ. P. 23(h), however, the court rejected Professor Silver's proffered expert opinion, stating: "Seldom has the groves of academe and the ivory towers sheltered within their leafy bowers seemed farther from reality." *Id*. at 1102.

37. As in *In re UnitedHealth Group Incorporated*, Professor Silver's sketchy and facially biased opinion smacks of an alternative reality. The fee Podhurst will receive as Class Counsel from the $112.5 million Attorneys' Fees Qualified Settlement Fund will more than fairly compensate Podhurst for the effort it expended in this litigation; an additional $1.25 million from the anticipated $5 million Turner Estate recovery would result in an

unreasonable fee, an inequity to the figurehead Class Representative who perhaps more than any other representative plaintiff brought value and credibility to the settlement process, and would be manifestly inequitable to the class.

## II. Setting aside the 2012 Retainer Agreement between Podhurst and Kevin Turner while awarding an overall class fee to Podhurst that is fair to Podhurst and equitable within the class will not create problematic incentives in Class Action and Mass Tort Litigation.

38. Podhurst's suggestion (supported by the Silver Declaration) that resolving the Motion in favor of the Turner Estate would be bad policy in that plaintiffs' lawyers will be deterred from taking similar cases in the future is not compelling. *See* ECF No. 7071 at 20−21.

39. As this reply has attempted to clarify, it is not the Turner Estate's position that all contingent fee agreements in this action are unenforceable. Reasonable contingent fee agreements between Class Members and attorneys who are not also Class Counsel may be enforceable to provide reasonable compensation to those attorneys for services they have provided to Class Members.

40. At issue in this motion is the 2012 Retainer Agreement between Kevin Turner and Podhurst, which Podhurst now is seeking to enforce against the Turner Estate by extracting an additional fee equal to 25% of the anticipated Monetary Award to be received by the Turner Estate.

41. The reality of "a decision in the Turner Estate's favor" is that Podhurst will not be able to recover $1.25 million from the Turner Estate, but Podhurst still will be entitled to receive a fee, which surely will be more than fair to Podhurst, from the $112.5 million Attorneys' Fees Qualified Settlement Fund in what has been coined a "landmark" class action recovery.

42. Given the magnitude of the Attorneys' Fees Qualified Settlement Fund and the streamlined claim process envisioned by the settlement regime, resolving this Motion in favor of

the Turner Estate would hardly present a scenario likely to deter future litigation. In fact the lodestar multiplier of Podhurst's recovery of its portion of the $112.5 million fee fund should be substantial, and tremendously incentivizing.

### III. The Locks Law Firm agrees that the enforceability of the terms of the 2012 Retainer Agreement between Podhurst and Kevin Turner is a matter for Podhurst, the Turner Estate and this Court to resolve.

43. The Locks Law Firm (the "Locks Firm") acknowledges that the enforceability, if any, of the 2012 Retainer Agreement between Kevin Turner and Podhurst is a matter about which the Locks Firm has no knowledge. *See* ECF No. 7072 at 1.

44. It should be noted that, of the other five (5) Class Counsel firms, only the Locks Firm filed a joinder brief, but it is addressed principally to the enforceability of its own contingent fee agreements with its clients, and not the Podhurst 2012 Retainer Agreement at issue in this Motion.

45. On the understanding that the Locks Firm is making no claim on the Turner Estate's Monetary Award, the Turner Estate takes no position with respect to the fees the Locks Law Firm may receive in accordance with the terms of the settlement agreement. Accordingly, any fee-related or other issues between the Locks Firm and its clients are not within the purview of this Motion.

### CONCLUSION

For these reasons, the Turner Estate, through Paul Raymond Turner, respectfully requests (a) that the Court resolve the attorney fee dispute between the Turner Estate and Class Counsel at Podhurst in its favor so that the Turner Estate will be able to recover the full Monetary Award provided under the Class Action Settlement Agreement; and (b) that the Court allow R. Montgomery Donaldson, Robert A. Penza, and P. John Brady of Polsinelli PC to serve as

counsel for the Estate for the remainder of the case and for the purposes of submitting a claim and collecting the Monetary Award.

>Respectfully submitted,
>
>*/s/ R. Montgomery Donaldson*
>R. MONTGOMERY DONALDSON   (PA #63400)
>ROBERT A. PENZA (*pro hac vice* motion pending)
>**POLSINELLI PC**
>222 Delaware Avenue
>Suite 1101
>Wilmington, Delaware  19801
>(302) 252-0920
>(302) 252-0921 (FAX)
>rmdonaldson@polsinelli.com
>rpenza@polsinelli.com
>
>P. JOHN BRADY (*pro hac vice* motion pending)
>**POLSINELLI PC**
>900 W 48th Place
>Suite 900
>Kansas City, Missouri  64112-1895
>(816) 753-1000
>(816) 753-1536 (FAX)
>jbrady@polsinelli.com
>
>ATTORNEYS FOR ESTATE OF KEVIN TURNER

## **CERTIFICATE OF SERVICE**

I, R. Montgomery Donaldson, hereby certify that on the 30th day of January, 2017, a true and correct copy of the above and foregoing was filed using the CM/ECF System, which caused notice to be sent to all counsel of record.

>*/s/ R. Montgomery Donaldson*