# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re:  National Football League Players' Concussion Injury Litigation | * * * * * * * * * * | No. 2:12-md-02323-AB<br><br>MDL NO. 2323<br><br><br>HONORABLE ANITA B. BRODY<br><br>Civ. Action No. 14-00029-AB |

## DECLARATION OF MATTHEW L. GARRETSON

I, Matthew L. Garretson, hereby declare as follows:

1. I am an adult over twenty-one years of age and am competent to testify to all matters contained herein. I am the Founder and Chief Executive Officer of The Garretson Resolution Group, Inc. ("GRG") and am an attorney licensed to practice law in the State of Ohio. I have personal knowledge of the facts set forth herein and if called and sworn as a witness, I could and would testify competently thereto.

## BACKGROUND

2. On May 8, 2015, this Court entered its Amended Final Order and Judgment in this action. In the order, the Court certified the Settlement Class and Subclasses under Federal Rule of Civil Procedure 23 and approved the Settlement Agreement. (ECF No. 6534 ¶¶ 2, 7.) It also ordered the Parties "to implement each and every obligation set forth in the Settlement Agreement in accordance with the terms and provisions of the Settlement Agreement" (*id.* ¶ 9) and, to further the implementation of the Settlement Agreement, confirmed, among other things, the appointment of GRG as the Lien Resolution Administrator (*id.* ¶ 13).

3. GRG is a pioneer in the development of healthcare lien resolution programs in mass torts and class actions, and its programs have become the model for managing thousands of claims fairly, uniformly, and in a cost-effective fashion. GRG has established relationships with a myriad of federal, state, private, and statutory lien holders and is able to leverage large volumes of claims, standardized procedures, subject matter expertise, and proprietary technology to achieve fair repayment amounts while also meeting statutory obligations and ensuring that class members' future benefits are protected.

4. In recognition of the value GRG's lien resolution programs deliver to settling claimants, GRG has been recommended by settling parties, and has been appointed by federal judges, to serve as Lien Resolution Administrator in numerous personal injury settlements, including, among others, the Vioxx, Avandia, Medtronic, Guidant, and Zyprexa multidistrict litigation settlements. *See, e.g.*, *In re: Vioxx Prod Liab. Litig.,* Case No. 2:05-md-1657, ECF No. 62787 at 2 (E.D. La. Apr. 1, 2011); *In re Avandia Marketing, Sales Prac., and Prod. Liab. Litig*, Case No. 2:07-md-1871, ECF No. 690 (E.D. Pa. June 11, 2010); *In re: Medtronic, Inc. Implantable Defibrillators Prod. Liab. Litig.,* 0:05-md-1726, ECF No. 744 (D. Minn. Feb. 27, 2008); *In re: Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.,* Case No. 0:05-md-1708, ECF No. 2526 (D. Minn. Dec. 17, 2007); *In re Zyprexa Prod. Liab. Litig.*, Case No. 1:04-md-1596, ECF No. 746 (E.D.N.Y Sept. 11, 2006). As Judge Jack B. Weinstein noted of GRG's work in *In re Zyprexa*, "The settlement techniques utilized in the instant litigation may provide a model for handling Medicare and Medicaid in future mass actions on a uniform, national basis." *In re Zyprexa*, Case No. 1:04-md-1596, ECF No. 746 at 12 (Weinstein, J.). GRG is bringing the same techniques and expertise to bear in discharging its responsibility as the Lien Resolution Administrator and in doing so will confer significant benefits upon Settlement Class Members.

## HEALTHCARE LIEN RESOLUTION ACTIVITIES

### Settlement Class Members' Obligation to Reimburse Their Insurers

5. Ensuring proper verification and resolution of healthcare Liens is a critical component of nearly all personal injury settlements. Depending on the type of insurance the claimant has, the claimant may be obligated under federal or state law or the terms of a private health insurance plan to repay his insurer from his settlement proceeds if the insurer paid for or provided medical treatment related to the injury for which the class member is being compensated. With the complexity and nuances of resolving these obligations growing at an exponential rate, ensuring compliance and achieving favorable results has become increasingly difficult in recent years. Moreover, failing to correctly address healthcare Lien obligations can have serious consequences for the claimant. The claimant could incur interest on his repayment obligation, he could be sued directly by the lienholder, and he could have his future healthcare coverage denied. Properly resolving healthcare Liens is therefore of vital importance.

6. This imperative applies with full force here. The medical treatment commonly associated with the Qualifying Diagnoses is likely to result in substantial Liens and reimbursement claims from healthcare insurers such as Medicare, Medicaid, and other governmental and private insurers. Failing to address these Liens could result in accrued interest and lawsuits that could materially deplete the Monetary Awards and Derivative Claimant Awards of the Settlement Class Members. Furthermore, given the nature of the conditions at issue in this settlement, the Retired NFL Football Players are likely to incur significant future healthcare costs, making it critical that their future healthcare coverage is preserved. Ensuring that the Settlement Class Members' Liens are properly resolved is necessary to prevent these adverse consequences.

