**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIG., | ) ) ) ) | 2:12-md-02323-AB |

**OPPOSITION TO CO-LEAD CLASS COUNSEL'S
PETITION FOR AN AWARD OF ATTORNEYS' FEES
AND ADOPTION OF A SET-ASIDE OF EACH MONETARY AWARD,
AND OPPOSITION TO LAMKENMOLO'S FEE PETITION**

Pursuant to FRCP 23(h)(2), Class member Cleo Miller hereby reiterates his objection to the request for attorney's fees contained in his October 14, 2014 Objection to the Settlement (Document 6213), and files this further opposition to the Fee Petition filed by Co-Lead Class Counsel on February 13, 2017.

I.  **Class Counsel Has Failed To Provide Any Evidence
   of the Value of the Settlement.**

Class Counsel express a preference for having their fee petition evaluated under the constructive common fund method, but they have failed to provide this Court with any evidence of what the current value of the settlement actually is, despite the fact that such information has been available for the past two years. As stated at page 31 of Class Counsel's Memorandum, Subclass 2 consists of retired NFL players who were diagnosed with a Qualifying Diagnosis prior to July 7, 2014. Those claims, and any subsequently approved Death with CTE claims, represent the current value of the settlement. As stated in his 2014 Objection, Mr. Miller has no objection to Class Counsel receiving a fee award of 15% of any amounts actually paid to qualifying Class Members. At the present time, that amount is limited to the amounts currently owed to Subclass 2 class members.

Class Counsel's projection of a $950 million ultimate value of the Monetary Award Fund is based on unrealistic assumptions not borne out by actual class member behavior and experience.  Class Counsel assumed that 90% of all class members who filed individual suits would eventually obtain a Qualifying Diagnosis.  That is not justified based upon the vast majority of class members who filed individual claims, most of whom were not suffering from any Qualifying Diagnosis at the time they filed suit.  Most of those class members suspected that they were suffering from symptoms of CTE, a new disease that was not well-understood and that includes symptoms shared by other diseases.  The expectation of the majority of these players was that a settlement would cover the syndrome referred to as CTE, and that they would be eligible for compensatory damages.  When that did not occur, the vast majority of players who filed suit were left out of any recovery.  The filing of an individual lawsuit had more to do with being recruited by one of the Plaintiffs' firms than it did with actually manifesting symptoms of one of the Qualifying Diagnoses.  Furthermore, many of the lawsuits merely demanded medical monitoring, rather than compensation for a diagnosed disease.

Class Counsel's assumption that 50% of all players who did not file suit will ultimately recover is on even shakier ground.  The NFL does not agree with this incredibly pessimistic forecast.  At a minimum, any valuation of the settlement must await the registration deadline, since at that time the potential universe of claimants may be reduced by 50% or more.  If, for example, only 10,000 of the potential 20,000 class members register by August 2017, the maximum potential payout will fall to $425 million, even based upon Class Counsel's rosy assumptions.[1]  The NFL projected that

---

[1] Class Counsel indicate in their Memorandum that only 30% of the class, or 6100 class members, have registered to date.  Because there is no logical reason why any class member who received the

fewer than 3500 class members will end up having Qualifying Diagnoses, with the vast majority of those having neurocognitive impairment, the lowest compensated Qualifying Diagnosis.

There is no basis for making any fee award to Class Counsel at the current time, in the absence of further information about the amount of settlement funds that are due to be paid to class members who have already obtained Qualifying Diagnoses. In any event, the Court should wait until at least August 7, 2017 before awarding any fees, in order to determine whether the settlement has proved attractive to a sufficient number of retired NFL players to justify Class Counsel's enormous fee request. A low registration percentage would undermine the wildly optimistic projections of potential value currently being promoted by Class Counsel, and indicate that what Class Counsel accomplished is unattractive to a substantial number of their clients, something that must be taken into account in awarding fees.

## II.  Class Counsel's Lodestar is Grossly Inflated, and the Requested Multiplier Is Excessive.

Objector Miller agrees with Class Counsel that this Court should award a fee based upon the value of benefits actually conferred upon the Class under the constructive common fund method, and use the lodestar only as a cross-check. However, some observations about Class Counsel's aggressive lodestar are necessary in order to demonstrate the overreach of their current fee request, and to show how excessive the $112.5 million fee fund was at the time it was negotiated.

---

supplemental notice would wait to register, and the likelihood that a class member will forget to do so increases over time, it is likely given the current numbers that the final number of registrants will be less than 10,000.

