## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated,*<br><br>        Plaintiffs,<br><br>vs.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>        Defendants. | No. 2:12-md-02323-AB MDL No. 2323<br><br>Hon. Anita B. Brody<br><br>Civ. Action No. 14-00029-AB<br><br>**Class Members:** |
| THIS DOCUMENT RELATES TO: DK#7151 | |

**MEMORANDUM IN OPPOSITION TO CO-LEAD CLASS COUNSEL'S PETITION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND EXPENSES, ADOPTION OF A SET-ASIDE OF <u>EACH MONETARY AWARD AND OTHER RELIEF</u>**

**I.       INTRODUCTION**

This Memorandum is filed on behalf of BOBBY BLIZZARD, JAMES BOYD, KEITH BURNELL, MARIO EDWARDS, MARIO FANIN, TERRY KINARD, OREN O'NEAL, WARREN SAPP, LARRY STEVENS and TROY STRADFORD, who are Retired NFL Players and members of the Class certified in this matter.

Pursuant to the Court's Amended Final Order and Judgment dated May 11, 2015 and the Settlement Agreement entered among the class action parties in this Multidistrict Litigation (the "Settlement Agreement"), Co-Lead Class Counsel (the "CCC") filed its Petition for An Award of Attorneys' Fees, Reimbursement of Costs and Expenses, Adoption of a Set-Aside of Each Monetary Award and other relief on February 13, 2017 (the "Petition"). Along with the Petition, CCC filed a Memorandum in Support of the Petition. One of the features of the Settlement Agreement was that CCC could at some future point petition the Court for an award of up to 5% of any monetary awards to which the individual Class Members would otherwise be entitled as an additional award of attorneys' fees.

The Settlement Agreement, however, already makes provision for payment of CCC attorneys' fees and Notice Costs and the costs (in the past and provision for the future) of the claims administration for the benefits conferred by the Class Action Settlement Agreement. Without more, these remunerations to CCC and the other Class Counsel are imposing by any standard: over $128 million when taking into account the attorneys' fees, notice costs and costs of claims administration to be paid by the NFL Defendants. Importantly, nothing in the Settlement Agreement nor any of this Court's orders or findings mandates that the Court approve an additional award of attorneys' fees. The Settlement Agreement itself states that only upon court order shall any funds be "held back" for a Set-Aside for the CCC. For these reasons and those cited below, this court should deny Co-Lead Class Counsel's Petition.

## II.    CCC'S PETITION WITH RESPECT TO A SET-ASIDE FAILS TO CONFORM TO THE PROVISIONS OF THE SETTLEMENT.

The Set-Aside provision of the Settlement Agreement clearly states:

> Any future petition for a set-aside will describe: (i) the proposed amount; (ii) how the money will be used; and (iii) any other relevant information (for example, the assurance that any "set-aside" from a Monetary Award or Derivative Claimant Award for a Settlement Class Member represented by his/her individual counsel will reduce the attorney's fee payable to that counsel by the amount of the "set-aside"). No money will be held back or set aside from any Monetary Award or Derivative Claimant Award without Court approval.

The CCC's Petition directly inverts the requirement of having an account of "how the money will be used" by stating in effect that only upon approval will CCC submit a "detailed plan of administration, including how the funds created from the holdbacks will be pooled and maintained, and how any attorney will apply for compensation for post-Settlement work performed." See Settlement Agreement at ¶ 119 and CCC's Petition at page 64. To be sure, CCC does amorphously recount services that may be required in the future and what labor those services may entail, but the recitation is long on assumption and short on the plain certainty required by the settlement provision itself.

The requirement to show how the Hold Back will be used must, according to the Settlement Agreement, be in the Petition itself, not some supplement to be filed upon approval. Court approval of any petition "before" any amount is held back or "set aside" concretely establishes that the CCC must show reasonable certainty of use of the funds before the court may consider and grant the petition. See Id. Failure by the CCC to describe the manner in which the proposed Set-Aside will be used is

sufficient ground upon which this Court should deny the CCC Petition.  Nonetheless,

CCC's Petition suffers from further infirmity, which should lead the Court to deny

the request outright without further procedural correction.

**III.    CCC'S PETITION FOR SET-ASIDE REPRESENTS AN IMPERMISSIBLE DOUBLE DIPPING OF FEES TO THE DETRIMENT OF THE INDIVIDUAL CLASS MEMBERS AND CONTRADICTS THE ARGUMENTS MADE FOR APPROVAL OF THE $112,500,000 ATTORNEYS' FEES AWARD.**

