Case 2-12-md-02323-AB  Document      Filed page 1 of  17

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANISA

| | |
|---|---|
| IN RE:  NATIONAL FOOTBALL | ) |
| LEAGUE PLAYERS' CONCUSSION | ) |
| INJURY LITIGATION | ) |
| | ) |
| LORRAINE DIXON | ) |
| PROS SE PLAINTIFF | ) |
| | ) |
| vs. | ) |
| | ) |
| NATIONAL FOOTBALL LEAGUE AND | ) |
| NFL PROPERTIES, LLC., SUCCESSOR- | ) |
| IN-INTEREST TO NFL PROPERTIES, | ) |
| INC.  DEFENDANT | ) |
| | ) |

Response and Opposing Motion to Zimmerman Reed's Notice and Motion for Attorney Lien

Lorraine Dixon, Plaintiff,  hereby files its Response and Opposing Motion to

Zimmerman Reed's Notice and Motion for Attorney Lien and states as follows:

**Background**

Lorraine Dixon, Plaintiff, is the wife of former National Football Player, Rickey

Dixon. Rickey Dixon played in the NFL for 6 years.  On May 15, 2012, Rickey Dixon

and Lorraine Dixon entered into a contract with Zimmerman Reed et, al. (Petitioner).

Pursuant to the terms of that contract, Petitioner's attorney fee for representation was set

at 331/3%.  **(See Exhibit 1)**.

In July 2013, Rickey Dixon was diagnosed with Amyotrophic Lateral Sclerosis

(ALS).  Currently, Rickey Dixon is only able to speak and write with the assistance of a

computer, he is unable to bathe himself, dress himself, and has no tactile grip.  Rickey

Dixon has trouble chewing and swallowing and requires assistance at all times. Rickey

Dixon's spirits remain upbeat and his one desire is to make sure that Plaintiff, his wife of

more than 20 years, his 9 year old daughter, his 20 year old special needs son and two adult aged children[1] are well taken care of during his illness and in the event of his death.

Lorraine Dixon has continued to work full-time through this very difficult period, but finds it increasingly more difficult to continue working as Rickey Dixon's ALS progresses. One of Lorraine Dixon's goals is to make sure that Rickey Dixon's quality of life is the best it can be under the circumstances. The settlement award will allow Rickey Dixon to receive experimental drugs, obtain medical equipment that he is currently unable to afford and ensure that he is comfortable for the remaining years of his life.

As Rickey and Lorraine Dixon's case proceeded, Rickey and Lorraine Dixon became increasingly concerned regarding the direction Petitioner was taking regarding the representation of their case. On October 7, 2015, after much thought and discussion, Rickey Dixon and Lorraine Dixon released Petitioner, via e-mail and terminated the Contract, pursuant to said Contract. **(See Exhibit 2)**. On March 7, 2016, over a year  to the date, this Court granted Petitioner's Motion to Withdraw as Counsel for Plaintiff's Rickey and Lorraine Dixon and by the same Order granted Plaintiffs Rickey and Lorraine Dixon's Motion to proceed Pro Se.  **(See Exhibit 3)**.

Petitioner's services were terminated prior to the Appellate Court rendering its decision in the Class Action Settlement case and prior to final approval of the Class Settlement by this Court.

---

[1] Rickey Dixon Jr., is 21 years old.  He is currently in college and relies on his parents for financial support.  Also, Brittany Dixon is 27 years  old, and resides at home with her parents.  She is requires support of her parents because of learning disabilities that limit her ability to care financially for herself.

Petitioner did not register Plaintiffs as interested parties in the recent registration process.  Lorraine Dixon did, nor will Petitioner be submitting documentation to the administrator, meeting any approved doctors to meet settlement guidelines or ensuring that timelines are meet, which is the crust of the work regarding Plaintiff's individual settlement claims. All of these services will be performed by Lorraine Dixon.

