# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>    Plaintiffs,<br><br>        v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>    Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**CO-LEAD CLASS COUNSEL'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR AN INJUNCTION PROHIBITING IMPROPER**
**COMMUNICATIONS WITH THE CLASS BY**
**JIM MCCABE AND NFL CASE CONSULTING, LLC**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION...................................................................................................1

II.   FACTS .................................................................................................................4

III.  ARGUMENT .......................................................................................................8

    A.   The Court Has Broad Authority To Prohibit Improper
        Communications to Class Members Pursuant to Federal Rule of
        Civil Procedure 23(d) and the All Writs Act and Should Exercise
        That Authority To Enjoin These Improper Communications.................................8

    B.   A Permanent Injunction Is Warranted .................................................................12

    C.   Additional Relief Requested ................................................................................15

IV.   CONCLUSION ..................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Ackerman v. Exxon Mobil Corp.*,
    734 F.3d 237 (4th Cir. 2013) ................................................................. 13

*Brandt v. Burwell*,
    43 F. Supp.3d 462 (W.D. Pa. 2014) ....................................................... 14

*Cent. Hudson Gas Co. v. Pub. Serv. Comm'n*,
    447 U.S. 557 (1980) ............................................................................... 9

*Coles v. Marsh*,
    560 F.2d 186 (3d Cir. 1977) ................................................................. 10

*Erhardt v. Prudential Group, Inc.*,
    629 F.2d 843 (2d Cir. 1980) ................................................................. 11

*Georgine v. Amchem Prods., Inc.*,
    160 F.R.D. 478 (E.D. Pa. 1995) ........................................................... 11

*Gulf Oil Co. v. Bernard*,
    452 U.S. 89 (1981) ............................................................... 8, 9, 10, 11

*Haffer v. Temple Univ.*,
    115 F.R.D. 506 (E.D. Pa. 1987) ........................................................... 11

*Hampton Hardware, Inc. v. Cotter & Co.*,
    156 F.R.D. 630 (N.D. Tex. 1994) ......................................................... 11

*Hoffman-LaRoche Inc. v. Sperling*,
    493 U.S. 165 (1989) ............................................................................... 8

*In re Baldwin United Corp. (Single Premium Deferred Annuities Ins. Litig.)*,
    770 F.2d 328 (2d Cir. 2001) ................................................................. 13

*In re Nat'l Football League Players' Concussion Injury Litig.*,
    307 F.R.D. 351 (E.D. Pa. 2015) .......................................................... 2, 3

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
    No. 05-MD-1720, 2014 WL 4966072 (E.D.N.Y. Oct. 3, 2014) ............ 10, 12, 13, 15

*In re Sch. Asbestos Litig.*,
    842 F.2d 671 (3d Cir. 1988) ................................................................... 9

*In re Synthroid Mktg. Litig.*,
    197 F.R.D. 607 (N.D. Ill. 2000) ........................................................... 12

*In re Visa Check/MasterMoney Antitrust Litig.*,
   No. 96-5238, 2006 WL 1025588 (E.D.N.Y. Mar. 31, 2006) .................................................. 12

*Klay v. United Healthgroup, Inc.*,
   376 F.3d 1092 (11th Cir. 2004) ................................................................................... 13

*Kleiner v. First Nat'l Bank of Atlanta*,
   751 F.2d 1193 (11th Cir. 1985) .................................................................................... 9

*McWilliams v. Advanced Recovery Sys., Inc.*,
   176 F. Supp.3d 635 (S.D. Miss. 2016) ........................................................................ 14

*Ralph Oldsmobile, Inc. v. Gen. Motors Corp.*,
   No. 99 Civ. 4567 (AGS), 2001 WL 1035132 (S.D.N.Y. Sept. 7, 2001)................................... 11

*Rossini v. Ogilvy & Mather, Inc.*,
   798 F.2d 590 (2d Cir. 1986) ........................................................................................ 9

*United States v. N.Y. Tel. Co.*,
   434 U.S. 159 (1977) .......................................................................................... 12, 13

*United States v. Silva*,
   140 F.3d 1098 (7th Cir. 1998)................................................................................... 12

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
   425 U.S. 748 (1976) .................................................................................................... 9

*Waldo v. Lakeshore Estates, Inc.*,
   433 F. Supp. 783 (E.D. La. 1977), *appeal dismissed*, 579 F.2d 642
   (5th Cir. 1978) ........................................................................................................... 9

