UNITED STATES DISTRICT COURT
EASTER DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION, | |
| Plaintiffs, <br><br> vs. <br><br> NATIONAL FOOTBALL LEAGUE, et.al, <br><br> Defendants, | No. 2:12-md-02323-AB <br><br> Honorable Anita Brody <br><br> MDL No. 2323 |
| THIS DOCUMENT RELATES TO: DKT#7151 | |

**OBJECTION AND MEMORANDUM IN OPPOSITION TO CO-LEAD COUNSEL'S PETITION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND EXPENSES, ADOPTION OF SET ASIDE OF EACH MONETARY AWARD AND OTHER RELIEF**

I. **INTRODUCTION**

This Objection and Memorandum of Law is filed on behalf of the 184 Retired NFL Players and members of the Class Certified in this matter as identified in Exhibit "A" hereto, and who state the following:

On February 13, 2017, Co-Lead Class Counsel (the "CCC") filed its Petition for Award of Attorneys' Fees, Reimbursement of Costs and Expenses, Adoption of Set-Aside of Each Monetary Award and other relief (ECF Docket No. 7151). Footnote 38 of the accompanying

1

Memorandum of Law (ECF Docket No. 7151-1), cites a number of cases purporting to justify the award of the monetary set aside of 5% of each individual award to a retired player in addition to the request for $112,500,000.00 as a defined common benefit Fee Award. As stated in the accompanying Memorandum, "[t]he requested [5%] set aside thus provides a source to facilitate fair and reasonable compensation ... of Plaintiffs' Counsel for the benefit of the Class over the coming years." With respect, these cases do not support an immediate twelve figure fee award for the CCC with a substantial 5% monetary set aside also for the CCC in the expected amount of at least $47.5 million (5% of the reported $950,000,000.00 Monetary Award Fund). In fact, the cases cited by the CCC seem to support the notion there is no basis for awarding both an immediate and fully paid defined fee benefit and a subsequent substantial fee set aside.[1]

For instance, in *In re Avandia Marketing Sales Practices and Products Liability Litigation*, MDL No. 1871, 2012 WL 6923367 (E.D. Pa. October 19, 2012), class counsel expended 134,000 hours of fee credits with a calculated lodestar of $55 million. As part of that common benefit, the class counsel took some 220 depositions, reviewed 30 million pages of documents, litigated various substantive motions on a variety of legal issues, attended some 30 discovery hearings before a special master, and prepared several bellwether cases for trial, among other significant matters. The expert hired to determine the value of that fee award, based upon the set aside and the expected value of the settlement, calculated a total fee award of approximately $143,750,000.00 (or roughly $1,072.00 an hour).

---

[1] A vast number of fee awards can be found in multidistrict cases. The undersigned assumes the CCC selected those cases that best support its position for a defined fee request ($112,500,000.00) and a 5% set aside. Although the CCC did cite *In re Diet Drugs*, 582 F.3d 524 (3rd Cir. 2009), it does not appear either this or the other cases cited support both a large defined fee award and the immediate large set aside sought in this case. Moreover, a large defined fee award apparently caused the court to abolish the previously ordered set aside in the Deep Water Horizon litigation. *In re: Oil Spill by the Oil Rig "Deep Water Horizon" in the Gulf of Mexico*, MDL No. 2179, 2016 WL 6215974, at Page 5 (E.D. La. October 25, 2016)(awarding $600 Million as a defined benefit fee paid by Defendants with 230,000 hours of attorney time; however, the initial 4% set asides "were ultimately released, the funds were returned, and no business, individual, or local government entity (**nor their own individually retained attorneys**) would be required to make any common benefit cost contribution or pay any common benefit fee in this litigation.")

In this case, CCC has identified approximately 51,000 of hourly fee credits with a calculated Lodestar of approximately $41 million for a defined fee award of $112,500,000.00, costs in the amount of $4,000,000.00, plus the 5% set aside of the amount of each players' claim for future fees. Not including funds for fees from the requested 5% set aside by CCC, the fee award to the CCC will still be approximately $2,206.00 an hour. Without including the requested set aside, compared to the counsel in the case the CCC cited, the CCC is receiving twice the hourly monetary benefit for doing about one third of the hourly work. The large hourly rate also assumes that none of the time submitted by the individual CCC counsel includes hours of time "passively involved in meetings, reviewing emails, telephone conferences, or attending hearings merely to observe" that should not be included as having contributed to the common benefit. *In re Nuvaring Products Liability Litigation*, No. 4:08 MDL 1964 RWS, 2014 WL 7271959, at Page 5 (December 18, 2014). *See also In re Guidant Corporation Implantable Defibrillators Products Liability Litigation*, MDL No. 05-1708, 2008 WL 682174, at Page 11 (D. Minn. March 7, 2008)(noting some class counsel conducted extensive discovery and prepared for trial while others filed a form complaint or other work requiring even less skill). However, because the Fee Petition fails to specify how that attorney time was spent, with deductions that might be warranted, the hourly fee award could be substantially greater than the $2,206.00 an hour sought under the defined fee award in this case. Under the circumstances, not only would an additional award through a set aside be inequitable, none of the cases cited by CCC support both an immediate twelve figure common benefit fee award and a substantial set aside taken from the individual claimants.

