# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL | § | |
| LEAGUE PLAYERS' CONCUSSION | § | |
| LITIGATION | § | |
| _____ | § | No. 12-md-2323 (AB) |
| | § | |
| | § | MDL No. 2323 |
| THIS DOCUMENT RELATES TO: | § | |
| ALL ACTIONS | § | |

**Memorandum of Law in Support of the Alexander Objector's Objections to and in Opposition to Co-Lead Class Counsel's Petition for an Award of Attorneys' Fees Reimbursement of Costs and Expenses, Adoption of a set-Aside of Each Monetary Award and Derivative Claimant Award, and Case Contribution Awards for Class Representatives**

# TABLE OF CONTENTS

I.    SUMMARY ............................................................................................ 1

      A.    THE PLAYERS SHOULD GO FIRST ................................................. 1

      B.    CLASS COUNSEL WANTS "CONTINGENT" FEES, A BONUS AND
            FUTURE FEES BEFORE SUCCESS CAN BE DECLARED. ................. 2

      C.    CLASS COUNSEL'S FEE PETITION IS UNSUBSTANTIATED. ............ 3

      D.    CLASS COUNSEL'S PRESENT ASSESSMENT THAT BENEFITS
            OBTAINED FOR INJURED NFL PLAYERS WILL BE OVER ONE
            BILLION DOLLARS IS A GUESS. ..................................................... 4

II.   ARGUMENT ....................................................................................... 6

      A.    THE COURT SHOULD DENY THE PETITION AS PREMATURE .......... 6

      B.    THE COURT SHOULD DENY THE PETITION FOR LACK OF
            SUBSTANTIATING DATA OR EVIDENCE. ...................................... 10

      C.    BECAUSE CLASS COUNSEL SEEK THE ENTIRE 112.5 MILLION
            ATTORNEYS' FEE FUND, THE PETITION SHOULD BE DENIED,
            WITHOUT PREJUDICE, OR ABATED TO CONSIDER THE PETITION IN
            CONJUNCTION WITH ALL OTHER PETITIONS FOR COMMON-
            BENEFIT FEES. ........................................................................... 14

      D.    THE ALEXANDER OBJECTORS OBJECT TO THE PERCENTAGE-OF-
            THE-RECOVERY (POR) METHODOLOGY OF CLASS COUNSEL'S
            PETITION FOR AN AWARD OF FEES BECAUSE THE RECOVERY IS
            OBJECTIVELY INCALCULABLE. .................................................... 21

      E.    EVEN IF THIS COURT ACCEPTS CLASS COUNSEL'S CONSTRUCTIVE
            COMMON FUND METHODOLOGY, CLASS COUNSEL IS NOT
            ENTITLED TO THE FEES REQUESTED BECAUSE ITS CALCULATIONS
            OF THE "SIZE OF THE FUND" AND THE "PERCENTAGE SOUGHT"
            ARE MATHEMATICALLY AND ECONOMICALLY UNSOUND. .......... 27

1.    *Class Counsel's projected $1.2 billion "Size of the Fund" is almost all future dollars that must be converted to present value.* ............................................................ 27

2.    *Class Counsel has miscalculated the percentage applicable to the fees it requests; it is 22.8%, not 9% as alleged; under either figure, the fee is not reasonable.* . 29

F.    EVEN IF THE COURT ACCEPTS CLASS COUNSEL'S METHODOLOGY AND OVERLOOKS ITS MATHEMATICAL ERRORS, THERE ARE A NUMBER OF ADDITIONAL FLAWS IN CLASS COUNSEL'S ARGUMENTS IN FAVOR OF THE FEE AWARD. ............................... 31

1.    *Because the fund Monetary Fund Award is a potentially large, uncapped and purely a function of participation, the Court should apply a declining percentage reduction and not the 2.6 "upward adjustment" of fee Class Counsel requests.* ............................................................ 31

2.    *Class Counsel cannot rely upon the $10 million Educational Fund as part of the benefit to the Class Members.* ......................................................... 35

3.    *Class Counsel cannot rely upon "Complexity and Duration of the Litigation" as a favorable Gunter/Prudential factor.* .............................................. 35

4.    *Class Counsel cannot rely upon the "Value of Benefits" as a favorable Gunter/Prudential factor.* ...................... 36

G.    THERE IS INSUFFICIENT EVIDENCE TO SUPPORT THE FACTUAL FINDINGS CLASS COUNSEL SEEKS UNDER FEDERAL RULE 26(H) 37

1.    *Class Counsel has no evidence to support its argument on the Size of the Fund.* .................................................. 38

2.    *Class Counsel has no evidence to support its argument on the Lodestar Check or the amount of time counsel devoted to the Case.* ....................................................... 40

H. THE ALEXANDER OBJECTORS EVIDENTIARY OBJECTIONS TO THE DECLARATIONS FILED IN SUPPORT OF CLASS COUNSEL'S PETITION FOR FEES. ................................................................................... 44

I. THE ALEXANDER OBJECTORS OBJECT TO THE ADOPTION OF A SET-ASIDE AS PREMATURE, BASED UPON SPECULATION. ......... 57

III. CONCLUSION .................................................................................... 58

# TABLE OF AUTHORITIES

## CASES

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .......................................................................... 14

*City of Burlington v. Dague*,
505 U.S. 557 (1992) .......................................................................... 33

*Coleman v. Kaye*,
87 F.3d 1491 (3d Cir. 1996) ............................................................. 11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) ............................................................... 25, 32, 44

*Dungee v. Davison Design & Development Inc.*,
__ Fed Appx. __, 2017 WL 65549 (3d Cir. 2017) ........... 22, 23, 33, 34

*Fedorczyk v. Caribbean Cruise Lines, Ltd.*,
82 F.3d 69 (3d Cir. 1996) ................................................................. 45

*In re Agent Orange Prod. Liab. Litig.*,
611 F.Supp. 1296  (E.D.N.Y.1985)................................................... 30

*In re Ampicillin Antitrust Litig.*,
526 F. Supp. 494 (D.D.C. 1981) ...................................................... 10

*In re Baby Products Antitrust Litig.*,
708 F.3d 163 (3d Cir. 2013) ........................................................... 7, 8

*In re Baldwin–United Corp. Litig.*,
1986 WL 12195 (S.D.N.Y. June 27, 1986)....................................... 29

*In re Cendant Corp. PRIDES Litig.*,
243 F.3d 722 (3d Cir. 2001) ....................................................... 31, 37

*In re Deepwater Horizon*,
739 F.3d 790 (5th Cir. 2014) .............................................................. 7

*In re Diet Drugs Prods. Liab. Litig.*,
    553 F. Supp. 2d 442 (E.D. Pa 2008).................................................... 10

*In re Diet Drugs Prods. Liab. Litig.*,
    582 F.3d 524 (3d Cir. 2009) .................................................... 7, 13, 36

*In re Diet Drugs Prods. Liab. Litig.*,
    383 Fed. Appx.  242 (3d Cir. 2010) .................................................... 7

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*,
    55 F.3d 768, 820-821 (3d Cir. 1995)................................ 21, 22, 23, 35

*In re MGM Grand Hotel Fire Litig.,*
    660 F.Supp. 522 (D.Nev.1987) ......................................................... 30

*In re National Football League Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016) ........................................................... 6, 7

*In re National League Players' Concussion Injury Litig.*,
    307 F.R.D. 351, 374 (E. D. Pa. 2015) ............................................... 21

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*,
    2:10-md-02179, ECF 21849 (October 28, 2016) ................................ 7

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*,
    910 F. Supp. 2d 891 (E.D.La. 2012) .................................................. 7

*In re Pet Food Prods. Liability Litig.*,
    629 F.3d 333 (3d Cir. 2010) ............................................................. 20

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    No. 01-12257- PBS, 2008 U.S. Dist. LEXIS 111835 (D. Mass. Oct. 2,
    2008) ................................................................................................. 36

*In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148
    F.3d 283 (3d Cir. 1998) ......................................................... 10, 29, 32

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) ......................................................... 31, 37

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
　　2013 WL 5505744 (D. N. J. Oct. 1, 2013) ......................................... 30

*In re Synthroid Mktg. Litig.*,
　　264 F.3d 712 (7th Cir.2001) ............................................................... 14

*McDonough v. Toys "R" Us, Inc.*,
　　80 F. Supp.3d 626 (E.D. Pa. 2015)................................................... 8, 9

*Pennsylvania Envtl. Def. Found. v. Canon-McMillan Sch. Dist.*,
　　152 F.3d 228 (3d Cir. 1998) ............................................................... 40

*Pennsylvania v. Del. Valley Citizens' Counsel for Clean Air*,
　　478 U.S. 546 (1992) ..................................................................... 33, 34

*Perdue v. Kenny A. ex rel. Winn*,
　　559 U.S. 543, 553 (2010) ................................................................... 34

*Rose v. Dellarciprete*,
　　892 F.2d 1177 (3d Cir. 1990). .......................................................... 11

*Stetson v.  Grissom*,
　　821 F.3d 1157 (9th Cir. 2016).......................................................... 6

*Student Pub. Interest Research Grp. Of N.J., Inc. v. AT&T Bell Labs*,
　　842 F.2d 1436 (3d Cir. 1988) ............................................................ 33

*Sutton v. Bernard,*
　　504 F.3d 688 (7th Cir. 2007) ............................................................ 14

*Task Force*, 108 F.R.D. at 250...................................................................... 21

*Washington v. Phila. City Ct. of Common Pleas*,
　　89 F.3d 1031 (3d Cir. 1996) ............................................................. 10

*Williams v. Rohm and Haas Pension Plan*,
　　658 F.3d 629 (7th Cir. 2011) ............................................................ 36

## RULES

E.D. Pa. Local Rule 7.1(c) ............................................................................ 15

Fed. R. Civ. P. 23 ................................................................................. passim

Fed. R. Civ. P. 54 ..................................................................................... 16

Fed. R. Evid. 602 ................................................................................ passim

Fed. R. Evid. 702 ........................................................................... 25, 44, 45

Fed. R. Evid. 801 ..................................................................................... 44

## OTHER AUTHORITIES

Federal Judicial Center, Manual for Complex Litigation § 21.71 (4th ed.
      2008) ............................................................................................ 8, 9

## TABLE OF EXHIBITS

A.    Declaration of Kenneth G. McCoin, Ph.d., C.F.A.

B.    July 25, 2016, Letter from Christopher A. Seeger.

# I.    SUMMARY

## A.    The Players Should Go First

This Court approved a Class Action for the benefit of brain-injured former NFL Football Players.  Not one football player has been or will be paid any money from that Settlement until he (a) registers and waits for a Registration Determination; [1] (b) submits a "sufficient" and "complete" claims package (once Class Counsel and the NFL determine what must be included) demonstrating a Qualifying Diagnosis by a Qualified MAF Physician (once the Claims Administrator establishes a list of such physicians) [2] (c) waits through a potential audit of his claim; [3] (d) waits through the claim determination process; [4] (e) waits through any appeal of

---

[1] Article IV of the Settlement sets forth the Registration process and provides that the Claims Administrator must "issue a favorable or adverse Notice of Registration Determination. "

[2] Article VIII sets forth the submission and review of claims packages procedure. Section 8.2(a) assigned Co-Lead Class Counsel and Counsel for the NFL Parties as responsible for determining the necessary content of such package.  Section 6.5 assigns responsibility for establishing and maintaining a list of Qualified MAF Physicians to the Claims Administrator.  Section 8.4(a) contemplates a Preliminary Review by the Claims Administrator for sufficiency and completeness.

