# EXHIBIT A

March 20, 2017

Honorable Anita B. Brody
United District Court Eastern District of Pennsylvania
7613 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

IN RE: National Football League Players' Concussion Injury Litigation, No. 2:12-md-02323

Dear Judge Brody,

Given the "Motion To Resolve Attorney Fee Dispute" filed on behalf of the Estate of Kevin Turner, and our support of such motion and the Estate's subsequent responses, we felt compelled as a group of plaintiffs' wives to ensure that the Court is aware of the existence of thousands of similar fee disputes among Class plaintiffs and Class Counsel involved in this settlement.

To our knowledge, there are at least 5,000 plaintiffs in this settlement who signed individual retainer agreements with Class Counsel attorneys in 2012 when such attorneys were not yet appointed nor recognized as class counsel as there was no certified class in existence at the time. When the class action became certified, many players and their wives believed that these individual agreements were no longer applicable as they now had "Class Counsel" working as their attorney representatives, who were going to get paid their fees from the NFL.  As the class action evolved and a settlement was reached, Class Counsel fielded questions from many of us regarding whether their individual retainer agreements could be terminated, were negotiable or even enforceable as a matter of law. Many of us asked these questions; however, we received no answers and/or vague, confusing and misleading responses from Class Counsel.  When several of us posed the question of whether individual attorneys' fees would come out of our husbands' individual monetary awards, many of us received the response that the fees would come out of the $112.5 million paid by the NFL. Only when we consulted one another did we realize that this was not an accurate representation.

We are relying on the Court to ensure that not only the settlement terms are fair and equitable, but also that plaintiffs who have qualifying diagnoses are actually able to receive the amount intended by the settlement and the court, without undue delay, so that the purpose of the settlement to provide adequate medical care and compensation for those whose lives have been "taken away" from them (not to mention the lives of their spouses, loved ones and children who have been affected and taken on the burden of care) is upheld.

Our group of wives submitted questions to Liz Nicholson, wife of Gerry Sullivan (a Class plaintiff) who was present at the last settlement conference in Philadelphia. She submitted our questions to Chris Seeger, Co-Lead Class Counsel prior to the conference. Unfortunately, the majority of our questions were not presented nor answered during the conference and Ms. Nicholson was not afforded the opportunity to present them to you.  This triggered a sense of urgency on our part to inform you of our immediate concerns and the confusion that is surrounding the Class of plaintiffs.

We want to be clear that we are supportive of the settlement and respect your diligence in ensuring that this settlement is fair and equitable for all of the plaintiffs. Thank you for acknowledging the needs

1

of our husbands who are currently suffering from debilitating brain disease as well as those who have yet to experience the full consequences of repetitive brain injury. We do not dispute that Class Counsel should receive an award of attorney's fees and expenses paid by the NFL for work they have performed on behalf of the class. Our dispute lies with Class Counsel collecting on individual retainer agreements when zero (or minimal) individual services have been performed on behalf of the client. Our dispute lies with Class Counsel inadequately representing the interests of the Class by failing to convey our husbands' concerns to the Court. We fear that a conflict of interest exists with Class Counsel serving in the role as attorneys representing "The Class" while simultaneously representing the same clients as "Individuals." How can they advise our husbands that attorneys are not necessary under the terms of the settlement when they have a vested interest in retaining our husbands as individual clients? This explains why they have recommended that our husbands maintain their individual representation instead of representing themselves in their settlement claims, even in situations where the player has already received a qualifying diagnosis which cannot be disputed (for instance, those who have been diagnosed and living with ALS for more than a decade.)

In addition, we'd like to point out that these individual agreements executed by Class Counsel in 2012 contain contingency fees which range from 15% to 45% of the client's monetary award under the settlement. We believe these fees are disproportionate to most if not all of the individual services performed by all Class Counsel on behalf their individual clients. We are requesting that the Court consider implementing a process to review each contingency agreement to ensure that fees are reasonable in light of the actual work performed.  We believe our husbands are entitled to an accounting of any individual services performed on their behalf and the fees associated with those services. Up to this point, it is unlikely that any attorney, whether Class Counsel or non-Class attorney, has performed more than nominal work on behalf of individual clients. At most, attorneys have performed administrative tasks such as sending mass emails, letters, returning phone calls or most recently, registering their clients online (which takes 2 minutes as estimated by Class Counsel). In any event, we ask that if the Court chooses to conduct a review of contingency fees, that the distribution of plaintiffs' awards are not delayed. For many of us, our husband's medical care is dependent upon these monetary awards and they cannot survive another delay.

Further, we would like to state our objection to the 5% Holdback on players' monetary awards requested in Class Counsel's recent petition to the Court. Class Counsel wants to take another percentage out of our husbands' awards for future legal fees anticipated by Class Counsel. The settlement process and guidelines have been established. If Class Counsel believes additional work may be required on their part to represent the interests of the Class and they will not be adequately compensated for that additional work by the $112.5 million they have already agreed to accept, we feel they should demand that amount from the NFL. It would be inequitable and unconscionable to take Class legal fees out of each plaintiff's individual award.

