# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | Civil Action No. 2:14-cv-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**OBJECTION OF SEAN MOREY, ALAN FANECA, BEN HAMILTON, ROBERT ROYAL, RODERICK "ROCK" CARTWRIGHT, JEFF ROHRER, AND SEAN CONSIDINE TO CLASS ACTION SETTLEMENT**

contributed to the prevalence of stroke among retired players. Co-Lead Class Counsel knew of these allegations – indeed, he represents a group of plaintiffs who sued the NFL based in part on its administration of Toradol. *See Finn* Compl. ¶¶ 135-143. But the Settlement makes no mention of these injuries except to release any claims for them and to inexplicably select them as bases for reducing the retired player's compensation.

Representative Plaintiffs did not adequately represent Objectors' interests in eliminating or reducing the offset related to stroke and post-NFL TBI. ***Neither Mr. Turner nor Mr. Wooden claims an increased risk of stroke or non-football-related TBI.*** As a result, neither can adequately represent those class members who someday may suffer such a stroke or non-football related instance of TBI – and the resulting drop in compensation under the Settlement – due to the NFL's own conduct.

### C. The Failure To Credit Seasons Played in NFL Europe Demonstrates Lack of Adequate Representation

The Settlement, while releasing all claims of NFL Europe players, does not award class members "Eligible Season" credit for time spent playing in NFL Europe or its predecessors. Settlement § 6.7(c)(i). Thus, a class member who played five years in the NFL will receive a larger settlement award than a class member who played two years of his career in NFL Europe and three years in the NFL. In effect, veterans of NFL Europe receive no compensation for the time they spent playing there. That is true even though players in NFL Europe undoubtedly sustained repeated concussive and subconcussive impacts, just like players in the NFL. *See* Morey Decl. ¶¶ 4, 6.

Players in NFL Europe experienced repeated MTBI, just like their counterparts in the United States. NFL Europe played on the same size field, for the same length of time, and adopted rules that were rooted in the NFL Rulebook. Morey Decl. ¶ 6. The NFL Europe season,

34

moreover, lasted ten games, *id.* ¶ 5, which exceeds the "three or more" NFL games required to accrue an eligible season, Settlement § 2.1(kk). And because the NFL Europe season did not overlap with the NFL season, at least some players would play *full seasons* in *both leagues.* Mr. Morey, for example, played 33 games in the 2003 season – ten in NFL Europe and 23 (including pre- and post-season) in the NFL. Morey Decl. ¶ 7.

Nor were the injuries that players sustained in NFL Europe insignificant. Severely injured players were sometimes flown to Birmingham, Alabama for treatment.[39] In one season, as many as 70 players in the six-team league were transported back to the United States.[40]

Class Counsel and the NFL offer no justification for the arbitrary discrimination against class members who played in NFL Europe. Indeed, Co-Lead Class Counsel has admitted that the claims of NFL Europe players were bargained away:

> This was a complicated transaction. *The case was specifically brought to provide help to players in the NFL.* NFL Europe, um, is part of the deal, but, you know, nobody, I think, is going to argue that they're playing at the level that the NFL in the United States is playing at or that they're getting hit like they are there. So I'm not saying they should be squeezed out. I'm not poo-pooing that play over there. *But I'm simply saying that in the context of a compromise where there's give and take, you know, we had to focus on what our primary objective was, and that was getting help to players playing in the NFL who need it right now.*

Audio file: Interview of Chris Seeger, CBS Sports Radio, The Mojo Show, at 9:09-9:45 (aired July 10, 2014) (emphasis added). To sum up Mr. Seeger's comments: The claims of players in

---

[39] Nicholson, *NFL Europe's Injured Flown to Birmingham*, Birmingham Business Journal (July 1, 2001), http://www.bizjournals.com/birmingham/stories/2001/07/02/story2.html?page=all (attached as Exhibit 25); *see also* Battista, *A Player's Concussion, a Family's Ordeal*, The N.Y. Times (Sept. 15, 2012) (describing the career-ending hit one NFL Europe player suffered during training camp), http://www.nytimes.com/2012/09/16/sports/football/former-nfl-player-mitch-white-learns-to-adjust-to-postconcussion-life.html?pagewanted=all (attached as Exhibit 26).

