# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB <br><br> MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated,* | Hon. Anita B. Brody |
| Plaintiffs, | Civil Action File Nos. 2:13-cv-04378-AB and |
| v. | 2:12-cv-03716-AB |
| National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc., | |
| Defendants. | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

### OBJECTION BY RETIRED NFL PLAYERS REGINALD SLACK AND MATTHEW RICE TO PROPOSED CLASS SETTLEMENT

### I.  INTRODUCTION

Reggie Slack and Matthew Rice, by their attorney, Parag Shah, hereby object to the proposed Class Action Settlement ("Settlement") on two grounds. First, because the definition of "Eligible Season" differs from the definition of "Credited Season" otherwise used by the NFL. Secondly, because the definition of "Eligible Season" does not provide players with any credit for seasons played in the World League of American Football, the NFL Europe League, or the

1

NFL Europa League (collectively "NFL Europe"), despite the fact that one collection of football statistics identifies more than 3,600 players who spent time playing in these leagues.[1]

Because of this unfairly narrow definition of an "Eligible Season", Mr. Slack and Mr. Rice will both be negatively impacted by having their potential recoveries reduced by up to 80%.

## II. OBJECTIONS

### A. Reginald Slack's NFL Career

Reginald Slack is a retired NFL Player who played the position of quarterback for 3 seasons in the NFL from 1990 through 1992, all with the Houston Oilers. Mr. Slack also played in the World League of American Football through the Houston Oilers, for the 1992 season with the New York/New Jersey Knights. According to the NFL's own player database, Mr. Slack was credited with 3 seasons with the Oilers.[2]

### B. Matthew Rice's NFL Career

Matthew Rice is a retired NFL Player who played the position of defensive end for portions of 2 seasons in the NFL from 2005 through 2006, first with the New York Giants and then with the Detroit Lions. Mr. Rice also played in the NFL Europe league for the 2007 season with the Rhein Fire as an ambassador for the Detroit Lions. According to the NFL's own player database, Mr. Rice was credited with 2 seasons.[3]

### C. Basis for the Objections

#### a. Definition of Eligible Season

Under the proposed Settlement, the receipt of a Monetary Award is based, in part, on the number of seasons played or practiced in the NFL. Retired players who are credited with at least

---

[1] *See* NFL Europe/WLAF Player Register, *The Football Database*, available at http://www.footballdb.com/nfl-europe/nfleplayers.html (accessed October 13, 2014).
[2] Reggie Slack, http://www.nfl.com/player/reggieslack/2502981/profile.
[3] Matthew Rice, http://www.nfl.com/player/matthewrice/2506729/profile.

2

five "Eligible Seasons" will receive the maximum Monetary Award for their injury and age, absent other applicable Offsets. The Monetary Award, however, is subject to a downward adjustment to the extent a player has fewer than five "Eligible Seasons."

> Section 2.1(kk) of the Settlement Agreement defines "Eligible Season" as follows:
>
> "Eligible Season" means a season in which a Retired NFL Football Player or deceased Retired NFL Football Player was (i) on a Member Club's Active List on the date of three (3) or more regular season or postseason games; or (ii) on a Member Club's Active List on the date of one (1) or more regular or postseason games, and then spent at least two (2) regular or postseason games on a Member Club's injured reserve list or inactive list due to a concussion or head injury. A "half of an Eligible Season" means a season in which a Retired NFL Football Player or deceased Retired NFL Football Player was on a Member Club's practice, developmental, or taxi squad roster for at least eight (8) regular or postseason games.

Under this definition, a player who has suffered a severe injury before the third game of the regular season requiring his team to place him on injured reserve will not receive credit for an "Eligible Season" unless the player was placed on injured reserve because of a concussion or some other sort of head injury. Furthermore, players who participate in pre-season camps and are on the practice squads for a time period less than eight regular or postseason games receive no credit for the time they spent taking hits on the field. At least 61 concussions were *reported* during the most recent NFL preseason as of August 24, 2014, an era when there is comparatively little contact during training camp.[4] In years past, training camps were much different.

When Mr. Slack and Mr. Rice played approximately ten and twenty years ago respectively, training camps were full contact and took place twice a day. Training camp and preseason games were their opportunities to demonstrate toughness and an ability to hit and take hits harder than other players vying for their positions.

