# EXHIBIT D

-------- Original message --------
From: Gina Palacio <GPalacio@PODHURST.com>
Date: 7/7/16 10:52 AM (GMT-06:00)
To: Steve Smith <chiesmith@ymail.com>, "Steven Smith (chie2488@gmail.com)" <chie2488@gmail.com>
Subject: NFL - Executed Documents

Hi Chie,

Attached are the (1) Executed Retainer Agreement for Steve; (2) Executed Retainer Agreement for you; (3) Executed Supplemental Retainer Agreement; and (4) Executed Affidavit.

Let me know if I got them all or if you need any additional documents.

My love to you, Steve, Jaz, Dante . . . and all your 4-legged family members.

Big Hug
G

Gina C. Palacio, F.R.P.
*Sr. Paralegal to Steven C. Marks, Esq.*
**Podhurst Orseck, P.A.**
25 West Flagler Street – Suite 800
Miami, FL   33130
Tel: (305) 358-2800
Fax: (305) 358-2382
Email:  gpalacio@podhurst.com


-------- Original message --------
From: chiesmith <chiesmith@ymail.com>
Date: 7/7/16 11:53 AM (GMT-06:00)
To: Gina Palacio <GPalacio@PODHURST.com>
Subject: RE: NFL - Executed Documents

Hi Gina,
The documents are not real clear. Is it possible to have copies mailed to me? I have a question for Mark as well.

It was our understanding that your fees will be paid out of the settlement. However, looking at the first page of the document I now see where you have an additional 40% plus another 5%. I am confused.

I recall asking Mark about this as well and he assured me Podhurst Orseck would be paid out of the settlement so no additional fees should be coming out of the settled amount.

Also, since Podhurst/Orseck is one of the court appointed attorneys I'm wondering now why we needed representation at all? Can you clarify this for me? Thank you.

Chie

Sent from my Sprint Samsung Galaxy S® 6.

**From:** Gina Palacio <GPalacio@PODHURST.com>
**Subject: RE: NFL - Executed Documents**
**Date:** July 7, 2016 at 1:26:56 PM CDT
**To:** 'chiesmith' <chiesmith@ymail.com>

Hi Chie,

I'm afraid that the Retainer Agreement I have for Steve is a fax copy which is difficult to read, but I will make hard copies of everything and send to you.

Unfortunately, Mr. Marks is out-of-the-country on extended business, but I will pass on your email and I am sure he will respond as soon as he is able to do so.

In the meantime, I believe (and please do not quote me on this) that since this case is now a Class Action Settlement, that the Court will set a standard fee for all claims just so all Class Members are on the same level and those that are not represented do not receive more than those that do have representation and were the ones that brought the lawsuit. Also, since the settlement is not yet effective, no petitions for attorney's fees have been filed by any of the lead firms.

However, I think it would be best for you to speak with Mr. Marks so he can clarify since I really don't want to give you any wrong information.


Gina C. Palacio, F.R.P.
Sr. Certified Paralegal
**Podhurst Orseck, P.A.**
Tel: (305) 358-2800
Email: gpalacio@podhurst.com


**From:** Chie Smith <chiesmith@ymail.com>
**Date:** July 13, 2016 at 8:04:36 PM EDT
**To:** Gina Palacio <gpalacio@podhurst.com>
**Subject: re: no Sub**
**Reply-To:** Chie Smith <chiesmith@ymail.com>

Hi Gina,

Can you tell me when Steven will be back or if there's another attorney I can speak with. I need to discuss our contract asap. Thank you.

Chie Smith

On Wednesday, July 9, 2014 11:45 AM, STEVEN C. MARKS <SMARKS@PODHURST.com> wrote:

I am pleased to report that The Honorable Judge Anita Brody has issued an Order Granting Preliminary Approval of the revised Settlement Agreement.

As I explained a few weeks ago, we view the Revised Settlement Agreement as a successful achievement, because it provides meaningful healthcare benefits for all presently retired players regardless of their vested status under the CBA, while maintaining all other NFL benefits currently in place and enhancing one of those benefits in a very significant way. Additionally, it secures significant compensation for those who are most in need.

To briefly reiterate its main features, the Revised Settlement Agreement establishes an uncapped compensation program to ensure that any player who has or develops ALS, Parkinson's, Alzheimer's, moderate dementia or early dementia will receive substantial benefits. The program will last for 65 years and will be fully guaranteed, ensuring that these important benefits will be available to any eligible retired player who needs them.

Additionally, all retired players, even those without any symptoms today, will be eligible to undergo a Baseline Neurological Evaluation and continued monitoring and treatment that may include pharmaceuticals, counseling, and other treatment. If a more serious diagnosis (such as early dementia, moderate dementia, Alzheimer's, Parkinson's or ALS) develops, they will at that point go into the compensation grid and receive substantial compensation. This will provide all former players with the examination and preventive care needed to avert or treat potentially serious conditions. This settlement will not affect other benefits former players may be receiving through any of the League's disability programs.

Judge Brody's Order Granting Preliminary Approval is a big step forward on the path toward final approval and delivering the settlement's benefits to retired players. Within the next few weeks, a website will be set up for the settlement and formal notice of the settlement will be sent to each retired player. Those retired players who wish to either object to or opt-out of the settlement must do so by October 14, 2014, pursuant to the procedures set forth in section 14.3 of the Settlement Agreement. All retired players who wish to remain in the settlement do not need to take any further action at this time. Eventually, if and when the settlement receives final approval and becomes effective, a registration process will be set up and all retired players who have not opted out of the settlement will need to register to become eligible for its benefits. The final fairness hearing, at which Judge Brody will consider any objections made to the settlement and whether to grant final approval, is currently scheduled for Wednesday, November 19, 2014 at 10:00 a.m. at the United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania.

