**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | Civil Action No. 2:14-cv-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**FANECA OBJECTORS' PRELIMINARY RESPONSE IN SUPPORT OF
THEIR PETITION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES[1]**

The work of the Faneca Objectors significantly enhanced the settlement. With a fee

award at stake, others challenge the value of that effort, or seek to take credit for that work.

---

[1] This submission responds to: the Opposition to Co-Lead Class Counsel's Petition for an Award of Attorneys' Fees and Adoption of a Set-Aside of Each Monetary Award, and Opposition to [MoloLamken's] Fee Petition, filed by attorney John Pentz, Dkt. 7161; the Armstrong Objectors' Petition for an Award of Attorneys' Fees, filed by attorney Richard L. Coffman, Dkts. 7230, 7232; Curtis L. Anderson's Supplemental Objection to Class Counsel's Fee Petition, filed by attorney George W. Cochran, Dkt. 7237; and Co-Lead Class Counsel's Petition for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, Adoption of a Set-Aside of Five Percent of Each Monetary Award and Derivative Claimant Award, and Case Contribution Awards for Class Representatives, Dkt. 7151. The Faneca Objectors reserve the right to seek leave of the Court to file a reply in further support of their attorneys' fees petition to the extent any additional filing – including Co-Lead Class Counsel's April 10, 2017 response – addresses the Faneca Objectors' fee request.

The Faneca Objectors were the first class members to challenge the adequacy of compensation for CTE claims, and the potential conflict of interest between the class representatives and certain class members at risk of developing CTE in the future.  They also identified deficiencies in the settlement's cap on the BAP Fund, the settlement's lack of Eligible Season credit for seasons played in NFL Europe, and the settlement's $1,000 appeal fee that would preclude financially needy class members from filing meritorious appeals.

The Faneca Objectors submitted substantial evidence and extensive briefing.  They tested the fairness of the settlement before this Court, before the Third Circuit, and in independent negotiations with the NFL.  No other objector invested more time, or more aggressively – and effectively – pursued the interests of the class.  Their advocacy secured over $100 million of additional benefit to the class.

One group of objectors – the Armstrong Objectors – is now taking credit for that work and for the substantial benefit resulting from it.  Throughout the case, their filings simply copied and summarized points the Faneca Objectors had already raised.  Their fee petition, almost comically, is the latest example of that strategy – it is a near carbon copy of the petition submitted by the Faneca Objectors.  Other objectors – led by Cleo Miller – question the value of the benefit secured by the Faneca Objectors' efforts, arguing that not all class members might take advantage of those benefits.   But those objectors do not question class members' ***entitlement*** to the benefits of the improved settlement.  That entitlement is valuable, and it is ***that value*** on which attorneys' fees to objectors are based.

**I.     The Faneca Objectors' Advocacy Increased the Value of the Settlement by More Than $100 Million**

The Faneca Objectors' fee petition provides a detailed explanation of how the enhancements for which they advocated increased the value of the Final Settlement by more than

2

$100 million.  That explanation relied on calculations and assumptions made by Class Counsel in valuing the settlement.  Dkt. 7070-1 at 20-28 & nn.24-39.

As further support for the value of the enhancements attributable to their work, the Faneca Objectors have provided a declaration by Joseph J. Floyd, CPA, JD, CFE, CGMS, ABV ("Floyd Decl.," attached as Exhibit A).  Mr. Floyd and his firm, Floyd Advisory LLC, conducted a valuation analysis of the enhancements to the settlement that resulted from the Faneca Objectors' advocacy.  Using the "generally accepted valuation and finance methodology commonly referred to as 'before and after,'" they summarized the settling parties' valuation of the June 25, 2014 Revised Settlement and estimated the additional value created by the enhancements contained in the Final Settlement.  Floyd Decl. 5.  Their conclusion is that the value of those enhancements is as much as $120.4 million:

- Elimination of the cap on the Baseline Assessment Program ("BAP") Fund for baseline examinations:  $29.6 million, Floyd Decl. 3, 5-7 & Ex. B; *see* Dkt. 7070-1 at 21-22;

- Eligible Season credit for NFL Europe: $35.3 million, Floyd Decl. 3, 7-10 & Exs. B, C; *see* Dkt. 7070-1 at 22-26;

- Extension of Death with CTE timeframe: $44.6 million, Floyd Decl. 3, 10-11 & Ex. C; *see* Dkt. 7070-1 at 26-27; and

- Hardship waiver for appeal fee: $10.9 million, Floyd Decl. 3, 11-12 & Ex. C; *see* Dkt. 7070-1 at 27-28.

