UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIG., | 2:12-md-02323-AB |

### CURTIS L. ANDERSON'S SECOND SUPPLEMENTAL OBJECTION TO CLASS COUNSEL'S FEE PETITION

In the interest of brevity, class member Curtis L. Anderson ("Anderson") hereby supplements his original (DE 6248) and subsequent (DE 7237) objections to the settlement's fee provision with the following points germane to class counsels' actual fee petition (DE 7151):

1. Class Counsel's projected $950 million in future monetary awards is based on unrealistic assumptions not borne out by actual class member behavior and experience. Since most NFL players believed they would qualify for compensatory damages related to CTE, the vast majority who filed suit are now left without any recovery. Based on Class Counsel's own optimistic assumptions, the maximum potential payout will fall to $425 million if 50% of the class registers by August 2017 (only 30% are currently registered). "[A]warding attorneys' fees based on the entire settlement amount rather than individual distributions creates a potential conflict of interest between absent class members and their counsel." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 178 (3d Cir. 2013). Therefore, this Court's analysis of Plaintiffs' fee petition should follow that recommended for 'claims made'—not 'constructive fund'—settlements. Specifically, the Court should wait until at least August 7, 2017 before awarding any fees. Only when total

registrations are tallied will the Court be able to determine whether the settlement has proved attractive enough to justify Class Counsel's fee request.

2. Even if the percentage-of-fund approach can be justified, the award should be based on the potential benefits actually obtained through Class Counsel's efforts—not by this Court's prodding and/or the Special Master's leadership. At the conclusion of the first round of settlement negotiations, Class Counsel agreed to release all class claims for a total potential monetary recovery of $675 million dollars. In response to this Court's genuine concerns about the settlement's sufficiency, the parties proceeded to iron out enhancements under the Special Master's supervision. Now, Class Counsel seeks to benefit from these enhancements in applying the percentage approach to their fee request. Such a position violates the overriding principle that Plaintiffs' fee award must reasonably relate to the actual benefits achieved by Class Counsel.

3. For several reasons, a lodestar crosscheck will also confirm the fee request is unreasonable. First, the average hourly rate of $784 suggests that most of the work was accomplished by expensive partners instead of economical associates. Second, a large portion of their time was devoted to supplemental negotiations prompted by this Court due to Class Counsel's failure to secure adequate protection for the class in the first instance. Third, any multiplier over Class Counsel's lodestar requires a concrete showing that exceptional benefits were obtained for the class (as opposed to minimum standards of reasonableness within the Court's discretion). See *Strong v. BellSouth Telecomm., Inc.*, 137 F.3d 844, 851–52 (5th Cir. 1998). Plaintiffs' inability to secure liability for CTE claimants—the original impetus for seeking class protection—was the litigation's major disappointment.

4. A more reasonable *average* hourly rate for this case would be $600, which would result in a lodestar of approximately $30 million. This means the requested fee of $107

million represents a multiplier of 3.56, not 2.56—clearly excessive for this case. At the time the fee was negotiated, the $112.5 million award represented a multiplier of at least 7 (since the lodestar back then was just $15 million). Moreover, all risk of non-payment ceased when the first settlement was announced in August 2013. Thus, any multiplier should be limited to work done before the initial settlement was announced.

5. The Court should void all individual fee contracts where the attorney representing a class member is also receiving a portion of the common benefit attorney's fees. This form of double-dipping—where the same attorney receives up to 40% of an individual award—is inherently unreasonable given the high class hourly rates already requested and the possibility of a multiplier to the attorney's lodestar.

6. For several reasons, Class Counsel's request to set aside 5% of each monetary award up front should be denied. First, the request is premature because the true administrative costs are not yet known. Second, it contradicts the justification for their $112.5 million fee request. Third, it violates the Settlement's requirement to describe "the proposed amount" and "how the money will be used". No dollar amount is requested and little justification or disclosure of the projected facilitation costs is given. Specifically, they offer no projections of the costs, no expert reports, nothing empirical whatsoever to support the imposition of what amounts to a $50 million tax. Fourth, Class Counsel's attempt to collect all of the money purportedly necessary to fund the common benefit costs for the Settlement's 65-year life expectancy places their own pecuniary self-interest over the class' need for adequate recovery. Fifth, the most disabled and needy Class Members who seek a recovery early in the claims process will be penalized by front-loading the maximum set-aside. Sixth, allowing the maximum levy now will create a slush fund that will encourage bloated billing without adequate controls. Finally, the set aside will interfere with class members' right to retain independent legal counsel of their choice at the appropriate time.

Far better to approve a lower set aside up front, then permit counsel to petition to recover shortfalls down the road once actual claims are paid.

7.      MoloLamken's request for a $20 million fee award—based on speculative projections of maximum possible benefits—should be denied as premature. While they value their contribution in extending the CTE deadline at $44.8 million, MoloLamken assumes 96% of the 111 players who died between the original deadline and the amended one will file a claim. They also assume everyone will establish a Qualifying Diagnosis. The obvious problem with these assumptions is that any quantification of the benefits produced by the enhancement must await the actual filing, evaluation, and payment of claims. Neither can MoloLamken take sole credit for this enhancement. Most of the other objector/appellants were equally focused on this defect, and will presumably apply for fees at the appropriate time.

Date:   March 27, 2017                          Respectfully submitted,
                                                Curtis L. Anderson,
                                                By his attorney,

                                                 */s/ George W. Cochran*
                                                George W. Cochran (Ohio 92855)
                                                1385 Russell Drive
                                                Streetsboro, Ohio 44241
                                                Tel:    (330) 607-2187
                                                Fax:    (330) 230-6136
                                                Email: lawchrist@gmail.com

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that the foregoing document was filed via the ECF filing system on March 27, 2017, and that as a result electronic notice of the filing was served upon all attorneys of record.

                                                */s/ George W. Cochran*
                                                   George W. Cochran