UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>Hon. Anita B. Brody |
| Kevin Turner and Shawn Wooden,<br>*on behalf of themselves and*<br>*others similarly situated*,<br><br>      Plaintiffs,<br><br>                 v.<br><br>National Football League and<br>NFL Properties LLC,<br>successor-in-interest to<br>NFL Properties, Inc.,<br><br>      Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

**RESPONSE OF CLASS COUNSEL THE LOCKS LAW FIRM
TO OPPOSITIONS BY OBJECTORS TO
<u>CO-LEAD COUNSEL'S PETITION FOR ATTORNEY'S FEES</u>**

The Locks Law Firm respectfully submits this Response to address arguments by objectors who contend that class counsel may not simultaneously receive common benefit fees and fees on individual contingency fee contracts.[1] This Response addresses the facts and jurisprudence that show that such individual contingency fee contacts are enforceable, including contracts with class counsel who will also receive common benefit fees.

---

[1] Objectors who raised these arguments are Cleo Miller (document no. 7161) and Steven Anthony Smith (document n. 7363).

In response to the Petition for Attorney's Fees filed by Co-lead Counsel (documents no. 7151) (hereinafter "Fee Petition"), the objectors raised the issue of whether individual attorneys made representations to their clients that might justify revisiting or adjusting the terms of the fees provided in their individual contingency fee contracts. The objectors invoked the Motion filed by the Estate of Kevin Turner in a fee dispute with Podhurst Orseck, P.A. (document no. 7029).[2] (hereinafter "Turner Motion"). As originally filed, that Turner Motion suggested that contracts between class counsel and their individual clients are never enforceable. The Turner Estate, however, later disclaimed that argument in its Reply Brief (document no. 7114), and the objectors here make no attempt to develop the argument independently. This is not surprising, because controlling authority and established practice in other mass tort MDL proceedings foreclose any such attempt to abrogate reasonable contingency fee contracts, including those held by class counsel.

The objectors' references to the Turner Motion should be understood in the larger context of this proceeding, the jurisprudence of mass torts, and the established practice in mass tort MDLs. When viewed in that context, the objector's suggestion that individual contingency fee contracts may be abrogated categorically is invalid and contrary to the law.

---

[2] *See* Estate of Kevin Turner's Motion to Resolve Attorney Fee Dispute and to Appear as Counsel for Paul Raymond Turner, the Personal Representative of the Estate of Kevin Turner (document no. 7029) and Turner Reply (document no. 7114).

## ARGUMENT

I. **The Turner Estate Disclaimed Any Categorical Argument about the Enforceability of Individual Contingency Fee Contracts, and the Objectors Have Adopted Turner's Position and Raised Arguments Only about Their Individual Contracts.**

In their objections, several former players challenge the enforceability of individual contracts by proxy and invoke the Turner Motion which the Estate of Kevin Turner filed in an attempt to set aside the contract with Podhurst Orseck. *See, e. g.,* Cleo Miller, *Opposition to Co-Lead Class Counsel's Petition for an Award of Attorneys' Fees and Adoption of a Set-Aside of Each Monetary Award, and Opposition to Lamkenmolo's [sic] Fee Petition* (document no. 7161) (hereinafter "Miller Objection"), at 5–6; Steven Anthony Smith, *Notice of Joinder in Estate of Kevin Turner's Motion to Resolve Attorney Fee Dispute and Appearance as Counsel for Steven Anthony Smith* (document no. 7363) (hereinafter "Smith Notice of Joinder"), at 1 & *passim*.

As originally submitted, the Turner Motion appeared to levy a categorical challenge to individual contingency fee contracts and suggested that all contracts between class counsel and their clients became unenforceable once a class was certified in this MDL proceeding. *See* Turner Motion at 1–2 ("[The] contingency fee agreement that Kevin Turner and Podhurst entered into . . . was superseded by the certification of a national class of which Mr. Turner was a member"); *id.* at 4 ("[The contingency fee agreement] had become inoperative as a matter of law when Podhurst undertook to represent a national class."). For this reason, the Locks Law Firm filed a brief in response to the Turner Motion on January 19, 2017 (document no. 7085) in which the

firm explained that any categorical attempt to abrogate the individual contingency fee contracts was legally and factually incorrect. *See* Locks Response at 5-10.[3]

