# EXHIBIT A

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>Hon. Anita B. Brody |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## AFFIDAVIT OF GENE LOCKS

I, Gene Locks, being duly sworn according to the law, do hereby depose and say the following:

1. I am one of four class counsel appointed by the Court in the litigation known as In Re NFL Players Concussion Litigation, MDL 2323, Eastern District of Pennsylvania.

2. I have been a pioneer in the area of Mass Torts and personal injury mass actions since the mid-1980s and, for the first time, coined the term "Mass Tort" at a seminar at Duke University in an around 1989.

3. Before the NFL litigation, I held numerous leadership roles in Mass Torts for decades, including the following:

    (A) Management Committee and Lead Negotiator, *In re Agent Orange Litigation*, MDL 381 Eastern District of New York;

-1-

     (B)    Co-Lead Class Counsel, Asbestos Victims Class Action, *Georgine v. Amchem Prod.,* Civil Action No. 93-CV-0215, 1992 – 1997;

     (C)    Co-Liaison Counsel, Multi-District Litigation No. 875, In re: Asbestos Products Liability Litigation (No. VI);

     (D)    Chairman and Lead Negotiator, Official Creditors Committee of Asbestos-Related Plaintiffs in numerous bankruptcy proceedings;

     (E)    Chairman and/or Lead Negotiator of the following reorganized companies:

          i.    MANVILLE Chapter 11 Proceeding, a successfully reorganized public company, in New York, New York Bankruptcy Court, 1982 – 1988;

          ii.    UNR INDUSTRIES, INC., Chapter 11 Proceedings, a successfully reorganized public company, in Chicago, Illinois Bankruptcy Court, 1982 – 1989;

          iii.    THE CELOTEX CORPORATION, Chapter 11 Proceeding, a successfully reorganized company, in Tampa, Florida Bankruptcy Court, 1990 – 1997;

          iv.    AMATEX CORP., [GL TO FILL IN]

          v.    EAGLE-PICHER INDUSTRIES, INC., a successfully reorganized public company, in Cincinnati, Ohio Bankruptcy Court, 1991 – 1996; and

          vi.    RAYTECH INDUSTRIES, INC., a successfully reorganized public company, in Connecticut Bankruptcy Court, 2001.

4.     I was also Co-Lead Class Counsel and Co-Lead Negotiator in the mass tort in this Court titled *In re Diet Drug Class Action, Brown, et al. v. American Home Products Corporation,* Civil Action No. 99-20593.

5.     I am also familiar with and have been counsel to innumerable claimants in the following mass torts, all of which were filed and/or resolved since the year 2000:

- Vioxx (EDLA) (Fallon, J.),

- PPA (USDC WA) (Rothstein, J.),

- Celebrex/Bextra (NDCA) (Breyer, J.),

- Medtronic (DC Minn.) (Rosenbaum, J.),

- Baycol (DC Minn.) (Davis, J.);

- Propulsid (WDLA) (Fallon, J.);

- Actos (WDLA) (Doherty, J.);
- Guidant (DC Mnn.) (Frank, J.);

- Serzone (DCWV) (Goodwin, J.);

- Ortho Evra (NDOH) (Katz, J.);

- Rezulin (SDNY) (Kaplan, J.)

- Avandia (EDPA (Rufe, J.);

- Digitek, (SDWVA) (Goodwin, J.).

6. In all of the case cited above, mostly those in the 21st Century, there has never been any personal injury MDL which resulted in a class action or global settlement wherein the individual contract for the personal injury victims were voided.

7. There has never been an effort by any of the courts to suggest that the payment of common benefit fees to an individual attorney preclude him/her from asserting an individual personal contract with a claimant.

8. The representation and work necessary for processing or filing an individual claim is designed for and meant to obtain the maximum benefits for each individual claimant. These efforts arise under a private contractual agreement with his/her attorney. Such a contract has always been required for the attorneys to maximize the possible benefits for individual clients in their individualized and special claims.

9. This work is independent and unrelated to any common benefit work that is performed or may have been performed by the same attorney in a class action or global settlement process to benefit the class as a whole.

10. The accusation or argument that class counsel's individual contract fees are purportedly "double dipping" is disingenuous, unsubstantiated and mere adversarial rhetoric. The courts in all of the cases cited above have used their supervisory capacity to oversee the fairness of the work performed by the attorneys before them.

11. They have done no more than occasionally modify the amount of individual contract rates but never voided them under any circumstances. This behavior is consistent with Rule 23 and with state and federal rules on limiting interference with contingency fee contracts, except for cases of fraud and dishonesty.

12. What we have seen in this case is an argument by lawyers relatively new to the case to offer low rates in widespread solicitations. One of their competitive pitches to former players is that they do not need and should not work with the leading firms in the case, because those firms will be paid by the NFL payments of Common Benefit Fees. This is lawyer marketing, not jurisprudence. Individual contract fees are the cornerstone of this and the other cases cited above. That is how all of the lawyers get paid for representing individual clients with individual cases. The lawyer analyzes a client's case, makes sure the client is examined by the best possible specialist now or in the future, and he/she submits a claim if the diagnosis supports it.

13. Furthermore, the argument makes no sense. If a lawyer faced the prospect of a court voiding a contract merely because the court awarded the lawyer common benefit fees, he/she would have no incentive to do anything for any individual client at any time. In this and all of the cases cited above, such a result would create chaos, particularly in light of the fact that this Settlement Agreement is quite complicated and lawyer advice is a good idea for every retired player.

14. The single largest mass tort in or around the beginning of the 21st Century which these issues were initially present is the Diet Drug litigation in this Court. I served as co-lead class counsel and co-lead negotiator in that case. There were multiple orders approving the settlement and none ever voiding any contingency fee contracts.

Dated: 4/10/17

Gene Locks

Sworn and signed before me this
10th day of April 2017.

Notary

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JENNIFER HAMILTON, Notary Public
City of Philadelphia, Phila. County
My Commission Expires November 10, 2019

-4-