UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,<br><br>                  Plaintiffs,<br><br>                  v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>                  Defendants. | CIVIL ACTION NO: 2:14-cv-00029-AB |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

**SUPPLEMENTAL DECLARATION OF CHRISTOPHER A. SEEGER IN
FURTHER SUPPORT OF CO-LEAD CLASS COUNSEL'S PETITION
FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS
AND EXPENSES, ADOPTION OF A SET-ASIDE FROM MONETARY AND
DERIVATIVE CLAIMANT AWARDS, AND CASE CONTRIBUTION AWARDS
FOR CLASS REPRESENTATIVES, AND IN OPPOSITION TO OBJECTORS'
<u>CROSS-PETITIONS FOR AWARDS OF ATTORNEYS' FEES AND EXPENSES</u>**

CHRISTOPHER A. SEEGER declares, pursuant to 28 U.S.C. § 1746, based upon his personal knowledge, the following:

1. I am fully familiar with the matters set forth herein, including the procedural history of this litigation and the class-wide settlement that this Court approved. I submit this Supplemental Declaration in further support of the consolidated petition of Class Counsel for a global award of attorneys' fees and reimbursement of expenses, the adoption of a set-aside of five percent of each Monetary Award and Derivative Claimant Award ("Class Counsel's Fee Petition"), and case contribution (*i.e.*, incentive or service) awards for the Subclass Representatives, and in opposition

to the three objector cross-petitions for awards of attorneys' fees and expenses, filed by the so-called Faneca Objectors, Armstrong Objectors, and Jones Objectors (ECF Nos. 7070, 7230, 7364).[1]

2. Annexed hereto as Exhibit Z is the Declaration of Bradford R. Sohn, dated March 28, 2017 ("Sohn Declaration"), in support of Class Counsel's Fee Petition. As he explains in his Declaration, Mr. Sohn was unable to prepare it in time for the filing of Class Counsel's Fee Petition because the materials for the submission of common benefit time and expenses had been sent to his former law firm and there was a delay in those materials being forwarded to him. Mr. Sohn's lodestar for common benefit work performed in this litigation is $26,250. When added to the $40,559,978.60 lodestar set forth in Class Counsel's Fee Petition, *see* ECF No. 7151-1, at 64, that now brings the total adjusted lodestar to $40,586,228.60.

3. Annexed hereto as Exhibit AA is a true copy of the petition (of which the exhibits thereto have been omitted), pursuant to Rule 23(f) of the Federal Rules of Civil Procedure, that the Faneca Objectors (at the time known as the Morey Objectors) filed in the United States Court of Appeals for the Third Circuit ("Third Circuit") on July 21, 2014, seeking permission to appeal this Court's preliminary approval of the pre-amended settlement and its preliminary certification of the settlement class.

4. Annexed hereto as Exhibit BB is a true copy of the reply that the Faneca (formerly known as the Morey) Objectors filed on August 14, 2014, in support of their Rule 23(f) petition to the Third Circuit.

---

[1] For the sake of brevity and simplicity, in this Supplemental Declaration I borrow the shorthand definitions that are employed in the opening memorandum of law in support of Class Counsel's Fee Petition (ECF No. 7151-1) and the accompanying omnibus reply memorandum of law.

5. Annexed hereto as Exhibit CC is a true copy of the corrected opening brief that the Armstrong Objectors filed in the Third Circuit on September 14, 2015 (the original brief having been filed on August 24, 2015), in support of their appeal of this Court's April 22, 2015 Final Approval of the Settlement.

6. Annexed hereto as Exhibit DD is a true copy of the reply brief that the Armstrong Objectors filed in the Third Circuit on October 7, 2015, in further support of their appeal of this Court's Final Approval of the Settlement.

7. Annexed hereto as Exhibit EE is a true copy of the opposition that Class Plaintiffs filed in the Third Circuit on October 13, 2015, in opposition to the motion of the Armstrong Objectors to take judicial notice of certain complaints that were already part of the record.

8. Annexed hereto as Exhibit FF is a true copy of the opposition that the Armstrong Objectors filed in the Third Circuit on June 1, 2015, to Class Plaintiffs' motion to expedite the briefing of the various objector appeals of this Court's April 22, 2015 Final Approval decision.

