# Exhibit AA

No. 14- __8103__



RECEIVED
JUL 21 2014
0+3  µw
U.S. C.A. 3rd

# IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## FOR THE THIRD CIRCUIT

IN RE NATIONAL FOOTBALL LEAGUE PLAYERS
CONCUSSION INJURY LITIGATION

On Petition to Appeal from an Order of the
Eastern District of Pennsylvania Granting Settlement Class Certification
2:12-md-2323-AB (E.D. Pa.)

---

## PETITION OF OBJECTING CLASS MEMBERS PURSUANT TO FED. R. CIV. P. 23(f) FOR LEAVE TO APPEAL FROM THE DISTRICT COURT'S ORDER GRANTING SETTLEMENT CLASS CERTIFICATION

---

William T. Hangley
Michele D. Hangley
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square
18th & Cherry Streets
27th Floor
Philadelphia, PA 19103
(215) 496-7001 (telephone)
(215) 568-0300 (facsimile)
whangley@hangley.com

Steven F. Molo
   *Counsel of Record*
Thomas J. Wiegand
Kaitlin R. O'Donnell
MOLOLAMKEN LLP
540 Madison Avenue
New York, NY 10022
(212) 607-8160 (telephone)
(212) 607-8161 (facsimile)
smolo@mololamken.com

*Counsel for Objecting Class Members*

*(Additional Counsel Listed on Inside Cover)*

---

Linda S. Mullenix
2305 Barton Creek Boulevard
Unit 2
Austin, TX 78735
(512) 263-9330 (telephone)
lmullenix@hotmail.com

Martin V. Totaro
Eric R. Nitz
MOLOLAMKEN LLP
The Watergate, Suite 660
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 556-2000 (telephone)
(202) 556-2001 (facsimile)
mtotaro@mololamken.com

*Counsel for Objecting Class Members*

# **TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................1

JURISDICTION AND RELIEF SOUGHT .............................................................3

ISSUE PRESENTED............................................................................................3

FACTUAL BACKGROUND.................................................................................4

I.    The Litigation ...........................................................................................4

II.   The Settlement ..........................................................................................4

III.  The Petitioners .........................................................................................7

ARGUMENT .......................................................................................................8

I.    The Multiple Conflicts Within the Class Deprive Many Class
      Members of Adequate Representation and Support Review Now.................9

      A.    Failure To Compensate Some Injured Class Members, While
            Compensating Others, Creates a Conflict ...........................................10

      B.    The 75% Offsets Create a Conflict ......................................................14

      C.    Failure To Credit Seasons Played in NFL Europe
            Creates a Conflict ...............................................................................15

II.   Other Deficiencies in the Settlement Support Review Now .........................16

III.  The Impact of Delay on Injured Class Members Supports Review
      Now......................................................................................................18

i

CONCLUSION .......................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)..........................9, 13, 14, 16

*Bell Atl. Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993) .............................................17

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935
    (9th Cir. 2011)..........................................................................................................18

*Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170
    (3d Cir. 2012)..............................................................................................9, 14, 16

*Eubank v. Pella Corp.*, ___ F.3d ___, 2014 WL 2444388
    (7th Cir. June 2, 2014) ........................................................................................17

*In re Fed. Skywalk Cases*, 680 F.2d 1175 (8th Cir. 1982).........................................3

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ......................................................................9, 10, 17

*Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138 (4th Cir. 2001) ...................................2, 8

*In re Nat'l Football League Players' Concussion Injury Litig.*,
    961 F. Supp. 2d 708 (E.D. Pa. 2014)....................................................................6

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154
    (3d Cir. 2001)..............................................................................................8, 17, 19

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999)......................................................16

*Rodriguez v. Nat'l City Bank*, 726 F.3d 372 (3d Cir. 2013) .....................................1

## STATUTES AND RULES

28 U.S.C. § 1292(a)(1) .................................................................................................3

28 U.S.C. § 1292(e).......................................................................................................3

Fed. R. App. P. 5 ...........................................................................................................3

Fed. R. Civ. P. 23(a)(4) .................................................................................1, 6

Fed. R. Civ. P. 23(f) .............................................................................*passim*

## OTHER AUTHORITIES

A.C. McKee *et al.*, *The Spectrum of Disease in Chronic Traumatic Encephalopathy*, 136 Brain: A Journal of Neurology 43 (2012) ...................8, 11

Bennett P. Leifer, *Early Diagnosis of Alzheimer's Disease: Clinical and Economic Benefits*, 51 J. of the Am. Geriatrics Soc'y S281 (2003) .........................................................................................................19

BU CTE Center, *What Is CTE?*, http://www.bu.edu/cte/about/what-is-cte/ .............................................1

Charles Zorumski & Eugene Rubin, *The Financial Cost of Dementia*, Psychology Today (Oct. 10, 2013), http://www.psychologytoday.com/blog/ demystifying-psychiatry/201310/the-financial-cost-dementia ..........................20

