# EXHIBIT A

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 12-md-2323 (AB) <br><br> MDL No. 2323 |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,<br>       Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br>       Defendants. | **Hon. Anita B. Brody** |
| **THIS DOCUMENT RELATES TO:**<br>*Steven Smith, et al., v. National Football League, et al.,*<br><br>E.D. Pa. No. 2:12-cv-01027<br>S.D. Fla.: No. 11-cv-24594 | |

## DECLARATION OF STEVEN C. MARKS

   I, Steven C. Marks, am a partner at the law firm Podhurst Orseck, P.A. ("Podhurst"), and submit this declaration in support of Podhurst's response to Steven Smith's Notice of Joinder in the Estate of Kevin Turn's Motion to Resolve Attorney's Fee Dispute. I make this declaration based on my own personal knowledge, unless otherwise specifically stated.

   1.  In January 2012, Podhurst began representing Steven Smith in connection with his claim against the NFL for damages relating to head injuries, pursuant to the Authority to

Represent agreement attached to Smith's Notice of Joinder at Exhibit A. Smith terminated this relationship with Podhurst on July 19, 2016.

2.  During the four years that Podhurst represented Smith, Podhurst invested a substantial amount of time in Smith's individual case, with the knowledge that it would not receive any compensation for its time unless Smith prevailed on his claim. A few examples of the substantial work that Podhurst performed for Smith are described below.

3.  Podhurst attorneys and staff performed all tasks customary in the representation of a client in a personal injury case, including but not limited to, requesting and reviewing medical records, researching and investigating the potential claims against the NFL and the client's rights prior to commencing litigation, filing the Complaint and the Short Form Complaint, and keeping the client informed of the progress of the case.

4.  Podhurst attorneys and staff spoke with Smith and his wife on numerous occasions to discuss and advise them on his case and the settlement, and kept them informed of the progress of the litigation and appeals.

5.  Podhurst attorneys and staff answered questions the Smiths raised regarding other litigation involving the NFL and the NCAA to assist them in making a decision to pursue those actions.

6.  Podhurst attorneys and staff collected, organized, and reviewed Smith's medical records, in anticipation of filing a claim for a Monetary Award on his behalf and to assist him in connection with insurance liens.

7.  Podhurst commissioned and advised on the production of a "day in the life" video of Smith and his family, to document the overwhelming impact of ALS on his and his family's

lives. Such "day in the life" videos are usually used at trial and during settlement negotiations to support claims for damages.

8. Podhurst negotiated with lenders over the course of several months to obtain a substantial loan for Smith based on the expected value of his Monetary Award payment. These negotiations involved review of extensive loan documentation, hiring of outside counsel to assist in the preparation of a Power of Attorney acceptable to the financial institution, and assisting in the closing of the loan. The terms of the loan negotiated by Podhurst were significantly more favorable to Smith than the loans Smith and his family initially were considering. On information and belief, the Smiths signed, in connection with this loan, an Assignment of Interest document acknowledging Podhurst's claim to attorneys' fees in connection with Podhurst's representation of Smith in this litigation.

9. I spoke with Smith's wife on numerous occasions regarding fees for Podhurst's services. During these conversations, I explained that Podhurst expected to be paid for its common benefit work from the fees ultimately awarded by the Court, and that Podhurst would seek compensation for its work on Smith's case under the Authority to Represent and from Smith's Monetary Award. I tried to assure Smith and his wife that Podhurst would act fairly and reasonably in determining the appropriate fee percentage to seek under the Authority to Represent with Smith, and stated that Podhurst would reduce its fee from the percentage provided in the Authority to Represent. Podhurst has informed its clients in this litigation, including the Smiths, that it would not seek a fee in excess of 25% of a client's Monetary Award.

10. I specifically recall a conversation with Mrs. Smith where, in response to the Smiths' comments regarding "double-dipping," I explained that contractual work was separate and distinct from common benefit fees. I explained in detail the differences and stated to Mrs.

Smith that Podhurst would only seek a reasonable fee under the Authority to Represent, but under no circumstances would Podhurst waive its fee.

11.     During my calls with Mrs. Smith, I never stated that Podhurst would completely waive its contractual fees.   Specifically, when I spoke with Mrs. Smith on or about August 10, 2016, I never stated that Podhurst would not seek compensation for its time and work on Smith's individual case from his Monetary Award.

I declare under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746.

*/s/ Steven C. Marks*
Steven C. Marks

Executed on:  April 10, 2017