**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated, | No. 2:12-md-02323-AB |
| Plaintiffs, | MDL No. 2323 |
| v. | **Hon. Anita B. Brody** |
| National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc., | |
| Defendants. | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**REPLY TO RESPONSE IN OPPOSITION TO STEVEN SMITH'S NOTICE OF
JOINDER IN THE ESTATE OF KEVIN TURNER'S MOTION TO RESOLVE
ATTORNEY'S FEE DISPUTE**

Steven Smith replies to Podhurst Orseck, P.A.'s (Podhurst) Response (ECF No. 7465)

and Declaration of Steven C. Marks (ECF No. 7465-1) in opposition to Steven Smith's Notice of

Joinder (ECF No. 7365) in the Motion to Resolve Attorney's Fee Dispute (ECF No. 7029) filed

by the Estate of Kevin Turner.

**Introduction**

Throughout this controversy, Podhurst has failed to distinguish common benefit work

from work performed for the individual benefit of Steven Smith. Podhurst itself has repeatedly

made confusing statements to the Court as well as to Steven and Chie Smith. We will show that

Podhurst is not entitled to attorney's fees under their retainer agreement with Steven Smith due to a lack of services performed on behalf of Steven Smith, as well as the enforceability of the retainer agreement itself, and finally Podhurst's own statements which led Steven Smith to believe that no attorney's fees would be collected out of his award.

**Podhurst Offers No Evidence That It Invested Significant Time And Resources Representing Steven Smith On His Individual Claim**

**1. Collecting, Organizing and Reviewing Medical Records:** Podhurst could not have spent much time collecting, organizing and reviewing medical records on behalf of Steven Smith. Steven Smith's injury in this litigation is not like some of the other class members. He was diagnosed with ALS in 2002. There is no dispute as to whether he has been suffering from ALS since that date. There is no need to review symptoms. There is no need for Podhurst or any other individual to review Steven Smith's medical records other than to confirm the diagnosis. There is no cure for ALS and unfortunately little ambiguity with respect to the consequences of ALS. In addition, Podhurst's letter to Steven Smith dated February 1, 2013 (Attached as Exhibit I) requesting medical records and a completed questionnaire, belies its' own claim that it performed any work involving the collection, organization, or review of medical records on behalf of Steve Smith during the time between January 25, 2012 and February 1, 2013. The letter is Podhurst's own admission of not having received any medical records or a client information questionnaire from Steven Smith prior to that date. In fact, Chie Smith never completed the client questionnaire (Attached as Exhibit I-a), so again there was nothing to review. And, Chie Smith, not Podhurst, was responsible for collecting and organizing her husband's medical records and submitting them to Podhurst. Chie Smith, not Podhust, has maintained contact with Steven's physicians, Dr. Joseph Viroslav, Steven's current physician and Dr. Daragh Heitzman, Steven's neurologist who diagnosed ALS in 2002.  Podhurst offers no evidence of its' attorneys

or staff contacting any of Steven Smith's physicians although Podhurst claims to have done so. Furthermore, there is confirmation from both physicians' offices that they have not received any requests from Podhurst for any of Steven Smith's medical records (Attached as Exhibit J).

**2. Locating and Negotiating a Bank Loan:** Steven Marks claims that Podhurst negotiated with lenders (plural) over the course of several months to obtain a loan for Smith. However, Chie Smith states in her affidavit (Exhibit K) that she later discovered Co-Lead Counsel, Christopher Seeger, was in fact the party responsible for locating and negotiating the loan with Esquire Bank, not Podhurst. Steven Marks claims that negotiations involved review of extensive loan documentation, hiring of outside counsel to assist in the preparation of a POA acceptable to the bank and assisting in closing of the loan. Even if Podhurst performed administrative work on behalf of the Smiths in acquiring this loan, Steven Marks has not provided any evidence of time logs documenting the time spent reviewing documents and assisting in closing of the loan, an invoice from outside counsel or a copy of the POA which was prepared by outside counsel.

