# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>           Plaintiffs,<br><br>           v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>           Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**CO-LEAD CLASS COUNSEL'S CONSOLIDATED MEMORANDUM (1) IN SUPPORT OF THEIR MOTION TO STRIKE OR DISREGARD THE ALEXANDER OBJECTORS' UNAUTHORIZED SUR-REPLY OR, IN THE ALTERNATIVE, TO ACCEPT CLASS COUNSEL'S SUR-SURREPLY; AND (2) IN OPPOSITION TO THE ALEXANDER OBJECTORS' MOTION FOR LEAVE TO SERVE DISCOVERY**

# <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ................................................................................................. 1

II.  THE COURT SHOULD EITHER STRIKE OR DECLINE TO CONSIDER THE
     ALEXANDER OBJECTORS' UNAUTHORIZED "RESPONSE AND OBJECTION" ...... 3

   A.  The "Response and Objection" Is an Unauthorized Sur-Reply ........................... 3

   B.  In the Alternative, the Court Should Accept Class Counsel's Substantive
       Response to the Alexander Objectors' Latest Arguments So That Class
       Counsel Are Not Prejudiced by the Alexander Objectors' Having the Last
       Word on the Petition ...................................................................................... 8

      1.  Class Plaintiffs' Expert's Valuation of the Settlement Is Based Upon Sound
          Actuarial Principles and Underlying Facts That This Court Previously Found ........... 8

      2.  Court-Appointed Lead Class Counsel Typically Make Allocations Among
          Those Firms That Performed Common Benefit Work ................................................. 12

III. THE COURT SHOULD REJECT THE ALEXANDER OBJECTORS'
     ELEVENTH-HOUR BID FOR FEE PETITION-RELATED DISCOVERY ..................... 15

IV.  CONCLUSION ................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*16 Front St. LLC v. Miss. Silicon, LLC*,
    162 F. Supp. 3d 558 (N.D. Miss. 2016) ....................................................................... 7

*Adams v. U.S. EEOC*,
    932 F. Supp. 660 (E.D. Pa. 1996) ............................................................................. 4

*Avaya, Inc. v. Telecom Labs, Inc.*,
    No. 06-2490, 2016 WL 223696 (D.N.J. Jan. 19, 2016) ....................................... 15, 16

*Charlton v. Werfel*,
    No. 2:13-05236 WJM, 2014 WL 2765718 (D.N.J. June 18, 2014) ........................... 5

*EMC Corp. v. Pure Storage, Inc.*,
    154 F. Supp. 3d 81 (D. Del. 2016) ........................................................................... 5

*Fulk v. Norfolk S. Ry. Co.*,
    35 F. Supp. 3d 749 (M.D.N.C. 2014) ....................................................................... 7

*Garcia v. Biter*,
    195 F. Supp. 3d 1131 (E.D. Cal. 2016) ..................................................................... 5

*Glass v. Lahood*,
    786 F. Supp. 2d 189 (D.D.C. 2011), *aff'd*, No. 11-5144, 2011 WL 6759550
    (D.C. Cir. Dec. 8, 2011) ........................................................................................... 5

*In re Capital One Tel. Consumer Prot. Act Litig.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015), *appeals dismissed*, Nos. 15-1514
    (7th Cir. May 5, 2015), 15-1546 (June 8, 2015), 15-1400, 15-1586, 15-1639
    (June 26, 2015) ....................................................................................................... 16

*In re Diet Drugs Prods. Liab. Litig.*,
    MDL No. 1203, 2002 WL 32154197 (E.D. Pa. Oct. 3, 2002) ................................. 13

*In re Fine Host Corp. Secs. Litig.*,
    No. 3:97-CV-2619 JCH, 2000 WL 33116538 (D. Conn. Nov. 8, 2000) ................. 19

*In re Indigo Secs. Litig.*,
    995 F. Supp. 233 (D. Mass. 1998) ........................................................................... 13

*In re Jamuna Real Estate, LLC*,
    392 B.R. 149 (Bankr. E.D. Pa. 2008) ..................................................................... 9

*In re Linerboard Antitrust Litig.*,
    No. MDL 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004) .................................................. 13

*In re Linerboard Antitrust Litig.*,
    No. MDL 1261, 2010 WL 3928638 (E.D. Pa. Oct. 5, 2010)................................................... 15

*In re NFL Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016)................................................................................................. 12

*In re NFL Players' Concussion Injury Litig.*,
    307 F.R.D. 351 (E.D. Pa. 2015).............................................................................. 7, 9, 10, 12

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998)................................................................................................. 13

*In re Safety Components, Inc. Sec. Litig.*,
    166 F. Supp. 2d 72 (D.N.J. 2001) ........................................................................................ 18

*In re Vitamin Cases*,
    No. 301803, 2004 WL 5137597 (Cal. Super. Ct. S.F. Cnty. Apr. 12, 2004)........................... 13

*In re Vitamins Antitrust Litig.*,
    398 F. Supp. 2d 209 (D.D.C. 2005) ..................................................................................... 14

*Jasper v. C.R. England, Inc.*,
    No. 08-5266-GW(CWX), 2014 WL 12577426 (C.D. Cal. Nov. 3, 2014) .............................. 18

*KDH Elec. Sys., Inc. v. Curtis Tech. Ltd.*,
    826 F. Supp. 2d 782 (E.D. Pa. 2011) .................................................................................... 9

*Laborers' Local Union Nos. 472 & 172 v. Buckler Assocs.*,
    No. 12-7119, 2013 WL 353441 (D.N.J. Jan. 29, 2013)........................................................... 5

*Lacher v. West*,
    147 F. Supp. 2d 538 (N.D. Tex. 2001) .................................................................................. 5

*Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*,
    875 F. Supp. 2d 791 (W.D. Tenn. 2012)................................................................................ 5

*Loudermilk Servs., Inc. v. Marathon Petroleum Co.*,
    623 F. Supp. 2d 713 (S.D.W. Va. 2009)............................................................................... 18

*Malchman v. Davis*,
    588 F. Supp. 1047 (S.D.N.Y. 1984), *aff'd as modified on other grounds*,
    761 F.2d 893 (2d Cir. 1985)................................................................................................ 17

