UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:  NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden,<br>on behalf of themselves and<br>others similarly situated,<br>         Plaintiffs,<br>             v.<br>National Football League and<br>NFL Properties, LLC,<br>Successor-in-interest to<br>NFL Properties, Inc.,<br>         Defendant. | Civil Action No. 2:14-cv-00029-AB |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

**MEMORANDUM OF LAW IN OPPOSITION TO OBJECTOR PETITION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES**

1

## TABLE OF AUTHORITIES

In Re:  Cendant Court, PRIDES Litag., 243 F3D 722, 743 (Third Circuit 2001).

**Page 8**

Turner v. NFL (In re NFL Players' Concussion Injury Litig.), 307 F.R.D. 351, 2015 U.S. Dist. LEXIS 52565 (E.D. Pa. 2015)

**Page 8**

in In re NFL Players Concussion Injury Litig., 821 F.3d 410 (3d Cir. 2016)

**Page 8**

Gilchrist v. NFL, 2016 U.S. LEXIS 7559, 137 S. Ct. 591, 196 L. Ed. 2d 473, 85 U.S.L.W. 3287, 2016 WL 4585281 (U.S. Dec. 12, 2016)

**Page 9**

Armstrong v. NFL, 2016 U.S. LEXIS 7511, 137 S. Ct. 607, 196 L. Ed. 2d 473, 85 U.S.L.W. 3287, 2016 WL 7182246 (U.S. Dec. 12, 2016)

**Page 9**

Trizechahn Gateway LLC v. Titus, 601 Pa. 637, 976 A.2d 474, 482-83 (Pa. 2009)

**Page 10**

Tax Matrix Techs., LLC v. Wegmans Food Mkts., Inc., 154 F. Supp. 3d 157, (E.D. Pa. 2016).

**Page 10**

In Re: Cendant Court, PRIDES Litig., 243 F3D 722, 743 (Third Circuit 2001).

**Page 10**

Zucker v. Westinghouse Elec., 374 F.3d 221, 2004 U.S. App. LEXIS 13517 (3d Cir. Pa. 2004)

**Page 11**

In re Card's Estate, 337 Pa. 82, 9 A.2d 557 (Pa. 1939)

**Page 15**

Polonski v. Trump Taj Mahal Assocs., 137 F.3d 139, (3d Cir. N.J. 1998)

**Page 16**

**OTHER:**

Pursuant to Fed. R. Civ. P. 23(h)(2) Class Members, Britt Hager, Rich Miano, Richard Brown, Kevin Sargent, Mark Rypien, Ron Davis, Gerry Allen, Scott Dierking, Brian Baldinger, Mike McCurry, John Goodman, Scott Laidlaw, Richard Stachon, Neil Graff, David Thompson, Ed Koontz, Jim Flanigan, Michael Hoban, Carlton Kammerer,  Greg Brown, Rex Kern, Willie Williams, Charlie Hinton, June Jones, Jerry Kramer, Janice Womble on behalf of Royce Womble, Tra Thomas, Darnell Powell, Reggie Dupard, Bob Nelson, Jon Hand, Charles King, Bill Larson, Doug Lantz, Billy Van Heusen, Raymond Kubala, Lem Burnham, Michael McGill, Ken Frost, Craig Bingham, Mike Pagel, Chuck Thomas, Cris D'Annunzio, Jesse Green, Mike Phipps, Bethany Wirgowski on behalf of Dennis Wirgowski, John Stofa, Dana Nafziger, Doug Dennison, Bob DeMarco, Dave Dixon, Bill Schultz, James Pruitt, Thomas Cassese, Karl Nelson, Gene Heeter, Russell Jensen, Don Herrmann, Mark Collins, Guido Merkens, Craig Dunaway, Jacob Green, Danny Neal, Larry Kolic, Sonny Randle, Charles Benson, Dennis Franks, Travis Dorsch, Todd Hines, Ralph Baker, Ron Porter, Billy Ray Smith, Chris Gedney, Michael Fuller, Edward Wilson, Cheri Gaechter on behalf of Michael Gaechter, Joe Jones, Frederick Mazurek, Norris Williams, Bert Weidner, Aaron Francisco, Vaughn Broadnax, Dan LaRose, Vince Tuzeo, Guy Ruff, William Parker, Sembree Knapp, Harvey Goodman, Kenny Bell, Cleveland Wester, Richard Trapp, Carl Brettschneider, Roger Leclerc, Reggie Rivers, Curt Warner, Ted McKnight, James Cumbie, James "JB" Brown, Bruce Hardy, Irvin Eatman, Michael Horan, Joseph Cocozzo, Kristi Satterfield on behalf of Dick Evey, Darryl Ingram, Milt McColl,

