## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br>ALL OPT OUT ACTIONS | Hon. Anita B. Brody |

## MEMORANDUM OF LAW OF DEFENDANTS NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC IN OPPOSITION TO PLAINTIFFS' MOTION (ECF NO. 7557) FOR LEAVE TO FILE SECOND AMENDED <u>MASTER ADMINISTRATIVE LONG-FORM COMPLAINT</u>

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT .................................................................................... 1

BACKGROUND ............................................................................................................ 3

I.     The Parties ........................................................................................................... 3

II.    Procedural Background ....................................................................................... 4

III.   The Proposed Second Amended Complaint ...................................................... 6

ARGUMENT ................................................................................................................ 10

I.     THE PROPOSED AMENDMENT TO ADD ESTOPPEL
      ALLEGATIONS IS FUTILE ........................................................................... 11

      A.    The Issues in the Subject Arbitrations Are Not Identical to the
          Preemption Issue Here ........................................................................... 12

      B.    The "Determinations" in the Subject Arbitrations Were Not
          Essential to the Judgment ...................................................................... 17

      C.    Plaintiffs' Issue Preclusion Arguments Conflict With Well-
          Established Federal Precedent ................................................................ 19

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allis-Chalmers Corp.* v. *Lueck*,
    471 U.S. 202 (1985)..................................................................................13–14

*Atwater* v. *Nat'l Football League Players Ass'n*,
    626 F.3d 1170 (11th Cir. 2010) ................................................................20

*B & B Hardware, Inc.* v. *Hargis Indus., Inc.*,
    135 S. Ct. 1293 (2015)..............................................................................12

*Bobby* v. *Bies*,
    556 U.S. 825 (2009)..................................................................................17

*Dent* v. *Nat'l Football League*,
    No. 14-cv-2324, 2014 WL 7205048 (N.D. Cal. Dec. 17, 2014) ................20

*Duerson* v. *Nat'l Football League*,
    No. 12-cv-2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012) ........................3, 14, 19

*Envtl. Def.* v. *U.S. Envtl. Prot. Agency*,
    369 F.3d 193 (2d Cir. 2004) .....................................................................13

*Gibble* v. *Cincinnati Ins. Cos.*,
    No. 14-cv-0739, 2015 WL 1954372 (E.D. Pa. Apr. 30, 2015)....................13

*Givens* v. *Tenn. Football, Inc.*,
    684 F. Supp. 2d 985 (M.D. Tenn. 2010)....................................................20

*Great W. Mining & Mineral Co.* v. *Fox Rothschild LLP*,
    615 F.3d 159 (3d Cir. 2010) .....................................................................10

*Greenway Ctr., Inc.* v. *Essex Ins. Co.*,
    475 F.3d 139 (3d Cir. 2007) .....................................................................11

*Holmes* v. *Nat'l Football League*,
    939 F. Supp. 517 (N.D. Tex. 1996) ..........................................................21

*Howard Hess Dental Labs. Inc.* v. *Dentsply Int'l, Inc.*,
    602 F.3d 237 (3d Cir. 2010) .....................................................................17

*Jeffers* v. *D'Allessandro*,
    681 S.E.2d 405 (N.C. Ct. App. 2009).......................................................21

**Page(s)**

*Khalil* v. *Rohm & Haas Co.*,
    No. 05-cv-3396, 2008 WL 383322 (E.D. Pa. Feb. 11, 2008) ..................................... 19

*Koch* v. *Consol. Edison Co. of N.Y.*,
    468 N.E.2d 1 (1984) ...................................................................................... 12

*Maxwell* v. *Nat'l Football League*,
    No. 11-cv-08394, Dec. 8, 2011, Order (C.D. Cal.) ........................................... 3, 14, 19

*Nat'l Football League Mgmt. Council & Miami Dolphins* v. *Nat'l Football*
    *League Players' Ass'n & Henderson* (Jan. 22, 1988) ......................................... *passim*

*Nat'l Football League Players' Ass'n ex rel. Sampson* v. *Nat'l Football*
    *League Mgmt. Council ex rel. Houston Oilers* (July 28, 1988) ............................ *passim*

*In re Nat'l Football League Players' Concussion Injury Litig.*,
    307 F.R.D. 351 (E.D. Pa. 2015), *amended* No. 2:12-MD-02323-AB,
    2015 WL 12827803 (E.D. Pa. May 8, 2015), *and aff'd* 821 F.3d 410
    (3d Cir. 2016), *as amended* (May 2, 2016) ........................................................... 5

*Nationwide Mut. Fire Ins. Co.* v. *George V. Hamilton, Inc.*,
    571 F.3d 299 (3d Cir. 2009) ............................................................................ 12

*O'Leary* v. *Liberty Mut. Ins. Co.*,
    923 F.2d 1062 (3d Cir. 1991) ...................................................................... 12, 17

*Ostella* v. *IRBSearch, LLC*,
    No. 12-cv-7002, 2013 WL 5777291 (E.D. Pa. Oct. 24, 2013) ................................. 12

*PenneCom B.V.* v. *Merrill Lynch & Co.*,
    372 F.3d 488 (2d Cir. 2004) ............................................................................ 12

*Pike* v. *Freeman*,
    266 F.3d 78 (2d Cir. 2001) .............................................................................. 12

*Ryan Operations G.P.* v. *Santiam-Midwest Lumber Co.*,
    81 F.3d 355 (3d Cir. 1996) .............................................................................. 22

*Sherwin* v. *Indianapolis Colts, Inc.*,
    752 F. Supp. 1172 (N.D.N.Y. 1990) .............................................................. 16, 21

*Smith* v. *Houston Oilers, Inc.*,
    87 F.3d 717 (5th Cir. 1996) ............................................................................. 20

*Stringer* v. *Nat'l Football League*,
    474 F. Supp. 2d 894 (S.D. Ohio 2007) .............................................................. 21

