# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>    Plaintiffs,<br><br>    v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>    Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## CO-LEAD CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPROVAL OF NOTICE TO CLASS MEMBERS TO ADDRESS SOLICITATIONS RECEIVED BY CLASS

## **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................. 1

II. FACTS ................................................................................................................. 4

    A. Similar Nomenclature to, or Implied Affiliation with, the Official Court-Approved
    Settlement Program or Website, the Claims Administrator, the NFL Parties, or Court-
    Appointed Class Counsel Has Caused, or Has Serious Potential to Sow, Confusion
    Among Class Members ...................................................................................... 4

        1. NFL Case Consulting, LLC (now known as Case Strategies Group, or "CSG")......... 4

        2. X1Law, P.A. ........................................................................................... 8

        3. Joe Pisarcik and Slater Slater Schulman, LLP and Levy, Baldante, Finney &
        Rubenstein, P.C.................................................................................... 9

        4. Legacy Pro Sports and Kagan Law Firm ...................................................... 10

    B. Any Representation to Class Members That Qualifying Diagnoses May Be Obtained
    Outside of the Settlement Program After January 7, 2017 Is Patently Inaccurate ............ 12

        1. NFL Case Consulting, LLC (now known as Case Strategies Group, or "CSG")........ 13

        2. Concussion Case Management............................................................... 14

III. ARGUMENT ................................................................................................... 15

    A. The Court Has Broad Authority To Promulgate Notices to the Class ................................ 15

    B. The Proposed Class Notice Is Appropriate .............................................................. 17

IV. CONCLUSION ................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**

*Central Hudson Gas Co. v. Public Service Commission,*
447 U.S. 557 (1980) ................................................................................................ 16

*Gulf Oil Co. v. Bernard,*
452 U.S. 89 (1981) ............................................................................................ 16, 17

*Hoffman-LaRoche Inc. v. Sperling,*
493 U.S. 165 (1989) ................................................................................................ 16

*In re Nat'l Football League Players' Concussion Injury Litig.,*
307 F.R.D. 351 (E.D. Pa. 2015) ................................................................................ 2

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.,*
No. 05-MD-1720, 2014 WL 4966072 (E.D.N.Y. Oct. 3, 2014) .............................. 17

*In re Pittsburgh Corning Corp.,*
No. BR 00-22876 JKF, 2013 WL 2299620 (Bankr. W.D. Pa. May 24, 2013) ........ 18

*In re School. Asbestos Litig.,*
842 F.2d 671 (3d Cir. 1988) ............................................................................... 16, 17

*Kleiner v. First Nat'l Bank of Atlanta,*
751 F.2d 1193 (11th Cir. 1985) .............................................................................. 16

*Rossini v. Ogilvy & Mather, Inc.,*
798 F.2d 590 (2d Cir. 1986) .................................................................................... 16

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,*
425 U.S. 748 (1976) ................................................................................................ 16

*Waldo v. Lakeshore Estates, Inc.,*
433 F. Supp. 783 (E.D. La. 1977), *appeal dismissed,* 579 F.2d 642 (5th Cir. 1978)................ 16

**Rules**

Fed. R. Civ. P. 23(d) ................................................................................................. 15

Fed. R. Civ. P. 23(d)(1)(B)(i) ................................................................................... 16

Fed. R. Civ. P. 23(d)(2)............................................................................................. 17

**Other Authorities**

Manual for Complex Litigation, Fourth § 21.33 (2004) .............................................................. 17

## I.  __INTRODUCTION__

Co-Lead Class Counsel ("Class Counsel") respectfully submit this memorandum in support of their motion for approval of a notice to be sent to all Class Members to address solicitations received by Class Members ("Motion for Class Notice").

Back on March 27, 2017, Class Counsel filed a motion for injunctive relief against one third-party claims service provider, NFL Case Consulting, LLC (now known as Claims Strategies Group), along with one of its principals, Jim McCabe (collectively referred to as "CSG") to enjoin CSG's communications to Class Members (ECF No. 7347) ("Motion for Injunction").

Since Class Counsel filed that motion, numerous additional facts have come to light regarding misrepresentations by CSG,[1] other third-party claims service providers, and others, directly to Class Members through emails, direct mail and oral telephone communications, and indirectly through internet advertising, which misrepresentations have caused or may cause considerable Class Member confusion, including as to the affiliations of these entities or pitchmen. These misrepresentations may continue to cause confusion as Class Members communicate with one another and spread misinformation they have received or have read on the internet.  Therefore, the first purpose of the motion is to make the Court aware of the false and misleading information about the National Football League Players' Concussion Injury Settlement (the "Settlement") being disseminated by several entities and persons.  The second purpose of the motion is to request that the Court approve a proposed notice ("Notice") to be disseminated to all Class Members in an effort to clear up the confusion that these third parties may have caused, even if unintentionally.

