# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody**<br><br>CIVIL ACTION NO: 2:14-cv-00029-AB |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

### DECLARATION OF TERRIANNE BENEDETTO IN SUPPORT OF CO-LEAD CLASS COUNSEL'S MOTION FOR APPROVAL OF NOTICE TO CLASS MEMBERS TO ADDRESS <u>SOLICITATIONS RECEIVED BY CLASS</u>

TERRIANNE BENEDETTO declares, pursuant to 28 U.S.C. § 1746, based upon her personal knowledge, information and belief, the following:

1. I am a partner at Seeger Weiss LLP. My partner, Christopher A. Seeger, was appointed as Co-Lead Class Counsel in the litigation. I am fully familiar with the matters set forth herein, including the procedural history of this litigation and the class-wide settlement that this Court approved. These statements are based upon my personal knowledge. I submit this Declaration in support of Co-Lead Class Counsel's Motion for Approval of Notice to Class Members to Address Solicitations Received by Class.

2. In mid- to late-March, 2017, Co-Lead Class Counsel ("Class Counsel") became aware that an entity then known as NFL Case Consulting, LLC and its principal Jim McCabe, were spreading misinformation concerning the Settlement and engaging in solicitation practices for its claims services that were not well-received by certain Class Members.[1]  As such, on March 27, 2017, Class Counsel filed a motion for an injunction seeking to prohibit improper communications with the Class by Jim McCabe and NFL Case Consulting, LLC (ECF No. 7347) ("Motion for Injunction").

3. The Court held a telephonic conference on April 13, 2017 to address the pending Motion for Injunction. A true and correct copy of the transcript of the telephonic hearing is attached hereto as Exhibit A.

4. In addition to the matters raised in the Motion for Injunction, during the telephone conference the Court raised and Counsel for the NFL Parties addressed, possible confusion on the part of Class Members related to the use of "NFL" in its name.

5. Thereafter, Counsel for NFL Case Consulting, LLC (now known as Case Strategies Group, or "CSG") began to meet and confer with the undersigned on telephone conference calls and to exchange emails and other documents in an attempt to amicably resolve, initially the matters raised in the Motion for Injunction, and later, as CSG revised its website and continued to communicate with Class Members, additional issues regarding misrepresentations that arose which Class Counsel found problematic.

---

[1] To protect their privacy and for reasons of attorney-client privilege, I am not identifying the Class Members with whom I spoke on the telephone or from whom I received emails reporting on their interactions with others identified in this Declaration. Should the Court deem it necessary and appropriate, I will disclose same to the Court *in camera*, or in whatever format the Court directs.

6. Over time, the parties, both together and separately, submitted Status Reports to advise the Court on the status of the ongoing meet and confer process. Specifically, Status Reports, often with attachments, were submitted on April 21, 2017 (ECF No. 7532), April 28, 2017 (ECF No. 7585), May 12, 2017 (ECF Nos. 7624, 7625), May 19, 2017 (ECF No. 7711), May 30, 2017 (ECF No. 7768), June 6, 2017 (ECF No. 7777) and June 7, 2017 (ECF No. 7782).

7. Class Counsel were concerned about numerous additional misrepresentations on the NFL Case Consulting website when it was updated and I advised Counsel for CSG of same via email on April 18, 2017. *See* ECF No. 7625-1, at 2-3. Eventually, as a result, CSG removed the misrepresentations and revised its website.

8. The Counsel for the NFL Parties met and conferred with Counsel for CSG and eventually, CSG changed its name from NFL Case Consulting, LLC to Case Strategies Group.

9. An additional concern that was expressed to Counsel for CSG was the 15% fee contract that CSG had been entering into with Class Members referenced "medical testing [to be] conducted independently of the settlement," implying, inaccurately, that after January 7, 2017, a Qualifying Diagnosis could obtained from someone other than a Qualified BAP Provider or Qualified MAF Physician. *See* Exhibit B hereto, a true and correct copy of the first contract that CSG used. *See* Exhibit C hereto, a true and correct copy of the second contract that CSG used. *See also* ECF No. 7624-1, at 4 (Class Counsel's May 5, 2017 letter to Counsel for CSG).

10. On April 7, 2017, I had spoken with a Class Member who advised that he was told by an employee of CSG that if he signed up with them, they would pay for a BAP examination for him. I relayed this information to Counsel for CSG in telephone calls and in my May 5 letter, explaining that this verbal representation by CSG was problematic because the BAP is free. *Id.*

11. Because of concerns that Class Members may have entered into contracts with CSG based upon misrepresentations, Class Counsel pressed Counsel for CSG to allow me to listen to the audiotapes that he represented CSG maintained of all calls to Class Members. *See* ECF No. 7625-1, at 2-3; ECF No. 7624-1, at 1.

12. CSG refused to allow Class Counsel to listen to its recorded audiotapes of calls with Class Members. ECF No. 7624-2, at 1.

13. CSG proposed a procedure to attempt to clear up areas of confusion involving its employees contacting those Class Members with whom it had contracted and providing ten disclosures and then, asking the Class Members, upon being so advised, to decide whether they wanted to "opt-in" and contract again with CSG or terminate the contract. *See* ECF No. 7624, 7624-2. If no response was received by a certain date, a termination letter would be sent. Attached hereto as Exhibit D is a true and correct copy of the termination letter sent by CSG to one Class Member, dated May 18, 2017.

