# Exhibit E

**SEEGERWEISS**LLP

77 Water Street, New York, NY 10005   P 212.584.0700   F 212.584.0799   www.seegerweiss.com

May 19, 2017

**Via Email and Federal Express Overnight**
Dennis C. Reich
Robert J. Binstock
Reich & Binstock, LLP
4265 San Felipe
Suite 1000
Houston, TX 77027

Re:    *In re: NFL Players' Concussion Injury Litigation*
         No. 2:12-md-02323-AB (E.D. Pa.)

Dear Messrs. Reich and Binstock:

We are writing to you as Court-appointed Co-Lead Class Counsel for the Settlement Class in *In re NFL Players' Concussion Injury Litigation*.  As you may be aware, on March 27, 2017, we filed a motion for an injunction against the entity formerly known as NFL Case Consulting, LLC, which is currently known as Case Strategies Group, and its principal, Jim McCabe (collectively referred to herein as "CSG").  *See* ECF No. 7347.  Based upon facts contained in that motion and supporting memorandum and affidavit, and based upon facts that we have learned since the filing of that motion, we became concerned and continue to be concerned that Class Members have signed contracts with CSG, for 10% to 15% of their future Monetary Awards, based in whole or in part upon misrepresentations made by CSG in writing, orally or in its website content.

Counsel for CSG has identified your firm as one of several firms to which CSG has referred those Class Members with whom it has contracted.  We understand that your firm has been retained by several of those Class Members.

Counsel for CSG has now represented to us that CSG has given each Class Member with whom it previously had contracted a second opportunity to decide whether each wanted to contract with CSG again – what CSG's counsel terms as an "opt-in" process.  This process has included a set of written and verbal "disclosures."  Although CSG's counsel provided us with a set of disclosures that CSG proposed to include in this process, we did not endorse the accuracy or the completeness of these disclosures.  Nor did we agree to the process as proposed by CSG's counsel.  Specifically, the process – which is now almost, if not entirely, complete – also included CSG's employees contacting these Class Members by telephone to allegedly determine whether the Class Member had been misled and to clear up any misrepresentations or misunderstandings.  Based upon information we had received related to prior verbal communications by CSG's employees, we feared that these additional verbal communications could actually cause more confusion.

Accordingly, we are reaching out to you, as individually retained counsel to several of the Class Members who have also contracted with CSG, to ask that you assure yourselves that your clients have not been swayed by any misrepresentations by CSG, particularly those that are at odds with the below-identified facts about the Settlement, and that they did not contract with CSG based in whole or in part upon any such misrepresentation or misunderstanding.

Some of the issues that we fear the Class Members do not understand are enumerated below.  These are in addition to, or in some instances a clarification of, the disclosures that CSG allegedly included in their "opt-in" process.  Attached hereto are ECF Nos. 7624, 7624-1 through -4 and 7625, 7625-1, which are the latest Status Reports to the Court.  *See* ECF No. 7624 at n.1 for CSG's ten disclosures.

These key facts about the Settlement benefits, procedures and personnel are as follows:

1.  A Class Member does not need CSG in order to:  register, participate in the BAP by scheduling an appointment with a Qualified BAP Provider, schedule an appointment with a Qualified MAF Physician, or file a Claim.  In fact, your law firm could handle all of these details for the client.

2.  Registering is not a complicated process.

3.  Scheduling an examination with a Qualified BAP Provider or Qualified MAF Physician is not a complicated process.

4.  The examination by a Qualified BAP Provider is *free*.

5.  Class Members *must* go through the BAP Administrator to schedule a BAP Examination.

6.  Filing a claim is not a complicated process.

7.  The valuation of the Monetary Award is a simple calculation, based upon the Retired Player's age at diagnosis, Qualifying Diagnosis, Eligible Seasons played, and certain other offsets. The Monetary Award grid is on the Settlement Website.

8.  The Claims Administrator is independent of the NFL and was appointed by the Court, with the input of Class Counsel.  Therefore, he is not adverse to, or somehow predisposed against, Class Members.

9.  The independent BAP Administrator was similarly appointed by the Court, with the input of Class Counsel, and is not adverse to, or somehow predisposed against, Class Members.

