## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

IN RE: NATIONAL FOOTBALL LEAGUE
PLAYERS' CONCUSSION INJURY
LITIGATION

No. 2:12-md-02323-AB

MDL No. 2323

THIS DOCUMENT RELATES TO:

ALL ACTIONS

Hon Anita B. Brody

## CASE STRATEGIES GROUP'S RESPONSE TO CLASS COUNSEL'S MOTION FOR APPROVAL OF NOTICE TO CLASS MEMBERS
## TO ADDRESS SOLICITATIONS RECEIVED BY THE CLASS

Co-Lead Class Counsel's ("Class Counsel") Motion for Approval of Notice to Class

Members to Address Solicitations Received by Class (the "Motion") (ECF No. 7811)[1] presents

the Court with groundless allegations against Case Strategies Group ("CSG") and other third-

party claims service providers in an effort to obtain leave to provide notice to the Class regarding

claims services companies. Previously, Class Counsel filed (ECF No. 7347) and later withdrew

(ECF No. 7779) a Motion for an Injunction to enjoin CSG from communicating with the Class

about the claims assistance CSG provides.  Yet what was true when Class Counsel withdrew the

Injunction Motion remains true: CSG has lawfully provided Class Members with valuable

services, all of which were contracted for by Class Members who were fully aware of all relevant

facts.  The Motion establishes nothing to the contrary, instead relying on innuendo, Class

Counsel's beliefs, and conjecture based upon impermissible evidence.  And as shown in the

---

[1]        The Motion seeks relief from the Court partially on the basis of allegations concerning CSG's conduct.
CSG files this Response to present the Court with a complete picture of CSG activities and the valuable services it
offers to Class Members.

Argument section below, under *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), and its progeny, no restriction on communications with class members can be ordered without a clear evidentiary record of actual or threatened harm, not on empty, inadmissible assertions of "confusion."

Further, and contrary to the allegations of the Motion, CSG has always worked with Class Counsel to fully address all potential issues regarding CSG's interactions with Class Members. Indeed, CSG provided Class Counsel with an open invitation to have CSG investigate fully any allegation of a false, misleading, or confusing statement by CSG or its employees. Class Counsel has never requested that CSG investigate any specific content or incident of alleged false, misleading, or confusion by Class Members.[2] At least as to CSG, there is no basis for Class Counsel's Motion.

Despite CSG's efforts, Class Counsel filed the Motion claiming Class Member "confusion." Class Counsel's allegations rest entirely on anonymous, inadmissible, and unverifiable information. Notably, allegations of any false and misleading statements *by CSG* are absent, now replaced by generalized allegations of confusion. But to the extent any confusion exists among Class Members, it does not involve CSG's clients. As Class Counsel is well aware, all Class Members with whom CSG has contracted: (1) are independently represented by counsel who can adequately represent their interests absent interference from

---

[2]      Class Counsel's prior Motion for Injunction provided sufficient detail for CSG to investigate a single claim of false or misleading statements.  Despite the representations of Class Counsel in the Motion for Injunction, CSG investigated the claim and determine that Class Counsel's allegations were entirely false.  Class Counsel's false statements in the Motion for Injunction caused serious monetary and reputational harm to a CSG employee, Andrew Schneider, named in the Motion for Injunction.  Yet, despite the false anonymous statements within the Motion for Injunction, Class Counsel has never corrected its previous filing or apologized to Mr. Schneider for the harm caused by recklessly publishing false allegations about him.

Class Counsel; and (2) have received both verbal and written disclosures from CSG directly addressing the topics of alleged confusion listed in the Motion.

CSG diligently works to ensure that all communications with its clients are accurate, useful, and informative, and has continues to offer to work with Class Counsel to address any legitimate concern with the accuracy of CSG's communications with Class Members. Accordingly, CSG respectfully submits this Response to respond to any negative inference that may be drawn or suggested against CSG by the Motion.

