# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS INVOLVING ANY RIDDELL DEFENDANT | **Hon. Anita B. Brody** |

**RIDDELL'S[1] MEMORANDUM OF LAW IN OPPOSITION TO THE PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED MASTER ADMINISTRATIVE COMPLAINT AND AMENDED SHORT FORM COMPLAINT TEMPLATE AGAINST THE RIDDELL DEFENDANTS**

---

[1] For convenience only, Riddell refers collectively to the following defendants: Riddell, Inc., All American Sports Corporation, Riddell Sports Group, Inc., BRG Sports, Inc. (f/k/a Easton-Bell Sports, Inc.), BRG Sports, LLC (f/k/a Easton-Bell Sports, LLC), EB Sports Corp., and BRG Sports Holdings Corp. (f/k/a RBG Holdings Corp.). The plaintiffs have amended the case style to reflect the new entity names for the entities previously known as Easton-Bell Sports, Inc. and Easton-Bell Sports, LLC. The plaintiffs also, in what appears to be a typographical error, refer to the formerly known entity for BRG Sports Holdings Corp. as "BRG Holdings Corp." The former entity name was actually RBG Holdings Corp. Riddell has no objection to amending the case style to reflect the new entity names identified in this footnote.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. iii

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 4

A.    Beginning nearly six years ago, a limited number of the plaintiffs suing the NFL
      also included claims against Riddell in their complaints, a decision that appears to
      correlate solely to their choice of counsel........................................................................ 4

B.    The plaintiffs filed a superseding Master Administrative Long-Form Complaint
      (MAC) and, just a few weeks later, their AMAC, which dropped claims against
      Riddell for fraudulent concealment and conspiracy. ........................................................ 5

C.    The plaintiffs entered a class settlement resolving their claims against the NFL.............. 8

D.    Nearly five years after the AMAC, the plaintiffs propose their SAMAC, which
      includes a host of entirely new factual allegations and new claims, along with
      claims they affirmatively abandoned five years ago, and seeks to greatly expand
      their claims well beyond being limited to the players' NFL careers. ............................... 9

ARGUMENT ........................................................................................................................ 12

I.    The plaintiffs' proposed additional claims would substantially change the nature
      and scope of the litigation after more than five years without justification, would
      unfairly prejudice Riddell, and would unnecessarily burden the Court........................... 13

      A.    The Court should reject the plaintiffs' attempt to litigate en masse their
            fraud and misrepresentation claims against the NFL and Riddell through
            conclusory and unsupported allegations that Riddell was a co-conspirator. ........ 14

            1.    The plaintiffs offer no valid reason to revive conspiracy and fraud-
                  based allegations that they abandoned long ago against Riddell.............. 14

            2.    Allowing the plaintiffs to revive their fraud and conspiracy
                  allegations would unduly prejudice both the Court and Riddell............... 17

      B.    Allowing the plaintiffs to bring claims based on pre-NFL football play is
            likewise wholly unjustified and would unfairly prejudice Riddell....................... 18

i

II.     The plaintiffs' proposed amendments are futile because they are based on different facts and legal theories and thus do not relate back, making them time-barred. ........................................................................................................ 19

        A.     The proposed addition of new claims based on all exposures beyond merely the plaintiffs' NFL careers is futile because those claims cannot relate back and thus are barred by any applicable statute of limitations. ............. 20

        B.     Relation back is also unavailable as to the plaintiffs' long-ago abandoned fraudulent concealment and conspiracy claims. .................................................. 21

III.    As with the improper SAMAC, the Court should reject the plaintiffs' proposed amended SFC as being deficient, unhelpful, confusing, and doing nothing to advance the adjudication of these claims. ........................................................... 22

        CONCLUSION ..................................................................................................................... 24

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Adams v. Gould Inc.*,
  739 F.2d 858 (3d Cir. 1984)................................................................... 14
*Arthur v. Maersk, Inc.*,
  434 F.3d 196 (3d Cir. 2006)................................................................... 13
*Bjorgung v. Whitetail Resort, LP*,
  550 F.3d 263 (3d Cir. 2008)................................................................... 14
*Citizens for Pretrial Justice v. Goldfarb*,
  415 Mich. 255 (1982) ............................................................................ 19
*Corcoran v. N.Y. Power Auth.*,
  935 F. Supp. 376 (S.D.N.Y. 1996)................................................... 21, 22
*Cureton v. Nat'l Collegiate Athletic Ass'n*,
  252 F.3d 267 (3d Cir. 2001)..................................................................... 4
*Dudek v. St. John's Hosp.*,
  No. 230352, 2002 WL 1308780 (Mich. Ct. App. June 11, 2002) ........... 19
*Fisher v. APP Pharm., LLC*,
  783 F. Supp. 2d 424 (S.D.N.Y. 2011)................................................... 19
*Glover v. F.D.I.C.*,
  698 F.3d 139 (3d Cir. 2012)................................................. 19, 20, 21, 22
*Goldfish Shipping, S.A. v. Hsh Nordbank Ag*,
  623 F. Supp. 2d 635 (E.D. Pa. 2009) ................................................... 14
*Goow v. Wittig*,
  558 F. App'x 257 (3d Cir. 2014) ........................................................... 15
*GSS Props., Inc. v. Kendale Shopping Ctr., Inc.*,
  119 F.R.D. 379 (M.D.N.C. 1988)........................................................... 16
*Holdridge v. Heyer-Schulte Corp. of Santa Barbara*,
  440 F. Supp. 1088 (N.D.N.Y. 1977)................................................. 20, 21
*In re Asbestos Prod. Liab. Litig. (No. VI)*,
  718 F.3d 236 (3d Cir. 2013)................................. 13, 17, 20, 21
*In re Nat'l Football League Players' Concussion Injury Litig.*,
  842 F. Supp. 2d 1378 (J.P.M.L. Jan. 31, 2012) ................................... 4, 5
*In re Nat'l Football League Players' Concussion Injury Litig.*,
  301 F.R.D. 191 (E.D. Pa. 2014)............................................................. 12
*In re Nat'l Football League Players' Concussion Injury Litig.*,
  307 F.R.D. 351 (E.D. Pa. 2015).............................................................. 8
*In re Zofran (Ondansetron) Prod. Liab. Litig.*,
  No. 1:15-MD-2657-FDS, 2017 WL 1458193 (D. Mass. Apr. 24, 2017) ............... 23
*Ladyansky v. Cooper Wheelock, Inc.*,
  No. 11-CV-102, 2012 WL 1071187 (E.D. Pa. Mar. 29, 2012)........................ 19, 20

iii

*Lake v. Arnold*,
   232 F.3d 360 (3d Cir. 2000).................................................................. 13

*Lawson v. Zimmer, Inc.*,
   No. 5:12CV1263, 2015 WL 9583031 (N.D. Ohio Dec. 31, 2015)......................... 23

*LeGrand v. United States*,
   No. 3:12-CV-743, 2014 WL 3859896 (M.D. Pa. June 19, 2014)......................... 15

*Lum v. Bank of Am.*,
   361 F.3d 217 (3d Cir. 2004)................................................................ 23

*McGregor v. La. State Univ. Bd. of Sup'rs*,
   3 F.3d 850 (5th Cir. 1993) ................................................................ 21

*Merritt v. Countrywide Fin. Corp.*,
   No. 09-CV-01179-BLF, 2015 WL 5542992 (N.D. Cal. Sept. 17, 2015) ................. 22

