# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | **Hon. Anita B. Brody** |
| | No. 12-md-2323-AB |
| THIS DOCUMENT RELATES TO: | No. 16-cv-01704-AB |
| *SMITH et al., v. ARIZONA FOOTBALL CLUB, LLC* | MDL No. 2323 |

## <u>MOTION TO REMAND AND MEMORANDUM IN SUPPORT</u>

Kenneth B. McClain
Lauren E. McClain
Timothy J. Kingsbury
HUMPHREY, FARRINGTON & MCCLAIN
221 West Lexington, Suite 400
Independence, MO 64051
Telephone: (816) 836-5050
Facsimile: (816) 836-8966

Paul D. Anderson
Andrew Schermerhorn
John Klamann
THE KLAMANN LAW FIRM
4435 Main, Ste. 150
Kansas City, MO 64111
Telephone: (816) 421-2626
Facsimile:  (816) 421-8686

Wm. Dirk Vandever
THE POPHAM LAW FIRM
712 Broadway, Suite 100
Kansas City, Missouri
Telephone: (816) 221-2288
Facsimile: (816) 221-3999

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. ii

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION ........................................................................................................ 1

BACKGROUND .......................................................................................................... 1

ARGUMENT ............................................................................................................... 7

    I. .......................................................................................................................... 7

        A. The Law of the Case and the Principle of Comity Require that this Case be Remanded ................................................................................................ 7

        B. Federal-Question Jurisdiction .......................................................... 8

            1. The Well-Pleaded Complaint Rule ......................................... 8
            2. The "Artful Pleading" Doctrine ............................................. 9

    II. ......................................................................................................................... 11

        A. Third Circuit Case Law ..................................................................... 11

            1. *Kline v. Sec. Guards, Inc.* ...................................................... 11
            2. *Stellar v. Allied Signal, Inc* ................................................... 14
            3. *McNeal v. ArcelorMittal USA, Inc* ........................................ 18

        B. Relevant Case Law from Outside the Third Circuit .......................... 21

            1. *McKnight v. Dresser, Inc.* (5th Circuit) ................................. 21
            2. *Hendy v. Losse* (9th Circuit) ................................................. 23

    III. ....................................................................................................................... 24

        A. Section 301 does not Completely Preempt Plaintiffs' Negligence Claim. .......... 24

        B. Section 301 does not Completely Preempt Plaintiffs' Negligence Misrepresentation or Fraudulent Concealment Claims ......................................... 28

        C. Section 301 does not Completely Preempt Plaintiffs' Loss of Consortium Claims 30

        D. The Provisions Cited by the Cardinals are Demonstrably Irrelevant .................. 30

        E. The Cases Relied upon by the Cardinals are Wholly Inapposite ......................... 32

        F. The Decision in Green Does Not Work a Manifest Injustice ............................... 33

    IV. ....................................................................................................................... 34

        A. This Case is Not Removable Pursuant to 28 U.S.C. § 1445(c) ........................... 34

    V. ......................................................................................................................... 35

        A. Plaintiffs' Request for Just Costs, Including Attorneys' Fees ............................. 35

CONCLUSION ........................................................................................................... 35

## **TABLE OF AUTHORITIES**

**Cases**

*Al Tech Specialty Steel Corp. v. Allegheny Internat'l Credit Corp.,* 104 F.3d 601 (3d Cir.1997) . 8

*Amesquita v. Gilster-Mary Lee Corp.*, 408 S.W.3d 293 (Mo. Ct. App. 2013) ............................ 41

*Anderson v. Ford Motor Co.*, 803 F.2d 953 (8th Cir.1986) ........................................................ 35

*Antol v. Esposto*, 100 F.3d 1111 (3d Cir. 1996), amended, (3d Cir. 1997) ........................... 12, 13

*Arizona v. California,* 460 U.S. 605 (1983) ................................................................................. 7

*Barnes v. Nat'l Football League*, No. 11-cv-08396 (C.D. Cal. Dec 8, 2011) ............................. 21

*Beneficial Nat. Bank v. Anderson*, 539 U.S. 1 (2003) ..................................................... 10, 11, 25

*Berda v. CBS Inc.,* 881 F.2d 20 (3d Cir. 1989) ........................................................................... 14

*Brown v. Francis*, 75 F.3d 860 (3d Cir.1996) ............................................................................. 23

*Carman v. Wieland*, 406 S.W.3d 70 (Mo.Ct.App.2013) ............................................................. 28

*Casey v. Planned Parenthood of Se. Pa.,* 14 F.3d 848 (3d Cir.1994) .......................................... 7

*Casselli v. City of Philadelphia*, 54 F. Supp. 3d 368 (E.D. Pa. 2014) ........................................ 15

*Duerson v. Nat'l Football League*, 2012 WL 1658353 (N.D. Ill. May 11, 2012) ....................... 21

*Fagan v. City of Vineland,* 22 F.3d 1283, 1290 (3d Cir.1994) ..................................................... 8

*Foster v. City of Philadelphia*, 826 F. Supp. 2d 778 (E.D. Pa. 2011) ........................................ 39

*Fox v. Parker Hannifin Corp.*, 914 F.2d 795 (6th Cir. 1990) ..................................................... 36

*Foy v. Pratt & Whitney Grp.,* 127 F.3d 229 (2d Cir. 1997) ........................................................ 35

*Francis v. Noranda Aluminum, Inc.*, 2013 WL 1090300 (E.D. Mo. Mar. 15, 2013) .................. 18

*Green v. Arizona Cardinals Football Club LLC*, 21 F. Supp. 3d 1020 (E.D. Mo. 2014) ..... passim

*Gully v. First Nat'l Bank*, 299 U.S. 109 (1936) ......................................................................... 10

*Hansen v. Ritter*, 375 S.W.3d 201 (Mo. App. W.D. 2012) ......................................................... 30

*Hayman Cash Register Co. v. Sarokin,* 669 F.2d 162 (3d Cir.1982) ......................................... 8, 9

*Hendy v. Losse*, 925 F.2d 1470 (9th Cir. 1991) ..................................................................... 27, 28

*Hughes v. Mylan Inc.*, 2011 WL 5075133 (E.D. Pa. Oct. 25, 2011) ............................................ 5

*In re Nat'l Hockey League Players' Concussion Injury Litig.*, 189 F. Supp. 3d 856 (D. Minn. 2016) .......................................................................................................................................... 9

*Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851 (1987) ........................... 6, 16, 28

*Johnson v. Auto Handling Corp.,* 857 F. Supp. 2d 848 (E.D. Mo. 2012) .................................... 31

*Kline v. Security Guards, Inc.*, 386 F.3d 246 (3d Cir.2004) .................................................. passim

*Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988) ..................................... 14, 31

*Livadas v. Bradshaw*, 512 U.S. 107 (1994) ............................................................................... 12

*Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005)................................................................ 41

*Maxwell v. Nat'l Football League*, No. l 1-cv-08394 (C.D. Cal. Dec. 8, 2011) ........................... 21

*McKnight v. Dresser, Inc.*, 676 F.3d 426 (5th Cir. 2012)..................................................... passim

*McNeal v. Arcelormittal USA, Inc.*, 2015 WL 9489590 (E.D. Pa. Dec. 29, 2015) ............... passim

*Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804 (1986) ................................ 10, 32

*Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401 (9th Cir. 1991)....................................... 35

*Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc*., 406 F.3d 1052 (8th Cir. 2005)....... 34

Palmer v. Kraft Foods Global, Inc., 2014 WL 317876 (E.D. Pa. Jan. 29, 2014) ............. 10, 11, 32

*Pear v. Nat'l Football League*, No. 11-cv-08395 (C.D. Cal. Dec. 8, 2011) .................................. 21

*Ramos v. Wal-Mart Stores, Inc.*, 202 F. Supp. 3d 457 (E.D. Pa. 2016)................................... 10, 25

*Renaissance Leasing, LLC v. Vermeer Mfg. Co*., 322 S.W.3d 112, (Mo.2010) ........................... 34

*Smith v. Dewitt & Assoc.*, 279 S.W.3d 220 (Mo.Ct.App.2009)................................................... 28

*State ex rel. Brewen–Clark Syrup Co. v. Missouri Workmen's Compensation Commission,* 320
    Mo. 893, 8 S.W.2d 897 (Mo.1928) (*en banc* ) .......................................................... 40

*State ex rel. KCP & L Greater Missouri Operations Co. v. Cook*, 353 S.W.3d 14 (Mo. Ct. App.
    2011).................................................................................................................... 18, 41

*Steelworkers v. Rawson*, 495 U.S. 362 (1990)............................................................................. 16

*Stellar v. Allied Signal, Inc.*, 98 F.Supp.3d 790 (E.D. Pa. 2015)......................................... passim

*Stringer v. Nat'l Football League*, 474 F. Supp. 2d 894 (S.D. Ohio 2007) ................................. 21

*Tooey v. AK Steel Corp*., 81 A.3d 851 (2013) ............................................................................. 17

*Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217 (3d Cir.1995) ..................................... 19, 31

*Tse v. Ventana Medical Systems, Inc.,* 123 F.Supp.2d 213 (D.Del.2000) ..................................... 8

**Statutes**

28 U.S.C. § 1447(c) ..................................................................................................................... 35

R.S.Mo. § 287.010 ....................................................................................................................... 34

R.S.Mo. 287.110(2) ..................................................................................................................... 34

Plaintiffs, by and through undersigned counsel, and pursuant to the Court's Order, dated April 12, 2017 (Doc. 7477), respectfully submit this Motion to Remand and Memorandum in Support.

