# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | **Hon. Anita B. Brody** |
| | No. 12-md-2323-AB |
| THIS DOCUMENT RELATES TO: | No. 14-01995-AB |
| *LEWIS et al., v. KANSAS CITY CHEIFS FOOTBALL CLUB, INC.,* | No. 14-03383-AB |
| and | No. 14-03382-AB |
| *SMITH et al., v. KANSAS CITY CHIEFS FOOTBALL CLUB, INC.,* | No. 14-04779-AB |
| and | MDL No. 2323 |
| *HORN, et al. v. KANSAS CITY CHIEFS FOOTBALL CLUB, INC.* | |
| and | |
| *KENNEY, et al. v. KANSAS CITY CHIEFS FOOTBALL CLUB, INC.* | |

## MOTION TO REMAND AND MEMORANDUM IN SUPPORT

Kenneth B. McClain
Lauren E. McClain
Timothy J. Kingsbury
HUMPHREY, FARRINGTON & MCCLAIN
221 West Lexington, Suite 400
Independence, MO 64051
Telephone: (816) 836-5050
Facsimile: (816) 836-8966

Paul D. Anderson
Andrew Schermerhorn
John Klamann
THE KLAMANN LAW FIRM
4435 Main, Ste. 150
Kansas City, MO 64111
Telephone: (816) 421-2626
Facsimile:  (816) 421-8686

Wm. Dirk Vandever
THE POPHAM LAW FIRM
712 Broadway, Suite 100
Kansas City, Missouri
Telephone: (816) 221-2288
Facsimile: (816) 221-3999

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. ii

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION .............................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

    I. ......................................................................................................................................... 3

        A.  Standard on Motion to Remand ................................................................... 3

        B.  Federal-Question Jurisdiction ..................................................................... 4

            1.  The Well-Pleaded Complaint Rule ..................................................... 4

            2.  The "Artful Pleading" Doctrine .......................................................... 5

    II. ........................................................................................................................................ 7

        A.  Third Circuit Case Law ................................................................................... 7

            1.  *Kline v. Sec. Guards, Inc.* ..................................................................... 7

            2.  *Stellar v. Allied Signal, Inc* .............................................................. 10

            3.  *McNeal v. ArcelorMittal USA, Inc* .................................................. 14

        B.  Relevant Case Law from Outside the Third Circuit ........................... 17

            1.  *McKnight v. Dresser, Inc.* (5th Circuit) ......................................... 17

            2.  *Hendy v. Losse* (9th Circuit) ............................................................. 19

            3.  Green v. Arizona Cardinals Football Club, LLC ............................ 20

    III. ..................................................................................................................................... 21

        A.  Section 301 does not Completely Preempt Plaintiffs' Negligence Claim. ................. 21

        B.  Section 301 does not Completely Preempt Plaintiffs' Negligence Misrepresentation or Fraudulent Concealment Claims. ............................................................................... 25

        C.  Section 301 does not Completely Preempt Plaintiffs' Loss of Consortium Claims ... 26

        D.  The Provisions Cited by the Chiefs are Demonstrably Irrelevant ............................. 26

        E.  The Cases Relied upon by the Chiefs are Wholly Inapposite .................................... 29

    IV. ..................................................................................................................................... 30

        A.  This Case is Not Removable Pursuant to 28 U.S.C. § 1445(c) ................................. 30

CONCLUSION ............................................................................................................... 31

## TABLE OF AUTHORITIES

**Cases**

*Amesquita v. Gilster-Mary Lee Corp.*, 408 S.W.3d 293 (Mo. Ct. App. 2013) ............................ 38

*Anderson v. Ford Motor Co.*, 803 F.2d 953 (8th Cir.1986)..................................................... 32

*Antol v. Esposto*, 100 F.3d 1111 (3d Cir. 1996), amended, (3d Cir. 1997) ............................... 7, 8

*Arceneausx v. Amstar Corp.*, 2004 WL 574718 (E.D.La Mar. 22, 2004) ................................... 30

*Barnes v. Nat'l Football League*, No. 11-cv-08396 (C.D. Cal. Dec 8, 2011)............................. 17

*Barnhill v. Allied Waste Indus.*, 2013 WL 6070012 (W.D. Mo. Nov. 18, 2013) ........................ 37

*Beneficial Nat. Bank v. Anderson*, 539 U.S. 1 (2003) ............................................................. 5, 6

*Berda v. CBS Inc.,* 881 F.2d 20 (3d Cir. 1989)........................................................................ 9

*Blanton v. Dold*, 18 S.W. 1149 (1892) ................................................................................. 28

*Brown v. Francis*, 75 F.3d 860 (3d Cir.1996).......................................................................... 18

*Carman v. Wieland*, 406 S.W.3d 70 (Mo.Ct.App.2013) ........................................................ 25

*Casselli v. City of Philadelphia*, 54 F. Supp. 3d 368 (E.D. Pa. 2014) ....................................... 10

*Charlton v. St. Louis & S.F.R. Co.*, 98 S.W. 529 (1906) ...................................................... 27, 36

*Collins v. Baxter Healthcare Corp.*, 949 F. Supp. 1143 (D.N.J. 1996)....................................... 4

*Duerson v. Nat'l Football League*, 2012 WL 1658353 (N.D. Ill. May 11, 2012).................. 17, 37

*Foster v. City of Philadelphia*, 826 F. Supp. 2d 778 (E.D. Pa. 2011) ....................................... 4

*Fox v. Parker Hannifin Corp.*, 914 F.2d 795 (6th Cir. 1990)..................................................... 33

*Foy v. Pratt & Whitney Grp.,* 127 F.3d 229 (2d Cir. 1997)........................................................ 32

*Francis v. Noranda Aluminum, Inc.*, 2013 WL 1090300 (E.D. Mo. Mar. 15, 2013) .................. 14

*Gore v. Trans World Airlines*, 210 F.3d 944 (8th Cir. 2000) ..................................................... 27

*Green v. Arizona Cardinals Football Club, LLC*, F.Supp.3d 1020 (E.D. Mo. 2014) .......... passim

*Gully v. First Nat'l Bank*, 299 U.S. 109 (1936) ....................................................................... 5

*Hansen v. Ritter*, 375 S.W.3d 201 (Mo. App. W.D. 2012) ..................................................... 29

*Hendy v. Losse*, 925 F.2d 1470 (9th Cir. 1991) ................................................................... 22, 23

*Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851 (1987) ............................. 11, 23

*Jeffers v. D'Allessandro*, 199 N.C. App. 86 (2009) ............................................................... 36

*Johnson v. Auto Handling Corp.,* 857 F. Supp. 2d 848 (E.D. Mo. 2012)................................... 31

*Kline v. Security Guards, Inc.*, 386 F.3d 246 (3d Cir.2004).............................................. passim

*Krashna v. Oliver Realty, Inc.*, 895 F.2d 111 (3d Cir. 1990) ..................................................... 4

*La Chemise Lacoste v. Alligator Co.,* 506 F.2d 339 (3d Cir.1974) ........................................... 4

*Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988) ........................................ 9, 30

*Livadas v. Bradshaw*, 512 U.S. 107 (1994) ........................................................................ 7, 36

*Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, (3d Cir. 2014)................ 3

*Maxwell v. Nat'l Football League*, No. 11-cv-08394 (C.D. Cal. Dec. 8, 2011) .......................... 17

*McKnight v. Dresser, Inc.*, 676 F.3d 426 (5th Cir. 2012)........................................... 21, 22, 29, 30

*McNeal v. AcerlorMittal USA, Inc.*, 143 F.Supp.3d 241 (E.D. Pa. 2015) ............................ passim

*McNeal v. Arcelormittal USA, Inc.*, 2015 WL 9489590 (E.D. Pa. Dec. 29, 2015) .............. passim

*Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986) ....................................... 6

*Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401 (9th Cir. 1991)..................................... 32

*Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052 (8th Cir. 2005)....... 31

*Palmer v. Kraft Foods Global, Inc.*, 2014 WL 317876 (E.D. Pa. Jan. 29, 2014)......................... 6

*Pear v. Nat'l Football League*, No. 11-cv-08395 (C.D. Cal. Dec. 8, 2011) ............................... 17

*Ramos v. Wal-Mart Stores, Inc.*, 202 F. Supp. 3d 457 (E.D. Pa. 2016)....................................... 5

*Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, (Mo.2010) .......................... 32

*Samuel–Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392 (3d Cir.2004) .................................. 3, 18

*Sherwin v. Indianapolis Colts, Inc.*, 752 F. Supp. 1172 (N.D.N.Y. 1990) .................................. 36

*Smith v. Dewitt & Assoc.*, 279 S.W.3d 220 (Mo.Ct.App.2009).................................................. 26

