UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **Hon. Anita B. Brody** |

## NOTICE & ORDER

The Court is concerned about deceptive practices targeting Settlement Class Members, especially in light of the fact that Settlement Class Members may be suffering from significant cognitive impairment. The following filings alerted the Court to alleged deceptive practices that target Settlement Class Members:

- On February 21, 2017, Co-lead Class Counsel filed a Motion for Injunction Prohibiting Improper Communications with the Class by Class Member Fred Willis Through his Organizations NFL Players Brains Matter, HPN Neurologic, and HPN Concussion Management (ECF No. 7175). This Motion was resolved through a Stipulation (ECF No. 7489) approved on April 18, 2017;

- On March 27, 2017, Co-lead Class Counsel filed a Motion for Injunction Prohibiting Improper Communications with the Class by Jim McCabe and NFL Case Consulting, LLC (ECF No. 7347). On June 6, 2017, Co-lead Class Counsel withdrew this Motion without prejudice (ECF No. 7779);

- On June 9, 2017, Co-lead Class Counsel filed a Motion for Approval of Notice to Class Members to Address Solicitations Received by [the] Class (ECF No. 7811). On June 12, 2017, the Court granted Co-lead Class Counsel's Motion and authorized distribution to the Settlement Class of a Notice regarding solicitations received by class members from claims service providers and other individuals and entities (ECF No. 7814) (Exhibit A).

Additionally, on July 16, 2017, the *New York Times* published an article by Ken Belson titled "After N.F.L. Concussion Settlement, Feeding Frenzy of Lawyers and Lenders" (Exhibit B). This article recounted the stories of Settlement Class Members who have received potentially misleading solicitations from claims service providers, lenders and litigation funders, and retired NFL players working on behalf of these entities. It thus came to my attention that deceptive practices that target Settlement Class Members may remain a problem in the implementation of this Settlement.

The Court will hold a Hearing to address allegedly deceptive or misleading solicitations received by Settlement Class Members, including but not limited to solicitations from claims service providers, lenders and litigation funders, entities or persons purporting to facilitate medical examinations for purposes of acquiring Qualifying Diagnoses, law firms, and other retired NFL players working on behalf of these entities. The Court will address the legality of any agreements entered into by Settlement Class Members as a result of these solicitations and may grant any relief the Court deems proper.

Co-Lead Class Counsel is authorized to conduct discovery on an expedited basis, including interrogatories, document requests, and depositions. The discovery may include but is not limited to:

- All communications between Settlement Class Members and any person or entity who has sent purportedly deceptive or misleading solicitations to Settlement Class Members;
- All contracts or retainers entered into by Settlement Class Members in connection with these communications; and
- Any referral agreements related to the solicitation of Settlement Class Members.

The deadline for answering interrogatories or requests for production of documents is fourteen (14) days.

As a fiduciary of the Settlement Class Members, responsible for protecting the Settlement Class Members, the Court will hold a **HEARING** on **September 19, 2017 at 10:00 a.m.** in Courtroom 7B on the 7th Floor of the U.S. Courthouse, 601 Market St., Philadelphia, PA, to investigate these allegations.

Requests to be heard, along with a short statement of the information to be presented, must be emailed on or before **September 12, 2017.**

- Requests from counsel must be submitted to **concussions@paed.uscourts.gov**.
- Requests from Settlement Class Members who are not represented by a lawyer must be submitted to **sgeorge@seegerweiss.com**.

_____
ANITA B. BRODY, J.

July 19, 2017
DATE

Copies **VIA ECF** on _____ to:        Copies **MAILED** on _____ to:

# Exhibit A

*This is an **official notice**, approved by Judge Anita Brody of the
United States District Court for the Eastern District of Pennsylvania in*
***In re National Football League Players' Concussion Injury Litigation (MDL No. 2323)***

***This is not a solicitation from a lawyer or any other organization***

# NFL CONCUSSION SETTLEMENT

## IMPORTANT NOTICE TO ALL SETTLEMENT CLASS MEMBERS TO CLEAR UP CONFUSION REGARDING (1) THIRD-PARTY CLAIMS SERVICE PROVIDERS AND (2) MASS SOLICITATIONS OF CLASS MEMBERS BY FORMER PLAYERS

### (1) "CLAIMS SERVICE" COMPANIES ARE *NOT* THE COURT-APPOINTED CLAIMS ADMINISTRATOR

There are reports that Class Members have been confused and have signed contracts with third- party claims service companies – for as much as 15% of their future monetary awards under the Settlement – due to their mistaken belief that they were signing up with the Court-appointed Claims Administrator.

It is important that you be aware that you do *not* need to contract with a claims service company to register, schedule an appointment with a Qualified BAP Provider or Qualified MAF Physician, or to file a claim. None of the steps are complicated. The Claims Administrator does not charge for assisting Class Members with registering or filing claims.

A BAP Examination is *free of charge*. But *only* the Court-appointed BAP Administrator can schedule a Retired Player for a BAP examination with a Qualified BAP Provider.

