## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 12-md-2323 (AB) |
| | MDL No. 2323 |
| | **JURY TRIAL DEMANDED** |
| Second Amended Master Administrative Long-Form Complaint Against ~~NFL Defendants~~ Kansas City Chiefs Football Club, Inc. | |
| THIS DOCUMENT RELATES TO: | |
| *LEWIS et al., v. KANSAS CITY CHIEFS FOOTBALL CLUB, INC.*, No. 14-01995-AB | |

## OPT OUT PLAINTIFF SHORT FORM COMPLAINT AGAINST ~~NFL DEFENDANTS~~ KANSAS CITY CHIEFS FOOTBALL CLUB, INC.

1.      Plaintiff, <u>Chris Smith</u>, and Plaintiff's Spouse <u>Billie Smith</u> bring this civil action as a related action in the matter entitled IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION, MDL NO. 2323.

2.      Plaintiff(s) are filing this Short Form Complaint against ~~NFL Defendants~~ Kansas City Chiefs Football Club, Inc. as required by this Court's Case Management Order, filed, July 18, 2017 (Doc. 8030).

3.      Plaintiff and Plaintiff's Spouse opted-out of the Class Action Settlement approved by the Court on May 8, 2015.

4.      Plaintiff and Plaintiff's Spouse incorporate by reference the allegations (as designated below) of the ~~Second Amended Master Administrative Long-Form Complaint Against NFL Defendants~~ state court Petition filed in the Circuit Court of Jackson County,

Missouri, Case No. 1316-CV30043, and attached hereto as Attachment A, as is fully set forth at length in this Short Form Complaint.

5.      [Fill in if applicable] Plaintiff is filing this case in a representative capacity as the _____ of _____, having been duly appointed as the _____ by the Court of _____. (Cross out sentence below if not applicable.) ~~Copies of the Letter of Administration/Letters of Testamentary for a wrongful death claim are annexed hereto if such letters are required for the commencement of such a claim by the Probate, Surrogate or other appropriate court of the jurisdiction of the decedent.~~

6.      Plaintiff <u>Chris Smith</u> is a resident and citizen of <u>Kansas</u>, and claims damages as set forth below.

7.      Plaintiff's Spouse, <u>Billie Smith</u>, is a resident and citizen of <u>Kansas</u>, and claims damages as a result of loss of consortium proximately caused by the harm suffered by her Plaintiff husband.

8.      Upon information and belief, the Plaintiff sustained repetitive, traumatic sub-concussive and/or concussive head impacts during NFL games and/or practices. Upon information and belief, Plaintiff suffers from symptoms of brain injury caused by the repetitive, traumatic sub-concussive and/or concussive head impacts that Plaintiff sustained during NFL games and/or practices. Upon information and belief, the Plaintiff's symptoms arise from injuries that are latent and have developed and continue to develop over time.

9.      The original complaint by Plaintiff(s) in this matter was file in <u>the 16th Circuit Court of Jackson County, Missouri</u>. If the case is remanded, it should be remanded to <u>the 16th Circuit Court of Jackson County, Missouri</u>.

10.     Plaintiff(s) claim damages as a result of [check all that apply]:

    ☑    Injury to Herself/Himself

    ☐    Injury to the Person Represented

    ☐    Wrongful Death

    ☐    Survivorship Action

    ☑    Economic Loss

    ☑    Loss of Services

    ☑    Loss of Consortium

11.    [Fill in if applicable] As a result of the injuries to Plaintiff, Plaintiff's Spouse suffers from a loss of consortium, including the following injuries:

    ☑    Loss of marital services

    ☑    Loss of companionship, affection or society

    ☑    Loss of support

    ☑    Monetary losses in the form of unreimbursed costs expended for the health care and personal care of Plaintiff

12.    [Check if applicable] ☑ Plaintiff and Plaintiff's Spouse reserve the right to object to federal jurisdiction.

13.    Plaintiff and Plaintiff's Spouse bring this case against the following Defendants in this action [check all that apply]:

    ☐    National Football League

    ☐    NFL Properties, LLC

    ☑    Kansas City Chiefs Football Club, Inc.

14.     Plaintiff played in [check if applicable] ☑ the National Football League ("NFL") and/or in [check if applicable] ☐ the American Football League ("AFL") during the following period of time <u>1986 - 1987</u> for the following teams: <u>Kansas City Chiefs.</u>

15.     Plaintiff retired from playing professional football after the <u>1987</u> season.

## <u>CAUSES OF ACTION</u>

16.     ~~Plaintiffs herein adopt by reference the following Counts of the Master Administrative Long-Form Complaint, along with the factual allegations incorporate by reference in those Counts [check all that apply]:~~

☐     Count I (Declaratory Relief (Against Defendant NFL))

☐     Count II (Negligence (Against Defendant NFL))

☐     Count III (Negligent Marketing (Against all Defendants))

☐     Count IV (Negligence (Against Defendant NFL P))

☐     Count V (Negligent Misrepresentation (Against Defendant NFL))

☐     Count VI Negligent Hiring (Against Defendant NFL))

☐     Count VII (Negligent Retention/Supervision (Against Defendant NFL))

☐     Count VIII (Fraud (Against all Defendants))

☐     Count IX (Civil Conspiracy (Against all Defendants))

☐     Count X (Fraudulent Concealment (Against all Defendants))

☐     Count XI (Wrongful Death (Against all Defendants))

☐     Count XII (Survival Action (Against all Defendants))

☐     Count XIII (Loss of Consortium (Against all Defendants))

☐     Count XIV (Punitive Damages under All Claims (Against all Defendants))

☐     Count XV (Declaratory Relief: Punitive Damages (Against all Defendants))

