# SEEGER WEISS LLP

77 Water Street, New York, NY 10005    P 212.584.0700    F 212.584.0799    www.seegerweiss.com

July 25, 2017

By ECF

Honorable Loretta A. Preska
United States District Judge
Southern District of New York
Daniel Patrick Moynihan
      United States Courthouse
500 Pearl Street, Room 2220
White Plains, NY 10007

Re: *Consumer Fin. Protection Bureau v. RD Legal Funding, LLC*
No. 1:17-cv-00890 (LAP)

Dear Judge Preska:

Pursuant to the Court's Individual Practices, the undersigned Co-Lead Class Counsel ("Class Counsel") for the more than 20,000-member plaintiff settlement class certified in the multidistrict *In re National Football League Players' Concussion Injury Litigation*, No. 2:12-MD-02323-AB (E.D. Pa.) ("*NFL Concussion Litigation*") respectfully submits this letter to request either a pre-motion conference antecedent to the filing of a short amicus curiae memorandum by the plaintiff settlement class in opposition to Defendants' motion to dismiss Plaintiffs' complaint or, alternatively, that the Court waive a formal pre-motion conference and treat the instant letter as a motion for leave to file an amicus curiae memorandum given the straightforward nature of the requested relief (amicus curiae participation).

Class Counsel for the *NFL Concussion Litigation* settlement class recently became aware of this suit and, specifically, that Defendants have advanced funds to at least seven members of that settlement class on the basis of those individuals' anticipated monetary awards under the settlement, and that Defendants have moved to dismiss Plaintiffs' complaint (which alleges violations of sundry federal and state laws governing lending practices) as it specifically concerns the funds advanced to those class members on the grounds that these were not really loans (and hence not subject to the federal and state laws pursuant to which Plaintiffs have filed suit. Instead, Defendants contend that they purchased (and thus received assignments of) the class members' anticipated monetary awards or portions of those expected awards (which they did at steep discounts of fifty percent or more). Defendants maintain that assignments of

New York                Newark                Philadelphia

Honorable Loretta A. Preska
July 25, 2017
Page | 2

settlement awards are permitted under *NFL Concussion Litigation* settlement. *See* ECF No. 40 (Mem. of Law in Support of Defs.' Mot. to Dismiss) at 32-33; ECF No. 37 (Reply in Support of Defs.' Mot. to Dismiss) at 6-7.

Given Defendants' assertion of this defense, the proposed amicus curiae plaintiff settlement class ("Amicus") wishes to submit a memorandum of less than 10 full pages to address Defendants' flawed interpretation of the Settlement Agreement, which prohibits assignments. Amicus has a strong interest in ensuring that class members are protected from exploitation. Many of them are quite vulnerable to manipulation because they suffer from Alzheimer's Disease or sundry other neurocognitive ailments; are in many cases of advanced age (having last played in the NFL decades ago); are in difficult financial straits; or are affected by a combination of these circumstances. A judicial validation of Defendants' flawed interpretation could have serious repercussions for the class, potentially exposing countless other class members to similar predatory lending practices, whether by these Defendants or by other lenders.

As discussed at greater length in the proposed memorandum ("Mem."), Defendants' arguments that the settlement agreement does not prohibit assignments fail under the express terms of the agreement and fundamental principles of contract construction. *First*, the settlement agreement contains an express bar (section 30.1) against assignments. Mem., Argument, Point II. *Second*, Defendants' argument that this provision bars only the assignment of legal claims asserted in the underlying class action complaint, not monetary awards, contravenes fundamental rules of contract interpretation in that their reading would render the anti-assignment provision meaningless inasmuch as the settlement agreement elsewhere *releases* all of class members' claims, and their interpretation would additionally yield an absurd result in that section 30.1 forbids the Claims Administrator from recognizing assignments and plainly it is not for the Claims Administrator to adjudicate legal claims. *Id.*

Additionally, Defendants' ascribing significance to the fact that the anti-assignment provision mentions only the underlying class complaint whereas two other provisions mention the settlement agreement is unavailing. By their very nature, those provisions – respectively, a statement that the settlement will not be subject to rescission or modification in the event of changes in law or facts, and an integration provision – would have no reason to mention the complaint. *Id.*

In the alternative, the Court should refer the discrete question of whether the settlement agreement prohibits assignments of class members' monetary awards to the district court presiding over the *NFL Concussion Litigation* for it to answer. Doing so would spare this Court from having to expend its own resources by having the question taken up by the court that has presided over that multidistrict litigation ("MDL") for over five years now and which is now actively overseeing the implementation of the class action settlement. The Court can refer this question pursuant to its inherent authority to manage its docket. Referral of this discrete question would not require a transfer of this action or any portion of it. Moreover, by referring this question to Judge Brody, the Court would ensure uniformity of adjudication in that there would be a single up-or-

Honorable Loretta A. Preska
July 25, 2017
Page | 3

down ruling that will apply not only to the Defendants in this action but also to other potential lenders to class members who might assert the same defense, thereby avoiding the need for courts to adjudicate this issue anew in individual cases. Finally, referring this question would promote two of the major objectives of the MDL statute, 28 U.S.C. § 1407, which is to ensure uniformity of adjudication and conservation of judicial resources. Mem., Argument, Point III.

In the interest of expediting the Court's consideration of our application, a copy of the proposed amicus memorandum is annexed as an Addendum to this letter. We have contacted counsel for the parties concerning our proposed amicus curiae participation. Plaintiffs have advised us that they consent, but Defendants do not consent. Defendants, though, would not be prejudiced by this proposed filing because the briefing of their motion to dismiss was completed less than a month ago and no date for oral argument on their motion has yet been set. Moreover, the proposed memorandum runs to less than 10 full pages and, if the Court forgoes a pre-motion conference and permits the immediate filing of the memorandum, its filing would not unduly prolong the adjudication of Defendants' motion to dismiss even if, as one assumes, that Defendants will request leave to file a response to the memorandum.

Finally, in accordance with the Court's Individual Practices, Defendants are hereby advised that their response to this pre-motion letter is due by this Friday, July 28, 2017.

We thank the Court for its consideration of this request.

