# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL | § | No. 2:12-md-02323-AB |
| LEAGUE PLAYERS' CONCUSSION | § | |
| INJURY LITIGATION | § | MDL No. 2323 |
| | § | |
| | § | **Hon. Anita B. Brody** |
| Yvonne Sagapolutele, individually | § | |
| And as representative of the Estate | § | |
| Of Pio Sagapolutele, Deceased | § | |
| On behalf of herself and | § | Civ. Action No. 14-00029-AB |
| Others similarly situated, | § | |
|     Plaintiff | § | |
| | § | |
|     v. | § | |
| | § | |
| National Football League and | § | |
| NFL Properties LLC, | § | |
| Successor-in-interest to NFL Properties, Inc., | § | |
|     Defendants | § | |
| | § | |
| | § | |
| THIS DOCUMENT RELATES TO: | § | |
| ALL ACTIONS | § | |

# MEMORANDUM OF LAW IN SUPPORT OF
# ABSENT CLASS MEMBER AND PLAINTIFF YVONNE SAGAPOLUTELE'S MOTION TO MODIFY THE AMENDED FINAL ORDER AND JUDGMENT [ECF 6534] BY CONFORMING THE DEFINITION OF "DEATH WITH CTE" TO THE VERSION CONTEMPLATED IN THE FAIRNESS HEARING ORDER [ECF 6479] AND NOTICED TO THE CLASS IN THE LONG FORM NOTICE [ECF 6093-1] AND SUMMARY NOTICE [ECF 6093-2] PURSUANT TO RULE 60 AND THE AUTHORITY RETAINED IN THE SETTLEMENT AGREEMENT

# TABLE OF CONTENTS

Page

Table of Contents....................................................................................................ii

Index of Authorities..............................................................................................iv

Introduction ...........................................................................................................1

Factual & Procedural Background .......................................................................2

    I.      The Settlement Agreement Initially Approved by the Court and Signed by the NFL Parties Imposed No Deadline for Obtaining a Qualifying Diagnosis of Death with CTE. ...............................3

    II.    The Summary Notice — Approved by the Court and sent to Class Members — Contained No Deadline for Obtaining a Qualifying Diagnosis of Death with CTE. ......................................................4

    III.   The Long-Form Notice — Approved by the Court and sent to Class Members — Contained No Deadline for Obtaining a Qualifying Diagnosis of Death with CTE. ......................................................5

    IV.   After the Fairness Hearing, the Court Ordered that Changes Be Made to the Settlement to Benefit Class Members Without Providing any Concessions to the NFL Parties.............................................6

    V.    Without Notice and after the Opt Out Deadline, a Change was made to the Settlement that Materially Prejudices Class Members and Provides a Benefit to the NFL Parties. ...................................8

          A.    After the opt-out period elapsed, the due process rights of all Class Members in Subclass 1 were violated by adding a deadline to obtain a Qualifying Diagnosis of Death with CTE..............................................................................8

          B.    Imposing this Qualifying Diagnosis deadline — after the opt out period elapsed and without notice — materially prejudices the rights of all Class Members in Subclass 1......................................................................9

VI.     The Court Rendered Judgment in May 2015 and Retained
        Jurisdiction to Enforce the Settlement Agreement........................................ 10

VII.    No Court has Considered Whether this Material Change to
        the Settlement Agreement Violates Absent Class Members'
        Due Process Rights and this Court's Expressed Intention. ......................... 11

VIII.   In 2017, the Pre-Effective Date Diagnosing Physician
        Certification Form Incorporated the Deadline that Prevents
        Class Members from Obtaining a Qualifying Diagnosis for
        Death with CTE. ........................................................................................... 12

Timeline ....................................................................................................................... 13

Argument & Authorities ............................................................................................... 15

I.      The Constitutional Due Process Rights of the Absent Class
        Members were Violated When the Settlement Agreement was
        Changed after the Opt Out Period and without Notice to
        Include a Deadline that Prevents them from Obtaining a
        Qualifying Diagnosis of Death with CTE. .................................................... 15

II.     The Court has the Authority and Obligation to Remedy the
        Violation of the Absent Class Members Constitutional Due
        Process Rights. ............................................................................................. 18

        A.      Rule 60(a) gives the Court authority to remove the
                prejudicial deadline because the deadline was
                mistakenly incorporated in the Final Order and
                Judgment. ......................................................................................... 19

        B.      Rule 60(b) gives the Court authority to remove the
                prejudicial deadline because modifying the Judgment
                is necessary to prevent a grave injustice. ........................................ 20

        C.      The Court has the inherent authority to remove the
                deadline to obtain a Qualifying Diagnosis of Death
                with CTE because the Court retained continuing
                jurisdiction to implement the settlement agreement. ....................... 23

Conclusion & Prayer for Relief ................................................................................... 24

# INDEX OF AUTHORITIES

Page

**Cases**

*Bernuth, Lembcke Co.*, 20 F.R.D. 116 (S.D.N.Y. 1950) ...................................................20

*Buck v. Davis*, 137 S. Ct. 759 (2017). .................................................................20, 21, 23

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ........................................................17

*Exp.-Imp. Bank of U.S. v. Advanced Polymer Sciences, Inc.*, 604 F.3d 242 (6th Cir. 2010) ..................................................................................21, 23

