UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | Case No. 12-md-2323 (AB)<br><br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>Plaintiffs,<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | **Hon. Anita B. Brody** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

MOTION TO DETERMINE PROPER ADMINISTRATION
OF CLAIMS UNDER THE SETTLEMENT AGREEMENT
AND INCORPORATED MEMORANDUM OF LAW

Retired NFL Players Anthony Allen, Brandon Banks, Josh Bell, Fred Bennett, Michael Coe, Emanuel Cook, Dedrick Epps, Steven Harris, Javarris James, Stefan Logan, Tony Nathan, Durwood Roquemore, Maurice Smith, Reggie Smith, Eric Streater and Cornell Webster (collectively the "Movants") file this Motion to Determine Proper Administration of Claims Under the Settlement Agreement and Incorporated Memorandum of Law (the "Motion"), and in support state as follows:

**Summary of the Motion**

1.  The administration of the Settlement Agreement has presented challenges, which

have resulted in the modification of the plain meaning of the terms and conditions contained in the Settlement Agreement. In an effort to administer the Settlement Agreement, while at the same time setting procedures to protect against fraudulent claims, the Claims Administrator has "read" additional language into the Settlement Agreement that does not exist.[1]

2. For example, the Claims Administrator has added language to the phrase "corroborated by documentary evidence" contained in Section 1(a)(iii) and 2(a)(iii) of Exhibit 1 to the Settlement Agreement, such that the phrase now means "corroborated by documentary evidence that existed before the date of the Qualifying Diagnosis . . . ." The additional language "read" into the definition of corroborating evidence (along with other examples explained in this Motion) is not contained in the Settlement Agreement, but modifies the requirements to qualify for a Monetary Award under the Settlement Agreement, and amounts to a *de facto* amendment.

3. The unapproved additional language, among other additions explained below, has a material adverse impact on the rights of the Class Members. However, notice of a proposed amendment to the affected Class Members has not been provided as required under the law (and under the Settlement Agreement).

4. This Court has authority to enforce the Settlement Agreement and ensure compliance with its terms. Accordingly, the Movants respectfully request that the Court (a) compel the Claims Administrator to administer the Settlement Agreement according to its terms; (b) declare all additional language "read into" the Settlement Agreement void; (c) require that the Claims Administrator disclose its internal procedures, bases and criterion used to evaluate claims, or alternatively, allow discovery on an expedited basis; (d) determine whether the internal procedures, bases and criterion are consistent with the Settlement Agreement; and (e)

---

[1] Movants' Counsel has no reason to believe, and is not suggesting, that the Claims Administrator has intentionally taken action to undermine the Settlement or obstruct the process. Rather, it appears that zealous protection of the process has occurred at the expense of certain Claimants including Movants.

toll the 120 day time period under which affected Class Members are required to "cure" purported Deficiencies from the date of the Deficiency Notices until the date that the Court makes a determination on the issues raised and relief requested in this Motion.

**Legal Standard**

*Notice of Settlement to the Class Under Rule 23*

5.  In another Eastern District of Pennsylvania MDL, *In re Diet Drugs, Sales Practices & Prods. Liab. Litig.* MDL 1203, 226 F.Supp.2d 498 (E.D. Pa. March 15, 2005). ("*Diet Drugs*"), the Court identified the personal jurisdiction and notice requirements that must be met to amend a class settlement:

> Reasonable notice combined with an opportunity to be heard and withdraw from the class satisfy the due process requirements of the Fifth Amendment. … In addition, in a settlement class maintained under Rule 23(b)(3), class notice must meet the requirements of both Federal Rules of Civil Procedure 23(c)(2) and 23(e). Under Rule 23(c)(2), notice to the class must be "the best practicable notice under the circumstances, including individual notice to all members who can be identified through reasonable effort. The Rule also requires that the notice indicate an opportunity to opt out, that the judgment will bind all class members who do not opt out and that any member who does not opt out may appear through counsel. Rule 23(e) requires that notice of a proposed settlement must inform class members: (1) of the nature of the pending litigation; (2) of the settlement's general terms; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the Fairness Hearing [citations omitted].

