UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>      Plaintiffs,<br><br>      v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>      Defendants. | |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

**CO-LEAD CLASS COUNSEL'S MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL
RD LEGAL FUNDING, LLC, RD LEGAL FINANCE, LLC,
RD LEGAL FUNDING PARTNERS, LP, AND RONI DERSOVITZ
TO RESPOND TO THE DISCOVERY REQUESTS PROPOUNDED
IN ACCORDANCE WITH THE COURT'S ORDER OF JULY 19, 2017**

## I.    INTRODUCTION

RD Legal Funding, LLC, RD Legal Finance, LLC, RD Legal Funding Partners, LP, and Roni Dersovitz (collectively, "RD Legal") has refused to respond to the discovery requests Co-Lead Class Counsel ("Class Counsel") propounded upon RD Legal, consistent with the Order issued by this Court on July 19, 2017 [ECF No. 8037].  RD Legal takes the position that this Court

1

does not possess the authority to order the discovery. Separate from its procedural objection to the discovery requests, RD Legal views itself as differently situated from the other entities and persons who are the focus of the Court's July 19th Order, because it purchased portions of the settlement proceeds, rather than lending funds to Class Members. As such, RD Legal contends that the seven Assignment and Sales Agreements, which it did produce, are all one need examine to determine force and effect of those agreements.

For the reasons set forth herein, RD Legal is wrong on both counts. This Court possesses the express and inherent authority to order discovery of entities and persons, like RD Legal. If anything, RD Legal, by allegedly purchasing portions of certain Class Members' potential future monetary awards, to be paid from the res over which this Court presides, and purportedly taking an assignment, has, under its own theory, stepped into Class Members' shoes, thereby submitting itself to this Court's jurisdiction and orders. Further, should this Court not view the agreements between RD Legal and the Class Members as void (on the grounds that the Settlement Agreement does not allow for assignments or because the interest rates are usurious), the Court will still need to review RD Legal's solicitations and communications surrounding the Class Members' decisions to enter into the agreements with RD Legal in order to determine whether they are voidable. As such, the Court should Order RD Legal to respond to the propounded written discovery and to submit to deposition.

## II.  FACTS

Earlier this year, the federal Consumer Financial Protection Board ("CFPB") and New York State Attorney General ("NYAG") brought an action in the Southern District of New York, *Consumer Financial Protection Bureau v. RD Legal Funding*, No. 17-cv-00890 (LAP) (S.D.N.Y.) ("*CFPB v. RD Legal*"), charging RD Legal with violations of the federal Consumer Financial

Protection Act, federal and state laws against deceptive practices, and state usury laws in connection with advances of funds to individuals entitled to benefits under the James Zadroga 9/11 Health and Compensation Act of 2010 and to Class Members in this litigation who are or may be entitled to monetary awards.

That complaint relates to transactions that RD Legal has entered into with at least seven Class Members in this case, as well as other individuals, which the government entities characterize as "loans at usurious interest rates," or "unlawful sale[s] or assignment[s] of [] personal injury claim[s]," which are, in either event, "void." *See CFPB v. RD Legal*, at ECF No. 1 (Complaint), a copy of which is attached as Exhibit A ("Ex. A") to Declaration of Christopher A. Seeger in support of Co-Lead Class Counsel's Motion To Compel, dated August 21, 2017 ("Seeger Decl.").

Class Counsel learned that RD Legal had made an argument in a reply brief in support of their motion to dismiss that "Proceeds from the NFL Settlement Fund Are Assignable." *See* Seeger Decl. Ex. B, *CFPB v. RD Legal*, at ECF No. 37, at 6-7.[1] As a result, Class Counsel sought leave to file an amicus curiae brief in that case in support of the Government's position that the proceeds from monetary awards in this case are not assignable, based on Section 30.1 of the Settlement Agreement. Class Counsel provided this Court with notice of that filing on August 1, 2017. *See* ECF Nos. 8197, 8197-1. The proposed amicus curiae brief argues substantively that the monetary awards pursuant to the Settlement finally approved by this Court are not assignable, and procedurally suggests to Judge Preska that the question of the assignability of Class Members' claims under the Settlement be referred to this Court because the assignability issue is one that

---

[1] Page numbers referenced are to the actual brief, not the ECF-stamped page numbers.

may recur with respect to other lenders to Class Members. To date, Judge Preska has not ruled upon Class Counsel's request.

In the meantime, consistent with this Court's directive set forth in the July 19 Order, Class Counsel propounded Requests for Production of Documents and Interrogatories upon the RD Legal entities, including Mr. Dersovitz,[2] on July 25, 2017. *See* Seeger Decl. at Ex. D (cover letter and discovery requests). Counsel for RD Legal sent an email response on July 31, 2017. *See* Seeger Decl. at Ex. E. On August 8, 2017, RD Legal's counsel sent a cover letter setting forth their position as to why they were declining to provide information responsive to the discovery requests, along with their formal response, which consists of objections and non-responses. *See* Seeger Decl. at Ex. F. Their bases for refusing to provide substantive responses are refuted herein.

