## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | Case No. 12-md-2323 (AB) |
| | MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*, | **Hon. Anita B. Brody** |
| Plaintiffs, | |
| National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc., | |
| Defendants. | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

### DECLARATION OF MICHAEL G. ST. JACQUES, ESQ.

I, Michael G. St. Jacques, Esq., make the following statements upon my personal knowledge and belief:

1.      My name is Michael St. Jacques.  I am of legal age and sound mind, and I am competent to make this declaration.

2.      On the afternoon of Monday, August 14, 2017, I joined a telephone conference with Patrick Tighe, Esq., attorney at the law firm X1 Law, Sharon Seldow, paralegal attorney at the law firm X1 Law, David Smith, Esq., Supervisor of NFL Claims at the Claims Administrator Brown Greer and Jennifer Godwin, Project Manager at Brown Greer.

1

3.     Mr. Tighe called my mobile phone to join me on the conference to discuss Deficiency Notices issued by the Claims Administrator Brown Greer to a number of Class Members for whom X1 Law submitted Claims Packages.

4.     Numerous items were discussed during the call including the meaning of "generally consistent" as found in the Settlement Agreement (and Exhibit 1 to the Settlement Agreement).

5.     Mr. Smith stated that: "The term generally consistent is difficult to administer. No one can say what generally consistent means." Mr. Smith further indicated that he discussed the term in a conference call with Scott George and an attorney for the NFL, who collectively decided that "generally consistent" means "the same as" the BAP "gold standard" for review of Claims in the Settlement Agreement and Exhibit 1.

6.     At another point during the call, Mr. Smith stated that the settlement did not provide for "IME's" and that he discussed "corroborating documentary evidence," another term provided in the Settlement Agreement and Exhibit 1, with NFL counsel and Co-Lead Class Counsel Mr. George.

7.     Mr. Tighe provided an example of when an examining physician's own records would amount to corroborating documentary evidence.

8.     Mr. Smith indicated that he discussed whether an examining physician's own records could amount to corroborating documentary evidence with NFL Counsel, who indicated that they would not.

9.     Mr. Smith indicated that NFL Counsel told him that the corroborating the documentary evidence must have existed before the examination.

10.     Mr. Tighe and I at separate times indicated to Mr. Smith that there is no language in the Settlement Agreement that requires corroborating documentary evidence to pre-exist the examination, which Mr Smith agreed was accurate.

11.     Mr. Smith stated that the Settlement Agreement did not specifically require that documentation exist in advance of the examination.

12.     However, Mr. Smith stated that other language in the Settlement Agreement could be read to support his position.

13.     Mr. Smith indicated that Co-Lead Class Counsel, Counsel for the NFL and the Claims Administrator discussed and instituted changes regarding administration of claims handling, including but not limited to, the additional language contained in the "deficiency notices" discussed on the call.

14.     Mr. Tighe asked whether one of the claims that had received an "audit" notice was approved, because the Settlement Agreement states that approved claims are subject to audit. Mr. Smith indicated that all claims are subject to audit and that this was automatic. Mr. Tighe pointed out language indicating that the Claim was a pre-effective date Claim with an MAF physician certification. Mr. Smith indicated he would need to look into the issue to explain why the Claim was audited.

15.     Mr. Smith stated that certain portions of the Deficiency Notices were implemented through agreements reached between Co-Lead Counsel, Counsel for the NFL and the Claims Administrator.

16.     Mr. Smith stated that Claims submitted with MAF physician certifications were to stay with the Claims Administrator and should not be subject to audit or review by the AAP, but

could not verify at the time whether this was the case with the X1 Law Claims issued Deficiency Notices.

17.    Mr. Smith stated that where an MAF physician signs a Qualifying Diagnosis certification indicating that the MAF has sufficient records to do so the Claim may still be found Deficient and/or audited.

18.    Mr. Smith further stated that:

   (a)    he would research the Deficiency and audit issues raised during the call;

   (b)    the Claims Administrator had implemented revised Deficiency Notice forms with an additional column and provisions for response and remedy;

   (c)    the Claims Administrator would send "amended" Deficiency Notices on the new forms; and

   (d)    the new Deficiency Notices would provide a new deadline to respond from the date of issuance.

