**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION

No. 2:12-md-02323-AB

MDL No. 2323

**Hon. Anita B. Brody**

Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated,*

Plaintiffs,

v.

National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,

Defendants.

Civ. Action No. 14-00029-AB

THIS DOCUMENT RELATES TO: ALL ACTIONS

**CO-LEAD CLASS COUNSEL'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL (1) CASE STRATEGIES GROUP (F/K/A NFL CASE CONSULTING, LLC), IT STRATEGIES GROUP, INC., CRAIG SIENEMA, AND JAMES MCCABE; AND (2) LIBERTY SETTLEMENT SOLUTIONS, LLC, LIBERTY CONTINGENT RECEIVABLES, LLC, LIBERTY SETTLEMENT FUNDING, JMMHCS HOLDINGS, LLC, MARC HERMES, CRAIG SIENEMA, AND JAMES MCCABE TO RESPOND TO THE DISCOVERY REQUESTS PROPOUNDED IN ACCORDANCE WITH THE COURT'S NOTICE & ORDER OF JULY 19, 2017**

## I. INTRODUCTION

The *Manual for Complex Litigation* warns courts and those appointed by courts to serve as class counsel to be wary of entities purporting to perform exactly the types of services offered by Case Strategies Group, formerly known as NFL Case Consulting, LLC ("CSG"), namely, so-called

"claims management services," "settlement claim assistance," or various and sundry other descriptors in the context of a class action settlement:

> The court and counsel should be alert to the possibility of persons soliciting class members after the settlement and offering to provide "collection services" for a percentage of the claims. Such activities might fraudulently deprive class members of benefits provided by the settlement and impinge on the court's responsibility to control fees in class actions.

David F. Herr, *Annotated Manual for Complex Litigation, Fourth* ("*Manual for Complex Litigation*") § 21.662, at 389 (rev. ed. 2017) (footnote omitted).

Consistent with the Notice & Order issued by this Court on July 19, 2017 [ECF No. 8037], Co-Lead Class Counsel ("Class Counsel") propounded discovery requests upon CSG and the related entities and persons who are the subject of this motion (collectively referred to herein as "CSG," unless otherwise indicated). Refusing to respond, CSG takes the position that this Court does not possess the authority to order discovery and that subpoenas are required. Separate from its procedural objection to the discovery requests, CSG also refuses to produce discovery from the pre-April 18, 2017 time period, claiming it is irrelevant and objectionable because the purported remedial measures it undertook served to cure any prior misrepresentations, thereby insulating the prior communications from being discoverable. Finally, CSG seeks to limit the depositions to a single Fed. R. Civ. P. 30(b)(6) deposition.

CSG is wrong on all counts. This Court possesses the express and inherent authority to order discovery of entities and persons, like CSG. CSG, although admittedly not a law firm, contracts with Class Members for contingent percentages of their potential future monetary awards. Thus, CSG expects to be paid from the res over which this Court presides, namely, the Monetary Award Fund. By contracting to take a percentage of future monetary awards, CSG steps into the shoes of Class Members, thereby submitting itself to this Court's jurisdiction and orders.

Further, it was CSG's initial solicitations of and communications with Class Members that brought about the relationships with Class Members, who may have decided to enter into contracts with CSG and may have elected to remain bound by those contracts, based upon the relationship, regardless of whether CSG at some point later supposedly corrected initial misstatements. If the relationship sprang from misinformation or outright intentional deception, the significance of the initial communications cannot be underestimated, particularly vis-à-vis a Class Member who may be neurocognitively impaired. At any rate, Class Counsel should be permitted to conduct discovery, so that these solicitations and communications from both the pre- and the post-April 18, 2017 time periods can be presented to the Court so that it Court can "address the *legality* of any agreements entered into by the Settlement Class Members as a result of these *solicitations* and . . . grant any relief the Court deems proper." ECF No. 8037, at 2 (emphasis added).

Finally, the Court authorized Class Counsel to conduct depositions. *Id*. CSG should not be permitted to limit or to dictate the manner in which Class Counsel proceeds to take depositions, and particularly CSG should not be permitted to force Class Counsel to accept a corporate designee and forgo depositions of fact witnesses.

