**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>                  Plaintiffs,<br><br>   v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>                  Defendants. | No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**RESPONSE IN OPPOSITION TO CO-LEAD CLASS COUNSEL'S MOTION TO
COMPEL CASE STRATEGIES GROUP, IT STRATEGIES GROUP, CRAIG SIENEMA,
JAMES MCCABE, LIBERTY SETTLEMENT SOLUTIONS, LLC, LIBERTY
CONTINGENT RECEIVABLES, LLC, LIBERTY SETTLEMENT FUNDING, JMMHCS
HOLDINGS, LLC, AND MARC HERMES TO RESPOND TO IMPROPER NONPARTY
DISCOVERY**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................... 1

II.   BACKGROUND ...................................................................................................... 4

    A.    Class Counsel's prior improper Motion for Injunction.......................................... 4

    B.    The Court's July 19, 2017 Order and Class Counsel's improper Discovery
        Requests to Respondents.......................................................................................... 9

III.  CLASS COUNSEL'S MOTION TO COMPEL SHOULD BE DENIED ..................... 10

    A.    Class Counsel's Motion to Compel Improperly Ignores the Federal Rules
        of Civil Procedure ................................................................................................... 10

    B.    Class counsel ignores case law limiting the reach of the Court's July 19,
        2017 Order under the All Writs Act ...................................................................... 12

    C.    CSG's affirmative 'opt-in' procedure mirrors the final relief Class Counsel
        seeks from the Court as to other claims service providers................................... 15

    D.    Respondents have never sought to unilaterally limit discovery in this
        proceeding............................................................................................................... 19

IV.   CONCLUSION........................................................................................................ 20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Atchison, Topeka & Santa Fe Ry. Co. v. Hercules Inc.*,
  146 F.3d 1071 (9th Cir. 1998) ................................................................10

*In re Baldwin-United*,
  770 F.2d 328 (2d Cir. 1985).....................................................................13

*Berger v. Zeghibe*,
  666 F. App'x 119 (3d Cir. 2016) ....................................................13, 14

*Canister Co. v. Leahy*,
  182 F.2d 510 (3d Cir. 1950).....................................................................10

*Fisher v. Marubeni Cotton Corp.*,
  526 F.2d 1338 (8th Cir. 1975) ...................................................................1

*Frank v. Honeywell Int'l Inc.*,
  No. 15-MC-00172, 2015 WL 4770965 (E.D. Pa. Aug. 13, 2015)...........15

*G. Heileman Brewing Co. v. Joseph Oat Corp.*,
  871 F.2d 648 (7th Cir. 1989) ...................................................................10

*Harco Nat. Ins. Co. v. Sleegers Eng'g, Inc.*,
  No. 06-CV-11314, 2014 WL 5421237 (E.D. Mich. Oct. 22, 2014)...................................2, 12

*Highland Tank & Mfg. Co. v. PS Int'l, Inc.*,
  227 F.R.D. 374 (W.D.Pa.2005) ..................................................................2

*Hill v. Dodson*,
  No. 1:12 CV135 LMB, 2013 WL 5355157 (E.D. Mo. Sept. 24, 2013) ................2, 3

*Ledcke v. Pennsylvania Dep't of Corr.*,
  No. 1:12-CV-1580, 2013 WL 1632573 (M.D. Pa. Apr. 16, 2013)......................3, 12

*McWilliams v. Advanced Recovery Sys., Inc.*,
  176 F. Supp. 3d 635 (S.D. Miss. 2016)........................................12, 13

*Moravian School Advisory Board of St. Thomas v. Rawlins*,
  70 F.3d 270 (3d Cir. 1995)......................................................10, 11, 14

*Morrison v. Philadelphia Hous. Auth.*,
  203 F.R.D. 195 (E.D. Pa. 2001) ..............................................15, 19

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
    1:05-md-01720-MKB-JO, (E.D.N.Y.)............................................................................3, 14, 15

*Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*,
    474 U.S. 34 (1985)..................................................................................................................13

*In re Sealed Case*,
    141 F.3d 337 (D.C. Cir. 1998)................................................................................................1

*Shipes v. Amurcon Corp.*,
    No. CIV.A. 10-14943, 2012 WL 1183686 (E.D. Mich. Apr. 9, 2012)...................................2, 3

*Solomon v. Michigan State Police*,
    No. 1:08-CV-858, 2010 WL 3475730 (W.D. Mich. Sept. 2, 2010) .........................................3

*Taggart v. Wells Fargo Home Mortg., Inc.*,
    No. 10-CV-00843, 2012 WL 4462633 (E.D. Pa. Sept. 27, 2012) ...........................................1

*Thompson v. Gonzales*,
    No. 1:15-CV-301-LJO-EPG, 2016 WL 5404436 (E.D. Cal. Sept. 27, 2016) ..........................2

*U.S. ex rel. Eisenstein v.City of New York*,
    556 U.S. 928 (2009)................................................................................................................1

*U.S. v. New York Tel. Co.*,
    434 U.S. 159 (1977)..............................................................................................................13

*In re Visa Check/Mastermoney Antitrust Litig.*,
    No. CV-96-5238 (JG), 2006 WL 1025588 (E.D.N.Y. Mar. 31, 2006)........................5, 14, 17

*Ward v. Empire Vision Centers, Inc.*,
    262 F.R.D. 256 (W.D.N.Y. 2009).....................................................................................3, 12

*Winston & Strawn, LLP v. McLean*,
    843 F.3d 503 (D.C. Cir. 2016) ..............................................................................................10

*XTO Energy, Inc. v. ATD, LLC*,
    No. CIV 14-1021 JB/SCY, 2016 WL 1730171 (D.N.M. Apr. 1, 2016).............................2, 12

**Statutes**

28 U.S.C. § 1407.......................................................................................................................12

All Writs Act, 28 U.S.C. § 1651 .......................................................................10, 12, 13, 14, 15

