IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL § <br> LEAGUE PLAYERS' CONCUSSION § <br> LITIGATION § <br> _____ § <br> § <br> § <br> THIS DOCUMENT RELATES TO: § <br> ALL ACTIONS § | No. 12-md-2323 (AB) <br><br> MDL No. 2323 |

### The Alexander Objector's Response to the Court's Show Cause Order of August 23, 2017 Regarding Appointment of a Court Expert on Attorneys' Fees

On August 23, 2017, this Court entered an order [ECF No. 8310] directing all interested parties to show cause pursuant to Fed. R. Evid. 706:

1. Why the Court should not appoint an expert witness on attorneys' fees; and

2. Why the Court should not appoint Professor William B. Rubenstein to serve as an expert on attorneys' fees.

The Alexander Objectors show cause as follows:

### I.
### The Court should not appoint an expert witness on attorneys' fees

**A.   The Court should not appoint <u>any</u> expert witness on attorneys' fees.**

1. The Court should not appoint any expert on attorneys' fees because such appointment does not meet the Rule 706 criteria.

"Few and far between are cases appropriate for a Rule 706 appointment." *See McCracken v. Ford* Motor, 392 Fed. Appx. 1, 3 (3 Cir. 2010), citing 29 Charles Alan Wright & Victor Gold, Federal Practice and Procedure § 6304 (1st ed.). According to one survey, judges generally view the appointment of a neutral expert as an "extraordinary activity that is appropriate only in rare instances in which the

1

traditional adversarial process has failed to permit an informed assessment of the facts." Joe S. Cecil & Thomas E. Willging, *Court-Appointed Experts: Defining the Role of Experts Appointed Under Federal Rule of Evidence 706* (Fed. Jud. Center 1993).

Under any circumstance, however, court appointment of an expert ordinarily occurs only when the Court needs assistance with "complex scientific, medical, or technical matters." *See Armstrong v. Brown*, 768 F.3d 975, 987 (9th Cir. 2014). Attorneys' fees, particularly where there is no data to review, is not such a complex issue.

Moreover, someone will be required to pay for the court-appointed expert. Rule 706 expert witnesses are taxed as court costs. *See, e.g. Sams v. State Attorneys Gen.* (In re Cardizem CD Antitrust Litig.), 481 F.3d 355, 362–4 (6th Cir.2007) (noting that 28 U.S.C. § 1920(6) authorizes the recovery of costs for court appointed experts under Federal Rule of Evidence 706. And, if the Court appoints a Rule 706 expert, the parties will need to depose the expert on his opinion. *See* Fed. R. Evid. 706(b)(2) & (b)(4) (stating that "the expert may be deposed by any party" and "may be cross-examined by any party, including the party that called the expert").

On the other hand, if Class Counsel would submit to attorneys' fee discovery or if the Court would order such discovery, as previously requested by the Alexander Objectors, the adversarial process would remain intact and the attorneys' fee opinions of Class Counsel could be tested for the Court's impartial consideration. The Alexander Objectors reurge their request to take discovery of Class Counsel's fees that has been pending since April 21, 2017. *See* Motion for Leave to Serve Fee-Petition Discovery, ECF No. 7534. If permitted to engage in this discovery, the Alexander Objectors could supply the Court with information from which the Court could assess the evidence, the parties' competing expert opinions, and the advocacy of the parties to resolve the fee question.

      2.      The Court should not appoint any expert on attorneys' fees because the fee petition is still premature.

The Court should not appoint any expert on attorneys fees *until* there is a claims-administration track record for the Settlement and, therefrom, data to support the quantified benefit to the class members. The Alexander Objectors have previously urged that the NFL claims should be processed ahead of any fee petitions. It is the right thing to do and it is consistent with other large, contingent MDL fee petitions. *See In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 2:10-md-02179, ECF 21849 (October 28, 2016) (reflecting *Deepwater Horizon* counsel waited four years and until 9 billion in Settlement benefits were paid to present their common benefit fees).

The NFL Players' claims are moving at a snail's pace while Class Counsel attempt to move their fee petition as the wind. Claims processing began on March 23, 2017 and registration is now closed. The Court received the most recent Joint Status Report on June 15, 2017 [ECF 7827]. As to registrations, the Parties disclosed that, as of June 5, 2017, 14,507 people have submitted registration forms, including 12,082 Retired NFL Footbal Players, 546 Representative Claimants and 1,879 Derivative Claimants. *See* ECF 7827, p. 3. As to claims processed, however, the administrator has authorized payment of only two (2) out of the 869 total claims made. *See* ECF 7827-1, p. 9. More specifically, on May 26, 2017, the BAP Administrator authorized – subject to lien resolution - the first payment for a qualifying diagnosis. *Id*. Then, on June 5, 2017, the BAP Administrator authorized the second payment for a qualifying diagnosis, again subject to lien resolution. *Id*. 2 out of 869.

