UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB <br><br> MDL No. 2323 <br><br> **Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc., <br><br> Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**<u>CO-LEAD CLASS COUNSEL'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO COMPEL (1) CASE STRATEGIES GROUP (F/K/A NFL CASE CONSULTING, LLC), IT STRATEGIES GROUP, INC., CRAIG SIENEMA, AND JAMES MCCABE; AND (2) LIBERTY SETTLEMENT SOLUTIONS, LLC, LIBERTY CONTINGENT RECEIVABLES, LLC, LIBERTY SETTLEMENT FUNDING, JMMHCS HOLDINGS, LLC, MARC HERMES, CRAIG SIENEMA, AND JAMES MCCABE TO RESPOND TO THE DISCOVERY REQUESTS PROPOUNDED IN ACCORDANCE WITH THE COURT'S NOTICE & ORDER OF JULY 19, 2017</u>**

This Court clearly has the power to order discovery from entities like Case Strategies Group (formerly known as NFL Case Consulting, LLC), and its principals and related entities (collectively, "CSG" or "Respondents"), who have actively solicited and contracted with Class Members for percentages of their potential future monetary awards under the Settlement over

which this Court presides. CSG voluntarily chose to involve itself in the effectuation and implementation of the Settlement by creating a business out of contracting with Class Members and profiting directly from this Settlement's res. None of the cases that it cites in support of its insistence that subpoenas are required present situations even remotely comparable to these circumstances, which are of CSG's own making.[1] Consequently, Respondents have subjected themselves to this Court's jurisdiction. As such, this Court is fully empowered to order them to participate in discovery and no subpoenas are necessary.[2]

---

[1] *See, e.g., Taggart v. Wells Fargo Home Mortg., Inc.*, No. 10-cv-00843, 2012 WL 4462633 (E.D. Pa. Sept. 27, 2012) (denying plaintiff's motion to compel discovery from retired, former president of defendant, who had no personal knowledge of mortgage giving rise to suit); *Ledcke v. Pennsylvania Dep't of Corrs.*, No. 1:12-CV-1580, 2013 WL 1632573 (M.D. Pa. Apr. 16, 2013) (denying prisoner's motion to compel discovery from prison board, prison warden and prison supervisors, who were originally defendants, but later were dropped from complaint); *Hill v. Dodson*, No. 1:12 CV135 LMB, 2013 WL 5355157 (E.D. Mo. Sept. 24, 2013) (denying prisoner's motion to compel against numerous witnesses after denying issuance of subpoenas because plaintiff had not identified, with specificity, the date, time, place and purpose for witnesses); *Shipes v. Amurcon Corp.* No. 10-14943, 2012 WL 1183686 (E.D. Mich. Apr. 9, 2012) (denying motion to compel discovery from non-party defendant's employee following quashing of subpoena and noting failure to seek new subpoena). In none of these cases had the person or entity from whom discovery was sought voluntarily involved itself in the litigation in the manner in which CSG has.

[2] Indeed one of Respondents' very own cases discusses district courts' inherent powers that are not specified under the Federal Rules of Civil Procedure. *See* ECF No. 8348, at 2. The court in *Thompson v. Gonzalez*, No. 1:15-cv-301-LJO-EPG, 2016 WL 5404436 (E.D. Ca. Sept. 27, 2016) noted that:

> a federal court may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress, … though it may not exercise its inherent authority in a manner inconsistent with the Rules.… The mere absence of language in the federal rules specifically authorizing or describing a particular judicial procedure should not, and does not, give rise to a negative implication of prohibition.… Put another way, a court may have inherent power to do that which is not specifically provided for in the Rules, but it may not do that which the Rules plainly forbid.

*Id.* at *5 (internal quotation marks and citations omitted). There is nothing in the Rules that forbids this Court from exercising its jurisdiction over and ordering discovery from entities consciously

This Court will determine whether, in fact, those contracts into which CSG entered with Class Members are valid and enforceable. As per the July 19, 2017 Notice and Order, "[t]he Court will hold a Hearing to address the allegedly deceptive or misleading solicitations received by the Settlement Class Members, including but not limited to solicitations from claims service providers …. The Court will address the legality of any agreements entered into by the Settlement Class Members as a result of these solicitations and may grant any relief the Court deems proper." ECF No. 8037. In order for this Court to be able to make these determinations, the Court set forth the discovery that it deemed would be necessary and appropriate; it will need to see the solicitations and initial communications that led (or mislead, as the case may be) Class Members to decide to enter into the contracts with CSG.

