UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

*8363*

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | ) ) ) ) ) |
| | |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc., | ) ) ) ) ) |
| Defendants. | ) ) |

12-MDL-2323-AB

Philadelphia, PA
August 30, 2017
10:25 a.m.

FILED

SEP 11 2017

KATE BARKMAN, Clerk
By _____ Dep. Clerk

TRANSCRIPT OF TELEPHONE CONFERENCE
BEFORE THE HONORABLE ANITA B. BRODY
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For Kevin Turner,          TERRIANNE BENEDETTO, ESQUIRE
et al:                     CHRISTOPHER A. SEEGER, ESQUIRE
                           SEEGER WEISS, LLP
                           1515 Market Street
                           Suite 1380
                           Philadelphia, PA  19102


For RD Legal Entities      DAVID WILLINGHAM, ESQUIRE
and Roni Dersovitz:        MICHAEL ROTH, ESQUIRE
                           JEFFREY M. HAMMER, ESQUIRE
                           BOIES SCHILLER & FLEXNER
                           725 S. Figueroa Street
                           31st Floor
                           Los Angeles, CA 90017

APPEARANCES:   Continued

For Marvin Jones,          STEVEN C. MARKS, ESQUIRE
et al:                     PODHURST ORSECK, PA
                           Sun Trust International Center
                           One Southeast 3rd Avenue
                           Miami, FLORIDA  33130


For National Football      DOUGLAS M. BURNS, ESQUIRE
League:                    PAUL, WEISS, RIFKIND, WHARTON
                           & GARRISON, LLP
                           1285 Avenue of the Americas
                           New York, NY  10019


For Justice Funds          RICHARD L. SCHEFF, ESQUIRE
and CSG:                   MONTGOMERY MCCRACKEN
                           123 South Broad Street
                           Avenue of the Arts
                           Philadelphia, PA  19109



Audio Operator:            CHRIS KUREK


Transcribed by:            DIANA DOMAN TRANSCRIBING, LLC
                           P.O. Box 129
                           Gibbsboro, New Jersey  08026
                           Office:   (856) 435-7172
                           Fax:      (856) 435-7124
                           Email:    dianadoman@comcast.net



Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

I N D E X

RD Legal                                          PAGE

  Ms. Benedetto                              10, 16

  Mr. Willingham                                 12

Ruling:   The Court                                19

Case Strategies Group

  Mr. Scheff                                     21

  Ms. Benedetto                                  25

1       (The following was heard at 10:25 a.m.)

2           THE COURT:  Thank you.  I'm sorry that it's -- that

3   it's discombobulated, but I think I've done the best I can.

4   Okay.  And Chris and my -- and Andrew's been very helpful, who's

5   my law clerk.  Okay.  Are we on the record, Chris?

6           THE CLERK:  We're good.

7           THE COURT:  Okay.  Why don't each of you identify

8   yourselves?  First, Mr. Seeger, are you there alone or -- are

9   you there alone, or with Ms. Benedetto?

10          MR. SEEGER:  No, Your Honor.  I'm here, and my partner

11  Terri Benedetto is going to be handling the argument today.

12          THE COURT:  Okay.  Thank you.

13          MS. BENEDETTO:  Good morning, Your Honor.

14          THE COURT:  All right.  And now let's see who's --

15  let's take the people from RD Legal Funding first.

16          MR. WILLINGHAM:  Yes.  Good morning, Your Honor.

17          THE COURT:  Who's on from that?

18          MR. WILLINGHAM:  David Willingham.

19          THE COURT:  And who -- you're going to be speaking,

20  Mr. Willingham?

21          MR. WILLINGHAM:  Your Honor, David Willingham on

22  behalf -- and Michael Roth, and Jeff Hammer from Boies Schiller

23  on behalf of RD Legal Entities and Roni Dersovitz personally.

24  And we are specially appearing.

25          THE COURT:  Okay.  Have you filed pro hac vice?

1          MS. BROTMAN:  Your Honor, this is Ellen Brotman, I'm

2  local counsel.  Good morning.  And I'm happy to hear that you're

3  well, Your Honor.  I'm local counsel for the RD Legal Funding

4  entities and Roni Dersovitz.  I was unable to file the pro hac

5  vice motion last night, because we didn't have the notice

6  parties added yet.

7          So I will be doing that today.

8          THE COURT:  Okay.  Well on your representation, Ms.

9  Brotman, I'll certainly hear them, okay?  Okay.  Mr. Willingham,

10  Mr. Roth and Mr. Hammer -- Mr. Roth and Mr. Hammer, you will be

11  filing today, is that correct?

