## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |

Kevin Turner and Shawn Wooden,
on behalf of themselves and
others similarly situated,

CIVIL ACTION NO: 14-cv-0029

                                                Plaintiffs,

        v.

National Football League and
NFL Properties, LLC,
Successor-in-interest to
NFL Properties, Inc.,

                        Defendants.

---

## RESPONSE TO MOTION TO COMPEL DIRECTED TO RESPONDENTS TIMOTHY HOWARD, J.D., PH.D., AND HOWARD & ASSOCIATES, P.A.

Pursuant to the Court's Order dated July 19, 2017 (ECF No. 8037), the August 10, 2017 Interrogatories Directed to Respondent, Timothy Howard, J.D., Ph.D., and Howard & Associates, P.A., and the September 12, 2017 Motion to Compel, the Respondents provide the following Response:

1. The law firm is more than willing to provide any corrective disclosures required based on the law firm's incorrect understanding or communications to clients, and are happy to discuss and coordinate such corrective disclosures with Class counsel.

2. The attachments to the Motion to Compel confirms what was previously submitted, namely that this firm's contingency fees range from 12.5% to 20% plus costs, in an effort to maximize the return for its Retired NFL Player clients.

1

3. The attachments to the Motion to Compel confirms that in a similar effort to maximize recoveries for Retired NFL Player clients, this firm either directly pays for travel and Medical Services, or has taken over the obligations from any third-party contracts and reduces the fee by the law firm for any amount the law firm has to pay above the actual costs and Florida Bar approved charges, including the third-party charges.

4. The law firm has had one client that has waived its attorney-client privilege and this is the John Doe referenced in the documents attached to the Motion to Compel, and the firm is more than willing to provide the entire file with confidential former client identifying information redacted.

5. The law firm is also willing to provide appropriate lists and documents as stated in its August 25, 2017 Responses to Discovery, so long as the discovery rules and attorney-client protections are respected and complied with.

6. The key facts that are not in the Motion to Compel are as follows:

7. Dr. Howard was one of approximately 20 or more investors into Cambridge Capital, a small and new investment fund, and is not a partner nor an owner, resigned from the board several months ago, and was listed on the Cambridge website as a board member due to oversight by staff. This oversight was rectified prior to the Motion to Compel.

8. Out of approximately 2,300 clients with the law firm, approximately 1% have some involvement with Cambridge Capital.

9. From a review of the law firm files, the retired NFL Concussion clients primarily received advances from companies such as Fast Track, Preferred Capital Funding,

Esquire Bank, Universal Funding, RGC Funding, LLC, Parks Settlement, Global Financial, etc., and due to their expense, were not encouraged by the law firm to participate with any particular funding source, including Cambridge Capital.

10. The law firm is aware that a former consultant for Cambridge was dismissed due to concerns as to his communications with Cambridge Capital clients;

11. In order to ensure compliance with all ethics standards, in 2015, when involvement with Cambridge Capital began, the Florida Bar ethics standards for conflict of interest rules were researched. Since that time the law firm has complied with these standards, requiring the attached appropriate disclosure be executed, (Exhibit A) and has sought transparent Florida Bar review, as found in the attached submission to the Florida Bar (Cumulative Exhibit B).

12. The law firm has modified its Response to Discovery consistent with the most recent waiver of attorney-client privilege by its former client, John Doe. A copy of the file will be copied and forwarded to Ms. Benedetto. The modified Response to Discovery is found as follows:

**Interrogatory No. 1.**

Identify every Retired NFL Football Player with whom You have entered into any agreement related in any way to the Settlement and state the nature of each agreement into which You entered with each Retired NFL Football Player. Include the date that each agreement was signed by the Retired NFL Football Player or on his behalf, the fee arrangement (i.e., the contingent fee percentage or other monies You are to be paid) and, if applicable, the date on which the Retired NFL Football Player discharged You. Additionally, to the extent that any Retired NFL Football Player entered into an agreement with You, also entered into an agreement(s) with a third-party in connection with the Settlement, whether You were directly involved in that agreement or not, identify that third party (including, but not limited to, Cambridge Capital Group, LLC, other lenders, claims services providers, or others), the nature of that agreement, the fee arrangement thereunder and the date on which that agreement was signed by the Retired NFL Football Player or on his behalf. In lieu of responding to this Interrogatory, You may produce to the undersigned copies of all agreement concerning which information is requested.

**Response:** Other than for one former client, John Doe, the law firm has not received client authorization to release confidential attorney-client communications, or work product documents, or information that is or may be confidential or otherwise protected by any right of privacy, to another law firm. Moreover, the discovery requests do not comply with Federal Rule of Civil Procedure 45, which governs the discovery of information from non-parties such as this law firm, including a valid subpoena in accordance with Rule 45(a)-(c). The request seeks information that is not relevant to any party's claim or defense in this litigation, and thus it is outside the scope of discovery under Federal Rule of Civil Procedure 26(b)(1). To the extent that the request is overbroad and unduly burdensome that it seeks information that the burden and expense will far outweigh the likely benefit, the request is inappropriate.

Upon receipt of authorization from the remaining clients, and compliance with Rule 45 and Rule 26, and verification that the request is not overbroad and unduly burdensome, the law firm can provide a list of Retired NFL Football Players with whom the law firm has entered into any agreements, including the date, the contingency fee arrangement, and the date of discharge, if applicable. The law firm can also provide agreement(s) with third-parties that are found in the respective files, and the date the agreement(s) was entered into.

In general, the contingency fees entered into by this law firm with its Retired NFL Football Player clients range from 12.5% to 20.0%, plus costs. In general, some co-counsel referral contracts, which contracts did not originate with this law firm and are a minority of the client contracts, are 25%, plus costs.

In general, the law firm has paid for any and all travel and Medical Services, and bought-out any contracts that clients may have entered into with third-parties, in order to ensure that the clients do not have to pay equity advances charges for those costs.

For costs advanced by the law firm, only Florida Bar authorized charges are applied for law firm advanced travel or Medical Services costs, and any amounts above those costs are taken from the law firm's fee.

**Interrogatory No 2.**

Identify every Retired NFL Football Player referred for, sent to, or scheduled for any type of Medical Services, by You, anyone working on Your behalf, or working in conjunction with You in any way, and the date(s) Medical Services were rendered and the name and location of the medical provider who rendered those Medical Services.

