# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

### NOTICE OF JOINDER AND SUPPLEMENTAL MEMORANDUM
### IN SUPPORT OF MOTIONS TO DETERMINE
### PROPER ADMINISTRATION OF CLAIMS UNDER
### <u>THE SETTLEMENT AGREEMENT</u>

Comes Now, Attorney Anoush Hakimi and The Law Office of Hakimi & Shahriari, and their clients in the above named and numbered cause of action, and hereby notify this Court and all parties that, said firm and counsel hereby join and/or adopt, as applicable to them: (a) Loren & Kean Law's August 15, 2017 Motion to Determine Proper Administration of Claims Under the Settlement Agreement and Incorporated Memorandum of Law and supporting exhibits, Document

No. 8267, and (b) Neurocognitive Football Lawyers, PLLC's and The Yerrid Law Firm's September 14, 2017 Objection and Motion for Relief, Document No. 8375, and file this supplemental memorandum in support of said joinder and motions.

**I.     INTRODUCTION**

This Supplemental Memorandum is filed on behalf of the more than two hundred and thirty (230) clients of this firm, who are Retired NFL Players, family of Retired NFL Players and members of the Class certified in this matter (collectively, the "Co-Movants").

On May 8, 2015, this Honorable Court confirmed the appointment of BrownGreer PLC as the Claims Administrator (hereafter "BrownGreer"), entrusting BrownGreer with the responsibility to properly and timely administer claims pursuant to the terms of the Settlement Agreement. BrownGreer has failed to meet its obligations under the Settlement Agreement in several key respects as follows:

   a. BrownGreer has failed to abide by notice and action deadlines required in the Settlement Agreement in dozens of separate instances with respect to the Co-Movants;

   b. BrownGreer has repeatedly mismanaged claim package documents resulting in erroneous deficiency notices; and

   c. BrownGreer has issued misleading, incomplete and ambiguous deficiency notices that are substantively flawed in violation of the requirements of the Settlement Agreement.

The issues raised in this Motion do not involve interpretation of the Class Action Settlement Agreement (as amended) approved by this Honorable Court in this Action (the

"Settlement Agreement"), but rather deviations in procedure and protocol from the implementation of its terms. Co-Movants have attempted to informally resolve some of the matters raised in this Motion directly and discreetly with BrownGreer to no avail. Co-Movants have determined that future attempts to resolve these fundamental issues with BrownGreer are futile. Co-Movants are now forced to seek the Court's intervention. This Honorable Court's resolution of these issues is presently needed to ensure that the Settlement Agreement is implemented.

The procedural failures raised in this Motion are highly detrimental to the lives of mentally disabled Retired NFL Players, because they result in lengthy time delays in the processing of their claims. Extended delays cause negative impact because many of these retirees are unable to earn a living and are relying on a monetary lifeline for medical and living expenses. Unpermitted delays, mishandling of documents and the issuance of misleading, incomplete and ambiguous deficiency notices compound the harms to these Class Members and their families.

This is especially problematic because BrownGreer represented to this Honorable Court that the claims administration process would be simple and straightforward, such that an individual with neurocognitive impairment would be able to successfully navigate all the steps **without the assistance of a lawyer**. It has become evident that this statement is nowhere close to reality. The process has been mired in confusion, lack of information and ambiguity, to such an extent that even the lawyers involved are frustrated with uncertainty as to how deal with even basic matters in the implementation of the Settlement Agreement. **Any assertion that a neurocognitively impaired individual could manage this process without the assistance of an attorney is absurd.**

This Honorable Court has the authority to enforce the Settlement Agreement and ensure compliance with its terms. Accordingly, the Co-Movants respectfully request that the Court: (a)

compel BrownGreer to adhere to the terms of the Settlement Agreement in the administration of the claims; (b) compel BrownGreer to comply with all notice and action deadlines set forth in the Settlement Agreement; (c) compel BrownGreer to withdraw deficiency notices which are the result of BrownGreer's mishandling of claim package documents; (d) require BrownGreer to disclose its internal procedures, bases and criterion used to evaluate claims, or alternatively, allow discovery on an expedited basis; (e) determine whether the internal procedures, bases and criterion are consistent with the Settlement Agreement; (f) prohibit BrownGreer from discouraging any Class Member from consulting with an attorney; (g) prohibit BrownGreer from instructing others (such as medical providers) to discourage Settlement Class Members from consulting with an attorney.

