## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO: ALL OPT OUT ACTIONS PENDING AGAINST DEFENDANTS NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC | Hon. Anita B. Brody |

## MEMORANDUM OF LAW OF DEFENDANTS NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED MASTER ADMINISTRATIVE LONG-FORM COMPLAINT FOR FAILURE TO STATE A CLAIM

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND .................................................................................................. 4

    A.    Parties ................................................................................................ 4

    B.    Procedural Background ..................................................................... 5

    C.    Second Amended Complaint ............................................................ 7

ARGUMENT ...................................................................................................... 11

I.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE NFL
    DEFENDANTS .......................................................................................... 12

    A.    Plaintiffs' Fraud-Based Claims are Fatally Flawed ................................. 12

        1.    Plaintiffs Fail to State a Claim for Fraud or
              Fraudulent Concealment ......................................................... 12

        2.    Plaintiffs Fail to State a Claim for Negligent
              Misrepresentation ................................................................... 17

    B.    Plaintiffs' Negligence-Based Claims Are Fatally Flawed ...................... 18

        1.    Plaintiffs Fail to State a Claim for Negligence ............................. 18

        2.    Plaintiffs Fail to State a Claim for Negligent Hiring
              and Negligent Retention/Supervision .............................................. 20

        3.    Plaintiffs Fail to State a Claim for Negligent
              Marketing .............................................................................. 24

    C.    Plaintiffs Fail to State a Claim for Conspiracy ............................................ 28

    D.    Plaintiffs Fail to Allege Grounds for Imposing Punitive
        Damages ......................................................................................... 32

    E.    Plaintiffs' Claims Against NFLP Should Be Dismissed .......................... 33

II.    PLAINTIFFS' CLAIMS ARE TIME-BARRED ....................................... 34

    A.    Plaintiffs' Negligence-Based Claims Are Time-Barred ......................... 34

    B.    Plaintiffs' Fraud-Based Claims Are Time-Barred .................................. 38

    C.    Plaintiffs' Conspiracy Claim Is Time-Barred ........................................ 41

III.    THE COURT SHOULD DISMISS THE CLAIMS OF  NON-
    COMPLIANT PLAINTIFFS AND SETTLEMENT CLASS
    MEMBERS ................................................................................................ 41

    A.    Claims of Plaintiffs Who Failed to File  Short-Form
        Complaints Should Be Dismissed .................................................. 41

    B.    Claims of Settlement Class Members Should Be Dismissed ................... 42

CONCLUSION.................................................................................................................44

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*1766-68 Assoc., LP* v. *City of N.Y.*,
  91 A.D.3d 519 (N.Y. App. Div. 2012) ........................................................28

*Abacus Fed. Sav. Bank* v. *Lim*,
  75 A.D.3d 472 (N.Y. App. Div. 2010) ........................................................32

*Abbasi* v. *Herzfeld & Rubin, P.C.*,
  No. 94-cv-2809, 1995 WL 303603 (S.D.N.Y. May 17, 1995) ............................14–15

*Abraham* v. *Am. Home Mortg. Serv., Inc.*,
  947 F. Supp. 2d 222 (E.D.N.Y. 2013) ........................................................28

*Ahluwalia* v. *St. George's Univ., LLC*,
  63 F. Supp. 3d 251 (E.D.N.Y. 2014) .........................................................23

*In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*,
  MDL No. 1712, 2007 WL 2541216 (E.D. Pa. Aug. 29, 2007) ...................................21

*Am. Pipe & Constr. Co.* v. *Utah*,
  414 U.S. 538 (1974)........................................................................36–37

*Antilles Shipping Co.* v. *Texaco, Inc.*,
  321 F. Supp. 166 (S.D.N.Y. 1970) ...........................................................25

*Archie* v. *Pop Warner Little Scholars, Inc.*,
  No. 16-cv-6603, 2017 WL 3084160 (C.D. Cal. May 12, 2017)..................................36

*In re Asbestos Prods. Liab. Litig.*,
  718 F.3d 236 (3d Cir. 2013) ................................................................42

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009)........................................................................11, 34

*Bannister* v. *Agard*,
  125 A.D.3d 797 (N.Y. App. Div. 2015) .......................................................12

*Bell Atlantic Corp.* v. *Twombly*,
  550 U.S. 544 (2007)........................................................................11

*Bell* v. *Hutsell*,
  955 N.E.2d 1099 (Ill. 2011).................................................................19–20

*Blanco* v. *Am. Tel. & Tel. Co.*,
  689 N.E.2d 506 (N.Y. 1997).................................................................34

*Blanyar* v. *Genova Prods. Inc.*,
   861 F.3d 426 (3d Cir. 2017) ....................................................................36

*Bortz* v. *Noon*,
   729 A.2d 555 (Pa. 1999).................................................................12, 17

*Bouchard* v. *N.Y. Archdiocese*,
   719 F. Supp. 2d 255 (S.D.N.Y. 2010) .....................................................21

*Boyanowski* v. *Capital Area Intermediate Unit*,
   215 F.3d 396 (3d Cir. 2000) ....................................................................32

*Bush* v. *Adams*,
   No. 07-cv-4936, 2009 WL 197550 (E.D. Pa. Jan. 27, 2009) ...............28–29

*Chagnon* v. *Tyson*,
   11 A.D.3d 325 (N.Y. App. Div. 2004) .....................................................22

*Colasacco* v. *Robert E. Lawrence Real Estate*,
   68 A.D.3d 706 (N.Y. App. Div. 2009) .....................................................17

*Coleman* v. *Wells Fargo & Co.*,
   125 A.D.3d 716 (N.Y. App. Div. 2015) .............................................38, 41

*Corcoran* v. *N.Y. Power Auth.*,
   202 F.3d 530 (2d Cir. 1999) ....................................................................12

*Country World, Inc.* v. *Imperial Frozen Foods Co.*,
   186 A.D.2d 781 (N.Y. App. Div. 1992) ....................................................38

*Coville* v. *Ryder Truck Rental, Inc.*,
   30 A.D.3d 744 (N.Y. App. Div. 2006) .....................................................21

*Cubbage* v. *Novartis Pharm. Corp.*,
   No. 16-cv-129, 2016 WL 3595747 (M.D. Fla. July 5, 2016).....................25

*Cumis Ins. Soc., Inc* v. *Citibank, N.A.*,
   921 F. Supp. 1100 (S.D.N.Y. 1996) ........................................................36

*DDR Constr. Servs., Inc.* v. *Siemens Indus., Inc.*,
   770 F. Supp. 2d 627 (S.D.N.Y. 2011) .....................................................28

*Dehart* v. *Homeq Serv. Corp.*,
   No. 11-cv-416, 2011 WL 13137379 (E.D. Pa. June 2, 2011) ....................33

*Dempsey* v. *Walso Bureau, Inc.*,
   246 A.2d 418 (Pa. 1968).........................................................................21

iv

*Egli* v. *Strimel*,
   No. 14-cv-6204, 2015 WL 5093048 (E.D. Pa. Aug. 28, 2015) ................................... 17

*EGW Partners, L.P.* v. *Prudential Ins. Co. of Am.*,
   Nos. 0336, CONTROL 042340, 2001 WL 1807416 (Pa. Ct. C.P. June
   22, 2001) ............................................................................................................ 12

*Ellis* v. *Pneumo Abex Corp.*,
   No. 11-cv-66774, 2012 WL 7760435 (E.D. Pa. Dec. 28, 2012) ................................ 29

*ERI Max Enter., Inc.* v. *Streisand*,
   690 A.2d 1351 (R.I. 1997) ...................................................................................... 30

*Mazzillo ex rel. Estate of Mazzillo* v. *Banks*,
   No. 3742-C, 1987 WL 754879 (Pa. Ct. C.P. Feb. 6, 1987) ........................................ 19

*Estevez-Yalcin* v. *Children's Vill.*,
   331 F. Supp. 2d 170 (S.D.N.Y. 2004) ...................................................................... 24

*Evans* v. *Ariz. Cardinals Football Club, LLC*,
   No. 16-cv-1030, 2017 WL 2118316 (N.D. Cal. May 15, 2017) ................................ 29

*Fine* v. *Checcio*,
   870 A.2d 850 (Pa. 2005) ..........................................................................35, 38, 39, 41

*Flood* v. *Kuhn*,
   407 U.S. 258 (1972) ................................................................................................ 28

*Floyd* v. *Brown & Williamson Tobacco Corp.*,
   159 F. Supp. 2d 823 (E.D. Pa. 2001) ................................................................ passim

*FNF Touring LLC* v. *Transform Am. Corp.*,
   111 A.D.3d 401 (N.Y. App. Div. 2013) .................................................................... 13

*Gaines* v. *Krawczyk*,
   354 F. Supp. 2d 573 (W.D. Pa. 2004) ...................................................................... 13

*Gerzog* v. *London Fog Corp.*,
   907 F. Supp. 590 (E.D.N.Y. 1995) .......................................................................... 12

*Giant Group, Ltd.* v. *Arthur Andersen LLP*,
   2 A.D.3d 189 (N.Y. App. Div. 2003) ........................................................................ 15

*Gnagey Gas & Oil Co.* v. *Pa. Underground Storage Tank Indemnification Fund*,
   82 A.3d 485 (Pa. Commw. Ct. 2013) ........................................................................ 13

*Goldstein* v. *Philip Morris, Inc.*,
   854 A.2d 585 (Pa. Super. Ct. 2004) .......................................................................... 32

*Greencort Condo. Ass'n* v. *Greencort Partners*,
   2004 WL 1088758 (Pa. Ct. C.P. Apr. 30, 2004)........................................................18

*Gregor* v. *Rossi*,
   120 A.D.3d 447 (N.Y. App. Div. 2014) ...................................................................16

*Grose* v. *Procter & Gamble Paper Prods.*,
   866 A.2d 437 (Pa. Super. Ct. 2005)........................................................................28

*Half* v. *Metro. Life Ins. Co.*,
   65 Pa. D. & C. 4th 246 (Pa. Ct. C.P. 2003) ............................................................21

*Hamilton* v. *Beretta U.S.A. Corp.*,
   750 N.E.2d 1055 (N.Y. 2001)..................................................................................19

*Hoffman* v. *Lincoln Gen. Ins.*,
   303 F. App'x 77 (3d Cir. 2008) ..............................................................................29

*Hutchison ex rel. Hutchison* v. *Luddy*,
   870 A.2d 766 (Pa. 2005)..........................................................................................32

*Ileto* v. *Glock Inc.*,
   349 F.3d 1191 (9th Cir. 2003) ................................................................................27

*In re: Imprelis Herbicide Mktg., Sales Prac. & Prods. Liab. Litig.*,
   No. 11-md-2284, 2015 WL 7575910 (E.D. Pa. Nov. 25, 2015)................................43

*IRPC, Inc.* v. *Hudson United Bancorp*,
   No. 0474, 2002 WL 372945 (Pa. Ct. C.P. Jan. 18, 2002)..........................................23

*Jeter* v. *Brown & Williamson Tobacco Corp.*,
   113 F. App'x 465 (3d Cir. 2004) ............................................................................15

*Kaufman* v. *Cohen*,
   307 A.D.2d 113 (N.Y. App. Div. 2003) ...................................................................40

*Kaufman* v. *Sirius XM Radio, Inc.*,
   No. 650420/2013, 2013 WL 5429364 (N.Y. Sup. Ct. Sept. 17, 2013)......................37

*Killene* v. *Harmon Grain Prods., Inc.*,
   413 N.E.2d 767 (Mass. App. Ct. 1980) ...................................................................27

*Koch* v. *Christie's Int'l PLC*,
   699 F.3d 141 (2d Cir. 2012) ...................................................................................39

*Lance* v. *Wyeth*,
   85 A.3d 434 (Pa. 2014)......................................................................................24, 25

*Laskowski* v. *U.S. Dep't of Veterans Affairs*,
 918 F. Supp. 2d 301 (M.D. Pa. 2013) .......................................................................... 12

*Leidy* v. *Borough of Glenolden*,
 277 F. Supp. 2d 547 (E.D. Pa. 2003) ........................................................................... 12

*Liberty Lincoln-Mercury, Inc.* v. *Ford Motor Co.*,
 676 F.3d 318 (3d Cir. 2012) ......................................................................................... 33

*Liggon-Redding* v. *Virtua Voorhees*,
 No. 14-cv-3139, 2014 WL 2571711 (D.N.J. June 6, 2014) ......................................... 26

*Locicero* v. *Sanofi-Aventis U.S. Inc.*,
 No. 08-cv-489S, 2009 WL 2016068 (W.D.N.Y. July 10, 2009) .................................. 25

*Lombard* v. *Booz-Allen & Hamilton*,
 280 F.3d 209 (2d Cir. 2002) ......................................................................................... 18

*Marinaccio* v. *Town of Clarence*,
 986 N.E.2d 903 (N.Y. 2013) ......................................................................................... 32

*Martin* v. *Evans*,
 711 A.2d 458 (Pa. 1998) ............................................................................................... 18

*MatlinPatterson ATA Holdings LLC* v. *Fed. Express Corp.*,
 87 A.D.3d 836 (N.Y. App. Div. 2011) ......................................................................... 17

*McGowan Inv'rs LP* v. *Keefe Bruyette & Woods, Inc.*,
 540 F. Supp. 2d 571 (E.D. Pa. 2008) ........................................................................... 43

*Mehr* v. *Fed'n Internationale de Football Ass'n*,
 115 F. Supp. 3d 1035 (N.D. Cal. 2015) ....................................................................... 20

*Moning* v. *Alfono*,
 254 N.W.2d 759 (Mich. 1977) ...................................................................................... 27

*Morrison* v. *Hoffmann-La Roche, Inc.*,
 No. 14-cv-4476, 2016 WL 5678546 (E.D.N.Y. Sept. 29, 2016) ........................... 25, 26

*Muhammad* v. *Strassburger*,
 587 A.2d 1346 (Pa. 1991) ............................................................................................. 15

*Muhammad* v. *Weis*,
 No. 08-cv-3616, 2009 WL 637112 (E.D. Pa. Mar. 11, 2009) ...................................... 33

*In re Nassau Cty. Consol. MTBE Prods. Liab. Litig.*,
 No. 601516/2009, 2010 WL 4400075 (N.Y. Sup. Ct. Nov. 4, 2010) ........................... 26

*Nat'l Bldg. Leasing, Inc.* v. *Byler*,
  381 A.2d 963 (Pa. Super. Ct. 1977)..........................................................................13

*In re Nat'l Football League Players' Concussion Injury Litig.*,
  307 F.R.D. 351 (E.D. Pa. 2015), *amended* No. 2:12-MD-02323-AB,
  2015 WL 12827803 (E.D. Pa. May 8, 2015)....................................................5, 16, 37

*Naughright* v. *Weiss*,
  826 F. Supp. 2d 676 (S.D.N.Y. 2011) ......................................................................17

