# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>Hon. Anita B. Brody |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>                              Plaintiffs,<br><br>                    v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.<br>                              Defendants. | Civ. Action No.: 14-cv-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Hon. Anita B. Brody |

**MEMORANDUM OF LAW OF THE NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC IN OPPOSITION TO SETTLEMENT CLASS MEMBER YVONNE SAGAPOLUTELE'S MOTION TO MODIFY THE <u>AMENDED FINAL ORDER AND JUDGMENT</u>**

# **TABLE OF CONTENTS**

**Page**

Preliminary Statement ........................................................................................................... 1

Background ........................................................................................................................... 4

     A.    Parties ................................................................................................................... 4

     B.    Procedural Background ....................................................................................... 4

Argument ............................................................................................................................. 8

I.     THE PARTIES WERE NOT REQUIRED TO NOTIFY THE SETTLEMENT
     CLASS ABOUT THE AMENDMENTS ........................................................................ 8

     A.    The Amendments Did Not Require New Notice ................................................... 9

     B.    The Original Settlement Notice Was Sufficient ................................................ 11

II.    SAGAPOLUTELE IS NOT ENTITLED TO REWRITE THE SETTLEMENT
     AGREEMENT .............................................................................................................. 13

Conclusion ......................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adelson* v. *Ocwen Fin. Corp.*,
   621 F. App'x 348 (7th Cir. 2015) ........................................................................14

*In re Baby Prods. Antitrust Litig.*,
   708 F.3d 163 (3d Cir. 2013)...........................................................................9, 11

*Blue Diamond Coal Co.* v. *Trustees of UMWA Combined Ben. Fund*,
   249 F.3d 519 (6th Cir. 2001) ..............................................................................16

*In re Diet Drugs Prods. Liab. Litig.*,
   200 F. App'x 95 (3d Cir. 2006) ...........................................................................14

*In re Diet Drugs Prods. Liab. Litig.*,
   No. 99-cv-20593, 2010 WL 2735414 (E.D. Pa. July 2, 2010) .....................9, 11, 13

*F.A.C., Inc.* v. *Cooperativa de Seguros de Vida de Puerto Rico*,
   449 F.3d 185 (1st Cir. 2006)...............................................................................17

*Federman* v. *Artzt*,
   339 F. App'x 31 (2d Cir. 2009) .......................................................................14, 15

*In re Four Seasons Sec. Laws Litig.*,
   525 F.2d 500 (10th Cir. 1975) .............................................................................15

*Harris* v. *Graddick*,
   615 F. Supp. 239 (N.D. Ala. 1985).....................................................................9, 11

*Hensley* v. *Alcon Labs., Inc.*,
   277 F.3d 535 (4th Cir. 2002) ...............................................................................17

*Inmates of Suffolk Cty. Jail* v. *Rufo*,
   No. 71-cv-00162, 2015 WL 6958070 (D. Mass. Nov. 10, 2015) ...........................16

*Kokkonen* v. *Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994).............................................................................................17

*In re Linerboard Antitrust Litig.*,
   223 F.R.D. 357 (E.D. Pa.), *amended*, 223 F.R.D. 370 (E.D. Pa. 2004)..................17

*Matthews, Wilson & Matthews, Inc.* v. *Capital City Bank*,
   614 F. App'x 969 (11th Cir. 2015) .......................................................................15

**Page(s)**

*In re Nat'l Football League Players' Concussion Injury Litig.*,
　307 F.R.D. 351 (E.D. Pa. 2015), *amended*, No. 12-MD-02323, 2015 WL
　12827803 (E.D. Pa. May 8, 2015) ............................................................ passim

*In re Nat'l Football League Players Concussion Injury Litig.*,
　821 F.3d 410 (3d Cir. 2016), *amended* (May 2, 2016) ............................................7

*In re Nissan Motor Corp. Antitrust Litig.*,
　552 F.2d 1088 (5th Cir. 1977) ............................................................11

*Orlando Residence, Ltd.* v. *Hilton Head Hotel Inv'rs*,
　No. 89-cv-0662, 2013 WL 1103027 (D.S.C. Mar. 15, 2013) ............................................15

*In re PaineWebber Ltd. P'ships Litig.*,
　171 F.R.D. 104 (S.D.N.Y 1997) ............................................................11

*Roman-Oliveras* v. *Puerto Rico Elec. Power Auth.*,
　797 F.3d 83 (1st Cir. 2015) ............................................................17

*Sawka* v. *Healtheast, Inc.*,
　989 F.2d 138 (3d Cir. 1993) ............................................................15

## OTHER AUTHORITIES

11 Fed. Prac. & Proc. Civ. § 2852 (3d ed.) ............................................................17

20 Fed. Prac. & Proc. Deskbook § 104 ............................................................16

Fed. R. Civ. P. 23 ............................................................2, 9

