# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323<br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>          Plaintiffs,<br><br>               v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>          Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**OPPOSITION OF CO-LEAD CLASS COUNSEL, THE NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC TO THE MOTION OF X1LAW TO DETERMINE PROPER ADMINISTRATION OF CLAIMS UNDER THE SETTLEMENT AGREEMENT**

Co-Lead Class Counsel, the National Football League and NFL Properties LLC (collectively, the "Parties") respectfully submit this opposition to the Motion by X1Law, P.A. and Loren & Kean Law (collectively, "X1Law") on behalf of certain clients to Determine Proper Administration of Claims Under the Settlement Agreement (ECF No. 8267) (the "Motion") as both premature and a fundamental misunderstanding of the claims administration process.

Specifically, the Motion misinterprets the Notices of Preliminary Review from the Claims Administrator that outlined potential additional information and/or documents that may support the claims, as a decision on the merits of those claims.  These Notices primarily provide claimants with the opportunity to supplement and enhance their submissions.  Moreover, contrary to X1Law's allegations, the Claims Administrator has implemented the Settlement Program's claim process at the direction of the Parties, as overseen by the Special Masters appointed by this Court, and consistent with the Settlement Agreement.  In fact, for the reasons set forth herein, X1Law—which retracted Diagnosing Physician Certification Forms by the physician who personally examined X1Law's clients as part of an apparent effort to avoid review of the claims by the Appeals Advisory Panel—bears much of the responsibility for any delay in the merits review of the claims.  Until the claims process has played out to conclusion, and the reasons for the final award or denial of an award are determined, the Motion should be denied as premature.[1]

## BACKGROUND

The Settlement Program provides, among other substantial benefits, the opportunity for Retired NFL Football Players to apply for Monetary Awards if they already have, or develop over the next 65 years, the Qualifying Diagnoses as defined in the Settlement Agreement.  As of September 25, 2017, over 17,166 Retired NFL Football Players (or Representative Claimants

---

[1]     If any claim is denied, the proper recourse for the claimant would be to file a claim appeal, as set forth in Section 9.5 of the Settlement Agreement.  A handful of other firms have joined in the Motion, including the law firm formerly known as Top NFL Lawyers (ECF No. 8397), Neurocognitive Football Lawyers (ECF No. 8375), and the Farisse Law Firm (ECF No. 8387). The filing by Anoush Hakimi (formerly Top NFL Lawyers) illustrates the impropriety of such motions before the Court-approved claims process has been completed.  The Top NFL Lawyers Motion adds another list of what are mostly gripes about how the Claims Administrator is handling certain matters on a day-to-day basis, many of which are unrelated to the substance of the Motion. There is no final decision on the merits identified in the Motion or the joinders that is properly subject to appeal to this Court.  When there are decisions on the merits of such claims, the appeals process, which includes a petition for review by the Court, can begin.

thereof) have registered to participate in the Settlement Program, and there have been over 1,318 Claim Packages submitted. Brown Decl., ¶ 2. To facilitate the administration of the Settlement, the Parties negotiated, and the Court approved, a standardized and centralized process for submitting Claim Packages seeking Monetary Awards, for review of each Claim Package for potential deficiencies, for the issuance of notices of determination of the merits of each complete Claim Package, and for the possibility of appeal to this Court from each notice of determination. Absent this structured approach, the Court could easily face piecemeal motion practice—in essence, quasi-appeals—from each juncture of the claims process from any number of dissatisfied claimants.

To oversee the processing of each Claim Package, the Court appointed a Claims Administrator who would receive the claims, shepherd them to completion and issue a determination from which an appeal may be taken.  As this Court summarized in granting Final Approval to the Settlement Agreement:

> A Claim Package "must be submitted to the Claims Administrator no later than two (2) years after the date of the Qualifying Diagnosis or within two (2) years after the Settlement Class Supplemental Notice is posted on the Settlement Website, whichever is later."  [Settlement Agreement] § 8.3(a)(i). Failure to comply with the applicable Claim Package submission deadline will preclude a Class Member from receiving an award, unless he can show substantial hardship. *See id.* The Claim Package must include a certification by the physician who diagnosed the Retired Player, medical records supporting that diagnosis, and proof that the Retired Player played in the NFL. *See id.* § 8.2(a). The Claims Administrator, after providing the Class Member with an opportunity to cure an incomplete or insufficient Claim Package, must notify the Class Member within 60 days whether he is entitled to an award. *Id.* § 9.1(b).

