UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>    Plaintiffs,<br><br>    v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>    Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**CO-LEAD CLASS COUNSEL'S MEMORANDUM IN OPPOSITION TO
MOTION OF CASE STRATEGIES GROUP (F/K/A NFL CASE CONSULTING, LLC),
IT STRATEGIES GROUP, CRAIG SIENEMA, JAMES MCCABE,
LIBERTY SETTLEMENT SOLUTIONS, LLC, LIBERTY CONTINGENT
RECEIVABLES, LLC, LIBERTY SETTLEMENT FUNDING,
JMMHCS HOLDINGS, LLC, AND MARC HERMES
<u>TO CERTIFY QUESTIONS FOR IMMEDIATE APPEAL AND FOR STAY</u>**

**I.    INTRODUCTION**

Case Strategies Group (formerly known as NFL Case Consulting, LLC), and its principals and related entities (collectively, "CSG" or "Movants"), who literally created a business focused exclusively on the Settlement and the Settlement Class Members in this litigation, request that this Court certify for immediate interlocutory appeal, pursuant to 28 U.S.C. § 1292(b)("Motion to

Certify") [ECF No. 8381], the Court's September 12, 2017 Order granting in part Co-Lead Class Counsel's Motion to Compel ("Motion to Compel") [ECF No. 8319] and directing Movants to produce "a list of all Retired NFL Players with whom those entities communicated, … a list of all Retired NFL Players with whom those entities entered into agreements related to the Settlement, [and] … a copy of any agreement related to the Settlement and entered into with a Retired NFL Player."  Order, dated Sept. 12, 2017 ("Order") [ECF No. 8366].  The asserted basis of CSG's Motion to Certify and the crux of its opposition to the Motion to Compel was its contention that this Court lacks the authority to order discovery from them absent a subpoena.

The retort of Co-Lead Class Counsel ("Class Counsel") is a simple one, based upon fundamental fairness.  Persons and entities should not be permitted to (1) insidiously involve themselves with class members related to a class action settlement being administered by a court owing a fiduciary duty to those class members, and (2) simultaneously claim that the court lacks jurisdiction over them because they are nonparties.  Put another way, those who entangle themselves in the implementation of a settlement cannot have it both ways and fend off inquiries concerning their conduct by throwing up nonparty status as a shield.

Reading CSG's motion papers, one might think that this Court was equivocal on the issue of whether it possesses the authority to order discovery from entities and persons, like CSG, who actively solicited and contracted with Class Members for percentages of their potential future monetary awards under the Settlement over which this Court presides.  This Court was not equivocal.  Indeed, at the outset of the August 30, 2017 hearing on the Motion to Compel, the Court specifically stated, as the MDL Judge presiding over this class action, "when you have a class action, … you think that everything's before you, and usually you're right[.]"  T. of Aug. 30, 2017 telephonic hearing attached to Decl. of Christopher A. Seeger, dated Sept. 29, 2017

("Seeger Decl."), at Exhibit A ("Ex. A"), at 12:20-22.  The Court later noted "[i]f it has to do with … the NFL players, I want to know who they are." *Id.*, at 25:10-11.  *See also id.*, at 27:7-9 ("I want class counsel to know the names of the members of my – of the class before me who are involved[.]").

Contrary to CSG's bold assertion, this Court's comment that counsel for CSG could appeal if he "[did]n't think that [the Court has] the authority" to order discovery from CSG in no way constituted express advice that the Court would be amenable to certifying the question for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  *Compare* Seeger Decl., Ex. A, at 27:3-4[1] *with* CSG's Motion to Certify [ECF No. 8381] at 2 ("[T]he Court expressly suggested it would permit [certification for immediate appeal under § 1292(b)].") and Memo. in Support Motion to Certify [ECF No. 8381-1], at 1 (claiming that Court gave "express advice" to CSG that it should seek certification for interlocutory appeal).  The Court did no such thing – no reference was made to § 1292(b) at all.  Rather, the Court's comment reflected confidence in its authority to order CSG to identify the Class Members and produce the contracts the Class Members entered into with CSG, under which CSG is purportedly to be paid 10% or 15% of the Class Members' monetary awards under the Settlement.[2]

---

[1]  CSG makes much of this statement by the Court, quoting it twice in its 12-page memorandum. *See* ECF No. 8381-1, at pp. 1, 5.

