## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## CO-LEAD CLASS COUNSEL'S MEMORANDUM OF LAW ON THE QUESTION REFERRED TO THIS COURT BY THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK IN *CONSUMER FINANCIAL PROTECTION BUREAU v. RD LEGAL FUNDING, LLC*, NO. 1:17-CV-00890 (LAP) (S.D.N.Y.)

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................ 1

II. ARGUMENT:  THE SETTLEMENT AGREEMENT BARS ASSIGNMENTS OF
    MONETARY AWARDS.............................................................................................. 4

    A.  The Settlement Agreement Expressly Forbids Assignments................................. 4

    B.  RD Legal's Arguments Run Afoul of Principles of Contract Interpretation .......... 6

    C.  That the Anti-Assignment Provision References the Operative Class
        Complaint Rather Than the Settlement Agreement Does Not Avail RD Legal ..... 7

    D.  The Suggestion That Class Counsel's Interpretation Would Invalidate
        Attorneys' Contingency Fee Arrangements Is Specious ..................................... 10

    E.  RD Legal's Belated Argument That the Settlement's Anti-Assignment
        Provision Runs Afoul of the UCC Also Fails ...................................................... 11

III. CONCLUSION........................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**                                                                                                     **Page(s)**

*Air Line Stewards & Stewardesses Assoc. v. Trans World Airlines, Inc.*,
  713 F.2d 319 (7th Cir. 1983) ................................................................................. 5

*Allhusen v. Caristo Construction Corp.*,
  103 N.E.2d 891 (N.Y. 1952) ................................................................................. 5

*American Pipe & Construction Co. v. Utah*,
  414 U.S. 538 (1974) ............................................................................................... 9

*Audino v. Lincoln First Bank of Rochester*,
  481 N.Y.S.2d 928 (App. Div. 4th Dep't 1984), *aff'd mem.*, 480 N.E.2d 747,
  491 N.Y.S.2d 158 (N.Y. 1985) ............................................................................. 7

*Bailes v. Lineage Logistics, LLC*,
  No. 15-CV-02457-DDC-TJJ, 2016 WL 4415356 (D. Kan. Aug. 19, 2016) ............................ 10

*Commissioner v. Banks*,
  543 U.S. 426 (2005) ............................................................................................. 11

*Crown, Cork & Seal Company v. Parker*,
  462 U.S. 345 (1983) ............................................................................................... 9

*In re American Expresss Financial Advisors Securities Litigation*,
  672 F.3d 113 (2d Cir. 2011) ................................................................................. 5

*In re Chorney*,
  277 B.R. 477 (Bankr. W.D.N.Y. 2002) ............................................................... 13

*In re Lucent Technologies, Inc., Securities Litigation*,
  307 F. Supp. 2d 633 (D.N.J. 2004) ..................................................................... 10

*Liberty Life Assurance Co. of Boston v. Stone Street Capital, Inc.*,
  93 F. Supp. 2d 630 (D. Md. 2000) ..................................................................... 13

*Luver Plumbing & Heating, Inc. v. Mo's Plumbing & Heating*,
  43 N.Y.S.3d 267 (App. Div. 1st Dep't 2016) ..................................................... 7

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
  514 U.S. 52 (1995) ................................................................................................. 6

*Muzak Corporation v. Hotel Taft Corp.*,
  150 N.Y.S.2d 171 (N.Y. 1956) ............................................................................. 7

*Neuroaxis Neurosurgical Associates, PC v. Costco Wholesale Co.*,
  919 F. Supp. 2d 345 (S.D.N.Y. 2013) ....................................................................... 5

*New York University v. Pfizer Inc.*,
  53 N.Y.S.3d 284 (App. Div. 1st Dep't 2017) ............................................................ 7

*Orlowski v. Dominick's Finer Foods, Inc.*,
  No. 95 C 1666, 1998 WL 161020 (N.D. Ill. Mar. 31, 1998) .................................... 10

*Powell v. Omnicom*,
  497 F.3d 124 (2d Cir. 2007) ....................................................................................... 5

*Rainbow v. Swisher*,
  527 N.E.2d 258 (N.Y. 1988) ...................................................................................... 5

*Robin v. Sun Oil Co.*,
  548 F.2d 554 (5th Cir. 1977) ...................................................................................... 5

*Ronen v. Cohen*,
  5 N.Y.S.3d 404 (N.Y. App. Div. 1st Dep't 2015) ..................................................... 5

