# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE; NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | Case No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>The Honorable Anita B. Brody |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | **MEMORANDUM OF RD LEGAL FUNDING, LLC, RD LEGAL FINANCE, LLC, RD LEGAL FUNDING PARTNERS, LP, AND RONI DERSOVITZ RE: THE ASSIGNMENT OF SETTLEMENT PROCEEDS** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

BROTMAN LAW
ELLEN C. BROTMAN, ESQ.
150 North Radnor Chester Road
  Suite F200
Radnor, Pennsylvania 19087
Telephone:  (610) 977-2412
Facsimile:  (610) 977-0043

BOIES SCHILLER FLEXNER LLP
DAVID K. WILLINGHAM (*pro hac vice*)
  dwillingham@bsfllp.com
MICHAEL D. ROTH (*pro hac vice*)
  mroth@bsfllp.com
JEFFREY M. HAMMER (*pro hac vice*)
  jhammer@bsfllp.com
725 South Figueroa Street, 31st Floor
Los Angeles, California 90017-5524
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

Attorneys for Defendants RD LEGAL
FUNDING, LLC; RD LEGAL FINANCE, LLC;
RD LEGAL FUNDING PARTNERS, LP; and
RONI DERSOVITZ

## TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ................................................................................1

II.   BACKGROUND ................................................................................4

     A.    The Assignment Agreements ................................................4

     B.    Procedural Posture ................................................................6

III.  THE NFL SETTLEMENT AGREEMENT DOES NOT PROHIBIT PLAYERS FROM ASSIGNING THEIR SETTLEMENT PROCEEDS................................7

     A.    Restrictions on the Assignment of Settlement Proceeds are Ineffective Under New York's Uniform Commercial Code ................................8

     B.    Consistent with the UCC, the NFL Settlement Agreement Does Not Prohibit the Assignment of Settlement Proceeds ................................9

           1.    Section 30.1 Does Not Prohibit the Assignment of Settlement Proceeds ................................................................10

           2.    Other Provisions of the Settlement Agreement Confirm that Section 30.1 Does Not Prohibit the Assignment of Settlement Proceeds ................................................................12

           3.    The Court Should Avoid An Unlawful Interpretation of Section 30.1................................................................14

IV.  THE COURT LACKS JURISDICTION OVER THIS ISSUE ................................14

V.   CONCLUSION................................................................15

## TABLE OF AUTHORITIES

**PAGE(S)**

<u>**Cases**</u>

*2632 Realty Dev. Corp. v. 299 Main St., LLC,*
941 N.Y.S.2d 252 (2012) ................................................................. 11-12

*Am. Gen. Life Ins. Co. v. Alvarez,*
No. 02-20419-CIV, 2003 WL 26089803 (S.D. Fla. Sept. 11, 2003) ....................................... 8

*Au New Haven, LLC v. YKK Corp.,*
210 F. Supp. 3d 549 (S.D.N.Y. 2016) ................................................... 10, 11

*Bloomfield v. Bloomfield,*
97 N.Y.2d 188 (2001) ....................................................................... 14

*C.I.R. v. Banks,*
543 U.S. 426 (2005) ......................................................................... 13

*Eastman Kodak Co. v. Altek Corp.,*
936 F. Supp. 2d 342 (S.D.N.Y. 2013) ...................................................... 12

*Essex Ins. Co. v. Laruccia Constr., Inc.,*
898 N.Y.S.2d 558 (2010) .................................................................. 10

*Grossman v. Schlosser,*
244 N.Y.S.2d 749 (N.Y. App. Div. 1963) ................................................. 10

*ImagePoint, Inc. v. JPMorgan Chase Bank, Nat'l Ass'n,*
27 F. Supp. 3d 494 (S.D.N.Y. 2014) ........................................................ 9

*In re Montreal, Maine & Atl. Ry., Ltd.,*
799 F.3d 1 (1st Cir. 2015) .................................................................. 8

*In re Mucelli,*
21 B.R. 601 (Bankr. S.D.N.Y. 1982) ...................................................... 10

*In re Orthopedic Bone Screw Prods. Liab. Litig.,*
79 F.3d 46 (7th Cir. 1996) .............................................................. 14, 15

*In re Wiersma,*
324 B.R. 92 (9th Cir. B.A.P. 2005) ......................................................... 8

*In re Wilson,*
No. ADV. A10-4035-TJM, 2010 WL 5341917
(Bankr. D. Neb. Dec. 21, 2010) ......................................................... 8-9

ii

*India.Com, Inc. v. Dalal,*
    412 F.3d 315 (2d Cir. 2005)...................................................................................13

