# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB <br><br> MDL No. 2323 <br><br> **Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc., <br><br> Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**CO-LEAD CLASS COUNSEL'S CONSOLIDATED MEMORANDUM
(1) IN OPPOSITION TO THE ALEXANDER OBJECTORS' MOTION
TO COMPEL COMPLIANCE WITH CMO5, AND (2) IN RESPONSE TO
THEIR LATEST UNAUTHORIZED POST-BRIEFING SUPPLEMENTATION
OF THEIR OBJECTIONS TO THE COMMON BENEFIT FEE PETITION**

## I. INTRODUCTION AND ARGUMENT

The Supreme Court, Third Circuit, and this Court have long cautioned that "'[a] request for attorney's fees should not result in a second major litigation.'" *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)); *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 726 F.3d 403, 406 (3d Cir. 2013); *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 886 F. Supp. 445, 467 n.42 (E.D. Pa. 1995) (also warning that attorney's fees applications should not "consume[ ] a disproportionate share of the court's time") (citation and internal quotation marks omitted). Indeed, disputes over attorneys' fees are "one of the least socially productive types of litigation imaginable." *Hensley*, 461 U.S. at 442 (Brennan, J., concurring in part and dissenting in part).

Oblivious to this longstanding admonition, after a four-month hiatus, the Alexander Objectors are back for an encore, taking more potshots at Co-Lead Class Counsel's ("Class Counsel's") Fee Petition.[1] On September 20, 2017, they filed a deceptively-entitled "First Supplement" to their objections to the Fee Petition (ECF No. 8395) – which is actually their *third* attack on the Fee Petition since the April 10, 2017 close of briefing on it. (ECF No. 7464).[2] In it, the Alexander Objectors assert – based on a *three month-old* status report on implementation of

---

[1] In the interest of brevity, "Fee Petition" is employed as shorthand to refer to the combined petition, filed on February 13, 2017, for an award of common benefit fees, reimbursement of common benefit expenses, incentive/case contribution/service awards to the three Class Representatives, and imposition of a 5% holdback or set-aside on Class Members' monetary awards (ECF No. 7151).

[2] Besides their objections to the Fee Petition (ECF Nos. 7354, 7355), after the close of briefing, the Alexander Objectors filed an unsanctioned sur-reply "Response and Objection" to Class Counsel's Fee Petition reply papers (ECF No. 7533), and a concurrent motion for leave to take discovery of Class Counsel (ECF No. 7533). Class Counsel moved to strike the former as unauthorized (in addition to addressing those post-briefing objections on the merits) and opposed the latter. ECF Nos. 7605, 7606.

the Settlement – that the approval of only two monetary award claims as of June 5, 2017 demonstrates that the Settlement's value has been illusory all along.  As with their April 21, 2017 sur-reply "Response and Objection" to Class Counsel's reply papers (ECF No. 7533), the Alexander Objectors did not seek leave for this filing.

Just hours after filing this second unauthorized augmentation of their objections, the Alexander Objectors also fired a separate volley at the Fee Petition in the form of a motion to compel compliance with Case Management Order No. 5 (ECF No. 3710 [Sept. 11, 2012]) ("CMO5") in which they request that the Court order Class Counsel to produce all quarterly time and expense reports and reports of audits performed since 2012 (ECF No. 8396).

Like their verbose and meritless (and in many respects inane) objections to the Fee Petition and earlier post-briefing submissions, neither of these filings has anything to commend it, let alone provides legitimate grounds for denying or even delaying the adjudication of the Fee Petition.  The Court should reject both.

### A. The Court Should Deny the Motion to Compel Compliance with CMO5 Because It Is Untimely, Class Counsel Complied with CMO5, and, in Any Event, a Lodestar Cross-Check Does Not Entitle Objectors to Detailed Billing Information

Taking their second filing first, the Alexander Objectors' motion to compel is well out of time.  The Alexander Objectors had ample opportunity to raise issues respecting alleged non-compliance with CMO5 in their Fee Petition objections – and, in fact, did.  *See* ECF No 7355, at 22-23, 51, 54-57.[3]  It is inappropriate for them to be initiating separate motion practice respecting CMO5 at this late date – *five months* after the close of briefing on the Fee Petition – when the Court has directed Class Counsel to submit a recommended fee allocation (ECF No. 8367).  This latest filing is another rearguard assault, not unlike the Alexander Objectors' post-briefing motion

---

[3] Page references are to ECF pagination, not the pagination of the original document.

to take discovery of Class Counsel (ECF No 7534). The Court should not indulge this latest tactic in the unrelenting campaign being waged against the Fee Petition by a small band of diehard objectors and their counsel, who unsuccessfully battled the underlying Settlement with meritless attacks not only through final approval, but also in the Third Circuit – and whose only "contribution" to the Class has been endless quibbling, grousing, and carping. What Class Counsel stated before in response to these objectors' prior post-briefing filings is worth repeating here: enough is enough.

