## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL | § | No. 2:12-md-02323-AB |
| LEAGUE PLAYERS' CONCUSSION | § | |
| INJURY LITIGATION | § | MDL No. 2323 |
| | § | |
| | § | **Hon. Anita B. Brody** |
| Yvonne Sagapolutele, individually | § | |
| And as representative of the Estate | § | |
| Of Pio Sagapolutele, Deceased | § | |
| On behalf of herself and | § | Civ. Action No. 14-00029-AB |
| Others similarly situated, | § | |
|     Plaintiff | § | |
| | § | |
|     v. | § | |
| | § | |
| National Football League and | § | |
| NFL Properties LLC, | § | |
| Successor-in-interest to NFL Properties, Inc., | § | |
|     Defendants | § | |
| | § | |
| | § | |
| THIS DOCUMENT RELATES TO: | § | |
| ALL ACTIONS | § | |

**REPLY IN SUPPORT OF CLASS MEMBER YVONNE SAGAPOLUTELE'S**
**MOTION TO MODIFY THE AMENDED FINAL ORDER AND JUDGMENT**
**[ECF 8263]**

# <u>TABLE OF CONTENTS</u>

Page

Table of Contents.................................................................................................... ii

Index of Authorities............................................................................................... iv

Introduction ............................................................................................................ 1

Argument & Authorities ......................................................................................... 4

    I.    Neither the Summary Notice, the Long-Form Notice, Nor the Original Settlement Agreement notifies Class Members of a Diagnosis Deadline for Death with CTE.......................................... 4

        A.    The original settlement agreement contained no diagnosis deadline for Death with CTE. ............................................ 4

        B.    The Summary Notice contained no diagnosis deadline for Death with CTE. ........................................................................ 5

        C.    The Long-Form Notice contained no diagnosis deadline for Death with CTE and assured Class Members there was no impending deadline. .............................................. 5

        D.    Filing the amended settlement agreement was not sufficient to notify Class Members of the diagnosis deadline. ............................................................................ 8

            1.    Filing the amended settlement agreement was not sufficient notice of the diagnosis deadline because the filing occurred well past the deadlines to opt out and object. ........................................................................ 8

            2.    Filing the amended settlement agreement was not sufficient notice of the diagnosis deadline because only the Summary and Long-Form Notices are relevant. ................. 8

            3.    Filing the amended settlement agreement was not sufficient notice of the diagnosis deadline to Ms. Sagapolutele because she had not retained individual counsel at that time.................................................... 9

4.   Filing the amended settlement agreement was not sufficient notice of the diagnosis deadline because everyone was under the impression that the amended settlement agreement improved the deal for Class Members without providing concessions to the NFL Defendants...................................................................10

II.   The Court has the Authority and Obligation to Remedy this Violation of the Absent Class Members' Due Process Rights....................11

A.   Rule 60(a) gives the Court authority to remove the prejudicial deadline because the deadline was mistakenly incorporated in the Final Order and Judgment. .......................................................................... 11

B.   Rule 60(b) gives the Court authority to remove the prejudicial deadline because modifying the Judgment is necessary to prevent a grave injustice. ............................................. 13

1.   Yvonne Sagapolutele has standing to pursue relief under Rule 60(b).......................................................................13

2.   Rule 60(b) relief is appropriate in this case because it does present extraordinary circumstances...............................15

C.   The Court has the inherent authority to remove the deadline to obtain a Qualifying Diagnosis of Death with CTE because the Court retained continuing jurisdiction to implement the settlement agreement............................................ 16

Conclusion & Prayer for Relief......................................................................... 17

# <u>INDEX OF AUTHORITIES</u>

Page

**Cases**

*Adelson v. Ocwen Fin. Corp.*, 621 Fed. App'x 348 (7th Cir. 2015) ...............................14

*Battle v. Liberty Nat'l Life Ins. Co.*, 770 F. Supp. 1499 (N.D. Ala. 1991) .....................13

*Buck v. Davis*, 137 S. Ct. 759 (2017) ..............................................................................16

*F.A.C., Inc. v. Cooperativa de Seguros de Vida de Puerto Rico*, 449 F.3d 185 (1st Cir. 2006).........................................................................................................16

*Federman v. Artzt*, 339 Fed. Appx. 31 (2d Cir. 2009) .....................................................14

