UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | Case No. 12-md-2323 (AB) |
| | MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*, | **Hon. Anita B. Brody** |
| Plaintiffs, | |
| National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc., | |
| Defendants. | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**MOVANT RETIRED NFL PLAYERS REPRESENTED BY X1LAW'S REPLY TO THE OPPOSITION OF CO-LEAD CLASS COUNSEL, THE NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC TO THEIR MOTION TO DETERMINE PROPER ADMINISTRATION OF CLAIMS <u>UNDER THE SETTLEMENT AGREEMENT</u>**

Retired NFL Players Anthony Allen, Brandon Banks, Josh Bell, Fred Bennett, Michael Coe, Emanuel Cook, Dedrick Epps, Steven Harris, Javarris James, Stefan Logan, Tony Nathan, Durwood Roquemore, Maurice Smith, Reggie Smith, Eric Streater and Cornell Webster (collectively the "Movants") respectfully submit this Reply (the "Reply") to the Opposition of Co-Lead Class Counsel, the National Football League and NFL Properties LLC (the "Joint Opposition") [ECF No. 8432] to their Motion to Determine Proper Administration of Claims Under the Settlement Agreement (the "Motion") [ECF No. 8267]. The Joint Opposition by Co-

Class Counsel, the NFL Parties and the Claims Administrator is an exercise in Gaslighting the injured Retired NFL Players who filed the Motion (and their counsel) through careful twisting and reframing of language, minimization, denial and avoidance of critical points, and changing the subject to irrelevant issues.

**The Claims Administrator Admits Certain Key Paints Raised in the Motion.**

Despite the tactics employed, Co-Lead Class Counsel, the NFL Parties and the Claims Administrator confirm and agree with certain core assertions in the Motion:

1. Claims Administrator admits[1] that Sections 1(a)(iii) and 2(a)(iii) of Exhibit 1 to the Settlement Agreement do not require that corroborating documentary evidence pre-existed the date of the Qualifying Diagnosis.

2. Claims Administrator further admits[2] that it followed the direction of Co-Lead Class Counsel and Counsel for the NFL Parties.

**The Claims Administrator has Read New Detrimental Language into the Settlement Agreement.**

Although the Joint Motion acknowledges the plain language of the Settlement Agreement in certain respects, other new and troubling assertions have been made. Incredulously, the Claims Administrator has, again, read additional language into the Settlement Agreement that does not exist and amounts to an amendment of the Settlement Agreement to the detriment of the Movants. This time, the Claims Administrator has done so in a written Declaration in support of

---

[1] In his Declaration, David Smith stated the following: "I agreed that Exhibit A-1 did not have any *explicit* temporal
[2] In his Declaration, David Smith stated the following: "I told X1Law that **the Parties had instructed Brown Greer to review preliminarily all Claim Packages under Section 8.4** *using the diagnostic criteria for Level 1.5 and 2 claims set out in Exhibit A-1,* regardless of when the Qualifying Diagnosis had been made or who had made it. The Parties had approved procedures and incompleteness notice explanations that required BrownGreer to assess the medical records in every Level 1.5 and Level 2 Claim Package against the BAP diagnostic criteria." [Emphasis added]. *See* Declaration of David E. Smith, ECF No. 8342-2.

the Joint Opposition filed in this action.  Numerous sections of the Joint Opposition add language to plain and unambiguous terms of the Settlement Agreement, which materially alter the requirements that this Court approved.

David Smith states the following in his Declaration:

The italicized language states that the corroborating evidence *must be considered* by the diagnosing physician to reach the Qualifying Diagnosis, so it had to exist and be in the possession of the diagnosing physician at the time he or she made the Qualifying Diagnosis. If it did not exist, the diagnosing physician could not consider it or determine its "sufficiency" to arrive at his or her medical conclusion.

