# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323<br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>      Plaintiffs,<br><br>          v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>      Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

### DECLARATION OF CHRISTOPHER A. SEEGER IN SUPPORT OF PROPOSED ALLOCATION OF COMMON BENEFIT ATTORNEYS' FEES, PAYMENT OF COMMON BENEFIT EXPENSES, AND PAYMENT OF CASE CONTRIBUTION AWARDS TO CLASS REPRESENTATIVES

Christopher A. Seeger declares, pursuant to 28 U.S.C. § 1746, based upon his personal knowledge, information and belief, the following:

1.  I am fully familiar with the matters set forth herein, including the procedural history of this litigation and the class-wide settlement that this Court approved.  I submit this Declaration pursuant to the Court's September 12, 2017 Order directing me to submit a detailed proposal for the allocation of lawyers' fees among common benefit counsel, including the

precise amounts to be awarded [ECF No. 8367] and in support of the payment of common benefit expenses and case contribution awards for the class representatives from the Attorneys' Fees Qualified Settlement Fund ("QSF") established under the Settlement Agreement for the payment of common benefit fees and expenses.  *See* Settlement Agreement §§ 21.2, 23.7.

*Overview*

2.  I was appointed by the Court in *In re National Football League Players' Concussion Injury Litigation*, MDL No. 2323 (E.D. Pa.) on April 25, 2012, to serve as Plaintiffs' Co-Lead Counsel, and as a member of the Plaintiffs' Executive Committee ("PEC") [ECF No. 64]. I was the principal negotiator and architect of the Class Action Settlement dated June 25, 2014, between the Plaintiff Class and the Defendants National Football League and NFL Properties LLC (collectively, the "NFL Parties") [ECF No. 6073-2], which was preliminarily approved on July 7, 2014 [ECF No. 6084, ¶ 3(b)], amended as of February 13, 2015 [ECF No. 6481-1], and finally approved on April 22, 2015 [ECF No. 6510] (the "Settlement").  With these approvals of the Settlement, I was first appointed to serve and then confirmed in my role as Co-Lead Class Counsel.

3.  As Co-Lead Counsel and Co-Lead Class Counsel, I was personally responsible for and involved in every aspect of the litigation and eventual Settlement.  I have already detailed my assessment of the contributions that I and my firm have provided to the Settlement, as well as the overall contributions by Class Counsel, members of the PEC and Plaintiffs' Steering Committee ("PSC"), and other counsel for Plaintiffs who worked at my direction and for the common benefit of the Settlement Class in my Declaration in Support of Co-Lead Class Counsel's Petition for an Award of Attorneys' Fees, Reimbursement of Costs

and Expenses, Adoption of a Set-Aside of Five Percent of Each Monetary Award and Derivative Claimant Award, and Case Contribution Awards for Class Representatives [ECF No. 7151-2], the supporting Memorandum [ECF No. 7151-1] ("Fee Brief") and my Supplemental Declaration in further support [ECF No. 7464-1].

4. I provide my recommendations herein, as the Court requested, recognizing that the Court will make the final determination as to the aggregate award and allocations.

5. In Part I of this Declaration, I provide my assessment of each of the firms who submitted declarations in support of the Petition for an Award of Attorney's Fees ("Fee Petition") in terms of their relative contributions in bringing about this historic settlement and defending it through appeals.  Based on my assessment of the relative value of each of the firms' contributions, I propose a multiplier to the final adjusted lodestar submitted by each firm in support of the Fee Petition.  The distribution and allocation proposals described herein assume distribution of the full attorneys' fee and expense fund provided under the Settlement Agreement, together with the available supplemental funds described below. In Part II of this Declaration, I provide an accounting of the lodestar and expenses for Class Counsel who have worked on the implementation of the Settlement since the Fee Petition was filed.

6. With regard to Part II, the work summarized and reflected therein is almost exclusively related to the implementation and oversight of the Settlement Program, which will continue to deliver benefits throughout its 65-year term.  I believe that the work reflected in Part II

(post-Settlement work) should be paid from the 5 percent set-aside requested in Section IV.E of the Fee Brief, should the Court so order.[1]

7. Finally, before turning to my allocation recommendations, I explain the total amount of funds available for the award of common benefit fees and expenses, and case contribution awards to the class representatives ("Available Funds") so that, assuming the Court awards the full amount of the Available Funds, I can propose the payment to be made to each firm and class representative.

***The Available Funds for the Payment of Fees and Case Contribution Awards***

8. Pursuant to the Settlement Agreement and the March 7, 2017 Order of the Court [ECF No. 7246], the Parties established the QSF into which the NFL Parties deposited $112,500,000. This fund and any accruing interest are being held by the Trustee of that fund until an order directing payment is made by the Court.  As of September 30, 2017, the balance of this fund is $112,838,602.08, which reflects both the accrual of interest on the balance and the payment of costs and fees related to the establishment and maintenance of the QSF.

