IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION LITIGATION | § § § § § § § § § | No. 12-md-2323 (AB)  MDL No. 2323 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | | |

**The Alexander Objector's Consolidated Reply to Co-Lead Class Counsel's Response to their Motion to Compel Compliance with CMO5 and their Supplemental Objection to Co-Lead Class Counsel's Fee Petition**

The Alexander Objectors file this brief reply to Co-Lead Class Counsel's Consolidated Memorandum (1) in Opposition to the Alexander Objectors' Motion to Compel Compliance with CMO5, and (2) in Response to the First Supplement in Support of the Alexander Objector's Objections:

CMO 5

The Alexander Objectors have asked the Court to compel Co-Lead Class Counsel to file their Case Management Order No. 5 (ECF 3710, CMO 5) Quarterly Fee/Expense Reports, along with the underlying Summary Time and Expense Report Forms. The Court ordered the data maintained in *2012*. Co-Lead Class Counsel does not want those reports and data made public, though they claim $112.5 million in fees is reasonable for the work performed but undisclosed.

1

| In *2017*, Co-Lead Class Counsel says CMO5 was for its benefit: | In *2012*, Co-Leas Class Counsel said this about CMO5, when asking for it: |
|---|---|
| "CMO5 was … adopted for ... the Plaintiffs' court-appointed leadership – so that time reports could be regularly received from firms performing common benefit work and periodically evaluated so that, down the road, Co-Lead Counsel (who subsequently were apoointed as Co-Leas Class Counsel) would be in an informed postion to base any combined fee application or recommended fee allocation." *See* Co-Lead Class Counsel's Consolidated Memorandum in Opposition, ECF 8440, at p. 4 (citing nothing). | 1. "Imposing record-keeping procedures and requiring submission of periodic reports 'encourages lawyers to maintain records adequate for the Court's purposes,' and facilitates **Court review** of later-submitted fee petitions, if any." ECF 3698, at p. 3, citing Manual for Complex Litigation (Fourth) section 14.213 (2011).<br><br>2. Section 14.213 of the referenced Manual suggests not only maintaining contemporaneous time records "in any large litigation, but also use of that specific data "as a cross-check on the percentage-of-fund method." |

CMO5 data was not ordered maintained and certified for Co-Lead Class Counsel's internal use.  Upon Co-Lead Class Counsel's motion, it was ordered for the auditor's review and then the Court's use.  Co-Lead Class Counsel offers no post-settlement confidentiality or privacy concerns to public disclosure of fee and expense statement; they simply don't want anyone to "nitpick."  CMO5 is the nitpick – one engaged in by Co-Lead Class Counsel voluntarily.  And, the Class Members should have a chance to see the fee data that purports to justify exhausting the $112.5 million fee fund before the Court begins appropriating the "5% set-aside" from each Class Member's settlement for "new" money to cover future fees, including the $5 million in "new fees" already dedicated by Co-Lead Class Counsel to the set-aside

that has not yet been ordered.  *See* Proposed Allocation of Common Benefit Attorneys Fee, ECF 8447, p. 19.

| In the alternative, Co-Lead Class Counsel urges that the Court does not need the fee/expense data: | But, of course |
|---|---|
| "There is particularly no need here for the kind of painstaking inspection of time records and auditor's reports that that Alexander Objectors envision.  Having closely overseen this litigation for more than five years now, the Court is well acquainted with the efforts of counsel performing common benefit work." *See* Co-Lead Class Counsel's Consolidated Memorandum in Opposition, ECF 8440, at p. 6. | 1.   The Court is well acquainted with attorney hours spent *with the Court*; but the Court did not spend 50,912.39 hours with counsel. By this logic, timesheets would never be necessary.<br><br>2.   The data should already exist; by Court order, it has been prepared, certified and *reviewed by the auditor* this Court appointed.  The Court ORDERED it be done quarterly and ORDERED that if it wasn't done, the fee "will not be considered for common benefit payments if a Common Benefit Fund is later established  by this Court."<br><br>3.   This Court has already appointed Professor Rubenstein to provide his expert opinion on the reasonableness of requiring class members to contribute a portion of their recoveries to pay fees and whether such process "will result in attorney over compensation (double-dipping."<br><br>4.   If Professor Rubenstein cannot see what services are covered by the first dip, he cannot assess whether counsel are double dipping. |

CMO5 data need not be painstakingly reviewed because it should already comply with the previously-established guidelines and should have already been vetted by Alan B. Winikur, CPA/ABV/CFF.  And, "[s]uch records are an important factor in determining the total reasonable hours spent on the case and who actrually performed the work that produced the result." *See* Judge Eldon E. Fallon, *Common Benefit Fees in Multidistrict Litigation*, 74 La. L. Rev. 371, 383 (2014).

