# EXHIBIT A

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | Case No. 12-md-2323 (AB)<br><br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>          Plaintiffs,<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>          Defendants. | **Hon. Anita B. Brody** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## MOVANT RETIRED NFL PLAYERS REPRESENTED BY X1LAW'S CORRECTED REPLY  TO THE OPPOSITION OF CO-LEAD CLASS COUNSEL, THE NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC TO THEIR MOTION TO DETERMINE PROPER ADMINISTRATION OF CLAIMS UNDER THE SETTLEMENT AGREEMENT

Retired NFL Players Anthony Allen, Brandon Banks, Josh Bell, Fred Bennett, Michael Coe, Emanuel Cook, Dedrick Epps, Steven Harris, Javarris James, Stefan Logan, Tony Nathan, Durwood Roquemore, Maurice Smith, Reggie Smith, Eric Streater and Cornell Webster (collectively the "Movants") respectfully submit this Corrected Reply (the "Reply") to the Opposition of Co-Lead Class Counsel, the National Football League and NFL Properties LLC (the "Joint Opposition") [ECF No. 8432] to their Motion to Determine Proper Administration of Claims Under the Settlement Agreement (the "Motion") [ECF No. 8267]. The Joint Opposition by Co-Class Counsel, the NFL Parties and the Claims Administrator is an exercise in Gaslighting

the injured Retired NFL Players who filed the Motion (and their counsel) through careful twisting and reframing of language, minimization, denial and avoidance of critical points, and changing the subject to irrelevant issues.

**The Claims Administrator Admits Certain Key Points Raised in the Motion.**

Despite the tactics employed, Co-Lead Class Counsel, the NFL Parties and the Claims Administrator confirm and agree with certain core assertions in the Motion:

1.      Claims Administrator admits[1] that Sections 1(a)(iii) and 2(a)(iii) of Exhibit 1 to the Settlement Agreement do not require that corroborating documentary evidence pre-existed the date of the Qualifying Diagnosis.

2.      Claims Administrator further admits[2] that it followed the direction of Co-Lead Class Counsel and Counsel for the NFL Parties.

**The Claims Administrator has Read New Detrimental Language into the Settlement Agreement.**

Although the Joint Motion acknowledges the plain language of the Settlement Agreement in certain respects, other new and troubling assertions have been made.  Incredulously, the Claims Administrator has, again, read additional language into the Settlement Agreement that does not exist and amounts to an amendment of the Settlement Agreement to the detriment of the Movants.  This time, the Claims Administrator has done so in a written Declaration in support of

---

[1] In his Declaration, David Smith stated the following: "I agreed that Exhibit A-1 did not have any *explicit* temporal language in the clause requiring corroborating evidence for a Player's functional impairment, but I explained why the corroborating documentary evidence must have existed ***on or*** before the date of the Qualifying Diagnosis." [Emphasis added]. *See* ¶11, Declaration of David E. Smith, ECF No. 8432-2.

[2] In his Declaration, David Smith stated the following: "I told X1Law that **the Parties had instructed Brown Greer to review preliminarily all Claim Packages under Section 8.4** ***using the diagnostic criteria for Level 1.5 and 2 claims set out in Exhibit A-1,*** regardless of when the Qualifying Diagnosis had been made or who had made it. The Parties had approved procedures and incompleteness notice explanations that required Brown Greer to assess the medical records in every Level 1.5 and Level 2 Claim Package against the BAP diagnostic criteria." [Emphasis added]. *See* ¶6, Declaration of David E. Smith, ECF No. 8342-2.

the Joint Opposition filed in this action.  Numerous sections of the Joint Opposition add language

to plain and unambiguous terms of the Settlement Agreement, which materially alter the

requirements that this Court approved.

>David Smith states the following in his Declaration:

>The italicized language states that the corroborating evidence *must be considered* by the diagnosing physician to reach the Qualifying Diagnosis, so it had to exist and be in the possession of the diagnosing physician at the time he or she made the Qualifying Diagnosis. If it did not exist, the diagnosing physician could not consider it or determine its "sufficiency" to arrive at his or her medical conclusion.

*See* Declaration of David E. Smith, ECF No. 8342-2 at 6-7.

