# EXHIBIT - 1

**EXHIBIT 1 to Reply: Additional Examples Contained in the Joint Opposition Where the Claims Administrator has Read Additional Language into the Settlement Agreement that Materially Alter the Rights Provided To Class Member Rights Without Notice to the Class.**

1. **The Settlement Agreement provides that a Deficiency Notice is sent when a Claims Package is rejected and failure to cure the Deficiency will result in denial of the Claim.**

The Joint Opposition provides as follows regarding the Claims Administrator's issuance of Notice of Claims Package Deficiency(ies)[1] ("Deficiency Notice") [*see* July 18, 2017 Notice of Claims Package Deficiency, ECF No. 8267-1]:

> To the extent information and/or documents contemplated in the BAP diagnostic criteria are not included in the claim package for these qualifying diagnosis, the claims administrator solicits them. If that information and/or documentation exists and supports the qualifying diagnosis at the time of such diagnosis, it's inclusion in the claim package results in the presentation of a more complete picture of the retired football players medical condition and, thereby, helps the merits of the claims. **To the extent that such material does not exist, the claims administrator nonetheless permits the claimant to direct that the merits review of the claim proceed to determine whether the diagnosis submitted is "based on principles generally consistent" with the BAP criteria**. **[Emphasis added].**

*See* ECF No. 8432, 5.

However, the Settlement Agreement is clear that a Deficiency Notice is sent when a Claims Package is **rejected** to provide Claimants notice of a Deficiency. Section 2.1 (bb) of the Settlement Agreement provides the definition of Deficiency as follows:

> (bb) "Deficiency" means any failure of a Settlement Class Member to provide required information or documentation to the Claims Administrator as set forth in section 8.5.

*See* ECF No. 6481-1, 12.

Section 2.1 (iii) of the Settlement Agreement provides the definition for Notice of Deficiency as follows:

---

[1] The Joint Opposition claims that "XI Law attaches an example of a notice it received in response to a submitted Claims Package … titled 'Notice of Deficiency'…" which is inaccurate. The Notice referred to in the Joint Opposition is titled "Notice of **Claims Package** Deficiency" not "Notice of Deficiency." *See* ECF No. 8267-1.

> (iii) "Notice of Deficiency" means that document that the Claims Administrator sends to any Settlement Class Member whose Claim Package or Derivative Claim Package contains a deficiency, as set forth in section 8.5.

*See* ECF No. 6481-1, 15.

Section 8.5 of the Settlement Agreement provides as follows:

> Section 8.5 <u>Deficiencies and Cure</u>. For rejected Claim Packages or Derivative Claim Packages, the Claims Administrator will send a Notice of Deficiency to the Settlement Class Member, which notice will contain a brief explanation of the Deficiency(ies) giving rise to the rejection of the Claim Package or Derivative Claim Package, and will, where necessary, request additional information and/or documentation . . . **Any Claim Package or Derivative Claim Package that continues to suffer from a Deficiency identified on the Notice of Deficiency following the submission of documentation intended to cure the Deficiency will be denied by the Claims administrator. [Emphasis added].**

*See* ECF No. 6481-1, 46.

Section III of the Deficiency Notice titled "How to Respond to this Notice" provides in relevant part:

> By the Cure Deadline stated above, send us the missing information identified in Section II. If you do not respond in full on or before the Cure Deadline, we will have to assess your claim based on the materials we have, which could lead to a lower Monetary Award or denial of your claim in its entirety.

*See* ECF No. 8267-1

The Claims Administrator's position: (a) materially alters the plain language of the Settlement Agreement; (b) is not communicated anywhere other than the Joint Opposition; (c) is wholly unsupported regarding the purpose and issuance of a Notice of Deficiency; (d) leads Claimants to error because a failure to cure a deficiency will result in a denial of the Claim; and (e) illustrates improper administration of the Settlement Agreement.

2.      **The Notices of Preliminary Review Add Language and Requirements that <u>Do Not Exist</u> in the Settlement and Materially Alter Rights of Movants.**

The Declaration of Orran L. Brown, Sr. provides that the Parties agreed to alter the Deficiency Notices to, among other things, "change the title to 'Notice of Preliminary Review' rather than 'Notice of Claim Package Deficiency ….'" *See* ECF No. 8432-1, 10. Brown further testifies in his Declaration that "[t]he Parties and the Special Master approved these updates to the deficiency notice on July 18, 2017, and we began sending these notices on July 20, 2017, on all claims based on Qualifying Diagnoses of Level 1.5 and 2 made outside of the BAP." *See* ECF No. 8432-1, 11.

