# EXHIBIT H-1



# NFL CONCUSSION SETTLEMENT STATUS

## CASE HISTORY

The Court granted preliminary approval of the NFL Retired Player Concussion Litigation Settlement on July 7, 2014 and then heard arguments on the fairness of the Settlement terms on November 19, 2014. On April 4, 2015 the Settlement received final court approval and it was subsequently appealed by several retired players who argued that the terms of the Settlement were not fair. The matter currently remains under appeal with the Third Circuit Court of Appeals and is awaiting a decision.

If the Third Circuit Court of Appeals affirms the settlement as fair and denies the current appeal, there will be a 30-day period for one last appeal to be taken to the United States Supreme Court. The Supreme Court has the right to hear the appeal or to reject the request for an appeal. If the Supreme Court rejects the appeal request the registration and claim process for retired players would then begin.

Once the Settlement benefits become available the NFL will fully fund baseline examinations for all players and monetary awards those players that are injured. The NFL's obligations under the Monetary Award Fund are not capped at any specified amount. This means that once the compensation program begins, funds will be available to any retired player who develops a qualifying neurocognitive condition for the next 65 years. The benefits and eligibility criteria for medical and financial benefits are summarized below.

## MANDATORY REGISTRATION FOR RETIRED PLAYERS

### Do retired players need to register in order to receive benefits?

All retired players will be required to register within 180 days of final approval in order for the player to submit a claim. What that means is that the registration and claim process will start only after all appeals from the final Order and Judgment have been exhausted and the Settlement truly becomes final.

Notice of when the Registration process will begin will be available online, on the official litigation website, (www.nfl-concussionsettlement.com), as well as through the attorneys involved in the case. The Registration process does not become available to retired players until after all appeals have been exhausted and the Settlement truly becomes final. A player cannot register until that time.

There is no guaranteed time frame available for when the Registration and Claim process will begin, however it is anticipated that if the appeals fail, Registration and benefits will become available by the fall.

## CLAIM ELIGIBILITY

### Which Players are not included in the Settlement Class?

The Settlement Class does not include current NFL players. The Settlement Class also does not include any individuals who tried out for but did not make it onto the preseason, regular season or postseason active roster, practice or developmental roster, or taxi squad of the respective member club.

### Who is eligible to receive financial benefits?

Monetary awards are available for the diagnosis of ALS, Parkinson's Disease, Alzheimer's Disease, moderate to severe Dementia (known as Level 2 Neurocognitive Impairment); early stage Dementia (known as Level 1.5 Neurocognitive Impairment and Death with CTE if the player's death occurred prior to July 7, 2014.

A player who develops any condition listed above within the next 65 years may submit a financial claim once they are formally diagnosed. Qualifying Diagnoses must be made by a board certified neurologist, neurosurgeon, or neuro specialist who has been approved by the independent Settlement *Claims Administrator*. These are not doctors chosen, employed, or associated with the NFL. The national network of approved doctors will be extensive and the list will be made available to retired players once the registration process begins.

### Must a retired player be vested under the NFL Retirement Plan to receive Settlement benefits?

No. A retired player can be a Settlement Class Member regardless of whether he is vested due to credited seasons or total and permanent disability under the Bert Bell/Pete Rozelle NFL Player Retirement Plan.

### If a retired player's condition worsens over time, may a player apply for a supplemental payment?

If a retired player receives a monetary award based on a qualifying diagnosis, and later is diagnosed with a different qualifying diagnosis that entitles him to a larger monetary award than his previous award, he will become eligible to receive an additional financial award.

### If a player is eligible for a monetary award, how will the amount of that award be determined?

The exact amount of a player's monetary award will depend on several factors – such as age of diagnosis, number of eligible seasons played, whether a player has suffered a prior stroke or suffered from a traumatic brain injury that was unrelated to football and whether a player has received his diagnosis from a approved medical provider. Retired players do not need to prove that a qualifying diagnosis was caused by playing professional football in order to receive compensation. The longer a player played in the League, the greater the financial benefit.

Eligible Seasons is used to refer to the number of seasons played or practiced by a retired NFL player. The amount of a monetary award will vary from player to player depending on that player's number of seasons played or practiced as well as what his age was at the time he was diagnosed with a qualifying condition. A retired player earns an Eligible Season for the following:

Each season where he was on an NFL, World League, NFL Europe, or AFL member  club's active list for either three or more regular season or postseason games; or

Where he was on an active list for one or more regular or postseason games and then spent two regular or postseason games on a team's injured reserve list or became inactive due to a concussion or head injury.

Where he was on an active list for one or more regular or postseason games and then spent two regular or postseason games on a team's injured reserve list or became inactive due to a concussion or head injury.

A retired player also earns one-half of an eligible season for each season where he was on an NFL or AFL member club's active list, practice, developmental, or taxi squad for at least eight games, but did not otherwise earn an eligible season.

| Age at diagnosis | ALS | Death w/CTE | Parkinson's | Alzheimer's | L.2 dementia | L.1 Dementia |
|---|---|---|---|---|---|---|
| Under 45 | $5,000,000 | $4,000,000 | $3,500,000 | $3,500,000 | $3,000,000 | $1,500,000 |
| 45-49 | $4,500,000 | $3,200,000 | $2,470,000 | $2,300,000 | $1,900,000 | $950,000 |
| 50-54 | $4,000,000 | $2,300,000 | $1,900,000 | $1,600,000 | $1,200,000 | $600,000 |
| 55-59 | $3,500,000 | $1,400,000 | $1,300,000 | $1,150,000 | $950,000 | $475,000 |
| 60-64 | $3,000,000 | $1,200,000 | $1,000,000 | $950,000 | $580,000 | $290,000 |
| 65-69 | $2,500,000 | $980,000 | $760,000 | $620,000 | $380,000 | $190,000 |
| 70-74 | $1,750,000 | $600,000 | $475,000 | $380,000 | $210,000 | $105,000 |
| 75-79 | $1,000,000 | $160,000 | $145,000 | $130,000 | $80,000 | $40,000 |
| 80+ | $300,000 | $50,000 | $50,000 | $50,000 | $50,000 | $25,000 |

Death with CTE claims must fall within the time period January 1, 2016 and July 7, 2014. Unless the court determines that the claim would be allowed under applicable state law.

### Are there any timelines for submitting a Claim?

Retired NFL Players and Representative Claimants for retired players who have received a formal diagnosis by the date of Final Settlement Approval (after all Settlement appeals have been exhausted) must submit their claim for monetary awards within two years.

Retired NFL Players and Representative Claimants for retired players who are diagnosed after the date of Final Settlement Approval have two years from the date of diagnosis to file their

claim. This deadline may be extended up to an additional two years upon a showing of substantial hardship.

### Can a player's involvement in the concussion litigation settlement jeopardize or lower their current or future NFL disability payments?

The NFL has agreed to not have a concussion claim reduce or affect a player's other benefits (i.e. Disability Payments, Neuro-Cognitive Benefits, and/or 88 Plan Benefits. In simple terms, there is no affect on any NFL benefit policies by being involved in the Concussion Settlement. There are NO discounts or offsets. This is a really beneficial clause for the players because they can still collect all forms of disability, including 88 Plan Benefits, and neuro-cognitive benefits with no financial penalty to the player on any benefit. Whether it is total impairment; line of duty; or neurological/cognitive benefits, now or in the future, any concussion claim is separate and apart.

### Can a decision or denial of benefits be appealed?

Yes. If you believe that the Claim Administrator unfairly denied your injury award or that the award you received was incorrect, then you or your attorney can appeal and reverse the decision by proving clear and convincing evidence.

### How does a claimant file a claim on behalf of a deceased player?

The proof a Representative Claimant must submit to show that a deceased player received a Qualifying Diagnosis depends on the date of the player's death and the type of injury.

