# EXHIBIT H-2



# NFL CONCUSSION SETTLEMENT STATUS

## CASE HISTORY

The Court granted preliminary approval of the NFL Retired Player Concussion Litigation Settlement on July 7, 2014 and then heard arguments on the fairness of the Settlement terms on November 19, 2014. On April 4, 2015 the Settlement received final court approval and it was subsequently appealed by several retired players who argued that the terms of the Settlement were not fair. The matter currently remains under appeal with the Third Circuit Court of Appeals and is awaiting a decision.

If the Third Circuit Court of Appeals affirms the settlement as fair and denies the current appeal, there will be a 30-day period for one last appeal to be taken to the United States Supreme Court. The Supreme Court has the right to hear the appeal or to reject the request for an appeal. If the Supreme Court rejects the appeal request the registration and claim process for retired players would then begin.

Once the Settlement benefits become available the NFL will fully fund baseline examinations for all players and monetary awards those players that are injured. The NFL's obligations under the Monetary Award Fund are not capped at any specified amount. This means that once the compensation program begins, funds will be available to any retired player who develops a qualifying neurocognitive condition for the next 65 years. The benefits and eligibility criteria for medical and financial benefits are summarized below.

## MANDATORY REGISTRATION FOR RETIRED PLAYERS

### Do retired players need to register in order to receive benefits?

All retired players will be required to register within 180 days of final approval in order for the player to submit a claim. What that means is that the registration and claim

process will start *only* after all appeals from the final Order and Judgment have been exhausted and the Settlement truly becomes final.

Notice of when the Registration process will begin will be available online, on the official litigation website, (www.nflconcussionsettlement), as well as through the attorneys involved in the case. The Registration process does not become available to retired players until after all appeals have been exhausted and the Settlement truly becomes final. A player cannot register until that time.

There is no guaranteed time frame available for when the Registration and Claim process will begin, however it is anticipated that if the appeals fail, Registration and benefits will become available by the fall.

## CLAIM ELIGIBILITY

### Which Players are not included in the Settlement Class?

The Settlement Class does not include current NFL players. The Settlement Class also does not include any individuals who tried out for but did not make it onto the preseason, regular season or postseason active roster, practice or developmental roster, or taxi squad of the respective member club.

### Who is eligible to receive financial benefits?

Monetary awards are available for the diagnosis of ALS, Parkinson's Disease, Alzheimer's Disease, moderate to severe Dementia (known as Level 2 Neurocognitive Impairment); early stage Dementia (known as Level 1.5 Neurocognitive Impairment and Death with CTE if the player's death occurred prior to July 7, 2014.

A player who develops any condition listed above within the next 65 years may submit a financial claim once they are formally diagnosed. Qualifying Diagnoses must be made by a board certified neurologist, neurosurgeon, or neuro specialist who has been approved by the independent Settlement *Claims Administrator*. These are not doctors chosen, employed, or associated with the NFL. The national network of approved doctors will be extensive and the list will be made available to retired players once the registration process begins.

## Must a retired player be vested under the NFL Retirement Plan to receive Settlement benefits?

No. A retired player can be a Settlement Class Member regardless of whether he is vested due to credited seasons or total and permanent disability under the Bert Bell/Pete Rozelle NFL Player Retirement Plan.

## If a retired player's condition worsens over time, may a player apply for a supplemental payment?

If a retired player receives a monetary award based on a qualifying diagnosis, and later is diagnosed with a different qualifying diagnosis that entitles him to a larger monetary award than his previous award, he will become eligible to receive an additional financial award.

## If a player is eligible for a monetary award, how will the amount of that award be determined?

The exact amount of a player's monetary award will depend on several factors – such as age of diagnosis, number of eligible seasons played, whether a player has suffered a prior stroke or suffered from a traumatic brain injury that was unrelated to football and whether a player has received his diagnosis from an approved medical provider. Retired players do not need to prove that a qualifying diagnosis was caused by playing professional football in order to receive compensation. The longer a player played in the League, the greater the financial benefit.





