# EXHIBIT H-3

# NFL Concussion Litigation FAQ'S

The analysis below and the FAQ's that follow are presented to help educate and inform all retired NFL players about the preliminarily approved concussion settlement that currently awaits final approval.

Many former NFL players appear to be misinformed, or not informed at all, about the terms of the proposed NFL concussion settlement that has recently undergone a final fairness hearing on 11/19/2014.  Hopefully the below information will help explain the pending settlement in a clear and simple way.

If I am retired NFL player what does this proposed "Class" settlement mean to me?

An easy way to look at it is that you fall into one of three categories:

"Asymptomatic", "Symptomatic", or "Diagnosed". If you are "Asymptomatic" that means that you have no current symptoms that indicate head trauma, such as short term memory loss, headaches, tingling in your hands or feet, or bouts depression and/or anxiety. If you are "Symptomatic" then you are experiencing one or more of the above symptoms. The last category is "Diagnosed". If you are diagnosed with ALS, Alzheimer's, Parkinson's, or Severe Cognitive Decline such as Dementia, you are considered Diagnosed. The only other condition that applies as a qualifying condition is "Death with CTE".

Now understanding where you fit in, if you are "Asymptomatic" and you become "Symptomatic", the way the proposed settlement is structured, you will be entitled to medical testing and medical benefits to treat your symptoms. If you then, at some point in the future become diagnosed with a qualifying condition, you will be entitled to financial compensation.

If you are currently "Symptomatic" you will be able to register to be medically tested and then treated or financially compensated, if applicable. This will be a process.

The exact monetary compensation for any one player who is considered "Diagnosed" depends on several factors, including time in the league and age at the time of diagnosis. This is not the sort of "Class Action" where you fill out a form and then receive financial compensation or a health benefits card in the mail. It will be a process (assuming that the agreement receives final approval by Judge Brody). As part of the proposed settlement, there will be a Center set up to assist retired NFL players and their attorneys with the process of registering for medical testing, the process for receiving medical benefits and the process of filing a claim for financial compensation.

# The Proposed NFL Concussion "Class" Settlement

## Proposed Settlement Highlights

- NFL would pay $765 million plus legal costs, but admits no wrongdoing.

- Individual awards would be capped at $5 million for players suffering from Alzheimer's disease.

- Individual awards would be capped at $4 million for deaths from chronic traumatic encephalopathy.

- Individual awards would be capped at $3 million for players suffering from severe cognitive decline.

- Money would go toward medical exams and concussion-related compensation for NFL retirees and their families, and $10 million toward medical research.

- Senior U.S. District Judge Anita Brody in Philadelphia must approve the settlement.

Many former NFL players appear to be misinformed, or not informed at all, about the terms of the proposed NFL concussion settlement that has recently been announced. Hopefully the below information will help explain the benefit of the settlement to retired NFL players in a clear and simple way.

## LEGAL ANALYSIS OF NFL "PROPOSED CONCUSSION SETTLEMENT"

By: Craig Mitnick, Esq. / Mitnick Law Office

### If I am retired NFL player what does this proposed "Class" settlement mean to me?

An easy way to look at it is that you fall into one of three categories: "Asymptomatic", "Symptomatic", or "Diagnosed". If you are "Asymptomatic" that means that you have no current symptoms that indicate head trauma, such as short term memory loss, headaches, tingling in your hands or feet, or bouts depression and/or anxiety. If you are "Symptomatic" then you are experiencing one or more of the above symptoms. The last category is "Diagnosed". If you are diagnosed with ALS, Alzheimer's, Parkinson's, or Severe Cognitive Decline such as Dementia, you are considered Diagnosed. The only other condition that applies as a qualifying condition is "Death with CTE".

Now understanding where you fit in, if you are "Asymptomatic" and you become "Symptomatic", the way the proposed settlement is structured, you will be entitled to medical testing and medical benefits to treat your symptoms. If you then, at some point in the future become diagnosed with a qualifying condition, you will be entitled to financial compensation.

If you are currently "Symptomatic" you will be able to register to be medically tested and then treated or financially compensated, if applicable. This will be a process.

The exact monetary compensation for any one player who is considered "Diagnosed" depends on several factors, including time in the league and age at the time of diagnosis. This is not the sort of "Class Action" where you fill out a form and then receive financial compensation or a health benefits card in the mail. It will be a process (assuming that the agreement receives final approval by Judge Brody). As part of the proposed settlement, there will be a Center set up to assist retired NFL players and their attorneys with the process of registering for medical testing, the process for receiving medical benefits and the process of filing a claim for financial compensation.

## What happens now?

Once receiving the Agreement, the Court must preliminarily rule upon whether the terms of the Agreement appear fair to the parties involved. If the court preliminarily approves the Agreement, than almost every former NFL player (whether included in the current litigation or not) will receive formal notice in the mail advising them of the Agreement's actual terms.

## What does the "Class" mean?

The proposed settlement is defined by a "Class." This means it includes the approximately 4,500 players who have already filed suit, as well as the approximately 14,000 other living NFL players. The proposed "Class" includes all living retired players; from a player that played solely on a practice squad to a long time vested player. If you are diagnosed with any neurological condition set forth in the proposed settlement, you will be entitled to a monetary award. The exact amount of any one player's recovery (if eligible) will depend on their age and how long they played in the league. For those retired players who have symptoms of cognitive decline but are undiagnosed, the player will be able to be medically tested and if diagnosed with a qualifying diagnosis, they will receive financial compensation.

## I am currently receiving disability or some other benefit from the NFL. Could my involvement in this "Class" settlement jeopardize or lower my NFL disability payments?

The answer is absolutely NO. The NFL has agreed to not have a concussion claim reduce or affect a player's other benefits (i.e. Disability Payments, Neuro-Cognitive Benefits, and/or 88 Plan Benefits. In simple terms, there is no effect on any NFL benefit policies if a former player has already filed a claim or files a claim in the future. This is a really beneficial clause for the players because they can still collect all forms of disability, including 88 Plan Benefits, and neuro-cognitive benefits with no financial penalty to the player on any benefit. Whether it is total impairment; line of duty; or neurological/cognitive benefits, now or in the future, any concussion claim is separate and apart.

**Who is contributing the monies that will be paid to the players for financial damages and medical testing?**

The NFL and NFL Properties will contribute:

1. $75 million for baseline medical exams so every retired player will have access to be examined by an approved medical professional;
2. $675 million to compensate those former players who have been diagnosed with cognitive injuries. This amount is anticipated to cover damages for those players with serious injury now, or who develop serious injury in the future;
3. $10 million for research and education.
4. Attorney fees will be paid by the NFL. The attorney fee award will be determined by the Court upon the final approval of the proposed "Class" settlement. Attorney fees are not included in the $675 million for player injury compensation fund.

