**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONAL FOOTBALL LEAGUE, et.al,<br><br>Defendants. | No. 2:12-md-02323-AB<br>MDL No. 2323<br><br>Hon. Anita B. Brody |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

**RESPONSE TO DECLARATION OF CHRISTOPHER A. SEEGER IN SUPPORT OF PROPOSED ALLOCATION OF COMMON BENEFIT ATTORNEYS' FEES, PAYMENT OF COMMON BENEFIT EXPENSES, AND PAYMENT OF CASE CONTRIBUTION AWARDS TO CLASS REPRESENTATIVE**

**AND**

**MOTION TO PRIORITIZE AND SEPARATE VITALLY NEEDED PLAYER COMPENSATION PAYMENTS FROM ANY AND ALL ATTORNEYS' FEES AWARDS OR REQUESTS AND A REQUEST THAT THE COURT APPOINT A SPECIAL MASTER TO DEAL WITH AND DETERMINE THE VALIDITY AND APPROPRIATE AMOUNTS OF CLAIMED ATTORNEYS' FEES AS TO MORE FULLY ASSIST THE COURT'S GOAL OF MAKING PLAYER PAYMENTS A REALITY RATHER THAN UNFULFILLED PROMISES**

Pursuant to Federal Rule of Civil Procedure 7(b)(1), and Section 21.1 of the Amended Settlement Agreement (the "Settlement Agreement"), Neurocognitive Football Lawyers, PLLC, and The Yerrid Law Firm respectfully ask the Court to prioritize player compensation and defer ruling on Class Counsel's petition for attorneys' fees pending the expeditious resolution of the claims now filed with the Claims Administrator and the payment of substantial compensation to those players who have met the necessary requirements, and in support thereof would show:

1. The public perception is that Class Counsel are now asking for millions of dollars in compensation while brain damaged players continue to deteriorate and even die while awaiting payment of their claims as the process is being "slow played" and unnecessarily delayed. Months before retired NFL players could submit their claim packages to the Claims Administrator, on February 13, 2017, Co-Lead Class Counsel filed their Petition for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, Adoption of a Set Aside of Five Percent of Each Monetary Award and Derivative Claimant Award, and Case Contribution Awards to Class Representatives (ECF 7151) (the "Fee Petition").

2. On September 12, 2017, this Court entered its Order directing Co-Lead Class Counsel to provide a detailed submission as a proposal for the allocation of attorneys' fees among class counsel (ECF 8367). On October 10, 2017, Co-Lead Class Counsel filed his Declaration in Support of Proposed Allocation of Common Benefit Attorneys' Fees, Payment of Common Benefit Expenses and Payment of Case Contribution Awards to Class Representative (ECF 8447) (the "Seeger Fee Declaration"). Although it appears the Five Percent Set Aside is not yet at issue, The Yerrid Law Firm and Neurocognitive Football Lawyers, PLLC, move this Court to defer ruling on any of the fee issues raised in the Fee Petition (ECF 7151). The

undersigned also request that the Court appoint a Special Master to resolve these pending fee requests.

3. This Court, and certainly the attorneys, bound with an absolute duty to act in their clients' best interests, should treat the welfare of the retired players with priority and put the importance of their compensation at the forefront of each and every issue pending before this Court. These injured and dying players deserve, at the very least, the best treatment that can be afforded under the terms and the intent of the Settlement Agreement.

4. The Seeger Fee Declaration (ECF 7151) provides that some $70,415,116.45 be paid to the Seeger Weiss firm from the Common Benefit Fund with some $37,000,000.00 to be divided between another 24 firms as well as the class representatives and a few select others. As suggested by the Counter-Declaration of Jason E. Luckasevic (ECF 8556), his firm will be paid only $262,860.00 even though his firm, Girardi Keese, and Russomanno & Borello were the first lawyers to bring the initial action against the NFL in Los Angeles in 2010. Despite the groundbreaking work done by these lawyers in developing the case and the medicine some two years before most anyone else, his firm was given a multiplier of "1". But, like too many class actions, the lawyers compete for fees while the members of the class wait for the benefits, if any.

5. Because of concerns like these, the Court (or an appointed Special Master) should exercise both caution and prudence before proceeding on the payment of fees. Caution and prudence are particularly demanded while the vast majority of players are still having their claims processed and these players have received only minimal compensation or none at all.

6. The welfare of the vast majority of the retired players should be secured before any fees are determined and paid. This approach would certainly place compensation of attorneys' fees in a secondary position to compensation of the injured players or their survivors.

