UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 12-md-2323 (AB)<br><br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,<br>      Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br>      Defendants. | Hon. Anita B. Brody |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

### DECLARATION OF DERRIEL C. McCORVEY IN SUPPORT OF McCORVEY LAW, LLC'S OPPOSITION TO CHRISTOPHER A. SEEGER'S PROPOSED ALLOCATION OF COMMON BENEFIT ATTORNEYS' FEES, PAYMENT OF COMMON BENEFIT EXPENSES, AND PAYMENT OF CASE CONTRIBUTION AWARDS TO CLASS REPRESENTATIVES

Derriel C. McCorvey declares, pursuant to 28 U.S.C. § 1746, based upon his personal knowledge, the following:

1. I am the founder and owner of the law firm of McCORVEY LAW, LLC. I submit this Declaration in support of McCORVEY LAW, LLC's Opposition to Christopher Seeger's Proposed Allocation of Common Benefit Attorneys' Fees (ECF No. 8447) and I adopt and I am in favor of Co-Lead Class Counsel Anapol Weiss's Proposed Alternative Methodology for the Allocation of Common Benefit Attorneys' Fees (ECF No. 8701).

1

2. I have served as a Court-appointed member of the Plaintiffs' Steering Committee ("PSC") throughout the course of MDL No. 2323. This Declaration is based upon my personal knowledge.

3. I am aware that other members of the PEC, including Co-Lead Counsel, and the PSC, have or will file Declarations in opposition to Mr. Seeger's unilateral fee allocation. Among this group are law firms, such as Locks Law Firm, Anapol Weiss, Girardi Keese, Podhurst Orseck, Kreindler & Kreindler, Zimmerman Reed, Pope McGlamry and Hagen, Rosskopf & Earl, which have the overwhelming number of individual former player clients whose individual lawsuits were a major, if not the major factor leading to the settlement of this litigation. The very fact that almost all of the Plaintiffs Leadership counsel in this litigation oppose this allocation, its timing, scope and its effect, manifests it's incredibly selfish, unfair, jaundiced and unreasonable nature. This issue deserves greater scrutiny by the Court that involves someone other than Mr. Seeger. This Court appointed the leadership for a purpose. Now is the time that we should finally be heard, allowing us to be involved to make this allocation fair and reasonable."

4. There are two substantive problems with Mr. Seeger's unilateral fee allocation. One, it is premature, since individual contingent-fee contract issues have not been addressed and that entirety of time and expense are not accounted for in the proposed allocation. Second, it is patently unfair and appears to suggest that he alone is responsible for the results here.

5. The Settlement, which began as a Term Sheet dated August 29, 2013, included the NFL Defendants' agreement not to oppose up to $112.5 million in common-benefit attorneys' fees, payable by the NFL Defendants. *See In re Nat'l Football League Players' Concussion Injury Lit.*, 307 F.R.D. 351, 374 (E.D. Pa. 2015). Settlement and Co-Lead Counsel Mr. Seeger, were, and have remained, silent as to whether individual contingency-fee contracts between clients and

counsel are enforceable, other than specifying that the requested 5% holdback from all awards be taken out of the amount of legal fees otherwise owed. This lack of leadership has delayed the ability of any counsel to obtain payment for the substantial work on behalf of their individual clients.

6. Despite repeated requests from members of the PSC, Mr. Seeger has utterly failed to address whether individual fee agreements are enforceable in light of the class action Settlement. Despite repeated questions from PSC members, Mr. Seeger has stalled, delayed and refused to address this issue. He failed to address this issue at the preliminary and final approval stages, and now seeks to collect $74.5 million in class action "common benefit" fees before counsel for the thousands of injured former NFL players and their families even know whether their contingent fee agreements will be upheld.

