UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | Civil Action No. 2:14-cv-00029-AB |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

**FANECA OBJECTORS' RESPONSE TO
THE DECLARATION OF CHRISTOPHER A. SEEGER PROPOSING AN
ALLOCATION OF COMMON BENEFIT ATTORNEYS' FEES AND EXPENSES**

At the November 19, 2014 fairness hearing, Co-Lead Class Counsel defended the settlement they had negotiated with the NFL: The class, they told the Court, "'would be unlikely to have obtained more money and benefits without going through years of discovery and trial.'" Dkt. 6463 at 40:1-3. They lauded the agreement as a "landmark and historic settlement . . . result[ing] [from] many months of intense, hard fought, arm's-length negotiations." *Id.* at 7:19, 9:11-12. And they said that they had "obtain[ed] the best overall deal we could for plaintiffs." *Id.* at 39:19-20.

While it *was* the "best overall deal" that Co-Lead Class Counsel could negotiate, it was *not* the best deal that the NFL would agree to. Based on the substantial efforts of the Faneca

Objectors, the class got a much better deal.  The Final Settlement incorporated four key elements of the Faneca Objection:

- credit for play in NFL Europe;

- uncapping the BAP Fund to guarantee a baseline assessment for every eligible class member;

- an expanded scope of the Death with CTE qualifying diagnosis; and

- elimination of the $1,000 appeal fee in cases of financial hardship.

The benefit of those improvements has been fairly valued at more than $120 million.

In addition to enhancing the benefit, the Faneca Objectors rendered a valuable service to the Court and to the class in testing the settlement – which Co-Lead Class Counsel negotiated without having done any discovery – through vigorous advocacy.  In total, counsel for the Faneca Objectors devoted more than $4.3 million in time and expenses in fighting for – and achieving – a better deal.

But Co-Lead Class Counsel, who spent substantial time battling the Faneca Objectors (and, fortunately for the class, did not succeed), now contend that the Faneca Objectors' efforts "did not yield any benefit for the Settlement Class certified by the Court."  Dkt. 8447 at 13.  They allocate a meager $150,000 in common-benefit attorneys' fees to counsel for the Faneca Objectors and at the same time dole out millions of dollars to various lawyers – many of them double-dippers – who appear to have done little or nothing to help the class.  That is neither fair nor reasonable.[1]

---

[1] This Court's Order directed Co-Lead Class Counsel only to submit a "proposal for the allocation of lawyers' fees among class counsel."  Dkt. 8367.  But Co-Lead Class Counsel took it upon themselves to allocate fees to counsel for objectors, who successfully opposed them in this litigation.

2

**ARGUMENT**

I. **The Faneca Objectors' Efforts – Which Improved the Settlement by Over $120 Million – Warrant Far More Than Co-Lead Class Counsel Allocated**

The settlement that Co-Lead Class Counsel submitted for approval on June 25, 2014 (the "Revised Settlement") – which had already been improved once at the direction of this Court – was substantially inferior to the settlement this Court ultimately approved (the "Final Settlement"). *See* Dkt. 7550 at 3-4. Most importantly:

- Where the Revised Settlement provided no eligible-season credit for seasons played in NFL Europe, the Final Settlement did, increasing monetary awards and making 2,300 class members who played *only* in NFL Europe eligible for the Baseline Assessment Program ("BAP"). Dkt. 7070-1 at 17-18, 22-26.

- Where the Revised Settlement risked exhaustion of the BAP Fund before every eligible player received a baseline assessment, the Final Settlement guaranteed an assessment for every eligible player. *Id.* at 17-18.

- Where the Revised Settlement provided a preliminary-approval cut-off date for Death with CTE, the Final Settlement extended that deadline to the date of final approval, *id.* at 17-18, making over 100 additional class members eligible for a Death with CTE payment, Dkt. 7070-2 Ex. 12.

- Where the Revised Settlement imposed a $1,000 fee to appeal a claim determination in all instances, the Final Settlement relaxed that requirement in cases of financial hardship. Dkt. 7070-1 at 17-18, 27.

