# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB <br><br> MDL No. 2323 <br><br> **Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*, <br>        Plaintiffs, <br><br> v. <br><br> National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc., <br>        Defendants. | CIVIL ACTION NO: 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

### DECLARATION OF ORRAN L. BROWN, SR. ON SETTLEMENT PROGRAM IMPLEMENTATION AFTER THE EFFECTIVE DATE

I, ORRAN L. BROWN, SR., hereby declare and state as follows:

1.      *Introduction.*  My name is Orran L. Brown, Sr.  I am the Chairman and a founding partner of BrownGreer PLC, located at 250 Rocketts Way, Richmond, Virginia 23231 ("BrownGreer").  BrownGreer is the Court-appointed Claims Administrator in connection with the class action settlement that this Court approved on April 22, 2015, as amended May 8, 2015.

2.      *Purpose.*  I submit this Declaration to provide an update to the Court on the implementation and administration of the Settlement Program after the Effective Date in

accordance with the terms of the Settlement Agreement, and BrownGreer's work with Co-Lead Class Counsel and Counsel for the NFL Parties (the "Parties") and the Special Masters to that end.  This Declaration focuses on actions taken since my last update to the Court on June 14, 2017.

**3.** *Implementation Planning.*  We have been working with the Parties on weekly calls since April 19, 2016, to prepare and implement all the functions needed for this Program.  As of November 1, 2017, we have conducted 71 regular weekly calls, held many more calls to deal with particular issues and developed more than 150 different notices, forms or procedure documents relating to each aspect and phase of the Settlement.  We continue to have daily interactions with the Parties as matters arise in the implementation and operation of the Settlement.  On January 23, 2017, we began conducting weekly working session calls with Special Master Verrier and Special Master Pritchett to apprise them of all plans and receive their input.  We reduced the frequency of these calls to biweekly starting on September 8, 2017.

**4.** *NFL Concussion Settlement Website.*  As required by Section 4.1 of the Settlement Agreement, and in consultation with the Parties and the Settlement Class Notice Agent, we developed a public, informational website, www.NFLConcussionSettlement.com (the "Settlement Website"), to provide notice and additional courtesy information and services to the Settlement Class.  On July 7, 2014, immediately following the Court's entry of the Preliminary Approval Order, we launched an initial version of the Settlement Website to make available for viewing, printing, and downloading PDF versions of the Settlement Class Notice and Settlement Agreement.  On July 14, 2014, we launched the comprehensive version of the Settlement Website that included notice materials, court documents, frequently asked questions ("FAQs"), and a link to sign up for more information.  Since that date, and

with the approval of the Parties, we have regularly updated the Settlement Website to reflect progress and changes to the Settlement Program. For example, before the August 7, 2017 Registration deadline, we displayed prominently on the Settlement Website the Registration deadline as well as a "Register Now" button and instructions for how to register.

  **5.**  *Registration.* On February 6, 2017, we launched the Registration process as required by Article IV of the Settlement Agreement. The deadline to register expired on August 7, 2017, although Representative Claimants of deceased or legally incapacitated or incompetent Retired NFL Football Players may have additional time to register if they had not been ordered before August 7, 2017, by a court or other official of competent jurisdiction to be the subject Retired NFL Football Player's authorized representative, or if the subject Retired NFL Football Player timely registered before his death or becoming legally incapacitated or incompetent. Also, the Registration deadline for Derivative Claimants is 30 days after the Retired NFL Football Player with whom they claim a familial relationship submits a Claim Package. As of November 1, 2017, we have received 20,376 Registrations, an increase of 5,869 since my last report on June 14, 2017, through the Settlement Website and by email and hard copy submissions. These Registrations include 15,950 Retired NFL Football Players, 1,183 Representative Claimants, and 3,243 Derivative Claimants. Of all registrants, 10,899, or 53%, registered as *pro se* and 12,703, or 62%, registered using the online Registration Portal. BrownGreer continues to work with Settlement Class Members to cure any deficiencies in registration submissions that may exist.

  **6.**  *Centralized Process for Representative Claimants and Derivative Claimant Representatives.* We worked with the Parties and the Special Masters to create a streamlined, centralized process for those wishing to act in the Settlement Program as a Representative

3

Claimant or Derivative Claimant Representative for a Retired NFL Football Player or Derivative Claimant, and the MDL Court approved this process on July 25, 2017. The process allows proposed Representative Claimants and Derivative Claimant Representatives who started the registration process with the Claims Administrator on or before the August 7, 2017 Registration Deadline to seek appointment by the MDL Court rather than by appointment of a local court. As of November 1, 2017, the Special Masters have approved 158 petitions from proposed Representative Claimants for deceased Players. We have received 105 additional petitions from proposed Representative Claimants, but they have provided insufficient documents for us to send their petitions to the Special Masters. We continue following up with those whose petitions remain incomplete to help them with this process. We have not received any petitions from proposed Representative Claimants for legally incapacitated or incompetent Players, nor have we received any petitions from proposed Derivative Claimant Representatives.

