## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | Case No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>The Honorable Anita B. Brody |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>        Defendants.<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | **MEMORANDUM OF RD LEGAL FUNDING, LLC; RD LEGAL FINANCE, LLC; RD LEGAL FUNDING PARTNERS, LP; AND RONI DERSOVITZ IN RESPONSE TO MOTION TO (1) DIRECT CLAIMS ADMINISTRATOR TO WITHHOLD ANY PORTIONS OF CLASS MEMBER MONETARY AWARDS PURPORTEDLY OWED TO CERTAIN THIRD-PARTY LENDERS AND CLAIMS SERVICES PROVIDERS, AND (2) DIRECT DISCLOSURE TO CLAIMS ADMINISTRATOR OF EXISTENCE OF CLASS MEMBER AGREEMENTS WITH ALL THIRD PARTIES** |

BROTMAN LAW
ELLEN C. BROTMAN, ESQ.
150 North Radnor Chester Road
 Suite F200
Radnor, Pennsylvania 19087
Telephone:  (610) 977-2412
Facsimile:  (610) 977-0043

BOIES SCHILLER FLEXNER LLP
DAVID K. WILLINGHAM (*pro hac vice*)
 dwillingham@bsfllp.com
MICHAEL D. ROTH (*pro hac vice*)
 mroth@bsfllp.com
JEFFREY M. HAMMER (*pro hac vice*)
 jhammer@bsfllp.com
725 South Figueroa Street, 31st Floor
Los Angeles, California 90017-5524
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

Attorneys for RD LEGAL FUNDING, LLC; RD LEGAL FINANCE, LLC; RD LEGAL FUNDING PARTNERS, LP; and RONI DERSOVITZ

**TABLE OF CONTENTS**
                              **PAGE**

I. INTRODUCTION ..................................................................................................1

II. THE FACTUAL AND LEGAL ISSUES RAISED IN THE MOTION SUPPORT RD LEGAL'S POSITION THAT SETTLEMENT PROCEEDS ARE ASSIGNABLE..................................................................................................3

    A. The Motion Reveals that More than a Thousand Assignment Transactions Were Entered Into, Which Demonstrates that the Settlement Agreement Failed to Expressly and Clearly Prohibit the Assignment of Settlement Proceeds ...................................................................................................3

    B. The Motion Implicitly Supports that Settlement Proceeds are Assignable ............4

    C. Funding Transactions Cannot be Both Loans and Assignments ............................5

    D. Co-Class Counsel's Theories Go Well Beyond the Statutory and Constitutional Limits of this Court's Jurisdiction......................................................................5

III. CONCLUSION.......................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allhusen v. Caristo Constr. Corp.*,
    303 N.Y. 446 (1952) ................................................................................................3

*Bender v. Williamsport Area Sch. Dist.*,
    475 U.S. 534 (1986) ................................................................................................6

*Cobell v. Kempthorne*,
    455 F.3d 317 (D.C. Cir. 2006) ................................................................................9

*County of Suffolk v. Long Island Lighting Co.*,
    907 F.2d 1295 (2d Cir. 1990) ..................................................................................9

*Dopp v. Yari*,
    927 F. Supp. 814 (D.N.J. 1996) ..............................................................................5

*Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*,
    67 F.3d 1063 (2d Cir. 1995) ....................................................................................5

*Evergreen Square of Cudahy v. Wisconsin Hous. & Econ. Dev. Auth.*,
    776 F.3d 463 (7th Cir. 2015) ................................................................................6, 8

*Henderson ex rel. Henderson v. Shinseki*,
    562 U.S. 428 (2011) ..............................................................................................6, 7

*In re Dryden Advisory Grp., LLC*,
    534 B.R. 612 (M.D. Pa. 2015) ..................................................................................5

*Infant Formula Antitrust Litig., MDL 878 v. Abbott Labs.*,
    72 F.3d 842 (11th Cir. 1995) ....................................................................................8

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
    456 U.S. 694 (1982) ....................................................................................6, 7, 8, 9

*Kearney for Kearney v. Jandernoa*,
    172 F.R.D. 381 (N.D. Ill. 1997) ................................................................................7

*Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*,
    109 F.3d 850 (2d Cir. 1997) ....................................................................................3

*Sullivan v. Int'l Fid. Ins. Co.*,
    465 N.Y.S.2d 235 (N.Y. App. Div. 1983) ..............................................................3

*Swiger v. Allegheny Energy, Inc.*,
    540 F.3d 179 (3d Cir. 2008)................................................................................................7

