# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>      Plaintiffs,<br><br>      v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>      Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## CO-LEAD CLASS COUNSEL'S MEMORANDUM IN OPPOSITION TO NEUROCOGNITIVE FOOTBALL LAWYERS, PLLC'S AND THE YERRID LAW FIRM'S "MOTION TO PRIORITIZE"

## I.  INTRODUCTION

On October 27, 2017, Neurocognitive Football Lawyers, PLLC, and The Yerrid Law Firm (collectively, "the Neurocognitive Lawyers") filed a response to the proposed common benefit fee allocation of Co-Lead Class Counsel ("Class Counsel") (ECF No. 8447) that was presented as a concurrent counter-declaration and "motion to prioritize" (ECF No. 8723) ("Motion to Prioritize").  The long-winded, ninety one-word title of this submission reflects its sanctimonious tone.

The Motion to Prioritize fails for three reasons.  *First*, it is substantively improper. Rather than weigh in on Class Counsel's proposed *allocation* of a fee award (ECF Nos. 8447, 8447-1), which was the purpose behind the Court's October 12, 2017 Order (ECF No 8448), the Neurocognitive Lawyers used the response as a platform to argue for indefinite delay of a fee award altogether and to again take issue with the proposed adoption of a set-aside.  The opportunity that the Court afforded, though, was not to supplement the briefing of the underlying Fee Petition[1] itself, which concluded over six months ago and concerning which the Neurocognitive Lawyers were already heard (*see* ECF No. 7350).

*Second*, the motion's factual premise is unsupported.  Class Members' interests have *not* been ignored and monetary awards are steadily being issued.  As of last week, monetary awards[2] of approximately $195 million had been approved, with nearly $100 million already distributed to Class Members, in addition to which 2,136 Retired NFL Football Players had been scheduled

---

[1] "Fee Petition" refers to the combined petition, filed on February 13, 2017, for an award of common benefit fees, reimbursement of common benefit expenses, incentive/case contribution/service awards to the three Class Representatives, and imposition of a five-percent holdback or set-aside on Class Members' monetary awards (ECF No. 7151).

[2] In the interest of brevity, "monetary award" encompasses Monetary Awards under Article VI of the Settlement Agreement (ECF No 6481-1) and Derivative Claimant Awards under Article VII thereof, including awards made to Representative Claimants.

for Baseline Assessment Program ("BAP") examinations.   Because implementation of the Settlement Agreement is now in full swing and monetary relief is regularly flowing to Class Members, there is no reason to delay the adjudication of the Fee Petition.

*Third*, the appointment of a Special Master is unwarranted.  Having received the input of Class Counsel's recommendations, responses thereto, and shortly to receive a reply from Class Counsel, the Court is far better positioned to allocate a fee award than would be any Special Master.  Indeed, the Court expressly declared that, while it was referring the issue of private attorneys' lien petitions to Magistrate Judge Strawbridge, it will decide the Fee Petition itself. ECF No. 7446; *see also* ECF No. 8376, at 2.  A Special Master's involvement at this advanced stage of the Fee Petition proceedings would needlessly delay the petition's resolution for months because a Special Master would have to become fully acquainted with this matter and there would need to be an opportunity for the lodging of objections to a Special Master's Report and Recommendation and for this Court to address those objections.  Besides, a Special Master's recommended allocation will be less informed than an allocation that the Court itself makes based on its own knowledge of this litigation and the role played by various counsel, and on the input received.

In short, the self-righteousness and grandstanding in the Motion to Prioritize do not make up for its complete lack of merit.  The Court should deny it.

**II. ARGUMENT:   THE COURT SHOULD DENY THE MOTION TO PRIORITIZE BECAUSE IT IS AN UNTIMELY SUPPLEMENTAL OBJECTION TO THE FEE PETITION AND LACKS ANY LEGITIMATE FACTUAL BASIS, AND, IN ANY EVENT, THE APPOINTMENT OF A SPECIAL MASTER IS UNWARRANTED**

**A.   The Motion Is an Inappropriate Backdoor Supplemental Objection to the Common Benefit Fee Application and Requested Set-Aside, the Latter of Which Was Not Even the Subject of the Court's October 12th Order**

On September 12, 2017, the Court issued an Order directing Class Counsel to "submit a detailed submission as a proposal for the allocation of lawyers' fees among class counsel including the precise amounts to be awarded along with a justification of those amounts based on an analysis of the work performed."  ECF No. 8367.  Class Counsel duly made that submission on October 10, 2017.  ECF No. 8447.

