UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | Case No. 12-md-2323 (AB)<br><br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>Plaintiffs,<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | **Hon. Anita B. Brody** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**MOVANT RETIRED NFL PLAYERS MOTION FOR RECONSIDERATION OF THEIR MOTION TO DETERMINE PROPER ADMINISTRATION OF CLAIMS UNDER THE SETTLEMENT AGREEMENT [ECF NO. 8267]**

Retired NFL Players Anthony Allen, Brandon Banks, Josh Bell, Fred Bennett, Michael Coe, Emanuel Cook, Dedrick Epps, Steven Harris, Javarris James, Stefan Logan, Tony Nathan, Durwood Roquemore, Maurice Smith, Reggie Smith, Eric Streater and Cornell Webster (collectively the "Movants") respectfully submit this Motion for Reconsideration of their Motion to Determine Proper Administration of Claims Under the Settlement Agreement (the "Motion for Reconsideration") [ECF No. 8267], and state the following in support:

**Nature of this Motion for Reconsideration**

1.  On November 3, 2017, the Court entered an Order [ECF No. 8882] (the "Order")

denying the Motion to Determine Proper Administration of Claims Under the Settlement Agreement (the "Motion"). However, new facts directly related to the issues raised in the Motion, which impact Class Members and which could potentially impact the Court's analysis, have come to light, including and related to the following:

(a) on November 7, 2017 Counsel for the NFL Parties and Co-Lead Class Counsel agreed to require additional terms not contained in the Settlement Agreement, which was not announced until Friday November 10, 2017 by the Claims Administrator (*see* Exhibit A);

(b) on November 8, 2017, the Court issued a Notice[1] [ECF No. 8908] that there would be a conference in chambers with representatives of the NFL, Class Counsel, and the Special Masters, at which time the Court will address any issues related to the implementation of the Settlement Agreement;

(c) on Friday November 10, 2017, the Washington Post published an article citing fairness concerns by Class Members (*see* Exhibit B);

(d) an open letter to the Court claiming to be signed by Class Members and their families has been posted on the internet requesting that the Court take action to support the Class Members (*see* Exhibit C); and

(e) sworn affidavits of numerous Class Counsel and Co-Lead Class Counsel including, among others, Sol Weiss [ECF No. 8701] and Gene Locks in Response to Declaration of Chris Seeger's Proposed Allocation of Common Benefit Attorney's Fees [ECF No. 8709].

---

[1] Shortly after the Notice was filed, an Amended Notice [ECF No. 8909] was filed limiting the appearance on behalf of the Class solely to Co-Lead Class Counsel Chris Seeger, Esq.

**Legal Standard**

2.  Movants acknowledge that the Order is not a judgment or final order and do not intend to lead the Court to error.  Rather, Movants request that the Court take up the Motion to Reconsider under the standard of Federal Rule of Civil Procedure 59(e).

3.  Rule 59(e) provides that a party may file a motion within ten days of the entry of a judgment requesting that the court alter or amend the judgment. Fed. R. Civ. P. 59(e).  "A proper Rule 59(e) motion must be based on either an intervening change in controlling law, the availability of new or previously unavailable evidence, or the need to correct clear error or prevent manifest injustice." *See North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).

4.  Movants request that the Court consider the new facts and prevention of manifest injustice as grounds to support the Motion for Reconsideration.

**Explanation of New Facts**

    a.    **Co-Lead Class Counsel's and NFL Counsel's Agreement to Change the Settlement Agreement on November 7, 2017, and the Claims Administrator's November 10, 2017 Notice.**

5.  On Friday November 10, 2017 at 3:04 p.m., Jennifer Godwin of Brown Greer (the Claims Administrator[2]) indicated as follows:

> On 11/7/17, Co-Lead Class Counsel and Counsel for the NFL Parties directed that neuropsychological testing records submitted in support of claims for Qualifying Diagnoses of Level 1.5 Neurocognitive Impairment and Level 2 Neurocognitive Impairment must include the raw scores from that testing. **Raw test scores are part of the standardized neuropsychological testing protocol in Sections 1(a)(ii) and 2(a)(ii) of Exhibit A-1 to the Settlement Agreement.** [Emphasis added].

