UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*In re National Football League Players' Concussion Injury Litigation*

*No. 2:12-md-02323-AB*

### SUPPLEMENTAL DECLARATION OF BRIAN T. FITZPATRICK

1.  I filed a declaration in this Court on October 10, 2017, opining that the fee allocation proposed by lead counsel in this case was reasonable. Several law firms filed responses to the proposed allocation, and lead counsel asked me to review them and weigh whether they alter my opinion that the proposed allocation here is reasonable. They do not.

2.  The gravamen of the opposition to the proposed allocation is not that lead counsel failed to credit the work of various law firms as sufficiently important, but, rather, that lead counsel failed to give the law firms enough work to begin with. That is more of a challenge to how lead counsel prosecuted this case than it is to the allocation of fees, and there is little the court can do about it now: the court cannot go back in time and ask lead counsel to reallocate the work. But even if this were the time and the place to complain about how lead counsel prosecuted the case, I will note that nothing about how the work was allocated in this case strikes me as unreasonable. When this case began, it looked like the typical mass tort MDL: the defendant's product allegedly caused thousands of people many different sorts of physical injuries, and it looked like it might take years of discovery, examination of experts, motions practice, and bellwether trials before the thousands of cases might settle. MDLs that like require lead counsel to farm work out to a legion of different lawyers through an elaborate committee structure. Although that's how this case began, it's not how it ended. This case ended as a class action settlement before discovery—expert or otherwise—had even begun. In other words,

1

unlike most mass tort MDLs, this case ended up being almost entirely about how to devise a fair settlement that could be achieved through Fed. R. Civ. P. 23.  That resolution did not require legions of law firms working through an elaborate committee structure; it required a small group of very creative and dedicated lawyers.  And that's exactly who handled this case.

       3.      With respect to the proposed fee allocation itself, as I noted in paragraph 10 my opening declaration, as far as I am aware, this is the most equitable range of lodestar multipliers that has ever been used in a fee allocation.  None of the law firms opposed to the proposal disputed that fact.  Instead, some of the law firms oppose using the lodestar method at all.  Indeed, some of the firms went so far as to imply that it was inconsistent with one of my declarations in the *Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation* for me to support using the lodestar method here.  *See* ECF No. 8701 (Anapol), at 14 n.8; ECF No. 8720-2 (Tarricone), at 10 n.6.  But my declaration in *Volkswagen* was directed to the reasonableness of an aggregate fee award, not to the reasonableness of the allocation of an aggregate award.  I generally oppose the lodestar method and support the percentage method for aggregate awards because the percentage method creates better incentives for class counsel.  But the percentage method is not as viable for the allocation because we do not have a pre-existing market of fee percentages to draw upon.  For example, for the aggregate award, we know that contingency-fee lawyers usually charge 33% for their work and we know that courts usually award successful class action contingency-fee lawyers 25%; we can start with these numbers and work our way to a proper aggregate percentage.  But where would we start for the allocation?  Is there a pre-existing market that tells us what a lawyer assigned to do communications should get as a percentage?  The lawyers assigned to discovery?  To settlement negotiations?  Not that I am aware of.  This is why, absent an agreement among the lawyers on

what their relative percentages will be, in my experience, courts, special masters, and lead counsels use the lodestar method to allocate. This is not to say that the lodestar method is ideal. Using the lodestar method to allocate fees can cause some of the same bad incentives I worry about when it is used for aggregate awards: if firms know they will be apportioned fees based on how big their lodestars are, they will churn and inflate their hours. Lead counsel can counter these incentives to some degree by adjusting the lodestar multipliers, as lead counsel did here. But maybe one day someone will invent an even better method—it is a problem I have been working on personally for some time now.

4. Pursuant to 28 U.S.C. § 1746, I declare the foregoing true and correct under penalty of perjury.

/s/ Brian T. Fitzpatrick

Brian T. Fitzpatrick

Nashville, TN

November 17, 2017