# EXHIBIT "A"

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUL 19 2011

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
SHAUNYA WESLEY

1  GIRARDI | KEESE
   THOMAS V. GIRARDI, Bar No. 36603
2  1126 Wilshire Boulevard
   Los Angeles, California 90017
3  Telephone: (213) 977-0211
   Facsimile: (213)481-1554
4
5  RUSSOMANNO & BORRELLO, P.A.
   Herman Russomanno, (Florida Bar No. 240346)
6  Robert Borrello, (Florida Bar No. 764485)
   150 West Flagler Street - PH 2800
7  Miami, FL 33130
   Telephone: (305) 373-2101
8  Facsimile: (305) 373-2103
9
   GOLDBERG, PERSKY & WHITE, P.C.
10 Jason E. Luckasevic, (Pennsylvania Bar No. 85557)
   John T. Tierney, III (Pennsylvania Bar No. 00287)
11 1030 Fifth Ave.
   Pittsburgh, PA 15219
12 Telephone: (412) 471-3980
   Facsimile: (412) 471-8308
13
14 *Attorneys for Plaintiffs*

15           SUPERIOR COURT OF THE STATE OF CALIFORNIA

16                    COUNTY OF LOS ANGELES

17

18 VERNON MAXWELL; BRODERICK        )  CASE NO.
   JONES; KENDALL WILLIAMS and      )
19 INGRID WILLIAMS, his wife; MIKE C.)  **BC 465842**
   RICHARDSON; RENARD YOUNG and     )  **PLAINTIFFS' COMPLAINT FOR**
20 VANESSA YOUNG, his wife; LONZELL )  **DAMAGES AND DEMAND FOR JURY**
   HILL and LANITA HILL, his wife;  )  **TRIAL**
21 GEORGE VISGER and KRISTIE        )
   VISGER, his wife; TERRY WRIGHT;  )  1. Negligence – Monopolist
22 NEWTON WILLIAMS; DUANE           )  2. Negligence
   GALLOWAY; GEORGE JAMISON and     )  3. Fraud
23 ARNELLA JAMISON, his wife; BRYAN )  4. Negligence
   HOOKS; FRED MCNEILL and TIA      )  5. Strict Liability – Design Defect
24 MCNEILL, his wife; REGINALD      )  6. Strict Liability – Manufacturing Defect
   ROGERS, SR.; MELVIN JENKINS and  )  7. Failure to Warn
25 JAVONI JENKINS, his wife; ANTONIO)  8. Negligence
   GIBSON and BETTY GIBSON, his wife;)  9. Loss of Consortium
26 ALVIN MOORE and ODETTA MOORE,    )
27                                  )
28

BY FAX

-1-

COMPLAINT FOR DAMAGES

his wife; LYVONIA A. MITCHELL; KIRK )
CAMERON JONES; JAMES E. ROBBINS )
and SHANEETA ROBBINS, his wife; )
ROBERT J. FREDRICKSON and )
BARBARA FREDRICKSON, his wife; )
CHARLES E. MILLER; EDWARD P. LEE )
and SUSAN LEE, his wife; PATRICK )
HEENAN and SHARRON HEENAN, his )
wife; TOBY L. WRIGHT; KELLY )
KIRCHBAUM; )
JAMES HOOD and BONITA HOOD, his )
wife; RICHARD MERCIER and YADIRA )
MERCIER, his wife; )
BRETT ROMBERG and EMILY )
ROMBERG, his wife; STEVE KORTE and )
KARELIS KORTE, his wife; JOE HARRIS )
and LYDIA HARRIS, his wife; RODNEY )
HAMPTON and ANDETRIA HAMPTON, )
his wife; LEWIS D. TILLMAN and )
KATHY TILLMAN, his wife; LARRY )
KAMINSKI and LINDA KAMINSKI, his )
wife; DAVID KOCOUREK and MARY )
LEE KOCOUREK, his wife; ROBERT )
WEATHERS and DENISE WEATHERS, )
his wife; WAYNE HAWKINS and )
SHARON HAWKINS, his wife; )
ANTHONY HARGAIN; EDWARD )
PAYTON and RICA PAYTON, his wife; )
WILLIAM H. MANDLEY and TERESA )
MANDLEY, his wife; SHANTE CARVER; )
GEORGE GOEDDEKE and GENEVA )
GOEDDEKE, his wife; JAMES MICHAEL )
SCHNITKER and BEVERLEE )
SCHNITKER, his wife; CHRISTOPHER )
CALLOWAY; )
THOMAS C. RANDOLPH, II and )
EVELYN RANDOLPH, his wife; GARY )
JONES and TINA JONES, his wife; OTTIS )
ANDERSON and WANDA ANDERSON, )
his wife; LEONARD RUSSELL and )
TASHA RUSSELL, his wife; RORY )
GRAVES; DAVID M. WHITE and )
MONICA WHITE, his wife; PHILIP )
SMITH and GAIL SMITH; W. VERNON )
DEAN; ANTHONY COVINGTON; )
ANTHONY JONES and VALERIE )

-2-

COMPLAINT FOR DAMAGES

| | |
|---|---|
| 1 | JONES, his wife; STEVE REESE and |
| | MARILYN REESE, his wife; DONALD |
| 2 | BESSILLIEU; HAROLD L. JACKSON |
| | and CAROLYN JACKSON, his wife; |
| 3 | TODD JOHNSON and SHANNON |
| 4 | JOHNSON, his wife; CHRIS GOODE; |
| | BRUCE WALKER and VANISHA |
| 5 | WALKER, his wife; DERRICK S. |
| | REYNOLDS; DAVID LEWIS and |
| 6 | BONNIE LEWIS, his wife; RONNIE |
| | LIPPETT and SHERYL LIPPETT, his |
| 7 | wife; ROLAND JAMES and CARMEL |
| 8 | JAMES, his wife; MARK S. DUPER; |
| | BRIAN INGRAM and SARCA INGRAM, |
| 9 | his wife; ANTHONY COLLINS and |
| | TRUDY COLLINS, his wife; STEVE |
| 10 | NELSON and ANGELA NELSON, his |
| 11 | wife; JAMES E. WILLIS and SHALANE |
| | WILLIS, his wife; ANTHONY HANCOCK |
| 12 | and PAULA HANCOCK, his wife; JEFF |
| 13 | BURRIS; WILLIAM C. BRADLEY and |
| | SUSAN BRADLEY, his wife; KERRY |
| 14 | GOODE and TANJA GOODE, his wife; |
| | RAYMOND CLAYBORN and |
| 15 | KIMBERLEY CLAYBORN, his wife; |
| 16 | STEVEN ZABEL and SUSAN ZABEL, his |
| | wife, |
| 17 | |
| |         Plaintiffs, |
| 18 | |
| 19 | vs. |
| 20 | NATIONAL FOOTBALL LEAGUE; NFL |
| | PROPERTIES LLC; RIDDELL, INC. d/b/a |
| 21 | RIDDELL SPORTS GROUP, INC., ALL |
| 22 | AMERICAN SPORTS CORPORATION, |
| | d/b/a RIDDELL/ALL AMERICAN; |
| 23 | RIDDELL SPORTS GROUP, INC, |
| | EASTON-BELL SPORTS, INC.; |
| 24 | EASTON-BELL SPORTS, LLC; EB |
| | SPORTS CORP.; and RBG HOLDINGS |
| 25 | CORP.; and JOHN DOES 1 through 100, |
| 26 | Inclusive, |
| 27 |         Defendants. |
| 28 | |

-3-

COMPLAINT FOR DAMAGES

The Plaintiffs, all individuals, hereby complains of Defendants listed above and hereby alleges as follows:

## **PARTIES**

**Plaintiffs:**

1.     Mr. Vernon Maxwell is a resident of and domiciled in the State of Arizona.

2.     Mr. Broderick Jones is a resident of and domiciled in the State of Alabama.

3.     Mr. Kendall Williams and his wife, Ingrid, are residents of and domiciled in the State of Nevada.

4.     Mr. Mike C. Richardson is a resident of and domiciled in the State of California.

5.     Mr. Renard Young and his wife, Vanessa, are residents of and domiciled in the State of California.

6.     Mr. LonZell Hill and his wife, Lanita, are residents of and domiciled in the State of Ohio.

7.     Mr. George Visger and his wife, Kritsie, are residents of and domiciled in the State of California.

8.     Mr. Terry Wright is a resident of and domiciled in the State of Arizona.

9.     Mr. Newton Williams is a resident of and domiciled in the State of North Carolina.

10.     Mr. Duane Galloway is a resident of and domiciled in the State of California.

11.     Mr. George Jamison and his wife, Arnella, are residents of and domiciled in the State of Michigan.

12.     Mr. Bryan Hooks is a resident of and domiciled in the State of Arizona.

13.     Mr. Fred McNeill and his wife, Tia, are residents of and domiciled in the State of California.

14.     Mr. Reginald Rogers, Sr. is a resident of and domiciled in the State of Washington.

15.     Mr. Melvin Jenkins and his wife, Javoni, are residents of and domiciled in the State of Arizona.

-4-

16.     Mr. Antonio Gibson and his wife, Betty, are residents of and domiciled in the State of Texas.

17.     Mr. Alvin Moore and his wife, Odetta, are residents of and domiciled in the State of Arizona.

18.     Mr. Lyvonia A. Mitchell is a resident of and domiciled in the State of Louisiana.

19.     Mr. Kirk Cameron Jones is a resident of and domiciled in the State of Florida.

20.     Mr. James E. Robbins and his wife, Shaneeta, are residents of and domiciled in the State of Arizona.

21.     Mr. Robert J. Fredrickson and his wife, Barbara, are residents of and domiciled in the State of Arizona.

22.     Mr. Charles E. Miller is a resident of and domiciled in the State of California.

23.     Mr. Edward P. Lee and his wife, Susan, are residents of and domiciled in the State of Maryland.

24.     Mr. Patrick Heenan and his wife, Sharron, are residents of and domiciled in the State of Tennessee.

25.     Mr. Toby L. Wright is a resident of and domiciled in the State of Arizona.

26.     Mr. Kelly Kirchbaum is a resident of and domiciled in the State of Kentucky.

27.     Mr. James Hood and his wife, Bonita, are residents of and domiciled in the State of California.

28.     Mr. Richard Mercier and his wife, Yadira, are residents of and domiciled in the State of Florida.

29.     Mr. Brett Romberg and his wife, Emily, are residents of and domiciled in the State of Florida.

30.     Mr. Steve Korte and his wife, Karelis, are residents of and domiciled in the State of Louisiana.

31.     Mr. Joe Harris and his wife, Lydia, are residents of and domiciled in the State of Georgia.

-5-

32.     Mr. Rodney Hampton and his wife, Andetria, are residents of and domiciled in the State of Texas.

33.     Mr. Lewis D. Tillman and his wife, Kathy, are residents of and domiciled in the State of Mississippi.

34.     Mr. Larry Kaminski and his wife, Linda, are residents of and domiciled in the State of Washington.

35.     Mr. David Kocourek and his wife, Mary Lee, are residents of and domiciled in the State of Florida.

36.     Mr. Robert Weathers and his wife, Denise, are residents of and domiciled in the State of Florida.

37.     Mr. Wayne Hawkins and his wife, Sharon, are residents of and domiciled in the State of California.

38.     Mr. Anthony Hargain is a resident of and domiciled in the State of California.

39.     Mr. Edward Payton and his wife, Rica, are residents of and domiciled in the State of Mississippi.

40.     Mr. William H. Mandley and his wife, Teresa, are residents of and domiciled in the State of Arizona.

41.     Mr. Shante Carver is a resident of and domiciled in the State of Arizona.

42.     Mr. George Goeddeke and his wife, Geneva, are residents of and domiciled in the State of Michigan.

43.     Mr. James Michael Schnitker and his wife, Beverlee, are residents of and domiciled in the State of Colorado.

44.     Mr. Christopher Calloway is a resident of and domiciled in the State of Georgia.

45.     Mr. Thomas C Randolph, II and his wife, Evelyn, are residents of and domiciled in the State of Virginia.

46.     Mr. Gary Jones and his wife, Tina, are residents of and domiciled in the State of Texas.

-6-

COMPLAINT FOR DAMAGES

47.     Mr. Ottis Anderson and his wife, Wanda, are residents of and domiciled in the State of New Jersey.

48.     Mr. Leonard Russell and his wife, Tasha, are residents of and domiciled in the State of California.

49.     Mr. Rory Graves is a resident of and domiciled in the State of Georgia.

50.     Mr. David M. White and his wife, Monica, are residents of and domiciled in the State of New York.

51.     Mr. Philip Smith and his wife, Gail, are residents of and domiciled in the State of California.

52.     Mr. W. Vernon Dean is a resident of and domiciled in the State of Texas.

53.     Mr. Anthony Covington is a resident of and domiciled in the State of Pennsylvania.

54.     Mr. Anthony Jones and his wife, Valerie, are residents of and domiciled in the State of Alabama.

55.     Mr. Steve Reese and his wife, Marilyn, are residents of and domiciled in the State of Georgia.

56.     Mr. Donald Bessillieu is a resident of and domiciled in the State of Georgia.

57.     Mr. Harold L. Jackson and his wife, Carolyn, are residents of and domiciled in the State of California.

58.     Mr. Todd Johnson and his wife, Shannon, are residents of and domiciled in the State of Florida.

59.     Mr. Chris Goode is a resident of and domiciled in the State of Alabama.

60.     Mr. Bruce Walker and his wife, Vanisha, are residents of and domiciled in the State of California.

61.     Mr. Derrick S. Reynolds is a resident of and domiciled in the State of Florida.

62.     Mr. David Lewis and his wife, Bonnie, are residents of and domiciled in the State of Florida.

-7-

COMPLAINT FOR DAMAGES

63.     Mr. Ronnie Lippett and his wife, Sheryl, are residents of and domiciled in the State of Massachusetts.

64.     Mr. Roland James and his wife, Carmel, are residents of and domiciled in the State of Massachusetts.

65.     Mr. Mark S. Duper is a resident of and domiciled in the State of Florida.

66.     Mr. Brian Ingram and his wife, Sarca, are residents of and domiciled in the State of Georgia.

67.     Mr. Anthony Collins and his wife, Trudy, are residents of and domiciled in the State of North Carolina.

68.     Mr. Steve Nelson and his wife, Angela, are residents of and domiciled in the State of Massachusetts.

69.     Mr. James E. Willis and his wife, Shalane, are residents of and domiciled in the State of Alabama.

70.     Mr. Anthony Hancock and his wife, Paula, are residents of and domiciled in the State of Tennessee.

71.     Mr. Jeff Burris is a resident of and domiciled in the State of Indiana.

72.     Mr. William C. Bradley and his wife, Susan, are residents of and domiciled in the State of Texas.

73.     Mr. Kerry Goode and his wife, Tanja, are residents of and domiciled in the State of Georgia.

74.     Mr. Raymond Clayborn and his wife, Kimberley, are residents of and domiciled in the State of Georgia.

75.     Mr. Steven Zabel and his wife, Susan, are residents of and domiciled in the State of Georgia.

**Defendants:**

-8-

76.     Defendant National Football League ("the NFL") is an unincorporated association with its headquarters located in the State of New York.  The NFL regularly conducts business in California.

