**McELROY, DEUTSCH, MULVANEY**
**& CARPENTER, LLP**
1617 John F. Kennedy Blvd.
Suite 1500
Philadelphia, PA. 19103
(215) 557-2900
Attorneys for Non-Party
Preferred Capital Funding, Inc.

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL, LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : : : | No. 2:12-md-02323-AB |
| | : | MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated,* | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | **Honorable Anita B. Brody** |
| National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc., | : : : : | Civ. Action No. 14-00029-AB |
| Defendant. | : : | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | : : : | |

### NON-PARTIES PREFERRED CAPITAL FUNDING, INC., PREFERED CAPITAL FUNDING-NEVADA, LLC, PREFERRED CAPITAL FUNDING-MISSOURI, LLC, PREFERRED CAPITAL FUNDING-OHIO, LLC, AND BRIAN GARELLI'S MOTION FOR A PROTECTIVE ORDER REGARDING CO-LEAD CLASS COUNSEL'S REQUEST <u>FOR THE PRODUCTION OF DOCUMENTS AND INTERROGATORIES</u>

Non-Parties Preferred Capital Funding, Inc.,[1] Preferred Capital Funding-Nevada, LLC,

Preferred Capital Funding-Missouri, LLC, Preferred Capital Funding-Ohio, LLC, and Brian

Garelli (hereinafter "Preferred") by and through their undersigned counsel, move this Court for a

Protective Order regarding Co-Lead Class Counsel's Discovery requests, a copy of which are

---

[1] To the best of movants' knowledge there is no such entity.

attached hereto as Exhibit "A".   Preferred is not a party to this action and this Court does not have jurisdiction over it. Preferred has no contacts with Pennsylvania and thus this Court does not have general or specific jurisdiction.

Further, Co-Lead Class Counsel disregarded the basic rules of non-party discovery by failing to obtain a subpoena pursuant to Federal Rule of Civil Procedure 45.

For these reasons and those stated in the accompanying Memorandum of Law, the Motion should be granted and Co-Lead Counsel's Discovery requests should be stricken.

The undersigned certifies that he in good faith attempted to confer with other affected parties in an effort to resolve this dispute but was unable to do so.

Respectfully Submitted,

THOMAS R. HURD

Dated: November 14, 2017

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL, | : | No. 2:12-md-02323-AB |
| LEAGUE PLAYERS' CONCUSSION | : | |
| INJURY LITIGATION | : | MDL No. 2323 |
| | : | |
| Kevin Turner and Shawn Wooden, | : | |
| *on behalf of themselves and others* | : | |
| *similarly situated,* | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | **Honorable Anita B. Brody** |
| | : | |
| National Football League and | : | |
| NFL Properties LLC, successor-in-interest | : | Civ. Action No. 14-00029-AB |
| to NFL Properties, Inc., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| ALL ACTIONS | : | |
| | : | |

**ORDER**

AND NOW, this _____ day of _____, 2017, upon consideration

of Non-Parties Preferred Capital Funding, Inc., Preferred Capital Funding-Nevada, LLC,

Preferred Capital Funding-Missouri, LLC, Preferred Capital Funding-Ohio, LLC, and Brian

Garelli's Motion for a Protective Order Regarding Co-Lead Class Counsel's Request for The

Production of Documents and Interrogatories, ("Discovery"), it is hereby ORDERED that the

Motion is GRANTED and the moving parties are not required to respond to these discovery

requests.

**BY THE COURT:**

_____
                                                        J.

# Exhibit "A"

# SEEGERWEISS LLP

77 Water Street, New York, NY 10005   P 212.584.0700   F 212.584.0799   www.seegerweiss.com

October 31, 2017

<u>Via Federal Express Overnight Mail and Email</u>
Jody Pravecek, Esq.
Preferred Capital Funding, Inc.
368 W. Huron Street, Ste. 4S
Chicago, IL 60654

Preferred Capital Funding – Missouri, LLC
One Metropolitan Square
211 N. Broadway, Ste. 110
St. Louis, MO 63102

Preferred Capital Funding – Nevada, LLC
411 E. Bonneville Ave., Ste. 102
Las Vegas, NV 89101

Preferred Capital Funding – Ohio, LLC
200 Public Square, Ste. 160
Cleveland, OH 44114
jody@pcfcash.com
alex@pcfcash.com

Re:   *In re National Football League Players' Concussion Injury Litigation*,
No. 2:12-md-02323-AB (E.D. Pa.)

Dear Ms. Pravecek:

I am Co-Lead Class Counsel for the certified and finally approved Settlement Class in the above-referenced *In re: National Football League Players' Concussion Injury Litigation* ("NFL Concussion Litigation"). I am writing to you related to an Order issued on July 19, 2017 by the MDL Judge presiding over the NFL Concussion Litigation, the Honorable Anita B. Brody, a copy of which is included in the attachment hereto.

This Order authorizes me to conduct discovery of entities and individuals soliciting and/or entering into agreements with the Class Members in the NFL Concussion Litigation or with others related to the Settlement. Therefore, I am propounding the enclosed Requests for Production of Documents and Interrogatories upon your clients, Preferred Capital Funding, Inc., Preferred Capital Funding – Missouri, LLC, Preferred Capital Funding – Nevada, LLC, Preferred Capital

New York          Newark          Philadelphia

Preferred Capital Funding, Inc.
October 31, 2017
Page 2

Funding – Ohio, LLC and Brian Garelli.  If your organization(s) are represented by counsel other than yourself, please forward this letter and attachment to that counsel immediately.

