# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: NATIONAL FOOTBALL LEAGUE
PLAYERS' CONCUSSION INJURY
LITIGATION

---

Kevin Turner and Shawn Wooden,
*on behalf of themselves and others
similarly situated*,

        Plaintiffs,

        v.

National Football League and
NFL Properties LLC, successor-in-interest to
NFL Properties, Inc.,

        Defendants.

No. 2:12-md-02323-AB

MDL No. 2323

Hon. Anita B. Brody, U.S.D.J.

---

## MEMORANDUM OF LAW OF OBJECTOR THRIVEST SPECIALTY FUNDING, LLC IN OPPOSITION TO CLASS COUNSEL'S MOTION TO WITHHOLD PORTIONS OF CLASS MEMBERS' MONETARY AWARDS

**FOX ROTHSCHILD LLP**

Peter C. Buckley, Esquire
Brian A. Berkley, Esquire
Mark J. Fanelli, Esquire
Attorney ID Nos. 93123, 200821, 321283
2000 Market Street, 20th Floor
Philadelphia, Pennsylvania 19103-3222
Tel:  (215) 299-2854
Fax:  (215) 299-2150
pbuckley@foxrothschild.com

*Attorneys for Thrivest Specialty Funding, LLC*

Date:   November 16, 2017

Objector Thrivest Specialty Funding, LLC ("Thrivest" or the "company"), by and through its undersigned counsel, Fox Rothschild LLP, submits this Memorandum of Law in opposition to the Motion and Memorandum of Law of Co-Lead Class Counsel ("Class Counsel"), ECF No. 8470 ("Motion" and "Memorandum of Law," respectively), seeking to withhold portions of Class Member monetary awards owed on receipt to Thrivest, among others.[1]  The Court should deny the Motion, principally, because it lacks jurisdiction over how Class Members spend their awards and because entering Class Counsel's proposed relief could subject Class Members to unwanted arbitration and even more "red tape" in the administration process, but for numerous other reasons as well.

## I.     INTRODUCTION

Class Counsel is rightfully proud of its advocacy on behalf of the Class in achieving their historic settlement with the NFL.  Here, however, Class Counsel has reached too far.

At the threshold, Rule 23(d) is a procedural rule and does not authorize the Court to enter substantive relief—especially injunctive relief that would rewrite the terms of private contracts with non-parties and interfere with Class Members' freedom to contract by controlling monetary awards even *after* they are paid by the Claims Administrator.  Class Counsel's appointment does not cover disputes between Class Members and Thrivest, nor could it in view of the class action waiver in Thrivest's agreement.  And there is no case or controversy (and thus no jurisdiction under Article III of the Constitution) until a Class Member brings a separate action, which—pursuant to the arbitration clause in Thrivest's agreement—cannot be pursued in this forum.  There

---

[1]     Although perhaps irrelevant in the absence of the other relief sought by Class Counsel and in view of the Claims Administrator's refusal to recognize Thrivest's lien, Thrivest does not oppose Class Counsel's request that Class Members disclose the existence of their agreements with Thrivest to the Claims Administrator.  Indeed, consistent with its commitment to fairness and transparency, Thrivest fully cooperated with Class Counsel's previous requests for information even in the absence of a subpoena, sharing its agreements and communications on August 18, 2017 and further supplementing its production on September 18, 2017.

is simply no jurisdiction to enter the relief sought in the Motion.

Moreover, Class Counsel's vague, non-specific allegations cannot satisfy the standard for injunctive relief in any event. Considering the reasonable rates charged by Thrivest for its advances, Class Counsel's main concern vis-à-vis Thrivest appears to be the company's use of an assignment structure. But, contrary to his central premise, if the Court finds that the Class Members violated *their* Settlement Agreement with the NFL by assigning a portion of their monetary awards to Thrivest once received, then those Class Members would not be permitted to invalidate their agreements with Thrivest or renegotiate more favorable terms and thus benefit from their own breach. Rather, such a finding would have no impact on the enforceability or terms of Thrivest's agreements.[2] So, Class Counsel cannot show a likelihood of success on the merits. What's more, the Class Members have an adequate remedy through arbitration should they seek relief, and withholding portions of their monetary awards could subject them to unwanted arbitration and even more "red tape" in the administration process. The Court should deny Class Counsel's requested injunction because it would do more harm than good.

For these reasons, more fully argued below, Thrivest respectfully requests that the Court deny Class Counsel's Motion insofar as it seeks to withhold portions of Class Member monetary awards owed, on receipt, to Thrivest and others similarly situated.

## II.    FACTUAL BACKGROUND

Despite Class Counsel's broad brush, not every specialty finance company is a "predator" that offers "less-than-transparent" advances to class action plaintiffs. Thrivest is committed to fairness and transparency. Its specialty finance products help customers avoid the delay often

---

[2]      This is yet another reason why the Court should find that the Class Members had the ability to assign portions of their monetary awards, once received. The relevant provision of the Settlement Agreement appears designed to ensure that the NFL did not have to deal directly with non-players during the claims administration process, but not to control how the players spend their awards after they receive them.

