IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : : : : | No. 2:12-md-02323-AB MDL No. 2323 Hon. Anita B. Brody |
| THIS DOCUMENT RELATES TO: ALL ACTIONS; 2:17-cv-02736-AB | : : : : : | |
| Adrian L. Robinson Sr. and Terry J. Robinson as Personal Representatives and Co-Administrators of the Estate of Adrian Robinson, Jr. DECEASED et al | : : : : : | |
| **Plaintiffs,** | : : | |
| v. NATIONAL FOOTBALL LEAGUE; THE NATIONAL FOOTBALL LEAGUE FOUNDATION (individually and as successor in interest to NFL CHARITIES); NFL PROPERTIES, LLC (individually and as successor in interest to NFL PROPERTIES, INC.); RIDDELL, INC., RIDDELL SPORTS GROUP, INC.; ALL AMERICAN SPORTS CORP f/k/a Easton-Bell Sports, Inc.; BRG SPORTS, LLC f/k/a Easton Bell Sports, LLC; BRG SPORTS HOLDINGS CORP. f/k/a RBG Holdings Corp., | : : : : : : : : : : : : : : : | |
| **Defendants.** | : | |

## REPLY IN FURTHER SUPPORT OF PLAINTFFS' MOTION TO REMAND[1]

---

[1] On October 12, 2017, the Court denied Plaintiffs' incorporated motion to strike the related-case designation (No. 17-cv-2736, D.E. 8.) Although that Order found Plaintiffs' action "part of the MDL", its issuance post-dated an Order regarding Short-Form Complaints ("SFCs") to be filed in opt-out cases and listing *Robinson* as an "opt-out" case (which everyone agrees, this is not.) *See* D.E. 4 (Order requiring that opt-outs file SFCs by Jul. 27, 2017). In light of (a) this issue's later resolution, (b) this action's not having commenced by the date of the Court's (original) April Order governing opt-out motion practice (No. 12-md-2323, D.E. 7477), and (c) unsuccessful attempts by the parties to resolve this and related procedural/logistical oddities, Plaintiffs now attach two proposed SFCs. *See* Exs. "A" (SFC: NFL, NFLF, and NFLP) and "B" (Riddell.) Plaintiffs intend these SFCs to remain inoperative until and unless the Court finds jurisdiction and denies remand of the operative pleading (D.E. 1-A.) In that event, Plaintiffs also respectfully request a brief Rule 16 conference to resolve Rule 12 motion-practice scheduling for Defendant NFLF (which has not moved to dismiss the Robinson action), and to discuss a schedule for Plaintiffs' forthcoming motion to remand, based on the subsequently operative SAMAC/SFCs.

Plaintiffs respectfully Reply in Support of their Motion to Remand (D.E. 3) herein:

## PRELIMINARY STATEMENT

Plaintiffs' Complaint does not concern the contractual bargain of decedent's labor-union on the one hand, and Defendant NFL, its teams, and its management council on the other. Defendants fail to demonstrate otherwise, (1) citing prior preemption of fundamentally different tort-duties from those alleged here[2]; and (2) misrepresenting Plaintiffs' allegations.  The claims here allege misconduct directed to the general public;[3] the CBA's reach does not extend to them:

---

CIVIL CONSPIRACY: Defendants agreed and acted to intentionally conceal material information regarding football exposure from the general public.  Decedent incurred a detriment: CTE.  Armed with the knowledge concealed from him (e.g., that two decades of football exposures starting at age five might kill or seriously injure him), he would have acted differently.

INTENTIONAL CONCEALMENT: Defendants intentionally concealed material information from the general public regarding football exposure.  Decedent incurred a detriment: CTE. Armed with the knowledge concealed (e.g., that two decades of football exposures starting at age five might kill or seriously injure him), he would have acted differently.

NEGLIGENT PERFORMANCE OF ASSUMED-UNDERTAKING: Defendants' MTBI Committee—between decedent's fifth birthday and his senior year of college—undertook to publish on football-exposures in non-NFL-football players; they negligently told the general public (including decedent's family) that *children could safely receive multiple MTBIs*.

NEGLIGENT MARKETING: During decedent's childhood, Defendant Riddell marketed helmets and NFL marketed football-play *to children and parents*—to sell helmets and to create adult fans, respectively —knowing the game and helmets (respectively) were potentially deadly.

NEGLIGENT LICENSING: From decedent's childhood, through his penultimate football season, Defendant NFLP licensed or agreed to license Riddell helmets as the "official helmet of the NFL" knowing no helmet could mitigate against CTE.  Decedent developed CTE.

NEGLIGENT HIRING / RETENTION / SUPERVISION: Pursuant to the Riddell-NFLP licensing agreement, a unilateral business-deal between these companies in no way implicating the league's relationship to the NFLPA, Defendants' retained, hired, and supervised MTBI Committee co-chair and career-defense-only-expert-witness David Viano, whom they presented as a professor (when he was not); who opined on football exposure (extending his opinions to children's football) during decedent's childhood; and who published and presented industry-supported "research" as good-faith science.  Decedent developed CTE.

---

[2] Defendants (Opp., p. 24) cite to *Duerson*, *Maxwell*, and cherry-picked portions of *Stringer*, all of which concern alleged duties owed to NFL players.  *Ballard v. NFLPA*, 123 F.Supp. 3d 1161,1169-71 (E.D. Mo. Aug. 18, 2015), also relied upon, was resolved on grounds specific to the union.  There, Judge Perry, who did not preempt claims against the *Green v. Arizona Cardinals*, preempted the *Ballard* claims, on the ground that "*only* through the CBA … [does] such a status can exist." (Emphasis added). No common-law duty existed nor was one allegedly undertaken.

[3]  D.E. 1-A (*Compl.*), ¶¶ 380 and 390 (conspiracy and intentional concealment); ¶¶ 396, 406, 414, 425 (owing and undertaking duties to the general public and those voluntarily assumed).

> FAILURE TO WARN: Riddell's warnings, omitting CTE.  Decedent developed CTE.

