UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 12-md-2323 (AB)<br><br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,<br>Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br>Defendants. | Hon. Anita B. Brody |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

### SURREPLY DECLARATION OF MICHAEL L. MCGLAMRY IN RESPONSE TO THE OMBIBUS REPLY DECLARATION OF CHRISTOPHER A. SEEGER

Michael L. McGlamry declares, pursuant to 28 U.S.C. § 1746, based upon his personal knowledge, the following:

1. This Declaration is based upon my personal knowledge as is filed in response to the Omnibus Reply Declaration of Christopher A. Seeger (ECF No. 8934).

2. First, a few important points about the Ethics Committee: As previously stated, I served as Co-Chair of the Ethics Committee. Although Mr. Seeger contends that he created that committee, (*see* ECF No. 8934 at ¶ 68 & n. 19), the repeated, vociferous complaints from me and from others, including Ethics Committee Co-Chair Charles Zimmerman, about the glut of

1

misinformation that unscrupulous lawyers and others seeking to profit at the expense of class members, coupled with my suggestion that we retain ethics experts to address these issues, were the impetus for the Ethics Committee.

3.  In addition to misrepresenting the origins of the Ethics Committee, Mr. Seeger's Omnibus Declaration accuses Co-Chair Charles Zimmerman and me of having the mindset "that the actual goal was preserving individual retainer fees, rather than ensuring that Class Members were not deceived . . . ." *See id.* Nothing could be further from the truth. The "poaching" of class members who had previously retained counsel was one key symptom demonstrating the glut of misinformation being provided to all class members. Protecting class members from misinformation that could result in multiple attorneys' liens and additional, unnecessary costs and fees, and ensuring a continuity of quality legal services for class members were the goals for the Ethics Committee.

4.  The failures of the settlement agreement, and of Mr. Seeger, to address individual fee agreements resulted in an informational void that permitted unscrupulous attorneys to swoop in and sign former NFL players up with multiple counsel, and to sign them up with usurious lenders or claim purchasers and claims service providers, all contrary to the best interests of each and every class member. Mr. Seeger's public statement that "you don't need a lawyer" – whether limited by the context of "merely to register and participate in the Settlement program," (ECF No. 8934 at ¶ 68 & n. 18), or not – further contributed to class members' confusion, resulting in former NFL players who had retained counsel, deciding, contrary to the class members' best interests, to terminate their counsel.

5.  To be clear: the Ethics Committee's goal, which we always worked toward, was to combat and eliminate the spread of incorrect information and confusion, to protect the best

interests of all class members. Mr. Seeger's contention that our mindset was focused on our own fees instead of the best interests of all class members is both incorrect and offensive.

6. A second key point: Mr. Seeger has not responded to the point that my Declaration made about the dichotomy between the time he and his firm has billed, purportedly for the common benefit, in communicating with individual class members, and his instruction to all other counsel that time spent communicating with individual class member clients was not to be billed as common benefit time.

7. Indeed, Mr. Seeger now doubles down on his position, and notes that his firm "fielded dozens of calls where in Class Members contacted my firm seeking advice" when they were unable to reach their retained individual counsel. (ECF No. 8934 at ¶ 70). Mr. Seeger further chastises individually retained counsel for not communicating sufficiently with their clients. (*See id.*) Rest assured, Pope McGlamry has been in constant and continued communication with its clients/ class members and has expended many thousands of hours doing so, especially given the information void from co-lead counsel. But, per co-lead counsel's explicit instructions, none of my firm's thousands of hours of time spent communicating with individual class members was included in Pope McGlamry's common-benefit submission.

8. The point remains: it is inherently improper for co-lead class counsel and his firm to bill for time spent communicating with individual class members, and seek to be paid for that time – multiplied by 3.885 due to the unilaterally determined multiplier for Mr. Seeger's firm – while precluding other PEC/PSC counsel from billing for the same work. The only way to address this inherent disparity is to disallow *all* time spent communicating with individual class members, including that expended by Seeger, Weiss.

9.	A third point that needs to be made here: twelve (12) separate law firms that were members of Plaintiffs' leadership filed oppositions to Mr. Seeger's proposed fee and expense allocation.  (*See* Doc. 8934 at ¶ 2 & n.1 (detailing the objections).  Those objecting to Mr. Seeger's analysis included PEC and PSC members, and even his own co-lead counsel.  These law firms represent the overwhelming majority of all former NFL player plaintiffs/ class members.

10.	These oppositions were filed not by professional objectors, but by Plaintiffs' leadership counsel.  This was not a few disgruntled firms or unhappy lawyers; rather, more than half of those receiving common-benefit fee and expenses have complained, demonstrating how wrong Mr. Seeger's proposal is.  The magnitude of the objections belies Mr. Seeger's claim to unilateral and unchallenged knowledge and opinion.  This Court cannot ignore the weight of these objections; cannot merely rubber stamp Mr. Seeger's unilateral, self-serving fee allocation; and should require an open and independent evaluation of these issues.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 28, 2017, in Atlanta Georgia.

_____
Michael L. McGlamry