UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>      Plaintiffs,<br><br>      v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>      Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

**CO-LEAD CLASS COUNSEL'S MEMORANDUM IN OPPOSITION TO MOTION FOR PROTECTIVE ORDER OF PREFERRED CAPITAL FUNDING, INC.; PREFERRED CAPITAL FUNDING-NEVADA, LLC; PREFERRED CAPITAL FUNDING-MISSOURI, LLC; PREFERRED CAPITAL FUNDING-OHIO, LLC; AND BRIAN GARELLI**

**I.      INTRODUCTION**

Once again, a third party having seized an opportunity to cash in on the Settlement – by purporting to obtain an assignment of a portion of a Class Member's future monetary award, as collateral for a loan at a usurious interest rate – is resisting efforts by Co-Lead Class Counsel ("Class Counsel") to obtain discovery from it on the basis of jurisdictional objections.

Consistent with the Order that this Court issued on July 19, 2017 (ECF No. 8037), Co-Lead Class Counsel recently propounded discovery requests on Preferred Capital,[1] a lender to at least one known member of the certified Settlement Class.[2] *See* ECF No. 8938, at 7-13 (discovery requests); *id.* at 35 (Aff. of Brian Garelli, ¶¶ 7-8) (acknowledging loan to Class Member). As collateral, Preferred Capital had the Class Member assign part of the proceeds of his anticipated monetary award under the Settlement, resulting in the Class Member agreeing to ultimately pay some $385,000 in settlement benefits in return for a $275,000 advance – thus amounting to an effective interest rate of 39.95 percent.[3] Declaration of Sol Weiss, dated Nov. 27, 2017 ("Weiss Decl."), Ex. B, at 4, 7, 15.

Refusing to provide requested discovery, Preferred Capital takes the position that it is not subject to discovery because this Court lacks personal jurisdiction over it and because Class Counsel did not issue it a subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure. These objections are unavailing. This Court possesses the authority to order discovery of entities and persons, like Preferred Capital. Having contracted with a Class Member for a putative

---

[1] "Preferred Capital" refers collectively to movants Preferred Capital Funding, Inc.; Preferred Capital Funding-Nevada, LLC; Preferred Capital Funding-Missouri, LLC; Preferred Capital Funding-Ohio, LLC; and Brian Garelli.

[2] There is only one loan of which Class Counsel is definitely aware at present and which Preferred Capital has acknowledged, though there may well be more. Preferred Capital's discovery obstructionism will need to be overcome for Class Counsel to get an accurate picture.

[3] As the Court is aware, the issue of the legality of packaging loans to Class Members as assignments of portions of their monetary awards – specifically, whether section 30.1 of the operative Settlement Agreement (ECF No. 6481, at 96) prohibits assignments of monetary awards – is currently before it in the recently-concluded briefing on the assignability issue that Judge Preska of the Southern District of New York referred to the Court concerning lender RD Legal Funding and its affiliates. *See* ECF Nos. 8409, 8434-35, 8438, 8457-59, 8913, 8919. Were such assignments valid, then no third party contracting for a whole or partial assignment of Class Members' monetary awards would even have a leg to stand on as to any jurisdictional objection because it would stand in the shoes of the Class Member, who is subject to this Court's jurisdiction. *See, e.g.*, *In re Stralem*, 758 N.Y.S.2d 345, 347 (App. Div. 2d Dep't 2003) ("When a valid assignment is made, the assignee steps into the assignor's shoes.").

assignment of part of his monetary award, Preferred Capital expects to be paid from the res over which this Court presides, namely, the Monetary Award Fund. The Court has already rejected, at least implicitly, similar jurisdictional objections raised by another third-party lender, Cambridge Capital Group, and a claim services provider, Case Strategies Group, by ordering them to provide certain discovery in response to Co-Lead Class Counsel's Motions to Compel. *See* ECF Nos. 8466, 8366.

