**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323<br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>        Plaintiffs,<br><br>                v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>        Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**DECLARATION OF SOL WEISS IN OPPOSITION**
**TO MOTION FOR PROTECTIVE ORDER**

SOL WEISS declares the following, pursuant to 28 U.S.C. § 1746:

1.      I am the President of the law firm of Anapol Weiss, whose principal offices are in Philadelphia, Pennsylvania.  The Court appointed me as Co-Lead Counsel for Plaintiffs in Case Management Order No. 3, entered on May 11, 2012 (ECF No. 72).  Subsequently, in its July 7, 2014 Order granting preliminary approval to the class action Settlement Agreement in this multidistrict litigation (ECF No. 6084), the Court appointed me as Co-Lead Class Counsel, and

the Court confirmed that appointment in its May 8, 2015 Amended Final Order and Judgment approving the Settlement Agreement, as amended on February 13, 2015 (ECF No. 6534).

2.      The statements set forth in this Declaration are based on my personal knowledge thereof.

3.      On or about February 12, 2012, Class Member Kenny Clark, residing in Suwanee, Georgia, retained the firm then known as Anapol Schwartz, P.C., to represent him in connection with personal injury claims against the National Football League ("NFL").  A true copy of the contingent fee agreement executed by Mr. Clark, with address information redacted, is annexed hereto as Exhibit A.

4.      Mr. Clark has never discharged my firm in connection with the aforementioned claims.

5.      On several occasions in the fall of 2017, I received communications from Preferred Capital Funding, in the form of emails and a letter, advising me that Mr. Clark had applied for a cash advance loan on his anticipated recovery under the Settlement Agreement, and demanding that, as Mr. Clark's counsel, I execute an acknowledgement of Mr. Clark's assignment of proceeds from that recovery as collateral for the loan.  I declined to execute such an acknowledgment given that the issue of whether monetary awards under the Settlement Agreement may lawfully be assigned is currently pending before the Court, and I urged Preferred Capital Funding to lower the 39.95 percent interest rate on the promissory note signed by Mr. Clark to an appropriate rate.  True copies of some of the communications exchanged with Preferred Capital Funding are annexed hereto collectively as Exhibit B.  (Mr. Clark's address, telephone, and Social Security number have been redacted.)  I advised TerriAnne Benedetto of Seeger Weiss LLP, who is the partner of Co-

Lead Class Counsel Christopher A. Seeger, of the communications from and to Preferred Capital Funding and forwarded copies to her.

6.      Neither I nor anyone at my firm ever represented Mr. Clark in connection with his application for the loan from Preferred Capital Funding or in connection with the closing of that loan or was requested to do so.  Moreover, as noted above, at no time has Mr. Clark discharged me as his individual counsel respecting his claims against the NFL.

7.      I declare under penalty of perjury that the foregoing is true and correct.

Executed at Philadelphia, Pennsylvania this 27th day of November, 2017.

*/s/ Sol Weiss*
_____
SOL WEISS

# EXHIBIT A

**ANAPOL SCHWARTZ, P.C.**
1710 Spruce Street
Philadelphia, Pennsylvania 19103

## CONTINGENT FEE AGREEMENT/POWER OF ATTORNEY

This is a binding legal document. Read it carefully before you sign it, and keep a copy for your records.

Date: _2-14-12_

I/We, _Kenneth Clark_ , hereby hire
**Nathaniel E.P. Ehrlich, Esquire** of the law firm ANAPOL SCHWARTZ, P.C., to prosecute a claim against
**The National Football League**. The claimant is _Kenneth Clark_

and the cause of action arose **on or after September 30, 2009**.

ANAPOL SCHWARTZ, P.C. has agreed, at my/our request, to represent me/us for the above specific claim without payment of any retainer or an hourly fee for the investigations and legal work they will perform. Counsel may not receive any compensation whatsoever, and may be required to wait a considerable period of time to receive any payment.

I/We hereby agree that out of whatever sum is obtained by settlement or verdict the attorney fee shall be one third of the net recovery reduced proportionally by any common benefit fee received by our lawyers. From the net balance remaining, I/we agree to pay the expenses of suit, including filing fees, costs to obtain records, deposition costs, investigation fees, cost of witnesses, including expert witnesses and consultants to ensure Medicare/Medicaid compliance and costs for trial.

Pursuant to this agreement, said attorneys shall represent me/us and may institute suit on my/our behalf when, and if, they believe suit should be instituted.

I/We are aware that **John Lorentz, Esquire** will receive a referral fee out of the total attorney's fee from ANAPOL SCHWARTZ, P.C. for acting as cooperating counsel. I/We understand that the payment of the cooperating counsel fee does not increase or affect the total contingent fee paid by me/us. I/We do not object to this division of fees.

I/We acknowledge that my/our attorneys have advised me/us that the relationship of attorney and client is based upon mutual trust and confidence and that they will endeavor to keep me/us advised of important developments in their representation of me/us. They have further advised me/us that I/we are free to communicate with them and ask them questions from time to time as appropriate.

It is further understood and agreed that upon notification to me/us (certified, registered or regular U.S. mail) said attorneys may withdraw as counsel in the event of me/our failure to cooperate if they conclude in their sole judgment that the claim cannot be successfully prosecuted by them. In the event the attorneys withdraw as my/our counsel, they agree that I/we will not be obligated to pay them for any professional services they have rendered.

I/We further agree that the notification to me/us shall be considered to take place upon mailing of said notification to the last address for me/us known to the attorneys in a pre-paid envelope deposited with the U.S. mail.

Page 1

I/We hereby authorize said attorneys to pay medical bills on my/our behalf directly to the physician(s) or hospital(s) concerned.

I/We further agree that should I/we discharge said attorneys, my attorneys shall be entitled to immediate reimbursement of costs and disbursements and that I/we shall be liable to pay attorneys either a payment of a fee according to the above-agreed percentage of any settlement offers obtained prior to discharge or a payment based upon time actually expended or reasonably estimated at the attorney's prevailing rates for work performed prior to discharge. The obligation to reimburse ANAPOL SCHWARTZ, P.C. for attorney's fees and costs shall be payable immediately after discharge.

