# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>    Plaintiffs,<br><br>    v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>    Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**CO-LEAD CLASS COUNSEL'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO (1) DIRECT CLAIMS ADMINISTRATOR TO WITHHOLD ANY PORTION OF CLASS MEMBER MONETARY AWARDS PURPORTEDLY OWED TO CERTAIN THIRD-PARTY LENDERS AND CLAIMS SERVICES PROVIDERS, AND (2) DIRECT DISCLOSURE TO CLAIMS ADMINISTRATOR OF EXISTENCE OF <u>CLASS MEMBER AGREEMENTS WITH ALL THIRD PARTIES</u>**

In accordance with the Court's Order of November 15, 2017, allowing for the filing of an omnibus reply, *see* ECF No. 8929, Co-Lead Class Counsel ("Class Counsel") respectfully submits this Reply Memorandum in further support of the Motion to (1) Direct Claims Administrator to Withhold Any Portion of Class Member Monetary Awards Purportedly Owed to Certain Third-Party Lenders and Claims Services Providers, and (2) Direct Disclosure to the Claims

Administrator of Existence of Class Member Agreements with All Third Parties [ECF No. 8470] ("Motion to Direct") and in opposition to the following responses[1]:

(1)     Memorandum of RD Legal Funding, LLC; RD Legal Finance, LLC; RD Legal Funding Partners, LP; and Roni Dersovitz in Response to Motion to Direct [ECF No. 8910];

(2)     Response of Walker Preston Capital Holding, LLC Submitted for the Limited Purpose of Opposing on Jurisdictional Grounds Co-Lead Class Counsel's Motion to Direct [ECF No. 8932-2];

(3)     Memorandum of Peachtree Funding Northeast, LLC and Related Entities in Response to Co-Lead Class Counsel's Motion to Direct [ECF No. 8939];

(4)     Memorandum of Cash4Cases, Inc., Atlas Legal Funding, LLC, Atlas Legal Funding I, LP, Atlas Legal Funding II, LP and Atlas Legal Funding III, LP in Opposition to Co-Lead Counsel's Motion to Direct [ECF No. 8940];

(5)      "Non-Party/Objector" Cambridge Capital Group, LLC's Response and Opposition to the Court's Jurisdiction to Entertain Co-Lead Class Counsel's Motion to Direct [ECF No. 8941];

(6)     Response of Nonparty Justice Funds in Opposition to Co-Lead Class Counsel's Motion to Direct [ECF No. 8942];

---

[1]  Some respondents also have moved to intervene for the limited purpose of opposing Class Counsel's motion on jurisdictional grounds. *See* ECF No. 8932 (Walker Preston Capital Holdings, LLC); ECF No. 8940 (Cash4Cases and Atlas entities).  In response to Thrivest Specialty Funding, LLC's letter requesting permission to file a motion to intervene [ECF No. 8876], however, the Court designated Thrivest as an objector with the ability to respond to Class Counsel's Motion to Direct.  *See* ECF No. 8879.  Therefore, Class Counsel assumes that the other third parties will be granted similar designations in connection with their Rule 24 motions.  At any rate, Class Counsel does not oppose such designations.  Accordingly, Class Counsel does not address the intervention motions but, rather, only those respondents' underlying substantive responses.

(7)     Memorandum of Law of Objector Thrivest Specialty Funding, LLC in Opposition to Class Counsel's Motion to Withhold Portions of Class Members' Monetary Awards [ECF No. 8943];

(8)     Legacy Pro Sports, LLC and Brandon Siler's Response in Opposition to Co-Lead Class Counsel's Requested Relief in Its Motion Filed on October 23, 2017 [ECF No. 8825]; and

(9)     Response of NonParty Case Strategies Group in Opposition to Co-Lead Class Counsel's Motion to Direct [ECF No. 8933].

Each of these third-party entities subject to the Motion to Direct lays claim to portions of the Class Members' potential future monetary awards, whether a specific amount, in the case of the funders/lenders/asset purchasers/assignees ("assignees"),[2] or a percentage thereof, in the case of the claims services providers. Some refused to respond to discovery requests that were propounded upon them pursuant to the Court's Order of July 19, 2017 [ECF No. 8037], such that Class Counsel has been unable to determine the identities of the involved Class Members, the terms of the agreements, and the solicitations and other communications with Class Members in

---

[2] Class Counsel has been clear in the several briefs filed in this District and in the Southern District of New York related to RD Legal that it entered into "assignments" with Class Members for the putative purchase of portions of their monetary awards, which are not permitted under the Settlement Agreement. Because, however, RD Legal engages in a game of semantics by making much of Class Counsel's occasional use of the phrase "loans packaged as assignments," *see* ECF No. 8910, at 9, contending that the instruments cannot be both loans and assignments, to avoid any confusion, Class Counsel refers herein to RD Legal and the others who provided funds to Class Members under instruments labeled as assignments, as "assignees." RD Legal's other "gotcha" argument concerning Class Counsel's reference to liens and lienholders in the Motion to Direct is similarly unavailing. *See* ECF No. 8910, at 8; *see also* ECF No. 8943 (Thrivest), at 10 n.7. The fact that Class Members sometimes identified lenders and assignees on their Claim Forms in the section requesting lien and lienholder information does not mean that the assignments fall under the Settlement Agreement's definition of "Liens."

connection with the agreements.[3]  These third parties affirmatively chose to link their alleged entitlements to future payments to the res over which this Court presides – the Monetary Award Fund.

