UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>Hon. Anita B. Brody |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>      Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>      Defendants. | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**REPLY DECLARATION OF CHRISTOPHER A. SEEGER IN FURTHER SUPPORT OF MOTION TO (1) DIRECT CLAIMS ADMINISTRATOR TO WITHHOLD ANY PORTIONS OF CLASS MEMBER MONETARY AWARDS PURPORTEDLY OWED TO CERTAIN THIRD-PARTY LENDERS AND CLAIMS SERVICES PROVIDERS, AND (2) DIRECT DISCLOSURE TO THE CLAIMS ADMINISTRATOR OF EXISTENCE OF CLASS MEMBER AGREEMENTS WITH ALL THIRD PARTIES**

      CHRISTOPHER A. SEEGER declares, pursuant to 28 U.S.C. § 1746, based upon his personal knowledge, information and belief, the following:

      1.    By Order dated April 25, 2012 [ECF No. 64], the Court appointed me as Co-Lead Counsel for the Plaintiffs in this multidistrict litigation ("MDL"). In its Amended Final Order and

Judgment approving the class action settlement in this MDL [ECF No. 6534], the Court confirmed my appointment as Co-Lead Class Counsel for the Settlement Class.

2. Having been appointed as Co-Lead Class Counsel, I am fully familiar with the matters set forth herein, including the procedural history of this litigation and the class-wide Settlement that this Court approved on April 22, 2015 ("Settlement"), the facts and procedural history leading up to and following the Court's issuance of the June 12, 2017 Order [ECF No. 7814] and the July 19, 2017 Notice & Order [ECF No. 8037], as well as the presentation given at the September 19, 2017 hearing [ECF Nos. 8393, 8410-11]. I submit this Reply Declaration in further support of the Motion to (1) Direct Claims Administrator to Withhold Any Portions of Class Member Monetary Awards Purportedly Owed to Certain Third-Party Lenders and Claims Services Providers, and (2) Direct Disclosure to the Claims Administrator of Existence of Class Member Agreements with All Third Parties ("Motion to Direct") [ECF No. 8470], and in response to certain assertions and arguments lodged in opposition to the Motion to Direct.

3. In response to the Motion to Direct, Cash4Cases, Inc., Atlas Legal Funding, LLC, Atlas Legal Funding I, LP, Atlas Legal Funding II, LP and Atlas Legal Funding III, LP claim that I was formerly a Director of Esquire Financial Holdings, Inc. and Esquire Bank. They imply that, because I served in that position, I decided to not include Esquire and a company that they characterize as being related to Esquire, Law Cash, as respondents in the Motion to Direct, thereby giving them favorable treatment. *See* ECF No. 8940, at 25 n.1, 34, 42 ¶ 4, and 88-97.

4. My prior directorship with Esquire Financial Holdings, Inc., which I resigned in May 2016,[1] had nothing to do with the decision as to which third-party funders/lenders/asset

---

[1] I was never a Director of Esquire Bank.

purchasers/assignees ("assignees") were included within the scope of the Motion to Direct, and which were not.

5. The assignees that were included in the Motion to Direct are those who entered into agreements with Class Members that were styled as "assignments" in violation of the Settlement Agreement's "No Assignment of Claims" provision (Section 30.1, ECF No. 6481-1, at 96). Also included were those potential assignees that refused to respond to the discovery requests propounded. My concern and the reason for bringing the Motion to Direct was that while the Court is poised to rule on the issue of the validity of purported assignments in connection with the RD Legal briefing, claims are being processed and monetary awards distributed in the meantime (some of which monies are potentially being paid to these assignees).

6. As represented to me, the agreements with Class Members into which Esquire entered were loans secured by the monetary awards, as opposed to "assignments" of portions of the monetary awards, and were at the commercially reasonable rate of 9%, without fees and without the compounding of interest (*i.e*, an APR of 9%). This is in contrast to agreements entered into by the respondent assignees, which were structured as "assignments" to avoid the usury laws, and which would result in Class Members paying de facto interest rates of 30-40% or even more, with exorbitant fees and compounded interest. Further, as distinct from the assignees, Esquire is a federally-regulated bank, subject to significant oversight.

