# Exhibit C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE No. 91-0986-GOLD/SIMONTON
SPECIAL MASTER THOMAS E. SCOTT

ALLAPATTAH SERVICES, INC.,
et. al.,

    Plaintiffs,

v.

EXXON CORPORATION,

    Defendant.
_____ /

## ORDER ON OBJECTIONS TO REPORT AND RECOMMENDATION

**THIS MATTER** is before the Court on the following pending objections to the Report and Recommendation of the Special Master entitled "Omnibus Report and Recommendation Concerning Contracts Between Claimants and Third Party Service Providers" **[D.E. # 3067]** ("Report and Recommendation"): (1) Claims Compensation Bureau, Inc.'s ("CCB") Objection to the Report and Recommendation of Special Master **[D.E. # 3109]**; (2) Lanark Warner Industries, Inc. d/b/a Class Action Recovery Services' ("CARS") Objections to Omnibus Report and Recommendation Concerning Contracts Between Claimants and Third Party Service Providers **[D.E. # 3107]**,[1] and Class Counsel's Partial Objections to Report and Recommendation Concerning Contracts Between

---

[1].National Equity Development Group, Inc. filed an amicus memorandum in support of CCB and CARS objections **[D.E. # 3182]**.

1

Claimants and Third Party Service Providers **[D.E. # 3105]**.

I also consider and deny in this Order the limited objections to procedures filed by CCB and CARS **[DE # 3108 & 3110]** to the Special Master's Report and Recommendation Regarding Procedures for Disbursements from the Settlement Fund dated August 22, 2006 **[D.E. # 3087]**. By my Order Regarding the Procedure for Payment of Claims, dated September 18, 2006 **[D.E. # 3134]**, I reserved on those limited objections pending my review of the two objections noted above.

In reviewing all the objections, I have considered and applied the standard of review set forth in Fed.R.Civ.P. 53 governing Special Masters. Pursuant to that Rule, "The court must decide de novo all objections to findings of fact made or recommended by a master ... The court must decide de novo all objections to conclusions of law made or recommended by a master [and] the court may set aside a master's ruling on a procedural matter only for an abuse of discretion."

Applying this standard, I affirm the Report and Recommendation in all respects except one. As discussed below, I find that the Special Master erred as a matter of law in concluding that CCB may be entitled to compensation upon further evidentiary hearing. Instead, I conclude that, because of its unauthorized practice of law, CCB's contracts at issue are illegal, void and unenforceable. I further discuss each objection separately below.

**I. Objections of Claims Compensation Bureau, Inc. [D.E. # 3109].**

Claims Compensation Bureau, Inc.'s objections to the Special Master's Report and Recommendation essentially raises two grounds. First, CCB claims that it was deprived

2

due process because (1) it was denied the right to jury trial; (2) it lacked notice of the matters at issue at the evidentiary hearing; (3) CCB mooted the issues addressed at the hearing; and (4) the Special Master acted outside his authority. Second, it disputes the Special Master's findings of fact and conclusions regarding the unauthorized practice of law. I conclude that neither category of objection has merit.

As to the first category of objections, I conclude that CCB is not entitled to a jury trial because the Special Master's operative ruling, that it engaged in the unauthorized practice of law, is a question of law within the purview of the Court's inherent power to control proceedings before it and by its nature is a matter for determination by the court, not a jury.[2] Moreover, CCB stipulated to the Special Master's determination of all disputes

---

[2]. Under Florida law, the question of unauthorized practice of law is traditionally raised by the Florida Bar and heard before a referee without the right of jury trial. The matter is ultimately decided by the Florida Supreme Court upon recommendation of a referee and without the benefit of a jury. See, e.g., The Florida Bar v. Mickens, 505 So.2d 1319 (Fla. 1987)(concluding that non-lawyer's actions constituted unauthorized practice of law). CCB and other such providers are amenable to the rules of the Florida Bar and the Florida Supreme Court which regulate the unauthorized practice of law in the State of Florida. The Local Rules of this Court expressly incorporate the Florida Bar rules, and this Court has the inherent authority and right to enforce them, particularly as those service providers who have sought affirmative relief before this court for class members during the contested claims administration process. See Local Rule 11.1 (C), Local Rules of the United States District Court for the Southern District of Florida ("The standards of profession conduct of members of the Bar of this Court shall include the current Rules Regulation the Florida Bar").

