

# NFL CONCUSSION SETTLEMENT

*IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION*
No. 2:12-md-02323 (E.D. Pa.)

# Settlement Program

**Questions and Answers**

**Settlement Program**
Questions and Answers



## Table of Contents

Page

Basic Information......................................................................................1

  1.   What is the Settlement about? ....................................................1
  2.   What are the benefits of the Settlement ......................................1
  3.   Who is included in the Settlement Class?....................................2
  4.   Who are the settlement administrators?......................................2
  5.   Who are the Special Masters ......................................................3
  6.   Do the settlement administrators report to the NFL Parties or Co-Lead
      Class Counsel...........................................................................3
  7.   What and when is the Effective Date? ........................................4
  8.   If I opted out of the Settlement, can I still get benefits from this Settlement? ......4
  9.   If I did not opt out of the Settlement, can I sue the NFL Parties
      for the same thing later? ...........................................................4
  10.  I opted out of the Settlement. May I revoke that Opt Out and get
      back into the Settlement Program?.............................................4
  11.  How do I get more information?...................................................5

Settlement Agreement Benefits – General Information ...........................6

  12.  Must a Retired NFL Football Player be vested under the NFL Retirement Plan
      to receive Settlement benefits?..................................................6
  13.  Are the Settlement benefits connected to any NFL or NFLPA-related benefits
      programs? .................................................................................6
  14.  Does this Settlement prevent Retired NFL Football Players from bringing
      workers' compensation claims?..................................................6
  15.  What types of education programs are supported by the Settlement? ..............6

Registration .............................................................................................7

  16.  May I still register as a Retired NFL Football Player?..................7
  17.  May I still register as a Representative Claimant?.......................7
  18.  May I still register as a Derivative Claimant? .............................7
  19.  How can I send registration information to the Claims Administrator? ...............7
  20.  Does registering mean I filed a claim? .......................................8
  21.  Do I need to submit any documents with my Registration Form?.......................8
  22.  How do I change my mailing address? ........................................8
  23.  How do I change my name or Social Security Number (or other tax
      identification number)? ..............................................................8

24.    I received a Notice of Incomplete Registration saying I am missing proof of playing NFL Football. Should I go to the NFL or a Member Club to ask them for such records?...............................................................................................9

Baseline Assessment Program................................................................................10

25.    What is the Baseline Assessment Program ("BAP")? .........................................10
26.    Who can participate in the BAP? ........................................................................10
27.    Why should I have a BAP exam?.........................................................................10
28.    How many doctors do I need to see?...................................................................11
29.    Who pays for these examinations? ......................................................................11
30.    Who can be a Qualified BAP Provider? ...............................................................11
31.    Can I choose my own doctors for this exam?.......................................................11
32.    Do the Qualified BAP Providers report to the NFL? ............................................11
33.    Is there a deadline for getting a BAP exam? .......................................................12
34.    How long will the Baseline Assessment Program be available?..........................12
35.    How can I schedule a BAP exam?.......................................................................12
36.    Where do I go for my BAP exam?........................................................................12
37.    How long does a BAP exam take?.......................................................................12
38.    Is it possible to schedule both parts of the BAP exam on the same day?.........13
39.    Can appointments be rescheduled or cancelled? ...............................................13
40.    What happens if I miss an appointment? .............................................................13
41.    What kind of diagnosis can I get from a BAP exam?...........................................13
42.    What about conditions like ALS or Alzheimer's Disease?...................................14
43.    Does there have to be a diagnosis? What if I am OK? ........................................14
44.    What happens after a BAP exam?.......................................................................14
45.    What should I do if my BAP exam results in a diagnosis?...................................14
46.    Will my Monetary Award be affected if I don't have a BAP exam?.....................15
47.    What are BAP Supplemental Benefits?................................................................15
48.    How long will I have to use my BAP Supplemental Benefits?..............................15
49.    How much will my BAP Supplemental Benefits cover? Is there a limit? ............15
50.    What is a Qualified BAP Pharmacy Vendor? ......................................................16
51.    I received a "Baseline Assessment Program HIPAA Authorization Form." What do I do with it? ............................................................................................16

Monetary Award Claims ..........................................................................................17

52.    Who can submit a claim for a Monetary Award? .................................................17
53.    What is a Claim Package?...................................................................................17
54.    How do I submit a Claim Package?.....................................................................17
55.    Where do I send my Claim Package if I do not use an online Portal? .................17
56.    When can I submit a Claim Package?..................................................................17
57.    Is there a deadline to submit my Claim Package? ..............................................17
58.    How can I change answers I made in my Claim Form?........................................18
59.    What is a Qualifying Diagnosis? .........................................................................19
60.    Who can make a Qualifying Diagnosis? ..............................................................19

61.   Who is a Qualified MAF Physician? ...................................................20
62.   How do I get evaluated for a Qualifying Diagnosis if I do not already have one? ..........................................................................................................21
63.   What should I do if I already have a Qualifying Diagnosis?.............................21
64.   What makes a Claim Package complete? ...........................................21
65.   What counts as a medical record? ....................................................21
66.   What does it mean for medical records to "reflect" my Qualifying Diagnosis? .................................................................................................22
67.   What does it mean for medical records to "support" my Qualifying Diagnosis? .................................................................................................22
68.   What must the medical records show for Level 1.5 and Level 2.0 Neurocognitive Impairment?.................................................................23
69.   What must my medical records show for Alzheimer's Disease? .......25
70.   What must my medical records show for Parkinson's Disease?........26
71.   What must my medical records show for Death with CTE? ..............26
72.   What must my medical records show for ALS? ...................................27
73.   What if I cannot get medical records or a Diagnosing Physician Certification Form from the diagnosing physician?...............................................27
74.   Who reviews my Claim Package?.......................................................28
75.   What is the AAP and what does it do?................................................28
76.   What is the AAPC and what does it do? .............................................29
77.   How is the date of a Qualifying Diagnosis determined?....................29
78.   What happens after I submit my Claim Package?..............................29
79.   I received a Notice of Preliminary Review. What does that mean?....................29
80.   I received a Notice of Request for Additional Documents. What does that mean? ..........................................................................................................30
81.   What happens after I respond to my notice asking for more information? ........30
82.   What happens if I never respond to the Notice of Preliminary Review or the Notice of Request for Additional Documents?...................................................30
83.   Does the Claims Administrator decide if a Physician made the right Qualifying Diagnosis? ............................................................................................31
84.   I have provided my claim to the Claims Administrator and it is now complete enough to send to the AAP. What happens next?..............................31
85.   How can I check the status of my Claim Package review? ...............31
86.   How long could it take to review my Claim Package from start to finish?..........32
87.   If I am eligible for a Monetary Award, how much money will I receive? ............32
88.   What can I do if I do not like my Claim Package determination (eligible or denied)?....................................................................................................33
89.   Can the NFL or Class Counsel appeal my Claim Package determination?.......33

Representative Claimants................................................................................34

90.   Who is a Representative Claimant? ....................................................34
91.   How can I become a Representative Claimant?..............................................35
92.   Can a Retired NFL Football Player have more than one Representative

Claimant?........................................................................................................35

93. Can I be a Retired NFL Football Player's Derivative Claimant if I am the
Representative Claimant?.................................................................................35
94. Do Representative Claimants have to register for benefits?..............................35
95. What is the deadline to register as a Representative Claimant? .......................35
96. If I am a Representative Claimant, do I have to submit a Claim Package? .......36
97. If I am the Representative Claimant of a deceased Retired NFL Football
Player, do I have to submit a Diagnosing Physician Certification Form?...........36

Derivative Claimants ..............................................................................................37

98. Who is a Derivative Claimant? .........................................................................37
99. Can a Retired NFL Football Player have more than one Derivative Claimant? ..37
100. May someone be a Derivative Claimant of more than one Retired NFL Football
Player?.............................................................................................................37
101. Can a deceased person be a Derivative Claimant? ..........................................37
102. Can I register as a Retired NFL Football Player's Derivative Claimant if I also
registered as a Representative Claimant?.........................................................37
103. Do Derivative Claimants have to register for benefits?.....................................38
104. What happens if no one registers as a Derivative Claimant for a Retired NFL
Football Player? ...............................................................................................38
105. How do I submit a Derivative Claim Package?..................................................39
106. Where do I send my Derivative Claim Package if I do not use an online
Portal?..............................................................................................................39
107. Is there a deadline to submit my Derivative Claim Package?............................39
108. What happens after I submit my Derivative Claim Package? ............................39
109. What makes a Derivative Claim Package complete? .........................................40
110. How will the Retired NFL Football Player know if someone has registered as a
Derivative Claimant?........................................................................................40
111. How will I know if other Derivative Claimants have registered for the same
Retired NFL Football Player? ...........................................................................40
112. How will I know if the Retired NFL Football Player challenged my Derivative
Claimant status? ..............................................................................................41
113. What happens if one Derivative Claimant does not want to share the 1%
Derivative Claimant Award equally with another Derivative Claimant?..............41
114. What laws does the Claims Administrator use to analyze Derivative Claimant
issues?..............................................................................................................41

Lawyers .................................................................................................................43

115. Who is Class Counsel? ....................................................................................43
116. Do I need a lawyer to represent me individually in this program?.....................43
117. How did a lawyer register me? .........................................................................43
118. What are Common Benefit Fees and how will Class Counsel be paid? ...........44
119. How will my individual lawyer be paid? ............................................................44
120. Can I terminate my relationship with my individual lawyer?...............................44

121. How do I tell the Claims Administrator I have a new lawyer or that I do not have a lawyer?....................................................................................................44

Liens – Information for Settlement Class Members ........................................................46

122. What is a Lien? ..............................................................................................46
123. What Liens will the Claims Administrator pay out of my Award? ......................46
124. What is a Medical Lien?..................................................................................46
125. What is an Attorneys' Lien?............................................................................46
126. What are the kinds of Other Liens recognized in the Program? ......................47
127. Are there any debts that the Claims Administrator will not pay? ......................47
128. Do I have to resolve Medical Liens?...............................................................47
129. What could happen if I don't resolve my Medical Liens? .................................48
130. How do I know if there is a Lien against me? ..................................................48
131. How do I respond to the notice of Lien from the Program? .............................49
132. I received a notice from my healthcare insurer saying that it may have a Lien against me. What should I do? ........................................................................49
133. Should I contact a lienholder to speed up the Medical Lien resolution process?........................................................................................................50
134. I have medical coverage through Medicare. What should I do?.......................50
135. What about Medicare Part C and Part D Liens?..............................................50
136. I have medical coverage through Medicaid. What should I do? .......................51
137. I (or my spouse) served in the military, so I have medical coverage through TRICARE or the Department of Veterans Affairs. What should I do?................51
138. I have medical coverage through the Department of Indian Health Services. What should I do?.........................................................................................52
139. I have a private medical insurance plan. Can they claim a Lien on my Award?.........................................................................................................52
140. What happens if I dispute a Lien? ..................................................................53
141. How and when is a Lien paid?........................................................................53
142. Will I be notified when the Claims Administrator pays a Lien? .........................54
143. Whom do I contact with questions about Liens? .............................................55

Liens – Information for Lienholders ..............................................................................56

144. How does a lienholder notify the Program of a Medical Lien?.........................56
145. How does a lienholder notify the Program of an Attorneys' or an Other Lien? ..56
146. What information must a government health insurer provide to assert a Medical Lien? ...............................................................................................57
147. What information must a government health insurer provide to assert an alleged Lien? ...............................................................................................57
148. What information is required to assert an Attorneys' Lien?...............................57
149. What information is required to assert an Other Lien?.....................................58
150. What happens after I submit the required information and documents for a valid Lien?.....................................................................................................59
151. What happens if a Settlement Class Member disputes a Medical Lien?...........59

152. What happens if a Settlement Class Member disputes an Attorneys' Lien?......59
153. What happens if a Settlement Class Member disputes an Other Lien?.............60
154. Whom do I contact with questions about Liens? .................................................60

Payments .........................................................................................................................61

155. When will I receive payment for my Monetary Award or Derivative Claimant
      Award? ...........................................................................................................61
156. Who will issue the payment to me?...............................................................61
157. How will the funds be issued by Citibank? ...................................................62
158. If I want to appeal part of my Monetary Award amount, can I get paid for the
      rest before my appeal is final?.........................................................................62
159. Will my Monetary Award or Derivative Claimant Award be issued to my
      lawyer or directly to me?..................................................................................62

**Basic Information**
Questions and Answers



## 1. What is the Settlement about?

Plaintiffs sued the NFL Parties, claiming that Retired NFL Football Players received head trauma or injuries during their NFL Football careers, which caused or may cause them long-term neurological problems. They accused the NFL Parties of being aware of the evidence and the risks associated with repetitive traumatic brain injuries, but failing to warn and protect players against those long-term risks, and ignoring and concealing this information from players. The NFL Parties denied these claims. After extensive settlement negotiations, the Plaintiffs and the NFL Parties ended the litigation and agreed to this Settlement.

