# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **Chelsea C. Oliver,** | ) |
| **Plaintiff,** | ) No. 1:16-cv-04760 |
| v. | ) Judge Ronald A Guzman |
| **Riddell, Inc., et al.,** | ) |
| **Defendants.** | ) |

## ORDER

For the reasons set forth below, the Court grants Plaintiff's Motion to Remand [20]. This case is hereby remanded to the Circuit Court of Cook County. Civil case terminated.

## STATEMENT

On March 11, 2016, Plaintiff Chelsea Oliver ("Plaintiff") filed this action against Riddell, Inc., Riddell Sports Group, Inc., All American Sports, Easton-Bell Sports, LLC, EB Sports, RBG Holdings, and Fenway Partner, LLC (collectively "Defendants"), in Cook County Circuit Court, alleging several state law claims related to her husband (and former NFL player) Paul Oliver's suicide in 2013. According to the complaint, it was discovered after Mr. Oliver's death that he suffered from chronic traumatic encephalopathy ("CTE") — a progressive brain disease caused by repetitive trauma, common among athletes in impact sports. (Compl. [Dkt. # 1-2] ¶¶ 2, 14-16.) This condition, Plaintiff suggests, is largely responsible for Mr. Oliver's suicide, and its genesis is attributable to (1) Defendants' manufacturing of unsafe Riddell brand football helmets

1

and (2) a conspiracy between the NFL and Defendants aimed at hiding the dangers of those helmets from players. (*Id.*)[1]

Soon after the complaint was filed, however, Defendants removed the case to federal court on the basis that the resolution of Plaintiff's claims would require interpreting the NFL's collective bargaining agreement with its players, which in turn triggers a comprehensive and preemptive federal law — Section 301 of the Labor Management Relations Act ("LMRA"), 28 U.S.C. § 185.[2] Plaintiff now asserts that removal was improper because the Court lacks subject-matter jurisdiction.

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 1441, a defendant may remove any state court action to federal court if the federal court has "original jurisdiction" over the matter. 28 U.S.C. § 1441(a). However, "[i]f at any time before the final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Importantly, when an action is "removed to federal court and a defendant invokes federal subject matter jurisdiction," the defendant bears the burden of establishing that jurisdiction is proper. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 617 (7th Cir. 2012). Moreover, any "doubts

---

[1] The complaint also alleges a litany of other state law torts, such as failure to warn, wrongful death, fraudulent misrepresentation/concealment, negligence, negligent misrepresentation, and negligent infliction of emotional distress.

[2] Generally, a case "may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption." *Id* at 393. The Supreme Court has, however, recognized the "[c]omplete preemption" doctrine, which "confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Dent v. Renaissance Mktg. Corp.*, No 14 C 02999, 2015 WL 3484464, at *2 (N.D. Ill. June 1, 2015). The LMRA qualifies as such a law. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987).

2

regarding removal should be resolved in favor of the plaintiff's choice of forum in state court." *Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 800 (7th Cir. 2013).

## ANALYSIS

Section 301 of the LMRA completely preempts state law claims "founded directly on rights created by collective bargaining agreements," as well as claims whose resolution is "substantially dependent on analysis of a collective bargaining agreement." *Caterpillar Inc.,* 482 U.S. at 394; *Nelson v. Stewart,* 422 F.3d 463, 467–69 (7th Cir. 2005). Preemption is not, however, triggered simply because a claim "requires reference to" a collective bargaining agreement." *Boogard v. Nat'l Hockey League*, 126 F. Supp. 3d 1010, 1017 (N.D. Ill. 2015); *see also Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985) ("[N]ot every dispute . . . tangentially involving a provision of a collective-bargaining agreement is preempted by Section 301.") Instead, "for preemption to exist, resolution of a claim must *require* interpretation of a [collective bargaining agreement], not a mere glance at it." *In re Bentz Metal Products Co., Inc.,* 253 F.3d 283, 289 (7th Cir.2001) (emphasis added). Moreover, that a "defendant might ultimately prove that a plaintiff's claims are preempted . . . does not establish that they are removable to federal court." *Caterpillar,* 482 U.S. at 398. This is because Section 301 does not override the basic principle that the plaintiff is the master of the complaint. *Id.* at 398-99.

