UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | Case No. 12-md-2323 (AB)<br><br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>            Plaintiffs,<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>            Defendants. | **Hon. Anita B. Brody** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**MOVANT RETIRED NFL PLAYERS REPLY IN SUPPORT OF THEIR
MOTION FOR RECONSIDERATION [ECF NO. 8923] OF THEIR
MOTION TO DETERMINE PROPER ADMINISTRATION OF CLAIMS
<u>UNDER THE SETTLEMENT AGREEMENT [ECF NO. 8267]</u>**

The Retired NFL Players Anthony Allen, Brandon Banks, Josh Bell, Fred Bennett, Michael Coe, Emanuel Cook, Dedrick Epps, Steven Harris, Javarris James, Stefan Logan, Tony Nathan, Durwood Roquemore, Maurice Smith, Reggie Smith, Eric Streater and Cornell Webster (collectively the "Movants") respectfully submit this Reply in Support of their Motion for Reconsideration [ECF No. 8923] of their Motion to Determine Proper Administration of Claims Under the Settlement Agreement (the "Motion for Reconsideration") [ECF No. 8267].

**Introduction**

Movants are not seeking to avoid proceeding through the Claims Administration process. Movants have presented the Court with undisputed factual evidence that Counsel for the NFL Parties, together with Co-Lead Class Counsel, directed the Claims Administrator to institute substantive changes (which the parties label "processes") that are not contained in the Settlement Agreement (the "Substantive Changes").  Due to the fact that the Substantive Changes materially alter the rights of all Retired NFL Players to their detriment without proper notice, without a fairness hearing and without an amendment to the Settlement Agreement, Movants have requested relief from the Court to protect the Class Members and prevent this manifest injustice.

Co-Lead Class Counsel and Counsel for the NFL Parties would lead this Court to believe that the Substantive Changes are merely procedural, nothing more than policies and procedures instituted to implement the claims process consistent with the Settlement Agreement, and that Movants are merely attempting to bypass the process. This is patently false.

To be clear, Movants are not attempting to bypass the process and have never alleged that they are not required to follow the claims process.  Movants are attempting to prevent insertion Substantive Changes beyond the scope of what is provided under the Settlement Agreement that create additional requirements to qualify for a Monetary Award and point to the following new evidence in further support of their Motion for Reconsideration:

1. Orran Brown has confirmed that the new change, which now requires that raw scores must be submitted in support of neurocognitive testing, is not contained in the Settlement Agreement.

2. Co-Lead Class Counsel and Counsel for the NFL Parties did not dispute the new evidence of Substantive Changes, new evidence of confirming widespread

problems and new evidence demonstrating lack of payments presented in the Motion for Reconsideration, and label the Substantive Changes "processes" under the framework of the Settlement Agreement.

3. The proposed FAQ [ECF No. ] purports to make further Substantive Changes to the Settlement Agreement by, among others, now requiring neuropsychological testing for post-effective date claims made outside the BAP but through an MAF, which effectively eliminates the "generally consistent" standard contained in the Settlement Agreement for post-effective date claims made outside the BAP but through an MAF.

4. Ken Belson of the New York Times, the same reporter whose June 17, 2017 article was attached to an Order issued by this Court, has recently reported widespread problems and perceptions of unfair practices among Claimants attempting to obtain Settlement Awards.

Due to the newly discovered facts and evidence unavailable to Movants or this Court until now, Movants request that the Court reconsider its ruling on the Motion to Determine Proper Administration of Claims Under the Settlement Agreement.

**ARGUMENT**

1. **The Claims Administrator admitted that neurocognitive testing raw scores, a new purported requirement, were not included in the Settlement Agreement.**

Movants attached an email dated November 7, 2017, from the Claims Administrator to the Motion for Reconsideration [ECF No. 8923-1], which indicated that Co-Lead Class Counsel and Counsel for the NFL Parties directed the Claims Administrator that Claimants must include all raw scores from neuropsychological testing:

On 11/7/17, Co-Lead Class Counsel and Counsel for the NFL Parties directed that

> [N]europsychological testing records submitted in support of claims for Qualifying Diagnoses of Level 1.5 Neurocognitive Impairment and Level 2 Neurocognitive Impairment must include the raw scores from that testing.

*See* Godwin Email, ECF No. 8923-1.

On November 13, 2017, the same day Movants filed the Motion for Reconsideration, The New York Times published an article (the "11/13/17 Belson Article") in which Ken Belson reported that Orran Brown, Esq. of Brown Greer, the Claims Administrator, said that "players were now, for instance, being asked to turn in the raw scores from their neurocognitive exams even though that was not explicit in the original agreement." A copy of the article is attached as Exhibit A. In his statement to The New York Times, Mr. Brown confirmed that the new November 11, 2017 requirement, that neurocognitive testing must include raw scores, is not contained in the Settlement Agreement. Mr Brown's admission that requiring the raw score data is not part of the Settlement Agreement is newly discovered evidence of a Substantive Change to the Settlement Agreement.

