UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : : : | No. 2:12-md-02323-AB  MDL No. 2323 |
| | : | **Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated,* Plaintiffs, | : : : : | Civ. Action No. 14-00029-AB |
| v. | : : | |
| National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc., Defendants. | : : : : : | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | : : : | |

**FINDINGS AND REMEDIES OF THE SPECIAL MASTER PURSUANT TO SECTION 10.3(i) REGARDING 153 MONETARY AWARD CLAIMS**

## I.   INTRODUCTION.

Under Section 10.3(i) of the Settlement Agreement, if upon completion of an audit the Claims Administrator determines that there has been a misrepresentation, omission, or concealment of a material fact made in connection with a claim for a Monetary Award, the Claims Administrator refers that claim to the Special Master for review and findings.

In the case at hand, the Claims Administrator investigated 153 Monetary Award Claims supported by neuropsychological testing performed by Dr. Serina Hoover. This investigation included reviews of relevant records, interviews with relevant individuals, and consultation with an Appeals Advisory Panel Consultant. The Claims Administrator concluded that Dr. Hoover misrepresented information submitted to the Program in connection with the 153 Monetary Award Claims. Accordingly, on November 9, 2017, the Claims Administrator referred these 153

Monetary Award Claims to the Special Master for review and findings pursuant to Section 10.3(i) of the Settlement Agreement.[1]

## II.   REVIEW OF FACTS.

As noted, these claims were referred to an Appeals Advisory Panel Consultant. The Consultant reported the following inadequacies in the neuropsychological evaluations performed by Dr. Hoover:

- Dr. Hoover excessively relied on patient complaints in the diagnosis of major neurocognitive disorder secondary to repetitive head injuries with behavioral disturbance;
- Dr. Hoover's assessments often violated standardized procedures (for example, administering Part B of the Trail Making Test without Part A);
- Certain testing interpretations were incorrect (e.g., better performance on the color-word trial of the Stroop test than expected based on individual color and word trials was erroneously used as an indicator of executive dysfunction);
- Dr. Hoover disregarded indicators of suboptimal effort, such as results showing that errors on the Tests of Memory Malingering exceeded the cutoff for suboptimal effort and scores in the invalid performance range on other validity tests. Dr. Hoover classified these as "valid" or "questionable" or otherwise provided unconvincing explanations; and
- Dr. Hoover labeled the MMPI-2 a "mood" inventory and incorrectly interpreted the testing.

The AAP Consultant concluded that the evaluations performed by Dr. Hoover fail to meet the standard of care required for approval of a Monetary Award.

Dr. Hoover reviewed the Appeals Advisory Panel Consultant's opinion and replied with her explanations and references to medical literature to support her conclusions. The Appeals Advisory Panel Consultant reviewed these responses and maintained the opinion that Dr. Hoover did not perform evaluations that meet the standard of care or that are free from bias.

The Claims Administrator noted other concerns with the evaluations. Multiple Players traveled from other states to California to be tested by Dr. Hoover, including twelve Players who reside in Florida and eleven who reside in Georgia.

Furthermore, the Claims Administrator noted concerns about the timing of Dr. Hoover's evaluations. Dr. Hoover allegedly evaluated and tested at least three Players on the same date on 25 different days, and on two days, one of which was New Year's Eve, she evaluated and tested eight Players in one day. These dates, where at least three or more Players were tested on one day, are listed below:

---

[1] The Claims Administrator also notified Settlement Class Members of the referral.

| | SCM Testing Date | Number of Claims from SCMs |
|---|---|---|
| 1. | December 31, 2016 | 8 |
| 2. | December 21, 2016 | 8 |
| 3. | November 30, 2016 | 5 |
| 4. | December 10, 2016 | 5 |
| 5. | December 14, 2016 | 5 |
| 6. | August 21, 2016 | 4 |
| 7. | September 7, 2016 | 4 |
| 8. | September 14, 2016 | 4 |
| 9. | November 16, 2016 | 4 |
| 10. | December 3, 20176 | 4 |
| 11. | December 28, 2016 | 4 |
| 12. | December 29, 2016 | 4 |
| 13. | January 4, 2017 | 4 |
| 14. | June 8, 2016 | 3 |
| 15. | August 3, 2016 | 3 |
| 16. | August 10, 2016 | 3 |
| 17. | September 28, 2016 | 3 |
| 18. | October 5, 2016 | 3 |
| 19. | October 12, 2016 | 3 |
| 20. | November 9, 2016 | 3 |
| 21. | December 4, 2016 | 3 |
| 22. | December 6, 2016 | 3 |
| 23. | December 9, 2016 | 3 |
| 24. | December 19, 2016 | 3 |
| 25. | December 27, 2016 | 3 |
| 26. | TOTAL | 99 |

