UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated,*<br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br>　　　　　　　　　Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**SPECIAL MASTER RULING: APPLICATION OF THE DEFINITION OF ELIGIBLE SEASON TO GAME DAY ROSTER DESIGNATIONS**

**I. INTRODUCTION**

This matter requires the Special Master to interpret a provision of the Amended Class Action Settlement Agreement (hereinafter, "the Settlement Agreement") that dictates offsets of Monetary Awards to Claimants based on the number of "Eligible Seasons" the Retired Player played in the National Football League (hereinafter, the "NFL").

The parties dispute the Settlement Agreement's definition of an "Eligible Season" and disagree about whether Players who were moved from their Club's "Active List" to its Inactive List on game-day accrue games toward an Eligible Season. For the reasons stated below, the Special Master holds that such games do accrue toward an Eligible Season. This ruling is a "Matter of Law" as defined by the Settlement Agreement.

1

## II. BACKGROUND

A Retired NFL Player who receives a Qualifying Diagnosis according to the terms of the Settlement Agreement is eligible to receive a Monetary Award in the amount set by the Monetary Award Grid in Exhibit 3 of the Settlement Agreement.[1] Under § 6.7(b)(i) of the Settlement Agreement, Monetary Awards are subject to downward adjustments for Retired Players who accrued fewer than five "Eligible Seasons" in the NFL. The fewer Eligible Seasons a Player accrued, the steeper the reduction of the Monetary Award: The Award for a Player with 4.5 Eligible Seasons is offset by ten percent, the Award for a Player with 4 Eligible Seasons is offset by twenty percent, and so forth.

Section 2.1(kk) of the Settlement Agreement defines "Eligible Seasons," granting a Player a full Eligible Season if he was:

(i)  On a Club's Active List "on the date of three (3) or more regular season or postseason games," or

(ii) On a Club's Active List "on the date of one (1) or more regular or postseason games, and then spent at least two (2) regular or postseason games on [the Club's] injured reserve list or Inactive List due to a concussion or head injury."[2]

The parties dispute what it means to be on the "Active List." Per the Constitution and By-Laws of the National Football League, Clubs have to cut down their roster to a 53-Player "Active List" prior to the first regular-season game; however, ninety minutes before kickoff of each game, they are required to establish a 45-Player "Active List" and place the remaining rostered Players on the "Inactive List."[3] It is undisputed that the Players who are placed on the Inactive List on game day often practice in full for the week leading up to the game.

---

[1] Receipt of a Monetary Award is subject to other requirements set forth in the Settlement Agreement that are not pertinent to this opinion.

[2] Section 2.1(kk) also allows Players to accrue "half of an Eligible Season" by spending at least eight games on a Club's "practice, development, or taxi squad" roster; or being on the active roster of a team in the World League of American Football, NFL Europe League, or NFL Europa League "on the date of three (3) or more regular season or postseason games" or "one (1) or more regular or postseason games" followed by "at least two (2) regular or postseason games on [the team's] injured reserve list or team inactive list due to a concussion or head injury."

[3] §§ 17.1(f) and 17.3 of the Constitution & By-Laws of the National Football League, Appended as Ex. A in Part II(B) of the Resp.'s to Special Masters (filed Oct. 18, 2017). The NFL states in its brief that both the season-long and game-day rosters have changed in size over time, explaining that prior to 1993, the maximum season-long roster was 47 Players, with 45 Players active on game day. (Resp.'s to Special Masters (filed Oct. 18, 2017), at 38 n. 1.) In 2011, the game-day rosters expanded from 45 to 46, while season-long rosters remained at 53. The NFL contends that because of the non-static nature of these rosters, the parties refrained from defining "Active List" in the Settlement Agreement by reference to a specific number of Players. (*Id.*)

2

The question before the Special Master is whether a Player who is assigned to the Inactive List ninety minutes before kickoff qualifies as someone who was on the Active List "on the date of" the game for purpose of accruing Eligible Seasons.

