# EXHIBIT 8

# ATLAS LEGAL FUNDING II, L.P.

700 Plaza Drive, Secaucus, NJ 07094
(Phone) 201-293-4462   (Fax) 201-293-4470

## FACSIMILE TRANSMITTAL COVER SHEET

| | | | |
|---|---|---|---|
| To: | Richard Lewis, Esq. | From: | The Funding Department |
| Fax: | 202-540-7201 | Pages: | 10 (including cover page) |
| Phone: | 202-540-7200 / 202-540-7148 | Date: | 10/15/2014 |
| Re: | Timothy Meamber | cc: | Timothy Meamber |

Attached are the documents that we require to be reviewed and executed regarding the Non-Recourse Advance for which **Timothy Meamber** has been approved.

\*\*\*Please note that page 9 requires an attorney's signature and all outlined items below must be executed and faxed or e-mailed to our office prior to funding\*\*\*

1. Funding Agreement - requires **notarization** and Client's signature on page 7 and Client's initials on all pages (pages 2 - 7);
2. Prior Funding - requires Client to check one of the boxes and provide information on prior fundings if any exist (page 7);
3. Irrevocable Client Directive - requires **notarization**, requires Client's signature and initials (page 8);
4. Attorney Acknowledgment - requires attorney's signature AND Client's initials (page 9);
5. Distribution Form - requires Client's signature and initials (page 10);

## \*\*\* PLEASE BE ADVISED THAT WE MUST RECEIVE PROOF OF IDENTIFICATION (I.E. DRIVER'S LICENSE, PASSPORT, ETC.) PRIOR TO FUNDS BEING DISBURSED TO YOUR CLIENT\*\*\*

### Please e-mail or fax copies of all executed documents and proof of identification to:

VIA E-MAIL: FUNDING@ATLASLEGALFUNDING.COM

VIA FAX: 201-293-4470 ATTENTION: FUNDING DEPARTMENT

## YOU MUST FORWARD ALL ORIGINAL DOCUMENTS TO:

Atlas Legal Funding II, L.P.
Attn: Funding Department
700 Plaza Drive
Secaucus, New Jersey 07094

**ATLAS LEGAL FUNDING II, L.P. SHALL NOT BE BOUND BY THIS AGREEMENT UNTIL IT IS FULLY EXECUTED BY YOUR CLIENT TOGETHER WITH THE ATTORNEY ACKNOWLEDGMENT AND MAY CANCEL THIS TRANSACTION WITHOUT LIABILITY AT ANY TIME PRIOR TO THE ACTUAL ISSUANCE OF A FUNDING CHECK.**

If you have any questions or concerns, please contact our Funding Department at 201-293-4462, ext. 200.

Thank you for your cooperation,

Atlas Legal Funding II, L.P.

(CLIENT INITIALS)

Atlas NFL001147

# ATLAS LEGAL FUNDING II, L.P.
700 Plaza Drive, Secaucus, NJ 07094
(Phone) 201-293-4462    (Fax) 201-293-4470

## FUNDING AGREEMENT

**THIS FUNDING AGREEMENT** is entered into on **October 15, 2014**, between **Atlas Legal Funding II, L.P.** having its principal place of business at 700 Plaza Drive, Secaucus, New Jersey 07094 (hereinafter referred to as "ALF" ~ "~~~~~~ Funding") and **Timothy Meamber** residing at 8~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~ and ~~ ~~ ~~~~~~~~~~~~~~~ as **Durable Power of Attorney for** ~~~~~~~~~~~~~~ hereinafter referred to as "I" or "Client"; together with ALF, the "Parties").

## RECITALS

**WHEREAS** Client represents to ALF that Client is currently engaged in a pending legal claim and/or lawsuit or will be engaged in a legal claim and/or lawsuit.

**WHEREAS** Client has requested that ALF purchase the contingent right (or a portion thereof) to the proceeds of Client's legal claim or lawsuit to meet Client's immediate economic needs and ALF has agreed to purchase such contingent right to proceeds (or a portion thereof) from Client's legal claim or lawsuit for Client's life needs only.

**NOW THEREFORE**, in consideration of the above recitals and the mutual covenants contained herein, and intending to be legally bound hereby, ALF and Client agree as follows:

## SECTION 1
## FULL DISCLOSURE

1.1.   <u>Non-Recourse Funding</u>. Non-Recourse Funding shall mean a transaction in which ALF purchases and Client assigns the contingent right to receive an amount of the potential proceeds (hereinafter as that term is defined in Section 2.4) of a settlement, judgment, award or verdict obtained in the Client's legal claim or lawsuit to ALF.

1.2.   <u>Transaction Terms</u>. I have requested ALF to purchase the contingent right (or a portion thereof) to the proceeds for the sum indicated below, at the instant such proceeds come into being.

| | |
|---|---|
| Principal Amount Advanced to Client: | $20,000.00 |
| Application Fee: | $1,000.00 |
| **Total Amount Funded:** | $21,000.00 ("**Purchase Price**") |

1.3.   <u>Lawsuit Terms</u>. I have a claim for which I have filed or have started the process of filing a complaint that may entitle me to proceeds resulting from a settlement, judgment, award or verdict. The matter is, or will be, captioned **Meamber v. National Football League & NFL Properties, LLC, et al.**, stemming from an incident occurring on or about **N/A** and is, or will be, filed in the **USDC-Eastern District of PA**, State of **Pennsylvania**, with claim or docket # **2:12-md-02323-AB; MDL No. 2323** or any other related actions which shall include, without limitation, any lawsuits or claims in which I am asserting my legal rights, whether it is against the defendant(s) named in the lawsuit, or others, and shall include any claims based upon my original claim or lawsuit (hereinafter collectively referred to as the "Lawsuit").

## SECTION 2
## FUNDING AND REPAYMENT TERMS

2.1   <u>Consideration</u>. In consideration for the receipt of the sum of **TWENTY THOUSAND AND 00/100 DOLLARS ($20,000.00)** from ALF, I am selling and assigning to ALF all my right title and interest in, to and under an interest equal to the Purchase Price (as defined in Section 1.2 above), together with the accrued use fee (as that term is defined in Section 2.2), compounded monthly, and other fees or costs, from the proceeds of my Lawsuit to ALF. **IF I DO NOT RECOVER ANY PROCEEDS FROM MY LAWSUIT, I WILL NOT BE OBLIGATED UNDER THIS AGREEMENT TO REPAY ATLAS LEGAL FUNDING THE AMOUNTS ADVANCED INCLUDING THE ACCRUED USE FEE, COMPOUNDED MONTHLY AND OTHER FEES OR COSTS EXCEPT AS SET FORTH IN SECTION 6 BELOW.**

2.2   <u>Use Fee</u>. The use fee shall be a charge in an amount equal to **2.75%** compounded monthly on the Purchase Price which is **$21,000.00**. I will pay this use fee on the outstanding amount until I satisfy my obligation(s) under this agreement.

**(CLIENT INITIALS)**

Atlas NFL001148

**ATLAS LEGAL FUNDING II, L.P.**
700 Plaza Drive, Secaucus, NJ 07094
(Phone) 201-293-4462    (Fax) 201-293-4470

2.3   Repayment Schedule. ALF has calculated the total dollar amount to be repaid by you, for thirty-six months, including all fees with monthly compounding.

| Date of Payment | Amount Due |
| --- | --- |
| On or before 4/15/2015 | $24,712.14 |
| After 4/15/2015 and on or before 10/15/2015 | $29,080.46 |
| After 10/15/2015 and on or before 4/15/2016 | $34,220.96 |
| After 4/15/2016 and on or before 10/15/2016 | $40,270.15 |
| After 10/15/2016 and on or before 4/15/2017 | $47,388.64 |
| After 4/15/2017 and on or before 10/15/2017 | $55,765.45** |

** Please contact ALF after this date for the current amount due..

2.4   Proceeds. The term "proceeds" shall include any money paid as a consequence of the Lawsuit. If the proceeds received are insufficient to pay the full amount due to ALF, then ALF's recovery will be limited to the proceeds of the lawsuit settlement, judgment or otherwise.

2.5   Distribution. I hereby direct the Principal Amount Advanced to me to be distributed as follows:

   **$20,000.00**     payable to Tamara J. Milligan-Darst as Durable Power of Attorney for Timothy Meamber

In addition to all amounts disbursed to Client or on Client's behalf, the Purchase Price includes an Application Fee of $1,000.00. I understand that the Application Fee is part of my obligation to ALF despite not being distributed to me.

2.6   Waiver. I hereby waive any defense to payment of the sums due hereunder and represent and warrant that I will not seek to avoid payment of any money due to ALF under this Agreement.

2.7   Understandings. I understand that the payment instructions set forth herein and in the Irrevocable Client Directive, incorporated by reference, are irrevocable, not subject to modification except by ALF or any successor in interest and only by written notice. In the event of a conflict between the terms of this Agreement and the Irrevocable Client Directive, this Agreement shall govern.

2.8   Compliance. I agree, if requested by Atlas Legal Funding, to fully cooperate and adjust for clerical errors on any or all Funding Documents if deemed necessary or desirable in the reasonable discretion of Atlas Legal Funding to enable Atlas Legal Funding to sell, convey, seek guaranty or market said advance to any entity. Additionally, I agree that if a Funding Document is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Non-Recourse cash advances or Litigation Funding, or otherwise contains any errors or omissions, the undersigned shall upon request, within five (5) business days from the date of mailing said requests by Atlas Legal Funding, execute, acknowledge, initial, and deliver to Atlas Legal Funding any documentation Atlas Legal Funding deems necessary to replace or correct the lost, misplaced, misstated, inaccurate or otherwise missing Funding Document. If the undersigned fails or refuses to execute, acknowledge, initial, and/or deliver a Funding Document to Atlas Legal Funding within time frame specified herein after being requested to do so by Atlas Legal Funding, the undersigned agrees to indemnify Atlas Legal Funding for any and all loss or damage which Atlas Legal Funding sustains by reason of the undersigned's failure or refusal to cooperate, including but not limited to attorney's fees and costs incurred by Atlas Legal Funding. The undersigned also understands and acknowledges that Atlas Legal Funding may in its discretion pursue equitable relief against the undersigned for the undersigned's failure to cooperate or comply with the terms of this agreement, and Atlas Legal Funding may recover from the undersigned its costs, including reasonable attorney's fees, incurred in doing so.

(CLIENT INITIALS)

Atlas NFL001149

## ATLAS LEGAL FUNDING II, L.P.
700 Plaza Drive, Secaucus, NJ 07094
(Phone) 201-293-4462     (Fax) 201-293-4470

### SECTION 3
### SECURITY INTEREST

3.1    Security Interest.  I hereby grant ALF a Lien and Security Interest in the proceeds of the Lawsuit.  The amount due shall be withheld from any proceeds obtained as a result of the Lawsuit and after my attorney fees (including the expenses charged by my attorney for costs) and payment of only those liens that have priority by law, paid immediately upon collection to ALF.  I will not receive any money from the proceeds of the Lawsuit until ALF has been paid in full.  This shall also apply to any structured settlement of my Lawsuit.  I acknowledge that my receipt or use of any proceeds prior to the full re-payment to ALF shall constitute an illegal conversion and may well be a crime.

