# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | **Hon. Anita B. Brody** |
| | No. 12-md-2323-AB |
| THIS DOCUMENT RELATES TO: | MDL No. 2323 |
| *LEWIS et al., v. KANSAS CITY CHEIFS FOOTBALL CLUB, INC.,* | No. 14-01995-AB |
| and | No. 14-03383-AB |
| *SMITH et al., v. KANSAS CITY CHIEFS FOOTBALL CLUB, INC.,* | No. 14-04779-AB |
| and | No. 16-01704-AB |
| *KENNEY, et al. v. KANSAS CITY CHIEFS FOOTBALL CLUB, INC.* | |
| and | |
| *SMITH et al., v. ARIZONA FOOTBALL CLUB, LLC* | |

## PLAINTIFFS' CONSOLIDATED REPLY TO KANSAS CITY CHIEFS FOOTBALL CLUB. INC. AND ARIZONA CARDINALS FOOTBALL CLUB LLC'S JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

Kenneth B. McClain
Lauren E. McClain
Timothy J. Kingsbury
HUMPHREY, FARRINGTON & MCCLAIN
221 West Lexington, Suite 400
Independence, MO 64051
Telephone: (816) 836-5050
Facsimile: (816) 836-8966

Paul D. Anderson
Andrew Schermerhorn
John Klamann
THE KLAMANN LAW FIRM
4435 Main, Ste. 150
Kansas City, MO 64111
Telephone: (816) 421-2626
Facsimile:  (816) 421-8686

Wm. Dirk Vandever
THE POPHAM LAW FIRM
712 Broadway, Suite 100
Kansas City, Missouri
Telephone: (816) 221-2288
Facsimile: (816) 221-3999

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................iii

ARGUMENT ....................................................................................................................... 1

    I.     Resolution of Plaintiffs' Negligence Claims do *Not* Substantially Depend Upon the Interpretation of the Terms of the CBAs ....................................................................... 1

    II.    Resolution of Plaintiffs' Negligent Misrepresentation and Fraudulent Concealment/Misrepresentation Claims do Not Substantially Depend Upon the Interpretation of the Terms of the CBAs ..................................................................... 11

    III.   Plaintiffs' Claims *do Not* Arise Under the CBAs ........................................................ 14

    IV.   The *Green* Remand Decision was *Not* Wrong or Inapplicable.................................. 15

    V.    Third Circuit Authority is Pertinent and Persuasive .................................................. 21

    VI.   Plaintiffs' Claims are Not Removable under 28 U.S.C. 1445(c).............................. 23

    VII.  The Cardinals Plaintiffs' are Entitled to Costs and Attorneys' Fees ......................... 25

CONCLUSION.................................................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*A.T. v. Newark Corp.*, No. 4:16-CV-00448-SNLJ, 2017 WL 57251 (E.D. Mo. Jan. 5, 2017)....... 5

*Al-Mumin v. Loraine*, No. 4:17 CV 1226 CDP, 2017 WL 4617075 (E.D. Mo. Oct. 16, 2017) ..... 8

*Amesquita v. Gilster-Mary Lee Corp.*, 408 S.W.3d 293 (Mo. Ct. App. 2013) ............................ 24

*Anderson v. Ford Motor Co.*, 803 F.2d 953 (8th Cir.1986)......................................................... 12

*Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495 (7th Cir.1996)...................................... 19

*Ballard v. Nat'l Football League Players Ass'n*, 123 F. Supp. 3d 1161 (E.D. Mo. 2015) ...... 2, 4, 11

*Bender v. Kroger Grocery & Baking Co.*, 493, 276 S.W. 405 (1925).......................................... 5

*Beneficial Nat. Bank v. Anderson*, 539 U.S. 1 (2003) ................................................................. 11

*Bethel v. Sunlight Janitor Service,* 551 S.W.2d 616 (Mo.1977)................................................... 17

*Blanton v. Dold*, 109 Mo. 64, 18 S.W. 1149 (1892)..................................................................... 17

*Bush v. St. Louis Reg'l Convention*, No. 4:16CV250 JCH, 2016 WL 3125869 (E.D. Mo. June 3, 2016) ......................................................................................................................... 10, 19

*Carman v. Wieland*, 406 S.W.3d 70 (Mo.Ct.App.2013) ................................................................. 2

*Charlton v. St. Louis & S.F.R. Co.*, 98 S.W. 529 (1906) ........................................................... 4, 16

*Dobbins v. Kramer*, 780 S.W.2d 717 (Mo. Ct. App. 1989)......................................................... 13

*Enslin v. Coca-Cola Co.*, No. 2:14-CV-06476, 2017 WL 1190979 (E.D. Pa. Mar. 31, 2017) 8, 10

*Espinoza v. Cargill Meat Sols. Corp.*, 622 F.3d 432 (5th Cir. 2010) .......................................... 23

*Foy v. Pratt & Whitney Grp.,* 127 F.3d 229 (2d Cir. 1997)......................................................... 12

*Francis v. Noranda Aluminum, Inc.*, 1:12CV0104 JAR, 2013 WL 1090300 (E.D. Mo. Mar. 15, 2013) ................................................................................................................................ 24

*Givens v. Tennessee Football, Inc.*, 684 F.Supp.2d 985 (M.D. Tenn. 2010)............................... 4

*Gore v. Trans World Airlines*, 210 F.3d 944 (8th Cir.2000) ....................................................... 15

*Green v. Arizona Cardinals Football Club LLC*, 21 F. Supp. 3d 1020 (E.D. Mo. 2014) 2, 10, 12, 19

*Hayman Cash Register Co. v. Sarokin,* 669 F.2d 162 (3d Cir.1982)............................................ 20

*Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler,* 481 U.S. 851 (1987) ..................................... 2, 4

*Jarrett v. Jones*, 258 S.W.3d 442 (Mo. 2008)(en banc) ................................................................ 1

*Lambert v. Highlands Hosp.*, No. 2:12-CV-733, 2012 WL 4762197 (W.D. Pa. Oct. 5, 2012).... 14

*Markham v. Wertin*, 861 F.3d 748 (8th Cir. 2017) ....................................................... 8, 10, 18, 19

*McKay v. GMAC Mortg., LLC*, No. 4:10CV507 CDP, 2010 WL 2518590 (E.D. Mo. June 14, 2010) ................................................................................................................................. 12

*McKnight v. Dresser, Inc*., 676 F.3d 426 (5th Cir. 2012)............................................................. 16

*McNeal v. Arcelormittal USA, Inc.*, 2015 WL 9489590 (E.D. Pa. Dec. 29, 2015) ........................ 2

*Medlin v. Boeing Vertol Co.*, 620 F.2d 957 (3d Cir. 1980) .................................................... 10, 19

*Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804 (1986) ..................................... 11

*Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401 (9th Cir. 1991)...................................... 12

*New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297 (3d Cir. 2014)............................................................................................................ 14

Palmer v. Kraft Foods Global, Inc., 2014 WL 317876 (E.D. Pa. Jan. 29, 2014) ................. 10, 11

*Peters v. Wady Indus., Inc.*, 489 S.W.3d 784 (Mo. 2016) ............................................................. 5

