# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 12-md-2323 (AB) MDL No. 2323 |
| THIS DOCUMENT RELATES TO: Seau, et al. v. National Football League et al., No. 13-cv-01531-AB | Hon. Anita Brody |

## SEAU FAMILY'S OPPOSITION TO DEFENDANTS NATIONAL FOOTBALL LEAGUE'S AND NFL PROPERTIES LLC'S MOTION TO DISMISS SECOND AMENDED MASTER ADMINISTRATIVE COMPLAINT ON PREEMPTION GROUNDS

**Table of Contents**

**Page**

I.      INTRODUCTION ................................................................................ 1

II.     STATEMENT OF FACTS ................................................................... 2

III.    ARGUMENT ...................................................................................... 3

        A.      The Seau Children's Independent Claims for Wrongful Death Are Not
                Preempted. ............................................................................... 3

                1.      Preemption is Not a Defense to the Seau Children's Claims
                        Because the Children are Not Parties to the CBA and Preemption
                        Would Deny Them Any Forum for Relief. ................................. 4

                2.      Even if a Preemption Defense Could Apply to Claims Brought by
                        Non-signatories like the Seau Children, their Wrongful Death
                        Claims Are Not Preempted. ..................................................... 8

                        a.      Independent Statutory Claims, like the Seau Children's for
                                Wrongful Death, Are Protected from Preemption. ................ 8

                        b.      Dismissal of the Seau Children's Claims Is Also Improper
                                Because It Does Not Serve Any LMRA Policy. ...................... 13

        B.      Junior Seau's Claims Are Not Preempted. ..................................... 14

        C.      The Seau Family's Action Must be Remanded. ............................... 19

IV.     CONCLUSION ................................................................................. 19

**Table of Authorities**

**Page(s)**

**Cases**

*Adkins v. General Motors Corp.*,
    556 F. Supp. 452 (S.D. Ohio 1983) ........................................................................5

*Allis–Chalmers Corp. v. Lueck*,
    471 U.S. 202 (1985)..................................................................................4, 9, 12

*American Needle, Inc. v. National Football League*,
    130 S. Ct. 2201 (2010)..................................................................................17

*AT&T Technologies, Inc. v. Communications Workers*,
    475 US 643 (1986)........................................................................................13

*Atwater v. Nat'l Football League Players' Ass'n*,
    6326 F.3d 1170 (11th Cir. 2010) ...............................................................5

*Avco Corp. v. Machinists*,
    390 US 557 (1968)...........................................................................................7

*Brown v. Holiday Stationstores, Inc.*,
    723 F. Supp. 396 (D. Minn. 1989).............................................................14

*Butts v. Lane*,
    No. C-95-01849 MHP, 1996 WL 163000 (N.D. Cal. March 11, 1996) ...................................6

*Chipman v. Nelson*,
    No. 11-cv-2770, 2016 WL 4943843 (E.D. Cal. Sept. 15, 2016) ............................................12

*Daniels v. Sunrise Senior Living, Inc.*,
    212 Cal. App. 4th 674 (2013) ......................................................................9

*Delgado v. Trax Bar & Grill*,
    36 Cal. 4th 224 (2005) ................................................................................16

*Duerson v. Nat'l Football League*,
    No. 12-c-2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012)...........................................17, 18

*Eriksson v. Nunnink*,
    233 Cal. App. 4th 708 (2015) ......................................................................9

*Fagundes v. GTE California Inc.*,
    No. C95-1130 FMS, 1995 WL 295828 (N.D. Cal. May 8, 1995) ...........................................6

**Table of Authorities**
**(continued)**

**Page(s)**

*Haber v. Chrysler Corp.*,
    958 F. Supp. 321 (E.D. Mich. 1997).......................................................................................6

*Harmon v. Am. Elec. Power Serv. Corp.*,
    371 F. Supp. 2d 804 (W.D. Va. 2005) ....................................................................................5

*Hayden v. Reickerd*,
    957 F.2d 1506 (9th Cir. 1991) ..............................................................................................10

*Horwich v. Super. Ct.*,
    21 Cal. 4th 272 (1999) ........................................................................................................4, 9

*Intn'l Union v. Hoosier Cardinal Corp.*,
    383 U.S. 696 (1966)..............................................................................................................14

*Karo v. San Diego Symphony Orchestra Ass'n*,
    762 F.2d 819 (9th Cir.1985) ..................................................................................................5

*Kincaid v. Kincaid*,
    197 Cal. App. 4th 75 (2011) .................................................................................................10

*Kline v. Security Guards, Inc.*,
    386 F.3d 246 (3rd Cir. 2004) ...........................................................................................5, 16

*Lingle v. Norge Div. of Magic Chef, Inc.*,
    486 U. S. 399 (1988)...................................................................................................... *passim*

*Livadas v. Bradshaw*,
    512 U.S. 107 (1994)....................................................................................................... *passim*

*Madison v. Super. C.*,
    203 Cal. App. 3d 589 (1988) .................................................................................................9

*Manning v. Boston Med. Ctr. Corp.*,
    725 F.3d 34 (1st Cir. 2013)....................................................................................................9

*Martin Marietta Corp v. Maryland Comn'n on Human Relations*,
    38 F.3d 1392 (4th Cir. 1994) ...............................................................................................14

*Maxwell v. Nat'l Football League, Inc.*,
    No. 11-CV-08394 (C.D. Cal. Dec. 8, 2011) ..................................................................17, 18

*Metropolitan Edison Co. v. NLRB*,
    460 U. S. 693 (1983)..............................................................................................................9

**Table of Authorities**
**(continued)**

**Page(s)**

*Mullins v. Int'l Union of Operating Eng'rs Local No. 77 AFO—CIO of*
*Washington, D.C.*,
214 F. Supp (E.D. Va. 2002) ...................................................................5

*N.J. Carpenters v. Tishman Constr. Corp.*,
760 F.3d 297 (3rd Cir. 2014) .........................................................10, 15

*In re Nat'l Hockey League Players' Concussion Injury Litig.*,
189 F. Supp. 3d 856 (D. Minn. 2016) ................................................5, 18

*Norgart v. Upjohn Co.*,
21 Cal. 4th 383 (1999) ..........................................................................10

*Price v. Georgia-Pac. Corp.*,
99 F. Supp. 2d 1162 (N.D. Cal. 2000) ....................................................5

*Prost v. Caldwell Store, Inc.*,
187 A.2d 273 (Pa. 1963) ........................................................................16

*Railway Labor Executives Ass'n v. Pittsburgh & L.E.R.R.*,
858 F.2d 936 (3d Cir. 1988).................................................................6, 7

