# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 12-md-2323 (AB) |
| | MDL No. 2323 |
| THIS DOCUMENT RELATES TO: | |
| Seau et al. v. National Football League et al., No. 13-cv-01531-AB | Hon. Anita Brody |

**SEAU FAMILY'S OPPOSITION TO DEFENDANTS NATIONAL FOOTBALL LEAGUE'S AND NFL PROPERTIES LLC'S MOTION TO DISMISS THE SECOND AMENDED MASTER ADMINISTRATIVE COMPLAINT FOR FAILURE TO STATE A CLAIM**

**Table of Contents**

**Page**

I.      INTRODUCTION ..................................................................................... 1

II.     FACTUAL BACKGROUND ..................................................................... 2

III.    STANDARD OF REVIEW ........................................................................ 4

IV.     LEGAL ARGUMENT ............................................................................... 4

        A.    The NFL's Failure to Conduct a Proper Choice of Law Analysis Warrants Denial of the Motion and California Law Applies to the Seau Family's Claims. .......................................................................................... 4

              1.    Under the Government Interest Analysis, California Law Applies to Accrual of Junior's Claims ................................... 6

              2.    Under the Government Interest Analysis, California Law Applies to the Seau Children's Wrongful Death Claims ....................................... 9

        B.    Statute of Limitations is Not a Defense at this Stage and Does Not Defeat the Seau Family's Claims ................................................. 11

              1.    Junior's Claims Accrued, at earliest, in May 2010 ................................ 11

              2.    The Seau Children's Claims Accrued Upon Junior's Death in May 2012 .......................................................................................... 13

        C.    Plaintiffs' Fraud Claims Are Sufficiently Pleaded. ............................ 14

              1.    The SAMAC Satisfies Rule 9(b)'s Particularity Requirement ............... 14

              2.    Plaintiffs Sufficiently Plead Intent to Induce Reliance and Reliance ...... 16

              3.    Plaintiffs Sufficiently Allege the Existence of a Duty to Disclose .......... 17

        D.    The Seau Children are Entitled to Substantial Damages for Loss of Comfort and Society ......................................................................... 18

V.      CONCLUSION ......................................................................................... 20

# Table of Authorities

Page(s)

**Cases**

*In re Aircrash In Bali, Indonesia on Apr. 22, 1974,*
  684 F.2d 1301 (9th Cir. 1982) ...........................................................................5

*Alliance Mortg. Co. v. Rothwell,*
  10 Cal. 4th 1226 (1995) ....................................................................................17

*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC,*
  158 Cal. App. 4th 226 (2007) ...........................................................................16

*Apr. Enters, Inc. v. KTTV,*
  147 Cal. App. 3d 805 (1983) ............................................................................13

*Ashland Chem. Co. v. Provence,*
  129 Cal. App. 3d 790 (1982) ..............................................................................6

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007).............................................................................................4

*Bernson v. Browning-Ferris Indus. of Cal., Inc.,*
  7 Cal. 4th 926 (1994) ........................................................................................13

*Borer v. American Airlines, Inc.,*
  19 Cal. 3d 441 (1977) .......................................................................................18

*C.T. Carden v. Arkoma Assocs.,*
  494 U.S. 185 (1990).............................................................................................4

*Camp v. Forwarders Transp., Inc.,*
  537 F. Supp. 636 (C.D. Cal. 1982) ...................................................................10

*Cervantes v. City of San Diego,*
  5 F.3d 1273 (9th Cir. 1993) ..............................................................................11

*Charpentier v. Los Angeles Rams Football Co.,*
  75 Cal. App. 4th 301 (1999) ........................................................................16, 17

*In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mkt. & Sales Prac.
  Litig.,*
  No. 12-2320, 2013 WL 1332097 (D.N.H. Apr. 2, 2013)....................................5

*Corcoran v. York Power Authority,*
  202 F.3d 530 (2nd Cir. 1999).............................................................................9

**Table of Authorities**
**(continued)**

**Page(s)**

*Corder v. Corder*,
    41 Cal. 4th 644 (2007) ...................................................................................18

*Cossman v. DaimlerChrysler Corp.*,
    108 Cal. App. 4th 370 (2003) .........................................................................8

*D'Aiuto v. City of Jersey City*,
    No. CIVA 06-6222 JAG, 2007 WL 2306791 (D.N.J. Aug. 8, 2007) ......................................6

*Davies v. Krasna*,
    14 Cal. 3d 502 (1975) .................................................................................8, 9

*Dei Rossi v. Whirlpool Corp.*,
    No. 2:12-CV-00125-TLN, 2015 WL 1932484 (E.D. Cal. Apr. 28, 2015) .........................8, 14

*Deutsch v. Turner Corp.*,
    324 F.3d 692 (9th Cir. 2003) ...........................................................................7

*Don Yoon v. United States*,
    No. 10CV1578 JM MDD, 2011 WL 6826662 (S.D. Cal. Dec. 28, 2011)...........................18

*E–Fab, Inc. v. Accountants, Inc. Servs.*,
    153 Cal. App. 4th 1308 (2007) ......................................................................12

*Engalla v. Permanente Med. Grp., Inc.*,
    15 Cal. 4th 951 (1997) .......................................................................14, 16, 17

*Eriksson v. Nunnink*,
    233 Cal. App. 4th 708 (2015) .........................................................................9

*Errico v. Pacific Capital Bank, N.A.*,
    753 F. Supp. 2d 1034 (N.D. Cal. 2010) .........................................................15

*Fox v. Ethicon Endo-Surgery*,
    35 Cal. 4th 797 (2005) .............................................................................7, 12

*Giest v. Sequoia Ventures, Inc.*,
    83 Cal. App. 4th 300 (2000) .........................................................................8

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ......................................................................14

*Grisham v. Philip Morris U.S.A., Inc.*,
    40 Cal. 4th 623 (2007) ...............................................................................13

Table of Authorities
(continued)

Page(s)

*Gutierrez v. Mofid*,
    39 Cal. 3d 892 (1985) ..................................................................................................7

*Hahn v. Mirda*,
    147 Cal. App. 4th 740 (2007) ......................................................................................14

*Harris v. Polskie Linie Lotnicze*,
    820 F.2d 1000 (9th Cir. 1987) ....................................................................................10

*Horwich v. Super. Ct.*,
    21 Cal. 4th 272 (1999) .............................................................................................9, 14

*Husain v. Olympic Airways*,
    No. C 99-1400 CRB, 2000 WL 1780264 (N.D. Cal. Nov. 28, 2000) ...........................9

*Jaeger v. Howmedica Osteonics Corp.*,
    No. 15-CV-00164-HSG, 2016 WL 520985 (N.D. Cal. Feb. 10, 2016) .........................5

*Jolly v. Eli Lilly & Co.*,
    44 Cal. 3d 1103 (1988) ..........................................................................................7, 12

*Kalan v. Farmers & Merchants Tr. Co. of Chambersburg*,
    No. CV 15-1435, 2015 WL 7887893 (E.D. Pa. Dec. 3, 2015) .....................................5

*Kasel v. Remington*,
    24 Cal. App. 3d 711 (1974) ..........................................................................................7

*Kearney v. Salomon Smith Barney, Inc.*,
    39 Cal. 4th 95 (2006) .........................................................................................6, 8, 10

