## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>　　　　Plaintiffs,<br><br>　　　　　v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>　　　　Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## EXPERT REPORT OF PROFESSOR WILLIAM B. RUBENSTEIN

1.      By Order dated September 14, 2017, this Court appointed me to serve as an expert witness on attorney's fees and directed me to report:

> (1) on whether the Court has the authority to and should order a cap on the percentage that any class member in this case would be obligated to pay his attorney and if so, what that cap should be and how that cap should be implemented and (2) on the reasonableness of requiring class members to contribute a portion of their recoveries to a common benefit fund, whether 5% is an appropriate portion, and whether this process will result in any counsel being over-compensated (e.g., double-dipping).[1]

2.      After setting forth several factual assumptions (Part I, *infra*), I state and explain

the following opinions:

- ***The Court should set a presumptive 15% cap on all contingent fee contracts.***  Third Circuit law vests this Court with the inherent authority to ensure that contingent fee contracts are reasonable.  Seven specific circumstances of this case argue in favor of the Court's use of that authority to cap contingent fees.  Further, the Third Circuit factors for assessing the reasonableness of a contingent fee, the contingent fee rates used in this litigation, and contingent fee caps employed in similar cases all support a presumptive cap of 15% on contingent fees.  The NFL's agreement to pay Class Counsel $112.5 million in fees and expenses constitutes 15.6% of the net present value of the settlement.  Were the Court to award that full 15.6% amount to Class Counsel, a 15% cap on contingent fees would ensure that class members do not pay more than a third of their recoveries in total attorney's fees and expenses.  (Part II, *infra*).

- ***The Court should not order a 5% set-aside of class members' recoveries.***  Class Counsel's set-aside motion takes the position that the $112.5 million class action fee award they seek will pay them only for *securing* the settlement, but that they will have to be paid extra for all work *implementing* the settlement since the settlement's effective date.  However, the history and text of the settlement agreements in this case do no support that conclusion.  Moreover, a class action fee award typically pays class counsel for both securing *and* implementing relief for the class.  Implementation of this settlement will, uniquely, last for decades.  But if there is a disjuncture here, it is that Class Counsel seek fees for 100% of the class's recovery now, although the class members will be paid – and the settlement implemented – over 65 years.  The solution is not to give Class Counsel more money but to stagger payment of their aggregate fee.  Assuming the Court approved the full $112.5 million request, a present payment of $90 million (or 80% of the total award) would enable the establishment of a $22.5 million fund that would yield $1 million/year for 65 years, leaving nothing at its conclusion.  This approach is more apt in the circumstances of this case than taxing class members 5% of their recoveries.  (Part III, *infra*).

---

[1] ECF No. 8376 at 2.  All citations to ECF document pages in this Report are to the PDF page number.

3.       I am aware my recommendations would reduce the amount of attorney's fees that the class members in this case would be required to pay their lawyers.   In making these recommendations, I strongly believe that contingent fee lawyers – and class counsel – serve a valuable social function.   They deserve to be paid for that work.   At the same time, the class action nature of this case means that the Court has a fiduciary duty to the absent class members: it must ensure that the legal fees that they pay are not unreasonable, particularly given the many different types of lawyers in a case of this structure.   That obligation is especially pertinent in a case involving monetary awards to a vulnerable population of plaintiffs.   It is my expert opinion that my recommendations strike a proper balance between fairly compensating the lawyers for the services that they have provided – or will provide – while ensuring that the absent class members do not pay fees that are, in total, unreasonable.

4.       I was assisted in preparing the report by four Harvard Law students and one legal assistant.   I relied entirely on the paper record.   A list of the roughly 1,000 documents that I reviewed is attached as Exhibit A.   I received one direct communication from an interested party simply pointing me to certain parts of the written record; it had no effect on my opinions as I had already reviewed the referenced documents.   That letter is attached as Exhibit B.

## I.
## FACTUAL BACKGROUND

5.       The facts of the case are well known to the Court and interested parties and need not be repeated here.   For purposes of my opinions, the pertinent facts concern the potential attorney's fees that class members may be asked to pay, the differing grounds and processes for

2

those fee payments, and the work performed by the attorneys seeking them.  The following paragraphs set forth those facts.

<u>The Class, Class Counsel, Class Action Fees, and Common Benefit Fees</u>

6.      *The Class.*  This case settled as a class action.  The class is defined as (1) living NFL players who retired before July 7, 2014; (2) authorized representatives of those retired players who had died or were legally incapacitated or incompetent as of that date; and (3) certain family member claimants vested by state law with independent causes of action by virtue of their relationship to the NFL player.[2]  In approving the settlement, this Court noted that the parties had estimated that there were "over 20,000 Retired Players in the Class, as well as additional Representative Claimants and Derivative Claimants."[3]  As of November 1, 2017, 20,376 class members had registered for relief from this Settlement.[4]

7.      *Class Counsel.*  The Settlement Agreement – and the Court's Order certifying the class for settlement purposes – defines "Class Counsel" as encompassing two Co-Lead Counsel, two Subclass Counsel, and two other lawyers.[5]

---

[2] ECF No. 6510 at 2 (providing specific definition for final approval purposes).  The class was subdivided into two subclasses for certain purposes.  *Id.*

[3] ECF No. 6509 at 24 (citing Class Counsel's Actuarial Materials at 3; NFL Parties' Actuarial Materials ¶ 16).

[4] ECF No. 8888-1 at 4 (reporting that this total included "15,950 Retired NFL Football Players, 1,183 Representative Claimants, and 3,243 Derivative Claimants").  Registration for former players closed on August 7, 2017, but representatives and derivative claimants may continue to register based on other, later-qualifying events.  *Id.*

[5] ECF No. 6481-1 at 10–11 (Settlement Agreement definition); ECF No. 6510 at 3 (Court's certification Order definition).

8. *Class action fees.*[6]     Under the terms of the Settlement Agreement, the NFL agreed to pay "class attorneys' fees and reasonable costs."[7] It further agreed not to contest an application for fees and costs that does not exceed $112.5 million.[8]

a. *Amount sought.*  By motion dated February 13, 2017, Co-Lead Counsel initially sought precisely this $112.5 million amount, broken down into expenses totaling $5,682,779.38 and fees totaling $106,817,220.62.[9]  When Class Counsel's $106.8 million fee request is expressed as a portion of the $720.5 million net present value of the 65-year settlement, it amounts to 14.83% of the total settlement value and its $5.7 million expense request constitutes another .8%.[10]  Throughout this report, I therefore assume that if the Court

---

[6] The Court has stated that it will decide the amount to pay Class Counsel and has directed that I need not speak to that question directly.  The succeeding discussion simply observes the numbers that have been proposed so I can put a placeholder in this part of my analysis.  That placeholder will, of course, vary depending upon the Court's ultimate determination of Class Counsel's fee.

[7] ECF No. 6481-1 at 81–82.

[8] ECF No. 6481-1 at 82.

[9] ECF No. 7151-1 at 14–15.  In his allocation filing on October 10, 2017, one of the two Co-Lead Counsel seeks to allocate nearly $2 million more than the $112.5 million ($114,206,652.28).  The additional funds are $338,602.08 in interest on the $112.5 million since March 7, 2017, when it was deposited by the NFL, and $1,368,050.20 of unused funds in a separate account set up to provide notice to the class. ECF No. 8447 at 4-5.  For purposes of this limited discussion, I will use the $112.5 million amount that the NFL agreed not to oppose and make no assumption about whether interest on that money, as well as the rollover from the notice fund, properly belongs to Class Counsel, to the class members, or to the NFL and/or whether the Court will approve an award of these extra monies to Class Counsel.

[10] The precise calculations are set forth in Exhibit C.  As explained there, Class Counsel set the $106.8 million fee request against a total settlement value of $1,163,425,000 (which yields 9.18%) to argue that their fee request constitutes "approximately nine percent of the value of the total relief secured for the Class."  ECF No. 7151-1 at 55.  However, that is an apples-to-oranges comparison in that Class Counsel seek their fees now, while the bulk of the settlement (the Monetary Award Fund or MAF) will be distributed over 65 years.  Thus, Class Counsel's request that they get their fees at present must be set against the net present value of the settlement.  *See, e.g.*, *In re Diet Drugs, No. 1203*, 2000 WL 1222042, at *32 (E.D. Pa. Aug. 28, 2000) ("The

were to approve Class Counsel's request for $112.5 million in fees and costs, Class Counsel would receive approximately 15.6% of the class's recovery in this matter.[11]

      b. *For whom.* The Court-appointed leadership structure of the multi-district litigation (or MDL) initially encompassed:  two Co-Lead Counsel; a six law firm Executive Committee; an eight lawyer Steering Committee; and three liaison counsel.[12]  As noted above, in certifying the class, this Court named six of these attorneys as "Class Counsel."  One of the two Co-Lead Counsel presently seeks to allocate the requested class action fees and expenses among 24 law firms that he avers have undertaken work that has benefited the entire class.[13]  Many of

---

Settlement Agreement provides that for purposes of awarding attorneys' fees from Fund B, attorneys' fees should be awarded and paid as a percentage of or otherwise based on the net present value, as of the date of Final Judicial Approval, of the maximum amounts AHP may be legally obligated to pay to Fund B for the benefit of the settlement class pursuant to the principle of law expressed in *Boeing v. Van Gemert*, 444 U.S. 472 (1980).").

[11] This valuation is appropriate even though the fee award in this case will not literally come from a common pool of money.  *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 821 (3d Cir. 1995) ("Although class counsel and GM contend (and the district court believed) that the fee was a separate agreement, thus superficially resembling the separate awards in statutory fee cases, private agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case."); *see also Dewey v. Volkswagen Aktiengesellschaft*, 558 F. App'x 191, 197 (3d Cir. 2014) (noting that "where the reality is that the fund and the fee are paid from the same source" that "arrangement 'is, for practical purposes, a constructive common fund,' and courts may still apply the percent-of-fund analysis in calculating attorney's fees").

This valuation is also appropriate even though this is a claims-made settlement and the total amount of the class's ultimate claims is presently unknown.  Given the parties' expert actuarial calculations that underlie these valuations, there is no reason to substitute other projections. Moreover, it is appropriate to award class counsel a percentage based on the total amount made available to the class, even if the class ultimately claims less.  *See* 5 William B. Rubenstein, *Newberg on Class Actions* § 15:70 (5th ed. 2016) (hereafter "*Newberg on Class Actions*").  This is particularly true where it is possible that the class may ultimately claim more and class counsel's percentage will be lower.

[12] ECF Nos. 64, 72.

[13] ECF No. 8447-1 at 2.

these lawyers have protested their proposed allocation, although not their entitlement to a portion of the aggregate award.[14]   Another three attorneys have applied for payment from this aggregate fund on the ground that the services they provided (including in filing objections to the settlement) benefited the entire class as well;[15] Co-Lead Counsel has proposed to allocate fees to two of these firms, in addition to the 24 firms or attorneys described above.[16]

9.   *Common benefit fees.*   Under the terms of the revised Settlement Agreement,[17] "After the Effective Date, Co-Lead Class Counsel may petition the Court to set aside up to five percent (5%) of each Monetary Award and Derivative Claimant Award to facilitate the Settlement program and related efforts of Class Counsel."[18]   The Settlement Agreement further states that the NFL's obligation to pay fees does not extend to these future fees and that the NFL has no interest in and takes no position on this issue.[19]

a.   *Amount sought.*   By its motion filed February 13, 2017, in addition to its 15.6% class action fee, Co-Lead Counsel ask the Court to approve a set-aside constituting 5% of each player's MAF payment and to order the claims administrator to begin setting aside 5% of these payments.[20]   If approved, the proposal would set-aside 5% of the $950 million that the

---

[14] ECF Nos. 8653, 8697, 8701, 8709, 8711, 8719-1, 8720, 8721, 8722, 8723, 8724, 8725, 8726, 8727, 8728, 8729.

[15] ECF Nos. 7070; 7320/7323; 7364.

[16] ECF No. 8447 at 13.

[17] The 5% set-aside concept was not part of the parties' initial Settlement Agreement that this Court rejected in January 2014.   A discussion of the set-aside's origins is set forth below.   *See* Part III, *infra*.

[18] ECF No. 6481-1 at 82.

[19] *Id.*

[20] ECF No. 7151 at 2.

actuaries calculate will be distributed through the MAF,[21] or $47.5 million in total over 65 years, the net present value of which is $26.85 million.[22]  For represented class members, the common benefit fee would be extracted from their lawyer's contingent fee and hence would not augment the total amount that class members would pay in fees; for *pro se* litigants, the 5% would come out of their recoveries.[23]

        b.    *For whom.*  If the Court approves a set-aside, the monies would be held in a common benefit account.  Counsel would have to then separately petition for fees from this fund for work undertaken to "facilitate the Settlement program and related efforts of Class Counsel."[24]  It is therefore too early to know with precision who would be paid from this fund, but it is likely that one of the two Co-Lead Counsel would receive most or all of this money in the short term;[25] nonetheless, Co-Lead Counsel acknowledge, as they must, that the contemplated work will eventually need to be passed on to future generations of lawyers.[26]

<u>Separately Represented Plaintiffs, Individually Retained Plaintiff's Attorneys (IRPAs),<br>and Contingent Fee Contracts</u>

    10.    *Separately represented plaintiffs.*  While Class Counsel represent the interests of all class members in the aggregate, many individual class members also have their own lawyers. This MDL encompassed thousands of individual lawsuits filed by hundreds of players who were

---

[21] ECF No. 7151-1 at 45 (citing ECF No. 6167 at 4).

[22] The mean calculation of the net present value of the $950 million MAF is $537 million.  ECF No. 6168 at 51.  Five percent of that amount is $26.85 million.

[23] ECF No. 7151-1.

[24] ECF No. 6481-1.

[25] ECF No. 8447-1 at 2 (implying that approximately $4.7 million in 2017 lodestar is attributable to "future" work to be funded by the 5% set-aside, of which 87.4% is Seeger Weiss lodestar).

[26] ECF No. 7151-1 at 82; ECF No. 7464 at 30–31.

represented individually (or in groups) by their own lawyers.[27]  Moreover, other players (or their families) retained individual counsel to represent them in the course of the class action proceedings.  The class action settlement foreclosed all individual cases,[28] except for those pursued by players who opted out of the settlement,[29] and the class action notice advised players that, "You do not have to hire your own attorney."[30]  Nonetheless, about half (47% or 9,477 out of 20,376) of the parties that have registered for payment through the class action settlement are represented by their own attorneys.[31]

11.  *Individually retained plaintiff's attorneys (IRPAs).*  The attorneys who represent individual players will be referred to as "individually retained plaintiff's attorneys," or IRPAs.[32]  The lawyers on the plaintiffs' leadership team who seek class action fees also represent individual players and hence are IRPAs as well.  Although nearly 10,000 registrants have IRPAs,

---

[27] ECF No. 6509 at 5 ("Since consolidation, about 5,000 players ('MDL Plaintiffs') have filed over 300 substantially similar lawsuits against the NFL Parties, all of which have been transferred to this Court.") (footnote omitted).

[28] ECF No. 6510 at 6 ("All Related Lawsuits pending in the Court are dismissed with prejudice."); *see also* ECF No. 6481-1 at Article XVIII and XIX.

[29] ECF No. 6510 at 7 ("The Opt Outs are excluded from the Settlement Class pursuant to request and are not bound by the terms of the Settlement Agreement or this Final Order and Judgment.").

[30] ECF No. 6481-1 at 157.

[31] ECF No. 8888-1 at 4.

[32] The First Circuit first used this phrase 25 years ago.  *See In re Nineteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 605 (1st Cir. 1992).  Other courts have referred to these lawyers as "primary attorneys."  *See, e.g.*, *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 653 (E.D. La. 2010) ("The vast majority of these personal injury claims were governed by a contingent fee contract between the individual claimant and his or her primary attorney.").  Scholars have also used the phrase "non-lead lawyers."  *See* Charles Silver and Geoffrey P. Miller, *The Quasi-Class Action Method of Managing Multi-District Litigations: Problems and a Proposal*, 63 Vand. L. Rev. 107, 110 (2010) (hereafter "Silver and Miller, *Quasi-Class Action*").

8

a handful of law firms represent large numbers of clients, plausibly close to half of all of the players with IRPAs.[33]

12.     *Contingent fee contracts.*  Each IRPA has a contingent fee contract with his or her client.   It is uncertain whether these contingent fee contracts, by their own terms, require payment to the contracting lawyer for recoveries secured through the class action rather than the lawyer's individual action.[34]   Assuming they do, the amount that each player has contracted to pay his IRPA in this private contract is generally not publicly available.   However, many

---

[33] These firms have shifting inventories and Co-Lead Counsel has alluded to problems of "poaching," ECF No. 8934 at 26-28, so it is difficult to pin down this number with certainty. However, six sets of firms appear to represent about 4,000 players altogether:

1.  The Locks Law Firm reports that it currently represents "in excess of 1100 registered former players," ECF No. 8709 at 24, though it apparently represented as many as 1,400 at early times in the litigation, *id.* at 3 n.1.

2.  Zimmerman Reed LLP and Pope McGlamry report that they jointly "represent well over one thousand retired NFL players individually in the MDL." ECF No. 8916 at 1.

3.  Girardi Keese reports being "counsel for over 600 class members." ECF No. 8364 at 1.

4.  Goldberg, Persky & White, P.C. stated in January 2017 that it "currently represents over 500 class members eligible to participate in the settlement in this action, pursuant to individual contingency fee agreements." ECF No. 7075 at 1.

5.  Podhurst Orseck, P.A. states that "Podhurst and its various referral counsel have diligently represented nearly 500 class members in this action." ECF No. 7071 at 6.

6.  The Anapol Weiss law firm states that it "has represented over 350 different NFL players during the course of this litigation." ECF No. 8701 at 13.

[34] The contracts tend to award the lawyer a percentage of "the amount recovered for the client." It may be arguable that Class Counsel, not any IRPA, "recovered" the payments any class member gets through this settlement fund and hence that the contingent fee contract is simply inapplicable.  *See also* ECF No. 7353 at 1–2 (noting that "[r]etired NFL players who received a Qualifying Diagnosis prior to the Effective Date and their individual counsel entered into retainer/fee agreements based upon the assumption that Class Counsel would not be receiving any of the claimants' Monetary Award" and reporting that:   "In some instances, those fee agreements call for a very small percentage (some as low as 1%) of the Monetary Award as the individual counsel's fee, because the individual counsel was not involved in and did not assist in obtaining the Qualifying Diagnosis.  Instead, in those cases individual counsel is only assisting with the administrative issues regarding registration and the submission of claims.").

attorneys have filed liens against players' recoveries, typically because the player discharged the attorney and the attorney is seeking a portion of any fee payment made to the player or to later counsel.  The many attorney lien filings generally describe the initial retainer agreement's fee level, and a small number include the actual retainer agreement.  My research assistants and I were therefore able to ascertain 617 bargained-for percentages from 640 IRPA contracts,[35] or about 6% of the 10,000 or so individual retainer agreements in the case.[36]  The individual contingent fee rates reflected in the lien filings range from a low of 15% to a high of 40%, with a median of 30% and a mean of 29%.[37]  Other retainer agreements described or appended to various court filings reflect rates as low as 1%[38] and as high as 45%,[39] and at least one former player currently appears to be represented on a *pro bono* basis.[40]

---

[35] We identified 640 lien filings, 52 of which repeated earlier filings or were later withdrawn. We omitted those 52 filings.  In addition, attorneys for 94 players lowered their contingent fee percentages as the litigation progressed.   We used both the original and adjusted data points in our count.  The original 640 filings, minus the 52 repeated or withdrawn filings, plus the 94 additional data points from fee reductions, yielded a total of 682 data points.  Of these, 617 reported the percentage fee in the player-attorney contract.

[36] As noted above, *see* text accompanying note 31, *supra,* the claims administrator reports that as of November 1, 9,477 registrants were represented.  This implies that there are at least 9,477 contingent fee contracts.  But as the lien filings reflect the fact that some of these registrants have had more than one attorney – and hence more than one contingent fee contract – the total number of contingent fee contracts since these cases started is likely in the 10,000 range.

[37] As described more fully below, *see* Part III, *infra*, these rates have declined over time.

[38] *See* ECF No. 7353 at 1–2 ("In some instances, [IRPA] fee agreements call for a very small percentage (some as low as 1%) of the Monetary Award as the individual counsel's fee, because the individual counsel was not involved in and did not assist in obtaining the Qualifying Diagnosis.").

[39] ECF No. 7029-2 (reflecting retainer of 40% plus additional 5% if appeals occur, or 45% in context of this case).

[40] ECF No. 7365 at 2 ("Plaintiff is currently being represented *pro bono* by Catherina Watters, who is a member in good standing of the California and Florida state bar associations (pro hac

13.     The prior paragraphs enable me to map class members' potential fee and expense payments in Table 1, below:

**TABLE 1**
**Potential Fees and Expenses Payable by Class Members**

|  | **Class members with lawyers** | **_Pro se_ class members** |
|---|---|---|
| Class Action Fees and Expenses | 15.6% | 15.6% |
| IRPA Fee (not including expenses) | 1–45% 29% average[41] | 0% |
| Common Benefit Fee | 0% (assessment paid by IRPA) | 5% |
| **TOTAL**[42] | 60.6% high 44.6% average[43] 16.6% low | 20.6% |

---

vice admission to be submitted), and Joe H. Tucker Jr. and Kevin L. Golden of the Tucker Law Group located at Ten Penn Center, 1801 Market Street, Suite 2500, Philadelphia, PA 19103.").

[41] This average is derived from the lien data described above.

[42] These numbers are slightly off because Class Counsel's fees and expenses are taken before the class member's recovery, while the IRPA's fees are taken out of the class member's recovery net of Class Counsel's fee and expenses. Thus, for example, a 60–64 year old with Parkinson's is slotted to receive $1,000,000 net of Class Counsel's 15.6% fees and expenses, ECF No. 6481-1 at 122. This means the player's gross award is $1,184,834 ($1,000,000/.844) and Class Counsel's share is $184,834. The player will then pay his IRPA, say, 29% of the $1,000,000, or $290,000, leaving him with a final award of $710,000 and a total fee bill of $474,834. His final $710,000 award is 60% of the gross value of his award and his total $474,834 fee payments are 40% of the gross award, not the 44.6% suggested in the Table. However, given that the IRPAs expenses are unknown – and taken off the top of the player's recovery – the numbers in the Table are a close approximation of the bottom line.

[43] This average is derived from the lien data described above.

14.     Against this backdrop, the Court has asked for my opinion on whether the IRPA contingent fee contracts can and should be capped and whether the 5% holdback is necessary and/or duplicative.

## II.
## THE COURT POSSESSES THE AUTHORITY TO CAP
## CONTINGENT FEE CONTRACTS AND SHOULD SET A 15% CAP IN THIS CASE

### A.
### The Court's Authority

15.     In a class action lawsuit, the court must approve an award of attorney's fees to class counsel.[44] Rule 23 establishes a process – including notice to the class and an opportunity for class members to object[45] – that governs judicial approval of class action attorney's fees. These procedural requirements arise from the fact that the court will typically award class counsel fees from the client's recovery, yet most class members are absent parties not participating in the class suit, and they have such small amounts of money at stake that they have little incentive to monitor class counsel's fee request and lack the expertise to do so in any case.[46] Moreover, while class counsel typically protect the absent class members' interests, in the fee process, class counsel are adverse to the class members, attempting to take a fee from their

---

[44] Fed. R. Civ. P. 23(h).

[45] Fed. R. Civ. P. 23(h)(1)–(2).

[46] *Dunn v. H. K. Porter Co.*, 602 F.2d 1105, 1109 (3d Cir. 1979) ("[B]ecause of the nature of class representation, the clients may be poorly equipped to defend their interests against those of their attorneys.  Class clients are frequently widely dispersed.  Even those who have dealt directly with the class attorneys may have little direct knowledge of, or control over, the action. Many class action clients have not had prior experience in a lawyer-client relationship, and their financial stake in the action will often be too small to encourage significant involvement between lawyer and client.").

recoveries.[47]   Many courts, including the Third Circuit, have accordingly held that the judge overseeing the class action has a "fiduciary duty" to protect the absent class members.[48]   This explains the unexceptional fact that Class Counsel in this case have submitted their $112.5 million fee request to the Court for judicial approval.

16.   The situation of each individual class member's contingent fee agreement with his own lawyer stands on slightly different footing.   Class members rarely have individually retained lawyers because class suits typically involve small amounts of money.   Indeed, it is the meager nature of most class members' claims that underlies the need for aggregate litigation:   in small claims situations, class members will attract legal representation only by aggregating their claims and funding the lawyer's fees out of the joint recovery.[49]   Thus, the Rule 23 fee process for scrutiny of class counsel's proposed fee – with notice to all absent class members and an opportunity to object – has no obvious application to individualized retainer agreements.   The class members are not truly "absent" with regard to these agreements, as each has negotiated the contract with his own lawyer individually; moreover, no class member has a direct interest in the terms of another's individual retainer agreement and hence does not need notice of it or an opportunity to object to it.

---

[47] *Id.* (noting that in seeking fees, "the role of the attorneys is drastically altered; they then stand in essentially an adversarial relation to their clients who face a reduced award to the extent that counsel fees are maximized").

[48] *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187–88 (3d Cir. 2005) ("In traditional common fund cases, the court acts almost as a fiduciary for the class, performing some of the roles—i.e., monitoring and compensating class counsel—that clients in individual suits normally take on themselves."); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 307 (3d Cir. 2005), *as amended* (Feb. 25, 2005) ("At the fee determination stage, the district judge must protect the class's interest by acting as a fiduciary for the class.").

[49] For a discussion, see *Newberg on Class Actions*, *supra* note 11, § 1:7.

17.     Nonetheless, there is no doubt that this Court possesses the authority to assess the reasonableness of each class member's contingent fee contract with his individually retained attorney.  That is so because the Court has the inherent authority to regulate attorneys appearing before it,[50] and any attorney representing a player making a claim in this class action settlement is effectively appearing before this Court.[51]  Specifically, the Third Circuit has stated that:  "in its supervisory power over the members of its bar, a court has jurisdiction of certain activities of such members, including the charges of contingent fees."[52]  In illuminating this authority, the Circuit has characterized it as a "court's *duty* to monitor fee agreements"[53] and noted that,

---

[50] *See, e.g.*, *In re Surrick*, 338 F.3d 224, 230 (3d Cir. 2003) (noting that "individual district courts . . . have the power to prescribe requirements for admission to practice before that court and to discipline attorneys who appear before them") (brackets and citation omitted); *see also In re Goldstein*, 430 F.3d 106, 110 (2d Cir. 2005) ("A federal court possesses certain inherent powers to discipline attorneys who appear before it.  These include[] the powers to police the conduct of attorneys as officers of the court and to impose sanctions for attorney misconduct.  In exercising these inherent powers, courts have the right to inquire into fee arrangements . . . to protect the client from excessive fees.") (quotation marks and internal citations omitted).

