IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL § <br> LEAGUE PLAYERS' CONCUSSION § <br> LITIGATION § <br> _____ § <br> § <br> § <br> THIS DOCUMENT RELATES TO: § <br> ALL ACTIONS § | No. 12-md-2323 (AB) <br><br> MDL No. 2323 |

**Memorandum in Support of
Motion to Reconsider Withdrawing Fed.R.Evid. 706 Deposition
And
Motion for Extension of Time to Respond to the
Expert Report of Professor William B. Rubenstein**

Come now, The Alexander Objectors, Lubel Voyles, LLP, and Provost Provost Umphrey Law Firm, LLP (collectively, "Movants") and ask the Court to (i) reconsider the Court's Order (ECF 9527) withdrawing the Court's previously ordered deposition of expert appointed pursuant to Fed. R. Civ. P. 706 and (ii) extend their time to file a response to the report and opinions of Professor William B. Rubenstein and for support offer the following:

1.    The Court will recall that, after receiving responses to the Court's order to show cause why Professor William B. Rubenstein should not be appointed as an expert to assist the Court with fee matters, the Court appointed Professor Rubenstein and ordered that "any party may depose Professor Rubenstein about his opinion after his report is submitted" (ECF 8376). However, the Court's December 11, 2017,

1

retracts or reverses that decision.

2. Specifically on December 11, 2017, the Court signed its "Receipt of Expert's Report and Notice" (ECF 9527) ordering (a) deadlines for interested parties to repond to Professor Rubenstein's report; (b) placing a page limitation on such responses; and (c) that Professor Rubenstein will no longer by required to present himself for deposition. These three orders, taken together, significantly prejudice Movants ability to provide a meaningful response that protects their interests.

3. First, the Court gave interested parties January 3, 2018 to file a brief in response to Professor Rubenstein's expert report and the opinions offered therein. Thus, given the December 11 disclosure of the report, interested parties have two and one-half weeks to respond, after Professor Rubenstein had two and one-half months to create the report. From the time of his appointment (ECF 8376; September 14, 2017) to the time his signed his report (December 3, 2017), Professor Rubenstein had over 2 ½ months to prepare the report. Interested parties have 1/3 of that time to respond to the report.

4. Moreover, Movants' two and one-half weeks to respond includes at least two federal and religious holidays; that is, Christmas and New Year's day.

5. The holidays alone, movants suggest, is sufficient reason to extend their deadline, as the Court has provided relief on deadlines due to intervening holidays in the past. *See* ECF 7032; Motion to Extension of Time and ECF 7059; Order

2

granting that motion.

6. The Court has afforded Professor Rubenstein a similar amount of time to file a reply and movants have no objection to extending that time, as well.

7. No party will suffer prejudice by an extension of time of sixty days. There are no hearings presently scheduled. This fee dispute has already been ongoing since early 2017.

8. Aside from the holidays, the length and complexity of Professor Rubenstein's report and the limited pages within which movants have to respond to the report are additional reasons Movants require more time.

9. Professor Rubenstein's report is 47 pages in length (*See* ECF 9526). He indicates he has listed "the roughly 1,000 document that [he] reviewed." Professor Rubenstein has accumulated lien data, crafted averages and ranges of contingent fess. Professor Rubestein has also constructed a graph of the average continegent fee at time of contracting, by quarter.

10. Interested parties need a full opportunity to analyze the data and methodology to assess whether, in fact, they wish to respond. An inadequate opportunity to conduct that meaningful review is likely to spawn prophylactic responses rather than reasoned responses. And, as every legal writer knows, writing a short response requires much more time than writing a long response.

11. The short time for responding and the short space for doing so are

complicated by this Court's decision to withdraw Professor Rubenstein's deposition.

12. Specifically, as Movant the Alexander Objectors indicated in their response to this Court's show cause order (ECF 8350, p. 7 responding to Order ECF 8310) Professor Rubenstein's resume discloses conflicts of interest in this case; at a minimum, he has served as an expert consultant for one on the parties.

13. Pursuant to the same order appointing Professor Rubenstein, the Court indicated that the Court would consider the concerns about those conflicts of interest "in the context" of responses to the written report.

