IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE; NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION, | No. 2:12-MD-02323 – AB<br><br>MDL NO. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties, LLC successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | CIVIL ACTION NO: 14-cv-0029 |

THIS DOCUMENT RELATES TO ALL ACTIONS

### RESPONSE OF GOLDBERG, PERSKY & WHITE, P.C., GIRARDI KEESE AND RUSSOMANNO & BORRELLO TO EXPERT REPORT OF PROFESSOR WILLIAM B. RUBENSTEIN

Goldberg, Persky & White, P.C., Girardi Keese and Russomanno & Borrello ("firms"), pursuant to the December 11, 2017 Order of Court, hereby respond to the Expert Report of Professor William B. Rubenstein, filed December 11, 2017. As an initial matter, the firms agree with Professor Rubenstein that a proposed 5% set-aside should not be imposed on the class. However, the firms have other concerns, which they address in the attached Declaration of Jason E. Luckasevic.

Dated: January 3, 2018                                     Respectfully Submitted,


                                                           /s/ *Jason E. Luckasevic*

                                                           GOLDBERG, PERSKY & WHITE, P.C.
                                                           Jason E. Luckasevic


PA ID #No. 85557
Jason T. Shipp
PA ID #No. 87471
11 Stanwix Street, Suite 1800
Pittsburgh, PA 15222
Telephone: (412) 471-3980
Facsimile: (412) 471-8308


GIRARDI KEESE

Thomas Girardi
1126 Wilshire Boulevard
Los Angeles, California 90017
Telephone: (213) 977-0211
Facsimile: (213)481-1554

RUSSOMANNO & BORRELLO, P.A.

Herman J. Russomanno
Robert J. Borrello
150 West Flagler Street - PH 2800
Miami, FL 33130
Telephone: (305) 373-2101
Facsimile: (305) 373-2103

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing is being served upon all counsel of record via the **CM/ECF system,** this 3rd day of January, 2018.

/s/ *Jason E. Luckasevic*
Jason E. Luckasevic, Esquire

Counsel for Plaintiff

## **DECLARATION OF JASON E. LUCKASEVIC**

My name is Jason E. Luckasevic and I offer this Declaration in response to the Expert Report of Professor William B. Rubenstein, ECF No. 9526, pursuant to 28 U.S.C § 1746 based on personal knowledge, information and belief. In his Report, Professor Rubenstein opines, *inter alia*, that the Court should set a presumptive 15% cap on all contingency fee contracts in this matter. *See id.* at 2. However, Professor Rubenstein states that this Court should establish a process "whereby counsel or their client could seek relief from [the cap] in particular circumstances". *Id.* at 32. He then gives examples of such circumstances, including:

> Some [individually retained plaintiff's attorneys ("IRPAs")] argue that they took significant amounts of legal work on behalf of their individual clients prior to the creation of this MDL and/or accumulated so many clients that they really laid the groundwork for this band of cases and this settlement. To the extent those arguments are factually accurate, ***those lawyers may be entitled to more than a 15% fee.***

*Id.* (footnotes omitted) (emphasis added).

This is very significant because my legal team, consisting of the law firms of Goldberg, Persky & White, P.C., Girardi Keese, and Russomanno & Borrello ("our firms"), filed the first two cases that became the NFL concussion litigation on behalf of 120 former NFL players, *i.e. Maxwell v. NFL, et al*, Case No. BC465842 and *Pear v. NFL, et al.*, Case No. LC094453, in the Superior Court of California, Los Angeles County. Our pioneering efforts are detailed in the attached Declarations of Bennet Omalu, M.D. and Robert Stein and the affidavits of Peter Paladino, Thomas Girardi, Robert Fitzsimmons, Robert Cohen, Herman Russomanno, and Counter-Declaration of Jason Luckasevic attached herewith. *See* Exhibits A-H, respectively. Indeed, Professor Rubenstein expressly identifies Goldberg, Persky & White's groundwork efforts as being, if accurately described, the type that may be entitled to a fee higher than 15%. *See* ECF No. 9526 at 32 n. 102. Moreover, as Co-Lead Class Counsel Christopher Seeger has

1

expressly stated, "*[b]eing the first to file is incredibly important*," [Seeger] said. "[Luckasevic] took a risk." Michael Sokolove, How One Lawyer's Crusade Could Change Football Forever, Nov. 6, 2014, attached as Exhibit I, at MM42. Hence, at a minimum, this Court should consider the unique, trailblazing work of our firms when determining our contingency fee percentage.[1]

Related to this is Professor Rubenstein's emphasis on the timing of contingency fee contracts. He divides the relevant time periods into 3 separate phases:

- *Phase 1 — Individual litigation.* Lawyers who contracted to represent players prior to the proposed consolidation of these actions into an MDL on November 15, 2011 faced the prospect of pursuing the entire case themselves, perhaps even through trial, and fee arrangements reflecting those large contingencies would have been expected and appropriate.

