# EXHIBIT D

Affidavit of Thomas V. Girardi

## AFFIDAVIT OF THOMAS V. GIRARDI

I have over fifty years of experience as a lawyer and am regarded as one of the nation's top trial lawyers. I have obtained numerous multi-million and multi-billion dollar verdicts and settlements including involvement in the Vioxx settlement for $4.85 billion. I was also involved in settling Natural Gas Antitrust cases for $1.9 billion. In addition to these efforts, we have handled hundreds of cases involving brain injured clients, including a prior verdict against Riddell for a football player. My firm is considered one of the preeminent plaintiffs firms not just in California, but in the country. My firm Girardi and Keese, of which I am a named partner, has approximately 25 attorneys, and over 100 support staff.

At the very beginning of 2011, a friend of mine through the International Academy of Trial Lawyers, Herman Russomanno, reached out to me regarding a case against the NFL. I spoke with Herman Russomanno and Jason Luckasevic on several occasions before I decided to finally invest in this case. Ultimately, my firm agreed to lead the litigation and to provide a large portion of the financial capital that would be necessary to pursue such a case. Everyone understood that substantial funds would be necessary in order to take on a beloved defendant with infinite spending power. My firm routinely takes cases against wealthy defendants with unlimited litigation funds.

My firm, along with Jason Luckasevic and Herman Russomanno's firms, filed the first complaint against the NFL, Maxwell v. NFL, in Los Angeles Superior Court on July 19, 2011. On August 3, 2011, we filed our second complaint, Pear v. NFL in the same court totaling over 100 chronically brain injured retired players. After filing the second complaint, the NFL removed the cases to Federal Court. Our firms collectively worked on and filed a Motion to Remand the cases. My firm handled the reply to our Motion to Remand, and appeared at and argued the motion before Judge Real. A senior partner of my firm, argued the Motion to Remand. On December 8, 2011, the Motion was denied.

In addition, the NFL filed several ex parte applications and a Motion for Stay. My office worked on opposing all of these motions. This required substantial work and man power as these motions often occurred on short notice with little turn-around time.

The NFL then filed a Motion to Dismiss based on preemption. Jason Luckasevic's office took lead on drafting of the motion. My firm edited and reviewed the motion. During this time period, we began receiving calls from other lawyers planning to pursue litigation against the NFL based upon the same theories laid out in our cases. These lawyers often proposed teaming up, however we chose not to for various reasons. These lawyers ended up filing their complaints, often relying entirely upon the allegations and language that was contained in our complaints. In many cases our entire complaint was copied and pasted into a new document with a few minor changes. Thus, relying upon our work and research.

We had always seen these as individual cases that would proceed to trial on their own. Throughout this time period, our office coordinated daily with our co-counsel. And, continuously

dealt with the defense attorneys. We had numerous meet and confer conversations and discussions regarding the litigation and pending motions.

During 2011, five attorneys at my firm and two paralegals worked on this case. The attorneys' hourly rates are as follows: Thomas Girardi $1,100; Senior Partner $900; Two Partners at $650 each and one Associate at $350. In addition, two paralegals assisted on the matter, they are billed out at $200 each per hour. In 2011, I spent 900 hours working on this case. The senior partner spent 100 hours . One partner spent 1,400 hours. Another partner spent 400 hours and the associate spent 1600 hours on this case. The paralegals spent 700 hours and 600 hours each.

The work consisted of the above efforts, but also included numerous phone calls and meetings regarding creating a strategy to beat the NFL. The plan was to take these cases to trial. My firm was specifically brought into this case for our trial expertise. We planned to take a central role in these trials. Thus, as a team, we spent hundreds of hours coordinating and coming up with a game plan to the NFL's ever changing steps. This required an insurmountable amount of research to be done with regard to preemption and the other big legal issues we faced. These same issues continued to come up throughout the case.

Further, we consulted with and had discussions with various experts including Dr. Omalu, Dr. Amen, Dr. Merikangas and other leading doctors in this area. We were beginning to put together the team of experts that would be necessary in order to establish injuries and causation at trial. My firm has tried hundreds of cases involving brain injured clients. Co-counsel relied upon our expertise in handling these unique yet difficult injuries. Further, we have previously sued and been successful against Riddell. This prior experience gave us additional expertise to bring to the table and to help our efforts in this litigation.

As a result of our pre-MDL efforts, Girardi and Keese is making a claim for Common Benefit fees prior to February 2012 in the amount of $3,070,000.

Further Affiant sayeth naught:

_____  8/29/16
THOMAS V. GIRARDI (Date)

## ACKNOWLEDGEMENT BY NOTARY PUBLIC

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF LOS ANGELES        )

On <u>August 29, 2016</u>, before me <u>Shirleen H. Fujimoto,</u> Notary Public, personally appeared <u>THOMAS V. GIRARDI</u>, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.



[Signature of Officer]

[Officer's Seal]