# EXHIBIT E

Affidavit of Robert P. Fitzsimmons

RPF/klc: 08/03/16

# AFFIDAVIT

On this date personally appeared Robert P. Fitzsimmons, who after having first been duly sworn and deposed, does state as follows:

1. I have been an attorney-at-law since 1978. I am licensed to practice in the States of Ohio, West Virginia and Pennsylvania;

2. I have practiced law on a full-time basis and principally have been involved in litigation.

3. In 1997, I was retained to represent Mike Webster on his disability claim with the National Football League. I perfected his claim alleging that Mr. Webster was permanently and totally disabled because of brain injury caused and contributed to by football-related activities.

4. In 2000, the Bert Bell/Pete Rozelle Pension Board found Mike Webster was totally disabled as a result of brain injuries sustained in football-related activities.

5. The NFL Pension Board refused to make Mr. Webster's disability finding retroactive to the date of his retirement in 1991; therefore, I filed a lawsuit in United States District Court in Baltimore where summary judgment was granted on behalf of Mr. Webster, making his award retroactive to 1991. The NFL appealed this decision to the Fourth Circuit Court of Appeals who affirmed the District Court's ruling. The final decision for the Fourth Circuit was in approximately 2005.

6. In September of 2002, Mike Webster died and on behalf of the Webster family, I granted consent to a pathologist, Dr. Bennet Omalu, to perform an autopsy on the brain of Mike Webster. As a result of that autopsy, Dr. Omalu published his findings in a medical journal in 2005, confirming that Mike Webster had chronic traumatic encephalopathy ("CTE"). Dr.

{00190595-1}

Omalu's findings confirmed five (5) doctors' opinions rendered in the disability claim that Mike Webster had traumatic encephalopathy.

7. I have maintained my friendship with Dr. Omalu since he performed the autopsy on Mike Webster and he and I are co-directors of the Brain Injury Research Institute, which performs autopsies on individuals to determine whether they have CTE. Dr. Omalu and I are also partners in a business which owns the patent rights to a drug called FDDNP which is utilized in conducting PET scans on individuals in order to determine whether CTE can be diagnosed in a living individual.

8. I became acquainted with Attorney Jason Luckasevic sometime around 2006 in that Attorney Luckasevic was interested in determining whether causes of action could be filed against responsible entities for the devastating injuries and disabilities caused from CTE which was believed to have been caused from repetitive trauma to the head and which was prevalent in contact sports such as football.

9. Prior to meeting Mr. Luckasevic, I had discussions with several attorneys and groups of attorneys who were exploring and attempting to analyze whether there were responsible entities for these significant injuries.

10. From my discussions with several highly respected attorneys, they struggled to articulate any meaningful theories against any legal entities.

11. I recall speaking with Attorney Luckasevic, who was very enthused about several theories that were innovative and unique, including a fraud theory against the NFL and products theories against helmet manufacturers. He was also passionate and knowledgeable about the disease and symptoms after having spent time getting to know players and their families.

{00190595-1}

12. Because of my position as a director of the Brain Injury Research Institute, I remained interested in the legal theories, but decided not to participate in any litigation because I believed it would have affected our credibility as brain researchers. Nonetheless, I attempted to keep myself apprised of the ongoing litigation, specifically including claims brought by Attorney Luckasevic.

13. During the NFL litigation, I have had several conversations with Attorney Luckasevic who has contacted me for information and/or confirmation about some of the science we have addressed in medical journals and through our research. I am also aware that Attorney Luckasevic has a close relationship with Dr. Omalu and the two of them have spoken about the science of brain injury from repetitive trauma on numerous occasions.

14. Based on my recollection, Attorney Luckasevic put together a team of lawyers that were capable based upon skill, knowledge, experience and financial capabilities to take on the National Football League, which is a most formidable opponent because of their resources and popularity. In the Webster disability claim, I had to appeal decisions on at least four occasions before ultimately obtaining a decision that could be appealed through a direct action in United States District Court in Baltimore. That experience alone led me to believe that any civil claim would be fiercely contested.

15. To my knowledge, the actual theories upon which the class action settlement came about was based on Attorney Luckasevic's.

16. From my understanding, after Attorney Luckasevic's lawsuit was filed on behalf of his clients, there was no discovery or legal actions that progressed the case other than the settlement discussions which I believe were premised upon theories initiated by Attorney Luckasevic.

17. Although I was not in any way involved in the actual lawsuit and did not represent any individuals in the lawsuit, it is my belief that the efforts of Attorney Luckasevic were the initiating and driving force that enabled a settlement to take place. But for Attorney Luckasevic's efforts, I do not believe there would have been a lawsuit against the NFL with the ultimate settlement monies.

Further this Affiant sayeth naught.

_____
ROBERT P. FITZSIMMONS

STATE OF WEST VIRGINIA,

COUNTY OF OHIO, to-wit:

Taken, sworn to and subscribed before me this 3rd day of August, 2016

_____
Notary Public

My Commission Expires: 10/20/19



NOTARY PUBLIC OFFICIAL SEAL
STATE OF WEST VIRGINIA
KENDRA L. COTTIS
FITZSIMMONS LAW OFFICES
1609 WARWOOD AVENUE
WHEELING, WV 26003
MY COMMISSION EXPIRES OCT. 20, 2019