# **Exhibit A**

From: Bob Stein <rastein66@aol.com>
To: jverrier <jverrier@law.upenn.edu>; pritchet <pritchet@law.upenn.edu>
Bcc: Dank <Dank@hbsslaw.com>; wfleishman <wfleishman@lchb.com>; bob <bob@wvflo.com>
Subject: NFL Concussion Settlement - Important Clarification Question
Date: Thu, Jul 20, 2017 1:12 pm
Attachments: NFL_Concussion_Settlement_Art._XVIII-Releases.pdf (155K)

Dear Dean Verrier and Doctor Pritchett-

I write you in your capacity as Special Masters in this litigation, with a question of considerable importance to my clients, class members and present opt outs. I am an attorney representing a large number of the players who opted out of the proposed settlement, and a retired NFL player. I initiated the retired NFL players' action Dryer v. NFL, relating to publicity rights, and believe I can appropriately pass along your advice to many retired players beyond my clients. Coincidentally, I leave today to address a retired player summit.

One of my great concerns is the likelihood that, once a CTE test receives full approval for use in diagnosing living patients, it could effectively end settlement benefits to the class. If over 95% of retired players symptomatic for TBI issues, like those addressed by the Concussion Settlement, have been diagnosed post-mortem with CTE, as I believe facts support, it seems equally likely that living symptomatic players will be diagnosed with CTE by BAP and MAF physicians once a test for living patients is available. Based on post-mortem results, CTE is the overwhelmingly appropriate medical diagnosis for suffering members of our group.

As settlement Article XVIII, sec 18.1(a) (iv) (attached for your convenience) specifically releases Claims "arising out of, or relating to, CTE" it appears that virtually all symptomatic class members examined for Qualifying Diagnosis by Qualified BAP Providers or Qualified MAF Physicians should reasonably expect to be (appropriately) diagnosed with CTE once the living person test is medically approved. Would that diagnosis not effectively foreclose further testing to diagnose other diseases, if CTE is overwhelmingly diagnosed consistent with the science now applying to post-mortem player diagnoses? And would not that scenario virtually eliminate the likelihood of deserving, damaged players receiving a Qualifying Diagnosis for Monetary Award according to settlement terms?

As you no doubt know, CTE tests for living patients are in present development and have received multiple levels of required approvals. It would be a great help to me, my clients and the class if you could confirm that this scenario will not be permitted. Should its logic become future fact, the NFL would seem effectively absolved of financial responsibility for award payments otherwise agreed upon, by virtue of the CTE release.

Thank you for addressing this concern. If not dealt with, it would appear to undermine settlement intent, and Judge Brody's intent in approving it.

Respectfully,
Bob Stein
M.612-961-7356
O.612-886-3582
F. 612-886-2676
rastein66@aol.com

IMPORTANT: This electronic message and any accompanying material contains information from Bob Stein LLC or its attorneys that is presumptively confidential and, if sent to clients or co-counsel, may be privileged or otherwise protected from disclosure. The unauthorized use, distribution, or re-transmission of any part of this message by an unintended recipient is strictly prohibited and may be a violation of law including the Electronic Communications Privacy Act. Receipt by other than the named recipient(s) is not a waiver of any attorney-client, work product or other privilege, protection or doctrine. If you are not the intended recipient, please contact the sender and delete all copies.