UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | Case No. 12-md-2323 (AB)<br><br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*, <br><br>       Plaintiffs, <br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc., <br><br>       Defendants. | **Hon. Anita B. Brody** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**RESPONSE OF X1LAW TO THE EXPERT REPORT OF
<u>PROFESSOR WILLIAM B. RUBENSTEIN</u>**

In accordance with this Court's December 11, 2017 Order [ECF No. 9527] setting deadlines, X1Law respectfully submits this Response to the Expert Report of Professor William B. Rubenstein [ECF No. 9526] (the "Report").

<u>**Introduction**</u>

Professor Rubenstein provided two opinions in his Report:

- The Court should set a presumptive 15% cap on all contingent fee contracts.

- The Court should not order a 5% set-aside of class members' recoveries.

*See* Report, ECF No. 9526, p. 2.

X1Law agrees with Professor Rubenstein's second opinion and recommendation that the

Court should not order a 5% set-aside of Class Members' recoveries. As to the first opinion, X1Law disagrees with Professor Rubenstein's analysis and recommendation that the Court should set a presumptive 15% cap on all contingent fee contracts. Due to a number of factors explained in detail below, Professor Rubenstein's recommendation to set a presumptive 15% cap on all contingent fee contracts would severely weaken the critical "watchdog" role of individually retained plaintiff's attorneys ("IRPAs") that was built into, and is part of, the Settlement Agreement.

### IRPAs are Critical to Ensure that Class Members Receive Fair Treatment in this Claims Process.

IRPAs serve a critical watchdog role in the administration of the Settlement Agreement and claims process that benefits Class Members. The combination of certain Settlement Agreement terms, for example the "clear-sailing" attorney fee provision and reversion clauses, reduction of Monetary Awards over time, timing and availability to treat with BAP versus MAF providers, the claims-made nature of the Settlement, the NFL's incentive to challenge Claims, and the addition of requirements to the Settlement Agreement has increased the complexity of the claims process and rendered IRPAs invaluable to Class Members.

*Constant challenges from the NFL increase difficulty of the claims process for Class Members requiring IRPA assistance.*

First, the "unlimited" fund available to pay Monetary Awards to Class Members must be considered in connection with other terms in the Settlement Agreement. While unlimited, there is no guaranteed settlement fund (for example $1,000,000,000) that the NFL will pay no matter what happens. The NFL will only pay for claims made that survive the claims process, which incentivizes challenges and appeals in the claims process. The Settlement Agreement further provides the NFL robust rights to appeal Claims and Monetary Awards. Taken together, this

makes for a difficult and contentious claims process for Class Members that requires representation by an IRPA.

> ***Additional requirements increase the complexity of the claims process for Class Members requiring IRPA assistance.***

Class Members consistently face new requirements to obtain a Monetary Award in the claims process. For example, the updated Set of Frequently Asked Questions (the "Updated FAQ") [ECF No. 9137-1] provides additional requirements for post-effective date MAF testing that are not required under the Settlement Agreement. Specifically, Updated FAQ No. 68 provides that neuropsychological testing must be performed for diagnoses by an MAF Physician after January 7, 2017. *See* Updated FAQ, ECF No. 9137-1, p. 32. However, a side-by-side comparison of Updated FAQ No. 68 to Section 6.3 of the Settlement Agreement does not support the Updated FAQ:

| Updated FAQ No. 68 | § 6.3(b) Settlement Agreement |
|---|---|
| **For diagnoses by an MAF Physician after January 7, 2017:** Neuropsychological testing must be performed by: (a) the MAF Physician, (b) a BAP Provider, or (c) the ABPP-CN certified neuropsychologist to whom the Player was referred by the MAF Physician. This neuropsychological testing cannot be more than one year before the date of the Qualifying Diagnosis. If diagnosed by an MAF Physician after January 7, 2017, he or she must send the worksheets created when deciding the level of functional impairment according to the National Alzheimer's Coordinating Center's CDR Scale. | Following the Effective Date, a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, or ALS shall be made only by Qualified MAF Physicians, except that a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment or Level 2 Neurocognitive Impairment may also be made by Qualified BAP Providers as set forth in Section 5.2 and consistent with the terms of Exhibit 1 (Injury Definitions). |

