UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY HOLMES, as Administrator of the Estate of his father, RONALD HOLMES, and in his individual capacity, and on behalf of his father's heirs and next of kin,<br><br>PLAINTIFF,<br><br>V.<br><br>NATIONAL FOOTBALL LEAGUE,<br><br>DEFENDANT. | CIVIL ACTION NO. 2:13-cv-05031-AB<br><br>CIVIL ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED<br><br>　　Related to MDL-2323<br>*IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION*<br><br>　　Related to 11-cv-05209-AB<br>*Easterling, et al. v. National Football League, Inc.* |

## PETITIONER'S MOTION FOR RELIEF FROM A JUDGMENT OR ORDER PURSUANT TO FED. R. CIV. P. 60

Petitioner, Jeffrey Holmes, as Administrator of the Estate of Ronald Holmes, respectfully seeks relief from the Special Master's Post-Appeal Notice of Denial of Monetary Award Claim dated December 22, 2017. In support thereof, Class Counsel avers as follows:

1.　　On April 22, 2015, this Court approved a Settlement Agreement entered between the National Football League ("NFL") and retired NFL players or their legal representatives with respect to brain injuries sustained during the course of their professional careers in the NFL. *See* Doc. 6510 (April 22, 2015 Order Granting Final Approval); *see also* Doc. 6481-1 (Settlement Agreement, as Amended February 13, 2015).

2. The Settlement Agreement provides an award of monetary damages to Retired NFL Players, or their legal representatives, in the event of a post-mortem diagnosis of Chronic Traumatic Encephalopathy (CTE). More specifically, Section 6.3(f) provides:

> (f) A Qualifying Diagnosis of Death with CTE shall be made only for Retired NFL Football Players who died prior to the Final Approval Date, through a post-mortem diagnosis made by a board-certified neuropathologist prior to the Final Approval Date, provided that a Retired NFL Football Player who died between July 7, 2014 and the Final Approval Date shall have until 270 days from the date of death to obtain such a post-mortem diagnosis.

*See* Doc. 6481-1 (Settlement Agreement) at Section 6.3(f).

3. Ronald Holmes played in the NFL for 8 seasons (1985 to 1992), four with the Tampa Bay Buccaneers and four with the Denver Broncos. Throughout his career, Ronald Holmes played in 102 games and was a starting Defensive End for the Broncos in Super Bowl XXIV.

4. Ronald Holmes died on October 27, 2011 and a routine autopsy was performed by the Pierce County Medical Examiner in Tacoma, Washington.

5. Following the autopsy, the Holmes Estate obtained a written report from the medical examiner's office that did not list any abnormal brain findings or reference the preservation of any brain tissue. Nonetheless, medical records and the family's personal accounts confirmed that Ronald Holmes exhibited multiple signs of neurological deficits in the final years of his life.

6. In August 2013, the Holmes family formally retained the undersigned counsel to investigate and pursue claims against the NFL.

7. Counsel contacted the medical examiner's office in March 2014 to inquire about any remaining tissue from the autopsy and were advised, consistent with absence of any such

reference in the autopsy report, that no brain tissue had been preserved. *See* the Declaration in Petitioner's July 11, 2017 Appeal, ¶¶ 3-5, attached as Exhibit A.

8. Thereafter, Counsel continued its investigation into Ronald Holmes' medical history to determine if neurology records could qualify the Decedent for other neurocognitive benefits. Additional records failed to establish any compensable diagnoses. *Id.* at ¶ 5.

9. In April 2015, the Holmes family again contacted the medical examiner and during a second follow-up call were advised *for the first time* that brain tissue slides from Ronald Holmes' autopsy did in fact exist. *Id.* at ¶ 6.

10. The Holmes family made arrangements to ship the slides from the Pierce County Medical Examiner's office to the University of Pittsburgh in June 2015 for evaluation by board-certified neuropathologist Ronald Hamilton, M.D. Dr. Hamilton received the brain tissue samples on June 10, 2015.

11. On August 4, 2015, Dr. Hamilton positively diagnosed Ronald Holmes with CTE.

12. On April 11, 2017, following the opening of the Monetary Awards Claims Process period, Petitioner submitted a Claim to the NFL seeking a monetary award for death with CTE.

13. On June 13, 2017, the Claims Administrator rejected Petitioner's claim. *See* the June 13, 2017 Notice of Denial of Monetary Award Claim, attached as Exhibit B.

14. The Claims Administrator's sole justification for the denial was Petitioner's failure to meet the Qualifying Diagnosis deadline set forth in Section 6.3(f) of the Settlement Agreement. *Id.*

15. On July 11, 2017, Petitioner submitted an appeal to the Claims Administrator, explaining the extenuating circumstances and requesting that his claim be approved

notwithstanding Decedent's post-mortem CTE diagnosis a mere three and a half months beyond the Qualifying Diagnosis deadline. *See* Exhibit A (July 11, 2017 Appeal).