7.      GRG's work as the Lien Resolution Administrator will do just that.  GRG has full scope subject matter expertise, established relationships with federal, state, private, and statutory lienholders, strict audit procedures and information technology systems capable of tracking claims across various Lien types, and medical claims specialists with in-depth billing and coding experience.  By leveraging these resources for the Settlement Class Members, GRG will be able to maximize Settlement Class Members' net recovery, accelerate the resolution timeframes, and ensure their future healthcare benefits are preserved.

**GRG's Responsibilities as the Lien Resolution Administrator**

8.      The Settlement Agreement charges GRG, as the Lien Resolution Administrator, with the following responsibilities, among others:

    a.   "administer[ing] the process for the identification and satisfaction of all applicable Liens, as set forth in Section 11.3" (ECF No. 6481-1, Settlement Agreement § 11.1(b)), which includes:

        i.   fulfilling all state and federal reporting obligations (*id.* § 11.3(c)(iii)),

        ii.  "[s]atisfy[ing] Lien amounts owed to a Governmental Payor or, to the extent identified by the Class Member pursuant to Section 11.3(a), Medicare Part C or Part D Program sponsor for medical items, services, and/or prescription drugs" (*id.* § 11.3(c)(iv)), and

        iii. "[t]ransmit[ting] all information received from any Governmental Payor or Medicare Part C or Part D Program sponsor pursuant to such authorizations (i) to the NFL Parties, Claims Administrator, and/or Special Master solely for purposes of verifying compliance with the MSP Laws or other similar reporting obligations and for verifying satisfaction and full discharge of all such Liens" (*id.* § 11.3(c)(v)).

9.      As set forth below, GRG has made significant progress in fulfilling its duties and responsibilities under the Settlement Agreement for the benefit of Settlement Class Members. GRG has already reached agreements with CMS that establish defined parameters for satisfying

4

and discharging CMS' Medicare Part A and/or Part B fee-for-service Medicare Secondary Payer ("MSP") recovery claims, protect Retired NFL Football Players' future Medicare benefits, and ensure equitable repayment amounts. In addition, GRG is making great strides in establishing uniform and efficient processes to identify and resolve healthcare Liens and reimbursement claims that may be associated with a Settlement Class Member's settlement award through coordination with other entities, such as the individual state Medicaid agencies and other healthcare payors and providers. As explained in more detail below, GRG anticipates that its efforts will result in meaningful reductions in the amounts the Settlement Class Members will have to pay to satisfy the Liens these entities may assert against the Settlement Class Members' Monetary Awards and Derivative Claimant Awards.

**Medicare Part A & Part B Resolution**

10. With respect to Medicare Part A and Part B, the Settlement Agreement provides, among other things, that the Lien Resolution Administrator shall undertake to obtain an agreement in writing with CMS that "[e]stablishes a global repayment amount per Qualifying Diagnosis and/or for all or certain Qualifying Diagnoses for Settlement Class Members who are or were beneficiaries of the Medicare Program, or, alternatively, otherwise sets forth a conditional payment resolution process." (*Id.* § 11.3(c)(ii)(1).) To this end, GRG has obtained CMS' agreement to globally resolve its Medicare Part A and/or Part B fee-for-service MSP recovery claims for some Qualifying Diagnoses, to individually resolve those claims for the rest of the Qualifying Diagnoses, and to not assert a recovery claim against the BAP Fund or the Education Fund.

11. More specifically, CMS has agreed to a global resolution methodology and associated fixed global repayment values to satisfy Medicare's Part A and/or Part B fee-for-

5

service MSP recovery claims associated with Medicare-entitled Settlement Class Members who receive Monetary Awards for a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment and/or Level 2 Neurocognitive Impairment, which are expected to be the most frequent Qualifying Diagnoses. The global repayment values are based on the clinical guidelines for the routine standard of care associated with the applicable Qualifying Diagnosis. Global resolution programs are proven to deliver numerous practical benefits to Settlement Class Members. These benefits include, among others, (1) ensuring similarly situated Settlement Class Members achieve similar outcomes and fair repayment amounts, (2) ensuring compliance with federal Medicare statutes and regulations, (3) avoiding disbursement delays normally associated with pulling and auditing Medicare's conditional payments on a case-by-case basis, and (4) ensuring that Medicare will not deny Settlement Class Members coverage for any future medical expenses they might incur in connection with the relevant Qualifying Diagnoses.