Based on the raw numbers, Class Counsel's average hourly rate for all 51,000 of their claimed hours is $784/hour, a grossly excessive figure. This indicates that most of the work in this case was accomplished by high-cost partners rather than associates, and that Co-Lead Class Counsel failed to staff this case efficiently and economically. This is one of the highest average hourly rates ever seen in a class action, and this Court should carefully review Class Counsel's detailed time records to ensure that the case was staffed efficiently, without excessive billing by partners and senior associates for work that could have been accomplished by paralegals.

A more reasonable *average* hourly rate for this case would be $600, which would result in a lodestar of approximately $30 million. This means that the requested fee of $107 million represents a multiplier of 3.56, not 2.56, which is a clearly excessive multiplier for this case. First, Class Counsel negotiated their disproportionate fee back in 2013 at the time of the first settlement, when their collective lodestar was just $15 million or less. At the time it was negotiated, the $112.5 million fee likely represented a multiplier of 7 or more.

Second, all risk of non-payment of fees ceased as of the date of the first settlement. All of the risk of non-payment cited by Class Counsel in their Memorandum relates to defenses the NFL could have asserted while this case was being litigated. After August 29, 2013, when the first settlement was announced, any and all risk for Class Counsel disappeared. Not only were they assured of being paid for their fees up to that point, they had negotiated a preferential payment to themselves of an amount that was 700% or more of their existing lodestars, against which they could continue to bill at astronomical partner rates, with no risk, in an effort to consumer the entire pot.

To the extent that this Court applies a multiplier to Class Counsel's lodestar, it should apply that multiplier only to fees that were incurred prior to August 29, 2013, during which a risk of non-payment attached. All fees incurred after that date, while clearly compensable to the extent necessary to achieve final approval, were not fees that were at any risk of non-compensation, and therefore deserve no multiplier enhancement. It was during this period that the Co-Lead Counsel firms were free to run up their lodestars by top-heavy and redundant billing in an effort to justify their excessive fee request, and therefore this time should be subject to heightened scrutiny.

### III.     All Firms Receiving a Portion of the Common Benefit Attorney's Fees Should Have Their Individual Fee Contracts Voided.

Seeger Weiss has appropriately waived any fees and expenses from class members whom the firm represents on an individual basis, as it should, since the requested common benefit fees already represent a 3.5 multiplier on their reasonable lodestar, which would more than cover any additional work that remains to be done shepherding class members' claims through the MAF.[2] However, disappointingly, other firms are not following suit, and are asserting their right to take up to 40% of their clients' awards, even though any common benefit fee award will make them more than whole for any fees they have incurred on their individual clients' behalf.

Cleo Miller incorporates and endorses the previously filed Estate of Kevin Turner's Motion to Resolve Attorney Fee Dispute (Document 7029), which makes many cogent points about the fundamental unfairness of taking the highest fees from the awards

---

[2] Class Counsel cannot defend its claims to up to 40% of individual class member awards based upon the work they will have to do filling out the claims forms. That work is almost entirely paralegal work, and can be accomplished for a few thousand dollars of clerical worker time. After all, Class Counsel has represented that the claims process was designed to be simple and straightforward enough that the class members can submit claims without the need to hire a lawyer. Any assistance in completing the claims process that law firms provide cannot possibly serve as a justification for taking an additional 40% of the awards.

5

of those class members who stepped forward early on, and who did the most to help achieve the settlement for all of the other class members, while players who did not file lawsuits, but who qualify for a settlement payment in the future, will receive up to 40% more than the CTE pioneers.  Taking 40% of individual players' awards, after having been made more than whole by the common benefit fee awards, is unconscionable.

While a 40% fee agreement may be reasonable in a case that must be tried, and then defended on appeal in the event of a plaintiff's verdict, the same cannot be said in a case like this one that almost immediately became an MDL, and that was subsequently settled a little more than a year later.  The Estate of Kevin Turner's Motion makes the salient point that almost all of the work performed in his case was common benefit work, since his case was only on file for a few days before the MDL was created and this case went into settlement mode.  None of the individual cases ever came close to being tried, and most of the cases never even had to brief a motion to dismiss before this MDL was created.  Kevin Turner retained Podhurst just two days before that firm filed a consolidated complaint on behalf of 99 players, and just 11 days later the case was consolidated in an MDL.  Any work related solely to individual cases was therefore necessarily *de minimus*.