Co-Lead Class Counsel was responsible for the negotiated attorneys' fees

amount that the NFL Parties will pay to the various Class Counsel. In fact, CCC goes

to great lengths in its' Memorandum In Support of the Petition to show the many

innovative features of the Settlement including, as directly relevant here, that the

attorneys' fees for work for the common benefit fund will be paid by the defendants

and not "sliced off" the alleged common benefit fund of $950,000,000. *See, for*

*example*, CCC's Memorandum, § III.N. ("…unlike traditional common fund cases,

where attorneys' fees are paid as a percentage of the recovery, the NFL Parties will

pay **<u>any</u>** fee award over and above the Settlement's benefits and thus the Class here

is further benefitted by not incurring such payment for work done for its common

benefit")(emphasis added); and § IV.B.1. ("Members will have Plaintiffs' Counsel's

attorneys' fees and reimbursement of expenses for common benefit work paid for

by the NFL Parties, rather than have a portion of the settlement recovery sliced off

to pay fees and expenses, which is ordinarily the case with common fund

recoveries") and ("it bears repeating that **not a single penny** of this award will

come out of the pockets of a **single** Class Member")(emphasis added).

Likewise CCC specifically requests, exclusive of the Set- Aside and the initial $112,500,000 base attorneys' fee[1] another $15,920,000 ($4,000,000 for Notice Costs and $11,925,000 for Claims Administrations fees and costs).

Despite the assurance of "not a penny" of benefits going to attorneys' fees and the almost $16 million for costs and administration CCC now seeks 5% of each individual's monetary award. Where CCC seeks to convince the Court of how much it has given the Class Members, it nevertheless simultaneously seeks to contradictorily increase its award at the expense of the Class Members.

The CCC's arguments in favor of the Set-Aside focus on future work, but that work is such that it was fully known at the time the settlement was reached. If CCC truly has created an innovative feature where "not a penny" of the Members' monetary awards is used for payment of Class Counsel fees, it could and should have negotiated that amount to be paid by NFL Parties.  The effect is that should the Court acquiesce and grant a 5% hold back on the announced "common fund benefit" of $950,000,000, CCC would realize an award of fees and costs of $175,925,000 (initial attorneys' fees of $12,500,000, Notice Costs of $4,000,000, Claims Administration fees and costs of $11,925,000 and potential Set-Aside fees of $47,500,000). Fully 27% of that enormous fee would be chargeable to the individual Class Members.

---

[1] Here, the Court should note that CCC uses the judicially established lodestar approach to prove the reasonableness of the underlying attorneys' fees award and asserts that the base number for fees arrived at by multiplying reasonable hourly rates times the number of hours reasonably spent in litigation of the claims yields a $40 million amount to which CCC applies a 2.6 enhancement multiplier.

There can hardly be any position more contrary to the announced "innovative and ground breaking structure of the Settlement" argument.

In arguing that the Court should award the Set-Aside over and above the $128,500,000 attorneys' fee Notice Costs and Administrative Costs award, CCC cites very nebulous and sundry "labor" to be performed by the CCC in administration of the claims process. CCC, however, has not shown how that labor is in anyway different than that for which CCC will have already been compensated by the over $128.5 Million figure. Analyzing the affidavits in support of the CCC's Petition, moreover, any observer can readily see that the "Administrative Costs" are not only speculative but that the CCC uses those same cost arguments on which to base its claim that additional monies are needed from a Set-Aside to ensure the smooth administration of the Settlement structure. This can best be described as a "triple dip."

Surely CCC was the party in the best position to know what labor would be necessary in creation and maintenance of the claims process infrastructure. To now request additional fees at this very early stage of the process (fees for which provision has already apparently been made in light of the award of $11,925,000 for Administration Costs) would be to the detriment of the individual Class Members.

## IV.    CCC'S REQUEST FOR SET-ASIDE IS CONRA-INDICATED WHERE CONSIDERATION IS GIVEN TO THE INDIVIDUAL CLASS MEMBERS' NEEDS NOW AND TO BE REASONABLY EXPECTED IN THE FUTURE VIS-À-VIS ANY ADDITIONAL LIABILITY TAKEN ON BY CLASS COUNSEL

In its Set-Aside request CCC does not promise any additional individual assistance to the Class Members beyond the generalization of a smoothly running claims process. Having already been compensated and reimbursed fees and notice

costs of over $116.5 million[2] and the NFL parties having paid $11,925,000 million for the administration of claims, CCC's incentive to increase individual awards is minimal at best. Further, CCC takes on no additional liability or obligation. The labor in achieving the best individual award for Class Members will thus be left, as it has happened in numerous and abundant MDL settlements, to the individual themselves and the attorneys they retain to navigate the labyrinthine-like claims process. Just in a cursory example, the Claims Administrator could place a Retired NFL Player into an inappropriate Monetary Award Class, the individual Class Member would then have to appeal that determination, determine which class would be appropriate if successful in a challenge, appeal to the next level and on and on until the appellate process is exhausted and then newly reenter the gauntlet later in the 65 year life of the settlement if a Member is entitled to move into a new class with attendant new monetary benefits.