**Argument**

**I.     Petitioner's Service was De Minimis and Does Not Meet the Statutory Requirements under Minn. Statute § 481.13. Additionally, the Intent of being a Statute of Equability is not Furthered by Allowing the Petitioner to Place a Lien on Plaintiffs Settlement Award.**

1.      Application of Minn. Statute § 481.13 is a question of law, *Boline v. Doty,* 345 N.W. 2d 285, 288-90 (Minn. App., 1984) however, the reasonable value of attorney fees is a question of fact, *Ashford v. Interstate Trucking Corp.,* 524 N.W. 2d 500, 502 (Minn. App. 1994).

2.      The Minnesota statute is an equitable lien statute. It protects the attorney against a successful party receiving judgment secured by an attorney's services without paying for those services. *Johnson v. Blue Cross and Blue Shield of Minn.* 329 N.W. 2d 49, 53 (Minn. 1983); *Schroeder, Siegfried, Ryan and Vidas v. Modern Elec. Prods., Inc.,* 295 N.W. 2d 514, 516 (Minn. 1983).

3.      Applying the above to Plaintiff's case, the Petitioner will obtain compensation from the $112.5 million attorney fees established by the NFL. No other attorney fees should be awarded to Petitioner from Plaintiffs

settlement award for de Minims services provided by Petitioner which

included the following;

a.   Petitioner filed a short form Compliant on July 23, 2012, **(See Exhibit 4)**.

b.   The short form Complaint was a fill in the Blank document that

required very little time or legal expertise. The answers to the short form

Complaint were previously provided by the Dixons in the form of a

questionnaire provided to Plaintiff by Petitioner. **(See Exhibit 5)**.

c.      Beyond the short form Complaint, Petitioner has done very little

other legal work on behalf of Plaintiffs' individual case. There were times

Lorraine Dixon reached out to Petitioner regarding the Dixons' individual

case and did not receive a response from the Petitioner. (**See Exhibit 6**).

d.      In fact, Lorraine Dixon has done much of the work and paid for the

work Petitioner completed and invoiced prior to the termination of the

Contract.   Specifically, Lorraine Dixon registered herself, Rickey Dixon and

their minor children in this matter.  Lorraine Dixon obtained and made copies

of medical records and provided those documents to Petitioner at the Dixons'

own expense.  (**See Exhibit 7**).  The Dixons also paid for other medical

records and reports provided to Petitioner at the Dixon's own expense.  **(See**

**Exhibit 8)**.

4.      Petitioner acknowledged the work of Lorraine Dixon and agreed to reimburse

her for fees and services. **(See Exhibit 9)**. Lorraine Dixon was pleased to hear

of the Petitioner's offer but to date has had no further communication with the

Petitioner until the receipt of the Petitioners Notice and Motion for Attorney Lien.

5.      As far as communications go, Petitioner provided de Minimis information as it pertained to the Dixons' individual case. The majority of updates provided by Petitioner pertained to the class settlement. **(See Exhibit 10)**.  The following categorizes the type and number of communications the Dixons had with the Petitioner:

   a.   2 documents to expert witness Dr. Ahlberg;

   b.   8 e-mail documents pertaining to communications between Lorraine Dixon and the Petitioner, including e-mails discussing termination;

   c.   8 documents that relate to Plaintiffs individual case which consisted of the following, 4 letters requesting Plaintiffs to sign authorization form for medical releases, a copy of the short form Complaint and 3 documents requesting Plaintiffs to fill out questionnaire forms;

   d.   5 documents relating to pre settlement proceedings and discussions;

   e.   16 documents regarding Plaintiff's Support loan and

   e.   19 documents discussing the Class Action Settlement.

6.      Rickey Dixons' case is 'cut and dry' and did not involve the need for an investigation, an expert witness, analysis or further medial testing as Petitioner's motion suggests.

7.      Rickey Dixon has ALS; his doctor is a recognized Neurologist. The Chief Neurologist over the neurology department where Rickey Dixon attends has done work for the NFL. It would be surprising if the credentials of Rickey

Dixon's neurologist was not accepted by the Class Administrator. Petitioner was well informed of this by Lorraine Dixon.