**Statutes**

28 U.S.C. § 1651 .............................................................................................................. 4

28 U.S.C. § 1651(a) ................................................................................................... 12, 13

**Rules**

Fed. R. Civ. P. 23 .................................................................................................. 2, 10, 11

Fed. R. Civ. P. 23(c)(2) .................................................................................................. 11

Fed. R. Civ. P. 23(d) ................................................................................................... 4, 8

Fed. R. Civ. P. 23(d)(1)(B)(i) ........................................................................................... 8

Fed. R. Civ. P. 65 ................................................................................................ 12, 13, 14

iv

Fed. R. Civ. P. 65(d) ................................................................................................................. 13

**Other Authorities**

David F. Herr, *Annotated Manual for Complex Litigation, Fourth* § 21.33 (rev. ed. 2016) .... 9, 15

## I.      <u>**INTRODUCTION**</u>

Co-Lead Class Counsel respectfully submit this memorandum in support of their motion for a permanent injunction against Jim McCabe and NFL Case Consulting, LLC (hereinafter, unless otherwise specified, Mr. McCabe and NFL Case Consulting, LLC will be referred to collectively as "McCabe").  The first purpose of the motion is to make the Court aware of the false and misleading information about the National Football League Players' Concussion Injury Settlement (the "Settlement") being disseminated by McCabe of which Co-Lead Class Counsel recently have been made aware, and to request that the Court issue an injunction ordering McCabe to cease and desist.  Second, if the Court determines that the misrepresentations had such an effect on the Class Members as would require another Class Notice to correct false and misleading information disseminated by McCabe and to clear up any confusion among Class Members resulting from McCabe's communications, Co-Lead Class Counsel respectfully request that McCabe be ordered to pay for such Curative Class Notice.  Third, Co-Lead Class Counsel suspect that other misrepresentations by McCabe and associated entities and individuals may have been made to Class Members, and that lawyers may be working with McCabe.  Finally, depending upon the Court's determinations as to the misrepresentations, the Court may conclude that any contracts Class Members entered into with McCabe should be voided.  Therefore, Co-Lead Class Counsel request the Court's authorization to conduct discovery of McCabe in order to determine (1) in detail any and all misrepresentations that may have been made by McCabe and any associated individuals or organizations; (2) whether the misinformation has resulted in any Class Members signing up with these organizations; and, if so, the identities of all parties and the nature of the arrangements; and (3) whether McCabe is working with any lawyers, and if so, their identities, so that this Court can be made aware of any potential ethical violations by

lawyers who may have registered or who may be registering clients to participate in the Settlement benefits.

In a letter sent to at least two Class Members (one of whose name and address were blacked out by the Class Member), which was forwarded to the Claims Administrator and others, Mr. McCabe, under the letterhead of NFL Case Consulting, LLC, made misleading and untruthful statements concerning the Settlement benefits. The Claims Administrator forwarded to Co-Lead Class Counsel and counsel for the NFL Parties, the letter, as well as a cover email from one of the Class Member recipients, which describes phone calls to Retired NFL Football Players allegedly made by employees of NFL Case Consulting, LLC. The March 17, 2017 cover email from "John Smith" also stated that he is a Retired NFL Football Player who wants to remain anonymous.

The undersigned first became aware of possible misrepresentations by representatives of NFL Case Consulting, LLC, on March 14, 2017, when a Class Member with a different email address, that also concealed the sender's identity, who may or may not be the same person who sent the email and letter on March 17th, sent similar emails to Co-Lead Class Counsel and the Claims Administrator detailing other communications. He similarly stated that he is a Retired NFL Football Player who wishes to remain anonymous.

Pursuant to its fiduciary obligations to the Class, this Court has taken a strong interest in ensuring that truthful and accurate communications are disseminated to Class Members. As the Court noted, "[t]he content of the Long-Form Notice and Summary Notice satisfy the requirements of Rule 23 and due process." *In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 383 (E.D. Pa. 2015). "Each was written in plain and straightforward language. The Long-Form Notice apprised all Class Members of: the nature of

the action; the definition of the Class; the Class claims and issues[.]"  *Id.*  Furthermore, Class

Counsel have taken significant steps to notify the Class Members and to keep them informed.