To be clear, despite the relative disparity in the amount of work done in these matters, the undersigned are not directly contesting the $112,500,000.00 fee award. But, with respect, given

the magnitude of the defined benefit fee award and large hourly rate engendered thereby, until such time as the CCC sets forth a detailed plan of costs that it claims are needed with attendant discovery to assist the Court in the evaluation of that plan, the funds that the CCC is requesting for the BAP and other programs needed should be held back from the defined fee award of $112,500,000.00. In this way, the Court can protect the interests of everyone until such time as it can be determined whether the common benefit has been realized and whether a set aside is actually necessary. The "district court must exercise its inherent authority to assure that the amount and the mode of payment of attorneys' fees are fair and proper." *In re Cendant Corporation PRIDES Litigation*, 243 F.3d 722, 730 (3d Cir. 2001). However, for the reasons stated below, the undersigned emphatically object to any set aside of the recovery of any individual player (or derivative claimant) award at this time.

## II. THERE HAS BEEN LITTLE OR NO COMMON BENEFIT SHOWN THE UNDERSIGNED COUNSEL REPRESENTING INDIVIDUAL RETIRED PLAYERS

In awarding a set aside for a common fund benefit, the Eastern District of Missouri touted the fact the "leadership group shares the products of its labors with all of the plaintiffs" including "all depositions and other discovery responses" and "state counsel [received] the massive document production." *In re Genetically Modified Rice Litigation*, MDL 06-1811, 2010 WL 716190, at Page 2 (E.D.Mo. February 24, 2010).

The undersigned representing the claims of the individual players have not experienced the same type of cooperation. In attempting to represent certain undersigned players who were formerly represented by other firms including members of the CCC, the undersigned contacted many of these counsel asking them to provide a statement of itemized costs to protect any reasonable costs expended on behalf of each former client as well as any medical records or

other documents former counsel had that might benefit the retired player in their individual injury claims. To date, only one firm on behalf of one player has provided documents. Perhaps none of these firms have any records or files related to these specific players. However, the Accompanying Memorandum to the Fee Petition and the Seeger Declaration both proclaim the important benefits of the "epidemiological study" conducted from the records of some 2,000 retired players. Perhaps it would have been helpful if any one of these firms had responded stating they do not have records for the specific players requested but the epidemiological study prepared by the CCC is available to assist with the "epidemiology of neurocognitive disease suffered by retired NFL Players". This and other valuable information that may be in the possession of these firms could have been provided to assist with the individual claims of our clients.

In addition, some firms have refused to accept their termination by the retired player and have refused to allow the undersigned to register as their primary counsel. Counsel have written the Locks firm on two separate occasions and called their offices at least twice asking for records and the withdrawal of their registration (Composite Exhibit B). As of the date of this filing, no response has been received. Nevertheless, in Exhibit D to the accompanying Memorandum of Law, the Locks Firm seeks its portion of the $112,500,000.00 fee award. Presumably, the Locks Firm will also seek a portion of the set aside, if ordered. Other retired NFL Players have expressed similar concerns about the scope of the prior representation by some CCC members in their individual claims and noted the failure of these CCC members to cooperate with their new counsel (Composite Exhibit "C"). On information and belief, other counsel representing retired NFL Players and the players themselves have likewise failed to receive the fruits of the labor of

the CCC in the prosecution of their individual claims.[2] This lack of cooperation makes it more difficult for class members to prosecute their claims. In other cases, the courts have used the concept of "common detriment" to properly value the fee award in circumstances where counsel have acted to prolong the litigation or otherwise frustrate the recovery sought by the injured parties. In such circumstances, a fee award can be diminished to compensate the parties and deter future poor conduct. *In re Nuvaring Products Liability Litigation*, No. 4:08 MDL 1964 RWS, 2014 WL 727159, at Page 5 (E.D. Missouri December 18, 2014).