[3] Section 10.3(c) requires the Claims Administrator to audit "ten percent (10%) of the total qualifying Claim Packages and Derivative Claim Packages  on a monthly basis and, under Section 10.3(h), monetary payments will not proceed until and unless the audit is complete and "there has not been a misrepresentation, omission, or concealment of a material fact."

[4] The Claims Administration review process, under Section 8.6 includes verification and investigation of "facts and details of any aspect of the claim package" for any claimant, including a demand for additional documentation.

the Claims Administrator determination;[5] and (f) waits through the resolution of any liens arising from his medical care.[6] These injured NFL players have a lot of work and waiting ahead of them before they will see any benefit from this Settlement.  But, the lawyers that the Court appointed to act in these football players best interest, lawyers whose fees are contingent upon successfully obtaining a benefit for the football players, want to leap ahead of their injured clients and be paid immediately.  The lawyers don't want to be paid for the work they have performed.  Instead, the lawyers want to be paid a percentage of the amount of the NFL Football Players benefits that are not yet known and not yet paid.  The Court should deny the Petition.  The injured players should get their money first.

B.    Class Counsel Wants "Contingent" Fees, a Bonus and **Future** Fees Before Success Can Be Declared.

The Court should deny or defer this petition for fees. Class Counsel and the seventy-five attorneys they have designated to assist them seek $112.5 million in attorneys' fees and reimbursement of costs and out-of-

---

[5] Section 9.5 permits an appeal by not only the Settlement Class Member, but also Co-Lead Class Counsel and the NFL Parties of any Claims Administrator determination of (a) entitlement to a Monetary Award or (b) the calculation of a Monetary Award.

[6] Article XI appoints a separate Lien Resolution Administrator to establish procedures to identify and resolve liens arising third party payments (i.e. Medicare) of the players' obligations.  Section 11.3(g) states that "the Claims Administrator "will not pay any Monetary Award to a Settlement Class Member" prior to a determination of the amount needed to reimburse or satisfy the liens and a "determination of the "holdback" amount to be deducted from the Monetary Award.

pocket expenses.  Almost $107,000,000 of that sum is the attorneys' fee request.  They further ask this Court to immediately hold back 5%, or the maximum allowed under the Settlement, of every award under this Settlement to prospectively pay their future fees.[7]  Thus, Class Counsel asks this Court to approve an award of and Class Counsel's distribution of approximately $160 million in attorneys' fees – all before a single Class Member has enjoyed a single dollar of recovery from this Settlement.  Any Petition for a percentage of the recovery is premature.

C.    Class Counsel's Fee Petition is Unsubstantiated.

The Court should deny this petition for fees for lack of any substantiating data or evidence from which this Court could conduct an appropriate analysis. Under this Settlement, any request for money submitted by a Class Member, the Claims Administrator, the Special Master, the Lien Resolution Administrator must be reasonable and substantiated. But, Class Counsel submits the fee petition asking this Court to "review" and approve the fees and expenses, without supplying anything to review. There is no non-speculative data to support the computation of the "size of the fund" and the "number of persons benefited" and, therefore even Class

---

[7] Based upon Class-Counsel's unsupported guess that the Settlement will pay out $950,000,000 over 65 years, that is an additional fee request of $45,470 million, or $25.9 million discounted to present value.  *See* Declaration of Kenneth G. McCoin, Ph.d., C.F.A., attached hereto as Alexander fee objectors Exhibit A.

Counsel's "constructive common fund" is guesswork.   And, there is no evidence from which the Court could conduct a Lodestar Check of a percentage-of-the-recovery (POR") award.   None of the attorneys have submitted a single daily time record to support the 50,912.39 claimed hours of work, though such attorneys were ordered to maintain those records and Class Counsel indicates they exist.   None of the attorneys have submitted books, records, vouchers or cancelled checks to support the millions in expenses incurred, though such attorneys were ordered to maintain those records and Class Counsel indicates they exist.   Not a single attorney-fee declaration provided to this Court even avers that the fees incurred are reasonable, let alone not duplicative.  And, seeking all of the attorneys' fees ever to be paid by the NFL, Class Counsel offers no explanation for soliciting and then withholding the common-benefit submissions from objecting counsel. The Petition is, in this form, conclusory, unsupported. and unfair.

D.      Class Counsel's Present Assessment that Benefits Obtained for Injured NFL Players will be Over One Billion Dollars is a Guess.

The Court should deny this petition for fees that rests almost entirely upon a valuation of the Monetary Award Fund that is flawed in at least three separate ways.  Class Counsel alleges that it has computed the value using

inapplicable, hearsay[8] actuarial figures that do not support the computation. The projected Class Counsel's projected Settlement participation comes from Class Counsel's lay participation assumptions founded upon an unsound methodologically; that is, the number of "visitors" to the Settlement Website. Finally, Class Counsel's valuation of the Monetary Award Fund is set forth in future dollars though its own expert has acknowledged that only approximately half of the projected compensation will be paid in the first 20 years of the operation of the settlement; yet, Class Counsel makes no effort to convert the future dollars into present value. The Petition contains fatal, analytical flaws.

Therefore, the Alexander objectors detail these objections and additional objections below to the best of their ability, given the lack of information supplied.[9]  Class Counsel's Petition should be rejected and

---

[8] Co-Lead Class Counsel adopts and repeats as his own the computations of Dr. Thomas Vasquez, Paragraphs 44 60, Declaration of Christopher A. Seeger (ECF No. 7151-2). Mr. Seeger is not qualified to render this opinion. And, Dr. Vasquez' February 9, 2014 report of projections of program participation and potential value is (a) itself based upon lay speculation of participation from Class Counsel (b) unreliable methodology; and (c) is wholly irrelevant to a Settlement proposed, reviewed, and approved **after** the report was generated.

[9] The February 21, 2017 Motion for Entry of Case Management Order Governing Applications for Attorneys Fee; Cost Reimbursements; and Future Fee Set-Aside, asking this Court to establish a schedule for filing and vetting common-benefit fee petitions in accordance with Article XXI Of the Settlement remains pending. *See* ECF No. 7176. The Alexander Objectors reurge the Motion and object to the Court's March 8, 2017, Order scheduling "all objections or other responses" be filed without the benefit of such discovery or data. Without access to the underlying data, the Alexander objectors do not

reconsidered no earlier than the actual award of Settlement funds to the first registrants <u>and</u> upon no less documentation than Class Counsel committed to in September, 2012[10], to maintain contemporaneously for later submission in support of a few request.[11]

## II.    ARGUMENT

A.    <u>The Court should deny the Petition as Premature</u>

When the Court approved this Settlement and the Third Circuit upheld the Court's decision, one of the Settlement features was the "attorney-fee-deferral procedure." *In re National Football League Players Concussion Injury Litigation*, 821 F.3d 410, 444 (3d Cir. 2016).  Objectors argued that deferring consideration of the attorney fee was error; but, the objection was overruled and attorney-fee-deferral is the procedure for this Settlement.  *Id.*

---

have a meaningful opportunity to object; the most that objectors are able to do is point out the conclusory, unsubstantiated nature of this fee petition.  By way of example, the conclusory "hours" submission of seventy-one separate lawyers provides the Court no possible method to ensure that there has been no duplication of effort, as the Court must do.  The Court must have a way to determine whether the hours billed were redundant, excessive, or otherwise unnecessary.  *See e.g. Stetson v.  Grissom*, 821 F.3d 1157 (9th Cir. 2016). There is nothing submitted from which this Court could craft the requisite findings of fact and conclusions of law.  Fed. R. Civ. P. 23(h)(2)-(3).

[10] *See* Plaintiffs' Uncontested Motion for Order Establishing a Time and Expense Reporting Protocol and Appointing Auditor, ECF No. 3698, along with proposed reporting form.  *See also* Case Management Order No. 5, ECF No.  3710.

[11] Upon Class Counsel's unopposed request, this Court entered Case Management Order No. 5 in September, 2012, that established a protocol for class counsel to maintain "contemporaneous time and expense records" which document compensable time and expenses, in categories designated by the Court, within limitations specified by the Court.

Now, however, Class Counsel is not prepared to wait as the Third Circuit contemplated.

Specifically, reviewing the settlement in this case, the Third Circuit noted the 7 years that elapsed between the approval of the settlement and the interim and final fee awards of the *Diet Drug* litigation.  *Id*., citing *In re Diet Drugs Prods. Liab. Litig.* 582 F.3d 524, 534-35 (3d Cir. 2009).  In fact, the *Diet Drug* fee award was not made until the Settlement Trust had paid out over $300 million in benefits per year to the class per year.  *See In re Diet Drugs Prods. Liab. Litig.*, 383 Fed. Appx.  242 (3d Cir. 2010).  The Third Circuit also noted the procedure for deferral of fees in the Deepwater Horizon litigation. *In re National Football League Players Concussion Injury Litigation*, 821 F.3d at 445, *citing In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 910 F. Supp. 2d 891, 918 (E.D.La. 2012), *aff'd sub nom In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014).  Ultimately, *Deepwater Horizon* counsel waited four years and until 9 billion in Settlement benefits were paid, to present their common benefit fees. *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 2:10-md-02179, ECF No. 21849 (October 28, 2016).

Class Counsel's failure to cite or distinguish *In re Baby Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2013) on the timing of a fee

award is troubling.  Vacating an award of class attorneys' fees, the Third

Circuit stated:

> In evaluating a fee award, [the district court] should begin by
> determining with reasonable accuracy the distribution of funds
> that will result from the claims process.  This may require it "to
> delay a final assessment of the fee award to withhold all or a
> substantial part of the fee until the distribution process is
> complete."

*Id.* at 179, citing Federal Judicial Center, Manual for Complex Litigation §

21.71 (4th ed. 2008).

Here, the distribution process for the Settlement has not begun; the

registration period is barely open and will not close until August 7, 2017.  It

is not known how many class members will participate in the program.

Therefore, Class Counsel is jumping the gun on its request for (1)  a

percentage of "the recovery" as a fee; and (2) a set-aside for future

anticipated participation without basic information that is critical to this

Court's ability to  determine "with reasonable accuracy the distribution of

funds that will result from the claims process." *Id.*

It would seem axiomatic that, as this Court has observed, "a district

court must have specific details about the value of the settlement to class

members" including the amount that will be distributed.  *McDonough v.*

*Toys "R" Us, Inc*., 80 F. Supp. 3d 626, 640, 650-51 (E.D. Pa. 2015) (Brody,

J.) (distinguishing the subject settlement from the *In re Baby Products*

settlement on the basis that the subject settlement allowed the Court to know, not guess, "the total value of claims and the exact amount that will be distributed").  Class Counsel does not and cannot argue that the Settlement in this case is like the sum-certain-distribution in *McDonough*.