In closing, we pray that the Court recognizes that it is the oldest and sickest members of the NFL family who will be most affected by the exorbitant fees in their individual retainer agreements. These fees will go against the settlement's purpose of ensuring that players (many whom have been living ALS, Alzheimers, Parkinsons and Dementia) receive adequate compensation for their injuries and suffering. As wives and caregivers, we have struggled to keep the family unit intact on a shoestring budget, while managing the burden of their costly care. Our husbands need every penny they are entitled to receive out of this settlement. We have helped them manage to live on their substandard NFL pensions,

especially the ones who played prior to 1993. Many of our men are now either gone or completely "lost" to us. We have chosen to stand by them because we realize they were victims. They were not properly educated on the risks of concussions, let alone how to identify a concussion and were in fact encouraged to continue playing immediately following concussions. There were no protocols in place when our husbands played. We ask simply that our husbands be treated with the same honor, dedication and care they showed their NFL teams when they played. They gave their lives to the game and we thank you for acknowledging our concerns. We await your thoughtful reply.

Sincerely,

NFL Players' wives

Dawn D. Siemon
Wife's Printed Name

Dawn Siemon
Wife's Signature

3.21.17
Dated Signed

Jeff G. Siemon  6.2.50
Husbands' Printed Name + DOB

5401 Londonderry Rd.
Edina MN 55436
Address

952 – 938-3769
Phone

Barbara Sunde
Wife's Printed Name

Barb Sunde
Wife's Signature

3 – 21 – 17
Dated Signed

Milt Sunde  2-1-42
Husbands' Printed Name + DOB

6008 W. 104th St.
Bloom. MN 55438
Address

952-835-3867
Phone

MaryBeth Blair
Wife's Printed Name

MaryBeth Blair
Wife's Signature

3/21/17
Dated Signed

Matt (Albert) Blair  9.20.50
Husbands' Printed Name + DOB

5367 Barrington Way, Shorewood MN 55331
Address

612.239.3797
Phone

HELEN LORRAINE VANDERKELEN
Wife's Printed Name

Helen Lorraine VanderKelen
Wife's Signature

3/21/17
Dated Signed

RONALD VANDERKELEN  11/6/39 (DECEASED)
Husbands' Printed Name + DOB

5300 VERNON AVE S. #307 EDINA MN 55436  9529579531
Address                                    Phone

3

especially the ones who played prior to 1993. Many of our men are now either gone or completely "lost" to us. We have chosen to stand by them because we realize they were victims. They were not properly educated on the risks of concussions, let alone how to identify a concussion and were in fact encouraged to continue playing immediately following concussions. There were no protocols in place when our husbands played. We ask simply that our husbands be treated with the same honor, dedication and care they showed their NFL teams when they played.  They gave their lives to the game and we thank you for acknowledging our concerns. We await your thoughtful reply.

Sincerely,

NFL Players' wives

_CONNIE CARPENTER_    _Connie Carpenter_    _3/22/2017_
Wife's Printed Name      Wife's Signature      Dated Signed

_CHARLES J. MYRTLE_    _2/6/1945_
Husbands' Printed Name + DOB

_5225 POOKS HILL RD_      _303-915-7775_
Address _BETHESDA, MD 20814_      Phone

_____    _____    _____
Wife's Printed Name      Wife's Signature      Dated Signed

_____
Husbands' Printed Name + DOB

_____    _____
Address      Phone

_____    _____    _____
Wife's Printed Name      Wife's Signature      Dated Signed

_____
Husbands' Printed Name + DOB

_____    _____
Address      Phone

_____    _____    _____
Wife's Printed Name      Wife's Signature      Dated Signed

_____
Husbands' Printed Name + DOB

_____    _____
Address      Phone

3

have chosen to stand by them because we realize they were victims. They were not properly educated on the risks of concussions, let alone how to identify a concussion and were in fact encouraged to continue playing immediately following concussions. There were no protocols in place when our husbands played. We ask simply that our husbands be treated with the same honor, dedication and care they showed their NFL teams when they played.  They gave their lives to the game and we thank you for acknowledging our concerns. We await your thoughtful reply.

Sincerely,

NFL Players' wives

| Bethany Kay Wirgowski | Bethany Wirgowser | 3-21-17 |
|---|---|---|
| Wife's Printed Name | Wife's Signature | Dated Signed |

Dennis Wirgowski   4-20-47
Husbands' Printed Name + DOB

1127 Brissette Beach                          989-686-2334
Address                                    Phone

_____      _____      _____
Wife's Printed Name          Wife's Signature          Dated Signed

_____
Husbands' Printed Name + DOB

_____      _____
Address                  Phone

_____      _____      _____
Wife's Printed Name          Wife's Signature          Dated Signed

_____
Husbands' Printed Name + DOB

_____      _____
Address                  Phone

_____      _____      _____
Wife's Printed Name          Wife's Signature          Dated Signed

_____
Husbands' Printed Name + DOB

_____      _____
Address                  Phone

3