[40] Nicholson, *supra.*

35

NFL Europe were bargained away to serve the "primary objective" of "getting help to players playing in the NFL."

**Neither Mr. Turner nor Mr. Wooden alleges that he played in NFL Europe.** Thus, neither adequately represents the interests of players who did, explaining why NFL Europe players are treated disparately. *See GM Trucks*, 55 F.3d at 800 (finding class representation inadequate where "settlement appears to create antagonism within the class").[41]

\* \* \* \* \*

Simply put, distinct groups within the class had their rights bargained away without adequate representation. These intra-class conflicts preclude certification of the settlement class. "The class representatives may well have thought that the Settlement serves the aggregate interests of the entire class." *Amchem*, 521 U.S. at 627. However, where "the interests of the representative plaintiffs and the interests of [absentee class members] align[] in opposing directions," class representation is inadequate. *Dewey*, 681 F.3d at 188; *see also Amchem*, 521 U.S. at 627 (denying class certification where settlement not agreed to by representatives of all sub-classes); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999) (holding that intra-class conflict "require[d] division into homogenous subclasses . . . with separate representation to eliminate conflicting interests").[42]

---

[41] Players in NFL Europe are not the only NFL veterans who go without full credit for the time they spent in the league. Class members who spent time on "practice, developmental, or taxi squad roster[s] for at least eight (8) regular or postseason games" receive only "half of an Eligible Season." Settlement ¶ 2.1(kk).

[42] If the Court agrees that intra-class conflicts prevent certification, it may "simply divide the groups into subclasses," *Dewey*, 681 F.3d at 189, so that "separate counsel [can] provide[] adequate structural protections to assure that differently situated plaintiffs negotiate for their own unique interests," *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533 (3d Cir. 2004) (quotation marks omitted).

36

severely reduces recovery for an event that disproportionately affects a significant percentage of the settlement class.

The Settlement also provides no credit for seasons played in NFL Europe, notwithstanding that the risk of injury in NFL Europe did not differ from the risk in the NFL in any meaningful way. *See* pp. 35-37, *supra*; Morey Decl. ¶ 6. Neither the NFL nor Class Counsel estimate the number of class members whose service in NFL Europe rather than the NFL reduced their overall recovery. But one collection of football statistics identifies ***over 3,600 players*** who spent time in the league.[85] Thus, the failure to credit seasons played in NFL Europe could affect a large number of class members.

In short, the "fact that the . . . settlement benefits certain groups of the class more than others" weighs against final approval, and demonstrates that the settlement was "a sell-out of an otherwise strong case." *GM Trucks*, 55 F.3d at 806, 808.

### 2. The Proffered Value of the Settlement Is Illusory Because It Sets an Unreasonably High Bar To Qualify for Dementia

The Settlement sets an unreasonably high bar to qualify even for Level 1.5 dementia. To do so, a class member must be unable to function independently at a job, shopping, volunteer or social activities; must be unable to complete difficult chores or complicated hobbies; ***and*** must require prompting to engage in personal care such as dressing, bathing, and using the bathroom. Stern Decl. ¶ 47. Junior Seau and Dave Duerson – two NFL greats who killed themselves and were found to have CTE – reportedly experienced "years of significant changes in mood and behavior, including depression, hopelessness, aggression, and poor impulse control." *Id.* ¶ 35. "Based on public reports of their functioning by their family members and friends," however, "it

---

[85] *See* NFL Europe/WLAF Player Register, *The Football Database*, http://www.footballdb.com/nfl-europe/nfleplayers.html (accessed Sept. 24, 2014).

71