---

[4] Diamond, Dan, Wes Welker's Concussion Was 61st Concussion – At Least – of NFL Preseason, Forbes (Aug. 24, 2014), available at http://www.forbes.com/sites/dandiamond/2014/08/24/wes-welkers-concussion-was-59th-concussion-at-least-of-nfl-preseason/.

3

For decades the NFL glorified the head-on-head collisions that took place on the field and minimized concussions as mere "dings" or instances of "getting your bell rung." (Master Complaint, ¶ 50, 58.) In so doing, the NFL created a culture that encouraged players to deny or hide their concussive symptoms and return to the field as quickly as possible. "[A] failure to play through such an injury creates the risk that the NFL player will lose playing time, a starting position, and possibly a career." (Master Complaint, ¶ 62.) This was just as true during training camp and preseason as it was during the remainder of the regular season, and maybe even more so. For those players who were second and third stringers, jobs were won and lost during training camp and the preseason.

### b. Time Played with NFL Europe

Under the proposed Settlement, Section 2.1 (ffff) defines "Retired NFL Football Players" as follows:

> "Retired NFL Football Players" means all living NFL Football players who, prior to the date of the Preliminary Approval and Class Certification Order, retired, formally or informally, from playing professional football with the NFL or any Member Club, including American Football League, **World League of American Football, NFL Europe League and NFL Europa League** players, or were formerly on any roster, including preseason, regular season, or postseason, of any such Member Club or league and who no longer are under contract to a Member Club and are not seeking active employment as players with any Member Club, whether signed to a roster or signed to any practice squad, developmental squad, or taxi squad of a Member Club. (emphasis added)

Although the Settlement class includes veterans of NFL Europe, time spent playing for NFL Europe or its related leagues does not apply to the "Eligible Season" determination. In fact, Section 6.7(c)(i) specifically states:

> For the avoidance of any doubt, seasons in the World League of American Football, the NFL Europe League, or the NFL Europa League are *specifically excluded* from the calculation of an Eligible Season (emphasis added).

4

Thus, for instance, a class member diagnosed with a Level 2.0 Neurocognitive Disorder who played four years in the NFL will receive a larger settlement award than a class member with the same Qualifying Diagnosis who played two years of his career in NFL Europe and two years in the NFL. In effect, veterans of NFL Europe receive no compensation for the time they spent playing there, even though players in NFL Europe undoubtedly sustained repeated concussive and subconcussive impacts, just like players in the NFL.

Players in NFL Europe experienced repeated MTBI, just like their counterparts in the United States. Indeed, Mr. Slack was sacked 23 times during the 1992 season he played with the New York/New Jersey Knights.[5] NFL Europe played on the same size field, for the same length of time, and adopted rules that were rooted in the NFL Rulebook.[6] The NFL Europe season lasted ten games, which exceeds the "three or more" NFL games required to accrue an eligible season. (Settlement § 2.1 (kk).) And because the NFL Europe season did not overlap with the NFL season, at least some players would play *full seasons* in *both leagues*. Mr. Slack, for example, played 3 seasons – or seventeen (17) months- straight as a result of his playing in NFL Europe between seasons with the Oilers. (Exhibit 1)

Furthermore, the injuries that players sustained in NFL Europe were just as significant as those sustained in the NFL. It was common practice for players who were severely injured in an NFL Europe game to be flown to Birmingham, Alabama for treatment.[7]

Class Counsel and the NFL offer no justification for the arbitrary discrimination against class members who played in NFL Europe.

---

[5] *See* 1992 New York/New Jersey Knights Stats, http://www.footballdb.com/teams/wlaf/new-york-new-jersey-knights/stats/1992.

[6] Football Rules- National Football League Europe, http://www.sportsknowhow.com/football/rules/national-football-league-europe.html.

[7] Nicholson, Gilbert, *NFL Europe's Injured Flown to Birmingham*, Birmingham Business Journal (July 1, 2001), available at http://www.bizjournals.com/birmingham/stories/2001/07/02/story2.html?page=all.

### D. A Better Approach

The definition of "Eligible Season" in the proposed Settlement differs from the definition of "Credited Season" under the terms of the Bert Bell/Pete Rozelle NFL Players Retirement Plan (the "Retirement Plan"). (Exhibit 2) For purposes of determining a retired player's eligibility for certain retirement and disability benefits, a "Credited Season" includes seasons spent on the injured reserve list, regardless of when during the season the player was placed on that list.