If you have not done so already, please make sure you have provided our office with all your current contact information and documentation. We are sure you will have many questions and we will be providing additional information as soon as we can.

We send our very best wishes to you and your family for a happy and healthy summer. We very much appreciate, and will never take for granted, the trust you have placed in our office.

Sincerely,

Steven C. Marks, Esq.
**Podhurst Orseck, P.A.**
25 West Flagler Street – Suite 800
Miami, FL   33130
Tel: (305) 358-2800
Fax: (305) 358-2382
Email: smarks@podhurst.com

-------- Original message --------
From: "STEPHEN F. ROSENTHAL" <SROSENTHAL@podhurst.com>
Date: 7/14/16 11:16 PM (GMT-06:00)
To: chie2488@gmail.com, chiesmith@ymail.com
Cc: "STEVEN C. MARKS" <SMARKS@PODHURST.com>, Gina Palacio <GPalacio@PODHURST.com>
Subject: Responding to your emails to Steve Marks and Gina Palacio today


Dear Steve and Chie,

I am Steve Marks' partner, and I'm responding for him since he's found himself out of internet range. (Chie, you may recall that we met in Philadelphia and had dinner when you came up for one of the NFL court events.) I know Steve was hoping to call you, Chie, earlier this evening, but I believe he couldn't get decent cell service was he was. He was able to contact me tonight, before his service cut out, to ask me to please email you tonight since it was very important.


I know both of you have asked today about the contract with our firm and the attorney's fees. The short answer to your question about whether we have been paid any fees yet is "no." The Plaintiffs' Executive Committee, of which our firm is a part, has not yet even submitted an application to the Court for fees, largely because the settlement is still not yet final, because the time has not yet run for the objectors to the settlement to seek further appeal to the U.S. Supreme Court. We detailed the likely timeframe on that process and tried to answer our clients' questions about how attorney's fees will be handled in a long email that I believe you received from Steve Marks in late May. Once the settlement is truly final, we do hope to get paid a fee for our firm's contribution to the overall effort on behalf of all class members. But at the moment, we have no idea what that fee might be, and because of the objectors' delay, it is unlikely we will know until sometime in 2017.


As far as individual fee contracts with clients, you are of course not alone in asking the important question of how the fee for future work done on behalf of individual clients will be handled. The frustrating truth is that we don't know yet. We expect that the Court, or the Settlement Claims Administrator, will probably set a range that it considers to be a fair fee percentage for the additional work each firm does for its individual clients (which will include things like preparing the client's paperwork for the BAP process, making the case for the maximum possible payout applicable to each case on the settlement grid, advising the client and dealing with any medical experts through that process, and handling any objections or appeals of the individual case that may be necessary).


We fully anticipate that the fee percentage that will be established as the appropriate rate for the additional work we will do for each client's individual case, to actually secure your monetary recovery, will be less than the percentage stated in our contracts that were written 5-6 years ago. Obviously, those contracts were written long before we had any idea how the litigation would shape up or conclude, that there would be a global settlement (as opposed to individual trials), or that there would be this BAP process. How much less our fee will be we do not yet know, since that will be shaped either by Court rulings that have not yet happened, or by an informed sense of what the appropriate rate for such work is among other responsible law firms, once the settlement actually becomes a reality.

We certainly know that it would be much easier for all concerned if we had enough information now to answer your questions with an exact figure; unfortunately, we still don't know yet. As soon as we are at a point where we can determine what fee percentage will be deemed appropriate for that phase of the future work, we will communicate that to you. I hope you know from our past conduct that we pride ourselves on being honorable, ethical and fair. We greatly appreciate the trust you both have reposed in our law firm over all these years, and we absolutely wish to honor that faith by doing right by you. All of us remain inspired by your strength, love and character. It is truly an honor to represent you.

I am sure that when Steve gets back in reliable cell range, he will reach out to you.

Kind regards,

Stephen Rosenthal


On Friday, July 15, 2016 4:45 PM, STEVEN C. MARKS <SMARKS@PODHURST.com> wrote:


It has come to our attention that there are a number of law firms who are scamming Class Members with promises of pre-settlement loans at ridiculously high rates, neuro exams and lower fees. We want to take a moment to warn you as well as your NFL brothers that these doctors are not BAP approved.

At this time, the list of qualified and approved BAP providers under the settlement agreement has not yet been released. The BAP providers will have a package with all the required testing protocols as well as the prerequisites to be included in their report and the specific requirements for qualifying for a monetary award. Evaluations by non-approved BAP providers run the risk of inadequate tests being performed and, even worse, having a doctor make a negative finding based upon the wrong criteria that could compromise your claim since all your past neuropsychological evaluations will likely be reviewed and relied upon by the authorized BAP provider in order to fully assess your injuries and your current condition.

Additionally, you should be aware that Class Members who are represented by counsel, but get lured by these law firms to "jump ship," may very well find themselves in the unhappy position of having to pay *extra* attorney's fees, since their former counsel may not waive their right to claim a lien for whatever fees and costs they may be entitled to receive. Until the Court or its designee decides how attorney's fees are to be handled in these cases, these law firms' promises of low fees should be viewed with skepticism.

We are honored to have played a leading role in this historic litigation, but more importantly, we look forward to assisting *you* in finally obtaining *your* portion of the benefits we have labored for the past six years to make available to you. We hope that our efforts over these years have earned your trust and confidence in our firm, and we greatly appreciate the continued opportunity to represent your interests through the conclusion of your individual claim.