Those enhancements – extracted on top of an already generous settlement agreement – did not come easily.

The Faneca Objectors recognized the deficiencies of the Initial Settlement as soon as it was made public.  *See* Dkt. 7070-2 ¶¶8-10, 13.  Accordingly, they sought to participate in the case from the early stages of the approval process – when advocacy in favor of improvements to the settlement would have the most impact.  When other objectors did nothing, the Faneca

Objectors filed a motion to intervene, Dkt. 7070-1 at 8-9; opposed Co-Lead Class Counsel's motion for preliminary approval, *id.* at 9-10; and sought early appellate review of the preliminary approval order, *id.* at 10-11.  The Faneca Objectors pressed the settling parties for discovery and disclosure of information, *id.* at 11, and they filed a robust objection and supplemental brief supported by declarations from nearly a dozen leading experts and hundreds of pages of scientific and other evidence, *id.* at 12-17.[2]  They took the lead at the fairness hearing, arguing all but one of the points later raised in the Court's order identifying potential improvements to the settlement.   *Id.* at 14-15.   Even after securing the improvements that resulted in the Final Settlement, counsel for the Faneca Objectors negotiated directly with the NFL, hoping to secure further improvements that would address their remaining concerns.  *Id.* at 18-19.

No other objector participated in the case in any significant way until **_after_** the Faneca Objectors had already raised the main issues.  Dkt. 7070-1 at 13, 37.  And no other objector went so far to test the fairness of this settlement.  It therefore is clear that it was the Faneca Objectors – because of the arguments they raised and the evidence they submitted – who "transform[ed] the settlement hearing into a truly adversarial proceeding."  *Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 395 (D.N.J. 2012) (quotation marks omitted) (awarding objectors' counsel fees).

## II.   The Armstrong Objectors Wrongly Claim Credit for the Work of the Faneca Objectors

To be sure, class members in addition to the Faneca Objectors objected to the Revised Settlement.  However, for the most part, those objectors parroted the arguments of, and cited the

---

[2] Because the Faneca Objectors submitted their initial objection and evidence over a week before the objection deadline, other objectors repeated the Faneca Objectors' arguments and relied upon the evidence the Faneca Objectors had submitted.  *See* Dkt. 7070-1 at 19 & n.22.

evidence submitted by, the Faneca Objectors.  The Armstrong Objectors now try to take credit for the work of the Faneca Objectors, but their very attempt undercuts their claim.

As the Armstrong Objectors did throughout the proceedings in this Court and in the Third Circuit following approval of the Final Settlement, they largely copy the work of the Faneca Objectors.  In their Memorandum of Law in Support of Their Petition for an Award of Attorneys' Fees, they argue that, in fact, the work was their own and entitles them to a fee.  *See* Dkt. 7232.  But incredibly, ***over 50%*** of their filing copies – ***word for word*** – the Faneca Objectors' fee petition.  And much of what the Armstrong Objectors do not copy word for word, they nonetheless copy in substance.  Attached as Exhibit B is a document that highlights the portions of the Armstrong Objectors' fee petition that ***were directly lifted from the Faneca Objectors' fee petition***.

The Faneca Objectors take no position on whether the Armstrong Objectors, or any other objectors, are entitled to a fee award.  Courts routinely deny requests for payment of attorneys' fees from objectors whose arguments are duplicative or insubstantial.  *See, e.g.*, *McDonough v. Toys "R" Us, Inc.*, 80 F. Supp. 3d 626, 664 (E.D. Pa. 2015) (denying fee petition by objector who failed to show "what he did that was not duplicative of [another objector's] actions").[3]

---

[3] *See also Rodriguez v. Disner*, 688 F.3d 645, 658-59 (9th Cir. 2012) (affirming denial of fees to objectors who merely "filed briefs capitalizing on arguments already made by [other] [o]bjectors"); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 288-89 (7th Cir. 2002) (finding a "compelling ground" for denying fees to objectors whose points had been "vigorously" raised by other lawyers so that "the objectors added nothing"); *Rose v. Bank of Am. Corp.*, No. 5:11-cv-02390-EJD, 2015 WL 2379562, at *1-2 (N.D. Cal. May 18, 2015) (denying fees to objectors who made no unique arguments that influenced the court or the settlement); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 973-74 (E.D. Tex. 2000) (denying fees to objectors who "lodg[ed] generic, unhelpful protests," but awarding substantial fees to objectors who "conferred a substantial benefit on the class"); *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 962 F. Supp. 572, 593 n.50 (D.N.J. 1997) (refusing to award fees to objectors whose arguments "were not novel to [the] Court, as their objections were also raised by" other litigants), *vacated in part on other grounds*, 148 F.3d 283 (3d Cir. 1998); *cf. In re Cendant Corp. Sec. Litig.*, 404 F.3d