In response, the Turner Estate filed a Reply that expressly disclaimed any such categorical arguments. It acknowledged the status of the Locks Law Firm as class counsel in this case, explained that the Turner Estate "takes no position with respect to the fees that the Locks Law Firm may receive in accordance with the terms of the Settlement Agreement", and clarified that "any fee-related or other issues between the Locks Firm and its clients are not within the purview of [its] Motion." *Estate of Kevin Turner's Reply in Further Support of its Motion to Resolve Attorney Fee Dispute* (document no. 7114) (hereinafter "Turner Reply") at 17. *See also id.* at 2 ("[T]he Turner Estate is not asserting universally that all contingency fee agreements between all class members and their respective counsel involved in this action are unenforceable."). Rather, the Turner Reply Brief made clear that the Turner Estate challenged only "the particular circumstances surrounding and terms of the 2012 Retainer Agreements [between Turner and Podhurst] relative to this class action". *Id.*

The objectors who have invoked the Turner Motion in their response to the Fee Petition have expressly adopted the Turner Reply. *See* Smith Notice of Joinder at 1 ("Class plaintiff Steven Anthony Smith (Steven Smith) hereby joins, adopts, and incorporates by reference, in its entirety, Estate of Kevin Turner's motion to resolve attorney fee dispute ("Motion") (ECF 7029) and Estate of Kevin Turner's reply in further support of the Motion (ECF 7114)"). Or, they have framed their arguments around particular contingency fee contracts they believe are excessive and unwarranted and use

---

[3] Document no. 7085.

-4-

the Turner Motion to bolster those arguments. *See* Miller Objection at 5–6 (objecting to individual retainers that request a "40% fee agreement" in which any "work related solely to individual cases" was "*de minimis*").

There is, however, no argument before this Court that firms that have served in two capacities — performing extensive work on behalf of the class in the role of class counsel while also laboring thousands of hours to advocate for their individual clients pursuant to retainer agreements — are in any way disqualified from receiving reasonable compensation for both types of work. Further, arguments over individual contingency fee contracts are not appropriate for resolution in the present proceeding, since they would require this Court to conduct discovery and fact-finding focused on the specific negotiations between each objecting player and his respective lawyers. That is not the exercise in which this Court is presently engaged.

In its Response to the Turner Motion, the Locks Law Firm addressed the apparent suggestion that the certification of a class automatically results in the invalidation of all contingency fee contracts between class counsel and their individual clients. That categorical argument is at odds with the on-the-ground reality in complex MDL proceedings. It is also incompatible with the Rules Enabling Act and statements by the Supreme Court about the limitations that the Enabling Act places on Rule 23. It is contradicted by Third Circuit precedent on the supervisory powers of district courts in reviewing attorney's fees. Locks Response at 9-14. Because the Turner Reply disclaims any reliance on that categorical argument, and because the objectors who raise the issue in response to class counsel's Fee Petition have adopted the Turner Motion and Reply in full, this Court does not have before it any across-the-board challenge to the

enforceability of individual contingency fee contracts. Even if there were such a challenge, and there is not, the jurisprudence on the issue and the practical realties in mass torts foreclose any such categorical challenge.

## II. A Categorical Argument Against the Enforceability of Individual Contingency Fee Contracts Ignores the History and Reality of Mass Torts and this Proceeding and Would Upend the Allocation and Award of <u>Common Benefit Fees.</u>

In its January 19 Response to the Turner Motion, the Locks Law Firm set forth a detailed description of the type of work that the firm has performed in representing well over a thousand individual clients while also serving as class counsel in these proceedings. The Locks Response described the downward adjustments to its rates in individual contingency fee contracts it negotiated to ensure that clients were paying a reasonable fee for the firm's individual representation. That was separate (and always has been separate) from the compensation the firm would receive through common benefit fees. The Locks Law Firm explained that any categorical challenge to the enforceability of individual contingency fee contracts would disregard the extensive work the firm has performed in highly engaged individual representation of its clients, while it was also advocated and negotiated on behalf of the class in this complex and difficult proceeding.

The Affidavit of Gene Locks, attached as Exhibit A, provides further context for that on-the-ground reality. Gene Locks is the founder of the Locks Law Firm and has been one of the leaders in the mass tort bar for more than forty years. He has been involved as co-lead class counsel, class counsel, liaison counsel, and/or lead negotiator on many of the largest mass tort actions of the last several decades. Locks Aff. at ¶¶ 2-3. Mr. Locks sets forth a list of the mass tort proceedings in which he has been involved

since the year 2000 and explains that in all those cases "…there has never been any personal injury MDL which resulted in a class action or global settlement wherein the individual contracts for the personal injury victims were voided." Locks Aff. ¶¶ 4-6.