9. Annexed hereto as Exhibit GG is a true copy of the petition for writ of *certiorari* (with appendices omitted) that the Armstrong Objectors filed in the United States Supreme Court ("Supreme Court") on September 26, 2016 (No. 16-413), seeking review the Third Circuit's April 18, 2016 decision affirming this Court's Final Approval of the Settlement.

10. Annexed hereto as Exhibit HH is a true copy of the reply in support of their petition for writ of *certiorari* that the Armstrong Objectors filed in the Supreme Court on November 21, 2016.

11. Annexed hereto as Exhibit II is a true copy of the docket of the Armstrong Objectors' petition for writ of *certiorari*. This docket printout was obtained from the Supreme Court's website (https://www.supremecourt.gov/search.aspx?filename=/docketfiles/16-413.htm)

(last accessed Mar. 31, 2017), and shows the two extensions granted by Justice Alito (over the opposition of Class Counsel) on the motions of counsel for the Armstrong Objectors for extensions of time to file their *certiorari* petition.

12.     Annexed hereto as Exhibit JJ is a true copy of a report dated April 10, 2017, entitled *An Updated Analysis of the NFL Concussion Settlement*, which was prepared by Dr. Thomas Vasquez of Ankura Consulting Group.

13.     Annexed hereto as Exhibit KK is a true copy of the Declaration of Claims Administrator, Orran L. Brown, Sr., dated April 10, 2017.

14.     With respect to their request for a five-percent set-aside in their opening fee petition papers, Co-Lead Class Counsel provided multiple examples of the types of work that would be required as the Settlement was administered over the next 65 years.  Nevertheless, because several objectors demand more detail, I set it forth herein.[2]

15.     By way of example and based upon the limited data available thus far, in the first quarter of 2017 alone, my firm (Seeger Weiss LLP) already has invested over $600,000 in lodestar devoted to the below-described tasks.  Two senior attorneys at Seeger Weiss (including one partner) have been working virtually full-time, and another attorney as well as a paralegal have been working part-time, on these common benefit implementation-related tasks since even before the Settlement's January 7, 2017 Effective Date.  The work that they have done (and will do in the future) is enumerated below and captures only the major tasks that have been undertaken and can be anticipated to launch and maintain the Settlement Program.

---

[2]  To date, most of the of the Settlement implementation work has been performed by the Co-Lead Class Counsel firms, although other Class Counsel firms have lent assistance, such as with the vetting of BAP and MAF physicians and review of registration and claim documents.  For the sake of brevity and simplicity, I collectively refer to work done by "Class Counsel."

16. Both Class Counsel and the Court have recognized the importance of ensuring that all Class Members received clear, concise notice of the Effective Date for the Settlement and the need to register by August 7, 2017. To maximize participation, Class Counsel drafted and had the Claims Administrator disseminate via mail, email, and on the Settlement website (www.nflconcussionsettlement.com), the Pre-Registration Notice, and once the Registration opened on February 6, 2017, the formal Supplemental Notice advising that Registration was open was drafted and disseminated. In addition, Class Counsel are engaged in ongoing efforts to inform Class Members of the need for and ease of registration to enjoy the benefits of the Settlement, including further mailings.

17. Class Counsel have worked to retain the administrators and Special Masters, conferring with them and with counsel for the NFL Parties to execute all necessary documentation for formal retention as well as developing documents that establish the fundamental operation of each of the Administrators, including Conflict of Interest plans and operational procedures.

18. Similarly, we have worked to retain the Settlement Trustee and execute the necessary documentation to ensure that the Settlement Trust was established and would continue funding Settlement Benefits throughout the 65-year term of the Settlement.

19. In addition, Class Counsel has worked with counsel for the NFL Parties, the Administrators, and the Settlement Masters to ensure that all forms required for the various medical providers were created in time to review the documents and vet the medical providers so as to have selections of providers agreed to by the Settling Parties well in advance of the dates of launch of the BAP and MAF.

20. Class Counsel dedicated many hundreds of hours with the Claims Administrator, the NFL Parties, and the Special Masters to the negotiation and development of the registration

forms and procedures to ensure that the process was efficient and accessible so that no eligible Class Member would be denied entry.  Besides the creation of the hard-copy forms, Class Counsel worked alongside the other parties to launch the on-line registration portal which enables Class Members to register in a matter of minutes.  Underlying the registration process are hundreds of pages of procedures and other guidance documents that were created through the collaborative process discussed above.