Cindy Boren, *Tony Dorsett Diagnosed with Signs of CTE*, The Washington Post (Nov. 7, 2013), http://www.washingtonpost.com/blogs/early-lead/wp/2013/11/07/tony-dorsett-diagnosed-with-signs-of-cte/ .......................12

Dan McGrath, *Illinois Eye Institute Project Aims to Identify CTE in the Living*, Chicago Sun-Times (June 14, 2014 4:35 PM), http://www.suntimes.com/sports/28048920-419/illinois-eye-institute-project-aims-to-identify-cte-in-the-living.html#.U8noDvldVqU ...............................................................12

E.S. Louwerse *et al.*, *Amyotrophic Lateral Sclerosis: Mortality Risk During the Course of the Disease and Prognostic Factors*, 152 J. of Neurological Sci. Suppl. S10 (1997) ....................................19

Frontline, Transcript of *League of Denial: The NFL's Concussion Crisis*, http://www.pbs.org/wgbh/pages/ frontline/sports/league-of-denial/transcript-50/ ....................................11

James F. Burke *et al.*, *Traumatic Brain Injury May Be an Independent Risk Factor for Stroke*, 81 Neurology 1 (2013) ....................................15

iv

Jing Xie *et al.*, *Survival Times in People with Dementia: Analysis from Population Based Cohort Study with 14 Year Follow-Up*, BMJ Online First (Nov. 11, 2007)......................................................................19

Mark Fainaru-Wada & Steve Fainaru, *League of Denial* (2013) ..............................20

Nathaniel Penn, *The Violent Life and Sudden Death of Junior Seau*, GQ Magazine (Sept. 2013), http://www.gq.com/entertainment/sports/201309/junior-seau-nfl-death-concussions-brain-injury..........................................................................19

Nat'l Inst. for Occupational Safety and Health, *Brain and Nervous System Disorders Among NFL Players* (Jan. 2013), http://www.cdc.gov/niosh/pgms/worknotify /pdfs/NFL_Notification_02.pdf..........................................................................12

Pablo S. Torre, *How (and Why) Athletes Go Broke*, Sports Illustrated (Mar. 23, 2009), http://sportsillustrated.cnn.com/vault/2009/03/23/105789480/ how-and-why-athletes-go-broke..........................................................................20

Paul Solotaroff, *Dave Duerson: The Ferocious Life and Tragic Death of a Super Bowl Star*, Men's Journal (May 2011), http://www.mensjournal.com/magazine/dave-duerson-the-ferocious-life-and-tragic-death-of-a-super-bowl-star-201210002 ......................19

## INTRODUCTION

This is a petition by seven retired NFL players seeking review of the district court's decision certifying a class in the course of preliminarily approving a settlement in the "NFL Concussion Litigation."

The class fails to meet Rule 23's requirement that "the representative parties will fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). Multiple conflicts within the class leave many class members without adequate representation. For example, the estate of a class member who died with CTE – likely the most prevalent medical condition suffered by the class – before preliminary approval would receive up to $4 million, while a class member who dies with CTE after preliminary approval receives nothing.[1] Yet both give Defendants a near-absolute release.

This Court has "'very broad discretion in deciding whether to grant permission to pursue a Rule 23(f) appeal.'" *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 376 (3d Cir. 2013). A recognized reason for doing so is "when the district court's class certification determination was erroneous." *Id.* at 377.

---

[1] CTE, or chronic traumatic encephalopathy, is likely the most common neurocognitive injury suffered by class members. It "is a progressive degenerative disease of the brain found in athletes . . . with a history of repetitive brain trauma" that is "associated with memory loss, confusion, impaired judgment, impulse control problems, aggression, [and] depression." BU CTE Center, *What Is CTE?*, http://www.bu.edu/cte/about/what-is-cte/. CTE can lead to suicide.

Review at this stage is particularly "'appropriate when it promises to spare the parties and the district court the expense and burden of litigating the matter to final judgment only to have it inevitably reversed'" on appeal. *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 144 (4th Cir. 2001).

That is precisely why we seek review. The class, as certified, is doomed. Additionally, the notice is materially false and the claims process is improperly complex and exclusionary – in violation of due process. Rather than incur the substantial expense and inevitable delay of a fairness hearing and ensuing opinion, we ask that those problems be addressed now.

Unfortunately, for many of the more than 20,000 class members, time is of the essence. Some will die – from the injuries that are at the root of this litigation – as this process plays out. Others will see their medical conditions worsen. In the meantime, individual suits are stayed and this case will likely be delayed by over a year while a settlement marred by a fatally flawed class, as well as other defects, winds its way through the system.

The district judge, in an order allowing the parties to announce the terms of the settlement last summer, stated that "from the outset of this litigation, I have expressed my belief that the interests of all parties would be best served by a negotiated resolution of this case." Dkt. No. 5235. We agree. But the resolution must comport with the requirements of Rule 23 and treat all class members fairly.