Furthermore, Podhurst's argument that the assignment of interest document (Exhibit L) in connection with Steven Smith's loan agreement with Esquire Bank is proof that Steven and Chie Smith acknowledged Podhurst's claim for compensation, has no merit. Nothing in the document speaks to the work Podhurst performed on behalf of the Smiths. Nothing in the document acknowledges Podhurst as the party which was responsible for locating and negotiating the loan on behalf of the Smiths. In fact, the document fails to identify and acknowledge Podhurst at all.

**3. Researching Potential Claims Against NFL:** Podhurst could not have spent much time on researching and investigating potential claims against the NFL on behalf of Steven Smith after January 25, 2012, the date of his retainer agreement with Podhurst. The complaint on behalf

of 99 players had already been filed 5 days earlier on January 20, 2012 encompassing all the claims for injuries suffered by these players. Steven Smith's injury, ALS, was already included in the complaint. Litigation on Steven Smith's injuries had already commenced upon the filing of the Complaint on January 20, 2012. Thus, it was easy to simply later add Steven Smith's name to the Complaint. On 1/20/12 Podhurst filed a complaint on behalf of 99 players. Steve Smith signed his retainer agreement with Podhurst on 1/25/12. Podhurst had already researched possible claims against NFL prior to filing their complaint on 1/20/12. No additional research of claims had to be performed on Steven Smith's behalf as an individual. Steven Smith was not included in the initial complaint filed on 1/20/12.

    **4. Day In The Life Video:** A Day in the Life video featuring Steven Smith was produced by Podhurst to benefit settlement class members as a whole and to benefit Podhurst in their role as Class Counsel. The video displayed a day in the life of Steven Smith, one of the most significantly disabled class members, to show the Court an example of how much players have suffered due to brain injury. Podhurst used Steven Smith as their poster child to benefit class members as a whole and highlight Podhurst's role and work as Class Counsel. The video was certainly not for the sole benefit of Steven Smith. The video was Podhurst's idea. Podhurst approached Steven and Chie Smith about participating in the video. In addition, Podhurst used Chie Smith and her role as a player's wife, caretaker and mother to benefit class members as a whole. Steven Marks also acknowledges in an email dated July 16, 2016 that Chie Smith served as an important voice for the retired families, which shows that both Steven and Chie Smith were used by Podhurst for the common benefit of the Class as a whole.

**Both Retainer Agreements Signed By Steven Smith and Chie Smith Are Relevant to the Court**

**5.**  In footnote 3 on page 4 of Podhurst's response, Podhurst claims the relevant agreement is the January 25, 2012 contract between Smith and Podhurst. However, the retainer agreement signed by Chie on February 1, 2012 is nearly identical to the contract signed by her on behalf of Steve Smith on January 25, 2012, except for one very relevant and dispositive difference related to this fee dispute which Podhurst tried to avoid with its response. The agreement signed on January 25, 2012 contains the following paragraph; otherwise the agreements are identical (ECF No. 7365 Exhibit A).

"Some of the claims may be presented as a class action. If any claims are certified as a class action and successfully resolved through a settlement or final judgment, the attorneys' fees and costs for those claims will be awarded by the Court or other tribunal. Such Court-awarded attorneys' fees and costs shall override the terms of this contract concerning attorneys' fees and costs with respect to those claims, and the client will not be responsible for the above -referenced 40% fee or additional 5% fee for any recovery on those claims. The client shall still be responsible for all attorneys' fees and costs applicable to any gross recovery for claims which are not certified as class action claims."