*Martucci v. Procter & Gamble, Inc.*,
    No. 15-4434 (JLL), 2016 WL 1408277 (D.N.J. Apr. 11, 2016)............................................... 4

*Mattern v. City of Sea Isle*,
   131 F. Supp. 3d 305 (D.N.J. 2015), *aff'd*, 657 F. App'x 134 (3d Cir. 2016) ............................ 4

*Metz v. United Ctys. Bancorp*,
   61 F. Supp. 2d 364 (D.N.J. 1999) .............................................................................. 4

*Moore v. GMAC Mortgage*,
   No. 07-4296, 2014 WL 12538188 (E.D. Pa. Sept. 19, 2014) .................................................. 18

*Osei v. Univ. of Maryland Univ. Coll.*,
   202 F. Supp. 3d 471 (D. Md. 2016), *remanded*, ___ F. App'x ___,
   No. 16-2074, 2017 WL 838275 (4th Cir. Mar. 3, 2017)......................................................... 5, 7

*Pepper v. United States*,
   562 U.S. 476 (2011).............................................................................................. 9

*Prall v. Bocchini*,
   No. 10-1228 (JBS-KMW), 2016 WL 1222263 (D.N.J. Mar. 29, 2016)...................................... 5

*QVC, Inc. v. OurHouseWorks, LLC*,
   No. 12-2871, 2016 WL 7491636 (E.D. Pa. Dec. 30, 2016), *appeal filed*,
   No. 17-1237 (3d Cir. Jan. 31, 2017) .......................................................................... 9

*Schiller v. David's Bridal, Inc.*, No. 1:10-CV-00616-AWI,
   2012 WL 2117001 (E.D. Cal. June 11, 2012) ................................................................ 19

*Turner v. Murphy Oil USA, Inc.*,
   472 F. Supp. 2d 830 (E.D. La. 2007).......................................................................... 18

*Valido-Shade v. Wyeth LLC*,
   57 F. Supp. 3d 457 (E.D. Pa. 2014) .......................................................................... 8

*Venuto v. Carella, Byrne, Bain, Gilfillan, Cecchi & Stewart, P.C.*,
   11 F.3d 385 (3d Cir. 1993)..................................................................................... 5

*Warfield v. SEPTA*,
   No. 10-3023, 2011 WL 1899343 (E.D. Pa. May 19, 2011), *aff'd*,
   460 F. App'x 127 (3d Cir. 2012)............................................................................ 4, 5

*Warrior Energy Servs. Corp. v. ATP Titan M/V*,
   551 F. App'x 749 (5th Cir. 2014) ............................................................................ 5

*Williams v. CVS Caremark Corp.*,
   No. 15-5773, 2016 WL 4409190 (E.D. Pa. Aug. 18, 2016) .................................................. 4

*Wright ex rel. Trust Co. of Kan. v. Abbott Labs.*,
   62 F. Supp. 2d 1186 (D. Kan. 1999), *aff'd*, 259 F.3d 1226 (10th Cir. 2001) ............................ 5

**Rules**

Fed. R. Evid. 702 ................................................................................................................. 8

## I.  <u>INTRODUCTION</u>

Eleven days after the briefing of Class Counsel's fee petition was completed, the Alexander Objectors[1] unilaterally reopened it with a double-barreled volley that continues their unrelenting opposition to the petition.  They filed a brief couched as their "Response and Objection" to Class Counsel's reply papers (ECF No. 7533) ("Resp. & Obj.").  That brief was accompanied by a putative expert declaration (ECF No. 7533-1).  Concurrently, the Alexander Objectors filed a motion for leave to serve Rule 34 document production requests on Class Counsel (ECF No. 7534) ("Mot.").

As to the first filing – the so-called Response and Objection – the Court should either strike it or, alternatively, refuse to consider it.  The brief is a poorly-disguised sur-reply that the Alexander Objectors never sought leave to file.  Courts routinely strike or disregard unauthorized sur-replies such as this.  Nor is there any valid reason to allow it.  Courts disfavor sur-replies because they are usually an attempt by the opponent to a motion to have the final say, and the Alexander Objectors' brief is a textbook example of such abuse.  It rehashes all of the key points that they have raised in opposition to the fee petition – including arguments about the Settlement's valuation, whether a multiplier on Class Counsel's lodestar is appropriate, and whether the Court should adopt the requested 5% set-aside.  Allowing this unsanctioned sur-reply would improperly give the Alexander Objectors the last word on Class Counsel's petition.  *See* Section II.A, *infra*.

If the Court does not strike or decline to consider the sur-reply, Class Counsel respectfully request that the Court accept, as their sur-surreply, the substantive response to the

---

[1]   This memorandum adopts the shorthand definitions employed in Co-Lead Class Counsel's opening and reply memoranda in support of their fee petition (ECF Nos. 7151-1, 7464).  Citations to docketed filings are to the ECF pagination.

Alexander Objectors' arguments that is set forth Section II.B of this memorandum.  As discussed in that section, notwithstanding their denials, the Alexander Objectors' challenges to the methodology of Class Counsel's actuarial expert are backdoor attacks on the Settlement's compensation scheme, which this Court and the Third Circuit have already rejected.  This Court specifically found that Qualifying Diagnoses of Level 1.5 and Level 2 Neurocognitive Impairment correspond to standardized dementia diagnoses drawn from well-established medical sources.  Thus, Class Counsel's expert's projection as to how much is likely to be paid out in monetary awards under the 65-year term of the Settlement has an eminently sound basis.  *See* Section II.B, *infra*.

The Alexander Objectors' remaining contentions are a repetition of the vacuous evidentiary objections they asserted with respect to Class Counsel's opening papers (namely, that supporting declarations are "conclusory" and lacking in foundation), stubborn insistence that Class Counsel are entitled only to their lodestar (which they maintain, without basis, is insupportable), opposition to the proposed 5% set-aside, and opposition to the proposed delegation of the initial allocation of common benefit fees to Co-Lead Class Counsel.  None of this is a basis for denial of the petition.  *See id*.