Derwin Williams, Daryle Skaugstad, Anthony "AD" Laster, Brian McConnell, Dave Osborn, Andrew Selfridge, Steve Duich, Mike McDonald, Bill Ransdell, Joseph Biscaha, James Beirne, Bill Elko, John Skorupan, Joe Reed, Peter Cusick, Don Strock, Luke Fisher, Kent Nix, Kevin Call, Tim Green, Tom Reynolds, William "Don" Gillis, Charles Wilson, Paul Latzke, Clarence Harmon, Larry Wallace, Bryan Knight, Freeman White, Dennis Shaw, Richard Ackerman, Joseph Jackson, Carl Hinton, Kevin McArthur, Robbie Jones, Clarence Scott, Leroy Kelly, Don Latimer, Dale Messer, Terry Nugent, Derrick Beasley, Leroy Holt, Wayne Roby, Lenard Gotshalk, Michael Lemon, Mike Richardson, Harold Olsen, Champ Henson, William Brown, William Blackburn, Carla Brim on behalf of Michael Brim, Bill Glass, Len Hauss, Darnell Powell and Tom Jeter respectfully ask the Court to deny Objectors' request for an award of attorney fees and reimbursement of expenses.

## HISTORY OF LITIGATION

In August of 2011 Former Atlanta Falcons safety Ray Easterling filed a lawsuit against the NFL for covering up the long term effects of concussions and brain trauma. Subsequently, he was joined by almost 5,000 of his former NFL teammates in an historic action against the league. In April of 2012 Ray Easterling took his life by shooting himself at the early age of 62. Easterling's unfortunate suicide was followed by many others.

In August of 2013 the NFL and retired players who had filed suit against the League announced a preliminary Settlement between them. That initial Settlement

was ultimately rejected by the Court. After numerous changes to its' terms, this Court granted Preliminary approval of the revised Agreement in July of 2014 and then granted final approval of the terms in April of 2015. Shortly after the Settlement received final approval, the implementation of the Settlement was delayed until January of 2017 due to appeals that were filed with the Third Circuit Court of Appeals and petitions for writs of certiorari filed with the United States Supreme Court. All appeals and petitions were denied and the settlement became effective on January 7, 2017.

## SUMMARY ARGUMENT

Mitnick Law Office, LLC ("Mitnick"), through its attorneys, hereby opposes, on behalf of its' clients ("Mitnick clients") who are part of the Class in the NFL Concussion Injury Litigation ("Concussion Litigation"), the Petition filed in this case by four clients of MoloLamken LLP ("MoloLamken") requesting that MoloLamken be awarded $20,051,827.52 in attorneys' fees and expenses incurred during the concussion litigation.

After their fruitless attempt at appealing the Settlement, the objectors now ask this Court to award them in excess of $20,051,827.52 in attorney fees and costs. The Objectors argue that "they did not attempt to "torpedo" or "block the settlement", but rather aimed to improve the benefits to retired players, however their efforts only caused an unwarranted delay in the implementation of the Settlement until January of 2017. This delay barred benefits from becoming available to Class members for

5

that period, as well as adversely and irreconcilably affecting the monetary awards of injured players forever into the future. The detriment to the Retired Class occurred in it's entirety due to the objectors conscious decision to file the appeals. Because the distributions from the Settlement are based, in large part, on the age of the claimant at the time of their diagnosed condition, class members will now receive substantially less compensation than if the appeals had not been filed.