**Page(s)**

*Suppan* v. *Dadonna*,
    203 F.3d 228 (3d Cir. 2000) ...................................................................13

*Tran* v. *Metro. Life Ins. Co.*,
    408 F.3d 130 (3d Cir. 2005) ...................................................................13

*In re United Brands Co. Sec. Litig.*,
    No. 85-cv-5445 (JFK), 1990 WL 16164 (S.D.N.Y. Feb. 15, 1990).............10

*United Steelworkers of Am.* v. *Rawson*,
    495 U.S. 362 (1990)...............................................................................14

*Williams* v. *Nat'l Football League*,
    582 F.3d 863 (8th Cir. 2009) ..................................................................20

*Witkowski* v. *Welch*,
    173 F.3d 192 (3d Cir. 1999) ...................................................................12

*Zinman* v. *Prudential Ins. Co. of Am.*,
    909 F. Supp. 279 (E.D. Pa. 1995) (Brody, J.)......................................11, 17

## STATUTES

29 U.S.C. § 185(a) .......................................................................................13

## OTHER AUTHORITIES

Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. (2d ed.)
    (2002)...............................................................................................10, 11

NFL Concussion Settlement: Timely Opt Out Requests Containing All
    Information Required by Section 14.2(a) or Otherwise Approved by
    the Court (last updated May 25, 2017),
    https://nflconcussionsettlement.com/Documents.aspx ..................................5

Restatement (Second) of Judgments (1982) ....................................................11

www.nfl.info/NFLConsProd/Welcome/cpAgreement.htm ..................................4

Defendants, National Football League ("NFL") and NFL Properties LLC ("NFLP," and together with the NFL, the "NFL Defendants"), respectfully submit this memorandum of law in opposition to Plaintiffs'[1] motion for leave to file a Second Amended Master Administrative Long-Form Complaint (the "Proposed Second Amended Complaint" or "PSAC").

## PRELIMINARY STATEMENT

Plaintiffs' Proposed Second Amended Complaint—purporting to allege a sweeping (and implausible) conspiracy among the NFL and various third parties, including the U.S. government—is a futile attempt to avoid the settled labor preemption law that bars Plaintiffs' claims.

As the NFL will show in its upcoming motion to dismiss on preemption grounds, Plaintiffs' proposed claims against the NFL Defendants fundamentally assert that the NFL Defendants breached their duties to protect Plaintiffs' health and safety. The resolution of those claims substantially depends on an interpretation of the many health and safety provisions in the collective bargaining agreements governing Plaintiffs' relationship with the NFL. The claims therefore are preempted, as numerous courts, including two presiding over cases now part of this MDL, have held.

On this threshold motion, the issue is merely whether Plaintiffs should even be permitted to file their amended complaint. On that issue, the NFL Defendants oppose only a portion of Plaintiffs' new allegations: the remarkable proposition in paragraphs 27 through 31 of the Proposed Second Amended Complaint that the NFL is somehow "estopped" from arguing preemption on the basis of a pair of decades-old

---

[1]    Plaintiffs are former players and their representatives and family members who opted out of the February 13, 2015 Class Action Settlement Agreement and who have not validly revoked their opt-out elections and rejoined the settlement class.

arbitration decisions having nothing to do with preemption.  Tellingly, in the many decades since those decisions, numerous federal courts (including one squarely rejecting the relevance of those very arbitration decisions) have ruled that player injury claims such as these are preempted.  Moreover, nowhere in their extensive briefing in opposition to the NFL Defendants' initial preemption motions did Plaintiffs once raise their novel estoppel argument.  For good reason:  It has no support in the law.

First, to invoke estoppel on an issue preclusion theory—a doctrine that the Third Circuit has warned against applying absent "extreme care"—a party must demonstrate that the issue to be precluded is identical to that which was adjudicated in a prior proceeding.  There is no identity of issues here, and the critical issue of preemption was never adjudicated in the prior proceedings.  As one federal court has already recognized, the arbitration decisions relied upon by Plaintiffs are distinguishable and not relevant to the question of Section 301 preemption of injury-related claims against the NFL, as they concerned potential tort claims against individual doctors.  Neither decision even referenced Section 301 preemption or involved any claims against the NFL.

Second, a party seeking issue preclusion must also demonstrate that the issue sought to be precluded was "essential" to the final judgment in the prior proceeding; mere dicta or incidental determinations will not suffice.  Plaintiffs fail on this ground as well.  The key determination in each grievance proceeding was whether the player was entitled to injury-related compensation from his team; the arbitrators' passing comments about potential claims against non-party doctors were merely incidental and not outcome-determinative in either case.

Finally, Plaintiffs' suggestion that these unrelated, thirty-year-old arbitrations somehow preclude the NFL Defendants from arguing preemption in this case conflicts with two-and-a-half decades of well-established federal precedent. A long line of federal case law not only has permitted the NFL Defendants to assert preemption, but also has ruled in the NFL Defendants' favor, squarely holding that player injury claims such as Plaintiffs' claims in this case are preempted because their resolution substantially depends upon, or is inextricably intertwined with, the terms of the collective bargaining agreements relating to player health and safety. Indeed, as noted above, in two recent cases involving virtually identical claims against the NFL relating to head injuries—cases later transferred to this very MDL—courts found such claims preempted for those very reasons. *See Maxwell* v. *Nat'l Football League*, No. 11-cv-08394, Dec. 8, 2011, Order at 1 (C.D. Cal.) (ECF No. 58); *Duerson* v. *Nat'l Football League*, No. 12-cv-2513, 2012 WL 1658353, at *6 (N.D. Ill. May 11, 2012).