---

[1]  Because new facts developed and the Motion for Injunction filed on March 27, 2017 against CSG was no longer current, Class Counsel withdrew that motion on June 6, 2017 (ECF No. 7779), the same day they filed the Status Report advising the Court of their intention to file the instant Motion for Class Notice (ECF No. 7777).

Pursuant to its fiduciary obligations to the Class, this Court has taken a strong interest in ensuring that truthful and accurate communications are disseminated to Class Members. *E.g.*, *In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 383 (E.D. Pa. 2015). (addressing class notices). For their part, Class Counsel have taken significant steps to notify the Class Members and to keep them informed. The Settlement website, www.nflconcussionsettlement.com, which is officially sanctioned by the Court, is regularly updated and available to assist both Class Members and their attorneys with information about the Settlement, the registration process, and the claims process. The Claims Administrator also maintains a Post Office Box to which Class Members can send letters with questions, *see* ECF No. 6919-1, at 3, a Claims Administrator e-mail Inbox for questions, *id.* at 4, and a Call Center where questions can be asked of trained personnel with the Claims Administrator, *id.* at 5, all to provide answers and accurate information to Class Members.

In addition to the other channels through which Class Members can obtain Court-sanctioned and truthful information about the details of the Settlement, on February 8, 2017, this Court held a status conference, which was live-streamed, in an effort to ensure that Class Members understand the next steps they must take now that the Settlement has become effective. One of the principal messages that the Court, Co-Lead Class Counsel, and the Administrators conveyed to Class Members during that conference was that all practical efforts were being made to ensure that the Settlement Program is easy to navigate and that Class Counsel and the Claims Administrator's personnel would be available to assist Class Members if they have any problems.

Both before and after the February 8 status conference, additional Class Notices were disseminated via U.S. mail and email. Specifically, on January 27, 2017, the Court-approved Pre-Registration Notice (ECF No. 7107) was distributed to announce the forthcoming start of

registration and the February 8 status conference; on February 6, 2017, the Court-approved Supplemental Notice (ECF No. 7115) and hardcopy registration form was distributed; and on March 7, 2017, a "registration reminder" was sent.

Additionally, Class Counsel held a webinar on March 28, 2017 and appeared for a live presentation in Nashville, Tennessee, on April 11, 2017 at the NFL Legends Community Summit to discuss the Settlement, Settlement benefits and registration.  On May 16, 2017, counsel from Class Counsel's firm provided a live presentation in Tampa, Florida at an NFL Alumni event, similarly to provide Class Members with more details about the Settlement program and processes. Press releases and radio advertisements, which were designed to be picked up by and were picked up by various media outlets, describing details of the Settlement also were distributed by Class Counsel.  These efforts are part of the ongoing effort by Class Counsel, often with the assistance of the Claims Administrator, to present directly to Class Members and through various other means and media, the most important details about the Settlement, including the ease of registration, the need to register to enjoy the benefits of the Settlement, and who can provide Qualifying Diagnoses, and how BAP Examinations can be scheduled.

All of this work, however, is jeopardized when misleading communications are spread by individuals angling to profit from Retired NFL Football Players.

Third-party claims service providers – namely, CSG, Concussion Case Management and Legacy Pro Sports, as well as others – have disseminated communications to Class Members, directly and indirectly, designed to persuade Class Members that they urgently need to retain these entities and persons, at a percentage of any ultimate monetary award, in order for Class Members to be able to navigate what are falsely portrayed as complicated registration, medical testing, and claims procedures.  As further detailed herein, and in the accompanying supporting documents,

Class Counsel's own communications with Class Members, as well as reports from the Claims Administrator, have unfortunately shown that there is much confusion among the Class Members as to who these third-party entities actually are (*i.e.*, with whom they are or are not affiliated), and the alleged urgent need for their retention, as well as who is able to provide a Qualifying Diagnosis after January 7, 2017.  As to the last item, it seems also that many individually-retained law firms and lawyers are unaware that those outside of the Settlement Program cannot provide a Qualifying Diagnosis after January 7, 2017.  Accordingly, Class Counsel respectfully request that the Court approve a Notice in substantially the format of the draft Notice attached as Exhibit 1 to the Proposed Order submitted with the instant Motion for Class Notice.