14. Class counsel did not have input into nor ratify CSG's use of this procedure as a means to clear up confusion among Class Members and ensure that they had not contracted with CSG based upon misrepresentations or misunderstandings. Class counsel contended that the proposed procedure was inadequate. *See* ECF No. 7624-3, at 1 (Class Counsel's email dated May 11, 2017).

15. Counsel for CSG contended that it would not be proper for Class Counsel to directly contact Class Members who were represented by individual counsel and he indicated his belief that all of the Class Members who had contracted with CSG up to that point either had already retained private counsel or were in the process of entering into retainer agreements with private counsel.

16. Counsel for CSG agreed to provide Class Counsel with identities of the seven law firms that CSG represents to its Class Member "clients" who express the desire to retain individual counsel in addition to CSG, as being capable of representing them in this litigation.

17. Attached hereto as Exhibit E are true and correct copies of the letters, dated May 19, 2017, that Class Counsel sent to five of the law firms identified by CSG as being among the list of seven law firms, namely, Reich & Binstock, LLP, The Law Offices of Ronald T. Bevans, Jr., McCall | Atten International, P.A., Jesse Dean-Kluger, P.A., and Farrell & Patel, Attorneys at Law.

18. Attached hereto as Exhibit F are true and correct copies of the letters dated June 2, 2017, that Class Counsel sent to the remaining two firms on CSG's list of seven firms, namely, McMullin & Associates and Dutton Law Group.

19. Attached hereto as Exhibit G are true and correct copies of the responsive emails, dated June 2, 2017, from the law firms of McMullin & Associates and Dutton Law Group.

20. Attached hereto as Exhibit H are true and correct copies of the responsive letters, dated May 25, 2017, from Reich & Binstock, LLP and The Law Offices of Ronald T. Bevans, Jr. to Class Counsel.

21. At their request, I participated in a conference call with attorneys from McCall | Atten International, P.A. on May 22, 2017.

22. Attached hereto as Exhibit I is a true and correct copy of the May 31, 2017 letter from McCall | Atten International, P.A. to Class Counsel.

23. Attached hereto as Exhibit J is a true and correct copy of the email, dated June 1, 2017 from Class Counsel to McCall | Atten International, P.A.

24. Class Counsel did not hear further from McCall | Atten International, P.A.

25. Neither Jesse Dean-Kluger, P.A., nor Farrell & Patel, Attorneys at Law ever responded in writing to Class Counsel's letter. Farrell & Patel did leave one voicemail message.

26. On or about May 25, 2017, Class Counsel began receiving reports from the Claims Administrator that Class Members were telephoning BrownGreer and expressing confusion as to why they had received a termination letter and whether CSG was the Claims Administrator.

27. As a result, I telephoned several of these unrepresented Class Members who also reported to me that they were confused and had believed, throughout their dealings with CSG that they were, in fact, interacting with the Court-appointed Claims Administrator.

28. In addition, I also returned the calls of Class Members who had contacted either Seeger Weiss or the Claims Administrator who expressed displeasure at the repeated calls they were receiving from CSG.

29. Further, I communicated with Class Members who reported that certain lawyers had been promising to fly Class Members out of state for medical examinations to obtain Qualifying Diagnoses after January 7, 2017.

30. Attached hereto as Exhibit K is a true and correct copy of Class Counsel's June 1, 2017 Cease-and-Desist letter addressed X1Law, P.A., with attachments.

31. Attached hereto as Exhibit L is a true and correct copy of the June 6, 2017 letter from counsel for X1Law, P.A. to Class Counsel.

32. Attached hereto as Exhibit M is a true and correct copy of the May 24, 2017 email from Joe Pisarcik to a Class Member.

33. Attached hereto as Exhibit N is a true and correct copy of the unsigned NFL Concussion Contingent Fee Agreement between the Class Member who received the email from Joe Pisarcik and Slater Slater Schulman LLP and Levy, Baldante, Finney & Rubenstein, P.C.

34. Attached hereto as Exhibit O is a true and correct copy of the Legacy Pro Sports website.

35. Attached hereto as Exhibits P-1 through P-6, respectively, are true and correct copies of: (1) the cover email, dated May 22, 2017, from Legacy Pro Sports; (2) the official NFL Concussion Settlement-bannered "Baseline Assessment Program HIPAA Authorization Form"; (3) Legacy's Consulting/Management Contract; (4) the Kagan Law Firm's Authority to Consult with Legacy Pro Sports, LLC; (5) the Kagan Law Firm's Authority To Represent – Contract of Employment; and (6) the Kagan Law Firm's Statement of Client Rights.  All of the documents are unsigned.

36. Attached hereto as Exhibit Q is a true and correct copy of the email from a Class Member forwarding the email he received from Concussion Case Management on May 25, 2017.

37. Attached hereto as Exhibit R is a true and correct copy of Class Counsel's May 26, 2017 Cease-and-Desist letter.

38. Attached hereto as Exhibit S is a true and correct copy of the responsive email, dated May 26, 2017, from the CEO of Concussion Case Management, Jerry Passaro.

39. Class Counsel prompted Mr. Passaro with an email on June 6, 2017 and did receive a voicemail message from him thereafter, but, received no further written response.

40. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of June, 2017.

            *s/ TerriAnne Benedetto*
            TERRIANNE BENEDETTO
            Seeger Weiss LLP
            *Counsel for the Plaintiff Class*