10. The Court has appointed (without input from the NFL Parties, their counsel, or Class Counsel) the Special Masters.

11. After January 7, 2017, Class Members *cannot* obtain a Qualifying Diagnosis from anyone other than a Qualified BAP Provider or Qualified MAF Physician.

12. If CSG or any other person or entity sent a Class Member for a medical examination after January 7, 2017 and he received a diagnosis, he still must be examined by a Qualified BAP Provider or Qualified MAF Physician in order to obtain a Qualifying Diagnosis and make a Claim for a Monetary Award.

13. The Qualified BAP Providers and Qualified MAF Physicians were selected and contracted by the BAP Administrator and the Claims Administrator, respectively. They are independent and are not biased.

14. The physicians and providers serving on the Appeals Advisory Panel and as the Appeals Advisory Panel Consultants were jointly selected by Co-Lead Class Counsel and counsel for the NFL Parties. It was the Court that reviewed their nominations and ultimately appointed them. Like other officials appointed in connection with the effectuation of the Settlement, they are independent and are not biased.

15. If a claim is denied for deficiencies in the submission, the Claims Administrator will work with Class Members or their counsel to correct the deficiency.

16. Co-Lead Class Counsel stand ready to assist any Class Member at any point in the process.

17. If a Class Member is eligible for the BAP, but does not participate, the Monetary Award for any later Qualifying Diagnosis (except for a Qualifying Diagnosis of ALS), may be reduced by 10%, unless the Qualifying Diagnosis is made before the deadline for the Retired Player's BAP examination.

18. A Class Member who received a Qualifying Diagnosis prior to January 7, 2017, will in most instances, have his claim reviewed by the Appeals Advisory Panel.

These facts are simple, but CSG has made misrepresentations related to these facts that may have caused confusion, as detailed on our attached correspondence with CSG's counsel.

We would appreciate it if you could advise us as to whether you have discussed the foregoing facts with your clients and confirmed that they understood each of the above when they elected to "opt-in" with CSG. If they had misunderstood one or more of the above facts and signed a new contract with CSG, we would like to know that as well.

It is our intention to advise the Court of this communication and your response or non-response by Tuesday, May 30, 2017, so we request that you respond by close of business on Thursday, May 25, 2017.

Very truly yours,

_/s/ Christopher A. Seeger_
Christopher A. Seeger
SEEGER WEISS LLP

Sol Weiss
ANAPOL WEISS

*Co-Lead Class Counsel*

Encls.

**SEEGERWEISS**LLP

77 Water Street, New York, NY 10005    P 212.584.0700    F 212.584.0799    www.seegerweiss.com

May 19, 2017

**Via Email and Federal Express Overnight**
Ronald T. Bevans, Jr.
The Law Offices of Ronald T. Bevans, Jr.
1221 Brickell Ave.
Suite 2660
Miami, FL 33131-3259

Re:    *In re: NFL Players' Concussion Injury Litigation*
       No. 2:12-md-02323-AB (E.D. Pa.)

Dear Mr. Bevans:

We are writing to you as Court-appointed Co-Lead Class Counsel for the Settlement Class in *In re NFL Players' Concussion Injury Litigation*. As you may be aware, on March 27, 2017, we filed a motion for an injunction against the entity formerly known as NFL Case Consulting, LLC, which is currently known as Case Strategies Group, and its principal, Jim McCabe (collectively referred to herein as "CSG"). *See* ECF No. 7347. Based upon facts contained in that motion and supporting memorandum and affidavit, and based upon facts that we have learned since the filing of that motion, we became concerned and continue to be concerned that Class Members have signed contracts with CSG, for 10% to 15% of their future Monetary Awards, based in whole or in part upon misrepresentations made by CSG in writing, orally or in its website content.

Counsel for CSG has identified your firm as one of several firms to which CSG has referred those Class Members with whom it has contracted. We understand that your firm has been retained by several of those Class Members.