## I.     <u>FACTS</u>

Class Counsel, painting with a broad brush, presents a dim vision of claims service providers such as CSG who, in return for a percentage of a claimant's settlement proceeds, assist Class Members in the filing and management of their claims.  While CSG cannot speak to what other claims service providers achieve for Class Members, CSG is fully committed to assisting its clients in all phases of the settlement process for years to come.  As described below, CSG provides valuable services to Class Members, and where requested to Class Members' attorneys, in all phases of the claims process.  Indeed, given CSG's significant experience providing claims management services across the country in class action settlements, CSG is precisely the type of claims service provider that Class Counsel should welcome in assisting Class Members.

### A.     <u>CSG's Prior Changes Negotiated with Class Counsel</u>

Without any warning or prior communication, on March 27, 2017, Class Counsel filed its original Motion for Injunctive Relief seeking to permanently enjoin CSG from "making claims and advertisements that are inconsistent with the Court-approved Notice and Settlement Agreement."  (ECF No. 7347-1 at 3.)  Class Counsel based its original Motion for Injunctive

-3-

Relief largely on the anonymous assertions of a person or persons purporting to be Class Members.  (ECF No. 7347-1 at  2-3, 6-7.)  CSG's internal investigation of those anonymous allegations ultimately determined that the allegations were entirely false. (ECF No. 7782-1.)

Although the allegations against CSG were unsubstantiated, since the filing of Motion for Injunctive Relief CSG has worked diligently with Class Counsel and counsel for the NFL to provide more detailed and specific information about CSG's services and the claims process, and to address any issue raised by either party.[3]  Specifically, CSG has taken the following concrete steps to address Class Counsel's prior allegations:

1. Enacted a complete rebranding of "NFL Case Consulting" as Case Strategies Group, to ensure Class Members could not be confused by the presence of the letters "NFL" in CSG's name;

2. Revised the content of its web pages and advertisements to prominently disclose CSG's role as a claims management service, the services provided to clients, and to alert potential clients to the availability of self-help mechanisms maintained by the Claims Administrator and approved by the Court, including the nflconcussionsettlement.com website and FAQ; and

3. Revised CSG's contract with Class Members to better communicate the specific services offered by CSG to Class Members.[4]

CSG took these steps to adequately address the concerns provided to CSG by Class Counsel and counsel for the NFL during the first month following the Motion for Injunction.

---

[3]     For example, on April 18, 2017, Class Counsel provided a list of five additional concerns beyond those raised in the Motion for Injunction.  (ECF No. 7625-1.)  These included whether or not CSG had used language which "makes the claims administration process sound rigid…." *(Id.)*  Just as with Class Counsel's prior concerns regarding whether or not the settlement process was "complicated," most of the concerns raised in the April 18 letter involve language directed to Class Members which is neither false nor misleading.

[4]     At significant cost to CSG, the company retained outside compliance counsel to fully vet and approve all communications, advertisements, and content sent to the Class.

Despite these efforts, on May 5, 2017 Class Counsel sent a letter to counsel for CSG requesting additional information related to potential misrepresentations to Class Members. (ECF No. 7624-1.)  Specifically, Class Counsel's requests were purportedly targeted at whether class members had entered into their agreements with CSG on the basis of misrepresentations by CSG – whether through CSG's website, marketing materials, contract, or verbal representations by CSG's employees.  (*See id.* at 4 ("it is very problematic if Class Members entered into agreements with [CSG] based upon the information on [CSG's] website or verbal recitations of [similar] information by [CSG's] employees".)[5]  Recognizing that Class Counsel's Motion for Injunction had sought rescission as a remedy for misrepresentations to a Class Member, CSG designed an affirmative opt-in procedure for Class Members desiring to utilize its services.