*Nelson v. Cty. of Allegheny*,
   60 F.3d 1010 (3d Cir. 1995)............................................................... 19

*Pavlik v. Kornhaber*,
   326 Ill. App. 3d 731 (2001) .............................................................. 19

*Payne v. A.O. Smith Corp.*,
   578 F. Supp. 733 (S.D. Ohio 1983) .................................................. 21, 22

*Smith v. Aptar Grp., Inc.*,
   No. 12 C 8630, 2013 WL 1290213 (N.D. Ill. Mar. 28, 2013) .......................... 13

*Tese-Milner v. Diamond Trading Co.*,
   No. 04 CIV. 5203 KMW, 2011 WL 4501336 (S.D.N.Y. Sept. 29, 2011)........ 18, 20, 21

*USX Corp. v. Barnhart*,
   395 F.3d 161 (3d Cir. 2004)............................................................... 15

*W.B. David & Co. v. De Beers Centenary AG*,
   507 F. App'x 67 (2d Cir. 2013) .......................................................... 18

*Weaver v. Real Estate Funding, L.L.C.*,
   No. CIV. JKS 09-101, 2010 WL 1137504 (D. Md. Mar. 19, 2010)...................... 13

**Statutes and Rules**

42 Pa. Stat. § 5524 ......................................................................... 19
735 ILCS 5/13-202 ......................................................................... 19
Cal. Civ. Proc. Code § 335.1 ............................................................... 19
Fed. R. Civ. P. 9 .......................................................................... 23
Fed. R. Civ. P. 12 ......................................................................... 13
Fed. R. Civ. P. 15 ................................................................... passim
Fla. Stat. § 95.11(3)...................................................................... 19
Ga. Code § 9-3-33 ......................................................................... 19
La. Civ. Code art. 3492 ................................................................... 19
Mich. Comp. Laws § 600.5805(10),(13) ...................................................... 19
Miss. Code. § 15-1-49...................................................................... 19
N.Y. C.P.L.R. 214.......................................................................... 19
Tex. Civ. Prac. & Rem. Code § 16.003 ..................................................... 19

**INTRODUCTION**

Nearly half a decade after filing solely product liability claims against Riddell for injuries allegedly sustained while playing NFL football, the plaintiffs—without explanation or justification—seek now to take this litigation not forward, but leaps and bounds backwards. In short, the plaintiffs propose now—under the guise of mere "supplements" to the operative Amended Master Administrative Long-Form Complaint (AMAC)—to assert both claims they never previously raised, as well as claims they abandoned nearly five years ago. In doing so, they seek to transform the litigation against Riddell from the routine product liability action that it has been for the past half-decade to an alleged and far-fetched 50-year fraudulent conspiracy involving the NFL, the government, Honda, various unnamed other "international corporations," and others. (Dkt. No. 7762-2 at 17 ¶ 60.)

The plaintiffs' moving papers fail even to mention the substance of their proposed amendment. And they make no attempt to explain how reshaping this litigation in such drastic fashion will serve the interests of justice, as required by the Court's May 18, 2017 order (Dkt. No. 7709 at 2)—not after everyone involved, including the Court, has proceeded for years on the basis of the plaintiffs alleging only product liability claims against Riddell. Instead, the plaintiffs assert that their proposed amended complaint merely seeks "to reconcile the Plaintiffs' allegations, claims, and theories of recovery against Riddell Defendants that remain centralized in this MDL . . . ." (Dkt. No. 7762-1 at 2.) Yet they never explain what there is to "reconcile," much less how their proposed amendment accomplishes that vague goal.

In mischaracterizing what they seek to do as mere supplements and reconciliation, the plaintiffs simply ignore that many of the claims in their proposed amended complaint also don't "remain centralized in this MDL," either because the claims were never part of this MDL to

1

begin with, or because the plaintiffs affirmatively abandoned those claims, such as their proposed fraudulent concealment and conspiracy claims.

The plaintiffs' proposed amendment disregards the Court's direction for them to seek leave to file a complaint moving the claims against Riddell into a separate complaint. (*See* 5/9/17 Conf. Audio File, Dkt. No. 7623.) This should have been a simple and straightforward task, as the claims against Riddell under the AMAC had been—for five years—limited to product-liability-based claims, while the claims against the NFL defendants have centered on alleged fraud, concealment, misrepresentation, and broad-based negligence in its role as the "guardian" of the game of football. (*See generally* AMAC, Dkt. No. 2642.)

Instead, the plaintiffs have proposed to re-entangle the litigation against Riddell and the NFL through the very fraud and conspiracy claims they abandoned long ago. In particular, after the inception of the MDL, the plaintiffs filed an original, superseding master administrative complaint that included "Civil Conspiracy/Fraudulent Concealment" against both the NFL and Riddell. (Dkt. No. 83 at 84.) But shortly thereafter, and before the defendants had even responded, the plaintiffs affirmatively *dropped* those claims as against Riddell in their AMAC in July 2012. The plaintiffs don't mention this history in their moving papers—not even in passing.

The plaintiffs' decision to drop their conspiracy and fraudulent concealment claims against Riddell was both significant and strategic. By dropping these claims, the plaintiffs detangled their causes of action against Riddell and the NFL, and postured themselves as pursuing only garden-variety product liability claims against Riddell, thus paving the way for their oppositions to the defendants' initial motions and, ultimately, their negotiations and settlement with the NFL. Limiting the claims against Riddell to helmet design, manufacturing, and warnings enabled this litigation to proceed for half a decade with a sharp contrast between

the plaintiffs' allegations against Riddell, and the fraud/conspiracy claims against the NFL. But now, with the NFL class settlement final, the plaintiffs seek to raise new theories against Riddell, re-entangle Riddell with the NFL as alleged "co-conspirators" and joint "guardians of the game," and resurrect claims they strategically abandoned nearly five years ago.

The plaintiffs also wholly ignore that there is nothing at this point for them to "reconcile." Not only did they, as a group, drop their fraudulent concealment and conspiracy claims against Riddell from their AMAC, but, individually, no plaintiff wrote these claims in on a short-form complaint (SFC), as allowed. Indeed, while more than 1,000 plaintiffs—including 131 plaintiffs represented by their newly appointed co-lead counsel—timely filed SFCs naming Riddell, *none of them* wrote in the claims they seek to assert through their proposed Second Amended Master Administrative Complaint (SAMAC), including not only the abandoned conspiracy/fraudulent concealment claims, but others as well, including negligent marketing, breach of warranty, and negligence related to the NFL's conduct. (*E.g.*, Dkt. Nos. 4979, 5114, & 5134 (no write-in of those claims in SFCs filed by plaintiffs' co-lead counsel).) In short, there is nothing to be reconciled.

Also, the plaintiffs propose in their SAMAC to jettison a foundational principle of this litigation—that it is brought by former NFL players based on their NFL football careers—but without even the slightest mention of this in their moving papers. Indeed, their proposed amendment seeks to assert claims based not solely on their time in the NFL—as was always the case from the initial filings, through the JPML's formation of this MDL, and for the past five years—but instead on their *entire football playing careers*, from the NFL down to college, high school, and all the way down to Pop Warner football. In this way as well, far from "reconciling" their claims, the plaintiffs seek to drastically expand the scope of this entire litigation.