## INTRODUCTION

Plaintiffs in this case are two former professional football players and their wives who bring claims against the players' former employer, the Arizona Cardinals Football Club, LLC, corporate successor of the St. Louis Football Cardinals, Inc. (hereinafter "Defendant" or the "Cardinals"). Plaintiff John Thomas "J.T." Smith was employed by the Defendant between 1985 and 1987. Plaintiff Edward Scott was employed by the Defendant in late 1987.

As their employer, Defendant owed Plaintiffs duties under the common law that precede and exist entirely independent of a collective bargaining agreement ("CBA"). In fact, since Scott was never employed at a time during which a CBA was in effect, his claims *must* arise and be adjudged independent of a CBA.[1] It stands to reason that since Scott's claims do not arise from nor require the interpretation of a CBA, that Smith's claims *also* do not arise from nor require the interpretation of a CBA.

## BACKGROUND

Originally, Plaintiffs filed their claims in the Circuit Court of the City of St. Louis, Missouri and limited the scope of their claims to the period from September 1, 1987 to March 28, 1993, during which no CBA was in effect (the "gap period"). Defendant, however removed Plaintiffs' claims to the United States District Court for the Eastern District of Missouri on the grounds that § 301 of the Labor Management Relations Act preempts Plaintiffs' state law

---

[1] *See* 4:15-cv-01903-JCH, ECF No. 21, pp. 3, 7, 9.

claims.[2] The Cardinals argued that any duties owed to Smith by the team, and the degree to which its discharge of those duties was reasonable, must be determined by interpreting a CBA.[3]

Plaintiffs countered that by relying exclusively on Missouri state law, they could properly avoid federal jurisdiction.[4] Alternatively, Plaintiffs argued that because they had restricted their claims to the gap period, § 301 could not provide a jurisdictional anchor.[5]

In ruling on Plaintiffs' Motion to Remand, Judge Catherine D. Perry considered both of Plaintiffs' contentions and found the second to be unavailing. Judge Perry reasoned that "given that [Smith] [was] employed when CBAs were in effect and that [Plaintiffs] allege that symptoms of CTE may not appear until months, years, or even decades after the last traumatic impact[,]" Plaintiffs cannot limit their claims to the gap period.[6] In other words, the court decided that despite Plaintiffs' efforts to limit the period of their claims, their claims extended "months, years, or even decades" beyond the period of their employment.[7]

However, as to Plaintiffs' first contention—that they could avoid federal jurisdiction by relying exclusively on Missouri state law—the court agreed. "Plaintiffs' negligence claims," the court ruled, "are premised upon the common law duties to maintain a safe working environment, not to expose employees to unreasonable risks of harm, and to warn employees about the existence of dangers of which they could not reasonably be expected to be aware."[8] The court

---

[2] *See Green v. Arizona Cardinals Football Club LLC*, 21 F. Supp. 3d 1020 (E.D. Mo. 2014).
[3] *Id.* at 1024.
[4] *Id. See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 398-99 (1987)("the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court.").
[5] *See Green*, 21 F. Supp. 3d. at 1026.
[6] *Id.* at 1026-27.
[7] *Id.* at 1026.
[8] *Id.* at 1027.

held that these duties "exist independent of the CBAs."[9] The same was said of Plaintiffs' negligent misrepresentation and fraudulent concealment claims.[10]

The court also held that Plaintiffs' claims can be *adjudged* through interpretation of Missouri's common law and that there did not the need to interpret the terms of a CBA.[11] In other words, the court held that Plaintiffs' claims neither arose from nor required the interpretation of a CBA and therefore remanded Plaintiffs' claims to the Circuit Court from which it was removed.[12]

Significantly, at the time of her ruling, Judge Perry was fully aware of the premises. The Court observed, for example, that Plaintiffs were only employed with the Cardinals during the period from 1985 through 1987.[13] Yet, it was clear on the face of the First Amended Petition that Plaintiffs alleged that the Cardinals' common law duty of disclosure extended from September 1, 1987 to March 28, 1993, or *for at least six years after the employer-employee relationship ended.*[14] Judge Perry *expanded* the relevant period of Plaintiffs' claims even further, announcing that Plaintiffs' claims extended months, years, or even decades after the last traumatic impact.[15] Thus, when the court held that Plaintiffs could avoid federal jurisdiction by relying exclusively on Missouri state law, the decision was premised on the fact that Plaintiffs' claims extended well beyond the period of their employment.

After remand, the Cardinals moved to dismiss Plaintiffs' First Amended Petition on the grounds that each of Plaintiffs' claims is time-barred since Plaintiffs limited their claims to the

---

[9] *Id.* at 1028.
[10] *Id.* at 1030.
[11] *Id.* at 1029.
[12] *Id.* at 1030.
[13] *Id.* at 1023.
[14] Plaintiffs' First Amended Petition, ECF No. 1-4, ¶¶ 46-47, 54-55, 57, 63-64.
[15] *Green*, 21 F. Supp. 3d at 1026-27.

gap period. In light of Judge Perry's decision, Plaintiffs obtained the consent of the Cardinals to file a Second Amended Petition so as to remove the gap period that Judge Perry had rendered a nullity.[16] Significantly, none of Plaintiffs' amendments allege *new* duties. Rather, Plaintiffs continue to pursue *only* claims arising under the common law.

In fact, so as to remove any doubt, Plaintiffs specifically alleged that they were asserting the *very same* claims that Judge Perry had ruled were not preempted:

> 13. This is an action requesting relief solely under the common and statutory laws of the State of Missouri. *See Green v. Arizona Cardinals Football Club LLC*, 21 F.Supp.3d 1020 (E.D.Mo.2014). Plaintiffs' claims are premised upon the common law and do not arise from nor do they require the interpretation of a CBA. *See id.*

(*See* Plaintiffs' Second Amended Petition, ECF No. 1-12, ¶13.) Elsewhere in the Second Amended Petition, Plaintiffs repeatedly state that the duties upon which their claims are based arise *solely from the common law* and that their "right to rely" derives *solely from their status as employees* and not from any terms in the CBA.[17] It is therefore accurate to say that in all relevant respects, Plaintiffs' amended claims—those that are now before this Court—are *identical* to those considered by Judge Perry. Nevertheless, Defendant removed the case a second time.[18]

In its Notice of Removal, the Cardinals concede, "the claims alleged in the First Amended Petition *were not preempted because they arose out of the duty an employer owes an employee under state law*."[19] However, according to the Cardinals, the claims asserted in the

---

[16] Defendant also asserted that Plaintiffs' First Amended Petition failed to identify "*any* specific person associated with the Cardinals who allegedly had knowledge of a material fact concerning the risks of repetitive head trauma and yet, purposefully concealed it from them." (*See* Defendant's Memorandum in Support of its Motion to Dismiss, ECF No. 1-6, at p. 18.) Rather than file an opposition to the motion, Plaintiffs identified with specificity the persons associated with the Cardinals who Plaintiffs allege concealed the risks of repetitive head trauma.

[17] *See* Plaintiffs' Second Amended Petition, ECF No. 1-12, ¶¶ 2, 4, 7, 9, 21-24, 27, 34, 39.

[18] *See* Notice of Removal, 16-cv-01704-AB, ECF No. 1.

[19] *Id.*

Second Amended Petition *are* preempted since they extend beyond the period of Plaintiffs' employment. (*Id.* at ¶¶ 15-16.) Clearly, Defendant is wrong.

*First*, as stated above, the claims asserted in the First Amended Petition *did* extend beyond the period of Plaintiffs' employment.[20] Plaintiffs unequivocally asserted post-employment wrongdoing in their First Amended Petition.[21] *Second*, even if they hadn't, the court *in this case* held that, as a matter of fact, Plaintiffs' claims extend "months, years, or even decades after the last traumatic impact."[22] Thus, the grounds upon which the Cardinals rely in removing this case is entirely fallacious.

That being said, Judge Perry held that by relying exclusively on Missouri state law, Plaintiffs could properly avoid federal jurisdiction. *This is the law of the case*. Since, in their Second Amended Petition, the same Plaintiffs have sued the same defendant, alleging the same breaches of the same common law duties, precisely "nothing of significance has changed since the prior removal." *Hughes v. Mylan Inc*., No. CIV.A. 11-5543, 2011 WL 5075133, at *6 (E.D. Pa. Oct. 25, 2011). From a removal perspective, this case is the same as it ever was. Thus, by relying exclusively on Missouri state law, Plaintiffs have properly avoided federal jurisdiction.

In addition to the law of the case doctrine and the principle of comity, it remains that Plaintiffs have elected to vindicate their interests by bringing a state court action arising from the ordinary common-law duty to provide a safe workplace. They do so in accord with binding Supreme Court and Third Circuit precedent which clearly state that such claims exist entirely independent of a CBA and are therefore not subject to § 301 preemption. *See Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 859, 107 S. Ct. 2161, 2167, 95 L. Ed. 2d 791

---

[20] Plaintiffs' First Amended Petition, ECF No. 1-4, ¶¶ 46-47, 54-55, 57, 63-64.
[21] *Id.*
[22] *Green*, 21 F. Supp. 3d at 1026.