*State ex rel. Brewen–Clark Syrup Co. v. Missouri Workmen's Compensation Commission,* 8 S.W.2d 897 (Mo.1928) (*en banc* ) ............................................................................................. 38

*State ex rel. KCP & L Greater Missouri Operations Co. v. Cook*, 353 S.W.3d 14 (Mo. Ct. App. 2011) ................................................................................................................................. 14, 38

*Steelworkers v. Rawson*, 495 U.S. 362 (1990)........................................................................... 11

*Stellar v. Allied Signal, Inc.*, 98 F.Supp.3d 790 (E.D. Pa. 2015)........................................ passim

*Stringer v. Nat'l Football League*, 474 F. Supp. 2d 894 (S.D. Ohio 2007) ................................ 17

*Tooey v. AK Steel Corp.*, 81 A.3d 851 (2013) ............................................................................ 13

*Trans Penn Wax Corp. v. McCandless,* 50 F.3d 217 (3d Cir.1995) ...................................... 15, 31

*Voilas v. General Motors Corp.*, 170 F.3d 367 (3rd Cir. 1999) .......................................... passim

**Statutes**

28 U.S.C. § 1331.......................................................................................................................... 3

R.S.Mo. § 287.010 ...................................................................................................................... 37

R.S.Mo. § 287.110(2) ................................................................................................................. 38

Plaintiffs, Albert Lewis, Art Still, Lizabeth Still, Todd McNair, Lynette McNair, Frederick Jones, Tim Barnett, Chelonda Barnett, Walker Lee Ashley, Emile Harry, Lori Harry, Chris Smith, Billie Smith, Alexander Cooper, Leonard Griffin, Dawn Griffin, Christopher Martin, Yolanda Thompson-Martin, Joseph Phillips, Kevin Porter, Annjela Hynes-Porter, Neil Smith, Jayice Pearson, Joi Pearson, Paul Palmer, Douglas Terry, William Kenney, Sandra Louise Kenney, Thomas Baugh, and Jean Baugh (hereinafter "Plaintiffs"), by and through undersigned counsel, and pursuant to the Court's Order, dated April 12, 2017 (Doc. 7477), respectfully submit this Motion to Remand and Memorandum in Support.

## INTRODUCTION

Plaintiffs are 19 former professional football players and certain of their wives who brought claims for negligence, negligent misrepresentation, fraudulent concealment, and loss of consortium against the players' former employer, the Defendant Kansas City Chiefs Football Club, Inc. (referred to hereinafter as the "Chiefs" or "Defendant"). Plaintiffs' claims against the Chiefs are made in one of four separate actions originating in the Circuit Court of Jackson County, Missouri. The crux of Plaintiffs' allegations is that the players' former employer, the Chiefs, failed to provide a safe work environment.

Like all employers in Missouri, the Chiefs owed Plaintiffs a duty to maintain a safe working environment, a duty not to expose Plaintiffs to unreasonable risks of harm, a duty to warn Plaintiffs about the existence of dangers and a duty to exercise reasonable care so as not to expose Plaintiffs to an unreasonable risk of injuries. The Chiefs breached each of these duties through various acts, errors, omissions and misrepresentations that caused or contributed to cause Plaintiffs' occupational diseases. Therefore, Plaintiffs in each of the above-captioned cases filed a Petition in the Circuit Court of Jackson County, Missouri, seeking relief from the Chiefs for their employment-related occupational diseases.

1

The Chiefs, however, removed each of Plaintiffs' cases to the United States District Court for the Western District of Missouri, asserting that Plaintiffs' claims are preempted by § 301 of the Labor Management Relations Act ("§ 301"), because "[t]he relationship between Plaintiffs and the Chiefs *was governed and informed by*" the CBAs existing at various times during Plaintiffs' employment, and because the CBA's "represent the complete understanding of the parties," according to the Chiefs.[1] According to the Chiefs, adjudicating Plaintiffs' claims "will hinge on provisions of the CBAs relating to player medical care and rule-making."[2] "[T]he court will need to interpret these provisions," according to Chiefs, in order "to determine the scope of Chiefs' alleged duty to Plaintiffs and whether the Chiefs acted reasonably."[3]

Relying upon federal procedural law as interpreted by the Eighth Circuit, where the United States District Court for the Western District of Missouri sits, Plaintiffs filed motions to remand in each of their respective actions.[4] Plaintiffs argued that since they sued the Chiefs, *their former employer*, for failing to discharge its common law duties: (1) to maintain a safe working environment, (2) not to expose employees to unreasonable risks of harm, and (3) to warn employees about the existence of dangers of which they could not reasonably be expected to be aware, their claims are based *solely* on the common law duty arising from the employer-employee relationship. Thus, their claims are neither "inextricably intertwined" with nor require the interpretation of a CBA.

---

[1] *Lewis,* 4:14-cv-00004-BP, Doc. 1; *Horn,* 4:14-cv-00133-BP, Doc. No. 1; *Smith,* 4:14-cv-00195, Doc. No. 1; and *Kenney*, 4:14-cv-00255-BP, Doc. No. 1.
[2] *See e.g., Lewis,* 4:14-cv-00004-BP, Doc. 1 at ¶ 13.
[3] *Id. at* ¶ 15.
[4] *Lewis,* 4:14-cv-00004-BP, Doc. 17 (Jan. 21, 2014); *Horn,* 4:14-cv-00133-BP, Doc. No. 21 (March 10, 2014); *Smith,* 4:14-cv-00195, Doc. No. 18 (March 18, 2014); *Kenney*, 4:14-cv-00255-BP, Doc. No. 20 (April 16, 2014).

While Plaintiffs' motions to remand were pending, however, the United Sates Judicial Panel on Multidistrict Litigation transferred Plaintiffs' cases to the Eastern District of Pennsylvania for consolidation or coordinated pretrial proceedings. Plaintiffs then presented a consolidated Motion to Remand to this Court, adding relevant and governing 3rd Circuit law supplementing the authority upon which their original assertions for remand relied. (*See* ECF Nos. 6660, 6660-1).

Pursuant to this Court's Order, dated April 12, 2017 (Doc. 7477), Plaintiffs again present their consolidated Motion to Remand to this Court and incorporate their prior memoranda, ECF No. 6660-1, as if fully set forth herein.

## ARGUMENT

## I.

### A.      Standard on Motion to Remand

A district court has original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A civil action brought in a state court may be removed to federal court only if the district court has original jurisdiction over the case and the removing party bears the burden of demonstrating that the district court has jurisdiction. *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc*., 772 F.3d 158, 162 (3d Cir. 2014); *Samuel–Bassett v. KIA Motors Am., Inc.,* 357 F.3d 392, 396 (3d Cir.2004) Because federal courts are courts of limited jurisdiction, 28 U.S.C. § 1441 is to be strictly construed against removal. *La Chemise Lacoste v. Alligator Co.,* 506 F.2d 339, 344 (3d Cir.1974). *See also Voilas v. General Motors Corp.*, 170 F.3d 367, 375 n. 1 (3rd Cir. 1999)(noting that the Supreme Court "has taken a very narrow view of federal jurisdiction under section 301."). If for any reason the grounds for federal jurisdiction are questionable, the issue should be resolved in favor of remanding the case to state court. *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir.2009); *Foster v.*

*City of Philadelphia*, 826 F. Supp. 2d 778, 782 (E.D. Pa. 2011)(Brody, J.)(*quoting Boyer v. Snap–On Tools Corp.,* 913 F.2d 108, 111 (3d Cir.1990)); *McNeal v. AcerlorMittal USA, Inc.*, 143 F.Supp.3d 241, 244 (E.D. Pa. 2015)("*McNeal I*")("If there is any doubt as to the propriety of removal, that case should not be removed to federal court."). Importantly, "[t]he standard for complete preemption [subject-matter jurisdiction] is *higher* than that for ordinary preemption [affirmative defense]." (ECF No. 4252, p. 17 (emphasis added).). *See also Krashna v. Oliver Realty, Inc.*, 895 F.2d 111, fn. 7 (3d Cir. 1990)(reasoning that since it held the claims not removable by the complete preemption doctrine, it may not consider whether the claims are barred by *ordinary preemption*); *Collins v. Baxter Healthcare Corp.*, 949 F. Supp. 1143, 1148 (D.N.J. 1996)(referring to *Krashna* as establishing that mere ordinary preemption of plaintiff's claims is not dispositive on the issue of complete preemption). The jurisdictional grant of Section 301 is unquestionably narrower in scope than its ordinary preemptive reach. In other words, the standard against which this Court will decide the NFL's Motion to Dismiss differs from the standard against which it will decide the Plaintiffs' Motion to Remand.