### IMPORTANTLY, AS OF JANUARY 7, 2017, A QUALIFYING DIAGNOSIS **CAN BE MADE *ONLY* BY PHYSICIANS SELECTED AND APPROVED** *WITHIN THE SETTLEMENT PROGRAM* TO SERVE AS QUALIFIED BAP PROVIDERS AND QUALIFIED MAF PHYSICIANS

This is also to remind you that, under the terms of the Settlement, after the Effective Date of January 7, 2017, a Qualifying Diagnosis can be made *ONLY* by a Qualified BAP Provider or a Qualified MAF Physician. Be particularly wary of anyone offering to cover the costs of travel to a medical examination or the costs of the examination itself, by a doctor outside of the Settlement Program, or assurances that you will receive a Qualifying Diagnosis for a monetary award if you are seen by a particular doctor.

**If you entered into a contract with a claims service company because you believed they were the Claims Administrator or other Court-appointed Settlement official, or because you were promised to be sent to doctors outside of the Settlement Program after January 7, 2017, for the purpose of obtaining a Qualifying Diagnosis, please contact, or have your individually retained lawyer contact,**

Co-Lead Class Counsel at NFLConcussion@seegerweiss.com or 1-877-539-4125 immediately. They can help you sort out your situation.

**RETAIN ALL DOCUMENTS BECAUSE, AT A LATER DATE, THE COURT EXPECTS TO HOLD A HEARING TO ADDRESS THE LEGALITY OF ANY TRANSACTIONS BETWEEN CLAIMS SERVICE COMPANIES AND CLASS MEMBERS.**

## (2) COMMUNICATIONS FROM FORMER PLAYERS THAT MAY BE SOLICITATIONS BY PRIVATE LAWYERS OR OTHERS

There are also reports of mass email solicitations purportedly sent by one or more retired players as reminders regarding registration for the Settlement Program. These are *not* official communications sent on behalf of the Claims Administrator or anyone formally appointed by the Court. ***They may be solicitations on behalf of private lawyers or third-party companies.*** Calling any listed "hotline" number or clicking a link for information will *not* put you in touch with the Claims Administrator or anyone formally connected with the Settlement Program.

The Court-Appointed Claims Administrator is **BrownGreer PLC,** which can be reached by calling **1-855-887-3485** or emailing **ClaimsAdministrator@NFLConcussionSettlement.com**.

The official settlement website (www.NFLConcussionSettlement.com) is also a reliable source of information. There is no other Court-approved website.

**PLEASE DO NOT CONTACT EITHER THE JUDGE OR COURT PERSONNEL DIRECTLY ABOUT THIS NOTICE OR ABOUT THE SETTLEMENT**

# Exhibit B

Case 2:12-md-02323-AB   Document 8037   Filed 07/19/17   Page 8 of 12

**The New York Times** | https://nyti.ms/2vqEtVh

PRO FOOTBALL

# After N.F.L. Concussion Settlement, Feeding Frenzy of Lawyers and Lenders

By KEN BELSON    JULY 16, 2017

The sales pitches were filled with urgency and emphasized familiarity. Act now or risk missing out on millions of dollars. Trust us because we are part of the "N.F.L. brotherhood." "You have nothing to lose," a former N.F.L. quarterback implored in one, "but money you're entitled to and that you earned the hard way."

The pleadings are aimed at former N.F.L. players who stand to receive checks from the largest legal settlement in sports history, a pool of money that may top $1 billion for retirees who sued the league for lying to them about the dangers of concussions as they got their heads pounded on the field.

Some players may get very little, but others with severe neurological diseases may receive as much as $5 million. Now lawyers, lenders and would-be advisers are circling, pitching their services and trying to get a cut of the money.

It may be standard practice for big legal settlements, but the fact that many players are cognitively impaired and may struggle to understand the terms of the services offered to them has raised alarm among player advocates, legal ethicists and the lawyers for the players who sued the N.F.L.

"I've been doing this litigation for a long time, there's always been a certain amount of stuff going on, but I've never seen anything like this by a multiple," said Christopher Seeger, a co-lead counsel for the players, who has received dozens of complaints from players and others about companies pitching sometimes dubious services. "There's a sex appeal to representing N.F.L. players, and they are so identifiable, so these companies who are predatory, it is easy for them to be successful. Most of these guys are broke, so they're vulnerable."

While some of the firms may provide valuable assistance in complicated cases, others appear to be pitching services to ex-players who don't need their help.

The cottage industry of companies and law firms, going by names such as N.F.L. Case Consulting, Concussion Case Management and Legacy Pro Sports and looking to help people file settlement claims, is largely unregulated, even if their pitches are for services that are usually unnecessary. And with the deadline to register for the settlement less than a month away, their pitches have become more aggressive.

The rush to recruit players prompted the federal judge overseeing the legal settlement case to issue an order in April saying that N.F.L. Players Brains Matter, a company led by Fred Willis, a former running back, would no longer distribute "improper communications" to other players.

In an interview, Mr. Willis said he was a longtime advocate for players and accepted no money for helping them.