17.     Plaintiffs assert the following ~~additional~~ causes of action [write in or attach]:

Plaintiffs herein adopts by reference the factual allegations and Counts set forth in Plaintiff's Petition, filed in the Circuit Court of Jackson County, Missouri, Case No. 1316-CV30043, and attached hereto as Attachment A.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and Plaintiff's Spouse pray for judgment as follows:

A.     An award of compensatory damages, the amount of which will be determined at trial;

B.     An award of economic damages in the form of medical expenses, out of pocket expenses, lost earnings and other economic damages in an amount to be determined at trial;

C.     For loss of consortium as applicable;

D.     For punitive and exemplary damages as applicable;

E.     For all applicable statutory damages of the state whose laws will govern this action;

F.     For an award of attorneys' fees and costs;

G.     An award of prejudgment interest and costs of suit; and

H.     An award of such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: July 27, 2017                              Respectfully Submitted,

THE KLAMANN LAW FIRM, P.A.

_/s/ Paul D. Anderson_

| | |
|---|---|
| John M. Klamann, MO | #29335 |
| Andrew Schermerhorn, MO | #62101 |
| Paul D. Anderson, MO | #65354 |

4435 Main Street, Ste. 150
Kansas City, MO 64111
Telephone: (816) 421-2626
Facsimile: (816) 421-8686
jklamann@klamannlaw.com
ajs@klamannlaw.com
panderson@klamannlaw.com

| | |
|---|---|
| Kenneth B. McClain, MO | #32430 |
| Lauren E. McClain, MO | #65016 |
| Timothy J. Kingsbury, MO | #64958 |

HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 West Lexington, Suite 400
Independence, MO 64051
Telephone: (816) 836-5050
Facsimile: (816) 836-8966
kbm@hfmlegal.com
lem@hfmlegal.com
tjk@hfmlegal.com

| | |
|---|---|
| Wm. Dirk Vandever, MO | #24463 |

THE POPHAM LAW FIRM, P.C.
712 Broadway, Suite 100
Kansas City, MO 64105
Telephone: (816) 221-2288
Facsimile: (816) 221-3999
dvandever@pophamlaw.com
**ATTORNEYS FOR PLAINTIFFS**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 27th day of July, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide electronic notice to all counsel of record.

/s/ *Paul D. Anderson*
Paul D. Anderson

Electronically Filed - Jackson - Independence - December 21, 2013 - 05:15 PM

ATTACHMENT A

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

| | |
|---|---|
| **ALBERT LEWIS** ) | |
|     **3532 Macedonia Rd.** ) | |
|     **Centreville, MS 39631;** ) | |
| ) | |
| **and** ) | |
| ) | |
| **ARTHUR "ART" STILL and his wife** ) | |
| **LIZBETH STILL** ) | |
|     **9813 Betsy Ross Ct.** ) | **Case No. 1316-CV30043** |
|     **Liberty, MO 64068;** ) | |
| ) | **Division 13** |
| **and** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **BARRY "DINO" HACKETT and his wife** ) | |
| **CYNTHIA HACKETT;** ) | |
|     **1152 Kearns-Hackett Rd.** ) | |
|     **Pleasant Garden, NC 27313** ) | |
| ) | |
| **and** ) | |
| ) | |
| **TODD MCNAIR and his wife** ) | |
| **LYNNETTE MCNAIR;** ) | |
|     **P.O. Box 4838** ) | |
|     **Glendale, CA 91222** ) | |
| ) | |
| **and** ) | |
| ) | |
| **FRED JONES** ) | |
|     **4764 Thompson Mill Rd.** ) | |
|     **Lithonia, GA 30038** ) | |
| ) | |
| **and** ) | |
| ) | |
| **TIM BARNETT and his wife** ) | |
| **CHELONDA BARNETT** ) | |
|     **7002 East 85th Terrace** ) | |
|     **Kansas City, MO 64138** ) | |
| ) | |
| **and** ) | |
| ) | |
| **WALKER LEE ASHLEY** ) | |
|     **622 Geranium Ave.** ) | |
|     **E. St. Paul, MN 55130** ) | |

Electronically Filed - Jackson - Independence - December 21, 2013 - 05:15 PM

ATTACHMENT A

```
                                    )
and                                 )
                                    )
EMILE HARRY and his wife            )
LORI HARRY                          )
        3224 E. 112th Terrace       )
        Kansas City, MO 64137       )
                                    )
and                                 )
                                    )
CHRIS SMITH and his wife            )
BILLIE SMITH                        )
        12888 S. Rene St.           )
        Olathe, KS 66062            )
                                    )
and                                 )
                                    )
ALEXANDER LOUIS COOPER              )
        705 Powers Ferry Rd #111    )
        Marietta, Georgia 30067;    )
                                    )
and                                 )
                                    )
LEONARD GRIFFIN and his wife        )
DAWN SAVITRA GRIFFIN                )
        799 Hwy 144                 )
        Calhoun, Louisiana 71225;   )
                                    )
and                                 )
                                    )
CHRISTOPHER MARTIN and his wife     )
YOLANDA THOMPSON-MARTIN             )
        1711 E. 60th St.            )
        Kansas City, MO 64110;      )
                                    )
and                                 )
                                    )
JOSEPH PHILLIPS                     )
        425 Barker Avenue           )
        Oregon City, Oregon 97045;  )
                                    )
and                                 )
                                    )
KEVIN PORTER and his wife           )
ANNJELA HYNES-PORTER                )
        20 Savannah Dr.             )
```

2

ATTACHMENT A

Electronically Filed - Jackson - Independence - December 21, 2013 - 06:15 PM

| | |
|---|---|
| Senoia, Georgia 30276 | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| KANSAS CITY CHIEFS | ) |
| FOOTBALL CLUB, INC. | ) |
| Serve at Registered Agent: | ) |
|     Seigfried Bingham Levy | ) |
|     Selzer & Gee, P.C. | ) |
|     911 Main Street, Suite 2800 | ) |
|     Kansas City MO 64105 | ) |
| | ) |
| Defendant. | ) |

**FIRST AMENDED PETITION**

COMES NOW Plaintiffs, and for their claims and causes of action against Defendant, upon information and belief, state:

**PLAINTIFFS**

1.     Plaintiff Albert Lewis is a resident of Mississippi. Mr. Lewis was employed as a professional football player with the Kansas City Chiefs between 1983 and 1994.