Respectfully,

_ /s/ Christopher A. Seeger_

Christopher A. Seeger

Addendum (proposed amicus curiae memorandum)

cc:     All Counsel of Record (via ECF)
        (w/ Addendum)

33000-699

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU and THE PEOPLE OF THE STATE OF NEW YORK, BY ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL FOR THE STATE OF NEW YORK, <br><br> Plaintiffs, <br><br> v. <br><br> RD LEGAL FUNDING, LLC; RD LEGAL FINANCE, LLC; RD LEGAL FUNDING PARTNERS, LP; and RONI DERSOVITZ, <br><br> Defendants. | No. 1:17-cv-00890 (LAP) <br><br> ECF Case |

**[PROPOSED]**

**MEMORANDUM OF LAW OF AMICUS CURIAE PLAINTIFF SETTLEMENT CLASS IN *IN RE NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION*, NO. 2:12-MD-02323 (E.D. PA.), IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

Christopher A. Seeger
(cseeger@seegerweiss.com)
Diogenes P. Kekatos
(dkekatos@seegerweiss.com)
SEEGER WEISS LLP
77 Water Street, 26th Floor
New York, NY 10005
Telephone: (212) 584-0700

TerriAnne Benedetto
(tbenedetto@seegerweiss.com)
SEEGER WEISS LLP
1515 Market Street
Philadelphia, PA 19102
Telephone: (212) 564-2300

*Counsel for Proposed Amicus Curiae*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ i

INTRODUCTION AND STATEMENT OF INTEREST ............................................................ 1

ARGUMENT ............................................................................................................................... 3

I.      PROPOSED AMICUS CURIAE SHOULD BE GRANTED LEAVE TO FILE THE
INSTANT MEMORANDUM ...................................................................................... 3

II.     THE MULTIDISTRICT NFL CONCUSSION LITIGATION CLASS SETTLEMENT
AGREEMENT BARS ASSIGNMENTS OF BENEFITS ............................................. 4

III.    ALTERNATIVELY, THE COURT SHOULD REFER THE ASSIGNABILITY
QUESTION TO THE *NFL CONCUSSION LITIGATION* COURT .............................................. 8

CONCLUSION ............................................................................................................................ 10

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Pages**

*Audino v. Lincoln First Bank of Rochester*,
   481 N.Y.S.2d 928 (App. Div. 4th Dep't 1984) ........................................................................ 6

*Bailes v. Lineage Logistics, LLC*,
   No. 15-CV-02457-DDC-TJJ, 2016 WL 4415356 (D. Kan. Aug. 19, 2016) .............................. 7

*CDX Diagnostics, Inc. v. U.S. Endoscopy Group, Inc.*,
   No. 13-CV-05669 NSR, 2014 WL 2854656 (S.D.N.Y. June 20, 2014) ................................... 8

*Grider v. Keystone Health Plan Central, Inc.*,
   500 F.3d 322 (3d Cir. 2007) .................................................................................................... 9

*Illinois Municiapl Retirement Fund v. Citigroup, Inc.*,
   391 F.3d 844 (7th Cir. 2004) ................................................................................................... 9

*In re Career Academy Antitrust Litigation*,
   57 F.R.D. 569 (E.D. Wis. 1972) ............................................................................................ 10

*In re Long Distance Telecommunicaiton Litigation*,
   612 F. Supp. 892 (E.D. Mich. 1985) ....................................................................................... 9

*In re Lucent Techonlogies, Inc., Securities Litigation*,
   307 F. Supp. 2d 633 (D.N.J. 2004) ......................................................................................... 7

*In re National Football League Players Concussion Injury Litig.*,
   307 F.R.D. 351 (E.D. Pa. 2015), *amended*, No. 2:12-MD-02323-AB,
   2015 WL 12827803 (May 8, 2015), *aff'd*, 821 F.3d 410 (3d Cir. 2016),
   *cert. denied sub nom. Gilchrist  v. Nat'l Football League*, 137 S. Ct. 591
   (2016), and *Armstrong v. Nat'l Football League*, 137 S. Ct. 607 (2016) ................................. 1

*In re Neurontin Marketing, Sales Practices, & Products Liability Litigation*,
   245 F.R.D. 55 (D. Mass. 2007) ............................................................................................... 9

*In re Orthopedic Bone Screw Products Liability Litigation*,
   79 F.3d 46 (7th Cir. 1996) ....................................................................................................... 9

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*,
   No. 05-MD-1720 JG, 2014 WL 4966072 (E.D.N.Y. Oct. 3, 2014) .......................................... 7

*In re World Trade Center Disaster Site Litigation*,
   722 F.3d 483 (2d Cir. 2013) .................................................................................................... 8

*Landis v. North American Co.*,
  299 U.S. 248 (1936) ........................................................................................... 8

*Lehman XS Trust, Series 2006-GP2 v. Greenpoint Mortgage Funding, Inc.*,
  No. 12 Civ. 7935 (ALC), 2014 WL 265784 (S.D.N.Y. Jan. 23, 2014) ..................... 3

*Link v. Wabash Railroad Co.*,
  370 U.S. 626 (1962) ........................................................................................... 8

*Luver Plumbing & Heating, Inc. v. Mo's Plumbing & Heating*,
  43 N.Y.S.3d 267 (App. Div. 1st Dep't 2016) .......................................................... 6

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
  514 U.S. 52 (1995) ............................................................................................. 5

*Muzak Corp. v. Hotel Taft Corp.*,
  133 N.E.2d 688, 150 N.Y.S.2d 171 (N.Y. 1956) ................................................... 5

*New York University v. Pfizer Inc.*,
  53 N.Y.S.3d 284 (App. Div. 1st Dep't 2017) .......................................................... 6

*Orlowski v. Dominick's Finer Foods, Inc.*,
  No. 95 C 1666, 1998 WL 161020 (N.D. Ill. Mar. 31, 1998) ................................... 7

*Pierre v. Prospect Mortgage, LLC*,
  No. 1:13-CV-453 NAM/RFT, 2013 WL 5876151 (N.D.N.Y. Oct. 31, 2013) ............ 9

*Rodriguez v. Weprin*,
  116 F.3d 62 (2d Cir. 1997) .................................................................................. 8

*Royal Park Invs. SA/NV v. Bank of America Corp.*,
  941 F. Supp. 2d 367 (S.D.N.Y. 2013) .............................................................. 9, 10

*Ryan v. Commodity Futures Trading Commission*,
  125 F.3d 1062 (7th Cir. 1997) ............................................................................ 4