*F.A.C., Inc. v. Cooperative de Seguros de Vida*, 449 F.3d 185 (1st Cir. 2006) ........................................................................................20, 21, 24

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) ...................................16

*Hansberry v. Lee*, 311 U.S. 32 (1940) ..................................................................15, 16, 17

*Hensley v. Alcon*, 277 F.3d 535 (4th Cir. 2002) ........................................................23, 24

*Hopper v. Euclid Manner Nursing Home, Inc.*, 867 F.2d 291 (6th Cir. 1988) ............................................................................................................20

*In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013) ....................16, 18, 22, 23

*In re Diet Drugs Prods. Liab. Litig.*, 431 F.3d 141 (3d Cir. 2005) ...............15, 16, 17, 18

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) ...........................................................................16

*In re Linerboard Antitrust Litig.*, 223 F.R.D. 357 (E.D. Penn. 2004) .......................20, 24

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ..............................16

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) .................18, 20, 23, 24

*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988) .................................21

*More v. Lew*, 34 F. Supp. 3d 23 (D.D.C. 2014) ..............................................................21

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) .....................16, 17

*Román-Oliveras v. P.R. Elec. Power Auth. (PREPA)*, 797 F.3d 83 (1st Cir. 2015) ........................................................................................................23, 24

*Van Gemert v. Boeing Co.*, 590 F.2d 433 (2d Cir. 1978)..................................................15

*Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86
  (3d Cir. 1985) ..........................................................................................................16

**Rules**

Fed. R. Civ. P. 23(a)(4) .............................................................................................15

Fed. R. Civ. P. 23(e)(1) .............................................................................................16

Fed. R. Civ. P. 60(a) .......................................................................................19, 20, 21

Fed. R. Civ. P. 60(b)...........................................................................................21, 22

# INTRODUCTION

Plaintiff and Absent Class Member Yvonne Sagapolutele, by and through counsel, brings this Motion to Modify the Amended Final Order and Judgment [ECF No. 6534] pursuant to Rule 60 of the Federal Rules of Civil Procedure and the Court's inherent authority.  Plaintiff respectfully requests that the Court remove the deadline to obtain a Qualifying Diagnosis of Death with CTE, which was incorporated into the Judgment, in order to allow Class Members to obtain a Qualifying Diagnosis of Death with CTE under the terms that were (1) agreed upon in the Settlement Agreement and exhibits originally filed with the Court on June 25, 2014 [ECF 6073-2] and signed by the NFL Parties, (2) communicated in the notices sent to the Class Members in both the Long Form Notice [ECF 6093-1] and Short Form Notice [ECF 6093-2], and (3) intended by the Court when the Judgment was signed.

In February 2015, the terms of the Settlement were materially changed to the detriment of Class Members like Yvonne Sagapolutele without notice to either the Court or to the Class Members.  This detrimental change was made ***months after*** the deadline to opt out.  The change was detrimental because it prevents Sagapolutele from obtaining a Qualifying Diagnosis of Death with CTE by imposing a diagnosis deadline without any notice.  The notices that were sent to Sagapolutele and other Class Members contained no diagnosis deadline.

After the Fairness Hearing, the Court had requested changes to the Settlement Agreement and expressly told the parties that the changes should improve the deal for

Class Members without providing concessions to the NFL Parties. Nevertheless, one material change was made that saves the NFL Parties millions of dollars by preventing Class Members in Subclass 1[1] from obtaining a Qualifying Diagnosis for Death with CTE. This change results in a grave injustice — stripping Class Members of their ability to obtain settlement funds.

The issue raised in this motion has not been previously considered by either this Court or any appellate court. By considering this issue now and granting this motion, the Court will remedy a grave injustice by allowing Class Members to obtain a qualifying diagnosis in a manner that is consistent with the terms that the parties agreed upon and that were communicated to Class Members.

## **FACTUAL & PROCEDURAL BACKGROUND**

After the deadline for Class Members to opt out had passed, the Court ordered the parties to make several changes to the Settlement to benefit Class Members. These changes were made. However, an additional change was also made to the Settlement that did *not* benefit Class Members. This change is extremely troubling because it was made without notifying either the Court or Class Members that a deadline was being added that prevents Class Members from obtaining a Qualifying Diagnosis for Death with CTE. This change saves the NFL Parties millions of dollars by stripping numerous Class Members of their ability to recover settlement proceeds.

---

[1]   Subclass 1 includes all Retired Football Players who had not obtained a Qualifying Diagnosis by the Preliminary Approval Date.

2

## I. The Settlement Agreement Initially Approved by the Court and Signed by the NFL Parties Imposed No Deadline for Obtaining a Qualifying Diagnosis of Death with CTE.

The Settlement Agreement this Court initially approved imposed no deadline on Class Members seeking to obtain a Qualifying Diagnosis of Death with CTE. *See* Settlement as of June 25, 2014, ECF No. 6073-2, § 6.3(f), Exh. B-1, p. 5. The initially-approved Agreement required that Class Members obtain a post-mortem diagnosis of CTE by a board-certified neuropathologist without imposing any deadline on Class Members. *Id.*

In July 2014, this Court issued a preliminary approval of the Settlement reached by Class Counsel and the NFL Parties. *See* Order Granting Prelim. Approval, ECF No. 6481. This Settlement Agreement[2] was signed by a representative of the NFL Parties, counsel for the NFL Parties, Co-Lead Class Counsel, Class Counsel, and Subclass Counsel. *See* Settlement Agreement as of June 25, 2014, ECF No. 6073-2, p. 95.