*See Diet Drugs*, 226 F.Supp.2d at 517-518 (the court held, among other things, that the Seventh Amendment to Settlement Agreement, which materially changed the settlement by reducing payouts to certain eligible class members and eliminating certain opt out rights, met notice requirements and was fair, adequate and reasonable).

6.  The Court in *Diet Drugs* further explained that "the notice document must describe, in detail, the nature of the proposed settlement, the circumstances justifying it, and the

consequences of accepting and opting out of it." *See id*.

### *Notice of Settlement upon Amendment or Modification*

7. With respect to an amendment to a Settlement Agreement, notice "is only required where the amendment to the settlement agreement would have a material adverse effect on the rights of class members." *See In re Diet Drugs Prods. Liability Litig.,* No. 99–20593, 2010 WL 2735414, at *6 (E.D.Pa. July 2, 2010) (in MDL where notice of Tenth Amendment to Settlement Agreement and opportunity to object was provided to class, Court approved amendment as fair, adequate and reasonable). The class must be provided notice of an amendment or modification if it will materially alter a previously approved settlement agreement. *See In re Baby Prods. Antitrust Litig.,* 708 F.3d 163, 175 n. 10, 182 (3d Cir.2013) (held, among other things, that "supplemental notice should be provided to the class if the settlement is materially altered on remand").

8. Paragraph 18 of the Amended Final Order and Judgment entered on May 8, 2015 provides: "Without further approval from the Court, and without the express written consent of Class Counsel and Counsel for the NFL Parties, the Settlement Agreement is not subject to any change, modification, amendment, or addition." *See* MDL ECF No. 6534, p. 8.

### **Pre-Effective Date Qualified Diagnoses Under Section 6.3(c)**

9. Counsel for the Movants ("Movants' Counsel") has submitted numerous claims packages on behalf of clients (the "Claims Packages") to the Claims Administrator under the Amended Class Action Settlement Agreement (MDL ECF No. 6481-1) (approved on April 22, 2015 and amended May 8, 2015, the "Settlement Agreement").

10. The Claims Packages were submitted on behalf of Retired NFL Players who obtained a Qualifying Diagnosis under Section 6.3(c) of the Settlement Agreement (*i.e.* after the

date of the Preliminary Approval and Class Certification Order but before the Effective Date).

*See* MDL ECF No. 6481-1, p. 32[2].

    11.    Section 6.3(c) provides as follows:

> From the date of the Preliminary Approval and Class Certification Order through the Effective Date, a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, or ALS shall be made only by board-certified neurologists, board- certified neurosurgeons, or other board-certified neuro-specialist physicians, except as set forth in Section 6.3(e).

*See* MDL ECF No. 6481-1, p. 32

    12.    Qualifying Diagnoses for Monetary Awards are defined in Exhibit 1 to the Settlement Agreement. *See* MDL ECF No. 6481-1, p. 32 and 105-110. The criteria Claimants must meet for a Qualifying Diagnosis depends upon when and how they are diagnosed, and certain requirements are more stringent than others.

    13.    Claimants who present Pre-Effective Date Claims outside of the BAP must meet the following for a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment:

> For living Retired NFL Football Players diagnosed outside of the BAP, a diagnosis while living of Level 1.5 Neurocognitive Impairment, *i.e.,* early dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 1(a)(i)-(iv) above, made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

*See* MDL ECF No. 6481-1, p. 107.