RD Legal did provide seven Assignment and Sales Agreements with Class Members. Class Counsel, though, already were in possession of these agreements because RD Legal had publically filed them on ECF as part of their papers in support of a motion to dismiss the CFPB's/NYAG's *CFPB v. RD Legal* action. *See* Seeger Decl. at Ex. G (seven agreements attached to Dersovitz Aff.), submitted on ECF in this case in redacted form.[3] Not including a possible alteration of payments on a sliding scale, based upon an earlier receipt of a monetary award by a Class Member, the following table lists the amounts the Class Members received (i.e., amounts

---

[2] Roni Dersovitz is the President and Chief Executive Officer of Defendant RD Legal Capital, LLC, which is the General Partner of Defendant RD Legal Funding Partners, LP. He is also the managing member of the entities that control Defendants RD Legal Finance, LLC and RD Legal Funding, LLC. *See* Seeger Decl. at Ex. C (Dersovitz Aff.) (*CFPB v. RD Legal,* ECF No. 41).

[3] Although RD Legal already disclosed these Class Members' identities, the amounts of money involved and the expected diagnoses, Class Counsel choose not to again reveal the Class Members' identities in this Court via ECF. The identities of the Class Members are being disclosed to the Court via an unredacted version of Exhibit G.

paid by RD Legal), and the amounts the Class Members will be giving up in the future, should the Court not determine that the agreements are void or voidable:

| Class Member | Paid by RD Legal | To Be Paid to RD Legal from Class Member Monetary Award | Expected Qualifying Diagnosis |
|---|---|---|---|
| Player No. 1 | $202,460.31 | $425,166.66 | Level 1.5 |
| Player No. 2 | $343,120.53 | $665,234.45 | Parkinson's Disease |
| Player No. 3 | $249,574.46 | $510,000 | Level 1.5 |
| Player No. 4 | $249,574.46 | $510,000 | Level 1.5 |
| Player No. 5 | $242,857.14 | $510,000 | Level 1.5 |
| Player No. 6 | $242,857.14 | $510,000 | Level 1.5 |
| Player No. 7 | $100,000 | $300,000 | Level 1.5 |

### III.   ARGUMENT

Class Counsel submit that, based on Seciton 30.1 of the Settlement Agreement [ECF No. 6481-01] ("No Assignment of Claims"), the RD Legal Assignment and Sales Agreements are void. If the Court agrees, admittedly, then, discovery would be unnecessary. Further, the Court could determine that the contracts are not assignments, and, consistent with the Government's arguments in *CFPB v. RD Legal*, that the interest rates are usurious, without the benefit of discovery.

Should the Court, however, determine that the agreements are not void for these reasons, the agreements could nevertheless be voidable. In order to determine whether they are voidable, discovery is needed as to the solicitations and communications by RD Legal, directed at the Class Members. Indeed, the Court ordered discovery to be conducted in advance of the September 19th hearing because it intends to "address the *legality* of any agreements entered into by the Settlement Class Members as a result of these *solicitations* and may grant any relief the Court deems proper." *See* ECF No. 8037 at 2 (emphasis added).

RD Legal contends that Class Counsel was required to serve a subpoena pursuant to Fed. R. Civ. P. 45 in order to obtain discovery from them, because they are non-parties. RD Legal also

5

asserts that this "Court's July 19, 2017 Order … does not suspend the requirements of Rule 45, nor could it." *See* Seeger Decl. Ex. F.

This Court's Order authorized Class Counsel to conduct the discovery of those who voluntarily subjected themselves to this Court's jurisdiction by entering into agreements with Class Members related to their monetary awards, to be paid out of the res over which this Court presides, the Monetary Award Fund. This Court finally approved the Settlement and has plenary jurisdiction over the settlement corpus and payments made therefrom. Separate from the prohibition on assignments contained in the Settlement Agreement, the issue of the legality of the arrangements between RD Legal and the Class Members is before the Court, and as such, so too are the RD Legal entities, the third-party beneficiaries of the monetary awards to the Class Members with whom they have contracted.

An MDL judge possesses authority over parties and non-parties, as related to the Settlement and the administration thereof, over which he/she presides, under the MDL statute, 28 U.S.C. § 1407, Fed. R. Civ. P. 23(d), and the All Writs Act, 28 U.S.C. § 1651. "Where, as here, a district court retains exclusive jurisdiction over settlement agreements and distribution of settlement funds pursuant to those agreements, it may issue orders necessary to protect the settlement from threats by both parties *and non-parties*." *In re Visa Check/Mastermoney Antitrust Litigation*, No. CV-96-5238 (JG), 2006 WL 1025588, at *4 (E.D.N.Y. Mar. 31, 2006) (citing *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litigation)*, 770 F.2d 328, 336 (2d Cir. 1985) (emphasis added)); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 05-MD-1720 (JG), 2014 WL 4966072, at *31 (E.D.N.Y. Oct. 3, 2014) (same). *See also* David F. Herr, *Annotated Manual for Complex Litigation (Fourth)* § 21.33, at 355 (rev. ed. 2017) ("The judge has ultimate control over communications among the parties, *third parties*,

6

*or their agents* and class members on the subject matter of the litigation to ensure the integrity of the proceedings and the protection of the class.") (emphasis added; footnote omitted).