19.    I did not hear Ms. Godwin speak during the call.

PURSUANT TO 28 U.S.C. § 1746(2), I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS IN THIS DECLARATION ARE TRUE AND CORRECT.

Executed on this 23d day of August 2017.

MICHAEL G. ST. JACQUES, ESQ.

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | Case No. 12-md-2323 (AB)<br><br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>          Plaintiffs,<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>          Defendants. | **Hon. Anita B. Brody** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## DECLARATION OF PATRICK J. TIGHE, ESQ.

I, Patrick J. Tighe, Esq., make the following statements upon my personal knowledge and belief:

1.      My name is Patrick J. Tighe. I am of legal age and sound mind, and I am competent to make this declaration. I have personal knowledge of the statements made in this declaration.

2.      On or about July 27, 2017, I spoke with Peter Matthews, Esquire of Brown Greer, who was assigned as our contact by the Claims Administrator.

3.      I contacted Mr. Matthews for a number of reasons, one of which was to verify the Claims Administrator's treatment of certain Claims submitted on behalf of our clients, Retired NFL Players and Class Members.

4.      Specifically, during our conversation I asked Mr. Matthews why he was treating Pre-Effective Date Claims as if they were Claims being evaluated under the BAP standards. He indicated that "Co-Lead Class Counsel and NFL Counsel agreed to amend the Settlement Agreement requirements such that all Pre-Effective Date Claims would follow the same standards as the BAP."

5.      On or about Monday, August 14, 2017, I participated in a telephone conference with David Smith, Esquire, of Brown Greer, Supervisor of the claims team assigned to our class members, Jennifer Godwin, Project Manager, also of Brown Greer and also assigned to handle our class member's claims and who is our contact for the Claims Administrator, Attorney, Michael St. Jacques and my paralegal, Sharon Seldow.

6.      My paralegal scheduled the telephone conversation with Ms. Godwin for the purpose of discussing "deficiency notices" issued to a number of Class Members for whom we submitted Claims Packages.

7.      One point of discussion during the call was the term "generally consistent" found in Exhibit 1 to the Settlement Agreement. Mr. Smith indicated that: "The term generally consistent is difficult to administer. No one can say what generally consistent means." Mr. Smith further indicated that he and Scott George and an attorney for the NFL participated on a telephone conference and made the determination that "generally consistent" would be mean "the same as" the BAP "gold standard" for review of Claims.

8.      Mr. Smith further indicated that he discussed whether an examining physician's own records could amount to corroborating documentary evidence with NFL counsel. Mr Smith indicated that NFL counsel said "no way" the documents must have existed before the examination.

2

9.     I indicated to Mr. Smith that there is no language in the Settlement Agreement that requires corroborating documentary evidence to pre-exist the examination.  Mr. Smith agreed that, technically, I was correct and the Settlement Agreement did not specifically require that documentation exist in advance of the examination.  However, Mr. Smith indicated that other language in the Settlement Agreement could be read to support his position.

10.    Mr. Smith indicated that Co-Lead Class Counsel, Counsel for the NFL and the Claims Administrator discussed and determined that certain changes were to be instituted with regard to the administering of claims handling, including but not limited to, the additional language contained in the "deficiency notices" discussed on the call.

11.    When questioned if one of the claims that had received an "audit" notice was approved, because the Settlement Agreement states approved claims are subject to audit, Mr. Smith indicated that all claims are subject to audit and that this was automatic. However, when I read the language to him on the fact that this was a pre-effective date claim with an MAF physician certification, he could not explain why we received the audit in the first place.

12.    Further conversation included continued elaboration by Mr. Smith that certain portions of the issued deficiencies were congruent with the agreements verbally reached by Co-Lead Counsel, Counsel for the NFL and the Claims Administrator but did consent that all claims submitted with MAF physician certifications were to stay with the Brown Greer and should not be subject to audit or review by the AAP. Mr. Smith could not verify if this is not the case with this firm's deficiencies.