## II. FACTS

From prior motion practice, the Court is very familiar with the history of CSG, as CSG and under its prior moniker, NFL Case Consulting. The Court is similarly aware of Class Counsel's efforts to ensure that Class Members were not receiving incorrect information from CSG, and most importantly that Class Members were not making decisions to enter into, or to remain bound by contracts with CSG – under which they would surrender a percentage of a future monetary award in return for CSG's services – based upon inaccurate information or any misunderstanding or misconception relating to CSG's identity or services.

Without rehashing too much of the procedural history as related to CSG, in short, on March 27, 2017, Class Counsel filed a Motion for Injunction Prohibiting Improper Communications with the Class by Jim McCabe and NFL Case Consulting, LLC [ECF Nos. 7347, 7347-1, 7347-2]. Following a telephonic court conference on April 13, 2017,[1] the filing of numerous joint and separate status reports by Class Counsel and counsel for CSG,[2] several meet-and-confer telephone conferences between counsel, and the exchanges of numerous letters and emails between counsel, Class Counsel determined that a resolution with CSG could not be reached without making the Court aware of increasing reports of Class Member confusion and certain actions taken by CSG after the filing of the motion for injunction, which either caused more confusion among Class Members, or brought their continuing confusion to light.[3] Class Counsel also were compelled to simultaneously make the Court aware of confusion on the part of Class Members as a result of deceptive solicitations engaged in by others. As such, on June 6, 2017, Class Counsel withdrew

[1] ECF No. 7452.

[2] ECF Nos. 7532, 7585, 7624, 7625, 7711, 7768, 7777, 7782.

[3] CSG changed its website to include several outright falsehoods after the motion for injunction was filed. Once Class Counsel made CSG aware of the misrepresentations through the meet-and-confer process, CSG changed its website content again, and instituted an alleged remedial procedure involving certain verbal (telephonic disclosures) to Class Members with whom CSG had contracted and an opportunity for those Class Members to "opt back into" a contract with CSG, or the option to void the contract. Confused telephone calls to the Claims Administrator and Class Counsel from those "clients" whom CSG terminated for failure to sign and return the "opt back in" letter highlighted the Class Members' misconceptions, *i.e.*, despite the "remedial" procedure, Class Members continued to believe that throughout their dealings with CSG, they actually were communicating with the Claims Administrator or other entity directly affiliated with the Settlement Program. *See* ECF No. 7811-2, at Section II.A.1, and ECF No. 7812, for a more detailed description of what occurred during that period. Although counsel for CSG has repeatedly noted that Class Counsel did not provide specific objections or revisions to the set of disclosures that CSG represented it intended to provide to Class Members with whom it had contracted, *see, e.g.*, Seeger Decl. Ex. D, at 4 n.2, the fact of the matter is that Class Counsel never endorsed the procedure, so there was no need to negotiate over the specifics of proposed disclosures.

the motion for injunction against CSG, because the development of additional facts rendered that motion no longer current [ECF No. 7779]; and on June 9, 2017, they filed a Motion for Approval of Class Notice to Class Members To Address Solicitations Received by Class [ECF No. 7811]. On June 12, 2017, the Court granted the motion and ordered dissemination of a revised version of the proposed Notice. ECF No. 7814.

Although no documents have been produced by CSG, Class Counsel are aware of certain facts related to CSG, gleaned from prior filings and meet-and-confer communications with CSG's counsel, as well as from other sources. These facts highlight the need for discovery from CSG. Specifically, CSG reported that, as of June 21, 2017, it has contracts with 83 Class Members,[4] and is purporting to take "a contingent fee equal to between 8% and 15% of a Class Member's total recovery," in exchange for what it characterizes as "managing and navigating the complicated NFL concussion settlement." ECF No. 7845, at 9 & n.8; *see* ECF Nos. 7812-2 and 7812-3 (two versions of CSG's contracts with Class Members, one with a 15% contingent fee and one with a 10% contingent fee). These contingent percentages are in addition to the amounts that those 83 Class Members (and perhaps others CSG has contracted with since June 2017) will owe under retainer agreements with individual counsel (8% to 10% according to CSG) – most if not all of whom were suggested to Class Members to serve as their counsel by CSG. *See* ECF No. 7845, at 9 n.8. Indeed, CSG claims to have "assist[ed] Client[s] in understanding choices available for retaining legal counsel." *Id.* at 11(g). CSG also highlights the alleged "significant cost savings