**Other Authorities**

Fed. R. Civ. P. 1 ......................................................................................................................10

Fed. R. Civ. P. 23 ................................................................................................................12

Fed. R. Civ. P. 26 ............................................................................................................2, 15

Fed. R. Civ. P. 34 ............................................................................................................1, 11

Fed. R. Civ. P. 45 ...................................................................................................... *passim*

Fed. R. Civ. P. 37 ..................................................................................................................3

I.       **INTRODUCTION**

Nonparties Case Strategies Group ("CSG"), IT Strategies Group, Liberty Settlement Solutions, LLC, Liberty Contingent Receivables, LLC, Liberty Settlement Funding, JMMHCS Holdings, LLC, Craig Sienema, James McCabe, and Marc Hermes, (collectively "Respondents") respectfully submit this memorandum in opposition to Co-Lead Class Counsel's ("Class Counsel") Motion to Compel (the "Motion") [ECF No. 8319].[1]  The Motion turns on – and should be resolved by – the answer to the straightforward question of how a litigant properly obtains discovery from a nonparty.[2]  The answer is by a subpoena, as expressly compelled by the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 45, 2013 advisory committee note ("[s]ubpoenas are essential to obtain discovery from nonparties."); Fed R. Civ. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection."); Fed. R. Civ. P. 33(a) ("a *party* may serve on any other *party* no more than 25 written interrogatories.") (emphasis added).

This bedrock principle of the Federal Rules is settled black letter law.  *Taggart v. Wells Fargo Home Mortg., Inc.*, No. 10-CV-00843, 2012 WL 4462633, at *2 (E.D. Pa. Sept. 27, 2012) (Stengel, J.) ("interrogatories served on nonparties are nullity. Discovery of nonparties must be conducted by subpoena pursuant to FRCP 45." (citing *Lehman v. Kornblau*, 206 F.R.D. 345, 346 (E.D.N.Y. 2001))); *see also In re Sealed Case*, 141 F.3d 337, 341 (D.C. Cir. 1998) ("Rule 34(c) explicitly makes the subpoena process of Rule 45 the route to compelling production of

---

[1] While this response is submitted on behalf of all Respondents, most, if not all, of the relevant information is sought from CSG.  Counsel for Respondents informed Class Counsel that its discovery requests sought information from entities and individuals with no connection to the NFL Concussion Settlement or Class Members and offered, upon service of a valid subpoena, to provide Class Counsel with affidavits or declarations to that extent.  Notwithstanding these representations, Class Counsel has continued to pursue discovery from these individuals and entities.

[2] Respondents are all unquestionably nonparties.  *See U.S. ex rel. Eisenstein v.City of New York*, 556 U.S. 928, 932 (2009) ("A 'party' to litigation is '[o]ne by or against whom a lawsuit is brought.' " (quoting Black's Law Dictionary 1154 (8th ed. 2004)).  Class Counsel's fleeting arguments to the contrary fly in the face of this definition.

documents from nonparties."); *Fisher v. Marubeni Cotton Corp.*, 526 F.2d 1338, 1341 (8th Cir. 1975) ("If the person is a non-party, production of documents can be compelled only by a subpoena duces tecum issued under Rule 45(d)(1)."); *Thompson v. Gonzales*, No. 1:15-CV-301-LJO-EPG, 2016 WL 5404436, at *8 (E.D. Cal. Sept. 27, 2016) ("the Court's power to order non-party discovery, if any, is derived exclusively from Rule 45."); *Hill v. Dodson*, No. 1:12 CV135 LMB, 2013 WL 5355157, at *2 (E.D. Mo. Sept. 24, 2013) ("[I]f plaintiff seeks to obtain documents from nonparties, he must comply with the provisions of Rule 45."); *Shipes v. Amurcon Corp.*, No. CIV.A. 10-14943, 2012 WL 1183686, at *1 (E.D. Mich. Apr. 9, 2012) (collecting cases, denying a motion to compel, and holding that a judicial order "does not give Plaintiffs the right to circumvent the Federal Rules.  Plaintiffs must file a subpoena for discovery from a non-party…."); *Highland Tank & Mfg. Co. v. PS Int'l, Inc.*, 227 F.R.D. 374, 379 (W.D. Pa. 2005) (Gibson, J.) ("Rule 45 is the *only* discovery method whereby information may be obtained from a nonparty to the suit." (emphasis added)).

Avoiding any reference to the Federal Rules of Civil Procedure or this well-settled law, Class Counsel seeks to convert the Court's July 19, 2017 Order [ECF No. 8037] into a free-floating, generalized authorization to require nonparty Respondents to answer party discovery. The Court should deny the Motion out of hand, just as courts regularly deny motions to compel discovery improperly propounded on nonparties.  *See, e.g.*, *XTO Energy, Inc. v. ATD, LLC*, No. CIV 14-1021 JB/SCY, 2016 WL 1730171, at *19 (D.N.M. Apr. 1, 2016) (denying motion to compel and collecting cases which support the conclusion that "courts have denied motions to compel non-parties to produce information where the moving party did not first attempt to subpoena the information that it sought to compel"); *Harco Nat. Ins. Co. v. Sleegers Eng'g, Inc.*, No. 06-CV-11314, 2014 WL 5421237, at *4-5 (E.D. Mich. Oct. 22, 2014) (denying motion to

compel discovery from nonparty for failure to serve a subpoena and noting that Rule 26 "does not imbue the [c]ourt with power to compel discovery from non-parties."); *Ledcke v. Pennsylvania Dep't of Corr.*, No. 1:12-CV-1580, 2013 WL 1632573, at *2 (M.D. Pa. Apr. 16, 2013) (denying plaintiff's motion to compel interrogatories propounded on a nonparty as improper under the Federal Rules); *Hill*, 2013 WL 5355157, at *2 (denying motion to compel and holding "[p]laintiff therefore cannot file a motion to compel under Rule 37, based on a nonparty's failure to produce documents."); *Shipes*, 2012 WL 1183686, at *1 (denying motion to compel and noting "[p]laintiffs' motion is procedurally improper because the Court cannot grant a motion to compel discovery from a non-party when no underlying subpoena exists."); *Solomon v. Michigan State Police*, No. 1:08-CV-858, 2010 WL 3475730, at *2 (W.D. Mich. Sept. 2, 2010) (denying motion to compel discovery against nonparties); *Ward v. Empire Vision Centers, Inc.*, 262 F.R.D. 256, 261 (W.D.N.Y. 2009) (denying motion to compel answers to interrogatories directed to nonparties because "the federal rules provide that interrogatories may only be served upon parties to the lawsuit.").