Brewing disputes over the "interpretation" of the settlement terms is one of the reasons claims administration is dragging. Specifically, as the Court is aware, Absent Class Member Yvonne Sagapoutele recently filed her Motion to Modify the

3

Amended Final Order and Judgment to conform the definition of "Death with CTE" with the Class Notice and Summary Notice. *See* ECF 8263. According to the motion, Class Members have become aware that the 2017 Pre-Effective Date Diagnosing Physician Certification Form incorporates a deadline that was added to the Settlement, apparently without the Court's knowledge. *See* ECF 8263, p. 12. Ms. Sagapoutele's is not the only challenge to the administration of the Settlement according to terms. Several NFL Players have filed a motion to Determine Proper Administration of Claims urging that Brown Greer is administering claims under materially altered terms of the Settlement.[1] Class Counsel and the NFL jointly asked for an extension to respond to the serious allegation. *See* ECF No. 8302. The movants opposed the requested extension and relied upon the affidavit of Michael G. St. Jacques; he relates a telephone conference in which Mr. David Smith, Supervisor of NFL Claims with Administrator Brown Greer, (a) acknowledged imposing requirements on claimants that are not part of the plain language of the Settlement, but (b) indicated that, upon the direction of Class Counsel and the NFL Parties, BrownGreer implemented the requirement as an interpretation of the Settlement. *See* ECF No. 8309-1, ¶¶ 10-13.

Subsequently, Counsel The Locks Law Firm independently sought additional time based specifically on its breadth of knowledge on the question of deviation from the Settlement terms– having filed more claims than any other Class Counsel and having received more notices of deficiency on the relevant claims. *See* ECF No. 8329. The Court granted the Joint motion and extended the deadline to respond to

---

[1] Specifically, the motion alleges that "the Claims Administrator has added language to the phrase "corroborated by documentary evidence" contained in Section 1(a)(iii) and 2(a)(iii) of Exhibit 1 to the Settlement Agreement, such that the phrase now means "corroborated by documentary evidence that existed before the date of the Qualifying Diagnosis . . .""; that the additional language is not contained in the Settlement Agreement; and that inclusion of such language modifies the requirements to qualify for a Monetary Award under the Settlement Agreement. See ECF No. 8267, p. 2.

the Motion to Determine Proper Adminstration of Claims to September 28, 2017. *See* ECF No. 8324.

In light of the above, not only is it fair and just to wait to adjudicate the fee petition, it is prudent and necessary because the terms of the Settlement, and thereby the number of claimants entitled to participate are currently in flux. If the Court or a court-appointed expert decides to (a) move forward without an established claims-payment history and (b) accept Class Counsel's prognostication about the size of this fund – which is "uncapped" but reversionary in nature (vs. the size of the recovery), time will tell whether these attorneys were actually awarded an obscene percentage of the claims actually paid. *See e.g. Int'l Metals Corp. v. Waters*, 530 U.S. 1223, 1224 (2000) (O'Connor, J., concurring in denial of petition for certiorari) (noting that once the claims were paid from the reversionary fund, the fee award approved by the District Court was more than twice the amount of the class' actual recovery but, because the issue was waived, the Court could not reach the question whether there must at least be some rational connection between the fee award and the amount of the actual distribution to the class). The Court should delay the petition to avoid such hindsight analysis of the fees in this case.

In short, while Class Counsel is still defending – or attempting to refine - the terms of the Settlement, it is simply too soon for them to contemporaneously declare victory and seek their full fee and a bonus.

**B. The Court should not appoint any expert on attorneys' fees *until and unless* there is something (such as fee statements) for the expert to consider.**

The Alexander Objectors have previously pointed out

- the failure of Class Counsel to comply with this Court's Case Management Order No. 5, entered *five years ago* in September, 2012, that established a protocol for class counsel to maintain "contemporaneous time and expense records" which document compensable time and expenses, in categories designated by the Court, within limitations specified by the Court.

5

- the need for attorneys' fee data for the Court to review and assess in connection with Class Counsel's fee petition. *See Stetson v. Grissom*, 821 F.3d 1157 (9th Cir. 2016) (noting that the Court must have a way to determine whether the hours billed were redundant, excessive, or otherwise unnecessary); *see also* ECF No. 776, Motion for Entry of Case Management Order Governing Applications for Attorneys Fee; Cost Reimbursements; and Future Fee Set-Aside, asking this Court to establish a schedule for filing and vetting common-benefit fee petitions in accordance with Article XXI Of the Settlement. That February 21, 2017 motion remains pending.