CSG strenuously seeks to prevent its pre-April 18, 2017 communications with Class Members from being revealed to the Court and Co-Lead Class Counsel ("Class Counsel"). Over and over, CSG has argued that its so-called "remedial measures" and "opt-in" procedure have wholly cured any misrepresentations it may have made initially to Class Members. If such truly were the case, then CSG should have no problem with the Court and Class Counsel reviewing the original solicitations and communications, particularly the audiotapes, which its later remedial measures allegedly rectified. Indeed, such disclosure will allow the Court to be fully confident that Class Members contracted, and remained contracted, with CSG based upon full and complete understanding of CSG's true identity and the alleged benefits of its services so as to inform Class Members as to a reasonable price for CSG's services and the decision to remain under contract for such services. The Court cannot ascertain whether a remediation effort was effective without first

---

and deliberately enmeshing themselves in the implementation of a class settlement.

having a full understanding of the initial harm that remediation efforts was designed to rectify. Thus, the pre-April 18, 2017 solicitations and communications with Class Members are vital.

Those initial solicitations and communications not only created and solidified relationships between CSG and its Class Member clients – relationships that may be based upon misrepresentations – they also apparently were designed to engender distrust toward Class Counsel.  CSG's counsel represented that "[a]ll 118 Class Members who wish to continue to retain CSG, however, have stated to CSG that they do not wish to have their identities disclosed to Co-Lead Class Counsel."  *See* Supplemental Declaration of Christopher A. Seeger, dated September 5, 2017 ("Seeger Supp. Decl."), at Exhibit A ("Ex. A") (letter from CSG's counsel, dated May 17, 2017).  This begs the question as to what CSG represented about Court-appointed Class Counsel that would lead each and every one of its Class Member clients allegedly to decide that they did not want Class Counsel to know that they had contracted with CSG.  Obviously, Class Members did not decide to secrete their contracts with CSG from Class Counsel and the Court in a vacuum.

Against that backdrop, CSG criticizes Class Counsel for suggesting that CSG encouraged its clients to retain individual counsel "with the ulterior motive of thwarting Class Counsel," calling Class Counsel's assertion an "absurd and false assertion."  *See* ECF No. 8348 at 8 n.7.  The facts suggest otherwise.  In its June 21, 2017 filing, in support of its refusal to provide Class Counsel with the identities of those Class Members with whom CSG had contracted, CSG stated in pertinent part as follows:

> Class Counsel has also sought to contact Class Members represented by individual counsel directly.  (ECF No. 7624-3 ("Your clients' unwillingness to identify the Class Members with whom they have contracted in order to facilitate **our direct communications with those individuals** is preventing us from insuring that those Class Members entered into contracts with your clients based solely upon accurate information." (emphasis added)).)  CSG's counsel recognized such a request as an attempt by Class Counsel to contact a represented party in violation of the relevant Rules of Professional Conduct governing lawyers.  *See, e.g.,* Pa. R.P.C. 4.2 ("In

representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."). CSG was unwilling to provide Class Counsel with a list of Class Members utilizing its services because, as CSG repeatedly informed Class Counsel, its clients all were either represented by individual counsel, or in the process of retaining individual counsel. (ECF No. 7624-4 ("Finally, given that many of our clients are represented by counsel, we believe your speaking to them without the consent of their counsel raises ethical considerations for you.").)

ECF No. 7845, at 5 n.5. In short, Class Counsel's skepticism as to CSG's motives is well founded.

Further, it is noteworthy that most, if not all, of CSG's clients were not represented by individual counsel when CSG initially solicited them.[3] Ultimately, each of them retained one of the five firms in CSG's "network" of law firms. *See* ECF No. 7845, at 6 (CSG "works with a network of attorneys and can provide a Class Member with a list of options for legal counsel").[4]

---

[3] They were, however, already represented by Class Counsel. *See* 6 William B. Rubenstein *et al.*, *Newberg on Class Actions* § 19:2, at 257-58 (5th ed. rev. 2016) ("[O]nce a class has been certified, the default presumption is that there is an attorney-client relationship between class counsel and the absent class members.").