12          MR. WILLINGHAM:  That is correct, Your Honor.  We will

13  be filing --

14          THE COURT:  Pro hac vice.

15          MR. WILLINGHAM:  Yes.

16          THE COURT:  Okay.  That's fine.  No problem, you can

17  speak.  Okay.  And then who else, is there another party that is

18  contesting the request for discovery relating to -- to what --

19  I don't want to characterize it now.  But the funds that have

20  been extended to -- in the same way as RD Legal has extended it?

21  Who else is -- what other defendant is one the phone on that

22  issue?

23          MR. SCHEFF:  Your Honor, this is Richard Scheff,

24  S-C-H-E-F-F --

25          THE COURT:  No, no.  No, you're actually very --

1          MR. SCHEFF:   -- along with --

2          THE COURT:   Mr. Scheff, your issue is very different

3    than that.   Is there anyone who has somewhat the same issue --

4          MR. SCHEFF:   That's right.

5          THE COURT:   -- as RD Legal has?

6          MR. SCHEFF:   Okay.

7          THE COURT:   Do you, Mr. Scheff --

8          MS. BENEDETTO:   Your Honor, Justice Funds may, but we

9    have not filed a motion against them yet.   But Mr. Scheff does

10   represent them.

11         THE COURT:   He represents --

12         MR. SCHEFF:   Yeah, there's been no motion filed as to

13   Justice Funds at this point.

14         THE COURT:   Oh, Justice Funds -- Justice Funds --

15         MR. SCHEFF:   But I do represent Justice Funds.

16         THE COURT:   -- is another -- and you are in a similar

17   situation as RD Legal, is that right?

18         MR. SCHEFF:   Well I don't know what RD Legal does,

19   Your Honor.   But -- and we have received a discovery request

20   from class counsel.   We're told that a motion to compel will be

21   filed.   But it has not been filed yet.

22         THE COURT:   All right.   Well let --

23         MS. BENEDETTO:   Your Honor, this is Terri Benedetto

24   speaking.   It's my understanding that both RD Legal and the

25   Justice Funds purport to purchase the assets, a percentage of

1 the class members' potential future monetary award.

2    THE COURT:   Okay.   Is that correct, Mr. Scheff?

3    MR. SCHEFF:   It is.   But my understanding, Your Honor,

4 is that all but three of those relationships have been converted

5 to loans under the State law where the player lives under a

6 State licensed agreement.

7    So they're all in accordance with State law.   I

8 haven't -- I cannot tell you that I've done significant research

9 with respect to Justice Funds.   I've done some, it's a recent

10 representation of mine.

11    And as I said, we have not received a motion to compel

12 at this point.

13    THE COURT:   Okay.   And, Ms. Benedetto, you're -- so

14 your motion to compel relates to -- to RD Legal, and to whom

15 else?

16    MS. BENEDETTO:   To CSG, Your Honor, the -- formerly

17 known as NFL Case Consulting, who Mr. Scheff represents.   But

18 they are not a "lender," they are a claims services entity.

19    MR. SCHEFF:   That's correct, Your Honor.

20    THE COURT:   So you're representing -- Mr. Scheff,

21 you're representing both Justice Funds and CSG, is that correct?

22    MR. SCHEFF:   That is correct, Your Honor.

23    THE COURT:   All right.   And --

24    MS. BENEDETTO:   Terri Benedetto speaking again.   I

25 should also make Your Honor aware that counsel for the Legacy

1  Pro Sports, which I am slated to take a deposition of one of

2  their principals today and tomorrow, they noted Your Honor's

3  order concerning today's conference call.  And although we have

4  not filed a motion against them because they have produced

5  discovery and are producing witnesses for depositions, they have

6  asked to be on this call, and I gave them a calling number.

7        Although I was clear to them that I was under the

8  impression that Your Honor's order did not cover them, I did

9  give them the conference call information, and they are on the

10 line.

11        THE COURT:  Okay.  Who is that?  Would you like to

12 identify yourselves?

13        MR. EDELSBERG:  Good morning, Your Honor.  This is

14 Scott Edelsberg from Kopelowitz Ostrow.

15        THE COURT:  And I assume that you're going to be

16 listening today, is that correct?

17        MR. EDELSBERG:  Yes, Your Honor.

18        THE COURT:  Okay.  Good.  All right.  So I think -- is

19 there anyone I have not identified?