**Response:** *See* Response to Interrogatory No. 1. Other than for one former client, John Doe, The law firm has not received client authorization to release confidential attorney-client communications, or work product documents, or information that is or may be confidential or otherwise protected by any right of privacy, to another law firm. Moreover, the discovery requests do not comply with Federal Rule of Civil Procedure 45, which governs the discovery of information from non-parties such as this law firm, including a valid subpoena in accordance with Rule 45(a)-(c). The request seeks information that is not relevant to any party's claim or defense in this litigation, and thus it is outside the scope of discovery under Federal Rule of Civil

Procedure 26(b)(1). To the extent that the request is overbroad and unduly burdensome that it seeks information that the burden and expense will far outweigh the likely benefit, the request is inappropriate.

Upon receipt of authorization from the remaining clients, and compliance with Rule 45 and Rule 26, and verification that the request is not overbroad and unduly burdensome, the law firm can provide a list which also includes the Medical Services, dates, name and location of the Medical Services provider.

In general, the law firm has referred its clients to a board-certified neurologist and/or a psychologist for preliminary testing and screening. The law firm is sending its clients to a MAFS qualified neurologist and board-certified neuropsychologist for final client testing, clinical review, clinical assessment, and final reports for the MAFS qualified neurologist client file submission to the NFL Concussion Settlement Claims Center.

**Interrogatory No. 3.**

Identify every Retired NFL Football Player for whom You, or anyone working on Your behalf, or working in conjunction with You in any way, have been involved in the payment, directly, or through others, for a Retired NFL Football Player's travel and related expenses (whether on a non-recourse or recourse basis) in connection with obtaining any Medical Services to assist the Retired NFL Football Player in any way in participating in the Settlement.

**Response:** *See* Responses to Interrogatories No. 1 through No. 2. Other than for one former client, John Doe, the law firm has not received client authorization to release confidential attorney-client communications, or work product documents, or information that is or may be confidential or otherwise protected by any right of privacy, to another law firm. Moreover, the discovery requests do not comply with Federal Rule of Civil Procedure 45, which governs the discovery of information from non-parties such as this law firm, including a valid subpoena in accordance with Rule 45(a)-(c). The request seeks information that is not relevant to any party's claim or defense in this litigation, and thus it is outside the scope of discovery under Federal Rule of Civil Procedure 26(b)(1). To the extent that the request is overbroad and unduly burdensome that it seeks information that the burden and expense will far outweigh the likely benefit, the request is inappropriate.

Upon receipt of authorization from the remaining clients, and compliance with Rule 45 and Rule 26, and verification that the request is not overbroad and unduly burdensome, the law firm can verify that in general, it has either directly paid for any and all travel and Medical Services, or bought out any contracts that clients may have entered into with third-parties with the law firm reducing its fees for any amounts above Florida Bar approved costs, in order to ensure that the clients do not have to pay equity advances charges for those costs. For costs advanced by the law firm, or for those third-party contracts bought out by the law firm, only Florida Bar authorized charges are applied.

**Interrogatory No. 4.**

Identify every Retired NFL Football Player for whom You, or anyone working on Your behalf, or working in conjunction with You in any way, have worked or Communicated in connection with any Retired NFL Football Player's obtaining any Medical Services to assist the Retired NFL Football Player in any way in participating in the Settlement, including, but not limited to, medical providers, claims services providers, lenders or others. For each such individual and/or entity, explain the details of the relationship and identify each Retired NFL Football Player involved.

**Response:** *See* Responses to Interrogatories No. 1 through No. 3. Other than for one former client, John Doe, the law firm has not received client authorization to release confidential attorney-client communications, or work product documents, or information that is or may be confidential or otherwise protected by any right of privacy, to another law firm. Moreover, the discovery requests do not comply with Federal Rule of Civil Procedure 45, which governs the discovery of information from non-parties such as this law firm, including a valid subpoena in accordance with Rule 45(a)-(c). The request seeks information that is not relevant to any party's claim or defense in this litigation, and thus it is outside the scope of discovery under Federal Rule of Civil Procedure 26(b)(1). To the extent that the request is overbroad and unduly burdensome that it seeks information that the burden and expense will far outweigh the likely benefit, the request is inappropriate.

Upon receipt of authorization from the remaining clients, and compliance with Rule 45 and Rule 26, and verification that the request is not overbroad and unduly burdensome, the law firm can provide a list which includes anyone in connection with obtaining Medical Services to assist the Retired NFL Football Player, and identify the relationship.

In general, the law firm has clerical and paralegal staff assigned to coordinate and schedule travel and Medical Services for each client, as all clients receive a preliminary testing by a neuropsychologist and neurologist, and will receive final testing from an NFL-MAFS qualified neurologist and board-certified neuropsychologist in compliance with the NFL Concussion Settlement standards.

**Interrogatory No. 5.**

Identify every individual and entity, with whom You, anyone working on Your behalf, or working in conjunction with You in any way, have any financial relationship or understanding, whether recourse or non-recourse, whether in writing or verbal, related to any Retired NFL Player's participation in the Settlement. For each such individual or entity, explain the details of the relationship and identify each Retired NFL Football Player involved. Identify any document related to the relationship.

**Response**: *See* Response to Interrogatories No. 1 through No. 4. Other than for one former client, John Doe, the law firm has not received client authorization to release confidential attorney-client communications, or work product documents, or information that is or may be confidential or otherwise protected by any right of privacy, to another law firm. Moreover, the

discovery requests do not comply with Federal Rule of Civil Procedure 45, which governs the discovery of information from non-parties such as this law firm, including a valid subpoena in accordance with Rule 45(a)-(c). The request seeks information that is not relevant to any party's claim or defense in this litigation, and thus it is outside the scope of discovery under Federal Rule of Civil Procedure 26(b)(1). To the extent that the request is overbroad and unduly burdensome that it seeks information that the burden and expense will far outweigh the likely benefit, the request is inappropriate.

Upon receipt of authorization from the remaining clients, and compliance with Rule 45 and Rule 26, and verification that the request is not overbroad and unduly burdensome, the law firm can provide a list that includes information concerning co-counsel on some cases, and co-counsel has a financial relationship or understanding, whether recourse or non-recourse, whether in writing or verbal, related to any Retired NFL Football Player's participation in the Settlement, and these will be listed on the document, including the contingency fee division.