## II. BROWNGREER HAS NOT MET ITS DUTY TO COMPLY WITH THE DEADLINES SET FORTH IN THE SETTLEMENT AGREEMENT

The Settlement Agreement sets forth notice and action deadlines for BrownGreer to follow in order to timely administer claims[1]. With respect to Co-Movants, thus far, BrownGreer has failed to meet notice and action deadlines set forth in the Settlement Agreement in several dozen separate incidents. *See* Declaration of Anoush Hakimi, dated September 20, 2017 ("Hakimi Decl.") at 2.[2] Importantly, most of these failures are not immaterial "foot fault" type defaults of one or two days past a deadline, but rather, time lengthy failures lasting months.

Delays in the timely administration of claims by a third-party claims administrator are detrimental to the affected members of the applicable class. Here, the situation is made worse by the reality that qualifying Class Members have debilitating, life limiting medical conditions. In

---

[1] As an example, per Section 8.4(a) of the Settlement Agreement, BrownGreer is charged with determining the sufficiency and completeness of a Claim Package within forty-five (45) of the date it receives a Claim Package.
[2] The undersigned is not alleging that BrownGreer is intentionally acting to obstruct justice or delay the proper administration of claims, only that we have observed and experienced too many unauthorized and unjustified failures to meet mandated deadlines to not bring to the Court's attention. These delays are detrimental to our clients and prejudicial to their interests.

most cases, these retirees were former bread winners of the family. Now they are unemployed, unemployable and are a financial and emotional burden on their families. Further unpermitted delays by BrownGreer will have major detrimental effects on the Class given their vulnerabilities.

In particular, given the prevalence of severe depression and suicidality among Retired NFL Players who qualify for a Monetary Award, unfair or repeated delays create conditions where suicides are more likely. This is especially true since many medically qualified Retired NFL Players view the Monetary Award under the Settlement as their last hope to pay for their expensive life-long medical needs. Unpermitted delays by BrownGreer destroy this hope and take away the sole reason these gentlemen hang on. Many Retired NFL Players do not have faith in the National Football League's disability programs which did not help them in the past. Now, because of these unpermitted delays they are starting to skeptically view this Settlement as more of the same.

### III. BROWNGREER HAS NOT MET ITS DUTY TO PROPERLY MANAGE CLAIM PACKAGE MATERIALS DELIVERED TO ITS POSSESSION

BrownGreer is solely responsible for the management of claim packages delivered by the Class into its possession. This is one of BrownGreer's most important duties. The mismanagement and mishandling of claim package materials by BrownGreer raises serious concerns regarding the administration of claims.

BrownGreer has, on multiple occasions, mishandled medical documents as part of completed claim packages submitted by Co-Movants. This has occurred in the context of BrownGreer's delivery of claim package documents to the Appeals Advisory Panel.

Per Section 6.4(a) of the Settlement Agreement a member of the Appeals Advisory Panel must review Qualifying Diagnosis made before the Effective Date, and per Section 6.4(b) of the Settlement Agreement "the contents of the Claim Package relevant to the Qualifying Diagnosis, including the Claim Form, the Diagnosing Physician Certification, medical records supporting and

reflecting the Qualifying Diagnosis, and any other related materials concerning the Qualifying Diagnosis, shall be submitted to a member of the Appeals Advisory Panel for review". The management and delivery of completed Claim Packages to the Appeals Advisory Panel is strictly and solely within BrownGreer's control and delineated responsibilities.

Co-Movants have discovered that BrownGreer mishandled the delivery of Claims Packages to the Appeals Advisory Panel with respect to at least three (3) Class Members, resulting in three (3) unjustified deficiency notices. Medical reports that were delivered and confirmed delivered to BrownGreer were not provided by BrownGreer to the Appeals Advisory Panel who reviewed the claim packages which resulted in the issuance of deficiency notices, as more fully set forth below. See Exhibits ("Exs") A-2, B and C, the redacted deficiency notices attached to the Hakimi Decl. Additionally, BrownGreer further mishandled a claim package by prematurely assigning the claim package for review to the Appeals Advisory Panel while an uncured deficiency notice was still pending against that claim package. The chance to cure was not provided as required by the Settlement Agreement.