*Operative Plasterers' & Cement Masons' Int'l Ass'n* v. *Metro. N.Y. Dry*
  *Wall Contrs. Ass'n, Inc.*,
  543 F. Supp. 301 (E.D.N.Y. 1982) ...........................................................................31

*Palsgraf* v. *Long Island R.R.*,
  162 N.E. 99 (N.Y. 1928)............................................................................................18

*Payton* v. *Abbott Labs.*,
  512 F. Supp. 1031 (D. Mass. 1981).....................................................................29–30

*Pearl* v. *City of Long Beach*,
  292 F.3d 76 (2d Cir. 2002) ........................................................................................39

*Perez* v. *State*,
  No. 112317, 2011 WL 5528963 (N.Y. Ct. Claims Aug. 5, 2011).........................23–24

*In re Phenylpropanolamine (PPA) Prods. Liability Litig.*,
  460 F.3d 1217 (9th Cir. 2006) ...................................................................................42

*Premium Assignment Corp.* v. *City Cab Co., Inc.*,
  No. 1135, 2005 WL 1706976 (Pa. Ct. C.P. July 15, 2005) ........................................14

*Primeau* v. *Town of Amherst*,
  303 A.D.2d 1035 (N.Y. App. Div. 2003) ..................................................................23

*In re Processed Egg Prods. Antitrust Litig.*,
  No. 08-md-2002, 2013 WL 4504768 (E.D. Pa. Aug. 23, 2013)..................................37

*Partee* v. *San Diego Chargers Football Co.*,
  668 P.2d 674 (Cal. 1983) ...........................................................................................28

*Pulli* v. *Ustin*,
  24 A.3d 421 (Pa. Super. 2011) .............................................................................39, 40

*Putter* v. *N. Shore Univ. Hosp.*,
  858 N.E.2d 1140 (N.Y. 2006).....................................................................................40

*Ravitch* v. *Pricewaterhouse*,
    793 A.2d 939 (Pa. Super. Ct. 2002) ...........................................................................37

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
    311 F.3d 198 (3d Cir. 2002) .......................................................................................13

*Ross* v. *Louise Wise Servs., Inc.*,
    868 N.E.2d 189 (N.Y. 2007) .......................................................................................40

*Royal Mile Co.* v. *UPMC*,
    No. 10-cv-1609, 2013 WL 5436925 (W.D. Pa. Sept. 27, 2013) ................................40

*Rufo* v. *Simpson*,
    86 Cal. App. 4th 573 (Cal. 2001) ...............................................................................33

*Sabo* v. *Lifequest, Inc.*,
    No. 95-cv-3757, 1996 WL 583169 (E.D. Pa. Oct. 8, 1996) .......................................22

*Schlotthauer* v. *Sanders*,
    153 A.D.2d 731 (N.Y. App. Div. 1989) ......................................................................41

*Sheila C.* v. *Povich*,
    11 A.D.3d 120 (N.Y. App. Div. 2004) ........................................................................22

*Spear* v. *Fenkell*,
    No. 13-cv-2391, 2016 WL 5661720 (E.D. Pa. Sept. 30, 2016) ..................................31

*Stann* v. *Olander Prop. Mgmt. Co. Inc.*,
    No. 11-cv-7865, 2015 WL 4505932 (E.D. Pa. July 24, 2015) ...................................41

*Stern Family Real Estate P'ship* v. *Pharmacists Mut. Ins. Co.*,
    No. 06-cv-130, 2007 WL 951603 (W.D. Pa. Mar. 27, 2007) .....................................19

*Stringer* v. *Nat'l Football League, Inc.*,
    474 F. Supp. 2d 894 (S.D. Ohio 2007) .........................................................................4

*Sung Tran* v. *Delavau, LLC*,
    No. 07-cv-3550, 2008 WL 2051992 (E.D. Pa. 2008) .....................................30–31, 31

*Thompson* v. *Ross*,
    No. 10-cv-479, 2010 WL 3896533 (W.D. Pa. Sept. 30, 2010) ..................................31

*Tiberius Capital, LLC* v. *PetroSearch Energy Corp.*,
    No. 09-cv-10270, 2011 WL 1334839 (S.D.N.Y. Mar. 31, 2011) ...............................15

*Toomer* v. *Cellco P'ship*,
    No. 11-cv-7515, 2012 WL 2953831 (S.D.N.Y. July 20, 2012) ..................................30

*Torres* v. *Greyhound Bus Lines, Inc.*,
    48 A.D.3d 1264 (N.Y. App. Div. 2008) ....................................................35

*Tuosto* v. *Philip Morris USA Inc.*,
    No. 05-cv-9384, 2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007) .................14

*Twersky* v. *Yeshiva Univ.*,
    993 F. Supp. 2d 429 (S.D.N.Y. 2014) ......................................................39

*Valentini* v. *Citigroup, Inc.*,
    837 F. Supp. 2d 304 (S.D.N.Y. 2011) ......................................................38

*Waggoner* v. *Caruso*,
    68 A.D.3d 1 (N.Y. App. Div. 2009) ....................................................14, 16

*Waters* v. *New York City Housing Auth.*,
    69 N.Y.2d 225 (N.Y. 1987) ......................................................................19

*Wegman* v. *Dairylea Co-op., Inc.*,
    50 A.D.2d 108 (N.Y. App. Div. 1975) .....................................................28

*Williams* v. *Coca Cola Co.*,
    No. 15-cv-1534, 2017 WL 1214503 (N.D.N.Y. Mar. 31, 2017) ...............25

*Wilson* v. *Donegal Mut. Ins. Co.*,
    598 A.2d 1310 (Pa. Super. Ct. 1991) ...................................................12–13

*Wolfe* v. *McNeil-PPC, Inc.*,
    773 F. Supp. 2d 561 (E.D. Pa. 2011) .......................................................24

*Yoder* v. *Wells Fargo Bank, N.A.*,
    566 F. App'x 138 (3d Cir. 2014) ..............................................................26

*Youndt* v. *First Nat. Bank of Port Allegany*,
    868 A.2d 539 (Pa. Super. 2005) ...............................................................13

*Zafarana* v. *Pfizer Inc.*,
    724 F. Supp. 2d 545 (E.D. Pa. 2010) .......................................................31

*Zilka* v. *Sanctis Const., Inc.*,
    186 A.2d 897 (Pa. 1962) ......................................................................18–19

STATUTES

Cal. Civ. Proc. Code § 335.1 (West 2017) ....................................................34

Minn. Stat. Ann. § 541.05 (West 2017).........................................................34

N.J. Stat. Ann. § 2A:14-2 (West 2017).....................................................34–35

42 Pa. Stat. and Cons. Stat. Ann. § 5524 (West 2017) ..................................................35, 38

Tenn. Code Ann. § 28-3-104(a)(1) (West 2017) .................................................................35

R.I. Gen. Laws Ann. § 9-1-13(a) (West 2017) ....................................................................38

**OTHER AUTHORITIES**

16 Am. Jur. 2d *Conspiracy* § 51 (2017) ..............................................................11, 28, 31

16 Am. Jur. 2d *Conspiracy* § 58 (2017) ...........................................................................32

16 Am. Jur. 2d *Conspiracy* § 65 (2017) ...........................................................................41

22A Am. Jur. 2d *Death* §§ 3, 273 (2015) ...........................................................................11

27 Am. Jur. 2d *Employment Relationship* §§ 372, 374, 375 (2017)...................................11

37 Am. Jur. 2d *Fraud and Deceit* § 29 (2017) ...................................................................11

41 Am. Jur. 2d *Husband and Wife* § 203 (2017) ...............................................................11

57A Am. Jur. 2d *Negligence* § 71 (2017) ....................................................................11, 18

15A C.J.S. *Conspiracy* § 16 (2017) ...................................................................................31

37 C.J.S. *Fraud* §§ 12, 28 (2017) ......................................................................................11

Dan B. Dobbs, et al., *The Law of Torts* §§ 372, 392 (2d ed. 2011)....................................12

1 Michael Dore, *Law of Toxic Torts* § 6:38 (2017) ...........................................................11

Fed. R. Civ. P. § 8(a) ...........................................................................................................33

Fed. R. Civ. P. § 9(b) .......................................................................................................1, 13

Fed. R. Civ. P. § 12(b)(6) ..............................................................................................1, 6, 11

N.Y. C.P.L.R. § 213(8)..........................................................................................................38

N.Y. C.P.L.R. § 214...............................................................................................................35

Restatement (Second) of Torts § 550 (Am. Law Inst. 1977).............................................13

Richard C. Ausness, *Tort Liability for the Sale of Non-Defective Products:*
*An Analysis and Critique of the Concept of Negligent Marketing*, 53
S.C. L. Rev. 907, 912 (2002)........................................................................................27

Defendants National Football League ("NFL") and NFL Properties LLC ("NFLP," and together with the NFL, the "NFL Defendants") respectfully submit this memorandum in support of their motion to dismiss, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), the Second Amended Master Administrative Long-Form Complaint (the "Second Amended Complaint" or "SAC"). The Second Amended Complaint is brought by former professional football players, representatives of the estates of former players, and family members of former players with pending claims in this multi-district litigation (the "MDL") who are not part of the Settlement Class covered by the February 13, 2015 Class Action Settlement Agreement (the "Settlement Agreement"), including those who have opted out of that agreement ("Plaintiffs").[1]

## PRELIMINARY STATEMENT

The Second Amended Complaint—weaving a far-fetched tale of conspiracy purporting to allege that the NFL failed to protect Plaintiffs from, and warn them about, the risks of repetitive head impacts—should be dismissed because Plaintiffs have failed to state a claim and because most Plaintiffs' claims are time-barred.

First, Plaintiffs' fraud-based claims fail because they do not allege—let alone with the requisite specificity—that Plaintiffs read, much less justifiably relied on, any of the NFL Defendants' alleged misstatements or omissions concerning football and neurocognitive injuries. They merely assert in boilerplate fashion that they "reasonably relied" on the alleged misstatements and omissions, but such a conclusory allegation is insufficient to plead reliance as a matter of law. In addition, many Plaintiffs no longer played NFL football at the time of the

---

[1]   Although the term "Plaintiffs" as used herein technically includes, in some cases, Plaintiffs who are the representatives or family members of former NFL players, for ease of reference the NFL Defendants will use the term "Plaintiffs" as though it refers to former players only, such as references to "Plaintiffs' NFL careers" or "Plaintiffs' retirement."

alleged misrepresentations, making reliance impossible by definition.  Further, Plaintiffs wholly fail—other than with boilerplate allegations insufficient as a matter of law—to allege, as they must, that the NFL Defendants intended to mislead NFL players such as Plaintiffs.  Nor do they allege specific facts in support of their conclusory claim that the NFL Defendants' alleged fraud in fact caused Plaintiffs' alleged injuries.  Plaintiffs' negligent misrepresentation claim suffers from these same pleading deficiencies, as Plaintiffs do not sufficiently plead reliance on any alleged representations by the NFL Defendants or that those representations caused their injuries.

Second, to the extent that Plaintiffs' negligence claims hinge on alleged breaches of the NFL Defendants' purported duties to the "football community," the "public," and "society" at large, a defendant owes a duty only to those who might foreseeably be harmed by its conduct, and Plaintiffs have alleged no facts to plead that the NFL Defendants owed, or undertook, a legal duty to "the public" broadly.  Therefore, the only cognizable negligence claim Plaintiffs can assert is one premised on a duty owed to them as NFL players, and, as explained in the NFL Defendants' memorandum of law in support of their motion to dismiss on preemption grounds, such a claim is preempted under well-settled principles of labor law, as recognized by numerous courts.

Third, Plaintiffs' negligent hiring and retention/supervision claims—asserting that the NFL was negligent in hiring and retaining the members of the NFL's MTBI Committee who allegedly conducted "incompetent and falsified studies"—fail, too.  Plaintiffs neither allege (as they must) that the MTBI Committee members were acting outside the scope of their employment when they engaged in the alleged fraudulent research nor allege that anything in the members' backgrounds placed the NFL on notice that they were likely to commit any sort of fraud whatsoever.

Fourth, Plaintiffs' "negligent marketing" claim fares no better.  Plaintiffs have failed to allege that the NFL Defendants owed Plaintiffs any duties with respect to marketing or that the NFL Defendants actually played a role in any marketing, much less any plausible connection between such unspecified marketing and the injuries football players purportedly sustained on the field.  Even if the NFL Defendants had somehow negligently marketed the game of football or some unspecified "products" by, for instance, targeting a particularly vulnerable class of consumers (which Plaintiffs do not allege), Plaintiffs' claims fail since they have offered no allegations explaining how this conduct caused their in-game injuries.

Finally, Plaintiffs' incoherent conspiracy claim is woefully deficient.  Plaintiffs fail to allege any facts supporting the existence of a conspiracy, such as meetings or unlawful agreements—the cornerstone of any conspiracy claim.  Instead, they attempt to hinge a claim for conspiracy on two entirely lawful and unrelated activities, including the formation of an organization for the establishment of football helmet standards in which the NFL Defendants had no financial, governing or ownership interest, and a legal trademark agreement between Riddell and NFLP.  Plaintiffs also fail to allege that the purported conspiracy was intended to harm them; in fact, they allege the opposite:  that it was motivated by economic self-interest.  Accordingly, Plaintiffs' conspiracy claim fails.

Beyond being inadequately alleged, the claims of almost all Plaintiffs are barred by the applicable statutes of limitations.  All of Plaintiffs' claims—asserting that they experienced head injuries during NFL play—seek redress for injuries they experienced during their NFL careers.  Yet, nearly all Plaintiffs ended their NFL careers more than six years before filing suit or any event that arguably might toll their claims, leaving their claims barred under all potentially applicable statutes of limitations.  Nor have Plaintiffs alleged facts showing why they

were unable to discover their alleged injuries sooner—all they offer are boilerplate allegations which fail to satisfy their pleading burden.

In sum, for the above reasons and many more, the Second Amended Complaint should be dismissed with prejudice.

## BACKGROUND

### A.     Parties

The NFL is an unincorporated association of 32 Clubs that promotes, organizes, and regulates the sport of professional football in the United States.[2]   (SAC ¶¶ 35–37); *see also Stringer* v. *Nat'l Football League, Inc.*, 474 F. Supp. 2d 894, 898 (S.D. Ohio 2007).   NFLP is a limited liability company organized under the laws of the State of Delaware and headquartered in New York that "serves as the representative of the [NFL and its Clubs] for the licensing of their trademarks and logos."   (SAC ¶ 39; *Licensing Pre-Qualification Terms & Conditions* (last visited Sep. 15, 2017), www.nfl.info/NFLConsProd/Welcome/cpAgreement.htm.)   Plaintiffs are former professional football players, the representatives of the estates of former players, and family members of former players with pending claims in this MDL who have opted out of the February 13, 2015 Class Action Settlement Agreement ("Settlement Agreement") and/or are not part of the Settlement Class, as of the date of this filing.   (*See* Order 1 n.1, Apr. 12, 2017, ECF No. 7477 (the "April 12 Order"); Timely Opt Out Requests Containing All Information Required by Section 14.2(a) or Otherwise Approved by the Court, NFL Concussion Settlement (last updated Aug. 24, 2017), https://nflconcussionsettlement.com/Documents.aspx (the "Opt Out List").)