Fed. R. Civ. P. 60 ............................................................1, 3, 14, 15, 16

Newberg on Class Actions § 1:5 (5th ed.) ............................................................9

Newberg on Class Actions § 8:17 (5th ed.) ............................................................9

Newberg on Class Actions § 8:36 (5th ed.) ............................................................9

Newberg on Class Actions § 8:7 (5th ed.) ............................................................9

Newberg on Class Actions § 18:40 (5th ed.) ............................................................15

Defendants National Football League and NFL Properties LLC (collectively, the "NFL Parties") respectfully submit this memorandum of law in opposition to Settlement Class Member Yvonne Sagapolutele's ("Sagapolutele's") motion to modify the Amended Final Order and Judgment (the "Motion") (ECF No. 8263).

## **Preliminary Statement**

Sagapolutele, an absent Settlement Class Member and representative of the estate of Retired NFL Football Player Pio Sagapolutele, brings this motion, ostensibly as a matter of due process, seeking significant revisions to the Final Order and Judgment that the Court entered more than two years ago approving the Class Action Settlement Agreement in this case.[1]  But no due process violation has occurred, and Sagapolutele has shown no justification for this Court to take the extraordinary step of rewriting a settlement agreement approved by both this Court and the Third Circuit that has been in place for years.  Sagapolutele's motion should therefore be denied.

The primary ground for Sagapolutele's motion is the amendments to the Settlement Agreement in February 2015, which expanded the definition of the Death with CTE Qualifying Diagnosis in response to the Court's directives.  Contrary to fact, Sagapolutele contends that the amendment imposed a deadline to obtain a Qualifying Diagnosis of Death with CTE, and "[b]ecause this change was made both without notice to absent class members and after the deadline to opt out of the settlement, [her] due process rights were violated."  (Pl. Mem. at 15.)  Sagapolutele asks this Court, pursuant to Rule 60 of the Federal Rules of Civil Procedure and the Court's inherent power, to amend the Final Order and Judgment to "remov[e] the deadline to obtain a Qualifying Diagnosis of Death with CTE."  (Pl. Mem. at 1.)

---

[1]    Unless otherwise defined, the capitalized terms used in this memorandum have the same meaning as those in the Settlement Agreement.

Sagapolutele's motion has no basis in fact or law for several reasons.

*First*, the amendments in question concerned an *expansion* of settlement benefits to the Settlement Class—namely, the expansion of the Qualifying Diagnosis of Death with CTE to include Retired NFL Football Players who died with CTE between Preliminary and Final Approval of the Settlement Agreement; the original agreement limited the Qualifying Diagnosis to those who died *prior* to Preliminary Approval.  It is well settled that additional notice to a class is necessary only when amendments to a settlement agreement are "materially adverse" to the class, not where, as here, they benefit the class.  Neither the Due Process Clause nor Rule 23 of the Federal Rules of Civil Procedure require notice in the event of beneficial, or even neutral, amendments.  As this Court correctly held in granting Final Approval of the Settlement Agreement over various objections to this very amendment (although on a different ground), no additional notice was required in this case for that very reason.

*Second*, contrary to Sagapolutele's contentions regarding lack of notice, the class notice in connection with the original settlement agreement was all that was necessary.  The Short- and Long-Form notices distributed to the Settlement Class Members made clear, as this Court and the Third Circuit held, that an award of Death with CTE would *not* be available to all Retired NFL Football Players diagnosed with CTE.  Rather, only particular cases of CTE meeting "certain" predetermined and agreed-to standards under the Settlement Agreement would be compensated—namely, cases where, prior to Preliminary Approval,[2] the Retired NFL Football Player received a post-mortem diagnosis of CTE made by a board-certified neuropathologist.  Further, the amendments in question were in fact made public; the NFL Parties and Class Counsel posted the amendments—including a redline comparison clearly

---

[2]   As noted above, the amendments to the Settlement Agreement extended this deadline to Final Approval.

reflecting the changes to the text of the Settlement Agreement—on the Court's publicly accessible PACER docket, where any member of the public, including the more than 5,000 Settlement Class Members with legal representation, could view it. In fact, over 40 Settlement Class Members objected to the amendments, including the very amendment that Sagapolutele complains of here.