> Class Members, Co-Lead Class Counsel, and the NFL Parties have the right to appeal a Monetary Award determination, a right they must exercise in good faith. *See id.* §§ 9.5, 9.6(a). . . .  Appellants have five single-spaced pages to prove their case by clear and convincing evidence. *Id.* § 9.7(a). The Court is the ultimate arbiter of any appeal, and may consult an Appeals Advisory Board for medical advice. *See id.* § 9.8.

*In re: National Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 367-68 (2015), *amended*, No. 12-md-02323, 2015 WL 12827803 (E.D.Pa. May 8, 2015); *see also In re: National Football League Players' Concussion Injury Litig.*, 821 F.3d 410, 424 (2016).[2]

### *Notices of Preliminary Review*

The Claims Administrator has implemented the Settlement Program in accordance with the terms of the Settlement Agreement as directed by the Parties and overseen by the Special Masters, including the submission process for Claim Packages, its review and cure procedures for potentially incomplete submissions, the provision of claim determination notices on the merits, and the facilitation of any resulting appeals. Brown Decl., ¶ 4.  Notwithstanding this Court-approved claims process, X1Law essentially seeks to skip from receipt of notices of potentially incomplete files to an immediate appeal to the Court couched as a motion asking the Court to instruct the Claims Administrator to interpret the Settlement Agreement consistent with X1Law's desired (but erroneous) views.

In support of the Motion, X1Law attaches an example of a notice it received in response to a submitted Claim Package.  This notice is titled "Notice of Deficiency," which is the title formerly used by the Claims Administrator for the notices it sent of potential deficiencies *prior* to review of the merits of a claim.  Brown Decl., ¶ 11.b.  The Claims Administrator issued such notices in an effort to ensure that each Claim Package is as fulsome as possible before the merits of the claim

---

[2]     The Court has since explained that it may refer appeals in the first instance to the Special Masters for decision, with further appeal rights to the Court on legal issues following a decision of the Special Masters pursuant to Federal Rule of Civil Procedure 53(f).  (ECF No. 6871, p. 5.) If a Retired NFL Football Player's claim is ultimately denied, he may, if his condition worsens, submit another claim later in the 65-year life of the Settlement.

is reviewed; but, except for certain fundamental and limited exclusions, such a notice is not a forecast of the ultimate determination on the merits of a claim.  Brown Decl., ¶ 11.c.

Such notices are particularly valuable for claims seeking awards for Qualifying Diagnoses of Level 1.5 or Level 2 Neurocognitive Impairment based on diagnoses that occurred prior to January 7, 2017, the Effective Date of the Settlement. These Qualifying Diagnoses must be "based on evaluation and evidence generally consistent with" the diagnostic criteria at the heart of the Baseline Assessment Program ("BAP").[3]  Although Qualifying Diagnoses of Level 1.5 and 2 Neurocognitive Impairment outside of the BAP do not require the *identical* diagnostic criteria or documentation used in the BAP, the evaluation and evidence must be "generally consistent" thereto, and thus the BAP criteria provide a baseline point of comparison for review of these claims.[4]  To the extent information and/or documents contemplated in the BAP diagnostic criteria are not included in a Claim Package for these Qualifying Diagnoses, the Claims Administrator solicits them.  If that information and/or documentation exists and supports the Qualifying Diagnosis at the time of such diagnosis, its inclusion in the Claim Package results in the presentation of a more complete picture of the Retired NFL Football Player's medical condition and, thereby, helps the merits of the claims.  To the extent that such material does not exist, the Claims Administrator nonetheless permits the claimant to direct that the merits review of the claim proceed to determine whether the diagnosis submitted is "based on principles generally consistent" with the BAP criteria.   Brown Decl., ¶ 11.b and 11.c.