[2]  *See* exemplar contracts of CSG (and its predecessor, NFL Case Consulting) at ECF Nos. 7812-2, at 6 ("15% of the gross recovery **plus** any and all costs incurred if the client has his medical testing conducted independently of the settlement …"), 7812-3, at 5 ("10% of the gross recovery plus any and all costs incurred by the Consultant on the Client's behalf").  The contracts also include a clause whereby "Client hereby authorizes and instructs any attorney or attorneys that Client retains or has retained to represent Client regarding the claim(s) covered by this agreement to pay Consultant its fees … directly from the Claim(s) settlement, award, and/or judgement proceeds[.]"  ECF No. 7812-2, at 6; ECF No. 7813-3, at 5.

Further, the Court's comment followed counsel for CSG repeatedly pressing the Court to order Class Counsel to proceed by way of subpoena. *See* Seeger Decl., Ex. A, at 25:4-5, 25:15-16. Also notable is the fact that the Court had not directed Class Counsel to serve subpoenas from the outset in order to carry out the directive set forth in this Court's prior Notice & Order, dated July 19, 2017 ("Discovery Order") [ECF No. 8037]. The Court specifically authorized Class Counsel to conduct discovery, including interrogatories, document requests and depositions, on an expedited basis because the Court was concerned about "deceptive practices targeting Settlement Class Members," and even suggested the types of information the discovery requests might include. *See* ECF No. 8037. It neither directed nor even mentioned the issuance of subpoenas.

That Movants are Florida citizens is of no moment, as is the fact that they are nonparties. Class Counsel submit in support of this opposition, and have maintained throughout the meet-and-confer process with CSG: because Movants voluntarily chose to involve themselves in the implementation of this Settlement by creating a business out of soliciting and contracting with Class Members and profiting directly from this Settlement's res, which is being administered under this Court's auspices, consistent with the Settlement Agreement that this Court finally approved on April 22, 2015, Movants have placed themselves squarely within the Court's jurisdiction. CSG has refused to address this salient fact and argument, time and again. They fail to address it on this Motion to Certify.[3]

---

[3] For the first time, in this Motion to Certify, CSG finally reveals its endgame. It wants to take this issue to Florida. CSG argues: "Congress has determined that any motion to quash or enforce a subpoena be heard in the court where compliance is required. Fed. R. Civ. P. 45(d)(3) & 45(g). This territorial protection would require this matter to be heard, in the first instance, in the district where Movants reside – the Southern District of Florida. Yet the Court's Order runs in direct contravention of the territorial protections required under the Federal Rules." Memo. in Support Motion to Certify, at 10. But even if CSG were correct that a subpoena is required, its endgame is in vain, for *this* Court would still be the one to hear any discovery dispute. *See* 28 U.S.C. § 1407(b) (MDL transferee court may "exercise the powers of a district judge in any district"); *In re*

Thus, the Court should deny the Motion to Certify and Movants' request for a stay of discovery.

## II. ARGUMENT

### A. The Court Should Deny the Motion to Certify

"The decision to grant a section 1292(b) certificate is within the sound discretion of the Court." *Burns v. Lavender Hill Herb Farm, Inc.*, No. 01-7019, 2005 WL 545288, at *1 (E.D. Pa. Mar. 2, 2005). Further, "the discretion of the trial judge whether to certify [under 28 U.S.C. § 1292(b)] is itself unreviewable." *Forsyth v. Kleindienst*, 599 F.2d 1203, 1208 (3d Cir. 1979). *See also U.S. v. Riddick*, 669 Fed. Appx. 613, 614 n.2 (3d Cir. 2016); *Moses v. CashCall, Inc.*, 781 F.3d 63, 80 (4th Cir. 2015). Indeed, the very prefatory language of the statute refers to the district court's opinion as to whether to certify for interlocutory appeal:

> *When a district judge*, in making in a civil action an order not otherwise appealable under this section, *shall be of the opinion* that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. §1292(b) (emphasis added).