*Schiavone Construction Co. v. City of New York*, No. 94 Civ. 1153 (CSH),
  1995 WL 714339 (S.D.N.Y. Dec. 5, 1995), *aff'd*, 99 F.3d 546 (2d Cir. 1996). ...... 13

*Short v. Singer Asset Finance Company*,
  107 F. App'x 738 (9th Cir. 2004) ............................................................................... 13

*Silber v. Mabon*,
  957 F.2d 697 (9th Cir. 1992) ...................................................................................... 10

*Singer Asset Finance Company v. Bachus*,
  741 N.Y.S.2d 618 (App. Div. 4th Dep't), *leave to appeal denied*, 745 N.Y.S.2d 737
  (App. Div. 4th Dep't) & 752 N.Y.S.2d 1 (Table) (N.Y. 2002) .................................. 13

*Sullivan v. International Fidelity Insurance Co.*,
  465 N.Y.S.2d 235 (App. Div. 2d Dep't 1983) .......................................................... 6

*Texas 1845, LLC v. Kyaw*,
  986 N.Y.S.2d 574 (App. Div. 2d Dep't 2014) .......................................................... 5

*Tolmasoff v. General Motors, LLC*,
  No. 16-11747, 2016 WL 3548219 (E.D. Mich. June 30, 2016) ................................ 10

*United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen*
  *& Helpers of America, AFL-CIO*, 970 F.2d 1132 (2d Cir. 1992) .............................. 6

iii

*University Mews Associates v. Jeanmarie*,
   471 N.Y.S.2d 457 (Sup. Ct. N.Y. Cty. 1983)............................................................... 6

*Valente v. Pepsico, Inc.*,
   89 F.R.D. 352 (D. Del. 1981)....................................................................................... 10

*Yoi-Lee Realty Corp. v. 177th Street Realty Associates*,
   626 N.Y.S.2d 61 (App. Div. 1st Dep't 1995).............................................................. 7

**Statutes**

26 U.S.C. § 104(a)(1) .................................................................................................... 12

26 U.S.C. § 104(a)(2).................................................................................................... 12

N.Y. U.C.C. Law§ 9-109(a)(3), cmt. 15 ..................................................................... 12

N.Y. U.C.C. Law§ 9-408(a).......................................................................................... 12

N.Y. U.C.C. Law§ 9-408(d)(1)..................................................................................... 12

**Other Authority**

*Restatement (Second) of Contracts* § 317 (1981) ......................................................... 6

## I.   <u>INTRODUCTION</u>

In February 2017, the federal Consumer Financial Protection Bureau ("CFPB") and the New York State Attorney General ("NYAG") jointly brought an action in the Southern District of New York against Creskill, New Jersey-based RD Legal Funding, LLC; RD Legal Finance, LLC; RD Legal Funding Partners, LP; and their founder and owner, Roni Dersovitz (collectively, "RD Legal").  Charging RD Legal with violations of the federal Consumer Financial Protection Act, as well as sundry New York State laws, including statutes barring fraud, deceptive practices, false advertising, criminal and civil usury, and the assignment of personal injury claims, the CFPB and NYAG seek to enjoin RD Legal's predatory practices involving advances of funds at usurious rates to severely-injured individuals who are entitled to receive compensation under a settlement fund or settlement agreement.  Compl., *passim*, *Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC*, No. 1:17-CV-00890 (LAP) (S.D.N.Y. filed Feb. 7, 2017) (the "CFPB Action").[1]

Specifically, RD Legal has made such advances to individuals entitled to benefits under the James Zadroga 9/11 Health and Compensation Act of 2010 (commonly known as the "Zadroga Fund") and, as is relevant to this multidistrict litigation ("MDL"), to members of the Settlement Class of Retired NFL Football Players and derivative beneficiaries and authorized representatives that was certified in connection with the 2015 Settlement Agreement.  *See* Aug. 21, 2017 Seeger Decl., Ex. C [ECF No. 8301-5] (Aff. of Roni Dersovitz, dated May 15, 2017, at ¶ 5, filed in support of RD Legal's mot. to dismiss CFPB Action, attesting to purchase of portion of 7 Class Members' monetary awards).  In an attempt to circumvent its being subject to federal and state lending laws,

---

[1] A copy of the complaint in the CFPB Action was annexed as Exhibit A [ECF No. 8301-3] to the Declaration of Christopher A. Seeger [ECF No. 8301-2] filed in support of Co-Lead Class Counsel's August 21, 2017 motion to compel RD Legal to respond to discovery requests propounded in connection with this Court's July 19, 2017 Order [ECF No. 8037] ("Aug. 21, 2017 Seeger Decl.").  All page references are to ECF pagination, not to pages of the original document.