*Kearney for Kearney v. Jandernoa,*
    172 F.R.D. 381 (N.D. Ill. 1997)............................................................................15

*Landis v. N. Am. Co.,*
    299 U.S. 248 (1936)...............................................................................................14

*NFL Enters. LLC v. Comcast Cable Commc'ns, LLC,*
    851 N.Y.S.2d 551 (2008).......................................................................................11

*Reisman v. Indep. Realty Corp.,*
    89 N.Y.S.2d 763 (N.Y. Sup. Ct. 1949)................................................................13

*Snug Harbor Square Venture v. Never Home Laundry, Inc.,*
    675 N.Y.S.2d 365 (1998).......................................................................................12

*Woodbury v. Andrew Jergens Co.,*
    69 F.2d 49 (2nd Cir. 1934)............................................................................... 13-14

**Statutes**

12 U.S.C. § 5481(15)(A)(i)................................................................................................7

12 U.S.C. § 5531(a)............................................................................................................7

28 U.S.C. § 1407(b)..........................................................................................................15

Fed. R. Civ. P. 26(c).........................................................................................................15

N.Y. Gen. Oblig. Law § 13-101(1)...................................................................................10

N.Y. U.C.C. § 1-201(35)...................................................................................................13

N.Y. U.C.C. § 9-109(a)(3)..................................................................................................8

N.Y. U.C.C. § 9-109 cmt. 15..........................................................................................2, 8

N.Y. U.C.C. § 9-406(d)(1)..................................................................................................9

N.Y. U.C.C. § 9-408(a)....................................................................................................2, 9

N.Y. U.C.C. § 9-408(c)(2)..................................................................................................9

N.Y. U.C.C. § 9-408 cmt. 2.............................................................................................2, 9

## <u>Other Authorities</u>

NFL Concussion Settlement Website, Frequently Asked Question 5.31, *available at* https://goo.gl/Ujg4VM..................................................................................6

Restatement (Second) of Contracts § 203(a) (1981)..................................................14

William F. Savino and David S. Widenor, *2002–2003 Survey of New York Law: Commercial Law*, 54 Syracuse L. Rev. 855 (2004)...............................................8

I.       **INTRODUCTION**

On September 8, 2017, the Honorable Loretta A. Preska entered an Order in the action

captioned *CFPB, et al. v. RD Legal Funding, LLC, et al.*, No. 1:17-cv-890-LAP (S.D.N.Y.) (the

"CFPB Action"), which referred to this Court "the question of whether the NFL Concussion

Litigation settlement agreement [the ("Settlement Agreement")] forbids assignments of

settlement benefits."  The answer is no.  It is black letter law that any attempt to restrict the

assignment of settlement proceeds is unenforceable under New York's Uniform Commercial

Code (the "UCC").  Moreover, a plain reading of the Settlement Agreement leads to the same

result:  consistent with the UCC, while the Settlement Agreement invalidates the assignment of

the underlying tort claims in this action, it does not bar the assignment of the contractual right to

payment created by the Settlement Agreement.  Thus, based on the UCC and the plain language

of the Settlement Agreement, this Court should conclude that the agreement does *not* bar the

assignment of settlement proceeds.

RD Legal Funding Partners, LP, RD Legal Finance, LLC ("FINCO"), RD Legal Funding,

LLC, and Roni Dersovitz (collectively, "RD Legal") provide a valuable and lawful service:  for

customers who desire immediate liquidity, RD Legal pays a lump sum payment to purchase the

customer's interest in future proceeds from a legal settlement or judgment on a nonrecourse basis.

The transactions at issue here are agreements between FINCO and seven former NFL players (the

"Assignment Agreements") for the purchase of a portion of their anticipated awards from the

Settlement Agreement.  FINCO has already paid more than $1.6 million to these seven players

and, for three of the players, has agreed to pay significant additional amounts depending on the

date FINCO receives the settlement funds it purchased.  Moreover, in addition to the immediate

funds that the players received from FINCO, the players will still receive a total of more than $8

million in settlement proceeds that they did not assign.

Under the UCC, the Settlement Agreement *cannot* forbid the assignment of the settlement proceeds.  The UCC considers settlement proceeds (*i.e.*, money due under a contract) to be "payment intangibles," and Article 9 of the UCC "makes ineffective any attempt to restrict the assignment" of payment intangibles.  N.Y. U.C.C. §§ 9-408(a) & cmt. 2, 9-109 cmt. 15. Thus, as a matter of law, any provision in the Settlement Agreement purporting to prohibit the assignment of settlement proceeds is unenforceable.