Setting aside that this motion is untimely, its fundamental premise is flawed. The Alexander Objectors contend that Class Counsel "has failed to file" a single time and expense report and that, therefore, "the Court has no basis upon which to ensure Co-Lead Class Counsel did, in fact, efficiently prosecute this matter for the benefit of former-player plaintiffs without unnecessary duplication or undue costs or fees." Mem. in Support of Mot. (ECF No. 8396-1) ("Mem.") at 2. They ask the Court to direct the production of time and expense reports dating back to 2012, along with copies of the auditor's reports of time and expense submissions. *Id*. at 8. Their request fails for two reasons.

*First*, Class Counsel collected time reports and, as stated in the memorandum in support of their motion to strike the Alexander Objectors' unauthorized sur-reply, stand ready to provide the backup for claimed time and expenses *in camera*. ECF No. 7606, at 22.[4] There is no reason, however, to require the filing of five years' worth of quarterly time and expense reports and reports of audits, which will only facilitate the Alexander Objectors' filibustering agenda by providing them another target at which to nitpick. Contrary to the Alexander Objectors' interpolation (Mem.

---

[4] *In camera* review of billing records guards against privileged or confidential matters being divulged. *E.g.*, *Team Sys. Int'l, LLC v. Haozous*, No. 16-6277, 2017 WL 3616326, at *3 (10th Cir. Aug. 23, 2017) (citing cases).

at 7), nothing in CMO5 contemplated the *public filing* of reports. The required "submission" of time and expense reports under CMO5 was to the individuals whom the Court designated (ECF No. 3710, at 7), not a filing on the Court's docket. And for good reason. CMO5 was not adopted for the Alexander Objectors' or any other objector's benefit but, rather, for that of the Plaintiffs' court-appointed leadership – so that time reports could be regularly received from firms performing common benefit work and periodically evaluated so that, down the road, Co-Lead Counsel (who subsequently were appointed as Co-Lead Class Counsel) would be in an informed position to base any combined fee application or recommended fee allocation.

*Second*, and perhaps more importantly, the Alexander Objectors have no legitimate need to pore over five years' worth of quarterly time and expense and auditor's reports. Their latest sideshow is simply another manifestation of their obdurate refusal to accept that this is a constructive common fund, not a fee-shifting, case, and a percentage-of-recovery analysis therefore applies. *See* ECF No. 7151-1, at 39-40 (citing cases); ECF No. 7464, at 19-20 (same). That being the case, a lodestar cross-check is not even mandatory in this Circuit. *In re Cendant Corp. Litig.*, 264 F.3d 201, 285 (3d Cir. 2001) (courts "*may*, if necessary, utilize the lodestar cross-check") (emphasis added); *Moore v. GMAC Mortg.*, No. 07-4296, 2014 WL 12538188, at *2 (E.D. Pa. Sept. 19, 2014); *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, No. 07-MD-01871, 2012 WL 6923367, at *9 (E.D. Pa. Oct. 19, 2012) ("an abridged lodestar cross-check might not be mandatory"); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 94 n.6 (D.N.J. 2001).

To the extent that a cross-check *is* undertaken, the Third Circuit has admonished that it "need entail neither mathematical precision nor bean-counting," and that "[t]he district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *In re*

*Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005). Thus, a cross-check is "'not a full-blown lodestar inquiry' and a court 'should be satisfied with a summary of the hours expended by all counsel at various stages with less detailed breakdown than would be required in a lodestar jurisdiction.'" *Id.* at 307 n.16 (quoting *Third Circuit Task Force Report*, 208 F.R.D. 340, 423 (2002)); *accord In re Cendant Corp. Litig.*, 264 F.3d at 285 (cross-check entails "an *abbreviated* calculation of the lodestar amount") (emphasis added); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) ("[W]here used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court."); ECF No. 7606, at 24-25 (citing additional cases).

For this reason, the Alexander Objectors are not entitled to production of detailed time records or auditor's reports. *See In re Diet Drugs*, 582 F.3d 524, 539 (3d Cir. 2009) (rejecting objection that district court, which performed lodestar cross-check, "should have considered and made public Class Counsel's individual billing records," approving reliance on time summaries, and noting that consideration of individual billing records is a "time-consuming process"); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 342 (3d Cir. 1998) (where lodestar calculation was employed merely as cross-check, district court acted within its discretion in denying discovery of time records); *see also In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, No. 1:08-WP-65000, 2016 WL 5338012, at *18 (N.D. Ohio Sept. 23, 2016) (objectors "ha[d] no right to see Class Counsel's fee and expense records," especially where "any such review by objectors would not affect the Court's ultimate conclusion").