*In re Four Seasons Sec. Laws Litig.*, 525 F.2d 500 (10th Cir. 1975)...............................14

*Kem Mfg. Corp. v. Wilder*, 817 F.2d 1517 (11th Cir. 1987) ............................................13

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994)...................................17

Class Member Yvonne Sagapolutele files this Reply in Support of her Motion to Modify the Amended Final Order and Judgment ("Motion") [ECF No. 8263] and in response to Defendants National Football League and NFL Properties LLC (collectively the "NFL Defendants") Opposition to the Motion ("Opposition") [ECF No. 8430] and in response to the Statement of Co-Lead Class Counsel [ECF No. 8431] that supports the NFL Defendants' Opposition.

## **INTRODUCTION**

Sagapolutele does not come before this Court seeking "significant revisions" to the Amended Final Order and Judgment — she seeks a minor revision to address a significant problem.  Because Class Members were told they could obtain a diagnosis at any time during the term of the Monetary Fund, the addition of an undisclosed diagnosis deadline unjustly prevents Sagapolutele and other similarly-situated Class Members from recovering settlement funds for Death with CTE.  Modifying the final judgment with this minor revision has a significant impact on the small number of Class Members who have been effectively barred from obtaining a Death with CTE diagnosis because of the addition of this diagnosis deadline.

The NFL Defendants oppose this revision.  They claim the diagnosis deadline was always a part of the settlement, but this position is made untenable by the plain language of the settlement.  And notably absent from the NFL Defendants' Opposition is any discussion of the relevant language from the original settlement agreement that was provided to Class Members.  Also notably absent from their Opposition is any discussion

of the Summary Notice (which contains no diagnosis deadline) and the relevant portions of the Long-Form Notice that reassured Class Members there was no impending diagnosis deadline.

Instead of discussing the relevant language in the original settlement agreement and the Summary and Long-Form Notices, the NFL Defendants rely solely on a handful of words pulled out of the Long-Form Notice.  But the language on which the NFL Defendants rely is taken out of context and did not inform Class Members that they needed to obtain a Death with CTE diagnosis by July 7, 2014.  Read in context, the quoted language informed class members that they could recover settlement funds if the obtained one of a series of diagnoses.  One of these diagnoses was Death with CTE before July 7, 2014.  Because there was no diagnosis deadline disclosed in the notices or contained in the settlement agreement until it was inserted after the opt out deadline, the addition of the deadline violates due process, prevents a small number of Class Numbers (including Yvonne Sagapolutele) from obtaining a Death with CTE diagnosis for their deceased loved ones, and significantly benefits the NFL Defendants by unfairly relieving them of their obligation under the settlement terms they agreed to honor.

Finally, the NFL Defendants claim that even if there is a due process violation, this Court cannot fix it.  They are wrong.

The NFL Defendants claim Rule 60(a) cannot apply unless the language was mistakenly added, and hopefully that is precisely what happened in this case.  Absent evidence that the language was intentionally added to disadvantage Class Members, Rule

60(a) allows the Court to correct the final judgment by removing the language that violates Rule 23 and due process.

The NFL Defendants next assert Rule 60(b) does not apply because she should be treated like a non-party.  But Rule 60(b) is an available remedy for absent class members when they are bound by a final judgment arising from a class settlement or did not receive adequate notice of the nature and terms of the settlement.

Finally, the NFL Defendants contend this Court lacks the inherent authority to fix the due process violation that occurred.  But the NFL Defendants cite no primary or binding authority for this proposition and do not discuss the relevant fact that this Court expressly retaining jurisdiction by both stating as much in the final judgment and incorporating the terms of the settlement agreements into the Court's final judgment.  Although the NFL Defendants attempt to distinguish the cases Sagapolutele cites, these cases all support the Court's inherent authority.  Additionally, one of those cases directly holds that a court has the authority to amend the final judgment.

# ARGUMENT & AUTHORITIES

## I.  Neither the Summary Notice, the Long-Form Notice, Nor the Original Settlement Agreement notifies Class Members of a Diagnosis Deadline for Death with CTE.