However, Smith added language to the Settlement Agreement, it does not require that the corroborating evidence must be considered.  The Settlement Agreement provides:

Such functional impairment shall be corroborated by documentary evidence (*e.g.,* medical records, employment records)*, the sufficiency of which will be determined by the physician making the Qualifying Diagnosis.*

The language in the Settlement Agreement states that functional impairment shall be corroborated by documentary evidence, the sufficiency of which shall be determined by the diagnosing physician.  The words on the page say that functional impairment must be documented and the physician determines what documentation is sufficient. Nowhere does it say that the documentation must pre-exist, or that the physician must consider.  Further examples are attached in **Exhibit 1**.

**<u>The Claims Administrator Cannot Interpret the Settlement Agreement in a Manner Inconsistent With its Plain Meaning</u>.**

First, the law is clear that if the settlement agreement is ambiguous, it is the Court that is charged with its interpretation—and not the Claims Administrator.  In fact, the law is clear that it is incumbent upon the Claims Administrator to administer the agreement, as written, by the parties.

The Settlement Agreement provides in relevant part that "[n]otwithstanding any contrary

law applicable to the underlying claims, this Settlement Agreement and the Releases hereunder will be interpreted and enforced in accordance with the laws of the State of New York, without regard to conflict of law principles." *See* Settlement Agreement, § 27.1(a), ECF No. 6481-1, at 95.

As stated by Co-Lead Class Counsel[3], "under New York law, which governs the interpretation of the Settlement Agreement, and federal common law, it is black letter law that 'a settlement agreement is a contract that is interpreted according to general principles of contract law.'" *In re Am. Exp. Fin. Advisors Secs. Litig.,* 672 F.3d 113, 129 (2d Cir. 2011) (citation and internal quotation marks omitted); *Powell v. Omnicom,* 497 F.3d 124, 128 (2d Cir. 2007) (same); *accord Rainbow v. Swisher,* 527 N.E.2d 258, 259 (N.Y. 1988) ("[A] settlement agreement is a contract subject to principles of contract interpretation[.]"); *Ronen v. Cohen,* 5 N.Y.S.3d 404, 407 (N.Y. App. Div. 1st Dep't 2015) ("a settlement agreement is a contract"); *Texas 1845, LLC v. Kyaw,* 986 N.Y.S.2d 574, 576 (App. Div. 2d Dep't 2014) ("A settlement agreement is a contract which is subject to the ordinary rules of contract construction.").

The exact issue raised by Movants, that the Claims Administrator added language to the Settlement Agreement in a manner that materially and adversely affects the Class, is not new in the realm of multi-district litigation. In another MDL, Brown Greer, the Claims Administrator in this action, read terms into a settlement agreement that the court in that case held were improper and inconsistent with the plain text of the settlement agreement.

In *In re Deepwater Horizon*, 858 F.3d 298 (5th Cir. 2017), the claims administrator (Brown Greer) was charged with administering claims relative to the BP oil spill. Pursuant to the settlement agreement, each claimant had the right to choose its own post-spill compensation

---

[3] *See* Co-Lead Class Counsel's Memorandum of Law on the Question Referred to this Court by the United States District Court for the Southern District of New York in Consumer Financial Protection Bureau v. RD Legal Funding, LLC, No. 1:17-CV-00890 (LAP)(S.D.N.Y.), ECF No. 8434, at 10.

period, as long as it was a consecutive three-month period in 2010.  *See id.* at 301.  The claims administrator was to use this post-spill compensation period, and subtract it from the same pre-spill period to arrive at the amount of damages owed to each claimant.  *Id.*  An issue arose, however, because not all financial documents submitted showed income and expenses that occurred during the same months.  *Id.*  Rather, sometimes income was received or expenses were incurred outside of the three-measuring months, and this resulted in the claimed damages being inflated.  *Id.*

      To alleviate that concern, the claims administrator developed a policy that reallocated revenue for certain claimants.  *Id.* at 303.  The court, in explaining the reallocation, provided an example:

> Assume that Claimant A is a farmer, who chose a Compensation Period of August to October 2010.  Assume that in 2009, Claimant A sold all of his crops on October 31st, generating $200,000 in net profits.  And assume that in 2010, Claimant A sold all of his crops on November 1st, generating $200,000 in net profits again.
>
> Claimant A did not suffer economic losses pursuant to tort principles.  His net profits, after all, did not decline from 2009 to 2010.
>
> Claimant A did, however, suffer economic losses pursuant to the Settlement Agreement.