9. In addition to the QSF, the Settlement Agreement provided for the payment by the NFL Parties of $4 million to Co-Lead Class Counsel for the "Settlement Class Notice Payment." Settlement Agreement § 14.1(b).  This fund was available to pay for the Settlement Class Notice, the Settlement Class Supplemental Notice, and other related expenses incurred by Co-Lead Class Counsel.  *See* Settlement Agreement §§ 23.1(d) and 23.3(e).  Co-Lead Class Counsel kept these funds in escrow, making payments as expenses were incurred in connection with the various notice programs undertaken to notify the Settlement Class

---

[1] Expenses incurred following submission of the Fee Petition in connection with securing and implementing the Settlement are proposed for reimbursement from the Available Funds.

about the benefits of the Settlement, the right to and means of opting out, the launch of the Settlement Program, the need for registration, certain persons and entities creating confusion through deceptive practices, and other matters relating to the Settlement and Settlement Program.  After the extensive notice campaigns undertaken by Co-Lead Class Counsel, the balance of this escrow account as of September 30, 2017 is $1,368,050.20.

10. Pending an award by the Court, the Available Funds for payment of common benefit fees and expenses, and the case contribution awards to the class representatives are $114,206,652.28 ($112,500,000.00 deposited into the QSF by the NFL Parties, plus $338,602.08 in interest, plus $1,368,050.20 in escrow).  This collective amount is referred to herein as Available Funds.

11. From the Available Funds, I propose that the expenses incurred to date first be reimbursed. The Fee Petition includes a request for reimbursement of $5,682,779.38 in common benefit expenses.  Since the filing of the Fee Petition, an additional $488,775.63 in expenses have been incurred, including $471,291.50 incurred by my firm.  Thus, the total expenses submitted for reimbursement by the Court—pre- and post-Fee Petition—are $6,171,555.01.

12. Accordingly, assuming that all the Available Funds are awarded by the Court, $108,035,097.27 are available for the payment of fees and class representative case contribution awards ($114,206,652.28 less $5,682,779.38 in expenses submitted with the fee petition and less $488,775.63 in additional settlement administration expenses).

***PART I: Assessment of the Contributions of Each Firm, as Submitted in Connection with the Fee Petition***

13. In the course of preparing the Fee Petition, my firm solicited submissions from law firms that desired to submit time or expenses for work that they believed to be for the common benefit of the Settlement Class.  Seeger Weiss reviewed these submissions to ensure that

only time and expenses that could properly be considered to be for the common benefit were included with the Fee Petition.  If we questioned any time or expense in this review process, we allowed the firm who made the submission to explain, for my firm's further consideration, the benefit realized for the Settlement Class, or to simply withdraw the item. The time and expenses presented by the declarations of each of the firms in support of the Fee Petition reflect the final determination of the common benefit lodestar and expenses. The firm declarations submitted with the Fee Petition were prepared by each of these firms and reflect their assessment of their contributions.  This initial review made no assessment of the relative value of the time and expenses to the overall benefit to the Settlement Class.

14. I have now undertaken review of the relative value of the contributions made by each of the firms to bring the eventual benefits of the Settlement to the Settlement Class.   The factors I considered in making this overall assessment included:

- Roles in leadership, including Court-appointed Leadership Positions, such as Co-Lead Counsel, Co-Lead Class Counsel, Class Counsel, Subclass Counsel, membership on  PEC and PSC, and Liaison Positions;

- The point at which a firm's claimed common benefit contributions were made (i.e., were they involved in the earliest stages of a project, or were they brought in mid-way to help on particularized issues); and

- Contributions to the Settlement, including, most importantly, early settlement discussions, formal settlement negotiations and mediations, approvals of the Settlement Agreement, and defense of the Settlement through the attempted appeal to the Supreme Court.

15. Having reviewed the time submitted by each of the firms and their supporting declarations,[2]

and considering the value of their contributions to realizing the benefits for the Settlement

Class, I provide a summary for each of the firms as follows:

    a.   **Anapol Weiss**: Sol H. Weiss of Anapol Weiss was appointed to the PEC and was later appointed to serve as Co-Lead Counsel and then Co-Lead Class Counsel by the Court.  Mr. Weiss' partner Larry E. Coben served as a member of the PEC.  Mr. Weiss contributed to the organization of the PSC and PEC and the establishment of some of the PSC committees.  After undertaking varying leadership responsibilities early in the litigation, he attended many of the settlement meetings and mediations with the NFL.  Mr. Weiss, and his partner, Mr. Coben, assisted in negotiating the battery of tests for the BAP and dealt with other matters relating to the medical issues underpinning the Settlement.  Mr. Weiss was active in the settlement process, including review and comment on the drafts of the Settlement Agreement.  Messrs. Weiss and Coben met with and assisted in preparing scientists and physicians who submitted declarations in support of the Settlement.  Mr. Weiss continued his service to the Settlement after his appointment as Co-Lead Class Counsel.  Anapol Weiss submitted 4,241.20 hours for a lodestar of $1,857,436.00 and reported $1,031,971.55 in common benefit expenses.