The Court has now ORDERED (ECF 8367) Co-Lead Class Counsel to provide a "detailed submission as a proposal for the allocation of lawyers' fees" including "precise amounts to be awarded" and "justification of those amounts based on an analysis of the work performed."  That analysis is not based upon the CMO5 data. It is not based upon any audited time.  Instead, it is an ad hoc divination of the relative value of each of the firms' contributions that is a "substantive, procedural, and practical failure," just as it was in *Vioxx*.  *See* Charles L. Becker, *How Not to Manage a Common Benefit Fund:  Alocating Attorneys' Fees in Vioxx Litigation*, 9 DREXEL L. REV. 1, 24 (noting the failings of the point system in the *Vioxx* litigation and observing that "[l]odestar has stood the test of time" and is a most useful tool when allocation is proposed by "self-interested actors").

Here, Co-Lead Class Counsel, serving as the allocator, has a financial interest in the resulting awards.  That does not mean Co-Lead Class Counsel's proposed allocation is disqualified or *per se* wrong.  It does mean that the Court is being asked

4

to give deference to "the fox who recommends how to divvy up the chickens." *In re: Diet Drugs*, 401 F.3d 143, 173 (3d Cir. 2005) (Ambro, J., concurring) (analyzing the "procedure by which allocation [is] rendered"). Although Co-Lead Class Counsel has criticized the Alexander Objectors for "nitpicking" the conclusory lodestar data, Co-Lead Class Counsel has returned exclusively to this superficial, unaudited data to make proposed allocations upon which the Court is asked to rely. Requiring public disclosure of the CMO5 data will provide transparency to the determination of "relative value of the contribution" of the firms because the CMO5 data required the details of the contribution and it set forth the contributions that the Court believed was valuable. Disclosure and use of the CMO5 data will bring the transparency to this process to which courts uniformly aspire.

## SUPPLEMENT TO OBJECTION TO FEE PETITION

| Co-Lead Class Counsel "begs a question:" | The Alexander Objectors answer: |
|---|---|
| Why are the Alexander Objectors relying upon a three-month old (June, 2017) joint status report showing the claims the administrator has authorized payment of only two (2) out of the 869 total claims made? *See* ECF 7827-1, p. 9. | The Alexander Objectors are relying upon the June, 2017 joint status report because *it is the only report* Co-Lead Class Counsel and the NFL parties have filed since the the claims process was "launched" on March 23, 2017. |

## PRAYER

For the reasons set forth herein, and in their motion, the Alexander Objectors ask the Court to compel Co-Lead Class Counsel—and all other counsel who intend

to seeks attorneys' fees and expense reimbursements—to file the Quarterly Reports contemplated by CMO 5, along with the underlying Summary Time and Expense Report Forms.

Date: October 12, 2017                                  Respectfully Submitted,

/s/ Lance H. Lubel

| | |
|---|---|
| Mickey Washington | Lance H. Lubel |
| Texas State Bar No.: 24039233 | Texas State Bar No.: 12651125 |
| WASHINGTON & ASSOCIATES, PLLC | Adam Voyles |
| 2019 Wichita Street | Texas State Bar No.: 24003121 |
| Houston, Texas 77004 | Justin R. Goodman |
| Telephone: (713) 225-1838 | Texas State Bar No.: 24036660 |
| Facsimile: (713) 225-1866 | LUBEL VOYLES LLP |
| Email: mw@mickeywashington.com | 675 Bering Dr., Suite 850 |
| | Houston, TX 77057 |
| James Carlos Canady | Telephone: (713) 284-5200 |
| Texas State Bar No.: 24034357 | Facsimile: (713) 284-5250 |
| THE CANADY LAW FIRM | Email: lance@lubelvoyles.com |
| 5020 Montrose Blvd., Suite 701 | adam@lubelvoyles.com |
| Houston, TX 77006 | jgoodman@lubelvoyles.com |
| Telephone: (832) 977-9136 | |
| Facsimile: (832) 714-0314 | |
| Email: ccanady@canadylawfirm.com | |

Attorneys for Melvin Aldridge, Trevor Cobb, Jerry W. Davis, Michael Dumas, Corris Ervin, Robert Evans, Anthony Guillory, Wilmer K. Hicks, Jr., Richard Johnson, Ryan McCoy, Emanuel McNeil, Robert Pollard, Frankie Smith, Tyrone Smith, James A. Young Sr., and Baldwin Malcom Frank

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all counsel of record via the Court's ECF system on October 12, 2017.

/s/ Lance H. Lubel
Lance H. Lubel