>However, Smith added language to the Settlement Agreement, it does not require that the

corroborating evidence must be considered.  Section 2(a)(iii) of Ex. A-1 to the Settlement

Agreement provides in relevant part as follows:

>Such functional impairment shall be corroborated by documentary evidence (*e.g.,* medical records, employment records), *the sufficiency of which will be determined by the physician making the Qualifying Diagnosis.*

*See* Settlement Agreement, § 27.1(a), ECF No. 6481-1, at 95.

ECF No. 6481-1, at 95.

>The language in Section 2(a)(iii) of Ex. A-1 to the Settlement Agreement states that

functional impairment shall be corroborated by documentary evidence, the sufficiency of which

shall be determined by the diagnosing physician.  The words on the page say that functional

impairment must be documented and the physician determines what documentation is sufficient.

Nowhere does it say that the documentation must pre-exist, or that the physician must

consider.  Further examples of Claims Administrator changing the Settlement Agreement are

attached in **Exhibit 1**.

**<u>The Claims Administrator Cannot Interpret the Settlement Agreement in a Manner
Inconsistent With its Plain Meaning</u>.**

First, the law is clear that if the settlement agreement is ambiguous, it is the Court that is charged with its interpretation—and not the Claims Administrator.  In fact, the law is clear that it is incumbent upon the Claims Administrator to administer the agreement, as written, by the parties.

The Settlement Agreement provides in relevant part that "[n]otwithstanding any contrary law applicable to the underlying claims, this Settlement Agreement and the Releases hereunder will be interpreted and enforced in accordance with the laws of the State of New York, without regard to conflict of law principles." *See* Settlement Agreement, § 27.1(a), ECF No. 6481-1, at 95.

As stated by Co-Lead Class Counsel[3], "under New York law, which governs the interpretation of the Settlement Agreement, and federal common law, it is black letter law that 'a settlement agreement is a contract that is interpreted according to general principles of contract law.'" *In re Am. Exp. Fin. Advisors Secs. Litig.,* 672 F.3d 113, 129 (2d Cir. 2011) (citation and internal quotation marks omitted); *Powell v. Omnicom,* 497 F.3d 124, 128 (2d Cir. 2007) (same); *accord Rainbow v. Swisher,* 527 N.E.2d 258, 259 (N.Y. 1988) ("[A] settlement agreement is a contract subject to principles of contract interpretation[.]"); *Ronen v. Cohen,* 5 N.Y.S.3d 404, 407 (N.Y. App. Div. 1st Dep't 2015) ("a settlement agreement is a contract"); *Texas 1845, LLC v. Kyaw,* 986 N.Y.S.2d 574, 576 (App. Div. 2d Dep't 2014) ("A settlement agreement is a contract which is subject to the ordinary rules of contract construction.").

The exact issue raised by Movants, that the Claims Administrator added language to the Settlement Agreement in a manner that materially and adversely affects the Class, is not new in

---

[3] *See* Co-Lead Class Counsel's Memorandum of Law on the Question Referred to this Court by the United States District Court for the Southern District of New York in Consumer Financial Protection Bureau v. RD Legal Funding, LLC, No. 1:17-CV-00890 (LAP)(S.D.N.Y.), ECF No. 8434, at 10.

the realm of multi-district litigation. In another MDL, the claims administrator read terms into a settlement agreement that the court in that case held were improper and inconsistent with the plain text of the settlement agreement.

In *In re Deepwater Horizon*, 858 F.3d 298 (5th Cir. 2017), the claims administrator[4] was charged with administering claims relative to the BP oil spill.  Pursuant to the settlement agreement, each claimant had the right to choose its own post-spill compensation period, as long as it was a consecutive three-month period in 2010.  *See id.* at 301.  The claims administrator was to use this post-spill compensation period, and subtract it from the same pre-spill period to arrive at the amount of damages owed to each claimant.  *Id.*  An issue arose, however, because not all financial documents submitted showed income and expenses that occurred during the same months.  *Id.*  Rather, sometimes income was received or expenses were incurred outside of the three-measuring months, and this resulted in the claimed damages being inflated.  *Id.*

To alleviate that concern, the claims administrator developed a policy that reallocated revenue for certain claimants.  *Id.* at 303.  The court, in explaining the reallocation, provided an example:

> Assume that Claimant A is a farmer, who chose a Compensation Period of August to October 2010.  Assume that in 2009, Claimant A sold all of his crops on October 31st, generating $200,000 in net profits.  And assume that in 2010, Claimant A sold all of his crops on November 1st, generating $200,000 in net profits again.
>
> Claimant A did not suffer economic losses pursuant to tort principles.  His net profits, after all, did not decline from 2009 to 2010.
>
> Claimant A did, however, suffer economic losses pursuant to the Settlement Agreement.