On July 18, 2017, the same day that the "Parties and the Special Master" approved the renamed deficiency notices, the Claims Administrator issued Deficiency Notices on twenty four (24) Claims submitted by XILaw instead of holding off and sending Notices of Preliminary Review. *See* July 18, 2017 Notice of Claims Package Deficiency, ECF No. 8267-1.

On August 24, 2017, more than a month after approval, the Claims Administrator issued a Notice of Preliminary Review ("NPR") on twenty two (22) Claims submitted by XILaw. The first "Issue" identified on each of the NPRs issued on X1Law Claims provides: "You did not submit any medical records from the physician who signed the Diagnosing Physician Certification Form and examined the Retired NFL Football Player." A redacted copy of an NPR is attached as **Exhibit A**.

Further, the corresponding "Do I Have to Respond" box on each NPR is marked "Yes." *See* NPR, Exhibit A. The Joint Opposition claims that the Deficiency Notices, which were renamed NPRs, are simply helpful reminder to Claimants as part of the Claims Administrator's incompleteness process.

> According to Brown, the NPRs allow a Claimant to instruct the Claims Administrator to:
>
> [S]end the claim to the AAP for analysis without the player or firm adding any of the items to the claim file, **unless the missing item was so fundamental that we must deny the claim without it**, such as the HIPAA Form, the Settlement Class Member's signature on the Claim Form, **or having a Diagnosing Physician Certification Form signed by the physician who personally examined the player and provided the diagnosis**. [Emphasis added].

*See* ECF No. 8432-1, 10.

According to Brown, failure to cure by submitting **"a Diagnosing Physician Certification Form signed by the physician who personally examined the player and provided the diagnosis"** will result in denial of the Claim by the Claims Administrator Brown Greer. More specifically, Brown testifies that:

> One of the many claims review procedures **approved by the Parties** for us to follow **requires that the physician who signs the Diagnosing Physician Certification Form must have personally examined** the Retired NFL Football Player and observed his cognitive and physical performance first hand to be able to make a Qualifying Diagnosis under the Settlement Agreement. [Emphasis added].

*See* ECF No. 8432-1, 5.

However, this alleged "cure" is a material change read into, but not provided under, the Settlement Agreement, which Brown testifies was approved by Class Counsel and the NFL Parties (not the Special Masters), and implemented through the NPRs (a notice procedure not provided for in the Settlement Agreement).

First, this latest addition by the Claims Administrator is not merely a procedure to assist in the administration of the Settlement Agreement. It is a substantive and material alteration of the plain language of the Settlement Agreement that adds a requirement, not a procedure, which did not exist before Co-Lead Class Counsel and the NFL Parties provided the Claims

Administrator[2] authority to add the requirement. Specifically, Brown's suggestion that X1Law must cure by either having Dr. M. Albin Morariu, Sr. or Dr. Mircea Morariu submit the Diagnosing Physician Forms, OR requiring that Dr. Suite examine the players in person and submit new forms bearing the date of the exams, illustrates two points: (1) the additional requirement places form before substance by eliminating MAF Dr. Suite's sworn approval of the Claims, or forcing Movants into a post-Effective Date diagnosis, either way materially altering their rights; and (2) the NFL Parties' obvious influence over the Claims Administrator.

Co-Lead Class Counsel represented the following to this Court:

> **The Monetary and Derivative Awards programs will not be run under the NFL's auspices** but, rather, by an independent Court-appointed Administrator (ECF No. 6534, at ¶ 13 [confirming appointment of BrownGreer PLC as Claims Administrator]), and Class Counsel's role in overseeing the Settlement's implementation and ensuring fair treatment of Class Members need not be discussed again here. The Court is well aware of it. Any suggestion that the appeal rate will be the same as for the NFL's disability program is pure conjecture. [Emphasis Added].

*See* CLC's Omnibus Reply Memorandum, ECF No. 7464, p.55.

Moreover, this material change flies in the face of:

(a) the BAP which states that a neuropsychologist can administer their battery of test and give a report to the neurologist evaluating the football player's abilities; and

(b) practical medicine where doctors will have assistance from nurse practitioners, nurses or someone else who conduct tests & make observations and report back to the doctor.

---

[2] Smith and Brown both testified that the Parties considered and approved changes. *See* ¶¶ 8, 11(d) Brown Dec., ECF No. 8432-1; and ¶¶ 10, 12 Smith Dec., ECF No. 8432-2.