If the player dies before the effective date of the Settlement Agreement, the Representative Claimant may establish Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, or ALS by submitting medical records showing a diagnosis of such condition made before the player died. The diagnosis must have been made by properly credentialed physicians, as described in Section 6.3(e) of the Settlement Agreement.

The Representative Claimant of a player who died before the Final Approval Date may establish Death with CTE by submitting medical records showing a diagnosis of Death with CTE made by a board-certified neuro-pathologist after the player's death and before the Final Approval Date. If the player died between July 7, 2014 and the Final Approval Date, his Representative Claimant has until 270 days after the player's death to obtain the post-mortem diagnosis. Players who died on or after the Final Approval Date (which has not yet occurred) are not eligible for benefits for Death with CTE.

All Claimants, including Representative Claimants of deceased players, also must submit a Diagnosing Physician Certification signed by the physician who made the qualifying diagnosis, except that representative claimants of players who die before the effective date do not have to submit a diagnosing physician certification if the physician who made the qualifying diagnosis also died before the Effective Date, or was deemed legally incapacitated or incompetent prior to that date, but they do have to

submit evidence of the physician's death, incapacity or incompetence, and of his or her qualifications.

A Representative Claimant of a player who died before January 1, 2006 also must establish that the claim is not time-barred.

## THE MEDICAL COMPONENT OF THE SETTLEMENT

### What is the Baseline Assessment Program?

The Baseline Assessment Program (BAP) allows every retired player to be seen by an independent licensed neuropsychologist and /or board certified neurologist and to receive a base level cognitive assessment in order to determine if the player has any symptoms of cognitive decline. If there is no current diagnosis of a qualifying condition, the doctor will provide a report that may be used to establish a diagnosis in the future. The Baseline Assessment Program is the core mechanism for which a player's claim will be handled. If a player decides to get evaluated, treated, or diagnosed and does not utilize the BAP mechanism, that player could be financially penalized if he recovers any monetary award.



**THE MEDICAL COMPONENT OF THE SETTLEMENT**
*The baseline assessment program (BAP)*

All living retired players who have earned at least one-half of an eligible season may participate in the baseline assessment program.

The BAP is a nationwide network of broad certified providers who are in no way connected to the NFL.
The examinations will include both a neuropsychological and neurological exam

Once the Settlement has become final (all appeals have been exhausted)

Players 43 and older will have 2 years to get a baseline assessment.

Players under the age of 43 will have 10 years to take the examination or upon reaching the age of 45. (whichever comes earlier)

### Who is eligible to receive medical testing and/or medical treatment under the Settlement?

The settlement covers the approximately 5,000 players who initially filed suit, as well as every other member of the approx. 20,000 retired player community throughout the world. Whether a player played a practice season or 10 years, the player may Register to receive a comprehensive medical exam and then receive follow up treatment if applicable.

### What can a player expect from the Baseline Assessment Program?

Retired players will be eligible to receive a baseline neuropsychological and neurological examination, which will use a variety of tests to determine whether they are currently suffering from any type of neurocognitive impairment.

### Can a player receive additional medical testing after their initial baseline examination?

Players diagnosed with Level 1 Neurocognitive Impairment (no formal diagnosis of dementia, however they exhibit symptoms of cognitive impairment) will receive supplemental medical benefits including further testing and treatment. The initial com-

prehensive evaluation will at a minimum provide a baseline for future testing and treatment.

### What is the time frame in which a player must register to receive a baseline evaluation?

Retired players will have from two to ten years, depending on their age as of the settlement's effective date (when all appeals have been exhausted) to have a baseline examination conducted.

Retired players 43 and older must receive a baseline examination within two years of the start of the program.

Retired players under 43 must be examined within 10 years of commencement of the program or before they turn 45, whichever is earlier.

### Who establishes the network of board certified doctors that will be evaluating, treating and diagnosing retired players?

Baseline examinations will be conducted through a nationwide network of qualified and independent medical providers *(not NFL-appointed doctors)*. The medical component of the Settlement is headed up by an independent medical Claim administrator who is appointed by the court. The NFL has NO control over the testing, treatment, or diagnosis of any player.

## INJURY DEFINITIONS

### Level 1 Neurocognitive Impairment

(a) For Retired NFL Football Players diagnosed through the BAP, a diagnosis of Level 1 Neurocognitive Impairment must meet the criteria set forth in subsections (i)-(iv) below:

(i) Concern of the Retired NFL Football Player, a knowledge-able informant, or the Qualified BAP Provider that there has been a decline in cognitive function.

(ii) Evidence of moderate cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in two or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual- spatial), provided one of the cognitive domains is (a) executive function, (b) learning and memory, or (c) complex attention.

(iii) The Retired NFL Football Player exhibits functional impairment generally consistent with the criteria set forth in the National Alzheimer's Coordinating Center's Clinical Dementia Rating scale Category 0.5 (Questionable) in the areas of Community Affairs, Home & Hobbies, and Personal Care.

(iv) The cognitive deficits do not occur exclusively in the context of a delirium, acute substance abuse, or as a result of medication side effects.

*Level 1 Neurocognitive Impairment, for the purposes of this Settlement Agreement, may only be diagnosed by Qualified BAP Providers during a BAP baseline assessment examination, with agreement on the diagnosis by the Qualified BAP Providers.*

### Level 1.5 Neurocognitive Impairment

(a) For Retired NFL Football Players diagnosed through the BAP, a diagnosis of Level 1.5 Neurocognitive Impairment must meet the criteria set forth in subsections (i)-(iv) below:

(i) Concern of the Retired NFL Football Player, a knowledge-able informant, or the Qualified BAP Provider that there has been a severe decline in cognitive function.

(ii) Evidence of a moderate to severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement in two or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual-spatial), provided one of the cognitive domains is (a) executive function, (b) learning and memory, or (c) complex attention.

(iii) The Retired NFL Football Player exhibits functional impairment generally consistent with the criteria set forth in the National Alzheimer's Coordinating Center's Clinical Dementia Rating (CDR) scale Category 1.0 (Mild) in the areas of Community Affairs, Home & Hobbies, and Personal Care. Such functional impairment shall be corroborated by documentary evidence (e.g., medical records, employment records), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis. In the event that no documentary evidence of functional impairment exists or is available, then

(a) there must be evidence of moderate to severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in the executive function cognitive domain or the learning and memory cognitive domain, and at least one other cognitive domain; and

(b) the Retired NFL Football Player's functional impairment, as described above, must be corroborated by a third-party sworn affidavit from a person familiar with the Retired NFL Football Player's condition (other than the player or his family members), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis.

(iv) The cognitive deficits do not occur exclusively in the context of a delirium, acute substance abuse, or as a result of medication side effects.

(a) For living Retired NFL Football Players diagnosed outside of the BAP, a diagnosis while living of Level 1.5 Neurocognitive Impairment, i.e., early dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 1(a)(i)-(iv) above, made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

(b) For Retired NFL Football Players deceased prior to the Effective Date, a diagnosis of Level 1.5 Neurocognitive Impairment, i.e., early dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 1(a)(i)-(iv) above, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology or neurocognitive disorders, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

## Level 2 Neurocognitive Impairment

(a) For Retired NFL Football Players diagnosed through the BAP, a diagnosis of Level 2 Neurocognitive Impairment must meet the criteria set forth in subsections (i)-(iv) below:

(i) Concern of the Retired NFL Football Player, a knowledgeable informant, or the Qualified BAP Provider that there has been a severe decline in cognitive function.

(ii) Evidence of a severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in two or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual- spatial), provided one of the cognitive domains is (a) executive function, (b) learning and memory, or (c) complex attention.