## Are there any timelines for submitting a Claim?

Retired NFL Players and Representative Claimants for retired players who have received a formal diagnosis by the date of Final Settlement Approval (after all Settlement appeals have been exhausted) must submit their claim for monetary awards within two years.

Retired NFL Players and Representative Claimants for retired players who are diagnosed after the date of Final Settlement Approval have two years from the date of diagnosis to file their claim. This deadline may be extended up to an additional two years upon a showing of substantial hardship.

Take line out

Take line out below

## Can a player's involvement in the concussion litigation settlement jeopardize or lower their current or future NFL disability payments?

The NFL has agreed to not have a concussion claim reduce or affect a player's other benefits (i.e. Disability Payments, Neuro-Cognitive Benefits, and/or 88 Plan Benefits. In simple terms, there is no affect on any NFL benefit policies by being involved in the Concussion Settlement. There are NO discounts or offsets. This is a really beneficial clause for the players because they can still collect all forms of disability, including 88 Plan Benefits, and neuro-cognitive benefits with no financial penalty to the player on any benefit. Whether it is total impairment; line of duty; or neurological/cognitive benefits, now or in the future, any concussion claim is separate and apart.

Take line out above and here

## Can a decision or denial of benefits be appealed?

Yes. If you believe that the Claim Administrator unfairly denied your injury award or that the award you received was incorrect, then you or your attorney can appeal and reverse the decision by proving clear and convincing evidence.

Take out line below

## How does a claimant file a claim on behalf of a deceased player?

The proof a Representative Claimant must submit to show that a deceased player received a Qualifying Diagnosis depends on the date of the player's death and the type of injury.

If the player dies before the effective date of the Settlement Agreement, the Representative Claimant may establish Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, or ALS by submitting medical records showing a diagnosis of such condition made before the player died. The diagnosis must have been made by properly credentialed physicians, as described in Section 6.3(e) of the Settlement Agreement.

The Representative Claimant of a player who died before the Final Approval Date may establish Death with CTE by submitting medical records showing a diagnosis of Death with CTE made by a board-certified neuro-pathologist after the player's death and before the Final Approval Date. If the player died between July 7, 2014 and the Final Approval Date, his Representative Claimant has until 270 days after the player's death to obtain the post-mortem diagnosis. Players who died on or after the Final Approval Date (which has not yet occurred) are not eligible for benefits for Death with CTE.

All Claimants, including Representative Claimants of deceased players, also must submit a Diagnosing Physician Certification signed by the physician who made the qualifying diagnosis, except that representative claimants of players who die before the effective date do not have to submit a diagnosing physician certification if the physician who made the qualifying diagnosis also died before the Effective Date, or was deemed legally incapacitated or incompetent prior to that date, but they do have to submit evidence of the physician's death, incapacity or incompetence, and of his or her qualifications.

A Representative Claimant of a player who died before January 1, 2006 also must establish that the claim is not time-barred.

# THE MEDICAL COMPONENT OF THE SETTLEMENT

## What is the Baseline Assessment Program?

The Baseline Assessment Program (BAP) allows every retired player to be seen by an independent licensed neuropsycholgist, and /or board certified neurologist and to receive a base level cognitive assessment in order to determine if the player has any symptoms of cognitive decline. If there is no current diagnosis of a qualifying condition, the doctor will provide a report that may be used to establish a diagnosis in the future.The Baseline Assessment Program is the core mechanism for which a player's claim will be handled. If a player decides to get evaluated, treated, or diagnosed and does not utilize the BAP mechanism, that player could be financially penalized if he recovers any monetary award.



## Who is eligible to receive medical testing and/or medical treatment under the Settlement?

The settlement covers the approximately 5,000 players who initially filed suit, as well as every other member of the approx. 20,000 retired player community throughout the world. Whether a player played a practice season or 10 years, the player may Register to receive a comprehensive medical exam and then receive follow up treatment if applicable.