**What is a Baseline Medical Examination?**

The Baseline Assessment Program (BAP) allows every retired player to be seen by an independent licensed neuropsycholgist, and /or board certified neurologist and to receive a base level cognitive assessment in order to determine if the player has any symptoms of cognitive decline. If there is no current diagnosis of a qualifying condition, the doctor will provide a report that may be used to establish a diagnosis in the future.The Baseline Assessment Program is the core mechanism for which a player's claim will be handled. If a player decides to get evaluated, treated, or diagnosed and does not utilize the BAP mechanism, that player could be financially penalized if he recovers any monetary award.

**What is the Injury Compensation Fund?**

Injury Compensation Fund.  For those players eligible to collect monies (those players that are diagnosed with a qualifying diagnosis), will get part of the $675 million Injury Compensation Fund that will be put together by the NFL.  The precise amount of compensation to any one player will be based upon a specific

diagnosis, as well as factors including age and number of seasons played in the NFL.

**If a retired player's condition worsens over time, he may apply for a supplemental payment?**

Yes. The player can receive supplemental payment if his condition worsens and he is diagnosed with a qualifying condition (ALS, Alzheimers, Parkinsons, Death with CTE, Severe cognitive decline)

**Is a player eligible to become part of this lawsuit if they are not part of the current filed concussion lawsuits?**

The proposed settlement contains language that makes it a "Class Settlement". This means it includes the approximately 4,500 players who have already filed suit, as well as the approximately 14,000 players that remain eligible to receive testing and treatment, and financial compensation, if applicable; as well as those families whose family member was an NFL Player and was diagnosed with a qualifying condition. All players become automatic "Class" members by virtue of the settlement itself (if approved).

**Can a decision or denial of benefits be appealed?**

Yes. If you believe that the claim Administrator unfairly denied your injury award or that the award you received was incorrect, then you or your attorney can appeal and reverse the decision by proving by clear and convincing evidence that your decision should be reevaluated.

**Can a player opt out of the settlement if he doesn't like the terms?**

Yes. I suspect many players are talking about the advantages or disadvantages of opting out of the settlement. I personally advise against opting out of the proposed settlement unless you are in a very unique situation that you believe clearly is not addressed by the settlement. This would have to be a very rare situation. I strongly recommend supporting the proposed settlement as I believe that it is fair and more than reasonable to those players who are injured now and it protects those players who may become ill in the future. It is a refreshing settlement because it compensates those who are truly injured, and protects the future for those who truly become ill.

Mitnick Law Office, LLC
© 2013 All Rights Reserved
1.856.427.9000
1.877.MITNICK

# Frequently Asked Questions about the NFL Concussion Litigation and Proposed Settlement

**1) What is the concussion lawsuit about, and why should I be represented by the Mitnick Law Office?**

The concussion litigation alleges that the NFL actively and purposefully concealed and misrepresented the severe neurological risks of concussions and exposed players to dangers they could have avoided had the League provided them with truthful and accurate information. Over 1,00 retired players currently suing the NFL have put their faith in the Mitnick Law Office and in Craig Mitnick personally. Check out the "Testimonials" section and that let's t all.

When you read the concussion Complaints against the NFL, you will see that many of the allegations are about misrepresentation and fraud by the NFL. Currently, over 4500 retired players have joined the action prior to it becoming a possible Class. Craig mitnick personally played a major role in gathering together over 1,100 retired players to join the cause. One quarter of all of the plaintiffs' in the action. If not for Craig's passion for the cause and legal expertise, the fight for retired players would have been far less powerful.

**2) What does it mean when they say that all federal court cases have been centralized under the U.S. District Court in Philadelphia?**

Because there are numerous suits that were filed in Federal Court different states throughout the entire country, all of the suits have been consolidated in a Multi-District Litigation and sent to Philadelphia Federal Court for disposition. This includes the class action Complaint and all individual personal injury Complaints that have been filed on behalf of players.

**3) I have heard that some cases may fall under a Class Action lawsuit and some may be litigated individually. Could you explain this in more detail?**

There are two components to the concussion litigation. The first is the class action component. The class action seeks medical monitoring and associated health benefits on behalf of all former NFL players. The second is the personal injury component. Any player that has suffered a concussion (diagnosed or undiagnosed by a physician) and has symptoms, for example (and this is not meant to be a complete list) short-term memory loss, headaches, tingling in the extremities, depression or anxiety may file a personal injury action against the NFL.

**4) I am currently receiving disability from the NFL. Could my involvement in this lawsuit jeopardize my NFL disability payment?**

There are three types of disability: total impairment; line of duty; and neurological and cognitive. Your involvement in the concussion litigation does not affect any total or permanent disability benefits or line of duty benefit payments. The neurological and cognitive benefit was introduced in the 2011 CBA. The full details are still being determined; however, to qualify for these benefits a player must be vested for a credited season after 1994. Any 88 plan payments will not be affected by any recover in the concussion litigation action.

**5) If I am currently receiving disability or SSI from the Federal Government, how would that affect me if I receive an award under this litigation?**

Filing a suit for the concussion litigation against the NFL and ultimately recovering damages has no effect on SSD (Social Security Disability) but any damage recovery could affect your eligibility status with SSI (Social Security supplemental income).

**6) I have retained the services of a Workers Compensation attorney and have filed a claim in California. How would this litigation affect my Workers Comp if I were to receive an award under Workers Comp and an award under this lawsuit?**

The workers compensation claims in California are independent from the concussion claims against the NFL, beginning with the premise that the workers compensation claims seek damages from defendants other than the NFL. The cases in California have been filed against individual football clubs, separate entities from the NFL, and we are not suing the individual clubs.. Players have a right to file both claims and can recover damages in both. If you have already filed a claim for workers' compensation and you decide to participate in this litigation, it is important that you inform the attorney handling that claim that you are doing so.

**7) If the Firm wins the case (class or individual), how are costs and attorney fees determined?**

For the class action aspect of the concussion litigation, any cost reimbursement for money expended on behalf of class plaintiffs and any fees for plaintiff attorney's time will be determined by the court and ultimately paid by the Defendant. With regard to the personal injury claims, Mitnick Law Office Retainer Agreement specifies a 33-1/3% contingent fee that is taken by the firm for its services only if there is a successful recovery on behalf of the player. The Retainer Agreement also states that the agreed upon fee amount of 33.3% shall be automatically reduced if the Court reduces the agreed upon 33.3% fee as part of any Final Settlement Order. That fee would then be calculated on the gross recovery and then our firm would get reimbursed for costs expended on the specific player's case, with the remaining net amount then going entirely to the player.