7. Contrary to the assertions made to this Court, the process of player claims administration and compensation is not "working perfectly" and the vast majority of players have not received a penny in compensation under the Settlement Agreement that was originally executed on June 25, 2014. (It should be noted the undersigned became involved only after the Settlement Agreement was in place and had no input or involvement in its creation or authorship. An unfortunate airplane crash and the death of the undersigned's predecessor eventually led to the filing of a Notice of Appearance by The Yerrid Law Firm in this case on December 2, 2016.)

8. Section 21.1 of the Settlement Agreement states that "Class Counsel shall be entitled, **at an appropriate time to be determined by the Court**, to petition the Court on behalf of all entitled attorneys for an award of class attorneys' fees and reasonable costs." (Emphasis added). With all respect, now is not the appropriate time. At this point, as stated previously, the vast majority of the retired NFL players have not received a dime in the compensation promised. (Emphasis added).

9. Nonetheless, Class Counsel has requested the Court to approve payment of attorneys' fees in the amount of **$107,735,097.27** **BEFORE** the vast majority of the players' pending claims remain "in process" and have yet to be paid. Attached as Exhibit "A" is the proposed fee allocation submitted by co-lead Class Counsel Christopher A. Seeger, Esquire, who seeks $70,415,116.45 for his firm's fees alone. Of the $112,500,000.00 deposited into the Qualified Settlement Fund, his request would consume nearly 65% of those funds in payments to him and his law firm. Even now, the lawyers seeking money from that fund are competing for fee entitlements.

10. Despite the magnitude of this claimed compensation, Class Counsel also seeks an additional payment of 5% from each and every retired player's recovery on top of the

$107,735,097.27 in fees already written into the Settlement Agreement which Class Counsel themselves "co-authored" with the NFL.

11. Not only do these lawyers seek their portions of the common fund and a five percent set aside from any fees generated by the individual lawyers representing retired players, but some of these same firms also seek to enforce their original fee contracts with these players to obtain another share of the fees paid by the retired players to their individual "non-class" private attorneys and thereby seek to effect and unilaterally reduce the terms of the contractual compensation to which they have no privity. This is not a "double dip" but, unfortunately, an attempt at a "triple dip".

12. Class Counsel should be encouraged to help facilitate the timely and efficient consideration and payment of brain damaged players' claims by deferring payment of their multi-million dollar attorneys' fees until AFTER these brain damaged players or their survivors with pending claims are actually paid.

13. Surely the work done and results obtained for the retired NFL players should be the basis considered by this Court (or its appointed Special Master) in determining an appropriate amount of attorneys' fees to be paid. Of course, that would be consistent with the applicable law regarding attorneys' fees.

14. Class Counsel's own fee expert, Brian T. Fitzpatrick, acknowledges in his declaration that courts appoint special masters to recommend an allocation of fees citing In re TFT-LCD (Flat Panel) Antitrust Litigation, 2013 WL 1365900, at *7-*14 (N.D. Cal. April 3, 2013).

15. To avoid even the appearance of placing their own financial interests ahead of the retired NFL players' needs, Class Counsel is urged to join this Motion and voluntarily seek to

defer any ruling on payment of claimed attorneys' fees until after at least the majority of the players have been paid. This "parallel track" of separating the compensation of the players from the compensation of their attorneys should not cause an inordinate delay (if any delay at all) in the proper compensation of attorneys, and it will most certainly prioritize the actual payment of claims to brain damaged players or their estates.

16. With all respect, the undersigned submits this case must first be about the players' well-deserved compensation and not the compensation of the lawyers representing them (Emphasis added).

WHEREFORE, Neurocognitive Football Lawyers, PLLC, and The Yerrid Law Firm respectfully request this Honorable Court to defer ruling on Class Counsel's claim for attorneys' fees until after the pending retired NFL players' claims have been paid or at least a substantial number have received compensation. Further, it is requested this Court appoint a Special Master whose sole function will be to determine the reasonable amount of fees and recommend an allocation of those fees to the attorneys involved in this matter. Such process would undoubtedly unburden the Court from that task, and in doing so, allows your Honor to put exclusive focus and efforts on the long-overdue payments that should have already been made to the injured players or their estates.