7. Although whether individual fee agreements are enforceable was raised by the Estate of Kevin Turner in December 2016, (ECF No. 7029), that issue has not yet been addressed by the Court. Some members of Plaintiffs' PSC filed briefs supporting the enforceability of such individual contingent fee agreements. (*E.g.*, ECF Nos. 7073, 7075, 7085); however, Co-Lead Counsel Mr. Seeger has utterly refused to take a position as to the enforcement of individual fee agreements.

8. Mr. Seeger's risk, if any, of non-payment, has been minimal. First, from its very inception, MDL-2323 involved many highly regarded Plaintiffs' firms, all of which were available to contribute to common-benefit expenses and to share in the risk of non-payment. This was not a typical class action in which a single firm bears substantial risk all alone or with a small number of co-counsel. Moreover, at least since the late-August 2013 Term Sheet included $112.5 million

in common-benefit attorneys' fees. However, the risk for non-leadership counsel with substantial numbers of individual clients has continued to-date.

9. Indeed, although Mr. Seeger had very few individual clients in MDL-2323, he made a point of waiving any claim to fees pursuant to any remaining individual retainer agreements. (*See* ECF No. 7151-2 at ¶ 98). This action fanned the flames of frustrated individual clients and their families who seek to avoid paying their individual attorneys, despite their contingent fee arrangements, in light of Co-Lead Counsel's decision to reach a class settlement of MDL-2323.

10. Law firms bearing the most risk in this litigation and settlement process – those firms representing large numbers of former NFL players and their families pursuant to individual contingent-fee agreements – are being further penalized by the 5% set-aside Mr. Seeger has requested. As co-lead counsel, Mr. Seeger unilaterally determined that this set-aside would be taken out of any existing individual attorney's fee (should such attorney's fee agreement be upheld). (ECF No. 7151-2 at ¶¶ 101-103). Mr. Seeger, whose firm only represented a handful of former players, has withdrawn from representing most all clients. (*See, e.g.*, ECF No. 16 (voluntary dismissal of individual case); 5765, 6138, 6629 (these last three are Mr. Seeger withdrawing from representation of individual plaintiffs). In contrast, any risk of Mr. Seeger not being paid was effectively extinguished when the NFL Parties agreed not to oppose or object to a petition of attorneys' fees and costs up to $112.5 million as part of the Settlement in summer 2013.

11. Additionally, the Court has ordered the Settlement Administrator to hold back all fee amounts, pending resolution of individual contingency-fee agreement enforceability issues and issues stemming from the further complication of NFL Players (and their families) who have hired and fired different counsel through the course of MDL-2323. Thus, the risk of non-payment

continues for counsel representing individual retired NFL Players and their families, even nearly a year after the effective date of the Settlement.

12. Until approximately 2013, PSC, PEC and Co-Lead Counsel worked effectively and efficiently as a team, all with significant, defined roles, toward the resolution of our clients' head-injury claims. As negotiations continued, Mr. Seeger excluded leadership and assigned more and more work to his own firm in order to build its lodestar to the exclusion of others.

13. Since 2013, Co-Lead Plaintiffs' Counsel Christopher Seeger has dictated and strictly controlled the work that could be done in this litigation. He dictated which few counsel could actively participate in the mediation and settlement process, what each firm and their respective attorneys was permitted to do in furtherance of the common benefit, and whether work on behalf of individual claimants, even in furtherance of the Settlement, could be included as part of the common-benefit expenses. Despite repeated requests for common benefit work and to more actively participate, Mr. Seeger marginalized and minimized the involvement of all other members of the Plaintiffs' leadership, including my firm, while maximizing his (and his firm's) role in all MDL-2323 work.