3

Thus, *after* Co-Lead Class Counsel had done the very best they could do, the settlement's benefits were extended to some 2,300 additional class members who played only in NFL Europe.[2]  *After* Co-Lead Class Counsel had done the very best they could do, the limitations on the BAP Fund were lifted so every eligible player could get an assessment.  And *after* Co-Lead Class Counsel had done the very best they could do, the Death with CTE benefit was expanded and the appeal fee was eliminated for the many former players facing financial hardship.  *See* Dkt. 7070-1 at 22-26.[3]

These improvements – which resulted directly from the Faneca Objectors' efforts – are worth as much as $122.6 million.[4]  They provide: $36.8 million in additional benefits from extending eligible-season credit to NFL Europe, *see* Dkt. 7550-1 at 2; *see also* Dkt. 7070-1 at 22-26; Dkt. 7366 at 3; up to $29.6 million in additional benefits from uncapping the BAP for examinations, Dkt. 7070-1 at 21-22; Dkt. 7366 at 3; $44.6 million in estimated additional payments from extending the Death with CTE deadline, Dkt. 7366 at 3; *see also* Dkt. 7070-1 at 26-27; and $11.6 million in additional payouts from erroneous claim determinations that would have gone without appeal absent the fee waiver for financial hardship, Dkt. 7550-1 at 2; *see also*

---

[2] As the Faneca Objectors have explained, the Revised Settlement had required one-half season of eligible-season credit to participate in the BAP.  Dkt. 7070-1 at 24-25.  And class members with no eligible seasons would have received a paltry 2.5% of the maximum monetary award for any qualifying diagnosis.  *Id.* at 23.  Because the Revised Settlement offered no eligible-season credit for NFL Europe, class members who played exclusively in NFL Europe would have had zero eligible seasons.  They would not have been eligible to participate in the BAP and would have received essentially nothing for any qualifying diagnosis.  *Id.* at 23-25.

[3] As the Faneca Objectors have previously explained, many retired NFL players experience financial hardship.  Some 78% are under financial stress within two years of retirement, 15.7% file for bankruptcy within twelve years of retirement, and one organization has provided need-based charitable grants to 956 retired players since 2007.  *See* Dkt. 7070-1 at 28 n.38.

[4] The Armstrong Objectors again attempt to take credit for some of those improvements.  *See* Dkt. 8532.  But the Armstrong Objectors did little more than piggyback on arguments the Faneca Objectors had already raised and evidence that the Faneca Objectors had already submitted.  *See* Dkt. 7366 at 4-10.  The Armstrong Objectors brought nothing new or useful to the table.

Dkt. 7070-1 at 27-28; Dkt. 7366 at 3.[5]  Indeed, those enhancements may be even more valuable than the Faneca Objectors have estimated.  For example, while the Faneca Objectors valued the NFL Europe enhancement at $36.8 million, Co-Lead Class Counsel valued it even higher – at $41 million in additional payments to class members.  *Compare* Dkts. 7366 at 3, 7550-1 at 2 (Faneca valuation), *with* Dkt. 7464-12 at 7 (Co-Lead Class Counsel valuation).

Co-Lead Class Counsel do not dispute that the class received those additional benefits *after* the fairness hearing.  But they do deny that those improvements resulted from the Faneca Objectors' efforts, arguing that the Faneca Objectors did nothing more than serve as liaison counsel for the fairness hearing.  Dkt. 8447 ¶16a.  Not so.  The Faneca Objectors were first to identify the defects, problems, and inadequacies in what Co-Lead Class Counsel had negotiated.  They were the only objectors to exhaustively brief the legal arguments *and* to build a voluminous record of evidence in support.  Through their hundreds of pages of briefing – including their motion to intervene, their opposition to the motion for preliminary approval, their petition to appeal, their objection and supplemental objections, and their post-fairness hearing supplemental briefing, *see* Dkt. 7070-1 at 8-17 – the Faneca Objectors not only identified the deficiencies, they proposed concrete solutions.  They submitted over *1,500 pages of evidence* along with that briefing – evidence that included expert declarations from *eleven* of the most prominent physicians and researchers in neuroscience, *see* Dkt. 7070-1 at 12-13, 15-16.  *See also* Dkt. 7366 at 6-9 (summarizing Faneca Objectors' efforts); Dkt. 7550 at 10-14 (similar).  Those submissions "transform[ed] the settlement hearing into a truly adversarial proceeding," *Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 395 (D.N.J. 2012) (awarding objectors' counsel fees), and

---

[5] This valuation is supported by expert declarations from Joseph Floyd.  *See* Dkts. 7366-1, 7550-1.  Mr. Floyd is a certified public accountant, a certified fraud examiner, a lawyer, and holds an AICPA Accreditation in Business Valuation.  An expert in valuation and forensic accounting, Mr. Floyd has served as an expert witness in federal and state courts across the country.