    **7.** *Registration Notices*. We have worked with the Special Masters and the Parties to draft the various notices for use during the Registration process. These notices inform registrants if they: (1) are Settlement Class Members who timely and properly registered, and whether they are eligible for the Baseline Assessment Program; (2) provided incomplete Registration information and need to supplement their Registration submission; or (3) are ineligible for the Settlement Program because they opted out or do not satisfy the definition of a Settlement Class Member. If a Settlement Class Member is eligible for the Baseline Assessment Program, the notice provides instructions for the Retired NFL Football Player to schedule his baseline assessment examination by contacting Garretson Resolution Group ("GRG"), the Court-appointed BAP Administrator. As of November 1, 2007, we have

issued 20,354 Registration Notices. Of these, 12,591 Settlement Class Members are eligible to participate in the Baseline Assessment Program.

**8.** *Claims Review.* We began accepting Claim Packages on March 23, 2017. We made the submission process as easy as possible for Settlement Class Members and will have an on-going dialogue with Settlement Class Members to ensure the completeness of Claim Packages and that they understand the steps in the claims process. As of November 1, 2017, we have received 1,421 Monetary Award Claim Packages from Retired NFL Football Players and their Representative Claimants, an increase of 682 since my June 2017 report, and 376 Derivative Claim Packages, an increase of 246 since June 2017, through the Settlement Website and by hard copy submissions.

As of November 1, 2017, we have issued 140 Notices of Monetary Award Claim Determination (worth a gross value of approximately $195 million). To date, we have paid gross awards valued at $99,916,866.66, while others are in the payment process or subject to potential appeal. To date, we have received a total of 20 Appeals, 12 from Settlement Class Members and 8 from the NFL Parties. Co-Lead Class Counsel has filed Statements in 6 of these Appeals.

To assist Settlement Class Members and their lawyers with submitting Claim Packages that are as complete as possible, we issue notices indicating missing documents or information that should be provided before a claim is reviewed. We include as a standard section in all notices a "How to Contact Us With Questions or For Help" section providing our toll-free number and information on how to reach us to answer questions about the notice content and deadlines:

> If you are represented by a lawyer, consult with your lawyer if you have questions or need assistance. If you are unrepresented and have any questions about this Notice or need help, contact us at 1-855-887-3485 or send an email to

5

ClaimsAdministrator@NFLConcussionSettlement.com. If you are a lawyer, call or email your designated Firm Contact for assistance. For more information about the Settlement program, visit the official website at www.NFLConcussionSettlement.com to read the Frequently Asked Questions or download a copy of the complete Settlement Agreement.

We have a dedicated staff of Call Center Agents for unrepresented callers and Law Firm Contacts assigned to each law firm to answer questions about the Settlement Program and help them with all aspects of Registration and Claims Package submission.

9. *Audit.* Sections 10.3 and 10.4 of the Settlement Agreement require the Claims Administrator to establish and implement procedures to assure the integrity of Claim Packages and Derivative Claim Packages submitted to the Monetary Award Fund. In consultation with the Special Masters, Co-Lead Class Counsel and Counsel for the NFL Parties, we have established system-wide processes to prevent and detect fraud, including, without limitation, claims-processing quality standards, training and review, and data analytics to spot "red flags" of potential fraud. Under Section 10.3(c) of the Settlement Agreement, we audit 10% of the total claims found to qualify for Monetary Awards or Derivative Claimant Awards each month. The Settlement Agreement provides that we also audit any claim that falls into one of three fact patterns described in Section 10.3(d). Additionally, we have developed and periodically update instructions and training materials for our staff on certain "red flags" that might indicate potential fraud, we have created complex data analytics to identify suspect trends in supporting documents, and we have established several avenues for the public to report to us on potential fraud in the Program.

To date, we have placed a number of claims into audit for investigation because of potential fraud concerns and/or the audit requirements established under Sections 10.3(c) –

(d). We notify Settlement Class Members of their selection for audit by issuing Notices of Audit of Claim.

**10.** *Qualified MAF Physicians List.* Section 6.5 of the Settlement Agreement requires the Claims Administrator to establish within 90 days of the Effective Date a list of Qualified MAF Physicians eligible to provide Qualifying Diagnoses. Section 2.1(www) defines a Qualified MAF Physician as "a board-certified neurologist, board-certified neurosurgeon, or other board-certified neuro-specialist physician, who is part of an approved list of physicians authorized to make Qualifying Diagnoses." Because board-certified neurologists also are eligible to serve as Qualified BAP Providers, we coordinate with GRG in identifying and recruiting key provider organizations in 53 target cities in or near where the majority of living Retired NFL Football Players currently reside, and together with GRG, we recruit the board-certified neurologists affiliated with each of these organizations to apply to be considered for both roles. Separately, we identify and contact additional providers who may wish to serve as Qualified MAF Physicians.

On April 7, 2017, which was 90 days after the Effective Date, we posted on the Settlement Website a list of 102 approved Qualified MAF Physicians in or near 31 of the 53 target cities. We continue to identify and contact providers, collect Provider Applications, verify credentials, submit applicants to the Parties for approval, and contract with approved Qualified MAF Physicians. We will add Qualified MAF Physicians to the posted list as these steps are completed. As of November 1, 2017, we have engaged in contract negotiations with 65 potential Qualified MAF Physicians and contracted with 126 Qualified MAF Physicians in or near 36 of the 53 target cities closest to where the majority of living Retired NFL Football Players reside. We expanded the posted list to include 157 of the total

191 approved Qualified MAF Physicians and will add the remaining 34 potential Qualified MAF Physicians as we contract with them.

I, Orran L. Brown, Sr., declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.  Executed on this 3rd day of November, 2017.

_____
Orran L. Brown, Sr.