*United States v. Apple MacPro Computer*,
    851 F.3d 238 (3d Cir. 2017)................................................................................................8

*Wilson v. Sec'y Pa. Dep't of Corr.*,
    782 F.3d 110 (3d Cir. 2015)................................................................................................6

**<u>Statutes</u>**

28 U.S.C. § 1331................................................................................................................................6

28 U.S.C. § 1332................................................................................................................................6

**<u>Other Authorities</u>**

Hon. Beverly Reid O'Connell and Hon. Karen L. Stevenson, *Rutter Group Prac.
    Guide: Fed. Civ. Proc. Before Trial Nat'l Ed*. (Rutter Group 2017).........................................6

Fed. R. Civ. P. 23(d) ........................................................................................................................8

U.S. Const., Art. III, § 2 ...................................................................................................................6

I.      **INTRODUCTION**

As the Court is aware, the Honorable Loretta A. Preska entered an Order in the action captioned *CFPB, et al. v. RD Legal Funding, LLC, et al.*, No. 1:17-cv-890-LAP (S.D.N.Y.) (the "CFPB Action"), which referred to this Court a very limited issue: "the question of whether the <u>NFL Concussion Litigation</u> settlement agreement [the ("Settlement Agreement")] forbids assignments of settlement benefits." The parties herein subsequently entered a briefing schedule regarding that issue. Nonetheless, one week after the close of briefing, Co-Class Counsel filed this unsolicited motion ("Motion"), prematurely seeking a provisional remedy without first confirming whether the Motion was necessary or permitting this Court an opportunity to rule on threshold jurisdictional issues.

Except as necessary to preserve the jurisdictional challenge raised in their previous briefing, RD Legal Funding Partners, LP, RD Legal Finance, LLC ("FINCO"), RD Legal Funding, LLC, and Roni Dersovitz (collectively, "RD Legal"[1]) do not object to the relief sought by Co-Class Counsel's Motion. The Motion, however, is plagued by incorrect legal conclusions and inflammatory rhetoric. RD Legal is therefore compelled to submit this response addressing those flaws and demonstrating why the Motion actually supports RD Legal's position on the substantive issues underlying this dispute.

As RD Legal previously explained, FINCO purchased a portion of the settlement proceeds forthcoming to seven former NFL players:

---

[1] "RD Legal" refers collectively to the defendants in the CFPB Action. Only FINCO, however, entered any assignment contracts relating to this action.

1

| Player | Initial Payment by FINCO to Player | Additional Payments to Player if Settlement Paid by 11/30/2017 | Total Payments to Player if Settlement Paid by 11/30/2017 | Amounts Assigned to FINCO | Players' Total Anticipated Awards |
|---|---|---|---|---|---|
| No. 1 | $202,460.31 | NA | $202,460.31 | $425,166.00 | $1,500,000 |
| No. 2 | $343,120.53 | $197,984.62 | $541,105.15 | $665,234.45 | $2,470,000 |
| No. 3 | $249,574.46 | $163,877.28 | $413,451.74 | $510,000.00 | $1,500,000 |
| No. 4 | $249,574.46 | $172,403.27 | $421,977.73 | $510,000.00 | $1,500,000 |
| No. 5 | $242,857.14 | NA | $242,857.14 | $510,000.00 | $1,500,000 |
| No. 6 | $242,857.14 | NA | $242,857.14 | $510,000.00 | $1,500,000 |
| No. 7 | $100,000.00 | NA | $100,000.00 | $300,000.00 | $1,500,000 |
| **Total** | **$1,630,444.04** | **$534,265.17** | **$2,164,709.21** | **$3,430,400.45** | **$11,470,000** |

As shown above, FINCO has already paid the players more than $1.6 million to purchase a fraction of their settlement proceeds, and the players will receive additional amounts totaling approximately $8 million when the Claims Administrator distributes the settlement payments. Moreover, three of the players will receive significantly more money based on when FINCO receives its money under the contracts (the "Assignment Agreements").[2] (*See* ECF No. 8301-9 at 22, 45 and 8301-10 at 2.)

      The transactions were designed to provide immediate liquidity to players who desired to monetize their forthcoming settlement proceeds, while preserving the vast majority of the proceeds for those players to receive directly from the Claims Administrator. RD Legal thus has no objection to the $3,430,400.45 due to FINCO being placed in escrow by the Claims Administrator. The approach makes sense, as the issues relating to those proceeds have been briefed in this Court and in the Southern District of New York. If Co-Class Counsel had sought to meet and confer before filing this Motion, RD Legal would have agreed to the requested relief

---

[2]  The Assignment Agreements were previously filed with the Court. (*See* ECF Nos. 8301-9 and 8301-10.) The additional payment to the three players with "rebate contracts" decreases by approximately $5,000 to $7,000 for each month that FINCO does not receive its share of the settlement proceeds.