Thereafter, the Court's October 12, 2017 Order directed the filing of counter-declarations to Class Counsel's proposed allocation of common benefit fees by October 27, 2017.  ECF No. 8448.  The Court did not authorize those objectors or counsel who – like the Neurocognitive Lawyers, as well as the Alexander Objectors (ECF No. 8725), attorney James T. Capretz (ECF No. 8727), the Armstrong Objectors (ECF No. 8532), and the so-called Allen Retired Players (ECF No. 8729), who have joined in the Motion to Prioritize – did not perform common benefit work and for whom, accordingly, no allocation was proposed to file further papers relating to the Fee Petition (ECF No. 7151).[3]

The time for responding to the Fee Petition – be it its common benefit fee component or its distinct request for a five-percent holdback from monetary awards – has long since passed. The briefing of the Fee Petition concluded back on April 10, 2017, upon the filing of the reply

---

[3] The Faneca Objectors also performed no common benefit work, but because the Court had appointed two of their counsel to coordinate the presentation of objections at the Rule 23(e)(2) fairness hearing (ECF No. 6344), Class Counsel proposed an allocation for their services in that respect (ECF No. 8447, at 13 [¶ 16.a]).

papers in support thereof (ECF No. 7464).   The Neurocognitive Lawyers and the other aforementioned objectors availed themselves of the opportunity to be heard in connection with the Fee Petition, whether it was in opposition to the application for a common benefit award or the request for a holdback from monetary awards, or in support of their cross-petition for fees. ECF Nos. 7176, 7230, 7232, 7350, 7354, 7355, 7404, 7608; *see also* ECF Nos. 7533, 7534, 8396 (Alexander Objectors' sundry post-briefing filings).   They did not have permission to make any further submission respecting the Fee Petition.

Stated simply, the Neurocognitive Lawyers exploited the Court's affording an opportunity to those counsel who actually performed common benefit work to respond to Class Counsel's proposed *allocation* of a fee award by using that as a pretext to argue that a fee award be delayed indefinitely and to improperly remonstrate against the requested holdback from monetary awards – the latter of which was not even the subject of Class Counsel's proposed allocation or either of the Court's two aforementioned Orders to begin with.[4]   For this reason alone, the Court should deny the Motion to Prioritize.

---

[4]  Moreover, the Court already announced that it will decide the holdback issue separately, after it receives a report from its appointed, expert, Prof. William B. Rubenstein, concerning that issue and the issue of whether the percentage that any Class Member would be obligated to pay his attorney pursuant to an individual retainer should be capped.  *See* ECF No. 8376 (Order dated Sept. 14, 2017).

**B. Because Class Members Are Receiving Compensation under the Settlement, the Motion to Prioritize Is Baseless**

The Motion to Prioritize does not state on which Class Members' behalf it was filed.[5] Furthermore, having performed no common benefit work, it is doubtful that the Neurocognitive Lawyers even have standing to quibble over how a fee award ought to be allocated.

Putting that aside, what is astounding is the Neurocognitive Lawyers' contention that Class Members' welfare has been disregarded.  ECF No. 8723, at 3.[6]  They suggest that Class Members have been relegated to the sidelines and are waiting for the relief that they are due under the Settlement Agreement while lawyers quibble over fees.  *E.g*, *id*. ("the lawyers compete for fees while the members of the class wait for the benefits, if any"; "players have received only minimal compensation or none at all").

No declaration or other evidentiary support is offered for this sweeping statement.  That is not surprising – for the innuendo that Class Members' interests have been shunted aside while Class Counsel pursues fees is as untrue as it is offensive.  To the contrary, Class Members' interests have been front and center for these many months.  Class Counsel will not delve chapter-and-verse into the sundry settlement implementation filings that have been made in this Court since the January 7, 2017 Effective Date of the Settlement Agreement, be they applications to the Court to approve or appoint notices, structures, procedures, and personnel necessary to or in furtherance of implementation (*e.g*., ECF Nos. 7104, 7112, 7457, 7479, 7713, 7715, 7853,

---

[5] This suggests that the demand that Class Counsel and the other attorneys who performed common benefit work defer payment of their fees and expenses is really a fit of pique on the part of late-coming private lawyers who are upset that the Court has withheld payment of fees under their individual retainers pending further determination as to how large a share of their clients' recoveries they deserve (*see* ECF Nos. 8357-58) than a genuine beef by any Class Members themselves.  Class Counsel should not be held hostage to private attorneys' individual fee grievances.