A copy of Ms. Godwin's November 10, 2017 entire email (the "Godwin Email") is

---

[2] This Motion incorporates by reference the defined terms in the Amended Class Action Settlement Agreement (ECF No. 6481-1).  All defined terms contained in this Motion have the same meaning as the defined terms contained in the Settlement Agreement.

attached as Exhibit A.

6. Per the Godwin Email, Co-Lead Class Counsel and Counsel for the NFL have again added material requirements to the Settlement Agreement that do not exist. The phrase "raw test scores" does not appear anywhere in the Settlement Agreement, it was added by Co-Lead Class Counsel and Counsel for the NFL behind closed doors and without notice to the Class Members as required under the law when a class action settlement agreement is changed and negatively impacts the rights of the class members.

7. One of the criteria for Retired NFL Football Players diagnosed through the BAP is a neuropsychological testing protocol:

> (ii) Evidence of a moderate to severe cognitive decline from a previous level of performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in two or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual-spatial), provided one of the cognitive domains is (a) executive function, (b) learning and memory, or (c) complex attention
>
> *See* Settlement Agreement, ECF No. 6481-1, pages 106, 107 and 108.

8. Exhibit A-2 of the Settlement Agreement, entitled Baseline Neuropsychological Test Battery and Specific Impairment Criteria for Retired NFL Players (the "Neuropsych Criteria"), provides in relevant part as follows:

> A user manual will be provided to neuropsychologists setting out the cutoff scores, criteria for identifying impairment in each cognitive domain, and statistical and normative data to support the impairment criteria.
>
> *See* Settlement Agreement, ECF No. 6481-1, p. 116.

9. The Neuropsych Criteria indicates that neuropsychologists will be given a user manual to evaluate the data and provide a report to meet the BAP requirements. Nowhere does the Settlement Agreement require turnover of "raw test scores."

10. Movants accept the process and are not attempting to circumvent. Movants object

to continuing forward in the process when the substantive analysis of Claims set forth under the terms and conditions in the Settlement Agreement is being changed. The Claims Administrator, Co-Lead Class Counsel and Counsel for the NFL Parties cannot be allowed to make substance changes that materially alter Claimants' rights for the worse without proper notice to the Class and approval by this Court. *See* Section 6.3 (c) of the Settlement Agreement.

11. Only the Claimants who have elected to be diagnosed through the BAP are required to submit neuropsychological testing reports as part of a Claim Package. Movants and those similarly situated are required to meet the "generally consistent" standard, and are not required to submit neuropsychological testing reports in their Claim Packages.

12. Movants' obvious concern is where will this stop and why continue through the expense, delay and labor of the process on an individual basis when we are aware of an issue on the front end and have the opportunity to vet and clarify the issues at the macro level. The alternative is to force Class Members to continue through the process, pay $1,000 per appeal, conduct an individual appeal of each denied Claim and face the associated log jam and delay. In addition, the burden on Retired NFL Players and their families who cannot afford nor navigate the process on their own is prohibitive and burdensome will result in deserving Claimants not being paid. The result is manifest injustice where the issues could easily be vetted now as the issues have been identified and can be addressed globally rather than in individual appeals.

    **b.  The Notices Limiting the Conference Regarding any Issues Related to the Implementation of the Settlement Agreement.**

13. No one at the closed hearing represents the interests of the Class Members dealing with the challenges raised by the current administration of the Settlement Agreement. Upon information and belief, Co-Lead Class Counsel Seeger Weiss does not represent any Class Members as individual counsel in the day to day submittal of Claims and information to support

the Claims process. As a result, representation by only Mr. Seeger at the Conference does not provide the Class Members vast representation across the current challenges. The sworn affidavits of numerous Class Counsel including, among others, Co-Lead Class Counsel Sol Weiss and Class Counsel Gene Locks, make clear that there are, at a bare minimum, Class Counsel and independent counsel who are more familiar with the issues raised in the Motion and more capable of addressing these issues to the Court and finding a working solution.

        c.      **Family Members of Retired NFL Players have Voiced Concern, Doubt and Frustration.**