77.     Defendant NFL Properties, LLC as the successor-in-interest to National Football League Properties Inc. ("NFL Properties") is a limited liability company organized and existing under the laws of the State of Delaware with its headquarters in the State of New York.  NFL Properties is engaged, among other activities, approving licensing and promoting equipment used by all the NFL teams.  NFL Properties regularly conducts business in California.

78.     Defendant Riddell, Inc. (d/b/a Riddell Sports Group, Inc.) is a corporation organized and existing under the laws of the State of Illinois, and is engaged in the business of designing, manufacturing, selling and distributing football equipment, including helmets, to the NFL and since 1989 has been the official helmet of the NFL.  Riddell, Inc. regularly conducts business in California.

79.     Defendant All American Sports Corporation, d/b/a Riddell/All American, is a corporation organized and existing under the laws of the State of Delaware and is engaged in the business of designing, manufacturing, selling and distributing football equipment, including helmets, to the NFL and since 1989 has been the official helmet of the NFL.  All American Sports regularly conducts business in California.

80.     Defendant Riddell Sports Group, Inc. is a Delaware corporation with its principal place of business at 6255 N. State Highway, #300, Irving, Texas 76038.  Riddell Sports Group, Inc. regularly conducts business in California.

81.     Defendant Easton-Bell Sports, Inc. is a California corporation, incorporated in Delaware with a principal place of business at 7855 Haskell Avenue, Suite 200, Van Nuys, California 91406 and is a parent corporation of Riddell Sports Group Inc.

82.     Defendant Easton-Bell Sports, LLC is the parent corporation of Easton-Bell Sports, Inc. and is incorporated in Delaware, with a principal place of business at 152 West 57th Street, New York, New York 10019.  Easton-Bell Sports, LLC regularly conducts business in California.

-9-

83. Defendant EB Sports Corp. is a Delaware corporation with its principal place of business at 7855 Haskell Avenue, Van Nuys, California 91406.

84. Defendant RBG Holdings Corp. is a Delaware corporation with its principal place of business at 7855 Haskell Avenue, Suite 350, Van Nuys, California 91406.

85. Defendants Riddell, Inc., Riddell Sports Group Inc., All American Sports Corporation, Easton-Bell Sports, Inc., EB Sports Corp., Easton-Bell Sports, LLC, and RBG Holdings Corp., shall hereinafter be referred to collectively as the "Riddell Defendants."

## JURISDICTION AND VENUE

86. Jurisdiction is based upon the California Constitution Article 6, Section 10.

87. Venue is proper in this Court pursuant to Section 395 (A) of the California Code of Civil Procedure.

## INTRODUCTION

88. The National Football League was founded as the American Professional Football Association in 1920.

89. The American Professional Football Association changed its name to the National Football League in 1922. By 1924, there were 23 franchises or teams that devised the NFL.

90. The American Football League operated from 1960 to 1969. In 1970, it merged with the National Football League to create the American Football Conference.

91. Today, the National Football League consists of two structured conferences, the AFC and the NFC, with 32 team members.

92. Each team functions as a separate business but operates under shared revenue generated through broadcasting, merchandising and licensing.

93. The Supreme Court of the United States of America in *American Needle, Inc. v. NFL, et al.,* 130 S.Ct. 2201 (U.S. 2010), ruled that the NFL is a separate entity from each of its teams.

-10-

COMPLAINT FOR DAMAGES

94. The NFL is by far the most attended domestic sports league in the world by average attendance per game with 67,509 fans per game in the regular season (2009).

95. The NFL is a 9 billion dollar-a-year business.

## NFL AND THE CBA

96. Until March of 2011, NFL players were all members of a union called the National Football League Players Association ("NFLPA"). The NFLPA negotiates the general minimum contract for all players in the league with the National Football League Management Council ("NFLMC"). This contract is called the Collective Bargaining Agreement ("CBA") and it is the central document that governs the negotiation of individual player contracts for all of the league's players. However, historically, the NFL retired players have never been the subject of or a party to Collective Bargaining.

97. The CBA had been in place since 1993 and was amended in 1998 and again in 2006. The CBA was originally scheduled to expire at the end of the 2012 season but in 2008 the owners exercised their right to opt-out of the agreement two years earlier. In 2011, the parties in trying to negotiate a new CBA reached an impasse and the NFL owners locked the players out. Subsequently, the NFLPA decertified itself as the players' representative for bargaining.

98. The plaintiffs herein are all retirees and not covered by the CBA nor are they a subject of or parties to bargaining between the NFL and the NFLPA. Thus, the plaintiffs' claims are not preempted by federal labor law since the CBA does not apply to their present claims and, additionally, it does not currently exist.

## CTE AND CONCUSSION INJURY

99. In 2002, Dr. Bennet Omalu, a forensic pathologist and neuropathologist found Chronic Traumatic Encephalopathy (CTE) in the brain of Hall of Famer, Mike Webster.

100. By 2007, Dr. Omalu found a fourth case linking the death of a former NFL player to CTE brain damage from his football career.

-11-

101.    Dr. Omalu says that the brain damage he found in four ex-players who died is the same condition found in punch-drunk boxers.

102.    Around the same time, researchers without NFL ties surveyed retired football players and their findings showed that players who had multiple concussions were more likely to report being diagnosed with depression.

103.    Dr. Omalu questioned "Where was the NFL when we found this disease?"

104.    The NFL undertook the responsibility of studying concussion research in 1994 through funding a Committee known as the "NFL Committee on Mild Traumatic Brain Injury".

105.    The NFL Committee on Mild Traumatic Brain Injury published their findings in 2004 showing "no evidence of worsening injury or chronic cumulative effects" from multiple concussions.  In a related study, this Committee found "many NFL players can be safely allowed to return to play" on the day of a concussion if they are without symptoms and cleared by a physician.

106.    As further evidence, Commissioner Roger Goodell in June of 2007 admitted publicly that the NFL has been studying the effects of traumatic brain injury for "close to 14 years …"

107.    It was not until June of 2010 that the NFL acknowledged that concussions can lead to dementia, memory loss, CTE and related symptoms by publishing warning to every player and team.

## NFL'S DUTY TO PLAYERS AND THE PUBLIC

108.    The NFL overtly undertook a duty to study concussions on behalf of all American Rules Football leagues and players.

109.    As the industry icon, all American Rules Football leagues modeled their programs after the NFL.

110.    In turn, the NFL possesses monopoly power over American Football.  As such, it also possesses monopoly power over the research and education of football injuries to physicians, trainers, coaches and individuals with brain damage such as Plaintiffs who played in the NFL, as well as the public at large.  As a result, it owed a duty to everyone including individuals such as Plaintiffs in the following respects:

-12-

COMPLAINT FOR DAMAGES

(a)   It owed a duty to protect Plaintiffs on the playing field;

(b)   It owed a duty to Plaintiffs to educate them and other players in the NFL about CTE and/or concussion injury;

(c)   It owed a duty to Plaintiffs to educate trainers, physicians, and coaches about CTE and/or concussion injury;

(d)   It owed a duty to Plaintiffs to have in place strict return-to-play guidelines to prevent CTE and/or concussion injury;

(e)   It owed a duty to Plaintiffs to promote a "whistleblower" system where teammates would bring to the attention of a trainer, physician or coach that another player had sustained concussion injury;

(f)   It owed a duty to Plaintiffs to design rules and penalties for players who use their head or upper body to hit or tackle;

(g)   It owed a duty to Plaintiffs to design rules to eliminate the risk of concussion during games and/or practices;

(h)   It owed a duty to Plaintiffs to promote research into and cure for CTE and the effects of concussion injury over a period of time; and

(i)   It owed a duty to State governments, local sports organizations, all American Rules Football leagues and players, and the public at large to protect against the long-term effects of CTE and/or concussion injury.

111.    The NFL knew as early as the 1920's of the harmful effects on a player's brain of concussions; however, until June of 2010 they concealed these facts from coaches, trainers, players, and the public.

112.    Plaintiffs did not know the long-term effects of concussions and relied on the NFL and the Riddell Defendants to protect them.

-13-

## NFL'S KNOWLEDGE OF THE RISK OF CONCUSSIONS

113.   For decades, Defendants have known that multiple blows to the head can lead to long-term brain injury, including memory loss, dementia, depression and CTE and its related symptoms.

114.   This action arises from the Defendants' failure to warn and protect NFL players, such as Plaintiffs against the long-term brain injury risks associated with football-related concussions.

115.   This action arises because the NFL Defendants committed negligence by failing to exercise its duty to enact league-wide guidelines and mandatory rules regulating post-concussion medical treatment and return-to-play standards for players who suffer a concussion and/or multiple concussions.

116.   By failing to exercise its duty to enact reasonable and prudent rules to protect players against the risks associated with repeated brain trauma, the NFL's failure to exercise its independent duty has led to the deaths of some, and brain injuries of many other former players, including Plaintiffs.

117.   The following information, which is by no means comprehensive, was available and easily accessible to Defendants:

(a)   In the 1890's, Admiral Joseph Mason "Bull" Reeves, who is more known as the father of carrier aviation, played American football in the 1890's for the Naval Academy.   He had suffered so many blows to his head that a navy doctor advised him that he could risk death or insanity if he received another kick to his head.

(b)   In 1913, Glenn "Pop" Warner, commented that he had "many times seen cases when hard bumps on the head so dazed the player receiving them that he lost his memory for a time and had to be removed from the game.";

(c)   In 1928, the first case of "Punch Drunk" in boxers was published

-14-

in the *American Association Journal* by HS Martland;

(d) A 1937 article on "Dementia puglisistica" was published in the *US Navy Medical Bulletin*;

(e) A 1952 article on "Electroencephalographic changes in professional boxers was published in the *American Medical Association Journal*;

(f) A 1952 New England Journal of Medicine Article Vol. 246, pp. 554-556 talked about a three strike rule for concussions in 1945 – three concussions and you should retire from football;

(g) A 1954 article on "Observations on the clinical and brain wave patterns of professional boxers" was published in the *American Medical Association Journal*;

(h) A 1956 article on "Diffuse degeneration of the cerebral white matter in severe dementia following head injury" was published in the *Neurological, Neurosurgery and Psychiatry Journal*;

(i) A 1957 article on the "Medical aspects of boxing, particularly from a neurological standpoint" was published in the *British Medical Journal*;

(j) A 1959 article on the "Observations of the pathology of insidious dementia following head injury" was published in the *Journal of Mental Science*;

(k) A 1966 article on "Concussion amnesia" in *Neurology*;

(l) A 1968 article on "brains of boxers" published in *Neurochirurgia*;

(m) A 1969 report by the Royal College of Physicians of London confirmed the danger of chronic brain damage occurring in boxers as a result of their careers;

(n) A 1969 article on "Organic psychosyndromes due boxing" in the

-15-

*British Journal of Psychiatry;*

(o)  A 1969 book on "Brain damage in boxers – A study of the prevalence of traumatic encephalopathy among ex-professional boxers" by AH Roberts;

(p)  A 1970 article on "retrograde memory immediately after concussion" published in the *Lancet;*

(q)  In 1973, a disabling and sometimes deadly condition involving the second impact concussion occurring before symptoms of a first concussion was described by R.C. Schneider.  This later was coined the Second Impact Syndrome in 1984;

(r)  A 1973 article on "the aftermath of boxing" published in *Psychology Medicine;*

(s)  JA Corsellis, CJ Bruton, D Freeman-Browne, *The Aftermath of Boxing,* 3 Psych. Med. 270-303 (1973);

(t)  A 1974 article on "Cerebral concussion and traumatic unconsciousness, Correlation of experimental and clinical observations of blunt head injuries" published in *Brain;*

(u)  A 1974 article on "Traumatic encephalopathy in a young boxer" published in the *Lancet;*

(v)  A 1974 article on "Delayed recovery after mild head injury" was published in the *Lancet;*

(w)  A 1975 article on "cumulative effect of concussion" was published in the *Lancet;*

(x)  J. A. Corsellis, *Brain Damage in Sport,* 1 LANCET 401, 401 (1976) (finding that the brain tissue of fifteen former boxers who sustained multiple head trauma evidenced neuropathological signs of CTE);

(y)  A 1978 article on "Posttraumatic dementia" published in *Aging;*

-16-

(z)   J.C. Maroon, P.B. Steele, R. Berlin, *Football Head & Neck Injuries - An Update,* 27 Clin. Nurosurg. 414-29 (1980);

(aa)  A 1981 article on "Association football injuries to the brain:  a preliminary report" published in the *British Journal of Sports Medicine;*

(bb)  H Hugenholtz, MT Richard, *Return to Athletic Competition Following Concussion*, 127(9) Can. Med. Assoc. J. 827-29 (1982);

(cc)  RC Cantu, *Guidelines to Return to Contact After Cerebral Concussion*, 14 The Physician and Sports Medicine 75-83 (1986);

(dd)  Daniel N. Kulund, The Injured Athlete 269 (1988).  A boxer may be knocked unconscious by the pain of a shot to the eye or neck during a match. See id.  Furthermore, a blow to the heart or solar plexus may block the flow of blood and render the fighter unconscious. Any punches to the temporal region may lead to a loss of balance or dizziness;

(ee)  JA Corsellis, *Boxing and the Brain*, 298 BMJ 105-109 (1989);

(ff)  James P. Kelly et al., *Concussion in Sports, Guidelines for the Prevention of Catastrophic Outcome*, 266 JAMA 2868 (1991);

(gg)  B.E. Leininger & J.S. Kreutzer, *Neuropsychological Outcome of Adults with Mild Traumatic Brain Injury: Implications for Clinical Practice and Research, in* REHABILITATION OF POST-CONCUSSIVE DISORDERS (L.J. Horn & N.D. Zasler eds., State of the Art Reviews, Physical Medicine and Rehabilitation, Hanley & Belfus, Inc. 1992);

(hh)  RC Cantu, *Cerebral Concussion in Sports*, 14(1) Sports Med. 64-74 (1992);

(ii)  RC Cantu, FO Mueller, *Catastrophic Football Injuries  in the USA*, 2(3) Clin. J. Sports Med. 180-85 (1992); and

(jj)  Mild Traumatic Brain Injury Committee of the Head Injury Interdisciplinary Special Interest Group of the American Congress of Rehabilitation Medicine,

-17-

*Definition of Mild Traumatic Injury*, 8 J. HEAD TRAUMA REHABIL. 86-87 (1993).