     As per Judge Brody's Order, the deadline for responding to this discovery is fourteen days. Accordingly, the responses to the attached are due on November 14, 2017.  A hearing was held on September 19, 2017, in accordance with the Court's Order, but, the discovery process is continuing, and we expect to provide the Court with an update.

     Although I am also authorized to conduct depositions pursuant to the Order, I will defer for now the decision as to whether to seek depositions of corporate representatives and/or other fact witness(es) related to the Preferred Capital entities.

     If you have any questions, please contact my partner in our Philadelphia office, TerriAnne Benedetto, at 215-564-2300, or tbenedetto@seegerweiss.com.

                   Very truly yours,

                   /s/ Christopher A. Seeger

                   Christopher A. Seeger
                   *Co-Lead Class Counsel*

Enclosures

cc (via email)(w/encls.):

     Brad Karp, Esq. (*Counsel for the NFL Parties*)

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>　　　　　Plaintiffs,<br><br>　　　　　v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>　　　　　Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**REQUESTS FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES DIRECTED TO RESPONDENTS, PREFERRED CAPITAL FUNDING, INC., PREFERRED CAPITAL FUNDING – MISSOURI, LLC, PREFERRED CAPITAL FUNDING – NEVADA, LLC, PREFERRED CAPITAL FUNDING – OHIO, LLC AND BRIAN GARELLI**

Pursuant to the Court's Order dated July 19, 2017 (ECF No. 8037), Co-Lead Class Counsel

hereby serve the following Requests for Production of Documents and Interrogatories (collectively

"Discovery Demands") to be responded to by November 14, 2017 by respondents, Preferred

Capital Funding, Inc., Preferred Capital Funding – Missouri, LLC, Preferred Capital Funding –

Nevada, LLC, Preferred Capital Funding – Ohio, LLC and Brian Garelli.  A copy of that July 19, 2017 Order accompanies these Discovery Demands.

## DEFINITIONS AND INSTRUCTIONS

Unless otherwise indicated, the following definitions and terms shall be applicable to the Discovery Demands contained herein, and you are requested to provide the information required by each definition, where applicable.

1.     The "Settlement" means the Class Action Settlement (As Amended), dated February 13, 2015 [ECF No. 6481-1], and finally approved by the Honorable Anita Brody of the United States District Court for the Eastern District of Pennsylvania on April 22, 2015 [ECF No. 6509], available at https://www.nflconcussionsettlement.com/Documents.aspx.

2.     The "BAP" means the Baseline Assessment Program, as defined in section 2.1(i) an Article V of the Settlement.

3.     The "MAF" means the Monetary Award Fund, as defined in section 2.1(bbb) and Article VI of the Settlement.

4.     "Medical Services" means any consultation, evaluation, examination, treatment, or diagnosis with or from a medical professional.

5.     "Solicitation" means any communication, whether printed, electronic, telephonic, mailed, emailed, on the internet, which was intended, in whole or in part, to seek representation of, or to provide monies or other services to Retired NFL Football Players.

6.     "Communication" or "Communicated" means any written statement whether in print or electronic form, as well as any oral communications, in person or over the telephone or internet medium.

7.     "Identify," when used with respect to a person, means to state the full name, current address, or if not available, last known address, telephone number and email address, if known, and affiliation with any organization, corporation, firm or other entity. "Identify," when used with respect to a document, means to state the author(s), date, recipient(s), type, subject matter and any other identifying information with respect to the document.

8.     "Retired NFL Football Player" means all living retired NFL football players, as that term is specifically defined in section 2.1(ffff) of the Settlement.

9.     "You" or "Your" means Preferred Capital Funding, Inc., Preferred Capital Funding – Missouri, LLC, Preferred Capital Funding – Nevada, LLC, Preferred Capital Funding – Ohio, LLC and Brian Garelli, and their present and former directors, officers, employees, contractors, agents, consultants, affiliates and attorneys, or other persons acting for or on behalf of any of them.

10.     In order to bring within the scope of these interrogatories and requests for production of documents all conceivably relevant information that might otherwise be construed to be outside their scope:

a.     the singular of each word shall be construed to include its plural and vice versa;

b.     "and," as well as "or," shall be construed conjunctively as well as disjunctively; and

c.     "all," "any," "each," and "every" shall each be construed as all, any, each and every.

## REQUESTS FOR PRODUCTION

**Request No 1.**

Produce exemplars of all Solicitations that You directed toward Retired NFL Football Players.

**Request No 2.**

Produce all Communications that You had with Retired NFL Football Players related to the Settlement.

**Request No 3.**

Produce all Communications that You had with any other person or entity related to the Settlement, including, but not limited to MAF or BAP examinations, other Medical Services, loans or asset purchases, lead generators or lead referral sources, or related in any way to MAF Monetary Awards. This also includes Communications with hedge funds related to providing funding and/or any services in conjunction with the Settlement.

**Request No 4.**

Produce all agreements that You entered into with any other person or entity related to the Settlement.