3

associated with litigation and provide them an opportunity to realize instant liquidity at transparent, reasonable rates. Customers often use this liquidity to pay medical bills, pay off debt, take care of essential life and household expenses, or, in the case of those stricken by terminal illness, enjoy settlements they might not otherwise be able to enjoy. In view of the challenges faced by the class and the two years that have passed since the settlement of this action (for many without any compensation), it is not surprising that there was a market for Thrivest's products here. Thirty-five Class Members have an open relationship with Thrivest. These relationships bear reasonable annualized rates and are non-recourse to the monetary awards from this litigation, meaning that if the Class Member customers do not recover from the Settlement, they are not obligated to repay Thrivest any money.

Thrivest provided upfront cash in exchange for accepting the risk of collection and waiting associated with the claims administration process, but Thrivest does not interact directly with the NFL or the Claims Administrator. Those interactions are handled by the Class Members' personal attorneys, each of whom executed an "attorney acknowledgment" recognizing Thrivest's entitlement to payment if and when their clients receive a monetary award. To date, Thrivest has not received any complaints from its customers or their counsel.

Thrivest and each of its Class Member customers agreed to the following arbitration clause and class action waiver:

> (z)   Dispute Resolution.   Notwithstanding anything to the contrary herein, Buyer and Seller unconditionally agree that *any dispute, controversy or claim arising out of, or relating in any way to this purchase and sale Agreement,* including without limitation any dispute concerning the construction, *validity,* interpretation, *enforceability,* alleged-breach by either party, and/or any other term set forth in the Agreement *shall be exclusively resolved by binding arbitration* upon Buyer or Seller submitting the dispute to the American Arbitration Association within 30 days of written notice to the other party.

4

\*       \*       \*

(aa)   *It is specifically understood and agreed to by the parties that either of them may enforce any award rendered pursuant to the arbitration provisions of this section by moving to compel the award in the appropriate Pennsylvania court.* Lastly, the parties agree that the arbitrator shall have authority to grant injunctive or other forms of equitable relief to either party.

(bb)   *SELLER HEREBY WAIVES THE RIGHT TO CONSOLIDATE UNDER ANY MULTI DISTRICT LITIGATION OR OTHER CONSOLIDATION, OR BECOME PART OF A CLASS ACTION, OR ANY OTHER PROCEEDING, CONTROVERSY, ARBITRATION AND/OR DISPUTE OF ANY NATURE INVOLVING ANY PERSON OR ENTITY WHO IS NOT A PARTY TO THIS AGREEMENT.* WHETHER ANY CLAIM HEREUNDER IS DECIDED BY ARBITRATION OR BY TRIAL BY A JUDGE, THE PARTIES AGREE AND UNDERSTAND THAT THE EFFECT OF THIS AGREEMENT IS THAT THEY ARE GIVING UP THE RIGHT TO TRIAL BY JURY TO THE EXTENT PERMITTED BY APPLICABLE LAW.

*See* Thrivest Non-Recourse Agreement ("Agreement"), at 10-11, ¶¶ z, aa, bb (emphasis added), attached as Exhibit "A."[3]

## III.   ARGUMENT

The procedural infirmities and the Pandora's Box of consequences that could flow from entering the proposed relief demonstrate why the Court should refuse jurisdiction and deny the Motion.

### A.   Rule 23(d) is a Procedural Rule that Governs Representative Parties and Intervenors; It Does Not Support Substantive Relief or Jurisdiction Over Non-Parties.

Rule 23(d) authorizes district courts to impose procedural conditions on representative

---

[3] Thrivest has redacted personally identifying information to protect the identity of its customer and filed its Agreement under seal to protect its confidential commercial information.

parties and intervenors in class actions to ensure that: (1) Class Members are receiving adequate representation; (2) the matter is being properly resolved; and (3) Class Members are protected from abusive communications during litigation. Fed. R. Civ. P. 23(d); *see also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 (1981); *Cobell v. Kempthorne*, 455 F.3d 317, 323-25 (D.C. Cir. 2006). Here, Class Counsel attempts to use Rule 23(d) to assert jurisdiction over Thrivest, a non-party, and prevent Class Members from receiving their full monetary awards based on what Class Members *might* do with their settlement proceeds *after* disbursement. Class Counsel's Motion must be denied because it is well-beyond the scope of the Court's procedural authority over representative parties and intervenors under Rule 23(d).

        **1.**       **Class Counsel's Rule 23(d) Motion is Improper Because it Seeks Substantive Relief and Interferes with Class Members' Ability to Realize their Full Settlement Awards.**

In relevant part, Rule 23(d)(1)(C) provides that "in conducting an action under this rule, the court may issue orders that . . . impose conditions on the representative parties or on intervenors." *See* Fed. R. Civ. P. 23(d)(1)(C). Rule 23(d), however, is strictly a procedural rule and does not support substantive relief. *Cobell, supra*, 455 F.3d at 324-25 (holding that Rule 23(d) "authorizes notice to protect Class Members' right to participate in the litigation[, and] it does not authorize substantive orders."); *see also In re School Asbestos Litig.*, 842 F.2d 671, 682 (3d Cir. 1988).[4]

Class Counsel seeks substantive relief under the guise of protecting Class Members from future harm *after* their settlement awards have been disbursed. Class Counsel is attempting to use

---

[4]      District courts should not exercise their procedural authority under Rule 23(d) "without a *specific record* showing by the moving party of the particular abuses by which it is threatened." *See Gulf Oil Co., supra*, 452 U.S. at 102 (emphasis added). District courts must also find that the basis for relief and the relief sought are consistent with the policies of Rule 23, and represent the narrowest possible means to protect the representative parties. *See In re School Asbestos Litig., supra*, 842 F.2d at 682.