## I.   DEFENDANTS HAVE NOT ESTABLISHED SUBJECT-MATTER JURISDICTION BY IDENTIFYING CLAIMS DOUBTLESSLY DEPENDENT UPON SPECIFIC CBA LANGUAGE.

Defendants' scattershot flagging of CBA topics purported to overlap with the facts in Plaintiffs' Complaint does not satisfy their weighty jurisdictional burden.  Certainly, as Circuit law requires, they fail to show doubtless proof any state claim's resolution depends on a specific CBA clause.[4]   Otherwise, "… remand is mandatory,"[5] even though Defendants may raise an affirmative LMRA defense in state court.  What they cannot do, however, is invoke the Court's subject-matter jurisdiction by abstractly tossing out contractual (CBA) terms they—at best—claim to impliedly *shape* state duties of care for each of the *four*[6] Defendants.  As other courts have articulated:

> even though the Defendants may have available a [] "preemption defense" to plaintiffs' allegations on remand to state court, "[s]uch preemption … is not the type of complete preemption that would provide [a defendant] with a basis for federal question jurisdiction.[7]

Indeed, a "Plaintiff is entitled to limit the scope of its own Complaint."[8]  Defendants ignore this reality.   While this inquiry may venture beyond a Complaint's four corners to the extent Defendants specifically identify contractual (and therefore jurisdictional) obligations underpinning "the gravamen of the action,"[9] they cannot self-servingly re-write the Complaint to focus on

---

[4] *Kline v. Security Guards, Inc.*, 386 F.3d 246, 256 (3rd Cir. 2004) (301-preemption requires dependence on a specific CBA provision's interpretation); *see also Stellar v. Allied Signal, Inc.*, 98 F.Supp. 3d 790, 802 (E.D. Pa. 2015) (claim only preempted where "clauses in the CBA [must be interpreted] required to establish the scope of the duty."); *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir.1992) ("… all doubts should be resolved in favor of remand."))
[5] *Allen v. GlaxoSmithKline PLC*, No. 07-cv-5045, 2008 WL 2247067 at *2 (E.D.Pa. May, 30, 2008).
[6] It is important to remember that NFLP and NFLF—notwithstanding the common three letters in these acronyms—are equivalent to Riddell in the context of LMRA jurisdictional preemption.  In other words, they are strangers to the collective bargaining process, without obligations or benefits.
[7] *Gulick v. Ferreira Const. Co., Inc.*, No. CIV A 06-4069 MLC, 2007 WL 602440, at *2 (D.N.J. Feb. 22, 2007) (citing *Kline*, at 262-63.
[8] *M3 Midstream LLC v. South Jersey Port Corp.*, 1 F.Supp.3d 289, 296-99 (D.N.J. 2014) (distinguishing "complete preemption" from "substantive preemption" and observing the foregoing.)  Furthermore, as alleged in the Complaint and purportedly responded to by Defendants (*Opp.*, 44-45), an estoppel prevents this defense altogether.
[9] (D.E. 6 (Defs' Opp.), p. 16; D.E. 3 (Plfs' Mot. Remand), p.14 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 397 (1987)).

matters Plaintiffs' "could have plead but did not." Nor can they re-frame a "look at the CBA in order to determine that it is silent" as "hav[ing] 'interpreted'" it. *Kline*, at 256.

A.    DECEDENT'S NFL PLAY IS LEGALLY INCONSEQUENTIAL TO HIS CLAIMS.

Nearly five years ago, this Court asked counsel, in colloquy, whether "high school student[s] could sue the NFL?"[10]  The answer is yes; and effectively, one has. This Complaint alleges significant specific activity from the 1960s through the present day, and particularly activities occurring between 1995 and 2011. During this (latter) time, decedent was between five and 22 years old; he had never played NFL football; it is his family alleging that Defendants, including Defendant NFL, had been playing all of them.

These Defendants intended and undertook to influence this (then) child's decision-making on starting to play football and on continuing to play football. Quite specifically, these Defendants sponsored children's football, used youth-marketing recognized by the New York Times, and engage their MTBI Committee to extend its sham-science findings to children. While decedent eventually played NFL football, this mere factual overlap does not constitute an interpretive dispute, *e.g. Livadas v. Bradshaw*, 512 U.S. 107, 124-26 (1994); it does not alter the duties Plaintiffs' Complaint alleges to have been breached. A non-NFL football player could have asserted these same claims; as could decedent, even if he had never played NFL football (and therefore been a non-party beneficiary to the CBA.) Plaintiffs' Complaint simply never treads on benefits gained or received through decedent's later status as a CBA-bound NFL-player; it exemplifies the *opposite* situation from the one in *Duerson* that not-incorrectly concerned Judge Holderman.[11]

---

[10] On April 9, 2013, the Court asked this question—exactly the question here—to both Plaintiffs' and counsel Defense Counsel. Mr. Clement, on behalf of the NFL, replied that he did not believe the CBAs would "be relevant."
[11] No. 12-c-2513, 2012 WL 1658353 at *1-2 (N.D. Ill. May 11, 2012).

That polar-opposite *Duerson* Complaint affirmatively alleged that Defendant NFL "failed to educate players about the risks of concussions and the dangers of continuing to play after suffering head trauma, failing to ensure rapid diagnosis and treatment of David Duerson's condition, and fail[ed] to implement policies to prevent David Duerson from returning to play with his injuries," only attempting to remedy this by supposedly confining its allegations to those periods where "CBAs were not in effect." *Id.* Certainly, this distinction requires some legal gymnastics; because these didn't pass the sniff-test, it was preempted. The point here is different.