Moreover, Preferred Capital's assertion that it had no contacts with Pennsylvania in connection with the underlying advance of funds to the Class Member is untrue. Preferred Capital communicated directly with the Class Member's Philadelphia-based counsel on multiple occasions, threatening him with personal liability if he did not ensure that Preferred Capital will receive its due share of the Class Member's settlement proceeds. *See* Weiss Decl., Ex. B, at 1-2, 17-18 (Oct. 31, 2017 letter & email to Mr. Weiss from Preferred Capital). In any event, as an MDL Court, the Court is authorized to sit in any district.

In short, Preferred Capital's protestations lack merit. Accordingly, Class Counsel should be permitted to conduct discovery concerning Preferred Capital's lending practices – specifically, the identities of affected Class Members and the terms of those financial arrangements – and the Court should deny Preferred Capital's motion.

**II.     ARGUMENT**

**THE COURT HAS BROAD AUTHORITY TO ORDER DISCOVERY PURSUANT TO THE MDL STATUTE, 28 U.S.C. § 1407, FEDERAL RULE OF CIVIL PROCEDURE 23(d), AND THE ALL WRITS ACT, 28 U.S.C. § 1651**

Preferred Capital has asked the Court to enter a protective order against Class Counsel's discovery requests. Courts may issue protective orders against discovery requests for good cause shown. *See* Fed. R. Civ. P. 26(c)(1); *Glickstein v. Neshaminy Sch. Dist.*, No. 96-6236, 1998 WL

83976, at *2 (E.D. Pa. Feb. 26, 1998) ("the standard for evaluating a request for a protective order" is "'good cause shown'") (quoting Rule 26; emphasis omitted); *Smith v. BIC Corp.*, No. 87-0795, 1987 WL 14619, at *6 (E.D. Pa. Oct. 21, 1987) ("The standard for issuing a protective order is a showing of good cause."), *aff'd*, 121 F.R.D. 235 (1988), *aff'd*, 869 F.2d 194 (3d Cir. 1989); *see also Palomba v. Barish*, No. 85-1278, 1986 WL 8484, at *1 (E.D. Pa. July 30, 1986) (district court "'may protect the party from whom discovery is sought whenever it can demonstrate "good cause" and the matter is important enough to prompt it to take the initiative in seeking protection against abuse'") (quoting treatise).

No good cause has been demonstrated here. The entire basis of Preferred Capital's request for a protective order are its contention that, because it is a non-party, Class Counsel was required to serve subpoenas pursuant to Rule 45 in order to obtain discovery from it, and its related argument that this Court lacks personal jurisdiction over it because it does not operate within this District's territorial reach and its loan to the Class Member was executed in Nevada. ECF No. 8938, at 26-31; *see also id.*, at 34-35 (Aff. of Brian T. Garelli, ¶¶ 2-9). These arguments fail.

This Court's July 19 Order authorized Class Counsel to conduct discovery of those who voluntarily subjected themselves to this Court's jurisdiction by entering into agreements with Class Members related to their monetary awards, to be paid out of the res over which this Court presides – the Monetary Award Fund. This Court gave final approval to the Settlement and has plenary jurisdiction over the settlement corpus and payments made therefrom.

MDL transferee judges possess authority over parties and non-parties, as related to the Settlement and the administration thereof, over which they presides, under the MDL statute, 28 U.S.C. § 1407, Fed. R. Civ. P. 23(d), and the All Writs Act, 28 U.S.C. § 1651. "Where, as here, a district court retains exclusive jurisdiction over settlement agreements and distribution of

4

settlement funds pursuant to those agreements, it may issue orders necessary to protect the settlement from threats by both parties *and non-parties*." *In re Visa Check/Mastermoney Antitrust Litig.*, No. CV-96-5238 (JG), 2006 WL 1025588, at *4 (E.D.N.Y. Mar. 31, 2006) (citing *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 336 (2d Cir. 1985) (emphasis added)); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 05-MD-1720 (JG), 2014 WL 4966072, at *31 (E.D.N.Y. Oct. 3, 2014) (same); *see also* David F. Herr, *Annotated Manual for Complex Litigation* § 21.33, at 355 (rev. ed. 2017) ("The judge has ultimate control over communications among the parties, *third parties*, *or their agents* and class members on the subject matter of the litigation to ensure the integrity of the proceedings and the protection of the class.") (emphasis added; footnote omitted).