Both client and attorney acknowledge that an attorney is prohibited from revealing confidential information about a client unless the client consents. In that connection, client acknowledges that attorney and client will communicate with each other through the use of cellular telephone and will discuss matters, which may be confidential. The client hereby consents to said communications occurring on cellular phone, even though the client acknowledges that confidential communications between attorney and client may be intercepted by third parties and become public. Notwithstanding said facts, client instructs attorney to communicate with client by way of cellular telephone at any and all times subsequent hereto as desired by attorney.

With regard to e-mail communication, although most courts and the American Bar Association have concluded that e-mail can qualify as confidential communication, there is still a chance that you may be waiving these protections if you use e-mail to communicate with us regarding a legal matter. It is possible that an e-mail message could be intercepted or sent to the wrong person. If you choose to communicate with us via e-mail (and some clients do), you need to understand that you are taking these risks. You should definitely avoid transmitting highly sensitive information by unencrypted e-mail.

I/We hereby acknowledge that a copy of this document has been given to me/us and that I/we have been advised to retain it in my/our possession, and that I/we have read and understood the contents of this document before I/we signed it.

SHOULD NO MONEY BE RECOVERED BY SUIT OR SETTLEMENT, SAID ATTORNEYS ARE TO HAVE NO CLAIM OF ANY KIND AGAINST ME/US FOR ANY PROFESSIONAL SERVICES RENDERED.

Signature

Kenneth Clark
Print Name

Suwanee Ga 30024
City, State & Zip

Signature

Print Name

Street Address

City, State & Zip

Page 2

# EXHIBIT B

# Preferred Capital Funding

CASH ADVANCES TO PLAINTIFFS

**ILLINOIS**

**Preferred Capital Funding, Inc.**
**Chicago - Main**
368 W. Huron St., Ste. 400S
Chicago, IL 60654
**Phone:** 312.212.5000
**Fax:** 312.274.1383

**MISSOURI**

**Preferred Capital Funding-**
**Missouri, LLC**
**One Metropolitan Square**
211 N. Broadway, Ste. 110
St. Louis, MO 63102
**Phone:** 314.256.2686
**Fax:** 314.256.2688

**NEVADA**

**Preferred Capital Funding-**
**Nevada, LLC**
411 E. Bonneville Ave., Ste. 102
Las Vegas, NV 89101
**Phone:** 702.947.9775
**Fax:** 702.947.9776

**OHIO**

**Preferred Capital Funding-**
**Ohio, LLC**
200 Public Square, Ste. 160
Cleveland, OH 44114
**Phone:** 216.472.1391
**Fax:** 877.329.6199

**www.pcfcash.com**

October 31, 2017

VIA EMAIL sweiss@anapolweiss.com and U.S. MAIL
Sol Weiss, Esq.
Anapol Weiss
One Logan Square
Philadelphia, PA 19103

Re:     **Funding by our company to your client Kenny Clark**
        **Intake ID #88845**

Dear Mr. Weiss:

As I believe you are aware, Preferred Capital Funding provided Kenny Clark with a case advance loan regarding his claim in the NFL Concussion Settlement, when he was represented by prior counsel.

It is my understanding that his claim is still pending and that you have assumed responsibility for this claim.  We previously sent you copies of the acknowledgment form from his loan which requires your signature, but to date, we have not received the signed copy.  In the event you have misplaced it, I am enclosing an additional copy for you to sign and return to us at your earliest convenience.  I did receive you email acknowledging the claim, but we do require the signed form for our file.

Please keep in mind that pursuant to the loan contract your client signed; our company has a lien upon any proceeds generated from the case.   We are a licensed lawsuit lender and provided him with this loan in Nevada in compliance with all applicable statues.  Since you have not formally acknowledged our loan in writing we must advise you that any disbursement of funds on the case without payment of our loan balance may subject you and your firm to personal liability for the amounts owed to our company.

Further, please be aware that pursuant to Pennsylvania Rules of Professional Conduct, Rule 1.15: *Safekeeping Property*, you are required to hold the settlement proceeds in escrow until such time as our lien is paid or a determination has been made regarding any dispute over our outstanding loan balance.  Rule 1.15 states, in pertinent part:

   **(d)  Upon receiving Rule 1.15 Funds or property which are not Fiduciary Funds or property, a lawyer shall promptly notify the client or third person, consistent with the requirements of applicable law. Notification of receipt of Fiduciary Funds or**

property to clients or other persons with a beneficial interest in such Fiduciary Funds or property shall continue to be governed by the law, procedure and rules governing the requirements of confidentiality and notice applicable to the Fiduciary entrustment.

(e)  Except as stated in this Rule or otherwise permitted by law or by agreement with the client or third person, a lawyer shall promptly deliver to the client or third person any property, including but not limited to Rule 1.15 Funds, that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding the property; Provided, however, that the delivery, accounting and disclosure of Fiduciary Funds or property shall continue to be governed by the law, procedure and rules governing the requirements of Fiduciary administration, confidentiality, notice and accounting applicable to the Fiduciary entrustment.

(f)  When in possession of funds or property in which two or more persons, one of whom may be the lawyer, claim an interest, the funds or property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the funds or property, including Rule 1.15 Funds, as to which the interests are not in dispute.

We also ask that you execute the enclosed acknowledgment and return it to our office immediately as your client's loan will remain in default until the signed document is returned.  The default could lead to additional charges being incurred by your client.

Additionally, please contact me upon resolution of the case and we will provide you with a payoff statement for Mr. Jean-Francois' funding. Alternatively, please feel free to email our Payoff Department at Payoffs@PCFCash.com and they will send you the payoff statement directly.

Should you have any questions in the interim you can contact me at 312/204-9933 or you can reach our President Brian Garelli at 630/660-3845. Thank you for your cooperation in this matter.

Sincerely,

Jody B. Pravecek, Esq.