Specifically, as to the assignees that are subject to the Motion to Direct, rather than utilizing conventional loan instruments, and charging commercially reasonable rates, the assignees structured the instruments as assignments of portions of Class Members' potential future monetary awards.  The question of whether the Settlement Agreement by its terms prohibits assignments is currently pending before this Court in the context of the briefing relating to the RD Legal entities. *See* ECF Nos. 8409, 8434-35, 8438, 8457-59, 8913, 8920.  The issue of the validity of assignments, though, is not unique to RD Legal.  In order to prevent distributions of portions of Class Members' potential future monetary awards based upon putative assignments that the Court may ultimately determine are void, Class Counsel filed the instant Motion to Direct.[4]

---

[3]  The entities that have refused to respond to discovery in whole or in part are Cash4Cases, Inc., Case Strategies Group ("CSG") (formerly, NFL Case Consulting, LLC), Justice Funds, the Peachtree entities, Pravati, Thrivest, Top Notch, Ludus, and Walker Preston Capital.  *See* Reply Declaration of Christopher A. Seeger in Further Support of the Motion to Direct, dated November 30, 2017 ("Seeger Reply Decl."), at ¶¶ 14-15.  Nevertheless, Class Counsel possessed some contracts between Class Members and Justice Funds, Cash4Cases, and CSG, because they were produced by other entities upon which Class Counsel propounded discovery requests or provided by Class Members to Class Counsel.  Peachtree, Thrivest, Ludus and Walker Preston Capital produced some information, but not all of the agreements.  *Id.* at ¶ 14.

[4]  RD Legal's funding terms and actual agreements are already part of the record before the Court. *See* ECF Nos. 8301-9, 8301-10.  Below is a listing of the terms of some of the other assignees that are included in the Motion to Direct:

- **Cash4Cases** - "Purchase and Sale Agreement" with Annualized Percentage Fee of 42.41%, and itemized fees of $4,966 on advance of $36,406, and providing "[b]y entering into this Agreement, Seller hereby unconditionally and irrevocably grants, assigns, transfers and conveys all or a portion of the Seller's portion of Proceeds[]." *See* Seeger Reply Decl. at Ex. A at NOVA_00069;

Analogously, rather than charging a flat fee, or an hourly rate for their "services," the claims services providers boldly decided to frame their contracts for services such that they are

- **Justice Funds** - "Sale and Assignment Agreement and Repayment Terms," with annualized percentage of 39%, and itemized fees of $4,410 on $25,000 advance and providing for an "Immediate Assignment," if allowed by "applicable law," under which contingency the Class Members "sell and assign to Justicefunds … all of my right, tile and interest in and to the Purchased Proceeds" or a "Springing Sale and Assignment," if an Immediate Assignment is impermissible, under which contingency, the Class Member "sell[s] and assign[s] to Justicefunds and Justicefunds hereby purchases from [the Class Member] all of [his] right, title and interest in and to the Purchased Proceeds at the instant such proceeds come into being …" *Id.* at Ex. B, at NOVA_00006, _00004;

- **Atlas** – "Funding Agreement," under which the Class Member "[i]n consideration for the  receipt of the sum of … ($30,000), from ALF, [was] selling and assigning to ALF all of [his] right title and interest in, to and under an interest equal to the Purchase Price" of $35,250, "together with the asccrued use fee" of "2.50% compounded monthly," which equates to an APR of 58.02% for the first year, and included fees of $5,250.  *See* ECF No. 8940, at 57-58; and

- **Cambridge** - "Assignment, Sale, Springing Assignment & Equitable Lien Agreement," under which, for example, the Class Member received $7,000 per month, and would owe $136,600, if the payoff occurred on or before the one year anniversary, as per the agreement dated April 9, 2016.  Under the least financially unfavorable scenario, the Class Member would have received $84,000 after one year.  As provided in the agreement, it was possible that the Class Member could have received only one or two monthly payments, and would still have owed Cambridge $136,600.   After the one year anniversary, he owed Cambridge $295,400.  *See* ECF No. 8371-20.  *See also* ECF Nos. 8371-18, -19 (regarding other agreements into which this Class Member entered with Cambridge).  This Class Member clearly did not understand the agreements into which he entered as per his text message exchange with his attorney, Tim Howard, who was also a former principal of Cambridge: "Send me our agreement that support Your statement that every $10k means I have to pay back $26k for the year.  That is no where in my paper work nor did we verbally discuss these numbers."  ECF No. 8371-28, at 3.