7. Notably, however, had Esquire accepted an assignment of any claim, in contravention of the Settlement Agreement, it, too, would have been included as subject of the Motion to Direct. Should I receive evidence of same, I would also seek to include Esquire.

8. Conversely, should any of the assignees represent that they will convert the assignments to loans, similar to those provided by Esquire, at 9% simple interest and waiver of all

fees, I would gladly recommend to the Court that no escrowing is necessary as to those particular Class Members' monetary awards and that such assignees need not be included in any order the Court might issue.

9. My firm did propound discovery requests upon an entity that may share some common ownership with Esquire – specifically, Plaintiff Support Services. We are awaiting a formal response.

10. The list of third-party lenders to which my firm directed discovery requests after the September 19, 2017 hearing was based upon the Claims Administrator advising my firm as to additional lenders that he was aware had provided funds to Class Members (perhaps in the form of assignments), as identified by the Class Members who had filed Claim Forms at that time. Plaintiff Support Services was among them.

11. Law Cash was not included among those on the list provided by the Claims Administrator. Further, I am not aware as to whether it has a business affiliation with Esquire, other than, perhaps, some common ownership. Because, however, Cash4Cases and the Atlas entities have raised the issue, we have propounded discovery requests upon Law Cash, which has responded that it did not provide any funds to Class Members. If we receive information that Law Cash has entered into assignment agreements with Class Members, we will seek to have Law Cash included in the Motion to Direct.

12. I welcome information from any person or entity concerning any other third parties that entered into putative assignments with Class Members or which entered into any other agreements or engaged in any conduct that could adversely affect the Class Members' rights under the Settlement Agreement.

13. As noted in our opening memorandum, discovery is continuing and we "anticipate[] a supplementation of this motion and proposed order as additional evidence becomes available." ECF No. 8470-1, at 4.

14. With regard to the discovery my office has been conducting, in accordance with the Court's Order of July 19, 2017 [ECF No. 8037], certain of those entities upon which we propounded discovery requests have simply refused to respond. They are Cash4Cases, Inc., Case Strategies Group ("CSG")(formerly, NFL Case Consulting, LLC), Justice Funds/Justicefunds, LLC, Pravati Legal Funding/Pravati Capital, LLC, and the Top Notch Funding entities. Others have responded in part, specifically, the Peachtree entities, Thrivest Specialty Funding, LLC, Ludus Capital, LLC, and Walker Preston Capital Holdings, LLC, but have not provided all of the agreements, terms and Class Members' identities. However, as to CSG, Justice Funds and Cash4Cases, we have obtained some of their agreements, either from Class Members or from others who responded to discovery requests.

15. Although the Court ordered CSG to respond to our discovery requests by September 15, 2017, *see* ECF No. 8366, and denied their motion to certify questions for interlocutory appeal on October 17, 2017, *see* ECF No. 8461, CSG has still, nevertheless, not responded to our discovery requests.

16. Attached hereto as Exhibit A is a true and correct copy, with the name and other identifying and personal information redacted, of an agreement between a Class Member and Cash4Cases, Inc., dated November 23, 2016.

17. Attached hereto as Exhibit B is a true and correct copy, with the name and other identifying information redacted of an agreement between a Class Member and Justicefunds, dated February 2, 2017.

18.     Attached hereto as Exhibit C is a true and correct copy of the Order on Objections to Report and Recommendation by U.S. District Judge Alan S. Gold, dated October 24, 2006 [ECF No. 3207] in *Allapattah Services, Inc. v. Exxon Corp.* No. 91-0986 (S.D. Fla).

19.     Attached hereto as Exhibit D are excerpts from text messages between Legacy Pro Sports' President, Brandon Siler, and a Class Member (player's name redacted) from May of 2017, produced by Legacy Pro Sports in response to discovery requests.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 30, 2017

> */s/ Christopher A. Seeger*
> CHRISTOPHER A. SEEGER
> Co-Lead Class Counsel