As the Florida Supreme Court has stated, "the major purposes for prohibiting the unlicensed practice of law is to protect the consuming public from being advised and represented in legal matters by unqualified persons who may put the consuming public's interests at risk. *The Florida Bar v. Neiman*, 816 So.2d 587 (Fla. 2000). As noted in *Gemini Ventures of Tampa, Inc., v. Hamilton Engineering & Surveying, Inc.*, 784 So.2d 1179, 1180 (Fla.2d DCA 2001), " [Judges], as part of the legal profession, should be ever vigilant to protect the public from those who seek to provide legal services without the requisite training and knowledge." Moreover, as held in that case, "The interpretation of

3

Case 1:91-cv-00986-ASG Document 3207 Entered on FLSD Docket 10/24/2006 Page 4 of 19
Case 2:12-md-02323-AB Document 9113-4 Filed 11/30/17 Page 5 of 20

between it and class members and, therefore, has waived its right to jury trial in connection with these post-judgment proceedings as it never demanded one.[3] See *West v. Dyncorp*, 2005 WL 1939445, at *1 (11th Cir. August 15, 2005)(Waiver is shown by acquiescence, when the party or his counsel is present and not objecting); *Southland Reship, Inc. v. Flegel*, 534 F.2d 639, 645 (5th Cir. 1976)(noting that where plaintiff had ample time before consolidated hearing on preliminary and permanent injunction to determine the effect of such consolidation and to object with respect to jury trial, and at hearing defendants' counsel stated that jury trial had been requested on damage claims alone, the right to jury on liability issues was waived).

Finally, Rule 53 of the Federal Rules of Civil Procedure specifically provide for determination of factual disputes by a special master without a jury. Rule 53(a) (1)(B) allows the Court to appoint a Special Master to hold trial proceedings and make or recommend findings of fact on issues to be decided by the court without a jury if appointment is warranted by some exceptional circumstances, such for example, as the

---

an unambigous contract [under which unauthorized practice of law was an issue] is a question of law for the court."

Upon de novo review, I conclude that the unambiguous contracts between CCB and the two class members raise only questions of law, and, accordingly, there is no entitlement to a jury trial on that basis alone. Specifically, the eleven acts constituting the unauthorized practice of law are all the services provided by CCB under its contracts. In any event, "regulating the practice of law among non-lawyers does not violate non-lawyers' constitutional rights." *Neiman*, 816 So.2d at 597.

[3] As noted in my Order of December 14, 2004, which is discussed below, the parties agreed that **all** disputes between class members and CCB will be raised before the Special Master. I specifically ruled, based on stipulations, that the **Special Master** will hear the dispute and make a recommendation to the Court **[D.E. # 1769 at 5-6, and 9]**.

4

claims administration process here, or there is a need to resolve a difficult computation of damages, such as, here, how much class member is to be paid as a result of the claims administration process. More specifically, the claims administration process created after the jury verdict is an extraordinarily unique process. It is the only one of its kind, and now finds itself post-settlement. The history of this process and complexity of the issues required someone submerged in the process to address the entitlement issues raised by CCB and other third party service providers.

I comment further on CCB's stipulation at this juncture. This Court, by Order, specifically memorialized and adopted CCB's stipulation that **all** disputes between it and class members would be heard by the Special Master [Report and Recommendation at 7, citing D.E. # 1769 at 5-6; see also Report and Recommendation at 26-30 (discussing proceedings resulting in CCB's stipulation to the Special Master's jurisdiction to hear all disputes, and at 39-40 (holding that CCB is estopped from avoiding stipulation)]. Even in the absence of its binding stipulation, CCB waived jury trial in the hearing before the Special Master as it never demanded one, and only raised the issue by its Objections for the first time before this Court.