## 2. What are the benefits of the Settlement?

Benefits under the Settlement include:

- The Baseline Assessment Program, which provides baseline neuropsychological and neurological examinations for eligible Retired NFL Football Players and additional medical testing, counseling and/or treatment if they are diagnosed with moderate cognitive impairment during their baseline examinations (every qualified Retired NFL Football Player will be eligible to receive one baseline assessment examination during the term of the program);

- Monetary Awards for diagnoses of Death with CTE before April 22, 2015 (the Final Approval Date), ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (*i.e.*, moderate Dementia) and Level 1.5 Neurocognitive Impairment (*i.e.*, early Dementia) (see the injury descriptions available on the Settlement Website (go to the Information tab, click on Documents and then "Injury Definitions"). All valid claims under the Settlement, without limitation, will be paid in full throughout the 65-year life of the Settlement; and

- Education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of Retired NFL Football Players regarding the NFL's medical and disability programs and other educational programs and initiatives.

The Baseline Assessment Program and claims process for Monetary Awards are administered independently of the NFL Parties and any benefit programs that have been created between the NFL and the NFL Players Association. The NFL Parties are not involved in determining the validity of claims under the Settlement.

## 3.  Who is included in the Settlement Class?

The Settlement Class includes three groups:

**Retired NFL Football Players.** All living NFL Football players who, before July 7, 2014, were either:

1. Retired, formally or informally, from playing professional football with the NFL or any Member Club (including American Football League, World League of American Football, NFL Europe League and NFL Europa League players); or

2. Were previously on any Member Club or league's roster, including preseason, regular season, or postseason, but no longer under contract to a Member Club and not seeking active employment as a player with any Member Club (whether signed to a roster or signed to any practice squad, developmental squad, or taxi squad of a Member Club).

**Representative Claimants.** Authorized representatives, who are ordered by a court or other official, of deceased, legally incapacitated or incompetent Retired NFL Football Players.

**Derivative Claimants.** Someone who has a right to recover because he or she has a certain relationship with a living or deceased Retired NFL Football Player (for example, a Player's spouse who asserts the right to sue because of her husband's injury). These relationships may include spouses, parents, children, or other relationships depending on the state laws.

## 4.  Who are the settlement administrators?

The settlement administrators are the person(s) or entities appointed by the Court to perform their assigned responsibilities under the Settlement Agreement.

- **BAP Administrator:** Garretson Resolution Group, Inc. ("GRG") was appointed by the Court to implement and administer all Baseline Assessment Program-related provisions of the Settlement Agreement. The BAP Administrator's duties include retaining and overseeing the Qualified BAP Providers and Qualified BAP Pharmacy Vendor(s); scheduling BAP baseline assessment examinations; holding and keeping confidential any medical records and Settlement forms completed by the Qualified BAP Providers; and establishing procedures for BAP Supplemental Benefits.

- **Claims Administrator:** BrownGreer PLC was appointed by the Court to implement and administer the Settlement Agreement. The Claims Administrator's duties include, without limitation, providing monthly financial reports to the Special Masters; maintaining the Settlement Website and call center; establishing and processing registration; processing, reviewing and auditing Claim Packages and Derivative Claim Packages; determining whether Settlement Class Members are entitled to Monetary Awards and any other tasks necessary to administer the Settlement Agreement, as agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties.

- **Lien Resolution Administrator:** GRG was appointed by the Court to administer the Lien-related provisions of the Settlement Agreement. The Lien Resolution Administrator's duties include, without limitation, administering the process for identification and satisfaction of applicable Liens (though Settlement Class Members, or their lawyers, are responsible for satisfying and discharging all Liens).

These administrators could change in the future by agreement of Co-Lead Class Counsel and Counsel for the NFL Parties and/or approval by the Court.

## 5.  Who are the Special Masters?

The Court appointed Wendell Pritchett, the Provost of the University of Pennsylvania and the Presidential Professor of Law and Education at Penn Law School, and Jo-Ann M. Verrier, Vice Dean for Administrative Services at Penn Law School, as Special Masters to oversee certain aspects of the operation and administration of the Settlement Agreement on its behalf. Their current duties include reporting and providing information to the Court; hearing appeals of registration determinations and of claim appeals at the Court's request and overseeing: (1) the settlement administrators; (2) complaints from Co-Lead Class Counsel, Counsel for the NFL Parties, or the settlement administrators; and (3) fraud detection and prevention processes.

## 6.  Do the settlement administrators report to the NFL Parties or Co-Lead Class Counsel?

The settlement administrators were appointed by the Court and must report to the Special Masters and the Court. Under the Settlement Agreement, the Claims Administrator, BAP Administrator and Lien Resolution Administrator are also required to provide information on the progress and status of the Settlement Program to Co-Lead Class Counsel, Counsel for the NFL Parties and the Special Masters.

### 7.   What and when is the Effective Date?

The Settlement became final and effective on **January 7, 2017**.

### 8.   If I opted out of the Settlement, can I still get benefits from this Settlement?

No, you are not eligible for any Settlement benefits, including Monetary Awards or participation in the Baseline Assessment Program.

*Reminder: A list of all Settlement Class Members who the Court deemed to have opted out of the Settlement is available on the Settlement Website (go to the Information tab, click on Documents and then "Timely Opt Out Requests Containing All Information Required by Section 14.2(a) or Otherwise Approved by the Court").*

### 9.   If I did not opt out of the Settlement, can I sue the NFL Parties for the same thing later?

No, you gave up the right to sue the NFL Parties for all of the claims that this Settlement resolves unless you opted out. The deadline to opt out of the Settlement was October 14, 2014.

### 10.   I opted out of the Settlement. May I revoke that Opt Out and get back into the Settlement Program?

You may ask to revoke your Opt Out by sending a written request to the Claims Administrator (you can download and print the Opt Out Revocation Request Form, available on the Forms page of the Settlement Website). The Claims Administrator will present your request to Co-Lead Class Counsel and the NFL Parties for their consideration. If they consent, they will submit your request to the Court for approval.

*Reminder: A list of all Settlement Class Members who the Court deemed to have opted out of the Settlement is available on the Settlement Website (go to the Information tab, click on Documents and then "Timely Opt Out Requests Containing All Information Required by Section 14.2(a) or Otherwise Approved by the Court").*

## 11.   How do I get more information?

These answers summarize the Settlement. More details are in the Settlement Agreement, which is available on the Settlement Website (go to the Information tab, click on Documents and then "Amended Class Action Settlement Agreement (filed February 13, 2015)"). You may also contact the Claims Administrator for more information.

DO NOT WRITE OR TELEPHONE THE COURT OR THE NFL PARTIES FOR INFORMATION ABOUT THE SETTLEMENT.


Case 2:12-md-02323-AB   Document 9137-1   Filed 12/01/17   Page 13 of 69

**12.  Must a Retired NFL Football Player be vested under the NFL Retirement Plan to receive Settlement benefits?**

No, a Retired NFL Football Player can be a Settlement Class Member and receive Settlement benefits regardless of whether he is vested under the Bert Bell/Pete Rozelle NFL Player Retirement Plan.

**13.  Are the Settlement benefits connected to any NFL or NFLPA-related benefits programs?**

No, the Settlement benefits are completely independent of any benefits programs that have been created by or between the NFL and the NFL Players Association, including the 88 Plan and the Neuro-Cognitive Disability Benefit.

**14.  Does this Settlement prevent Retired NFL Football Players from bringing workers' compensation claims?**

No, claims for workers' compensation are not released by this Settlement.

**15.  What types of education programs are supported by the Settlement?**

The Settlement provides $10 million in funding to support education programs promoting safety and injury prevention with respect to football players, including safety-related initiatives in youth football, the education of Retired NFL Football Players regarding the NFL's medical and disability programs and other educational programs and initiatives. The Court will approve such programs with input from Co-Lead Class Counsel, Counsel for the NFL Parties and medical experts. Retired NFL Football Players may actively participate in such initiatives if they desire. Additional information and developments about these programs will be made available on the Settlement Website.



Case 2:12-md-02323-AB   Document 9137-1   Filed 12/01/17   Page 14 of 69

## 16. May I still register as a Retired NFL Football Player?

The deadline for Retired NFL Football Players to register was August 7, 2017. You still may send registration information to the Claims Administrator, but it cannot accept late Registration Forms without a showing of good cause.

## 17. May I still register as a Representative Claimant?

The registration deadline passed on August 7, 2017, but you still may register as a Representative Claimant under one of these conditions:

1. You register within 180 days of when a court or other official appoints you as the authorized representative of a deceased or legally incapacitated or incompetent Retired NFL Football Player (if you were not already appointed as the authorized representative before August 7, 2017); or

2. You are registering as the Representative Claimant of a Retired NFL Football Player who died or became legally incapacitated or incompetent after he registered himself by the August 7, 2017 deadline.

## 18. May I still register as a Derivative Claimant?

The Claims Administrator will accept your registration as a Derivative Claimant if it is submitted within 30 days after the associated Retired NFL Football Player (or his Representative Claimant) submits a Claim Package.

## 19. How can I send registration information to the Claims Administrator?

You can do this online (this is the fastest method) or by mailing a Registration Form:

1. **Online:** go to the Settlement Website and under the Registration tab, select what type of Settlement Class Member you are and follow the step-by-step instructions provided.

2. **Mail:** a Registration Form is available on the Forms page of the Settlement Website for you to download, print and mail to the Claims Administrator. After printing and completing the Registration Form, you can send it to the Claims Administrator.

**20.  Does registering mean I filed a claim?**

No. You must register before you can participate in the Baseline Assessment Program or submit a Claim Package for a Monetary Award or Derivative Claimant Award.

**21.  Do I need to submit any documents with my Registration Form?**

You did not have to submit any documents with your Registration Form. But, if you want to act as the Representative Claimant of a deceased, legally incapacitated, or incompetent Retired NFL Football Player, you will have to provide documents to establish yourself as his authorized representative before your registration is complete.

**22.  How do I change my mailing address?**

If you created a Portal account on the Claims Administrator's Settlement Website (www.nflconcussionsettlement.com), you can change your mailing address by logging into your Portal account and clicking the Registration button. Make your edits there and then click the Verify button to submit your new mailing address to the Claims Administrator.

If you do not use the online Portal, you can contact the Claims Administrator to change your mailing address by calling 1-855-887-3485, emailing ClaimsAdministrator@nflconcussionsettlement.com, or writing to P.O. Box 25369, Richmond, VA 23260. Include your Settlement Program ID, if you know it, along with your address change.

*Reminder: The Portal is a secure website where you, your lawyer (if you have one) and the settlement administrators can exchange information easily and quickly. You do not have to use the Portal to participate in the Settlement Program. Even if you use the Portal, you can tell the Claims Administrator you prefer to send and receive information by mail.*

**23.  How do I change my name or Social Security Number (or other tax identification number)?**

You can change your name and Social Security Number or other tax identification number through your Portal account until the Claims Administrator reviews them. After the Claims Administrator reviews them, you must contact the Claims Administrator to

update your information. When the Claims Administrator reviews your name and tax identification number depends on your Settlement Class Member type:

| Settlement Class Member | Name Review | Tax Identification Number Review |
|---|---|---|
| Retired NFL Football Player | After Registration Submitted | After Registration Submitted |
| Representative Claimant | After Registration Submitted | After Claim for Monetary Award Submitted |
| Derivative Claimant | After Registration Submitted | After Claim for Derivative Claimant Award Submitted |

To change your information in the online Portal, click the Registration button after you log in. Make your edits and then click the Verify button to submit your updated name or tax identification number. If you cannot edit your name or tax identification number online, contact the Claims Administrator to change your name or tax identification number by calling 1-855-887-3485 or writing to P.O. Box 25369, Richmond, VA 23260. Include your Settlement Program ID, if you know it, along with your name or tax identification number change.

**24.   I received a Notice of Incomplete Registration saying I am missing proof of playing NFL Football. Should I go to the NFL or a Member Club to ask them for such records?**

No. Do not contact the NFL or a Member Club directly. If you cannot get proof of your NFL playing career (such as through newspaper clippings or your stored records), call the Claims Administrator at 1-855-887-3485, or email ClaimsAdministrator@NFLConcussionSettlement.com for help. A lawyer representing a Settlement Class Member should call or email his or her Law Firm Contact. The Claims Administrator will research the situation and ask the NFL Parties for any records the NFL or a Member Club may have and then get back to you. You will not receive a Notice of Adverse Registration Determination while this research is ongoing. If the Claims Administrator cannot obtain sufficient records through these efforts, the Settlement Class Member will be given additional time to provide proof of playing NFL Football.


### 25.   What is the Baseline Assessment Program ("BAP")?

The BAP provides baseline neuropsychological and neurological assessment examinations ("BAP exams") to determine whether Retired NFL Football Players are suffering from neurocognitive impairment. These exams are provided free of charge to eligible retired players.

### 26.   Who can participate in the BAP?

You can participate if you are a living Retired NFL Football Player who:

1.  Earned at least one-half of an Eligible Season;

2.  Registered in a timely manner to participate in the Settlement; and

3.  Did not opt out of the Settlement.

If you are eligible to participate in the BAP, you should have received a favorable registration determination with instructions on how to participate.

### 27.   Why should I have a BAP exam?

The baseline assessment examination offers these benefits:

- You will be examined by two experts — a neuropsychologist and a neurologist. (These specialists are called "Qualified BAP Providers.")

- During your appointments, you can ask questions that only these specialists can answer.

- The exams will determine whether your neurocognitive functioning is impaired and, if so, the level of impairment.