In the case at bar, Defendants argue broadly that Plaintiff's claims are inextricably intertwined with two collective bargaining agreements ("CBAs") between the NFL and its players union, which were in effect when Mr. Oliver played for the NFL, because the CBAs "contain numerous provisions pertaining to player health, safety, and welfare, as well as the roles that various entities and individuals are intended to play in promoting and safeguarding the players." (Def.'s Notice of Removal [Dkt. # 1] ¶ 11). While true, this argument misses the point.

3

The issue is *not* whether Plaintiff's claims merely relate to certain subject matter in the CBAs (e.g., player health or monitoring), but (1) whether the rights Plaintiff asserts are created by state law or the CBAs, and (2) whether the resolution of her claims *requires* the Court to interpret the CBAs. *In re Bentz Metal Prod. Co., Inc.* 253 F.3d at 286. Nether consideration weighs in Defendants' favor.

## I. The CBAs and the Parties' Rights/Relationship

At its core, this case is a state law products liability action with a litany of related state law torts, none of which stem from rights created by the CBAs. The thrust of Defendants' arguments seems to be that because the CBAs shape the scope of *some* of the NFL's duties, then the CBAs also (somehow) shape the scope of duties owed by helmet manufacturers to NFL players. But Defendants are admittedly not parties to the CBAs, and the NFL has not been named as a defendant in this case. These considerations alone strongly counsel against a finding of LMRA preemption. *See Poulter v. Cottrell, Inc.,* No. 12 C 01071, 2013 U.S. Dist. LEXIS 95053, at *8 (N.D. Ill. July 9, 2013) (similarly rejecting a defendant/manufacturer's LMRA preemption argument where it was not a party to the CBA and the controversy was not between the plaintiff/employee and his employer); *Hernandez v. Cottrell*, Inc., No. 10-cv-1522, 2012 U.S. Dist. LEXIS 129700, at *6 (N.D. Ill. Sep. 12, 2012) (cataloguing cases and noting that "in the vast majority, . . . courts found no preemption primarily based on two related facts: (1) [the defendant] was not a party to the CBA; and (2) [the defendant's] duties did not arise out of the CBA.").

Nevertheless, Defendants attempt to squeeze Plaintiff's claims into the CBAs by arguing that other courts have applied similar CBAs to nonparties. (*See, e.g.,* Def.'s Br. Opp'n [Dkt. # 26] at 8 (citing *Atwater v. Nat'l Football League Players Ass'n*, 626 F.3d 1170, 1178 (11th Cir.

4

2010)). In limited sense, Defendants are correct: the Eleventh Circuit in *Atwater* indeed applied the terms of a CBA to the NFL, even though the NFL was not technically a signatory. But the devil is in the details here. First, the Eleventh Circuit found that the plaintiff in *Atwater* failed to timely raise the issue of whether a nonparty such as the NFL could be bound by a CBA between the NFL players union and the NFL Management Council. *See Atwater*, 626 F.3d at 1178. Thus, by the Eleventh Circuit's own characterization, it gave this issue short shrift, which limits *Atwater*'s persuasive value on this subject. *See id.* Second, and more fundamentally, the CBA at issue in *Atwater* explicitly applied to "all players, Clubs, the NFLPA, [and] *the NFL*" and further established specific duties and obligations between the NFL and its players. *See Atwater*, 626 F.3d at 1178 (emphasis added). It is hardly surprising that the Eleventh Circuit applied the terms of a CBA to the NFL under these circumstances. Unlike *Atwater*, however, Defendants have not pointed to any provision in the CBAs that explicitly refers to them by name or even tangentially mentions the relationship between helmet manufacturers and players, much less their respective duties of care/disclosure. Nor have Defendants established why this Court should view the relationship between Riddell and Mr. Oliver analogously to that of the NFL (an employer) and the plaintiff in *Atwater* (an employee).