According to the article, Mr. Brown indicated that "it was common for the parties to settlements to fine-tune their agreements to account for issues that arise." *See* 11/13/17 Belson Article, Exhibit A. However, in this case none of the Claimants whose rights are materially affected by this Substantive Change to the Settlement Agreement were provided proper notice of any proposed substantive change nor provided any opportunity to object or otherwise be heard on the issue. Adding specific and sensitive neuropsychological data as a requirement eleven months after the Effective Date as a mandatory component of the neuropsychological testing medical record, which is required to obtain a Qualifying Diagnosis, goes far beyond mere "fine-tuning."

When Movants filed the initial Motion they only had the verbal statements available at the time as evidence that the Claims Administrator was placing additional requirements into the

Settlement Agreement.  *See* Affidavits, ECF No. 8309-1.  Now, Movants have presented the Court with newly discovered undisputed evidence that: (a) Counsel for the NFL Parties and Co-Lead Class Counsel directed the Claims Administrator to add Substantive Changes requiring raw scores from neuropsychological testing be submitted [*see* Godwin Email, ECF No. 8923-1]; and (b) the Claims Administrator has admitted that the Settlement Agreement does not require raw scores from neuropsychological testing [*see* 11/13/17 Belson Article, Exhibit A].

**2.     Co-Lead Class Counsel and Counsel for the NFL Parties failed to dispute any of the new evidence presented in support of the Motion for Reconsideration.**

Co-Lead Class Counsel Seeger Weiss and Counsel for the NFL Parties have joined forces responding to the Motion for Reconsideration in defense of their joint effort to add material terms to the Settlement Agreement, none of which are processes or which facilitate payment of funds, and all of which are materially adverse to the best interest of the Class Members.  The entire focus of Co-Lead Class Counsel's Response and Counsel for the NFL parties' Joinder is that Movants offer nothing new in support of the Motion for Reconsideration, Movants make the same arguments and the Court has already ruled on the issue.

In addition, Counsel for the NFL Parties and Co-Lead Class Counsel claim that they have merely "developed processes" within the framework of the Settlement Agreement to "expedite the full and fair adjudication of claims" and that "Movants concerns should be addressed within that orderly framework."  *See* p.2 CLCC Response, ECF No. 8949.  Notably, however, neither the Response nor the Joinder disputes the new evidence provided to this Court confirming that the alleged "processes" are actually substantive changes that affect Claimants' rights to the detriment of the Retired NFL Players.

There is nothing "procedural" about requiring Claimants to submit raw test scores from neuropsychological tests for re-evaluation by the Claims Administrator.  By way of example, a

change in process would be requiring that Claimants submit medical records to the Claims Administrator via FedEx rather than through the claims portal, to verify delivery dates via third party courier. The procedure in this example, method of delivery of records, has no material effect upon, and does not substantively alter the rights of the Claimants unlike these additional requirements being added into the Settlement Agreement.

Conversely, specifying for the first time the exact back up data[1] that must be included in support of the specific neuropsychological testing, criterion that was specifically identified in the Settlement Agreement (testing that supports a Qualifying Diagnosis), does not have any characteristics of a procedure and does not serve any process. The new requirement for submission of raw scores is undeniably substantive because:

(a) the raw scores contain existing information that must be obtained and, unlike filling out a form that indicates name address and phone number (information that can be provided contemporaneously with a request), raw score cannot be created contemporaneously in time with this new requirement and are not typically disclosed in the normal course of business;

(b) producing raw scores cannot simply be "followed" like a procedure;

(c) the NFL (and Co-Lead Class Counsel) have directed that "neuropsychological testing records submitted in support of claims for Qualifying Diagnoses of Level 1.5 Neurocognitive Impairment and Level 2 Neurocognitive Impairment **must include the raw scores from that testing**" [emphasis added], adding a new requirement for inclusion of specific substantive data, usually not disclosed in the normal course of business and not required under the Settlement Agreement, in addition to the neuropsychological report.

---

[1] The Settlement Agreement provides: "For the avoidance of any doubt, the review of whether a Qualifying Diagnosis is based on principles generally consistent with the diagnostic criteria set forth in Exhibit 1 (Injury Definitions) does not require identical diagnosis criteria including without limitation, the same testing protocols or documentation requirements." *See* MDL ECF No. 6481-1, p. 37-8.

If raw test scores were intended to be included under the Settlement Agreement they would have been included. The lawyers who negotiated this settlement are among the best and brightest in the world; if raw test scores were intended to be included they would have been included. However, despite that Orran Brown admits that the raw scores are not required under the Settlement Agreement, Co-Lead Class Counsel alleges without any support or analysis that only "processes" have been implemented. The NFL and Co-Lead Class Counsel cannot agree to add new substantive requirements without proper notice, without a fairness hearing and without an amendment to the Settlement Agreement, none of which has occurred.