On December 21, 2016 and December 31, 2016, Dr. Hoover allegedly examined eight Players and signed the corresponding reports on the day following the examinations (December 22, 2016 and January 1, 2017, respectively). Established procedures require that all portions of the examination protocol must be completed by the time Dr. Hoover signs the report. In these cases, the evaluation reports indicate that Dr. Hoover performed all testing and evaluation, and wrote the reports herself.

These reports show that the combined testing, interpretation, and report preparation time for the December 31, 2016 examinations is 134.5 hours across a 48 hour period.

In an interview with the Claims Administrator, Dr. Hoover indicated that she had three psychometrists assist with testing administration and interpretation. Even assuming Dr.

Hoover's use of three assistants, and equally dividing the work among the four individuals, each would have had to work approximately 17 hours straight on both December 31, 2016 and January 1, 2017. However, Dr. Hoover indicated that the work was not shared equally with the psychometrists but rather that Dr. Hoover herself had conducted initial interviews and some testing, and she herself prepared all reports.

Similarly, the combined testing, interpretation, and report preparation time stated in the reports for the eight December 21, 2016 examinations add up to 139.75 hours.

## III.   CONCLUSION AND REMEDIES.

Under Section 10.3(i) of the Settlement Agreement, the Special Master's review and findings may include the following relief, without limitation: (a) denial of the claim in the event of fraud; (b) additional audits of claims from the same law firm or physician (if applicable), including those already paid; (c) referral of the attorney or physician (if applicable) to the appropriate disciplinary boards; (d) referral to federal authorities; (e) disqualification of the attorney, physician and/or Settlement Class Member from further participation in the Class Action Settlement; and/or (f) if a law firm is found by the Claims Administrator to have submitted more than one fraudulent submission on behalf of Settlement Class Members, claim submissions by that law firm will no longer be accepted, and attorneys' fees paid to the firm by the Settlement Class Member will be forfeited and paid to the Settlement Trust for transfer by the Trustee into the Monetary Award Fund.

Upon review, the Special Masters find that claims relying on Dr. Hoover's testing include a misrepresentation, omission, or concealment of a material fact and that Dr. Hoover's testing results do not meet the standard of care required for a Monetary Award under the Settlement Agreement. Accordingly, and pursuant to Section 10.3 of the Settlement Agreement, the Special Masters order these remedies:

1. **Disqualification of Dr. Hoover:** Dr. Hoover is disqualified from participation in the Program. Any Monetary Award Claim that relies on neuropsychological testing performed by Dr. Hoover is disallowed and no claims may be submitted in reliance on her testing or opinions.

2. **Disposition of Monetary Award Claims Relying on Dr. Hoover's Evaluation:** The Claims Administrator will deny without prejudice any Monetary Award Claim that relies on evaluation, testing or opinions performed or rendered by Dr. Hoover. Those Settlement Class Members whose Monetary Award Claims rely on neuropsychological testing by Dr. Hoover may seek a new evaluation through the Baseline Assessment Program, if they are eligible to participate in the BAP, or from a Qualified MAF Physician. If the original Qualifying Diagnosis reached by Dr. Hoover or a physician relying on her testing is confirmed by the Qualified MAF Physician or the BAP Provider, the diagnosis date may be dated retroactively to match the date of the original Qualifying Diagnosis asserted in the Monetary Award Claim that relied on Dr. Hoover's evaluation.

3.  **Other Remedies:**  The Special Masters will continue to review the Monetary Award Claims supported by neuropsychological testing from Dr. Hoover and may order further remedies as deemed appropriate and necessary.


_____
Wendell Pritchett, Special Master


Signed ___ of November, 2017.

_____
Jo-Ann Verrier, Special Master


Signed ___ of November, 2017.