### III. ARGUMENTS OF THE PARTIES

#### A. Argument by the NFL Parties

The NFL argues that interpreting the Settlement Agreement to count games on the Inactive List towards the accrual of an Eligible Season would violate basic principles of contract interpretation by rendering a provision of the Agreement meaningless. (Resp.'s to Special Masters (filed Oct. 18, 2017), at 41 (hereinafter, "Responses") (citing In re G-I Holdings, Inc., 755 F.3d 195, 202 (3d Cir. 2014) ("Court[s] should interpret the contract in such a way as to not render any of its provisions illusory or meaningless.")).

The NFL asserts that crediting *all* games spent on the Inactive List would render part (ii) of the Eligible Season definition – which specifically credits games on the Inactive List *due to a concussion or head injury* – superfluous. (Responses, at 40-41.)

Finally, the NFL claims that, because there is only one possible way to interpret § 2.1(kk) – to discount games on the Inactive List unless those games qualify for part (ii) of the Eligible Season definition – the provision is clear and unambiguous. (*Id.*, at 41.) Accordingly, the NFL argues, the plain meaning of the provision must be applied: Contract interpretation doctrine forbids a court from considering extrinsic evidence (such as the evidence of intent set forth by Co-Lead Class Counsel) in interpreting a clear and unambiguous provision. (*Id.* (quoting Great Am. Ins. Co. v. Norwin Sch. Dist., 544 F.3d 229, 243 (3d. Cir. 2008) ("Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties…In the absence of an ambiguity, the plain meaning of the agreement will be enforced.") (internal citations omitted)).

#### B. Argument by the Co-Lead Class Counsel

Co-Lead Class Counsel argue that the "letter and spirit" of the Settlement Agreement is violated by excluding rostered Players who practiced the week leading up to the game but were placed on the Inactive List 90 minutes before kickoff from Eligible Season accrual. (Responses, at 17.) Counsel notes that Eligible Seasons were chosen as a proxy for the number of concussive hits sustained by Retired Players as a result of playing in the NFL. (*Id.*, at 12 (citing In re Nat'l Football League Players' Concussion Injury Litig., 307 F.R.D. 351, 409 (E.D. Pa. 2015), *amended* No. 2:12-MD- 02323-AB, 2015 WL 12827803 (E.D. Pa. May 8, 2015), *aff'd* 821 F.3d 410 (3d Cir. 2016), *as amended* (May 2, 2016)).

Thus, Counsel argues that the NFL's interpretation of the definition of "Eligible Seasons" would lead to an "absurd result." (*Id.*, at 17.). Rostered Players who practiced for the entire week leading up to the game – sustaining hits in the process – before being placed on the Inactive List 90 minutes prior to game time would not accrue any games toward an Eligible Season, but non-

roster practice and developmental squad members *would* accrue games toward half an Eligible Season.

## IV. DISCUSSION

### A. Choice-of-Law Analysis

In multi-district litigation (MDL) consolidation under 28 U.S.C. § 1407, where the court has jurisdiction under 28 U.S.C. § 1332 based upon diversity of citizenship, the transferee court applies state substantive law as determined by the choice of law analysis required by the state in which the action was filed. Oil Field Cases, 673 F. Supp. 2d 358, 363 (E.D. Pa. 2009). Although this case was filed in multiple states, the prevailing choice-of-law analysis under any state would be substantially the same. Because federal district courts with diversity jurisdiction under 28 U.S.C. § 1332 must apply the choice-of-law rules of the state in which they sit, for the purposes of this decision, the Special Master will apply Pennsylvania choice-of-law analysis to determine the applicable state substantive law. Carlson v. Arnot-Ogden Mem'l Hosp., 918 F.2d 411, 413 (3d Cir. 1990) (citing Klaxon Co. v. Stentor Mfg. Co., 313 U.S. 487, 496 (1941)).

Pennsylvania courts tend to honor the intent of the parties by enforcing a contractual choice-of-law provision. T & N, PLC v. Pa. Ins. Guar. Ass'n, 44 F.3d 174, 185-86 (3d Cir. 1994) (citing Smith v. Commonwealth Nat. Bank, 557 A.2d 775, 777 (Pa. Super. 1989), *appeal denied*, 569 A.2d 1369 (Pa. 1990) ("The Pennsylvania courts have adopted section 187 of the Restatement (Second) Conflict of Laws which provides that…the law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.").