3.2    Independent Obligation.  In the event that the sale and assignment of my interest in the proceeds of the Lawsuit are not permitted by law, then I agree to pay ALF all of the funds due under this Agreement immediately upon the payment of the Lawsuit proceeds as a separate and independent obligation.

3.3    Knowledge.  I hereby agree that I will not knowingly create additional liens against the proceeds without satisfaction of my lien with ALF or the prior written consent of ALF.  I specifically promise not to create any liens against the proceeds of the case as a result of any fundings or advances that I might receive after the date of this agreement similar in nature to ALF.

3.4    Understandings.  I understand that I am not assigning my cause of action to ALF, but rather the contingent right to an amount of the potential proceeds of my Lawsuit

3.5    Attorney's Fees.  If any action or other proceeding is brought for enforcement of this Agreement or because of an alleged dispute, breach, default, or misrepresentation in connection with this Agreement, the prevailing Party shall be entitled to attorney's fees and other costs incurred in that action or proceeding, whether or not a lawsuit is filed, in addition to any other relief to which it or they may be entitled.

3.6    **CLIENT'S RIGHT TO MAKE DECISIONS.  ALF SHALL HAVE NO RIGHT TO AND WILL NOT MAKE ANY DECISIONS WITH RESPECT TO THE CONDUCT OF THE UNDERLYING CIVIL ACTION OR CLAIM OR ANY SETTLEMENT OR RESOLUTION THEREOF AND THAT THE RIGHT TO MAKE THOSE DECISIONS REMAINS SOLELY WITH CLIENT AND CLIENT'S ATTORNEY IN THE CIVIL ACTION OR CLAIM.**

### SECTION 4
### RIGHT OF CANCELLATION

4.1    **CLIENT'S RIGHT TO CANCELLATION.  CLIENT MAY CANCEL THIS CONTRACT WITHOUT PENALTY OR FURTHER OBLIGATION WITHIN FIVE (5) BUSINESS DAYS OF RECEIPT OF FUNDING FROM ALF.**

4.2    Cancellation.  In order for the cancellation to be effective, I understand that I must notify ALF in writing and return the exact amount advanced to me by ALF.  I may do this by making personal delivery or via mail by insured, registered or certified US mail postmarked within **FIVE (5) BUSINESS DAYS** of receipt of funds from ALF to ALF's principal place of business listed above: (A) the undeposited (or un-cashed) check provided to me by ALF; (B) a Certified or Bank check in the exact amount advanced to me by ALF; or (C) a Money Order in the exact amount advanced to me by ALF.

### SECTION 5
### CREDIT AND INFORMATION RELEASE

5.1    ALF may obtain a consumer credit report and/or other financial and credit information as part of the proposed transaction.

5.2    I hereby authorize any credit reporting agency, information service bureau, institution, attorney, or insurance company contacted by ALF or its agents, to furnish a credit report, other financial, credit or legal information, information concerning liens and judgments against me and other information requested as part of the proposed transaction until I have completely satisfied my obligations under the agreement.

5.3    I understand that this authorization is valid for purposes of verifying information given pursuant to business negotiations, or any other lawful purpose covered under the Fair Credit Reporting Act (FCRA).  Upon written request, ALF will provide credit reports they obtained, if any, and, if so, the name and address of the credit reporting agency that provided it.  I certify

(CLIENT INITIALS)

Atlas NFL001150

**ATLAS LEGAL FUNDING II, L.P.**
700 Plaza Drive, Secaucus, NJ 07094
(Phone) 201-293-4462   (Fax) 201-293-4470

the information provided to Atlas Legal Funding in the application and underwriting process is true, accurate and complete. I also authorize Atlas Legal Funding to report this transaction and matters related to it to any of the above entities.

5.4   Additionally, I direct and authorize my attorney and any subsequent attorney(s) to cooperate and release to Atlas Legal Funding, or its affiliates and any and all information and documents pertaining to my current legal claim or lawsuit, including pleadings, discovery, investigation, contracts, medical records/reports, depositions, and all other information in the file not protected by the attorney-client privilege, the work product doctrine, or other applicable evidentiary privileges or protections.

## SECTION 6
## ACCURACY OF INFORMATION

6.1   <u>Representations and Warranties of Client</u>.  If I made a material misstatement, misrepresentation or omission of material fact in my application or in connection with my Lawsuit, or committed a fraudulent or criminal act either in connection with the transaction, or in a matter that would adversely and significantly impact my Lawsuit (unless disclosed to ALF prior to funding) then I will be liable to ALF for all sums advanced, together with outstanding fees and charges without regard to the outcome of my Lawsuit.

6.2   <u>Additional Representations and Warranties of Client</u>.  I represent and warrant as follows:

6.2.1   I have full power and authority to enter into this Agreement and do not require the consent of any third party, except as shall be required by law, rule or regulation. I have not entered into this Agreement for the purpose of evading creditors. I am of sound mind and not acting under duress.

6.2.2   I am not indebted to any present or former spouse for support, maintenance or similar obligations, nor am I indebted to any child, or the guardian of any child, for any child support or similar payments and the proceeds of the Lawsuit are not subject to any lien by any governmental agency to which payment for such benefits would be owed.

6.2.3   I have paid all Federal, state and local taxes due through and including the date hereof or have made adequate provisions for such payments.

6.2.4   **Other than those listed in Section 8.10,** there are no pending bankruptcies, outstanding or unsatisfied judgments, or other judgments, levies, claims or liens (including, but not limited to, such liens for Medicare, Medicaid, Welfare, State Aid, State health, etc.) and that there are no pending criminal allegation(s) or charge(s) against me **except as disclosed below.**

**Other Liens** _____   **Pending Criminal Allegations** _____

6.2.5   The Statements in this Agreement and any and all other documents executed and delivered in connection herewith are true, accurate and complete as of the date hereof and I have made no material omissions or misrepresentations in this Agreement or the documents executed and delivered in connection herewith and that neither this agreement nor the documents executed and delivered in connection herewith and made a part hereof contain any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements herein and therein incomplete or materially misleading.

6.2.6   I have not relied on representations or statements made by ALF, its agents or attorneys, and I have sought and received independent tax, financial and legal advice with this transaction.

6.2.7   I intend this transaction to be and agree that this transaction is a purchase and sale.

## SECTION 7
## NOTIFICATIONS

7.1   <u>Change of Address/Contact Numbers</u>. I will receive any notices required at the address I have first listed above. My contact number is _____ [d my alternative contact number is _____. My E-mail address is _____ If I move or my contact information changes, I will notify ALF and provide my new contact information in writing within **forty-eight (48) hours of the change.**

5 of 10

_____ (CLIENT INITIALS)

**ATLAS LEGAL FUNDING II, L.P.**
700 Plaza Drive, Secaucus, NJ 07094
(Phone) 201-293-4462   (Fax) 201-293-4470

7.2   Cooperation. I have instructed my attorney to cooperate with ALF and to give ALF periodic updates of the status of my case as ALF may request. If I change attorneys I will notify ALF within **forty-eight (48) hours** of the change and provide ALF with the name, address, and phone number of my new attorney.

7.3   Notices. Any notices required under this Agreement or given in connection with this Agreement, shall be in writing (except as set forth in Section 4 above which notification shall be made in the manner required therein) and shall be given to the appropriate party by personal delivery or by certified mail, postage prepaid, or by recognized overnight delivery service to the addresses listed on the first page of this Agreement.

## SECTION 8
## MISCELLANEOUS

8.1   Governing Law & Venue. I agree that any disputes that may arise out of this Agreement shall be construed and interpreted under the laws of the State of New Jersey. Venue for any dispute arising from the Agreement shall lie in Newark, New Jersey, and the Parties agree that any Federal lawsuits arising from this Agreement shall be filed and maintained in the United States District Court for the District of New Jersey in Newark, New Jersey. **The Parties understand that the "choice of law", forum, and venue clauses contained herein are critical in nature and are essential to the Agreement.**

8.2   Intentionally Left Blank

8.3   Dispute Resolution.

8.3.1   All disputes which may arise between the parties hereto out of, in relation to or in connection with this Agreement shall be settled by arbitration in accordance with the New Jersey Arbitration Act. The decision of such arbitration shall be binding on both Parties and a judgment on an award rendered shall be entered pursuant to this Section.

8.3.2   Exclusive jurisdiction over entry of judgment on any arbitration award rendered pursuant to this Section or over any dispute, action or suit arising therefrom shall be in any court of appropriate subject matter jurisdiction located in New Jersey, and the Parties by this Agreement expressly subject themselves to the personal jurisdiction of said court for the entry of any such judgment and for the resolution of any dispute, action, or suit arising in connection with the entry of such judgment.

8.3.3   If it is determined by the arbitrators that one Party was in default hereof or instituted (or defended) such arbitration proceeding not in good faith or without a reasonable basis in law or fact (the "Defaulting Party"), the Defaulting Party shall bear the costs of the arbitration proceeding and pay to the other Party the reasonable attorney's fees and costs incurred, which amounts shall be separately determined by the arbitrators in such proceeding and become part of the amount of the arbitration award, payable by the Defaulting Party to the other Party.

8.4   Entire Agreement. This Agreement constitutes the entire agreement between the Parties and there are no representations, warranties, covenants, or obligations except as set forth herein. This Agreement may only be modified in writing. This Agreement supersedes all prior and contemporaneous agreements, understandings, negotiations, or discussions, written or oral, of the Parties, relating to or arising from any transaction contemplated by the Agreement. This Agreement shall be binding on, and inure to the benefit of, the Parties hereto and their successors and assigns.

8.5   Disbursement. In the event of a dispute as to the amount owed to ALF when the Lawsuit is resolved, it is expressly understood that my attorney shall not disburse any funds to me, or on my behalf, except for attorney's fees and/or disbursements incurred by my attorney in connection with the Lawsuit. I hereby make the foregoing irrevocable direction to my attorney, or his successors.

8.6   Enforceability. If any provision of this Agreement shall be deemed invalid or unenforceable, it shall not affect the validity or enforceability of any other provision hereof.

8.7   Assignment. ALF, its assigns and/or successors, may sell, transfer, convey or assign its security interest created hereunder, one or more times, in whole or in part. Upon sale, transfer, conveyance or assignment, ALF, its assigns and/or successors may provide notification of such sale, transfer, conveyance or assignment. Failure to provide any prior notice of sale, transfer, conveyance or assignment, shall not be construed as a waiver of any rights hereunder.