*Reece v. Houston Lighting & Power Co.*, 79 F.3d 485 (5th Cir. 1996)........................................ 19

*State ex rel. KCP & L Greater Missouri Operations Co. v. Cook*, 353 S.W.3d 14 (Mo. Ct. App. 2011) ................................................................................................................................. 24

*Stellar v. Allied Signal, Inc.*, 98 F.Supp.3d 790 (E.D. Pa. 2015)............................................ 2, 22

*Taylor v. Cottrell*, 995 F. Supp. 2d 1052 (E.D. Mo. 2014).................................................. 10, 19

*Voilas v. Gen. Motors Corp.*, 170 F.3d 367 (3d Cir.1999) ......................................................... 14

*Wengler v. Druggists Mut. Ins. Co.,* 583 S.W.2d 162 (Mo.1979) .............................................. 17

*Williams v. Nat'l Football League*, 582 F.3d 863 (8th Cir. 2009) ......................................... 13, 23

iv

**<u>Statutes</u>**

28 U.S.C. 1445(c) ................................................................................................ 23

**<u>Other Authorities</u>**

*Black's Law Dictionary* (9th ed.2009) ............................................................... 9

Plaintiffs, by and through undersigned counsel, respectfully submit this Reply in Support of their Motions to Remand.[1]

## ARGUMENT

Defendants assert that Plaintiffs' claims are completely preempted by § 301 because their resolution is substantially dependent upon an interpretation of "numerous health and safety provisions." Defendants are wrong. Plaintiffs' claims are now, and always have been, completely and wholly resolvable by state tort law. Since Plaintiffs have chosen to sue their *employer*, as opposed to the NFL, they assert no claim arising under the terms of a CBA and none is substantially dependent upon the interpretation of a CBA.

**I.      Resolution of Plaintiffs' Negligence Claims do *Not* Substantially Depend Upon the Interpretation of the Terms of the CBAs**

To prove negligence, Plaintiffs must establish that the Defendants owed a duty to protect them from injury, that the Defendants failed to perform that duty, and that Defendants proximately caused Plaintiffs' injuries. *Jarrett v. Jones*, 258 S.W.3d 442, 448 (Mo. 2008)(en banc). Defendants contend that to prove the existence, and scope, of the duties owed by the Cardinals and the Chiefs, the Court will have to interpret one or more collective bargaining agreement. Defendants are wrong.

## A.

It is undisputed that Plaintiffs are each former professional football players who played some or all of their careers with either the Chiefs or the Cardinals. Moreover, it is beyond dispute that the Cardinals and the Chiefs owed Plaintiffs the common law non-delegable duties incumbent

---

[1] Citations herein to "Opp" are to Defendants' Joint Opposition to Plaintiffs' Motions to Remand. (ECF No. 60.)

upon all employers to maintain a safe working environment, not to expose employees to unreasonable risks of harm, and to warn employees about the existence of dangers of which they could not reasonably be expected to be aware. *See Green v. Arizona Cardinals Football Club LLC*, 21 F. Supp. 3d 1020, 1027 (E.D. Mo. 2014).[2]

Finally, there is no disputing that the scope of the common law, non-delegable duties "is measured by 'whether a reasonably prudent person would have anticipated danger and provided against it.' " *Green*, 21 F. Supp. 3d at 1027 (quoting *Smith v. Dewitt & Assoc.*, 279 S.W.3d 220, 224 (Mo.Ct.App.2009) (citing *Cupp v. Nat'l R.R. Passenger Corp.*, 138 S.W.3d 766, 772 (Mo.Ct.App.2004))). Thus, to prove the existence and scope of the duties owed by the Cardinals and the Chiefs, the Court will need to look no further than the common law upon which Plaintiffs rely.

---

[2] *See also Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 859 (1987)("Under the common law… the employer…owes employees a duty to exercise reasonable care in providing a safe workplace."); *Ballard v. Nat'l Football League Players Ass'n*, 123 F. Supp. 3d 1161 (E.D. Mo. 2015)("Under the common law, it is the employer that owes a duty to employees to exercise reasonable care in providing a safe workspace."). *See also Carman v. Wieland*, 406 S.W.3d 70, 76–77 (Mo.Ct.App.2013) (listing employer's non-delegable duties as including "1) to provide a safe workplace; 2) to provide safe equipment in the workplace; 3) to warn employees of the existence of dangers of which the employees could not reasonably be expected to be aware; 4) to provide a sufficient number of competent fellow employees; and 5) to promulgate and enforce rules governing employee conduct for the purpose of enhancing safety"). *See also Kline v. Sec. Guards, Inc.*, 386 F.3d 246 (3d Cir. 2004)(observing that in *Hechler*, the Supreme Court distinguished between duties owed by an employer, *which arise under the common law*, and those owed by a union, which do not); *Stellar v. Allied Signal, Inc.*, 98 F. Supp. 3d 790, 798 (E.D. Pa. 2015)("**The duty to provide a safe work environment preceded and exists independent of the CBAs**.")(emphasis added); *McNeal v. ArcelorMittal USA, Inc.*, 143 F.Supp.3d 241, 249 (E.D. Pa. 2015)("*McNeal I*")("[T]he duty at issue here—a parent company's duty to maintain a safe work environment for a subsidiary's employees—is a duty that precedes and stands independent of the CBA[.]"); *McNeal v. Arcelormittal USA, Inc., No*. CV 15-03517, 2015 WL 9489590, at *2 (E.D. Pa. Dec. 29, 2015)("*McNeal II*")("Plaintiffs may maintain their claim pursuant to an independent common law cause of action separate and apart from the CBA. That is sufficient to defeat Section 301 preemption.").

Defendants, however, assert that "Plaintiffs' negligence claims require Plaintiffs to establish that the Cardinals and Chiefs *assumed*, and then breached, a duty of care." (Opp. at 19 (emphasis added).) Defendants are mistaken. Plaintiffs claim that Defendants breached the common law, non-delegable duties imposed as a matter of law and arising from the employer-employee relationship. Plaintiffs' claims, therefore, *do not* require that they establish that the Cardinals and the Chiefs assumed a duty of care. In this regard, Plaintiffs' claims *are* an "outlier," as this Court has already intimated.[3] As compared to the claims asserted by the numerous other former NFL players in the consolidated opt-out actions that now comprise MDL 2323, Plaintiffs in the above-captioned cases can, *and do*, rely exclusively on the common law.

Defendants' misapprehension, whether intentional or not, is pervasive. Repeatedly throughout their opposition brief, Defendants conflate their own independent, common law duties with the duties hypothetically *assumed* by the National Football League (the "NFL") or the National Football League Players Association (the "NFLPA"). Indeed, Defendants repeatedly rely on *Atwater v. Nat'l Football League Players Ass'n*, 626 F.3d 1170 (11th Cir. 2010); *Ballard*, 123 F. Supp. 3d 1161; *Dent v. Nat'l Football League,* No. C 14-02324 WHA, 2014 WL 7205048 (N.D. Cal. Dec. 17, 2014); *Duerson v. Nat'l Football League, Inc*., No. 12 C 2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012); *Holmes v. Nat'l Football League*, 939 F. Supp. 517 (N.D. Tex. 1996); *Maxwell* v. *Nat'l Football League,* No. 11-cv-08394, Order (C.D. Cal. Dec. 8, 2011), *Smith v. Nat'l Football League Players Ass'n*, No. 4:14CV01559 ERW, 2014 WL 6776306 (E.D.