*Richter v. Merchs. Fast Motor Lines, Inc.*,
83 F.3d 96 (5th Cir.1996) ......................................................................17

*Rogers v. Tyson Foods, Inc.*,
308 F.3d 785 (7th Cir. 2002) ...................................................................7

*Rowland v. Christian*,
69 Cal. 2d 108 (1968) ............................................................................16

*Rutledge v. Int'l Longshoremen's Assoc. AFL-CIO et al.*,
No. 16-1306, 2017 WL 2894363 (3d Cir. July 7, 2017).........................17

*Scott v. New United Motor Manufacturing, Inc.*,
632 F. Supp. 891 (N.D. Cal. 1986) ..........................................................6

*Souter v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.,*
*Local 72,*
993 F.2d 595 (7th Cir. 1993) ...................................................................5

*Stringer v. National Football League*,
474 F. Supp. 2d 894 (S.D. Ohio 2007) ..................................................18

**Table of Authorities**
**(continued)**

**Page(s)**

*Tran v. Metropolitan Life Ins. Co.*,
408 F. 3d 130 (3rd Cir. 2005) ............................................................17

*Trans Penns Wax Corp. v. McCandless*,
50 F.3d 217 (3rd Cir. 1995) ..........................................................15, 16

*United Steelworkers of A. v. Rawson*,
495 U.S. 362 (1990)............................................................................12

*Voilas v. General Motors Corp.*,
170 F.3d 367 (3rd Cir. 1999) ............................................................14

*Wanland v. Los Gatos Lodge, Inc.*,
230 Cal. App. 3d 1507 (1991) .............................................................6

*Wright v. Universal Maritime Serv. Corp.*,
525 U.S. 70 (1998)................................................................................9

**Statutes**

Cal. Civ. Proc. Code
§ 377.60.................................................................................. *passim*

28 U.S.C. 1447(c) ................................................................................19

Labor Management Relations Act § 301 ............................................. *passim*

I.    **INTRODUCTION**

For every wrong, there is a remedy.  Unless, according to the National Football League and NFL Properties, LLC (collectively, the "NFL Defendants" or "NFL"), your father played in the NFL.  Then, they argue, tort claims are preempted under § 301 of the Labor Management Relations Act ("LMRA"), should have been brought as a grievance under the collective bargaining agreement ("CBA") and must be dismissed.  The NFL does not care – or contest – that the four children of Junior Seau ("Junior"), one of the league's greatest and best-loved players, could not bring such grievances under the express terms of the CBA.  The NFL insists it may nonetheless silence their voices, despite the NFL's own status as a non-signatory to the CBA, and dismiss the claims related to Junior's wrongful death. In reality, the NFL is trying to use § 301 preemption to immunize their past efforts to intentionally and negligently conceal and misrepresent the dangers of latent head injury and chronic traumatic encephalopathy ("CTE") from players and the football public.  But LMRA preemption does not apply to the Seau Family's claims and does not allow the NFL to avoid the consequences of its actions.

**First**, preemption under § 301 is unavailable as a defense to the claims brought by Tyler, Sydney, Jake and ███████ Seau (collectively "Seau Children"), who as non-signatories could not access the CBA's grievance process or bring a claim under § 301.  If their claims are preempted, they will be left without any forum to address the NFL's wrongs.  LMRA precedent prohibits this result as a matter of law and basic fairness prohibits the extension of § 301 preemption to two non-signatories like the Seau Children and the NFL.  **Second**, even if the defense were available in these circumstances, preemption does not apply to the Seau Children's statutory claims for wrongful death under California Code of Civil Procedure § 377.60.  Supreme Court and Third Circuit authority consistently affirm that § 301 is not intended to preempt statutory rights that are independent of a CBA.  Thus, preemption of the Seau Children's statutory claims differs from possible preemption of common law claims brought by former NFL players. Further, dismissal of the Seau Children's claims does not serve any of the policies that § 301 preemption is intended to protect, making elimination of their state law claims both improper and

1

irrational.  **Third**, Junior's claims are not preempted because the NFL has not identified an interpretative dispute regarding provisions of the CBA, a threshold issue for preemption in the Third Circuit.

Because the NFL's preemption arguments fail as to the claims brought by both the Seau Children and Junior, the NFL's Motion to Dismiss Plaintiffs' Second Amended Master Administrative Complaint on Preemption Grounds ("Mot.") must be denied and these claims remanded to California state court where they were originally filed.

## II.   STATEMENT OF FACTS

As alleged in the Plaintiffs' Second Amended Master Administrative Complaint ("SAMAC"), the NFL has engaged in a campaign to conceal and misrepresent the true risk of mild traumatic brain injury ("MTBI") and permanent, latent brain disease.  (SAMAC ¶¶ 51-63.) Despite access to and knowledge of scientific evidence linking MTBI with long-term brain injury, the NFL "failed to warn" Junior, NFL players, and the public of the "medical risks associated with repetitive head impacts during NFL games and practices."  (Id. ¶¶ 51-63, 102.)

Instead, the NFL instituted the Mild Traumatic Brain Injury Committee (the "Committee") in 1994 and embarked on a campaign to propagate sham science to misrepresent and conceal the true effects of repetitive MTBI on the football public through at least 2010. (SAMAC ¶¶ 56, 163, 165, 172.)   The Committee published numerous technical papers and studies concluding "there are no long-term negative health consequences associated with concussions or sub-concussive injuries sustained by NFL players."  (Id. ¶¶ 202, 234, 241 (detailing specific statements).)   Yet, these findings contradicted decades of independent research conclusions.  (Id. ¶¶  236-240.)  During the same time period, the Committee and the NFL actively and publicly attacked, undermined, and disregarded the findings of the medical community that established a link between MTBI sustained during football play and post-career neurocognitive damage, illness and neurodegenerative decline.  (Id. ¶¶ 59, 61.)

Junior Seau was an active NFL player throughout this period, beginning in 1990 for the San Diego Chargers, and then for the next twenty consecutive years, retiring after the 2009

season.  (SFC ¶ 14.)  During this time, he sustained countless repetitive traumatic sub-concussive and concussive head impacts.  (SFC ¶ 8.)  The effects of this repetitive brain trauma began to materialize towards the end of Junior's football career.  His mental deterioration both accelerated and worsened following his retirement in 2009.  (SFC ¶ 15.)  Throughout his career, the NFL hid the danger of latent head injury.  It was not until 2010, after Junior's retirement, that the NFL finally acknowledged that the Committee's science and the NFL's guidance, on which Junior relied, was flawed, biased, and fraudulent.  (SAMAC ¶¶ 302-304.)