*Kincaid v. Kincaid*,
    197 Cal. App. 4th 75 (2011) .....................................................................................9, 14

*LiMandri v. Judkins*,
    52 Cal. App. 4th 326 (1997) .......................................................................................17

*Madison v. Super. Ct.*,
    203 Cal. App. 3d 589 (1988) ........................................................................................9

*Markowitz v. Ne. Land Co.*,
    906 F.2d 100 (3d Cir. 1990)..........................................................................................4

*McCann v. Foster Wheeler LLC*,
    48 Cal. 4th 68 (2010) ...............................................................................................7, 9

**Table of Authorities**
**(continued)**

**Page(s)**

*McTernan v. City of York*,
    577 F.3d 521 (3d Cir. 2009)...........................................................................4

*Estate of Migliaccio v. Midland Nat'l Life Ins. Co*.,
    436 F. Supp. 2d 1095 (C.D. Cal. 2006) ........................................................15

*Multimedia Patent Trust v. Microsoft Corp*.,
    525 F. Supp. 2d 1200 (S.D. Cal. 2007)..........................................................16

*National Football League v. Fireman's Fund Insurance Co., et al.*,
    2013 WL 233176 (Cal. App. 2 Dist.)...............................................................4

*Norgart v. Upjohn Co*.,
    21 Cal. 4th 383 (1999) ..................................................................................13

*In re Nucorp Energy Sec. Litig*.,
    772 F.2d 1486 (9th Cir. 1985) .........................................................................5

*Offshore Rental Co. v. Cont'l Oil Co*.,
    22 Cal. 3d 157 (1978) .....................................................................................6

*Outboard Marine Corp. v. Superior Court*,
    52 Cal. App. 3d 30 (1975) .............................................................................17

*Paregien v. Perez*,
    No. F067517, 2015 WL 1014194 (Cal. Ct. App. Mar. 5, 2015)......................18

*Peel v. BrooksAmerica Mortg. Corp*.,
    788 F. Supp. 2d 1149 (C.D. Cal. 2011) ........................................................16

*Rogers v. Warden*,
    20 Cal. 2d 286 (1942) ...................................................................................18

*Rufo v. Simpson*,
    86 Cal. App. 4th 573 (2001) .....................................................................18, 19

*Saliter v. Pierce Bros. Mortuaries*,
    81 Cal. App. 3d 292 (1978) ...........................................................................12

*Schmidt v. Skolas*,
    770 F.3d 241 (3d Cir. 2014)...........................................................................11

*Serv. by Medallion, Inc. v. Clorox Co*.,
    44 Cal. App. 4th 1807 (1996) ........................................................................14

**Table of Authorities**
**(continued)**

**Page(s)**

*Snyder v. Town Insulation, Inc.*,
81 N.Y.2d 429 (1993) ....................................................................................................7

*In re Sunrise Sec. Litigation*,
698 F. Supp. 1256 (E.D. Pa. 1988) ...............................................................................5

*Thompson v. Real Estate Mortg. Network*,
748 F.3d 142 (3d Cir. 2014) ..........................................................................................4

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) .................................................................................................17

*Tucci v. Club Mediterranee*,
89 Cal. App. 4th 180 (2001) ..........................................................................................5

*In re United Parcel Service, Air-In-Ground Mkt. & Sales Prac. Litig.*,
580 F. App'x 543 (9th Cir. 2014) ..................................................................................4

*United States v. Martin*,
454 F. Supp. 2d 278 (E.D. Pa. 2006) ............................................................................6

*Walton v. S. Pac. Co.*,
8 Cal. App. 2d 290 (1935) ...........................................................................................13

*Washington Mut. Bank, FA v. Superior Court*,
24 Cal. 4th 906 (2001) ..............................................................................................5, 6

*Wilson v. Lockheed Aircraft Corp.*,
210 Cal. App. 2d 451 (1962) .......................................................................................10

*Zinn v. Ex-Cell-O Corp.*,
148 Cal.App.2d 56 (1957) .............................................................................................8

**Statutes**

Cal. Civ. Proc. Code
    § 338........................................................................................................................12
    § 335.1.....................................................................................................................13
    § 338(d)....................................................................................................................12
    § 366.1.....................................................................................................................12
    § 377.60..............................................................................................................4, 9, 13

Fed. R. Civ. Proc.
    Rule 9.......................................................................................................................12

**Table of Authorities**
**(continued)**

**Page(s)**

N.Y. C.P.L.R. § 203(g) ...........................................................................................................7

N.Y. Est. Powers & Trusts Law § 5-4.1 ...............................................................................9

**Other Authorities**

Restatement, Conflict of Laws

    § 175 (1969) ....................................................................................................................10

    § 377 ................................................................................................................................8

I.    **INTRODUCTION**

Junior Seau ("Junior") was one of the greatest and most beloved players in NFL history. He played with tremendous passion and skill over the course of 20 years in the NFL, playing more downs than any linebacker in NFL history.  Junior literally gave his life for the game.  Tragically, at the age of 43, Junior put a gun to his chest and killed himself, leaving behind four children and a host of unanswered questions.  But Junior's death was not in vain – it led to an independent study by the National Institutes of Health that conclusively established Junior suffered from chronic traumatic encephalopathy ("CTE"), now known as the industrial disease of football.  The latent head injuries Junior suffered throughout his NFL career caused both his CTE and his death.  Yet for decades, the National Football League and NFL Properties LLC (collectively, the "NFL") misrepresented and concealed the true risk of head injuries from its players and the public alike. Now the NFL, which profited immensely from Junior's devotion to the game, callously asserts that claims related to his death and the league's wrongdoing do not even proceed past the dismissal stage.  Incredibly, the NFL relies on its concealment of the risks of latent head injury to assert that the instant claims are time barred.  In addition, the NFL argues that despite detailed allegations regarding the NFL's concealment and misrepresentations over several decades, it cannot assess the fraud claims against it.  Lastly, the NFL asserts that Junior's children are not entitled to recover for the loss of their father's love and comfort.  The NFL's arguments are as insulting as they are wrong and the Motion to Dismiss Plaintiffs' Second Amended Master Administrative Complaint for Failure to State a Claim ("Mot.") should be denied.[1]

**First**, the NFL has not met its burden to show that the law its Motion relies on, New York and Pennsylvania, applies to the Seau Family's claims.  For this reason alone, denial is appropriate. The NFL cannot measure the sufficiency of the Seaus' action – arising from and filed in California – against foreign-state law without meeting California's choice of law test.  Under that test, California law governs this action and does not support the NFL's arguments for dismissal.

---

[1] These arguments are in addition to those made by the Opposition by Lead Counsel for the Opt Out Plaintiffs.

**Second**, the Court cannot determine the timeliness of claims at this stage of the litigation. Even if it could, Junior's claims are timely, as the NFL's arguments ignore the relevant California law and assert that plaintiffs should have known of their latent head injuries by the end of their last season, despite the NFL's misrepresentations that football had no connection to long term brain injury. California's discovery rule protects these claims. Regardless, the Seau Children's wrongful death claims, which did not accrue until Junior's death, are unquestionably timely. **Third**, Plaintiffs have properly pleaded all of the elements of the NFL's fraudulent actions in a manner that satisfies Rule 9(b), including over 100 pages of detailed factual allegations describing the NFL's omissions and misrepresentations and the "sham science" from which they emanated, that players and the football public relied on these messages and the NFL's duty to speak truthfully. **Fourth**, the Seau Children are entitled to substantial non-economic damages for the tragic loss of their father. The NFL's argument to the contrary misunderstands non-economic damages in a California wrongful death action and disregards the Seau Children's loss. The Seaus request that the Court deny the NFL's Motion to Dismiss the Second Amended Master Administrative Complaint ("SAMAC").