[51] The Third Circuit has premised this authority – even in diversity cases – on federal law, noting that because "the examination of a contingent fee arrangement's reasonableness . . . implicates our responsibility to supervise the members of our Bar" the Court "must apply federal law."  *In re Finney*, 130 F. App'x 527, 531 n.5 (3d Cir. 2005) (citing *Dunn*, 602 F.2d at 1110 n.8; *see also Mitzel v. Westinghouse Elec. Corp.*, 72 F.3d 414, 417 (3d Cir. 1995) ("[C]ontingency fee agreements in diversity cases are to be treated as matters of procedure governed by federal law."); *Dunn*, 602 F.2d at 1110 & n.8 (concluding in class action case that district court had "authority to look beyond the face of the contingent fee agreements and could set them aside for want of a proper factual showing" and holding that the district court should apply federal law because "its action is part and parcel of the process a federal court follows both in supervising members of its bar and in meeting the obligations imposed on it by [Rule 23]") (citations omitted).

[52] *Schlesinger v. Teitelbaum*, 475 F.2d 137, 141 (3d Cir. 1973).

[53] *McKenzie*, 758 F.2d at 100 (emphasis added); *see also Finney*, 130 F. App'x at 530 ("[A] District Court must be alert to a fee agreement that would unjustifiably enrich an attorney through oppression or overreaching.").

"[b]ecause courts have a special concern to supervise contingent attorney fee agreements, they are not to be enforced on the same basis as ordinary commercial contracts."[54]

18.     The Third Circuit has also premised a court's authority to ensure the reasonableness of contingent fees on a court's equitable authority to protect "persons of presumed incapacity to look after their affairs intelligently."[55]   In this matter, that equitable authority would apply to much if not all of the class, given the players' vulnerable physical and mental situations.[56]   Indeed, some – perhaps many – IRPA contracts fall within the special province of Local Rule 41.2, which requires this Court's explicit, individualized approval of any "counsel fee, costs or expenses . . . paid out of any fund obtained for a minor, incapacitated

---

[54] *McKenzie*, 758 F.2d at 101.

[55] *Schlesinger*, 475 F.2d at 139 & n.4 (holding that this power is "well recognized" and noting that "[t]he court acts in such cases under its equity jurisdiction over fiduciary relations"); *see also McKenzie*, 758 F.2d at 100 ("The defendant does not challenge the district court's authority, whether based on its equitable jurisdiction or under its inherent power to regulate attorney-client relations, to determine the reasonableness of a fee resulting from the application of a contingent fee agreement.").

[56] *See* ECF No. 8434 at 8 (stating, in filing by Co-Lead Counsel, that this Court is "well aware [that] many Class Members suffer from neurocognitive and neuromuscular impairments, including Alzheimer's Disease, other forms of dementia, Parkinson's Disease, and ALS; are in many cases of advanced age (having last played in the NFL decades ago); are in difficult financial straits; or are affected by some combination of these circumstances – factors that render them extremely vulnerable to manipulation by predatory lenders"); *see also* ECF No. 7346 at 8 (stating, in filing by law firm that represents "more than one hundred and fifty (150) Class Members," that "[m]any Class Members suffer from mood disorders and emotional disability resulting from the brain trauma.  This makes representing them more difficult, especially where those neurocognitive impairments have driven away family and friends who may have helped the attorney in communicating with the client or collecting information.  Independent legal counsel must cope with clients who act erratically, can be unreliable and who have trouble with communicating with the attorney, providing information and keeping appointments.").

person or such decedent's estate as a result of a compromise, settlement, dismissal or judgment."[57]

19.    The class action nature of this case provides further context in support of the Court's employment of its inherent authority.  In a class action, a court is necessarily involved in attorney-client relationships in a way that it is not in normal private litigation: *first*, it must approve lawyers to represent the absent class members;[58] *second*, acting as a fiduciary for the absent class members, it must approve any proposed settlement to ensure that the lawyers have not sold out the class's interests;[59] and *third*, again acting as a fiduciary for the absent class members, it must approve the lawyers' proposed fee to ensure against over-reaching.[60]  The Court has a fiduciary duty to the absent class members not in the abstract but explicitly as to those class members' relationships with their lawyers.  While that duty typically focuses on class counsel, in a case of this structure, it does not end there.  IRPAs are each under this Court's direct supervision as they are representing members of a class that this Court certified and seeking a share of client recoveries coming from funds administered by this Court.  The Court has already involved itself in class members' relationships to IRPAs by authorizing a notice that informed class members that they did not need their own attorneys.[61]  That notice may have confused class members who had already contracted with IRPAs about the residual meaning of

---

[57] Local Rule 41.2(c).

[58] Fed. R. Civ. P. 23(g).

[59] *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010) ("[T]he District Court evaluates the [proposed class action settlement] agreement as a fiduciary for absent class members.").

[60] *See* note 48, *supra.*

[61] ECF No. 6481-1 at 157.

those contracts.  Class members contracting with IRPAs may also be unaware of the fact that Class Counsel is effectively seeking 15.6% of their recoveries, especially as the settlement is structured in a way that may obscure that fact.  Although Class Counsel are the class members' champions, they themselves are IRPAs and they have not stepped forward to investigate and challenge whether any other IRPAs are charging unreasonable fees.  In short, the Court cannot discharge its fiduciary duty to absent class members concerning their legal representation with blinders on, assessing Class Counsel's proposed 15.6% fee award while ignoring the fact that half of the class members are committed to paying the same, or other, lawyers yet another portion of their recoveries.  The Court's unique relationship to class members in a class action is just the type of situation that authorizes use of its inherent authority over contingent fees.[62]

20.     The MDL nature of this action similarly argues in favor of the Court's employment of its inherent authority.  The MDL statute directs this Court to "promote the just and efficient conduct of such actions."[63]  Courts have held that in "the context of contingent fee arrangements, implementing a reasonable cap promotes justice for all parties by allowing claimants to benefit (as their attorneys have) from the economies of scale and increased efficiency that an MDL provides."[64]

21.     Myriad prior class action and non–class action MDL courts have concluded that a court's inherent authority over lawyers practicing before it enables the court to cap contingent

---

[62] *Dunn*, 602 F.2d at 1109 ("Power flowing from this source has been exercised more frequently to protect those unable to bargain equally with their attorneys and who, as a result, are especially vulnerable to overreaching.").

[63] 28 U.S.C. § 1407(a).

[64] *In re Vioxx Prods. Liab. Litig.*, 650 F. Supp. 2d 549, 558 (E.D. La. 2009).

fee contracts.[65]   Many have relied on other bases,[66] as well, but the Third Circuit law is so clear

as to this Court's inherent authority that no more is necessary.[67]

---

[65] *See, e.g.*, *In re A.H. Robins Co., Inc.*, 86 F.3d 364, 373 (4th Cir. 1996) ("[T]he law of this circuit has long been clear that federal district courts have inherent power and an obligation to limit attorneys' fees to a reasonable amount. . . . In the present case, the district court, acting upon its extensive knowledge of this litigation . . . simply applied the settled principle that attorneys' fees must be reasonable.  The court had this clear authority.  This authority is so clear that it is not necessary to discuss the additional sources of such authority such as the federal court's power to enforce state law standards of ethical conduct and a federal district court's inherent power to regulate the conduct of the court's officers, including attorneys."); *Evans v. TIN, Inc.*, No. CIV.A. 11-2182, 2013 WL 4501061, at *11–14 (E.D. La. Aug. 21, 2013) (agreeing with special master's analysis "regarding the Court's authority to limit the fees of privately retained attorneys" given the court's "obligation to protect the interests of the class in its role as a fiduciary and to ensure the reasonableness of attorney's fees"); *In re Rio Hair Naturalizer Prod. Liab. Litig.*, No. MDL 1055, 1996 WL 780512, at *20 (E.D. Mich. Dec. 20, 1996) ("It is well-settled that the court has the inherent authority to regulate contingency fees to ensure that they are not excessive or unreasonable."); *In re Joint E. & S. Dists. Asbestos Litig.*, 878 F. Supp. 473, 558 (E.D.N.Y. & S.D.N.Y. 1995) ("Courts have wide discretion to approve, reject or limit fees earned by attorneys in prosecuting a class action. . . . The courts' fee-setting authority in a class action context, where a victory by the class typically creates a benefit that goes beyond those few individuals who actually prosecuted the class action, stems from the courts' equitable powers and the powers of the chancellor. . . . Courts reviewing fees pursuant to Rule 23, general equitable powers, or authority to control officers of the court, may override private, contractual fee agreements made by the attorneys representing the parties in the class action or related individual actions."); *In re MGM Grand Hotel Fire Litig.*, 660 F. Supp. 522, 524–25 (D. Nev. 1987) ("The court has the right and the duty to establish equitable fees for all of the attorneys and has done so previously in this case.").

[66] *See, e.g.*, *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 290 F. Supp. 2d 840, 854–55 (N.D. Ohio 2003) (state ethics rules) ("In the absence of any real risk, an attorney's purportedly contingent fee which is grossly disproportionate to the amount of work required is a 'clearly excessive fee' within the meaning of [state rules of professional ethics].  This Court easily concludes that, by insisting on receipt of their full contingent fee, these attorneys are charging an unreasonable and clearly excessive fee.") (internal citation and quotation marks omitted); *In re Copley Pharm., Inc.*, 1 F. Supp. 2d 1407, 1416 (D. Wyo. 1998) (settlement agreement) ("The [settlement] Agreement provides that 'the Court shall reserve the power to set maximum limits on contingent fees, and . . . the Court may make appropriate reductions on such contingent fee amounts for the cost of "common benefit" services provided by Class Counsel.'"); *In re Joint E. & S. Dists. Asbestos Litig.*, 878 F. Supp. at 558 (Rule 23) (noting that Rule 23 creates "wide discretion [for courts] to approve, reject or limit fees earned by attorneys in prosecuting a class action") (citing 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1803 (1986 & 1994 Supp.)).

22.     In short, Third Circuit law unequivocally supports the proposition that this Court possesses the inherent authority to regulate the contingent fees of lawyers appearing before it and any lawyer representing a class member in this Settlement is clearly subject to this authority.

## B.
## The 15% Cap

23.     Given that the Court has the authority to cap contingent fee contracts, it must consider whether the circumstances require a cap and, if so, what the cap should be.

24.     The Third Circuit's four-part test governing judicial review of contingent fees provides guidance in addressing these questions.  It states:

1. An attorney bears the burden of proof to demonstrate that his or her fee is reasonable, whether the action is initiated by the attorney or client.

2. The applicable standard in an attorney fee dispute is the reasonableness of the fee, applying principles of equity and fairness.

3. Consideration should be given to circumstances existing at the time the arrangement is entered into, and thereafter, to the quality of the work performed, the results obtained, and whether the attorney's efforts substantially contributed to the result.

4. Although reasonableness at the time of contracting is relevant, consideration should also be given to whether events occurred after the fee arrangement was made which rendered a contract fair at the time unfair in its enforcement.[68]

---

[67] The Court's authority is so obvious that even those lawyers who resist the argument that their service as class counsel voids their individual fee contracts with the class representative nonetheless concede the Court's authority to regulate those contracts.  ECF No. 7085 at 12 ("The Court's power to review the terms of a negotiated contingency fee contract arises from its supervisory authority. . . .That authority rests on the Court's inherent powers. . . .").

[68] *McKenzie Const., Inc. v. Maynard*, 823 F.2d 43, 45 (3d Cir. 1987) (summarizing holding of *McKenzie Const., Inc. v. Maynard*, 758 F.2d 97 (3d Cir. 1985)); *see also Dunn,* 602 F.2d at 1113 ("We note that the class members are for all practical purposes unrepresented before the district court on the attorneys' fee issue. In conducting its inquiry, the district judge may therefore properly place upon the class attorneys the burden of showing by a preponderance of the evidence that the contracts were entered into advisedly, and without overreaching, and that the fee awarded is reasonable under the circumstances.").

Although courts "should be reluctant to disturb contingent fee arrangements freely entered into by knowledgeable and competent parties . . . the district court must be alert to fees where the lawyer's retention of it would be unjustified and would expose him to the reproach of oppression and overreaching."[69]

<u>The Circumstances of This Case Support Application of a Cap</u>

25.     Seven circumstances about the current situation of this case create conditions in which IRPA contracts may encompass unreasonable fees.

26.     *First*, class members with IRPAs are paying two sets of lawyers:  Class Counsel and their IRPA.[70]  As discussed above, Class Counsel is seeking 15.6% of the net present value of the settlement in fees and expenses and some contingent fee contracts are for 45%.  Some players therefore face the possibility of paying nearly two-thirds of their recoveries to these two sets of lawyers.

27.     *Second,* because this is a class action lawsuit, a class member's fees should generally be lower than they would be if each player had needed to litigate separately.  The aggregation of all of the class members' claims into a single unit produces economies of scale.  Many litigation tasks can be done once, not 20,000 times.[71]  Empirical evidence demonstrates

---

[69] *McKenzie,* 758 F.2d at 101 (internal quotation marks and citation omitted).

[70] As noted above, Class Counsel are also IRPAs, but they take the position that they are entitled to class fees and IRPA fees (*see, e.g.*, ECF Nos. 7071, 7073, 7075, 7085), so their clients, too, will essentially be paying two sets of lawyers.

[71] *See In re Vioxx Prods. Liab. Litig.*, 650 F. Supp. 2d 549, 561 (E.D. La. 2009) (limiting individual attorneys' fees because they "did not have to pursue individual discovery, nor did they have to file individual motions, engage in individual settlement negotiations, or prepare individual trial plans.  Instead, many of the plaintiffs' attorneys . . . were able to simply wait while a $4.85 billion settlement was negotiated and then do no more than enroll their clients in

that in class action settlements of this size, class counsel's fees are generally about 13% of the class's recovery.[72]  In most such cases, class members do not need an IRPA and they do not pay a second attorney fee on top of the standard 13%.  Absent careful judicial review of the two sets of fees in this case – where the Court has also deemed that class members do not need an IRPA[73] – some players might face legal bills more than four times the norm for a class action of this size.

28.   *Third*, because this case entered a settlement phase very early – before discovery or trial – the quantity of litigation that has taken place does not support an extremely high legal fee.  Both class action fee awards and contingent fee agreements tend to award counsel a greater percentage of the clients' recovery as the lawyers' investment in the litigation grows.[74]  In this

---

the settlement and monitor their progress through the claims valuation process."); *In re Zyprexa Prods. Liab. Litig.*, 424 F. Supp. 2d 488, 493 (E.D.N.Y. 2006) (noting that IRPAs "all benefitted from the effectiveness of coordinated discovery carried out in conjunction with the plaintiffs' steering committee and from other economies of scale, suggesting a need for reconsideration of fee arrangements that may have been fair when the individual litigations were commenced");

[72] Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 839 tbl. 11 (2010) (reporting that mean fee for a $500 million–$1 billion settlement is 12.9%).

[73] ECF No. 6481-1 at 157 ("You do not have to hire your own attorney.").

[74] Counsel's fee should not depend *solely* on the quantity of litigation that took place:  risk, results, and other factors are relevant; but both courts and the market for contingent fees recognize the role that counsel's time investment plays in setting an appropriate fee.  *See, e.g.*, *In re Diet Drugs*, 582 F.3d 524, 541 (3d Cir. 2009) ("In determining what constitutes a reasonable percentage fee award, a district court must consider the ten factors that we identified in *Gunter* and *Prudential*.  They are: (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.") (citations omitted).

case, Class Counsel settled the entire case after briefing one dispositive motion, without undertaking any formal discovery, without significant motion practice, without summary judgment briefings, and without preparing for, much less engaging in, a class (or even one bellwether) trial;[75] no IRPA will need to undertake these tasks either.   One of the firms designated as Class Counsel itself states that "[t]his is the only mega fund case in which there was no paper discovery, no depositions, no motion practice, no litigation, no trials, no trial activity."[76]   Given the relatively streamlined nature of the litigation, the clients' total fee payments should be far less than, in some instances, 60+% of their recoveries.

29.     *Fourth*, because Class Counsel have secured relief for the entire class, each IRPA's work is significantly reduced:  the IRPA's primary task is to shepherd the client through the claims process to ensure relief for him.   IRPAs should have invested time prior to undertaking representation in educating themselves on the nature of the facts and their clients' possible claims in this matter; they must also now learn the details of this particular Settlement Agreement; they must monitor their clients' situation over time (possibly decades); and they must master the process of ensuring a maximum payout to their clients.   Nonetheless, IRPAs did not engage in formal discovery, motion practice, trial preparation, trial, or settlement negotiations.[77]   IRPAs should be able to process their clients' claims through the settlement

---

[75] This paragraph is not meant to criticize Class Counsel for settling without undertaking these litigation events but simply to observe the typical relationship between the quantity of the litigation that took place and the ultimate attorney's fee.

[76] ECF No. 8709 at 30.

[77] IRPAs on the MDL leadership team would have been involved in the single litigated motion and aggregate settlement negotiations, but they are being compensated for that work through their aggregate fee, not their IRPA contract.  *See* note 94, *infra.*

process without enormous time or expense expenditures.[78]   This is especially true given that many players are represented by IRPAs with large inventories of clients:[79]  the repeated nature of their work should drive down the costs of processing each player's claim.

30.     *Fifth,* despite the large dollar figures of potential individual recoveries in this case, the actuarial data prepared by the parties reveal that the vast bulk of the class will receive no money from the MAF and the vast bulk of the players who do receive money will receive relatively small amounts.   While about 20,000 class members have registered for the settlement, the actuarial studies estimate that the MAF will make payments to a total of 3,488 players and that 2,123 of those (61%) will be paid at or after the age of 80.[80]  Most of those players (2,036) are expected to have Level 2 dementia, Alzheimer's, or Parkinson's and will likely receive $50,000, as adjusted for inflation, while another set (77) are expected to suffer from Level 1 dementia and will likely receive $25,000.[81]   Put more simply, about 61% of the players who will get paid are projected to receive $25,000–$50,000 (expressed in today's dollars) at some future

---

[78] The total amount of an IRPAs work will vary according to the complexity of a settlement's claiming process.  *Compare, e.g.*, *In re Sulzer Hip,* 290 F. Supp. 2d at 854 (warranting characterization that "filling out claims forms—is perfunctory in nature," requiring little legal skill, particularly because "reports from the Claims Administrator . . . reveal that the percentage of claims found valid is equal for both represented and unrepresented plaintiffs," and applying flat $10,000 cap on claims processing work), *with In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, No. MDL 05-1708 DWF/AJB, 2008 WL 3896006 (D. Minn. Aug. 21, 2008) (increasing IRPA fee cap because of unexpected complexities in claiming process).

[79] *See* note 33, *supra.*

[80] ECF No. 6168 at 42.  These data are from the NFL's actuary.  The plaintiffs' actuary estimates that about 100 more players (3,596) players will be compensated.  ECF No. 6167 at 6.

[81] ECF No. 6481-1 at 122.  The $25,000 for Level 1 dementia and $50,000 for Level 2 dementia, Alzheimer's, and Parkinson's for players 80 years or older are floors for payments to this age group.  *Id.*  However, the parties' actuarial data supports the conclusion that most payments will be at or near this floor.

date[82] – and each will be required to satisfy liens out of their recoveries as well.[83] These recoveries are so small that permitting counsel to take 60+% would be particularly troubling.

31.     *Sixth,* as discussed above, the very nature of the case turns on the fact that many of the IRPAs' clients "suffer from neurocognitive and neuromuscular impairments, including Alzheimer's Disease, other forms of dementia, Parkinson's Disease, and ALS; are in many cases of advanced age (having last played in the NFL decades ago); are in difficult financial straits; or are affected by some combination of these circumstances – factors that render them extremely vulnerable to manipulation."[84] Class Counsel so characterized the class members in this case in arguing that this Court should protect them from "predatory lending practices."[85] IRPAs are not predatory lenders, but the class members' physical and mental vulnerabilities are nonetheless an important factor in considering the players' capacity to negotiate reasonable contracts with IRPAs.

32.     *Seventh*, the timing of the contingent fee contracts raises concerns that some may have been unreasonable at formation or become unreasonable given subsequent litigation events. Class members have contingent fee contracts dating back to at least 2011. Two key subsequent events divide this case into three phases for purposes of the reasonableness of contingent fees:

- *Phase 1 – Individual litigation.* Lawyers who contracted to represent players prior to the proposed consolidation of these actions into an MDL on November 15, 2011 faced the prospect of pursuing the entire case themselves, perhaps even through trial,

---

[82] Class Counsel's expert reaches similar conclusions. He predicts that 2,457 payments out of 5,899 (41%) will be made to players 80+ and that most will be for $50,000 illnesses. ECF No. 6167-3 at 55.

[83] ECF No. 6481-1 at 64–68.

[84] ECF No. 8434 at 8.

[85] *Id.*

and fee arrangements reflecting those large contingencies would have been expected and appropriate. In my data base of lien filings, 3.3% of the retainer agreements for which the attorney reported the contract date were entered into in this phase of the case, with an average fee of 40%.

- *Phase 2 - MDL.* Arguably, from the time that the NFL made its motion to consolidate these cases into an MDL (November 15, 2011) – and certainly, from the time the motion was granted (January 31, 2012) – lawyers contracting to represent clients were well aware that the costs of doing so had been greatly reduced: pre-trial proceedings would now be consolidated and undertaken once and the likelihood that any case would be remanded for trial declined significantly.[86] In my data base of lien filings, 60.2% of the retainer agreements were entered into after the NFL's MDL consolidation motion and before the parties announced their first proposed settlement, and, despite the streamlined nature of the action, the average contingent fee remained at about a third of a client's recovery (32.1%).

- *Phase 3 – Class action settlement.* Once the leadership committee in the MDL proposed an aggregate class action settlement in August 2013,[87] and especially after the Court granted preliminary approval in July 2014, it became apparent that IRPAs would be primarily responsible only for processing their clients' claims through the claims facility. In my data base of lien filings, 8.6% of the contingent fee contracts were entered into following announcement of settlement but before preliminary approval was finally granted (still with an average fee of 31%) and then a full 27.9% of the contingent fee contracts were entered into after the class action settlement had been preliminarily approved on July 7, 2014, with lawyers seeking an average fee of 25.9% for assisting their clients in the claims process.

The Third Circuit has referred to contingent fee contracts negotiated "after it became clear [a] suit would be reasonably successful" as a "sequence of events suggesting either overreaching by the attorney or the plaintiffs' inability to grasp the implication of the contracts."[88] In similar

---

[86] *See In re TJX Companies Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395, 405 (D. Mass. 2008) ("Multi-district litigation is like the old Roach Motel ad: 'Roaches [the transferred cases] check in—but they don't check out.'") (quoting Professor Samuel Issacharoff).

[87] *See* ECF No. 5235 (August 29, 2013) (reporting that the parties had reached a settlement structured as a class action).

[88] *Dunn*, 602 F.2d at 1112.

circumstances, at least one court has voided contingency fee contracts as lacking "contingency" and authorized payment only on an hourly rate basis.[89]

33.     In sum (1) players with IRPAs are paying two lawyers' fees (2) in a case settled on an aggregate basis (3) following relatively little litigation (4) requiring IRPAs to undertake a modest amount of work (5) that will likely generate small recoveries for (6) vulnerable clients (7) who may be subject to contingent fees contracts that were either problematic at formation or are no longer reasonable.   The totality of these circumstances strongly supports the Court's inquiry into whether the percentages used in IRPAs' contingent fee contracts are reasonable.

<u>The Circumstances of This Case Support a Presumptive IRPA Fee Cap of 15%</u>

34.     Three measuring sticks assist in the task of ascertaining the proper level of IRPA fees:  consideration of the relevant Third Circuit factors; data on contingent fee agreement levels in this case; and data from other cases.

35.     *Third Circuit factors.*   In considering the reasonableness of a contingent fee contract, the Third Circuit directs this Court to consider (a) "whether events occurred after the fee arrangement was made which rendered a contract fair at the time unfair in its enforcement," with a focus on (b) "the quality of the work performed, the results obtained, and whether the attorney's efforts substantially contributed to the result."[90]  As applied:

---

[89] *In re Sulzer Hip*, 290 F. Supp. 2d at 842 (holding that after *announcement* of settlement agreement, "it was no longer the case that an attorney representing a class member would receive compensation *contingent* upon successful performance" but permitting attorneys hired after that date "to assist a plaintiff with filling out claim forms . . . to compensation for his or her time, but only based on a reasonable hourly rate") (emphasis in original).

[90] *McKenzie*, 823 F.2d at 45 (summarizing holding of *McKenzie Const., Inc. v. Maynard*, 758 F.2d 97 (3d Cir. 1985)).   The Third Circuit's class action fee approval factors are set forth in footnote 74, *supra*.   Some courts analyzing a fair IRPA fee apply these types of factors.   *See,*

a.    *Changed circumstances.*    As set forth in ¶ 32 above, the contingent fee contracts in this case were entered into at times of varying degrees of contingency, risk, and work.  That history supports two conclusions:  (1) high contingent fee contracts entered into in phases 2 or phase 3 may have been unreasonable at formation; (2) but regardless, high contingent fee contracts are surely no longer reasonable.  Each IRPA's workload has been so reduced that an initial 33–40% contingent fee for litigating and trying a case no longer fairly applies to assistance in the class action claims procedure.  Thus, one of the two Co-Lead Counsel reports reducing its contingent fee rates as to two estates from 35% to 23% "to avoid an objection to their intentions;"[91] another firm that serves as Class Counsel and simultaneously represents a large group of plaintiffs reported on its blog that it "decided long ago to reduce [its] fees from 33% to 20%;[92] yet another firm serving as Class Counsel and representing a large group of plaintiffs "voluntarily reduced the contingency fee percentage in the agreement to a maximum of 25%"[93] in at least one circumstance.  These actions support the conclusion that contingent fee contracts for large percentages entered into earlier in this case's history are no longer reasonable under the case's present circumstances.

b.    *Attorney's work, results, and contributions.*    Moreover, regardless of the "quality" of an IRPA's work, his or her efforts generally did not "substantially contribute" to the

---

*e.g.*, *Evans v. TIN, Inc.*, No. CIV.A. 11- 2182, 2013 WL 4501061, at *7–10 (E.D. La. Aug. 21, 2013).  The discussion in the text covers all of the relevant factors from the Third Circuit's test.

[91] ECF No. 7360 at 4.

[92] *NFL Common Benefit Fees vs Individual Cases Fees*, Locks Law Firm Blog, https://www.lockslaw.com/blog/2017/03/23/nfl-common-benefit-fees-vs-individual-case-fees (stating "we decided long ago to reduce our fees from 33% to 20%").

[93] ECF No. 7071 at 1 (reporting that one Class Counsel "voluntarily reduced the contingency fee percentage in the agreement to a maximum of 25%.").

"the results obtained" given the aggregate resolution of the case.[94]   It may be that if an IRPA provides "quality" representation in shepherding her client through the class action claims process, her client's recovery will be more fulsome and hence she could argue that she "substantially contributed" to the "results obtained."   But since the claims' values are pre-established and based on medical diagnoses, the most an IRPA can do is ensure her client receives his fair share.   An IRPA should be able to serve her client to this level without need of 30–40% of that award.

Thus, application of the Third Circuit's reasonableness factors argues in favor of a substantially reduced contingent fee.