14. Movants anticipated that Professor Rubenstein would address those conflicts either in his report or during cross examiniation in the deposition.

15. Yet, Professor Rubenstein's report gives no information about the conflict concerns; says nothing to assuage the appearance of conflict.

16. Professor Rubenstein privately gave the Court information about the conflict. *See* ECF 8372 n.1 (where he "explained to the Court that the Anapol Weiss law firm paid him to attend and speak at a meeting of plaintiff's lawyers—including those who did and did not end up on the PSC—that was held on February 21, 2012, but that he has had no involvement in the matter since that date.")

17. But, the Court is now not affording interested parties an opportunity to cross examine that statement. Movants will have no opportunity to explore how the conficts they raised in writing may have impacted Professor Rubenstein's opinions

4

and recommendations in this matter.

18. The plain language of Federal Rule of Civil Procedure 706 contemplates a deposition of the Court's expert. Fed. R. Civ. P. 706(b) (noting that the Rule 706 expert "(2) may be deposed by any party").

19. Indeed the policy underlying Rule 706 is "to promote accurate factfinding." *See* 29 Charles Allen Wright & Victor James Gold, *Federal Practice and Procedure: Evidence* § 6304 (1997).

20. The Rule 706 deposition is all the more important in this case because:

a. the expert has a patent conflict of interest that can only be explored and, hopefully eliminated, by a meaningful cross examination. Transparency of the Rule 706 process demands not just that the Court be satisfied through information gained in ex parte discussions, but that interested parties have a process to gather the same confidence;

b. Professor Rubenstein has achieved bright-line (presumptive) opinions about contingent-fee contract using only averages and generalities. Professor Rubenstein has used a series of factors designed as a facts and circumstances analysis of a contingent-fee contract, though Professor Rubenstein has not considered any particular fee contract. Professor Rubenstein has opinioned that a cap on private contracts is appropriate while assuming, as he feels he must, the reasonableness of the class-counsel fee requested. Professor Rubenstein has not taken into

consideration any of the actual efforts of the private attorneys, assuming that such efforts will be accommodated by the common benefit fund—which they are not. In other words, Professor Rubenstein has rendered a global opinion that will divest Movant Lubel Volyes and Movant Provost Umphrey of a fee interest without considering the facts and circumstances of (a) Lubel Voyles contracts or the Provost Umphrey contracts; (b) the timing of the Lubel Voyles contracts or the Provost Umphrey Contracts; (c) the efforts of Lubel Voyles and Provost Umphrey to their own clients' respective recoveries; and (d) Lubel Voyles' and Provost Umphrey's contributions to the class recovery that co-Lead class counsel has refused to incorporate into the common benefit consideration.

21.     Neither of the Movants had any reason to believe that the Court would consider disregarding the negotiated terms of their agreements and substituting an alternate percentage without any consideration of those facts and circumstances. Indeed, the NFL Concussion Settlement website has told and continues to tell each Settlement Class Member that, although they do not need a lawyer, they may hire a lawyer and "must pay his or her lawyer based on the contract or agreement he or she signs with that lawyer." https://www.nflconcussionsettlement.com//FAQ

22.     Moreover, on page 31 of his Expert Report, Professor Rubenstein suggests a "presumptive" cap. In other words, Professor Rubestein proposes that the Court establish a process by which counsel or client can seek relief from that 15%

in particular circumstances." Under Professor Rubenstein's model, each lawyer will have the burden to prove entitlement to more than 15%. And, though Professor Rubenstein gives examples of circumstances that may warrant variation from the presumption, these are exceptions that swallow the presumptive rule. This Court will, unless interested parties can obtain clarity, be faced with litigating each and every contingent fee contract, because due process demands it.

23. But if the Court permits a deposition of Professor Rubenstein, he can be cross examined on the criteria he believes warrant departing upward or downward. Without a deposition, there is no way for movants to refine and explore this "presumptive" methodology or assist the Court in knowing how that methodology might specifically apply to each interest parties' facts and circumstances.