    \*   \*   \*

- *Phase 2 - MDL.* Arguably, from the time that the NFL made its motion to consolidate these cases into an MDL (November 15, 2011) — and certainly, from the time the motion was granted (January 31, 2012) — lawyers contracting to represent clients were well aware that the costs of doing so had been greatly reduced: pre-trial proceedings would now be consolidated and undertaken once and the likelihood that any case would be remanded for trial declined significantly.

    \*   \*   \*

*Phase 3 — Class action settlement.* Once the leadership committee in the MDL proposed an aggregate class action settlement in August 2013, and especially after the Court granted preliminary approval in July 2014, it became apparent that IRPAs would be primarily responsible only for processing their clients' claims through the claims facility.

See ECF No. 9526 at 24-25 (footnotes omitted).

In relation to Phase 1, our firms were retained by 169 former players. In Phase 2, our firms were retained by 345 former players. In Phase 3, our firms retained 36 clients. Hence, almost a third of the contingency fee contracts our firms entered into with former players in

---

[1] All of our firms' contingency fee contracts have been reduced across the board to 25% of funds recovered. I note that Professor Rubenstein suggests the propriety of compensating individual work like that done by our firms "***prior to the creation of this MDL***" for the common good from the common benefit fund. *See* ECF No. 9526 at 32 (emphasis added).

2

relation to this matter were made when we "faced the prospect of pursuing the entire case" ourselves. This certainly militates in favor of special consideration when determining our contingency fees.

Additionally, Professor Rubenstein states that the efforts of individual retained attorneys do not "substantially contribute" to "the results obtained" in this matter because the "claims' values are pre-established and based on medical diagnoses". ECF No. 9526 at 27-28. However, in addition to the unique contributions of our firms, described *supra*, this statement is belied by the reality of the claims submission process. By illustration, my firm has submitted 135 claim packages for monetary awards. To date, we have received deficiency notices in 99 of those claim packages to date. Many of those deficiency notices concern new language that is not found in the Settlement Agreement asserting new interpretations of the "generally consistent provisions" concerning monetary award diagnoses. Further, many of these claims have had multiple deficiencies. All of the claims have required multiple communications with medical providers to clarify medical criteria requests. Thus far, our clients have received over 30 awards while we have received 9 denials. We have appealed 4 of the claim denials and the NFL has appealed 7 of the monetary awards. Thus, to date more than 25% of our clients' claims reaching resolution will involve an appeal. Each step in this process requires legal expertise and painstaking exactitude. It is not reasonable to expect former players with significant if not catastrophic cognitive impairment to navigate the claims process without the help of sophisticated legal assistance.

Finally, Professor Rubenstein states that he is assuming that the present net value of the settlement is $720.5 million, and hence that the percent of the settlement to be paid in relation to the common benefit fund fees is 15.6%. ECF No. 9526 at 4-5. However, Professor Rubenstein

3

did not have the benefit of the December 11, 2017 Monetary Awards Claim Report produced by BrownGreer LLC (attached as Exhibit J) when he filed his expert report. Therein, it shows that of 234 Notices issued on monetary claims, 191 were deemed payable, and that these awards totaled some $240,687,567.00, with some 1679 still-pending claims. *See* Exhibit J at 2-3. Even if these 1679 still-pending claims are found to be payable at a rate of 70% of the time, as opposed to the current rate of 81.6%, this would entail more than a seven-fold increase in the total number of claims payable (from 191 to 1366) *just in relation to currently filed claims*. Moreover, each of the 191 monetary awards averaged $1.26 million. *See id.* at 3. Even if one supposed that the average payment of 1366 claims will be $1 million as opposed to the current average amount, that would mean still-pending and already-awarded claims will amount to $1.366 billion. Assuming then that the reduction to present value of this is relatively minor for pending claims, say $1.275 billion, the actual common fund fee percentage falls from Professor Rubenstein's assumed 15.6% to 8.8%.

Assuming a rate of 8.8%, which is manifestly supported by empirical evidence, *supra*, the need to cap IRPA contingency fees in a draconian fashion is reduced.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on <u>January 3, 2018</u>.

_____
Jason E. Luckasevic

4