The Settlement Agreement does not require that neuropsychological testing be performed for diagnoses by an MAF Physician post Effective Date (January 7, 2017, the Effective Date of the Settlement Agreement). Section 6.3 (b) of the Settlement Agreement does two things, it

identifies who may make Qualifying Diagnoses after January 7, 2017 (only Qualified MAF Physicians), and includes an exception that allows Qualified BAP Providers to make post Effective Date Qualifying Diagnoses. *See* § 6.3(b) of Settlement Agreement, ECF No. 6481-1, p. 36.

Specifically, Qualified BAP Providers may make Qualifying Diagnoses of Level 1.5 and Level 2.0 in accordance with BAP Section 5.2 of the Settlement Agreement as long as the BAP diagnoses are **consistent with** the terms in Exhibit 1 to the Settlement Agreement beginning on page 105 of ECF No. 6481-1. *See id*. In other words, Level 1.5 and 2.0 Qualifying Diagnoses by BAP Physicians must meet the BAP diagnosis requirements under Exhibit 1 – Qualifying Diagnosis for Monetary Awards [ECF No. 6481-1, p. 107].

The critical distinction between an MAF and BAP diagnosis is that Qualifying Diagnoses by MAF Physicians must be *generally consistent* with Exhibit 1, while Qualifying Diagnoses by BAP Physicians must be *consistent*. Exhibit 1 to the Settlement Agreement provides the following requirements for Qualifying Diagnoses of Level 1.5 by an MAF Physician:

> For living Retired NFL Football Players diagnosed outside of the BAP, a diagnosis while living of Level 1.5 Neurocognitive Impairment, *i.e.,* early dementia, based on evaluation and evidence **generally consistent** with the diagnostic criteria set forth in subsection 1(a)(i)-(iv) above, made by a Qualified MAF Physician or a board-certified or otherwise qualified neurologist, neurosurgeon, or other neuro-specialist physician, as set forth and provided in Sections 6.3(b)-(d) of the Settlement Agreement. [Emphasis added.]

*See* § 1.3(b) of Exhibit 1 to Settlement Agreement, ECF No. 6481-1, p. 107.

In contrast, Qualifying Diagnoses of Level 1.5 by BAP Physicians must be *consistent* with the BAP requirements contained in Exhibit 1 requiring neuropsychological testing:

> For Retired NFL Football Players diagnosed through the BAP, a diagnosis of Level 1.5 Neurocognitive Impairment must meet the criteria set forth in subsections (i)-(iv) below: …
>
> (ii) Evidence of a moderate to severe cognitive decline from a previous level of

performance, as determined by and in accordance with the standardized neuropsychological testing protocol annexed in Exhibit 2 to the Settlement Agreement, in two or more cognitive domains (complex attention, executive function, learning and memory, language, perceptual-spatial), provided one of the cognitive domains is (a) executive function, (b) learning and memory, or (c) complex attention.

*See* § 1(a) and 1(a)(ii) of Exhibit 1 to Settlement Agreement, ECF No. 6481-1, p. 107.

The same requirements are provided for Level 2 under Section 2(a) for BAP and 2(b) for MAF. *See* § 2(a) and 2(b) of Exhibit 1 to Settlement Agreement, ECF No. 6481-1, p. 108.

Neuropsychological testing **is not required to be performed** for diagnoses by an MAF Physician after January 7, 2017. However, Updated FAQ No. 68 adds the requirement for neuropsychological testing, and eliminates the "generally consistent" standard contained in § 1.3(b) of Exhibit 1 to Settlement Agreement, ECF No. 6481-1, p. 107, the result of which is an additional, more difficult hurdle for Retired NFL Players to meet to obtain a Monetary Award.