16. On August 21, 2017, the NFL issued a memorandum supporting the denial of Petitioner's Appeal. *See* the Response of the NFL Parties in Opposition to the Appeal of Claim Determination Filed by Ronald Holmes, attached as Exhibit C. The NFL's insistence that equitable tolling is inapplicable is contrary to the law.

17. On December 22, 2017, the Special Master rejected Petitioner's appeal, again citing the Qualifying Diagnosis deadline. *See* the December 22, 2017 Post-Appeal Notice of Denial of Monetary Award Claim, attached as Exhibit D.

18. Under Section 27.1 of the Settlement Agreement, this Court has continuing and exclusive jurisdiction over all parties, including the Claims Administrator and the Special Master, with respect to the terms of the Settlement and has authority to resolve any disputes arising thereof upon motion to the Court. *See* Doc 6481-1 (Settlement Agreement) at Section 27.1.

19. The Settlement Agreement further provides that in resolving such disputes, the Court will make a final and binding determination based upon a showing by the appellant of clear and convincing evidence. *Id.* at Section 9.8.

20. "The Court has general equitable power to modify the terms of a class action settlement." *Sutton v. Hopkins County*, 2009 U.S. Dist. LEXIS 95229, *8 (W.D. KY 2009)(citing *In re CENDANT Corp.*, 189 F.R.D. 321, 323 (D.N.J. 1999)).

21. "Until the fund created by the settlement is actually distributed, the court retains its traditional equity powers…to protect unnamed, but interested persons." *Zients v. LaMorte*, 459 F.2d 628, 630 (2d Cir. 1972). "A Court may assert this power to allow late-filed proofs of

4

claim and late-cured proofs of claim." *Id.; see also In re "Agent Orange" Product Liability Litig.*, 689 F. Supp. 1250, 1263 (E.D.N.Y. 1988); Manual For Complex Litig. § 30.47 at 248 (3d ed. 1995).

22. Courts considering requests to extend deadlines for filing proofs of claim and other settlement documents generally subject the request to a "good cause" or "excusable neglect" analysis. *Kyriazi v. W. Elec. Co.*, 647 F.2d 388, 396 (3d Cir. 1981); *In re CENDANT Corp.*, 189 F.R.D. at 323 (citations omitted).

23. Fed. R. Civ. P. 60(b) provides that on motion and just terms, the court may relieve a party or its legal representative from a final judgment, order or proceeding in the case of mistake, inadvertence, surprise, excusable neglect or any other reason that justifies relief. Fed. R. Civ. P. 60(b)(1) and (6).

24. The determination of whether a party's neglect is "excusable" is an equitable one, in which courts are to take into account all relevant circumstances surrounding a party's failure to meet a deadline. *Chemetron Corp. v. Jones*, 72 F.3d 341, 349 (3d Cir. 1995)(citing *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993)).

25. In *Pioneer*, the U.S. Supreme Court identified several factors to consider in evaluating "excusable neglect", including the danger of prejudice to the non-moving party, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. *Pioneer Inv. Servs.*, 507 U.S. at 395; *see also Nara v. Frank*, 488 F.3d 187, 193 (3d Cir. 2007).

26. For all of the reasons more fully stated in Petitioner's contemporaneously filed Brief, Petitioner's request satisfies a "good cause" analysis and each of the *Pioneer* factors.

27.     For all of the reasons more fully stated in Petitioner's contemporaneously filed Brief, equitable tolling should apply because Petitioner has made a clear showing that extenuating circumstances prevented him from timely asserting his rights. *In re Diet Drugs (Phentermine/Fenfluramine/ Dexfenfluramine) Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 34005, *27-28 (E.D. Pa. Mar. 9, 2017).

WHEREFORE, Petitioner respectfully requests that this Court set aside the Special Master's Denial of Petitioner's Monetary Award Claim and enter the attached Order compelling the Claims Administrator to recognize the Decedent's Qualifying Diagnosis of CTE as timely.

Dated: January 19, 2018                                          RESPECTFULLY SUBMITTED,

/s/ Sol H. Weiss
Sol H. Weiss, Esquire (I.D. 15925)
Larry E. Coben, Esquire (I.D. 17523)
**ANAPOL WEISS**
One Logan Square, 130 N 18th St.
Suite 1600
Philadelphia, Pennsylvania 19103
(215) 735-1130 Telephone
sweiss@anapolweiss.com
*Co-Lead Class Counsel*

## CERTIFICATE OF SERVICE

I, Sol H. Weiss, hereby certify that, on January 19, 2018, Petitioner's Motion for Relief from a Judgment or Order Pursuant to Fed. R. Civ. P. 60 was filed and made available via CM/ECF to all counsel of record.

                                                        **ANAPOL WEISS**

                                                        <u>/s/ Sol H. Weiss</u>
                                                        Sol H. Weiss