12.  With respect to Medicare-entitled Settlement Class Members who receive a Monetary Award in connection with a Qualifying Diagnosis of Alzheimer's Disease, Parkinson's disease, Death with Chronic Traumatic Encephalopathy, or Amyotrophic Lateral Sclerosis (also known as Lou Gehrig's Disease), CMS has agreed to resolve its MSP recovery claims through an individual expenditure-based process. Under this process, GRG will secure claims from the Medicare Program on an individual basis to identify the exact amounts the Medicare Program has paid on behalf of a Settlement Class Member. GRG will then audit each claim to ensure that only medical expenses related to the compensable injury from the date of injury through the date of settlement are included in the repayment obligation. In an effort to optimize the outcome for Settlement Class Members whose Medicare reimbursement obligations GRG will resolve through this expenditure-based process, GRG has established procedures designed to reduce time

6

delays to the extent possible and to ensure a detailed review of all cases to achieve reductions where appropriate.

13. Finally, GRG has secured CMS' agreement to not assert an MSP recovery claim in connection with Monetary Awards of Retired NFL Football Players where the Retired NFL Football Player's last Eligible Season ended prior to December 5, 1980.[1]  CMS has further agreed to not separately assert an MSP recovery claim against Medicare-entitled Derivative Claimants who receive a Derivative Claimant Award as long as the amount of the Derivative Claimant Award is still included in the gross Monetary Award amount for purposes of resolving CMS' MSP recovery claim for the associated Retired NFL Football Player.

**Medicaid Resolution**

14. With respect to state Medicaid reimbursement obligations, GRG has reached standard protocol agreements with forty-five of the fifty-two state Medicaid agencies to resolve their Medicaid recovery claims through an expenditure-based review process with terms designed to deliver significant advantages to Settlement Class Members that will maximize Settlement Class Members' net recovery.  GRG's standard protocol agreements include a term providing that the amount of each Medicaid agency's recovery claim against a Settlement Class Member will not exceed a specified percentage of the Settlement Class Member's gross settlement award (the "Holdback Amount").  In addition, GRG's protocol agreements include a term providing that each Medicaid agency will automatically reduce the agency's final recovery claim by a specified percentage (the "Offset").

15. Pursuant to its protocol agreement, GRG will first verify whether a Settlement Class Member was a beneficiary of the Medicaid Program in a given state.  If the Settlement Class Member was not a beneficiary of that state's Medicaid Program, GRG will inform the

---

[1] This determination was made in consideration of CMS' August 19, 2014 policy memo.

7

Claims Administrator that no amount needs to be withheld from the Settlement Class Member's gross settlement award to satisfy a reimbursement obligation to that state's Medicaid agency. If the Settlement Class Member was a beneficiary, then GRG will ask the Claims Administrator to withhold the Holdback Amount. Since the Holdback Amount is the maximum amount a Medicaid agency can recover, funds in excess of the Holdback Amount can be disbursed to the Settlement Class Member (subject to holdback amounts established for other Lien types, if applicable to the Settlement Class Member) before the Medicaid lien resolution process is finished, allowing the Settlement Class Member to receive his or her funds earlier than he or she would if GRG's protocol agreement were not in place.

16. For those Settlement Class Members who received Medicaid benefits, the Medicaid agency will provide GRG with the itemized claims for which the Medicaid agency is seeking repayment. GRG will then conduct an audit of those claims to ensure that only medical expenses related to the applicable Qualifying Diagnosis or Qualifying Diagnoses are included in the Medicaid agency's recovery claim. Once a final claim amount is established, GRG will apply the Offset to that amount and will compare the result with the Holdback Amount. A Settlement Class Member's final reimbursement amount will be the lesser of the Holdback Amount or the final claim amount after applying the Offset. GRG will facilitate the satisfaction of the Medicaid agency's interest by ensuring that payment of the final reimbursement amount for the Settlement Class Member is made from the Settlement Class Member's gross settlement award.

17. Finally, GRG is pursuing agreements from each of the state Medicaid agencies to not assert a recovery claim against Derivative Claimant Awards. GRG has secured an agreement with some states and is continuing its discussions with the others.

**Allocation of Lien Resolution Administrator's Fees**

18. As an additional benefit to Settlement Class Members in the current matter, the Lien Resolution Administrator's per-claimant fee for verifying which Settlement Class Members are or were entitled to benefits under the Medicare Program and/or Medicaid Program will be paid by the NFL Parties out of the Monetary Award Fund rather than by the Settlement Class Members out of their Monetary Awards and Derivative Claimant Awards. For these verification services to the Settlement Class, the Lien Resolution Administrator will be paid $100.00 from the Monetary Award Fund for each Settlement Class Member, with a maximum payment of $300,000 over the life of the Settlement.

THE DECLARANT SAYS NOTHING FURTHER.

I, Matthew L. Garretson, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on this 25th day of January, 2017.

_____
Matthew L. Garretson