IV.    **Objector Miller Opposes the Requested 5% Holdback on All Awards.**

Mr. Miller continues to oppose Class Counsel's request for a 5% holdback on all future monetary awards to compensate Co-Lead Counsel for common benefit work going forward.  Any multiplier or enhancement to lodestar that Class Counsel may receive as part of this Court's fee award is already sufficient to compensate Class Counsel for any work going forward.  Indeed, it must have been the need to provide for future common

benefit work that led Class Counsel to demand a $112.5 million fee payment in connection with the settlement in 2013, since at that time the amount of the fee fund was as much as 10 times their collective lodestar.  While this multiplier has come down a bit over the past four years as Class Counsel has billed more time in connection with the settlement approval process, the $112.5 million fee fund is still more than three times Class Counsel's reasonable lodestar.  Therefore, there are more than sufficient funds in the fee fund to cover all reasonable fees that Class Counsel may incur, whether for common benefit work, or for clerical work on their individual clients' claims, for the next 65 years.  Class Counsel should receive nothing more in the way of a holdback from class members' monetary awards.

V.  **Objector Miller Opposes Any Fee Award to MoloLamken Until the Amount Of Benefits Directly Attributable to The Objections May Be Quantified.**

For the same reason that Mr. Miller opposes Class Counsel's Fee Petition at this time, he also opposes MoloLamken's premature request for $20 million in fees based on purely speculative projections of maximum possible benefits.  For example, the centerpiece of their claimed improvements to the settlement – the extension of the deadline for Death with CTE – is valued at $44.8 million.  That figure, however, assumes that 96% of the 111 players who died between the original deadline and the amended one will file a claim, and all of those will be able to establish a Qualifying Diagnosis of Death with CTE.  Any quantification of the benefits produced by the amendments to the settlement must await the actual filing, evaluation and payment of claims.  Furthermore, MoloLamken cannot take sole credit for the extension of the Death with CTE deadline, since most of the other objector/appellants were focused on this defect in the settlement

7

above all others. The Cleo Miller Appellants indeed sought to extend the deadline for Death with CTE indefinitely, and pursued that goal further than MoloLamken did.[3]

Any allocation of credit for the extended Death with CTE deadline should await the time when the claims of the 111 players who were made eligible by this extension have been filed and adjudicated, and a quantifiable dollar figure can be attached to this benefit. At that time, credit for this improvement to the settlement can be allocated among the objectors who advocated for it. Until that time, any award of fees to objectors is premature.

The other categories of benefits claimed my MoloLamken are likewise premature. For example, uncapping the BAP fund will not constitute a benefit to the class unless sufficient class members register for benefits and enter the BAP program. The $75 million already allocated to BAP is sufficient to fund a BAP examination for all 16,962 living players. If only 10,000 players register for the settlement and/or sign up for BAP, for instance, the uncapping of the BAP fund will have conferred no value on the class. Therefore, any evaluation of the benefit conferred by this change will have to await the August 7, 2017 registration deadline, at a minimum, and most likely the conclusion of the two year BAP window.

The same objections apply to MoloLamken's other claimed benefit categories, such as NFL Europe and financial hardship waiver. The actual value of these modifications will depend on the number of claims filed by those class members who are eligible for them, and the entire universe of eligible beneficiaries will be substantially culled by the time of the registration deadline. It is highly unlikely that many players

---

[3] Counsel for Cleo Miller intend to file a petition for attorney's fees once the value of the benefit that they conferred upon the Class may be quantified. Currently, any such fee request would be premature.

who are only eligible for BAP will bother registering for the settlement or signing up for BAP.  In any event, the August 7, 2017 registration deadline will soon provide a partial confirmation or refutation of that prediction, and the Court should await that number before awarding fees based on speculative projections assuming 100% participation rates.

VI.     **The Court Should Stage Class Counsel's Fee Award, Rather Than Awarding The Entire Amount at this Time.**

Rather than making a final common benefit fee award at this time, this Court should make fee awards in stages as claims are paid over the next 65 years, just as the court did in *In re: The Prudential Ins. Co. of America Sales Prac. Litig.*, 962 F. Supp. 572 D.N.J. 1997).  There, as here, the settlement provided for an uncapped claims process, and a separate payment of fees of up to $90 million.

> The Court is mindful of the Third Circuit requirement that this Court must arrive at a settlement value as a predicate to the award of attorney's fees under the percentage-of-recovery method... Here, however, the Court is faced with a settlement agreement that provides for a "future fund" that is uncapped and the total true value of which is dependent upon the number of class members that come forward to have their claims remediated under the ADR program.

*Id*. at 583 (citations omitted).