   CCC cannot possibly claim that it will be able to successfully attend the needs of nearly a reported class of over 20,000 retired NFL Players and their families in thoroughly analyzing and correctly litigating the proper Monetary Award Class for each Member with any required and necessary follow-up requests for reconsiderations or appellate labor on individual assessments.[3] To this extent CCC

---

[2] Assuming Court approval of the Petition for Fees (not including the Set-Aside request).

[3] Undersigned counsel has first hand knowledge of the necessity for individual class member representation in having guided and represented thousands of individuals and businesses through the complicated and increasingly recalcitrant claims determinations in the **In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010, MDL 2179.** In that litigation alone there have been over 500 policy decisions, countless appeals including all the way to the Fifth Circuit Court of Appeal in what was supposed to be a claimant friendly claims process.  As in almost

will necessarily (and given CCC's breadth of experience in these matters, knowledge of the need to) rely on individual representation to ensure the most successful result possible for individual claimants.

This having been said, CCC seeks to infringe on the Class Members' individual right to contract with representatives of their choice by innately limiting the contingent fee contract percentage. This is the obvious consequence of inserting language that any Set-Aside percentage chargeable to an individually represented Class Member shall come from the percentage charged by the Members' individual counsel. The provision from which CCC now seeks to directly benefit chills the attorney/client relationships or potential relationships given the reduction forced upon representatives should they be asked to participate by Members.

To this same extent, Members are dis-incentivized in choosing their own attorneys, a right fundamental to our jurisprudence.

## V.    THE CCC'S CLAIM TO ENTITLEMENT AND DETERMINATION OF SET-ASIDE PERCENTAGE ARE GROSSLY PREMATURE.

By the CCC's own account, the purpose of the Set-Aside is to compensate this body of attorneys for future work over the "lengthy" 65 year life of the Settlement. CCC seeks to determine now that it will need at least $47.5 million (5% of the reported $950,000,000 Monetary Award Fund) to effectively meet the future demands of administering this Settlement. The CCC's Memorandum even makes provision for future firms that may seek to inherit the case over those 65 years. Yet

---

any similar class action settlement claims construct, individual class members in MDL 2179 had very little opportunity to achieve a reasonably satisfactory result, if at all.

the CCC has not detailed a plan of how the Set-Aside moneys will be disbursed. The Plaintiffs' Petition and Memorandum in support of the Set-Aside is in this respect grossly premature. Having already won approval of the 5% Set-Side, and without a detailed plan of distribution by the CCC any supposed incentive for future firms to take over the supervision of the class action are merely illusory and self-serving assignations by the CCC.

The CCC proposes a present award of up to $47.5 million only with a promise to give a detailed accounting of proposed distribution scheme after the award is granted. Should the claims process prove to operate as smoothly as the well-intentioned design of the CCC and other parties, then why the need for such an exorbitant amount taken from the individual Class Members' pockets? If, however, the claims process follows the paradigm in these large class action settlement cases administered over any significant length of time, then some claims will be paid in an almost perfunctory manner at the outset but will be challenged and scrutinized ever more severely to the detriment of the individual Class Members as the years where on.  It is at this point in the claims process, some time removed from the initial administration, that Class Members would need all the more help from their chosen personal representatives.

At some point the Court should balance the benefit of the individual Class Members with the ever-increasing need for Counsel to be compensated. Precisely because there is a relatively set fund, which will not increase, the Court should be all the more vigilant to the excesses of remuneration to Class Counsel. Again the Court should not ignore that even without any additional award of a Set-Aside the CCC is

already on the verge of receiving $112,500,000 plus Notice Costs of $4 million plus

an almost $12 million dollar allowance for past and future administration costs.

WHEREFORE, this Court Should deny Co-Lead Class Counsel's Petition for Attorneys' Fees to the extent CCC is already receiving a more than reasonable fee and cost award and to the extent CCC's Petition requests Set-Aside monies to be paid from the monetary award otherwise payable to individual Class Members. Alternatively, the Court should significantly reduce the percentage of the Set-Aside and limit it to 1% of the monetary awards. This reduction would still nevertheless yield a reasonable minimum award of $9,500,000 to the CCC and most likely more depending on the ultimate diagnoses of the individual Class Members.

Respectfully submitted,

**FARRELL & PATEL,**
**Attorneys At Law**

 *s/ Wesley J. Farrell*
**Wesley J. Farrell, Esq.**
Fla. Bar No. 071783
2701 Ponce De Leon, Suite 300
Coral Gables, FL 33134
Telephone: (305) 300-3000
Facsimile: (800) 946-6711
WesFarrell@FarrellPatel.com
*Attorney for Individual Class*
*Members Identified on Notice of*
*Appearance*

## CERTIFICATE OF SERVICE

I CERTIFY that the above has been filed with the Clerk of Court's EF/ECM system, which will provide service to all parties designated to receive service this March 10, 2017.

 s/ E. Alexander Pujol
E. Alexander Pujol, Esq.