8.     As stated and demonstrated in paragraph 5, the Dixons received little to no information as to the Plaintiffs' individual case as the Class Action Settlement discussions proceeding.

9.     Petitioner now alleges that the filing of a short form Complaint, providing status updates of the Class Action Settlement in the form of e-mail blasts or on form letters sent to all of Petitioners clients are services that entitles the Petitioners to an attorney's lien of the Dixons' entire settlement award. Lorraine Dixon asserts that the services provided by Petitioner does not rise to the level that the statute was designed to protect.

10.    Lorraine Dixon urges the Court to examine the services provided by Petitioner or the lack thereof, as well as the time and resources expended by the Dixons' in their individual case to make its determination on whether granting a lien of attorney fees against the Dixons' settlement award is reasonable, allowable, just and ethical. And furthermore, if such a lien would be supported by public policy.

11.    As stated earlier, the statutes intent is to prevent and protect the attorney against a successful party receiving judgment secured by the attorney's services without paying those attorneys for those services.

12.    In the instant case, Petitioner provided de Minimis services in the Dixons individual case and for those services that were provided the Petitioner

services will be fully provided for in the 112.5 million attorney fees established by the NFL.

13. Upon termination of the Contract, Lorraine Dixon requested that the Petitioner put in writing a list of all expenses and outstanding balances that Petitioner alleged was owed to them, as well as, any documentation supporting the allegation.

14. The Petitioner submitted documentation in the amount of $2,304.55 but now alleges that he is entitled to an attorney lien on the Dixons' potential 4.5 million dollar settlement. **(See Exhibit 11)**.

15. To demonstrate Lorraine Dixon's substantial involvement in the case and that some of the very services Petitioner alleges that he performed was actually performed by Lorraine Dixon, Lorraine Dixon brings to the Court's attention the communication, via e-mail where Lorraine Dixon asked Petitioner if she would be reimbursed for the cost and time she exercised in the case and Petitioner agreed that she would. (**See Exhibit 9**).

16. These actions came at a cost for Lorraine Dixon.  It required Lorraine Dixon to take leave from her job, and pay for costs out of the Dixons' personal finances.  For the Petitioner to now allege that these actions taken by Lorraine Dixon were services Petitioner provided is simply not true.

17. There is no unjust enrichment on behalf of the Dixons in this case as the evidence demonstrates, the Dixons greatly contributed in the preparation and finances of their own case.

18.     Additionally, Petitioner provided very little services as it pertained to Dixons'
        individual case.

19.     Petitioner now asks this Court to allow an attorney's lien on ***all*** of the Dixons'
        settlement award is so contradictory to the arguments made before your
        Honors Court while settlement and oral arguments were being made.

20.     Plaintiff points out that during the time of settlement discussions and oral
        arguments against the Opt-out players, attorneys stated that the approval of the
        settlement was needed because of the players' health and the dire needs of the
        players to obtain the settlement monies to get the care and assistance that they
        so detrimentally need.  Yet now, the Petitioner seeks to prevent the Dixons
        from receiving the very monies they once argued so passionately that was
        needed.  This new position is very hypocritical on the part of Petitioner
        because now the Petitioner requests that the Dixons entire settlement be
        withheld.

21.     Petitioner also suggests that they are entitled to an attorney lien based upon a
        "litigation risk."  A "litigation risk" that has very handsomely paid off for the
        Petitioner, as they stand to gain at least 1,021,545.97 from the NFL paying
        their attorney fees.

22.     Petitioner's motion is unreasonable, unethical, and without merit.

23.     Petitioner's reliance of Minn. Statute § 481.13 is misplaced as the second
        prong of the statute has not been met because Petitioner has not demonstrated
        that he has provided services that has unjustly enrich the Plaintiff, nor has he

demonstrated that the litigation risk he undertook that will not be paid by the NFL.