The Settlement website, www.nflconcussionsettlement.com, which is officially sanctioned by the

Court, is available to assist both Class Members and their attorneys with information about the

Settlement, the registration process, and the claims process.  The Claims Administrator also

maintains a Post Office Box to which Class Members can send questions, *see* ECF No. 6919-1,

at 3, a Claims Administrator e-mail Inbox, *id.* at 4, and a Call Center, *id.* at 5, all to provide

accurate information to Class Members.  This work is jeopardized when misleading

communications are spread by individuals angling to profit from Retired NFL Football Players.

In addition to the other channels through which Class Members can obtain Court-

sanctioned and truthful information about the details of the Settlement, on February 8, 2017, this

Court held a status conference, which was live-streamed, in an effort to ensure that Class

Members understand the next steps they must take now that the Settlement has become effective.

One of the key messages that the Court, Co-Lead Class Counsel and the Administrators

conveyed to Class Members during that conference was that all practical efforts were being made

to ensure that the Settlement Program is easy to navigate and that Class Counsel and the Claims

Administrator's personnel would be available to assist Class Members if they have any

problems.  McCabe's communication may have undone what the status conference was designed

to do.

Accordingly, Co-Lead Class Counsel respectfully request that the Court put an end to this

dissemination of falsehoods, and that it (i) enter an injunction preventing McCabe from making

claims and advertisements that are inconsistent with the Court-approved Notice and Settlement

Agreement; (ii) direct that McCabe shall bear any costs for curative notice, if the Court

determines curative notice is necessary (such notice to be approved by the Settling Parties and the Court, and disseminated pursuant to the Court's directive); (iii) permit Co-Lead Class Counsel to conduct discovery of McCabe and any associates or affiliates; (iv) following discovery, void any contracts/loan arrangements that McCabe or his associates or affiliates have entered into with Class Members, as the Court sees fit; and (v) take any other measures that it deems proper.   As further detailed below, a permanent injunction is appropriate under the circumstances, pursuant to the All Writs Act, 28 U.S.C. § 1651, and Fed. R. Civ. P. 23(d).

## II.   FACTS

Jim McCabe is the Chief Executive Officer of NFL Case Consulting, LLC.  *See* letter on NFL Case Consulting, LLC's letterhead and signed by Mr. McCabe, attached with cover email dated March 17, 2017, as Exhibit A ("Ex. A") to the Declaration of Christopher A. Seeger in Support of Motion for Injunction Prohibiting Improper Communications with the Class, dated March 27, 2017 ("Seeger Decl."), *see* same cover email and letter attached as Exhibit 3 ("Ex. 3") to the Declaration of Claims Administrator, Orran Brown, dated March 27, 2017 ("Brown Decl.), and *see* same letter from McCabe to different class member, forwarded to Claims Administrator, at Brown Decl., Ex. 4.  NFL Case Consulting, LLC is a Delaware Limited-Liability Company, incorporated on January 9, 2017, just two days after the Settlement became effective.  Seeger Decl., Ex. B (State of Delaware's Division of Corporations' Entity Details).  The address for NFL Case Consulting, LLC, as per the letter sent to the Class Member, is 1855 Griffin Road, Suite B354, Dania Beach, Florida 33004.  *See id.*, Ex. A.

Also located at 1855 Griffin Road, Suite B354, in Dania Beach, Florida, is Liberty Settlement Funding.  Seeger Decl., Ex. C (State of Florida's Division of Corporations Fictitious Name Detail for Liberty Settlement Funding).  Additionally, at the same address is Liberty

Settlement Solutions, LLC, Liberty Settlement Solutions LLC and Liberty Contingent Recievables, LLC. *Id*., Ex. D (State of Florida's Division of Corporations Detail by Entity Name for Liberty Settlement Solutions, LLC, Liberty Settlement Solutions LLC [without the comma], and Liberty Contingent Recievables, LLC).[1]   James J. McCabe is a Managing Member of Liberty Settlement Solutions, LLC, Jim McCabe is listed as CEO of Liberty Settlement Solutions LLC, and James McCabe is Authorized Member of Liberty Contingent Recievables, LLC. *Id.* Jim McCabe has also been identified as Chief Executive Officer of Liberty Settlement Funding. *Id*., Ex. E (Aug. 14, 2015 press release regarding Liberty Settlement Funding closing on acquisition of $100 million in secured financing).