Finally, it is not lost on the undersigned that the Fee Petition was filed on February 13, 2017, days after the registration process began while counsel representing the individual players were negotiating that registration process and preparing their clients for the immediate submission of their individual claims outside of the BAP Program. With respect, any fee petition before August 7, 2017, is premature because the class size and the benefits conferred cannot be calculated until the completion of the registration process. Moreover, any consideration before that date will deprive those former NFL Players who have yet to register the ability to obtain their own counsel to represent them on these very issues. Finally, the cornerstone for the request for the payment of the defined fee benefit by the CCC is that registration has started and "the program is expected to begin delivering benefits to Class Members in the next several months." The undersigned can only hope the latter is true but experience has shown those common benefits may not materialize as rapidly as the CCC expects. In short, there is no real reason to submit this proposal for evaluation while the most important part of the program is currently underway. In addition, more time to evaluate the Petition and conduct discovery should be afforded if the Court is inclined to grant the set-aside.

---

[2] *See* Pro se filing in Response and Opposing Motion to Zimmerman Reed's Notice and Motion for Attorney Lien, dated March 21, 2017 [ECF Document 7313].

### III. MANY OF THE PLAYERS ARE NOT USING THE BAP THAT CCC HAS REQUESTED THE SET ASIDE TO FUND

Section IV (E) of the accompanying Memorandum of Law (ECF Docket No. 7151-1) generally sets forth the reasons why the "Five Percent Set-Aside is Necessary to Support Effectuation and Administration of the Settlement." Included in that section are expenses in connection with the launch of the BAP, reviewing applications of BAP Providers, contracting with Providers to establish networks, finalizing BAP procedures, replacement of BAP providers over time, audits of the BAP programs and other BAP related expenses.

However, like many other retired players across the country, the players represented by the undersigned have elected to submit their claims outside of the BAP process by seeing their own physicians and using their own existing providers where possible. This divergence in approach between many of the members of the CCC and other firms representing retired players explains why many players have sought representation beyond their original counsel. Consequently, there is little or no reason to charge those retired NFL Players a set aside when they are not seeking the benefits of the BAP programs. Moreover, any delay in establishing a set aside, would not be effected by these claims because of the minimal common benefit beyond the $112,500,000.00 being sought for those players operating outside of the BAP.

### IV. THE PETITION BY THE CCC FAILS TO COMPLY WITH THE PROVISIONS OF THE APRIL 22, 2015, COURT ORDER APPROVING THE SETTLEMENT AS WELL AS THE TERMS OF THE SETTLEMENT

Paragraph I(D)(vi) of the April 25, 2015, Order, states the CCC may petition the Court to set aside up to 5% of each award to administer the settlement but this request "is subject to court approval, and any petition must include the amount of any set aside and its proposed use." *In re National Football League Players' Concussion Injury Litigation*, 307 F.R.D. 351 (E.D. Pa. 2015). The Set-Aside Provision of the Settlement, Section 21.1 of the Amended Settlement

Agreement, also clearly states in relevant part: "Any future petition for a set-aside will describe: (i) the proposed amount; (ii) how the money will be used; and (iii) any other relevant information." That same language appeared in the Notice approved by the Court to the retired players in Paragraph 34 under the heading how will the lawyers be paid (ECF Docket 6086-1).

The Petition filed by the CCC fails to comply with either the Court Order or the terms of the Amended Settlement. Instead, in contradiction of the Order and the terms of the settlement, the CCC plans to submit a detailed plan of administration only after the Court has approved the set aside. The plain language governing "(ii) how the money will be used; and (iii) any other relevant information" require something more than the general statement incorporated into the Accompanying Memorandum. Perhaps the requirement for other relevant information has been met, but what has not been provided is how the money will actually be used.

Without knowing what is really needed or how it will be spent in the future, it is difficult to assess whether the true common benefit of $1,163,425,000.00, alleged by the CCC has actually been realized. With respect, it could also very well be that the defined fee award provides more than enough compensation for the long term management of the program. Under the circumstances, the 5% set aside should not be invoked until any interested party has had sufficient time to review the plan details and conduct any necessary discovery related thereto. *See In re Diet Drugs,* 582 F.3d 524, 533 (3d Cir. 2009)(noting the court allowed limited discovery regarding the fee petition to provide more transparency to the process). The Federal District Court in that case also awarded an interim amount (approximately $38,430,728.00 of the $200,000,000.00) from the Fund A Legal Fees Escrow Account set aside by Wyeth f/k/a American Home Products. 582 F.3d at 536. Until such time as a detailed plan is filed, that same process could be followed here.