The Third Circuit draws its class fee procedure largely from the Manual for Complex Litigation. The Manual speaks to (a) eligibility for Court-awarded fees; (b) proceedings to award Fees; (c) motions for attorney fees; and (d) judicial review, hearing and order.  *See generally*, Federal Judicial Center, Manual for Complex Litigation, § 21.71 (4th ed. 2008).  The Manual does not suggest that the first counsel to seek a common benefit fee is the first served, or that certain counsel get to determine the eligibility of other counsel for common benefit fees. The Manual says that the determination and allocation of common benefit fees is a Court responsibility that must be administered through a judicial process based on well-established jurisprudence.  Consistent with the Manual, counsel should wait until a history of benefits is established just like the *Diet Drug* lawyers waited and just like the *Deepwater Horizon* lawyers waited – because only then will the Court have the ability to determine with any reasonable accuracy the distribution of funds that will occur in this claims process.

Finally, it is of note that Class Counsel would not be harmed by

waiting inasmuch as "interest is properly included in the monetary value of the original Settlement Agreement." *In re Diet Drugs,* 553 F. Supp. 2d 442, 470 (E.D. Pa 2008), citing *In re Ampicillin Antitrust Litig.,* 526 F. Supp. 494, 495 n. 2 (D.D.C. 1981).

The fee petition is premature, particularly as it seeks a percentage of the recovery.   And, the procedure by which Class Counsel urges its resolution (first come; first and only served) does not show adequate respect for the quantum of information and the level of review required of the Court by the Third Circuit.  The Court should deny the Petition as premature.

B.    The Court should deny the Petition for lack of substantiating data or evidence.

The Court is required to conduct "a through judicial review of [the] fee applications" in this class action.  *See In re Prudential Ins. Co. American Sales Practice Litigation Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998). The Court cannot conduct such thorough review because Class Counsel has not submitted anything but hours and rates to justify a Lodestar check.

A lodestar analysis is strongly presumed to yield a reasonable fee, but it is founded upon (1) the number of hours **reasonably** expended on the litigation – multiplied by – (2) a reasonable hourly rate.  *See Washington v. Phila. City Ct. of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996) (emphasis supplied).  "[A] district court may not set attorneys' fees based

upon a generalized sense of what is customary or proper, but rather must rely upon the record." *Coleman v. Kaye*, 87 F.3d 1491, 1510 (3d Cir. 1996).

The  Third Circuit is clear on what is not a reasonable fee.  A court should not compensate fees that are excessive, redundant or otherwise unnecessary. *See Rose v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). Class Counsel cursorily assures the Court that the petition contains "[o]nly time and expenses that inured to the common benefit of the Class, and advanced the claims resolved in the Settlement." But, Class Counsel's assurance is not evidence.

The Court needs to know what the attorneys were doing for all of the 50,000 hours claimed in order to know that the fees are not redundant or unnecessary.  But, a review of the declarations submitted in connection with Class Counsel's Petition will not provide that information.  The Declaration of Frederick Schenk (Dkt. No. 7151-25) is the only declaration that provides any detail about the time spent.  Mr. Schenk's extra information reveals the necessity of a redundancy check.

Mr. Schenk states that he not only attended meetings in New York where invitations had been extended to all plaintiff's attorneys who had clients or who wanted to learn more about the proposed class action, but also most of the "many scheduled phone conference calls in anticipation of in

preparation of that event." Mr. Schenk provides no information about whether his participation was for a "client" or for the Class Members. Mr. Schenk also states that he attended the preemption oral arguments, but does not explain how many hours are billed for attending argument; why his attendance benefitted the Class Members; and why his attendance was essential inasmuch as he is not listed as one of the many counsel for Appellees on appeal.

In short, despite the few additional details provided by Mr. Schenk's declaration, it suffers the same infirmity of all the rest – it is a conclusory presentation of hours (no date or task detail) and it is without any explanation of why incurring the fee was reasonable (not redundant), in light of the other counsel who were performing the same task, or how his presence benefitted the Class Members.

Class Counsel has acknowledged that the underlying data is necessary to a fee award and, in fact, that contemporaneously maintaining that data is necessary to insure the integrity of the review. Specifically, on September 7, 2012 Class Counsel filed an Uncontested Motion for Order Establishing a Time and Expense Reporting Protocol and Appointing Auditor, stating:

> Entry now of an Order establishing a protocol governing permissible common benefit time and expenses invested in this matter and requiring periodic reporting by plaintiffs' counsel conducting such common-benefit work **will help ensure only**

> ***reasonable and necessary fees and costs inuring to the benefit
> of all plaintiffs are incurred***. Establishing such guidelines early
> in the course of this litigation, even prior to the establishment of
> a Common Benefit Fund, if any, will help ensure that staffing
> levels for common-benefit work are appropriate and common-
> benefit time and expenses are reasonable, and will reduce the
> risk of later conflict over fees and expenses. *See Manual for
> Complex Litigation (Fourth)* §§14.212, 14.213 (2011). Further,
> imposing record-keeping procedures and requiring the
> submission of periodic reports "encourages lawyers to maintain
> records adequate for the Court's purposes," and facilitates
> Court review of later-submitted fee petitions, if any. *See id.* §§
> 14.212–214.

*See* ECF No. 3698, p. 3, ¶ 8 (emphasis supplied).

Other similar class actions follow a formula similar to that of Case

Management Order No. 5.  For example, the *In Re Diet Drugs* Court set

forth the following fee protocol required time and expense records be

submitted to an auditor who then reviewed those records for compliance

with Court-established criteria and then common benefit counsel submitted

"verified copies of time records which were maintained contemporaneously .

. . throughout the litigation" resulting in a thirty-volume compendium [ ] of

fee presentations."  582 F.3d at 533.  Here, by contrast, Class Counsel has

not submitted any data maintained and prepared under Case Management

Order No. 5, though court-appointed Class Counsel Dianne M. Nast

indicates in her Declaration (ECF No. 7151-9) that she performed the legal

service of "drafting and administering Case Management Order No. 5 re:

13

Submission of Plaintiffs' Time and Expense Reports, including quarterly collection of reports."

The Petition is inadequate without that data to "ensure only reasonable and necessary fees and costs inuring to the benefit of all plaintiffs [were] incurred." The Petition should be denied.

C.  Because Class Counsel seek the entire 112.5 million attorneys' fee fund, the Petition Should be denied, without Prejudice, or abated to consider the Petition in conjunction with all other Petitions for Common-Benefit Fees.

It is well-settled that attorneys who achieve a benefit for class members are entitled to compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"). This rule "is based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard,* 504 F.3d 688, 692 (7th Cir.2007), citing *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir.2001).

Yet, Class Counsel improperly asks the Court to consider its Petition to the exclusion of a fee petition by any other attorney contributing to the common benefit of the Class. In response, the Court has established a schedule for Co-Lead Class Counsel's Petition, alone. *See* March 8, 2017,

order (ECF No. 7261). Under the circumstances of this case, the preference for Class Counsel's Petition operates to deny due process to those who have relied upon the language of the Settlement Agreement and Final Judgment--the Class Members and their counsel.

First, by the Petition, Class Counsel seeks all of the $112.5 million in fees available.

Second, Class Counsel has argued, incorrectly, that other counsel have waived their right to fees.  But, this Court previously ordered that "motions for an award of attorneys' fees and reasonably incurred costs, as contemplated by the Parties in Section 21.1 of the Settlement Agreement, may be filed at **an appropriate time to be determined by the Court**, after the Effective Date of the Settlement Agreement."  *See* Paragraph 15 of this Court's May 8, 2015, Amended Final Order and Judgment.  Thus, this Court held that it alone would determine the appropriate time for such motions (and, necessarily, that the Local Rules of the Eastern District of Pennsylvania would not determine the deadlines for those motions).

Class Counsel cannot, by filing its Petition for Fees or by invoking the Local Rules[12], circumvent this Court's decision that the Court alone will

---

[12] Class Counsel suggests that upon its filing of the Petition for Fees, E.D. Pa. Local Rule 7.1(c) engaged to establish the "appropriate time" for parties to respond to the motion.  Again, this Court has not determined the appropriate time for filing the motion

determine the appropriate timeframe and process for seeking and allocating common benefit fees.   If Class Counsel's Petition for Fees was not foreclosed by Federal Rule of Civil Procedure 54,[13] then no one else's petition should be foreclosed.[14]   At the same time, if the time has expired for attorneys who benefited the Class to seek reimbursement of fees and expenses, then Class Counsel's Petition for Fees likewise should be stricken as untimely.

Third, Class Counsel has, as an alternative position, suggested that the Court hold back a small portion of the fees for the consideration of two other fee petitions currently on file but not set for briefing.  *See* Declaration of C. Seeger, paragraph 100 ("With respect to the fee petitions filed (or to be filed) by counsel for the Faneca and Joes Objectors (*see* ECF No. 7070, 7116), I respectfully propose that the Court direct a segregation or set-aside form the Attorneys' Fees Qualified Settlement Fund (see paragraph 121 n. 10, infra) of whatever amount it deems appropriate pending resolution of

---

[13] yet.  It is impossible for the Alexander objectors to be late, as measured by a motion that was prematurely filed in the first place.

[13] Federal Rule of Civil Procedure 54(d)(2), if it applies, required a party to make a claims for attorneys' fees no later than 14 days after the entry of judgment.  Class Counsel did not.

[14] The Alexander Objectors respectfully renew their request that the Court establish a schedule for all attorneys to submit petitions, in equity, seeking reimbursement for reasonable efforts that benefitted all Plaintiffs.

those petitions, but otherwise permit the allocation and distribution of fees and reimbursement of expenses among non-objectors' counsel").[15]

Even this alternative suggestion would reward a race to the Courthouse in disregard of this Court's stated intent to establish the "appropriate time" for fee petitions; that is a stated intent upon which the Alexander objectors' counsel relied.  To date, this Court has only determined the appropriate time for (a) objections and responses to Co-Lead Counsel's Petition and (b) Co-Lead Class Counsel's omnibus reply.  The Court has not established an appropriate time for other common-benefit fee applications. But, in light of the limited attorneys' fee fund, the Court should entertain all fee petitions at the same time.

Finally, to the extent that Class Counsel urges that all requests for common-benefit fees were submitted or were to be submitted by and through Class Counsel, the Alexander objectors specifically object to Class Counsel's failure to include their common-benefit submission and ask that Class Counsel be estopped from taking such a position for the reasons that

---

[15] The Alexander objectors object to Class Counsel's unvarnished attempt to unilaterally deprive objectors' counsel of either an appropriate common-benefit fee or an appropriate chance to seek a common-benefit fee.  In the Declaration of C. Seeger, paragraph 75, Class Counsel reveals the common-benefit methodology:  "[a]ttorneys and staff working at my direction and under my supervision "collected and reviewed submissions of common benefit time and reimbursable costs and expenses submitted by the PEC, PSC, and by other firms **to which I had assigned common benefit work**." (emphasis supplied).

follow.