A definition of "Eligible Season" that fails to account for time spent at training camp and preseason games and practices, and particularly for time spent playing on an NFL Europe team is unfair to players who have, or who are diagnosed in the future with, a Qualifying Diagnosis. Concussive head impacts can occur during training camp, preseason games, and during regular or postseason games, and happen irrespective of whether a player is playing in the United States, or in Europe. The crux of the Master Complaint is that the NFL created a culture where concussions and head injuries were dismissed as inconsequential, despite known risks of short and long-term neurological damage. The NFL expected players to play through any injury, including one to the head, despite the risk of additional neurological injury, and the players felt compelled to do so to maintain their positions on the team. (Master Complaint, ¶¶ 62, 107.) In that environment, it is not surprising that training camp and preseason concussions were not reported and that few (if any) players were placed on injured reserve "because of" concussions or concussion related head injuries.

There is now ample evidence, however, that concussions are a regular feature of training camp and the preseason.[8] A player who already has or is diagnosed in the future with a Qualifying Diagnosis should not have his Monetary Award reduced because he was unlucky enough to have been injured as a result of hits taken at training camp and preseason games, been

---

[8] Diamond, *supra* note 4.

6

placed on injured reserve before the third game of the regular season, or equally unlucky to have been sent to play in NFL Europe.

To be fair to players like Mr. Slack and Mr. Rice, the Settlement should calculate the Monetary Award based on "Credited Seasons" not "Eligible Seasons", and should credit players for time spent playing in NFL Europe. The term "Credited Season" is familiar to all players and is routinely used to determine eligibility for pension and disability benefits. In fact, the NFL's actuary analyzed the value of the proposed Settlement based on "Credited Seasons" rather than "Eligible Seasons," because *"the Credited Season data served as a reliable proxy for Eligible Season."* (Report of The Segal Group to Special Master Perry Golkin, Doc. No. 6168, at p. 15, n. 11 (emphasis added)). Accordingly the projected amount of money the NFL could expect to pay out over the life of the Settlement would not be increased by the use of "Credited Season" rather than "Eligible Season" to calculate Monetary Awards, and thus the decision to further limit the definition to "Eligible Season" is baffling.

## III. CONCLUSION

Mr. Slack and Mr. Rice object to the proposed Settlement because the definition of "Eligible Season" fails to include time spent at training camp and preseason games, a season where the player was placed on injured reserve before the third game of the regular season unless the team placed the player on injured reserve specifically because of a concussion or head injury, or time spent playing in NFL Europe. Such a definition of "Eligible Season" is both unfair to the plaintiffs and a completely arbitrary decision on the part of Lead Counsel and the NFL.

Respectfully submitted,

Dated: October 14, 2014

Parag Shah

7

                              The Shah Law Firm
                              1355 Peachtree St.
                              Suite 1800
                              Atlanta, Georgia 30309
                              Tel. (404) 844-4874
                              Fax (404) 410-6933
                              Shah@shahlawfirm.com

Dated: October 14, 2014         *(see verification attached)*
                                    Matthew Rice
                                    2522 Druid Park Dr.
                                    Baltimore, MD 21215
                                    (814) 769-6214
                                    DOB 02/12/1982

Dated: October 14, 2014         *(see verification attached)*
                                    Reginald Slack
                                    716 Bremen Ave.
                                    Pensacola, FL 32507
                                    (850) 292-7053
                                    DOB 05/02/1968

10/13/2014    07:05    TO:13013454857   FROM:4432886633         Page:   2

## VERIFICATION

I declare under penalty of perjury that all of the information provided above regarding my decision to object to the proposed Settlement in *In Re: National Football League Players' Concussion Injury Litigation*, MDL No. 2323, is true and correct to the best of my knowledge. I understand that my decision to object to the proposed Settlement means that although I am raising an objection to the proposed Settlement, I have decided to participate in the Settlement.

Date: 10/13/14

Signature: *[signed]*

Printed Name: Martha Rice

## VERIFICATION

I declare under penalty of perjury that all of the information provided above regarding my decision to object to the proposed Settlement in *In Re: National Football League Players' Concussion Injury Litigation*, MDL No. 2323, is true and correct to the best of my knowledge. I understand that my decision to object to the proposed Settlement means that although I am raising an objection to the proposed Settlement, I have decided to participate in the Settlement.

Date: 10/10/14

Signature: *Reginald B. Clark*

Printed Name: Reginald B. Slack