Objectors who raise no significant "novel factual or legal argument" and instead make "a number of similar arguments as raised in . . . other objections" typically are not entitled to a fee award. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 1365900, at *16 (N.D. Cal. Apr. 3, 2013) (denying objectors' fee request).  However, given the Armstrong Objectors' revisionist history and their attack on the Faneca Objectors' fee petition, it is important to set the record straight.

Months before the Armstrong Objectors filed their objection on September 3, 2014, the Faneca Objectors had identified the core deficiencies in the Settlement Agreement and had begun advocating to correct them.  *See* Dkt. 6533.  On May 5, 2014, the Faneca Objectors filed their motion to intervene, arguing that their interests were not adequately represented by the class representatives because "notwithstanding the widespread prevalence of CTE among NFL retirees, the settlement provided ***no compensation*** to players with CTE who die after preliminary approval of the settlement." Dkt. 6019-1 at 16-17.  The Faneca Objectors raised and expanded upon that argument in their opposition to preliminary approval of the Revised Settlement, filed on July 2, 2014, *see* Dkt. 6082 at 9-11, 20-26, and in their petition to appeal under Rule 23(f), Pet. to Appeal at 9-14, No. 14-8103 (3d Cir. filed July 21, 2014).

Prior to preliminary approval, the Faneca Objectors also complained that, while the "Revised Settlement does not cap total compensation for [Qualifying Diagnoses], . . . it retains the $75 million cap on the BAP Fund." Dkt. 6082 at 15.  And, noting that many former NFL players suffer financial hardship in retirement, the Faneca Objectors argued that the "appeal fee will discourage many retired players from challenging adverse claim determinations."  *Id.* at 33 n.43.  Thus, well before the Armstrong Objectors filed their objection, the Faneca Objectors had

---

173, 197 (3d Cir. 2005) (explaining in a different context that "duplicative" attorney work "will not be entitled to compensation").

identified and raised with the Court each of the issues for which the Armstrong Objectors now claim credit.[4]

Without acknowledging that the Faneca Objectors first presented these issues in their motion to intervene, their opposition to preliminary approval, and their Rule 23(f) petition to appeal, the Armstrong Objectors deride those efforts as "wasting the time and resources of the Court, the appellate court, and the Parties." Dkt. 7232 at 6. But they were not a waste. They sought to correct the deficiencies in the settlement – which were significantly addressed later – early on. As the Faneca Objectors explained, there was "a real human cost" to delay. Pet. to Appeal at 20, No. 14-8103 (3d Cir. filed July 21, 2014). Significantly – unlike the petitions for rehearing and certiorari filed by other objectors – *none of the Faneca Objectors' pre-fairness hearing filings delayed consideration or implementation of the settlement by a single day*. To the contrary, the Faneca Objectors repeatedly pushed for expedited proceedings, filing papers ahead of deadlines.[5] They recognized that the injured class members should not have to wait for the relief that a fair, adequate, and reasonable settlement would bring. Dkt. 7070-1 at 5, 11-12, 20.[6]

---

[4] Objector Miller, represented by Attorney John Pentz, also takes credit for the expanded Death with CTE benefit, saying that he "sought to extend the deadline for Death with CTE indefinitely." Dkt. 7161 at 8. But the Miller Objection simply piggy-backed on the Faneca Objectors' efforts, admittedly and expressly "adopt[ing] and incorporat[ing]" the objection filed by the Faneca Objectors. Dkt. 6213 at 1. Its arguments regarding CTE simply summarized the arguments more fully expressed in the Faneca Objectors' submissions. *Id.* at 2-5.