That consistent record is reflected in many mass tort MDL proceedings in which the district courts issued orders that made clear the enforceable nature of individual contingency fee contracts in parallel with a firm's simultaneous right to a common benefit fee award based on common benefit work performed. Following is a list of illustrative cases (in no particular order) in which the common benefit order either expressly noted that individual contracts remain enforceable or discussed the source and allocation of the common benefit funds in terms that made clear that individual contracts remained in effect.

- In re <u>Ortho Evra Products Liability Litigation</u>, 1:06-CV-40000 (N.D. Ohio) (Katz, J.): In an order dated August 28, 2006, the district court established a common benefit fund "for the fair and equitable sharing among plaintiffs of the cost of services performed and expenses incurred by attorneys acting for MDL administration and common benefit of all plaintiffs in this complex litigation." *Case Management Order No. 9 Common Benefit Order (Establishing Common Benefit Fund to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for MDL Administration and Otherwise for Plaintiffs' General Benefit)*, at 1. The fund was underwritten through assessments on the gross monetary recovery obtained by each claimant. *See id.* at 2–3. Judge Katz expressly provided that "Nothing in this Order shall be deemed to modify, alter, or change the terms of <u>any fee contracts</u> between any plaintiffs' counsel and their individual clients." *Id.* at 4. (Emphasis added)

- In re <u>Serzone Products Liability Litigation</u>, 2:02-MD-01477 (S.D.W.V.) (Goodwin, J.): In an order dated February 11, 2003, the district court established a common benefit fund "to provide for reimbursement of costs and payment of attorneys' fees to the [Plaintiffs Steering Committee] and other attorneys who have been authorized by the PSC . . . to perform work for the common benefit of plaintiffs." *Pretrial Order #5*, at 2. That fund was underwritten by a 9% assessment on the gross recovery obtained by claimants. Seven percent of that assessment "shall be deemed fees to be subtracted from the attorneys' fees portions of individual fee contracts." *Id.* at 2. In a subsequent order dated May 16, 2007, the district court ruled on a request by class counsel for a $20,000,000

award of common benefit costs and fees. The court awarded $12,664,000 in costs and fees. In the process of explaining its ruling, the court focused (among many other factors) on the distinction between "hours . . . devoted to the claims of individual plaintiffs" that would instead be compensated through the individual fee contracts. In re *Serzone Prods. Liab. Litig.*, 2007 WL 7701901, at *2 (W.D.W.V., May 16, 2007).

- In re *Bextra and Celebrex Marketing, Sales Practices and Products Liability Litigation*, M:05-CV-01699 (N.D. Cal.) (Breyer, J.): In an order dated February 27, 2006, the district court established a common-benefit expense fund. *See Pretrial Order No. 8, Common Benefit Order (Establishing Common Benefit Fund to Compensate and Reimburse Attorneys for Services Performed and Expenses Incurred for MDL Administration and Otherwise for Plaintiffs' General Benefit* (Feb. 27, 2006), at 2. That fund provided for the payment of "attorneys who provide services or incur expenses for the joint and common benefit of plaintiffs in addition to their own client or clients." *Id.* at 6. It was funded through an assessment on the gross recovery that individual claimants secured, part of which was "deemed fees to be subtracted from the attorneys' fees portions of individual fee contracts." *Id.* at 4.

- In re *Baycol Products Liability Litgiation*, MDL No. 1431 (D. Minn.) (Davis, J.): In an order dated June 14, 2002, the district court established a procedure for creating a common benefit fund "to secure an equitable reserve for a future allocation of counsel fees and costs for common benefit work." In re *Baycol Products Liability Litigation*, 2002 WL 32155266 (D. Minn., June 14, 2002). The ordered required a 6% set-aside from the gross recovery of all claimants and provided that "Four percent (4%) shall be deemed fees to be subtracted from the attorneys' fees portions of individual fee contracts, and two percent (2%) shall be deemed costs to be subtracted from the client portions of individual fee contracts." *Id.* at *4.