21. Class Counsel has worked and will continue to work with the Claims Administrator to continually update the Settlement website, including its "Frequently Asked Questions" section. This work was particularly intense during several critical moments in the Settlement's life thus far, including the triggering of the Effective Date, the launch of Registration, and the commencement of the period to file Claims.  This platform is particularly valuable to ensuring that Class Members have easy access to the most up-to-date information and clear guidance on the Settlement Program.

22. Class Counsel continue to work on revisions to the Settlement website as new phases begin and additional forms and other documents become available for the Class Members, such as those relating to the BAP Program and the appeals process.  Additionally, Class Counsel worked with the Claims Administrator to assist in the transition of the handling of Class Member calls from the Call Center to the Claims Administrator, once the Effective Date was triggered.

23. Moreover, Class Counsel worked with counsel for the NFL Parties, the Administrators, and the Settlement Masters to ensure that all forms needed to submit a claim were prepared, and that they were all-inclusive and easily understandable.  These forms covered not only the basic claim form, but also the supporting forms that need to be submitted to perfect a claim, including the Diagnosing Physician Certification Forms, and the Pre-Effective Date

Diagnosing Physician Certification Form, so that the claims by those Class Members who received Qualifying Diagnoses prior to the Effective Date can be processed as quickly as possible.

24. Additionally, Class Counsel worked with the Claims Administrator, the NFL Parties and the Special Masters to launch an online Claims Portal, where Class Members are guided through the claims submission process. Underlying the entire claims process are hundreds of pages of procedures and other guidance documents that were created through the collaborative process discussed above.

25. As requested by the Court, and as part of their wider efforts to reach out to the Class about the Settlement Program, Class Counsel prepared a presentation for Class Members for the February 8, 2017 status conference (which the Court convened to address the status of the Settlement's implementation) and arranged for the conference to be live-streamed on the internet. The presentation at the conference was designed to explain to Class Members watching and listening to the internet broadcast the next steps they needed to take, to inform them of the efforts being expended by all involved to get the Settlement programs up and running, to answer questions, and most of all to encourage registration.

26. Additionally, Class Counsel has conducted several webinars to speak to Class Members through the internet, to encourage registration and to answer questions about the Settlement, its benefits and how to obtain the benefits. These webinars, like the wider outreach efforts, will be ongoing.

27. Conversely, Class Counsel has had to battle the spreading of *mis*information to Class Members. We have received numerous reports of written and oral communications, containing inaccurate or misleading information about the Settlement, to Class Members by those seeking to profit from Class Members by charging fees or securing portions of Class Members'

anticipated monetary awards.  To meet their fiduciary duty, Class Counsel have made every effort to investigate these reports and to bring matters to the Court's attention in order to protect Class Members, and have requested this Court's intervention where we have deemed it warranted.  *See* ECF Nos. 7175, 7347 (motions to enjoin improper communications and solicitations of Class Members).

28. Besides the foregoing, a great deal of work has been and will be necessary to select key officials.  The Appeals Advisory Panel is a panel of physicians that will advise this Court with respect to appeals of benefits determinations, review Qualifying Diagnoses rendered prior to the Settlement's Effective Date, and review conflicting opinions of BAP physicians.  *See* Settlement Agreement §§ 2.1(g), 5.13, 6.4, 9.8.  It is composed of, in any combination, five board-certified neurologists, board-certified neurosurgeons, or other board-certified neuro-specialist physicians.  The Appeals Advisory Panel Consultants is composed of three neuropsychologists, any one of whom will be eligible to advise the Court, a member of the Appeals Advisory Panel, or the Special Master concerning neuropsychological testing.  *See* Settlement Agreement § 2.1(h).  It was not easy to reach a consensus with counsel for the NFL Parties upon these eight individuals so that they could be nominated to the Court, which has the ultimate say in appointments to these positions, but Co-Lead Class Counsel worked tirelessly for months so that the April 7, 2017 deadline for their selection was met.