2

And, respectfully, it should be one reached as expeditiously and efficiently as possible, given the stakes for the members of the class.

## JURISDICTION AND RELIEF SOUGHT

Pursuant to Fed. R. Civ. P. 23(f), Fed. R. App. P. 5, and 28 U.S.C. § 1292(e), Petitioners respectfully petition for leave to appeal from the July 7, 2014 Order and Memorandum Opinion of the United States District Court for the Eastern District of Pennsylvania (Brody, J.), No. 12-md-2323 (attached as Exhibits A and B), certifying a settlement class and granting preliminary approval to the class settlement negotiated by Class Counsel and the NFL Defendants.[2]  This petition is timely filed. *See* Fed. R. Civ. P. 23(f).[3]

## ISSUE PRESENTED

Whether the Court should exercise its broad discretion to review the district court's class certification order where multiple conflicts deprive many class members of adequate representation, and numerous other factors, including the substantially declining health of many in the class, call for review without delay.

---

[2] Review is appropriate at this stage because Rule 23(f) authorizes review from any "order granting or denying class-action certification." Fed. R. Civ. P. 23(f). Indeed, the Advisory Committee explained that even a "tentative" certification decision can be reviewed under Rule 23(f) and 28 U.S.C. § 1292(e). Fed. R. Civ. P. 23(f), 1998 Advisory Comm. cmt.

[3] Additionally, because the district court enjoined related lawsuits, Order, Ex. A at 8, this Court could exercise appellate jurisdiction under 28 U.S.C. § 1292(a)(1). *See In re Fed. Skywalk Cases*, 680 F.2d 1175, 1180 (8th Cir. 1982).

3

## FACTUAL BACKGROUND

### I.    THE LITIGATION

In 2011, retired football players began suing the National Football League ("NFL") to recover for neurocognitive injuries resulting from repeated mild traumatic brain impacts ("MTBI") sustained during their NFL careers. Those lawsuits alleged that the NFL knowingly misled players by denying the connection between neurocognitive injury and MTBI and by sponsoring "junk" science that supported those misrepresentations. Objection, Ex. C at 7-8.

The cases were consolidated in the Eastern District of Pennsylvania. *See* Dkt. No. 1. On April 26, 2012, the district court appointed Co-Lead Counsel, the Executive Committee, and the Plaintiffs' Steering Committee. Dkt. No. 64. The NFL Defendants moved to dismiss, and the district court heard argument on that motion on April 9, 2013. Dkt. Nos. 4737, 4738. Without ruling on the motion, the district court ordered the parties to mediation. Dkt. No. 5128.

### II.   THE SETTLEMENT

On August 29, 2013, the district court announced that the mediation had resulted in settlement, Dkt. No. 5235, and the mediator issued a press release outlining its basic terms, Objection, Ex. C at 11-12. The settlement was to provide a $10 million education fund, a $75 million fund to assess class members' neuro-cognitive functioning, and a $675 million monetary award fund to compensate "severe cognitive impairment, dementia, Alzheimer's, [and] ALS." *Id*. at 12-13.

4

Five months later, Class Counsel for the first time disclosed the full settlement agreement and moved for preliminary approval. Dkt. No. 5634. The settlement compensated ALS, Alzheimer's, Parkinson's, and moderate and severe dementia. Objection, Ex. C at 12. It did not, by contrast, compensate cases of CTE – unless the retired player died before preliminary approval of the settlement. *Id.* at 12-13.

Class Counsel requested certification of a settlement class consisting of all living, retired NFL Football Players who left the NFL before preliminary approval of the settlement, and the representatives of deceased retired players. Objection, Ex. C at 5-6. The class also includes players in the NFL's predecessor leagues as well as players in NFL Europa and its predecessor leagues (collectively, "NFL Europe"). *Id.*

The proposed class was divided into two sub-classes. Subclass 1 consisted of all retired players who were not diagnosed with a compensable disease before preliminary approval; Subclass 2 consisted of retired players who have received such a diagnosis. Objection, Ex. C at 6. Shawn Wooden, the Representative Plaintiff for Sub-Class 1, "has not been diagnosed with any neurocognitive impairment." *Id.* He pleads an "increased risk of developing dementia, Alzheimer's, Parkinson's, or ALS," but no increased risk of developing CTE. *Id.* Kevin Turner, who was diagnosed with ALS in 2010, represents Sub-Class 2. *Id.* at 6-7.

5

On January 14, 2014, the district court denied the motion for preliminary approval. *See In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708 (E.D. Pa. 2014). The court was "concerned that not all Retired NFL Football Players who ultimately receive a Qualifying Diagnosis ... will be paid." *Id.* at 715. Accordingly, it ordered the settling parties to provide actuarial and economic studies supporting the sufficiency of the fund. *Id.* at 716.