**6.**  This paragraph clearly indicates that if any claims are certified as a class action, any court-awarded attorneys' fees and costs shall override the terms of the contract and Podhurst shall not be entitled to collect the 40% fee or additional 5% fee out of the client's award. Both agreements together are relevant and significant in justifying Steven and Chie Smith's understanding that no attorney's fees would be taken out of Steven Smith's award by Podhurst. Further, contrary to Podhurst's claims, Podhurst never pointed out the difference in the retainer agreements to Steven or Chie Smith. Podhurst never distinguished its' representation between Steven Smith and Chie Smith when discussing settlement matters with Chie Smith. Similarly,

Podhurst never distinguished the two agreements.  In fact, the language in both agreements appear identical. Both agreements are entitled Authority to Represent. Both agreements refer to the client as an individual with a claim for damages against the NFL resulting from injuries sustained while a player in the NFL. There is no identification of Chie Smith as a player's spouse in her agreement. Only upon closer inspection and a trained eye, is it revealed that the paragraph below is missing from Steve Smith's agreement, but present in Chie Smith's agreement.

7.  The only copy of Steven's retainer agreement (ECF No. 7365 Exhibit A) the Smiths have received from Podhurst is a copy that is nearly illegible. She has asked Podhurst for a legible copy, but has failed to receive one. In addition, the retainer agreements were not signed in Miami, Fl where Podhurst is located. They were sent to Steven and Chie Smith at their home in Richardson, Texas. The agreements were not countersigned by James E. Doddo until May 15, 2012. It is uncertain who countersigned the agreements on behalf of Podhurst as the signature does not appear to be the signature for Ricardo M. Martinez-Cid when compared to Mr. Martinez-Cid's signature which appears on Kevin Turner's similar retainer agreement with Podhurst dated January 19, 2012 (ECF 7029 Exhibit A). It also remains uncertain as to the date Podhurst accepted both retainer agreements as the date of Podhurst's signature is left blank on both documents.  Due to all of the above reasons, both versions of the retainer agreement should be used to determine whether Podhurst is entitled to collect any fees from Steven Smith's award. As Steven Smith's claims are certified in a class action as contractually provided, and Podhurst has agreed to serve as Class Counsel with the approval of this Court, Podhurst is bound by its own retainer agreement in which they already agreed the client would not be responsible for the contingency fee percentages stated in their retainer agreement.

**Various Misstatements in Podhurst's Response**

**8.** Footnote 2 on page 4 of Podhurst's response (ECF No. 7465), refers to two other law firms, James E. Doddo, P.A. and Bradley K. Blank, Esq. as parties to Steven Smith's retainer agreement. While James E. Doddo's name does appear in Steven Smith's retainer agreements (ECF No. 7365 Exhibit A), Bradley K. Blank's name does not. The individual Bradley K. Blank is unknown to Steven and Chie Smith and is not a party to Steven Smith's Authority to Represent or any other document.

**9.** Podhurst claims that it sent a letter to Steven and Chie Smith notifying them of Podhurst's decision to reduce its' contingency fees to 25%, which would consist of $1.25Million as compared to $2Million based on a 40% contingency fee. However, no such letter was received by the Smiths and Podhurst has not provided a copy of such letter. Steven Marks himself acknowledges in his letter dated October 17, 2016 to Robert A. Penza, counsel to the Estate of Kevin Turner, (ECF No. 7029 Exhibit J), that "After having met with my partners this weekend, I can be more precise regarding our intentions with respect to the fee on Kevin's case. I can now assure you that we will not seek more than 25% of Kevin's monetary award for our fee under the Authority to Represent to which Kevin agreed. That is consistent with our intentions with respect to all of our clients in the concussion litigation" (ECF No. 7029 Exhibit J Page 3 Paragraph 3). Steven Marks' own statement confirms that Podhurst could not have notified Steven Smith nor their other clients of their decision to reduce their fees to 25% prior to the weekend before October 17, 2016, as that is when Podhurst made the decision to do so.  This time stamp makes it impossible for Steven Marks to claim that "Podhurst informed its clients in this litigation, including the Smiths, that it would not seek a fee in excess of 25% of a client's Monetary

Award" (ECF No. 7465-1 Paragraph 9) prior to the weekend before October 17, 2016, which is three months after Steven Smith elected to terminate his retainer agreement with Podhurst.