As to the companion filing, the Court should reject the Alexander Objectors' untimely request for leave to take discovery.  This Court has generally disfavored discovery in the fee petition context.  Nor is there a legitimate need for discovery at this late stage.  Class Counsel have furnished ample information in support of their petition (including more than two dozen declarations, among which are two extensive declarations from Co-Lead Class Counsel), and the Court is well acquainted with the history of this litigation and the prodigious efforts of Class Counsel to secure this groundbreaking settlement and then defend it against a band of diehard

objectors, among whom were the Alexander Objectors.  The Court thus has a full record before it and is in a position to make an informed determination on the petition.  Moreover, the Alexander Objectors have already had ample opportunity to contest it.  Discovery would serve no purpose other than to unnecessarily prolong these proceedings.  *See* Section III, *infra*.

## II.  THE COURT SHOULD EITHER STRIKE OR DECLINE TO CONSIDER THE ALEXANDER OBJECTORS' UNAUTHORIZED "RESPONSE AND OBJECTION"

### A.  The "Response and Objection" Is an Unauthorized Sur-Reply

The Court should strike or, in the alternative, decline to consider the Alexander Objectors' self-styled "Response and Objections," including the declaration of their asserted expert, because their April 21st submission is an obvious sur-reply to Class Counsel's fee petition reply papers and the Court did not authorize its filing.

In accordance with the Court's March 8, 2017 Order (ECF No. 7261), on April 10, 2017, Co-Lead Class Counsel filed their omnibus reply papers (which responded to the objections to their February 13th opening papers and to the three objector cross-petitions for fees) (ECF No. 7464).   Neither the Federal Rules of Civil Procedure nor this District's Local Rules provide for sur-reply filings, and this Court's March 8th Order certainly conferred no right on any objector to file one.  Moreover, this Court's individual Policies and Procedures make clear that sur-replies may be filed *only* with the Court's permission.  *See* http://www.paed.uscourts.gov/documents/procedures/bropol.pdf.

The Alexander Objectors did not request, let alone obtain, the Court's permission before filing their brief.  Instead, on April 21, they unilaterally filed their "Response and Objection" (ECF No. 7533).  No matter what they formally labelled their brief, it is of no moment.  Even a cursory reading leaves no genuine doubt that it is a sur-reply.  The brief does much more than merely assert evidentiary arguments.  It renews attacks on the valuation of the Settlement (for

3

which the Alexander Objectors proffer a declaration from another putative expert to refute

certain assumptions of Class Counsel's expert economist, Dr. Thomas Vasquez), the appropriate

methodology governing Class Counsel's petition (*i.e.*, whether it is proper to evaluate the

requested fees as a percentage of the recovery or whether Class Counsel are entitled only to their

lodestar), the reasonableness of Class Counsel's lodestar, whether a multiplier is warranted, and

the requested 5% holdback on monetary awards (including the argument that all future common

benefit work over the coming 65 years should be funded out of the $112.5 million Attorneys'

Fees Qualified Settlement Fund). *See* Resp. & Obj. at 1-11; Declaration of Jamshid Lotfi, M.D.,

FRCP (London) (ECF No. 7533-1) ("Lotfi Decl.") at ¶¶ 2-6.

There is no reason to allow any of this. The Alexander Objectors have already had their

say concerning Class Counsel's fee application and set-aside request – filing a 59-page brief in

opposition to the petition (ECF No. 7355), along with a putative expert declaration that disputed

the Settlement's value (ECF No. 7355-1). Thus, they have been fully heard in this matter. They

cannot go on mounting relentless attacks on Class Counsel's fee petition and, even worse,

slipping in the final word and additional evidence after the completion of briefing under the

guise of asserting endless "objections" of one sort or another.   Enough is enough.

This and other courts in this Circuit have routinely struck or refused to consider

unauthorized sur-replies. *E.g.*, *Adams v. U.S. EEOC*, 932 F. Supp. 660, 663 (E.D. Pa. 1996);

*Williams v. CVS Caremark Corp.*, No. 15-5773, 2016 WL 4409190, at *3 (E.D. Pa. Aug. 18,

2016); *Warfield v. SEPTA*, No. 10-3023, 2011 WL 1899343, at *1 n.2 (E.D. Pa. May 19, 2011),

*aff'd*, 460 F. App'x 127 (3d Cir. 2012); *Mattern v. City of Sea Isle*, 131 F. Supp. 3d 305, 312-13

(D.N.J. 2015) (citing cases), *aff'd*, 657 F. App'x 134 (3d Cir. 2016); *Metz v. United Ctys.*

*Bancorp*, 61 F. Supp. 2d 364, 382 (D.N.J. 1999); *Martucci v. Procter & Gamble, Inc.*, No. 15-

4434 (JLL), 2016 WL 1408277, at *1 n.1 (D.N.J. Apr. 11, 2016); *Prall v. Bocchini*, No. 10-1228 (JBS-KMW), 2016 WL 1222263, at *4 n.2 (D.N.J. Mar. 29, 2016); *Charlton v. Werfel*, No. 2:13-05236 WJM, 2014 WL 2765718, at *2 (D.N.J. June 18, 2014); *Laborers' Local Union Nos. 472 & 172 v. Buckler Assocs.*, No. 12-7119, 2013 WL 353441, at *6 n.2 (D.N.J. Jan. 29, 2013); *see also Venuto v. Carella, Byrne, Bain, Gilfillan, Cecchi & Stewart, P.C.*, 11 F.3d 385, 388 & n.1 (3d Cir. 1993) (where district court refused to consider sur-reply memorandum, Court of Appeals granted motion to strike portions of appendix presenting excluded memorandum and supporting attachments).   The Court should do likewise with the Alexander Objectors' unsanctioned submission.