The Petitioners/Objectors[1] (identified by their counsel as the "Faneca Objectors") have been and are currently represented by MoloLamken in the Concussion Litigation. The Faneca objectors argue that their actions as objectors during the concussion litigation have brought about a tangible financial benefit in excess of $100,000,000.00 to the class members. The Faneca objectors assert that the attorneys' fees and expenses of MoloLamken should be paid from the Attorneys' Fee Qualified Settlement Fund ("Attorneys' Fee and Expense Fund").

In support of their request, Petitioners submitted a 217 page, with exhibits, declaration by Steven F. Molo, Esquire of MoloLamken LLP and a 55 page Memorandum of Law. In his declaration, Mr. Molo acknowledges that he accepted the representation of his client "…**on a 100% contingent fee basis, <u>with our fee based solely on our improving the settlement</u>**….(emphasis added) (See paragraph 8 of Molo Declaration). Petitioners in their 272 pages of submission fail

---

[1] As stated in footnote 1 of the Molo declaration, MoloLamken originally represented seven objectors in this matter. Currently, there are only four active objectors since three individuals have opted out of the settlement. It is difficult to understand how MoloLamken's representation of the four individuals who opted out of the settlement has benefited the more than 20,000 individuals who remained in the class. According to Paragraph 1.14 of the Basic Information FAQS posted at https://www.nflconcussionsettlement.com/Un-Secure/FAQDetails.aspx?q=7#7, the deadline to opt out of the Settlement was October 14, 2014.

to demonstrate how their conduct has improved the settlement for the over 20,000 member Class who were temporarily denied the ability to submit their claims, were denied the ability to have their claims evaluated, and were denied payment of their benefits as envisioned by the terms of the settlement until the implementation of the settlement began on January 7, 2017, a delay of nearly 2 years.

Under the terms of the settlement approved by the Court, the Attorneys' Fee Qualified Settlement Fund is to contain $112,500,000.00.  This fund is separate and distinct from the settlement fund created for the more than 20,000 class members which was approved by the Court.  Paragraph 1.14 of the Basic Information FAQS posted at https://www.nflconcussionsettlement.com/UnSecure/FAQDetails.aspx?q=14#14 describes in pertinent part the following regarding limited circumstances under which the attorney fee fund can be used to pay attorneys' fees and costs incurred in the concussion litigation:

> An award of "common benefit" attorneys' fees and reasonable costs to Co-Lead Class Counsel, Class Counsel, Subclass Counsel and other attorneys who may have contributed directly to the establishment of the Settlement will be paid separately by the NFL Parties and not from the Baseline Assessment Program Fund, Education Fund or Monetary Award Fund.  This award is subject to the approval of the Court.

It is the position of the Mitnick clients that neither the Faneca objectors nor their attorneys, as well as all other objectors who have filed similar fee petitions, have the right to recover any attorneys' fees or expenses incurred in this litigation

from the Attorneys' Fee Qualified Settlement Fund. The fund was meant to pay only the fees and expenses approved by the Court that were used to improve the common benefit of the members of the class.

"It is well settled that objectors have a valuable and important role to perform in preventing . . . unfavorable settlements, and . . . they are entitled to an allowance of compensation for attorney fees and expenses where a proper showing has been made that the settlement was improved as a result of their direct efforts . . " *In Re: Cendant Court, PRIDES Litag., 243 F3D 722, 743 (Third Circuit 2001)*. However, it is not well settled law that objecting attorney fees and expenses should be paid out of a pre-negotiated fee arrangment that was negotiated at arm's length between the Plaintiff and Defendant parties and that was intended only for the benefit of those parties.