In sum, Plaintiffs' estoppel allegations should be recognized for what they really are: a desperate attempted end-run around a wall of settled NFL preemption precedent. Because they lack any basis in law, and thus are futile proposed amendments, the NFL Defendants respectfully request that paragraphs 27 through 31 be deleted from Plaintiffs' Proposed Second Amended Complaint.

## **BACKGROUND**

### I.    **The Parties**

The NFL is an unincorporated association of 32 Member Clubs that promotes, organizes, and regulates the sport of professional football in the United States. (PSAC ¶¶ 35–37.) NFLP is a limited liability company organized under the laws of the State of Delaware and headquartered in New York. (*Id.* ¶ 39.) NFLP "serves as the

representative of the [NFL and its Clubs] for the licensing of their trademarks and logos."
(www.nfl.info/NFLConsProd/Welcome/cpAgreement.htm.)        Plaintiffs are former
professional football players, representatives of the estates of former players, and family
members of former players who have opted out of the February 13, 2015 Class Action
Settlement Agreement and who have not validly revoked their opt-out elections and
rejoined the settlement class.  (*See* PSAC ¶ 33; Mem. in Support of Pls.' Mot. for Leave
to File Second Amended Master Administrative Long-Form Compl. at 1.)  Plaintiffs also
name BRG Sports, Inc. and seven of its corporate subsidiaries and affiliates (collectively,
the "Riddell Defendants") that, in various capacities, "design, develop, and market
innovative sports equipment, protective products, including helmets, apparel, and related
accessories."  (PSAC ¶¶ 42–72.)

## II.    <u>Procedural Background</u>

Following the consolidation of various individual lawsuits in this multi-
district litigation ("MDL"), Plaintiffs, including many opt-out plaintiffs, filed a
superseding Master Administrative Long-Form Complaint on June 7, 2012 (Pls.' Master
Admin. Long-Form Compl., ECF No. 83), and an Amended Master Administrative Long-
Form Complaint on July 17, 2012 (the "First Amended Complaint").  (Pls.' Am. Master
Admin. Long-Form Compl., ECF No. 2642.)  On August 30, 2012, the NFL Defendants
moved to dismiss the First Amended Complaint on the ground that the claims were
preempted under section 301 of the Labor Management Relations Act ("Section 301").
(Defs.' Nat'l Football League's and NFL Properties LLC's Mot. to Dismiss the Am.
Master Admin. Long-Form Compl. on Preemption Grounds, ECF No. 3589.)  The Court
received full briefing on the NFL Defendants' motion and heard oral argument on April

9, 2013, and then ordered Lead Counsel for Plaintiffs and the NFL Defendants to mediation on July 8, 2013.  (Order, ECF No. 4596; Order, ECF No. 5128.)

On June 25, 2014, the Parties filed for approval of a class action settlement agreement, which was subsequently amended on February 13, 2015 (the "Settlement Agreement") and became final and effective on January 7, 2017.  (Class Action Settlement Agreement, ECF No. 6481-1, at Section 2.1(jj).)  Pursuant to the terms of the Settlement Agreement, certain members of the Settlement Class—approximately 1% of retired players—requested to opt out of the Settlement Class.  (*See In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 369 (E.D. Pa. 2015), *amended* No. 2:12-MD-02323-AB, 2015 WL 12827803 (E.D. Pa. May 8, 2015), *and aff'd* 821 F.3d 410 (3d Cir. 2016), *as amended* (May 2, 2016).)  Since the November 19, 2014 Fairness Hearing, 61 Settlement Class members—some as recently as this week— revoked their prior election to opt out and rejoined the Settlement Class.  (*See id.* at 369 n.22; Decl. of Orran L. Brown, Sr., ECF No. 7712-1; Decl. of Orran L. Brown, Sr., ECF No. 7707-1.)  Currently, there are 146 opt-outs.  (*See* NFL Concussion Settlement: Timely Opt Out Requests Containing All Information Required by Section 14.2(a) or Otherwise Approved by the Court (last updated May 25, 2017), https://nflconcussionsettlement.com/Documents.aspx.)

Following an Organizational Meeting of the Opt-Out Plaintiffs on March 27, 2017 and the parties' subsequent meet-and-confer, the Court entered an order on April 12, 2017 (the "April 12 Order") providing, among other things, that Lead Counsel for the Opt-Out Plaintiffs could file a motion for leave to file a Second Amended Master Administrative Long-Form Complaint, and setting forth a briefing schedule for that

motion and the NFL Defendants' motions to dismiss the Proposed Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b).  (Order, ECF No. 7477.) Lead Counsel for the Opt-Out Plaintiffs filed the instant motion on April 27, 2017.

### III.    The Proposed Second Amended Complaint

The Proposed Second Amended Complaint—spanning 518 paragraphs and 111 pages—alleges a widespread (and completely far-fetched) conspiracy that purportedly took place "[f]or almost sixty years" (PSAC ¶ 88) in which the NFL, NFLP, and various Riddell entities, the tobacco industry, and even the U.S. government allegedly conspired to conceal information about head injuries and mislead NFL players into believing the game was safe.

Specifically, Plaintiffs allege that the NFL Defendants and various Riddell entities somehow fraudulently concealed "the decades long scientific research" that purportedly "linked concussions, subconcussive impacts and repetitive head trauma to emotional distress, cognitive impairment, intellectual deficits and latent brain disease and neurodegenerative brain disease," despite the fact that much of the research cited by Plaintiffs in support of this theory—none of which purports to establish a causal relationship between football and these deficits—was long in the public domain.  (*Id.* ¶¶ 121, 485.)   Plaintiffs allege that this conspiracy involved not only the named defendants, but also "international corporations such as Honda" and even "our own federal government."  (*Id.* ¶ 75.)   As purported support, Plaintiffs cite, among other things, the 1969 "Football Injuries Symposia" involving "branches of the United States Military" and various government and academic "luminaries," and other research, including by a Nobel-prize-nominated physician.  (*Id.* ¶¶ 75, 137.)  Plaintiffs also allege that the NFL somehow worked with the tobacco industry to perpetuate this scheme,

6

relying on baseless snippets from newspaper articles that establish no such connection and were hotly contested in the press by the NFL.  (*See id.* ¶¶ 73, 75, 220–21.)