## II.   FACTS

### A.   Similar Nomenclature to, or Implied Affiliation with, the Official Court-Approved Settlement Program or Website, the Claims Administrator, the NFL Parties, or Court-Appointed Class Counsel Has Caused, or Has Serious Potential to Sow, Confusion Among Class Members

By definition, the Class in this case is made up of Retired NFL Football Players, many of whom are neurocognitively impaired, and many of whom are well into their seventies and eighties. Given the very makeup of the Class, the concern for confusion being sown among Class Members is plainly heightened.

#### 1.   NFL Case Consulting, LLC (now known as Case Strategies Group, or "CSG")

The Court itself recognized the potential for confusion caused by the former name that CSG chose to use – NFL Case Consulting, LLC.  *See* Declaration of TerriAnne Benedetto, dated June 9, 2017 ("Benedetto Decl."), at Exhibit ("Ex.") A, at 7:23-25 (transcript of Apr. 13, 2017 telephone conference on Motion for Injunction).  Although this entity did thereafter change its

name to Case Strategies Group, it appears that the damage already had been done, as described below.

In short, after the Motion for Injunction was filed, CSG changed its website to include several outright falsehoods and other deceptive content. Class Counsel advised counsel for CSG of these misrepresentations in the course of numerous discussions aimed at resolving the Motion for Injunction amicably. *See* Section II.B.1, *infra* (discussion of inaccurate prior website content); *see also* ECF No. 7625-1. In response, CSG revised the website content and "designed a procedure" in an alleged attempt to clear up areas of misrepresentation and confusion that Class Counsel had identified. The procedure, which was designed by CSG to provide Class Members who had contracted with CSG with certain "written and verbal disclosures," was not agreed to by Class Counsel and in Class Counsel's view did not go far enough to rectify the situation. *See* ECF 7624-3. Specifically, the ten disclosures that CSG allegedly made, *see* ECF No. 7624, at 2 n.1 and *see* ECF No. 7624-2, at 2, were insufficient. Furthermore, there was no way for Class Counsel to verify whether the ten disclosures were made and whether they were made in such a way so as to ensure each Class Member's full understanding.[2] The CSG-designed procedure required Class Members with whom it had contracted to return a written acknowledgement confirming that the ten disclosures had been made and that the Class Member still wanted to contract with CSG, referred to by counsel for CSG as "opting back in" with CSG. *See* ECF No. 7624, at 3. If the

---

[2] Counsel for CSG represented to Class Counsel that all of the telephone communications between CSG's employees and Class Members were audiotaped. Class Counsel requested that they be permitted to listen to the audiotaped recordings, due to concerns of verbal misrepresentations by CSG employees. CSG declined this request. *See* Benedetto Decl. at ¶¶ 11-12.

Class Member failed to return the acknowledgement, a termination letter was sent.  *See* Benedetto Decl., Ex. D.[3]

Following the dissemination of the termination letters by CSG on or about May 18, 2017, the Claims Administrator began receiving telephone calls from Class Members indicating their confusion.  *See* Declaration of Orran Brown, dated June 9, 2017 ("Brown Decl.").  Some were under the impression that they had been dealing with the Court-appointed Claims Administrator all along, when actually they were having telephone conversations and/or exchanging emails and signing contracts with CSG (as CSG or as NFL Case Consulting, LLC).  *Id.*; *see also* Benedetto Decl., Exs. B and C (two iterations of CSG's contract, the first involving a fee of "15% of the gross recovery plus any and all costs incurred if the client has his medical testing *conducted independently of the settlement*" and the second involving a fee of "10% of the gross recovery") (emphasis added).  The Claims Administrator advised Class Counsel that he had become aware of these Class Member misconceptions and provided the names of the involved Class Members.  *See* Brown Decl.  One of Co-Lead Class Counsel Christopher Seeger's partners, TerriAnne Benedetto, contacted several Class Members and confirmed that the Class Members mistakenly believed that they had been dealing with the Claims Administrator all along when they had, in fact, been dealing with NFL Case Consulting, LLC or CSG.  *See* Benedetto Decl. at ¶¶ 26-27.  Ultimately, the only positive outcome of this CSG-designed procedure was that it brought to light the breadth and scope

---

[3]  In addition to not seeking Class Counsel's input or advance approval on the procedure or disclosures in the so-called "opt back in with CSG" procedure, after the fact, Counsel for CSG did not provide Class Counsel with copies of the written "opt back in" document acknowledging that disclosures were made and that a Class Member continued to desire a contract with CSG, or the termination letter.  Class Counsel is unclear as to whether these ten disclosures were made entirely verbally or in a verbal and written combination format because they have not obtained a copy of any writing to a Class Member containing those disclosures.  Class Counsel were able to obtain a copy of the termination letter from a confused Class Member who contacted the Claims Administrator.

of the continuing misconceptions and confusion among Class Members resulting from CSG's decision to call itself NFL Case Consulting in the first instance, despite CSG's belated attempt at clarifying their actual identity through certain disclosures.