Counsel for CSG has now represented to us that CSG has given each Class Member with whom it previously had contracted a second opportunity to decide whether each wanted to contract with CSG again – what CSG's counsel terms as an "opt-in" process. This process has included a set of written and verbal "disclosures." Although CSG's counsel provided us with a set of disclosures that CSG proposed to include in this process, we did not endorse the accuracy or the completeness of these disclosures. Nor did we agree to the process as proposed by CSG's counsel. Specifically, the process – which is now almost, if not entirely, complete – also included CSG's employees contacting these Class Members by telephone to allegedly determine whether the Class Member had been misled and to clear up any misrepresentations or misunderstandings. Based upon information we had received related to prior verbal communications by CSG's employees, we feared that these additional verbal communications could actually cause more confusion.

Accordingly, we are reaching out to you, as individually retained counsel to several of the Class Members who have also contracted with CSG, to ask that you assure yourselves that your clients have not been swayed by any misrepresentations by CSG, particularly those that are at odds with the below-identified facts about the Settlement, and that they did not contract with CSG based in whole or in part upon any such misrepresentation or misunderstanding.

Some of the issues that we fear the Class Members do not understand are enumerated below. These are in addition to, or in some instances a clarification of, the disclosures that CSG allegedly included in their "opt-in" process. Attached hereto are ECF Nos. 7624, 7624-1 through -4 and 7625, 7625-1, which are the latest Status Reports to the Court. *See* ECF No. 7624 at n.1 for CSG's ten disclosures.

These key facts about the Settlement benefits, procedures and personnel are as follows:

1. A Class Member does not need CSG in order to: register, participate in the BAP by scheduling an appointment with a Qualified BAP Provider, schedule an appointment with a Qualified MAF Physician, or file a Claim. In fact, your law firm could handle all of these details for the client.

2. Registering is not a complicated process.

3. Scheduling an examination with a Qualified BAP Provider or Qualified MAF Physician is not a complicated process.

4. The examination by a Qualified BAP Provider is *free*.

5. Class Members *must* go through the BAP Administrator to schedule a BAP Examination.

6. Filing a claim is not a complicated process.

7. The valuation of the Monetary Award is a simple calculation, based upon the Retired Player's age at diagnosis, Qualifying Diagnosis, Eligible Seasons played, and certain other offsets. The Monetary Award grid is on the Settlement Website.

8. The Claims Administrator is independent of the NFL and was appointed by the Court, with the input of Class Counsel. Therefore, he is not adverse to, or somehow predisposed against, Class Members.

9. The independent BAP Administrator was similarly appointed by the Court, with the input of Class Counsel, and is not adverse to, or somehow predisposed against, Class Members.

10. The Court has appointed (without input from the NFL Parties, their counsel, or Class Counsel) the Special Masters.

11. After January 7, 2017, Class Members *cannot* obtain a Qualifying Diagnosis from anyone other than a Qualified BAP Provider or Qualified MAF Physician.

12. If CSG or any other person or entity sent a Class Member for a medical examination after January 7, 2017 and he received a diagnosis, he still must be examined by a Qualified BAP Provider or Qualified MAF Physician in order to obtain a Qualifying Diagnosis and make a Claim for a Monetary Award.

13. The Qualified BAP Providers and Qualified MAF Physicians were selected and contracted by the BAP Administrator and the Claims Administrator, respectively.  They are independent and are not biased.

14. The physicians and providers serving on the Appeals Advisory Panel and as the Appeals Advisory Panel Consultants were jointly selected by Co-Lead Class Counsel and counsel for the NFL Parties.  It was the Court that reviewed their nominations and ultimately appointed them.  Like other officials appointed in connection with the effectuation of the Settlement, they are independent and are not biased.

15. If a claim is denied for deficiencies in the submission, the Claims Administrator will work with Class Members or their counsel to correct the deficiency.

16. Co-Lead Class Counsel stand ready to assist any Class Member at any point in the process.

17. If a Class Member is eligible for the BAP, but does not participate, the Monetary Award for any later Qualifying Diagnosis (except for a Qualifying Diagnosis of ALS), may be reduced by 10%, unless the Qualifying Diagnosis is made before the deadline for the Retired Player's BAP examination.

18. A Class Member who received a Qualifying Diagnosis prior to January 7, 2017, will in most instances, have his claim reviewed by the Appeals Advisory Panel.