As detailed in a May 10, 2017, letter to Class Counsel (ECF No.  7624-2), CSG's  opt-in procedure provided that Class Members desiring to utilize CSG's claims management would receive both verbal and written disclosures about CSG's services.  Specifically, CSG's letter informed Class Counsel its opt-in procedure would make ten disclosures to Class Members:

1.      Case Strategies Group **is not** a law firm.

2.      Case Strategies Group **does not** work for a law firm.

---

[5]      Class Counsel has also sought to contact Class Members represented by individual counsel.  (ECF No. 7624-3 ("Your clients' unwillingness to identify the Class Members with whom they have contracted in order to facilitate **our direct communications with those individuals** is preventing us from insuring that those Class Members entered into contracts with your clients based solely upon accurate information." (emphasis added)).)  CSG's counsel recognized such a request as an attempt by Class Counsel to contact a represented party in violation of the relevant Rules of Professional Conduct governing lawyers.  *See, e.g.,* Pa. R.P.C. 4.2 ("In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.").  CSG was unwilling to provide Class Counsel with a list of Class Members utilizing its services because, as CSG repeatedly informed Class Counsel, its clients all were either represented by individual counsel, or in the process of retaining individual counsel.  (ECF No. 7624-4 ("Finally, given that many of our clients are represented by counsel, we believe your speaking to them without the consent of their counsel raises ethical considerations for you.").)

3.      Case Strategies Group works **with a network** of attorneys and can provide a Class Member with a list of options for legal counsel, but that a Class Member is free to retain any attorney he chooses.

4.      Case Strategies Group **does not** work with the National Football League ("NFL") or the NFL Players Association ("NFLPA")

5.      Case Strategies Group **does not** work with the Claims Administrator's Office and was not appointed or endorsed by the United States District Court for the Eastern District of Pennsylvania.

6.      Case Strategies Group **does** charge a fee on contingency based on the success of a Class Member's claim. If the Class Member's claim is not paid, he will not owe Case Strategies Group. If a Class Member's claim is paid, Case Strategies Group is entitled to a percentage of my recover based on my contract.

7.      The Class Member **does not** have to hire Case Strategies Group or an attorney to file a claim.

8.      The Class Member is aware and understands that Case Strategies Group does assist in the processing of my claim but the final decision as to how to proceed is the Class Member's choice as the client.

9.      The Class Member is aware that Case Strategies Group assists an attorney of my choosing with the administrative aspects of my claim.

10.     The Class Member is aware and understands that he will be in control of the decision made regarding the pursuit of my claim. The Class Member is free to terminate this agreement at any time **prior** signing the written acknowledgement without incurring any charges from Case Strategies. If the Class Member chooses to terminate his agreement at some time in the future, the Class Member will receive a bill for the services undertaken by Case Strategies Group on behalf of the Class Member.

(ECF No. 7624-2.)

Under the opt-in procedure described in the May 10, 2017 letter, CSG's clients were to receive the ten disclosures both verbally from their individual claims representative at CSG, as well as in writing. If a Class Member desired to continue using CSG's claims management services, all he need do is sign an acknowledgment that he received the disclosures and wished to

-6-

continue utilizing CSG's services.  If a Class Member did not wish to continue using CSG's services, he need do nothing, and CSG would cancel his contract free and clear of all charges and obligations.  (ECF No. 7624-2.)

The opt-in procedure was designed to address *all* concerns raised by Class Counsel in its Motion for Injunction and subsequent correspondence.  Indeed, in an effort to ensure Class Counsel's satisfaction with the disclosures, counsel for CSG provided Class Counsel with a copy of the ten disclosures in advance of their being sent to CSG's clients.  (ECF No. 7624-2.)  But this was not enough: on May 11, 2017, Class Counsel responded that while they had "reviewed the letter response from" CSG, they were prepared to declare an impasse in negotiations in order to "assure ourselves that the Class Members we represent have not entered into contracts for 10% to 15% of their monetary awards based upon inaccurate information." (ECF No. 7624-3.) This statement, however, *directly contradicts* Class Counsel's current representation to the Court that CSG had failed to "see[k] Class Counsel's input or advance approval on the procedure or disclosures in the so-called 'opt back in with CSG' procedure…."  (Mot. at 6 n.3; Benedetto Decl. at ¶¶ 13-14.)[6]  It was Class Counsel who refused to engage with CSG.[7]