The principles governing amendments provide ample reason to deny leave to amend. But more fundamentally, the Court should deny this proposed amendment because at this stage—after more than five years in this MDL, and after the parties have invested significant resources in pursuing this litigation based on the claims and allegations and positions taken in the AMAC and subsequent filings—any amendment should move this case forward, not backward.

With respect to Riddell, there is already an operative pleading in place—the AMAC, along with the timely filed SFCs. The plaintiffs haven't followed the Court's directive to propose an amended complaint that would address and isolate in a separate complaint the distinct and limited product liability claims asserted against Riddell in the AMAC. Given the plaintiffs' failure, and in the interests of moving this litigation forward, the Court should deny leave to amend, and instead proceed with motions practice as to the claims against Riddell as they have existed for the past five years—based on the AMAC and timely filed SFCs.[2]

## BACKGROUND

Deciding whether to grant leave to amend typically includes consideration of the history and current status of the litigation. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). This background shows the Court should deny the plaintiffs' motion.

A.    **Beginning nearly six years ago, a limited number of the plaintiffs suing the NFL also included claims against Riddell in their complaints, a decision that appears to correlate solely to their choice of counsel.**

This litigation began in mid-2011 with the filing of four actions brought by former NFL players. *In re Nat'l Football League Players' Concussion Injury Litig.*, 842 F. Supp. 2d 1378 (J.P.M.L. Jan. 31, 2012). As the JPML wrote when establishing this MDL in 2012, these actions shared "factual issues arising from allegations against the NFL stemming from injuries sustained

while playing professional football, including damages resulting from the permanent long-term effects of concussions while playing professional football in the NFL." *Id.* at 1379.

Since its inception, this MDL grew to include more than 5,400 plaintiffs filing claims against the NFL. Yet only approximately 20 percent of them (1,063) asserted claims against Riddell, meaning that they both named Riddell in their underlying complaints and timely filed SFCs checking boxes for claims against Riddell.[3] Thus, while the plaintiffs have alleged that Riddell's helmets were "the official helmets of the NFL" for many years, approximately 80 percent of the plaintiffs in this MDL did not assert *any* claims against Riddell.

The limited number of plaintiffs who asserted claims against Riddell are largely represented by only a handful of the same counsel. And, in most cases, the handful of plaintiff firms asserting these claims did so indiscriminately on behalf of all the plaintiffs they represent.

**B.    The plaintiffs filed a superseding Master Administrative Long-Form Complaint (MAC) and, just a few weeks later, their AMAC, which dropped claims against Riddell for fraudulent concealment and conspiracy.**

Shortly after the formation of this MDL, the Court appointed the plaintiffs' requested leadership, comprising 19 counsel across the plaintiffs' executive and steering committees, including plaintiffs' counsel who had brought claims against Riddell. (Dkt. No. 64.)[4] In June

---

[2] As Riddell has consistently maintained, the plaintiffs' master/short-form complaint approach is inappropriate for the highly individualized product liability claims they assert. (*E.g.*, Dkt. Nos. 3593, 3593-1.) The proposed amendment is futile and should be denied for this reason as well.

[3] A current listing of such plaintiffs is provided in Attachment A. This attachment is provided without waiving objections to individual claims in SFCs or to the improper naming of certain entities in an SFC. Since the plaintiffs move for leave on behalf of "plaintiffs who continue to maintain claims against Riddell Defendants" (Dkt. No. 7762-1 at 2), those plaintiffs who have decided to abandon their claims against Riddell after filing their SFC, but have not yet filed a notice of dismissal, should be removed from this list. Indeed, as Attachment A shows, there are currently 67 plaintiffs who are NFL-settlement class members, who are no longer represented by counsel and who may not wish to proceed against Riddell.

[4] For example, the plaintiffs' executive committee included attorney Thomas Girardi, who filed the largest number of claims against Riddell, and their steering committee included attorney James Dugan, who filed a number of others.

2012, on the plaintiffs' proposal and over Riddell's opposition, this plaintiffs' leadership group filed their MAC against the NFL and Riddell. (MAC, Dkt. No. 83.)

The MAC largely divided the factual allegations and claims against the two sets of defendants. Beginning with the NFL, the MAC contained over 62 pages and 340 paragraphs of allegations that the league exerted improper influence over the game of football, mythologized and marketed violence through the media and NFL Films, and acquired yet concealed specialized knowledge regarding risks associated with repetitive head injuries. (MAC ¶¶ 41–245.) On the basis of these allegations, the MAC asserted against the NFL various claims, including on negligence theories and for fraud, fraudulent concealment, and misrepresentation. (*Id*. ¶¶ 273–365.) Those claims were *not* asserted against Riddell in the MAC. (*Id*.)

As to Riddell, the MAC included comparatively few factual allegations—only 14 paragraphs of alleged facts, compared with 205 as to the NFL—with the majority of the Riddell facts merely recounting the history of its numerous safety innovations for football helmets. (*Compare id.* ¶¶ 41–245, *with id.* ¶¶ 383–96.) As for the causes of action, with one exception, the plaintiffs asserted claims against Riddell only on product liability theories: strict liability for design and manufacturing defect, failure to warn, and negligence. (*Id*. ¶¶ 397–421.)[5]

The lone exception[6] was one count combining "Civil Conspiracy/Fraudulent Concealment" claims asserted against "all Defendants." (*Id*. ¶¶ 422–25.) That count comprised only four paragraphs and did not name Riddell specifically or with any particularity. (*Id*. ¶¶ 423–24.) Nowhere in the facts section for Riddell (or the NFL) did the plaintiffs allege any facts that Riddell concealed information, perpetrated any fraud, or was part of any conspiracy. (*Id*. ¶¶ 383–96; *also id.* ¶¶ 41–245.)

_____

[5] The MAC also included a derivative loss-of-consortium claim. (*Id*. ¶¶ 366–69.)
[6] Other than the derivative loss-of-consortium claim against all defendants. (*See id.* ¶¶ 366–69.)

Shortly after they filed the MAC, and before Riddell responded to it, the plaintiffs advised that they intended to amend the MAC, which they did by filing the AMAC in July 2012. (Dkt. No. 2642.) The AMAC contained the same limited 14 paragraphs of alleged facts as to Riddell, along with the same product-liability-based counts as in the MAC. (*Id.* ¶¶ 393−421). The AMAC's Count XVIII for "Civil Conspiracy/Fraudulent Concealment," however, *dropped* Riddell and was instead asserted *only* as against the NFL. (*Id.* ¶¶ 422–25.)[7]

With their master complaint, the plaintiffs also proposed a template "short form complaint" or SFC. (CMO 2, Dkt. No. 64.) Without waiving the more fundamental objection to the plaintiffs' master/short-form-complaint process, Riddell had requested that the SFC include information essential to evaluating the plaintiffs' individual claims, including the model(s) of Riddell helmet(s) worn by each plaintiff during an alleged injury event, facts concerning what warnings they received, and other facts relevant to their defect allegations, proximate cause, and choice-of-law and time-bar determinations. The plaintiffs refused, and instead lodged their proposed template SFC, which included a space to write in any additional claims. (Dkt. No. 92.)

Since the filing of the AMAC and its accompanying SFC form, more than 1,000 plaintiffs timely filed SFCs naming Riddell. None of them, however, wrote in on their SFCs any of the claims against Riddell that they seek to assert now through their SAMAC.[8]

By the Court's CMO-4, the AMAC (which superseded the MAC before it) along with the individual SFCs superseded the plaintiffs' original complaints and became the operative

---

[7] To the extent any individual plaintiffs alleged fraudulent concealment or conspiracy in their underlying original complaints, such claims were—per CMO-4—superseded by the MAC and later the AMAC, the latter of which affirmatively dropped those claims against Riddell.