(1987)("Under the common law…it is the employer…that owes employees a duty to exercise reasonable care in providing a safe workplace."); *Kline v. Sec. Guards, Inc.*, 386 F.3d 246 (3d Cir. 2004)(observing that in *Hechler*, the Supreme Court distinguished between duties owed by an employer, *which arise under the common law*, and those owed by a union, which do not); *Stellar v. Allied Signal, Inc.*, 98 F. Supp. 3d 790, 798 (E.D. Pa. 2015)("The duty to provide a safe work environment preceded and exists independent of the CBAs."); *McNeal v. ArcelorMittal USA, Inc*., 143 F.Supp.3d 241, 249 (E.D. Pa. 2015)("*McNeal I*")("[T]he duty at issue here—a parent company's duty to maintain a safe work environment for a subsidiary's employees—is a duty that precedes and stands independent of the CBA[.]"); *McNeal v. Arcelormittal USA, Inc., No*. CV 15-03517, 2015 WL 9489590, at *2 (E.D. Pa. Dec. 29, 2015)("*McNeal II*")("Plaintiffs may maintain their claim pursuant to an independent common law cause of action separate and apart from the CBA. That is sufficient to defeat Section 301 preemption."). The sole source of the duty is the common law of the State of Missouri, and the scope of the duty is determined solely by reference to common law of the State of Missouri. Thus, under no circumstance must a court rely upon or interpret a CBA in order to resolve Plaintiffs' claims.

In sum, Plaintiffs' Second Amended Petition asserts the exact same claims that were previously considered in *Green* and properly remanded by Judge Perry. Therefore, the law of the case doctrine and the principle of comity require that this case be remanded forthwith. Alternatively, even if the law of the case doctrine and the principle of comity did not require remand, the law of this Circuit, and the Supreme Court precedent upon which it relies, does. Therefore, this case must be remanded to the Circuit Court from which it came.

## ARGUMENT

## I.

**A.  The Law of the Case and the Principle of Comity Require that this Case be Remanded**

In *Green*, Judge Catherine D. Perry held that Plaintiffs Smith and Scott could choose to have their cause heard in state court by relying exclusively on the common law duties that arise out of employer-employee relationship. *This is the law of the case.*

In *Arizona v. California,* 460 U.S. 605 (1983), the Supreme Court noted:

> Unlike the more precise requirements of res judicata, law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.

*Id.* at 618 (citations omitted). The "[l]aw of the case rules have developed 'to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'" *Casey v. Planned Parenthood of Se. Pa.,* 14 F.3d 848, 856 (3d Cir.1994) (quoting 18 Charles A. Wright, Arthur R. Miller, Edward Cooper, *Federal Practice and Procedure* § 4478 at 788 (2d ed.1981)); *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009).

The law of the case doctrine recognizes, as a matter of comity, that a successor judge should not lightly overturn the decision of her predecessor in a given case. *Fagan v. City of Vineland,* 22 F.3d 1283 (3d Cir.1994) (citations omitted). Accordingly, it has been said that a matter previously ruled upon should be revisited only in "extraordinary circumstances," as where, e.g.: 1) new evidence becomes available; 2) a supervening new law has been announced; or 3) the earlier decision was clearly erroneous and would create manifest injustice. *Tse v. Ventana Medical Systems, Inc.,* 123 F.Supp.2d 213, 221 (D.Del.2000) (citing *Schultz v. Onan Corp.,* 737 F.2d 339, 345 (3d Cir.1984)). *See also Al Tech Specialty Steel Corp. v. Allegheny*

*Internat'l Credit Corp.,* 104 F.3d 601, 605 (3d Cir.1997) (discussing "exceptional circumstances" which may justify a court's reconsideration of a prior ruling).

The doctrine applies both to transfers from judge to judge in the same district, *see Fagan,* 22 F.3d at 1290, and to transfers from district to district, *Hayman Cash Register Co. v. Sarokin,* 669 F.2d 162, 165 (3d Cir.1982). However, "[a]dherence to law of the case principles is … *more important* … where the transferor judge and the transferee judge are not members of the same court," *Hayman*, 669 F.2d at 169 (emphasis added), and "*is particularly applicable* to multidistrict litigation[.]" *Id.* (emphasis added)(citation omitted).

If given their due consideration in this matter, the law of the case doctrine and the principle of comity preclude this Court from reconsidering the matter previously ruled upon by Judge Perry. No additional evidence has become available rendering Judge Perry's decision contestable and no supervening new law has been announced to place in doubt the propriety of Judge Perry's decision. On the contrary, the continued development of the law, particularly in this district, *supports* rather than detracts from Judge Perry's decision. *See Stellar*, 98 F. Supp. 3d at 798; *McNeal I*, 143 F.Supp.3d at 249; *McNeal II*, 2015 WL 9489590; *see also In re Nat'l Hockey League Players' Concussion Injury Litig.*, 189 F. Supp. 3d 856 (D. Minn. 2016)(holding that similar concussion and CTE claims brought by former NHL players were not preempted by CBA). Moreover, as will be shown below, Judge Perry's decision is *not* clearly erroneous and does *not* create a manifest injustice.

## B.     Federal-Question Jurisdiction

### 1.     The Well-Pleaded Complaint Rule

Whether or not the Court has federal question jurisdiction over a matter that the defendant has removed from state court is governed by the "well-pleaded complaint rule," under which the federal question "must be disclosed upon the face of the complaint, unaided by the

answer or by the petition for removal." *Ramos v. Wal-Mart Stores, Inc.*, 202 F. Supp. 3d 457, 467 (E.D. Pa. 2016)(quoting *Gully v. First Nat'l Bank,* 299 U.S. 109 (1936)). The well-pleaded complaint rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Kline v. Security Guards, Inc*., 386 F.3d 246, 252 (3d Cir.2004), citing *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987).

"Nor does it even suffice that the facts alleged in support of an asserted state-law claim *do not support* a state-law claim and would *only* support a federal claim." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 12 (2003)(Scalia, J., dissenting)(emphasis in the original). "Jurisdiction may not be sustained on a theory that the plaintiff has not advanced," *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 809, n. 6 (1986), and "allusions to claims that [Plaintiffs] could have raised—but did not—are irrelevant" *Palmer v. Kraft Foods Global, Inc.*, No. CIV.A. 13-6260, 2014 WL 317876, at *4 (E.D. Pa. Jan. 29, 2014).

Finally, to determine whether the claim arises under federal law, the Court is to ignore potential defenses. *Beneficial*, 539 U.S. at 6, 12-13. In fact, it is "firmly established that a federal defense, including a preemption defense, does not provide a basis for removal, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue in the case." *Caterpillar*, *supra*, at 392 (internal quotation omitted); *Palmer*, 2014 WL 317876, at *5.

## 2.      The "Artful Pleading" Doctrine

There is a limited corollary to the well-pleaded complaint rule, however, that precludes Plaintiffs from "avoiding a federal forum by 'artfully pleading' what is, in essence, a federal claim solely in terms of state law." *Kline*, *supra*, at 252 (quotation omitted). Plaintiffs may not, for example, evade the preemptive effect of § 301 by relabeling a breach of contract claim as a claim for tortious breach of contract under state common law. *McCormick v. AT&T*, 934 F.2d

531, 543 (4th Cir. 1991)(Phillips, J., dissenting)(quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 2011 (1985)).

In *Allis-Chalmers*, the Supreme Court articulated the standard for § 301 preemption as follows: "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted...." *Id.* at 220 (citation omitted); *Kline*, 386 F.3d at 252; *Voilas*, 170 F.3d at 373. The Supreme Court took care, however, to define the precise limits of its holding in *Allis-Chalmers*, emphasizing that "[i]n extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Allis–Chalmers*, 471 U.S. at 212.

In *Livadas v. Bradshaw*, 512 U.S. 107 (1994), the Supreme Court reaffirmed that "§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law," and stressed "that it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement (and not whether a grievance arising from 'precisely the same set of facts' could be pursued) that decides whether a state cause of action may go forward." *Id.* at 122-24. *See also Antol v. Esposto*, 100 F.3d 1111 (3d Cir. 1996), amended, (3d Cir. 1997)(stating that in *Livadas*, the Supreme Court "held that section 301 could not be read broadly to preempt non-negotiable rights conferred upon individual employees as a matter of state law and stressed that it is the legal character of the claim as 'independent' of rights under the collective bargaining agreement that decides whether a state cause of action may go forward.") The Supreme Court also made "clear that when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted

in the course of state-law litigation plainly does not require the claim to be extinguished." *Id. See also Antol*, 100 F.3d at 1122 ("The Supreme Court also reiterated that when the meaning of contract terms is not the subject of the dispute, the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." (internal quotation omitted)).

Critically, as will be shown below, it is well established that claims based upon the common law duty to provide a safe workplace are ***not*** removable to federal court under § 301 of the Labor Management Relations Act. Thus, Judge Perry did not clearly err in *Green*.