**B.     Federal-Question Jurisdiction**

      **1.     The Well-Pleaded Complaint Rule**

Whether or not the Court has federal question jurisdiction over a matter that the defendant has removed from state court is governed by the "well-pleaded complaint rule," under which the federal question "must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." *Ramos v. Wal-Mart Stores, Inc.*, 202 F. Supp. 3d 457, 467 (E.D. Pa. 2016)(quoting *Gully v. First Nat'l Bank,* 299 U.S. 109 (1936)). The well-pleaded complaint rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Kline v. Security Guards, Inc*., 386 F.3d 246, 252 (3d Cir.2004), citing *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987).

"Nor does it even suffice that the facts alleged in support of an asserted state-law claim *do not support* a state-law claim and would *only* support a federal claim." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 12 (2003)(Scalia, J., dissenting)(emphasis in the original). "Jurisdiction may not be sustained on a theory that the plaintiff has not advanced," *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 809, n. 6 (1986), and "allusions to claims that [Plaintiffs] could have raised—but did not—are irrelevant" *Palmer v. Kraft Foods Global, Inc.*, No. CIV.A. 13-6260, 2014 WL 317876, at *4 (E.D. Pa. Jan. 29, 2014).

Finally, to determine whether the claim arises under federal law, the Court is to ignore potential defenses. *Beneficial*, 539 U.S. at 6, 12-13. In fact, it is "firmly established that a federal defense, including a preemption defense, does not provide a basis for removal, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue in the case." *Caterpillar*, *supra*, at 392 (internal quotation omitted); *Palmer*, 2014 WL 317876, at *5.

## 2.    The "Artful Pleading" Doctrine

There is a limited corollary to the well-pleaded complaint rule, however, that precludes Plaintiffs from "avoiding a federal forum by 'artfully pleading' what is, in essence, a federal claim solely in terms of state law." *Kline*, *supra*, at 252 (quotation omitted). Plaintiffs may not, for example, evade the preemptive effect of § 301 by relabeling a breach of contract claim as claim for tortious breach of contract under state common law. *McCormick v. AT&T*, 934 F.2d 531, 543 (4th Cir. 1991)(Phillips, J., dissenting)(quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 2011 (1985)).

In *Allis-Chalmers*, the Supreme Court articulated the standard for § 301 preemption as follows: "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be

treated as a § 301 claim or dismissed as pre-empted...." *Id.* at 220 (citation omitted); *Kline*, 386 F.3d at 252; *Voilas*, 170 F.3d at 373. The Supreme Court took care, however, to define the precise limits of its holding in *Allis-Chalmers*, emphasizing that "[i]n extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Allis–Chalmers*, 471 U.S. at 212.

In *Livadas v. Bradshaw*, 512 U.S. 107 (1994), the Supreme Court reaffirmed that "§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law," and stressed "that it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement (and not whether a grievance arising from 'precisely the same set of facts' could be pursued) that decides whether a state cause of action may go forward." *Id.* at 122-24. *See also Antol v. Esposto*, 100 F.3d 1111 (3d Cir. 1996), amended, (3d Cir. 1997)(stating that in *Livadas*, the Supreme Court "held that section 301 could not be read broadly to preempt non-negotiable rights conferred upon individual employees as a matter of state law and stressed that it is the legal character of the claim as 'independent' of rights under the collective bargaining agreement that decides whether a state cause of action may go forward.") The Supreme Court also made "clear that when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Id. See also Antol*, 100 F.3d at 1122 ("The Supreme Court also reiterated that when the meaning of contract terms is not the subject of the dispute, the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." (internal quotation omitted)).

6

Critically, as will be shown below, it is well established that claims based upon the common law duty to provide a safe workplace are ***not*** removable to federal court under § 301 of the Labor Management Relations Act.

## II.

### A.     Third Circuit Case Law

#### 1.     *Kline v. Sec. Guards, Inc.*

The Supreme Court's § 301 "complete preemption" jurisprudence was applied by the Third Circuit in *Kline*, 386 F.3d 246. In *Kline*, plaintiffs were two employees of Dana Corporation, an auto components manufacturer alleged to have surveilled its hourly employees at the entrance to one of its facilities. *Id.* at 250. During the period of its surveillance, Dana Corporation's employees, including the two plaintiffs, were represented by the United Steel Workers of America, Local 3733 and were bound to a CBA between their employer and the union. *Id.* When the plaintiffs filed suit in Court of Common Pleas, Dana Corporation removed the case to the District Court of Pennsylvania. *Id.* Thereafter, the plaintiffs filed a motion to remand which the district court denied. *Id.* On appeal, the Third Circuit raised and resolved the same jurisdictional question present here – that is, whether plaintiffs' claims were completely preempted by § 301. *Id.*

The Third Circuit began its analysis by first reaffirming that, in accord with *Allis-Chalmers*, "it would be inconsistent with congressional intent under [§ 301] to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Kline*, *supra*, at 253 (quoting *Allis-Chalmers*, 471 U.S. at 212). The court also affirmed that, in accord with the Supreme Court's decision in *Caterpillar*, where the same set of facts gives rise to both a state law claim and an action for violation of a CBA, such as when a duty arises under both the common law and a CBA, "*employees* have the option of vindicating their interests by

means of either a section 301 action or an action brought under state law, as long as the state-law action *as pleaded* does not require interpretation of the collective bargaining agreement." *Id.* at 253 (emphases added)(quotation omitted). *See also Berda v. CBS Inc.,* 881 F.2d 20, 25 (3d Cir. 1989)("*Caterpillar* makes clear that in order for there to be section 301 preemption, the plaintiff, in its well-pleaded complaint, must *plead* an action that requires interpretation of the collective bargaining agreement." (emphasis added)).

Additionally, the court affirmed that, in accord with Supreme Court's decision in *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988), "purely factual questions pertain[ing] to the conduct of the employee and the conduct and motivation of the employer" do not "require[] the court to interpret any term of a collective-bargaining agreement," *Kline*, *supra* at 253 (quoting *Lingle*, 486 U.S. at 407), and that it is "irrelevant that the state-law analysis might well involve attention to the same factual considerations as" would be considered under a claim for breach of a CBA. *Id.* at 253-54 (quoting *Lingle*, 486 U.S. at 408).

Finally, the court affirmed that, in accord with *Livadas*, it is the legal character of a claim as "independent" of rights under a CBA that determines whether a state cause of action is preempted and that "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Id.* at 254 (quoting *Livadas*, 512 U.S. at 122-24).

Turning to the facts, the court first rejected the employer's argument that since the appellants' claims went to the "core" of its management rights, a subject of the CBA, they must therefore be preempted. *Id.* at 255. The court stated: "[w]hile it is true that the CBA may be consulted in the course of litigation, it does not follow that their claims are completely preempted." *Id.* Rather, when state-based or common law claims are alleged on the face of the

8

complaint, the dispositive question is **not** whether the claims relate to the subject of the CBA; instead, the dispositive question is whether, in order to resolve the claims, the court must *interpret* a provision of the CBA, about which there is a "substantial dispute." *Id.* at 256. *See also Casselli v. City of Philadelphia*, 54 F. Supp. 3d 368, 375 (E.D. Pa. 2014)("The fact that a CBA or a union constitution is 'part of the context' in which a plaintiff's claim must be addressed does not trigger complete preemption in the absence of some substantial dispute over the meaning of the collective bargaining agreement." (internal quotation omitted)). "A finding of § 301 preemption is not mandated," the court held, "simply by the contention that Appellants' state law claims 'necessarily implicate' the CBA." *Id.*

Next, the Court of Appeals dismissed the employer's contention that preemption was required by Supreme Court's decisions in *Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851 (1987), and in *Steelworkers v. Rawson*, 495 U.S. 362 (1990). "Neither *Hechler* nor *Rawson* is applicable to Appellants' tort claims," the Court held. *Id.*

> In relying on *Hechler* and *Rawson*, Dana … refuse[s] to acknowledge that the duty of care in both of those cases was alleged to have arisen from a collective-bargaining agreement. In both of those cases, the *unions*, which did not otherwise have any duty of care under state law, were the defendants being sued."

*Id.* at 261 (emphases added). Under the *common law*, the court held, "it is the *employer*, not a labor union, that owes employees a duty to exercise reasonable care in providing a safe workplace." *Id.* (quoting *Hechler*, 481 U.S. at 859)(emphasis in the original). Since the appellants in *Kline* had sued their *employer*, the duties invoked were ***not*** founded upon rights created by the CBA; rather, they were founded upon rights created by state law. *Id.* at 261. Thus, "no consultation with the CBA [wa]s necessary in order to define the scope of the duties[.]" Whatever duties the employer breached, the court held, "those duties are independent of the

CBA." *Id.* In short, *Kline* establishes that claims based upon the common law duty to provide a safe workplace are not removable to federal court under § 301.