"I'm not being paid, and I don't need the money," said Mr. Willis, who played for the Bengals, the Oilers and the Broncos. "This is not going to stop me from helping my brothers, and they know where I am coming from."

The judge, Anita B. Brody, also approved a notice that warned players about companies that, according to Mr. Seeger, offer to help players "navigate what are

falsely portrayed as complicated registration, medical testing and claims procedures."

Most of the claim-service providers require players to agree to share 15 percent or more of anything they receive in return for helping them with a process that the providers portray, in stark terms, as unduly complicated. They also do not always tell players that they can call court-appointed experts to receive free advice on how to file a claim, or that they can visit doctors who will provide a free neurological exam.

Some lawyers have hosted dinners for former players at steakhouses to get them to sign up. Others have promised to get players appointments with doctors who will write diagnoses that make their medical conditions look worse than they are, according to players who have received pitches from some of the companies.

Some lawyers have also hired former players to sign up their brethren, yet do not always disclose that the ex-players are being paid to recruit other retirees. One firm hired Joe Pisarcik, the former Giants quarterback who until recently ran the N.F.L. Alumni Association, as a pitchman. (Mr. Pisarcik did not answer telephone messages left for him.)

Mr. Seeger said a few hundred of the approximately 20,000 players who are eligible appeared to have signed up for these services. But some retirees have resisted the come-ons. Walter Carter, who played defensive end for the Raiders and the Buccaneers, as well as in the U.S.F.L., has heard from at least a dozen companies pitching services.

But Mr. Carter, 59, who runs a packaging company near Tampa, Fla., went on the website for the concussion settlement and realized he could file a claim on his own. Although he was annoyed by the lawyers selling services he does not need, Mr. Carter is more offended by the retired players who are doing their bidding, including Mr. Pisarcik, who pitched him.

"I watch how these attorneys work, and I think it's a crime," Mr. Carter said. But "most of them penetrate the confidence of guys by working with other guys. It's the ultimate betrayal."

Even players who may have taken fewer hits to the head than front-line players have been approached. Michael Husted, a kicker with four teams over nine N.F.L. seasons, said he had received emails and phone calls from at least half a dozen companies offering to help him file a claim. Most of these companies made it clear they were less concerned about his health than about earning a commission, he said.

"I was definitely surprised they were reaching out to a kicker, but then I realized the more people they get, the more money they might get," Mr. Husted said.

He said the process to register online for the settlement — a needed step before filing a claim — was straightforward and did not require a lawyer.

"If you can read, you can fill it out," he said.

Judge Brody left open the possibility of canceling agreements between these companies and any players they had enlisted.

The N.F.L. declined to make an executive available to discuss the issue.

Concussion Case Management and Legacy Pro Sports, which was started by a former player, said any misleading information on their websites had been corrected.

The companies say that they are advocates for players who have difficulty completing the needed paperwork, and that they charge far less than law firms.

"They want to tell you it's simple and you don't need to work with a service company or a lawyer — but when you sit down with the player and tell him to go to this portal, get an ID number, if you're a retired player with impairment, it's not necessarily an easy process," said Jerry Passaro, the chief executive of Concussion Case Management, which charges players 12.5 percent of any award from the settlement.

Brandon Siler, a former linebacker and a co-founder of Legacy Pro Sports, another service provider, said: "It hurts my feelings when something is written that we are taking advantage of players. We're totally transparent about what we do. We are a consulting company that is educating these players."

The concussion settlement has also attracted lenders who have been offering retirees loans worth tens of thousands of dollars that would be paid back with payouts from the settlements. The loans, though, come with interest rates of 40 percent or higher that can completely consume any cash from the settlement.

In February, the Consumer Financial Protection Bureau and the New York attorney general, Eric T. Schneiderman, sued a New Jersey-based financial company, RD Legal Funding L.L.C., accusing it of deceiving retired N.F.L. players and "luring them into costly advances on settlement payouts with lies about the terms of the deals."

Retired players are also learning about provisions in the settlement that allow Medicare, former spouses, banks and other potential creditors to recoup money by placing a lien on a player's award. Medicare and Medicaid, for instance, can recover money they have spent treating a player's medical condition, something that could amount to hundreds of thousands of dollars for players with amyotrophic lateral sclerosis or Parkinson's disease, two conditions covered under the settlement.

Mr. Seeger, the plaintiffs' lawyer, said that claims specialists representing the players would negotiate discounts with Medicare and Medicaid. He declined to say how large they would be, but he said that after the government was repaid, players would still have a large portion of their award.

Some players, though, may still need to pay contingency fees to their lawyers or repay unpaid child support or a bank or other lender. And of course, players who hired a claims service company will have to hand over 10 percent or more.

"With any middleman service, there are those who are doing it for a fair price and then you have people who are taking advantage," said Ted Frank, a lawyer at the Competitive Enterprise Institute, a nonprofit that focuses on class-action settlements. "But no one is going to help me fill out my claim for a $5 coupon."

A version of this article appears in print on July 17, 2017, on Page A1 of the New York edition with the headline: Fear of Preying On Ex-Athletes Owed by N.F.L.

© 2017 The New York Times Company