2.     Between September 1, 1987 and January 1993, Mr. Lewis suffered multiple concussive and subconcussive blows to the head which caused or contributed to cause a constellation of neurologic/brain harms, including post-concussion syndrome and traumatic brain injuries, such as Chronic Traumatic Encephalopathy.

3.     Defendant's wrongful conduct, as alleged herein, directly caused or directly contributed to cause Mr. Lewis to develop post-concussion syndrome and latent brain disease, including, upon information and belief, Chronic Traumatic Encephalopathy.

Electronically Filed - Jackson - Independence - December 21, 2013 - 05:15 PM

## ATTACHMENT A

4.      Plaintiffs Arthur "Art" Still and his wife Lizbeth Still are residents of Missouri. Mr. Still was employed as a professional football player with the Kansas City Chiefs between 1978 and 1987.

5.      Between September 1, 1987 and December 27, 1987, Mr. Still suffered multiple concussive and subconcussive blows to the head which caused or contributed to cause a constellation of neurologic/brain harms, including post-concussion syndrome and traumatic brain injuries, such as Chronic Traumatic Encephalopathy.

6.      Defendant's wrongful conduct, as alleged herein, directly caused or directly contributed to cause Mr. Still to develop post-concussion syndrome and latent brain disease, including, upon information and belief, Chronic Traumatic Encephalopathy.

7.      Plaintiffs Barry "Dino" Hackett and his wife Cynthia Hackett are residents of North Carolina. Mr. Hackett was employed as a professional football player with the Kansas City Chiefs between 1986 and 1993.

8.      Between September 1, 1987 and January 1993, Mr. Hackett suffered multiple concussive and subconcussive blows to the head which caused or contributed to cause a constellation of neurologic/brain harms, including post-concussion syndrome and traumatic brain injuries, such as Chronic Traumatic Encephalopathy.

9.      Defendant's wrongful conduct, as alleged herein, directly caused or directly contributed to cause Mr. Hackett to develop post-concussion syndrome and latent brain disease, including, upon information and belief, Chronic Traumatic Encephalopathy.

10.      Plaintiffs Todd McNair and his wife Lynnette McNair are residents of California. Mr. McNair was employed as a professional football player with the Kansas City Chiefs between 1989 and 1994 and in 1996.

Electronically Filed - Jackson - Independence - December 21, 2013 - 05:15 PM

ATTACHMENT A

11.     Between 1989 and January 1993, Mr. McNair suffered multiple concussive and subconcussive blows to the head which caused or contributed to cause a constellation of neurologic/brain harms, including post-concussion syndrome and traumatic brain injuries, such as Chronic Traumatic Encephalopathy.

12.     Defendant's wrongful conduct, as alleged herein, directly caused or directly contributed to cause Mr. McNair to develop post-concussion syndrome and latent brain disease, including, upon information and belief, Chronic Traumatic Encephalopathy.

13.     Plaintiff Walker Lee Ashley is a resident of Minnesota. Mr. Ashley was employed as a professional football player with the Kansas City Chiefs in 1989.

14.     Throughout 1989, Mr. Ashley suffered multiple concussive and subconcussive blows to the head which caused or contributed to cause a constellation of neurologic/brain harms, including post-concussion syndrome and traumatic brain injuries, such as Chronic Traumatic Encephalopathy.

15.     Defendant's wrongful conduct, as alleged herein, directly caused or directly contributed to cause Mr. Ashley to develop post-concussion syndrome and latent brain disease, including, upon information and belief, Chronic Traumatic Encephalopathy.

16.     Plaintiffs Tim Barnett and his wife Chelonda Barnett are residents of Missouri. Mr. Barnett was employed as a professional football player with the Kansas City Chiefs between 1991 and 1994.

17.     Between 1991 and January 1993, Mr. Barnett suffered multiple concussive and subconcussive blows to the head which caused or contributed to cause a constellation of neurologic/brain harms, including post-concussion syndrome and traumatic brain injuries, such as Chronic Traumatic Encephalopathy.

5

Electronically Filed - Jackson - Independence - December 21, 2013 - 05:15 PM

ATTACHMENT A

18.    Defendant's wrongful conduct, as alleged herein, directly caused or directly contributed to cause Mr. Barnett to develop post-concussion syndrome and latent brain disease, including, upon information and belief, Chronic Traumatic Encephalopathy.

19.    Plaintiffs Emile Harry and his wife Lori Harry are residents of Missouri. Mr. Harry was employed as a professional football player with the Kansas City Chiefs between 1986 and 1992.

20.    Between September 1, 1987 and January 1993, Mr. Harry suffered multiple concussive and subconcussive blows to the head which caused or contributed to cause a constellation of neurologic/brain harms, including post-concussion syndrome and traumatic brain injuries, such as Chronic Traumatic Encephalopathy.

21.    Defendant's wrongful conduct, as alleged herein, directly caused or directly contributed to cause Mr. Harry to develop post-concussion syndrome and latent brain disease, including, upon information and belief, Chronic Traumatic Encephalopathy.

22.    Plaintiff Fred Jones is a resident of Georgia. Mr. Jones was employed as a professional football player with the Kansas City Chiefs between 1990 and 1993.