*Silber v. Mabon*,
  957 F.2d 697 (9th Cir. 1992) .............................................................................. 7

*Tolmasoff v. General Motors, LLC*,
  No. 16-11747, 2016 WL 3548219 (E.D. Mich. June 30, 2016) .............................. 7

*U.S. ex rel. Staley v. Columbia/HCA Healthcare Corp.*,
  587 F. Supp. 2d 757 (W.D. Va. 2008) .................................................................. 9

*United States v. International Brotherhood  of Teamsters, Chauffeurs,*
    *Warehousemen & Helpers of America, AFL-CIO*, 970 F.2d 1132 (2d Cir. 1992) ..................... 5

*Valente v. Pepsico, Inc.*,
    89 F.R.D. 352 (D. Del. 1981) ....................................................................................... 7

*Whelan v. Merrell-Dow Pharmaceuticals, Inc.*,
    117 F.R.D. 299 (D.D.C. 1987) ....................................................................................... 9

*Yoi-Lee Realty Corp. v. 177th Street Realty Associates*,
    626 N.Y.S.2d 61 (App. Div. 1st Dep't 1995) ................................................................ 5

**Statutes**

28 U.S.C. § 1407 .......................................................................................................... 9

**Rules**

Rule 29 of the Federal Rules of Appellate Procedure ................................................... 3

## INTRODUCTION AND STATEMENT OF INTEREST

Plaintiffs Consumer Financial Protection Bureau ("CFPB") and the New York State Attorney General ("NYAG") (collectively, "Plaintiffs") jointly brought this action – charging Defendants with violations of the federal Consumer Financial Protection Act, federal and state laws against deceptive practices, and state usury laws – to enjoin Defendants' predatory practices involving advances of funds at usurious rates to severely-injured individuals who are entitled to receive compensation under a settlement fund or settlement agreement.

Specifically, Defendants have made such advances to at least seven members of the plaintiff settlement class of retired National Football League players and certain derivative beneficiaries and authorized representatives that was certified in the multidistrict *In re National Football League Players' Concussion Injury Litigation* (the "*NFL Concussion S*ettlement" or "*NFL Concussion Litigation*") centralized in the Eastern District of Pennsylvania.  *See* Aff. of Roni Dersovitz in Support of Mot. to Dismiss, Exs. B-1 to B-7 (ECF Nos. 41-4, 41-5) ("Assignment and Sale Agreement" entered into between each class member and RD Legal Finance, LLC).[1]  In an attempt to end run their being subject to various federal and state lending

---

[1] As discussed in the decisions approving it, the *NFL Concussion S*ettlement class consists of two subclasses.  Subclass 1 is composed of those retired NFL players who did not have a Qualifying Diagnosis (as defined under the Settlement Agreement) on the date of the settlement's preliminary approval (July 7, 2014), and Subclass 2 is made up of those who did.  Class members who establish a Qualifying Diagnosis under a defined matrix are eligible for monetary awards that can range up to $5 million (depending on the severity of the neurocognitive impairment, the class member's age at time of diagnosis, and the number of Eligible Seasons in the NFL or its now-defunct foreign affiliates).  Subclass 1 members can qualify for monetary awards if they have registered to receive settlement benefits by the registration deadline (which in most cases is August 7, 2017) and later establish a Qualifying Diagnosis.  There are also other components of relief provided to the settlement class, including a Baseline Assessment Program and an Education Fund, which are not relevant here.  *See generally In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 365-69 (E.D. Pa. 2015), *amended*, No. 2:12-MD-02323-AB, 2015 WL 12827803 (May 8, 2015), *aff'd*, 821 F.3d 410, 423-25 (3d Cir. 2016), *cert denied sub nom. Gilchrist v. Nat'l Football League*, 137 S. Ct. 591 (2016), and *Armstrong v. Nat'l Football League*, 137 S. Ct. 607 (2016).

laws Defendants have packaged the loans as purchases of the borrowers' benefit rights. *See* Complaint (ECF No. 1) ¶¶ 6, 19, 34-35, 37-42.

Proposed amicus curiae ("Amicus") is the more than 20,000-member nationwide settlement class certified in the *NFL Concussion Litigation*. Amicus has a strong interest in the uncompromised effectuation of the *NFL Concussion Settlement* and, in particular, in ensuring that class members receive the maximum benefits to which they may be entitled under the settlement and that they are protected from exploitation. Many class members suffer from Alzheimer's Disease, Amyotrophic Lateral Sclerosis ("ALS" or, as it is commonly called, "Lou Gehrig's Disease"), or sundry other neurocognitive ailments; are in many cases of advanced age (having last played in the NFL decades ago); are in difficult financial straits; or are affected by some combination of these circumstances – factors that render them extremely vulnerable to manipulation by predatory lenders and other unscrupulous entities.

Amicus recently became aware of this suit and, specifically, that Defendants have purported to "purchase" the future monetary awards (or portions thereof) of at least seven class members under the *NFL Concussion Settlement*, which they have done at steep discounts of 50 percent or more that mask the exorbitant rates of interest charged for the monies advanced.[2]

As concerns the loans made to these class members, Defendants have moved to dismiss Plaintiffs' complaint on the grounds that the monies they advance are not really loans to the class members (and hence are not subject to the laws pursuant to which Plaintiffs have filed suit) but, instead, that Defendants purchase (and thus receive assignments of) the class members' anticipated

---

[2] *E.g.*, Dersovitz Aff., Ex. B-1 (ECF No. 41-4) (agreeing to pay class member Shaun E. King $202,460.31 for $425,166.66 portion of his anticipated $1.5 million award); *id.*, Ex. B-4 (ECF No. 41-5) (agreeing to pay class member Glenn E. Foley $249,574.46 for $510,000 portion of his anticipated $1.5 million award); *id.*, Ex. B-5 (ECF No. 41-5) (agreeing to pay class member Jermaine Wiggins $242,857.14 for $510,000 portion of his anticipated $1.5 million award).

settlement benefits, which Defendants maintain is permissible under *NFL Concussion Settlement*.