The Settlement Agreement stated that Class Members could recover settlement proceeds by obtaining a Qualifying Diagnosis of Death with CTE. *See id.*, § 6.3(f), Exh. B-1, p. 5. The Agreement placed a limit on which Retired NFL Football Players could obtain a Qualifying Diagnosis of Death with CTE — allowing "Retired Football Players who died prior to the date of the Preliminary Approval and Class Certification Order" to obtain a Qualifying Diagnosis of Death with CTE. *Id.* However, the Agreement imposed no deadline on obtaining a Qualifying Diagnosis. *See id.* The only

---

[2]  The Court had previously denied the parties' motion for preliminary approval of an original, previously-agreed-to settlement agreement because of concerns that the original settlement agreement might not adequately compensate Class Members. Mem. Op. at 10, ECF No. 5657.

requirement imposed on obtaining the Qualifying Diagnosis was that eligible Class Members obtain the diagnosis of Death with CTE from a board-certified neuropathologist:

> A Qualifying Diagnosis of Death with CTE shall be made only for Retired NFL Football Players who died prior to the date of the Preliminary Approval and Class Certification Order, through a post-mortem diagnosis by a board-certified neuropathologist of CTE.

*Id.*, § 6.3(f), *see also id.* Exh. B-1, p. 5 (requiring a "post-mortem diagnosis of CTE made by a board-certified neuropathologist").

The NFL Parties sent copies of the Settlement Agreement as of June 25, 2014 to the United States Attorney General and to the Attorney General for each state, the District of Columbia, and the territories. *See* ECF No. 6501 at 2–3.

## II.   The Summary Notice — Approved by the Court and sent to Class Members — Contained No Deadline for Obtaining a Qualifying Diagnosis of Death with CTE.

The Summary Notice sent to Class Members before the deadline to opt out contained no notice of any diagnosis deadline on Class Members seeking to obtain a Qualifying Diagnosis of Death with CTE. *See* Summary Notice, ECF No. 6093-2. The Summary Notice merely stated that Class Members could obtain monetary awards for "certain cases" of CTE "diagnosed after death." *See id.* The Summary Notice contained the opt-out deadline (October 14, 2014) but contained no similar disclosure of a deadline to obtain a post-mortem diagnosis of Death with CTE. *See id.*

### III.    The Long-Form Notice — Approved by the Court and sent to Class Members — Contained No Deadline for Obtaining a Qualifying Diagnosis of Death with CTE.

The Long-Form Notice sent to Class Members contained no deadline on Class Members seeking to obtain a Qualifying Diagnosis of Death with CTE.  *See* Long-Form Notice, ECF No. 6093-1.   In fact, the Long-Form Notice expressly stated that a Qualifying Diagnosis could occur *at any time until the end of the 65-year term of the Monetary Award Fund*.  *See id.* at 10.

Like the Summary Notice, the Long-Form Notice contained no notice of any diagnosis deadline applicable to Class Members seeking to obtain a Qualifying Diagnosis of Death with CTE.  *See id.* at 1 (stating that monetary awards were available for certain cases of CTE "diagnosed after death"), 6 (stating that monetary awards were available for diagnoses of Death with CTE if the death occurred prior to July 7, 2014, i.e., the Preliminary Approval Date), 7 (stating that Subclass 1 includes "Retired NFL Football Players who were <u>not </u>diagnosed with . . . Death with CTE prior to **July 7, 2014**, and their Representative Claimants and Derivative Claimants").

Unlike the Summary Notice, the Long-Form Notice expressly represented to Class Members that they could obtain a diagnosis of Death with CTE "at any time until the end of the 65-year term of the Monetary Award Fund":

> Monetary awards are available for the diagnosis of ALS, Parkinson's Disease, Alzheimer's Disease, [Neurocognitive Impairment,] or Death with CTE (the "Qualifying Diagnoses").  *A Qualifying Diagnosis may occur at any time until the end of the 65-year term of the Monetary Award Fund*.

*Id.* at 10 (emphasis added).

The Long-Form Notice also expressly discussed whether Qualifying Diagnoses could be obtained for deceased players without disclosing any deadline for obtaining a diagnosis of Death with CTE. *Id.* at 14. In that section of the Long-Form Notice, various other restrictions are noted; however, there is no discussion of any deadline for obtaining a Qualifying Diagnosis of Death with CTE. *See id.*

The Long-Form Notice also provided Class Members with a link to the website where they could review the Settlement Agreement as of June 25, 2014. *Id.* at 15. As discussed above, this Settlement Agreement, which Class Members were able to review prior to the opt out deadline, contained no deadline for obtaining a Qualifying Diagnosis of Death with CTE. *See* Settlement as of June 25, 2014, ECF No. 6073-2, § 6.3(f), Exh. B-1, p. 5.