    14.    Claimants who present Pre-Effective Date Claims outside of the BAP must meet the following for a Qualifying Diagnosis of Level 2.0 Neurocognitive Impairment:

> For living Retired NFL Football Players diagnosed outside of the BAP, a diagnosis while living of Level 2 Neurocognitive Impairment, *i.e.,* moderate dementia, based on evaluation and evidence generally consistent

---

[2] Page numbers refer to the ECF stamped page numbers unless otherwise indicated.

with the diagnostic criteria set forth in subsection 2(a)(i)-(iv) above, unless the diagnosing physician can certify in the Diagnosing Physician Certification that certain testing in 2(a)(i)-(iv) is medically unnecessary because the Retired NFL Football Player's dementia is so severe, made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

*See* MDL ECF No. 6481-1, p. 108-9.

15. Claims Packages submitted under Section 6.3(c) must meet the corresponding Pre-Evaluation Date requirements, not the BAP or Post Effective Date requirements.

**Deficiency Notices Issued by the Claims Administrator**

16. The Claims Administrator issued a Notice of Claims Package Deficiency for numerous Claims Packages submitted for approval of awards under the Settlement Agreement (collectively the "Deficiency Notices"). A single redacted Notice of Claims Package Deficiency (the "Exemplar Notice") is attached as **Exhibit 1**. The Exemplar Notice illustrates four deficiencies alleged by the Claims Administrator throughout the Deficiency Notices:

(a) Alleged Deficiency No. 1 provides:

*You did not submit any medical records from the Physician who signed the Diagnosing Physician Certification Form and examined the Retired NFL Football Player.*

(b) Alleged Deficiency No. 2 provides:

*Your medical records did not show any neuropsychological testing for evidence of cognitive decline from a previous level of performance in the required number and type of cognitive domains (complex attention, executive function, learning and memory, language, and perceptual-spatial).*

(c) Alleged Deficiency No. 3 provides:

*Your medical records indicate that the diagnosing physician did not consider documentary evidence of functional impairment for a Qualifying Diagnosis of Level 1.5 or 2 Neurocognitive Impairment. The Settlement Agreement requires that pre-Effective Date Qualifying Diagnoses of Level 1.5 or 2 Neurocognitive Impairment be based on evidence and evaluation*

> *generally consistent with Exhibit A-1, subsections 1(a)(iii) and 2(a)(iii). These sections contemplate that the Retired NFL Football Player's functional impairment be corroborated by documentary evidence, such as medical records or employment records from before the date of the Qualifying Diagnosis, the sufficiency of which will be determined by the physician making the Qualifying Diagnosis. If no such corroborating documentary evidence exists, the Settlement Agreement contemplates that functional impairment be corroborated by a sworn statement from a person familiar with the Retired NFL Football Player's condition (other than the player or his family members).*

(d)     Alleged Deficiency No. 4 provides:

> *Settlement Agreement Exhibit A-1 requires that the Retired NFL Football Player exhibit functional impairment generally consistent with the criteria set forth in the National Alzheimer's Coordinating Center's Clinical Dementia Rating (CDR) scale Category 1.0 (for Level 1.5 Neurocognitive Impairment) or Category 2.0 (for Level 2 Neurocognitive Impairment) in the areas of Community Affairs, Home & Hobbies, and Personal Care. Your medical records do not indicate that the diagnosing physician evaluated functional impairment in the required areas.*

*See* Exemplar Notice, attached as **Exhibit 1** (the alleged deficiencies identified in the Exemplar Notice shall collectively be referred to as the "Deficiencies").

**The Deficiency Notices do not Track the Settlement Agreement.**

17.     Upon receipt of the Deficiency Notices, Movants' Counsel compared the alleged Deficiencies in the Deficiency Notices to the language contained in the Settlement Agreement and found that the Deficiency Notices contain additional language that is inapplicable to Pre-Effective Date Claims Packages.  Specifically, the Deficiency Notices contradict, change, modify and amend the Settlement Agreement by requiring Pre-Effective Date Claims Packages to meet the exact BAP or Post Effective Date requirements.  The Deficiencies should not apply to Pre-Effective Date Claimants who submitted Claims Packages.