Indeed, in *Visa Check*, the court held that because the non-parties' "contracts with class members plainly affect the administration of the settlements and the distribution of the settlement funds, the All Writs Act authorize[d] the relief sought by Lead Counsel." *Id.* at *5. In that case, the third party was Spectrum, a claim filing and fund recovery service for commercial class actions, which sought to "entice class members to retain Spectrum to administer their claims and … to purchase their claims outright." *Id.* at *1. Similarly, here, RD Legal has purported to purchase portions of the Class Members' monetary awards, pursuant to its contracts. In *Visa Check*, the court ordered that class notice be sent to all class members who had entered into contracts with Spectrum to notify the class members that the contracts could be voided without legal ramifications within a specified time period if class members submitted affidavits indicating they had relied upon Spectrum's misleading marketing materials in entering into the contracts. Quoting the Supreme Court, the *Visa Check* Court held that "'[t]he power conferred by the [All Writs] Act extends, under appropriate circumstances, to persons who, though *not parties to the original action* or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice." *Id.* at *5 (quoting *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977)) (emphasis added).

The *Visa Check* Court emphasized its intimate involvement with the litigation, the settlement and the administration of the settlement, and recognized its power to be proactive vis-à-vis third parties seeking to involve themselves with class members in order to profit from the settlement funds.

> I have presided over this action since 1996. With the express consent of all parties, I played an active role in the settlement discussions and have maintained an active

7

role in the administration of the settlement. I recognize that Spectrum and firms like Spectrum can provide a valuable service to class members who seek assistance in filing their claims or wish to liquidate those claims. Such firms are a natural and welcome feature of the settlement landscape. But this is not a run-of-the-mill business environment, subject solely to market forces and the principles of contract and tort law that control behavior in that environment. The fact that the merchant class is huge does not alter the nature of the Court's relationship with its members. The settlement of a long, hard-fought case has given those class members a tangible interest in settlement funds. I have an affirmative obligation to protect those interests. If a merchant chooses to sell its claim or pay someone else to process its claim, that is fine with the Court. It is also fine for firms like Spectrum to solicit merchants to use their claim processing or claim purchasing services. The nature of the Court's interest is as simple as it is strong: the class members must not be misled. Where false or misleading statements are used to solicit business from them, I have no intention to sit by and relegate them to a cause of action for breach of contract or fraud. To do otherwise-that is, *to say that I am powerless to take steps, both proactive and reactive, to protect each class member's interest in the settlement funds, even when I know they are being misled-would be an abdication of responsibility. It would also erode the class members' and the public's respect for the settlements themselves, and for the process that produced them.*

*Id.* at *4 (emphasis added). This Court has been similarly proactive and is likewise far from powerless to take steps to protect the Class Members from conduct by third parties. This Court is fully empowered to exercise jurisdiction over RD Legal.

At this juncture, Class Counsel seek to obtain the discovery from which the Court can determine whether Class Members were misled by RD Legal such that it may provide Class Members with the opportunity to void the agreements (assuming they are not void *ab initio* by virtue of the prohibition on the assignment of claims contained in the Settlement Agreement). The Court should not countenance RD Legal's refusal to respond to discovery, based upon its insistence that Class Counsel serve it with a subpoena.[4]

---

[4] Alternatively, if the Court prefers, Class Counsel stand ready to promptly serve a Rule 45 subpoena on RD Legal. In that event, however, the Court should permit a return date of no more than 48 or 72 hours as "a reasonable time" for purposes of Rule 45(d)(3)(A)(i) given that RD Legal was sent the discovery requests back on July 25, 2017, and thus has had ample notice concerning this matter.

## IV.     CONCLUSION

For the reasons stated above, the Court should grant Class Counsel's Motion to Compel RD Legal and order RD Legal to respond to the discovery requests propounded upon them pursuant to the Court's July 19, 2017 Order.

Dated:  August 21, 2017

Respectfully submitted,

/s/ Christopher A. Seeger
Christopher A. Seeger
SEEGER WEISS LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

*Co-Lead Class Counsel*

Sol Weiss
ANAPOL WEISS
One Logan Square
130 N. 18th St. Ste. 1600
Philadelphia, PA 19103
Phone: (215) 735-1130
Fax: (215) 735-2024
sweiss@anapolweiss.com

*Co-Lead Class Counsel*