13.    When pressed about both the deficiency issue and the audit issue, I was advised that the matter would be looked into and that we would receive "amended" notices of deficiency, including the new notice of deficiency form with column provisions for response and remedy, and

that he would re-start the time and provide a new deadline to respond.  However, as of this date, no new notices have been issued or uploaded to the portal.

14.    Also discussed was if an MAF physician signs a qualifying diagnosis certification and states that he/she has sufficient records to do so, as this is the "gold standard" is it still possible for it to be found deficient and he said "yes".

PURSUANT TO 28 U.S.C. § 1746(2), I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS IN THIS DECLARATION ARE TRUE AND CORRECT.

Executed on this <u>23</u> day of August 2017.

PATRICK J. TIGHE, ESQ.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | Case No. 12-md-2323 (AB)<br><br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated,*<br><br>              Plaintiffs,<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>              Defendants. | **Hon. Anita B. Brody** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**DECLARATION OF SHARON SELDOW, PARALEGAL**

    I, Sharon Seldow, Paralegal, make the following statements upon my personal knowledge and belief:

    1.    My name is Sharon Seldow. I am of legal age and sound mind, and I am competent to make this declaration.

    2.    On or about Monday, August 14, 2017, I participated in a telephone conference with the following parties: David Smith, Esquire, Partner of Brown Greer and the overseer and supervisor of the team assigned to handle our class member, Jennifer Godwin, who is also employed with Brown Greer as a Project Manager and our direct contact to the Claims Administrator, Attorney Patrick J. Tighe, Attorney Michael St. Jacques and myself.

1

3.      I was contacted by Jennifer Godwin at Brown Greer via email to schedule the conference to discuss the "deficiency notices" issued to our firm, and I arranged the time and date with her for the telephone conference.

4.      Many issues and concerns were discussed during the phone call which included the following subjects:

5.      Audit – the first question asked by Mr. Tighe was with regard to one of our claims that had received an "audit" notice. When Mr. Tighe asked about whether this particular claim which received the "audit" notice had been approved, stating that according to the Settlement Agreement approved claims are subject to audit, Mr. Smith's response was that all claims are subject to audit and that it was automatic and did not imply that it was an approved claim. Mr. Tighe tried to explain several times that the claim we were discussing was a pre-effective date claim with an MAF physician certification and Mr. Smith seemed to be surprised to hear this and said he would need to look into the matter to determine why it was audited.

6.      Deficiency notices – according to Mr. Smith, apparently Co-Lead Counsel, Counsel for the NFL and the Claims Administrator had discussed and verbally decided that "changes" were agreed upon and instituted with regard to the administrator of claims handling, which included but was not limited to, adding language contained in the deficiency notices.

7.      Term meaning for "generally consistent" – Mr. Tighe pressed Mr. Smith on the meaning of generally consistent as it is laid out in the Settlement Agreement. Mr. Smith admitted that the term is difficult to define and to administer as no one can accurately say what determines generally consistent. Mr. Smith advised that he had discussed the term in a conference call with Attorney Scott George and an attorney for the NFL, and they had decided that it meant "the same as" the BAP "gold standard".

8.    IME - this topic was also addressed in terms of corroborating documentary evidence. Mr. Smith said that the doctor diagnosing needs to be the examining physician and that the exception in 8.3(a) "implies" that there are to be no IME's. Mr. Tighe gave Mr. Smith an example of how when an examining physician's own records would amount to "corroborating documentary evidence" and Mr. Smith's response was that he discussed whether an examining physician's own records could amount to corroborating documentary evidence with NFL Counsel, who indicated that they would not. Mr. Smith said that he was told that the corroborating documentary evidence must have existed before the examination. Mr. Tighe and Mr. St. Jacques tried to point out several times that this language does not appear in the Settlement Agreement and Mr. Smith agreed that this was correct, however he stated that other language in the settlement agreement could be interpreted to support this position

9.    During this telephone conversation, I did not speak and Ms. Godwin did not speak.

PURSUANT TO 28 U.S.C. § 1746(2), I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS IN THIS DECLARATION ARE TRUE AND CORRECT.

Executed on this 23 day of August 2017.

SHARON SELDOW, PARALEGAL