[4] CSG did not disclose the identities of the 83 Class Members, and it has not produced any of the agreements between it and Class Members.

and increased expertise that come with the division of labor between CSG and individual counsel."[5] *Id.* at 13.

It was against the backdrop of the numerous prior filings related to CSG that the Court issued its Notice & Order on July 19, 2017, authorizing and directing Class Counsel to conduct discovery. As a result, on July 26, 2017, Class Counsel propounded Requests for Production of Documents and Interrogatories upon Case Strategies Group (formerly known as NFL Case Consulting, LLP), IT Strategies Group, Inc., Craig Sienema and James McCabe ("CSG Entities"); and separately upon related entities, Liberty Settlement Solutions, LLC, Liberty Contingent Recievables, LLC, Liberty Settlement Funding, JMMHCS Holdings, LLC, Marc Hermes, Craig Sienema and James McCabe ("Liberty Entities"). The CSG Entities and Liberty Entities share principals – Messrs. Sienema and McCabe – and are represented by the same counsel.[6] *See* Exhibits ("Exs.") A, B, and C, the cover letter and discovery requests propounded upon the CSG Entities and Liberty Entities, respectively, attached to the Declaration of Christopher A. Seeger, dated August 24, 2017 ("Seeger Decl."). Following a meet-and-confer conference call, counsel for the CSG Entities and Liberty Entities forwarded a letter to Class Counsel, dated August 2, 2017, setting forth the clients' positions and detailing the reasons why they were declining to

[5] In explaining to its "clients" the choices available for retaining individual counsel, CSG evidently ignores the fact that the clients already were represented by court-appointed Co-Lead Class Counsel, following final approval in April 2015. *E.g.*, *Van Gemert v. Boeing Co.*, 590 F.2d 433, 440 n.15 (2d Cir. 1978) (class certification "makes the Class the attorney's client for all practical purposes"), *aff'd*, 444 U.S. 472 (1980); 6 William B. Rubenstein *et al*., *Newberg on Class Actions* § 19:2, at 257-58 (5th ed. rev. 2016) ("[O]nce a class has been certified, the default presumption is that there is an attorney-client relationship between class counsel and the absent class members.").

[6] During the meet-and-confer telephone call on August 1, 2017, counsel for the CSG Entities and Liberty Entities represented that one of the latter, namely, Liberty Settlement Solutions, LLC, d/b/a Liberty Settlement Funding, had sent mailings and handled telephone calls, related to the efforts to contract with Class Members for the provision claims services, so those solicitations and communications are similarly at issue. *See* Seeger Decl. at ¶ 8.

provide information responsive to the discovery requests. *See* Seeger Decl. at Ex. D. Class Counsel sent a responsive letter, on August 4, 2017, refuting CSG's bases for refusing to respond to the discovery propounded. *See* Seeger Decl. at Ex. E. The reasons why CSG's positions set forth in the August 2 letter are unsupportable are addressed herein in detail.

Additional meet-and-confer telephone conversations and exchanges of emails occurred thereafter, but an agreement could not be reached under which the CSG Entities and Liberty Entities would agree to produce responsive materials, absent a subpoena, and under which, even with a subpoena, they would agree to produce documents and audiotapes,[7] reflecting communications involving or regarding Class Members for the time period prior to April 18, 2017. Finally, the issue of depositions in addition to a Rule 30(b)(6) deposition remains open. There are certain fact witnesses, among those who Class Counsel would seek to depose, who were affiliated both with CSG and with another entity, a lender, also represented by CSG's counsel, namely, Justice Funds, LLC[8] – Andrew Schneider, Jason Fingerhut and Vincent Milaccio. *See* Seeger Decl. at Ex. A; *see also* Seeger Decl. at Ex. F (Aug. 15, 2017 email exchange between counsel and cover letter to Justice Funds, LLC, dated Aug. 3, 2017).