Instead, the Court should order Class Counsel to serve subpoenas on Respondents under Rule 45.  That is the proper procedure under the Rules, the procedure followed in Class Counsel's lead case, *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, and the procedure that Respondents have for weeks informed Class Counsel they will willingly consent to.  Had Class Counsel simply served subpoenas, it would have likely already have the relevant discovery requested from Respondents.  Yet Class Counsel has instead dragged its feet for weeks – ultimately filing this Motion, with the attendant expense and delay that has come with it.[3]

---

[3] Beyond this Motion, Respondents have repeatedly offered to investigate any claim of false or misleading statements that Class Counsel brings to Respondents' attention.  These alleged statements are at the heart of Class

Finally, the Motion seeks discovery for the purpose of obtaining relief that *CSG has already provided*. Class Counsel expressly states it "seek[s] to obtain the discovery from which the Court can determine whether Class Members were misled by CSG such that it should provide Class Members with the opportunity *to void the agreements*…." (Mot. at 11 (emphasis added)). Yet as Class Counsel well knows, months ago CSG offered Class Members the opportunity to void their agreements – for *any* reason – after providing Class Members both verbal *and written* disclosures from CSG addressing each and every concern Class Counsel raised. [ECF No. 7624-2.] Thus, as of April 18, 2017, CSG had already provided its clients with the very relief Class Counsel now seeks. Therefore, discovery into earlier time periods serves no purpose and is not relevant. Instead, such discovery would be unduly costly, burdensome, and – most important – completely irrelevant to the issues confronting the Court.

Given CSG's substantial efforts to date, the appropriate remedy is appropriately tailored discovery by subpoena. The Court should deny the Motion for failure to follow the Federal Rules of Civil Procedure.

## II.   <u>BACKGROUND</u>

### A.   <u>Class Counsel's prior improper Motion for Injunction</u>

Class Counsel is correct about one thing – this Court is familiar with the factual record in this case. Specifically on March 27, 2017, Class Counsel filed a Motion for Injunction against CSG (operating under its former name NFL Case Consulting, LLC) seeking to enjoin it from

---

Counsel's current discovery requests. Despite the centrality of the alleged statements to Class Counsel's multiple motions, Class Counsel has **never** approached Respondents with the opportunity to investigate any such claim, and CSG believes Class Counsel lacks a good faith basis to believe any false or misleading statement has been made. Indeed, of its own accord, CSG investigated an anonymous claim within Class Counsels' initial Motion for Injunction [ECF No. 7347-1 at 2-3, 6-7] and determined that the claim was entirely false and without merit. [ECF No.7782-1.] In the face of Class Counsel's refusal to permit CSG investigate such claims, as well as the anonymous false claims previously relied upon by Class Counsel, the claims of false or misleading statements Class Counsel now seeks to investigate are insincere at best.

making alleged misrepresentations when marketing its lawful claims management service.[4]

[ECF No. 7347.] Class Counsel's original Motion for Injunction was based upon anonymous and inadmissible statements which were either demonstrably false or unable to be verified. [*Id.*] Ultimately, Class Counsel voluntarily withdrew its original Motion for Injunction two months later on June 6, 2017. [ECF No. 7779.]

During the pendency of the Motion for Injunction, counsel for CSG, Class Counsel, and counsel for the NFL worked together to address all issues related to CSG's marketing of its services to Class Members. The purpose was to ensure that CSG could continue to offer its valuable services to current and future clients in a fashion that accounted for the class protecting measures proffered by Class Counsel.[5] Indeed, as is detailed in numerous previous filings with the Court, CSG engaged in significant remedial measures designed to address all concerns regarding CSG and the services it offered to Class Members. [ECF Nos. 7532, 7585, 7624,

---

[4] Class Counsel's original Motion for Injunction took issue with the fact that CSG accurately described the settlement process as "complicated." Respondents therefore believe such an argument is likely to reappear. While Class Counsel may not find the process complicated, Class Members who may be neurocognitively impaired may feel overwhelmed by the process of managing their entire claim, from submission to payment, with potential appeals and multiple follow-ups. Whether a Class Member desires to manage his claim on his own, through the retention of a private attorney, or through a claims management service, is up to the Class Member. However, courts routinely recognize that claims management services are both lawful and vital part of the class action ecosystem. Even cases forming the heart of Class Counsel's Motion to Compel recognize this principle. *In re Visa Check/Mastermoney Antitrust Litig.*, No. CV-96-5238 (JG), 2006 WL 1025588, at *4 (E.D.N.Y. Mar. 31, 2006) ("I recognize that Spectrum and firms like Spectrum can provide a valuable service to class members who seek assistance in filing their claims or wish to liquidate those claims. *Such firms are a natural and welcome feature of the settlement landscape.*" (emphasis added)).

More troubling, however, are recent filings which call Class Counsel's contentions as to a straightforward and uncomplicated settlement process into doubt. Indeed, three sworn declarations filed with the Court make the express claim that Class Counsel, Counsel for the NFL, and the Claims Administrator have worked together in secret to make verbal agreements which change the administration of the settlement and the procedures under which claims are managed. [ECF No. 8309-1.] Confronted with such allegations, Class Members may rightly believe a claims management service, such as those provided by CSG, will help them navigate a complex, *and shifting*, settlement landscape, while ensuring they receive the recovery that they are entitled to under the settlement.