Because there is no attorneys' fee data to review a this time, beyond conclusory hour-and-rate fee declarations to which the Alexander Objectors have previously objected, it is premature to appoint any expert to perform that task. In other words, if the Court-appointed expert on attorneys' fees is intended to review the data about, e.g., what services the attorneys performed and render an opinion on the reasonableness of it, such a review must necessarily await the data.[2]

If, on the other hand, Professor Rubenstein or another expert is intended to opine on attorneys' fee methodology, the appointment is premature for an entirely different reason: There is no reliable data upon which to opine about the size of the fund. As the Alexander Objectors previously illustrated in multiple filings, Class Counsel has attempted to extrapolate the size of the fund, upon which they seek a percentage fee, from guestimates about participation. *See* ECF No. 7354 and 7355 (The Alexander Objectors' Response in Opposition to the Fee Petition, along with the Declaration of Kenneth G. McCoin, Ph.d, C.F.A.); and ECF 7533 (The Alexander Objectors' Response and Objection to the Supplemental Evidence filed in Support of the Fee Petition, along with the Declaration of Jamshid Lofti, M.D.). The vast majority of Class Counsel's participation model rests upon a forecasted participation rate for Level 1.5 and Level 2 neurocognitive disorders – disorders

---

[2] The Alexander Objectors join in the request of Class Counsel The Locks Law Firm that the Court identify the matters upon which such court-appointed expert would testify. *See* ECF No. 8327 (Class Counsel The Locks Law Firm Response to Order to Show Cause Order and Request for Clarification and Extension of Time).

previously unknown in medicine because they are made up. And, if two successful claims in the first five months of operation is any indication of ultimate successful participation, Class Counsel may have wildly overestimated the "size of the fund" that will be paid out to NFL Players and their beneficiaries.

Finally, if Professor Rubenstein or another court-appointed expert is to merely opine on Class Counsel's methodology on attorneys' fee recovery, it is either a question of law for the Court or it is an advocate's opinion and Class Counsel should be required to sponsor it. *See McCracken v. Ford* Motor, 392 Fed. Appx. 1, 3 (3 Cir. 2010) (noting that it is not the purpose of Rule 706 to provide litigation assistance).

## II.
### The Court should not appoint Professor William B. Rubenstein to serve as an expert witness on attorneys' fee in this case.

**A.     Professor Rubenstein has conflicts in this case.**

"[Rule 706] only allows a court to appoint a *neutral* expert." *See Gorton v. Todd*, 793 F.Supp.2d 1171 (E.D. Cal. 2011) (*citing In re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d 651, 655 (7th Cir. 2002)) (emphasis added). Professor Rubenstein cannot serve as a neutral in this case because he has already served for advocates in this case.

Professor Rubenstein's prior work on this litigation is reflected on the CV provided by the Court and his faculty disclosures for Harvard University. Specifically, on page 9 of the W.B. Rubenstein Resume attached to the Court August 23, 2017 order, Professor Rubenstein lists that he has "[p]rovided presentation on class certification issues in nationwide medical monitoring clas (*In re: National Football League Players' Concussion Injury Litigation*, MDL. No. 2323, Case No. 2:12-md-02323-AB (E.D. Pa. (2012)).

Inasmuch as this statement appears on Professor Rubenstein's Resume under

the category for "Expert Consultant" and inasmuch a the Court has not previously appointed him as an expert consultant in this litigation, it would seem a fair inference that Professor Rubenstein has worked for a party in this case.

Meanwhile, Professor Rubenstein's Faculty Disclosures in connection with his work for Harvard Law School discloses his work on *In re: National Football League Players' Concussion Injury Litigation*, MDL No. 2323, Case No. 2-12-md-02323-AB, U.S. Dist. Ct., Eastern District of Pennsylvia as an "expert" for the client identified as: "Anapol Schwartz, PC for putative class of former NFL players." *See* http://www.law.harvard.edu/faculty/COI/2013_Rubenstein_William.html

Finally, Professor Rubenstein makes other "blind" disclosures to Harvard Law School where he indicates expert consulting services on several class actions without disclosing which case or which party for whom he is consulting. *See* https://helios.law.harvard.edu/Public/Faculty/ConflictOfInterestReport.aspx?id=10742.

As such, Professor Rubenstein has conflicts that prevent him from being a neutral expert in this case. In the alternative, the Alexander Objectors agree with Class Counsel The Locks Law Firm that Professor Rubenstein should required to make disclosures about his relationships with counsel seeking fees in this case. *See* ECF No. 8327 ( Class Counsel The Locks Law Firm Response to Order to Show Cause Order and Request for Clarification and Extension of Time). The Alexander Objectors suggest that Professor Rubenstein should be required to disclose (a) his current relationships with each of the lawyers and law firms seeking attorney's fees in this case; (b) all communications with anyone about this case; (c) all communications with each and every lawyer or law firm seeking attorney's fees in this case; (d) any and all information and/or documents supplied to him or obtained by him regarding this case.