[4] Class Counsel propounded Interrogatories upon each firm that CSG identified as being among those it suggested that its clients retain. Seeger Supp. Decl. at Ex. B. Of the seven law firms, evidently only five were ultimately retained by Class Members. *Id.* at Exs. C, D. The five law firms are Reich & Binstock, LLP, The Law Offices of Ronald T. Bevans, Jr., McCall | Atten International, P.A., Jesse Dean-Kluger, P.A., and Farrell & Patel. Their responses to the Interrogatories were as follows:

1. Reich & Binstock, LLP responded to the Interrogatories and identified their forty-eight clients, who are Settlement Class Members. They claim to have no knowledge as to whether their clients have contracted with any other entity, including CSG, related to the Settlement. All of this firm's retentions occurred after March 2017.
2. The Law Office of Ronald T. Bevans, Jr. responded to the Interrogatories and identified their fifteen clients. The firm acknowledged receiving contact information for Class Members from CSG and its employees.
3. It appears that McCall | Atten individually represents ten Class Members, but it redacted the retainer agreements and did not produce the clients' names.
4. Jesse Dean-Kluger, P.A. represents twenty-eight Class Members. The firm denied having information regarding its clients' other contractual agreements with anyone else, CSG included. The firm, however, acknowledged receiving Class Member contact information

It strains credulity for CSG's counsel to insist that CSG's employees did not suggest that any of its clients retain counsel but, rather, waited for the Class Member to inquire about representation (coincidentally, each and every one of the theretofore not individually represented Class Members evidently ultimately made that inquiry to CSG personnel), and only upon receiving such inquiry did CSG then suggest that the Class Member individually retain one of the firms in CSG's network. Class Counsel has further misgivings in light of the fact that CSG emphasized that these law firms "had *agreed* to limit their contingent fees to reflect the significant cost savings flowing from the division of labor between the law firm and CSG," *see* ECF No. 8348 at 8, n.7 (emphasis added), and yet now, some of these law firms claim ignorance as to whether their clients even have contracts with CSG. *See supra* n.4 & Seeger Supp. Decl., at Exs. E, H.

   Therefore, at this juncture, even assuming that CSG produces documents sufficient to reveal (i) the identities of its clients, (ii) corresponding percentages of potential future monetary awards that its client Class Members have contracted to surrender under CSG contracts, (iii) corresponding individually retained counsel and their contingent fee percentages of each Class Member's potential future monetary award, and (iv) the dates of retention for CSG and the law firms, production of the initial solicitations and communications is nevertheless necessary. Because CSG evidently has made statements and representations to its Class Member clients designed to foster misgivings about or downright distrust in Class Counsel, Class Counsel now are hamstrung in their ability to investigate possible deception, as the Court had directed. As such,

---

   from CSG and communicating with CSG regarding the solicitation of Retired NFL Football Players.
5. Farrell & Patel objected to the Interrogatories based upon the fact that the firm was not served with a subpoena and based upon attorney-client privilege; it has refused to provide any substantive responses.

*See id.*, at Exs. E to I, respectively.

the best evidence to present to the Court concerning whether Class Members were deceived into entering into agreements with CSG to enable the Court to determine whether the contracts are enforceable are the solicitations and communications, including the early ones, prior to April 18, 2017.

Accordingly, for the reasons stated above and in Class Counsel's opening memorandum (ECF No. 8319-1), the Court should direct CSG to respond to the discovery requests propounded upon it and its affiliates pursuant to the Court's July 19, 2017 Notice & Order.

Dated: September 5, 2017

Respectfully submitted,

/s/ Christopher A. Seeger
Christopher A. Seeger
SEEGER WEISS LLP
77 Water Street
New York, NY  10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

*Co-Lead Class Counsel*

Sol Weiss
ANAPOL WEISS
One Logan Square
130 N. 18th St., Sutie 1600
Philadelphia, PA  19103
Phone: (215) 735-1130
Fax: (215) 735-2024
sweiss@anapolweiss.com

*Co-Lead Class Counsel*

## **CERTIFICATE OF SERVICE**

It is hereby certified that a true and correct copy of the foregoing reply, along with the supporting documents, was served electronically via the Court's electronic filing system on the date below upon all counsel of record in this matter.

Dated: September 5, 2017

/s/ Christopher A. Seeger
Christopher A. Seeger