20        Okay.

21        MR. BURNS:  Yes, Your Honor.  This is Doug Burns from

22 Paul Weiss Rifkind representing the NFL parties.

23        THE COURT:  Oh, yes.  Okay.  Yes.  Is there anyone

24 else?  Thank you.  Is there anyone else?  Is there anyone else?

25

1           All right.  Okay.  I think we have everyone --

2           MS. BENEDETTO:  Your Honor?

3           THE COURT:  Yes.  Who is this?

4           MS. BENEDETTO:  I believe you have -- I was saying --

5     it's Ms. Benedetto speaking, Your Honor, I was saying, I believe

6     that you have everyone.

7           THE COURT:  Okay.  Thank you.  That makes some --

8     that's good.  All right.  And consistent with the request, Chris

9     is taking the record in this case and I'm going to ask you to

10    identify yourselves before you speak.  Okay?  All right.  Let's

11    -- Ms. Benedetto, why don't you frame the issue?  You have

12    compelled -- you compelled --

13          MS. BENEDETTO:  Your Honor --

14          THE COURT:  Why don't you address -- why don't you

15    address RD Legal first.

16          MS. BENEDETTO:  Okay.  Yes, Your Honor.  RD Legal has

17    basically produced certain contracts that had already been made

18    public actually in the -- in the litigation before Judge Preska

19    in the Southern District of New York.

20          Other than that, they have refused to produce any

21    documents based upon their position -- a dual position that we

22    were obligated to serve them with a subpoena.  And also they

23    claim that we're not entitled to any of the communications or

24    solicitations leading up to the class members entering into

25    contracts with RD Legal, because the contracts themselves are

1      sufficient --

2              THE COURT:  Okay.  Well --

3              MS. BENEDETTO:  -- are sufficient with respect to both

4      entities, is that -- because Your Honor presides over the rest

5      in this case, and these entities purport to take percentages of

6      class members' potential future monetary awards, that Your Honor

7      has jurisdiction over them -- both because Your Honor presides

8      over the rest, and because Your Honor has MDL and All Writs Act

9      powers.

10             THE COURT:  All right.  Ms. Benedetto, what -- what do

11     you need these for?  I mean, you now -- you have the agreements,

12     don't you?

13             MS. BENEDETTO:  Yes, Your Honor.

14             THE COURT:  You have the agreements.  And as I

15     understand -- what?

16             MS. BENEDETTO:  I want to make sure that nobody

17     entered into any agreements based upon solicitations or

18     communications which may have misled the class members with

19     regard to basically what they were getting themselves into.

20             THE COURT:  Okay.  Would you like to respond -- who's

21     going to be responding for RD Legal?

22             MR. WILLINGHAM:  Yes.  This is David Willingham on

23     behalf of the RD Legal entities and Mr. Dersovitz.  I -- I --

24     Your Honor, one, I -- I thank the Court for its time, and I wish

25     the Court well.  Two, with regard to the Court's statement, RD

1    Legal is in a different position here.

2            It has produced those contracts voluntarily.  And in

3    the course of the meet and confer, it made very clear that to

4    the extent that RD Legal is a third party, it seeks and will

5    uphold the protections of Rule 45 under the Federal Rules of

6    Civil Procedure, and have the right to, (a) object to any

7    subpoena, or any -- well any process, including a subpoena,

8    should it be issued.

9            But certainly has the right to enforce that Rule.  It

10   has not received a subpoena for documents, or a subpoena for

11   testimony.  And to the extent that it does, the documents that

12   would be called for are -- would be burdensome to collect,

13   certainly.

14           When the contract at issue, as we have just been able

15   to compile for the Court in its opposition, these contracts make

16   clear that RD Legal is different, as the Court remarked.

17           RD Legal is not a lender.  It purchased percentages

18   for more than $1.6 million to date outlay to NFL players, in

19   terms of cash payments to NFL players, for the right to a

20   percentage of some of the recovery of those players, clearly not

21   all.

22           If you take a look at our opposition on page three,

23   there is a chart of what was purchased and the percentage of

24   recovery that RD Legal would be entitled to.  And every day that

25   goes by actually costs the -- some of those NFL players money,

1   because RD Legal would be further obligated to pay further

2   monies to certain NFL players in the form of rebates on the

3   purchase.

4          And we tried to highlight that as of October 31st what

5   would happen if those players were paid by then.  So, Your

6   Honor, to the extent --

7          THE COURT:  Are you asking -- are you asking this

8   amount from -- from the disbursing agent, or are you asking this

9   -- whom are you asking this money from?