In general, the law firm advises all clients not to take equity advances on their claims in any fashion due to being very expensive. Some clients deal with third-party equity advance sources regardless of the advice from the law firm.

**Interrogatory No. 6.**

Identify every individual or entity for whom You have obtained the contact information for any Retired NFL Football Player, including their home or cellular telephone numbers, home or business addresses, and email addresses.

**Response**: *See* Response to Interrogatories No. 1 through No. 5. Other than for one former client, John Doe, the law firm has not received client authorization to release confidential attorney-client communications, or work product documents, or information that is or may be confidential or otherwise protected by any right of privacy, to another law firm. Moreover, the discovery requests do not comply with Federal Rule of Civil Procedure 45, which governs the discovery of information from non-parties such as this law firm, including a valid subpoena in accordance with Rule 45(a)-(c). The request seeks information that is not relevant to any party's claim or defense in this litigation, and thus it is outside the scope of discovery under Federal Rule of Civil Procedure 26(b)(1). To the extent that the request is overbroad and unduly burdensome that it seeks information that the burden and expense will far outweigh the likely benefit, the request is inappropriate.

Upon receipt of authorization from the remaining clients, and compliance with Rule 45 and Rule 26, and verification that the request is not overbroad and unduly burdensome, other than the law firm referrals previously referenced, Retired NFL Football Players on the list have sent their fellow Retired NFL Players to the law firm.

In general, the law firm obtains client information from the client after the client was referred to the law firm by a colleague or friend. The senior partner with the law firm is a former player, and continues to volunteer as a football coach, as he has done for the past 20 years, and these resulted in the initial and continuing referrals to the law firm.

**Interrogatory No. 7.**

Identify every individual and entity to whom You have provided any contact information for any Retired NFL Football Players.

**Response**: *See* Response to Interrogatories No. 1 through No. 6. Other than for one former client, John Doe, the law firm has not received client authorization to release confidential attorney-client communications, or work product documents, or information that is or may be confidential or otherwise protected by any right of privacy, to another law firm. Moreover, the discovery requests do not comply with Federal Rule of Civil Procedure 45, which governs the discovery of information from non-parties such as this law firm, including a valid subpoena in accordance with Rule 45(a)-(c). The request seeks information that is not relevant to any party's claim or defense in this litigation, and thus it is outside the scope of discovery under Federal Rule of Civil Procedure 26(b)(1). To the extent that the request is overbroad and unduly burdensome that it seeks information that the burden and expense will far outweigh the likely benefit, the request is inappropriate.

Upon receipt of authorization from the remaining clients, and compliance with Rule 45 and Rule 26, and verification that the request is not overbroad and unduly burdensome, the law firm can provide a list of any individual or entity that the law firm has provided contact information for any Retired NFL Football Player.

In general, the Medical Service providers are the only individuals or entities, other than the NFL Concussion Claims Center, that has been provided contact information for any Retired NFL Football Player.

**Interrogatory No. 8.**

Identify every person or entity with whom You have entered into any agreement, whether written or verbal, related to the Settlement, including but not limited to the referral of Retired NFL Football Players for loans or provisions of money under other terms, for legal or other representation, for Settlement benefits claims services, for Medical Services, or any other services or related to the Settlement, or the suggestion to Retired NFL Football Players that they contact individuals or entities in connection with the provision of any representation, services or monies related to the Settlement, and state the nature of each agreement.

**Response**: *See* Response to Interrogatories No. 1 through No. 7. Other than for one former client, John Doe, the law firm has not received client authorization to release confidential attorney-client communications, or work product documents, or information that is or may be confidential or otherwise protected by any right of privacy, to another law firm. Moreover, the discovery requests do not comply with Federal Rule of Civil Procedure 45, which governs the discovery of information from non-parties such as this law firm, including a valid subpoena in accordance with Rule 45(a)-(c). The request seeks information that is not relevant to any party's claim or defense in this litigation, and thus it is outside the scope of discovery under Federal Rule of Civil Procedure 26(b)(1). To the extent that the request is overbroad and unduly

burdensome that it seeks information that the burden and expense will far outweigh the likely benefit, the request is inappropriate.

Upon receipt of authorization from the remaining clients, and compliance with Rule 45 and Rule 26, and verification that the request is not overbroad and unduly burdensome, the law firm can provide a list of co-counsel agreements and agreements with third-parties that are found in the file.

In general, there is no other person or entity with whom the law firm has entered into any agreement related to the Settlement concerning referrals for loans, referrals for Settlement benefits claims services, etc. The law firm does have expert agreements with Medical Service providers, prior contracts with Medical Service and travel third-party companies that the law firm purchased out for the clients, and hotel contracts for player travel.

As part of its efforts to maximize the recovery for Retired NFL Players, the law firm has directly paid for travel and Medical Services for clients and has taken steps to ensure that clients are not being charged for equity advances by third-parties for these costs, and if previous contracts exist, has bought out those contracts, and is taking any third-party charges above the Florida Bar approved costs out of the law firm's final fee, to ensure that there are no charges to its clients.

**Interrogatory No. 9.**

Identify every individual and entity with whom You, anyone working on Your behalf, or working in conjunction with You in any way, Communicated related to the Settlement or the Solicitation of Retired NFL Football Players.

**Response:** See Response to Interrogatories No. 1 through No. 8. Other than for one former client, John Doe, the law firm has not received client authorization to release confidential attorney-client communications, or work product documents, or information that is or may be confidential or otherwise protected by any right of privacy, to another law firm. Moreover, the discovery requests do not comply with Federal Rule of Civil Procedure 45, which governs the discovery of information from non-parties such as this Law firm, including a valid subpoena in accordance with Rule 45(a)-(c). The request seeks information that is not relevant to any party's claim or defense in this litigation, and thus it is outside the scope of discovery under Federal Rule of Civil Procedure 26(b)(1). To the extent that the request is overbroad and unduly burdensome that it seeks information that the burden and expense will far outweigh the likely benefit, the request is inappropriate.

Upon receipt of authorization from the remaining clients, and compliance with Rule 45 and Rule 26, and verification that the request is not overbroad and unduly burdensome, the law firm can provide further details as found in the list.