It is important to note that, at the time of the receipt of these three (3) deficiency notices only three (3) claim packages from this law firm had been submitted to the Appeals Advisory Panel, which means that **BrownGreer mishandled the delivery of one hundred percent (100%) of claim packages from this law firm's clients to the Appeals Advisory Panel.**

### a. Adverse Mishandling of Retired NFL Player A's Claim Package – Premature Submission to Appeals Advisory Panel

The Claim Package with respect to Settlement Program ID No. 100014954 ("Retired NFL Player A") was adversely mishandled by BrownGreer by prematurely causing the Appeals

Advisory Panel to review the claim before Retired NFL Player A had his chance to exercise his right to cure alleged deficiencies. This Claim Package was assigned by BrownGreer to the Appeals Advisory Panel at a time when a Notice of Claim Package Deficiency was still pending against this Claim Package. Specifically, Document ID No. 84503 entitled "Notice of Claim Package Deficiency" was posted to BrownGreer's portal on **June 29, 2017** (the "Notice of Preliminary Review"). *See* Hakimi Decl. at Ex. A.

However, for no explained reason, as of **July 7, 2017**, BrownGreer's portal showed that this Claim Package was "Assigned to AAP". *See* Hakimi Decl. at Ex. A-1, screenshot of BrownGreer's portal taken on July 7, 2017.

This firm only submitted a cure to the purported "deficiencies" set forth in the Notice of Preliminary Review on August 14, 2017 (the "Cure Date"). *See* Hakimi Decl. at 5. Accordingly, the assignment by BrownGreer of this Claim Package to the Appeals Advisory Panel prior to the Cure Date was a violation of Retired NFL Player A's right to cure purported deficiencies under Section 8.5 of the Settlement Agreement.

## b. Adverse Mishandling of Retired NFL Player A's Claim Package – Medical Documents Not Looked At

The redacted Notice of Claim Package Deficiency attached to Hakimi Decl. as Exhibit A-2 ("Redacted Deficiency Notice No. 1") was posted to Retired NFL Player A's claim package page on BrownGreer's portal on September 5, 2017 as Document ID No. 123081. Redacted Deficiency Notice No. 1 states in relevant part "**[s]tandard neurological assessment**…are not given" and "[i]f possible, it would be helpful to obtain any **neurological assessments**…" [Emphasis added] *See* Hakimi Decl. at Ex. A-2.

This is relevant because neurological assessments of Retired NFL Player A were delivered to BrownGreer on each of April 21, 2017 as Document ID No. No. 61627 and on August 14, 2017 as part of Document No. 112497. Both of these documents continue to appear on Retired NFL Player A's claim package page on BrownGreer's portal as reflected by the screenshot of this portal page attached to Hakimi Decl. as Exhibit A-3.

There are two possible conclusions: (a) that BrownGreer failed to deliver the neurological assessments to the Appeals Advisory Panel, or (b) that BrownGreer did make the delivery, but the Appeals Advisory Panel chose to willfully ignore the neurological assessments provided to it only to then request the same be delivered. The latter scenario does not make sense.

We must deduce that the neurological assessments provided to BrownGreer by Retired NFL Player A were not passed on to the Appeals Advisory Panel, and therefore where mishandled by BrownGreer. This adverse mishandling of sensitive medical documents resulted in the deficiency referenced in Redacted Deficiency Notice No. 1 to the extreme detriment of Retired NFL Player A.

### c. Adverse Mishandling of Retired NFL Player B's Claim Package – Medical Documents Not Looked At

The redacted Notice of Claim Package Deficiency attached to Hakimi Decl. as Exhibit B ("Redacted Deficiency Notice No. 2") was posted to the claim package page of Settlement Program ID No. 100005676 ("Retired NFL Player B") on BrownGreer's portal on September 5, 2017. Redacted Deficiency Notice No. 2 states in relevant part the following:

> "The Diagnosing Physician references a neuropsychological evaluation performed by Dr. [REDACTED] on [REDACTED], showing Level 1.5 impairment in complex attention and visual perception. The original report by Dr. [REDACTED] should also be provided to evaluate the degree of impairment in each domain as well as its consistency with the criteria outlined in Appendix A-1 to the Settlement Agreement."

*See* Hakimi Decl. at Ex. B.

This is relevant because the neuropsychological evaluation of Retired NFL Player B which is the basis of this alleged deficiency was delivered to BrownGreer on April 21, 2017 as Document ID No. 61548. This document continues to appear on BrownGreer's portal as reflected in the screenshot of Retired NFL Player B's claim package page on BrownGreer's portal attached to Hakimi Decl. as Exhibit B-1.