---

[2]    This summary is based on the allegations of the Second Amended Complaint—the factual averments of which the NFL Defendants assume to be true for purposes of this motion to dismiss only.

B.      **Procedural Background**

          This MDL was established on January 31, 2012; since that time, over 300 additional cases, brought on behalf of approximately 5,000 former NFL players, have been included in the MDL.  *See In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 361 (E.D. Pa. 2015), *amended* No. 2:12-MD-02323-AB, 2015 WL 12827803 (E.D. Pa. May 8, 2015), *and aff'd* 821 F.3d 410 (3d Cir. 2016), *as amended* (May 2, 2016), *cert. denied* 137 S. Ct. 591 (2016), and *cert. denied* 137 S. Ct. 607 (2016) (the "NFL MDL Approval Opinion").[3]

          The settlement of the vast majority of these cases became final and effective on January 7, 2017.  (Settlement Agreement § 2.1(jj), ECF No. 6481-1.)  Pursuant to the terms of the Settlement Agreement, certain members of the Settlement Class—approximately 1% of retired players—requested to opt out of the Settlement Class.  *See* NFL MDL Approval Opinion, 307 F.R.D. at 369.  Since November 2014, 115 Settlement Class members—some as recently as August 2017—revoked their prior election to opt out and rejoined the Settlement Class.  (*See* Decl. of Orran L. Brown, Sr. ¶ 5, August 17, 2017, ECF No. 8286-1; Timely Opt Out Requests, Apr. 21, 2015, ECF No. 6507-1; Untimely Opt Out Requests, Apr. 21, 2015, ECF No. 6507-2; Timely Opt Out Requests, Nov. 3, 2014, ECF No. 6340-1; Untimely Opt Out Requests, Nov. 3, 2014, ECF No. 6340-2; Opt Out List, https://nflconcussionsettlement.com/Documents.aspx.) Currently, there are 95 opt-outs, only 44 of whom are party to pending lawsuits against the NFL

---

[3]     Effective February 24, 2012, the NFL Defendants and various Plaintiffs with then-pending lawsuits entered into an agreement (the "Tolling Agreement") that "tolled and suspended" the limitations periods applicable to certain Plaintiffs' claims as of February 24, 2012 (for those plaintiffs who had already filed claims or who would file actions in federal court within 150 days), or as of the date of filing (for any plaintiffs that filed actions in federal court after that 150-day window).  (Notice of Tolling Agreement ¶¶ 3–4, ECF No. 75.)  The agreement was clear that "[n]othing in the Tolling Agreement shall have the effect of reviving Claim(s), if any, that have expired under any Limitations prior to the Effective Date."  (*Id.* ¶ 2.)

Defendants in this MDL.   (*See* Opt Out List, https://nflconcussionsettlement.com/ Documents.aspx; *see also* Appendix A.)

On April 12, 2017, the Court entered an order providing, among other things, that Lead Counsel for the Opt-Out Plaintiffs could file a motion for leave to file a Second Amended Master Administrative Long-Form Complaint, and setting forth a briefing schedule for the NFL Defendants' motions to dismiss the Second Amended Complaint on preemption grounds and pursuant to Federal Rule of Civil Procedure 12(b)(6).   (April 12 Order.)   On July 18, 2017, the Court issued an order requiring Plaintiffs to file Short Form Complaints ("SFCs") on or before July 27, 2017.   (Order ¶ 1, July 18, 2017, ECF. No. 8030 (the "July 18 Order").)

On July 11, 2017, Plaintiffs filed the Second Amended Complaint, which supersedes the allegations, claims, theories of recovery and/or prayers for relief contained in Plaintiffs' previous complaints, as well as any later-filed complaints.   (April 12 Order ¶ 6.)[4]

---

[4]   The Second Amended Complaint also supersedes the claims of two former players (Danny Gorrer and Adrian Robinson Jr.) and their representatives and family members who, based on their dates of NFL play, were not eligible members of the Settlement Class and therefore did not formally opt out, but who have pending claims against the NFL Defendants in this MDL which, pursuant to the April 12 Order, are superseded by the Second Amended Complaint.   (*See* April 12 Order 1 n.1 & ¶ 6 (providing that SAC supersedes all claims in complaints by all "non-Settlement Class Member plaintiffs with pending claims" in this MDL, including any complaints coordinated or consolidated in this MDL after April 12, 2017); July 18 Order 1 n.1 & ¶ 2; Notice of Removal, *Robinson* v. *Nat'l Football League, Inc.*, No. 2:17-cv-2736 (E.D. Pa. June 16, 2017), ECF No. 1; Conditional Transfer Order (CTO-97), *Scroggins* v. *Nat'l Football League, Inc.*, No. 16-cv-2058 (E.D. Pa. Apr. 29, 2016), ECF No. 1.)   The *Robinson* plaintiffs have moved to remand their case to Pennsylvania state court, but if that motion is denied, they will remain in this MDL and their claims will be governed by the Second Amended Complaint.   Their claims should be dismissed for the reasons set forth in this memorandum of law and in the NFL Defendants' concurrently filed memorandum of law in support of their motion to dismiss the Second Amended Complaint on preemption grounds.

Footnote 1 of the Second Amended Complaint cryptically states that "any other plaintiffs' claims that remain against the NFL and NFL P Defendants are still governed by" the previous administrative long-form complaint, ECF No. 2642, and the class settlement approved on May 8, 2015.   (SAC ¶ 1 n.1.)   While the import of this footnote is unclear, the April 12 Order did not grant leave for any claims under that prior complaint to proceed against the NFL Defendants, and the NFL Defendants dispute any suggestion that any claims thereunder remain pending.   The April 12 Order also was clear that the Second Amended Complaint is not merely administrative, but in fact supersedes "all allegations, claims, theories of recovery and/or prayers for relief contained in complaints" previously or subsequently filed by Plaintiffs in cases coordinated and/or consolidated in this MDL, and that it "shall remain the controlling pleading," along with an individual Plaintiff's Short Form Complaint, if any individual Plaintiff's action is not terminated during MDL pretrial proceedings, including if such action is transferred or remanded back to the court from which it was transferred.   (April 12 Order ¶ 6.)

On or before July 27, 2017, 39 opt-outs filed SFCs purporting to assert claims against the NFL Defendants, providing certain personal information, the claims asserted, and dates of play.[5]  As the SFCs allege, most Plaintiffs ended their careers by the 2004 season or earlier.[6]

C.   **Second Amended Complaint**

The Second Amended Complaint—spanning 432 paragraphs and 100 pages—is long on rhetoric but short on substance.  Plaintiffs conclusorily allege that the NFL Defendants owed various duties, such as "a longstanding duty to protect players and the public from unreasonable harm," and "a duty to act in the best interests of the health and safety of the football community."  (SAC ¶¶ 16, 25, 51, 95.)  Although they acknowledge that the NFL made "[s]ome minimal rule changes" and that concussion-related research was ongoing, Plaintiffs nonetheless allege that the NFL breached its purported duties by, among other things, negligently or fraudulently "failing to impose safety regulations to prevent or mitigate long-term brain damage, and by failing to inform NFL players, athletes at every level, the medical community and the public of the risks associated with MTBIs."  (*Id.* ¶¶ 53, 143, 279.)

The Second Amended Complaint also alleges that one or both of the NFL Defendants breached their duties by "[n]egligently licens[ing] protective equipment. . . with the

---

[5]   This figure does not include SFCs filed by individuals who have since revoked their opt-out elections (4 of whom have failed to withdraw their SFCs) or by one individual whose opt-out request is deficient.  Despite this Court's instructions, eleven Plaintiffs with pending claims against the NFL Defendants in this MDL (Ronald Brown, Danny Gorrer, Joseph Iorio, Neal Olkewicz, Adrian Robinson, Jr., Edward Scott, J.T. Smith, Joel Steed, Jay and Natalie Tant, and Wesley Walls) failed to file SFCs against the NFL Defendants.  In addition, 17 of the 39 SFCs filed against the NFL Defendants by current opt-outs purport to include individuals, such as former players' wives, who did not opt out of the Settlement Class.  Certain individual Plaintiffs, through their SFCs, purport to bring additional claims beyond those alleged in the Second Amended Complaint, but those additional claims are insufficiently pleaded and time-barred, and therefore should be dismissed, for the reasons set forth below.

[6]   The NFL Defendants have attached as Appendix A to the Declaration of Douglas M. Burns (filed in support of this motion) a chart (cited as "Appendix A") listing all opt-outs and certain relevant information, including dates of play and whether they filed SFCs against the NFL Defendants.

knowledge these helmets could not protect against subclinical or MTBIs" (*id.* ¶ 16) and negligently marketing "the game and their products as safe" (*id.* ¶ 354), although Plaintiffs never allege how the NFL Defendants owed any related duties or how the breach of such duties caused Plaintiffs' injuries.  Plaintiffs allege that the NFL negligently hired and retained unqualified persons for a Mild Traumatic Brain Injury Committee ("MTBI Committee") who "[misled] the Plaintiffs" about "the risks associated with repetitive head impacts" (*id.* ¶ 377), but do not allege how the NFL knew or should have known that the relevant individuals had a propensity for fraud or other misconduct.

Plaintiffs further allege—based on pages of conjecture and conspiracy theory rather than fact—that the NFL Defendants and various Riddell entities[7] together engaged in fraud because they "knew or should have known of [a] growing body of scientific evidence" purportedly "link[ing] brain trauma to long-term neurological problems for decades."  (*Id.* ¶¶ 10–11.)  Plaintiffs cite a handful of alleged misstatements by the MTBI Committee, the NFL's 2007 "concussion pamphlet," and certain statements by NFL Commissioners Paul Tagliabue and Roger Goodell purportedly denying or minimizing the neurocognitive risks of playing football (*id.* ¶¶ 282; *see also id.* ¶¶ 161, 235, 241, 279–82, 295, 306), but plead no facts alleging that or how such misstatements were made with fraudulent intent.  Similarly, Plaintiffs claim, without alleging who at the NFL was responsible for orchestrating such a decades-long scheme, how it was carried out, or how it was intentional, that the NFL Defendants and Riddell fraudulently concealed "the decades long scientific research" that purportedly linked repetitive head trauma to latent brain disease.  (*Id.* ¶ 398.)  Plaintiffs, however, allege that much of the research cited by

---

[7]    In a separate complaint involving nearly identical allegations, which Plaintiffs have requested leave to file, Plaintiffs have named BRG Sports, Inc. and seven of its corporate subsidiaries and affiliates (collectively, "Riddell") in connection with their manufacture of helmets, asserting claims for negligent marketing, fraud, fraudulent concealment, civil conspiracy, wrongful death and survival, loss of consortium, and punitive damages.  (Second Am. Master Admin. Long-Form Compl. Against Riddell Defs., ECF No. 7762-2.)

them in support of this theory—none of which purports to establish a causal relationship between football and alleged neurological deficits—has long been in the public domain.  (*See id.* ¶¶ 91, 234.)  Plaintiffs also never allege that they read, much less relied on, any of the alleged misstatements or omissions; they merely assert in boilerplate fashion that they "reasonably relied upon Defendants' knowing and affirmative misrepresentations and/or active concealment."  (*Id.* ¶ 25; *see also id.* ¶¶ 347, 366, 367, 392–393.)

Based on an incoherent aggregation of irrelevant and unconnected events, Plaintiffs allege that this supposed fraud was the focus of a massive decades-long conspiracy between the NFL Defendants and various Riddell entities, "international corporations such as Honda," and even the U.S. government to conceal "the decades long scientific research" that purportedly linked repetitive head trauma to latent brain disease.  (*Id.* ¶¶ 45, 398.)  Plaintiffs also allege that the NFL worked with the tobacco industry to perpetuate this scheme (relying solely on baseless snippets from newspaper articles that establish no such connection and were hotly contested in the press by the NFL).  (*See id.* ¶¶ 43, 45, 190–91.)

Plaintiffs' conclusory conspiracy allegations do not come close to alleging, as they must, that the NFL Defendants and Riddell (or anyone else for that matter) actually entered into an agreement to commit any unlawful act, much less that they committed any overt act in furtherance of that supposed agreement.  Other than naked allegations that, beginning in 1965, "Defendants and others agreed to conceal, omit, and misrepresent material information" about a purported "link between repetitive head trauma and chronic brain damage" (*id.* ¶ 44; *see also id.* ¶ 153 (alleging that Riddell and the NFL Defendants "agreed to engage in a long-term plan to conceal material information about football's link to CTE and other neurological/neurobehavioral conditions, while doing so in the name of solving safety problems

9

for the game's players")), Plaintiffs do not allege anywhere in their 100-page pleading, any facts about that supposed agreement or the specific ways in which the scheme was supposedly conducted.   Instead, Plaintiffs hinge their conspiracy solely on the 1967 formation of the National Operating Committee on Standards for Athletic Equipment ("NOCSAE"), a "self-regulating" "non-profit organization" that establishes football helmet safety standards, in which neither the NFL nor Riddell has any financial, governing, or ownership interest (*id.* ¶¶ 116, 119) and a lawful 1989 trademark licensing agreement between Riddell and the NFL permitting the use of the NFL marks on Riddell helmets and the sale of mini replica helmets (*id.* ¶¶ 152–57).

Absent any factual allegations in support, Plaintiffs claim that as a purported "direct and proximate result" of all of these supposed actions, they "are at an increased risk of developing, or have already developed, latent neurodegenerative diseases or conditions including, but not limited to, dementia, ALS, CTE, Alzheimer's disease, and Parkinson's disease, and their debilitating symptoms, as well as any cognitive, mood, or behavioral conditions."  (*Id.* ¶¶ 335, 405, 408.)

Based on their allegations, Plaintiffs purport to assert claims against the NFL Defendants for negligent marketing (Count III), fraud (Count VIII), civil conspiracy (Count IX), fraudulent concealment (Count X), wrongful death and survival, loss of consortium (Counts XI–XIII), and punitive damages (Count XIV).  In addition, Plaintiffs purport to assert claims for declaratory relief (Count I), negligence (Count II), negligent misrepresentation (Count V), negligent hiring, and negligent retention/supervision (Counts VI–VII) against the NFL, and a separate claim for negligence against NFLP (Count IV).  (*Id.* ¶¶ 332–432.)  Plaintiffs seek

declaratory relief, "the full measure of damages allowed under applicable law," and punitive damages.  (*Id.* ¶¶ 332–35, 371, 379, 387, 396, 403, 409, 414, 419, 424–32.)[8]

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  In applying this standard of facial plausibility, the Court accepts all factual allegations as true, but it does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Id.*

For the reasons below, none of the Second Amended Complaint's claims— supported solely by conclusion and boilerplate—is adequately pled.  Moreover, the claims of the majority of Plaintiffs claims are time-barred under even the most permissive statutes of limitations.[9]

---

[8]   As noted above, certain Plaintiffs purport to assert additional causes of action or allegations in their SFCs, which the NFL Defendants have addressed herein.  *See infra* nn. 10, 12, 15, 16, 17.