*Finally*, even if Sagapolutele could show a due process violation, which she cannot, neither Rule 60 nor this Court's "inherent authority" allows Sagapolutele to rewrite the Settlement Agreement as she seeks. Rule 60(a) is limited to correction of "clerical mistakes" that do not affect the substantive rights of the parties. Yet her contention that the amendments were simply "clerical mistakes" is at odds with her characterization of those same amendments as impairing her rights under the settlement. Further, not only does Sagapolutele—as an absent class member—lack standing to move pursuant to Rule 60(b)(6), she also fails to establish that the "extraordinary remedy" of amendment pursuant to Rule 60(b)(6) is warranted here because she does not show that she will experience *any* hardship without the relief she seeks. For example, Sagapolutele has neither shown (nor even claimed) that the brain of her late husband, who died in 2009, has ever been examined by a board-certified neuropathologist for CTE, much less diagnosed as having CTE. Nor has she explained why any such examination—if such a belated diagnosis were even medically possible—did not occur prior to the Court's Final Approval Order on April 22, 2015 (as amended May 8, 2015). Finally, Sagapolutele has not shown that she is entitled to relief under the Court's "inherent authority" to amend the Final Order and Judgment because that authority is no more expansive than Rule 60.

Accordingly, Sagapolutele's motion should be denied.

**Background**

A.     **Parties**

The National Football League ("NFL") is an unincorporated association of 32 Clubs that promotes, organizes, and regulates the sport of professional football in the United States.  NFL Properties LLC ("NFLP") is a limited liability company organized under the laws of the State of Delaware and headquartered in New York.  Sagapolutele is a self-described absent Settlement Class Member and the representative of the estate of late Retired NFL Football Player Pio Sagapolutele.  (Pl. Mot. at 1.)

B.     **Procedural Background**

The Judicial Panel on Multidistrict Litigation established this multidistrict litigation as MDL 2323 on January 31, 2012.  Since that time, over 300 additional cases, brought on behalf of approximately 5,000 former NFL players, have been included in the MDL.  *See In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 361 (E.D. Pa. 2015), *amended*, No. 12-MD-02323, 2015 WL 12827803 (E.D. Pa. May 8, 2015), *and aff'd*, 821 F.3d 410 (3d Cir. 2016), *amended* (May 2, 2016), *cert. denied*, 137 S. Ct. 591 (2016), and *cert. denied*, 137 S. Ct. 607 (2016).  Plaintiffs in these cases asserted fraud- and negligence-based claims against the NFL Parties based on, among other things, a purported duty to provide players with rules and information needed to protect them from the alleged effects of repetitive mild traumatic brain injuries sustained during NFL play, including CTE.  *Id*. at 361-62.

On June 25, 2014, the NFL Parties and Class Counsel[3] (collectively, the "Parties") filed a motion for preliminary class certification and preliminary approval of the Settlement Agreement, and on July 7, 2014, the Court approved the motion.  *See id.* at 363-65.

---

[3]     Class Counsel consists of attorneys whom this Court duly appointed as legal representatives for the Settlement Class, including Christopher A. Seeger, Sol Weiss, Steven C. Marks, Gene Locks, Arnold Levin, and Dianne M. Nast.  (Final Order & Judg. ¶ 6,  ECF No. 6510.)

The Settlement Agreement defined the Settlement Class as "'[a]ll living NFL Football Players who, prior to the date of Preliminary Approval . . . retired . . . from playing professional football with the NFL,'" as well as their Representative Claimants and Derivative Claimants. *Id.* at 365 ("Representative Claimants are those duly authorized by law to assert the claims of deceased, legally incapacitated, or incompetent Retired Players.  Derivative Claimants are those, such as parents, spouses, or dependent children, who have some legal right to the income of Retired Players.").  The Settlement Agreement also provides funding for Retired NFL Football Players to receive a baseline assessment examination of their objective neurological functioning, for safety and educational initiatives, and for monetary awards for certain Qualifying Diagnoses, including, as relevant here, the Qualifying Diagnosis of Death with CTE.  *Id.* at 366-67.

Prior to the Fairness Hearing, the Parties distributed Court-approved Short- and Long-Form notices to the Settlement Class.  *See id.* at 382-86.  "Each was written in plain and straightforward language," and together, they disclosed the key components of the Settlement Agreement, making clear that "only 'certain' cases of CTE are covered."  *Id.* at 383-84.  As explained by the notice, under the original agreement, the Settlement's benefits included "[m]onetary awards for ***diagnoses*** of Death with CTE ***prior to July 7, 2014*** . . . ."  (*See* Long-Form Notice at 6, ECF No. 6086-1 (emphasis added); *see also* Class Action Settlement Agreement as of June 24, 2014 § 6.3(f), ECF No. 6087 (a "Qualifying Diagnosis of Death with CTE shall be made only for Retired NFL Football Players who died prior to the date of the Preliminary Approval and Class Certification Order, through a post-mortem diagnosis by a board-certified neuropathologist of CTE.").)