The title "Notice of Deficiency" caused some confusion in the Settlement Class, however, and resulted in calls seeking clarification from the Claims Administrator, which would then

---

[3]      *See* Settlement Agreement, Exhibit A-1, subsections 1(a) and 2(a).

[4]      *See id*. subsections 1(a)(iii) and 2(a)(iii).

explain the process outlined above and the significance of the information and/or documents that were sought.  Brown Decl., ¶ 11.d.  As soon as the Claims Administrator learned that some claimants and their counsel were mistaking these "Notices of Deficiency" as determinations on the merits, the Claims Administrator developed a newly titled form of notice, called "Notice of Preliminary Review."[5]   Not only does the title make clear that the notice is preliminary in nature and prior to any decision on the merits, but each notice now indicates which "deficiencies" need to be responded to before a claim can be reviewed on the merits and which do not.  Brown Decl., ¶¶ 11.c and 11.d.  Moreover, and in keeping with its standard practice, the Claims Administrator provides its toll-free phone number on each of the Notices of Preliminary Review for unrepresented Settlement Class Members and has staff dedicated to particular law firms to answer any questions that arise from such notices or from any other documents or communications made by the Claims Administrator throughout the Settlement Program.  Brown Decl., ¶ 11.e.

### The Alleged Deficiencies Questioned by X1Law

X1Law outlines four "Alleged Deficiencies" it received in response to certain claims for Qualifying Diagnoses of Level 1.5 or 2 Neurocognitive Impairment it submitted on behalf of clients.  Each of these "Alleged Deficiencies" was prepared for a reason, and the notices were intended for the benefit of the claimants.

For example, to ensure that the diagnosing physician actually examined the Retired NFL Football Player, the Notice of Preliminary Review might, as it did with X1Law, seek records of such an examination.  (*See* Alleged Deficiency No. 1.)  The fundamental framework of the Settlement program is the examination of a Retired NFL Football Player by the diagnosing

---

[5]    In most settlements, the claims process forms require tweaking at the outset.  Brown Decl., ¶¶ 4 and 11.d.

physician.  In fact, the Settlement Agreement makes clear that even when the physician who originally made a diagnosis is dead, the physician ultimately signing the Diagnosing Physician Certification Form must conduct an "independent examination" of the living Retired NFL Football Player in addition to reviewing the "medical records that formed the basis" of the diagnosis of the deceased physician.  (*See* Settlement Agreement § 8.2(a)(iii).)

In addition, when information and/or documentation about a decline in neurocognitive ability of a Retired NFL Football Player is not evident in a Claim Package, a Notice of Preliminary Review might, as it did with X1Law, seek records such as prior neuropsychological testing or other corroboration (such as employment records, other medical records, or reports from persons familiar with the Retired NFL Football Player's history and condition) dated before the Qualifying Diagnosis.  (*See* Alleged Deficiencies Nos. 2 and 3.)  This diagnostic criteria is spelled out at Settlement Agreement, Exhibit A-1, subsections 1(a)(ii) and 2(a)(ii) and subsections 1(a)(iii) and 2(a)(iii):

- Evidence of a moderate to severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in two or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual-spatial), provided one of the cognitive domains is (a) executive function, (b) learning and memory, or (c) complex attention

- Such functional impairment shall be corroborated by documentary evidence (*e.g.*, medical records, employment records), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis. In the event that no documentary evidence of functional impairment exists or is available, then (a) there must be evidence of moderate to severe cognitive decline from a previous level of performance, as determined by and in  accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in the executive function cognitive domain or the learning and memory cognitive domain, and at least one other cognitive domain; and (b) the Retired NFL Football Player's functional impairment, as described above, must be corroborated by a third-party sworn affidavit from a person familiar with the Retired NFL Football Player's condition (other than the player

> or his family members), the sufficiency of which will be determined by the
> physician making the Qualifying Diagnosis.