As discussed above, this Court made clear during the August 30, 2017 teleconference that it was of the opinion that no subpoena was required and that it had the authority to order discovery

---

*Asbestos Prods. Liab. Litig. (No. VI)*, 256 F.R.D. 151, 154 (E.D. Pa. 2009) ("The Eastern District of Pennsylvania is the district in which the MDL proceeding is pending. Accordingly, under § 1407, the court has jurisdiction to address motions to compel compliance with the subpoenas and motions to quash the subpoenas whether they request oral testimony or production of documents.").

from CSG. That being the case, any attempt to appeal by CSG should be made through a procedural vehicle other than 28 U.S.C. § 1292(b). Nevertheless, Class Counsel continue the analysis for the sake of completeness.

All three requirements under section 1292(b) must be sufficiently established for a district court to certify its order for interlocutory appeal. *Koken v. Viad Corp.*, No. 03-5975 2004 WL 1240672, at *1 (E.D. Pa. May 11, 2004) (citing *Douris v. Schweiker*, 229 F.Supp.2d 391, 412 (E.D. Pa. 2002)). "The order must (1) involve a controlling question of law, (2) offer substantial ground for difference of opinion as to its correctness, and (3) if appealed immediately materially advance the ultimate termination of the litigation." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974) (internal quotation marks omitted).

CSG's attempt to demonstrate that it meets each requirement begins with a faulty premise. It characterizes itself in the title of its Motion to Certify, and repeatedly in the supporting Memorandum, as a mere nonparty to this action, and then cites caselaw addressing what is required to obtain discovery from those persons and entities who are true *disinterested* nonparties to a litigation. *See* CSG's Mem. (ECF No. 8381-01), at section III.A ("Ordering a nonparty to respond to discovery[.]"), section III.B ("Ordering a nonparty to respond to discovery [.]") and III.C ("[T]he Court's decision to order nonparties to respond to discovery[.]"). It is difficult, though, to envision a scenario in which a nonparty could be more *interested* than CSG, which depends on its fees being paid directly out of the Settlement's proceeds, *i.e.*, the monetary awards, to be paid to Class Members with whom it has contracted. *See supra* n.2.

Again, with the exceptions of *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 05-MD-1720, 2014 WL 4966072 (E.D.N.Y. Oct. 3, 2014) and *In re Visa Check/Mastermoney Antitrust Litig.*, No. CV-96-5238 (JG), 2006 WL 1025588 (E.D.N.Y. Mar.

31, 2006), discussed below, CSG cites no case wherein the third parties from whom discovery was sought had actively involved themselves in the litigation before the court, or sought to reap profits from class members in a class action settlement. Class Counsel made this point and distinguished in its reply memorandum in further support of the Motion to Compel many cases that CSG cites again in its memorandum in support of the Motion to Certify. *See* ECF No. 8351, at 2 n.1 (discussing *Taggart v. Wells Fargo Home Mortg., Inc.*, No. 10-cv-00843, 2012 WL 4462633 (E.D. Pa. Sept. 27, 2012); *Hill v. Dodson*, No. 1:12 CV135 LMB, 2013 WL 5355157 (E.D. Mo. Sept. 24, 2013); and *Shipes v. Amurcon Corp.* No. 10-14943, 2012 WL 1183686 (E.D. Mich. Apr. 9, 2012)). The cases that CSG cites fail to support its position that this Court lacks the jurisdiction to order it to respond to discovery and that a subpoena is required.[4]

       1.       <u>The September 12, 2017 Order Does Not Involve a Controlling Question of Law as to Which There Is Substantial Ground for Difference of Opinion as to Its Correctness</u>

There is no difference of opinion as to the fact that courts presiding over class actions have jurisdiction over interlopers, like CSG, seeking to solicit and profit from the class members to whom the court owes a fiduciary duty. In *McWilliams v. Advanced Recovery Sys., Inc.*, 176 F.