RD Legal has packaged the loans as purchases of the borrowers' monetary award rights. *See* ECF No. 8301-3 (Compl. in CFPB Action ¶¶ 6, 19, 34-35, 37-42).

RD Legal moved to dismiss the CFPB Action on numerous grounds, including by challenging the CFPB's very constitutionality. As is relevant here, RD Legal maintains that the monies it advances are not really loans to the Class Members (and hence are not subject to the federal and state laws pursuant to which the CFPB and NYAG filed suit) but, instead, that it purchases (and thus receives assignments of) Class Members' anticipated monetary awards, which it maintains is permissible under the Settlement.

Co-Lead Class Counsel ("Class Counsel") became aware of the CFPB Action and, specifically, that RD Legal has purported to "purchase" portions of Class Members' anticipated monetary awards at steep discounts – exceeding fifty percent in most instances – that disguise the exorbitant rates of interest charged for the monies advanced.[2]

Given their strong interest in ensuring that Class Members receive the maximum benefits to which they may be entitled and that they are protected from exploitation, Class Counsel sought leave to file an *amicus curiae* brief in the CFPB Action on the issue of whether the Settlement prohibits assignments of monetary awards. *Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC*, No. 1:17-CV-00890 (LAP) (S.D.N.Y.), ECF Nos. 45 & 45-1 (July 25, 2017), 47 (July 31,

---

[2] Aug. 21, 2017 Seeger Decl., Ex. G-1 [ECF No. 8301-9], at 2-3, 22-23, 45-46 ("Assignment and Sale Agreement[s]," whereby RD Legal agreed to pay class members $202,460.31 for $425,166.66 portion of anticipated $1.5 million award; $343,120.53 for $665,234.45 portion of anticipated $2.47 million award; and $249,574.46 for $510,000 portion of anticipated $1.5 million award, respectively); *id.*, Ex. G-2 [ECF No. 8301-10], at 2-3, 24-25, 46-47 ("Assignment and Sale Agreement[s]," whereby RD Legal agreed to pay class members $249,574.46 for $510,000 portion of anticipated $1.5 million award; $242,857.14 for $510,000 portion of anticipated $1.5 million award; and $242,857.14 for $510,000 portion of anticipated $1.5 million award, respectively).

2017); ECF Nos. 8197, 8197-1 (Aug. 1, 2017) (letter to this Court, advising of S.D.N.Y. proposed *amicus* filing, and copy of proposed brief).

As the Court is well aware, many Class Members suffer from neurocognitive and neuromuscular impairments, including Alzheimer's Disease, other forms of dementia, Parkinson's Disease, and ALS; are in many cases of advanced age (having last played in the NFL decades ago); are in difficult financial straits; or are affected by some combination of these circumstances – factors that render them extremely vulnerable to manipulation by predatory lenders. Concerned that a judicial validation of RD Legal's position would have serious repercussions for the Settlement Class, and could expose countless other Class Members to similar predatory lending practices, whether by RD Legal or other lenders eyeing an opportunity for a nearly risk-free windfall, Class Counsel sought to address RD Legal's erroneous interpretation of the Settlement Agreement, which squarely prohibits assignments. In the alternative, Class Counsel proposed that Judge Preska refer the issue of whether the Settlement prohibits the very sort of monetary award assignments that RD Legal has entered into with Class Members to this Court for resolution given that the issue has ramifications beyond the CFPB Action.[3] After consulting with the Court, Judge Preska issued an Order referring the issue to this Court. *Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC*, No. 1:17-CV-00890 (LAP) (S.D.N.Y. Order filed Sept. 8, 2017) (ECF No. 59).

In accordance with Judge Preska's September 8, 2017 Order, Class Counsel and the parties in the CFPB Action met and conferred and submitted a proposed schedule for the *de novo* briefing of the issue of the anti-assignment provision's interpretation. ECF Nos. 8380, 8408, 8408-1. On September 27, 2017, the Court entered an Order adopting that schedule. ECF No. 8409.