The Settlement Agreement—by its terms—comports with the UCC and does not prohibit the assignment of settlement proceeds.  Rather, the anti-assignment clause in the Settlement Agreement is entitled "No Assignment of Claims" and prohibits the assignment of "rights or claims relating to the subject matter of the *Class Action Complaint*," not the subject matter of the Settlement Agreement.  As explained herein, this language bars the assignment of the underlying tort *claims*, not the assignment of settlement *proceeds*.

*First*, only express limitations on assignability are enforceable, and the "subject matter of the Class Action Complaint" must be read narrowly under New York law.  Thus, the anti-assignment clause is limited by the allegations of the complaint—*i.e.*, the players' personal injury claims—which necessarily do not include proceeds under a settlement agreement that did not even exist when the Class Action Complaint was filed.

*Second*, the parties' express references to "the subject matter of this Settlement Agreement" and the "subject matter of the Class Action Complaint" elsewhere in the Settlement Agreement confirm that the parties *deliberately* distinguished between the two clauses and chose to limit the anti-assignment clause to the personal injury *claims* at issue in the Class Action Complaint—not future settlement *proceeds*.

2

*Third*, the Settlement Agreement expressly recognizes that the proceeds may be subject to "Lien[s]," a defined term that refers broadly to "any mortgage, lien, pledge, charge, security interest, or legal encumbrance, of any nature whatsoever" (Settlement Agreement § 2.1(uu)), which includes the assignment of settlement proceeds.

*Fourth*, the Amended Final Order and Judgment that approved the Settlement Agreement—and is incorporated into the Settlement Agreement—expressly ordered that "[t]he terms of the Settlement Agreement . . . are forever binding on the Parties, as well as on their respective . . . assigns," (ECF No. 6534, Amended Final Order and Judgment, ¶ 19), which necessarily contemplates that certain assignments are permitted under the Settlement Agreement.

This distinction between barring assignment of the underlying *tort claims*, and allowing assignment of the *settlement proceeds* (a contract right) is consistent with the UCC, as well as other provisions of New York law that prohibit the assignment of tort claims, but allow for the assignment of the proceeds from a tort claim.  It is also consistent with common sense:  the players should be free to use the money they receive in this action as they deem appropriate.

The seven players who contracted with FINCO long ago received the benefit of their bargain:  more than $1.6 million that has been used to pay off outstanding debts and address other pressing financial needs.  Accordingly, to the extent it has jurisdiction to do so,[1] this Court should find that the assignment of settlement proceeds, including the assignments made by the players to FINCO, are permitted under the Settlement Agreement.  A contrary ruling would be inconsistent with New York law, the language of the Settlement Agreement, and the clear intentions of the parties to the Assignment Agreements.  Moreover, it would invalidate a valuable and lawful service to litigants who are in need of immediate liquidity.

---

[1] As explained in Section IV below, RD Legal respectfully asks that the Court decline to rule on the issue referred by Judge Preska because it lacks jurisdiction to do so.

## II.     BACKGROUND

### A.     *The Assignment Agreements*

Between December 2015 and November 2016, FINCO entered into Assignment

Agreements with seven former NFL players, whereby FINCO paid the players more than $1.6

million in exchange for portions of the future settlement proceeds to which they are entitled.[2]

The contracts dictated that more than $500,000 of those funds be used by the players to pay off

state and federal tax liens (and thereby avoid incurring additional tax penalties), and to resolve

judgments and other outstanding debt.  (*See, e.g.*, ECF No. 8301-9 at 3, 23, 46-47 and 8301-10 at

3-4, 25, 47, 64.)  One player, for example, applied nearly $180,000 received from FINCO to pay

off federal tax obligations, advances provided by a different legal funding company, and an

outstanding court judgment.  (ECF No. 8301-9 at 3.)

Three of the Assignment Agreements include an additional purchase price that FINCO

must pay according to a schedule set forth in the Assignment Agreements.  (*See* ECF No. 8301-9

at 22, 45 and 8301-10 at 2.)  Those additional payments are based on the date settlement

proceeds are distributed to FINCO—the sooner the settlement funds are distributed and received

by FINCO, the greater the additional payment to the players.  (*Id.*)  Accordingly, if the settlement

proceeds are distributed according to the Assignment Agreements by October 31, 2017, the total

amounts paid to the sellers and assigned to FINCO will be as follows:

---

[2] The Assignment Agreements were previously filed with the Court.  (*See* ECF Nos. 8301-9 and
8301-10.)  When citing ECF documents throughout this brief, the page numbers refer to the
ECF-stamped page number.