Simply put, when it comes to the adjudication of an attorneys' fees application, "[a] court need not, and indeed should not, become a green-eyeshade accountant[ ]." *Christian v. Honeywell Ret. Benefit Plan*, No. 13-4144, 2014 WL 1652222, at *7 (E.D. Pa. Apr. 24, 2014) (citation and

5

internal quotation marks omitted).  The hairsplitting scrutiny that the Alexander Objectors would like to perform by obtaining quarterly time reports and reports of audits – which will only result in needless prolongation of the fee proceedings as the Alexander Objectors follow up with yet more contrived or persnickety objections – is simply inconsistent with a "back-of-the-envelope" validation performed in a lodestar cross-check.  There is particularly no need here for the kind of painstaking inspection of time records and auditor's reports that the Alexander Objectors envision.  Having closely overseen this litigation for more than five years now, the Court is well acquainted with the efforts of counsel performing common benefit work.[5]

In short, the Alexander Objectors have articulated no persuasive (let alone compelling) reason for this Court to order, at this late date, the filing of quarterly time and expense reports or of auditor's reports stretching back five years.  Accordingly, the Court should deny their motion.

### B. The Court Should Disregard or Overrule the Alexander Objectors' "First Supplement" to Their Fee Petition Objections Because It Is Both Unauthorized and Untimely, and Relies on Out-of-Date Information

As with their April 21, 2017 unauthorized sur-reply cloaked as a "Response and Objection" to Class Counsel's Fee Petition reply papers (ECF No. 7533), the Alexander Objectors did not request leave to file their "First Supplement."  For this reason alone, the Court should disregard it.

At any rate, the Alexander Objectors' additional objections are devoid of merit. The Alexander Objectors base their arguments on information contained in the June 15, 2017 joint

---

[5] Suggesting that production of all quarterly time reports and reports of audits is needed because time has been improperly billed, the Alexander Objectors contend that Subclass Counsel Dianne Nast seeks compensation for services in contravention of CMO5's directive that time spent preparing time and expense reports is not compensable. Mem. at 4 n.2; *see* CMO5 § I.C [ECF No. 3710, at 4].  That criticism is unfounded.  Ms. Nast's services related to her collecting and compiling time reports of all firms performing common benefit work, and were undertaken at the Court's express direction.  CMO5 § II [ECF No. 3710, at 7].   CMO5 precludes only *individual* attorneys from billing time spent preparing time reports as common benefit time.

status report (ECF No. 7827) filed by the Claims and BAP Administrators.  *See* ECF No. 8395, at 3.  Relying on the Claims Administrator's statement in that report that two monetary awards (totaling $9 million) had been approved as of June 5, 2017 (ECF No. 7827, at 4-5), the Alexander Objectors draw tenuous inferences that this confirms that the Settlement employed "unrecognized and thus unattainable settlement diagnosis criteria" and that the Settling Parties' projections as to the value of the recovery on behalf of the Class were illusory, and thus that "it is no surprise" that Class Counsel seeks payment of fees "in advance of any Settlement distribution."  *Id*. at 3-4.

   The question that begs to be asked, of course, is why the Alexander Objectors waited *more than three months* to raise this.  The untimely presentation of this supplemental objection is a second independent reason to reject it.  No matter, for the information from which they draw their shaky inferences – furnished barely four months after registration for Settlement benefits had opened – is stale.  As of this date (October 4, 2017), a total of 20,367 registrations have been received, including 17,142 from Retired NFL Football Players and their Representatives.  There has been an even greater increase in the monetary awards rendered.  One hundred and four Notices of Monetary Awards have been issued to Class Members, representing $154,103,567 in payments that have been or will be made, with $67,802,846 in payments already made. Declaration of Orran L. Brown, Sr., dated Oct. 4, 2017 (filed contemporaneously herewith), at ¶ 3.  Thus, like their earlier attempts to call into question the recovery achieved on behalf of the Class, *e.g*., ECF Nos. 7355 (at 15-40), 7533 (at 1-6), the Alexander Objectors' latest insinuation that Class Counsel has exaggerated the value of the class-wide recovery and their latest innuendo about Class Counsel's motives fall flat.

## II.  CONCLUSION

For the foregoing reasons, the Court should (i) deny the Alexander Objectors' motion to compel compliance with CMO5 (ECF No. 8396), and (ii) disregard or overrule the "First Supplement" to their objections to Class Counsel's Fee Petition (ECF No. 8395).

Date:  October 4, 2017

    Respectfully submitted,

    */s/ Christopher A. Seeger*
    Christopher A. Seeger
    SEEGER WEISS LLP
    77 Water Street
    New York, NY 10005
    (T) (212) 584-0700
    (F) (212) 584-0799
    cseeger@seegerweiss.com

    ***CO-LEAD CLASS COUNSEL***

    Sol Weiss
    ANAPOL WEISS
    One Logan Square
    130 N. 18th Street, Suite 1600
    Philadelphia, PA 19103
    (T) (215) 735-1130
    (F) (215) 735-2024
    sweiss@anapolweiss.com

    ***CO-LEAD CLASS COUNSEL***

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on all counsel of record via the Court's ECF system on October 4, 2017.

*/s/ Christopher A. Seeger*
Christopher A. Seeger