The NFL Defendants contend the original settlement agreement and the notices contained a diagnosis deadline.  But they point to no language in the original settlement agreement or Summary Notice to support this claim because there is no language in either the original settlement or the Summary Notice agreement that imposes a diagnosis deadline.  The NFL Defendants *do* quote from Long-Form Notice, but that language does not communicate a diagnosis deadline as demonstrated by language elsewhere in the Long-Form Notice that assured Class Members that there was no impending diagnosis deadline.  This language is cited throughout Sagapolutele's Memorandum in support of her Motion.[1]

### A. The original settlement agreement contained no diagnosis deadline for Death with CTE.

The original settlement agreement contained no deadline to obtain a Death with CTE diagnosis.  Although the NFL Defendants disagree with this statement,[2] the actual language from the settlement agreement is conspicuously absent from their Opposition.  The original settlement agreement imposes no diagnosis deadline for Death with CTE:

A Qualifying Diagnosis of Death with CTE shall be made only for Retired

---

[1]  *See* ECF No. 8263-2, pp. 5–6, 13, 17 (citing Long-Form Notice, ECF No. 6093-1, p. 10).

[2]  *NFL Defendants' Opposition*, ECF No. 8430, p. 10 ("The original settlement agreement provided that an award for a Qualifying Diagnosis of Death with CTE would be available only to Retired NFL Football Players who died *and* received a CTE diagnosis prior to Preliminary Approval.  The Long-Form Notice made this explicit . . . .")

NFL Football Players who died prior to the date of the Preliminary Approval and Class Certification Order, through a post-mortem diagnosis by a board-certified neuropathologist of CTE.

ECF No. 6073-2, § 6.3(f); *see also id.* Exh. B-1, p. 5 (requiring a "post-mortem diagnosis of CTE made by a board-certified neuropathologist").  The only diagnosis requirement in the original settlement agreement is that the diagnosis be made by a board-certified neuropathologist.

Like the original settlement agreement, the notices contained no diagnosis deadline.

### B. The Summary Notice contained no diagnosis deadline for Death with CTE.

The Summary Notice also contains no diagnosis deadline, and the NFL Defendants do not appear to disagree.  The Summary Notice merely states that the diagnosis of CTE must occur post-mortem.  Summary Notice, ECF No. 6093-2.

### C. The Long-Form Notice contained no diagnosis deadline for Death with CTE and assured Class Members there was no impending deadline.

The NFL Defendants appear to hang their hat on a single phrase from the Long-Form Notice to support their assertion that Class Members were notified of a deadline to obtain a Death with CTE diagnosis.[3]  But there are two, significant problems with their interpretation of the quoted language.  First, the offered interpretation fails to take into account the surrounding language.  When the quote is read in the context of the full sentence, it clearly imposes no diagnosis deadline.  Second, the interpretation is

---

[3]   *NFL Defendants' Opposition*, ECF No. 8430, pp. 5, 10, 12.

undermined by another portion of the Long-Form Notice.  Another portion of the Long-Form Notice communicated to Class Members that there was no impending diagnosis deadline.

The NFL Defendants claim the Long-Form Notice disclosed a diagnosis deadline of July 7, 2014.  Their argument appears to rely heavily on an excerpt from the Long-Form Notice in which they bold and italicize the word "diagnoses" and add italics to the phrase "July 7, 2014."  But when the quoted language is read in the context of the full sentence, it does not appear to impose any diagnosis deadline:

> Under the Settlement, the NFL Parties will pay to fund:
>
> . . .
>
> Monetary awards for diagnoses of Death with CTE prior to **July 7, 2014**, ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia) and Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) (*see* Questions 14-21); **All valid claims under the Settlement, without limitation, will be paid in full throughout the 65-year life of the Settlement (the "Monetary Award Fund")**

Long-Form Notice, ECF No. 6093-1, p. 6 (emphasis in original).

As this Court has already explained, a "careful reader" would be able to discern that this language discloses that those who die after the date could not be entitled to a monetary award.  *See* Court's Memorandum, April 22, 2015, ECF No. 6509, p. 51.  But a careful reader would not interpret that paragraph to impose a deadline for the "diagnoses."[4]  And

---

[4]  The Statement of Co-Lead Counsel seems to agree, recognizing that the date refers to the date of death, not the date of the diagnosis.  Specifically, the Statement recognizes that Class Members would be compensated if "the Retired NFL Player . . . 'died prior to **July 7, 2014** [Preliminary Approval] and received a diagnosis of Death with CTE' by a board-certified neuropathologist."  That is in fact what

if a careful reader had concerns about whether that sentence could be read to impose a diagnosis deadline, that reader's concerns would be assuaged by reading just a few pages later in the Long-Form Notice.  In fact, the quoted language in that sentence, explicitly refers the reader to Question 14.