*Id.* at 303.

      To account for this issue, the claims administrator would "move, smooth, or otherwise reallocate revenue" to ensure that "damages are awarded to those who have suffered real losses." *Id.*  This was improper.  In so ruling, the court opined:  "This may well be a fairer alternative.  But it cannot be implemented, because it is inconsistent with the plain text of the Settlement Agreement." *Id.*  Even more, however, to allow the claims administrator to proceed in the manner it chose would completely eviscerate the claimants' rights to choose their own

compensation period—a term to which the parties specifically agreed. *Id.*

One of the Court's vital duties is to protect the agreement of the parties. As in *In re Deepwater Horizon*, when the claims administrator goes beyond its, it is for the Court to protect the claimants and the integrity of the process. Simply stated, the manner in which the Claims Administrator has unilaterally determined to implement the Settlement Agreement without in any way seeking or gaining the approval of the Claimants, was "not the agreement that the parties entered into" and, as in *In re Deepwater Horizon*, the Court must refuse to "re-write the settlement agreement under the guise of contractual interpretation." *See id.* at 304.

When a settlement agreement contains provisions to determine how claims will be processed, the Claims Administrator is precluded from "infringing upon" the rights of the claimants as set forth in the agreement. *See id.* at 304.

**Conclusion**

The attempted Gaslighting prevalent throughout the Joint Opposition is best portrayed by this statement: "X1Law is not permitted to play 'Chutes and Ladders' with the claims process, opting to climb to a privileged place without ever passing preliminary review of its Claim Packages." *See* Joint Opposition, ECF 8432, 13. Like much of the Joint Opposition, the statement contains a reference that does not make sense, and indicating that states that Claims Packages must pass the stage of "preliminary review," contradicting its initial portrayal[4] of the Notices of Preliminary Review as a helpful tool provided by the Claims Administrator to assist Claimants in understanding potential issues in their Claims Packages. Are the Deficiency

---

[4] The Joint Motion provides: "Specifically, the Motion misinterprets the Notices of Preliminary Review from the Claims Administrator that outlined potential additional information and/or documents that may support the claims, as a decision on the merits of those claims. These Notices primarily provide claimants with the opportunity to supplement and enhance their submissions." *See* Joint Opposition, ECF 8432, 2.

Notices, which have been retitled as Notices of Preliminary Review and retooled twice, helpful roadmaps or a hurdle in the process that Claims Packages must pass?

The Claims Administrator's constant shifting of position in the administration of the Settlement Agreement leaves Retired NFL Players playing Three-card Monte, guessing whether they are compliant with the requirements of the Claims Administrator.  This must stop.  The Claims Administrator must administer the Settlement Agreement as it is written without reading additional language into the terms that this Court approved.

Dated:  October 28, 2017

Respectfully Submitted,

Patrick J. Tighe
Attorneys for Plaintiffs/Movants
X1LAW, P.A.f/k/a Patrick J. Tighe, P.A.
721 US Highway 1, Ste 121
North Palm Beach, FL 33408
Phone: 561-537-3319
Fax: 561-537-7193
Pat@X1LAW.com
Florida Bar No. 568155

Attorneys for Plaintiffs/Movants
LOREN & KEAN LAW
7111 Fairway Drive, Suite 302
Palm Beach Gardens, FL  33418
Phone: 561-615-5701
Fax: 561-615-5708
mstjacques@lorenkeanlaw.com
Florida Bar No. 0783471

*s/ Michael St. Jacques*
Michael G. St. Jacques, II

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2017, the foregoing document was electronically filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, and that the filing is available for downloading and viewing from the electronic court filing system by counsel for all parties.

**LOREN & KEAN LAW**

*s/ Michael St. Jacques*
**MICHAEL G. ST. JACQUES, II**