    b.   **Casey Gerry Schenk**:  David Casey was appointed to serve on the PSC and served, with the assistance of his partner Fred Schenk, on the Communications Committee.  Casey Gerry Schenk submitted 417.40 hours for a lodestar of $333,920.00 and reported $86,651.72 in common benefit expenses.

    c.   **Dugan Law Firm**: James Dugan was appointed to the PSC and served on the Discovery and Preemption Committees. The Dugan Law Firm submitted 293.90 hours for a lodestar of $188,340.50 and reported $118,880.16 in common benefit expenses.

    d.   **Girard Gibbs LLP**:  Daniel Girard and Amanda Steiner worked with Co-Lead Counsel, experts, and co-counsel to obtain Final Approval of the Settlement and assisted in the defense of the Settlement Agreement after Final Approval.  Girard Gibbs submitted 373.10 hours for a lodestar of $279,489.00 and reported $8,300.11 in common benefit expenses.

---

[2]    Additional details about the work each firm submitted as part of the common benefit are included in the firm declarations submitted as part of my Declaration in support of the Fee Petition. *See* ECF Nos. 7151-06 to 7151-26.

e. **Girardi Keese**:  Thomas V. Girardi was appointed to the PEC.  Girardi Keese, along with Goldberg, Persky & White, P.C., was involved in certain early cases that preceded the formation of this MDL.  This firm submitted 628.70 hours for a lodestar of $448,190.00[3] and reported $5,509.15 in common benefit expenses.

f. **Goldberg, Persky & White**:  Goldberg, Persky & White was involved in certain early cases that preceded the formation of this MDL.  At the direction of Co-Lead Counsel, Jason Luckasevic worked in conjunction with PEC member, Thomas Girardi, and his law firm of Girardi Keese. Goldberg, Persky & White submitted 500.60 hours for a lodestar of $262,860.00 and reported $11,823.78 in common benefit expenses.

g. **Hagen, Rosskopf & Earle**:   Bruce Hagen served on the Communications Committee of the PSC.  Hagen, Rosskopf & Earle submitted 540.80 hours for a lodestar of $324,480.00 and reported $16,998.08 in common benefit expenses.

h. **Hausfeld**: Hausfeld partners, Richard Lewis and Michael D. Hausfeld, were appointed to serve as members of the PEC.  Mr. Lewis served on the Legal Committee of the PSC.  In that role, Mr. Lewis conducted factual and legal research in preparation for, and drafting of, the Master Administrative Personal Injury and Medical Monitoring Class Action Complaints, and opposing the NFL's efforts to dismiss the plaintiffs' claims.

In addition, Hausfeld associate, Jeannine M. Kenney, served as the Court-appointed Plaintiffs' Liaison Counsel, and assisted Co-Lead Counsel in organizing communications with and between the PEC, the PSC and Co-Lead Counsel. Hausfeld submitted 1,281.80 hours for a lodestar of $763,917.50 and reported $165,468.47 in common benefit expenses.

i. **Herman Herman & Katz**: Herman Herman & Katz conducted, at the direction of Co-Lead Counsel, focused research and assessment on medical issues relating to brain injuries.  Herman Herman & Katz submitted 136.30 hours for a lodestar of $89,660.00.

j. **Prof. Samuel Issacharoff**: Professor Issacharoff, whose expertise in appellate advocacy and knowledge of class action jurisprudence proved invaluable to the

---

[3]     After review of the hourly rates submitted by each of the lawyers that reported time for the Fee Petition, I made an adjustment to Mr. Girardi's hourly rate because it was much higher than the rates reported by other, comparable attorneys.  This lodestar reflects my use of an hourly rate of $990.00 per hour rather than the $1,100.00 per hour that was initially submitted.

Class, was consulted early in the settlement negotiations on Rule 23 issues.  He became active publicly during the briefing and oral argument of the Fed. R. Civ. P. 23(f) attempted appeal to the Third Circuit.  He was an instrumental part of the team that prepared the Settlement for Final Approval, including the response to the objections to the Settlement.  Along with Seeger Weiss, he was intimately involved with the briefing before the Third Circuit and the U.S. Supreme Court and was effectively co-lead counsel with regard to appellate issues, briefing and strategy.  Professor Issacharoff submitted 801.75 hours for a lodestar of $800,512.50 and reported $7,302.22 in common benefit expenses.

k.  **Kreindler & Kreindler**: Anthony Tarricone was appointed to serve as a member of the PEC and co-chaired the Communications Committee with Steve Marks (of Podhurst Orseck).  Working closely with Co-Lead Counsel and his co-chair, Mr. Tarricone helped develop an effective media campaign to ensure the dissemination of accurate information to interested media, and counter misinformation concerning the Settlement to potential class members.  Kreindler & Kreindler submitted 1,573.00 hours for a lodestar of $1,258,400.00 and reported $120,832.04 in common benefit expenses.

l.  **Levin Sedran & Berman**:  Arnold Levin was appointed to serve as a member of the PSC and later was appointed Subclass Counsel for Subclass 1.  His firm, Levin Sedran & Berman (LSB), assisted with research on a number of topics relevant to the strength and viability of plaintiffs' claims, including medical monitoring, tolling, preemption, and fraudulent concealment, while assisting in the preparation of the Master Administrative Personal Injury and Medical Monitoring Class Action Complaints.