*Id.* at 303.

---

[4] In Movants' Reply filed on October 5, 2017 [ECF No. 8444], Movants' counsel erroneously identified Brown Greer as the claims administrator in a separate MDL, *In re Deepwater Horizon*, 858 F.3d 298 (5th Cir. 2017). Brown Greer assisted in claims administration but was not the named claims administrator in that MDL.

To account for this issue, the claims administrator would "move, smooth, or otherwise reallocate revenue" to ensure that "damages are awarded to those who have suffered real losses." *Id.* This was improper. In so ruling, the court opined: "This may well be a fairer alternative. But it cannot be implemented, because it is inconsistent with the plain text of the Settlement Agreement." *Id.* Even more, however, to allow the claims administrator to proceed in the manner it chose would completely eviscerate the claimants' rights to choose their own compensation period—a term to which the parties specifically agreed. *Id.*

One of the Court's vital duties is to protect the agreement of the parties. As in *In re Deepwater Horizon*, when the claims administrator goes beyond its, it is for the Court to protect the claimants and the integrity of the process. Simply stated, the manner in which the Claims Administrator has unilaterally determined to implement the Settlement Agreement without in any way seeking or gaining the approval of the Claimants, was "not the agreement that the parties entered into" and, as in *In re Deepwater Horizon*, the Court must refuse to "re-write the settlement agreement under the guise of contractual interpretation." *See id.* at 304.

When a settlement agreement contains provisions to determine how claims will be processed, the Claims Administrator is precluded from "infringing upon" the rights of the claimants as set forth in the agreement. *See id.* at 304.

### Conclusion

The attempted Gaslighting prevalent throughout the Joint Opposition is best portrayed by this statement: "X1Law is not permitted to play 'Chutes and Ladders' with the claims process, opting to climb to a privileged place without ever passing preliminary review of its Claim Packages." *See* Joint Opposition, ECF 8432, 13. Like much of the Joint Opposition, the statement contains a reference that does not make sense, and states that Claims Packages must

pass the stage of "preliminary review," contradicting its initial portrayal[5] of the Notices of Preliminary Review as a helpful tool provided by the Claims Administrator to assist Claimants in understanding potential issues in their Claims Packages.  Are the Deficiency Notices, which have been retitled as Notices of Preliminary Review and retooled twice, helpful roadmaps or a hurdle in the process that Claims Packages must pass?

The Claims Administrator's constant shifting of position in the administration of the Settlement Agreement leaves Retired NFL Players playing Three-card Monte, guessing whether they are compliant with the requirements of the Claims Administrator.  This must stop.  The Claims Administrator must administer the Settlement Agreement as it is written without reading additional language into the terms that this Court approved.

Dated:  October 12, 2017

Respectfully Submitted,

---

[5] The Joint Motion provides: "Specifically, the Motion misinterprets the Notices of Preliminary Review from the Claims Administrator that outlined potential additional information and/or documents that may support the claims, as a decision on the merits of those claims. These Notices primarily provide claimants with the opportunity to supplement and enhance their submissions."  *See* Joint Opposition, ECF 8432, 2.

Patrick J. Tighe
Attorneys for Plaintiffs/Movants
X1LAW, P.A.f/k/a Patrick J. Tighe, P.A.
721 US Highway 1, Ste 121
North Palm Beach, FL 33408
Phone: 561-537-3319
Fax: 561-537-7193
Pat@X1LAW.com
Florida Bar No. 568155

Attorneys for Plaintiffs/Movants
LOREN & KEAN LAW
7111 Fairway Drive, Suite 302
Palm Beach Gardens, FL 33418
Phone: 561-615-5701
Fax: 561-615-5708
mstjacques@lorenkeanlaw.com
Florida Bar No. 0783471

*s/ Michael St. Jacques*
Michael G. St. Jacques, II

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2017, the foregoing document was electronically filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, and that the filing is available for downloading and viewing from the electronic court filing system by counsel for all parties.