> 3. **The Notices of Preliminary Review are not Helpful Notices to Allow Claimants to Supplement their Claims Packages; to the Contrary, the Notices of Preliminary Review Provide the Claims Administrator Authority to Deny Claims Based Upon Additional Requirements that Do Not Exist in the Settlement and Materially Alter Rights of Movants.**

The Joint Opposition argues that the NPRs "primarily provide claimants with the opportunity to supplement and enhance their submissions." *See* ECF No. 8432, 2. The Joint Opposition further cites Brown's Declaration in support of its characterization of the Deficiency Notices allegedly issued by the Claims Administrator "*prior* to review of the merits of a claim:"

> The Claims Administrator issued such notices in an effort to ensure that each Claims Package is as fulsome as possible before the merits of the claim is reviewed; but, except for certain fundamental and limited exclusions, such a notice is not a forecast of the ultimate determination on the merits of a claim.

*See* ECF No. 8432, 4-5.

Couching Deficiency Notices as preliminary helpful reminders that were part of the Claims Administrator's discretionary incompleteness process is not accurate. Rather, after being questioned for its failure to properly administer Deficiency Notices under the Settlement Agreement, the Claims Administrator created a completely new notice (Notice of Preliminary Review) that does not exist under the Settlement Agreement and added substantive terms that materially alter Claimants' rights.

> 4. **The Settlement Agreement provides that a diagnosis while living of Level 2 Neurocognitive Impairment, *i.e.,* moderate dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 2(a)(i)-(iv) (BAP STANDARDS). The BAP doctors are being given different requirements for the timing of receipt of the evidence.**

Claimants who present Pre-Effective Date Claims outside of the BAP must meet the following for a Qualifying Diagnosis of Level 2.0 Neurocognitive Impairment:

> For living Retired NFL Football Players diagnosed outside of the BAP, a diagnosis while living of Level 2 Neurocognitive Impairment, *i.e.,* moderate dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 2(a)(i)-(iv) above, unless the diagnosing

> physician can certify in the Diagnosing Physician Certification that certain testing in 2(a)(i)-(iv) is medically unnecessary because the Retired NFL Football Player's dementia is so severe, made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

*See* MDL ECF No. 6481-1, p. 108-9.

The Joint Opposition provides as follows regarding necessary evidence for the diagnosis on the date of encounter:

> The diagnosing physician may have all necessary evidence for the diagnosis on the date of encounter, and he or she may acquire additional, supplemental evidence after the date of encounter via documents, interviews and statements that corroborate the physician's impressions. ***Evidence of functional impairment, however, must be in the physician's hands in some form at the time of diagnosis.*** [Emphasis added].

*See* MDL ECF No. 8432, p. 8

The NFL CONCUSSION SETTLEMENT PROGRAM: QUALIFIED MAF PHYSICIAN MANUAL's provides as follows regarding documentary evidence for making the Qualifying Diagnosis:

> Documentation (e.g., medical records, employment records) is necessary to establish any functional impairment (CDR 1.0 or greater) consistent with, or greater than BAP Level 1.5 Neurocognitive Impairment. The sufficiency of the documentary evidence shall be determined by the provider making the Qualifying Diagnosis. If such documentary evidence does not exist or is not available, evidence of functional impairment consistent with, or greater than BAP Level 1.5 Neurocognitive Impairment may be established for the player on the basis of (a) evidence of cognitive decline from a previous level of performance, in accordance with the testing protocol set forth in this Manual, in the executive function cognitive domain or the learning and memory cognitive domain, and at least one other cognitive domain; and (b) a third-party sworn affidavit from a person familiar with the Retired NFL Football Player's condition (other than the player or his family members) corroborating the Retired NFL Football Player's functional impairment. The sufficiency of any corroborating affidavit shall be determined by the provider making the Qualifying Diagnosis. <u>**Supporting materials should be provided at or within two weeks of the completion of the player's baseline assessment examination**</u>. [Emphasis added].

*See* NFL MAF Manual as of 4/20/17, ¶2, p. 24.

The QUALIFIED MAF PHYSICIAN MANUAL: (a) contradicts the Joint Opposition regarding necessary evidence for the diagnosis and the timing of the receipt thereof; (b) is not communicated anywhere other than in QUALIFIED MAF PHYSICIAN MANUAL; (c) illustrates improper administration of the Settlement Agreement; (d) draws a line in the sand as to the meaning of generally consistent; and (e) provides additional support that the Claims Administrator is hiding the ball.