(iii) The Retired NFL Football Player exhibits functional impairment generally consistent with the criteria set forth in the National Alzheimer's Coordinating Center's Clinical Dementia Rating (CDR) scale Category 2.0 (Moderate) in the areas of Community Affairs, Home & Hobbies, and Personal Care. Such functional impairment shall be corroborated by documentary evidence (e.g., medical records, employment records), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis. In the event that no documentary evidence of functional impairment exists or is available, then

(a) there must be evidence of severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in the executive function cognitive domain or the learning and memory cognitive domain, and at least one other cognitive domain; and

(b) the Retired NFL Football Player's functional impairment, as described above, must be corroborated by a third- party sworn affidavit from a person familiar with the Retired NFL Football Player's condition (other than the player or his family members), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis.

(iv) The cognitive deficits do not occur exclusively in the context of a delirium, acute substance abuse, or as a result of medication side effects.

(a) For living Retired NFL Football Players diagnosed outside of the BAP, a diagnosis while living of Level 2 Neurocognitive Impairment, i.e., moderate dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 2(a)(i)-(iv) above, unless the diagnosing physician can certify in the Diagnosing Physician Certification that certain testing in 2(a)(i)-(iv) is medically unnecessary because the Retired NFL Football Player's dementia is so severe, made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

(b) For Retired NFL Football Players deceased prior to the Effective Date, a diagnosis of Level 2 Neurocognitive Impairment, i.e., moderate dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 2(a)(i)-(iv) above, unless the diagnosing physician can certify in the Diagnosing Physician Certification that certain testing in 2(a)(i)-(iv) was medically unnecessary because the Retired NFL Football Player's dementia was so severe, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology or neurocognitive disorders, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

## Alzheimer's Disease

(a) For living Retired NFL Football Players, a diagnosis while living of the specific disease of Alzheimer's Disease as defined by the World Health Organization's International Classification of Diseases, 9th Edition (ICD-9), the World Health Organization's International Classification of Diseases, 10th Edition (ICD-10), or a diagnosis of Major Neurocognitive Disorder due to probable Alzheimer's Disease as defined in the Diagnostic and Statistical Manual of Mental Disorders (DSM-5), made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

(b) For Retired NFL Football Players deceased prior to the Effective Date, a diagnosis of Major Neurocognitive Disorder due to probable Alzheimer's Disease consistent with the definition in Diagnostic and Statistical Manual of Mental Disorders (DSM-5), or a diagnosis of Alzheimer's Disease, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology

to make such a diagnosis, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

### Parkinson's Disease

(a) For living Retired NFL Football Players, a diagnosis while living of the specific disease of Parkinson's Disease as defined by the World Health Organization's International Classification of Diseases, 9th Edition (ICD-9), the World Health Organization's International Classification of Diseases,

(b) For Retired NFL Football Player10th Edition (ICD-10), or a diagnosis of Major Neurocognitive Disorder probably due to Parkinson's Disease as defined in the Diagnostic and Statistical Manual of Mental Disorders (DSM-5), made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

(c) For Retired NFL Football Players deceased prior to the Effective Date, a diagnosis of Parkinson's Disease, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology to make such a diagnosis, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

### Amyotrophic Lateral Sclerosis (ALS)

(a) For living Retired NFL Football Players, a diagnosis while living of the specific disease of Amyotrophic Lateral Sclerosis, also known as Lou Gehrig's Disease ("ALS"), as defined by the World Health Organization's International Classification of Diseases, 9th Edition (ICD-9) or the World Health Organization's International Classification of Diseases, 10th Edition (ICD-10), made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

(b) A retired player who was deceased prior to the Effective Date of the final Settlement Agreement ( the fact that no further appeals are available) , a diagnosis of ALS, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology to make such a diagnosis, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement will receive financial compensation.

**For additional information, questions, or Claim representation please contact Mitnick Law Office by telephone 856-427-9000 or by email at nfl@mitnicklegal.com**



All rights reserved   Mitnick Law Office, LLC    2016



# PROPOSED NFL CONCUSSION SETTLEMENT

## Proposed Settlement Highlights

- NFL will pay $765 million dollars plus legal costs for the class settlement.
- Settlement includes ALL retired players (approximately 19,000).
- Medical Component includes $75 million allocated to medical testing for all retired players, as well as treatment for those that experiencing symptoms.
- Medical testing of retired players will be available though an independent network of board certified neurologists who are not associated with the NFL.
- The medical component of the settlement is known as "The Baseline Assessment Program" (BAP).
- Financial Compensation Component includes $675 million allocated to immediately compensate injured players who currently have a qualifying diagnosis and financially compensates those retired players who become sick with any qualifying condition in the future. Every injured player's situation will be evaluated independently in order to determine what amount of compensation he will receive.
- Qualifying Diagnosis' include ALS (max recovery 5 million), Alzheimer's (max recovery 3.5 million), Parkinson's (max recovery 3.5 million), Moderate type dementia (max recovery 1.5 million), and severe type dementia (max recovery 3 million).
- Medical research component includes $10 million that will be used exclusively for continued medical research to improve the health and safety for current and future players.
- The NFL Concussion Settlement Agreement is awaiting preliminary approval by the Federal Court. That approval is expected in the very near future. At that time the FULL Agreement and all of its' terms will become available to the players and the public.

## What Does the Settlement Accomplish?

- Compensates those former players that are truly injured.
- Provides medical testing and treatment for those players who are experiencing symptoms.
- Protects all former players who not currently experiencing any symptoms.

## How Will the NFL Pay?

- Upon final approval and no appeals, the NFL will immediately pay 50% of the $760M over the first three years ($380M)
- Balance over next 17 years ($380M)

## Hidden Benefit to Players

No retired player will forfeit or become ineligible for any other benefits provided by the current CBA (i.e., Disability, 88 Plan Benefits, Neurocognitive Benefits)

## All Retired NFL Players Fall into One of Three Categories



### If I am retired NFL player what does this proposed "Class" settlement mean to me?

An easy way to look at it is that you fall into one of three categories: "Asymptomatic", "Symptomatic", or "Diagnosed". If you are "Asymptomatic" that means that you have no current symptoms that indicate head trauma, such as short term memory loss, headaches, tingling in your hands or feet, or bouts depression and/or anxiety. If you are "Symptomatic" then you are experiencing one or more of the above symptoms. The last category is "Diagnosed". If you are diagnosed with ALS, Alzheimer's, Parkinson's, or Cognitive Decline, such as moderate to severe dementia, you are considered Diagnosed.

Now understanding where you fit in, if you are "Asymptomatic" and you become "Symptomatic", the way the proposed settlement is structured, you will be entitled to medical testing and medical benefits to treat your symptoms. If you then, at some point in the future become diagnosed with a qualifying condition, you will be entitled to financial compensation.

If you are currently "Symptomatic" you will be able to register to be medically tested and then treated or financially compensated, if applicable. This will be a process.

The exact monetary compensation for any one player who is considered "Diagnosed" depends on several factors, including time in the league and age at the time of diagnosis. This is not the sort of "Class Action" where you fill out a form and then receive financial compensation or a health benefits card in the mail. It will be a process (assuming that the agreement receives final approval by Judge Brody). As part of the proposed settlement, there will be a Center set up to assist retired NFL players and their attorneys with the process of registering for medical testing, the process for receiving medical benefits and the process of filing a claim for financial compensation.

### What happens now?

The Court must approve the terms of the Agreement if the Court determines that it is fair to all of the parties involved. If the court preliminarily approves the Agreement, than every former NFL player (whether included in the current litigation or not) will receive formal notice in the mail advising them of the Agreement's actual terms.

## What does the "Class" mean?

The proposed settlement is defined by a "Class." This means it includes the approximately 4,500 players who have already filed suit, as well as the approximately 14,000 other living retired NFL players. The proposed "Class" includes all living retired players; from a player that played solely on a practice squad to a long time vested player. If you are diagnosed with any neurological condition set forth in the proposed settlement, you will be entitled to a monetary award. The exact amount of any one player's recovery (if eligible) will depend on their age and how long they played in the league. For those retired players who have symptoms of cognitive decline but are undiagnosed, the player will be able to be medically tested and if diagnosed with a qualifying diagnosis, they will receive financial compensation.