## What can a player expect from the Baseline Assessment Program?

Retired players will be eligible to receive a baseline neuropsychological and neurological examination, which will use a variety of tests to determine whether they are currently suffering from any type of neurocognitive impairment.

(a) For Retired NFL Football Players diagnosed through the BAP, a diagnosis of Level 1 Neurocognitive Impairment must meet the criteria set forth in subsections (i)-(iv) below:

(i) Concern of the Retired NFL Football Player, a knowledgeable informant, or the Qualified BAP Provider that there has been a decline in cognitive function.

(ii) Evidence of moderate cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in two or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual- spatial), provided one of the cognitive domains is (a) executive function, (b) learning and memory, or (c) complex attention.

(iii) The Retired NFL Football Player exhibits functional impairment generally consistent with the criteria set forth in the National Alzheimer's Coordinating Center's Clinical Dementia Rating scale Category 0.5 (Questionable) in the areas of Community Affairs, Home & Hobbies, and Personal Care.

(iv) The cognitive deficits do not occur exclusively in the context of a delirium, acute substance abuse, or as a result of medication side effects.

*Level 1 Neurocognitive Impairment, for the purposes of this Settlement Agreement, may only be diagnosed by Qualified BAP Providers during a BAP baseline assessment examination, with agreement on the diagnosis by the Qualified BAP Providers.*

## Level 1.5 Neurocognitive Impairment

(a) For Retired NFL Football Players diagnosed through the BAP, a diagnosis of Level 1.5 Neurocognitive Impairment must meet the criteria set forth in subsections (i)-(iv) below:

(i) Concern of the Retired NFL Football Player, a knowledgeable informant, or the Qualified BAP Provider that there has been a severe decline in cognitive function.

(ii) Evidence of a moderate to severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in two or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual-spatial), provided one of the cognitive domains is (a) executive function, (b) learning and memory, or (c) complex attention.

(iii) The Retired NFL Football Player exhibits functional impairment generally consistent with the criteria set forth in the National Alzheimer's Coordinating Center's Clinical Dementia Rating (CDR) scale Category 1.0 (Mild) in the areas of Community Affairs,

## Can a player receive additional medical testing after their initial baseline examination?

Players diagnosed with Level 1 Neurocognitive Impairment (no formal diagnosis of dementia, however they exhibit symptoms of cognitive impairment) will receive supplemental medical benefits including further testing and treatment. The initial comprehensive evaluation will at a minimum provide a baseline for future testing and treatment.

## What is the time frame in which a player must register to receive a baseline evaluation?

Retired players will have from two to ten years, depending on their age as of the settlement's effective date (when all appeals have been exhausted) to have a baseline examination conducted.

Retired players 43 and older must receive a baseline examination within two years of the start of the program.

Retired players under 43 must be examined within 10 years of commencement of the program or before they turn 45, whichever is earlier.

## Who establishes the network of board certified doctors that will be evaluating, treating and diagnosing retired players?

Baseline examinations will be conducted through a nationwide network of qualified and independent medical providers *(not NFL-appointed doctors)*. The medical component of the Settlement is headed up by an independent medical Claim administrator who is appointed by the court. The NFL has NO control over the testing, treatment, or diagnosis of any player.

---

# INJURY DEFINITIONS

## Level 1 Neurocognitive Impairment

Home & Hobbies, and Personal Care. Such functional impairment shall be corroborated by documentary evidence (e.g., medical records, employment records), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis. In the event that no documentary evidence of functional impairment exists or is available, then

(a) there must be evidence of moderate to severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in the executive function cognitive domain or the learning and memory cognitive domain, and at least one other cognitive domain; and

(b) the Retired NFL Football Player's functional impairment, as described above, must be corroborated by a third-party sworn affidavit from a person familiar with the Retired NFL Football Player's condition (other than the player or his family members), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis.