© 2013 Player injury / disclaimer

# FAQ's :
# The Proposed NFL "Class" Settlement

**Proposed Settlement Highlights**

• NFL would pay $765 million plus legal costs, but admits no wrongdoing.

• Individual awards would be capped at $5 million for players suffering from Alzheimer's disease.

• Individual awards would be capped at $4 million for deaths from chronic traumatic encephalopathy.

• Individual awards would be capped at $3 million for players suffering from severe cognitive decline.

• Money would go toward medical exams and concussion-related compensation for NFL retirees and their families, and $10 million toward medical research.

• Senior U.S. District Judge Anita Brody in Philadelphia must approve the settlement.

**The analysis below and the FAQ's that follow are presented to help educate and inform former NFL players about the proposed settlement and why the settlement is so beneficial to Former players and their families.**

**Many former NFL players appear to be misinformed, or not informed at all, about the terms of the proposed NFL concussion settlement that has recently been announced. Hopefully the below information will help explain the benefit of the settlement to retired NFL players in a clear and simple way.**

**If I am retired NFL player what does this proposed "Class" settlement mean to me?**

An easy way to look at it is that you fall into one of three categories: "Asymptomatic", "Symptomatic", or "Diagnosed". If you are "Asymptomatic" that means that you have no current symptoms that indicate head trauma, such as short term memory loss, headaches, tingling in your hands or feet, or bouts depression and/or anxiety. If you are "Symptomatic" then you are experiencing one or more of the above symptoms. The last category is "Diagnosed". If you are diagnosed with ALS, Alzheimer's, Parkinson's, or Severe Cognitive Decline such as Dementia, you are considered Diagnosed. The only other condition that applies as a qualifying condition is "Death with CTE".

Now understanding where you fit in, if you are "Asymptomatic" and you become "Symptomatic", the way the proposed settlement is structured, you will be entitled to medical testing and medical benefits to treat your symptoms. If you then, at some point in the future become diagnosed with a qualifying condition, you will be entitled to financial compensation.

If you are currently "Symptomatic" you will be able to register to be medically tested and then treated or financially compensated, if applicable. This will be a process.

The exact monetary compensation for any one player who is considered "Diagnosed" depends on several factors, including time in the league and age at the time of diagnosis. This is not the sort of "Class Action" where you fill out a form and then receive financial compensation or a health benefits card in the mail. It will be a process (assuming that the agreement receives final approval by Judge Brody). As part of the proposed settlement, there will be a Center set up to assist retired NFL players and their attorneys with the

process of registering for medical testing, the process for receiving medical benefits and the process of filing a claim for financial compensation.

**What happens now?**

Once receiving the Agreement, the Court must preliminarily rule upon whether the terms of the Agreement appear fair to the parties involved. If the court preliminarily approves the Agreement, than almost every former NFL player (whether included in the current litigation or not) will receive formal notice in the mail advising them of the Agreement's actual terms.

**What does the "Class" mean?**

The proposed settlement is defined by a "Class." This means it includes the approximately 4,500 players who have already filed suit, as well as the approximately 14,000 other living NFL players. The proposed "Class" includes all living retired players; from a player that played solely on a practice squad to a long time vested player. If you are diagnosed with any neurological condition set forth in the proposed settlement, you will be entitled to a monetary award. The exact amount of any one player's recovery (if eligible) will depend on their age and how long they played in the league. For those retired players who have symptoms of cognitive decline but are undiagnosed, the player will be able to be medically tested and if diagnosed with a qualifying diagnosis, they will receive financial compensation.

**I am currently receiving disability or some other benefit from the NFL. Could my involvement in this "Class" settlement jeopardize or lower my NFL disability payments?**

The answer is absolutely NO. The NFL has agreed to not have a concussion claim reduce or affect a player's other benefits (i.e. Disability Payments, Neuro-Cognitive Benefits, and/or 88 Plan Benefits. In simple terms, there is no effect on any NFL benefit policies if a former player has already filed a claim or files a claim in the future. This is a really beneficial clause for the players because they can still collect all forms of disability, including 88 Plan Benefits, and neuro-cognitive benefits with no financial penalty to the player on any benefit. Whether it is total impairment; line of duty; or neurological/cognitive benefits, now or in the future, any concussion claim is separate and apart.

**Who is contributing the monies that will be paid to the players for financial damages and medical testing?**
The NFL and NFL Properties will contribute:

1. $75 million for baseline medical exams so every retired player will have access to be examined by an approved medical professional;
2. $675 million to compensate those former players who have been diagnosed with cognitive injuries. This amount is anticipated to cover damages for those players with serious injury now, or who develop serious injury in the future;
3. $10 million for research and education.
4. Attorney fees will be paid by the NFL. The attorney fee award will be determined by the Court upon the final approval of the proposed "Class" settlement. Attorney fees are not included in the $675 million for player injury compensation fund.

**What is a Baseline Medical Examination?**

The Baseline Assessment Program (BAP) allows every retired player to be seen by an independent licensed neuropsychologist, and /or board certified neurologist and to receive a base level cognitive assessment in order to determine if the player has any symptoms of cognitive decline. If there is no current diagnosis of a qualifying condition, the doctor will provide a report that may be used to establish a diagnosis in the future.The Baseline Assessment Program is the core mechanism for which a player's claim will be handled.

If a player decides to get evaluated, treated, or diagnosed and does not utilize the BAP mechanism, that player could be financially penalized if he recovers any monetary award.

### What is the Injury Compensation Fund?

Injury Compensation Fund.  For those players eligible to collect monies (those players that are diagnosed with a qualifying diagnosis), will get part of the $675 million Injury Compensation Fund that will be put together by the NFL.  The precise amount of compensation to any one player will be based upon a specific diagnosis, as well as factors including age and number of seasons played in the NFL.

### If a retired player's condition worsens over time, he may apply for a supplemental payment?

Yes. The player can receive supplemental payment if his condition worsens and he is diagnosed with a qualifying condition (ALS, Alzheimers, Parkinsons, Death with CTE, Severe cognitive decline)

### Is a player eligible to become part of this lawsuit if they are not part of the current filed concussion lawsuits?

The proposed settlement contains language that makes it a "Class Settlement". This means it includes the approximately 4,500 players who have already filed suit, as well as the approximately 14,000 players that remain eligible to receive testing and treatment, and financial compensation, if applicable; as well as those families whose family member was an NFL Player and was diagnosed with a qualifying condition. All players become automatic "Class" members by virtue of the settlement itself (if approved).

### Can a decision or denial of benefits be appealed?

Yes. If you believe that the claim Administrator unfairly denied your injury award or that the award you received was incorrect, then you or your attorney can appeal and reverse the decision by proving by clear and convincing evidence that your decision should be reevaluated.