Dated: October 27, 2017

Respectfully submitted,

C. STEVEN YERRID, ESQ.
RALPH L. GONZALEZ, ESQ.
HEATHER N. BARNES, ESQ.
THE YERRID LAW FIRM
101 E. Kennedy Boulevard, Suite 3910
Tampa, Florida 33602
(813) 222-8222 (telephone)
(813) 222-8224 (telefax)
hbarnes@yerridlaw.com
cjameson@yerridlaw.com
Florida Bar No. 207594
Florida Bar No. 564140
Florida Bar No. 85522

JIM HOLLIDAY, ESQ.
HOLLIDAY KARATINOS LAW FIRM PLLC
18920 N. Dale Mabry Hwy. Suite 101
Lutz, Florida 33548
(813) 868-1887 (telephone)
(813) 909-8535 (telefax)
jamesholliday@helpinginjuredpeople.com
Florida Bar No. 45284

THOMAS PARNELL, ESQ.
GIBBS & PARNELL, P.A.
722 E. Fletcher Ave.
Tampa, Florida 33612
(813) 975-4444 (telephone)
(813) 975-4445 (telefax)
Florida Bar No. 441988

JEFFREY MURPHY, ESQ.
JEFFREY D. MURPHY, P.A.
511 W. Bay St., Suite 352
Tampa, Florida 33606
(813) 443-5553 (telephone)
(813) 436-5190 (telefax)
Florida Bar No. 860808

**CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2017, I caused the foregoing Request to be electronically filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, and that the filing is available for downloading and viewing from the electronic court filing system by counsel for all parties.

*/s/ C. Steven Yerrid*
C. Steven Yerrid.
The Yerrid Law Firm

| Firm | Lodestar | Multiplier | Total |
|---|---|---|---|
| Anapol Weiss | $1,857,436.00 | 2.5 | $4,643,590.00 |
| Casey Gerry Schenk | $333,920.00 | 1 | $333,920.00 |
| Dugan Law Firm | $188,340.50 | 1 | $188,340.50 |
| Girard Gibbs | $279,489.00 | 1.25 | $349,361.25 |
| Girardi Keese | $448,190.00 | 1 | $448,190.00 |
| Goldberg Perksy | $262,860.00 | 1 | $262,860.00 |
| Hagens, Rosskopf & Earl | $324,480.00 | 1 | $324,480.00 |
| Hausfeld | $763,917.50 | 1.3 | $993,092.75 |
| Herman Herman & Katz | $89,660.00 | 1 | $89,660.00 |
| Prof. Issacharoff | $800,512.50 | 3.55 | $2,841,819.38 |
| Kreindler & Kreindler | $1,258,400.00 | 1.25 | $1,573,000.00 |
| Levin Sedran & Berman | $4,573,438.75 | 2.25 | $10,290,237.19 |
| Locks Law Firm | $3,084,500.00 | 1.25 | $3,855,625.00 |
| McCorvey Law | $198,780.00 | 1 | $198,780.00 |
| Mitnik Law | $898,612.50 | 0.75 | $673,959.38 |
| NastLaw | $765,060.25 | 1.5 | $1,147,590.38 |
| Podhurst Orseck | $3,005,744.50 | 2.25 | $6,762,925.13 |
| Pope McGlamry | $829,030.00 | 1 | $829,030.00 |
| Rheinhart Wendorf | $14,899.50 | 0.75 | $11,174.63 |
| Rose, Klein & Mariais | $157,969.50 | 1 | $157,969.50 |
| Seeger Weiss | $18,124,869.10 | 3.885 | $70,415,116.45 |
| Brad Sohn Law Firm | $26,250.00 | 0.75 | $19,687.50 |
| Spector Roseman | $51,708.00 | 0.75 | $38,781.00 |
| Zimmerman Reed | $885,907.25 | 1 | $885,907.25 |
| MoloLamkin/Hangley | $150,000.00 | n/a | $150,000.00 |
| Corboy & Demetrio | $250,000.00 | n/a | $250,000.00 |
| ***Total Fee Petition Allocation*** | | | ***$107,735,097.27*** |

18. As discussed at greater length in the accompanying Declaration of Brian T. Fitzpatrick, this allocation is reasonable and well within the precedent set by fee allocations in other Multi-District Litigation Settlements.

***PART II: Continuing Work by Class Counsel***

19. As I explained in my earlier Supplemental Declaration in Support of the Fee Petition, work dedicated to the common benefit of the Settlement Class Members did not end on the date that the Fee Petition was filed. Indeed, after January 7, 2017, when the opportunity for any