14. Mr. Seeger bypassed his own Co-Lead Plaintiffs' Counsel, Sol Weiss of Anapol Weiss, and the Court-appointed Plaintiffs' Executive and Steering Committees to become the dictator over the MDL. As is demonstrated by the $18 million-plus lodestar amount submitted by his firm, Mr. Seeger reserved the vast majority of work for himself and his firm, largely excluding even his Court-appointed Co-Lead Plaintiffs' Counsel Sol Weiss. (*See* ECF No. 8447-1 at p. 2 (listing a lodestar of $1,857,436.00 for Anapol Weiss, the firm of Co-Lead Plaintiffs' Counsel, compared to $18,124,869.10 for Seeger Weiss. Mr. Seeger's firm's lodestar, based on the work that he created and controlled, was 9.76 times that of his Court-appointed Co-Lead counsel's).

15. In fact, much of the work that Seeger Weiss has completed relates to issues that Mr. Seeger himself created by omitting the enforceability of individual contingency-fee agreements from the Settlement and failing to weigh in on the issue since the final Settlement was reached in 2014.

16. Indeed, Mr. Seeger has failed to hold or participate in substantive discussions with MDL-2323's PSC and PEC since 2013. There have been no leadership meetings, no leadership conference calls, and literally no leadership discussions. Mr. Seeger became a solitary dictator over MDL-2323. He has worked to ensure that his application for substantial, inflated common-benefit fees will be determined before the serious questions of individual attorneys' fees, poaching, and the public-relations nightmare of the unseemly public fight over fees further undermines the public's (not to mention our individual clients') perception of plaintiffs' counsel and the civil justice system.

17. It is unfair and inappropriate to allow Mr. Seeger to arbitrarily determine what multiplier is applied to each firm's lodestar calculation, including his purported decision to "adjust upward the lodestars of the firms that made contributions from the outset of the litigation all the way to its end" or "downward the lodestars of the firms that performed only discrete tasks here and there." (ECF 8447-2 ¶ 8). Mr. Seeger not only decided who would be permitted to perform tasks, he then decided that those he selected would be awarded above and beyond by his decision to provide an upward adjustment via a multiplier. Likewise, he penalized those firms that he did not select to work through the negotiations and settlement by awarding them only their lodestar, in the case of McCORVEY LAW, LLC and nine other firms (or, more egregiously, reducing it via a multiplier lower than 1 for four firms).

18. Mr. Seeger has provided no explanation in his declaration as to the reasoning or justification supporting the various multipliers he used in determining the total appropriate fees to be awarded to each participating law firm, including the use of a 0.75 "multiplier" to four firms' lodestar, reducing (instead of multiplying) their actual fees and costs below the amount of actual time and expense they invested in the litigation. Of the remaining twenty (20) firms, ten (10) firms, including McCORVEY LAW, LLC, were assigned a "multiplier" of one (1) – basically only their time and expense, with no increase whatsoever for the risks undertaken or extra effort incurred to support the Settlement, while ten (10) firms received multipliers varying from 1.25 all the way up to Mr. Seeger's own self-assigned, highest multiplier of 3.885, which raises his $18 million dollar lodestar to a $70 million windfall. Mr. Seeger undertook this allocation despite acknowledging that the originally submitted lodestar of $40,559,978.60, representing 50,912.39 hours of time, subject to an overall 2.6 multiplier, for all firms' lodestars, resulted in a total fee request of $106,817,220.62. (*See* ECF No. 7151-2 at ¶ 78).

19. Mr. Seeger has also obtained, via Settlement, a holdback of 5% of all awards made pursuant to the Settlement, with this amount to reduce the amount otherwise payable in attorneys' fees. He recently requested payment of some $74.5 million in common-benefit fees and costs. (*See* ECF No. 8447-1 at page 2 of 2 (reporting Seeger Weiss' lodestar as $18,124,869.10, requesting a 3.885 multiplier, taking this amount to $70,425,116.45 of the $107.7 million fees to be allocated, and further requesting $4,100,280 of the $4.7 million "part II lodestar" from the 5% holdbacks).