"sharpen[ed] the issues and debate on the fairness of the settlement," *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 358 (N.D. Ga. 1993) (awarding objectors' counsel fees). *See also* Dkt. 7070-1 at 33-36.[6] Co-Lead Class Counsel repeatedly and strenuously argued *against* providing the class with the benefits sought by the Faneca Objectors.[7]

After this Court "review[ed] [those] submissions and arguments," it ruled that changes to address the deficiencies raised by the Faneca Objectors "would enhance the fairness, reasonableness, and adequacy of the" settlement, and ordered Class Counsel and the NFL Parties to "address[ ] these issues, either through amendments to the Class Action Settlement, or through explanations as to why the parties are unwilling to agree to [such] amendments." Dkt. 6479 at 1. The NFL ultimately agreed to accept the changes, and the Final Settlement was a dramatic improvement over the Revised Settlement. *See* Dkt. 7550 at 3-5. Thus, the "best overall deal" wasn't the Revised Settlement that Co-Lead Class Counsel negotiated; it was the Final Settlement – more valuable by as much as $122.6 million – that resulted directly from the Faneca Objectors' efforts under this Court's supervision as the "protector of the absentees' interests." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). Because "the settlement was improved as a result of their efforts," the Faneca Objectors "are entitled to an allowance as compensation for attorneys' fees and expenses" that reflects the

---

[6] Co-Lead Class Counsel and the NFL together submitted 1,325 pages of evidence. *See* Dkts. 6422, 6423, 6466, 6467. It is doubtful they would have mustered such evidence if not confronted with the arguments and evidence presented by the Faneca Objectors.

[7] *See, e.g.*, Dkt. 6423-1 at 69-71 (arguing that capped BAP is not "insufficient"); *id.* at 75 (asserting that "the $1,000 [appeal] fee 'discourages groundless appeals but should not deter players who genuinely believe in the strength of their claims'"); *id.* at 12, 24-25 (noting that NFL Europe play "does not count towards, and is specifically excluded from, the calculation of an eligible season" but asserting that NFL Europe players were adequately represented nonetheless); Dkt. 6467 at 21 (defending exclusion of CTE as an exercise in "line-drawing"). All told, Co-Lead Class Counsel filed in this Court alone no fewer than six briefs opposing the Faneca Objectors' efforts.

extent to which their efforts benefited the class. *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 743 (3d Cir. 2001).

## II. Co-Lead Class Counsel's Allocation Rewards Efforts To Deny Benefits to the Class That the Court Deemed Just

This case was *all* about the settlement. Co-Lead Class Counsel state in their Declaration in Support of the Proposed Fee Allocation that "settlement negotiations" and "defen[se] [of] the settlement once it was consummated . . . were the two most important activities in this litigation." Dkt. 8447-2 ¶6; *see also* Dkt. 8447 ¶14. The efforts in negotiating the Initial and Revised Settlements – which got the deal part-way home – benefitted the class. But the "defense of the settlement" actually sought to deny the class benefits it ultimately won.

At every turn, in court filings and in the media, Co-Lead Class Counsel vigorously opposed benefits ultimately achieved for the class. For example, after the Faneca Objectors identified unfairness in the Revised Settlement's treatment of NFL Europe, *see, e.g.*, Dkt. 6082 at 28, Co-Lead Class Counsel persisted in defending that gross inequity in filings with this Court.[8] In the media, they argued:

> This was a complicated transaction. The case was specifically brought to provide help to players in the NFL. NFL Europe, um, is part of the deal . . . . But . . . in the context of a compromise where there's give and take, you know, we had to focus on what our primary objective was, and that was getting help to players playing in the NFL who need it right now.