(as it pertains to FINCO) with the caveat that the Claims Administrator be directed to distribute the money to FINCO upon a finding that the Assignment Agreements are valid.[3]

While RD Legal does not object to Co-Class Counsel's request to escrow certain funds that are subject to dispute, RD Legal does not endorse, and the Court should not accept, the faulty reasoning advanced by Co-Class Counsel in its Motion. Indeed, as it pertains to the seven Assignment Agreements that FINCO entered into with former NFL players, the Motion is premised on arguments that at best support RD Legal's position that the Assignment Agreements are enforceable, and at worst are misstatements of the law.

## II. THE FACTUAL AND LEGAL ISSUES RAISED IN THE MOTION SUPPORT RD LEGAL'S POSITION THAT SETTLEMENT PROCEEDS ARE ASSIGNABLE

### A. *The Motion Reveals that More than a Thousand Assignment Transactions Were Entered Into, Which Demonstrates that the Settlement Agreement Failed to Expressly and Clearly Prohibit the Assignment of Settlement Proceeds*

Under New York law, "only *express* limitations on assignability are enforceable." *Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*, 109 F.3d 850, 856 (2d Cir. 1997) (emphasis in original). To prohibit the assignment of money due under a contract, an anti-assignment clause must contain "clear, definite and appropriate language" declaring an assignment invalid. *Allhusen v. Caristo Constr. Corp.*, 303 N.Y. 446, 452 (1952); *accord Sullivan v. Int'l Fid. Ins. Co.*, 465 N.Y.S.2d 235, 237 (N.Y. App. Div. 1983) (citing *Allhusen*).

---

[3] Co-Class Counsel also requests that the Court order class members and their independent personal attorneys to disclose to the Claims Administrator "the existence and the terms of any and all Class Member agreements with third parties." (Mot. at 4.) FINCO previously provided Co-Class Counsel with a copy of all Assignment Agreements with class members, so this request has no application to FINCO.

3

Co-Class Counsel's Motion reveals for the first time that it is aware of more than "nine hundred (and possibly over 1,000)" class members who entered into assignment agreements with at least twenty-seven funding companies, and that many of those agreements were acknowledged by the class members' personal attorneys. (Mot. at 4, 6 at n.3, & 7 at n.5.) The sheer number of assignment contracts demonstrates that the underlying Settlement Agreement did *not* contain express, clear, and definite language putting third parties on notice that the settlement proceeds are not assignable. Indeed, the volume of contracts acknowledging the assignability of proceeds is persuasive evidence that the Settlement Agreement's anti-assignment clause does not prohibit the assignment of settlement proceeds.

### B.     *The Motion Implicitly Supports that Settlement Proceeds are Assignable*

In its briefing regarding the assignability of Settlement Proceeds, RD Legal explained that the Settlement Agreement contains a broad definition of "Liens" that encompasses the security interest created by the assignment of settlement proceeds and thus confirms that such assignments are *not* prohibited. (*See* ECF No. 6481-1 at § 2.1(uu).) While Co-Class Counsel previously disputed this fact, it now agrees with RD Legal that the assignments fall under the expansive definition of "Liens" in the Settlement Agreement, and should have been disclosed by the players as "Liens" to the Claims Administrator. (Mot. at 6.)

Co-Class Counsel's change in position confirms what RD Legal has argued all along: the Settlement Agreement contemplates that its proceeds are assignable, and such assignments fall within the agreement's expansive definition of a Lien. The only fair reading of the Settlement Agreement is that (a) the Settlement Agreement does not prohibit the assignment of settlement proceeds, and (b) FINCO's Assignment Agreements are therefore enforceable.