[6] Page references to docketed items are to ECF pagination, not the pagination of the original document.

8307) or for the protection of Class Members' interests vis-à-vis third-party lenders and claims services providers (*e.g.*, ECF Nos. 7347, 7811, 8470).   Underlying many of these filings, of course, were behind-the-scenes discussions with counsel for the NFL Parties or with others, or research and investigation.   In addition, Class Counsel has prepared for, attended, and made presentations at various hearings relating to the status of implementation, motions filed against third parties, and a Court-initiated hearing on third-party practices (*e.g.*, ECF Nos. 7101, 7122, 7470, 8037, 8362-63, 8392-93, 8410-11).   The Neurocognitive Lawyers may be unaware of them, but the Court is well acquainted with these extensive labors.

What is more, the Neurocognitive Lawyers' suggestion that Class Members are not receiving the settlement compensation that they are due is false.   Just five weeks ago, in response to an unauthorized supplemental objection from the Alexander Objectors (ECF No. 8395), Class Counsel pointed out that, as of October 4, 2017, 104 Notices of Monetary Awards had been issued to Class Members, representing $154,103,567 in payments that had been or would be made, with $67,802,846 in payments already made.   ECF No. 8440-1 (Decl. of Orran L. Brown, Sr., dated Oct. 4, 2017) (at ¶ 3).   A simple perusal of that filing alone would have informed the Neurocognitive Lawyers that Class Members' interests have not been given short shrift.

Those numbers only climbed significantly higher in the ensuing four weeks.   As of November 3, 2017, 140 Notices of Monetary Awards had been issued to Class Members, representing gross awards (*i.e.*, before holdbacks) of approximately $195 million, and nearly $100 million in gross monetary awards had already been distributed, with new Notices of Monetary Awards being issued daily and new payments being issued each month by the Settlement Trustee.   Decl. of Orran L. Brown, Sr. on Settlement Program Implementation after the Effective Date, dated Nov. 3, 2017, ¶ 8 (ECF 8881-1, at 6).   In addition, as of November 1,

2017, appointments for 3,584 examinations on behalf of 2,136 Retired NFL Football Players had been scheduled under the BAP, another major benefit provided under the Settlement Agreement. Decl. of Matthew L. Garretson, dated Nov. 3, 2017, ¶ 6 (ECF 8881-2, at 6).[7]

Simply put, effectuation of the Settlement Agreement is in full gear and Class Members are receiving benefits under the Settlement Agreement on a steady basis.  Contrary to the Neurocognitive Lawyers' unsupported contention (ECF No. 8723, at 2), the implementation process is not being "slow played" and monetary award payments are not being unnecessarily delayed.

The Neurocognitive Lawyers' lament that the "vast majority" of Class Members have not received monetary awards (ECF No. 8723, at 4; emphasis omitted) is unavailing.  To begin with, there is no requirement that payment of fees must await the distribution of settlement proceeds to class members.  *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 479-80 (S.D.N.Y. 1998) (settlement not objectionable merely because attorneys' fees would be disbursed before class members' receipt of their allocations) (citing cases).  Setting that aside, no one can realistically expect most Class Members to have received monetary awards at this relatively early point in time, only ten months after the settlement's Effective Date.  This settlement is *sui generis*.  Monetary awards (now projected to exceed $1 billion, ECF No. 7464-12, at 4) will be paid *over the 65-year life of the Monetary Award Fund*.  Settlement Agreement § 6.10, ECF No. 6481-1, at 42.  Surely, in suggesting that Class Counsel postpone payment of their fees until after Class Members receive their monetary awards (ECF No. 8723, at 5), the Neurocognitive Lawyers cannot maintain (at least not seriously) that Class Counsel must hold

---

[7] The Claims Administrator's and BAP Administrator's respective Declarations accompany the third Joint Status Report on the Implementation of the Settlement Program, filed on November. 3, 2017 (ECF No. 8881).

off for decades to be paid until most Class Members who are expected to eventually qualify for a monetary award have finally received one.  Any such suggestion is preposterous.