14. According to an article written by Rick Maese published by the Washington Post (the "Maese Article"), Class Members are experiencing difficulty with what they perceive as an unfair and unmanageable process:

> Debra Fellows initially filed a claim May 23 on behalf of her husband, Ron, a cornerback with the Cowboys and Los Angeles Raiders from 1981 to 1988. He had been diagnosed with Alzheimer's more than two years ago.
>
> "We just had another decline a couple days ago," she said this month. "He woke up and told me he was going to call his mom and see how she's doing. Well, she passed away 17 years ago. Those are the kinds of things that are happening now."
>
> Fellows, 60, already qualified for the NFL's 88 Plan, which provides financial assistance to former players suffering from neurocognitive disorders. He and Debra submitted the same paperwork and documentation to the settlement administrator. Six weeks after filing the claim, they were asked for more paperwork. More than three months passed before they received a notice of deficiency Oct. 20.
>
> "And you know what? This isn't just happening to us," Debra said. "It's happening to everybody I speak to. They're being asked for information that they've already been given multiple times. It's all a delay gimmick."

*See* Maese Article, attached as Exhibit B,

15. Debra Fellows reported to the Washington Post that her experience with the process was widespread. The open letter to this Court (the "Open Letter") was found online at the Advocacy for Fairness in Sports website: http://advocacyforfairnessinsports.org/nfl-

concussion-settlement/letter-from-nfl-concussion-settlement-class-members-to-judge-anita-brody/. The Open Letter purports to be "signed" or supported by a list of one hundred Class Members or their family members. *See* Exhibit C.

**Conclusion**

16. The combination of the Claims Administrator's issuance of Deficiency Notices, constant request for additional documents, changes to the requirements to qualify for an Award under the Settlement Agreement, numerous sworn affidavits by Class Counsel and Co-Lead Class Counsel opposing Seeger Weiss' apportionment of attorney's fees have resulted in perception by Class Members that the process is not working and not fair. Moreover, the decision to hold a conference in chambers with representatives of the NFL, Class Counsel, and the Special Masters, to address any issues related to the implementation of the Settlement Agreement days after the denial of the Motion to Determine Proper Administration of the Settlement Agreement, appears to close the doors of the Courthouse to the Class Members and their independent counsel, the press and all Class Counsel except for Chris Seeger. Limiting Class Member representation to Seeger does not help the Class Members when other qualified Class Counsel, such as Gene Locks, represents far more players and has first hand, in-depth experience with the existing underlying problems Class Members are facing in the administration of this Agreement. *See* Locks Affidavit, ECF No. 8709 filed on October 27, 2017.

17. Under the circumstances, Movants respectfully request that the Court reconsider its ruling, hold an open hearing allowing a broader representative panel that understands the day to day struggles of the Class Members in the administration of the Settlement Agreement and voices the concerns of Class Members, open the doors of the Courthouse to knowledgeable Class Counsel and independent counsel to vet the issues raised and protect the Class Members and

reserve ruling on any information presented to the Court at the closed door conference.

19. Movants further request that the Court require that a court reporter be present at the conference, the entire conference in chambers be held on the record and a transcript be created and filed on the Court's Docket.

Dated:  November 13, 2017

Respectfully Submitted,

Patrick J. Tighe
Attorneys for Plaintiffs/Movants
X1LAW, P.A.f/k/a Patrick J. Tighe, P.A.
721 US Highway 1, Ste 121
North Palm Beach, FL 33408
Phone: 561-537-3319
Fax: 561-537-7193
Pat@X1LAW.com
Florida Bar No. 568155

Attorneys for Plaintiffs/Movants
LOREN & KEAN LAW
7111 Fairway Drive, Suite 302
Palm Beach Gardens, FL  33418
Phone: 561-615-5701
Fax: 561-615-5708
mstjacques@lorenkeanlaw.com
Florida Bar No. 0783471

*s/ Michael St. Jacques*
Michael G. St. Jacques, II

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2017, the foregoing document was electronically filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, and that the filing is available for downloading and viewing from the electronic court filing system by counsel for all parties.

**LOREN & KEAN LAW**

*s/ Michael St. Jacques*
**MICHAEL G. ST. JACQUES, II**