118.   In addition, the NFL's duty to protect the health and safety of its players is further underscored by the irrefutable evidence that the NFL has previously enacted the following non-exhaustive list of rules pertaining to players' health and safety:

(a)   In 1956, the NFL enacted a rule that prohibited the grabbing of any player's facemask, other than the ball carrier;

(b)   In 1962, the NFL enacted a rule that prohibited players from grabbing any player's facemask;

(c)   In 1976, the NFL enacted a rule that prohibited players from grabbing the facemask of an opponent.  The penalty for an incidental grasp of the facemask was 5 yards. The penalty for twisting, turning, or pulling the facemask was 15 yards.  A player could be ejected from the game if the foul is judged to be vicious and/or flagrant;

(d)   In 1977, the NFL enacted a rule that prohibited players from slapping the head of another player during play.  This rule was referred to as the "Deacon Jones Rule", named after the Rams' defensive end who frequently used this technique;

(e)   In 1977, the NFL enacted a rule that prohibited Offensive Linemen from thrusting their hands into a defender's neck, face, or head;

(f)   In 1979, the NFL enacted a rule that prohibited players from using their helmets to butt, spear, or ram an opponent.  Pursuant to this rule, any player who used the crown or the top of his helmet unnecessarily will be called for unnecessary roughness;

(g)   In 1980, the NFL enacted rule changes that provided greater restrictions on contact in the area of the head, neck, and face;

(h)   In 1980, the NFL enacted rule changes that prohibited players from directly striking, swinging, or clubbing the head, neck, or face ("personal foul").  Beginning in 1980, a penalty could be called for such contact whether or not the initial contact was made below the neck area;

-18-

(i)     In 1982, the NFL enacted a rule change by which the penalty for incidental grabbing of a facemask by a defensive team was changed from 5 yards to an automatic first down plus a 5 yard penalty;

(j)     In 1983, the NFL enacted a rule that prohibited players from using a helmet as a weapon to strike or hit an opponent;

(k)     In 1988, the NFL enacted a rule that prohibited defensive players from hitting quarterbacks below the waist while they are still in the pocket.  (The rule was unofficially called the "Andre Waters Rule" based upon a hit that Waters placed on Los Angeles Rams quarterback Jim Everett in 1988); and

(l)     Following the 2004-2005 season, the NFL's Competition Committee reviewed video of the entire season and concluded that the horse-collar tackle resulted in six serious injuries.  On May 23, 2005, the NFL owners voted 27-5 to ban the tackle.  The ban states that a horse-collar tackle is an open-field tackle in which a defender uses the shoulder pads to immediately bring a ball carrier down.

## NFL FRAUDUENTLY CONCEALED THE LONG-TERM EFFECTS OF CONCUSSIONS

119.    Instead of taking measures to actually protect its players from suffering long-term brain injuries, the NFL created the "Mild Traumatic Brain Injury Committee" in 1994 to purportedly study the effects of concussions on NFL players.

120.    The Mild Traumatic Brain Injury Committee was chaired by Dr. Elliot Pellman, a rheumatologist who is not certified as to brain injuries and/or concussions.

121.    After 14 years of purported studies, and after numerous medical journal articles were written by the NFL's Mild Traumatic Brain Injury Committee (the "NFL's Brain Injury Committee"), concluded that " [b]ecause a significant percentage of players returned to play in the same game [as they suffered a mild traumatic brain injury] and the overwhelming majority of players with concussions were kept out of football-related activities for less than 1 week, it can be concluded that mild TBI's in professional football are not serious injuries." *See* "Concussion in

professional football: Summary of the research conducted by the National Football League's Committee on Mild Traumatic Brain Injury," *Neurosurg Focus* 21 (4):E12, 2006, E.J. Pellman and D.C. Viano.

122.    According to the NFL's own committee, the speedy return to play after suffering a concussion demonstrates that such players were not at a greater risk of suffering long-term brain injury.

123.    The NFL-funded study is completely devoid of logic and science.  More importantly, it is contrary to their Health and Safety Rules as well as 75 years of published medical literature on concussions.

124.    Between 2002 and 2005, a series of clinical and neuropathological studies performed by independent scientists and physicians demonstrated that multiple NFL induced-concussions cause cognitive problems such as depression, early on-set dementia and CTE and its related symptoms.

125.    In response to these studies, the NFL, to further a scheme of fraud and deceit, had members of the NFL's Brain Injury Committee deny knowledge of a link between concussion and cognitive decline and claim that more time was needed to reach a definitive conclusion on the issue.

126.    When the NFL's Brain Injury Committee anticipated studies that would implicate causal links between concussion and cognitive degeneration it promptly published articles producing contrary findings, although false, distorted and deceiving as part of the NFL's scheme to deceive Congress, the players and the public at large.

127.    Between 2002 and 2007, Dr. Bennet Omalu examined the brain tissue of deceased NFL players including Mike Webster, Terry Long, Andrew Waters and Justin Strzelczyk.  Dr. Omalu in an article in *Neurosurgery* concluded that chronic traumatic encephalopathy ("CTE") triggered by multiple NFL concussions represented a partial cause of their deaths.

-20-

128.   In response to Dr. Omalu's article, the NFL acting thru the NFL's Brain Injury Committee, Drs. Ira Casson, Elliott Pellman and David Viano wrote a letter to the editor of *Neurosurgery* asking that Dr. Omalu's article be retracted.

129.   In 2005, a clinical study performed by Dr. Kevin Guskiewicz found that retired players who sustained three or more concussions in the NFL had a five-fold prevalence of mild cognitive impairment.  The NFL's Brain Injury Committee, Dr. Mark Lowell, promptly attacked the article by refusing to accept a survey of 2,400 former NFL players.

130.   Because of Congressional scrutiny and media pressure, the NFL scheduled a league-wide Concussion Summit for June 2007.  Unfortunately, the NFL in keeping with its scheme of fraud and deceit issued a pamphlet to players in August 2007, which stated: "there is no magic number for how many concussions is too many."

131.   When Boston University's Dr. Ann McKee found CTE in the brains of two more deceased NFL players in 2008, Dr. Ira Casson characterized each study as an "isolated incident" from which no conclusion could be drawn.

132.   At the October 2009 Congressional hearings of the House Judiciary Committee, committee member Linda Sanchez (D-CA) analogized the NFL's denial of a causal link between NFL concussion and cognitive decline to the Tobacco industry's denial of the link between cigarette consumption and ill health effects.

133.   Since at least 2002, the NFL Committee has been on direct notice of multiple NFL head injuries contributing to cognitive decline in later life, yet it has never amended the 2007 NFL's Brain Injury Committee statement: "Current research with professional athletes has not shown that having more than one or two concussions leads to permanent problems… It is important to understand that there is no magic number for how many concussions is too many."

134.   As of June 2010, the NFL had yet to amend these inaccurate and misrepresentative statements to any Plaintiff or retiree.

## THE NFL ACKNOWLEDGES THEIR DUTY TO PROTECT AGAINST THE LONG-TERM RISK OF CONCUSSIONS

-21-

135.    On August 14, 2007, the NFL acknowledged its duty to players by enacting rules to protect them against the risks associated with repeated brain trauma.

136.    The NFL's 2007 concussion guidelines, many of which stemmed from an NFL conference in June of 2007 involving team trainers and doctors, were sent to all current players and other team personnel.

137.    The NFL's 2007 guidelines on concussion management include a whistle-blower provision for individuals to report concussions with the league so that a player with a head injury is not forced to practice or play against medical advice.

138.    The NFL's 2007 concussion guidelines also include an informational pamphlet provided to all current NFL players to aid in identifying symptoms of a concussion.  This information was later withdrawn by one of the outside counsel of the NFL in a separate letter to its disability plan, as well as the NFL's August 14, 2007 press release denying that "more than one or two concussions leads to permanent problems".

139.    In a statement issued by the NFL on August 14, 2007, Roger Goodell, the Commissioner of the NFL, introduced the NFL's 2007 concussion guidelines by saying, "We want to make sure all NFL players, coaches and staff members are fully informed and take advantage of the most up-to-date information and resources as we continue to study the long-term impact of concussions."

140.    The NFL's Commissioner also stated, "[b]ecause of the unique and complex nature of the brain, our goal is to continue to have concussions managed conservatively by outstanding medical personnel in a way that clearly emphasizes player safety over competitive concerns."

141.    The NFL's 2007 concussion guidelines provide when a player with a concussion can return to a game or practice.

142.    The NFL's 2007 concussion guidelines specifically mandate that a player should have no concussion symptoms and normal neurological test results before returning to play.

-22-

143.    For the past many decades until August 14, 2007, the NFL's duty to protect its players has never changed and has ever waned.  The only change that occurred is that on August 14, 2007, the NFL finally and unequivocally acted upon its longstanding duty to protect its member players by implementing league-wide concussion guidelines.

144.    Importantly, the NFL themselves acknowledged that the 2007 guidelines were inadequate and insufficient.  As a result, the NFL enacted more strict regulations to handle concussions starting in the 2009 season.  Specifically, the NFL announced new rules on managing concussions requiring players who exhibit any significant concussion signs to be removed from a game or practice and be barred from returning the same day.

145.    Nevertheless, it was not until June of 2010 that the NFL warned any player of the long-term risks associated with multiple concussions, including dementia, memory loss, CTE and its related symptoms.  The Riddell Defendants also failed to so warn active players until approximately the same time frame.

146.    As of today, the NFL Defendants and the Riddell Defendants have never warned any Plaintiff or retired player of the long-term health effects of concussions.

## THE DEFENDANTS' CONDUCT RISES BEYOND MERE NEGLIGENCE

147.    The aforementioned acts and omissions of the Defendants demonstrate that the Defendants acted with callous indifference to the rights and duties owed to Plaintiffs, all American Rules Football leagues and players and the public at large.

148.    The Defendants acted willfully, wantonly, egregiously, with reckless abandon, and with a high degree of moral culpability.

## VERNON MAXWELL

149.    Plaintiff Vernon Maxwell was born on October 25, 1961 in Birmingham, Alabama. He lives in Tempe, Arizona.

-23-

COMPLAINT FOR DAMAGES

150.   Plaintiff Vernon Maxwell was drafted out of Arizona State University as a Linebacker.  He played for the Baltimore Colts during the 1983 season and was NFL Defensive Rookie of the Year.  During the 1984 season, he played for the Indianapolis Colts.  During the 1985-1987 seasons, he played for the Detroit Lions.  During the 1989 season, he played for the Seattle Seahawks.

151.   Plaintiff Vernon Maxwell suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

152.   Plaintiff Vernon Maxwell was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

153.   Plaintiff Vernon Maxwell suffers from multiple past traumatic brain injuries with various symptoms including, but not limited to, memory loss and headaches.

## **BRODERICK "RICK" JONES**

154.   Plaintiff Broderick "Rick" Jones was born on March 9, 1955 in Birmingham, Alabama.  He lives in Birmingham, Alabama.

155.   Plaintiff Broderick "Rick" Jones played Linebacker for the Cleveland Browns from 1977 to 1979 and for the Baltimore Colts from 1980 to 1983.

156.   Plaintiff Broderick "Rick" Jones suffered multiple concussions in the NFL that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

157.   Plaintiff Broderick "Rick" Jones was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

-24-

158.    Plaintiff Broderick "Rick" Jones suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including, but not limited to, short-term memory loss.

### KENDALL and INGRID WILLIAMS

159.    Plaintiff Kendall Williams was born on February 7, 1959 in Long Beach, California. He is married to Ingrid Williams, and they live in Las Vegas, Nevada. He has three children.

160.    Plaintiff Kendall Williams graduated from Arizona State University and played Defensive Back in the NFL during the 1982, 1983 and 1984 seasons for the Dallas Cowboys, the San Francisco 49er's, and the Baltimore/Indianapolis Colts. The Plaintiff is aware of an NFL film which showed him being knocked out on the playing field during a game.

161.    Plaintiff Kendall Williams suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

162.    Plaintiff Kendall Williams was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

163.    Plaintiff Kendall Williams suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing the following symptoms including but not limited to headaches, memory loss, difficulty reading, and sleeplessness.

### MIKE C. RICHARDSON

164.    Plaintiff Mike C. Richardson was born on May 23, 1961 in Compton, California. He was a second round draft pick out of Arizona State. He lives in Compton, California.

-25-

165.   Plaintiff Mike C. Richardson played as a Defensive Back for the Chicago Bears from 1983-1988 and then for the Oakland Raiders and the San Francisco 49er's in the 1989 season.  He won the Super Bowl in 1985 and was a NFL All-Pro in 1986.

166.   Plaintiff Mike C. Richardson suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

167.   Plaintiff Mike C. Richardson was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

168.   Plaintiff Mike C. Richardson suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing the following symptoms including but not limited to depression, memory loss, poor judgment, and a history of substance abuse.

**RENARD and VANESSA YOUNG**

169.   Plaintiff Renard Young was born on July 31, 1961 in Los Angeles, California.  He is married to Vanessa Young.  They live in Winnetka, California and have two children.

170.   Plaintiff Renard Young played the 1984 season for the Kansas City Chiefs. Subsequently, he played briefly for the Kansas City Chiefs in the 1985 season and then as Defensive Back for the Seattle Seahawks in the 1987 season.

171.   Plaintiff Renard Young suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

172.   Plaintiff Renard Young was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

-26-

COMPLAINT FOR DAMAGES

173.   Plaintiff Renard Young suffers from multiple past traumatic brain injuries affecting multiple areas of the brain and causing the following symptoms including but not limited to headaches and memory loss.

**LONZELL and LANITA HILL**

174.   Plaintiff LonZell Hill was born on September 25, 1965 in Stockton, California. He is married to Lanita Hill with two children and stepchildren. They live in Cincinnati, Ohio.