**Request No 5.**

Produce all agreements that You entered into with any Retired NFL Football Player.

**Request No 6.**

Produce all agreements that You entered into related to any MAF Monetary Awards that might be made through the Settlement.

**Request No 7.**

Produce all agreements that You entered into related to any other benefit that may be provided through the Settlement, including through the BAP or any comparable Medical Services.

**Request No 8.**

Produce any recordings of conversations related to the Settlement that You had with any person or entity.

## INTERROGATORIES

**Interrogatory No 1.**

Identify every Retired NFL Football Player with whom You have entered into any agreement related to the Settlement and state the nature of each agreement into which You entered with each Retired NFL Football Player.

**Interrogatory No 2.**

Identify every Retired NFL Football Player referred for, sent to, or scheduled for any type of Medical Services, by You, anyone working on Your behalf, or working in conjunction with You in any way, regardless of whether the medical services were performed by someone affiliated with You or Your organizations or not.

**Interrogatory No 3.**

Identify every Retired NFL Football Player for whom You, or anyone working on Your behalf, or working in conjunction with You in any way, have been involved in the payment, directly or through others, for a Retired NFL Football Player's expenses (whether on a non-recourse or recourse basis) in connection with obtaining any Medical Services to assist the Retired NFL Football Player in any way in participating in the Settlement.

**Interrogatory No 4.**

Identify every individual and entity with whom You, anyone working on Your behalf, or working in conjunction with You in any way, have worked or Communicated in connection with any Retired NFL Football Player's obtaining any Medical Services to assist the Retired NFL Football Player in any way in participating in the Settlement and/or receiving funds from You,

including, but not limited to, medical providers. For each such individual and/or entity, explain the details of the relationship and identify each Retired NFL Football Player involved.

**Interrogatory No 5.**

Identify every individual and entity with whom You, anyone working on Your behalf, or working in conjunction with You in any way, have any financial relationship or understanding, whether recourse or non-recourse, whether in writing or verbal, related to any Retired NFL Football Player's participation in the Settlement. For each such individual and entity, explain the details of the relationship and identify each Retired NFL Football Player involved. Identify any document related to the relationship.

**Interrogatory No. 6.**

Identify every individual and entity from whom You have obtained the contact information for any Retired NFL Football Player, including their home or cellular telephone numbers, home or business addresses and email addresses.

**Interrogatory No. 7.**

Identify every individual and entity to whom You have provided any contact information for any Retired NFL Football Player.

**Interrogatory No. 8.**

Identify every person or entity with whom You have entered into any agreement, whether written or verbal, related to the Settlement, including but not limited to, the securing of funds to provide advances, loans or monies under any other arrangements to Retired NFL Players, the referral of Retired NFL Football Players for loans or provisions of money under other terms, for legal or other representation or for Medical Services related to the Settlement, or the suggestion to Retired NFL Football Players that they contact individuals or entities in connection with loans or

provisions of money under other terms, for legal or other representation or for Medical Services related to the Settlement, and state the nature of each agreement.

**Interrogatory No. 9**

Identify every individual and entity with whom You, anyone acting on Your behalf, or working in conjunction with You in any way, Communicated related to the Settlement, or related to the Solicitation of Retired NFL Football Players.

Dated: October 31, 2017

_/s/ Christopher A. Seeger___
Christopher A. Seeger
SEEGER WEISS LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

***Co-Lead Class Counsel***

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **Hon. Anita B. Brody** |

### NOTICE & ORDER

The Court is concerned about deceptive practices targeting Settlement Class Members, especially in light of the fact that Settlement Class Members may be suffering from significant cognitive impairment. The following filings alerted the Court to alleged deceptive practices that target Settlement Class Members:

- On February 21, 2017, Co-lead Class Counsel filed a Motion for Injunction Prohibiting Improper Communications with the Class by Class Member Fred Willis Through his Organizations NFL Players Brains Matter, HPN Neurologic, and HPN Concussion Management (ECF No. 7175). This Motion was resolved through a Stipulation (ECF No. 7489) approved on April 18, 2017;

- On March 27, 2017, Co-lead Class Counsel filed a Motion for Injunction Prohibiting Improper Communications with the Class by Jim McCabe and NFL Case Consulting, LLC (ECF No. 7347). On June 6, 2017, Co-lead Class Counsel withdrew this Motion without prejudice (ECF No. 7779);

- On June 9, 2017, Co-lead Class Counsel filed a Motion for Approval of Notice to Class Members to Address Solicitations Received by [the] Class (ECF No. 7811). On June 12, 2017, the Court granted Co-lead Class Counsel's Motion and authorized distribution to the Settlement Class of a Notice regarding solicitations received by class members from claims service providers and other individuals and entities (ECF No. 7814) (Exhibit A).

Additionally, on July 16, 2017, the *New York Times* published an article by Ken Belson titled "After N.F.L. Concussion Settlement, Feeding Frenzy of Lawyers and Lenders" (Exhibit B). This article recounted the stories of Settlement Class Members who have received potentially misleading solicitations from claims service providers, lenders and litigation funders, and retired NFL players working on behalf of these entities. It thus came to my attention that deceptive practices that target Settlement Class Members may remain a problem in the implementation of this Settlement.