Rule 23(d) to prevent Thrivest from receiving the benefit of its contracts with Class Members. Rule 23(d) does not allow this type of substantive relief. Instead, Rule 23(d) expressly affords district courts the authority only "to protect Class Members' right to participate in the litigation[;] *it does not authorize substantive orders." Cobell*, *supra*, 455 F.3d at 324-25.

*Cobell* clearly demonstrates the limits of Rule 23(d). In that case, the D.C. Circuit reversed the district court's order, which had been issued ostensibly under Rule 23(d), because the order sought substantive relief—specifically to *"protect trust beneficiaries from making poor decisions* based on faulty information *unrelated to the litigation itself." Id.* at 323 (emphasis added). This is precisely the relief requested in Class Counsel's Memorandum of Law—protecting Class Members from third party contracts entered "under less-than-transparent circumstances or via assignments that are prohibited under the Settlement Agreement . . . ." *See* Memorandum of Law, at 4-5. Challenging these agreements or rewriting their terms is a substantive, not a procedural remedy, and thus not authorized by Rule 23(d). *See, e.g., Cobell*, *supra*, 455 F.3d at 324-25.

## 2. **Thrivest is Neither a Representative Party, Nor an Intervenor.**

What's more, a Court's authority under Rule 23(d) does not extend beyond class members, intervenors or their counsel. *Gulf Oil Co.*, *supra*, 452 U.S. at 100 (holding that courts have the "duty and broad authority to exercise control over a class action and enter appropriate orders governing the conduct of *counsel* and *parties*.") (emphasis added). In fact, Rule 23(d) does not even apply to named defendants in a class action. *Cobell*, *supra*, 455 F.3d at 323 (reversing a Rule 23(d) order because it "imposed a condition not on a representative party or an intervenor, but on the defendant"). "Hardly a technicality, the limitation to representative parties and intervenors

stems from Rule 23(d)(3)'s purpose: ensuring proper representation of class interests."[5] *Ibid. See also* Fed. R. Civ. P. 23 advisory committee's note (1966 amendment) ("Subdivision (d)(3) reflects the possibility of condition the maintenance of a class action, e.g., on the strengthening of the representation, and recognizes that the imposition of conditions on intervenors may be required for the proper and efficient conduct of action."). Here, it is undisputed that Thrivest is not a party or an intervenor and, therefore, the Court lacks jurisdiction over Thrivest and its agreements with Class Members.

The case law relied on by Class Counsel to support the Court's purported authority over Thrivest actually proves Thrivest's point. For example, in *Allied Sanitation, Inc. v. Waste Mgmt. Holdings, Inc.*, the Eastern District of New York found that Rule 23(d) gives courts the authority to issue procedural orders over settlement negotiations between the parties before a class was certified. 97 F. Supp. 2d 320, 329-30 (E.D.N.Y. 2000). By contrast, Class Counsel attempts to use Rule 23(d) to infringe on Class Members' rights to freely contract with third parties and comply with contractual terms *after* settlement awards have been distributed. Similarly, the Eastern District of Pennsylvania, in *Peil v. Nat'l Semiconductor Corp.*, found that *Rule 23(c)* requires courts to evaluate ongoing concerns regarding conflicts of interest that might arise with class counsel during litigation. 86 F.R.D. 357, 366-67 (E.D. Pa. 1980). Whereas here, Class Counsel argues that Rule 23(d) should be extended to allow the rewriting of contracts with non-parties. Finally, in *DuPont v. Wyly*, the District of Delaware conceded that there are "practical limits to the effectiveness of judicial supervision" under Rule 23(d), in the context of determining the adequacy of a representative plaintiff *during* litigation. 61 F.R.D. 615, 623-24 (D. Del. 1973). Yet here,

---

[5]     Rule 23(d) has been reorganized since *Gulf Oil Co.* and *Cobell* were decided. Nevertheless, the substance and spirit of the rule has not changed.

Class Counsel asks this Court to look past Rule 23(d)'s "practical limitations" and extend its powers to non-parties to the Settlement Agreement and interfere with third-party contracts. *Allied Sanitation*, *Peil*, and *DuPont*, thus, collectively fail to support Class Counsel's assertion that Rule 23(d) provides either jurisdiction over Thrivest or the authority to seek its requested relief.