Here, the Robinson Complaint never takes issue with on-field injury management or a generalized failure to NFL player-safety. Acute injury is irrelevant. As is decedent's status as an NFL player subject to various CBA-related player-safety provisions. As is his exposure to NFL (or CBA-governed) traumas versus "non-NFL" exposures and traumas. This Court need not construe a CBA to understand that during a portion of decedent's career, he was exposed while wearing the NFL shield; identically to those times he was exposed and did not. The Robinson Complaint very simply alleges football's dose-response relationship with brain damage; Defendants allegedly knew and intentionally hid this from parents and children; and that Defendants undertook other conduct they specifically directed at the general public related to this same problematic link. The Complaint alleges this conduct, unchanged throughout decedent's lifetime of football exposures, to have led his brain damage.[12]

It is very opposite thing—Defendants' *unchanged* legal relationship to decedent here—that distinguishes *Duerson* and *Maxwell* from this Complaint. Those Complaints directly invoked and depended upon the fundamentally different relationship between Defendant NFL and NFL

---

[12] D.E. 1-A, ¶ ¶ 12-17 (briefly summarizing the conduct directed at the "world-wide football community" in a number of ways expressly alleged to have taken place outside of 29 U.S.C. § 185(a)

football-players.  Here, Defendants are continually held liable for their two decades of misdeeds. This renders acute recognition, care, treatment, and player-safety rules completely irrelevant.

Had Robinson Jr. died with CTE after high school, the Joe-Camel-like youth-marketing claim would remain actionable; as would Defendants' relationship to Plaintiffs through their youth-sponsorship of football amidst knowledge that football-exposures might lead to latent disease; as would the Defendants' sponsorship of pseudo-science, not circulated to a few insider NFL team docs, but instead, disseminated to the world, and expressly imputing conclusions from flawed data to children; as would the bootstrapping of the NFL and Riddell brands for both parties' benefit; and finally, as would the concerted-conduct and intentional-concealment claims.  Here, Plaintiffs sue "Big Football" because its handy-work proximately caused disease; a statute enacted for uniform interpretation of an irrelevant contract is beside the point.

### B. DEFENDANTS CANNOT COLORABLY ARGUE THAT THE COURT HAS ORIGINAL JURISDICTION OVER PLAINTIFFS' INTENTIONAL TORTS, NOR OVER NFLP, NFLF, AND RIDDELL.

Defendants have not nor can they advance a colorable jurisdictional argument over Plaintiffs' claims for conspiracy and intentional-concealment, nor have they done so for any claims asserted as to Defendants NFLP, NFLF, nor Riddell.  *See*, D.E. 3, pp. 20-24.  These "fraud" claims, are premised on "intentional concealment of material information regardless of any duty to disclose."  *See* Mot., 21-22.  Defendants improperly try re-styling these claims as other things— which *Caterpillar* prohibits—so that they can focus on a supposed-but-non-existent duty to disclose.  The law and Plaintiffs' Complaint quite clearly permit and advance, respectively, an active-concealment claim.

### 1. *The concealment claims do not require CBA-consultation to resolve the factual question "justifiable" or "reasonable" reliance; to the extent this legal-ism applies to concealment-fraud.*

All but conceding the above, Defendants further claim to speak for themselves *and* Plaintiffs in stating that Plaintiffs must establish "justifiable reliance," which is therefore still substantially dependent on the CBA and therefore preempted. *Defs' Opp.*, pp. 37-38. Again, this analysis is off the mark for several reasons.

First, as recognized in *Trans Penn Wax Corp. v. McCandless*:

> t]his is not a situation, as in *Allis-Chalmers,* where the alleged tort is a violation of duties assumed in the collective bargaining agreement. An examination of the employer's behavior, motivation, and statements does not substantially depend upon the terms of the collective bargaining agreement. The essence of the employees' case is proof of justifiable reliance on the separate guarantees, not on the collective bargaining agreements. As in *Lingle*, '[e]ach of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer,' and may be appropriately resolved under state law.

*Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 232 (3d Cir. 1995) (internal citations omitted); *accord Oliver*, at 7, n.3 ("Whether the NFL had a duty to warn its players of faulty equipment is a separate question and apart from the factual question of whether the NFL worked with [Riddell] to fabricate scientific evidence. The only way CBA's would be relevant in this sense would be to determine the NFL's motive for engaging in the conspiracy … which would not require an interpretation. The two issues therefore are not intertwined.") In other words, and to the extent relevant, detrimental reliance merely evaluates the materiality of the information in light of decedent's actions.

Pennsylvania's *active-concealment* law supports this approach. It "is grounded in Section 551 of the Restatement (Second) of Torts … which defines the limited circumstances under which the duty to speak arises between parties to a particular transaction." *See Gaines v. Krawczyk*, 354 F.Supp. 2d 573, 585-86 (W.D.Pa. 2004). In other words, Defendants' duty to disclose and Plaintiffs' detrimental reliance are specific to the concealment—if intentional—and not to any overarching contractual obligation linking Defendants and the decedent to make disclosures. Here,

the duty to disclose attaches based on Defendants' intentionally concealing football's deadly truth. To the point, the issue is whether, but for the concealed information, decedent would have CTE.

### 2. *Nor Can Defendants NFLP, NFLF, and Riddell take shelter from the CBA.*

Nor can total strangers to the CBA—NFLP, NFLF, and Riddell—invoke federal subject-matter jurisdiction based on the CBA, without establishing how these entirely separate businesses, whose duties are not discussed by the CBA, have been sued in an inherently-federal claim. Consider: could Verizon invoke the CBA in a data-breach claim by a player on the basis that they provided cell phones for the NFL?  Defendants NFLP and NFLF (*opp.*, 32-33; separately Riddell, *see* D.E. 7) rely on the mere fact that they are sued alongside Defendant NFL to invoke subject matter jurisdiction, providing no authority for their bald proposition that these claims would still "substantially depend" (*Opp.*, pp. 32-34) upon the CBA; how?

To the extent this argument is sufficiently jurisdictional, and not that of an affirmative defense, one would presumably still need to demonstrate the underlying preemption of at least one defendant.  Defendant NFL never demonstrates as much.  And Defendant NFLP, sued with NFLF and Riddell—have simply no basis under which to do so.  *See Oliver v. Riddell, Inc.*, No. 4760, 2016 WL 7336412 at *9 (N.D. Ill. Jul. 19, 2016) (citing *Stringer v. Nat'l Football League*, 474 F.Supp. 2d 894, 914-15 (S.D. Ohio 2007) in finding that "the topical relationship between Plaintiff's remaining claims and the CBAs does not support a finding of preemption.")