Indeed, in *Visa Check*, the court held that because the non-parties' "contracts with class members plainly affect the administration of the settlements and the distribution of the settlement funds, the All Writs Act authorize[d] the relief sought by Lead Counsel." 2006 WL 1025588, at *5. In that case, the third party was Spectrum, a claim-filing and fund recovery service for commercial class actions, which sought to "entice class members to retain Spectrum to administer their claims and … to purchase their claims outright." *Id.* at *1. The court ordered that class notice be sent to all class members who had entered into contracts with Spectrum in order to notify them that the contracts could be voided without legal ramifications within a specified time period if class members submitted affidavits indicating they had relied upon Spectrum's misleading marketing materials in entering into the contracts. Quoting the Supreme Court, the *Visa Check* court held that "'[t]he power conferred by the [All Writs] Act extends, under appropriate circumstances, to persons who, though *not parties to the original action* or engaged in wrongdoing, are in a position

5

to frustrate the implementation of a court order or the proper administration of justice." *Id.* at \*5 (quoting *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977)) (emphasis added).

The *Visa Check* court emphasized its intimate involvement with the litigation, the settlement and the administration of the settlement, and recognized its power to be proactive vis-à-vis third parties seeking to involve themselves with class members in order to profit from the settlement funds:

> I have presided over this action since 1996. With the express consent of all parties, I played an active role in the settlement discussions and have maintained an active role in the administration of the settlement. . . . The nature of the Court's interest is as simple as it is strong: the class members must not be misled. Where false or misleading statements are used to solicit business from them, I have no intention to sit by and relegate them to a cause of action for breach of contract or fraud. To do otherwise-that is, *to say that I am powerless to take steps, both proactive and reactive, to protect each class member's interest in the settlement funds, even when I know they are being misled-would be an abdication of responsibility. It would also erode the class members' and the public's respect for the settlements themselves, and for the process that produced them.*

*Id.* at \*4 (emphasis added). Other courts have similarly asserted jurisdiction over third parties in order to protect absent class members. *See McWilliams v. Advanced Recovery Sys., Inc.*, 176 F. Supp. 3d 635, 642 (S.D. Miss. 2016) (third-party attorneys "brought themselves within the scope of Rule 23 and th[e] Court's jurisdiction" by "sending solicitation letters to members of a certified class"); *Jack Faucett Assocs., Inc. v. AT&T*, No. 81-1804, 1985 WL 25746, at \*8 (D.D.C. Oct. 18, 1985) (ordering third-party claims processing companies to produce copies of agreements and assignments with class members, solicitation letters, and other communications and lists).

Preferred Capital's personal jurisdiction objections may be disposed of quickly. *First*, its contention that the Class Member to whom it loaned funds was from outside Pennsylvania and had engaged non-Pennsylvania counsel, Garelli Aff. ¶ 8 (ECF No. 8938, at 35) is misleading. The Class Member had retained Co-Lead Class Counsel Sol Weiss – who, as the Court well knows, is

based in Philadelphia – to represent him in connection with personal injury claims against the NFL and had never discharged Mr. Weiss' firm. *See* Weiss Decl. ¶¶ 3-4, 7 & Ex. A; *see also id*., Ex. B, at 17 (Oct. 31, 2017 email Form Mr. Weiss to Preferred Capital).  In fact, Preferred Capital *communicated directly* with Mr. Weiss in an effort to have him acknowledge the Class Member's putative assignment, asserting that he has duties under Pennsylvania ethics rules to ensure that Preferred Capital receive the amounts it is allegedly owed.  Besides threatening the Class Member with a default under the loan if Mr. Weiss does not execute the acknowledgement, Preferred Capital even threatened Mr. Weiss with potential personal liability if he disburses funds without paying Preferred Capital its loan balance.  *Id*., ¶ 5 & Ex. B, at 1-3, 17-18.[4]

Presumably, should Mr. Weiss fail to turn over the proceeds to which Preferred Capital claims entitlement, then Preferred Capital intends to either sue him in Pennsylvania or pursue other measures against him within the territorial reach of this District.  These would be activities purposefully directed at the Pennsylvania forum.  *See generally D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (specific jurisdiction exists where (i) defendant has purposefully directed his activities at the forum, (ii) plaintiff's claim arises out of or relates to at least one of those activities, and (iii) assertion of jurisdiction otherwise comports with "fair play and substantial justice") (citing cases); *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (same).