Enclosure (Attorney Acknowledgment)

cc: Kenny Clark

## EXHIBIT A

## ACKNOWLEDGMENT OF ASSIGNMENT OF PROCEEDS

I, Sol Weiss of Anapol Weiss, attorney for Kenny Clark in which the Borrower is entitled to receive proceeds from the claim(s) / lawsuit(s) listed on the attached promissory note and arising out of an incident occurring on or about date unknown and against Brent David Adams, Kenny Clark, et al. v. National Football League and NFL Properties, LLC, successor-in-interest to NRL Properties, Inc *and/or other potentially responsible parties* (the claim / lawsuit), hereby acknowledge and agree to abide by this Assignment of Proceeds to pay to the below Lender, as per their final pay-off statement, and  upon the disbursement of any proceeds of the case and after deduction of attorney's fees and costs, all amounts due and owing under the Promissory Note under loan number, #2850416A, attached hereto and any additional notes owed to Lender. I shall make payable and mail a check to Preferred Capital Funding – Nevada, LLC at 211 N. Buffalo Dr., Ste. C , Las Vegas, NV 89145, out of borrower's portion of the proceeds of his/her claim.  I further represent that to the best of my knowledge that the borrower has not taken any other loans or advances on this claim from any party other than Preferred Capital Funding – Nevada, LLC., and loan(s) with Peachtree that are being paid off with part of the proceeds from this transaction.

Dated:_____

Anapol Weiss

By: _____
    Mr. Sol Weiss

Loan # 2850416A

Preferred Capital Funding – Nevada, LLC
211 N. Buffalo Dr., Ste. C
Las Vegas NV 89145
Phone:  (702) 947-9775

## PROMISSORY NOTE AND ASSIGNMENT OF PROCEEDS OF CLAIM

1.    <u>Initial Disclosures</u>.

| | |
|---|---|
| **DATE OF LOAN:** | **May 27, 2016** |
| **AMOUNT OF LOAN:** | **$ 275,000.00** |
| **DEDUCTIONS FROM LOAN AMOUNT:** | **$ 0.00** |
| **FINANCE CHARGE:** | **$ 109,862.50** |
| **ANNUAL PERCENTAGE RATE:** | **39.95%** |
| **NUMBER OF PAYMENTS:** | **One** |
| **AMOUNT OF PAYMENT:** | **$ 384,862.50** |
| **PAYMENT DUE DATE:** | **May 27, 2017** |
| **TOTAL OF PAYMENTS:** | **$ 384,862.50** |
| **LATE PAYMENT FEE** | **5% of amount of payment if payment is more than 15 days late** |
| **PREPAYMENT:** | **You may prepay this loan at any time, without penalty.** |
| **COLLATERAL:** | **An assignment of a portion of the proceeds of the case / claim / lawsuit (hereinafter referred to as "the claim") arising from an incident occurring on or about date unknown and against the responsible party Brent David Adams, Kenny Clark, et al. v. National Football League and NFL Properties, LLC, successor-in-interest to NRL Properties, Inc** *and other potentially responsible parties* **including all insurance claims related thereto (including where relevant, all bad faith, uninsured or underinsured motorist's claims) sufficient to cover all amounts due and owing under this agreement.** |

2.    <u>Promise to Pay</u>. I, Kenny Clark  (the Borrower), for value received, promise to pay to the order of Preferred Capital Funding – Nevada, LLC (the Lender), the principal sum of Two Hundred

2

Subject to a security interest provided by Preferred Capital Funding LLC to FirstMerit Bank N.A.

**Letter of Direction**

I, <u>Kenny Clark</u> hereby instruct Preferred Capital Funding – Nevada, LLC to make my loan

check(s) payable to the following parties:

| Name | Amount |
|---|---|
| Kenny Clark | $50,000.00 |
| Peachtree Pre-Settlement Funding SPV, LLC P.O. Box 935350 Atlanta, GA 31193-5350 | $225,000.00 |

May 27, 2016

_____          _____
**Borrower Signature**                                              **Date**

Seventy-Five Thousand  & 00/100 Dollars ($275,000.00), plus interest on the principal sum calculated at the annual percentage rate of 39.95% calculated as follows: 9.92% interest for the 1st month; and 2.73% interest for months 2 through 12 without any monthly compounding of interest.  This is a single advance loan with a monthly step interest rate as defined within this paragraph.  This loan shall be payable upon the earlier of:

A.      One year from the date of this Promissory Note (the Agreement); or

B.      My or my attorney's receipt of payment on account of my pending claim(s) / lawsuit(s) / entitlement as a beneficiary or other sums due me now or in the future from the matter(s) listed as Collateral hereunder and enumerated as against Brent David Adams, Kenny Clark, et al. v. National Football League and NFL Properties, LLC, successor-in-interest to NRL Properties, Inc, Case No. 2:13-CV-06101 or other potentially responsible parties arising out of an incident on or about date unknown.

3.      Refinancing:   If the Loan you are closing today will pay off and refinance your prior Loans with lender and provide you with additional funds a letter of direction or Assignment of Proceeds will accompany your loan documents showing the following:

A.      That you will be receiving new funds today in the amount of $275,000.00.

B.      That the amount of $0.00 will be used to pay off your prior loan(s) with lender bearing loans #(s) N/A.

4.      Automatic Roll-Over:   The Borrower and the Lender agree that if the event described in this section 2.B has not occurred as of the Payment Due Date [or as of any subsequent loan term Payment Due Date(s)], and if no Event of Default (as that term is defined in section 9 of this Agreement) has occurred, they shall enter into a Promissory Note and Assignment of the Proceeds of the Claim in form and substance substantially identical to this Agreement (except that the principal amount of the Loan shall be equal to the original principal amount of the Loan, plus all accrued and unpaid interest on the Loan) by which the Payment Due Date shall be extended by the same term as the original loan.