Presumably, the Court's ruling on the RD Legal issue of assignability will apply not only to the assignees included in the proposed Order submitted with the Motion to Direct, but also to any others who structured their agreements with Class Members as assignments, as to many of which Class Counsel is still following up to obtain discovery.

purportedly owed contingent percentages (10% to 15%) of the Class Members' potential future monetary awards in exchange for those services, which services could easily be performed by the individual counsel to whom the claims services providers refer Class Members for retention under a separate retainer agreement (or by Class Counsel). *See* ECF Nos. 7812-2, 7812-3, 7812-18 to 7812-21. Indeed, those services are being rendered by counsel as to all Class Members who have not entered into agreements with claims services providers. Akin to the assignees' assignments, the validity of these types of arrangements may be amenable to determination on a global basis, and implicate various objective issues: whether the arrangements between the non-lawyer claims services providers and the lawyers to whom they refer Class Members constitute improper fee-sharing or "running"[5] and whether that invalidates the agreements with Class Members, or whether the claims services providers are engaging in the practice of law without a license.[6] Although the

---

[5] In light of the fact that these law firms received the referrals of these Class Members *from* Case Strategies Group (formerly known as NFL Case Consulting, LLP) ("CSG"), CSG's contention that "none of these attorneys have raised any issue on behalf of their clients related to the claims management services provided by CSG or the fees charged for those services" carries no weight whatsoever. ECF No. 8933, at 7 n.3.

[6] Notably, several of the respondents have cited *Allapattah Services v. Exxon Corp.*, No. 91-986, 2004 U.S. Dist. LEXIS 27979 (S.D. Fla. Dec. 14, 2004), for the proposition that this Court allegedly does not have jurisdiction over these third parties. *See, e.g.,* ECF No. 8939 (Peachtree), at 5-6. However, a later decision of that court actually determined that the claims services provider involved with class members in that case was engaged in the unauthorized practice of law, and that its contracts were illegal, void and unenforceable. *See* Seeger Reply Decl. at Ex. C (*Allapattah Services v. Exxon Corp.*, No. 91-986, at ECF No. 3207, at 2, 11 (S.D. Fla. Oct. 24, 2006)). *See also* Seeger Reply Decl. at Ex. D (Legacy Pro Sports' ("LPS") President, Brandon Siler, advising Class Member and potential client about what would happen if Class Member hired LPS's recommended counsel and decided to fire her if he did not immediately obtain a Qualifying Diagnosis, noting "Talked to her [lawyer to whom LPS refers its clients for separate retention] and she shares my same response...if you fire an attorney at any time they have to prove Quantum meruit...which means they have to prove what work they did for the client...if you don't test out there's no litigation therefore they haven't gotten to the point where they are doing work! Therefore they won't be entitled to anything. I already knew that but wanted to hear it from her mouth before I said it to you!").

Claims Administrator has represented that none of the law firms affiliated with the claims services providers has yet filed claims, *see* ECF No. 8470-2, at ¶ 5, Class Counsel included the claims services providers as subjects of the Motion to Direct in order to ensure that monies are not paid to them pending Class Counsel's further investigation and, if necessary, a judicial determination of the validity of their contracts.[7]

> ### A.   This Court Has Already Determined that It Has Jurisdiction Over Certain Third Party Entities Who Have Affirmatively Inserted Themselves into This Action and Are Acting As Interlopers

Previously, the issue of this Court's jurisdiction over certain of the third-party entities opposing the Motion to Direct was raised in the context of motions to compel discovery.[8]  In ruling on those motions, this Court determined, at least implicitly, that it has jurisdiction over parties who

---

[7] Class Counsel had hoped to have received discovery responses from CSG before embarking on this briefing, but CSG still has not complied with the Court's Order of September 12, 2017 that directed it to "produce a list of all Retired NFL Players with whom those entities communicated … a list of all Retired NFL Players with whom those entities entered into agreements related to the Settlement … [and] a copy of any agreement related to the Settlement and entered into with a Retired NFL Player" by September 15, 2017.  ECF No. 8366; *see* Seeger Reply Decl. ¶ 15.  CSG's resistance continued even after the Court denied its motion to certify questions for a 28 U.S.C. § 1292(b) interlocutory appeal on October 17, 2017 [ECF No. 8461].  *Id.*  The Court should either strike or refuse to consider CSG's opposition to the instant motion until it cures its dereliction of the Court's Order.