The Special Master's ruling did not go beyond the Special Master's Order of Reference in that this Court plainly ruled that all disputes concerning CCB's contracts would be determined by the Special Master through an evidentiary hearing [Report and Recommendation at 7, citing D.E. # 1769 at 5-6; see also Report and Recommendation at 26-30 (discussing proceedings resulting in CCB's stipulation to the Special Master's jurisdiction to hear all disputes)].

5

At page 5 of the Order, it is mentioned that: "Plaintiffs counsel raised additional concerns that allowing non-party claims assistance companies such as CCB and CARG to solicit class members may result in disputes between the class members and these companies. Plaintiffs suggested that these disputes will result in the disruption of the claims administration process established by the Court in this case. Counsel for CCB challenged Plaintiffs' concerns that CCB's actions may interfere with the claims administration process."

The Order went on to clarify, in a manner significant here, that: "CCB's counsel informed the Court that no disputes between any class members and CCB have arisen to date. In addressing what would happen if **any** dispute between CCB and a class member should arise, **CCB's counsel conceded to the personal jurisdiction of the district court over CCB to hear the dispute. Although CCB's counsel stipulated in open court that CCB is subject to personal jurisdiction in this Court, I would have found that this Court had personal jurisdiction over CCB in any event.**" *id.* (emphasis added).

The Order further established the procedure in the event **any** dispute arose. It stated: "After counsel for CCB acquiesced to the Court's jurisdiction, the parties agreed to a procedure for handling any disputes between class members and CCB should any such dispute arise. Both counsel for Plaintiffs and counsel for CCB agreed that **all** disputes between class members and CCB will be raised before the Special Master. The **Special Master will hear the dispute** [not a jury] and make a recommendation to the Court." *id.* (emphasis added).

In the "Order" section, I ruled that: "This Court has personal jurisdiction over CCB

6

and CARG." I further ruled that: "If any class member who contracts with CCB, CARG or any other non-party claims assistance company disputes how the final payment to the class member should be made, the class member shall raise this dispute with the Special Master. **The Special Master** will hear the dispute and then make findings of fact and recommendations to the this Court regarding the disposition of the matter." *id.* at 9.

CCB now argues that reference to the phrase "how final payment to the class member should be made" limits the Special Master's referral to the question of who should receive the check once a claimant substantiates the claim. My Order, and the concessions made by CCB reflect, was not so limited. It dealt with **any** dispute so that **all** such matters could be resolved in the claims administration process. The reason at the time, and even more so today, is that this Court is uniquely able to determine, and appropriately so under class action rules, who should receive fees for processing claims in the claims administration process on behalf of class members. This is not solely a "contract" question. It is a claims administration issue unique to this Court's jurisdiction.

CCB attempts to narrow the matter by arguing from another part of the Order in which I stated that: "If the class member develops a problem with any of these companies, the class members have an adequate remedy at law available to them-they seek relief against these companies by filing their own lawsuits." *id.* at 8. My statement here was not intended to limit the earlier stipulations noted at pages 5 to 6 of the Order, and my Order at page 9, but to explain why I did not have subject matter jurisdiction to enjoin these companies from further solicitation of class members. It was not intended to imply, nor did it state, that those companies could avoid the claims administration process by suing class

7

members in another state for breach of contract. That would clearly defeat the stipulation previously announced and later implemented by this Court through numerous referrals to the Special Master over these disputes. Moreover, the gratuitous discussion between this Court and counsel in the transcript does not constitute the Court's Orders. My ultimate ruling was clearly reflected in the Order as I have addressed above.

Next, CCB's further argument that it lacked notice of the issues that would be heard at the evidentiary hearing is baseless. The Report and Recommendation directly and properly addressed this contention, citing numerous instances through which CCB contracts were repeatedly challenged by Class Counsel's specific charges of fraudulent inducement, excess fees, and the unauthorized practice of law [Report and Recommendation at 41-46].