- If you are diagnosed with Level 1 Neurocognitive Impairment (as defined by the Settlement), you will be eligible for benefits that will cover additional testing and treatment for your condition (called "BAP Supplemental Benefits").

- If you are diagnosed with Level 1.5 or 2 Neurocognitive Impairment, you will be eligible to file a claim for a Monetary Award.

- Even if you are found to be free from impairment, the results of the examination can be used as a baseline for any similar evaluations you may have in the future. The results are yours to keep and use for the rest of your life.

The definitions for the diagnoses that can result from a baseline assessment exam can be found at Exhibit 1 of the Settlement Agreement, which is available on the Settlement Website (go to the Information tab, click on Documents and then "Amended Class Action Settlement Agreement (filed February 13, 2015)").

### 28.  How many doctors do I need to see?

The BAP exam includes two appointments with two different specialists. One appointment is with a board-certified neuropsychologist. The other is with a board-certified neurologist. The two specialists perform different types of tests, then consult with one another on a diagnosis.

### 29.  Who pays for these examinations?

The exams are paid for by the BAP Administrator from funds included in the Settlement. There is no cost to you or your family. Your medical insurance will not be billed for the services covered by the BAP.

### 30.  Who can be a Qualified BAP Provider?

Only qualified neuropsychologists and neurologists can perform BAP exams. To qualify, these experts must be board-certified in their specialty and meet other requirements. Every Qualified BAP Provider was evaluated and selected by the independent, Court-appointed BAP Administrator and then approved by the NFL Parties and Co-Lead Class Counsel.

### 31.  Can I choose my own doctors for this exam?

Only Qualified BAP Providers can conduct BAP exams. If you already have a relationship with a Qualified BAP Provider, you can request that the appropriate part of your exam (neurological or neuropsychological) be scheduled with that specialist.

### 32.  Do the Qualified BAP Providers report to the NFL?

No. The Qualified BAP Providers operate under the BAP Administrator's supervision. They do not report to any of the parties to the Settlement.

## 33.   Is there a deadline for getting a BAP exam?

Yes. Your exact deadline depends on your age:

- If you were born on or before January 7, 1974, you must have your baseline assessment examination on or before June 6, 2019.

- If you were born after January 7, 1974, you must have your baseline assessment examination on or before June 7, 2027 or before you turn 45, whichever is sooner.

## 34.   How long will the Baseline Assessment Program be available?

The BAP will provide exams for ten years from the BAP's commencement on June 6, 2017, but you may have a shorter deadline to receive a baseline assessment examination. However, Retired NFL Football Players who receive a diagnosis of Level 1 Neurocognitive Impairment will be entitled to five years of BAP Supplemental Benefits, even if those five years extend beyond the term of the BAP.

## 35.   How can I schedule a BAP exam?

If you are eligible for the BAP, you should have received a favorable registration determination with instructions for requesting appointments.

## 36.   Where do I go for my BAP exam?

A BAP exam includes two appointments with two specialists —one with a neuropsychologist and another with a neurologist. The BAP uses a nationwide network of independent Qualified BAP Providers, who provide the BAP exam. In the process of scheduling your BAP appointments, you will be provided with the names and addresses of your Qualified BAP Providers.

## 37.   How long does a BAP exam take?

The neurological exam should take one to two hours. The neuropsychological exam may take six to eight hours.

### 38.  Is it possible to schedule both parts of the BAP exam on the same day?

Because the neuropsychological exam takes so much time, it is not possible to schedule both parts of the BAP exam on the same day. If you must travel in order to see the providers, the BAP Administrator will make reasonable efforts (upon request) to schedule your appointments on consecutive days but cannot guarantee that it will be able to do so.

### 39.  Can appointments be rescheduled or cancelled?

Yes, but because so many retired players are participating in the BAP, you are strongly encouraged to keep your appointments once they have been scheduled for you. If you need to cancel or change an appointment, notify the BAP Administrator as soon as possible. The BAP Administrator will contact the provider to cancel or reschedule the appointment for you. Note that requests for rescheduling may result in significant wait times for the next available appointment.

Please give the BAP Administrator as much advance notice as you can if you need to cancel or reschedule. If you give plenty of notice, the BAP Administrator may be able to give that appointment time to another retired player.

### 40.  What happens if I miss an appointment?

If you miss an appointment or fail to cancel one in a timely manner, you will be responsible for paying the provider's no-show or late cancellation fee. The BAP Administrator will not pay such fees.

### 41.  What kind of diagnosis can I get from a BAP exam?

The only diagnoses that can result from a BAP exam are:

- Level 1 Neurocognitive Impairment (moderate cognitive impairment)
- Level 1.5 Neurocognitive Impairment (early Dementia)
- Level 2 Neurocognitive Impairment (moderate Dementia)

Both Qualified BAP Providers (the neuropsychologist and the neurologist) must agree on your diagnosis. If your providers do not agree on a diagnosis, the Settlement's administrators will take steps to resolve the conflict.

## 42.   What about conditions like ALS or Alzheimer's Disease?

According to the terms of the Settlement Agreement, Qualified BAP Providers are not allowed to diagnose Amyotrophic Lateral Sclerosis (ALS), Parkinson's Disease, and Alzheimer's Disease during a BAP exam. For the purposes of filing a Monetary Award, these conditions must be diagnosed outside of the BAP.

## 43.   Does there have to be a diagnosis? What if I am OK?

Your BAP exam may result in no diagnosis at all. When this happens, it means that the findings of your BAP exam do not meet the criteria for any level of neurocognitive impairment as defined by the Settlement Agreement.

Even without a diagnosis, however, the BAP exam is worthwhile. In the future, if you have another examination to check for neurocognitive impairment, that neurologist or neuropsychologist can use the results from your BAP exam as a baseline for measuring any loss of neurocognitive ability at that time.

## 44.   What happens after a BAP exam?

When both parts of the BAP exam are done, the neuropsychologist and the neurologist submit their findings to the BAP Administrator, which will then notify you (and your lawyer, if you have one) of the results and provide instructions for obtaining the medical records from your exam. If you receive a diagnosis that qualifies you for BAP Supplemental Benefits or to file a claim for a Monetary Award, the notification will tell you what to do next.

## 45.   What should I do if my BAP exam results in a diagnosis?

The steps you should take depend on your diagnosis:

- If you are diagnosed with Level 1 Neurocognitive Impairment, you will be eligible to receive BAP Supplemental Benefits.
- If you are diagnosed with either Level 1.5 or Level 2 Neurocognitive Impairment, you can file a claim for a Monetary Award.

When you are notified of your diagnosis, you also will receive instructions on the steps you must take to claim these benefits.

### 46.   Will my Monetary Award be affected if I don't have a BAP exam?

It depends on when you receive your Qualifying Diagnosis and the nature of the diagnosis. There is a 10% reduction to the Monetary Award only if you:

- Did not receive a Qualifying Diagnosis before January 7, 2017;
- Do not participate in the BAP; and
- Receive a Qualifying Diagnosis (other than ALS) after your deadline to receive a BAP exam.

### 47.   What are BAP Supplemental Benefits?

BAP Supplemental Benefits pay for approved follow-up examinations, treatments, counseling, and prescription medications for Retired NFL Football Players diagnosed with Level 1 Neurocognitive Impairment. To qualify for coverage, these services and medications must be generally accepted by the medical community.

The BAP Administrator coordinates payment for these services, which are delivered by Qualified BAP Providers. When prescriptions are prescribed, they are filled through a Qualified BAP Pharmacy Vendor.

### 48.   How long will I have to use my BAP Supplemental Benefits?

If you are eligible for BAP Supplemental Benefits, you can use them until June 6, 2027 or for up to five years of your date of diagnosis (whichever is later), even if those five years extend beyond the term of the BAP.

BAP Supplemental Benefits are available only to retired players whose BAP exam results in a diagnosis of Level 1 Neurocognitive Impairment.

### 49.   How much will my BAP Supplemental Benefits cover? Is there a limit?

The maximum dollar value of BAP Supplemental Benefits will be set on June 6, 2018, upon approval of the Court, and may be subject to later adjustments with additional Court approval.

**50.   What is a Qualified BAP Pharmacy Vendor?**

A Qualified BAP Pharmacy Vendor is a national pharmacy benefits manager that fills approved prescriptions covered by BAP Supplemental Benefits. These vendors operate under contract with the BAP Administrator.

**51.   I received a "Baseline Assessment Program HIPAA Authorization Form." What do I do with it?**

You must complete the form before the BAP Administrator can schedule your BAP exam. You can complete the form by hand and send it to the BAP Administrator as directed at the end of the form. An electronic version of this form is also available on the Baseline Assessment Program's online portal.



## 52.   Who can submit a claim for a Monetary Award?

Retired NFL Football Players, or their Representative Claimants, who are registered in the Settlement Program and believe they have a Qualifying Diagnosis.

## 53.   What is a Claim Package?

A Claim Package includes a Claim Form, HIPAA Form, Diagnosing Physician Certification Form and medical records reflecting the Qualifying Diagnosis. You also can send proof of Eligible Seasons if you think you have more than what the Claims Administrator already credited to you during the registration process. All required forms are available on the Settlement Website.

*Reminder: The Settlement Program uses different HIPAA Forms for different purposes. Your Claim Package must include the "Monetary Award Claim Package HIPAA Form." This form is available on the Forms page of the Settlement Website.*

## 54.   How do I submit a Claim Package?

If you created a Portal account on the Claims Administrator's Settlement Website ([www.nflconcussionsettlement.com](http://www.nflconcussionsettlement.com)), log in and follow the directions to submit your Claim Package. You can also create a Portal account now if you would like and submit your Claim Package online. If you do not have a Portal account and do not wish to create one, you can mail your Claim Package to the Claims Administrator. The address is listed in Question 55.

*Reminder: The Portal is a secure website where you, your lawyer (if you have one) and the settlement administrators can exchange information easily and quickly. You do not have to use the Portal to participate in the Settlement Program. Even if you use the Portal, you can tell the Claims Administrator you prefer to send and receive information by mail.*

## 55.   Where do I send my Claim Package if I do not use an online Portal?

You can send your Claim Package to the Claims Administrator using one of these methods:

**U.S. Mail:**
NFL Concussion Settlement
Claims Administrator
P.O. Box 25369
Richmond, VA 23260

**Delivery (ex., FedEx, UPS):**
NFL Concussion Settlement
c/o BrownGreer PLC
250 Rocketts Way
Richmond, VA 23231

## 56.   When can I submit a Claim Package?

You can submit a Claim Package after you receive a Qualifying Diagnosis. You cannot receive a Monetary Award without a Qualifying Diagnosis.

## 57.   Is there a deadline to submit my Claim Package?

Your deadline depends on the Qualifying Diagnosis date.

(a) Diagnoses on or before February 6, 2017: submit your claim by February 6, 2019.

(b) Diagnoses after February 6, 2017: submit your claim within two years from the date of the diagnosis.

## 58.   How can I change answers I made in my Claim Form?

If you are a Portal user, you may log in to your Portal account and edit your submitted Claim Form as often as necessary until the Claims Administrator begins reviewing it. Each time you change your Claim Form, you must re-sign it to confirm your changes. You cannot edit your Claim Form after the Claims Administrator begins reviewing your claim.

If you do not have a Portal account, you may mail a new, signed Claim Form to the Claims Administrator. The Claim Form is available on the Portal or you can request a

copy from the Claims Administrator by calling 1-855-887-3485. You can also call if you need help editing your Claim Form and a Program Specialist will help you.

### 59.   What is a Qualifying Diagnosis?

These diagnoses are eligible for a Monetary Award:

(a) Level 1.5 Neurocognitive Impairment;

(b) Level 2 Neurocognitive Impairment;

(c) Alzheimer's Disease;

(d) Parkinson's Disease;

(e) Death with CTE (for a Retired NFL Football Player who died before April 22, 2015); and

(f) ALS.

These Qualifying Diagnoses are defined in Exhibit 1 of the Settlement Agreement, which is available under the Information tab on the Settlement Website (click on Documents and then "Amended Class Action Settlement Agreement (filed February 13, 2015)").

### 60.   Who can make a Qualifying Diagnosis?

The Settlement Agreement defines the types of physicians qualified to make a Qualifying Diagnosis. These definitions depend on the type and date of the Qualifying Diagnosis. Here is a breakdown of who can make each Qualifying Diagnosis:

**(a) Level 1.5 or Level 2 Neurocognitive Impairment:**

(1) Diagnoses on or after January 7, 2017: Qualified BAP Providers or Qualified MAF Physicians.

(2) Diagnoses between July 7, 2014 and January 7, 2017: Board-certified neurologists, board-certified neurosurgeons, or other board-certified neuro-specialist physicians.

(3) Diagnoses before July 7, 2014: Board-certified or otherwise qualified neurologists, neurosurgeons, or other neuro-specialist physicians.

**(b) Alzheimer's Disease, Parkinson's Disease and ALS:**

(1) Diagnoses on or after January 7, 2017: Qualified MAF Physicians.

(2) Diagnoses between July 7, 2014 and January 7, 2017: Board-certified neurologists, board-certified neurosurgeons, or other board-certified neuro-specialist physicians.

(3) Diagnoses before July 7, 2014: Board-certified or otherwise qualified neurologists, neurosurgeons, or other neuro-specialist physicians.