At bottom, Plaintiff's complaint centers on the duties and obligations of a third party helmet manufacturer — not the NFL and its players — and Defendants have failed to provide a sufficient basis to find otherwise. Accordingly, the Court finds that the rights asserted in the complaint are neither created nor governed by the CBAs. *See Longstreet v. Cottrell, Inc.*, No. 11-CV-1125-MJR-DGW, 2012 U.S. Dist. LEXIS 183260, at *6 (S.D. Ill. Apr. 23, 2012) (similarly finding that a plaintiff's claims were not rooted in a CBA because the defendant/equipment

5

manufacturer was not a signatory to the CBA and had no "restrictions imposed [by the CBA] regarding the manner in which it designs and manufactures products").

## II. Whether Plaintiff's Claims Require Interpreting the CBAs

Still, the preceding analysis is not dispositive: determining whether a claim is LMRA preempted further requires a case-by-case analysis of the state-law claims as they relate to the CBAs. *See In re Bentz Metal Prods. Co.*, 253 F.3d 283, 289 (7th Cir. 2001). In that respect, the only conceivable connection between the complaint and the CBAs lays with the conspiracy and fraudulent concealment/omission claims, which also happen to be the only claims that Defendants discuss with particularity. On their account, determining the existence of a conspiracy between the NFL and Riddell would necessarily require interpretation of the CBAs' provisions related to (1) player health and welfare, and (2) the NFL's duty to monitor the health of its players. Similarly, with respect to the fraud claim, Defendants assert that "interpretation of the CBAs is unavoidable in establishing the existence and level of duty owed by the Riddell defendants to disclose information about medical risks and limitations of all helmets in light of the duties undertaken by and assumed by the NFL, its clubs, the NFLPA, the various committees, the physicians, and the trainers." (Def.'s Notice of Removal ¶ 21). Not so.

Consider Plaintiff's conspiracy claim: she will have to show that Defendants and the NFL conspired "to accomplish, through concerted action, an illegal act." *Ohio Nat'l Life Assur. Corp. v. Davis*, 13 F. Supp. 3d 876, 886 (N.D. Ill. 2014). The "illegal act" in this instance, as alleged in the complaint, is the establishment of sham research committees (funded by both the NFL and Defendants), which in turn created sham studies that grossly inflated the effectiveness of Riddell helmets at mitigating certain kinds of head trauma. (*See* Compl. at 6-39.) It is difficult to see how or why the CBAs would play a role in this analysis. To be sure, the CBAs contain many

6

provisions pertaining to the NFL's duty to monitor player health and equipment, but the relevant question is not whether the NFL lived up to its standard of care under the CBAs. Rather, the issues are (1) whether Defendants manufactured a dangerous product, as defined by Illinois law, and (2) whether Defendants and the NFL agreed to work together to hide those dangers. Put differently: either Riddell helmets were dangerously defective, or they were not; and either Riddell and the NFL agreed to hide those dangers by funding/conducting sham studies, or they did not. A jury would not even need to glance at the CBAs to determine these facts.[3]

The same holds true of Plaintiff's fraudulent concealment/omission claim. To succeed on this claim, Plaintiff must show the following: (1) a duty to disclose the truth owed by the defendant to the plaintiff; (2) a false statement (or omission) of material fact made by the defendant; (3) the defendant's knowledge of its falsity; (4) intent to conceal its falsity in order to induce the plaintiff to act; (5) action by the plaintiff in reliance upon those statements; and (6) damages. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012). The essence of Plaintiff's allegations in this respect is that Defendants knew of the overwhelming medical literature indicating that Riddell helmets would not sufficiently prevent concussions but nonetheless marketed the helmets as if they did. (Compl. at 54-56.)