**3.     The proposed FAQ [ECF No.   ] includes material Substantive Changes to the Settlement Agreement that are detrimental to Retired NFL Players.**

Movants attached a portion of the newly proposed FAQ [ECF No. 9137-1], which contains another of the Substantive Changes that conflicts with and undermines the Settlement Agreement. Specifically, the FAQ requires neuropsychological testing for post-effective date claims made outside the BAP and through an MAF physician, effectively eliminating the "generally consistent" standard contained in the Settlement Agreement. The language contained in the FAQ materially changes the Settlement Agreement and amounts to a written statement of the representations made by David Smith, Esq. of Brown Greer to Movants' counsel, that "generally consistent means the same as the BAP requirements." *See* Affidavits, ECF No. 8309-1.

After back peddling from the verbal assertions that medical records must pre-exist an examination, and that generally consistent equals the BAP requirements, the ongoing campaign to prevent Retired NFL Players from collecting monetary awards has shifted from reading additional requirements into the Settlement Agreement to creating them. Now, language that materially alters and contradicts the Settlement Agreement has been added under the proposed

FAQ and the "directive" emails to the Claims Administrator. Movants have at least progressed to the point where the Substantive Changes are now documented in written form. Nevertheless, Movants anticipate that the Substantive Changes contained in the FAQ will again be presented as "processes" to the Court. Movants note that the proposed FAQ makes Substantive Changes, under the guise of procedural questions and answers, that amount materially affect Claimant's rights under the settlement agreement.

4. **<u>New York Times reporter Ken Belson has documented that the problems experienced by Movants are widespread, not isolated, and impact all Class Members</u>.**

Movants attached the 11/13/17 Belson Article as **Exhibit A**, which is titled "Debilitated players accuse N.F.L of stalling payments" and contains a number of accounts indicating that people are not being paid or treated fairly as required. Neither the Response nor the Joinder addresses the new evidence indicating that the issues complained of in the Motion are widespread, affecting all Class Members, and not limited to merely a few Claimants as inaccurately suggested by Co-Lead Class Counsel.

Instead, the Response and Joinder inaccurately represent to this Court that there are no new facts evidencing that Co-Lead Class Counsel and Counsel for the NFL Parties have directed the Claims Administrator to add requirements without proper notice, without a fairness hearing and without an amendment to the Settlement Agreement.

As Mr. Feinberg said in the Belson Article "[d]efendants had a right to try to prevent fraud. But the delays that have come from questioning a large number of claims can erode trust in the settlement." "It's not just how many claims have been found eligible, but how quickly the money goes out the door," "All the words in the world are no substitute for visible evidence of generosity, and checks flowing to families in need." *See* 11/13/17 Belson Article, Exhibit A.

**Conclusion**

At the hearing on September 19, 2017, which counsel for Movants attended, Mr. Seeger opened with a representation to the Court that "the Settlement is working perfectly." Less than two months later, Mr. Seeger was quoted in the 11/13/17 Belson Article, as saying: "Is this working perfectly? No." *See* p.4 Belson Article, **Exhibit A**. Mr. Seeger made a similar statement in an interview with Washington Post reporter Rick Maese: "Is it perfect? No." *See* p.3 Maece Article, ECF No. 8923-2.

From Movants perspective, nothing has changed since Movants first filed the Motion last August except that some of the Substantive Changes have morphed from a verbal statement to a written email or FAQ, and Mr. Seeger has acknowledged that the Administration of the Settlement Agreement is not, in fact, working perfectly. The new, undisputed evidence provided by Movants provides that there have been material substantive changes to the Settlement Agreement to the detriment of the class members. Specifically, the Substantive Changes are aimed toward: (a) creating additional requirements for submittal of raw neuropsychological data, a delay tactic as it has now placed all submitted claims in "Preliminary Review" sunject to submission of this newly required data; (b) requiring a neuropsychological examination for post effective date, outside of BAP, MAF Claims where none exists under the outside of BAP, MAF Claims.

Dated:  December 4, 2017

                                                   Respectfully Submitted,

| | |
|---|---|
| Patrick J. Tighe | Attorneys for Plaintiffs/Movants |
| Attorneys for Plaintiffs/Movants | LOREN & KEAN LAW |
| X1LAW, P.A.f/k/a Patrick J. Tighe, P.A. | 7111 Fairway Drive, Suite 302 |
| 721 US Highway 1, Ste 121 | Palm Beach Gardens, FL  33418 |
| North Palm Beach, FL 33408 | Phone: 561-615-5701 |
| Phone: 561-537-3319 | Fax: 561-615-5708 |
| Fax: 561-537-7193 | mstjacques@lorenkeanlaw.com |
| Pat@X1LAW.com | Florida Bar No. 0783471 |
| Florida Bar No. 568155 | |
| | *s/ Michael St. Jacques* |
| | Michael G. St. Jacques, II |

## CERTIFICATE OF SERVICE

     I hereby certify that on December 4, 2017, the foregoing document was electronically filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, and that the filing is available for downloading and viewing from the electronic court filing system by counsel for all parties.

                                  **LOREN & KEAN LAW**

                                *s/ Michael St. Jacques*
                                **MICHAEL G. ST. JACQUES, II**