Per § 27.1 of the Settlement Agreement, the parties have agreed that the provisions of the Settlement Agreement shall be "interpreted and enforced in accordance with the laws of the State of New York." Accordingly, the Special Master will honor the intent of the parties and interpret the Settlement Agreement according to the state contract law of New York.

### B. Whether There is Only One Interpretation That Gives Meaning to All Provisions

Because the NFL argues that interpretive principles of contract law allow for only one possible interpretation of § 2.1(kk) of the Settlement Agreement, the Special Master will analyze this argument first to see if it obviates the need for further review.

The Settlement Agreement is governed by contract-law principles. See Interspiro USA, Inc. v. Figgie Int'l, Inc., 815 F. Supp. 1488, 1501 (D. Del. 1993) (citing Rainbow v. Swisher, N.E.2d 258, 259 (N.Y. 1988) ("Under New York law, [a] settlement agreement must be interpreted as any other contract.") (internal quotations omitted).

Under the law of New York, the parties are bound to the "plain terms" of a contract "unless, when so construed, the contract becomes meaningless." See Peerless Weighing & Vending Mach. Corp. v. Int'l Ticket Scale Corp., 126 F.2d 239, 241 (3d Cir. 1942) (citing Stern

4

v. Premier Shirt Corporation, 183 N.E. 363, 364 (N.Y. 1932); Outlet Embroidery Co., Inc. v. Derwent Mills, Limited, 172 N.E. 462, 463 (N.Y. 1930); Cohen & Sons, Inc. v. M. Lurie Woolen Co., Inc., 133 N.E. 370, 371 (N.Y. 1921).

The NFL argues that crediting *all* games in which a Player was placed on the Inactive List on the date of the game would render the second provision of § 2.1(kk) (hereinafter, "part (ii)") – which specifically credits games for which a Player was on the Inactive List "due to concussion or head injury" – meaningless. (Responses, at 40-41.) The Special Master concurs that unless there is a possible interpretation of § 2.1(kk) that credits all games in which a Player was placed on the Inactive List "on the date of" the game *without* rendering superfluous the provision crediting a specified subset of games spent on the Inactive List, then the NFL's interpretation of this provision must control.

The Special Master finds that there is another interpretation of § 2.1(kk) under which part (ii) would retain meaning. Such an interpretation hinges on the presence of the phrase "on the date of" in both parts (i) and (ii) of the Eligible Season definition. Per the Constitution and By-Laws of the National Football League, teams are not required to assign Players to the Inactive List until ninety minutes before kickoff. (Responses, at 23.) These provisions can be reasonably interpreted to conclude that Players who are first placed on the Inactive List 90 minutes before kickoff *were* on the Club's Active List "on the date of" the game, thereby fulfilling the requirements of § 2.1(kk) for accrual towards an Eligible Season.

If the lynchpin of accrual of a game towards an Eligible Season is presence on the Active List "on the date of" the game, then part (ii) would serve a purpose: crediting Players who were placed on the Inactive (or Injured Reserve) Lists *prior to* "the date of the game" for reasons related to a concussion or head injury," while *not* crediting Players who were placed on those lists prior to the date of the game for other reasons not related to a head injury.

Accordingly, the Special Master finds that the plain language of the Settlement Agreement allows for an interpretation that does not render any of its provisions superfluous.

## C. Whether the Plain Meaning of the Terms of § 2.1(kk) are Ambiguous

Because there are multiple potential interpretations of § 2.1(kk) that give effect to all provisions of the Settlement Agreement, the Special Master must now turn to the issue of interpreting the relevant provisions. Under New York law, a court must interpret a contract according to the intent of the parties; if such intent is "discernible from the plain meaning of the provisions of the agreement, then there is no need to look further." Peak Partners, LP v. Republic Bank, 191 F. App'x 118, 123 n.5 (3d Cir. 2006) (quoting Evans v. Famous Music Corp., 807 N.E.2d 869, 872 (N.Y. 2004).