6 of 10

**(CLIENT INITIALS)**

## ATLAS LEGAL FUNDING II, L.P.
700 Plaza Drive, Secaucus, NJ 07094
(Phone) 201-293-4462    (Fax) 201-293-4470

8.8    Champerty. Certain jurisdictions prohibit "Champerty". Champerty makes it illegal to acquire someone else's right to sue. I understand and acknowledge that ALF is NOT acquiring my right to sue, that I have started or intend to file a lawsuit that a lawsuit or potential lawsuit absolutely belongs to me and no one else and that ALF will NOT be involved in decisions made by me and my attorney regarding a lawsuit or potential lawsuit. This is an investment and not a loan, but should a court of competent jurisdiction construe it to be the latter, I agree that interest shall accrue at the maximum rate permitted by the state.

8.9    Counterparts. This Agreement may be executed in separate counterparts. A signature transmitted by Facsimile shall be effective with the same force and effect as an original signature.

8.10    Prior Fundings Disclosure. Any and all prior receipt of funds of a similar nature are disclosed below, you **must** check the appropriate box:

➡    ☒ I have **NOT** received any funds of a similar nature to that of Atlas Legal Funding prior to receiving funds from Atlas Legal Funding.

**OR**

➡    ☐ I have received funds of a similar nature to that of Atlas Legal Funding prior to receiving funds from Atlas Legal Funding as listed below.

Company(s): _____ Date of Funding(s): _____ Amount(s): _____

I hereby accept the terms and conditions of this Agreement, and grant ALF a Security Interest and Lien as per the terms hereof, and assign the proceeds of my lawsuit to the extent specified in this Agreement as of the date first above written.

I AM AWARE THAT I MAY NOT ACCEPT ANY FUNDS OR ADVANCES AGAINST MY LAWSUIT FROM ANY OTHER FUNDING COMPANY UNLESS I FIRST REPAY ALF IN FULL, AND SATISFY THE LIEN AND SECURITY INTEREST UNLESS PERMISSION TO DO SO IS GRANTED IN WRITING BY ALF.

I UNDERSTAND THAT NO FUNDS FROM MY PORTION OF THE SETTLEMENT, COLLECTION, JUDGMENT, COMPROMISE OR ANY OTHER COLLECTION RESULTING FROM THIS CASE WILL BE DISBURSED TO ME WITHOUT FIRST SATISFYING ATLAS LEGAL FUNDING'S LIEN.

DO NOT SIGN THIS AGREEMENT BEFORE YOU HAVE READ IT COMPLETELY OR IF IT CONTAINS ANY BLANK SPACES. YOU ARE ENTITLED TO A COMPLETELY EXECUTED COPY OF THIS CONTRACT. BEFORE YOU SIGN THIS CONTRACT YOU SHOULD OBTAIN THE ADVICE OF AN ATTORNEY.

Client Signature _____ Client Name: Timothy Meamber    Date of Birth _____    Social Security Number _____

Client Signature _____ Client Name: Tamara J. Milligan-Darst as Durable Power of Attorney for Timothy Meamber

State of Washington County of _____
s.s.
TAMARA MILLIGAN-DARST

On this 15th day of October, 2014 before me personally came TIMOTHY MEAMBER , (each) known to me, and known to me by the individual(s) described in and who executed the within document and duly acknowledged to me that he/she executed the same.

Notary Public
State of Washington
JUNE ANN BONGIRNO
MY COMMISSION EXPIRES
September 23, 2015

Notary Public _____

7 of 10

_____ (CLIENT INITIALS)

Atlas NFL001153

## ATLAS LEGAL FUNDING II, L.P.

700 Plaza Drive, Secaucus, NJ 07094
(Phone) 201-293-4462    (Fax) 201-293-4470

### IRREVOCABLE CLIENT DIRECTIVE

Date:           10/15/2014
Name:        Hausfeld, LLP
Attn:           Richard Lewis, Esq.
Address:     1700 K Street, NW, Suite 650
City, State, Zip:   Washington, DC, 20006

RE:   Irrevocable Client Directive:   Timothy Meamber
       Matter Name:                Meamber v. National Football League & NFL Properties, LLC, et al.
       Docket/Index No.:           2:12-md-02323-AB; MDL No. 2323

Dear Mr. Lewis, Esq.:

This letter along with copies of the executed Funding Agreement, confirm that **Timothy Meamber** (hereinafter referred to as "I" or "Client") am irrevocably granting a lien and security interest in the proceeds from any settlement of my pending case (as described therein) to "Atlas Legal Funding II, L.P." (hereinafter referred to as "ALF" or "Atlas Legal Funding"). **By executing this letter I hereby instruct you as my attorney to act in accordance with the terms and conditions contained in this Irrevocable Client Directive:**

1.   In order to satisfy my obligations to ALF, I instruct you upon receipt of the settlement check and/or settlement proceeds, to deposit same (whether payable to me individually, or to me jointly with your law firm) into your escrow/attorney trust account immediately.

2.   Before disbursing any settlement or judgment proceeds from my claim, please have your office contact ALF at 1-201-293-4462 to confirm the amount due under the terms of my Funding Agreement. **PLEASE BE ADVISED THAT YOU MAY NOT DISBURSE ANY FUNDS FROM MY PORTION OF THE SETTLEMENT, COLLECTION, JUDGMENT, COMPROMISE OR ANY OTHER COLLECTION RESULTING FROM THIS CASE WITHOUT FIRST SATISFYING ATLAS LEGAL FUNDING'S LIEN.**

3.   Upon disbursing any settlement or judgment proceeds from my claim, before any proceeds are distributed to me, please deduct and forward all amounts payable to ALF via mail to: **Atlas Legal Funding II, L.P., 700 Plaza Drive, Secaucus, NJ 07094.**

4.   Upon request, disclose to ALF the gross settlement amount from my claim (for ALF internal purposes only).

5.   Promptly notify ALF if there are any other assignments or liens (of any kind whatsoever) on this claim now or in the future including without limitation federal, state or local tax liens, liens for child support, bankruptcy, outstanding or unsatisfied judgments, or other judgments, levies, claims or liens (including but not limited to such things as Medicare, Medicaid, Welfare, State Aid, State health, etc.)

6.   If in the future, you are no longer representing me in this claim, promptly notify ATLAS LEGAL FUNDING within **forty-eight (48) hours.**

7.   Cooperate with ATLAS LEGAL FUNDING by providing, upon request, any information regarding my claim (including periodic updates) and the defendant(s) to ATLAS LEGAL FUNDING that does not violate the attorney/client privilege.

Very truly yours,

_____          _____
Client Signature                         Timothy Meamber
                                         Client Name

_____          _____
Client Signature                         Tamara J. Milligan-Darst as Durable Power of Attorney for Timothy Meamber
                                         Client Name

State of _____ County of _____          s.s.

On the 15 day of Oct 20 14, before me personally came _____
(each) known to me, and known to me to be the individual(s) described in and who executed the within document and duly acknowledged to me that he/she executed the same.

> **Notary Public**
> **State of Washington**
> JUNE ANN BONGIRNO
> MY COMMISSION EXPIRES
> September 23, 2015

_____
Notary Public

8 of 10

_____ (CLIENT INITIALS)

# ATLAS LEGAL FUNDING II, L.P.
700 Plaza Drive, Secaucus, NJ 07094
(Phone) 201-293-4462     (Fax) 201-293-4470

## ATTORNEY ACKNOWLEDGMENT

As an attorney for **Timothy Meamber**, with **Hausfeld, LLP** ("the Firm"), I acknowledge receipt of the Irrevocable Client Directive, individually and as an authorized representative of the Firm. I understand that this Irrevocable Client Directive is a material part of the Funding Agreement dated **10/15/2014** entered into between Atlas Legal Funding II, L.P. (hereinafter referred to as "ALF" or "Atlas Legal Funding") having its principal place of business at 700 Plaza Drive, Secaucus, New Jersey 07094 and **Timothy Meamber** residing at _____ (hereinafter referred to as "Client"; together with ALF, the "Parties") and I will comply with the conditions contained therein. To give further assurances to Atlas Legal Funding, I make the following representations on behalf of the Firm and myself:

1. I acknowledge that I have reviewed the Funding Agreement and all costs and fees.
2. I acknowledge that the Firm is being paid with respect to this matter on a contingency fee basis per a written fee agreement.
3. I acknowledge that all proceeds from this matter will be disbursed via the Firm's trust account or a settlement fund established to receive the proceeds from this matter from the defendant on behalf of the Client.
4. I acknowledge that my Client **Timothy Meamber** granted Atlas Legal Funding a lien and security interest against the proceeds of his/her/their case as a consequence of executing the Funding Agreement with Atlas Legal Funding.
5. I acknowledge that pursuant to the Funding Agreement, my Client has sold and assigned a portion of their proceeds to Atlas Legal Funding.
6. I acknowledge that I will follow all the terms and conditions contained in the Irrevocable Client Directive and will honor the terms of your Funding Agreement.
7. I am not aware of any other lien(s) attached to this case that are the result of a funding similar in nature to that of Atlas Legal Funding.
8. I acknowledge that the Funding Agreement prohibits my Client from creating or obtaining any other liens resulting from a funding similar in nature to that of Atlas Legal Funding unless Atlas Legal Funding's lien is satisfied in full.
9. I have not provided a letter of protection to a third party except as follows:
   a. _____
   b. _____
   c. _____
10. **Prior to making any distribution to my Client from the settlement check, and/or settlement proceeds, I will contact Atlas Legal Funding to ascertain the total amount due to Atlas Legal Funding and will not remit any funds or a portion thereof to my Client or on my Client's behalf, other than attorney's fees and costs, until Atlas Legal Funding's lien is satisfied in full.**
11. I understand that making a check or accompanying letter to the effect of a release of claim or "in full satisfaction", absent a written confirmation that ALF will accept a lesser sum, will not have a legal effect and that you are authorized to deposit said check without prejudice to your rights to collect payment in full.
12. **Timothy Meamber's** case is still pending, in active status, and is part of In Re: National Football League Players Concussion Injury Litigation Class Action.
13. I represent that this case is being vigorously defended as to both liability and damages and make no guarantee that my client will be successful or will recover sufficiently to satisfy ALF's lien in whole or in part.
14. If in the future, I am no longer representing Client in this claim, I shall promptly notify ATLAS LEGAL FUNDING within **forty-eight (48) hours.**

I acknowledge I am the attorney of record in the case captioned **Meamber v. National Football League & NFL Properties, LLC, et al.**, with claim or docket number: **2:12-md-02323-AB; MDL No. 2323.** ~~I further certify that I have received a copy of and reviewed~~ ~~the Funding Agreement prepared in connection with the case and explained the material terms to my client.~~ *RSL 10/16/14* /OK

**ATTORNEY SIGNATURE:** _Richard S Lewis_          **DATE:** _10/16/14_

**PRINT ATTORNEY NAME:**  Richard S. Lewis

(CLIENT INITIALS)

Atlas NFL001155

## ATLAS LEGAL FUNDING II, L.P.
700 Plaza Drive, Secaucus, NJ 07094
(Phone) 201-293-4462    (Fax) 201-293-4470

### DISTRIBUTION FORM & SURVEY

Client Name(s):      **Timothy Meamber**
Matter Caption:     **Meamber v. National Football League & NFL Properties, LLC, et al.**
Docket Number(s):   **2:12-md-02323-AB; MDL No. 2323**