---

[3] *In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 392 n.46 (E.D. Pa. 2015), *amended* No. 12-MD-02323, 2015 WL 12827803 (E.D. Pa. May 8, 2015), *and aff'd* 821 F.3d 410 (3d Cir. 2016), *as amended* (May 2, 2016), *cert. denied* 137 S. Ct. 591 (2016), and *cert. denied* 137 S. Ct. 607 (2016).

3

Mo. Dec. 2, 2014); *Stringer* v. *Nat'l Football League*, 474 F. Supp. 2d 894 (S.D. Ohio 2007); and *Williams v. Nat'l Football League*, 582 F.3d 863 (8th Cir. 2009). However, each of the foregoing cases is clearly inapposite – in none do the players bring claims of negligence against their ***employer***. Yet, "[u]nder the common law…the ***employer***…owes employees a duty to exercise reasonable care in providing a safe workplace. *Hechler*, 481 U.S. at 859 (emphasis added). In *Ballard v. Nat'l Football League Players Ass'n*, 123 F. Supp. 3d 1161 (E.D. Mo. 2015), Judge Catherine D. Perry put it simply:

> Under the common law, it is the employer that owes a duty to employees to exercise reasonable care in providing a safe workspace. The employer's duty includes a duty to inform himself of those matters of scientific knowledge that relate to the hazards of his business and to relay that knowledge to his employees. The duty to provide safe a workplace does not extend to the employee's union, although the union may take on such a duty in a collective bargaining agreement.

123 F. Supp. 3d at 1169 (internal quotation and citations omitted).

The refusal by Defendants to acknowledge the critical distinction between the non-delegable, common law duties owed by each of them, as an employer, and those allegedly assumed by the NFL or the NFLPA, demonstrates the degree to which the Defendants depend on misapprehension and/or delusion in their opposition. For example, Defendants insist that the Court will need to determine whether the duties owed by team physicians might have had the effect of "reducing or perhaps replacing" the duties owed by teams, themselves.[4] This makes no

---

[4] Intent to avoid the nature of Plaintiffs' claims, Defendants rely for their assertion on *Givens v. Tennessee Football, Inc*., 684 F.Supp. 2d 985 (M.D. Tenn. 2010). However, *Givens* is inapposite. In *Givens,* the plaintiff alleged that the Tennessee Titans *performed its contractual obligations in bad faith* by withholding certain medical information regarding the Plaintiff's knee. *Id*., at 988. The court determined that since the contractual obligations of the team and its physicians were specifically set forth in the CBA, the claim could not be resolved without interpretation of the

sense. *First*, the workplace duties imposed by the common law may not be cast off or contracted away. *Charlton v. St. Louis & S.F.R. Co.*, 200 Mo. 413, 98 S.W. 529, 536 (1906). "It is the duty of the master to exercise reasonable care, commensurate with the nature of the business, to protect his servant from the hazards incident to it." *Id.* (quoting *Williams v. Railroad*, 119 Mo. 316, 24 S. W. 782; *Rodney v. Railroad*, 127 Mo. 676, 28 S. W. 887, 30 S. W. 150; *Herdler v. Buck's S. & R. Co.*, 136 Mo. 3, 37 S. W. 115). "This duty the law imposes on the master, *and will not allow him to cast it off. Charlton*, 98 S.W. at 536 (emphasis added). *These* common law duties *cannot* have been reduced or replaced by delegation to a team physician.

*Second*, under Missouri law, it is well established that the duties owed by an employer to its employees with respect to safety are *non-delegable. Peters v. Wady Indus., Inc.*, 489 S.W.3d 784, 795 (Mo. 2016)(citing *Edge v. Sw. Missouri Elec. Ry. Co.*, 206 Mo. 471, 104 S.W. 90, 97 (1907)). *See also A.T. v. Newark Corp.*, No. 4:16-CV-00448-SNLJ, 2017 WL 57251, at *3 (E.D. Mo. Jan. 5, 2017)(describing the duties owed by an employer to its employees with respect to safety as "nondelegable"); *Bender v. Kroger Grocery & Baking Co.*, 310 Mo. 488, 493, 276 S.W. 405, 406 (1925)("The duty of the master to exercise ordinary care to furnish his servant a reasonably safe place in which to work is one of the duties owing by the master to his servant, which cannot be delegated to a fellow servant so as to relieve the master from liability for the negligent performance by such servant of an act constituting part of such duty of the master.").

---

CBA. Indeed, the CBA specifically provided that the physician would advise the plaintiff of certain medical information. *Id.*, at 990. *Givens* is not applicable here. In the above-captioned cases, Plaintiffs do not allege the breach of the Clubs' *contractual* obligations; rather, they assert claims arising from the Defendants' breach of their non-delegable common law obligations. Thus, while the Court in *Givens* would necessarily have to interpret *the contract* to resolve the *contractual dispute*, this Court can resolve Plaintiffs' common law claims by relying solely upon the common law.

Thus, *even if* the CBAs expressly assigned to team physicians certain duties with respect to safety, it is of no consequence in determining the scope of the duties *owed by the Defendants*. *Newark Corp.*, 2017 WL 57251, at *3 ("Because an employer owes these nondelegable duties to its employees with respect to safety, even if an employer assigns the performance of those duties to an employee, the employer remains liable for any breach of such duties." (internal quotation omitted)).

*Third*, Defendants' argument that irrelevant provisions of the CBA could hypothetically "reduc[e] or *perhaps*" replace their non-delegable duties is insufficient as a matter of law. "[A]lleging a hypothetical connection between the [state law] claim and the terms of the CBA is not enough to preempt the claim: adjudication of the claim must require interpretation of a provision of the CBA." *Kline*, 386 F.3d at 256 (3d Cir. 2004)(*quoting Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001), as amended (Aug. 27, 2001)).

*Finally,* the team physicians are themselves agents or employees of the team. Thus, *even if* the CBAs required that team physicians perform some duty necessary for the maintenance of a safe working environment, the effect would not be to reduce or replace the duties owed by teams; rather, it would merely delineate who among the Defendants' agents is responsible for fulfilling certain of Defendants' non-delegable duties.

Unfazed by the senselessness of their assertions, Defendants continue with utter nonsense, urging that since the CBAs require that head trainers be certified by the National Athletic Trainers Association ("NATA"), the standard of care owed by the teams may be "shaped" by the degree to which the trainers are prepared to handle the risk of repetitive head impacts. (Opp. at 21.) Once more, the assertion is illogical and lacks credibility.

6

*First*, as shown above, since the duties owed by the Defendants with respect to safety are non-delegable and irrevocable, they may not be "shaped" by the degree to which *others* are capable of assuming the duties. *Newark Corp.*, 2017 WL 57251, at *3. *Second*, since head trainers are employees of the team, it is utter nonsense to argue that by assigning certain duties to the head trainer, the teams have relieved *themselves* of a duty.