As a result of the permanent and debilitating brain damage sustained during his professional football career, Junior shot himself in the chest in his San Diego home on May 2, 2012, sending a message to the NFL and the world to study his brain. The result of that independent, triple blind study conducted by the National Institutes of Health, which was the most comprehensive ever performed on a deceased NFL player, conclusively established that Junior suffered from advanced CTE. Only then did the Seau Family commence the instant action to hold the NFL accountable for their negligence and fraud regarding the dangers of latent head injury in football.  Plaintiffs Tyler Seau, Sydney Seau, Jake Seau, Gina Seau as guardian ad litem for ███████ Seau, and Bette Hoffman, as the trustee of the Tiaina B. Seau, Jr. 2002 Trust (collectively, the "Seau Family"), filed this action in San Diego Superior Court on January 23, 2013.  (SFC ¶ 9.)  The Seau Children bring claims for wrongful death under California Code of Civil Procedure § 377.60.  (SFC Attachment A.)  His estate, represented by Ms. Hoffman, brings claims for the causes of action against the NFL that Junior held at the time of his death.  (*Id.*)

## III.   ARGUMENT

### A.   The Seau Children's Independent Claims for Wrongful Death Are Not Preempted.

As a matter of law, the preemption doctrine is inapplicable to claims brought by persons, like the Seau Children, who are not signatories to the CBA, are not subject to its terms and cannot utilize its remedies.  Indeed, preemption of the Seau Children's claims would wrongfully deprive them of any forum for relief and immunize the NFL's wrongdoing.  This is unlawful

under existing precedent and the NFL's motion must be denied on this ground alone.  Moreover, the Supreme Court repeatedly emphasizes that LMRA preemption does not *preclude* independent statutory rights. *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994) ("301 cannot be read broadly to pre-empt nonnegotiable [state] rights").  The Seau Children's wrongful death claims under CCP § 377.60 are precisely such independent statutory rights.  *See Horwich v. Superior Court*, 21 Cal. 4th 272, 283 (1999) (California wrongful death claims are independent non-waivable and non-derivative statutory rights).  Because these claims have no connection to any CBA, even less than claims brought by former players, they are not subject to preemption. *Livadas*, 517 U.S. at 123-124.  Further, dismissal of the Seau Children's claims would be improper because it does not serve the limited goals of LMRA preemption, 1) ensuring enforcement of private grievance in industrial labor (where applicable) and 2) ensuring application of uniform federal labor law.  *See Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 220 (1985); *Livadas*, 512 U.S. at 122–23 ("the pre-emption rule has been applied *only to assure* that the purposes animating § 301" will not be frustrated by inconsistent state labor law or efforts to renege on parties' arbitration promises) (emphasis added).  Here, the Seau Children's claims are not subject to arbitration and do not threaten inconsistent application of federal labor law.  Thus, the NFL's request to dismiss the Seau Children's claims is both draconian and improper.  Regardless, because preemption would foreclose ***any forum*** for relief for the independent state law claims held by the Seau Children, the doctrine simply is not available.

> **1.**     **Preemption is Not a Defense to the Seau Children's Claims Because the Children are Not Parties to the CBA and Preemption Would Deny Them Any Forum for Relief.**

The Seau Children cannot access the grievance procedures under the CBAs or bring a claim under § 301, and therefore, according to well established LMRA precedent, § 301 does not preempt their state law claims.  The NFL's Motion to Dismiss these claims is improper as a matter of law.  Were it otherwise, preemption would offer defendants absolute immunity – keeping the plaintiff from accessing *any* forum for relief.  The NFL cannot use preemption to erase the Seau Children's only available remedy for the death of their father.

4

The Seau Children are not signatories to the CBA that controlled their father's final years in the NFL (or any other CBA) and by the express terms of the agreement, they **cannot** bring a grievance, either for their own statutory claims or their father's claims. *See* Mot. Ex. 10 (2006 CBA Article IX, stating "[a] non-injury grievance may be initiated by a player, a Club, the Management Counsel, or the NFLPA."). Similarly, the Seau Children, as non-signatories to any CBA, do not have standing to assert a claim under § 301 of the LMRA. *See Karo v. San Diego Symphony Orchestra Ass'n*, 762 F.2d 819, 821-24 (9th Cir.1985) (holding non-signatory employee did not have standing to bring claim under § 301); *Souter v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., Local 72*, 993 F.2d 595, 597 n.1 (7th Cir. 1993) (same); *Adkins v. General Motors Corp.*, 556 F. Supp. 452, 455-56 (S.D. Ohio 1983) (spouses of employees and former employees had no standing to sue on the basis of their marital status); *Harmon v. Am. Elec. Power Serv. Corp.*, 371 F. Supp. 2d 804, 811-12 (W.D. Va. 2005) (wife who was neither an employee nor a member of the bargaining unit could not bring §301 claim, even if she was a beneficiary of her husband's interests in the CBA). Thus, the Seau Children do not have a remedy under the CBA or under federal labor law. Their only forum for relief is their wrongful death claim under state law.[1]

As courts have often recognized, LMRA preemption does not apply where plaintiffs cannot pursue a grievance or a claim under § 301 because preemption would unjustly leave them without any forum for relief. *See Price v. Georgia-Pac. Corp.*, 99 F. Supp. 2d 1162, 1167-68 (N.D. Cal. 2000) ("As a non-union employee, plaintiff was effectively barred from the grievance procedure …. So situated, plaintiff's only remedy in the wake of his termination was to sue his employer for breach of contract. Defendant now attempts to foreclose this last avenue of relief by arguing that it is preempted. The Court cannot sanction such an outcome"); *In re Nat'l*

---

[1] NFL Defendants may assert that the Seau Children's status as non-signatories to the CBA is immaterial to preemption analysis, but decisions suggesting this distinction involve claims brought by signatory plaintiffs against non-signatory **defendants**. *See Mullins v. Int'l Union of Operating Eng'rs Local No. 77 AFO—CIO of Washington, D.C.*, 214 F. Supp, 2d 655, 668 (E.D. Va. 2002) (301 may "preempt state law claims *against* non-signatories . . . ")(emphasis added); *Atwater v. Nat'l Football League Players' Ass'n*, 6326 F.3d 1170, 1178 (11th Cir. 2010) (301 preemption does not depend upon "the individual status of the *defendan*")(emphasis added).