## II.   FACTUAL BACKGROUND

Throughout Junior's career and over the course of several decades, the NFL endeavored to conceal and misrepresent the true risk of mild traumatic brain injury ("MTBI") and permanent, latent brain disease. (Second Amended Master Administrative Complaint ("SAMAC") ¶¶ 51-63, 165, 173.) The NFL had access to and knowledge of scientific evidence linking MTBI with long-term brain injury (*Id.* ¶¶ 84-92), as well as a duty to "protect players and the public from unreasonable harm" (*Id.* ¶¶ 51, 93-100). Despite this, the NFL "failed to warn" Junior, NFL players, and the public of the "medical risks associated with repetitive head impacts during NFL games and practices." (*Id.* ¶¶ 51-63, 102, 234, 235, 345, 395.)

But, the NFL was not merely silent on the risks of MTBI. In 1994, it instituted the MTBI Committee ("Committee") to study head injury in NFL players, affirmatively assuming a duty to exercise "reasonable care in the MTBI Committee's work" in the process. (*Id.* ¶¶ 182, 340, 344, 363, 389.) Instead, the Committee embarked on a campaign to create sham science to misrepresent

and conceal the true effects of repetitive MTBI on players and the football public through at least 2010. (*Id.* ¶¶ 56, 163, 164, 165, 172, 173.)  The Committee published numerous technical papers and studies concluding, "there are no long-term negative health consequences associated with concussions or sub concussive injuries sustained by NFL players." (*Id*. ¶¶ 202, 234, 241 (detailing specific statements).)  Yet, these findings contradicted decades of independent research. (*Id.* ¶¶ 234-240.)  During the same period, the NFL actively and publicly attacked, undermined, and disregarded medical community findings establishing a link between MTBI during professional football and neurocognitive damage, illness, and neurodegenerative decline. (*Id*. ¶¶ 56, 59.)

Junior was an active NFL player throughout this period, beginning in 1990 for the San Diego Chargers, and then for the next twenty consecutive years, retiring after the 2009 season. (Short Form Complaint ("SFC") ¶ 14.)  He sustained countless repetitive traumatic sub-concussive and concussive head impacts that led to brain injury over his career. (SFC ¶ 8.)  Yet, for sixteen seasons, the Committee and the NFL propagated false science regarding the dangers of latent head injury and undermined independent studies regarding the same. (SAMAC ¶¶ 56, 63, 345.)  As an NFL player, Junior was the primary target of the Committee and the NFL's conclusions that (1) MTBI does not increase risk of long term brain injury, and (2) there is no increased risk of "returning to play" after experiencing MTBI. (*Id.* ¶¶ 241, 279, 345; SFC ¶ 14.)  The effects of MTBI began to materialize towards the end of Junior's career, and his mental health deteriorated rapidly after retirement.  It was not until May 24, 2010, after Junior's retirement, that the NFL first indicated the Committee's science and the NFL's guidance was flawed. (SAMAC ¶¶ 302-304.)

Less than two years later, on May 2, 2012, Junior shot himself in the chest in his San Diego home as a result of injuries he sustained in the NFL.  Plaintiffs Tyler Seau, Sydney Seau, Jake Seau, Gina Seau as guardian ad litem for ██████ Seau, and Bette Hoffman, as the trustee of the Tiaina B. Seau, Jr. 2002 Trust (collectively, "Seau Family"), filed this action in San Diego Superior Court on January 23, 2013, after an independent triple blind study by the National Institutes of Health conclusively established that Junior was afflicted with CTE. (SFC ¶ 9.)  The NFL's conduct concealed the facts that both Junior and the Seau Family needed to address Junior's latent brain

injury, and the loss of their father, mentor and friend ensues from this failure.  Junior's children, Tyler, Sydney, Jake and ███ ("Seau Children"), bring claims for wrongful death under California Code of Civil Procedure § 377.60.  (SFC ¶ 10 & Attachment A.)  His estate, represented by Ms. Hoffman, brings claims for the causes of action that Junior held against the NFL at the time of his death.  (SFC Attachment A.)  The Seau Family, like Junior, are all residents of San Diego County, California.  (*Id.* ¶ 6.)  The NFL, an unincorporated association (SAMAC ¶ 35), is also a California resident, as it legally resides in the states where its clubs are located.  *See C.T. Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-196 (1990); *Nat'l Football League v. Fireman's Fund Insurance Co., et al.*, 2013 WL 233176 at 39 (Cal. App. 2 Dist.) (NFL motion papers arguing it is resident of California). Defendant NFL Properties, Inc. ("NFLP") is a limited liability company organized under the laws of Delaware and headquartered in New York.  (Mot. at 4; SAMAC ¶ 39.)

## III.    STANDARD OF REVIEW

Plaintiffs prevail on a motion to dismiss under Rule 12(b)(6) if the complaint sets forth "a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014); Fed. Civ. P. 8(a)(2) (complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face.").  The Court must view the complaint in the light most favorable to the Seau Family and draw all inferences in their favor. *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009).  For these reasons, Rule 12(b)(6) dismissal is only appropriate "where it is certain that no relief could be granted under any set of facts that could be proved."  *Markowitz v. Ne. Land Co*., 906 F.2d 100, 103 (3d Cir. 1990).

## IV.    LEGAL ARGUMENT

### A.    The NFL's Failure to Conduct a Proper Choice of Law Analysis Warrants Denial of the Motion and California Law Applies to the Seau Family's Claims.

The NFL's Motion fails from the start – by improperly ducking a choice of law analysis the Motion leaves the Court without any basis to determine what law controls these arguments.

This omission in and of itself warrants denial.  *See In re United Parcel Service, Air-In-Ground Mkt. & Sales Prac. Litig.*, 580 F. App'x 543, 544 (9th Cir. 2014) (vacating grant of motion to dismiss in MDL, and holding that "[t]he district court should have addressed choice of law and conflict of law before making a determination on the merits of UPS's dismissal motions"); *Kalan v. Farmers & Merchants Tr. Co. of Chambersburg*, No. CV 15-1435, 2015 WL 7887893, at *3 (E.D. Pa. Dec. 3, 2015) (denying motion to dismiss where parties failed to conduct a choice of law analysis); *In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mkt. & Sales Prac. Litig.*, No. 12-2320, 2013 WL 1332097, at *1-2 (D.N.H. Apr. 2, 2013) (same).  While the NFL concedes that a choice of law issue exists and reserves its ability to make future arguments based on different state laws, its Motion declines to conduct any choice of law analysis.  (Mot. at 11 n.9.)  Instead, the NFL offers general arguments under New York and Pennsylvania law (*id*), without establishing that either law is applicable to the Seau Family's claims (they are not).  As such, the Court has no basis to assess the merits of the NFL's arguments on the instant claims and should deny the Motion.