36.   *Rates charged in this case.*   The amount each player has contracted to pay his IRPA resides in a private contingent fee contract not publicly available.   However, as noted above, because of the many lien filings (and other fee dispute filings) in this case, my research assistants and I were able to ascertain 617 bargained-for percentages from 640 IRPA contracts, or about 6% of all fee agreements.   These data points provide insight on the rates that IRPAs are charging for representing clients in this settlement.   The rates range from a low of 15% to a high of 40%, with a median of 30% and a mean of 29%.   Moreover, the contracted-for rates have, not surprisingly, decreased over time:   as just noted in the last paragraph, once the class action settled and the decreased nature of an IRPA's risk and work became more apparent, some IRPAs

---

[94]   Those IRPAs who served in leadership positions in the MDL may have substantially contributed to the results obtained, but they are being rewarded for that work through the class action fee.   Their IRPA work – which they isolate as not covered by their class action fee petition,   *see* ECF No. 7151-1 at 4 ("The requested award will be used to compensate the attorneys listed in this Petition only for common benefit work . . . . A number of law firms involved in this litigation were retained by individual Class Member clients.   This petition does not include attorney time or expenses specific to their individual clients' cases.") – does not share this quality.

voluntarily lowered their contingent rates and some players (likely) switched IRPAs to garner lower rates.[95]   Most recently, players have been contracting with IRPAs for payments between 20–25% of their recoveries, where earlier in the litigation rates were more typically between 35–40%.   Graph 1, below, maps the changing market rate for IRPAs in this case over time.

**GRAPH 1**
**Average Contingent Fee at Time of Contracting, By Quarter**



While recent IRPA rates have come down to 20–25%, the actual market rate is likely as much as 5% lower.   I reach that conclusion because IRPAs have been aware – since the second proposed Settlement Agreement was filed in this Court on July 7, 2014 – that Class Counsel would seek a common benefit fee constituting 5% of their clients' recovery to be extracted from their

---

[95] ECF No. 8934 at 26–28 (discussing poaching among law firms).

contingent fee.[96]  Any IRPA who has offered a contingent fee contract since July 7, 2014, has necessarily factored into the rate at which she is willing to work the possibility that she may have to share a portion of her fee equal to 5% of her client's recovery.  Given the efficiency of the market for contingent fees documented above, the going rates of 20–25% are likely closer to 15%–20% because the market rate encompasses the information about this potential common benefit tax.

37.    *Awards in other cases.*  Courts in cases with similar settlement structures – *i.e.*, cases involving both central aggregate lawyers and IRPAs – have capped contingent fees in the past.  In six such cases, courts set total fee caps (for both the aggregate lawyers and IRPAs) ranging from 20% to 37.18%, with an average of 32.25%; these six data points yielded effective IRPA fees ranging from 18% to 33.5%, with an average of 23.69%.  In another set of seven cases, courts more directly capped IRPA rates, with those caps ranging from 5% to 33.33%, with an average of 17.95%.  The average IRPA cap across all 13 cases is 20.6%.  An eighth court simply awarded IRPAs a flat fee cap of $10,000 for processing claims through the class action settlement.[97]  These data are presented in Exhibit D.

38.    The preceding points lead to my opinion that the Court should impose a presumptive 15% cap on the contingent fee amounts that IRPAs can charge clients in this class action claims process.  If the Court were to award Class Counsel all $112.5 million of its request,

---

[96]  As discussed below, *see* Part III, *infra*, this 5% set-aside was not part of the initial Settlement Agreement in this class action.

[97]  *In re Sulzer Hip*, 290 F. Supp. 2d at 854 (warranting characterization that "filling out claims forms—is perfunctory in nature" requiring little legal skill, particularly because "reports from the Claims Administrator . . . reveal that the percentage of claims found valid is equal for both represented and unrepresented plaintiffs" and applying flat $10,000 cap on claims processing work).

represented class members would effectively be paying 15.6% of their recoveries in fees and
expenses to Class Counsel.  Accordingly, a 15% IRPA fee cap will mean that most represented
players pay about 30.6% their recoveries to these two sets of lawyers, plus the IRPA's expenses
– or roughly a third of their recovery.  Given the quantity of litigation that occurred in this case
and the size of the settlement, that is a sufficiently fair amount to ensure that counsel will
continue to pursue these types of case.  As discussed in the prior paragraphs, the 15% IRPA-
specific cap also accords with the market rate in this case (assuming no 5% set-aside)[98] and is
similarly consistent with IRPA rates in comparison cases.[99]

39.     Because 15% represents a reasonable percentage for the services the IRPAs are
providing, if the Court should accept Class Counsel's proposal that each IRPA give 5% of her
client's recovery to a common benefit fund for future legal work, the IRPA cap should be
adjusted to take account of that extra payment.  That said, the succeeding section of the report
sets forth my expert opinion that there should be no 5% set-aside.[100]

---

[98] The fact that IRPA rates have decreased as this case has proceeded does not undercut the
necessity of a court-imposed cap.  *First*, despite final approval of the class action settlement, the
IRPA market rate remains between 20-25%; with the addition of Class Counsel's 15.6% fee
request, most players still face total fees in the 40% range. *Second,* given the players' inherent
physical and mental vulnerability, some (perhaps many) may not be able to shop effectively for
better rates.  *Third,* those players who do find better rates with different lawyers face the
likelihood of a lien from their initial attorney, which could augment, rather than reduce, his
ultimate fee.

[99] The 20.6% average in the other fee cap cases is higher than the 15% proposed here, but Class
Counsel's proposed 15.6% fee here is a significant limiting factor; in these other settlements, the
plaintiffs' steering committee generally was awarded less than 10% of the full recovery, enabling
a slightly higher IRPA rate.  *See also Newberg on Class Actions*, *supra* note 11, § 15:117
(reporting that in 29 cases with final common benefit assessments, the "mean award percentage
was 7.32% and the median award percentage was 6%," less than half the 15.6% Class Counsel
seek here).

[100] *See* Part III, *infra*.

40.     In implementing the 15% cap, the Court should make the cap presumptive and establish a process whereby counsel or their client could seek relief from it in particular circumstances.  For example:[101]

- Some IRPAs argue that they undertook significant amounts of important legal work on behalf of their individual clients prior to the creation of this MDL[102] and/or accumulated so many clients[103] that they really laid the groundwork for this band of cases and this settlement.  To the extent those arguments are factually accurate, those lawyers may be entitled to more than a 15% fee.  That said, it also seems somewhat unfair to their clients that those clients should pay a greater amount of their recovery because their lawyers were so important to the whole case.  Accordingly, if these lawyers are able to demonstrate the importance of their individual work for the common good – Co-Lead Counsel disputes the value of these contributions[104] – it would make more sense to compensate them from the common benefit fund than to tax their own clients for additional fees above the 15% cap.

- Some law firms in this case represent hundreds, or more than a thousand, individual players.  These firms should be able to provide IRPA services at reduced contingent fee rates given the economies of scale.[105]  Their clients – who likely get less individualized

---

[101] This list is not meant to be exhaustive.

[102] *See, e.g.,* ECF Nos. 8557 at 1 (describing research efforts that Goldberg, Persky & White began "more than a decade ago" and contending that the "legal strategies [the firm] developed became the basis for pursuing the claims" in the MDL); 8701 at 4-5 (describing Analpol Weiss filing of first federal action and work that went into filing).

[103] *See, e.g.,* ECF No. 8722 at 8 ("Firms, including Zimmerman Reed, undertook substantial risk when they filed the first cases, investing significant time and effort on behalf of both their individual clients and the Class as a whole . . . .  The early concerted effort obtained a critical mass of plaintiffs . . . that legitimized the lawsuit . . . and paved the path towards the Settlement.").

[104] ECF No. 8934 at 19 ("[W]hile being first to bring a lawsuit is important, it certainly does not support a large common benefit fee award when others performed virtually all of the post-filing work to bring about the Settlement, obtain final approval, and defend the Settlement through multiple appeals."); *id.* at 25-26 (asserting absence of "objective proof that this purported critical mass is what drove the NFL to settle").

[105] *Dunn,* 602 F.2d at 1113 n.12 ("The problem apparently encountered by the district court in this case is that a fee contract was entered into with 220 separate claimants, substantially increasing the total recovery and, correspondingly, escalating the attorneys' fees without a proportionate increase in the effort and expense of litigation.  A fair and equitable contingent fee agreement generally provides for a sliding scale in which fees based on a percentage of the total

attention – should be able to realize those benefits through reduced contingent fee rates. Some of these firms appear to have voluntarily adjusted their rates accordingly, but if they do not, the Court should permit their clients to ask for a downward adjustment, even of the 15% cap, if appropriate.

- Similarly, clients who hired lawyers after the class action was proposed and/or settled should also be able to petition for lower rates given that their IRPAs shouldered almost no – or in the case of post-settlement approval IRPAs, no – risk.

- Finally, the class action fees and expenses (15.6%) plus the IRPA fee (15%) means most represented class members will pay 30.6% of their recoveries *and* their IRPA's expenses. The IRPA expenses should not be significant, given the quantity of litigation at issue. Accordingly, if a class member is faced with IRPA expenses that push his aggregate fees over 33% of his recovery – that is, IRPA expenses exceeding about 2.5% of his recovery – he should have the opportunity to argue for a lower fee cap.

Third Circuit law puts the burden of proof on the lawyer to demonstrate by a preponderance of the evidence that the contingent fee is reasonable; thus in any proceeding challenging the cap's application, the burden would be on the lawyer to justify the argued-for amount.

41.     In sum, application of Third Circuit law supports the Court's authority to implement a contingent fee cap and the circumstances of this case warrant a cap of 15%.

## III.
## THE COURT SHOULD REJECT A 5% SET-ASIDE

42.     Class Counsel seek a "set-aside" of 5% from each plaintiff's recovery "for the purpose of reimbursing counsel for future common benefit work and expenses in conjunction with implementation of the Settlement."[106]     As noted at the outset, the proposal would set aside

---

recovery decrease as the amount of the recovery increases.  The fee contracts in the instant case had no such formula and it may well be that an appropriate modification of the contracts could be a satisfactory solution to the conundrum posed here.") (citations omitted).

[106] ECF No. 7151 at 2.

$47.5 million in total over 65 years, the net present value of which is $26.85 million.[107]   For
represented parties, the 5% would come out of their IRPA's contingent fee and not reduce their
recovery; for unrepresented parties, the 5% would come out of their recovery and reduce it
accordingly.   The monies would be placed into a common benefit fund to be available to finance
work by Class Counsel.   But Class Counsel would have to petition the Court for approval of an
award of fees from this common benefit fund.   Thus, Class Counsel's present request is that the
Court put in place a holdback assessment, leaving the possibility of actual fee awards from the
assessment for the future.[108]

43.    Class Counsel's set-aside motion takes the position that the $112.5 million class
action fee award they seek pays them for *securing* the settlement, but that they will have to be
paid extra for work *implementing* the settlement.   Thus, Class Counsel define the "future" period
to be funded by 5% set-aside funds as having commenced on the Effective Date of the
Settlement (January 7, 2017)[109] or on the date of their filing a fee petition (February 13, 2017)[110]

---

[107] The mean calculation of the net present value of the $950 million MAF is $537 million.   ECF
No. 6168 at 51.   Five percent of that amount is $26.85 million.

[108] ECF No. 7464 at 18-19.   *See also id.* at 19 ("As noted in the leading treatise on class actions,
it 'is evident [that] a court makes two distinct calculations in assessing common benefit fees:
*first*, a holdback assessment, and *second*, an award assessment.'   Presently, Co-Lead Class
Counsel request that the Court perform only the first calculation and order the holdbacks or set-
asides.") (quoting *Newberg on Class Actions*, *supra* note 11, § 15:116 at 432).

[109] ECF No. 7151-1 at 71 ("[T]he holdback from a particular award will cover work done during
the time period from the Effective Date of the Settlement to the player's award date.").

[110] ECF No. 8447 at 14–15 ("As I explained in my earlier Supplemental Declaration in Support
of the Fee Petition, work dedicated to the common benefit of the Settlement Class Members did
not end *on the date that the Fee Petition was filed*.   Indeed, after January 7, 2017, when the
opportunity for any further appeals by objectors passed and the Settlement became Effective, the
work increased substantially as registration launched, the Claims Process opened, and the BAP
began.") (emphasis added).   *See also id.* at 19 (submitting new lodestar time for common benefit
work occurring subsequent to the filing of the fee petition).

and Co-Lead Counsel attributes nearly $5 million of 2017 lodestar since that date as falling outside Class Counsel's $112.5 million fee petition.[111]

44.     Class Counsel bear the burden of proving the need for a 5% set-aside,[112] but their artificial bifurcation of settlement and implementation – and hence the justification for the 5% set-aside – fails to meet that burden for at least six reasons.

45.     *First,* the set-aside's history and genesis argue against its implementation.   The set-aside did not appear in the initial Settlement Agreement that the parties proposed to the Court in 2013 and that the Court rejected in January 2014,[113] although that settlement also had a 65-year arc.   Only upon submission of the second Settlement Agreement in June 2014 did Class Counsel first suggest the need for $47.5 million more in fees over 65 years.[114]   There is no explanation in the second settlement papers explaining *when* Class Counsel and the NFL discussed this 5% set-aside in negotiating the second Settlement Agreement[115] and thus no explanation *why* Class Counsel would negotiate this term with the NFL, given that the NFL is

---

[111] ECF No. 8447-1 at 2 (as of October 10, 2017).

[112] *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 374 (3d Cir. 2004) (holding, in fee-shifting case, that, "The party seeking attorneys' fees has the burden to prove that its request is reasonable.").

[113] ECF No. 5634-2 at 74 (stating, in initial settlement, only $112.5 million fee request).

[114] ECF No. 6073-2 at 80–81.  This same language is included in a subsequent version of the Settlement Agreement filed with the Court on February 13, 2015.  ECF No. 6481-1 at 82.  The redline version showing changes between the June 2014 settlement and February 2015 settlement confirms that this fee provision was not altered.  See ECF No. 6481-2 at 83-84.

[115] In fact, Co-Lead Counsel's Declaration in support of final approval of the second settlement describes the set-aside provision in the portion of his Declaration addressing the first settlement's fee negotiation, although the set-aside provision was not a part of the first settlement.  *See* ECF No. 6423-3 at 28; *see also* ECF No. 6073-5 at 41–42 (addressing fees in preliminary approval brief without reference to genesis of this provision).  By contrast, in their initial settlement papers, the parties explained that fees had not been discussed until the terms of the settlement had been established.  ECF No. 5634-5 at 36.

not involved.[116]   Class Counsel nowhere contend that new terms in the second Settlement Agreement so enhanced their responsibilities over the 65-year life of the Settlement that the extra work warranted the need for an additional $47.5 million over those years.[117]   What they did inform the Court was that the second Settlement Agreement likely did not augment the class's recovery:  they state several times that the "Settling Parties remain confident in the projected value of the Fund at [its initial level],"[118] and they continued to rely on the initial actuarial projections in defense even of the second Settlement Agreement.  This history is troubling in that it implies that Class Counsel sought to significantly enhance their own fees without significantly enhancing their own work or, most importantly, their clients' recoveries.

46.    *Second,* the text of the second Settlement Agreement's fee provision provides no support for the argument that the $112.5 million fee award was only meant to fund counsel's work up to the effective date of the settlement.  It states that, "After the Effective Date, Co-Lead

---

[116] Scholars have argued that when counsel bargain for the inclusion of a term in an aggregate settlement agreement guaranteeing their common benefit fee they have "used their position to benefit themselves at the expense of those they were charged to represent" and that "[c]onduct of this sort establishes a predicate for fee forfeiture, not for fee enhancement."  Silver and Miller, *Quasi-Class Action, supra* note 32, at 135.

[117] The second agreement tightened the requirements for MAF payments to ensure against fraud, but not in a way that significantly enhanced Class Counsel's work, much less by close to $50 million.  *Compare, e.g.,* ECF 6073-2 at 61 *with* ECF No. 5634-2 at 55 (adding the phrase "in consultation with Co-Lead Class Counsel and Counsel to NFL Parties" to Claims Administrator's mandate to detect and prevent fraud).

[118] ECF No. 6073-5 at 16 (stating, in preliminary approval papers, "[W]hile uncapped now, the Settling Parties remain confident in the projected value of this Fund at $675 million . . . ."); *see also id.* at 23 ("While the Settling Parties remain undeterred in their belief that the $760 million deal originally struck would have been sufficient to compensate all Class Members with valid claims over the term of the Monetary Award Fund, the Settling Parties have now guaranteed payment of all valid claims without any concern that the Settling Parties' projections might have been inaccurate due to some unpredictable or unforeseen events."); ECF No. 6423-3 at 30 (declaring, in final approval papers, "[W]e still support and stand behind the reasonableness of our experts' earlier actuarial assumptions.").

Class Counsel may petition the Court to set aside up to five percent (5%) of each Monetary Award and Derivative Claimant Award to facilitate the Settlement program and related efforts of Class Counsel."[119] The "Effective Date" is referenced as a time after which Class Counsel could *petition* for this set-aside, not the time at which Class Counsel would start *billing* future work. The second Settlement Agreement also states that the NFL's "obligation to pay class attorneys' fees and reasonable costs is limited to those attorneys' fees and reasonable costs ordered by the Court as a result of the initial petition by Class Counsel," and that the NFL "shall not be responsible for the payment of any further attorneys' fees and/or costs for the term of this Agreement." [120] Again, however, that language does not limit the NFL's obligation to pay fees for Class Counsel's work up to the settlement's effective date: it simply limits the time at which payment is made to the initial petition. Moreover, as set forth in the preceding paragraph, that language was added to the Settlement only after Class Counsel bargained for set-aside language in the second Agreement. If it newly limits the NFL's obligations, that limitation should not be passed on to the class.

47. *Third,* class action law and practice provide no support for the argument that class counsel only do implementation work for extra money: countless cases state the class counsel's fee pays for both settlement *and* implementation efforts.[121] Not surprisingly, therefore, the cases

---

[119] ECF No. 6481-1 at 82.

[120] ECF No. 6481-1 at 82.

[121] *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 3175924, at *4 (N.D. Cal. July 21, 2017) ("A lodestar cross-check also supports the reasonableness of Class Counsel's requested fees. Class Counsel expended 120,418 hours while litigating and settling claims on behalf of the 3.0-liter Class Members and *implementing the Settlement*. As of the filing of the instant fee application on June 30, 2017, Class Counsel also reserved an additional 9,676 hours to '(1) guide the nearly 90,000

Class Counsel rely on in support of this approach actually argue against it. Class Counsel's brief cites to other cases in which "common benefits funds" have been established, often at similar percentage levels.[122] But in those cases, the relatively modest (5–6%) common benefit fund paid for *all* of the aggregate work that went into generating and implementing the *entire* settlement. Here, Class Counsel have separately petitioned the Court for a 15.6% class action fee and expense award to pay for their work in achieving the aggregate settlement. In response to objectors' arguments on these points, Class Counsel concede that "there really are no other cases in exact parallel" but that "[n]evertheless, it is helpful to highlight other cases wherein percentage set-asides in and around 5% were established."[123] This is unconvincing both because the 5% common benefit fees in those cases are comparable to the 15.6% class action fee Class Counsel seek *and* because these aggregate fee awards generally fund counsel's work securing and implementing aggregate settlements.

---

Class Members through the remaining 30 months of the Settlement Claims Period; (2) assist in the implementation and supervision of the Settlement, including by participating in the Claims Review Committee ...; and, if necessary, (3) take further action on behalf of class members with Generation Two vehicles in the event that [EPA] and [CARB] do not timely approve an Emissions Compliant Repair.'") (emphasis added); *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1008 (D. Colo. 2014) ("The Court finds that the amount of fees requested is reasonable considering the effort expended on this case by Class Counsel, including pre-suit investigation, informal class and merits discovery, retention of an expert to estimate damages, negotiation of the Settlement, and *implementation of the Settlement*.") (emphasis added); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1038 (N.D. Ill. 2011) ("It bears emphasizing that an attorneys' fee equal to 20% of the cash recovered in each Subfund will compensate a significant number of attorneys. Indeed, 92 lawyers are currently involved in *implementing the Settlement Agreement*, and the relevant award will be divided amongst each of them.") (emphasis added); *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1285 (S.D. Ohio 1996) (granting attorney fees from the common fund in part for counsel's "participation in the *implementation of the settlement*") (emphasis added).

[122] ECF No. 7151-1 at 71 n.38.

[123] ECF No. 7464 at 33 n.25.

48.    *Fourth,* the $112.5 million magnitude of Class Counsel's aggregate fee request further undercuts the argument that it only funds work securing the settlement, but that counsel must be paid extra to implement it.   Fee awards at this level tend to purchase a far greater quantity of legal services than simply securing a settlement agreement.[124]   In the *Avandia* MDL in this District, for example, Judge Rufe awarded the plaintiffs' steering committee a similar level fee (up to $143 million) for:

- analyzing and cataloging more than 30 million pages of documents;

- taking or defending 220 depositions;

- finding, retaining, and working with more than 20 expert witnesses, from numerous fields of discipline;

- becoming educated on, and adept at addressing, complex medical and scientific issues;

- researching and defending against motions on a variety of legal issues, including without limitation, privilege, *Daubert*, *Lone Pine*, statute of limitations and tolling, and numerous discovery disputes, involving scope, extent, method, and applicability;

- preparing for and participating in monthly Status Conferences before the Court;

- preparing for and participating in more than 30 discovery hearings before the Special Master;

- negotiating with [the defendant] on issues leading to the Court's issuance of dozens of pretrial orders;

- drafting and lodging written discovery requests;

- preparing several bellwether cases for trial; and

---

[124]   ECF No. 8709 at 30 (stating, in Declaration submitted by one of the Class Counsel, that "[t]his is the only mega fund case in which there was no paper discovery, no depositions, no motion practice, no litigation, no trials, no trial activity as in all previous mega funds in which settlement occurred after litigation work was accomplished").

- negotiating settlement concepts that would provide a foundation for settlements across the litigation.[125]

49.     *Fifth,* if $112.5 million is not a sufficient amount to fund Class Counsel's efforts both securing and implementing the Settlement, Class Counsel were – and remain – in the best position to secure more funding from the NFL. The Settlement Agreement that they negotiated states without qualification that "the NFL Parties shall pay class attorneys' fees and reasonable costs."[126]  The rest of the provision simply provides that the NFL will not oppose an award of $112.5 million and that it will only pay fees associated with an initial fee petition.  If in negotiating the revised settlement agreement, Class Counsel came to the conclusion that an additional $47.5 million in fees was necessary, they were in the best position to negotiate for that with the NFL.  Having failed to do so, nothing in the Settlement Agreement bars Class Counsel from seeking that amount from the NFL now, other than the fact that they would have to convince this Court, over the NFL's objections, that they deserve that amount.  If they are not confident they can make that showing, it hardly seems right to instead seek to extract the money from their own clients.

---

[125] *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, No. 07-MD-01871, 2012 WL 6923367, at *2 (E.D. Pa. Oct. 19, 2012); *see also Fanning v. Acromed Corp.*, 2000 WL 1622741, at *6 (E.D. Pa. Oct. 23, 2000) (approving 12% fee award in case in which: "The PLC has conducted substantial, widespread and extensive discovery of AcroMed and other defendants and third parties . . . (PLC reviewed more than 105,000 pages of documents produced by AcroMed and almost 1.5 million pages of documents produced by other defendants and third parties).  The PLC has defended a variety of pleadings and discovery matters and litigated a plethora of motions, defeating AcroMed's preemption defense and other motions including those seeking dismissal on the grounds of First Amendment protection, Eleventh Amendment immunity, lack of jurisdiction, failure to state a claim, improper joinder and statute of limitations.  As a result, the court has issued nearly 2000 Pretrial Orders.") (internal quotation marks and citations omitted).

[126] ECF No. 6481-1 at 82.

50.     *Sixth,* if there is a disjuncture between when Class Counsel seek to get paid and when they will have to finish the work embedded in that payment, the solution is not to pay them more money but to stagger their present payment to align with the work.[127] Thus, in one case the Court awarded Class Counsel its requested fee but set aside 10% of it in an interest-bearing account that was meant to "constitute a fund out of which class counsel will be compensated for time spent implementing the settlement," noting that class counsel would "receive compensation from the fund on application to the Court as implementation of the settlement progresses."[128]

---

[127] *See, e.g., Mitchell v. Metro. Life Ins. Co.*, No. 01-CIV-2112 WHP, 2003 WL 25914312, at *1 (S.D.N.Y. Nov. 6, 2003) (approving class counsel's $3.4 million fee request and noting that "$3.25 million will compensate Class Counsel for all fees and costs incurred through the final approval hearing and distribution of the class settlement fund [while] $150,000 will compensate Class Counsel for future monitoring of MetLife's compliance with the terms of the Consent Decree, which will be paid at the rate of $50,000 per year over the three year term of the Decree"); *Haynes v. Shoney's, Inc.*, No. 89-30093-RV, 1993 WL 19915, at *47 (N.D. Fla. Jan. 25, 1993) (approving $25.5 million fee award, with $20 million at settlement and $5.5 million for post-approval work "monitoring, administration and implementation (including, without limitation, for processing of claims" to be paid "in one hundred twenty (120) monthly installments").

[128] *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 126 (S.D.N.Y. 2001) ("The Settlement provides that attorneys' fees are to be paid in a lump sum. The Court awards the plaintiff class counsel $4,363,272.15, i.e., the requested $4,848,080.17 less 10%. The remaining $484,808.02 requested by plaintiff class counsel will be held in a separate interest bearing account and will constitute a fund out of which class counsel will be compensated for time spent implementing the settlement. Plaintiff class counsel will receive compensation from the fund on application to the Court as implementation of the settlement progresses.") (citing *Rabin v. Concord Assets Group, Inc.*, 1991 WL 275757, *1 (S.D.N.Y. 1991) ("In view of the uncertainties surrounding the amount of time counsel will be called upon to devote in discharging their continuing monitoring obligations, the concept of deferring a final determination of the fee amount and setting aside a sum of money for eventual award to counsel or return to the class, commends itself to the Court."); *Ramah Navajo Chapter v. Babbitt*, 50 F.Supp.2d 1091 (D.N.M. 1999) ("The Court will defer distribution of a portion of the second fees payment, if it deems such action to be necessary to guarantee completion of any remaining legal representation after distribution to the class is complete.")).

51.     As applied here, were the Court to award Class Counsel their requested $112.5 million for *securing and implementing* this settlement, it could – for example – award $90 million now and set aside $22.5 million to fund future implementation work.[129]  Using a simple formula, a fund of $22.5 million that was to be spent down over 65-years (assuming, as the actuaries in this case do, a 4.5% investment return)[130] would enable the spending of almost exactly $1 million/year for 65 years and leave no funds at the end of that time.  Were the Court to adopt such an approach, Class Counsel would receive a fee award that had a net present value of $112.5 million but that would pay Class Counsel a total of $155 million over time ($90 million now plus $65 million over 65 years).  Moreover, such a bifurcation would award Class Counsel 80% of its aggregate fee now, even though the class is receiving far less than that amount of its total MAF recoveries at present.

52.     If the Court were to adopt this approach, the $1 million/year in available fees should be sufficient to fund Class Counsel's implementation work after the claims process is fully launched.  I reach this conclusion after carefully reviewing the 12 tasks that Class Counsel deem necessary to "launch and maintain the Settlement Program."[131]  Table 2 (presented in Exhibit E) breaks down these tasks into "launch" work (now largely completed) and "maintain" work (to be undertaken in future years and paid for by the future funding stream).  According to

---

Similarly, in the *Avandia* MDL, the Court awarded an additional $10,050,000 – or .4% (not 4%) of the value of the settlement – to be "held in reserve for payment of future administrative fees and expenses."  *In re Avandia*, 2012 WL 6923367, at *1.