24. And, without that process, a deposition and a facts-and-circumstances assessment of a particular fee contract, the cap is a denial of a contracted interest, that is, the benefit of the parties' bargain, without an opportunitiy to be heard; without a showing that the contract is unjust, or unfair or unethical;[1] without a case or controversy;[2] and without any suggestion that the assumed Class Counsel rate, 15.6%, is fair and needs no court supervision.

---

[1] *See McKenzie Cons., Inc. v. Maynard*, 758 F.2d 97, 101 (3d Cir. 1985).
[2] *See Brown v. Watkins Motor Lines, Inc.*, 596 F.2d 129, 130 (5th Cir. 1979).

25. Finally, a deposition of Professor Rubenstein need not be unwieldy. The Court could put time limits on a deposition. The Court could compel interested parties to coordinate questioning to eliminate duplication. The Court could manage the deposition or even supervise the deposition. However, for the Court to consider Professor Rubenstein's report without allowing interested parties to test the methodology, the conflict or interest, or the data will deprive interested parties of their right to participate in this process.

26. In summary, after more than five plus years of lawyer/client relationship, movants find the agreement to be the subject of a second-guess modification, and ten pages and effectively one and one-half weeks to defend it.

27. This fee dispute is not on fire. Movants argue the opposite. The more time that passes, the more data the Court is able to collect about the administration of the settlement and the validity of Class Counsel's projections of success. The more of such data the Court collects, the more comfortable the Court can feel that the fee is not unconscionable when compared to the money paid out of the settlement.

## PRAYER

For the reasons set forth herein, and in their motion, Movants respectfully request that this Court:

(a) extend their time to respond to the Expert Report of Professor William B. Rubenstein by sixty days (up to and including March 7, 2018 and

8

(b) establish a date and protocol for interested parties to take a limited deposition of Professor William B. Rubenstein *before* such responsive filings are due.

Date: December 19, 2017

Respectfully Submitted,

*/s/ Lance H. Lubel*

| | |
|---|---|
| Mickey Washington | Lance H. Lubel |
| Texas State Bar No.: 24039233 | Texas State Bar No.: 12651125 |
| WASHINGTON & ASSOCIATES, PLLC | Adam Voyles |
| 2019 Wichita Street | Texas State Bar No.: 24003121 |
| Houston, Texas 77004 | Justin R. Goodman |
| Telephone: (713) 225-1838 | Texas State Bar No.: 24036660 |
| Facsimile: (713) 225-1866 | LUBEL VOYLES LLP |
| Email: mw@mickeywashington.com | 675 Bering Dr., Suite 850 |
| | Houston, TX 77057 |
| James Carlos Canady | Telephone: (713) 284-5200 |
| Texas State Bar No.: 24034357 | Facsimile: (713) 284-5250 |
| THE CANADY LAW FIRM | Email: lance@lubelvoyles.com |
| 5020 Montrose Blvd., Suite 701 | adam@lubelvoyles.com |
| Houston, TX 77006 | jgoodman@lubelvoyles.com |
| Telephone: (832) 977-9136 | |
| Facsimile: (832) 714-0314 | |
| Email: ccanady@canadylawfirm.com | |

Movants and Attorneys for Melvin Aldridge, Trevor Cobb, Jerry W. Davis, Michael Dumas, Corris Ervin, Robert Evans, Anthony Guillory, Wilmer K. Hicks, Jr., Richard Johnson, Ryan McCoy, Emanuel McNeil, Robert Pollard, Frankie Smith, Tyrone Smith, James A. Young Sr., and Baldwin Malcom Frank

[SIGNATURES CONTINUED BELOW]

Respectfully submitted,

*/s/ Matthew C. Matheny*
Matthew C. Matheny
Texas State Bar No. 24039040
 mmatheny@pulf.com
Jacqueline Ryall
Texas State Bar No. 17469445
jryall@pulf.com
PROVOST UMPHREY
    LAW FIRM, L.L.P.
Post Office Box 4905
Beaumont, Texas 77704
(409) 835-6000
(409) 838-8888 - Fax Number

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all counsel of record via the Court's ECF system on December 19, 2017.

*/s/ Lance H. Lubel*
Lance H. Lubel