The elimination of the "generally consistent" standard is only one example of changes to the Settlement Agreement implemented through the Updated FAQ, there are many other substantive changes that are not supported by the Settlement Agreement. The Updated FAQ highlights the complexity of the claims process and critical watchdog role of IRPAs.

### The Proposed 15% Cap on Contingency Fee Contracts Throttles the Class Members' Access to IRPAs.

Capping attorney's fees at 15% would cut the legs out from under IRPAs due to the time and risk involved in this complex and contentious claims process, essentially gutting their ability to represent Class Members by making the representation financially dangerous. Professor Rubenstein's proposed cap would severely chill access to IRPAs, limiting IRPA advocacy and oversight, resulting in lack of oversight in an otherwise dangerous claims process for Class Members.

For example, assume a Retired NFL Player obtains a BAP exam that indicates he is

healthy in year one. However, five years from now the same Retired NFL Player experiences symptoms and wants another diagnosis. He must treat with and pay for an Approved MAF Physician. The combination of the reduction in value of a claim in year five and out of pocket IRPA cost to treat with an MAF in the $5,000 to $10,000 range makes the representation dangerous and cost prohibitive for IRPAs under the 15% cap. The result is that Class Members would not longer have access to IRPAs through the Settlement claims process.

### The Common Benefit Attorney Fee Payment To Class Counsel Under the Settlement Agreement Does Not Reduce Class Members' Recoveries.

Professor Rubenstein's opinion assumes that 30% of Class Member recoveries is a reasonable attorney fee award. The Report then approximates Class Counsel common benefit attorney's fees (the $112 million under the Settlement Agreement) as approximately 15% of the early projections of the award fund. However, this is simply not accurate as Common Benefit Fees are separate and apart from the unlimited Settlement Fund.

### Conclusion

The NFL's ability, incentive and apparent adopted policy as demonstrated by its actions, to aggressively challenge and appeal Claims requires significant advocacy that must be checked by IRPAs. The complexity and challenges in the administration of claims process including new policies, forms, procedures and FAQs that alter the Settlement Agreement. If left unchecked, the combination of these criteria create perfect conditions for an unjust claims process, obstructing Class Members from receiving the Monetary Awards they are entitled to under the Settlement Agreement, without the vigilant advocacy of IRPAs.

X1Law respectfully requests that the Court refrain from adopting an across the board presumptive 15% cap on all contingent fee contracts. Instead, the Court should allow IRPA contingent fee contracts to remain in place to avoid making representation of Class Members too

great a financial risk for IRPAs.


    Dated:  January 3, 2018

                                                        Respectfully Submitted,

| | |
|---|---|
| Patrick J. Tighe | Attorneys for Plaintiffs/Movants |
| Attorneys for Plaintiffs/Movants | LOREN & KEAN LAW |
| X1LAW, P.A. f/k/a Patrick J. Tighe, P.A. | 7111 Fairway Drive, Suite 302 |
| 721 US Highway 1, Ste 121 | Palm Beach Gardens, FL  33418 |
| North Palm Beach, FL 33408 | Phone: 561-615-5701 |
| Phone: 561-537-3319 | Fax: 561-615-5708 |
| Fax: 561-537-7193 | mstjacques@lorenkeanlaw.com |
| Pat@X1LAW.com | Florida Bar No. 0783471 |
| Florida Bar No. 568155 | |
| | *s/ Michael St. Jacques* |
| | Michael G. St. Jacques, II |


## CERTIFICATE OF SERVICE

      I hereby certify that on January 3, 2018, the foregoing document was electronically filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, and that the filing is available for downloading and viewing from the electronic court filing system by counsel for all parties.

                                        **LOREN & KEAN LAW**

                                        *s/ Michael St. Jacques*
                                        **MICHAEL G. ST. JACQUES, II**