While class counsel in *Prudential* submitted an expert report, the court found that it was insufficiently reliable as a forecast of future contingent value to serve as the basis for a fee award under Third Circuit jurisprudence.  *Id*.  Therefore, the court elected to stage the award of attorney's fees, "through a modified application of the percentage of recovery approach that establishes a percentage of recovery on the known value of the settlement – Prudential's guaranteed minimum payout of $410 million...-- and a separate percentage of recovery with respect to the future, additional value of benefits to be paid to class members who come forward under the Settlement Agreement..."  *Id*. at 584.

9

In *Prudential*, the only future variable was the number of class members who would elect ADR, since all class members were eligible. Here, there are the additional contingencies of registration and establishing a Qualifying Diagnosis. Therefore, for purposes of an immediate, first stage, fee award, the Court must determine the current "known value of the settlement" – an amount that has never been disclosed or placed in the record. Certainly, the $10 million education fund and $75 million guaranteed BAP fund can be counted as part of the known value of the settlement for purposes of the first stage fee award. Class Counsel and the NFL have a duty to establish through evidence what additional claims are due to paid at this time to class members who have already established Qualifying Diagnoses. Once this amount has been established, the Court may award a reasonable percentage fee award based on this figure.

Class Counsel is entitled to a fee equal to 15% of all claims that have been approved and paid to date. While the claims process has not formally begun yet, presumably there are class members who have received Qualifying Diagnoses, and whose claims can be quantified with a high degree of confidence, such as those of Kevin Turner and the players who died with CTE prior to April 2015. Class Counsel is entitled to a fee award in the amount of 15% of the total of those claims, once Class Counsel has filed information on the amount of settlement claims that will be paid as soon as the MAF process commences.

Clearly, the $112.5 million fee fund was intended to cover fees over a long period of time, since that amount could not possibly be justified by the common benefit lodestar in 2013, or even the current common benefit lodestar claimed by Class Counsel to date. There is more than enough money in the common benefit fee fund to cover any additional

attorneys' fees that will be generated over the next 65 years, and therefore there is no justification for a further 5% holdback on claim payments.

After this Court makes its initial fee award based upon the current guaranteed value of the settlement, Class Counsel should be required to return to this Court every two years or so as claims are filed and paid, and to request a supplemental fee award based upon claims paid during that period.  This will ensure that Class Counsel's fees bear a reasonable relationship to the amount of benefits actually conferred upon the class, as required by Third Circuit law, as well as facilitate this Court's continuing oversight of Class Counsel and ensure that Class Counsel fulfills its fiduciary duty to the class.  Class Counsel should have a continuing incentive, as class counsel did in *Prudential, supra*, to ensure that as may claims as possible are filed and paid.  It would be reversible error for this Court to make a fee award based upon speculation and projections, when the August 7, 2017 registration deadline, and subsequent claim filings, will ultimately define the scope of the benefits that will be conferred by this settlement.[4]

---

[4] This will not necessarily require Class Counsel to continue to submit fee petitions for the next 65 years. Class Counsel has projected a total value of the MAF of $950 million, but Class Counsel will exhaust the entire $112.5 million fee fund once the total value of the settlement reaches $750 million, which should occur long before the end of the claims period.

## CONCLUSION

Objector Cleo Miller opposes any fee award to Class Counsel at this time, and requests that this Court (1) defer any fee award until a date after August 7, 2017, and then (2) award Class Counsel no more than 15% of the value of settlement benefits that are guaranteed to be paid to Class Members during the first year of the Settlement Claims Process; (3) void all individual fee contracts between class members and law firms that receive common benefit fee awards; (4) deny Class Counsel's request for a 5% holdback on all monetary awards; (5) require that Class Counsel periodically return to this Court and make incremental fee requests as benefits are actually paid to class members; and (6) defer all fee awards to objectors until such time as the benefits conferred by objectors, if any, may be quantified.

Respectfully submitted,
Cleo Miller,
By his attorneys,

*/s/ John J Pentz*
John J. Pentz
19 Widow Rites Lane
Sudbury, MA 01776
Phone: (978) 261-5725
jjpentz3@gmail.com

Edward W. Cochran
20030 Marchmont Rd.
Cleveland Ohio 44122
Phone: (216) 751-5546
EdwardCochran@wowway.com

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that the foregoing document was filed via the ECF filing system on February 17, 2017, and that as a result electronic notice of the filing was served upon all attorneys of record.

                                            */s/ John J. Pentz*
                                            John J. Pentz