24.     Based upon the above, Lorraine Dixon respectfully asks this Court to deny Petitioner's motion for an attorney lien and to find that any services performed by Petitioner on behalf of the Dixons was de Minimis at best and the compensation that Petitioner stands to share in from the 112.5 million dollar attorney fees set aside by the NFL will cover all services that have been rendered on behalf of the Dixons, including any litigation risk.

25.     Allowing Petitioner to take a windfall against the Dixons' individual settlement does not further the intent of the Minn. Statute but goes against the very principle of unjust enrichment.

26.     To reward the Petitioner for  de Minimis services rendered is not the intent of the statute, neither is rewarding a Petitioner for taking a litigation risk when the Petitioner stands to be richly awarded by sharing in the $112.5 million dollar attorney fees set aside by the NFL.

27.     Plaintiff respectfully asks the Court to deny this Motion in its entirety.

**II.      The Class Action Settlement Does Not Permit Petitioner to Deduct Any Attorney Fees From Plaintiff's Individual Award.**

28.     As the Estate of Kevin Turner's Motion to Resolves Attorney Fees correctly points out, Section 21.1 of Article XXI states that the NFL Parties will pay attorneys' fees [s]eparately and in addition to "the Monetary Award paid to the class members.  See ECF 6481, Exhibit 11. The Court's final Approval Memorandum also confirms that attorneys' fees are not to be taken from the

Monetary Award or funds available to the class.  *See* ECF 6509. The Final

Memorandum states:

> A fee award in this case will not come from the common fund.  The
> ultimate amount the NFL Parties must pay in attorney fees will have no
> impact on the Monetary Award paid or baseline assessment examination
> given because the NFL Parties have already guaranteed these benefits, in
> full, to eligible claimants.  *See* ECF 6509, p.31 (citing §21.1 of the Class
> Action Settlement Agreement); *see also* ECF 6509, p. 21 and 30 ('Any fee
> will be separate from, and in addition to, the NFL Parties other obligations
> under the Settlement).

29.     Plaintiff's motion for an attorney lien on Plaintiff's individual award is

inconsistent with the Class Action Settlement and would result in an

inherently unfair outcome and double dipping by the Petitioners.

30.     For these reasons, Plaintiff respectfully asks the Court to make a

determination that attorney fees will be paid from the NFL and deny

Petitioners motion in its entirety.

**III.    Petitioner was release  from its Representation of Plaintiff and the**

**Contract was Released Without the Intent of Unjust Enrichment to**

**Plaintiff.**

31.     The Dixons released Petitioner on October 7, 2015.  (**See Exhibit 2**).

32.     The Dixons became increasingly dissatisfied with the direction the Petitioner

was taking in its case.

33.     One area of concern was Petitioner's decision to hire an expert witness at the

Dixons' expense.

34.     Lorraine Dixon, questioned the need of an expert witness given that the

Dixons' case was straightforward. As explained to the Dixons, Petitioner was

trying to establish that Rickey Dixon had symptoms of ALS as early as 2011.

This strategy by Petitioner was in an effort to place Rickey Dixon in a class to
obtain a larger settlement.

35.     The Dixons did not agree with this approach, as the settlement terms were
very clear, the date for settlement purposes was the date of diagnosis and not
the date of symptoms.

36.     Further, it did not make sense to the Dixons that the Petitioners expert witness
had not examined Rickey Dixon but simply looked at records provided by
Rickey Dixon's treating physicians to make this judgment.  Lorraine Dixon
was also concerned that this expert witness was not an approved physician[2] by
the Settlement Administrator, but yet the Dixons were being charged for his
expertise.

37.     The Dixons concluded that the Petitioners approach and tactics could have
jeopardized the Dixon's rightful and legal claims.

38.     The Dixons became leery and distrustful of Petitioners.

39.     The Dixons also felt no connection with the Petitioner, which is vital when
entrusting an attorney to represent your interests.

40.     The Dixons were also suspicious of the Petitioner because when asked about
attorney fees his answers were evasive.