In the letter to the Class Members, McCabe represents that "there is an urgent deadline approaching" and that "[t]he registration and steps involved with filing an NFL concussion settlement claim is *very complicated*, but we are experts in claims management and will be with you every step of the way.  Call our team of NFL Settlement Experts at 1-855-285-4154 today to find out what you need to know and what you need to do before the deadline has passed." Seeger Decl., Ex. A (emphasis added); Brown Decl., Exs. 3 & 4 (emphasis added); *see also id.*, Seeger Decl., Ex. F, (http://nflcaseconsulting.com/ website, touting the organization as a "Team of NFL Settlement Experts").  It is clearly deceptive and misleading to label the registration and claims processes "very complicated" and to claim that McCabe and his team are "NFL Settlement Experts."   These coercive scare tactics are egregious because they are being employed for the obvious goal of persuading Class Members to sign contracts with McCabe and NFL Case Consulting, LLC and thereby potentially forfeit portions of their monetary awards in return for unnecessary "help" with the registration and claims process.

---

[1]  The word "receivables" is misspelled in the registered name of the entity Liberty Contingent Recievables, LLC.  *See* Seeger Decl., Ex. D.

The letter also states that "[e]ven if you do not have symptoms, you may still qualify, but you must sign up before the deadline so call us right away!" in the paragraph following the reference to a possible entitlement "to settlement compensation of up to $5 Million Dollars." Seeger Decl., Ex. A.  To the extent that such a statement implies that monetary awards might be obtained before there is a manifestation of symptoms, it is deceptive for that reason alone.

Indeed, it is the misrepresentations in the McCabe letter sent to Class Members (or perhaps other misrepresentations of which Co-Lead Class Counsel currently are unaware) which already may have resulted in Class Members entering into arrangements with NFL Case Consulting, LLC.  As per the Claims Administrator, NFL Case Consulting, LLC has registered five Class Members hailing from five different states across the country.[2]  Specifically, these Class Members were registered by jfingerhut@nflcaseconsulting.com and aschneider@nflcaseconsulting.com.  Brown Decl. at ¶ 10.

Aside from the written representations made by McCabe in the letter, Co-Lead Class Counsel cannot be sure what representations are being made by Mr. McCabe or others affiliated with NFL Case Consulting, LLC.  Either directly or through the Claims Administrator, Co-Lead Class Counsel has received several emails from one or more Class Members who have used different identity-concealing email addresses and have expressed the desire to remain anonymous.  *See* Seeger Decl., Ex. A (cover email dated March 17, 2017); *id.*, Ex. G (email dated March 14, 2017 from same individual to Christopher Seeger); Brown Decl., Ex. 1 (email dated March 14, 2017); *id.*, Ex. 2 (email dated March 16, 2017); *id.*, Ex. 3 (cover email dated March 17, 2017).  Because the sender(s) of the emails want to remain anonymous, Co-Lead

---

[2]   Should the Court so direct, Co-Lead Class Counsel will provide the identities of the Class Members registered by NFL Case Consulting, LLC, under seal, *in camera*, or in whatever manner that the Court prefers.

Class Counsel cannot submit an affidavit or declaration from him attesting to the facts asserted in the emails regarding verbal communications from those allegedly employed by NFL Case Consulting, LLC and other potentially related entities and individuals.[3]

Specifically, Co-Lead Class Counsel cannot confirm whether a call was made by an individual named Andrew Schneider to the Class Member or whether Mr. Schneider represented that he was "the official NFL legal team and approved by the judge" and that "he can get me $5 million by going to his own doctor."  Brown Decl., Ex. 1.  They also cannot determine whether Mr. Schneider encouraged the Class Member "to sign an agreement and go to his doctor," or whether "he has already signed up" several players.  Seeger Decl., Ex. G.  Additionally, they cannot verify any of the alleged verbal communications from NFL Case Consulting, LLC to a Class Member relayed in the March 17, 2017 cover email that was sent with the letter from McCabe, most notably, the following:

> This company called me and some of my retired buddies down here in Florida representing themselves as calling from the NFL's case management department. They also have our social security number and date of birth.  They're telling us that in order to register for the NFL concussion money they will send me a documents [sic] that needs to be signed.  They told me that they will pay for my doctor diagnosis and travel up to $10,000 and if I don't sign with them I won't get a settlement up to $5 million per player they told me.  The person that called me was named K.J. said he and his dudes call brain damaged players like myself all day long and on the weekends getting them to sign away 15% of their award by scamming them into thinking if they don't sign, their [sic] is no award and they are working for the NFL. Without signing they won't get their settlement and won't be in the class action[.]