## V.     THE CCC HAS FAILED TO JUSTIFY THE NEED FOR A 5% MANDATORY SET ASIDE FROM THE CLAIMS OF THE INDIVIDUAL PLAYERS

The primary purpose for a common benefit fund set aside is to eliminate the free rider problem that often follows when counsel organizing the class are not fully compensated for their work and other new counsel reap a windfall because those new counsel received the benefits of that labor that was undercompensated. As stated by the Eastern District of Minnesota, in those cases where a common benefit is ordered, the common benefit fund is "[o]ne measure used by courts (and parties) to avoid unjust enrichment of persons who benefit from a lawsuit without shouldering those costs, and to fairly compensate those attorneys who coordinate the litigation and shoulder the heaviest burden...." *In re Guidant Corporation Implantable Defibirillators Products Liability Litigation*, MDL No. 05-1708, 2008 WL 682174, at Page 4 (D. Minn. March 7, 2008). The Fee Petition seems devoid of any allegation or suggestion that the CCC members have not been fairly compensated for their role and future roles in this matter. Because the second prong has been fully met and CCC counsel have been fairly compensated, under the circumstances, there is no reason for a 5% set aside.

Assuming the Court approves the Defined Fee and Cost Petition, the CCC will receive some $116.5 million and the NFL Parties will have paid $11,925,000.00 for the administration of the claims. The CCC has failed to demonstrate a further common benefit other than the assertion that the plan will operate with more efficiency. However, each individual player will be required to exert their own labor to run the gauntlet of claims procedures and medical requirements to obtain the best award possible. In this regard, the 5% set aside does not promise any common benefit for the individual players in obtaining the best award possible. As an example, the undersigned were involved in what was supposed to be an efficient and timely claimant friendly claims process in the Deepwater Horizon Litigation. That was not the case and it was left to

9

counsel representing the individual claimants to obtain the maximum award possible. Likewise, under the circumstances in this case and the limited time spent litigating this matter, proving each individual claim may actually become the heaviest legal burden.

### VI. THE PETITION FOR SET-ASIDE RESULTS IN OVERCOMPENSATION TO THE CCC AT THE EXPENSE OF THE INDIVIDUAL CLASS MEMBERS

The CCC repeatedly asserts that "not a penny" of benefits is paid to the $112,500,000.00 fund for attorneys' fees and the near $16,000,000.00 fund set aside for costs and administration. Nevertheless, the CCC seeks 5% of the monetary award of each retired player. The inherent contradiction of this position yields an absurd result. The CCC pleads the immense effort and common benefits bestowed upon the Class members as justification of its $112,500,000.00 fee award. To justify the size of that fee award based upon the time actually spent, there is little left that the CCC can claim that would justify a substantial set aside.

The traditional arguments in favor of a set-aside will focus on future work, but in this case that work is such that it was fully known at the time the settlement was reached. If the CCC has truly bestowed an innovative common benefit where "not a penny" of the monetary awards is used for payment of CCC fees, it could and should have negotiated that amount to be paid by NFL Parties. The effect is that should the Court acquiesce and grant a 5% set-aside on the announced "common fund benefit" of $950,000,000.00, the CCC would realize an award of fees and costs of $175,925,000.00 (initial attorneys' fees of $112,500,000.00, Notice Costs of $4,000,000.00, Claims Administration fees and costs of $11,925,000.00 and potential Set-Aside fees of $47,500,000.00). With that set aside, a full 27% of that enormous fee would be chargeable to the individual Class Members. With such a fee charged to the class members, there can hardly be any position more contrary to the argument that the settlement is an "innovative and ground breaking structure...."

As stated by others objecting to the set-aside and hereby incorporated by reference, "In arguing that the Court should award the Set-Aside over and above the $128,500,000.00 attorneys' fee Notice Costs and Administrative Costs award, the CCC cites very nebulous and sundry "labor" to be performed by the CCC in administration of the claims process. The CCC, however, has not shown how that labor is in any way different than that for which the CCC will have already been compensated by the over $128.5 million figure. Analyzing the affidavits in support of the CCC's Petition, moreover, any observer can readily see that the "Administrative Costs" are not only speculative, but that the CCC uses those same costs arguments on which to base its claim that additional monies are needed from a Set-Aside to ensure the smooth administration of the Settlement structure. This can best be described as a "triple dip.""

Both the CCC and the NFL Defendants were in the best position to know what labor would be necessary in the creation and maintenance of the claims process infrastructure. To allow both sides to proclaim an innovative settlement has been reached and not a penny is being paid to the lawyers is contradicted by the request for a set-aside. There is no innovative settlement where not a penny is spent when a set aside is ordered. To now request additional fees at this very early stage of the process (fees for which provision has already apparently been made in light of the award of $11,925,000 for Administration Costs) would be to the detriment of the individual Class Members.