The Settlement is silent on how "entitled attorneys" are to be identified, but it does not authorize Class Counsel to unilaterally decide who is and who is not an "entitled attorney." Class counsel apparently recognized in July, 2016 that "entitled attorneys" are those attorneys who performed a service or incurred an expense that benefitted the entire class.  *See* July 25, 2016 letter from C. Seeger, Exhibit B.  Thus, Class Counsel set itself on a course to accumulate all "common benefit" fees and expenses.  In fact, Class Counsel was very clear about the timeline for "common benefit":  It must be incurred between the inception of the MDL (i.e. "post-MDL" ) and "July 15, 2016."  *See id.*  It was those expenses incurred "for the common benefit of all class members" and not "in connection with your representation of individual clients." *See id.*

Class Counsel has now adopted the position that "eligible attorneys" are those attorneys unilaterally, but secretly, determined by Class Counsel as worthy of inclusion in the Petition for Fees filed by Class Counsel.  If Class Counsel did not choose to include a particular attorney's fees and expenses in the Petition, so the argument goes, that attorney is not an "eligible attorney."  Class Counsel states that the fee petition "includes the law firms that have done important common benefit work for the litigation, approved

18

by Co-Lead Class Counsel."[16] Notably, not one of the "plaintiffs' counsel" included an objectors' plaintiffs' counsel.

But it was Class Counsel who solicited the undersigned's report for common benefit fees.   Specifically, on July 25, 2016, Class Counsel communicated with the Alexander Objectors' counsel and stated:

> "We now turn our attention to preparing the petition for award of class attorneys' fees and expenses (the "Petition")"

> "Please submit to me a time and expense report setting forth your firm's professional time and expenses incurred for the common benefit of all class members."

> "Time and expenses incurred in connection with your representation of individual clients should not be included in your submission."

> "Accuracy is essential as every time and expenses submission maybe subject to an audit."

> **"I will follow up by letter if anything else is needed from you for the Petition."**

*See* July 25, 2016 Letter from Mr. Seeger (emphasis supplied), attached as Exhibit B.

Based on the letter, the Alexander Objector's counsel submitted their time and expenses incurred "for the common benefit of all class members." They received no follow up from Class Counsel that indicated that something else was needed.  They were unaware that Class Counsel would

---

[16] Class Counsel Memorandum of Law in support of its Petition for Fees, p. 2 fn 4.

not present their claim for common benefit fees and expenses for the Court's consideration or include it in their own fee petition until it received a copy of Class Counsel's Petition for Fees.   Based upon Class Counsel's representation that it was aggregating "common benefit" time and expenses, the Alexander Objectors relied upon Class Counsel to submit their counsel's requested time and expenses.

This Court did not delegate the authority to Class Counsel to determine whether a particular attorney conferred a common benefit on the Class.   The Court's only order, as described above, made clear simply that the Court itself would be in charge of this process – not Class Counsel.   Had the Court delegated some processing role to Class Counsel, the Court would still be required to perform a rigorous review of the request.[17]

In light of (a) the Court's statement that it would set the appropriate time for fee petition matters; (b) the limited fee fund available; (c) Class Counsel's unfulfilled representation that it would submit counsel's common benefit fee data to the Court; and (d)  the equitable and due process right of

---

[17] *See In re Pet Food Products Liability Litigation*, 629 F.3d 333, 359 (3d Cir. 2010) (Weiss, J., concurring and dissenting) (noting that the Third Circuit has "held that even in the absence of an objection a 'thorough review of fee applications is required in all class action settlements' in order 'to detect not only actual abuse caused by attorney-class conflict, but also 'potential public misunderstandings [that such conflict] may cultivate) (internal citations omitted).

the Alexander Objectors to have an opportunity to submit a common benefit fee petition, the Court should deny the Petition and schedule all Petitions for consideration on a schedule established by the Court.

D.    The Alexander Objectors object to the Percentage-of-the-Recovery (POR) methodology of Class Counsel's Petition for An Award of Fees Because the Recovery is Objectively Incalculable.

Class Counsel concedes that this case is not a traditional common fund; they do so because this Court has already held that it is not a common fund. *See In re National League Players' Concussion Injury Litigation*, 307 F.R.D. 351, 374 (E. D. Pa. 2015).  Pivoting, Class Counsel urge this Court to treat the Settlement as a  "constructive common fund" and apply a Percentage of the Recovery (POR) fee methodology anyway.   The Alexander objectors object to the application of a POR fee methodology to this Settlement.

Class Counsel cannot simply cherry pick the fee methodology that provides the greatest recovery.  Instead, the Third Circuit teaches that the Court must choose the methodology "corresponding" to the "sort of action the court is adjudicating. *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 820-821 (3d Cir. 1995).

"Courts use the percentage of recovery method in common fund cases on the theory that the class would be unjustly enriched if it did not

compensate the counsel responsible for generating the valuable fund bestowed on the class."  *Id.*, citing *Task Force*, 108 F.R.D. at 250.  Unjust enrichment of the class would be unfair to the attorney.

Similarly, the lodestar method is often more appropriate to achieve a fair fee for the attorney.  The lodestar method, which uses the number of hours reasonably expended as the starting point, has the effect of decoupling the recovery from the effort to obtain the recovery.  *See id*.  For that reason, the lodestar method, which is a simple fee shift, is appropriate where the litigation in which the fee was incurred is "socially beneficial"; in that way, the attorney receives "an adequate fee irrespective of the monetary value of the final relief achieved for this class."  *Id*.  Although the lodestar is frequently used in statutory fee-shifting class actions, it is not restricted to such circumstances.

Most important, as applicable here, the Third Circuit recognizes another circumstance in which the lodestar methodology is the most appropriate methodology for a class fee award.  That is, lodestar is best when the task of calculating the benefit to the class requires "subjective evaluation."  *Id*.

The district court's handling of the *Dungee v. Davison Design & Development* class action serves a great example of a circumstance where

lodestar is more appropriate when subjective evaluation would be required to value the fund.  *See* __ Fed. Appx. __, 2017 WL 65549 (3d Cir. 2017). Dungee filed a class action for violations of the American Inventors Protection Act of 1999 and breach of contract.  The district court rejected the percentage of the recover method requested by class counsel because "the ultimate value of the settlement depended upon the number of claims made by former customers for cash and service vouchers.  *Id*.  The Third Circuit upheld that choice of lodestar methodology.  *Id*.

In this case, the alleged "constructive common fund" suffers the same infirmity for POR recovery that the Dungee class did:  The value of lion's share of the fund – the Monetary Award Fund - depends entirely upon the ultimate number of participants.  More precisely, the value of the Monetary Award Fund, uncapped and awardable over 65 years rests precariously atop subjective and speculative evaluation. In keeping with the policy underlying a POR in *In re General Motors*, it cannot be said that the Class will be unjustly enriched if a POR is not used in this case.  Stated differently, if Class Counsel's guestimate about the number of participants turns out to be incorrect, it is actually Class Counsel that will be unjustly enriched by received a percentage of a hypothetical fund that is never realized.

Here, the value of the Monetary Fund Award is an unknown.  Class

Counsel's own evidence establishes the inability to objectively value the Settlement at this time. Class Counsel asked Orran S. Brown, Sr. Claims Administrator, to provide an estimate of the administrative costs anticipated for this Settlement. Mr. Brown, in his declaration filed with Class Counsel's Petition, states that is it "very difficult" to project what it will cost to administer this Settlement "before we know how many Settlement Class Members will register with us, how many claims we will receive, how complete they will be, how many outcomes will be appealed, and the quantity of the many other functions we will perform in this program."[18]

And, it is important to recall, that Mr. Brown's estimated administrative costs are tied directly to assumptions about the total number of <u>registrants</u>, not the amount of money paid by the various Settlement funds. Stated differently, Mr. Brown will need to process every registration and process every claim for benefits whether such claim is paid or not. And, Mr. Brown will not be paid his projected administrative costs. Instead, under Section 10.2(c) of the Settlement, Mr. Brown will only be paid for reasonable costs and expenses and will refund any payments made that are not reasonable.

By contrast, the value of the MAF benefits, upon which Class Counsel

---

[18] *See* Declaration of Orran S. Brown, Sr., 7151-4, Paragraph 10.

seeks fees, is a function of **successful** claims for benefits.  Class Counsel wants a percentage of the total money that will be paid.  Class Counsel points repeatedly to the absence of Settlement ceiling – it is an uncapped MAF.  But, Class Counsel attempts to obscure that the Settlement has a relatively low floor – the NFL is depositing only $120 million without reversionary interest.  *See* Settlement Section 23.3(b).  After that, the NFL need only keep the Monetary Award Fund at a declining "targeted threshold."  And, if the NFL Parties do not ever deposit more than $120 million into the MAF, but the Court has awarded Class Counsel a percentage of a projected $950 million MAF[19] or the entire $112.5 million fee fund, Class Counsel will have been unjustly enriched because nothing in the Settlement requires Class Counsel to refund attorneys' fees paid that are later determined not reasonable.

And, Class Counsel has not supplied the Court a sufficient or reliable basis to conclude that the MAF will pay $950 million in benefits.  Class

---

[19] Class Counsel relies entirely upon a February 9, 2014 NFL Concussion Liability Forecast prepared by Dr. Thomas Vasquez for the $950 million MAF projection, ECF No. 6167.  The Alexander Objectors object to the use of this report on the basis that it is inadmissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Fed.R. Evid. 702.  Specifically, the Vasquez report is not the "product of reliable principles and methods."  Dr. Vasquez testifies that his methodology for projecting participation in the Settlement requires, for each compensable disease, background incidence data.  There is no background incidence data for Levels 1.5 and 2 – qualifying diagnoses defined only by the Settlement itself.  Dr. Vasquez offers no explanation for basis for borrowing from a different disease. For purposes of establishing the value of the MAF, the Vasquez report is not admissible and should be disregarded.

Counsel points to the February, 2014 NFL Concussion Liability Forecast prepared by Dr. Thomas Vasquez as its support. First, the Court will recall that Dr. Vasquez' report was prepared and filed in connection with an earlier, rejected version of the Settlement. Thus, the report analysis is not relevant to the approved Settlement.

But, more importantly, Dr. Vasquez' report does not provide an adequate basis to forecast total NFL player participation, for the following reason. Dr. Vasquez, when outlining his methodology, acknowledges that his potential participation forecast rests upon the background incidence of the particular compensable disease. Dr. Vasquez drew his incidence data from published literature and research as set forth in Exhibit A to that report. Not surprisingly, Exhibit A contains no published literature or research on the non-terminal neurocognitive disorders Level 1.5 and Level 2; that is because these Qualifying Diagnoses are not recognized diseases. They are creations of and defined entirely by the Settlement. Neither a Level 1.5 nor a Level 2 neurocognitive disorder appear in published literature, research or even a medical textbook. Yet, almost one-half of the NFL players Dr. Vasquez projects as eligible fall within the Qualifying Diagnosis of Level 2. *See* Table 2-1 (Doc. 6167, 6/71).

In sum, the percentage-of-the-recovery methodology is not available

to Class Counsel at this time because the relief awarded cannot be objectively valued.  If the Court determines to move forward with Class Counsel's fee petition at this time, it should do so only on a traditional lodestar analysis with underlying data to award a presumptively reasonable fee that is not tied to the value of the fund.  The Petition should be denied.