[5] When other objectors opposed Co-Lead Class Counsel's request for expedited briefing in the Third Circuit, the Faneca Objectors supported it. *Compare, e.g.*, Armstrong Appellants' Opposition to Class Plaintiffs-Appellees' Motion To Expedite Appeals, No. 15-2272 (3d Cir. filed June 1, 2015), *with* Faneca Objectors-Appellants' Notification of Consent to Class Plaintiffs-Appellees' Motion To Consolidate and To Expedite Appeals, No. 15-2304 (3d Cir. filed May 27, 2015).

[6] The Armstrong Objectors now characterize the delay occasioned by their strategy as a "benefit" to the class. *See* Dkt. 7232 at 13-15. During the period of that delay, they argue, class members were free to obtain a qualifying diagnosis from a doctor of their choosing, rather than a qualified

In addition to raising each issue with the Court **before** the Armstrong Objectors, the Faneca Objectors presented the issues with far more depth of analysis and evidentiary support than the Armstrong Objectors – or any other objector.   It was the Faneca Objectors who performed the substantial work of:

- Identifying credentialed experts and facilitating their participation in the litigation, *see* Dkts. 6201-16, 6232-1, 6455-1 to 6455-11;

- Researching the scientific literature for evidence supporting the objectors' arguments, and submitting that evidence to the Court, *see* Dkts. 6201-1 to 6201-15, 6455-12 to 6455-23;

- Seeking discovery and information from the settling parties to further inform class members' understanding of the settlement, *see, e.g.*, Dkts. 6169, 6252;

- Organizing and leading the objectors' efforts at the fairness hearing, *see* Dkt. 7070-1 at 14-15;

- Presenting fully developed legal argument that drew on the evidentiary record the Faneca Objectors had compiled, *see* Dkts. 6082, 6201, 6455;

- Seeking additional improvements through direct – and independent – negotiations with the NFL, *see* Dkt. 7070-1 at 18-19; and

- Organizing and leading the objectors' efforts on appeal before the Third Circuit, *see* Dkt. 7070-1 at 19-20.[7]

For example, where the Faneca Objectors submitted dozens of pages of argument on CTE rooted in extensive scientific evidence, *see* Dkt. 7070-1 at 8-17; *see also* Dkt. 6019-1 at 9-10, 14-18; Dkt. 6082 at 19-26; Dkt. 6201 at 21-33 & App'x B; Dkt. 6455 at 2-20, the Armstrong Objectors

---

physician under the Final Settlement.  *Id.*  Whether that truly is a benefit is highly questionable. Regardless, the delay stalled the distribution of relief to the class.

[7] The Armstrong Objectors say that they led the appellate proceedings in the Third Circuit.  *See* Dkt. 7232 at 8-9.  Not so.  It was the Faneca Objectors who undertook the labor-intensive process of compiling, preparing, and filing the sixteen-volume, 5,767-page joint appendix in the consolidated appeals.  *See* Joint Appendix, No. 15-2304 (3d Cir. filed Aug. 18, 2015).  And counsel for the Faneca Objectors was first and last to address the Third Circuit during oral argument, discussing the substantive unfairness of the settlement's treatment of CTE and the other issues raised in the Faneca Objectors' briefing.  *See* Revised Joint Proposal on Division of Argument Time, No. 15-2304 (3d Cir. filed Nov. 13, 2015); CA3 Oral Arg. Tr. 128:1-130:13.

addressed CTE in three pages without citing any new scientific authority.  *See* Dkt. 6353 at 7-9.[8]

The Faneca Objectors' discussion of the cap on the BAP Fund as well as the $1,000 appeal fee

was also extensive, citing relevant statistical evidence to support their arguments.  *See* Dkt. 6082

at 13, 15, 33 & n.43; Dkt. 6201 at 73-74, 76 & n.89; Dkt. 6455 at 22-23.   The Armstrong

Objectors, by contrast, discussed each issue in a cursory manner without evidentiary support.

Dkt. 6353 at 9-12.[9]   While the Faneca Objectors organized and led the argument at the fairness

hearing, the Armstrong objectors did not even appear to argue.  *Compare* Dkt. 6344 (appointing

Faneca Objectors' counsel to "coordinate the arguments of the objectors" at the fairness hearing),

*with* Dkt. 6428 (schedule of speakers at fairness hearing).

In the Third Circuit, the Armstrong Objectors completely piggy-backed on the Faneca

Objectors' work, citing evidence submitted by the Faneca Objectors no fewer than ***71 times***.