- In re *Propulsid Products Liability Litigation*, 2:00-MD-01355 (E.D. LA) (Fallon, J.): In an order dated December 27, 2001, the district court established a common benefit fund to compensate the Plaintiffs' Steering Committee and other counsel who "provide services or incur expenses for the joint and common benefit of plaintiffs in addition to their own client or clients." *Pre Trial Order No. 16 (Establishing Plaintiffs' Litigation Expense Fund to Compensate and Reimbuse Attorneys for Services Performed and Expenses Incurred for Common Benefit)*, at 4–5. That order made clear that the fund would not "be used to pay for services and expenses primarily related to a particular case, such as the deposition of a treating physician" even if "such activity results in some incidental and consequential benefit to other plaintiffs." *Id.* at 5. Such individual work would instead be encompassed within the fees provided in individual retainer agreements.

- In re <u>*Actos (Pioglitazone) Products Liability Litigation*, 6:11-MD-02299 (W.D. LA) (Doherty, K.)</u>: In an order dated July 10, 2012, the district court established a common benefit fund for the payment of attorneys' fees and cost reimbursement [for] time expended, costs incurred, and activity . . . for the common benefit." *Case Management Order: PSC's Management of Timekeeping, Cost Reimbursement, and Related Common Benefit Issues*, at 2. The court expressly provided that "no time spent on developing or processing individual issues in any case for an individual client (claimant) will be considered or should be submitted" through the common benefit process but rather (by necessary implication) will be enforced through individual retainer agreements. Three years later the court issued a holdback order dated September 1, 2015 directing defendants to set aside $25,000,000 or 8.6% of the total anticipated recovery to underwrite the common benefit fund. *Case Management Order: Holdback Order*, at 5–6.

- In re <u>*Phenylpropanolamine (PPA) Products Liability Litigation*, 2:01-MD-01407 (W.D. WA) (Rothstein, J.)</u>: In an order dated August 2, 2004, the district court clarified and expanded upon an earlier order in which it had established a common benefit fund through assessments of gross recoveries by claimants for compensating "activities and their related costs that substantially benefited and advanced the plaintiffs' generic claims in this litigation toward a favorable resolution for all or for a substantial, identifiable group of plaintiffs in cases consolidated in these MDL proceeds, including activities and their related costs in connection with the settlement of all pending claims as against one or more defendants." In re *Phenylpropanolamine (PPA) Products Liability Litigation*, 2004 WL 1784348, at *1 (W.D. WA, Aug 2. 2004). The district court explained that "time spent on individual cases (i.e. discovery, gathering medical records, client communications, settlement efforts) will not be recognized as compensable" through common benefit fees but rather (by clear implication) through individual fee arrangements. *Id.* at *2.

Moreover, the argument by the objectors is contradicted by the single largest mass tort settlement in this Court: namely, *In re Diet Drug Litigation*. In that case, contingency fee contracts were never challenged unless there were issues of fraud and dishonesty. Locks Aff. at ¶¶ 4 and 14. Rather, they were upheld at all times, whether or not the contracts were with class counsel, co-lead counsel, or other attorneys who applied for and were granted an award of common benefit fees. *Id.* There were multiple orders approving the settlement and none ever voiding a contingency fee contract. Locks Aff. at ¶ 14.

Simply put, the wholesale abrogation of individual contingency fee contracts does not happen in mass tort MDLs. The reasons for the long-established practice of respecting individual contracts in parallel with common benefit fees are clear and compelling. Abrogation would negatively impact both the common benefit fee allocation process and the interests of claimants in securing speedy and effective recovery.

First, if district courts were to abrogate individual contracts, the allocation of common benefit fees among class counsel would have to be driven primarily by the number of individual clients each lawyer represents and the size of their recovery. In this proceeding, the number of clients represented by participating counsel and the value of their claims already play a necessary role in the allocation of common benefit fees when the representation of those clients has a substantial impact on the viability of the settlement. That has been particularly true in this case. *See* Locks Response at 6-9. If this Court were to entertain an argument that class counsel may never maintain contingency fee contracts with any of their individual clients, then the size of class counsel's client base and the value of their claims would become the principal driver of common benefit fees, not just a significant factor. If individual contracts were deemed unenforceable, well-established principles of *quantum meruit* and basic fairness would require that the risk undertaken by class counsel and the years spent representing, counseling, and advocating for their individual clients — both before the Settlement was reached and in securing compensation under the Settlement matrix — would have to be compensated fully from the common benefit fees. *Id.*

Second, if this Court were to accept the objectors' categorical arguments, then the Court would have to delay an award of common benefit fees until all or most of the