29. The time-consuming vetting process associated with the selection of those who will serve as Qualified BAP Providers and Qualified MAF Physicians has led to the initial launch of the MAF network and preliminary establishment of the BAP Provider network while Co-Lead Class Counsel and the other relevant parties continue to recruit and contract with additional physicians and providers.  Class Counsel have been participating in this work on virtually a daily

basis since the Effective Date and fully expect that the BAP Administrator will remain on track to begin scheduling BAP examinations as of May 7, 2017, with the BAP opening on June 6, 2017. On April 7, 2017, the list of Qualified MAF Physicians who are authorized to make post-Effective Date Qualifying Diagnoses was made available on the Settlement website.

30. Working with the BAP Administrator, the Claims Administrator, the NFL Parties and their own experts, Class Counsel have developed the services agreement that each physician and provider will need to sign to serve in the networks. Through this same process, the Settling Parties have prepared the manuals that will be used by each of the administrators to train the physicians and providers on the medical aspects of the settlement, including the testing regimen at the heart of the BAP Program and what constitutes a Qualifying Diagnosis for the MAF.

31. Maintaining these networks over the life of the Settlement will require the same kind of engagement in recruiting new physicians and providers as the Settlement, like the Retired NFL Players and the original physicians and providers, age.

32. Moreover, Co-Lead Class Counsel will be actively monitoring and reviewing of these networks to ensure that the Retired NFL Football Players are receiving the care and services that they deserve under the Settlement.

33. Given the Settlement's 65-year term and the volume of claims that will be submitted, appeals of Monetary and Derivative Claimant Award determinations will inevitably be filed, be they disputes of benefit denials or about the amount of an award, and there will likely be appeals of registration denials as well. Besides Class Members themselves, Section 9.5 of the Settlement Agreement confers standing on Co-Lead Class Counsel to appeal monetary award determinations.

34. Class Counsel will be asked to provide assistance to unrepresented Class Members and to represented Class Members' individually-retained counsel. Because Class Counsel will gain experience in the appeal process over time, their assistance will be essential to Class Members who will face counsel for the NFL Parties on the opposing side. Under Section 9.7(c) of the Settlement Agreement, Co-Lead Class Counsel also have the authority to make formal submissions in support of appeals taken by Class Members. As with their authority to file appeals, exercise of this authority will help to establish a decisional body that will facilitate the delivery of benefits to the Class. Conversely, Co-Lead Class Counsel also have the authority to oppose appeals of awards made to Class Members that the NFL may take, which is as important to protecting the rights of Class Members as much as the appeals taken on Class Members' behalf.

35. Moreover, Class Counsel must continue to monitor the funds and ensure that the NFL Parties comply with the funding and maintenance of targeted reserves for the MAF and BAP, as well as monitoring the Settlement Trust and the Trustee, under Article 23 of the Settlement Agreement.

36. Auditing procedures must be established to ensure that all work done by the various parties engaged in the Settlement Program for the benefit of the Class Members is done with efficiency and professionalism. The sheer scope of the activities and participants, including each member of the physician networks, will demand significant time to perform the auditing functions. Because it is anticipated that the NFL Parties will be engaging in such audits, it is important also to have Class Counsel involved.

37. Inevitably, physicians who have been selected to serve in the various roles will need to be replaced, whether for reasons of retirement, disability, death, or simply because they decide they no longer wish to participate in the Settlement Program. The vetting and selection of

replacement physicians is common benefit work that will need to be repeated hundreds of times over the 65-year life of the Settlement.  Class Counsel already have gained experience in this process, which will allow physicians to be replaced quickly as they exit the Program.

38.	Finally, the Settlement Agreement requires that the Settling Parties revisit the science every ten years to discuss in good faith possible prospective modifications to the definitions of the Qualifying Diagnoses or the protocols for making Qualifying Diagnoses (or both), in light of generally accepted advances in medical science.  Settlement Agreement § 6.6.  This will require Class Counsel to independently consult with medical and scientific experts to keep abreast of developments in medicine and science.

39.	I declare under penalty of perjury that the foregoing is true and correct. Executed this 10th day of April, 2017.

*/s/ Christopher A. Seeger*
_____
CHRISTOPHER A. SEEGER
Co-Lead Class Counsel