Six months later, on June 25, 2014, Class Counsel submitted a revised settlement and renewed their motion for preliminary approval. *See* Dkt. No. 6073. The revised settlement purported to address the district court's initial concerns by lifting the $675 million cap on the monetary award fund. Objection, Ex. C at 15. The payment levels and the qualifying diagnoses, however, remained the same. *Id.*

One week later, Petitioners objected to the settlement and opposed the motion for preliminary approval. They argued, among other things, that intra-class conflicts precluded certification under Rule 23(a)(4). Objection, Ex. C at 19-29. Most notably, class members suffering from CTE would receive no compensation after preliminary approval but those who died before approval would receive up to $4 million. *Id.* at 20-26. Petitioners also challenged the proposed notice because it falsely indicated that the settlement compensated future CTE. *Id.* at 29-32. And Petitioners objected to the labyrinth of procedural requirements for obtaining relief, which will likely prevent many class members from recovering. *Id.* at 32-35.

6

On July 7, 2014, the district court – incorrectly characterizing the motion for preliminary approval as "unopposed," Opinion, Ex. B at 1 – certified the settlement class and granted preliminary approval to the settlement. Order, Ex. A; Opinion, Ex. B. Significantly, the court did not address any of Petitioners' objections – including Petitioners' argument that class representation was inadequate because the settlement created intra-class conflicts by arbitrarily distinguishing among similarly situated class members. *See* Opinion, Ex. B at 15-16.

## III.  THE PETITIONERS

Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick Cartwright, Jeff Rohrer, and Sean Considine are all class members and NFL veterans; one also played in NFL Europe. They played, on average, eight years in the league, and most received NFL-administered injections of Toradol, a pain-killer. They are collegiate All-Americans, team captains, Pro-Bowlers, and Super Bowl Champions. Objection, Ex. C at 2-5. Since leaving the NFL, each has experienced one or more of a wide range of symptoms linked to MTBI, none of which receives compensation or treatment under the settlement. Among others, those conditions include chronic pain, executive function deficit, episodic depression, sleep dysfunction, and memory deficits. Those conditions have been identified as symptoms of CTE. A.C. McKee *et al.*, *The Spectrum of Disease in Chronic Traumatic Encephalopathy*, 136 Brain: A Journal of Neurology 43, 52, 55-59 (2012).

7

Petitioners sought leave to intervene on May 5, 2014. Dkt. No. 6019-1. They argued intervention was necessary because their interests were not adequately represented in the then-ongoing settlement negotiations. *Id.* at 13-20. Significantly, in making that showing, Petitioners raised the same class conflicts described in their objection. *Compare id.* at 14-19 *with* Objection, Ex. C at 19-29. The district court has not ruled on that motion.

## ARGUMENT

Federal Rule of Civil Procedure 23(f) authorizes circuit courts to hear "an appeal from an order granting or denying class-action certification." Fed. R. Civ. P. 23(f). Review may be granted "'on the basis of any consideration that the court of appeals finds persuasive,'" including an "erroneous" certification ruling. *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 165 (3d Cir. 2001) (quoting Comm. Note, Fed. R. Civ. P. 23(f)) (granting petition for appeal). Rule 23(f) provides a vehicle for addressing problems with class certification promptly, to avoid unnecessary expense and delay. The Rule "promote[s] judicial economy by enabling the correction of certain manifestly flawed class certifications." *Lienhart*, 255 F.3d at 145 (4th Cir. 2001) (granting Rule 23(f) petition where class certification was erroneous). This Court should use that vehicle to address the problems with the settlement class here.

## I. THE MULTIPLE CONFLICTS WITHIN THE CLASS DEPRIVE MANY CLASS MEMBERS OF ADEQUATE REPRESENTATION AND SUPPORT REVIEW NOW

The district court's certification order here was erroneous. The Representative Plaintiffs were not adequate representatives of the class because they entered into a settlement that compensated the MTBI-related conditions afflicting them but bargained away the recovery of many other class members.

The central premise of class litigation is that class representatives and their counsel adequately represent a broader group of similarly situated people. The "linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183, 187-88 (3d Cir. 2012) (denying certification where interests of representative plaintiffs and absent class members diverged). Thus, "adversity among subgroups" requires denial of class certification. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 627 (1997) (denying class certification where conflict existed between present and future claimants).

When certifying a settlement class, the court must "focus on the settlement's distribution terms ... to detect situations where some class members' interests diverge from those of others in the class." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 797 (3d Cir. 1995) (finding representation inadequate where settlement terms preferred some class members over others). Thus, "a settlement that offers considerably more value to one class of plaintiffs

9

than to another may be trading the claims of the latter group away in order to enrich the former group." *Id.* "Offer[ing] considerably more value to one class of plaintiffs" is precisely what the settlement does here.

As to Petitioners, the settlement suffers from at least three intra-class conflicts that preclude certification:

- The settlement arbitrarily limits compensation for CTE – a disease that neither Representative Plaintiff claims a risk of developing – to individuals who died before preliminary approval. Class members whose CTE is diagnosed in the future will receive nothing. The settlement also does not compensate Petitioners' MTBI-related afflictions, many of which are potential indicators of CTE, and none of which the Representative Plaintiffs claim to suffer.