10. Steven Marks' declaration (ECF No. 7465-1) states that a complaint was filed on Steven Smith's behalf on January 20, 2012. To clarify this statement, Steven Smith's name was added to the complaint filed on January 20, 2012 after Steven Smith signed a retainer agreement with Podhurst on January 25, 2012. Prior to January 25, 2012, Steven Smith was not represented by Podhurst and he was not a party to the action.

11. Contrary to Podhurst's argument on page 5 of its' response (ECF No. 7465), Smith does not state in his own affidavit (ECF No. 7365-7) that Podhurst invested significant time and resources in his case. This statement is overreaching and misleading. In fact, Podhurst failed to provide any communication logs or evidence of time spent performing individual work for Steven Smith. In addition, Steven Smith received his affidavit pre-drafted by Podhurst with instructions to sign it. Stevne Smith made no changes to the affidavit and executed it in its original condition. Chie Smith arranged and paid a notary to travel to their home to notarize the signing of the document on April 15, 2016. Steven Smith was not aware of the significance of Podhurst's strategic use of the adjective "countless" in describing the number of meetings, telephone conferences and email exchanges Podhurst claims took place between Podhust and Steven and Chie Smith.  Clearly, Steven Smith is not physically able to engage in any meetings, telephone conferences and email exchanges with Podhurst.

12. In footnote 5 on page 7 of Podhurst's response (ECF No. 7465), Podhurst claims that Chie Smith misinterprets references to future work. Chie Smith does no such thing. Podhurst states that Stephen Rosenthal's email focuses on the additional work that Podhurst anticipated performing on behalf of Steven Smith; however, in Steven Smith's case, where ALS is the

qualifying diagnosis, there is no future work involving any risk or significant time involvement that can be reasonably anticipated. The process for receiving an award under the settlement involves registering with the claims administrator which according to Class Counsel takes only two minutes to complete, and submitting an application with a certified physician's diagnosis, all of which can easily be completed by Chie Smith on behalf of her husband. Podhurst also claims that it did not have any reason to address the work that it had already performed on Smith's behalf. This statement again avoids answering the question that Chie Smith repeatedly posed to Podhurst prior to terminating Steven Smith's retainer agreement.  This statement not only avoids the question but does not offer any evidence that any individual work was performed by Podhurst.

It is apparent that Podhurst's attempt to seek additional compensation for "future work" was intentional, since Podhurst knows it will already be richly compensated for its work through December 2016, by the pending fee petition submitted by Co-Lead Class Counsel requesting payment of $112.5 Million from the NFL Parties for all Class Counsel and certain other identified plaintiffs' counsel. Therefore, Podhurst is trying to justify securing additional compensation for their "future work" after December 2016. First, Podhurst was terminated as counsel in July 2016 by Steven Smith, so they will not be performing any "future work" for him. Second, even if Podhurst was not terminated, any "future work" to register Steven Smith and submit his monetary award claim, would not involve any risk justifying a "reduced" 25% contingency fee, as any future work would be clerical and administrative at best. Third, since Podhurst agreed to serve as Class Counsel under the terms of the Settlement Agreement, they are not permitted to seek an "additional fee" directly from a Class Member. Any "additional fee" for helping a Class Member to administer the claim process is to be paid, if at all, from class funds

approved by the Court. Podhurst's attempt to circumvent this Court's jurisdiction over Class
Counsel to insure that any and all fees they receive are fair and responsible, should not be
permitted.

**13.** In paragraph 11 of Steven Marks' declaration (ECF No. 7465-1), he claims that he
never stated that Podhurst would not seek compensation from Steven Smith's award when in fact
his final statement to Chie Smith in his August 10, 2016 phone conversation confirmed that he
would not be pursuing any further actions against them (Exhibit K).

**14.** Steven Marks is overreaching in his claim that Podhurst devoted itself to
representing Smith and pursuing his claim for four years, when in fact Podhurst represented
numerous other clients simultaneously, and after 2013 represented all class members in its' role
as Class Counsel. The first year of representation 2012-2013 was the only year Podhurst's
representation of Steven Smith did not overlap with its representation of the entire class as a
whole.  It has already been established earlier in this reply, that since January 25, 2012, the initial
signing of Steven Smith's retainer agreement with Podhurst, there was no substantial work
performed on behalf of Steven Smith as an individual client.