Indeed, this and other federal courts universally recognize that sur-replies are disfavored. *E.g.*, *Warrior Energy Servs. Corp. v. ATP Titan M/V*, 551 F. App'x 749, 751 n.2 (5th Cir. 2014); *Osei v. Univ. of Maryland Univ. Coll.*, 202 F. Supp. 3d 471, 479 n.6 (D. Md. 2016), *remanded on other grounds*, ___ F. App'x ___, No. 16-2074, 2017 WL 838275, at *1 (4th Cir. Mar. 3, 2017); *Garcia v. Biter*, 195 F. Supp. 3d 1131, 1133-34 (E.D. Cal. 2016) (citing cases); *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 103 (D. Del. 2016); *Glass v. Lahood*, 786 F. Supp. 2d 189, 231 (D.D.C. 2011), *aff'd*, No. 11-5144, 2011 WL 6759550 (D.C. Cir. Dec. 8, 2011); *Wright ex rel. Trust Co. of Kan. v. Abbott Labs.*, 62 F. Supp. 2d 1186, 1187 n.1 (D. Kan. 1999), *aff'd*, 259 F.3d 1226 (10th Cir. 2001); *Warfield v. SEPTA*, 2011 WL 1899343, at *1 n.2.  And for good reason:  "As many courts have noted, [s]ur-replies . . . usually are a strategic effort by the nonmoving party to have the last word on a matter."  *Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*, 875 F. Supp. 2d 791, 797 & n.19 (W.D. Tenn. 2012) (citing cases; internal quotation marks omitted); *accord Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001).  That is precisely what the Alexander Objectors have done here through the subterfuge of

filing a post-reply Response and Objection that restates sundry arguments in opposition to Class Counsel's petition.

Nor can the Alexander Objectors genuinely excuse their unauthorized filing by claiming that Class Counsel adduced "supplemental" evidence with their reply papers.  *See* Resp. & Obj. at 1.  That evidence addressed only two discrete areas.

*First*, Class Counsel provided additional detail as to the work on behalf of the Class that lies ahead over the coming 65 years of the Settlement's duration.  ECF No. 7464-1 (Seeger Suppl. Decl. ¶¶ 14-38).  But that is relevant to the request for the 5% set-aside on monetary awards, *not* the $112.5 million common benefit fee and expense request on which the sur-reply principally focuses and which is the sole focus of the Alexander Objectors' new expert.

*Second*, although Class Counsel submitted an updated valuation report from Dr. Vasquez (ECF No. 7464-12 [Seeger Suppl. Decl., Ex. JJ]), that was in order to address the Faneca Objectors' inflated value *of the post-Fairness Hearing modifications to the Settlement*.  *See* ECF No. 7464, at 53-54 & n.36.  Otherwise, Dr. Vasquez' updated report contained nothing new, save an upward projection of the Settlement's value in light of a higher Class Member participation rate than what he had previously forecast, based upon data relating to the first two months of the registration period.  *See* ECF No. 7464-12, at 4.  Indeed, his report incorporated his February 2014 report in support of preliminary approval and his November 2014 declaration in support of final approval.  ECF No. 7464-12, at 11-98 (Vasquez Report, Exs. 1-2).

The Alexander Objectors used the submission of Dr. Vasquez' updated report as a pretext to call into question the original estimates of the Settlement's value and whether it will be "successful" (Resp. & Obj. at 5).  That is water long under the bridge inasmuch as the Court already determined the Settlement's fairness, reasonableness, and adequacy, including its

projected value; addressed the very sort of challenges to the Levels 1.5 and 2.0 Neurocognitive Impairment Qualifying Diagnoses that the Alexander Objectors raise; and the Court specifically took Dr. Vasquez' opinions into account in its analysis. *See In re NFL Players' Concussion Injury Litig.*, 307 F.R.D. 351, 395-423 (E.D. Pa. 2015), *aff'd*, 821 F.3d 410 (3d Cir. 2016); ECF No. 6423-21 (Dr. Vasquez' declaration in support of final approval, filed Nov. 12, 2014).

Simply stated, these two limited evidentiary submissions did not confer license on the Alexander Objectors to have the final say and rehash their various attacks on Class Counsel's fee application, and to even assert indirect challenges to the Settlement itself (by adducing an expert declaration in order to question the extent to which Class Members can truly ever expect to see monetary compensation). Where, as here, reply papers merely responded to matters placed in issue by an opposition brief and did not spring new arguments upon an opposing party, there is no basis for allowing a sur-reply. *E.g.*, *Osei*, 202 F. Supp. 3d at 479 n.6 (denying leave to file sur-reply where defendants did not raise new legal theories or arguments for the first time in their reply brief); *16 Front St. LLC v. Miss. Silicon, LLC*, 162 F. Supp. 3d 558, 561 (N.D. Miss. 2016) (denying leave where reply "either address[ed] arguments in Plaintiffs' response brief or provide[d] additional support for arguments raised in the initial brief and motion"); *Fulk v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 749, 752-53 n.1 (M.D.N.C. 2014) (denying leave where "Plaintiffs ha[d] not identified any of the arguments or issues they contend[ed] were raised for the first time in Defendants' reply," and "the reply was limited to addressing issues raised by Plaintiffs in their response brief").

In sum, the Court should strike or refuse to consider this unauthorized sur-reply filing.

**B. In the Alternative, the Court Should Accept Class Counsel's Substantive Response to the Alexander Objectors' Latest Arguments So That Class Counsel Are Not Prejudiced by the Alexander Objectors' Having the Last Word on the Petition**

If the Court declines to strike or to not consider the Response and Objection, Class Counsel respectfully request that it accept this substantive sur-surreply response so that Class Counsel are not prejudiced by the Alexander Objectors' having the final written word on Class Counsel's fee petition. As discussed below, the Alexander Objectors' latest arguments are as meritless as everything else they previously asserted in opposition to the petition.

**1. Class Plaintiffs' Expert's Valuation of the Settlement Is Based Upon Sound Actuarial Principles and Underlying Facts That This Court Previously Found**

The Alexander Objectors incredibly claim that their so-called "methodology challenge" concerning the analysis conducted by Dr. Vasquez "is not a challenge to the Settlement." Resp. & Obj. at 5. Plainly, it is.

The Alexander Objectors attack Dr. Vasquez' life cycle forecasting model and ultimate valuation of the Settlement because, they claim, there are no historical disease incidence rates that can be used to predict incidence rates for the Qualifying Diagnoses of Level 1.5 and Level 2 Neurocognitive Impairment. Specifically, relying upon their asserted expert, Dr. Jamshid Lotfi, a neurologist,[2] the Alexander Objectors assert that incidence data for dementia used by Dr. Vasquez "are not reliable sources for predicting how many former players will have Level 1.5 or Level 2 diagnoses under the Settlement Agreement." Lotfi Decl. at ¶ 5; *see* Resp. & Obj. at 3-4.