The Mitnick clients contend that a review of the facts and history of this case reveals that the actions of the Faneca objectors did not result in a $100,000,000.00 financial benefit to the class members. Rather, the Mitnick clients contend that in light of the actions of the Faneca objectors, between the time that the trial Court certified the settlement class in the concussion litigation by its opinion dated April 22, 2015 in Turner v. NFL (In re NFL Players' Concussion Injury Litig.), 307 F.R.D. 351, 2015 U.S. Dist. LEXIS 52565 (E.D. Pa. 2015) and when each and every one of the issues raised on appeal in the 500 pages of briefing, argued by 11 different law firms on behalf of only 95 objectors were denied by the Third Circuit in its opinion issued on April 18, 2016, in In re NFL Players Concussion Injury Litig., 821 F.3d 410

(3d Cir. 2016), the objectors did nothing to benefit the Class. In fact, their actions in filing the appeals caused irreversible detriment to the Class through the delay triggered by the appeals. The Third Circuit at page 447 of its opinion made the following comment regarding the objectors:

> ….we do not doubt that objectors are well-intentioned in making thoughtful arguments against certification of the class and approval of this settlement.  They aim to ensure that the claims of retired players are not given up in exchange for anything less than a generous settlement agreement negotiated by very able representatives. **But they risk making the perfect the enemy of the good**…(emphasis added).

It is contended that the Faneca objectors also should be held responsible for an additional eight-month delay caused by the filing of a writ of certiorari by objectors with the United States Supreme Court.  The writ of certiorari was summarily denied by the U.S. Supreme Court in Orders dated December 12, 2016 in <u>Gilchrist v. NFL</u>, 2016 U.S. LEXIS 7559, 137 S. Ct. 591, 196 L. Ed. 2d 473, 85 U.S.L.W. 3287, 2016 WL 4585281 (U.S. Dec. 12, 2016) and <u>Armstrong v. NFL</u>, 2016 U.S. LEXIS 7511, 137 S. Ct. 607, 196 L. Ed. 2d 473, 85 U.S.L.W. 3287, 2016 WL 7182246 (U.S. Dec. 12, 2016).

 It has been reported that while more than 11,000 class members were able to pre-register for Settlement updates, the unsuccessful court proceedings by objectors before the Third Circuit and United States Supreme Court unnecessarily delayed the ability of the members to register for actual benefits, submit their claims and to receive their intended compensation under the intent of the terms of the settlement agreement approved by the Court on April 22, 2015. See, https://www.usatoday.com/story/sports/nfl/2016/12/12/supreme-court-denies-nfl-

concussion-case-settlement/95332068/ and http://www.philly.com/philly/news/pennsylvania/Rollout-for-NFLs-1B-concussion-settlement-begins.html.

The appeals filed and pursued by the Faneca Objectors in conjunction with other objectors collectively represented the interests of less than .5% of the total class. Invocation of the appellate process resulted in almost a 2 year delay in the administration of the settlement approved by the Court on April 22, 2015. That delay has caused a severe irrevocable financial detriment to the injured members of the more than 20,000 member class. The financial hardship to the class far exceeds the $100,000.000.00 in benefits that the Faneca objectors claim they created for the class. Clearly, the Faneca objectors in pursuing perfection, traveled a bridge too far and became an enemy to the good. Considering the severity of the damages caused by the resulting delays created by the Faneca objectors' appeals, the Petition for an award of Attorneys' Fees and Expenses filed by the Faneca objectors must be denied.

## LEGAL ARGUMENT

The American Rule provides that a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception. See, Trizechahn Gateway LLC v. Titus, 601 Pa. 637, 976 A.2d 474, 482-83 (Pa. 2009). See also, Tax Matrix Techs., LLC v. Wegmans Food Mkts., Inc., 154 F. Supp. 3d 157, (E.D. Pa. 2016). There is an exception to the rule in class litigation provided that the services rendered resulted in an improved settlement for the plaintiff. "It is well settled that objectors have a

valuable and important role to perform in preventing . . . unfavorable settlements, and . . . they are entitled to an allowance of compensation for attorney fees and expenses where a proper showing has been made that the settlement was improved as a result of their **direct efforts**. . . " In Re: Cendant Court, PRIDES Litig., 243 F3D 722, 743 (Third Circuit 2001).