Plaintiffs' conclusory allegations—while long on rhetoric—do not come close to alleging, as they must, that the NFL Defendants and Riddell actually agreed, over several decades, to commit any unlawful act, much less that they committed any overt act in furtherance of that supposed agreement.  Other than boilerplate allegations that "Defendants and others agreed to conceal, omit, and misrepresent material information" about a purported "link between repetitive head trauma and chronic brain damage" (*id.* ¶ 74), Plaintiffs do not allege any concrete details about that supposed agreement or the specific ways in which the scheme was supposedly conducted.

Instead, Plaintiffs hinge their conspiracy on the formation of the National Operating Committee on Standards for Athletic Equipment ("NOCSAE"), "a non-profit organization intended to self-regulate football helmet safety standards," in which neither the NFL nor Riddell has any financial, governing, or ownership interest (*id.* ¶ 144) and a 1989 trademark licensing agreement between Riddell and the NFL permitting the use of the NFL marks on Riddell helmets and the sale of mini replica helmets (*id.* ¶¶ 183–87). Based on these sparse facts, Plaintiffs allege that the Riddell and NFL Defendants conspired in an elaborate cover-up, agreeing "to engage in a long-term plan to conceal material information about football's link to CTE and other neurological/neurobehavioral conditions, while doing so in the name of solving safety problems for its game's players." (*Id.* ¶ 182.)

Like their previous complaint, Plaintiffs allege that the NFL had "a longstanding duty to protect players and the public from unreasonable harm," and "a duty

to inform the Plaintiffs" about "the risk of concussions," and "a duty to act in the best interests of the health and safety of the football community . . . to provide truthful information regarding risks to their health, and to take all reasonable steps to ensure the safety of the community."  (*Id.* ¶¶ 81, 82, 125.)  Plaintiffs also allege that the NFL breached its purported duties by "failing to impose safety regulations to prevent or mitigate long-term brain damage, by failing to inform NFL players, athletes at every level, the medical community and the public of the risks associated with MTBIs" (*id.* ¶ 83), and by justifying "inappropriate return to play decisions with respect to concussed players" (*id.* ¶¶ 236, 265, 267), and allege that all defendants "failed to warn Plaintiffs of the medical risks associated with repetitive head impacts during NFL games and practices" and "breached their common law duty of reasonable and ordinary care to the Plaintiffs."  (*Id.* ¶ 132.)  Plaintiffs further allege that the NFL and its codefendants "fraudulently fail[ed] to disclose material information . . . regarding the likely risks of brain injuries caused by concussive and subconcussive impacts," and "made material misrepresentations to Plaintiffs."  (*Id.* ¶¶ 377, 424.)  Plaintiffs fail to allege with the necessary particularity that the NFL Defendants intended to deceive Plaintiffs, or that Plaintiffs justifiably relied on any statements (or omissions) made by the NFL Defendants.

Based on their allegations, Plaintiffs purport to assert claims against the NFL Defendants for negligence, negligent marketing, negligent misrepresentation, negligent hiring, negligent retention/supervision, fraud, civil conspiracy, fraudulent concealment, wrongful death and survival, and loss of consortium.  (*Id.* ¶¶ 368–430, 484–509.)  Plaintiffs seek declaratory relief, "the full measure of damages allowed under

applicable law," "medical monitoring for undiagnosed neurological diseases, disorders, or conditions," and punitive damages.  (*Id.* ¶¶ 364–67, 383, 389, 395, 405, 413, 421, 430, 495, 500, 505, 509, 510–18.)

These claims are fundamentally the same claims alleged in Plaintiffs' previous complaint, all of which claims are founded on alleged duties that arise out of, or the resolution of which will require interpretation of, the collective bargaining agreements ("CBAs") that define the terms and conditions of NFL employment, including player safety issues.  Thus, Plaintiffs' claims are preempted under Section 301, as the NFL Defendants will demonstrate in their motion to dismiss.

Recognizing that the preemption issue is fatal to their claims as a matter of law, Plaintiffs resort to the remarkable allegations that the NFL—notwithstanding that it has prevailed in two decades' worth of player injury preemption cases (including in cases that are now part of this MDL)—is somehow estopped from arguing preemption in this case.

In supposed support, paragraphs 27 through 31 of the Proposed Second Amended Complaint reference two unrelated arbitration decisions issued nearly thirty years ago, claiming (contrary to fact) that those arbitrations involved the question of preemption under Section 301 and that because the NFL purportedly prevailed in arguing that "state law tort claims, tort damages, and punitive damages could not be arbitrated," the NFL cannot argue Section 301 preemption in this case.  (PSAC ¶¶ 27–31.)  Those decisions (attached as Exhibits A and B to the Declaration of Douglas M. Burns[2]), and long-settled law, however, do not compel any such conclusion.  Thus, for the reasons set

---

[2]  References herein to the Exhibits to the Declaration of Douglas M. Burns (the "Burns Declaration") will be made in the form of "Ex. __."

forth below, Plaintiffs' "estoppel allegations" are both frivolous and futile and should be removed from the Proposed Second Amended Complaint before its filing.[3]

## ARGUMENT

Motions for leave to amend pursuant to Federal Rule of Civil Procedure 15(a) are properly denied where, as here, amendment would be futile. *See Great W. Mining & Mineral Co.* v. *Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010). Amendment is futile where the proposed change is frivolous or advances a claim that is, on its face, legally insufficient, and courts have the discretion to condition leave to amend on the striking of futile allegations. *See In re United Brands Co. Sec. Litig.*, No. 85-cv-5445 (JFK), 1990 WL 16164, at *3 & n.4 (S.D.N.Y. Feb. 15, 1990) (denying leave to amend certain claims on futility grounds, stating "[i]t is within the Court's discretion to condition the granting of plaintiffs' leave to amend upon the striking of certain paragraphs of the proposed amendment" (citing *Spampinato* v. *M. Breger & Co.*, 176 F.Supp. 149, 151 (E.D.N.Y. 1958), *aff'd on other grounds*, 270 F.2d 46 (2d Cir. 1959)); *see* 15B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1486 (2d ed.) (2002) (discussing courts' discretion under Rule 15(a) to impose conditions on amendments, including by narrowing the scope of proposed amendments).