For the most part, only the Class Members who received the termination letter contacted the Claims Administrator mistaking it for CSG (in all likelihood because the termination letter provided the contact information only for the Claims Administrator). *See* Benedetto Decl., Ex. D. Thus, Class Counsel fear that those who signed and returned the "opt back in with CSG" letter, who necessarily never received the termination letter, similarly may be operating under the assumption that they have been, and still are, dealing with the Claims Administrator.

Class Counsel had desired to directly contact all those who had contracted with CSG in order to ensure that Class Members had initially entered into the contract with CSG (or opted back into the arrangement with CSG) with a full understanding of what CSG was and, as further discussed below at Section II.B.1, what claims services CSG could render (or not render) on behalf of Class Members.

Counsel for CSG contended that it would be improper for Class Counsel to directly reach out to a Class Member if the Class Member had retained individual counsel – individual counsel from among seven firms[4] which CSG has allegedly presented to its clients who expressed the

---

[4]  Because Counsel for CSG at first provided only the firm names and not the contact information for these seven firms, Class Counsel were able to initially definitively identify and reach out to five of the firms.  They did so by letter on May 19, 2017.  *See* Benedetto Decl., Ex. E. After further prodding, Counsel for CSG provided contact information for the last two firms.  (ECF No. 7782-1 at 4).  Class Counsel sent letters to those firms on June 2, 2017.  *See* Benedetto Decl. Ex. F.  As to those last two firms, one advised Class Counsel that it had decided not to represent Class Members at this time; another lawyer represented that while he was acquainted with CSG, his firm did not represent any Class Members.  *See* Benedetto Decl., Ex. G.  As to the first five firms to which Class Counsel reached out, two responded by letter that their Class Member clients had been fully informed.  *See* Benedetto Decl. Ex. H.  One did not respond at all.  One left a voicemail but never responded in writing. *See* Benedetto Decl. at ¶ 25.  The last responded in

desire to retain counsel. *See* Benedetto Decl. ¶¶ 15-16. Counsel for CSG further represented to Class Counsel that CSG expected all of its clients to have retained individual counsel by the time it might provide a list of its clients to Class Counsel, should discussions yield an agreed-upon confidentiality agreement for the provision of the client list. *See* Benedetto Decl. at ¶ 15. Thus, CSG believed that Class Counsel would be limited in their ability to ensure that Class Members entered into contracts with CSG with their eyes wide open, exclusively through assurances from individually-retained counsel.

Putting aside whether Class Counsel agree that it would be improper for them to contact directly those Class Members who have individually-retained counsel, to streamline the process and to eliminate further briefing on the matter, in light of the fast-approaching August 7 registration deadline, Class Counsel ask the Court to approve and direct dissemination of the proposed Notice inviting Class Members or their individually-retained counsel to contact Class Counsel, if they were confused and entered into contracts with anyone as a result of misinformation or misunderstandings.

### 2. X1Law, P.A.

Class Counsel recently became aware that a law firm by the name of X1Law, P.A. is using the website www.nflconcussioncase.com/register to advertise "registration" to Class Members in this case. Class Counsel sent a Cease-and-Desist letter to the firm's lead counsel on June 1, 2017, attaching the webpages and a Google search of "NFL Concussion Settlement," which revealed its "registration" page as one of the top results. *See* Benedetto Decl., Ex. K (letter and attachments).

---

writing, following a lengthy conversation with Class Counsel, with additional questions. Class Counsel responded in writing to those questions and did not hear further from that firm, as further discussed below. *See* Benedetto Decl. at ¶¶ 21-24 and corresponding Exs I and J.

Class Counsel explained the likelihood of confusion in light of the obvious similarity between X1Law's www.nflconcussioncase.com website and the official Court-authorized Settlement Website, www.nflconcussionsettlement.com and its registration page, https://www.nflconcussionsettlement.com/Register.aspx. *Id.* Class Counsel demanded that X1Law, P.A. halt the use of the website and provide written confirmation of same, which they have done. *Id.* Class Counsel also demanded that X1Law provide a list of all Class Members who have "registered" (or attempted to do so) through their "registration" page, www.nflconcussioncase.com/register, which they have not done. *See id.* and Benedetto Decl., Ex. L (letter dated June 6, 2017 from X1Law's counsel).