These facts are simple, but CSG has made misrepresentations related to these facts that may have caused confusion, as detailed on our attached correspondence with CSG's counsel.

We would appreciate it if you could advise us as to whether you have discussed the foregoing facts with your clients and confirmed that they understood each of the above when they elected to "opt-in" with CSG.  If they had misunderstood one or more of the above facts and signed a new contract with CSG, we would like to know that as well.

It is our intention to advise the Court of this communication and your response or non-response by Tuesday, May 30, 2017, so we request that you respond by close of business on Thursday, May 25, 2017.

Very truly yours,

 /s/ Christopher A. Seeger
Christopher A. Seeger
SEEGER WEISS LLP

Sol Weiss
ANAPOL WEISS

*Co-Lead Class Counsel*

Encls.

**SEEGERWEISS**LLP

77 Water Street, New York, NY 10005   P 212.584.0700   F 212.584.0799   www.seegerweiss.com

May 19, 2017

<u>**Via Email and Federal Express Overnight**</u>
Joey M. McCall
McCall | Atten International, P.A.
One Alhambra Plaza
Penthouse Floor
Coral Gables, FL 33134

Re:     *In re: NFL Players' Concussion Injury Litigation*
        No. 2:12-md-02323-AB (E.D. Pa.)

Dear Mr. McCall:

We are writing to you as Court-appointed Co-Lead Class Counsel for the Settlement Class in *In re NFL Players' Concussion Injury Litigation*.  As you may be aware, on March 27, 2017, we filed a motion for an injunction against the entity formerly known as NFL Case Consulting, LLC, which is currently known as Case Strategies Group, and its principal, Jim McCabe (collectively referred to herein as "CSG").  *See* ECF No. 7347.  Based upon facts contained in that motion and supporting memorandum and affidavit, and based upon facts that we have learned since the filing of that motion, we became concerned and continue to be concerned that Class Members have signed contracts with CSG, for 10% to 15% of their future Monetary Awards, based in whole or in part upon misrepresentations made by CSG in writing, orally or in its website content.

Counsel for CSG has identified your firm as one of several firms to which CSG has referred those Class Members with whom it has contracted.  We understand that your firm has been retained by several of those Class Members.

Counsel for CSG has now represented to us that CSG has given each Class Member with whom it previously had contracted a second opportunity to decide whether each wanted to contract with CSG again – what CSG's counsel terms as an "opt-in" process.  This process has included a set of written and verbal "disclosures."  Although CSG's counsel provided us with a set of disclosures that CSG proposed to include in this process, we did not endorse the accuracy or the completeness of these disclosures.  Nor did we agree to the process as proposed by CSG's counsel.  Specifically, the process – which is now almost, if not entirely, complete – also included CSG's employees contacting these Class Members by telephone to allegedly determine whether the Class Member had been misled and to clear up any misrepresentations or misunderstandings.  Based upon information we had received related to prior verbal communications by CSG's employees, we feared that these additional verbal communications could actually cause more confusion.

Accordingly, we are reaching out to you, as individually retained counsel to several of the Class Members who have also contracted with CSG, to ask that you assure yourselves that your clients have not been swayed by any misrepresentations by CSG, particularly those that are at odds with the below-identified facts about the Settlement, and that they did not contract with CSG based in whole or in part upon any such misrepresentation or misunderstanding.

Some of the issues that we fear the Class Members do not understand are enumerated below.  These are in addition to, or in some instances a clarification of, the disclosures that CSG allegedly included in their "opt-in" process.  Attached hereto are ECF Nos. 7624, 7624-1 through -4 and 7625, 7625-1, which are the latest Status Reports to the Court.  *See* ECF No. 7624 at n.1 for CSG's ten disclosures.

These key facts about the Settlement benefits, procedures and personnel are as follows:

1. A Class Member does not need CSG in order to:  register, participate in the BAP by scheduling an appointment with a Qualified BAP Provider, schedule an appointment with a Qualified MAF Physician, or file a Claim.  In fact, your law firm could handle all of these details for the client.