Despite Class Counsel's declaration of impasse, CSG attempted to reinitiate discussions with Class Counsel on May 17, 2017, by letter.  Through discussions with Class Counsel over

---

[6]     In a later telephone conference with CSG's counsel on May 18, 2017, Ms. Benedetto admitted that Class Counsel had failed to 'drill down' on CSG's disclosures before declaring an impasse.  Had Class Counsel bothered to 'drill down' or provide *any* comments on the ten disclosures or the "opt-in" procedure, CSG would have worked diligently with Class Counsel to reach an agreement which was satisfactory – just as CSG has done at each stage of this proceeding.

[7]     Indeed, counsel for CSG noted on May 11, 2017 that CSG was "intending on speaking with each of our clients to make protective disclosures to them, the substance of which [Class Counsel] ha[s] expressed no disagreement or concern."  (ECF No. 7624-4).  Class Counsel never responded to this statement.

the next days and weeks, CSG began addressing Class Counsel's requests for information –

including permitting Class Counsel to contact individual counsel representing CSG's clients.

Further, having heard no objection from Class Counsel on the substance or mechanics of the

proposed opt-in procedure, CSG began contacting Class Members with whom it had contracted

for claims management services.  CSG received 83 signed acknowledgements from Class

Members – copies of which Class Counsel has never requested – and issued cancellation notices

to the remainder of CSG's former clients.  (*See, e.g.*, Benedetto Decl. at Ex. D).  The

cancellation notice provides class members with information on how to register with the NFL

Concussion Settlement, a link to the Court approved FAQs, and contact information for the

Claims Administrator.  (*Id.*)  There is absolutely nothing false or misleading about the

cancellation notice – nor has Class Counsel pointed to anything objectionable about it.  Indeed,

in several important respects, the cancellation notice mirrors the notice provided by the Court to

Class Members.  (ECF No. 7814.)  Nevertheless, Class Counsel has attempted to justify its

requested notice, and potential future relief, on alleged instances of confusion caused by a notice

which is completely accurate and points Class Members to the court-approved Claims

Administrator.

### B.      Class Counsel's Self-Declared "Impasse" and the Motion for Class Notice

Despite the best efforts of CSG to work with Class Counsel, on June 5, 2017, Class

Counsel again declared an impasse.  (ECF No. 7782-1 at 3.)  Though Class Counsel

acknowledged and "appreciated" CSG's efforts to date, Class Counsel claimed it needed to "seek

approval of appropriate steps to lessen or remediate Class Members' confusion."  (*Id.*)  But prior

to declaring this second impasse, Class Counsel again failed to request CSG investigate any

-8-

alleged instances of confusion by, or misrepresentations to, Class Members, despite CSG's willingness to do so at Class Counsel's request.  (*Id.*)

Class Counsel and CSG filed opposing status reports with the Court on June 6, 2017 (ECF No. 7777), and June 7, 2017 (ECF No. 7782).  On June 6, 2017, Class Counsel also withdrew its original Motion for Injunction (ECF No. 7779) against CSG.  Despite this apparent progress, on Friday, June 9, 2017, Class Counsel filed the instant Motion, seeking a class-wide notice based, at least in part, upon alleged confusion caused by CSG.  Class Counsel's Motion also sought to waive the time under Local Rule 7.1(c) for CSG and other interested parties to respond.  Prior to CSG's ability to file the instant Response, on Monday, June 12, 2017, the Court granted the motion, permitting Class Counsel to disseminate a revised notice to Class Members.  (ECF No. 7814.)