[8] As a vestige of the superseded MAC, some plaintiffs' counsel incorrectly used the original template that listed Count XVIII for "Civil Conspiracy/Fraudulent Concealment" as being against "All Defendants." Yet, the AMAC controls and makes clear that the plaintiffs dropped any such claims against Riddell. There is therefore no claim for either civil conspiracy or fraudulent concealment against Riddell for which a plaintiff could check a box in an SFC.

complaints for all purposes, including in the event their actions are ever remanded to their transferor courts. (Dkt. No. 98 at 1 ¶ 1(a).) In addition, for the past five years, the AMAC, the MAC before it, and the SFCs have all defined the scope of the claims as being limited to liability for alleged exposures during the plaintiffs' NFL playing careers. (*E.g.*, AMAC, Dkt. No. 2642 at 73 ¶¶ 386–88; SFC, Dkt. No. 92-1 at 2–4 ¶¶ 7, 14–15.)

Following the filing of the AMAC and SFC, Riddell moved to dismiss based on preemption under section 301 of the Labor Management Relations Act and to sever the plaintiffs' claims from each other. (Dkt. Nos. 3592, 3593.) In opposing Riddell's motions, the plaintiffs repeatedly defined their claims against Riddell as being limited to personal injury/product liability claims. For example, they opposed severance by arguing that their claims were all "common" because they were merely alleging that they each "suffered traumatic brain injury because of the defectiveness of the helmet that each Player was required to and did wear, which were all manufactured, sold, and distributed by the Riddell Defendants." (Dkt. No. 4133 at 7, 9, & No. 4137 at 1, 5–9.) They mentioned nothing about their claims being based on fraud, conspiracy, misrepresentation, marketing, or anything other than garden-variety product liability.

## C.    The plaintiffs entered a class settlement resolving their claims against the NFL.

While Riddell's motions to dismiss and to sever were pending, the plaintiffs and the NFL entered into a class settlement for the claims against the NFL, including claims that the NFL concealed information about repetitive head injuries and misled "players, coaches, trainers, and the public," which the Court approved in April 2015. *In Nat'l Football League Players' Concussion Injury Litig.*, ("*In re NFL Litig.*"), 307 F.R.D. 351 (E.D. Pa. 2015). The vast majority of plaintiffs whose claims are part of this MDL elected to partake in that settlement, and, according to the Claims Administrator, out of the more than 5,400 plaintiffs who sued the NFL in this MDL, currently only 125 opt-outs continue to pursue their claims against the NFL. *See*

https://www.nflconcussionsettlement. com/ViewPDFDoc.aspx. Moreover, only 25 of those opt-out plaintiffs have pending claims against Riddell (as reflected in Attachment A), meaning that 1,038 (or 97%) of the 1,063 plaintiffs with claims against Riddell are settlement class members. As Attachment A shows, however, at least 44 of those 1,063 plaintiffs filed SFCs in multiple cases, and in at least one of their multiple SFCs, did *not* check any boxes against Riddell.[9]

**D.      Nearly five years after the AMAC, the plaintiffs propose their SAMAC, which includes a host of entirely new factual allegations and new claims, along with claims they affirmatively abandoned five years ago, and seeks to greatly expand their claims well beyond being limited to the players' NFL careers.**

On May 9, 2017, the Court convened an organizational conference with respect to "all claims against Riddell," during which it expressed the view that the "case of the plaintiffs versus Riddell" is "a separate case" from claims against the NFL. (Dkt. No. 7561; 5/9/17 Conf. Audio File, Dkt. No. 7623.) The plaintiffs did not disagree. The Court thus ordered that the plaintiffs "in the Riddell cases" could move for leave to file a second amended complaint against Riddell specifically, along with a Riddell-specific amended SFC, but their moving papers had to describe how the proposed amended filings "comport with Rule 15(a)(2)." (Dkt. No. 7709 at 2 ¶ 1.)

In their moving papers, the plaintiffs asserted that they "continue to have claims they wish to pursue against" Riddell, that they "wish to bring forth pleadings that adequately and specifically address their individual claims against Riddell Defendants," and that their proposed amendment seeks merely "to reconcile the Plaintiffs' allegations, claims, and theories of recovery against Riddell Defendants that remain centralized in this MDL . . . ." (Dkt. Nos. 7762 at 2 ¶ 4, 7762-1 at 2, 5.) They further represented to the Court that their proposed amendment merely "supplements" the AMAC "by providing additional factual support about the conduct being alleged and by describing the harm caused to each individual Plaintiff." (Dkt. No. 7762-1

---

[9] *E.g.*, Att. A, entries 39, 41, 42, 75, 79, 82, 160, 183, 264, 301, 311, 316, etc.

at 5.) In truth, the proposed SAMAC does far more than the plaintiffs represented. Unlike the AMAC, with its mere five pages and 14 paragraphs of alleged facts against Riddell, the SAMAC comprises over 50 pages and 265 paragraphs of alleged facts. (*Compare* Dkt. No. 2642 ¶¶ 383–396, *with* No. 7762-2 ¶¶ 58–322.) And unlike the AMAC, which contained only four product-liability-based counts against Riddell, the SAMAC proposes to include *14 counts* against Riddell, including both new and previously abandoned claims. (*Compare* AMAC, Dkt. No. 2642 ¶¶ 397–421, *with* SAMAC, Dkt. No. 7762-2 ¶¶ 323–436.)

In particular, after nearly five years of pursuing solely product liability claims against Riddell, the plaintiffs propose to add new claims, such as for fraud and negligent misrepresentation based on theories and factual assertions not found in the MAC or AMAC against Riddell. (Dkt. No. 7762-2 ¶¶ 364–80.) They also propose to re-assert claims for civil conspiracy and fraudulent concealment, which they previously only baldly alleged against Riddell in the MAC and shortly thereafter affirmatively abandoned with their AMAC. Since abandoning those claims five years ago, the plaintiffs have not at any time since sought to re-assert them in any way, such as by write-in claims in their SFCs, despite some plaintiffs filing amended SFCs over the years. And the SAMAC contains still other claims not found in the AMAC or any individual SFCs, such as negligent marketing, breach of warranty, and assorted alleged negligence principally related to the NFL's purported conduct.

With NFL-settlement administration underway, and despite over 97% of the Riddell plaintiffs being members of the NFL settlement class and thereby having settled their fraud and conspiracy claims with respect to the NFL, the plaintiffs propose with their SAMAC to perpetuate their allegations against the NFL by attempting to redirect them against Riddell in their SAMAC. This includes by alleging a fanciful conspiracy and fraud scheme supposedly

10

between the NFL and Riddell (and others) to "conceal material facts regarding the connection between blows to the head and latent brain disease." (Dkt. No. 7762-2 at 3 ¶ 8.) They do this without, as the NFL has pointed out, providing any sufficiently pled facts to support any conspiracy agreement or jointly committed fraud. (*See id.*; NFL Opp'n to Mot. to Amend, Dkt. No. 7767.)