## II.

### A.    Third Circuit Case Law

#### 1.    *Kline v. Sec. Guards, Inc.*

The Supreme Court's § 301 "complete preemption" jurisprudence was applied by the Third Circuit in *Kline*, 386 F.3d 246. In *Kline*, plaintiffs were two employees of Dana Corporation, an auto components manufacturer alleged to have surveilled its hourly employees at the entrance to one of its facilities. *Id.* at 250. During the period of its surveillance, Dana Corporation's employees, including the two plaintiffs, were represented by the United Steel Workers of America, Local 3733 and were bound to a CBA between their employer and the union. *Id.* When the plaintiffs filed suit in Court of Common Pleas, Dana Corporation removed the case to the District Court of Pennsylvania. *Id.* Thereafter, the plaintiffs filed a motion to remand which the district court denied. *Id.* On appeal, the Third Circuit raised and resolved the same jurisdictional question present here – that is, whether plaintiffs' claims were completely preempted by § 301. *Id.*

The Third Circuit began its analysis by first reaffirming that, in accord with *Allis-Chalmers*, "it would be inconsistent with congressional intent under [§ 301] to pre-empt state

rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Kline*, *supra*, at 253 (quoting *Allis-Chalmers*, 471 U.S. at 212). The court also affirmed that, in accord with the Supreme Court's decision in *Caterpillar*, where the same set of facts gives rise to both a state law claim and an action for violation of a CBA, such as when a duty arises under both the common law and a CBA, "*employees* have the option of vindicating their interests by means of either a section 301 action or an action brought under state law, as long as the state-law action *as pleaded* does not require interpretation of the collective bargaining agreement." *Id.* at 253 (emphases added)(quotation omitted). *See also Berda v. CBS Inc.*, 881 F.2d 20, 25 (3d Cir. 1989)("*Caterpillar* makes clear that in order for there to be section 301 preemption, the plaintiff, in its well-pleaded complaint, must *plead* an action that requires interpretation of the collective bargaining agreement." (emphasis added)).

Additionally, the court affirmed that, in accord with Supreme Court's decision in *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988), "purely factual questions pertain[ing] to the conduct of the employee and the conduct and motivation of the employer" do not "require[] the court to interpret any term of a collective-bargaining agreement," *Kline*, *supra* at 253 (quoting *Lingle*, 486 U.S. at 407), and that it is "irrelevant that the state-law analysis might well involve attention to the same factual considerations as" would be considered under a claim for breach of a CBA. *Id.* at 253-54 (quoting *Lingle*, 486 U.S. at 408).

Finally, the court affirmed that, in accord with *Livadas*, it is the legal character of a claim as "independent" of rights under a CBA that determines whether a state cause of action is preempted and that "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Id.* at 254 (quoting *Livadas*, 512 U.S. at 122-24).

12

Turning to the facts, the court first rejected the employer's argument that since the appellants' claims went to the "core" of its management rights, a subject of the CBA, they must therefore be preempted. *Id.* at 255. The court stated: "[w]hile it is true that the CBA may be consulted in the course of litigation, it does not follow that their claims are completely preempted." *Id.* Rather, when state-based or common law claims are alleged on the face of the complaint, the dispositive question is **not** whether the claims relate to the subject of the CBA; instead, the dispositive question is whether, in order to resolve the claims, the court must *interpret* a provision of the CBA, about which there is a "substantial dispute." *Id.* at 256. *See also Casselli v. City of Philadelphia*, 54 F. Supp. 3d 368, 375 (E.D. Pa. 2014)("The fact that a CBA or a union constitution is 'part of the context' in which a plaintiff's claim must be addressed does not trigger complete preemption in the absence of some substantial dispute over the meaning of the collective bargaining agreement." (internal quotation omitted)). "A finding of § 301 preemption is not mandated," the court held, "simply by the contention that Appellants' state law claims 'necessarily implicate' the CBA." *Id.*

Next, the Court of Appeals dismissed the employer's contention that preemption was required by Supreme Court's decisions in *Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851 (1987), and in *Steelworkers v. Rawson*, 495 U.S. 362 (1990). "Neither *Hechler* nor *Rawson* is applicable to Appellants' tort claims," the Court held. *Id.*

> In relying on *Hechler* and *Rawson*, Dana … refuse[s] to acknowledge that the duty of care in both of those cases was alleged to have arisen from a collective-bargaining agreement. In both of those cases, the *unions*, which did not otherwise have any duty of care under state law, were the defendants being sued."

*Id.* at 261 (emphases added). Under the *common law*, the court held, *"it is the *employer*, not a labor union, that owes employees a duty to exercise reasonable care in providing a safe workplace." *Id.* (quoting *Hechler*, 481 U.S. at 859)(emphasis in the original). Since the

appellants in *Kline* had sued their *employer*, the duties invoked were *not* founded upon rights created by the CBA; rather, they were founded upon rights created by state law. *Id.* at 261. Thus, "no consultation with the CBA [wa]s necessary in order to define the scope of the duties[.]" Whatever duties the employer breached, the court held, "those duties are independent of the CBA." *Id.* In short, *Kline* establishes that claims based upon a common law duty are not removable to federal court under § 301.

Since Plaintiffs Scott's and Smith's claims are based solely upon the common law duty to provide a safe workplace, *see* Plaintiffs' Second Amended Petition, ECF No. 1-12, ¶13, they are not removable to federal court.

### 2.    *Stellar v. Allied Signal, Inc.*

After *Kline*, this Court addressed § 301 preemption in *Stellar v. Allied Signal, Inc.*, 98 F.Supp.3d 790 (E.D. Pa. 2015). In *Stellar*, Frank and Mary Schaffer filed a complaint against various defendants in the Northampton County Court of Common Pleas on February 15, 2013. *Id.* at 794. The complaint alleged that Mr. Schaffer developed mesothelioma as a result of his exposure to asbestos while working for his employer. *Id.* Notably, his employer was not named as a defendant in the initial complaint because, at the time, the Pennsylvania Workers' Compensation Act precluded employees from asserting tort claims for occupational injuries against their employers. *Id.* However, just as happened in Missouri, a court decision in Pennsylvania allowed employees to seek common law remedies against their employers for occupational diseases. *Id. See Tooey v. AK Steel Corp.*, 81 A.3d 851, 856 (2013). Thus, Mary Schaffer and Rita Stellar (as Personal Representative of the Estate of Frank J. Schaffer who in the interim passed away) (hereinafter referred to jointly as Ms. Schaffer) filed an amended complaint, adding Mr. Schaffer's employer, and pleading claims of (1) Strict Liability; (2)

Breach of Warranty; (3) Negligence; (4) Fraud; (5) Conspiracy; (6) Loss of Consortium; and (7) Wrongful Death relating to Frank Schaffer's occupation disease.  *Id.*

The defendant employer removed the case to federal court on the basis that the claims were preempted under § 301. *Id.* According to the employer, the "nature, scope and extent of the duties" owed to Mr. Schaffer required the interpretation of a CBA. *Id.* at 800. "In effect," the Court observed, the employer was "arguing that the common law duty it owed Mr. Schaffer was in some way altered by the CBAs." *Id.*

The case was eventually transferred to the Honorable Eduardo C. Robreno, as related to *In Re: Asbestos Products Liability Litigation, MDL-875*, Civil Action No.: 01-md-0875. No. 5:14-CV-05083-ER, Doc. No. 72 (March 3, 2015). However, prior to transfer, Judge Edward G. Smith considered Ms. Schaffer's motion to remand, noting during oral arguments the importance of getting the decision right.  *Stellar v. Allied Signal, Inc.*, Civ. No. 5:14-cv-05083, ECF No. 73 at pp. 5-6. [23] Judge Smith also observed the uniqueness of Pennsylvania's Workman's Compensation law, stating: "we're probably not going to see a lot of cases in other states except to the extent that they have adopted a similar rule with respect to Workman's Comp that you can sue, because the right to sue the employer[.]" *Id.* at p. 27.[24]

---

[23] "And the basis of jurisdiction is very novel so there's a real issue here that if this is decided wrongly, everything you're doing to try to pursue this actually would be for naught -- whereas if it was remanded down improperly and there is exclusive jurisdiction in Federal Court under Federal law, then everything you do in State Court would ultimately be rendered meaningless because there would be no jurisdiction. So I guess it's important we get this decision right."

[24] As it happens, Missouri, like Pennsylvania, also provides employees the right to seek common law remedies against their employers for occupational diseases. *See Francis v. Noranda Aluminum, Inc.*, No. 1:12CV0104 JAR, 2013 WL 1090300, at *3 (E.D. Mo. Mar. 15, 2013)(observing that in 2011, "the Missouri Court of Appeals held that Workers' Compensation Law does not provide the exclusive remedy for occupational diseases."). *See also State ex rel. KCP & L Greater Missouri Operations Co. v. Cook,* 353 S.W.3d 14, 29 (Mo. Ct. App. 2011)(recognizing as "unusual" that Missouri provides repeat-exposure occupational disease claimants with the right of pursuing a tort claim against the employer in civil court). Thus, as

In its written decision, this Court held that "[u]nder the common law … the employer … owes [its] employees a duty to exercise reasonable care in providing a safe workplace." *Id.* at 798 (quoting *Hechler*, 481 U.S. at 859). The common law duty, moreover, "preceded and exists independent of the CBAs" *Id.* at 800. It "is one imposed by Pennsylvania common law and does not derive from any CBA[.]" *Id.*

As for the employer's contention that the court would nevertheless have to analyze "numerous provisions concerning workplace safety" in the CBAs in order to determine the *scope* of the common law duty, this Court stated:

> Here, Defendant points to workplace and safety clauses in the CBAs and asserts that complete preemption must apply to Plaintiffs' negligence claim. This argument fails. The Court does not have to interpret any of the clauses in the CBAs in order for Plaintiffs to establish the scope of the duty. While it is possible that Defendant could point to some portion of a CBA in arguing that it acted reasonably, or to establish that it provided some type of warning as to certain occupational hazards, whether these statements provide a defense (in that they show Defendant acted reasonably, or that Defendant did not breach its duty of care) is a question of fact for the jury.