In its notices of removal, the Chiefs rely on precisely the same arguments made by the employer in *Kline*—namely, that Plaintiffs' claims are preempted by § 301 since "[t]he relationship between Plaintiffs and the Chiefs *was governed and informed by*" the CBAs and because the CBAs "represent the complete understanding of the parties." But as *Kline* makes clear, in the absence of some substantial dispute over the meaning of a CBA, it makes no difference whether the relationship "was governed" or "informed by" a CBA. *Kline* also disposes of the Chiefs' assertion that "the court will need to interpret" a CBA in order "to determine the scope of Chiefs' alleged duty to Plaintiffs and whether the Chiefs acted reasonably." *Kline* held that when the duties invoked are prescribed by the common law, no consultation with the CBA is necessary in order to define the scope of the duties alleged to have been breached. *Id.* at 261.

In sum, *Kline* requires that Plaintiffs' claims be remanded.

## 2. *Stellar v. Allied Signal, Inc.*

After *Kline*, this Court addressed § 301 preemption in *Stellar v. Allied Signal, Inc.*, 98 F.Supp.3d 790 (E.D. Pa. 2015). In *Stellar*, Frank and Mary Schaffer filed a complaint against various defendants in the Northampton County Court of Common Pleas on February 15, 2013. *Id.* at 794. The complaint alleged that Mr. Schaffer developed mesothelioma as a result of his exposure to asbestos while working for his employer. *Id.* Notably, his employer was not named as a defendant in the initial complaint because, at the time, the Pennsylvania Workers' Compensation Act precluded employees from asserting tort claims for occupational injuries against their employers. *Id.* However, just as happened in Missouri, a court decision in Pennsylvania allowed employees to seek common law remedies against their employers for

occupational diseases. *Id. See Tooey v. AK Steel Corp*., 81 A.3d 851, 856 (2013). Thus, Mary Schaffer and Rita Stellar (as Personal Representative of the Estate of Frank J. Schaffer who in the interim passed away) (hereinafter referred to jointly as Ms. Schaffer) filed an amended complaint, adding Mr. Schaffer's employer, and pleading claims of (1) Strict Liability; (2) Breach of Warranty; (3) Negligence; (4) Fraud; (5) Conspiracy; (6) Loss of Consortium; and (7) Wrongful Death relating to Frank Schaffer's occupation disease.  *Id.*

The defendant employer removed the case to federal court on the basis that the claims were preempted under § 301. *Id.* According to the employer, the "nature, scope and extent of the duties" owed to Mr. Schaffer required the interpretation of a CBA. *Id.* at 800. "In effect," the Court observed, the employer was "arguing that the common law duty it owed Mr. Schaffer was in some way altered by the CBAs." *Id.*

The case was eventually transferred to the Honorable Eduardo C. Robreno, as related to *In Re: Asbestos Products Liability Litigation, MDL-875*, Civil Action No.: 01-md-0875. No. 5:14-CV-05083-ER, Doc. No. 72 (March 3, 2015). However, prior to transfer, Judge Edward G. Smith considered Ms. Shaffer's motion to remand, noting during oral arguments the importance of getting the decision right.  *Stellar v. Allied Signal, Inc.*, Civ. No. 5:14-cv-05083, ECF No. 73 at pp. 5-6. [5] Judge Smith also observed the uniqueness of Pennsylvania's Workman's Compensation law, stating: "we're probably not going to see a lot of cases in other states except

---

[5] "And the basis of jurisdiction is very novel so there's a real issue here that if this is decided wrongly, everything you're doing to try to pursue this actually would be for naught -- whereas if it was remanded down improperly and there is exclusive jurisdiction in Federal Court under Federal law, then everything you do in State Court would ultimately be rendered meaningless because there would be no jurisdiction. So I guess it's important we get this decision right."

to the extent that they have adopted a similar rule with respect to Workman's Comp that you can sue, because the right to sue the employer[.]" *Id.* at p. 27.[6]

In its written decision, this Court held that "[u]nder the common law … the employer … owes [its] employees a duty to exercise reasonable care in providing a safe workplace." *Id.* at 798 (quoting *Hechler*, 481 U.S. at 859). The common law duty, moreover, "preceded and exists independent of the CBAs" *Id.* at 800. It "is one imposed by Pennsylvania common law and does not derive from any CBA[.]" *Id.*

As for the employer's contention that the court would nevertheless have to analyze "numerous provisions concerning workplace safety" in the CBAs in order to determine the *scope* of the common law duty, this Court stated:

> Here, Defendant points to workplace and safety clauses in the CBAs and asserts that complete preemption must apply to Plaintiffs' negligence claim. This argument fails. The Court does not have to interpret any of the clauses in the CBAs in order for Plaintiffs to establish the scope of the duty. While it is possible that Defendant could point to some portion of a CBA in arguing that it acted reasonably, or to establish that it provided some type of warning as to certain occupational hazards, whether these statements provide a defense (in that they show Defendant acted reasonably, or that Defendant did not breach its duty of care) is a question of fact for the jury.

*Id.* at 803 (citing *Trans Penn Wax Corp. v. McCandless,* 50 F.3d 217, 232 (3d Cir.1995)). Thus, *even if*, as the defendant employer contended, the common law duty had been expanded in the CBAs, the plaintiffs chose to vindicate only the common law interest arising from the duty to

---

[6] As it happens, Missouri, like Pennsylvania, also provides employees the right to seek common law remedies against their employers for occupational diseases. *See Francis v. Noranda Aluminum, Inc.,* No. 1:12CV0104 JAR, 2013 WL 1090300, at *3 (E.D. Mo. Mar. 15, 2013)(observing that in 2011, "the Missouri Court of Appeals held that Workers' Compensation Law does not provide the exclusive remedy for occupational diseases."). *See also State ex rel. KCP & L Greater Missouri Operations Co. v. Cook,* 353 S.W.3d 14, 29 (Mo. Ct. App. 2011)(recognizing as "unusual" that Missouri provides repeat-exposure occupational disease claimants with the right of pursuing a tort claim against the employer in civil court). Thus, as Judge Smith suggested, while there are unlikely to be a lot of cases similar to those asserted in *Stellar*, Plaintiffs' claims are nearly identical.

provide a safe work environment. Thus, no consultation with the CBA was necessary in order to define the scope of the duties alleged to have been breached. *Id.* at 801.

In response to the employer's reliance on *Hechler*, *supra*, this Court stated:

> In *Hechler,* the Court was presented with the question of whether a state law tort claim involving a union's breach of a duty of care to provide a member of the bargaining unit with a safe workplace was preempted by § 301. 481 U.S. at 853, 107 S.Ct. 2161. The Court stressed that "[u]nder the common law ... it is the *employer*, not a labor union, that owes employees a duty to exercise reasonable care in providing a safe workplace." *Id.* at 859, 107 S.Ct. 2161. Because the union's duty arose from the collective bargaining agreement, and therefore the scope of the duty substantially depended on the court's interpretation of the CBA, the plaintiff's state law claim was preempted under § 301. *Id.* at 862, 107 S.Ct. 2161. Here, Plaintiffs' negligence claim is brought against Mr. Schaffer's employer, not his union. Moreover, the duty does not arise from the collective bargaining agreements; rather, it exists independent of the CBAs. Therefore, *Hechler* is not on point.

*Id.* at 803-04 (emphasis in the original).

This Court concluded:

> Here, Plaintiffs have pleaded a state law claim for negligence involving, *inter alia,* an alleged breach of a duty to provide a safe work environment. Pennsylvania recognizes such a duty as a matter of law, and the Pennsylvania Supreme Court has recently permitted former employees to pursue such claims as residing outside the scope of the Pennsylvania Workers' Compensation Act. Defendant has not shown how the common law duty is impacted by the mere presence of various CBAs, nor has it shown that the Court will have to interpret any of the terms of the various CBAs in order to adjudicate Plaintiffs' negligence claim. Therefore, in the instant case, Plaintiffs' negligence claim is not preempted by § 301.

*Id.* at 805.

In sum, after careful analyses, this Court faithfully applied *Kline* and found that claims based upon the common law duty to provide a safe workplace can be determined without interpreting a CBA and are therefore *not* removable under § 301.

*Stellar*, like *Kline*, disposes of the arguments made by the Chiefs in support of removal. *First*, like Ms. Schaffer, the Plaintiffs in the above-captioned cases rely solely on duties owed as

13

a result of the employer-employee relationship—duties imposed by the common law of the State of Missouri. Thus, a court does not have to interpret a CBA in order for Plaintiffs to establish the scope of the duty alleged. Rather, the scope of the duty can be determined by reference to the substantial body of case law and general tort principles that inform courts in the ordinary absence of a CBA.