23.    Between 1990 and January 1993, Mr. Jones suffered multiple concussive and subconcussive blows to the head which caused or contributed to cause a constellation of neurologic/brain harms, including post-concussion syndrome and traumatic brain injuries, such as Chronic Traumatic Encephalopathy.

24.    Defendant's wrongful conduct, as alleged herein, directly caused or directly contributed to cause Mr. Jones to develop post-concussion syndrome and latent brain disease, including, upon information and belief, Chronic Traumatic Encephalopathy.

Electronically Filed - Jackson - Independence - December 21, 2013 - 05:15 PM

ATTACHMENT A

25.     Plaintiffs Christopher Smith and his wife Billie Smith are residents of Kansas. Mr. Smith was employed as a professional football player with the Kansas City Chiefs at various times between 1986 and 1987.

26.     Between September 1, 1987 and October 18, 1987, Mr. Smith suffered multiple concussive and subconcussive blows to the head which caused or contributed to cause a constellation of neurologic/brain harms, including post-concussion syndrome and traumatic brain injuries, such as Chronic Traumatic Encephalopathy.

27.     Defendant's wrongful conduct, as alleged herein, directly caused or directly contributed to cause Mr. Smith to develop post-concussion syndrome and latent brain disease, including, upon information and belief, Chronic Traumatic Encephalopathy.

28.     Alexander Louis Cooper is a resident of Georgia. Mr. Cooper was employed as a professional football player with the Kansas City Chiefs between 1985 and 1991.

29.     Between September 1, 1987 and January 1991, Mr. Cooper suffered multiple concussive and subconcussive blows to the head which caused or contributed to cause a constellation of neurologic/brain harms, including post-concussion syndrome and traumatic brain injuries, such as Chronic Traumatic Encephalopathy.

30.     Defendant's wrongful conduct, as alleged herein, directly caused or directly contributed to cause Mr. Cooper to develop post-concussion syndrome and latent brain disease, including, upon information and belief, Chronic Traumatic Encephalopathy.

31.     Plaintiff Leonard Griffin and his wife Dawn Savitra Griffin are residents of Louisiana. Mr. Griffin was employed as a professional football player with the Kansas City Chiefs between 1986 and 1993.

Electronically Filed - Jackson - Independence - December 21, 2013 - 05:15 PM

ATTACHMENT A

32.     Between September 1, 1987 and January 1993, Mr. Griffin suffered multiple concussive and subconcussive blows to the head which caused or contributed to cause a constellation of neurologic/brain harms, including post-concussion syndrome and traumatic brain injuries, such as Chronic Traumatic Encephalopathy.

33.     Defendant's wrongful conduct, as alleged herein, directly caused or directly contributed to cause Mr. Griffin to develop post-concussion syndrome and latent brain disease, including, upon information and belief, Chronic Traumatic Encephalopathy.

34.     Plaintiffs Christopher Martin and his wife Yolanda Thompson-Martin are residents of Missouri. Mr. Martin was employed as a professional football player with the Kansas City Chiefs between 1988 and 1993.

35.     Between 1988 and January 1993, Mr. Martin suffered multiple concussive and subconcussive blows to the head which caused or contributed to cause a constellation of neurologic/brain harms, including post-concussion syndrome and traumatic brain injuries, such as Chronic Traumatic Encephalopathy.

36.     Defendant's wrongful conduct, as alleged herein, directly caused or directly contributed to cause Mr. Martin to develop post-concussion syndrome and latent brain disease, including, upon information and belief, Chronic Traumatic Encephalopathy.

37.     Plaintiff Joseph Phillips is a resident of Oregon. Mr. Phillips was employed as a professional football player with the Kansas City Chiefs between 1992 and 1998.

38.     Between 1992 and January 1993, Mr. Phillips suffered multiple concussive and subconcussive blows to the head which caused or contributed to cause a constellation of neurologic/brain harms, including post-concussion syndrome and traumatic brain injuries, such as Chronic Traumatic Encephalopathy.

Electronically Filed - Jackson - Independence - December 21, 2013 - 05:15 PM

ATTACHMENT A

39.     Defendant's wrongful conduct, as alleged herein, directly caused or directly contributed to cause Mr. Phillips to develop post-concussion syndrome and latent brain disease, including, upon information and belief, Chronic Traumatic Encephalopathy.

40.     Plaintiff Kevin Porter and his wife Annjela Hynes-Porter are residents of Georgia. Mr. Porter was employed as a professional football player with the Kansas City Chiefs between 1988 and 1993.

41.     Between 1988 and January 1993, Mr. Porter suffered multiple concussive and subconcussive blows to the head which caused or contributed to cause a constellation of neurologic/brain harms, including post-concussion syndrome and traumatic brain injuries, such as Chronic Traumatic Encephalopathy.

42.     Defendant's wrongful conduct, as alleged herein, directly caused or directly contributed to cause Mr. Porter to develop post-concussion syndrome and latent brain disease, including, upon information and belief, Chronic Traumatic Encephalopathy.

**DEFENDANT**

43.     Defendant Kansas City Chiefs Football Club, Inc. is a Texas corporation with its principal place of business at One Arrowhead Drive, Kansas City, 64129, Jackson County, Missouri. At all times relevant herein, Defendant Kansas City Chiefs was Plaintiffs' employer. Defendant is a member of the National Football League ("NFL"), which is an unincorporated association consisting of 32 separately owned and independently operated professional football teams.

**JURISDICTION**

44.     Jurisdiction is proper in this Court pursuant to R.S. Mo. 506.500 in that the tortious acts alleged herein took place in Missouri.