Given Defendants' assertion of this defense, Amicus respectfully requests that the Court accept the instant memorandum in order to address Defendants' erroneous interpretation of the Settlement Agreement, which squarely *prohibits* assignments. A judicial validation of Defendants' flawed interpretation would have serious repercussions for the settlement class, and could expose countless other class members to similar predatory lending practices, whether by these Defendants or by other devious lenders eyeing an opportunity for a risk-free windfall.

Accordingly, for the reasons discussed below, the Court should reject Defendants' flawed argument that *NFL Concussion Settlement* monetary awards are assignable. They are not. Alternatively, in the interest of judicial efficiency and economy, the Court should, pursuant to its inherent authority to manage its docket, refer this question to the *NFL Concussion Litigation* district court for it to answer before the Court takes up any of Defendants' other arguments that relate to *NFL Concussion Settlement* class members. Doing so would conserve this Court's resources and ensure that this question is answered uniformly and definitively as to all lenders.

## ARGUMENT

### I. PROPOSED AMICUS CURIAE SHOULD BE GRANTED LEAVE TO FILE THE INSTANT MEMORANDUM

This Court has noted that "[t]here is no governing standard, rule or statute prescrib[ing] the procedure for obtaining leave to file an *amicus* brief in the district court." *Lehman XS Trust, Series 2006-GP2 v. Greenpoint Mortg. Funding, Inc.*, No. 12 Civ. 7935 (ALC), 2014 WL 265784, at *1 (S.D.N.Y. Jan. 23, 2014) (citing cases; internal quotation marks omitted; italics in original). Nevertheless, this Court looks to cases interpreting Rule 29 of the Federal Rules of Appellate Procedure for guidance. *See id.* In this respect, "'[a]n *amicus* brief should normally be allowed when a party is not represented competently or is not represented at all, when the *amicus* has an

interest in some other case that may be affected by the decision in the present case . . . or when the *amicus* has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide.'" *Id.* at \*2 (quoting *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997)).

Here, the certified *NFL Concussion Litigation* settlement class is not currently represented in this action, and it has an interest that could be affected by the Court's ruling on the question of whether monetary awards under the *NFL Concussion Settlement* can, in fact, be assigned. Accordingly, the Court should accept the instant amicus curiae memorandum.

## II. THE MULTIDISTRICT NFL CONCUSSION LITIGATION CLASS SETTLEMENT AGREEMENT BARS ASSIGNMENTS OF BENEFITS

Defendants argue that their advances to *NFL Concussion* Settlement class members do not run afoul of federal and state laws prohibiting deceptive and usurious loans for the simple reason that they contend that they are not making loans against expected recoveries but, rather, receiving assignments of settlement benefits – which, they maintain, are not prohibited by the Settlement. *See* ECF No. 40 (Mem. of Law in Support of Defs.' Mot. to Dismiss ["Defs. Opening Mem."]) at 32-33; ECF No. 37 (Reply in Support of Defs.' Mot. to Dismiss ["Defs.' Reply Mem."]) at 6-7.[3] This contention is unavailing.

Article XXX of the *NFL Concussion Settlement* expressly provides as follows:

> **Section 30.1** <u>**No Assignment of Claims.**</u> Neither the Settlement Class nor any Class or Subclass Representative or Settlement Class Member has assigned, will assign, or will attempt to assign, to any person or entity other than the NFL Parties any rights or claims relating to the subject matter of the Class Action Complaint. Any such assignment, or attempt to assign, to any person or entity other than the NFL Parties any rights or claims relating to the subject matter of the Class Action Complaint will be void, invalid, and of no force and effect.

---

[3] Unless otherwise noted, references to documents filed on the Court's ECF system are to pages of the original document, not the ECF pagination.

Settlement Agreement § 30.1, at 92 (copy annexed to ECF No. 41-6 [Dersovitz Aff., Ex. C]).

Nonetheless, Defendants maintain that this anti-assignment provision is limited, prohibiting only the assignment of class members' legal *claims*, not their monetary awards. Defs.' Reply Mem. at 6. That, however, is a dubious distinction, for there is simply no need to prohibit assignments only of class members' "claims" inasmuch as the Settlement elsewhere completely *releases* them. *See* Settlement Agreement, art. XVIII, at 72-75 (Dersovitz Aff., Ex. C [ECF 41-6]) (release provisions).

As such, Defendants' reading of section 30.1 of the Settlement Agreement runs afoul of the bedrock rule that contractual provisions must not be rendered meaningless.[4] *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995) (noting "cardinal principle of contract construction[] that a document should be read to give effect to all its provisions and to render them consistent with each other") (citing authorities); *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 970 F.2d 1132, 1136 (2d Cir. 1992) ("We must avoid an interpretation of an agreement that renders one of its provisions superfluous.") (citing authorities); *Muzak Corp. v. Hotel Taft Corp.*, 133 N.E.2d 688, 690, 150 N.Y.S.2d 171, 174 (N.Y. 1956) ("The rules of construction of contracts require us to adopt an interpretation which gives meaning to every provision of a contract or, in the negative, no provision of a contract should be left without force and effect.") (citing authorities); *Yoi-Lee Realty Corp. v. 177th St. Realty Assocs.*, 626 N.Y.S.2d 61, 65 (App. Div. 1st Dep't 1995) ("[C]ontracts should be construed to give

---

[4] As a threshold matter, New York law governs the interpretation of the Settlement Agreement. *See* Settlement Agreement (Dersovitz Aff., Ex. C [ECF 41-6]) § 27.1(a) ("Notwithstanding any contrary law applicable to the underlying claims, this Settlement Agreement and the Releases hereunder will be interpreted and enforced in accordance with the laws of the State of New York, without regard to conflict of law principles.").

force and effect to their provisions and not in a manner so as to render them meaningless[.]")
(citing cases; internal citations omitted); *Audino v. Lincoln First Bank of Rochester*, 481 N.Y.S.2d
928, 931 (App. Div. 4th Dep't 1984) ("[A] contract should not be interpreted so as to render a
provision meaningless[.]") (citing authorities), *aff'd mem.*, 480 N.E.2d 747, 491 N.Y.S.2d 158
(N.Y. 1985).