At the end of the Long-Form Notice, Class Members were provided a list of important dates. *See* Long-Form Notice, ECF No. 6093-1, at 20. Nowhere in these important dates is there any deadline to obtain a Qualifying Diagnosis of Death with CTE. *Id.*

## IV. After the Fairness Hearing, the Court Ordered that Changes Be Made to the Settlement to Benefit Class Members Without Providing any Concessions to the NFL Parties.

On November 19, 2014, the Court conducted a Fairness Hearing regarding the Settlement Agreement. *See* Am. Fairness Hr'g Tr., ECF No. 6463. After the Fairness Hearing the Court proposed several changes to the Settlement and expressly instructed the parties that these changes should benefit Class Members by enhancing the "fairness, reasonableness, and adequacy of the proposed Class Action Settlement Agreement." *See*

Order, Feb. 2, 2015, ECF No. 6479.

One of the changes ordered by the Court involved expanding the number of Class Members who could obtain a Qualifying Diagnosis of Death with CTE. *Id.* Specifically, the Court ordered that "Retired NFL Football Players who die between preliminary approval and final approval of the Settlement" should be included in the Settlement and able to receive Settlement funds by obtaining a Qualifying Diagnosis of Death with CTE. *Id.*

The Court's order was clearly intended to benefit the Class by expanding the number of Class Members who can recover settlement proceeds, *not* to benefit the NFL Parties by removing Class Members' ability to recover settlement proceeds by imposing an undisclosed diagnosis deadline. *See id.*; *see also* Court's Memorandum, April 22, 2015, ECF No. 6509, p. 22 ("After reviewing the moving papers, the objections, and the arguments made at the Fairness Hearing, I proposed several changes to the Settlement that would benefit Class Members.") Nothing in this Court's order indicated that a new, previously-undisclosed deadline should be imposed on Class Members that would prevent them from obtaining a Qualifying Diagnosis of Death with CTE. Unfortunately, when the Court's ordered change was made — expanding the number of Class Members who could obtain a Qualifying Diagnosis of Death with CTE — an additional change was made that took away the ability of Class Members to obtain a Qualifying Diagnosis.

At the time of the Fairness Hearing, Yvonne Sagapolutele did not have individual representation.

## V.  Without Notice and after the Opt Out Deadline, a Change was made to the Settlement that Materially Prejudices Class Members and Provides a Benefit to the NFL Parties.

Without notice to Class Members, a change was made to the Settlement Agreement that prevents Class Members from obtaining a Qualifying Diagnosis of Death with CTE. *See* Parties' Joint Amendment, Feb. 13, 2015, ECF No. 6481, § 6.3(f), Exh. B-1, p. 5. This change was made months after the opt out deadline without notice to Class Members.  *See id.*; *see also* Court's Memorandum, April 22, 2015, ECF No. 6509, p. 56. In effect, this change strips numerous Class Members of their ability to obtain a Qualifying Diagnosis of Death with CTE, making it impossible for them to recover settlement proceeds.

### A. After the opt-out period elapsed, the due process rights of all Class Members in Subclass 1 were violated by adding a deadline to obtain a Qualifying Diagnosis of Death with CTE.

Unlike the Settlement Agreement filed in June 2014, which simply required a post-mortem diagnosis of CTE made by a board-certified neuropathologist, a change was included in the midst of otherwise beneficial amendments that imposes an additional requirement that prevents Class Members from recovering settlement proceeds unless they obtained a Qualifying Diagnosis before May 8, 2015.  The change to the relevant language in the Settlement Agreement is shown below with the added language in boldface type and the deleted language noted:

> A Qualifying Diagnosis of Death with CTE shall be made only for Retired NFL Football Players who died prior to the date of the **Final** ~~Preliminary~~ Approval **Date** ~~and Class Certification Order~~, through a post-mortem

diagnosis **made** by a board-certified neuropathologist ~~of CTE~~ **prior to the Final Approval Date**.

*Id.*, § 6.3(f) (edits shown in boldface and strikethrough font), *see also id.* Exh. B-1, p. 5 (requiring a "post-mortem diagnosis of CTE made by a board-certified neuropathologist **prior to the Final Approval Date**") (added language in boldface type). No notice was sent to Class Members notifying them of this significant and prejudicial change to the Settlement *and Class Members were not offered an opportunity to opt out after this substantial change was made*.

### B. Imposing this Qualifying Diagnosis deadline — after the opt out period elapsed and without notice — materially prejudices the rights of all Class Members in Subclass 1.

The amendments to the Settlement Agreement were filed with the Court on February 13, 2015. Although "Opt Outs" received notice of these amendments to the Settlement, *See* Notice, Mar. 31, 2015, ECF No. 6500, no notice was sent to Class Members because the Court was under the impression that all of the changes made to the Settlement Agreement "improved the deal for Class Members without providing any concessions to the NFL Parties." Court's Memorandum, April 22, 2015, ECF No. 6509, p. 56. Although the Court's Memorandum clearly expressed again the Court's intent that all changes were intended to benefit Class Members, the addition of a diagnosis deadline prejudiced the rights of Class Members.

Thus, Class Members were unaware that changes had been made to the Settlement that required them to obtain a Qualifying Diagnosis of Death with CTE by the Final Approval Date. *See id.* It seems that the Court was not aware of these changes, as there

was not an additional round of notice for Class Members. *See id.* ("Because these changes improved the deal for Class Members without providing any concessions to the NFL Parties, an additional round of notice for Class Members is unnecessary.").  And if Class Members had been aware of this change, they could have made an informed decision about whether to obtain a Qualifying Diagnosis for Death with CTE by this new deadline or to opt out of the Settlement.