18.     The Settlement Agreement specifically provides that "generally consistent" shall not be read to mean identical to the BAP or the Post Effective Date diagnosis criteria:

> For the avoidance of any doubt, the review of whether a Qualifying Diagnosis is based on principles generally consistent with the diagnostic criteria set forth in Exhibit 1 (Injury Definitions) does not require identical diagnosis criteria including without limitation, the same testing protocols or documentation requirements.

*See* MDL ECF No. 6481-1, p. 37-8.

In other words, the Settlement Agreement specifically provides that "generally consistent" does not mean the same documentation requirements identified under the BAP diagnosis criteria under Section 1(a)(i)-(iv), Exhibit 1 to the Settlement Agreement.

19. In addition, a diagnosis of Level 1.5 Neurocognitive Impairment for Retired NFL Players diagnosed through the BAP[3] contains, in relevant part, the following:

> Such functional impairment shall be corroborated by documentary evidence (*e.g.*, medical records, employment records), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis.

*See* MDL ECF No. 6481-1, p. 107.

There is no language contained in the Settlement Agreement requiring that corroborating documentary evidence must have been generated before the Qualifying Diagnosis. However, the Claims Administrator has "read" additional language into the Settlement Agreement requiring that corroborating documentary evidence existed in advance of the Qualifying Diagnosis. The Settlement Agreement requires that "functional impairment" be "corroborated by documentary evidence"; which is satisfied by documents generated at the time of the examination by the physician making the diagnosis. The Settlement Agreement does not provide that the diagnosing physician must review records that already exist, or that pre-existing documents support their opinion. In essence, the Settlement Agreement provides that the

---

[3] Diagnoses through the BAP under Section 1(b) under Section 1(a)(iii) of Exhibit 1 to the Settlement Agreement does not include Pre-Effective Date diagnoses. *See* MDL ECF No. 6481-1, p. 107.

opinion must be supported by documentation as opposed to an NFL MDL case specific form in which a physician merely checks boxes.

20. Further complicating the issue, the Settlement Agreement specifically provides that "the sufficiency" of any corroborating documentary evidence shall be "determined by the physician making the Qualifying Diagnosis." The Deficiency Notices, however, detour from the Settlement Agreement by failing to accept the Qualifying Diagnoses of (a) the board certified neurologist who made the initial Pre-Effective Date Qualifying Diagnosis, and (b) the Johns Hopkins trained board certified neurologist, who is also an MAF physician approved by NFL Counsel and Class Counsel.

21. The Claims Administrator has essentially issued the Deficiency Notices based upon the opinion of someone (an unidentified Brown Greer employee who is not an MAF physician or board certified neurologist) who has reviewed the Claims Packages of the Class Members, "read" additional requirements into the Settlement Agreement, second guessed the Johns Hopkins trained board certified neurologist, and made a unilateral determination that the MAF physician's determination is insufficient.

22. The Settlement Agreement requires that "functional impairment" be "corroborated by documentary evidence"; which could be the documents generated at the examination by the physician making the diagnosis. The Settlement Agreement does not provide that the diagnosing physician must review records that already exist and that support their opinion. The Settlement Agreement provides that the opinion must be supported by documentation.

23. Moreover, the Settlement Agreement does not require that a certifying doctor must generate records, only that they include the records used to reach the diagnosis. This level

of review is not prescribed by the Settlement Agreement and creates dangerous additional compliance requirements and confusion.

24. Furthermore, the Deficiency Notices provide Claimants incomplete and deficient instructions to cure the purported Deficiencies. If a Claimant were to follow the prescribed "cure" in the Deficiency Notices they would only complete the single prong identified in the Deficiency Notices, and fail to complete the second prong not identified in the Deficiency Notices, but required under the Settlement Agreement. Alleged Deficiency No. 3 provides in relevant part:

> If no such corroborating documentary evidence exists, the Settlement Agreement contemplates that functional impairment be corroborated by a sworn statement from a person familiar with the Retired NFL Football Player's condition (other than the player or his family members).

*See* Exemplar Notice, attached as **Exhibit 1**.