## III. ARGUMENT

### A. The Court Has Broad Authority to Order Discovery Pursuant to the MDL Statute, 28 U.S.C. § 1407, Federal Rule of Civil Procedure 23(d), and the All Writs Act, 28 U.S.C. § 1651

CSG contends that Class Counsel was required to serve subpoenas pursuant to Fed. R. Civ. P. 45 in order to obtain discovery from it, because it is a non-party. It asserts that "[w]hile Judge

---

[7] CSG created and maintains audiotapes of its employees' telephone conversations with Class Members. *See* ECF No. 7811-2, at 5 n. 2; ECF No. 7812, at ¶¶ 11, 12.

[8] Justice Funds, LLC will be the subject of a separate motion to compel.

Brody's July 19, 2017 Order permits Class Counsel to 'take discovery' regarding the subject of the Order, nothing in the Order suggests that Class Counsel can circumvent the Federal Rules of Civil Procedure. Here, [the CSG Entities and Liberty Entities] are nonparties, the proper procedural mechanism through which Class Counsel can obtain discovery is by subpoena under Fed. R. Civ. P. 45." Seeger Decl. Ex. D, at 2. That defense fails.

This Court's July 19 Notice & Order authorized Class Counsel to conduct the discovery of those who voluntarily subjected themselves to this Court's jurisdiction by entering into agreements with Class Members related to their monetary awards, to be paid out of the res over which this Court presides, the Monetary Award Fund. This Court finally approved the Settlement and has plenary jurisdiction over the settlement corpus and payments made therefrom. The issue of the legality of the arrangements between CSG and the Class Members is before the Court, and as such, so too are the CSG and Liberty entities, the third-party beneficiaries of the monetary awards to the Class Members with whom they have contracted.

MDL transferee judges possess authority over parties and non-parties, as related to the Settlement and the administration thereof, over which they presides, under the MDL statute, 28 U.S.C. § 1407, Fed. R. Civ. P. 23(d), and the All Writs Act, 28 U.S.C. § 1651. "Where, as here, a district court retains exclusive jurisdiction over settlement agreements and distribution of settlement funds pursuant to those agreements, it may issue orders necessary to protect the settlement from threats by both parties *and non-parties*." *In re Visa Check/Mastermoney Antitrust Litig.*, No. CV-96-5238 (JG), 2006 WL 1025588, at *4 (E.D.N.Y. Mar. 31, 2006) (citing *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 336 (2d Cir. 1985) (emphasis added)); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig*., No. 05-MD-1720 (JG), 2014 WL 4966072, at *31 (E.D.N.Y. Oct. 3, 2014) (same). *See also*

*Manual for Complex Litigation* § 21.33, at 355 ("The judge has ultimate control over communications among the parties, *third parties*, *or their agents* and class members on the subject matter of the litigation to ensure the integrity of the proceedings and the protection of the class.") (emphasis added; footnote omitted).

Indeed, in *Visa Check*, the court held that because the non-parties' "contracts with class members plainly affect the administration of the settlements and the distribution of the settlement funds, the All Writs Act authorize[d] the relief sought by Lead Counsel." 2006 WL 1025588, at *5. In that case, the third party was Spectrum, a claim-filing and fund recovery service for commercial class actions, which sought to "entice class members to retain Spectrum to administer their claims and … to purchase their claims outright." *Id.* at *1. Similarly, here, CSG provides claims-filing services and has purported to take contingent percentages of Class Members' monetary awards, pursuant to its contracts. In *Visa Check*, the court ordered that class notice be sent to all class members who had entered into contracts with Spectrum in order to notify them that the contracts could be voided without legal ramifications within a specified time period if class members submitted affidavits indicating they had relied upon Spectrum's misleading marketing materials in entering into the contracts. Quoting the Supreme Court, the *Visa Check* court held that "'[t]he power conferred by the [All Writs] Act extends, under appropriate circumstances, to persons who, though *not parties to the original action* or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice." *Id.* at *5 (quoting *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977)) (emphasis added).