[5] CSG denies that it has ever offered its services in a manner not compliant with law.

7625, 7711, 7768, 7777, 7782.]  Indeed, in response to specific concerns raised by Class Counsel

and counsel for the NFL, on April 18, 2017 CSG began taking the following actions:

- Permanently ceased all outbound marketing to Class Members and temporarily ceased inbound marketing;

- Redesigned CSG's branding, website, mailers, and all outward-facing customer materials;

- Provided ten specific disclosures to Class Members – both orally and in writing – regarding CSG, its services to its Class Member clients, and its relation (or lack thereof) to the Court and Claims administrator;[6]

- Engaged outside compliance counsel with more than 25 years of consumer protection experience at the FTC to scrutinize and edit all marketing materials, call guidelines, class member disclosures, and web site content used in connection with Class Members; and

- Required Class Members to affirmatively opt in to their contracts – any Class Member who did not want to proceed with CSG's services, for any reason, had their contract with CSG automatically cancelled absent an affirmative statement that the Class Member wished to continue utilizing CSG's services.

CSG also provided its clients with the ultimate remedy Class Counsel now – and

redundantly – seeks:  verbal and written disclosures to Class Members with an opportunity to

void their contract with CSG after receiving those disclosures.  Indeed, these affirmative

disclosures, together with the opt-in procedure, ensure that every Class Member who has a

current contract with CSG is both aware of, and either entered into, or opted back into, their

contract with, understanding the following facts:

1. Case Strategies Group **is not** a law firm;

2. Case Strategies Group **does not** work for a law firm;

3. Case Strategies Group works **with a network** of attorneys and can provide a Class Member with a list of options for legal counsel, but that a Class Member is free to retain any attorney he chooses;

---

[6] As Class Counsel is aware, CSG provided Class Counsel with a list of these disclosures prior to their being sent to Class Members.  No objections or revisions from Class Counsel were ever received, despite Class Counsel admitting that it reviewed the letter in which CSG outlined its plans for remediation.

4. Case Strategies Group **does not** work with the National Football League ("NFL") or the NFL Players Association ("NFLPA");

5. Case Strategies Group **does not** work with the Claims Administrator's Office and was not appointed or endorsed by the United States District Court for the Eastern District of Pennsylvania;

6. Case Strategies Group **does** charge a fee on contingency based on the success of a Class Member's claim. If the Class Member's claim is not paid, he will not owe anything to Case Strategies Group. If a Class Member's claim is paid, Case Strategies Group will be entitled to a percentage of his recovery based on his contract;

7. The Class Member **does not** have to hire Case Strategies Group or an attorney to file a claim;

8. The Class Member is aware and understands that Case Strategies Group does assist in the processing of his claim but the final decision as to how to proceed is the Class Member's choice as the client;

9. The Class Member is aware that Case Strategies Group assists an attorney of his choosing with the administrative aspects of his claim; and

10. The Class Member is aware and understands that he will be in control of the decision made regarding the pursuit of his claim. The Class Member is free to terminate this agreement at any time **prior** to signing the written acknowledgement without incurring any charges from Case Strategies. If the Class Member chooses to terminate his agreement at some time in the future, the Class Member will receive a bill for the services undertaken by Case Strategies Group on behalf of the Class Member.

As detailed in CSG's June 7, 2017 status update to the Court, these disclosures were made in both verbally and in writing, provided to Class Counsel in advance of their being made without objection or feedback, and addressed all concerns raised by Class Counsel.  [ECF No. 7782 at 3-4.]

Finally, and contrary to Class Counsel's current representations to the Court, CSG provided Class Counsel with numerous documents requested during this period.  Indeed, Class Counsel even attached several of these documents to its prior Motion for Notice. Class Counsel has also sent discovery requests to attorneys identified by CSG as being on a list provided to its

clients requesting information on individual counsel.[7]  CSG was poised to provide Class Counsel with significantly more information, including its list of clients, copies of all written opt-in confirmations signed by clients, and more, when Class Counsel unilaterally declared an impasse. Indeed, Class Counsel was poised to receive CSG's client list pending the agreement to a reasonable protective order designed to protect CSG's valuable information.  Class Counsel, however, was disinclined to agree to such a protective order without CSG's agreement to provide on-demand updates of its confidential and proprietary information to Class Counsel indefinitely into the future.  Such an invasive and burdensome procedure, CSG could not agree to, at which point Class Counsel unilaterally declared an impasse.

Despite Class Counsel's current insistence to the contrary, throughout this process Respondents have been willing to share significant quantities of information where appropriate. Indeed, following the August 30, 2017 telephonic hearing, Counsel for CSG again offered to voluntarily provide Class Counsel with a list of its current clients, subject to a reservation of rights under Rule 45 and the terms of a protective order. Class Counsel refused this offer. A copy of the correspondence between Counsel for Respondents and Class Counsel is attached hereto as Exhibit 'A.'

---

[7] Class Counsel again knowingly misrepresents the record to the Court here. (Mot. at 5-6.)  CSG did not suggest to any client that he retain individual counsel.  Rather, as Class Counsel is well aware, CSG provided any client *who requested* information on retaining individual counsel with a list of qualified potential attorneys, all of whom had agreed to limit their contingent fees to reflect the significant cost savings flowing from the division of labor between the law firm and CSG.  Class Counsel's arguments on this point are both factually misleading and entirely meritless.

Indeed, during the telephonic hearing on August 30, 2017, Class Counsel asserted that CSG had convinced its clients to "lawyer up" with the ulterior motive of thwarting Class Counsel. That is an absurd and false assertion. Class members have an absolute right to legal representation of their own choosing, and there is nothing sinister in any class member taking an independent decision to engage individual counsel who have no duty or connection to CSG.  CSG requests that Class Counsel either correct its misleading statement to the Court or provide the factual basis upon which Class Counsel made the representation.