The failure of Professor Rubenstein to make such disclosures or the failure of the Court to require such may jeopardize the Court's ability to continue on the case

should Professor Rubenstein be appointed, consult with the Court, and later be judicially determined to have a conflict of interest. Specifically, where a Rule 706 court-appointed expert is not neutral, such expert risks the neutrality of the Court. *See In re Kensington Intern. Ltd.*, 368 F.3d 289 (3d 2004) (holding that the bias of the Court-appointed experts on asbestos "irreversibly tainted" the district judge and that disqualification under 28 U.S.C. 455 was necessary). In *In re Kensington Intern. Ltd*, as here, there is no assertion of wrongdoing; it is a matter of the appearance of neutrality. Professor Rubenstein does not have it and his conflct and bias places the Court is a difficult position.

**B.    Professor Rubenstein has a bias on the central, disputed issues.**

A threshold dispute in this case is whether it is appropriate to use the percentage-of-the-fund method for awarding attorneys' fees when there is no defined fund. That is, is percentage-of-the-recovery proper in a case such as this, where the fund is "uncapped" but is characterized by a reversionary-type interest (the NFL retains all sums not paid after a certain threshold) and, thus, the "size of the fund/recovery" is presently unknown and unknowable. Professor Rubenstein has already rendered an opinion on that question – in a vaccum. In his publication, Class Action Attorney Fee Digest, Professor Rubenstein reiterated an opinion from a case in which he testified as an expert: he testified that the "percentage of what" approach is reasonable notwithstanding the appearance of windfall because, "all things being equal, it seems more defensible that class attorneys receive the excess than that defendants do, as it is likely they will reinvest it in future consumer cases." Rubenstein, William B., *Percentage of What*, The Expert's Corner, Class Action Attorney Fee Digest (March 2007). He holds this opinion even though he knows that "it arguably sets up a conflict between counsel and the class by creating an incentive for counsel to accept a settlement unlikely to yield a high claims rate [ ] in exchange for being guaranteed a percentage of the fund made available, but not

9

claimed." *Id*. Those class members objecting to Class Counsel's attorneys' fees methodology are prejudiced from the outset because Professor Rubenstein is not neutral on the percentage-of-the-fee methodology and is ambivalent about the resulting conflict between Class Counsel and the Class Members.

For these reasons, the Alexander Objectors urge the Court not to appoint an expert on attorneys' fees because the issue is neither complex nor ripe for adjudication until a track record for claims processing is established giving more definition to the recover obtained.  Even if the Court determines that a Rule 706 advisor is necessary on fees, the Alexander Objectors urge the Court to compel the putative expert to make disclosures about connections to the fee-seeking parties and, as is the case with Professor Rubenstein, to reject any expert with either a conflict or an issue bias.  Finally, the Alexander Objectors respectfully reurge their pending request for discovery on Class Counsel attorney's fees [ECF No. 7534] so that, whenever the issue becomes ripe, the Court may have data upon which to determine reasonable fees.

Date:  August 31, 2017                                                      Respectfully Submitted,

*/s/ Lance H. Lubel*

| | |
|---|---|
| Mickey Washington | Lance H. Lubel |
| Texas State Bar No.: 24039233 | Texas State Bar No.: 12651125 |
| WASHINGTON & ASSOCIATES, PLLC | Adam Voyles |
| 2019 Wichita Street | Texas State Bar No.: 24003121 |
| Houston, Texas 77004 | Justin R. Goodman |
| Telephone: (713) 225-1838 | Texas State Bar No.: 24036660 |
| Facsimile: (713) 225-1866 | LUBEL VOYLES LLP |
| Email: mw@mickeywashington.com | 675 Bering Dr., Suite 850 |
| | Houston, TX 77057 |
| James Carlos Canady | Telephone: (713) 284-5200 |
| Texas State Bar No.: 24034357 | Facsimile: (713) 284-5250 |
| THE CANADY LAW FIRM | Email: lance@lubelvoyles.com |
| 5020 Montrose Blvd., Suite 701 | adam@lubelvoyles.com |

Houston, TX 77006                                       jgoodman@lubelvoyles.com
Telephone: (832) 977-9136
Facsimile: (832) 714-0314
Email: ccanady@canadylawfirm.com

Attorneys for Melvin Aldridge, Trevor Cobb, Jerry W. Davis, Michael Dumas, Corris Ervin, Robert Evans, Anthony Guillory, Wilmer K. Hicks, Jr., Richard Johnson, Ryan McCoy, Emanuel McNeil, Robert Pollard, Frankie Smith, Tyrone Smith, James A. Young Sr., and Baldwin Malcom Frank

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all counsel of record via the Court's ECF system on August 31, 2017.

*/s/ Lance H. Lubel*
Lance H. Lubel