10          MR. WILLINGHAM:  Your Honor, the claims administrator

11   has refused to pay those amounts directly.  It is the NFL

12   players that are obligated to pay it themselves once they

13   receive funds, the issue of --

14          THE COURT:  Okay.

15          MR. WILLINGHAM:  -- you know, who and what is frankly

16   not before the Court in this moment.  It is simply an issue of

17   the discovery requests that have been made.

18          THE COURT:  I understand that.

19          MR. WILLINGHAM:  And what --

20          THE COURT:  Because -- when you have a class action,

21   you think -- you think that everything's before you, and usually

22   you're right, Mr. Willingham.

23          MR. WILLINGHAM:  Yeah.  Yeah, but obviously it's not

24   a ripe issue, and those claims have not -- those issues have not

25   been presented quite yet, Your Honor.

1              And what is clear form the contracts, Your Honor, is

2     RD Legal did act differently.  These contracts, in bold print,

3     encouraged everybody to get their own counsel, they required

4     spousal consent.  The terms of the contract mandated that each

5     and every player register with a credit counseling service, and

6     provide evidence of that before any monies were outlaid to them.

7              So it just makes no sense to us why the class counsel

8     would expend these types of resources.  And that was portion of

9     our meet -- when we talked sources about meet and confer, why

10    these types of resources, when they have the contracts, and

11    they're limited contracts RD Legal engaged in, there's only

12    seven, really mandate going down this path.

13             And we attempted to meet and confer on those issues,

14    and obviously got nowhere.  So --

15             THE COURT:  All right.  One second -- okay, go on.

16    Please finish.  I'm sorry.

17             MR. WILLINGHAM:  Our position is fairly simple.  That

18    Rule 45 needs to be followed.  And to the extent that the

19    subpoena then, if we were to get one, mandates burdensome

20    production, or things that are not called for in terms of third

21    party discovery we -- we would object to that, because we are

22    simply -- the issue that is before the Court is simply different

23    from what RD Legal engaged in.

24             THE COURT:  Ms. Benedetto, how -- there are -- I guess

25    it's -- they named in their papers, I guess seven or eight

1   players, is that correct?  I don't have it in front of me.

2   Seven or eight players that -- that you know about who have

3   entered into these agreements, is that correct?  Hello?  Hello?

4                   (Phone disconnects)

5           MR. WILLINGHAM:   Was   that   a   question   for   Ms.

6   Benedetto, Your Honor?

7           THE COURT:   Yes.   Ms. Benedetto, yes.   How much

8   information do you have?   Let Ms. Benedetto answer that

9   question.  Ms. Benedetto, how much of this information do you

10  have?  Do you have the contracts?

11          MR. WILLINGHAM:  I think her line -- Your Honor, that

12  was the sound we heard.   I think she might have gotten

13  disconnected.

14          THE COURT:  Oh, my.  One second.  I don't -- what do

15  you want to do?  Can I -- should I -- you want to reconnect?

16          MR. STAHL:  She's going to call back -- I'm sure

17  she'll call back in.  I think she was on a cell phone, she might

18  -- and her line just got dropped.  We heard -- I heard a noise

19  that sounded that way.

20          THE COURT:  Hello?  Is everybody else still on?

21          MR. SCHEFF:  Yes, Your Honor.  This is Richard Scheff.

22  We're still on.

23          MS. BENEDETTO:  Your Honor -- my apologies.  I tried

24  to pick up and speak to you directly.  I'm in a hotel room, and

25  the speaker phone was causing problems, I tried to pick it up

1    and I got discontinued.  This is Terri Benedetto back on again.

2              THE COURT:   Okay.   All right.   What -- what

3    information -- Ms. Benedetto, what information -- Chris, are you

4    still on the record?

5              THE CLERK:   We're still here.

6              THE COURT:   Chris?

7              MR. STAHL:   We're on the record, Judge.

8              THE COURT:   Oh, good.  Ms. Benedetto, tell me who --

9    who -- what information do you actually have at this stage?

10             MS. BENEDETTO:   With regard to RD Legal, we have --

11             THE COURT:   Yes.  RD Legal.  Yes, RD Legal.

12             MS. BENEDETTO:   Yes.   They were filed, and as Your

13   Honor -- we did file a notice before Your Honor to give you

14   judicial notice of the fact that we had sought to file an amicus

15   brief before Judge Preska to ask her to refer to Your Honor in

16   interpreting our settlement agreement, vis-a-vis whether or not

17   assignments were even permitted, which is the vehicle which RD

18   Legal used to do these asset purchases.

19             And the settlement agreement in our -- and our

20   position is that the settlement agreement prohibits assignments.