In general, once a client is confirmed or a potential client inquires, law firm staff will explain the representation agreement, statement of client rights, HIPPA form, letter to confirm representation counsel, need for medical records, Settlement standards, and the process for qualifying under the Settlement.

The law firm objects to the term "solicitations" as vague and ambiguous, despite the definition provided. However, regardless of how defined, solicitation does not take place. As a former player, and volunteer football coach for the past 20 years, clients come from friends or colleagues that send the client or potential client to the law firm.

Dated:  September 13, 2017         Respectfully submitted,

                                   /s/Tim Howard
                                   Tim Howard, J.D., Ph.D
                                   Florida Bar No.: 655325
                                   **HOWARD & ASSOCIATES, P.A.**
                                   2120 Killarney Way, Suite 125
                                   Tallahassee, FL 32309
                                   Telephone: (850) 298-4455
                                   Fax: (850) 216-2537
                                   tim@howardjustice.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy off the foregoing has been provided via U.S. Mail to Christopher A. Seeger, Seeger Weiss LLP, 77 Water Street, New York, NY, 10005, and by Electronic Mail to tbenedetto@seegerweis.com on this 13th day of September, 2017.

                                   /s/Tim Howard
                                   Tim Howard, Esq.

# Exhibit A

## NOTICE OF EXPRESS WAIVER OF CONFLICT AND LIABILITY

As an investor, you may need legal assistance from Howard & Associates, Attorneys at Law, P.A., (Howard & Associates) with various matters that are either related or not related to your investments with Cambridge Capital Group, Cambridge Capital Advisors, LLC., or its investment funds (Investment Funds). Please note, you are not a client of Howard & Associates until you have entered into a written fee agreement with Howard & Associates. If such an agreement has not been entered into, you are not a client of Howard & Associates, and no such relationship is implied.

Regardless of whether you are currently a client of Howard & Associates, or a future client of Howard & Associates, this notice of waiver of conflict and liability is required to disclose the risks associated with the lawyer's dual role as both legal advisor and participant in investment or other transactions, such that the transaction or legal advice favor's the lawyer's interests at the expense of the client. You have engaged the Investment Fund consistent with the terms and conditions found in the Private Offering Memorandum for Offering of Limited Partnership Interests (Private Offering Memorandum), and understand that all of the investment funds carry risk of loss and that the highly leveraged investment funds have a high degree of risk of loss (as well as a potential high rate of return), including total loss of your investment, and should not be invested in unless you have a high degree of liquidity, as detailed in the Certain Risks section of the Private Offering Memorandum.

You understand that neither Howard & Associates, nor its President, Phillip Timothy Howard when acting as an attorney, are a partner or a party to these investment funds, and has no liability for the investments and the returns on investments. You understand that the protections of the attorney-client relationship do not apply to the non-legal services provided by the Investment Funds. You understand that the investment funds are not created to provide legal work for Howard & Associates and its affiliate law firms, such as Crossland & Crossland, to provide legal services such as tax and estate planning, and is not a referral source for Howard & Associates and its affiliate law firms. You understand that Howard & Associates is not providing financial assistance to its clients. You understand that Howard & Associates may obtain confidential information from either its representation or from the investment funds as to the client and their activities, and you are providing informed consent for Howard & Associates and the investment funds to share that confidential information.

To the extent that there is an interest in the investment funds that conflicts with the legal services of Howard & Associates, pursuant to Rule 4-1.7, Conflicts of Interest, or Rule 4-5.7, Rules Regulating the Florida Bar, and the potential for overreaching due to the trust and confidence placed in Howard & Associates, **you are advised that you may seek independent legal representation to review any potential conflict, you are explicitly advised to obtain independent legal representation to review any potential conflict, and confirm that you have obtained independent legal representation to review any potential conflict. By signing this document, you as a client, or a potential client, are providing informed consent to a waiver of any and all potential conflicts and liability of Howard & Associates.**

| | | | |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| Cambridge Capital Client | Date | Howard & Associates | Date |

# Cumulative Exhibit B

# HOWARD ⚖ JUSTICE

RECEIVED

AUG 2 8 2017

THE FLORIDA BAR

## Howard & Associates
## Attorneys at Law, P.A.

*Dr. Tim Howard, J.D., Ph.D., Senior Partner\**
*Florida Supreme Court Certified Mediator*

**Tallahassee Office:**
2120 Killarney Way, Suite 125
Tallahassee, Florida 32309
Ph: (850) 298-4455; Fax (850) 216-2537
Tim@howardjustice.com

**Fort Lauderdale Office:**
101 NE Third Ave., Suite 1500
Fort Lauderdale, Florida 33301
(954) 332-3633
www.howardjustice.com

**Jacksonville Office:**
Riverplace Tower, 21st Floor
1301 Riverplace Boulevard
Jacksonville Florida 32210
(850) 298-4455

**Cambridge Office:**
8 Museum Way
Suite 2408
Cambridge, Massachusetts 02141
(857) 277-0990

August 24, 2017

The Florida Bar
651 East Jefferson Street
Tallahassee, Florida 32399-2300
(850) 561-5845

Re:    Clarity on Compliance with Conflict of Interest Rules Regulating the Florida Bar.

Dear Florida Bar:

This letter is seeking clarity on compliance with the law firm's understanding in managing any potential client conflict of interest. The senior partner in the law firm is an investor in a private investment fund that has offices in a distinct part of the same building, with a distinct address and location. The law firm has over 1,700 clients. A very small number of those clients, approximately 25, have either borrowed from or invested into the private investment fund. In 2015, the law firm researched Rule 4-1.7 and 4-5.7, Attachment A, to ensure compliance with Conflict of Interest regulations.

The law firm does not refer nor suggest that its clients invest in or borrow from any particular private investment fund. Moreover, starting in 2015, the year the law firm first invested into this private investment fund, the law firm has provided a conflict of interest waiver for any of its clients that chooses to invest or borrow from the private investment fund that the senior partner has invested into. This is done in order to ensure that there is full and complete transparency and notice to any client that chooses to invest in this private investment fund. *See* Attachment B, Notice of Express Waiver of Conflict and Liability. Finally, the law firm provides notice of Florida Bar rules and regulations pertaining to letters of protection involving any funding from this private investment company and the priority and obligations to the client. *See* Attachment C, Lien Notice from Lender.