There are two possible conclusions: (a) that BrownGreer failed to deliver the neuropsychological evaluation of Retired NFL Player B to the Appeals Advisory Panel, or (b) that BrownGreer did make the delivery, but the Appeals Advisory Panel chose to willfully ignore the neuropsychological evaluation of Retired NFL Player B provided to it only then to request the same be delivered. The latter scenario does not make sense.

We must deduce that the neuropsychological evaluation of Retired NFL Player B provided to BrownGreer by Retired NFL Player B was not delivered to the Appeals Advisory Panel, and therefore was mishandled by BrownGreer. This adverse mishandling of sensitive medical documents resulted in the deficiency referenced in Redacted Deficiency Notice No. 2 to the detriment of Retired NFL Player B.

### d. Adverse Mishandling of Retired NFL Player C's Claim Package – Medical Documents Not Looked At

The redacted Notice of Claim Package Deficiency attached to Hakimi Decl. as Exhibit C ("Redacted Deficiency Notice No. 3") was posted to the claim package page of Settlement Program ID No. 100002552 ("Retired NFL Player C") on BrownGreer's portal on September 1, 2017. Redacted Deficiency Notice No. 3 states in relevant part the following:

"Diagnosis of Level 1.5 Neurocognitive Impairment requires additional information from Neuropsychological testing to support degree of impairment (as further detailed in Appendix B). **The current qualifying diagnosis document describes only the summary conclusion of neuropsychological testing without providing the scores on subtests for assessment.**" [Emphasis added]

See Hakimi Decl. at Ex. C.

This is relevant because the neuropsychological evaluation of Retired NFL Player C which is the basis of this alleged deficiency was delivered to BrownGreer on April 27, 2017 as Document ID No. 63638. This neuropsychological evaluation of Retired NFL Player C has all subtest scores across the five tested cognitive domains, including, without limitation, Raw Scores, SS/Z Scores, T Scores, Percentile Rank and Interpretation with respect to the entire test battery set forth in the Settlement Agreement. Therefore, if this neuropsychological evaluation had been delivered to the Appeals Advisory Panel this alleged deficiency would not be made.

This neuropsychological evaluation of Retired NFL Player C which was delivered to BrownGreer on April 27, 2017, continues to appear on Retired NFL Player C's claim package page on BrownGreer's portal as reflected in the screenshot of attached to Hakimi Decl. as <u>Exhibit C-1</u>.

There are two possible conclusions: (a) that BrownGreer failed to deliver the neuropsychological evaluation of Retired NFL Player C to the Appeals Advisory Panel, or (b) that BrownGreer did make the delivery, but the Appeals Advisory Panel chose to willfully ignore the neuropsychological evaluation of Retired NFL Player C provided to it only then to request the same be delivered. The latter scenario does not make sense.

We must deduce that the neuropsychological evaluation of Retired NFL Player C provided to BrownGreer was not delivered to the Appeals Advisory Panel, and therefore was mishandled by BrownGreer. This adverse mishandling of sensitive medical documents resulted in the

deficiency referenced in Redacted Deficiency Notice No. 3 to the detriment of the injured Retired NFL Player C.

## IV. DEFICIENCY NOTICES ISSUED BY BROWNGREER ARE MISLEADING AND MISSING THE REQUIRED INFORMATION

Per Section 8.5 of the Settlement Agreement, where a purported deficiency exists with respect to a Claim Package, BrownGreer is required to "send a Notice of Deficiency to the Settlement Class Member, which Notice will contain a brief explanation of the Deficiency(ies) giving rise to rejection of the Claim Package" and "[t]he Notice of Deficiency will contain a recommendation for how, if possible, the Settlement Class Member can cure the Deficiency." This minimum information standard required of BrownGreer is straightforward and clear, has two primary components: (a) a statement of deficiencies and (b) a cure recommendation, if possible. BrownGreer has critically failed to meet this minimum information requirement in several dozen instances with the clients of this law firm alone. *See* Hakimi Decl. at 12.

The misleading and incomplete deficiency notices are so unclear that many attorneys at many various law firms involved in this settlement are confused and frustrated as to how to properly address the matters raised in the deficiency notices. *See* Hakimi Decl. at 13.