[9]   Although Plaintiffs do not allege under which state's laws their purported claims arise (*see, e.g.*, SAC ¶¶ 16, 132), the elements of all of their claims are substantially similar across the various states and the Court need not conduct a choice of law analysis at this stage.  *See, e.g.*, 57A Am. Jur. 2d *Negligence* § 71 (2017) (listing negligence elements and citing cases from numerous jurisdictions); 27 Am. Jur. 2d *Employment Relationship* §§ 372, 374, 375 (2017) (negligent hiring, retention, and supervision); 37 C.J.S. *Fraud* §§ 12, 28 (2017) (fraudulent misrepresentation and concealment); 37 Am. Jur. 2d *Fraud and Deceit* § 29 (2017) (negligent misrepresentation); 16 Am. Jur. 2d *Conspiracy* § 51 (2017) (conspiracy); 22A Am. Jur. 2d *Death* §§ 3, 273 (2015) (wrongful death and survival actions); 41 Am. Jur. 2d *Husband and Wife* § 203 (2017) (loss of consortium); 1 Michael Dore, *Law of Toxic Torts* § 6:38 (2017) (negligent marketing, among jurisdictions that recognize it as a claim).  While the NFL Defendants cite primarily to Pennsylvania law (the law of the forum) and New York law (the NFL Defendants' domicile and likely "center of gravity" for the alleged wrongful conduct) for ease of discussion of these claims, the NFL Defendants do not concede that either state's law governs any of Plaintiffs' purported claims or that the NFL Defendants are restricted only to those defenses available under those states' laws, and reserve all rights and arguments with respect to choice of law.

Further, Plaintiffs' wrongful death, survival action, and loss of consortium claims generally are derivative of their other claims and they cannot stand independently and must be dismissed where, as here, the underlying

# I.
# PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE NFL DEFENDANTS

## A.      Plaintiffs' Fraud-Based Claims are Fatally Flawed

All of Plaintiffs' fraud-based claims—for fraud, fraudulent concealment, and negligent misrepresentation—are deficient as a matter of law and should be dismissed.

### 1.      Plaintiffs Fail to State a Claim for Fraud or Fraudulent Concealment

Plaintiffs do not adequately allege a claim for fraud, whether founded on an alleged misrepresentation or an omission.

To plead a claim for fraud, Plaintiffs must allege a false representation of material fact, knowledge by defendant that it was false when made, intent to mislead plaintiff into relying on it, justifiable reliance by plaintiff, and resulting injury.  *Bannister* v. *Agard*, 125 A.D.3d 797, 798 (N.Y. App. Div. 2015); *Bortz* v. *Noon*, 729 A.2d 555, 560 (Pa. 1999); *see also EGW Partners, L.P.* v. *Prudential Ins. Co. of Am.*, Nos. 0336, CONTROL 042340, 2001 WL 1807416, at *5 (Pa. Ct. C.P. June 22, 2001) (noting that "Pennsylvania and New York require proof of substantially identical elements for fraudulent misrepresentation").   A claim for fraudulent concealment requires the same elements, except that the complaint must allege that defendant intentionally concealed a material fact, and that defendant had "a duty to speak," as "mere silence is not sufficient."[10]  *Wilson* v. *Donegal Mut. Ins. Co.*, 598 A.2d 1310, 1316 (Pa. Super.

---

claims fail.  *See Corcoran* v. *N.Y. Power Auth.*, 202 F.3d 530, 541 (2d Cir. 1999) ("It is a condition precedent to wrongful death and survival actions that the decedent's claim must have been viable at the time of death."); *Gerzog* v. *London Fog Corp.*, 907 F. Supp. 590, 605 (E.D.N.Y. 1995) ("loss of consortium is a derivative claim which does not exist separate and apart from the injured spouse's claim"); *Leidy* v. *Borough of Glenolden*, 277 F. Supp. 2d 547, 570 (E.D. Pa. 2003), *aff'd sub nom. Liedy* v. *Borough of Glenolden*, 117 F. App'x 176 (3d Cir. 2004) (same for wrongful death and survival); *Laskowski* v. *U.S. Dep't of Veterans Affairs*, 918 F. Supp. 2d 301, 331 (M.D. Pa. 2013) (same for loss of consortium); *see also* Dan B. Dobbs, et al., *The Law of Torts* §§ 372, 392 (2d ed. 2011) (same for wrongful death, survival, and loss of consortium).  Accordingly, Plaintiffs' wrongful death, survival action, and loss of consortium claims fail for the same reasons their substantive claims fail, as described below, and should be dismissed.

[10]   There is authority in Pennsylvania distinguishing between a claim of active concealment and a claim based on fraudulent omissions that suggests that active concealment claims do not require a duty to disclose.  Such claims, however, only apply where defendants affirmatively deceive or obstruct plaintiffs, such as where a

Ct. 1991); *see FNF Touring LLC* v. *Transform Am. Corp.*, 111 A.D.3d 401, 402 (N.Y. App. Div. 2013).

It is equally well settled that Plaintiffs must allege "with particularity the circumstances constituting fraud." Fed R. Civ. P. 9(b); *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Plaintiffs therefore must plead "all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the 'who, what, when, where and how' of the events at issue." *In re Rockefeller*, 311 F.3d at 217; *see Floyd* v. *Brown & Williamson Tobacco Corp.*, 159 F. Supp. 2d 823, 833 (E.D. Pa. 2001) (dismissing fraud and concealment claims based on "vague and conclusory" allegations).

Plaintiffs' fraud-based claims here fall far short.

First, Plaintiffs fail to allege any particularized facts showing how they justifiably relied on any statements or omissions made by the NFL Defendants. Rather, Plaintiffs merely

---

defendant "paints over and so conceals a defect in a chattel or a building that he is endeavoring to sell to the plaintiff, and thus induces the plaintiff to buy it in ignorance of its defective character." Restatement (Second) of Torts § 550, cmt. a–b (Am. Law Inst. 1977) (defining liability "for pecuniary loss" where "[o]ne party to a transaction . . . intentionally prevents the other from acquiring material information"); *see Gaines* v. *Krawczyk*, 354 F. Supp. 2d 573, 587 (W.D. Pa. 2004) ("A cause of action for fraudulent concealment based on Pennsylvania's common law and/or [Restatement (Second) of Torts § 550] is limited to contracts and other forms of contractual relationships between specific parties . . . [a]nd even in such settings a duty to speak does not normally arise between the parties in the absence of a confidential or fiduciary relationship." (citations omitted)); *see also Youndt* v. *First Nat. Bank of Port Allegany*, 868 A.2d 539, 549–50 (Pa. Super. 2005) (quoting Restatement (Second) of Torts § 550, cmt. a, and dismissing fraudulent concealment claim where the complaint did not allege that defendant "made any attempt to conceal the condition of the sewer system" it sold to plaintiff); *Nat'l Bldg. Leasing, Inc.* v. *Byler*, 381 A.2d 963, 966 (Pa. Super. Ct. 1977) (finding active concealment where prior to a pre-purchase property inspection, defendant demolished several buildings, put their waste materials in a hole, and planted vegetation over the hole). This theory is inapplicable to Plaintiffs' claims here, which do not arise out of any transaction between Plaintiffs and the NFL Defendants, and further which fail to allege in any non-conclusory fashion that the NFL Defendants affirmatively and in bad faith "intentionally prevent[ed] [Plaintiffs] from acquiring material information" concerning the purported link between MTBI and CTE or engaged in "deceptive acts and contrivances" to prevent them from making an investigation. *Gnagey Gas & Oil Co.* v. *Pa. Underground Storage Tank Indemnification Fund*, 82 A.3d 485, 500–01 (Pa. Commw. Ct. 2013) (citation omitted). At most, Plaintiffs' factual allegations sound in nondisclosure, which requires a legal duty. *Id.* Plaintiffs appear to recognize this, as they purport to allege a "duty to disclose." (SAC ¶ 363.) Although Plaintiff Ted Johnson purports to assert an "intentional concealment" claim through his SFC, he has not alleged any facts to support such a claim, nor has he shown that Pennsylvania law would apply to the claims of a Texas resident who brought suit in Florida and lived and played for the NFL in Massachusetts. (Johnson Opt Out Pl. Short Form Compl. Against NFL and NFLP ¶¶ 5, 9, July 18, 2017, ECF No. 8027.)

offer conclusory boilerplate: that they "justifiably relied on Defendants' fraudulent omissions and misrepresentations . . . to their detriment." (SAC ¶ 392; *see also id.* ¶¶ 25, 366–67, 392–93.) But "simply averring that Plaintiff justifiably relied on Defendant's misrepresentation is not enough to comply with the specificity requirements of pleading fraud." *Premium Assignment Corp.* v. *City Cab Co., Inc.*, No. 1135, 2005 WL 1706976, at \*1 (Pa. Ct. C.P. July 15, 2005). Plaintiffs do not allege, as they must, how they "changed their position or otherwise relied upon any purported misrepresentations or omissions to their detriment." *Waggoner* v. *Caruso*, 68 A.D.3d 1, 6 (N.Y. App. Div. 2009), *aff'd* 14 N.Y.3d 874 (2010); *see also Tuosto* v. *Philip Morris USA Inc.*, No. 05-cv-9384, 2007 WL 2398507, at \*9 (S.D.N.Y. Aug. 21, 2007) (dismissing fraud claim for failure to adequately plead reliance).

        To that end, Plaintiffs allege certain misstatements, yet Plaintiffs nowhere allege that they even saw or read the MTBI Committee's publications, heard or read any statement by anyone associated with the Committee, received or reviewed the 2007 concussion pamphlet, or heard statements by Commissioners Goodell and Tagliabue regarding concussions, let alone relied on them. *See Tuosto*, 2007 WL 2398507, at \*9 (dismissing fraud claim where plaintiff failed to allege that she saw allegedly fraudulent advertisements). Plaintiffs' naked allegations, absent any factual details, that they "justifiably relied . . . to their detriment" are insufficient. *See Floyd*, 159 F. Supp. 2d at 833 (dismissing fraud claim for failure to adequately plead reliance).

        In addition, to the extent that Plaintiffs' NFL careers ended before the MTBI Committee was even formed in 1994, or before issuance of the 2007 concussion pamphlet,[11] reliance on that pamphlet or on statements made by the MTBI Committee regarding return to play would have been, literally, impossible. *See Abbasi* v. *Herzfeld & Rubin, P.C.*, No. 94-cv-

---

[11]    *See* Appendix A (reflecting seasons during which Plaintiffs played in the NFL).

2809, 1995 WL 303603, at *7 (S.D.N.Y. May 17, 1995) ("[S]ince the alleged misrepresentation was made after plaintiff's employment was terminated, it is difficult to understand how plaintiff could have relied upon the misrepresentation to his detriment."); *see also Jeter* v. *Brown & Williamson Tobacco Corp.*, 113 F. App'x 465, 469 (3d Cir. 2004) (affirming dismissal of claims requiring justifiable reliance where plaintiff presented no evidence he actually saw or relied on defendant's advertisements or other representations). Plaintiffs' conclusory allegations that the purported misrepresentations made after their careers (in some cases, decades after) caused them to delay taking "protective measures" (SAC ¶ 407) is also insufficient to plead reliance. Not only do Plaintiffs fail to allege at all (let alone with the requisite particularity) how they delayed in planning for the future, but they also are completely silent as to what "measures" they would have taken or, indeed, what specific "action[s they] would not have engaged in or forwent but for the misrepresentations." *Tiberius Capital, LLC* v. *PetroSearch Energy Corp.*, No. 09-cv-10270, 2011 WL 1334839, at *6 (S.D.N.Y. Mar. 31, 2011).

Second, Plaintiffs fail to allege—other than in conclusory fashion—that the NFL Defendants intended to mislead Plaintiffs. (*See, e.g.*, SAC ¶ 405 ("Defendants knew, intended to induce and expected that Plaintiffs would reasonably rely on their silence and fraudulent concealment.").) It is not sufficient, however, to merely "ascribe the acts of the defendant . . . to evil motive with an attempt to deceive and mislead." *Muhammad* v. *Strassburger*, 587 A.2d 1346, 1352 (Pa. 1991). Rather, "[u]nless the plaintiff can more fully describe what facts support the [defendant's] evil motives," plaintiffs' allegations will be considered "nothing more than unfounded accusations which have no apparent basis in fact." *Id.*; *see also Giant Group, Ltd.* v. *Arthur Andersen LLP*, 2 A.D.3d 189, 190 (N.Y. App. Div. 2003) ("[N]egligence claims cannot

be deemed fraud solely because of the nomenclature used and conclusory allegations of fraud."). That is the case here.

Nowhere do Plaintiffs allege facts showing that the NFL Defendants' alleged misstatements and omissions were made with the knowledge that they were false (as opposed to accurate, good-faith reflections of the unsettled scientific consensus on these issues), much less specifically targeted to deceive NFL players into believing that playing professional football—"an inherently violent sport," as this Court has noted—would be a low-risk endeavor.  NFL MDL Approval Opinion, 307 F.R.D. at 394.  For example, Plaintiffs provide no facts to allege that statements by Commissioner Goodell expressing the NFL's goal of keeping players informed and managing concussions conservatively (SAC ¶¶ 280–81) were false, much less that they were made with the intention to mislead Plaintiffs.  Indeed, Plaintiffs even acknowledge that the NFL explained that research on concussions was ongoing (*see id.* ¶ 279), thus undercutting the notion that any of its representations were intended as blanket denials of any alleged risks.

Third, Plaintiffs do not allege with particularity how the NFL's purported misrepresentations and omissions caused their injuries.  Again, they offer only boilerplate—"[a]s a direct and proximate result of the Defendants' fraud by omission and failure to warn, Plaintiffs have suffered and continue to suffer serious injuries" (*see id.* ¶ 395)—that is insufficient to state a claim for fraud or fraudulent concealment.  *See, e.g.*, *Gregor* v. *Rossi*, 120 A.D.3d 447, 448 (N.Y. App. Div. 2014) ("The lack of specificity . . . renders any claim of the required loss causation conclusory."); *Waggoner*, 68 A.D.3d at 6 ("The required detail is . . . lacking with respect to causation because the complaint does not set forth how defendants' conduct caused plaintiffs [losses]."); *Floyd*, 159 F. Supp. 2d at 833 (dismissing fraud and fraudulent concealment claims based on alleged conspiracy to conceal information about harmful effects of tobacco for

failure to allege "causal link between hidden documents and his injuries").  In addition, as discussed above, to the extent that the alleged misrepresentations post-dated Plaintiffs' careers, there can be no causal link between those statements and Plaintiffs' injuries as a matter of law. *See Egli* v. *Strimel*, No. 14-cv-6204, 2015 WL 5093048, at *6 (E.D. Pa. Aug. 28, 2015) ("To withstand a Rule 12(b)(6) motion to dismiss a fraud claim brought under Pennsylvania law, a plaintiff must allege . . . the resulting injury was proximately caused by the reliance.").