After the Fairness Hearing, the Parties—at this Court's request—agreed to several amendments to the Settlement Agreement, each of which made the Settlement Agreement more

beneficial to Settlement Class Members.  *In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. at 386.  For example, the amendments provided credit for Settlement Class Members who played in NFL Europe; ensured that all eligible Retired NFL Football Players who elected to receive a baseline assessment examination would receive one regardless of any funding limitations in the Settlement Agreement; included a hardship provision with respect to the appeal fee for Settlement Class Members; and allowed reasonable accommodation for Settlement Class Members who do not possess certain medical records.  (Class Counsel and the NFL Parties' Joint Submission in Resp. to the Feb. 2, 2015 Order of the Ct., Feb. 13, 2015, ECF No. 6481.)   In addition, as is relevant here, one amendment expanded the Qualifying Diagnosis of Death with CTE to cover not only Retired NFL Football Players who died prior to Preliminary Approval, but also Retired NFL Football Players who died between Preliminary Approval and Final Approval.  (*Id.* at 4-5.)   In addition, the Parties explained to the Court that "***consistent with the Parties' intent under the original Settlement Agreement***, and recognizing that obtaining such a [CTE] diagnosis ***may take several months post-death***, the Parties have provided for a grace period of 270 days following any date of death between preliminary approval and the Final Approval Date to allow Claimants to obtain the necessary diagnosis." (*Id.* (emphasis added).)

Copies of the proposed amended Settlement Agreement, including a redline showing the exact changes made, were posted on the Court's publicly accessible PACER database in February 2015.  (Class Counsel and the NFL Parties' Joint Submission in Resp. to the Feb. 2, 2015 Order of the Ct., Ex. A, Feb. 13, 2015, ECF No. 6481-1.)  Between February and April 2015, more than 40 Settlement Class Members filed objections to the amendments, including objections to the amendment to the definition of Death with CTE at issue here.  (*See*

Armstrong Objectors' Suppl. Obj. to the Am. Class Action Settlement, ECF No. 6503; Miller Suppl. Obj. to Settlement, ECF No. 6484.)  Sagapolutele did not file any objection.

After considering those objections, the Court issued its opinion approving the Settlement Agreement and finding that "Class Members who opted out . . . received adequate notice of these changes, ***and notification of Class Members is not required***."  *In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. at 386 (emphasis added).  The Court explained:  "Because these changes improved the deal for Class Members without providing any concessions to the NFL Parties, an additional round of notice for Class Members is unnecessary." *Id*.  On appeal, the Third Circuit affirmed this Court's Final Order and Judgment in full.  Regarding notice, the Third Circuit agreed with the District Court, finding "that the content of the class notice . . . satisfied Rule 23 and due process."  *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 435-36 (3d Cir. 2016), *amended* (May 2, 2016), *cert. denied*, 137 S. Ct. 591 (2016), and *cert. denied*, 137 S. Ct. 607 (2016).  Notably, the Third Circuit also "conclude[d] that the settlement's treatment of CTE does not render the agreement fundamentally unfair." *Id.* at 444.

On August 15, 2017, over two years after this Court granted final approval of the Settlement, Sagapolutele filed this Motion challenging the Court's determination that the amendments were beneficial to Settlement Class Members and therefore did not require additional notice, and seeking "modification of the Final Order and Judgment by removal of the deadline to obtain a Qualifying Diagnosis of Death with CTE."[4]  (Pl. Mot. at 2.)  Sagapolutele contends that "[t]his deadline was added to the Settlement Agreement in February 2015 without

---

[4]    Relatedly, Sagapolutele also seeks an "instruction to the settlement administrator to develop forms and procedures that allows Class Members to obtain a Qualifying Diagnosis of Death with CTE by obtaining a post-mortem diagnosis by a board-certified neuropathologist at any time during the 65-year term of the Monetary Award Fund."  (Pl. Mot. at 2.)

notice to the class," and "effectively prevented Class Members . . . from obtaining a Qualifying Diagnosis of Death with CTE."  (*Id.*)  Despite Sagapolutele's claim that "this deadline materially prejudices" Settlement Class Members (*id.*), she offers no explanation, much less an evidentiary showing, of how her own rights were in any way impaired by the alleged lack of notice.  She does not demonstrate—or even assert—that the brain of her late husband has been examined by a board-certified neuropathologist and determined to have CTE.  Therefore, not only is Sagapolutele's injury entirely hypothetical, but she also does not establish that such an examination would even be viable, given her husband's death in 2009.[5]

The NFL Parties, through this memorandum of law, oppose the Motion.

## **Argument**

### **I.**

### **THE PARTIES WERE NOT REQUIRED TO NOTIFY THE SETTLEMENT CLASS ABOUT THE AMENDMENTS**

Sagapolutele argues that her due process rights were violated because she did not receive notice that the February 2015 amendment "impos[ed] a deadline to obtain a Qualifying Diagnosis of Death with CTE" when the original Settlement Agreement purportedly permitted "Class Members [to] obtain a Qualifying Diagnosis for Death with CTE anytime within the 65-year life of the Monetary Award Fund."  (Pl. Mem. at 17.)  Not so.