The diagnosing physician may have all necessary evidence for the diagnosis on the date of
encounter, and he or she may acquire additional, supplemental evidence after the date of encounter
via documents, interviews and statements that corroborate the physician's impressions.  Evidence
of functional impairment, however, must be in the physician's hands in some form at the time of
diagnosis.

Similarly, when information and/or documents reflecting the abilities of a Retired NFL
Football Player to handle regular day-to-day tasks (as relevant to diagnosing dementia) is not
evident in a Claim Package, a Notice of Preliminary Review might, as it did with X1Law, seek
records showing an assessment, akin to the National Alzheimer's Coordinating Center's Clinical
Dementia Rating (CDR) scale, of the Retired NFL Player's ability to socialize, engage in daily
activities and otherwise care for himself.  (*See* Alleged Deficiency No. 4.)  Again, this diagnostic
criteria is spelled out at Settlement Agreement, Exhibit A-1, subsections 1(a)(iii) and 2(a)(iii) (*e.g.*,
"The Retired NFL Football Player exhibits functional impairment generally consistent with the
criteria set forth in the National Alzheimer's Coordinating Center's Clinical Dementia Rating
(CDR) scale Category 1.0 (Mild) in the areas of Community Affairs, Home & Hobbies, and
Personal Care.").

The Claims Administrator explained the basis for the Notice of Deficiency flagging these
issues to X1Law on August 14, 2017, prior to the filing of the Motion, and offered to issue a new
Notices of Preliminary Review to allow X1Law additional time to respond.[6]  Brown Decl, Brown

---

[6]     X1Law claims that the Claims Administrator "acknowledged that its administration of the
Settlement Agreement added additional language . . . . [that] amounted to an amendment of the
Settlement Agreement."  Motion at ¶ 31; *see also* ECF No. 8309.  The Claims Administrator has
done no such thing, and any such statement would be untrue.  At minimum, as Mr. Smith, an

Decl., ¶ 15; Smith Decl., ¶ 9.  X1Law appeared initially to be receptive to receiving new Notices

of Preliminary Review for its affected clients to restart the 120-day Response Deadline.  Smith

Decl., ¶ 9.  Before the Notices of Preliminary Review were sent, however, X1Law filed the Motion.

Orran Decl., 11.f.

_Review of Claims on the Merits_

As the Notices of Preliminary Review received by X1Law make clear, most[7] of these

"alleged deficiencies" permit review of the merits of a claim if the Retired NFL Football Player

believes that the Claim Package presents information and/or documents that are "based on

principles generally consistent with the diagnostic criteria" of the BAP. Orran Decl., ¶ 9.

X1Law, like any other claimant or claimant's counsel, can choose to respond to such

"deficiencies" outlined in a Notice of Preliminary Review in two ways.  It can either provide

requested information and/or documents or direct the Claims Administrator to submit the Claim

Package for review on the merits without providing anything further.  Thereafter, review on the

merits will be conducted by the appropriate person or entity.  For most Qualifying Diagnoses made

before the January 7, 2017 Effective Date, the merits review of Claim Packages is conducted by a

Court-appointed member of the Appeals Advisory Panel ("AAP") and, for some Qualifying

Diagnoses, by an Appeals Advisory Panel Consultant.[8]  Such review is "based on principles

generally consistent with the diagnostic criteria set forth in Exhibit 1 (Injury Definitions),

---

employee of the Claims Administrator makes clear in the accompanying declaration, X1Law
misunderstood what he sought to explain.  Declaration of David E. Smith ("Smith Decl."), ¶ 10

[7]    X1Law's failure to include any medical records from the physician who signed the
Diagnosing Physician Certification Form and examined the Retired NFL Football Player is
mandatory to cure.  This is a fundamental component of the Claim Package.