---

[4] CSG's conduct is more analogous to those nonparties who knowingly act in concert to violate a court's injunction. "Several Circuits have endorsed the so-called 'super-contacts' theory of personal jurisdiction with respect to domestic non-party aiders and abettors…The super-contacts theory is of a piece with the well-established rule that a court has personal jurisdiction over any individual who 'undertakes activity designed to have a purpose and effect in the forum.'" *ABI Jaodi and Azar Trading Corp. v. Cigna Worldwide Ins. Co.*, No. 91-6785, 2016 WL 3959078, at *7-8 (E.D. Pa. July 22, 2016) (quoting *S.E.C. v. Homa*, 514 F.3d 661, 674 (7th Cir. 2008)). Under those circumstances, courts hold that traditional notions of fair play and substantial justice are fulfilled and there is no problem with haling that nonparty into court. *See also Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 137 (2d Cir. 2014) (in asset freeze injunction case, circuit court noted that "courts first assess the connection between the nonparty's contacts with the forum and the order at issue, and then decide whether exercising jurisdiction for the purposes of the order would comport with fair play and substantial justice.").

Supp. 3d 635 (S.D. Miss. 2016), the court held that it had jurisdiction over third-party attorneys who attempted to "poach" members of certified class by sending solicitation letters.

> Rule 23 and Supreme Court precedent give this Court jurisdiction to protect class members and impose appropriate conditions on intervenors.… McHale and Falgout invaded this class action by sending solicitation letters to members of a certified class. They were not invited. In fact, they acted like vultures. They capitalized on the work that had been done by class counsel and hunted for eligible class members by scouring the state court records. They did not have to expend effort in creating the theory of recovery; they merely had to find those who had been sued by ARS and YWW. They brought themselves within the scope of Rule 23 and this Court's jurisdiction.

*Id.* at 642.

The court in *In re Visa Check* recognized its power to be proactive vis-à-vis third parties seeking to involve themselves with class members in order to profit from the settlement funds:

> I have presided over this action since 1996. With the express consent of all parties, I played an active role in the settlement discussions and have maintained an active role in the administration of the settlement. . . . The nature of the Court's interest is as simple as it is strong: the class members must not be misled. Where false or misleading statements are used to solicit business from them, I have no intention to sit by and relegate them to a cause of action for breach of contract or fraud. To do otherwise-that is, *to say that I am powerless to take steps, both proactive and reactive, to protect each class member's interest in the settlement funds, even when I know they are being misled-would be an abdication of responsibility. It would also erode the class members' and the public's respect for the settlements themselves, and for the process that produced them.*

2006 WL 1025588, at *4 (emphasis added).

CSG cites *In re Visa Check* and *In re Payment Card* for the proposition that a subpoena should be served upon CSG in this case, because subpoenas were served in those cases. But, CSG could not and did not claim that the court in those cases determined that subpoenas were required. *See* Memo. in Support Motion to Certify [ECF No. 8381-1], at 8-9 (quoting from counsel's submission from *In re Payment Card* and arguing that "in those cases, the parties and Judge Gleeson jointly agreed that 'appropriate discovery' from Class Counsel to nonparty claims

management and claims purchasing entities came *in the form of subpoenas*") (emphasis in CSG's Memo.).  That class counsel and the claims entities *may have agreed to* a procedure in those related cases is a far cry from authority holding that a subpoena was required in this context and hence caselaw showing a substantial difference of opinion required for section 1292(b) certification.