---

[3] As Class Counsel noted at the September 19, 2017 hearing on deceptive third-party practices, there are several lenders to Class Members besides RD Legal that have purported to have packaged loans as assignments.

Accordingly, for the reasons discussed below, the Court should reject RD Legal's flawed argument that the Settlement's monetary awards (or portions thereof) are assignable.[4]  They are not.

## II.  ARGUMENT:  THE SETTLEMENT AGREEMENT BARS ASSIGNMENTS OF MONETARY AWARDS

### A.  The Settlement Agreement Expressly Forbids Assignments

In the CFPB Action, RD Legal has argued that its advances to Settlement Class Members do not run afoul of federal and state laws prohibiting deceptive and usurious loans for the simple reason that it contends that it is not making loans against expected recoveries but, rather, receiving assignments of settlement benefits – which, it maintains, are not prohibited by the Settlement.  *See* ECF No. 40 (Mem. of Law in Support of Defs.' Mot. to Dismiss ["RD Legal Opening MTD Mem."]) at 42-43, *Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC*, No. 1:17-CV-00890 (LAP) (S.D.NY. filed June 29, 2017); ECF No. 8301-4 ("RD Legal Reply MTD Mem."), at 14-15 (reply br. in support of mot. to dismiss CFPB Action).  This contention is without merit.

Article XXX of the Settlement Agreement expressly provides as follows:

> **Section 30.1   No Assignment of Claims.**  Neither the Settlement Class nor any Class or Subclass Representative or Settlement Class Member has assigned, will assign, or will attempt to assign, to any person or entity other than the NFL Parties any rights or claims relating to the subject matter of the Class Action Complaint.  Any such assignment, or attempt to assign, to any person or entity other than the NFL Parties any rights or claims relating to the subject matter of the Class Action Complaint will be void, invalid, and of no force and effect.

Settlement Agreement § 30.1 [ECF No. 6481-1, at 96] ("the Anti-Assignment Provision").

---

[4]  The tem "monetary award" is employed in this memorandum as shorthand, covering both Monetary Awards under Article VI of the Settlement Agreement, as well as Derivative Claimant Awards under Article VII thereof, and including awards made to Representative Claimants.

Courts must "give full force and effect to each and every provision" contained in a settlement agreement. *Air Line Stewards & Stewardesses Assoc. v. Trans World Airlines, Inc.*, 713 F.2d 319, 322 (7th Cir. 1983) (citing *Robin v. Sun Oil Co.,* 548 F.2d 554, 557 (5th Cir. 1977)).

And both under New York law, which governs the interpretation of the Settlement Agreement,[5] and federal common law, it is black letter law that "a settlement agreement is a contract that is interpreted according to general principles of contract law." *In re Am. Exp. Fin. Advisors Secs. Litig.*, 672 F.3d 113, 129 (2d Cir. 2011) (citation and internal quotation marks omitted); *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007) (same); *accord Rainbow v. Swisher*, 527 N.E.2d 258, 259 (N.Y. 1988) ("[A] settlement agreement is a contract subject to principles of contract interpretation[.]"); *Ronen v. Cohen*, 5 N.Y.S.3d 404, 407 (N.Y. App. Div. 1st Dep't 2015) ("a settlement agreement is a contract"); *Texas 1845, LLC v. Kyaw*, 986 N.Y.S.2d 574, 576 (App. Div. 2d Dep't 2014) ("A settlement agreement is a contract which is subject to the ordinary rules of contract construction.").

In this respect, the Anti-Assignment Provision is fully consistent with general precepts of New York contract law, which has long recognized that parties to a contract may limit the assignment of rights. *E.g.*, *Neuroaxis Neurosurgical Assocs., PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 352 (S.D.N.Y. 2013) ("Under New York law, unambiguous contract provisions that limit a party's ability to assign its rights under the contract render any purported assignment void.") (citing cases); *Allhusen v. Caristo Constr. Corp.*, 103 N.E.2d 891, 893 (N.Y. 1952) ("[W]hile the courts have striven to uphold freedom of assignability, they have not failed to recognize the

---

[5] Settlement Agreement § 27.1(a) [ECF No. 6481-1, at 95] ("Notwithstanding any contrary law applicable to the underlying claims, this Settlement Agreement and the Releases hereunder will be interpreted and enforced in accordance with the laws of the State of New York, without regard to conflict of law principles.").