| Player | Initial Payment by FINCO to Player | Additional Payments to Player if Settlement Paid by 10/31/2017 | Total Payments to Player if Settlement Paid by 10/31/2017 | Amounts Assigned to FINCO | Players' Total Anticipated Awards |
|--------|-----------|-----------|-----------|-----------|-----------|
| No. 1 | $202,460.31 | NA | $202,460.31 | $425,166.00 | $1,500,000 |
| No. 2 | $343,120.53 | $204,385.09 | $547,505.62 | $665,234.45 | $2,470,000 |
| No. 3 | $249,574.46 | $168,992.39 | $418,566.85 | $510,000.00 | $1,500,000 |
| No. 4 | $249,574.46 | $177,392.38 | $426,966.84 | $510,000.00 | $1,500,000 |
| No. 5 | $242,857.14 | NA | $242,857.14 | $510,000.00 | $1,500,000 |
| No. 6 | $242,857.14 | NA | $242,857.14 | $510,000.00 | $1,500,000 |
| No. 7 | $100,000.00 | NA | $100,000.00 | $300,000.00 | $1,500,000 |
| **Total** | **$1,630,444.04** | **$550,769.86** | **$2,181,213.90** | **$3,430,400.45** | **$11,470,000** |

As reflected above, FINCO purchased only a fraction of the seven players' settlement proceeds, and the players will receive additional amounts totaling approximately $8 million when the Claims Administrator distributes the settlement payments.

Each transaction was documented in a manner to ensure that the seller understood its terms and knowingly entered into the Assignment Agreement:

- The terms describe the deal in plain language and reflect the sale of a portion of the settlement award in exchange for an immediate lump sum cash payment.

- Each seller represented and warranted that he "ha[s] the unrestricted right to assign the" proceeds to FINCO; "ha[s] the legal capacity to execute and perform" the Agreement; and is "under no contractual or other restrictions or obligations which are or might be inconsistent with the execution of this Agreement or the sale and assignment of the" proceeds.  (*See, e.g.*, ECF No. 8301-9 at 4.)  The seller also signed a "Certification of Truthfulness," certifying that all statements in the Agreement are truthful.  (*Id.* at 15.)

- Where applicable, the seller's spouse also signed the Assignment Agreement and certified that she read and understood its terms and that her "spouse [the player] is of sound mind and possesses the appropriate mental capacity to understand the nature and consequences of this Agreement and to sign legal documents."  (*Id.* at 16.)

- Each Assignment Agreement advised the seller multiple times—in bold print—to seek advice of legal counsel (*id.* at 11-12), and the seller's lawyer acknowledged receipt of a Notice of Assignment of the award and agreed to hold in escrow for disbursement to FINCO any funds that are subject to the agreement (*id.* at 20).

5

- FINCO required each seller to register for free counseling services with GreenPath—a national company that provides credit and debt counseling—as a precondition to the purchase.

- The Assignment Agreements give the seller a right to cancel the agreement within five business days after receiving payment from FINCO. (*Id.* at 10.)

Although the Assignment Agreements authorize FINCO to demand payment directly from the Claims Administrator (*id.* at 19), it has not done so, and the Claims Administrator has indicated it will not disburse funds to non-party legal funders such as FINCO.[3]  To date, FINCO has not received any of the proceeds it purchased under the Assignment Agreements, despite having fulfilled its contractual obligations to pay $1.6 million to the players.[4]

### B.     *Procedural Posture*

The Consumer Financial Protection Bureau ("CFPB") and New York Attorney General filed the CFPB Action against RD Legal in the Southern District of New York.  The government alleges that RD Legal misled the seven former NFL players simply by entering the Assignment Agreements, because, according to the government, the settlement proceeds are not assignable.

On May 15, 2017, RD Legal filed a Motion to Dismiss the CFPB Action pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing, among many other things, that the anti-assignment clause in the Settlement Agreement does not prohibit the Assignment Agreements and that, even if it did, the existence of that clause would not transform the transactions at issue into extensions of credit, which is necessary to invoke federal subject matter jurisdiction.[5]  RD

---

[3] *See* NFL Concussion Settlement Website, Frequently Asked Question 5.31, *available at* https://goo.gl/Ujg4VM.

[4] If it were determined that the Settlement Agreement prohibits the assignment of settlement proceeds, the players should be required to return, at a minimum, the $1.6 million they have already received from FINCO.