Question 14 in the Long-Form Notice affirmatively represented to Class Members that there was no impending diagnosis deadline.  Question 14 asked: "**What diagnoses qualify for monetary awards?**" and provided the answer that there was no impending diagnosis deadline:

> Monetary awards are available for the diagnosis of ALS, Parkinson's Disease, Alzheimer's Disease, [Neurocognitive Impairment,] or Death with CTE (the "Qualifying Diagnoses").  ***A Qualifying Diagnosis may occur at any time until the end of the 65-year term of the Monetary Award Fund.***

Long-Form Notice, ECF No. 6093-1 at 10 (emphasis added).

Moreover, if the careful reader still had questions about whether there was a diagnosis deadline, the Long-Form Notice encouraged Class Members to review the original settlement agreement.  *Id.* at pp. 2 ("**This Notice is a summary of the Settlement Agreement and your rights.  You are encouraged to carefully review the complete Settlement Agreement . . . .**"), 19 ("This Notice summarizes the proposed Settlement. More details are in the Settlement Agreement.").  As discussed above on pages 4–5, the relevant portions of the settlement agreement disclosed no diagnosis deadline for Death

---

the notices communicated, i.e., that the deadline was relevant to the date of death (and thus who could recover) and not to the timing of the diagnosis.

with CTE.  The original settlement agreement simply required a post-mortem diagnosis by a board-certified neuropathogist.

In short, the language in the Long-Form Notice was consistent with the language in the original settlement agreement and the Summary Notice — it imposed no deadline to obtain a Death with CTE diagnosis.

### D. Filing the amended settlement agreement was not sufficient to notify Class Members of the diagnosis deadline.

The NFL Defendants attempt to defend the lack of notice to Class Members because the amended settlement agreement was filed and available on PACER in February 2015. There are several problems with this position that make it untenable.

### 1. Filing the amended settlement agreement was not sufficient notice of the diagnosis deadline because the filing occurred well past the deadlines to opt out and object.

First, the amended settlement agreement was filed after the deadline to opt out and the deadline to object.  Notice is required is to provide Class Members with the opportunity to either opt out or object.  Thus, absent extensions of the deadlines to opt out and file objections, filing the amended settlement agreement could not provide meaningful notice.

### 2. Filing the amended settlement agreement was not sufficient notice of the diagnosis deadline because only the Summary and Long-Form Notices are relevant.

Second, in analyzing whether the requirements of Rule 23 and due process have been met, the amended settlement agreement is irrelevant — "only the Summary Notice and the Long-Form Notice are pertinent to the analysis."  Court's Memorandum, April 22, 2015,

ECF No. 6509, p. 53.   And neither the Summary Notice nor the Long-Form Notice contained a diagnosis deadline.

Merely filing the amended settlement agreement falls far short of the kind of notice required to satisfy Rule 23 and due process.[5]   When this Court analyzed whether the notice of the settlement terms was adequately distributed, the Court noted that the Long-Form Notice was sent to over 30,000 by first-class mail, the settlement terms were widely-publicized in the press, a Settlement Website was established containing links to the Long-Form Notice and the original settlement agreement, and a toll-free number was established and maintained to answer questions about the case.   Court's Memorandum, April 22, 2015, ECF No. 6509, p. 53–55.   These efforts were necessary to satisfy the requirements of Rule 23 and due process by providing Class Members with the opportunity to opt out or object.   Clearly none of that was done when the diagnosis deadline was added to the Settlement Agreement.

   3. ***Filing the amended settlement agreement was not sufficient notice of the diagnosis deadline to Ms. Sagapolutele because she had not retained individual counsel at that time.***

Third, the NFL Defendants indicate that filing the amended settlement should be deemed relevant because a number of Class Members were represented by individual counsel at that time.   But Ms. Sagapolutele was not represented by individual counsel until

---

[5]   The Statement of Co-Lead Counsel asserts that "the amendments to the Settlement Agreement were published through many channels during the extensive outreach undertaken," but it is unclear what channels, if any, were used to communicate the changes to Class Members who had not opted out.

months later.