Mr. Levin was asked by Co-Lead Counsel to assist in the negotiations after they were already underway.  These negotiations included the class and subclass definitions, a preliminary injury grid, and foundation for the Baseline Assessment Program.

Thereafter, Mr. Levin participated in settlement negotiations with the NFL Parties as counsel for a proposed subclass of retired players who were not diagnosed with injuries associated with concussive and sub-concussive head trauma.  At the direction of Co-Lead Counsel, LSB partners, Sandra L. Duggan and Mr. Levin, assisted with the continuing settlement negotiations and coordinated with Dianne Nast, Subclass Counsel for Subclass 2.

LSB continued its support of the Settlement, and assisted Co-Lead Counsel on preliminary settlement approval and class certification, final approval, as well as Rule 23(f) appeals and arguments to the Third Circuit.  This firm submitted 4,862.75 hours for a lodestar of $4,573,438.75 [4] and reported $519,893.97 in common benefit expenses.

m. **Locks Law Firm**: Gene Locks and David Langfitt of the Locks Law Firm (LLF) were appointed to serve as members of the PEC and Mr. Locks was later appointed to serve as Class Counsel in the Settlement.

Mr. Langfitt researched and drafted, along with two other PEC members, the Master Administrative Personal Injury and Medical Monitoring Class Action Complaints, and was involved in preparing the opposition to the NFL's motion to dismiss on the grounds of preemption.

Thereafter, LLF made contributions toward the negotiation of the Settlement. The Locks Law Firm submitted 4,243.00 hours for a lodestar of $3,084,500.00 and reported $639,160.00 in common benefit expenses.

n. **McCorvey Law**: Derriel McCorvey was appointed to serve as a member of the PSC and was active on the Communications Committee.  McCorvey Law submitted 331.30 hours for a lodestar of $198,780.00 and reported $104,155.65 in common benefit expenses.

o. **Mitnick Law**:  Mitnick Law served at the direction of Co-Lead Counsel in the multi-faceted outreach efforts to the Retired NFL Player Community, including in-person events with alumni and other NFL players' associations, which became increasingly important after the Settlement had received Preliminary Approval. Mitnick Law submitted 1,198.15 hours for a lodestar of $898,612.50 and reported $83,082.20 in common benefit expenses.

p. **NastLaw**: Dianne Nast was appointed to serve as a member of the PSC and was later appointed to serve as Subclass Counsel for Subclass 2.  Her firm, NastLaw, was actively involved from the outset of the litigation, including preparation for, and drafting of, the Master Administrative Personal Injury and Medical Monitoring Class Action Complaints and opposing the NFL's efforts to dismiss the plaintiffs' claims.  Thereafter, Ms. Nast participated in settlement negotiations with the NFL

---

[4]    After review of the hourly rates submitted by each of the lawyers that reported time for the Fee Petition, I made an adjustment to the hourly rates of Mr. Levin, Ms. Dugan and Mr. Longer because they were notably higher than the rates reported by other, comparable attorneys.  This lodestar reflects my use of a lower hourly rate than was originally reported for these three lawyers.

Parties as counsel for a proposed subclass of retired players who were diagnosed with injuries associated with concussive and sub-concussive head trauma. NastLaw remained active in defending the Settlement once it received Preliminary Approval.  Nast Law submitted 1,211.75 hours for a lodestar of $765,060.25 and reported $117,138.64 in common benefit expenses.

q.  **Podhurst Orseck**:  Stephen Marks and Ricardo M. Martinez-Cid of Podhurst Orseck were appointed to the PEC.  Mr. Marks also served as co-chair of the Communications and Ethics Committees and was later appointed to serve as Class Counsel.  Mr. Martinez-Cid also served as co-chair of the Discovery and Document Repository Committee.  Additionally, Stephen F. Rosenthal served as one of the co-chairs of the Legal Committee, where he was involved in such matters as the drafting of the Master Administrative Personal Injury and Medical Monitoring Class Action Complaints and opposition to the NFL's efforts to dismiss the plaintiffs' claims.

Mr. Marks was involved in the settlement negotiations, including in early face-to-face negotiations with the NFL Parties, and continued to provide substantial support for the Settlement through Final Approval.  His ongoing engagement included interfacing with the two clients of Podhurst Orseck who served as Class Representatives.  Podhurst Orseck submitted 4,510.80 hours for a lodestar of $3,005,744.50 and reported $771,127.79 in common benefit expenses.

r.  **Pope McGlamry**:  Mike McGlamry was appointed to serve as a member of the PSC and served as co-chair of the Discovery Committee on which his partner, M.J. Blakely, also served.  He also served on the Communications Committee and on the Ethics Committee.  Finally, Trip Tomlinson and Kimberly J. Johnson, both Pope McGlamry shareholders, served on the Legal Committee.  Pope McGlamry submitted 1,274.90 hours for a lodestar of $829,030.00 and reported $125,137.01 in common benefit expenses.