**LOREN & KEAN LAW**

*s/ Michael St. Jacques*
**MICHAEL G. ST. JACQUES, II**

# EXHIBIT - 1

**EXHIBIT 1 to Reply**: **Additional Examples Contained in the Joint Opposition Where the Claims Administrator has Read Additional Language into the Settlement Agreement that Materially Alter the Rights Provided To Class Member Rights Without Notice to the Class**

> 1.  **The Settlement Agreement provides that a Deficiency Notice is sent when a Claims Package is rejected and failure to cure the Deficiency will result in denial of the Claim.**

The Joint Opposition provides as follows regarding the Claims Administrator's issuance

of Notice of Claims Package Deficiency(ies)[6] ("Deficiency Notice") [*see* July 18, 2017 Notice of

Claims Package Deficiency, ECF No. 8267-1]:

> To the extent information and/or documents contemplated in the BAP diagnostic criteria are not included in the claim package for these qualifying diagnosis, the claims administrator solicits them. If that information and/or documentation exists and supports the qualifying diagnosis at the time of such diagnosis, it's inclusion in the claim package results in the presentation of a more complete picture of the retired football players medical condition and, thereby, helps the merits of the claims. **To the extent that such material does not exist, the claims administrator nonetheless permits the claimant to direct that the merits review of the claim proceed to determine whether the diagnosis submitted is "based on principles generally consistent" with the BAP criteria. [Emphasis added].**

*See* ECF No. 8432, 5.

However, the Settlement Agreement is clear that a Deficiency Notice is sent when a

Claims Package is **rejected** to provide Claimant notice of a Deficiency. Section 2.1 (bb) of the

Settlement Agreement provides the definition of Deficiency as follows:

> (bb) "Deficiency" means any failure of a Settlement Class Member to provide required information or documentation to the Claims Administrator as set forth in section 8.5.

*See* ECF No. 6481-1, 12.

Section 2.1 (iii) of the Settlement Agreement provides the definition for Notice of

Deficiency as follows:

---

[6] The Joint Opposition claims that "XI Law attaches an example of a notice it received in response to a submitted Claims Package … titled 'Notice of Deficiency'…" which is inaccurate.  The Notice referred to in the Joint Opposition is titled "Notice of **Claims Package** Deficiency" not "Notice of Deficiency." *See* ECF No. 8267-1.

(iii) "Notice of Deficiency" means that document that the Claims Administrator sends to any Settlement Class Member whose Claim Package or Derivative Claim Package contains a deficiency, as set forth in section 8.5.

*See* ECF No. 6481-1, 15.

Section 8.5 of the Settlement Agreement provides as follows:

Section 8.5 <u>Deficiencies and Cure</u>. For rejected Claim Packages or Derivative Claim Packages, the Claims Administrator will send a Notice of Deficiency to the Settlement Class Member, which notice will contain a brief explanation of the Deficiency(ies) giving rise to the rejection of the Claim Package or Derivative Claim  Package, and will, where necessary, request additional information and/or documentation . . . **Any Claim Package or Derivative Claim Package that continues to suffer from a Deficiency identified on the Notice of Deficiency following the submission of documentation intended to cure the Deficiency will be denied by the Claims administrator. [Emphasis added].**

*See* ECF No. 6481-1, 46.

Section III of the Deficiency Notice titled "How to Respond to this Notice" provides in relevant part:

By the Cure Deadline stated above, send us the missing information identified in Section II.  If you do not respond in full on or before the Cure Deadline, we will have to assess your claim based on the materials we have, which could lead to a lower Monetary Award or denial of your claim in its entirety.

*See* ECF No. 8267-1

The Claims Administrator's position: (a) materially alters the plain language of the Settlement Agreement; (b) is not communicated anywhere other than the Joint Opposition; (c) is wholly unsupported regarding the purpose and issuance of a Notice of Deficiency; (d) leads Claimants to error because a failure to cure a deficiency will result in a denial of the Claim; and (e) illustrates improper administration of the Settlement Agreement.

2.     The Notices of Preliminary Review Add Language and Requirements that **Do Not Exist** in the Settlement and Materially Alter Rights of Movants.

The Declaration of Orran L. Brown, Sr. provides that the Parties agreed to alter the Deficiency Notices to, among other things, "change the title to 'Notice of Preliminary Review' rather than 'Notice of Claim Package Deficiency ....'" *See* ECF No. 8432-1, 10.  Brown further testifies in his Declaration that "[t]he Parties and the Special Master approved these updates to the deficiency notice on July 18, 2017, and we began sending these notices on July 20, 2017, on all claims based on Qualifying Diagnoses of Level 1.5 and 2 made outside of the BAP."  *See* ECF No. 8432-1, 11.