## I am currently receiving disability or some other benefit from the NFL. Could my involvement in this "Class" settlement jeopardize or lower my NFL disability payments?

The answer is absolutely NO. The NFL has agreed to not have a concussion claim reduce or affect a player's other benefits (i.e., Disability Payments, Neuro-Cognitive Benefits, and/or 88 Plan Benefits. In simple terms, there is no effect on any NFL benefit policies if a former player has already filed a claim or files a claim in the future. This is a really beneficial clause for the players because they can still collect all forms of disability, including 88 Plan Benefits, and neuro-cognitive benefits with no financial penalty to the player on any benefit. Whether it is total impairment; line of duty; or neurological/cognitive benefits, now or in the future, any concussion claim is separate and apart.

## What is a Baseline Medical Examination?

The Baseline Assessment Program (BAP) allows every retired player to be seen by an independent licensed neuropsychologist, and /or board certified neurologist and to receive a base level cognitive assessment in order to determine if the player has any symptoms of cognitive decline. If there is no current diagnosis of a qualifying condition, the doctor will provide a report that may be used to establish a diagnosis in the future. The Baseline Assessment Program is the core mechanism for which a player's claim will be handled.

## What is the Injury Compensation Fund?

Injury Compensation Fund. For those players eligible to collect monies (those players that are diagnosed with a qualifying diagnosis now or anytime in the future), will be financially compensated out of the $675 million Injury Compensation Fund. The precise amount of compensation to any one player will be based upon a specific diagnosis, as well as factors including age and number of seasons played in the NFL.

## If a retired player's condition worsens over time, he may apply for a supplemental payment?

Yes. The player can receive supplemental payment if his condition worsens and he is diagnosed with a qualifying condition (ALS, Alzheimers, Parkinsons, Moderate type dementia, or Severe type dementia).

## Is a player eligible to become part of this lawsuit if they are not part of the current filed concussion lawsuits?

The proposed settlement contains language that makes it a "Class Settlement". This means it includes the approximately 4,500 players who have already filed suit, as well as the approximately 14,000 players that remain eligible to receive testing and treatment, and financial compensation, if applicable; as well as those families whose family member was an NFL Player and was diagnosed with a qualifying condition. All players become automatic "Class" members by virtue of the settlement itself (if approved).

## Can a decision or denial of benefits be appealed?

Yes. If you believe that the claim Administrator unfairly denied your injury award or that the award you received was incorrect, then you or your attorney can appeal and reverse the decision by proving by clear and convincing evidence that your decision should be reevaluated.

## Can a player opt out of the settlement if he doesn't like the terms?

Yes. It is anticipated that many players (as in any Class Settlement) are talking about the advantages or disadvantages of accepting or opting out of the settlement. It is strongly advised that a player NOT opt out of the proposed settlement unless they are in a very unique situation that clearly is not addressed by the settlement.

The proposed settlement should be considered for its' fairness and reasonableness. The players who are injured now will be immediately compensated. Additionally, the settlement protects all players who are currently experiencing symptoms, because the settlement provides each player with immediate medical testing, treatment, and financial compensation if applicable.

The settlement protects those players who are ill today and protects those players who may become ill in the future.

The settlement protects the past, present, and future.

## NOTES

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

# The Proposed NFL Concussion "Class" Settlement

## Proposed Settlement Highlights

○ NFL would pay $765 million plus legal costs, but admits no wrongdoing.

● Individual awards would be capped at $5 million for players suffering from Alzheimer's disease.

○ Individual awards would be capped at $4 million for deaths from chronic traumatic encephalopathy.

○ Individual awards would be capped at $3 million for players suffering from severe cognitive decline.

○ Money would go toward medical exams and concussion-related compensation for NFL retirees and their families, and $10 million toward medical research.

○ Senior U.S. District Judge Anita Brody in Philadelphia must approve the settlement.

Many former NFL players appear to be misinformed, or not informed at all, about the terms of the proposed NFL concussion settlement that has recently been announced. Hopefully the below information will help explain the benefit of the settlement to retired NFL players in a clear and simple way.

## LEGAL ANALYSIS OF NFL "PROPOSED CONCUSSION SETTLEMENT"

By: Craig Mitnick, Esq. / Mitnick Law Office

**If I am retired NFL player what does this proposed "Class" settlement mean to me?**

An easy way to look at it is that you fall into one of three categories: "Asymptomatic", "Symptomatic", or "Diagnosed". If you are "Asymptomatic" that means that you have no current symptoms that indicate head trauma, such as short term memory loss, headaches, tingling in your hands or feet, or bouts depression and/or anxiety. If you are "Symptomatic" then you are experiencing one or more of the above symptoms. The last category is "Diagnosed". If you are diagnosed with ALS, Alzheimer's, Parkinson's, or Severe Cognitive Decline such as Dementia, you are considered Diagnosed. The only other condition that applies as a qualifying condition is "Death with CTE".

Now understanding where you fit in, if you are "Asymptomatic" and you become "Symptomatic", the way the proposed settlement is structured, you will be entitled to medical testing and medical benefits to treat your symptoms. If you then, at some point in the future become diagnosed with a qualifying condition, you will be entitled to financial compensation.

If you are currently "Symptomatic" you will be able to register to be medically tested and then treated or financially compensated, if applicable. This will be a process.

The exact monetary compensation for any one player who is considered "Diagnosed" depends on several factors, including time in the league and age at the time of diagnosis. This is not the sort of "Class Action" where you fill out a form and then receive financial compensation or a health benefits card in the mail. It will be a process (assuming that the agreement receives final approval by Judge Brody). As part of the proposed settlement, there will be a Center set up to assist retired NFL players and their attorneys with the process of registering for medical testing, the process for receiving medical benefits and the process of filing a claim for financial compensation.

**What happens now?**

Once receiving the Agreement, the Court must preliminarily rule upon whether the terms of the Agreement appear fair to the parties involved. If the court preliminarily approves the Agreement, than almost every former NFL player (whether included in the current litigation or not) will receive formal notice in the mail advising them of the Agreement's actual terms.

**What does the "Class" mean?**

The proposed settlement is defined by a "Class."  This means it includes the approximately 4,500 players who have already filed suit, as well as the approximately 14,000 other living NFL players. The proposed "Class" includes all living retired players; from a player that played solely on a practice squad to a long time vested player. If you are diagnosed with any neurological condition set forth in the proposed settlement, you will be entitled to a monetary award. The exact amount of any one player's recovery (if eligible) will depend on their age and how long they played in the league. For those retired players who have symptoms of cognitive decline but are undiagnosed, the player will be able to be medically tested and if diagnosed with a qualifying diagnosis, they will receive financial compensation.

**I am currently receiving disability or some other benefit from the NFL. Could my involvement in this "Class" settlement jeopardize or lower my NFL disability payments?**

The answer is absolutely NO. The NFL has agreed to not have a concussion claim reduce or affect a player's other benefits (i.e. Disability Payments, Neuro-Cognitive Benefits, and/or 88 Plan Benefits. In simple terms, there is no effect on any NFL benefit policies if a former player has already filed a claim or files a claim in the future. This is a really beneficial clause for the players because they can still collect all forms of disability, including 88 Plan Benefits, and neuro-cognitive benefits with no financial penalty to the player on any benefit. Whether it is total impairment; line of duty; or neurological/cognitive benefits, now or in the future, any concussion claim is separate and apart.

**Who is contributing the monies that will be paid to the players for financial damages and medical testing?**

The NFL and NFL Properties will contribute:

1. $75 million for baseline medical exams so every retired player will have access to be examined by an approved medical professional;
2. $675 million to compensate those former players who have been diagnosed with cognitive injuries. This amount is anticipated to cover damages for those players with serious injury now, or who develop serious injury in the future;
3. $10 million for research and education.
4. Attorney fees will be paid by the NFL. The attorney fee award will be determined by the Court upon the final approval of the proposed "Class" settlement. Attorney fees are not included in the $675 million for player injury compensation fund.