(iv) The cognitive deficits do not occur exclusively in the context of a delirium, acute substance abuse, or as a result of medication side effects.

(a) For living Retired NFL Football Players diagnosed outside of the BAP, a diagnosis while living of Level 1.5 Neurocognitive Impairment, i.e., early dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 1(a)(i)-(iv) above, made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

(b) For Retired NFL Football Players deceased prior to the Effective Date, a diagnosis of Level 1.5 Neurocognitive Impairment, i.e., early dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 1(a)(i)-(iv) above, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology or neurocognitive disorders, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

## Level 2 Neurocognitive Impairment

(a) For Retired NFL Football Players diagnosed through the BAP, a diagnosis of Level 2 Neurocognitive Impairment must meet the criteria set forth in subsections (i)-(iv) below:

(i) Concern of the Retired NFL Football Player, a knowledgeable informant, or the Qualified BAP Provider that there has been a severe decline in cognitive function.

(ii) Evidence of a severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in two or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual- spatial), provided one of the cognitive domains is (a) executive function, (b) learning and memory, or (c) complex attention.

(iii) The Retired NFL Football Player exhibits functional impairment generally consistent with the criteria set forth in the National Alzheimer's Coordinating Center's Clinical Dementia Rating (CDR) scale Category 2.0 (Moderate) in the areas of Community Affairs, Home & Hobbies, and Personal Care. Such functional impairment shall be corroborated by documentary evidence (e.g., medical records, employment records), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis. In the event that no documentary evidence of functional impairment exists or is available, then

(a) there must be evidence of severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in the executive function cognitive domain or the learning and memory cognitive domain, and at least one other cognitive domain; and

(b) the Retired NFL Football Player's functional impairment, as described above, must be corroborated by a third- party sworn affidavit from a person familiar with the Retired NFL Football Player's condition (other than the player or his family members), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis.

(iv) The cognitive deficits do not occur exclusively in the context of a delirium, acute substance abuse, or as a result of medication side effects.

(a) For living Retired NFL Football Players diagnosed outside of the BAP, a diagnosis while living of Level 2 Neurocognitive Impairment, i.e., moderate dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 2(a)(i)-(iv) above, unless the diagnosing physician can certify in the Diagnosing Physician Certification that certain testing in 2(a)(i)-(iv) is medically unnecessary because the Retired NFL Football Player's dementia is so severe, made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

(b) For Retired NFL Football Players deceased prior to the Effective Date, a diagnosis of Level 2 Neurocognitive Impairment, i.e., moderate dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 2(a)(i)-(iv) above, unless the diagnosing physician can certify in the Diagnosing Physician Certification that certain testing in 2(a)(i)-(iv) was medically unnecessary

because the Retired NFL Football Player's dementia was so severe, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology or neurocognitive disorders, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

## Alzheimer's Disease

(a) For living Retired NFL Football Players, a diagnosis while living of the specific disease of Alzheimer's Disease as defined by the World Health Organization's International Classification of Diseases, 9th Edition (ICD-9), the World Health Organization's International Classification of Diseases, 10th Edition (ICD-10), or a diagnosis of Major Neurocognitive Disorder due to probable Alzheimer's Disease as defined in the Diagnostic and Statistical Manual of Mental Disorders (DSM-5), made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

(b) For Retired NFL Football Players deceased prior to the Effective Date, a diagnosis of Major Neurocognitive Disorder due to probable Alzheimer's Disease consistent with the definition in Diagnostic and Statistical Manual of Mental Disorders (DSM-5), or a diagnosis of Alzheimer's Disease, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology to make such a diagnosis, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

## Parkinson's Disease

(a) For living Retired NFL Football Players, a diagnosis while living of the specific disease of Parkinson's Disease as defined by the World Health Organization's International Classification of Diseases, 9th Edition (ICD-9), the World Health Organization's International Classification of Diseases,