### Can a player opt out of the settlement if he doesn't like the terms?

Yes. I suspect many players are talking about the advantages or disadvantages of opting out of the settlement. I personally advise against opting out of a proposed settlement unless you are in a very unique situation that you believe clearly is not addressed by the settlement. I strongly recommend supporting the proposed settlement as I believe that it is fair and more than reasonable to those players who are injured now and it protects those players who may become ill in the future. It is a refreshing settlement because it compensates those who are truly injured, and protects the future for those who truly become ill.

Disclaimer • Mitnick Law Office, LLC • Player Injury, LLC
© 2013 All Rights Reserved

**Must a retired player be vested under the NFL Retirement Plan to receive Settlement benefits?**

No. A retired player can be a Settlement Class Member regardless of whether he is vested due to credited seasons or total and permanent disability under the Bert Bell/Pete Rozelle NFL Player Retirement Plan.

**What is the Baseline Assessment Program**

The Baseline Assessment Program (BAP) allows every retired player to be seen by an independent licensed neuropsycholgist, and /or board certified neurologist and to receive a base level cognitive assessment in order to determine if the player has any symptoms of cognitive decline. If there is no current diagnosis of a qualifying condition, the doctor will provide a report that may be used to establish a diagnosis in the future. The Baseline Assessment Program is the core mechanism for which a player's claim will be handled. If a player decides to get evaluated, treated, or diagnosed and does not utilize the BAP mechanism, that player could be financially penalized if he recovers any monetary award.

**If a retired player's condition worsens over time, he may apply for a supplemental payment?**

Yes. The player can receive supplemental payment if his condition worsens and he is diagnosed with a qualifying condition (ALS, Alheimers, Parkinsons, Death with CTE, Mild to Moderate to Severe cognitive decline)

**Is a player eligible to become part of this lawsuit if they are not part of the current filed concussion lawsuits?**

The proposed settlement contains language that makes it a "Class Settlement". This means it includes the approximately 4,800 players who have already filed suit, as well as the approximately 14,000 players that remain eligible to receive testing and treatment, and financial compensation, if applicable; as well as those families whose family member was an NFL Player and was diagnosed with a qualifying condition. All players become automatic "Class" members by virtue of the settlement itself (if approved).

**Can a decision or denial of benefits be appealed?**

Yes. If you believe that the claim Administrator unfairly denied your injury award or that the award you received was incorrect, then you or your attorney can

appeal and reverse the decision by proving by clear and convincing evidence that your decision should be reevaluated.

**Can a player opt out of the settlement if he doesn't like the terms?**

Yes. A discussion is taking place in the homes of retired players around the country focusing on the advantages or disadvantages of staying in or opting out of the settlement. If you decide to opt out PLEASE read the section titled "Opting-Out" on the homepage so you truly understand the risks and consequences.

**What does the settlement mean for retired NFL players?**

The proposed settlement is defined by a "Class." This means it includes the approximately 4,500 players who have already filed suit, as well as the approximately 14,000 players that have not filed their claim as to date. The proposed "Class" includes all living retired players; from a player that played solely on a practice squad to a long time vested player. If you are diagnosed with any neurological condition set forth in the proposed settlement, you will be entitled to a monetary award. The exact amount of any one player's recovery (if eligible) will depend on their age and how long they played in the league. For those retired players who have symptoms of cognitive decline but are undiagnosed, the player will be able to be medically tested and if diagnosed with a qualifying diagnosis, they will receive financial compensation.

**Who is contributing the monies that will be paid to the players for financial damages and medical testing?**

The NFL and NFL Properties will contribute:

     1. $75 million for baseline medical exams so every retired player will have access to be examined by an approved medical professional;

     2. $675 million to compensate those former players who have been diagnosed with cognitive injuries. This amount is anticipated to cover damages for those players with serious injury now, or who develop serious injury in the future;

     3. $10 million for research and education.

     4. Attorney fees will be paid by the NFL. The attorney fee award will be determined by the Court upon the final approval of the proposed "Class" settlement. Attorney fees are not included in the $675 million for player injury compensation fund.

**What is a Baseline Medical Examination?**

Baseline Medical Examinations. This allows every eligible, retired player to be tested and receive a baseline medical assessment, the results of which will be used to establish a diagnosis, either now or in the future.

**What is the Injury Compensation Fund?**

Injury Compensation Fund. For those players eligible to collect monies (those players that are diagnosed with a qualifying diagnosis), will get part of the $675 million Injury Compensation Fund that will be put together by the NFL. The precise amount of compensation to any one player will be based upon a specific diagnosis, as well as factors including age and number of seasons played in the NFL.

**If a retired player's condition worsens over time, he may apply for a supplemental payment?**

Yes. The player can receive supplemental payment if his condition worsens and he is diagnosed with a qualifying condition (ALS, Alheimers, Parkinsons, Death with CTE, Severe cognitive decline)

**Is a player eligible to become part of this lawsuit if they are not part of the current concussion lawsuits?**

The proposed settlement contains language that makes it a "Class Settlement". This means it includes the approximately 4,500 players who have already filed suit, as well as the approximately 14,000 players that have not filed their claim as to date.

**Should retired players join the action now and if so how should they join? Through an attorney or on their own?**

Assuming the proposed settlement is approved by the Court and that all retired players become part of the "Class", any retired player who is currently unrepresented should hire an attorney now to protect their rights under the settlement. No matter what those rights will be. This will become a process where any player who wants to receive medical testing or who is already diagnosed with a qualifying diagnosis must go through a process that will be set up by the Court upon final approval of the proposed settlement agreement.

**How is the actual "Class" defined?**

Assuming that the settlement receives preliminary Court approval, the proposed settlement "Class" would be made up of two different groups. The first group will be all retired players who are not currently diagnosed with a qualifying diagnosis under the settlement terms. The second group would be comprised of those retired players who have received a diagnosis that qualifies under the terms of the Agreement.

**Can a player opt out of the settlement if he doesn't like the terms?**

Yes. I suspect many players are talking about the benefits of opting out of the settlement because they don't like what they are hearing about some of its' terms. I believe the settlement is reasonable, fair, and just to most of the players. There may be instances where a retired player with a specific set of circumstances decides to opt out, however for 95% it is a win-win. It protects retired players from a medical standpoint, compensates those who are truly injured, and protects the future for those players who become ill.

The analysis below and the FAQ's that follow are presented to help educate all retired NFL players with respect to the details of the NFL Concussion Litigation Settlement; and to simplify the Claims process that a retired player will need to follow in order to become eligible for medical and/or financial compensation.

The claim process will not begin until all appeals to the Settlement have been exhausted. At that time that formal Settlement registration process will begin. Details regarding that registration process; eligibility requirements for compensation; and applicable timelines are detailed below.