20. Mr. Seeger contends that he, like us, "hosts frequent telephone conference calls with retired players and family members to provide updates on the Settlement," (ECF No. 7151-2 at ¶ 52), and that he, again like McCORVEY LAW, LLC, "continues to respond to hundreds of

7

calls each month from Retired NFL Football Players and their families about the Settlement and its Claims Process." (ECF No. 8447 at ¶ 20a.) Mr. Seeger included the time spent communicating with individual Retired NFL Players and their families in his common-benefit time and sought reimbursement of that time as part of his lodestar (and multiplied by 3.885 as an incentive reward). (*See id.*; ECF No. 8447-1 at p. 2 of 2; ECF No. 7151-2 at ¶ 89 ("Seeger Weiss prepared updates for Class Members and fielded phone calls to provide further information on the updates to Class Members.").

21. Similar to Mr. Seeger's statement of the work his firm has done in responding to "hundreds of calls each month from Retired NFL Football Players and their families about the Settlement and its Claims Process," McCORVEY LAW, LLC has fielded many similar calls, with the 50 players that we currently represent, as well as similar calls with former clients, many of whom were "poached" by other counsel. We have also communicated extensively with all of our clients via email, conference call, and in-person meetings.

22. Since the Settlement became effective in January 2017, McCORVEY LAW, LLC attorneys have spent significant hours every month working with former players and their families on the registration process by: researching evidence of play, gathering employment information, and registering former NFL players, their representatives and their family members for the settlement; working with former players to submit BAP appointment requests to Garretson, working on a daily basis with Garretson on issues involving the scheduling process; and gathering medical records and documentation from clients who received a Qualifying Diagnosis prior to the Effective Date to submit claim packages on their behalf, and respond to myriad deficiency notices received regarding same.

8

23. This work performed by McCORVEY LAW, LLC is the same work being performed by Seeger Weiss in the implementation and support of the Registration and BAP process, but McCORVEY LAW, LLC will not be reimbursed for this work through common-benefit fees or through the 5% set-side from any of their clients' awards that Mr. Seeger has requested. (*See* ECF No. 8447 at ¶ 20a (explaining that Seeger Weiss has been "responding to hundreds of calls from Retired NFL Football Players and their families" and that it "continues to respond to hundreds" of such calls every month "about the Settlement and its Claims Process.")

24. In the course of working with our individual clients, McCORVEY LAW, LLC has incurred significant hours of additional attorney time, none of which was permitted to be included in the common-benefit fee application. Mr. Seeger has acknowledged that Plaintiffs' Counsel, other than Co-Lead Class Counsel, "have devoted hundreds of hours to communicating with Retired NFL Football Players and family members." (ECF No. 7151-2 at ¶ 51).

25. Members of the PEC and PSC, however, were specifically instructed *NOT* to include any work on behalf of any individual class member, including communications with such individual class members, in their time detail submitted in support of the common-benefit fee application. Accordingly, McCORVEY LAW, LLC, and presumably no member of the PSC or PEC – with the notable exception of Mr. Seeger – submitted their time for their substantial hours communicating and working with individual former NFL players or their families as part of the common-benefit fee and expenses application.

26. Rather, McCORVEY LAW, LLC and other leadership counsel who are members of the PSC or PEC, save Mr. Seeger, are not receiving any common-benefit fees for any of this work.

9

27. In addition to my general PSC work in MDL-2323, I was an active member of the Communications Committee during the course of the litigation. Although Mr. Seeger's proposed fee allocation appears to minimize the value contributed by the communications committee, he previously recognized the immense value in the regular work undertaken, before and after the Settlement was announced, and continuing to-date, to provide full and complete information to all parties, the broader player community, and the public, regarding all relevant factual, medical and legal issues implicated by MDL-2323. (*See* ECF No. 7151-2 at ¶ 33). Such work included my work on the Communications Committee and my multiple interviews with national news media, including Bloomberg News.

28. In addition to being a member of the Communications Committee, I was also appointed to the Discovery/Document Repository Committee and the Third Party Discover/Privilege (NFL teams and colleges) Committee.