Audio file: Interview of Chris Seeger, CBS Sports Radio, The Mojo Show, at 9:09-9:45 (aired July 10, 2014); *see also* Dkt. 6201 at 35-36.

The same is true for every other improvement adopted as a result of the Faneca Objectors' advocacy. Rather than pressuring the NFL to cure the problem and enhance the value

---

[8] Co-Lead Class Counsel did so despite urging from their own legal expert, Prof. Klonoff, to "consider modifications to the settlement to address" the treatment of NFL Europe. Dkt. 6423-9 ¶93.

of the settlement, Co-Lead Class Counsel – arm in arm with the NFL – defended the Revised Settlement and opposed needed improvements:

- defending the funding structure of the fully-capped BAP and attributing its limits to its status as a "bargained-for benefit[ ]," Dkt. 6423-1 at 69-71;

- fighting strenuously against any suggestion that the Revised Settlement's treatment of CTE could be improved, *see, e.g.*, Dkt. 6423-1 at 24-30; Dkt. 6467 at 16-29 – to the point of submitting expert declarations that undermined Co-Lead Class Counsel's own prior claims about the danger and seriousness of CTE;[9] and

- defending the need for an appeal fee in all cases, claiming it was necessary to deter frivolous appeals, *see* Dkt. 6423 at 74-75.

All of that work – time spent *resisting* efforts to provide the class with additional benefits worth more than $120 million – was part of the class attorneys' collective lodestar, for which they now seek over $107 million in fees. *See* Dkt. 7151-2 ¶¶ 57-62.

That is not to say Co-Lead Class Counsel do not deserve a substantial fee. *See* Dkt. 7070-1 at 30.[10]  But *so much* of the class attorneys' efforts in this case, and the only significant contested litigation they undertook, involved opposition to advocacy that ultimately benefited the class.  To award them a premium for their unsuccessful resistance while allocating no award for the Faneca Objectors' successful effort to make the settlement better would be nonsensical and grossly unjust.

---

[9] *Compare* Dkt. 6423-17 ¶¶ 10-11 (describing difficulties of diagnosing CTE and identifying symptoms); Dkt. 6423-18 ¶¶ 16-19 (suggesting absence of evidence regarding cause of CTE); Dkt. 6423-19 ¶¶ 20-23 (similar), *with, e.g.*, Dkt. 6201-2 Ex. 1 (describing CTE as "the most serious and harmful disease that results from NFL and concussions").

[10] Nor do the Faneca Objectors mean to suggest that Co-Lead Class Counsel's defense of the Revised Settlement was completely unnecessary.  Certainly, some arguments raised by other objectors were meritless and, in some instances, bordered on frivolous.  Co-Lead Class Counsel is certainly entitled to compensation for opposing those objections.

**III.     The Faneca Objectors' Fee Request Is Reasonable**

Based on the substantial improvement to the settlement resulting from their extensive efforts, the Faneca Objectors request an attorneys' fee of $20 million and expenses of $46,341.52.  *See* Dkt. 7070-1 at 31; Dkt. 7366 at 16 n.19; Dkt. 7366-3.  A "lawyer for an objector who raises pertinent questions about the terms or effects, intended or unintended, of a proposed settlement renders an important service."  *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 413 (E.D. Wis. 2002).  And, when "the settlement was improved as a result of [objectors'] efforts," they "are entitled to an allowance as compensation for attorneys' fees and expenses."  *In re Cendant Corp. PRIDES Litig.*, 243 F.3d at 743.

The Faneca Objectors' requested fee is reasonable.  It represents just 16.3% of the $122.6 million in additional benefit that they secured for the class.[11]  Other courts in this Circuit have awarded successful objectors similar percentages of the benefit they obtained.  *See Dewey*, 909 F. Supp. 2d at 397 (13.4% of benefit awarded); *Lan v. Ludrof*, No. 1:06-cv-114, 2008 WL 763763, at *30 (W.D. Pa. Mar. 21, 2008) (25% of benefit awarded).  The requested fee, moreover, represents only 2.3% of the total value of the settlement with the Faneca Objectors' improvements – $882.6 million.  It represents 17.6% of the $113,906,652.28 that Co-Lead Class Counsel have allocated for payment of attorneys' fees and expenses.  And it is a reasonable multiple of the Faneca Objectors' $4.3-million lodestar, fitting comfortably within the range of lodestar multiples that courts in this circuit and others have awarded.  *See, e.g.*, *In re Rite Aid*

---

[11] Although the Faneca Objectors advocated for changes to the settlement that the NFL adopted only in part, or did not adopt at all, that does not diminish the $122.6 million of improvements that the NFL did adopt as a result of the Faneca Objectors' advocacy.  A party that "won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."  *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983); *see also* Dkt. 7550 at 12-14.

*Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589-90 (E.D. Pa. 2005) (awarding 6.96 lodestar multiplier); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) (citing case awarding 7.7 lodestar multiplier); *see generally* Dkt. 7070-1 at 47-48.[12]

The *Girsh* factors further underscore the reasonableness of the Faneca Objectors' requested fee. Most prominently:

- *Size of the Fund:* The value that the Faneca Objectors brought to the class is staggering – over $120 million, a sum that would be a substantial class settlement in its own right. *See* Dkt. 7070-1 at 40-41.

- *Number of Beneficiaries:* The Faneca Objectors brought the settlement's benefits to at least 2,300 previously excluded class members – and did so without reducing the recovery of any other class member. *Id.* at 41-42.

- *Value of the Benefit Relative to Others' Efforts:* The Faneca Objectors were first to raise the issues that ultimately brought additional benefit to the class and were the only objectors to build an extensive record of evidentiary and expert support. *Id.* at 42-43.

- *Complexity of the Litigation:* The evidence submitted by the Faneca Objectors makes clear just how complex this case was, involving medical issues at the vanguard of neuroscience. *See In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 388-89 (E.D. Pa. 2015); Dkt. 7070-1 at 43-44.

- *Risk of Non-Payment:* The Faneca Objectors' counsel took this case on a 100% contingency-fee basis, with payment based entirely on their ability to improve the settlement. The risk that they would receive nothing at all was high. *See* Dkt. 7070-1 at 45.

Each of these factors weighs in favor of a substantial fee award for the Faneca Objectors. The other *Girsh* factors weigh just as heavily in the same direction. *See* Dkt. 7070-1 at 44-47.

Co-Lead Class Counsel's proposed allocation could be easily adjusted to accommodate the Faneca Objectors' fee request. Each of the proposed awards, for example, could be reduced

---

[12] By contrast, Co-Lead Class Counsel's proposed fee of $150,000 represents a lodestar multiple of 0.035 for the Faneca Objectors.

by 17.6%, or the Court could reduce the allocated fee for firms who brought little benefit to the class.  For example:

- The Dugan Law Firm submitted time in connection with work on the "Discovery and Preemption Committees."  Dkt. 8447 ¶15c.  But there was no discovery, and litigation of the preemption issues preceded the filing of the class complaint for damages.

- Attorneys from Rheinhart Wendorf & Blanchfield similarly seek payment for time in connection with discovery that never occurred.  *Id.* ¶15s.

- A number of firms – Girardi Keese; Goldberg, Persky & White; and Hausfeld – are compensated for work in "early cases."  *Id.* ¶¶15e, 15f, 15h.  But none claims to have performed *any* work negotiating or defending the settlement.  *See* Dkts. 7151-16, 7151-19, 7151-20.

- Girard Gibbs seeks compensation for, among other things, "work[] . . . to obtain Final Approval of the Settlement."  Dkt. 8447 ¶15d.  But those efforts were largely focused on opposing the Faneca Objectors, whose efforts ultimately benefitted the class.

- Mitnick Law seeks compensation for its "multi-faceted outreach efforts to the Retired NFL Player Community."  *Id.* ¶15o.  But one can reasonably question the effectiveness of that outreach – and the benefit it brought to the class – given Mitnick's gross misunderstanding of the settlement's provisions.  *See* Dkt. 7708.[13]

All told, the class lawyers together appear to have billed an inordinately large amount of time – as much as $36-million-worth – on pre-settlement activities.  *See* Dkt. 7550 at 16.  That results in an unreasonably high lodestar.  Discounting lodestar multipliers or decreasing a proposed allocation will work no injustice and leave plenty to compensate the attorneys who worked to negotiate and implement the settlement.  *See* Dkt. 7070-1 at 31; Dkt. 7550 at 16-17.  However the allocation is adjusted, it must fairly account for the substantial benefit conferred on the class by counsel for the Faneca Objectors.