4

### C. *Funding Transactions Cannot be Both Loans and Assignments*

Co-Class Counsel's erroneous reasoning is highlighted by its repeated, contradictory description of the transactions as "loans packaged as assignments." (Mot. at 4; *see also id.* at 2, 9.) Assignments (*i.e.*, true sales) and loans are distinct types of transactions, *see, e.g.*, *In re Dryden Advisory Grp., LLC*, 534 B.R. 612, 620-26 (M.D. Pa. 2015) (applying New York law to determine if funding transaction was a true sale or a secured loan); *see also Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1068-69 (2d Cir. 1995) (analyzing whether funder was a bona fide purchaser or merely a lender), and the Court should reject the oxymoron advanced by Co-Class Counsel, which improperly conflates the two types of transactions and mischaracterizes the Assignment Agreements. To the extent Co-Class Counsel is suggesting that the FINCO transactions are actually loans, as opposed to assignments, that issue has not been referred to the Court by Judge Preska and has not been briefed,[4] nor is it relevant to whether the Settlement Agreement prohibits the assignment of settlement proceeds. Indeed, if the transactions were loans, then the Settlement Agreement's anti-assignment clause would be *inapplicable* and there would have been no need for the limited referral from Judge Preska.[5]

### D. *Co-Class Counsel's Theories Go Well Beyond the Statutory and Constitutional Limits of this Court's Jurisdiction*

While RD Legal does not dispute this Court's jurisdiction over the settlement res, the parties to the MDL, and the counsel involved in the MDL, Co-Class Counsel advances a view of

---

[4] Although the characterization of the transactions is not an issue before the Court, it is clear that the Assignment Agreements—which expressly give FINCO no recourse against the sellers—are true sales and not loans under New Jersey law, which governs the transactions. *See Dopp v. Yari*, 927 F. Supp. 814, 820 (D.N.J. 1996) (stating that a loan is characterized by a borrower's "absolute obligation to repay the principal"). Accordingly, any references to the Assignment Agreements as loans or to FINCO as a "lender" are inaccurate and should be rejected.

[5] As RD Legal previously explained, the issue referred by Judge Preska requires the Court to assume the FINCO transactions are valid assignment agreements.

the Court's power that is contrary to the *limited* subject matter jurisdiction of federal courts.  *See, e.g.*, *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("Subject-matter jurisdiction . . . is an Article III as well as a statutory requirement" that "functions as a *restriction on federal power*") (emphasis added)).

"[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."  *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) (emphasis added); *see also Wilson v. Sec'y Pa. Dep't of Corr.*, 782 F.3d 110, 114 (3d Cir. 2015) (citing *Henderson* and addressing jurisdictional issues *sua sponte*).  As the Court is well aware, the Constitution limits the federal judicial power to designated "cases" and "controversies," U.S. Const., Art. III, § 2, and the basic federal jurisdictional statutes are 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1332 (diversity jurisdiction).  "The parties to a federal civil action *cannot*" ignore those limitations and "*create* subject matter jurisdiction (*e.g.*, by stipulation, consent or inaction) where jurisdiction does not exist."  Hon. Beverly Reid O'Connell and Hon. Karen L. Stevenson, *Rutter Group Prac. Guide: Fed. Civ. Proc. Before Trial Nat'l Ed.*, ¶ 2:15 (Rutter Group 2017) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) and *Evergreen Square of Cudahy v. Wisconsin Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 465 (7th Cir. 2015)).

Here, Co-Class Counsel's attempts to have the Court adjudicate the enforceability of contracts between FINCO (or other non-party funding companies), on the one hand, and players or their attorneys, on the other, do not satisfy the case-and-controversy requirement of Article III, federal question jurisdiction, or diversity jurisdiction.

*First*, in briefing the issue referred to this Court by Judge Preska, RD Legal raised the jurisdictional issue and argued that there is no legal authority that permits one district court to refer to a second district court the adjudication of a single issue from a motion pending before the first district court. *See Kearney for Kearney v. Jandernoa*, 172 F.R.D. 381, 383 (N.D. Ill. 1997) ("[M]otions, or parts of motions, cannot be transferred.").[6] This Court does not have subject matter jurisdiction of any issue raised in the CFPB Action, and RD Legal respectfully requests that the Court decline to rule on any issue pertaining to FINCO's funding contracts.

*Second*, even if the Court believes that it has jurisdiction to decide the limited question referred by Judge Preska, the Court lacks jurisdiction to rule on issues raised by Co-Class Counsel that go beyond this limited question. (*See, e.g.*, Mot. at 4 (characterizing the Court's role as "determin[ing] the entities' entitlement to monies").) There is no case or controversy pending between FINCO and any of the seven NFL players with which it contracted, and Co-Class Counsel does not represent any of those players with respect to any contractual issue between the players and FINCO—to the contrary, by this motion Co-Class Counsel is seeking relief from "individually-retained counsel." (*See, e.g.*, Mot. at 6.) Moreover, there is no federal question jurisdiction regarding the enforceability of those Assignment Agreements, and there has been no attempt to establish diversity jurisdiction, which almost certainly would not exist in any event. *Cf. Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 182 (3d Cir. 2008) ("[C]ourts are to look to the citizenship of all the partners (or members of other unincorporated associations) to determine whether the federal district court has diversity jurisdiction.").