This MDL is now into its sixth year, and it has been over thirty months since the Court granted final approval to the Settlement Agreement.  Any delay in the implementation of the settlement is attributable to one cause alone:  the postponed triggering of the Effective Date as a result of meritless objector appeals.  Now that implementation is well underway and Class Members are steadily receiving monetary awards, there is no legitimate justification to further delay compensating the counsel who helped bring about this historic settlement and reimbursing them for the millions of millions of dollars in expenses that they advanced out of pocket.

**C.  There Is No Need for the Appointment of a Special Master Inasmuch as the Court Has Already Announced That It Will Adjudicate the Fee Petition and Has Received Class Counsel's Input Concerning the Relative Contributions of Each Firm Having Performed Common Benefit Work**

When all else fails, call for the appointment of a Special Master.  *See* ECF No. 8723, at 5-6.  That seems to the mantra of the Neurocognitive Lawyers and several other disgruntled lawyers.  The Neurocognitive Lawyers do not explain, however, what precisely it is that the Court needs a Special Master to perform that it is incapable of handling itself.  They suggest that a Special Master ought to be entrusted to make recommended common benefit fee allocations (*see id*. at 5), but this Court is far better equipped to do that given its intimate familiarity with the history of this litigation, and it already announced that it will resolve the Fee Petition.  ECF Nos. 7446, 8376 (at 2).

To the extent that any input was needed, the Court requested and received it from Class Counsel in the form of his recommendations (ECF Nos. 8447, 8447-1).  Lead class counsel often propose the allocation given their superior knowledge of the relative contributions of the counsel who performed work for the common benefit of a class.  *E.g.*, *In re Cathode Ray Tube (CRT)*

*Antitrust Litig.*, No. 1917, 2016 WL 6909680, at *2 (N.D. Cal. Oct. 24, 2016) ("In class actions lead counsel commonly propose the initial plan of fee allocation since class counsel are the most familiar with the amount of work actually contributed by each of the . . . firms, and can assess in a manner that they believe, in good faith, reflects the contributions of counsel to the prosecution and settlement of the claims.") (citing cases; internal quotation marks omitted); *In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92 SAS, 2011 WL 2732563, at *10 (S.D.N.Y. July 8, 2011) (court-appointed lead counsel "have been repeatedly recognized as best suited to gauge the value of one another's contribution to the class").[8]   The Court also invited affected counsel to respond to those recommended allocations (ECF No. 8448), which a number did (ECF Nos. 8556, 8653, 8697, 8701, 8709, 8719, 8720, 8722, 8724, 8728), and shortly it will receive an omnibus reply to those counter-declarations (*see* ECF No 8900).

Furthermore, were a Special Master to be appointed, months of delay would ensue because that individual would need time to get up to speed before making recommendations, and then this Court would have to afford time for the filing of objections to a Special Master's Report and Recommendation and then pass on those objections in order to render a final fee

---

[8] Courts often delegate the allocation of fees to lead class counsel outright for this very reason. *E.g.*, *In re Farmers Grp. Stock Options Litig.*, No. 88-4994, 1991 WL 332500, at *12 (E.D. Pa. Dec. 19, 1991) ("Co-Lead Counsel is hereby directed to allocate the fee and expense award among Plaintiffs' counsel in a fashion which, *in the opinion of Co-Lead Counsel*, fairly compensates Plaintiffs' counsel *in view of their respective contributions* to the prosecution of the litigation.") (emphasis added); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 646 (S.D. Cal. 2011) ("[F]ederal courts routinely affirm the appropriateness of a single fee award to be allocated among counsel and have recognized that lead counsel are better suited than a trial court to decide the relative contributions of each firm and attorney."), *aff'd*, 473 F. App'x 716 (9th Cir. 2012); *In re Korean Air Lines Co., Ltd. Antitrust Litig.*, No. 07-05107 SJO AGRX, 2013 WL 7985367, at *2 (C.D. Cal. Dec. 23, 2013) (allocation of fees would be made by class counsel given that "Settlement Class Counsel are the most familiar with the nature and amount of work done by other plaintiffs' counsel and the contributions they made to prosecution and settlement of this action") *Milliron v. T-Mobile USA, Inc.*, No. 08-4149 (JLL), 2009 WL 3345762, at *18 (D.N.J. Sept. 10, 2009) ("Class Counsel is generally permitted to allocate a fee award to the non-lead counsel who produced work on behalf of the settlement.  This procedure conserves judicial resources and leaves the allocation decision in the hands of counsel who are best-equipped to evaluate the relative contributions of various attorneys to the ultimately successful outcome."), *aff'd*, 423 F. App'x 131 (3d Cir. 2011).