175.   Plaintiff LonZell Hill was drafted out of the University of Washington as a Wide Receiver by the New Orleans Saints. He played for the Saints during the 1987, 1988, 1989 and 1990 seasons. While in the NFL, he had multiple concussions. He received no treatment and was returned to play.

176.   Plaintiff LonZell Hill suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

177.   Plaintiff LonZell Hill was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

178.   Plaintiff LonZell Hill suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including but not limited to severe short-term memory loss.

**GEORGE AND KRISTIE VISGER**

179.   Plaintiff George Visger was born on September 26, 1958 in Stockton, California. He is married to Kristie Visger. They live in Grass Valley, California with their two minor children and one step child.

180.   Plaintiff George Visger was drafted out of the University of Colorado by the N.Y. Jets in the 1980 NFL draft as a Defensive Lineman. He was released after pre-season by the N.Y.

-27-

COMPLAINT FOR DAMAGES

Jets and signed shortly into the 1980 season by the San Francisco 49er's.  He played with the 49ers until an abrupt ending to the season after winning the 1981 Super Bowl.

181.   Plaintiff George Visger suffered multiple concussions that were improperly diagnosed and improperly treated during his career as a professional football player in the NFL.

182.   Plaintiff George Visger was not warned by the NFL, NFL Properties Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

183.   Plaintiff George Visger suffers from various CTE symptoms including but not limited to frontal and temporal lobe damage, multiple past traumatic brain injuries affecting multiple areas of his brain, intermittent explosive disorder, cognitive impairment, poor judgment in regard to finances and relationships, and early on-set dementia.

## TERRY WRIGHT

184.   Plaintiff Terry Wright was born on July 17, 1965 in Phoenix, Arizona.  He lives in Laven, Arizona.

185.   Plaintiff Terry Wright was a graduate of Temple University.  He played two seasons for the Indianapolis Colts in 1987 and 1988.  Prior to that, he was on the practice squad for the Cleveland Browns from 1986-1987.

186.   Plaintiff Terry Wright suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

187.   Plaintiff Terry Wright was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

188.   Plaintiff Terry Wright suffers from multiple past traumatic brain injuries including but not limited to short-term memory loss.

-28-

**NEWTON WILLIAMS**

189.    Plaintiff Newton Williams was born on May 10, 1959 in Charlotte, North Carolina. He lives in Charlotte, North Carolina.

190.    Plaintiff Newton Williams graduated from Arizona State University.  He played in the NFL as a Running Back.  Plaintiff Newton Williams played for the San Francisco 49er's during the 1982 season; played for the Baltimore Colts during the 1983 season; and then played for the Indianapolis Colts during the 1984 season.

191.    Plaintiff Newton Williams suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional player in the NFL.

192.    Plaintiff Newton Williams was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

193.    Plaintiff Newton Williams has been diagnosed with various traumatic brain injury symptoms including but not limited to headaches and memory loss.

**DUANE GALLOWAY**

194.    Plaintiff Duane Galloway was born on November 7, 1961 in Los Angeles, California. He lives in Los Angeles, California.

195.    Plaintiff Duane Galloway played in the NFL as a Cornerback for the Detroit Lions from 1983 until 1987.

196.    Plaintiff Duane Galloway suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

197.    Plaintiff Duane Galloway was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the

-29-

league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

198.     Plaintiff Duane Galloway has been diagnosed with various traumatic brain injury symptoms including but not limited to headaches and memory loss.

### GEORGE and ARNELLA JAMISON

199.     Plaintiff George Jamison was born on September 30, 1962 in Bridgeton, New Jersey. He is married to Arnella Jamison. They live in Rochester Hills, Michigan and have been married for 16 years. He has two children ages 13 and 14, and one step child who is 25 years old.

200.     Plaintiff George Jamison was drafted by the Detroit Lions in 1986. Plaintiff played for the Lions from 1986-1993, from 1994 to 1996 for Kansas City Chiefs, and from 1997 to 1998 for the Detroit Lions. During Plaintiff's entire NFL career, he played as a Linebacker and earned team awards.

201.     Plaintiff George Jamison suffered multiple concussive head injuries. His symptoms included light-headedness, seeing stars and losing track of time. Jamison remembers times that he was dazed but continued to play because no one took him out of the games. On one occasion while playing for the Lions, he could not remember anything other than the beginning of a single quarter.

202.     Plaintiff George Jamison suffered repeated concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

203.     Plaintiff George Jamison was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

204.     Plaintiff George Jamison suffers from multiple past traumatic brain injuries affecting multiple areas of his brain which includes but is not limited to the following problems: memory-related problems, blurred vision and constant headaches.

-30-

## BRYAN HOOKS

205.   Plaintiff Bryan Hooks was born on September 15, 1970 in Tempe, Arizona.  He lives in Tempe, Arizona.

206.   Plaintiff Bryan Hooks played for New England during the 1993, 1994 and 1995 seasons and for the Arizona Cardinals during the 1996 and 1997 season.  He played Nose Tackle.

206.   Plaintiff Bryan Hooks suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

207.   Plaintiff Bryan Hooks was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

208.   Plaintiff Bryan Hooks suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and includes but is not limited to the following symptoms:  distorted vision or blurry vision in the right eye requiring him to wear corrective glasses and memory loss.

## FRED and TIA MCNEILL

209.   Plaintiff Fred McNeill was born on May 6, 1952 in Durham, North Carolina.  He is married to Tia McNeill.  They live in Los Angeles, California.

210.   Plaintiff Fred McNeill was drafted in the first round out of UCLA.  He played Linebacker with the Minnesota Vikings from 1974 to 1985 for twelve seasons and played in two Super Bowls.

211.   Plaintiff Fred McNeill suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

212.   Plaintiff Fred McNeill was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-

-31-

COMPLAINT FOR DAMAGES

1    mandated equipment did not protect him from such injury.  This was a substantial factor in causing

2    his current injury.

3    　　　213.   Plaintiff Fred McNeill suffers from multiple past traumatic brain injuries affecting

4    multiple areas of his brain causing Plaintiff to suffer from the early stages of dementia.

5

6    　　　　　　　　　　　　　**REGINALD ROGERS, SR.**

7    　　　214.   Plaintiff Reginald Rogers, Sr. was born on January 21, 1964 in Sacramento,

8    California.  He lives in Seattle, Washington.  He is engaged to be married to Lora Monan.  He has

9    six children ages 9, 11, 18, 21 twins and 26.

10   　　　215.   Plaintiff Reginald Rogers, Sr. was drafted in 1987 in the first round by the Detroit

11   Lions.  He played Defensive End for two seasons in 1987 and 1988, with Buffalo in the 1991

12   season, and for Tampa Bay in the 1992 season.

13   　　　216.   Plaintiff Reginald Rogers, Sr. suffered multiple concussions that were improperly

14   diagnosed and improperly treated throughout his career as a professional football player in the

15   NFL.

16   　　　217.   Plaintiff Reginald Rogers, Sr. was not warned by the NFL, NFL Properties, Inc., or

17   Riddell Defendants of the risk of long-term injury due to football-related concussions or that the

18   league-mandated equipment did not protect him from such injury.  This was a substantial factor in

19   causing his current injury.

20   　　　218.   Plaintiff Reginald Rogers, Sr. suffers from past traumatic brain injuries affecting

21   multiple areas of his brain and causing various symptoms including but not limited to: grand-mal

22   seizures, headaches, loss of hearing and sleeplessness.

23

24   　　　　　　　　　　　　　**MELVIN and JAVONI JENKINS**

25   　　　219.   Plaintiff Melvin Jenkins was born on March 16, 1962 in Jackson, Mississippi.  He is

26   married to Javoni Jenkins.  They live in Goodyear, Arizona.

27

28

-32-

COMPLAINT FOR DAMAGES

220.    Plaintiff Melvin Jenkins was selected to play in the NFL from Cincinnati University. He played as a Defensive Back from 1987 to 1990 for Seattle Seahawks, 1991 to 1993 for Detroit Lions and 1993 for the Atlanta Falcons.

221.    Plaintiff Melvin Jenkins suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

222.    Plaintiff Melvin Jenkins was not warned by the NFL, NFL Properties, Inc. or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

223.    Plaintiff Melvin Jenkins suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including memory loss.

### ANTONIO and BETTY GIBSON

224.    Plaintiff Antonio Gibson was born on July 5, 1962 in Jackson, Mississippi.  He is married to Betty Gibson, and they live in College Station, Texas.

225.    Plaintiff Antonio Gibson played Safety with the New Orleans Saints and Dallas Cowboys from 1986 to 1992.

226.    Plaintiff Antonio Gibson suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

227.    Plaintiff Antonio Gibson was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

-33-

228.    Plaintiff Antonio Gibson suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including memory loss, sleeplessness and headaches.

## ALVIN and ODETTA MOORE

229.    Plaintiff Alvin Moore was born on May 3, 1959 in Randolph, Arizona.  He is married to Odetta Moore.  They live in Chandler, Arizona.

230.    Plaintiff Alvin Moore played Running Back with the Baltimore and Indianapolis Colts from 1983 to 1984, for the Detroit Lions from 1985 to 1986, and for the Seattle Seahawks in 1987.

231.    Plaintiff Alvin Moore suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

232.    Plaintiff Alvin Moore was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

233.    Plaintiff Alvin Moore suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including memory loss, ringing in his ears and headaches.

## LYVONIA A. "STUMP" MITCHELL

234.    Plaintiff Lyvonia A. "Stump" Mitchell was born on March 15, 1959 in Kingsland, Georgia.  He lives in Baton Rouge, Louisiana.

235.    Plaintiff Stump Mitchell played Running Back and Kick Returner for the St. Louis/Phoenix Cardinals from 1981 to 1989.  He has accumulated over 10,000 career all-purpose yards.

-34-

236.    Plaintiff Stump Mitchell suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

237.    Plaintiff Stump Mitchell was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

238.    Plaintiff Stump Mitchell suffers from multiple past traumatic brain injuries including, but not limited to the following: headaches, neck problems, vision problems, and occasional confusion.

**KIRK CAMERON "K.C." JONES**

239.    Plaintiff Kirk Cameron "K.C." Jones was born on March 28, 1974 in Midland, Texas. He lives in Lantana, Florida.

240.    Plaintiff Kirk Cameron "K.C." Jones played Center and Guard for the Denver Broncos from 1997 to 2002.

241.    Plaintiff Kirk Cameron "K.C." Jones suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

242.    Plaintiff Kirk Cameron "K.C." Jones was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

243.    Plaintiff Kirk Cameron "K.C." Jones suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including short-term memory loss, lethargy, headaches, and sleep-deprived anxiety.

## JAMES E. "TOOTIE" and SHANEETA ROBBINS

244.    Plaintiff James E. "Tootie" Robbins was born on June 2, 1958 in Windsor, North Carolina.  He lives in Chandler, Arizona.  He is married to Shaneeta.

245.    Plaintiff James E. "Tootie" Robbins played Offensive Tackle for the St. Louis and Arizona Cardinals and the Green Bay Packers from 1982 to 1993.

246.    Plaintiff James E. "Tootie" Robbins suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

247.    Plaintiff James E. "Tootie" Robbins was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

248.    Plaintiff James E. "Tootie" Robbins suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including headaches and short-term memory loss.

## ROBERT J. and BARBARA FREDRICKSON

249.    Plaintiff Robert J., Fredrickson was born on May 13, 1971 in St. Joseph, Michigan. He lives in Paradise Valley, Arizona.  He is married to Barbara and they have 3 children ages 13, 9 and 7 years old.

250.    Plaintiff Robert J. Fredrickson played Linebacker for the Los Angeles/Oakland Raiders from 1994 to 1997, the Detroit Lions in 1998, and Arizona Cardinals from 1999 to 2002.

251.    Plaintiff Robert J. Fredrickson suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

252.    Plaintiff Robert J. Fredrickson Robbins was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or

-36-

1    that the league-mandated equipment did not protect him from such injury.  This was a substantial

2    factor in causing his current injury.

3          253.    Plaintiff Robert J. Fredrickson Robbins suffers from multiple past traumatic brain

4    injuries that include but are not limited to his various problems including headaches, memory loss,

5    light sensitivity and loss of attention span.

6

7                   **CHARLES E. "CHUCKIE" MILLER**

8          254.    Plaintiff Charles E. "Chuckie" Miller was born on May 9, 1965 in Anniston,

9    Alabama.  He lives in Signal Hill, California.  He has 4 children ages 7 months, 7, 19 and 21 years

10    old.

11          255.    Plaintiff Charles E. "Chuckie" Miller played Cornerback for the Indianapolis Colts

12    from 1987 to 1989.

13          256.    Plaintiff Charles E. "Chuckie" Miller suffered multiple concussions that were

14    improperly diagnosed and improperly treated throughout his career as a professional football player

15    in the NFL.

16          257.    Plaintiff Charles E. "Chuckie" Miller was not warned by the NFL, NFL Properties,

17    Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or

18    that the league-mandated equipment did not protect him from such injury.  This was a substantial

19    factor in causing his current injury.

20          258.    Plaintiff Charles E. "Chuckie" Miller suffers from multiple past traumatic brain

21    injuries that include but are not limited to his various problems including headaches, short-term

22    memory loss, and sleeplessness.

23

24                   **EDWARD P. and SUSAN LEE**

25          259.    Plaintiff Edward P. Lee was born on December 8, 1959 in Washington, D.C.  He is

26    married to Susan Lee.  They live in Brookeville, Maryland.  They have three children ages 18, 12

27    and 9.

28

COMPLAINT FOR DAMAGES

260.     Plaintiff Edward P. Lee played Wide Receiver for the Detroit Lions from 1982 to 1984.

261.     Plaintiff Edward P. Lee suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

262.     Plaintiff Edward P. Lee was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

263.     Plaintiff Edward P. Lee suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including memory loss.

### PATRICK and SHARRON HEENAN

264.     Plaintiff Patrick Heenan was born on March 1, 1938 in Detroit, Michigan.  He is married to Sharron.  They live in Lenoir City, Tennessee.

265.     Plaintiff Patrick Heenan played Cornerback for the Washington Redskins from 1960 to 1961.

266.     Plaintiff Patrick Heenan suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

267.     Plaintiff Patrick Heenan was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

268.     Plaintiff Patrick Heenan suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including short-term memory loss, headaches, and ringing in ears.