The Court will hold a Hearing to address allegedly deceptive or misleading solicitations received by Settlement Class Members, including but not limited to solicitations from claims service providers, lenders and litigation funders, entities or persons purporting to facilitate medical examinations for purposes of acquiring Qualifying Diagnoses, law firms, and other retired NFL players working on behalf of these entities. The Court will address the legality of any agreements entered into by Settlement Class Members as a result of these solicitations and may grant any relief the Court deems proper.

Co-Lead Class Counsel is authorized to conduct discovery on an expedited basis, including interrogatories, document requests, and depositions. The discovery may include but is not limited to:

- All communications between Settlement Class Members and any person or entity who has sent purportedly deceptive or misleading solicitations to Settlement Class Members;

- All contracts or retainers entered into by Settlement Class Members in connection with these communications; and

- Any referral agreements related to the solicitation of Settlement Class Members.

The deadline for answering interrogatories or requests for production of documents is fourteen (14) days.

As a fiduciary of the Settlement Class Members, responsible for protecting the Settlement Class Members, the Court will hold a **HEARING** on **September 19, 2017 at 10:00 a.m.** in Courtroom 7B on the 7th Floor of the U.S. Courthouse, 601 Market St., Philadelphia, PA, to investigate these allegations.

Requests to be heard, along with a short statement of the information to be presented, must be emailed on or before **September 12, 2017.**

- Requests from counsel must be submitted to **concussions@paed.uscourts.gov**.

- Requests from Settlement Class Members who are not represented by a lawyer must be submitted to **sgeorge@seegerweiss.com**.

_____
ANITA B. BRODY, J.

July 19, 2017
_____
DATE

Copies **VIA ECF** on _____ to:                    Copies **MAILED** on _____ to:

3

# Exhibit A

*This is an **official notice**, approved by Judge Anita Brody of the*
*United States District Court for the Eastern District of Pennsylvania in*
***In re National Football League Players' Concussion Injury Litigation (MDL No. 2323)***

***This is not a solicitation from a lawyer or any other organization***

# NFL CONCUSSION SETTLEMENT

## IMPORTANT NOTICE TO ALL SETTLEMENT CLASS MEMBERS
## TO CLEAR UP CONFUSION REGARDING
## (1) THIRD-PARTY CLAIMS SERVICE PROVIDERS AND
## (2) MASS SOLICITATIONS OF CLASS MEMBERS BY FORMER PLAYERS

### (1) "CLAIMS SERVICE" COMPANIES ARE _NOT_
### THE COURT-APPOINTED CLAIMS ADMINISTRATOR

There are reports that Class Members have been confused and have signed contracts with third-party claims service companies – for as much as 15% of their future monetary awards under the Settlement – due to their mistaken belief that they were signing up with the Court-appointed Claims Administrator.

It is important that you be aware that you do _not_ need to contract with a claims service company to register, schedule an appointment with a Qualified BAP Provider or Qualified MAF Physician, or to file a claim. None of the steps are complicated. The Claims Administrator does not charge for assisting Class Members with registering or filing claims.

A BAP Examination is *free of charge*. But *only* the Court-appointed BAP Administrator can schedule a Retired Player for a BAP examination with a Qualified BAP Provider.

### IMPORTANTLY, AS OF JANUARY 7, 2017, A QUALIFYING DIAGNOSIS
### CAN BE MADE _ONLY_ BY PHYSICIANS SELECTED AND APPROVED
### *WITHIN THE SETTLEMENT PROGRAM*
### TO SERVE AS QUALIFIED BAP PROVIDERS AND QUALIFIED MAF PHYSICIANS

This is also to remind you that, under the terms of the Settlement, after the Effective Date of January 7, 2017, a Qualifying Diagnosis can be made *ONLY* by a Qualified BAP Provider or a Qualified MAF Physician. Be particularly wary of anyone offering to cover the costs of travel to a medical examination or the costs of the examination itself, by a doctor outside of the Settlement Program, or assurances that you will receive a Qualifying Diagnosis for a monetary award if you are seen by a particular doctor.

If you entered into a contract with a claims service company because you believed they were the Claims Administrator or other Court-appointed Settlement official, or because you were promised to be sent to doctors outside of the Settlement Program after January 7, 2017, for the purpose of obtaining a Qualifying Diagnosis, please contact, or have your individually retained lawyer contact,

Co-Lead Class Counsel at NFLConcussion@seegerweiss.com or 1-877-539-4125 immediately. They can help you sort out your situation.

**RETAIN ALL DOCUMENTS BECAUSE, AT A LATER DATE, THE COURT EXPECTS TO HOLD A HEARING TO ADDRESS THE LEGALITY OF ANY TRANSACTIONS BETWEEN CLAIMS SERVICE COMPANIES AND CLASS MEMBERS.**

## (2) COMMUNICATIONS FROM FORMER PLAYERS THAT MAY BE SOLICITATIONS BY PRIVATE LAWYERS OR OTHERS

There are also reports of mass email solicitations purportedly sent by one or more retired players as reminders regarding registration for the Settlement Program. These are *not* official communications sent on behalf of the Claims Administrator or anyone formally appointed by the Court. *They may be solicitations on behalf of private lawyers or third-party companies.* Calling any listed "hotline" number or clicking a link for information will *not* put you in touch with the Claims Administrator or anyone formally connected with the Settlement Program.