## B.   The Requested Relief is Beyond the Scope of Class Counsel's Authority to Represent the Class.

Class Members brought this action against the NFL for failing to "provide players with rules and information that protect [players] as much as possible from short-term and long-term health risks," including from the risks of repetitive mild traumatic brain injury. *In re Nat. Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 362 (E.D. Pa. 2015), *amended sub nom. In re Nat'l Football League Players' Concussion Injury Litig.*, No. 2:12-MD-02323-AB, 2015 WL 12827803 (E.D. Pa. May 8, 2015), and *aff'd sub nom. In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410 (3d Cir.), *as amended* (May 2, 2016), *cert. denied sub nom. Gilchrist v. Nat'l Football League*, 137 S. Ct. 591, 196 L. Ed. 2d 473 (2016), and *cert. denied sub nom. Armstrong v. Nat'l Football League*, 137 S. Ct. 607, 196 L. Ed. 2d 473 (2016). Class Members also asserted that "the NFL held itself out as the guardian and authority on the issue of player safety," yet failed to properly investigate, warn of, and revise league rules to minimize the risk of concussive and sub-concussive hits in NFL football games. *Ibid.* Accordingly, Class Counsel was charged by the class to bring causes of action against the NFL for its failure to protect, inform, and educate former players about the health effects surrounding concussions. Class Counsel was not authorized to act as the Class Members' individual attorney and *sua sponte* raise issues concerning Class Members' use of settlement awards *after*

9

disbursement by the Claims Administrator.[6]  Class Counsel's Motion does not advance any Class Members' interests and may actually harm them.  Class Counsel's Motion seeks relief that is beyond the scope of his duties to Class Members and must be denied.

## C.   The Federal Arbitration Act and Supreme Court Precedent Preclude this Court from Interfering with Thrivest's Agreements.

In his Memorandum of Law, Class Counsel argues, "[i]t is beyond dispute that this Court has control over the res that is the Monetary Award Fund and the Settlement Trust Account."  True, but that is beside the point, as what Class Counsel actually asks is for the Court to control proceeds beyond the res, stopping payments that the Class Member customers are contractually required to pay *after* the proceeds in the Monetary Award Fund and Settlement Trust Account are distributed. Thrivest receives payment not directly from the Monetary Award Fund or Settlement Trust Account, over which Class Counsel argues the Court has jurisdiction, but from its contracting party (specifically, the Class Members and their attorneys/representatives).  These proceeds will be paid pursuant to the Agreements, which are governed by the arbitration clauses and over which the Court does *not* have jurisdiction.[7]

### 1.   The Federal Arbitration Act Requires This Court to Respect the Arbitration Clauses And Deny Class Counsel's Motion.

In the Thrivest Agreements, the parties agreed to resolve any future dispute before an

---

[6]     Class Members' personal counsel are involved in receiving the monetary awards from the Claims Administrator and later remitting payment to Thrivest, so the Class Members' interests are protected.

[7]     The Settlement Agreement contains a broad definition of term "liens," which includes security interests created by the assignment of settlement proceeds.  *See* ECF No. 6481-1 at § 2.1(uu).  Before filing this Motion, Class Counsel maintained that the assignment of settlement awards did not fall with the Settlement Agreement's definition of "liens" and were a non-issue.  Yet now, in an attempt establish jurisdiction, Class Counsel argues that it is reasonable for this Court to reach beyond the disbursement of settlement awards by the Claims Administrator and interfere with third party contracts.  Class counsel cannot have it both ways.

arbitrator, not this or any other Court.[8]  Even if Class Counsel claims the authority to pursue

individual claims on behalf of individual Class Members (which authority it does not rightly have),

the Federal Arbitration Act ("FAA") and the Supreme Court would require any such claim to be

decided by an arbitrator.

More specifically, under the terms of Thrivest's non-recourse agreements, Thrivest and its

Class Member customers contracted to:

> [U]nconditionally agree that any dispute, controversy or claim
> arising out of, or relating in any way to this purchase and sale
> Agreement, ***including without limitation any dispute concerning
> the construction, validity, interpretation, enforceability, alleged
> breach by either party, and/or any other term set forth in the
> Agreement shall be exclusively resolved by binding arbitration*** . . .

*See* Agreement at 10, ¶ z (emphasis added).  There can be no question that, at least with respect to

Thrivest, this broad arbitration clause blocks Class Counsel's attempt to have Thrivest's

contractual rights decided in this forum, especially when the contracting parties have not raised

any concern, or been consulted about the instant motion.  The FAA and related Supreme Court

precedent require this result.

In response to "widespread judicial hostility" to arbitration agreements, Congress passed

the FAA in 1925.  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011).  The FAA

established "a national policy favoring arbitration when the parties contract for that mode of

dispute resolution." *Preston v. Ferrer*, 522 U.S. 346, 349 (2008); *see also Sandvik AB v. Advent*

*Int'l Corp.*, 220 F.3d 99, 104-05 (3d Cir. 2004) (same).  Under the FAA, an arbitration agreement

is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract." *See* 9 U.S.C. § 2 (2012).  The FAA "thereby places arbitration

---

[8]      To note, a dispute over the Agreements does not exist here, except the one that Class Counsel seeks to create
with this Motion.

agreements on equal footing with other contracts . . . and requires courts to enforce them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010).