### C.   NOR CAN TORT LIABILITY BE DELEGATED UNDER THE CBA.

Related, and also applicable to the negligence claims of all Defendants is the concept that third-party contracts cannot abrogate a Defendant's separate and non-delegable liability to an injured party.  Defendants (*Opp.*, p.42) purport to be confused by Plaintiffs' arguments concerning non-delegable tort duty (e.g. irrespective of their CBA) and "perplexing[ citation to *Green v.*

*Arizona Cardinals Football Club*, 21 F.Supp. 3d 1020, 1030 (E.D. Mo. 2014)]", but this is hardly an exotic concept.

To the extent that the Court is persuaded by Defendants that Plaintiffs claims are *actually* ones for breach of a safe working-environment, the *Green* court found this duty to be non-delegable in nature.  The NFL and teams could (in either direction) purport to contract performance of certain player-safety and/or workplace-safety duties through the CBA.   But underlying responsibility would not change.   "In an action for injury alleged to result from a neglect of duty by the defendant, it is no defense that a similar duty rested upon another person." 57A Am. Jur. 2d Negligence § 80.  As then-Judge Breyer explained, a party who fails to take reasonable precautions cannot escape liability "simply because two (or three, or thirty) colleagues also failed to take proper care." *Dougherty v. Hooker Chem. Corp.*, 540 F.2d 174, 178 (3d Cir. 1976) (duty to warn requires "reasonable assurance that the information will reach those whose safety depends" on it, regardless of whether "third person" also has similar duty) (internal citations omitted).   Therefore, it is not sufficient that the NFL's CBA purports to delegate medical-care duties (for example) to clubs.  If established, this might permit Defendant NFL to seek indemnity from its clubs or their doctors, or to blame their comparative fault; it does not create tort immunity.

### D.   THE COURT CANNOT RELY ON THE LATER-ADDED EXTRINSIC EVIDENCE.

Defendants never adduce even a "need to glance at" the CBA, because they did not include it within the record upon removal, nor have they linked it to Plaintiffs' claims in any direct fashion. *Oliver v. Riddell, Inc.*, No. 16-cv-4760, 2016 WL 7336412 at *7, n.4 (N.D. Ill. Jul. 19, 2016.)  The Court can review extrinsic matters to the Complaint to the extent these matters confer jurisdiction. But the later-included CBA and the workers' compensation petition do nothing of the sort.

### 1.   DEFENDANTS CHOSE NOT TO INCLUDE THEIR CBA; THIS SUBSTANTIVELY PRECLUDES JURISDICTION.

Defendants made the strategic choice against including their CBA within the removal record.  While Plaintiffs agree with Defendants (*Opp*., p. 6, n.1-2) that Courts permit post-removal affidavits and even that they allow removing parties time to correct for removal-notice defects, Plaintiffs do not argue Defendants' procedural defect; Defendants have *substantively* failed. Without recapitulating Defendants' burden here (*see Plfs' Mot*., pp. 13-17), they needed to provide the Court with facts existing *on removal* that justify federal jurisdiction.  What grounds have Defendants set forth?  All they provided was attorney-argument.

### 2.    RELIANCE ON THE WORK-COMP PLEADING ALSO INVITES ERROR.

This shell-game approach to preemption is even more egregiously exemplified through their inclusion of a workers' compensation petition against the (non-party) Pittsburgh Steelers. The document is alien and poisonous to the Court's analysis.  Defendants (*Opp*., p. 6) attempt to justify this documents' inclusion through general propositions of judicial notice, consideration of affidavits on remand, and venturing beyond the pleadings on remand.  Plaintiffs agree that case law generally supports each of these things.  None of those things, however, apply with respect to this document, to the extent the affiant can properly verify the authenticity.  It is not even collateral; it is simply irrelevant to the jurisdiction (or lack thereof) of separate parties in *this* Court.

This Court's task is to evaluate whether the Complaint's essence fairly depends upon CBA terms.  Pointing to the workers' compensation pleading asserted against separate parties, in no way can or does inform *these* claims.  Defendants purportedly use this administrative pleading to contrast the plausibility of the Complaint's allegations—which must be accepted as true and as

presented, here, anyway[13]—with supposedly inconsistent allegations.  The allegations are not inconsistent; the legal consequences are of course, completely different.

The workers' compensation claim *does* involve a disease (CTE) properly characterized as occupational, for the purposes of that case.  But Defendants correctly note the "stark contrast" to this Complaint's allegations (e.g., two decades of football-exposures; youth marketing; research-fraud, etc.)  (*Opp.*, pp. 34-35.)  The two separate cases seek to impose factually overlapping material (notably decedent's death with CTE), but each seeks to impose legally separate and unrelated consequences in light of these facts.  *C.f. Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 408 (1988) (plaintiff could proceed in tort even after pursuing a factually-overlapping CBA grievance to exhaustion).  There is nothing inconsistent here.

 The civil pleading alleges facts supporting a relationship created by conduct and undertakings of the Defendants, and beginning when the decedent was just 5 years old, in 1994.  Separately, and based on differing procedures and law, in the workers' compensation petition, the Robinsons allege he suffered injury while employed, and properly within the scope of an employer-employee relationship.  All of the above caused CTE.  Why can't both be completely true?  Indeed, the civil case also acknowledges the *fact* of this relationship (*Plfs' Mot.*, Sec. I. ("The Pertinent Facts Alleged In The Complaint", p. 8) right away; but nothing displays how this pleading shapes or defines the separately alleged tort-relationships to other defendants.