---

[4] Mr. Weiss did not represent the Class Member in connection with the negotiation or closing of the loan from Preferred Capital.  Rather, his involvement with the loan was limited to rebuffing Preferred Capital's efforts to have him acknowledge the putative assignment and his unsuccessful entreaty to have Preferred Capital reduce the usurious interest rate on the loan.  *Id*., ¶¶ 5, 7 & Ex. B, at 17-18.  The non-Pennsylvania counsel to whom Preferred Capital alludes, *see* Garelli Aff. ¶ 8 (ECF No. 8938, at 35), may have attempted to poach Mr. Weiss' client, quite possibly at the instigation of Preferred Capital.  As per the Promissory Note and Assignment of Proceeds, that lawyer who signed the Acknowledgement of Assignment of Proceeds is Bobby Saadian of the Wilshire Law Firm, PLC, out of Los Angeles, California.  *See* Weiss Decl., Ex. B, at 15.

7

*Second*, at any rate, Preferred Capital ignores that this Court is not simply an ordinary federal district court.  Rather, it sits as *an MDL court* overseeing the Settlement's implementation.  An MDL judge is authorized to "exercise the powers of a district judge *in any district*."  28 U.S.C. § 1407(b) (emphasis added); *cf. In re Auto. Refinishing Paint*, 229 F.R.D. 482, 485-86 (E.D. Pa. 2005) ("The MDL statute thus authorizes a transferee court judge to sit as the court in other districts to hear and decide motions to compel discovery from non-parties," and "a multidistrict judge may decide a motion to compel a non-party in other districts even if he or she is not physically situated in those districts.") (citing authorities; footnote and internal quotation marks omitted).  As such, even assuming that Preferred Capital were not subject to Pennsylvania's long-arm statute by virtue of reaching out to the Class Member's Philadelphia-based counsel, the Court can easily sit in any district where it is subject to personal jurisdiction – be it the districts where Preferred Capital is incorporated, has its principal place of business, or otherwise – in order to compel Preferred Capital to furnish the requested discovery, and the Court may do so whether or not it is physically present there.

Finally, this Court has rejected, at least implicitly, similar jurisdictional objections raised by other third parties – claim services provider CSG and lender Cambridge Capital Group, LLC, and affiliates (including attorney Tim Howard) by ordering them to provide certain discovery over similar jurisdictional objections.  *See* ECF Nos. 8366 (granting Class Counsel's motion to compel in part), 8466 (granting Class Counsel's motion to compel discovery); *see also* ECF Nos. 8348 [at 15-20] (CSG's opposition memorandum), 8389 [at 9-11] (Cambridge Capital Group's opposition memorandum), 8461 (Order denying CSG's motion to certify for interlocutory appeal controlling question of whether Class Counsel was required to service Rule 45 subpoenas).  In short, the Court

should not countenance Preferred Capital's resistance to discovery based upon the insistence that Class Counsel should have served it with subpoenas.[5]

### III. CONCLUSION

For the foregoing reasons, the Court should deny Preferred Capital's motion for a protective order.

Dated:  November 28, 2017

                                                  Respectfully submitted,

/s/ Christopher A. Seeger
Christopher A. Seeger
SEEGER WEISS LLP
77 Water Street, 26th Floor
New York, NY 10005
Phone: (212) 584-0700
Fax:     (212) 584-0799
*cseeger@seegerweiss.com*
***Co-Lead Class Counsel***

---

[5] Of course, if the Court prefers, Class Counsel stands ready to serve Rule 45 subpoenas on any or all of the Preferred Capital entities.

## **CERTIFICATE OF SERVICE**

I hereby certify that, on November 28, 2017, a copy of the foregoing was served on all counsel of record via the Court's ECF system in docket numbers 2:12-md-02323-AB and 14-00029-AB.

*/s/ Christopher A. Seeger*
Christopher A. Seeger