5.      Grant of Security Interest.   To secure the payment of the Loan, and of any and all other debts, obligations or liabilities of the Borrower to the Lender, whether direct or indirect, now or hereafter existing, absolute or contingent, the Borrower pledges and grants unto Lender a security interest in the following property (which shall be referred to collectively as the "Collateral"):

A.      The proceeds of the borrower's claim for injury against Brent David Adams, Kenny Clark, et al. v. National Football League and NFL Properties, LLC, successor-in-interest to NRL Properties, Inc or other potentially responsible party's arising out of the incident occurring on or about date unknown including all insurance proceeds due thereunder sufficient to cover all amounts due and owing under this Agreement upon those proceeds being identifiable and ascertainable.

3

6.   Assignment of Proceeds.  As security for the payment of the Loan, and of any and all other debts, obligations or liabilities of the Borrower to the Lender, whether direct or indirect, now or hereafter existing, absolute or contingent, the Borrower irrevocably assigns a portion of the proceeds of the Claim and directs and authorizes his or her attorney(s) to pay to the order of the Lender immediately, upon receipt by the Attorney(s) or the Borrower of the proceeds of the Claim, all amounts due and owing under this Agreement (in each case limited to the total amount then due and owing under the Loan).  To evidence receipt of the direction and authorization described in this paragraph, the Borrower shall cause his or her current and subsequent attorney(s) to execute the Acknowledgment of Assignment of Proceeds form attached hereto as Exhibit A.

7.   Representations and Warranties.  The Borrower represents and warrants that:

A.   Ownership of The Claim.  The Borrower is the lawful owner of the Claim and any other Collateral listed.

B.   No Other Loans.  The Borrower has not borrowed upon, pledged or assigned any interest in the Proceeds of the Claim, or any other Collateral used to secure this loan, to any other person or entity, other than the loan(s) with Peachtree that are being paid off from part of the proceeds from this transaction, and shall keep the Proceeds of the Claim and any other Collateral free of all liens, other than any liens in favor of the Borrower's attorney, and any liens in favor of medical providers who treated the Borrower for the injury or condition which is the subject of the underlying Claim.

C.   Status of Claim.  Upon request by the Lender, Borrower shall report promptly to the lender the status of his or her claim / collateral, including the non-privileged portions of his or her case file, current attorney information and whether borrower has received any recovery, funds or settlement from the collateral.  Borrower will also direct their attorney to provide said statuses as well.

D.   Other Documents.  The Borrower shall promptly upon request by the Lender execute such other documents as may be necessary or advisable in the Lender's opinion to give effect to this Agreement.

E.   No Reduction in Amount Owed.  Borrower hereby waives any rights or claims he/she may have to a reduction in the amount owed under this agreement including any rights he/she may have under the common fund doctrine.

F.   Credit Report.  Borrower consents to Lender running Borrower's credit report prior to and after the execution of this agreement, including up to the date of final payment of all sums due and owing hereunder.

G.   No Assigment.  The Borrower shall not assign, dispose of, pledge, or borrow upon the proceeds of the claim or any other collateral used to secure this loan, except with the Lender's prior written consent.

8.   Representations and Warranties of the Lender.  The Lender represents and warrants that:

4

B.    <u>Maintenance or Control.</u>   Lender shall not exercise any maintenance or control of the underlying claim, including but not limited to, selection of counsel, right to prosecute, or resolution of the claim.

C.    <u>Assignment.</u>  Lender is not taking an assignment of the underlying claim or cause of action, but rather is taking an assignment of the proceeds that borrower may be entitled to and necessary to satisfy the repayment of the loan hereunder.

9.    <u>Events of Default</u>.  The occurrence or existence of any of the following shall be an event of default (an Event of Default) under this Agreement:

A.    The Borrower shall fail to pay to the Lender as and when due all principal and interest due under the Loan, and any and all other debts, obligations or liabilities of the Borrower owed to the Lender, whether direct or indirect, now or hereafter existing, absolute or contingent, including without limitation the Borrower's obligations to the Lender arising under any Prior Agreement(s) with Lender.

B.    Any representation or warranty, or other statement contained in this Agreement or Borrower's loan application shall be false or misleading in any respect.

C.    The underlying claim(s) as enumerated in the Collateral shall be dismissed.

D.    The Borrowers current or subsequent attorney fails to execute and return to Lender in original signature the "Acknowledgement of Assignment of Proceeds of Claim" [a copy of which is attached hereto as <u>Exhibit A</u>],

E.    The Borrower shall file a voluntary petition under the United States Bankruptcy Code, or shall enter into an assignment for the benefit of creditors or any other voluntary insolvency procedures, or an involuntary petition under the United States Bankruptcy Code shall be filed against the Borrower or a receiver shall be appointed for the Borrower or for any of his or her property.

F.    A judgment in excess of $5,000.00 shall be entered against the Borrower in any other matter.

G.    The Lender shall determine, in the reasonable exercise of its discretion, that the value of the Claim or any Collateral (if any) is insufficient or impaired in any material respect.

10.    <u>Remedies Upon Default</u>.

A.   Immediately upon the occurrence of an Event of Default, the Lender may, without notice to the Borrower, declare all of the Borrower's obligations to the Lender under this Agreement [and under any Prior Agreement(s), if any] to be immediately due and payable.

B.   Lender shall have, in addition to all of its other rights and remedies under this Agreement, all the rights and remedies of a secured party under the Uniform Commercial

5

Code including, without limitation, the right to sell, lease or otherwise dispose of any or all of the Collateral, if any, to the extent allowed by law.

C. No act, delay in acting or omission to act by the Lender, or course of dealing between the Borrower and the Lender, shall constitute or be deemed to constitute a waiver of any of the Lender's rights and remedies under this Agreement.

11. <u>Payment of Costs and Disbursements After Event of Default</u>. The Borrower shall pay to the Lender, immediately upon demand, all costs and disbursements, including attorneys' fees incurred in any legal proceedings to collect on the Loan, or to realize on any security given for the Loan, after the occurrence of an Event of Default.