[8]  In the context of the opposition to the Motion to Direct, some have also alleged a lack of subject matter jurisdiction because there is no case or controversy under Article III of the United States Constitution.  *See* ECF No. 8910 (RD Legal), at 10-11; ECF No. 8943 (Thrivest), at 15-16; ECF No. 8932-2 (Walker Preston), at 5-8; ECF No. 8933 (CSG), at 5-7; ECF No. 8941 (Cambridge), at 4-7; ECF No. 8940 (Cash4Cases and Atlas), at 25-27.  That argument is absurd.  There is plainly a case or controversy because of the need to address the validity of the putative assignments so that the Claims Administrator knows whether they should be honored in connection with discharging his duties and obligations.  Furthermore, because the vast majority, if not all, of the assignees and claims services providers required an individually-retained attorney's acknowledgement of the assignment or claims service agreement, similarly the individually-retained lawyers need to know what their obligations are in terms of whether or not to pay any portions of their clients' monetary awards to the third parties.  This need for, at a minimum, declaratory relief alone supports the existence of a case or controversy.

entered into contracts with Class Members and, as such, ordered them to respond to discovery requests, without requiring Class Counsel to serve subpoenas pursuant to Fed. R. Civ. P. 45. *See* ECF Nos. 8466 (Order compelling Cambridge Capital Group to respond to discovery requests), 8366 (Order compelling, in part, CSG to respond to discovery requests); *see also* ECF No. 8461 (Order denying CSG's motion to certify for interlocutory appeal controlling question of whether Class Counsel was required to service Rule 45 subpoenas). The Court's repeated determinations that it has jurisdiction over these types of third parties is now "law of the case."[9]

Nevertheless, certain other third parties raise the same arguments that the Court already rejected and maintain that this Court lacks jurisdiction over them. *See* ECF No. 8943 (Thrivest), at 5-9; ECF No. 8932-2 (Walker Preston), at 14-15; ECF No. 8940 (Cash4Cases and Atlas), at 22-23, 35-37. Incredibly, CSG and Cambridge assert these same jurisdictional arguments again – the former in the face of its non-compliance with the Court's Order. *See* ECF No. 8933 (CSG), at 7-8 (alleging that the "Court continues to lack jurisdiction to adjudicate matters involving nonparties, including Case Strategies Group"); ECF No. 8941 (Cambridge), at 10 (contending that the "Court does not have personal jurisdiction over Cambridge Capital").

Having briefed this issue several times now, most recently in opposing the motion for protective order filed by the Preferred Capital entities, *see* ECF Nos. 8938 & 9007, Class Counsel will not belabor the point by repeating the same arguments here. Rather, Class Counsel incorporates by reference the previously-filed memoranda supporting this Court's jurisdiction over these third-party interlopers. ECF Nos. 8319, 8351, 8371, 8433. What is more, as discussed

---

[9] The law of the case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *In re Continental Airlines, Inc*., 279 F.3d 226, 232-33 (3d Cir. 2002). Courts apply the doctrine with the intention that it will promote finality, consistency, and judicial economy. *In re City of Philadelphia Litig*., 158 F.3d 711, 717-18 (3d Cir. 1998).

below, this Court's jurisdiction over the third-party objectors is not determinative of the Motion to

Direct.

      **B.**      **This Court Has Jurisdiction Over the Claims Administrator, the Class Members and Their Individually-Retained Counsel Who Will Be Directed to Take Action Pursuant to the Motion to Direct, in Addition to Jurisdiction Over <u>the Settlement Res That Is the Monetary Award Fund</u>**

      At any rate, the respondents' jurisdictional arguments are beside the point.  The instant

Motion to Direct does not implicate the issue of jurisdiction over the third party assignees and

claims services providers who oppose it because it does not ask these third parties to do anything

affirmative or to refrain from doing anything.  Rather, the Motion to Direct seeks to require the

Claims Administrator, the Class Members, and the Class Members' individually-retained attorneys

to take affirmative steps.  There is no question that this Court has jurisdiction over those who

would be ordered to take action, should the Court grant the Motion to Direct.[10]

      Specifically, the Settlement Agreement provides at Section XXVII (Continuing

Jurisdiction):

> Section 27.1.  Pursuant to the Final Order and Judgment, the Court will retain continuing and exclusive jurisdiction over the Parties and their counsel, all Settlement Class Members, the Special Master, BAP Administrator, Claims Administrator, Liens Resolution Administrator, Appeals Advisory Panel, Appeals

---

[10]  Thrivest makes further absurd arguments seeking to limit this Court's jurisdiction over it and over the issues raised in the Motion to Direct – that because Fed.R.Civ.P. 23(d) allegedly limits this Court to granting only procedural and not substantive relief, this Court's hands are tied.  *See* ECF No. 8943, at 6-7.  This Court's powers, as discussed in Class Counsel's prior briefing on the motions to compel and related motions, is much broader.  *See In re Cendant Corp. PRIDES Litig.*, 233 F.3d 188, 194-95 (3d Cir. 2000) (court presiding over class settlement "retains the ultimate responsibility for the protection of class members"; " far from serving a merely ministerial function with respect to the disposition of a class action settlement,  . . . the District Court may use its traditional powers to implement the settlement fairly and in accordance with its usual role"; "general equitable power" extends to power to modify terms of settlement itself); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 JG, 2014 WL 4966072, at *31 (E.D.N.Y. Oct. 3, 2014) (invoking All Writs Act as basis of authority to enjoin third parties dealing with class members).