Moreover, CCB did not moot the issued addressed at the hearing by withdrawing its demand for direct payment of the award and stipulating to direct payment to Raineri and Abassi. CCB does not avoid its own stipulation, or this Court's Order of Reference, by tactical maneuvers. [See Report and Recommendation at 48 (finding that CCB's conduct seeking to evade the Court's jurisdiction if favor of state court "broaches the sanctionable.")]. Most importantly, the issue of unauthorized practice of law is clearly not moot and remained a matter of fundamental concern before the Special Master and now before this Court.

It is notable that CCB argued for months before the Special Master that the payment of its clients' awards should be made directly to it in its' name. Only recently has CCB abandoned this position in the apparent hope that it could avoid the Court's jurisdiction

over these issues of entitlement so that it could wage more effective battles against individual class members with, perhaps, less capable counsel in state courts across the country and in front of less informed judges. CCB apparently would urge this Court to ignore the fact that its alleged third-party contractual ownership rights, in some instances for 40% of a class member's award, arise solely from the existence of this class action and the claims administration process. But, the claims administration process created by this Court at the end of the jury trial is equitable in nature. Claimants have already paid Class Counsel 31 1/3% of their awards and could stand to lose a significant additional portion of their award if these contracts are enforced. If CCB and other third party service providers are allowed to bring actions against individual class members in state courts across the country, class members will be forced to retain individual attorneys, pay court costs, go before state judges unfamiliar with the issues of this case, and in some jurisdictions end up paying the costs and fees of the third party provider attorneys under various prevailing party statutes if they loss. This would leave these class members with far less than 20% or so of their awards after waiting fifteen years to recover damages. For these and other reasons, such state actions, as the one in this matter, will be enjoined.

I also conclude that the Special Master did not act outside his authority by not rigorously applying the pleading and procedural rules of the Federal Rules of Civil Procedure in connection with the evidentiary hearing. In a Rule 23 class action post-judgment claims administration process, this Court has flexibility to render appropriate Orders determining the course of proceedings and prescribing the manner of the presentation of evidence and argument. I provided the Special Masters with liberal

discretion in establishing such procedures in my prior Orders. In carrying out my Orders, the Special Master, under Fed.R.Civ.P. 53 (c), "has authority to regulate all proceedings and take all appropriate measures to perform fairly and efficiently the assigned duties." As noted by the Special Master, this class action is a in a post-verdict, post-settlement posture, and is in the midst of a substantial and complex claims administration process. Under the circumstances, the Special Master has appropriately and fairly addressed the matter at issue and no unfair prejudice is evident based upon this Court's review of the entire record below.

What is of greater concern to me here is that after Raineri disputed CCB's contract in a letter to this Court, and this Court referred the dispute to the Special Master for determination in accordance with CCB's stipulation, and the Special Master issued an Order requiring CCB to show cause why the contract should be enforced **[D.E. # 2593]**, CCB filed a separate action against Raineri on the same issue in New Jersey state court. In that complaint, CCB certified to the New Jersey court that "the matter in controversy is not the subject of any other action pending in any Court ...."

In his Report and Recommendation, the Special Master charitably characterized CCB's certification to the state court as "disingenuous at best" and concluded that "CCB has an affirmative duty to apprize the New Jersey State Court of this fact [Report and Recommendation at 37, 19]. CCB indicates that it has every intention of continuing with its suit against Raineri in New Jersey [Objection at 12-15]. By this Order, and pursuant to the All Writs Act, 28 U.S.C. § 1651, I enjoin CCB from doing so and shall require it to disclose to the New Jersey state court these proceedings and the finding of this Court that

10

its certification was patently and improperly false. I do so as necessary for this Court to discharge its duties and protect its jurisdiction. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir. 2004).

Finally, I reject all of CCB's objections to the Special Master's findings of fact and law regarding CCB's unauthorized practice of law. The findings of fact are appropriately supported by the record and, upon full review, I affirm the conclusions of law that CCB's contracts at issue requires it to engage in the unauthorized practice of law in eleven different particulars. This conclusion is particularly well-founded given the unique adversarial nature of the claims administrative process as established by prior orders of the Court.