**(c) Death with CTE:**

Board-certified neuropathologists. A Death with CTE diagnosis may be made only for a Retired NFL Football Player who died before April 22, 2015. If the Player died between July 7, 2014 and April 22, 2015, he must have been diagnosed within 270 days of his death. If the Player died before July 7, 2014, his diagnosis must have occurred before April 22, 2015. A CTE diagnosis made before the Player died is not eligible for a Monetary Award.

*Reminder: You can still submit a claim for a Player who died before January 7, 2017, if he was diagnosed when he was alive with Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, or ALS. See Section 6.3 of the Settlement Agreement for more detail, which is available under the Information tab on the Settlement Website (click on Documents and then "Amended Class Action Settlement Agreement (filed February 13, 2015)").*

*Reminder: You do not have to prove that the Qualifying Diagnosis was caused by playing football or from head injuries the Player experienced. The fact that a Player has a Qualifying Diagnosis is enough.*

## 61.   Who is a Qualified MAF Physician?

A Qualified MAF Physician is a board-certified neurologist, board-certified neurosurgeon, or other board-certified neuro-specialist physician, who is part of an approved list of physicians authorized to make a Qualifying Diagnosis. The list of Qualified MAF Physicians eligible to make Qualifying Diagnoses is posted on the Settlement Website.

**62.   How do I get evaluated for a Qualifying Diagnosis if I do not already have one?**

You can make an appointment with either:

(a) Qualified BAP Providers (if you are BAP-eligible) who can determine whether you have Level 1.5 Neurocognitive Impairment or Level 2 Neurocognitive Impairment; or

(b) A Qualified MAF Physician, who can determine whether you have Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, or ALS.

*Reminder: BAP examinations are free of charge. You are responsible for paying for an examination by a Qualified MAF Physician, but many Qualified MAF Physicians accept health insurance.*

**63.   What should I do if I already have a Qualifying Diagnosis?**

You should submit a Claim Package for that Qualifying Diagnosis and include any medical records from the physician who made the diagnosis.

*Reminder: Only Qualified BAP Providers and Qualified MAF Physicians can make Qualifying Diagnoses on or after January 7, 2017.*

**64.   What makes a Claim Package complete?**

Your Claim Package is complete if it includes these items:

(a) A filled out Claim Form signed by you;

(b) A filled out HIPAA Form signed by you;

(c) A Diagnosing Physician Certification Form filled out and signed by the physician who examined you and made the Qualifying Diagnosis;

(d) The medical records reflecting your Qualifying Diagnosis (additional medical records may be requested and/or required by the Claims Administrator or an AAP member during the Claim Package review); and

(e) In the event you want to prove more Eligible Seasons than what the Claims Administrator has already found for you when you registered for the Settlement program, records showing employment or participation in NFL Football.

*Reminder:* *Make sure the type and date of the Qualifying Diagnosis on your Claim Form matches the diagnosis and the diagnosis date listed on your Diagnosing Physician Certification Form, as well as the date reflected in your medical records.*

### 65.   What counts as a medical record?

These documents or items are medical records, if they are contemporaneous with the relevant event:

(1) Results from medical procedures, tests, or studies;

(2) Reports made after reviewing results from medical procedures, tests, or studies;

(3) Consultation or examination reports from a healthcare provider;

(4) Visit or examination summaries or notes prepared or dictated by a healthcare provider;

(5) Prescriptions written by a healthcare provider;

(6) An email, letter, declaration, affidavit, or sworn statement by a healthcare provider made in the normal course of business, which summarizes his or her conclusion about a medical condition; or

(7) Any other record that a healthcare provider made in the normal course of his or her practice, which relates to a diagnosis or its course and care of treatment.

*Reminder:* *An item is contemporaneous if it was created at or around the same time of the event described. For example, a document summarizing a doctor's visit that took place on January 3, 2017, must have been created on January 3, 2017 or very close to that visit to be a contemporaneous document.*

### 66.   What does it mean for medical records to "reflect" my Qualifying Diagnosis?

To reflect a Qualifying Diagnosis, a medical record must contain a specific reference to the Qualifying Diagnosis or other evidence of that diagnosis.

**67.  What does it mean for medical records to "support" my Qualifying Diagnosis?**

Medical records supporting the Qualifying Diagnosis means those records documenting the diagnosis—in other words, the medical records that purport to establish that the Retired NFL Football Player has the claimed Qualifying Diagnosis.

When considering whether a Claim Package is complete, the Claims Administrator does not evaluate the merits of the medical records. However, if the Claim Package is missing an item which the Claims Administrator can tell the diagnosing physician relied upon or a record documenting his/her diagnosis, the Claims Administrator will insert a customized comment in the Notice of Preliminary Review to inform the Settlement Class Member exactly what should be submitted.

**68.  What must the medical records show for Level 1.5 and Level 2 Neurocognitive Impairment?**

**For Retired NFL Football Players diagnosed through the BAP:** The medical records must show:

(1) A diagnosis made for a living Retired NFL Football Player.

(2) Concern from the Retired NFL Football Player, the physician, or someone who knows the Player that there has been a severe decline in cognitive function.

(3) Evidence of a decline from a previous level of performance, according to the neuropsychological testing described in Exhibit 2 to the Settlement Agreement, in two or more of these cognitive domains: complex attention, executive function, learning and memory, language, or perceptual-spatial; at least one domain must be complex attention, executive function, or learning and memory. For Level 1.5 diagnoses, this decline must be "moderate" to "severe." For Level 2 diagnoses, it must be "severe."

(4) Documents showing functional impairment equal to at least a Category 1.0 ("Mild") impairment (for Level 1.5 diagnoses) or Category 2.0 ("Moderate") impairment (for Level 2 diagnoses), according to the National Alzheimer's Coordinating Center's Clinical Dementia Rating ("CDR") Scale, in the areas of (a) Community Affairs, (b) Home & Hobbies, and (c) Personal Care. The date of any evidence the diagnosing physician uses to find functional impairment must be before the Qualifying Diagnosis date.

If there are no documents available to corroborate the Player's functional impairment, such as previous medical or employment records, the medical records must:

a. Show evidence of "moderate" to "severe" (for Level 1.5 diagnoses) or "severe" (for Level 2 diagnoses) cognitive decline in executive function or learning and memory, plus at least one other cognitive domain; and

b. Include a sworn statement from someone who is familiar with the Player's condition, but not one of his family members. The diagnosing physician will decide if this statement corroborates the Player's functional impairment.

*Reminder: You can use the "Third-Party Sworn Statement: Functional Impairment (SWS-3)" to meet the sworn statement requirement. This template is available on the Forms page of the Settlement Website. If the Player was diagnosed outside the BAP, you can send the diagnosing physician's summaries of his or her interviews with those close to the Player to determine functional impairment.*

(5) The cognitive defects do not occur exclusively in the context of a delirium, acute substance abuse, or as a result of medication side effects.

**For living Retired NFL Football Players diagnosed outside the BAP:** A diagnosis while living of Level 1.5 Neurocognitive Impairment *i.e.*, early dementia, or Level 2 Neurocognitive Impairment, *i.e.*, moderate dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth above for diagnoses done in the BAP, made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth in Sections 6.3(b)-(d) of the Settlement Agreement.

**For Retired NFL Football Players who died before January 7, 2017:** A diagnosis while living of Level 1.5 Neurocognitive Impairment *i.e.*, early dementia, or Level 2 Neurocognitive Impairment, *i.e.*, moderate dementia, based on evaluation and evidence generally consistent with the diagnostic criteria set forth above for diagnoses done in the BAP, made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology or neurocognitive disorders, as set forth  and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

For diagnoses by an MAF Physician after January 7, 2017:
Neuropsychological testing must be performed by: (a) the MAF Physician, (b) a BAP Provider, or (c) the ABPP-CN certified neuropsychologist to whom the Player was referred by the MAF Physician. This neuropsychological testing cannot be more than one year before the date of the Qualifying Diagnosis. If diagnosed by an MAF Physician after January 7, 2017, he or she must send the worksheets created when deciding the level of functional impairment according to the National Alzheimer's Coordinating Center's CDR Scale.

*Reminder: For Level 2 diagnoses made outside the BAP or before January 7, 2017, or by a Qualified MAF Physician, certain testing is not required if the diagnosing physician states on the Diagnosing Physician Certification Form the Player's dementia is so severe that the testing is medically unnecessary. Where neuropsychological testing is required, the raw scores from the testing may have to be submitted*

## 69. What must the medical records show for Alzheimer's Disease?

For living Retired NFL Football Players, a diagnosis while living of the specific disease of Alzheimer's Disease as defined by the World Health Organization's International Classification of Diseases, 9th Edition (ICD-9), the World Health Organization's International Classification of Diseases, 10th Edition (ICD-10), or a diagnosis of Major Neurocognitive Disorder due to probable Alzheimer's Disease as defined in the Diagnostic and Statistical Manual of Mental Disorders (DSM-5), made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

For Retired NFL Football Players deceased before January 7, 2017, a diagnosis of Major Neurocognitive Disorder due to probable Alzheimer's Disease consistent with the definition in Diagnostic and Statistical Manual of Mental Disorders (DSM-5), or a diagnosis of Alzheimer's Disease, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology to make such a diagnosis, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

*Reminder: An AAP member's review of diagnosis made before January 7, 2017, is based on principles generally consistent with the diagnostic criteria set forth in Exhibit 1 to the Settlement Agreement, including consideration of, without limitation, the qualifications of the diagnosing physician, the supporting medical records and the year and state of medicine in which the Qualifying Diagnosis was made. The AAP member also shall confirm that the Qualifying Diagnosis was made by an*

*appropriate physician, as set forth in Section 6.3 of the Settlement Agreement. The review of whether a Qualifying Diagnosis is based on principles generally consistent with the diagnostic criteria set forth in Exhibit 1 does not require identical diagnostic criteria, including without limitation, the same testing protocols or documentation requirements.*

### 70.   What must the medical records show for Parkinson's Disease?

For living Retired NFL Football Players, a diagnosis while living of the specific disease of Parkinson's Disease as defined by the World Health Organization's International Classification of Diseases, 9th Edition (ICD-9), the World Health Organization's International Classification of Diseases, 10th Edition (ICD-10), or a diagnosis of Major Neurocognitive Disorder probably due to Parkinson's Disease as defined in the Diagnostic and Statistical Manual of Mental Disorders (DSM-5), made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

For Retired NFL Football Players deceased before January 7, 2017, a diagnosis of Parkinson's Disease, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology to make such a diagnosis, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

***Reminder:*** *An AAP member's review of diagnosis made before January 7, 2017, is based on principles generally consistent with the diagnostic criteria set forth in Exhibit 1 to the Settlement Agreement, including consideration of, without limitation, the qualifications of the diagnosing physician, the supporting medical records and the year and state of medicine in which the Qualifying Diagnosis was made. The AAP member also shall confirm that the Qualifying Diagnosis was made by an appropriate physician, as set forth in Section 6.3 of the Settlement Agreement. The review of whether a Qualifying Diagnosis is based on principles generally consistent with the diagnostic criteria set forth in Exhibit 1 does not require identical diagnostic criteria, including without limitation, the same testing protocols or documentation requirements.*

### 71.   What must the medical records show for Death with CTE?

A Death with CTE diagnosis may be made only for a Retired NFL Football Player who died before April 22, 2015 (the Final Approval Date) through a post-mortem

diagnosis before April 22, 2015, except if the Player died between July 7, 2014 and April 22, 2015, the Representative Claimant had until 270 days after his death to receive the diagnosis. A CTE diagnosis made before the Player died is not eligible for a Monetary Award.

### 72.   What must the medical records show for ALS?

A diagnosis while living of the specific disease of Amyotrophic Lateral Sclerosis, also known as Lou Gehrig's Disease ("ALS"), as defined by the World Health Organization's International Classification of Diseases, 9th Edition (ICD-9) or the World Health Organization's International Classification of Diseases, 10th Edition (ICD-10), made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement.

For Retired NFL Football Players deceased before January 7, 2017, a diagnosis of ALS, made while the Retired NFL Football Player was living by a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, or by a physician with sufficient qualifications in the field of neurology to make such a diagnosis, as set forth and provided in Sections 6.3(c)-(e) of the Settlement Agreement.

*Reminder:  An AAP member's review of diagnosis made before January 7, 2017, is based on principles generally consistent with the diagnostic criteria set forth in Exhibit 1 to the Settlement Agreement, including consideration of, without limitation, the qualifications of the diagnosing physician, the supporting medical records and the year and state of medicine in which the Qualifying Diagnosis was made. The AAP member also shall confirm that the Qualifying Diagnosis was made by an appropriate physician, as set forth in Section 6.3 of the Settlement Agreement. The review of whether a Qualifying Diagnosis is based on principles generally consistent with the diagnostic criteria set forth in Exhibit 1 does not require identical diagnostic criteria, including without limitation, the same testing protocols or documentation requirements.*

### 73.   What if I cannot get medical records or a Diagnosing Physician Certification Form from the diagnosing physician?

If you have questions about the unavailability of your medical records, including those records from 88 Plan physicians, contact the Claims Administrator to see if these records can be excused based on Section 8.2(a) of the Settlement Agreement.

## 74.   Who reviews my Claim Package?

The Claims Administrator initially reviews all Claim Packages to make sure they have the necessary information and documents.