Here, too, it is difficult to see why interpretation of the CBAs would be required to resolve this claim. Defendants suggest that the CBAs would be needed to determine the requisite duty of care. But for who? Surely not Defendants since, as discussed above, they are not parties

---

[3] At one point in their notice of removal, Defendants suggest that the conspiracy claim will necessarily turn on whether the NFL had a duty to warn its players of the dangers of Riddell helmets, (*see* Notice of Removal at 12), but this argument clouds the issues. Whether the NFL had a duty to warn its players of faulty equipment is separate and apart from the factual question of whether the NFL worked with Defendants to fabricate scientific evidence. The only way that the CBAs would be relevant in this sense would be to determine the NFL's motive for engaging in the conspiracy in the first instance, which would not require an interpretation of the CBAs. The two issues are therefore not intertwined.

7

to the CBAs and nothing in the CBAs modifies or controls Defendants' common law duties as a manufacturer. Whether the NFL had certain duties of disclosure or care is (again) simply irrelevant because the NFL's conduct does not compose any part of Plaintiff's fraudulent concealment claim.

Moreover, even if the CBAs were somehow relevant in this regard, Defendants' argument that state law controls only "duty" while the CBAs supply the common-law "degree of care" does not persuade the Court that preemption exists. It might be true that the CBAs are relevant to the degree of care, which is a fact-specific inquiry into what is reasonable under the circumstances. But preemption does not occur simply because determining liability entails referring to the CBAs. The Seventh Circuit has made clear that "the overriding principle is that for preemption to apply, *interpretation* of the CBA and not simply a reference to it is required,"[4] and Defendants have made no showing of what, if anything, in the CBAs would need to be *interpreted* (rather than merely referred to) in order to determine the applicable degree of care. Defendants' fraudulent concealment argument is therefore a nonstarter. *See Boogaard v. NHL*, 126 F. Supp. 3d 1010, 1024 (N.D. Ill. 2015) (similarly rejecting the National Hockey League's argument that the plaintiff's claims for fraudulent concealment of the dangers of concussions were inextricably intertwined with the players' CBAs).

Defendants' remaining arguments are even less persuasive. Beyond the conspiracy and fraud claims, they simply reiterate the breadth of duties/conduct covered by the CBAs and conclude, without much analysis, that each of Plaintiffs claims is inextricably intertwined with the CBAs, which hardly satisfies their burden of establishing the propriety of removal. They note, for example, that the CBAs establish a Joint Committee to address issues of player safety,

---

[4] *In re Bentz Metal Products Co., Inc.*, 253 F.3d at 289 (emphasis in original).

8

including the safety of equipment. This, however, is not enough. While the Joint Committee may be charged with discussing the safety of equipment, resolution of Plaintiff's product liability and negligence claims is not in any way dependent on an interpretation of the CBAs. Rather, Plaintiff's claims focus on the duties and obligations of a helmet manufacturer, and the issues to be decided will turn on, for example, whether Defendants had common law duties to manufacture safe products and warn others about any dangerous defects, whether they breached those duties, and whether that breach harmed Plaintiff. *See Tragarz v. Keene Corp.*, 980 F.2d 411, 418 (7th Cir. 1992). Simply put, the topical relationship between Plaintiff's remaining claims and the CBAs does not support a finding of preemption. *See Stringer v. Nat'l Football League*, 474 F. Supp. 2d 894, 914–15 (S.D. Ohio 2007) (holding that the claims against Riddell Inc. for negligence, products liability, breach of express/warranty, and failure to warn were not LMRA-preempted)

To wit, Defendants have not shown that any of Plaintiff's claims require interpreting the CBAs, which means they have not carried their burden of showing that a federal question exists in this case. Plaintiff's motion to remand is therefore granted. Plaintiff's one-sentence request for fees and costs, however, is denied.

## CONCLUSION

For the reasons set forth below, the Court grants Plaintiffs' Motion to Remand [20]. This case is hereby remanded to the Circuit Court of Cook County. Civil case terminated.

**SO ORDERED.**                                     **ENTERED: July 19, 2016**

_____
**HON. RONALD A. GUZMÁN**
**United States District Judge**