A contract that is "complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." Mosaid Techs. Inc. v. LSI Corp., 629 F. App'x 206, 211 (3d Cir. 2015) (quoting Greenfield v. Philles Records, Inc., 780 N.E.2d 166, 170 (N.Y. 2002)). Thus, when the plain meaning of the contract is clear and unambiguous, New York courts do not consider extrinsic evidence to determine the intent of the parties. Bethlehem Steel Co. v. Turner Constr. Co., 141 N.E.2d 590, 593 (N.Y. 1957) ("It has long been the rule that when

5

a contract is clear in and of itself, circumstances extrinsic to the document may not be considered.").

In considering whether a provision is ambiguous, courts review the entire contract. Franklin Advisers, Inc. v. iHeart Commc'ns Inc., No. 04-16-00532-CV, 2017 WL 4518297, at *2 (Tex. App. Oct. 11, 2017) (applying New York state contract law). A contract is ambiguous when "reasonable minds could differ" as to what the parties intended. Van Wagner Adver. Corp. v. S & M Enters., 492 N.E.2d 756, 759 (1986). The provisions of a contract are not considered ambiguous solely because the parties seek different interpretations. Seiden Assocs. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992) (applying New York law). It is therefore incumbent upon the Special Master to determine whether the relevant terms of the Settlement Agreement have a plain meaning, and whether reasonable minds could differ as to the plain meaning of the agreement.

New York courts often refer to the dictionary definition of the terms of a provision in order to determine the plain meaning of a contract. See Graev v. Graev, 2008 NY Slip Op 7945, ¶ 1, 898 N.E.2d 909, 910 ("Words in a contract are to be given their ordinary dictionary meanings."); see, e.g., In re Nortel Networks, Inc., 737 F.3d 265, 271 (3d Cir. 2013) (applying New York contract law and holding that the Oxford English Dictionary definitions of "dispute" and "resolver" constituted the plain meaning of the words).

Here, the provision in question, § 2.1(kk) of the Settlement Agreement, reads as follows:

"'Eligible Season' means a season in which a Retired NFL Football Player or deceased Retired NFL Football Player was: (i) on a Member Club's Active List *on the date of* three (3) or more regular season or postseason games…" (emphasis added).

There is one critical clause in the provision for the purposes of this dispute: "on the date of." Black's Law Dictionary's primary definition of "date" is "[t]he day when an event happened or will happen," such as the "date of trial." *Date*, Black's Law Dictionary (10th ed. 2014). It follows from this definition that the status of a particular person "on the date of" a specified event refers to that person's status on the day when that event *"will happen."* Section 2.1(a) of the Settlement Agreement specifies that the "Active List" means the "list of all Players physically present, eligible and under contract to play for a [Club] *on a particular game day*" (emphasis added), and § 2.1 clarifies that all "references to 'day' or 'days' in the lower case are to calendar days." Thus, when a Player is present, eligible and under contract to play on the calendar day of a particular game, the Settlement Agreement instructs that the Player is on the Active List for that game.

The common law has long refrained from fractionalizing a day unless otherwise specified by the parties: "A thing done at any time during the day is in legal effect done on the last instant of the day." In re Puglisi, 230 F. 188, 189 (E.D. Pa. 1916); see also Garelick v. Rosen, 8 N.E.2d 279, 281 (N.Y. 1937) ("[I]n the absence of an express limitation, the law does not take notice of a fraction of a day."); 2 WILLIAM BLACKSTONE, COMMENTARIES *141 ("In the space of a day all the twenty-four hours are usually reckoned; the law generally rejecting all fractions of a day, in order to avoid disputes.").

If the parties had intended to specify that a Player must be on the Active List at the particular moment that the game starts, rather than on the calendar day of the game, they could have written the provision accordingly. See, e.g., Swenson v. Erickson, 2006 UT App. 34, P.3d 267, 271 ("The inclusion of only a date without a specific time suggests that [the action] could be taken any time that day. If the parties had intended to impose a strict 12:01 a.m. deadline…the [agreements] could have said so."); see also Carter Petroleum Prods. v. Bhd. Bank & Tr. Co., 33 Kan. App. 2d 62, 67 (2004) ("Accordingly, if the [appellant] wanted more specificity as to when and where [appellee] had to make presentment, [they] could have included such provisions [including a]…specific time of day.").