Indicate below the delivery method of funds by **checking the appropriate box** and filling in the information requested:

[ ]  **CHECK**: (please check one box)
I would like my funds delivered:

OR

[ ]  **Express Delivery Service**: Requires a signature and a physical address, NOT a P.O. Box. The undersigned agrees to pay a **delivery fee of $45.00**, which will be deducted from the Client's advance proceeds. **No Weekend Delivery.**

[ ]  **U.S. Postal Mail** (FREE);

DELIVER CHECK TO ADDRESS: (complete information below)

Street Address _____  City _____  State _____  Zip Code _____

PHONE NUMBER: _____    ATTENTION: _____

[ ]  **WIRE:**
I would like my proceeds wired to my Account or Attorney's Trust Account. In selecting this option, the undersigned agrees to the **wiring fees of $45.00**, which will be deducted from the Client's advance proceeds. Requests for wires must be completed by 2:00 pm EST to be executed the same day. (Atlas Legal Funding II, L.P. is not responsible for the length of time your financial institution takes to process the wire)
Please provide the following information **AND A COPY OF A VOIDED CHECK**:

BANK NAME: _____
BANK CITY & STATE: ___ M ___
BANK ABA OR ROUTING # (9 DIGITS): _____
NAME(S) ON ACCOUNT: ___ TAMIAM ___
ADDRESS ON ACCOUNT: _____
ACCOUNT NUMBER: _____
ACCOUNT TYPE: ___ Clock ___
SPECIAL INSTRUCTIONS: _____

**Survey.** Please take a moment to write a short statement telling us how we have helped you in your time of need.

_Jeremy was great and we appreciate it._

By signing below, I agree to the terms of the Distribution Form and understand that I am responsible for the information that I have provided on this form and that Atlas Legal Funding is not responsible for any problems in delivery or transfer of funds, so long as it follows my instructions.

Client Signature _____   Date __10/15/2014__

Client Signature _____

**Timothy Meamber**
**Client Name**

Tamara J. Milligan-Darst as Durable Power of Attorney for Timothy Meamber
**Client Name**

10 of 10

_____ (CLIENT INITIALS)

## SPECIAL POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that I, **TIMOTHY MEAMBER**, have made, constituted, and appointed, and by these presents do make, constitute and appoint **TAMARA J. MILLIGAN-DARST** as my true and lawful attorney for me and in my name, place, and stead to communicate on all matters involving my pending NFL Settlement regarding any and all pre-settlement, pending settlement funds award and/or settlement and post-settlement advances and acquiring an pre-settlement loan or advance of funds and any other aspect that Atlas Legal Funding may have with regard to securing funds as soon as possible against the final settlement I will receive from the NFL.  This special power of attorney is specific to Atlas Legal Funding, 700 Plaza Drive, Seacaucus, NJ, NJ 07094

Such attorney shall have full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in order to accomplish the aforementioned acts as full and to all intents and purposes as I might or could do if personally present, hereby ratifying and confirming all that such attorney shall do or cause to be done by virtue of this instrument.

This document will expire 60 days from the date of signature.

DATED: 10/7/2014

_____
TIMOTHY MEAMBER

On this day personally appeared before me, **TAMARA J. MILLIGAN**, to me known to be the individual described herein and who executed the within and foregoing instrument and acknowledged that she signed the same as her free and voluntary act and deed, for the uses and purposes therein mentioned.

DATED: Oct 7, 2014

_____
Notary Public for the State of Washington

> **Notary Public**
> **State of Washington**
> JUNE ANN BONGIRNO
> MY COMMISSION EXPIRES
> September 23, 2015

# EXHIBIT 9

FOR SECURITY PURPOSES, THE FACE OF THIS DOCUMENT CONTAINS A COLORED BACKGROUND AND MICROPRINTING IN THE BORDER

**Law**Cash
DISBURSEMENT ACCT
26 COURT STREET, SUITE 1104
BROOKLYN, NY 11242
1-800-LAW-CASH

154135

SIGNATURE BANK
26 COURT STREET
BROOKLYN, NY 11242
I-1357/260

1/16/2015

154135

Meamber, Timothy

Twenty-Four Thousand Seven Hundred Twelve and 14/100------------------------------------------------ US Dollar

DATE

$*****24,712.14
AMOUNT

PAY
TO THE
ORDER
OF    Atlas Funding

SECURITY FEATURES INCLUDED. DETAILS ON BACK

AUTHORIZED SIGNATURE

---

LAWCASH / DISBURSEMENT ACCT

Vendor134605D1

154135

Check Date   1/16/2015      Check Number    154135

| Ref Nbr | Invc Nbr | Invc Date | Invoice Amount | Amount Paid | Disc Taken | Net Check Amt |
|---------|----------|-----------|----------------|-------------|------------|---------------|
|         |          | 1/16/2015 | 24,712.14      | 24,712.14   | 0.00       | 24,712.14     |

# EXHIBIT 10



September 4, 2012

My Fellow Shareholders,

First, I would like to congratulate two of our distinguished Board Members, Russ Herman and Christopher Seeger, for receiving the tremendous honor of being named in ***The Legal 500 United States 2012*** in the category of "*Litigation – Mass tort and class action: plaintiff representation – pharmaceuticals and medical devices*". Mr. Herman's firm, Herman, Herman, Katz & Cotlar, LLP was quoted as "providing service of the highest caliber, and has built a sterling reputation in the mass tort and class action space" with special mention of Mr. Herman's expertise and influence in significant multi-district litigation (MDL) in not only pharmaceuticals, but also toxic tort. Mr. Seeger's firm, Seeger Weiss LLP was noted for its "longstanding reputation in complex litigation, mass tort and class action with particular expertise in pharmaceutical cases" with special mention of Mr. Seeger's involvement on the plaintiff's executive committee in the hip replacement litigation against Johnson & Johnson. We are honored to have such talented leaders among our Board of Directors.

The strong support and leadership of our dynamic board and our suite of innovative products continue to distinguish our brand and our value in the financial services industry. Throughout 2012, we will continue to demonstrate our unique business plan through our innovative products, including our disbursement funding line-of-credit, settled case lending to attorneys and plaintiffs, qualified settlement lending, common benefit fund lending, qualified settlement fund deposits, infant compromise CD, medical set-aside accounts and our settlement debit card. These financial solutions focused on the plaintiff bar and our unique competitive position define who we are and highlight our path to growth.

Finally, the Board of Directors is pleased to announce that we have begun a selection process to choose an investment banking firm to best position us for the future.

Our Company's future looks bright and we look forward to continued growth and success. We thank you for your invaluable insight and ongoing support.


Sincerely,

Andrew C. Sagliocca
President & Chief Executive Officer

# EXHIBIT 11



- For Plaintiffs
- For Attorneys
- About Us
- Contact Us
- **APPLY NOW**

## Litigation Funding Experts

LawCash® has provided thousands of plaintiffs throughout the country with pre-settlement funding, plaintiff funding advances in lawsuits, surgical financing, and settled case funding. Years ago, LawCash® executive management identified the need for cheaper, better, and more ethical litigation funding in the United States.

### Meet our Executive Management...

A group of legal funding experts dedicated to helping plaintiffs and attorneys obtain the settlements and awards they deserve.

## Quick Links

- The LawCash® Team
- Full Application
- Check Application Status
- Attorney Testimonials
- Attorney FAQs
- Plaintiff FAQs



**CONTACT US**



## Dennis Shields

Since the inception of LawCash® in 2000, Dennis Shields has served as its Chief Executive Officer. He is also the Chairman of Keeps® America. From 1996 to 2004, he served as a lay member of the Grievance Committee to the Second and Eleventh Judicial Departments appointed by presiding judges from 1996 to 2004. In addition, he served on the NY State Health Information and Quality Improvement Committee.

Dennis Shields is an accomplished writer having written two published novels. He is currently working on multiple other literary projects. An expert in litigation funding, Mr. Shields is a founding organizer and the Executive Chairman of the Board of Esquire® Bank. Esquire® Bank is a full-service, federally-chartered (FDIC) bank which provides cutting-edge banking services to trial attorneys, including case cost finance, structured settlement loans, and case-cost lines of credit.



## Harvey R. Hirschfeld

Harvey R. Hirschfeld has been the President and Director of LawCash® since its inception. With over 35 years of experience in consumer and commercial lending, and financial administration, he is an expert in lawsuit funding. Harvey Hirschfeld is also the Chairman of American Legal Finance Association (ALFA) and helped found ALFA. Through its "Best Practices" and legislative efforts, ALFA reaches out to states and municipalities to promote its ideals of ethical pre-settlement funding and high-quality lawsuit funding.

Harvey Hirschfeld is also Special Advisor to the Board of Esquire Bank and a director of Oritani Bank, (Nasdq – ORIT), in Washington Township, New Jersey.

## Jason Younger

Jason Younger has served as the Executive Vice President of LawCash® since its inception. He holds an MBA and previously worked as the Vice President for cash management of HealthShield Capital Corporation.

Prior to his tenure at HealthShield, Jason Younger was an Assistant Treasurer and Portfolio Analyst for BNY Financial, a subsidiary of the Bank of New York.

## David Daniel

David Daniel is the Controller of LawCash®. He holds an MBA in finance and accounting. A CPA with over thirty years of experience in the financial services industry, David Daniel has worked as the CFO of First Atlantic Federal Credit Union, Director of Securities Operations for Metropolitan Life Insurance Company, Vice President and Controller of SBLI USA Mutual Life Insurance Company, and as Engagement Manager, Audit and Consulting Services, for Accume Partners, a nationwide auditing and consulting company. In addition, David Daniel is an Adjunct Assistant Professor of Finance at New York University.

If you have filed a personal injury lawsuit or other type of lawsuit, or plan to file a claim and are represented by an attorney, LawCash® may be able to offer you pre-settlement funding

Video Player

| 00:00 |
| 00:39 |

## Contact Us!

Contact LawCash® today for more information, or fill out our application online. For attorney funding, please email attorneyfunding@lawcash.com or call 800-LAW-CASH and ask for extension 457.

# EXHIBIT 12



## Board of Directors

**Tony Coelho, Director**



Mr. Coelho has served as Chair of the Advisory Board for Bender Consulting Services since 2002 and was Chair and a Board Member for the American Association of People with Disabilities and the Lead Independent Director of Service Corporation International. Mr. Coelho was a prominent member of the U.S. House of Representatives from 1978 – 1989. While a member of the House of Representatives, he authored the Americans with Disabilities Act, widely recognized as one of the most important pieces of civil rights legislation in the last 40 years. Mr. Coelho's former and current business affiliations include service on a number of corporate boards and as CEO of Wertheim Schroder Investment Services. Mr. Coelho has been a member of the Esquire Bank board of directors since 2010. Mr. Coelho provides the Board with valuable perspective on general business oversight, as well as potential strategic initiatives.