As if to illustrate their misconception, Defendants cite *Maxwell* v. *Nat'l Football League,* No. 11-cv-08394, Order (C.D. Cal. Dec. 8, 2011), and *Stringer* v. *Nat'l Football League*, 474 F. Supp. 2d 894 (S.D. Ohio 2007), in support of their assertions. However, both *Maxwell* and *Stringer* involved claims *against the NFL*, <u>*not*</u> the players' employer. While the duties *assumed* by the NFL may very well be shaped by what the teams already knew, the same cannot logically be said of the teams, themselves. This distinction is repeatedly lost on the Defendants.

Still undeterred by absurdity, Defendants assert that since the CBAs establish a "Joint Committee on Player Safety and Welfare" for purposes of "discussing" player safety and welfare, "the scope of the Cardinals' and Chiefs' duties may be reduced[.]" Similarly, Defendants claim that since the CBA's provide players the opportunity to obtain a second medical opinion, to choose a surgeon, and to examine their medical records, the Court will need to interpret those provisions of the CBA to determine the scope of Clubs' duties. (Opp. at 21.) Defendants are obviously wrong. The establishment of a committee neither reduces nor eliminates the scope of the non-delegable duties owed by the Defendants. The same is true of rights granted to employees—it is nonsensical that the creation of a contemplative committee could reduce or eliminate the non-delegable, irrevocable duties owed by an employer as a matter of law.

In addition to the CBA provisions referred to above, Defendants also cite to numerous other provisions "relating to assessment, diagnosis, and treatment of player injuries," and others "relat[ing] to medical care," and still others "set[ting] forth the manner in which playing rules addressing or affecting player safety are promulgated and enforced." (Opp. at 7-10.) However, Defendants do no more than claim the *possibility* of a tangential need to consult these provisions in the CBAs. The Eighth Circuit, however, requires more. Like the Third Circuit, the Eighth Circuit has said that the plaintiffs' claims "must require *the interpretation* of some *specific provision* of a CBA; it is not enough that the events in question took place in the workplace or that a CBA creates rights and duties similar or identical to those on which the state-law claim is based." *Markham v. Wertin*, 861 F.3d 748, 755 (8th Cir. 2017)(quoting *Meyer v. Schnucks Markets, Inc.*, 163 F.3d 1048, 1051 (8th Cir. 1998)(emphases added).

Moreover, *even assuming* the need to consult the CBAs, "[w]hen the meaning of contract terms is not the subject of dispute, mere reference to or consultation of a CBA plainly does not require the claim to be extinguished." *Markham*, 861 F.3d at 755 (internal quotations and brackets omitted) (citing *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994)); *Gore v. Trans World Airlines*, 210 F.3d 944, 949 (8th Cir. 2000) ("mere need to reference or consult a collective bargaining agreement during the course of state court litigation does not require preemption"). *See also, e.g., Al-Mumin v. Loraine*, No. 4:17 CV 1226 CDP, 2017 WL 4617075, at *3 (E.D. Mo. Oct. 16, 2017)(stating that the mere need to reference a CBA is insufficient to confer federal jurisdiction and that a provision relied upon for federal jurisdiction must actually be "the subject of dispute"); *Enslin v. Coca-Cola Co.*, No. 2:14-CV-06476, 2017 WL 1190979, at *3 (E.D. Pa. Mar. 31, 2017), *reconsideration denied*, No. 2:14-CV-06476, 2017 WL 3727033 (E.D. Pa. Aug.

8

30, 2017)("The mere fact that a CBA may need to be consulted to resolve a state-law claim does not lead to preemption, as long as the meaning of the applicable portion of the CBA is not in dispute."). Thus, unless there is an *actual dispute* as to the meaning of a CBA, the resolution of which is *necessary* to establish the elements of the Plaintiffs' claims, Plaintiffs must be allowed to pursue their state-based claims in their chosen forum.

Defendants, however, do not even urge the existence of an actual interpretive dispute. Indeed, though Defendants have had *years* to draft a response to Plaintiffs' Motions to Remand, Defendants have not identified a *single* provision that is the subject of an actual dispute.[5] Accordingly, Defendants have failed to establish this Court's jurisdiction over Plaintiffs' claims.

**B.**

Though Defendants make repeated assertions about the need to interpret the CBAs in order to determine the duties that they *might* have "assumed," the crux of their argument is that through the CBAs, they may have cast off or contracted away their non-delegable and irrevocable duties. According to Defendants, since the CBAs might reveal a reason why Plaintiffs should not recover, the Court must consult the CBAs to determine whether they should be absolved of liability.

This, however, is no reason to deny remand. To the extent Defendants hypothesize that the CBAs eliminate, reduce or establish a standard less stringent than would otherwise be applied under the common law, the terms of the CBAs operate as a *defense* to liability, since the CBAs would be a "reason why the plaintiff should not recover." *See* DEFENSE, *Black's Law*

---

[5] Contrary to their assertion, Defendants *are required* to point to a specific provision which *must* be interpreted. *Williams v. Nat'l Football League*, 582 F.3d 863, 877 (8th Cir. 2009)(noting the failure by the NFL to "point to a specific provision" of the CBA "which must be interpreted").

*Dictionary* (9th ed.2009) (quoting Edwin E. Bryant, *The Law of Pleading Under the Codes of Civil Procedure* 240 (2d ed. 1899)). *See also Green v. Arizona Cardinals Football Club LLC*, 21 F. Supp. 3d 1020, 1029 (E.D. Mo. 2014). However, for purposes of establishing complete preemption, a dispute over the meaning of a provision in the CBAs *may not* be introduced by a defendant's defense. *See Green*, 21 F. Supp. 3d at 1029; *Enslin*, No. 2:14-CV-06476, 2017 WL 1190979, at *3 ("Nor is preemption warranted if a dispute over the meaning of a CBA is introduced into the case by a defendant's defense, rather than by the elements of the plaintiff's state-law claim." (citing *Caterpillar Inc., et al. v. Williams, et al.*, 482 U.S. 386, 399 (1987); *Markham*, 861 F.3d at 757 (holding that references to a CBA for purposes of defending against a claim is not enough to confer federal jurisdiction on the ground of complete preemption); *Taylor v. Cottrell*, 995 F. Supp. 2d 1052, 1056 (E.D. Mo. 2014)(noting that the Eighth Circuit follows a "narrower approach" to complete preemption and that defenses to liability are not relevant to a § 301 analysis; *Bush v. St. Louis Reg'l Convention*, No. 4:16CV250 JCH, 2016 WL 3125869, at *2, fn. 4 (E.D. Mo. June 3, 2016)("The Court must be careful to ensure that interpretation of the CBA is required by Plaintiff's claims themselves, and not by a defense injected by Defendant."); *Medlin v. Boeing Vertol Co.*, 620 F.2d 957, 963 (3d Cir. 1980)("It is well settled that the existence of a federal defense to a nonfederal claim is insufficient to satisfy the "arising under" requirement."). "Complete preemption is determined by an analysis of the state-law claim—not a defense to it." *Palmer v. Kraft Foods Glob., Inc.*, No. CIV.A. 13-6260, 2014 WL 317876, at *3 (E.D. Pa. Jan. 29, 2014).