*Hockey League Players' Concussion Injury Litig.*, 189 F. Supp. 3d 856, 870 n.6 (D. Minn. 2016) (holding preemption improper where NHL retirees could not seek arbitration under CBA and did not have any other forum for relief); *Scott v. New United Motor Manufacturing, Inc*., 632 F. Supp. 891, 894 (N.D. Cal. 1986) (denying preemption, holding "[i]t would be anomalous to hold that section 301 preempts [the plaintiff's] state remedies because federal law provides the exclusive remedy, only then to discover that plaintiff had no remedies under federal law."), *questioned* on other grounds, 830 F.2d 993 (9th Cir. 1987); *Young v. Anthony's Fish Grottos*, Inc., 830 F.2d 993, 1000 n.3 (9th Cir. 1987) (distinguishing availability of § 301 preemption where employee cannot access CBA grievance procedure); *Haber v. Chrysler Corp*., 958 F. Supp. 321, 328-29 (E.D. Mich. 1997) (denying preemption because it would deny plaintiff, who is not covered by CBA and therefore could not arbitrate, from any remedy whatsoever); *Fagundes v. GTE California Inc.*, No. C95-1130 FMS, 1995 WL 295828 at *3 (N.D. Cal. May 8, 1995) (holding where "plaintiff has no recourse to the grievance procedures of the collective bargaining agreement; her claims are therefore not preempted by § 301 of the LMRA"); *Wanland v. Los Gatos Lodge, Inc.*, 230 Cal. App. 3d 1507, 1517 (1991) (denying preemption where union refused to bring grievance, reasoning "[t]he goal of consistency and uniformity in federal labor law is in no way frustrated by affording remedies under state law to one who is not entitled to invoke the grievance procedures of a CBA."); *Butts v. Lane*, No. C-95-01849 MHP, 1996 WL 163000, *5 (N.D. Cal. March 11, 1996) (holding where there is no grievance procedure under a CBA, the state law claims are not preempted and the federal court lacks jurisdiction). As these cases illustrate, preemption is not intended to foreclose relief for plaintiffs where the CBA does not offer them an alternate forum.   Yet the NFL argues, even though the Seau Children did not sign the agreement, have never sought to enforce its terms and cannot access the CBA's protections or remedies, that the Seau Children's independent statutory claims are nonetheless preempted and must be dismissed, thereby depriving them of any forum for relief. (Mot. at 31.)  This is not the law.

Indeed, preemption of the Seau Children's claims is inconsistent not only with the above

authority, but also Third Circuit precedent.  It holds that in order to find state law claims are completely preempted by a federal statute, including the LMRA, the statute must provide an alternate forum for the state law claim that is accessible by the plaintiff.  *See Railway Labor Executives Ass'n v. Pittsburgh & L.E.R.R.*, 858 F.2d 936, 942 (3d Cir. 1988) (interpreting Supreme Court preemption decisions involving § 301 and holding "[i]f the federal statute creates no federal cause of action vindicating the same interest the plaintiff's state cause of action seeks to vindicate, recharacterization as a federal claim is not possible and there is no claim arising under federal law to be removed and litigated")[2]; *see also Pruell v. Caritas Christi*, 645 F.3d 81, 83 (1st Cir. 2011) (holding the "threshold issue" in LMRA preemption is whether the plaintiff is covered by a CBA because if "the plaintiffs are non-union workers unaffected by any CBA, section 301 and its case law glosses are irrelevant"); *Rogers v. Tyson Foods, Inc.*, 308 F.3d 785, 788 (7th Cir. 2002) (holding "complete preemption would not be appropriate if a federal remedy did not exist in the alternative. Otherwise, a plaintiff would be forced into federal court with no relief available for 'vindicating the same interest.'").

Here, the Seau Children cannot seek a federal remedy by bringing a § 301 claim or seek a non-injury grievance under the CBA.  Conspicuously, NFL does not argue otherwise.  Yet, the NFL insists that the CBA, an agreement to which neither the Seau Children *or the NFL* are signatories, both denies them a private forum for relief and also demands dismissal of their state law action.  That is not the law under established LMRA precedent.  Moreover, the NFL's argument ignores basic fairness and common sense. LMRA preemption is not designed to erase all forums for plaintiff's claims but merely to ensure those claims are heard in the appropriate forum and that courts consistently apply federal labor law (*see infra* Section 2.b).  Preventing the Seau Children from accessing any forum for relief serves neither goal.  Moreover, the NFL's argument applies § 301 preemption to claims where *neither* party is a signatory to the CBA. Were this correct, it would vastly expand the reach of § 301, offering immunity for corporate

---

[2] While the federal statute need not offer precisely the same relief available under state law, it must offer a forum. *Railway Labor Executives Ass'n*, 858 F.2d at 942 n.2 (*citing Avco Corp. v. Machinists*, 390 US 557, 561 (1968)).

wrongdoers far beyond their employee base to third parties with no connection to the CBA.  For every wrong there is a remedy, and such a result would contradict both established authority and basic fairness.

> **2.      Even if a Preemption Defense Could Apply to Claims Brought by Non-signatories like the Seau Children, their Wrongful Death Claims Are Not Preempted.**

Although the Seau Children are not signatories to the CBA and could not access its remedies, the NFL insists that the Seau Children's claims must nonetheless be dismissed if the claims might require some interpretation of the CBA.  (Mot. at 31.)  But the NFL's argument ignores both the legal character of the Seau Children's independent statutory claims for wrongful death under California law, as well as the broad protections LMRA law gives such independent claims, even if they require some reference to a CBA.  Furthermore, preemption is not applicable because dismissal of these claims does not serve the LMRA's limited policy goals – enforcement of private grievance (inapplicable in the case of non-signatories like the Seau Children) and uniform application of federal labor law (which, in the absence of a private grievance, may be accomplished by any court hearing the Seau Children's claims).

> **a.      Independent Statutory Claims, like the Seau Children's for Wrongful Death, Are Protected from Preemption.**

Supreme Court precedent prohibits the broad application of LMRA preemption to state law claims, like the Seau Children's, which are independent, non-derivative, statutory causes of action for wrongful death under California law.[3]  Preemption of these claims requires special analysis and is more narrow than preemption of claims brought by former NFL players.