Instead of cherry picking state laws to support dismissal of the Seau Family's claims, the NFL had the burden to analyze the issue according to the choice of law rules of California, where the Seau Family filed their complaint.  *In re Sunrise Sec. Litigation*, 698 F. Supp. 1256, 1261 (E.D. Pa. 1988) (the choice of law rules of transferor court controls in MDL); *In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1492 (9th Cir. 1985) (same); (SFC ¶ 9.)  It expressly refused to meet this burden (Mot. at 11 n.9), and its footnote suggesting the possible applicability of New York or Pennsylvania law falls far short.  *Jaeger v. Howmedica Osteonics Corp.*, No. 15-CV-00164-HSG, 2016 WL 520985, at *6 (N.D. Cal. Feb. 10, 2016) (use of a footnote to skirt choice of law analysis insufficient to warrant application of a foreign state's law).  The NFL's refusal to conduct the proper analysis means it is now subject to California law.  *See Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919 (2001) (California will apply its own law unless a party timely invokes the law of a foreign state that has a greater interest); *In re Aircrash In Bali, Indonesia on Apr. 22, 1974*, 684 F.2d 1301, 1307 (9th Cir. 1982) (same); *Tucci v. Club Mediterranee*, 89 Cal. App. 4th 180, 188-89 (2001) (a party invoking foreign law must show it is

applicable under the state's choice of law rules). [2]

Even if the NFL conducted the proper choice of law analysis using the California rules, that analysis demonstrates that California law applies to the Seau Family's claims. California uses a three-step "government interest" approach. *See Tucci*, 89 Cal. App. 4th at 188. First, the Court determines whether there is a material difference between the laws of each state with regard to the specific legal issue. *Washington Mut. Bank*, 24 Cal. 4th at 920. Second, if there is a difference, the court examines each state's interest in the application of its own law. *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107-08 (2006). If only one state has an interest, the court applies that state's law. *Ashland Chem. Co. v. Provence*, 129 Cal. App. 3d 790, 794 (1982). Third, if both states have an interest and the laws conflict, the court must evaluate and apply the law of the state whose "interest would be more impaired." *Kearney*, 39 Cal. 4th at 108. California law applies if the party invoking foreign law fails to satisfy any one of these steps. *See Offshore Rental Co. v. Cont'l Oil Co.*, 22 Cal. 3d 157, 163 (1978). Under this test, California's substantial interest in securing the rights of resident plaintiffs and deterring wrongful conduct by defendants within its borders establishes that California law controls the Seau Family's claims.

> **1.      Under the Government Interest Analysis, California Law Applies to Accrual of Junior's Claims**.

California law controls the NFL's arguments regarding any statute of limitations defense, as it has a greater interest in protecting the rights of residents like the Seau Family and deterring the acts of residents like the National Football League within its borders. First, there are important differences between California and New York statute of limitations law that effect the NFL's arguments for dismissal.[3] California law establishes that under the "discovery rule . . . the accrual

---

[2] The NFL's refusal to address the choice of law question in its opening brief effectively waives the argument on Reply. *See United States v. Martin*, 454 F. Supp. 2d 278, 281 n.3 (E.D. Pa. 2006) (a reply brief "is not intended as a forum to raise new issues."); *D'Aiuto v. City of Jersey City*, No. CIVA 06-6222 JAG, 2007 WL 2306791, at *4 n.1 (D.N.J. Aug. 8, 2007) ("[i]t is improper for the moving party to 'shift gears' and introduce new facts or different legal arguments in the reply") (citation omitted).

[3] While the NFL's Motion applies both New York and Pennsylvania law, Pennsylvania was not the forum in which the Seau Family filed their action and has no other connection to the Seau litigants. Therefore, the above choice of law analysis is limited to California and New York law.

date of a cause of action is delayed until the plaintiff is aware of her injury *and its negligent cause*." *See, e.g., Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1109 (1988) (emphasis added). A complaint sufficiently pleads the discovery rule by alleging facts indicating sources "open to [plaintiff's] investigation" would not have led to the discovery of Plaintiff's claim. *See Fox v. Ethicon Endo-Surgery*, 35 Cal. 4th 797, 808 (2005); *Gutierrez v. Mofid*, 39 Cal. 3d 892, 905 (1985) ("a diligent plaintiff should not be penalized where the sources open to her investigation do not lead to the discovery of her cause of action but, instead, impede it."). New York, in contrast, recognizes the discovery rule for purposes of accrual only in the context of toxic tort litigation and certain securities fraud claims. *See Snyder v. Town Insulation, Inc.*, 81 N.Y.2d 429, 434-35 (1993); N.Y. C.P.L.R. 203(g). The NFL's Motion ignores California's discovery rule, contending, "Plaintiffs' negligence-based claims accrued . . . no later than their last NFL season." (Mot. at 35.) This is contrary to well-established California law and application of New York's statute of limitations law would threaten the Seau Family's ability to pursue the estate's claims despite their diligence.

But New York law does not apply in this case, as California is the only state with a legitimate interest in applying its statute of limitations law to the Seau Family's action, which arose in California and involves California plaintiffs. Specifically, California is: (1) where Junior resided throughout his NFL career, even when playing for teams in Miami and New England, and where he was primarily exposed to the NFLs' omissions and misrepresentations, (2) where Junior resided following retirement, when his mental health began to precipitously decline, (3) where Junior committed suicide as a result of his brain injury, and (4) where the Seau Children reside and where they suffered their own injuries. California's interest in providing compensation for its residents and addressing injuries arising within its borders is substantial. *Kasel v. Remington*, 24 Cal. App. 3d 711, 734 (1974) (where the issue is "compensation of the injured person, California courts have tended to apply the law of the place of the injured's domicile, finding that that state has the greatest interest in compensating its domiciliaries"); *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 97 (2010) (finding state has substantial interest in applying its law to cases arising from injuries occurring within its borders); *Deutsch v. Turner Corp.*, 324 F.3d 692, 716 (9th Cir.

2003) (for statute of limitations conflicts "the governmental interest approach generally leads California courts to apply California law."). As California's discovery rule protects "the practical needs" of negligently injured plaintiffs it naturally supports the state's interest in compensating residents. *Davies v. Krasna*, 14 Cal. 3d 502, 512-13 (1975).

In addition, California has an interest in subjecting the National Football League, a "resident" defendant transacting substantial business within California's borders, to its accrual law. *See Nelson v. Int'l Paint Co.*, 716 F.2d 640, 644-45 (9th Cir. 1983) (finding California to be the "only interested state" where "California is the forum and the defendant is a California resident."); *Kearney*, 39 Cal. 4th at 113 ("for businesses which actively solicit extensive California patronage, [increased exposure] is a foreseeable . . . expense"). The location of the corporate headquarters of the National Football League and NFL Properties LLC in New York does not alter this analysis. *See United States ex rel. Hooper*, 2008 WL 11284908, at *4 (declining to apply foreign law based on location of corporate headquarters because the "nexus to this dispute is far too attenuated for that state to have an interest in its resolution."). Nor does the location of the MTBI Committee. "No matter where the intention to misrepresent was formed, nor the acts which were misrepresented took place, no wrong was committed until the misrepresentations were communicated to plaintiffs. . ." *Zinn v. Ex-Cell-O Corp.*, 148 Cal. App. 2d 56, 80 n.6 (1957) (citing Restatement, Conflict of Laws § 377); *Dei Rossi v. Whirlpool Corp.*, No. 2:12-CV-00125-TLN, 2015 WL 1932484, at *10 (E.D. Cal. Apr. 28, 2015); *see also Cossman v. DaimlerChrysler Corp.*, 108 Cal. App. 4th 370, 378 (2003) (finding injury occurred in the state where plaintiff was exposed to asbestos); *Giest v. Sequoia Ventures, Inc.*, 83 Cal. App. 4th 300, 303 (2000) (applying law of the state where plaintiff was exposed to the harm in wrongful death action). Here, the NFL's wrongful conduct was not complete until it was communicated to (or concealed from) Junior in California. *Zinn*, 148 Cal. App. 2d at 80 n.6. Thus, the NFL's wrongful conduct toward Junior and the Seau Children did not occur in New York and does not support any interest by that state. In contrast, California has a significant interest in deterring wrongful conduct within its borders.