[129] This amount parallels Class Counsel's request for a 5% set aside, as the net present value of that set aside is $26.85 million.  *See* note 107, *supra*.

[130] ECF No. 6167 at 11; ECF No. 6168 at 11.

[131] ECF No. 7464 at 36.

that review, Class Counsel's primary future functions, once the settlement program is launched and functioning properly, will be threefold:  to work with the claims administration staff in perpetuating a sound network of physicians; to monitor the claims process so as to ensure it is functioning well for the class (including audits, appeals, and funding); and to re-visit the science every ten years.  Class Counsel should be able to accomplish these tasks at $1 million/year.

53.     If the Court were to adopt this approach, it should institute several measures designed to ensure against depletion of the future fund:

- *First,* the Court should include Class Counsel's $5 million 2017 lodestar – and perhaps more in 2018 lodestar – as part of its lodestar cross-check for the $90 million present payment and not allocate this lodestar toward future work.[132]  All of this work is consistent with an initial payment in "launching" the settlement and not attributable to future work in "maintaining" a fully-launched program.

- *Second,* Class Counsel should be required to apply for fees from the set-aside fund on some regular – likely annual – basis.

- *Third*, if Class Counsel's annual fee bill exceeds that $1 million/year stream, Class Counsel should be permitted to carry-over monies to be paid against the subsequent year's allocations.  This is preferable to paying extra in any given year, as doing so depletes the capital in the account that is earning interest going forward.  While work at the front end may be somewhat heavier, there should not be a high level of work each year for 65 years if the parties are able to establish a sound claims administration program.

---

[132] I observe that the addition of $5 million to Class Counsel's $40 million initial lodestar, ECF No. 7151-1 at 64, would bring their total lodestar to about $45 million, meaning that a $90 million fee award would embody a lodestar multiplier of 2, which is lower than the 2.6 that Class Counsel seek.  *Id.* at 67.  However, as noted below, *see* text accompanying note 136, *infra,* it is plausible that the Court will have to adjust counsel's hourly rates downward, given that one of the two Co-Lead Counsel who submitted those rates for purposes of the lodestar cross-check, ECF No. 7151-1, now takes the position that the rates embody "gross disparities" unrelated to the lawyers' "skill, efficiency, [and] quality of work" and that the Court should adopt uniform hourly rates.  ECF No. 8701 at 14-15.  Disciplined hourly rates would reduce Class Counsel's aggregate $45 million lodestar and thus enhance its lodestar multiplier over 2.

- *Fourth,* there should be a presumption that implementation fees will be paid on a lodestar basis, for the hours worked, without a multiplier. In the *Diet Drugs* litigation, for example, counsel have implemented the settlement for the past seven years on a lodestar basis without seeking a multiplier for such work (with one peculiar – and rejected – exception).[133]

- *Fifth,* the Court should establish capped and consistent billing rates for this future implementation work. At the outset of this action, the plaintiffs' leadership team reported to the Court that the lawyers "had reached consensus to establish reasonable *uniform hourly rates* for all partners, associates and paralegals" for use in an ultimate lodestar cross-check;[134] Yet at the conclusion of the case, both Co-Lead Counsel submitted hourly rates in the lodestar cross-check that were so disparate in amounts – from $500 to $1,350 for partners, from $275 to $850 for associates, and from $125 to $475 for paralegals[135] – that one of the Co-Lead Counsel himself has subsequently labelled them "gross disparities" unrelated to the lawyers' "skill, efficiency, [and] quality of work."[136] Thus, the *average* hour in this case was billed at a rate of $796.66.[137] By contrast, in the *Avandia* case, "the fee committee categorized each applicant timekeeper into one of six groups, in accordance with the timekeeper's role and contributions to the case, and assigned to each of those categories an hourly rate: $185 for paralegals and staggered rates—of $225, $285, $380, $475, and $595—for attorneys, based on their varying levels of experience and contributions to the case."[138] The result was an average hourly rate of $412.53.[139]

---

[133] *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, No. 99-20593, 2017 WL 2838257, at *7 (E.D. Pa. June 30, 2017) ("The lodestar calculation is $61,825, which reflects the 85 hours spent by Levin on the MDL 1203. The lodestar multiplier is 9.727. We find it is unreasonable to grant a fee request with such a lodestar multiplier. Instead, it is appropriate to award Levin $61,825 from the MDL 1203 Fee and Cost Account. This award yields a multiplier of 1 and reflects the number of hours performed by Levin in 2016 on MDL-related work.").

[134] ECF No. 54 at 8 (emphasis added). I am unaware of whether the Court did receive that document – there is no such indication on the PACER docket. Similarly, the Court entered an Order in the summer of 2012 requiring the submission of periodic time and expense reports, ECF No. 3698, but there is no record on PACER of these reports ever having been filed.

[135] Co-Lead Counsel underrepresented these disparities in their brief. *Compare* ECF No. 7151-2 at 25 (reporting, in Co-Lead Counsel's brief, rates "from $400 to $1,350 for partners, from $275 to $575 for associates, and from $125 to $340 for paralegals"), *with* ECF No. 7151-6 at 11 (charging, in one firm's lodestar, $850 for an associate and $475 for a paralegal).

[136] ECF No. 8701 at 14.

[137] ECF No. 7151-1 at 64 (reporting lodestar of $40,559,978.60 for 50,912.39 hours of work, yielding an average hourly rate of $796.66).

[138] *Avandia*, 2012 WL 6923367, at *9.

- *Sixth,* much of the future implementation work should not be done at high rates by the highest paid lawyers at a firm.  The *Diet Drugs* litigation again provides a useful comparison point.  The firm undertaking the work in that case is also Sub-Class Counsel in this case.  In its lodestar submission for its work in this case, the partners bill at rates from $975/hour to $1,350/hour, with the average hourly rate for the firm coming in at $1,201.26.[140]  Simultaneously, in 2016, for implementation work in the *Diet Drugs* case, the same firm reported a lodestar of $602,400 for 955.5 hours of work, with an average hourly rate of $629.40.[141]  While this Court has yet to undertake the lodestar cross-check, and hence may or may not warrant rates at the $1,201.26/hour level, the simple point is that monitoring work is not contingent,[142] is often not highly challenging, and thus can be performed by associates at modest rates.  Indeed, implementation should be capable of being performed at rates far below $629.40/hour.

54.     In sum, Class Counsel's aggregate fee request of $112.5 million should cover

both securing and implementing the settlement in the circumstances of this case.  The long arc of

the class's recoveries in this case means that Class Counsel's work implementing the Settlement

will continue for decades.  Given that Class Counsel seek a fee award for 100% of the class's

---

[139] *Id.* at *10 (reporting that counsel's total lodestar was $55,279,440 for approximately 134,000 hours of work).  Similarly, in the *Volkswagen Diesel* (3.0 Liter) case, I reported that the average, or blended, billing rate in 40 recent class action cases in the Northern District of California was $528.11/hour, with the rate in that case coming in at $461.69.  *See* Declaration of William B. Rubenstein in Support of Plaintiffs' Motion for 3.0 Liter Attorney's Fees and Costs, ECF No. 3396-2, Ex. B at 19, *In re* Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation (June 30, 2017).

Some, though not all, of the nearly $800/hour average hourly rate in this case is attributable to the fact that there was no discovery, which is usually undertaken by associates and staff attorneys at lower rates; the total lodestar here therefore primarily encompasses the time of leadership committee lawyers charging senior partner rates for their involvement in settlement negotiations.

[140] ECF No. 7151-6 at 11 (reporting $6,031,806.25 in total fees for 5,021.25 hours of work).

[141] *In re Diet Drugs*, 2017 WL 2838257.  Similarly, in 2015, the firm performed 2,610 hours of work for a lodestar of $1,502,075, yielding an hourly rate of $575.51.  *In re Diet Drugs Prod. Liab. Litig.*, No. 99-20593, 2016 WL 8732314, at *1 (E.D. Pa. May 6, 2016).

[142] *In re Diet Drugs*, 2017 WL 2838257, at *5 ("Levin concedes that the risk of non-payment for work performed in connection with the administration of the Class Settlement in the period after December 31, 2009 is minimal.").

recovery now, even though many class members will not get paid for decades, some portion of that fee award should be set aside and paid out over time, to correspond with the implementation work that Class Counsel will have to do over time.  This approach aligns Class Counsel's fees with the class recoveries in a straightforward manner without requiring *extra* pay for Class Counsel to do work that is an expected part of its underlying class action fee award.  Given these factual and legal points, Class Counsel cannot meet their burden of demonstrating that, having sought a 15.6% class action fee and expense award, they are also entitled to an additional 5% of all future recoveries.

55.     Implicit in my opinion is the sense that if Class Counsel received a 5% set-aside on top of its $112.5 million fee request, they would be getting paid twice for the same work.  Given my recommendation that the 5% set-aside be rejected, there is no need for me to separately address the "double-dipping" concern the Court identified with regard to this 5% assignment.[143]

---

[143] I note for the record that there is a different double-dipping concern raised by the dispute between the Estate of Kevin Turner, ECF Nos. 7029, 7114, and the law firm Podhurst Orseck, P.A., ECF No. 7071, now joined by many other firms on the leadership committee, ECF Nos. 7073, 7075, 7085.  That dispute concerns whether Class Counsel who have secured fees for their aggregate work in a class action lawsuit may separately, and additionally, enforce a contingent fee contract against the class representative for work securing his individual relief.  My opinion regarding the facts and circumstances of Class Counsel's 5% set-aside motion is not meant to address the Turner fee dispute in any way.  It is not my understanding of the Court's Order directing my work that I do so.  *See* ECF No. 8376 at 2.

\* \* \*

56.     I have stated my expert opinions that:

- Third Circuit law clearly invests this Court with the inherent authority to cap the contingent fee contracts of the lawyers appearing before it, which includes any lawyer seeking a share of his or her client's recovery through the current class action settlement process.   The Court should cap IRPA contingent fee contracts at 15% because at least seven circumstances about this case support the conclusion that contingent fees contracts risk generating unreasonable fees.   Such a cap would mean that no player would pay more than about a third of his recoveries in fees and expenses, given that Class Counsel's fee request of $112.5 million constitutes 15.6% of the net present value of the settlement.

- The Court should reject Class Counsel's request for a 5% set-aside and should instead bifurcate its aggregate fee award into a present payment and a fund for future payments, and it should adopt measures to ensure that the fund remains viable over the 65-year duration of the settlement.


_William B. Rubenstein_

December 3, 2017                        William B. Rubenstein
Los Angeles, California

47

# EXHIBIT A

*In re National Football League Players' Concussion Injury Litigation*
MDL No. 2323
Expert Declaration of William B. Rubenstein

## EXHIBIT A

Partial List of Documents Reviewed by Professor Rubenstein
(other than case law and scholarship on the relevant issues)

## I.    Case Filings

### A.        Case No. 2:12-md-02323

1.   Transfer Order to Eastern District of Pennsylvania, ECF No. 1
2.   Case Management Order No. 1, Practice and Procedure Order Upon Transfer Pursuant to 28 U.S.C. § 1407(a), ECF No. 4
3.   Interested Party Response in Support of Defendant National Football League's Motion for Transfer and Coordination or Consolidation, ECF No. 5
4.   The National Football League's Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Fed. R. Civ. P. 12(b) and 12(b)(6), ECF No. 17
5.   Memorandum of Law in Support of The National Football League's Motion to Dismiss the Amended Complaint, ECF No. 17-1
6.   Notice of Motion and Motion to Dismiss for Failure to State a Claim Upon Which Relief can be Granted (FRCP 12(B)(6)); Memorandum of Points and Authorities, ECF No. 18
7.   Notice of Motion and Motion to Dismiss for Failure to State a Claim upon Which Relief can be Granted (FRCP 12(B)(6)); Memorandum of Points and Authorities, ECF No. 20
8.   Notice of Motion and Motion to Dismiss for Failure to State a Claim upon Which Relief can be Granted (FRCP 12(B)(6)); Memorandum of Points and Authorities, ECF No. 22
9.   Memorandum in Support of Plaintiff's Request to Conduct Pretrial Discovery, ECF No. 40
10.  Order, ECF No. 52
11.  The National Football League's Memorandum of Law in Opposition to Plaintiff's Motion to Conduct Pretrial Discovery, ECF No. 53
12.  Plaintiffs' Joint Application for Appointment of Plaintiffs' Executive Committee, Plaintiffs' Steering Committee, and Plaintiffs' Liaison Counsel, ECF No. 54
13.  Plaintiffs' Executive Committee Resumes & References, ECF No. 54-1
14.  Plaintiff's Steering Committee Resumes & References, ECF No. 54-2
15.  Plaintiff's Liaison Counsel Resume & References, ECF No. 54-3
16.  Proposed Order, ECF No. 54-4
17.  Certificate of Service, ECF No. 54-5
18.  Plaintiffs' Joint Application for Appointment of Plaintiffs' Executive Committee, Plaintiffs' Steering Committee, and Plaintiffs' Liaison Counsel, ECF No. 54-main
19.  Case Management Order No. 2, ECF No. 64
20.  Order, ECF No. 66
21.  Case Management Order No. 3, ECF No. 72
22.  Plaintiff's Master Administrative Long-Form Complaint, ECF No. 83

23. Plaintiffs' Master Administrative Class Action Complaint for Medical Monitoring and Original Class Action Complaint for Plaintiff's Allen, Kowalewski, Little, Wooden & Fellows, ECF No. 84
24. Order, ECF No. 85
25. Case Management Order No.4, ECF No. 98
26. Plaintiff's Motion to Remand and Motion for Discovery in Aid of Remand, ECF No. 100
27. Memorandum of Plaintiffs in Support of Motion to Remand and for Discover in Aid of Remand, ECF No. 100-3
28. Short Form Complaint, ECF No. 1850
29. Plaintiffs' Amended Master Administrative Long-Form Complaint, ECF No. 2642
30. Order, ECF No. 3384
31. Defendants National Football Leagues and NFL Properties LLC's Motion to Dismiss the Amended Master Administrative Long-Form Complaint on Preemption Grounds, ECF No. 3589
32. Memorandum of Law of Defendants National Football League and NFL Properties LLC in Support of Motion to Dismiss the Amended Master Administrative Long-Form Complaint on Preemption Grounds, ECF No. 3589-1
33. Defendants National Football leagues and NFL Properties LLC's Motion to Dismiss the Master Administrative Class Action on Preemption Grounds, ECF No. 3590
34. Memorandum of Law of Defendants National Football League and NFL Properties LLC in Support of Motion to Dismiss the Master Administrative Class Action Complaint on Preemption Grounds, ECF No. 3590-1
35. Plaintiff's Uncontested Motion for Order Establishing a Time and Expense Reporting Protocol and Appointing Auditor, ECF No. 3698
36. Pretrial Order No. 9, ECF No. 3698-1
37. Memorandum and Order, ECF No. 3698-2
38. Pretrial Order No. 6, ECF No. 3698-3
39. Curriculum Vitae or Alan B. Winikur, CPA/ABV/CFF, ECF No. 3698-4
40. Pretrial Order No. 109, ECF No. 3698-5
41. [Proposed] Case Management Order No. 5 Re: Submission of Plaintiff's Time and Expense Reports and Appointment of Auditor, ECF No. 3698-6
42. Time Report Template, ECF No. 3698-7
43. Certificate of Service, ECF No. 3698-8
44. Case Management Order No. 5 Re: Submission of Plaintiffs' Time and Expense Reports and Appointment of Auditor, ECF No. 3710
45. Memorandum of Plaintiffs in Opposition to Defendants National Football League's and NFL Properties LLC's Master Administrative Long-Form Complaint, ECF No. 4130
46. Memorandum of Plaintiffs' in Opposition to Defendants National Football League's and NFL Properties LLC's Motion to Dismiss Plaintiffs' Master Administrative Class Action Complaint for Medical Monitoring, ECF No. 4131
47. Memorandum of Certain Plaintiffs' in Opposition to Defendants National Football League's and NFL Properties LLC's Motion to Dismiss Concerning Additional Cause of Action Pled in Short Form Complaints, ECF No. 4132

48. Reply Memorandum of Law of Defendants National Football League and NFL Properties LLC in Further Support of Motion to Dismiss the Amended Master Administrative Long-form Complaint on Preemption Grounds, ECF No. 4252

49. Reply Memorandum of Law of Defendants National Football League and NFL Properties LLC in Further Support of Motion to Dismiss the Master Administrative Class Action Complaint on Preemption Grounds, ECF No. 4253

50. Reply Memorandum of Law of Defendants National Football League and NFL Properties LLC in Further Support of Motion to Dismiss Additional Causes of Action Pled in Certain Short-Form Complaints, ECF No. 4254

51. Surreply of Plaintiffs in Response to Defendants National Football League's and NFL Properties LLC's Reply Memorandum of Law in Further Support of Motion to Dismiss the Amended Master Administrative Long-Form Complaint, ECF No. 4589

52. Surreply of Plaintiffs in Response to Defendants National Football League's and NFL Properties LLC's Reply Memorandum of Law in Further Support of Motion to Dismiss the Amended Master Administrative Class Action Complaint, ECF No. 4591

53. Notice, ECF No. 4596

54. Order, ECF No. 5128

55. Order, ECF No. 5235

56. Order Appointing Special Master, ECF No. 5607

57. Motion of Proposed Co-Lead Class counsel, Class Counsel, and Subclass Counsel for an Order: (1) Granting Preliminary Approval of the Class Action Settlement Agreement; (2) Conditionally Certifying a Settlement Class and Subclasses; (3) Appointing Co-Lead Class Counsel, Class Counsel, and Subclass Counsel.; (4) Approving the Dissemination of Class Notice; (5) Scheduling a Fairness Hearing; and (6) Staying Claims as to The NFL Parties and Enjoining Proposed Settlement Class Members from Pursuing Related Lawsuits, ECF No. 5634

58. [Proposed] Order (1) Granting Preliminary Approval of The Proposed Class Action Settlement Agreement; (2) Conditionally Certifying a Settlement Class and Subclasses; (3) Appointing Co-Lead Class Counsel, Class Counsel, and Subclass Counsel; (4) Approving the Dissemination of Class Notice; (5) Scheduling a Fairness Hearing; and (6) Staying Claims as to the NFL Parties and Enjoining Proposed Settlement Class Members from Pursing Related Lawsuits, ECF No. 5634-1

59. Class Action Settlement Agreement, ECF No. 5634-2

60. Declaration of Katherine Kinsella, ECF No. 5634-3

61. Declaration of Mediator and Former United States District Court Judge Layn R. Phillips in Support of Preliminary Approval of Settlement, ECF No. 5634-4

62. Memorandum of Law in Support of Motion of Proposed Co-Lead Class Counsel, Class Counsel and Subclass Counsel for an Order: (1) Granting Preliminary Approval of the Class Action Settlement Agreement; (2) Conditionally Certifying a Settlement Class and Subclasses; (3) Appointing Co-Lead Class Counsel, Class Counsel, and Subclass Counsel; (4) Approving the Dissemination of Class Notice; (5) Scheduling a Fairness Hearing; and (6) Staying Claims as to the NFL Parties and Enjoining Proposed Settlement Class Members from Pursuing Related Lawsuits, ECF No. 5634-5

63. Memorandum, ECF No. 5657

64. Order, ECF No. 5658

65.   Motion of Proposed Class Counsel for an Order: (1) Granting Preliminary Approval of the Class Action Settlement Agreement; (2) Conditionally Certifying a Settlement Class and Subclasses; (3) Appointing Co-Lead Class Counsel, Class Counsel and Subclass Counsel; (4) Approving the Dissemination of Class Notice; (5) Scheduling a Fairness Hearing; and (6) Staying Matters as to the Released Parties and Enjoining Proposed Settlement Class Members from Pursuing Related Lawsuits, ECF No. 6073

66.   [Proposed] Order (1) Granting Preliminary Approval of the Class Action Settlement Agreement; (2) Conditionally Certifying a Settlement Class and Subclasses; (3) Appointing Co-Lead Class Counsel, Class Counsel and Subclass Counsel; (4) Approving the Dissemination of Class Notice; (5) Scheduling a Fairness Hearing; and (6) Staying Matters as to the Released Parties and Enjoining Proposed Settlement Class Members from Pursuing Related Lawsuits, ECF No. 6073-1

67.   Class Action Settlement Agreement as of June 25, 2014, ECF No. 6073-2

68.   Declaration of Katherine Kinsella, ECF No. 6073-3

69.   Declaration of Mediator and Former United States District Court Judge Layn R. Phillips in Support of Preliminary Approval of Settlement, ECF No. 6073-4

70.   Memorandum of Law in Support of Motion of Proposed Class Counsel for an Order: (1) Granting Preliminary Approval of the Class Action Settlement Agreement; (2) Conditionally Certifying a Settlement Class and Subclasses; (3) Appointing Co-Lead Class Counsel, Class Counsel and Subclass Counsel; (4) Approving the Dissemination of Class Notice; (5) Scheduling a Fairness Hearing; and (6) Staying Matters as to the Released Parties and Enjoining Proposed Settlement Class Members from Pursuing Related Lawsuits, ECF No. 6073-5

71.   Objection to June 25, 2014 Class Action Settlement and Opposition to Motion for Preliminary Approval of Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick Cartwright, Jeff Rohrer, and Sean Considine, ECF No. 6082

72.   Memorandum, ECF No. 6083

73.   Order, ECF No. 6084

74.   Class Action Settlement Agreement as of June 25, 2014, ECF No. 6087

75.   Notice of Appeal, ECF No. 6121

76.   Response of the National Football League and NFL Properties LLC to Motion of Twenty-Four Plaintiffs to Gain Access to Medial, Actuarial, and Economic Information Used to Support the Settlement Proposal [Doc. #6115], ECF No. 6143

77.   Co-Lead Class Counsel's Response to Bloomberg L.P. and ESPN, Inc's Amended Motion to Intervene to Seek Access to Documents and Information and Response to Bloomberg L.P. And ESPN, Inc.'s Amended Motion for Access to Documents and Information, ECF No. 6144

78.   Order, ECF No. 6160

79.   United States Court of Appeals for the Third Circuit, ECF No. 6166

80.   NFL Concussion Liability Forecast, ECF No. 6167

81.   NFL Concussion Liability Forecast, ECF No. 6167

82.   Supplemental Schedules Provided at the Request of the Special Master, ECF No. 6167-1

83.   Counts and Compensation, by Year Paid and by Disease, ECF No. 6167-2

84.   Counts and Compensation, by Age and by Disease, ECF No. 6167-3

85.   Counts and Compensation (continued), ECF No. 6167-4

86.  Report of the Segal Group to Special Master Perry Golkin, ECF No. 6168
87.  Report of the Segal Group to Special Master Perry Golkin, ECF No. 6168
88.  Player Database, ECF No. 6168-1
89.  Actuarial data, ECF No. 6168-2
90.  Plaintiff's Sample Data, ECF No. 6168-3
91.  Screenshot of Plaintiff's Database, ECF No. 6168-4
92.  Screenshot of Model Assumptions as Entered into Model, ECF No. 6168-5
93.  Cash Flow Analysis, ECF No. 6168-6
94.  Supplemental Schedules provided at the Request of the Special Master, ECF No. 6168-7
95.  Notice of Motion of Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick Cartwright, Jeff Rohrer, and Sean Considine for Leave to Conduct Limited Discovery, ECF No. 6169
96.  Memorandum of Law in Support of Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick Cartwright, Jeff Rohrer, and Sean Considine's Motion for Leave to Conduct Limited Discovery, ECF No. 6169-1
97.  Co-Lead Class Counsel's Memorandum of Law in Response to Motion of Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick Cartwright, Jeffrey Rohrer, and Sean Considine for Leave to Conduct Limited Discovery, ECF No. 6183
98.  Response of the National Football League and NFL Properties LLC in Opposition to Motion for Leave to Conduct Limited Discovery (DOC. No. 6169) , ECF No. 6185
99.  Objections of Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick "ROCK" Cartwright, Jeff Rohrer, and Sean Considine to Class Action Settlement, ECF No. 6201
100. Objections by Susan Owens, Widow of Deceased NFL Player R.C. Owens, to Proposed Settlement, ECF No. 6210
101. Objection to Settlement, ECF No. 6213
102. Motion of Public Citizen, Inc. For Leave to File Memorandum as Amicus Curiae with Respect to Approval of Class Action Settlement, ECF No. 6214
103. Motion of Public Citizen, Inc. For Leave to File Memorandum as Amicus Curiae with Respect to Motion for Approval of Class Action Settlement, ECF No. 6214-1
104. Objection by John Kinard, Representative Claimant of Decent Frank M. "Bruiser" Kinard, On Behalf of Himself and Others Similarly Situated, ECF No. 6219
105. Objection by Return NFL Player Steven Collier to Proposed Class Settlement, ECF No. 6220
106. Objection by Estate of Retired NFL Player Delano Roper Williams to Proposed Class Settlement, ECF No. 6221
107. Objection by Estate of Retired NFL Player William "Jeff" Komlo to Proposed Class Settlement, ECF No. 6222
108. Objection by Retired NFL Player Reginald Slack and Matthew Rice to Proposed Class Settlement, ECF No. 6223
109. Objection by Michael Barber, Myron Bell, Jeff Blake, Larry Bowie, Ben T. Coates, Daunte Culpepper, Eric Curry, Edgerton Hartwell II, Johnny MC Williams, Adrian Murrell, Marques Murrell, Derek Ross, Benjamin Rudolph, Anthony Smith, Fernando Smith, Anthony ("Tony") Smith and Jonathan Wells, on Behalf of Themselves and Others Similarly Situated to Proposed Settlement, ECF No. 6226

110. Objection of Craig Heimburger and Dawn Heimburger, ECF No. 6230
111. Supplement to October 6, 2014 Objection of Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick Cartwright, Jeff Rohrer, and Sean Considine, ECF No. 6232
112. Amended Objection to the June 25, 2014 Class Action Settlement Agreement by Ramon Armstrong, Nathaniel Newton, Jr., Larry Brown, Kenneth Davis, Michael McGruder, Clifton L. Odum, George Teague, Drew Coleman, Dennis DeVaughn, Alvin Harper, Ernest Jones, Michael Kiselak, Jeremy Loyd, Gary Wayne Lewis, Lorenzo Lynch, Hurles Scales, Gregory Evans, David Mims, Evan Oglesby, Phillip E. Epps, Charles L. Haley, Sr., Kevin Rey Smith, Darryl Gerard Lewis, Curtis Bernard Wilson, Kelvin Mac Edwards, Sr., Dwayne Levels, Solomon Page, and Tim Mckyer, ECF No. 6233
113. Objection of Preston Jones and Katherine Jones to Class Action Settlement, ECF No. 6235
114. Objections to June 25, 2014 Class Action Settlement Agreement, ECF No. 6237
115. Estate of David Duerson, Estate of Forrest Blue, Thomas Deleone, Gerald Sullivan, Barry Darrow, Ray Austin, Bruce Herron, John Cornell, Tori Noel and Mike Adamle's Objections to Class Action Settlement, ECF No. 6241
116. Objections of Sixteen Plaintiffs to Approval of Settlement, ECF No. 6242
117. Objections to the Class Action Settlement Agreement dated June 25, 2014, ECF No. 6243
118. Order, ECF No. 6245
119. Curtis L. Anderson Objections to Settlement, ECF No. 6248
120. Opt Out Report Submitted by the Claims Administrator, ECF No. 6340
121. NFL Concussion Settlement Exhibit 1, ECF No. 6340-1
122. NFL Concussion Settlement Exhibit 2, ECF No. 6340-2
123. Supplement to October 6, 2014, Objection of Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick Cartwright, Jeff Rohrer, and Sean Considine, ECF No. 6420
124. National Football League's ang NFL Properties LLC's Memorandum of Law in Support of Final Approval of the Class Action Settlement Agreement and in Response to Objections, ECF No. 6422
125. Declaration of Douglas M. Burns, ECF No. 6422-1
126. NFL Concussion Settlement Exhibit 1, ECF No. 6422-2
127. Former NFL Players Face Deadline to Opt Out of Concussion Settlement, ECF No. 6422-3
128. Revised NFL Concussion Settlement gets U.S. Judge's Preliminary Ok, ECF No. 6422-4
129. Revised NFL Concussion Settlement gets U.S. Judge's Preliminary Ok, ECF No. 6422-5
130. NFL Agrees to Settle Concussion Suit for $765 Million, ECF No. 6422-6
131. Prevalence and Characterization of Mild Cognitive Impairment in Retired National Football League Players, ECF No. 6422-7
132. Consensus Statement on Concussion in Sport: the 4th international conference on Concussion in Sport held in Zurich, November 2012, ECF No. 6422-8
133. Report on the Neuropathology of Chronic Traumatic Encephalopathy Workshop December 5-6, 2012, National Institutes of Health, Bethesda, Maryland, Sports and health Research Program, ECF No. 6422-9