41.     The Dixons believed that to the Petitioner this case was about how much
money the Petitioner could derive from the settlement.   However, for the
Dixons, this matter was of a personal nature.  It is living a life without the
health and support of a young husband, a family with four children of

---

[2] To date the list of approved physicians has not been provided.

different ages and with different needs, and the ability for the family to
survive.

42.     As stated above, Plaintiff begun to feel that for Petitioner this case was about
how much he could derive from the settlement and for Plaintiff this was much
more personal, yes the need for the settlement money is dire, but it is also
about holding the NFL accountable for their actions, even if they did not
admit any wrongdoing, the NFL will be required to pay for medical services
and pay out of pocket.  Hopefully, because of this case, future players will be
protected and have better protocol for the players and the game, which to date
Rickey Dixon still loves..

43.     These are the things important to Plaintiffs Lorraine and Rickey Dixon, and
the Petitioners did not seem to have the same concerns and values. For the
Dixons the relationship with the Petitioner felt like, for a lack of better term
"out of touch".

44.     For example, one specific time that Lorraine Dixon remembers to explain the
Petitioner's  insensitivity towards the Plaintiff and the disconnect Plaintiff felt
with the Petitioner is when Rickey Dixon was sharing that he needed to go to
California for a stem cell treatment.  Rickey was stating how the airplane rides
were getting tough on him and how he can no longer fly alone.  Petitioner's
response was to share how he loves flying on his private jet and how
enjoyable it is.

45.   Who says this to a terminally ill man?  Who brags about being able to fly on

his private jet to a client when your terminally ill client is explaining  how

difficult it is for him to fly commercially?

46.   It was the little things like these coupled with the bigger items of being

evasive about the attorney fees, hiring an expert witness who briefly spoke

with Rickey with the goal obtaining  a larger settlement award without

measuring the risks of delay at Plaintiff's expense.

47.   For these reasons and due cause, the Dixons terminated the contract and

discharged the Petitioner.

48.   The Dixons did not see this termination as personal against the Petitioners but

the Petitioners approach and personality was not a good fit for Rickey and

Lorraine Dixon.

49.   Lorraine Dixon respectfully requests that the Court finds that Plaintiff acted

reasonable and without an intent to be unjustly enriched in the termination of

Petitioner.

**Petitioner's Motion For an Attorney Lien is Inconsistent With the Terms
of the Contract**

50.   The terms of the legal services are set out in the Contract.  **(See Exhibit 1)**.

The specific terms of Termination are set out on (**See Exhibit 1, page 2** ) and

provides as follows:

The Client, in this instant matter, Rickey and Lorraine Dixon, may terminate
Zimmerman Reed as your legal counsel at any time by written notice to
Zimmerman Reed. Upon receipt of such a notice, Zimmerman Reed will cease
all work on your behalf and will cooperate with you in finding appropriate
counsel to substitute for Attorneys or in transferring your file to counsel of
your choice.  Zimmerman Reed may also withdraw as your legal counselor

suspend or limit its services to you, in compliance with applicable rules of
professional responsibility. Those rules include provisions permitting
withdrawal if a client makes the representation unreasonably difficult,
requests conduct on the part of Zimmerman Reed, which is unprofessional or
fails to fulfill an obligation to Zimmerman Reed.  However, such a withdrawal
will only be done after providing you adequate notice and an opportunity to
secure other counsel. Zimmerman Reed reserves the right to seek payment for
all costs and expenses advanced by Zimmerman Reed <u>at the time of</u>
termination or withdrawal.  **Exhibit 1, page 2.**

51.     Plaintiff relied on the terms of the contract to be complete and definite in

        terms of what Obligations and Fees were owed to Petitioner in the event of

        termination.

52.     Had Plaintiff been made aware of the possibility that Petitioner could seek

        additional monies outside of the four corners of the Contract, Plaintiff would

        have asked for a clear explanation regarding those fees and most likely would

        not hired Petitioners to represent them.

53.     It was Plaintiff's intent to abide by the rules and procedures of the Contract

        and to pay for services rendered.