*Id.*, Ex. A; Brown Decl., Ex. 3.  Finally, they cannot verify alleged verbal representations made by or the alleged involvement of Craig Sienema or Drecy Lafrance.  Seeger Decl., Ex. A; Brown

---

[3]  Co-Lead Class Counsel reached out to the Class Members at the email addresses listed on the emails, however, they received no response.

Decl., Exs. 2 & 3.  These are facts that Co-Lead Class Counsel hope to uncover by conducting

discovery of McCabe and NFL Case Consulting, LLC.[4]

For their own pecuniary gains, McCabe and NFL Case Consulting, LLC are

disseminating false and confusing information to Class Members.  An injunction preventing

McCabe and his cohorts from continuing to spread misinformation is wholly appropriate, as

explained below.

## III.   <u>ARGUMENT</u>

### A.   The Court Has Broad Authority To Prohibit Improper Communications to Class Members Pursuant to Federal Rule of Civil Procedure 23(d) and the All Writs Act and Should Exercise That Authority To Enjoin These Improper Communications

District courts have broad discretionary powers under Fed. R. Civ. P. 23(d) to supervise

communications with class members.  Rule 23(d), in relevant part, states:

> **Conducting the Actions.**
> (1) ***In General.***  In conducting an action under this rule, the court may issue orders that:
>
> . . .
>
> (B) require – to protect class members and fairly conduct the action – giving appropriate notice to some or all class members of:
>
> (i)   any step in the action …

Fed. R. Civ. P. 23(d)(1)(B)(i); *see Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 171 (1989);

*Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100-01 (1981).

---

[4]       Should the Court so direct, Co-Lead Class Counsel will provide the unredacted versions of the emails and the letters that are Exhibits A and G to the Seeger Declaration and Exhibits 1 through 4 to the Brown Declaration, under seal, *in camera,* or in whatever manner that the Court prefers.  Additionally, although the Class Member to whom the McCabe letter was directed at Exhibit A to the Seeger Declaration and Exhibit 3 to the Brown Declaration blacked out his own name, it is discernible on the unredacted version of the letter.  Co-Lead Class Counsel will reveal that individual's identity to the Court, upon request.

Courts have long recognized the potential for abuse that may occur when a party or its counsel communicate with members of a class or proposed class.  *See Gulf Oil Co.*, 452 U.S. at 99-100; *In re Sch. Asbestos Litig.*, 842 F.2d 671, 679-80 (3d Cir. 1988); *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 601-02 (2d Cir. 1986); *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1201-03 (11th Cir. 1985).[5]   Specifically, misleading communications to class members regarding the litigation pose a significant threat to the fairness of the proceedings, the fundamental rights of parties, the adequacy of representation and the general administration of justice generally.  *In re Sch. Asbestos Litig.*, 842 F.2d at 680; *see also Waldo v. Lakeshore Estates, Inc.*, 433 F. Supp. 783, 790-91 (E.D. La. 1977) ("Unapproved communications to class members that misrepresent the status or effect of the pending action also have an obvious potential for confusion and/or adversely affecting the administration of justice."), *appeal dismissed*, 579 F.2d 642 (5th Cir. 1978).

Because of the potential for abuse, many courts have found that this regulatory power is adjunct to the authority of the courts themselves.  District courts have "both the duty and the broad authority to . . . enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co.*, 452 U.S. at 100; *In re Sch. Asbestos Litig.*, 842 F.2d at 679-80.  "The judge has ultimate control over communications among the parties, third parties, or their agents and class members on the subject matter of the litigation to ensure the integrity of the proceedings and the protection of the class."  David F. Herr, *Annotated Manual for Complex Litigation, Fourth* §

---

[5]     As the Eleventh Circuit noted in *Kleiner*, commercial speech that is "untruthful or misleading . . . has no claim on first amendment immunity.…  Commercial speech merits constitutional safeguards only to the extent it is accurate, in keeping with its purpose of insuring the free flow of reliable information crucial to independent decisionmaking."  *Kleiner*, 751 F.2d at 1204 (citing *Cent. Hudson Gas Co. v. Pub. Serv. Comm'n*, 447 U.S. 557, 566 (1980), and *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976)).