### VII. <u>CONCLUSION</u>

Until such time as the CCC puts forth a detailed plan and cost statement with time for discovery by any objecting party, the request for a 5% set aside should be denied, without prejudice. Instead, unless the CCC can agree to set aside an amount it fairly believes will cover those future expenses from the defined fee award of $112,500,000.00, until such time as the

request for a set aside can be fairly heard, the trial Court should exercise its authority to appoint a special master to investigate the propriety and fairness of the defined fee award to ensure that no member of the CCC is unjustly enriched or undercompensated as the case may be. As noted earlier, the set aside requested in this matter could be $47 Million. As the Court has been provided with no real idea of what those future expenses may be, it is worth noting that only $875,000.00 of the common benefit fee fund was deemed necessary to compensate those counsel who continued to perform common benefit work in Nuvaring products liability litigation. *See In re Nuvaring Products Liability Litigation*, No. 4:08 MDL 1964 RWS, 2014 WL 7271959, at Page 6 (December 18, 2014). In the interim, the trial Court should also encourage counsel to work together to ensure that each retired NFL Player has the counsel of his choice to submit his claim without undue interference by other counsel, particularly those counsel seeking a share of the defined benefit fee award.

WHEREFORE, the undersigned respectfully requests that this Honorable Court deny the request for a 5% set aside without prejudice. The defined benefit fee award should be approved with a sufficient reserve that the CCC believes is necessary to hold until such time as the CCC can prepare a detailed plan of expense, the parties should be provided the opportunity to conduct any reasonable discovery to determine whether a set aside is actually necessary or should be paid under the defined fee award, from any set aside, or any combination thereof, and all other relief that is just and equitable.[3]

---

[3] It is somewhat unclear from the Notice to the Class Members pursuant to the March 8, 2017, Order of this Court [ECF Docket No. 7260], whether certain requirements like the signature of each player is required for a player's individual objection or for those objections filed on their behalf by counsel. In the event the latter is required, the undersigned seek leave from those requirements because of the time involved and the number of players represented or an extension of time to obtain that signature or any other such compliance if any is deemed necessary for this pleading.

## **DECLARATION**

The undersigned swear their representation of each Settlement Class Member (See Exhibit "A" attached hereto) on whose behalf this objection is being filed.

Dated: March 27, 2017

/s/ *Heather N. Barnes*
HEATHER N. BARNES, ESQ.
C. STEVEN YERRID, ESQ
THE YERRID LAW FIRM
NEUROCOGNITIVE FOOTBALL LAWYERS, PLLC
101 E. Kennedy Boulevard, Suite 3910
Tampa, FL 33602
(813) 222-8222 (telephone)
(813) 222-8224 (telefax)
hbarnes@yerridlaw.com
cjameson@yerridlaw.com
Florida Bar No. 207594
Florida Bar No. 85522

and

THEODORE "TED" E. KARATINOS, ESQ.
HOLLIDAY KARATINOS LAW FIRM, PLLC
NEUROCOGNITIVE FOOTBALL LAWYERS, PLLC
722 E. Fletcher Avenue
Tampa, FL 33612
(813) 975-4444 (telephone)
(813) 975-4445 (telefax)
tedkaratinos@helpinginjuredpeople.com
ko@gibbsandparnell.com
Florida Bar No. 983209

and

THOMAS E. PARNELL, ESQ.
GIBBS AND PARNELL, P.A.
NEUROCOGNITIVE FOOTBALL LAWYERS, PLLC
722 E. Fletcher Avenue
Tampa, FL 33612
(813) 975-4444 (telephone)
(813) 975-4445 (telefax)
tomparnell5@aol.com
Florida Bar No. 441988

13

and

JEFFREY D. MURPHY, ESQ.
JEFFREY D. MURPHY, P.A.
NEUROCOGNITIVE FOOTBALL LAWYERS, PLLC
800 W. De Leon Street
Tampa, FL 33606-2722
(813) 443-5553 (telephone)
(813) 436-5190 (telefax)
Florida Bar No. 860808

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2017 I caused the foregoing Objection and Memorandum in Opposition to Co-Lead Counsel's Petition for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, Adoption of Set Aside of Each Monetary Award and Other Relief to be electronically foiled with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, and that the filing is available for downloading and viewing from the electronic court filing system by counsel for all parties.

*/s/ Heather N. Barnes*
HEATHER N. BARNES, ESQ.
THE YERRID LAW FIRM