E.      Even if this Court accepts Class Counsel's constructive common fund methodology, Class Counsel is not entitled to the fees requested because its calculations of the "Size of the Fund" and the "Percentage Sought" are mathematically and economically unsound.

      1.      Class Counsel's projected $1.2 billion "Size of the Fund" is almost all future dollars that must be converted to present value.

Even if this Court accepts the alleged value of the fund – nearly $1.2 billion dollars – the sum is fatally flawed for its failure to determine the present-day value of that benefit.  Although Class Counsel failed to perform the computation, Class Counsel recognizes the methodological necessity for doing so.  Specifically, when seeking this Court's approval of the Settlement initially, Class Counsel relied Dr. Vasquez' study, in which he concluded that "[b]ecause many of the injuries take years to develop, the compensation stream extends far into the future" and "only approximately 54% of total compensation will be paid in the first 20 years of the operation of the settlement."  Thus, Dr. Vasquez converted sums claimed to be part of the settlement into present dollars.

Accepting, for the sake of argument only, the proffered size of the fund at $1.2 billion, the present-value of the future benefits is a substantially smaller number. Specifically, Dr. Kenneth G. McCoin, Ph.d, C.FA. avers that the present-day value of the $1.2 billion fund claimed is $607,281,278.[20] Dr. McCoin reaches this opinion by examining the nominal amounts set forth by Class Counsel and Dr. Vasquez's prior computation of the fund and the earnings as set in Table 2-2 of Exhibit B to Dr. Vasquez' affidavit (Doc. 6423-21), set out below.[21]

**Table 2-2**
**Settlement Fund Compensation Payments, Funding and Earnings**
**Through the Payment of the Last Compensable Claim**
**($ millions)**

| Time Period | Compensation Amount[1] | Funding | Earnings | End of Period Fund Balance |
|---|---|---|---|---|
| 2014 through 2018 | $292.3 | $364.0 | $25.0 | $91.6 |
| 2019 through 2023 | $78.2 | $103.7 | $28.1 | $143.8 |
| 2024 through 2028 | $95.5 | $103.7 | $38.6 | $189.0 |
| 2029 through 2038 | $178.6 | $103.7 | $103.2 | $214.0 |
| 2039 through 2048 | $167.7 | $0.0 | $72.9 | $116.2 |
| Remaining 35 Years | $133.3 | $0.0 | $103.4 | $80.4 |
| Total | $945.5 | $675.0 | $371.2 | na |

Using the same methodology used by Dr. Vasquez, Dr. McCoin converts the sums to present-day value.[22]

| Benefit | Nominal Amount | | Present-Day Value | |
|---|---|---|---|---|
| Monetary Award Fund | $945,500,000 | 90.4% | $519,400,000 | 85.5% |
| Baseline Assessment | $75,000,000 | 7.2% | $68,017,007 | 11.2% |

[20] *See* Declaration of Kenneth G. McCoin, Ph.d., C.F.A., attached hereto as Exhibit A.

[21] *See id.*

[22] *See id.*

| Program | | | | |
|---|---|---|---|---|
| Education Fund | $10,000,000 | 1.0% | $10,000,000 | 1.6% |
| Notice Costs | $4,000,000 | 0.4% | $4,000,000 | 0.7% |
| Claims Administration | $11,925,000 | 1.1% | $5,864,270 | 1.0% |
| **Total Benefit** | **$1,046,425,000** | **100%** | **$607,281,278** | **100%** |

Because Class Counsel has neglected to perform this mathematical calculation and seeks a present fee on future dollars, the Alexander fee objectors object to Class Counsel's presentation of "the Size of the Fund" for purposes of a percentage-of-the-fund analysis.

2.      Class Counsel has miscalculated the percentage applicable to the fees it requests; it is 22.8%, not 9% as alleged; under either figure, the fee is not reasonable.

Class Counsel argues that the fees requested are "approximately nine percent of the value of the total relief secured for the Class." Class Counsel is mistaken. Class Counsel arrives at a 9% figure using the $112.5 million fee fund. But, Class Counsel ignores the 5% holdback for attorneys' fees that it is also seeking at this time.

Based upon Class Counsel's projected Monetary Award Fund, the 5% holdback of fees is $45,470,000. Discounted to present value, that sum is $25,970,000. When all fees sought are measured against Class Counsel's projected benefit to the Class, the fee sought is 22.8%. This percentage is well above the average fee award, particularly for a settlement of this size. *See In re Prudential Ins. Co. America Sales Practice Litigation Agent*

29

*Actions*, 148 F.3d 283, 339 (3d Cir. 1998) (Stating that the 6.7% fee, when "[c]ompared to the other large settlements examined by the district court . . . exceeds all of them by a considerable margin").  The cases examined by the district court in *In re Prudential* were:

- *In re Baldwin–United Corp. Litig.,* 1986 WL 12195 (S.D.N.Y. June 27, 1986), (attorneys' fees of 4.1% of the $183.8 million settlement fund);

- *In re Agent Orange Prod. Liab. Litig.,* 611 F.Supp. 1296 (E.D.N.Y. 1985) (attorneys' fees of 5.5% fee of the $180 million settlement fund); and

- *In re MGM Grand Hotel Fire Litig.,* 660 F.Supp. 522 (D.Nev. 1987), (attorneys' fees of 7% fee of the $205 million settlement fund).

Citing a number of cases via footnote 29, Class Counsel suggests that 9% is "a modest percentage . . . well within the parameters for class actions fee awards in this Circuit."  Class Counsel's passing reference to size of the fund and percentages is legally infirm, however.  Class Counsel must address the "variables that bear on the 'similarity' of the cases."  *See In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744 at *31 (D. N. J. Oct. 1, 2013).  Most apparent in the mismatch of cases selected by Class Counsel as "comparable" are the size of the settlements at issue: $8 million, $25 million, $4 million, $39 million, $25 million, $8 million, $2 million, $1.7 million, $44.5 million, $400,000, $4 million, $18 million.

Class counsel has improperly relied upon cases too dissimilar to provide this Court guidance.   And, for the additional reasons stated in Section II.F.1 regarding the declining percentage principle applied in the Third Circuit, the Court should reject Class Counsel's requested percentage.

F.   <u>Even if the Court accepts Class Counsel's methodology and overlooks its mathematical errors, there are a number of additional flaws in Class Counsel's arguments in favor of the fee award.</u>

1.   Because the fund Monetary Fund Award is a potentially large, uncapped and purely a function of participation, the Court should apply a declining percentage reduction and not the 2.6 "upward adjustment" of fee Class Counsel requests.

Class Counsel is upwardly enhancing its fee calculations instead of revising them downward as suggested by the Third Circuit.   The Third Circuit has stated that the percentage of a recovery devoted to attorneys' fees should **decrease** as the size of the overall settlement or recovery increases. *In re Cendant Corp. PRIDES Litig.*, 264 F.3d 722, 736 (3d Cir. 2001).  This "declining percentage principle" is not a bright-line rule applicable to all large settlements. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 302-03 (3d Cit. 2005).   It is, however, an acknowledged principal for reviewing class fees and Class Counsel dismisses the principle, urging that it "cannot genuinely be said" that the size of this Settlement is a function of the size of the class.  Memo, p. 46.  Class Counsel offers no support whatsoever for this statement.

In fact, $950,000,000 of the $1,163,425,000 benefit alleged to flow to the Class is measured entirely by an "assumed participation rate."[23] The NFL is not depositing $950,000,000 into a bank account.   Given both the uncapped nature of the Monetary Fund Award, and the projected and assumed participation rate, this case fits squarely within the circumstance for a declining percentage.  *See  In re Prudential*, 148 F.3d at 339. (holding that factors such as percentage fees in other cases "should receive less weight" in a settlement approaching the size of $1 billion and, therefore "some reduction is appropriate").

In the alternative, Class Counsel suggests that the percentage it seeks is also in line with the declining percentage principle.   But, again, Class Counsel compares this case to cases that are not comparable. Class Counsel asks this Court to compare its request to "recoveries that exceed $100 million."   But, Class Counsel wants a percentage of a Settlement they claim is worth $1,163,425,000.   The four settlements to which Class Counsel points as in excess of $100 million could be added together and the resulting fund would still not be as large as Class Counsel has estimated this fund to

---

[23] The Alexander objectors object to Class Counsel's assumed rate. It is speculation arising entirely from perceived interest in this litigation.   It is analytically unsound. *Daubert v. Merrell Dow Pharms., Inc.* 509 U.S. 579, 589 (1993).

be.  Class counsel simply has not and cannot place its 9% requested fee –
and certainly not its true 22.8% requested fee – within any range established
by any court.  Class Counsel asks this Court to make an award that stands
alone.

More remarkable than Class Counsel's request that this Court ignore
the natural application of a declining percentage principle to this case is
Class Counsel's bold suggestion that its efforts should be so rewarded that a
2.6 multiplier should be applied to its unsubstantiated Lodestar fee reports.
Class Counsel wants this Court to give them a bonus.  But "[t]he Third
Circuit uses a "strong presumption that the lodestar is a reasonable fee and
that *a quality multiplier should be granted only in rare and exceptional
circumstances*."  *See Student Pub. Interest Research Grp. Of N.J., Inc. v.
AT&T Bell Labs*, 842 F.2d 1436, 1452-53 (3d Cir. 1988) (emphasis
supplied).  Even excellent quality is not the threshold.  *Id.*; *see also Dungee
v. Davison Design & Development Inc.* __ Fed Appx. __, 2017 WL 65549
*2 (3d Cir. 2017), citing *Pennsylvania v. Del. Valley Citizens' Counsel for
Clean Air*, 478 U.S. 546, 565 (1992) (holding that a multiplier is permissible
only in certain "rare" and "exceptional" circumstances).

The limitation on lodestar multipliers makes sense.  Beginning with
the presumption that a lodestar calculation results in a reasonable fee, a

multiplier in the ordinary case will result in a "double dip" because the more challenging the case, the more hours the attorney expended in resolving it. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).  And, because a multiplier should not be awarded unless the circumstances are rare or exceptional, the Third Circuit requires "specific evidence on the record" supporting the enhancement to meet its burden.  *Dungee*, 2017 WL 65549 *2, quoting *Del. Valley Citizens' Counsel*, 478 U.S. at 565.

Class Counsel has not approached a showing of "rare and exceptional." Class Counsel, as the party requesting the multiplier or an upward adjustment of the lodestar figure, has the burden to "show that a multiplier is necessary to reach a fair and reasonable fee award." *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 543, 553 (2010) (noting that specific evidence of a lodestar multiplier should show that the lodestar calculation fails to adequate measure the "attorney's true market value" or the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted). In its three-sentence argument advancing the propriety of a 2.6 multiplier, Class Counsel does not attempt to explain why this is a rare or exceptional case or why a fair fee cannot be achieved without the multiplier.

Class Counsels mathematic manipulation of its fee calculations to

reach $112.5 million is tortured.  The Alexander objectors urge the Court to reject an analysis that will place this fee award outside of any arguable range of appropriate.