Armstrong CA3 Br. at 6-14, 18-19, 32, 34-36, No. 15-2272 (3d Cir. filed Sept. 14, 2015).  They

insist that the "justices" of the Third Circuit were "most interested" in their arguments, Dkt. 7232

at 9, but their arguments were retreads of the Faneca Objectors' arguments.   Moreover, the

Armstrong Objectors' efforts at meddling in the presentation of arguments to the Third Circuit

were soundly rejected by that Court.[10]

---

[8] Although the Armstrong Objectors referenced unspecified studies from 2010 and 2013, those
studies appear to be evidence that the Faneca Objectors had already cited in their earlier filings.
*Compare* Dkt. 6353 at 8, *with* Dkt. 6082 at 9-11, 22 (citing Ann McKee *et al.*, *The Spectrum of
Disease in Chronic Traumatic Encephalopathy*, 136 Brain: A Journal of Neurology 43 (2012),
and National Institute for Occupational Safety and Health, *Brain and Nervous System Disorders
Among NFL Players* (Jan. 2013)).

[9] Indeed, while the Armstrong Objectors sought to extend the term of the BAP, they never
requested removal of the cap.  *Compare* Dkt. 6353 at 9-10, *with* Dkt. 6463 at 108:19-23.

[10] The Armstrong Objectors filed a proposal regarding argument that the Faneca Objectors had
warned would be unacceptable to the Court and, indeed, was summarily rejected.  *See* Order, *In
re Nat'l Football League Players Concussion Injury Litig.*, No. 15-2304 (3d Cir. Oct. 30, 2015).

The claim by the attorneys representing the Armstrong Objectors – who simply filed under-developed versions of the issues that the Faneca Objectors had already identified, who submitted no evidence or expert testimony, who did not present argument at the fairness hearing, and who did not submit post-hearing supplemental briefs – that they were the "driving force behind improvements to the Revised Settlement" is absurd.  Dkt. 7232 at 23.  It was the work of the Faneca Objectors that turned the fairness hearing into a "truly adversarial" proceeding. *Dewey*, 909 F. Supp. 2d at 395.  And it was the work of the Faneca Objectors that secured over $100 million in additional benefit for the class.

## III.  This Court Can Make a "Reasonable Assessment" of the Settlement's Value and Award Fees Now

Objector Cleo Miller, represented by attorney John Pentz, argues that the value of the Final Settlement is "speculative" and urges the Court to defer consideration of objectors' fees until actual payments are drawn from the settlement fund.  Dkt. 7161 at 7-9.[11]  That is wrong on both the law and the facts.  Attorneys' fees are paid on the value of the benefit ***available*** for the class to claim, not on the value of benefit ***actually*** claimed.  *See, e.g.*, *Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 F. App'x 880 (3d Cir. 2016).  The value of the Settlement has been the subject of rigorous statistical analysis.  It was negotiated on the basis of "actuarial data and analyses performed by . . . economic experts" – separate actuarial teams retained by Class Counsel and the NFL – under the supervision of Special Master Perry Golkin.  *In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 364 (E.D. Pa. 2015).  The Faneca Objectors have submitted additional evidence specifically addressing the value of the improvements that resulted from their efforts.  *See* Floyd Decl. 3-12.  There is nothing

---

[11] Objector Curtis Anderson, represented by attorney George Cochran, has expressly adopted Objector Miller's argument on this point. *See* Dkt. 7237 at 3-4.

"speculative" about the Final Settlement's value, and it is clear that the benefits – including those resulting from the efforts of the Faneca Objectors – are available for the class to claim.  Nothing precludes the Court from awarding fees to Class Counsel or Objectors' Counsel at this juncture.

In awarding attorneys' fees under a common fund theory, the Court is not required to determine the value of the fund with absolute specificity.  Rather, it is enough to make only a "***reasonable*** assessment" of the fund's value.  *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995) (emphasis added); *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 334 (3d Cir. 1998).  In making that reasonable assessment, the Court must look to the value of the entitlement created by the efforts of the Faneca Objectors, not merely the amount of claims that are actually paid:  Class members' "right to share the harvest of the lawsuit . . . , ***whether or not they exercise it***, is a benefit in the fund created by the efforts of the class representatives and their counsel."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980) (emphasis added); *see also Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 282-83 (6th Cir. 2016).  Courts thus determine attorneys' fees based on the entire value that class members are entitled to claim, rather than the value of what they actually claim.  There are "a variety of reasons that settlement funds may remain even after an exhaustive claims process."  *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 178 (3d Cir. 2013).  "Class counsel" – or objectors' counsel – "should not be penalized [in their attorneys' fees] for these and other legitimate reasons unrelated to the quality of representation they provided."  *Id.*[12]