-10-

monetary awards are paid to former players under the Settlement Agreement. An abrogation of individual contingency fee contracts would mean that common benefit fees must cover <u>all work done by class counsel</u> in conjunction with these proceedings, not just work performed on behalf of the class in furtherance of the Settlement and MDL. Locks Response at 8. It would have to cover work performed by class counsel for individual clients to secure monetary compensation under the Settlement matrix. *Id.* The Court could not allocate those fees without knowing which attorneys have secured compensation for their clients and in what amounts. No former NFL player has yet received payment of a monetary award under the Settlement, and substantial work remains to be done by firms representing individual clients to prepare and submit claims and advocate for full relief under the matrix.[4]

Third, several objectors portray individual contracts as some kind of unfair *per se* double recovery, and thus subject to abrogation. If the individual contingency fee contracts between class counsel and their clients were invalidated wholesale on that spurious basis, some former players would be required to pay fees for their individual representation, while others would not. There are many attorneys who have never played

---

[4] In this connection, the Miller Objection asserts that former players seeking compensation under the Settlement only require "paralegal work" that "can be accomplished for a few thousands dollars of clerical worker time." Miller Objection at 5 & n.2. This betrays a complete lack of understanding of the tasks necessary to secure the assistance of highly qualified medical professionals, prepare claims that will accurately set forth the diminished capacities that many former players suffer, and ensure proper compensation under the complex requirements of the Settlement and the terms of the Settlement matrix. It also erases the time spent working for individual players over the course of years to determine the potential benefits and downsides of Settlement, the risks of litigation, and how their individual interests may best be served. Paralegals and clerical workers may have a role to play in helping to secure compensation for former players under the Settlement, but it is secondary.

any role in the class action or the MDL, but they represent individual players. Compensation for those lawyers will come through contingency fee contracts with their clients.[5] Former players represented by those lawyers and firms will pay some reasonable fee for their assistance in pursuing claims through the Settlement matrix, yet (purportedly) players represented by class counsel would not. That is *per se* unfair and makes no sense. There is no reason that some former players should pay for individual representation and others should not, solely because the former are represented by counsel not connected to the MDL and the latter by attorneys who serve in the dual role as class counsel and counsel under individual contingency fee contracts.

### III. Certification of a Class Under Rule 23 Cannot Produce a Categorical Abrogation of Individual Contingency Fee Contracts

Certification of a class under Rule 23 cannot, by its own force, abrogate preexisting contracts between lawyers and their clients. Any such argument is foreclosed by the Rules Enabling Act, which forbids a Federal Rule of Civil Procedure to "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). A federal district court has the inherent power to supervise contingency fee awards in order to ensure that they are not excessive, but the undoubted supervisory authority to prevent abusive contingency fees is not specific to class actions and provides no authority for denying altogether the compensation of class counsel through individual fee agreements.

Like all Federal Rules of Civil Procedure, Rule 23 was adopted pursuant to the Rules Enabling Act of 1934, which commands that no rule may "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). As the Supreme Court emphasized

---

[5] The objectors do not suggest that lawyers with no role of any kind in the class or the MDL would be compensated through common benefit fees.

-12-

in *Amchem*, "Rule 23's requirements must be interpreted in keeping . . . with the Rules Enabling Act" and its prohibition against abridgement or modification of any rights that are substantive in character. *Amchem Prods. v. Windsor*, 521 U.S. 591, 612–613 (1996).[6] The enforceability of a contract is a question of substantive right that Rule 23 cannot abridge. Thus, in *American Express v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2309–2310 (2013), the Supreme Court said "it is likely that" an interpretation of Rule 23 "invalidating private arbitration agreements denying class adjudication[] would be an 'abridg[ment]' or 'modif[ication]' of a 'substantive right' forbidden to the Rules." (quotations and alterations in original).

Federal district courts have inherent authority to supervise the terms of contingency fee contracts in the proceedings before them and, in appropriate cases, to order adjustments to the terms of those contracts in order to ensure that the court's processes are not used to exploit litigants. That power is not particular to class proceedings and does not depend on Rule 23 for its authority, nor could it. Rather, this Court's power to review the terms of a negotiated contingency fee contract arises from its supervisory authority. As the Third Circuit has explained, "in its supervisory power over the members of its bar, a court has jurisdiction of certain activities of such members, including the charges of contingency fees." *Schlesinger v. Teitelbaum*, 475 F.2d 137, 141 (3d Cir. 1973). That authority rests in part on the substantive law underlying the particular dispute before the Court. Thus, in *Schlesinger*, the Third Circuit emphasized the importance of federal admiralty law and the status of a seaman as a "special ward" in

---

[6] Mr. Locks served as co-lead counsel and represented the class claimants in *Georgine v. Amchem Prods.*, 878 F. Supp. 716 (1994), the underlying case that led to *Amchem Prods. v. Windsor Prods.*, 521 U.S. 591, 612–613 (1996).