- The settlement reduces a claimant's award by 75% if (i) the claimant has suffered a stroke, even though the NFL Defendants' own conduct in administering Toradol increased some Petitioners' risk of stroke, or (ii) the claimant has suffered a *single* non-football-related traumatic brain injury ("TBI"), even though class members received *dozens* of TBIs while playing in the NFL.

- The settlement class includes NFL Europe veterans, but the settlement does not credit seasons played there.

These conflicts, individually and collectively, render certification erroneous.

### A.    Failure To Compensate Some Injured Class Members, While Compensating Others, Creates a Conflict

The settlement compensates only a small subset of MTBI-related injuries to the exclusion of all others, creating conflict between the interests of those who suffer from compensated injuries and those whose injuries go without relief. Petitioners suffer from a range of significant MTBI-related medical conditions:

10

visuospatial difficulties, executive function deficit, chronic headaches, dysnomia, decreased emotional stability, increased impulsivity, and attention and concentration deficits. Objection, Ex. C at 5. None of these conditions receives compensation or medical treatment under the settlement.

The disparate – and arbitrary – treatment of class members suffering from these uncompensated afflictions is particularly stark in light of the settlement's framework for compensating CTE. The uncompensated conditions afflicting Petitioners are among the well-documented symptoms consistent with CTE. McKee, *supra*, at 60. And while CTE found in a retired player who died on July 6, 2014 calls for a $4 million payment under the settlement, that same condition goes uncompensated if the player dies one day later. That is because the settlement defines "qualifying diagnosis" to include "a post-mortem diagnosis of CTE" *only* "[f]or Retired NFL Football Players who died prior to the date of the Preliminary Approval and Class Certification Order." Settlement, Ex. D at Ex. B-1 ¶ 5; *see also id.* ¶¶ 2.1(yyy), 6.3(a). Thus, former players who have CTE symptoms and develop CTE in the future receive nothing.

That limitation on CTE compensation is remarkable. Given that 33 of the 34 deceased NFL players whose brains have been examined for CTE have been diagnosed with the condition, one of the lead CTE researchers has wondered whether "every single football player doesn't have" CTE. Frontline, Transcript of

11

*League of Denial: The NFL's Concussion Crisis*, http://www.pbs.org/wgbh/pages/
frontline/sports/league-of-denial/transcript-50/.[4]   CTE is to concussion litigation
what asbestosis is to asbestos litigation.   Nonetheless, the settlement provides *no
compensation* to players with CTE who die after preliminary approval of the
settlement.   Thus, the CTE limitation will dramatically limit the amount Defend-
ants will pay to class members who are giving them essentially a blanket release.

The consequences will multiply over time.  As science advances, it is likely
that MTBI will be shown to correlate with additional diseases, and that CTE will
be more easily detectable before death.[5]  Yet the settlement provides no flexibility
for adding to the list of qualifying diseases, compensating new conditions, or
compensating pre-death diagnoses of CTE.  *See* Settlement, Ex. D §6.6(c) ("In no
event will modifications be made to the Monetary Award levels in the Monetary

---

[4] By contrast, one study examining NFL retirees who played at least five seasons
between 1959 and 1988 recorded seven cases of ALS, seven cases of Alzheimer's,
and three cases of Parkinson's in 3,439 retired players.    Nat'l Inst. for
Occupational Safety and Health, *Brain and Nervous System Disorders Among NFL
Players* (Jan. 2013), http://www.cdc.gov/niosh/pgms/worknotify/pdfs/NFL_
Notification_02.pdf.

[5] *See, e.g.,* Dan McGrath, *Illinois Eye Institute Project Aims to Identify CTE in the
Living*, Chicago Sun-Times (June 14, 2014 4:35 PM), http://www.suntimes.
com/sports/28048920-419/illinois-eye-institute-project-aims-to-identify-cte-in-the-
living.html#.U8noDvldVqU. Indeed, a 2013 brain scan of Hall of Fame running
back Tony Dorsett showed that "he has signs of chronic encephalopathy." Cindy
Boren, *Tony Dorsett Diagnosed with Signs of CTE*, The Washington Post (Nov. 7,
2013), http://www.washingtonpost.com/blogs/early-lead/wp/2013/11/07/tony-
dorsett-diagnosed-with-signs-of-cte/.

12

Award Grid, except for inflation adjustment(s).").

Class members are entitled to representatives who would press for settlement "provisions that can keep pace with changing science and medicine, rather than freezing in place the science" known at the time of settlement. *Amchem*, 521 U.S. at 610-11. But the Representative Plaintiffs cannot fulfill that role. Neither Representative Plaintiff shares Petitioners' interest in securing compensation for all cases of CTE and other MTBI-related conditions. Mr. Turner, who suffers from ALS, has a diagnosed medical condition that specifically entitles him to compensation under the settlement (and rightly so). But he was not poised to represent the interests of those who have suffered different injuries and receive nothing under the settlement. Neither is Mr. Wooden.