**15.** Podhurst claims Chie Smith expressed to an intermediary her interest in retaining
Podhurst and asked the intermediary to share her phone number with Podhurst. Chie Smith, in
her own affidavit (Exhibit K) states that she is unaware of any so-called intermediary. She states
that prior to receiving a phone call from Ricardo Martinez-Cid, who introduced himself as an
attorney at Podhurst, she had not heard of the firm Podhurst. Podhurst fails to identify this
intermediary and offers no evidence of the existence of such an intermediary. Steven Smith and
his wife Chie trusted Podhurst to act in their best interest as their attorney. They believed Steven
Marks' statements to them. Once Chie Smith asked Podhurst to confirm that no attorney's fees

would be taken out of Steven Smith's award, she received nothing but ambiguous responses to their questions. As a result, they no longer trusted their attorney and terminated their relationship with Podhurst on July 19, 2016.

16.   Podhurst paints a picture that it explained in detail the issue of "double-dipping", the difference between common benefit fees and individual fees that Podhurst always intended on collecting from Steven Smith's award. Steve Marks even claims that he expressed to Chie Smith that under no circumstances would Podhurst waive its fee. These claims are false and the fact that Steven Marks would make these claims under penalty of perjury eliminates any credibility on his part. In reality, it has been documented that Chie Smith repeatedly asked Podhurst in emails (ECF No. 7365 Exhibit D) to confirm her understanding that no attorney's fees would be taken out of Steven Smith's monetary award and that attorney's fees would be paid by the NFL. Podhurst repeatedly dodged answering this question when it could easily have offered a clear response just as Steven Marks so eloquently claimed in his declaration. Instead, Podhurst responded in each instance with ambiguous language that never answered the question in an effort to confuse the Smiths. How else can one explain Steven Marks failure to respond to Chie Smith's original email to Gina Palacio at Podhurst on July 7, 2016 (ECF No. 7365 Exhibit D) expressing concern and asking for confirmation of her understanding that Podhurst's fees will be paid out of the settlement, until his email of July 16, 2016. While in the meantime, Steven Marks who is unavailable as he is "out-of-the-country on extended business" and then as of July 14, 2016 is "out of internet range" manages to send out a lengthy mass email on July 15, 2016 to all of its clients (ECF No. 7365 Exhibit D-6), but does not respond to Chie. On July 14, 2016, Stephen Rosenthal, a partner at Podhurst sends an email (ECF No. 7365 Exhibit D-5) to Chie in response to Chie's question from July 7, 2016; however, he fails to answer Chie's question. Mr.

11

Rosenthal clearly indicates that he understands Chie's questions when he states, "I know both of you have asked today about the contract with our firm and the attorney's fees." Nevertheless, he replies "The short answer to your question about whether we have been paid any fees yet is no," and continues to inform Chie that Podhurst hopes to get paid a fee for its contribution on behalf of all class members. Clearly, this is not what Chie asked, but it does clearly distinguish class fees from individual fees. He then goes on to specifically discuss individual fee contracts with clients and states "you are not alone in asking the important question of how the fee for future work done on behalf of individual clients will be handled".

There is no confusion here. Mr. Rosenthal is clearly identifying individual fee contracts and relating the fees associated with these contracts to future work "which will include things like preparing the client's paperwork for the BAP process, making the case for the maximum possible payout applicable to each case on the settlement grid, advising the client and dealing with any medical experts through that process, and handling any objections or appeals of the individual case that may be necessary."  He continues to state "We fully anticipate that the fee percentage that will be established as the appropriate rate for the additional work we will do for each client's individual case, to actually secure your monetary recovery, will be less than the percentage stated in our contracts that were written 5-6 years ago. Obviously, those contracts were written long before we had any idea how the litigation would shape up or conclude, that there would be a global settlement (as opposed to individual trials) or that there would be this BAP process."  The Court cannot ignore the precise representations in this email which are consistent with Steven and Chie Smith's understanding as to their retainer agreements all along.