_____

[2] The Alexander Objectors ironically seek to have Dr. Vasquez' opinion stricken under Fed. R. Evid. 702 and *Daubert* – whose applicability in the fee petition context is doubtful (*see* ECF No. 7464, at 17 n.8) – when they have not even proffered an expert in Dr. Vasquez' field of expertise. Notably, Dr. Lotfi avers that his opinions are to a "reasonable degree of medical probability," not a reasonable degree of medical *certainty*. *See Valido-Shade v. Wyeth LLC*, 57 F. Supp. 3d 457, 461 (E.D. Pa. 2014) (expert who opined to reasonable degree of medical probability "does not meet Pennsylvania's requisite level of certitude" for "a viable expert opinion").

What the Alexander Objectors ignore, however, is that the appropriateness of reliance upon dementia diagnoses and data already was a matter determined by this Court and the Third Circuit and thus is the law of the case. *KDH Elec. Sys., Inc. v. Curtis Tech. Ltd.*, 826 F. Supp. 2d 782, 801 n.17 (E.D. Pa. 2011) ("The [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.") (citing *Pepper v. United States*, 562 U.S. 476, 506 (2011)); *see also In re Jamuna Real Estate, LLC*, 392 B.R. 149, 169 (Bankr. E.D. Pa. 2008) (law of the case doctrine "applies equally to factual findings" as it does to conclusions of law); *QVC, Inc. v. OurHouseWorks, LLC*, No. 12-2871, 2016 WL 7491636, at *3 (E.D. Pa. Dec. 30, 2016) (same), *appeal filed*, No. 17-1237 (3d Cir. Jan. 31, 2017).

What underpins the Alexander Objectors' criticism of Dr. Vasquez' analysis and valuation is their expert's assertion that Level 1.5 and Level 2 Neurocognitive Impairment are not recognized in medical literature or studies. Lotfi Decl. at ¶ 4; *accord* Resp. & Obj. at 2 ("These Qualifying Diagnoses are creations exclusively of and defined entirely by the Settlement. Neither a Level 1.5 nor a Level 2 neurocognitive disorder appear in published literature, research or even a medical textbook."). That is unavailing.

Over two years ago, in connection with final approval, this Court was presented with "affidavits from eight physicians indicating that they [were] 'not aware of the use of the diagnostic or classification categories' of Levels 1, 1.5 and 2 Neurocognitive Impairment anywhere in the medical community." *In re NFL Players' Concussion Injury Litig.*, 307 F.R.D. at 404 n.61. This Court, though, determined that fact to be "irrelevant" because "[a]lthough the precise terms are unique to the Settlement, the levels of impairment they represent are well established." *Id.* Thus, the Alexander Objectors present nothing new – they simply recycle the

same arguments presented by *others* in opposition to final approval under the guise of an opposition to the fee request.

The Alexander Objectors also contend that Dr. Vasquez allegedly "grossly overestimate[s] the number of likely participants in the Settlement"[3] because, according to Dr. Lotfi, there are allegedly "lower requirements for a dementia diagnosis."  Resp. & Obj. at 3; Lotfi Decl. at ¶ 6.  Again, this Court heard this argument previously, from *others*, and rejected it. In the face of objections that the Qualifying Diagnosis criteria were assertedly "unreasonably high" and would "prevent the compensation of many Retired Players whom physicians typically would diagnose with dementia," this Court held that such concerns were "misguided" because the "cognitive and functional cutoffs are drawn directly from well-established sources."  *In re NFL Players' Concussion Injury Litig.*, 307 F.R.D. at 403.  Thus, the Alexander Objectors' contention that Dr. Vasquez overestimated the value of the Settlement because he based his projections on dementia data[4] is similarly misguided.

Specifically, as to the Qualifying Diagnoses of Level 1.5 and Level 2 Neurocognitive Impairment, and how they correspond to standardized dementia diagnoses drawn from well-established sources, this Court made the following detailed determinations:

- "These diagnoses correspond with commonly accepted clinical definitions of mild and moderate dementia, respectively."  307 F.R.D. at 366 (footnotes omitted).

---

[3] By the term "participants in the Settlement," Class Counsel assume that the Alexander Objectors mean those who will obtain a monetary award under the Settlement.

[4] The dementia data upon which Dr. Vasquez originally relied in his February 10, 2014 NFL Concussion Liability Forecast ("February 2014 Forecast"), and continued to rely in his November 12, 2014 declaration and April 10th Updated Analysis of the NFL Concussion Settlement, consist of incidence rates from multiple sources for dementia and are contained in Appendix A to the February 2014 Forecast.  *See* ECF No. 6423-21, at 58-61.

- "To receive a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment through the BAP, a Retired Player must perform 1.7-1.8 standard deviations worse than his expected level of preimpairment ('premorbid') functioning in two cognitive domains tested by the Test Battery, and exhibit mild functional impairment consistent with the National Alzheimer's Coordinating Center's Clinical Dementia Rating ('CDR') scale.  Level 2 Neurocognitive Impairment requires a performance 2 standard deviations worse than a Retired Player's expected premorbid functioning, and moderate functional impairment on the CDR scale."  *Id.* at 403 (footnote and internal citations omitted).

- "Both the cognitive and functional cutoffs are drawn directly from well-established sources.  The Neurocognitive Disorders section of the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM–5), a universally recognized classification and diagnostic tool, divides neurocognitive disorders into mild and major disorders based on the severity of the impairment.  Major disorders require impairment 2 or more standard deviations below a person's expected premorbid capabilities.  When this type of impairment extends beyond a single cognitive domain, it corresponds with a diagnosis of moderate dementia.  Mild disorders fall between 1 and 2 standard deviations below premorbid expectations.  Empirical research demonstrates that 1.5 standard deviations below population norms is a relevant boundary—it substantially increases the likelihood of progression from a mild disorder to a major one."  *Id.* (internal citations omitted).