However, it is not well settled law that objecting attorney fees and expenses should be paid, let alone paid out of a pre-negotiated fee arrangement that was negotiated at arm's length between the Plaintiff and Defendant parties and that was intended only for the benefit of those parties. See also, Zucker v. Westinghouse Elec., 374 F.3d 221, 2004 U.S. App. LEXIS 13517 (3d Cir. Pa. 2004) where the Third Circuit declined to endorse an interpretation of the common fund doctrine that created untoward incentives for attorneys to pursue unnecessary actions for pecuniary gain or to pursue such action.

 Despite the fact that they were unable, through their appeal to the Third Circuit, to change/improve any of the terms or conditions of the settlement agreement approved by the Court on April 22, 2015, the Faneca objectors are nonetheless requesting that this Court award their attorneys in excess of twenty million ($20,000,000) dollars in attorney fees and expenses incurred during the concussion litigation. The Faneca objectors and their attorneys voluntarily filed appeals that unsuccessfully questioned, as well as attacked, the fairness of the comprehensive negotiated Settlement Agreement.

Even though the Faneca objectors now argue to the Court that "they did not attempt to "torpedo" or "block the settlement" but rather aimed to improve the benefits to retired players, the filing of those appeals caused the unwarranted delay in the implementation of the Settlement for almost two years from the date that the settlement was approved, thereby significantly reducing the amount of benefits payable to the class members. The unnecessary delay created by the appeal by the Faneca objectors and others has precluded benefits from becoming available to class members for that period, as well as adversely and irreconcilably affecting the payment of monetary awards to all injured players.

The Settlement that became final in April of 2015 was based on a symptomatic approach to injuries. The Settlement provided for monetary benefits for Retired Players diagnosed with dementia, Alzheimer's, Parkinson's and ALS, all of which are conditions or diagnoses that are believed to be caused by an underlying CTE condition. The Faneca objectors relied on the primary argument that CTE itself was not covered in the Agreement. The Faneca objectors are now claiming that their efforts caused additional benefits to players and as such they should be awarded fees and costs.

Key to the valuation of each class member's claim is the age of the claimant at the time of their diagnosed condition. Under the terms of the agreement approved by the Court on April 22, 2015, the age of the claimant is one of the major components in determining a claimant's compensation, The value of a class member's claim substantially decreases each year that implementation of the settlement claims

process is delayed.  A review of the settlement grid reveals that each year that an ALS claimant is required to wait, the average value of his claim is reduced by $150,000.  Each year that a Parkinson claimant is required to wait, the average value of his claim is reduced by $66,000.  Each year that an Alzheimer claimant is required to wait, the average value of his claim is reduced by $50,000.  Each year that a Level 2 neurocognitive impairment claimant is required to wait, the value of his claim is reduced by $36,000.  Each year that a Level 1.5 neurocognitive impairment claimant is required to wait, the value of his claim is reduced by $13,000.  Assuming that there are an equal number of claimants in each category, the average yearly reduction is approximately $65,000/claimant.  The potential adverse impact of the delay in evaluating and paying claims to the more than 20,000 members of the class is catastrophic.

The damage done by the Faneca objectors through their fruitless filings far outweighs any benefit that they may have potentially created prior to April 22. 2015.  As a result, the Mitnick clients respectively request that the instant Petition for attorney fees and expenses be denied.

The Appellate process delayed implementation of the Settlement for several years even though in the end each and every one of the issues raised in the appeals were rejected by the Court. It is interesting to note that the Faneca objectors took their time in filing and briefing their meritless appeals, however they were much quicker in filing their fee petition with this Court.  However, when it came time for

13

the Faneca objectors to file their fee petition with the Court, the document was filed just four days after the settlement became effective on January 7, 2017.