---

[3]   Because the April 12 Order provides for separate briefing of the NFL Defendants' motions to dismiss on preemption grounds and any other Federal Rule of Civil Procedure 12(b) grounds, the NFL Defendants have not included those arguments here. Pursuant to the April 12 Order, the NFL Defendants will file their Rule 12 motions at a later date. By opposing amendment only as to certain allegations in the Proposed Second Amended Complaint, the NFL Defendants do not concede the adequacy of the remainder of Plaintiffs' pleading and expressly reserve all rights, arguments, and defenses with respect to the Proposed Second Amended Complaint.

# I.

## THE PROPOSED AMENDMENT TO ADD ESTOPPEL ALLEGATIONS IS FUTILE

Paragraphs 27 through 31 of the Proposed Second Amended Complaint assert, citing two nearly thirty-year-old arbitration decisions unrelated to the cases at bar, that the NFL is somehow "estopped"—apparently on the basis of issue preclusion—from arguing preemption pursuant to Section 301.  Indeed, Plaintiffs had ample opportunity to make this very issue preclusion argument during the course of the parties' previous extensive briefing on Section 301 preemption, but tellingly failed to do so.  For good reason.  There is no support for Plaintiffs' estoppel allegations.

To invoke issue preclusion, a litigant must demonstrate that the issue to be precluded is identical to that involved in a prior action in which the issue was actually litigated and determined by a valid final judgment, and that the determination was essential to that prior judgment.  *See Zinman* v. *Prudential Ins. Co. of Am.*, 909 F. Supp. 279, 282 (E.D. Pa. 1995) (Brody, J.) (citing *Burlington N. R.R. Co.* v. *Hyundai Merch. Marine Co., Ltd.*, 63 F.3d 1227, 1231–32 (3d Cir. 1995)); *see also Greenway Ctr., Inc.* v. *Essex Ins. Co.*, 475 F.3d 139, 147 (3d Cir. 2007) (stating that the party invoking issue preclusion has the burden of proving its applicability); Restatement (Second) of Judgments § 27 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.").[4]  In the Third Circuit, there is a presumption *against* finding

---

[4]    There is little clarity regarding the source of law that should govern a federal court's determination of the preclusive effect of an unreviewed arbitration decision.  *See* 18B Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 4475.1 (2d ed.) (2002) (noting that case law on this issue is not much

issue preclusion where there is any doubt about its applicability.  *See Witkowski* v. *Welch*, 173 F.3d 192, 206 (3d Cir. 1999) (finding collateral estoppel in "this unique case," and "caution[ing] against its invocation in most others without extreme care"); *Ostella* v. *IRBSearch, LLC*, No. 12-cv-7002, 2013 WL 5777291, at *12 (E.D. Pa. Oct. 24, 2013) (stating that "any reasonable doubt should be resolved against the use of estoppel" (citing *Kauffman* v. *Moss*, 420 F.2d 1270, 1274 (3d Cir.1970)); *see also PenneCom B.V.* v. *Merrill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004) (collateral estoppel "is an equitable doctrine—not a matter of absolute right.  Its invocation is influenced by considerations of fairness in the individual case.").

As set forth in detail below, Plaintiffs' allegations of estoppel concerning the *Henderson* and *Sampson* arbitration decisions (as defined below) fall far short of the requisite issue preclusion standard.  Accordingly, Plaintiffs' amendment would be futile as to those allegations.

## A.   The Issues in the Subject Arbitrations Are Not Identical to the Preemption Issue Here

Issue preclusion is improper unless the relevant issue in the prior proceeding is identical to that sought to be precluded in the subsequent proceeding.

---

developed and suggesting that "it may prove wise to look to the law that governs the claim advanced in court, rather than the law governing the arbitration or the claim advanced in arbitration").  Regardless, federal law, Pennsylvania law, and New York law on issue preclusion are similar, and look to the Restatement (Second) of Judgments in assessing issue preclusion.  *See B & B Hardware, Inc.* v. *Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015); *O'Leary* v. *Liberty Mut. Ins. Co.*, 923 F.2d 1062, 1065–66 (3d Cir. 1991); *Koch* v. *Consol. Edison Co. of N.Y.*, 468 N.E.2d 1, 4 nn.2 & 4 (1984).  Courts confronting the question of the proper source of law governing the preclusive effect of an arbitration decision have resolved the issue by holding that federal law is nearly identical to state laws, including Pennsylvania and New York.  *See Nationwide Mut. Fire Ins. Co.* v. *George V. Hamilton, Inc.*, 571 F.3d 299, 310 (3d Cir. 2009) ("Pennsylvania law is 'not inconsistent' with federal decisions on collateral estoppel and privity, and we therefore consider our own precedent to be persuasive in addressing collateral estoppel questions arising under Pennsylvania law."); *Pike* v. *Freeman*, 266 F.3d 78, 90 n.14 (2d Cir. 2001) (declining to decide whether federal or state law should govern the preclusive effect of an arbitral award "[b]ecause there appears to be no significant difference between New York preclusion law and federal preclusion law").