Because they do not know which Class Members attempted to "register" by contacting X1Law, P.A., Class Counsel are hopeful that the proposed Class Notice will prompt any Class Members who attempted to register by these means to realize that they were not interacting with the official Claims Administrator and to contact Class Counsel for clarification.

**3.**      **Joe Pisarcik and Slater Slater Schulman, LLP and Levy, Baldante, Finney & Rubenstein, P.C.**

Class Counsel learned from a concerned Class Member that retired player and former President and CEO of the NFL® Alumni Association, Joe Pisarcik, is a paid spokesman through his consulting group, J.P. Consulting Group, LLP, for two law firms and that he had sent a solicitation email directly to Class Members. *See* Benedetto Decl., Ex. M (Pisarcik email dated May 24, 2017).

That email states in bold in the first paragraph that Class Members "**must register by August 7, 2017**" and thereafter provides a "**Click To Call Now**" hyperlink. The email then states in the second paragraph that August 7 is the "the deadline former players must register by if they want to participate in the **National Football League Players' Concussion Injury Litigation**

**Class Action Settlement**," followed by two more hyperlinks – "**Information: Click Here**" and "**Player Hotline:  (888)236-5164**".  Each of these hyperlinks are direct lines to the firms for which Mr. Pisarcik is a paid spokesman, or indirect lines to those firms, through Mr. Pisarcik's website. This could clearly cause confusion on the part of Class Members who received this email from Mr. Pisarcik and mistakenly believe that the former President of the NFL® Alumni Association is directing them to the official Court-authorized Settlement Website.  Not until the very fine print disclaimer after the hyperlinks does the email reference that Mr. Pisarcik's consulting group is a paid consultant spokesperson of those firms and that the email is attorney advertising.

Additionally, the email is confusing in referring to "serious head injuries" as compensable. *Id.*  There are specific Injury Definitions and Qualifying Diagnoses included in the Settlement Agreement.  The reference to "upwards of seven figures" is also confusing.  *Id.*  The maximum awards *are* seven figure awards; they are not *more* than seven figures.

The two law firms that have joined together to pay Mr. Pisarcik's consulting firm are also on a single retainer agreement that contains a glaring error.  *See* Benedetto Decl., Ex. N. Apparently, these law firms do not know which is the operative Settlement Agreement that received Final Approval.  They refer to the "Class Action Settlement of June 25, 2014" in their retainer instead of the operative Class Action Settlement Agreement (As Amended), dated February 13, 2015 (ECF No. 6481-1).  This, too, could confuse Class Members.

### 4.    Legacy Pro Sports and Kagan Law Firm

Brandon Siler, a retired player, is founder and president of Legacy Pro Sports ("Legacy"), an organization that purports on its website to be "working with dozens of former NFL players, consulting them through the Concussion Settlement Process."  *See* Benedetto Decl., Ex. O (Legacy Website).   Legacy sends its solicitation email to Class Members with the subject line "NFL

Concussion Settlement Registration" from a person identified as the "Player Development Coordinator," and attaches the official NFL Concussion Settlement-bannered "Baseline Assessment Program HIPAA Authorization Form," along with its contract, a law firm's retention agreement and other documents. *See* Benedetto Decl., Exs. P-1 through -6 (redacted cover email and five attachments). The HIPAA form begins "You must complete and sign this Form if you are a Retired NFL Football Player or the Representative Claimant of a Retired NFL Football Player and want to participate in the Baseline Assessment Program (the "BAP")[.]" *Id.*, Ex. P-2. Thus, before they have even contracted with Legacy, Class Members are asked to sign a HIPAA release.

In addition to the HIPAA release, Legacy attaches to its email its Consulting/Management Contract, the Kagan Law Firm's Authority to Consult with Legacy Pro Sports, LLC, the Kagan Law Firm's Authority To Represent – Contract of Employment and the Kagan Law Firm's Statement of Client Rights. *See id.* at Exs. P-3 through P-6, respectively. In exchange for "ten percent (10%) of all monetary awards that the client receives from the 'Client Benefit,'" Legacy agrees to perform certain services.[5] The "Client Benefit" is defined as "certain funds that Client may be entitled to under The National Football League Concussion Class Action Settlement Agreement and related cases." *Id.* at Ex. P-3. The Kagan Law Firm's fee is 15 percent of all proceeds up to $1 million and 10 percent of any and all proceeds over that amount. As per

---

[5] The services which Legacy contracts to provide are the following:

  a. Educate and inform Client on Client Benefit and other similar matters;
  b. Assist Client with full data gathering and submissions;
  c. Consult Client on necessary and/or recommended professional services (ex. legal or medical);
  d. Coordinate all travel and logistics aw needed; and
  e. Act as liaison between Client and Professional (ex. legal or medical) service providers.