2. Registering is not a complicated process.

3. Scheduling an examination with a Qualified BAP Provider or Qualified MAF Physician is not a complicated process.

4. The examination by a Qualified BAP Provider is *free*.

5. Class Members *must* go through the BAP Administrator to schedule a BAP Examination.

6. Filing a claim is not a complicated process.

7. The valuation of the Monetary Award is a simple calculation, based upon the Retired Player's age at diagnosis, Qualifying Diagnosis, Eligible Seasons played, and certain other offsets.  The Monetary Award grid is on the Settlement Website.

8. The Claims Administrator is independent of the NFL and was appointed by the Court, with the input of Class Counsel.  Therefore, he is not adverse to, or somehow predisposed against, Class Members.

9. The independent BAP Administrator was similarly appointed by the Court, with the input of Class Counsel, and is not adverse to, or somehow predisposed against, Class Members.

10. The Court has appointed (without input from the NFL Parties, their counsel, or Class Counsel) the Special Masters.

11. After January 7, 2017, Class Members *cannot* obtain a Qualifying Diagnosis from anyone other than a Qualified BAP Provider or Qualified MAF Physician.

12. If CSG or any other person or entity sent a Class Member for a medical examination after January 7, 2017 and he received a diagnosis, he still must be examined by a Qualified BAP Provider or Qualified MAF Physician in order to obtain a Qualifying Diagnosis and make a Claim for a Monetary Award.

13. The Qualified BAP Providers and Qualified MAF Physicians were selected and contracted by the BAP Administrator and the Claims Administrator, respectively.  They are independent and are not biased.

14. The physicians and providers serving on the Appeals Advisory Panel and as the Appeals Advisory Panel Consultants were jointly selected by Co-Lead Class Counsel and counsel for the NFL Parties.  It was the Court that reviewed their nominations and ultimately appointed them.  Like other officials appointed in connection with the effectuation of the Settlement, they are independent and are not biased.

15. If a claim is denied for deficiencies in the submission, the Claims Administrator will work with Class Members or their counsel to correct the deficiency.

16. Co-Lead Class Counsel stand ready to assist any Class Member at any point in the process.

17. If a Class Member is eligible for the BAP, but does not participate, the Monetary Award for any later Qualifying Diagnosis (except for a Qualifying Diagnosis of ALS), may be reduced by 10%, unless the Qualifying Diagnosis is made before the deadline for the Retired Player's BAP examination.

18. A Class Member who received a Qualifying Diagnosis prior to January 7, 2017, will in most instances, have his claim reviewed by the Appeals Advisory Panel.

These facts are simple, but CSG has made misrepresentations related to these facts that may have caused confusion, as detailed on our attached correspondence with CSG's counsel.

We would appreciate it if you could advise us as to whether you have discussed the foregoing facts with your clients and confirmed that they understood each of the above when they elected to "opt-in" with CSG.  If they had misunderstood one or more of the above facts and signed a new contract with CSG, we would like to know that as well.

It is our intention to advise the Court of this communication and your response or non-response by Tuesday, May 30, 2017, so we request that you respond by close of business on Thursday, May 25, 2017.


Very truly yours,

 _/s/ Christopher A. Seeger_
Christopher A. Seeger
SEEGER WEISS LLP

Sol Weiss
ANAPOL WEISS

*Co-Lead Class Counsel*


Encls.

**SEEGERWEISS**LLP

77 Water Street, New York, NY 10005   P 212.584.0700   F 212.584.0799   www.seegerweiss.com

May 19, 2017

**Via Email and Federal Express Overnight**
Jesse Dean-Kluger
Jesse Dean-Kluger, P.A.
1110 Brickell Avenue
Suite 208
Miami, FL 33131

Re:    *In re: NFL Players' Concussion Injury Litigation*
          No. 2:12-md-02323-AB (E.D. Pa.)