### C.   CSG's Services

As an experienced claims management service, CSG is committed to providing Class Members with a claims management service, customized to meet the needs of the individual Class Member and his unique circumstances. In return for a percentage[8] of a Class Member's award, CSG assists its 83 clients in managing and navigating the complicated NFL concussion settlement.[9] Class Members choosing to contract with CSG are provided with a single point of

---

[8]      CSG's contracts with Class Members provide claims management services in return for a contingent fee equal to between 8% and 15% of a Class Member's total recovery.  Together with the contingent fee agreement Class Members have with independent legal counsel of between 8% and 10%, Class Members choosing to contract with CSG never give up more than 25% of their total recovery for all claims and legal services over the life of the settlement.  In addition, many Class Members have contracted with CSG and independent legal counsel for far less than 25% of their total recovery.  Such contingent fee agreements are reasonable and are well within the range of fees charged solely by attorneys representing Class Members.

[9]      Class Counsel has consistently challenged CSG's characterization of the settlement process as complicated. Yet Class Counsel wants it both ways, highlighting that Class Members may be neurocognitively impaired, but

-9-

contact familiar with the Class Member and his unique circumstances, who assists the Class

Member with all inquiries and services relating to the settlement. Indeed, as CSG's website

makes clear to all:

> Whether a retired NFL player desires suggestions for legal representation, needs assistance making decisions about treating and assessing physicians and neuropsychological clinicians, or help selecting an appropriate physician from the list provided by the Claims Administrator (per the court-approved settlement process) to provide a qualifying diagnosis (as defined in the settlement), we are here to assist. Additionally, each client will receive a detailed claim valuation report to help them understand the potential monetary value of their claim.

Case Strategies Group, http://casestrategiesgroup.com/about-the-nfl-concussion-settlement/ (last

visited June 16, 2017.)  However, prior to describing any of CSG's services, CSG's website links

directly to the nflconcussionsettlement.com website, informs Class Members that they can

register directly with the Claims Administrator, and provides Class Members with information

on how to register for the settlement.

Class Members are also made fully aware of the eleven specific services CSG provides to

each Class Member in the text of CSG's contract with each Class Member.  (Mot., ECF No.

7812-3 at Ex. C at ¶ 4).  Specifically, CSG's contract provides:

> **The services to be provided by "Consultant" shall be as follows**:
>
> a.    To provide assistance to Client and/or Client's attorney(s) in preparation of all documentation necessary to Client's NFL Concussion Settlement Claim. This includes, but is not limited, to Client's medical records, procurement of documentation necessary to calculate Client's eligible seasons, and all additional documentation related to Client's claim packet.

---

ignoring that any impairment only heightens Class Members' special challenges in presenting their claims and receiving the compensation to which they are entitled.

b.      To advise client on the range of choices available for assessment and continuing care of monitoring with regards to current treating physicians, new specialists, the Baseline Assessment Program, and use of qualified MAF physicians approved in the settlement process.

c.      To assist Client with his selection of a qualified MAF physician for the purpose of securing a Qualified Diagnosis under the Settlement.

d.      To assist Client with all required travel and logistics planning in preparation to undergo the required neurological testing as outlined in the Settlement Agreement.

e.      To assist Client in understanding their individual health insurance plans and the costs associated with patient care as it relates to required medical examinations in MDL 2323, along with assisting in obtaining ongoing neurological and psychological care if deemed necessary.

f.      To assist Client in responding to any and all potential deficiencies and notices that can be received after the initial submission of the claim. This includes assisting in gathering additional documentation as requested by the Claims Administrator's office in the pursuit of Client's claim.

g.      If requested, assist Client in understanding choices available for retaining legal counsel, depending on the personal priorities of the Client.

h.      Consultant agrees to provide a calculation of damages in the pursuit of the above-mentioned claim through the use of proprietary software that accounts for Client's seasons played, level of diagnosis, and age at time of diagnosis.

i.      Where an expert opinion may be required, the Consultants agree to cooperate as necessary and will only undertake this level of investigation in response to Client's specific request.

j.      Consultant agrees to maintain a file of all documentation and reports developed in the course of assessing the level of impairment and damages specifically related to Client's claim.