In addition, contrary to their prior filings for the past five years, which have presented the claims against Riddell and the NFL as being separate and distinct, the plaintiffs' proposed SAMAC attempts to entangle the two defendants as alleged co-conspirators and joint "guardians of player safety," with allegations the plaintiffs previously leveled only against the NFL. (*Compare* SAMAC, Dkt. No. 7762-2 ¶¶ 66, 74, 107, 115, 179, 192, *with* AMAC, Dkt. No. 2642 ¶¶ 6, 7, 10, 19, 86, 99, 100, 103, 105.) For example, the SAMAC alleges that Riddell—like the NFL, and in Riddell's newly alleged role as "guardian"—had a duty to "protect health and safety of the entire football community, past and present" (Dkt. No. 7762-2 ¶¶ 107–15); worked with the NFL to develop "sham-science" and spent decades engaging in a scheme of silence and duplicity" (*id.* ¶ 12); and mythologized violence through the media (*id.* ¶¶ 84–97). None of these allegations—nor many more in the SAMAC—appeared in either the MAC or the AMAC against Riddell, nor in any of the more than 1,000 SFCs plaintiffs filed.

Beyond including new factual allegations, new claims, and long-ago-abandoned claims, the SAMAC also proposes to radically change the scope of Riddell's purported liability by expanding the plaintiffs' claims from being based on product liability for helmet use limited to the plaintiffs' NFL playing careers (as they have been for over five years), to seeking "damages related to *all* exposures to repetitive head trauma and not merely those exposures sustained during the time Plaintiffs played as professional football players," to include "time spent as

youth players, high school players, collegiate players in addition the time spent during their former NFL careers." (*Id.* ¶ 29.) This proposed sea change is despite the plaintiffs' numerous prior representations throughout the history of this litigation that their claims are based solely on the plaintiffs' alleged helmet use and injury exposures *only* during their NFL playing days, and despite the Court's reliance on those representations. (MAC, Dkt. No. 83 ¶¶ 386-88, AMAC, Dkt. No. 2642 ¶¶ 386–88, No. 92-1 ¶¶ 14–15; *also In re NFL Litig*, 301 F.R.D. 191, 199 (E.D. Pa. 2014).)

## ARGUMENT

The plaintiffs completely mischaracterize the nature of their proposed SAMAC. It does not, as they represent, merely supplement the facts alleged in the AMAC, nor does it "reconcile" the plaintiffs' claims, whatever that was intended to mean. (Dkt. Nos. 7762-1 at 2, 5.) The plaintiffs' claims were already reconciled by their AMAC and individual SFCs; the SAMAC instead seeks to allege entirely *new* facts, in attempted support of *new* claims and theories of liability not found anywhere in the AMAC (or even the MAC) or the SFCs, and attempts to resurrect claims the plaintiffs strategically abandoned five years ago.

While the SAMAC would present radical shifts in the scope and nature of this litigation as it has proceeded for the past five years, the plaintiffs provide no explanation for these drastic and sweeping amendments. Rather, they simply ignore them, and fail to provide any valid justification for them, thus failing to meet the Court's directive to explain why the plaintiffs should be granted leave to amend under Rule 15(a)(2).

Most fundamentally, however, the SAMAC fails in its essential role to clarify, simplify, and effectively advance this half-decade-old litigation, because the SAMAC would move the case not forward, but instead leaps and bounds backwards. Rather than proposing an amendment that presents limited product-liability-based claims against Riddell separately from the

allegations lodged against the NFL so that those distinct claims may be litigated efficiently, the SAMAC would improperly merge the defendants together as alleged co-conspirators, contrary to the Court's intention and contrary to the past five years of this litigation.

In the interests of efficiently advancing this long-running litigation, and for the reasons set for above and below, the Court should deny leave to amend and proceed with motions practice based on the existing and operative AMAC and SFCs, including ruling on Riddell's motion to dismiss based on preemption and, if necessary, additional Rule 12 motions and others.

I. **The plaintiffs' proposed additional claims would substantially change the nature and scope of the litigation after more than five years without justification, would unfairly prejudice Riddell, and would unnecessarily burden the Court.**

Rule 15 allows amendment when justice so requires, but not when "equitable considerations render it otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006). A court may deny leave to amend when: "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other part[ies]." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000).

Courts "should not permit an amended complaint that changes the theory of the case absent 'some showing of lack of knowledge, mistake or inadvertence or some change of conditions over which that party had no knowledge or control.'" *Smith v. Aptar Grp., Inc.*, No. 12 C 8630, 2013 WL 1290213, at *4 (N.D. Ill. Mar. 28, 2013); *see also Weaver v. Real Estate Funding, L.L.C.*, No. CIV. JKS 09-101, 2010 WL 1137504, at *2 (D. Md. Mar. 19, 2010) (noting that a "court may deny leave where the amendment substantially changes the theory of the case, particularly where the amendment could have been sought earlier in the case"). Moreover, as the Third Circuit has recognized, in a "massive litigation" such as an MDL where "administering cases . . . is different from administering cases on a routine docket," the court "must have wide

discretion to manage 'complex issues and potential burdens on defendants and the court . . . .'" *In re Asbestos Prod. Liab. Litig. (No. VI)*, 718 F.3d 236, 246 (3d Cir. 2013) (internal citations).

The Court's May 18, 2017 order required the plaintiffs to show how the proposed amendment would "comport with Rule 15(a)(2)," which necessarily begins with properly and accurately explaining the scope of their proposed amendment and the impact it would have on this pending MDL litigation. The plaintiffs have not done that here because they have misrepresented the scope of their proposed amendment. Indeed, half a decade into this litigation, the plaintiffs' proposed SAMAC would radically change the entire nature of the litigation against Riddell and—by the addition of numerous new claims and liability theories—it would undermine the Court's efforts to narrow and organize the dispute for efficient resolution. The plaintiffs' failure to comply with Rule 15 and the Court's directive are reason alone to deny leave. But as shown below, numerous other grounds require denial of leave to amend.

A.     **The Court should reject the plaintiffs' attempt to litigate en masse their fraud and misrepresentation claims against the NFL and Riddell through conclusory and unsupported allegations that Riddell was a co-conspirator.**

1.     **The plaintiffs offer no valid reason to revive conspiracy and fraud-based allegations that they abandoned long ago against Riddell.**

Questions of undue delay and bad faith require the Court to "focus on the plaintiffs' motives for not amending their complaint to assert [their] claim earlier." *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). When considering whether an amendment was unduly delayed, the court considers the "movant's reasons for not amending sooner" balanced against the burden of the delay. *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008). As this Court has explained, a delayed amendment may be proper where a plaintiff can show that it "obtained additional factual information, or that there has been a change in the law, that has permitted it to formulate new, more viable theories of recovery." *Goldfish Shipping, S.A. v. Hsh*

*Nordbank Ag*, 623 F. Supp. 2d 635, 640 (E.D. Pa. 2009). The plaintiffs here don't assert that they obtained additional facts not previously available; nor do they cite any change in the law.

Moreover, a court properly denies leave to amend when a plaintiff had previous opportunity to amend, long knew of the facts underlying their decision to amend, and yet has not offered any valid excuse for delay in seeking leave to amend. *See Goow v. Wittig*, 558 F. App'x 257, 260 (3d Cir. 2014); *USX Corp. v. Barnhart*, 395 F.3d 161, 168 (3d Cir. 2004); *LeGrand v. United States*, No. 3:12-CV-743, 2014 WL 3859896, at *3 (M.D. Pa. June 19, 2014), *report and recommendation adopted*, No. 3:12-CV-743, 2014 WL 3866063 (M.D. Pa. July 31, 2014). Not only have the plaintiffs not acknowledged the scope of their proposed amendment and instead mischaracterized it, they have offered no valid justification for their seeking to assert the new facts and claims and for attempting to resurrect their long-abandoned claims.