*Id.* at 803 (citing *Trans Penn Wax Corp. v. McCandless,* 50 F.3d 217, 232 (3d Cir.1995)). Thus, *even if*, as the defendant employer contended, the common law duty had been expanded in the CBAs, the plaintiffs chose to vindicate only the common law interest arising from the duty to provide a safe work environment. Thus, no consultation with the CBA was necessary in order to define the scope of the duties alleged to have been breached. *Id.* at 801.

In response to the employer's reliance on *Hechler*, *supra*, this Court stated:

> In *Hechler,* the Court was presented with the question of whether a state law tort claim involving a union's breach of a duty of care to provide a member of the bargaining unit with a safe workplace was preempted by § 301. 481 U.S. at 853, 107 S.Ct. 2161. The Court stressed that "[u]nder the common law ... it is the

---

Judge Smith suggested, while there are unlikely to be a lot of cases similar to those asserted in *Stellar*, Plaintiffs' claims are nearly identical.

*employer,* not a labor union, that owes employees a duty to exercise reasonable care in providing a safe workplace." *Id.* at 859, 107 S.Ct. 2161. Because the union's duty arose from the collective bargaining agreement, and therefore the scope of the duty substantially depended on the court's interpretation of the CBA, the plaintiff's state law claim was preempted under § 301. *Id.* at 862, 107 S.Ct. 2161. Here, Plaintiffs' negligence claim is brought against Mr. Schaffer's employer, not his union. Moreover, the duty does not arise from the collective bargaining agreements; rather, it exists independent of the CBAs. Therefore, *Hechler* is not on point.

*Id.* at 803-04 (emphasis in the original).

> This Court concluded:

Here, Plaintiffs have pleaded a state law claim for negligence involving, *inter alia,* an alleged breach of a duty to provide a safe work environment. Pennsylvania recognizes such a duty as a matter of law, and the Pennsylvania Supreme Court has recently permitted former employees to pursue such claims as residing outside the scope of the Pennsylvania Workers' Compensation Act. Defendant has not shown how the common law duty is impacted by the mere presence of various CBAs, nor has it shown that the Court will have to interpret any of the terms of the various CBAs in order to adjudicate Plaintiffs' negligence claim. Therefore, in the instant case, Plaintiffs' negligence claim is not preempted by § 301.

*Id.* at 805.

In sum, after careful analyses, this Court faithfully applied *Kline* and found that claims based upon the common law duty to provide a safe workplace can be determined without interpreting a CBA and are therefore *not* removable under § 301.

*Stellar*, like *Kline*, disposes of the arguments made by the Cardinals in support of removal and affirms that Judge Perry did not clearly err in *Green. First*, like Ms. Schaffer, Plaintiffs Scott and Smith rely solely on duties owed as a result of the employer-employee relationship—duties imposed by the common law of the State of Missouri. Thus, a court does not have to interpret a CBA in order for Plaintiffs to establish the scope of the duty alleged. Rather,

the scope of the duty can be determined by reference to the substantial body of case law and general tort principles that inform courts in the ordinary absence of a CBA.

 *Second*, while it is hypothetically possible that the Cardinals could point, in defense, to some portion of a CBA as evidence that it acted reasonably, *Stellar* correctly declares, in accord with *Caterpillar*, that "a case may not be removed on the basis of a federal defense." *Id.* at 795. More importantly, *Stellar* recognizes that, in any event, whether an employer acts "reasonably" is a question of fact for the jury and not a question requiring the court's interpretation of a CBA. *Id.* at 803.

 *Finally*, *Stellar* makes clear that the Cardinals' reliance on *Duerson v. Nat'l Football League*, No. 13 C 2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012)(unpublished decision); *Maxwell v. Nat'l Football League*, No. 11-cv-08394 Order at 2 (C.D. Cal. Dec. 8, 2011); *Pear v. Nat'l Football League*, No. 11-cv-08395 (C.D. Cal. Dec. 8, 2011); *Barnes v. Nat'l Football League*, No. 11-cv-08396, Order at 2 (C.D. Cal. Dec 8, 2011); and *Stringer v. Nat'l Football League*, 474 F. Supp. 2d 894, 901-02 (S.D. Ohio 2007), is for naught since in each, the claims were brought by NFL players *against the NFL*, and ***not***, as in this case, against their *employer*.

 In sum, like *Kline*, *Stellar* requires that Plaintiffs' claims be remanded.

### 3.  *McNeal v. ArcelorMittal USA, Inc.*

 After *Stellar,* this Court again considered and resolved the same jurisdictional question present here – that is, whether claims grounded upon the common law duty to provide a safe workplace are completely preempted by § 301. In *McNeal I*, plaintiffs were employees of a subsidiary of AcerlorMittal who were injured while helping to load material into an electric furnace. *Id.* at 242. The plaintiffs filed a complaint in the Court of Common Pleas asserting, among other things, that AcerlorMittal had failed to "provide a reasonably safe environment, free from hazards and unseen dangers and conditions." *Id.* at 243. AcerlorMittal removed the case to

federal court asserting that the plaintiffs' negligence claims were completely preempted by § 301 since they require the interpretation of a CBA. *Id.* Seeking to distinguish *Stellar*, AcerlorMittal asserted that it was not the plaintiffs' employer; rather, it was the *parent company* of the plaintiffs' employer. *Id.* at 248. Thus, AcerlorMittal argued, *Stellar* is distinguishable. *Id.*

This Court disagreed. First, the Court observed that, as the removing party, the defendant "bears the burden of demonstrating that the district court has jurisdiction," that uncertainties are resolved in favor of remand, and that "[i]f there is any doubt as to the propriety of removal, the case should not be removed to federal court." *McNeal I*, 143 F. Supp. 3d at 244 (citing *Samuel–Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir.2004), and quoting *Brown v. Francis*, 75 F.3d 860, 865 (3d Cir.1996)). Next, the Court held that under Pennsylvania law, a parent *may*, under certain circumstances, owe a duty to the employees of a subsidiary. *Id.* at 248. Thus, inasmuch as AcerlorMittal sought to distinguish *Stellar* on the basis that it was a parent company, its attempt was unavailing.

Still, AcerlorMittal urged that the claims were preempted since the CBA was necessary to define the "scope" of the common law duties. *Id.* at 250. This argument, too, was unavailing. "Even if Defendants were able to identify a section of the CBA that altered the common law," the Court reasoned, "that is still not dispositive of Section 301 preemption: 'employees have the option of vindicating their interests by means of either a section 301 action or an action brought under state law, as long as the state-law action as-pleaded does not require interpretation of the collective bargaining contract.'" *Id.* (quoting *Voilas*, 170 F.3d at 373-74). "Rather, as 'masters of the complaint,'" the Court held, "Plaintiffs have the right to choose which rights to vindicate: those granted by the common law or those granted by the CBA." *Id.* (citing *Caterpillar*, 482 U.S. at 394-95). Since the plaintiffs chose to vindicate their interest by means of an action under state

law, an interpretation of the CBA was not necessary. Their claims, the Court held, "rest[ed] on duties that preceded and exist[ed] independent of any duties provided in the CBA." *Id.*

After receipt of the remand order issued by this Court, AcerlorMittal filed a motion for reconsideration. *McNeal v. Arcelormittal USA, Inc.*, No. CV 15-03517, 2015 WL 9489590, at *1 ("*McNeal II*")(E.D. Pa. Dec. 29, 2015). AcerlorMittal argued that this Court wrongly decided that the plaintiffs' claims do not require interpretation of a CBA. *Id.* at 2. According to AcerlorMittal, plaintiffs' claims *necessarily* required the interpretation of the CBA as each one of the duties alleged had "been negotiated and agreed upon by the parties to the CBA." *Id.* Once more, this Court disagreed.

"[P]arallelism between the duties in the CBA and the duties allegedly breached," this Court held for a second time, "does not 'render the state-law analysis dependent upon the contractual analysis." *Id.* AcerlorMittal, however, urged that "the parties to the CBA expressly defined their respective duties and obligations concerning the above functions, safety and work place conditions." *Id.* Such was not enough to refute "the critical precept articulated by the Third Circuit Court of Appeals" that "employees have the option of vindicating their interests by means of either a section 301 action *or* an action brought under state law, as long as the state-law action as-pleaded does not require interpretation of the collective bargaining contract." *Id.* (citing *Voilas*, 170 F.3d at 373–74)(emphasis added). "[T]he key inquiry," the Court held, "is not whether Plaintiffs' claims 'relate to a subject...contemplated by the CBA.... Rather, the dispositive question ... is whether [Plaintiffs'] stated claims require *any interpretation* of a provision of the CBA.'" *Id.* (quoting *Kline*, 386 F.3d at 255–56)(emphasis in original). In other words, this Court held that the negotiability of duties contemplated by a CBA does *not* render common-law based claims dependent upon the negotiated contract.

Critically, this Court held that whether the plaintiffs could actually *prove* the common law duty alleged is not a factor in determining § 301 preemption. *McNeal II*, 2015 WL 9489590, at 2. Indeed, it does not suffice that the facts alleged do not support a state-law claim. *Beneficial*, 539 U.S. at 12. The federal question "must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." *Ramos*, 202 F. Supp. 3d at 467.