   *Second*, while it is hypothetically possible that the Chiefs could point, *in defense*, to some portion of a CBA as evidence that it acted reasonably, *Stellar* correctly declares, in accord with *Caterpillar*, that "a case may not be removed on the basis of a federal defense." *Id.* at 795. More importantly, *Stellar* recognizes that, in any event, whether an employer acts "reasonably" is a question of fact for the jury and not a question requiring the court's interpretation of a CBA. *Id.* at 803.

   *Finally*, *Stellar* makes clear that the Chiefs' reliance on *Duerson v. Nat'l Football League*, No. 13 C 2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012)(unpublished decision); *Maxwell v. Nat'l Football League*, No. 11-cv-08394 Order at 2 (C.D. Cal. Dec. 8, 2011); *Pear v. Nat'l Football League*, No. 11-cv-08395 (C.D. Cal. Dec. 8, 2011); *Barnes v. Nat'l Football League*, No. 11-cv-08396, Order at 2 (C.D. Cal. Dec 8, 2011); and *Stringer v. Nat'l Football League*, 474 F. Supp. 2d 894, 901-02 (S.D. Ohio 2007), is for naught since in each, the claims were brought by NFL players *against the NFL*, and ***not***, as in the Plaintiffs' cases, against their *employer*.

   In sum, like *Kline*, *Stellar* requires that Plaintiffs' claims be remanded.

   **3.    *McNeal v. ArcelorMittal USA, Inc.***

   After *Stellar,* this Court again considered and resolved the same jurisdictional question present here – that is, whether claims grounded upon the common law duty to provide a safe workplace are completely preempted by § 301. In *McNeal I*, plaintiffs were employees of a

subsidiary of AcerlorMittal who were injured while helping to load material into an electric furnace. *Id.* at 242. The plaintiffs filed a complaint in the Court of Common Pleas asserting, among other things, that AcerlorMittal had failed to "provide a reasonably safe environment, free from hazards and unseen dangers and conditions." *Id.* at 243. AcerlorMittal removed the case to federal court asserting that the plaintiffs' negligence claims were completely preempted by § 301 since they require the interpretation of a CBA. *Id.* Seeking to distinguish *Stellar*, AcerlorMittal asserted that it was not the plaintiffs' employer; rather, it was the *parent company* of the plaintiffs' employer. *Id.* at 248. Thus, AcerlorMittal argued, *Stellar* is distinguishable. *Id.*

This Court disagreed. First, the Court observed that, as the removing party, the defendant "bears the burden of demonstrating that the district court has jurisdiction," that uncertainties are resolved in favor of remand and that "[i]f there is any doubt as to the propriety of removal, the case should not be removed to federal court." *McNeal I*, 143 F. Supp. 3d at 244 (citing *Samuel–Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir.2004), and quoting *Brown v. Francis*, 75 F.3d 860, 865 (3d Cir.1996)). Next, the Court held that under Pennsylvania law, a parent *may*, under certain circumstances, owe a duty to the employees of a subsidiary. *Id.* at 248. Thus, inasmuch as AcerlorMittal sought to distinguish *Stellar* on the basis that it was a parent company, its attempt was unavailing.

Still, AcerlorMittal urged that the claims were preempted since the CBA was necessary to define the "scope" of the common law duties. *Id.* at 250. This argument, too, was unavailing. "Even if Defendants were able to identify a section of the CBA that altered the common law," the Court reasoned, "that is still not dispositive of Section 301 preemption: 'employees have the option of vindicating their interests by means of either a section 301 action or an action brought under state law, as long as the state-law action as-pleaded does not require interpretation of the

15

collective bargaining contract.'" *Id.* (quoting *Voilas*, 170 F.3d at 373-74). "Rather, as 'masters of the complaint,'" the Court held, "Plaintiffs have the right to choose which rights to vindicate: those granted by the common law or those granted by the CBA." *Id.* (citing *Caterpillar*, 482 U.S. at 394-95). Since the plaintiffs chose to vindicate their interest by means of an action under state law, an interpretation of the CBA was not necessary. Their claims, the Court held, "rest[ed] on duties that preceded and exist[ed] independent of any duties provided in the CBA." *Id.*

After receipt of the remand order issued by this Court, AcerlorMittal filed a motion for reconsideration. *McNeal v. Arcelormittal USA, Inc.*, No. CV 15-03517, 2015 WL 9489590, at *1 ("*McNeal II*")(E.D. Pa. Dec. 29, 2015). AcerlorMittal argued that this Court wrongly decided that the plaintiffs' claims do not require interpretation of a CBA. *Id.* at 2. According to AcerlorMittal, plaintiffs' claims *necessarily* required the interpretation of the CBA as each one of the duties alleged had "been negotiated and agreed upon by the parties to the CBA." *Id.* Once more, this Court disagreed.

"[P]arallelism between the duties in the CBA and the duties allegedly breached," this Court held for a second time, "does not 'render the state-law analysis dependent upon the contractual analysis." *Id.* AcerlorMittal, however, urged that "the parties to the CBA expressly defined their respective duties and obligations concerning the above functions, safety and work place conditions." *Id.* Such was not enough to refute "the critical precept articulated by the Third Circuit Court of Appeals" that "employees have the option of vindicating their interests by means of either a section 301 action *or* an action brought under state law, as long as the state-law action as-pleaded does not require interpretation of the collective bargaining contract." *Id.* (citing *Voilas*, 170 F.3d at 373–74)(emphasis added). "[T]he key inquiry," the Court held, "is not whether Plaintiffs' claims 'relate to a subject...contemplated by the CBA.... Rather, the

16

dispositive question … is whether [Plaintiffs'] stated claims require *any interpretation* of a provision of the CBA.'" *Id.* (quoting *Kline*, 386 F.3d at 255–56)(emphasis in original). In other words, this Court held that the negotiability of duties contemplated by a CBA does *not* render common-law based claims dependent upon the negotiated contract.

Critically, this Court held that whether the plaintiffs could actually *prove* the common law duty alleged is not a factor in determining § 301 preemption. *McNeal II*, 2015 WL 9489590, at 2. Indeed, it does not suffice that the facts alleged do not support a state-law claim. *Beneficial*, 539 U.S. at 12. The federal question "must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." *Ramos*, 202 F. Supp. 3d at 467.

*McNeal I* and *McNeal II*, like *Stellar* and *Kline*, further erode any basis upon which the Chiefs can possibly rely for removal. *Even if*, for example, the common law duty to provide a safe workplace had been negotiated, *which it hasn't*, absent some substantial dispute over the meaning of a CBA, Plaintiffs may maintain their claim pursuant to an independent common law cause of action separate and apart from the CBA. "That is sufficient to defeat Section 301 preemption." *McNeal II*, 2015 WL 9489590, at *2. Moreover, even if, as the Cardinals insist, Plaintiffs could not actually *prove* one of the common law duties alleged, that does not provide a basis for removal.

**B.     Relevant Case Law from Outside the Third Circuit**

    **1.     *McKnight v. Dresser, Inc.* (5th Circuit)**

In *McKnight v. Dresser, Inc.*, 676 F.3d 426, 433 (5th Cir. 2012), former employees of an industrial valve manufacturer brought state-court actions against their former employer alleging that it had been negligent in failing to maintain a safe workplace and that it had fraudulently misrepresented the dangers to which the employers were exposed. 676 F.3d at 428. The defendant employer removed the actions to federal court pursuant to § 301, asserting that the

state court could not adjudicate the tort claims without interpreting the parties' CBA. *Id.* Plaintiffs filed motions to remand, contending that their claims were independent of the CBA. *Id.* at 428-29.

On appeal, the Fifth Circuit identified the narrow issue for review as whether (1) the claims are "inextricably intertwined" with the CBA, in which case the district court was correct to deny the motion to remand, or (2) the claims are based on independent, non-negotiable state law rights, in which case the district court was without jurisdiction and erred in denying the motion to remand. *Id.* at 431.

Finding that the workplace safety claims were based on precisely the type of independent, non-negotiable state law rights and obligations which the Supreme Court excepted from § 301 preemption in *Allis-Chalmers* and the string of cases that followed, the Fifth Circuit held that although a CBA may elaborate on or provide identical workplace safety obligations, claims for the violation of state-imposed workplace safety obligations are ***not*** "inextricably intertwined" with the CBA. *Id.* at 432.

The Fifth Circuit also dismissed the argument that the CBA provides the standard by which to judge whether the employer fulfilled its obligations to provide workplace safety. *Id.* at 432-33. The Court reasoned that since a substantial body of case law and general tort principles apply to workplace safety claims in the complete absence of a CBA, a court would not be *required* to interpret a CBA to determine the scope of the duty alleged or to determine the standard by which to judge the defendant's conduct. *Id.* Thus, the claims were remanded.