9

ATTACHMENT A

Electronically Filed - Jackson - Independence - December 21, 2013 - 05:15 PM

45.     This is an action requesting relief under the common and statutory laws of the State of Missouri. Between September 1, 1987 and March 28, 1993, the relevant time period of Plaintiffs' injuries and claims, there was no collective bargaining agreement (CBA) in effect. Because federal labor law is not applicable to Plaintiffs' claims, and no interpretation of a CBA is required, section 301 of the Labor Management Relations Act cannot provide a basis for federal jurisdiction.

46.     Plaintiffs' claims do not arise out of an "accident," as that term is defined under Missouri's Workers' Compensation Law. Plaintiffs' occupational disease-related claims were not caused by a specific event during a single work shift injury.

47.     Plaintiffs' claims are not within the scope of workers' compensation and they are not subject to the exclusivity provisions of workers' compensation.

**VENUE**

48.     Venue is proper with this Court pursuant to § 508.010. Upon information and belief, Plaintiffs were first injured by the wrongful acts and negligent conduct alleged herein in Jackson County, Missouri.

**JOINDER OF CLAIMS**

49.     Joinder of Plaintiffs' claims are permissible pursuant to Rule 52.05(a) in that the claims alleged herein arise out of the same series of occurrences and involve common questions of law and fact.

Electronically Filed - Jackson - Independence - December 21, 2013 - 05:15 PM

ATTACHMENT A

## TOLLING

50.     Plaintiffs' membership in the putative class action currently pending in the Eastern District of Pennsylvania[1] tolled the running of the applicable statute of limitations. In addition, Defendant's fraudulent concealment of its bad acts as alleged herein prevented Plaintiffs from ascertaining the existence of these causes of action and their latent injuries, including a diagnosis of post-concussion syndrome and CTE.

## GENERAL ALLEGATIONS

51.     Defendant has known or should have known that since 1966 the Congress of Neurological Surgeons defined a concussion as a "clinical syndrome characterized by immediate and transient impairment of neural functions, such as alteration of consciousness, disturbance of vision, equilibrium, etc. due to mechanical forces." Defendant marginalized the risks of brain injuries and regularly referred to concussions as "getting your bell rung" or a "ding."

52.     Defendant exacerbated Plaintiffs' risk of exposure to brain trauma by regularly returning concussed players to play. Defendant fostered a draconian working environment where Plaintiffs were forced to play through brain injuries. On multiple occasions, Defendant increased the dangers of the working environment by giving Plaintiffs ammonia inhalants, caffeine cocktails and/or Toradol to abbreviate the need for concussed employees to miss working time due to a brain injury.

53.     Similarly, in order to reduce operating expenses, Defendant increased the risk of exposure to head trauma by installing AstroTurf (i.e. carpeted concrete). Multiple studies have

---

[1] *In re NFL Players' Concussion Injury Litigation,* No. 2:12-md-02323-AB; *See also*, *Charles Ray Easterling, et al v. NFL*, No. 11-cv-0509 (filed August 17, 2011).

Electronically Filed - Jackson - Independence - December 21, 2013 - 05:15 PM

ATTACHMENT A

concluded that there is a "statistically significant difference" between the injury rates on AstroTurf and grass.[2]

54.     AstroTurf significantly increased the risk of exposure to head trauma in the following ways. First, AstroTurf increases the speed of play, which in turn reduces a player's chance to prepare for a violent hit to the head or body. On grass, the game is slower which allows a player to absorb hits by tensing up his muscles prior to a collision. Second, when a player's body slams down on concrete-like AstroTurf, the hard ground is incapable of absorbing the shock. Instead, the shock takes place in a player's head, causing the brain to violently rattle against the skull. On grass, however, the organic padding of the grass and soil provides for natural shock absorption.

55.     Despite there being a clear and much safer alternative (i.e. grass), Defendant provided a working environment that it knew was unreasonably dangerous and unnecessarily increased the risk of exposure.  The primary reasons being: (1) it was cheaper and (2) the speed of the game was faster, which heightened the violence of the game, which in turn, increased the fans' attraction, and thereby significantly boosted the Defendant's revenue.

56.     Defendant has known or should have known for many years that post-concussion syndrome (PCS) and cognitive impairment occurs in football players. PCS is defined by the fourth edition of the *Diagnostic and Statistics Manual* as (1) cognitive deficits in attention or memory and (2) at least 3 or more of the following symptoms: fatigue, sleep disturbance, headache, dizziness, irritability, affective disturbance, apathy, or personality change. Similarly, the World Health Organization's International Classification of Diseases (ICD-10) defines PCS

---

[2] See, e.g. Powell JW, Schootman M: A multivariate risk analysis of selected playing surfaces in the National Football League: 1980 to 1989. American Journal of Sports Medicine 6:686-694, 1992.

Electronically Filed - Jackson - Independence - December 21, 2013 - 05:15 PM

ATTACHMENT A

as involving 3 or more of the following symptoms: headaches, dizziness, fatigue, irritability, insomnia, concentration difficulty, or memory difficulty.

57.     For decades, the scientific community has known that repetitive head trauma can lead to permanent and debilitating neurological impairments, including Chronic Traumatic Encephalopathy ("CTE").

58.     Defendant has known or should have known for many years that CTE is found in athletes, including football players and boxers, with a history of repetitive head trauma. Published papers, easily accessible to Defendant, have shown that this condition is prevalent in boxers and retired professional football players who have a history of head injuries. The changes in the brain begin when the brain is subjected to repetitive trauma, but symptoms may not appear until months, years, or even decades after the last traumatic impact or the end of athletic involvement.

59.     In 1928, pathologist Harrison Martland first described the link between repetitive head trauma and degenerative brain disease as the "punch drunk syndrome" in the *Journal of the American Medical Association*.