Moreover, the anti-assignment provision stipulates that "*the Claims Administrator* shall
not recognize" any attempted assignment. Settlement Agreement § 30.1 (Dersovitz Aff., Ex. C
[ECF 41-6]) (emphasis added). To read the anti-assignment provision as Defendants do would
similarly render the provision meaningless because, setting aside the fact of the class-wide release,
it would obviously not be for the Claims Administrator but, rather, a *court* to adjudicate class
members' legal claims. And Defendants' reading would run afoul of another rule of contract
construction, which is that absurd interpretations are to be avoided. *E.g.*, *N.Y. Univ. v. Pfizer Inc.*,
53 N.Y.S.3d 284, 290 (App. Div. 1st Dep't 2017); *Luver Plumbing & Heating, Inc. v. Mo's
Plumbing & Heating*, 43 N.Y.S.3d 267, 269 (App. Div. 1st Dep't 2016).

Defendants' other arguments in favor of assignability of *NFL Concussion Settlement*
benefits are equally meritless. First, they say that significance must be ascribed to the fact that the
anti-assignment provision refers to "'rights or claims relating to the subject matter of the Class
Action Complaint'" rather than the Settlement Agreement, whereas two other sections expressly
refer to the "Settlement Agreement." Defs.' Reply Mem. at 6 (quoting Settlement Agreement §
30.1; emphasis omitted). If anything, however, a prohibition against assigning any "right[s] or
claim[s] *relating to the subject matter of* the Class Action Complaint" (emphasis added) is *more*,
not less, encompassing in that class members are forbidden from assigning *any* right that touches
upon the underlying claims in the *NFL Concussion Litigation*.

Nor is there any significance in the term "Settlement Agreement" rather than "Class Action Complaint" being employed in the two provisions that Defendants cite. The first provision merely states that the settling parties "intend to resolve their disputes pursuant to the terms of this Settlement Agreement" and that the agreement will not "be subject to rescission or modification by reason of any change or difference in facts or law." Settlement Agreement § 25.5, at 88 (Dersovitz Aff., Ex. C [ECF 41-6]). Needless to say, there would be no reason for this section to mention the underlying complaint. The latter section that Defendants cite is simply a routine integration provision, reflecting that the four corners of the Settlement Agreement represent the entirety of the parties' agreement and undertakings. *See id*. § 30.3, at 93. Here, too, it would have made no sense for the underlying class complaint to be mentioned.

Finally, Defendants' citation of authority for the truisms that the law favors the assignability of contract rights and that assignments will not be prohibited absent an express prohibition to the contrary (Defs.' Reply Mem. at 6-7) fails for the simple reason that the *NFL Concussion Settlement*, in fact, expressly prohibits assignments. At any rate, these maxims should not trump courts' general obligation to protect absent members of a class,[5] one that is heightened

---

[5] *E.g.*, *Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992) ("[T]he courts have a duty to protect the interests of absent class members."); *In re Lucent Techs., Inc., Secs. Litig.*, 307 F. Supp. 2d 633, 641 (D.N.J. 2004) ("A court is obliged to protect class members'[] interests[.]"); *Valente v. Pepsico, Inc.*, 89 F.R.D. 352, 357 (D. Del. 1981) (noting "the Court's special duty to protect the interests of absent class members in administering a settlement"); *Bailes v. Lineage Logistics, LLC*, No. 15-CV-02457-DDC-TJJ, 2016 WL 4415356, at *7 (D. Kan. Aug. 19, 2016) ("The court has a duty to protect the rights of absent class members."); *Tolmasoff v. Gen. Motors, LLC*, No. 16-11747, 2016 WL 3548219, at *10 (E.D. Mich. June 30, 2016) ("The court must protect the interests of absent class members, and Rule 23(d) gives the judge broad administrative powers to do so, reflecting the equity origins of class actions.") (citation, internal quotation marks, and emphasis omitted); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 JG, 2014 WL 4966072, at *4, **31-35 (E.D.N.Y. Oct. 3, 2014) (discussing at length measures that court can take "to protect class members from the false or misleading solicitations of third-party claims filing companies"); *Orlowski v. Dominick's Finer Foods, Inc.*, No. 95 C 1666, 1998 WL 161020, at *5 (N.D. Ill. Mar. 31, 1998) ("[I]t is the responsibility of the District Court to protect

here, where a class is composed of cognitively impaired, vulnerable individuals who are easy prey

for unscrupulous lenders eager to swoop in and make an easy (and quite substantial) buck.

## III. ALTERNATIVELY, THE COURT SHOULD REFER THE ASSIGNABILITY QUESTION TO THE *NFL CONCUSSION LITIGATION* COURT

In the alternative, the Court should consider referring the issue of whether the *NFL*

*Concussion Settlement* forbids assignments of settlement benefits to the district court presiding

over the settlement for it to resolve.  The Court can do so pursuant to its inherent authority to

manage its docket.[6]

Amicus does not propose a transfer of this action or any portion of it but, rather, the referral

of a discrete question.  By referring it to the *NFL Concussion Litigation* court, this Court would

spare its own resources in that it would leave the question to the tribunal that has presided over

that MDL for over five years and is actively overseeing the implementation of the settlement and

focusing on the potential abuse of class members by various entities, including lenders.[7]

_____

the rights and interests of the unnamed class members.").

[6]  *E.g.*, *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (noting "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"); *In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 487 (2d Cir. 2013) ("It is well established that district courts possess the 'inherent power' and responsibility to manage their dockets 'so as to achieve the orderly and expeditious disposition of cases.'") (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) ("A court's inherent power to control its docket is part of its function of resolving disputes between parties."); *CDX Diagnostics, Inc. v. U.S. Endoscopy Grp., Inc.*, No. 13-CV-05669 NSR, 2014 WL 2854656, at *2 (S.D.N.Y. June 20, 2014) ("District courts have the inherent power to manage their dockets[.]").

[7]  Just days ago, for example, the district court presiding over the *NFL Concussion Litigation* announced that it will hold an evidentiary hearing on September 19, 2017, to investigate allegations of deceptive practices directed at class members by third-party claims services providers, lenders, and even law firms.  *See In re Nat'l Football League Players' Concussion Injury Litig.*, No. 2:12-MD-02323-AB (E.D. Pa. Notice & Order filed July 19, 2017) (ECF No. 8037).  Earlier, that court approved the issuance of class-wide notice to alert class members to

Moreover, it would simultaneously ensure uniformity of adjudication by securing a single up-or-down ruling that will apply not only to these Defendants but to other potential lenders to class members who might assert the same defense, thus avoiding the need for courts to adjudicate this issue anew in individual cases. This case presents a highly unusual situation in which the Defendants' underlying conduct is intertwined with an MDL class action settlement in another court, and there is precedent for a district court to defer to an MDL court. *See In re Orthopedic Bone Screw Prod. Liab. Litig.*, 79 F.3d 46, 48-49 (7th Cir. 1996) (noting that "[a] principal purpose of § 1407 is to allow one judge to take control of complex proceedings," and that three district judges in Wisconsin "acted wisely, as well as within their power, in calling on" MDL court in Pennsylvania, which was "much better situated," to deal with motions for protective orders, and adding that referral would not require lawyers to travel to Pennsylvania).