## VI.   The Court Rendered Judgment in May 2015 and Retained Jurisdiction to Enforce the Settlement Agreement.

Unaware that a material change had been made to the Settlement Agreement that prevents Class Members from obtaining a Qualifying Diagnosis, the Court signed an Amended Final Order and Judgment on May 8, 2015.  ECF No. 6534, at 1.  In this Judgment, the Court incorporated both the Settlement Agreement and exhibits originally filed with the Court on June 25, 2014 and the amendments filed on February 13, 2015. *See id.* at ¶ 8.  The Court also retained continuing exclusive jurisdiction over this action, including jurisdiction over all Parties and their counsel and all Settlement Class Members, to interpret, implement, administer, and enforce the Settlement Agreement. *Id.* at ¶ 17.

At the time the Court rendered judgment, Yvonne Sagapolutele did not have individual representation.

## VII.   No Court has Considered Whether this Material Change to the Settlement Agreement Violates Absent Class Members' Due Process Rights and this Court's Expressed Intention.

Several objectors subsequently challenged the Settlement Agreement without raising the issue discussed in this Memorandum of Law.  Thus, the U.S. Court of Appeals for the Third Circuit has not considered any arguments regarding the material, detrimental change that was made to the Settlement Agreement without notice to class members.

Although several objectors complained that the settlement agreement was unfair because the Settlement Agreement provides no benefits for Death with CTE to retired players who die after the Final Approval Date, the Third Circuit did not consider the problem created by the fact that a significant and prejudicial change was made to the Settlement without offering Class Members an opportunity to opt out after this substantial change had been made.  *See In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 441–44.  In response to that argument, the Third Circuit noted (echoing this Court) that players who may, tragically, pass away in the future because of CTE should be able to receive settlement funds by obtaining other qualifying diagnoses.  *Id.* at 433–34 ("As the District Court noted in discussing the fairness of the settlement, the monetary award [for Death with CTE] 'serves as a proxy for Qualifying Diagnoses [r]etired [p]layers *could* have received while living.'").

And although one objector challenged the notice contending the notice materials "insufficiently disclosed that monetary awards for players are subject to reduction on account of applicable Medicare and Medicaid liens against a player's assets," the Third

Circuit did not consider the more significant problem that a material change was made to the Settlement Agreement without any notice to Class Members. *See id.* at 435–36.

## VIII. In 2017, the Pre-Effective Date Diagnosing Physician Certification Form Incorporated the Deadline that Prevents Class Members from Obtaining a Qualifying Diagnosis for Death with CTE.

In 2017, the Pre-Effective Date Diagnosing Physician Certification Form was made available to Class Members.  This form incorporates the deadline added to the Settlement months after the deadline to opt out and without notice to Class Members.  According to the Pre-Effective Date Diagnosing Physician Certification Form, Class Members cannot submit a pre-effective date diagnosis of Death with CTE unless the diagnosis was made prior to May 8, 2015.  Pre-Effective Date Diagnosing Physician Certification Form, p. 11.  No form has been provided for Class Members to present a claim for a Qualifying Diagnosis of Death with CTE for players who died prior to the Final Approval Date and later obtained a CTE diagnosis.

## TIMELINE

| Date | Document | Relevant Language |
|---|---|---|
| June 25, 2014 | *Original Settlement Agreement [ECF 6073-2]* | 5. **Death with [CTE]**<br><br>For Retired NFL Football Players who died prior to the date of the Preliminary Approval and Class Certification Order, a post-mortem diagnosis of CTE made by a board-certified neuropathologist. |
| July 9, 2014 | *Long-Form Notice* | **14. WHAT DIAGNOSES QUALIFY FOR MONETARY AWARDS?**<br><br>Monetary awards are available for the diagnosis of . . . Death with CTE (the "Qualifying Diagnoses"). A Qualifying Diagnosis may occur at any time until the end of the 65-year term of the Monetary Award Fund. |
| July 9, 2014 | *Summary Notice* | The Settlement provides . . . [m]onetary awards for diagnoses of  . . . certain cases of [CTE] diagnosed after death. |
| Oct. 14, 2014 | *Opt Out Deadline* | |
| Nov. 19, 2014 | *Fairness Hearing* | |
| Feb. 2, 2015 | *Fairness Hearing Order [ECF 6479]* | After reviewing these submissions and arguments, I believe that the following changes would enhance the fairness, reasonableness, and adequacy of the proposed Class Action Settlement Agreement:<br>. . .<br>• The Qualifying Diagnosis of Death with CTE should include Retired NFL Football Players who die between preliminary approval date and final approval of the Settlement;<br>. . . . |

| Feb. 13, 2015 | *Amended                Settlement Agreement [ECF 6481]* | 5. **<u>Death with [CTE]</u>**<br><br>For Retired NFL Football Players who died prior to the **Final Approval Date**, a post-mortem diagnosis of CTE made by a board-certified neuropathologist **prior to the Final Approval Date, provided that a Retired NFL Football Player who died between July 7, 2014 and the Final Approval Date shall have until 270 days from his date of death to obtain such a post-mortem diagnosis**.<br><br>(boldface type added to reflect added language that was not in the prior Settlement Agreement) |
| --- | --- | --- |
| May 8, 2015 | *Final Approval Date* | |