25. Section 2(a)(iii) of Exhibit 1 to the Settlement Agreement provides:

> In the event that no documentary evidence of functional impairment exists or is available, then (a) there must be evidence of severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in the executive function cognitive domain or the learning and memory cognitive domain, and at least one other cognitive domain; and (b) the Retired NFL Football Player's functional impairment, as described above, must be corroborated by a third- party sworn affidavit from a person familiar with the Retired NFL Football Player's condition (other than the player or his family members), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis.

*See* MDL ECF No. 6481-1, p. 107.

26. The Deficiency Notices identify that the deficiency may be cured by submitting the affidavit describe above. However, the Deficiency Notices do not identify the second prong, which basically amounts to a neuro psych test. If a Class Member followed the instructions contained in the Deficiency Notices ("How to Address this Item" section) he would only

remediate one of two criteria required under the Settlement Agreement. The other criteria not addressed would not be included in the resubmitted Claims Package. In addition, compliance with this subsection of the notice contradicts the prior subsection of the Deficiency Notices regarding the "read" in requirement of pre-exam existing corroborated evidence, such that generating a sworn affidavit to cure one subsection of the Deficiency Notices would then result in a cure failure under another subsection at the same time.

27. Under the Settlement Agreement, Section 8.5 provides in relevant part that if a Claims Package is not remediated the after the first Notice of Deficiency, the Claim is denied:

> Any Claim Package or Derivative Claim Package that continues to suffer from a Deficiency identified on the Notice of Deficiency following the submission of documentation intended to cure the Deficiency will be denied by the Claims Administrator.

*See* MDL ECF No. 6481-1, p. 46.

28. In the event that a Claimant were to follow the Claims Administrator's directions in the Deficiency Notices as provided above, such Claimant would not meet the second requirement to cure the deficiency and, under Section 8.5, the Clam would be denied. In this instance, the Claims Administrator is (presumably inadvertently) leading Claimants to permanent denial.

### Confirmation that Additional Language was "Read" into the Settlement Agreement

29. Movants' Counsel contacted the Claims Administrator in numerous emails and telephone calls to verify the supporting basis for the purported Deficiencies alleged by the Claims Administrator in the Deficiency Notices. The Claims Administrator indicated that "generally consistent" means the same thing as the "gold standard" requirements for diagnoses under the BAP or post-Effective Date Qualifying Diagnoses identified in Settlement Agreement Exhibit A-1, subsections 1(a)(iii) and 2(a)(iii). The Claims Administrator acknowledged the lack

of specific language, but lamented the lack of clarity in administering a "generally consistent" standard.

30. The undersigned pointed out to the Claims Administrator that: Pre-Effective Date Qualifying Diagnoses were based upon evaluation and only required to be "generally consistent," not identical with Exhibit 1 subsections 1(a)(iii) and 2(a)(iii); (b) corroborating documentary evidence need not pre-exist the diagnosis; and (c) the physician making the Qualifying Diagnosis may determine the sufficiency of the documentation. Moreover, any adherence to the purported requirements of the "forms" generated for use in administration of the Settlement Agreement places form over substance to the extent the forms do not comply with the Settlement Agreement.

31. The Claims Administrator acknowledged that its administration of the Settlement Agreement added additional language requiring that corroborating documentary evidence existed before the examination by the physician, and that the additional language is not contained in the Settlement Agreement. The Claims Administrator further indicated that the additional language amounted to an amendment of the Settlement Agreement.

**The Changes Amount to an Amendment of the Settlement Agreement.**

32. The *de facto* amendment to the Settlement Agreement (the "Amendment") has a material adverse effect on the rights of certain of the Movants, as well as all class members who obtained a Qualifying Diagnosis under section 6.3(c) after the date of the Class Certification Order, but before the Effective Date[4]. By adding additional language that does not exist in the

---

[4] Section 6.3(c) of the Settlement Agreement provides: "From the date of the Preliminary Approval and Class Certification Order through the Effective Date, a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, or ALS shall be made only by board-certified neurologists, board-certified neurosurgeons, or other board-certified neuro-specialist physicians, except as set forth in Section 6.3(e)."