The *Visa Check* court emphasized its intimate involvement with the litigation, the settlement and the administration of the settlement, and recognized its power to be proactive vis-

à-vis third parties seeking to involve themselves with class members in order to profit from the settlement funds:

> I have presided over this action since 1996. With the express consent of all parties, I played an active role in the settlement discussions and have maintained an active role in the administration of the settlement. . . . The nature of the Court's interest is as simple as it is strong: the class members must not be misled. Where false or misleading statements are used to solicit business from them, I have no intention to sit by and relegate them to a cause of action for breach of contract or fraud. To do otherwise-that is, *to say that I am powerless to take steps, both proactive and reactive, to protect each class member's interest in the settlement funds, even when I know they are being misled-would be an abdication of responsibility. It would also erode the class members' and the public's respect for the settlements themselves, and for the process that produced them.*

*Id.* at *4 (emphasis added). This Court has been similarly proactive and is likewise far from powerless to take steps to protect the Class Members from conduct by third parties. It is fully empowered to exercise jurisdiction over CSG and order it to participate in discovery. *See Jack Faucett Assocs., Inc. v. AT&T*, Civ. A. No. 81-1804, 1985 WL 25746, at *8 (D.D.C. Oct. 18, 1985) (ordering third-party claims processing companies to produce copies of agreements and assignments with class members, solicitation letters and other communications and lists).

Recently, a court presiding over a settlement class addressed the issue of its jurisdiction over third parties:

> Rule 23 and Supreme Court precedent give this Court jurisdiction to protect class members and impose appropriate conditions on intervenors.… McHale and Falgout invaded this class action by sending solicitation letters to members of a certified class. They were not invited. In fact, they acted like vultures. They capitalized on the work that had been done by class counsel and hunted for eligible class members by scouring the state court records. They did not have to expend effort in creating the theory of recovery; they merely had to find those who had been sued by ARS and YWW. They brought themselves within the scope of Rule 23 and this Court's jurisdiction.

*McWilliams v. Advanced Recovery Sys., Inc.*, 176 F. Supp. 3d 635, 642 (S.D. Miss. 2016) (third-party attorneys who attempted to "poach" members of certified class by sending solicitation letters

held subject to court's jurisdiction). *See* ECF No. 7347-3, at 10 (solicitation letter from Mr. McCabe of CSG (on NFL Case Consulting letterhead)).

At this juncture, Class Counsel seek to obtain the discovery from which the Court can determine whether Class Members were misled by CSG such that it should provide Class Members with the opportunity to void the agreements (or other appropriate relief). The Court should not countenance CSG's refusal to respond to discovery, based upon its insistence that Class Counsel serve it with subpoenas.[9]

**B. CSG's Arguments for Limiting Discovery to the Post-April 18, 2017 Time Period Are Unavailing**

CSG takes the position that the so-called remedial procedures it instituted in or about May 2015, procedures that Class Counsel never agreed would alleviate their concerns of continued Class Member confusion, serve to absolve CSG as to any misrepresentations it may have made before that time. *See* Seeger Decl. at Ex. D. As such, CSG reasons that the pre-April 18, 2017 solicitations and communications (written and oral/audiotaped) are "irrelevant and objectionable." *Id.* CSG's self-proclaimed cure, however, does not whitewash those prior communications with Class Members. They remain very relevant and Class Counsel should be able to discover the communications so that they can be placed before the Court to enable it to determine the legality of the agreements that Class Members entered into with CSG.