**B.**     **The Court's July 19, 2017 Order and Class Counsel's improper Discovery**
           **Requests to Respondents**

On July 19, 2017, the Court issued a Notice and Order providing notice of an upcoming

hearing and permitting Class Counsel to "conduct discovery on an expedited basis, including

interrogatories, document requests, and depositions." [ECF No. 8037 at 2.] Purporting to act

pursuant to the Court's July 19, 2017 Order, on July 26, 2017 Class Counsel served

interrogatories and document requests on Respondents by letter.  Each discovery request

propounded upon Respondents begins with the statement, "Pursuant to the Court's Order dated

July 19, 2017 [ECF No. 8037], Co-Lead Class Counsel hereby serve the following Requests for

Production of Documents and Interrogatories . . . ."

Class Counsel's discovery requests amount to a demand for everything you and anyone

ever associated with you have relating, however irrelevantly, to Respondents' business, its

clients, or anything even tangentially related to the NFL settlement.  And, in addition to those

overbroad requests, Class Counsel's letter enclosing the requests also demanded at least ten

depositions of Respondents' executives and employees.  Throughout multiple meet-and-confer

sessions, Class Counsel has never demonstrated a good-faith basis to demand such overbroad

discovery.  Indeed, Respondents have repeatedly informed Class Counsel that many entities

named in the discovery requests have no connection to the NFL Concussion Settlement.[8]  Nor

has Class Counsel has ever informed counsel for Respondents why it refused to issue subpoenas

to nonparties in compliance with the Federal Rules.

---

[8] Class Counsel has never attempted to justify the relevance of these discovery requests – and many appear to have been made upon conjecture and speculation based upon common ownership records or other Internet searches.  [*E.g.* ECF 7347-1 at n.8.]

III.    **CLASS COUNSEL'S MOTION TO COMPEL SHOULD BE DENIED**

Class Counsel's attempt to obtain party discovery from nonparties such as Respondents should be denied.  The state of the law is clear:  discovery sought from nonparties must be obtained via subpoena.  Fed. R. Civ. P. 45.  Nothing in the Federal Rules of Civil Procedure, the All Writs Act, or the MDL statute permits Class Counsel to ignore the clear directive of Rule 45.  For this reason alone, Class Counsel's Motion to Compel should be denied. Yet even if this Court were to consider the merits of Class Counsel's Motion to Compel, it should readily conclude that Class Counsel's discovery requests are burdensome and overbroad.

A.    **Class Counsel's Motion to Compel Improperly Ignores the Federal Rules of Civil Procedure.**

The Federal Rules of Civil Procedure are binding upon litigants and courts alike.  Fed. R. Civ. P. 1.  Given this, a federal court may not exercise its inherent authority in a manner inconsistent with the Federal Rules, just as it cannot do so to avoid a duly enacted statute or the Constitution.  *Moravian School Advisory Board of St. Thomas v. Rawlins*, 70 F.3d 270, 274 (3d Cir. 1995) (reversing district court and holding that a Federal Rule of Civil Procedure is "equally as binding" as "constitutional or statutory provisions" (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988))); *see also Canister Co. v. Leahy*, 182 F.2d 510, 514 (3d Cir. 1950) ("The Rules are rules of procedure. They must be adhered to."); *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 506 (D.C. Cir. 2016) (Federal Rules of Civil Procedure are binding, and a court has no discretion to disregard the rules); *Atchison, Topeka & Santa Fe Ry. Co. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998) ("district courts have inherent power to control their dockets, but not when its exercise would nullify the procedural choices reserved to parties under the federal rules"); *G. Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648, 652 (7th Cir. 1989) (en banc) (a court's inherent powers "should be exercised in a manner that is

in harmony with the Federal Rules of Civil Procedure," and "where the rules directly mandate a specific procedure to the exclusion of others, inherent authority is proscribed" (internal citations omitted)).  With this guiding principle in mind, the Court should deny Class Counsel's Motion to Compel where the requested relief directly ignores and contradicts the Federal Rules of Civil Procedure.

Here, the Federal Rules require Class Counsel to serve subpoenas for when seeking discovery from nonparties.  Fed. R. Civ. P. 45; Fed. R. Civ. P. 34(c).  Under the Rules, a subpoena under Rule 45 is the only means by which discovery can be sought from a nonparty. As the cases cited above make clear, Class Counsel cannot seek to have the Court utilize its inherent authority to avoid the Federal Rules.  To do so, as the Third Circuit has recognized, would exceed the Court's discretion and constitute reversible error.  *See Moravian*, 70 F.3d at 274.

In fact, Class Counsel states that, in the alternative, it "stands ready to promptly serve Rule 45 subpoenas on CSG," though it requests that this Court "permit a return date of no more than 48 or 72 hours as a 'reasonable time' for the purposes of Rule 45(d)(3)(A)(i)…."  (Mot. at 11.)  In attempting to cut short the response time, however, Class Counsel ignores that Rule 45 reserves such decisions for "the court for the district where compliance is required," not the court – here the Eastern District of Pennsylvania – from which the subpoena would issue.  Fed. R. Civ. P. 45(d)(3)(A).  In this case, the district where compliance would be required is where the Respondents reside and transact business in person – the Southern District of Florida.  Fed. R. Civ. P. 45(c).  Unless and until Class Counsel could convince the Southern District of Florida to transfer a Motion to Quash to the Eastern District of Pennsylvania pursuant to Fed. R. Civ. P.

-11-

45(g), this Court would not have jurisdiction to issue a prospective ruling on what is a "reasonable time" for responses under Rule 45(d)(3)(A).