21   There's a --

22             THE COURT:   Well I don't -- I haven't spoken -- I

23   obviously haven't spoken to Ms. Preska yet.  But right now this

24   is before me, and I have a -- I will discuss -- as soon as I get

25   back on Monday, I expect to talk with her, and I'm going to --

```
 1    Chris, make sure that that's set up, okay?

 2              MS. BENEDETTO:  Yes, Your Honor.

 3              THE COURT:  Okay.  Andrew, make sure that's set up

 4    okay?

 5              MR. STAHL:  Yes, Judge.

 6              THE COURT:  Okay.  Tuesday, I mean, not Monday.

 7    Tuesday.  As I understand it, whatever you're doing in that

 8    right now, is in that Court, it's not in my Court yet.  And it's

 9    my job at this stage just to make -- I set a hearing and I

10    wanted to make an inquiry, because of the deep concerns that I

11    had.  So it seems to me that I don't know what other information

12    -- I mean, it may very well be that on the -- I may want further

13    briefing, I may want -- I may want further information.

14              What has to happen is, I just simply set this hearing

15    as an inquiry as to what was before me, so that you could

16    present to me what your concerns are about these -- the impact

17    of these agreements on members of the class that I have

18    jurisdiction over.

19              So I thought that -- my thinking was that on the

20    nineteenth of September, at this stage all you need to have, I

21    think is to have the agreements.  And I'd like to know if

22    there's anything else that you need to present to me to -- to

23    inform me about what -- what's going on.

24              I don't know why you need that from RD Legal, you have

25    -- you know the names of the players, do you not?
```

1            MS. BENEDETTO:  Yes, we do, Your Honor.

2            THE COURT:  All right.  So you have basically --

3            MS.   BENEDETTO:    More   the   solicitation   and

4    communication, you know, with -- with the other entities like

5    CSG who have contracted with players, where we have, with the

6    numerous communication from players who were very confused, we

7    just  wanted  to  make  sure  there  was  no  confusion  in  the

8    communications before players entered into their agreements with

9    RD Legal.

10           THE COURT:  Well and you certainly can present all

11   that -- you can present all of that to me, so I know whether or

12   not I'm getting into this or not.  I have to make that threshold

13   -- that threshold decision.

14           But this is just that it was an explanatory, as I said

15   in my -- in my orders, exploratory hearing so that I -- all --

16   as far as I'm concerned, you will be presenting everything you

17   have to me, and I'll see whether I'm going to go any further

18   with it, or I'm just going to leave it alone.

19           So but I do need all the evidence.  And you certainly

20   are in a position now to present all this evidence without RD

21   Legal responding.  I'm not hearing from RD Legal that day.  I'm

22   hearing  from  just  the  plaintiffs'  lawyer.   Because  the

23   plaintiffs' lawyer says, I want to know how -- how this is going

24   to be impacting on you.

25           And then I will have subsequent hearings if I feel

1   important, and I will have subsequent submissions if I feel

2   important.  And the only thing that -- that RD Legal can at that

3   stage present to me, if I think appropriate at that time, will

4   be some kind of legal argument that I cannot step on these

5   orders.

6           But that's the only thing that should come up on the

7   nineteenth.  Right now it's completely exploratory, and it's

8   completely in your ballpark, Ms. Benedetto, to tell me what you

9   know.

10          Okay?  So I don't think at this stage -- I don't think

11  at this stage you need anything more.  When I hear what you have

12  to present to me, what happened from your point of view, I then

13  can get responses from the defendants, and we can set up, if

14  necessary, or if appropriate, a subsequent hearing and

15  subsequent submissions.

16          So I think that as far as I'm concerned, I am, at this

17  stage I think the issue is moot, and I'm not going to grant

18  either motion.

19          You'll present to me what you have, and I'll see if

20  this is an avenue that I wish to pursue.  That's all there is --

21  that's all there is in front of me on the nineteenth.  Okay?

22          MS. BENEDETTO:  Is that just with regard to RD Legal,

23  Your Honor?

24          THE COURT:  That's -- and also as far as Justice -- I

25  mean, that will -- I mean, I don't think we need another

1    hearing, Mr. Scheff, on -- on Justice Fund, but you certainly

2    can present that to me on the nineteenth also, Ms. Benedetto.