Are there any additional steps that the law firm can or should take to further ensure that it complies with all Florida Bar conflict of interest regulations? Thank you for your review and guidance.

Sincerely yours,

Tim Howard, J.D., Ph.D.
2120 Killarney Way, Suite 125
Tallahassee, FL 32309
(850) 298-4455; tim@howardjustice.com

cc:  file

---

\*Admitted to practice in Florida, the District of Columbia, Northern, Middle, and Southern United States District Courts of Florida, the United States Court of Appeals for the 11th Circuit, and the United States Supreme Court. Ph.D, Northeastern University, Law, Policy & Society. Former Visiting Health Law, Bioethics, and Human Rights Scholar and Constitutional Law, Media & Politics and Judicial Process Instructor at Boston University. Former Director of and Professor with Northeastern University's Law & Policy Doctorate Program. President of Cambridge Graduate University International.

# ATTACHMENT "A"

Rule Regulating The Florida Bar – The Florida Bar

# RULE REGULATING THE FLORIDA BAR

**RULE 4-1.7 CONFLICT OF INTEREST; CURRENT CLIENTS**

**4 RULES OF PROFESSIONAL CONDUCT**

**4-1 CLIENT-LAWYER RELATIONSHIP**

# RULE 4-1.7 CONFLICT OF INTEREST; CURRENT CLIENTS

**(a) Representing Adverse Interests.** Except as provided in subdivision (b), a lawyer must not represent a client if:

(1) the representation of 1 client will be directly adverse to another client; or

(2) there is a substantial risk that the representation of 1 or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

**(b) Informed Consent.** Notwithstanding the existence of a conflict of interest under subdivision (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a position adverse to another client when the lawyer represents both clients in the same proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing or clearly stated on the record at a hearing.

**(c) Explanation to Clients.** When representation of multiple clients in a single matter is undertaken, the consultation must include an explanation of the implications of the common representation and the advantages and risks involved.

**(d) Lawyers Related by Blood, Adoption, or Marriage.** A lawyer related by blood, adoption, or marriage to another lawyer as parent, child, sibling, or spouse must not represent a client in a representation directly

adverse to a person who the lawyer knows is represented by the other lawyer except with the client's informed consent, confirmed in writing or clearly stated on the record at a hearing.

**(e) Representation of Insureds.** Upon undertaking the representation of an insured client at the expense of the insurer, a lawyer has a duty to ascertain whether the lawyer will be representing both the insurer and the insured as clients, or only the insured, and to inform both the insured and the insurer regarding the scope of the representation. All other Rules Regulating The Florida Bar related to conflicts of interest apply to the representation as they would in any other situation.

Comment

**Loyalty to a client**

Loyalty and independent judgment are essential elements in the lawyer's relationship to a client. Conflicts of interest can arise from the lawyer's responsibilities to another client, a former client or a third person, or from the lawyer's own interests. For specific rules regarding certain conflicts of interest, see rule 4-1.8. For former client conflicts of interest, see rule 4-1.9. For conflicts of interest involving prospective clients, see rule 4-1.18. For definitions of "informed consent" and "confirmed in writing," see terminology.

An impermissible conflict of interest may exist before representation is undertaken, in which event the representation should be declined. If such a conflict arises after representation has been undertaken, the lawyer should withdraw from the representation. See rule 4-1.16. Where more than 1 client is involved and the lawyer withdraws because a conflict arises after representation, whether the lawyer may continue to represent any of the clients is determined by rule 4-1.9. As to whether a client-lawyer relationship exists or, having once been established, is continuing, see comment to rule 4-1.3 and scope.

As a general proposition, loyalty to a client prohibits undertaking representation directly adverse to that client's or another client's interests without the affected client's consent. Subdivision (a)(1) expresses that general rule. Thus, a lawyer ordinarily may not act as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated. On the other hand, simultaneous representation in unrelated matters of clients whose interests are only generally adverse, such as competing economic enterprises, does not require consent of the respective clients. Subdivision (a)(1) applies only when the representation of 1 client would be directly adverse to the other and where the lawyer's responsibilities of loyalty and confidentiality of the other client might be compromised.

Loyalty to a client is also impaired when a lawyer cannot consider, recommend, or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. The conflict in effect

forecloses alternatives that would otherwise be available to the client. Subdivision (a)(2) addresses such situations. A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client. Consideration should be given to whether the client wishes to accommodate the other interest involved.

**Consultation and consent**

A client may consent to representation notwithstanding a conflict. However, as indicated in subdivision (a)(1) with respect to representation directly adverse to a client and subdivision (a)(2) with respect to material limitations on representation of a client, when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent. When more than 1 client is involved, the question of conflict must be resolved as to each client. Moreover, there may be circumstances where it is impossible to make the disclosure necessary to obtain consent. For example, when the lawyer represents different clients in related matters and 1 of the clients refuses to consent to the disclosure necessary to permit the other client to make an informed decision, the lawyer cannot properly ask the latter to consent.

**Lawyer's interests**

The lawyer's own interests should not be permitted to have adverse effect on representation of a client. For example, a lawyer's need for income should not lead the lawyer to undertake matters that cannot be handled competently and at a reasonable fee. See rules 4-1.1 and 4-1.5. If the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice. A lawyer may not allow related business interests to affect representation, for example, by referring clients to an enterprise in which the lawyer has an undisclosed interest.

**Conflicts in litigation**

Subdivision (a)(1) prohibits representation of opposing parties in litigation. Simultaneous representation of parties whose interests in litigation may conflict, such as co-plaintiffs or co-defendants, is governed by subdivisions (a), (b), and (c). An impermissible conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party, or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question. Such conflicts can arise in criminal cases as well as civil. The potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than 1 co-defendant. On the

other hand, common representation of persons having similar interests is proper if the risk of adverse effect is minimal and the requirements of subdivisions (b) and (c) are met.