### a. Misleading Deficiency Notices – BrownGreer Admits its Recommendations for Cure Will Actually Be Ineffective If Tried

In Redacted Deficiency Notice No. 2 under the "What is Missing" column, which is presumably the portion of the deficiency notice designed to identify the "statement of deficiencies" required in the Settlement Agreement, the following is stated:

> "Your medical records indicate that the diagnosing physician did not consider documentary evidence of functional impairment for a Qualifying Diagnosis of Level 1.5 or 2 Neurocognitive Impairment. The Settlement Agreement requires that pre-Effective Date

>Qualifying Diagnoses of Level 1.5 or 2 Neurocognitive Impairment be based on evidence and evaluation generally consistent with Exhibit A-1, subsections 1(a)(iii) and 2(a)(iii). These sections contemplate that the Retired NFL Football Player's functional impairment be corroborated by documentary evidence, such as medical records or employment records from before the date of the Qualifying Diagnosis, the sufficiency of which will be determined by the physician making the Qualifying Diagnosis. **If no such corroborating documentary evidence exists, the Settlement Agreement contemplates that functional impairment be corroborated by a sworn statement from a person familiar with the Retired NFL Football Player's condition (other than the player or his family members).**" [Emphasis added]
>
>*See* Hakimi Decl. at Ex. B.

Further, in Redacted Deficiency Notice No. 2 under the "How to Address this Item" column, which is presumably the portion of the deficiency notice designed to identify the "cure recommendation" required in the Settlement Agreement, the following is stated:

>"Click the Respond to Deficiency button, go to Section 3 for Medical Records, click on the Upload Medical Records button and follow the instructions to upload medical records reflecting the Qualifying Diagnosis that show that the diagnosing physician considered documentary evidence of functional impairment. Make sure you also submit that evidence with your response. **If you need to submit a third party sworn affidavit from a person familiar with the Retired NFL Football Player's condition, go to https://www.nflconcussionsettlement.com/Forms.aspx to download a copy of this affidavit.**" [Emphasis added]
>
>*See* Hakimi Decl. at Ex. B.

This deficiency notice was issued with respect to a Retired NFL Player who received a Qualifying Diagnosis prior to the Effective Date. **This firm received more than thirty (30) notices with the exact same language as Redacted Deficiency Notice No. 2 shown above.** See Hakimi Decl. at 12. The plain meaning of the two portions of highlighted text are that a Retired NFL Player who was previously diagnosed (in this case prior to the Effective Date) can now have a witness complete the sworn statement form that is presently available on the official claims administration website, and then use that sworn statement to corroborate his functional impairment, thereby curing the alleged deficiency. This plain meaning is also supported by the text

of the Settlement Agreement. **However, BrownGreer's official position is that the cure recommendation that they describe in the deficiency notices will not cure the deficiency.** *See* Hakimi Decl. at Ex.D, E-mail correspondence between Anoush Hakimi, Esq. and Jason Russell and Nicole Priest of BrownGreer, dated between July 3, 2017 and July 5, 2017.

If the cure recommendations provided by BrownGreer are just plain wrong, and will not be effective, it means there is no way for Class Members to cure alleged deficiencies, and it will be impossible for meritorious claims to get through the process.

### b. Incomplete and Ambiguous Deficiency Notices

As an example, Redacted Deficiency Notice No. 3 under the "What is Missing" column states the deficiency as follows:

> "The Appeals Advisory Panel reviewed your Qualifying Diagnosis and determined your Claim Package is missing these documents"
> 
> *See* Hakimi Decl. at Ex. C.
> 
> Redacted Deficiency Notice No. 3 under the "How to Address this Item" column states the

recommendation for cure as follows:

> "***Some discussion*** of the timing of his cognitive impairment relative to the initiation of his multiple medications with potential cognitive side effects would be ***helpful***, as well as ***discussion*** of the possible impact of his severe depression on cognitive performance and functional decline." [Emphasis added]
> 
> *See* Hakimi Decl. at Ex. C.

This cure recommendation is ambiguous and incomplete, because it is unclear what the meaning of "some discussion" is. What amount of discussion satisfies the requirement of "some discussion"? It is impossible for a Class Member or a clinical physician to decipher the exact meaning of what is being required. Moreover, the "cure recommendation" does not communicate

that taking that action will cure the alleged deficiency, only that it would be "helpful". Is this the cure recommendation, or just a friendly suggestion, which may or may not serve to cure the alleged deficiencies?