## 2. Plaintiffs Fail to State a Claim for Negligent Misrepresentation

Plaintiffs' claim for negligent misrepresentation also fails.  To state a claim for negligent misrepresentation, Plaintiffs must demonstrate "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *MatlinPatterson ATA Holdings LLC* v. *Fed. Express Corp.*, 87 A.D.3d 836, 840 (N.Y. App. Div. 2011) (citing *J.A.O. Acquisition Corp.* v. *Stavitsky*, 863 N.E.2d 585, 587 (N.Y. 2007)); *see also Bortz*, 729 A.2d at 561 (setting forth elements of claim).

Here, Plaintiffs' claim for negligent misrepresentation fails for many of the same reasons that Plaintiffs' claims for fraud and fraudulent concealment fail:  Plaintiffs do not adequately plead with specificity if (or how) they justifiably relied on any representations by the NFL Defendants—which, for many Plaintiffs, occurred after their careers ended—or how their injuries were caused by any such misrepresentations.  *See, e.g.*, *Colasacco* v. *Robert E. Lawrence Real Estate*, 68 A.D.3d 706, 708 (N.Y. App. Div. 2009) (dismissing negligent misrepresentation claim for failure "to allege circumstances under which the plaintiffs' reliance upon . . . alleged misrepresentations could be considered reasonable or justifiable"); *Naughright* v. *Weiss*, 826 F. Supp. 2d 676, 689 (S.D.N.Y. 2011) (dismissing, pursuant to Fed. R. Civ. P. 9(b), negligent misrepresentation claim that failed to specify "the statements [plaintiff] claims

were false or misleading").   Indeed, Plaintiffs' bald allegations are insufficient under even a more lenient general pleading standard.  *See Greencort Condo. Ass'n* v. *Greencort Partners*, 2004 WL 1088758, at *1 (Pa. Ct. C.P. Apr. 30, 2004) (dismissing negligent misrepresentation claim for failure to allege material misrepresentations that defendant knew or should have known were false or to allege that plaintiff relied upon such misrepresentations to its detriment); *Floyd*, 159 F. Supp. 2d at 834 (dismissing negligent misrepresentation claim which "contain[ed] no allegations whatsoever concerning specific negligent misrepresentations").

**B.**     **Plaintiffs' Negligence-Based Claims Are Fatally Flawed**

Plaintiffs' negligence-based claims—for negligence, negligent hiring and supervision/retention, and negligent marketing—are also deficient as a matter of law and should be dismissed.

### 1.     Plaintiffs Fail to State a Claim for Negligence

To state a claim for negligence, plaintiff must allege that defendant owed plaintiff a duty, which defendant breached, and which breach proximately caused plaintiff's injury.  57A Am. Jur. 2d *Negligence* § 71 (citing cases from numerous jurisdictions); *see also Lombard* v. *Booz-Allen & Hamilton*, 280 F.3d 209, 215 (2d Cir. 2002); *Martin* v. *Evans*, 711 A.2d 458, 461 (Pa. 1998).  As an initial matter, to the extent that Plaintiffs' negligence claims are premised on overbroad duties allegedly owed to the general "public" or the "football community" (SAC ¶¶ 51–52, 95, 339), such allegations are insufficient as a matter of law.

First, the NFL Defendants do not owe some wide-ranging duty to protect the health and safety of the "public," the "football community," or "all members of society."  (*See, e.g.*, *id.* ¶¶ 16, 51.)   It is long settled that negligence-based duties are strictly limited to a determinate person or class of persons to whom injury is the foreseeable result of defendant's actions.  *See Palsgraf* v. *Long Island R.R.*, 162 N.E. 99, 101–02 (N.Y. 1928); *see also Zilka* v.

18

*Sanctis Const., Inc.*, 186 A.2d 897, 901 (Pa. 1962) (defendant not negligent because "it could not have been foreseen that there was any likelihood of harm to [plaintiff]" (*citing Palsgraf*)); *Waters* v. *New York City Housing Auth.*, 69 N.Y.2d 225, 229–30 (N.Y. 1987) (noting that "[t]he question of the scope of an alleged tort-feasor's duty is, in the first instance, a legal issue for the court to resolve," and finding that a landlord did not owe a duty to member of the public).  This limitation is necessary "to avoid subjecting an actor to limitless liability to an indeterminate class of persons conceivably injured by any negligence in that act."  *Hamilton* v. *Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1060 (N.Y. 2001); *see Mazzillo ex rel. Estate of Mazzillo* v. *Banks*, No. 3742-C, 1987 WL 754879, at *2 (Pa. Ct. C.P. Feb. 6, 1987) ("Duties do not extend to the world at large, but are defined and limited by considerations such as the relationship between the parties.").

Notwithstanding that fundamental tenet of negligence law, Plaintiffs allege that the NFL Defendants, as "guardian[s] of player safety," owed a duty to "the athletic community, the medical community and the public at large" (SAC ¶ 52) without even attempting to allege how the NFL Defendants owed any legal duty to that limitless class of individuals.  Instead, Plaintiffs resort to arguing that such a duty stems from the NFL Defendants' alleged voluntary undertakings—including their regulation of football and study of neurocognitive injuries.  (*Id.* ¶¶ 16, 33.)  However, "a defendant can only be burdened with the obligations actually undertaken," *Stern Family Real Estate P'ship* v. *Pharmacists Mut. Ins. Co.*, No. 06-cv-130, 2007 WL 951603, at *5 n.12 (W.D. Pa. Mar. 27, 2007), and try as they might, Plaintiffs cannot transform the NFL Defendants' alleged duty as the governing body of professional football, or even its alleged undertaking to research head injuries, into a broad duty to protect the safety of Plaintiffs as members of the general public or to disclose its research to the public.  *See id.*; *Bell* v. *Hutsell*,

19

955 N.E.2d 1099, 1104 (Ill. 2011) ("Under a voluntary undertaking theory . . . , the duty of care to be imposed upon a defendant is limited to the extent of the undertaking. . . . The theory is narrowly construed."); *cf. Mehr* v. *Fed'n Internationale de Football Ass'n*, 115 F. Supp. 3d 1035, 1066 (N.D. Cal. 2015) (dismissing negligence claim relating to head injuries in soccer where, despite allegations that defendant had, as "governing body of soccer in all its forms in the United States," undertaken a duty to protect plaintiffs, "[p]laintiffs have identified no facts . . . that support a claim that U.S. Soccer has specifically undertaken to take actions to eliminate risks inherent in the sport of soccer or to reduce the risk of injury from improper concussion management").

Consequently, the only possible negligence claim that Plaintiffs could allege is one based on a purported duty owed to them as NFL players—a duty which, as argued in detail in the NFL Defendants' memorandum of law in support of their motion to dismiss on preemption grounds, arises under the CBAs or requires interpretation of their terms, and thus is preempted, as numerous courts have held.[12]

### 2.    Plaintiffs Fail to State a Claim for Negligent Hiring and Negligent Retention/Supervision

Plaintiffs' claims based on the NFL's purported negligence in hiring and supervising the MTBI Committee members fare no better.

To state these claims, plaintiff must plead the elements of negligence, that defendant employed the alleged tortfeasor, that defendant knew or should have known of the employee's propensity for the conduct that caused the injury, and (with regard to negligent

---

[12]   Plaintiff Ted Johnson purports to assert his claims based only on purported duties owed to him "as a member of the general public." (Johnson Opt Out Pl. Short Form Compl. Against NFL and NFLP ¶ 4, July 18, 2017, ECF No. 8027.)  As discussed above, no such wide-ranging duty exists, nor has Johnson alleged facts supporting the existence of such a duty, and so his negligence claims fail on that basis alone.  Alternatively, any purported duty owed to him by the NFL Defendants would be in his capacity as an NFL player, not as a member of the general public, and so his claims are preempted and should be dismissed.

hiring) that the employer failed to investigate the prospective employee notwithstanding knowledge of facts that would lead a reasonably prudent person to investigate. *Bouchard* v. *N.Y. Archdiocese*, 719 F. Supp. 2d 255, 260–61 (S.D.N.Y. 2010); *Dempsey* v. *Walso Bureau, Inc.*, 246 A.2d 418, 419–20 (Pa. 1968). Importantly, such claims lie only where the employee was acting *outside* the scope of his or her employment at the time the employee engaged in the alleged misconduct. *See Bouchard*, 719 F. Supp. 2d at 260; *Dempsey*, 246 A.2d at 419–20. Plaintiffs' negligent hiring and supervision/retention claims do not come close to alleging these elements.

First, Plaintiffs fail to allege that the MTBI Committee members—whom the NFL Defendants purportedly hired, retained, and supervised negligently—were acting "outside the scope of [their] employment" when they engaged in the conduct underlying Plaintiffs' claims. *Dempsey*, 246 A.2d at 419–20. In fact, Plaintiffs allege the opposite: that the MTBI Committee's alleged misconduct arose out of its "study [of] the issue of head injuries in the NFL" performed "under the auspices and with the imprimatur of the NFL" itself. (SAC ¶¶ 163, 384.) Thus, their claim for negligent hiring or retention/supervision fails for that reason alone. *See Coville* v. *Ryder Truck Rental, Inc.*, 30 A.D.3d 744, 745 (N.Y. App. Div. 2006) (stating that "no claim may proceed against the employer for negligent hiring or retention" where employee is acting within scope of employment); *In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, MDL No. 1712, 2007 WL 2541216, at *29 (E.D. Pa. Aug. 29, 2007) (dismissing negligent supervision claim where complaint alleged that employees were acting within the scope of their employment); *Half* v. *Metro. Life Ins. Co.*, 65 Pa. D. & C. 4th 246, 260 (Pa. Ct. C.P. 2003) (dismissing plaintiff's fraud and misrepresentation-based negligent supervision claim where employees were acting within the scope of their employment).

Second, Plaintiffs' negligent hiring and retention/supervision claims fail for want of specificity.  Plaintiffs allege that the NFL was negligent in hiring and retaining/supervising unnamed "members of the MTBI Committee" or the "controlling members of the MTBI Committee" (SAC ¶¶ 381, 385), but they fail to identify, as they must, most of the relevant persons, much less any alleged propensity for misconduct on their behalf.  *See Chagnon* v. *Tyson*, 11 A.D.3d 325, 326 (N.Y. App. Div. 2004) (affirming dismissal of negligent hiring claim "in the absence of allegations identifying the employees involved. . . .").  As for those they do identify, in particular MTBI Committee members Drs. Elliot Pellman and David Viano, Plaintiffs do not plausibly allege any affirmative misconduct by Drs. Pellman or Viano sufficient to support a negligent hiring or supervision/retention claim—such as providing prior false testimony or issuing false research as a witness or industry expert—that would put the NFL on notice of the "propensity for the sort of conduct that caused the injury."  *Sheila C.* v. *Povich*, 11 A.D.3d 120, 129–30 (N.Y. App. Div. 2004); *see Sabo* v. *Lifequest, Inc.*, No. 95-cv-3757, 1996 WL 583169, at *4 (E.D. Pa. Oct. 8, 1996) (dismissing negligent retention claim where "[p]laintiff . . . failed to present a scintilla of evidence that, had defendants conducted a more thorough investigation, they would have discovered" the employee's alleged harmful propensity).  At most, Plaintiffs allege that Drs. Pellman and Viano were "NFL and Riddell insiders and professional expert witnesses," and therefore "incompetent."  (*See* SAC ¶¶ 171–73, 384.)  The mere knowledge that someone was an "insider" or "professional expert witness," however, would not put the NFL Defendants on notice that the person would allegedly produce distorted, false, or biased scientific research, much less that they were "incompetent"[13]—indeed, such a status would lead the NFL to conclude the contrary, belying Plaintiffs' claim here.

---

[13]   Puzzlingly, in support of their claim of his alleged "incompetence," Plaintiffs note that Dr. Pellman provided personal medical care to then-Commissioner Tagliabue.  (SAC ¶ 172.)  For the NFL Commissioner to trust Dr.

In addition, other than the unsupported, conclusory allegation that the NFL "hired Elliott Pellman and David Viano and the other members of the MTBI Committee" (SAC ¶ 373), Plaintiffs do not allege that the members of the Committee were NFL employees.  To the contrary, they allege that several Committee members were employed by *other* unaffiliated entities (*id.* ¶ 172) and that the Committee was conducting commissioned studies funded by the NFL (*id.* ¶ 163).  The NFL cannot be considered an employer based on such indirect funding, and so Plaintiffs have failed to allege yet another element of their claims.  *See Ahluwalia* v. *St. George's Univ., LLC*, 63 F. Supp. 3d 251, 263 (E.D.N.Y. 2014) (dismissing negligent hiring/training/supervision claim for failure to allege that the alleged tortfeasors were employed by defendants).

Third, Plaintiffs' bare allegations also fail to plead that the MTBI Committee members committed any tort.  Plaintiffs have not alleged facts sufficient to allege that the MTBI Committee members owed any duty of care to Plaintiffs, much less that the allegedly misleading research proximately caused Plaintiffs' injuries.  Nor have they alleged that they reasonably relied on—or even saw—any of the MTBI Committee's research, which was published many years after most Plaintiffs ended their NFL careers.  *See Primeau* v. *Town of Amherst*, 303 A.D.2d 1035, 1036 (N.Y. App. Div. 2003) ("[A]n underlying requirement in actions for negligent [hiring or retention] is that the employee is individually liable for a tort or guilty of a claimed wrong against a third person, who then seeks recovery against the employer."); *IRPC, Inc.* v. *Hudson United Bancorp*, No. 0474, 2002 WL 372945 (Pa. Ct. C.P. Jan. 18, 2002) (stating that "an intentional wrong of the employee" is an "underlying element[]" of a negligent hiring and supervision/retention claim); *see also Perez* v. *State*, No. 112317, 2011 WL 5528963, at *7

Pellman's skill and judgment to that degree completely undercuts any suggestion that the NFL Defendants should have known of Dr. Pellman's alleged "incompetence."

(N.Y. Ct. Claims Aug. 5, 2011) (dismissing negligent hiring claim where "there was no evidence that [the employee] committed the torts upon which the [negligent hiring] cause of action is based").