"[T]he Due Process Clause of the Fourteenth Amendment requires that notice [concerning a class action settlement] be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. at

---

[5]  *See* Compl. ¶ 43, *Sagapolutele* v. *Nat'l Football League*, No. 17-cv-00348 (E.D. Pa. Jan. 25, 2017), ECF No. 1; *see also* Am. Stip. of Dismissal, *Sagapolutele* v. *Nat'l Football League*, No. 17-cv-00348 (E.D. Pa. May 3, 2017), ECF No. 4 (approving stipulation of dismissal without prejudice).

383 (quoting *Mullane* v. *Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).[6]  Parties settling a class action litigation should therefore distribute notice that "'fairly apprises' class members of the action and their rights."  Newberg on Class Actions § 8:17 (5th ed.).  Additional notice is only required when the settling parties subsequently introduce amendments that "would have a *material adverse* effect on the rights of class members."  *In re Diet Drugs Prods. Liab. Litig.*, No. 99-cv-20593, 2010 WL 2735414, at *6 (E.D. Pa. July 2, 2010) (emphasis added); *see also In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 175 n.10, 182 (3d Cir. 2013) (supplemental notice required only for "*material* alterations" (emphasis added)).  Conversely, if the amendments are neutral or beneficial to the settlement class, no additional notice is required.  *See Harris* v. *Graddick*, 615 F. Supp. 239, 244 (N.D. Ala. 1985) (holding that where "the amendment is narrow and it is clearly apparent that the interests of the classes are not *substantially impaired*, . . . the notice already given is adequate" (emphasis added)); *see also In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. at 383 (collecting cases, including *Harris*).  That is the case here.

### A.    The Amendments Did Not Require New Notice

Sagapolutele's argument—that the Parties should have re-distributed notice reflecting the February 2015 amendments to the Settlement Agreement—fundamentally misunderstands the substance of the amendments.  In Sagapolutele's telling, "in the midst of otherwise beneficial amendments" to the Settlement Agreement, the Parties "impose[d] an additional requirement that prevents Class Members from recovering settlement proceeds [for CTE] unless they obtained a Qualifying Diagnosis before" Final Approval.  (Pl. Mem. at 8.)  But

---

[6]   Due process notice requirements mirror those of Rule 23 of the Federal Rules of Civil Procedure.  *See* Newberg on Class Actions § 1:5 (5th ed.) ("Rule 23 is constructed to ensure that the representative nature of class action litigation safeguards these absent class members' due process rights."); *id.* § 8:7 (5th ed.) (the notice requirements under Rule 23 "echo[] the constitutional test set forth by the Supreme Court"); *id.* § 8:36 (5th ed.) ("[A]s Rule 23's requirements are quite similar to the Constitution's, the distinction may be immaterial.").

the amendment only clarified what was always the case and extended the deadline for Death with CTE to Final Approval.

The original settlement agreement provided that an award for a Qualifying Diagnosis of Death with CTE would be available only to Retired NFL Football Players who died *and* received a CTE diagnosis prior to Preliminary Approval.  The Long-Form Notice made this explicit, stating that the Settlement's benefits include "[m]onetary awards for ***diagnoses*** of Death with CTE ***prior to July 7, 2014*** . . . ."  (*See* Long-Form Notice at 6, ECF No. 6086-1 (emphasis added); *see also* Decl. of Robert H. Klonoff Relating to the Proposed Class Settlement in the Nat'l Football League Players' Concussion Injury Litig. ¶ 85, Nov. 12, 2014, ECF No. 6423-9 ("[C]ontrary to the arguments advanced by various objectors, ***excluding CTE in cases diagnosed after July 7, 2014***, is not irrational." (emphasis added)).)  Similarly, the Parties' publicly filed submission to the Court in support of the amendment stated specifically that the amendment's language providing only a grace period of time following death within which to obtain a neuropathological diagnosis of CTE was "*consistent with the Parties' intent under the original Settlement Agreement.*"  (*See* Class Counsel and the NFL Parties' Joint Submission in Resp. to the Feb. 2, 2015 Order of the Ct. at 4, ECF No. 6481 (emphasis added).)

Contrary to Sagapolutele's contentions, this amendment did not adversely affect the Settlement Class—much less materially so.  In fact, the amendment *expanded* settlement benefits to encompass any additional Settlement Class Members who died after Preliminary Approval but before Final Approval, and provided 270 days to receive a CTE diagnosis for such players—thereby, increasing the time covered by the definition of Death with CTE by *nine* months.  (*See id.* at 4-5.)