[8]    Settlement Agreement, § 6.4(a); ECF No. 7603.

including consideration of, without limitation, the qualifications of the diagnosing physician, the supporting medical records and the year and state of medicine in which the Qualifying Diagnosis was made."[9]   Only a subset of claims for pre-Effective Date Qualifying Diagnoses are instead reviewed on the merits by the Claims Administrator, such as those that are made by physicians who are now serving as Qualified MAF Physicians.[10]

   *The Claims Submitted by X1Law*

   Each of the claims submitted by X1Law that are referenced in the Motion remain at the preliminary review stage by the Claims Administrator.  Notably—and undisclosed in the Motion— each Claim Package had initially been supported by a Diagnosing Physician Certification Form by one of two neurologists – Dr. Albin Morariu, Sr. or his son, Dr. Mircea Morariu -- who had examined the claimants between October 13, 2016 and January 6, 2017 (the eve of the January 7, 2017 Effective Date), with the Forms signed by one of those neurologists between May 14, 2017 and May 22, 2017.   Brown Decl., ¶¶ 6 and 7. In parallel, one of those neurologists applied for the role to serve as a Qualified MAF Physician in the Settlement Program, but he was not approved for the role.  As a consequence, the Claim Packages supported by diagnoses from that neurologist would be sent to one of the AAP neurologists appointed by the Court as opposed to the Claims Administrator.

   On June 9, 2017, X1Law directed the Claims Administrator to substitute out the Diagnosing Physician Certification Forms of the neurologists who had examined the claimants with new Diagnosing Physician Certification Forms completed by another board-certified neurologist who *had* been approved as a Qualified MAF Physician on May 16, 2017.  Brown Decl.,

---

[9]      Settlement Agreement, § 6.4(b).

[10]      Settlement Agreement § 6.5.

¶ 7.  This substitution would result in bypassing merits review by the AAP in favor of the Claims Administrator.  However, the Claims Administrator determined that there were no records in the Claim Packages showing that the Qualified MAF Physician conducted any examination of the X1Law clients.  Brown Decl., ¶ 8. In fact, the Claims Administrator thereafter confirmed with the Qualified MAF Physician that no such physical examination occurred.  Brown Decl., ¶ 8. Accordingly, the Claims Administrator cited the resulting deficiency in the Notices of Preliminary Review that are the subject of the Motion, which also flagged the other issues such as lack of corroboration of neurocognitive impairment and loss of neurocognitive function.  To date, there has been no determination of the merits of these Claim Packages submitted by X1Law.

**ARGUMENT**

This judicially approved Settlement Program stages the claims review process in four parts: receipt of Claim Packages by the Claims Administrator, preliminary review of the Claim Packages by the Claims Administrator, review of the merits of complete Claim Packages by either the Claims Administrator or the AAP, and potential appeal of decisions on the merits to the Court (or the Special Masters upon referral by the Court).  X1Law has only begun this process, reaching the preliminary review of certain of the Claim Packages it has filed, and seeks to mount a *de facto* appeal before ever receiving a denial on the merits of the claims.

"Class settlements are rarely self-executing."  David F. Herr, *Annotated Manual for Complex Litigation (Fourth)* § 21.66 (rev. ed. 2015).  Indeed, here the Claims Administrator was given authority to implement a process for the handling, review and approval of Claim Packages, and the "[p]erform[ance of] such other tasks reasonably necessary to accomplish the goals contemplated by this Settlement Agreement, as agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties."  (*See* Settlement Agreement §§ 10.2(b)(5)-(8).  As this Court noted in

addressing objections to the rigors of the Settlement's claims process: "the protections built into the Settlement [are] to ensure that deserving claims are approved."  *In re: National Football League Players' Concussion Injury Litig.*, 307 F.R.D. at 414 (noting that a rigorous claims process also serves to root out fraudulent claims).[11]  The Parties believe that the Claims Administrator is faithfully carrying out its responsibilities consistent with the Settlement Agreement to ensure those twin goals.  Moreover, the Claims Administrator is not performing its role in a vacuum.  To the contrary, the Court appointed the Special Masters to "oversee the implementation and administration of the Agreement" (Order, ECF. No. 6871), and Co-Lead Class Counsel also are actively monitoring the implementation of the Settlement Program on behalf of the Settlement Class.