In fact, the Magistrate Judge presiding over discovery regarding at least one nonparty claims entity in *In re Payment Card*, recognized at a hearing in 2015 (after the 2013 submissions to which CSG cites) that no subpoena or even formal discovery requests had been served, but he nevertheless ordered the entity's counsel to turn over information to class counsel relating to the identities of class members that had signed up with the claims entity for services.  The relevant portions of the colloquy as between counsel for the entity, class counsel and the court are as follows:

> MS. BERNAY: So, another thing that we have asked for from the beginning back in, in fact, January, the number and identity of the merchants who have signed up for this program.
> * * *
> MR. KROB: *We have not received a formal discovery request. All we received is an E-mail saying these are the things we would like to get.*
>
> THE COURT: That's your view as well, Ms. Bernay?
>
> MS. BERNAY: No, our view is that all of these matters fall under Judge Brodie's February 5th order. Where we specifically discussed in fact –
>
> THE COURT: I thought Judge Brodie entered an order as well.
> * * *
>
> THE COURT: I'm satisfied that this is a dispute we shouldn't continue to have. Please provide Ms. Bernay the information. If you have it there, at the table, just walk it across the room if you would, please.
>
> MR. KROB: I ask we discuss protections to it first.
>
> THE COURT: I don't believe there is a need for that, sir. Please walk it across the room.

*See* Seeger Decl., at Ex. B (transcript from Mar. 30, 2015 Order to Show Cause hearing in *In re Payment Card*) (emphasis added).

Therefore, CSG has not met its burden. CSG has failed to demonstrate that the question of whether this Court has jurisdiction over CSG such that a subpoena is not required for this Court to have the authority to order CSG to participate in discovery is a controlling question of law as to which there is substantial ground for difference of opinion.

### 2. Immediate Appeal Will Not Materially Advance the Ultimate Termination of the Litigation

Nor would section 1292(b) certification materially advance the ultimate termination of this litigation. Save opt-out claims with which CSG is not even associated, this litigation already has terminated – it concluded in a Settlement, and appeals relating thereto were exhausted. Immediate appeal of this Court's September 12, 2017 Order, assuming the Third Circuit would, in its discretion, permit the appeal, would advance nothing.[5]

### B.  The Court Should Deny a Stay

CSG assumes that the Third Circuit will undertake to decide this issue. Memo. in Support Motion to Certify, at 11. As such, for reasons of judicial economy, CSG argues, discovery should be stayed. Absent a stay, CSG contends, it will be forced to incur the expenses attendant with discovery and to forego "the benefit of the procedural and geographic protections" (*i.e.*, let the district court in Florida decide), to which it allegedly is entitled.

---

[5] Oddly, at page 5 of its Memorandum, CSG, in support of its argument that certification for immediate appeal would advance the ultimate termination of the litigation, states that all requirements have been met and, citing to *UnitedHealth Grp. Inc. v. Macelree Harvey, Ltd.*, No. 16-1026, 2016 WL 5239675 (E.D. Pa. Sept. 21, 2016), refers to the elimination of the need for a trial and the elimination of complex issues for trial. In light of the procedural posture of this case, citing to these alleged benefits that would purportedly be reaped from an immediate appeal, makes no sense.

At this juncture, all the Court has directed CSG to do is to produce lists of the names of the Class Members who it solicited and with whom it has entered into contracts and to produce the contracts themselves.  It is disingenuous for CSG to balk about expenses and wasted resources, both in light of the discovery it has been ordered to produce and given that it is CSG who has brought upon itself the additional expense and taxing of resources because of its baseless resistance to Court-ordered discovery in a case that CSG voluntarily inserted itself into.

### III.    CONCLUSION

For the aforementioned reasons, the Court should deny the Motion and decline to amend and certify its September 12, 2017 Order for immediate appeal under 28 U.S.C. § 1292(b), and it should deny a stay.

Dated:  September 29, 2017

Respectfully submitted,

/s/ Christopher A. Seeger
Christopher A. Seeger
SEEGER WEISS LLP
77 Water Street
New York, NY  10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

*Co-Lead Class Counsel*

Sol Weiss
ANAPOL WEISS
One Logan Square
130 N. 18th St., Sutie 1600
Philadelphia, PA  19103
Phone: (215) 735-1130
Fax: (215) 735-2024
sweiss@anapolweiss.com

*Co-Lead Class Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing and supporting Declaration were served on all counsel of record via the Court's ECF system on September 29, 2017.

*/s/ Christopher A. Seeger*
Christopher A. Seeger