concept of freedom to contract.  In large measure they agree that, where appropriate language is used, assignments of money due under contracts may be prohibited.") (upholding anti-assignment provision as "valid and effective restriction of the right to assign"); *Sullivan v. Int'l Fid. Ins. Co.*, 465 N.Y.S.2d 235, 237 (App. Div. 2d Dep't 1983) ("[I]t has been consistently held that assignments made in contravention of a prohibition clause in a contract are void if the contract contains clear, definite and appropriate language declaring the invalidity of such assignments.") (citing cases); *Univ. Mews Assocs. v. Jeanmarie*, 471 N.Y.S.2d 457, 461 (Sup. Ct. N.Y. Cty. 1983) ("New York Courts generally recognize and enforce a contract provision prohibiting its assignment.") (citing cases); *see also Restatement (Second) of Contracts* § 317(2), (2)(c) (1981) ("A contractual right can be assigned unless . . . assignment is validly precluded by contract."). Given the settlement Agreement's express terms, the Court should reject RD Legal's position.

### B.  RD Legal's Arguments Run Afoul of Principles of Contract Interpretation

Notwithstanding this, RD Legal maintains that the language of the Anti-Assignment Provision is limited, prohibiting only the assignment of Class Members' legal claims, not their monetary awards.  RD Legal Reply MTD Mem. at 6.  That, however, is a dubious distinction, for there is simply no need to prohibit assignments only of Class Members' "claims" inasmuch as the Settlement Agreement elsewhere completely *releases* them.  *See* Settlement Agreement, §§ 18.1-18.4 [ECF No. 6481-1, at 76-79] (release provisions).

That being the case, RD Legal's reading of the Anti-Assignment Provision runs afoul of the bedrock rule that contractual provisions must not be rendered meaningless.  *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63 (1995) (noting "cardinal principle of contract construction[] that a document should be read to give effect to all its provisions and to render them consistent with each other") (citing authorities); *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 970 F.2d 1132, 1136 (2d Cir. 1992)

("We must avoid an interpretation of an agreement that renders one of its provisions superfluous.") (citing authorities); *Muzak Corp. v. Hotel Taft Corp.*, 133 N.E.2d 688, 690 (N.Y. 1956) ("The rules of construction of contracts require us to adopt an interpretation which gives meaning to every provision of a contract or, in the negative, no provision of a contract should be left without force and effect.") (citing authorities); *Yoi-Lee Realty Corp. v. 177th St. Realty Assocs.*, 626 N.Y.S.2d 61, 65 (App. Div. 1st Dep't 1995) ("[C]ontracts should be construed to give force and effect to their provisions and not in a manner so as to render them meaningless[.]") (citing cases; internal citations omitted); *Audino v. Lincoln First Bank of Rochester*, 481 N.Y.S.2d 928, 931 (App. Div. 4th Dep't 1984) ("[A] contract should not be interpreted so as to render a provision meaningless[.]") (citing authorities), *aff'd mem.*, 480 N.E.2d 747, 491 N.Y.S.2d 158 (N.Y. 1985).

An additional flaw in RD Legal's interpretation is that the Anti-Assignment Provision stipulates that "*the Claims Administrator* shall not recognize" any attempted assignment. Settlement Agreement § 30.1 [ECF No. 6481-1, at 96] (emphasis added).  To read the Anti-Assignment Provision as RD Legal does would similarly render the provision meaningless because, setting aside the fact of the class-wide release, it would obviously not be for the Claims Administrator but, rather, a *court* to adjudicate Class Members' legal claims.  And RD Legal's reading would run afoul of another rule of contract construction, which is that absurd interpretations are to be avoided.  *E.g.*, *New York Univ. v. Pfizer Inc.*, 53 N.Y.S.3d 284, 290 (App. Div. 1st Dep't 2017); *Luver Plumbing & Heating, Inc. v. Mo's Plumbing & Heating*, 43 N.Y.S.3d 267, 269 (App. Div. 1st Dep't 2016).