[5] The threshold issue in the CFPB Action is whether RD Legal are "covered person[s]" under the Consumer Financial Protection Act (the "CFPA"), which provides the only basis for federal jurisdiction.  According to the government, the proceeds from the Settlement Agreement cannot

Legal has also explained that the government's interpretation of the Settlement Agreements is barred by Article 9 of the UCC.  The Motion to Dismiss has been fully briefed since June 26, 2017, and is pending before Judge Preska.

On July 25, 2017, Co-Class Counsel in this action submitted a letter in the CFPB Action requesting leave to file an amicus brief to address RD Legal's arguments regarding the interpretation of the Settlement Agreement.  In the alternative, Co-Class Counsel requested that Judge Preska refer to this Court the question of whether the Settlement Agreement prohibits the Assignment Agreements.  On September 8, 2017, Judge Preska granted Co-Class Counsel's alternative request over RD Legal's objection, and referred to this Court "the question of whether the NFL Concussion Litigation settlement agreement forbids assignments of settlement benefits" (the "Referral Order").[6]

RD Legal submits this brief pursuant to the Referral Order.

## III.   THE NFL SETTLEMENT AGREEMENT DOES NOT PROHIBIT PLAYERS FROM ASSIGNING THEIR SETTLEMENT PROCEEDS

Section 30.1 of the Settlement Agreement, which is entitled "No Assignment of Claims," states that no class member "has assigned, will assign, or will attempt to assign, to any person or entity other than the NFL Parties any rights or claims relating to the subject matter of the Class Action Complaint."  (ECF No. 6481-1 at § 30.1.)  Consistent with its "No Assignment of

---

be assigned, and as a result the transactions are somehow *transformed* into "extensions of credit" under the CFPA, rendering RD Legal "covered person[s]" under the statute.  *See* 12 U.S.C. §§ 5481(15)(A)(i), 5531(a).  While not directly relevant to the proceedings before this Court, RD Legal has demonstrated in briefs filed in the CFPB Action why this baseless theory—supported by neither logic nor a sound legal foundation—is wrong.

[6] The Referral Order further states:  "To be clear, the Court does not intend to transfer this action or any portion of it to the district court presiding over the NFL Concussion Litigation."  (CFPB Action, ECF No. 59 at 4.)  Because the referred question does not touch on whether the Assignment Agreements are otherwise valid and enforceable, for purposes of the limited legal issue referred to this Court, the Court should assume their validity and enforceability.

Claims" title, Section 30.1 bars the assignment of the *tort claims* alleged in the underlying Class

Action Complaint, but does not bar the assignment of the *contractual proceeds* from the

Settlement Agreement.  A contrary interpretation would violate the UCC, contradict the plain

language of Section 30.1, and conflict with other provisions in the Settlement Agreement.

### A.    *Restrictions on the Assignment of Settlement Proceeds are Ineffective Under New York's Uniform Commercial Code*

Article 9 of the UCC applies to, *inter alia*, "a sale of accounts, chattel paper, *payment*

*intangibles*, or promissory notes."  N.Y. U.C.C. § 9-109(a)(3) (emphasis added).  "Payment

intangibles" include tort claims—like the ones here—that have "been settled and reduced to a

contractual obligation to pay."  *Id.* at cmt. 15; *see also In re Montreal, Maine & Atl. Ry., Ltd.*,

799 F.3d 1, 7 (1st Cir. 2015) (relying on Section 9-109 comment 15 to explain that a settled tort

claim is a contractual obligation and is considered a payment intangible subject to Article 9); *In*

*re Wiersma*, 324 B.R. 92, 107 (9th Cir. B.A.P. 2005) ("[R]evised Article 9 considers payment

intangibles of either consumer or commercial tort actions to be general intangibles."); *In re*

*Wilson*, No. ADV. A10-4035-TJM, 2010 WL 5341917, at *3 (Bankr. D. Neb. Dec. 21, 2010)

(citing Section 9–109 and comment 15 to hold that "the right to payment upon settlement is . . . a

payment intangible" subject to Article 9); *Am. Gen. Life Ins. Co. v. Alvarez*, No. 02-20419-CIV,

2003 WL 26089803, at *8 (S.D. Fla. Sept. 11, 2003) (holding "payments generated by the

structured settlement arise out of a contract" and "not any tort claim" and are thus subject to

Article 9); William F. Savino and David S. Widenor, *2002–2003 Survey of New York Law:*

*Commercial Law*, 54 Syracuse L. Rev. 855, 927 (2004) ("[W]here a suit (even for tort) becomes

extinguished and replaced by a contractual obligation for settlement payments, Article 9 will

apply under . . .  Revised Section 9–109.").