> **4. Filing the amended settlement agreement was not sufficient notice of the diagnosis deadline because everyone was under the impression that the amended settlement agreement improved the deal for Class Members without providing concessions to the NFL Defendants.**

Fourth, the NFL Defendants imply that the efforts to publicize the amendments were successful because "over 40 Settlement Class Members filed objections to the amendments."  But as the NFL Defendants concede, "these objectors raised somewhat different concerns than Sagapolutele raises here."  Indeed, they raised concerns that were already present in the terms of the original settlement agreement.  Because the Court had ordered that the changes made after the Fairness Hearing should benefit Class Members without providing concessions to the NFL Defendants, it appears that no one realized that a small but significant change had been made that adversely affects Class Members.  The fact that no one raised the current issue only underscores the fundamental importance of meaningful notice when a change is made that adversely affects the rights of class members.

In sum, Class Members (including Ms. Sagapolutele) were provided with no notice of a deadline to obtain a diagnosis of Death with CTE.  That deadline was added to the settlement agreement without notice to the Class Members and apparently without alerting the Court.  Thus, Class Members were given no meaningful opportunity to make decisions on whether they should take steps to either comply with the deadline, opt out of the settlement, or challenge it.  Accordingly, their constitutional due process rights were

violated by the addition of this diagnosis deadline to the Settlement Agreement, and relief is necessary.

## II.   The Court has the Authority and Obligation to Remedy this Violation of the Absent Class Members' Due Process Rights.

The NFL Defendants next argue that Sagapolutele is not entitled to rewrite the settlement agreement.  Of course, that is not what she is asking.  Sagapolutele seeks to prevent the settlement agreement from being rewritten to benefit the NFL Defendants when the Class Members received no notice of this adverse change.  Whether the diagnosis deadline was added intentionally or unintentionally, its addition to the settlement terms and incorporation into the final judgment is constitutionally defective and results in an injustice for Yvonne Sagapolutele.  Nevertheless, the NFL Defendants argue the Court is powerless to do anything even if they did insert a materially adverse term into the settlement agreement without alerting the Court or providing notice to Class Members.  The NFL Defendants are mistaken.  The Court has the authority and obligation to remedy this injustice.

### A. Rule 60(a) gives the Court authority to remove the prejudicial deadline because the deadline was mistakenly incorporated in the Final Order and Judgment.

The NFL Defendants contend that Rule 60(a) is inapplicable because the diagnosis deadline was intentionally added without notice to Class Members.  To the contrary, it appears clear from the record that the Court did not intend to incorporate this term into the settlement agreement, and it is hoped that the NFL Defendants did not intentionally add

this diagnosis deadline to prevent a small number of Class Members from recovering settlement funds.

The NFL Defendants contend Plaintiff has alleged "the amendments in question were deliberate attempts by the Parties to" impose a diagnosis deadline.[6]  To be clear, at this point it is unclear whether the diagnosis deadline was added intentionally.  Hopefully, it was merely an unfortunate mistake.

It is certainly Sagapolutele's position that the Court did not intend to add a previously undisclosed diagnosis deadline to the settlement agreement.  Throughout this highly-publicized litigation involving a multi-billion dollar industry, the Court has taken pains to protect Class Members.  Notably, the Court did not approve the initial proposed settlement out of a concern that capping the settlement fund at $765 million would not adequately compensate all Class Members.  And the Court again stood up for Class Members when concerns were raised at the Fairness Hearing in this case.  Unfortunately, when the Court asked for changes to made to the settlement agreement to benefit class members, the diagnosis deadline was — intentionally or mistakenly — added to the settlement agreement without notice to the Class or the Court.

Accordingly, Rule 60(a) provides an appropriate remedy in this case because the Court expressly instructed that the amendments should benefit the Class Members without providing any concessions to the NFL Defendants.

---

[6]   *NFL Defendants' Opposition*, p. 14.