s.  **Rheinhart Wendorf & Blanchfield**: Garrett Blanchfield, a partner at the firm, served on the Third Party Discovery Issues Committee and the Privilege Committee.  Rheinhart Wendorf & Blanchfield submitted 23.10 hours for a lodestar of $14,899.50 and reported $1,480.57 in common benefit expenses.

t.  **Rose, Klein & Marias**:  David Rosen was appointed to serve as a member of the PSC, and served as an active member of the Communications Committee and as chair of the Workers' Compensation Sub-Committee.  He also served on the Lien

and Ethics Sub-Committees.  Rose, Klein & Marias submitted 243.03 hours for a lodestar of $157,969.50 and reported $112,168.64 in common benefit expenses.

u.  **Seeger Weiss**:  My partner, David Buchanan, and I were appointed to the PEC, and I was appointed to serve as Co-Lead Counsel and later as Co-Lead Class Counsel by the Court.  As a result of the appointments of leadership given to me from the outset of the litigation, Seeger Weiss was actively involved in every aspect of this litigation.  We led the development of the legal and scientific issues that drove the litigation toward settlement.  Once settlement discussions began, Mr. Buchanan and I led every session of negotiations with the NFL and led every meeting of plaintiffs' counsel who assisted us in the development of the Settlement Agreement.  After establishing the basic structure for the settlement, including the monetary award grid, contours for the Baseline Assessment Program, and the use of sub-classing to ensure that the Settlement comported with the strictures of Rule 23, we led the extensive negotiations of the final Settlement Agreement. After we successfully argued for Preliminary and Final Approval of the Settlement, including the negotiation of amendments to the Settlement Agreement, my firm took the lead in defending the Settlement on appeals which lasted over a year and ended only when the Supreme Court denied *certiorari*.  After Final Approval, my firm took a similar lead on the implementation of the Settlement which became effective on January 7, 2017.   My firm submitted 21,044 hours for a lodestar of $18,124,869.10 and reported $1,498,690.99 in common benefit expenses.

v.  **The Brad Sohn Law Firm**: Brad Sohn assisted the Ethics Committee on various matters. This Brad Sohn Law Firm submitted 50.00 hours for a lodestar of $26,250.00.

w.  **Spector Roseman Kodroff & Willis**: Spector Roseman Kodroff & Willis partner, William Caldes, served on the Third Party Discovery Issues Committee and the Discovery/Document Repository Committee.  Spector Roseman submitted 74.40 hours for a lodestar of $51,708.00 and reported $1,460.92 in common benefit expenses.

x.  **Zimmerman Reed**: Charles Zimmerman was appointed to serve as a member of the PSC and served on the Ethics Committee.  Zimmerman Reed submitted 1,106.50 hours for a lodestar of $885,907.25 and reported $135,545.72 in common benefit expenses.

16. In addition to the firms that submitted common benefit submissions and whose declarations were submitted in support of the Fee Petition, I propose allocations to two sets firms who represented objectors to the Settlement.  My assessment of each of these firms is as follows:

    a.  **MoloLamken/Hangley Aronchick Segal Pudlin & Schiller**: MoloLamken and Hangley Aronchick Segal Pudlin & Schiller represented the Faneca Objectors over the course of their challenges in this Court and thereafter on appeal.  Their efforts did not yield any benefit for the Settlement Class certified by the Court.  However, the firms served as Court-appointed liaisons for the objector groups and complied with the Court's request [ECF No. 6344] to coordinate the presentation of objections at the November 19, 2014 Fairness Hearing.  In that capacity, these firms engaged in extensive communications with the various groups of represented objectors – both by phone and email – to achieve the orderly and effective presentation of issues at the Fairness Hearing.  I am proposing that these firms share $150,000.00 for this service to the Court.

    b.  **Corboy & Demetrio**: While this firm represented some of the initial objectors to the Settlement Agreement, and their objections did not ultimately yield any benefit for the Settlement Class certified by the Court, this firm ultimately came to support the efforts of Co-Lead Counsel to ensure that the Court's Final Approval of the Settlement would remain intact notwithstanding the continuing efforts of other objectors to undo the Settlement.  Co-Lead Counsel relied on this firm's efforts during the appeals process to bring lingering objectors into the substantial fold of Retired Players and their families who supported the Settlement.  I am proposing $250,000.00 to this firm for its work supporting and defending the Settlement.