On July 18, 2017, the same day that the "Parties and the Special Master" approved the renamed deficiency notices, the Claims Administrator issued Deficiency Notices on twenty four (24) Claims submitted by XILaw instead of holding off and sending Notices of Preliminary Review. *See* July 18, 2017 Notice of Claims Package Deficiency, ECF No. 8267-1.

On August 24, 2017, more than a month after approval, the Claims Administrator issued a Notice of Preliminary Review ("NPR") on twenty two (22) Claims submitted by XILaw.  The first "Issue" identified on each of the NPRs issued on X1Law Claims provides: "You did not submit any medical records from the physician who signed the Diagnosing Physician Certification Form and examined the Retired NFL Football Player."  A redacted copy of an NPR is attached as **Exhibit A**.

Further, the corresponding "Do I Have to Respond" box on each NPR is marked "Yes." *See* NPR, Exhibit A.  The Joint Opposition claims that the Deficiency Notices, which were renamed NPRs, are simply helpful reminder to Claimants as part of the Claims Administrator's incompleteness process.

According to Brown, the NPRs allow a Claimant to instruct the Claims Administrator to:

> [S]end the claim to the AAP for analysis without the player or firm adding any of the items to the claim file, **unless the missing item was so fundamental that we must deny the claim without it**, such as the HIPAA Form, the Settlement Class Member's signature on the Claim Form, **or having a Diagnosing Physician Certification Form signed by the physician who personally examined the player and provided the diagnosis**. [Emphasis added].

*See* ECF No. 8432-1, 10.

According to Brown, failure to cure by submitting **"**a Diagnosing Physician Certification Form signed by the physician who personally examined the player and provided the diagnosis" will result in denial of the Claim by the Claims Administrator Brown Greer.  More specifically, Brown testifies that:

> One of the many claims review procedures **approved by the Parties** for us to follow **requires that the physician who signs the Diagnosing Physician Certification Form must have personally examined** the Retired NFL Football Player and observed his cognitive and physical performance first hand to be able to make a Qualifying Diagnosis under the Settlement Agreement.  [Emphasis added].

*See* ECF No. 8432-1, 5.

However, this alleged "cure" is a material change read into, but not provided under, the Settlement Agreement, which Brown testifies was approved by Class Counsel and the NFL Parties (not the Special Masters), and implemented through the NPRs (a notice procedure not provided for in the Settlement Agreement).

First, this latest addition by the Claims Administrator is not merely a procedure to assist in the administration of the Settlement Agreement.  It is a substantive and material alteration of the plain language of the Settlement Agreement that adds a requirement, not a procedure, which did not exist before Co-Lead Class Counsel and the NFL Parties provided the Claims

Administrator[7] authority to add the requirement.  Specifically, Brown's suggestion that X1Law must cure by either having Dr. M. Albin Morariu, Sr. or Dr. Mircea Morariu submit the Diagnosing Physician Forms, OR requiring that Dr. Suite examine the players in person and submit new forms bearing the date of the exams, illustrates two points: (1) the additional requirement places form before substance by eliminating MAF Dr. Suite's sworn approval of the Claims, or forcing Movants into a post-Effective Date diagnosis, either way materially altering their rights; and (2) the NFL Parties' obvious influence over the Claims Administrator.

Co-Lead Class Counsel represented the following to this Court:

> **The Monetary and Derivative Awards programs will not be run under the NFL's auspices** but, rather, by an independent Court-appointed Administrator (ECF No. 6534, at ¶ 13 [confirming appointment of BrownGreer PLC as Claims Administrator]), and Class Counsel's role in overseeing the Settlement's implementation and ensuring fair treatment of Class Members need not be discussed again here. The Court is well aware of it. Any suggestion that the appeal rate will be the same as for the NFL's disability program is pure conjecture.  [Emphasis Added].

*See* CLC's Omnibus Reply Memorandum, ECF No. 7464, p.55.

Moreover, this material change flies in the face of:

(a) the BAP which states that a neuropsychologist can administer their battery of test and give a report to the neurologist evaluating the football player's abilities; and

(b) practical medicine where doctors will have assistance from nurse practitioners, nurses or someone else who conduct tests & make observations and report back to the doctor.