**What is a Baseline Medical Examination?**

The Baseline Assessment Program (BAP) allows every retired player to be seen by an independent licensed neuropsychologist, and /or board certified neurologist and to receive a base level cognitive assessment in order to determine if the player has any symptoms of cognitive decline. If there is no current diagnosis of a qualifying condition, the doctor will provide a report that may be used to establish a diagnosis in the future.The Baseline Assessment Program is the core mechanism for which a player's claim will be handled. If a player decides to get evaluated, treated, or diagnosed and does not utilize the BAP mechanism, that player could be financially penalized if he recovers any monetary award.

## What is the Injury Compensation Fund?

Injury Compensation Fund. For those players eligible to collect monies (those players that are diagnosed with a qualifying diagnosis), will get part of the $675 million Injury Compensation Fund that will be put together by the NFL. The precise amount of compensation to any one player will be based upon a specific diagnosis, as well as factors including age and number of seasons played in the NFL.

## If a retired player's condition worsens over time, may he apply for a supplemental payment?

Yes. The player can receive supplemental payment if his condition worsens and he is diagnosed with a qualifying condition (ALS, Alzheimers, Parkinsons, Death with CTE, Severe cognitive decline)

## Is a player eligible to become part of this lawsuit if they are not part of the current filed concussion lawsuits?

The proposed settlement contains language that makes it a "Class Settlement". This means it includes the approximately 4,500 players who have already filed suit, as well as the approximately 14,000 players that remain eligible to receive testing and treatment, and financial compensation, if applicable; as well as those families whose family member was an NFL Player and was diagnosed with a qualifying condition. All players become automatic "Class" members by virtue of the settlement itself (if approved).

## Can a decision or denial of benefits be appealed?

Yes. If you believe that the claim Administrator unfairly denied your injury award or that the award you received was incorrect, then you or your attorney can appeal and reverse the decision by proving by clear and convincing evidence that your decision should be reevaluated.

Mitnick Law Office, LLC
© 2013 All Rights Reserved
1.856.427.9000
1.877.MITNICK

# PROPOSED NFL CONCUSSION CLASS SETTLEMENT



Mitnick Law Office, LLC
Confidential Document
All rights reserved

# PROPOSED NFL CONCUSSION SETTLEMENT

The analysis below and the FAQ's that follow are presented to help educate and inform all former NFL players about the terms of the Proposed Class Action Concussion Settlement Agreement, submitted to the Court by the parties for the Players and the NFL.

Hopefully, the information will help explain why the Settlement is beneficial to all former NFL players and their families.. The information also provides former players with the risks they may face by opting out of this Class Action Settlement.

PLEASE BE CAUTIOUS OF COMMUNICATIONS FROM OTHER ATTORNEYS ADVISING YOU TO OPT OUT OF THIS AGREEMENT. THERE ARE CONSEQUENCES OF OPTING OUT OF THE PROPOSED SETTLEMENT. AN EXAMPLE IS ANY PLAYER WHO OPTS OUT MUST THEN OVERCOME THE PRE-EMPTION ISSUE AND MUST PROVE CAUSATION. THESE ARE VERY CHALLENGING AND DIFFICULT LEGAL ISSUES. BEFORE YOU JEOPARDIZE YOUR BENEFITS UNDER THE PROPOSED SETTLEMENT AGREEMENT, PLEASE UNDERSTAND ALL OF THE FACTS OF THE SETTLEMENT AND THE CONSEQUENCES OF OPTING OUT.

## The Proposed Settlement Highlights

- NFL will pay $760 million dollars plus legal costs for the class settlement.
- Settlement includes ALL retired players (approximately 18,000).
- Medical Component includes $75 million allocated to medical testing for all retired players, as well as treatment for those that experiencing symptoms and/or suffer from diagnosed cognitive conditions.
- Medical testing of retired players will be available though an independent network of board certified neurologists who are not associated with the NFL.
- The medical component of the settlement is known as "The Baseline Assessment Program" (BAP).
- Financial Compensation Component includes $675 million allocated to immediately compensate injured players who currently have a qualifying diagnosis and financially compensates those retired players who become sick with any qualifying condition in the future. Every injured player's situation will be

evaluated independently in order to determine what amount of compensation he will receive, if applicable.

- ○ Qualifying Diagnosis' include ALS (max recovery $5 million), Alzheimer's (max recovery $3.5 million), Parkinson's (max recovery $3.5 million), Moderate type dementia (max recovery $1.5 million), and severe type dementia (max recovery $3 million).

- ○ Medical research component includes $10 million that will be used exclusively for continued medical research to improve the health and safety for current and future players.

## FREQUENTLY ASKED QUESTIONS

What is "Asymptomatic", "Symptomatic" or "Diagnosed"
An easy way to look at it is that you fall into one of three categories: "Asymptomatic", "Symptomatic", or "Diagnosed".

If you are "Asymptomatic" that means that you have no current symptoms that indicate head trauma, such as short term memory loss, headaches, tingling in your hands or feet, or bouts depression and/or anxiety.

If you are "Symptomatic" then you are experiencing one or more of the above symptoms. The last category is "Diagnosed".

If you are diagnosed with ALS, Alzheimer's, Parkinson's, or moderate to severe Dementia, you are considered Diagnosed.

Now understanding where you fit in, if you are "Asymptomatic" and you become "Symptomatic", the way the proposed settlement is structured, you will be entitled to medical testing and medical benefits to treat your symptoms. If you then, at some point in the future become diagnosed with a qualifying condition, you will be entitled to financial compensation.

If you are currently "Symptomatic" you will be able to register to be medically tested and then treated or financially compensated, if applicable.

The exact monetary compensation (under the terms of the Proposed Settlement Agreement) for any one player who is considered "Diagnosed" depends on several factors, including time in the league and age at the time of diagnosis. This is not the sort of "Class Action" where you fill out a form and then receive financial compensation or a health benefits card in the mail. It will be a process (assuming that the agreement receives approval by Judge Brody). As part of the proposed settlement, there will be a Center set up to assist retired NFL players and their attorneys with the process of registering for medical testing, the process for receiving medical benefits and the process of filing a claim for financial compensation.

## Who is contributing the monies that will be paid to the players for financial damages and medical testing?

The NFL and NFL Properties will contribute:

$75 million for baseline medical exams so every retired player will have access to be examined by an approved medical professional;

$675 million to compensate those former players who have been diagnosed with cognitive injuries. This amount is anticipated to cover damages for those players with serious injury now, or who develop serious injury in the future;

$10 million for research and education.

Attorney fees will be paid by the NFL. The attorney fee award will be determined by the Court upon the final approval of the proposed "Class" settlement. Attorney fees are not included in the $675 million for player injury compensation fund and will be paid separately by the NFL.

## What is a Baseline Medical Examination?

The Baseline Assessment Program (BAP) allows every retired player to be seen by an independent licensed neuropsycholgist, and /or board certified neurologist and to receive a base level cognitive assessment in order to determine if the player has any symptoms of cognitive decline. If there is no current diagnosis of a qualifying condition, the doctor will provide a report that may be used to establish a diagnosis in the future. The Baseline Assessment Program is the core mechanism for which a player's claim will be handled. If a player decides to get evaluated, treated, or diagnosed and does not utilize the BAP mechanism, that player could be financially penalized if he recovers any monetary award.