(b) For Retired NFL Football Player10th Edition (ICD-10), or a diagnosis of Major Neurocognitive Disorder probably due to Parkinson's Disease as defined in the Diagnostic and Statistical Manual of Mental Disorders (DSM-5), made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

(c) For Retired NFL Football Players deceased prior to the Effective Date, a diagnosis of Parkinson's Disease, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology to make such a diagnosis, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

## Amyotrophic Lateral Sclerosis (ALS)

(a) For living Retired NFL Football Players, a diagnosis while living of the specific disease of Amyotrophic Lateral Sclerosis, also known as Lou Gehrig's Disease ("ALS"), as defined by the World Health Organization's International Classification of Diseases, 9th Edition (ICD-9) or the World Health Organization's International Classification of Diseases, 10th Edition (ICD-10), made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

(b) A retired player who was deceased prior to the Effective Date of the final Settlement Agreement ( the fact that no further appeals are available) , a diagnosis of ALS, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology to make such a diagnosis, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement will receive financial compensation.

---

*For additional information, questions, or Claim representation please contact Mitnick Law Office by telephone 856-427-9000 or by email at nfl@mitnicklegal.com*



All rights reserved   Mitnick Law Office, LLC    2016

# FREQUENTLY ASKED QUESTIONS
# NFL CONCUSSION INJURY LITIGATION

## What does the settlement mean for retired NFL players?

The proposed settlement is defined by a "Class."   This means it includes the approximately 4,500 players who have already filed suit, as well as the approximately 14,000 players that have not filed their claim as to date. The proposed "Class" includes all living retired players; from a player that played solely on a practice squad to a long time vested player. If you are diagnosed with any neurological condition set forth in the proposed settlement, you will be entitled to a monetary award. The exact amount of any one player's recovery (if eligible) will depend on their age and how long they played in the league. For those retired players who have symptoms of cognitive decline but are undiagnosed, the player will be able to be medically tested and if diagnosed with a qualifying diagnosis, they will receive financial compensation.

## Who is contributing the monies that will be paid to the players for financial damages and medical testing?

The NFL and NFL Properties will contribute:

1. $75 million for baseline medical exams so every retired player will have access to be examined by an approved medical professional;
2. $675 million to compensate those former players who have been diagnosed with cognitive injuries. This amount is anticipated to cover damages for those players with serious injury now, or who develop serious injury in the future;
3. $10 million for research and education.
4. Attorney fees will be paid by the NFL. The attorney fee award will be determined by the Court upon the final approval of the proposed "Class" settlement. Attorney fees are not included in the $675 million for player injury compensation fund.

## What is a Baseline Medical Examination?

Baseline Medical Examinations.  This allows every eligible, retired player to be tested and receive a baseline medical assessment, the results of which will be used to establish a diagnosis, either now or in the future.

## What is the Injury Compensation Fund?

Injury Compensation Fund.  For those players eligible to collect monies (those players that are diagnosed with a qualifying diagnosis), will get part of the $675 million Injury Compensation Fund that will be put together by the NFL.  The precise amount of compensation to any one player will be based upon a specific diagnosis, as well as factors including age and number of seasons played in the NFL.

**If a retired player's condition worsens over time, he may apply for a supplemental payment?**

Yes. The player can receive supplemental payment if his condition worsens and he is diagnosed with a qualifying condition (ALS, Alheimers, Parkinsons, Death with CTE, Severe cognitive decline)

**Is a player eligible to become part of this lawsuit if they are not part of the current concussion lawsuits?**

The proposed settlement contains language that makes it a "Class Settlement". This means it includes the approximately 4,500 players who have already filed suit, as well as the approximately 14,000 players that have not filed their claim as to date.

**Should retired players join the action now and if so how should they join? Through an attorney or on their own?**

Assuming the proposed settlement is approved by the Court and that all retired players become part of the "Class", any retired player who is currently unrepresented should hire an attorney now to protect their rights under the settlement. No matter what those rights will be. This will become a process where any player who wants to receive medical testing or who is already diagnosed with a qualifying diagnosis must go through a process that will be set up by the Court upon final approval of the proposed settlement agreement.