## THE MOST COMMONLY ASKED QUESTIONS

### What does "Asymptomatic", "Symptomatic", and "Diagnosed" mean and where do I fall within thsee categories?

An easy way to look at it is that you fall into one of the three high level categories; you are either asymptomatic, symptomatic, or you have already been formally diagnosed with a condition that entitles you to financial compensation".

If you are "Asymptomatic" that means that you have no current symptoms that indicate head trauma, such as short term memory loss, headaches, tingling in your hands or feet, or bouts depression and/or anxiety.

If you are "Symptomatic" then you are experiencing one or more of the above symptoms.

If you are diagnosed with ALS, Alzheimer's, Parkinson's, or are experiencing significant cognitive decline such as Dementia, you are considered Diagnosed.

Now understanding where you fit in, if you are "Asymptomatic" and you become "Symptomatic", the way the proposed settlement is structured, you will be entitled to medical testing and medical benefits to treat your symptoms. If you then, at some point in the future become diagnosed with a qualifying condition, you will be entitled to financial compensation.

If you are currently "Symptomatic" you will be able to register to be medically tested and then treated or financially compensated, if applicable. This will be a process.

The exact monetary compensation for any one player who is considered "Diagnosed" depends on several factors, including time in the league and age at

the time of diagnosis. a medical evaluation, medical benefits and/or financial compensation.

### *I am currently receiving disability or some other benefit from the NFL. Could my involvement in this "Class" settlement jeopardize or lower my NFL disability payments?*

The answer is absolutely NO. The NFL has agreed to not have a concussion claim reduce or affect a player's other benefits (i.e. Disability Payments, Neuro-Cognitive Benefits, and/or 88 Plan Benefits. In simple terms, there is no affect on any NFL benefit policies by being involved in the Concussion Settlement. There are NO discounts or offsets. This is a really beneficial clause for the players because they can still collect all forms of disability, including 88 Plan Benefits, and neuro-cognitive benefits with no financial penalty to the player on any benefit. Whether it is total impairment; line of duty; or neurological/cognitive benefits, now or in the future, any concussion claim is separate and apart.

### *Who is contributing the monies that will be paid to the players for financial damages and medical testing?*

The NFL and NFL Properties will contribute an unlimited / uncapped amount of money that will ensure that this settlement will benefit players for 65 years into the future.

### *What players are not included in the Settlement Class?*

The Settlement Class does not include current NFL players. The Settlement Class also does not include people who tried out for but did not make it onto preseason, regular season or postseason rosters or practice, developmental or taxi squads of the NFL or any Member Clubs.

### *What diagnoses qualify for monetary awards?*

Monetary awards are available for the diagnosis of ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (i.e., moderate Dementia), Level 1.5 Neurocognitive Impairment (i.e., early Dementia) or Death with CTE if death occurred from January 1, 2006 through July 7, 2014 (the

"Qualifying Diagnoses"). A Qualifying Diagnosis may occur at any time until the end of the 65-year term of the Monetary Award Fund.

*If a retired player receives a monetary award based on a Qualifying Diagnosis, and later is diagnosed with a different Qualifying Diagnosis that entitles him to a larger monetary award than his previous award, he will be eligible for an increase in compensation. This would also apply to Derivative Claimants.*

Qualifying Diagnoses must be made by approved qualified specialists. Any time prior to Final Settlement Approval, only board-certified neurologists, board-certified neurosurgeons or board-certified neuro-specialist physicians or similarly qualified specialists can make Qualifying Diagnoses. Following Final Settlement Approval, only qualified specialists approved by the Claims Administrator will be able to make Qualifying Diagnoses with the exception of Qualifying Diagnoses made through the BAP.

The level of neurocognitive impairment will be established in part with evidence of decline in performance in at least two areas subject to clinical evaluative testing, provided one of the areas is executive function, learning and memory, or complex attention, and related functional impairment as follows:

**DEGREE OF DECLINE GUIDELINES**
Level 1 Moderate cognitive impairment Moderate cognitive decline
Level 1.5 Early Dementia Moderate cognitive decline
Level 2 Moderate Dementia Severe cognitive decline

*What is the Injury Compensation Fund?*

For those players eligible to collect monies (those players that are diagnosed with a qualifying diagnosis), there will be a fund of an uncapped dollar amount (to be paid by the NFL). The precise amount of compensation to any one player will be based upon their specific diagnosis, as well as factors including age and number of seasons played in the NFL.

The actual amount will be determined based on each retired player's actual age at the time of diagnosis and on other potential adjustments.

### *Must a retired player be vested under the NFL Retirement Plan to receive Settlement benefits?*

No. A retired player can be a Settlement Class Member regardless of whether he is vested due to credited seasons or total and permanent disability under the Bert Bell/Pete Rozelle NFL Player Retirement Plan.

### *What is the Baseline Assessment Program*

The Baseline Assessment Program (BAP) allows every retired player to be seen by an independent licensed neuropsycholgist, and /or board certified neurologist and to receive a base level cognitive assessment in order to determine if the player has any symptoms of cognitive decline. If there is no current diagnosis of a qualifying condition, the doctor will provide a report that may be used to establish a diagnosis in the future.The Baseline Assessment Program is the core mechanism for which a player's claim will be handled. If a player decides to get evaluated, treated, or diagnosed and does not utilize the BAP mechanism, that player could be financially penalized if he recovers any monetary award.

### *If a retired player's condition worsens over time, he may apply for a supplemental payment?*

Yes. The player can receive supplemental payment if his condition worsens and he is diagnosed with a qualifying condition (ALS, Alheimers, Parkinsons, Death with CTE, Mild to Moderate to Severe cognitive decline)

### *Who is eligible to receive medical testing, treatment, and/or financial compensation under the Settlement?*

The settlement covers the approximately 5,000 players who initially filed suit, as well as every other member of the 20,000 retired player community. Whether you played a practice season or 10 years who may register to receive benefits.

### *Can a decision or denial of benefits be appealed?*

Yes. If you believe that the claim Administrator unfairly denied your injury award or that the award you received was incorrect, then you or your attorney can appeal and reverse the decision by proving by clear and convincing evidence

# NFL CONCUSSION SETTLEMENT FAQ'S
# As of April 18, 2016

Prepared By:
Craig Mitnick
Mitnick Law Office, LLC
856-427-9000
craig@mitnicklegal.com

## CASE HISTORY

The Court granted preliminary approval of the NFL Retired Player Concussion Litigation Settlement on July 7, 2014 and then heard arguments on the fairness of the Settlement terms on November 19, 2014. On April 4, 2015 the Settlement received final court approval and it was subsequently appealed by several retired players who argued that the terms of the Settlement were not fair. The matter was affirmed by the Third Circuit Court of Appeals on Monday April 18, 2016 after the Court found that the final settlement was reasonable and fair to retired NFL players.