29. In addition to our firm's work on the PSC, McCORVEY LAW, LLC currently represents 50 individual clients – former NFL players – pursuant to individual retainer agreements. Our individual clients are also class members eligible to participate in the settlement of the class action under MDL No. 2323.

30. My firm formerly represented many more than our current 50 former NFL players and players' families in MDL-2323. Many of our clients were "poached" by other counsel, who, given the Settlement agreement and Mr. Seeger's failure to support enforcement of individual contingency-fee agreements, apparently told our (now former) clients that they would handle their claims for a lower contingency fee.

31. McCORVEY LAW, LLC undertook significant work in support of the Settlement. McCORVEY LAW, LLC was in constant communication not only with existing clients, but

former teammates and friends who called upon Derriel McCorvey. Derriel C. McCorvey kept them abreast of the litigation, sold the settlement to them and updated them on the post-settlement claims administration process. Derriel McCorvey utilized his unique background having been a former NFL player to sell the deal to his peers who relied upon and trusted his judgment. Derriel McCorvey worked tirelessly to convince former players that the settlement was in their best interests despite third parties trying to convince players to opt out of the settlement agreement. The real force behind the settlement of this case was the number of former NFL players who individually stepped up against the NFL. The firms with the largest number of clients seem to be overlooked in Mr. Seeger's proposed fee process. Had it not been for firms like ours, there would not have been a critical mass to cause sufficient pressure on the NFL to reach a settlement. We were instrumental at that time, but are apparently forgotten now.

32. Despite McCORVEY LAW, LLC's significant, continuing contributions to the prosecution of MDL-2323 and support of the Settlement, Mr. Seeger has proposed a so-called "multiplier" of 1 -- effectively no multiplier at all -- to McCORVEY LAW, LLC's common-benefit lodestar ($198,780.00), in his apportionment of common-benefit fees.

33. Indeed, it remains uncertain as to whether McCORVEY LAW, LLC (or any other firm or counsel representing individual Former NFL Players or their families) will ever be paid for their work on behalf of individual clients. In addition to the substantial common benefit work that McCORVEY LAW, LLC has performed, McCORVEY LAW, LLC has invested substantial amounts of attorney time and resources on behalf of their individual clients/class members pursuant to their individual contingent fee agreements. None of this time or expense will be compensable unless this Court rules that individual client fee agreements are enforceable. Even if

the Court were to enforce individual client contingent-fee agreements, McCORVEY LAW, LLC would only be compensated for those individual clients/ class members who obtain a recovery.

34. Mr. Seeger's suggested allocation of common benefit attorneys' fees is premature and inappropriate until this Court addresses the individual contingent fee contract enforceability issue. At this point in time, Mr. Seeger seeks to recoup a substantial windfall for himself, while leaving remaining PSC members and other counsel representing individual clients at a substantial risk that they may never recover anything for the many thousands of hours of time and substantial expense invested for individual client claims.

35. Furthermore, there is absolutely no reason why every PSC member firm should not have been designated as class counsel to administer the settlement in the future. There is no logical explanation for Mr. Seeger's actions in only selecting six (6) PSC member firms to the exclusion of the remaining seventeen (17) PSC member firms. The PSC member firms designated as class counsel are Anapol Weiss, Levin Sedran & Berman, Locks Law Firm, NastLaw, Pohurst Orseck and Seeger Weiss. The remaining PSC member firms, including McCORVEY LAW, LLC, were excluded as class counsel.

36. Mr. Seeger's proposed allocation is void of fundamental fairness and equity. The actions of this one attorney only fosters the public's negative perception of attorney greed. Just as the Court has an independent duty to the class and public to ensure that amounts of common benefit fees are reasonable, the Court has a duty to the class counsel to apply the same principle when considering the allocation amongst them.

Executed on October 27, 2017, at Lafayette, Louisiana.

_____
DERRIEL C. McCORVEY