---

[13] Co-Lead Class Counsel proposes a 0.75 lodestar multiplier for Rheinhart Wendorf and Mitnick Law, among others.  But there is no reason to believe those firms are entitled to even that, given the complete absence of discovery in this case and Mitnick's demonstrated ignorance of the settlement's operation.

Many firms receiving fees under the proposed allocation, moreover, are double-dippers who will receive handsome compensation from contingency-fee agreements they entered into with individual clients. Co-Lead Class Counsel Seeger Weiss has – admirably – waived its right to compensation from individually retained class members. Dkt. 7151-1 at 4 n.8. But other class attorneys receiving common-benefit fees are fighting hard for the right to double-dip. The Podhurst Orseck firm – slated to receive nearly $7 million under the proposed allocation, Dkt. 8447 ¶17 – represents some 535 individual players, Dkt. 7070-1 at 31 & n.49, and has *strenuously* opposed efforts to set aside individual fee agreements. *See* Dkt. 7071. The Locks Law Firm – allocated nearly $4 million in common-benefit fees – joined in the Podhurst Orseck opposition, Dkt. 7085, as did another beneficiary of the common-benefit fee allocation, McCorvey Law, Dkt. 7073.[14]

There will not be any individual contingency fee for the Faneca Objectors' counsel. *See* Dkt. 7070-1 at 45. They undertook their work expecting compensation only if they improved the settlement for the entire class. And that's exactly what they did. The Revised Settlement that Co-Lead Class Counsel negotiated simply was not the best deal that the NFL agreed to. The deal that was, the Final Settlement, came about *only* because of the Faneca Objectors' willingness to press for further concessions from the NFL, their advocacy regarding the Revised Settlement's deficiencies, and the extensive record of scientific and expert evidence they developed to support their objections. For that $122.6-million benefit, a $20 million attorneys' fee is reasonable. Co-Lead Class Counsel's $150,000 allocation most assuredly is not.

---

[14] Many other class lawyers have submitted notices of attorneys' liens, evidencing their intent to collect a contingency-fee award from their clients. *See, e.g.*, Dkts. 7034 (Pope McGlamry), 7137 (Zimmerman Reed), 7410 (Hausfeld), 7551 (Goldberg, Persky & White).

## **CONCLUSION**

The Court should grant the Faneca Objectors' Petition for an Award of Attorneys' Fees and Expenses.

Dated:  October 27, 2017

Respectfully Submitted,

*/s/ Steven F. Molo*

| | |
|---|---|
| William T. Hangley<br>Michele D. Hangley<br>HANGLEY ARONCHICK SEGAL<br>PUDLIN & SCHILLER<br>One Logan Square<br>18th & Cherry Streets<br>27th Floor<br>Philadelphia, PA  19103<br>(215) 496-7001 (telephone)<br>(215) 568-0300 (facsimile)<br>whangley@hangley.com<br>mdh@hangley.com<br><br>Linda S. Mullenix<br>2305 Barton Creek Blvd., Unit 2<br>Austin, TX  78735<br>(512) 263-9330 (telephone)<br>lmullenix@hotmail.com | Steven F. Molo<br>Thomas J. Wiegand<br>MOLOLAMKEN LLP<br>430 Park Ave.<br>New York, NY  10022<br>(212) 607-8160 (telephone)<br>(212) 607-8161 (facsimile)<br>smolo@mololamken.com<br>twiegand@mololamken.com<br><br>Eric R. Nitz<br>MOLOLAMKEN LLP<br>600 New Hampshire Ave., NW<br>Washington, DC  20037<br>(202) 556-2000 (telephone)<br>(202) 556-2001 (facsimile)<br>enitz@mololamken.com |

*Counsel for the Faneca Objectors*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2017, I caused the foregoing Faneca Objectors' Response to the Declaration of Christopher A. Seeger Proposing an Allocation of Common Benefit Attorneys' Fees and Expenses to be filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel and parties.

*/s/ Steven F. Molo*