---

[6] This jurisdictional challenge was timely raised. RD Legal previously objected to any issue being transferred to this Court, but, in any event, "[o]bjections to subject-matter jurisdiction . . . may be raised at any time." *Shinseki*, 562 U.S. at 434; *Insurance Corp. of Ireland*, 456 U.S. at 702 ("a party does not waive [defective subject matter jurisdiction] by failing to challenge jurisdiction early in the proceedings").

*Third*, in this Motion, Co-Class Counsel appears to go even a step further by requesting that the Court adjudicate the enforceability of contracts between FINCO (and other funding companies) and counsel for some of the players.  Of course, the funding companies and the attorneys are not parties to any action pending before this Court.  The only ostensible basis proffered by Co-Class Counsel for jurisdiction is that the Settlement Agreement itself has a clause allowing the Court to retain jurisdiction.  (*See* Mot. at 10-11, citing ECF No. 6481-1, at 95.)  But the Settlement Agreement cannot create subject matter jurisdiction over non-parties. *See Insurance Corp. of Ireland*, 456 U.S. at 702.

"[F]ederal courts possess only that power authorized by Constitution and statute, and considerations of judicial economy alone may not expand federal jurisdiction." *Evergreen Square of Cudahy*, 776 F.3d at 468 (rejecting argument that because case would be removed by cross-defendant once remanded to state court, federal court should not dismiss for lack of jurisdiction) (internal citations omitted).  Thus, while Co-Class Counsel has at times relied on Rule 23, the All Writs Act, and the Settlement Agreement as sources for this Court's subject matter jurisdiction, none of those rules or agreements are sufficient to satisfy the constitutional and statutory limits of the Court's jurisdiction.  *See Infant Formula Antitrust Litig.*, *MDL 878 v. Abbott Labs.*, 72 F.3d 842, 843 (11th Cir. 1995) ("Rule 23(d) is only a procedural law; it is not a grant of subject matter jurisdiction.");[7] *United States v. Apple MacPro Computer*, 851 F.3d 238, 244 (3d Cir. 2017) ("The All Writs Act does not itself confer any subject matter jurisdiction, but rather only allows a federal court to issue writs 'in aid of' its existing jurisdiction."); *Insurance*

---

[7] *See also County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1304 (2d Cir. 1990) ("The purpose of Rule 23(d) is to provide the district court with the means for facilitating 'the fair and efficient conduct of the action.'") (quoting Fed. R. Civ. P. 23(d), advisory committee's note, 39 F.R.D. 69, 106 (1966)); *Cobell v. Kempthorne*, 455 F.3d 317, 324-35 (D.C. Cir. 2006) (Rule 23(d) "does not authorize substantive orders protecting the very rights class members seek to vindicate").

*Corp. of Ireland*, 456 U.S. at 702 ("[N]o action of the parties can confer subject matter jurisdiction upon a federal court."). And certainly none confer subject matter jurisdiction for this Court to adjudicate the enforceability of the agreements between FINCO and the seven former NFL players and/or their counsel—contracts that have not been challenged by the *parties* to those funding agreements.

### III. CONCLUSION

For the reasons stated above, RD Legal respectfully does not oppose the $3,430,400.45 due to it being escrowed by the Claims Administrator, provided the Claims Administrator be directed to distribute to FINCO the aforementioned $3,430,400.45 upon a finding that either (a) the Settlement Agreement does not preclude the assignment of settlement proceeds, or (b) this Court lacks jurisdiction to adjudicate the enforceability of the contracts between FINCO and the players and/or their attorneys.

Dated this 8th day of November, 2017.   Respectfully submitted,

/s/ Michael D. Roth

| | |
|---|---|
| BROTMAN LAW | BOIES SCHILLER FLEXNER LLP |
| ELLEN C. BROTMAN, ESQ. | DAVID K. WILLINGHAM |
| 150 North Radnor Chester Road | MICHAEL D. ROTH |
|  Suite F200 | JEFFREY M. HAMMER |
| Radnor, Pennsylvania 19087 | 725 South Figueroa Street, 31st Floor |
| Telephone:  (610) 977-2412 | Los Angeles, California 90017-5524 |
| Facsimile:  (610) 977-0043 | Telephone: (213) 629-9040 |
| | Facsimile: (213) 629-9022 |

Attorneys for RD LEGAL FUNDING, LLC; RD LEGAL FINANCE, LLC; RD LEGAL FUNDING PARTNERS, LP; and RONI DERSOVITZ