determination. Adding this extra layer of proceedings on top of the extensive fee briefing and Class Counsel's allocation recommendation, the counter-declarations that have been received, and Class Counsel's forthcoming reply is unnecessary and unjustified.

The Neurocognitive Lawyers' assertion that Class Counsel's own expert, Prof. Fitzpatrick, "acknowledge[d]" that courts appoint Special Masters to make allocations is misleading.  ECF No. 8723, at 5.  The point that Prof. Fitzpatrick made in his Declaration was that, *irrespective* of who makes it,  a fee allocation "is based on the relative contribution made by each firm" (ECF No. 8447-2 [¶ 5]).   That was precisely the case here with Class Counsel's allocation recommendations; they reflected firms' relative contributions.  Prof. Fitzpatrick cited *In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. M 07-1827 SI, 2013 WL 1365900, at *17 (N.D. Cal. Apr. 3, 2013), only as an example of a case in which a court had a Special Master recommend the allocation.  At any rate, *Flat Panel* is readily distinguishable because the Special Master there had long been involved in the litigation and thus "had an opportunity personally to deal with, observe and evaluate the work of many of the [Indirect Purchaser Plaintiff] counsel who [were] seek[ing] attorneys' fees and costs."  *Id*. at *3 n.3.  A Special Master appointed at this late date would obviously not possess such longstanding familiarity with the case and the lawyers.  Here, having the benefit of Class Counsel's input (which reflects his intimate knowledge of each firm's contributions and their relative value), the responses thereto, and Class Counsel's upcoming reply, the Court will be far better equipped to make an allocation.

Equally meritless is the Neurocognitive Lawyers' bizarre accusation of "triple-dip[ping]."  ECF No. 8723, at 5.  That assertion rests on a comparison of apples to oranges to watermelons.  Firms that might receive fees for common benefit work *already* performed and that might also be compensated down the road for *future* settlement effectuation-related common benefit work

performed over the course of the Settlement Agreement's 65-year lifespan would not be double-dipping because the compensation would plainly not be for the same work.[9]  As for the matter of fees pursuant to individual retainers, that has nothing to do with Class Counsel's proposed allocation.  The Court has referred that issue to Magistrate Judge Strawbridge and additionally, has tasked Prof. Rubenstein with the preparation of a report concerning whether fee percentages pursuant to individual retainers should be capped.  ECF Nos. 7446, 8376 (at 2).

In short, the Neurocognitive Lawyers presented a response to Class Counsel's proposed allocation that not only strayed beyond the boundaries of what the Court had permitted but also which articulated no persuasive reason for this Court to defer adjudication of Class Counsel's fee petition or to appoint a Special Master in connection therewith.  Accordingly, the Court should deny their Motion to Prioritize.

## III.  CONCLUSION

For the foregoing reasons, the Court should deny the Motion to Prioritize.

Date:  November 9, 2017

Respectfully submitted,

/s/ Christopher A. Seeger
Christopher A. Seeger
SEEGER WEISS LLP
77 Water Street
New York, NY 10005
Tel.:  (212) 584-0700
Fax:  (212) 584-0799
cseeger@seegerweiss.com

**CO-LEAD CLASS COUNSEL**

---

[9]  Furthermore, before deciding the separate holdback request, as noted above, the Court will first receive a report from Prof. Rubenstein, and all parties will have an opportunity to respond to Prof. Rubenstein's report in writing.  ECF No. 8376, at 2-3.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on all counsel of record via the

Court's ECF system on November 9, 2017.


/s/ Christopher A. Seeger
Christopher A. Seeger