-38-

COMPLAINT FOR DAMAGES

**TOBY L. WRIGHT**

269.    Plaintiff Toby L. Wright was born on November 19, 1970 in Phoenix, Arizona.  He lives in Tempe, Arizona.

270.    Plaintiff Toby L. Wright played Strong Safety for the Los Angeles Rams in 1994, for the St. Louis Rams from 1995 to 1998, and for the Washington Redskins in 1999.  He was selected as an NFL All-Pro in 1996.

271.    Plaintiff Toby L. Wright suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

272.    Plaintiff Toby L. Wright was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

273.    Plaintiff Toby L. Wright suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including short-term memory loss, headaches, depression, ringing in ears, and blurry vision.

**KELLY KIRCHBAUM**

274.    Plaintiff Kelly Kirchbaum was born on June 14, 1957 in Fort Knox, Kentucky.  He lives in Lexington, Kentucky.

275.    Plaintiff Kelly Kirchbaum played Middle Linebacker and Special Teams for the New York Jets from 1979 to 1980, for the Kansas City Chiefs in 1981, and for the Philadelphia Eagles in 1987.

276.    Plaintiff Kelly Kirchbaum suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

-39-

277.     Plaintiff Kelly Kirchbaum was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

278.     Plaintiff Kelly Kirchbaum suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including from confusion, memory loss, and dizziness.

### JAMES and BONITA HOOD

279.     Plaintiff James Hood lives in Inglewood, California.  He was born on September 9, 1961.  He is married to Bonita Hood.  They have 3 children ages 23, 20 and 18 years old.

280.     Plaintiff James Hood played Wide Receiver for the Seattle Seahawks from 1987 to 1988.

281.     Plaintiff James Hood suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

282.     Plaintiff James Hood was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

283.     Plaintiff James Hood suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including memory loss and headaches.

### RICHARD and YADIRA MERCIER

284.     Plaintiff Richard Mercier was born on May 13, 1975 in Quebec, Canada.  He is married to Yadira Mercier.  They live in Miami, Florida.  The have one child age 9 months.

285.     Plaintiff Richard Mercier played Offensive Lineman for the Baltimore Ravens, Denver Broncos and Cleveland Browns from 2000 to 2003.

-40-

286.   Plaintiff Richard Mercier suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

287.   Plaintiff Richard Mercier was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

288.   Plaintiff Richard Mercier suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including memory loss.

.

**BRETT and EMILY ROMBERG**

289.   Plaintiff Brett Romberg was born on October 10, 1979 in Windsor, Canada.  He is married to Emily Romberg.  They live in Coral Gables, Florida.

290.   Plaintiff Brett Romberg played Center for the Jacksonville Jaguars, St. Louis Rams and Atlanta Falcons from 2003 to 2010.

291.   Plaintiff Brett Romberg suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

292.   Plaintiff Brett Romberg was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

293.   Plaintiff Brett Romberg suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including headaches.

**STEVE and KARELIS KORTE**

-41-

294.     Plaintiff Steve Korte was born January 15, 1960 in Denver, Colorado.  He is married to Karelis Korte.  They live in Covington, Louisiana.  They have three children ages 25, 21 and 19.

295.     Plaintiff Steve Korte played Center for the New Orleans Saints from 1983 to 1990.

296.     Plaintiff Steve Korte suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

297.     Plaintiff Steve Korte was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

298.     Plaintiff Steve Korte suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including depression, short-term memory loss and headaches.

### JOE and LYDIA HARRIS

299.     Plaintiff Joe Harris was born on December 6, 1952 in Fayetteville, North Carolina. He is married to Lydia Harris.  They live in Ellenwood, Georgia.

300.     Plaintiff Joe Harris played Linebacker for the Los Angeles Raiders, Baltimore Ravens, San Francisco 49ers, and Minnesota Vikings from 1977 to 1983.

301.     Plaintiff Joe Harris suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

302.     Plaintiff Joe Harris was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term, injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

303.     Plaintiff Joe Harris suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including memory loss, confusion and dementia.

## RODNEY and ANDETRIA HAMPTON

304.    Plaintiff Rodney Hampton was born on April 3, 1969 in Houston, Texas.  He is married to Andetria Hampton.  They live in Houston, Texas.  They have three children ages 16, 12 and 4.

305.    Plaintiff Rodney Hampton played Running Back for the New York Giants from 1990 to 1997. He played in two Pro Bowls in 1992 and 1993 and won Super Bowl XXV.

306.    Plaintiff Rodney Hampton suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

307.    Plaintiff Rodney Hampton was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

308.    Plaintiff Rodney Hampton suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including short-term memory loss and headaches.

## LEWIS D. and KATHY TILLMAN

309.    Plaintiff Lewis D. Tillman was born on April 16, 1966 in Oklahoma City, Oklahoma. He is married to Kathy Tillman.  They live in Madison, Mississippi.  They have two children ages 19 and 15.

310.    Plaintiff Lewis D. Tillman played Running Back for the New York Giants and Chicago Bears from 1989 to 1996.

311.    Plaintiff Lewis D. Tillman suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

COMPLAINT FOR DAMAGES

312.    Plaintiff Lewis D. Tillman was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

313.    Plaintiff Lewis D. Tillman suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including poor memory and headaches.

**LARRY and LINDA KAMINSKI**

314.    Plaintiff Larry Kaminski was born on January 6, 1945 in Cleveland, Ohio.  He is married to Linda Kaminski.  They live in Poulsbo, Washington.

315.    Plaintiff Larry Kaminski played Center for the Denver Broncos from 1966 to 1973.

316.    Plaintiff Larry Kaminski suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

317.    Plaintiff Larry Kaminski was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

318.    Plaintiff Larry Kaminski suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including frontal temporal lobe damage, explosive mood changes, aggressiveness and depression.

**DAVID and MARY LEE KOCOUREK**

319.    Plaintiff David Kocourek was born on August 20, 1937 in Chicago, Illinois.  He is married to Mary Lee Kocourek.  They live in Marco Island, Florida.

-44-

320.   Plaintiff David Kocourek played Tight End for the Los Angeles Chargers in 1960, for the San Diego Giants from 1961 to 1965, for the Miami Dolphins in 1966, and for the Oakland Raiders from 1967 to 1968.

321.   Plaintiff David Kocourek suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

322.   Plaintiff David Kocourek was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

323.   Plaintiff David Kocourek suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including dementia.

## **ROBERT and DENISE WEATHERS**

324.   Plaintiff Robert Weathers was born on September 16, 1960 in Westfield, NY.  He is married to Denise Weathers.  They live in Orlando, Florida.

325.   Plaintiff Robert Weathers played Running Back for the New England Patriots from 1982 to 1988.

326.   Plaintiff Robert Weathers suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

327.   Plaintiff Robert Weathers was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

-45-

328.    Plaintiff Robert Weathers suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including short-term memory loss and headaches.

## WAYNE and SHARON HAWKINS

329.    Plaintiff Wayne Hawkins was born on June 17, 1938 in Fort Peck, Montana.  He is married to Sharon Hawkins.  They live in San Ramon, California.

330.    Plaintiff Wayne Hawkins played Right Guard for the Oakland Raiders from 1960 to 1971.

331.    Plaintiff Wayne Hawkins suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

332.    Plaintiff Wayne Hawkins was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

333.    Plaintiff Wayne Hawkins suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including dementia and myopathy.

## ANTHONY "TONY" HARGAIN

334.    Plaintiff Anthony "Tony" Hargain was born on December 26, 1967 in Palo Alto, California.  He lives in Citrus Heights, California.

335.    Plaintiff Anthony "Tony" Hargain played Wide Receiver for the San Francisco Giants in 1991, for the Kansas City Chiefs from 1992 to 1993, for the Los Angeles Rams in 1993, and for the Denver Broncos in 1996.

-46-

336.    Plaintiff Anthony "Tony" Hargain suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

337.    Plaintiff Anthony "Tony" Hargain was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

338.    Plaintiff Anthony "Tony" Hargain suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including headaches, memory loss, and sleeplessness.

## EDWARD "EDDIE" and RICA PAYTON

339.    Plaintiff Edward "Eddie" Payton was born on August 3, 1950 in Columbia, Mississippi.  He is married to Rica Payton.  They live in Madison, Mississippi.

340.    Plaintiff Edward "Eddie" Payton played Running Back and Kick Returner for the Cleveland Browns and the Detroit Lions in 1977, for the Kansas City Chiefs in 1978, and for the Minnesota Vikings from 1980 to 1982.

341.    Plaintiff Edward "Eddie" Payton suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

342.    Plaintiff Edward "Eddie" Payton was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

343.    Plaintiff Edward "Eddie" Payton suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including headaches, lack of focus, confusion, and short-term memory loss.

-47-

COMPLAINT FOR DAMAGES

## WILLIAM H. "PETE" and TERESA MANDLEY

344.    Plaintiff William H. "Pete" Mandley was born on July 29, 1961 Mesa, Arizona. He is married to Teresa Mandley. They live in Gilbert, Arizona. They have eight children, two of which are minors ages 11 and 14 years old.

345.    Plaintiff William H. "Pete" Mandley played Wide Receiver and Kick Returner for the Detroit Lions from 1984 to 1988 and for the Kansas City Chiefs from 1989 to 1990.

346.    Plaintiff William H. "Pete" Mandley suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

347.    Plaintiff William H. "Pete" Mandley was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

348.    Plaintiff William H. "Pete" Mandley suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including lack of focus, headaches, and memory loss.


## SHANTE CARVER

349.    Plaintiff Shante Carver was born on February 12, 1971 in Stockton, California. He lives in Mesa, Arizona.

350.    Plaintiff Shante Carver played Defensive End for the Dallas Cowboys from 1994 to 1997.

351.    Plaintiff Shante Carver suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

-48-

352.    Plaintiff Shante Carver was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

353.    Plaintiff Shante Carver suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including headaches, lack of focus, confusion, and short-term memory loss.

## GEORGE and GENEVA GOEDDEKE

354.    Plaintiff George Goeddeke Carver was born on July 29, 1945 in Detroit, Michigan. He is married to Geneva Goeddeke.  They live in White Lake, Michigan.  They have five children, with the youngest age 18.

355.    Plaintiff George Goeddeke played Offensive Guard for the Denver Broncos from 1967 to 1974.

356.    Plaintiff George Goeddeke suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

357.    Plaintiff George Goeddeke was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

358.    Plaintiff George Goeddeke suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including short-term memory loss.

## JAMES MICHAEL "MIKE" and BEVERLEE SCHNITKER

359.    Plaintiff James Michael "Mike" Schnitker was born on December 30, 1946 in Langdon, Missouri.  He is married to Beverlee Schnitker.  They have three children.

-49-

360.    Plaintiff James Michael "Mike" Schnitker played Offensive Guard for the Denver Broncos from 1969 to 1974.

361.    Plaintiff James Michael "Mike" Schnitker suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

362.    Plaintiff James Michael "Mike" Schnitker was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

363.    Plaintiff James Michael "Mike" Schnitker suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including memory loss.

## CHRISTOPHER "CHRIS" CALLOWAY

364.    Plaintiff Christopher "Chris" Calloway was born on March 29, 1968 in Chicago, Illinois.

365.    Plaintiff Christopher "Chris" Calloway played Wide Receiver for the Pittsburgh Steelers from 1990 to 1991, for the New York Giants from 1992 to 1998, for the Atlanta Falcons in 1999, and for the New England Patriots in 2000.

366.    Plaintiff Christopher "Chris" Calloway suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

367.    Plaintiff Christopher "Chris" Calloway was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

-50-

COMPLAINT FOR DAMAGES

368.    Plaintiff Christopher "Chris" Calloway suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including tingling in the head and neck, memory loss, and headaches.

## THOMAS C. and EVELYN RANDOLPH

369.    Plaintiff Thomas C. Randolph, II was born on October 5, 1970 in Norfolk, Virginia. He is married to Evelyn Randolph. They live in McLean, Virginia. They have two children ages 10 and 11 months.

370.    Plaintiff Thomas C. Randolph played Defensive Back for the New York Giants from 1994 to 1997, for the Cincinnati Bengals in 1998, and for the Indianapolis Colts in 1999.

371.    Plaintiff Thomas C. Randolph suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

372.    Plaintiff Thomas C. Randolph was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

373.    Plaintiff Thomas C. Randolph suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including short-term memory loss and severe headaches.

## GARY and TINA JONES

374.    Plaintiff Gary Jones was born on November 30, 1967 in San Augustine, Texas. He is married to Tina Jones. They live in Cedar Hill, Texas.

375.    Plaintiff Gary Jones played Safety for the Pittsburgh Steelers from 1990 to 1994, and for the New York Jets from 1995 to 1996.

-51-

376.   Plaintiff Gary Jones suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

377.   Plaintiff Gary Jones was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

378.   Plaintiff Gary Jones suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including depression, mood disorder, anxiety problems and memory loss.

**OTTIS "O.J" and WANDA ANDERSON**

379.   Plaintiff Ottis "O.J." Anderson was born on January 19, 1957 in West Palm Beach, Florida.  He lives in Orange, New Jersey.  He is married to Wanda.

380.   Plaintiff O.J. Anderson played Running Back for the St. Louis Cardinals from 1979 to 1985 and the New York Giants from 1986 to 1992.  He is one of 22 Running Backs to rush for over 10,000 career yards.   He is a two time All-Pro selection.  He is a two time Super Bowl champion.  He was selected as the MVP of Super Bowl XXV.

381.   Plaintiff O.J. Anderson suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

382.   Plaintiff O.J. Anderson was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

383.   Plaintiff O.J. Anderson suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including Short term memory loss and headaches.

-52-

COMPLAINT FOR DAMAGES

**LEONARD and TASHA RUSSELL**

384.    Plaintiff Leonard Russell was born on November 17, 1969.  He was born in California.  He currently lives in Riverside, California.  He is married to Tasha Russell.

385.    Plaintiff Leonard Russell played Running Back for the New England Patriots from 1991 to 1993, Denver Broncos in 1994, St. Louis Rams in 1995 and San Diego Chargers in 1996. He was selected as the AP Offensive Rookie of the Year in 1991.

386.    Plaintiff Leonard Russell suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

387.    Plaintiff Leonard Russell was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

388.    Plaintiff Leonard Russell suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including memory loss, headaches and blurry vision.

**RORY GRAVES**

389.    Plaintiff Rory Graves was born on July 21, 1963.  He was born in Atlanta, Georgia. He currently lives in Doraville, Georgia.

390.    Plaintiff Rory Graves played Offensive Tackle for the Oakland Raiders from 1988 to 1991 and the Minnesota Vikings in 1993.