The Court-Appointed Claims Administrator is **BrownGreer PLC,** which can be reached by calling **1-855-887-3485** or emailing **ClaimsAdministrator@NFLConcussionSettlement.com.**

The official settlement website (www.NFLConcussionSettlement.com) is also a reliable source of information. There is no other Court-approved website.

**PLEASE DO NOT CONTACT EITHER THE JUDGE OR COURT PERSONNEL DIRECTLY ABOUT THIS NOTICE OR ABOUT THE SETTLEMENT**

# Exhibit B

𝕿𝖍𝖊 𝕹𝖊𝖜 𝖄𝖔𝖗𝖐 𝕿𝖎𝖒𝖊𝖘      https://nyti.ms/2vqEtVh

PRO FOOTBALL

# After N.F.L. Concussion Settlement, Feeding Frenzy of Lawyers and Lenders

By KEN BELSON   JULY 16, 2017

The sales pitches were filled with urgency and emphasized familiarity. Act now or risk missing out on millions of dollars. Trust us because we are part of the "N.F.L. brotherhood." "You have nothing to lose," a former N.F.L. quarterback implored in one, "but money you're entitled to and that you earned the hard way."

The pleadings are aimed at former N.F.L. players who stand to receive checks from the largest legal settlement in sports history, a pool of money that may top $1 billion for retirees who sued the league for lying to them about the dangers of concussions as they got their heads pounded on the field.

Some players may get very little, but others with severe neurological diseases may receive as much as $5 million. Now lawyers, lenders and would-be advisers are circling, pitching their services and trying to get a cut of the money.

It may be standard practice for big legal settlements, but the fact that many players are cognitively impaired and may struggle to understand the terms of the services offered to them has raised alarm among player advocates, legal ethicists and the lawyers for the players who sued the N.F.L.

"I've been doing this litigation for a long time, there's always been a certain amount of stuff going on, but I've never seen anything like this by a multiple," said Christopher Seeger, a co-lead counsel for the players, who has received dozens of complaints from players and others about companies pitching sometimes dubious services. "There's a sex appeal to representing N.F.L. players, and they are so identifiable, so these companies who are predatory, it is easy for them to be successful. Most of these guys are broke, so they're vulnerable."

While some of the firms may provide valuable assistance in complicated cases, others appear to be pitching services to ex-players who don't need their help.

The cottage industry of companies and law firms, going by names such as N.F.L. Case Consulting, Concussion Case Management and Legacy Pro Sports and looking to help people file settlement claims, is largely unregulated, even if their pitches are for services that are usually unnecessary. And with the deadline to register for the settlement less than a month away, their pitches have become more aggressive.

The rush to recruit players prompted the federal judge overseeing the legal settlement case to issue an order in April saying that N.F.L. Players Brains Matter, a company led by Fred Willis, a former running back, would no longer distribute "improper communications" to other players.

In an interview, Mr. Willis said he was a longtime advocate for players and accepted no money for helping them.

"I'm not being paid, and I don't need the money," said Mr. Willis, who played for the Bengals, the Oilers and the Broncos. "This is not going to stop me from helping my brothers, and they know where I am coming from."

The judge, Anita B. Brody, also approved a notice that warned players about companies that, according to Mr. Seeger, offer to help players "navigate what are

falsely portrayed as complicated registration, medical testing and claims procedures."

Most of the claim-service providers require players to agree to share 15 percent or more of anything they receive in return for helping them with a process that the providers portray, in stark terms, as unduly complicated. They also do not always tell players that they can call court-appointed experts to receive free advice on how to file a claim, or that they can visit doctors who will provide a free neurological exam.

Some lawyers have hosted dinners for former players at steakhouses to get them to sign up. Others have promised to get players appointments with doctors who will write diagnoses that make their medical conditions look worse than they are, according to players who have received pitches from some of the companies.

Some lawyers have also hired former players to sign up their brethren, yet do not always disclose that the ex-players are being paid to recruit other retirees. One firm hired Joe Pisarcik, the former Giants quarterback who until recently ran the N.F.L. Alumni Association, as a pitchman. (Mr. Pisarcik did not answer telephone messages left for him.)

Mr. Seeger said a few hundred of the approximately 20,000 players who are eligible appeared to have signed up for these services. But some retirees have resisted the come-ons. Walter Carter, who played defensive end for the Raiders and the Buccaneers, as well as in the U.S.F.L., has heard from at least a dozen companies pitching services.

But Mr. Carter, 59, who runs a packaging company near Tampa, Fla., went on the website for the concussion settlement and realized he could file a claim on his own. Although he was annoyed by the lawyers selling services he does not need, Mr. Carter is more offended by the retired players who are doing their bidding, including Mr. Pisarcik, who pitched him.

"I watch how these attorneys work, and I think it's a crime," Mr. Carter said. But "most of them penetrate the confidence of guys by working with other guys. It's the ultimate betrayal."

Even players who may have taken fewer hits to the head than front-line players have been approached. Michael Husted, a kicker with four teams over nine N.F.L. seasons, said he had received emails and phone calls from at least half a dozen companies offering to help him file a claim. Most of these companies made it clear they were less concerned about his health than about earning a commission, he said.