Consistent with this FAA precedent, the Court must respect, and not interfere with, the arbitration clause in the Thrivest Agreements, which directs to arbitration any "dispute, controversy or claim" that relates in "any way" to the Thrivest Agreements. *See* Agreement at 10, ¶ z. Class Counsel's Motion purports to raise a controversy concerning Thrivest's "legal entitlement" to the payments required under the Thrivest Agreements. While there is not in fact any such controversy between the Class Members and Thrivest, to the extent such a controversy does exist, this Court has no authority to adjudicate it. The players must raise any such dispute in arbitration, not here through Class Counsel.

> **2.    Any Attack On the Validity of the Thrivest Agreements Must Be Decided By The Arbitrator.**

While not entirely clear, Class Counsel seems to suggest that the Thrivest Agreements may be invalid because they were entered into "possibly under less-than-transparent circumstances or via assignments that are prohibited under the Settlement Agreement . . . ." *See* Memorandum of Law, at 4-5. As a result, Class Counsel may argue the arbitration clauses under the Agreements are likewise invalid, thereby permitting this Court to adjudicate Thrivest's rights under the non-recourse agreements. This argument fails for two reasons.

*First*, the parties clearly and unmistakably gave the arbitrator the power to determine, "exclusively," the "construction, validity, interpretation, [and] enforceability" of the Thrivest Agreements. *See* Agreement at 10, ¶ z. Therefore, only an arbitrator may resolve any question as to the "validity" of the Thrivest Agreements. That is, only an arbitrator can determine whether the Thrivest Agreements were entered into "under less-than-transparent circumstances" or are "prohibited under the Settlement Agreement." This Court has no authority to address the validity

of the Thrivest Agreements. To hold otherwise would fly in the face of binding Supreme Court holdings. *See, e.g., Jackson, supra*, 130 S. Ct. at 2777 ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability'" and ruling only arbitrator could rule on agreement's validity under agreement that gave arbitrator the "exclusive" power to determine its "enforceability"); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-85 (2002) (same); *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion) (same).

**Second,** even if this Court had the authority to determine the validity of the arbitration clause, Class Counsel's challenge fails because he does not attack the arbitration clause itself. The Supreme Court has recognized two types of validity challenges to arbitration agreements:

> One type challenges specifically the validity of the agreement to arbitration, and the other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.

*Jackson, supra*, 130 S. Ct. at 2778. A long line of Supreme Court cases confirms, "only the first type of challenge is relevant to the court's determination whether the arbitration at issue is enforceable." *Ibid.*; *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006); *Preston, supra*, 552 U.S. at 353-54; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967). As a result, "a party's challenge to another provision of the contract, or to the contract as whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Jackson, supra*, 130 S. Ct. at 2778.

Here, Class Counsel appears to challenge each Thrivest Agreement as a whole—because either each agreement was "possibly" entered into under "less-than-transparent circumstances" or

13

the Settlement Agreement prohibits them.[9]   Importantly, Class Counsel presents no evidence attacking, specifically, the validity of the arbitration clauses within each Agreement. Without such evidence, the Supreme Court forbids this Court from entertaining any attack on the Agreements.

### 3.    The Agreements Preclude Adjudication of Rights In This Class Action Proceeding.

Finally, each Class Member customer specifically waived any right to have purported disputes relating to his Thrivest Agreement determined as part of any "proceeding" of "any nature involving any person or entity who is not a party to this agreement." *See* Agreement at 11, ¶ bb. Each Thrivest Agreement is a bilateral agreement between one Class Member and Thrivest. By seeking to challenge Thrivest's rights under each Thrivest Agreement in this class action, Class Counsel's Motion directly conflicts with the class action waiver clause in each Agreement.

Once again, the Supreme Court precludes this interference. Since its decision in *AT&T Mobility LLC v. Concepcion*, the Supreme Court has vigorously defended the validity of class action waivers in arbitration agreements. *See Concepcion*, *supra*, 131 S. Ct. at 1748 (invalidating a law conditioning enforcement of arbitration on the availability of class procedure because that law "interfere[d] with the fundamental attributes of arbitration"); *see also American Express Co. v. Italian Colors Restaurant, et al.*, 133 S. Ct. 2304, 2309-10 (2013) (finding antitrust laws do not invalidate class action waivers); *see also Tripp v. Renaissance Advantage Charter School*, No. 02-9366, 2003 WL 22519433, at *11 (E.D. Pa. Oct. 8, 2003). Accordingly, entertaining any attack on the Thrivest Agreements in this class action forum will violate the Supreme Court's mandate that the federal courts respect and adhere to class action waivers.

---

[9]      Thrivest strived for transparency and fairness in its dealings with its Class Members customers and categorically rejects the insinuation that it was involved in the accusations alluded to without detail or specifics by Class Counsel.

As such, the arbitration clauses in the Thrivest Agreements preclude this Court from the jurisdiction to provide the relief requested by Class Counsel.