Defendants (*Opp*. 36) focus on the overlapping facts in these two pleadings and cite *Duerson*'s language that "it would be exceedingly implausible" to limit Plaintiffs' claims to Robinson's pre-NFL career.  That is likely true.  But that is absolutely *not* what the Plaintiffs are doing.  *Duerson* concerned claims where the Plaintiffs creatively (if incorrectly) attempted to parse

---

[13] D.E. 3, at I, I(A), pp. 13-15 (*citing Caterpillar*; *Bar J Sand & Gravel, Inc.*).

out the NFL's duty of care based upon patchwork segments of NFL-football-play.  Plaintiffs here do no such thing at all.  In fact, they do the opposite: They contend that these Defendants' duties (beginning c. 1995) continued to run—unchanged, indeed uneffected—from the moment that they attached; for the entirety of the decedent's football lifetime.

## II.   SUPPLEMENTAL JURISDICTION DOES NOT PERMIT REMOVAL, NOR DOES IT INDICATE FEDERAL JURISDICTION, ABSENT OTHER JURISDICTION.

"As we held in *Chase v. Auerbach,* No. 94–5892, 1994 WL 590588 (E.D. Pa. Oct. 26, 1994), the supplemental jurisdiction statute does not allow a party to remove an otherwise unremovable action to federal court for consolidation with a related federal action. … On its face the statute distinguishes between actions and claims. Section 1367 allows plaintiffs to bring **federal claims** in federal court even though combined with state-law claims that would not otherwise be within a federal court's jurisdiction.  **The statute is not, however, an independent source of removal jurisdiction**.  To remove the Petition from state court to federal court, [Defendant] must first find a federal claim in the Petition itself (which we have concluded is not present). An already-existing federal action cannot provide the mechanism for removal of a non-removable state-court action." *In re Estate of Tabas*, 879 F. Supp. 464, 467 (E.D. Pa. 1995).  Thus, unless the Court has been persuaded that it has jurisdiction under the CBA, it must remand. Further, *e.g. Jurevicius v. Cleveland Browns Football Co., LLC*, the best approach would be to dismiss those claims over which the Court believes federal jurisdiction to attach—if any—and remand the remainder.  No. 09-cv-1803, 2010 WL 8461220 at *12-14 (N.D. Ohio Mar. 31, 2010).

## CONCLUSION

Defendants (D.E. 6, D.E. 7) have raised nothing to support the Court's jurisdiction.  For the reasons set forth in Plaintiffs' Motion to Remand (D.E. 3), and supported here, Plaintiffs ask that the Court enter an Order GRANTING their Motion.

Respectfully submitted this 24th day of November, 2017,

/s/ Bradford R. Sohn, Esq.
 Bradford R. Sohn, Esquire
 *Pro Hac Vice*
 THE BRAD SOHN LAW FIRM, PLLC
 2600 S. Douglas Road, Suite 1007
 Coral Gables, Florida 33134
 (786) 708.9750
 Brad@Sohn.com
 *Lead Plaintiffs' Counsel*

 Benjamin Andreozzi, Esquire
 PA ID No. 89271
 ANDREOZZI & ASSOCIATES, PC
 111 N. Front Street
 Harrisburg, Pennsylvania 17101
 (717) 525-9124
 ben@victimscivilattorneys.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the

CM/ECF system which will provide electronic notice to all counsel of record.

/s/ Bradford R. Sohn

Bradford R. Sohn, Esquire
*Counsel for Plaintiffs*

# Exhibit "A"

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| IN RE NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | **No. 2:12-md-02323-AB** **MDL No. 2323** **Hon. Anita B. Brody** |
| THIS DOCUMENT RELATES TO: **2:12-md-02323-AB (as applicable)** **17-cv-02736-AB (*Robinson v. NFL*)** | **JURY TRIAL DEMANDED** |

## [PROPOSED] SHORT-FORM COMPLAINT AGAINST NFL, NFLP AND NFLF

1.    The Plaintiffs, Terri L. Robinson Executrix of the Estate of Adrian Robinson, Jr., DECEASED, Adrian Robinson, Sr. and Terri L. Robinson and Hawi Conteh as Co-Guardians of the Estate of Avery Marie Robinson, a minor child, and Adrian Robinson, Sr., Terri L. Robinson Hawi Conteh, and as survivors and beneficiaries, in all respective capacities (as Pennsylvania Wrongful Death/Survival Act Co-Executors, as Guardians of decedent's minor child, as wrongful death and survival beneficiaries, and where appropriate, on their own behalf), sue Defendants NATIONAL FOOTBALL LEAGUE, THE NATIONAL FOOTBALL LEAGUE FOUNDATION, individually and as successor in interest to NFL CHARITIES ("NFL C"), NFL PROPERTIES LLC, individually and as successor in interest to NFL PROPERTIES, INC. ("NFL P"), and bring this action as a related action in the matter entitled IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION, MDL No. 2323.

2.    Plaintiffs file this Short Form Complaint against Defendants NFL, NFLP, and NFLF, as required by this Court's Order of October 12, 2017.

3.      Plaintiffs are not settlement-class members.  Nor is the decedent, who played NFL football after July 7, 2014.

4.      Plaintiffs incorporates by reference the Second Amended Master Administrative Long-Form Complaint (D.E. 8026) **with the exception of the following allegations**: ¶¶ 9, 15, n.2 (footnote deleted only), 17 (deleting from this allegation "because this is a 'Mass Action' and the amount in controversy exceeds $75,000, exclusive of interest and costs.  In addition, this Court has"), 25, 48, 50 (deleting the words "overwhelmingly", "professional", and "games" from the first sentence; and deleting the phrase "mild traumatic brain injuries ('MTBI'), which have" from the second sentence), 51-54, 56 (deleting from the allegation "went a step further. The") 60, 61 (deleting "while in the NFL"), 63, 64-83, 93-100, 102 (deleting "during NFL games and practices"; "despite their historic and proactive role as the guardian of player safety."; and "during NFL games and practices."), 184 (deleting both phrases referencing "NFL players and"), 185, 389(a). **As to these allegations, Plaintiffs adamantly disclaims and/or modifies these in the stated fashion according to each parenthetical, respectively**.  At bottom, Plaintiffs sue Defendants only because they owed duties of care as a member of the general public, and *not ever* alleging that any contractual relationship he had originated any duties of care owed to him by the NFL or—to the extent even possible—by NFLP or NFLF.