12. <u>Document Preparation Fee:</u> The Borrower shall pay to the Lender the following Document Preparation Fee. This Fee shall NOT be deducted from the loan proceeds, nor shall it accumulate interest within this loan. Borrower understands and agrees that this fee is a separate and unique charge from any interest calculation. This fee shall be added to the final pay-off statement to borrower at the time of payment or refinancing into a new loan.

**Document Preparation Fee shall be zero dollars ($0.00).**

13. <u>Late Charge</u>. If the Borrower shall fail to make any payment on the Loan as and when due, and such failure shall continue for a period of not less than 15 days, the Borrower shall pay to the Lender, in addition to all other amounts due and owing under this Agreement, an amount equal to 5% of the amount of the delinquent payment on the Loan, whichever is less.

14. <u>NSF Check Charge</u>. The Borrower shall pay to the Lender, in addition to all other amounts due and owing under this Agreement, the amount of $20.00, plus any actual expenses incurred by the Lender in connection with any check or draft that is not honored because of insufficient or uncollected funds or because no such account exists.

15. <u>Manner of Payment</u>. All payments of principal and interest due under the Loan shall be payable in lawful money of the United States of America at the offices of the Lender, at the address given in section 19 of this Agreement, or at such other place as the holder of this Agreement may designate in writing to the Borrower. If any payment shall become due on a Saturday, Sunday or business holiday, such payment shall be made on the next succeeding business day and such extension shall be included in computing any interest in respect of such payment.

16. <u>Restrictions on Interest Rate</u>. If, at any time, the applicable interest rate is deemed by any competent court, agency, or board to exceed the maximum rate of interest permitted by any applicable law, then, for such time as the applicable interest rate would be deemed excessive, this Agreement shall bear interest at the maximum rate of interest permissible under such applicable law, but thereafter, the former applicable interest rate shall be reinstated.

17. <u>Rights of Assignee</u>. This Agreement may be assigned or sold by Lender at any time without notice to the Borrower. The holder of this Agreement is entitled to all of the benefits of and the Collateral (if any) pledged as security for payment of the Loan, and any and all other debts, obligations or liabilities of the Borrower to the Lender.

6

18.   Waiver of Notice. The Borrower waives demand, presentment, protest, notice of dishonor or default, notice of acceleration or intent to accelerate, and any other notice or demand of whatsoever kind or nature in connection with this Agreement.

19.   Addresses for Payments, Notices. All payments on the Loan, and all notices required or permitted to be given by the Borrower to the Lender shall be given to:

> Preferred Capital Funding – Nevada, LLC
> 368 W. Huron, Suite 4S
> Chicago, IL 60654

All notices required or permitted to be given by the Lender to the Borrower shall be given to:

> Kenny Clark



20.   Choice of Law. This Agreement has been made in and shall be construed in accordance with and governed by the internal laws of the State of Nevada.

21.   Consent to Service of Process, Venue. TO THE EXTENT THAT NEITHER PARTY ELECTS ARBITRATION PURSUANT TO SECTION 23 BELOW, THE UNDERSIGNED HEREBY AGREES THAT ALL ACTIONS BETWEEN THE PARTIES WILL ONLY BE FILED AND HEARD AT A FEDERAL, STATE OR LOCAL COURT LOCATED WITHIN DUPAGE COUNTY, ILLINOIS AND WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS HEREUNDER, AND AGREES AND CONSENTS THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE UPON THEIR ATTORNEY HEREIN OR, BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED, ADDRESSED THERETO AT THE ADDRESS LISTED IN SECTION 19, ABOVE, AND SUCH PROCESS SHALL BE DEEMED TO HAVE BEEN GIVEN FIVE (5) DAYS AFTER THE SAME SHALL HAVE BEEN SO MAILED.

22.   Severability. Should any provision of this agreement be found to be void or unenforceable for any reason, all parties agree that all remaining provisions of this Agreement will remain in full force and effect.

23.   **DISPUTE RESOLUTION BY BINDING ARBITRATION**

---

#### PLEASE READ THIS CAREFULLY.  IT AFFECTS YOUR RIGHTS.

This Agreement provides that you **give up your right** to participate in a **trial by jury** or to participate in a **class action**.

This Agreement also provides that you or Lender may elect to resolve any dispute by **binding arbitration**.

---

> In arbitration, you **give up your right to go to court** to assert or defend your rights.  Your rights will be determined by a **neutral arbitrator** and **not** a judge or jury.
>
> In arbitration, you are entitled to a **fair hearing, but** the arbitration procedures are **simpler and more limited than rules applicable in court**.  Among other things, your right to conduct **discovery** or to **appeal** may be **limited or unavailable** in arbitration.
>
> Arbitrator decisions are as enforceable as any court order and are subject to **very limited review** by a court.

24.    **Claims Covered.**  This agreement ("Arbitration Provision") is intended to be broadly interpreted.  It is intended to cover all claims, controversies and disputes between you and Lender, including but not limited to:

- all claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory;
- all claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising);
- all claims that are currently the subject of purported class action litigation in which you are not a member of a certified class; and
- all claims that may arise after the termination of this Agreement.

25.    **Lawsuits; Waiver of Jury Trials and Class Actions.**  You or Lender may bring an individual action in court for any claim or dispute that is within the scope of that court's jurisdiction, including the collection of unpaid sums by you or your attorney.  **HOWEVER, YOU AND LENDER AGREE THAT, BY ENTERING INTO THIS AGREEMENT, YOU AND LENDER ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION.**

26.    **Electing Arbitration.**  Within 60 days after being served with process, a defendant in a lawsuit may elect to arbitrate the dispute by making a motion or request in court to compel arbitration of any claim brought as part of the lawsuit.  However, Lender will not elect arbitration of any claim brought in a small claims court (or the equivalent), so long as the claim remains in that court, is made solely on behalf of an individual or joint account holder, and is not made as part of a class action, private attorney general action, or other representative or collection action.  In addition, Lender will not elect arbitration of any claim you have asserted in any lawsuit against Lender on or prior to January 31, 2002.