Advisory Panel Consultants, and Trustee with respect to the terms of the Settlement Agreement. Any disputes or controversies arising out of, or related to, the interpretation, implementation, administration, and enforcement of this Settlement Agreement will be made by motion to the Court. In addition, the Parties, including each Settlement Class Member, are hereby deemed to have submitted to the exclusive jurisdiction of this Court for any suit, action, proceeding, or dispute arising out of, or relating to, this Settlement Agreement. The terms of the Settlement Agreement will be incorporated into the Final Order and Judgment of the Court, which will allow that Final Order and Judgment to serve as an enforceable injunction by the Court for purposes of the Court's continuing jurisdiction related to the Settlement Agreement.

(a) Notwithstanding any contrary law applicable to the underlying claims, this Settlement Agreement and the Releases hereunder will be interpreted and enforced in accordance with the laws of the State of New York, without regard to conflict of law principles.

ECF No. 6481-1, at 95.

### C.     The Motion to Direct Does Not Seek Injunctive Relief

Respondents' contentions that the motion seeks injunctive relief as to themselves border on the frivolous. *See*, *e.g.*, ECF No. 8825 (Legacy Pro Sports), at 2 ("Motion essentially seeking injunctive relief as to Legacy"), at 3 ("The Motion smacks of a request for injunctive relief. However, as to Legacy, the Motion fails to set out a basis …"); ECF No. 8943 (Thrivest), at 2 ("injunctive relief"), at 3 (feigning concern for "'red tape'" Class Members might be subjected to in the administrative process, claiming the "requested injunction … would do more harm than good."); ECF No. 8940 (Cash4Cases and Atlas), at 24 ("Seeger seeks an injunction against C4C and Atlas"). As noted above, the Motion to Direct does not seek to enjoin the respondents from taking any action; nor does it seek to compel them to take affirmative action. None of the cases cited by respondents involves a situation in which a Claims Administrator is merely being asked to *escrow* funds pending the MDL Court's decision on an aspects related to settlement implementation/claims administration, specifically, declaratory relief concerning the validity of third-party agreements with Class Members.

**D.     That Neurocognitive Impairment Is the Heart of This Litigation and Affects the Class Members to Whom This Court and Class Counsel Owe a Fiduciary Duty Is a Fact That Must Be Recognized**

Citing *Cobell v. Kempthorne*, 455 F.3d 317, 323 (D.C. Cir. 2006), Thrivest makes the head-in-the-sand argument that Class Counsel are not authorized to protect Class Members "from making poor decisions based upon faulty information *unrelated to the litigation itself*," ECF No. 8943, at 7,[11] and goes so far as to accuse Class Counsel of overstepping, *see id.* at 10 ("Class Counsel's Motion seeks relief that is beyond the scope of his duties to Class Members[.]").[12] These objections are utterly devoid of merit.

To begin with, Class Members – likely in situations that were not entirely transparent – made decisions to enter into agreements with (1) third-party assignees for assignments that are not permitted under the Settlement Agreement[13] and that were at the equivalent of usurious interest rates, and/or (2) claims services providers for 10% to 15% of their potential future monetary awards for help with paperwork involved in registering for the Settlement and filing a claim, when

---

[11]  Thrivest also makes the argument that Class Counsel is improperly trying to use Rule 23(d) to protect Class Members from "future harm after settlement awards have been disbursed." ECF No. 8943, at 6.  The harm, however, has already occurred.  Class Members entered into assignment agreements with assignees, when such are not permitted, and at the equivalent of usurious interest rates.

[12]  Thrivest even goes so far as to suggest that Class Counsel are attempting to "interfere with Class Members' ability to realize their full settlement awards." ECF No. 8943, at 6.  This ignores that pursuant to the proposed Order presented with the Motion to Direct, the Class Member would be receiving all of the monetary award to which he would otherwise be entitled, except for that portion to which the third party would lay claim, pending resolution of the issue.

[13]   Thrivest, a commercial entity, engaged in the business of providing funds to litigants, presumably, often using assignments, suggests that unsophisticated Class Members are "violat[ing] their Settlement Agreement." ECF No. 8943, at 3. That chagrin is misdirected. The age-old adage of *caveat emptor* is applicable here:  it would have behooved Thrivest to actually read the Settlement Agreement upon which it purported to base its assignment prior to advancing funds.

such services could and should be performed by the separately retained counsel that the claims services providers recommended.  These decisions were most definitely *related to the litigation*.