The laws of Florida and New Jersey apply to the Court's determination of whether CCB engaged in unauthorized practice of law. Although there is no specific definition of what constitutes the unauthorized practice of law, courts of Florida and New Jersey generally consider the issue on a case-by-case basis to determine whether the unlicensed party is undertaking actions typically performed by lawyers. See, e.g., *The Florida Bar v. Brumbaugh* 355 So.2d 1186, 1190 (Fla. 1978)(defining unauthorized practice as "the giving of ... advice and performance of such services ... [which requires] legal skill and a knowledge of the law greater than possessed by the average citizen."); *The Florida Bar v. Heller*, 247 So.2d 434, 436 (Fla. 1971); *Stack v. P.G. Garage, Inc.*, 80 A.2d 545 (N.J. 1951); *Gallagher v. First Dependable Mortgage Co.*, 605 A.2d 785 (N.J.Super.Ct.LawDiv. 1992).

The issue of the unauthorized practice of law has also been before the Florida

11

courts without the involvement of The Florida Bar, although less frequently. In *Chandris, S.A. v. Yanakakis*, 668 So.2d 180 (Fla. 1995), the Florida Supreme Court addressed certified questions from the Eleventh Circuit as to whether an out-of-state attorney who resides in Florida but is not associated with a Florida law firm engages in unauthorized practice of law where that attorney enters into a contingent fee agreement in Florida thereby rendering that fee agreement void and whether a fee agreement of a Florida firm born of a fee agreement that is void as unauthorized practice of law is itself void. Both questions were determined by the Florida Supreme Court as matters of law and the questions were affirmed.

Similarly, in *State v. Foster*, 674 So.2d 747 (Fla1stDCA 1996), the Florida First District Court of Appeals reversed the trial judge's determination that the appellees had not engaged in the unauthorized practice of law upon receiving certified questions from the trial court. The appellate court stated that in order to determine whether an individual has engaged in the unauthorized practice of law, "we must consider whether the activities in which the appellees engaged 'affect[ed] important rights of a person under the law' and 'require[d] that the persons giving such advice possess legal skill and a knowledge of the law greater than that possessed by the average citizen ...." *Foster*, 674 So.2d at 752 citing *Florida Bar v. Sperry*, 140 So.2d 587, 591 (Fla. 1962), *vacated on other grounds*, 373 U.S. 379 (1963). Notably, the appellate court decided whether the appellees' conduct constituted the unauthorized practice of law on the record, as opposed to remanding the issue to the trial court for determination by a jury.

Applying these principles, I conclude that the Special Master correctly determined

12

that CCB's contracts at issue here, and its conduct pursuant to the contracts, required that it give legal advice, and possess legal skill and knowledge of the law, greater than that possessed by the average citizen. That advice consisted of more than urging that a claim be filed, but dealt with the manner of method of processing the claim against Exxon Corporation and before this Court in the post-verdict adversarial claims administration process. Under the prior orders of the Court, the claims filed by CCB on behalf of the claimants were comparable to the filing of complaints seeking relief based on the application of law to the facts in an evidentiary process. Each claim that was filed was denied by Exxon and was subject, at the time, to Exxon's substantial affirmative defenses. Whatever may have been CCB's circumstances in other states and with other class actions, this class action was unique and required legal services from those filing claims on behalf of class members.

In sum, I hold that the Special Master correctly ruled that he and this Court has jurisdiction over all contract disputes between CCB and its clients, and the CCB's contracts required it to engage in the unauthorized practice of law.

**II. Objections of Lanark Warner Industries, Inc. d/b/a Class Action Recovery Services' ("CARS") Objections to Omnibus Report and Recommendation Concerning Contracts Between Claimants and Third Party Providers [D.E. # 3107]**

CARS objections pertain to the jurisdictional issues addressed in the Report and Recommendation. It does not dispute that the Court has personal jurisdiction over it, and does not contest the Court's subject matter jurisdiction to determine disputes between CARS and class members as to the manner in which payment is to be made on awards entered in the claims process. Rather, CARS objects to jurisdiction because its'

13

agreement contains an arbitration clause.