After the Claims Administrator confirms that the Claim Package is complete, either the Claims Administrator or an AAP member reviews it to determine if there is a Qualifying Diagnosis made by a physician with the proper credentials and whether it is eligible for a Monetary Award.

The Claims Administrator reviews Qualifying Diagnoses that were:

(a) Made before July 1, 2011, by a board-certified neurologist, board-certified neurosurgeon, or other board-certified neuro-specialist physicians; and

(b) Made on or after January 7, 2017, by Qualified BAP Providers or Qualified MAF Physicians.

An AAP member reviews all other Qualifying Diagnoses made before January 7, 2017.

## 75.   What is the AAP and what does it do?

The Appeals Advisory Panel ("AAP") consists of board-certified neurologists whom the Court approved to make recommendations to the Court and the Special Masters, upon their request, about the medical aspects of the Settlement and review claims for certain Qualifying Diagnoses. The AAP also may be asked by the BAP Administrator to determine a Retired NFL Football Player's level of neurocognitive impairment when there is a lack of agreement between two Qualified BAP Providers.

An AAP member reviews Qualifying Diagnoses made before January 7, 2017, based on principles generally consistent with the diagnostic criteria set forth in Exhibit 1 to the Settlement Agreement, including consideration of, without limitation, the qualifications of the diagnosing physician, the supporting medical records and the year and state of medicine in which the Qualifying Diagnosis was made. The AAP member also shall confirm that the Qualifying Diagnosis was made by an appropriate physician, as set forth in Section 6.3 of the Settlement Agreement. The review of whether a Qualifying Diagnosis is based on principles generally consistent with the diagnostic criteria set forth in Exhibit 1 does not require identical diagnostic criteria, including without limitation, the same testing protocols or documentation requirements.

### 76. What is the AAPC and what does it do?

The Appeals Advisory Panel Consultants ("AAPC") are board-certified neuropsychologists approved by the Court to give advice about neuropsychological testing and cognitive impairment to the Court, Special Masters, or AAP members.

### 77. How is the date of a Qualifying Diagnosis determined?

The date of a Qualifying Diagnosis is generally when the diagnosing physician has all the materials and information necessary to make his or her diagnosis. Depending on what those materials show, the date of a Qualifying Diagnosis could be before or after the Player is personally examined by the diagnosing physician, depending on the unique facts and circumstances of a particular claim.

### 78. What happens after I submit my Claim Package?

The Claims Administrator will review your Claim Package to determine whether you have sent in everything required to make your claim complete. If you have, your claim will be reviewed on its merits either by the Claims Administrator or by an AAP member. If you have not sent in everything to make your claim complete, you will receive a Notice of Preliminary Review or a Notice of Request for Additional Documents describing what is missing and what you need to do next.

### 79. I received a Notice of Preliminary Review. What does that mean?

If you submitted a claim for Level 1.5 Neurocognitive Impairment or Level 2 Neurocognitive Impairment diagnosed outside of the Baseline Assessment Program and your Claim Package is missing something, you will receive a Notice of Preliminary Review telling you what is missing and what to send in. This notice does not mean your claim is being denied. Instead, it gives you the chance to submit your best claim. Only certain fundamental items must be submitted before your claim can be evaluated, such as a signed HIPAA Form, a signed Claim Form, and a Diagnosing Physician Certification Form signed by the doctor who made the Qualifying Diagnosis. For certain other items, you may choose not to submit the requested documents and instead tell the Claims Administrator to review the Claim Package as submitted. But as stated above, it is to your benefit to provide the information requested.

If you are not clear on what is needed, contact the Claims Administrator for help.

## 80. I received a Notice of Request for Additional Documents. What does that mean?

If you submitted a claim for Level 1.5 Neurocognitive Impairment or Level 2 Neurocognitive Impairment diagnosed through the BAP or for Alzheimer's Disease, Parkinson's Disease, ALS, or Death with CTE, and your Claim Package is missing something, you will receive a Notice of Request for Additional Documents telling you what is missing and what to send in. This notice does not mean your claim is being denied. Instead, it gives you the chance to submit your best claim.

You may also receive a Notice of Request for Additional Documents if an AAP member is reviewing your claim and needs additional information. In this situation, the "What is Missing" column in Section II of the Notice will say that the member of the Appeals Advisory Panel reviewing your claim has requested additional information, and the "How to Address this Item" column will tell you what the AAP member needs. This notice does not mean your claim is being denied, either. If you are unable to provide the requested information, you should tell the Claims Administrator why. The Claims Administrator will share your reason with the AAP member, who will decide whether he or she can finish reviewing your claim without the requested information.

## 81. What happens after I respond to my notice asking for more information?

The Claims Administrator will review your Claim Package again. If the Claims Administrator or the AAP member determines your Claim Package is now complete, it will be reviewed on its merits. If the Claims Administrator or the AAP member believes additional information is necessary, you will receive a new Notice of Preliminary Review or Notice of Request for Additional Documents telling you what is needed and giving you another chance to respond before the Claims Administrator takes further action on your claim. The Claims Administrator will review your Claim Package again and either: (1) determine that the requested information has been provided and review it on the merits or send it to an AAP member for merits review; or (2) determine that the requested information has not been provided and send another notice asking for more information, if necessary. Ultimately, the failure to provide the requested information may result in a possible denial of the claim.

## 82. What happens if I never respond to the Notice of Preliminary Review or the Notice of Request for Additional Documents?

If the notice listed one of the fundamental items needed for every claim, such as a signed HIPAA Form, a signed Claim Form, or a Diagnosing Physician Certification

Form signed by the physician who made the Qualifying Diagnosis, the Claims Administrator will deny your claim and will send you a notice explaining why. You will have the opportunity to appeal that denial if you wish. If the Claim Package contains all of the fundamental items, the Claims Administrator or the AAP member will determine whether the claim qualifies for a Monetary Award and then the Claims Administrator will send you a notice explaining the result. You can appeal that determination if you wish.

**83.   Does the Claims Administrator decide if a physician made the right Qualifying Diagnosis?**

No. The Claims Administrator just makes sure that all necessary documents and information are included in your Claim Package and that the procedural rules were followed. The Claims Administrator may deny a claim where the rules were not followed and the issue was not or cannot be cured.

**84.   I have provided my claim to the Claims Administrator and it is now complete enough to send to the AAP. What happens next?**

The Claims Administrator will assign your claim to an AAP member, who will review it within 45 days of receipt. There is no deadline for the Claims Administrator to assign the claim to an AAP member, but the Claims Administrator is doing this as quickly as possible. The AAP member will either:

(a) Find your Claim Package eligible for a Monetary Award;

(b) Deny your claim because the records do not support the Qualifying Diagnosis or the diagnosing physician did not have the necessary credentials; or

(c) Request more information or documents. The Claims Administrator will send you a notice asking for that information.

**85.   How can I check the status of my Claim Package review?**

If you created an account on the Claims Administrator's Settlement Website (www.nflconcussionsettlement.com), you can log in and check your claim status there. You may also call (1-855-887-3485) or email (ClaimsAdministrator@NFLConcussionSettlement.com) for an update.

**86.   How long could it take to review my Claim Package from start to finish?**

This is different for each claim. If you provided all the required information and the Qualifying Diagnosis does not need AAP review, you could have a Claim Package decision in under 45 days. However, if your claim needs AAP review, the AAP member has another 45 days to complete his or her review. If any information is missing from your Claim Package, the review process will take longer.

**87.   If I am eligible for a Monetary Award, how much money will I receive?**

The amount of your Monetary Award will depend on the Retired NFL Football Player's:

(1) Qualifying Diagnosis and his age at the time of that diagnosis (see the Monetary Award Grid, available under the Information tab on the Settlement Website (click on Documents and then "Monetary Award Grid (By Age at Time of Qualifying Diagnosis)");

(2) The number of Eligible Seasons (see "How to Calculate Eligible Seasons" on the Alerts page of the Settlement Website);

(3) Whether he had a Stroke or Traumatic Brain Injury that is related to the Qualifying Diagnosis; and

(4) Participation in a BAP examination for Qualifying Diagnoses made on or after January 7, 2017.

The Award amount also depends on:

(1) Any valid Liens on the Award, plus any Lien Resolution Administrator's costs and expenses, where appropriate;

(2) Any payment arrangements you made with your lawyer; and

(3) Whether a 1% offset is applied because at least one Derivative Claimant has registered, and

(4) Any further assessments ordered by the Court.

***Reminder:*** *The Monetary Award will be reduced by 75% if the Retired NFL Football Player had: (1) a Stroke that happened before or after the time he played NFL Football,*

*but before he received a Qualifying Diagnosis; or (2) a Traumatic Brain Injury unrelated to NFL Football that happened during or after his NFL Football career, but before he received a Qualifying Diagnosis. The Monetary Award will not be reduced if you can show that the Stroke or Traumatic Brain Injury is not related to the Qualifying Diagnosis.*

**88.  What can I do if I do not like my Claim Package determination (eligible or denied)?**

You may appeal. There is a $1,000 fee to appeal, but this fee will be refunded if you win your appeal. Tell the Claims Administrator if you cannot pay the $1,000 fee. Depending on your circumstances, the Claims Administrator may be able to waive the fee.

***Reminder:*** *If your claim is denied, you can submit another claim in accordance with the terms of the Settlement Agreement (see Section 9.1(c)(i)), which is available under the Information tab on the Settlement Website (click on Documents and then "Amended Class Action Settlement Agreement (filed February 13, 2015)").*

**89.  Can the NFL or Class Counsel appeal my Claim Package determination?**

Yes, they have the same appeal right as you do. If the NFL or Co-Lead Class Counsel appeals, the Claims Administrator will let you know why and you will have a chance to respond.



### 90. Who is a Representative Claimant?

A Representative Claimant is an authorized representative, ordered by a court or other official of competent jurisdiction under applicable state law, of a deceased, legally incapacitated or incompetent Retired NFL Football Player.

### 91. How do I become a Representative Claimant?

To become a Representative Claimant for a deceased, legally incapacitated, or incompetent Retired NFL Football Player, send the Claims Administrator one of the following documents showing your authority to act on his behalf:

(1) A copy of an order or other document showing that a local court or other official has appointed you as the Player's representative; or

(2) If the Player is legally incapacitated or incompetent, a copy of a "durable" or "springing" power of attorney ("POA") that is signed by the Player and names you as authorized to act for him if he became legally incapacitated or incompetent.

**Reminder:** *A standard POA is not enough to show your authority to act for a deceased Player.*

If you do not have a local court order or a "durable" or "springing" POA, you can be appointed by the federal court, but you (or the Player) must have started your registration with the Claims Administrator on or before August 7, 2017. To use this process, send the following documents to the Claims Administrator:

(1) A filled out Petition for Appointment of Representative Claimant, available on the Forms page of the Settlement Website;

(2) A filled out Representative Claimant Declaration. There are two versions: one for Deceased Players and another for Legally Incapacitated or Incompetent Players. Both documents are available on the Forms page of the Settlement Website.

(3) A medical record or other document showing the Player is deceased, legally incapacitated or incompetent; and

(4) The document(s) you listed in your Representative Claimant Declaration to show your authority to act on behalf of the Player. See "Documents Required for Appointment of Representative Claimant," available on the Documents page of the Settlement Website, for a list of documents that may support your authority to act.

We will provide your materials to the Special Master and then will send you a notice telling you the Special Master's decision.

### 92. Can a Retired NFL Football Player have more than one Representative Claimant?

No. Only one person can act as a Retired NFL Football Player's Representative Claimant.

### 93. Can I be a Retired NFL Football Player's Derivative Claimant if I am his Representative Claimant?

Yes, you can be both the Representative Claimant of the Retired NFL Football Player and a Derivative Claimant of the Player. You must fill out two different Registration Forms, one for each role.

### 94. Do Representative Claimants have to register for benefits?

Yes, Representative Claimants must register before they can submit Claim Packages. If you are a Representative Claimant, you can register in one of two ways:

(1) Online: go to http://www.nflconcussionsettlement.com/register.aspx and follow the step-by-step instructions.

(2) Mail: a Registration Form is available on the Forms page of the Settlement Website for you to download, print and mail to the Claims Administrator.

*Reminder: Registering is not the same as submitting a Claim Package.*

### 95. What is the deadline to register as a Representative Claimant?

The registration deadline passed on August 7, 2017, but you still may register as the Representative Claimant of a Retired NFL Football Player under one of these conditions:

(1) You register within 180 days of when a court or other official appoints you as the authorized representative of a deceased or legally incapacitated or incompetent Player; or

(2) You are registering as the Representative Claimant of a Player who died or became legally incapacitated or incompetent after he registered himself by the August 7, 2017 deadline.

**96.   If I am a Representative Claimant, do I have to submit Claim Package?**

Yes. You must submit a Claim Package to receive Settlement benefits. Your Claim Package requirements are the same as they would be for a Retired NFL Football Player.

Additionally, if you are the Representative Claimant of a Player who died before January 1, 2006, you will need to show that a wrongful death or survival claim would not be time-barred under applicable state law (for more detail about this, see Section 6.2(b) of the Settlement Agreement, which is available under the Information tab on the Settlement Website (click on Documents and then "Amended Class Action Settlement Agreement (filed February 13, 2015)").