Accordingly, the Special Master finds that when a Player is not placed on the Inactive or Injured Reserve Lists until the calendar day of the game, that Player is on the Active List "on the date of" that game and accrues a game towards an Eligible Season.

Because such an interpretation of the Settlement Agreement can be effected without rendering part (ii) of § 2.1(kk) meaningless – by discounting the accretion of games for which the Player was placed on the Injured Reserve or Inactive List prior to the calendar day of the game, *unless* that Player was placed on such a list due to a head injury as specified in part (ii) – the plain meaning of the provision compels an interpretation that credits games in which the Player was on the Active List on the calendar day of the game.

### D. Whether the Plain Meaning Leads to an Absurd Result

Because the plain meaning of § 2.1(kk) credits Players on the Active List on the day of the game towards an Eligible Season, the Special Master must determine whether the exception to the plain-meaning rule is triggered. Under New York law, a "contract should not be interpreted to produce a result that is absurd," "commercially unreasonable," or "[gives] one party an unfair and unreasonable advantage over the other." Dervan v. Gordian Grp. LLC, No. 16-CV-1694 (AJN), 2017 WL 819494, at *6 n.3 (S.D.N.Y. Feb. 28, 2017) (quoting Luver Plumbing & Heating, Inc. v. Mo's Plumbing & Heating, 43 N.Y.S.3d 267, 269 (N.Y. App. Div. 2016)). Courts may thus modify the plain meaning of an unambiguous contract if enforcing the contract under its plain meaning would lead to such an unfair, unreasonable, or absurd result. Wallace v. 600 Partners Co., 658 N.E.2d 715, 717 (1995).

Applying the plain meaning of § 2.1(kk) would result in some line-drawing that could conceivably be perceived as unfair. For example, a rostered Player who spent three weeks practicing with the team – only to be placed on the Inactive List on the date of each game – and then injured his leg on the first day of Week 4 would accrue a full Eligible Season. By contrast, a Player who spent eight games on the same team's practice, developmental, or taxi squad would have played in the same number of games (zero) and practiced for five more weeks, only to accrue half of an Eligible Season. However, as the NFL notes, "There was—and always will be—line-drawing that occurs in this type of Settlement." (Responses, at 43.) This Court has already held that "[w]hile the Settlement may have been more generous if [those] Retired Players received Eligible Season credit, the lack of credit does not render the Settlement unfair." *Id.* (citing In re Nat'l Football League Players' Concussion Injury Litig., 307 F.R.D. 351 at 410). Indeed, as Co-Lead Class Counsel detail, a reading that the eight Players only placed on the Inactive List 90 minutes prior to game time, but who participated fully in practice all week,

7

would receive less credit than those on the practice squad who were not on the active list at any time on a game day would lead to an absurd result (Responses, at 17.)

Additionally, the Special Master finds nothing in this interpretation of § 2.1(kk) that leads to an unfair or commercially-unreasonable result: While the total cost of payouts under the Monetary Award Fund may increase incrementally, this does not suffice to meet the standard of commercial unreasonableness. Veliz v. Cintas Corp., No. C 03-1180 SBA, 2004 WL 2452851 *modified on reconsideration*, No. 03-01180(SBA), 2005 WL 1048699 (N.D. Cal. May 4, 2005), at *28 (N.D. Cal. Apr. 5, 2004) ("The presence of a commercially unreasonable term [refers to] a term that no one in his right mind would have agreed to.").

## V. CONCLUSION

The Special Master holds that the plain meaning of the terms of the Agreement is evident: retired NFL Players who were on the Active List on the calendar day of their Club's particular regular season or postseason game shall receive credit toward that game for the purposes of calculating an Eligible Season, even when the Player was placed on the Inactive or Injured Reserve Lists prior to the start of the game.

Date: December 4, 2017

Wendell E. Pritchett, Special Master