**Todd Deutsch, Director**

Mr. Deutsch is a private investor and entrepreneur. Since 2012, Mr. Deutsch has managed his family office. From 2009 to 2012, Mr. Deutsch was the Portfolio Manager/Principal at Bascom Hill Partners, a wealth management services company. Prior to running his family office and Bascom Hill Partners, Mr. Deutsch spent twenty years as a trader with Goldman Sachs and various hedge funds. Mr. Deutsch has been a member of the Esquire Bank board of directors since 2015. Mr. Deutsch provides the Board with extensive financial and business experience as well as valuable insight into managing and overseeing a business.

**Marc D. Grossman, Director**

As a Founding and senior partner of The Sanders Law Firm since 2003, Mr. Grossman is an innovator and leader in the mass settlement of medical claims and mass torts. Mr. Grossman's deep-rooted commitment to his clients and practice has led to his being a frequent speaker and national advocate for victim's rights. Mr. Grossman currently serves on The Board of Directors of the New York State Trial Lawyers Association, The Executive Committee of the Association of Trial Lawyers of America, and is a member of the Mass Tort Trial Lawyers Association, the Million Dollar Advocates Forum and the leaders Forum of the American Association of Justice. Mr. Grossman has been a member of the Esquire Bank board of directors since 2013. Mr. Grossman provides the Board with an important insight into the legal industry and experience with managing and overseeing a business.

**Russ M. Herman, Director**

Mr. Herman has been senior partner at the law firm Herman, Herman & Katz, L.L.C., a national law firm headquartered in New Orleans, Louisiana, since 1966. Mr. Herman is the past president of the Association of Trial Lawyers of America, Civil Justice Foundation, Roscoe Pound Foundation and the American Association of Justice. He is an author, frequent speaker at law schools and national legal seminars and conventions. Mr. Herman is a member of the National Trial Lawyers Hall of Fame. Mr. Herman has been a member of the Esquire Bank board of directors since 2007 and provides the Board with valuable insight into the legal industry.

**Janet Hill, Director**

Ms. Hill has served as Principal at Hill Family Advisors since 2008, where she oversees her family's assets and investments. From 1981 until her retirement in 2010, Ms. Hill was the owner of and served as Vice President of Alexander & Associates, Inc., a management consulting firm where she provided advice and counseling to major corporations on policies and procedures to achieve and maintain an inclusive workforce. She is currently a member of the boards of directors of the Carlyle Group, Dean Foods Company and Echo360. Ms. Hill is a former director of Wendy's/Arby's Group, Inc. and Sprint Nextel Corporation. She also serves on the Board of Trustees at Duke University, John F. Kennedy Center for the Performing Arts, the Knight Commission on Intercollegiate Athletics, and the Wolf Trap Foundation. Ms. Hill has a Bachelor of Arts from Wellesley College and a Master of Arts from the University of Chicago, both in Mathematics. Ms. Hill has been a member of the Esquire Bank board of directors since 2016. Ms. Hill provides the Board with an important business and strategic insight.

**Robert J. Mitzman, Director**

Mr. Mitzman is Founder and Chairman of the Quick Group of Companies since 1981, having amassed more than 35 years of experience in the worldwide specialized courier industry. Mr. Mitzman was also the former Chief Executive Officer of the Quick Group of Companies. The Quick Group of Companies serves as a provider of worldwide-mission-critical logistics and transportation solutions. Mr. Mitzman previously served on the Board of Directors for Perfumania Holdings as well. Mr. Mitzman has been a member of the Esquire Bank board of directors since 2007 and provides the Board with extensive executive experience as a Chief Executive Officer, including leading an organization with global operations, experience in human resources and growing a business.

**John Morgan, Director**

Mr. Morgan founded Morgan & Morgan in 1988, to represent the people,not the powerful. Under his leadership and vision, Morgan & Morgan grew to become a prominent national law firm, with offices throughout North America and Europe, employing more than 300 lawyers and a support staff of 1,400. Mr. Morgan lectures across the country on the practice of law. He has been an active member of the Florida Justice Association and served as a FLAG trustee. Mr. Morgan has also received Martindale-Hubbell's esteemed "AV" rating, which recognizes lawyers with the highest ethical standards and professional ability. Mr. Morgan attended the University of Florida and the Levin School of Law University of Florida, where Mr. Morgan serves as a member of the Board of Trustees. Mr. Morgan has been a member of the Esquire Bank board of directors since 2015. Mr. Morgan provides the Board with valuable insight into the legal industry and experience with managing and overseeing a business.

**Richard T. Powers, Director**

Mr. Powers served as Esquire Bank's President and Chief Executive Officer since Esquire Bank's pre-opening organizational stage in 2005 through 2008. Prior to joining Esquire Bank, Mr. Powers was President, U.S. Direct Services for Fiserv CBS. Mr. Powers has over 40 years of experience in all areas of the financial services industry, both banking and brokerage. He has served as President and Chief Operating Officer of Waterhouse National Bank and Executive Vice President and Chief Operations Officer of North Fork Bank, among other banking positions. Since 2009, Mr. Powers has been the owner of RT Powers & Associates, a banking and financial services consultant firm and he is recognized as an expert witness for banking technology patent infringement. Mr. Powers is a founding organizer of Esquire Bank. Mr. Powers provides the Board with important experience and insight into the financial services industry.

**Andrew C. Sagliocca, President, Chief Executive Officer, and Director**

Mr. Sagliocca served as Esquire Bank's Chief Financial Officer when he joined Esquire Bank in February 2007. He became Esquire Bank's Chief Executive Officer in January 2009. Prior to joining Esquire Bank, Mr. Sagliocca was Senior Vice President and Corporate Controller of North Fork Bank from 1999 to 2007. Mr. Sagliocca has more than 27 years of experience in the financial services industry. Mr. Sagliocca's extensive experience in the financial services provides the Board with a unique perspective on Esquire Bank's business and strategic direction.

**Dennis Shields, Executive Chairman of the Board**

Mr. Shields is the Executive Chairman of the Board of Directors and was a founding organizer of Esquire Bank. Since its inception in 2000, Mr. Shields has served as Chief Executive Officer of Plaintiff Funding Corp. (dba LawCash), a New York-based specialty finance company that provides financial services products. Since 2014, Mr. Shields has been serving as the Chairman at YieldStreet, an online platform for alternative investments and he is also the Chairman of Keeps America, a company that works with law firms, disability advocates, and third-party administrators to distribute settlement awards and government benefits to clients through its prepaid card.Mr. Shields served as a lay member of the Grievance Committee to the Second and Eleventh Judicial Departments appointed by presiding judge from 1996 to 2004 and previously served on the New York State Health Information and Quality Improvement Committee. Mr. Shields has authored two books and is a frequent speaker in both the legal and finance community. Mr. Shields' extensive experience in both the financial services and legal industry provides the Board with an important perspective on Esquire Bank's business and strategic direction.

**Jack Thompson, Director**

Since 2010, Mr. Thompson has been the Head of Financial Services Investments at Gapstow Capital Partners, an alternative investment firm based in New York City. Mr. Thompson is responsible for the firm's investments within the banking industry

and is a member of the Gapstow Capital Partners Investment Committee. Prior to joining Gapstow Capital Partners, Mr. Thompson held positions at Deutsche Bank Securities, Goldman Sachs, Novantas, and Booz Allen Hamilton. He serves as Director on the Boards of Coastal Financial Corporation (and its subsidiaries) in Everett, Washington and Seaside National Bank in Orlando, Florida. He previously was a Director on the Board of Pan Pacific Bank in Fremont, California. Mr. Thompson has been a member of the Board since 2016. He graduated from Yale University with a B.A. in History and he received his M.B.A. with honors from the University of Chicago with concentrations in Finance and Accounting. Mr. Thompson is also a former 1st Lieutenant in the Armor Branch of the US Army Reserve. Mr. Thompson provides the Board with important experience and insight into the financial services industry. In connection with the purchase of our capital stock in 2014, we granted CJA Private Equity Financial Restructuring Master Fund I, LP the right to designate a director so long as it, together with its affiliates, beneficially owns at least 4.0% (four percent) of our total outstanding capital stock. Mr. Thompson is the designee of CJA Private Equity Financial Restructuring Master Fund I, LP.


**Kevin Waterhouse, Director**

Mr. Waterhouse is Vice President and Investment Advisor of L.M. Waterhouse & Company, a Valhalla, New York-based registered investment advisory firm. Mr. Waterhouse has worked at L.M. Waterhouse since 2009. Mr. Waterhouse previously served as First Vice President -- Operations & Product Development of Waterhouse National Bank. Mr. Waterhouse is a founding organizer of Esquire Bank. Mr. Waterhouse provides the Board with a valuable perspective on general business oversight as well as on potential strategic initiatives.


**Selig Zises, Director**

Mr. Zises is a retired investor. Mr. Zises was the founder and CEO of Integrated Resources, a financial services company, from 1969 to 1988. Mr. Zises is a founding organizer of Esquire Bank. Mr. Zises' extensive experience in the financial services industry provides the Board with an important perspective on the Bank's business and strategic direction.

powered by
**FIRSTBranch**

Notice of Changes in Temporary FDIC Insurance for Transaction Accounts
Esquire Bank — Member FDIC, Equal Housing Lender
Copyright © 2017 - All rights reserved.

# EXHIBIT 13

**Banks**
Company Overview of Esquire Financial Holdings, Inc.

December 05, 2017 3:07 PM ET

Snapshot

People

Overview   Board Members   Committees

---

Executive Profile

# Selig A. Zises

Director, Esquire Financial Holdings, Inc.

| Age | Total Calculated Compensation | |
|---|---|---|
| 75 | $33,750 | This person is connected to **2** Board Members in **2** organization across **2** different industries. |

See Board Relationships

---

Background

Mr. Selig A. Zises has been Chairman of Plaintiff Funding Corp. (dba LawCash) since 2000. Mr. Zises is a Founding organizer of Esquire Bank. Mr. Zises has been a Director at Esquire Bank and Esquire Financial Holdings, Inc. since 2009.

---

**Corporate Headquarters**

100 Jericho Quadrangle
Jericho, New York 11753

United States

Phone: 516-535-2002
Fax: --

---

**Board Members Memberships**

**Director**
Esquire Bank, National Association

2009-Present
**Director**
Esquire Financial Holdings, Inc.

---

**Education**

There is no Education data available.

---

**Other Affiliations**

Esquire Bank, National Association

---

**Annual Compensation**

There is no Annual Compensation data available.

---

**Stocks Options**

There is no Stock Options data available.

---

**Total Compensation**

| | |
|---|---|
| Total Annual Cash Compensation | $33,750 |
| **Total Calculated Compensation** | **$33,750** |

---

**Request Profile Update**

# EXHIBIT 14

1.800.LAW.CASH (1.800.529.2274)



The Nation's Premier Pre-Settlement Funding Company

For Plaintiffs    For Attorneys    About Us    Contact Us    APPLY NOW

APPLY NOW

## LawCash® and Esquire Bank featured in New York Times article

January 13, 2011        lawcash        Uncategorized

**New York Times Article Provides Good Primer on Lawsuit Funding Industry and Singles out LawCash® and Esquire Bank**

In a November 15, 2010 New York Times article entitled "BETTING ON JUSTICE: Putting Money on Lawsuits, Investors Share in the Payouts," Binyamin Appelbaum reported on the **growing trend for banks and other investors to invest in lawsuits.** Mr. Appelbaum does a nice job of describing the **history of the legal finance industry,** though he incorrectly refers to the process as "lending" rather than providing advances. Lawsuit funding advances are not loans or lending because they are non-recourse, i.e. no repayment is required if there is no recovery.