Thus, *even if* the Court were to accept the Defendants' assertions (which it shouldn't), the Court must still remand Plaintiffs' negligence claims.

10

**C.**

Finally, for purposes of establishing federal jurisdiction, it does not suffice "that the facts alleged in support of an asserted state-law claim *do not support* a state-law claim and would *only* support a federal claim." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 12 (2003)(Scalia, J., dissenting)(emphasis in the original). "Jurisdiction may not be sustained on a theory that the plaintiff has not advanced," *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 809, n. 6 (1986), and "allusions to claims that [Plaintiffs] *could have raised*—but did not—are irrelevant" *Palmer*, No. CIV.A. 13-6260, 2014 WL 317876, at *4 (emphasis added). Thus, to the extent that Defendants assert that the duties alleged do not extend beyond the period of Plaintiffs' employment, they have no more than advanced a defense to liability. They have not established federal jurisdiction. *Id.*

**D.**

In sum, though Defendants have had *years* to draft a response to Plaintiffs' Motions to Remand, they are still unable to intelligibly articulate why it would be necessary for the Court to interpret any specific provisions of a CBA to resolve Plaintiffs' negligence claims. The reason for this is plain – it is ***not*** necessary for the Court to interpret the CBAs to resolve Plaintiffs' negligence claims. Therefore, this Court must finally remand Plaintiffs' claims.

**II.    Resolution of Plaintiffs' Negligent Misrepresentation and Fraudulent Concealment/Misrepresentation Claims do Not Substantially Depend Upon the Interpretation of the Terms of the CBAs**

An employer's nondelegable, common law duty "includes a duty 'to inform himself of those matters of scientific knowledge' that relate to the hazards of his business and to relay that knowledge to his employees." *Ballard*, 123 F. Supp. 3d at 1170 (quoting *Marsanick v. Luechtefeld*, 157 S.W.2d 537, 541 (Mo.Ct.App.1942)). The duty to warn is one of an employer's

11

non-delegable duties. *Green*, 21 F. Supp. 3d at 1030. "An employee, in turn, has the right to rely on any absence of warning as a tacit assurance that no unusual danger exists. *Id.* (quotation omitted).

The Eighth Circuit has explained that because the torts of fraudulent concealment and negligent misrepresentation "arise in state common law and are measured by standards of conduct and responsibility completely separate from and independent of a collective bargaining agreement," they are not preempted by § 301. *Anderson v. Ford Motor Co*., 803 F.2d 953, 959 (8th Cir.1986), *cert. denied*, 483 U.S. 1011, 107 S.Ct. 3242 (1987) ("Fraud is a common law tort action deeply rooted in local standards of individual and social responsibility. […] [A] claim of fraud does not derive from nor depend upon an underlying contract.").[6] This is especially true here, since the duties are rooted in the common law duty to provide a safe workplace.

Nevertheless, unwilling to concede defeat in the face of controlling law, Defendants assert that to prove the element of reliance, Plaintiffs will necessarily implicate the CBAs. Defendants are wrong. In Missouri, a duty of disclosure provides a substitute for reliance. *Green*, 21 F. Supp. 3d at 1029 (citing *Lafarge N. Am., Inc. v. Discovery Group LLC*, 574 F.3d 973, 983 n. 5 (8th Cir.2009)); *McKay v. GMAC Mortg., LLC*, No. 4:10CV507 CDP, 2010 WL 2518590, at *1 (E.D. Mo. June 14, 2010)("Silence or nondisclosure of a material fact can be an act of fraud if there exists a duty to disclose."); *Dobbins v. Kramer*, 780 S.W.2d 717, 718 (Mo. Ct. App.

---

[6] *See also Jurevicius*, 1:09 CV 1803, 2010 WL 8461220 (holding that the elements of fraud can be proven without reference or interpretation of a CBA); *Foy v. Pratt & Whitney Grp.,* 127 F.3d 229, 233 (2d Cir. 1997) (holding that knowledge that a statement is false involves purely factual considerations and rejecting employer's argument that interpretation of CBA is necessary to prove justifiable reliance); *Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401, 1408 (9th Cir. 1991) (same).

1989)("Just as if accomplished by an affirmative misrepresentation, concealment of a material fact where a duty to disclose such fact exists, constitutes fraud."). Since Defendants were Plaintiffs' *employers*, a fact they are seemingly incapable of accepting, they owed a common law non-delegable duty of disclosure. Thus, Plaintiffs *do not* need to prove the element of reliance.[7] Indeed, since Plaintiffs' fraudulent concealment and negligent misrepresentation claims are founded upon the same common law duties described above, the analysis above applies with equal force to Plaintiffs' fraudulent concealment and negligent misrepresentation claims. Just as it makes no sense that Defendants could have eliminated a non-delegable duty by delegating it to a team physician, it is equally nonsensical to assert that Plaintiffs' "right to rely" was eliminated by the delegation of disclosure duties to a team employee. The non-delegable duty of disclosure remained with the Defendants, and the "right to rely" remained with the Plaintiffs.

Therefore, Defendants have failed to demonstrate the need to interpret a CBA in order to resolve Plaintiffs' fraudulent concealment and negligent misrepresentation claims and, accordingly, this Court must finally order remand.

---

[7] Unmoved by their status as Plaintiffs' employers and with the law of Missouri, Defendants cite *Williams v. Nat'l Football League*, 582 F.3d 863 (8th Cir. 2009), in support of their assertion that Plaintiffs' fraud and misrepresentation claims require the interpretation of a CBA. (Opp. at 26-27.) In *Williams,* however, the plaintiffs—two Minnesota Vikings players—brought claims against *the NFL* premised upon Minnesota law. *Williams* is therefore inapposite. Still, *Williams* is instructive. It states, for example, that when a CBA provides protections to an employee that are similar to those existing under independent state-based obligations, an employee may choose to vindicate their interests by means of *either* an action brought under state law *or* under contract. *Id.* at 875. Moreover, it states in order to resolve a claim premised on independent state-based obligations, a court will have no need to consult a CBA to resolve the claim; rather, it will compare the facts and the procedures followed with those mandated by the State. *Id.* Finally, *Williams* states that an otherwise independent claim "will not be preempted if the CBA need only be consulted during its adjudication." *Id.* at 876 (quotation omitted).

III.    **Plaintiffs' Claims** *do Not* **Arise Under the CBAs**

Unable to credibly identify a real need to interpret any particular provision of a CBA, Defendants insist that Plaintiffs' claims are "premised on rights and obligations that arise out of the CBAs." (Opp. at 29) Defendants are wrong once again. Plaintiffs' claims are clearly and indisputably premised on the common law duties incumbent upon all employers to maintain a safe working environment, not to expose employees to unreasonable risks of harm, and to warn employees about the existence of dangers of which they could not reasonably be expected to be aware. And, although *additional*, or even identical duties might also arise under a CBA, "employees have the option of vindicating their interests by means of either a section 301 action or an action brought under state law, as long as the state-law action as-pleaded does not require interpretation of the collective bargaining contract." *Voilas v. Gen. Motors Corp*., 170 F.3d 367, 373–74 (3d Cir.1999); *Kline*, 386 F.3d at 253 (internal quotation and citation omitted); *Lambert v. Highlands Hosp*., No. 2:12-CV-733, 2012 WL 4762197, at *2 (W.D. Pa. Oct. 5, 2012)(same).[8]

Try as they might, Defendants may not ignore the facts presented by plaintiffs, along with their legal characterizations of those facts, in an attempt to create the prerequisites to removal. *Caterpillar*, 482 U.S. at 398. Simply put, "the plaintiff is the master of the complaint, [] a federal question must appear on the face of the complaint, and [] the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Id.,* at 398-99.