The NFL's Motion ignores these distinctions, and starts from the erroneous assumption that the wrongful death claims brought by the Seau Children are "derivative" of the player's

---

[3] As discussed in the Seau Family's Opposition to the NFL Defendant's Motion to Dismiss for Failure to State a Claim, California law controls the wrongful death claims alleged by the Seau Children.  *See* Seau Family Opp. at 9-10.

claims and may be analyzed in the same way.  (Mot. at 31, citing Pennsylvania law.)  Not so –
wrongful death in California is an **independent, non-derivative,** statutory cause of action.  *See
Horwich*, 21 Cal. 4th at 283 ("Unlike some jurisdictions wherein wrongful death actions are
derivative, Code of Civil Procedure section 377.60 creates a new cause of action in favor of the
heirs as beneficiaries, based upon their own independent pecuniary injury suffered by loss of a
relative, and distinct from any the deceased might have maintained had he survived"); *Daniels v.
Sunrise Senior Living, Inc.*, 212 Cal. App. 4th 674, 680 (2013) (same). The Seau Children bring
these claims on their own behalf, for the loss of their father's love, guidance, and support due to
the NFL's wrongful actions.  They do not assert these claims on behalf of their father or his
estate.  Further, the claims were not negotiable or waivable by their father prior to his death.  *See
Eriksson v. Nunnink*, 233 Cal. App. 4th 708, 725 (2015) ("[b]ecause a wrongful death claim is
not derivative of the decedent's claims, an agreement by the decedent to release or waive liability
for her death does not necessarily bar a subsequent wrongful death cause of action by her
heirs."); *Madison v. Superior Court*, 203 Cal. App. 3d 589, 596 (1988) (holding the decedent has
no right to waive a wrongful death claim under CCP § 377.60 because "this is a right which
belongs not to [decedent] but to his heirs" that does not arise until the decedent's death).[4]  These
state law claims are independent, non-waivable and non-derivative statutory rights that arise
from state law protections, not the terms of a CBA.

Supreme Court and Third Circuit precedent consistently affirms and cautions that § 301
preemption is *not* intended to extinguish such independent rights conferred on individuals as a
matter of state law.  *Allis–Chalmers Corp.*, 471 U. S. at 212 ("it would be inconsistent with
congressional intent under [§ 301] to preempt state rules that proscribe conduct, or establish

---

[4] Even were the wrongful death claims subject to waiver by Junior, the CBA does not do so.  The waiver of such
independent statutory rights must reflect a "clear and unmistakable" waiver of a judicial forum. *Wright v. Universal
Maritime Serv. Corp.*, 525 U.S. 70, 80 (1998); *Metropolitan Edison Co. v. NLRB*, 460 U. S. 693, 708 (1983) ("[W]e
will not infer from a general contractual provision that the parties intended to waive a statutorily protected right
unless the undertaking is explicitly stated."). Here, the 2006 CBA does not address, much less waive, any wrongful
death claims, much less clearly and unmistakably waive independent rights under CCP § 377.60.  *See Manning v.
Boston Med. Ctr. Corp.*, 725 F.3d 34, 53 (1st Cir. 2013) (holding that CBA which contained general grievance
procedures that did not mention statutory claims did not constitute clear or unmistakable waiver).

rights and obligations, independent of a labor contract"); *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U. S. 399, 412 (1988) (notwithstanding the policies supporting preemption and arbitration of preempted claims, "different considerations apply" where the claim is based on state statutory rights providing substantive guarantees); *Lividas v. Bradshaw*, 512 U.S. 107, 123-24 (1994) ("§ 301 cannot be read broadly to preempt nonnegotiable rights conferred on individual[s] as a matter of state law. . ."); *N.J. Carpenters v. Tishman Constr. Corp.*, 760 F.3d 297, 306 (3rd Cir. 2014) (same); *Hayden v. Reickerd*, 957 F.2d 1506, 1511 (9th Cir. 1991) ("collective bargaining agreement cannot supersede [plaintiff's] state law right to be free from battery and tortious retaliatory conduct in all events."). Thus, independent statutory claims, like the Seau Children's, warrant special protection from an overbroad application of LMRA preemption. For this reason, the Court's preemption analysis regarding the Seau Children's independent statutory claims must be even more narrow than its analysis of common law claims brought by former NFL players.

Even a cursory review of the Seau Children's claims illustrates that they are uniquely independent of any CBA and therefore not subject to preemption. *See Livadas*, 512 U.S. at 123 ("it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement . . . that decides whether a state cause of action may go forward."). First, their claims are separate statutory causes of action arising under California law, protecting the right of descendants of a wrongfully killed father to pursue litigation, that are non-derivative and non-waivable. These claims did not even arise until Junior's death in May 2012, *see Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 404 (1999), more than six years after negotiation of the last applicable CBA. And these claims survive even if certain defenses, such as statute of limitations, preclude claims brought by former players. *See Kincaid v. Kincaid*, 197 Cal. App. 4th 75, 80-81 (2011) (finding wrongful death action timely filed despite running of statute of limitations as to decedent's claim for alleged abuse). Furthermore, unlike former NFL players, the Seau Children were not signatories to the CBA and could not access the agreement's protections. The NFL shares this distinction and also is not a signatory to the CBA. Thus,

neither side can point to any provisions within the agreement that expressly relate to the Seau Children's claims or to the NFL's defenses.  Lastly, the CBA is silent regarding the factual allegations that form the Seau Children's complaint.  It does not address in any way the subject of latent head injury or any duty assumed by the NFL, or any other party, regarding the dangers of MTBI or the MTBI Committee.  Logically, given its silence on the issue at the center of the Seau Children's claims, their complaint does not reference or rely on any provision of a CBA.  These claims depend entirely on statutory rights granted under California law and the NFL's actions outside of the CBAs and therefore are not preempted.

The only connection to the CBA is the one manufactured by the NFL (Mot. at 31) asserting that the Court might need to reference the agreement to somehow assess duties the NFL undertook outside of the agreement (it does not).  Even if the NFL were correct, because the CBAs are silent on the subject of latent head injury or the NFL's duty generally, the NFL has only raised the possibility that the Court would need to reference the CBA to understand the NFL's duties.  This does not require preemption of independent state statutory protections.  *Lividas*, 512 U.S. at 123 ("the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.") (*citing Lingle*, 482 U.S. at n.12); *see also infra*, Section B.  Preemption of these claims, on the thin reed offered by the NFL, would directly contradict the Supreme Court's limiting language, that "§ 301 cannot be read broadly to preempt nonnegotiable rights conferred on individual[s] as a matter of state law."  *Lividas*, 512 U.S. at 123-24.  Rather than address the Supreme Court precedent requiring a limited application of preemption to independent statutory claims like the Seau Children's, the NFL's Motion simply ignores it.

Similarly, the NFL has not established any basis to preempt the Seau Children's wrongful death claims premised on the NFL's fraudulent conduct.  The NFL explicitly limits its wrongful death argument to actions which "sound[] in negligence . . ."  (Mot. at 31.)  It does not argue that wrongful death claims premised on fraud, like the Seau Children's (*see* CCP § 377.60 (permitting wrongful death claim based on "the wrongful act or neglect of another"), are

similarly preempted.  Indeed, they are not.  *See infra*, Section B.