Even if the NFL articulated some interest held by New York (it has not), resolving the

8

Seaus' claims under New York law would substantially impair California's interests in protecting the "practical needs of [its] prospective plaintiffs" (*Davies*, 14 Cal. 3d at 512) and compensating victims harmed within its borders (*McCann*, 48 Cal. 4th at 97).  For these reasons, California law must apply to determine when Junior's cause of action accrued.

> ### 2.   Under the Government Interest Analysis, California Law Applies to the Seau Children's Wrongful Death Claims.

California has an even stronger interest, indeed a preeminent interest, in the application of its wrongful death laws to claims brought on behalf of California residents.  In California, wrongful death claims are independent, non-derivative statutory rights.  *See, e.g., Horwich v. Super. Ct.*, 21 Cal. 4th 272, 283 (1999) ("Unlike some jurisdictions wherein wrongful death actions are derivative, Code of Civil Procedure section 377.60 creates a new cause of action").  Junior could not waive these rights prior to his death.  *See Madison v. Super. Ct.*, 203 Cal. App. 3d 589, 596 (1988) ("this is a right which belongs not to [decedent] but to his heirs" that does not arise until the decedent's death); *Eriksson v. Nunnink*, 233 Cal. App. 4th 708, 725 (2015) (same).  Due to their independence, a statute of limitations defense as to the decedent does not bar wrongful death claims by his or her children.  *Kincaid v. Kincaid*, 197 Cal. App. 4th 75, 80-81 (2011) (wrongful death action timely filed despite running of statute of limitations as to decedent's claim).  New York law differs, holding that a defense as to the decedent applies with equal force to any plaintiff in a subsequent wrongful death suit.  *See* N.Y. Est. Powers & Trusts Law § 5-4.1; *Corcoran v. York Power Authority*, 202 F.3d 530, 541 (2nd Cir. 1999). The NFL's Motion exploits these differences, to argue that the present wrongful death claims "are derivative" and "cannot stand independently" (Mot. at 11 n.9) in an attempt to defeat the Seau Family's wrongful death claims.

But California law applies to wrongful death claims brought by California residents for a death within its borders.  "California has a greater interest than any other state in applying its law to protect and compensate Californians who are the victims of conduct leading to wrongful deaths."  *Husain v. Olympic Airways*, No. C 99-1400 CRB, 2000 WL 1780264, at *2 (N.D. Cal. Nov. 28, 2000), *aff'd*, 316 F.3d 829 (9th Cir. 2002), *aff'd*, 540 U.S. 644 (2004).  Its wrongful death

statute serves the dual interests of providing "recovery [to injured victims]" and deterring "the kind of conduct within its borders which wrongfully takes life." *Hurtado*, 11 Cal.3d at 583. The Seau Children's claims involve both interests. First, the Seau Children are "local beneficiaries" seeking recompense for damages for their father's death, a local decedent injured within the state. *Id.* Second, California has an independent interest in deterrence, as the National Football League is a "California defendant[] who allegedly caused wrongful death within its borders." *Id.* at 584.[4] Here, Junior's death in California dictates California law should apply to the resulting claims.

Application of New York's more lenient wrongful death law, under which the NFL seeks dismissal of the instant claims, would seriously impair California's interest in deterring wrongful conduct by the NFL within the state and protecting Junior's dependent family members. *See Camp v. Forwarders Transp., Inc.*, 537 F. Supp. 636, 642 (C.D. Cal. 1982) (holding application of New Jersey's law limiting standing for wrongful death claims would seriously impair California's interest in ensuring recovery by California residents). In contrast, application of California's wrongful death law would not seriously impair any interest New York may have in protecting corporate defendants because the NFL operates nationwide. *Id.* (where a business operates nationwide neither it nor its state of incorporation can expect that the state's lax wrongful death statute will protect the business regardless of where it causes injury). Moreover, the location of the NFL's headquarters in New York does not shield it from liability for its California-based conduct. *Kearney*, 39 Cal. 4th at 113. Thus, even if the NFL identified some New York interest in application of its law (it has not), California's substantial interest in regulating wrongful death within its borders would suffer the greater impairment. Thus, California law must apply.

---

[4] Similarly, the choice of law analysis for wrongful death claims under the Restatement generally presumes the applicability of the law of the state in which the death occurred, in order to ensure predictability and uniformity. *See e.g.* The Restatement (Second) of Conflict of Laws § 175 (1969) ("In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties"); *Harris v. Polskie Linie Lotnicze*, 820 F.2d 1000, 1003–04 (9th Cir. 1987) (applying the law of the state where the injury occurred "furthers the choice-of-law values of certainty, predictability and uniformity of result"); *Wilson v. Lockheed Aircraft Corp.*, 210 Cal. App. 2d 451, 452 (1962) ("it is the general rule that in an action for wrongful death, the law which governs is the law of the jurisdiction where the action for wrongful death arose").

**B.    Statute of Limitations is Not a Defense at this Stage and Does Not Defeat the Seau Family's Claims**.

While both Junior's claims and the claims of the Seau Children are timely, that issue is not yet properly before this Court.  The "sole issue" at this stage is whether the complaint, when "liberally construed," alleges facts sufficient to show the *potential* applicability of the discovery rule. *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) (reversing district court dismissal, "when the pleading does not reveal when the limitations period began to run ... the statute of limitations cannot justify Rule 12 dismissal."); *see also Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993) ("[equitable tolling] ordinarily requires reference to matters outside the pleadings, and is not generally amenable to resolution on a Rule 12(b)(6) motion").  The SAMAC raises the applicability of the discovery rule by alleging that because the NFL actively concealed and misrepresented "the true character, quality, and nature of the risks and dangers," Plaintiffs lacked any "realistic ability to discern that the symptoms they were experiencing were linked to latent brain disease, linked to the blows to the head they suffered during play until – at the earliest – after either the symptoms were finally recognized or after they learned of the Class Action lawsuit." (SAMAC ¶¶ 25-26.)  This is sufficient to invoke the discovery rule in California.   *See, e.g.*, *Schmidt*, 770 F.3d at 251 (the burden of pleading the discovery rule may not contravene the rule "that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense.")  The NFL has not and cannot demonstrate that, *as a matter of law*, the SAMAC reflects that Junior (or any other player) "discovered" that he suffered from CTE, and that the NFL's wrongful conduct caused it, before the filing of the class action lawsuits against the NFL in August 2011.  Thus, any statute of limitations defense is inapplicable at this stage.