134. Sports-Related Concussions in Youth, Improving the Science, Changing the Culture, ECF No. 6422-10
135. Hoge Wins Lawsuit Against Doctor, ECF No. 6422-11
136. The Spectrum of Disease in Chronic Traumatic Encephalopathy, ECF No. 6422-12
137. Chronic Traumatic Encephalopathy and Risk of Suicide in Former Athletes, ECF No. 6422-13
138. Racing to Detect Brain Trauma, ECF No. 6422-14
139. Chronic Traumatic Encephalopathy: Where Are We and Where Are We Going?, ECF No. 6422-15
140. Chronic Traumatic Encephalopathy in Sport: A Systematic Review, ECF No. 6422-16
141. Head Injury is not a Risk Factor for Multiple Sclerosis: A Prospective Cohort Study, ECF No. 6422-17
142. Risk of Multiple Sclerosis After Head Injury: Record Linkage Study, ECF No. 6422-18
143. A Population-Based Study of Seizures After Traumatic Brain Injuries, ECF No. 6422-19
144. Pre-Existing Hypertension and the Impact of Stroke on Cognitive Function, ECF No. 6422-20
145. Dementia, Stroke, and Vascular Risk Factors; a Review, ECF No. 6422-21
146. Patients with Traumatic Brain Injury Population-Based Study Suggests Increased Risk of Stroke, ECF No. 6422-22
147. Stroke Risk and Outcomes in Patients with Traumatic Brain Injury: 2 Nationwide Studies, ECF No. 6422-23
148. The Association Between Head Trauma and Alzheimer's Disease, ECF No. 6422-24
149. The Association Between Head Trauma and Alzheimer's Disease, ECF No. 6422-25
150. Increased Risk of Dementia in Patients with Mild Traumatic Brain Injury: A Nationwide Cohort Study, ECF No. 6422-26
151. Head Injuries and Parkinson's Disease in a Case-Control Study, ECF No. 6422-27
152. Chronic Traumatic Encephalopathy: A Potential Late Effect of Sport-Related Concussive and Subconcussive Head Trauma, ECF No. 6422-28
153. Q&A: Robert Stern sheds light on Bu brain study – USAToday.com, ECF No. 6422-29
154. Dent, et al. V. NFL., No. C 14-02324 WHA (N.D. Cal.), ECF No. 6422-30
155. ESPN Extends Deal with NFL for $15 Billion, ECF No. 6422-31
156. Declaration of Dennis L. Curran, ECF No. 6422-32
157. Declaration of T. David Gardi, ECF No. 6422-33
158. Declaration of Scott Richard Millis, PHD, ECF No. 6422-34
159. Declaration of Julie Ann Schneider, M.D., ECF No. 6422-35
160. Declaration of Kristine Yaffee., M.D., ECF No. 6422-36
161. Class Plaintiff's Motion for an Order Granting Final Approval of Settlement and Certification of Class and Subclasses, ECF No. 6423
162. Memorandum of Law in Support of Class Plaintiff's Motion for an Order Granting Final Approval of Settlement and certification of Class and Subclasses, ECF No. 6423-1
163. Compendium of Exhibits for Memorandum of Law in Support of Motion of Co-Lead Class Counsel for an Order Granting Final Approval of Settlement and certification of Class and Subclasses, ECF No. 6423-2
164. Declaration of Co-Lead Class Counsel Christopher A. Seeger in Support of Final Approval of Settlement and Certification of Class and Subclasses, ECF No. 6423-3

165. Affidavit of Matthew L. Garretson, ECF No. 6423-4
166. Declaration of Orran L. Brown, Sr., ECF No. 6423-5
167. Supplemental Declaration of Mediator and Former United States District Court Judge Layn R. Phillips in Support of Final Approval of Settlement and Certification of Class and Subclasses, ECF No. 6423-6
168. Affidavit of Kevin Turner in Support of final Approval of Settlement and Certification of Class and Subclasses, ECF No. 6423-7
169. Affidavit of Shawn Wooden in Support of Final Approval of Settlement and Certification of Class and Subclasses, ECF No. 6423-8
170. Declaration of Robert H. Klonoff Relating to The Proposed Class Settlement in the National Football League Players' Concussion Injury Litigation, ECF No. 6423-9
171. Declaration of Subclass 1 Counsel Arnold Levin in Support of Final Approval of Settlement and Certification of Class and Subclasses, ECF No. 6423-10
172. Declaration of Subclass 2 Counsel Dianne M. Nast in Support of Final Approval of Settlement and Certification of Class and Subclasses, ECF No. 6423-11
173. Declaration of Katherine Kinsella, ECF No. 6423-12
174. Declaration of Edward J. Radectich, Jr., ECF No. 6423-13
175. Objections, ECF No. 6423-14
176. Proposed NFL Settlement is Good for Players, ECF No. 6423-15
177. Protecting the Past, The Present, and The Future, ECF No. 6423-16
178. Declaration of Kenneth C. Fischer, M.D, ECF No. 6423-17
179. Declaration of Christopher C. Giza, M.D., ECF No. 6423-18
180. Declaration of David Allen Hovda, PhD., ECF No. 6423-19
181. Declaration of John G. Keilp, PhD., ECF No. 6423-20
182. Declaration of Thomas Vasquez PhD., ECF No. 6423-21
183. Imprelis Class Action Settlement, ECF No. 6423-22
184. Deepwater Horizon Court-Supervised Settlement Program, ECF No. 6423-23
185. AHP Diet Drug Settlement Administered by the AHP Settlement Trust, ECF No. 6423-24
186. Declaration of Richard Allen Hamilton, PhD, ECF No. 6423-25
187. [Proposed] Final Order and Judgement, ECF No. 6423-26
188. Amicus Curiae Objection of Dawn Astle and Claire Astle to Class Action Settlement, ECF No. 6439
189. Response of Sixteen Objectors to the Motions for Settlement Approval Filed by The NFL and Class Plaintiffs, ECF No. 6453
190. Final Supplement to Utecht Objections, ECF No. 6454
191. Post-Fairness Hearing Supplemental Briefing of Objectors Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick Cartwright, Jeff Rohrer, and Sean Considine, ECF No. 6455
192. Estate of David Duerson, Estate of Forrest Blue, Thomas Deleone, Gerald Sullivan, Barry Darrow, Ray Austin, Bruce Herron, John Cornell, Tori Noel and Mike Adamle's Supplemental Brief in Support of Their Objections to Class Action Settlement, ECF No. 6456
193. National Football League's and NFL Properties LLC's Reply Memorandum of Law in Further Support of Final Approval of the Class Action Settlement Agreement and in Response to Objections, ECF No. 6466

194. Co-Lead Class Counsel's Reply Brief in Further Support of Motion for an Order Granting Final Approval of Settlement and Certification of Class and Subclasses and Omnibus Response to Post-Fairness Hearing Submissions, ECF No. 6467
195. Order, ECF No. 6479
196. Class Counsel and the NFL Parties' Joint Submission in Response to the February 2, 2015 Order of the Court, ECF No. 6481
197. Class Action Settlement Agreement, ECF No. 6481-1
198. Class Action Settlement Agreement as Amended, ECF No. 6481-2
199. Supplemental Objection to Settlement, ECF No. 6484
200. Memorandum, ECF No. 6509
201. Final Order and Judgement, ECF No. 6510
202. Posting of List of Opt Outs Pursuant to the Final Order and Judgement, ECF No. 6533
203. NFL Concussion Settlement: Timely opt Out Requests Containing All Information Required by Section 14.2(c), ECF No. 6533-1
204. NFL Concussion Settlement: Opt Out Requests That Were Untimely and/or Did Not Contain All Information Required by Section 14.2(c), ECF No. 6533-2
205. Amended Final order and Judgement, ECF No. 6534
206. Conditional Transfer Order (CTO-97), ECF No. 6811
207. United States Court of Appeals for the Third Circuit, ECF No. 6840
208. United States Court of Appeals for the Third Circuit, ECF No. 6840-x
209. Order, ECF No. 6886
210. Estate of Kevin Turner's Motion to Resolve Attorney Fee Dispute and to Appear as Counsel For Paul Raymond Turner, The Personal Representative of the Estate of Kevin Turner, ECF No. 7029
211. Order, ECF No. 7029-1
212. Authority to Represent, ECF No. 7029-2
213. Affidavit of Kevin Turner in Support of Final Approval of Settlement and Certification of Class and Subclasses, ECF No. 7029-3
214. Exhibit C, ECF No. 7029-4
215. Exhibit D, ECF No. 7029-5
216. Authority to Represent, ECF No. 7029-6
217. Exhibit F, ECF No. 7029-7
218. Exhibit G, ECF No. 7029-8
219. Exhibit H, ECF No. 7029-9
220. Amended Authority to Represent, ECF No. 7029-10
221. Exhibit J, ECF No. 7029-11
222. Faneca Objector's Petition for an Award of Attorneys' Fees and Expenses, ECF No. 7070
223. Faneca Objectors' Memorandum of Law in Support of petition for an Award of Attorney's Fees and Expenses, ECF No. 7070-1
224. Declaration of Steven F. Molo in Support of Petition for an Award of Attorneys' Fees and Expenses, ECF No. 7070-2
225. Response in Opposition to Estate of Kevin Turner's Motion to resolver Attorney Fee Dispute, ECF No. 7071

226. Report of Professor Charles silver On Matters Raised by the Estate of Kevin Turners' Motion to Resolve Attorney Fee Dispute and to Appear as Counsel for Paul Raymond Turner, the Personal Representative of the Estate of Kevin Turner, ECF No. 7071-1
227. Authority to Represent, ECF No. 7071-2
228. First Amended Complaint, ECF No. 7071-3
229. Short Form Complaint, ECF No. 7071-4
230. Notice of Joinder in Podhurst Orseck, P.A.'s Response in Opposition to Estate of Kevin Turner's Motion to Resolve Attorney Fee Dispute, ECF No. 7073
231. Notice of Joinder in Podhurst Orseck, P.A.'s Response in Opposition to Estate of Kevin Turner's Motion to Resolve Attorney Fee Dispute, ECF No. 7075
232. Corrected Joinder Brief of the Locks Law firm in Opposition to Motion of Estate of Kevin Turner, ECF No. 7085
233. Corrected Joinder Brief of the Locks Law firm in Opposition to Motion of Estate of Kevin Turner, ECF No. 7085
234. Co-Lead Class Counsel's Initial Response to Petition of Faneca Objectors Counsel for an Award of Attorney's Fees and Costs, ECF No. 7106
235. Certificate of Service, ECF No. 7109
236. Estate of Kevin Turner's Reply in Further Support of its Motion to Resolve Attorney Fee Dispute, ECF No. 7114
237. Certificate of Service, ECF No. 7116
238. Co-Lead Class Counsels' Petition for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, Adoption of a Set-Aside of Five Percent of Each Monetary Award and Derivative Claimant Award, and Case Contribution Awards to Class Representatives, ECF No. 7151
239. Co-Lead Class Counsels' Petition for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, Adoption of a Set-Aside of Five Percent of Each Monetary Award and Derivative Claimant Award, and Case Contribution Awards to Class Representatives, ECF No. 7151-1
240. Declaration of Christopher A. Seeger in Support of Co-Lead Class Counsels' Petition for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, Adoption of a Set-Aside of Five Percent of Each Monetary Award and Derivative Claimant Award, and Case Contribution Awards for Class Representatives, ECF No. 7151-2
241. Compendium of Exhibits for Declaration of Christopher A. Seeger in Support of Co-Lead Class Counsels' Petition for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, Adoption of a Set-Aside of Five Percent of Each Monetary Award and Derivative Claimant Award, and Case Contribution Awards for Class Representatives, ECF No. 7151-3
242. Declaration of Orran L. Brown, Sr, On Class Communications, Registrations and Cost Projections, ECF No. 7151-4
243. Declaration of Matthew L. Garreston, ECF No. 7151-5
244. Declaration of Levin Sedran & Berman in Support of Co-Lead Class Counsel's Petition for an Award of Attorney's Fees and Reimbursement of Costs and Expenses, ECF No. 7151-6
245. Declaration of Gene Locks, esquire in Support of Co-Lead Class Counsel's Petition for an Award of Attorney's Fees and Reimbursement of Costs and Expenses, ECF No. 7151-7

246. Declaration of Steven C. Marks in Support of Co-Lead Class Counsel's Petition for an Award of Attorney's Fees and Reimbursement of Costs and Expenses, ECF No. 7151-8

247. Declaration of Dianne M. Nast in Support of Co-Lead Class Counsel's Petition for an Award of Attorney's Fees and Reimbursement of Costs and Expenses, ECF No. 7151-9

248. Declaration of Sol H. Weiss, Esquire in Support of Co-Lead Class Counsel's Petition for an Award of Attorney's Fees and Reimbursement of Costs and Expenses, ECF No. 7151-10

249. Declaration of Garrett D. Blanchfield Fr. in Support of Co-Lead Class Counsel's Petition for an Award of Attorney's Fees and Reimbursement of Costs and Expenses, ECF No. 7151-11

250. Declaration of William G. Caldes in Support of Co-Lead Class Counsel's Petition for an Award of Attorney's Fees and Reimbursement of Costs and Expenses, ECF No. 7151-12

251. Declaration of Leonard A. Davis in Support of Co-Lead Class Counsel's Petition for an Award of Attorney's Fees and Reimbursement of Costs and Expenses, ECF No. 7151-13

252. Declaration of James R. Dugan, II in Support of Co-Lead Class Counsel's Petition for an Award of Attorney's Fees and Reimbursement of Costs and Expenses, ECF No. 7151-14

253. Declaration of Daniel C. Girard in Support of Co-Lead Class Counsel's Petition for an Award of Attorney's Fees and Reimbursement of Costs and Expenses, ECF No. 7151-15

254. Declaration of Thomas V. Girardi in Support of Co-Lead Class Counsel's Petition for an Award of Attorney's Fees and Reimbursement of Costs and Expenses, ECF No. 7151-16

255. Declaration of Bruce A. Hagen in Support of Co-Lead Class Counsel's Petition for an Award of Attorney's Fees and Reimbursement of Costs and Expenses, ECF No. 7151-17

256. Declaration of Samuel Issacharoff in Support of Co-Lead Class Counsel's Petition for an Award of Attorney's Fees and Reimbursement of Costs and Expenses, ECF No. 7151-18

257. Declaration of Richard Lewis in Support of Co-Lead Class Counsel's Petition for an Award of Attorney's Fees and Reimbursement of Costs and Expenses, ECF No. 7151-19

258. Declaration of Jason E. Luckasevic in Support of Co-Lead Class Counsel's Petition for an Award of Attorney's Fees and Reimbursement of Costs and Expenses, ECF No. 7151-20

259. Declaration of Derriel C. McCorvey in Support of Co-Lead Class Counsel's Petition for an Award of Attorney's Fees and Reimbursement of Costs and Expenses, ECF No. 7151-21

260. Declaration of Pop McGlamry in Support of Co-Lead Class Counsel's Petition for an Award of Attorney's Fees and Reimbursement of Costs and Expenses, ECF No. 7151-22

261. Declaration of Craig R. Mitnick in Support of Co-Lead Class Counsel's Petition for an Award of Attorney's Fees and Reimbursement of Costs and Expenses, ECF No. 7151-23

262. Declaration of David A. Rosen in Support of Co-Lead Class Counsel's Petition for an Award of Attorney's Fees and Reimbursement of Costs and Expenses, ECF No. 7151-24

263. Declaration of Frederick Schenk in Support of Co-Lead Class Counsel's Petition for an Award of Attorney's Fees and Reimbursement of Costs and Expenses, ECF No. 7151-25

264. Declaration of Anthony Tarricone in Support of Co-Lead Class Counsel's Petition for an Award of Attorney's Fees and Reimbursement of Costs and Expenses, ECF No. 7151-26

265. Declaration of Charles S. Zimmerman in Support of Co-Lead Class Counsel's Petition for an Award of Attorney's Fees and Reimbursement of Costs and Expenses, ECF No. 7151-27

266. An Empirical Study of Class Action Settlements and Their Fee Awards, ECF No. 7151-28

267. [Proposes] Order Granting Co-Lead Class Counsels' Petition for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, Adoption of a Set-Aside of Five Percent of Each Monetary Award and Derivative Claimant Award, and Case Contribution Awards to Class Representatives, ECF No. 7151-29

268. Opposition to Co-Lead Class Counsel's Petition for an Award of Attorneys' Fees and Adoption of a Set-Aside of Each Monetary Award, and Opposition to Lamkenmolo's Fee Petition, ECF No. 7161

269. Motion for Entry of Case Management Order Governing Applications for Attorneys' Fees; Cost Reimbursements; and Future Fee Set-Aside, ECF No. 7176

270. Response and Limited Opposition of the Estate of Kevin Turner to Co-Lead Class Counsels' Petition for an Award of Attorneys' Fees and Adoption of a Set-Aside of Each Monetary Award, ECF No. 7205

271. Co-Lead Class Counsels' Motion for Extension of Time to File Reply Memorandum in Support of Their Fee Petition and to Set Coordinated Briefing Schedule, ECF No. 7228

272. Armstrong Objectors' Petition for an Award of Attorneys' Fees, ECF No. 7230

273. [Corrected] Opposition to Co-Lead Class Counsel's Motion to Set Coordinated Briefing Schedule, ECF No. 7231

274. Armstrong Objectors' Memorandum of Law in Support for Their Petition for an Award of Attorneys' Fees, ECF No. 7232

275. Declaration of Richard L. Coffman in Support of the Armstrong Objectors' Petition for Award of Attorneys' Fees, ECF No. 7232-1

276. Declaration of Mitchell A. Toups in Support of the Armstrong Objectors' Petition for Award of Attorneys' Fees, ECF No. 7232-2

277. Declaration of The Webster Law Firm in Support of the Objector Armstrong's Petition for Award of Attorneys' Fees, ECF No. 7232-3

278. Declaration of The Warner Law Firm in Support of Objector Armstrong's Petition for Award of Attorneys' Fees, ECF No. 7232-4

279. Faneca Objectors Response to Co-Lead Class Counsel's Motion for Extension of Time, ECF No. 7233

280. Curtis L. Anderson's Supplemental Objection to Class Counsel's Fee Petition, ECF No. 7237

281. Order, ECF No. 7238

282. Order, ECF No. 7246

283. Order, ECF No. 7261

284. Memorandum in Opposition to Co-Lead Class Counsels' Petition for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, Adoption of a Set-Aside of Each Monetary Award and Other Relief, ECF No. 7282

285. Pro Se Plaintiff, Ricky Dixon, Response to Simmerman Reed Notice and Moition for Attorney Lien and Limited Opposition to Co-Lead Class Counsels' Petition for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, Adoption of a Set-Aside of Each Monetary Award and Other Relief, ECF No. 7299

286. Response and Opposing Motion to Zimmerman Reed's Notice and motion for Attorney Lien, ECF No. 7313

287. Certificate of Service, ECF No. 7313-1

288. Agreement for Legal Services, ECF No. 7313-2

289. Exhibit 2, ECF No. 7313-3

290. Order, ECF No. 7313-4

291. Short Form Complaint, ECF No. 7313-5

292. NFL Concussion Questionnaire, ECF No. 7313-6

293. Exhibit 6, ECF No. 7313-7

294. Exhibit 7, ECF No. 7313-8

295. Exhibit 10, ECF No. 7313-9

296. Memorandum in Opposition to Co-Lead Class Counsels' Petition for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, Adoption of a Set-Aside of Each Monetary Award and Other Relief, ECF No. 7344-55

297. Memorandum in opposition to Co-Lead Class Counsels' Petition for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, Adoption of a Set-Aside of Five Percent of Each Monetary Award and Derivative Claimant Award, and Case Contribution Awards to Class Representatives, ECF No. 7346

298. Objection and Memorandum in Opposition to Co-Lead Class Counsels' Petition for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, Adoption of a Set-Aside of Each Monetary Award and Other Relief, ECF No.7350

299. Objection of Ronald Sabal to Petition for Attorneys' Fees, Costs and Holdback, ECF No. 7351

300. Class Members' Objection to Petition for Attorneys' Fees, Costs, and 5% Holdback on Awards, ECF No.7353

301. Declaration of Representation in Support of Response in Opposition and Objections to Co-Lead Class Counsels' Petition for Award of Attorneys' Fees, Reimbursement of Costs and Expenses, Adoption of a Set-Aside of Five Percent of Each Monetary Award and Derivative Claimant Award, and Case Contribution Awards to Class Representatives, ECF No. 7354-1

302. Objection to Petition for Attorneys' Fees, ECF No. 7354-2

303. Response in Opposition and Objections to Co-Lead Class Counsels' Petition for Award of Attorneys' Fees, Reimbursement of Costs and Expenses, Adoption of a Set-Aside of Five Percent of Each Monetary Award and Derivative Claimant Award, and Case Contribution Awards to Class Representatives, ECF No. 7354

304. Memorandum of Law in Support of the Alexander Objector's Objections to and in Opposition to Co-Lead Class Counsels' Petition for an Award of Attorneys' Fees,

**A-13**

Reimbursement of Costs and Expenses, Adoption of a Set-Aside of Five Percent of Each Monetary Award and Derivative Claimant Award, and Case Contribution Awards to Class Representatives, ECF No. 7355

305. Certain Plaintiffs' Response in Opposition to Petition for Adoption of Set-Aside of Five Percent of Each Monetary Award and Derivative Claimant Award, ECF No. 7356

306. Memorandum in Opposition to Co-Lead Class Counsels' Petition for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, Adoption of a Set-Aside of Each Monetary Award and Other Relief, ECF No. 7359

307. Objection of Estate of Wally Hilgenberg and Estate of Peter Duranko to Petition for Attorney's Fees by Class Counsel Anapol Weiss, ECF No. 7360

308. Notice of Joinder in Estate of Kevin Turner's Response and Limited Opposition to Co-Lead Counsel's Petition for an Award of Attorneys' Fees and Adoption of a Set-Aside of Each Monetary Award, ECF No. 7363

309. Exhibit A, ECF No. 7363-1

310. Email Exchange, ECF No. 7363-2

311. Email Exchange, ECF No. 7363-3

312. Email Exchange, ECF No. 7363-4

313. Email Exchange, ECF No. 7363-5

314. Petition of Objectors Preston and Katherine Jones for Award of Attorney's Fees for Successful Efforts to Improve the Settlement for NFL Europe League Players, ECF No. 7364

315. Memorandum in Support of Petition of Objectors Preston and Katherine Jones for Award of Attorney's Fees for Successful Efforts to Improve the Settlement for NFL Europe League Players, ECF No. 7364-1

316. Declaration of James T. Capretz in Support of Petition of Objectors Preston and Katherine Jones for Award of Attorney's Fees for Successful Efforts to Improve the Settlement for NFL Europe League Players, ECF No. 7364-2

317. Objection of Preston Jones and Katherine Jones to Class Action Settlement, ECF No. 7364-3

318. Objection of Sean Morey, Alan Faneca, Ben Hamilton, Robert Royal, Roderick "Rock" Cartwright, Jeff Rohrer, and Sean Considine to Class Action Settlement, ECF No. 7364-4

319. Objection by Retired NFL Players Reginald Slack and Matthew Rice to Proposed Class Settlement, ECF No. 7364-5

320. Exhibit D, ECF No. 7364-6

321. Exhibit E, ECF No. 7364-7

322. Objections to June 25, 2014 Class Action Settlement Agreement, ECF No. 7364-8

323. Objection of Craig Heimburger and Dawn Heimburger, ECF No. 7364-9

324. [Proposed] Order Granting Petition of Objectors Preston and Katherine Jones for Award of Attorneys' Fees for Successful Efforts to Improve the Settlement for NFL Europe League Players, ECF No. 7364-10

325. Notice of Joinder in Estate of Kevin Turner's Motion to Resolve Attorney Fee dispute and Appearance as Counsel for Steven Anthony Smith, ECF No. 7365

326. Faneca Objectors' Preliminary Response in Support of Their Petition for an Award of Attorney's Fees and Expenses, ECF No. 7366

327. Expert Declaration of Joseph J. Floyd, March 27, 2017, ECF No. 7366-1

328. Armstrong Objectors' Memorandum of Law in Support of Their Petition for an Award of Attorneys' Fees, ECF No. 7366-2

329. Revised Summary of Expenses, ECF No. 7366-3

330. Joinder to Objections to Co-Lead Class Counsels' Petition for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, Adoption of a Set-Aside of Each Monetary Award and Other Relief, ECF No. 7367

331. Curtis L. Anderson's Second Supplemental Objection to Class Counsel's Fee Petition, ECF No. 7370

332. Memorandum of Retired NFL Player Andrew Stewart Opposing the Fee Proposed Five Percent Set-Aside of the Monetary Award, ECF No. 7371

333. Objections to Co-Lead Class Counsel's Request for 5% Set Aside, ECF No. 7373

334. Notice of Joinder in Various Objections of Co-Lead Class Counsel's Petition for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, Adoption of a Set-Aside of Each Monetary Award and Other Relief, ECF No. 7375

335. Objection to Five Percent Set-Aside From All Awards Requested in Co-Lead Counsels' Petition for an Award of Attorney's Fees, and Incorporated Memorandum of Law, ECF No. 7404

336. Order, ECF No. 7446

337. Response of Class Counsel The Locks Law Firm to Oppositions by Objectors to Co-Lead Counsel's Petition For Attorney's Fees, ECF No. 7463

338. Affidavit of Gene Locks, ECF No. 7463-1

339. Co-Lead Class Counsel's Omnibus Reply Memorandum in Further Support of Petition for Award of Attorney's Fees and Reimbursement of Expenses, Adoption of Set-Aside From Monetary and Derivative Claimant Awards, and Case Contribution Awards for class Representatives, and in Opposition to Objectors' Cross-Petitions for Awards of Attorneys' Fees and Expenses, ECF No. 7464