54.     To be clear the Contract with the Petitioner was plain in how recovery of

        settlement would be distributed and the termination provisions. **Exhibit 1**

        **pages 1 and 2.**

55.     If the Petitioner was able to set forth  with precise and concise language how

        they were to be paid and the procedures for termination, why weren't the

        terms for additional rights of recovery included the Contract?

56.     For the Petitioner to now allege that an attorney lien is proper to a portion of

        Plaintiff's settlement award without prior communication  to the client and ,

supported by the Contract is grossly unfair and unjust to the Plaintiff who has now detrimentally relied on the Contract drafted by Petitioner.

57.    Plaintiff expectations of the Petitioner were for him to be upfront and honest with Plaintiff regarding all possible costs that Plaintiff may have incurred in hiring Petitioner for representation.

58.    Petitioner's actions have been suspect throughout this process and this is just one more action by Petitioner that confirms that Plaintiff's suspicions regarding Petitioners honesty has been confirmed.

59.    Plaintiff relied on the Contract, written by the Petitioner to express within its four corners the governing of the contract, including attorney fees.

60.    Petitioner's actions are unconscionable and unfair to the Plaintiff.

61.     Plaintiff begs this Court to deny the Petitioner's motion and to hold that to allow the Petitioner motion to go forward goes beyond the four corners of the Contract and void the Contract because there was no meeting of the minds. Further, Plaintiff respectfully asks the Court to deny the Petitioner's motion for an attorney lien.

62.    In the seventh hour, Petitioner files a motion for an attorney lien when the evidence demonstrates that de Minimis work was performed on Plaintiff's individual case, that Plaintiff did a majority of the work Petitioners alleged was performed by him, where Petitioner was terminated without malice or an expectation of unjust enrichment by Plaintiff and the contract failed to include language that could have been easily asserted into the contract for which now the Petitioner relies to block Plaintiff receipt of monies.  Again, it was the

Petitioner themselves who agreed and argued that it was important to get settlement approval because of the immediate need to get settlement award monies to the former NFL players. To get those players the assistance they so desperately needed, players like Rickey Dixon whose is in a terminally ill condition.

63.   It now seems that the Petitioner's argument was an argument of convenience because the Petitioner has now switched the argument and that concern and compassion demonstrated for the public, the news media and the Courts seems to now be absent because now they now are trying to block access to Rickey Dixons award in its entirety.

64.   Upon receipt of Petitioner's Notice and Motion for Attorney Fees Plaintiff and Rickey Dixon looked at each other and said, "We told you so" we had them pegged.

WHEREFORE, the Plaintiff, Lorraine Dixon prays:

1.  The Court denies the Petitioner's Notice and Motion for an attorney's lien;

2.  The Court finds that the NFL payment of the Attorneys fees is more than enough to compensate Petitioner for the Dixons in the matter of the National Football League Players' Concussion Injury Litigation;

3.  That this Court denies and rejects Petitioner's Motion of Attorneys Lien against any proceeds the Dixons will derive from any settlement or judgement in the matter of the National Football League Players' Concussion Injury Litigation Football;

4.   That this Court allows the Defendant or the Defendant's insurer to pay the
     Plaintiff all sums of money Plaintiff qualifies for under the terms of the
     settlement and that if the Court has failed to render its Order prior to
     deciding this issue Plaintiff is entitled to at least 80% of its settlement
     award.

5.   For such other relief as this Court deems just.




Dated:  March 20, 2017                          Respectfully submitted,


                                                _____
                                                Lorraine Dixon
                                                Pro Se Plaintiff
                                                908 Country Creek Lane
                                                Red Oak, Texas 75154
                                                Telephone: 214-727-5402

parakeet<br>

<u>CERTIFICATE OF SERVICE</u>

      The Undersigned hereby certifies that the foregoing document was filed via the ECF filing system on March    , 2017 and that as a result electronic notice of the filing was served upon al attorneys of record.


<u>/s/ Lorraine Dixon</u>
Pro Se Plaintiff