21.33, at 404 & n.917 (rev. ed. 2016) (hereafter "MCL"); *accord In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, No. 05-MD-1720, 2014 WL 4966072, at *31 (E.D.N.Y. Oct. 3, 2014) (same). "The court may take curative action – such as requiring the distribution of corrective notices or entering injunctive relief – where misleading or false statements are made to class members." *Id.*; *see also In re Lupron Mktg. and Sales Practices Litig.*, MDL No. 1430, No. 01-10861-RGS, ECF Nos. 264-2, 281, 295, and 306 (ordering that Curative Notice was appropriate and that it be paid for by law firm that put misleading and inaccurate information concerning certified class on its websites and in direct mailings to class members).

In *Gulf Oil*, the Supreme Court advised courts that any order regulating communications with putative class members should be "based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." 452 U.S. at 101. In discussing the requirements for an order regulating communications with potential class members, the Supreme Court quoted *Coles v. Marsh*, 560 F.2d 186 (3d Cir. 1977):

> [T]o the extent that the district court is empowered . . . to restrict certain communications in order to prevent frustration of the policies of Rule 23, it may not exercise the power without a specific record showing by the moving party of the particular abuses by which it is threatened. Moreover, the district court must find that the showing provides a satisfactory basis for relief and that the relief sought would be consistent with the policies of Rule 23 giving explicit consideration to the narrowest possible relief which would protect the respective parties.

*Coles*, 560 F.2d at 189 (quoted in *Gulf Oil*, 452 U.S. at 102). In seeking an order limiting a party's communications with class members, plaintiffs must show that a restricting order would guard against the likelihood of serious abuses. *Gulf Oil*, 452 U.S. at 104. Showing that the

"interests embodied in Rule 23 might be hindered is a sufficient finding upon which to base an order limiting contacts." *Hampton Hardware, Inc. v. Cotter & Co.*, 156 F.R.D. 630, 633 (N.D. Tex. 1994).

Following *Gulf Oil*, many courts have been confronted with the need to supervise inherently coercive communications to absent class members.  In these situations, courts almost uniformly ordered limitations on such communications, if not curtailed the communications altogether.  *E.g., Georgine v. Amchem Prods., Inc.*, 160 F.R.D. 478, 502-03 (E.D. Pa. 1995); *Haffer v. Temple Univ.*, 115 F.R.D. 506, 512 (E.D. Pa. 1987); *Erhardt v. Prudential Group, Inc*., 629 F.2d 843, 845 (2d Cir. 1980); *Ralph Oldsmobile, Inc. v. Gen. Motors Corp.*, No. 99 Civ. 4567 (AGS), 2001 WL 1035132, at *2 (S.D.N.Y. Sept. 7, 2001).

In *Erhardt*, the Second Circuit recognized that it is the responsibility of the district court to prevent any unauthorized communications to class members:

> It is the responsibility of the court to direct the "best notices practicable" to class members, Rule 23(c)(2), and to safeguard them from unauthorized, misleading communications from the parties or their counsel.  Unapproved notices to class members which are factually or legally incomplete, lack objectivity and neutrality, or contain untruths will surely result in confusion and adversely affect the administration of justice.  To prevent abusive practices in the absence of a local rule, the court should include in its order of notice a provision limiting within constitutional parameters any unauthorized correspondence by parties and their counsel with class members.

*Erhardt*, 629 F.2d at 846.

Although Co-Lead Class Counsel do not know whether NFL Case Consulting, LLC disseminated a "mass mailing" to Class Members, they do know that at least two Class Members received identical letters from McCabe and that five others were registered by NFL Case Consulting, LLC.   Seeger Decl., Ex. A; Brown Decl., Exs. 3 & 4; Brown Decl., ¶ 10.

Additionally, other Class Members have telephoned the Claims Administrator to report having received similar letters from McCabe.  Brown Decl., ¶¶ 8, 9.