>    2.    Class Counsel cannot rely upon the $10 million Educational Fund as part of the benefit to the Class Members.

As this Court described it in approving the Settlement, "[t]he Education Fund is a $10 million fund to promote safety and injury prevention for football players of all ages, including youth football players." To the extent that the fund is established for education of non-Class Members, it is not appropriate to include it within the value of a fund secured "for the Class."  Instead, the lodestar method, which is a simple fee shift, is appropriate when Class Counsel obtain a recovery that is "socially beneficial." *In re General Motors*, 55 F.3d at 820-821.

>    3.    Class Counsel cannot rely upon "Complexity and Duration of the Litigation" as a favorable *Gunter/Prudential* factor.

This litigation would have been complex, but it wasn't.  Class Counsel analyzes this factor as though the Court's prospective observation that the "document discovery, medical record discovery, expert discovery, and motion practice would be complex" came to pass.  In fact, there was no document discovery in this case.  There was no medical record discovery. There was no expert discovery.  There was little motion practice concerning

the merits of the claims in this case.

This litigation could have been lengthy, but it wasn't. The Judicial Panel on Multidistrict Litigation established this MDL on January 31, 2012. Seeger aff. Paragraph 12. The Court ordered the parties to mediation in July, 2013 (1 ½ years later), and no further merits litigation occurred after that point. Compared to other MDL Class Actions, this litigation cannot be earnestly characterized as having been complex or lengthy. *See, e.g., In re Pharm. Indus. Average Wholesale Price Litig.*, No. 01-12257- PBS, 2008 U.S. Dist. LEXIS 111835, *78 (D. Mass. Oct. 2, 2008) (award of 30% of a common fund found to be fair for litigation that took place over seven years); *see also Williams v. Rohm and Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) (award of 24% of a common fund found to be fair for ERISA litigation that took place over eight years).

The complexity and duration of the settlement negotiations are captured by other *Gunter/Prudential* factors and should not be duplicated.

4.     Class Counsel cannot rely upon the "Value of Benefits" as a favorable *Gunter/Prudential* factor.

This factor analyzes whether the efforts culminating in the Settlement were aided by, for example, government prosecutions or private cases. *See In re Diet Drugs*, 582 F.3d at 544. Class Counsel acknowledges the important fruits from the congressional hearings regarding head injuries in

36

the NFL.[24]  But then Class Counsel suggests that it was not aided by a government investigation, notwithstanding, for example the extensive medical testimony adduced at those congressional hearings.  As an example, the Senate Judiciary Committee heard from D.r Julian Bailes, a former NFL player and subsequent neurosurgeon who worked at the Brain Injury Research Institute where CTE was first discovered in 2002.  These hearings did not provide a litigation roadmap.  They provided a medical roadmap. Class Counsel supplies no evidence to support the statement that this litigation was not aided by the government investigation and the Alexander objectors object.

G.  There is insufficient evidence to support the factual findings Class Counsel seeks under Federal Rule 26(h)

To support an award of fees in the class action context, the Third Circuit requires the court to "set forth the reasoning in support of a fee award."  *In re Rite Aid Corp.*, 396 F.3d at 301.  The requirement ensures that "the District Court's fee determination [is not an] abuse of discretion, 'which can occur if the judge fails to apply the proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous.'"  *Id.*, citing *In re Cendant Corp.*, 243 F.3d at 727.

---

[24] *See* Memorandum of Law in Support of Class Counsel Petition for Fees, p. 48.

Here, Class Counsel's fee petition will require the Court to determine, inter alia, that the MAF has a value of over $950 million and that Class Counsel fees are reasonable (that is, not duplicative or unnecessary) or provide a reasonable cross check.  Because Class Counsel has provided the Court no evidence to support such findings, it would be an abuse of discretion to grant the fee petition in its current form.

      1.     Class Counsel has no evidence to support its argument on the Size of the Fund

Listed below (II.H) are the Alexander Objectors specific evidentiary objections.  However, the objections to two particular statements in Mr. Seeger's declaration are more important than all others because if that evidence is inadmissible, the fee petition fails entirely.  Stated differently, Mr. Seeger makes two statements in his declaration that constitute no evidence and, yet, these statements are absolutely essential to Class Counsel's fee petition.

Specifically, Mr. Seeger first indicates, in paragraph 44 of his declaration that "actuarial projections were that the MAF will pay out $900-950 million by the end of its 65-year term." He then states, in that same paragraph, that Class Counsel "assumed a 50% participation rate for Class Members who had not filed suit and a 90% participation rate for those who had."

38

Mr. Seeger's reference to a projected pay out is hearsay in that he is relying upon another's unsworn, out-of-court statement for the truth of the matter. Fed. R. Evid. 801. And, the data to which Mr. Seeger is, the February, 2014 Vasquez report, does not pertain to the Settlement actually approved by the Court.  Mr. Seeger has neither the personal knowledge nor the actuarial expertise to support the pay-out statement and, therefore, it is without foundation. Mr. Seeger's payout testimony is conclusory, speculative, and, because necessarily based upon irrelevant and stale data, is irrelevant.

Finally, for the reasons previously outlined in Section II.D, the February, 2014 Vasquez report is not a reliable basis from which this Court should award attorneys' fees because it is unable to forecast a participation rate for Level 1.5 and Level 2 neurocognitive disorders in the absence of any incidence data.  These Qualifying Diagnosis are settlement diseases and the incidence of such Qualifying Diagnosis is unknown and unknowable.

Next, Mr. Seeger's reference to Class Counsel's assumptions about participation are speculative, without foundation, an improper opinion, and necessarily based upon an improper methodology.  Mr. Seeger suggests that the participation assumption arises from pre-registrations and registrations to date.   Mr. Seeger cites no particular data or methodology for the

participation assumption.  To the extent that Mr. Seeger is attempting to rely upon the Claims Administrator's reports of interest in the Settlement, the data does not provide a reliable foundation for participation.  Specifically, Mr. Seeger fails to support a statistical correlation between the "interest in receiving further information," as reported by the Claims Administrator and actual participation by NFL players who never even filed suit.  By way of example, there is no way of knowing from the IP tracking that the IP even belongs to a putative member of this class.  Moreover, Mr. Seeger fails to detail any qualifications for rendering such an opinion.

In short, Mr. Seeger's two statements are the only evidence Class Counsel offers to support its $950 million valuation of the MAF. And, the MAF valuation forms more than 80% of the total alleged benefit to the Class.  Because the proffered evidence of the projected value of the MAF is inadmissible, Class Counsel's fee petition is completely without foundation.

2.    Class Counsel has no evidence to support its argument on the Lodestar Check or the amount of time counsel devoted to the Case.

Class Counsel supplies no evidence whatsoever of the attorney hours reasonably expended on behalf of the Class Members.  "In calculating the second part of the lodestar determination, the *time* reasonably expended," a district court should "review the time charged, decide whether the hours set

out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Pennsylvania Envtl. Def. Found. v. Canon-McMillan Sch. Dist.*, 152 F.3d 228, 232 (3d Cir. 1998). And, Federal Rule of Civil Procedure 23(h) authorizes an award of "reasonable attorney fees." Class Counsel's Petition relies for its primary support on the Declaration of Christopher A. Seeger, but Mr. Seeger does not offer an opinion that the fees sought are reasonable. Similarly, none of the other attorney declarations offer an opinion about whether the fees sought are reasonable. The Court is left with no evidence on this point.

Further, Class Counsel provides no evidence whatsoever of what compensable categories of service were rendered by the attorneys seeking payment for fees. In a conclusory fashion, Class Counsel states, on pages 64-65 of the Memorandum in support of the Petition that "[t]he total hours expended on this litigation were 50,912.39, which included time reasonably spent investigating the claims, conferring on and formulating case strategy, drafting complaints and master administrative complaints, defending against dispositive motions, the extensive and spirited mediation (including the second round that followed the Court's January 2014 rejection of the first settlement agreement), the actual negotiation and drafting of the Settlement

(including its precursors), the drafting of Rule 23(e) preliminary and final approval papers, overseeing the preparation and dissemination of Class Notice, dealing with innumerable Class Members, preparing for implementation of the Settlement, and defending against multiple appeals (both interlocutory and from the final judgment and order approving the Settlement." That is the **only** statement within the Petition, the Memorandum, **or** the evidence from which this Court would have any hint about how "the attorneys" spent their time.

In more than twenty attorney declarations, the Court is provided no information about how either the declarant or one of the declarant's attorneys actually spent their time. Every declaration includes a "Lodestar Report" that is HOURS, HOURLY RATE, and AMOUNT. Not in a single Lodestar Report will the Court find any reference to the date on which a service was rendered or the nature of the task completed. The omission is all the more alarming when considered in light of Class Counsel's agreement under Case Management Order No. 5, to segregate attorneys' fees hours into compensable categories:

- Pleadings, Motions, Briefs & Legal Research
- Preparing & Responding to Discovery Requests
- Factual Research and Analysis
- Document Analysis

- Depositions (including preparation)
- Officially-Called Meetings of Counsel[25]
- Common Benefit Case Management
- Court Appearances
- Trial Preparation & Trial
- Appeals
- Settlement

This Court has already ordered that the above are the compensable categories. But Class Counsel has rendered it impossible from the Petition to determine how many hours of attorney time sought are actually within these categories. Class Counsel neither explains why it has withheld this data nor how it expects this Court to perform the review required without such data.

Thus, this Court cannot perform this task because counsel has not supplied any information about the time charged for a particular purpose; the Court cannot exclude excessive hours, redundant hours, or unnecessary hours because counsel has withheld the data to perform the analysis.

As such, the Court should deny the petition in its present form.

---

[25] Although it is not entirely clear what an officially-called meeting of counsel is, it is difficult to believe that it covers, for example, the series of telephone conferences referenced above by Mr. Schenk in his declaration.