---

[12] By contrast, when courts have based attorneys' fees on the value of the benefit actually paid to the class, they have done so out of concern that class counsel may have – in an effort to secure a large attorneys' fee – consented to a settlement that appears generous on its face but is stingy in practice, either because the recovery for individual class members is too small to incentivize the filing of claims or because unnecessary procedural hurdles block meritorious claims.  *See*

Courts thus routinely award attorneys' fees in class litigation based upon the value of the benefit made available to the class through the efforts of counsel.  In *Boeing*, the Supreme Court found no abuse of discretion in the district court's award of fees based on the size of the entire fund rather than that portion paid on approved claims.  444 U.S. at 477-78.  The Third Circuit and other courts have followed *Boeing*'s lead, calculating awards of attorneys' fees based on the entire value of the settlement to which class members are ***entitled***, even if some portion of the fund goes unclaimed.  The settlement in *Landsman & Funk*, for example, required unclaimed settlement funds to be returned to the defendant.  639 F. App'x at 884.  The Third Circuit concluded that the district court, in awarding attorneys' fees, "properly relied on the entire fund" – rather than just that portion of the fund paid out to class members – "as the appropriate benchmark for assessing the size of the fund created and conducting a lodestar check."  *Id.*[13]

More recently, in *Gascho*, the Sixth Circuit explicitly rejected the argument that the "benefit [to the class] may be only the actual payments to class members."  822 F.3d at 282. Instead, *Gascho* concluded that "there is value in providing a class member the ability to make a claim, whether she takes advantage of it or not."  *Id.* at 288; *see also id.* ("[H]aving the ability to make a claim has value.").  It thus affirmed the district court's calculation of attorneys' fees based on a settlement valuation that exceeded the amounts actually paid to class members.  *Id.* at

---

*Gascho*, 822 F.3d at 287-88; *Baby Prods.*, 708 F.3d at 178.  Those concerns are not present here. To the contrary, potential awards for individual class members are large.  And there was no unholy bargain between the Faneca Objectors and the NFL.  Rather, the Faneca Objectors fought hard to ***eliminate*** procedural hurdles that might preclude class members from recovering.  *See, e.g.*, Dkt. 6082 at 32-35; Dkt. 6201 at 74-79.  And they were successful in that effort.  *See* Dkt. 7070-1 at 27-28, 38-39.

[13] It is true that *Landsman & Funk* involved a fixed settlement fund, while the MAF in this Settlement makes payments on a "claims-made" basis.  That difference, however, is irrelevant. "There is no meaningful distinction between a fund with a reversion provision and a defendant-paid-claims process."  *Gascho*, 822 F.3d at 286.  "In both cases, unclaimed funds wind up with the defendant."  *Id.*; *see also Zink v. First Niagara Bank, N.A.*, No. 13-cv-01076, 2016 WL 7473278, at *7-8 (W.D.N.Y. Dec. 29, 2016).

282-88.  Likewise, the Second Circuit has also held that "[a]n allocation of fees by percentage should therefore be awarded on the basis of the **total funds made available**, whether claimed or not."  *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (emphasis added); *see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295, 1297-98 (11th Cir. 1999) ("[N]o case has held that a district court must consider only the actual payout in determining attorneys' fees."); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (per curiam) (holding that "district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund" (footnote omitted)); *Newberg on Class Actions* §15:70 (5th ed.) (noting "many circuits have approved" awarding attorneys' fees as a "percentage of the **available** funds" and finding that approach "more defensible").[14]

Thus, in determining whether the Faneca Objectors' attorneys' fees request is reasonable, the Court is not required to "await the actual filing, evaluation and payment of claims," as Objector Miller argues.  Dkt. 7161 at 7.  Miller attacks the assumption that all class members