-13-

that substantive law framework when describing the review of contingency fee awards by district courts in maritime cases. *Id.* at 140–141; *see also* Tobias Barrington Wolff, Managerial Judging and Substantive Law, 90 Wash. U. L. Rev. 1027, 1048–1060 (2013) (discussing the relationship between the underlying substantive law and a district court's use of its inherent powers to review contingency fee awards).

The same principles hold true in a class action. As the Third Circuit explained in *Dunn v. H.K. Porter, Inc.*, 602 F.2d 1105, 1114 (1979), a district court relies on its "supervisory authority over those practicing before it" when it fulfills the "duties imposed by Fed. R. Civ. P. 23(e)" to review contingency fee contracts between class counsel and class members. And, as the Third Circuit also held in *Dunn*, where a fee has been expressly and voluntarily negotiated by the class member, "courts should be loathe to intrude into a contractual relationship between an attorney and client" for fear of "discourage[ing] the prosecution of risky, but meritorious lawsuits." *Id.* at 1111–1112. Such intervention is not warranted in a class action proceeding where many contingency fee contracts between class counsel and their clients "were entered into prior to the initiation of suit, and apparently with considerable preliminary discussion" and there was "no misconduct on the part of the lawyers." *Id.* at 1112–1113.

If the objectors to the Fee Petition or any other individual players believe that their lawyers have committed acts of misconduct or that the fees they are charging are inappropriate for the work they have performed and the risk they have assumed, then those players can raise their arguments in an appropriate setting. This Court may have to determine whether there are any specific factual grounds for revisiting the terms of individual fee agreements. But any suggestion that the certification of a class and

approval of a class settlement automatically abrogate contingency is incorrect. The Rules Enabling Act forbids Rule 23, or any other Federal Rule, to abrogate or modify contractual rights.

## CONCLUSION

Like the Turner Estate itself, the objectors who have invoked the Turner Motion are seeking to challenge the terms on which they negotiated their contingency fee contracts with their individual lawyers. The Locks Law Firm has no knowledge or view about those negotiations. But these objections cannot benefit from any argument that class certification categorically invalidates all contractual relationships between class counsel and their individual clients. Class counsel are entitled to be compensated appropriately for their years of work advocating for individual players and for the years of work ahead in securing the proper measure of compensation under the Settlement matrix. Any attempt to invalidate those contracts on a categorical basis is wrong on the law. It would erase the history and on-the-ground reality of these proceedings and the decades of mass tort MDL suits that have preceded this action; it would require a complete restructuring of the common benefit fee allocation process; it would threaten to misalign the incentives of attorneys advocating for players under the Settlement; and it would delay payment of common benefit fees. There is no reason to permit such a disruption of these proceedings.

The Locks Law Firm respectfully requests that this Court recognize that no categorical challenge to individual retainer agreements is properly before it and, if such a challenge were before the Court, that it should be rejected.

Dated: April 10, 2017

Respectfully submitted,

/s/ Gene Locks
Gene Locks
David D. Langfitt
LOCKS LAW FIRM
The Curtis Center
Suite 720 East
601 Walnut Street
Philadelphia, PA 19106
Phone: 215-893-3423
Fax: (215) 893-3444
glocks@lockslaw.com
dlangfitt@lockslaw.com

and

Tobias Barrington Wolff
Professor of Law
University of Pennsylvania Law School*
3501 Sansom Street
Philadelphia, PA 19104
Phone: 215-898-7471
twolff@law.upenn.edu

*Institutional affiliation included for identification purposes only

## CERTIFICATE OF SERVICE

I hereby certify that on this date a true and correct copy of the foregoing Response of Class Counsel the Locks Law Firm to Oppositions by Objectors to Co-lead Counsel's Petition for Attorney's Fees was served via the Electronic Filing System to all counsel of record Case No. 2:12-md-02323-AB, MDL No. 2323.

DATE: April 10, 2017

/s/ *Gene Locks*
Gene Locks, Class Counsel