Petitioners exhibit MTBI-related injuries that are clinical indications of CTE. Mr. Wooden, by contrast, has not alleged that he suffers from any MTBI-related affliction. Nor has he alleged that he is at "[an] increased risk of developing" CTE, despite alleging an increased risk for dementia, Alzheimer's Disease, Parkinson's Disease, and ALS. Objection, Ex. C at 24. Mr. Wooden's interests therefore lie in securing future compensation for those afflictions, not in securing payment for the Petitioners' conditions and for future cases of CTE. For that reason, the subclasses do not ensure adequate representation. They do not

13

"align[] [the] interests and incentives [of] the representative plaintiffs and the rest of the class." *Dewey*, 681 F.3d at 183; *see also Amchem*, 521 U.S. at 625-26.

**B.     The 75% Offsets Create a Conflict**

The proposed settlement also imposes offsets that create an additional class conflict. It reduces a claimant's award by 75% for a single instance of non-football-related TBI or stroke. Settlement, Ex. D §6.7(b)(ii)-(iii). That 75% offset applies regardless of the severity of traumatic brain injury that the player sustained while playing football. And it presumes that a single non-football-related instance of TBI accounts for 75% of a player's MTBI-related injuries, even though that player may have sustained numerous head traumas throughout his NFL career. That is both devoid of scientific justification and grossly unfair.

Instances of stroke, moreover, should be compensated injuries, not offsets that reduce recovery. *The NFL itself has increased the risk of stroke* by widely and for many years administering the pain-killer Toradol without informed consent. Toradol injections increased that risk in two ways. First, Toradol masks symptoms of brain injury, encouraging players' continued participation and thereby increasing the risk of repeat MTBIs in the same game. Second, MTBI suffered after a Toradol injection occurs at a time when the cerebrovascular architecture of the brain is particularly weak as a result of the head traumas suffered during the game. *See* Objection, Ex. C at 26-27.

14

Consequently, large groups of players who received weekly Toradol injections suffered repetitive MTBI at a time when their brains were most susceptible to permanent damage and injury. That damage itself enhances a retired player's risk of experiencing a stroke later in life. *See* James F. Burke *et al.*, *Traumatic Brain Injury May Be an Independent Risk Factor for Stroke*, 81 Neurology 1 (2013). Thus, the NFL's own actions have contributed to the prevalence of stroke among retired players. Class Counsel knew of these allegations, pleading them in other complaints. *E.g.*, Complaint, *Finn v. Nat'l Football League*, No. 2:11-cv-7067, ¶¶ 135-143 (D.N.J. Dec. 8, 2011). But the settlement makes no mention of these injuries except to release any claims for them and to inexplicably select them as bases for reducing the retired player's compensation.

Representative Plaintiffs could not adequately represent Petitioners' interests in eliminating the offset related to stroke and post-NFL TBI. Neither Mr. Turner nor Mr. Wooden claims an increased risk of stroke through NFL-administered Toradol use. Neither can adequately represent those class members who some day may suffer such a stroke – and the resulting drop in compensation under the proposed settlement – as a result of the NFL's own conduct.

## C. Failure To Credit Seasons Played in NFL Europe Creates a Conflict

The settlement, while releasing all claims of NFL Europe players, does not award "Eligible Season" credit for time spent playing in that league. Settlement,

Ex. D §6.7(c)(i). Thus, a class member who played five years in the NFL will receive a larger settlement award than a class member who played part of his five-year career in NFL Europe. That is true even though players in NFL Europe endured the same playing conditions and sustained repeated MTBIs, just like players in the NFL. Neither Mr. Turner nor Mr. Wooden alleges that he played in NFL Europe. Thus, neither adequately represents the interests of players who did.

* * * * *

Distinct groups within the proposed class had their rights bargained away without representation. Where "the interests of the representative plaintiffs and the interests of [absentee class members] align[] in opposing directions," class representation is inadequate. *Dewey*, 681 F.3d at 188; *see also Amchem*, 521 U.S. at 627 (denying class certification where settlement not agreed to by representatives of all sub-classes); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999) (intra-class conflict "require[d] division into homogenous subclasses . . . with separate representation to eliminate conflicting interests"). The district court's decision to certify the settlement class over these conflicts was erroneous.

## II.   OTHER DEFICIENCIES IN THE SETTLEMENT SUPPORT REVIEW NOW

Beyond the inadequate class representation, the settlement contains other defects – some raising due process concerns – as well. These defects serve as other considerations this Court should find persuasive in deciding to grant review.

16

See *Newton*, 259 F.3d at 165 (review may be granted "'on the basis of any consideration that the court of appeals finds persuasive'").