Contrary to Steven Marks' claims, Chie Smith did not misinterpret Stephen Rosenthal's references to future work at all. Chie Smith correctly interpreted his references to future work as the work that would entitle Podhurst to attorney's fees under Steven Smith's retainer agreement.

Moreover, Chie Smith relied on additional conversations with Steven Marks to confirm her understanding that no attorney's fees would be taken out of her husband's award. Steven Marks own email to Chie Smith on July 16, 2016 at 10:34am (ECF No. 7365 Exhibit D-9) makes reference to working out a fair and reasonable solution regarding the collection of fees Steven Smith's award "once we have clarity on fees." Steven Marks continues to explain that the Court has not set aside money for fees and not a penny has been awarded by the Court. His remarks in this email to Chie Smith completely contradict his claims in paragraph 9 of his declaration (ECF No. 7465-1) that he "explained that Podhurst expected to be paid for its common benefit work from the fees ultimately awarded by the Court, and that Podhurst would seek compensation for its work on Smith's case under the Authority to Represent and from Smith's Monetary Award." Steven Marks never stated that Podhurst would in fact collect any fees from Steven Smith's award. Instead, he danced around the issue, never providing Chie Smith with a clear response.

## Conclusion

**17.** Contrary to what Podhurst would like the Court to believe, if the Court denies our motion to preclude the collection of attorney's fees from Steven Smith's award, such a ruling will not enable the parties to work out privately an agreement as to a reasonable fee based on the existence of facts which should preclude any recovery of attorney's fees from Steven Smith's award. Podhurst will use a denial of our motion as leverage to strong arm their position and force Steven Smith to negotiate with them. Podhurst has demonstrated through their own actions in

this dispute that they cannot be relied upon to establish what constitutes a fair and reasonable fee when they refuse to acknowledge facts which preclude a recovery in this case.

**18.**   In addition, we ask that the Court recognize the significance of Co-Lead Counsel, Christopher Seeger's decision to waive the collection of fees on all of his retainer agreements with individual clients in light of the fact that he will receive compensation for his services from a portion of the $112.5 Million in Class Counsel attorneys' fees paid by the NFL. It may be appropriate for the Court to evaluate the actions of other Class Counsel who similarly signed clients to individual retainer agreements and will also share in a portion of the $112.5 Million in attorneys' fees paid by the NFL.

**19.**   Finally, we pray the Court grant our motion precluding individual attorney's fees based on the fact that Podhurst provided no proof of individual work performed on behalf of Steven Smith, Podhurst itself acknowledged that Podhurst will only collect fees for future work under their individual retainer agreements, and lastly, that Steven Smith's retainer agreements themselves, preclude a recovery of attorney's fees by Podhurst.

Respectfully submitted,

__/s/*Catherina Watters*_____
Catherina Watters (Admitted *pro hac vice* CA 206317)
**Catherina Watters, Attorney at Law**
P.O. Box 2252
Orinda, CA 94563
Tel: (321) 278-7237
Fax: (407) 351-5159
catherina@changwatters.com


Joe H. Tucker, Jr. (PA 56617)
Kevin L. Golden (PA 94210)
**Tucker Law Group**
Ten Penn Center

1801 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: (215) 875-0609
Fax: (215) 559-6209
jtucker@tlgattorneys.com
kgolden@tlgattorneys.com


ATTORNEYS FOR STEVEN ANTHONY SMITH

**CERTIFICATE OF SERVICE**

I, Kevin L. Golden, hereby certify that a copy of the foregoing document was filed through the Court's ECF system on April 20, 2017, and that such filing generates a notice of filing that constitutes service on all counsel of record.

/s/ Kevin L. Golden
Kevin L. Golden