- "Thus, the levels of neurocognitive impairment recognized by the Settlement are empirically tied to the cutoffs in the DSM–5. . . .  Level 2 matches the DSM–5's definition of moderate dementia.  Level 1.5 includes early dementia and begins at the midway point between Level 1 and moderate dementia."  *Id.* at 404 (footnotes omitted).

- "Objectors argue that the Test Battery does not resemble exams typically given by neuropsychologists in the field.  This is incorrect.  The Parties and their experts did not construct any test from scratch; each individual exam in the Test Battery is a well-established and validated tool for diagnosing neurocognitive impairment in any age group and is supported by extensive empirical testing to ensure its validity. . . .  The cognitive domains tested in the Test Battery are those laid out in the Neurocognitive Disorders section of the DSM–5.  Functional impairment is measured by the National Alzheimer's Coordinating Center's CDR scale, a validated and commonly-used scale for assessing the progression of dementia symptoms."  *Id.* at 412 (footnote and citations omitted).[5]

---

[5] The Alexander Objectors also attempt to make hay out of the facts that (1) a user manual was created for diagnostic purposes in connection with the Settlement, *see* Resp. & Obj. at 4, and (2) Levels 1.5 and 2 Neurocognitive Impairment Qualifying Diagnoses could have been

(Footnote continued . . .)

The Third Circuit agreed with this Court's determinations as to the correlation between the clinical definitions of mild and moderate dementia and Levels 1.5 and 2 Neurocognitive Impairment.   Specifically, the Court of Appeals recognized that "Levels 1.5 and 2 Neurocognitive Impairment require a decline in cognitive function and a loss of functional capabilities, such as the ability to hold a job, and correspond with clinical definitions of mild and moderate dementia." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 423 n.3 (3d Cir. 2016).

Consequently, Dr. Vasquez' use of dementia data to make projections as to Class Members' ultimately receiving Qualifying Diagnoses of Levels 1.5 and 2 Neurocognitive Impairment was appropriate.   His valuation of the Settlement is thus sound and can be used to measure the propriety of the fees requested by Class Counsel.

### 2.  Court-Appointed Lead Class Counsel Typically Make Allocations Among Those Firms That Performed Common Benefit Work

In sections B and C of their Response and Objection, the Alexander Objectors take issue with Co-Lead Class Counsel's suggestion that he make, at least initially, the allocation of fees

---

made (prior to the Effective Date) outside of the BAP, *id.* at 4 n.2.  Both of these facts were known to and acknowledged by the Court.  The Settlement Agreement clearly anticipated that "[a] user manual will be provided to neuropsychologists setting out the cutoff scores, criteria for identifying impairment in each cognitive domain, and statistical and normative data to support the impairment criteria."  ECF No. 6481-1, at 116 (Settlement Agreement, Ex. 2, at 5).  This Court specifically overruled the Alexander Objectors' objection that the Settlement was "'vague, ambiguous and/or not sufficiently disclosed' because among other things, the user manual participating physicians will receive setting out the specific cutoff scores for each test within the Test Battery has not been disclosed," holding that "this methodology is sufficiently clear from the Settlement and the record."  307 F.R.D. at 404 n.59.  It also recognized that "Retired Players may also receive diagnoses of Levels 1.5 and 2 Neurocognitive Impairment outside the BAP, but the diagnosing physician must use similar criteria."  *Id.* at 403 n.58.

among counsel who performed common benefit work.  Resp. & Obj. at 7-10; *see* ECF No. 7151-1, at 69-70; ECF No. 7151-2, at 30 (Seeger Decl. ¶ 99).  That contention also fails.

This Court has recognized that "submission of a combined fee application with actual allocation to be made by lead counsel has generally been adopted by the courts."  *In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, at *17 (E.D. Pa. June 2, 2004) (citing cases).  In deciding that lead counsel should have the initial responsibility for allocating fees from an aggregate award, courts have noted that, because lead counsel have led the litigation from  inception, they are "'better able to describe the weight and merit of each [counsel's] contribution.'"  *Id.* at *18 (quoting *In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, 2002 WL 32154197, at *23 (E.D. Pa. Oct. 3, 2002)).  "[F]rom the standpoint of judicial economy, leaving allocation to such counsel makes sense because it relieves the Court of the 'difficult task of assessing counsel's relative contributions.'"  *Id.* at *18 (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 329 n.96 (3d Cir. 1998)).

Indeed, as Class Counsel have already noted, courts commonly delegate the initial allocation of class attorneys' fees to lead class counsel.  ECF No. 7151-1, at 69-70 (citing cases); *accord In re Indigo Secs. Litig.*, 995 F. Supp. 233, 235 (D. Mass. 1998) (directing that "[a]ny and all allocations of attorneys' fees and expenses among counsel for all class representatives shall be made by lead counsel for the class, who shall apportion the fees and expenses based upon their assessment of the respective contribution to the litigation made by each counsel"); *In re Vitamin Cases*, No. 301803, 2004 WL 5137597, at *8 (Cal. Super. Ct. S.F. Cnty. Apr. 12, 2004) ("Federal courts nationwide have recognized that lead counsel are generally better suited than the trial court to decide the weight and merit of the relative contributions made by those performing

common benefit work.") (citing cases).  Thus, there is nothing irregular or inappropriate about Co-Lead Class Counsel's proposal.

Of course, courts may review the reasonableness of the allocation if a dispute arises. *E.g.*, *In re Vitamins Antitrust Litig.*, 398 F. Supp. 2d 209, 224-25 (D.D.C. 2005) (determining that co-lead counsel have broad authority to make initial allocation of fee award but once law firm objected, co-lead counsel's decisions were subject to court review for an abuse of discretion).  If any issues should arise from Co-Lead Class Counsel's initial allocation of the Court's award of fees and expenses, Co-Lead Class Counsel will make earnest efforts to resolve them so as to lessen, if not altogether avoid, the need for the Court's involvement.