In deciding the issue as to whether the Faneca objectors or their attorneys are entitled to receive reimbursement or payment for the attorneys' fees and expenses incurred, it matters little regarding the qualifications of MoloLamken and/or its attorneys, or the pedigree of their opponents in other litigation. Faded into the background of the history of this class action are any novel arguments allegedly presented by MoloLamken; the expert witnesses purportedly developed by MoloLamken; and the voluminous submissions prepared by MoloLamken. Also, irrelevant to deciding this Petition are the numerous hours spent by the associates and partners of MoloLamken in preparing for and attending hearings, drafting briefs, performing discovery, attempting to independently negotiate a settlement with the NFL; and otherwise planning their strategies relating to this class action.

What has not faded to black in the memory of this litigation is the fact that after April 22, 2015, the Faneca objectors led the overly stubborn efforts to test the final settlement on appeal. The facts are that the Faneca objectors caused delays in their filings and blindly insisted to move forward with their appeals. None of this activity benefited the more than 20,000 members of the class.

Rather, the cold hard facts, as mentioned, are that the appeals caused severe detriment to every injured retired player in the Class. As the appeals were being fought, it was the players who grew older. As a result of the delay in implementing the provisions of the settlement, injured Retired Players will now receive

substantially less monies than if the meritless appeals had not been pursued.

Additionally, never once did the Faneca objectors request or recommend that a provision be set by the Court that would rectify the adverse impact that the age provisions contained in the settlement. Never once did the Faneca objectors take steps to post a bond to address the potential adverse impact that the delay of taking an appeal would result to the class members. Never once did the Faneca objectors take prudent steps in protecting the legal and financial interests of the more than 20,000 class members for whom Petitioners assert they were championing in their ill-advised appeal. In taking their appeal, Petitioners had placed themselves in a fiduciary relationship with the more than 20,000 class members to protect the interests of all of the class. By failing to protect the interests of the class, Petitioners caused irreparable harm to the financial interests of the class and as such forfeited their right to any compensation. See, Restat 2d of Trusts, § 243 (2012)(which addresses the effect of a trustee's breach of trust on the trustee's compensation. The provision in part provides that where a trustee commits a breach of trust, he is liable to the beneficiary for any loss thereby occasioned. It also provides that if the trustee intentionally or negligently mismanages the whole trust, he will ordinarily be allowed no compensation). See also In re Card's Estate, 337 Pa. 82, 9 A.2d 557 (Pa. 1939)(where the court found that a trustee may not be entitled to compensation when the trustee exceeds his discretion, such action can be regarded as a failure to discharge his duty).

Finally, Petitioners' argument that, even though MoloLamken agreed to work for their clients on a 100% contingency fee basis, they are entitled to recoup their fees and expenses from the Attorneys' Fee and Expense Fund created as part of the class settlement is clearly without merit.  The Attorneys' Fee and Expense Fund is limited to reimbursing attorneys for their fees and expenses only when their services resulted in contributing to the common good of the class.  The activities of MoloLamken after April 22, 2015, did not improve the settlement and in fact severely compromised the benefits that the class members will receive. Likewise, the assertion that MoloLamken is not charging any fees to its clients is of no relevance in determining whether the Petition should be granted. See, Polonski v. Trump Taj Mahal Assocs., 137 F.3d 139, (3d Cir. N.J. 1998)(where the Court found  no "substantial service" was rendered to the entire class  such as would justify an equitable award of attorney's fees).

## CONCLUSION

It is respectfully requested that the Petition filed in this case on behalf of  four clients of MoloLamken LLP, requesting that MoloLamken be awarded $20,051,827.52 in attorneys' fees and expenses incurred during the concussion litigation, as well as all other objector fee petitions be denied.

    _____

    CRAIG R. MITNICK, ESQUIRE

Date:_____