*Suppan* v. *Dadonna*, 203 F.3d 228, 233 (3d Cir. 2000).  To establish identity of issues, the party seeking preclusion must show that the cases were governed by the same general legal standards and involved similar factual situations.  *Id.* (no identity of issues in Section 1983 retaliation case where prior case involved different retaliatory conduct, even though both involved failure to promote); *see Tran* v. *Metro. Life Ins. Co.*, 408 F.3d 130, 138 n.10 (3d Cir. 2005) (despite similar fact situation and legal arguments, prior finding of justifiable reliance in the context of tolling of state consumer protection law's statute of limitations was not identical to issue of justifiable reliance under same state consumer protection law); *Gibble* v. *Cincinnati Ins. Cos.*, No. 14-cv-0739, 2015 WL 1954372, at *5–6 (E.D. Pa. Apr. 30, 2015) (no preclusive effect for prior workers' compensation decision involving question of whether employee acted in scope of employment, which was narrower than present question of employee's entitlement to drive employer's vehicle).  "When the facts essential to a judgment are distinct in the two cases, the issues in the second case cannot properly be said to be identical to those in the first, and collateral estoppel is inapplicable."  *Envtl. Def.* v. *U.S. Envtl. Prot. Agency*, 369 F.3d 193, 202 (2d Cir. 2004) (citing *Montana* v. *United States,* 440 U.S. 147, 159 (1979)).

There is no identity of issues here.  As the Court may recall from past briefing, the preemption argument that Plaintiffs seek to estop the NFL Defendants from making is a well-established principle of labor law:  Section 301 preempts state law claims whose resolution is substantially dependent upon or inextricably intertwined with interpretation of the terms of a collective bargaining agreement, or that are based on duties that arise under a collective bargaining agreement.  *See* 29 U.S.C. § 185(a) (codifying Section 301(a)); *Allis-Chalmers Corp.* v. *Lueck*, 471 U.S. 202, 213, 220

13

(1985).   The NFL's preemption argument here is that, because the resolution of Plaintiffs' claims "is inextricably intertwined with and substantially dependent upon an analysis of certain CBA provisions imposing duties on the clubs with respect to the medical care and treatment of NFL players," those claims are preempted.  *Maxwell* v. *Nat'l Football League*, No. 11-cv-08394, Dec. 8, 2011, Order at 1 (C.D. Cal.) (ECF No. 58); *see Duerson* v. *Nat'l Football League*, No. 12-cv-2513, 2012 WL 1658353, at *6 (N.D. Ill. May 11, 2012).   Preemption also applies because the claims implicate duties owed to NFL players only; they would not exist but for the CBAs.   *See United Steelworkers of Am.* v. *Rawson*, 495 U.S. 362, 371 (1990) (state law rights arise outside of a CBA if defendant is "accused of acting in a way that might violate the duty of reasonable care owed to everyone in society").

The relevant "issue" addressed in the *Henderson* and *Sampson* arbitrations (as defined below) is whether each player's potential negligence or malpractice claim against individual doctors (and in *Sampson*, third-party doctors independent from the Club) could be arbitrated and thus arose in a completely different factual and legal context than that which will be presented by the NFL Defendants' preemption argument.

Specifically, *Henderson* involved a player's grievance seeking an injury protection benefit from the Miami Dolphins in connection with a cervical vertebrae fracture; the NFL was not a defendant in that case.  Ex. A, *Nat'l Football League Mgmt. Council & Miami Dolphins* v. *Nat'l Football League Players' Ass'n & Henderson* at 7 (Jan. 22, 1988) ("*Henderson*").   The decision primarily focused on interpretation of the CBA and whether the player had complied with rehabilitation instructions, ultimately concluding that he had not and therefore was not entitled to the benefit he sought.

*Henderson* at 16–18 (holding that Henderson "knowingly and defiantly rejected" rehabilitation instructions).  As a defense to the contention that he had not complied with those instructions, the player argued that the team physician negligently discharged him from his care.  *Id.* at 11.  In passing, after stating that the team physician's discharge of Henderson was "not the crucial issue in the case," the arbitrator added that "[t]he Association's contention that the discharge constituted negligence warranting damages under Florida law is, of course, a question not properly addressed in this forum."  *Id.* at 17.  The decision does not expand further, much less address and determine the question of preemption under Section 301.  In fact, the decision does not even contain the word "preemption."[5]

   *Sampson* involved a player's grievance asserting breach of contract by the Houston Oilers for failing to provide adequate medical care in connection with a head injury, and negligence by the doctors who treated him; the NFL was not a defendant in that case.  Ex. B, *Nat'l Football League Players' Ass'n ex rel. Sampson* v. *Nat'l Football League Mgmt. Council ex rel. Houston Oilers*, at 1–2 (July 28, 1988) ("*Sampson*").  The player, Sampson, had already been paid his salary and injury protection benefit for the season of injury, but he sought compensation for the seasons after his injury.  *Id.* at 4.  His claims involved the medical care provided by third-party physicians (notably, not the Oilers team physician, who was "the only doctor affiliated with the Oilers and who was "not [] mentioned by Sampson in [that] case") after he went to the hospital, was given a CAT scan, and was operated on for a blood clot.  *Id.* at 7, 17.  The arbitrator noted that

---

[5] Despite Plaintiffs' claim that "[t]he NFL prevailed when taking the position that . . . punitive damages could not be arbitrated," (PSAC ¶ 30), the *Henderson* decision makes no mention of punitive damages.  The *Sampson* decision also did not discuss punitive damages, other than to note that Sampson had sought them.  *Sampson*, Ex. B, at 4.

the Oilers had cited *Henderson* in connection with the issue of a physician's duty of care, but did not elaborate on the issue or make clear exactly what the relevant arguments were. *Id.* at 15. Ultimately, the arbitrator found no evidence that the Oilers had provided inadequate medical care, and went on to observe that to the extent that Sampson's claim was one for alleged misdiagnosis or malpractice on the part of the third-party doctors who treated him, his claim was properly against them, not the Club, and was not within the scope of the CBA. *Id.* at 18–19 (also noting that the doctors were independent contractors). This decision, too, does not reference Section 301 or use the word "preemption" anywhere.