Benedetto Decl., Ex. P-3.

Legacy's contract, the "Client authorizes Client's attorneys to disburse Legacy's Consulting Fee directly to Legacy from the Client Benefit." *Id.* at Ex. P-5. The Kagan Law Firm's "Authority to Consult with Legacy Pro Sports, LLC" provides "[t]he Kagan Law Firm is not responsible for compensating Legacy, in any manner, for the services that Legacy provides to me, however, I unconditionally and irrevocably authorize the Kagan Law Firm to pay Legacy Pro Sports, LLC, its compensation due from client, directly out of the client's settlement proceeds received by the law firm." *Id.* at Ex. P-4. The fact that all of these documents are sent to Class Members simultaneously is troubling and is likely to cause confusion.

Class Counsel see the proposed Class Notice as a first step in determining the level of confusion among Class Members resulting from the deluge of solicitations they have received from third party claims service providers, alone or in conjunction with law firms, or others. Moreover, should the reference in the cover email from Legacy to the fact that once the Class Members signs all of the documents, "you'll be ready for scheduling," *id*. at P-1, refer to sending Class Members to physicians outside of the Settlement Program for Qualifying Diagnoses, as discussed below, Class Counsel expect the proposed Class Notice to ferret out that issue as it pertains to Legacy as well.

**B.    Any Representation to Class Members That Qualifying Diagnoses May Be Obtained Outside of the Settlement Program After January 7, 2017 Is Patently Inaccurate**

Section 6.3 of the Settlement Agreement provides:

(b) *Following the Effective Date*, a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, or ALS shall be made *only* by Qualified MAF Physicians, except that a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment or Level 2 Neurocognitive Impairment may also be made by Qualified BAP Providers as set forth in Section 5.2 and consistent with the terms of Exhibit 1 (Injury Definitions).

Class Action Settlement Agreement (As Amended) [ECF No. 6481-1] ("Settlement Agreement") at § 6.3(b) (emphasis added).  Thus, after January 7, 2017, only Qualified BAP Providers and Qualified MAF Physicians may provide Retired Players with Qualifying Diagnoses.

Notwithstanding this clear provision, Class Counsel have received reports that third parties, certain Retired NFL Players[6] and certain individually-retained counsel are representing to Retired NFL Players (as part of the inducement for retention or otherwise) that they can facilitate Retired NFL Players' obtaining Qualifying Diagnoses by sending them to certain "independent" physicians and advancing the costs of the examination or travel out of state to obtain the examination.  Benedetto Decl. at ¶ 29.  Whether this misrepresentation is due to a lack of familiarity with the operative Settlement Agreement and its terms, *e.g.*, Benedetto Decl., Ex. N (Slater/Levy retainer), or stems from an unfounded distrust of the Qualified BAP Providers and Qualified MAF Physicians, it is false to represent to Class Members that Qualifying Diagnoses can be obtained outside of the Settlement Program at this juncture.

### 1.  NFL Case Consulting, LLC (now known as Case Strategies Group, or "CSG")

During their discussions, Class Counsel made Counsel for CSG aware that NFL Case Consulting's website contained this type of misrepresentation.  *See* ECF No. 7625-1, at 2, 9-10 (reference on then-posted website for NFL Case Consulting to providing Class Members with "Referrals to Qualified Doctors for Independent Medical Evaluations," suggesting that "choosing the wrong physician may delay or jeopardize a legitimate claim" and providing a link to "Help me Find a Qualified Doctor").  Additionally, the first contract that CSG was using to contract

---

[6]  This Court already is well aware of the dissemination of this type of misinformation by Class Member Fred Willis.  *See* ECF Nos. 7175, 7175-1 to -6, 7376, 7376-1.

with Class Members for a 15% fee contained the reference to "medical testing conducted independently of the settlement." Benedetto Decl., Ex. B.