Dear Mr. Dean-Kluger:

We are writing to you as Court-appointed Co-Lead Class Counsel for the Settlement Class in *In re NFL Players' Concussion Injury Litigation*. As you may be aware, on March 27, 2017, we filed a motion for an injunction against the entity formerly known as NFL Case Consulting, LLC, which is currently known as Case Strategies Group, and its principal, Jim McCabe (collectively referred to herein as "CSG"). *See* ECF No. 7347. Based upon facts contained in that motion and supporting memorandum and affidavit, and based upon facts that we have learned since the filing of that motion, we became concerned and continue to be concerned that Class Members have signed contracts with CSG, for 10% to 15% of their future Monetary Awards, based in whole or in part upon misrepresentations made by CSG in writing, orally or in its website content.

Counsel for CSG has identified your firm as one of several firms to which CSG has referred those Class Members with whom it has contracted. We understand that your firm has been retained by several of those Class Members.

Counsel for CSG has now represented to us that CSG has given each Class Member with whom it previously had contracted a second opportunity to decide whether each wanted to contract with CSG again – what CSG's counsel terms as an "opt-in" process. This process has included a set of written and verbal "disclosures." Although CSG's counsel provided us with a set of disclosures that CSG proposed to include in this process, we did not endorse the accuracy or the completeness of these disclosures. Nor did we agree to the process as proposed by CSG's counsel. Specifically, the process – which is now almost, if not entirely, complete – also included CSG's employees contacting these Class Members by telephone to allegedly determine whether the Class Member had been misled and to clear up any misrepresentations or misunderstandings. Based upon information we had received related to prior verbal communications by CSG's employees, we feared that these additional verbal communications could actually cause more confusion.

Accordingly, we are reaching out to you, as individually retained counsel to several of the Class Members who have also contracted with CSG, to ask that you assure yourselves that your clients have not been swayed by any misrepresentations by CSG, particularly those that are at odds with the below-identified facts about the Settlement, and that they did not contract with CSG based in whole or in part upon any such misrepresentation or misunderstanding.

Some of the issues that we fear the Class Members do not understand are enumerated below. These are in addition to, or in some instances a clarification of, the disclosures that CSG allegedly included in their "opt-in" process. Attached hereto are ECF Nos. 7624, 7624-1 through -4 and 7625, 7625-1, which are the latest Status Reports to the Court. *See* ECF No. 7624 at n.1 for CSG's ten disclosures.

These key facts about the Settlement benefits, procedures and personnel are as follows:

1. A Class Member does not need CSG in order to: register, participate in the BAP by scheduling an appointment with a Qualified BAP Provider, schedule an appointment with a Qualified MAF Physician, or file a Claim. In fact, your law firm could handle all of these details for the client.

2. Registering is not a complicated process.

3. Scheduling an examination with a Qualified BAP Provider or Qualified MAF Physician is not a complicated process.

4. The examination by a Qualified BAP Provider is *free*.

5. Class Members *must* go through the BAP Administrator to schedule a BAP Examination.

6. Filing a claim is not a complicated process.

7. The valuation of the Monetary Award is a simple calculation, based upon the Retired Player's age at diagnosis, Qualifying Diagnosis, Eligible Seasons played, and certain other offsets. The Monetary Award grid is on the Settlement Website.

8. The Claims Administrator is independent of the NFL and was appointed by the Court, with the input of Class Counsel. Therefore, he is not adverse to, or somehow predisposed against, Class Members.

9. The independent BAP Administrator was similarly appointed by the Court, with the input of Class Counsel, and is not adverse to, or somehow predisposed against, Class Members.

10. The Court has appointed (without input from the NFL Parties, their counsel, or Class Counsel) the Special Masters.

11. After January 7, 2017, Class Members *cannot* obtain a Qualifying Diagnosis from anyone other than a Qualified BAP Provider or Qualified MAF Physician.

12. If CSG or any other person or entity sent a Class Member for a medical examination after January 7, 2017 and he received a diagnosis, he still must be examined by a Qualified BAP Provider or Qualified MAF Physician in order to obtain a Qualifying Diagnosis and make a Claim for a Monetary Award.

13. The Qualified BAP Providers and Qualified MAF Physicians were selected and contracted by the BAP Administrator and the Claims Administrator, respectively. They are independent and are not biased.