-11-

> k.   Consultant agrees to be available for any discussions or meetings between the Client and attorney(s) as necessary to assist in the accurate and efficient processing of Client's claim and to ensure that the maximum compensation is awarded.

*Id.* CSG's contract therefore is fully transparent as to the services provided to Class Members desiring to contract with CSG, as well as the fee charged by CSG in return for these services. Further, CSG's contract makes clear that CSG "is not associated with the NFL, the NFLPA, the Plaintiff's Steering Committee, the Claims Administrator's Office, or any individual law firm. **Consultant is independent with respects to all parties mentioned above and provides services as described herein**." (*Id.* at ¶ 3) (emphasis in original).

Finally, all of CSG's clients are currently represented by independent counsel. (ECF No. 7782-1 at 1.) This individual representation, which is not required as a condition of CSG's provision of services to Class Members, provides CSG's clients with additional assurances that their claims needs are being met. As Exhibits H and I to Ms. Benedetto's Declaration make clear, individual counsel provides a full and independent review of the relationship between CSG and Class Members. Indeed, each of those attorneys represented to Class Counsel that they were not aware of any Class Members voicing any confusion as to the identity of CSG or the services provided by CSG. Indeed, as one attorney made clear to Class Counsel:

> 1 - We are not aware of, or otherwise have not had, any clients that have contracted with CSG voice to us any confusion or misunderstanding of any facts pertaining to the NFL Concussion Settlement Claims Process ("NCSCP").

> 2 - We are not aware of, or otherwise have not had, any clients that have contracted with CSG express any concern about the terms of any agreement that they entered.

> 3 - All our clients that have contracted with CSG have pretty much expressed a very fluid grasp of the NCSCP, and they generally do not have

-12-

very many questions at all about what will be the immediate next steps of
the process.

(Benedetto Decl. at Ex. I.; *see also* Benedetto Decl. at Ex. H ["When asked whether [a Class

Member] would have retained CSG knowing each of [the 18 disclosures outlined by Class

Counsel], the most common answer is 'As long as they are helping me out, I'm ok.'"].)  Indeed,

as the letter from counsel expressly states, if individual counsel obtained information regarding

misrepresentations by CSG or a client's confusion as to the services provided by CSG, the

attorney "would have certainly addressed those issues with CSG and clarified any

misrepresentation with the client."  (Benedetto Decl. at Ex. I.)

One of CSG's most valuable services to Class Members is the significant cost savings

and increased expertise that come with the division of labor between CSG and individual

counsel.  These cost savings were the genesis behind the decision to offer CSG's clients

interested in individual representation with a list of qualified and experienced law firms the client

can rely upon for legal advice on the NFL Concussion Settlement, at contingent fees far below

what many other attorneys charge Class Members.  While Class Counsel may take issue with this

division of labor – noting in its letters to counsel that "your law firm could handle all of these

details for the client," (Benedetto Decl. at Ex. E) – many Class Members and attorneys have

elected a model in which an experienced claims management service handles the claims process

and experienced attorneys address legal issues.  This permits Class Members to receive best-in-

class service in all aspects of their claim with significant overall cost savings.  Indeed, attorneys

are able to significantly reduce their contingent fee arrangements with clients "because our role

is more limited than in other 'personal injury' actions…"  (Benedetto Decl. at Ex. H.)   Given

-13-

these facts – many of which are fully acknowledged by Class Counsel – there can be no doubt as to the significant value CSG provides to Class Members choosing to contract with CSG.

## II.      <u>ARGUMENT</u>

CSG takes no position as to the appropriateness of the Notice to Class Members ordered by the Court.  (ECF No. 7814.)  CSG acknowledges that Federal Rule of Civil Procedure 23(d) provides that the Court may require that notice be published to the Class concerning "any step in the action."  Fed. R. Civ. P. 23(d)(1)(B)(i).

However, to the extent that the Court provided the notice to the Class based upon alleged misrepresentations by CSG, the notice was not warranted.  If Class Counsel should file a second motion seeking to enjoin CSG, that motion would be completely unfounded on the record before the Court.