The plaintiffs' bald assertion that they have not "had a reasonable opportunity to bring forth an amended complaint at an earlier time" ignores numerous facts. (Dkt. No. 7762-1 at 4.) First, the plaintiffs ignore that they already amended their master complaint once, as well as that their amendment affirmatively *abandoned* any fraudulent concealment and conspiracy claims against Riddell. *See USX Corp.*, 395 F.3d at 168. Second, they ignore that the SFCs provided an opportunity to write in additional claims, yet none of the more than 1,000 plaintiffs who timely filed an SFC against Riddell wrote in the claims they seek to pursue now. *See LeGrand*, 2014 WL 3859896, at *3. Third, the plaintiffs ignore that many of them (at least 144) filed multiple and/or amended SFCs, yet still never asserted the claims they now seek to pursue in the SAMAC. *See id.* In addition, their assertion that "the Court only recently appointed counsel to coordinate the representation of the Plaintiffs against Riddell" ignores that there has been a vast plaintiffs' leadership committee and structure in place since 2012, and that the plaintiffs'

leadership has been responsible for the litigation against both the NFL and Riddell since their appointment more than five years ago. (*See* 7762-1 at 4; *also* Dkt. No. 64.)

In short, the facts and the record belie the plaintiffs' assertion that they "have not been able to pursue their claims against the Riddell Defendants until now," and their proffered reasons for the timing and scope of their proposed amendment don't hold water. (Dkt. No. 7762-1 at 4.) To the contrary, the timing of their proposed amendment—one in which they seek to transfer their fraud and conspiracy allegations from the NFL to Riddell, and to commingle the claims against Riddell with those against the NFL—raises numerous questions. Chief among these questions is why, after strategically dropping the only joint claims against both the NFL and Riddell five years ago and entering into a settlement agreement with the NFL, do the plaintiffs seek to re-assert those same far-fetched fraud and conspiracy claims jointly against both sets of defendants now that the NFL's settlement is finalized and being administered? And why, after alleging for more than five years that their claims against Riddell (and the NFL, for that matter) are based solely on alleged exposures and injuries during the plaintiffs' NFL careers, are the plaintiffs now seeking to expand the scope of this litigation to cover "*all* exposures to repetitive head trauma and not merely those exposures sustained during the time Plaintiffs played as professional football players"? (Dkt. No. 7762-2 at 12 ¶ 29; *also* Dkt. No. 7557-2 at 11 ¶ 32.)

The plaintiffs don't address, much less answer, these significant questions. As courts have recognized, amendments are in bad faith when they are "abusive or made in order to secure some ulterior tactical advantage." *GSS Props., Inc. v. Kendale Shopping Ctr., Inc.*, 119 F.R.D. 379, 381 (M.D.N.C. 1988). And "when a plaintiff withholds his true position from his opponent, especially when done for some ulterior purpose, the Court may view the action as having a bad faith motive unless satisfactory explanation clearly shows otherwise." *Id.* The plaintiffs'

affirmative abandonment of any conspiracy and fraudulent concealment claims against Riddell and their prolonged silence as to any intention to pursue such claims, coupled with their misrepresentations as to the scope and nature of their proposed amendments all invite the inference that their proposed amendment is in bad faith. The Court should deny it.

### 2. Allowing the plaintiffs to revive their fraud and conspiracy allegations would unduly prejudice both the Court and Riddell.

For the past five years, all parties—the plaintiffs, Riddell, the NFL, and the Court—have proceeded with this litigation with the claims against Riddell being limited to routine product liability theories. Indeed, the Court inquired not long ago whether it should remand the product liability claims against Riddell to the JPML, as they did not appear to be "sufficiently related to the NFL claims." (Dkt. No. 6870 at 1 n.2.) The Court's recent instruction for separate complaints against the NFL and Riddell further reflected the distinct nature of the two sets of claims. The plaintiffs' proposed amendment now threatens to prejudice both the Court and Riddell.

As the Court is well aware, it has invested significant time and resources into managing this litigation as the plaintiffs have framed it for half a decade—with fraud- and conspiracy-based claims against the NFL, and separate product-liability-only claims against Riddell. With the allegations against Riddell and the NFL sharply differentiated, the plaintiffs negotiated a settlement with the NFL that the Court ultimately approved and which is now being administered. The plaintiffs' strategy of cleanly separating the allegations against Riddell and the NFL during negotiations and settlement approval may have been done to influence evaluation of fault apportionment, causation, and other issues that stood as possible impediments to settlement. Then, through a series of status and organizational conferences, the Court implemented a plan to manage the remaining claims against the NFL and Riddell. The plaintiffs proposed SAMAC

would largely undercut the Court's efforts in managing this massive litigation for the past five years. *See In re Asbestos*, 718 F.3d at 246.

As for further prejudice to Riddell, courts have recognized that allowing plaintiffs to attempt to relate back claims that they affirmatively abandoned years earlier is "highly prejudicial." *See, e.g.*, *Tese-Milner v. Diamond Trading Co.*, No. 04 CIV. 5203 KMW, 2011 WL 4501336, at *8 (S.D.N.Y. Sept. 29, 2011), *aff'd in part, vacated in part on other grounds sub nom. W.B. David & Co. v. De Beers Centenary AG*, 507 F. App'x 67 (2d Cir. 2013) ("[I]t would be highly prejudicial to allow Plaintiff to relate back those claims that she abandoned nearly three years earlier."). That is precisely the case here with the fraudulent concealment and conspiracy claims that the plaintiffs abandoned five years ago.

**B.      Allowing the plaintiffs to bring claims based on pre-NFL football play is likewise wholly unjustified and would unfairly prejudice Riddell.**

The plaintiffs framed this litigation from the outset as limited to seeking recovery for injuries allegedly sustained during their NFL playing careers. They have never over all this time sought to inform either this Court, the JPML, or the defendants that their actions were directed at injuries beyond those during their NFL careers. Nor did they speak up at any time during the past five-plus years to request to expand the scope of the litigation. Nor did they address this radical proposed expansion in their moving papers, much less seek to justify it.

For the reasons discussed below, their proposed expansion to pre-NFL periods is futile. But it is also highly prejudicial to all involved, including the Court, who have addressed these actions since their inception as involving claims only with respect to the plaintiffs' NFL careers. Indeed, that is the framework and landscape under which all of the extensive motions practice and arguments to date have been made, and under which the mediation and settlement proceedings have taken place. Had the plaintiffs made different tactical decisions five years ago

to make this litigation about an imagined vast NFL-Riddell conspiracy and their lifetime exposures to head impacts, the parties' and the Court's strategic decision-making and actions may have been affected as well. Such a drastic shift now in the scope of this action, especially unaccompanied by any attempt to justify, explain, or even acknowledge it, is wholly unwarranted and entirely prejudicial, and the Court should deny leave to amend on this ground as well.

## II.   The plaintiffs' proposed amendments are futile because they are based on different facts and legal theories and thus do not relate back, making them time-barred.