*McNeal I* and *McNeal II*, like *Stellar* and *Kline*, further erode any basis upon which the Cardinals can possibly rely for removal. *Even if*, for example, the common law duty to provide a safe workplace had been negotiated, *which it hasn't*, absent some substantial dispute over the meaning of a CBA, Plaintiffs may maintain their claim pursuant to an independent common law cause of action separate and apart from the CBA. "That is sufficient to defeat Section 301 preemption." *McNeal II*, 2015 WL 9489590, at *2. Moreover, even if, as the Cardinals insist, Plaintiffs could not actually prove one of the common law duties alleged, that does not provide a basis for removal.

**B.      Relevant Case Law from Outside the Third Circuit**

      **1.      *McKnight v. Dresser, Inc*. (5th Circuit)**

In *McKnight v. Dresser, Inc*., 676 F.3d 426, 433 (5th Cir. 2012), former employees of an industrial valve manufacturer brought state-court actions against their former employer alleging that it had been negligent in failing to maintain a safe workplace and that it had fraudulently misrepresented the dangers to which the employers were exposed. 676 F.3d at 428. The defendant employer removed the actions to federal court pursuant to § 301, asserting that the state court could not adjudicate the tort claims without interpreting the parties' CBA. *Id.* Plaintiffs filed motions to remand, contending that their claims were independent of the CBA. *Id*. at 428-29.

On appeal, the Fifth Circuit identified the narrow issue for review as whether (1) the claims are "inextricably intertwined" with the CBA, in which case the district court was correct to deny the motion to remand, or (2) the claims are based on independent, non-negotiable state law rights, in which case the district court was without jurisdiction and erred in denying the motion to remand. *Id.* at 431.

Finding that the workplace safety claims were based on precisely the type of independent, non-negotiable state law rights and obligations which the Supreme Court excepted from § 301 preemption in *Allis-Chalmers* and the string of cases that followed, the Fifth Circuit held that although a CBA may elaborate on or provide identical workplace safety obligations, claims for the violation of state-imposed workplace safety obligations are ***not*** "inextricably intertwined" with the CBA. *Id.* at 432.

The Fifth Circuit also dismissed the argument that the CBA provides the standard by which to judge whether the employer fulfilled its obligations to provide workplace safety. *Id*. at 432-33. The Court reasoned that since a substantial body of case law and general tort principles apply to workplace safety claims in the complete absence of a CBA, a court would not be *required* to interpret a CBA to determine the scope of the duty alleged or to determine the standard by which to judge the defendant's conduct. *Id.* Thus, the claims were remanded.

Like the employees in *McKnight*, the Plaintiffs in this case bring claims based on precisely the type of independent, non-negotiable state law rights and obligations which the Supreme Court excepted from § 301 preemption in *Allis-Chalmers.* Moreover, as the Fifth Circuit reasoned, since there exists a substantial body of case law and general tort principles upon which to resolve Plaintiffs' claims, a court would not be required to interpret a CBA to determine the scope of the duty alleged or to determine the standard by which to judge the

defendant's conduct. *McKnight*, like *Kline*, *Stellar*, and *McNeal*, requires that Plaintiffs' claims be remanded.

### 2.    *Hendy v. Losse* (9th Circuit)

In *Hendy v. Losse*, 925 F.2d 1470 (9th Cir. 1991)(unpublished disposition), former NFL football player John Hendy and his wife brought various claims against the San Diego Chargers and the team's physician, Gary M. Loss, M.D., asserting various tort claims arising from injuries that Hendy sustained while playing for the Chargers. *Id.* Defendants removed the action on the grounds that the claims were preempted by § 301 since "the scope of their duty cannot be ascertained without reference to Article XXXI of the collective-bargaining agreement, which requires each team to hire 'a board certified orthopedic surgeon,' or Paragraph 9 of Hendy's Player Contract, which sets out the conditions under which the Chargers were to provide medical care." *Id.*

The Ninth Circuit reasoned, however, that Hendy's claims arose solely under state law and thus, were "wholly independent of the collective bargaining agreement." *Id.* Insofar as the CBA limited or otherwise altered the common law, the court held that "the argument is in the nature of a defense and does not alter the state-law nature of [plaintiffs'] claim." *Id.* (*citing Caterpillar*, 482 U.S. at 398-99.)

Finally, in distinguishing *Rawson* and *Hechler*, the Ninth Circuit observed that claims against a union for breaching the duty to provide a safe workplace are "preempted because '[u]nder the common law … it is the *employer*, not a labor union, that owed employees a duty to exercise reasonable care in providing a safe workplace.'" *Id.* (quoting *Hechler*, 481 U.S. at 859 (emphasis in the original)).

23

*Hendy* very closely resembles the Plaintiffs' cases. Indeed, the Ninth Circuit even considered some of the same CBAs in rejecting § 301 preemption. *Hendy's* sound reasoning directly applies in this case and requires that Plaintiffs' claims be remanded.

### III.

**A.     Section 301 does not Completely Preempt Plaintiffs' Negligence Claim.**

As the foregoing authority already makes clear, Plaintiffs' negligence claims neither arise from nor necessarily require the interpretation of a CBA. Plaintiffs' negligence claims are premised upon the common law duties to maintain a safe working environment, not to expose employees to unreasonable risks of harm, and to warn employees about the existence of dangers of which they could not reasonably be expected to be aware. *Id. See also Carman v. Wieland*, 406 S.W.3d 70, 76–77 (Mo.Ct.App.2013) (listing employer's non-delegable duties). The scope of the duty "is measured by 'whether a reasonably prudent person would have anticipated danger and provided against it.'" *Id.* (quoting *Smith v. Dewitt & Assoc.*, 279 S.W.3d 220, 224 (Mo.App.2009)(citing *Cupp v. Nat'l R.R. Passenger Corp.*, 138 S.W.3d 766, 772 (Mo.App.2004))).

Still, in its Notice of Removal, the Cardinals maintain that resolution of Plaintiffs' claims requires the interpretation of various provisions of the CBA. Alternatively, the Cardinals assert that Plaintiffs' claims are preempted "because the rights Plaintiffs seek to vindicate 'arise under', or, were created, in whole or in part, by the negotiated CBAs, and are not based on an independent duty 'owed to every person in society.'"

*First*, Plaintiffs do not rely upon a duty "owed to every person in society." Nor are they required to do so. Rather, Plaintiffs' claims are based solely on the common-law duties arising from the establishment of an employer-employee relationship under common law in the State of Missouri. These duties do _not_ arise from a CBA. *Kline*, *supra*, at 260; *Stellar*, *supra*, at 798;

24

*McNeal I*, *supra*, at 249; *McNeal II*, 2015 WL 9489590, at *2. In its Notice of Removal, the Cardinals *concede* that, to the extent Plaintiffs' claims arise out of the duty to provide a safe workplace, they are not removable to federal court. *See* Notice of Removal, ECF No. 1 at ¶ 16 ("The Cardinals acknowledge the Court's prior ruling that the claims alleged in the First Amended Petition were not preempted because they arose out of the duty an employer owes an employee under state law.").

     *Second*, the Court does <u>not</u> need to interpret the CBAs in order to determine the scope of the common law duty owed by the Cardinals. Since Plaintiffs' claims are based solely upon the common law duties to maintain a safe work environment, including the common law duty "to warn employees about the existence of dangers of which the employees could not reasonably be expected to be aware,"[25] the scope of the duties, including their temporal scope, is measured solely by standards established by the common law. *See Kline*, *supra*, at 261 (holding that since appellants' claims invoked only common law duties of care, "no consultation with the CBA is necessary in order to define the scope of the duties alleged to have been breached."); *Stellar*, *supra,* at 803 (holding that since plaintiffs' claims invoked the common law duty to provide a safe workplace, "[t]he Court does not have to interpret any of the clauses in the CBAs in order for Plaintiffs to establish the scope of the duty."); *McNeal I*, *supra*, at 250 (holding that since plaintiffs invoked the common law duty to provide a safe workplace, an interpretation of a CBA is not necessary to determine the scope of plaintiffs' claims); *McNeal II*, 2015 WL 9489590, at *2 ("Plaintiffs may maintain their claim pursuant to an independent common law cause of action separate and apart from the CBA. That is sufficient to defeat Section 301 preemption."); *McKnight*, *supra*, at 432-33 (holding that since a substantial body of case law and general tort

---

[25] *Hansen v. Ritter*, 375 S.W.3d 201, 208-09 (Mo. App. W.D. 2012).

principles apply to workplace safety claims in the complete absence of a CBA, a court need not interpret a CBA to determine the scope of the duty or to determine the standard by which to judge the employer's conduct); *Green*, *supra*, at 1027-28 (holding that scope of the common law duty to maintain a safe work environment is measured by standards established in the common law).

Likewise, since Plaintiffs have chosen to vindicate their interests by means of an action brought under state law, the Court does *not* need to interpret the CBAs in order to determine whether the Cardinals acted reasonably. The law on this point is both clear and consistent. *See Kline*, *supra*, at 386 (quoting *Lingle*, 486 U.S. at 407, and holding that factual questions pertaining to the conduct of the employer do not require the court to interpret any term of a CBA); *Stellar*, *supra*, at 803 (citing *Trans Penn Wax*, 50 F.3d 217, and holding that whether an employer's conduct was reasonable is "purely [a] factual question[] which did not require interpretation of the CBA"); *McKnight*, *supra*, at 432-33 (holding that the common law provides the standard by which to determine whether an employer acted reasonably). *See also Trans Penn Wax*, 50 F.3d at 232 ("An examination of the employer's behavior, motivation, and statements does not substantially depend upon the terms of the collective bargaining agreement."); *Johnson v. Auto Handling Corp.*, 857 F. Supp. 2d 848, 851 (E.D. Mo. 2012) (whether defendant satisfied its state-law duties to provide a reasonably safe product can be decided independent of the CBA).