Like the employees in *McKnight*, the Plaintiffs in the above-captioned cases bring claims based on precisely the type of independent, non-negotiable state law rights and obligations which the Supreme Court excepted from § 301 preemption in *Allis-Chalmers.* Moreover, as the Fifth

Circuit reasoned, since there exists a substantial body of case law and general tort principles upon which to resolve Plaintiffs' claims, a court would not be required to interpret a CBA to determine the scope of the duty alleged or to determine the standard by which to judge the defendant's conduct. *McKnight*, like *Kline*, *Stellar*, and *McNeal*, requires that Plaintiffs' claims be remanded.

### 2.      *Hendy v. Losse* **(9th Circuit)**

In *Hendy v. Losse*, 925 F.2d 1470 (9th Cir. 1991)(unpublished disposition), former NFL football player John Hendy and his wife brought various claims against the San Diego Chargers and the team's physician, Gary M. Loss, M.D., asserting various tort claims arising from injuries that Hendy sustained while playing for the Chargers. *Id.* Defendants removed the action on the grounds that the claims were preempted by § 301 since "the scope of their duty cannot be ascertained without reference to Article XXXI of the collective-bargaining agreement, which requires each team to hire 'a board certified orthopedic surgeon,' or Paragraph 9 of Hendy's Player Contract, which sets out the conditions under which the Chargers were to provide medical care." *Id.*

The Ninth Circuit reasoned, however, that Hendy's claims arose solely under state law and thus, were "wholly independent of the collective bargaining agreement." *Id.* Insofar as the CBA limited or otherwise altered the common law, the court held that "the argument is in the nature of a defense and does not alter the state-law nature of [plaintiffs'] claim." *Id.* (*citing Caterpillar*, 482 U.S. at 398-99.)

Finally, in distinguishing *Rawson* and *Hechler*, the Ninth Circuit observed that claims against a union for breaching the duty to provide a safe workplace are "preempted because '[u]nder the common law … it is the *employer*, not a labor union, that owed employees a duty to

19

exercise reasonable care in providing a safe workplace.'" *Id.* (quoting *Hechler*, 481 U.S. at 859 (emphasis in the original)).

*Hendy* very closely resembles the Plaintiffs' cases. Indeed, the Ninth Circuit even considered some of the same CBAs in rejecting § 301 preemption. *Hendy's* sound reasoning directly applies in this case and requires that Plaintiffs' claims be remanded.

### 3.     *Green v. Arizona Cardinals Football Club, LLC* (Missouri)

While the preceding authority considered claims substantially similar to those in the case at bar, the court in *Green v. Arizona Cardinals Football Club, LLC*, considered claims that are *identical* to those as issue here. 21 F.Supp.3d 1020 (E.D. Mo. 2014). In *Green*, three former professional football players and their wives brought claims for negligence, negligent misrepresentation, fraudulent concealment, and loss of consortium against the players' former employer, the Arizona Cardinals Football Club, LLC. *Id.* at 1023.  The players alleged that they suffered multiple concussive and sub-concussive blows to the head and that their employer owed them several duties, including the duties to maintain a safe working environment, not to expose them to unreasonable risks of harm, and to warn them about the existence of concealed dangers. *Id.* at 1024.

The Arizona Cardinal removed the plaintiffs' claims asserting that any duties owed to the former football players, and the degree to which the team's discharge of those duties was reasonable, required the interpretation of a CBA. *Id.* at 1024. The players countered that by relying exclusively on Missouri state law, they could properly avoid federal jurisdiction. *Id.* Alternatively, the players argued that because they had restricted their claims to a period during which no CBA was in effect, § 301 could not provide a jurisdictional anchor. *Id.* at 1026.

In ruling on the motion to remand, the court agreed with the players' principal argument that they could avoid federal jurisdiction by relying exclusively on Missouri state law.

"Plaintiffs' negligence claims," the court ruled, "are premised upon the common law duties to maintain a safe working environment, not to expose employees to unreasonable risks of harm, and to warn employees about the existence of dangers of which they could not reasonably be expected to be aware." *Id.* at 1027. The court held that these duties "exist independent of the CBAs." *Id.* at 1028. The same was said of the players' negligent misrepresentation and fraudulent concealment causes of actions. *Id.* at 1030.

Thus, the court held that players' claims could be adjudged through interpretation of Missouri's common law and that there existed no substantial dispute over the meaning of any terms of a CBA or the need to interpret the terms of a CBA. *Id.* at 1029. The Court therefore remanded the players' claims to the circuit court from which it was removed. *Id.* at 1030.

*Green*, like *Kline*, *Stellar*, *McNeal*, *McKnight*, and *Hendy*, confirms that claims based upon the common law duty to provide a safe workplace are ***not*** removable to federal court under § 301 of the Labor Management Relations Act. Thus, as in *Green*, Plaintiffs' claims must be remanded.

### III.

**A.     Section 301 does not Completely Preempt Plaintiffs' Negligence Claim.**

In Missouri, a "claim for negligence requires proof of: (1) a legal duty of the defendant to protect the plaintiff from injury, (2) breach of the duty, (3) proximate cause, and (4) injury to the plaintiff." *Hart v. Wells Fargo Home Mortg., Inc.*, No. 2:16-CV-04171-NKL, 2016 WL 5923429, at *3 (W.D. Mo. Oct. 11, 2016)(citing *Nickel v. Stephens Coll.*, 480 S.W.3d 390, 400 (Mo. App. 2015). As the foregoing authority already makes clear, Plaintiffs' negligence claims neither arise from nor necessarily require the interpretation of a CBA. Plaintiffs' negligence claims are premised upon the common law duties to maintain a safe working environment, not to expose employees to unreasonable risks of harm, and to warn employees about the existence of

dangers of which they could not reasonably be expected to be aware. *Id. See also Carman v. Wieland*, 406 S.W.3d 70, 76–77 (Mo.Ct.App.2013) (listing an employer's non-delegable duties). The scope of the duty "is measured by 'whether a reasonably prudent person would have anticipated danger and provided against it.' " *Id.* (quoting *Smith v. Dewitt & Assoc.*, 279 S.W.3d 220, 224 (Mo.Ct.App.2009) (citing *Cupp v. Nat'l R.R. Passenger Corp.*, 138 S.W.3d 766, 772 (Mo.Ct.App.2004))). The duty and its breach can be resolved independent of a CBA.

Still, in its Notices of Removal, the Chiefs assert that "[t]he relationship between the Plaintiffs and the Chiefs was governed and informed by the collective bargaining agreement ("CBAs"), and the accompanying Constitution and By-Laws and Standard Player Contract."[7] "The CBAs include, among other things, provisions relating to player medical care and safety, rule-making and dispute resolution.[8] According to the Chiefs, in order to resolve Plaintiffs' common law claims, "the court will need to interpret these provisions to determine the scope of the Chiefs' alleged duty to Plaintiffs and whether the Chiefs acted reasonably."[9]

Alternatively, the Chiefs assert that Plaintiffs' claims are preempted "because the rights Plaintiffs seek to vindicate 'arise under', or, were created, in whole or in part, by the negotiated CBAs, and are not based on an independent duty 'owed to every person in society.'"[10]

*First*, Plaintiffs do not rely upon a duty "owed to every person in society." Nor are they required to do so. Rather, Plaintiffs' claims are based solely on the common-law duties arising from the establishment of an employer-employee relationship under common law in the State of

---

[7] *Lewis,* 4:14-cv-00004-BP, Doc. 1 at ¶ 6; *Smith,* 4:14-cv-00195, Doc. No. 1 at ¶ 6; and *Kenney*, 4:14-cv-00255-BP, Doc. No. 1 at ¶ 6. *See also Horn,* 4:14-cv-00133-BP, Doc. No. 1 at ¶ 5.
[8] *Id.*
[9] *Lewis, supra*, Doc. 1 at ¶ 15; *Smith, supra*, Doc. No. 1 at ¶ 14; and *Kenney, supra*, Doc. No. 1 at ¶ 14. *See also Horn, supra*, Doc. No. 1 at ¶ 14.
[10] *Lewis, supra*, Doc. 1 at ¶ 16; *Smith, supra*, Doc. No. 1 at ¶ 15; and *Kenney, supra*, Doc. No. 1 at ¶ 15. *See also Horn, supra*, Doc. No. 1 at ¶ 17.