60.     In 1934, Dr. Harry Parker published a study confirming Martland's findings and argued that neurological degeneration in boxers was based on the volume of brain trauma sustained. He further opined, "the frequency of occurrence of conditions of this kind as reported by…people who followed the profession of pugilism makes it seem very likely that [the patients'] profession led to their ultimate disablement…."

61.     On December 29, 1937, at the Seventeenth Annual Meeting of the American Football Coaches Association, the football community acknowledged its keen awareness of the

ATTACHMENT A

Electronically Filed - Jackson - Independence - December 21, 2013 - 05:15 PM

serious risks of concussions, and the necessity of removing an individual from play if they have suffered a concussion:

> During the past seven years the practice has been too prevalent of allowing players to continue playing after a concussion. Again this year this is true….Sports demanding personal contact should be eliminated after an individual has suffered one concussion.

62.     In 1937, J.A. Millspaugh introduced the term dementia pugilistica to describe the syndrome characterized by motor deficits and mental confusion in boxers. Millspaugh also noted that the disease is likely not limited to boxers but could extend to other sports where repetitive brain trauma is present: "The mental unbalance more commonly encountered among pugilists is also observed among other sports representatives who sustain considerable head trauma." He further opined, "[r]epeat and frequent concussions…are, to say the least, not conducive to stabilized mental equilibrium."

63.     In 1949, British neurologist Macdonald Critchley published the first of two important studies on head trauma in boxers. In *Punch Drunk Syndrome: The Chronic Traumatic Encephalophathy of Boxers*, Critchley described the latent effects of repetitive brain trauma, explaining that the condition was generally not observable until a number of years had passed since the onset of boxing. In 1957, Critchley published an article in the *British Medical Journal* and described the symptoms of "chronic progressive traumatic encephalopathy" to include "progressive slowing of speech and thoughts…slowness of movement, and tremors." Critchley further noted that brain damage produced by repetitive trauma could lead to personality changes, and that the effects of chronic head trauma are dependent on the volume of impacts as well as the magnitude of those events.

64.     Over the next several decades, the evidence of the link between repetitive head trauma and neurological diseases was overwhelmingly clear. Numerous studies were published

ATTACHMENT A

Electronically Filed - Jackson - Independence - December 21, 2013 - 05:15 PM

in medical journals including the *Journal of the American Medical Association, Neurology, Lancet,* the *New England Journal of Medicine* and *Physician and Sports Medicine* warning of the dangers of single concussions, multiple concussions, and/or football-related head trauma from multiple concussions. These studies collectively established:

> repetitive head trauma in contact sports, including boxing and football, has potential dangerous long-term effects on brain function;
>
> encephalopathy is caused in boxers, steeplechasers and football players by repeated sub-concussive and concussive blows to the head;
>
> acceleration and rapid decelerations of the head that results in brief loss of consciousness in primates also results in a tearing of the axons (brain cells) within the brainstem;
>
> immediate retrograde amnesia occurs following concussions;
>
> mild head injury requires recovery time without risk of subjection to further injury;
>
> a football player who suffers a concussion requires significant rest before being subjected to further contact; and,
>
> minor head trauma can lead to neuropathological and neurophysiological alterations, including neuronal damage, reduced cerebral blood flow, altered brainstem evoked potentials and reduced speed of information processing.

65. Although the condition now known as CTE has been discussed widely in the medical literature for more than eight decades, it was not until 2002 that CTE was officially diagnosed post-mortem in professional football players. Upon information and belief, this late finding was due to the Defendant's and its agents' concerted effort to conceal the link between repetitive head trauma in football and neurological diseases. Since 2002, more than 90% of all former players that have been examined post-mortem exhibited pathological symptoms consistent with CTE. The leading neuropathologist studying CTE, Dr. Ann McKee, believes that it is more likely than not that every single NFL player has some level of CTE.

Electronically Filed - Jackson - Independence - December 21, 2013 - 05:15 PM

ATTACHMENT A

66.     The first professional football player to be diagnosed with CTE was a former Kansas City Chiefs player, Mike Webster. Webster played 17 years—his final two (1989 and 1990) with the Chiefs—in the NFL and tragically died only 12 years after retirement at the age of 50. During the latter part of his life, and while serving on Defendant's coaching staff, Webster manifested progressive symptoms and signs of cognitive and neuropsychiatric impairment consistent with CTE.

67.     Research suggests that CTE may have been the true primary cause of death for a majority of professional football players that died as a result of neurodegenerative diseases. Accordingly, it is likely that the rate of CTE in professional football players is significantly higher than once believed.

68.     The clinical manifestations of CTE are quite variable but can include a number of stages. In the first stage, former players experience headaches, short-term memory difficulties, aggressive tendencies, depression and impulse control. In the second stage, as the disease progresses, the symptoms include depression, mode lability, explosivity, poor judgment, loss of attention and concentration, executive dysfunction, impulsivity, language difficulties and suicidal ideations. In the third stage, cognitive impairment becomes much more rampant, depression worsens and mood swings become more violent, severe memory loss occurs, and motor neuron disease may develop. Finally, in the fourth stage, full-blown encephalopathy sets in, causing severe memory loss with dementia, executive dysfunction, language difficulties, explosivity, paranoia, gait and increased suicidal ideations. In the latter stages of CTE, the symptoms are consistent with Parkinsonism and end-stage dementia.

69.     The National Institute for Occupational Safety and Health recently issued a warning letter—since the Defendant failed to do so—to all former NFL players that played at

Electronically Filed - Jackson - Independence - December 21, 2013 - 05:15 PM

ATTACHMENT A

least five seasons during 1959 to 1988, stating: due to the exposure of repetitive mild traumatic brain injuries the "risk of dying with a brain or nervous system disorder was more than 3 times higher among players." The warning letter went on to conclude that this study confirms a similar study that was done "*years*" ago. Further evidencing the campaign of deception and concealment, prior to the dissemination of this warning letter, a member of the NFL's Head, Neck and Spine Committee sought to remove any mention of CTE.