Indeed, referring this question to the *NFL Concussion Litigation* court would further two of the major objectives of the MDL statute, 28 U.S.C. § 1407, which is to ensure uniformity of adjudication[8] and conservation of judicial resources.[9]

---

misleading information being communicated by a number of third-party claims services providers that have been aggressively courting class members to secure their retention, peddling unnecessary services in exchange for a hefty portion of class members' recoveries. *See* No. 2:12-MD-02323-AB (E.D. Pa. Order filed June 12, 2017) (ECF No. 7814).

[8] *E.g.*, *Ill. Mun. Ret. Fund v. Citigroup, Inc.*, 391 F.3d 844, 852 (7th Cir. 2004) ("[E]fficiency and consistency are goals of § 1407."); *U.S. ex rel. Staley v. Columbia/HCA Healthcare Corp.*, 587 F. Supp. 2d 757, 760 (W.D. Va. 2008) (MDL statute streamlines proceedings by, *inter alia*, avoiding conflicting rulings) (citing treatise); *In re Long Distance Telecomm. Litig.*, 612 F. Supp. 892, 903 (E.D. Mich. 1985) (noting "goal[] of uniformity" behind multidistrict proceedings), *aff'd in relevant part*, 831 F.2d 627 (6th Cir. 1987); *In re Neurontin Mktg., Sales Practices, & Prods. Liab. Litig.*, 245 F.R.D. 55, 57 (D. Mass. 2007); *Whelan v. Merrell-Dow Pharms., Inc.*, 117 F.R.D. 299, 300 (D.D.C. 1987).

[9] *E.g.*, *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 333 (3d Cir. 2007) ("very purpose" of multidistrict consolidation "is to conserve judicial resources by resolving as many claims as possible"); *Royal Park Invs. SA/NV v. Bank of Am. Corp.*, 941 F. Supp. 2d 367, 373

## CONCLUSION

For the foregoing reasons and those stated by Plaintiffs at pages 10-13 of their memorandum in opposition to Defendants' motion to dismiss the complaint (ECF No. 36, at 20-23), the Court should deny Defendants' motion to dismiss insofar as the legality of the assignments of class members' settlement benefits under the *NFL Concussion Settlement* is concerned.  In the alternative, the Court should refer that discrete question to the MDL court presiding over the implementation of that settlement.

Dated:  July 24, 2017

Respectfully submitted,

/s/ Christopher A. Seeger
Christopher A. Seeger
Diogenes P. Kekatos
**SEEGER WEISS LLP**
77 Water Street, 26th Floor
New York, NY 10005
Phone:  (212) 584-0700
Fax:      (212) 584-0799
cseeger@seegerweiss.com
dkekatos@seegerweiss.com

TerriAnne Benedetto
**SEEGER WEISS LLP**
1515 Market Street
Philadelphia, PA 19102
Phone:  (215) 564-2300
Fax:      (215) 851-8029
tbenedetto@seegerweiss.com

***Co-Lead Class Counsel*** *for Proposed Amicus Curiae Plaintiff Settlement Class in* ***In re National Football League Players' Concussion Injury Litigation***, No. 2:12-md-02323-AB (E.D. Pa.)

---

(S.D.N.Y. 2013) (conservation of judicial resources is "'one of the fundamental goals of multidistrict litigation practice'") (citation and internal quotation mars omitted); *Pierre v. Prospect Mortg., LLC*, No. 1:13-CV-453 NAM/RFT, 2013 WL 5876151, at *4 (N.D.N.Y. Oct. 31, 2013) (same; quoting *Royal Park Investments*); *In re Career Acad. Antitrust Litig.*, 57 F.R.D. 569, 571 (E.D. Wis. 1972).


BOIES
SCHILLER
FLEXNER

**VIA ECF**

MICHAEL D. ROTH
mroth@bsfllp.com

July 28, 2017

The Honorable Loretta A. Preska
United States District Court Judge
United States Courthouse
500 Pearl Street, Room 2220
New York, NY 10007

Re:     *CFPB, et al. v. RD Legal Funding, LLC, et al.*, Case No. 17-cv-890

Dear Judge Preska:

I write on behalf of Defendants RD Legal Funding, LLC, RD Legal Finance, LLC, RD Legal Funding Partners, LP, and Roni Dersovitz (collectively, "RD Legal"), pursuant to Individual Practices Rule 2.A, in response to the July 25, 2017 letter ("Letter") submitted by Co-Lead Class Counsel in *In re National Football League Players' Concussion Injury Litigation* ("Third Party"). As discussed below, the request to file an amicus brief should be denied.

"The customary role of an amicus is 'to aid the court and offer insights not available from the parties.' . . . [S]ince the role of an amicus submission is to assist the court, '[d]istrict courts have broad discretion to permit or deny the appearance of amici curiae in a given case.'" *S.E.C. v. Bear, Stearns & Co. Inc.*, No. 03 CIV.2937 WHP, 2003 WL 22000340, at *5 (S.D.N.Y. Aug. 25, 2003) (citations omitted). And where parties seek to advance their interest in a different lawsuit, and are not "seeking to assist the Court in clarifying the issues 'as an objective, neutral, dispassionate "friend of the court"' . . . [c]onferring amicus status on such partisan interests is inappropriate." *Id.* at *6 (citation omitted). This proposed brief advances Third Party's self-interest but offers no insights unavailable to the Court, and thus does not meet the criteria for amici. There are several other reasons to deny this request.