# ARGUMENT & AUTHORITIES

**I.  The Constitutional Due Process Rights of the Absent Class Members were Violated When the Settlement Agreement was Changed after the Opt Out Period and without Notice to Include a Deadline that Prevents them from Obtaining a Qualifying Diagnosis of Death with CTE.**

In a class action lawsuit, large numbers of plaintiffs are class members who are absent from the lawsuit, and their interests must be protected by the named plaintiffs and by the court overseeing the lawsuit.  In this case, although the Court zealously guarded the rights of absent class members, like Yvonne Sagapolutele, an injustice was created when the Settlement was changed to the detriment of Sagapolutele and other similarly situated class members.  Because this change was made both without notice to absent class members and after the deadline to opt out of the settlement, Sagapolutele's due process rights were violated.

In a class action lawsuit, procedural protections must be afforded to absent class members to safeguard their due process rights.  *Hansberry v. Lee*, 311 U.S. 32, 42 (1940);  *In re Diet Drugs Prods. Liab. Litig.*, 431 F.3d 141, 145 (3d Cir. 2005).  At a minimum, due process requires meaningful notice of the class proceedings and the opportunity to be heard and to participate in the class proceedings.  *In re Diet Drugs Prods. Liab. Litig.*, 431 F.3d at 145; *see* Fed. R. Civ. P. 23(a)(4); *see also Van Gemert v. Boeing Co.*, 590 F.2d 433, 440 n.15 (2d Cir. 1978).  When, as in this case, settlement negotiations precede class certification, the district court acts as a "fiduciary who must serve as a guardian of the rights of absent class members."  *In re Gen. Motors Corp.*

*Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *see In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004).

The general rule is that "there has been a failure of due process only in those cases where it cannot be said that the procedure adopted "fairly insures the protection of the interests of absent parties who are to be bound by it." *Hansberry*, 311 U.S. at 42; *In re Diet Drugs Prods. Liab. Litig.*, 431 F.3d at 145. One of the most important procedural protections is meaningful notice, which allows absent class members to decide whether they will be bound by the settlement or judgment in a class action.

Rule 23 requires courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). But courts have broad discretion in applying this rule *so long as* the notice's form and content satisfy the requirements of constitutional due process. *Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985).

Constitutional due process requires that the notice of settlement fairly inform absent class members of the proposed terms of a settlement agreement in sufficient detail to allow them to "make informed decisions on whether they should take steps to protect their rights." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013); *see Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *Hansberry*, 311 U.S. at 42; *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975). Class action procedures do not fairly protect the due process rights of absent class members when the absent class members have not been provided meaningful notice and

an adequate opportunity to participate in the proceedings or opt out. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (discussing *Mullane*, 339 U.S. 306); *Hansberry*, 311 U.S. at 42; *In re Diet Drugs Prods. Liab. Litig.*, 431 F.3d at 145–47.  A notice that does not inform absent class members of the fundamental reason they may want to object to a settlement violates due process.  *See Eisen*, 417 U.S. at 173–74 (quoting *Mullane*, 339 U.S. at 314) (recognizing that "process which is a mere gesture is not due process").

Here, the notice provided to Class Members stated they would be able to recover settlement proceeds if they obtained a Qualifying Diagnosis of Death with CTE.  Neither the notice nor the available Settlement Agreement imposed any deadline on this Qualifying Diagnosis.  In fact, the Long-Form Notice expressly stated that Class Members could obtain a Qualifying Diagnosis for Death with CTE anytime within the 65-year life of the Monetary Award Fund.

After the notice had been sent out and the deadline to opt out had passed, the terms of the Settlement were materially changed, imposing a deadline to obtain a Qualifying Diagnosis of Death with CTE.  This change first appears in the amended Settlement Agreement filed on February 13, 2015.

This deadline severely prejudiced the rights of any Class Members who have not already obtained a Qualifying Diagnosis for Death with CTE because it prevents them from obtaining a diagnosis that would allow them to recover settlement proceeds.  If Class Members had been notified of this deadline in February 2015, they could have either obtained a Qualifying Diagnosis, objected to the addition of this deadline, or

requested the opportunity to opt out. However, Class Members were given no meaningful opportunity to make informed decisions on whether they should take steps to either comply with the deadline or challenge it.

Because Class Members were given no meaningful opportunity to make decisions on whether they should take steps to either comply with the deadline or challenge it, their constitutional due process rights were violated by the addition of this deadline to the Settlement Agreement. *See In re Baby Prods. Antitrust Litig.*, 708 F.2d at 90.

## II. The Court has the Authority and Obligation to Remedy the Violation of the Absent Class Members Constitutional Due Process Rights.

Absent class members may challenge violations of their due process rights in the form of a motion to modify the judgment pursuant to Rule 60 or based on the Court's inherent authority. *In re Diet Drugs Prods. Liab. Litig.*, 431 F.3d at 145 (Rule 60); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380 (1994) (inherent authority).[3] Pursuant to both Rule 60 and its inherent power, the Court has the authority remedy the violation of Class Members' due process rights by removing the deadline for obtaining a Qualifying Diagnosis of Death with CTE that was imposed after the deadline to opt out and without notice to Class Members.