Settlement Agreement, the Claims Administrator has imposed additional requirements that make it more difficult to prove a claim and may result in the inability to prove a claim. By requiring pre-existing corroborating documentary evidence, and reading "generally consistent with" to mean "exactly the same as" BAP requirements, the Claims Administrator has significantly narrowed, and for some Class Members eliminated, a path to qualify for a Monetary Award. By implementing this Amendment and creating these additional proof standards affected Class Members will lose their ability to prove a Claim.

33. However, before the Amendment could become effective, notice to the affected Class Members should be required because the Amendment has a material adverse effect on the rights of the Movants, as well as any other Class Members with a pre-Effective Date Qualifying Diagnosis under section 6.3(c). Notice of a change, addition, modification or Amendment was never provided to the affected Class Members, and therefore, the Amendment or any related change, addition, modification or alteration is not permissible under the law or the Settlement Agreement.[5]

34. On or about June 29, 2017, at a town hall meeting to former Miami Dolphins players, Claims Administrator Orran Brown stated that "[t]his Settlement Agreement is our playbook, this is what we put to work. We make this program successful because we administer it – we implement it the way it's written, the way the Court approved it, and we do it quickly and we do it correctly." *See* Youtube video: www.youtube.com/watch?v+mQ2643vSroU&t=1060.

35. However, despite what we assume are the best efforts of the Claims Administrator, the Settlement Agreement has not been implemented the way it is written or the way the Court approved it. It has instead been implemented with the un-notice and unapproved

---

[5] Section 6.3(c) of the Settlement Agreement provides that no modifications of Qualifying Diagnosis "can be made absent written agreement between Co-Lead Class Counsel and Counsel for the NFL Parties and approval by the Court… ."

Amendment. The Settlement Agreement must be administered in accordance with its terms without supplementation or amendment that impacts existing rights of Class Members. To the extent a proposed modification or amendment has a material adverse effect on the rights of Class Members, notice must first be provided to the affected class, which has not happened in this case.

WHEREFORE, the Movants respectfully request that this Honorable Court enter an order: (a) compelling the Claims Administrator to administer the Settlement Agreement according to its terms; (b) declaring the Amendment void; (c) requiring that the Claims Administrator disclose its internal procedures and criterion used to evaluate claims; (d) make a determination whether the internal procedures and criterion are consistent with the Settlement Agreement; (e) toll the 120 day time period under which the Movants are required to "cure" the alleged Deficiencies from the date of the Deficiency Notices until the Court makes a determination on the issues raised and relief requested in this Motion; and (f) for all other relief this Court deems necessary.

Dated:  August 15, 2017

Respectfully Submitted,

Patrick J. Tighe
Attorneys for Plaintiffs/Movants
X1LAW, P.A.f/k/a Patrick J. Tighe, P.A.
721 US Highway 1, Ste 121
North Palm Beach, FL 33408
Phone: 561-537-3319
Fax: 561-537-7193
Pat@X1LAW.com
Florida Bar No. 568155

Attorneys for Plaintiffs/Movants
LOREN & KEAN LAW
7111 Fairway Drive, Suite 302
Palm Beach Gardens, FL  33418
Phone: 561-615-5701
Fax: 561-615-5708
mstjacques@lorenkeanlaw.com
Florida Bar No. 0783471

*s/ Michael St. Jacques*
Michael G. St. Jacques, II

# CERTIFICATE OF SERVICE

      I hereby certify that on August 15, 2017, the foregoing document was electronically filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, and that the filing is available for downloading and viewing from the electronic court filing system by counsel for all parties.

      **LOREN & KEAN LAW**

      *s/ Michael St. Jacques*
      **MICHAEL G. ST. JACQUES, II**