The principle that subsequent disclosures, in contracts or otherwise, do not cure initial misrepresentations is well established. *E.g., Exposition Press, Inc. v. FTC*, 295 F.2d 869, 873 (2d Cir. 1961) ("The law is violated if the first contact is secured by deception even though the true

---

[9] Alternatively, if the Court prefers, Class Counsel stand ready to promptly serve Rule 45 subpoenas on CSG. In that event, however, the Court should permit a return date of no more than 48 or 72 hours as "a reasonable time" for purposes of Rule 45(d)(3)(A)(i) given that CSG was sent the discovery requests back on July 26, 2017, and thus has had ample notice concerning this matter.

facts are made known to the buyer before he enters into the contract of purchase.") (internal quotation marks, citations, and ellipses omitted)); *FTC v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 304 (S.D.N.Y. 2008) (same); *Sibert v. FTC*, 367 F.2d 364, 365 (2d Cir. 1966) (initial deception was not cured by subsequent clarifying disclosure); *Resort Car Rental Sys., Inc. v. FTC*, 518 F.2d 962, 964 (9th Cir. 1975) (deceptive statement not cured "even if the buyer later becomes fully informed before entering the contract").[10]

Citing the Second Circuit's decision in *Exposition Press*, the Third Circuit has endorsed the use of the "least-sophisticated-consumer-standard" when evaluating whether a practice is deceptive. *See Jensen v. Pressler & Pressler*, 791 F.3d 413, 420 (3d Cir. 2015) (holding that "the Courts of Appeals have nearly universally … employed the least sophisticated debtor standard to help effectuate the FDCPA's purpose" of protecting consumers). *See also Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453-54 (3d Cir. 2006) (applying least sophisticated consumer standard in FDCPA action and noting that "our laws 'are made to protect the trusting as well as the suspicious,' and this is particularly the case within the realm of consumer protection law") (quoting *FTC v. Standard Educ. Soc'y*, 302 U.S. 112, 116 (1937)). For this case in particular, where Monetary Awards to be paid to Class Members from the Settlement fund will be based upon neurocognitive impairment, application of the "least-sophisticated-consumer standard" is warranted.

This Court is charged with protecting the Class Members in this case, much like the FTC is charged with protecting consumers at large. As such, the discovery of the early solicitations and

---

[10] Courts' interpretations of the Federal Trade Commission Act, 15 U.S.C. § 45, relating to unfair or deceptive acts or practices in commerce, are applicable in other contexts. *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993) ("In recent years … courts have incorporated the jurisprudence of the FTC Act into their interpretations of the [Fair Debt Collection Practices Act ("FDCPA")]").

communications by CSG is essential to assisting the Court in furthering the goals set forth in the July 19, 2017 Notice & Order.

### C. CSG's Attempt to Unilaterally Limit the Depositions This Court Permitted in the July 19 Notice & Order to a Deposition of a Corporate Designee Should Not Be Countenanced

The Court clearly provided for depositions in the July 19 Notice & Order. Similar to CSG's other arguments against cooperating fully in Class Counsel's attempts to obtain discovery as per the Court's direction, CSG's attempt to avoid fact depositions premised upon the assertion that Class Counsel likely will need only a Fed. R. Civ. P. 30(b)(6) deposition of a corporate designee, is equally unavailing. *See* Seeger Decl. Ex. D, at 3, 3 n. 1. Given the short window for Class Counsel to conduct of discovery in advance of the now fast-approaching September 19 hearing, CSG's willingness to "keep an open mind" on the issue of fact depositions, *id.*, is a hollow gesture. The Court should not permit CSG to unilaterally control who is deposed and the scope of depositions.

## IV. CONCLUSION

For the reasons stated above, the Court should grant Class Counsel's Motion to Compel and order the CSG Entities and Liberty Entities to respond to the discovery requests propounded upon them pursuant to the Court's July 19, 2017 Notice & Order.

Dated: August 24, 2017

Respectfully submitted,

/s/ Christopher A. Seeger
Christopher A. Seeger
SEEGER WEISS LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

***Co-Lead Class Counsel***

Sol Weiss
ANAPOL WEISS
One Logan Square
130 N. 18th St. Ste. 1600
Philadelphia, PA 19103
Phone: (215) 735-1130
Fax: (215) 735-2024
sweiss@anapolweiss.com

***Co-Lead Class Counsel***