Ultimately, Class Counsel is stuck in a morass of its own making. Respondents and others repeatedly informed Class Counsel that it must proceed by subpoena. And Class Counsel can *still* follow the Federal Rules – it can easily withdraw the Motion and serve the subpoenas it should have served in the first instance. Class Counsel's insistence on motion practice is as bizarre as it is wasteful. The Court should deny Class Counsel's improper attempt to skirt the Federal Rules, just as many other courts have done. *See, e.g., XTO Energy*, 2016 WL 1730171, at *19; *Harco*, 2014 WL 5421237, at *4-5; *Ledcke*, 2013 WL 1632573, at *2 (M.D. Pa. Apr. 16, 2013); *Ward v. Empire Vision Centers, Inc.*, 262 F.R.D. 256, 261 (W.D.N.Y. 2009).

### B.   Class counsel ignores case law limiting the reach of the Court's July 19, 2017 Order under the All Writs Act

Class Counsel argues that together with the All Writs Act, 28 U.S.C. § 1651, the Court's July 19, 2017 enables it to take whatever discovery it wants from any person or entity. Class Counsel is entirely wrong. The July 19, 2017 only permits appropriate discovery by Class Counsel. It does not define "discovery" as discovery propounded under Rules 30, 33, and 34, the rules under which discovery is properly sought from *parties*. Respondents are nonparties. Rule 45 provides the well-settled, exclusive means of discovery of nonparties, and there is no occasion to invoke the extraordinary means of the All Writs Act where a straightforward procedure – a subpoena – already exists.[9]

---

[9] Tellingly, Class Counsel cites no authority on point for the proposition that either Rule 23(d) or the MDL statute, 28 U.S.C. § 1407, supports its positions or permits it to ignore the Federal Rules of Civil Procedure. The lone case Class Counsel cites, *McWilliams v. Advanced Recovery Sys., Inc.*, 176 F. Supp. 3d 635 (S.D. Miss. 2016), is inapposite. *McWilliams* dealt with two attorneys who submitted themselves to the jurisdiction of the court by entering agreements to represent fifty class members before the court or in a related action. *Id.* at 638-39. The court's concern there was barratry, given the relief sought was against attorneys who sought to have class members opt out and file duplicative lawsuits. *Id.* at 639. Perhaps most tellingly, just as with *Visa Check, see infra* pp. 14-15

Though the All Writs Act has been interpreted to permit courts to issue *injunctions* against nonparties, *U.S. v. New York Tel. Co.*, 434 U.S. 159, 172 (1977), any such order issued under the act must be both "specific and definite enough to apprise those within its scope of the conduct which is being proscribed, and that those subject to the injunction receive appropriate notice of its terms."  *In re Baldwin-United*, 770 F.2d 328, 339 (2d Cir. 1985).  And, while a court *may* issue orders pursuant to the All Writs Act against nonparties, the Third Circuit has routinely cautioned that "[c]ourts should only exercise their authority under the All Writs Act 'where there is no other adequate remedy.'"  *Berger v. Zeghibe*, 666 F. App'x 119, 123 n.8 (3d Cir. 2016) (quoting *Bd. of Comm'rs of Knox Cnty. v. Aspinwall*, 65 U.S. 376, 377 (1860); *Madden v. Myers*, 102 F.3d 74, 79 (3d Cir. 1996)); *see also Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 43, (1985) ("The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute.").  But an adequate remedy clearly exists to pursue discovery against nonparties – subpoenas issued pursuant to Rule 45.

Class Counsel's proposed reading of the Court's order would transform that order from a lawful one into a generalized, open-ended authorization that fails to meet the procedural requirements of the All Writs Act.  The Court's order authorizes Class Counsel "to conduct discovery," nothing more.  The Court's Order is not "specific and definite" as to the actions required of Respondents – in fact, it does not identify Respondents at all or order them to take any action.  *See In re Baldwin-United*, 770 F.2d at 339.  Nor does it release Class Counsel from any obligation under the Federal Rules of Civil Procedure, including the nonparty discovery requirements under Rule 45.  To the contrary, it is entirely consistent with the text of the Court's Order – and requires no resort to the Court's extraordinary powers under the All Writs Act – to

---

the court there did not order nonparty discovery – chiefly because counsel in *McWilliams* presented the court with a complete record. *Id.* at 638-40.  There is no analogous situation here.

require Class Counsel to issue subpoenas to Respondents.  Class Counsel's Motion badly

overreads the Court's July 19, 2017 Order, and that is reason enough for the Court to deny it.

Rule 45 sets out the carefully considered, historically validated procedures for discovery

of nonparties, and the invocation – completely unnecessary here – of the All Writs Act to compel

nonparty discovery would be both inappropriate and contrary to binding authority.  *Moravian*, 70

F.3d at 274; *Berger*, 666 F. App'x at 123 n.8.

Further, Class Counsel's reliance on *In re Visa Check/Mastermoney Antitrust Litig.*, No.

CV-96-5238 (JG), 2006 WL 1025588 (E.D.N.Y. Mar. 31, 2006) ("*Visa Check*"), does nothing to

change this calculus.  Indeed, in that case, no discovery was sought from nonparties.  Rather,

class counsel presented Judge Gleeson with a complete factual record on its motion for

injunctive relief – a critical fact omitted from Class Counsel's Motion here.[10]  When considering

the identical issue years later in the related case, *In re Payment Card Interchange Fee and*

*Merchant Discount Antitrust Litig.*, the parties and Judge Gleeson jointly agreed that

"appropriate discovery" from Class Counsel to nonparty claims management and claims

---

[10] Class Counsel's Motion cynically elides a key portion of the opinion in *Visa Check* which expressly
acknowledges that claims management services are inherently legal and provide valuable services.  (Mot. at 10.)
That omission is directly relevant to this Court's inquiry in this matter and completely changes the meaning of the
cited passage.  The passage omitted – which CSG has previously cited to the Court – states in full, with the section
omitted by class counsel set off in italics:

> I have presided over this action since 1996. With the express consent of all parties, I played an active role
> in the settlement discussions and have maintained an active role in the administration of the settlement. *I*
> *recognize that Spectrum and firms like Spectrum can provide a valuable service to class members who seek*
> *assistance in filing their claims or wish to liquidate those claims. Such firms are a natural and welcome*
> *feature of the settlement landscape. But this is not a run-of-the-mill business environment, subject solely to*
> *market forces and the principles of contract and tort law that control behavior in that environment. The*
> *fact that the merchant class is huge does not alter the nature of the Court's relationship with its members.*
> *The settlement of a long, hard-fought case has given those class members a tangible interest in settlement*
> *funds. I have an affirmative obligation to protect those interests. If a merchant chooses to sell its claim or*
> *pay someone else to process its claim, that is fine with the Court. It is also fine for firms like Spectrum to*
> *solicit merchants to use their claim processing or claim purchasing services.* The nature of the Court's
> interest is as simple as it is strong: the class members must not be misled.