3           Okay?

4           MS. BENEDETTO:  Yes, Your Honor.

5           THE COURT:  And you have that information --

6           MS. BENEDETTO:  And then with regard --

7           THE COURT:  -- I don't have that information, nor do

8    I have the -- the -- anything in front of me.  Okay?  Is there

9    any objection to that?

10          MS. BENEDETTO:  Your Honor -- yes, Your Honor.

11          THE COURT:  Do you have any problem with that?  Okay.

12   Let's go on to --

13          MR. WILLINGHAM:  No, Your Honor.

14          THE COURT:  -- let's go on to --

15          MR. SCHEFF:  No, Your Honor.

16          THE COURT:  -- Legacy Pro Sports.  So I'm going to

17   have an open-ended hearing on -- to be presented to me by the

18   plaintiff -- by the plaintiff telling me what this is all about.

19   Okay, Ms. Benedetto?

20          MS. BENEDETTO:  Your Honor, Legacy Pro Sports is on

21   the phone, but there's no motion pending as to them.  The

22   motion's pending as to Case Strategies Group, CSG, the entity

23   that Mr. Scheff represents.

24          THE COURT:  Okay.  That's -- I'm sorry.  You're

25   absolutely right in that.  You're absolutely right.  I've just

1    misread my notes.  CSG.  Yes.  Okay, Mr. Scheff.

2          MR. SCHEFF:  Thank you, Your Honor.  Your Honor is

3    aware of the history of our interactions with class counsel.  A

4    motion for injunction was filed I believe in March.  That motion

5    was withdrawn in June.

6          In the interim between March and June, we provided

7    information voluntarily to both the NFL and to class counsel.

8    With respect to the NFL, we listened to all of the concerns that

9    they had, we changed the name of the company, we completely

10   changed the website to avoid any trademark issues by the NFL.

11         And as far as I'm concerned, I've not heard anything

12   from them that they are dissatisfied, and I don't believe that

13   is an issue.  With respect to the allegations that were in the

14   injunction motion filed by class counsel, no players were

15   identified.  These were sort of anonymous complaints that were

16   detailed in the motion.  Certain individuals who acted on behalf

17   of Case Strategies Group were named.  We investigated all of

18   their communications of those particular individuals with

19   players.  We found nothing offending whatsoever.

20         And we advised class counsel.  We then proceeded in

21   light of class counsel's allegations that arguably we may have

22   misled players in certain communications.  We went through a

23   remediation effort, which was fully shared with class counsel at

24   the time, and also detailed in status letters to the Court.

25         That remediation process involved a series of

1   disclosures that were both in writing and verbally to each

2   player.  That list of disclosures was shared with class counsel

3   in advance of the remediation program going forward, and class

4   counsel never provided any comment to us with respect to those

5   disclosures.

6        So what happened was certain employees of Case

7   Strategies Group got on the phone with each player, went through

8   each of the disclosures, explained them to each of the players,

9   then sent them the disclosures to read and sign.

10       If they did not sign them, then their contract was

11  canceled.  And as a result some number of contracts were

12  terminated.  Each of the players who remain as clients of Case

13  Strategies Group are represented by counsel.  Class counsel has

14  contacted these law firms, and each of these law firms, as far

15  as I know, because I've seen some of the communications, have

16  represented to class counsel that Case Strategies Group is

17  providing valuable services to their clients, and that their

18  clients fully understand the nature and terms of the contract.

19       We received a discovery request for Case Strategies

20  Group, a number of other entities, which have some relationship

21  to Case Strategies Group, and a number of individuals.  We

22  received discovery requests, as well as requests for depositions

23  of I think nine people.

24       What we did, is we got on the phone with class

25  counsel, and we went through each entity.  We told class counsel

1    that we -- because we were non-parties, that we required a

2    subpoena under Rule 45.

3            That has been explained by counsel for RD Legal.   We

4    were ordered last week -- last Friday I think it was, to file

5    our opposition papers by today.   We've not yet filed those

6    opposition papers, but will be doing so today.   And there is

7    substantial case law that we cite which supports our position

8    that a Rule 45 subpoena's required.

9            Nonetheless, in our meet and confer sessions with

10   class counsel, we identified the entities that had absolutely

11   nothing to do with the NFL settlement.   And upon receipt of a

12   subpoena, which we agreed to accept on behalf of each of the

13   entities and each of the individuals, we offered to provide a

14   declaration from a principal of those entities that were not

15   involved, which stated that they were not involved.