Ordinarily, a lawyer may not act as advocate against a client the lawyer represents in some other matter, even if the other matter is wholly unrelated. However, there are circumstances in which a lawyer may act as advocate against a client. For example, a lawyer representing an enterprise with diverse operations may accept employment as an advocate against the enterprise in an unrelated matter if doing so will not adversely affect the lawyer's relationship with the enterprise or conduct of the suit and if both clients consent upon consultation. By the same token, government lawyers in some circumstances may represent government employees in proceedings in which a government agency is the opposing party. The propriety of concurrent representation can depend on the nature of the litigation. For example, a suit charging fraud entails conflict to a degree not involved in a suit for a declaratory judgment concerning statutory interpretation.

A lawyer may represent parties having antagonistic positions on a legal question that has arisen in different cases, unless representation of either client would be adversely affected. Thus, it is ordinarily not improper to assert such positions in cases pending in different trial courts, but it may be improper to do so in cases pending at the same time in an appellate court.

## Interest of person paying for a lawyer's service

A lawyer may be paid from a source other than the client, if the client is informed of that fact and consents and the arrangement does not compromise the lawyer's duty of loyalty to the client. See rule 4-1.8(f). For example, when an insurer and its insured have conflicting interests in a matter arising from a liability insurance agreement and the insurer is required to provide special counsel for the insured, the arrangement should assure the special counsel's professional independence. So also, when a corporation and its directors or employees are involved in a controversy in which they have conflicting interests, the corporation may provide funds for separate legal representation of the directors or employees, if the clients consent after consultation and the arrangement ensures the lawyer's professional independence.

## Other conflict situations

Conflicts of interest in contexts other than litigation sometimes may be difficult to assess. Relevant factors in determining whether there is potential for adverse effect include the duration and intimacy of the lawyer's relationship with the client or clients involved, the functions being performed by the lawyer, the likelihood that actual conflict will arise, and the likely prejudice to the client from the conflict if it does arise. The question is often one of proximity and degree.

For example, a lawyer may not represent multiple parties to a negotiation whose interests are fundamentally antagonistic to each other, but common representation is permissible where the clients are generally aligned in interest even though there is some difference of interest among them.

Conflict questions may also arise in estate planning and estate administration. A lawyer may be called upon to prepare wills for several family members, such as husband and wife, and, depending upon the circumstances, a conflict of interest may arise. In estate administration the identity of the client may be unclear under the law of some jurisdictions. In Florida, the personal representative is the client rather than the estate or the beneficiaries. The lawyer should make clear the relationship to the parties involved.

A lawyer for a corporation or other organization who is also a member of its board of directors should determine whether the responsibilities of the 2 roles may conflict. The lawyer may be called on to advise the corporation in matters involving actions of the directors. Consideration should be given to the frequency with which such situations may arise, the potential intensity of the conflict, the effect of the lawyer's resignation from the board, and the possibility of the corporation's obtaining legal advice from another lawyer in such situations. If there is material risk that the dual role will compromise the lawyer's independence of professional judgment, the lawyer should not serve as a director.

## Conflict charged by an opposing party

Resolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation. In litigation, a court may raise the question when there is reason to infer that the lawyer has neglected the responsibility. In a criminal case, inquiry by the court is generally required when a lawyer represents multiple defendants. Where the conflict is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question. Such an objection should be viewed with caution, however, for it can be misused as a technique of harassment. See scope.

## Family relationships between lawyers

Rule 4-1.7(d) applies to related lawyers who are in different firms. Related lawyers in the same firm are also governed by rules 4-1.9 and 4-1.10. The disqualification stated in rule 4-1.7(d) is personal and is not imputed to members of firms with whom the lawyers are associated.

The purpose of Rule 4-1.7(d) is to prohibit representation of adverse interests, unless informed consent is given by the client, by a lawyer related to another lawyer by blood, adoption, or marriage as a parent, child, sibling, or spouse so as to include those with biological or adopted children and within relations by marriage those who would be considered in-laws and stepchildren and stepparents.

**Representation of insureds**

The unique tripartite relationship of insured, insurer, and lawyer can lead to ambiguity as to whom a lawyer represents. In a particular case, the lawyer may represent only the insured, with the insurer having the status of a non-client third party payor of the lawyer's fees. Alternatively, the lawyer may represent both as dual clients, in the absence of a disqualifying conflict of interest, upon compliance with applicable rules. Establishing clarity as to the role of the lawyer at the inception of the representation avoids misunderstanding that may ethically compromise the lawyer. This is a general duty of every lawyer undertaking representation of a client, which is made specific in this context due to the desire to minimize confusion and inconsistent expectations that may arise.

**Consent confirmed in writing or stated on the record at a hearing**

Subdivision (b) requires the lawyer to obtain the informed consent of the client, confirmed in writing or clearly stated on the record at a hearing. With regard to being confirmed in writing, such a writing may consist of a document executed by the client or one that the lawyer promptly records and transmits to the client following an oral consent. See terminology. If it is not feasible to obtain or transmit the writing at the time the client gives informed consent, then the lawyer must obtain or transmit it within a reasonable time afterwards. See terminology. The requirement of a writing does not supplant the need in most cases for the lawyer to talk with the client, to explain the risks and advantages, if any, of representation burdened with a conflict of interest, as well as reasonably available alternatives, and to afford the client a reasonable opportunity to consider the risks and alternatives and to raise questions and concerns. Rather, the writing is required in order to impress upon clients the seriousness of the decision the client is being asked to make and to avoid disputes or ambiguities that might later occur in the absence of a writing.

*[Revised: 06/01/2014]*

# RULE REGULATING THE FLORIDA BAR

**RULE 4-5.7 RESPONSIBILITIES REGARDING NONLEGAL SERVICES**

**4 RULES OF PROFESSIONAL CONDUCT**

**4-5 LAW FIRMS AND ASSOCIATIONS**

# RULE 4-5.7 RESPONSIBILITIES REGARDING NONLEGAL SERVICES

**(a) Services Not Distinct From Legal Services.** A lawyer who provides nonlegal services to a recipient that are not distinct from legal services provided to that recipient is subject to the Rules Regulating The Florida Bar with respect to the provision of both legal and nonlegal services.

**(b) Services Distinct From Legal Services.** A lawyer who provides nonlegal services to a recipient that are distinct from any legal services provided to the recipient is subject to the Rules Regulating The Florida Bar with respect to the nonlegal services if the lawyer knows or reasonably should know that the recipient might believe that the recipient is receiving the protection of a client-lawyer relationship.