As another example, Redacted Deficiency Notice No. 1 under the "What is Missing" column states the deficiency as follows:

> "The Appeals Advisory Panel reviewed your Qualifying Diagnosis and determined your Claim Package is missing these documents"
>
> *See* Hakimi Decl. at Ex. A-2.

Further, Redacted Deficiency Notice No. 1 under the "How to Address this Item" column states the recommendation for cure as follows:

> "Confounders for interpretation of neuropsychological test performance are present. He reported that he was very tired at the time of the exam, his sleep is poor in general, and he still drinks 2-3 times weekly, the amount not reported. It is not clear what OTC medications he may be using; if they are sleep aids, most of which contain diphenhydramine, a potent anticholinergic, his test performance could be affected. Standard neurological assessment, brain imaging, lab tests, and medical history are not given. All these issues raise the concern that poor sleep habits, possible sleep apnea, alcohol itself and its effect on sleep, possible use of OTC sleep aids, or other medical conditions could be present to explain his symptoms. ***If possible, it would be helpful*** to obtain any neurological assessments, lab tests, imaging, clarification of alcohol and OTC drug use." [Emphasis added]
>
> *See* Hakimi Decl. at Ex. A-2.

This cure recommendation is ambiguous and incomplete as to form and as to substance because it does not actually provide a cure recommendation but merely postulates what information would be "helpful"[3]. Rather than provide a recommendation for how a Class member can cure the alleged deficiency, as required, this purported cure recommendation recites a laundry list of further alleged deficiencies, which renders Redacted Deficiency Notice No. 1 ambiguous

---

[3] There are other substantive issues with this and the other deficiency notices that this law firm will address in a future proceeding in front of this Honorable Court.

and incomplete as to form. As to substance, the only cure recommendation appears to be the last sentence, which starts with "[i]f possible, it would be helpful…" Does that mean that if it's not possible, it would not be helpful? Is this the required cure recommendation, or just a friendly suggestion, which may or may not serve to cure the alleged deficiencies?

The Settlement Agreement is very clear "[t]he Notice of Deficiency will contain a recommendation for how, if possible, the Settlement Class Member can cure the Deficiency." BrownGreer has not met this minimum requirement both as to form and as to substance. This failure on the part of BrownGreer is to the extreme detriment and prejudice of a group of suffering, injured individuals who are ever increasingly relying on compensation to pay for medical needs and day to day living expenses which they can no longer earn because of their disabilities.

The inaccurate, incomplete and ambiguous deficiency notices render the entire claims administration process a wild goose chase. The deficiency cure provisions are supposed to provide Class members with meritorious claims a way to be informed of and cure alleged deficiencies. By issuing substantive and procedurally defective deficiency notices BrownGreer is depriving Class Members of their rights under the Settlement Agreement, and unfairly disenfranchising them of their right to claim a monetary award. It's simple: Claim a deficiency exists where no deficiency actually exists, and provide incorrect information as to how to correct the non-existent deficiency.

WHEREFORE, the Co-Movants respectfully request that this Honorable Court enter an order: (a) compelling BrownGreer to administer the Settlement Agreement according to its terms; (b) compelling BrownGreer to comply with all notice and action deadlines set forth in the Settlement Agreement; (c) compelling BrownGreer to withdraw deficiency notices resulting from BrownGreer's mishandling of claim packages; (d) requiring that BrownGreer disclose its internal procedures, bases and criterion used to evaluate claims, or alternatively, allow discovery on an expedited basis; (e) make a determination whether the internal procedures, bases and criterion are consistent with the Settlement Agreement; (f) prohibiting BrownGreer from discouraging any Class Member from consulting with an attorney; (g) prohibiting BrownGreer from instructing others (such as medical providers) to discourage Settlement Class Members from consulting with an attorney.

Respectfully submitted,

s//Anoush Hakimi//
**Anoush Hakimi, Esq.**
Ca. Bar No. 228858
THE LAW OFFICE OF HAKIMI &
SHAHRIARI (fka Top NFL Lawyers)
1420 S. Figueroa Street, Suite 107
Los Angeles, California 90015
Telephone: (213) 275 – 1269
Facsimile: (213) 402 – 2170
anoush@topnfllawyer.com
Attorney for Individual Class Members

## **CERTIFICATE OF SERVICE**

      I hereby certify that the above has been filed with the Clerk of Court's EF / ECM system, which will provide service to all parties designated to receive service this September 20, 2017.

                                                  s//Anoush Hakimi//
                                                  Anoush Hakimi, Esq.