Finally, Plaintiffs' negligent hiring and retention/supervision claims fail because they do not sufficiently allege that the NFL's purported negligence in hiring, retaining, or supervising the members of the MTBI Committee proximately caused their injuries—indeed, to the extent that Plaintiffs ended their NFL careers by the time that the MTBI Committee had even formed in 1994, or before 2003, when the first allegedly misleading MTBI Committee paper was published (*see* SAC ¶ 234), no causal nexus could possibly exist.[14]  *See Estevez-Yalcin* v. *Children's Vill.*, 331 F. Supp. 2d 170, 177 (S.D.N.Y. 2004) (dismissing claims because "the injuries caused by [the employee] were not proximately caused by any negligent hiring, retention, or supervision").

### 3.      Plaintiffs Fail to State a Claim for Negligent Marketing

Plaintiffs' made-up "negligent marketing" claim also should be dismissed.

First, the existence of a claim for "negligent marketing" is not universally recognized.  In Pennsylvania, it is not cognizable outside the pharmaceutical and medical device context.  *See Wolfe* v. *McNeil-PPC, Inc.*, 773 F. Supp. 2d 561, 570–71 (E.D. Pa. 2011) ("Pennsylvania does not recognize a tort for negligent marketing" though plaintiff can claim "that the manner in which a drug is promoted negated otherwise-adequate warnings."); *Lance* v. *Wyeth*, 85 A.3d 434, 458 (Pa. 2014) (drug manufacturer may breach a duty of care in marketing by "tendering into the market a drug which it knows or should know is so dangerous that it should not be taken by anyone").  And in New York, courts have entertained marketing-related negligence claims outside the pharmaceutical and medical device context in only a handful of

---

[14]     *See* Appendix A (reflecting seasons during which Plaintiffs played in the NFL).

circumstances—none of which is analogous here. *See, e.g.*, *Morrison* v. *Hoffmann-La Roche, Inc.*, No. 14-cv-4476, 2016 WL 5678546, at *7–8, *12 (E.D.N.Y. Sept. 29, 2016) (addressing negligent marketing of pharmaceuticals under New York statute and as failure to warn); *Locicero* v. *Sanofi-Aventis U.S. Inc.*, No. 08-cv-489S, 2009 WL 2016068, at *6 (W.D.N.Y. July 10, 2009) (addressing drug seller's negligent marketing of pharmaceuticals as a failure to warn claim); *see also Williams* v. *Coca Cola Co.*, No. 15-cv-1534, 2017 WL 1214503, at *2–3 (N.D.N.Y. Mar. 31, 2017) (addressing preemption of claim that Coca Cola negligently marketed and distributed a product containing aspartame); *Antilles Shipping Co.* v. *Texaco, Inc.*, 321 F. Supp. 166 (S.D.N.Y. 1970) (dismissing negligence claim relating to Texaco's marketing of lubricating oil).  These states are not alone.  *See, e.g.*, *Cubbage* v. *Novartis Pharm. Corp.*, No. 16-cv-129, 2016 WL 3595747, at *9 (M.D. Fla. July 5, 2016) (concluding that no Florida law exists supporting a claim for negligent marketing).

In any event, even if cognizable, Plaintiffs' "negligent marketing" claim would fail, because it lacks any factual allegations that the NFL Defendants owed Plaintiffs any marketing-related duties or caused Plaintiffs' injuries by breaching such duties, both of which are required for any negligence claim.  *See Morrison*, 2016 WL 5678546, at *6 (dismissing negligence claim premised on alleged marketing of drug without proper safety disclosures for failure to "plead facts demonstrating that . . . defendants owed Plaintiff a cognizable duty of care"); *Lance*, 85 A.3d at 458 (drug manufacturer may have duty of care in marketing extremely dangerous drugs).  Although Plaintiffs vaguely refer to the NFL Defendants' alleged "duty to exercise reasonably [*sic*] care in the marketing of their products" (SAC ¶ 352), they never allege what those "products" are, or to whom they were marketed; nor do they allege facts regarding the NFL Defendants' role in any promotion or marketing activities or identify any specific

marketing statements made by the NFL Defendants themselves.  *See In re Nassau Cty. Consol. MTBE Prods. Liab. Litig.*, No. 601516/2009, 2010 WL 4400075, at *16 (N.Y. Sup. Ct. Nov. 4, 2010) (dismissing "negligent marketing" claim where "complaints [did] not allege that . . . defendants conducted any marketing and do not offer any specific marketing statements").  To the extent that the "products" in question are football helmets, Plaintiffs make conclusory allegations that "Defendants knowingly developed, licensed, and marketed ineffective harm reduction technology in the form of football helmets incapable of protecting the players" (SAC ¶ 12) or that the NFL Defendants "promoted the false marketing" of the Riddell Revolution helmet (*id.* ¶ 251), but fail to provide any factual support.  Plaintiffs' claim appears to be a repackaged claim for failure to warn, but Plaintiffs never specifically allege—nor could they—that the NFL Defendants manufacture football helmets, or that the NFL Defendants had specific involvement in Riddell's marketing of the helmets it manufactured.  *Cf. Morrison*, 2016 WL 5678546, at *7 (stating that element of failure to warn claim is that "the *manufacturer* had a duty to warn" (emphasis added)).

   To the extent that Plaintiffs conclusorily allege that the NFL Defendants negligently marketed "the game . . . as safe" (SAC ¶ 354), that naked allegation is refuted by Plaintiffs' own allegations that the NFL Defendants "glorif[ied]" violence (*id.* ¶ 72).  In sum, Plaintiffs' vague and conclusory allegations provide no basis on which to find that the NFL Defendants owed a duty to Plaintiffs as NFL players with respect to marketing of football or helmets, much less that the NFL Defendants breached that duty.  *See Liggon-Redding* v. *Virtua Voorhees*, No. 14-cv-3139, 2014 WL 2571711, at *2 (D.N.J. June 6, 2014) (dismissing negligence claim as implausibly alleged), *aff'd*, 599 F. App'x 38 (3d Cir. 2015); *Yoder* v. *Wells Fargo Bank, N.A.*, 566 F. App'x 138, 141–42 (3d Cir. 2014) (affirming dismissal of negligence

claim for failure to "set forth sufficient factual content to allow a reasonable inference that the defendants were legally liable for some sort of actionable misconduct").

Further, Plaintiffs have failed to allege any nexus between the NFL Defendants' marketing of the game of football to fans and the injuries Plaintiffs purportedly suffered while playing football.  It is not plausible that the NFL Defendants' attempts to promote the game of football to the public and sell tickets to fans somehow caused Plaintiffs' head injuries or the alleged neurological conditions they now claim to experience.  Plaintiffs never claim that they relied on (or even saw) this marketing, that they were injured by someone who relied on it, or that the NFL Defendants directed their marketing to any particularly vulnerable or dangerous class of consumers.  *Cf. Ileto* v. *Glock Inc.*, 349 F.3d 1191 (9th Cir. 2003) (negligence claim against gun distributor could proceed because plaintiffs sufficiently alleged facts that gun distributor knew or should have known that it was distributing guns to people who would resell to illegal buyers); *Killeen* v. *Harmon Grain Prods., Inc.*, 413 N.E.2d 767, 772–73 (Mass. App. Ct. 1980) (negligent marketing could occur through the marketing of cinnamon flavored toothpicks to children "whose use . . . would involve unreasonable risk of injury"); *Moning* v. *Alfono*, 254 N.W.2d 759 (Mich. 1977) (negligent marketing claim could be viable where slingshot manufacturer marketed slingshots solely to children); *see also* Richard C. Ausness, *Tort Liability for the Sale of Non-Defective Products: An Analysis and Critique of the Concept of Negligent Marketing*, 53 S.C. L. Rev. 907, 912 (2002) ("The principle of negligent marketing assumes that product sellers should not engage in marketing strategies that increase the risk that their products will be purchased by unsuitable users—persons who are more likely than ordinary consumers to injure either themselves or others.").[15]

---

[15]    In their SFCs, certain Plaintiffs (Shante Carver, Tony Dorsett, Shaun Gayle, Bert May, Jr., Ronald Pritchard, and Patrick Stant) purport to assert an additional negligence claim—"negligence-monopolist"—against the

## C.   Plaintiffs Fail to State a Claim for Conspiracy

Plaintiffs' civil conspiracy claim also fails to state a claim.  Although state laws may differ on the exact elements of civil conspiracy, all require plaintiffs to plead the core of the claim:  that two or more people agreed to do an unlawful act.  *1766-68 Assoc., LP* v. *City of N.Y.*, 91 A.D.3d 519, 520 (N.Y. App. Div. 2012); *Grose* v. *Procter & Gamble Paper Prods.*, 866 A.2d 437, 440–41 (Pa. Super. Ct. 2005); 16 Am. Jur. 2d *Conspiracy* § 51.  Plaintiffs must also allege with particularity the "specific times, facts, and circumstances" of the purported conspiratorial agreement, and the "what, when, where, and how" of the alleged conspiracy.  *DDR Constr. Servs., Inc.* v. *Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 659–60 (S.D.N.Y. 2011).  "[T]hreadbare recitals and conclusory statements" about the alleged conspiracy are insufficient to survive a motion to dismiss.  *Abraham* v. *Am. Home Mortg. Serv., Inc.*, 947 F. Supp. 2d 222, 230 (E.D.N.Y. 2013).  In addition, many states—including New York and Pennsylvania— require plaintiffs to plead malice, *i.e.*, a "specific intent to cause injury," as an essential element of conspiracy.  *Wegman* v. *Dairylea Co-op., Inc.*, 50 A.D.2d 108, 114 (N.Y. App. Div. 1975); *see also Grose*, 866 A.2d at 440.

Plaintiffs' conspiracy claim is insufficiently pled.  First, Plaintiffs' (largely incoherent) allegations of a multi-decade conspiracy—involving "international corporations such as Honda," the tobacco industry, and even "our own federal government"—are too far-fetched to be plausible.  (*See* SAC 13–14 & ¶ 45); *see also Bush* v. *Adams*, No. 07-cv-4936, 2009 WL

---

NFL, alleging that "[a]s a monopoly, the NFL has a duty to protect the health and safety of its players, as well as the public at large." (*See, e.g.*, Gayle Opt Out Pl. Short Form Compl. Against NFL Defs., Attach. "A," ¶¶ 1– 7, July 24, 2017, ECF No. 8072.)  No such claim exists.  Neither state law nor the Sherman Act recognize such a cause of action because "monopoly power" does not—contrary to these Plaintiffs' allegations—create "a duty to protect the health and safety of . . . the public at large."  *Id.* ¶¶ 2–3.  Nor do these Plaintiffs cite any basis, much less supporting facts, for this purported duty.  Moreover, the Commerce Clause bars application of state antitrust laws to professional football.  *See Flood* v. *Kuhn*, 407 U.S. 258, 284–85 (1972) (Commerce Clause bars application of state antitrust law to professional baseball); *Partee* v. *San Diego Chargers Football Co.*, 668 P.2d 674, 678–79 (Cal. 1983) (application of state antitrust law to professional football impermissibly burdens interstate commerce).

197550, at *6 (E.D. Pa. Jan. 27, 2009) (dismissing civil conspiracy allegations as "implausible");
*Hoffman* v. *Lincoln Gen. Ins.*, 303 F. App'x 77, 78 (3d Cir. 2008) ("[d]espite [the court's] best
efforts to liberally construe [plaintiff's] amended complaint, the lack of coherency in her
arguments rendered her [conspiracy] claim indisputably meritless" (internal citations omitted));
*Evans* v. *Ariz. Cardinals Football Club, LLC*, No. 16-cv-1030, 2017 WL 2118316, at *2 (N.D.
Cal. May 15, 2017) (noting the "bloat of inapposite allegations" suggesting "some advocacy-
based agenda rather than any attempt to comply with pleading requirements" and stating that
"allegations not directed to the issues at hand, no matter how extensive, will not be considered").

Second, Plaintiffs fail to allege the cornerstone of any conspiracy:  an alleged
conspiratorial agreement.  Although Plaintiffs allege that the purported conspiracy dates back to
1965 (SAC pp. 13–14), they nowhere allege any details concerning any agreement—much less a
conspiratorial one—dating back that far.  Indeed, all that Plaintiffs point to are two innocuous,
lawful activities that cannot support a conspiracy claim here:  (1) the 1969 formation of
NOCSAE, "a non-profit organization intended to self-regulate football helmet safety standards,"
in which neither the NFL nor Riddell has any financial, governing, or ownership interest (SAC
pp. 13–14 & ¶ 116), and (2) a legal trademark licensing agreement in 1989 between Riddell and
the NFL permitting the use of the NFL marks on Riddell helmets and the sale of mini replica
helmets (SAC ¶¶ 152–54).  Neither participation in an industry organization nor execution of a
trademark licensing agreement can plausibly be characterized as an agreement to perform an
*unlawful act*.  *See Ellis* v. *Pneumo Abex Corp.*, No. 11-cv-66774, 2012 WL 7760435 (E.D. Pa.
Dec. 28, 2012) (asbestos manufacturers' information-sharing and meetings to discuss litigation
strategy insufficient to support inference of conspiratorial agreement); *Payton* v. *Abbott Labs.*,
512 F. Supp. 1031, 1038 (D. Mass. 1981) (membership in industry-wide trade organizations,

participation in scientific conferences, and arms'-length transaction with competitor insufficient to support inference of conspiratorial agreement); *ERI Max Enter., Inc.* v. *Streisand*, 690 A.2d 1351, 1354 (R.I. 1997) (affirming dismissal of civil conspiracy claim "predicated on the mistaken supposition that defendants' exclusivity agreement" was unlawful).   Plaintiffs' conspiracy claims also fail to the extent that they are based on any other unspecified agreement, as they have failed to plead the "specific times, facts, and circumstances" of such an agreement. *Toomer* v. *Cellco P'ship*, No. 11-cv-7515, 2012 WL 2953831, at *8 (S.D.N.Y. July 20, 2012) (dismissing conspiracy claim because it did "not come close to the level of concrete factual allegations" necessary); *Floyd*, 159 F. Supp. 2d at 834 (dismissing civil conspiracy claim that defendants conspired to hide evidence about the dangers of tobacco and nicotine where plaintiff failed to allege an agreement).

Second, Plaintiffs' sweeping (yet bald) accusations of conspiratorial conduct fall far short of pleading the "what, when, where, why, and how" of how any purported conspiracy was carried out.  Plaintiffs' allegations that the purported conspiracy lasted over half a century, whereby the "NFL funnel[ed] grant money for MTBI to NFL Charities" and the NFL Defendants and Riddell "acted in concert to perpetrate the fraudulent concealment of the decades long scientific research linked to concussions," "agreed to drive out any potentially successful competitor products" to Riddell's helmets, and hired overlapping scientific and industry experts, amount to insufficient conclusory pleading.  (SAC 13–14 & ¶¶ 170, 398–403.)  "[M]ere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy" minimum pleading standards; these are precisely the sort of conclusory allegations that fail to pass muster under settled law.  *Sung Tran* v. *Delavau, LLC*, No. 07-cv-3550, 2008 WL 2051992, at *10 (E.D. Pa. 2008) (citation omitted).  Nowhere do Plaintiffs allege—much less with the

required particularity—*any* "meetings, conferences, telephone calls or joint signatures" in support of the conspiracy, or who orchestrated it.  *Thompson* v. *Ross*, No. 10-cv-479, 2010 WL 3896533, at *7 (W.D. Pa. Sept. 30, 2010) (dismissing civil conspiracy claim on grounds that "[d]evoid in the factual scenario pled . . . is any allegation of fact from which one could infer conspiratorial conduct on the part of [defendant]"); *Sung Tran*, 2008 WL 2051992, at *11 (dismissing civil conspiracy claim for "fail[ing] to identify the objectives, time and place of the conspiracy . . . [and] mak[ing] no allegations as to the roles of the defendants").