Accordingly, far from being materially adverse to Settlement Class Members, these amendments actually made the Settlement Agreement *more beneficial* by expanding the availability of an award for Death with CTE to a larger class of claimants.  (*Id.*)  Thus, as this Court previously held, "[b]ecause these changes improved the deal for Class Members without providing any concessions to the NFL Parties, an additional round of notice for Class Members is unnecessary."  *In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. at 386; *see also In re Baby Prods. Antitrust Litig.*, 708 F.3d at 175 n.10, 182; *In re Diet Drugs Prods. Liab. Litig.*, 2010 WL 2735414, at *6; *Harris*, 615 F. Supp. at 244.

**B.**      **The Original Settlement Notice Was Sufficient**

Sagapolutele's due process argument fails for an additional reason.  The original notice, as this Court held, was clear that not all CTE diagnoses would be compensated under the Settlement Agreement, and the publicly available amendments sufficiently defined those CTE diagnoses eligible for compensation.

*First*, the Short- and Long-Form notices distributed to Settlement Class Members adequately protected their due process rights.  To comport with due process, settlement notice need only be adequate and summarize the terms of the Settlement; perfection and painstaking detail are not required.  *See In re Nat'l Football League Concussion Injury Litig.*, 307 F.R.D. at 382-83; *see also In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977) (explaining that notice need not "[be] perfectly correct in its form," and instead that "[t]he standard [] is that the notice . . . must contain information that a reasonable person would consider to be material in making an informed, intelligent decision" about whether to opt out); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y 1997) ("The notice need not be highly specific, and indeed 'numerous decisions, no doubt recognizing that notices to class members can practicably contain only a limited amount of information, have approved very

11

general descriptions of the proposed settlement.'" (quoting *Weinberger* v. *Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)).

As this Court previously held in overruling objections that "the Long-Form Notice is confusing because the term 'Death with CTE' appears several times without the accompanying cutoff date, . . . [b]oth the Summary Notice and the Long-Form Notice indicate that **only 'certain' cases of CTE are covered**." *In re Nat'l Football League Concussion Injury Litig.*, 307 F.R.D. at 383-84 (emphasis added) (citing Summary Notice at 1, ECF No. 6086-2; Long-Form Notice at 1, ECF No. 6086-1).  Moreover, as stated above, the Long-Form Notice specifically stated that the Settlement's benefits include "[m]onetary awards for **diagnoses** of Death with CTE **prior to July 7, 2014** . . . ."  (*See* Long-Form Notice at 6, ECF No. 6086-1 (emphasis added).)  Both the Short- and Long-Form notice thus alerted Settlement Class Members that an award for CTE was not absolute or unconditional; rather, a Settlement Class Member would need to satisfy "certain" criteria before any award would be made.  That is the case here—under the original and amended Settlement Agreement, Sagapolutele must satisfy particular criteria before receiving an award of Death with CTE, including that she obtain her decedent's CTE diagnosis within a predetermined time period—and the original notice satisfied Sagapolutele's Due Process rights by alerting her to this fact.

*Second*, the Parties made the February 2015 amendments publicly available months prior to this Court's April 22, 2015 Final Approval Order (as amended May 8, 2015). Not only did the Parties post a copy of the amendments to this Court's publicly available PACER database as early as February 2015, but they also submitted a redline showing the exact changes to be made to the Settlement Agreement as a result of those proposed amendments.  (Class Counsel and the NFL Parties' Joint Submission in Resp. to the Feb. 2, 2015 Order of the Ct., Ex.

A, Feb. 13, 2015, ECF No. 6481-1.)  This is especially significant in light of the widespread attention paid to the docket in this matter by, among others, the more than 5,000 Retired NFL Football Players who, at the time of settlement, were represented by counsel in MDL 2323.  *See In re Nat'l Football League Concussion Injury Litig.*, 307 F.R.D. at 389; *see also In re Diet Drugs Prods. Liab. Litig.*, 2010 WL 2735414, at *4  (holding that no notice of settlement agreement amendments was required because, in part, "notice of the proposed Tenth Amendment, along with an opportunity to object, was supplied to representatives of all class members with active cases in MDL No. 1203.").

In fact, the Parties' efforts to publicize the amendments were successful, as evidenced by the fact that over 40 Settlement Class Members filed objections to the amendments, *including objections to the very Death with CTE provision about which Sagapolutele complains.*  (*See* Armstrong Objectors' Suppl. Obj. to the Am. Class Action Settlement, ECF No. 6503; *see also* Miller Suppl. Obj. to Settlement, ECF No. 6484.)  While these objectors raised somewhat different concerns than Sagapolutele raises here—they argued that the award of Death with CTE should be available to Retired NFL Football Players who die after Final Approval—they nonetheless sought, at least in part, the same relief that Sagapolutele appears to now seek: "modification of the Final Order and Judgment by removal of the deadline to obtain a Qualifying Diagnosis of Death with CTE."  (Pl. Mot. at 2.)  This Court properly rejected these objectors' requests, and similarly should reject Sagapolutele's efforts here.