The Notices of Preliminary Review received by X1Law reflect the execution of the Claims Administrator's duties and operate as intended to notify claimants of information and/or documents that they may (or in certain cases must) add to their Claim Package before review on the merits, explain what is (and is not) necessary for such review, and provide contact information for the Claims Administrator to the extent there are questions.  Sometimes the answer to a question makes things harder, but that does not make the answer wrong.  After preliminary review of the Claim Packages that X1Law submitted, the Claims Administrator noted the issue with the substituted Diagnosing Physician Certification Forms on which X1Law seeks to rely.  X1Law either can rectify that issue by simply reverting to the Diagnosing Physician Certification Forms of the neurologist who actually examined the claimants—and accept the reality that those claims,

---

[11]     To the extent that X1Law disapproves of these protections provided in the Settlement Agreement, the time to object has long since passed.  The Parties negotiated a Settlement Agreement that this Court—and the Third Circuit Court of Appeals—found fair, reasonable and adequate.

like most other pre-Effective Date diagnoses, will be reviewed on the merits by the AAP—or accept a denial of the claims by the Claims Administrator with the replacement physician and appeal to the Court by arguing that the diagnosing physician need not actually examine the claimant.  In turn, the Parties will respond that X1Law is wrong, and the Court will then rule after reviewing the full and completed appeal record.

In addition, the Claims Administrator has notified X1Law of the Claim Packages' lack of certain corroborating information and/or documents.  As was explained to X1Law, such information and/or documents are not *mandatory* for a review on the merits, but instead are strongly encouraged to be provided to the extent such material existed and was considered as part of the Qualifying Diagnosis.  Rather than provide such information and/or documents, or request that the Claims Administrator process the Claim Packages for review on the merits without any such additional information and/or documents, X1Law filed the Motion. By doing so, X1Law ignores the Settlement administration processes approved by the Court that ensure the orderly operation of the Program and prevent this Court from piecemeal, premature and unnecessary motion practice.

In sum, X1Law is not permitted to play "Chutes and Ladders" with the claims process, opting to climb to a privileged place without ever passing preliminary review of its Claim Packages. The Claims Administrator created procedures based on and consistent with the Settlement Agreement approved by this Court.  The Claims Administrator's preliminary review of Claim Packages prior to merits review seeks to ensure that fulsome Claim Packages are evaluated such that the valid claims are noticed for payment of Monetary Awards.  X1Law may not like what they heard from the Claims Administrator with respect to the Claim Packages at issue in the Motion,

but that does not mean they get to "shoot the messenger" and ask the Court to intervene prematurely.

## CONCLUSION

For all of the foregoing reasons, the Motion should be denied.

Dated: September 28, 2017

Respectfully submitted,

_____/s/ Christopher A. Seeger_____
Christopher A. Seeger
SEEGER WEISS LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

___/s/ Sol Weiss_____
Sol Weiss
ANAPOL WEISS
130 North 18th St., Ste 1600
Philadelphia, PA 19103
Phone: (215) 735-1130
Fax: (215) 875-7701
sweiss@anapolweiss.com

*Co-Lead Class Counsel*

_____/s/ Brad S. Karp_____
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Brad S. Karp
Bruce Birenboim
Lynn B. Bayard
1285 Avenue of the Americas
New York, NY 10019-6064
Tel:   (212) 373-3000

PEPPER HAMILTON LLP

Sean P. Fahey
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
Tel:    (215) 981-4000

*Attorneys for Defendants the National Football
League and NFL Properties LLC*

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was served on all counsel of record via the Court's ECF system on September 28, 2017.

<u>/s/ Christopher A. Seeger</u>

Christopher A. Seeger