### C.   That the Anti-Assignment Provision References the Operative Class Complaint Rather Than the Settlement Agreement Does Not Avail RD Legal

RD Legal's other arguments in favor of assignability of monetary awards are equally unpersuasive.  It contends that Anti-Assignment Provision is limited to barring assignment only

of legal claims because it refers to "'rights or claims relating to the subject matter of the Class Action Complaint'" whereas other certain other sections of the Settlement Agreement expressly refer to the "Settlement Agreement."  RD Legal MTD Reply Mem. at 14 (quoting Settlement Agreement § 30.1; emphasis omitted).  If anything, however, a prohibition against assigning "*any right or claim relating to the subject matter of* the Class Action Complaint" (emphasis added) is *more*, not less, encompassing because it means that Class Members are forbidden from assigning *anything* that touches upon the underlying claims in the operative class complaint in this MDL.

Nor does any particular significance attach to whether the term "Settlement Agreement" or "Class Action Complaint" is employed in a number of provisions that RD Legal has cited.  Rather than the choice of terminology reflecting a conscious decision to limit or expand the reach of a particular provision, the choice is apparent (if not obvious) when each provision is examined in its respective context.

For instance, Section 25.5 of the Settlement Agreement merely states that the settling parties "intend to resolve their disputes pursuant to the terms of this Settlement Agreement" and that the agreement will not "be subject to rescission or modification by reason of any change or difference in facts or law."  Settlement Agreement § 25.5 [ECF No. 6481-1, at 92].  Needless to say, there would be no reason to mention the underlying complaint in this section.  Another section that RD Legal has cited is simply a routine integration provision, declaring that the four corners of the Settlement Agreement represent the entirety of the settling parties' agreement and undertakings.  *See id*. § 30.3 [ECF No 6481-1, at 97].  Here, too, it would have made no sense for the underlying class complaint to be mentioned.

The referencing of the Settlement Agreement in the tolling provision (section 13.5, ECF No. 6481-1, at 69) similarly does advance RD Legal's position.  Referencing the "Class Action

Complaint" here would have produced little benefit to Class Members.  Section 2.1(p) of the Settlement Agreement defines the "Class Action Complaint" as "the complaint captioned Plaintiffs' Class Action Complaint filed on consent in the Court on January 6, 2014."  ECF No. 6481-1, at 10.  That complaint was the *Turner* complaint, filed in this MDL under docket number 2:14-cv-00029-AB (ECF No. 1).  The tolling benefits to Class Members under *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 552-53 (1974), and *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 353-54 (1983), from a class complaint filed only in January 2014 would have been minimal.  Likewise, the *American Pipe/Crown Cork* tolling benefits from the earlier class complaint in this MDL, filed in June 2012, would have been minor because that complaint had pleaded only a limited class seeking medical monitoring relief, along with only two other causes of action asserted on behalf of two statewide classes.  *See* Pls.' Master Admin. Class Action Compl. for Med. Monitoring (ECF No. 84, filed June 7, 2012).  Given the limited tolling the class action pleadings conferred, the tolling provision needed to state that claims "related to the subject matter o*f the Settlement Agreement* will be tolled and stayed to the extent not already tolled by the initiation of an action in this litigation or a Related Lawsuit."  ECF No. 6481-1, at 69 (emphasis added).

Conversely, that the Settlement Agreement references only the Class Action Complaint in certain other sections cited by RD Legal similarly must be viewed in context.  Sections 5.7(a)(i)-(ii), 6.5(b), and 9.8(a)(i) disqualify physicians from serving as Qualified BAP Providers, Qualified MA Physicians, Appeals Advisory Council members, or Appeals Advisory Council Consultants if they served (or in the future serve) as expert witnesses or consultants for parties, opt-out plaintiffs (*i.e.*, former Class Members), or their counsel in connection with the subject matter of the Class Action Complaint.  ECF No. 6481-1, at 28-29, 38, 53.  These conflict-of-interest disqualification

provisions would have no reason to reference the Settlement Agreement as the basis for a disqualifying conflict of interest.

Finally, RD Legal's citation of authority for the truisms that the law favors the assignability of contract rights and that assignments will not be prohibited absent an express prohibition to the contrary (RD Legal Reply MTD Mem. at 14-15) fails for the simple reason that the Settlement Agreement, in fact, expressly prohibits assignments. At any rate, the first maxim cannot trump this Court's fiduciary obligation to protect absent Class Members, one that this Court expressly acknowledged in its July 19, 2017 Order directing discovery on suspect lender and other third-party practices. ECF No. 8037, at 3.[6] That duty is heightened here, where the Class is composed of cognitively impaired, vulnerable individuals who are easy prey for unscrupulous lenders eager to swoop in and make an easy (and here quite substantial) buck.