Under Article 9, the sale of settlement proceeds is subject to the constraints in Section 9-408(a), "[w]hich makes ineffective any attempt to restrict the assignment of a general intangible . . . ." *Id.* at § 9-408 cmt. 2; *see id.* at § 9-102(a)(42) (defining "general intangible" to include "payment intangibles"); *see also id.* at § 9-406(d)(1) (making ineffective anti-assignment clauses relating to certain loan obligations).  The UCC thus categorically renders ineffective anti-assignment clauses pertaining to payment intangibles such as the proceeds of the Settlement Agreement that were sold and assigned to FINCO.  *Cf. ImagePoint, Inc. v. JPMorgan Chase Bank, Nat'l Ass'n*, 27 F. Supp. 3d 494, 508-10 (S.D.N.Y. 2014) (finding contractual anti-assignment clauses invalid under Section 9-406(d)).

Accordingly, as a matter of law, the Court should conclude that the Settlement Agreement does not bar the assignment of the contractual proceeds of the agreement.[7]

**B.**      **Consistent with the UCC, the NFL Settlement Agreement Does Not Prohibit the Assignment of Settlement Proceeds**

Although the UCC "makes ineffective" any attempt to restrict the assignment of payment intangibles such as the settlement proceeds here, the Court need not find the "No Assignment of Claims" provision in the Settlement Agreement void because the term—based on its plain meaning and read in the context of the Settlement Agreement as a whole—does not prohibit the assignment of settlement proceeds.

---

[7] While under the UCC anti-assignment provisions are not enforceable as to the assignor (the players) and assignee (FINCO), the original account obligors (the NFL) need not recognize the liens created by the assignment.  *See* N.Y. U.C.C. § 9-408(c)(2) (stating that if assignment would be enforceable except for Article 9, the assignment "does not impose a duty or obligation" on the account obligor).  That is what has happened here—the settlement administrator has stated that it will not honor assignments between the players and legal funders.

**1.      Section 30.1 Does Not Prohibit the Assignment of Settlement Proceeds**

The "No Assignment of Claims" provision in Section 30.1 of the Settlement Agreement prohibits the assignment of "rights or claims relating to the *subject matter of the Class Action Complaint*."  (ECF No. 6481-1 at § 30.1 (emphasis added).)  Construing this anti-assignment provision "narrowly as dictated by New York law," *Au New Haven, LLC v. YKK Corp.*, 210 F. Supp. 3d 549, 556 (S.D.N.Y. 2016),[8] the "plain and ordinary meaning" of Section 30.1 does not prohibit the assignment of settlement proceeds.  *See Essex Ins. Co. v. Laruccia Constr., Inc.*, 898 N.Y.S.2d 558, 559 (2010) (stating that contract terms "must be given their plain and ordinary meaning").

Rather, the "subject matter of the Class Action Complaint," read in this appropriate context, is limited by the allegations of the Class Action Complaint—*i.e.*, the players' personal injury claims—which necessarily do not include proceeds under a *later* settlement agreement. This distinction between tort claims (which are not assignable) and settlement proceeds (which are assignable) is consistent with well-established New York law.  *Compare* N.Y. Gen. Oblig. Law § 13-101(1) (prohibiting the transfer of a "claim . . . to recover damages for a personal injury"), *with In re Mucelli*, 21 B.R. 601, 603 (Bankr. S.D.N.Y. 1982) ("Under [] section 13-101 an assignment or transfer of a personal injury is prohibited . . . [but] [u]nder New York State law the *proceeds* of a personal injury claim are assignable and transferable." (Emphasis added)); *see also Grossman v. Schlosser*, 244 N.Y.S.2d 749, 750 (N.Y. App. Div. 1963) (stating courts have "recognized as valid the distinction between the assignment of a cause of action for personal injury and the assignment of its proceeds").

---

[8] The Settlement Agreement is governed by New York law.  (ECF No. 6481-1 at § 27.1(a).)

10

Faced with the clear language of Section 30.1, which does not reference the Settlement Agreement at all, Co-Class Counsel has argued that the term "subject matter of the Class Action Complaint" includes within its scope the subject matter of the Settlement Agreement. This impermissibly broad reading of the anti-assignment clause cannot be reconciled with the distinct uses in the Settlement Agreement of the phrases "subject matter of the Class Action Complaint" and "subject matter of this Settlement Agreement." *See NFL Enters. LLC v. Comcast Cable Commc'ns, LLC*, 851 N.Y.S.2d 551, 557 (2008) ("The use of different terms in the same agreement strongly implies that the terms are to be accorded different meanings.").