**B. Rule 60(b) gives the Court authority to remove the prejudicial deadline because modifying the Judgment is necessary to prevent a grave injustice.**

The NFL Defendants next contend that relief is unavailable under Rule 60(b) for two reasons.  First, they contend Ms. Sagapolutele should be treated as a non-party, which prevents her from obtaining relief under Rule 60(b).  But the cases they cite do not support their contention because she was not provided meaningful notice of the change to the settlement.  Second, they contend Ms. Sagapolutele cannot receive relief under Rule 60(b) because she has not demonstrated that she is ultimately entitled to relief.  But Rule 60(b) is not concerned solely with the injustice to Sagapolutele but also with the risk of undermining confidence in the judicial process.  Additionally, as the NFL Defendants' are aware, Pio Sagapolutele has received a post-mortem diagnosis of CTE by a board-certified neuropathologist.  A letter confirming this diagnosis was sent to counsel for the NFL Defendants earlier this year, in February 2017.

### 1.   *Yvonne Sagapolutele has standing to pursue relief under Rule 60(b).*

Yvonne Sagapolutele has standing to pursue relief under Rule 60(b) because her rights were significantly and directly affected by the final judgment in this case.

Although absent class members are treated as non-parties in some circumstances, absent class members have standing to bring a Rule 60(b) challenged when their "rights were directly affected by the final judgment." *Battle v. Liberty Nat'l Life Ins. Co.*, 770 F. Supp. 1499, 1513 (N.D. Ala. 1991) (quoting *Kem Mfg. Corp. v. Wilder*, 817 F.2d 1517, 1520–21 (11th Cir. 1987)); *see also Adelson v. Ocwen Fin. Corp.*, 621 Fed. App'x 348,

351–52 (7th Cir. 2015) (holding that Adelson could not bring a Rule 60(b) challenge because the class-action settlement "document does not foreclose entirely the claims in Adelson's individual lawsuit"); *Federman v. Artzt*, 339 Fed. Appx. 31, 33–34 (2d Cir. 2009) (holding that even non-parties have standing to bring a Rule 60(b) challenge when the non-party has interest in the outcome of the proceedings but was not adequately represented during the litigation). When determining whether an absent class member has standing to bring a Rule 60(b) challenge, a court must analyze whether they were provided meaningful notice. *See In re Four Seasons Sec. Laws Litig.*, 525 F.2d 500, 504 (10th Cir. 1975) (holding that absent class member could not utilize Rule 60(b) to challenge whether "the settlement was not a good one for his class in that more money should have been exacted" because "the notice was far more than adequate").

In *Four Seasons*, the Tenth Circuit held that an absent class member could use a Rule 60(b) motion to complain that the settlement amount could have been higher. *Four Seasons*, 525 F.2d at 503. In analyzing whether the appellant could bring a Rule 60(b) challenge, the court performed an informative analysis, which included asking whether appellant had received adequate notice of the "nature and terms of the proposed settlement." *Id.* In that case, the court determined "the notice was far more than adequate" under Rule 23 and due process. *Id.*

In *Adelson*, the Seventh Circuit held that it lacked appellate jurisdiction because Adelson filed the Rule 60(b) motion in her individual lawsuit and "there is no final judgment in her individual lawsuit." *Adelson*, 621 Fed. App'x at 349. Rule 60(b) was

14

improper in that case because "[n]o matter how Adelson labeled her motion, in substance she was trying to move her stalled lawsuit forward; she was not seeking review of a supposed final judgment in that action." *Id.* at 352.

Here, the NFL Defendants cannot now claim that Sagapolutele's rights were not directly affected by the final judgment.  When Ms. Sagapolutele attempted to file an individual lawsuit, the NFL Defendants demanded that she dismiss the complaint because her "only relief is through the Settlement program" and asserted she is "expressly prohibited from bringing" any other lawsuit against the NFL Defendants because of the final judgment in this case.  *See* Exh. 4, Letter dated January 26, 2017.  Thus, she has standing to bring a Rule 60(b) challenge.  *See Battle*, 770 F. Supp. at 1513.  Additionally, unlike the absent class member in *Four Seasons*, Sagapolutele did not receive adequate notice of the diagnosis deadline that was added to the terms of the settlement agreement.