17. Based on the above assessments, my intimate knowledge of the work done in this case and the value this work had to the resulting Settlement Program, my review of the time submitted in support of the Fee Petition by each of the aforementioned firms, and my consultations with Brian T. Fitzpatrick, I propose the following allocations, including the multipliers of the lodestars initially submitted, among the firms:

| Firm | Lodestar | Multiplier | Total |
|---|---|---|---|
| Anapol Weiss | $1,857,436.00 | 2.5 | $4,643,590.00 |
| Casey Gerry Schenk | $333,920.00 | 1 | $333,920.00 |
| Dugan Law Firm | $188,340.50 | 1 | $188,340.50 |
| Girard Gibbs | $279,489.00 | 1.25 | $349,361.25 |
| Girardi Keese | $448,190.00 | 1 | $448,190.00 |
| Goldberg Perksy | $262,860.00 | 1 | $262,860.00 |
| Hagens, Rosskopf & Earl | $324,480.00 | 1 | $324,480.00 |
| Hausfeld | $763,917.50 | 1.3 | $993,092.75 |
| Herman Herman & Katz | $89,660.00 | 1 | $89,660.00 |
| Prof. Issacharoff | $800,512.50 | 3.55 | $2,841,819.38 |
| Kreindler & Kreindler | $1,258,400.00 | 1.25 | $1,573,000.00 |
| Levin Sedran & Berman | $4,573,438.75 | 2.25 | $10,290,237.19 |
| Locks Law Firm | $3,084,500.00 | 1.25 | $3,855,625.00 |
| McCorvey Law | $198,780.00 | 1 | $198,780.00 |
| Mitnik Law | $898,612.50 | 0.75 | $673,959.38 |
| NastLaw | $765,060.25 | 1.5 | $1,147,590.38 |
| Podhurst Orseck | $3,005,744.50 | 2.25 | $6,762,925.13 |
| Pope McGlamry | $829,030.00 | 1 | $829,030.00 |
| Rheinhart Wendorf | $14,899.50 | 0.75 | $11,174.63 |
| Rose, Klein & Mariais | $157,969.50 | 1 | $157,969.50 |
| Seeger Weiss | $18,124,869.10 | 3.885 | $70,415,116.45 |
| Brad Sohn Law Firm | $26,250.00 | 0.75 | $19,687.50 |
| Spector Roseman | $51,708.00 | 0.75 | $38,781.00 |
| Zimmerman Reed | $885,907.25 | 1 | $885,907.25 |
| MoloLamkin/Hangley | $150,000.00 | n/a | $150,000.00 |
| Corboy & Demetrio | $250,000.00 | n/a | $250,000.00 |
| | | | |
| *Total Fee Petition Allocation* | | | *$107,735,097.27* |

18. As discussed at greater length in the accompanying Declaration of Brian T. Fitzpatrick, this allocation is reasonable and well within the precedent set by fee allocations in other Multi-District Litigation Settlements.

**PART II: Continuing Work by Class Counsel**

19. As I explained in my earlier Supplemental Declaration in Support of the Fee Petition, work dedicated to the common benefit of the Settlement Class Members did not end on the date that the Fee Petition was filed. Indeed, after January 7, 2017, when the opportunity for any

further appeals by objectors passed and the Settlement became Effective, the work increased substantially as registration launched, the Claims Process opened, and the BAP began.  While my firm is contributing the majority of the professional time on Plaintiffs' side toward implementing the Settlement, certain Class Counsel have also been involved when needed.

20. Below is  a short summary of the work that has been and continues to be undertaken by my firm and Class Counsel:

    a.   <u>Work to Ensure Class Member-Friendly Registration and Claims Processes</u>: Seeger Weiss dedicated hundreds of hours to the negotiation and development of the registration forms and procedures to ensure that the process was efficient and accessible so that no eligible Class Member would be denied entry into the Settlement Program.  Seeger Weiss undertook substantial efforts to drive registration, including appearances by me at many NFL Alumni and annual NFL events across the country, hosting live webinar sessions and countless interviews by local and national media outlets, and responding to hundreds of calls from Retired NFL Football Players and their families.

        Seeger Weiss worked with the Claims Administrator to continually update the Settlement Website, including its "Frequently Asked Questions" section, so as to ensure that Class Members have easy access to the most up-to-date information and clear guidance on the Settlement Program.  Seeger Weiss also worked on revisions to the Settlement Website as new phases began, and additional forms and other documents were prepared for Class Members, such as those relating to the BAP Program and the appeals process.

        Moreover, Seeger Weiss worked with counsel for the NFL Parties, the Administrators, and the Special Masters to ensure that all forms needed to submit a claim were prepared, and that they were all-inclusive and easily understood. Additionally, Seeger Weiss worked with the Claims Administrator, the NFL Parties, and the Special Masters to launch the on-line claims portal, which guides Class Members through the claims submission process.  Seeger Weiss continues to respond to hundreds of calls each month from Retired NFL Football Players and their families about the Settlement and its Claims Process.  In addition, Class Counsel provided input on many of the forms used in Claims Process and Settlement Program.