---

[7] Smith and Brown both testified that the Parties considered and approved changes. *See* ¶¶ 8, 11(d) Brown Dec., ECF No.  8432-1; and ¶¶ 10, 12 Smith Dec., ECF No. 8432-2.

    **3.**      **The Notices of Preliminary Review are not Helpful Notices to Allow Claimants to Supplement their Claims Packages; to the Contrary, the Notices of Preliminary Review Provide the Claims Administrator Authority to Deny Claims Based Upon Additional Requirements that Do Not Exist in the Settlement and Materially Alter Rights of Movants.**

The Joint Opposition argues that the NPRs "primarily provide claimants with the opportunity to supplement and enhance their submissions." *See* ECF No. 8432, 2. The Joint Opposition further cites Brown's Declaration in support of its characterization of the Deficiency Notices allegedly issued by the Claims Administrator "*prior* to review of the merits of a claim:"

> The Claims Administrator issued such notices in an effort to ensure that each Claims Package is as fulsome as possible before the merits of the claim is reviewed; but, except for certain fundamental and limited exclusions, such a notice is not a forecast of the ultimate determination on the merits of a claim.

*See* ECF No. 8432, 4-5.

Couching Deficiency Notices as preliminary helpful reminders that were part of the Claims Administrator's discretionary incompleteness process is not accurate. Rather, after being questioned for its failure to properly administer Deficiency Notices under the Settlement Agreement, the Claims Administrator created a completely new notice (Notice of Preliminary Review) that does not exist under the Settlement Agreement and added substantive terms that materially alter Claimants' rights.

    **4.**      **The Settlement Agreement provides that a diagnosis while living of Level 2 Neurocognitive Impairment, *i.e.,* moderate dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 2(a)(i)-(iv) (BAP STANDARDS). The BAP doctors are being given different requirements for the timing of receipt of the evidence.**

Claimants who present Pre-Effective Date Claims outside of the BAP must meet the following for a Qualifying Diagnosis of Level 2.0 Neurocognitive Impairment:

> For living Retired NFL Football Players diagnosed outside of the BAP, a diagnosis while living of Level 2 Neurocognitive Impairment, *i.e.,* moderate dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 2(a)(i)-(iv) above, unless the diagnosing

> physician can certify in the Diagnosing Physician Certification that certain testing in 2(a)(i)-(iv) is medically unnecessary because the Retired NFL Football Player's dementia is so severe, made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

*See* MDL ECF No. 6481-1, p. 108-9.

The Joint Opposition provides as follows regarding necessary evidence for the diagnosis

on the date of encounter:

> The diagnosing physician may have all necessary evidence for the diagnosis on the date of encounter, and he or she may acquire additional, supplemental evidence after the date of encounter via documents, interviews and statements that corroborate the physician's impressions. ***Evidence of functional impairment, however, must be in the physician's hands in some form at the time of diagnosis.*** [Emphasis added].

*See* MDL ECF No. 8432, p. 8

The NFL CONCUSSION SETTLEMENT PROGRAM: QUALIFIED MAF

PHYSICIAN MANUAL's provides as follows regarding documentary evidence for making the

Qualifying Diagnosis:

> Documentation (e.g., medical records, employment records) is necessary to establish any functional impairment (CDR 1.0 or greater) consistent with, or greater than BAP Level 1.5 Neurocognitive Impairment. The sufficiency of the documentary evidence shall be determined by the provider making the Qualifying Diagnosis. If such documentary evidence does not exist or is not available, evidence of functional impairment consistent with, or greater than BAP Level 1.5 Neurocognitive Impairment may be established for the player on the basis of (a) evidence of cognitive decline from a previous level of performance, in accordance with the testing protocol set forth in this Manual, in the executive function cognitive domain or the learning and memory cognitive domain, and at least one other cognitive domain; and (b) a third-party sworn affidavit from a person familiar with the Retired NFL Football Player's condition (other than the player or his family members) corroborating the Retired NFL Football Player's functional impairment. The sufficiency of any corroborating affidavit shall be determined by the provider making the Qualifying Diagnosis. ***<u>Supporting materials should be provided at or within two weeks of the completion of the player's baseline assessment examination.</u>*** [Emphasis added].

*See* NFL MAF Manual as of 4/20/17, ¶2, p. 24.