## What is the Injury Compensation Fund?

The Injury Compensation Fund is a fund of $675 million that will be set aside to compensation those players eligible to collect monies under the terms of the Agreement (those players that are diagnosed with a qualifying diagnosis). The precise amount of compensation to any one player will be based upon his specific diagnosis, as well as factors including age at the time of diagnosis and time in the League. Below are the Agreement's proposed "Injury grids". These grids demonstrate the factors taken into consideration when determining any one player's compensation:

INJURY GRIDS TO FOLLOW

| AGE AT DIAGNOSIS | ALS | DEATH W/CTE | PARKINSON'S | ALZHEIMER'S | LEVEL 2 | LEVEL 1.5 |
|---|---|---|---|---|---|---|
| Under 45 | $5,000,000 | $4,000,000 | $3,500,000 | $3,500,000 | $3,000,000 | $1,500,000 |
| 45 - 49 | $4,500,000 | $3,200,000 | $2,470,000 | $2,300,000 | $1,900,000 | $950,000 |
| 50 - 54 | $4,000,000 | $2,300,000 | $1,900,000 | $1,600,000 | $1,200,000 | $600,000 |
| 55 - 59 | $3,500,000 | $1,400,000 | $1,300,000 | $1,150,000 | $950,000 | $475,000 |
| 60 - 64 | $3,000,000 | $1,200,000 | $1,000,000 | $950,000 | $580,000 | $290,000 |
| 65 - 69 | $2,500,000 | $980,000 | $760,000 | $620,000 | $380,000 | $190,000 |
| 70 - 74 | $1,750,000 | $600,000 | $475,000 | $380,000 | $210,000 | $105,000 |
| 75 - 79 | $1,000,000 | $160,000 | $145,000 | $130,000 | $80,000 | $40,000 |
| 80+ | $300,000 | $50,000 | $50,000 | $50,000 | $50,000 | $25,000 |

**Note:** The age of the retired player at diagnosis (not the age when applying for a monetary award) is used to determine the monetary amount awarded.

The table below lists the maximum amount of money available for each Qualifying Diagnosis before any adjustments are made.

| QUALIFYING DIAGNOSIS | MAXIMUM AWARD AVAILABLE |
|---|---|
| Amyotrophic lateral sclerosis (ALS) | $5 million |
| Death with CTE (diagnosed after death) | $4 million |
| Parkinson's Disease | $3.5 million |
| Alzheimer's Disease | $3.5 million |
| Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia) | $3 million |
| Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) | $1.5 million |

Monetary awards may be increased up to **2.5%** per year during the 65-year Monetary Award Fund term for inflation.

| NUMBER OF ELIGIBLE SEASONS | PERCENTAGE OF REDUCTION |
|---|---|
| 4.5 | 10% |
| 4 | 20% |
| 3.5 | 30% |
| 3 | 40% |
| 2.5 | 50% |
| 2 | 60% |
| 1.5 | 70% |
| 1 | 80% |
| .5 | 90% |
| 0 | 97.5% |

Level 1: Neurocognitive Impairment covers moderate cognitive impairment. It will be established in part with evidence of decline in performance in at least two areas subject to clinical evaluative testing (such as complex attention, executive function, learning, memory, language and perceptual skill) and related functional impairment.

Level 1.5: Neurocognitive Impairment covers early Dementia. It will be established in part with evidence of moderate to severe cognitive decline, which includes a decline in performance in at least two areas subject to clinical evaluative testing (such as complex attention, executive function, learning, memory, language and perceptual skill) and related functional impairment.

Level 2: Neurocognitive Impairment covers moderate Dementia. It will be established in part with evidence of severe decline in performance in at least two areas subject to clinical evaluative testing (such as complex attention, executive function, learning, memory, language and perceptual skill) and related functional impairment.   I f neurocognitive impairment is temporary and only occurs with delirium, or as a result of substance abuse or medicinal side effects, it is not covered by the Settlement.

**If a retired player's condition worsens over time, may he apply for a supplemental payment?**
Yes. The player can receive supplemental payment if his condition worsens and he is diagnosed with a qualifying condition (ALS, Alzheimers, Parkinsons, moderate cognitive decline, or severe cognitive decline).

**Can a decision or denial of benefits be appealed?**
Yes. If you believe that the claim Administrator unfairly denied your injury award or that the award you received was incorrect, then you or your attorney can appeal and reverse the decision by proving by clear and convincing evidence that your decision should be reevaluated.

**Do I need to prove that I sustained concussions in the NFL?**
No. To receive benefits or compensation no proof that injuries were caused by playing football in the NFL is required. This is called a waiver of causation. If you opt out of the proposed Settlement you will most probably need to prove causation to win your case.

**What if I am a current NFL player, am I included in the settlement?**
The Settlement Class does not include: (a) current NFL players, and (b) people who tried out for NFL or AFL Member Clubs, or World League of American Football, NFL Europe League or NFL Europa League teams, but did not make it onto preseason, regular season or postseason rosters, or practice squads, developmental squads or taxi squads.

**Can a player opt out of the settlement if he doesn't like the terms?**
Yes. Every player has a right to opt out of the Proposed Settlement if he does not find it to be fair or does not like its' terms. There are risks and consequences that any player who opts out of the Proposed Settlement will encounter. Just beware of the dangers of other lawyers' promises.

**Is a player eligible to become part of this lawsuit if they are not part of the current filed concussion lawsuits?**
The proposed settlement contains language that makes it a "Class Settlement". This means it includes the approximately 4,500 players who have already filed suit, as well as the approximately 14,000 players that remain eligible to receive testing and treatment, and financial compensation, if applicable; as well as

those families whose family member was an NFL Player and was diagnosed with a qualifying condition. All players become automatic "Class" members by virtue of the settlement itself (if approved).

## What does the "Class" mean?

The proposed settlement is defined by a "Class." This means it includes the approximately 4,500 players who have already filed suit, as well as the approximately 14,000 other living NFL players. The proposed "Class" includes all living retired players; from a player that played solely on a practice squad to a long time vested player. If you are diagnosed with any neurological condition set forth in the proposed settlement, you will be entitled to a monetary award. The exact amount of any one player's recovery (if eligible) will depend on their age and how long they played in the league. For those retired players who have symptoms of cognitive decline but are undiagnosed, the player will be able to be medically tested and if diagnosed with a qualifying diagnosis, they will receive financial compensation.

## I am currently receiving disability or some other benefit from the NFL. Could my involvement in this "Class" settlement jeopardize or lower my NFL disability payments?

The answer is absolutely NO. The NFL has agreed to not have a concussion claim reduce or affect a player's other benefits (i.e. Disability Payments, Neuro-Cognitive Benefits, and/or 88 Plan Benefits. In simple terms, there is no effect on any NFL benefit policies if a former player has already filed a claim or files a claim in the future. This is a really beneficial clause for the players because they can still collect all forms of disability, including 88 Plan Benefits, and neuro-cognitive benefits with no financial penalty to the player on any benefit. Whether it is total impairment; line of duty; or neurological/cognitive benefits, now or in the future, any concussion claim is separate and apart.

## What happens now?

Once the Court signs the Agreement, all former NFL players (whether named in the lawsuit or not) will receive written notice of the terms of the proposed Agreement via hard mail. Each player will then have the option of remaining in the Settlement or opting out of the Settlement. A player may also object to the Settlement.

**Remaining in the Settlement:** You do not need to do anything to remain in the Settlement Class. However, once the Court approves the Settlement, you will be bound by the terms and releases contained in the Settlement and will have to register for benefits. There will be later notice to explain when and how to register for Settlement benefits.

**Opting Out of the Settlement:** You will get no benefits from the Settlement if you opt out and exclude yourself. Excluding yourself is the only option that allows you to participate in any other lawsuit filed against the NFL for concussion related injuries. Details about how to opt out will be included in the Class Notice you receive.

**Objecting to the Settlement:** You can write to the Court expressing your concerns about the Settlement. Details about how to object will be included in the Class Notice you receive.

Mitnick Law Office
All Rights Reserved

# PROPOSED "CLASS" SETTLEMENT: NFL CONCUSSION ACTION

## "CLASS" SETTLEMENT COMPONENT
- Includes all players who have retired as of the date on which the court grants preliminary settlement approval.