**How is the actual "Class" defined?**

Assuming that the settlement receives preliminary Court approval, the proposed settlement "Class" would be made up of two different groups. The first group will be all retired players who are not currently diagnosed with a qualifying diagnosis under the settlement terms. The second group would be comprised of those retired players who have received a diagnosis that qualifies under the terms of the Agreement.

**Can a player opt out of the settlement if he doesn't like the terms?**

Yes. I suspect many players are talking about the benefits of opting out of the settlement because they don't like what they are hearing about some of its' terms. I believe the settlement is reasonable, fair, and just to most of the players. There may be instances where a retired player with a specific set of circumstances decides to opt out, however for 95% it is a win-win. It protects retired players from a medical standpoint, compensates those who are truly injured, and protects the future for those players who become ill.

# Benefit Highlights

**The Proposed Settlement compensates those former players that are truly injured. It provides medical testing and treatment for those players who are experiencing symptoms, and it protects all former players who not currently experiencing any symptoms.**

The National Football League and counsel for the retired player plaintiffs have reached a settlement agreement in the NFL concussion litigation, pending in the U.S. District Court for the Eastern District of Pennsylvania. The Court granted preliminary approval of the settlement on July 7, 2014 and heard arguments at the final fairness hearing held on 11/19/2014 in regard to the fairness of the proposed settlement.

Judge Anita Brody wrote in her order granting preliminary approval, "A class action settlement that offers prompt relief is superior to the likely alternative – years of expensive, difficult, and uncertain litigation, with no assurance of recovery, while retired players' physical and mental conditions continue to deteriorate."

Under the settlement, the NFL will fund baseline examinations, monetary awards and education programs. The NFL's obligations under the Monetary Award Fund will NOT be capped at any specified amount. This means that once the compensation program is established, funds will be available to any retired player who develops a qualifying neurocognitive condition for the next 65 years. The benefits and eligibility criteria are summarized below.

## I. Baseline Assessment Program (BAP)

**Who?** The BAP is available to all living retired players who have earned at least one-half of an eligible season.

**What?** Retired players will be eligible to receive a baseline neuropsychological and neurological examination, which will use a variety of tests to determine whether they are currently suffering from any type of neurocognitive impairment.

- Players diagnosed with Level 1 Neurocognitive Impairment (*i.e.*, moderate cognitive impairment) will receive supplemental medical benefits that can be used for further testing and treatment.
- Players diagnosed with a qualifying neurocognitive condition (list below) will be eligible to apply for and receive compensation under the Monetary Award Fund.

**When?** Retired players will have from two to ten years, depending on their age as of the settlement's effective date, to have a baseline examination conducted.

- Retired players 43 and older must receive a baseline examination within two years of the start of the program.
- Retired players under 43 must be examined within 10 years of commencement of the program or before they turn 45, whichever is earlier.

**Where?** Baseline examinations will be conducted through a nationwide network of qualified and independent medical providers (not NFL-appointed doctors).

**Why?** This program will protect all retired players by providing them with the examinations and preventive care needed to avert or treat potentially serious neurocognitive conditions.

**How?** Retired players must register for settlement benefits before they can participate in the BAP program. Registration will be available after the Court grants final approval of the settlement.

*II. Monetary Award Fund (MAF)*

**Who?** Retired players diagnosed with ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia), Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) or death with CTE prior to July 7, 2014.

- ○ Spouses and other representatives for deceased retired players diagnosed with one of these qualifying diagnoses will also be eligible to receive monetary compensation. If the deceased retired player died before January 1, 2006, the Representative Claimant will only receive a monetary award if the Court determines that a wrongful death or survival claim is allowed under applicable state law.