One last appeal to the United States Supreme Court is available to appellants if they choose to file. If a further appeal is filed with the Supreme Court, the Court has the right to hear the appeal or to reject the request. If no further appeal is filed with the Supreme Court, or the Court rejects the request, benefits for Retired Players would be available shortly thereafter.

Once the Settlement benefits become available the NFL will fully fund medical examinations for all players and monetary awards those players that are injured. The NFL's financial obligations under the Settlement are not capped. This means that once the compensation program begins, funds will be available to any retired player who develops a qualifying neurocognitive condition for the next 65 years. The benefits and eligibility criteria for medical and financial benefits are summarized below.

## REGISTRATION FOR RETIRED PLAYERS

**Do retired players need to register in order to receive benefits?**

Yes. A retired player will be required to register within 180 days of final approval in order for the player to submit a claim for medical and/or financial benefits. Final Settlement approval means that the Settlement will become truly final *only* after all appeals from the final Order and Judgment have been exhausted.

Notice of when the Settlement registration process will begin will be available online, on the official litigation website located at (www.nflconcussionsettlement). Again, the mandatory

registration process will not become available to retired players until *after* all appeals have been exhausted. A player cannot register until that time.

---

## CLAIM ELIGIBILITY

**Are there any players who are not included in the Settlement Class?**

Yes. The Settlement Class does not include current NFL players. The Settlement Class also does not include any individuals who tried out for but did not make it onto the preseason, regular season, postseason active roster, practice, developmental roster, or taxi squad of the respective member club.

---

**Who is eligible to receive financial benefits?**

Monetary awards are available for the diagnosis of ALS, Parkinson's Disease, Alzheimer's Disease, moderate to severe Dementia (known as Level 2 Neurocognitive Impairment); early stage Dementia (known as Level 1.5 Neurocognitive Impairment and Death with CTE if the player's death occurred prior to July 7, 2014.

A player who develops any condition listed above within the next 65 years may submit a financial claim once they are formally diagnosed. A qualifying diagnosis must be made by a board certified neurologist, neurosurgeon, or neuro specialist who has been approved by the independent Settlement *Claims Administrator*. Approved doctors are not chosen, employed, or associated with the NFL. Approved physicians are part of a national network of doctors chosen by the Claims administrator. The network of doctors is extensive and the list will be made available to retired players once the registration process begins.

---

**Maximum financial awards for qualifying diagnosis**

| | |
|---|---|
| Early Stage Dementia (level 1.5) | $1.5 Million Dollars |
| Moderate to Severe Dementia (level 2) | $3 Million Dollars |

| | |
|---|---|
| Parkinson's Disease | $3.5 Million Dollars |
| Alzheimer's Disease | $3.5 Million Dollars |
| ALS | $5 Million Dollars |
| Death with CTE | $4 Million Dollars |

*\* These are maximum awards that will be offset by Eligible seasons and age at time of diagnosis*

---

**If a player is eligible for a monetary award, how will the amount of that award be determined?**

The exact amount of a player's monetary award will depend on several factors – such as age of diagnosis, number of eligible seasons played, whether the player has suffered a prior stroke or suffered from a traumatic brain injury that was unrelated to football. Each player's monetary award will be independently calculated. Retired players do not need to prove that their medical condition was caused by playing professional football in order to receive compensation. The longer a player played in the League, the greater the financial benefit.

The Settlement uses the term "Eligible Season" to count the seasons in which a retired player player or practiced in the NFL or AFL or World League. A retired player earns an eligible season for:

- Each season where he was on an NFL or AFL or World League Member Club's "Active List" for either three or more regular season or post-season games, or

- Where he was on an "Active List" for either three or more regular season or post-season games, and then spent two regular or post-season games on an injured reserve list or inactive list due to a concussion or head injury.

- A retired player also earns one-half of an eligible season for each season where he was on an NFL or AFL or World League Member Club's practice, developmental, or taxi squad for at least eight games, but did not otherwise earn an eligible season.

| Number of Eligible Seasons | Percentage of Reduction |
|---|---|
| 4.5 | 10% |
| 4 | 20% |
| 3.5 | 30% |
| 3 | 40% |

| | |
|---|---|
| 2.5 | 50% |
| 2 | 60% |
| 1.5 | 70% |
| 1 | 80% |
| .5 | 90% |
| 0 | 97.5% |

The Settlement uses the term "Age at the time of diagnosis". This is the age of a Retired Player when they are *formally* diagnosed with a qualifying condition. Discounts from any player's maximum award are as follows:

| Age Group | ALS | Death w/CTE | Parkinson's | Alzheimer's | Level 2 | Level 1.5 |
|---|---|---|---|---|---|---|
| Under 45 | $5M | $4M | $3.5M | $3.5M | $3M | $1.5M |
| 45-49 | $4.5M | $3.2M | $2.47M | $2.3M | $1.9M | $9.50M |
| 50-54 | $4M | $2.3M | $1.9M | $1.6M | $1.2M | $600K |
| 55-59 | $3.5M | $1.4M | $1.3M | $1.15M | $950K | $475K |
| 60-64 | $3M | $1.2M | $1M | $950K | $580K | $290K |
| 65-69 | $2.5M | $980K | $760K | $620K | $380 | $190K |
| 70-74 | $1.75M | $600K | $475K | $380K | $210K | $105K |
| 75-79 | $1M | $160K | $145K | $130K | $80K | $40K |
| 80+ | $300K | $50K | $50 | $50 | $50 | $25 |

**Must a retired player be vested under the NFL Retirement Plan to receive Settlement benefits?**

No. A retired player can be a Settlement Class Member regardless of whether he is vested or not (due to credited seasons or total and permanent disability under the Bert Bell/Pete Rozelle NFL Player Retirement Plan).

**If a retired player's condition worsens over time, may he apply for a supplemental payment?**

Yes. If a retired player receives a monetary award based on a qualifying diagnosis, and later is diagnosed with a more severe qualifying diagnosis, he will be eligible for a larger monetary award than previously received. An example would be a player who is diagnosed with early dementia and is entitled to a $1.5 million Dollar award and later is diagnosed with more severe dementia that entitles him to a $3 million Dollar award, he may recover the difference of $1.5 million Dollars upon the showing of the more severe diagnosis.

---

**Are there any time restrictions for submitting a Claim?**

Retired NFL Players and Representative Claimants for retired players who have received a formal diagnosis by the date of Final Settlement Approval (after all Settlement appeals have been exhausted) must submit their claim for monetary awards within two years.