391.    Plaintiff Rory Graves suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

392.    Plaintiff Rory Graves was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-

-53-

mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

393.    Plaintiff Rory Graves suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including memory loss and headaches.

**DAVID M. and MONICA WHITE**

394.    Plaintiff David M. White was born on February 27, 1970.  He is married to Monica White.  He was born in Oak Ridge, Tennessee.  He currently lives in New York with his wife, Monica.

395.    Plaintiff David M. White played Line Backer for New England Patriots and Buffalo Bills between 1993 and 1997.

396.    Plaintiff David M. White suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

397.    Plaintiff David M. White was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

398.    Plaintiff David M. White suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including memory loss, headaches and difficulty sleeping.

**PHILIP and GAIL SMITH**

399.    Plaintiff Philip Smith was born on April 28, 1961.  He is married to Gail.  He currently lives in Los Angeles, California.  They have 3 children ages 13, 10 and 8 years old.

400.    Plaintiff Philip Smith played Wide Receiver and Kick Returner for Baltimore/Indianapolis Colts, Philadelphia Eagles, and Los Angeles Rams from 1983 to 1989.

401.   Plaintiff Philip Smith suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

402.   Plaintiff Philip Smith was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

403.   Plaintiff Philip Smith suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including Short Term Memory Loss.

## W. VERNON DEAN

404.   Plaintiff W. Vernon Dean was born on May 5, 1959.  He was born in Texas and currently lives in Missouri City, Texas. He has 2children ages 28 and 12 years old.

405.   Plaintiff W. Vernon Dean played Defensive Back for the Washington Redskins from 1982 to 1988 and for the Seattle Seahawks in 1999.  He won Super Bowl XVII and XXII.

406.   Plaintiff W. Vernon Dean suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

407.   Plaintiff W. Vernon Dean was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

408.   Plaintiff W. Vernon Dean suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including Short Term Memory Loss and Headaches.

## ANTHONY "TONY" COVINGTON

-55-

409.    Plaintiff Tony Covington was born on December 26, 1967.  He was born in North Carolina.  He currently lives in Philadelphia, Pennsylvania.

410.    Plaintiff Tony Covington played Safety for the Tampa Bay Buccaneers from1991 to 1994 and Seattle Seahawks in 1995.

411.    Plaintiff Tony Covington suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

412.    Plaintiff Tony Covington was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

413.    Plaintiff Tony Covington suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including Short Term Memory Loss and Buzzing Sounds in his Ears.

## ANTHONY and VALERIE JONES

414.    Plaintiff Anthony Jones was born on May 16, 1960.  He is married to Valerie and has 2 children ages 17 and 13.  He was born in Maryland and currently lives in Meridianville, Alabama.

415.    Plaintiff Anthony Jones played Tight End for Washington Redskins from 1984 to 1988, San Diego Chargers in 1988 and Dallas Cowboys in 1989.  He won Super Bowl XXII.

416.    Plaintiff Anthony Jones suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

417.    Plaintiff Anthony Jones was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-

-56-

mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

418.   Plaintiff Anthony Jones suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including Headaches and Memory Loss.

## STEVE and MARILYN REESE

419.   Plaintiff Steve Reese was born on January 7, 1952.  He is married to Marilyn.  He was born in Columbus, Georgia and currently lives in Stone Mountain, Georgia.

420.   Plaintiff Steve Reese played Line Backer for the New York Jets from 1974 to 1976, Tampa Bay Buccaneers in 1976, Minnesota Vikings in 1977 and the Cleveland Browns in 1978.

421.   Plaintiff Steve Reese suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

422.   Plaintiff Steve Reese was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

423.   Plaintiff Steve Reese suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including Headaches, poor vision and Memory Loss.

## DONALD BESSILLIEU

424.   Plaintiff Donald Bessillieu was born on May 4, 1956.  He lives in Columbus, Georgia.

425.   Plaintiff Donald Bessillieu played Defensive Back for the Miami Dolphins from 1979 to 1982, St. Louis Cardinals in 1983, and Oakland Raiders from 1983 to 1985.

426.   Plaintiff Donald Bessillieu suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

-57-

COMPLAINT FOR DAMAGES

427.   Plaintiff Donald Bessillieu was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

428.   Plaintiff Donald Bessillieu suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including Memory Loss, Headaches and confusion.

### HAROLD L. and CAROLYN JACKSON

429.   Plaintiff Harold Jackson was born on January 6, 1946.  He is married to Carolyn.  He was born in Mississippi and he currently lives in Los Angeles, California.  They have one child who is 18 years old.

430.   Plaintiff Harold Jackson played Wide Receiver for the Los Angeles Rams in 1968, the Philadelphia Eagles from 1969 to 1972, Los Angeles Rams from 1973 to 1977, New England Patriots from 1978 to 1981, Minnesota Vikings in 1982, Seattle Seahawks in 1983 and New England Patriots in 1987.  He is a 5 time Pro-Bowl Selection.  He led the NFL in receiving yards in 1969 and 1972.

431.   Plaintiff Harold Jackson suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

432.   Plaintiff Harold Jackson was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

433.   Plaintiff Harold Jackson suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including severe Headaches and Memory Loss.

-58-

**TODD and SHANNON JOHNSON**

434.    Plaintiff Todd Johnson was born on December 18, 1978.  He is married to Shannon and they have 2 children ages 1 ½ years old and 2 months old.  They reside in Sarasota, Florida.

435.    Plaintiff Todd Johnson played Safety for the Chicago Bears from 2003 to 2006, St. Louis Rams from 2007 to 2009 and Buffalo Bills in 2009.

436.    Plaintiff Todd Johnson suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

437.    Plaintiff Todd Johnson was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

438.    Plaintiff Todd Johnson suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including Memory Loss.

**CHRIS GOODE**

439.    Plaintiff Chris Goode was born on September 17, 1963.  He lives in Birmingham, Alabama.  He has 3 children and their ages are 17, 15, and 14 years old.

440.    Plaintiff Chris Goode played Defensive Back for the Indianapolis Colts from 1987 to 1994.

441.    Plaintiff Chris Goode suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

442.    Plaintiff Chris Goode was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

443.    Plaintiff Chris Goode suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including memory loss and headaches.

COMPLAINT FOR DAMAGES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## BRUCE and VANISHA WALKER

444.   Plaintiff Bruce Walker was born on July 18, 1972.  He is married to Vanisha and has one child age 9 years old.  They reside in Bellflower, California.

445.   Plaintiff Bruce Walker played Defensive Tackle for the New England Patriots in 1994 to 1996 and was on the squad of the San Diego Chargers from 1998 to 1999.

446.   Plaintiff Bruce Walker suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

447.   Plaintiff Bruce Walker was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

448.   Plaintiff Bruce Walker suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including retaining information, Short Term Memory Loss and Headaches.

## DERRICK S. "RICKY" REYNOLDS

449.   Plaintiff Ricky Reynolds was born on January 19, 1965.  He has 3 children ages 18, 17 and 14 years old.  He lives in Dade City, Florida.

450.   Plaintiff Ricky Reynolds played Defensive Back for the Tampa Bay Buccaneers from 1987 to 1993 and the New England Patriots from 1994 to 1996.

451.   Plaintiff Ricky Reynolds suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

452.   Plaintiff Ricky Reynolds was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the

-60-

league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

453.    Plaintiff Ricky Reynolds suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including Short Term Memory Loss, Dizziness and Ringing in his ears.

## DAVID and BONNIE LEWIS

454.    Plaintiff David Lewis was born on October 15, 1952.  He is married to Bonnie and has one child age 23 years old.  They reside in Dover, Florida.

455.    Plaintiff David Lewis played Line Backer for the Tampa Bay Buccaneers from 1977 to 1982, San Diego Chargers from 1982 to 1983 and Los Angeles Rams from 1983 to 1984.

456.    Plaintiff David Lewis suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

457.    Plaintiff David Lewis was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

458.    Plaintiff David Lewis suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including Memory Loss and Headaches.

## RONNIE and SHERYL LIPPETT

459.    Plaintiff Ronnie Lippett was born on December 10, 1960.  He was born in Florida. He is married to Sheryl and has 3 children.  They reside in South Easton, Massachusetts.

460.    Plaintiff Ronnie Lippett played Defensive Back for the New England Patriots from 1983 to 1991.  He was selected to the New England Patriots all 1980's team.

-61-

COMPLAINT FOR DAMAGES

461.   Plaintiff Ronnie Lippett suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

462.   Plaintiff Ronnie Lippett was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

463.   Plaintiff Ronnie Lippett suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including Memory Loss, Depression, Sleep problems and Post Traumatic Stress Disorder.

**ROLAND and CARMEL JAMES**

464.   Plaintiff Roland James was born on February 18, 1958.  He was born in Ohio.  He is married to Carmel and has 4 children.  They reside in Sharon, Massachusetts.

465.   Plaintiff Roland James played Defensive Back for the New England Patriots from 1980 to 1990.  He was selected to the New England Patriots all 1980's team.

466.   Plaintiff Roland James suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

467.   Plaintiff Roland James was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

468.   Plaintiff Roland James suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including Memory Loss, Depression and Sleep problems.

**MARK S. DUPER**

-62-

COMPLAINT FOR DAMAGES

469.    Plaintiff Mark S. Duper was born on January 25, 1959.  He lives in Margate, Florida. He has five children, and two of them are ages 15 and 16 years old.

470.    Plaintiff Mark S. Duper played Wide Receiver for the Miami Dolphins from 1982 to 1992.  He was selected to the Pro-Bowl three times.  He was inducted into the Miami Dolphins Honor Roll:

471.    Plaintiff Mark S. Duper suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

472.    Plaintiff Mark S. Duper was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

473.    Plaintiff Mark S. Duper suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including memory loss and headaches.

## BRIAN and SARCA INGRAM

474.    Plaintiff Brian Ingram was born on October 31, 1959.  He was born in Memphis, Tennessee.  He is married to Sarca and they have 5 children.  They reside in Stone Mountain, Georgia.

475.    Plaintiff Brian Ingram played Line Backer for the New England Patriots from 1982 to 1986 and the San Diego Chargers from 1987 to 1988.

476.    Plaintiff Brian Ingram suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

477.    Plaintiff Brian Ingram was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

-63-

COMPLAINT FOR DAMAGES

478.   Plaintiff Brian Ingram suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including Short Term Memory Loss, Headaches and Ringing in his ears.

## ANTHONY "TONY" and TRUDY COLLINS

479.   Plaintiff Tony Collins was born on May 27, 1959.  He is married to Trudy and has eight children of which two of them are minors ages 15 and 13 years old.  They reside in Winterville, North Carolina.

480.   Plaintiff Tony Collins played Running Back for the New England Patriots from 1981 to 1989 and the Miami Dolphins in 1990.  He was selected to the Pro Bowl in 1983.

481.   Plaintiff Tony Collins suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

482.   Plaintiff Tony Collins was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

483.   Plaintiff Tony Collins suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including Memory Loss and Sleeping problems.

## STEVE and ANGELA NELSON

484.   Plaintiff Steve Nelson was born on April 26, 1951.  He was born in Farmington, Minnesota.  He is married to Angela and has 5 children, with one of them is 5 years old.  They reside in Middleboro, Massachusetts.

485.   Plaintiff Steve Nelson played Line Backer for the New England Patriots from 1974 to 1987.  He was selected to the Pro Bowl three times.  His jersey was retired by the New England Patriots.

486.    Plaintiff Steve Nelson suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

487.    Plaintiff Steve Nelson was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

488.    Plaintiff Steve Nelson suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including Short Term Memory Loss, Headaches, vision problems, sleep problems, depression and anxiety attacks.

### JAMES E. and SHALANE WILLIS

489.    Plaintiff James E. Willis was born on September 2, 1972.  He is married to Shalane and has 3 children ages 15, 10 and 3 years old.  They reside in Huntsville, Alabama.

490.    Plaintiff James E. Willis played Line Backer for the Green Bay Packers from 1993 to 1996, Philadelphia Eagles from 1996 to 1999 and Seattle Seahawks in 2000.

491.    Plaintiff James E. Willis suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

492.    Plaintiff James E. Willis was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

493.    Plaintiff James E. Willis suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including Short Term Memory Loss, Headaches, and vision problems.

### ANTHONY and PAULA HANCOCK

-65-

494.    Plaintiff Anthony Hancock was born on June 10, 1960.  He was born in Cleveland, Ohio.  He is married to Paula and they have 2 children.  They currently reside in Knoxville, Tennessee.

495.    Plaintiff Anthony Hancock played Wide Receiver for the Kansas City Chiefs from 1982 to 1988.

496.    Plaintiff Anthony Hancock suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

497.    Plaintiff Anthony Hancock was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

498.    Plaintiff Anthony Hancock suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including Short Term Memory Loss and Headaches.

## JEFF BURRIS

499.    Plaintiff Jeff Burris was born on June 7, 1972.  He was born in Rock Hill, South Carolina.  He has 2 children ages 13 and 11 years old.  He currently resides in Indianapolis, Indiana.

500.    Plaintiff Jeff Burris played Defensive Back for the Buffalo Bills from 1994 to 1997, Indianapolis Colts from 1998 to 2001 and Cincinnati Bengals from 2002 to 2003.

501.    Plaintiff Jeff Burris suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

502.    Plaintiff Jeff Burris was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-

-66-

mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

503. Plaintiff Jeff Burris suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including Memory Loss, Depression, Headaches and difficulty speaking.

## WILLIAM C. "BILL" AND SUSAN BRADLEY

504. Plaintiff Bill Bradley was born on January 24, 1947. He is married to Susan and they reside in Spring Ranch, Texas.

505. Plaintiff Bill Bradley played Free Safety for the Philadelphia Eagles from 1969 to 1976 and the St. Louis Cardinals in 1977. He was a 3 time Pro Bowl selection. In 1971 and 1972, he led the NFL in interceptions.

506. Plaintiff Bill Bradley suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

507. Plaintiff Bill Bradley was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

508. Plaintiff Bill Bradley suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including Memory Loss and Headaches.

## KERRY and TANJA GOODE

509. Plaintiff Kerry Goode was born on July 28, 1965. He is married to Tanja and they have 4 children ages 16, 14, 11 and 6 years old. They reside in Fairburn, Georgia.

510. Plaintiff Kerry Goode played Running Back for the Tampa Bay Buccaneers in 1988 and the Miami Dolphins in 1989.

-67-

511.   Plaintiff Kerry Goode suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

512.   Plaintiff Kerry Goode was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

513.   Plaintiff Kerry Goode suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including frequent Headaches and blurred vision.