"I was definitely surprised they were reaching out to a kicker, but then I realized the more people they get, the more money they might get," Mr. Husted said.

He said the process to register online for the settlement — a needed step before filing a claim — was straightforward and did not require a lawyer.

"If you can read, you can fill it out," he said.

Judge Brody left open the possibility of canceling agreements between these companies and any players they had enlisted.

The N.F.L. declined to make an executive available to discuss the issue.

Concussion Case Management and Legacy Pro Sports, which was started by a former player, said any misleading information on their websites had been corrected.

The companies say that they are advocates for players who have difficulty completing the needed paperwork, and that they charge far less than law firms.

"They want to tell you it's simple and you don't need to work with a service company or a lawyer — but when you sit down with the player and tell him to go to this portal, get an ID number, if you're a retired player with impairment, it's not necessarily an easy process," said Jerry Passaro, the chief executive of Concussion Case Management, which charges players 12.5 percent of any award from the settlement.

Brandon Siler, a former linebacker and a co-founder of Legacy Pro Sports, another service provider, said: "It hurts my feelings when something is written that we are taking advantage of players. We're totally transparent about what we do. We are a consulting company that is educating these players."

The concussion settlement has also attracted lenders who have been offering retirees loans worth tens of thousands of dollars that would be paid back with payouts from the settlements. The loans, though, come with interest rates of 40 percent or higher that can completely consume any cash from the settlement.

In February, the Consumer Financial Protection Bureau and the New York attorney general, Eric T. Schneiderman, sued a New Jersey-based financial company, RD Legal Funding L.L.C., accusing it of deceiving retired N.F.L. players and "luring them into costly advances on settlement payouts with lies about the terms of the deals."

Retired players are also learning about provisions in the settlement that allow Medicare, former spouses, banks and other potential creditors to recoup money by placing a lien on a player's award. Medicare and Medicaid, for instance, can recover money they have spent treating a player's medical condition, something that could amount to hundreds of thousands of dollars for players with amyotrophic lateral sclerosis or Parkinson's disease, two conditions covered under the settlement.

Mr. Seeger, the plaintiffs' lawyer, said that claims specialists representing the players would negotiate discounts with Medicare and Medicaid. He declined to say how large they would be, but he said that after the government was repaid, players would still have a large portion of their award.

Some players, though, may still need to pay contingency fees to their lawyers or repay unpaid child support or a bank or other lender. And of course, players who hired a claims service company will have to hand over 10 percent or more.

"With any middleman service, there are those who are doing it for a fair price and then you have people who are taking advantage," said Ted Frank, a lawyer at the Competitive Enterprise Institute, a nonprofit that focuses on class-action settlements. "But no one is going to help me fill out my claim for a $5 coupon."

A version of this article appears in print on July 17, 2017, on Page A1 of the New York edition with the headline: Fear of Preying On Ex-Athletes Owed by N.F.L.

---

© 2017 The New York Times Company

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL, | : | No. 2:12-md-02323-AB |
| LEAGUE PLAYERS' CONCUSSION | : | |
| INJURY LITIGATION | : | MDL No. 2323 |
| | : | |
| | : | |
| Kevin Turner and Shawn Wooden, | : | |
| *on behalf of themselves and others* | : | |
| *similarly situated,* | : | |
| Plaintiffs, | : | |
| | : | |
| | : | |
| v. | : | **Honorable Anita B. Brody** |
| | : | |
| National Football League and | : | |
| NFL Properties LLC, successor-in-interest | : | Civ. Action No. 14-00029-AB |
| to NFL Properties, Inc., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| ALL ACTIONS | : | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PROTECTIVE ORDER</u>

**I.    INTRODUCTION**

Moving parties Preferred are not parties to this litigation. Co-Lead Class Counsel ("Class Counsel") has attempted to serve Discovery requests on Preferred, even though it is not a party and has no contacts with the forum state. The Federal Rules of Civil Procedure require that Discovery of a non-party be accomplished only pursuant to Rule 45. *Taggart v. Wells Fargo Home Mortg., Inc.,* No. 10-cv-00843, 2012 WL 4462633, at *2 (E.D. Pa. Sept. 27, 2012). ; *see also* Fed. R. Civ. P. 33(a)(1) (interrogatories are served only on parties); Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a non-party may be compelled to produce documents and tangible things or to permit an inspection."). A District court must have personal jurisdiction over a non-party in order for it to compel the non-party to comply with a discovery request under Federal

4

Rule of Civil Procedure Rule 45. *Gucci America, Inc. v. Weixing Li,* 768 F.3d 122, 141 (2d Cir. 2014). Further, a party must "make out a prima facie case for personal jurisdiction" before it can take any discovery from a foreign corporation" *Estate of Ungar v. Palestinian Auth.,* 400 F.Supp.2d 541, 549 (S.D.N.Y.2005).

Class Counsel fails to provide any basis for this Court's personal jurisdiction over Preferred, and this Court in fact does not have personal jurisdiction over Preferred. Preferred does not have any contacts with the forum state let alone the minimum contacts required for personal jurisdiction. *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Accordingly, the Court should grant this motion.