**D.      This Court Lacks Jurisdiction over Thrivest Because There is No Case or Controversy; Any Substantive Ruling on Class Counsel's Motion Would Constitute an Impermissible Advisory Opinion.**

Under Article III of the United States Constitution, federal courts can only opine on active cases and controversies. *Birdman v. Office of the Governor*, 677 F.3d 167, 173 (3d Cir. 2012); *see also* U.S. CONST. Art. III, § 2. Federal courts enforce the case or controversy requirement through several justiciability doctrines including standing, ripeness, mootness, . . . and the *prohibition of advisory opinions. Comite de Apoyo A Los Trabajadores Agricolas v. Perez*, 46 F. Supp. 3d 550, 560 (E.D. Pa. 2014) (emphasis added).

The "irreducible constitutional minimum" of Article III standing is whether the claimant has suffered an "injury-in-fact." *Ibid.* To meet this standard, a claimant must show that he or she "suffered a concrete, particularized injury-in-fact, which must be actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Second, the claimant must show a causal connection between the injury and the alleged harm. *Ibid.* In other words, the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Ibid.* Third, it must be "likely," as opposed to merely "speculative," that the claimant's injury will be "redressed by a favorable decision." *Ibid.*

Here, Class Counsel does not have standing to seek its requested relief because there is no case or controversy that warrants resolution. Class Counsel fails to establish that any of Thrivest's Class Member customers suffered an injury-in-fact or indeed has any complaint whatsoever. Thrivest provided these Class Members with cash advances at a reasonable annualized rate, which is not indicative of the company's risk on these advances. If a Class Member does not receive his

projected award from the Claims Administrator or his medical diagnosis is downgraded in severity and, in turn, he receives a lesser award—Thrivest bears the risk. Likewise, Thrivest bears durational risk, which Class Counsel seeks to exacerbate by arbitrarily "freezing" accrual under its proposed interference with the terms of Thrivest's agreements.[10] Under these circumstances, it is not surprising that there is no "controversy" here. The Court should reject the invitation to render an impermissible advisory opinion. "The purpose of the standing doctrine is to ensure that courts do not render advisory opinions rather than resolve genuine controversies between adverse parties." *Lujan, supra*, 504 U.S. at 598. There is no genuine dispute here with respect to the terms of Thrivest's non-recourse advances.

### E.   Class Counsel Is Incorrect in Arguing Against the Assignability of Proceeds, and Therefore Is Not Entitled to the Injunctive Relief It Seeks.

If a Rule 23(d) order "looks like an injunction and acts like an injunction, it's an injunction[.]" *Cobell v. Kempthorne*, 455 F.3d 317, 322 (D.C. Cir. 2006). To qualify as an injunction, an order must be: (1) directed at a party; (2) enforceable by contempt; (3) designed to accord or protect; (4) present a serious, perhaps irreparable, consequence; and (5) be challengeable only by immediate appeal. *Ibid.*; 28 U.S.C. § 1292(a)(1).[11]

---

[10]    Class Counsel improperly assumes that Class Members' monetary awards can be bifurcated. Under the terms of the Agreement,

> [W]ithin three (3) business days after . . . collection and receipt, or the collection and receipt on [class member]'s behalf, of any Distribution, [class member] shall distribute, or cause to be distributed, all such collections and receipts to [Thrivest], prior to paying any expenses of [class member] or making any other distributions, until [Thrivest] has received the TSF Distribution in full.

*See* Agreement, ¶ 2(c), at 3. Therefore, irrespective of whether portions of Class Members' monetary awards are withheld, the Class Members are nevertheless contractually bound once they receive *any* payment. As such, Class Counsel's requested relief would only serve to punish the Class Members by inviting a breach of their obligations.

[11]    Here, Class Counsel's Rule 23(d) Motion seeks an injunction because it is directed at approximately 30 non-parties, including Thrivest, and is enforceable by contempt. *See* Memorandum of Law, at 8. Further, the purpose of Class Counsel's Motion is purportedly to "protect Class Members from potentially unscrupulous third parties who, once they obtain a portion of the Class Members' award, will be difficult to seek disgorgement[.]" *Id.* at 9. Yet, if this Court grants Class Counsel's requested relief, it would cause serious and irreparable injury to Thrivest and other

16

A preliminary injunction can be issued only if the movant demonstrates: (1) a reasonable probability of eventual success in the litigation and (2) he or she will be irreparably harmed absent relief. *Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008). While the burden rests upon the movant to make these two requisite showings, courts must also consider: (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989).[12] Here, these factors all weigh against a grant of the relief that Class Counsel seeks.

## 1.     Class Counsel is Wrong in Arguing that Settlement Proceeds Are Not Assignable.

Excluding the fact that binding Supreme Court precedent requires this Court to honor the arbitration clause and deny Class Counsel's Motion, the requested relief is equally deficient under New York law. The Settlement Agreement was entered into under New York law, which states, "only express limitations on assignability are enforceable." *See Pravin Banker Assocs., Ltd. V. Banco Popular del Peru*, 109 F.3d 850, 856 (2d Cir. 1997). "Where it is possible, courts are inclined to hold that rights under a contract are assignable to third parties." *Citibank, N.A. v. Tele/Resources, Inc.*, 724 F.2d 266, 268 (2d Cir. 1983). To this end, courts applying New York law as to contractual anti-assignment clauses, "[w]ith limited exception, contractual provisions prohibiting assignments are treated as personal covenants." *BSC Assocs., LLC v. Leidos, Inc.*, 91

---

third-party specialty finance companies. Further, Class Counsel's requested relief harms Class Members because it could expose them to legal expenses without their permission. Therefore, Class Counsel's Motion clearly seeks mandatory injunctive relief.