5.      Plaintiffs reside in Pennsylvania, and decedent's death occurred in Philadelphia, Pennsylvania.

6.      After death, neuropathologists at Boston University determined that the decedent had CTE.

7.      Plaintiffs therefore seek all available damages under the law, including but not limited to economic damages, non-economic damages, and punitive damages.

8.      Had decedent understood that repetitive subclinical MTBI and/or repetitive clinical MTBI caused chronic brain damage and appreciated the meaning of this, decedent would have made materially different choices with this information and with respect to his football play including but not limited to the fact that had he known this information prior to playing football altogether, he may have opted against playing football.

9.      The original Complaint in this matter was filed in the Court of Common Pleas, Philadelphia, Pennsylvania.  If this case is remanded, Plaintiffs believe they would seek remand to this Court.

10.      Plaintiffs claim all available damages on his own behalf and on behalf of his dependent minor children:

⊠      Injury to Himself

⊠      Injury to the Person Represented

⊠      Wrongful Death

⊠      Survivorship Action

⊠      Economic Loss

⊠      Loss of Services

⊠      Loss of Parental Consortium (as applicable)

11.      N/A

12.      Plaintiffs object to federal jurisdiction.

13.      Plaintiff brings this claim against the following Defendants [check all that apply]:

⊠      National Football League

⊠      NFL Properties, LLC (individually, and as successor in interest to NFL Properties, Inc.)

☒    NFL Foundation (individually, and as successor in interest to NFL Charities)

14.    Decedent Adrian Robinson, Jr. played in the ☒  National Football League ("NFL"), for the Pittsburgh Steelers, Philadelphia Eagles, Denver Broncos, San Diego Chargers, Washington Redskins, and Tampa Bay Buccaneers between July of 2012 and September of 2014.

15.    Following the 2014-15 NFL league year, decedent Adrian Robinson signed a contract to play CFL football.  He was under contract to do so at the time of his death, May of 2015.

## CAUSES OF ACTION

16.    Plaintiffs herein adopts by reference the following Counts of the Master Administrative Long-Form Complaint, along with the factual allegations incorporated by reference in those Counts [check all that apply]:

☐    Count I (Declaratory Relief (Against Defendant NFL))

☒    Count II (Negligence (Against Defendant NFL))

☒    Count III (Negligent Marketing (Against all Defendants))

☒    Count IV (Negligence (Against Defendant NFL P)

☒    Count V (Negligent Misrepresentation (Against Defendant NFL)

☒    Count VI (Negligent Hiring (Against Defendant NFL))

☒    Count VII (Negligent Retention/Supervision (Against Defendant NFL))

☒    Count VIII (Fraud (Against all Defendants))

☒    Count IX (Civil Conspiracy  (Against all Defendants))

☒    Count X (Fraudulent Concealment (Against all Defendants))

☒    Count XI (Wrongful Death (Against all Defendants))

☒      Count XII (Survival Action (Against all Defendants))

☒      Count XIII (Loss of Consortium (Against all Defendants))

☒      Count XIV (Punitive Damages under All Claims (Against all Defendants))

☒      Count XV (Declaratory Relief: Punitive Damages (Against all Defendants))

17.    Plaintiff asserts the following additional causes of action [write in or attach]:

- Plaintiffs additionally allege that none of them are or ever have been beneficiaries or signatories to any collective bargaining agreement.

- Plaintiffs additionally seek the loss of parental support, companionship, comfort, society and protection awardable under Pennslyvania law for survivorship and wrongful death claims, and—to the extent separate—for independent consortium damages available to the minor child and family.

- Regarding <u>Count IV</u>, pursuant to *Stringer v. NFL*, 474 F.Supp. 2d 894, 912 (N.D. Ohio 2007) (finding identical claim outside the scope of the CBA), Plaintiffs include Defendant NFL.

- <u>Within Counts VI and VII</u> (¶¶ 372-387), Plaintiffs allege that "at no time did any of the MTBI Committee members nor Drs. Pellman or Viano in particular render clinical medical care to Mr. Johnson."

- Either in addition to or in lieu of Count X (Fraudulent Concealment), Plaintiffs plead a count for *intentional concealment*, which alleges that Defendants NFL, NFLP, and NFLF actively and intentionally concealed the material information alleged within the Complaint beginning with their knowledge of Dr. S.E. Reid's studies in 1962. This claim requires no "duty to speak" because "Pennsylvania law

recognizes a difference between active concealment and mere silence in the context of common law fraud." *Gnagey Gas & Oil Co. v. Pa. Underground Storage Tank Indemnification Fund*, 82 A.3d 485, 500 (Pa. Commw. Ct. 2013) (*citing Wilson v. Donegal Mut. Ins. Co.*, 598 A.2d 1310, 1315-16 (Pa. Super. Ct. 1991); *Smith v. Renaut*, 564 A.2d 188, 192 (Pa. Super. Ct. 1989)); *see Am. Planned Cmty., Inc. v. State Farm Ins. Co.*, 28 F. Supp. 2d 964, 968 (E.D. Pa. 1998) (*citing Wilson*) (acknowledging that "[c]oncealment alone may create a sufficient basis for finding that a party engaged in fraud so long as the other elements of fraud are present"). Pennsylvania common law subsumes and recognizes the tort of of fraudulent concealment as stated in the *Restatement (Second) of Torts* § 550 ("*Restatement* § 550"), which imposes liability for intentional concealment of material information regardless of fraudulent concealment as stated in the *Restatement (Second) of Torts* § 550 ("*Restatement* § 550"), which imposes liability for intentional concealment of material information regardless of any duty to disclose.  *Am. Planned*, 28 F. Supp. 2d. at 968 (*citing Roberts v. Estate of Barbagallo*, 531 A.2d 1125 (Pa. Super. Ct. 1987)).