27.    **Initiating Arbitration.**  As an alternative to filing suit in court, you or Lender may initiate an arbitration in accordance with the terms of this Section.  A party who intends to initiate arbitration pursuant to this Section must first send to the other party, by certified mail, a written Notice of Dispute ("Notice").  The Notice to Lender must be addressed to: Preferred Capital Funding, 368 W. Huron, Suite 4S, Chicago, Illinois 60654 ("Notice Address").  The Notice to you shall be mailed to your last known billing address.  The Notice must (a) describe the nature and basis of the claim or dispute, and (b) set forth the specific relief sought ("Demand").

        If you and Lender do not reach an agreement to resolve the claim within 30 days after the Notice is received, you or Lender may initiate an arbitration proceeding.  During the arbitration, the amount of any settlement offers made by you or Lender shall not be disclosed to the arbitrator until after the arbitrator determines the amount, if any, to which you or Lender is entitled.

8

You and Lender agree to follow the AAA Rules (as defined below) to initiate arbitration. If you initiate arbitration, you must mail to Lender any notice required by AAA to the Notice Address provided above. If Lender initiates arbitration, Lender will mail to you any notice required by AAA to your last known billing address.

28.      **Costs of Arbitration.**  Except as otherwise provided for herein, if you seek damages of $75,000 or less, Lender will pay all AAA filing, administration and arbitrator fees for any arbitration brought in accordance with the terms of this Arbitration Provision.  If, however, the arbitrator finds that either the substance of your claim or the relief sought in the Demand is frivolous or brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)), then the payment of all filing, administration and arbitrator fees will be governed by the AAA Rules.  In such case, you agree to reimburse Lender for all monies previously disbursed by Lender that are otherwise your obligation to pay under the AAA Rules.  In addition, if you seek more than $75,000 in damages, the payment of all fees will be governed by the AAA Rules.

29.      **Limited Rights in Arbitration.**  In arbitration, rights that you and Lender may have had if the claim had been resolved in court, including the right to conduct discovery or to appeal, may be limited or unavailable.

30.      **Arbitration Rules and Procedures.**  All arbitrations will be administered by the American Arbitration Association ("AAA").  The arbitration will be governed by the AAA's Commercial Arbitration Rules, Consumer Due Process Protocol, and Consumer Debt Collection Due Process Protocol (collectively, "AAA Rules"), as modified by this Agreement.  The AAA Rules are available: (a) online at www.adr.org; (b) by calling the AAA at 1-800-778-7879; and (c) by writing to the AAA at American Arbitration Association, 1633 Broadway, 10th Floor, New York, NY 10019.  The arbitrator is bound by the terms of this Agreement.

Unless you and Lender agree otherwise, any arbitration hearings will take place in the county (or parish) of your billing address.  If your claim is for $10,000 or less, the parties agree that you may choose whether the arbitration will be conducted solely on the basis of documents submitted to the arbitrator, through a telephonic hearing, or by an in-person hearing as established by the AAA Rules.  If your claim exceeds $10,000, the right to a hearing will be determined by the AAA Rules.

31.      **Available Relief and Remedies.**  The arbitrator may award any form of individual relief – including statutory and punitive damages, injunctions, and attorneys' fees – that a court of competent jurisdiction could award under applicable law.

32.      **Alternate Payment; Attorney Premium.**  If you initiate arbitration and the arbitrator both finds in your favor on the merits of your claim and issues you an award that is greater than the value of Lender's last written settlement offer made before an arbitrator was selected, then Lender will:

- pay you the amount of the award or $10,000, whichever is greater ("the alternative payment"); and
- pay your attorney, if any, twice the amount of your reasonable attorneys' fees, and reimburse any expenses (including expert witness fees and costs) that your attorney reasonably accrues for investigating, preparing, and pursuing your claim in arbitration ("the attorney premium").

If Lender did not make a written offer to settle the dispute before you initiated arbitration, you and your attorney will be entitled to receive the alternative payment and the attorney premium if the arbitrator awards you any relief on the merits.  The arbitrator may make rulings and resolve disputes as to the payment and reimbursement of fees, expenses, and the alternative payment and the attorney premium at any time during the preceding and upon request from either party made within 14 days of the arbitrator's ruling on the merits.

9

The alternative payment and the attorney premium are available only if you initiate arbitration in accordance with the terms of Section 27.

33.      **Attorneys' Fees.**  The right to attorneys' fees and expenses discussed in Section 32 supplements any right to attorneys' fees and expenses you may have under applicable law.  If you would be entitled to a larger amount under the applicable law, the provisions in Section 32 do not preclude the arbitrator from awarding you that amount.  However, you may not recover duplicative awards of attorneys' fees or costs.

34.      **Judgment, Enforcement, Finality, and Appeal.**  Regardless of the manner in which the arbitration is commenced and conducted, the arbitrator shall issue a reasoned written decision sufficient to explain the essential findings and conclusions on which the award is based.  The arbitrator's decision will be final and binding after fifteen days unless you or Lender seek an appeal of the award by making a written request to AAA.  The appeal panel, which will consist of three arbitrators, will consider all factual and legal issues anew, will conduct the appeal in the same manner as the initial arbitrator, and will make decisions based on the vote of the majority.  The panel's decision will be final and binding.  An award in arbitration will be enforceable by any court having jurisdiction.

35.      **Waiver, Survival, and Severability.**  If you or Lender do not elect or initiate arbitration or otherwise enforce this Arbitration Provision in connection with any particular claim, you or Lender will not waive any rights to require arbitration in connection with that or any other claim.  This Arbitration Provision shall survive: (a) suspension, termination, revocation, closure, or changes of this Agreement, your account, and your relationship with Lender; (b) the bankruptcy or insolvency of any party; and (c) any transfer of your account, or any amounts owed on your account, to any person or entity.  Except as provided in the last sentence of Section 36, if any portion of this Arbitration Provision is deemed invalid or unenforceable, the remaining portions of this Arbitration Provision shall nonetheless remain valid and in force.  In the event of a conflict or inconsistency between this Arbitration Provision and the other provisions of this Agreement or any prior agreement, this Arbitration Provision shall govern.