That would be bad enough, but Thrivest's contentions are nothing less than astounding for their complete disregard of what this litigation and the Settlement Agreement were all about in the first place.  These third parties will be paid only if and only when the Class Member obtains the monetary award, necessarily preceded by the receipt of a Qualifying Diagnosis.[14]  The Qualifying Diagnoses for the vast majority of Class Members who will recover involve neurocognitive impairment – levels of dementia and Alzheimer's Disease.  The Class Members' ability to understand with whom they were dealing and the intricacies of the agreements into which they entered cannot simply be assumed, as might be the case in a typical class action settlement involving antitrust, securities, or consumer fraud claims.  Thus, given the very composition of the Settlement Class and the criteria for relief under the Settlement Agreement, Class Counsel's duty is correspondingly heightened.[15]

---

[14]  The third parties are clearly incentivized for the Class Members to obtain Qualifying Diagnoses as soon as possible, so that the third parties receive their payments quickly.  The competing concern, though, is that if a Class Member is already neurocognitively impaired when entering into the agreement with the third party, the contract could be voidable.  As evidenced by some of the documents produced by Legacy Pro Sports, some third parties may be so incentivized for their "clients" to obtain Qualifying Diagnoses that they may even be engaging in fraudulent conduct. *See* Seeger Reply Decl. at Ex. D (text message exchange in which the principal of Legacy Pro Sports responds to a potential client noting that one would have "to have head issues" to obtain a diagnosis -- "we train you for the test brother").  It cannot be genuinely disputed that providing potential clients with assurances of being able to help them obtain Qualifying Diagnoses, when the Class Members are not impaired so as to warrant such diagnoses, is improper solicitation.

[15]  Contrary to Thrivest's baseless assertion, *see* ECF No. 8493, at 9, Class Counsel's duty to the Class Members is not limited to the pendency of the active litigation.  Class Counsel's duty to the Class continues into the claims administration period.

This is not a situation in which the Court is being asked to be overprotective.  *See O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479, 500 (N.D. Cal. 2011) (noting that "it is important that courts not be thrust into the paternalistic role of intervening to change contractual terms that the parties have agreed to merely because the court believes the terms are unreasonable" but, nevertheless, certifying a Rule 23(b)(3) class as to claims that defendant's loan rates of 90% or higher were unconscionable under California law) (citing cases).  Instead, this Motion to Direct simply recognizes that, given the underlying circumstances of this litigation and the Settlement Agreement, involving a vulnerable Settlement Class, some measure of judicial scrutiny is needed before opportunists and interlopers, like these third parties, are allowed to bite off substantial pieces of the Class Members' monetary awards.[16]

### E.    As to the Third-Party Assignees, the Motion to Direct Is Designed to Address Impermissible Assignments

As noted in Class Counsel's opening memorandum in support of the Motion to Direct, the briefing is now complete on the issue of the validity of the assignment agreements entered into by Class Members with RD Legal.  *See also supra* at 4 (citing Order and filings).  The Court's interpretation of the Settlement Agreement, particularly Section 30.1 (No Assignment of Claims)

---

[16]  Courts and the legal system in general take individuals' particular vulnerabilities into account in many contexts. *See Brewster v. Dukakis*, 520 F. Supp. 882, 889 (D. Mass. 1981) (class members were particularly vulnerable to invasions of their legal rights due to, *inter alia*, cognitive limitations or impaired ability to communicate), v*acated on other grounds,* 687 F.2d 495 (1st Cir. 1982); *cf. Coleman ex rel. Bunn v. Dist. of Columbia,* 306 F.R.D. 68, 81 (D.D.C. 2015) (noting that "courts discussing a class's vulnerability regularly make inferences that flow logically from the class definition"); *Schmude v. Tricam Indus., Inc.*, 556 F.3d 624, 628 (7th Cir. 2009) ("If a tortfeasor inflicts a graver loss on his victim than one would have expected because the victim had some pre-existing vulnerability, that is the tortfeasor's bad luck; you take your victim as you find him.  That is the famous 'eggshell skull' rule of tort law[.]") ; *United States v. Proffit*, 304 F.3d 1001, 1007 (10th Cir. 2002) (discussing criminal sentencing enhancements when victims are "unusually vulnerable").  Here, the fact that many Class Members are likely to suffer from cognitive infirmities warrants heightened judicial scrutiny of third parties' dealings with them.

[ECF No. 6481-1, at 96], as to RD Legal, once decided, will be law of the case[17] and dictate the issue of the validity of purported assignment agreements entered into by the other assignees with Class Members.[18]   Notably, RD Legal does not object to Class Counsel's request to have the Claims Administrator escrow the funds in dispute.   ECF No. 8910, at 7.   Certain others who are subject to the Motion to Direct, though, have objected.