Initially, I agree with CARS that the specific issue addressed by the Report and Recommendation concerns CCB and Raineri and Abbasi. It does not address, at this juncture, whether CARS also committed unauthorized practice of law. Nonetheless, jurisdiction over CARS and other third party providers is at issue because they have interjected themselves into the claims process by soliciting class members and have appeared before the Court as representatives of their clients.

I now consider CARS' specific arguments. First, CARS argues that there is no case or controversy as to it. In terms of whether it committed unauthorized practice of law, CARS is correct. Such a claim must be determined if, and when, it is raised by a class member against CARS in the claims administration process.

On the other hand, the issue of the Court's jurisdiction to determine such a claim is clearly before me. Since the injunction hearing, CARS has appeared in this action as its clients' representative in the adversarial process, claiming that it had authority to receive service of their papers and payment of their awards. In addition, in response to the Special Master's careful efforts to structure the claim process in a manner that would take into account the service providers' interests and anticipated disputes, CARS proactively submitted numerous memoranda and motions staking out its role and purported rights in this case. As such, CARS has submitted itself to the jurisdiction of this Court over disputes between it and class members regarding the validity and enforceability of its service contracts. In fact, as noted above, I already ruled that I had personal jurisdiction of CARS when it appeared on during the prior injunction hearing to enjoin it from soliciting class

14

members. To the extent CARS claims that the Special Master erred in ruling otherwise, I deny the objection.

I next turn to CARS issue regarding arbitration. I decide it is premature to determine the issue at this juncture since it was not addressed by the Special Master in the context of a particular contract dispute. In terms of such a dispute, the Special Master may well find that CARS' extensive involvement in the development of the claim process in this case and its affirmative stipulation to the Special Master's jurisdiction over both payment and validity and enforceability of its service contracts constitutes an affirmative waiver of arbitration. *Morewitz v. West of England Ship Owners Mut. Prot and Indem. Ass'n*, 62 F.3d 1356, 1365 (11th Cir. 1995)(party may waive right to arbitration by participating in legal proceedings as determined by totality of circumstances). Moreover, in the event the Special Master finds unauthorized practice of law, CARS' contract with the class member may well be void [for the reasons stated below], thereby negating the arbitration clause. However, the resolution of these issues as to CARS must await another day.

**III. Class Counsel's Partial Objection to Report and Recommendation Concerning Contracts Between Claimants and Third Party Service Providers [D.E. # 3105].**

I have already determined that the Special Master did not err in the Report and Recommendation by concluding that the services offered to class members by CCB required it to engage in the unauthorized practice of law. On de novo review, however, I disagree with the Special Master's legal conclusion that CCB may still be entitled to compensation pursuant to the contracts for "non-legal" services it provided. Instead, I

15

conclude as a matter of law that the contracts providing for the unauthorized practice of law are illegal, void and unenforceable under both New Jersey and Florida law.

Under both New Jersey and Florida law,[4] a contract providing for services which constitute the unauthorized practice of law is illegal, void and unenforceable. The policy underlying the rule is for the protection of the public and is best articulated by the Florida Supreme Court in *Chandris v. Yanakakis*, 668 So.2d 180, 185 (Fla. 1995). The Florida Supreme Court stated: "If we were to hold a Florida contingent fee contract entered into by a person who is not a member of the Florida Bar to be voidable rather [than] void, we would be recognizing the validity of a contract entered into by an attorney not subject to our regulations. This would afford viability to an unregulated contract of the very kind we have determined to be in the public interest to regulate." See also *Vista Designs, Inc. v. Silverman*, 774 So.2d 884 (Fla 4th DCA 2001)(contract providing for out-of-state lawyer's unauthorized practice of law is void *ab initio* and requires forfeiture of fees regardless of any benefit conferred); and *Preferred Title Services, Inc. v. Seven Seas Resort Condominium, Inc.*, 458 So.2d 884, 886-87 (Fla. 5th DCA 1984)(non-lawyer cannot be remunerated for provision of services constituting the unauthorized practice of law).