**97.   If I am the Representative Claimant of a deceased Retired NFL Football Player, do I have to submit a Diagnosing Physician Certification Form?**

Yes. All claimants, including Representative Claimants, must submit a Diagnosing Physician Certification Form signed by the physician who made the Qualifying Diagnosis.

There is an exception to this requirement: if the Player died before January 7, 2017, and the physician who made the Qualifying Diagnosis also died or was legally incapacitated or incompetent before January 7, 2017, you do not have to submit a Diagnosing Physician Certification Form. But, you must provide evidence of the physician's death, incapacity or incompetence, and of his or her qualifications to make the Qualifying Diagnosis.

**Derivative Claimants**
Questions and Answers



## 98. Who is a Derivative Claimant?

A Derivative Claimant is someone who has a right to recover because he or she has a certain relationship with a Retired NFL Football Player, such as a spouse, parent, or child.

If the Claims Administrator finds Derivative Claimants eligible for a Derivative Claimant Award, their Award will be 1% of the Player's Monetary Award.

## 99. Can a Retired NFL Football Player have more than one Derivative Claimant?

Yes. A Retired NFL Football Player can have more than one Derivative Claimant. If multiple Derivative Claimants are attached to a Player and the Claims Administrator finds them eligible for a Derivative Claimant Award, they share the 1% of the Player's Monetary Award.

## 100. May someone be a Derivative Claimant of more than one Retired NFL Football Player?

Yes. A person who wishes to pursue a claim based on relationships with more than one Retired NFL Football Player must submit a Registration Form for each such relationship.

## 101. Can a deceased person be a Derivative Claimant?

No. A deceased person is not eligible for a Derivative Claimant Award in this Settlement Program. Only living Derivative Claimants can submit Derivative Claim Packages.

## 102. Can I register as a Retired NFL Football Player's Derivative Claimant if I also registered as a Representative Claimant?

Yes, you can register as the Representative Claimant of the Retired NFL Football Player and as a Derivative Claimant. You must use two different Registration Forms, one for each role.

### 103.   Do Derivative Claimants have to register for benefits?

Yes, Derivative Claimants must register before they can submit Derivative Claim Packages. A Derivative Claimant's deadline to register is 30 days after the related Retired NFL Football Player submits a Claim Package. If you are a Derivative Claimant, you can register in one of two ways:

(1) **Online:** go to http://www.nflconcussionsettlement.com/register.aspx and follow the step-by-step instructions.

(2) **Mail:** a Registration Form is available on the Forms page of the Settlement Website for you to download, print and mail to the Claims Administrator at one of the addresses listed in Question 9.

*Reminder: Registering is not the same as submitting a Derivative Claim Package. The Claims Administrator will hold 1% of the Player's Monetary Award if any Derivative Claimants have registered or there is still time for one to register, but Derivative Claimants must still submit a complete and timely Derivative Claim Package. The Claims Administrator will review Derivative Claim Packages to determine eligibility for Derivative Claimant Awards only after the associated Player becomes eligible for a Monetary Award.*

### 104.   What happens if no one registers as a Derivative Claimant for a Retired NFL Football Player?

If no one registers as a Derivative Claimant of a Retired NFL Football Player and the timeframe to do so has run out, the Claims Administrator will not reserve the 1% of the Player's Monetary Award for any potential Derivative Claimant Awards.

*Reminder: The 1% deduction from the Player's Monetary Award is for potential Derivative Claimant Awards. There may be no Derivative Claimant who is eligible to receive a Derivative Claimant Award. If that is the case, the 1% amount will be awarded back to the Player. More details about the Derivative Claimant process are available on the Alerts page of the Settlement Website (click the "Overview of Derivative Claimant Process (posted June 27, 2017)").*

## 105. How do I submit a Derivative Claim Package?

If you created a Portal account on the Claims Administrator's Settlement Website (www.nflconcussionsettlement.com), log in and follow the directions to submit your

Derivative Claim Package. You can also create a Portal account now if you would like and submit your Derivative Claim Package online. If you do not have a Portal account and do not wish to create one, you can mail your Derivative Claim Package to the Claims Administrator. The address is listed in Question 9.

*Reminder: The Portal is a secure website where you, your lawyer (if you have one) and the settlement administrators can exchange information easily and quickly. You do not have to use the Portal to participate in the Settlement Program. Even if you use the Portal, you can tell the Claims Administrator you prefer to send and receive information by mail.*

## 106. Where do I send my Derivative Claim Package if I do not use an online Portal?

You can send your Derivative Claim Package using one of these methods:

**U.S. Mail:**
Claims Administrator
NFL Concussion Settlement
P.O. Box 25369
Richmond, VA 23260

**Delivery (ex., FedEx, UPS):**
NFL Concussion Settlement
c/o BrownGreer PLC
250 Rocketts Way
Richmond, VA 23231

## 107. Is there a deadline to submit my Derivative Claim Package?

You must submit a Derivative Claim Package no later than 30 days after the associated Retired NFL Football Player (or his Representative Claimant) receives a notice that he is eligible for a Monetary Award. The Claims Administrator will tell you about your deadline if you have not yet submitted a Derivative Claim Package when the associated Player becomes eligible.

## 108. What happens after I submit my Derivative Claim Package?

After the Claims Administrator receives your Derivative Claim Package, it will either: (1) determine whether your claim is denied, or (2) hold your claim until the Retired

NFL Football Player (or his Representative Claimant) receives a final determination about his Monetary Award.

***Reminder:*** *If the Player's Monetary Award claim is denied (and there is no appeal or the Court denies his appeal), the Claims Administrator will also deny your claim for a Derivative Claimant Award. If the Claims Administrator holds your claim, you will receive a Derivative Claim Package Receipt Notice.*

### 109.   What makes a Derivative Claim Package complete?

Your Derivative Claim Package is complete if it includes these items:

(f)  A filled out Derivative Claim Form signed by you; and

(g) A filled out HIPAA Form signed by you.

***Reminder:*** *The Settlement Program uses different HIPAA Forms for different purposes. Your Derivative Claim Package must include the "Derivative Claimant HIPAA Authorization Form." This form is available on the Forms page of the Settlement Website.*

### 110.   How will the Retired NFL Football Player know if someone has registered as a Derivative Claimant?

The Claims Administrator will tell the Retired NFL Football Player (or his Representative Claimant) that someone has registered as a Derivative Claimant when he is eligible for a Monetary Award. The Player's notice will name any registered Derivative Claimants and describe his right to challenge each one.

***Reminder:*** *More details about the challenge process are available on the Alerts page of the Settlement Website (click the "Overview of Derivative Claimant Process (posted June 27, 2017)").*

### 111.   How will I know if other Derivative Claimants have registered for the same Retired NFL Football Player?

The Claims Administrator will tell you whether any other Derivative Claimants have registered for the same Retired NFL Football Player when it determines who is eligible to receive the 1% of that Player's Monetary Award. Your notice will name any Derivative Claimants who are eligible to share the Derivative Claimant Award and describe your right to object to how the 1% has been allocated.

*Reminder:* More details about the challenge process are available on the Alerts page of the Settlement Website (click the "Overview of Derivative Claimant Process (posted June 27, 2017)").

### 112.  How will I know if the Retired NFL Football Player challenged my Derivative Claimant status?

If you submitted a Derivative Claim Package, the Claims Administrator will tell you if the Retired NFL Football Player (or his Representative Claimant) challenges your right to a Derivative Claimant Award.

*Reminder:* More details about the challenge process are available on the Alerts page of the Settlement Website (click the "Overview of Derivative Claimant Process (posted June 27, 2017)").

### 113.  What happens if one Derivative Claimant does not want to share the 1% Derivative Claimant Award equally with another Derivative Claimant?

If a Derivative Claimant does not want to share the 1% equally, he or she can submit an Allocation Objection. The Claims Administrator will then analyze each Derivative Claimant's right to share the 1% under the laws of the state where the Retired NFL Football Player lived at the time he received his Qualifying Diagnosis (or his date of death if the Qualifying Diagnosis is Death with CTE). A Derivative Claimant may or may not benefit from an Allocation Objection, as his or her Award may increase or decrease. Depending on the laws and who the Derivative Claimants are, one or more Derivative Claimants could receive no Derivative Claimant Award.

*Reminder:* More details about Allocation Objections are available on the Alerts page of the Settlement Website (click the "Overview of Derivative Claimant Process (posted June 27, 2017)").

### 114.  What laws does the Claims Administrator use to analyze Derivative Claimant issues?

The Claims Administrator will use one of these two laws to analyze Derivative Claimant issues, depending on the Retired NFL Football Player's Qualifying Diagnosis:

**(a) Wrongful Death Laws for Death with CTE Qualifying Diagnoses:** Each state has laws explaining who may recover damages when a family member or relative dies because of someone else's wrongful act. Most state wrongful death laws will detail the order in which certain people may recover and the amounts they are entitled to receive.

**(b) Loss of Consortium Laws for all other Qualifying Diagnoses:** Some states allow certain people to recover damages when a family member or relative is injured because of someone else's wrongful act, but each state decides differently who may recover for this. Some only recognize a spouse's right to recover, while others extend the right to children, parents and other types of people.

*Reminder: These two legal causes of action were included in the Plaintiffs' Master Administrative Long-Form Complaint filed with the Court on June 7, 2012, and are most relevant to Derivative Claimants who claim they have a right to a Derivative Claimant Award under applicable state law based on a Retired NFL Football Player's injury or death.*



Case 2:12-md-02323-AB   Document 9137-1   Filed 12/01/17   Page 50 of 69

### 115.  Who is Class Counsel?

The Court appointed a number of lawyers as "Co-Lead Class Counsel," "Class Counsel" and "Subclass Counsel" to represent the Settlement Class and subclasses. If you contact these lawyers, you will not be charged a fee unless you hire one of them to represent you individually. They are:

| | |
|---|---|
| Christopher A. Seeger<br>        Co-Lead Class Counsel<br>        SEEGER WEISS LLP<br>        77 Water Street<br>        New York, NY 10005 | Sol Weiss<br>        Co-Lead Class Counsel<br>        ANAPOL WEISS<br>        1710 Spruce Street<br>        Philadelphia, PA 19103 |
| Steven C. Marks<br>        Class Counsel<br>        PODHURST ORSECK P.A.<br>        City National Bank Building<br>        25 W. Flagler Street, Suite 800<br>        Miami, FL 33130-1780 | Gene Locks<br>        Class Counsel<br>        LOCKS LAW FIRM<br>        The Curtis Center, Suite 720 East<br>        601 Walnut Street<br>        Philadelphia, PA 19106 |
| Arnold Levin<br>        Counsel - Subclass 1<br>        LEVIN SEDRAN & BERMAN<br>        510 Walnut Street, Suite 500<br>        Philadelphia, PA 19106 | Dianne M. Nast<br>        Counsel - Subclass 2<br>        NAST LAW LLC<br>        1101 Market Street, Suite 2801<br>        Philadelphia, Pennsylvania 19107 |

### 116.  Do I need a lawyer to represent me individually in this program?

There is no requirement that you have a personal lawyer to participate in the Settlement Program. While the settlement administrators can assist a Settlement Class Member proceeding without a lawyer (or "pro se") to complete required forms, they cannot give you any legal advice. Contact Class Counsel if you have questions about whether you should hire a lawyer.

### 117.  How did a lawyer register me?

If a lawyer represents you in this Settlement Program, he or she may register you on your behalf. After your lawyer registers you, the Claims Administrator will mail or email a Notice of Attorney Representation to you. The notice will include the name and address of the lawyer who registered you. If this lawyer or law firm represents you, contact your

lawyer with any questions related to the Program. If the lawyer does not represent you, you should write to the Claims Administrator and update your representation status as soon as possible.

**118.  What are Common Benefit Fees and how will Class Counsel be paid?**

Common Benefit Fees are the costs and litigation expenses that Co-Lead Class Counsel, Class Counsel, Subclass Counsel and other lawyers incur for their efforts on behalf of the common benefit of the Settlement Class. On February 13, 2017, Co-Lead Class Counsel petitioned the Court for: (1) compensation of $112.5 million to be paid by the NFL for common benefit work done to date for the Settlement Class and (2) a 5% set-aside from each Monetary Award and Derivative Claimant Award for future common benefit work for the Settlement Class.

The Court has not yet ruled on the petition but while it is pending, Notices of Monetary Award Determinations issued by the Claims Administrator will reflect the requested 5% holdback. More information about this petition is available on the Settlement Website (go to the Information tab, click on Documents and then "Court Approved Notice of Filing of Petition for Attorney Fees Costs and 5% Holdback on Awards").

**119.  How will my individual lawyer be paid?**

You can hire a lawyer at your own expense. Any lawyer representing a Settlement Class Member individually, including a lawyer who is also Co-Lead Class Counsel, Class Counsel, or Subclass Counsel, may charge a fee to represent that Settlement Class Member in this Program. The amount you must pay your lawyer is based on the contract or agreement you sign with that lawyer.

**120.  Can I terminate my relationship with my individual lawyer?**

You should contact your lawyer to talk about this. The settlement administrators cannot give you legal advice.