Mr. Appelbaum reported on a **study by the New York Times and the Center For Public Integrity** which showed that **lawsuit funding advances are leveling the playing field for plaintiffs and plaintiffs' attorneys** and giving "more people a day in court":

"The rise of lending to plaintiffs and their lawyers is a result of the high cost of litigation. Pursuing a civil action in federal court costs an average of $15,000, the Federal Judicial Center reported last year. Cases involving scientific evidence, like medical malpractice claims, often cost more than $100,000. Some people cannot afford to pursue claims; others are overwhelmed by corporate defendants with deeper pockets.

A review by The New York Times and the Center for Public Integrity shows that the inflow of money is giving more people a day in court and arming them with well-paid experts and elaborate evidence. It is helping to ensure that cases are decided by merit rather than resources, echoing and expanding a shift a century ago when lawyers started fronting money for clients' lawsuits."

The article recognized the merit of the litigation funding industry in counteracting the deep pockets of defendants and insurance companies, and quoted experts stating that lawsuit funding provides a social service to those in need.

**New York Times Calls Idea Behind Lawsuit Funding Advances "Innovative"**

Mr. Appelbaum correctly noted that the lawsuit funding industry has succeeded in courts and legislatures of various states in overturning outdated laws that prohibited

companies from providing lawsuit funding advances.  This, he said, is a result of changing ideas about the value of litigation; it is viewed more now as a means of correcting social wrongs rather than a social ill.  Mr. Appelbaum noted that:

*"The industry's great innovation, and still its defining trait, is the willingness to lend based on the potential value of unresolved cases."*

He also reported that banks have begun to provide lawsuit funding advances and what he called *"lawsuit loans",* **singling out LawCash® and Esquire Bank®:**

*"The founders of LawCash®, a Brooklyn lender, won a charter from New York in 2006 to establish Esquire Bank, the first American bank to specialize in the business of financing lawyers and lawsuits."*

All in all, this was a very nice piece, providing a good history of the legal funding industry and noting positive trends towards helping plaintiffs have their day in court.

Esquire Bank     Lawsuit Funding

Share this Story

---

Home     For Plaintiffs     For Attorneys     About Us     Contact Us

 

 

1-800-LAWCASH (529-2274)

Copyright LawCash 2017. All Rights Reserved.

Disclaimer: Please note that pre- and post-settlement litigation financing advances are not traditional loans. Pre- and post-settlement litigation financing advances fall into the category of funding known as "non-recourse funding." Repayment of litigation financing advances is contingent on winning or settling the lawsuit.

| HOME PAGE | TODAY'S PAPER | VIDEO | MOST POPULAR | U.S. Edition | | Log In | Register Now | Help |

**The New York Times**

Search All NYTimes.com [Go]

WORLD   U.S.   N.Y. / REGION   BUSINESS   TECHNOLOGY   SCIENCE   HEALTH   SPORTS   OPINION   ARTS   STYLE   TRAVEL   **JOBS   REAL ESTATE   AUTOS**

BENTLEY

# BETTING ON JUSTICE: Putting Money on Lawsuits, Investors Share in the Payouts

By BINYAMIN APPELBAUM
Published: November 15, 2010

Large banks, hedge funds and private investors hungry for new and lucrative opportunities are bankrolling other people's lawsuits, pumping hundreds of millions of dollars into medical malpractice claims, divorce battles and class actions against corporations -- all in the hope of sharing in the potential winnings.

FACEBOOK
TWITTER
GOOGLE+
EMAIL
SHARE
PRINT
REPRINTS

The loans are propelling large and prominent cases. Lenders including Counsel Financial, a Buffalo company financed by Citigroup, provided $35 million for the lawsuits brought by ground zero workers that were settled tentatively in June for $712.5 million. The lenders earned about $11 million.

Most investments are in the smaller cases that fill court dockets. Ardec Funding, a New York lender backed by a hedge fund, lent $45,000 in June to a Manhattan lawyer hired by the parents of a baby brain-damaged at birth. The lawyer hired two doctors, a physical therapist and an economist to testify at a July trial. The jury ordered the delivering doctor and hospital to pay the baby $510,000. Ardec is collecting interest at an annual rate of 24 percent, or $900 a month, until the award is paid.

Total investments in lawsuits at any given time now exceed $1 billion, several industry participants estimated. Although no figures are available on the number of lawsuits supported by lenders, public records from one state, New York, show that over the last decade, more than 250 law firms borrowed on pending cases, often repeatedly.

The rise of lending to plaintiffs and their lawyers is a result of the high cost of litigation. Pursuing a civil action in federal court costs an average of $15,000, the Federal Judicial Center reported last year. Cases involving scientific evidence, like medical malpractice claims, often cost more than $100,000. Some people cannot afford to pursue claims; others are overwhelmed by corporate defendants with deeper pockets.

A review by The New York Times and the Center for Public Integrity shows that the inflow of money is giving more people a day in court and arming them with well-paid experts and elaborate evidence. It is helping to ensure that cases are decided by merit rather than resources, echoing and expanding a shift a century ago when lawyers started fronting money for clients' lawsuits.

But the review shows that borrowed money also is fueling abuses, including cases initiated and controlled by investors. A Florida judge in December ordered an investment banker who orchestrated a shareholder lawsuit against Fresh Del Monte Produce to repay the company's legal expenses, ruling that the case should not have reached trial.

Such financing also drains money from plaintiffs. Interest rates on lawsuit loans generally exceed 15 percent a year, and most states allow lawyers that borrow to bill clients for the interest payments. The cost can exceed the benefits of winning. A woman injured in a 1995 car accident outside Philadelphia borrowed money for a suit, as did her lawyer. By the time she won $169,125 in 2003, the lenders were owed $221,000.

Never Old.
Never New.
**Get yours >**
foreverspin™

MOST EMAILED          RECOMMENDED FOR YOU

1. Met Defends Suggestive Painting of Girl After Petition Calls for Its Removal

2. Tillerson, Visiting Europe, Gets Cold Shoulder

3. Toblerone vs. Poundland: A Food Fight With Peaks and Troughs

4. John Oliver Grills Dustin Hoffman on Sexual Harassment Statement

5. Thing I'll Do Differently When I'm Old

6. Dealing With the Grief That Accompanies Homelessness

7. ON LOCATION
   Tiny Loft Living

8. CRITIC'S NOTEBOOK
   Three String Quartets in a Week. One of Them Is Trying New Things.

9. How to Beat the Line and Get Reservations at Hot New Restaurants

10. A Son in a Shadow, Finding His Way, Meets a Grim End

Log in to discover more articles based on what you've read.

[Log In]  [Register Now]          What's This? | Don't Show



Lawyers are not required to tell clients that they have borrowed money, so the client may be unaware that there is financial pressure to resolve cases quickly. Lenders also seek detailed information about cases, which can jeopardize client confidentiality. A federal judge in Delaware ruled in June that a company suing Facebook for patent infringement had to show Facebook documents that its lawyer had shared with a lender.

Citing these issues, critics of lending for lawsuits say the practice should be banned.

"It sends shivers down the spines of general counsels all across the globe," said Lisa A. Rickard of the Institute for Legal Reform, an arm of the United States Chamber of Commerce.

But proponents, who argue that people often need help to fight corporations, have won a series of victories in state courts and legislatures in recent years, overturning old laws that prohibited investments in lawsuits.

"If you want to use the civil justice system, you have to have money," said Alan Zimmerman, who founded one of the first litigation finance companies in 1994, in San Francisco, now called the LawFinance Group. "If there's less money, you'd have less litigation. But then you'd also have less justice."

A Case in Point

A legal battle between residents of a faded Texas factory town and the BNSF Railway, the nation's second-largest railroad company, highlights what some see as the benefits and others see as the excesses of lawsuits driven by borrowed money.

Somerville, Tex., 80 miles northwest of Houston, has hosted the noxious work of treating wood to make railroad ties for more than a century. The railroad runs through the town, dividing a small grid of residential streets from the lumber yard and treatment plant where stacks of wood are soaked in preservatives.

Dennis L. Krueger crossed the tracks to begin work at the factory the week after he graduated from the local high school, in 1974. Three decades later, he was found to have a malignant skin cancer that his doctor said was most likely caused by prolonged exposure to creosote, the tar oil in which the ties are soaked.

Mr. Krueger, who is 54 but looks much older, reduced by manual labor and medical treatment, is suing the railroad for damages, claiming that BNSF failed to provide basic safety equipment or to warn workers that the federal government had linked creosote with skin cancer. He recalled cleaning the inside of the treatment tanks wearing no safety gear except steel-toed boots and mule-skin gloves.

"I got so high off that stuff I'd be laughing one minute and crying the next minute," said Mr. Krueger, sitting at the local Dairy Queen beneath old photographs of factory workers. "I've got a 2-year-old grandson. My goal was to live to 101. What I'd like is a fair shake from the railroad for missing out."

Mr. Krueger's lawsuit is financed by investors he has never met. His lawyer from Houston, Jared R. Woodfill, has borrowed more than $3.5 million from a New York hedge fund run by Stillwater Capital Partners, in a deal arranged by the litigation finance specialist Oxbridge Financial Group, also based in New York.

Mr. Woodfill first drove to Somerville in 2000 to meet with a former factory worker who has since died of skin cancer. He said that his work on that worker's case, which BNSF agreed to settle in 2003, convinced him that toxic emissions from the factory had poisoned the town's air, water and land.

Mr. Woodfill, who is 42 and the chairman of the Republican Party in Harris County, is empathetic and well-spoken. He found a ready audience in Somerville, which has declined with the railroad industry. The population peaked in the 1930s. About 1,700 people still live in the timeworn residential section, but automation has further reduced employment at the factory, and a quarter of the households now live in poverty. Residents with a wide range of health problems embraced the idea that the factory was responsible.

Mr. Woodfill signed up workers with skin cancer, like Mr. Krueger, and those with gastrointestinal cancers that he says can be caused by the chemicals used at the factory. He also signed up Somerville residents who never worked at the factory but had developed cancers. And he signed up property owners with no health problems, arguing that the value of their property had suffered.

About 400 people sued the railroad -- almost a quarter of the town's residents.

Oxbridge spent several months reviewing the cases before agreeing to arrange the financing, sending lawyers to Texas to look at documents and to question Mr. Woodfill and his partners. Stillwater Capital is charging about 16 percent annual interest.

"But for a hedge fund, I couldn't afford to take on a railroad," Mr. Woodfill said.