---

[8] *See also New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 305-06 (3d Cir. 2014)(observing that when a state law claim exists independent of a CBA, the state law claim is not preempted by § 301); *DiPilato v. Commonwealth Ass'n of Sch. Administrators, Local 502*, 588 F. Supp. 2d 631, 634 (E.D. Pa. 2008) (Brody, J.) ("[T]he *Caterpillar* Court held that the claims in that case were not completely preempted because, even though respondents could have brought suit under the collective agreement, they chose not to.").

14

In this case, Plaintiffs have clearly chosen to vindicate their interests by means of an action brought under state law. *See e.g.*, Second Am. Pet. ¶¶ 13, 21-22, 27 *Smith v. Cardinals* ("This is an action requesting relief solely under the common and statutory laws of the State of Missouri."). Plaintiffs' claims do not even "plausibly" require the interpretation of a CBA. Thus, their claims must be remanded.

## IV.   The *Green* Remand Decision was *Not* Wrong or Inapplicable

### A.

Defendants contend that the *Green* remand decision was wrongly decided because it misapplied the Eight Circuit's decision in *Gore v. Trans World Airlines*, 210 F.3d 944, 949 (8th Cir.2000). Defendants are wrong.

*First*, *Gore* is completely inapposite. It did not involve a challenge to the court's subject-matter jurisdiction, which would have required the application of the *higher* standard applicable to complete preemption, and it was not premised upon the non-delegable, common law duty to provide a safe workplace. Indeed, the plaintiff in *Gore* was himself a threat to workplace safety, having made death threats against his coworkers. Thus, when Gore sued his employer, he did *not* allege the breach of the employer's common law duty to provide a safe workplace; rather, he brought claims against his employer for false arrest, libel and slander, invasion of privacy, and negligence. *Id.* at 949-950. Thus, *Gore* did not address the complete preemption question raised in Plaintiffs' Motions to Remand.

*Second*, *Gore* is completely unlike Plaintiffs' cases. Since a claim for false arrest requires proof of confinement *without justification*, the court in *Gore had* to interpret the relative rights and duties of the parties contained within the collective bargaining agreement, since the CBA specifically required that Gore's employer promptly investigate and resolve threats to workplace

15

safety. *Id.* at 950. Likewise, since Gore's libel and slander claims required "fault," it was *necessary* for the court to interpret the CBA in order to resolve whether Gore had adequately pled the elements of his claim. *Id.* at 950-51. As for his negligence claim, Gore asserted that his employer was negligent in the manner in which it investigated his death threats. *Id.* at 951. However, the *right* of his employer to investigate his death threats was specifically included in the CBA. Thus, the court would have to interpret the CBA in order to determine whether the investigation complied with the bargained-for agreement. Finally, as for the violation of his right to privacy, Gore was required to show that the search of his belongings was unreasonable. However, the *right* to search his belongings was included in the CBA. Thus, as for all of Gore's claims, the court would *have* to interpret the CBA in order to resolve the additional rights and obligations agreed to by the parties.

The court's conclusion in *Gore* is as unsurprising and unremarkable as it is inapplicable. So, too, was its observation that employers and employees are free to negotiate what actions an employer may take to preserve the safety and security of the workplace. It is a fundamental precept of labor law that employers and employees may negotiate what actions an employer may take to preserve the safety and security of the workplace. This is not in dispute. Plaintiffs concede that an employer and employees are free to put in writing that which an employer may do (e.g., search lockers, detain those making death threats, and ban those perceived to be dangerous to other employees). Employers *may not*, however, cast off or negotiate away the actions they *must take. Charlton*, 98 S.W. at 536. *See McKnight v. Dresser, Inc.*, 676 F.3d 426, 432 fn. 4 (5th Cir. 2012)(noting that although employers bargain for health and safety provisions

16

in a CBA, that does not mean that a state may not also grant employees independent, non-negotiable state law rights and forbid employers from bargaining those rights away).

In Missouri, an employer *must* "exercise reasonable care, commensurate with the nature of the business, to protect his servant from the hazards incident to it." *Id.* Significantly, "[t]his duty the law imposes on the master, and will not allow him to cast it off." *Id. See also Blanton v. Dold*, 109 Mo. 64, 18 S.W. 1149, 1151 (1892)("An express contract, in most solemn form, by an employe[e], exempting his master from liability for negligence in the performance of his personal duties towards the former, has been often declared in American courts illegal, its subject-matter being considered as contrary to a sound public policy."). [9] Thus, though an employer may negotiate what actions they *may* take to preserve a safe workplace, any such negotiation will invariably consist only of duties *in addition* to those required by the common law.

More to the point, while employers are free to negotiate what actions they may take to preserve the safety of the workplace, employees are free to eschew claims based on the contract by relying solely upon the common law duties that precede and exist entirely independent of a CBA. *Caterpillar*, 482 U.S. at 399("[T]he plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court.). In *Gore*, the plaintiff did not eschew claims

---

[9] Missouri's Workers' Compensation Law was adopted by the legislature in 1925, approved by the voters of Missouri in 1926, and became effective in 1927. *See Bethel v. Sunlight Janitor Service,* 551 S.W.2d 616, 618 (Mo.1977); *Wengler v. Druggists Mut. Ins. Co.,* 583 S.W.2d 162, 164 (Mo.1979). The pre-2005 exclusivity of the workers' compensation administrative remedy effectively silenced expression by Missouri courts of the non-negotiable nature of the duties owed by employers. Thus, though the case law describing the nature of the common law duties owed by an employer in the State of Missouri are dated, they are no less precedential.

based on the CBA; indeed, he alleged duties arising from the CBA.

The Eight Circuit also recently underscored the point that § 301 cannot be read to preempt rights conferred on individual employees as a matter of state law, and stressed that it is the legal character of a claim as "independent" of rights under CBA that decides whether a state cause of action may go forward. *Markham*, 861 F.3d at 755 (citing *Livadas v. Bradshaw*, 512 U.S. 107, 123-24, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994) (internal citations omitted). Even where a claim requires the court "to refer to or to consult a CBA and related standards, it is not substantially dependent thereon" so long as it is based on rights established outside the CBA. *Id.* To the extent *Gore* suggests otherwise, the Eighth Circuit's more recent decision in *Markham* is controlling and is proof that *Green* was properly decided.