Moreover, the NFL has not provided a single decision wherein independent statutory claims for wrongful death, like the Seau Children's, were preempted by the LMRA.  Instead, the NFL points to *United Steelworkers of A. v. Rawson*, 495 U.S. 362 (1990), involving wrongful death claims under Idaho law.  But *Rawson* is readily distinguishable and only reinforces the distinction that independent claims that arise under state law, not the terms of a CBA, do not require preemption.  There, the plaintiffs alleged that the union's duty to inspect the mine expressly arose "by the contract language" of the CBA.  *Rawson*, 495 U.S. at 370.  Therefore, the court held that the claims were not independent of the CBA, but arose from its terms and required substantive interpretation of the CBA to understand the union's standard of care.  *Id.* Here, in contrast, the NFL's duty to study and truthfully report on the dangers of latent head injury in football arose from its voluntary actions undertaking that duty, including formation of the MTBI Committee, wholly outside of the CBAs.  Unlike the CBA in *Rawson*, the CBAs here are utterly silent on any duty by the NFL to act regarding latent head injury.  Moreover, the preemption analysis in *Rawson* was limited to plaintiffs' negligence claims (*Rawson*, 495 U.S. at 366), while the Seau Children allege that the NFL also acted fraudulently.  Furthermore, the plaintiffs in *Rawson* never raised, nor did the court address, whether the Idaho wrongful death claims were independent statutory rights.  As such, the court had no opportunity to weigh the cautionary language in *Lueck* and *Lingle* regarding the limited scope of preemption when applied to independent state rights, nor the subsequent direction from *Lividas* that even if some reference will be made to a CBA, § 301 cannot be read broadly to preempt independent state rights. Regardless, *Rawson* does not stand for the proposition that preemption precludes independent wrongful death claims based merely on some tangential connection to CBA terms. [5]

The NFL cannot casually sweep away independent state law protections, like the

---

[5] The NFL's citation to *Chipman v. Nelson*, No. 11-cv-2770, 2016 WL 4943843 (E.D. Cal. Sept. 15, 2016) is similarly unavailing re preemption of the Seau Children's claims, as that decision does not address preemption of independent statutory wrongful death claims under § 301 nor the Supreme Court precedent discussed above.

wrongful death claims brought by the Seau Children, by asserting that they are just like the claims brought by former players. They are not. These are non-derivative and non-waivable claims provided by state law, not the terms of any CBA, by people who had no role in shaping the CBA or the right to pursue any of the protections therein. Both fairness and Supreme Court precedent require a narrow application of § 301 preemption to prevent the doctrine from swallowing these state law protections.

> **b.** **Dismissal of the Seau Children's Claims Is Also Improper Because It Does Not Serve Any LMRA Policy.**

Furthermore, dismissal of the Seau Children's claims does not serve any policy that § 301 preemption protects, making elimination of their state law claims both improper and irrational. *See Livadas*, 512 U.S. at 122-23 ("the pre-emption rule has been applied only to assure that the purposes animating § 301" will not be frustrated). LMRA preemption is limited to two policy objectives – 1) ensuring enforcement of private grievance in industrial labor (where applicable) and 2) ensuring application of uniform federal labor law. *Id*. Where continuation of the state claims will not frustrate these goals, preemption is improper. *Id.*

Here, there is no private grievance to enforce. As discussed above, the Seau Children cannot bring a grievance under the CBA, which states that only "a player, a Club, the Management Counsel, or the NFLPA" may initiate claims. Further, the NFL cannot force the Seau Children into arbitration because they are not signatories to the CBA. Arbitration, even in the context of preemption, remains "a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit." *AT&T Tech., Inc. v. Commc'ns Workers*, 475 US 643, 648 (1986). Because the Seau Children's claims cannot proceed to private grievance proceedings, dismissal of the action does not serve the first policy goal of § 301 preemption.

Furthermore, because the Seau Children's claims won't be arbitrated, even if the NFL is correct that a tangential interpretative question regarding the CBA may arise as to these claims (it will not), any judge adjudicating their action can apply federal labor law principles to that

question, thereby serving the second policy goal of § 301 preemption.  *See Lingle*, 486 U.S. at n.12 (even if a court may need to look to the CBA to determine an issue in the state law claim, "[i]n such a case, federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby pre-empted.")[6]; *Voilas v. General Motors Corp.*, 170 F.3d 367, 377 (3rd Cir. 1999) (quoting *Lingle* to conclude court's eventual interpretation of the CBA when assessing damages, including whether plaintiffs were worse off in taking early retirement, did not justify preemption and dismissal of the state law claims); *Brown v. Holiday Stationstores, Inc.*, 723 F. Supp. 396, 405 (D. Minn. 1989) (relying on *Lingle* to hold that preemption and dismissal were not required merely because Minnesota state law claim might also involve some interpretation of the CBA's work assignment and seniority provisions, but instead would merely require application of federal law); *Martin Marietta Corp v. Maryland Comn'n on Human Relations*, 38 F.3d 1392, 1401 (4th Cir. 1994) (citing *Lingle* and holding "if the final resolution of the state law dispute tangentially involves some interpretation of a provision of the agreement, this fact alone would not require automatically that [plaintiff's] claim be preempted. . . in such a case, federal law would govern the interpretation of the agreement, and state law analysis would not be preempted.")  The court need not take the drastic step of eliminating the Seau Children's claims.  Instead, it may simply apply federal law to any interpretive question (in the unlikely event one should arise) and otherwise permit the state law claims to proceed, thereby protecting both the second policy goal of § 301 preemption as well as preserving the Seau Children's independent statutory claims.

**B.**     **Junior Seau's Claims Are Not Preempted.**[7]

Separate from the unique issues that prohibit preemption of the Seau Children's wrongful death claims, Junior's claims are not preempted for a very simple reason – the NFL has not identified a genuine dispute regarding a provision of any CBA, a threshold requirement for

---

[6] Indeed, the lack of private grievance structure also eliminates concerns re the uniformity of federal labor law.  *See Int'n'l Union v. Hoosier Cardinal Corp.*, 383 U.S. 696, 702 (1966) (reasoning that the need for uniformity is greatest where its absence would threaten consensual processes federal labor law is intended to promote).