**1.    Junior's Claims Accrued, at earliest, in May 2010.**

Regardless, Junior's claims did not accrue until he was on notice of the NFL's wrongdoing, at earliest, in May of 2010, and are therefore timely.  (SAMAC ¶¶ 302-304.)  Under the California discovery rule that controls Junior's claims, the two-year statute of limitations on negligence

claims and three-year statute of limitations on fraud[5] claims, do not start to run until the plaintiff is on notice of the defendant's wrongdoing.  *Jolly*, 44 Cal. 3d at 1109; *see also Fox*, 35 Cal. 4th at 807; *See E–Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1318 (2007) ("By statute, the discovery rule applies to fraud actions.") (citing Cal. Civ. Proc. Code § 338(d)).  This is because statutes of limitations "should not be interpreted so as to bar a victim of wrongful conduct from asserting a cause of action before he could reasonably be expected to discover its existence."  *See Saliter v. Pierce Bros. Mortuaries*, 81 Cal. App. 3d 292, 297 (1978).

As alleged in the SAMAC, Junior could not "discover" the source of his symptoms or the NFL's wrongdoing until August 17, 2011 when the first lawsuits in this action were filed (SAMAC ¶ 26).  The link between an NFL player's symptoms of latent injury, if any, and the wrongful conduct of the NFL was not reasonably available to players until after the NFL's misrepresentations, omissions, and conflicts of interest were fully described in the initiating class action lawsuits.  (*Id.*)  Thus, the shortest limitations period would not have expired until August 17, 2013.  Junior's claims, filed on January 23, 2013, are well within this timeframe.

Even if the Court considers dates prior to the class action filings, Junior's claims are still timely.  At earliest, Junior could not have discovered the NFL's wrongdoing until after the May 24, 2010 congressional hearing, when the NFL first publicly acknowledged the inherently flawed science of the MTBI Committee and denounced its validity.[6]  (SAMAC ¶¶ 302-304.)  Junior died on May 2, 2012, and pursuant to California Code of Civil Procedure section 366.1, his estate had an additional six months to bring any survival cause of action.  Also, a tolling agreement entered into by NFL and the Seaus on October 26, 2012, tolled the applicable limitations periods until January 31, 2013.  Accordingly, these claims, commenced on January 23, 2013, are timely.

Junior could not have discovered his claims prior to the NFL's public admission because the NFL fraudulently concealed, misrepresented, and publicly denounced any danger from latent

---

[5] Cal. Civ. Proc. Code §§ 338 (fraud), 335.1 (personal injury).

[6] In fact, the applicable date is almost certainly later, as active players did not receive substantive notice that the NFL had changed its views re the dangers of latent head injury until June 2010 when NFL issued an updated concussion brochure.  As Junior retired in 2009, he did not receive the updated concussion brochure.

head injury until that time.  (*See* SAMAC ¶¶ 19-21, 22-24, 25, 26.).  "A defendant's fraud in concealing a cause of action against him will toll the statute of limitations [for] as long as a plaintiff's reliance on the misrepresentations is reasonable."  *Grisham v. Philip Morris U.S.A., Inc*., 40 Cal. 4th 623, 637 (2007) (even widespread knowledge of a particular risk may not put the plaintiff on notice where defendant concealed the hazard); *Bernson v. Browning-Ferris Indus. of Cal., Inc*., 7 Cal. 4th 926, 931 (1994) (fraudulent concealment tolls statute of limitations); *see also Apr. Enters, Inc. v. KTTV*, 147 Cal. App. 3d 805, 831 (1983) ("plaintiffs should not suffer where circumstances prevent them from knowing they have been harmed. . . [and] defendants should not be allowed to knowingly profit from their injuree's ignorance.").  The NFL's intentional and reckless acts hid the very facts Junior needed to discover his claims.

Incredibly, the NFL now asserts that Junior's claims are not timely because he did not seek out and rely upon the same independent studies that it spent decades discrediting through the MTBI Committee and its false science.  (Mot. at 39.)  The NFL's argument is as bold as it is wrong under controlling California law.  The NFL tried throughout Junior's long NFL career to downplay and discredit the very information that might have saved his life.  California's discovery rule ensures the NFL's concealment does not prevent his estate from pursuing these claims.[7]  Reliance on these misrepresentations remained reasonable until, *at earliest*, May 24, 2010, when the NFL first acknowledged the unreliability of the Committee's research. (SAMAC ¶¶ 302-304.)

**2.    The Seau Children's Claims Accrued Upon Junior's Death in May 2012.**

The separate statutory claims brought by the Seau Children are also timely, as they did not accrue until Junior's death on May 2, 2012.  Under the California law that controls these claims, the wrongful death statute of limitations runs two years from the date of death. Cal. Civ. Proc. Code § 335.1; *Walton v. S. Pac. Co*., 8 Cal. App. 2d 290, 304 (1935).  That is when the cause of action is complete with all of its elements, including "(1) a 'wrongful act or neglect' on the part of

---

[7] In any event, allegations that the NFL used the Committee to propagate a false body of science to conceal "a cause of action against it," and Junior's reliance on the same raises questions of fact for a jury and withstand dismissal. *Grisham*, 40 Cal. 4th at 637.

one or more persons that (2) 'cause[s]' (3) the 'death of [another] person.'" *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 404 (1999) (quoting Cal. Civ. Proc. Code § 377.60).  It was not until Junior's death, on May 2, 2012, that the Seau Children's wrongful death claims accrued.  Thus, the two-year limitations period did not expire until May 2, 2014. Long before that, on January 23, 2013, the Seau Children filed their claims in San Diego, well within the statutory period.

Moreover, the Seau Children's wrongful death claims are timely irrespective of any statute of limitations defense that might apply to Junior's estate.  *Kincaid*, 197 Cal. App. 4th at 80-81 (finding wrongful death action timely even though the statute of limitations had run as to decedent's claim for alleged abuse).  An "action for wrongful death is an entirely new and independent cause of action created in the heirs" and is "distinct from any action the deceased might have maintained" if he survived.  *Id.*; *Horwich*, 21 Cal.4th at 287.  To the extent the NFL argues that Plaintiffs' wrongful death claims are untimely because they are "generally [] derivative" and "cannot stand independently" (Mot. at 11 n.9), this argument fails under California law.  *Kincaid*, 197 Cal. App. 4th at 80-81.

## C.    Plaintiffs' Fraud Claims Are Sufficiently Pleaded.[8]

### 1.    The SAMAC Satisfies Rule 9(b)'s Particularity Requirement.

The detailed allegations in the SAMAC state a claim for fraud that amply meets Rule 9(b)'s pleading requirements.[9]  That rule ensures that a defendant will have sufficient information to prepare an answer from the allegations, but it does not alter the settled rule that, on a motion to dismiss, the court accepts the non-movant's allegations as true and draws inferences in its favor.

---

[8] In any choice of law analysis, California law would apply because there is no clear difference between the elements for fraud in New York and California law. Further, California is the state in which Junior was subject to the NFL's misrepresentations.  *Dei Rossi v. Whirlpool Corp.*, No. 2:12-CV-00125-TLN, 2015 WL 1932484, at *10 (E.D. Cal. Apr. 28, 2015) (applying law of the state in which the misrepresentations were made).  Regardless, the NFL bears the burden of establishing that any law other than California applies.