340. Supplemental Declaration of Christopher A. Seeger in Further Support of Co-Lead Class Counsel's Petition for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, Adoption of a Set-Aside from Monetary and Derivative Claimant Awards, and Case Contribution Awards for Class Representatives, and in Opposition to Objectors' Cross-Petitions for Awards of Attorneys' Fees and Expenses, ECF No. 7464-1

341. Declaration of Bradford R. Sohn in Support of Co-Lead Class Counsel's Petition for an Award of Attorney's Fees and Reimbursement of Costs and Expenses, ECF No. 7464-2

342. Petition of Objecting Class Members Pursuant to Fed. R. Civ. P. 23(f) for Leave to Appeal from the District Court's Order Granting Settlement Class Certification, ECF No. 7464-3

343. Reply in Support of Petition of Objecting Class Members Pursuant to Fed. R. Civ. P. 23(f) for Leave to Appeal from the District Court's Order Granting Settlement Class Certification, ECF No. 7464-4

344. Corrected Opening Brief of Appellants Raymond Armstrong, Larry Barnes, Larry Brown, Drew Coleman, Kenneth Davis, Dennis DeVaughn, William B. Duff, Kelvin Mack Edwards, Sr., Phillip E. Epps, Gregory Evans, Charles L. Haley, Sr., Alvin Harper, Mary Hughes, James Garth Jax, Ernest Jones, Michael Kiselak, Dwayne Levels, Darryl Gerard Lewis, Gary Wayne Lewis, Jeremy Loyd, Nathaniel Newton, Jr., Clifton L. Odom, Evan Ogelsby, Solomon Page, Hurles Scales, Jr., Barbara Scheer,

Kevin Rey Smith, Willie T. Taylor, George Teague, and Curtis Bernard Wilson, ECF No. 7464-5

345. Reply Brief of Appellants Raymond Armstrong, Larry Barnes, Larry Brown, Drew Coleman, Kenneth Davis, Dennis DeVaughn, William B. Duff, Kelvin Mack Edwards, Sr., Phillip E. Epps, Gregory Evans, Charles L. Haley, Sr., Alvin Harper, Mary Hughes, James Garth Jax, Ernest Jones, Michael Kiselak, Dwayne Levels, Darryl Gerard Lewis, Gary Wayne Lewis, Jeremy Loyd, Nathaniel Newton, Jr., Clifton L. Odom, Evan Ogelsby, Solomon Page, Hurles Scales, Jr., Barbara Scheer, Kevin Rey Smith, Willie T. Taylor, George Teague, and Curtis Bernard Wilson, ECF No. 7464-6

346. Opposition of Class Plaintiffs-Appellees to Armstrong Appellants' Motion for Judicial Notice, ECF No. 7464-7

347. Appellants' Opposition to Class Plaintiffs-Appellees' Motion to Expedite Appeals, ECF No. 7464-8

348. Petition for a Writ of Certiorari, ECF No. 7464-9

349. Reply Brief for Petitioners, ECF No. 7464-10

350. Raymond Armstrong, et al., Petitioners v. National Football League, et al., ECF No. 7464-11

351. An Updated Analysis of the NFL Concussion Settlement, ECF No. 7464-12

352. Declaration of Claims Administrator, Orran I., Brown, Sr., ECF No. 7464-13

353. Response in Opposition to Steven Smith's Notice of Joinder in the Estate of Kevin Turner's Motion to Resolve Attorney's Fee Dispute, ECF No. 7465

354. Reply to Response in Opposition to Steven Smith's Notice of Joinder in the Estate of Kevin Turner's Motion to Resolve Attorney's Fee Dispute, ECF No. 7524

355. Alexander Objectors' Response and Objection to Supplemental Evidence Offered in Co-Lead Class Counsels' Omnibus Reply in Opposition to Co-Lead Class Counsel's Petition for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, Adoption of a Set-Aside of Each Monetary Award and Derivative Claimant Award, and Case Contribution Awards to Class Representatives, ECF No. 7533

356. Faneca Objectors' Reply in Support of Their Petition for an Award of Attorneys' Fees and Expenses, ECF No. 7550

357. Rebuttal Expert Declaration of Joseph J. Floyd, ECF No. 7550-1

358. Reply in Support of Petition of Objectors Preston and Katherine Jones for Award of Attorneys' Fees for Successful Efforts to Improve the Settlement for NFL Europe League Players (ECF#7364), ECF No. 7555

359. Petition to Establish Attorney's Lien, ECF No. 7566

360. Memorandum of Law in Opposition to Objector Petition for an Award of Attorneys' Fees and Expenses, ECF No. 7621

361. Faneca Objectors' Reply in Further Support of Their Petition for an Award of Attorney's Fees and Expenses, ECF No. 7708

362. Joinder of Rickey Dixon and Lorraine Dixon in Estate of Kevin Turner's Motion to Resolve Attorney's Fee Dispute, ECF No. 7850

363. Response in Opposition to the Joinder of Ricky Dixon and Lorraine Dixon in Estate of Kevin Turner's Motion to Resolve Attorney's Fee Dispute, ECF No. 7942

364. ABB Order, ECF No. 8030

365. Respondents' Amended Objections to Prior Attorney Liens and Incorporated Memorandum of Law, ECF No. 8231

366. Order, ECF No. 8310
367. Request for Clarification of Order to Show Cause Regarding Court-Appointed Expert and Request for Extension of Time to Respond to Order to Show Cause by Class Counsel the Locks Law Firm, ECF No. 8327
368. Respectful Request for the Court to Appoint the Magistrate Judge to Determine Proper Allocation of Common Benefit Fund, ECF No. 8330
369. The Alexander Objector's Response to the Court's Show Cause Order of August 23, 2017 Regarding Appointment of a Court Expert on Attorney's Fees, ECF No. 8350
370. Co-Lead Class Counsel's Response to "Respectful Request" to Appoint the Magistrate Judge to Determine Allocation of Common Benefit Fund, ECF No. 8354
371. Reply to Co-Lead Class Counsel's Response to "Respectful Request" to Appoint the Magistrate Judge to Determine Allocation of Common Benefit Fund, ECF No. 8364
372. Plaintiffs' Attorney Meeting of the NFL Brain Injury Litigation MDL, ECF No. 8364-1
373. Order for a Detailed Submission on Lawyers' Fees, ECF No. 8367
374. Co-Lead Class Counsel's Notice to the Court Regarding Retaining William Rubenstein as Advisor to Plaintiff's Steering Commitee, ECF No. 8372
375. Order, ECF No. 8376
376. First Supplement in Support of the Alexander Objector's Objections to and in Opposition to Co-Lead Class Counsel's Petition for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, Adoption of a Set-Aside of Each Monetary Award and Derivative Claimant Award, and Case Contribution Awards to Class Representatives, ECF No. 8395
377. Memorandum of Law of the National Football League and NFL Properties LLC in Opposition to Settlement Class Member Yvonne Sagapolutele's Motion to Modify the Amended Final Order and Judgment, ECF No. 8430
378. Statement of co-Lead Class Counsel in Support of the Opposition by the NFL Parties to Settlement Class Member Yvonne Sagapolutele's Motion to Modify the Amended Final Order and Judgement, ECF No. 8431
379. Opposition of Co-Lead Class Counsel, the National Football League and NFL Properties LLC to the Motion of Xilaw to Determine Proper Administration of Claims Under the Settlement Agreement, ECF No. 8432
380. Declaration of Orran L. Brown, Sr. , ECF No. 8432-1
381. Declaration of David E. Smith, ECF No. 8432-2
382. Co-Lead Class Counsel's Memorandum in Opposition to Motion of Case Strategies Group (F/K/A NFL Case Consulting, LLC), It Strategies Group, Craig Sienema, James McCabe, Liberty Settlement Solutions, LLC, Liberty Contingent Receivables, LLC, Liberty Settlement Funding, JMMHCS Holdings, LLC., and Marc Hermes to Certify Questions for Immediate Appeal and for Stay, ECF No. 8433
383. Co-Lead Class Counsel's Memorandum of Law on the Question Referred to this Court by the United States District Court for the Southern District of New York in Consumer Financial Protection Bureau v. RD Legal Funding, LLC, No. 1:17-CV-00890 (LAP)(S.D.N.Y.), ECF No. 8434
384. Memorandum of RD Legal Funding, LLC, RD Legal Finance, LLC, RD Legal Funding Partners, LP, and Roni Dersovitz Re; The Assignment of Settlement Proceeds, ECF No. 8435

385. Memorandum of Law of the Consumer Financial Protection Bureau and the People of the State of New York on Whether the NFL Concussion Litigation Settlement Agreement Forbids Assignments of Settlement Benefits, ECF No. 8438

386. Co-Lead Class Counsel's Consolidated Memorandum (1) In opposition to the Alexander Objectors' Motion to Compel Compliance with CMO5, and (2) In Response to Their Latest Unauthorized Post-Briefing Supplementation of Their Objections to the Common Benefit Fee Petition, ECF No. 8440

387. Declaration of Orran L. Brown, Sr., ECF No. 8440-1

388. Reply in Support of Class Member Yvonne Sagapolutele's Motion to Modify the Amended Final Order and Judgement [ECF 8263], ECF No. 8442

389. Movant Retired NFL Players Represented by Xilaw's Reply to the Opposition of Co-Lead Class Counsel, The National Football League and NFL Properties LLC to Their Motion to Determine Proper Administration of Claims Under the Settlement Agreement, ECF No. 8444

390. Reply in Support of Motion of Nonparties Case Strategies Group, It Strategies Group, Craig Sienema, James McCabe, Liberty Settlement Solutions, LLC, Liberty Contingent Receivables, LLC, Liberty Settlement Funding, JMMHCS Holdings, LLC, and Marc Hermes to Certify Questions for Immediate appeal and for Stay, ECF No. 8446

391. Declaration of Christopher A. Seeger in Support of Proposed Allocation of Common Benefit Attorneys' Fees, Payment of Common Benefit Expenses, and Payment of Case Contribution Awards to Class Representatives, ECF No. 8447

392. Exhibit to Declaration of Christopher A. Seeger in Support of Proposed Allocation, ECF No. 8447-1

393. Declaration of Brain T. Fitzpatrick, ECF No. 8447-2

394. Order, ECF No. 8448

395. The Alexander Objector's Consolidated Reply to Co-Lead Class Counsel's Response to their Motion to Compel Compliance with CMO5 and their Supplemental Objection to Co-Lead Class Counsel's Fee Petition, ECF No. 8449

396. Motion to for Leave to File Corrected Reply in Place of Filed On October 5, 2017 [ECF No. 8444] and Motion for Enlargement of Time, ECF No. 8456

397. Co-Lead Class Counsel's Reply Memorandum of Law on the Question Referred to this Court by the United States District Court for the Southern District of New York in Consumer Financial Protection Bureau v. RD Legal Funding, LLC, No. 1:17-CV-00890 (LAP) (S.D.N.V) , ECF No. 8457

398. Consumer Financial Protection Bureau and the People of the State of New York's Reply to RD Legal Funding, LLC, Et Al.'s Memorandum on Assignments of Settlement Benefits, ECF No. 8458

399. Reply Memorandum of Law of RD Legal Funding, LLC, RD Legal Finance, LLC, RD Legal Funding Partners, LP, and Roni Dersovitz, Re: The Assignment of Settlement Proceeds, ECF No. 8459

400. Co-Lead Class Counsel's Motion to (1) Direct Claims Administrator to Withhold any Portions of Class Member Monetary Awards Purportedly Owed to Certain Third-Party Lenders and Claims Services Providers, and (2) Direct Disclosure to the Claims Administrator of Existence of Class Member Agreements with All Third Parties, ECF No. 8470

401. Co-Lead Class Counsel's Memorandum in Support of Motion to (1) Direct Claims Administrator to Withhold any Portions of Class Member Monetary Awards Purportedly Owed to Certain Third-Party Lenders and Claims Services Providers, and (2) Direct Disclosure to the Claims Administrator of Existence of Class Member Agreements with All Third Parties, ECF No. 8470-1

402. Declaration of Orran L. Brown, Sr., ECF No. 8470-2

403. Armstrong Objectors' Response to Class Counsel's Proposed Allocation of Common Benefit Attorney's Fees, Payment of Common Benefit Expenses, and Payment of Case Contribution Awards to Class Representatives, ECF No. 8532

404. Affidavit of Thomas V. Girardi, ECF No. 8556-2

405. Counter-Declaration of Jason E. Luckasevic in Response to the Declaration of Christopher A. Seeger in Support of Proposed Allocation of Common Benefit Attorneys' Fees, Payment of Common Benefit Expenses, and Payment of Case Contribution Awards to Class Representatives, ECF No. 8557

406. Declaration of David A. Rosen in Response to Co-Lead Class Counsel's Proposed Allocation of Common Benefit Attorneys' Fees, Payment of Common Benefit Expenses, and Payment of Case Contribution Awards to Class Representatives, ECF No. 8576

407. Counter Declaration of Craig R. Mitnick in Response to Co-Lead Class Counsel, Christopher Seeger's Declaration for the Allocation of an Award of Common Benefit Attorney's Fees and Reimbursement of Common Benefit Costs and Expenses, ECF No. 8653

408. Declaration of Bruce A. Hagen in Support of Hagen, Rosskopf & Earle's opposition to Christopher A. Seeger's Proposed Allocation of Common Benefit Attorneys' Fees, Payment of Common Benefit Expenses, and Payment of Case Contribution Awards to Class Representatives, ECF No. 8697

409. Co-Lead Class Counsel Anapol Weiss's Proposed Alternative Methodology for the Allocation of common Benefit Attorneys' Fees (ECF No. 8447), ECF No. 8701

410. Declaration of Gene Locks, Class Counsel, in Response to the Declaration of Christopher A. Seeger in Support of Proposed Allocation of Common Benefit Attorneys' Fees, Payment of Common Benefit Expenses, and Payment of Case Contribution Awards to Class Representatives, ECF No. 8709

411. NFL Defendants' Opposition to Seau Plaintiff's Motion for Extension of Page Limits (ECF No. 8465), ECF No. 8711

412. Counter-Declaration of Thomas V. Girardi in Response to the Declaration of Christopher A. Seeger in Support of Proposed Allocation of Common Benefit Attorneys' Fees, Payment of Common Benefit Expenses, and Payment of Case Contribution Awards to Class Representatives, ECF No. 8719

413. Declaration of Jason E. Lucasevic in Support of Co-Lead Class Counsel's Petition for an Award of Attorney's Fees and Reimbursement of Costs and Expenses, ECF No. 8719-1

414. Declaration of Anthony Tarricone, Esq. In Support of the Opposition to Co-Lead Counsel's Petition for an Award of Common Benefit Attorney's Fees, Reimbursement of Costs and Expenses, Adoption of a Set-Aside of Five Percent and Certain Incentive Awards, ECF No. 8720

415. Email Exchange, ECF No. 8720-1

416. Kreindler & Kreindler LLP Opposition to Co-Lead Counsel's Petition for an Award of Common Benefit Attorney's Fees, Reimbursement of Costs and Expenses, Adoption of a Set-Aside of Five Percent and Certain Incentive Awards filed October 10, 2017, ECF No. 8720-2

417. Declaration of Michael L. McGlamry Responding in Opposition to Christopher A. Seeger's Proposed Allocation of Common Benefit Attorneys' Fees, Payment of Common Benefit Expenses, and Payment of Case Contribution Awards to Class Representatives, ECF No. 8721

418. Counter-Declaration of Charles S. Zimmerman in Response to Proposed Allocation of Common Benefit Attorney's Fees Payment of Common Benefit Expenses, and Payment of Case Contribution Awards to Class Representatives, ECF No. 8722

419. Response to Declaration of Christopher A. Seeger in Support of Proposed Allocation of Common Benefit Attorney's Fees Payment of Common Benefit Expenses, and Payment of Case Contribution Awards to Class Representatives and Motion to Prioritize and Separate Vitally Needed Player Compensation Payments From Any and All Attorneys' Fees Awards or Requests and a Request that the Court Appoint a Special Master to Deal with and Determine the validity and Appropriate Amounts of Claimed Attorneys' Fees as to More Fully Assis the Court's Goal of Making Player Payments a Reality Rather than Unfulfilled Promises, ECF No. 8723

420. Declaration of Derriel C. McCorvey in Support of McCorvey Law, LLC's Opposition to Christopher A. Seeger's Proposed Allocation of Common Benefit Attorney's Fees, Payment of Common Benefit Expenses, and Payment of Case Contribution Awards to Class Representatives, ECF No. 8724

421. Declaration of Lance H. Lubel, ECF No. 8725

422. Faneca Objectors' Response to the Declaration of Christopher A. Seeger Proposing and Allocation of Common Benefit Attorneys' Fees and Expenses, ECF No. 8726

423. Counter-Declaration of James T. Capretz in Response to Proposed Allocation of Common Benefit Attorney's Fees, Payment of Common Benefit Expenses, and Payment of Case Contribution Awards to Class Representatives, ECF No. 8727

424. Declaration of Steven C. Marks In Response to Co-Lead Counsel's Proposed Allocation of Common Benefit Attorneys' Fees and Expenses, ECF No. 8728

425. Allen Retired Players Response Adopting and Joining the Yerrid Law Firm Response to Declaration of Chris Seeger and Motion to Prioritize [ECF No.8723], ECF No. 8729

426. Legacy Pro Sports, LLC and Brandon Siler's Response in Opposition to Co-Lead Class Counsel's Requested Relief in its Motion Filed on October 23, 2017, ECF No. 8825

427. Joint Status Report on the Implementation of the Settlement Program, ECF No. 8881

428. Declaration of Orran L. Brown, Sr. On Settlement Program Implementation After the Effective Date, ECF No. 8881-1

429. Declaration of Matthew L. Garretson, ECF No. 8881-2

430. Certificate of Service, ECF No. 8913

431. Co-Lead Class Counsel's Memorandum in Opposition to Neurocognitive Football Lawyers, PLLC's and the Yerrid Law Firm's "Motion to Prioritize", ECF No. 8914

432. Email Exchange, ECF No. 8916

433. Email Exchange, ECF No. 8917

434. Movant Retired NFL Players Motion for Reconsideration of Their Motion to Determine Proper Administration of Claims Under the Settlement Agreement [ECF No. 8267], ECF No. 8923

435. Notice, ECF No. 8930

436. Memorandum of Walker Preston Capital Holdings, LLC, in Support of its Motion to Intervene for the Limited Purpose of Opposing on Jurisdictional Grounds Co-Lead Class Counsel's Motion to (1) Direct Claims Administrator to Withhold Any Portions of Class Member Monetary Awards Purportedly Owed to Certain Third-Party Lenders and Claims Services Providers, and (2) Direct Disclosure to Claims Administrator of Existence of Class Member Agreements with All Third Parties (ECF No. 8470), ECF No. 8932-3

437. Response of Nonparty Case Strategies Group in Opposition to Co-Lead Class Counsel's Motion to (1) Direct claims Administrator to Withhold Any Portions of Class Member Monetary Awards Purportedly Owed to Certain Third-Party Lending and Claims Service Providers, and (2) Direct Disclosure to Claims Administrator of the Existence of Class Member Agreements with All Third Parties, ECF No. 8933

438. Omnibus Reply Declaration of Christopher A. Seeger as to Responses, Objections and Counter-Declarations to Proposed Allocation of Common Benefit Attorneys' Fees, Payment of Common Benefit Expenses, and Payment of Case Contribution Awards to Class Representatives, ECF No. 8934

439. Supplemental Declaration of Brian T. Fitzpatrick, ECF No. 8934-1

440. Sur-Reply Counter-Declaration of Jason E. Luckasevic in Response to Omnibus Declaration of Christopher A. Seeger in Support of Proposed Allocation of Common Benefit Attorneys' Fees, Payment of Common Benefit Expenses, and Payment of Case Contribution Awards to Class Representatives, ECF No. 8937-2

441. Non-Parties Preferred Capital Funding, Inc., Preferred Capital Funding-Nevada, LLC, Preferred Capital Funding-Missouri, LLC, Preferred Capital Funding-Ohio, LLC, and Brian Garelli's Motion for a Protective Order Regarding Co-Lead Class Counsel's Request for the Production of Documents and Interrogatories, ECF No. 8938

442. Memorandum of Peachtree Funding Northeast, LLC and Related Entities in Response to Co-Lead Class Counsel's Motion to (1) Direct Claims Administrator to Withhold any Portions of Class Member Monetary Awards Purportedly Owed to Certain Third-Party Lenders and Claims Services Providers, and (2) Direct Disclosure to the Claims Administrator of Existence of Class Member Agreements with All Third Parties, ECF No. 8939

443. Surreply Declaration of Michael L. McGlamry in Response to the Omnibus Reply Declaration of Christopher A. Seeger, ECF No. 8963-2

**B.     Case No. 2-11-cv-05209**

1. NFL's Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), ECF No. 19

2. Memorandum of Law in Support of the National Football League's Motion to Dismiss the Amended Complaint, ECF No. 19-1

3. Order, ECF No. 19-2

4. Declaration of Dennis L. Curran, ECF No. 19-3

**C.      Case No. 2-11-cv-08394**

    1.    Notice of Removal, ECF No. 1
    2.    Motion to Remand, ECF No. 21

**II.     Attorney Lien Filings, Case No. 2:12-md-02323**

| | | |
|---|---|---|
| 1. | 6518 | Pope McGlamry – Cosey Coleman |
| 2. | 6520 | Pope McGlamry – Kenneth Clarke |
| 3. | 6522 | Pope McGlamry – Leeland McElroy |
| 4. | 6524 | Pope McGlamry – Sean Love |
| 5. | 6704 | N/A – Mistake filing |
| 6. | 6743 | Pope McGlamry – Fred Banks |
| 7. | 6745 | Pope McGlamry – Arthur Cox |
| 8. | 6747 | Pope McGlamry – Aveion Cason |
| 9. | 6749 | Pope McGlamry – Jamie R. Duncan |
| 10. | 6778 | Bondurant, Mixson & Elmore, LLP – Kenneth Callicutt |
| 11. | 6780 | Bondurant, Mixson & Elmore, LLP – DeMarcus Curry |
| 12. | 6785 | Pope McGlamry – Anthony Blaylock |
| 13. | 6787 | Pope McGlamry – Alphonso Carreker |
| 14. | 6789 | Pope McGlamry – Major Everett |
| 15. | 6791 | Pope McGlamry – Major Everett |
| 16. | 6793 | Pope McGlamry –  Michael Nattiel |
| 17. | 6795 | Pope McGlamry – Christian Morton |
| 18. | 6801 | Pope McGlamry – Eric Hipple |
| 19. | 6804 | McCorvey Law, LLC et al. – Alexander Cooper |
| 20. | 6806 | McCorvey Law, LLC et al. – Chris Montaine Smith |
| 21. | 6808 | McCorvey Law, LLC et al. – Carl Simpson |
| 22. | 6810 | McCorvey Law, LLC et al. – George Seals |
| 23. | 6823 | McCorvey Law, LLC et al. – Carl Simpson |
| 24. | 6825 | McCorvey Law, LLC et al. – Alexander Cooper |
| 25. | 6827 | McCorvey Law, LLC et al. – Chris Montaine Smith |
| 26. | 6854 | Pope McGlamry – Damen Robinson |
| 27. | 6856 | Pope McGlamry E– d King |
| 28. | 6858 | Pope McGlamry – Adalius Thomas |
| 29. | 6921 | Pope McGlamry – Ronney Daniels |
| 30. | 6925 | Pope McGlamry – Lenzie Jackson |
| 31. | 6927 | Pope McGlamry – Honor Jackson, Jr. |
| 32. | 6929 | Pope McGlamry – Dwight Johnson |
| 33. | 6931 | Pope McGlamry – Garrison Hearst |
| 34. | 6941 | Zimmerman Reed LLP – Ronald Acks |
| 35. | 6942 | Zimmerman Reed LLP – Steven Baumgartner |
| 36. | 6943 | Zimmerman Reed LLP – Bobby Bell |
| 37. | 6944 | Zimmerman Reed LLP – Michael Butler |
| 38. | 6946 | Zimmerman Reed LLP – W. Pat Carter |

| | | |
|---|---|---|
| 39. | 6947 | Zimmerman Reed LLP – Clifford Charlton |
| 40. | 6948 | Zimmerman Reed LLP – Michael Clark |
| 41. | 6949 | Zimmerman Reed LLP – Curly Culp |
| 42. | 6951 | Zimmerman Reed LLP – George Cumby |
| 43. | 6953 | Zimmerman Reed LLP – Derrick Deese |
| 44. | 6954 | Zimmerman Reed LLP – Chris Dieterich |
| 45. | 6956 | Zimmerman Reed LLP – Titus Dixon |
| 46. | 6958 | Zimmerman Reed LLP – Hart Lee Dykes |
| 47. | 6960 | Zimmerman Reed LLP – Ronald Egloff |
| 48. | 6962 | Zimmerman Reed LLP – Ricky Feacher |
| 49. | 6963 | Zimmerman Reed LLP – Kenneth Greene |
| 50. | 6964 | Zimmerman Reed LLP – Mark Higgs |
| 51. | 6965 | Zimmerman Reed LLP – Leander Jordan |
| 52. | 6966 | Zimmerman Reed LLP – Gary Lewis |
| 53. | 6967 | Zimmerman Reed LLP – Anthony Liscio |
| 54. | 6968 | Zimmerman Reed LLP – William Lueck |
| 55. | 6969 | Zimmerman Reed LLP – Ernie Mills |
| 56. | 6971 | Zimmerman Reed LLP – Billy Milner |
| 57. | 6972 | Zimmerman Reed LLP – Larry Craig Morton |
| 58. | 6974 | Zimmerman Reed LLP – Elston Ridgle |
| 59. | 6975 | Zimmerman Reed LLP – Jim Rourke |
| 60. | 6977 | Zimmerman Reed LLP – Reggie Swinton |
| 61. | 6978 | Zimmerman Reed LLP – Myron Taliaferro |
| 62. | 6980 | Zimmerman Reed LLP – Anthony Thompson |
| 63. | 6981 | Zimmerman Reed LLP – Stuart Voigt |
| 64. | 6982 | Zimmerman Reed LLP – Wayne Walker |
| 65. | 6983 | Zimmerman Reed LLP – Keith Washington |
| 66. | 6985 | Zimmerman Reed LLP – Donald Westbrook, Jr. |
| 67. | 6987 | Zimmerman Reed LLP – Donnell Woolford |
| 68. | 6989 | Law Office of Wayne E. Ferrell, Jr., et al. –Glen Collins |
| 69. | 7034 | Pope McGlamry – Robert Chancey |
| 70. | 7036 | Pope McGlamry – Hayward Clay |
| 71. | 7038 | Pope McGlamry – Zachary Piller |
| 72. | 7040 | Pope McGlamry – Reginald Bernard Slack |
| 73. | 7042 | Pope McGlamry – Charles Smith |
| 74. | 7044 | Pope McGlamry – Joseph Brian Johnson |
| 75. | 7046 | Pope McGlamry – David Rocker |
| 76. | 7048 | Pope McGlamry – Johnny Rutledge |
| 77. | 7050 | Pope McGlamry – Reggie Brown |
| 78. | 7052 | Pope McGlamry – Wendell H. Davis |
| 79. | 7054 | Pope McGlamry – Vidal Carlin |
| 80. | 7056 | Pope McGlamry – Billy Thurman Jackson – |
| 81. | 7061 | McCorvey Law, LLC – Reginald Freeman |
| 82. | 7064 | Podhurst Orseck, P.A. – Albert Connell |
| 83. | 7064 | Podhurst Orseck, P.A. – Ben Coates |
| 84. | 7064 | Podhurst Orseck, P.A. – Bernard Whittington |