The Court has the authority to enjoin a third party pursuant to the All Writs Act, 28 U.S.C. § 1651(a).[6]  *In re Payment Card Interchange Fee,* 2014 WL 4966072, at *31.  "Where, as here, a district court retains exclusive jurisdiction over settlement agreements and distribution of settlement funds pursuant to those agreements, it may issue orders necessary to protect the settlement from threats by both parties and non-parties."  *In re Visa Check/MasterMoney Antitrust Litig.*, No. 96-5238, 2006 WL 1025588, at *4 (E.D.N.Y. Mar. 31, 2006).  To the extent that McCabe and NFL Case Consulting, LLC are working with lawyers or other litigation funders in spreading this misinformation and in soliciting and registering Class Members, those lawyers and/or other litigation funders also are subject to orders issued by this Court relating to the Settlement.  *See infra* fn. 7.

### B.       A Permanent Injunction Is Warranted

As the Second Circuit noted, "[i]njunctions issued under the authority of the All Writs Act stem from very different concerns than those motivating preliminary injunctions governed by Federal Rule of Civil Procedure 65.  Preliminary injunctions under Rule 65 are designed to preserve the status quo between the parties before the court pending a decision on the merits of the case at hand."  An injunction issued under the All Writs Act, however, is "needed to prevent third parties from thwarting the court's ability to reach and resolve the merits of the federal suit before it."  Furthermore, "there is a difference between the power to enjoin an unrelated non-

---

[6]       *See also In re Synthroid Mktg. Litig.*, 197 F.R.D. 607, 610 (N.D. Ill. 2000) ("An injunction, where necessary to protect the court's earlier orders . . . is authorized under the All Writs Act, 28 U.S.C. § 1651(a).  That power extends to non-parties.") (citing *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174 (1977), and *United States v. Silva,* 140 F.3d 1098, 1104 (7th Cir. 1998)).

party pursuant to the All Writs Act and the narrower authority delineated by Rule 65(d), which confines the application of injunctions to parties, 'their officers, agents, servants, employees, and attorneys, and [to] those persons in active concert or participation with them who receive actual notice of the order.'"  *In re Baldwin United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 338-39 (2d Cir. 2001).

In the context of the All Writs Act, "courts have recognized that injunctions exist outside of the traditional injunction framework governed by Fed. R. Civ. P. 65."  *Ackerman v. Exxon Mobil Corp.*, 734 F.3d 237 (4th Cir. 2013).  *See also Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004) ("The requirements for a traditional injunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns.") (citing *United States v. New York Tel. Co.,* 434 U.S. 159, 174 (1977) (affirming grant of injunction under the All Writs Act without regard to traditional four factors)).  Courts can therefore issue injunctions pursuant to the All Writs Act "if doing so would be 'necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law,' 28 U.S.C. § 1651(a), and provided that the terms of the injunction are sufficiently 'specific and definite' to apprise the party enjoined of the conduct which is prohibited and that the party enjoined receive notice of the injunction entered against them."  *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 2014 WL 4966072, at *32.

The requested injunction meets these requirements.  Co-Lead Class Counsel request that the Court enjoin McCabe and NFL Case Consulting, LLC and any other entities or individuals, including lawyers and/or other litigation funders, with whom they are working from continuing to disseminate misleading and deceptive communications to any Class Member regarding the

Settlement.  This action is necessary and appropriate in aid of the Court's efficient administration of the Settlement, to prevent confusion among Class Members, and to prevent improper solicitation[7] of Class Members.  The Settlement Agreement and the Notice materials – to which all Class Members have access – clearly describe the registration requirements, and provide the basis for accurate web-based content about the Settlement.  Additionally, the Settlement website continues to be updated with new information as the Settlement implementation progresses.

Although the reasoning behind the request for this injunction supports the approach detailed above, under a Rule 65 analysis, the result is the same – an injunction is proper. Under well-established principles of equity, "[a] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief.  A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *Brandt v. Burwell*, 43 F. Supp.3d 462, 482 (W.D. Pa. 2014).

Here, Class Members may suffer injury by entering into contracts with the McCabe, NFL Case Consulting, LLC and/or other related entities, contracts for the payment of private counsel fees, or contracts with other litigation funders.  Monetary damages do not properly compensate for the injury.  It is not a hardship for McCabe and NFL Case Consulting, LLC to cease misleading advertising.

---

[7]      *E.g.*, *McWilliams v. Advanced Recovery Sys., Inc.*, 176 F. Supp.3d 635, 641 (S.D. Miss. 2016) (determining that letter from counsel to class members was improper solicitation where, *inter alia*, recipients of her solicitation may have concluded "that they were definitively members of the class (given the language '***You fit in this class***'), that hiring [the attorney] was the only way to recover damages, or that [the attorney] was class counsel") (emphasis in original).