H.     <u>The Alexander Objectors evidentiary objections to the declarations filed in support of Class Counsel's Petition for Fees.</u>

|  | The Alexander Objectors Evidentiary Objections |
|---|---|
| Declaration of Christopher Seeger, ECF No. 7151-2 | Fed. R. Civ. P. 23(h) authorizes the award of "reasonable attorney fees." Mr. Seeger's declaration seeks an award of attorney fees in reliance upon 21,044.46 hours alleged worked by lawyers and other professional staff in his firm for a total lodestar fee of $18,124,869.10. Mr. Seeger never testifies that these hours billed are reasonable or necessary or non-duplicative.<br><br>Under Federal Rule of Evidence 602, a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Mr. Seeger offers no evidence from which the Court could conclude that he has personal knowledge about the individual hourly efforts of<br><br>**all "Plaintiffs' Counsel" [Paragraphs 17, 18, 19, 20, 29, 31, 32, 33, 39, 40, 43, 45, 46, 47, 5153, 54, 56, 57, 64]<br><br>**the efforts of all PSC members or the lawyers in law firms other than Seeger Weiss LLP [71—81]<br><br>**attorneys within Seeger Weiss LLP other than Mr. Seeger himself [82 – 96]<br><br>Mr. Seeger simply gives the Court no information from which the Court could determine that Mr. Seeger has personal knowledge of how many hours each of the 79 attorneys worked, what they worked on, and that such work benefitted the Class.<br><br>Under Fed. R. E. 801 a witness may not relay upon hearsay without exception. Mr. Seeger's |

| | |
|---|---|
| | Declaration, Paragraphs 11, 49, 50, are based upon hearsay. |
| | Mr. Seeger's Declaration, Paragraphs 44 and footnote 4 within that same Paragraph are speculation. |
| | Under Federal Rule of Evidence 702, the Court should not receive an expert opinion unless the opinion "is based upon sufficient facts or data"; "is the product of reliable principles and methods; and "the witness has applied the principles and methods reliably to the facts of the case. To the extent Mr. Seeger is attempting to testify about participation projections, he is without qualification or a reliable methodology. *Daubert v. Merrell Dow Pharms., Inc.* 509 U.S. 579, 589 (1993). |
| | Finally, Counsel seeks the above fees and an additional $1,498,690.99 in costs and expenses without demonstrating, as required by Case Management Order No 5, that such costs and expenses are compensable. |
| Declaration of Orran Brown, ECF No. 7151-4 | An expert opinion is inadmissible if it is based upon conjecture or speculation. *See Fedorczyk v. Caribbean Cruise Lines, Ltd.,* 82 F.3d 69, 75 (3d Cir. 1996). |
| | Mr. Brown's Declaration, Paragraph 10 is a projection of Administrative Costs that is wholly based upon speculation or conjecture. The witness admits that the projection is "very difficult to do before we know how many Settlement Class Members will register with us, how many claims we will receive, how complete they will be, how many outcomes will be appealed, and the quantity of the many other functions we will perform in this program." |

| | |
|---|---|
| | In the alternative, Mr. Brown's opinion in Paragraph 10 about the Settlement participation projection is inadmissible under 702 in that it is based upon a methodology that is neither disclosed nor apparently reliable. Specifically, the witness bases his opinions on "many assumptions, all of which are subject to change."  He never discloses such assumptions and, based upon them, he estimates over $10 million dollars in expenses. |
| Levin, A. 7151-6 | Fed. R. Civ. P. 23(h) authorizes the award of "reasonable attorney fees."   Mr. Levin's declaration seeks an award of attorney fees in reliance upon 5,021hours alleged worked by lawyers and other professional staff in his firm for a total lodestar fee of $6,031,806.25.  Mr. Levin never testifies that these hours billed are reasonable or necessary or non-duplicative.<br><br>Under Federal Rule of Evidence 602, a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Mr. Levin offers no evidence from which the Court could conclude that he has personal knowledge about the individual hourly efforts of the other lawyers or professional staff in his office.<br><br>Finally, Counsel seeks the above fees and an additional $519,893.97 in costs and expenses without demonstrating, as required by Case Management Order No 5, that such costs and expenses are compensable. |
| Locks, G. 7151-7 | Fed. R. Civ. P. 23(h) authorizes the award of "reasonable attorney fees."  Mr. Locks' declaration seeks an award of attorney fees in reliance upon 4,243 hours alleged worked by lawyers and other professional staff in his firm for a total lodestar fee |

| | |
|---|---|
| | of $3,084,500.  Mr. Locks never testifies that these hours billed are reasonable or necessary or non-duplicative.<br><br>Under Federal Rule of Evidence 602, a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Mr. Locks offers no evidence from which the Court could conclude that he has personal knowledge about the individual hourly efforts of the other lawyers or professional staff in his office.<br><br>Finally, Counsel seeks the above fees and an additional $3,084,500 in costs and expenses without demonstrating, as required by Case Management Order No 5, that such costs and expenses are compensable. |
| Marks, S.<br>7151-8 | Fed. R. Civ. P. 23(h) authorizes the award of "reasonable attorney fees."  Mr. Marks' declaration seeks an award of attorney fees in reliance upon 4,510.8 hours alleged worked by lawyers and other professional staff in his firm for a total lodestar fee of $3,005,744.50.  Mr. Marks never testifies that these hours billed are reasonable or necessary or non-duplicative.<br><br>Under Federal Rule of Evidence 602, a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Mr. Marks offers no evidence from which the Court could conclude that he has personal knowledge about the individual hourly efforts of the other lawyers or professional staff in his office.<br><br>Finally, Counsel seeks the above fees and an additional $771,127.79 in costs and expenses |

| | |
|---|---|
| | without demonstrating, as required by Case Management Order No 5, that such costs and expenses are compensable. |
| Declaration of Dianne M. Nast, ECF No. 7151-9 | Fed. R. Civ. P. 23(h) authorizes the award of "reasonable attorney fees." Ms Nast's declaration seeks an award of attorney fees in reliance upon 1,211.75 hours alleged worked by lawyers and other professional staff in her firm for a total lodestar fee of $765,060.25. Ms. Nast never testifies that these hours billed are reasonable or necessary or non-duplicative.

Under Federal Rule of Evidence 602, a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Ms. Nast offers no evidence from which the Court could conclude that she has personal knowledge about the individual hourly efforts of the other lawyers or professional staff in her office.

Finally, Counsel seeks the above fees and an additional $117,138.64 in costs and expenses without demonstrating, as required by Case Management Order No 5, that such costs and expenses are compensable. |
| Declaration of Sol H. Weiss, ECF No. 7151-10 | Fed. R. Civ. P. 23(h) authorizes the award of "reasonable attorney fees." Mr. Weiss' declaration seeks an award of attorney fees in reliance upon 4,241.22 hours alleged worked by lawyers and other professional staff in his firm for a total lodestar fee of $1,857,436.00. Mr. Weiss never testifies that these hours billed are reasonable or necessary or non-duplicative.

Under Federal Rule of Evidence 602, a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the |

| | |
|---|---|
| | witness has personal knowledge of the matter. Mr. Weiss offers no evidence from which the Court could conclude that he has personal knowledge about the individual hourly efforts of the other lawyers or professional staff in his office.<br><br>Finally, Counsel seeks the above fees and an additional $1,031,971.55 in costs and expenses without demonstrating, as required by Case Management Order No 5, that such costs and expenses are compensable. |
| Declaration of Garrett D. Blanchfield, Jr. ECF No. 7151-11 | Fed. R. Civ. P. 23(h) authorizes the award of "reasonable attorney fees." Mr. Blanchfield's declaration seeks an award of attorney fees in reliance upon 23.10 hours alleged worked for a total lodestar fee of $14,899.50. Mr. Blanchfield does not testify that these hours billed are reasonable or necessary or non-duplicative.<br><br>Finally, Counsel seeks the above fees and an additional $1,480.57 in travel, meals, and expenses without demonstrating, as required by Case Management Order No 5, that such costs and expenses are compensable. |
| Declaration of William G. Caldes, ECF No. 7151-12 | Fed. R. Civ. P. 23(h) authorizes the award of "reasonable attorney fees." Mr. Caldes' declaration seeks an award of attorney fees in reliance upon 74.4 hours alleged worked for a total lodestar fee of $51,708.00. Mr. Caldes does not testify that these hours billed are reasonable or necessary or non-duplicative.<br><br>Finally, Counsel seeks the above fees and an additional $1,460.92 in costs and expenses without demonstrating, as required by Case Management Order No 5, that such costs and expenses are compensable. |

| Declaration of Leonard A. Davis, ECF No. 7151-13 | Fed. R. Civ. P. 23(h) authorizes the award of "reasonable attorney fees." Mr. Davis' declaration seeks an award of attorney fees in reliance upon 136.30 hours alleged worked by lawyers in his firm for a total lodestar fee of $89,660. Mr. Davis never testifies that these hours billed are reasonable or necessary or non-duplicative.<br><br>Under Federal Rule of Evidence 602, a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Mr. Davis offers no evidence from which the Court could conclude that he has personal knowledge about the individual hourly efforts of the other of counsel attorney in his office. |
|---|---|
| Declaration of James R. Dugan, II ECF No. 7151-14 | Fed. R. Civ. P. 23(h) authorizes the award of "reasonable attorney fees." Mr. Dugan' declaration seeks an award of attorney fees in reliance upon 293.90 hours alleged worked by lawyers in his firm for a total lodestar fee of $188,340.50. Mr. Dugan never testifies that these hours billed are reasonable or necessary or non-duplicative.<br><br>Under Federal Rule of Evidence 602, a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Mr. Dugan offers no evidence from which the Court could conclude that he has personal knowledge about the individual hourly efforts of the other lawyers in his office.<br><br>Finally, Counsel seeks the above fees and an additional $118,8880.16 in costs and expenses without demonstrating, as required by Case Management Order No 5, that such costs and expenses are compensable. |

| | |
|---|---|
| Declaration of Daniel C. Girard, ECF No. 7151-15 | Fed. R. Civ. P. 23(h) authorizes the award of "reasonable attorney fees." Mr. Girard' declaration seeks an award of attorney fees in reliance upon 373.10 hours alleged worked by lawyers in his firm for a total lodestar fee of $279,489.00.  Mr. Girard never testifies that these hours billed are reasonable or necessary or non-duplicative.<br><br>Under Federal Rule of Evidence 602, a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Mr. Girard offers no evidence from which the Court could conclude that he has personal knowledge about the individual hourly efforts of the other lawyers in his office.<br><br>Finally, Counsel seeks the above fees and an additional $8,300.11 in costs and expenses without demonstrating, as required by Case Management Order No 5, that such costs and expenses are compensable. |
| Declaration of Thomas V. Girardi, ECF No. 7151-16 | Fed. R. Civ. P. 23(h) authorizes the award of "reasonable attorney fees." Mr. Girardi's declaration seeks an award of attorney fees in reliance upon 626.80 hours alleged worked by lawyers in his firm for a total lodestar fee of $472,370.00.  Mr. Girardi never testifies that these hours billed are reasonable or necessary or non-duplicative.<br><br>Under Federal Rule of Evidence 602, a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Mr. Girardi offers no evidence from which the Court could conclude that he has personal knowledge |

| | |
|---|---|
| | about the individual hourly efforts of the other lawyers in his office. |
| | Finally, Counsel seeks the above fees and an additional $5,509.15 in travel, meal and lodging expenses without demonstrating, as required by Case Management Order No 5, that such costs and expenses are compensable. |
| Declaration of Bruce A. Hagen, ECF No. 7151-17 | Fed. R. Civ. P. 23(h) authorizes the award of "reasonable attorney fees." Mr. Hagen's declaration seeks an award of attorney fees in reliance upon 540.80 hours alleged worked by his firm for a total lodestar fee of $ 324,480.00. Mr. Hagen never testifies that these hours billed are reasonable or necessary or non-duplicative. |
| | Finally, Counsel seeks the above fees and an additional $16,998.08 in costs and expenses without demonstrating, as required by Case Management Order No 5, that such costs and expenses are compensable. |
| Declaration of Samuel Issacharoff, ECF NO. 7151-18 | Fed. R. Civ. P. 23(h) authorizes the award of "reasonable attorney fees." Mr. Issacharoff's declaration seeks an award of attorney fees in reliance upon 801.75 hours alleged worked by lawyers in his firm for a total lodestar fee of $800,512.50. Mr. Issacharoff never testifies that these hours billed are reasonable or necessary or non-duplicative. |
| | Under Federal Rule of Evidence 602, a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Mr. Issacharoff offers no evidence from which the Court could conclude that he has personal knowledge about the individual hourly efforts of the other lawyers in his office. |