---

[14] *See also Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (rejecting argument that attorneys' fee was unreasonable because objectors to fee award improperly "focus[ed] on the amount **claimed** rather than the amount **allocated**"); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("The district court did not abuse its discretion by calculating attorneys' fees as a percentage of the total fund."); *Zink*, 2016 WL 7473278, at *6-8 (awarding fees on basis of defendant's agreement to pay claims up to an aggregate of $2.2 million, regardless of how much the defendant actually pays); *In re Regions Morgan Keegan Sec.*, No. 2:07-cv-2830, 2013 WL 12110279, at *8 (W.D. Tenn. Aug. 6, 2013) (approving attorneys' fees of 30% of total fund); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 59 (E.D.N.Y. 2010) (noting "the value of legal service rendered in the creation of a settlement fund [is not] diminished by the failure of beneficiaries to cash in, regardless of what happens to the surplus"); *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 815 (E.D. Wis. 2009) ("The court finds that an award of attorneys' fees is appropriately based upon the total common fund and not on the amount claimed against it.  The $2.1 million settlement amount was available to the entire class, regardless of the fact that a small number of class members actually filed claims."); *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 476 (E.D. Cal. 2009) (finding reasonable attorneys' fee award based on "the proposed total settlement amount").

eligible for the expanded Death with CTE award "will file a claim." *Id.* He also questions whether all eligible class members will register for the BAP, and raises similar arguments regarding NFL Europe and the financial hardship waiver. *Id.* at 8. Those concerns are misplaced. No matter how many class members ultimately take advantage of these benefits, their entitlement to do so "is a benefit in the fund created by the efforts of the [Faneca Objectors] and their counsel." *Boeing*, 444 U.S. at 480; *see also Gascho*, 822 F.3d at 282-88.[15]

Objector Miller identifies no authority to the contrary. He invokes *In re Prudential Insurance Co. of America Sales Practice Litigation*, 962 F. Supp. 572 (D.N.J. 1997), but that case was simply a straightforward application of the requirement that the court "reasonabl[y] assess[ ]" the value of the fund. The court in *Prudential* was unable to make that reasonable assessment because the "value of the proposed settlement [wa]s within a range of $1.2-$2.0 billion" – a variance of $800 million. *Id.* at 582. Given the breadth of that range, the court concluded that the "Settlement Agreement simply does not lend itself to a reasonable valuation at this time." *Id.* at 583. By contrast, the value of the Settlement here has been estimated with consistency and precision. Actuaries retained by Class Counsel determined that the Settlement – without the Faneca Objectors' improvements – could be funded by the $760 million that the NFL initially agreed to pay. Dkt. 6167 at 4. The NFL's actuaries reached the same conclusion. Dkt.

---

[15] Regardless, the Faneca Objectors have good reason to believe participation in the Final Settlement will be high. Where "class members are being offered substantial awards, . . . there is, in the main, a strong incentive for class members to fill out and submit claim forms." *Alexander v. Fedex Ground Package Sys., Inc.*, No. 05-cv-00038, 2016 WL 1427358, at *5 (N.D. Cal. Apr. 12, 2016). The potentially large monetary awards under the Settlement – especially for those eligible to receive the Death with CTE benefit, given the 96% prevalence of CTE among retired NFL players – thus create strong incentives for class members to register for the Settlement and to submit claims. As Class Counsel has pointed out, large numbers of class members have requested additional information about the Settlement and a great many have already registered. *See* Dkt. 7151-1 at 7-8, 32 n.24.

6168 at 9-10.  Now, a third valuation team has determined that the Settlement is worth $870.4 million with the Faneca Objectors' improvements.  *See* Floyd Decl. 3.[16]

The consistency of those estimates provides ample basis for this Court to reasonably assess the Settlement's value.  The valuation of the Final Settlement in this case is thus nothing like the wide-ranging estimate of value at issue in *Prudential*.  Indeed, the court in *Prudential* was clear that "it is the ***unique circumstances*** of ***this*** settlement that preclude a reasonable valuation."  962 F. Supp. at 583 n.28 (emphasis added).  The court expressly disclaimed holding that "a reasonable value would be indeterminable in every 'future fund' case, including any subsequent case which is settled under a structure similar to that existing here."  *Id.*  In short, it was the inability to reasonably value the settlement at all that drove the court's decision in *Prudential*.  Those concerns are not present here.  *See* pp. 2-4, *supra*.

Aside from questioning the rate of class members' participation in the Settlement, Objector Miller does not seriously dispute the Faneca Objectors' valuation of the improvements brought about by their efforts.[17]  The Faneca Objectors' valuation was rooted in the thorough and comprehensive actuarial reports prepared for both Class Counsel and the NFL, scientific studies and other analysis, Class Counsel's own statements regarding the value of the Settlement, and this Court's findings regarding the value of the Final Settlement in its Order granting final approval.  *See* Dkt. 7070-1 at 20-28 & nn.24-39.  Were any additional evidence necessary, a

---

[16] The valuation in the Floyd Declaration does not include the $10-million Education Fund.