***First***, the class notice – already being distributed – is false. "To satisfy due process," notice to class members "'must be sufficiently informative and give sufficient opportunity for response.'" *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1317 (3d Cir. 1993). The long-form notice identifies "Death with CTE" among the "diagnoses [that] qualify for monetary awards" and states that such a diagnosis "may occur *at any time* until the end of the 65-year term of the Monetary Award Fund." Settlement, Ex. D at Ex. B-5. That is false: The settlement precludes compensation for future CTE. Without knowing the settlement's limits, class members cannot make an informed decision to remain in the class or opt out. Such notice is not "sufficiently informative." *Bolger*, 2 F.3d at 1317.[6]

***Second***, the settlement establishes a byzantine maze of procedural requirements that "strews obstacles in the path of" class members – many of whom suffer from significant cognitive impairment – seeking recovery. *Eubank v. Pella Corp.*, ___ F.3d ___, 2014 WL 2444388, at *7 (7th Cir. June 2, 2014) (rejecting settlement because of, among other things, a complex claim process). For

---

[6] The defective notice is doubly problematic in the settlement class context, where "mere presentation of the settlement notice with the class notice may pressure even skeptical class members to accept the settlement out of the belief that . . . they really have no choice." *GM Trucks*, 55 F.3d at 789.

17

example, class members must register with the claims administrator within 180 days of posting of registration deadlines on the settlement website to receive any benefit. Objection, Ex. C at 32. An unregistered class member who is later diagnosed with a qualifying disease is ineligible for benefits. The settlement also requires submission of an as-yet undisclosed claim form and authorizes the Claims Administrator to request additional documentation from claimants. *Id.* at 33. The NFL, moreover, has every incentive to appeal claim awards. The settlement places no limits on the number of claims the NFL may appeal, imposes no appeal fee, and does not require the NFL to pay costs and fees if it loses. *Id.* Class members, by contrast, must pay a $1,000 fee to appeal. *Id.*

*Third*, Class Counsel negotiated a nine-figure attorneys' fee – $112.5 million plus the potential for 5% of the awards to class members – while doing very little work. *No discovery* occurred and there was no motions practice beyond a motion to dismiss. Moreover, the NFL Defendants have agreed not to oppose the fee petition. These circumstances "increase[] the likelihood that class counsel . . . bargained away something of value" to further their own interests. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011).

## III. THE IMPACT OF DELAY ON INJURED CLASS MEMBERS SUPPORTS REVIEW NOW

The serious, deteriorating medical conditions of many class members is another consideration this Court should find "persuasive" in deciding to grant

18

review. *See Newton*, 259 F.3d at 165 (review may be granted "'on the basis of any consideration that the court of appeals finds persuasive'").

The diseases suffered by the class members are degenerative and decline can be rapid, particularly if diagnosis and medical intervention are delayed.[7] One study found that the median survival from the time of an ALS diagnosis is just 1.4 years.[8] Another estimated survival after the onset of dementia at 4.1 years.[9]

The effects of undiagnosed CTE and other neurocognitive diseases can be extraordinary. In two highly publicized cases, retired NFL stars committed suicide – shooting themselves in the heart to preserve their brains for research – after experiencing severe symptoms of CTE and seeing their lives degenerate.[10] And

---

[7] *See, e.g.*, Bennett P. Leifer, *Early Diagnosis of Alzheimer's Disease: Clinical and Economic Benefits*, 51 J. of the Am. Geriatrics Soc'y S281, S285 (2003).

[8] E.S. Louwerse *et al.*, *Amyotrophic Lateral Sclerosis: Mortality Risk During the Course of the Disease and Prognostic Factors*, 152 J. of Neurological Sci. Suppl. S10, S12 (1997).

[9] Jing Xie *et al.*, *Survival Times in People with Dementia: Analysis from Population Based Cohort Study with 14 Year Follow-Up*, BMJ Online First, at 6 (Nov. 11, 2007).

[10] Nathaniel Penn, *The Violent Life and Sudden Death of Junior Seau*, GQ Magazine (Sept. 2013), http://www.gq.com/entertainment/sports/201309/junior-seau-nfl-death-concussions-brain-injury; Paul Solotaroff, *Dave Duerson: The Ferocious Life and Tragic Death of a Super Bowl Star*, Men's Journal (May 2011), http://www.mensjournal.com/magazine/dave-duerson-the-ferocious-life-and-tragic-death-of-a-super-bowl-star-20121002.

19

the Hall of Fame center on several Pittsburgh Steelers championship teams died with CTE at age 50, after a rapid mental decline that, at times, left him homeless.[11]

Even those fortunate enough to survive through final approval may suffer significant hardship as a result of the delay. The neurocognitive diseases afflicting many class members are expensive to treat. A year of care for a dementia patient alone can cost between $42,000 and $56,000.[12] Until the settlement takes effect, class members must carry these costs themselves, a burden that is particularly heavy for the many NFL players who face financial difficulty in retirement.[13]

Thus, delaying review will have a real human cost. To allow the settlement to proceed to a fairness hearing only to have the matter reversed on appeal due to errors that can be addressed now would work a substantial unfairness on the class.