Finally, there is no merit to the Alexander Objectors' lament that Co-Lead Class Counsel unfairly rejected their counsel's claimed time.  *See* Resp. & Obj. at 10 n.6.  Obviously, based upon their prior submissions, Co-Lead Class Counsel do not believe that the Alexander Objectors and their counsel rendered anything of common benefit to the Class.  If anything, they have acted only to the detriment of the Class.  That the Alexander Objectors' counsel was solicited to attend a meeting in an effort to stave off a meritless appeal of this Court's final approval decision (which the Alexander Objectors eventually wound up filing anyway, thereby delaying the Settlement's implementation) did not yield a common benefit to the Class.[6]

---

[6] The Alexander Objectors also raise the same evidentiary objection concerning the Declaration of Bradford R. Sohn (ECF No. 7464-2) that they did with respect to every common benefit attorney's declaration addressed in their March 27th objections.  *See* ECF No. 7355, at 54-66.  And they incredibly maintain that Co-Lead Class Counsel's detailed declarations are "conclusory" and "without foundation."  Resp. & Obj. at 8-9.  For the reasons already noted in Class Counsel's reply memorandum, these objections are specious.  *See* ECF No. 7464, at 23-25.

14

### III. THE COURT SHOULD REJECT THE ALEXANDER OBJECTORS' ELEVENTH-HOUR BID FOR FEE PETITION-RELATED DISCOVERY

From the time that Class Counsel filed their opening papers (back on February 13, 2017 [ECF No. 7151]) to the date that the briefing of their petition was completed (with the April 10, 2017 filing of their omnibus reply brief [ECF No. 7464]) a total of eight weeks elapsed. Although the Alexander Objectors made noises during that time about the need for discovery, including in their long-winded 59-page objections (ECF No. 7176, at 6; ECF No. 7355, at 14 n.9), at no time did they formally seek leave to take discovery. Only eleven days after the close of briefing on the fee petition did the Alexander Objectors fire off a motion for such leave.

Given that the claimed evidentiary gaps that the Alexander Objectors assert as the basis for their motion were alleged shortcomings in the fee petition papers filed more than two months earlier, the Alexander Objectors offer no explanation as to why they waited until now to seek discovery. The timing of their motion strongly suggests that it is calculated to protract the fee petition proceedings and frustrate Class Counsel's efforts to finally be compensated for their abundant work on behalf of the Class, if not to harass Class Counsel.

Whatever the case may be, there is no bona fide reason for allowing discovery. This Court has generally refused to allow discovery in connection with class counsel fee applications. *See In re Linerboard Antitrust Litig.*, No. MDL 1261, 2010 WL 3928638, at *5 (E.D. Pa. Oct. 5, 2010) (citing cases). Although courts have *sometimes* allowed discovery in connection with class counsel fee petitions, typically that has been in statutory fee-shifting cases, where fees are being sought from a losing defendant that questions the reasonableness of the award that it is being asked to pay. *E.g.*, *Avaya, Inc. v. Telecom Labs, Inc.*, No. 06-2490, 2016 WL 223696, at *3, *6 (D.N.J. Jan. 19, 2016) (plaintiff prevailed against defendant on antitrust claims and petitioned for $59 million in fees; on defendant's motion, court directed plaintiff to produce

billing records).  And even where it has been allowed, such discovery has been limited, not the

fishing expedition upon which the Alexander Objectors now seek to embark.  *Cf. id.* (requiring

production of plaintiff's billing records after it petitioned for fees following victory on Clayton

Act claim); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 794 (N.D. Ill.

2015) (court permitted limited discovery of class counsel's lodestar data in TCPA action, but

ultimately concluded that fees should be awarded on percentage-of-the-recovery basis), *appeals*

*dismissed*, Nos. 15-1514 (7th Cir. May 5, 2015), 15-1546 (June 8, 2015), 15-1400, 15-1586, 15-

1639 (June 26, 2015).[7]

Contrary to the Alexander Objectors' assertions, Class Counsel have adduced ample

evidentiary support for their fee petition, including extensive declarations from Co-Lead Class

Counsel and numerous declarations from the law firms that worked this case from start to finish.

*See* ECF Nos. 7151-2 to 7151-28, 7464-1, 7464-2, 7464-12, 7464-13.  (Of course, to the extent

that the Court would like to see actual backup for the claimed time and expenses, Class Counsel

stand ready to provide it *in camera*.)  And, needless to say, the petition and request for adoption

of a set-aside have been exhaustively briefed.  *E.g.*, ECF Nos. 7151-1, 7161, 7344, 7346, 7350,

7355, 7464.

What is more, the Court is quite familiar with the extensive work over a period of nearly

five years that went into achieving the result here, including the motion practice, the spirited

negotiations and mediation, the attempts to derail the Settlement even before preliminary

approval, the hard-fought Rule 23(e) final approval proceedings, and the appellate challenges to

---

[7]  Among other things, the Alexander Objectors want the various attorneys who provided declarations in support of the fee petition to produce all *drafts* of those declarations.  Mot. at 4 (No. 10).  That begs the question of what possible probative value drafts would have.  One could go on and on about the Alexander Objectors' putative Rule 34 requests.  Suffice it to say that they are intrusive and unwarranted.

the Settlement all the way up to the Supreme Court.  Also, the Court is aware of the extent to which the Settling Parties worked extensively with their respective teams of experts and conducted informal discovery to put this complex, carefully-crafted, and historic deal together. In short, the Court is completely knowledgeable about the long course and intricacies of this litigation and has a sufficient record before it to be in position to make a fully informed determination as to whether Class Counsel have earned the fees and reimbursement of expenses that they have requested.  *See Malchman v. Davis*, 588 F. Supp. 1047, 1061 (S.D.N.Y. 1984) (discovery by objectors not warranted where "a large record exists which is ample to permit decision on the relevant issues"), *aff'd as modified on other grounds*, 761 F.2d 893 (2d Cir. 1985).  Discovery would *not* "aid the Court in conducting a meaningful review" of the petition. *See* Resp. & Obj. at 10 n.7.  All that it would add to the proceedings is unjustifiable delay.