Unlike the present case, neither arbitration decision reflects that the players asserted any claims against the NFL. Nor do the decisions discuss whether the players' potential claims against the doctors would or would not be preempted by Section 301, or the scope of the NFL's duties to players relative to the duties of the doctors or the Clubs. Indeed, when confronted with *Henderson* and *Sampson* in connection with a Section 301 preemption motion in a suit by a former Indianapolis Colts player claiming inadequate medical care, a federal court readily distinguished those cases because they concerned negligence of individual doctors, not the teams. *Sherwin* v. *Indianapolis Colts, Inc.*, 752 F. Supp. 1172, 1179 (N.D.N.Y. 1990) (holding claims preempted by Section 301 and noting that *Henderson* and *Sampson* were "convincingly distinguished by the Colts" because they concerned claims against physicians and not the teams). So, too, here. The purported issues in *Henderson* and *Sampson* are separate and distinct from the issue of whether Plaintiffs' tort claims against the NFL are preempted by Section 301, barring any application of issue preclusion here.

**B.     The "Determinations" in the Subject Arbitrations Were Not Essential to the Judgment**

Issue preclusion is also unwarranted here because the determinations in the arbitrations were not essential to the judgments in those cases.

In determining whether an issue was "essential" to the prior judgment, the applicable question is whether the decision on the issue "was critical to the judgment or merely dicta."  *O'Leary* v. *Liberty Mut. Ins. Co.*, 923 F.2d 1062, 1067 (3d Cir. 1991); *see also Howard Hess Dental Labs. Inc.* v. *Dentsply Int'l, Inc.*, 602 F.3d 237, 248 (3d Cir. 2010) (referencing Restatement (Second) of Judgments and holding that an inference of anticompetitive injury to plaintiffs was not necessary to prior determination that defendant had committed antitrust violation, stating that "[s]imply because such a conclusion may be gleaned from the Government Case does not mean that it was essential to our holding.").  In other words, a determination is not "essential" unless "the final outcome hinges on it."  *Bobby* v. *Bies*, 556 U.S. 825, 835 (2009) (holding that issue of criminal defendant's "mental retardation" had not been necessary to a prior judgment weighing mitigating factors in affirming death sentence and that appellate court "conflate[d] a determination necessary to the bottom-line judgment with a subsidiary finding that, standing alone, is not outcome determinative").  Determinations that are merely "incidental" to a judgment are not "essential."  *See Zinman* v. *Prudential Ins. Co. of Am.*, 909 F. Supp. 279, 282 (E.D. Pa. 1995) (Brody, J.).

The arbitrators' statements in *Henderson* and *Sampson* regarding the arbitrability of tort claims against non-party doctors were merely incidental, non-outcome-determinative findings, and therefore were not "essential" to the final judgments in either case.  In *Henderson*, the issue before the arbitrator was whether Henderson

17

fulfilled the necessary criteria under the CBA to entitle him to an injury protection benefit. *Henderson*, Ex. A, at 7. The arbitrator's final determination was that Henderson was not entitled to that benefit because he had not undergone the rehabilitation treatment required by the CBA (indeed, that he had "knowingly and defiantly rejected" the physician's instruction without justification). *Id.* at 16, 18. Although Henderson argued that the team physician was negligent in discharging Henderson from his care, the arbitrator observed that the discharge was not "the crucial issue in this case," but nonetheless went on to conclude that the doctor's actions were warranted. *Id.* at 17. Only after so finding did the arbitrator go on to say, in dicta, that a negligence claim under Florida law was "not properly addressed in this forum." *Id.* That statement was not outcome-determinative, however, and was merely incidental to the primary question of whether Henderson had met the CBA requirements for an injury protection benefit.

The relevant determination in *Sampson* similarly was non-essential to the ultimate judgment. As discussed above, that arbitration concerned Sampson's claimed entitlement to compensation for the years subsequent to his injury, based on allegedly inadequate medical care. The arbitrator found, based on a "complete" factual record, that there was no evidence that the Oilers had breached Sampson's contract by failing to provide a minimum standard of medical care. *Sampson*, Ex. B, at 18. The arbitrator then noted that, to the extent that Sampson's grievance was based on the performance of the independent third-party doctors who treated him at the hospital, his claim was properly against those non-parties, not the team. *Id.* He then went further, noting that such a claim against the doctors would not properly be before him as it was not within the scope of the relevant CBA, *id.* at 19, but that statement was not essential to his ultimate holding

18

on the key issue in the case; that the *team* had not failed to provide adequate medical care.  Thus, issue preclusion is unwarranted in this circumstance.  *See Khalil* v. *Rohm & Haas Co.*, No. 05-cv-3396, 2008 WL 383322, at *5–6 (E.D. Pa. Feb. 11, 2008) (issue preclusion inapplicable in employment discrimination suit where reason for employee's discharge was not at issue and so court's statements about reason for discharge were merely dicta).

### C. Plaintiffs' Issue Preclusion Arguments Conflict With Well-Established Federal Precedent

If there were any doubt (and there is none) as to the futility of Plaintiffs' issue preclusion allegations, decades of NFL-related preemption case law would resolve it.