Additionally, one of the lawyers that CSG "presents" to its clients who express the desire to retain counsel (in addition to retaining CSG) expressed the clear misconception, as late as May 31 (after Class Counsel already had made clear to Counsel for CSG that Qualifying Diagnoses outside of the Settlement Program were not possible after January 7, 2017), demonstrated confusion as to who could provide a Qualifying Diagnosis after the Effective Date, and a lack of understanding of the Settlement terms. He commented, as to the time period after January 7, 2017, ignoring Section 6.3(b), "there is nothing in the information listed in the settlement or on the information page that states that a Class Member cannot utilize a private doctor" and queried, "[i]s it your assertion that if a Class Member utilizes a private doctor who has the same credentials as the Qualified MAF Physicians listed on the settlement website, any qualifying diagnosis that derives from the private doctor will not be accepted?" Benedetto Decl., Ex. I (Chart attached to May 31, 2017, item no. 11). Class Counsel responded on June 1, 2017 to explain where in the Settlement Agreement and on the Settlement Website's FAQs these clear terms of the Settlement are stated and explained. Benedetto Decl., Ex. J. As with all of the other misrepresentations and misunderstandings being spread by third parties, however, the damage may already have been done – Class Members may have already been sent for examinations outside of the Settlement Program (incurring costs for same or debt to those advancing the costs) with the promise of receiving a Qualifying Diagnosis. Hence, a classwide notice clarifying this point is needed.

## 2.    Concussion Case Management

On May 25, 2017, Class Counsel received a forwarded email from a concerned Class Member attaching an email from third-party claims service provider, Concussion Case

Management ("CCM") that contains several misrepresentations.  *See* Benedetto Decl., Ex. Q. First, the entity represented that it had available a "[n]ationwide network of physicians who are qualified to perform the required neurological assessment, should you decide not to use the NFL physician group." *Id*.  Second, the email referred to the Settlement's medical providers as "the NFL physician group" – thus wrongly implying that the NFL selected the Settlement Program's physicians and that they are therefore subject to its control.  *Id.*

Accordingly, Class Counsel sent a Cease-and-Desist letter on May 26, 2017 to the company's CEO, quoting from the Settlement Agreement and explaining why the email contained false information.  Benedetto Decl., Ex. R.  Class Counsel demanded that CCM stop spreading false and misleading statements, provide prompt written assurance within ten days that CCM had stopped the spread of misinformation and provide a list of the Class Members to whom the email had been disseminated.  *Id.*  The CEO responded by email on May 26, 2017, admitting that "[i]t appears [that CCM has] misinterpreted the Settlement Agreement" and stating that he would "respond early next week."   Benedetto Decl. Ex. S.  Class Counsel still await a further written response and the list of Class Members to whom the email was disseminated.  Benedetto Decl. ¶ 39.

Class Counsel hope that once the proposed Class Notice is disseminated, any Class Members who were misled by CCM will make themselves known to Class Counsel.


III.   **ARGUMENT**

A.    **The Court Has Broad Authority To Promulgate Notices to the Class**

District courts have broad discretionary powers under Fed. R. Civ. P. 23(d) to supervise communications with class members.  Rule 23(d), in relevant part, states:

**Conducting the Actions.**
(1) ***In General.***  In conducting an action under this rule, the court may issue orders that:

. . .

(B) require – to protect class members and fairly conduct the action – giving appropriate notice to some or all class members of:
(i)   any step in the action …

Fed. R. Civ. P. 23(d)(1)(B)(i); *see Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 171 (1989);

*Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100-01 (1981).

Courts have long recognized the potential for abuse that may occur when a party or its counsel communicate with members of a class or proposed class.  *See Gulf Oil Co.*, 452 U.S. at 99-100; *In re Sch. Asbestos Litig.*, 842 F.2d 671, 679-80 (3d Cir. 1988); *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 601-02 (2d Cir. 1986); *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1201-03 (11th Cir. 1985).[7]  Specifically, misleading communications to class members regarding the litigation pose a significant threat to the fairness of the proceedings, the fundamental rights of parties, the adequacy of representation and the general administration of justice generally. *In re Sch. Asbestos Litig.*, 842 F.2d at 680; *see also Waldo v. Lakeshore Estates, Inc.*, 433 F. Supp. 783, 790-91 (E.D. La. 1977) ("Unapproved communications to class members that misrepresent the status or effect of the pending action also have an obvious potential for confusion and/or adversely affecting the administration of justice."), *appeal dismissed*, 579 F.2d 642 (5th Cir. 1978).