14. The physicians and providers serving on the Appeals Advisory Panel and as the Appeals Advisory Panel Consultants were jointly selected by Co-Lead Class Counsel and counsel for the NFL Parties. It was the Court that reviewed their nominations and ultimately appointed them. Like other officials appointed in connection with the effectuation of the Settlement, they are independent and are not biased.

15. If a claim is denied for deficiencies in the submission, the Claims Administrator will work with Class Members or their counsel to correct the deficiency.

16. Co-Lead Class Counsel stand ready to assist any Class Member at any point in the process.

17. If a Class Member is eligible for the BAP, but does not participate, the Monetary Award for any later Qualifying Diagnosis (except for a Qualifying Diagnosis of ALS), may be reduced by 10%, unless the Qualifying Diagnosis is made before the deadline for the Retired Player's BAP examination.

18. A Class Member who received a Qualifying Diagnosis prior to January 7, 2017, will in most instances, have his claim reviewed by the Appeals Advisory Panel.

These facts are simple, but CSG has made misrepresentations related to these facts that may have caused confusion, as detailed on our attached correspondence with CSG's counsel.

We would appreciate it if you could advise us as to whether you have discussed the foregoing facts with your clients and confirmed that they understood each of the above when they elected to "opt-in" with CSG. If they had misunderstood one or more of the above facts and signed a new contract with CSG, we would like to know that as well.

3

It is our intention to advise the Court of this communication and your response or non-response by Tuesday, May 30, 2017, so we request that you respond by close of business on Thursday, May 25, 2017.


Very truly yours,

 /s/ Christopher A. Seeger
Christopher A. Seeger
SEEGER WEISS LLP

Sol Weiss
ANAPOL WEISS

*Co-Lead Class Counsel*


Encls.

**SEEGERWEISS**LLP

77 Water Street, New York, NY 10005   P 212.584.0700   F 212.584.0799   www.seegerweiss.com

May 19, 2017

**<u>Via Email and Federal Express Overnight</u>**
Wesley Farrell
Ricky K. Patel
Farrell & Patel, Attorneys at Law
2701 Ponce De Leon Blvd
Penthouse 300
Coral Gables, FL 33134

Re:   *In re: NFL Players' Concussion Injury Litigation*
      No. 2:12-md-02323-AB (E.D. Pa.)

Dear Messrs. Farrell and Patel:

We are writing to you as Court-appointed Co-Lead Class Counsel for the Settlement Class in *In re NFL Players' Concussion Injury Litigation*.  As you may be aware, on March 27, 2017, we filed a motion for an injunction against the entity formerly known as NFL Case Consulting, LLC, which is currently known as Case Strategies Group, and its principal, Jim McCabe (collectively referred to herein as "CSG").  *See* ECF No. 7347.  Based upon facts contained in that motion and supporting memorandum and affidavit, and based upon facts that we have learned since the filing of that motion, we became concerned and continue to be concerned that Class Members have signed contracts with CSG, for 10% to 15% of their future Monetary Awards, based in whole or in part upon misrepresentations made by CSG in writing, orally or in its website content.

Counsel for CSG has identified your firm as one of several firms to which CSG has referred those Class Members with whom it has contracted.  We understand that your firm has been retained by several of those Class Members.

Counsel for CSG has now represented to us that CSG has given each Class Member with whom it previously had contracted a second opportunity to decide whether each wanted to contract with CSG again – what CSG's counsel terms as an "opt-in" process.  This process has included a set of written and verbal "disclosures."  Although CSG's counsel provided us with a set of disclosures that CSG proposed to include in this process, we did not endorse the accuracy or the completeness of these disclosures.  Nor did we agree to the process as proposed by CSG's counsel.  Specifically, the process – which is now almost, if not entirely, complete – also included CSG's employees contacting these Class Members by telephone to allegedly determine whether the Class Member had been misled and to clear up any misrepresentations or misunderstandings.  Based upon information we had received related to prior verbal communications by CSG's employees, we feared that these additional verbal communications could actually cause more confusion.

Accordingly, we are reaching out to you, as individually retained counsel to several of the Class Members who have also contracted with CSG, to ask that you assure yourselves that your clients have not been swayed by any misrepresentations by CSG, particularly those that are at odds with the below-identified facts about the Settlement, and that they did not contract with CSG based in whole or in part upon any such misrepresentation or misunderstanding.