Claims management services, as Class Counsel must admit, are fully legal and provide valuable services to Class Members.  Indeed, Class Counsel's Motion cites favorably to the decision in *In re Visa Check/Mastermoney Antitrust Litig.*, which addressed this precise issue:

> If a merchant chooses to sell its claim or pay someone else to process its claim, that is fine with the Court. It is also fine for firms … to solicit merchants to use their claim processing or claim purchasing services. The nature of the Court's interest is as simple as it is strong: the class members must not be misled.

*In re Visa Check/Mastermoney Antitrust Litig.*, No. CV-96-5238 (JG), 2006 WL 1025588, at *4 (E.D.N.Y. Mar. 31, 2006); *see also* Newberg on Class Actions § 9:10 (5th ed.) ("There is no *per se* bar on nonparty communications with class members, and indeed, there may be First Amendment protections for these communications in certain circumstances.").

-14-

Given the significant First Amendment concerns at issue, the Third Circuit has recognized that before issuing any order restricting communications with Class Members, a court is required to make factual findings sufficient to justify the significant restraint on speech. *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 312 (3d Cir. 2005) (district court's failure to identify specifically misleading statements, as required by *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), necessitated reversal.); *see also Vogt v. Texas Instruments Inc.*, No. CIVA 3:05CV2244 L, 2006 WL 4660133, at *3 (N.D. Tex. Aug. 8, 2006) ("A court may not limit communications 'without a specific record showing by the moving party of the particular abuses by which it is threatened.' … The 'mere possibility of abuses' does not justify routine adoption of a communications ban.").

Indeed, Class Counsel has again resorted to filing a motion based upon anonymous hearsay statements which can neither be properly authenticated, nor admitted under the Federal Rules of Evidence.  Yet there is a larger problem – the allegation of mere confusion by the Class cannot justify a significant restraint on speech. *See Lester v. Percudani*, No. 3:01CV1182, 2002 WL 1460763, at *4 (M.D. Pa. Apr. 18, 2002) (holding it would be an abuse of discretion to grant motion restricting communications with the class where Plaintiff has "not established that the communication is misleading..."); *Cox Nuclear Med. v. Gold Cup Coffee Servs., Inc.*, 214 F.R.D. 696, 697–98 (S.D. Ala. 2003) ("In compliance with [*Gulf Oil*] courts have routinely recognized that the moving party must present an evidentiary showing of actual or threatened abuse by the party sought to be restrained."); *Maddox v. Knowledge Learning Corp.*, 499 F. Supp. 2d 1338, 1343 (N.D. Ga. 2007) ("Although the court has broad authority to manage the collective action, the First Amendment requires the Court to tailor any restrictions on a party's ability to speak with

-15-

absent class members." (quoting *Belt v. Emcare Inc.*, 299 F. Supp. 2d 664, 667 (E.D. Tex.

2003))).  The allegation of mere confusion contained in Class Counsel's Motion does not meet

the high standard set forth by the Supreme Court in *Gulf Oil*, nor would such allegations form a

good faith basis for such a motion given CSG's diligent and comprehensive actions to date.

Respectfully submitted,

Dated: June 21, 2017                    By:  /s/ Richard L. Scheff

                                            Richard L. Scheff (PA ID No. 35213)
                                            Peter Breslauer (PA ID No. 66641)
                                            David F. Herman (PA ID No. 318518)
                                            **Montgomery McCracken**
                                              **Walker & Rhoads LLP**
                                            123 South Broad Street, 24th Floor
                                            Philadelphia, PA  19109
                                            Phone:  215.772.7502
                                            Email:  rscheff@mmwr.com
                                            *Counsel for Case Strategies Group*

-16-

4395946v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the forgoing Response to Class Counsel's Motion for Approval of Notice to Class Members to Address Solicitations Received by the Class was served on all counsel of record via the Court's ECF System on June 21, 2017.


/s/ Richard L. Scheff
Richard L. Scheff