As the plaintiffs have maintained since 2012 (*e.g.,* Dkt. No. 4133 at 7, 9), their claims under the AMAC against Riddell are solely for personal injuries, which, under any applicable laws, are subject to the limitations periods for personal injury claims, none of which allow more than four years to bring such claims.[10] Rule 15(c)(1)(B), however, allows relation back for statute-of-limitations purposes where an amendment asserts a claim arising "out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."

The plaintiffs have the burden to prove that their amended claim relates back, *see Ladyansky v. Cooper Wheelock, Inc.*, No. 11-CV-102, 2012 WL 1071187, at *4 (E.D. Pa. Mar. 29, 2012), and they must "show that the already commenced action sufficiently embraces the

---

[10] None of the states in which the plaintiffs originally brought their actions have statutes of limitations of more than four years for personal injury claims. *See* Cal. Civ. Proc. Code § 335.1; Fla. Stat. § 95.11(3); Ga. Code § 9-3-33; 735 ILCS 5/13-202; La. Civ. Code art. 3492; Mich. Comp. Laws § 600.5805(10),(13); Miss. Code. § 15-1-49; N.Y. C.P.L.R. 214; 42 Pa. Stat. § 5524; Tex. Civ. Prac. & Rem. Code § 16.003. Although three of these states have five or six year statutes of limitations for fraud, when (as here) the action concerns personal injuries, courts have held that those shorter limitations periods instead apply. *E.g., Fisher v. APP Pharm., LLC*, 783 F. Supp. 2d 424, 429 (S.D.N.Y. 2011) (holding, in personal injury, product liability action that a fraudulent concealment claim is "subject to the three-year statute of limitations applicable to negligence claims because the claim is merely incidental to the negligence claim"); *Pavlik v. Kornhaber*, 326 Ill. App. 3d 731, 748 (2001) (applying two-year period fraud claim based on personal injury); *Dudek v. St. John's Hosp.*, No. 230352, 2002 WL 1308780, at *3 (Mich. Ct. App. June 11, 2002) (holding that three-year period applied to "a fraud claim that resulted in personal injury"); *also Citizens for Pretrial Justice v. Goldfarb*, 415 Mich. 255, 269 (1982) (three-year period applies to traditional, common-law torts).

amended claims so that defendants are not unfairly prejudiced" by the assertion of claims otherwise time-barred. *Nelson v. Cty. of Allegheny*, 60 F.3d 1010, 1014 (3d Cir. 1995). Courts properly permit relation back "only where the opposing party is given 'fair notice of the general fact situation and the legal theory upon which the amending party proceeds.'" *Glover v. F.D.I.C.*, 698 F.3d 139, 146 (3d Cir. 2012).

Moreover, when amendments "significantly alter the nature of the proceeding," relation back is inappropriate. *Id.* (quoting *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002)). Similarly, relation back is also improper where a plaintiff affirmatively abandons a liability theory and accompanying allegations. *See Tese-Milner*, 2011 WL 4501336, at *8.

Despite their "burden of establishing that relation back is appropriate," the plaintiffs don't provide "any argument that the requirements" of Rule 15(c)(1) "have been met." *See Ladyansky*, 2012 WL 1071187, at *4. To the contrary, they have ignored entirely that their proposed SAMAC even raises any new claims—despite expanding the causes of action against Riddell from four in the AMAC, to 14 in the SAMAC. They likewise simply ignore the obvious limitations issues with respect to these claims. Under the applicable legal principles discussed below, the plaintiffs cannot rely on relation back, and their new and abandoned claims relying on newly asserted facts and theories of liability are therefore barred as futile.

A.     **The proposed addition of new claims based on all exposures beyond merely the plaintiffs' NFL careers is futile because those claims cannot relate back and thus are barred by any applicable statute of limitations.**

This Court and others have repeatedly held that claims based on injuries that occurred during different time periods from those alleged in an earlier complaint do not relate back. *See, e.g.*, *In re Asbestos Prod. Liab. Litig. (No. VI)*, No. CIV. A. 07-CV-63839, 2009 WL 2412442, at *1 (E.D. Pa. Aug. 5, 2009), *aff'd sub nom. Anderson v. Bondex Int'l, Inc.*, 552 F. App'x 153 (3d Cir. 2014); *Holdridge v. Heyer-Schulte Corp. of Santa Barbara*, 440 F. Supp. 1088, 1094

(N.D.N.Y. 1977). This remains true even where—largely unlike in the SAMAC—the plaintiff raises the same causes of action. *Id.*

This established law bars any attempt to rely on relation back as to the plaintiffs' proposed expansion of Riddell's exposure and liability to cover "all exposures to repetitive head trauma and not merely those exposures sustained during the time Plaintiffs played as professional football players." (Dkt. 7762-2 at 12 ¶ 29.) This proposed expansion is not only entirely new, it also relies on alleged injuries sustained during an entirely different time period and involving different underlying allegations. Such a theory therefore cannot and does not relate back. *See In re Asbestos Prod.*, 2009 WL 2412442, at *6–7; *Holdridge*, 440 F. Supp. at 1094. Moreover, changing the scope of this litigation from involving NFL play only (as it has existed since its inception) to *all* football play at *all* levels of the game would "significantly alter the nature of the proceeding," further precluding relation back. *Glover*, 698 F.3d at 146.

**B.      Relation back is also unavailable as to the plaintiffs' long-ago abandoned fraudulent concealment and conspiracy claims.**

Any attempt to argue relation back to save the plaintiffs' fraudulent concealment and conspiracy claims would primarily fail because relation back "cannot be used as a mechanism to revive abandoned claims." *Tese-Milner*, 2011 WL 4501336, at *8. But relation back also requires the earlier pleading to have adequately put the defendant on notice of a theory of recovery and operative core of facts by something more than one or two vague or conclusory references, which is all the plaintiffs' "Civil Conspiracy/Fraudulent Concealment" count in the MAC offered with respect to Riddell. *See, e.g.*, *id.*; *McGregor v. La. State Univ. Bd. of Sup'rs*, 3 F.3d 850, 864 (5th Cir. 1993). This is why, in similar circumstances wherein plaintiffs have alleged merely product liability claims, courts have rejected attempts to relate back fraud/conspiracy-based allegations in an amended complaint. *See, e.g.*, *Corcoran v. N.Y. Power*

*Auth.*, 935 F. Supp. 376, 392–93 (S.D.N.Y. 1996); *Payne v. A.O. Smith Corp.*, 578 F. Supp. 733, 737 (S.D. Ohio 1983).

In addition, Rule 15(c) requires that the prior complaint "adequately notified the defendants of the basis for liability the plaintiffs would later advance in the amended complaint." *Glover*, 698 F.3d at 146. Thus, were the plaintiffs to maintain that their SAMAC claims rest on different theories and facts than those the claims previously abandoned, then Riddell necessarily did not have adequate notice of these potential claims. *See Corcoran*, 935 F. Supp. at 392–93; *Payne*, 578 F. Supp. at 737; *also e.g.*, *Merritt v. Countrywide Fin. Corp.*, No. 09-CV-01179-BLF, 2015 WL 5542992, at *15 (N.D. Cal. Sept. 17, 2015) (rejecting relation-back of RICO claims where prior, abandoned RICO claims were based on a different theory). In short, even were the plaintiffs to have addressed it, relation back cannot save their long-abandoned claims.

## III.   As with the improper SAMAC, the Court should reject the plaintiffs' proposed amended SFC as being deficient, unhelpful, confusing, and doing nothing to advance the adjudication of these claims.