*Third*, to the extent that the Cardinals insist that Plaintiffs' claims *do not support* a state-law claim and would *only* support a federal claim, "[j]urisdiction may not be sustained on a theory that the plaintiff has not advanced," *Merrell*, 478 U.S. at 809, n. 6, and "allusions to claims that [Plaintiffs] could have raised—but did not—are irrelevant." *Palmer*, 2014 WL 317876, at *4. If Plaintiffs cannot recover under Missouri law, the Cardinals will be entitled to

judgment. Plaintiffs' claims will not, as Defendant suggests, undergo metamorphosis. In other words, even if Defendant were right that its common-law duties did not extend beyond the date of Plaintiffs' employment, the Cardinals will *not* have established a basis for removal; rather, they would have established a defense to liability since the operation of the common law would be a 'reason why the plaintiff should not recover.'" *Green*, 21 F. Supp. 3d at 1029 (citing DEFENSE, *Black's Law Dictionary* (9th ed.2009)(quoting Edwin E. Bryant, *The Law of Pleading Under the Codes of Civil Procedure* 240 (2d ed. 1899)). Plaintiffs seek, and will continue to pursue, only those claims arising under the Missouri common law which, in accord with the holding by Judge Perry *in this case*, stand independent of a CBA.

*Finally,* the Cardinals concede that Plaintiff Scott's claims are <u>not</u> preempted since Scott was never bound by a CBA.[26] Reason dictates that since Scott's common law claims do not arise from nor require the interpretation of a CBA, Smith's claims *also* "do not *necessarily* depend upon an interpretation of the CBAs, so far as the duties owed [Smith] and the standards applied to [Smith's] claims derive from the same source as for Scott." *Green*, 21 F. Supp. 3d at 1028-29 (emphasis added). Defendant avoids this logical and necessary conclusion by simply ignoring it.[27] The Court, however, cannot.

---

[26] Defendant asserts, for example, only that "Plaintiff *Smith's* claims are substantially dependent upon interpretation of CBA provisions..." (*See* Defendant's Opposition to Plaintiffs Motion to Remand, 4:15-cv-01903-JCH, ECF No. 21, at 8 (emphasis added)). Elsewhere, Defendant states: "CBAs in effect after Plaintiff *Smith's* employment ended will require interpretation to determine whether the post-employment duties alleged by Plaintiffs arose from or require interpretation of provisions governing retired player benefits." (*Id.* at 9 (emphasis added)). Finally, Defendant concludes that "[b]ecause Plaintiff *Smith's* claims are substantially dependent on the interpretation of, or arise out of, CBAs, they are preempted by Section 301. (*Id.* at 10 (emphasis added)).

[27] Defendant also concedes that as a result of *Green*, claims for breaches committed during Smith's employment and Smith's claim for negligence is not preempted.

Accurately stated, Defendant's removal rests entirely on this Court finding that while Scott's post-employment negligent- and fraudulent-concealment claims arise independent of a CBA, Smith's do not. This finding, moreover, must be made in spite of Smith expressly asserting that his claims are based solely on the common law. This is asking too much.

It is well established that by relying exclusively on state law, both Scott *and* Smith may avoid federal jurisdiction. Since Scott *must* rely exclusively on state law, it necessarily follows that Smith *may* rely exclusively on state law. *Green*, 21 F.Supp.3d at 1029-30. *See also Caterpillar,* 482 U.S. at 398-99 ("the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court.").

In sum, § 301 does not apply to Plaintiffs' negligence claims.

**B.      Section 301 does not Completely Preempt Plaintiffs' Negligence Misrepresentation or Fraudulent Concealment Claims.**

A cause of action for negligent misrepresentation requires proof that: (1) the defendants supplied or omitted information in the course of business; (2) because they failed to exercise reasonable care, the information was false; (3) the information was provided by the defendants to the plaintiff in a particular business transaction; and (4) the plaintiff relied on the information and thereby suffered pecuniary loss. *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc*., 406 F.3d 1052, 1065 (8th Cir. 2005). Similarly, the elements of fraudulent concealment are: (1) a concealment; (2) its materiality; (3) the speaker's knowledge of its concealment; (4) the speaker's intent that its concealment should be acted on by the person in the manner reasonably contemplated; (5) the plaintiffs' ignorance of the material fact; (6) the plaintiff's reliance; (7) the plaintiff's right to rely thereon; and (8) the plaintiff's consequent and proximately caused injury. *See Renaissance Leasing, LLC v. Vermeer Mfg. Co*., 322 S.W.3d 112, 132–32 (Mo.2010) (en banc).

The Eighth Circuit has explained that because the torts of fraudulent concealment and negligent misrepresentation "arise in state common law and are measured by standards of conduct and responsibility completely separate from and independent of a collective bargaining agreement," as revealed by the elements of each claim, they are not pre-empted by § 301. *Anderson v. Ford Motor Co*., 803 F.2d 953, 959 (8th Cir.1986), cert. denied, 483 U.S. 1011, 107 S.Ct. 3242 (1987) ("Fraud is a common law tort action deeply rooted in local standards of individual and social responsibility. [...] [A] claim of fraud does not derive from nor depend upon an underlying contract."). [28] Thus, Plaintiffs' fraudulent concealment and negligent misrepresentation claims are not substantially dependent upon or 'inextricably intertwined' with the interpretation of the terms of a CBA and, as a result, must be remanded.

For his part, Judge Robreno in *Stellar* simply stated that "For the same reasons [provided with respect to plaintiff's negligence claims], Plaintiffs' fraud claim is not preempted." *Stellar*, *supra*, at 808. The same is true here.

That being said, in its Notice of Removal, the Cardinals made *no* showing that Plaintiffs' fraudulent concealment or negligent misrepresentation claims, as pled, arise from or require the interpretation of a CBA. Thus, the Cardinals have utterly failed to satisfy the heavy burden of establishing federal jurisdiction over Plaintiffs' fraudulent concealment and negligent misrepresentation claims.

---

[28] *See also Jurevicius*, 1:09 CV 1803, 2010 WL 8461220 (holding that the elements of fraud can be proven without reference or interpretation of a CBA); *Foy v. Pratt & Whitney Grp.,* 127 F.3d 229, 233 (2d Cir. 1997) (holding that knowledge that a statement is false involves purely factual considerations and rejecting employer's argument that interpretation of CBA is necessary to prove justifiable reliance); *Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401, 1408 (9th Cir. 1991) (same).

**C.**      **Section 301 does not Completely Preempt Plaintiffs' Loss of Consortium Claims**

Plaintiffs' Loss of Consortium claims are derivative of the underlying claims, and thus rises or falls based on Plaintiffs' underlying claims. *See Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 802-03 (6th Cir. 1990); *Stellar*, *supra*, at 808 (holding that since a loss of consortium claim is derivative of the underlying claims, no additional analysis is necessary).

**D.**      **The Provisions Cited by the Cardinals are Demonstrably Irrelevant**

In their notices of removal, the Cardinals cite a bevy of provisions "relating to player medical care and rule-making." Upon inspection, however, they plainly have no bearing on Plaintiffs' claims. Article 34, Section 8 of the 1982 CBA, for example, provides that, "Subject to the limitations of ERISA, the Retirement Board will, by a vote of a majority (four) of the voting members, promptly amend the [Bert Bell NFL Retirement Plan and Trust Agreement] (subject to the restrictions contained in Article 8.5(A)(B)(C) and (E) of the Plan) to provide" a variety of disability and survivor benefits. At the outset, Plaintiffs are not suing the Cardinals for failing to amend, by majority vote, the Bert Bell NFL Retirement Plan and Trust Agreement; rather, they claim that they were not informed of the latent risks of their employment. Thus, to the extent Article 34 expanded the common law duties alleged, Plaintiffs' claims are not founded upon the expansion. Moreover, to the extent Article 34 alters or otherwise limits the common law duties imposed on the Cardinals, it could be raised in defense of Plaintiffs' claims. It does not, however, provide an anchor for subject matter jurisdiction under § 301.

Likewise, Article 48-D of the 2006 CBA provides that, "The parties agree to design and establish a new plan, effective February 1, 2007, to be called the '88 Plan,' to provide medical benefits to former Players…" Plaintiffs are not suing Defendant for failing to agree to, failing to design, or failing to establish a dementia-related benefits plan; rather, they claim that they were not informed of the latent risks of their employment. Thus, at most, Article 48-D reveals the

existence of *additional duties* that are wholly irrelevant to the common-law claims asserted by Plaintiffs.

In Article 31, Section 1 of the 1982 CBA, states each team is required to "have a board certified orthopedic surgeon as one of its club physicians," and "if a Club physician advises a coach or other Club representative of a player's physical condition which could adversely affect the player's performance or health, the physician will also advise the player." Plaintiffs, however, are not suing the Defendant for failing to employ a board-certified orthopedic surgeon nor are they suing the team's physician for failing to advise of physical conditions disclosed by the physician to a coach or other team representative. Rather, Plaintiffs claim that they were not informed of the latent risks of their employment. Notably, Judge Perry has already held *in this case* that the duties arising as a result of the employer-employee relationship "exist independent of the [duties established in Article XXXI]." *Green*, 21 F. Supp. 3d at 1028. Thus, at most, Article 31, Section 1, reveals the existence of *additional duties* that are wholly irrelevant to the common-law claims asserted by Plaintiffs.