Missouri. These duties do ***not*** arise from a CBA. *Kline*, *supra*, at 260 ("under common law ... it is the *employer...* that owes employees a duty to exercise reasonable care in providing a safe workplace")(internal quotation omitted)); *Stellar*, *supra*, at 798 ("The duty to provide a safe work environment preceded and exists independent of the CBAs."); *McNeal I*, *supra*, at 249 ("[T]he duty at issue here—a parent company's duty to maintain a safe work environment for a subsidiary's employees—is a duty that precedes and stands independent of the CBA[.]"); *McNeal II*, 2015 WL 9489590, at *2 ("Plaintiffs may maintain their claim pursuant to an independent common law cause of action separate and apart from the CBA. That is sufficient to defeat Section 301 preemption.").

*Second*, the Court does ***not*** need to interpret the CBAs in order to determine the scope of the common law duty owed by the Chiefs to its employees. Since Plaintiffs' claims are based solely upon the common law duties to maintain a safe work environment, including the common law duty "to warn employees about the existence of dangers of which the employees could not reasonably be expected to be aware,"[11] the scope of the duties, including their temporal scope, is measured solely by standards established by the common law. *See Kline*, *supra*, at 261 (holding that since appellants' claims invoked only common law duties of care, "no consultation with the CBA is necessary in order to define the scope of the duties alleged to have been breached."); *Stellar*, *supra,* at 803 (holding that since plaintiffs' claims invoked the common law duty to provide a safe workplace, "[t]he Court does not have to interpret any of the clauses in the CBAs in order for Plaintiffs to establish the scope of the duty."); *McNeal I*, *supra*, at 250 (holding that since plaintiffs invoked the common law duty to provide a safe workplace, an interpretation of a CBA is not necessary to determine the scope of plaintiffs' claims); *McNeal II*,

---

[11] *Hansen v. Ritter*, 375 S.W.3d 201, 208-09 (Mo. App. W.D. 2012).

2015 WL 9489590, at *2 ("Plaintiffs may maintain their claim pursuant to an independent common law cause of action separate and apart from the CBA. That is sufficient to defeat Section 301 preemption."); *McKnight*, *supra*, at 432-33 (holding that since a substantial body of case law and general tort principles apply to workplace safety claims in the complete absence of a CBA, a court need not interpret a CBA to determine the scope of the duty or to determine the standard by which to judge the employer's conduct); *Green*, *supra*, at 1027-28 (holding that scope of the common law duty to maintain a safe work environment is measured by standards established in the common law). *See also Arceneausx v. Amstar Corp.*, 2004 WL 574718 (E.D.La Mar. 22, 2004) (plaintiff's state workplace safety claims were not preempted, even though the parties' CBA addressed workplace safety, because plaintiff was asserting independent, nonnegotiable state law rights).

Likewise, since Plaintiffs have chosen to vindicate their interests by means of an action brought under state law, the Court does ***not*** need to interpret the CBAs in order to determine whether the Chiefs acted reasonably. The law on this point is both clear and consistent. *See Kline*, *supra*, at 386 (quoting *Lingle*, 486 U.S. at 407, and holding that factual questions pertaining to the conduct of the employer do not require the court to interpret any term of a CBA); *Stellar*, *supra*, at 803 (citing *Trans Penn Wax,* 50 F.3d 217, and holding that whether an employer's conduct was reasonable is "purely [a] factual question[] which did not require interpretation of the CBA"); *McKnight*, *supra*, at 432-33 (holding that the common law provides the standard by which to determine whether an employer acted reasonably); *Green*, *supra*, at 1029 (holding that whether a Missouri employer acted reasonably "can be adjudged in accordance with the standards set forth in the Missouri common law."). *See also Trans Penn Wax*, 50 F.3d at 232 ("An examination of the employer's behavior, motivation, and statements

24

does not substantially depend upon the terms of the collective bargaining agreement."); *Johnson v. Auto Handling Corp.,* 857 F. Supp. 2d 848, 851 (E.D. Mo. 2012) (whether defendant satisfied its state-law duties to provide a reasonably safe product can be decided independent of the CBA).

In sum, § 301 does not apply to Plaintiffs' negligence claims.

## B.   Section 301 does not Completely Preempt Plaintiffs' Negligence Misrepresentation or Fraudulent Concealment Claims.

A cause of action for negligent misrepresentation requires proof that: (1) the defendants supplied or omitted information in the course of business; (2) because they failed to exercise reasonable care, the information was false; (3) the information was provided by the defendants to the plaintiff in a particular business transaction; and (4) the plaintiff relied on the information and thereby suffered pecuniary loss. *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc*., 406 F.3d 1052, 1065 (8th Cir. 2005). Similarly, the elements of fraudulent concealment are: (1) a concealment; (2) its materiality; (3) the speaker's knowledge of its concealment; (4) the speaker's intent that its concealment should be acted on by the person in the manner reasonably contemplated; (5) the plaintiffs' ignorance of the material fact; (6) the plaintiff's reliance; (7) the plaintiff's right to rely thereon; and (8) the plaintiff's consequent and proximately caused injury. *See Renaissance Leasing, LLC v. Vermeer Mfg. Co*., 322 S.W.3d 112, 132–32 (Mo.2010) (en banc).

The Eighth Circuit has explained that because the torts of fraudulent concealment and negligent misrepresentation "arise in state common law and are measured by standards of conduct and responsibility completely separate from and independent of a collective bargaining agreement," as revealed by the elements of each claim, they are not pre-empted by § 301. *Anderson v. Ford Motor Co*., 803 F.2d 953, 959 (8th Cir.1986), cert. denied, 483 U.S. 1011, 107 S.Ct. 3242 (1987) ("Fraud is a common law tort action deeply rooted in local standards of

individual and social responsibility. […] [A] claim of fraud does not derive from nor depend upon an underlying contract."). [12] Thus, Plaintiffs' fraudulent concealment and negligent misrepresentation claims are not substantially dependent upon or 'inextricably intertwined' with the interpretation of the terms of a CBA and, as a result, must be remanded.

For his part, Judge Robreno in *Stellar* simply stated that "For the same reasons [provided with respect to plaintiff's negligence claims], Plaintiffs' fraud claim is not preempted." *Stellar*, *supra*, at 808. The same is true here.

That being said, in its notices of removal, the Chiefs made *no* showing that Plaintiffs' fraudulent concealment or negligent misrepresentation claims, as pled, arise from or require the interpretation of a CBA. Thus, the Chiefs have utterly failed to satisfy the heavy burden of establishing federal jurisdiction over Plaintiffs' fraudulent concealment and negligent misrepresentation claims.

## C.    Section 301 does not Completely Preempt Plaintiffs' Loss of Consortium Claims

Plaintiffs' Loss of Consortium claim is derivative of the underlying claims, and thus rises or falls based on Plaintiffs' underlying claims. *See Fox v. Parker Hannifin Corp*., 914 F.2d 795, 802-03 (6th Cir. 1990); *Stellar*, *supra*, at 808 (holding that since a loss of consortium claim is derivative of the underlying claims, no additional analysis is necessary).

## D.    The Provisions Cited by the Chiefs are Demonstrably Irrelevant

In their notices of removal, the Chiefs cite a bevy of provisions "relating to player medical care and rule-making." Upon inspection, however, they plainly have no bearing on

---

[12] *See also Jurevicius*, 1:09 CV 1803, 2010 WL 8461220 (holding that the elements of fraud can be proven without reference or interpretation of a CBA); *Foy v. Pratt & Whitney Grp.,* 127 F.3d 229, 233 (2d Cir. 1997) (holding that knowledge that a statement is false involves purely factual considerations and rejecting employer's argument that interpretation of CBA is necessary to prove justifiable reliance); *Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401, 1408 (9th Cir. 1991) (same).

Plaintiffs' claims. For example, Article XLIV § 1 (1993) requires each team is required to "have a board certified orthopedic surgeon as one of its club physicians," and "if a Club physician advises a coach or other Club representative of a player's physical condition which could adversely affect the player's performance or health, the physician will also advise the player." Plaintiffs, however, are not suing the Chiefs for failing to employ a board-certified orthopedic surgeon nor are they suing the team's physician for failing to advise of physical conditions disclosed by the physician to a coach or other team representative. Rather, Plaintiffs allege that the Chiefs failed to warn about the existence of concealed dangers that the *team* knew or should have known relating to repetitive brain trauma. This provision neither gives rise to Plaintiffs' claims nor requires interpretation in order to resolve Plaintiffs' claims and, *even if* it required interpretation, there is no disputing its meaning. *Green*, *supra,* at 1028. The provision simply reveals the existence of *additional duties*, having nothing to do with the common-law claims asserted by Movants. Indeed, the provision says *nothing* about the common-law duties owed by the Chiefs.