70.     To date, more than fifty-two former NFL players have been diagnosed post-mortem with CTE. In addition, at least eight living players have been diagnosed with CTE based on clinical evaluations and radioactive markers.

71.     Despite the substantial body of independent scientific studies directly linking repetitive head trauma in football and neurological diseases, including CTE, Defendant never warned Plaintiffs and instead willfully misrepresented and/or concealed the risks.

72.     As the purveyor of football in America, and as the leading expert in the field, Defendant owed a continuous duty to keep abreast of the scientific developments relating to brain trauma which its employees were regularly exposed, and it was required to notify, inform and educate Plaintiffs and the public of any potential long-term risks of repetitive head trauma.

73.     The Defendant's duty to warn was commensurate not only with its actual knowledge gained from its "research" and published studies but also with its constructive knowledge as measured by scientific literature and other available means of communication.

74.     Upon information and belief, Defendant knew or should have known of the devastating nature and long-term effects of concussive and sub-concussive injuries long before Plaintiffs were exposed to repetitive brain trauma. Defendant had or should have had knowledge of studies that demonstrated a positive link between repetitive head trauma and neurological

Electronically Filed - Jackson - Independence - December 21, 2013 - 05:15 PM

ATTACHMENT A

diseases in the 1920s, 1930s, 1940s, 1950s, 1960s, 1970s, 1980s, and 1990s. During those decades, Defendant's knowledge about the hazards of repetitive head trauma continued to accumulate, yet Defendant failed to warn Plaintiffs about those hazards.

**COUNT I**
**NEGLIGENCE**

75. Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 74 as if fully set forth herein.

76. Defendant had a common law duty, separate and independent of any CBA, to use ordinary care to make its work environment reasonably safe.

77. Defendant owed a non-delegable and non-negotiable duty to maintain a safe working environment, a duty not to expose Plaintiffs to unreasonable risks of harm, a duty to warn employees about the existence of dangers, including latent neurologic diseases, of which they could not reasonably be expected to be aware, and a duty to exercise reasonable care so as not to expose its employees, including Plaintiffs, to unreasonable risk of injury.

78. Between September 1, 1987 and March 28, 1993, Defendant failed to use due care under the circumstances, and was thereby negligent in the performance of its non-delegable and non-negotiable duties.

79. Between September 1, 1987 and March 28, 1993, Defendant by its respective active and passive negligence failed to exercise the standard of care and skill it was obligated to exercise by reason of its relationship with Plaintiffs, undertakings and assumption of a duty thereby causing, creating or permitting an increased risk of exposure to repetitive brain trauma, and thereby failing to properly safeguard and warn Plaintiffs.

Electronically Filed - Jackson - Independence - December 21, 2013 - 05:15 PM

ATTACHMENT A

80.     Such negligence directly caused or directly contributed to cause Plaintiffs to suffer from severe and persistent headaches, post-concussion syndrome, depression, mood swings, explosivity, suicidal ideations, and, upon information and belief, CTE.

81.     The conduct of Defendant as alleged herein was willful, wanton and/or in reckless disregard for the rights of Plaintiffs and punitive and exemplary damages should be assessed against Defendant.

WHEREFORE, Plaintiffs pray judgment against Defendant in excess of Fifteen Thousand Dollars ($15,000.00) for actual damages, punitive damages, for the costs of this action, and for such relief as the Court deems fair and reasonable.

## COUNT II
## NEGLIGENT MISREPRESENTATION

82.     To the extent they are not inconsistent with the allegations in this Count, Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 81 as if fully set forth herein.

83.     Defendant had a common law duty, separate and independent of any CBA, to use ordinary care to make its work environment reasonably safe.

84.     Defendant owed a non-delegable and non-negotiable duty to maintain a safe working environment, a duty not to expose Plaintiffs to unreasonable risks of harm, a duty to warn employees about the existence of dangers, including latent neurologic diseases, of which employees could not reasonably be expected to be aware, and a duty to exercise reasonable care so as not to expose Plaintiffs to unreasonable risk of injury.

85.     Between September 1, 1987 and March 28, 1993, Defendant and its agents represented to Plaintiffs that concussions are not a serious injury.

19

ATTACHMENT A

Electronically Filed - Jackson - Independence - December 21, 2013 - 05:15 PM

86.     Between September 1, 1987 and March 28, 1993, Defendant and its agents represented to Plaintiffs that there are no long-term effects of concussions in NFL athletes.

87.     When Defendant and its agents made these representations to Plaintiffs, the representations were driven by profit motives so that Plaintiffs would continue to play unimpeded by the risks of latent neurological diseases.

88.     Between September 1, 1987 and March 28, 1993, Defendant failed to exercise reasonable care and competence when communicating this information, and as a result, the information presented to Plaintiffs was false and misleading.

89.     Plaintiffs justifiably relied upon this information since Defendant was in a superior position of knowledge and Defendant could foresee that Plaintiffs would rely and intended that they do so.

90.     Defendant's negligent misrepresentations directly caused or directly contributed to cause Plaintiffs to suffer from severe and persistent headaches, post-concussion syndrome, depression, mood swings, explosivity, suicidal ideations, and, upon information and belief, CTE.

91.     The conduct of Defendant as alleged herein was willful, wanton and/or in reckless disregard for the rights of Plaintiff and punitive and exemplary damages should be assessed against the Defendant.

WHEREFORE, Plaintiffs pray judgment against Defendant in excess of Fifteen Thousand Dollars ($15,000.00) for actual damages, punitive damages, for the costs of this action, and for such relief as the Court deems fair and reasonable.