First, the proposed brief should be rejected as untimely. *See, e.g., Lopez Torres v. New York State Bd. of Elections*, 300 F. App'x 106, 107 (2d Cir. 2008). While neither the Federal Rules of Civil Procedure, nor this Court's Individual Practices, nor the local rules specifically provide for the filing of amicus briefs, such briefs are traditionally required <u>within seven days</u> of the principal brief they are intended to support. *See* Fed. R. App. Proc. (a)(6) & (b)(5); S.C. Rule 37(3)(a). Not only are we past this seven-day deadline, the non-assignability clause was put in issue by the government's February 7, 2017 Complaint (ECF No. 1, ¶ 35 (which was widely reported in the press)), and it is now more than one month after briefing on the Motion to Dismiss was completed on June 26, 2017.



July 28, 2017
Page 2

Second, the proposed brief merely repeats an argument—that the NFL Settlement did not permit assignment of settlement proceeds—that is already briefed and adequately promulgated by the government. *See* Opp. at 10-13; *see also Bear, Stearns & Co. Inc.*, 2003 WL 22000340, at *5 (citation omitted) (declining proposed amicus that lacked "a unique point of view that is not available to the Court from the parties in the underlying actions," particularly where public interest was represented by enforcement agency); S.C. Rule 37(1) (an amicus brief raising matters "already brought to [the Court's] attention" is not helpful, "burdens the Court, and its filing is not favored"). Moreover, both the government and Third Party concede that this argument turns on the simple matter of interpreting one contract, which this Court can do without the need for "friends of the court." *See* Opp. at 11 (asserting "clear and legally enforceable language precluding assignments of rights and claims"); Letter at 2 (citing "the express terms of the agreement and fundamental principles of contract construction").

Third, Third Party's redundant argument is ancillary to the threshold jurisdictional defense raised in the Motion to Dismiss. RD Legal did not even raise the assignability of the settlement proceeds in the Motion, and devoted only two paragraphs in its Reply to respond to *the government's* strained interpretation of the plain language of the NFL Settlement, which would not even confer jurisdiction under the Consumer Financial Protection Act. *See* Reply at 6-7. In short, the proposed brief addresses a narrow and secondary issue that the Court may never reach, and could decide without amicus help. *Id.* at 7 ("Even if the Assignments Were Invalid, the Transactions Would Not Be Converted into 'Extensions of Credit'").

Fourth, Third Party's request would subvert the very relief requested in the Motion to Dismiss: a dismissal for lack of jurisdiction that should be adjudicated quickly. Both of Third Party's alternate requests—importing collateral issues from a longstanding MDL proceeding into this jurisdictional inquiry, or delegating this simple issue of contract interpretation to the MDL—would delay and unnecessarily complicate the Motion, to the prejudice of RD Legal. Indeed, in no event should the interpretation of the plain language of a contract under New York law be sent to an MDL in Pennsylvania. It would put the cart before the horse to allow Third Party to interfere in this matter or demand that this case be tied down in a preexisting MDL, *before a threshold determination of jurisdiction*.

Fifth, Third Party's asserted interest is based on pure speculation about how a ruling by this Court might "potentially expos[e]" unnamed class members to vague "predatory lending practices." Letter at 2. Not only are Third Party's accusations unfounded and improper for a Rule 12(b)(6) motion, they are also misleading about the seven NFL assignment agreements at issue here. To be clear, Third Party does *not* represent the interests of the seven individuals who have chosen to assign their settlement proceeds ("Claimants"). Each of those Claimants is represented by *his own separate counsel*—none of whom has submitted a proposed amicus or joined Third Party's request, and most of



July 28, 2017
Page 3

whom signed an acknowledgment agreeing to honor the seven assignments. *See* Motion, Ex. B. Moreover, the seven NFL assignments at issue all involved notarized documents and (where applicable) spousal consent that confirmed these former-NFL players were competent to assign a *portion* of their settlement proceeds to RD Legal.[1] *Id.*

To be clear, Third Party's interpretation of the NFL Settlement is also wrong on the merits. *See* Reply 4-8. For example: (1) Anti-assignment clauses must be construed "narrowly as dictated by New York law," and must be explicit to invalidate a contract with a non-party. *Au New Haven, LLC v. YKK Corp.*, 210 F. Supp. 3d 549, 556 (S.D.N.Y. 2016). (2) The anti-assignment clause here does not explicitly prohibit assignment of *settlement proceeds*, and Third Party's interpretation disregards the express difference in the agreement between the "subject matter of the Class Action Complaint" (referred to eleven times, *see* Motion, Ex. C at 5.7(a)(i)-(ii); 6.5(b); 9.8(a)(i); 30.1) and the "subject matter of this Settlement Agreement" (referred to four times, *see id.* at 13.5, 25.5, 30.3), which *must* mean different things. (3) Courts have "recognized as valid the distinction between the assignment of a cause of action for personal injury and the assignment of its proceeds," which is conveyed by a plain reading of the Settlement Agreement. *Grossman v. Schlosser*, 244 N.Y.S.2d 749, 750 (N.Y. App. Div. 1963). Nor does Third Party address RD Legal's other supporting arguments, including the express validity of liens under the Settlement and how a prohibition against assignment of settlement proceeds would invalidate Third Party's own contingency agreements. *See* Reply 4-8; *C.I.R. v. Banks*, 543 U.S. 426, 434 (2005) ("[A] contingent-fee agreement should be viewed as an anticipatory assignment to the attorney of a portion of the client's income from any litigation recovery.").

In short, Third Party's proposed brief is not a proper amicus curiae brief, is not necessary for the threshold jurisdictional question raised in the Motion to Dismiss, and would prejudice RD Legal. Accordingly, RD Legal believes that Third Party's request should be denied and that no pre-motion conference is required. If the proposed brief is permitted, however, RD Legal respectfully requests an opportunity to submit a responsive brief.

Sincerely,

MICHAEL D. ROTH

---

[1] As for the thousands of unnamed class members who might be "potentially expos[ed]," any hypothetical risk would never manifest unless several things occurred: (1) this Court would have to reach this secondary issue and hold that the NFL Settlement Agreement does not prohibit assignments; (2) that holding would need to be given precedential weight in the separate NFL proceeding; *and* (3) other class members would have to actually want to assign settlement proceeds, but be unable to make a knowing and voluntary assignment. Such conjecture about improbable harms should not delay a jurisdictional dismissal.