---

[3] The Third Circuit also discussed other potential procedural vehicles for challenging such violations, including a collateral attack on the judgment. *See In re Diet Drugs Prods. Liab. Litig.*, 431 F.3d at 145.

### A. Rule 60(a) gives the Court authority to remove the prejudicial deadline because the deadline was mistakenly incorporated in the Final Order and Judgment.

The Court has the authority under Rule 60(a) to remove the deadline that was added to the Settlement (and thus incorporated into the Judgment) without notice to Class Members because this deadline was mistakenly incorporated into the Judgment.

The Federal Rules of Civil Procedure provide courts with the authority to modify a final judgment whenever a "mistake arising from oversight or omission" is discovered in a judgment.  *See* Fed. R. Civ. P. 60(a).

The inclusion of a deadline to obtain a Qualifying Diagnosis of Death with CTE, which prejudices the rights of Class Members while benefiting the NFL Parties, was clearly a mistake as demonstrated by the Court's Memorandum accompanying the Judgment.  The Court's Memorandum clearly demonstrates that the inclusion of this undisclosed deadline was *mistakenly* incorporated into the Judgment because the Court intended for the changes to benefit Class Members and was under the impression that no changes had been made to the Settlement that would harm Class Members.  This belief is plainly expressed in the Court's Memorandum Opinion, in which the Court repeatedly expressed the intent to incorporate amendments that made the Settlement more favorable to the Class without including any changes that would negatively impact Class Members:

- "I proposed several changes to the Settlement that would benefit Class Members." (pp. 22–23)

- "[T]he Parties amended the Settlement, making it more favorable to the Class." (p. 12)

- "Because these changes improved the deal for Class Members without providing any concessions to the NFL Parties, an additional round of notice for Class Members is unnecessary." (p. 56)

*See* Memorandum, ECF No. 6509, pp. 12, 22–23, 56.

Accordingly, Plaintiff respectfully requests the Court modify the Final Order and Judgment by removing the deadline to obtain a Qualifying Diagnosis of Death with CTE pursuant to Rule 60(a) of the Federal Rules of Civil Procedure.

### B. Rule 60(b) gives the Court authority to remove the prejudicial deadline because modifying the Judgment is necessary to prevent a grave injustice.

The Federal Rules of Civil Procedure also provide courts with the authority to modify a final judgment by amendment when equity demands that the judgment be modified. *See* Fed. R. Civ. P. 60(b)(6).

Rule 60 provides a court with "especially broad" power to grant relief. *In re Linerboard Antitrust Litig.*, 223 F.R.D. 357, 363 (E.D. Penn. 2004) (quoting *Hopper v. Euclid Manner Nursing Home, Inc.*, 867 F.2d 291 (6th Cir. 1988)). This power "has been described as 'a grand reservoir of equitable power to do justice in a particular case.'" *Id.* (quoting *Bernuth, Lembcke Co.*, 20 F.R.D. 116, 117 (S.D.N.Y. 1950)).

A district court's authority to modify a judgment is clearest when the judgment fails to express the court's intention. *F.A.C., Inc. v. Cooperative de Seguros de Vida*, 449 F.3d 185, 191 (1st Cir. 2006).

The Supreme Court recently discussed Rule 60(b)(6) in a case involving a 2014 challenge to a 2006 judgment. *See Buck v. Davis*, 137 S. Ct. 759, 767 (2017). The Court

considered, and reversed, the Fifth Circuit's holding that Buck could not obtain relief from the 2006 judgment pursuant to Rule 60(b)(6). *Id.* The Court noted that Rule 60(b)(6) vests wide discretion in courts when a case presents "extraordinary circumstances." *Id.* at 777–78.

In considering whether a case presents extraordinary circumstances, a court should consider both the risk of injustice to the parties in the particular case and the risk of undermining the public's confidence in the judicial process. *Id.* at 778 (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863–64 (1988)); *see also Exp.-Imp. Bank of U.S. v. Advanced Polymer Sciences, Inc.*, 604 F.3d 242, 247 (6th Cir. 2010) (defining extraordinary circumstances as those situations "where principles of equity mandate relief"). Extraordinary circumstances justify relief in a variety of circumstances, including when there is a lack of notice. *More v. Lew*, 34 F. Supp. 3d 23, 28 (D.D.C. 2014).

This Court has the clear authority to modify the Judgment in this case because the Judgment does not reflect the Court's intent to incorporate changes to the Settlement that benefit the Class without providing concessions to the NFL Parties. *See F.A.C.*, 449 F.3d at 191 (recognizing that a district court's authority to modify a judgment is clearest when the judgment fails to express the court's intention). The Court's intent was clearly expressed prior to the entry of the Judgment. The Court repeatedly expressed the intent to incorporate amendments that made the Settlement more favorable to the Class without including any changes that would negatively impact Class Members. *See* Memorandum,

ECF No. 6509, pp. 12 ("the Parties amended the Settlement, making it more favorable to the Class"), 22–23 ("I proposed several changes to the Settlement that would benefit Class Members"), 56 ("Because these changes improved the deal for Class Members without providing any concessions to the NFL Parties, an additional round of notice for Class Members is unnecessary.").