*Visa Check*, No. CV-96-5238 (JG), 2006 WL 1025588, at \*4 (E.D.N.Y. Mar. 31, 2006).  Class Counsel's deliberate
omission of the italicized passage is particularly disheartening given that it directly speaks to the inherent legality of
such agreements with claims management and claims purchasing services – the very topic of the upcoming hearing.

purchasing entities came *in the form of subpoenas.* *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 1:05-md-01720-MKB-JO, ECF Nos. 6116, 6117 (December 3, 2013, December 6, 2013). Copies of the Court's December 3, 2013 Order and the December 6, 2013 letter from Class Counsel attaching subpoeanas to Spectrum are attached hereto as Exhibits 'B,' and 'C.' Of course, Judge Gleeson also presided over, and issued the decision in, the earlier *Visa 'Check* case.

In sum, Class Counsel's Motion to Compel improperly invokes statutes, especially the All Writs Act, that both counsel against the relief it seeks and are inapplicable given the text of the Court's July 19, 2017 Order. The Motion should be dismissed for lack of any authority authorizing the relief it seeks.

### C.   CSG's affirmative 'opt-in' procedure mirrors the final relief Class Counsel seeks from the Court as to other claims service providers

To the extent the Court considers the merits of Class Counsel's Motion to Compel – which it should not – the Court should not permit Class Counsel the unlimited discovery it seeks. Rather, the Court should order that Class Counsel's requests be narrowed to exclude costly, irrelevant, and highly burdensome discovery requests directed to Respondents.

Class Counsel's discovery requests fail out of the gate because they are overbroad and burdensome. Under Rule 45, a party seeking discovery via a subpoena must "take reasonable steps to avoid imposing undue burden or expense…." Fed. R. Civ. P. 45(d)(1). Similarly, a party moving to compel discovery bears the initial burden of proving the relevance of the requested information. *Morrison v. Philadelphia Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001); *see also Frank v. Honeywell Int'l Inc.*, No. 15-MC-00172, 2015 WL 4770965, at *4 (E.D. Pa. Aug. 13, 2015) ("The subpoenaing party must first show that its requests are relevant to its claims or defenses, within the meaning of Rule 26(b)(1)."). Class Counsel cannot meet this

initial burden on the facts presented to the Court.  Indeed, beyond Class Counsel's self-serving and conclusory statements, the Motion does not even attempt to meet this initial burden.

In an attempt to uncover information which has no relevancy to the question of whether any *current* client of CSG has been misled, Class Counsel's discovery requests seek information relating to communications between Class Members and CSG prior to the implementation of CSG's significant remedial measures. But communications with Class Members predating CSG's affirmative opt-in procedure have no relevance to the inquiry before the Court.  Rather, the verbal and written disclosures provided by CSG ensure that all of CSG's current clients understand who CSG is, the services CSG provides, and the role CSG plays in assisting the client in obtaining relief under the terms of the Settlement Agreement.  Indeed, after receiving both verbal and written disclosures, each of CSG's current clients was fully informed of the considerable services CSG continues to provide.  Each of CSG's clients was fully aware of the role CSG plays in assisting them – and their attorneys – in the claims process.  And, each of CSG's clients have affirmatively indicated that they desire to have CSG to assist them, and their attorneys, with the claims process.

The Court need not take Respondent's word for it – Class Counsel has already produced communications with individual attorneys which confirm this result.  As one attorney made clear to Class Counsel back on May 31, 2017:

> 1 - We are not aware of, or otherwise have not had, any clients that have contracted with CSG voice to us any confusion or misunderstanding of any facts pertaining to the NFL Concussion Settlement Claims Process ("NCSCP").
>
> 2 - We are not aware of, or otherwise have not had, any clients that have contracted with CSG express any concern about the terms of any agreement that they entered.
>
> 3 - All our clients that have contracted with CSG have pretty much expressed a very fluid grasp of the NCSCP, and they generally do not have

> very many questions at all about what will be the immediate next steps of the process.

[ECF No. 7812-9, Benedetto Decl. at Ex. I.; *see also* ECF No. 7812-8, Benedetto Decl. at Ex. H ("When asked whether [a Class Member] would have retained CSG knowing each of [the 18 disclosures outlined by Class Counsel], the most common answer is 'As long as they are helping me out, I'm ok.'").]  Indeed, as the May 31, 2017 letter from counsel expressly states, if individual counsel obtained information regarding misrepresentations by CSG or a client's confusion as to the services provided by CSG, the attorney "would have certainly addressed those issues with CSG and clarified any misrepresentation with the client."  [ECF No. 7812-9, Benedetto Decl. at Ex. I.]

Class Counsel focuses on alleged past misrepresentations from CSG for one simple reason – it cannot point any *current* client of CSG who is receiving services from CSG as a result of any misrepresentations.  Indeed, Class Counsel continually overlooks that CSG's current clients were all given the opportunity to void their contract *for any reason*, and chose to continue with CSG with a full understanding of who CSG is and the services it offers.  This, unlike the FTC cases cited by Class Counsel, is not a situation in which a subsequent remedial communication clarifies a prior communication.  Rather, CSG's clients effectively – or actually – had their contracts cancelled, were given both written and verbal disclosures, and those clients made the decision to *re-engage* CSG.   This remedy is in fact more generous than what Class Counsel currently seeks from the Court should it ultimately uncover any misrepresentations by Respondents.  (Mot. at 11.)  And, of course, the affirmative opt-in procedure was modeled after the ultimate result ordered by the Court in *Visa Check*, the case that lies at the heart of Class Counsel's Motion.  *See Visa Check*, 2006 WL 1025588, at *7-8.