16           With respect to Case Strategies Group, we offered to

17   provide certain information.   They already have a copy of our

18   contract, our revised contract.   They got it during the meet and

19   confer period when the injunction motion was pending.   We

20   offered to provide them email traffic.   We offered to provide

21   them our contracts, our client list, and tape recordings with

22   clients from their calls post April 18th, 2017, which is when

23   the remediation began.

24           We said we would not produce information before April

25   18th.   And, again, it was all dependent on the service of a

Benedetto - Argument                                          23

1    valid subpoena, which we agreed to accept service of.  We also

2    agreed, as opposed to producing the nine people for deposition,

3    to produce an individual from CSG to testify in the nature of a

4    30(b)(6) deposition, who could cover, you know, what we would

5    hope would be all of the subject areas that class counsel was

6    interested in.  And depending on the answers provided and

7    further meet and confers with class counsel, we would consider

8    whether or not to present other people for deposition.

9         But, again, that was all conditioned on receiving

10   valid subpoenas.  Class counsel did not accept that suggestion.

11   We've not gotten subpoenas.  As a result they filed their motion

12   to compel.  As I said, we've not yet filed our response papers,

13   but we will be doing so today.

14        THE COURT:  Okay.  Ms. Benedetto, what do you need

15   from these people before a hearing?

16        MS. BENEDETTO:  First of all, I need to know who these

17   players are, so that I can contact them.  This -- the way this

18   remediation process went -- went forward, we never agreed that

19   the remediation process would be sufficient for us to satisfy

20   ourselves that the class members truly understood what exactly

21   they were getting for giving up a percentage of their potential

22   future monetary award by signing up with CSG.

23        And after the remedia -- and the reason why we didn't

24   weigh in on what they were purporting to disclose to these class

25   members in the remediation process, was because we didn't agree

1    with the remediation process from the get-go.

2         So we -- we got communications from the class members

3    following the remediation process which led us to -- which

4    confirmed our suspicions, was that their players were confused

5    all along.   They still believed -- because of this -- the

6    initial name of the company, and representations made, it was

7    NFL Case Consulting, the players thought they were dealing with

8    the claims administrator and/or an official branch of the

9    settlement program from the NFL from the get-go.

10        And they didn't understand, even after their -- the

11   remediation process, that they had been dealing with this third

12   party entity.   And they thought that they needed to deal with

13   this third party entity to make a claim and obtain any recovery

14   of a monetary award.

15        THE COURT:   All right.   Well let -- one second.   Ms.

16   Benedetto, you -- let me just cut through, because it may be

17   that we can resolve this.

18        Mr. Scheff, do you have any objection to naming the

19   people that she is -- she has identified?

20        MR. SCHEFF:   She's never identified any player to us

21   that is allegedly under some confusion as a result of any

22   communication that they've had --

23        THE COURT:   Well you said you've remediated -- one

24   second.   Mr. Scheff, you said you remediated --

25        MR. SCHEFF:   We have.   All I'm saying, Your Honor, is

1    --

2            THE COURT:  Well I want to know who those people are.

3    Who are those people?

4            MR. SCHEFF:  If we get a valid subpoena -- if we get

5    a valid subpoena --

6            THE COURT:  All right.  Okay.

7            MR. SCHEFF:  -- we are happy to supply her with a list

8    --

9            THE COURT:  If it has to do with the NFL -- one

10   second.  If it has to do with the NFL, then I want to -- then I

11   want -- NFL players, I want to know who they are.  If you don't

12   want to do that, we'll wait until the nineteenth and then we'll

13   have this argument in open Court.

14           So you have a choice.

15           MR. SCHEFF:  If we get a valid subpoena, Your Honor,

16   we're happy --

17           THE COURT:  Well I just told you what your choice is,

18   Mr. Scheff.  I will --

19           MR. SCHEFF:  Was that the --

20           THE COURT:  -- and -- how can they possibly present

21   what they believe is -- are the facts, without knowing who these

22   players are?

23           MR. SCHEFF:  Your Honor, they claim -- they claim that

24   players have contacted them and stated that they're confused.

25   They've never identified a single player who is allegedly a

Colloquy                                    26

1    client of ours -- we've asked -- who has this confusion.

2             Each one of our clients is represented by a lawyer.

3    They know who those lawyers are, they've communicated with those

4    lawyers, and their lawyers have told class counsel that their

5    clients understand fully what their relationship is with CSG.