**(c) Services by Nonlegal Entity.** A lawyer who is an owner, controlling party, employee, agent, or otherwise is affiliated with an entity providing nonlegal services to a recipient is subject to the Rules Regulating The Florida Bar with respect to the nonlegal services if the lawyer knows or reasonably should know that the recipient might believe that the recipient is receiving the protection of a client-lawyer relationship.

**(d) Effect of Disclosure of Nature of Service.** Subdivision (b) or (c) does not apply if the lawyer makes reasonable efforts to avoid any misunderstanding by the recipient receiving nonlegal services. Those efforts must include advising the recipient, preferably in writing, that the services are not legal services and that the protection of a client-lawyer relationship does not exist with respect to the provision of nonlegal services to the recipient.

## Comment

For many years, lawyers have provided to their clients nonlegal services that are ancillary to the practice of law. A broad range of economic and other interests of clients may be served by lawyers participating in the delivery of these services. In recent years, however, there has been significant debate about the role the rules of professional conduct should play in regulating the degree and manner in which a lawyer participates in the delivery of nonlegal services. The ABA, for example, adopted, repealed, and then adopted a different version

of ABA Model Rule 5.7. In the course of this debate, several ABA sections offered competing versions of ABA Model Rule 5.7.

One approach to the issue of nonlegal services is to try to substantively limit the type of nonlegal services a lawyer may provide to a recipient or the manner in which the services are provided. A competing approach does not try to substantively limit the lawyer's provision of nonlegal services, but instead attempts to clarify the conduct to which the Rules Regulating The Florida Bar apply and to avoid misunderstanding on the part of the recipient of the nonlegal services. This rule adopts the latter approach.

**The potential for misunderstanding**

Whenever a lawyer directly provides nonlegal services, there exists the potential for ethical problems. Principal among these is the possibility that the person for whom the nonlegal services are performed may fail to understand that the services may not carry with them the protection normally afforded by the client-lawyer relationship. The recipient of the nonlegal services may expect, for example, that the protection of client confidences, prohibitions against representation of persons with conflicting interests, and obligations of a lawyer to maintain professional independence apply to the provision of nonlegal services when that may not be the case. The risk of confusion is acute especially when the lawyer renders both types of services with respect to the same matter.

**Providing nonlegal services that are not distinct from legal services**

Under some circumstances, the legal and nonlegal services may be so closely entwined that they cannot be distinguished from each other. In this situation, confusion by the recipient as to when the protection of the client-lawyer relationship applies is likely to be unavoidable. Therefore, this rule requires that the lawyer providing the nonlegal services adhere to all of the requirements of the Rules Regulating The Florida Bar.

In such a case, a lawyer will be responsible for assuring that both the lawyer's conduct and, to the extent required elsewhere in these Rules Regulating The Florida Bar, that of nonlawyer employees comply in all respects with the Rules Regulating The Florida Bar. When a lawyer is obliged to accord the recipients of such nonlegal services the protection of those rules that apply to the client-lawyer relationship, the lawyer must take special care to heed the proscriptions of the Rules Regulating The Florida Bar addressing conflict of interest and to scrupulously adhere to the requirements of the rule relating to disclosure of confidential information. The promotion of the nonlegal services must also in all respects comply with the Rules Regulating The Florida Bar dealing with advertising and solicitation.

Subdivision (a) of this rule applies to the provision of nonlegal services by a lawyer even when the lawyer does not personally provide any legal services to the person for whom the nonlegal services are performed if

the person is also receiving legal services from another lawyer that are not distinct from the nonlegal services.

## Avoiding misunderstanding when a lawyer directly provides nonlegal services that are distinct from legal services

Even when the lawyer believes that his or her provision of nonlegal services is distinct from any legal services provided to the recipient, there is still a risk that the recipient of the nonlegal services will misunderstand the implications of receiving nonlegal services from a lawyer; the recipient might believe that the recipient is receiving the protection of a client-lawyer relationship. Where there is such a risk of misunderstanding, this rule requires that the lawyer providing the nonlegal services adhere to all the Rules Regulating The Florida Bar, unless exempted by other provisions of this rule.

## Avoiding misunderstanding when a lawyer is indirectly involved in the provision of nonlegal services

Nonlegal services also may be provided through an entity with which a lawyer is somehow affiliated, for example, as owner, employee, controlling party, or agent. In this situation, there is still a risk that the recipient of the nonlegal services might believe that the recipient is receiving the protection of a client-lawyer relationship. Where there is such a risk of misunderstanding, this rule requires that the lawyer involved with the entity providing nonlegal services adhere to all the Rules Regulating The Florida Bar, unless exempted by another provision of this rule.

## Avoiding the application of subdivisions (b) and (c)

Subdivisions (b) and (c) specify that the Rules Regulating The Florida Bar apply to a lawyer who directly provides or is otherwise involved in the provision of nonlegal services if there is a risk that the recipient might believe that the recipient is receiving the protection of a client-lawyer relationship. Neither the Rules Regulating The Florida Bar nor subdivisions (b) or (c) will apply, however, if pursuant to subdivision (d), the lawyer takes reasonable efforts to avoid any misunderstanding by the recipient. In this respect, this rule is analogous to the rule regarding respect for rights of third persons.

In taking the reasonable measures referred to in subdivision (d), the lawyer must communicate to the person receiving the nonlegal services that the relationship will not be a client-lawyer relationship. The communication should be made before entering into an agreement for the provision of nonlegal services, in a manner sufficient to assure that the person understands the significance of the communication, and preferably should be in writing.

The burden is upon the lawyer to show that the lawyer has taken reasonable measures under the circumstances

to communicate the desired understanding. For instance, a sophisticated user of nonlegal services, such as a publicly held corporation, may require a lesser explanation than someone unaccustomed to making distinctions between legal services and nonlegal services, such as an individual seeking tax advice from a lawyer-accountant or investigative services in connection with a lawsuit.

## The relationship between this rule and other Rules Regulating The Florida Bar

Even before this rule was adopted, a lawyer involved in the provision of nonlegal services was subject to those Rules Regulating The Florida Bar that apply generally. For example, another provision of the Rules Regulating The Florida Bar makes a lawyer responsible for fraud committed with respect to the provision of nonlegal services. Such a lawyer must also comply with the rule regulating business transactions with a client. Nothing in this rule (Responsibilities Regarding Nonlegal Services) is intended to suspend the effect of any otherwise applicable Rules Regulating The Florida Bar, such as the rules on personal conflicts of interest, on business transactions with clients, and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.