Further, Plaintiffs fail to plead that alleged conspirators acted with malice, namely that the "purpose of the acts" was to injure Plaintiffs, as is required by New York, Pennsylvania, and certain other states.  *Operative Plasterers' & Cement Masons' Int'l Ass'n* v. *Metro. N.Y. Dry Wall Contrs. Ass'n, Inc.*, 543 F. Supp. 301, 313 (E.D.N.Y. 1982) (emphasis added) (dismissing conspiracy claim where it was "clear the sole purpose of the acts was not to injure plaintiffs"); *Zafarana* v. *Pfizer Inc.*, 724 F. Supp. 2d 545, 559 (E.D. Pa. 2010) (same); *see also* 15A C.J.S. *Conspiracy* § 16; 16 Am. Jur. 2d *Conspiracy* § 51.  To the contrary, they state that the NFL Defendants' motive to commit fraud was "economic" self-interest to "maximize profits" (SAC ¶¶ 7, 63, 388), which is not enough to plead malice under settled law.  *See Spear* v. *Fenkell*, No. 13-cv-2391, 2016 WL 5661720, at *66 (E.D. Pa. Sept. 30, 2016) (granting summary judgment for civil conspiracy claim because "to the extent [defendants] participated in the [conspiracy], [they] were doing so to advance their own economic interests, and not solely to injure [plaintiff]"); *Zafarana*, 724 F. Supp. 2d at 559 (dismissing claim against pharmaceutical companies where plaintiffs did not aver that defendants' sole purpose was to injure, but instead argued defendants' goal was to maximize profits).

Finally, conspiracy is not independently actionable; liability depends on the performance of a separate, intentional tort. *See* 16 Am. Jur. 2d *Conspiracy* § 58 (2017) ("[T]here is no cause of action for the substantive tort of conspiracy."); *see also Boyanowski* v. *Capital Area Intermediate Unit*, 215 F.3d 396, 407 (3d Cir. 2000) (noting that the court is "unaware of any jurisdiction that recognizes civil conspiracy as a cause of action requiring no separate tortious conduct" (citation omitted)); *Abacus Fed. Sav. Bank* v. *Lim*, 75 A.D.3d 472, 474 (N.Y. App. Div. 2010) ("New York does not recognize an independent claim for conspiracy to commit a civil tort."). Plaintiffs here premise their conspiracy claim on fraud and fraudulent concealment, but as discussed above, these claims are insufficiently pled:  thus, Plaintiffs' conspiracy claim should be dismissed. *See Goldstein* v. *Philip Morris, Inc.*, 854 A.2d 585, 590 (Pa. Super. Ct. 2004) (dismissing conspiracy claim for failure to plead "any separate underlying intentional or criminal act").

D.      **Plaintiffs Fail to Allege Grounds for Imposing Punitive Damages**

As a general matter, "the standard for imposing punitive damages is a strict one and punitive damages will be awarded only in exceptional cases." *Marinaccio* v. *Town of Clarence*, 986 N.E.2d 903, 906 (N.Y. 2013) (punitive damages are available only where "the conduct justifying such an award . . . manifest[s] spite or malice, or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton."); *Hutchison ex rel. Hutchison* v. *Luddy*, 870 A.2d 766, 770 (Pa. 2005) (same).  Because Plaintiffs have not adequately alleged malice or fraud, they have made no such showing here.[16]  Therefore, any claim for punitive damages should be dismissed.

---

[16]   Certain Plaintiffs, in their SFCs, claim entitlement to non-economic damages.  (*See* Seau Opt Out Pl. Short Form Compl. Against NFL Defs., Attach. A, July 27, 2017, ECF No. 8166.)  The NFL Defendants reserve all

**E.      Plaintiffs' Claims Against NFLP Should Be Dismissed**

Plaintiffs' claims against NFLP for negligent marketing, negligence, fraud, fraudulent concealment, and civil conspiracy are utterly deficient and fail to provide NFLP with "fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Liberty Lincoln-Mercury, Inc.* v. *Ford Motor Co.*, 676 F.3d 318, 326 (3d Cir. 2012) (quoting *Thomas* v. *Independence Twp.*, 463 F.3d 285, 295 (3d Cir. 2006)).   The overwhelming majority of Plaintiffs' allegations are directed at the "[NFL] Defendants" or "NFL, NFLP and Riddell" (*see, e.g.*, SAC ¶¶ 15, 55–56, 63, 247–50, 364), but such undifferentiated references to "defendants" fall well short of Federal Rule of Civil Procedure 8(a)'s requirement that "the complaint . . . give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Liberty Lincoln-Mercury*, 676 F.3d at 326; *Muhammad* v. *Weis*, No. 08-cv-3616, 2009 WL 637112, at *2 (E.D. Pa. Mar. 11, 2009) (plaintiff's claims violate Rule 8(a) "insofar as they consist of blanket allegations against entire groups of individual defendants, but do not describe how each individual actor within the group contributed to the alleged harm"); *Dehart* v. *Homeq Serv. Corp.*, No. 11-cv-416, 2011 WL 13137379, at *3 (E.D. Pa. June 2, 2011) (complaint failed to comply with Rule 8(a) where its allegations "refer[red] to the Defendants collectively, frustrating the Defendants' ability to assert defenses or formulate appropriate responses").

Even the few allegations that make any specific reference to NFLP (*see* SAC ¶¶ 16, 83, 152, 252, 265, 358–60) fail to offer a shred of factual support for Plaintiffs' claims against NFLP.   Other than referencing innocuous facts such as the existence of a licensing agreement with Riddell or the sale of photos (*see, e.g.*, *id.* ¶¶ 16, 83, 152) that do not support

---

rights with respect to damages at this stage of the proceedings, but note that one of the cited authorities, *Rufo* v. *Simpson*, 86 Cal. App. 4th 573 (Cal. 2001), is an extreme outlier.  That case concerns the $8.5 million recovery by the parents of Ron Goldman following the "trial of the century" and a finding of a brutal homicide by O.J. Simpson which cannot possibly serve as a benchmark for the appropriate quantum of damages in this case.

their claims, Plaintiffs allege that NFLP "had a duty to ensure that the equipment and materials it licensed and approved [were] of the highest possible quality," and that NFLP breached this duty by licensing "defective RIDDELL helmets while knowing or having reason to know that these products were negligently and defectively designed and manufactured." (SAC ¶¶ 358–59.) Not only do these allegations fail to allege that NFLP is actually a helmet manufacturer (it is not), but it is also well settled that such "mere conclusory statements" and "threadbare recitals of the elements of a cause of action" do not withstand the scrutiny of *Ashcroft* v. *Iqbal*, 556 U.S. 662. Plaintiffs' claims against NFLP therefore should be dismissed.[17]

## II.
## PLAINTIFFS' CLAIMS ARE TIME-BARRED

Because the majority of Plaintiffs' NFL careers ended many years ago, their claims, whether based on fraud or negligence, are barred by the applicable statutes of limitation.

### A.     Plaintiffs' Negligence-Based Claims Are Time-Barred

Most Plaintiffs' negligence-based claims against the NFL Defendants—including negligence claims purportedly asserted in certain Plaintiffs' SFCs—arising out of alleged concussive and subconcussive head impacts incurred during their NFL careers, are time-barred and should be dismissed. The limitation periods for personal injury claims based on negligence range from one to six years, and accrue "when all of the facts necessary to the cause of action have occurred so that the party would be entitled to obtain relief in court." *Blanco* v. *Am. Tel. & Tel. Co.*, 689 N.E.2d 506, 510 (N.Y. 1997); *see, e.g.*, Cal. Civ. Proc. Code § 335.1 (West 2017) (two years); Minn. Stat. Ann. § 541.05 (West 2017) (six years); N.J. Stat. Ann. § 2A:14-2 (West

---

[17]   In their SFCs, certain Plaintiffs (Shante Carver, Tony Dorsett, Shaun Gayle, Ted Johnson, Bert May, Jr., Ronald Pritchard, and Patrick Stant) purport to assert such a negligence claim against the NFL, in addition to NFLP. (*See, e.g.*, Gayle Opt Out Pl. Short Form Compl. Against NFL Defs., Attach. "A," ¶¶ 1–7, July 24, 2017, ECF No. 8072; Johnson Opt Out Pl. Short Form Compl. Against NFL and NFLP ¶ 17, July 18, 2017, ECF No. 8027 (adding NFL as a defendant to Count IV).) But their claim fails for the same reasons described here, as they have provided no non-conclusory allegations that the NFL played any role in the manufacturing or licensing of helmets.

2017) (two years); N.Y. C.P.L.R. § 214 (McKinney 2017) (three years); 42 Pa. Stat. and Cons. Stat. Ann. § 5524 (West 2017) (two years); Tenn. Code Ann. § 28-3-104(a)(1) (West 2017) (one year); *see also Fine* v. *Checcio*, 870 A.2d 850, 857 (Pa. 2005) ("In Pennsylvania, a cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion.").

Here, Plaintiffs claim that one or both of the NFL Defendants purportedly assumed duties as early as the 1960s (SAC ¶ 16), purportedly breached those duties during Plaintiffs' careers by failing to impose safety regulations and failing to inform Plaintiffs of the risks associated with head impacts (*id.* ¶¶ 53–55), and thereby caused Plaintiffs to suffer concussive and subconcussive head impacts during their NFL careers.  (*See id.* ¶ 61 ("Plaintiffs . . . were exposed to repetitive MTBIs while in the NFL.").)  Plaintiffs' negligence-based claims accrued, at the latest, when they experienced those head impacts, *i.e.*, no later than their last NFL season.  *See Fine*, 870 A.2d at 857 ("Generally speaking, in a suit to recover damages for personal injuries, this right arises when the injury is inflicted[, and m]istake, misunderstanding, or lack of knowledge in themselves do not toll the running of the statute." (internal citations omitted)); *see also Torres* v. *Greyhound Bus Lines, Inc.*, 48 A.D.3d 1264, 1265 (N.Y. App. Div. 2008).  Therefore, for those Plaintiffs[18] who ended their careers after the 2004 season or earlier, their negligence claims expired (at the absolute latest) six years from the end of their last season, *i.e.* by no later than early 2011. Therefore, the negligence claims of most Plaintiffs are time-barred and should be dismissed.[19]

---

[18]    *See* Appendix A.  The NFL Defendants reserve all Plaintiff-specific arguments and defenses.

[19]    Three Plaintiffs (Shante Carver, Tony Dorsett, and Bert May, Jr.) filed suit in July and August 2011, but because those three all retired after the 2000 season or earlier, their claims expired no later than early 2006, if not sooner.  *See* Appendix A.

35

Recognizing that their claims are long time-barred, Plaintiffs conclusorily assert that the applicable limitations periods were tolled under a "discovery rule." (SAC ¶ 26.) But for a plaintiff to avail himself of a discovery rule, he must plead facts establishing why he could not have discovered his injuries sooner. *See Cumis Ins. Soc., Inc* v. *Citibank, N.A.*, 921 F. Supp. 1100, 1111 (S.D.N.Y. 1996) ("It is the plaintiff's burden to plead facts sufficient to toll the statute of limitations by means of the discovery rule [under Pennsylvania law]."); *Blanyar* v. *Genova Prods. Inc.*, 861 F.3d 426, 433 (3d Cir. 2017) (affirming grant of motion to dismiss because, based on the allegations in the complaint, "reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause"); *see also Archie* v. *Pop Warner Little Scholars, Inc.*, No. 16-cv-6603, 2017 WL 3084160, at *14 (C.D. Cal. May 12, 2017) (dismissing claims by putative class of former youth football players alleging that defendants misrepresented the long-term safety of youth tackle football for failure to plead "specific facts that show how and when the discovery happened and why Plaintiffs were unable to make the discovery earlier despite reasonable diligence"). Plaintiffs have not done so here. Their conclusory claim that they "had no realistic ability to discern that the symptoms they were experiencing were linked to . . . the blows to the head they suffered during play" (SAC ¶ 26) does not satisfy their burden to plead "specific facts that show how and when the discovery [of that linkage] happened and why Plaintiffs were unable to make the discovery earlier despite reasonable diligence." *Archie*, 2017 WL 3084160, at *14.

Plaintiffs also appear to suggest—without expressly saying so—that the August 17, 2011 filing of the putative class action complaint in this Court in *Easterling* v. *Nat'l Football League, Inc.*, No. 11-cv-5209 (E.D. Pa. Aug. 17, 2011), ECF No. 1, tolled the statute of limitations on all Plaintiffs' claims. (*See* SAC ¶ 21.) Although *Am. Pipe & Constr. Co.* v. *Utah*,

414 U.S. 538 (1974) held that the filing of a class action tolls the statute of limitations for absent class members, this Court recognized that "*American Pipe* itself does not apply because the doctrine deals only with federal statutes of limitations, and the Class Action Complaint included only state law claims."  NFL MDL Approval Opinion, 307 F.R.D. at 419 n.90.  Moreover, even for states that have adopted *American Pipe*, the filing of *Easterling* would toll Plaintiffs' claims only if those states recognize such tolling cross-jurisdictionally:  many states do not.  *See, e.g.*, *Ravitch* v. *Pricewaterhouse*, 793 A.2d 939, 945 (Pa. Super. Ct. 2002) ("In conclusion, we hold that the filing of a class action in another state does not toll the statute of limitations as to a subsequent action filed in Pennsylvania's state court system."); *see also Kaufman* v. *Sirius XM Radio, Inc.*, No. 650420/2013, 2013 WL 5429364, at *5 n.5 (N.Y. Sup. Ct. Sept. 17, 2013) ("[M]any states, and most federal courts, have refused to allow cross-jurisdictional tolling.  It is unclear how the Court of Appeals would rule on this issue." (internal citations omitted)).  Further, *Easterling* did not name NFLP.  *See* Class Action Compl., *Easterling*, ECF No. 1. NFLP was not sued until December 2011 (*see* Pls.' Class Action and Individual Compl. for Damages, *Jacobs* v. *Nat'l Football League*, No. 11-cv-9345 (S.D.N.Y. Dec. 20, 2011), ECF No. 1 (transferred to E.D. Pa. in February 2012)), so no tolling could begin (if at all) until that date. *See In re Processed Egg Products Antitrust Litig.*, No. 08-md-2002, 2013 WL 4504768, at *7 (E.D. Pa. Aug. 23, 2013) (finding that class action tolling does not apply to unnamed defendants until they are actually named in subsequent lawsuits).