## II.

## SAGAPOLUTELE IS NOT ENTITLED TO REWRITE THE SETTLEMENT AGREEMENT

Even if Sagapolutele had established that notice of the amendments should have been given—which she has not, as explained above—her Motion would fail.  Sagapolutele first

argues that under Rule 60(a), the Court should rewrite the Settlement Agreement and amend the Final Order and Judgment because the Court made a "clerical error" when approving the amendments to the Settlement Agreement. Second, Sagapolutele contends that amendment under Rule 60(b)(6) is justified by "extraordinary circumstances." Finally, Sagapolutele argues that the Court's inherent authority permits it to amend the Final Order and Judgment here. (Pl. Mem. at 18-24.) These arguments lack merit.

*First*, Sagapolutele has not made the necessary showing under Rule 60(a). It is well settled that amendment of judgments pursuant to Rule 60(a) "is limited to the correction of 'clerical mistakes'; it encompasses only errors 'mechanical in nature, apparent on the record, and not involving an error of substantive judgment.'" *In re Diet Drugs Prods. Liab. Litig.*, 200 F. App'x 95, 103 (3d Cir. 2006) (quoting *Pfizer Inc.* v. *Uprichard*, 422 F.3d 124, 129 (3d Cir. 2005)). For Rule 60(a) to apply, the change to be corrected must not "affect[] the substantive rights of the parties." *Id.* at 103-04 (quoting *Pfizer*, 422 F.3d at 130) (holding Rule 60(a) inapplicable because the "correction here goes beyond the correction of a 'mindless and mechanistic mistake'" (quotation omitted)). Here, Sagapolutele has only ever alleged that the amendments in question were deliberate attempts by the Parties to modify the criteria for the Qualifying Diagnosis of Death with CTE. She cannot simultaneously argue these amendments were mere "clerical mistakes." As such, Rule 60(a) is inapplicable here.

*Second*, Sagapolutele's attempts to seek relief under Rule 60(b)(6) fail, too.[7] Relief under Rule 60(b) is "not ordinarily . . . available to non-parties," *Federman* v. *Artzt*, 339 F. App'x 31, 33-34 (2d Cir. 2009), and "[a]bsent class members such as [movant] are treated, with limited exceptions inapplicable here, as non-parties to a class action." *Adelson* v. *Ocwen*

---

[7]  Although Sagapolutele broadly states she is moving for relief under Rule 60(b), her memorandum of law cites only to the Rule's catchall provision, which permits the modification of a final judgment based on "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6).

*Fin. Corp.*, 621 F. App'x 348, 351 (7th Cir. 2015); *Federman*, 339 F. App'x at 33-34 (holding that absent class members who did not object to settlement were not "parties" for purposes of Rule 60(b) and declining "to expand the narrow exception to the general rule that non-parties cannot bring Rule 60(b) motions"); *In re Four Seasons Sec. Laws Litig.*, 525 F.2d 500, 504 (10th Cir. 1975) (absent class member "did not become a party for the purposes of Rule 60(b) to enable him to challenge the adequacy or nature of the settlement"); *see also* Fed. R. Civ. Proc. 60(b) ("the court may relieve *a party* . . . from a final judgment, order, or proceeding for the following reasons" (emphasis added)).  Sagapolutele did not object, intervene, or otherwise take steps to become a "party" to this action, so Rule 60(b) is not available to her here.  *See also* Newberg on Class Actions § 18:40 (5th ed.) ("[A]ll the circuits that have considered the issue have taken the position that absent class members are generally not authorized to file Rule 60 motions.").

Even if Sagapolutele were a "party," she has not met her burden to seek relief pursuant to Rule 60(b)(6) because such "[r]elief . . . may only be granted under extraordinary circumstances where, without such relief, an *extreme and unexpected hardship* would occur." *Sawka* v. *Healtheast, Inc.*, 989 F.2d 138, 140 (3d Cir. 1993) (emphasis added); *see also Matthews, Wilson & Matthews, Inc.* v. *Capital City Bank*, 614 F. App'x 969, 971 (11th Cir. 2015) (Rule 60(b)(6) "is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances, and the party seeking relief has the burden of showing that absent such relief, an extreme and unexpected hardship will result." (internal quotations omitted)); *Orlando Residence, Ltd.* v. *Hilton Head Hotel Inv'rs*, No. 89-cv-0662, 2013 WL 1103027, at *8 (D.S.C. Mar. 15, 2013), *aff'd sub nom. Orlando Residence, Ltd.* v. *Nelson,* 565 F. App'x 212 (4th Cir. 2014) ("Relief is rarely granted under . . . [Rule] 60(b)(6).").  The bar for relief under

Rule 60(b) is particularly high where the movant seeks to amend in "a class action [because] a too liberal application of Rule 60(b) would undermine the finality of judgments entered in such actions and would discourage their settlement." *Inmates of Suffolk Cty. Jail* v. *Rufo*, No. 71-cv-00162, 2015 WL 6958070, at *2 (D. Mass. Nov. 10, 2015); *see also Blue Diamond Coal Co.* v. *Trustees of UMWA Combined Ben. Fund*, 249 F.3d 519, 524 (6th Cir. 2001) ("[R]elief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation.  This is especially true in an application of subsection (6) of Rule 60(b) . . . ." (internal quotations omitted)).