### D.   The Suggestion That Class Counsel's Interpretation Would Invalidate Attorneys' Contingency Fee Arrangements Is Specious

RD has further argued that Class Counsel's reading of the Anti-Assignment Provision would nullify the contingency fee arrangements of Class Members' individual lawyers. *Consumer*

---

[6] *Accord Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992) ("[T]he courts have a duty to protect the interests of absent class members."); *In re Lucent Techs., Inc., Secs. Litig.*, 307 F. Supp. 2d 633, 641 (D.N.J. 2004) ("A court is obliged to protect class members'[] interests[.]"); *Valente v. Pepsico, Inc.*, 89 F.R.D. 352, 357 (D. Del. 1981) (noting "the Court's special duty to protect the interests of absent class members in administering a settlement"); *Bailes v. Lineage Logistics, LLC*, No. 15-CV-02457-DDC-TJJ, 2016 WL 4415356, at *7 (D. Kan. Aug. 19, 2016) ("The court has a duty to protect the rights of absent class members."); *Tolmasoff v. Gen. Motors, LLC*, No. 16-11747, 2016 WL 3548219, at *10 (E.D. Mich. June 30, 2016) ("The court must protect the interests of absent class members, and Rule 23(d) gives the judge broad administrative powers to do so, reflecting the equity origins of class actions.") (citation, internal quotation marks, and emphasis omitted); *Orlowski v. Dominick's Finer Foods, Inc.*, No. 95 C 1666, 1998 WL 161020, at *5 (N.D. Ill. Mar. 31, 1998) ("[I]t is the responsibility of the District Court to protect the rights and interests of the unnamed class members.").

*Fin. Prot. Bureau v. RD Legal Funding, LLC*, No. 1:17-CV-00890 (LAP) (S.D.NY. letter in opp.

to *amicus* request filed July 28, 2017) (ECF No. 46).

Specifically, RD quoted language from a Supreme Court tax case, where the Court agreed

"that a contingent-fee agreement should be viewed as an anticipatory assignment to the attorney

of a portion of the client's income from any litigation recovery." *Comm'r v. Banks*, 543 U.S. 426,

434 (2005).  Putting to one side that attorney's fees pursuant to individual retainers are not the

issue here, *Banks* is inapposite.  The issue there was whether an attorney's share of a recovery

through a contingency fee arrangement reduced the client's gross income.  The Court held that it

did not.  *Id*. at 430.  It invoked the anticipatory assignment doctrine – which is meant to thwart

tax avoidance through arrangements that prevent income from vesting in the individual who earned

it – and held that taxpayers cannot exclude economic gains from gross income by assigning the

gains in advance to another party.  *Id*. at 433-34.  Simply stated, *Banks* concerned nothing more

than the income tax implications of lawyers' interest in their clients' claims.   The Supreme Court

did not declare across the board that attorneys' contingent fees are assignments for all purposes.

Besides, Class Counsel has not categorially insisted that no portion of a monetary award

may be alienated for any purpose.  In fact, the Settlement Agreement expressly recognizes that

there may be legitimate liens against such awards, and entrusts the handling of lien issues to a Lien

Resolution Administrator while establishing a mechanism for resolving liens.   Settlement

Agreement §§ 2.1(uu)-(vv), 11.1-11.6 [ECF No. 6481, at 14, 63-68].

### E.    RD Legal's Belated Argument That the Settlement's Anti-Assignment Provision Runs Afoul of the UCC Also Fails

On July 31, 2017, Class Counsel's request for leave to file an *amicus* brief in the CFPB

Action became fully submitted following the filing of Class Counsel's reply letter in accordance

with Judge Preska's individual rules.  *See Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC*,

No. 1:17-CV-00890 (LAP) (S.D.N.Y. filed July 31, 2017) (ECF No. 47).  A few weeks later, with Judge Preska not yet having acted on the *amicus* application, RD Legal filed a letter, reminding her of the pendency of Class Counsel's application and renewing its request for an opportunity to file a response to Class Counsel's *amicus* brief were Judge Preska to permit its filing.  In that letter, RD Legal also raised an argument that it had not previously asserted either in its opposition to the amicus application, *compare id.*, ECF No. 46 (filed July 28, 2017) *with id.*, ECF No. 57 (filed Aug. 25, 2017), or in its two briefs in support of its motion to dismiss the CFPB Action, where it had argued that monetary awards under the Settlement Agreement are assignable.