The phrase "subject matter of the Class Action Complaint" appears eight times in the Settlement Agreement outside of Section 30.1. In each instance it is used to reference the personal injury claims in the Class Action Complaint and to restrict persons who were involved in litigation relating to those claims from involvement in the administration of the settlement. (ECF No. 6481-1 at §§ 5.7(a)(i), 5.7(a)(ii), 6.5(b), 9.8(a)(i).) Conversely, the phrase "subject matter of this [or "the"] Settlement Agreement" is used four times in the Settlement Agreement, and each time refers to the issues embodied in the Settlement Agreement, as opposed to the underlying complaint. (ECF No. 6481-1 at §§ 13.5, 25.5, 30.3.)

The use of these two different phrases throughout the Settlement Agreement confirms that the parties deliberately chose to limit the anti-assignment clause to personal injury claims— not future settlement proceeds. Under New York law, "'only *express* limitations on assignability are enforceable.'" *Au New Haven, LLC*, 210 F. Supp. 3d at 555 (quoting *Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*, 109 F.3d 850, 856 (2d Cir. 1997) (emphasis in original)). Here, the parties could have contracted to *expressly* (and simply) prohibit the players from assigning rights or claims relating to "the subject matter of this Settlement Agreement"—a phrase they

were obviously familiar with—but they did not, and the "court should not imply a term which the parties themselves failed to include." *2632 Realty Dev. Corp. v. 299 Main St., LLC*, 941 N.Y.S.2d 252, 255 (2012).

Instead, the Court should interpret the Settlement Agreement so that the phrase "subject matter of the Class Action Complaint" has the same meaning in Section 30.1 as in all other instances where it appears in the Settlement Agreement. A contrary reading violates well-established canons of contract construction and is insufficient to put third parties on notice that the "subject matter of this Settlement Agreement" is not assignable. *See Eastman Kodak Co. v. Altek Corp.*, 936 F. Supp. 2d 342, 351 (S.D.N.Y. 2013) (courts "may presume that the same words used in different parts of a writing have the same meaning") (citing *Finest Invs. v. Sec. Trust Co. of Rochester*, 468 N.Y.S.2d 256, 258 (1983)).[9]

### 2.      Other Provisions of the Settlement Agreement Confirm that Section 30.1 Does Not Prohibit the Assignment of Settlement Proceeds

Interpreting the "No Assignment of Claims" provision to prohibit the assignment of settlement proceeds is also inconsistent with the Settlement Agreement as a whole. *See Snug Harbor Square Venture v. Never Home Laundry, Inc.*, 675 N.Y.S.2d 365, 366 (1998) ("[I]n construing a contract, the document must be read as a whole."). The agreement states that each class member "will be solely responsible for the satisfaction and discharge of all Liens," (ECF No. 6481-1 at § 11.1(b)), and devotes more than four pages to the "Identification and Satisfaction of Liens." (*Id.* at Article XI.) "Lien" is defined to include "any mortgage, lien, pledge, charge, security interest, or legal encumbrance, of any nature whatsoever . . . ." (*Id.* at § 2.1(uu).) This

---

[9] In fact, the NFL players who entered into the Assignment Agreements with FINCO certified that the settlement proceeds were assignable, and none of their personal attorneys who agreed to honor those assignments disputed that the settlement proceeds were assignable.

includes the Assignment Agreements, which provide for a lien against the settlement proceeds and also create a "security interest" under the UCC. *See* N.Y. U.C.C. § 1-201(35) (defining "security interest" to include "any interest of a consignor and a buyer of accounts, chattel paper, a payment intangible, or a promissory note in a transaction that is subject to Article 9"). In order to give "effect and meaning . . . to every term of the contract," and to "harmonize all of its terms," *India.Com, Inc. v. Dalal*, 412 F.3d 315, 323 (2d Cir. 2005) (applying New York law), the non-assignment provision cannot be read to prohibit the assignment of proceeds, which would be inconsistent with the Lien provisions.