### 2. *Rule 60(b) relief is appropriate in this case because it does present extraordinary circumstances.*

The NFL Defendants contend this case does not present extraordinary circumstances because Ms. Sagapolutele's late husband has not been diagnosed with CTE.  But the NFL Defendants are aware that he has been diagnosed with CTE by a board-certified neuropathologist in conformity with the requirements contained in the original settlement agreement.  *See* Exh. 5, Letter Provided to NFL Defendants on February 13, 2017.  Ms. Sagapolutele did not obtain such a diagnosis prior to Final Approval Date because she was not told there was any deadline to obtain a diagnosis, but now she is being prevented from submitting a claim based on this deadline.

Moreover, this issue presents extraordinary circumstances beyond this individual class member.   Whether or not other class members in Ms. Sagapolutele's situation have obtained diagnoses of CTE for their deceased loved ones, their due process rights have been violated, which does not merely risk injustice to those class members, it also undermines confidence in the judicial process.   *See Buck v. Davis*, 137 S. Ct. 759, 778 (2017) (explaining that a court should consider both the injustice to the parties and the risk of undermining the public's confidence in the judicial process).

## C. The Court has the inherent authority to remove the deadline to obtain a Qualifying Diagnosis of Death with CTE because the Court retained continuing jurisdiction to implement the settlement agreement.

Finally, the NFL Defendants assert that none of Plaintiff's cases "holds that Courts have inherent authority to amend a final judgment approving a settlement agreement."  But that is precisely what the Court held in *F.A.C., Inc. v. Cooperativa de Seguros de Vida de Puerto Rico*, 449 F.3d 185, 190 (1st Cir. 2006).  The NFL Defendants represent to the Court that the First Circuit "did not hold that the district court had inherent authority to make the amendment."[7]  Not true.  That is precisely what the First Circuit held:

> COSVI counters by *asserting that the district court had no authority to enter the amended judgment.*  Because the amended judgment granted relief sought by COSVI (namely, the direction to FAC to dismiss the pending local suit), one might ask whether COSVI should be permitted to question the court's authority.  But in any event *the court did not lack subject matter jurisdiction to determine whether to amend its judgment*, and the merits of its decision to amend are no longer open to review.

---

[7]   *NFL Defendants Opposition*, p. 17.

*Id.* (emphasis added).  Moreover, unlike the district court in *F.A.C.*, this Court has retained jurisdiction by expressly retaining jurisdiction over the settlement agreement and by incorporating the terms of the settlement agreements into the Court's final judgment.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994) (recognizing that a court has jurisdiction to enforce the terms of a settlement agreement "either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order").

## CONCLUSION & PRAYER FOR RELIEF

It is undisputed that the issue raised in this memorandum was not previously raised in this Court before rendering the final judgment or before the Third Circuit.  And despite the NFL Defendants' assertions that the diagnosis deadline was disclosed to the Class Members, this assertion is undercut by the documents themselves — nowhere in the original settlement agreement (which Class Members did receive notice about), the Summary Notice, or the Long-Form Notice does a diagnosis deadline for Death with CTE appear.  To the contrary, the Long-Form Notice reassured Class Members that there was no impending diagnosis deadline.  Although the Court ordered that the changes to the settlement agreement benefit Class Members, a detrimental change was hidden among these otherwise beneficial changes.   Whether the diagnosis deadline was added unintentionally or otherwise, the Court has the authority to fix this problem by modifying the final judgment to conform to the terms that were communicated to Class Members.

Accordingly, Plaintiff and Absent Class Member Yvonne Sagapolutele respectfully

requests that the Court grant this motion and modify the Amended Final Order and Judgment by removing the diagnosis deadline for Death with CTE.

Dated: October 5, 2017

Respectfully Submitted:

**/s/ Justin B. Demerath**

**Justin Demerath**
Texas State Bar No. 24034415
**David Campbell**
Texas State Bar No. 24057033
O'HANLON, DEMERATH & CASTILLO
808 West Avenue
Austin, TX 78701
Telephone: (512) 494-9949
Facsimile: (512) 494-9919
jdemerath@808west.com
dcampbell@808west.com

**Counsel for Plaintiff and Absent Class Member Yvonne Sagapolutele *pro hac vice***

## CERTIFICATE OF SERVICE

It is hereby certified that a true copy of the foregoing document was served electronically via the Court's electronic filing system on the 5th day of October, 2017, upon all counsel of record.

Dated: October 5, 2017                    **/s/ Justin B. Demerath**
                                          Justin B. Demerath