Seeger Weiss is constantly monitoring the progress of the Settlement Program's Claims Process in order to introduce improvements where possible to ensure that all eligible claims are paid and every Settlement Class Member receives any needed guidance.

b. Selection of Appeals Advisory Panel Members and Appeals Advisory Panel Consultants: Seeger Weiss worked tirelessly for months so that the April 7, 2017 deadline for the recommendation of neurologists and neuropsychologists to serve as Appeals Advisory Panel ("AAP") members and consultants ("AAPC") was met. That process included identifying and interviewing potential candidates, and working with counsel for the NFL until the parties agreed on the recommendations. Class Counsel provided their input on the review of the candidates for these two bodies. As the Court is aware, these medical providers have begun reviewing certain claims where the diagnoses were made prior to the Effective Date in order to determine whether they are satisfactory Qualifying Diagnoses under the Settlement. In some instances, they will resolve disputes between BAP Providers as to the existence (or not) of a Qualifying Diagnosis. Working with the Claims Administrator and the NFL Parties, Seeger Weiss has undertaken ongoing efforts to ensure that these Court-appointed medical professionals have a complete understanding of their responsibilities in the Settlement Program, including, most importantly, their review of the Claim Packages for pre-Effective Date Qualifying Diagnoses.

c. Selection and Orientation of Hundreds of Individuals to Serve as Qualified BAP Providers and Qualified MAF Physicians and Maintenance of These Physician Networks: The time-consuming vetting process associated with the selection of Qualified BAP Providers and Qualified MAF Physicians included a detailed review of each provider's CV and application, as well as in-depth internet searches to ensure the qualifications of each candidate. Seeger Weiss has been engaged in this effort on virtually a daily basis since the Effective Date, and Seeger Weiss and the other relevant parties expect to continue to recruit and contract with additional physicians and providers going forward. These were daunting tasks, but they were successfully accomplished prior to the initial launch of the MAF Physician network and preliminary establishment of the BAP Provider network in June of 2017. Class Counsel participated in the review and selection of physicians for these two networks.

Working with the BAP Administrator, the Claims Administrator, the NFL Parties and its own experts, Seeger Weiss developed the services agreement that each physician and provider will need to sign to serve in the networks. Through this same process, the parties prepared the manuals that are being and will be used by

each of the administrators to train the physicians and providers on the medical aspects of the Settlement, including the testing regimen at the heart of the BAP Program and what constitutes a Qualifying Diagnosis for purposes of qualifying for Monetary Awards.

Moreover, Seeger Weiss will be actively monitoring and reviewing these networks to make certain that Retired NFL Football Players are receiving the care and services that they deserve under the Settlement.

d. <u>Oversight of the Claim Process and Monetary Award Determinations</u>:  Now that the Claims Process has begun and Monetary Award determinations are being issued, Seeger Weiss, as Co-Lead Class Counsel is actively monitoring the Claims Process to ensure that the Settlement Class Members are receiving the benefits that were negotiated on their behalf.  This oversight includes on-going reporting and requests for information from the Claims Administrator and reviewing every determination by a member of the AAP to ensure that the panel is correctly following the terms of the Settlement Agreement.  When issues arise regarding the AAP's application of the Settlement Agreement, Seeger Weiss raises those issues with the Claims Administrator and the NFL, and the parties negotiate the language of a guidance memorandum to be sent to the AAP on that particular issue.

Additionally, Seeger Weiss continues to protect the interests of the Class Members by monitoring the wider operation of the Settlement Program and addressing, with the Claims Administrator, all types of issues as they arise.

e. <u>Appeals of Claims Determinations</u>:   Seeger Weiss has, and will continue, to monitor all Monetary Award determinations to provide guidance to Settlement Class Members, assess whether Co-Lead Class Counsel should appeal any of the adverse determinations or in those cases where an appeal from a determination is taken, either by a Class Member or the NFL Parties, to assess whether Co-Lead Class Counsel should file a statement regarding the appeal.  Through this active engagement, Seeger Weiss is ensuring that the Settlement Program provides the benefits to the Settlement Class as intended.

f. <u>BAP Examinations</u>: Development of the BAP network was only the first step in implementing the BAP benefits for eligible Retired NFL Football Players.  Seeger Weiss is monitoring the implementation of the BAP so that examinations can be promptly scheduled and all appropriate medical standards are followed for the Retired NFL Football Players.

g. <u>Fielding Calls from Class Members and Lawyers Representing Class Members</u>: In addition to all of the above, Seeger Weiss receives and responds to hundreds of

telephone calls each month from Class Members and lawyers representing Class Members.  The calls involve virtually every conceivable issue regarding the Settlement.  Of note, in the weeks leading up to the August 7, 2017 registration deadline, Seeger Weiss was deluged with telephone calls from Class Members (and even non-Class Members) and counsel representing Class Members with questions concerning the registration process.  Seeger Weiss handled every call and was able to assist numerous Class Members in successfully registering under the Settlement. Seeger Weiss is providing the same level of support for Class Members through the Claims Process.  Class Counsel also receive calls from Class Members' counsel and Class Members who are not represented by individual counsel.