The QUALIFIED MAF PHYSICIAN MANUAL: (a) contradicts the Joint Opposition regarding necessary evidence for the diagnosis and the timing of the receipt thereof; (b) is not communicated anywhere other than in QUALIFIED MAF PHYSICIAN MANUAL; (c) illustrates improper administration of the Settlement Agreement; (d) draws a line in the sand as to the meaning of generally consistent; and (e) provides additional support that the Claims Administrator is hiding the ball.

 **CONCUSSION SETTLEMENT**

IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION
No. 2:12-md-02323 (E.D. Pa.)

## NOTICE OF PRELIMINARY REVIEW
### DATE OF NOTICE: August 24, 2017
### RESPONSE DEADLINE: December 22, 2017

## I. SETTLEMENT CLASS MEMBER INFORMATION

**Settlement Program ID**

| | First | M.I. | Last |
|---|---|---|---|
| **Name:** | | | |

| | |
|---|---|
| **Settlement Class Member Type** | Retired NFL Football Player |
| **Primary Counsel** | X1Law, PA |

## II. WHY AM I RECEIVING THIS NOTICE?

This Notice is an official communication from the Claims Administrator for the NFL Concussion Settlement Program. We reviewed your claim as mandated by Section 8.4 of the Settlement Agreement. The table below shows the result of that review.

Exhibit A-1 to the Settlement Agreement requires that Qualifying Diagnoses of Level 1.5 and 2 Neurocognitive Impairment made outside of the Baseline Assessment Program ("BAP") be "generally consistent" with the BAP requirements for Level 1.5 and 2 Diagnoses. Your claim is based on such a Qualifying Diagnosis made before the Effective Date of the Settlement. In this Notice, we point out medical records and supporting evidence that are not present in your file but that you may wish to provide before we assess your claim. However, if you prefer to have us review your Claim Package as submitted or do not have such records and supporting evidence, you can let us know by following the instructions described in Section III of this Notice. This Notice also may show certain items that must be addressed before we can review your claim under the "generally consistent" standard. The third column in the table labeled "Do I Have to Respond?" indicates whether you have to submit the requested information or document (marked with Yes) before we can send you a determination on your claim. You have the option to submit the materials or information marked with a No in the third column.

| | Issue | How to Address this Item | Do I Have to Respond? |
|---|---|---|---|
| 1. | You did not submit any medical records from the physician who signed the Diagnosing Physician Certification Form and examined the Retired NFL Football Player. | Click the Respond to Deficiency button, go to Section 3 for Medical Records, click on the Upload Medical Records button and follow the instructions to upload medical records reflecting the Qualifying Diagnosis. Make sure the records are from the same physician who signed the Diagnosing Physician Certification Form. If the wrong physician signed the Diagnosing Physician Certification Form, go to Section 2 for the Diagnosing Physician Certification Form, click on the Upload Diagnosing Physician Certification Form button and follow the instructions to upload a new Diagnosing Physician Certification Form signed by the diagnosing physician reflected in the medical records. | Yes |

| | | | |
|---|---|---|---|
| 2. | Your medical records did not show any neuropsychological testing for evidence of cognitive decline from a previous level of performance in the required number and type of cognitive domains (complex attention, executive function, learning and memory, language, and perceptual-spatial). | Click the Respond to Deficiency button, go to Section 3 for Medical Records, click on the Upload Medical Records button and follow the instructions to upload medical records reflecting the Qualifying Diagnosis. For a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment or Level 2 Neurocognitive Impairment, the diagnosis must meet the criteria set forth in Settlement Agreement Exhibit 1, subsections 1(a)(i)-(iv) or 2(a)(i)-(iv), for diagnoses through the BAP and must otherwise be based on evaluation and evidence generally consistent with the diagnostic criteria set forth in those subsections for diagnoses made outside of the BAP. The medical records must include evidence that these diagnostic criteria were followed. | No |
| 3. | Your medical records indicate that the diagnosing physician did not consider documentary evidence of functional impairment for a Qualifying Diagnosis of Level 1.5 or 2 Neurocognitive Impairment. The Settlement Agreement requires that pre-Effective Date Qualifying Diagnoses of Level 1.5 or 2 Neurocognitive Impairment be based on evidence and evaluation generally consistent with Exhibit A-1, subsections 1(a)(iii) and 2(a) (iii). These sections contemplate that the Retired NFL Football Player's functional impairment be corroborated by documentary evidence, such as medical records or employment records from before the date of the Qualifying Diagnosis, the sufficiency of which will be determined by the physician making the Qualifying Diagnosis. If no such corroborating documentary evidence exists, the Settlement Agreement contemplates that functional impairment be corroborated by a sworn statement from a person familiar with the Retired NFL Football Player's condition (other than the player or his family members). | Click the Respond to Deficiency button, go to Section 3 for Medical Records, click on the Upload Medical Records button and follow the instructions to upload medical records reflecting the Qualifying Diagnosis that show that the diagnosing physician considered documentary evidence of functional impairment. Make sure you also submit that evidence with your response. If you need to submit a third-party sworn affidavit from a person familiar with the Retired NFL Football Player's condition, go to https://www.nflconcussionsettlement.com/Forms.aspx to download a copy of this affidavit. | No |