## MEDICAL COMPONENT
- $75 million allocated to medical testing of retired players.
- Individual Network of Doctors.
- Medical Benefits Card.
- 10 Year Program
- Baseline Assessment Program (BAP)

## FINANCIAL COMPENSATION COMPONENT
- $675 Million allocated to immediately compensate injured players who have a qualifying diagnosis.
- Formula to determine amount of compensation that any one injured player will receive can be seen below.

## QUALIFYING DIAGNOSIS

| DIAGNOSIS | ALS | Alzheimer's | Parkinson's | Death with CTE | Severe Cognitive Decline |
|---|---|---|---|---|---|
| MAX RECOVERY | 5 M | 3.5 M | 3.5 M | 4 M | 3 M |

Formula Takes into consideration time in the league and age at time of diagnosis as well as severity of the injury. It then calcuates the financial award based on an injury matrix.

# WHAT DOES THE SETTLEMENT ACCOMPLISH?

# How Will the NFL Pay?

- Upon final approval and no appeals, the NFL will immediately pay 50% of the $760M over the first three years ($380M)
- Balance over next 17 years ($380M)

# Hidden Benefit to Players

No retired player will forfeit or become ineligible for any other benefits provided by the current CBA (ie. Disability, 88 Plan Benefits, Neurocognitive Benefits)



## MANDATORY REGISTRATION FOR RETIRED PLAYERS

### Do retired players need to register in order to receive benefits?

All retired players will be required to register within 180 days of final approval in order for the player to submit a claim. What that means is that the registration and claim process will start only after all appeals from the final Order and Judgment have been exhausted and the Settlement truly becomes final.

Notice of when the Registration process will begin will be available online, on the official litigation website, (www.nfl-concussionsettlement.com), as well as through the attorneys involved in the case. The Registration process does not become available to retired players until after all appeals have been exhausted and the Settlement truly becomes final. A player cannot register until that time.

There is no guaranteed time frame available for when the Registration and Claim process will begin, however it is anticipated that if the appeals fail, Registration and benefits will become available by the fall.

## CLAIM ELIGIBILITY

### Which Players are not included in the Settlement Class?

The Settlement Class does not include current NFL players. The Settlement Class also does not include any individuals who tried out for but did not make it onto the preseason, regular season or postseason active roster, practice or developmental roster, or taxi squad of the respective member club.

### Who is eligible to receive financial benefits?

Monetary awards are available for the diagnosis of ALS, Parkinson's Disease, Alzheimer's Disease, moderate to severe Dementia (known as Level 2 Neurocognitive Impairment); early stage Dementia (known as Level 1.5 Neurocognitive Impairment and Death with CTE if the player's death occurred prior to July 7, 2014.

A player who develops any condition listed above within the next 65 years may submit a financial claim once they are formally diagnosed. Qualifying Diagnoses must be made by a board certified neurologist, neurosurgeon, or neuro specialist who has been approved by the independent Settlement *Claims Administrator*. These are not chosen, employed, or associated with the NFL. The national network of approved doctors will be extensive and the list will be made available to retired players once the registration process begins.

### Must a retired player be vested under the NFL Retirement Plan to receive Settlement benefits?

No. A retired player can be a Settlement Class Member regardless of whether he is vested due to credited seasons or total and permanent disability under the Bert Bell/Pete Rozelle NFL Player Retirement Plan.

### If a retired player's condition worsens over time, may a player apply for a supplemental payment?

If a retired player receives a monetary award based on a qualifying diagnosis, and later is diagnosed with a different qualifying diagnosis that entitles him to a larger monetary award than his previous award, he will become eligible to receive additional financial award.

### If a player is eligible for a monetary award, how will the amount of that award be determined?

The exact amount of a player's monetary award will depend several factors – such as age of diagnosis, number of eligible seasons played, whether a player has suffered a prior stro or suffered from a traumatic brain injury that was unrelated football and whether a player has received his diagnosis fro a approved medical provider. Retired players do not need prove that a qualifying diagnosis was caused by playing pr fessional football in order to receive compensation. The long a player played in the League, the greater the financial bene

| Age at Diagnosis | ALS | Death w/ CTE | Parkinson's | Alzheimer's & Level 2 Dementia | Level 1.5 Dementia |
|---|---|---|---|---|---|
| Under 45 | $5,000,000 | $4,000,000 | $3,500,000 | $3,500,000 | $3,000,000 | $1,500,000 |
| 45-49 | $4,500,000 | $3,200,000 | $2,470,000 | $2,300,000 | $1,900,000 | $950,000 |
| 50-54 | $4,000,000 | $2,300,000 | $1,900,000 | $1,600,000 | $1,200,000 | $600,000 |
| 55-59 | $3,500,000 | $1,400,000 | $1,300,000 | $1,150,000 | $950,000 | $475,000 |
| 60-64 | $3,000,000 | $1,200,000 | $1,000,000 | $950,000 | $580,000 | $290,000 |
| 65-69 | $2,500,000 | $980,000 | $760,000 | $620,000 | $380,000 | $190,000 |
| 70-74 | $1,750,000 | $600,000 | $475,000 | $380,000 | $210,000 | $105,000 |
| 75-79 | $1,000,000 | $160,000 | $145,000 | $130,000 | $80,000 | $40,000 |
| 80+ | $300,000 | $50,000 | $50,000 | $50,000 | $50,000 | $25,000 |

Death with CTE claims must fall within the time period January 1, 2016 and July 7, 2014. Unless the court determines that the claim would be allowed under applicable state law.

### Are there any timelines for submitting a Claim?

Retired NFL Players and Representative Claimants for retire players who have received a formal diagnosis by the date o Final Settlement Approval (after all Settlement appeals hav been exhausted) must submit their claim for monetary awar within two years.

Retired NFL Players and Representative Claimants for retire players who are diagnosed after the date of Final Settleme Approval have two years from the date of diagnosis to file the

claim. This deadline may be extended up to an additional two years upon a showing of substantial hardship.

## Can a player's involvement in the concussion litigation settlement jeopardize or lower their current or future NFL disability payments?

The NFL has agreed to not have a concussion claim reduce or affect a player's other benefits (i.e. Disability Payments, Neuro-Cognitive Benefits, and/or 88 Plan Benefits. In simple terms, there is no affect on any NFL benefit policies by being involved in the Concussion Settlement. There are NO discounts or offsets. This is a really beneficial clause for the players because they can still collect all forms of disability, including 88 Plan Benefits, and neuro-cognitive benefits with no financial penalty to the player on any benefit. Whether it is total impairment; line of duty; or neurological/cognitive benefits, now or in the future, any concussion claim is separate and apart.

## Can a decision or denial of benefits be appealed?

Yes. If you believe that the Claim Administrator unfairly denied your injury award or that the award you received was incorrect, then you or your attorney can appeal and reverse the decision by proving clear and convincing evidence.

## How does a claimant file a claim on behalf of a deceased player?

The proof a Representative Claimant must submit to show that a deceased player received a Qualifying Diagnosis depends on the date of the player's death and the type of injury.

If the player dies before the effective date of the Settlement Agreement, the Representative Claimant may establish Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, or ALS by submitting medical records showing a diagnosis of such condition made before the player died. The diagnosis must have been made by properly credentialed physicians, as described in Section 6.3(e) of the Settlement Agreement.

The Representative Claimant of a player who died before the Final Approval Date may establish Death with CTE by submitting medical records showing a diagnosis of Death with CTE made by a board-certified neuro-pathologist after the player's death and before the Final Approval Date. If the player died between July 7, 2014 and the Final Approval Date, his Representative Claimant has until 270 days after the player's death to obtain the post-mortem diagnosis. Players who died on or after the Final Approval Date (which has not yet occurred) are not eligible for benefits for Death with CTE.