**What?** All valid claims under the Settlement, without limitation, will be paid in full throughout the 65-year life of the Settlement (the "Monetary Award Fund"). The maximum monetary awards for each diagnosis are:

| Qualifying Diagnosis | Maximum Award Available |
|---|---|
| Amyotrophic lateral sclerosis (ALS) | $5 million |
| Death with CTE (diagnosed after death) | $4 million |
| Parkinson's Disease | $3.5 million |
| Alzheimer's Disease | $3.5 million |
| Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia) | $3 million |
| Level 1.5 Neurocognitive Impairment (early Dementia) | $1.5 million |

The exact amount of a player's monetary award will depend on several factors – such as age of diagnosis, number of eligible seasons played, a prior stroke or traumatic brain injury unrelated to NFL football, and participation in the BAP. Retired players do not need to prove that a qualifying diagnosis was caused by playing professional football in order to receive compensation.

**When?** Retired NFL Football Players and Representative Claimants for retired players who are diagnosed by the date of Final Settlement Approval must submit claims for monetary awards within two years of the date that further notice about the registration process and deadlines is posted on www.NFLConcussionSettlement.com. Retired NFL Football Players and Representative Claimants for retired players who are diagnosed after the date of Final Settlement Approval have two years from the date of diagnosis to file claims. This deadline may be extended up to an additional two years upon a showing of substantial hardship. All claims must be submitted by the end of the 65-year term of the Monetary Award Fund.

**Why?** The MAF will compensate retired players and/or their families who are currently suffering from or died with a qualifying neurocognitive condition. It will also provide compensation to retired players if they are diagnosed with a qualifying neurocognitive condition at any point within the next 65 years.

**How?** To receive compensation, retired players must be registered for the settlement. Registration will be available once final approval of the settlement is granted. All qualifying diagnoses will be made by a list of qualified and independent medical providers approved by the Claims Administrator (not NFL-appointed doctors). Those who have received a diagnosis prior to Effective Date of settlement can submit claim to Appeals Advisory Panel.

### III. Other Benefits

- ○ **Players retain current benefits.** This settlement leaves intact all current benefit programs offered by the NFL to retired players. These benefits include the 88 Plan, the NFL Player Supplemental Disability Plan, including the Neuro-Cognitive Disability Benefit, and the NFL Player Retirement Plan. No retired player will have to choose between collecting his CBA benefits and receiving compensation under this deal.
- ○ **Players retain workers' compensation rights.** Retired players can still pursue workers' compensation claims against NFL teams. If an injured player wins a worker's compensation claim against an NFL team, he can collect his workers compensation award AND receive payment under the settlement.
- ○ **The Monetary Award Fund is fully guaranteed.** As part of this agreement, the NFL must pay all eligible claims for the 65-year life of the fund, guaranteeing that this vital program will be available to any retired player who needs it.

### IV. Claims Process

- ○ **BAP and MAF will be run by independent administrators.** Administrators will be selected and approved by the Court. The NFL will not determine who is eligible for benefits under this agreement, and the NFL will not appoint the physicians who provide testing and diagnoses.
- ○ **Must register to receive benefits.** To be eligible for the Baseline Assessment Program or the Monetary Award Fund, retired players must register 180 days after the independent administrator announces the registration requirements on the website and automated phone line.
- ○ **Monetary award determination.** Upon its review of the Claim Package, independent administrators will determine the amount and whether a player qualifies for a monetary award.

All Rights Reserved
PlayerInjury.com

Disclaimer / All Rights Reserved 2015

clomid successClomid isn't an anabolic androgenic steroid. But nevertheless it is one of the group from the sexual the body's hormones because this can be a synthetical estrogen.Within the common medication, as the rule, it can be used for the actual stimulation from the ovulation within women who wish to become expecting and get rid of dysfunctions from the ovaries.Pharmacy online usa Dapoxetine is also perfectly compatible to the preparations strengthening an erection, besides, together with Viagra its effect repeatedly increases and by that the pleasure lasts.purchase dapoxetine