Retired NFL Players and Representative Claimants for retired players who are diagnosed after the date of Final Settlement Approval have two years from the date of their diagnosis to file their claim. This deadline may be extended up to an additional two years upon a showing of substantial hardship.

---

**Can a Retired Player's involvement in the concussion Settlement jeopardize or lower their current or future NFL disability payments?**

The NFL has agreed to not have a concussion claim reduce or affect a player's other benefits (i.e. Disability Payments, Neuro-Cognitive Benefits, and/or 88 Plan Benefits. In simple terms, there is no affect on any NFL benefit policies by being involved in the Concussion Settlement. There are NO discounts or offsets. This is a really beneficial clause for the players because they can still collect all forms of disability, including 88 Plan Benefits, and neuro-cognitive benefits with no financial penalty to the player on any benefit. Whether it is total impairment; line of duty; or neurological/cognitive benefits, now or in the future, any concussion claim is separate and apart.

---

**Can a decision or denial of benefits be appealed?**

If a player believes that the Claim Administrator unfairly denied his injury award or that the award received was incorrect, then the player or their attorney can appeal and reverse the decision by proving clear and convincing evidence.

---

**How does a Claimant file a claim on behalf of a deceased player?**

The proof a Representative Claimant must submit to show that a deceased player received a Qualifying Diagnosis depends on the date of the player's death and the type of injury.

If the player dies before the effective date of the Settlement Agreement, the Representative Claimant may establish Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, or ALS by submitting medical records showing a diagnosis of such condition made before the player died. The diagnosis must have been made by properly credentialed physicians, as described in Section 6.3(e) of the Settlement Agreement.

The Representative Claimant of a player who died before the Final Approval Date may establish Death with CTE by submitting medical records showing a diagnosis of Death with CTE made by a board-certified neuro-pathologist after the player's death and before the Final Approval Date. If the player died between July 7, 2014 and the Final Approval Date, his Representative Claimant has until 270 days after the player's death to obtain the post-mortem diagnosis. Players who died on or after the Final Approval Date (which has not yet occurred) are not eligible for benefits for Death with CTE.

All Claimants, including Representative Claimants of deceased players, also must submit a Diagnosing Physician Certification signed by the physician who made the qualifying diagnosis, except that representative claimants of players who die before the effective date do not have to submit a diagnosing physician certification if the physician who made the qualifying diagnosis also died before the Effective Date, or was deemed legally incapacitated or incompetent prior to that date, but they do have to submit evidence of the physician's death, incapacity or incompetence, and of his or her qualifications.

A Representative Claimant of a player who died before January 1, 2006 also must establish that the claim is not time-barred.

## THE MEDICAL COMPONENT OF THE SETTLEMENT

### What is the Baseline Assessment Program?

The Baseline Assessment Program (BAP) allows every retired player to be seen by an independent licensed neuropsychologist, and /or board certified neurologist and to receive a base level cognitive assessment in order to determine if the player has any symptoms of cognitive decline. If there is no current diagnosis of a qualifying condition, the doctor will provide a report that may be used to establish a diagnosis in the future. The Baseline Assessment Program is the core mechanism for which a player's claim will be handled. If a player decides to get evaluated, treated, or diagnosed and does not utilize the BAP mechanism, that player could be financially penalized by a reduction of 10% if he recovers any monetary award.

### Who is eligible to receive medical testing and/or medical treatment under the Settlement?

The settlement covers the approximately 5,000 players who initially filed suit, as well as every other member of the approximately 20,000 member retired NFL player community. Whether a player played a practice season or 10 years in the League, the player may Register to receive a comprehensive medical exam and then receive follow up treatment if applicable.

## What can a player expect from the Baseline Assessment Program?

Retired players will be eligible to receive a baseline neuropsychological and neurological examination, which will use a variety of tests to determine whether they are currently suffering from any type of neurocognitive impairment. If the player's testing shows a level of cognitive impairment that warrants treatment, treatment will be covered. If the player's baseline examination shows that the player is suffering from a qualified diagnosis than that player will receive financial compensation as set forth above.

## Can a player receive additional medical testing after their initial baseline examination?

Players diagnosed with Level 1 Neurocognitive Impairment (no formal diagnosis of dementia, however exhibit symptoms of cognitive impairment) will receive supplemental medical benefits including further testing and treatment. The initial comprehensive evaluation will at a minimum provide a baseline for future testing and treatment.

## What is the time frame in which a player can receive a baseline evaluation?

Retired players will have from two to ten years, depending on their age as of the Settlement's effective date (when all appeals have been exhausted) to have a baseline medical examination conducted.

Retired players 43 and older must receive a baseline examination within two years of the start of the program.

Retired players under 43 must be examined within 10 years of commencement of the program or before they turn 45, whichever is earlier.

## Who establishes the network of board certified doctors who will be evaluating, treating and diagnosing retired players?

Baseline examinations will be conducted through a nationwide network of qualified and independent medical providers (not NFL-appointed doctors). The medical component of the

Settlement is headed up by an independent medical Claim administrator who is appointed by the court. The NFL has NO control over the testing, treatment, or diagnosis of any player.

---

# INJURY DEFINITIONS

## Level 1 Neurocognitive Impairment

**(Cognitive decline that entitles a player to receive medical treatment but is not great enough for the player to immediately receive financial compensation)**

(a) For Retired NFL Football Players diagnosed through the BAP, a diagnosis of Level 1 Neurocognitive Impairment must meet the criteria set forth in subsections (i)-(iv) below:

(i) Concern of the Retired NFL Football Player, a knowledgeable informant, or the Qualified BAP Provider that there has been a decline in cognitive function.

(ii) Evidence of moderate cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in two or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual- spatial), provided one of the cognitive domains is (a) executive function, (b) learning and memory, or (c) complex attention.

(iii) The Retired NFL Football Player exhibits functional impairment generally consistent with the criteria set forth in the National Alzheimer's Coordinating Center's Clinical Dementia Rating scale Category 0.5 (Questionable) in the areas of Community Affairs, Home & Hobbies, and Personal Care.

(iv) The cognitive deficits do not occur exclusively in the context of a delirium, acute substance abuse, or as a result of medication side effects.

*Level 1 Neurocognitive Impairment, for the purposes of this Settlement Agreement, may only be diagnosed by Qualified BAP Providers during a BAP baseline assessment examination, with agreement on the diagnosis by the Qualified BAP Providers.*


## Level 1.5 Neurocognitive Impairment

**(Cognitive impairment entitling a player to receive financial compensation of a maximum $1.5 Million Dollars)**

(a) For Retired NFL Football Players diagnosed through the BAP, a diagnosis of Level 1.5 Neurocognitive Impairment must meet the criteria set forth in subsections (i)-(iv) below:

(i) Concern of the Retired NFL Football Player, a knowledgeable informant, or the Qualified BAP Provider that there has been a severe decline in cognitive function.