## RAYMOND and KIMBERLEY CLAYBORN

514.   Plaintiff Raymond Clayborn was born on January 2, 1955.  He is married to Kimberley and they have 3 children ages 25, 15, and 12 years old.  They reside in Katy, Texas.

515.   Plaintiff Raymond Clayborn played Defensive Back for the New England Patriots from 1977 to 1989 and Cleveland Browns from 1990 to 1991.  He was selected to the Pro-Bowl 3 times.  He is a memo

516.   Plaintiff Raymond Clayborn suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

517.   Plaintiff Raymond Clayborn was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

518.   Plaintiff Raymond Clayborn suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including Short Term Memory Loss, headaches, buzzing in his ears, and sleep problems.

-68-

**STEVEN and SUSAN ZABEL**

519.    Plaintiff Steven Zabel was born on March 20, 1948.  He is married to Susan and they have 3 children.  They reside in Edmond, Oklahoma.

520.    Plaintiff Steven Zabel played Line Backer for the New England Patriots from 1970 to 1974, New England Patriots from 1975 to 1978 and Baltimore Colts in 1979.

521.    Plaintiff Steven Zabel suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

522.    Plaintiff Steven Zabel was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

523.    Plaintiff Steven Zabel suffers from multiple past traumatic brain injuries that include but are not limited to his various problems including frequent pain in his head, sleeping difficulties and memory loss.

**FIRST CAUSE OF ACTION**

**NEGLIGENCE- Monopolist**

**(As Against the NFL)**

524.    Plaintiffs incorporate by reference paragraphs 1 through 523 as if fully set forth herein at length.

525.    The NFL, by and through its monopoly power, has historically had a duty to invoke rules that protect the health and safety of its players and the public.  Nevertheless, by its actions, it has violated California Business and Professional Code Section 17001 by engaging in practices that restrain the development of good science on the problem and epidemic of concussion injuries.

526.    As a monopoly, the NFL has a duty to protect the health and safety of its players, as well as the public at large.

-69-

527.    Throughout the history of the NFL, the NFL organization has consistently breached its duty to protect the health and safety of its players by failing to enact rules, policies and regulations to best protect its players.

528.    The NFL breached its duty to its players, including Plaintiffs, to use ordinary care to protect the physical and mental health of players by failing to implement standardized post-concussion guidelines by failing to enact rules to decrease the risk of concussions during games or practices, and by failing to implement mandatory rules that would prevent a player who suffered a mild traumatic brain injury from re-entering a football game and being placed at further risk of injury.

529.    Throughout its many years, the NFL has repeatedly established its duty to protect the health and safety of its players when known and foreseeable risk exists.  Until August 14, 2007, the NFL failed to create and implement league-wide guidelines concerning the treatment and monitoring of players who suffer concussive brain injuries.

530.    It has been well established since 1928 that repeated blows to the head can lead to CTE, commonly known as "punch drunk syndrome."  Punch Drunk Syndrome has been prevalent in boxers who have repeatedly suffered concussions.

531.    Despite the fact that other sporting associations exist, such as the National Hockey League and the World Boxing Association, which have decades ago established standardized association-wide concussion management rules, until August 14, 2007, the NFL failed to establish any guidelines or policies to protect the mental health and safety of its players.

532.    Nonetheless, it took the NFL until June of 2010 to finally acknowledge the long-term risks associated with concussions, including dementia, memory loss, CTE and its related symptoms.  At that time, the NFL warned active players of those risks.  To date, the NFL has never warned any past players, including Plaintiffs, or the public of the long- term brain injury caused from concussions.

533.    The NFL's failure to fulfill its duty to protect its players, the plaintiffs and the public, include, but are not limited to, the following failures:

-70-

(a)   Failure to institute acclimation requirements or procedures to ensure proper acclimation of the NFL players before they participate in practices or games;

(b)   Failure to regulate and monitor practices, games, equipment, and medical care so as to minimize the long-term risks associated with concussive brain injuries suffered by the NFL players, including Plaintiffs;

(c)   Failure to require that an adequate concussive brain injury history be taken of NFL players;

(d)   Failure to ensure accurate diagnosis and recording of concussive brain injury so the condition can be treated in an adequate and timely manner;

(e)   Failure to invoke league-wide guidelines, policies, and procedures regarding the identification and treatment of concussive brain injury, and the return to play insofar as such matters pertain to concussive brain injury;

(f)   Failure to properly inform the public and other American Rules Football leagues and players of the health risks associated with concussive injury;

(g)   Failure to license and approve the best equipment available that will reduce the risk of concussive brain injury; and

(h)   Failure to warn of the harm of repetitive concussion injuries.

534.   The NFL breached its duty to protect the health and safety of its players by subjecting NFL players to an increased risk of concussive brain injury.

535.   The NFL failed to provide complete, current, and competent information and directions to NFL athletic trainers, physicians, and coaches regarding concussive brain injuries and its prevention, symptoms, and treatment.

536.   If the NFL would have taken the necessary steps to oversee and protect the NFL players, including Plaintiffs, by developing and implementing necessary guidelines, policies, and procedures; providing reasonably safe helmets; and educating and training all persons involved

-71-

with the NFL Teams in the recognition, prevention, and treatment of concussive brain injuries, then NFL players, such as Plaintiffs, would not have suffered from the subject condition or the effects of that condition, would have recovered more rapidly, or would not have suffered long-term brain injuries.

537.   Under all of the above circumstances, it was foreseeable that the NFL's violating its duties would cause or substantially contribute to the personal injuries suffered by Plaintiffs.

538.   The NFL committed acts of omission and commission, which collectively and severally, constituted negligence. The NFL's negligence was a proximate and producing cause of the personal injuries and other damages suffered by Plaintiffs.

539.   As a result of the personal injuries, Plaintiffs are entitled to damages, as alleged herein or allowed by law, from the NFL in an amount reasonably anticipated to exceed the jurisdictional minimum of $25,000.

## SECOND CAUSE OF ACTION:
## NEGLIGENCE
## (As Against the NFL)

540.   Plaintiffs incorporate by reference paragraphs 1 through 539 of this Complaint as if fully set forth herein at length.

541.   The NFL has historically assumed an independent tort duty to invoke rules that protect the health and safety of its players, but it has violated Section 323 of the Restatement (Second) of Torts as adopted by the Courts in California.

542.   Throughout the history of the NFL, the NFL organization has consistently exercised its duty to protect the health and safety of its players by implementing rules, policies and regulations in an attempt to best protect its players.

543.   By enacting rules to protect the health and safety of its players, the NFL has repeatedly confirmed its duty to take reasonable and prudent actions to protect the health and safety of its players when known and foreseeable risks exist.

-72-

544.    The NFL breached its duty to its players, including Plaintiffs, to use ordinary care to protect the physical and mental health of players by implementing standardized post-concussion guidelines and by failing to implement mandatory rules that would prevent a player who suffered a mild traumatic brain injury from re-entering a football game or practice.

545.    Throughout the many years that the NFL has repeatedly established its duty to protect the health and safety of its players when known and foreseeable risks exist, until August 14, 2007, the NFL failed to create and implement league-wide guidelines concerning the treatment and monitoring of players who suffer a concussive brain injury during a game.

546.    It has been well established since 1928 that repeated blows to the head can lead to CTE, commonly known as "punch drunk syndrome." Punch Drunk Syndrome has been prevalent in boxers who have repeatedly suffered concussions.

547.    Despite the fact that other sporting associations exist, such as the World Boxing Association, which have decades ago established standardized association-wide concussion management rules, until August 14, 2007, the NFL failed to establish any guidelines or policies to protect the mental health and safety of its players.

548.    The NFL's failure to fulfill its assumed duty to protect its players includes but is not limited to the following failures:

(a)    Failure to institute acclimation requirements or procedures to ensure proper acclimation of the NFL players before they participate in practices or games;

(b)    Failure to regulate and monitor practices, games, rules, equipment, and medical care so as to minimize the long-term risks associated with concussive brain injuries suffered by the NFL players, including Plaintiffs;

(c)    Failure to require that an adequate concussive brain injury history be taken of NFL players;

(d)    Failure to ensure accurate diagnosis and recording of concussive brain injury so the condition can be treated in an adequate and timely manner;

-73-

 (e) Failure to invoke league-wide guidelines, policies, and procedures regarding the identification and treatment of concussive brain injury, and the return to play insofar as such matters pertain to concussive brain injury; and,

 (f) Failure to license and approve the best equipment available that will reduce the risk of concussive brain injury.

549. The NFL breached its assumed duty to protect the health and safety of its players by subjecting NFL players to an increased risk of concussive brain injury.

550. The NFL failed to provide complete, current, and competent information and directions to NFL athletic trainers, physicians, and coaches regarding concussive brain injuries and its prevention, symptoms, and treatment.

551. If the NFL would have taken the necessary steps to oversee and protect the NFL players, including Plaintiffs, by developing and implementing necessary guidelines, policies, and procedures; providing reasonably safe helmets; and educating and training all persons involved with the NFL Teams in the recognition, prevention, and treatment of concussive brain injuries, then NFL players, such as Plaintiffs, would not have suffered from the subject condition or the effects of that condition, would have recovered more rapidly, or would not have suffered long-term brain damage, dementia, and depression related to dementia and CTE.

552. Under all of the above circumstances, it was foreseeable that the NFL's violations of its duties would cause or substantially contribute to the personal injuries suffered by the Plaintiffs.

553. The NFL committed acts of omission and commission, which collectively and severally, constituted negligence. The NFL's negligence was a proximate and producing cause of the personal injuries and other damages suffered by Plaintiff.

554. As a result of the personal injuries of Plaintiffs, they are entitled to damages, as alleged herein or allowed by law, from the NFL in an amount reasonably anticipated to exceed the jurisdictional minimum of $25,000.

### THIRD CAUSE OF ACTION:

### FRAUD

### (As Against the NFL)

555.    Plaintiffs incorporate by reference paragraphs 1 through 554 of this Complaint as if fully set forth herein at length.

556.    From 2005 through June of 2010, the NFL made through its "Mild Traumatic Brain Injury Committee" and others, its agents, material misrepresentations to its players, former players, the Congress and the public at large that there was no link between concussions and later life cognitive/brain injury, including CTE and its related symptoms.

557.    The persons who made the misrepresentations as agents of the NFL and the NFL knew they were false.

558.    The persons who made the misrepresentations as agents of the NFL and the NFL intended to defraud, among others, the Plaintiffs in this action.

559.    The Plaintiffs, among others, justifiably relied on these misrepresentations to their detriment in getting care for their injuries.

560.    The Plaintiffs, among others, were damaged by these misrepresentations.  Among other things, they require increased home care, loss of consortium, loss of employment, medical costs and pain and suffering.

561.    As a result of the personal injuries of Plaintiffs, they are entitled to damages, as alleged herein or allowed by law, from the NFL in an amount reasonably anticipated to exceed the jurisdictional minimum of $25,000.

### FOURTH CAUSE OF ACTION

### NEGLIGENCE

### (As Against NFL Properties)

562.    Plaintiffs incorporate by reference paragraphs 1 through 561 as if fully set forth herein at length.

-75-

563.    NFL Properties breached its duty to ensure that the equipment it licensed and approved were of the highest possible quality and sufficient to protect the NFL players, including Plaintiffs, from the risk of concussive brain injuries.

564.    NFL Properties breached its duty by licensing the Riddell Defendants' helmets, and approving and/or requiring the use of the helmets for the NFL players, knowing or having reason to know that the helmets were negligently and defectively designed and/or manufactured.

565.    As a result of these breaches by NFL Properties, Plaintiffs suffer personal injuries as a result the long-term health effects of concussive brain injuries.

566.    As a result of the personal injuries of Plaintiffs, Plaintiffs are entitled to damages from NFL Properties, LLC in an amount reasonably anticipated to exceed the jurisdictional minimum of $25,000.00.

## FIFTH CAUSE OF ACTION

## STRICT LIABILITY FOR DESIGN DEFECT

### (As Against Riddell Defendants)

567.    Plaintiffs incorporate by reference paragraphs 1 through 566 as if set fully herein at length.

568.    At the time the helmets were designed, manufactured, sold, and distributed by the Riddell Defendants, the helmets were defective in design, unreasonably dangerous, and unsafe for their intended purpose because they did not provide adequate protection against the foreseeable risk of concussive brain injury.  The design defect includes, but is not limited to the following:

(a)    Negligently failing to design the subject helmet with a safe means of attenuating and absorbing the foreseeable forces of impact in order to minimize and/or reduce the forces and energy directed to the player's head;

(b)    Negligently designing the subject helmet with a shock attenuating system which was not safely configured;

-76-

(c)     Negligently failing to properly and adequately test the helmet

model;

(d)     Other acts of negligence that may be discovered during the course

of this matter; and

(e)     Failing to warn Plaintiffs that their helmets would not protect

against the long-term health consequences of concussive brain injury.

569.    The defective design and unreasonably dangerous condition were a proximate and producing cause of the personal injuries suffered by the Plaintiffs and other damages, including but not limited to, economic damages and non-economic damages.

570.    The Riddell Defendants are strictly liable for designing a defective and unreasonably dangerous product and for failing to warn which were proximate and producing causes of the personal injuries and other damages including, but not limited to, economic damage as alleged herein.  A safer alternative design was economically and technologically feasible at the time the product left the control of the Riddell Defendants.

571.    As a result of the personal injuries of Plaintiffs, Plaintiffs are entitled to damages from Riddell Defendants in an amount reasonably anticipated to exceed the jurisdictional minimum of $25,000.00.

### SIXTH CAUSE OF ACTION
### (STRICT LIABILITY FOR MANUFACTURING DEFECT)
### (As Against Riddell Defendants)

572.    Plaintiffs incorporate by reference paragraphs 1 through 571 as if set forth herein at length.

573.    At the time the helmets were designed, manufactured, sold and distributed by the Riddell Defendants, the helmets were defective in their manufacturing and unreasonably dangerous and unsafe for their intended purpose because they did not provide adequate protection against the

-77-

foreseeable risk of concussive brain injury.  The Riddell Defendants' failure to design the helmets to design and manufacturing specifications resulted in, among other things, the following:

    (a)    Negligently failing to manufacture the subject helmet with a safe means of attenuating and absorbing the foreseeable forces of impact in order to minimize and/or reduce the forces and energy directed to the player's head;

    (b)    Negligently manufacturing the subject helmet with a shock attenuating system which was not safely configured;

    (c)    Negligently failing to properly and adequately inspect and/or test the helmet model;

    (d)    Other acts of negligence that may be discovered during the course of this matter; and

    (e)    Failure to warn Plaintiffs that its helmets wouldn't protect against concussive brain injury.