This Court should also grant this Motion for a Protective Order based on Class Counsel's failure to comply with the basic rules governing non-party discovery. Discovery of non-parties must be conducted by subpoena. *Taggart* , 2012 WL 4462633, at *2. Class Counsel failed to issue a subpoena for these documents and instead served Discovery requests on Preferred. Class Counsel also failed to provide any justification for propounding interrogatories to a non-party. Accordingly, the Court should grant this motion.

## II.     BACKGROUND

### a.  Loan Agreement and Jurisdiction

On May 27, 2016, Kenny Clark entered into a loan agreement with Preferred Capital Funding-Nevada, LLC.   Preferred Capital Funding-Nevada, LLC is a lender licensed to do business in Nevada. *See* Affidavit of Brian Garelli attached as Exhibit "B". At all times during the negotiation and closing of this agreement, Kenny Clark was represented by counsel, who was not from Pennsylvania. Id. The agreement was signed by both parties at Preferred's office in Las Vegas, Nevada. Id.

Neither Preferred nor Mr. Garelli has ever done business in Pennsylvania. Id. All loans made by Preferred to a potential class member were made in Nevada or Missouri. Id. Preferred was also not referred any customers by any lawyers who reside in Pennsylvania. Id.

### b. Class Counsel's Improper Attempt to Obtain Non-Party Discovery

On October 31, 2017, Class Counsel served a single document entitled Requests For Production of Documents And Interrogatories, a copy of which is attached to this Motion as Exhibit "A". These Discovery requests were directed to Preferred Capital Funding, Inc., Preferred Capital Funding-Missouri, LLC, Preferred Capital Funding-Nevada, LLC, Preferred Capital Funding-Ohio, LLC, and Brian Garelli. Even though none of these respondents are parties to this litigation, Class Counsel did not serve subpoenas in accordance with the Federal Rules of Civil Procedure. Once Brian Garelli received these Discovery requests he immediately contacted Class Counsel in an effort to resolve the situation, however, the parties were unable to resolve the dispute.

### III.   THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER THE MOVING PARTIES

Discovery of non-parties must be conducted by subpoena pursuant to Federal Rule of Civil Procedure 45. *Taggart*, 2012 WL4462633, at *2. A District court must have personal jurisdiction over a non-party in order for it to compel the non-party to comply with a discovery request under Federal Rule of Civil Procedure Rule 45. *Gucci America, Inc.*, 768 F.3d 122, 141. The Supreme Court of the United States has held that before a court may exercise jurisdiction over a person or an organization, that entity must have sufficient "minimum contacts" with the forum state. *International Shoe*, 326 U.S. 310, 316.

The law has developed to distinguish two types of personal jurisdiction: general jurisdiction and specific jurisdiction. General jurisdiction permits a court to hear all claims

6

against an entity when their contacts are so continuous and systematic that they are essentially at home in the forum state. *Goodyear Dunlop Tires Operation, S.A. v. Brown,* 131 S.Ct. 2846, 2851 (2011). Specific jurisdiction, on the other hand, allows a court to assert jurisdiction over an entity when their activities were purposefully directed towards the forum and the litigation in front of the court arises out of or relates to those activities. *Burger King Corp. v. Rudzewicz,* 105 S.Ct. 2174, 2185 (1985). In adapting this test to non-parties, lower courts have assessed the connection between the non-parties contacts with the forum and what is at issue. *Gucci America, Inc.,* 768 F.3d 122, 137. Preferred has had no contacts with Pennsylvania such that it would be subject to either general or specific jurisdiction.

### a. General Jurisdiction

General jurisdiction permits a court to hear all claims against an entity when their contacts are so continuous and systematic that they are essentially at home in the forum state. *Goodyear,* 131 S.Ct. 2846, 2851. *Farber v. Tennant Truck Lines, Inc.,* 84 F.Supp.3d 421, 430 (E.D. Pa. Feb. 9, 2015). The Eastern District of Pennsylvania has adopted the view taken by a majority of jurisdictions that obtaining general jurisdiction over a corporation is extremely difficult. *Farber v. Tennant Truck Lines, Inc.,* 84 F.Supp.3d 421, 431 (E.D. Pa. Feb. 9, 2015). *See also Monkton Ins. Servs., Ltd. v. Ritter,* 768 F.3d 429, 432 (5th Cir. 2014) (recognizing the incredible difficulty in establishing general jurisdiction in a forum other than a corporation's place of incorporation or principal place of business"); *Martinez v. Aero Caribbean,* 764 F.3d 1062, 1070 (9th Cir. 2014) (noting that the Supreme Court in *Daimler* "makes clear the demanding nature of the standard for general personal jurisdiction over a corporation").

None of the Preferred entities that the discovery requests are addressed to have offices in Pennsylvania or have ever done business in Pennsylvania. *See* Id. Preferred has no contacts

7

which would lead the Court to establish jurisdiction under the demanding standard for general jurisdiction.