[12]     Moreover, where the relief requested in the preliminary injunction is mandatory and will alter the *status quo*, the movant seeking the injunction must meet a higher standard of showing irreparable harm in the absence of an injunction. *Bennington Foods, supra*, 528 F.3d at 179. If the movant fails to show that he or she will be irreparably harmed, an injunction will not be issued and the preliminary injunction analysis must end. *Ibid.*

F. Supp. 3d 319, 323 (2d Cir. 2015).  Assignments that violate a personal covenant prohibiting assignments give rises to a cause of action for damages against the assignor, but are otherwise enforceable.  *Citibank*, *supra*, 724 F.2d at 268.  In order for an anti-assignment clause to deprive an assignee of its rights under the contract, the clause "must specifically use language to the effect that the assignee receives no rights from an improper assignment or that such assignment is void." *BSC Assocs.*, *supra*, 91 F. Supp. 3d at 324.

Here, the Settlement Agreement's anti-assignment clause prohibits the assignment of Class Members' tort claims against the NFL, and not the assignment of monetary awards *after* issuance to Class Members' counsel.[13]  The Settlement Agreement contains no express language that states that an assignment of Class Members' settlement proceeds is improper or void.  By contrast, the Settlement Agreement does state that an "Assignment of Claims" is improper and void unless transferred to the NFL.  *See* ECF No. 6481-1 at Art. XXX, § 30.1.  This is consistent with a defendant's desire to interface with Class Members and the Claims Administrator, and not third parties, during the administration process.  Under no circumstances does the Settlement Agreement prohibit Class Members from contracting portions of their monetary awards to third parties *after* distributions are made.  This is evident by the more than 900 agreements that were entered into by Class Members and third party specialty finance companies.  If Class Counsel's requested relief is granted, it could force Class Members and their counsel to violate the terms of their contracts and subject them to liability.

---

[13]     It makes sense that a defendant would seek to prohibit Class Members' from assigning their claims to third parties because the defendant only wants to interface with its former players during the claim administration process. That said, Thrivest's agreement requires no interaction with the NFL and so there is no logic in prohibiting the assignment of proceeds—just like the NFL cannot tell Class Members what to buy at the store with the settlement proceeds.

Moreover, Class Counsel's Motion could subject Class Members to liability because under New York law "[a]ssignments that violate a personal covenant prohibiting assignments gives rises to a cause of action for damages against the assignor, but is otherwise enforceable." *See Citibank*, *supra*, 724 F.2d at 268. If there was a breach of the Settlement Agreement, it was the Class Members' breach, not Thrivest, who is not a party to the agreement. Yet, even though the assignments are enforceable under New York law, Class Counsel asks this Court to excuse Class Members' breach and afford them the opportunity to renegotiate the terms of their non-recourse agreements, despite having received the benefit of cash advances from Thrivest. Thus, Class Counsel requested relief must be denied.

### 2. Adequate Remedies Exist at Law to Preclude the Entry of Injunctive Relief; Class Counsel's Motion must be Denied.

The availability of money damages belies any claim of irreparable injury because an adequate remedy at law exists to compensate any perceived harm. *See Frank's GMC Truck Ctr., Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1989). Under the terms of Thrivest's Agreements, any aggrieved Class Member customer could request arbitration. In arbitration, Class Members would be afforded the opportunity to seek redress. Since money damages could adequately compensate any Class Member customer, this Court must deny Class Counsel's requested injunctive relief. *See In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1145 (3d Cir. 1982) (holding that the Third Circuit has "never upheld an injunction where the claim injury constituted a loss of money, a loss capable of recoupment in a proper action at law").

### 3. Class Counsel's Requested Relief Will Irreparably Harm—Not Help— Class Members and Future Class Action Plaintiffs; Class Counsel's Motion must be Denied.

If this Court orders the Claims Administrator to withhold selected portions of Class Members' monetary awards, it could negatively impact market liquidity for future post-settlement

19

victims to secure essential funds.[14] Banks and finance companies would likely hesitate to underwrite loans or make advances in fear of district courts rewriting their agreements and intervening in the disbursement of monetary awards. This uncertainty would likely cause rates to skyrocket and dissuade specialty finance companies from offering cash advances at reasonable rates or even operating in this space. Class Counsel is inviting litigation/arbitration between Thrivest and its Class Member customers, who have not complained about the agreements. If Class Member customers should choose to seek arbitration, that forum is available to them, and undercuts any argument that they will be irreparably harmed.