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully requests that this Court enter Judgment in its favor as follows:

A.   An award of compensatory damages including all non-economic damages past and future, in amount to be determined at trial;

B.   An award of economic damages including but not limited to: past and future medical expenses; out of pocket expenses; lost earnings; impaired earning capacity; childcare expenses; childcare counseling expenses; and all other economic damages in an amount to be determined at trial;

C.      For loss of parental consortium/support damages, pursuant to applicable law, on behalf of his minor children;

D.      For punitive and exemplary damages as available;

E.      For all available statutory damages as available;

F.      For an award of reasonable attorneys' fees and costs;

G.      For an award of prejudgment interest and costs of suit; and

H.      An award of such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: November 24, 2017        /s/ Bradford R. Sohn

                                    Bradford R. Sohn, Esquire
                                    FL Bar No. 98788
                                    THE BRAD SOHN LAW FIRM, PLLC
                                    2600 S. Douglas Road, Suite 1007
                                    Coral Gables, Florida 33134
                                    Ph: (786) 708.9750
                                    Email: Brad@Sohn.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will provide electronic notice to all counsel of record.

DATED: November 24, 2017        /s/ Bradford R. Sohn

                                      Bradford R. Sohn, Esquire
                                    FL Bar No. 98788
                                    THE BRAD SOHN LAW FIRM, PLLC
                                    2600 S. Douglas Road, Suite 1007
                                    Coral Gables, Florida 33134
                                    Ph: (786) 708.9750
                                    Email: Brad@Sohn.com

# Exhibit "B"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | **No. 2:12-md-02323-AB** |
| **IN RE NATIONAL FOOTBALL LEAGUE** | : | **MDL No. 2323** |
| **PLAYERS' CONCUSSION INJURY LITIGATION** | : | |
| | : | **Hon. Anita B. Brody** |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| **THIS DOCUMENT RELATES TO:** | : | |
| **2:12-md-02323-AB (as applicable)** | : | |
| **17-cv-02736-AB (*Robinson v. NFL*)** | : | |
| | : | |
| | : | |
| | : | |

## [PROPOSED] SHORT-FORM COMPLAINT AGAINST RIDDELL ENTITIES

1.      The Plaintiffs, Terri L. Robinson Executrix of the Estate of Adrian Robinson, Jr.,

DECEASED, Adrian Robinson, Sr. and Terri L. Robinson and Hawi Conteh as Co-Guardians of

the Estate of Avery Marie Robinson, a minor child, and Adrian Robinson, Sr., Terri L. Robinson

Hawi Conteh, and as survivors and beneficiaries, in all respective capacities (as Pennsylvania

Wrongful Death/Survival Act Co-Executors, as Guardians of decedent's minor child, as wrongful

death and survival beneficiaries, and where appropriate, on their own behalf), sue the collective

entities individually and as valid successors in interest to the entities referred to herein, hereafter—

as these Defendants have referred to themselves in other litigation—referred to as "RIDDELL" (in

sum, RIDDELL, INC., RIDDELL SPORTS GROUP, INC., ALL AMERICAN SPORTS CORP.,

BRG SPORTS, INC. f/k/a Easton-Bell Sports, Inc., BRG SPORTS, LLC f/k/a Easton Bell Sports,

LLC, EB SPORTS CORP., and BRG SPORTS HOLDINGS CORP. f/k/a RBG Holdings Corp.)

brings this action as a related action in the matter entitled IN RE: NATIONAL FOOTBALL

LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION, MDL No. 2323.

2.      Plaintiffs file this Short Form Complaint against NFL Defendants, and NFLF, as required by this Court's Case Order, filed October 12, 2017.

3.      Plaintiffs are not settlement-class members.  Nor is the decedent, who played NFL football after July 7, 2014.

4.      Plaintiffs incorporate by reference the Second Amended Master Administrative Long-Form Complaint Against Riddell Defendants without waiver of the position that this Court lacks subject-matter jurisdiction, and **with the exception of the following allegations**: ¶¶ 9, 15, n.2 (footnote deleted only), 17 (deleting from this allegation "because this is a 'Mass Action' and the amount in controversy exceeds $75,000, exclusive of interest and costs.  In addition, this Court has"), 25, 48, 50 (deleting the words "overwhelmingly", "professional", and "games" from the first sentence; and deleting the phrase "mild traumatic brain injuries ('MTBI'), which have" from the second sentence), 51-54, 56 (deleting from the allegation "went a step further. The") 60, 61 (deleting "while in the NFL"), 63, 64-83, 93-100, 102 (deleting "during NFL games and practices"; "despite their historic and proactive role as the guardian of player safety."; and "during NFL games and practices."), 184 (deleting both phrases referencing "NFL players and"), 185, 389(a). **As to these allegations, Plaintiffs adamantly disclaims and/or modifies these in the stated fashion according to each parenthetical, respectively**.  At bottom, Plaintiffs sue Defendants because they owed duties of care to the decedent as a member of the general public and as a product-user, and *not ever* alleging that any contractual relationship he had originated any duties of care owed to him.

5.      Plaintiffs reside in Pennsylvania, and decedent's death occurred in Philadelphia, Pennsylvania.

6.      After death, neuropathologists at Boston University determined that the decedent had CTE.

7.      Plaintiffs therefore seek all available damages under the law, including but not limited to economic damages, non-economic damages, and punitive damages.

8.      Had decedent understood that repetitive subclinical MTBI and/or repetitive clinical MTBI caused chronic brain damage and appreciated the meaning of this, decedent would have made materially different choices with this information and with respect to his football play including but not limited to the fact that had he known this information prior to playing football altogether, he may have opted against playing football.

9.      The original Complaint in this matter was filed in the Court of Common Pleas, Philadelphia, Pennsylvania.  If this case is remanded, Plaintiffs believe they would seek remand to this Court.

10.      Plaintiffs claim all available damages on his own behalf and on behalf of his dependent minor children:

       ☒      Injury to Himself

       ☒      Injury to the Person Represented

       ☒      Wrongful Death

       ☒      Survivorship Action

       ☒      Economic Loss

       ☒      Loss of Services

       ☒      Loss of Parental Consortium (as applicable)

11.     Plaintiffs, in all capacities direct and representative (e.g., as the personal representatives for the estate, survivors, guardian of minor-child, and individuals) sue the following entities:

⊠      Riddell, Inc.