36.      **No Class Actions, Representative Proceedings, Consolidation, or Joinder of Parties.**  The arbitrator may award injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim.  **YOU AND LENDER AGREE NOT TO FILE, JOIN OR OTHERWISE PARTICIPATE IN ANY CLASS ACTION OR REPRESENTATIVE PROCEEDING AGAINST THE OTHER PARTY.  YOU AND LENDER AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER <u>ONLY</u> IN YOUR OR ITS INDIVIDUAL CAPACITY, AND <u>NOT</u> AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS ACTION OR REPRESENTATIVE PROCEEDING.**  Further, unless both you and Lender agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding.  If any provision of this Section is found to be unenforceable, then the entirety of this Arbitration Provision shall be null and void.

37.      **Opting Out of Arbitration Provision.**  Notwithstanding any provision in this Agreement to the contrary, if you do not wish to be bound by this Arbitration Provision, you must notify Lender within 30 days of the date you sign this Agreement by sending written notification to Lender at the Notice Address provided above.  Your written notification must include your name and billing address, as well as a clear statement that you do not wish to resolve disputes with Lender through arbitration.  Your decision to opt out of the Arbitration Provision will have no adverse effect on your relationship with Lender.  If Lender makes any future change to this Arbitration Provision (other than a change to the Notice Address) during the term of this Agreement, you may reject any such

10

change by sending Lender written notification, within 30 days of receiving the change, to the Notice Address provided above. If you do not opt out of the Arbitration Provision within 30 days of signing this Agreement, by rejecting any future change to this Arbitration Provision, you agree that you will arbitrate any dispute between us in accordance with this Arbitration Provision.

38.     **Federal Arbitration Act.** To the extent that this Agreement involves a transaction in interstate commerce, the Federal Arbitration Act governs the interpretation and enforcement of this Arbitration Provision.

39.     **Captions.** The captions of this Arbitration Provision are inserted for convenience of reference only and in no way define, describe or limit the scope or intent of this Arbitration Provision or any of the terms hereof.

40.     **Acknowledgement.** You acknowledge that this Arbitration Provision is the foundation of the lending relationship and that no funds would have been loaned if you had not agreed to these terms.

41.     **Refinancing Option.** Borrower understands that Lender is under no obligation to refinance or provide additional loans after this one. Borrower also understands that if borrower chooses to take a subsequent / additional loan from lender, that lender may choose to refinance all of borrower's previous outstanding loans with lender, if any, into the new loan. Borrower understands that this refinancing of the old loans into the new loans does create a "compounding effect" because of the old loans interest becomes part of the principal in the new loan.

42.     **Electronic Signature.** I have agreed to accept the option of using an electronic signature in the execution of this document and any subsequent document(s) relating to this specific transaction. I also maintain the option to place my signature upon the paper version of this document as my original signature.

This Promissory Note has been executed in the State of Nevada on May 27, 2016.

BORROWER:
Name:           Kenny Clark
Address:

Telephone:
Social Security #:

11

**EXHIBIT A**

**ACKNOWLEDGMENT OF ASSIGNMENT OF PROCEEDS**

I, Bobby Saadian of Wilshire Law Firm, PC, attorney for Kenny Clark in which the Borrower is entitled to receive proceeds from the claim(s) / lawsuit(s) listed on the attached promissory note and arising out of an incident occurring on or about date unknown and against Brent David Adams, Kenny Clark, et al. v. National Football League and NFL Properties, LLC, successor-in-interest to NRL Properties, Inc *and/or other potentially responsible parties* (the claim / lawsuit), hereby acknowledge and agree to abide by this Assignment of Proceeds to pay to the below Lender, as per their final pay-off statement, and upon the disbursement of any proceeds of the case and after deduction of attorney's fees and costs, all amounts due and owing under the Promissory Note under loan number, #2850416A, attached hereto and any additional notes owed to Lender. I shall make payable and mail a check to Preferred Capital Funding – Nevada, LLC at 211 N. Buffalo Dr., Ste. C , Las Vegas, NV 89145, out of borrower's portion of the proceeds of his/her claim. I further represent that to the best of my knowledge that the borrower has not taken any other loans or advances on this claim from any party other than Preferred Capital Funding – Nevada, LLC., and loan(s) with Peachtree that are being paid off with part of the proceeds from this transaction.

Dated: 05|25|16

Wilshire Law Firm, PC

By:

_____

Mr. Bobby Saadian

CREDITOR'S TRUTH-IN-LENDING DISCLOSURES TO CONSUMERS (FEDERAL DISCLOSURE BOX)

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly Rate. | FINANCE CHARGE The dollar amount the credit will cost me. | AMOUNT FINANCED The amount of credit provided to me or on my behalf. | TOTAL PAYMENTS The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 39.95% | E 109,862.50 | $275,000.00 | $384,862.50 |

*THE ANNUAL PERCENTAGE RATE disclosed above:

[X] is a fixed rate for the life of my loan.

[ ] may change. The interest rate in my variable interest rate demand loan will change (increase or decrease) if the Prime Rate of The Federal Reserve Bank posted by it from time to time ("Prime Rate") changes (either up or down) at any time during the term of my loan. This loan will be subject to an interest rate equal to ____ percentage points above this Prime Rate, which presently is ____%. Any change in the Prime Rate will result in an increase or decrease in the total amount due at maturity. However, in spite of these provisions, I understand that the interest rate on my loan in any event will not fall below ____ % or exceed ____% during the life of my loan.

My payment schedule will be:

| Number of Payments | Amount of Payment | When Payments are Due |
|---|---|---|
| 1 | $ 384,862.50 | 05/27/2017 |

[ ] monthly      [ ] quarterly      [ ] semi-annually      [X] annually beginning 05/27/2017

[X] If checked here, my loan is payable on demand and all disclosures are based upon an assumed maturity of one year.

Security: I am giving a security interest in:

[ ] The goods or property being purchased.