Some assignees have questioned Class Counsel's motive with regard to those assignees who were included in the Motion to Direct, alleging that Christopher Seeger's former position as a Director of Esquire Financial Holdings, Inc. influenced the decision to not include Esquire or certain other entities in the Motion to Direct.   *See* ECF No. 8940 (Cash4Cases and Atlas entities), at 25 n.1, 34, 42 ¶ 4, and 88-97.   The response is a simple one – Esquire was not included because its loan instruments were not "assignments" and they were at commercially reasonable rates.   *See*

---

[17]   *See supra* n. 9, for a discussion of the law of the case doctrine.

[18]   Certain respondents contend that the arbitration clauses contained in their agreements should control as per the allegedly applicable caselaw.   *See* ECF No. 8943 (Thrivest), at 10-15; ECF No. 8940 (Cash4Cases and Atlas), at 37-40.   The cases cited, however, all involve a party to the agreement opposing application of the arbitration clause, and courts clinging steadfastly to having an arbitrator decide most issues, with the exception of the validity of the arbitration clauses themselves, which remain within the courts' purview.   *See Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 188 (3d Cir. 2010) (discussing and distinguishing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006)).   Here, however, Class Counsel was not a signatory to the agreements that Class Members entered into.   Nor can he be said to be a third-party beneficiary or have reaped direct benefits from any contract, such that he would be estopped from opposing arbitration, which is typically the standard that courts employ in compelling non-signatories to arbitrate.   *See generally Just B Method, LLC v. BSCPR, LP*, No. 14-1516, 2014 WL 5285634, at *7 (E.D. Pa. Oct. 14, 2014) ("A non-signatory to an agreement containing an arbitration clause can be bound to the agreement under the following theories:  (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and/or (5) estoppel.   Within these theories other variations, such as third party beneficiary, agency/principal, and equitable estoppel, are recognized principles of contract or agency law which are applicable in the arbitration context.   Whether a non-signatory can be bound to the arbitration agreement is an issue for the court to decide and not for an arbitrator.") (citing cases; internal citations omitted).

Seeger Reply Decl., at ¶ 6.  As to others that Cash4Cases and Atlas claim are affiliated with Esquire Bank who might have entered into assignment agreements with Class Members, discovery is ongoing.  *Id.*, at ¶¶ 9-11.  As was noted in the opening memorandum in support of the Motion to Direct, discovery is continuing and Class Counsel "anticipates a supplementation of this motion and proposed order as additional evidence becomes available."  ECF No. 8470-1, at 4.[19]

To be sure, the Settlement Agreement prohibits assignments, and therefore, Class Counsel was compelled to bring the issue of assignments to the Court's attention.[20]  Class Counsel, however, was also very mindful of the fact that the purported assignments were at the equivalent of exorbitant interest rates, which likely would have violated several states' usury laws, if the instruments had been structured as loans.  Indeed, Class Counsel recognized that the reason *why*

---

[19]  Additional information already has come to light that requires Class Counsel to submit a revised proposed Order.  The Atlas entities responded that another entity, Atlas Funding III, LP ("Atlas III"), which was not part of the Motion to Direct or included in the proposed Order, entered into contracts with Class Members, which were also structured as impermissible assignments.  *See* ECF No. 8940, at 6, 79.  Therefore, Class Counsel submits the accompanying revised proposed Order, including Atlas III.

[20]  RD Legal asserts that the fact that there are so many assignments demonstrates that the Settlement Agreement "failed to expressly and clearly prohibit the assignment of settlement proceeds."  ECF No. 8910, at 7.  That is unavailing.  First, the instant motion did not reveal for the first time that there were more than a thousand assignment transactions, as RD Legal inaccurately represents.  Class Counsel stated that possibly over 1,000 "Class Members have contracted away portions of their potential future monetary awards to certain third parties, possibly under less-than-transparent circumstances or via assignments that are prohibited under the Settlement Agreement[.]"  ECF No. 8470-1, at 4-5.  First, that figure also encompassed those Class Members who entered into agreements with the claims services providers.  Second, that figure was *not* first introduced in the context of the Motion to Direct.  Rather, it was specifically referenced at the September 19 Deceptive Practices hearing.  ECF No. 8825-1, at 13 (referring to the compiled list of 958 retired players who have contracted either with a claims services provider, [or] a funder, and also a law firm).  At any rate, that numerous assignees failed to read and appreciate the clearly worded Settlement Agreement which was purportedly the very subject of their assignments, while surprisingly shortsighted, does nothing to support the contention that the "No Assignment of Claims" section of the Settlement Agreement was in any way confusing or ambiguous.  *See also supra* n. 13.

many funders package their financial instruments as assignments is precisely for the purpose of making an end-run around usury laws. *Cf. State ex rel. King v. B & B Inv. Gp., Inc*., 329 P.3d 658, 663, 673-74 (N.M. 2014) (noting that in response to legislation in New Mexico and Illinois that limited short duration loans, providers restructured their products as installment loans; holding that under New Mexico law, restructured installment loan was unconscionable because, among other reasons, it was "specifically designed to make an end run around the consumer protections of the Small Loan Act"); *James v. Nat'l Fin., LLC*, 132 A.3d 799, 837 n.35 (Del. Ch. Ct. 2016) (discussing lenders' work-arounds to avoid certain laws).[21]