An application of New Jersey law would arrive at the same conclusion. See *Stack v. P.G. Garage, Inc.*, 80 A.2d 545 (N.J. 1951)(non-lawyer contract for services constituting unauthorized practice of law is illegal, void and unenforceable); *Gallagher v. First*

---

[4] Given the claims administration process in Florida, I conclude that Florida law would apply to the determination of the effect of unauthorized practice of law under a contract sought to be enforced by way of the claims process in the Southern District of Florida.

16

*Dependable Mortgage Co. Inc.*, 605 A.2d 785 (N.J.Sup.Ct. 1992)(dismissing complaint on contract for legal services rendered by non-lawyer); *Slimm v. Yates*, 566 A.2d 561, 564 (N.J.Sup.Ct. 1989)(New Jersey courts will not enforce unlawful agreements providing for performance of activity constituting unlawful practice of law. This means the party engaging in the unauthorized practice of law forfeits the right to any compensation). *See also Appell v. Reiner*, 43 N.J. 313, 316 (1964) and *In re Waring's Estate*, 47 N.J. 367, 378 (1966)(indicating that public policy forbids receiving of fees for the unlicensed practice of law). New Jersey follows the "generally controlling principle that legal services to be furnished to New Jersey residents relating to New Jersey matters may be furnished only by New Jersey counsel." *Appell*, 43 N.J. at 316.

I find no legal authority to support the Special Master's conclusion that an additional evidentiary hearing is either required or appropriate to determine whether CCB's void contract can be severed into legal and non-legal components. The New Jersey Supreme Court has stated: "The contract between the plaintiff and the defendant is entire and not severable, and it follows that when a part of it is illegal and in violation of a penal statute the entire contract is illegal void, and unenforceable." *Stack*, 80 A.2d at 546. Florida law is essentially the same as to a void contract. Accordingly, I grant Class Counsel's partial objections and set aside the Special Master's legal conclusion and Order that: "An additional hearing is required to determine the portion of CCB's contracts with Raineri and Abbasi which necessarily contemplate that CCB must engage in the unauthorized practice of law, and to deduct from any payment to CCB any remuneration for providing legal services as delineated above."

17

## IV. Conclusion

For the foregoing reasons:

It is hereby **ORDERED AND ADJUDGED** that::

1. The objections **[D.E. #s 3109 & 3107]** filed by CCB and CARS are **DENIED** for the reasons set forth in this Order.

2. The partial objection filed by Class Counsel **[D.E. # 3105]** is **GRANTED** as set forth in this Order.

3. Other than as stated above, the Report and Recommendation **[DE # 3067]** is **AFFIRMED** and **ADOPTED IN ITS ENTIRETY**.

4. The limited objections filed by CCB and CARS **[D.E. #s 3108 & 3110]** to the Special Master's Report and Recommendation Regarding Procedures for Disbursements from the Settlement Fund dated August 22, 2006 **[D.E. # 3087]** are **DENIED**.

5. CCB is enjoined from proceeding in the state court proceeding in New Jersey styled *Claims Compensation Bureau, Inc. v. Raineri's Exxon Stations and John M. Raineri*, Docket No. PAS-L-663-06, Superior Court of New Jersey, Law Division: Passaic County, filed Feb. 6, 2006. CCB shall file a copy of this Order with the Superior Court of New Jersey, Law Division: Passaic County and provide this Court with proof of filing and service within ten (10) days from the date of this Order. CCB is further enjoined from filing any other state action to seek recovery under its contracts at issue. Any violation of this Order shall be punishable by direct contempt proceedings against the principals of CCB.

6. This Order is intended to be final and immediately appealable to the Eleventh

Circuit Court of Appeals.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 24 day of October, 2006.

_____
**ALAN S. GOLD**
**UNITED STATES DISTRICT JUDGE**

**Copies furnished:**
**Special Master Thomas E. Scott**
**All Counsel of Record**

19