**121.  How do I tell the Claims Administrator I have a new lawyer or that I do not have a lawyer?**

If you already registered and later hire a lawyer or change the lawyer who represents you in this Program, or if you do not have a lawyer anymore, you must tell the Claims

Administrator in writing. You can email or mail a letter or the Request for Change in Representation Status Form to the Claims Administrator. If you send a letter, include your name and your Settlement Program ID, if you know it, and any information about your legal representation. If you tell the Claims Administrator that you ended your relationship with your lawyer, the Claims Administrator will: (1) tell that lawyer about your action, (2) give the lawyer seven days to reach out to you and then (3) change your records to show your new legal representation status in this Settlement.

*Reminder:* The Request for Change in Representation Status Form is available on the Forms page of the Settlement Website.

**NFL CONCUSSION SETTLEMENT**
IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION
No. 2:12-md-02323 (E.D. Pa.)

## 122.   What is a Lien?

A legal right through which someone claims a legal obligation to withhold payment from a Monetary Award, Supplemental Monetary Award, or Derivative Claimant Award ("Award").  The person or entity claiming the Lien is called a lienholder.

## 123.   What Liens will the Claims Administrator pay out of my Award?

The Claims Administrator will pay the following kinds of Liens asserted by lienholders or identified by you in your Claim Package:

    (a) Medical Liens
    (b) Attorneys' Liens
    (c) Other Liens

## 124.   What is a Medical Lien?

A Medical Lien is the most likely type of Lien to be claimed against a Monetary Award or Derivative Claimant Award involving a personal injury.  Medical Liens are sometimes called "healthcare liens."

There are many different types of Medical Liens, including those asserted by Medicare A/B, Medicare C/D, Medicaid, TRICARE, VA, Indian Health Services, and Private Healthcare Insurers for certain plans where, under the Settlement Agreement, there needs to be a legal obligation to withhold payment.

## 125.   What is an Attorneys' Lien?

An Attorneys' Lien is a Lien for an attorney's fees and costs for work that the attorney did representing you individually in the NFL concussion litigation and/or in the Settlement Program.  Attorneys' Liens do not include claims for fees and costs by attorneys for work they did to help create and carry out the Program.

## 126.   What are the kinds of Other Liens recognized in the Program?

| | | |
|---|---|---|
| 1. | Child Support Liens | Liens from a federal or state child support agency for unpaid child support. |
| 2. | Tax Liens | Liens from a federal, state, or local tax agency for unpaid taxes and penalties. |
| 3. | Judgment Liens | Liens for a debt based on a contract, business, loan, or any other debt enforced in a final judgment entered by a federal or state court. |

## 127.   Are there any debts that the Claims Administrator will not pay?

The Claims Administrator will not pay:

(a) Claims for debts owed by anyone other than the Settlement Class Member, including your attorney.

(b) Claims from creditors based on lending agreements that you signed or based on your assignment of rights or claims in an Award in exchange for a cash advance.

## 128.   Do I have to resolve Medical Liens?

Yes.  The Claims Administrator is required to withhold some or all of your Award until the Medical Liens asserted against your Award have been resolved.  The money withheld will be used to repay valid Liens, and any amounts left over will be paid to you.  To get that money, however, the Medical Liens against your Award have to be resolved first.

The Settlement Agreement authorizes the use of holdbacks, and they provide two benefits:

By setting aside a portion of your Award for the purpose of settling Liens, the Claims Administrator can release the rest of the Award to you.  Otherwise, the entire Award would need to be withheld from you until the Lien is resolved.  If any portion of the holdback is not needed to repay the Lien, it goes to you.

Holdback amounts are carefully calculated to be as low as possible while setting aside enough money to resolve your Liens.  The Lien Resolution Administrator calculates the amount to hold back based on several factors.  These factors include your Qualifying Diagnosis, the type of Lien(s) being claimed, the number of Liens, and the typical cost of

treatment for someone with your diagnosis. You can rest assured that your Lien will be addressed.

Under the Settlement Agreement, a Medical Lien could be asserted against your Award by a governmental health plan, a Medicare Part C or Part D plan, or certain private health insurance plans where there is a legal obligation to withhold payment. Governmental health plans include Medicare Part A and Part B, Medicaid, the Veterans Administration, TRICARE, Indian Health Services, and plans provided by other governmental agencies or the military.

The Lien Resolution Administrator will act on your behalf to resolve Liens asserted by governmental health plans or Medicare Part C or Part D plans.  Under the Settlement Agreement, you can choose to resolve private health insurance plan claims where there is no legal obligation to withhold payment yourself or through your attorney, or you can hire the Lien Resolution Administrator or another lien resolution company to resolve them for you.

### 129.   What could happen if I don't resolve my Medical Liens?

If Medical Liens are not properly resolved, your health plan could stop paying for your medical bills or stop providing you with other benefits.  An insurer's right to place a Lien on your Award may be protected by law.  This obligates you to work with the insurers to resolve any Liens claimed against your Award.

### 130.   How do I know if there is a Lien against me?

The Program will issue a Notice for certain kinds of Liens:

| | Kind of Lien | Notice Type |
|---|---|---|
| 1. | Medical Liens | The Lien Resolution Administrator will send you specific notices depending on the Lien type. These Notices will identify the lienholder and what options are available to verify and resolve the Lien.   Where the Notice involves a private payor, it will also provide you with the option to hire the Lien Resolution Administrator to resolve the Lien or identify that you will resolve it yourself. |
| 2. | Attorneys' Liens | The Claims Administrator will send you a Notice of Lien about each Lien and copies of the supporting documents from the lienholder.  You will be asked to respond to the notice either to consent to or dispute the Lien. |
| 3. | Other Liens | |

Additionally, the attachment to your Award notice will list all Liens where funds have been deducted or held back from your Award, the lienholder's name, and the amount deducted or held back for the Lien.

A "Deduction for Finalized Lien" shows you the amount of money that the Claims Administrator will pay to the lienholder for a Lien that has been resolved.

A "Holdback for Pending Lien" shows you the amount of money the Claims Administrator is holding back from your payment for a Lien that has not been resolved.  After Liens with holdback amounts are resolved, the Claims Administrator will pay the lienholder the final Lien amount and pay any remaining funds that were held back to you.

Keep in mind that a holdback amount for Medical Liens does not necessarily mean that a valid Lien exists.  The Lien Resolution Administrator is responsible for verifying whether you are or were entitled to benefits under certain health insurance programs such as the Medicare Program and the Medicaid Program.

## 131.  How do I respond to the notice of a Lien from the Program?

| | Kind of Lien | How to Respond |
|---|---|---|
| 1. | Medical Liens | Depending on the Lien type, the Notices sent by the Lien Resolution Administrator will provide instructions on how to respond, including whether or not your response is required. Any responses can be sent to the Lien Resolution Administrator by e-mail or mail. |
| 2. | Attorneys' Liens | The Notice of Lien requires that you tell the Claims Administrator whether you consent to or dispute the Lien by email, mail, overnight delivery, or fax.  If you do not respond by the deadline listed at the top of the Notice, the Claims Administrator will treat it as a disputed Lien. |
| 3. | Other Liens | |

## 132.  I received a notice from my healthcare insurer saying that it may have a Lien against me.  What should I do?

If you have not previously provided the notice with your Claim Form, then you should provide that information, along with your Settlement Program ID, name, and contact information by mail to:

NFL Concussion Settlement
Claims Administrator
P.O. Box 25369
Richmond, VA 23260

### 133.  Should I contact a lienholder to speed up the Medical Lien resolution process?

No.  The Lien Resolution Administrator is already working with lienholders in the most efficient manner possible.  Contacting a lienholder regarding a Medical Lien may result in multiple recovery attempts, which can significantly delay processing time.

### 134.  I have medical coverage through Medicare. What should I do?

The Lien Resolution Administrator is already working directly with Medicare to resolve Medicare Part A and Part B Liens.  When you qualify for an Award, the Lien Resolution Administrator determines if you are (or ever were) a Medicare beneficiary.  If so, the Lien Resolution Administrator calculates a holdback amount and automatically resolves any Medicare Liens for you.

If the Lien Resolution Administrator needs anything from you to resolve a Medicare Lien, it will contact you.  If you (or your lawyer) receive any type of correspondence from Medicare regarding a Lien, please forward it to the Claims Administrator as soon as possible.  In the meantime, you don't need to do anything about Medicare.

### 135.  What about Medicare Part C and Part D Liens?

If you currently receive benefits through Medicare Part C or Part D* or have received such benefits in the past, you must identify the Part C or Part D Program Sponsor on your Claim Form.  The Lien Resolution Administrator will use this information to resolve any Liens that may be claimed by the Part C or Part D Program Sponsor in connection with your Award.

If you receive notice of a potential Lien from a Medicare Part C or Part D Program Sponsor, please forward it to the Claims Administrator as soon as possible.  The notice will help the Lien Resolution Administrator address your Lien.

*\* Medicare Part C Program Sponsors (also known as "Medicare Advantage Plans") are private health insurers that contract with Medicare to provide the same services as traditional Medicare Parts A and B. Medicare Part D Program Sponsors are private health insurers that contract with Medicare to provide supplemental prescription drug coverage.*

**136.  I have medical coverage through Medicaid. What should I do?**

The Lien Resolution Administrator has reached agreements with most state Medicaid* agencies to resolve Medicaid Liens.  This is a multi-step process.  First, the Lien Resolution Administrator verifies whether you are or were a Medicaid beneficiary in the state(s) of residency listed on your Claim Form.  Then the Lien Resolution Administrator determines if Medicaid has paid for any treatments related to your Qualifying Diagnosis. Next, the Lien Resolution Administrator reviews Medicaid's expenses to make sure they apply only to those treatments, and nothing else.  When the Lien Resolution Administrator determines the final lien amount, it is paid to the agency from your holdback.

You must identify all your states of residence on your Claim Form.  If the Lien Resolution Administrator needs anything else from you to resolve a Medicaid Lien, it will contact you.

*Medicaid provides medical coverage for individuals and families with limited resources. Each state and territory has its own Medicaid Program, and each one is different.  If you have lived in more than one state, it is possible that you have received benefits from more than one Medicaid agency.  If so, each state's agency must be contacted to determine if you are or have been a Medicaid beneficiary in that state.*

**137.  I (or my spouse) served in the military, so I have medical coverage through TRICARE or the Department of Veterans Affairs. What should I do?**

If you have or had medical coverage through either TRICARE or the Department of Veterans Affairs* ("VA"), and if the agency paid for or provided treatment related to your Qualifying Diagnosis, then the agency may have a right to be reimbursed for the payments it made.

You must include all TRICARE or VA coverage information on your Claim Form.  The Lien Resolution Administrator will use this information to resolve any Lien that may be claimed by TRICARE or the VA in connection with your Award.  If the Lien Resolution Administrator needs anything else from you to resolve a military Lien, it will contact you.

*TRICARE and the VA are governmental benefit programs that provide medical coverage or treatment for eligible members of the military and their families.*

**138.   I have medical coverage through the Department of Indian Health Services. What should I do?**

If you have or had medical coverage through Indian Health Services* ("IHS"), and if IHS paid for treatment related to your Qualifying Diagnosis, then the agency may have a right to be reimbursed for the payments it made.

You must include all IHS coverage on your Claim Form.  The Lien Resolution Administrator will use this information to resolve any Lien that may be claimed by IHS in connection with your Award.  If the Lien Resolution Administrator needs anything else from you to resolve an IHS Lien, it will contact you.

*IHS is a federal agency that provides medical services for American Indians and Alaska Natives.*

**139.   I have a private medical insurance plan. Can they claim a Lien on my Award?**

Private insurance plans do not usually carry an obligation to withhold payment of settlement funds, like Awards. However, most private insurance* plan documents (such as a contract or a plan booklet) contain provisions that require you to notify the insurer of any illness or injury that can be attributed to a third party.  When this happens, and if you receive compensation from the third party, then the insurer may demand repayment from that compensation.  If you fail to comply with these provisions in your insurance plan, the company can take action against you later or deny future benefits.

You can include private insurance coverage on your Claim Form. If you do so, the Lien Resolution Administrator will send you information explaining your options for resolving the potential Lien.