BNSF's general counsel, Charles Shewmake, said the company had carefully reviewed claims brought by its former workers and decided they had no merit. He said the claims by Somerville residents who did not work at the factory were "physically impossible and without any scientific basis."

Company executives were outraged when they learned that a hedge fund was backing the lawsuits, Mr. Shewmake said. He said that BNSF had been forced to spend millions of dollars mounting its courtroom defense and defending its reputation.

"They're stirring up cases that don't need to be in the courthouses," he said.

An Opportunity for Lenders

Lawsuit lending is a child of the subprime revolution, the mainstream embrace of high-risk lending at high interest rates that began in the early 1990s.

Mr. Zimmerman, the founder of the LawFinance Group, practiced law for more than two decades before moving into finance in California in 1992. A lawyer friend called to ask if he would lend to a client who had won a sexual harassment lawsuit. The woman's former employer had appealed, and she needed money for living expenses or she would be forced to take a smaller settlement.

Mr. Zimmerman invested $30,000 in the case; the former employer almost immediately dropped the appeal and paid out the verdict. Mr. Zimmerman made $20,000.

"I said: 'That's an interesting way to make money. Is there a way to turn that into a business?' " he recalled. The company he created has since invested more than $350 million in litigation.

Others in the lending business saw the same opportunity at about the same time, including a mortgage salesman in Buffalo; a subprime auto lender from Nashville; and a Las Vegas man who had been convicted of threatening borrowers who failed to repay his previous business, Wild West Funding.

By the late 1990s, several of those companies were also making loans to lawyers. Plaintiffs needed small sums for living expenses; their lawyers needed much larger sums to mount cases, and they had few other options. Banks make loans against assets, and law firms generally have little property to pledge as collateral.

The new lenders jumped into the void. LawFinance's slogan is "We do what banks won't."

The industry's great innovation, and still its defining trait, is the willingness to lend based on the potential value of unresolved cases.

The roughly one dozen major lenders tend to cultivate an image of conservative prudence. Counsel Financial, which bills itself as the largest, with more than $200 million in outstanding loans to law firms, shares a suburban office building outside Buffalo with an insurance firm.

But the work sits somewhere between banking and gambling. Lenders employ experienced lawyers to judge the strength of cases. They consult databases showing the results of

similar lawsuits, just as appraisers value homes based on recent sales. A corporate defendant may have a history of battling personal injury claims; or juries in a specific county may have a history of siding with local employers. Then they place their bets. Counsel will invest up to $10 million in a law firm.

The returns can be lucrative. Counsel Financial charges 18 percent annual interest. "If firms have access to lower-cost financing, our first comment back to them is that you really shouldn't be talking to us," said Paul R. Cody, president of Counsel Financial. "We're not going to be competitive" with the interest rates charged by banks.

Law firms are generally obligated to repay loans even if they lose. In reality, however, firms that make less than expected often struggle to make the required payments, and a number of firms that borrowed from Counsel Financial have filed for bankruptcy protection.

Increasingly, banks are making lawsuit loans, too. During the lending boom of the last decade, companies including Citigroup, Commerce Bank of New Jersey and Credit Suisse provided financing for lawsuit lenders. More recently, some banks have started cutting out the middlemen. Deutsche Bank recently refinanced one of Counsel's largest clients, the New York firm Napoli Bern Ripka. TD Bank, which absorbed Commerce, lends to lawyers and plaintiffs.

The founders of LawCash, a Brooklyn lender, won a charter from New York in 2006 to establish Esquire Bank, the first American bank to specialize in the business of financing lawyers and lawsuits.

Defendants on the Defensive

A recent Nevada case illustrates one reason many companies are troubled by the rise of financing: They fear that investors will move from supporting to producing lawsuits.

Steven and Roz Flans left Los Angeles in 2004 for Sun City Anthem, a sprawling retirement community of 7,000 one-story homes, from ranches to mansions, at the edge of the Las Vegas basin. When the gas fireplace stopped working during their third winter in the desert, the couple contacted their home builder, Del Webb.

"We called and said, 'We have a minor problem,' " Mr. Flans recalled. "And they said: 'We can't talk to you. You're suing us!' "

It emerged that the Flanses had accepted a free home inspection the previous year from a company, MC Mojave Construction, that had papered their neighborhood with brochures. They said they did not realize that the forms they signed authorized MC Mojave to sue Del Webb on their behalf for the money to correct any problems.

By 2008, MC Mojave had initiated more than 500 lawsuits against Del Webb. The company acted as an investor, providing inspection reports to the Las Vegas law firm that handled the cases in exchange for a share of any winnings.

Del Webb sued MC Mojave, arguing that Nevada law prohibited fomenting and investing in lawsuits. Jacque Petroulakis, a company spokeswoman, said that Del Webb would have fixed legitimate problems under its warranty policy, and that the lawsuits served solely to make money for MC Mojave and the law firm.

"They were throwing people into litigation that many of them never anticipated or wanted," Ms. Petroulakis said.

MC Mojave did not return calls for comment, but in court filings, it called the Nevada law "medieval" and said it should not be enforced. The company said it was providing a service at the request of the homeowners.

This year, a federal judge barred MC Mojave from initiating further lawsuits, ruling that Nevada law indeed prohibits such investments.

But a growing number of states have eliminated similar laws.

The Massachusetts Supreme Judicial Court started the trend in 1997, citing a "fundamental change in society's view of litigation -- from a social ill, which, like other disputes and quarrels, should be minimized, to a socially useful way to resolve disputes."

South Carolina, Texas and Ohio are among the states that have followed.

Stephen C. Yeazell, a law professor at the University of California, Los Angeles, and a leading historian of the civil justice system, said the trend was likely to continue. He said there was little legal justification for allowing lawyers to pay for cases but barring third parties from doing so. "This is another step in leveling the playing field between plaintiffs and defendants," Mr. Yeazell said.

Gathering Plaintiffs

Anthony Flammia, a former New York City police officer who spent three months working in the wreckage of the World Trade Center, did not learn that his lawyers had borrowed money to pursue his claim of compensation for health problems until he received a bill for $828.93 in interest charges.

Mr. Flammia left ground zero at the end of 2001 for a job with a suburban police department. A few years later, a passer-by found him asleep in his patrol car. His health had been deteriorating, and the episode prompted him to visit a free clinic established to treat ground zero workers for the consequences of inhaling dust. He was found to have sleep apnea and scarring in his lungs. In 2007, he passed out after inhaling smoke at a house fire and was forced to retire.

Lawyers led by Napoli Bern Ripka sued the City of New York and a host of agencies and companies on behalf of more than 9,000 ground zero workers. When Mr. Flammia signed up as a client, the paperwork included a general notice that the lawyers might borrow money to pursue the case, and that they might bill clients for the interest.

Mr. Flammia said he did not see the general warning, and there was no further notice as the lawyers borrowed more than $35 million.

In June, the city and other defendants agreed to settle the case for up to $712.5 million. The workers have until Tuesday to approve the settlement. Workers received letters detailing how much they would receive, and how much the lawyers would keep to cover the costs of pursuing the case.

Among the costs billed to clients was $6.1 million of the $11 million in total interest payments, which the law firms said reflected the share of the borrowed money covering the workers' expenses.

Lawsuit lenders, including Counsel Financial, encourage lawyers to bill clients. They advertise in trade magazines that lawyers can borrow money free if the client is paying the interest. Bar associations in most states, including New York, condone the practice.

Paul J. Napoli, one of the lead lawyers representing the ground zero workers, said that the firm needed money to pursue the case, that the loans were taken at the lowest available interest rates and that clients were properly notified.

"We followed the rules. Do people want to have it sky-written over their house every day?" Mr. Napoli asked. "They didn't read it. Or maybe they didn't care at the time. At what point do people have a self-responsibility to read something and be bound by it?"

But Mr. Flammia and other workers said they had not agreed that the law firm could pay for its work by borrowing money at their expense.

"If I'm ever involved in a lawsuit again, I'm going to be very careful and read every document line by line," Mr. Flammia said. "I'm also going to find a lawyer who is acting on my behalf and not to line their own pockets."

The judge overseeing the case, Alvin K. Hellerstein of the Federal District Court of Manhattan, ordered the lawyers to swallow the cost.

Judge Hellerstein acknowledged that the charges were legal, but said that the lawyers already were earning enough from the case. He said that it was not clear that clients had understood or approved the decision to borrow, and that it was clear that clients had no control over how the money was spent.

The workers, Judge Hellerstein said, "want to have the fruits of this settlement not diminished by an effort of lawyers to finance much of the way that they work this case."

A War of Attrition

The residents of Somerville, Tex., have yet to win a trial.

The case of Linda Faust, who never worked at the railroad plant, was the first to reach court, in 2008. She had stomach cancer.

The jury deliberated three days before deciding that BNSF was not responsible.

The following year, a jury ruled against Dennis Davis, a former worker at the factory with pancreatic cancer.

Mr. Woodfill's nine-lawyer firm, Woodfill & Pressler, has spent more on the Somerville cases than any of its previous litigation. Win or lose, it must repay Stillwater, the hedge fund that is bankrolling the cases. Mr. Woodfill said he remained confident that the cases could be won. He is appealing the two losses and preparing for a third trial next year.

He drove through Somerville recently on his way to meet with clients, rolling down the windows so the smell of the factory came into the car. "They're hoping to spend us into the ground and make us go away, but we're not giving up," he said.

Mr. Shewmake of BNSF said the company was braced to continue fighting the cases until Stillwater ran out of patience.

"Right now," he said, "I'd say it's starting to look like a bad investment decision."

Betting on Justice: Articles in this series will look at the growing practice of investing in lawsuits, and efforts to facilitate it.

PHOTOS: Anthony Flammia, a former police officer, received a bill for interest from his lawyers. (PHOTOGRAPH BY GORDON M. GRANT FOR THE NEW YORK TIMES) (A1); A CANCER CASE: Dennis Krueger started at a BNSF Railway factory in Texas in 1974. His doctor said the cancer he developed was probably related to his job.; CLAIMS DISMISSED: Linda Faust of Somerville had stomach cancer and sued BNSF. She did not work at the plant, and a jury said BNSF was not liable (PHOTOGRAPHS BY SCOTT DALTON FOR THE NEW YORK TIMES); Marc Jay Bern, a lawyer, with a client who was a cleanup worker at ground zero. (PHOTOGRAPH BY SUSAN WALSH/ASSOCIATED PRESS) (A20); THE LAWYER: Jared Woodfill has borrowed more than $3.5 million from a hedge fund to pay for the Somerville suits. (PHOTOGRAPH BY SCOTT DALTON FOR THE NEW YORK TIMES) (A21)
MAPS: The noxious work of treating wood to make railroad ties has gone on in Somerville for more than a century.; CHART: Legal Pathway to Lawsuit Lending (A20); GRAPHIC: Legal Financing, an Example: David Kert and his partner, Vernon Welsh, lawyers in upstate New York, represented workers at Macy's and several other large department stores in a lawsuit claiming that sales commissions on returned items were improperly deducted from employees' paychecks. (A21)

FACEBOOK      TWITTER      GOOGLE+      EMAIL      SHARE

© 2017 The New York Times Company    Site Map   Privacy   Your Ad Choices   Advertise   Terms of Sale   Terms of Service   Work With Us   RSS   Help   Contact Us   Site Feedback

# EXHIBIT 15

TABLE OF CONTENTS

## CERTAIN RELATIONSHIPS AND RELATED PARTY TRANSACTIONS

In addition to the compensation arrangements with directors and executive officers described in "Executive Compensation" above, the following is a description of transactions since January 1, 2016, to which we have been a party in which the amount involved exceeded or will exceed $120,000, and in which any of our directors, executive officers or beneficial holders of more than five percent of our capital stock, or their immediate family members or entities affiliated with them, had or will have a direct or indirect material interest.