Finally, Defendants are completely wrong that the Court will have to interpret the CBAs to determine the "reasonableness" of their actions. In *Duerson*, the court observed that to the extent the teams owed a duty to warn, the NFL's failure to warn could theoretically be "reasonable." *Duerson*, 2012 WL 1658353 *4 (cited be Defendants at pp. 33-34 of their Opposition). Apart from being a defense to liability which, in both the Third and Eighth Circuits is *not* a basis upon which to assert jurisdiction, *Duerson* is completely inapplicable here. The "reasonableness" of the NFL's actions may very well depend on the duties delegated to others in the CBA. The same *cannot* be said, however, of the Defendants' actions. The jury will measure the reasonableness of their actions against the standards that apply to *all* employers in the State of Missouri. Indeed, as Judge Catherine D. Perry observed in *Green*, since "[t]he reasonableness of the [Defendants'] actions towards [Edward] Scott cannot depend upon an interpretation of a CBA, as Scott was never bound by the contract. It stands to reason, then, that the other plaintiffs'

18

negligence claims do not necessarily depend upon an interpretation of the CBAs, so far as the duties owed them and the standards applied to their claims derive from the same source as for Scott." *Green*, 21 F. Supp. 3d at 1028–29.[10]

## B.

Defendants insist that since the Cardinals Plaintiffs amended their petition after remand, the decision in *Green* is no longer applicable. Defendants are wrong. As the Cardinals Plaintiffs made plain in their Motion for Remand, Judge Catherine D. Perry ruled that Plaintiffs could not limit their claims to the gap period. *Green*, 21 F. Supp. 3d at 1026-27. Thus, when she decided their Motion to Remand, the Cardinals Plaintiffs' claims extended "months, years, or even

---

[10] Defendants also cite *Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495 (7th Cir.1996). However, in *Atchley*, the employer delinquently paid wage increases that *required by the CBA*. *See* 101 F.3d at 497. Although an Indiana wage payment statute created the penalty for failure to pay wages within 10 days of when due, the CBA described the circumstances under which the increases became due. Thus, the court would have to interpret the CBA to determine whether plaintiff made a *prima facie* case. *See id*. at 497–98. Accordingly, the case was preempted. In this case, on the other hand, the Court does *not* have to interpret the CBAs to determine whether Plaintiffs' have alleged the elements of their claims. The Court will rely solely upon the common law.

*Reece v. Houston Lighting & Power Co.*, 79 F.3d 485 (5th Cir. 1996), is even more of a stretch. In *Reece*, the plaintiff asserted discrimination and a claim for intentional infliction of emotional distress premised on his promotion, seniority and assignment to training programs. *See id.* at 487. The Fifth Circuit held that the interpretation of the CBA would be made "necessary by the employer defense." *Id.* (internal quotation omitted). However, this is precisely the kind of reasoning that the Eight and Third Circuits forbid. *Markham*, 861 F.3d at 757 (holding that references to a CBA for purposes of defending against a claim is not enough to confer federal jurisdiction on the ground of complete preemption); *Cottrell*, 995 F. Supp. 2d at 1056 (noting that the Eighth Circuit follows a "narrower approach" to complete preemption and that defenses to liability are not relevant to a § 301 analysis); *Bush* No. 4:16CV250 JCH, 2016 WL 3125869, at *2, fn. 4 ("The Court must be careful to ensure that interpretation of the CBA is required by Plaintiff's claims themselves, and not by a defense injected by Defendant."); *Medlin*, 620 F.2d at 963 ("It is well settled that the existence of a federal defense to a nonfederal claim is insufficient to satisfy the "arising under" requirement."). Thus, neither *Atchley* nor *Reece* support the position of the Defendants.

decades" beyond the period of their employment. *Id.* at 1026. Indifferent to the facts and undeterred by the law, Defendants urge this Court to simply reject the law of the case doctrine and to ignore the principle of comity.

Moreover, by continuing to insist that the Cardinals Plaintiffs alleged, *for the first time*, post-employment wrongdoing in their Second Amended Petition, Defendants mislead about the Plaintiffs' First Amended Petition. It is clear on the face of the First Amended Petition that Plaintiffs alleged post-employment wrongdoing. Indeed, at paragraph 46, Plaintiffs alleged that the Cardinals "had or should have had knowledge of studies that demonstrated a positive link between repetitive head trauma and neurological diseases" in the 1920s through the 1990s and that "[d]uring those decades, Defendant's knowledge about the hazards of repetitive head trauma continued to accumulate, yet Defendant failed to warn Plaintiffs about those hazards."[11]

In sum, it is simply untrue that Plaintiffs materially altered their claims after the remand decision in *Green*. This Court, therefore, *must* consider the law of the case doctrine and the principle of comity in ruling upon the Cardinal's Plaintiffs' Motion to Remand. Since the issue presented here was decided by a federal court of coordinate status in an earlier decision, the doctrine of law of the case forecloses reconsideration of this issue by this Court. *Hayman Cash Register Co. v. Sarokin,* 669 F.2d 162, 165 (3d Cir.1982)(holding that adherence to the law of the case doctrine is *particularly important* and applicable in multidistrict litigation). Accordingly, this Court should affirm the decision in *Green* and remand the above-captioned cases forthwith.

---

[11] Plaintiffs' First Amended Petition, Case No. 4:14-cv-00461, ECF No. 1-4, ¶¶ 46.

**V.      Third Circuit Authority is Pertinent and Persuasive**

Though binding on this Court, Defendants dismiss *Kline v. Security Guards, Inc.*, 386 F.3d 246 (3d Cir. 2004), as inapposite. However, Defendants say no more of *Kline* than to suggest that, contrary to *Kline*, they do not have to identify a "substantial dispute over the meaning" of a provision in the CBAs. (Opp. at 36) Defendants are wrong. The Eighth Circuit recently affirmed that unless the meaning of "some specific provision of a CBA" is "the subject of dispute," mere reference to or consultation of a CBA "plainly does not require the claim to be extinguished." *Markham*, 861 F.3d at 755 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994)). It is not enough, the Eight Circuit declared, "that a CBA creates rights and duties similar or identical to those on which the state-law claim is based." *Id.* Rather, the dispositive question here, under both Eighth and Third Circuit law, is whether Plaintiffs' state-based common law claims require the *interpretation* of a provision of the CBA. *See Kline*, 386 F.3d at 256.

As the Defendants make plain by their continuing failure to identify a single provision about which there is a substantial dispute in need of interpretation, Plaintiffs' state-based common law claims ***do not*** require the *interpretation* of any provisions of the CBA. *Kline*, moreover, is binding and pertinent. It stands for the well-established rule that under the common law, it is the *employer*, not a labor union, that owes employees a duty to exercise reasonable care in providing a safe workplace." *Id.* at 261 (quoting *Hechler*, 481 U.S. at 859)(emphasis in the original). Since the appellants in *Kline* had sued their *employer*, the duties invoked were *not* founded upon rights created by the CBA; rather, they were founded upon rights created by state law. *Id.* at 261. Thus, "no consultation with the CBA [wa]s necessary in order to define the scope of the duties[.]" Whatever duties the employer breached, the Third Circuit held, "those duties are

independent of the CBA." *Id.* In short, *Kline* affirms that claims based upon the common law duty to provide a safe workplace are not removable to federal court under § 301.