[7] These arguments are in addition to those made by the Opposition by Lead Counsel for the Opt Out Plaintiffs.

preemption under § 301.  *See Kline v. Security Guards, Inc.*, 386 F.3d 246, 257 (3rd Cir. 2004).  Indeed, the league's duty of care, created by its voluntary undertaking to study MTBI and serve as a source of authority re the same, for both players and the public, is not addressed by the CBAs and is not altered by or dependent upon any duty held by a third party, such as team doctors or trainers.  Thus, the players' negligence claims pose factual questions that can be adjudicated without interpreting any provision of the CBA.  Further, the NFL had a general duty to avoid fraudulent statements and omissions but made many misrepresentations regarding the risks of latent head injury outside of any CBA, prohibiting preemption of Junior's fraud claims.  *Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 232 (3rd Cir. 1995) (elements of state fraud claim do not require interpretation of the CBA).  Under well-developed Third Circuit precedent, Junior's negligence and fraud claims are not subject to preemption.[8]

These arguments have only been strengthened by recent rulings by the Third Circuit and courts within this district.  For instance, in February 2016 the Third Circuit once again affirmed that § 301 preempts a state cause of action "**only** when the resolution of said action is '**substantially dependent** upon analysis of the terms of a [CBA] . . . '" *N.J. Carpenters*, 760 F.3d at 305 (emphasis added).  In that action, the Third Circuit refused to preempt claims brought under a state statute requiring payment of prevailing wages, noting that the claim was independent of the CBA and could be adjudicated based on the facts – even if the CBA also spoke to the wages to be paid to employees.  *Id.* at 306   (reasoning claim "simply requires comparing the wages that plaintiffs were paid to those provided in the [statute].  This is a factual question . . . .").  So too here – proof that the NFL acted negligently and fraudulently as to the risks of latent head injury is dependent on what the league actually did, not what a CBA might hypothetically require it to do.  Because the text of the CBAs do not address in any way the duties held by the NFL, there is no evidence of even a hypothetical dispute over a CBA term.

Similarly, in 2015 Judge Robreno of the Eastern District of Pennsylvania rejected the

---

[8] Because there is no interpretative dispute that supports preemption of Junior's claims, the NFL's sole basis for preemption of the Seau Children's claims (Mot. at 31) also disappears.

very arguments the NFL makes in its current Motion in a preemption decision involving common law claims for negligence and fraud against an employer. *See Stellar v. Allied Signal*, *Inc.*, 98 F. Supp. 3d 790, 797 (E.D. Pa. 2015). The *Stellar* decision confirmed that to find preemption based on an asserted need to interpret provisions of the CBA, the Third Circuit's *Kline* decision requires the defendant to identify a specific interpretive dispute. *Id*. at 803 (holding fact that CBA was part of the claim's context was insufficient noting "[h]ere, there is simply no dispute over the meaning of any term or provision cited by Defendants in the CBAs."). The court also rejected defendant's argument that the negligence claims would require interpretation of the general workplace safety provisions within the CBA (none of which addressed the work condition at issue – asbestos in the workplace), reasoning:

> "The Court does not have to interpret any of the clauses in the CBAs in order for Plaintiffs to establish the scope of the duty. While it is possible that Defendant could point to some portion of a CBA in arguing that it acted reasonably, or to establish that it provided some type of warning as to certain occupational hazards, whether these statements provide a defense (in that they show Defendant acted reasonably, or that Defendant did not breach its duty of care) is a question of fact for the jury."

*Id*. (citing *Trans Penns*, 50 F.3d at 232). The court also relied on the fact that defendant had not pointed to any part of the CBA that expanded or diminished its common law duty and there was no evidence the plaintiff waived his right to assert a negligence claim against his employer. *Id*. at 801.

These are the same arguments made by the NFL and they should be rejected for the same reason. The Court does not need to interpret the CBA to determine whether the NFL had a common law duty to act reasonably not to harm players and the football public generally – it created that duty by its historical acts undertaking to study latent head injury and truthfully report on the same. *Prost v. Caldwell Store, Inc*., 187 A.2d 273, 276 (Pa. 1963) (the common law recognizes a "social duty of every person" to "take thought and have a care lest his action result in injuries to others); *Rowland v. Christian*, 69 Cal. 2d 108, 112 (1968) (absent some exception "[a]ll persons are required to use ordinary care to prevent others being injured as the result of their conduct."); *Delgado v. Trax Bar & Grill*, 36 Cal. 4th 224, 235 (2005) (same); *Tran v.*

*Metropolitan Life Ins. Co.*, 408 F. 3d 130, 135 (3rd Cir. 2005) (where a party assumes a special relationship toward others, it has a heightened duty of care even in the face of contrary contract language).  The CBAs do not address any duty by the NFL to study the risk of latent head injury – and therefore those agreements could not possibly alter the NFL's voluntarily assumed duties outside of the CBA or waive player's claims regarding the NFL's misrepresentations and omissions.[9]  The CBAs are utterly silent regarding such an alteration or waiver.[10]  While the NFL points to parallel duties held by club teams and doctors for general health and safety, at best that argument is merely an affirmative defense for joint contribution, not a threshold determination regarding the NFL's own historical duty.  Moreover, overlapping issues between duties assumed within the CBA by club teams and the historical acts giving rise to the NFL's duties does not require preemption, as the Supreme Court has repeatedly rejected such parallelism as a basis for dismissal.  *Lingle*, 486 U.S. at 410 (even if CBA dispute and state law litigation address "precisely the same set of facts, [if] the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes.'").

Instead of confronting this authority, the NFL points to distinguishable case law, primarily *Duerson v. Nat'l Football League*, No. 12-c-2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012) and *Maxwell v. Nat'l Football League, Inc.*, 11-cv-08394 (C.D. Cal. Dec. 8, 2011), to support a preemption finding in the instant matter (Mot. at 21, 29).  But those decisions are readily distinguishable, as neither action included the detailed historical allegations at issue here regarding the NFL's voluntary undertaking, wholly outside of any CBA provision, to provide truthful information regarding the effects of traumatic brain injury through the MTBI

---

[9] As the *Stellar* court noted, to be effective waiver of any claims must be explicit.  *See Stellar*, 2015 WL 1654839 at *7, n.16 (citing *Richter v. Merchs. Fast Motor Lines, Inc.*, 83 F.3d 96, 97 (5th Cir.1996)).

[10] Because the NFL is not a signatory to any of the CBAs its role, if any, in negotiation and allocation of responsibilities as part of the CBA bargaining process is speculative at best.  As recognized by the Supreme Court (*see American Needle, Inc. v. Nat'l Football League*, 130 S. Ct. 2201, 2215 (2010)), the NFL and its club teams are distinct legal entities.

Committee.[11]  In *Duerson*, the non-specific alleged duty to "to keep [players] reasonably safe" and to provide "up-to-date medical information" necessitated CBA interpretation to put the NFL's duty in context, unlike the comprehensive allegations of the NFL's independent undertakings to protect its players and the football public at large that are alleged in the instant action.[12] Similarly, the alleged duty in *Maxwell* "to ensure accurate diagnosis and recording of concussive brain injury" required CBA interpretation, as it suggested a need to collaborate with Club doctors. The instant allegations do not suffer such flaws.