[9] A complaint for fraud must allege: "(1) a knowingly false representation by the defendant; (2) an intent to deceive or induce reliance; (3) justifiable reliance by the plaintiff; and (4) resulting damages."  *Serv. by Medallion, Inc. v. Clorox Co.*, 44 Cal. App. 4th 1807, 1816 (1996); *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997), *as modified* (July 30, 1997).  Fraudulent concealment also requires the plaintiff to allege that the "defendant must have been under a duty to disclose the fact to the plaintiff."  *Hahn v. Mirda*, 147 Cal. App. 4th 740, 748 (2007).

*See, e.g., In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Rule 9(b) relaxes its specificity requirements where matters are exclusively within the opposing party's knowledge. *Estate of Migliaccio v. Midland Nat'l Life Ins. Co.*, 436 F. Supp. 2d 1095, 1106 (C.D. Cal. 2006).

The SAMAC alleges that the NFL orchestrated a misleading crusade from *at least* 1994 until 2010 through its MTBI Committee to convince football players and the public alike that there was no known risk of long-term brain injury associated with MTBI. (SAMAC ¶¶ 343, 345.) This campaign included (1) the intentional omission of study data evidencing the true effects of repetitive MTBI sustained during football (SAMAC ¶¶ 183, 321, 322, 180, 202, 236, 269-270, 279, 343, 345), (2) false statements to NFL players, emphasizing that "[c]urrent research with professional athletes has not shown that having more than one or two concussions leads to permanent problems if each injury is managed properly," (SAMAC ¶¶ 279, 183, 343, 345), (3) the refusal to acknowledge independent scientific studies evidencing the risk of repetitive MTBI (SAMAC ¶¶ 58, 183, 271, 272, 273-274, 275, 276, 277, 278), and (4) the deliberate and public effort to cast doubt on these studies (*Id.*). For instance, the SAMAC specifically alleges that the Committee made numerous misrepresentations pertaining to the risk of MTBI, including:

- "Current research with professional athletes has not shown that having more than one or two concussions leads to permanent problems if each injury is managed properly. It is important to understand that there is no magic number for how many concussions is too many. Research is currently underway to determine if there are any long-term effects of concussion[s] in NFL athletes" (*Id.* ¶ 279);

- "Players who are concussed and return to the same game have fewer initial signs and symptoms than those removed from play. Return to play does not involve a significant risk of a second injury either in the same game or during the season" (*Id.* ¶ 306(c));

- "There was 'no evidence of worsening injury or chronic cumulative effects of multiple [MTBI] in NFL players'" (*Id.* ¶ 306(e));

- "No NFL player experienced the second-impact syndrome or cumulative encephalopathy from repeat concussions" (*Id.* ¶ 306(i)).

Further, the SAMAC adequately alleges the who (*Id.* ¶¶ 172, 233, 270, 275-76, 279, 382), what (*Id.* ¶¶ 164-165, 173, 179, 232, 235, 237, 241, 270, 271, 275-76, 279, 382), where (*Id.* ¶¶ 182, 193, 202, 234, 270, 271, 275-76, 279, 382), when (*Id.* ¶¶ 234, 163, 166, 193, 235, 237, 270, 275-76, 279, 282), and how (*Id.* ¶¶ 182, 193, 202, 234, 270, 271, 275-76, 279, 382) of many of

the Committee's fraudulent statements. *See Errico v. Pacific Capital Bank, N.A*., 753 F. Supp. 2d 1034, 1049 (N.D. Cal. 2010); *Charpentier v. Los Angeles Rams Football Co*., 75 Cal. App. 4th 301, 312 (1999). Additional facts regarding these frauds are uniquely within the knowledge of the NFL, relaxing Rule 9(b)'s specificity requirement. At the very least, these allegations show the NFL "recklessly" misrepresented the true risk of MTBI "without regard for [its] truth" in the face of contrary scientific evidence. *Engalla v. Permanente Med. Grp., Inc*., 15 Cal. 4th 951, 974 (1997). This is "the equivalent of misrepresentations knowingly and intentionally uttered." *Id.*

### 2.    Plaintiffs Sufficiently Plead Intent to Induce Reliance and Reliance.

Plaintiffs also sufficiently allege that that the NFL intended for professional football players, like Junior, to rely on its false representations. (SAMAC ¶¶ 63, 165, 184, 334, 339.) Allegations of intent to defraud "may be pled generally." *Multimedia Patent Trust v. Microsoft Corp*., 525 F. Supp. 2d 1200, 1214 (S.D. Cal. 2007); *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 239 (2007). Plaintiffs allege that the NFL "reasonably expected that NFL players and the football community at large, including Plaintiffs, would rely on its research and pronouncements, in part because of the historic special relationship between the NFL and the players." (SAMAC ¶¶ 184, 308 ("the Commissioner believes if players are given the proper information, they can make good choices").)

The SAMAC also pleads actual reliance (*see* SAMAC ¶¶ 347, 366, 393, 406), by asserting plaintiffs would have behaved differently had they known the truth. *Peel v. BrooksAmerica Mortg. Corp*., 788 F. Supp. 2d 1149, 1162 (C.D. Cal. 2011); *Engalla*, 15 Cal. 4th at 976-77 (reliance need not be the sole factor in plaintiff's conduct). Plaintiffs allege they "would have taken protective measures or sought the diagnosis and treatment they would have needed" had they been aware that MTBI causes long-term brain damage. (SAMAC ¶¶ 394, 51, 52, 185.) Plaintiffs also allege their helmets "provide[d] football players with a false sense of security" that impacted their actions. (*Id.* ¶ 47.) These allegations are all that is required. *See Peel*, 788 F. Supp. 2d at 1162 (plaintiffs need not use "magic words 'read and relied on'" to establish reliance).

The SAMAC also pleads justifiable reliance. A "presumption, or at least an inference, of

reliance arises wherever there is a showing that a misrepresentation was material." *Engalla*, 15 Cal. 4th at 977.  A matter is material if "a reasonable [person] would attach importance to its existence or nonexistence in determining his choice of action." *Charpentier*, 75 Cal. App. 4th at313.  Here, a reasonable person, particularly a reasonable football player, would "attach importance" to the NFL's statements on latent head injury, including the 2007 pamphlet stating that research has *not* shown multiple concussion lead to "permanent problems" when making decisions pertaining to professional football play.  (SAMAC ¶ 279.)  The Court can presume reliance with respect to Junior's claims.[10]

### 3.  Plaintiffs Sufficiently Allege the Existence of a Duty to Disclose.

The SAMAC also adequately pleads the existence of a duty to support a claim for fraudulent concealment or omission under California law.  A failure to disclose may rise to actionable fraud in any of the following circumstances: (1) "when the defendant had exclusive knowledge of material facts not known to the plaintiff"; (2) "when the defendant actively conceals a material fact from the plaintiff"; and (3) "when the defendant makes partial representations but also suppresses some material fact."  *See, e.g.*, *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997), *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 37 (1975) (when the failure to disclose "is calculated to induce a false belief," the "active concealment has the same force and effect" as a misrepresentation).