| | | |
|---|---|---|
| 85. | 7064 | Podhurst Orseck, P.A. – Carlton Bailey–Jones |
| 86. | 7064 | Podhurst Orseck, P.A. – Charles Frye |
| 87. | 7064 | Podhurst Orseck, P.A. – Charlie Garner, III |
| 88. | 7064 | Podhurst Orseck, P.A. – Freddie Lee Solomon, Jr. |
| 89. | 7064 | Podhurst Orseck, P.A. – Frederick Beasley |
| 90. | 7064 | Podhurst Orseck, P.A. – Joseph Odom |
| 91. | 7064 | Podhurst Orseck, P.A. – Larry Bowie |
| 92. | 7064 | Podhurst Orseck, P.A. – Michael Wiley |
| 93. | 7064 | Podhurst Orseck, P.A. – Mike Arthur |
| 94. | 7064 | Podhurst Orseck, P.A. – Omar Stoutmire |
| 95. | 7064 | Podhurst Orseck, P.A. – Reginald Myles |
| 96. | 7064 | Podhurst Orseck, P.A. – Walter Williams |
| 97. | 7064 | Podhurst Orseck, P.A.– Taveres T.J. Slaughter |
| 98. | 7064 | Podhurst Orseck, P.A.– Demetric Evans |
| 99. | 7064 | Podhurst Orseck, P.A.– Jesse Chatman |
| 100. | 7064 | Podhurst Orseck, P.A.– Joseph Jefferson |
| 101. | 7064 | Podhurst Orseck, P.A. – Rodney Bailey |
| 102. | 7064 | Podhurst Orseck, P.A. – Barron Tanner |
| 103. | 7064 | Podhurst Orseck, P.A. – Scott Tinsley |
| 104. | 7064 | Podhurst Orseck, P.A. – Adam Schreiber |
| 105. | 7064 | Podhurst Orseck, P.A. – Anthony G. Griggs |
| 106. | 7064 | Podhurst Orseck, P.A.– Anthony McCoy |
| 107. | 7064 | Podhurst Orseck, P.A.– Anthony Sherrod Davis |
| 108. | 7064 | Podhurst Orseck, P.A.– Armegis Spearman |
| 109. | 7064 | Podhurst Orseck, P.A.– Ben Coleman |
| 110. | 7064 | Podhurst Orseck, P.A.– Bobby J. Hamilton |
| 111. | 7064 | Podhurst Orseck, P.A.– Brandon Haw |
| 112. | 7064 | Podhurst Orseck, P.A.– Bruce Thornton |
| 113. | 7064 | Podhurst Orseck, P.A.– Chartric Chuck Darby |
| 114. | 7064 | Podhurst Orseck, P.A.– Darryl Ashmore |
| 115. | 7064 | Podhurst Orseck, P.A.– Daryl Porter |
| 116. | 7064 | Podhurst Orseck, P.A.– David Ball |
| 117. | 7064 | Podhurst Orseck, P.A.– Derek H. Ross |
| 118. | 7064 | Podhurst Orseck, P.A.– Donny Brady |
| 119. | 7064 | Podhurst Orseck, P.A.– Douges E. Evans |
| 120. | 7064 | Podhurst Orseck, P.A.– Earl Little |
| 121. | 7064 | Podhurst Orseck, P.A.– Ed–die Boo Williams |
| 122. | 7064 | Podhurst Orseck, P.A.– Edwin Mulitalo |
| 123. | 7064 | Podhurst Orseck, P.A.– Elijah Williams |
| 124. | 7064 | Podhurst Orseck, P.A. – Fred Weary |
| 125. | 7064 | Podhurst Orseck, P.A. – Gregory Favors |
| 126. | 7064 | Podhurst Orseck, P.A. – Jacoby Rhinehart |
| 127. | 7064 | Podhurst Orseck, P.A. – Jamal Robertson |
| 128. | 7064 | Podhurst Orseck, P.A. – Jay Jamal Foreman |
| 129. | 7064 | Podhurst Orseck, P.A. – Jeff Herrod |
| 130. | 7064 | Podhurst Orseck, P.A. – Kelvin Harris |

131.  7064  Podhurst Orseck, P.A. – Ken Dilger
132.  7064  Podhurst Orseck, P.A. – Kevan Barlow
133.  7064  Podhurst Orseck, P.A. – Kyle Turley
134.  7064  Podhurst Orseck, P.A. – Leon Searcy
135.  7064  Podhurst Orseck, P.A. – Marcellus Rivers
136.  7064  Podhurst Orseck, P.A. – Marques McFadden
137.  7064  Podhurst Orseck, P.A. – Maurice A. Morris
138.  7064  Podhurst Orseck, P.A. – Max Lane
139.  7064  Podhurst Orseck, P.A. – Michael Downs
140.  7064  Podhurst Orseck, P.A. – Paris Johnson
141.  7064  Podhurst Orseck, P.A. – Rafael Cooper Webster
142.  7064  Podhurst Orseck, P.A. – Ralph Pete Hunter
143.  7064  Podhurst Orseck, P.A. – Randy Fuller
144.  7064  Podhurst Orseck, P.A. – Robert Harris
145.  7064  Podhurst Orseck, P.A. – Robert Kratch
146.  7064  Podhurst Orseck, P.A. – Ronald Humphrey
147.  7064  Podhurst Orseck, P.A. – Sean Hill
148.  7064  Podhurst Orseck, P.A. – Steve Smith
149.  7064  Podhurst Orseck, P.A. – Thomas Tapeh
150.  7064  Podhurst Orseck, P.A. – Tommy Barnhardt
151.  7064  Podhurst Orseck, P.A. – Torrance Marshall
152.  7064  Podhurst Orseck, P.A. – Torrin L. Tucker
153.  7064  Podhurst Orseck, P.A. – Tracy Scroggins
154.  7064  Podhurst Orseck, P.A. – Tyrone Rogers
155.  7064  Podhurst Orseck, P.A. – Tyson Thompson
156.  7064  Podhurst Orseck, P.A. – Willie Blade
157.  7065  Pope McGlamry – Robert J. Williams
158.  7081  John D. Giddens P.A. et al. – Perry Lee Dunn
159.  7088  John D. Giddens P.A. et al. – John Di'Giorgio
160.  7091  John D. Giddens P.A. et al. – Kenneth Burrough
161.  7092  John D. Giddens P.A. et al. – Perry Lee Dunn
162.  7094  John D. Giddens P.A. et al. – Perry Lee Dunn
163.  7123  Rose Law Group, pc –David Atkins
164.  7125  Rose Law Group, pc – Demetric Evans
165.  7127  Rose Law Group, pc – Andre Hastings
166.  7129  Rose Law Group, pc –David Johnson
167.  7131  Rose Law Group, pc – Mark Walczak
168.  7133  Zimmerman Reed LLP – Lawrence Sampleton, Jr.
169.  7135  Zimmerman Reed LLP – Orson Mobley
170.  7137  Zimmerman Reed LLP – Kenyon Rasheed
171.  7139  Zimmerman Reed LLP – Judson Flint
172.  7141  Zimmerman Reed LLP – Timothy L. Smyth
173.  7143  Zimmerman Reed LLP – Lance Brown
174.  7145  Zimmerman Reed LLP – Conrad Goode
175.  7147  Zimmerman Reed LLP – Vashone Adams
176.  7152  Rose Law Group, pc – Chris Dugan

| 177. | 7156 | John D. Giddens P.A. et al. – Chris Sanders |
| 178. | 7159 | John D. Giddens P.A. et al. – Gerald Loper |
| 179. | 7164 | John D. Giddens P.A. et al. – Tobiath Myles |
| 180. | 7167 | John D. Giddens P.A. et al. – Willie Harper |
| 181. | 7170 | John D. Giddens P.A. et al. – Patrick Chukwurag |
| 182. | 7173 | John D. Giddens P.A. et al. – Enoch Demar |
| 183. | 7181 | John D. Giddens P.A. et al. – Jeffrey Thomason |
| 184. | 7184 | John D. Giddens P.A. – Leon Seals |
| 185. | 7186 | Pope McGlamry – Victor Green |
| 186. | 7188 | Pope McGlamry – Keldrick Dunn |
| 187. | 7190 | Pope McGlamry – Ken Woodard |
| 188. | 7192 | Pope McGlamry – Todd Weiner |
| 189. | 7194 | Pope McGlamry – Joe Walker |
| 190. | 7196 | Pope McGlamry – Melvin Bratton |
| 191. | 7198 | Pope McGlamry – Jacob Forb |
| 192. | 7200 | Pope McGlamry – James Whitley |
| 193. | 7202 | Pope McGlamry – Nathan Pierce |
| 194. | 7207 | McCorvey Law, LLC – Sylvester Stamps |
| 195. | 7209 | McCorvey Law, LLC – Willie Jackson |
| 196. | 7211 | McCorvey Law, LLC – Henry Dyer |
| 197. | 7213 | McCorvey Law, LLC – Dexter Carter |
| 198. | 7215 | McCorvey Law, LLC – Kendel Shello |
| 199. | 7217 | McCorvey Law, LLC – Reginald Nelson |
| 200. | 7219 | McCorvey Law, LLC – Gabe Northern |
| 201. | 7221 | McCorvey Law, LLC – LeShon Johnson |
| 202. | 7223 | McCorvey Law, LLC – Herman Fontenot |
| 203. | 7225 | McCorvey Law, LLC – Shawn King |
| 204. | 7235 | John D. Giddens P.A. et al. – Erik Williams |
| 205. | 7242 | John D. Giddens P.A. et al. – Mark Smith |
| 206. | 7247 | Pope McGlamry – Jamie Nails |
| 207. | 7249 | Pope McGlamry – Elliott Fortune |
| 208. | 7251 | Pope McGlamry – Michael Bennett |
| 209. | 7253 | Pope McGlamry – Dana McLemore |
| 210. | 7255 | Pope McGlamry – Andy Parker |
| 211. | 7257 | Pope McGlamry – Verron Haynes |
| 212. | 7266 | Zimmerman Reed LLP – Rickey Dixon |
| 213. | 7269 | Zimmerman Reed LLP–Floyd Turner, Jr. |
| 214. | 7271 | Zimmerman Reed LLP–Selwyn Jones |
| 215. | 7273 | Zimmerman Reed LLP–Robert Jackson, Jr. |
| 216. | 7275 | Zimmerman Reed LLP–Jeffery Jackson |
| 217. | 7278 | Zimmerman Reed LLP–David Casper |
| 218. | 7280 | Zimmerman Reed LLP–Tony Casillas |
| 219. | 7284 | John D. Giddens P.A.et al. –Clifton Crosby |
| 220. | 7291 | John D. Giddens P.A.et al. –Richard Bielski |
| 221. | 7304 | John D. Giddens P.A.et al. –Ollie Smith |
| 222. | 7311 | John D. Giddens P.A.et al. –Patrick Thomas |

223.  7322   John D. Giddens P.A.et al. Chad Fann
224.  7327   Pope McGlamry–Jevon Langford
225.  7329   Pope McGlamry–Calvin Miller
226.  7331   Pope McGlamry–Gerald Willhite
227.  7333   Pope McGlamry–James Runnels, Jr.
228.  7335   Pope McGlamry–Karon Riley
229.  7337   Pope McGlamry–Antonio Langham
230.  7377   David Buckley, PLLC et al. –Kenneth Davis
231.  7379   David Buckley, PLLC et al. –LaDairis Jackson
232.  7381   David Buckley, PLLC et al. –Keith Joseph
233.  7384   David Buckley, PLLC et al. –Kareem Kelly
234.  7386   David Buckley, PLLC et al. –Sultan McCullough
235.  7388   David Buckley, PLLC et al. –David Mims
236.  7390   David Buckley, PLLC et al. –Alvin Harper
237.  7392   David Buckley, PLLC et al. –Jerry Moses
238.  7394   David Buckley, PLLC et al. –Shawntae Spencer
239.  7396   David Buckley, PLLC et al. –Christopher White
240.  7398   David Buckley, PLLC et al. –Spergon Wynn
241.  7410   Hausfeld LLP   – RC Owens
242.  7411   Hausfeld LLP   – Dennis Harrah
243.  7412   Hausfeld LLP   – Tyrone Young
244.  7413   Hausfeld LLP   – Darrell Irvin
245.  7414   Hausfeld LLP   – Allan Clark
246.  7415   Pope McGlamry –Sedrick Irvin
247.  7422   Smith & Stallworth, P.A. – Christopher Ward
248.  7423   Smith & Stallworth, P.A. –James B. Pruitt
249.  7424   Smith & Stallworth, P.A. –Reginald Myles
250.  7425   Smith & Stallworth, P.A. – Keith Henderson
251.  7426   Smith & Stallworth, P.A. – David Williams
252.  7427   Smith & Stallworth, P.A. – Alonzo Ephriam
253.  7428   Smith & Stallworth, P.A. – Tony George
254.  7429   David Buckley, PLLC et al. –Chris Kemoeatu
255.  7431   David Buckley, PLLC et al. –Ma'ake Kemoeatu
256.  7433   David Buckley, PLLC et al. –Drew Coleman
257.  7435   David Buckley, PLLC et al. –Vernest Ray Alexander
258.  7441   Smith & Stallworth, P.A. –Tyrone Young
259.  7442   Smith & Stallworth, P.A. –Tony George
260.  7447   Smith & Stallworth, P.A. –Lorenzo Hampton
261.  7450   Cummings, McClorey, Davis & Acho, P.L.C. –Levi Johnson
262.  7455   Pope McGlamry –Jeffery Bryent
263.  7461   Pope McGlamry –Thomas McHale
264.  7466   Provost Umphrey Law Firm, L.L.P. –Scott Kellar
265.  7467   Provost Umphrey Law Firm, L.L.P. –LeRoy Irvin, Jr.
266.  7468   Provost Umphrey Law Firm, L.L.P. –Reginald Doss
267.  7483   Goldberg, Persky & White, P.C. –Kevin Devine
268.  7484   Goldberg, Persky & White, P.C. –Robert C. Butler

**A-27**

| | | |
|---|---|---|
| 269. | 7485 | Goldberg, Persky & White, P.C. –Stacy Dillard |
| 270. | 7486 | Goldberg, Persky & White, P.C. –Lloyd Harrison |
| 271. | 7487 | Goldberg, Persky & White, P.C. –Delvic Philyaw |
| 272. | 7490 | Pope McGlamry –Gerald Perry, Sr. |
| 273. | 7494 | Farrise Law Firm, P.C. –Vernest Ray Alexander |
| 274. | 7495 | Farrise Law Firm, P.C. –Abdul Karim Al–Jabbar |
| 275. | 7496 | Farrise Law Firm, P.C. –Aaron Bailey |
| 276. | 7497 | Farrise Law Firm, P.C. –Mario Bailey |
| 277. | 7498 | Farrise Law Firm, P.C. –John Bellamy |
| 278. | 7499 | Farrise Law Firm, P.C. –Andre Brown |
| 279. | 7500 | Farrise Law Firm, P.C. – Hillary Butler |
| 280. | 7501 | Farrise Law Firm, P.C. – Byron Chamberlain |
| 281. | 7502 | Farrise Law Firm, P.C. – Jess[]e Chatman |
| 282. | 7503 | Farrise Law Firm, P.C. – Shannon Clavelle |
| 283. | 7504 | Farrise Law Firm, P.C. – Ronney Daniels |
| 284. | 7505 | Farrise Law Firm, P.C. – Kirby Dar Dar |
| 285. | 7506 | Farrise Law Firm, P.C. – Dale Dawkins |
| 286. | 7507 | Farrise Law Firm, P.C. – Tyronne Drakeford |
| 287. | 7508 | Farrise Law Firm, P.C. – Joe Fishback |
| 288. | 7509 | Farrise Law Firm, P.C. – Cory Fleming |
| 289. | 7510 | Farrise Law Firm, P.C. – Dion Foxx |
| 290. | 7511 | Farrise Law Firm, P.C. – Willie Gault |
| 291. | 7512 | Farrise Law Firm, P.C. – Dwayne Goodrich |
| 292. | 7513 | Farrise Law Firm, P.C. – Alvin Harper |
| 293. | 7514 | Farrise Law Firm, P.C. – Corey Harris |
| 294. | 7515 | Farrise Law Firm, P.C. – Travis Henry |
| 295. | 7516 | Farrise Law Firm, P.C. – Clayton Holmes |
| 296. | 7517 | Farrise Law Firm, P.C. – Darick Holmes |
| 297. | 7518 | Farrise Law Firm, P.C. – James Hundon |
| 298. | 7519 | Farrise Law Firm, P.C. – Lenzie Jackson |
| 299. | 7520 | Farrise Law Firm, P.C. – Joseph Jefferson |
| 300. | 7521 | Farrise Law Firm, P.C. – Eric Johnson |
| 301. | 7522 | Farrise Law Firm, P.C. – Vernon Joines |
| 302. | 7523 | Farrise Law Firm, P.C. – Brian Jones |
| 303. | 7526 | Goldberg, Persky & White, P.C. – Bobby E. Abrams, Jr. |
| 304. | 7528 | Wagstaff & Cartmell, LLP – Miguel Flores |
| 305. | 7529 | Wagstaff & Cartmell, LLP – Michael Green |
| 306. | 7535 | Farrise Law Firm, P.C. – Michael Jones |
| 307. | 7536 | Farrise Law Firm, P.C. – Lamont Jordan |
| 308. | 7537 | Farrise Law Firm, P.C. – Todd Kelly |
| 309. | 7538 | Farrise Law Firm, P.C. – Joseph Kent |
| 310. | 7539 | Farrise Law Firm, P.C. – Shawn King |
| 311. | 7540 | Farrise Law Firm, P.C. – Clarence Love |
| 312. | 7541 | Farrise Law Firm, P.C. – Kevin Loville |
| 313. | 7542 | Farrise Law Firm, P.C. – Anthony Marshall |
| 314. | 7543 | Farrise Law Firm, P.C. – Terry Mickens |

| | | |
|---|---|---|
| 315. | 7544 | Goldberg, Persky & White, P.C. – Stacey Bailey |
| 316. | 7545 | Goldberg, Persky & White, P.C. – Rodney Bailey |
| 317. | 7546 | Goldberg, Persky & White, P.C. – Stefon Adams |
| 318. | 7551 | Goldberg, Persky & White, P.C. – Carl Bland |
| 319. | 7552 | Goldberg, Persky & White, P.C. – Brian Blades |
| 320. | 7553 | Goldberg, Persky & White, P.C. – Keith Bostic |
| 321. | 7554 | Goldberg, Persky & White, P.C. – Horatio Blades |
| 322. | 7558 | Goldberg, Persky & White, P.C. – Marty Carter |
| 323. | 7559 | Goldberg, Persky & White, P.C. – Reginald Brown |
| 324. | 7560 | Goldberg, Persky & White, P.C. – Raymond Clayborn |
| 325. | 7562 | Goldberg, Persky & White, P.C. – Matthew Dorsett |
| 326. | 7563 | Goldberg, Persky & White, P.C. – Kenneth Davidson |
| 327. | 7564 | Goldberg, Persky & White, P.C. – Gary Dandridge |
| 328. | 7565 | Goldberg, Persky & White, P.C. – Harvey Clayton |
| 329. | 7566 | David Buckley, PLLC – Chris M. Johnson |
| 330. | 7568 | David Buckley, PLLC – Kenneth Davis |
| 331. | 7569 | David Buckley, PLLC – Alvin Harper |
| 332. | 7570 | David Buckley, PLLC – LaDairis Jackson |
| 333. | 7572 | David Buckley, PLLC – Keith Joseph |
| 334. | 7574 | David Buckley, PLLC – Chris Kemoeatu |
| 335. | 7576 | David Buckley, PLLC – David Mims |
| 336. | 7577 | David Buckley, PLLC – Jerry Moses |
| 337. | 7579 | David Buckley, PLLC – Christopher White |
| 338. | 7581 | Farrise Law Firm, P.C. – Stanley Pritchett |
| 339. | 7582 | Farrise Law Firm, P.C. – David Richie |
| 340. | 7583 | Farrise Law Firm, P.C. – John Ro[d]gers |
| 341. | 7584 | Farrise Law Firm, P.C. – Sammie Lee Rogers |
| 342. | 7586 | Farrise Law Firm, P.C. – Irving Spikes |
| 343. | 7587 | Farrise Law Firm, P.C. – Travis Stephens |
| 344. | 7588 | Farrise Law Firm, P.C. – Lemuel Stinson |
| 345. | 7589 | Farrise Law Firm, P.C. – Barron Tanner |
| 346. | 7590 | Farrise Law Firm, P.C. – Gregory Townsend |
| 347. | 7591 | Farrise Law Firm, P.C. – Lamont Warren |
| 348. | 7592 | Farrise Law Firm, P.C. – Erik Williams |
| 349. | 7593 | Farrise Law Firm, P.C. – Scott Tinsley |
| 350. | 7598 | Goldberg, Persky & White, P.C. – Antonio Gibson |
| 351. | 7599 | Goldberg, Persky & White, P.C. – Percell Gaskins |
| 352. | 7600 | Goldberg, Persky & White, P.C. – Keith Ferguson |
| 353. | 7601 | Goldberg, Persky & White, P.C. – Gregory Evans |
| 354. | 7602 | Goldberg, Persky & White, P.C. – Talman Gardner |
| 355. | 7609 | Farrise Law Firm, P.C. – Derrick Rodgers |
| 356. | 7610 | Farrise Law Firm, P.C. – James H. Brown |
| 357. | 7611 | Farrise Law Firm, P.C. – James B. Pruitt |
| 358. | 7612 | Farrise Law Firm, P.C. – Derrick Fenner |
| 359. | 7613 | Farrise Law Firm, P.C. – Carl Pickens |
| 360. | 7614 | Farrise Law Firm, P.C. – Mike Sherrard |

| | | |
|---|---|---|
| 361. | 7616 | Pope McGlamry – Karsten Bailey |
| 362. | 7618 | Pope McGlamry – Joe Burns |
| 363. | 7620 | Farrise Law Firm, P.C. – Dameane Douglas |
| 364. | 7631 | John D. Giddens P.A. – Clarence Love |
| 365. | 7634 | John D. Giddens P.A. – Duval Love |
| 366. | 7638 | John D. Giddens P.A – David Boston |
| 367. | 7641 | John D. Giddens P.A. – Jocelyn Borgella |
| 368. | 7644 | John D. Giddens P.A. – Dermontti Dawson |
| 369. | 7647 | John D. Giddens P.A. – Ronald Dixon |
| 370. | 7650 | John D. Giddens P.A. – Marcus Dupree |
| 371. | 7653 | John D. Giddens P.A. – Tommie Funchess |
| 372. | 7656 | John D. Giddens P.A. – Winfield Garnett, III |
| 373. | 7659 | John D. Giddens P.A. – DeLawrence Grant, Jr. |
| 374. | 7662 | John D. Giddens P.A. – Van Jakes |
| 375. | 7665 | John D. Giddens P.A. – Jimmie Kennedy |
| 376. | 7668 | John D. Giddens P.A. – Stacey Mack |
| 377. | 7671 | John D. Giddens P.A. – Dexter McCleon |
| 378. | 7675 | John D. Giddens P.A. – Audray McMillian |
| 379. | 7678 | John D. Giddens P.A. – Jeff Moore |
| 380. | 7681 | John D. Giddens P.A. – Lloyd Mumphord |
| 381. | 7685 | John D. Giddens P.A. – Elex Price, Sr. |
| 382. | 7688 | John D. Giddens P.A. – Archie Reese |
| 383. | 7690 | John D. Giddens P.A. – Dwayne Rudd |
| 384. | 7693 | John D. Giddens P.A. – Taveres T.J. Slaughter |
| 385. | 7696 | John D. Giddens P.A. – Rayna Stewart |
| 386. | 7698 | John D. Giddens P.A. – Timothy Walton |
| 387. | 7701 | John D. Giddens P.A. – Sammy Williams |
| 388. | 7704 | John D. Giddens P.A. – Maury Youmans |
| 389. | 7717 | John D. Giddens P.A. – LeMar Parrish |
| 390. | 7720 | John D. Giddens P.A. – John Sanders |
| 391. | 7723 | John D. Giddens P.A. – Jonathan Staggers |
| 392. | 7726 | John D. Giddens P.A. – David Windham |
| 393. | 7729 | John D. Giddens P.A. – Michael Blazitz |
| 394. | 7732 | John D. Giddens P.A. – Doug Chapman |
| 395. | 7735 | Pope McGlamry – Robert E. Johnson, Jr. |
| 396. | 7741 | John D. Giddens P.A. – Frank Middleton |
| 397. | 7743 | John D. Giddens P.A. – Victor Hobson |
| 398. | 7746 | John D. Giddens P.A. – Brian Holloway |
| 399. | 7749 | John D. Giddens P.A. – Gerald E. Jackson |
| 400. | 7752 | John D. Giddens P.A. – Joe Johnson |
| 401. | 7755 | John D. Giddens P.A. – Tony Nathan |
| 402. | 7758 | John D. Giddens P.A. – Tori Noel |
| 403. | 7766 | Neurocognitive Football Lawyers, PLLC – Adam Schreiber |
| 404. | 7770 | Pope McGlamry – Randall Godfrey |
| 405. | 7773 | Goldberg, Persky & White, P.C. – Reginald Gipson |
| 406. | 7774 | Goldberg, Persky & White, P.C. – Cornell Gowdy |