Finally, the public interest, and the interests of the Class Members, are served by the elimination of inaccurate information about the Settlement.  The misrepresentations at issue have obstructed the orderly process contemplated by this Court.   An injunction protecting Class Members and otherwise protecting the integrity of the class action process is therefore appropriate.  *See* MCL § 21.33 at 404 n.917 ("Corrective or prophylactic notice to potential class members may be ordered under Rule 23(d)(2) at any stage of the proceedings[.]").   Injunctive relief is required because "[e]ven if Class counsel were in a position to know that misleading or false communications would be made . . . beforehand, which it is not, the damage may be done in an instant."  *In re Payment Card Interchange Fee,* 2014 WL 4966072, at *33.

## C.     Additional Relief Requested

Besides enjoining McCabe's and his associates' improper communications, the Court should (i) direct that McCabe be taxed with the costs of any curative notice that the Court may deem necessary (such notice to be approved by the Settling Parties and the Court, and disseminated in accordance with the Court's directive), *see In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 2014 WL 4966072, at *31; MCL § 21.33, at 404 n.917; (ii) allow Co-Lead Class Counsel to take written and deposition discovery of McCabe and any associates or affiliates[8] in order to untangle their relationships and coordination with

---

[8]     As discussed above, NFL Case Consulting, LLC appears to be related, by location and through McCabe and Marc Hermes, to Liberty Settlement Funding, Liberty Settlement Solutions LLC, Liberty Settlement Solutions, LLC and Liberty Contingent Recievables, LLC.  *See* Seeger Decl., Ex. A (cover email) ("When I called KJ back a guy an[s]wered the phone saying Liberty Settlement Solutions and not NFL but when I got t[r]ansferred to KJ he answered the phone by saying, this is KJ from NFLCC."); *see also id.*, Ex. D.  In addition to those entities that are the subject of this motion, Co-Lead Class Counsel note that the Class Member emails, the Seeger and Brown Declarations and internet research point to the possible involvement of the following entities and individuals: Liberty Settlement Funding, Liberty Settlement Solutions LLC, Liberty Settlement Solutions, LLC, Liberty Contingent Recievables, LLC, Justice Funds, 777 Partners, LLC, Claims Strategies Group, IT Strategies Group, Claim Ruler, Marc Hermes, Andrew

respect to the communications at issue, and determine the Class Members with whom they communicated, the nature of the communications and whether any contracts or arrangements resulted; (iii) following discovery, void any contracts/loan arrangements that McCabe or his associates or affiliates have entered into with Class Members, as the Court deems appropriate; and (iv) take any other measures that it deems appropriate.

## IV.   **CONCLUSION**

For the reasons stated above, the Court should permanently enjoin McCabe's, NFL Case Consulting, LLC's and their associates' communications to Class Members; tax any costs of curative notice upon McCabe; allow Co-Lead Class Counsel to take discovery of McCabe and any associates or affiliates; void, if appropriate, any contracts that McCabe or his affiliates have entered into with Class Members; and take any other measures that it deems appropriate.[9]

Dated:  March 27, 2017                        Respectfully submitted,

                                              /s/ Christopher A. Seeger
                                              Christopher A. Seeger
                                              SEEGER WEISS LLP
                                              77 Water Street
                                              New York, NY 10005
                                              Phone: (212) 584-0700
                                              Fax: (212) 584-0799
                                              cseeger@seegerweiss.com

                                              *Co-Lead Class Counsel*

---

Schneider, Craig Sienema, Drecy Lafrance, Jason Fingerhut and "KJ."  It is not clear, however, what role, if any, each entity or individual played in these communications, or whether all of the entities and individuals are related.  If the Court permits discovery, Co-Lead Class Counsel will inquire as to involvement of each of these entities and individuals.

[9]     Should Co-Lead Class Counsel learn of any other persons or entities engaging in similar misrepresentations to the Class, they will alert the Court immediately.

16

Sol Weiss
ANAPOL WEISS
One Logan Square
130 N. 18th St. Ste. 1600
Philadelphia, PA 19103
Phone: (215) 735-1130
Fax: (215) 735-2024
sweiss@anapolweiss.com

***Co-Lead Class Counsel***