| | |
|---|---|
| | Finally, Counsel seeks the above fees and an additional $7,302.22 in travel, meals, and lodging expenses without demonstrating, as required by Case Management Order No 5, that such costs and expenses are compensable. |
| Declaration of Richard Lewis, ECF No. 7151-19 | Fed. R. Civ. P. 23(h) authorizes the award of "reasonable attorney fees." Mr. Lewis' declaration seeks an award of attorney fees in reliance upon 1,281.8 hours alleged worked by lawyers and other professional staff in his firm for a total lodestar fee of $763,917.50.  Mr. Lewis never testifies that these hours billed are reasonable or necessary or non-duplicative.<br><br>Under Federal Rule of Evidence 602, a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Mr. Lewis offers no evidence from which the Court could conclude that he has personal knowledge about the individual hourly efforts of the other lawyers or professional staff in his office.<br><br>Finally, Counsel seeks the above fees and an additional $165,468.47 in costs and expenses without demonstrating, as required by Case Management Order No 5, that such costs and expenses are compensable. |
| Declaration of Jason E. Luckasevic, ECF No. 7151-20 | Fed. R. Civ. P. 23(h) authorizes the award of "reasonable attorney fees."  Mr. Luckasevic's declaration seeks an award of attorney fees in reliance upon 500.6 hours alleged worked by lawyers in his firm for a total lodestar fee of $262,860.00.  Mr. Luckasevic never testifies that these hours billed are reasonable or necessary or non-duplicative. |

| | |
|---|---|
| | Under Federal Rule of Evidence 602, a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Mr. Luckasevic offers no evidence from which the Court could conclude that he has personal knowledge about the individual hourly efforts of the other lawyers in his office. <br><br> Finally, Counsel seeks the above fees and an additional $11,823.78 in costs and expenses without demonstrating, as required by Case Management Order No 5, that such costs and expenses are compensable. |
| Declaration of Derriel C. McCorvey, ECF No. 7151-21 | Fed. R. Civ. P. 23(h) authorizes the award of "reasonable attorney fees."   Mr. McCorvey's declaration seeks an award of attorney fees in reliance upon 331.3 hours alleged worked by lawyers in his firm for a total lodestar fee of $198,780.00.  Mr. McCorvey never testifies that these hours billed are reasonable or necessary or non-duplicative. <br><br> Finally, Counsel seeks the above fees and an additional $104,155.65 in costs and expenses without demonstrating, as required by Case Management Order No 5, that such costs and expenses are compensable. |
| Declaration of Pope McGlamry, ECF No. 7151-22 | Fed. R. Civ. P. 23(h) authorizes the award of "reasonable attorney fees."   Mr. McGlamry's declaration seeks an award of attorney fees in reliance upon 1,274.9 hours alleged worked by lawyers and other professional staff in his firm for a total lodestar fee of $829,030.00.   Mr. McGlamry never testifies that these hours billed are reasonable or necessary or non-duplicative. <br><br> Under Federal Rule of Evidence 602, a "witness |

| | |
|---|---|
| | may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Mr. McGlamry offers no evidence from which the Court could conclude that he has personal knowledge about the individual hourly efforts of the other lawyers or professional staff in his office.<br><br>Finally, Counsel seeks the above fees and an additional \$125,137.01 in costs and expenses without demonstrating, as required by Case Management Order No 5, that such costs and expenses are compensable. |
| Declaration of Craig R. Mitnick,<br>ECF No. 7151-23 | Fed. R. Civ. P. 23(h) authorizes the award of "reasonable attorney fees." Mr. Mitnick's declaration seeks an award of attorney fees in reliance upon 1,198.15 hours of work for a total lodestar fee of \$898,612.50. Although far more detailed than most other counsel's declarations, Mr. Mitnick does not render an opinioin that the hours worked are reasonable or necessary or non-duplicative.<br><br>Mr. Mitnick also seeks the above fees and an additional \$83,082.20 in costs and expenses without demonstrating, as required by Case Management Order No 5, that such costs and expenses are compensable. |
| Declaration of David A. Rosen,<br>ECF No. 7151-24 | Fed. R. Civ. P. 23(h) authorizes the award of "reasonable attorney fees." Mr. Rosen's declaration seeks an award of attorney fees in reliance upon 243.03 hours alleged worked for a total lodestar fee of \$157,969.50. Mr. Rosen never testifies that these hours billed are reasonable or necessary or non-duplicative.<br><br>Finally, Counsel seeks the above fees and an additional \$112,168.64 in costs and expenses |

| | without demonstrating, as required by Case Management Order No 5, that such costs and expenses are compensable. |
|---|---|
| Declaration of Frederick Schenk, ECF No. 7151-25 | Fed. R. Civ. P. 23(h) authorizes the award of "reasonable attorney fees." Mr. Schenk's declaration seeks an award of attorney fees in reliance upon 417.40 hours alleged worked for a total lodestar fee of $333,920. Mr. Schenk never testifies that these hours billed are reasonable or necessary or non-duplicative.<br><br>Finally, Counsel seeks the above fees and an additional $86,651.72 in costs and expenses without demonstrating, as required by Case Management Order No 5, that such costs and expenses are compensable. |
| Declaration of Anthony Tarricone, ECF No. 7151-26 | Fed. R. Civ. P. 23(h) authorizes the award of "reasonable attorney fees." Mr. Tarricone's declaration seeks an award of attorney fees in reliance upon 1,573 hours alleged worked for a total lodestar fee of $1,258,400.00. Mr. Tarricone never testifies that these hours billed are reasonable or necessary or non-duplicative.<br><br>Finally, Counsel seeks the above fees and an additional $120,832.04 in costs and expenses without demonstrating, as required by Case Management Order No 5, that such costs and expenses are compensable. |
| Declaration of Charles S. Zimmerman, ECF No. 7151-27 | Fed. R. Civ. P. 23(h) authorizes the award of "reasonable attorney fees." Mr. Zimmerman's declaration seeks an award of attorney fees in reliance upon 1,106.50 hours alleged worked by lawyers and other professional staff in his firm for a total lodestar fee of $885,907.25. Mr. Zimmerman never testifies that these hours billed are reasonable or necessary or non-duplicative. |

| | Under Federal Rule of Evidence 602, a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Mr. Zimmerman offers no evidence from which the Court could conclude that he has personal knowledge about the individual hourly efforts of the other lawyers or professional staff in his office.<br><br>Finally, Counsel seeks the above fees and an additional $135,545.72 in costs and expenses without demonstrating, as required by Case Management Order No 5, that such costs and expenses are compensable. |
| --- | --- |

I.   <u>The Alexander Objectors object to the Adoption of a Set-Aside as Premature, Based upon Speculation.</u>

Class Counsel also ask the Court to set aside five percent of each Monetary Award and Derivative Claimant Award pursuant to Section 21.1 of the Settlement.

The Alexander Objectors object the award of a 5% set aside at this time, as premature.  All of the arguments that Class Counsel advance in favor of an immediate award of 5% set aside presuppose the exhaustion of the $112.5 in fees already available under Section 21.1.  Should the Court consider delaying all but a classic Lodestar fee to counsel who have benefitted the Class, there will be plenty of fee funds available as the Court assesses the actual NFL player participation and eligibility.  The request is

premature.

The Alexander Objectors also object, on similar grounds, that Class Counsel has made no effort whatsoever to justify the need for a 5% set aside, instead of a lesser set aside. If the post-Lodestar residual is invested, the funds will provide for the future fee needs. But, instead, Class Counsel is once again urging a set-aside on all future monies. Based, again, upon Class-Counsel's unsupported guess that the Settlement will pay out $950,000,000 over 65 years, Class Counsel's request for a set-aside of 5% is an additional fee request of $45,470 million, or $25.9 million discounted to present value.[26]

Finally, the Alexander Objectors object to the suggestion of Class Counsel that Mr. Seeger be assigned by the Court to "allocate the overall fee and expense award." See Declaration of Christopher A. Seeger, Paragraph 99, ECF No. 7151-2. Section 21.1 directs that any monies set aside "shall be held in a separate fund overseen by the Court."

### III.   CONCLUSION

This Court has overseen MDL 2323 for more than four years for the benefit of retire NFL Players who have suffered serious personal injuries.

---

[26] See Declaration of Kenneth G. McCoin, Ph.d., C.F.A., attached hereto as Alexander fee objectors Exhibit A.

The Court is turning to a new phase of the process:  Claims Administration. Class Counsel appointed by this Court are entitled to be fairly compensated for their efforts.  Other counsel who have contributed to the common benefit of the Class Members are also entitled to be fairly compensated.  And, a Lodestar presumptively yields a fair attorneys fee and Class Counsel could be compensated – on an interim basis – on that model right now.

However, until the Claims Administration process yields some objective data from which this Court could assign a value to the Monetary Award Fund, Class Counsel's request for a percentage of the unknown value is premature and Class Counsel's suggestion that a multiplier is appropriate as an enhancement for rare and exceptional circumstances is unjustified.

The Alexander Objects ask the Court to deny or defer Class Counsel's Petition for Fees and enter a Case Management Order establishing filing deadlines and a schedule for submission of data in support of common-benefit fee petitions in accordance with Article XXI Of the Settlement.

Date: March 27, 2017                                    Respectfully Submitted,


                                                       */s/ Lance H. Lubel*
Mickey Washington                                      Lance H. Lubel
Texas State Bar No.: 24039233                          Texas State Bar No.: 12651125
WASHINGTON & ASSOCIATES, PLLC                          Adam Voyles
1314 Texas Ave., Suite 811                             Texas State Bar No.: 24003121
Houston, Texas 77002                                   Justin R. Goodman
Telephone: (713) 225-1838                              Texas State Bar No.: 24036660

Facsimile: (713) 225-1866
Email: mw@mickeywashington.com

James Carlos Canady
Texas State Bar No.: 24034357
THE CANADY LAW FIRM
5020 Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (713) 284-5204
Facsimile: (713) 284-5250
Email: ccanady@canadylawfirm.com

LUBEL VOYLES LLP
Montrose Blvd., Suite 800
Houston, TX 77006
Telephone: (713) 284-5200
Facsimile: (713) 284-5250
Email: lance@lubelvoyles.com
adam@lubelvoyles.com
jgoodman@lubelvoyles.com

Attorneys for Melvin Aldridge, Trevor Cobb, Jerry Davis, Michael Dumas, Corris Ervin, Robert Evans, Anthony Guillory, Wilmer K. Hicks, Jr., Richard Johnson, Ryan McCoy, Emanuel McNeil, Robert Pollard, Frankie Smith, Tyrone Smith, James A. Young Sr., and Baldwin Malcom Frank

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all counsel of record via the Court's ECF system on March 27, 2017.

*/s/ Justin R. Goodman*
Justin R. Goodman