[17] Objector Miller appears to question whether 96% of the 111 players eligible for the expanded Death with CTE benefit will actually have CTE.  Dkt. 7161 at 7.  But he completely ignores the most recent publicly available data on CTE, which shows that 96% of former NFL football players tested for CTE by post-mortem autopsy were found to have the condition.  *See* Dkt. 7070-1 at 26 & n.34.  He does not explain why that study is flawed or inaccurate, and he offers no evidence of his own.

third valuation expert has now validated the Faneca Objectors' estimate of the value they added to the Settlement.  *See* Floyd Decl. 5-12.

Ultimately, this Court need only make a reasonable assessment of the value that the Faneca Objectors' efforts added to the settlement.  It can do that here.  The settling parties' own estimates of the settlement's value combined with the analysis in the Floyd Declaration amply support a valuation in the range of $102.5 million to $120.4 million for the benefit the Faneca Objectors brought to the class through their advocacy.  The Court should grant their request for attorneys' fees based on that amount.[18]

## **CONCLUSION**

For those reasons, the Court should overrule the Miller and Anderson Objections to the Faneca Objectors' Petition for an Award of Attorneys' Fees and Expenses and should grant the Faneca Objectors' requested attorneys' fees and expenses.[19]

---

[18] As the Faneca Objectors previously explained, the additional value conferred by their efforts represented a 13.5% increase over the $760-million valuation of the Revised Settlement.  Dkt. 7070-1 at 41.  Co-Lead Class Counsel claim a class benefit of over $1.1 billion.  Dkt. 7151-1 at 34.  Assuming that valuation is correct, the Faneca Objectors' improvements still increased the value of the settlement by between 9.3% and 10.9%.  Co-Lead Class Counsel's $950-million MAF valuation, however, includes investment earnings and inflationary adjustments that accrue over the lifetime of the settlement.  Dkt. 6167 at 6, 28-29, 35-36 & tbls. 2-2, 6-4.  The Faneca Objectors' valuation does not, because attorneys' fees are paid now, not over the term of the settlement.  Co-Lead Class Counsel's valuation also includes $12 million in administration costs that appear to be already included in the MAF valuation.  *See, e.g.*, Dkt. 6167 at 37 ("administration costs" were "included in the cash flow modeling").  If those amounts (along with attorneys' fees, which would be shared between Co-Lead Class Counsel and the Faneca Objectors) are excluded from Co-Lead Class Counsel's valuation, then the Faneca Objectors' contributions increased the value of the settlement by between 13.5% and 15.8%.

[19] With this filing, the Faneca Objectors also submit a Revised Summary of Expenses table.  The Summary of Expenses filed with their fee petition contained inadvertent errors that resulted in an incorrect accounting of expenses.  *See* Dkt. 7070-2 Ex. 7.  Attached as Exhibit C is a Revised Summary of Expenses table that accurately reports the expenses for which reimbursement is sought.

Dated:  March 27, 2017

Respectfully Submitted,

_/s/ Steven F. Molo_

William T. Hangley
Michele D. Hangley
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square
18th & Cherry Streets
27th Floor
Philadelphia, PA  19103
(215) 496-7001 (telephone)
(215) 568-0300 (facsimile)
whangley@hangley.com
mdh@hangley.com

Linda S. Mullenix
2305 Barton Creek Blvd., Unit 2
Austin, TX  78735
(512) 263-9330 (telephone)
lmullenix@hotmail.com

Steven F. Molo
Thomas J. Wiegand
MOLOLAMKEN LLP
430 Park Ave.
New York, NY  10022
(212) 607-8160 (telephone)
(212) 607-8161 (facsimile)
smolo@mololamken.com
twiegand@mololamken.com

Eric R. Nitz
MOLOLAMKEN LLP
600 New Hampshire Ave., NW
Washington, DC  20037
(202) 556-2000 (telephone)
(202) 556-2001 (facsimile)
enitz@mololamken.com

*Counsel for the Faneca Objectors*

17

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 27, 2017, I caused the foregoing Faneca Objectors'
Preliminary Response in Support of Their Petition for an Award of Attorneys' Fees and
Expenses to be filed with the United States District Court for the Eastern District of
Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel
and parties.

*/s/ Steven F. Molo*