## CONCLUSION

This Court should grant review under Rule 23(f).

---

[11] Mark Fainaru-Wada & Steve Fainaru, *League of Denial* 83-105 (2013).

[12] Charles Zorumski & Eugene Rubin, *The Financial Cost of Dementia*, Psychology Today (Oct. 10, 2013), http://www.psychologytoday.com/blog/demystifying-psychiatry/201310/the-financial-cost-dementia.

[13] *See* Pablo S. Torre, *How (and Why) Athletes Go Broke*, Sports Illustrated (Mar. 23, 2009), (noting 78% of former NFL players are under financial strain within two years of retirement), http://sportsillustrated.cnn.com/vault/2009/03/23/105789480/how-and-why-athletes-go-broke.

July 21, 2014

Respectfully submitted,

[signature]

Steven F. Molo (NY 4221743)
*Counsel of Record*
Thomas J. Wiegand
Kaitlin R. O'Donnell
MOLOLAMKEN LLP
540 Madison Avenue
New York, NY 10022
(212) 607-8160 (telephone)
(212) 607-8161 (fax)
smolo@mololamken.com
twiegand@mololamken.com
kodonnell@mololamken.com

William T. Hangley
Michele D. Hangley
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square
18th & Cherry Streets
27th Floor
Philadelphia, PA 19103
(215) 496-7001 (telephone)
(215) 568-0300 (fax)
whangley@hangley.com
mdh@hangley.com

Linda S. Mullenix
2305 Barton Creek Blvd.
Unit 2
Austin, TX 78735
(512) 263-9330 (telephone)
lmullenix@hotmail.com

Martin V. Totaro
Eric R. Nitz
MOLO LAMKEN LLP
The Watergate, Suite 660
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 556-2000 (telephone)
(202) 556-2001 (fax)
mtotaro@mololamken.com
enitz@mololamken.com

*Counsel for Sean Morey, Alan Faneca, Ben Hamilton,*
*Robert Royal, Roderick Cartwright, Jeff Rohrer, and Sean Considine*

# CERTIFICATE OF COMPLIANCE

1.  This petition complies with the page limitation of Fed. R. App. P. 5(c) because it does not exceed 20 pages, exclusive of the disclosure statement, the proof of service, and the accompanying documents required by Rule 5(b)(1)(E).

2.  This petition complies with the typeface requirements of Fed. R. App. P. 32(c)(2) and 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point font.

July 21, 2014

Steven F. Molo

# CERTIFICATE OF BAR MEMBERSHIP

I certify, pursuant to Third Circuit Local Appellate Rules 28.3(d) and 46.1(e), that Steven F. Molo, Martin V. Totaro, William T. Hangley and Michele D. Hangley are members in good standing of the Bar of this Court.

July 21, 2014

_____

Michele D. Hangley

## CERTIFICATE OF SERVICE

I certify that today, July 21, 2014, the original and three copies of the foregoing Petition for Permission to Appeal were filed with the Clerk of the Court for the U.S. Court of Appeals for the Third Circuit. I also certify that one copy of the foregoing Petition was served by hand delivery or FedEx overnight delivery and electronic mail as indicated upon each of the following:

Christopher A. Seeger
SEEGER WEISS LLP
550 Broad Street, Suite 920
Newark, NJ 07102
(973) 639-9100 (telephone)
cseeger@seegerweiss.com

*Co-Lead Class Counsel*
**(Via Hand Delivery)**

Brad S. Karp
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3316
bkarp@paulweiss.com

*Counsel for NFL and NFL
Properties, LLC*
**(Via Hand Delivery)**

Sol Weiss
ANAPOL SCHWARTZ
1710 Spruce Street
Philadelphia, PA 19103
(215) 735-2098
sweiss@anapolschwartz.com

*Co-Lead Class Counsel*
**(Via Federal Express)**

Steven C. Marks
PODHURST ORSECK, P.A.
25 W. Flagler Street, Suite 800
Miami, FL 33130
(305) 358-2800
smarks@podhurst.com

*Class Counsel*
**(Via Federal Express)**

Gene Locks
LOCKS LAW FIRM
601 Walnut Street, Suite 720 East
Philadelphia, PA  19106
(215) 893-0100
glocks@lockslaw.com

*Class Counsel*
**(Via Federal Express)**

Arnold Levin
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA  19106
(877) 882-1011
alevin@lfsblaw.com

*Sub-Class Counsel*
**(Via Federal Express)**

Dianne M. Nast
NASTLAW LLC
1101 Market Street, Suite 2801
Philadelphia, PA  19107
(215) 923-9300
dnast@nastlaw.com

*Sub-Class Counsel*
**(Via Federal Express)**

July 21, 2014

_____
Michele D. Hangley