Given all this, the Alexander Objectors' contentions that they need discovery because "Class Counsel has advanced nothing more than *ipse dixit* as a basis for an award of fees" (Mot. at 2) and because they have not had "a meaningful opportunity to object" to the petition (Resp. & Obj. at 10 n.7) are patently frivolous.  As noted above, the Alexander Objectors have been afforded ample opportunity to contest the petition, and they exercised it with relish.  The problem with the Alexander Objectors' arguments – such as their insistence that Class Counsel cannot justify their requested fees because allegedly little work went into generating the Settlement, *e.g.*, ECF No. 7355, at 43-44 (asserting that complexity of case does not support Class Counsel's petition because there was no discovery) – is that they reflect the same obtuse approach that they took in battling final approval of the Settlement, which is to close their eyes, cover their ears, and tune out whatever does not fit their narrative.  As the saying goes, however, everyone is entitled to his own opinion, but not to his own facts.

Besides, the entire underlying premise of the Alexander Objectors' request for discovery into the reasonableness of Class Counsel's lodestar and the valuation of the Settlement is fundamentally flawed.   Notwithstanding their obdurate and unsupported insistence to the contrary, this is a constructive common fund, *not* a fee-shifting, case, and a percentage-of-recovery analysis therefore applies.  ECF No. 7151-1, at 39-40 (citing cases); ECF No. 7464, at 19-20 (same).[8]

That being the case, a lodestar cross-check is not even mandatory.  *Moore v. GMAC Mortgage*, No. 07-4296, 2014 WL 12538188, at *2 (E.D. Pa. Sept. 19, 2014); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 94 n.6 (D.N.J. 2001).  To the extent that it *is* undertaken, class counsel's lodestar is not to be examined with pinpoint precision.  Rather, a cross-check entails only a *rough* calculation of the lodestar in order to assess the reasonableness of the percentage award.  *E.g.*, *Loudermilk Servs., Inc. v. Marathon Petroleum Co.*, 623 F. Supp. 2d 713, 717 (S.D.W. Va. 2009); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 861 (E.D. La. 2007) ("The lodestar analysis is not undertaken to calculate a specific fee, but only to provide a rough cross check on the reasonableness of the fee arrived at by the percentage method."); *Jasper v. C.R. England, Inc.*, No. 08-5266-GW(CWX), 2014 WL 12577426, at *9 n.10 (C.D. Cal. Nov. 3, 2014) (because it was using lodestar method only as a cross check, "something it

---

[8] Neither in their objections (ECF No. 7355) nor in their sur-reply have the Alexander Objectors cited any authority for treating this as a fee-shifting case, and they ignore authorities cited by Class Counsel to the contrary (ECF No. 7151-1, at 39-40; ECF No. 7464, at 19-20).  All they offer is the myopic rationale that this ought to be treated as a fee-shifting case simply because the opposing party is funding the prospective fee award.  Resp. & Obj. at 6.  Class Counsel, though, did not file a fee petition against the NFL pursuant to a prevailing-party statute.  Rather, their petition was filed in accordance with the very terms of the Settlement, pursuant to which the NFL agreed to pay Class Counsel's fees and expenses (so long as they do not exceed $112.5 million) separate and apart from the recovery for the Class.  *See* Settlement Agreement §§ 21.1 & 23.7 (ECF No. 6481-1, at 81-82, 90).

need not even do," court did not need more detailed billing records and was "comfortable—based on its experience with class actions generally, and this case specifically—concluding that 5,500 hours expended on this litigation [wa]s generally reasonable") (internal citations omitted); *Schiller v. David's Bridal, Inc.*, No. 1:10-CV-00616-AWI, 2012 WL 2117001, at *22 (E.D. Cal. June 11, 2012); *In re Fine Host Corp. Secs. Litig.*, No. 3:97-CV-2619 JCH, 2000 WL 33116538, at *5 & n.4 (D. Conn. Nov. 8, 2000) (court did not "exhaustively scrutinize[]" class counsel's time entries "but instead relie[d] upon its familiarity with the case to utilize an approximate lodestar analysis as a cross check"). Further evidentiary development for the purpose of auditing Class Counsel's lodestar is simply inconsistent with such a "back-of-the-envelope" validation.[9]

In short, the Alexander Objectors have articulated no legitimate basis for their proposed discovery foray at this late date. Accordingly, the Court should deny their motion.

---

[9] As to the percentage of the recovery that Class Counsel's requested award would represent, the Alexander Objectors' ongoing attacks on the Settlement's valuation are entirely beside the point, much less a basis for allowing discovery. Even accepting the $607.3 million present value that one of their experts placed on the Settlement (*see* McCoin Decl. ¶ 6 [ECF No. 7355-1, at 2]) – whose flawed assessment failed to take into account the value of the BAP, the Education Fund, the NFL's funding of both notice and settlement administration, and the NFL's payment of Class Counsel's fees and expenses – the $106.8 million fee component of the requested award (*see* ECF No. 7151, at 67) would still translate to an award equaling only about 17.6% of the recovery. That is well within the norm, even in cases involving so-called "mega-fund" recoveries, a point that Class Counsel noted in their reply (ECF No. 7464, at 20-21) and which the Alexander Objectors ignore. Of course, that percentage falls even further – to just 14.8% – if those overlooked benefits are factored in.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Court should (i) strike or disregard the Alexander Objectors' April 24, 2017 "Response and Objection" (ECF No. 7533) or, in the alternative, accept Class Counsel's substantive response in Section II.B above as a sur-surreply; and (ii) deny the Alexander Objectors' motion for leave to serve post-briefing fee petition-related discovery (ECF No. 7534).

Date:  May 5, 2017

Respectfully submitted,

/s/ Christopher A. Seeger
Christopher A. Seeger
SEEGER WEISS LLP
77 Water Street
New York, NY 10005
cseeger@seegerweiss.com
(T) 212-584-0700
(F) 212-584-0799

*CO-LEAD CLASS COUNSEL*

Sol Weiss
ANAPOL WEISS
One Logan Square
130 N. 18th St. Ste. 1600
Philadelphia, PA 19103
(T) 215- 735-1130
(F) 215-735-2024
sweiss@anapolweiss.com

*CO-LEAD CLASS COUNSEL*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing was served on all counsel of record via the

Court's ECF system on May 5, 2017.


/s/ Christopher A. Seeger
Christopher A. Seeger