Subsequent to the *Henderson* and *Sampson* arbitration decisions, a long succession of federal courts, including *Sherwin* which expressly considered and rejected those decisions as distinguishable, as noted above, have squarely held that state law tort claims against the NFL or its Clubs—including certain of the concussion-related claims asserted in this action—are preempted by Section 301 because their resolution substantially depends on, or is inextricably intertwined with, the terms of the CBAs which define the terms and conditions of employment with the NFL, including terms relating to player safety.  *See, e.g.*, *Duerson*, 2012 WL 1658353, at *3–4 (claim that "the NFL is liable for negligently causing [Duerson's] brain damage and death by failing to fulfill its duty to ensure his safety" was preempted because "evaluating the reasonableness of the NFL's conduct will require interpretation of terms of the CBAs imposing duties on NFL clubs to protect player health and safety"); *Maxwell* v. *Nat'l Football League*, No. 11-cv-08394, Dec. 8, 2011, Order at 1–2 (C.D. Cal.) (ECF No. 58)

(negligence claim preempted, reasoning that "[t]he physician provisions of the CBA must be taken into account in determining the degree of care owed by the NFL and how it relates to the NFL's alleged failure to establish guidelines or policies to protect the mental health and safety of its players); *Atwater* v. *Nat'l Football League Players Ass'n*, 626 F.3d 1170, 1182 (11th Cir. 2010) (former players' negligence and negligent misrepresentation claims preempted because court "would . . . have to consult the CBA to determine the scope of the legal relationship between Plaintiffs and the NFL and their expectations based upon that relationship"); *Williams* v. *Nat'l Football League*, 582 F.3d 863, 881–82 (8th Cir. 2009) (negligence, fraud, negligent misrepresentation, and other tort claims preempted because "whether the NFL . . . owed the Players a duty to provide . . . a warning [that a supplement contained a banned substance under the NFL Drug Policy] cannot be determined without examining the parties' legal relationship and expectations as established by the CBA and the Policy"); *Smith* v. *Houston Oilers, Inc.*, 87 F.3d 717, 719–21 (5th Cir. 1996) (players' claims for coercion, duress, extortion, and assault and battery preempted because "[w]hether the Oilers had a legal right to require the players either to endure the workouts or quit is therefore a question of contract law.  As the contract at issue is a CBA, federal, not state, law governs"); *Dent* v. *Nat'l Football League*, No. 14-cv-2324, 2014 WL 7205048, at *8–12 (N.D. Cal. Dec. 17, 2014) (retired players' negligence- and fraud-based claims against the NFL arising from the manner in which Club doctors and trainers supplied players with medication preempted because the "NFL's overarching duty would then depend on the extent to which the various CBAs required the clubs to protect the players' medical interests"); *Givens* v. *Tenn. Football, Inc.*, 684 F. Supp. 2d 985, 990–91 (M.D. Tenn. 2010)

(outrageous conduct, negligent infliction of emotional distress, and breach of duty of good faith and fair dealing claims preempted because "[t]he questions raised by the Complaint, such as whether a physician's failure to advise a player of his medical condition should be imputed to the club or whether the club has a duty independent of the physician to advise a player of his medical condition, are 'inextricably intertwined' with the provisions of the CBA"); *Stringer* v. *Nat'l Football League*, 474 F. Supp. 2d 894, 909–11 (S.D. Ohio 2007) (wrongful death claim preempted because "the degree of care owed by the NFL" must "be considered in light of the contractual duties imposed on the team physicians" as set forth in CBA); *Holmes* v. *Nat'l Football League*, 939 F. Supp. 517, 527–28 (N.D. Tex. 1996) (fraudulent inducement, intentional infliction of emotional distress, breach of implied covenant of good faith and fair dealing, and invasion of privacy claims preempted); *Sherwin*, 752 F. Supp. at 1178–79 (former player's claims that Club provided negligent medical treatment and fraudulently concealed the extent of player's injury preempted because Club "did not owe a duty to provide medical care to the plaintiff independent of the relationship established in the" CBAs; distinguishing *Henderson* and *Sampson* decisions as inapplicable to preemption argument); *Jeffers* v. *D'Allessandro*, 681 S.E.2d 405, 412 (N.C. Ct. App. 2009) (former NFL player's negligent retention and intentional misconduct claims against Club—that team physician performed unauthorized procedures during knee surgery—preempted because resolution of the claim was substantially dependent upon an analysis of CBA provisions setting forth the Clubs' and players' rights and duties in connection with medical care).

Simply put, Plaintiffs' novel issue preclusion argument flies in the face of decades of federal case law to the contrary.

\*                \*                \*

In sum, there is no basis whatsoever to support Plaintiffs' issue preclusion arguments here.[6]

## CONCLUSION

For the foregoing reasons, the NFL Defendants respectfully submit that the proposed amended allegations in paragraphs 27 through 31 of the Proposed Second Amended Complaint would be futile and respectfully request that those paragraphs be deleted from the Proposed Second Amended Complaint.

Dated: May 26, 2017

Respectfully submitted,

_____/s/ Brad S. Karp_____
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Brad S. Karp
Bruce Birenboim
Lynn B. Bayard
1285 Avenue of the Americas
New York, NY 10019-6064
Tel:   (212) 373-3000

PEPPER HAMILTON LLP
Sean P. Fahey
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
Tel:   (215) 981-4000

*Attorneys for Defendants the National Football League and NFL Properties LLC*

---

[6]   Nor is there any support for Plaintiffs' estoppel argument as a matter of judicial estoppel.  That doctrine, also known as the "doctrine against the assertion of inconsistent positions," requires a showing of bad faith, or "play[ing] fast and loose with the court," by the party taking the allegedly inconsistent positions.  *Ryan Operations G.P.* v. *Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361–62 (3d Cir. 1996).  Plaintiffs make no allegations, nor could they, that the NFL Defendants have intentionally sought to conceal these two wholly irrelevant arbitrations from the Court in order to mislead the Court and gain an unfair advantage, and so they cannot meet the requirements for invoking the "extraordinary remedy" of judicial estoppel. *Id.* at 365.