---

[7]   That the communications in question are in the nature of business solicitations or marketing of services is of no moment.  As the Eleventh Circuit noted in *Kleiner*, commercial speech that is "untruthful or misleading . . . has no claim on first amendment immunity…. Commercial speech merits constitutional safeguards only to the extent it is accurate, in keeping with its purpose of insuring the free flow of reliable information crucial to independent decisionmaking."  *Kleiner*, 751 F.2d at 1204 (citing *Cent. Hudson Gas Co. v. Pub. Serv. Comm'n*, 447 U.S. 557, 566 (1980), and *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976)).

Because of the potential for abuse, many courts have found that this power to regulate communications to class members is adjunct to the authority of the courts themselves. District courts have "both the duty and the broad authority to . . . enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co.*, 452 U.S. at 100; *In re Sch. Asbestos Litig.*, 842 F.2d at 679-80. "The judge has ultimate control over communications among the parties, third parties, or their agents and class members on the subject matter of the litigation to ensure the integrity of the proceedings and the protection of the class." David F. Herr, *Annotated Manual for Complex Litigation, Fourth* § 21.33, at 404 & n.917 (rev. ed. 2016) (hereafter "MCL"); *accord In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, No. 05-MD-1720, 2014 WL 4966072, at *31 (E.D.N.Y. Oct. 3, 2014) (same). "The court may take curative action – such as requiring the distribution of corrective notices or entering injunctive relief – where misleading or false statements are made to class members." *Id.*; *see also In re Lupron Mktg. and Sales Practices Litig.*, MDL No. 1430, No. 01-10861-RGS, ECF Nos. 264-2, 281, 295, and 306 (ordering dissemination of Curative Notice, with expense to be borne by law firm that put misleading and inaccurate information concerning certified class on its websites and in direct mailings to class members). "Corrective or prophylactic notice to potential class members may be ordered under Rule 23(d)(2) at any stage of the proceedings[.]" *See* MCL § 21.33 at 404 n.917.

At this time, the only curative action Class Counsel is requesting is a Notice to the Class Members. Class Counsel, however, respectfully reserve the right to seek further relief after the requested Notice is disseminated and Class Members' responses thereto are assessed.

**B.    The Proposed Class Notice Is Appropriate**

As false information about the Settlement spreads and dubious solicitation methods persist, Class Counsel could continue to send Cease-and-Desist letters and to demand that

17

misrepresentations and certain tactics stop and that lists of those affected Class Members be produced.  And Class Counsel could bring motions for injunctions piecemeal as necessary to police the numerous third parties and others spreading misinformation for the purpose of profiting from Class Members who are unaware of their own lack of full understanding of the persons and entities with whom they are dealing and the value of the services they are purporting to perform for their fees.  Continuing to address these solicitations on a piecemeal basis, though, presents Class Counsel with the prospect of playing a figurative game of Whack-a-Mole[8]:  each time one source of misinformation to Class Members is addressed, yet another one comes to Class Counsel's attention.

Importantly, the August 7, 2017 deadline for registration is fast approaching.  Likely, the most effective and expedient means to clear up these serious misrepresentations and misunderstandings is with a broad notice to the Class.  Unlike other solicitations that Class Members receive from sundry sources, they understand that the formal notices they have received are official, Court-approved and a reliable source of information.  Thus, Class Counsel are confident that if the Court approves and allow dissemination of the proposed Notice, any Class Members who have received and acted upon misrepresentations will make themselves known to Class Counsel, who can then raise matters with the Court expeditiously and in an organized fashion.

---

[8] *Cf.  In re Pittsburgh Corning Corp.*, No. BR 00-22876 JKF, 2013 WL 2299620, at *77 n.8 (Bankr. W.D. Pa. May 24, 2013) (noting use of Whack-a-Mole "colloquially to denote a repetitive and futile task:  each time an adversary is whacked it only pops up again somewhere else") (citation and internal quotation marks omitted).

## IV.    <u>**CONCLUSION**</u>

For the reasons stated above, the Court should direct that the Claims Administrator disseminate forthwith a Class Notice in substantially the form of that annexed to the accompanying proposed Order.

Dated:  June 9, 2017                                      Respectfully submitted,

<u>/s/ Christopher A. Seeger</u>
Christopher A. Seeger
SEEGER WEISS LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
<u>cseeger@seegerweiss.com</u>

*Co-Lead Class Counsel*

Sol Weiss
ANAPOL WEISS
One Logan Square
130 N. 18th St. Ste. 1600
Philadelphia, PA 19103
Phone: (215) 735-1130
Fax: (215) 735-2024
<u>sweiss@anapolweiss.com</u>

*Co-Lead Class Counsel*