Some of the issues that we fear the Class Members do not understand are enumerated below.  These are in addition to, or in some instances a clarification of, the disclosures that CSG allegedly included in their "opt-in" process.  Attached hereto are ECF Nos. 7624, 7624-1 through -4 and 7625, 7625-1, which are the latest Status Reports to the Court.  *See* ECF No. 7624 at n.1 for CSG's ten disclosures.

These key facts about the Settlement benefits, procedures and personnel are as follows:

1. A Class Member does not need CSG in order to:  register, participate in the BAP by scheduling an appointment with a Qualified BAP Provider, schedule an appointment with a Qualified MAF Physician, or file a Claim.  In fact, your law firm could handle all of these details for the client.

2. Registering is not a complicated process.

3. Scheduling an examination with a Qualified BAP Provider or Qualified MAF Physician is not a complicated process.

4. The examination by a Qualified BAP Provider is *free*.

5. Class Members *must* go through the BAP Administrator to schedule a BAP Examination.

6. Filing a claim is not a complicated process.

7. The valuation of the Monetary Award is a simple calculation, based upon the Retired Player's age at diagnosis, Qualifying Diagnosis, Eligible Seasons played, and certain other offsets. The Monetary Award grid is on the Settlement Website.

8. The Claims Administrator is independent of the NFL and was appointed by the Court, with the input of Class Counsel.  Therefore, he is not adverse to, or somehow predisposed against, Class Members.

9. The independent BAP Administrator was similarly appointed by the Court, with the input of Class Counsel, and is not adverse to, or somehow predisposed against, Class Members.

10. The Court has appointed (without input from the NFL Parties, their counsel, or Class Counsel) the Special Masters.

11. After January 7, 2017, Class Members *cannot* obtain a Qualifying Diagnosis from anyone other than a Qualified BAP Provider or Qualified MAF Physician.

12. If CSG or any other person or entity sent a Class Member for a medical examination after January 7, 2017 and he received a diagnosis, he still must be examined by a Qualified BAP Provider or Qualified MAF Physician in order to obtain a Qualifying Diagnosis and make a Claim for a Monetary Award.

13. The Qualified BAP Providers and Qualified MAF Physicians were selected and contracted by the BAP Administrator and the Claims Administrator, respectively.  They are independent and are not biased.

14. The physicians and providers serving on the Appeals Advisory Panel and as the Appeals Advisory Panel Consultants were jointly selected by Co-Lead Class Counsel and counsel for the NFL Parties.  It was the Court that reviewed their nominations and ultimately appointed them.  Like other officials appointed in connection with the effectuation of the Settlement, they are independent and are not biased.

15. If a claim is denied for deficiencies in the submission, the Claims Administrator will work with Class Members or their counsel to correct the deficiency.

16. Co-Lead Class Counsel stand ready to assist any Class Member at any point in the process.

17. If a Class Member is eligible for the BAP, but does not participate, the Monetary Award for any later Qualifying Diagnosis (except for a Qualifying Diagnosis of ALS), may be reduced by 10%, unless the Qualifying Diagnosis is made before the deadline for the Retired Player's BAP examination.

18. A Class Member who received a Qualifying Diagnosis prior to January 7, 2017, will in most instances, have his claim reviewed by the Appeals Advisory Panel.

These facts are simple, but CSG has made misrepresentations related to these facts that may have caused confusion, as detailed on our attached correspondence with CSG's counsel.

We would appreciate it if you could advise us as to whether you have discussed the foregoing facts with your clients and confirmed that they understood each of the above when they elected to "opt-in" with CSG.  If they had misunderstood one or more of the above facts and signed a new contract with CSG, we would like to know that as well.

It is our intention to advise the Court of this communication and your response or non-response by Tuesday, May 30, 2017, so we request that you respond by close of business on Thursday, May 25, 2017.


Very truly yours,

 /s/ Christopher A. Seeger
Christopher A. Seeger
SEEGER WEISS LLP

Sol Weiss
ANAPOL WEISS

*Co-Lead Class Counsel*


Encls.

4