The plaintiffs represented to the Court that they seek leave to amend to set forth the claims as to "each individual Plaintiff." (Dkt. No. 7762-1 at 5.) Indeed, having such individualized information is essential to proper pleadings. Yet the plaintiffs have refused to provide such information since the inception of this litigation, including by refusing to file—as they should have—individual complaints, and refusing to include necessary and useful information in their prior SFC.[11] Now, rather than proposing to provide any "additional factual support" as "to each individual Plaintiff" as they promised, the plaintiffs' amended SFC offers no additional facts. Indeed, apart from excising references to the NFL, and with only minor and

---

[11] Riddell incorporates its prior arguments regarding the SFC's deficiencies (Dkt. Nos. 3593, 3593-1), and, consistent with the Court's May 18, 2017 order, reserves the right to revisit the severance issue at a later date, in addition to other motions practice as provided for in the Court's order, if necessary and as appropriate. (Dkt. No. 7709 at 5 ¶ 15.)

immaterial exceptions, the amended SFC mirrors the current SFC and does nothing to provide any useful, additional information concerning the individual plaintiffs' claims against Riddell.

The deficiency and unhelpfulness of the amended SFC is further magnified when considering that it is supposed to provide individualized facts with respect to each plaintiff's claims under the SAMAC, which proposes to add 10 sweeping and far-ranging new counts and to expand purported liability beyond merely players' NFL careers to their entire football careers. Yet the amended SFC proposes to add zero new categories of information that would be necessary to support these new claims.

For example, claims sounding in fraud or alleging conspiracy based on fraud require heightened pleading under Rule 9(b). *See, e.g., Lum v. Bank of Am.*, 361 F.3d 217, 220 (3d Cir. 2004), *abrogated in part on other grounds by Twombly*, 550 U.S. at 557 ("fraud must be pled with particularity in *all* claims based on fraud"). This requirement applies equally here, as even in an MDL, a plaintiff must set forth any "particularized allegation of fraud applicable only as to an individual . . . in the individual short-form complaint." *In re Zofran (Ondansetron) Prod. Liab. Litig.*, No. 1:15-MD-2657-FDS, 2017 WL 1458193, at *5–6 (D. Mass. Apr. 24, 2017). Whereas a short form complaint that offers merely "a series of check boxes to relay claims against Defendants under any number of theories" is "inadequate." *Lawson v. Zimmer, Inc.*, No. 5:12CV1263, 2015 WL 9583031, at *2 (N.D. Ohio Dec. 31, 2015).

Despite these requirements, mere "check boxes" are all the plaintiffs' amended SFC provides. Neither the SAMAC nor the amended SFC offers any level of particularized pleading for the individual plaintiffs' proposed fraud-based claims. Instead, they propose merely to keep the same deficient, bare-bones categories of information that they included in their earlier SFC, which was directed solely to product liability claims as to Riddell.

Similarly, while the SAMAC proposes to radically expand the scope of this litigation from NFL play only, the amended SFC proposes to provide information only about the players' NFL careers—just as the prior SFC did. (Dkt. No. 7762-3 at 4 ¶¶ 14–16.) There is no requirement to include relevant information about college, high-school football, or youth-league football, despite the plaintiffs' attempt to expand Riddell's liability down to all these levels.

The plaintiffs' proposed amended SFC is emblematic of the flaws that pervade the plaintiffs' proposed amendment in general. Whereas they should have used this opportunity to progress the efficient adjudication of this litigation by refining their limited, existing product liability claims against Riddell by an amended complaint focused on those claims and an amended SFC that provided meaningful and necessary individualized information, the plaintiffs went in the opposite direction. They have tried to radically expand their claims and regress the litigation by half a decade, while providing even less individualized information about themselves and their claims. The Court should reject the amended SFC, along with the SAMAC.

## CONCLUSION

With the NFL settlement achieved and the litigation finally poised to proceed, the Court's message in allowing an opportunity to amend was clear:  given that there are—and for five years have been—distinct and separate types of actions against each of the two sets of defendants, the time was right for the plaintiffs to provide separate complaints setting forth the distinct claims against the NFL apart from the limited product liability claims against Riddell. For whatever reason, the plaintiffs failed to heed the Court's message. Instead, they squandered the chance to amend, flouted the Court's directive, and wasted everyone's time with a proposed amendment that is wholly improper, seriously deficient, factually unsupported and implausible, and, at times, laughable, such as by alleging a decades-long conspiracy involving Riddell, the NFL, the government, Honda, other "international corporations," and various independent organizations.

Regardless of the plaintiffs' motivation for their ill-conceived proposed amendment, the fact remains that it would do nothing but take this litigation, after five years, in the opposite direction.

Instead of allowing the plaintiffs' inappropriate proposed amendment, the better course to advance this litigation would be for the Court to set a deadline for players who timely filed an SFC naming Riddell, but who do not wish to pursue their claims, to dismiss their individual actions against Riddell. With the NFL settlement underway, it is likely a significant number of plaintiffs—including some or all of the 67 NFL-settlement-class-member plaintiffs not currently represented by counsel—would prefer not to continue with their limited product liability claims against Riddell. Such an inquiry is further appropriate considering that the inclusion of claims against Riddell appears (as it always has) to be driven solely by a handful of plaintiffs' counsel, and not by the plaintiffs themselves. Moreover, there being at least 44 players who filed multiple conflicting SFCs both asserting and not asserting claims against Riddell further militates in favor of such a deadline.

For multiple reasons, the Court should deny the plaintiffs' motion and leave to amend. As the plaintiffs have failed to heed the Court's directive to advance this litigation by proposing a useful amended master complaint with a worthwhile short-form complaint for the Riddell claims, the Court should set a deadline for existing Riddell plaintiffs to dismiss their individual actions, after which the parties should proceed with this litigation based on the pleadings that have been in place for the past five years—the AMAC and individual, timely filed SFCs—and motions practice, including ruling on Riddell's preemption motion and other motions as appropriate.

Respectfully Submitted,


*/s/ Paul G. Cereghini*_____
Paul G. Cereghini
Thomas C. Howard

BOWMAN AND BROOKE LLP
2901 N. Central Avenue, Suite 1600
Phoenix, AZ  85012
Telephone:  (602) 643-2300
Facsimile:  (602) 248-0947
paul.cereghini@bowmanandbrooke.com
thomas.howard@bowmanandbrooke.com

Robert L. Wise
BOWMAN AND BROOKE LLP
901 East Byrd Street, Suite 1650
Richmond, VA  23219
Telephone:  (804) 649-8200
Facsimile:  (804) 649-1762
rob.wise@bowmanandbrooke.com

Eden M. Darrell
BOWMAN AND BROOKE LLP
750 B Street, Suite 1740
San Diego, CA  92101
Telephone: (619) 376-2500
Facsimile: (619) 376-2501
eden.darrell@bowmanandbrooke.com

Thomas P. Wagner
MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN
2000 Market Street, Suite 2300
Philadelphia, PA  19103
Telephone: (215) 575-4562
Facsimile: (215) 575-0856
tpwagner@mdwcg.com

Attorneys for Defendants

**CERTIFICATE OF SERVICE**

The undersigned certifies that this document was electronically filed and served via ECF on all counsel of record registered to receive service via the Court's ECF system.

*/s/ Paul G. Cereghini* _____