Article 31, Section 2 of the 1982 CBA states: "All full-time head trainers and assistant trainers hired after the date of execution of this Agreement will be certified by the National Athletic Trainers Association. All part-time trainers must work under the direct supervision of a certified trainer." Plaintiffs, however, are not suing the Cardinals for failing to employ "certified" trainers. Thus, at most, Article 31, Section 2, reveals the existence of *additional duties* that are wholly irrelevant to the common-law claims asserted by Plaintiffs.

Article 17 of the NFL Constitution and Bylaws deals solely with the management of a member club's "Reserve/Injured" list. In order to ensure that teams do not evade roster limits, member clubs are required by Article 17 to rely on medical staff, in accordance with club

31

standards, to determine "as precise as possible" a player's recovery time. Clearly, nothing in Article 17 gives rise to or alters the common-law duty to provide a safe workplace. Indeed, Judge Perry held, *in this case*, that Section 17 "exists solely as part of the documentation required by the NFL related to the 'Reserve/Injured' list, which pertains to club roster size." *Green*, 21 F. Supp. 3d at 1028.

Article 11, Section 8 of the 1982 CBA establishes that "a joint committee of club and union representatives may meet to discuss potential rule changes, but will not have the power to bind any of the signatories to the CBA." *Id.* at 1028, fn. 7. Plaintiffs clearly do not allege the violation of Section 8.

Finally, Paragraph 9 of the standard player contract "sets forth conditions under which the Team is obligated to provide medical care." *Id.* at 1027-28. "But the Players do not claim that they were not treated when contractually entitled to the care; rather, they claim that they were not informed of the latent risks of their employment." *Id.* This duty, as Judge Perry determined *in this case*, exists independent of the contract and the CBAs. *Id.* At most, it reveals the existence of *additional duties* not relevant in this case.

In sum, the scope of a duty arising under the common law duty to provide a safe workplace is determined solely by reference to state law. The portions of the CBA relied upon by the Cardinals are entirely irrelevant and, in most cases, expand upon the duties alleged. However, by choosing to vindicate their interests by means of an action brought under state law, Plaintiffs rely solely upon the common law duties which precede and exist entirely independent of any CBA.

### E.    The Cases Relied upon by the Cardinals are Wholly Inapposite

Defendant cites several cases that are wholly inapposite. For example, the Cardinals cite *Sherwin v. Indianapolis Colts, Inc.*, 752 F. Supp. 1172 (N.D.N.Y. 1990). But, in *Sherwin*, the

plaintiff did not even contend that the club owed an independent duty arising out of the employer-employee relationship. *Id.* at 1178. Moreover, the Court in *Sherwin* explicitly relied on its interpretation of the relevant case law as requiring that only duties "owed to every person in society" can exist independent of CBA. *Id.* But this is clearly not the law in the Third Circuit or elsewhere. *See e.g., Kline*, 386 F.3d 246; *Stellar,* 98 F. Supp. 3d at 802. Section 301 "cannot be read broadly to preempt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas ,* 512 U.S. 107. The right to a safe workplace is just such an inalienable right. *Charlton v. St. Louis & S.F.R. Co*., 98 S.W. 529, 536 (1906). Finally, in *Sherwin*, the court was deciding the issue on a motion to dismiss. Thus, the narrow jurisdictional grant of § 301 was not an issue.

Defendant also cites *Jeffers v. D'Allessandro*, 199 N.C. App. 86, 92 (2009), another case in which the jurisdictional grant of § 301 was not at issue. But, in *Jeffers,* the plaintiff *explicitly* relied on the provisions of a CBA as the source of the duty alleged. *Id.* at 92. *Jeffers* is therefore wholly inapplicable.

Finally, Defendant cites *Duerson v. Nat'l Football League*. 2012 WL 1658353. But, *Duerson* was a wrongful death case asserted against the NFL and a helmet manufacturer, *neither of which was decedent's employer*. Thus, *Deurson* is inapposite.

In sum, none of the three cases relied upon by the Chiefs are even remotely applicable.

**F.      The Decision in Green Does Not Work a Manifest Injustice**

All of the above demonstrates that Judge Perry did not clearly err in *Green.* However, *even assuming* she did, the decision nevertheless does not work a manifest injustice against the Cardinals. The result of the error, *assuming* there was one, is that the Defendant will be made to litigate in a forum chosen by the Plaintiffs. This, of course, does not work a manifest injustice. Courts, including this one, recognize the "long-accepted practice of deferring to the Plaintiff's

33

choice of forum by treating the Plaintiff as the master of his own complaint." *See e.g., Foster v. City of Philadelphia*, 826 F. Supp. 2d 778, 781 (E.D. Pa. 2011). Thus, even if, as Defendant suggests, Judge Perry was wrong, the law of the case doctrine and the principle of comity require that this case be remanded since the decision, even if erroneous, did not create a manifest injustice.

**IV.**

**A.      This Case is Not Removable Pursuant to 28 U.S.C. § 1445(c)**

Federal law unambiguously provides that "a civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." 28 U.S.C. § 1445(c). The dispositive question, then, is whether this action arises under the Missouri Workers' Compensation Law. The question is easily answered by examining the statute itself.

The Missouri legislature has decreed that Chapter 287 "shall be known as 'The Worker's Compensation Law.' " Mo.Rev.Stat. § 287.010. First enacted in the 1925 version of the Missouri workers' compensation law, the law has long been recognized as the "Workmen's Compensation Law." *See Barnhill v. Allied Waste Indus.*, 13-00804-CV-W-JTM, 2013 WL 6070012 (W.D. Mo. Nov. 18, 2013)(citing *State ex rel. Brewen–Clark Syrup Co. v. Missouri Workmen's Compensation Commission,* 320 Mo. 893, 8 S.W.2d 897, 900 (Mo.1928) (*en banc* )).

In relevant part, section 287.110(2), entitled "Scope of chapter as to injuries and diseases covered," provides:

> This chapter **shall apply to all** injuries received and **occupational diseases contracted in this state**, regardless of where the contract of employment was made, **and also to all** injuries received and **occupational diseases contracted outside of this state under contract of employment made in this state** [.]

R.S.Mo. 287.110(2) (emphases added).  Since Plaintiffs allege in the Petition that they contracted occupational diseases in the State of Missouri [*this state*] and while under contract of employment made in the State of Missouri [*this state*], the Workers' Compensation Law very clearly applies to Plaintiffs' action. *See Amesquita v. Gilster-Mary Lee Corp*., 408 S.W.3d 293, 301 (Mo. Ct. App. 2013); *see also State ex rel. KCP & L Greater Missouri Operations Co. v. Cook*, 353 S.W.3d 14, 28-29 (Mo. Ct. App. 2011)(observing that "occupational disease claims are covered by and compensable under the Act"). Moreover, while Plaintiffs seek a judicial *remedy*, as opposed to an administrative one, section 1445 speaks of "*actions*," not remedies. Thus, removal of Plaintiffs' occupational-disease claims is expressly prohibited.

## V.

### A.    Plaintiffs' Request for Just Costs, Including Attorneys' Fees

Pursuant to 28 U.S.C. § 1447(c), an order remanding a case may require payment of just costs, including attorneys' fees, in the discretion of the Court. Costs and attorneys' fees are especially warranted where the removing party lacks an objectively reasonable basis for seeking removal. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Here, as shown above, Defendant lacked any objectively reasonable basis for seeking a successive removal. Accordingly, Plaintiffs request that they be awarded costs and attorneys' fees pursuant to 28 U.S.C. § 1447(c).

## CONCLUSION

For the reasons provided herein, Plaintiffs respectfully request that the Court enter an order remanding the case and requiring that Defendant pay just costs and actual expenses, including attorney fees, in accordance with 28 U.S.C. § 1447(c).

Respectfully submitted, this 13th day of July, 2017.

THE KLAMANN LAW FIRM, P.A.

    /s/ *Andrew Schermerhorn*

| | |
|---|---|
| John M. Klamann, MO | #29335 |
| Andrew Schermerhorn, MO | #62101 |
| Paul D. Anderson, MO | #65354 |

4435 Main Street, Ste. 150
Kansas City, MO 64111
Telephone: (816) 421-2626
Facsimile: (816) 421-8686
jklamann@klamannlaw.com
ajs@klamannlaw.com
panderson@klamannlaw.com

| | |
|---|---|
| Kenneth B. McClain, MO | #32430 |
| Lauren E. McClain, MO | #65016 |
| Timothy J. Kingsbury, MO | #64958 |

HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 West Lexington, Suite 400
Independence, MO 64051
Telephone: (816) 836-5050
Facsimile: (816) 836-8966
kbm@hfmlegal.com
lem@hfmlegal.com
tjk@hfmlegal.com

| | |
|---|---|
| Wm. Dirk Vandever, MO | #24463 |

THE POPHAM LAW FIRM, P.C.
712 Broadway, Suite 100
Kansas City, MO 64105
Telephone: (816) 221-2288
Facsimile: (816) 221-3999
dvandever@pophamlaw.com

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 13th day of July, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide electronic notice to all counsel of record.

/s/ *Andrew Schermerhorn*
Andrew Schermerhorn