Articles XXXI §§ 1, 2 (1982) and XLIV § 2 (1993), meanwhile, require that "fulltime head trainers and assistant trainers ... be certified by the National Athletic Trainers Association." Again, Plaintiffs are not suing the Chiefs for failing to employ fulltime head trainers and assistant trainers certified by the National Athletic Trainers Association. These provisions neither give rise to Plaintiffs' claims nor require interpretation in order to resolve Plaintiffs' claims and, *even if* it required interpretation, its meaning is not in dispute.

Articles XVII supplement (1982), XVII (1984), and Art. XVII (1999), require that "[a]ll determinations of recovery time for major and minor injuries must be by the club's medical staff and in accordance with the club's medical standards" for players categorized as

"Reserve/Injured" on the Reserve List." In order to ensure that teams do not evade roster limits, member clubs are required to rely on medical staff, in accordance with club standards, to determine "as precise as possible" a player's recovery time. These provisions "exist[] solely as part of the documentation required by the NFL related to the 'Reserve/Injured' list, which pertains to club roster size." *Green*, *supra*, at 1028. Clearly, nothing in these provisions gives rise to the common-law duty to provide a safe workplace, nor do the cited provisions require interpretation in order to resolve Plaintiffs' claims. The *additional duty* imposed on member clubs by operation of Article XVII is simply irrelevant to Plaintiffs' claims.

Article XLIV § 3 (1993) provides that "[a] player will have the opportunity to obtain a second medical opinion," and the Club shall bear "the responsibility" for the "the costs of [these] medical services." Obviously, Plaintiffs are not basing their claims on Article XLIV § 3. Moreover, it is inconceivable that the Court would *have* to interpret Article XLIV § 3 in order to resolve Plaintiffs' common law claims.

The Standard Player Contract § 9 requires that teams provide medical and hospital care as deemed necessary by team physicians in the event a player is injured. "But the [Plaintiffs] do not claim that they were not treated when contractually entitled to the care; rather, they claim that they were not informed of the latent risks of their employment." *Green*, *supra*, at 1027-28. This provision neither gives rise to Plaintiffs' claims nor requires interpretation. *See id.*; *Hendy,* 925 F.2d 1470.

Article XIII§ l(a) (1993) establishes that a joint committee may meet to discuss or study, among other things, player safety issues, but do not have the power to bind any of the signatories to the CBA. Plaintiffs clearly do not allege the violation of Article XIII§ l(a) and cannot

conceive of the need to interpret it. The same is true of Article XIII § 1 (1993), which mandates procedures for reviewing, investigating, and resolving proposed rule changes.

Likewise, Articles XI § 8 (1982) and XIII § 2 (1993) welcome player representatives to Competition Committee meetings "to represent the players' viewpoint on rules" and Article XI, § 11.2 (1999) delegates to the NFL and the teams the obligation to "amend[] or change[]" all "[p]laying rules." None of these provisions give rise to Plaintiffs' claims nor do any of them require interpretation.

In sum, the scope of a duty arising under common law duty to provide a safe workplace is determined solely by reference to state law. The portions of the CBA relied upon by the Chiefs are entirely irrelevant and, at most, expand upon the duties alleged. However, by choosing to vindicate their interests by means of an action brought under state law, Plaintiffs rely solely upon the common law duties which precede and exist entirely independent of any CBA. Thus, Plaintiffs' claims must be remanded.

E.      The Cases Relied upon by the Chiefs are Wholly Inapposite

Defendant cites several cases that are wholly inapposite. For example, the Chiefs cite *Sherwin v. Indianapolis Colts, Inc*., 752 F. Supp. 1172 (N.D.N.Y. 1990). But, in *Sherwin*, the plaintiff did not even contend that the club owed an independent duty arising out of the employer-employee relationship. *Id.* at 1178. Moreover, the Court in *Sherwin* explicitly relied on its interpretation of the relevant case law as requiring that only duties "owed to every person in society" can exist independent of CBA. *Id.* But, this is clearly not the law in the Third Circuit or elsewhere. *See e.g., Kline*, 386 F.3d 246; *Stellar,* 98 F. Supp. 3d at 802. Section 301 "cannot be read broadly to preempt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas* , 512 U.S. 107. The right to a safe workplace is just such an inalienable right. *Charlton v. St. Louis & S.F.R. Co*., 98 S.W. 529, 536 (1906). Finally, in *Sherwin*, the court was

29

deciding the issue on a motion to dismiss. Thus, the narrow jurisdictional grant of § 301 was not an issue.

Defendant also cites *Jeffers v. D'Allessandro*, 199 N.C. App. 86, 92 (2009), another case in which the jurisdictional grant of § 301 was not at issue. But, in *Jeffers,* the plaintiff *explicitly* relied on the provisions of a CBA as the source of the duty alleged. *Id.* at 92. *Jeffers* is therefore wholly inapplicable.

Finally, Defendant cites *Duerson v. Nat'l Football League*. 2012 WL 1658353. But, *Duerson* was a wrongful death case asserted against the NFL and a helmet manufacturer, *neither of which was decedent's employer*. Thus, *Deurson* is inapposite.

In sum, none of the three cases relied upon by the Chiefs are even remotely applicable.

## IV.

**A.      This Case is Not Removable Pursuant to 28 U.S.C. § 1445(c)**

Federal law "unambiguously provides that "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." 28 U.S.C. § 1445(c). As a result, when Section 1445(c) is applicable, a case is nonremovable. The dispositive question, then, is whether this action arises under the Missouri Workers' Compensation Law. The question is easily answered by examining the statute itself.

The Missouri legislature has decreed that Chapter 287 "shall be known as 'The Worker's Compensation Law.' " Mo.Rev.Stat. § 287.010. First enacted in the 1925 version of the Missouri workers' compensation law, the law has long been recognized as the "Workmen's Compensation Law." *See Barnhill v. Allied Waste Indus.*, No. 13-00804-CV-W-JTM, 2013 WL 6070012 (W.D. Mo. Nov. 18, 2013)(citing *State ex rel. Brewen–Clark Syrup Co. v. Missouri Workmen's Compensation Commission,* 8 S.W.2d 897, 900 (Mo.1928) (*en banc* )).

30

In relevant part, section 287.110(2), entitled "Scope of chapter as to injuries and diseases covered," provides:

> This chapter **shall apply to all** injuries received and **occupational diseases contracted in this state**, regardless of where the contract of employment was made, **and also to all** injuries received and **occupational diseases contracted outside of this state under contract of employment made in this state** [.]

R.S.Mo. § 287.110(2) (emphases added).  Since Plaintiffs allege in their Petitions that they contracted occupational diseases in the State of Missouri [*this state*] and while under contract of employment made in the State of Missouri [*this state*], the Workers' Compensation Law very clearly applies to Plaintiffs' action. *See Amesquita v. Gilster-Mary Lee Corp*., 408 S.W.3d 293, 301 (Mo. Ct. App. 2013); *see also State ex rel. KCP & L Greater Missouri Operations Co. v. Cook*, 353 S.W.3d 14, 28-29 (Mo. Ct. App. 2011)(observing that "occupational disease claims are covered by and compensable under the Act"). Moreover, while Plaintiffs seek a judicial **remedy**, as opposed to an administrative one, section 1445 speaks of "*actions*," not remedies. Thus, removal of Plaintiffs' occupational-disease claims is expressly prohibited.

## CONCLUSION

For the reasons provided herein, Plaintiffs respectfully request that the Court enter an order remanding the case and requiring that Defendant pay just costs and actual expenses, including attorney fees, in accordance with 28 U.S.C. § 1447(c).

Respectfully submitted on Thursday, July 13, 2017.

THE KLAMANN LAW FIRM, P.A.

    /s/ Andrew Schermerhorn
John M. Klamann, MO          #29335
Andrew Schermerhorn, MO   #62101
Paul D. Anderson, MO          #65354
4435 Main Street, Ste. 150
Kansas City, MO 64111
Telephone: (816) 421-2626

31

Facsimile: (816) 421-8686
jklamann@klamannlaw.com
ajs@klamannlaw.com
panderson@klamannlaw.com

Kenneth B. McClain, MO      #32430
Lauren E. McClain, MO       #65016
Timothy J. Kingsbury, MO    #64958
HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 West Lexington, Suite 400
Independence, MO 64051
Telephone: (816) 836-5050
Facsimile: (816) 836-8966
kbm@hfmlegal.com
lem@hfmlegal.com
tjk@hfmlegal.com

Wm. Dirk Vandever, MO      #24463
THE POPHAM LAW FIRM, P.C.
712 Broadway, Suite 100
Kansas City, MO 64105
Telephone: (816) 221-2288
Facsimile: (816) 221-3999
dvandever@pophamlaw.com

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on Thursday, July 13, 2017, I caused the foregoing to be filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel of record.

/s/ <i>Andrew Schermerhorn</i>
Andrew Schermerhorn, MO