Electronically Filed - Jackson - Independence - December 21, 2013 - 05:15 PM

ATTACHMENT A

## COUNT III
## FRAUDULENT CONCEALMENT

92.     To the extent they are not inconsistent with the allegations in this Count, Plaintiffs incorporate by reference the allegations set forth in Paragraphs 1 through 91 as if fully set forth herein.

93.     At all relevant times hereto, Defendant was in a position of superior knowledge, which was not within the fair and reasonable reach of the Plaintiffs, nor would it have been discovered through the exercise of Plaintiffs' ordinary diligence.

94.     Between September 1, 1987 and March 28, 1993, Defendant knew that repetitive head trauma in football created a risk of neurological diseases.

95.     Between September 1, 1987 and March 28, 1993, Defendant was aware of, knew and understood the significance of the published medical literature dating from as early as the 1920s that there is a serious risk of short-term and long-term brain injury associated with repetitive head trauma in football, to which Plaintiffs were exposed.

96.     Between September 1, 1987 and March 28, 1993, Defendant had a duty, separate and independent of any CBA, to disclose and/or inform Plaintiffs about these risks.

97.     Between September 1, 1987 and March 28, 1993, Defendant knew that such information was material to Plaintiffs, and knew that Plaintiffs would rely upon it for accurate information.

98.     Between September 1, 1987 and March 28, 1993, Defendant knowingly and fraudulently concealed from Plaintiffs the risks of repetitive head trauma, including the risk of latent brain disease, intending that Plaintiffs would rely upon such concealment.

99.     Between September 1, 1987 and March 28, 1993, Plaintiffs relied upon the Defendant's inaccurate and misleading information.

Electronically Filed - Jackson - Independence - December 21, 2013 - 05:15 PM

ATTACHMENT A

100.    Defendant's fraudulent concealment directly caused or directly contributed to cause Plaintiffs to suffer from severe and persistent headaches, post-concussion syndrome, depression, mood swings, explosivity, suicidal ideations, and, upon information and belief, CTE.

101.    The conduct of Defendant as alleged herein was willful, wanton and/or in reckless disregard for the rights of Plaintiff and punitive and exemplary damages should be assessed against Defendant.

WHEREFORE, Plaintiffs pray judgment against Defendant in excess of Fifteen Thousand Dollars ($15,000.00) for actual damages, punitive damages, for the costs of this action, and for such relief as the Court deems fair and reasonable.

## COUNT IV
## LOSS OF CONSORTIUM

102.    To the extent they are not inconsistent with the allegations in this Count, Plaintiffs-Spouses incorporate by reference the allegations set forth in Paragraphs 1 through 101 as if fully set forth herein.

103.    As a result of Defendant's misconduct as alleged herein, Defendant is liable to the Plaintiffs-Spouses.

104.    As a direct and proximate result of the carelessness, negligence, and recklessness of Defendant and of the aforesaid injuries to their husbands, the Plaintiffs-Spouses have been damaged as follows:

a.    They have been and will continue to be deprived of the services, support, maintenance, guidance, companionship and comfort of their husbands;

b.    They have been and will continue to be required to spend money for medical care and household care for the treatment of their husbands; and

Electronically Filed - Jackson - Independence - December 21, 2013 - 05:15 PM

ATTACHMENT A

c.  They have been and will continue to be deprived of the earnings of their husbands.

105.    The conduct of the Defendant as alleged herein was willful, wanton and/or in reckless disregard for the rights of Plaintiffs-Spouses and punitive and exemplary damages should be assessed against Defendant.

WHEREFORE, Plaintiffs-Spouses pray for judgment against Defendant in excess of Fifteen Thousand Dollars ($15,000.00) for actual damages, punitive damages, for the costs of this action, and for such relief as the Court deems fair and reasonable.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues in this matter.

/s/ Kenneth B. McClain
HUMPHREY, FARRINGTON & McCLAIN, P.C.
Kenneth B. McClain,                    #32430
Lauren E. McClain                      #65016
Timothy J. Kingsbury                   #64958
221 West Lexington, Suite 400
Independence, MO 64051
Telephone: (816) 836-5050
Facsimile: (816) 836-8966
kbm@hfmlegal.com

THE KLAMANN LAW FIRM, P.A.
John M. Klamann, MO                    #29335
Andrew Schermerhorn, MO                #62101
Paul D. Anderson, MO                   #65354
The Klamann Law Firm
929 Walnut Street, Suite 800
Kansas City, MO 64106
Telephone: (816) 421-2626
Facsimile:  (816) 421-8686
jklamann@klamannlaw.com
aschermerhorn@klamannlaw.com
panderson@klamannlaw.com

THE POPHAM LAW FIRM, P.C.
Wm. Dirk Vandever, MO                   #24463

Electronically Filed - Jackson - Independence - December 21, 2013 - 06:15 PM

# ATTACHMENT A

712 Broadway, Suite 100
Kansas City, MO 64105
Telephone: (816) 221-2288
Facsimile:  (816) 221-3999
dvandever@pophamlaw.com

**ATTORNEYS FOR PLAINTIFFS**

ATTACHMENT A

Electronically Filed - Jackson - Independence - December 21, 2013 - 05:15 PM

**<u>CERTIFICATE OF SERVICE</u>**

I certify that a copy of the above-foregoing document was sent the 23rd day of December, 2013, *via* email and U.S. Mail to all parties named below:

      /s/ Kenneth B. McClain        
Counsel for Plaintiffs

Douglas R. Dalgleish
David T.M. Powell
Lathrop & Gage, LLP.
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108-2618
Telephone: (816) 292-2000
Facsimile: (816) 292-2001
ddalgleish@lathropgage.com
dpowell@lathropgage
**ATTORNEYS FOR KANSAS CITY CHIEFS
FOOTBALL CLUB, INC.**