# SEEGERWEISS LLP

77 Water Street, New York, NY 10005     P 212.584.0700     F 212.584.0799     www.seegerweiss.com

July 31, 2017

<u>By ECF</u>

Honorable Loretta A. Preska
United States District Judge
Southern District of New York
Daniel Patrick Moynihan
     United States Courthouse
500 Pearl Street, Room 2220
New York, NY  10007

Re: ***Consumer Fin. Protection Bureau v. RD Legal Funding, LLC*, No. 1:17-cv-00890 (LAP)**

Dear Judge Preska:

     Proposed amicus curiae ("Amicus") respectfully submits this reply to Defendants' opposition letter (ECF No. 46) ("Ltr.").  Starting with their threshold contention that an amicus must be "'neutral'" and "'dispassionate'" (Ltr. at 1),[1] all of Defendants' arguments lack merit.

     *First*, Defendants' assertion that the application is untimely (Ltr. at 1) is unavailing. The rules they cite govern the filing of amicus briefs in the circuit courts and Supreme Court. There is no seven-day rule at the district court level.  Amicus became aware of Defendants' dismissal motion only recently, the briefing of the motion was completed less than a month before Amicus made its application, and no argument date has been set.  Any delay occasioned by the acceptance of Amicus' 9-1/2 page brief would be *de minimis* and certainly not prejudicial to Defendants, who filed their dismissal motion months after the commencement of the action.

     *Second*, Defendants contend that the proposed brief "repeats" an argument already made. Ltr. at 1.  The proposed brief, though, does not parrot existing arguments.  It elaborates on a discrete issue – whether *NFL Concussion Settlement* monetary awards are assignable – and it delves into provisions of the Settlement Agreement not already addressed.  The suggestion here

---

     [1] Although Defendants belittle its motive as "self-interest" (Ltr. at 1), Amicus is acting as court-appointed steward to the class settlement and to ensure that absent members' interests are properly presented.  In any event, courts have increasingly accepted that amici may participate even if they are partisan or have a pecuniary interest in the outcome.  *E.g.*, *Neonatology Assocs., P.A. v. C.I.R.*, 293 F.3d 128, 132 (3d Cir. 2002) (rejecting argument "that an amicus must be an impartial person not motivated by pecuniary concerns"); *Funbus Sys., Inc. v. State of Cal. Pub. Utilities Comm'n*, 801 F.2d 1120, 1125 (9th Cir. 1986) ("[T]here is no rule that amici must be totally disinterested."); *Weininger v. Castro*, 462 F. Supp. 2d 457, 474 n.12 (S.D.N.Y. 2006) ("'[A]n adversary role of an amicus curiae has become accepted.'") (citation omitted); *Onondaga Indian Nation v. State of N.Y.*, No. 97-CV-445, 1997 WL 369389, at *3 (N.D.N.Y. June 25, 1997) (lack of neutrality not a basis for denying amicus' motion for leave to appear).

New York          Newark          Philadelphia

Honorable Loretta A. Preska
July 31, 2017
Page | 2

that it would be acceptable for Amicus to introduce new arguments is odd.  Had Amicus done that, Defendants would no doubt complain about the injection of new issues into the case.

*Third* and *Fourth* (given that they iterate this theme twice), Defendants maintain that the proposed brief is "ancillary to the threshold jurisdictional defense raised in the Motion to Dismiss," and that Amicus' participation would "subvert" the need for a quick adjudication of jurisdiction.  Ltr. at 2.  These objections are spurious, for there *is* no "jurisdictional defense" here.  Defendants moved to dismiss pursuant to Rule 12(b)(6), not 12(b)(1) (ECF No. 39, at 2), and their challenge to the CFPB's constitutionality implicates not this Court's jurisdiction to hear Plaintiffs' claims but, rather, the *cognizability* of the CFPB's claims.  Indeed, prudential considerations dictate that the Court *not* take up Defendants' constitutional challenge first but, instead, see if there are non-constitutional grounds for dismissal.  *E.g.*, *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445-46 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.") (citing cases); *Allstate Ins. Co. v. Serio*, 261 F.3d 143, 149-50 (2d Cir. 2001) ("It is axiomatic that the federal courts should, where possible, avoid reaching constitutional questions.") (citing cases).  At any rate, amici often participate where jurisdiction is at issue.  *E.g.*, *Gov't Employees Ins. Co. v. Uptown Health Care Mgmt., Inc.*, 945 F. Supp. 2d 284, 286, 292 n.8 (E.D.N.Y. 2013) (amicus brief in connection with combined 12(b)(1) & (6) motion); *Ostrowski v. Local 1-2, Util. Workers Union of Am.*, 530 F. Supp. 208, 211 (S.D.N.Y. 1980) (preliminary injunction and 12(b)(1) & (6) cross-motions).

*Fifth*, Defendants dismiss Amicus' interest as "pure speculation."  Ltr. at 2.  There is nothing speculative, however, about the need to protect absent members of a class, and the *NFL Concussion Litigation* MDL court has expressly voiced concerns about possible widespread exploitation of class members by lenders and other entities.  *See* ECF No. 45-1, at 14-15 n.7.  Even if some class members (such as the borrowers here) retained individual counsel, Class Counsel continues to have fiduciary obligations to them.  *See In re Shell Oil Refinery*, 152 F.R.D. 526, 534 (E.D. La. 1989) (court-appointed "legal representative of the class members" had "obligation to protect the interests of the entire class, regardless of whether the class member retained individual counsel") (citing treatise).  Moreover, as we noted, the need for protection of class members' interests extends to other absent members who may have been lured (or may be lured in the future) into similar borrowing arrangements unlawfully packaged as assignments.

Finally, Defendants' merits rebuttal (Ltr. at 3) is properly the subject of a responding brief that they could request leave to file (and which, in fact, they have done in the alternative), not grounds for rejecting Amicus' brief.  Put another way, that Defendants *disagree* with Amicus' arguments is not reason for them not to be considered.  Nor do the additional Settlement Agreement provisions that Defendants cite support their position; they refer to the class complaint or the Settlement Agreement for obvious reasons in their respective context.  And it is specious for Defendants, citing an inapposite tax case, to suggest that Amicus' reading would invalidate individual class members' attorneys' claim to a fee (which is not even at issue here).

Respectfully,
  */s/ Christopher A. Seeger*
Christopher A. Seeger

cc:  All Counsel of Record (via ECF)