Moreover, equity demands that the Judgment be modified to remove this severely prejudicial deadline that was imposed in violation of Class Members' constitutional due process rights.  Because a class action results in a judgment that significantly impacts the rights of so many absent class members, it is particularly important that absent class members receive adequate notice.  *In re Baby Prods. Antitrust Litig.*, 708 F.3d at 180. After the notices had been sent and the deadline to opt out had passed, it was appropriate for the Court to approve changes to the Settlement Agreement that benefitted Class Members.  However, the imposition of a deadline to obtain a Qualifying Diagnosis for Death with CTE is clearly not a change that benefits the Class, it only benefits the NFL Parties by preventing numerous Class Members from obtaining a Qualifying Diagnosis. The addition of that deadline without notice to the Class violates their constitutional due process rights.  And the addition of that deadline without notice to the Court resulted in the mistaken incorporation of this deadline into the Judgment.  The addition of this deadline (and its subsequent incorporation into the Judgment) not only results in a severe injustice to the Class, it also undermines the public's confidence in the judicial process, which demands — at a minimum — that an individual receive adequate notice before his

or her rights are prejudiced.  *See id.* at 180; *see also Buck*, 137 S. Ct. at 778 (explaining that relief under Rule 60(b)(6) is particularly appropriate in circumstances which result in both sever injustice to the parties and the undermining of public confidence in the judicial process); *see also Exp.-Imp. Bank of U.S.*, 604 F.3d at 247 (defining extraordinary circumstances as those situations "where principles of equity mandate relief").

### C. The Court has the inherent authority to remove the deadline to obtain a Qualifying Diagnosis of Death with CTE because the Court retained continuing jurisdiction to implement the settlement agreement.

In addition to the authority conferred by Rule 60, federal courts also have the inherent power (deriving from their equity power) to enforce settlement agreements by amending a judgment when the court has retained jurisdiction regarding enforcement of the settlement agreement.  *Kokkonen*, 511 U.S. at 380 (holding that district courts have the inherent authority, deriving from their equity power, to enforce settlement agreements for pending cases or cases in which the district court has expressly retained jurisdiction regarding enforcement of the settlement agreement);  *Hensley v. Alcon*, 277 F.3d 535, 540–41 (4th Cir. 2002) (broadly stating that "district courts have inherent authority, deriving from their equity power, to enforce settlement agreements" when the parties reached a complete agreement and the court is readily able to determine its terms and conditions). When the district court is involved in the settlement negotiations, the district court's decision to amend a judgment enforcing the settlement is given particular weight. *Román-Oliveras v. P.R. Elec. Power Auth. (PREPA)*, 797 F.3d 83, 87 (1st Cir. 2015).

Give the Court's involvement in the settlement negotiations, approval of the

Settlement, and administration of the Settlement, the Court has the authority to amend the judgment to enforce the Settlement Agreement terms the Court believed it was incorporating into the Final Order and Judgment.  In light of the Court's clear intention to incorporate into the Judgment only those amendments to the Settlement Agreement that benefitted Class Members, modifying the Final Judgment is appropriate pursuant to this Court's inherent power to enforce and administer the settlement in this case. *See F.A.C., Inc.*, 449 F.3d at 191; *See also Kokkonen*, 511 U.S. at 380; *Hensley*, 277 F.3d at 540–41; *Román-Olieras*, 797 F.3d at 87; *In re Linerboard Antitrust Litig.*, 223 F.R.D. at 363.

## <u>CONCLUSION & PRAYER FOR RELIEF</u>

The issue raised in this memorandum is an issue of first impression in this case — it has not previously been considered in this case by this Court or any other court.  The detrimental change to the Settlement Agreement was not considered by the Court at the Fairness Hearing because at that time the change had not been made and there was no deadline to obtain a qualifying diagnosis of Death with CTE.  The prejudicial change was not raised by any of the settlement objectors, so it was not analyzed or considered by the Third Circuit.  And the material change was not considered by the Court either when the amendments to the Settlement Agreement were filed with the Court on February 13, 2015 or when the Court issued its memorandum explaining that Class Members were not notified of the changes to the Settlement Agreement because the Settlement Agreement "improved the deal for Class Members without providing any concessions to the NFL Parties." Court's Memorandum, April 22, 2015, ECF No. 6509, p. 56.

Accordingly, because the terms of the Settlement were materially changed to the detriment of Class Members like Yvonne Sagapolutele without notice to either the Court (so the Court could order that proper notice be provided) or to the Class Members (so they could decide whether to opt out), Plaintiff and Absent Class Member Yvonne Sagapolutele respectfully requests that the Court grant this motion.

Dated: August 15, 2017

Respectfully Submitted:

/s/ Justin Demerath

**Justin Demerath**
Texas State Bar No. 24034415
**David Campbell**
Texas State Bar No. 24057033
O'HANLON, DEMERATH & CASTILLO
808  West  Avenue
Austin, TX 78701
Telephone: (512) 494-9949
Facsimile:  (512)  494-9919
jdemerath@808west.com
dcampbell@808west.com

**Counsel for Plaintiff and Absent Class Member Yvonne Sagapolutele**
*pro hac vice*

25