As a result, none of CSG's current clients have been misled in any way, and information sought for periods before CSG began its remedial measures is irrelevant.  Further, CSG is willing to open its doors to Class Counsel to demonstrate that its remedial efforts adequately addressed all of Class Counsel's prior concerns.  This is all that is relevant to the topic of the upcoming hearing.  Yet, in an attempt to expand the concept of relevancy, Class Counsel attempts to liken itself to the FTC – a government agency with far-reaching investigatory powers to enforce a wide-ranging statutory mandate.   Class Counsel asks this Court to adopt a standard for communications with the Class which has no basis in law – at least none identified by Class Counsel.  Class Counsel cites no cases in which such a standard was used in evaluating communications with class members.  More importantly, Class Counsel is not the FTC and this is not a claim for relief under the FDCPA.  Finally, and perhaps most tellingly, Class Counsel's current position is entirely antithetical to its prior positions and negotiations with Respondents, as detailed in the numerous status updates filed with the Court.  Had Class Counsel truly believed that this newly disclosed FTC/FDCPA standard was appropriate, Class Counsel would not have assisted Respondents in crafting the numerous remedial measures designed to ensure CSG's clients had a full and complete understanding of the settlement.

Accordingly, any discovery targeted to the period before CSG's remedial efforts is not relevant to the sole purpose of the September 19, 2017 hearing:  "address[ing] the legality of any agreements entered into by Settlement Class Members as a result of these solicitations…." [ECF No. 8037.]  The affirmative opt-in procedure effectively cancelled all of CSG's contracts with players, and offered them the opportunity to re-engage CSG with the knowledge counsel for the NFL and Class Counsel told CSG was essential to ensure that Class Members were not misled.  CSG crafted its verbal and written disclosures to address each and every concern Class Counsel

had raised as of the date of the disclosures.  The opt-in procedure ensured that no current client

of CSG could possibly have relied upon any alleged misrepresentation prior to the

implementation of CSG's remedial actions.  Accordingly, all discovery targeted at the period

before CSG's remedial measures is entirely irrelevant, as it does not speak to the solicitations

which caused CSG's clients to enter into their current agreements.  Because Class Counsel

cannot demonstrate relevancy, its Motion to Compel must be denied.  *E.g. Morrison v.*

*Philadelphia Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001).

> **D.** **Respondents have never sought to unilaterally limit discovery in this proceeding**

Class Counsel's leaves the Court with one last misconception – that Respondents have

attempted to unilaterally limit depositions.  (Mot. at 13.)  That is false.  Rather, Respondents

offered – upon the service of a proper subpoena – to provide Class Counsel with a Rule 30(b)(6)-

type deponent who could speak to the entirety of the issues raised in Class Counsel's discovery

requests.  After deposing this witness, Class Counsel could decide whether it required additional

depositions which, if necessary, could be completed at a later date and prior to the scheduled

September 19, 2017 hearing.  Respondents made this initial offer on August 1, 2017 –three

weeks before Class Counsel ultimately filed its Motion to Compel.  Respondents did so in the

hopes that a single, well-informed witness would prove to be a time-saving measure for all

involved, at least as an initial matter prior to preparing ten witnesses for ten depositions.  Rather

than accept this offer, Class Counsel dithered for weeks and created the exigency of the "fast

approaching" hearing.

If, consistent with Rule 45(d)(1) and (d)(3)(iv), Class Counsel can demonstrate that it is

not unduly burdensome to depose ten separate individuals – many of whom have no relevance to

this case – Respondents will produce those individuals.[11]  Notwithstanding Class Counsel's mischaracterization of the record, Respondents have never stated otherwise or attempted to limit Class Counsel's legitimate discovery requests.

## IV.   <u>CONCLUSION</u>

Class Counsel sees the Court's July 19, 2017 Order as a blank check to seek any and all discovery it wants, from any individual or entity, unconstrained by the well-settled requirements of the Federal Rules of Civil Procedure.  Thankfully, the Court's Order does not go so far – nor could it without exceeding its lawful authority. Both litigants and the Court are bound to the Rules of Civil Procedure.  The Court ordered Class Counsel to conduct discovery.  Class Counsel should do so by issuing appropriate discovery to nonparties such as Respondents.  Class Counsel must issue subpoenas pursuant to Federal Rule of Civil Procedure 45, and the failure to do so renders its discovery requests objectionable.  Accordingly, the Court should deny Class Counsel's Motion to Compel.

Respectfully submitted,


Dated: August 30, 2017          By: /s/ Richard L. Scheff_____

Richard L. Scheff (PA ID No. 35213)
Peter Breslauer (PA ID No. 66641)
David F. Herman (PA ID No. 318518)
**MONTGOMERY MCCRACKEN**
  **WALKER & RHOADS LLP**
123 South Broad Street, 24th Floor
Philadelphia, PA  19109
Phone:  215.772.7502
Email:  rscheff@mmwr.com
*Counsel for Respondents*

---

[11] Of course Class Counsel neglects to inform the Court as to the relevance of deposing ten separate individuals. Indeed, nowhere in Class Counsel's Motion to Compel is relevance ever discussed.  This is likely because Class Counsel's discovery requests are based upon nothing more than pure conjecture and speculation – a plainly inappropriate basis for seeking discovery.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the forgoing Opposition to Class Counsel's Motion to

Compel was served on all counsel of record via the Court's ECF System on August 30, 2017.


<u>/s/ Richard L. Scheff</u>
Richard L. Scheff.