6             We've offered to investigate any claim of confusion.

7    And we've received no information.

8             THE COURT:  All right, Ms. Benedetto?

9             MS. BENEDETTO:  Basically, CSG got all of its clients

10   lawyered up.  They referred them to the law firm, so as they

11   believe that they could prevent class counsel from communicating

12   with the class members --

13            MR. SCHEFF:  That is absolutely inaccurate.

14            MS. BENEDETTO:  -- by putting law firms in between CSG

15   and class counsel.

16            MR. SCHEFF:  That is absolutely inaccurate, and you

17   know that.  You know that is inaccurate.

18            MS. BENEDETTO:  I don't know that.

19            MR. SCHEFF:  Each of these people are represented by

20   independent counsel of their own choice.  We don't control those

21   counsel --

22            MS. BENEDETTO:  After they were --

23            THE COURT:  I don't -- look --

24            MS. BENEDETTO:  -- after they became a client of CSG.

25            THE COURT:  Well I have to find out what the facts

1    are, Mr. Scheff.  I am ordering --

2          MR. SCHEFF:  I understand that.

3          THE COURT:  -- I am ordering -- listen, I am ordering,

4    and if you don't think that I have the authority, appeal it.  I

5    am telling you I want these --

6          MR. SCHEFF:  Your Honor --

7          THE COURT:  -- I want the -- I want class counsel to

8    know the names of the members of my -- of the class before me

9    who are involved in these allegations.  That's what I need --

10         MR. SCHEFF:  Your Honor, I would ask -- I would ask

11   that you refrain from entering an order right now.  We've not

12   filed our opposition papers.  We were ordered to file them --

13         THE COURT:  All right.  Okay.  You file today.

14         MR. SCHEFF:  I would ask you review them, and

15   then --

16         THE COURT:  Okay.  That's fair enough.  I will reserve

17   decision on it.  I will reserve decision and --

18         MR. SCHEFF:  Thank you.

19         THE COURT:  -- and I will let you know in the next --

20   when I get a chance to review the papers.  It seems to me that

21   this -- at this stage, from what I know, that this very well may

22   be a -- a reasonable request by the plaintiff -- plaintiffs

23   counsel, but I am not ruling on it.

24         So I will -- I will decide that in the next few days

25   after I receive -- and I don't need further -- I don't need

Colloquy                                    28

1    further argument on it.

2            MR. SCHEFF:  Thank you, Your Honor.

3            THE COURT:  I think that resolves everything.  Is

4    there anything else?

5            MS. BENEDETTO:  Thank you, Your Honor.

6            THE COURT:  Mr. Burns, do you want to be heard on

7    this?

8            MR. BURNS:  No.  Thank you, Your Honor.

9            THE COURT:  Okay.  Is there anyone else -- is there

10   anyone else who -- who wants -- who wants to address me?  Okay.

11

12           UNIDENTIFIED COUNSEL:  No, Your Honor.

13           THE COURT:  Okay.  This record will be -- this

14   conference will be open, so that you have a copy of it.  Okay?

15   In other words, as far as I understand --

16           MS. BENEDETTO:  Thank you, Your Honor.

17           THE COURT:  -- this will be available.  Okay.  All

18   right.  I'll -- if there's any further issues, you contact my

19   law clerk, Andrew Stahl.  And, Andrew, do you have with you

20   Alex?

21           MR. STAHL:  I do, Judge.  He's been sitting in on this

22   as part of our transition.

23           THE COURT:  Okay.  Alex, why don't you introduce

24   yourself?

25           MR. USSIA:  Hi.  I'm Alex Ussia the incoming law

1    clerk, and I'm replacing Andrew.

2          THE COURT:  Okay.  And you're going to be -- you're

3    going to be the law clerk assigned to the NFL litigation, is

4    that correct?

5          MR. ETIEM:  That's correct.  Yes.

6          THE COURT:  Okay.  Thank you very much for coming in

7    today, I appreciate that, Alex.  Okay.  Thank you.  Court is

8    adjourned.

9          (Proceedings concluded at 10:58 a.m.)

10                        *  *  *  *  *

11                 C E R T I F I C A T I O N

12   I, Josette Jones, court approved transcriber, certify that the

13   foregoing is a correct transcript from the official digital

14   audio recording of the proceedings in the above-entitled matter.

15

16   _Josette Jones_____          _____9-1-17_____

17   JOSETTE JONES                              DATE

18   DIANA DOMAN TRANSCRIBING, LLC