In addition to the Rules Regulating The Florida Bar, principles of law external to the rules, for example, the law of principal and agent, may govern the legal duties owed by a lawyer to those receiving the nonlegal services.

*[Revised: 04/25/2002]*

# ATTACHMENT "B"

## NOTICE OF EXPRESS WAIVER OF CONFLICT AND LIABILITY

As an investor, you may need legal assistance from Howard & Associates, Attorneys at Law, P.A., (Howard & Associates) with various matters that are either related or not related to your investments with ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, or its investment funds (Investment Funds). Please note, you are not a client of Howard & Associates until you have entered into a written fee agreement with Howard & Associates. If such an agreement has not been entered into, you are not a client of Howard & Associates, and no such relationship is implied.

Regardless of whether you are currently a client of Howard & Associates, or a future client of Howard & Associates, this notice of waiver of conflict and liability is required to disclose the risks associated with the lawyer's dual role as both legal advisor and participant in investment or other transactions, such that the transaction or legal advice favor's the lawyer's interests at the expense of the client. You have engaged the Investment Fund consistent with the terms and conditions found in the Private Offering Memorandum for Offering of Limited Partnership Interests (Private Offering Memorandum), and understand that all of the investment funds carry risk of loss and that the highly leveraged investment funds have a high degree of risk of loss (as well as a potential high rate of return), including total loss of your investment, and should not be invested in unless you have a high degree of liquidity, as detailed in the Certain Risks section of the Private Offering Memorandum.

You understand that neither Howard & Associates, nor its President, Phillip Timothy Howard when acting as an attorney, are a partner or a party to these investment funds, and has no liability for the investments and the returns on investments. You understand that the protections of the attorney-client relationship do not apply to the non-legal services provided by the Investment Funds. You understand that the investment funds are not created to provide legal work for Howard & Associates and its affiliate law firms, such as ▬▬▬▬▬▬▬▬▬▬, to provide legal services such as tax and estate planning, and is not a referral source for Howard & Associates and its affiliate law firms. You understand that Howard & Associates is not providing financial assistance to its clients. You understand that Howard & Associates may obtain confidential information from either its representation or from the investment funds as to the client and their activities, and you are providing informed consent for Howard & Associates and the investment funds to share that confidential information.

To the extent that there is an interest in the investment funds that conflicts with the legal services of Howard & Associates, pursuant to Rule 4-1.7, Conflicts of Interest, or Rule 4-5.7, Rules Regulating the Florida Bar, and the potential for overreaching due to the trust and confidence placed in Howard & Associates, **you are advised that you may seek independent legal representation to review any potential conflict, you are explicitly advised to obtain independent legal representation to review any potential conflict, and confirm that you have obtained independent legal representation to review any potential conflict. By signing this document, you as a client, or a potential client, are providing informed consent to a waiver of any and all potential conflicts and liability of Howard & Associates.**



| Date | Howard & Associates | Date |

# ATTACHMENT "C"

**Acknowledgement of Authorization**

The Florida Bar has decided that attorneys may not issue a letter of protection to a funding company. (Florida Bar Opinion 00-3). It is impermissible for an attorney to become involved in a financing agreement that requires the attorney to become a trustee to benefit the company providing the loan to the attorney's client. The Florida Bar has specially noted that an attorney shall not co-sign or otherwise guarantee the financial transaction. Additionally, the attorney shall not provide the funding company with an opinion regarding the worth of the client's claim or the likelihood of success.

The attorney may provide information to a funding company with the informed consent of the client. The attorney may, at the client's request, honor a client's valid, written assignment of a portion of the recovery to the funding company. There may be other governing ethical rules involved in a client's assignment to a funding company. Rule 5-1 (c), Regulating the Florida Bar states:

Notice of Receipt of Trust Funds; Delivery; Accounting:

Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in the rule or otherwise permitted by law or by agreement with the client, a lawyer shall properly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and upon request by the client or third person, shall promptly render a full accounting regarding such property.

The comment to Rule 5-1.2 Rules Regulating the Florida Bar, is also instructive:

Third Parties, such as a client's creditors, may have just claims against funds or other property in a lawyer's custody. A lawyer may have a duty under applicable law to protect such third party claims against wrongful interference by the client, and accordingly, may refuse to surrender the property of the client. However, a lawyer should not unilaterally assume to arbitrate a dispute between the client and a third party. Where appropriate, the lawyer should consider the possibility of depositing the property or funds in dispute into the registry of the applicable court so that the matter may be adjudicated (emphasis needed).

I hereby acknowledge receipt of a Pre-Settlement Finance Agreement dated ▬▬▬▬▬ between our client, ▬▬▬▬▬▬ and ▬▬▬▬▬▬▬▬▬▬▬. A copy of the Agreement will be maintained in this client's file. **HOWARD & ASSOCIATES** will perform any and all tasks in accordance with the Rules Regulating the Florida Bar in regards to funding companies and property belonging to a third party as noted above. This is not a letter of protection or an agreement to guarantee the financial transaction.

Client's Initials



To my knowledge, without independent inquiry:  there are no liens against, or prior assignments of the Proceeds, except any such liens or assignments that are set forth as follows:

****PLEASE LIST ALL KNOWN LIENS BELOW. If NONE, please indicate "NONE".  ****

| NAME OF LIENHOLDER | AMOUNT | DATE |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |

I am fully aware that ▨▨▨▨▨▨▨▨▨▨▨▨ can lose its investment in this case if the client terminates this office's representation of if the client receives the money directly. I therefore agree that so long as I represent the client, the funds due to ▨▨ will be paid directly through my office and will not, under any circumstances be given to the client. I further agree to immediately notify ▨▨ of any termination of my services, by email and also provide the new name, address and telephone number of the successor attorney. I further agree to immediately notify ▨▨ of any successor attorney, the name, address and claim number of the third party insurance carrier.

By_____

Tim Howard, ESQ.
Howard & Associates
2120 Killarney Way, Suite 125
Tallahassee, FL 32309
Tel 850-298-4455

Date_____

16


Client's Initials