        In any event, the Court need not consider specific class action tolling arguments on this motion, as most Plaintiffs' claims are barred even if such tolling were to apply, as discussed above.  *See* NFL MDL Approval Opinion, 307 F.R.D. at 419 & n.90 (tolling does not revive a claim that is already untimely at the time of the filing of the class action).

## B.      Plaintiffs' Fraud-Based Claims Are Time-Barred

Most Plaintiffs' fraud-based claims—for fraud, fraudulent concealment, and negligent misrepresentation[20]—are also time-barred because Plaintiffs' own allegations show that they learned, or should have learned, of the alleged fraud long before they brought suit.

The statute of limitations for fraud and negligent misrepresentation is at most six years from the time plaintiff allegedly discovered the fraud, or could with reasonable diligence have discovered it.[21]  *See* N.Y. C.P.L.R. § 213(8) (statute of limitations for fraud is six years from commission or two years from the time plaintiff discovered or reasonably could have discovered it); 42 Pa. Stat. and Cons. Stat. Ann. § 5524(7) (two-year limitations period for fraud and negligent misrepresentation).   "A cause of action based upon fraud accrues, for statute of limitations purposes, at the time the plaintiff possesses knowledge of facts from which the fraud could have been discovered with reasonable diligence." *Coleman* v. *Wells Fargo & Co.*, 125 A.D.3d 716, 716 (N.Y. App. Div. 2015); *see also Fine*, 870 A.2d at 857 ("In Pennsylvania, a cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion.").   Here, Plaintiffs allege that, through misrepresentations and omissions, the NFL Defendants fraudulently concealed the risks of head impacts and the research purportedly showing a link between head impacts and brain injuries.  (*See, e.g.*, SAC ¶ 405.)  To the extent that fraud is alleged to have occurred during Plaintiffs' careers, for most Plaintiffs, many years have passed since the limitations period expired.  Further, Plaintiffs' own allegations, if true,

---

[20]   Although New York and certain other states treat the statute of limitations for a negligent misrepresentation claim as shorter than the statute of limitations for fraud claims, for the purposes of this motion only, and with reservation of rights to argue otherwise in the future, the NFL Defendants assume the application of the longer, fraud-based limitations period. *See, e.g.*, *Valentini* v. *Citigroup, Inc.*, 837 F. Supp. 2d 304, 326, 329 (S.D.N.Y. 2011) (applying shorter limitations period for negligent misrepresentation claim); *Country World, Inc.* v. *Imperial Frozen Foods Co.*, 186 A.D.2d 781, 782 (N.Y. App. Div. 1992) (same).

[21]   Only Rhode Island has a longer limitations period for fraud—10 years—but there is no basis for applying Rhode Island's law to this dispute since no Plaintiff claims to be a Rhode Island resident or to have ever played or suffered injuries in Rhode Island.  *See* R.I. Gen. Laws Ann. § 9-1-13(a) (West 2017).

show that they were on notice of the alleged fraud.  Plaintiffs cite a series of publicly available studies dating back decades that purportedly recognized a link between repetitive head impacts and brain injuries (SAC ¶¶ 45, 49, 91, 238–40), allowing them, through the exercise of reasonable diligence, to discover the alleged fraud and assert their causes of action earlier.

Plaintiffs' untimely claims also cannot be saved by the doctrines of equitable or fraudulent estoppel or fraudulent concealment.[22]  (*See* SAC ¶¶ 19–25.)  Equitable estoppel is an "extraordinary remedy" that should be "invoked sparingly and only under exceptional circumstances . . .where it would be unjust to allow a defendant to assert a statute of limitations defense" because plaintiff has been "induced by fraud, misrepresentations or deception to refrain from filing a timely action."  *Twersky* v. *Yeshiva Univ.*, 993 F. Supp. 2d 429, 442 (S.D.N.Y. 2014), *aff'd*, 579 F. App'x 7 (2d Cir. 2014) (citing *Zumpano* v. *Quinn*, 849 N.E.2d 926, 929 (N.Y. 2006)); *see also Fine*, 870 A.2d at 860–61.  Similarly, fraudulent concealment tolls the statute of limitations where defendant uses fraud or deception to conceal the existence of plaintiff's claim.  *Pulli* v. *Ustin*, 24 A.3d 421, 426 (Pa. Super. Ct. 2011).  "Such fraud, misrepresentations, or deception must be affirmative and specifically directed at preventing the plaintiff from bringing suit; failure to disclose the basis for potential claims is not enough, nor are broad misstatements to the community at large."  *Twersky*, 993 F. Supp. 2d at 442; *see also Putter* v. *N. Shore Univ. Hosp.*, 858 N.E.2d 1140, 1142 (N.Y. 2006).  There are no such allegations here that satisfy this standard.

---

[22] The terms "fraudulent concealment," "equitable estoppel," and "fraudulent estoppel" are often used interchangeably.  *Pulli* v. *Ustin*, 24 A.3d 421, 426 (Pa. Super. 2011) (discussing tolling based on "fraudulent concealment" and "estoppel"); *Koch* v. *Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (same); *see also Pearl* v. *City of Long Beach*, 292 F.3d 76, 88 (2d Cir. 2002) (holding that "New York has made it clear that, in the absence of a fiduciary relationship between the wrongdoer and the victim, an estoppel barring a limitations defense will not arise unless there has been 'active fraudulent concealment' by the wrongdoer").

Moreover, equitable estoppel and fraudulent concealment apply only where defendant's allegedly deceptive act that lulled plaintiff into not filing a timely action is a different act from that which forms the basis for the underlying claim. *Ross* v. *Louise Wise Servs., Inc.*, 868 N.E.2d 189, 198 (N.Y. 2007); *Pulli*, 24 A.3d at 426 ("In order for fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative *independent* act of concealment upon which the plaintiff justifiably relied." (emphasis added)). "[O]therwise, the mere assertion of an underlying fraudulent act would always trigger equitable estoppel and render the discovery accrual rule for fraud actions superfluous." *Kaufman* v. *Cohen*, 307 A.D.2d 113, 122 (N.Y. App. Div. 2003); *see also Royal Mile Co.* v. *UPMC*, No. 10-cv-1609, 2013 WL 5436925, at *44 (W.D. Pa. Sept. 27, 2013) (holding, at pleading stage, that failing to disclose an alleged conspiracy "is not sufficient to establish an affirmative independent act of concealment" necessary to toll claim).

That is all Plaintiffs allege here. Plaintiffs assert equitable estoppel and fraudulent concealment based on the NFL Defendants' purported "active[ ] conceal[ment of] the true character, quality, and nature of the risks and dangers [of football]" such that "Plaintiffs did not discover nor reasonably could not, at any earlier time, [have] discovered that their manifested injuries (distinguished from on-field football blows) had a causal connection to on-football blows, or to the Defendants' fraud" (SAC ¶¶ 20, 25), yet this alleged concealment by the NFL Defendants concerning a purported connection between MTBIs and football is also the root of Plaintiffs' fraud claims. (*See, e.g.*, *id.* ¶ 390.) *See Ross*, 868 N.E.2d at 198 (rejecting estoppel claim based on same conduct underlying fraud claim). Moreover, Plaintiffs' references to publicly available research on that very issue (SAC ¶¶ 45, 49, 91, 238–40) demonstrate that the NFL Defendants did not conceal Plaintiffs' alleged claims, and that Plaintiffs failed to exercise

reasonable diligence to ascertain the cause of their claimed injuries.  *See Fine*, 870 A.2d at 858 (holding that the injured party must exercise reasonable diligence to ascertain the injury and cause); *Coleman*, 125 A.D.3d at 716 (same).

**C.     Plaintiffs' Conspiracy Claim Is Time-Barred**

Plaintiffs' claim for civil conspiracy, predicated on the NFL Defendants' alleged fraudulent concealment of the risks of latent brain disease (SAC ¶ 398), is likewise time-barred. As discussed above, Plaintiffs' fraudulent concealment claim (like their other fraud-based claims) is time-barred (*see supra* Section II.B), and because Plaintiffs' conspiracy claim is based on the same underlying alleged misconduct, it, too, is untimely and should be dismissed.  *See Schlotthauer* v. *Sanders*, 153 A.D.2d 731, 732 (N.Y. App. Div. 1989) (dismissing conspiracy claims as time-barred where underlying alleged tort was time-barred); *Stann* v. *Olander Prop. Mgmt. Co. Inc.*, No. 11-cv-7865, 2015 WL 4505932, at *6 (E.D. Pa. July 24, 2015) (dismissing conspiracy claim as time-barred "for the same reasons" that plaintiff's fraudulent concealment claim was time-barred); 16 Am. Jur. 2d *Conspiracy* § 65 (2017).[23]

**III.**
**THE COURT SHOULD DISMISS THE CLAIMS OF**
**NON-COMPLIANT PLAINTIFFS AND SETTLEMENT CLASS MEMBERS**

**A.     Claims of Plaintiffs Who Failed to File**
**Short Form Complaints Should Be Dismissed**

In no uncertain terms, this Court's April 12 Order stated that "each Opt Out Plaintiff *shall file a Short Form Complaint* on . . . both the 12-md-02323 docket . . . on or before fifteen (15) days after the Court's Order granting the motion for leave."  (April 12 Order ¶ 5 (emphasis added).)  The Court later extended Plaintiffs' time to file SFCs to July 27, 2017.  (July

---

[23]     The NFL Defendants cite New York and Pennsylvania law as representative examples, but do not concede that Plaintiffs' conspiracy claim is timely under any state's law, and reserve all rights and defenses, including with respect to choice of law.

18 Order ¶ 1.)  That deadline has long since passed.  Yet, eleven Plaintiffs with pending claims against the NFL Defendants in this MDL failed to file SFCs against the NFL Defendants.  (*See* Appendix A.)  They are in clear violation of this Court's orders, and their claims should be dismissed.  *See In re Asbestos Prods. Liab. Litig.*, 718 F.3d 236, 246–47 (3d Cir. 2013) (affirming dismissal of twelve plaintiffs' claims based on non-compliance with district court's case management order and noting that compliance with "case management orders is essential in a complex litigation"); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217 (9th Cir. 2006) (affirming district court's dismissal of multiple plaintiffs' claims in an MDL for failure to comply with case management orders in a timely manner, including orders for plaintiffs to file fact-specific Affirmations and Plaintiff Fact Sheets).  Dismissal is appropriate because Plaintiffs are responsible for failing to file SFCs, their claims lack merit for the reasons described in this brief, and permitting them to file belated SFCs would prejudice the NFL Defendants.  *See In re Asbestos Prods. Liab. Litig.*, 718 F.3d at 246 (discussing standard for dismissal of claim for failure to comply with an administrative order).

**B.**     **Claims of Settlement Class Members Should Be Dismissed**

To the extent that the Second Amended Complaint purports to assert claims against the NFL Defendants on behalf of two members of the Settlement Class who have not formally opted out and have not filed SFCs, Tracy Scroggins and Rose Stabler, such claims should be dismissed.

Settlement Class members had the right to opt out of the class until October 14, 2014 (Order ¶ 4.g, July 7, 2014, ECF No. 6084), and those that did not do so are bound by the Settlement Agreement's terms, in particular, those terms by which class members "waive[d] and release[d] . . . all past, present and future claims" related in any way to "concussions and/or subconcussive events" or "CTE" (including loss of consortium).  (Settlement Agreement § 18.1,

42

ECF No. 6481-1; *see also* Am. Final Order and Judgment ¶ 10, ECF No. 6534 ("expressly incorporat[ing]" the Settlement Agreement's Release into the Final Order and Judgment).)

Both Scroggins, as a former NFL player, and Stabler, who purports to assert claims arising derivatively by reason of her relationship with her ex-spouse, deceased NFL player Ken Stabler,[24] are members of the Settlement Class whose claims were released in the Settlement Agreement and Final Order and Judgment.  (*See* Am. Final Order and Judgment ¶ 2 (defining Settlement Class to include retired players and their spouses), ¶ 10 (releasing Settlement Class Members' claims).)  The claims in the Second Amended Complaint plainly are covered by the releases in the Settlement Agreement.  Therefore, any claims that either Scroggins or Stabler may purport to assert must be dismissed.  *See McGowan Inv'rs LP* v. *Keefe Bruyette & Woods, Inc.*, 540 F. Supp. 2d 571, 576 (E.D. Pa. 2008) (Brody, J.) ("An individual claim by a person who was a class member in a prior class action suit is barred by a settlement of the class action where the settlement includes a release applicable to his later individual action."); *see also In re: Imprelis Herbicide Mktg., Sales Prac. & Prods. Liab. Litig.*, No. 11-md-2284, 2015 WL 7575910, at *3 (E.D. Pa. Nov. 25, 2015) (granting motion to enforce class action settlement where plaintiff "is a class member who is properly bound by the settlement").[25]

*      *      *

---

[24]  (Am. Compl. ¶¶ 55, 57, 80, *Scroggins* v. *Nat'l Football League*, 0:16-cv-60644 (S.D. Fla. Apr. 1, 2016) (Doc. No. 6); *see also Scroggins* v. *Nat'l Football League*, 2:16-cv-02058 (E.D. Pa. Apr. 29, 2016) (Doc. No. 1) (Conditional Transfer Order transferring action to MDL 2323).)

[25]  To the extent that any members of the putative classes or subclasses of individuals described in the putative class action complaint filed by Scroggins, Stabler, and others are Settlement Class Members, those individuals' claims also must be dismissed because they were released through the Settlement Agreement and Final Order and Judgment.  *See* Second Am. Compl. ¶ 65 *Scroggins* v. *Nat'l Football League*, No. 16-cv-60644 (S.D. Fla.. Apr. 18, 2016), ECF No. 10; Am. Compl. ¶ 60, *Scroggins* v. *Nat'l Football League*, No. 16-cv-60644 (S.D. Fla.. Apr. 1, 2016), ECF No. 6.  Further, all claims set forth in that complaint, including claims under the Racketeer Influenced and Corrupt Organizations Act, are superseded by the Second Amended Complaint. (April 12 Order ¶ 6.)

43

In sum, Plaintiffs have failed to sufficiently plead the elements of any of their claims, and most Plaintiffs' claims are time-barred.

## <u>CONCLUSION</u>

For the foregoing reasons, the NFL Defendants respectfully submit that the Second Amended Complaint should be dismissed in its entirety, with prejudice.

Dated: September 25, 2017

Respectfully submitted,

*/s/ Brad S. Karp*

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Brad S. Karp
Bruce Birenboim
Lynn B. Bayard
1285 Avenue of the Americas
New York, NY 10019-6064
Tel:   (212) 373-3000

PEPPER HAMILTON LLP
Sean P. Fahey
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
Tel:   (215) 981-4000

*Attorneys for Defendants the National Football
League and NFL Properties LLC*