Sagapolutele has not made any showing whatsoever that the amendment will cause her any hardship, much less "extreme and unexpected hardship."  Tellingly, she has not shown—through supporting exhibits, affidavits, or even proffered facts in her brief—that the brain of her late husband, who passed away in 2009, has been examined by a board-certified neuropathologist and diagnosed with CTE at *any time*, much less that she would, but for the amendment, be entitled to an award.  She also has not established that a belated diagnosis years after death (indeed, her husband died approximately eight years ago) would even be possible given the deterioration of brain matter after death.  Nor does she seek to justify her apparent delay in seeking an examination.  Instead, Sagapolutele invites only speculation and offers only conclusory assertions as to how the purported change impacts her rights under the agreement, and she therefore fails to show that the exceptional remedy of Rule 60(b)(6) is warranted here.

*Finally*, Sagapolutele's invocation of the Court's "inherent authority" to amend a judgment does not salvage her claim because that authority is no broader than that provided by Rule 60, which, as explained above, does not permit Sagapolutele the relief she seeks.  *See* 20 Fed. Prac. & Proc. Deskbook § 104 (after 28 days from entry, "the judgment may be attacked,

other than by appeal, only as provided in Rule 60."); 11 Fed. Prac. & Proc. Civ. § 2852 (3d ed.) (while "the power of a court to modify an interlocutory judgment or order at any time prior to final judgment remains unchanged and is not limited by the provisions of Rule 60(b) . . . , [t]he rule does apply, however, to all final judgments entered in civil actions."). Sagapolutele's cases are not to the contrary; none holds that Courts have inherent authority to amend a final judgment approving a settlement agreement. (*See* Pl. Mem. at 23-24.) Three of the five cited cases concern only a court's authority to *enforce* a settlement agreement. *See Kokkonen* v. *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994) (holding that a district court has inherent authority to *enforce* a settlement agreement under particular circumstances); *Roman-Oliveras* v. *Puerto Rico Elec. Power Auth.*, 797 F.3d 83, 86-87 (1st Cir. 2015) (same); *Hensley* v. *Alcon Labs., Inc.*, 277 F.3d 535, 540-41 (4th Cir. 2002) (same). The fourth case, *In re Linerboard Antitrust Litig.*, 223 F.R.D. 357, 363 (E.D. Pa.), *amended*, 223 F.R.D. 370 (E.D. Pa. 2004) simply stands for the proposition that a court overseeing an MDL has inherent power to control the discovery process—an issue not relevant or in dispute here. Finally, while the fifth case involved an *amendment* of an order entering a settlement agreement, the Court did not hold that the district court had inherent authority to make the amendment; rather, it simply held that "the merits of [the district court's] decision to amend are no longer open to review." *F.A.C., Inc.* v. *Cooperativa de Seguros de Vida de Puerto Rico*, 449 F.3d 185, 190–91 (1st Cir. 2006).

In sum, Sagapolutele has not demonstrated (and cannot demonstrate) that she is entitled to rewrite the Settlement Agreement.

## <u>Conclusion</u>

For the foregoing reasons, the NFL Parties respectfully request that the Court deny the Motion in its entirety.

Dated:  September 28, 2017

Respectfully submitted,

/s/ Brad S. Karp
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Brad S. Karp
Bruce Birenboim
Lynn B. Bayard
1285 Avenue of the Americas
New York, NY 10019-6064
Tel:   (212) 373-3000
bkarp@paulweiss.com

PEPPER HAMILTON LLP
Sean P. Fahey
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
Tel:   (215) 981-4000

*Attorneys for Defendants the National Football
League and NFL Properties LLC*

**<u>CERTIFICATE OF SERVICE</u>**

It is hereby certified that a true copy of the foregoing Memorandum of Law of the National Football League and NFL Properties LLC in Opposition to Settlement Class Member Yvonne Sagapolutele's Motion to Modify the Amended Final Order and Judgment was served electronically via the Court's electronic filing system on the 28th day of September, 2017, upon all counsel of record.


Dated:  September 28, 2017                                   /s/Brad S. Karp
                                                            Brad S. Karp