Namely, RD Legal contended, for the first time, that the Anti-Assignment Provision is void because section 9-408 of the Uniform Commercial Code ("UCC") renders such contractual provisions unenforceable as to "general intangible[s]."  *See* N.Y. U.C.C. Law § 9-408(a).  Based on comment 15 to N.Y. U.C.C. Law § 9-109(a)(3), RD Legal maintained that payments from settled tort claims are "payment intangibles" within this statute's meaning.

This provision does not avail RD Legal.  Section 9-408 of the New York UCC Law expressly states that it is inapplicable to "a claim or right to receive compensation for injuries or sickness as described in 26 U.S.C. § 104(a)(1) and (2) [*i.e.*, section 104(a)(1)-(2) of the Internal Revenue Code[7]]."  *Id*. § 9-408(d)(1).  Beyond genuine dispute, monetary awards under the Settlement Agreement are compensation for injuries or sickness.

That aside, as a fundamental matter, section 9-408 is part of Article 9 of the UCC, which governs secured transactions.  Suffice it to say that monetary awards under the Settlement Agreement are not security interests.  As one federal court explained in rejecting the plaintiff's

---

[7] The cross-referenced section of the Internal Revenue Code ("IRC") excludes from gross income worker's compensation payments and awards of damages (other than punitive damages) for personal injuries or sickness.  26 U.S.C. § 104(a)(1)-(2).

reliance on the analogous anti-assignment statute in former UCC § 9-318(4) to invalidate a settlement agreement's anti-assignment provision, "it is difficult to characterize" settlement agreements "as the sort of commercial transaction with which the Uniform Commercial Code is typically concerned." *Schiavone Constr. Co. v. City of N.Y.*, No. 94 Civ. 1153 (CSH), 1995 WL 714339, at *7 (S.D.N.Y. Dec. 5, 1995), *aff'd*, 99 F.3d 546 (2d Cir. 1996).

Thus, New York and other courts have rebuffed attempts to extend Article 9 of the UCC to anti-assignment clauses in settlement agreements. *See Liberty Life Assur. Co. of Boston v. Stone St. Capital, Inc.*, 93 F. Supp. 2d 630, 638 (D. Md. 2000) (UCC Article 9 "clearly d[id] not enable defendants to avoid the anti-assignment provision in the Settlement Agreement") (citing cases); *Singer Asset Fin. Co. v. Bachus*, 741 N.Y.S.2d 618, 620 (App. Div. 4th Dep't), *leave to appeal denied*, 745 N.Y.S.2d 737 (App. Div. 4th Dep't) & 752 N.Y.S.2d 1 (Table) (N.Y. 2002); *see also Short v. Singer Asset Fin. Co.*, 107 F. App'x 738, 739 (9th Cir. 2004) (upholding anti-assignment provision in settlement agreement; noting "the anti-assignment provision furthers obvious and important tax advantages that can be lost through assignment") (citing IRC provisions and cases); *In re Chorney*, 277 B.R. 477, 490 (Bankr. W.D.N.Y. 2002) (noting settlement funder's concession that, under revised UCC Article 9, it would not have been able to obtain valid security interest in structured settlement payments at issue "because [the] Revised Article 9 does not apply to a right to receive compensation for injuries or sickness as described in 26 U.S.C. Section 104(a)(1) and (2)," and payments at issue were damages for such injury). The Court should do likewise here with respect to the Anti-Assignment Provision.

III.    **CONCLUSION**

For the foregoing reasons, in response to the question referred to it by Judge Preska of the Southern District of New York, the Court should hold that the Settlement Agreement prohibits assignments of monetary awards under the Settlement Agreement, including the putative assignments made by Class Members to RD Legal.

Dated:  September 29, 2017

Respectfully submitted,

/s/ *Christopher A. Seeger*
Christopher A. Seeger
SEEGER WEISS LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com
***Co-Lead Class Counsel***

Sol Weiss
ANAPOL WEISS
One Logan Square
130 N. 18th Street, Suite 1600
Philadelphia, PA 19103
Phone: (215) 735-1130
Fax: (215) 735-2024
sweiss@anapolweiss.com

***Co-Lead Class Counsel***

14

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on all counsel of record via the

Court's ECF system on September 29, 2017.


*/s/ Christopher A. Seeger*
Christopher A. Seeger