The government and Co-Class Counsel's proffered interpretation would also be inconsistent with the Amended Final Order and Judgment that approved, and is incorporated into, the Settlement Agreement. (ECF No. 6481-01 at 7.) The Amended Final Order and Judgment expressly ordered that "[t]he terms of the Settlement Agreement . . . are forever binding on the Parties, as well as on their respective . . . assigns," (ECF No. 6534, Amended Final Order and Judgment, ¶ 19), which necessarily means that certain assignments were contemplated. Indeed, if Section 30.1 were interpreted to prohibit assignments of settlement proceeds, even contingency fees owed to class members' counsel would be prohibited, which clearly was not the parties' intent. *See C.I.R. v. Banks*, 543 U.S. 426, 434 (2005) ("[A] contingent-fee agreement should be viewed as an anticipatory assignment to the attorney of a portion of the client's income from any litigation recovery."); *Reisman v. Indep. Realty Corp.*, 89 N.Y.S.2d 763, 766 (N.Y. Sup. Ct. 1949) (stating that the contingent fee "arrangement effected an equitable assignment to the attorneys of the judgment against the plaintiff"); *Woodbury v. Andrew Jergens Co.*, 69 F.2d 49, 50 (2nd Cir. 1934) (Hand, J.) (holding that attorney "became by the law of New York an equitable assignee" under agreement granting attorney "one third of

the amount which shall be recovered by way of settlement, compromise or final judgment").
These independent provisions confirm that the interpretation of the non-assignment provision
advanced by the government and Co-Class Counsel must be rejected.

### 3. The Court Should Avoid An Unlawful Interpretation of Section 30.1

As discussed above, Section 30.1 does not prohibit the assignment of settlement
proceeds.  Even if such an interpretation were plausible, however, it must be avoided because, as
discussed in Section III.A, *supra*, it would render the anti-assignment provision invalid under the
UCC.  "[A] contract that may be construed both lawfully and unlawfully should be construed in
favor of its legality," *Bloomfield v. Bloomfield*, 97 N.Y.2d 188, 193 (2001) (construing contract
not to include waiver of right to spousal support, which would be invalid under New York law),
and thus the Court should interpret Section 30.1 of the Settlement Agreement to permit the
assignment of settlement proceeds, consistent with New York law.  *See* Restatement (Second) of
Contracts § 203(a) (1981) ("[A]n interpretation which gives a . . . lawful . . . meaning to all the
terms is preferred to an interpretation which leaves a part  . . . unlawful . . . .").

## IV.   THE COURT LACKS JURISDICTION OVER THIS ISSUE

While it is a matter of black letter law that the Settlement Agreement cannot forbid the
assignment of settlement proceeds, RD Legal respectfully asks that the Court decline to rule on
the issue referred by Judge Preska because it lacks jurisdiction to do so.  While all district courts
possess inherent power to manage their dockets, *see Landis v. N. Am. Co.*, 299 U.S. 248, 254
(1936), there is no legal authority that permits one district court to refer to a second district court
the adjudication of a single issue from a motion pending before the first district court.  In *In re
Orthopedic Bone Screw Prods. Liab. Litig.*, 79 F.3d 46 (7th Cir. 1996), the primary authority
cited in the Referral Order, the court merely held that it was permissible for a district presiding

14

over the multi-district litigation ("MDL") to decide motions for protective orders filed by third parties in another district court regarding discovery sought in the MDL. *Id.* at 47-48.  While this procedure was authorized by 28 U.S.C. § 1407(b) and Federal Rule of Civil Procedure 26(c), *see id.* at 48, the court was careful to note "that motions, or parts of motions, cannot be transferred." *Kearney for Kearney v. Jandernoa*, 172 F.R.D. 381, 383 (N.D. Ill. 1997) (discussing *In re Orthopedic Bone*).  Indeed, counsel is unaware of any authority that permits a district court to adjudicate a single issue from a dispositive motion pending before another district court.  This Court therefore should decline to answer the question set forth in the Referral Order.

## V.    CONCLUSION

For the reasons stated above, RD Legal respectfully requests that the Court decline to answer the question set forth in the Referral Order or, alternatively, conclude that the Settlement Agreement does not prohibit the assignment of settlement proceeds.


Dated this 29th day of September, 2017.   Respectfully submitted,


|  |  |
|---|---|
| BROTMAN LAW | /s/ Jeffrey M. Hammer |
| ELLEN C. BROTMAN, ESQ. | BOIES SCHILLER FLEXNER LLP |
| 150 North Radnor Chester Road | DAVID K. WILLINGHAM |
|   Suite F200 | MICHAEL D. ROTH |
| Radnor, Pennsylvania 19087 | JEFFREY M. HAMMER |
| Telephone:  (610) 977-2412 | 725 South Figueroa Street, 31st Floor |
| Facsimile:  (610) 977-0043 | Los Angeles, California 90017-5524 |
|  | Telephone: (213) 629-9040 |
|  | Facsimile: (213) 629-9022 |
|  |  |
|  | Attorneys for Defendants RD LEGAL FUNDING, LLC; RD LEGAL FINANCE, LLC; RD LEGAL FUNDING PARTNERS, LP; and RONI DERSOVITZ |