Seeger Weiss also handled calls from Class Members and their family members concerning the potentially misleading solicitations and deceptive practices in the wake of the issuance of the Notice designed to clear up confusion disseminated in accordance with the Court's June 12, 2017 Order, and the Court's Notice & Order of July 19, 2017, setting the hearing for September 19, 2017 to address deceptive practices.  Seeger Weiss expects that these calls will continue as the ongoing investigation develops.

h.  <u>Efforts to Combat the Dissemination of Misinformation to Class Members and Other Forms of Exploitation of Class Members</u>:  Seeger Weiss began its investigation into misleading solicitations and improper practices in early 2017.  As Co-Lead Counsel, Seeger Weiss was particularly concerned that profiteers might confuse or unduly influence Class Members, who may be more susceptible to deceptive tactics by reason of neurocognitive impairments, other ailments, age, financial distress, or some combination of all of these factors.

As directed by the Court's July 19, 2017 Order, Seeger Weiss directed discovery at three dozen separate groups of funders, claims service providers, fellow Retired NFL Football Players, and law firms.  Seeger Weiss propounded written discovery requests, met and conferred with respondents' counsel, received and reviewed documents and information, conducted depositions, and filed motions to compel against those persons and entities refusing to comply with the discovery requests. Several of these entities have mounted a spirited defense against these efforts. Seeger Weiss presented its findings to the Court at the hearing held on September 19, 2017.  Additionally, Seeger Weiss created and provided to the Court a spreadsheet identifying all of the Class Members who will purportedly owe portions of their potential future Monetary Awards to one or more of these factions.

Seeger Weiss is continuing to seek discovery from additional entities and will continue to pursue motion practice against those who are resisting compliance with the Court's Order.  These efforts will likely continue into the future for some time,

both in the investigative aspect, and, should the Court fashion a remedy for these Class Members, in the enforcement and/or effectuation of that remedy.

Other efforts underway with respect to third parties involve briefing on the issue of whether the Settlement Agreement prohibits putative assignments of Class Members' monetary awards.  This issue has broad ramifications for the Class inasmuch as several lenders have packaged loan advances to Class Members as assignments in order to disguise the high interest rates charged.

21. I requested that Class Counsel advise me as to time they spent on tasks that they believed were undertaken at my direction and for the common benefit of the Settlement Class since they reported their time in conjunction with the Fee Petition.  Having reviewed that time, I report the following lodestar to the Court for information only:

| Class Counsel | Hours | Lodestar |
|---|---|---|
| Anapol Weiss | 89.4 | $66,074.00 |
| Levin Sedran & Berman | 66.2 | $64,767.50 |
| Locks Law Firm | 316.9 | $250,800.00 |
| NastLaw | 68.0 | $44,606.50 |
| Podhurst Orseck | 279.5 | $165,886.50 |
| Seeger Weiss | 6010.0 | $4,100,280.00 |
| **TOTAL** | **6830.0** | **$4,692,414.50** |

At this juncture, Class Counsel are not seeking an award related to this lodestar. Rather, I suggest that this work be compensated out of the 5% set-aside that was requested with the Fee Petition.

22. In addition to this lodestar, Class Counsel incurred an additional $488,775.63 in common benefit expenses as of the end of September.  As mentioned above, I request reimbursement of these expenses at this time from the Available Funds.

***Class Representative Case Contribution Awards***

23. I request that the Court also award $100,000.00 to each of the three Class Representatives (their families in the cases of Corey Swinson and Kevin Turner, who are deceased) for their

contributions to this case.  Awards of upwards of $100,000 have been deemed appropriate in so-called "megafund" cases such as this.  *See, e.g., In re Air Cargo Shipping Servs.Antitrust Litig.*, No. 06-MD-1775 (JG)(VVP), 2015 WL 5918273, at *5-*6 (E.D.N.Y. Oct. 9, 2015)(awarding six class representatives $90,000 each in connection with 23 settlements totaling over $900 million); *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *17-*18 (N.D. Ca. Sept. 2, 2015) (awarding one class representative $140,000 and four others $100,000 each, out of $415 million settlement); *Marchbanks Truck Serv. v. Comdata Network, Inc.,* Case No. 07-CV-1078, Dkt. 713 at 2, 8 (E.D. Pa. July 14, 2014) (approving $130 million class action settlement, including service award of $150,000 to one class representative and service awards of $75,000 to two other class representatives); *In re Titanium Dioxide Antitrust Litig.*, No. 10–CV–00318(RDB), 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (awarding $125,000 to lead class representative out of $163.5 million settlement); *Velez v. Novartis Pharm. Corp.*, No. 04 CIV 09194 CM, 2010 WL 4877852, at *4, *8, *28 (S.D.N.Y. Nov. 30, 2010) (awarding $125,000 to named plaintiffs from $175 million settlement).

*Conclusion*

24. In summary, I respectfully request that the Court direct me to pay $114,206,652.28 in the aggregate for common benefit work and expenses, and for the $300,000 case contribution awards to the Class Representatives.

25. I further propose for the Court's consideration that the payment of expenses and case contribution awards, and allocation of fees between the firms be made as reflected in the attached exhibit.

26. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of October, 2017.

*/s/ Christopher A. Seeger*
_____
CHRISTOPHER A. SEEGER
Co-Lead Class Counsel

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing and supporting documents were served on all counsel of record via the Court's ECF system on October 10, 2017.

/s/*Christopher A. Seeger*
Christopher A. Seeger