| | | | |
|---|---|---|---|
| 4. | Settlement Agreement Exhibit A-1 requires that the Retired NFL Football Player exhibit functional impairment generally consistent with the criteria set forth in the National Alzheimer's Coordinating Center's Clinical Dementia Rating (CDR) scale Category 1.0 (for Level 1.5 Neurocognitive Impairment) or Category 2.0 (for Level 2 Neurocognitive Impairment) in the areas of Community Affairs, Home & Hobbies, and Personal Care. Your medical records do not indicate that the diagnosing physician evaluated functional impairment in the required areas. | Click the Respond to Deficiency button, go to Section 3 for Medical Records, click on the Upload Medical Records button and follow the instructions to upload medical records reflecting the Qualifying Diagnosis. For a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment or Level 2 Neurocognitive Impairment, the diagnosis must meet the criteria set forth in Settlement Agreement Exhibit 1 (subsections 1(a)(i)-(iv) or 2(a)(i)-(iv)) for diagnoses through the BAP, or must otherwise be based on evaluation and evidence generally consistent with the diagnostic criteria set forth in those subsections for diagnoses made outside of the BAP. The medical records must include evidence that these diagnostic criteria were followed. If the medical records you provide modify the date of the Qualifying Diagnosis, you must submit a new Diagnosing Physician Certification Form and update the Claim Form to reflect that new date. | No |

## III. HOW TO RESPOND TO THIS NOTICE

For any items shown in Section II with a Yes in the "Do I Have to Respond?" column, you need to send us the information or documents to cure the issue on or before the Response Deadline stated at the top of the Notice. If you have any items in Section II with a No, you may send us the requested information or documents, or elect instead to have us review the Claim Package without those materials. If you have both Yes and No items in Section II, you must respond to all Yes items before we can send you a determination on your claim, but you have the option whether to respond to any No items.

If you are submitting any new documents or information, you may do so using your secure online portal by clicking the Respond to Notice of Preliminary Review button, which will take you to the Claim Package submission screens that you used to submit the claim to us. After you have finished supplementing records to your Claim Package or uploading new documents, click the Submit Claim Package for Review button at the bottom of the screen. We will review the Claim Package again using the new information or documents.

If all items in Section II have a No in the "Do I Have to Respond?" column and you want us to review your Claim Package as submitted without the additional materials, you can click the Review My Claim as Submitted button on your secure online portal and we will do that. The Review My Claim as Submitted button will not be available to you if there are any Yes items in Section II, which means you must supplement your Claim Package as described above to cure those items before we will continue reviewing your Claim Package.

You have 120 days to respond to this Notice and/or provide the requested information or documents. We will wait the full 120 days to re-review your Claim Package unless you (1) click the Submit Claim Package for Review button to confirm that you have finished responding, or (2) click the Review My Claim as Submitted button if it is available. If you do not take action on or before the Response Deadline, we will assess your Claim Package based on the materials you already provided.

## IV. HOW TO CONTACT US WITH QUESTIONS OR FOR HELP

If you are represented by a lawyer, consult with your lawyer if you have questions or need assistance. If you are unrepresented and have any questions about this Notice or need help, contact us at 1-855-887-3485 or send an email to ClaimsAdministrator@NFLConcussionSettlement.com. If you are a lawyer, call or email your designated Firm Contact for assistance. For more information about the Settlement Program visit the official website at www.NFLConcussionSettlement.com to read the Frequently Asked Questions or download a copy of the complete Settlement Agreement.