All Claimants, including Representative Claimants of deceased players, also must submit a Diagnosing Physician Certification signed by the physician who made the qualifying diagnosis, except that representative claimants of players who die before the effective date do not have to submit a diagnosing physician certification if the physician who made the qualifying diagnosis also died before the Effective Date, or was deemed legally incapacitated or incompetent prior to that date, but they do have to submit

evidence of the physician's death, incapacity or incompetence and of his or her qualifications.

A Representative Claimant of a player who died before January 1, 2006 also must establish that the claim is not time-barred.

# THE MEDICAL COMPONENT OF THE SETTLEMENT

## What is the Baseline Assessment Program?

The Baseline Assessment Program (BAP) allows every retired player to be seen by an independent licensed neuropsychologist and /or board certified neurologist and to receive a base level cognitive assessment in order to determine if the player has any symptoms of cognitive decline. If there is no current diagnosis of a qualifying condition, the doctor will provide a report that may be used to establish a diagnosis in the future. The Baseline Assessment Program is the core mechanism for which a player's claim will be handled. If a player decides to get evaluated, treated, or diagnosed and does not utilize the BAP mechanism, that player could be financially penalized if he recovers any monetary award.



THE MEDICAL COMPONENT OF THE SETTLEMENT
The baseline assessment program (BAP)

All living retired players who have earned at least on-half of an eligible season may participate in the baseline assessment program.

The BAP is a nationwide network of broad certified providers who are in no way connected to the NFL.
The examinations will include both a neuropsychological and neurological exam.

Once the Settlement has become final (all appeals have been exhausted)

Players 43 and older will have 2 years to get a baseline assessment.

Players under the age of 43 will have 10 years to take the examination or upon reaching the age of 45, (whichever comes earlier).

## Who is eligible to receive medical testing and/or medical treatment under the Settlement?

The settlement covers the approximately 5,000 players who initially filed suit, as well as every other member of the approx. 20,000 retired player community throughout the world. Whether a player played a practice season or 10 years, the player may Register to receive a comprehensive medical exam and then receive follow up treatment if applicable.

## What can a player expect from the Baseline Assessment Program?

Retired players will be eligible to receive a baseline neuropsychological and neurological examination, which will use a variety of tests to determine whether they are currently suffering from any type of neurocognitive impairment.

## Can a player receive additional medical testing after their initial baseline examination?

Players diagnosed with Level 1 Neurocognitive Impairment (no formal diagnosis of dementia, however they exhibit symptoms of cognitive impairment) will receive supplemental medical benefits including further testing and treatment. The initial compre-

ensive evaluation will at a minimum provide a baseline for future testing and treatment.

### What is the time frame in which a player must register to receive a baseline evaluation?

Retired players will have from two to ten years, depending on their age as of the settlement's effective date (when all appeals have been exhausted) to have a baseline examination conducted.

Retired players 43 and older must receive a baseline examination within two years of the start of the program.

Retired players under 43 must be examined within 10 years of commencement of the program or before they turn 45, whichever is earlier.

### Who establishes the network of board certified doctors that will be evaluating, treating and diagnosing retired players?

Baseline examinations will be conducted through a nationwide network of qualified and independent medical providers (*not NFL-appointed doctors*). The medical component of the Settlement is headed up by an independent medical Claim administrator who is appointed by the court. The NFL has NO control over the testing, treatment, or diagnosis of any player.

## INJURY DEFINITIONS

### Level 1 Neurocognitive Impairment

(Cognitive decline that entitles a player to receive medical treatment but is not great enough for the player to immediately receive financial compensation)

(a)  For Retired NFL Football Players diagnosed through the BAP, a diagnosis of Level 1 Neurocognitive Impairment must meet the criteria set forth in subsections (i)-(iv) below:

(i)  Concern of the Retired NFL Football Player, a knowledgeable informant, or the Qualified BAP Provider that there has been a decline in cognitive function.

(ii)  Evidence of moderate cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in two or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual-spatial), provided one of the cognitive domains is (a) executive function, (b) learning and memory, or (c) complex attention.

(iii)  The Retired NFL Football Player exhibits functional impairment generally consistent with the criteria set forth in the National Alzheimer's Coordinating Center's Clinical Dementia Rating scale Category 0.5 (Questionable) in the areas of Community Affairs, Home & Hobbies, and Personal Care.

(iv)  The cognitive deficits do not occur exclusively in the context of a delirium, acute substance abuse, or as a result of

medication side effects.

*Level 1 Neurocognitive Impairment, for the purposes of this Settlement Agreement, may only be diagnosed by Qualified BAP Providers during a BAP baseline assessment examination, with agreement on the diagnosis by the Qualified BAP Providers.*

### Level 1.5 Neurocognitive Impairment

(Cognitive impairment entitling a player to receive financial compensation of a maximum $1.5 Million Dollars)

(a)  For Retired NFL Football Players diagnosed through the BAP, a diagnosis of Level 1.5 Neurocognitive Impairment must meet the criteria set forth in subsections (i)-(iv) below:

(i)  Concern of the Retired NFL Football Player, a knowledgeable informant, or the Qualified BAP Provider that there has been a severe decline in cognitive function.

(ii)  Evidence of a moderate to severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in two or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual-spatial), provided one of the cognitive domains is (a) executive function, (b) learning and memory, or (c) complex attention.

(iii)  The Retired NFL Football Player exhibits functional impairment generally consistent with the criteria set forth in the National Alzheimer's Coordinating Center's Clinical Dementia Rating (CDR) scale Category 1.0 (Mild) in the areas of Community Affairs, Home & Hobbies, and Personal Care. Such functional impairment shall be corroborated by documentary evidence (e.g., medical records, employment records), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis. In the event that no documentary evidence of functional impairment exists or is available, then

(a)  there must be evidence of moderate to severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in the executive function cognitive domain or the learning and memory cognitive domain, and at least one other cognitive domain; and

(b)  the Retired NFL Football Player's functional impairment, as described above, must be corroborated by a third-party sworn affidavit from a person familiar with the Retired NFL Football Player's condition (other than the player or his family members), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis.

(iv)  The cognitive deficits do not occur exclusively in the context of a delirium, acute substance abuse, or as a result of medication side effects.

(a)  For living Retired NFL Football Players diagnosed outside

forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

(b) For Retired NFL Football Players deceased prior to the Effective Date, a diagnosis of Major Neurocognitive Disorder due to probable Alzheimer's Disease consistent with the definition in Diagnostic and Statistical Manual of Mental Disorders (DSM-5), or a diagnosis of Alzheimer's Disease, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology to make such a diagnosis, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

## Parkinson's Disease

(a) For living Retired NFL Football Players, a diagnosis while living of the specific disease of Parkinson's Disease as defined by the World Health Organization's International Classification of Diseases, 9th Edition (ICD-9), the World Health Organization's International Classification of Diseases,

(b) For Retired NFL Football Player10th Edition (ICD-10), or a diagnosis of Major Neurocognitive Disorder probably due to Parkinson's Disease as defined in the Diagnostic and Statistical Manual of Mental Disorders (DSM-5), made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

(c) For Retired NFL Football Players deceased prior to the Effective Date, a diagnosis of Parkinson's Disease, made while

the Retired NFL Football Player was living by a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology to make such a diagnosis, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

## Amyotrophic Lateral Sclerosis (ALS)

(a) For living Retired NFL Football Players, a diagnosis while living of the specific disease of Amyotrophic Lateral Sclerosis, also known as Lou Gehrig's Disease ("ALS"), as defined by the World Health Organization's International Classification of Diseases, 9th Edition (ICD-9) or the World Health Organization's International Classification of Diseases, 10th Edition (ICD-10), made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

(b) A retired player who was deceased prior to the Effective Date of the final Settlement Agreement ( the fact that no further appeals are available) , a diagnosis of ALS, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology to make such a diagnosis, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement will receive financial compensation.

For additional information, questions, or Claim representation please contact Mitnick Law Office by telephone 856-427-9000 or by email at nfl@mitnicklegal.com



All rights reserved   Mitnick Law Office, LLC    2016