(ii) Evidence of a moderate to severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in two or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual-spatial), provided one of the cognitive domains is (a) executive function, (b) learning and memory, or (c) complex attention.

(iii) The Retired NFL Football Player exhibits functional impairment generally consistent with the criteria set forth in the National Alzheimer's Coordinating Center's Clinical Dementia Rating (CDR) scale Category 1.0 (Mild) in the areas of Community Affairs, Home & Hobbies, and Personal Care. Such functional impairment shall be corroborated by documentary evidence (e.g., medical records, employment records), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis. In the event that no documentary evidence of functional impairment exists or is available, then

(a) there must be evidence of moderate to severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in the executive function cognitive domain or the learning and memory cognitive domain, and at least one other cognitive domain; and

(b) the Retired NFL Football Player's functional impairment, as described above, must be corroborated by a third-party sworn affidavit from a person familiar with the Retired NFL Football Player's condition (other than the player or his family members), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis.

(iv) The cognitive deficits do not occur exclusively in the context of a delirium, acute substance abuse, or as a result of medication side effects.

(a) For living Retired NFL Football Players diagnosed outside of the BAP, a diagnosis while living of Level 1.5 Neurocognitive Impairment, i.e., early dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 1(a)(i)-(iv) above, made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

(b) For Retired NFL Football Players deceased prior to the Effective Date, a diagnosis of Level 1.5 Neurocognitive Impairment, i.e., early dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 1(a)(i)-(iv) above, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology or neurocognitive disorders, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

## Level 2 Neurocognitive Impairment

(Cognitive impairment entitling a player to receive financial compensation of a maximum $3 Million Dollars)

(a) For Retired NFL Football Players diagnosed through the BAP, a diagnosis of Level 2 Neurocognitive Impairment must meet the criteria set forth in subsections (i)-(iv) below:

(i) Concern of the Retired NFL Football Player, a knowledgeable informant, or the Qualified BAP Provider that there has been a severe decline in cognitive function.

(ii) Evidence of a severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in two or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual- spatial), provided one of the cognitive domains is (a) executive function, (b) learning and memory, or (c) complex attention.

(iii) The Retired NFL Football Player exhibits functional impairment generally consistent with the criteria set forth in the National Alzheimer's Coordinating Center's Clinical Dementia Rating (CDR) scale Category 2.0 (Moderate) in the areas of Community Affairs, Home & Hobbies, and Personal Care. Such functional impairment shall be corroborated by documentary evidence (e.g., medical records, employment records), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis. In the event that no documentary evidence of functional impairment exists or is available, then

(a) there must be evidence of severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in the executive function cognitive domain or the learning and memory cognitive domain, and at least one other cognitive domain; and

(b) the Retired NFL Football Player's functional impairment, as described above, must be corroborated by a third- party sworn affidavit from a person familiar with the Retired NFL Football Player's condition (other than the player or his family members), the sufficiency of which will be determined by the physician making the Qualifying Diagnosis.

(iv) The cognitive deficits do not occur exclusively in the context of a delirium, acute substance abuse, or as a result of medication side effects.

(a) For living Retired NFL Football Players diagnosed outside of the BAP, a diagnosis while living of Level 2 Neurocognitive Impairment, i.e., moderate dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 2(a)(i)-(iv) above, unless the diagnosing physician can certify in the Diagnosing Physician Certification that certain testing in 2(a)(i)-(iv) is medically unnecessary because the Retired NFL Football Player's dementia is so severe, made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

(b) For Retired NFL Football Players deceased prior to the Effective Date, a diagnosis of Level 2 Neurocognitive Impairment, i.e., moderate dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth in subsection 2(a)(i)-(iv) above, unless the diagnosing physician can certify in the Diagnosing Physician Certification that certain testing in 2(a)(i)-(iv) was medically unnecessary because the Retired NFL Football Player's dementia was so severe, made while the Retired NFL Football Player was living by a board-certified or

otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology or neurocognitive disorders, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

## Alzheimer's Disease

**(Qualifying condition that entitles a player to receive financial compensation of a maximum of $3.5 Million Dollars)**

(a) For living Retired NFL Football Players, a diagnosis while living of the specific disease of Alzheimer's Disease as defined by the World Health Organization's International Classification of Diseases, 9th Edition (ICD-9), the World Health Organization's International Classification of Diseases, 10th Edition (ICD-10), or a diagnosis of Major Neurocognitive Disorder due to probable Alzheimer's Disease as defined in the Diagnostic and Statistical Manual of Mental Disorders (DSM-5), made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

(b) For Retired NFL Football Players deceased prior to the Effective Date, a diagnosis of Major Neurocognitive Disorder due to probable Alzheimer's Disease consistent with the definition in Diagnostic and Statistical Manual of Mental Disorders (DSM-5), or a diagnosis of Alzheimer's Disease, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology to make such a diagnosis, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

## Parkinson's Disease

**(Qualifying condition that entitles a player to receive financial compensation of a maximum of $3.5 Million Dollars)**

(a) For living Retired NFL Football Players, a diagnosis while living of the specific disease of Parkinson's Disease as defined by the World Health Organization's International Classification of Diseases, 9th Edition (ICD-9), the World Health Organization's International Classification of Diseases,

(b) For Retired NFL Football Player10th Edition (ICD-10), or a diagnosis of Major Neurocognitive Disorder probably due to Parkinson's Disease as defined in the Diagnostic and Statistical Manual of Mental Disorders (DSM-5), made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

(c) For Retired NFL Football Players deceased prior to the Effective Date, a diagnosis of Parkinson's Disease, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology to make such a diagnosis, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

## Amyotrophic Lateral Sclerosis (ALS)

**(Qualifying condition that entitles a player to receive financial compensation of a maximum of $5 Million Dollars)**

(a) For living Retired NFL Football Players, a diagnosis while living of the specific disease of Amyotrophic Lateral Sclerosis, also known as Lou Gehrig's Disease ("ALS"), as defined by the World Health Organization's International Classification of Diseases, 9th Edition (ICD-9) or the World Health Organization's International Classification of Diseases, 10th Edition (ICD-10), made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

(b) A retired player who was deceased prior to the Effective Date of the final Settlement Agreement ( the fact that no further appeals are available) , a diagnosis of ALS, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology to make such a diagnosis, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement will receive financial compensation.

---

## Death with CTE

**Applies only to Retired Players diagnosed prior to July 14, 2014**

**(Qualifying condition that entitles a player to receive financial compensation of a maximum of $4 Million Dollars)**

---