574.    The manufacturing defect was a proximate and producing cause of the personal injuries suffered by Plaintiffs and other damages, including but not limited to, economic damages and non-economic damages.

575.    The Riddell Defendants are strictly liable for manufacturing and placing in the stream of commerce a defective and unreasonably dangerous product which was a proximate and producing cause of the personal injuries and other damages, including but not limited to, economic damages and non-economic damages.  A safe alternative design was economically and technologically feasible at the time the product left the control of the Riddell Defendants.

576.    As a result of the personal injuries of Plaintiffs, Plaintiffs are entitled to damages from Riddell Defendants in an amount reasonably anticipated to exceed the jurisdictional minimum of $25,000.00.

## SEVENTH CAUSE OF ACTION

## FAILURE TO WARN

## (As Against Riddell Defendants)

577.    Plaintiffs incorporate by reference paragraphs 1 through 576 as if set forth herein at length.

578.    The Riddell Defendants failed to provide necessary and adequate safety and instructional materials and warnings of the risk and means available to reduce and/or minimize the risk of concussive brain injuries while playing football.

579.    The Riddell Defendants failed to provide necessary and adequate information, warnings, and/or instructional materials regarding the fact that other model helmets provided greater shock attenuation from blows to the head area.

580.    The Riddell Defendants' failure to warn caused the Plaintiffs' personal injuries.

581.    As a result of the personal injuries of Plaintiffs, Plaintiffs are entitled to damages from the Riddell Defendants, in an amount reasonably anticipated to exceed the jurisdictional minimum of $25,000.00.

## EIGHTH CAUSE OF ACTION

## NEGLIGENCE

## (As Against Riddell Defendants)

582.    Plaintiffs incorporate by reference paragraphs 1 through 581 as if set forth herein at length.

583.    The Riddell Defendants should have been well aware that since 1928 repeated blows to the head can lead to CTE, commonly known as "punch-drunk syndrome".

584.    The Riddell Defendants breached their duty of reasonable care by failing to provide necessary and adequate safety and instructional materials and warnings of the risk and means available to reduce and/or minimize the risk of concussive brain injuries while playing football using their helmets.

-79-

585.   As a result of the Riddell Defendants' breach of duty, Plaintiffs have sustained permanent injury.

586.   For the personal injuries of Plaintiffs, Plaintiffs are entitled to damages from the Riddell Defendants in an amount reasonably anticipated to exceed the jurisdictional minimum of $25,000.00.

## NINTH CAUSE OF ACTION
## LOSS OF CONSORTIUM
### (As Against All Defendants)

587.   Plaintiffs incorporate by reference paragraphs 1 through 586 as if set forth herein at length.

588.   As a direct and proximate result of the carelessness, negligence and recklessness of all Defendants and of the aforesaid injuries to their husbands, the wife Plaintiffs have been damaged as follows:

a.   They have been and will continue to be deprived of the services, society and companionship of their husbands;

b.   They have been and will continue to be required to spend money for medical care and household care for the treatment of their husbands; and

c.   They have been and will continue to be deprived of the earnings of their husbands.

589.   As a result of the injuries to Plaintiffs, wife Plaintiffs are entitled to damages from the Defendants, in an amount reasonably anticipated to exceed the jurisdictional minimum of $25,000.00.

-80-

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.      For compensatory and general damages according to proof;

2.      For special and incidental damages according to proof;

3.      For punitive damages according to proof;

4.      For costs of the proceedings herein; and

5.      For all such other and further relief as the Court deems just.

DATED:  July 19, 2011                                 **GIRARDI | KEESE**

BY: _____
                                                                THOMAS V. GIRARDI
                                                                Attorney for Plaintiffs

### **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all claims so triable.

DATED:  July 19, 2011                                 **GIRARDI | KEESE**

BY: _____
                                                                THOMAS V. GIRARDI
                                                                Attorney for Plaintiffs

-81-

COMPLAINT FOR DAMAGES

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| THOMAS V. GIRARDI, SBN 36603<br>GIRARDI KEESE<br>1126 Wilshire Boulevard<br>Los Angeles, California 90017-1904<br><br>TELEPHONE NO.: 213/977-0211   FAX NO.: 213/481-1554<br>ATTORNEY FOR *(Name)*:  Plaintiffs | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: same as above
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central

CASE NAME:   Maxwell, et al. v. National Football League, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br><br>DEPT: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[X] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties     d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel     e. [ ] Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve         in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence     f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action *(specify)*: 9
5. This case [ ] is  [X] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date:  July 19, 2011

THOMAS V. GIRARDI
_____    ►    _____
(TYPE OR PRINT NAME)                                                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Legal
Solutions
Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

| SHORT TITLE: Maxwell, et al. v. National Football League, et al. | CASE NUMBER |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I**. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? [ x ] YES CLASS ACTION? [ ] YES LIMITED CASE? [ ] YES TIME ESTIMATED FOR TRIAL 14 [ ] HOURS/ [ x ] DAYS

**Item II. Indicate** the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>(Civil Case Cover Sheet Category No.) | B<br>(Type of Action<br>(Check only one)) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | [ ] A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | [ ] A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/ Wrongful Death Tort** | Asbestos (04) | [ ] A6070 Asbestos Property Damage | 2. |
| | | [ ] A7221 Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | [ x ] A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., (4.,) 8. |
| | Medical Malpractice (45) | [ ] A7210 Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | [ ] A7240 Other Professional Health Care Malpractice | 1., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | [ ] A7250 Premises Liability (e.g., slip and fall) | 1., 4. |
| | | [ ] A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | [ ] A7270 Intentional Infliction of Emotional Distress | 1., 3. |
| | | [ ] A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 1 of 4

LA-CV109

| SHORT TITLE: | Maxwell, et al. v. National Football League, et al. | CASE NUMBER | |
|---|---|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation      Number of parcels _____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F  Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 2 of 4

| SHORT TITLE: Maxwell, et al. v. National Football League, et al. | CASE NUMBER | |
|---|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment<br>☐ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

| SHORT TITLE: Maxwell, et al. v. National Football League, et al. | CASE NUMBER |
|---|---|

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| **REASON:  Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.**  ☐1. ☐2. ☐3.☒4. ☐5.☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS:   3556 South Van Ness Ave |
|---|---|
| CITY:  Los Angeles | STATE:  CA | ZIP CODE:  90018 |

**Item IV.** *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the SUPERIOR                courthouse in the Central            District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: July 19, 2011

(SIGNATURE OF ATTORNEY/FILING PARTY)

THOMAS V. GIRARDI

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 4 of 4

# SUMMONS
## *(CITACION JUDICIAL)*

**SUM-100**

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:** NATIONAL FOOTBALL LEAGUE; NFL
*(AVISO AL DEMANDADO):* PROPERTIES LLC; RIDDELL, INC. d/b/a
RIDDELL SPORTS GROUP, INC., ALL AMERICAN SPORTS
CORPORATION, d/b/a RIDDELL/ALL AMERICAN; RIDDELL SPORTS
GROUP, INC, EASTON-BELL SPORTS, INC.; EASTON-BELL SPORTS,
LLC; EB SPORTS CORP.; and RBG HOLDINGS CORP.; and JOHN DOES 1
through 100, inclusive,

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUL 19 2011

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
SHAUNYA WESLEY

**YOU ARE BEING SUED BY PLAINTIFF:** VERNON MAXWELL;
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* BRODERICK JONES;
KENDALL WILLIAMS and INGRID WILLIAMS, his wife; MIKE C.
RICHARDSON; RENARD YOUNG and VANESSA YOUNG, his wife;
(continued)

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>LOS ANGELES SUPERIOR COURT - CENTRAL DISTRICT<br>111 North Hill Street<br>Los Angeles, CA 90012 | CASE NUMBER:<br>*(Número del caso):*<br>BC 465842 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
THOMAS V. GIRARDI, SBN 36603                213/977-0211        213/481-1554
GIRARDI KEESE
1126 Wilshire Boulevard
Los Angeles, CA 90017-1904

JOHN A. CLARKE, CLERK

DATE: JUL 19 2011                Clerk, by _____, Deputy        **Shaunya Wesley**
*(Fecha)*                              *(Secretario)*                                          *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)           ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Legal<br>Solutions<br>Plus | Code of Civil Procedure §§ 412.20, 465 |
|---|---|---|---|

| | | **SUM-200(A)** |
|---|---|---|
| SHORT TITLE:   Maxwell, et al. v. National Football League, et al. | CASE NUMBER: | |

**INSTRUCTIONS FOR USE**

➔   This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➔   If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box.  Use a separate page for each type of party.)*:

[x] Plaintiff      [ ] Defendant      [ ] Cross-Complainant      [ ] Cross-Defendant

LONZELL HILL and LANITA HILL, his wife; GEORGE VISGER and  KRISTIE VISGER, his wife; TERRY WRIGHT; NEWTON WILLIAMS; DUANE GALLOWAY; GEORGE JAMISON and ARNELLA JAMISON, his wife; BRYAN HOOKS; FRED MCNEILL and TIA MCNEILL, his wife; REGINALD ROGERS, SR.; MELVIN JENKINS and JAVONI JENKINS, his wife; ANTONIO GIBSON and BETTY GIBSON, his wife; ALVIN MOORE and ODETTA MOORE, his wife; LYVONIA A. MITCHELL; KIRK CAMERON JONES; JAMES E. ROBBINS and SHANEETA ROBBINS, his wife; ROBERT J. FREDRICKSON and BARBARA FREDRICKSON, his wife; CHARLES E. MILLER; EDWARD P. LEE and SUSAN LEE, his wife; PATRICK HEENAN and SHARRON HEENAN, his wife; TOBY L. WRIGHT; KELLY KIRCHBAUM; JAMES HOOD and BONITA HOOD, his wife; RICHARD MERCIER and YADIRA MERCIER, his wife; BRETT ROMBERG and EMILY ROMBERG, his wife; STEVE KORTE and KARELIS KORTE, his wife; JOE HARRIS and LYDIA HARRIS, his wife; RODNEY HAMPTON and ANDETRIA HAMPTON, his wife; LEWIS D. TILLMAN and KATHY TILLMAN, his wife; LARRY KAMINSKI and LINDA KAMINSKI, his wife; DAVID KOCOUREK and MARY LEE KOCOUREK, his wife; ROBERT WEATHERS and DENISE WEATHERS, his wife; WAYNE HAWKINS and SHARON HAWKINS, his wife; ANTHONY HARGAIN; EDWARD PAYTON and RICA PAYTON, his wife; WILLIAM H. MANDLEY and TERESA MANDLEY, his wife; SHANTE CARVER; GEORGE GOEDDEKE and GENEVA GOEDDEKE, his wife; JAMES MICHAEL SCHNITKER and BEVERLEE SCHNITKER, his wife; CHRISTOPHER CALLOWAY; THOMAS C. RANDOLPH, II and EVELYN RANDOLPH, his wife; GARY JONES and TINA JONES, his wife; OTTIS ANDERSON and WANDA ANDERSON, his wife; LEONARD RUSSELL and TASHA RUSSELL, his wife; RORY GRAVES; DAVID M. WHITE and MONICA WHITE, his wife; PHILIP SMITH and GAIL SMITH; W. VERNON DEAN; ANTHONY COVINGTON; ANTHONY JONES and VALERIE JONES, his wife; STEVE REESE and MARILYN REESE, his wife; DONALD BESSILLIEU; HAROLD L. JACKSON and CAROLYN JACKSON, his wife; TODD JOHNSON and SHANNON JOHNSON, his wife; CHRIS GOODE; BRUCE WALKER and VANISHA WALKER, his wife; DERRICK S. REYNOLDS; DAVID LEWIS and BONNIE LEWIS, his wife; RONNIE LIPPETT and SHERYL LIPPETT, his wife; ROLAND JAMES and CARMEL JAMES, his wife; MARK S. DUPER; BRIAN INGRAM and SARCA INGRAM, his wife; ANTHONY COLLINS and TRUDY COLLINS, his wife; STEVE NELSON and ANGELA NELSON, his wife; JAMES E. WILLIS and SHALANE WILLIS, his wife; ANTHONY HANCOCK and PAULA HANCOCK, his wife; JEFF BURRIS; WILLIAM C. BRADLEY and SUSAN BRADLEY, his wife; KERRY GOODE and TANJA GOODE, his wife; RAYMOND CLAYBORN and KIMBERLEY CLAYBORN, his wife; STEVEN ZABEL and SUSAN ZABEL, his wife,

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

Legal
Solutions
Plus

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
THOMAS V. GIRARDI, SBN 36603
GIRARDI KEESE
1126 Wilshire Boulevard
Los Angeles, California 90017-1904

TELEPHONE NO.: 213/977-0211     FAX NO.: 213/481-1554
ATTORNEY FOR *(Name):* Plaintiffs

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: same as above
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central

CASE NAME: Maxwell, et al. v. National Football League, et al.

**CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court**

**JUL 19 2011**

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
SHAUNYA WESLEY

CASE NUMBER:
BC 465842

| CIVIL CASE COVER SHEET | Complex Case Designation | JUDGE: |
|---|---|---|
| [x] Unlimited  [ ] Limited (Amount demanded exceeds $25,000)  (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | DEPT: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[x] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [x] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties     d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve               in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence     f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [x] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify):* 9
5. This case [ ] is [x] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: July 19, 2011
THOMAS V. GIRARDI
(TYPE OR PRINT NAME)                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**
Legal Solutions Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

| SHORT TITLE: Maxwell, et al. v. National Football League, et al. | CASE NUMBER |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? [x] YES   CLASS ACTION? [ ] YES   LIMITED CASE? [ ] YES   TIME ESTIMATED FOR TRIAL 14 [ ] HOURS/ [x] DAYS

**Item II. Indicate** the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

### Applicable Reasons for Choosing Courthouse Location (see Column C below)

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | [ ] A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | [ ] A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | [ ] A6070 Asbestos Property Damage | 2. |
| | | [ ] A7221 Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | [x] A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | [ ] A7210 Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | [ ] A7240 Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | [ ] A7250 Premises Liability (e.g., slip and fall) | 1., 4. |
| | | [ ] A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | [ ] A7270 Intentional Infliction of Emotional Distress | 1., 3. |
| | | [ ] A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

Local Rule 2.0
Page 1 of 4

LA-CV109