### b. Specific Jurisdiction

Specific jurisdiction allows the court to assert authority over entities when the issue arises out of or relates to the entities' contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 104 S.Ct. 1868, 1880 (1984). For a court to assert specific jurisdiction it must follow a two-step analysis set out by the Supreme Court of the United States. The court first must analyze whether the entity has "purposely directed" their activities at the forum and whether the litigation arises out of or relates to those activities. *Burger King Corp.,* 105 S.Ct. 2174, 2185. Once this has been established, the court then determines whether asserting personal jurisdiction over the entity would comport with fair play and substantial justice. *Id.* The Supreme Court has not addressed specific jurisdiction over non-parties, however Federal Courts have generally adapted the test to assess the connection between the non-party's contacts with the forum and what is at issue. *Gucci America, Inc.,* 768 F.3d 122, 137. Once these contacts have been established the court then will look at whether asserting jurisdiction would comport with traditional notions of fair play and substantial justice. *Id.*

Preferred has no contacts with Pennsylvania. Preferred entered into a loan agreement with Kenny Clark in Las Vegas, Nevada. *See* Exhibit "B". At all times during the negotiations and closing of this agreement, Mr. Clark was represented by counsel who was not from Pennsylvania. Id. None of the loan agreements that Preferred has entered into are with potential class members from Pennsylvania. Id. No negotiations were conducted in Pennsylvania. Id. None of the lawyers who referred customers to Preferred reside in Pennsylvania. Id. Preferred has not

8

purposefully directed any activities to this forum.  Preferred has no contact with Pennsylvania and therefore the Court lacks personal jurisdiction over them in this matter.

## IV.     THE FEDERAL RULES OF CIVIL PROCEDURE DO NOT AUTHORIZE THE DISCOVERY SOUGHT BY CLASS COUNSEL

Discovery of non-parties must be conducted by subpoena pursuant to Federal Rule of Civil Procedure 45. *Taggart*, 2012 WL4462633, at *2. The Federal Rules of Civil Procedure only allow service of interrogatories on parties to the litigation. Fed. R. Civ. P. 33(a)(1), 34(c). The Eastern District of Pennsylvania case law says that interrogatories served on a non-party are in effect a nullity. *Taggart*, 2012 WL4462633, at *2.

Despite the above authority, Class Counsel did not attempt to comply with Rule 45, and instead served Preferred with Discovery requests that include interrogatories. The Court should therefore grant Preferred's Motion for a Protective Order because Class Counsel failed to comply with the Rules of Civil Procedure. *See Highland Tank & Mfg. Co., v. PS Int'l, ltd.,* 227 F.R.D. 374, 379 (W.D. Pa. 2005) (denying a motion to compel because a party did not serve subpoena and had therefore not complied with the first step of discovery for a non-party).

## V.   CONCUSION

For the reasons set forth above and in the Affidavit of Brian Garelli, the moving non-parties respectfully request that class Counsel's discovery requests be stricken.

McELROY, DEUTSCH, MULVANEY &
CARPENTER, LLP

By: _____
THOMAS R. HURD, ESQUIRE
*Attorney for Preferred Capital Funding, Inc.*
*Preferred Capital Funding-Nevada, LLC*
*Preferred Capital Funding-Missouri, LLC*
*Preferred Capital Funding-Ohio, LLC*
*Brian Garelli*
1617 John F. Kennedy Blvd., Suite 1500
Philadelphia, PA19103-1815
(215) 557-2900 – T
(215) 557-2990 – F
thurd@mdmc-law.com

Dated: November 14, 2017

# Exhibit "B"

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL, | : | No. 2:12-md-02323-AB |
| LEAGUE PLAYERS' CONCUSSION | : | |
| INJURY LITIGATION | : | MDL No. 2323 |
| | : | |
| Kevin Turner and Shawn Wooden, | : | |
| *on behalf of themselves and others* | : | |
| *similarly situated,* | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Honorable Anita B. Brody |
| | : | |
| National Football League and | : | |
| NFL Properties LLC, successor-in-interest | : | Civ. Action No. 14-00029-AB |
| to NFL Properties, Inc., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| ALL ACTIONS | : | |

## AFFIDAVIT OF BRIAN T. GARELLI

Brian T. Garelli, being duly sworn according to law, states the following:

1.  I am the President and founder of Preferred Capital Funding-Nevada, LLC, and Preferred Capital Funding-Missouri, LLC (hereinafter jointly referred to as Preferred) and I am competent to make this affidavit.

2.  The LLCs referred to above are licensed lenders in Nevada and Missouri respectively and every loan made by those LLCs to a potential class member was made in one of those states. Neither I nor Preferred has done any business in Pennsylvania.

3.  Preferred has no offices in Pennsylvania.

4.     Preferred has not loaned money to any members of this class who reside in Pennsylvania.

5.     Preferred was not referred any customers by any lawyers who are from Pennsylvania.

6.     Preferred did not send solicitations to any potential class members.

7.     All loan agreements were negotiated, agreed upon, and signed outside of Pennsylvania.

8.     In regard to the loan agreement with Kenny Clark, at the time the loan was negotiated and closed he was represented by counsel who was not from Pennsylvania.

9.     Kenny Clark signed the Promissory Note at Preferred's office in Las Vegas, Nevada.

10.    I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

By:  _____

Brian T. Garelli
President
Preferred Capital Funding-Nevada, LLC
Preferred Capital Funding-Missouri, LLC

Dated: November __, 2017

Sworn to and subscribed
before me this 13 day
of November, 2017

_____
Notary Public

AMY MOCK
Official Seal
Notary Public – State of Illinois
My Commission Expires Aug 14, 2021