## IV.    CONCLUSION

Class Counsel's requested relief is unprecedented, far-reaching, and would impose a lasting negative impact on the Class Members, as well as future class action plaintiffs. Class Counsel is asking this Court to look past: (1) the plain language and case law limiting Rule 23(d)'s procedural power to representative parties and intervenors; (2) the Supreme Court's binding precedent that requires disputes arising under Thrivest's non-recourse agreements to be settled in arbitration; and (3) Article III's case or controversy requirement. If granted, Class Counsel's requested relief would open Pandora's Box by forcing third-party specialty finance companies and Class Members to rush to state courts/arbitral forums across the country to litigate the rights under the contracts. Lost in Class Counsel's Motion, however, is the undeniable fact that if this requested relief is

---

[14] Further delays in the disbursements of monetary awards will harm both Class Members and Thrivest because the non-recourse agreements are structured based on the risk of duration. Unlike non-recourse advances, a "standard loan contract" or recourse advance allows third parties to collect from the debtor and the debtor's assets in the event of default. Whereas, non-recourse advances limit a third party's ability to recover to the collateral pledged by the debtor in the agreement. Therefore, non-recourse assignments, offered at slightly higher rates, could be beneficial to the Class Members because their liability is *limited to their monetary awards*. If Class Counsel's Motion is granted, it could deprive future classes of the optionality to choose between recourse loans or non-recourse assignments. Moreover, if this Court orders the Claims Administrator to withhold portions of Class Members' monetary awards that have been contracted to Thrivest, it will be ordering Class Members' counsel to violate the terms of their executed attorney acknowledgement letters, which require counsel to first pay Thrivest when the awards are disbursed into their firms' bank accounts.

granted, the very parties that Class Counsel's is charged with protecting—the players—will be hurt. That is a result that neither the Class Members, nor Thrivest want. Class Counsel's Motion must be denied.

Respectfully submitted,

/s/ Peter C. Buckley
Peter C. Buckley, Esquire
Brian A. Berkley, Esquire
Mark J. Fanelli, Esquire
Attorney ID Nos. 93123, 200821, 321283
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, Pennsylvania 19103-3222
Tel: (215) 299-2854
Fax: (215) 299-2150
pbuckley@foxrothschild.com

*Attorneys for Thrivest Specialty Funding, LLC*

Date:   November 16, 2017

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: NATIONAL FOOTBALL LEAGUE
PLAYERS' CONCUSSION INJURY
LITIGATION

Kevin Turner and Shawn Wooden,
*on behalf of themselves and others
similarly situated*,

No. 2:12-md-02323-AB

      Plaintiffs,

MDL No. 2323

      v.

National Football League and
NFL Properties LLC, successor-in-interest to
NFL Properties, Inc.,

Hon. Anita B. Brody, U.S.D.J.

      Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I served a true and correct copy of the foregoing

Memorandum of Law of Objector Thrivest Specialty Funding, LLC in Opposition to Class

Counsel's Motion to Withhold Portions of Class Members' Monetary Awards, upon Co-Lead

Class Counsel, Christopher A. Seeger, Esq., via e-mail:[15]

Christopher A. Seeger, Esq.
Seeger Weiss, LLP
77 Water Street
New York, New York 10005
cseeger@seegerweiss.com

---

[15]     Thrivest is unable to file this Memorandum electronically because it is not recognized as an Objector/Party on the Court's ECF system. We will correct this problem with the Clerk of the Court tomorrow, November 17, 2017, and then file our submission electronically.

I further hereby certify that on this date, I served a true and correct copy of the foregoing

on the following interested parties via e-mail:

Raul J. Sloezen, Esq.
Law Offices of Raul J. Sloezen, Esq.
130 Sycamore Road
Clifton, New Jersey 07012
rjsloesen@outlook.com
*Counsel for Atlas entities*

James Kim
Ballard Spahr LLP
919 Third Avenue, 37th Floor
New York, NY 10022
kimj@ballardspahr.com
*Counsel of Record in CFPB v. Top Notch II,
LLC, e.t. al. (S.D.N.Y. 1:17-cv-07114-GHW)*

Pravati Legal Funding/Pravati Capital
4400 N. Scottsdale Rd
#9277
Scottsdale, AZ 85251
William P. Bray
Bray & Long, PLLC
2820 Selwyn Avenue, Suite 400
Charlotte, North Carolina 28209
wbray@braylong.com
*Counsel for Global Financial Credit, LLC*

Top Notch Funding/Top Notch Lawsuit
Loans
c/o The Company Corporation
251 Little Falls Drive
Wilmington, DE 19808

Cash4Cases, Inc.
228 Park Avenue South
New York, NY 10003
Martin L. Black
4909 N. Monroe Street
Tallahassee, FL 32303
mbmblack8@gmail.com
*Counsel for Cambridge entities*

John "Jack" M. Robb, III
LeClairRyan
919 East Main Street
24th Floor
Richmond, VA 23219
john.robb@leclairryan.com
*Counsel for HMR Funding entities*

Mark S. Melodia
Nipun J. Patel
Reed Smith LLP
Three Logan Square
Suite 3100
1717 Arch Street
Philadelphia, PA 19103
mmelodia@reedsmith.com
npatel@reedsmith.com
*Counsel for Peachtree entities*

/c/ Peter C. Buckley
Peter C. Buckley, Esquire

Dated: November 16, 2017

# EXHIBIT "A"

*Exhibit "A" has been filed under Seal in Accordance with Local Rule 5.1.5*