⊠      Riddell Sports Group, Inc.

⊠      All American Sports Corp.

⊠      BRG Sports Corp.

⊠      BRG Sports LLC,

⊠      BRG Sports Holdings Corp.

⊠      EB Sports Corp.

12.     Plaintiffs object to federal jurisdiction.   The decedent wore Riddell helmets continuously from the time he began playing football in approximately 1994 until his death in 2015.  Upon information and belief, during this time he wore among other things, a Riddell Revolution Speed.

13.     Decedent Adrian Robinson, Jr. played in the ⊠  National Football League ("NFL"), for the Pittsburgh Steelers, Philadelphia Eagles, Denver Broncos, San Diego Chargers, Washington Redskins, and Tampa Bay Buccaneers between July of 2012 and September of 2014.

15.     Following the 2014-15 NFL league year, decedent Adrian Robinson signed a contract to play CFL football.  He was under contract to do so at the time of his death, May of 2015.

**CAUSES OF ACTION**

16.     Plaintiffs herein adopts by reference the following Counts of the Master Administrative Long-Form Complaint, along with the factual allegations incorporated by reference in those Counts [check all that apply]:

  ☒  Count I (Negligence (Against Defendant all Riddell Defendants))

  ☒  Count II (Negligent Marketing (Against Defendant all Riddell Defendants))

  ☐  Count III Negligent Misrepresentation

  ☒  Count IV Fraud (All Riddell Defendants)

  ☒  Count V Strict Liability/Design Defect (All Riddell Defendants)

  ☒  Count VI Failure to Warn (All Riddell Defendants)

  ☐  Count VII Breach of Implied Warranty

  ☒  Count VIII (Civil Conspiracy  (Against all Defendants))

  ☒  Count IX (Fraudulent Concealment (Against all Defendants))

  ☒  Count X (Wrongful Death (Against all Defendants))

  ☒  Count XI (Survival Action (Against all Defendants))

  ☒  Count XII (Loss of Consortium (Against all Defendants))

  ☒  Count XIII (Punitive Damages under All Claims (Against all Defendants))

  ☐  Count XIV (Declaratory Relief: Punitive Damages (Against all Defendants))

17.     Plaintiff asserts the following additional causes of action [write in or attach]:

- Plaintiffs additionally allege that none of them are or ever have been beneficiaries or signatories to any collective bargaining agreement.

- Plaintiffs additionally seek the loss of parental support, companionship, comfort, society and protection awardable under Pennslyvania law for survivorship and wrongful death claims, and—to the extent separate—for independent consortium damages available to the minor child and family.

- Either in addition to or in lieu of Count IX (Fraudulent Concealment), Plaintiffs plead a count for *intentional concealment*, which alleges that Riddell actively and intentionally concealed the material information alleged within the Complaint beginning with their knowledge of Dr. S.E. Reid's studies in 1962.  This claim requires no "duty to speak" because "Pennsylvania law recognizes a difference between active concealment and mere silence in the context of common law fraud." *Gnagey Gas & Oil Co. v. Pa. Underground Storage Tank Indemnification Fund*, 82 A.3d 485, 500 (Pa. Commw. Ct. 2013) (*citing Wilson v. Donegal Mut. Ins. Co.*, 598 A.2d 1310, 1315-16 (Pa. Super. Ct. 1991); *Smith v. Renaut*, 564 A.2d 188, 192 (Pa. Super. Ct. 1989)); *see Am. Planned Cmty., Inc. v. State Farm Ins. Co.*, 28 F. Supp. 2d 964, 968 (E.D. Pa. 1998) (*citing Wilson*) (acknowledging that "[c]oncealment alone may create a sufficient basis for finding that a party engaged in fraud so long as the other elements of fraud are present").  Pennsylvania common law subsumes and recognizes the tort of of fraudulent concealment as stated in the *Restatement (Second) of Torts* § 550 ("*Restatement* § 550"), which imposes liability for intentional concealment of material information regardless of fraudulent concealment as stated in the *Restatement (Second) of Torts* § 550 ("*Restatement* § 550"), which imposes liability for intentional concealment of material information

regardless of any duty to disclose.  *Am. Planned*, 28 F. Supp. 2d. at 968 (*citing*

*Roberts v. Estate of Barbagallo*, 531 A.2d 1125 (Pa. Super. Ct. 1987)).

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiffs respectfully requests that this Court enter Judgment in its favor

as follows:

B. An award of compensatory damages including all non-economic damages past and future, in amount to be determined at trial;

B. An award of economic damages including but not limited to: past and future medical expenses; out of pocket expenses; lost earnings; impaired earning capacity; childcare expenses; childcare counseling expenses; and all other economic damages in an amount to be determined at trial;

C. For loss of parental consortium/support damages, pursuant to applicable law, on behalf of his minor children;

D. For punitive and exemplary damages as available;

E. For all available statutory damages as available;

F. For an award of reasonable attorneys' fees and costs;

G. For an award of prejudgment interest and costs of suit; and

H. An award of such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on

all issues so triable.


DATED: November 24, 2017   /s/ Bradford R. Sohn

          Bradford R. Sohn, Esquire
          FL Bar No. 98788
          THE BRAD SOHN LAW FIRM, PLLC
          2600 S. Douglas Road, Suite 1007
          Coral Gables, Florida 33134

Ph: (786) 708.9750
Email: Brad@Sohn.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the

CM/ECF system which will provide electronic notice to all counsel of record.

DATED: November 24, 2017          /s/ Bradford R. Sohn

Bradford R. Sohn, Esquire
FL Bar No. 98788
THE BRAD SOHN LAW FIRM, PLLC
2600 S. Douglas Road, Suite 1007
Coral Gables, Florida 33134
Ph: (786) 708.9750
Email: Brad@Sohn.com