[ ] Type(s) of other property:   [ ] Motor Vehicles  [ ] Mobile  [ ] Homes Recreational  [ ] Vehicles  [ ] Boats

[ ] Securities  [ ] Deposit Accounts  [ ] Certificates of Deposit  [ ] Life Insurance Policies

[ ] _____
    (Other Type(s) -- SPECIFY)

Collateral securing other loans with you may also secure this loan, 2850416A.

Filing Fees: $_____      Non-Filing Insurance $_____

Late Charge: If a payment is more than 10 days late I will be charged 5% of the late amount.

Prepayment: If I pay off early. I will not have to pay a penalty.

I can see my contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

E means an estimate

## ACKNOWLEDGEMENT OF RECEIPT OF DISCLOSURES

We affirm that the above Contract was complete, with all blanks filled-in, before we signed below and that one of us that was a primary Debtor received a copy of it. Witness our Hand(s) and Seal(s), this sealed instrument being signed and delivered on the date first above written. Each of us adopts as his seal the word ("Seal") appearing beside or near his signature below.

WITNESS: _____      _____      Debtor:  Kenny Clark

Samantha Clark (May 27, 2016)      Kenneth Clark (May 27, 2016)

WITNESS: _____      Debtor: _____

SBL-218-B (12-09)      **ORIGINAL**

**From:** Weiss, Sol [mailto:sweiss@anapolweiss.com]
**Sent:** Tuesday, October 31, 2017 4:12 PM
**To:** Jody Pravecek <jody@pcfcash.com>; Alejandra Barbosa <Alex@pcfcash.com>
**Cc:** TerriAnne Benedetto <TBenedetto@seegerweiss.com>; Brian Garelli <brian@pcfcash.com>
**Subject:** RE: Kenny Clark (Intake # 87248)

I do not wish to engage in a protracted email battle. Attached is a copy of our contingent fee agreement signed February 14, 2012 . Ken has been our client continually since that time.  Another law firm tried to "poach" our client but Ken elected to remain with our firm. So according to your documentation we are not his subsequent lawyer and our refusal to sign your acknowledgement could not be  a default . However so as not prejudice an innocent client by this email Anapol  agrees not to release any award he receives under $385,000, less attorneys' fees  until the issue of your "lien" is resolved or Judge Brody rules that your agreements are unenforceable. To be sure a number of lenders charging 39.95% were the subject of the September 19th hearing before Judge Brody. I will be leaving the country tomorrow and will be back in my office on November 12th.

**From:** Jody Pravecek [mailto:jody@pcfcash.com]
**Sent:** Tuesday, October 31, 2017 3:15 PM
**To:** Weiss, Sol <sweiss@anapolweiss.com>; Alejandra Barbosa <Alex@pcfcash.com>
**Cc:** tbenedetto@seegerweiss.com; Brian Garelli <brian@pcfcash.com>
**Subject:** RE: Kenny Clark (Intake # 87248)

Dear Mr. Weiss,

I think there is some confusion here.  Please let me clarify.   First, we are fully aware of the issue before Judge Brody involving RD Legal Funding.  We are not a legal funder like they are.  We operate in Nevada as a fully licensed lender and are fully regulated by the Nevada Department of Financial Institutions.  Our loan agreement had to be pre-approved by the State of Nevada before we could use it there.   The State of Nevada also audits us annually to make sure we are complying with all state and federal lending laws and we have passed all 10 annual inspections with flying colors.

With regard to your client, Kenny Clark,  he closed his loan at our Nevada office in person so there is no jurisdictional issue here.  We also were presented an opinion from one of your client's treating physicians just prior to closing that he was competent to close our loan.  We are fully confident that our transaction is 100% legal.  We also have an article 9 UCC security interest in the case proceeds pursuant to our loan agreement.

You are correct that you have no legal requirement to execute our acknowledgment.  This does however trigger a default under our loan agreement.  We were trying to avoid this as it is very bad for your client.  It triggers a default interest rate which adds 5% to the contract rate.  It also triggers the attorney's fees provision in our contract as we will now be required to obtain legal counsel to sue your client under the promissory note and foreclose on our security interest.  We prefer to avoid that but you are leaving us with no choice.

Before we head down this path I will have the company's founder Brian Garelli call you to discuss this further.  Brian has been a trial attorney in Illinois for over 27 years.  He has built Preferred Capital to be the only lender recommended by the Trial Lawyers Association in virtually every state we operate in.   Please take his call so we can figure this out and do what is best for your client.

Thank you for your time and attention to this matter.


Jody B. Pravecek, Esq.
Associate General Counsel



368 W. Huron Street, Suite 4S
Chicago, Illinois 60654
312-212-5000 Telephone
312-212-5099 Facsimile
Jody@pcfcash.com


---

**From:** Weiss, Sol [mailto:sweiss@anapolweiss.com]
**Sent:** Tuesday, October 31, 2017 1:30 PM
**To:** Alejandra Barbosa
**Cc:** Jody Pravecek; tbenedetto@seegerweiss.com
**Subject:** RE: Kenny Clark (Intake # 87248)

This is the third email in addition one in the US mail regarding a "loan" or "advance " to Kenny Clark. I see no reason why this firm should sign any document . As you should know the whole issue regarding third party funding is before Judge Brody. As co-lead counsel I urge you to reduce the interest or loan repayment to confirm with appropriate rates.

---

**From:** Alejandra Barbosa [mailto:Alex@pcfcash.com]
**Sent:** Tuesday, October 31, 2017 2:08 PM
**To:** Weiss, Sol <sweiss@anapolweiss.com>
**Cc:** Jody Pravecek <jody@pcfcash.com>
**Subject:** RE: Kenny Clark (Intake # 87248)

Hello,

Please review the attached, in regards to Kenny Clark.

Thank you for your time.


*Alex Barbosa*
*Collections*



368 W. Huron Street, Suite 4S
Chicago, Illinois 60654
312-212-5000 Telephone
312-212-5099 Facsimile
alex@pcfcash.com

---

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

---

---

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

---