For the foregoing reasons and those stated in the opening briefing, Class Counsel requests that the Court enter the revised proposed order submitted contemporaneously herewith, directing that the Claims Administrator withhold those portions of Monetary Awards and Derivative Claimant Awards that are putatively owed to certain assignees and the claims services providers

---

[21] Because it would be premature, at this time Class Counsel does not purport to address whether, in addition to being prohibited by the Settlement Agreement, these assignment agreements were void for any other reason(s), *e.g*., violation of any state or federal statute, including those relating to usury, because they were unconscionable, or because they were structured as assignments for the purpose of avoiding state usury laws. *See Sitogum Holdings, Inc. v. Ropes*, 800 A.2d 915, 921 (N.J. Super. Ct. Ch. Div. 2002) (noting that procedural unconscionability "can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process" and substantive unconscionability "simply suggests the exchange of obligations [is] so one-sided as to shock the court's conscience."). Presumably, neurocognitive impairment, as discussed above, would qualify as one such inadequacy. Certainly, if the Court does not agree that the Settlement Agreement prohibits all assignments, individual Class Members might nevertheless have unconscionability arguments against these assignees.

pending the Court's determination of those third parties' rights, if any, to those portions of the awards.

Dated:  November 30, 2017                    Respectfully submitted,

                                             /s/ Christopher A. Seeger
                                             Christopher A. Seeger
                                             SEEGER WEISS LLP
                                             77 Water Street
                                             New York, NY  10005
                                             Phone: (212) 584-0700
                                             Fax: (212) 584-0799
                                             cseeger@seegerweiss.com

                                             *Co-Lead Class Counsel*

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing reply, along with the supporting documents, were served electronically via the Court's electronic filing system upon all counsel of record in this matter. True and correct copies of the foregoing reply and supporting documents were served upon the below counsel for the third parties addressed in this Reply or upon the third party itself, if counsel have not communicated previously with Class Counsel. Service is being made via Federal Express, overnight delivery and via email for those with whom Class Counsel previously have communicated via email.

Raul J. Sloezen, Esq.
Law Offices of Raul J. Sloezen, Esq.
130 Sycamore Road
Clifton, NJ 07012
rjsloesen@outlook.com
*Counsel for Atlas entities*

Bridget Giroud
Marissa Parker
Stradley Ronon Stevens & Young, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
BGiroud@stradley.com
MParker@stradley.com
*Counsel for Cash4Cases, Inc. and Atlas entities*

Martin L. Black
4909 N. Monroe Street
Tallahassee, FL 32303
mbmblack8@gmail.com
*Counsel for Cambridge entities*

Lowell Wayne Finson
Finson Law Firm
4400 N. Scottsdale Road, Suite 9277
Scottsdale, AZ 85251
lowellwfinson@gmail.com
*Counsel for Pravati Legal Funding/Pravati Capital*

William P. Bray
Bray & Long, PLLC
2820 Selwyn Avenue, Suite 400
Charlotte, North Carolina 28209
wbray@braylong.com
*Counsel for Global Financial Credit, LLC*

Top Notch Funding/Top Notch Lawsuit Loans
c/o The Company Corporation
251 Little Falls Drive
Wilmington, DE 19808

Kenneth T. Stout
LeClairRyan
919 East Main Street
24th Floor
Richmond, VA 23219
Kenneth.stout@leclairryan.com
*Counsel for HMR Funding entities*

Mark S. Melodia
Nipun J. Patel
Reed Smith LLP
Three Logan Square
Suite 3100
1717 Arch Street
Philadelphia, PA 19103
mmelodia@reedsmith.com
npatel@reedsmith.com
*Counsel for Peachtree entities*

Peter C. Buckley
Fox Rothschild LLP
2000 Market St.
20th Floor
Philadelphia PA 19103
pcbuckley@foxrothschild.com
*Counsel for Thrivest Specialty Funding, LLC*

Ricardo A. Reyes
Tobin & Reyes, P.A.
Mizner Park Office Tower
225 E. Mizner Boulevard
Suite 510
Boca Raton, FL 33432
*Counsel for Walker Preston Capital Holdings,
LLC and Ludus Capital, LLC*

James Kim
Ballard Spahr LLP
919 Third Avenue, 37th Floor
New York, NY 10022
*Counsel of Record in CFPB v. Top Notch II,
LLC, e.t. al. (S.D.N.Y. 1:17-cv-07114-GHW)
for Top Notch Funding II, LLC*

Dated: November 30, 2017

*/s/ Christopher A. Seeger*
Christopher A. Seeger