*Private health insurance coverage is offered through private, non-governmental entities.  Private insurance policies are commonly referred to as insurance "plans." Examples of private healthcare insurance include coverage provided by your (or a family member's) employer or that you purchased from an insurance company.  Private insurance plans often refer to the policy holder as a "subscriber" or "plan member."*

### 140.  What happens if I dispute a Lien?

|   | Kind of Lien | How to Dispute |
|---|---|---|
| 1. | Medical Liens | The Lien Resolution Administrator will send you a notice when it determines the final repayment amount needed to satisfy Medical Liens against your Award.  The notice will include instructions about how to resolve the dispute. |
| 2. | Attorneys' Liens | The Claims Administrator will send you a notice with instructions about how to resolve the dispute.  You should try to reach an agreement with the attorney.  If you cannot reach an agreement, the Court will determine the amount of money to be paid to the lienholder based on information you and the lienholder provide to the Court. The notice will explain that the Claims Administrator will withhold enough money to pay the Lien, to the extent funds are available, until the dispute is resolved. |
| 3. | Other Liens | The Claims Administrator will send you a notice with instructions about how to resolve the dispute.  You are responsible for contacting the lienholder directly to resolve the dispute. The notice will explain that the Claims Administrator will withhold enough money to pay the Lien, to the extent funds are available, until the dispute is resolved. |

### 141.  How and when is a Lien paid?

|   | Kind of Lien | Lien Payment |
|---|---|---|
| 1. | Medical Liens | If you consent to the final Lien amount, or the Lien is not able to be disputed, the Lien Resolution Administrator will pay the final Lien amount to the lienholder out of your Award.<br><br>If you dispute the final Lien amount, payment will not be requested by the Lien Resolution Administrator until the dispute is resolved either by the Lien Resolution Administrator or by you or your lawyer if you chose to resolve the Medical Lien yourself. |

| | Kind of Lien | Lien Payment |
|---|---|---|
| 2. | Attorneys' Liens | If you consent to the Lien, the Claims Administrator will deduct the Lien amount from your Award and will pay the Lien amount to the lienholder.<br><br>If you dispute the Lien, the Claims Administrator will hold the Lien amount until one of the following things happens:<br><br>(1) The lienholder tells the Claims Administrator that you no longer owe the money;<br><br>(2) You and the lienholder send the Claims Administrator a signed, written agreement telling the Claims Administrator how to pay the withheld money; or<br><br>(3) The Court overseeing the Program determines the amount of the Attorneys' Lien and how it is to be paid. |
| 3. | Other Liens | If you consent to the Lien, the Claims Administrator will deduct the Lien amount from your Award and will pay the Lien amount to the lienholder.<br><br>If you dispute the Lien, the Claims Administrator will hold the Lien amount until one of the following things happens:<br><br>(1) The lienholder tells the Claims Administrator that you no longer owe the money;<br><br>(2) You and the lienholder send the Claims Administrator a signed, written agreement telling the Claims Administrator how to pay the withheld money; or<br><br>(3) The Claims Administrator receives a copy of a final decision from the applicable federal or state agency or court determining the amount of the Lien to be paid. |

## 142.  Will I be notified when the Claims Administrator pays a Lien?

| | Kind of Lien | Notice |
|---|---|---|
| 1. | Medical Liens | The Lien Resolution Administrator will issue a payment report to the Claims Administrator. |
| 2. | Attorneys' Liens | The Claims Administrator will issue a Notice of Lien Payment to you no later than 30 days after payment is made to the lienholder. |
| 3. | Other Liens | The Notice will include the date of the Lien payment, the lienholder, and the amount of the payment. |

**143.   Whom do I contact with questions about Liens?**

|   | Kind of Lien | Whom do I contact? |
|---|---|---|
| 1. | Medical Liens | Contact the Lien Resolution Administrator by calling 1-855-887-3485 or e-mailing NFLLiens@garretsongroup.com. |
| 2. | Attorneys' Liens and Other Liens | Contact the Claims Administrator by calling 1-855-887-3485 or e-mailing ClaimsAdministrator@NFLConcussionSettlement.com. |

**Liens**
Questions and Answers for Lienholders

**NFL** CONCUSSION SETTLEMENT
IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION
No. 2:12-md-02323 (E.D. Pa.)

**144.   How does a lienholder notify the Program of a Medical Lien?**

To provide notice of a valid Medical Lien, a lienholder must notify the Claims Administrator by:

(a) Email to ClaimsAdministrator@NFLConcussionSettlement.com, using a secure and encrypted method, and include "ATTN: NFL Liens" in the subject line;

(b) Mail to NFL Concussion Settlement, Claims Administrator, P.O. Box 25369, Richmond, VA  23260, ATTN: NFL Liens;

(c) Delivery by overnight carrier to NFL Concussion Settlement, c/o BrownGreer PLC, 250 Rocketts Way, Richmond, VA  23231, ATTN: NFL Liens; or

(d) Fax to (804) 521-7299, ATTN:  NFL Liens.

**145.   How does a lienholder notify the Program of an Attorneys' or an Other Lien?**

To provide notice of a valid Attorneys' Lien, Child Support Lien, Tax Lien, or Judgment Lien, a lienholder must notify the Claims Administrator by:

(a) Email to ClaimsAdministrator@NFLConcussionSettlement.com, using a secure and encrypted method, and include "ATTN: NFL Liens" in the subject line;

(b) Mail to NFL Concussion Settlement, Claims Administrator, P.O. Box 25369, Richmond, VA  23260, ATTN: NFL Liens;

(c) Delivery by overnight carrier to NFL Concussion Settlement, c/o BrownGreer PLC, 250 Rocketts Way, Richmond, VA  23231, ATTN: NFL Liens; or

(d) Fax to (804) 521-7299, ATTN:  NFL Liens.

An attorney can also provide notice by filing a Notice of Attorney's Lien with the United States District Court for the Eastern District of Pennsylvania, MDL 2323.  Attorneys' Liens filed with any other court or served by any other method are not binding on the Claims Administrator.

Child support agencies can provide a mass Income Withholding Order to the Claims Administrator, accompanied by a data file with the name and Tax Identification Number

of the persons who owe child support debts in the respective state to provide notice of Child Support Liens.

### 146.   What information must a government health insurer provide to assert a Medical Lien?

The Lien Resolution Administrator sends information about Settlement Class Members to governmental health insurers to identify governmental Medical Liens as required by the Settlement Agreement.  If you are a governmental health insurer and have questions about this process, please contact the Lien Resolution Administrator by calling 1-855-887-3485or emailing NFLLiens@garretsongroup.com.

### 147.   What information is required from a private healthcare insurer to assert an alleged Lien?

A private healthcare insurer must submit the following information to the Claims Administrator or Lien Resolution Administrator:

(a) Information to identify the Retired NFL Football Player or Derivative Claimant who is alleged to owe the Lien (such as Settlement Class Member's full name, Social Security Number, or Settlement Program ID);

(b) Health plan name;

(c) Health plan type; and

(d) Complete list of claims and payments comprising the alleged Lien.

The next step in the process will depend on the nature of the repayment obligation, if any, under the plan documents.

### 148.   What information is required to assert an Attorneys' Lien?

A lienholder must submit the following information to the Claims Administrator:

(a) Information to identify the Retired NFL Football Player or Derivative Claimant who is alleged to owe the debt (such as the Settlement Class Member's full name, Social Security Number, Taxpayer Identification Number, Foreign Identification Number, or Settlement Program ID);

(b) The amount of the debt;

(c) A Notice of Attorneys' Lien filed in the United States District Court for the Eastern District of Pennsylvania, MDL 2323;

(d) A copy of the attorney's retainer agreement signed by the Settlement Class Member; and

(e) The dollar amount of the attorney's costs if the attorney is seeking reimbursement of costs in addition to fees.

To honor the Lien, the Claims Administrator must receive complete claimant-identifying information and documentary proof before it begins the process to pay the affected Settlement Class Member.

## 149.  What information is required to assert an Other Lien?

A lienholder must submit the following information to the Claims Administrator:

(a) Information to identify the Retired NFL Football Player or Derivative Claimant who is alleged to owe the debt (such as the Settlement Class Member's full name, Social Security Number, Taxpayer Identification Number, Foreign Identification Number, or Settlement Program ID);

(b) The amount of the debt; and

(c) Documents establishing that there is a legal obligation to withhold payment of all or part of a Monetary Award, Supplemental Monetary Award, or Derivative Claimant Award to a Settlement Class Member under applicable federal or state law.  The required documents vary depending on the type of Lien:

(1) Child Support Liens: An individual Income Withholding Order, a Notice of Income Assignment, or a substantially similar document from the appropriate federal or state child support agency or court establishing the current child support debt.

(2) Tax Liens: A Notice of Levy, a Notice of Freeze, or a substantially similar document from the federal, state, or local tax agency establishing the current amount of the tax debt.

(3) Judgment Liens: A copy of a final judgment establishing the debt under applicable federal or state law.

To honor the Lien, the Claims Administrator must receive complete claimant-identifying information and documentary proof before it begins the process to pay the affected Settlement Class Member.

| 150. | What happens after I submit the required information and documents for a valid Lien? |
|---|---|

The Claims Administrator will place a hold on an appropriate portion of any payment(s) that may be made to the affected Settlement Class Member.

| 151. | What happens if a Settlement Class Member disputes a Medical Lien? |
|---|---|

Depending on the Lien type, the Settlement Class Member or his/her attorney may have the option to challenge the proposed Medical Lien amount and seek to reduce it.  If the Settlement Class Member disputes a Medical Lien, the Lien Resolution Administrator will attempt to resolve the Lien with the lienholder.

In addition, the Lien Resolution Administrator will instruct the Claims Administrator to withhold an amount sufficient to satisfy the Medical Lien, to the extent funds are available, until the Claims Administrator receives either (1) confirmation of lien resolution from the Lien Resolution Administrator or (2) similar documentation from the lienholder.

If the Lien Resolution Administrator is not able to resolve the dispute with the lienholder, it may seek additional assistance from the Court.

| 152. | What happens if a Settlement Class Member disputes an Attorneys' Lien? |
|---|---|

If the Settlement Class Member disputes or fails to consent to an Attorneys' Lien, the Claims Administrator refers the dispute to the Magistrate Judge for resolution pursuant to a dispute resolution process to be approved by the United States District Court for the Eastern District of Pennsylvania, MDL 2323, and administered by the Magistrate Judge.

The Claims Administrator withholds an amount sufficient to satisfy the Attorneys' Lien, to the extent funds are available, until receiving either (1) notice of satisfaction and discharge of the Lien from the lienholder; (2) a written agreement signed by both parties specifying the distribution of the withheld funds; or (3) a copy of a final decision from the Court determining the amount, if any, to be paid to the lienholder.

**153.   What happens if a Settlement Class Member disputes an Other Lien?**

If the Settlement Class Member disputes or fails to consent to a Child Support Lien, Tax Lien, or Judgment Lien, the Claims Administrator withholds an amount sufficient to satisfy the Other Lien, to the extent funds are available, until receiving either (1) notice of satisfaction and discharge of the Lien from the lienholder; (2) a written agreement signed by both parties specifying the distribution of the withheld funds; or (3) a copy of a final decision from the applicable federal or state agency or court determining the amount, if any, to be paid to the lienholder.

**154.   Whom do I contact with questions about Liens?**

|   | Kind of Lien | Whom do I contact? |
|---|---|---|
| 1. | Medical Liens | Contact the Lien Resolution Administrator by calling 1-855-887-3485or emailing NFLLiens@garretsongroup.com. |
| 2. | Attorneys' Liens and Other Liens | Contact the Claims Administrator by calling 1-855-887-3485 or emailing ClaimsAdministrator@NFLConcussionSettlement.com. |

**Payments**
Questions and Answers

# NFL CONCUSSION SETTLEMENT
IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION
No. 2:12-md-02323 (E.D. Pa.)

### 155. When will I receive payment for my Monetary Award or Derivative Claimant Award?

After you receive notice that you are eligible for an Award, the whole payment process could be complete in as little as two weeks, but it will most likely take longer than that. There are several things that can affect when you get paid, including, without limitation:

1. Whether you, the NFL Parties, or Co-Lead Class Counsel appeals;

2. Whether your claim is placed into audit;

3. Whether a Bankruptcy Court must approve your payment;

4. When your claim is placed on a Claims Administrator Funding Request (the Claims Administrator submits Funding Requests to the NFL Parties and Co-Lead Class Counsel by the 10th day of each month); and

*Reminder: If your claim becomes eligible for payment (there are no appeals, no audits and no Bankruptcy issues) after the 10th of a month, you will not be placed on a Claims Administrator Funding Request until the next month.*

5. Whether the Special Masters approve the Claims Administrator's Disbursement Report and authorize payment to move forward (after the Special Masters approve a Disbursement Report, the Claims Administrator sends it to the bank).

In most cases, your claim will be paid within 15 to 60 days of being placed on the Funding Request.

*Reminder: The Payment Process Timeline on the Alerts page of the Settlement Website provides more information about this.*

### 156. Who will issue the payment to me?

If you are eligible for a payment, Citibank will send the funds to you or your lawyer. The Court appointed Citibank as the Trustee for this Settlement Program.

*Reminder: You can find more information about the Settlement Trust in Section 23.5 of the Settlement Agreement, which is available on the Settlement Website (go to the Information tab, click on Documents and then "Amended Class Action Settlement Agreement (filed February 13, 2015)").*

### 157. How will the funds be issued by Citibank?

It depends on how you or your lawyer ask to be paid. There are two options:

1. Wire transfer: the funds are electronically sent to the designated bank account; or

2. Check: a check is mailed to the designated address.

You or your lawyer can use the Payment Election Form to tell the Claims Administrator how and where funds should be issued by Citibank.

### 158. If I want to appeal only part of my Monetary Award amount, can I get paid for the rest before my appeal is final?

No. The Claims Administrator cannot pay you for some of your Monetary Award while the rest is subject to an appeal. You will receive payment for your Monetary Award only after the appeal process is finished.

### 159. Will my Monetary Award or Derivative Claimant Award be issued to my lawyer or directly to me?

If you are represented by a lawyer and it is determined that you are entitled to a Monetary Award or Derivative Claimant Award, the Settlement Program will issue the full payment to your lawyer, subject to applicable reductions (*e.g.*, resolved medical liens, offsets for Eligible Seasons, etc.). The lawyer then will pay funds to you according to whatever representation agreement you have with your lawyer. If you are not represented by a lawyer, the Settlement Program will issue the full payment directly to you, subject to applicable reductions.