### Policies and Procedures Regarding Related Party Transactions

Transactions by the Company or Esquire Bank with related parties are subject to certain regulatory requirements and restrictions, including Sections 23A and 23B of the Federal Reserve Act (which govern certain transactions by Esquire Bank with its affiliates) and the Federal Reserve's Regulation O (which governs certain loans by Esquire Bank to its executive officers, directors and principal stockholders).

Under applicable SEC and NASDAQ rules, related party transactions are transactions in which we are a participant, the amount involved exceeds $120,000 and a related party has or will have a direct or indirect material interest. Related parties of the Company include directors (including nominees for election as directors), executive officers, five percent stockholders and the immediate family members of these persons. Related party transactions will be referred for approval or ratification to our audit committee. In determining whether to approve a related party transaction, the Audit Committee will consider, among other factors, the fairness of the proposed transaction, the direct or indirect nature of the related party's interest in the transaction, the appearance of an improper conflict of interests for any director or executive officer taking into account the size of the transaction and the financial position of the related party, whether the transaction would impair an outside director's independence, the acceptability of the transaction to our regulators and the potential violations of other corporate policies.

### Banking Relationships

On September 30, 2016, the Company purchased a $265,000 participation interest (53%) in a loan that was originated by an entity in which Dennis Shields, a director and executive officer of the Company, is a principal stockholder. The underlying loan was for the working capital needs of a law firm. The purchase of the loan participation was approved by our Directors Loan Committee and our Corporate Governance Committee, without the participation or vote of Mr. Shields. The loan and the Company's participation therein has been repaid in full prior to December 31, 2016.

In 2016, Esquire Bank made a $500,000 loan to a third-party borrower the proceeds of which were used to lend additional monies to a limited liability company controlled by Plaintiff Funding Holding, Inc. (DBA LawCash). Mr. Zises, a director of the Company, and Mr. Shields, an executive officer and a director of the Company, are each principal stockholders of LawCash, and Mr. Shields is the Chief Executive Officer of LawCash. The loan was made in the ordinary course of business, on substantially the same terms, including interest rates and collateral, as those prevailing at the time for comparable transactions with others, and in the opinion of management does not involve more than a normal risk of collectability, nor does it present other unfavorable features. The loan was approved by the Directors Loan Committee and Corporate Governance Committee, without participation or vote of Messrs. Shields or Zises. As of March 31, 2017, the loan was being paid as agreed.

We have engaged, and expect to engage in the future, in banking transactions in the ordinary course of business with directors, officers, principal stockholders and their associates and/or immediate family members, on substantially the same terms, including interest rates and collateral on loans, as those prevailing at the same time for comparable transactions with persons not related to us and that do not involve more than the normal risk of collectability or present other unfavorable features.

At March 31, 2017, the aggregate amount of extensions of credit to our directors, executive officers, principal stockholders and their associates was $7.2 million, or approximately 13.5% of our total equity. At March 31, 2017, unfunded commitments totaled $60,000.

106

# EXHIBIT 16

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through December 4, 2017.

Selected Entity Name: PLAINTIFF FUNDING HOLDING, INC.
Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | PLAINTIFF FUNDING HOLDING, INC. |
| **DOS ID #:** | 3447465 |
| **Initial DOS Filing Date:** | DECEMBER 11, 2006 |
| **County:** | KINGS |
| **Jurisdiction:** | DELAWARE |
| **Entity Type:** | FOREIGN BUSINESS CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**

HARVEY HIRSCHFELD
26 COURT STREET SUITE 1104
BROOKLYN, NEW YORK, 11242

**Chief Executive Officer**

DENNIS SHIELDS
26 COURT ST
BROOKLYN, NEW YORK, 11242

**Principal Executive Office**

PLAINTIFF FUNDING HOLDING, INC.
26 COURT ST
BROOKLYN, NEW YORK, 11242

**Registered Agent**

NONE

This office does not record information regarding the
names and addresses of officers, shareholders or

directors of nonprofessional corporations except the chief executive officer, if provided, which would be listed above. Professional corporations must include the name(s) and address(es) of the initial officers, directors, and shareholders in the initial certificate of incorporation, however this information is not recorded and only available by viewing the certificate.

### *Stock Information

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| | No Information Available | |

*Stock information is applicable to domestic business corporations.

### Name History

| Filing Date | Name Type | Entity Name |
|---|---|---|
| DEC 11, 2006 | Actual | PLAINTIFF FUNDING HOLDING, INC. |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results   New Search

Services/Programs  |  Privacy Policy  |  Accessibility Policy  |  Disclaimer  |  Return to DOS Homepage  |  Contact Us

Entity Information

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through December 4, 2017.

Selected Entity Name: PLAINTIFF HOLDING V LLC
Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | PLAINTIFF HOLDING V LLC |
| **DOS ID #:** | 3447111 |
| **Initial DOS Filing Date:** | DECEMBER 08, 2006 |
| **County:** | KINGS |
| **Jurisdiction:** | NEW YORK |
| **Entity Type:** | DOMESTIC LIMITED LIABILITY COMPANY |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
PLAINTIFF HOLDING V LLC
26 COURT STREET
BROOKLYN, NEW YORK, 11242

**Registered Agent**

NONE

This office does not require or maintain information regarding the names and addresses of members or managers of nonprofessional limited liability companies. Professional limited liability companies must include the name(s) and address(es) of the original members, however this information is not recorded and only available by viewing the certificate.

**\*Stock Information**

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|

No Information Available

*Stock information is applicable to domestic business corporations.

## Name History

| Filing Date | Name Type | Entity Name |
|---|---|---|
| DEC 08, 2006 | Actual | PLAINTIFF HOLDING V LLC |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results   New Search

Services/Programs   |   Privacy Policy   |   Accessibility Policy   |   Disclaimer   |   Return to DOS Homepage   |   Contact Us

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through December 4, 2017.

Selected Entity Name: LAWCASH I LLC
Selected Entity Status Information

**Current Entity Name:** LAWCASH I LLC
**DOS ID #:** 2810547
**Initial DOS Filing Date:** SEPTEMBER 11, 2002
**County:** KINGS
**Jurisdiction:** DELAWARE
**Entity Type:** FOREIGN LIMITED LIABILITY COMPANY
**Current Entity Status:** ACTIVE

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
LAWCASH I LLC
26 COURT STREET
SUITE 1104
BROOKLYN, NEW YORK, 11242

**Registered Agent**
NONE

This office does not require or maintain information regarding the names and addresses of members or managers of nonprofessional limited liability companies. Professional limited liability companies must include the name(s) and address(es) of the original members, however this information is not recorded and only available by viewing the certificate.

**\*Stock Information**

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|

No Information Available

*Stock information is applicable to domestic business corporations.

## Name History

| Filing Date | Name Type | Entity Name |
|---|---|---|
| SEP 11, 2002 | Actual | LAWCASH I LLC |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results    New Search

Services/Programs   |   Privacy Policy   |   Accessibility Policy   |   Disclaimer   |   Return to DOS Homepage   |   Contact Us

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through December 5, 2017.

Selected Entity Name: PLAINTIFF FUNDING CORPORATION
Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | PLAINTIFF FUNDING CORPORATION |
| **DOS ID #:** | 2471715 |
| **Initial DOS Filing Date:** | FEBRUARY 09, 2000 |
| **County:** | NASSAU |
| **Jurisdiction:** | NEW YORK |
| **Entity Type:** | DOMESTIC BUSINESS CORPORATION |
| **Current Entity Status:** | INACTIVE - Merged Out (Oct 27, 2006) |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
PLAINTIFF FUNDING CORPORATION
26 COURT ST
STE 1104
BROOKLYN, NEW YORK, 11242

**Chief Executive Officer**
DENNIS SHIELDS
26 COURT ST
STE 1104
BROOOKLYN, NEW YORK, 11242

**Principal Executive Office**
PLAINTIFF FUNDING CORPORATION
26 COURT ST
STE 1104
BROOKLYN, NEW YORK, 11242

**Registered Agent**
NONE

Entity Information

This office does not record information regarding the names and addresses of officers, shareholders or directors of nonprofessional corporations except the chief executive officer, if provided, which would be listed above. Professional corporations must include the name(s) and address(es) of the initial officers, directors, and shareholders in the initial certificate of incorporation, however this information is not recorded and only available by viewing the certificate.

### *Stock Information

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| 2000 | Par Value | .01 |

*Stock information is applicable to domestic business corporations.

### Name History

| Filing Date | Name Type | Entity Name |
|---|---|---|
| FEB 09, 2000 | Actual | PLAINTIFF FUNDING CORPORATION |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results   New Search

Services/Programs   |   Privacy Policy   |   Accessibility Policy   |   Disclaimer   |   Return to DOS Homepage   |   Contact Us

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through December 5, 2017.

Selected Entity Name: PLAINTIFF FUNDING CORPORATION
Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | PLAINTIFF FUNDING CORPORATION |
| **DOS ID #:** | 3430141 |
| **Initial DOS Filing Date:** | OCTOBER 27, 2006 |
| **County:** | |
| **Jurisdiction:** | DELAWARE |
| **Entity Type:** | UNAUTHORIZED BUSINESS CORPORATION |
| **Current Entity Status:** | INACTIVE - Merged Out (Oct 27, 2006) |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
PLAINTIFF FUNDING CORPORATION
ATTN: HARVEY R. HIRSCHFELD
26 COURT ST., SUITE 1104
BROOKLYN, NEW YORK, 11242

**Registered Agent**

NONE

This office does not record information regarding the names and addresses of officers, shareholders or directors of nonprofessional corporations except the chief executive officer, if provided, which would be listed above. Professional corporations must include the name(s) and address(es) of the initial officers, directors, and shareholders in the initial certificate of incorporation, however this information is not recorded and only available by viewing the certificate.

## *Stock Information

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| | No Information Available | |

*Stock information is applicable to domestic business corporations.

### Name History

| Filing Date | Name Type | Entity Name |
|---|---|---|
| OCT 27, 2006 | Actual | PLAINTIFF FUNDING CORPORATION |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results    New Search

Services/Programs   |   Privacy Policy   |   Accessibility Policy   |   Disclaimer   |   Return to DOS Homepage   |   Contact Us