As for *Stellar v. Allied Signal, Inc.*, 98 F.Supp.3d 790 (E.D. Pa. 2015), and *McNeal v. ArcelorMittal USA, Inc*., 143 F.Supp.3d 241, 249 (E.D. Pa. 2015), Defendants urge that the cases "concede that '[w]hen an independent common law duty exists, a court *may still find* Section 301 preemption if the collective-bargaining agreement modifies that duty in any way." (Opp. at 37, quoting *McNeal*, 143 F.Supp.3d at 250 (emphasis added by Defendants)) However, this is purposefully misleading. The quote continues:

> *Even if* Defendants were able to identify a section of the CBA that altered the common law, that is still not dispositive of Section 301 preemption: "employees have the option of vindicating their interests by means of either a section 301 action or an action brought under state law, as long as the state-law action as-pleaded does not require interpretation of the collective bargaining contract." *Voilas v. Gen. Motors Corp*., 170 F.3d 367, 373–74 (3d Cir.1999) (emphasis added).

*Id.*

Here, Plaintiffs' claims ***do not*** call for an interpretation of a CBA. Nor do the petitions attempt to relabel contract claims as common law tort claims. Rather, the claims are based on independent, state-based, common law causes of action. Thus, *Stellar* and *McNeal* are both applicable and persuasive.

The Defendants also assert that the Plaintiffs have waived their rights under the common law because their bargaining representative agreed to grievance procedures involving disputes over the "terms and conditions of employment" and with respect to claims "relating to conduct permitted by [the CBAs]." Apart from being inapplicable, rights existing independent of the

CBAs cannot be waived or altered in a CBA. *Williams v. Nat'l Football League*, 582 F.3d at 880

. Thus, the assertion is wholly without merit.

So, too, is Defendants' reliance on *Espinoza v. Cargill Meat Sols. Corp.*, 622 F.3d 432

(5th Cir. 2010). In *Espinoza*, the court "found it significant that Espinoza had waived her state

law claims, as Texas law allows." *McKnight*, 676 F.3d at 432. Unlike Texas, Missouri not only

places a duty on employers to provide a safe work environment, it forbids the waiver of that duty

in a CBA. See *Williams*, 582 F.3d at 880. In other words, Missouri workplace safety claims are

based on precisely the type of independent, non-negotiable state law rights and obligations which

the Supreme Court excepted from § 301 preemption.

## VI.    Plaintiffs' Claims are Not Removable under 28 U.S.C. 1445(c)

Defendants contend that Plaintiffs' claims are removable under 28 U.S.C. 1445(c) since

they are completely preempted. (Opp. at p. 40.) The analysis above proves otherwise. Defendants

also maintain that Plaintiffs' claims do not arise under Missouri's Workers' Compensation Law.

(*Id.*) Defendants are wrong.

Without doubt, Plaintiffs' claims arise under Missouri Workers' Compensation Law.

Plaintiffs' claims allege that they contracted an occupational disease in the State of Missouri

while employed by Defendants and/or contracted an occupational disease outside the State of

Missouri while under contract of employment made in Missouri. Missouri's Workers'

Compensation Law unambiguously states that such claims necessarily arise out of Missouri

Workers' Compensation Law. In relevant part, section 287.110(2), entitled "Scope of chapter as

to injuries and diseases covered," provides:

> This chapter ***shall apply*** to ***all*** injuries received and ***occupational diseases***
> contracted in this state, regardless of where the contract of employment was made,
> and also to ***all*** injuries received and *occupational diseases* contracted outside of

> this state under contract of employment made in this state, unless the contract of employment in any case shall otherwise provide, and also to ***all*** injuries received and ***occupational diseases*** contracted outside of this state where the employee's employment was principally localized in this state within thirteen calendar weeks of the injury or diagnosis of the occupational disease.

R.S.Mo. 287.110(2) (emphasis added). [12] Missouri courts have expressly endorsed that *all* occupational disease claims arise out of Missouri's Workers' Compensation Law. *See e.g., Amesquita v. Gilster-Mary Lee Corp.*, 408 S.W.3d 293, 301 (Mo. Ct. App. 2013) ("Section 287.110 broadly states that: 'This chapter shall apply to all injuries received *and occupational diseases* contracted in this state....' ") (emphasis in the original); *State ex rel. KCP & L Greater Missouri Operations Co. v. Cook*, 353 S.W.3d 14, 28-29 (Mo. Ct. App. 2011)(observing that "repeat-exposure occupational disease claims are covered by and compensable under the Act"). *See also Francis v. Noranda Aluminum, Inc.*, 1:12CV0104 JAR, 2013 WL 1090300 (E.D. Mo. Mar. 15, 2013) (observing that the Missouri legislature "expand[ed] the remedies available to victims of occupational injuries and allow[s] them to pursue their claims in circuit court.").

> Section 1445(c) clearly states:
>
> … a civil action in any State ***arising under the workmen's compensation laws of such State*** <u>***may not be removed***</u> to any district court of the United States.

*See* 28 U.S.C. §1445(c) (emphases added). Since Plaintiffs' claims arise under Missouri Workers' Compensation Law, they are "nonremovable." 28.U.S.C. §1445(c). Plaintiffs concede, however, that since the Missouri's Workers' Compensation Law does not provide the exclusive remedy for their claims, they seek recompense for their injuries through the circuit court.

---

[12] All statutory references, in this section, are to RSMo. 2005.

**VII.    The Cardinals Plaintiffs' are Entitled to Costs and Attorneys' Fees**

The Cardinals Plaintiffs have clearly demonstrated the utter futility of, and the objectively unreasonable basis for, the Cardinals' successive removal. Thus, Plaintiffs should be awarded costs and attorneys' fees.

<u>**CONCLUSION**</u>

For the reasons provided herein, Plaintiffs respectfully request that the Court enter an order remanding the case and requiring that Defendant pay just costs and actual expenses, including attorney fees, in accordance with 28 U.S.C. § 1447(c).

Respectfully submitted on Friday, December 8, 2017.

THE KLAMANN LAW FIRM, P.A.

  /s/ Andrew Schermerhorn
John M. Klamann, MO        #29335
Andrew Schermerhorn, MO  #62101
Paul D. Anderson, MO        #65354
4435 Main Street, Ste. 150
Kansas City, MO 64111
Telephone: (816) 421-2626
Facsimile: (816) 421-8686
jklamann@klamannlaw.com
ajs@klamannlaw.com
panderson@klamannlaw.com

Kenneth B. McClain, MO      #32430
HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 West Lexington, Suite 400
Independence, MO 64051
Telephone: (816) 836-5050
Facsimile: (816) 836-8966
kbm@hfmlegal.com
lem@hfmlegal.com
tjk@hfmlegal.com

Wm. Dirk Vandever, MO      #24463
THE POPHAM LAW FIRM, P.C.
712 Broadway, Suite 100

25

Kansas City, MO 64105
Telephone: (816) 221-2288
Facsimile: (816) 221-3999
dvandever@pophamlaw.com

**ATTORNEYS FOR PLAINTIFFS**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on Friday, December 8, 2017, I caused the foregoing to be filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel of record.

/s/ <u>*Andrew Schermerhorn*</u>
Andrew Schermerhorn, MO

27