Similarly, the NFL points to *Stringer v. Nat'l Football League*, 474 F. Supp. 2d 894 (S.D. Ohio 2007) to argue that the instant claims may be preempted because the contractual duties held by team physicians impacts the NFL's degree of care (Mot. at 25, 29).  This reflects the same error discussed above – the NFL cannot covertly alter its voluntarily assumed duty of care based on the duties of third parties.  But *Stringer* is also readily distinguishable from the present allegations, as the plaintiff in *Stringer* expressly tied her action to allegations that team trainers had an initial responsibility to treat heat-related illness and attain certification under the CBA, but were not prepared to do so because of the NFL's negligent acts.  474 F. Supp. 2d at 910.[13] These allegations made the provisions of the CBA relevant and defined the NFL's negligence within the context of the trainers' obligations under the CBA.  The SAMAC does not allege that team doctors or trainers had any duty with respect to Junior's latent head injury or the long-term

---

[11] Additionally, both *Duerson* and *Maxwell* involved remand and determined only whether federal jurisdiction existed as to the negligence claims, not whether the claims would finally be preempted under § 301 and subject to dismissal. *Duerson v. Nat'l Football League, Inc.*, No. 12 C 2513, 2012 WL 1658353, at *6 (N.D. Ill. May 11, 2012); *Maxwell v. Nat'l Football League, Inc.*, No. 11-CV-08394, (C.D. Cal. Dec. 8, 2011). Recent precedent also confirms this has no application to the instant fraud claims. *See Rutledge v. Int'l Longshoremen's Assoc. AFL-CIO et al.*, No. 16-1306, 2017 WL 2894363, at *5-6 (3d Cir. July 7, 2017).

[12] *Duerson's* "conclusion (reached without any citation to the CBA or case law) that the NFL duty's to players would be tempered by the CBA's imposition of duties on the teams" has been rejected by other courts. *In re Nat'l Hockey League Players' Concussion Injury Litig.*, 189 F. Supp. 3d 856, 879  (D. Minn. 2016). Indeed, the *Duerson* court itself "express[ed] no view on the ultimate validity of [the] interpretation" of whether the existence of a duty on Clubs lessens the duties owed by the NFL." 2012 WL 1658353, at *4 (N.D. Ill. May 11, 2012).

[13] Although the *Stringer* action also involved claims for wrongful death, the decision does not reflect whether those claims were independent statutory causes of action like those raised by the Seau Children and does not confront the limitations on preemption of such claims.  Indeed, the NFL does not cite *Stringer* in support of its arguments regarding preemption of the instant wrongful death claims.  (Mot. at 31.)

dangers associated with the same, an injury that not amenable to treatment by sideline medical personnel, unlike the heat related illnesses at issue in *Stringer*.  Further, *Stringer's* claims were limited to negligence – that decision does not support preemption of claims, like Junior's, alleging fraud.  The NFL cannot contract away its duty not to lie to players.

The NFL's reliance on readily distinguishable allegations only demonstrates the weakness of their preemption arguments and the lack of any substantive interpretative dispute. Absent such a dispute, there is no basis to preempt Junior's claims.

### C.    The Seau Family's Action Must be Remanded.

Because neither Junior's nor the Seau Children's claims are subject to preemption under § 301, the Court does not and never had subject matter jurisdiction over their state law causes of action.  It must remand the Seau Family's action to San Diego Superior Court where it was originally filed.  The Court's subject matter jurisdiction is always at issue, and an MDL court must remand a decision if it determines that removal was improper.  *See* 28 U.S.C. 1447(c).[14] Here, there is no diversity of citizenship that would support removal, as both the Seaus and the NFL are residents of California.  *See* Seaus' Opposition to the NFL Defendant's Motion to Dismiss for Failure to State a Claim at 4.  The sole basis for federal court jurisdiction and removal of these claims was LMRA preemption.  *See* No. 13-cv-0478-W (RBB), Dkt. No. 1 at 3-8 (describing LMRA preemption as the sole ground for removal to federal court).  Because the claims are not preempted under § 301, there is no subject matter jurisdiction and the Court must remand the claims to state court in California.

### IV.    Conclusion

The NFL's Motion stretches § 301 preemption beyond what the law provides and logic dictates, in an attempt to erase the Seau Family's state law claims.  The preemption defense does not apply to their claims because the Seau Children, who were not signatories to any CBA, could not access the grievance procedure or bring a claim under § 301.  If their claims are subject to

---

[14] In addition, the Seau Family expressly retained its right to challenge the Court's subject matter jurisdiction over these claims when the matter was removed to federal court.  *See* No. 13-cv-0478-W (RBB), Dkt. No. 4 at 1.

preemption, the NFL (who also is not a signatory to the CBA) will have deprived them of any forum to adjudicate the wrongs that the league committed against their father, an unjust and illegal result. Moreover, Supreme Court precedent protects the Seau Children's wrongful death claims, by forbidding a broad application of § 301 preemption that eliminates independent state protections separate from any CBA. Dismissal of these claims would also be improper because it could not serve the policies underlying LMRA preemption, as the Seau Children's claims are not subject to private grievance and do not threaten inconsistent application of federal labor law. In addition, Junior's claims are not preempted because the NFL has not identified any specific interpretative dispute regarding the terms of the CBA. Because § 301 preemption does not apply to the Seau Family's claims, the NFL's Motion to Dismiss should be denied in its entirety and the family's action should be remanded back to California state court, as this Court does not have subject matter jurisdiction over these claims.

Dated: December 8, 2017                         **RESPECTFULLY SUBMITTED:**


/s/ Steven M. Strauss
Steven M. Strauss

COOLEY LLP
STEVEN M. STRAUSS (SBN 99153)
(SMS@COOLEY.COM)
DENNIS C. CROVELLA (SBN 190781)
(DCROVELLA@COOLEY.COM)
MEGAN L. DONOHUE (SBN 266147)
(MDONOHUE@COOLEY.COM)
4401 Eastgate Mall
San Diego, CA 92121
Telephone: (858) 550-6000
Facsimile: (858) 550-6420

*Attorneys for Plaintiffs Tyler Seau, Sydney Seau, Jake Seau, Gina Seau as guardian ad litem for H. Seau, a minor, and Bette Hoffman, as trustee of the Tiaina B. Seau, Jr. 2002 Trust*

## CERTIFICATE OF SERVICE

I certify that I caused a copy of the foregoing document to be electronically filed with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

Dated: December 8, 2017

/s/ Steven M. Strauss
Steven M. Strauss