Here, the SAMAC alleges that the NFL concealed material facts—the true risk of long-term brain injury caused by MTBI.  Plaintiffs also allege that the NFL, through the Committee, had (1) exclusive knowledge of the circumstances constituting the sham science, as the entity funding, designing, and controlling the flawed studies (SAMAC ¶¶ 63 163, 164), (2) the Committee actively concealed this risk by propagating false science and attacking independent

---

[10] Further, whether the reliance was justifiable is beyond the scope of the instant motion to dismiss. *Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995) ("Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact."); *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 326-27 (2009) (same).

studies supporting contrary conclusions (*Id.* ¶¶ 56, 173), and (3) that the Committee made numerous "partial disclosures," concerning this risk while omitting contradictory data (*Id.* ¶¶ 56, 180, 182, 202, 236, 241, 29-270, 306, 321, 322).   As the NFL voluntarily undertook "a duty to speak" through its MTBI Committee, it was "bound not only to state truly what he tells but also not to suppress or conceal any facts within his knowledge which materially qualify those stated. If he speaks at all he must make a full and fair disclosure." *Rogers v. Warden*, 20 Cal. 2d 286, 289 (1942).   Thus, Plaintiffs' fraudulent concealment claims are sufficiently stated.

**D.      The Seau Children are Entitled to Substantial Damages for Loss of Comfort and Society**.

While Junior was a hero to many NFL fans and the San Diego community at large, he was also a beloved father to four children.   Under California law, the Seau Children may recover substantial compensation for the "loss of love, companionship, comfort, affection, society, solace, or moral support" that they were deprived of as a result of the NFL's actions.   *Rufo v. Simpson*, 86 Cal. App. 4th 573, 614 (2001); *Borer v. American Airlines, Inc.*, 19 Cal. 3d 441, 452 (1977) ("Recovery for loss of affection and society in a wrongful death action [ ] fulfills a deeply felt social belief that a tortfeasor who negligently kills someone should not escape liability").   The amount of the award is "peculiarly" within the discretion of the jury and there is neither a formula for calculating these damages nor an upward limit for the amount.   *Rufo*, 86 Cal. App. 4th at 614-15.   Such damages focus on the "closeness of the family unit, the depth of their love and affection, and the character of the deceased as kind, attentive, and loving." *Mendoza v. City of W. Covina*, 206 Cal. App. 4th 702, 721 (2012).   A child's loss of "society, comfort and protection" caused by the death of a parent is "considerable." *Corder v. Corder*, 41 Cal. 4th 644, 661 (2007).[11]

The NFL's wrongdoing robbed the Seau Children of their father's love, affection and

---

[11] *See also Don Yoon v. United States*, No. 10CV1578 JM MDD, 2011 WL 6826662, at *7 (S.D. Cal. Dec. 28, 2011) (awarding $1.5 million to ***each*** of the decedent's three adult children for past and future non-economic damages noting "[t]he loss of [decedent] with her extraordinary gifts of love, guidance, companionship, care and comfort, once again, practically defies measure."); *Paregien v. Perez*, No. F067517, 2015 WL 1014194, at *1 (Cal. Ct. App. Mar. 5, 2015), *rev. denied* (June 17, 2015) (affirming award of $15 million total in non-economic damages, $7.5 million to each child-plaintiff, in a wrongful death action filed on behalf of their mother).

guidance – both during his life, as CTE deteriorated his mental capacity and increased his social isolation – and after his untimely death, at only 43 years of age.  Each of the Seau Children, who at the time of their father's death ranged in ages from 11 to 22, have missed their father's incredible warmth, humor and love every day since his death.  Yet, the NFL insists that the Seau Children's loss of comfort claims are limited and that one cited authority, *Rufo v. Simpson*, is "an extreme outlier" because it concerned "the $8.5 million recovery by the parents of Ron Goldman following the O.J. Simpson 'trial of the century.'"  (Mot. at 33 n.16.)  The NFL misunderstands not only the Seau Children's loss, but also the standard for ascertaining these damages, which has no upward limit or any proper "benchmark."  After the Seau Children testify regarding the devastating loss of Junior's love and support in their lives, a jury selected from his hometown of San Diego, where he lived and played for most of his career and was widely loved and respected for his contributions on and off the field, will decide any award.  And because of his role in professional football's concussion crisis and untimely death, Junior is a constant reminder of the changing tide of professional football and the NFL's wrongdoing. The amount of the award is "peculiarly" within the discretion of ***this*** jury. *Rufo*, 86 Cal. App. 4th at 615.

Further, there is no basis for the NFL's assertion that a trial in this matter would garner *less* media attention than the Simpson saga that resulted in the award in *Rufo*.  The Seau trial will address the same issues that made the Simpson litigation so compelling, including celebrity, the sensational and tragic demise of a local sports hero, and the suffering of those left behind.  But unlike the Simpson matter, the villain in this litigation is America's most popular sports league – the NFL.  The trial will chronicle the NFL's betrayal of one of its greatest heroes.  Furthermore, this trial will involve four children who lost their charismatic and loving father in a public and shocking manner, and is likely to result in damages that would exceed those awarded in *Rufo* and set a new standard in California. Trial of this case will most certainly attract considerable media attention (like Simpson) and will be a reputational challenge for the NFL.  The Seau Children are ready to provide compelling evidence of the losses they suffered and hold the NFL to account.

## V.   CONCLUSION

After decades of concealment and misrepresentations regarding the risk of latent head injury, the NFL cannot now avoid responsibility by asserting that the claims are time barred and that players, like Junior, who relied on the NFL's fraudulent guidance, may not state a claim.  The NFL has not even established that the law it relies on to support its Motion applies to the Seau Family's claims.  In fact, California law controls these claims and its laws do not support the NFL's arguments that the claims are untimely or that wrongful death is a derivative claim.  Moreover, the timeliness of the instant claims are not properly raised at this stage, but fail in any event, as California's "discovery rule" ensures the NFL may not rely on its concealment of the wrongful acts at issue to defeat Junior's claims.  Regardless, the Seau Children's separate statutory claims for wrongful death are unquestionably timely, as they did not accrue until Junior's death.  Further, the SAMAC and Short Form Complaint provide detailed allegations regarding the NFL's fraud and player's reliance on its misrepresentations and omissions.  Lastly, the Seau Children have a right to non-economic damages under controlling California law, to compensate their substantial losses from deprivation of their father's love and comfort. For these reasons, the Court should deny the NFL's Motion to Dismiss.

Dated: December 8, 2017

**RESPECTFULLY SUBMITTED**

/s/  Steven M. Strauss
Steven M. Strauss

COOLEY LLP
STEVEN M. STRAUSS (SBN 99153)
(SMS@COOLEY.COM)
DENNIS C. CROVELLA (SBN 190781)
(DCROVELLA@COOLEY.COM)
MEGAN L. DONOHUE (SBN 266147)
(MDONOHUE@COOLEY.COM)
4401 Eastgate Mall
San Diego, CA 92121
Telephone: (858) 550-6000
Facsimile: (858) 550-6420

*Attorneys for Plaintiffs Tyler Seau, Sydney Seau, Jake Seau, Gina Seau as guardian ad litem for H. Seau, a minor, and Bette Hoffman, as trustee of the Tiaina B. Seau, Jr. 2002 Trust*

20

**CERTIFICATE OF SERVICE**

I certify that I caused a copy of the foregoing document to be electronically filed with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

Dated:  December 8, 2017

/s/ Steven M. Strauss
Steven M. Strauss