407.  7775  Goldberg, Persky & White, P.C. – Lorenzo Hampton
408.  7778  Farrise Law Firm, P.C. – Ulys Thompson
409.  7781  Smith & Stallworth, P.A. – Basil Proctor
410.  7783  John D. Giddens P.A. – Glenn Derby
411.  7786  John D. Giddens P.A. – Paul Ernster
412.  7789  John D. Giddens P.A. – Todd McArthur
413.  7792  John D. Giddens P.A. – John Niland
414.  7794  John D. Giddens P.A. – Jethro Pugh, Jr.
415.  7797  John D. Giddens P.A. – David Recher
416.  7826  Edward Stone Law P.C. – Eric Curry
417.  7828  Dugan Law Firm, APLC – Warren Capone
418.  7829  Dugan Law Firm, APLC – David Gagnon
419.  7831  John D. Giddens P.A. – Destry Wright
420.  7835  John D. Giddens P.A. – Ricky Patton
421.  7838  Provost Umphrey Law Firm, L.L.P. – Steve Warren
422.  7841  John D. Giddens P.A. – Steve Gage
423.  7854  Dugan Law Firm, APLC – Michael Bell
424.  7855  Dugan Law Firm, APLC – Thomas Clapp
425.  7856  Dugan Law Firm, APLC – Keaton Cromartie
426.  7857  Dugan Law Firm, APLC – Jacob Cutrera
427.  7858  Dugan Law Firm, APLC – James Gueno
428.  7859  Mokaram & Associates, PC – Upton Williams
429.  7860  Mokaram & Associates, PC – Connell Spain
430.  7861  Mokaram & Associates, PC – Kevin Smith
431.  7862  Mokaram & Associates, PC – Kelvin Smith
432.  7863  Mokaram & Associates, PC – Michael Hicks
433.  7864  Mokaram & Associates, PC – Romby Bryant
434.  7865  Mokaram & Associates, PC – Spergon Wynn
435.  7866  Mokaram & Associates, PC – Shawntae Spencer
436.  7867  Mokaram & Associates, PC – Sultan McCullough
437.  7868  Mokaram & Associates, PC – Kareem Kelly
438.  7873  Dugan Law Firm, APLC – Raion Hill
439.  7879  Dugan Law Firm, APLC – Norman Hodgins, Jr.
440.  7881  Weisberg & Associatas, PA – James H. Brown
441.  7882  Weisberg & Associatas, PA – John Rodgers
442.  7883  Weisberg & Associatas, PA – Kirby Dar Dar
443.  7884  Weisberg & Associatas, PA – Lamont Warren
444.  7885  Weisberg & Associatas, PA – Mario Bailey
445.  7886  Weisberg & Associatas, PA – Travis Minor
446.  7888  Mokaram & Associates, PC – Pierre Walters
447.  7890  David Buckley, PLLC – Correll Buckhalter
448.  7892  John D. Giddens P.A. – Odie Harris
449.  7895  Dugan Law Firm, APLC – Tommy Gay
450.  7896  Dugan Law Firm, APLC – Jason Gesser
451.  7897  Dugan Law Firm, APLC – Marshall Goldberg
452.  7898  Dugan Law Firm, APLC – Darrien Johnson

| 453. | 7899 | Dugan Law Firm, APLC – Jimmy Keyes |
| 454. | 7900 | Dugan Law Firm, APLC – Odell Lawson, Sr. |
| 455. | 7901 | Dugan Law Firm, APLC – Mike Levenseller |
| 456. | 7902 | Dugan Law Firm, APLC – Brit Miller |
| 457. | 7903 | Dugan Law Firm, APLC – Karl Morgan |
| 458. | 7904 | Dugan Law Firm, APLC – Kerry Parker |
| 459. | 7905 | Dugan Law Firm, APLC – Kurt Schultz |
| 460. | 7906 | Dugan Law Firm, APLC – Frank Staine–Pyne |
| 461. | 7907 | Dugan Law Firm, APLC – Joseph Williams |
| 462. | 7908 | Dugan Law Firm, APLC – Walter Young |
| 463. | 7925 | Robins Cloud, LLP – Narond Alexander |
| 464. | 7927 | Robins Cloud, LLP – Cory Fleming |
| 465. | 7929 | Robins Cloud, LLP – Issac Davis |
| 466. | 7931 | Robins Cloud, LLP – Lamont Green |
| 467. | 7933 | Robins Cloud, LLP – Raymond Green |
| 468. | 7935 | Robins Cloud, LLP – Ken Hamlin |
| 469. | 7937 | Robins Cloud, LLP – Ronney Jenkins |
| 470. | 7939 | Robins Cloud, LLP – Christopher Wells |
| 471. | 7941 | Robins Cloud, LLP – Julius Williams |
| 472. | 7944 | Dugan Law Firm, APLC – Clint Harris |
| 473. | 7950 | Dugan Law Firm, APLC – Roy Foster |
| 474. | 7951 | Dugan Law Firm, APLC – William Hampton |
| 475. | 7952 | Dugan Law Firm, APLC – Dennis Johnson |
| 476. | 7953 | Dugan Law Firm, APLC – Richard Mauti |
| 477. | 7954 | Dugan Law Firm, APLC – Ronald McKinnon |
| 478. | 7955 | Dugan Law Firm, APLC – Tyrone Rush |
| 479. | 7956 | Dugan Law Firm, APLC – Sean Smith |
| 480. | 7957 | Dugan Law Firm, APLC – Christopher Thompson |
| 481. | 7958 | Dugan Law Firm, APLC – Louis Williams |
| 482. | 7959 | Pope McGlamry – Mijoshki Evans |
| 483. | 7961 | Pope McGlamry – D. Kris Haines |
| 484. | 7964 | Pope McGlamry – Kevin N. House, Sr. |
| 485. | 7967 | Pope McGlamry – Jeremiah Castille |
| 486. | 7969 | Pope McGlamry – Solomon Miller |
| 487. | 7971 | Pope McGlamry – Fernando Smith |
| 488. | 8034 | John D. Giddens P.A. – Henry Rhodes |
| 489. | 8039 | Farrise Law Firm, P.C. – Wilson Bryant |
| 490. | 8040 | Farrise Law Firm, P.C. – Joseph Redmond |
| 491. | 8048 | McCorvey Law, LLC – Errict Rhett |
| 492. | 8050 | David Buckley, PLLC – Brodney Pool |
| 493. | 8051 | David Buckley, PLLC – Ricky Price |
| 494. | 8052 | David Buckley, PLLC – Kevin Payne |
| 495. | 8053 | David Buckley, PLLC – Brian Schaefering |
| 496. | 8058 | Mokaram & Associates, PC – Jake Ballard |
| 497. | 8059 | Mokaram & Associates, PC – Joshua Booty |
| 498. | 8060 | Mokaram & Associates, PC – Plaxico Burress |

499.  8061   Mokaram & Associates, PC – Sergio Jackson
500.  8062   Mokaram & Associates, PC – Ronald McClendon
501.  8063   Mokaram & Associates, PC – Reggie McNeal
502.  8064   Mokaram & Associates, PC – Edell Shepherd
503.  8073   Goldberg, Persky & White, P.C.        Keith Henderson
504.  8077   Pope McGlamry – Daniel Clark IV
505.  8079   Pope McGlamry – Ronald L. Singleton
506.  8081   Goldberg, Persky & White, P.C. – Patrick Hunter
507.  8082   Pope McGlamry – Jerry Porter
508.  8084   Goldberg, Persky & White, P.C. – Ronney Jenkins
509.  8085   Goldberg, Persky & White, P.C. – Derek Kennard
510.  8087   Weisberg & Associatas, PA – Le'Ron McClain
511.  8088   Pope McGlamry – Michael Johnson
512.  8090   Pope McGlamry – Kiwaukee S. Thomas
513.  8091   Locks Law Firm – Keith Hamiton
514.  8093   Locks Law Firm – Eric Wright
515.  8094   Locks Law Firm – Bruce Taylor
516.  8095   Locks Law Firm – Andrew Jordan, Jr.
517.  8096   Locks Law Firm – Glenn L. Collins
518.  8097   Locks Law Firm – Ricky Nattiel
519.  8098   Locks Law Firm – Rod Davis
520.  8099   Locks Law Firm – Ronnie Ghent
521.  8100   Pope McGlamry – Julius Williams
522.  8110   Anapol Weiss – Eric T. Scoggins
523.  8111   Locks Law Firm – Reese McCall, Jr.
524.  8112   Locks Law Firm – Lawrence Watkins
525.  8113   Locks Law Firm – Marc Lillibridge
526.  8114   Locks Law Firm – Felix Wright
527.  8115   Locks Law Firm – Glen E. Young
528.  8116   Locks Law Firm – Steven DeBerg
529.  8117   Locks Law Firm – Charlie McShane
530.  8118   Locks Law Firm – Michael L. Haddix
531.  8119   Locks Law Firm – Todd Howard
532.  8120   Locks Law Firm – Roland Harper
533.  8121   Locks Law Firm – Stacey Simmons
534.  8122   Locks Law Firm – Jon Michael Reichenbach
535.  8123   Locks Law Firm – Jackie A. Walker
536.  8124   Locks Law Firm – Frank Hartley
537.  8125   Locks Law Firm – David Greenwood
538.  8126   Locks Law Firm – Darrel Earl Jones
539.  8127   Locks Law Firm – Clifton Smith, II
540.  8128   Locks Law Firm – Michael C. Williams
541.  8131   Locks Law Firm – Jorge A. Diaz
542.  8134   Driscoll Firm, P.C. – Jerry Crafts
543.  8136   Anapol Weiss Eric Hilgenberg
544.  8157   Dugan Law Firm, APLC – Atlas Herrion

**A-33**

| 545. | 8160 | Goldberg, Persky & White, P.C. – Emanuel King |
| 546. | 8161 | Goldberg, Persky & White, P.C. – Henry Lawrence |
| 547. | 8172 | Locks Law Firm – Santo S. Stephens |
| 548. | 8173 | Locks Law Firm – Demetric Evans |
| 549. | 8174 | Locks Law Firm – Billy Davis |
| 550. | 8175 | Locks Law Firm – Gregory Lewis |
| 551. | 8176 | Locks Law Firm – Joey Hollenbeck |
| 552. | 8177 | Locks Law Firm – Sherman Cocroft |
| 553. | 8178 | Locks Law Firm – Billy Joe Hobert |
| 554. | 8179 | Locks Law Firm – Mark McGrath |
| 555. | 8180 | Locks Law Firm – Chad Fann |
| 556. | 8181 | Locks Law Firm – David Diaz–Infante |
| 557. | 8182 | Locks Law Firm – Cornelius Anthony |
| 558. | 8183 | Locks Law Firm – Gregory L. Bracelin |
| 559. | 8184 | Locks Law Firm – Gregory Randall |
| 560. | 8185 | Locks Law Firm – Jerald Moore |
| 561. | 8186 | Locks Law Firm – Carl Miller |
| 562. | 8187 | Locks Law Firm – Robert Hewko |
| 563. | 8188 | Locks Law Firm – Sedric Clark |
| 564. | 8189 | Locks Law Firm – Roger Jackson |
| 565. | 8193 | Dugan Law Firm, APLC – Maurice Hurst |
| 566. | 8214 | Robins Cloud, LLP – Claude Wroten |
| 567. | 8233 | Locks Law Firm – Tony Smith |
| 568. | 8239 | Hodgins Law Group, LLC – Eugene Sykes |
| 569. | 8240 | Hodgins Law Group, LLC – Alden Roche, Jr. |
| 570. | 8241 | Hodgins Law Group, LLC – Robert Sanders |
| 571. | 8242 | Hodgins Law Group, LLC – Ronnie Heard |
| 572. | 8243 | Hodgins Law Group, LLC – Christopher Thompson |
| 573. | 8251 | Smith & Stallworth, P.A. – Elbert Woods |
| 574. | 8254 | Locks Law Firm – Anthony Smith |
| 575. | 8255 | Locks Law Firm – Ken Walter |
| 576. | 8256 | Locks Law Firm – Jeffery Fuller |
| 577. | 8257 | Locks Law Firm – Chad Eaton |
| 578. | 8258 | Locks Law Firm – Derrick Burroughs |
| 579. | 8259 | Hodgins Law Group, LLC – Matthew Dorsett |
| 580. | 8260 | Hodgins Law Group, LLC – Corey Dowden |
| 581. | 8264 | Goldberg, Persky & White, P.C. – Kevin McLeod |
| 582. | 8265 | Goldberg, Persky & White, P.C. – Eric Martin |
| 583. | 8266 | Goldberg, Persky & White, P.C. – Corey Mayfield |
| 584. | 8271 | Zimmerman Reed LLP – Robert Massey |
| 585. | 8273 | Zimmerman Reed LLP – Calvin Sweeney |
| 586. | 8275 | Zimmerman Reed LLP – Levar Fisher |
| 587. | 8277 | Zimmerman Reed LLP – Marquette Smith |
| 588. | 8279 | Zimmerman Reed LLP – Ralph Kurek |
| 589. | 8281 | Zimmerman Reed LLP – Richard Cunningham |
| 590. | 8283 | Steckler Gresham Cochran PLLC – Tim Morabito |

| | | |
|---|---|---|
| 591. | 8284 | Steckler Gresham Cochran PLLC – Robert James |
| 592. | 8287 | Pope McGlamry – Darrion Scott |
| 593. | 8289 | Pope McGlamry – William Dozier III |
| 594. | 8291 | Pope McGlamry – Donald Lee Evans |
| 595. | 8293 | Pope McGlamry – Alpette Richardson |
| 596. | 8295 | Locks Law Firm – Walt Harris |
| 597. | 8296 | Locks Law Firm – Char–Ron Dorsey |
| 598. | 8297 | Locks Law Firm – Elgin Davis |
| 599. | 8298 | Locks Law Firm – Renaldo Wynn |
| 600. | 8299 | Driscoll Firm, P.C. – Larry Gillard |
| 601. | 8300 | Driscoll Firm, P.C. – Roscoe Parrish |
| 602. | 8304 | John D. Giddens P.A. – Edward Thomas |
| 603. | 8326 | Dugan Law Firm, APLC – Dennis Johnson |
| 604. | 8331 | Pope McGlamry – Bernard Eric Green |
| 605. | 8333 | Farrise Law Firm, P.C. – Steve Wilson |
| 606. | 8349 | Dugan Law Firm, APLC – Curtis Baham |
| 607. | 8374 | Kreindler & Kreindler LLP – James Boyd |
| 608. | 8384 | Provost Umphrey Law Firm, L.L.P. – Robert D. Bean |
| 609. | 8388 | Robins Cloud, LLP – John Nix |
| 610. | 8390 | Robins Cloud, LLP – John Nix |
| 611. | 8399 | Locks Law Firm – Joe T. Owens |
| 612. | 8400 | Kreindler & Kreindler LLP – Dameane Douglas |
| 613. | 8401 | Kreindler & Kreindler LLP – John E. Harris |
| 614. | 8412 | Locks Law Firm – Kory Blackwell |
| 615. | 8413 | Locks Law Firm –Gregory Brown |
| 616. | 8414 | Locks Law Firm –Christopher Coleman |
| 617. | 8415 | Locks Law Firm –Kenard Lang |
| 618. | 8416 | Locks Law Firm –Rod Manuel |
| 619. | 8417 | Locks Law Firm –Rodrick Rutledge |
| 620. | 8418 | Locks Law Firm –Hurley J. Tarver, Jr. |
| 621. | 8419 | Locks Law Firm –Rodney Bellinger |
| 622. | 8420 | Locks Law Firm –Reggie Berry |
| 623. | 8421 | Locks Law Firm –James Betterson |
| 624. | 8422 | Locks Law Firm –Doug Donley |
| 625. | 8423 | Locks Law Firm –Steven Hamilton |
| 626. | 8424 | Locks Law Firm –Seth Joyner |
| 627. | 8425 | Locks Law Firm –George W. McCullough, Jr. |
| 628. | 8426 | Locks Law Firm –Frederick Nixon |
| 629. | 8427 | Locks Law Firm –Mark Seay |
| 630. | 8428 | Locks Law Firm –Reginald Sutton |
| 631. | 8429 | Locks Law Firm –Zachary Valentine |
| 632. | 8453 | John D. Giddens P.A. et al. –Nate Lewis |
| 633. | 8467 | Farrise Law Firm, P.C. –Ronney Daniels |
| 634. | 8468 | Farrise Law Firm, P.C. –Shawn King |
| 635. | 8469 | Farrise Law Firm, P.C. –Cory Fleming |
| 636. | 8471 | Farrise Law Firm, P.C. –Joseph Redmond |

637. 8818   Farrise Law Firm, P.C. –Robert Wilson
638. 8911–1 McCorvey Law, LLC et al. –Clifton Smith, Jr.
639. 8921–1 Robins Cloud, LLP – Henry Lusk
640. 8922–1 Robins Cloud, LLP – Antonio Pittman

# EXHIBIT B



**LOCKS** LAW FIRM

The Curtis Center
601 Walnut Street, Suite 720 East
170 S. Independence Mall West
Philadelphia, Pennsylvania 19106
T 215.893.0100
T 866.LOCKSLAW
F 215.893.3444
lockslaw.com

GENE LOCKS
glocks@lockslaw.com
215-893-3434

November 2, 2017

Professor William B. Rubenstein
Harvard Law School
1563 Massachusetts Avenue
Cambridge, MA   02138

Dear Professor Rubenstein:

    I am Class Counsel in the NFL MDL Settlement Class and have worked with Tobias Wolff, a professor at the University of Pennsylvania Law School.  My firm filed two documents before Judge Brody, both of which address matters the Court has assigned to you for an expert opinion.  One of those documents, our January, 2017 response to the Motion of the Estate of Kevin Turner, filed jointly with Professor Wolff, addresses issues related to individual fee contracts.

    The second document is my recently filed Declaration of October 27, 2017.  At pages 22-30, I address the NFL five percent set aside issue, a matter of which co-lead counsel Chris Seeger, took a position in his Declarations of February 13, 2017 and October 10, 2017 attached hereto.

    To be certain you have these filings, I have taken the liberty of enclosing them with this letter.

    I am available to meet and discuss these matters if you are so inclined.

Thank you for your consideration.

Very truly yours,

Gene Locks

GL:pat
Enclosures
Cc:  Prof. Tobias Barrington Wolff (w/o enclosures)
    Christopher Seeger, Esquire (w/o enclosures)
    Sol Weiss, Esquire (w/o enclosures)
    Steven C. Marks, Esquire (w/o enclosures)

# EXHIBIT C

*In re National Football League Players' Concussion Injury Litigation*
MDL No. 2323
Expert Declaration of William B. Rubenstein

**EXHIBIT C**
**Class Counsel's Fee Request in Percentage Terms**

**CLASS COUNSEL'S PERCENTAGE CALCULATION**

| | | |
|---|---|---|
| 1 | Monetary Award Fund (MAF) | $950,000,000 |
| 2 | Baseline Assessment Program (BAP) | $75,000,000 |
| 3 | Education Fund | $10,000,000 |
| 4 | Notice Costs | $4,000,000 |
| 5 | Claims Administration | $11,925,000 |
| 6 | Attorney's Fees Provision | $112,500,000 |
| **7** | **TOTAL** | $1,163,425,000 |

This Table appears in Class Counsel's fee petition.[1]

Class Counsel's fee and expenses request at line 6 ($112,500,000) is 9.67% of Class

Counsel's total settlement value at line 7 ($1,163,425,000).

---

[1] . ECF No. 7151-1 at 45.

**C-1**

**NET PRESENT VALUE PERCENTAGE CALCULATION**

| 1 | Monetary Award Fund (MAF) | $537,000,000 |
|---|---|---|
| 2 | Baseline Assessment Program (BAP) | $51,000,000 |
| 3 | Education Fund | $10,000,000 |
| 4 | Notice Costs | $4,000,000 |
| 5 | Claims Administration | $6,000,000 |
| 6 | Attorney's Fees Provision | $112,500,000 |
| **7** | **TOTAL** | $720,500,000 |

The net present value of the MAF, BAP, and Claims Administration are found in the NFL's actuarial analysis as the mean of the range of confidence interval.[2]  The PSC's expert uses very similar – albeit lower – numbers.[3]  Although these reports were submitted to the mediator in support of the original capped settlement fund, the parties insist that they remain pertinent and both the parties and the Court have subsequently relied on them.[4]

Class Counsel's fee and expenses request at line 6 ($112,500,000) is 15.61% of the net present value of the settlement at line 7 ($720,500,000).

---

[2] ECF No. 6168 at 51.

[3] ECF No. 6167 at 50 (reporting net present value of MAF as $519.4 million).

[4] *See, e.g.,* ECF No. 6509 at 32-33 (Court's final approval order); ECF No. 7151-1 at 45 (Class Counsel's fee brief).

# EXHIBIT D

*In re National Football League Players' Concussion Injury Litigation*
MDL No. 2323
Expert Declaration of William B. Rubenstein

**EXHIBIT D**
**IRPA Rates in Fee Cap Cases**

**CASES WITH TOTAL FEE CAPS**

| Ref. # | Case | Total Fee Cap | Effective IRPA Rate |
|--------|------|---------------|---------------------|
| 1 | *Zyprexa* (large claims) | 35% | 33.5% |
| 2 | *MGM Grand* | 33.33% | 24.83% |
| 3 | *Vioxx* | 32% | 24.5% |
| 4 | *Guidant* | 37.18% | 22.8% |
| 5 | *Zyprexa* (small claims) | 20% | 18.5% |
| 6 | *Bayou Sorrel* | 36% | 18% |
| | **AVERAGE** | **32.25%** | **23.69%** |

1. *In re Zyprexa Prods. Liab. Litig.*, 424 F. Supp. 2d 488, 491 (E.D.N.Y. 2006) (instituting adjustable 35% fee cap); *In re Zyprexa Prod. Liab. Litig.*, No. MDL NO. 1596 JBW RLM, 2007 WL 2340790, at *1 (E.D.N.Y. Aug. 17, 2007) (describing 3% set-aside of the gross recovery to pay into the common benefit fund to be paid "½ (1.5%) from the plaintiff's share of the gross recovery and ½ (1.5%) from the attorney fee portion of the gross recovery"). The 35% cap minus the 1.5% IRPA contribution to the common benefit fund yields an effective IRPA fee of 33.5%.
2. *In re MGM Grand Hotel Fire Litig.*, 660 F. Supp. 522 (D. Nev. 1987) (instituting 33.33% cap, granting 7% in fees to steering committee and stating that would leave 26.33% to IRPAs, but also requiring IRPAs to pay  1.5% in common benefit expenses).
3. *In re Vioxx Prod. Liab. Litig.*, 760 F. Supp. 2d 640, 653, 658 (E.D. La. 2010) (instituting 32% cap, granting 6.5% in fees to steering committee and stating that would leave IRPAs "over 25%," but also requiring IRPAs to pay 1% in common benefit expenses).
4. *In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, No. MDL 05-1708 DWF/AJB, 2008 WL 3896006 (D. Minn. Aug. 21, 2008) (adjusting fee cap to 37.18% and adopting complex formula for IRPA fee but effectively setting that amount at about 22.8% of gross recovery).
5. *In re Zyprexa*, 424 F. Supp. 2d at 491 (instituting 20% fee cap – and $500 expense cap – for smaller $5,000 claims); *In re Zyprexa*, 2007 WL 2340790, at *1 (as above, granting steering committee 3%, half of which (1.5%) to be paid by the IRPAs). The 20% cap minus the 1.5% IRPA contribution yields an effective IRPA fee of 18.5%.
6. *In re Bayou Sorrel Class Action*, No. 04-1101, 2006 WL 3230771 (W.D. La. Oct. 31, 2006) (setting fees at "36% for all plaintiff's attorneys, 50% of which is to be distributed to the PSC for the common benefit work and 50% to the various private attorneys representing individual plaintiffs," yielding 18% IRPA rate).

## CASES WITH DIRECT IRPA CAPS

| Ref. # | Case | IRPA Rate |
|---|---|---|
| 1 | *Medtronic* | 33.33% |
| 2 | *Deepwater Horizon* | 25% |
| 3 | *Joint E&S Asbestos* | 25% |
| 4 | *Evans v. TIN* | 20% |
| 5 | *Copley* | 11% |
| 6 | *Beverly Hills Fire* | 6.3% |
| 7 | *Rio Hair Naturalizer* | 5% |
| | **AVERAGE** | **17.95%** |

1. *In re Medtronic, Inc. Implantable Defibrillator Prod. Liab. Litig.*, No. CIV 05MD1726 JMR/AJB, 2008 WL 4861693 (D. Minn. Nov. 10, 2008) (holding that "retained counsel's fee may not exceed 33 1/3 percent of the gross award allocated to the client").

2. *In re Oil Spill by the Oil Rig DEEPWATER HORIZON in the Gulf of Mexico*, on Apr. 20, 2010, No. 12-968, 2012 WL 2236737 (E.D. La. June 15, 2012) ("The Court orders that contingent fee arrangements for all attorneys representing claimants/plaintiffs that settle claims through either or both of the Settlements will be capped at 25% plus reasonable costs.").

3. *In re Joint E&S Dist. Asbestos Litigation*, 878 F. Supp. 473 (E.& S.D.N.Y. 1995) (noting that "the contingency fee percentage was raised to a compromise figure of 25%, which the Courts approved as 'reasonable'").

4. *Evans v. TIN, Inc.*, No. CIV.A. 11- 2182, 2013 WL 4501061 (E.D. La. Aug. 21, 2013) (holding that "privately retained attorney's fees should be limited to 20% of any individual claimant's recovery," net of the steering committee's 25.89% fee).

5. *In re Copley Pharm., Inc.*, 1 F. Supp. 2d 1407, 1417 (D. Wy. 1998) (assuming a "standard contingency fee [of] 33%" and reducing most "private attorney contingency fees . . . by two thirds (leaving the private attorneys with one third) to reflect the common benefit services provided by class counsel" meaning that IRPAs yielded a third of 33% or 11%).

6. *In re Beverly Hills Fire Litig.*, 639 F. Supp. 915, 925 (E.D. Ky. 1986) ("[A]ll attorneys, not members of the PLCC, may charge their clients a fee not to exceed a sum equal to 6.3% of the net final distribution payable to the individual plaintiffs. . .") (footnote omitted).

7. *In re Rio Hair Naturalizer Prod. Liab. Litig.*, No. MDL 1055, 1996 WL 780512 (E.D. Mich. Dec. 20, 1996) ("[T]he individual attorneys in this case may collect from their clients no more than 5% of their individual clients' recoveries as contingency fees.").

# EXHIBIT E

*In re National Football League Players' Concussion Injury Litigation*
MDL No. 2323
Expert Declaration of William B. Rubenstein

**EXHIBIT E**
**Analysis of Work Necessary to Maintain Settlement**

| | TASK[1] | LAUNCH or MAINTAIN |
|---|---|---|
| 1 | Drafting and dissemination of Supplemental Notices. | This work is described as related to ensuring full registration.  It is therefore largely completed. |
| 2 | Implementation Paperwork and Retention of Key Officers | This work is described in the past tense and is completed. |
| 3 | Work to Ensure Class-Member-Friendly Registration and Claims Processes | This work is described in the past tense and is completed. |
| 4 | Efforts to Widely Spread Information to Class Members | This work was geared toward ensuring registration, is described in the past tense, and is completed. |
| 5 | Efforts to Combat the Dissemination of Misinformation to Class Members | This work is largely described in the past tense. Such work may recur in the future, but since the registration period has ended, it should decline. |
| 6 | Selection of Advisory Panel Members and Appeals Advisory Panel Consultants | This work is completed.  While these panels will have to be re-staffed over time, all future work on this effort appears in point 11 below. |
| 7 | Selection and Orientation of Hundreds of Individuals to Serve as Qualified BAP Providers and Qualified MAF Physicians and Maintenance of These Physician Networks | This work is completed.  While these panels will have to be re-staffed over time, all future work on this effort appears in point 11 below. |
| 8 | Participation on Class Members' Behalf in the Appeals Process | Most of this work will be done after the settlement is launched but it is unlikely to require a significant time commitment, particularly given that 50% of the registrants have their own counsel. |
| 9 | Monitoring the NFL Parties' Funding of and Targeted Reserves for the Settlement | Most of this work will be done after the settlement is launched but it is likely to require almost no time commitment.  Indeed, the Court could eliminate this point altogether simply be requiring the NFL to report directly to it that it was meeting the required funding deadlines. |
| 10 | Establishing Procedures for and Participation in Periodic Audits of All Aspects of the Program, Including Medical Providers and Administrators | Most of this work will be done after the settlement is launched but it is unlikely to require significant time commitment. The Settlement Agreement also states that Co-Lead Counsel will bear this cost themselves.[2] |
| 11 | Replacing the Qualified BAP Providers and Qualified MAF Physicians, Appeals Advisory Panel Members, and Appeals Advisory Panel Consultants | This point is the analogue of points 6 and 7, above, and does identify future work. |
| 12 | Revisiting of the Science Every Ten Years | This work will have to be done once every ten years |

---

[1] For Class Counsel's enumeration and description of these 12 specific tasks, see ECF No. 7464 at 36-44.
[2] ECF No. 6481-1 at 59.