UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY HOLMES, as Administrator of the Estate of his father, RONALD HOLMES, and in his individual capacity, and on behalf of his father's heirs and next of kin,<br><br>PLAINTIFF,<br><br>V.<br><br>NATIONAL FOOTBALL LEAGUE,<br><br>DEFENDANT. | CIVIL ACTION NO. 2:13-cv-05031-AB<br><br>CIVIL ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED<br><br>Related to MDL-2323<br>*IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION*<br><br>Related to 11-cv-05209-AB<br>*Easterling, et al. v. National Football League, Inc.* |

### PETITIONER'S BRIEF IN SUPPORT OF MOTION FOR RELIEF FROM A JUDGMENT OR ORDER PURSUANT TO FED. R. CIV. P. 60

Petitioner, Jeffrey Holmes, as Administrator of the Estate of Ronald Holmes, submits this Brief in support of his Fed. R. Civ. P. 60 Motion seeking relief from the Special Master's Denial of Monetary Award Claim.

**I.    QUESTION PRESENTED**

Whether this Court should set aside the Special Master's denial of Petitioner's Monetary Award Claim because Petitioner's failure to meet the Settlement Agreement's Qualifying Diagnosis deadline resulted from "excusable neglect" under Fed. R. Civ. P. 60 and there was good cause for the brief delay where, despite due diligence, extenuating circumstances prevented Petitioner from timely obtaining the brain tissue samples that confirmed his father, Ronald Holmes', post-mortem diagnosis of Chronic Traumatic Encephalopathy (CTE).

1

*Suggested Answer:* Yes.

**II.     STATEMENT OF FACTS**

On April 22, 2015, this Court approved a Settlement Agreement entered between the National Football League ("NFL") and retired NFL players or their legal representatives with respect to brain injuries sustained during the course of their professional careers in the NFL. *See* Doc. 6510 (April 22, 2015 Order Granting Final Approval); *see also* Doc. 6481-1 (Settlement Agreement, as Amended February 13, 2015). Among other brain injuries, the Settlement Agreement provides an award of monetary damages to Retired NFL Players, or their legal representatives, in the event of a post-mortem diagnosis of CTE. More specifically, Section 6.3(f) provides:

> (f) A Qualifying Diagnosis of Death with CTE shall be made only for Retired NFL Football Players who died prior to the Final Approval Date, through a post-mortem diagnosis made by a board-certified neuropathologist prior to the Final Approval Date, provided that a Retired NFL Football Player who died between July 7, 2014 and the Final Approval Date shall have until 270 days from the date of death to obtain such a post-mortem diagnosis.

*See* Doc. 6481-1 (Settlement Agreement) at Section 6.3(f).

**A. Ronald Holmes' Post-Mortem CTE Diagnosis**

Ronald Holmes played in the NFL for 8 seasons (1985 to 1992), four with the Tampa Bay Buccaneers and four with the Denver Broncos. Throughout his career, Ronald Holmes played in 102 games and was a starting Defensive End for the Broncos in Super Bowl XXIV. Ronald Holmes died on October 27, 2011 and a routine autopsy was performed by the Pierce County Medical Examiner in Tacoma, Washington. Following the autopsy, the Holmes Estate obtained a written report from the medical examiner's office that did not list any abnormal brain findings or reference the preservation of any brain tissue. Nonetheless, medical records and the

family's personal accounts confirmed that Ronald Holmes exhibited multiple signs of neurological deficits in the final years of his life.

In August 2013, the Holmes family formally retained the undersigned counsel to investigate and pursue claims against the NFL. Medical records were gathered to determine if Ronald Holmes had been diagnosed with Dementia or Alzheimer's disease as the autopsy report did not identify a pathological disease pertinent to such claims. Counsel contacted the medical examiner's office in March 2014 to inquire about any remaining tissue from the autopsy and were advised, consistent with absence of any such reference in the autopsy report, that no brain tissue had been preserved. *See* the Declaration in Petitioner's July 11, 2017 Appeal, ¶¶ 3-5, attached as Exhibit A. Thereafter, Counsel continued its investigation into Ronald Holmes' medical history to determine if neurology records could qualify the Decedent for other neurocognitive benefits. Additional records failed to establish any compensable diagnoses. *Id.* at ¶ 5.

In April 2015, the Holmes family again contacted the medical examiner and during a second follow-up call were advised *for the first time* that brain tissue slides from Ronald Holmes' autopsy did in fact exist. *Id.* at ¶ 6. The Holmes family made arrangements to ship the slides from the Pierce County Medical Examiner's office to the University of Pittsburgh in June 2015 for evaluation by board-certified neuropathologist Ronald Hamilton, M.D. Dr. Hamilton received the brain tissue samples on June 10, 2015. On August 4, 2015, Dr. Hamilton positively diagnosed Ronald Holmes with CTE. On April 11, 2017, following the March 23, 2017 opening of the Monetary Awards Claims Process period, Petitioner submitted a Claim to the NFL seeking a monetary award for death with CTE. The submission included the requisite certifications and all supporting documentation.

### B. The Claims Administrator's Denial of Petitioner's Claim for Monetary Damages

On June 13, 2017, the Claims Administrator rejected Petitioner's claim. *See* the June 13, 2017 Notice of Denial of Monetary Award Claim, attached as Exhibit B. <u>The Claims Administrator's sole justification for the denial was Petitioner's failure to meet the Qualifying Diagnosis deadline set forth in Section 6.3(f) of the Settlement Agreement.</u> *Id.* On July 11, 2017, Petitioner submitted an appeal to the Claims Administrator, explaining the extenuating circumstances and requesting that his claim be approved notwithstanding Decedent's post-mortem CTE diagnosis a mere three and a half months beyond the Qualifying Diagnosis deadline. *See* Exhibit A (July 11, 2017 Appeal). On August 21, 2017, the NFL issued a memorandum supporting the denial of Petitioner's Appeal. *See* the Response of the NFL Parties in Opposition to the Appeal of Claim Determination Filed by Ronald Holmes, attached as Exhibit C. As explained below, the NFL's insistence that equitable tolling is inapplicable is contrary to the law. On December 22, 2017, the Special Master rejected Petitioner's appeal, again citing the Qualifying Diagnosis deadline. *See* the December 22, 2017 Post-Appeal Notice of Denial of Monetary Award Claim, attached as Exhibit D.

### C. The Settlement Agreement Recognizes Similar Extenuating Circumstances

Multiple clauses in the Settlement Agreement make clear that the parties did not intend the monetary claims terms to be rigid formulas not amenable to extenuating circumstances. Indeed, the Settlement Agreement expressly acknowledges situations where, despite due diligence, a Retired NFL Player or his legal representative is unable to obtain the requisite medical records or is otherwise rendered unable to meet the Claim Package submission deadline due to situations outside of his or her control:

> In cases where a deceased Retired NFL Football Player received a Qualifying Diagnosis but the medical records reflecting the Qualifying Diagnosis are unavailable because of a force majeure

4

> *type event (e.g., flood, hurricane, fire), the Claims Administrator, upon petition by the Representative Claimant, may determine the Claim Package to be valid without the medical records if the Representative Claimant makes a showing of reasonable effort to obtain the medical records from any available source and presents a certified death certificate referencing the Qualifying Diagnosis made while the Retired NFL Football Player was living…If the unavailability of medical records also causes the diagnosing physician to be unable to provide a Diagnosing Physician Certification, the Claims Administrator, upon petition by the Representative Claimant, and in addition to the presentation of a certified death certificate referencing the Qualifying Diagnosis made while the Retired NFL Football Player was living, may instead allow an accompanying sworn affidavit from diagnosing physician attesting to the reasons why the diagnosing physician is unable to provide a Diagnosing Physician Certification without the medical records.*

*See* Doc 6481-1 (Settlement Agreement) at Section 8.2(ii)(emphasis added).

> Claim Packages must be submitted to the Claims Administrator no later than two (2) years after the date of the Qualifying Diagnosis or within two (2) years after the Settlement Class Supplemental Notice is posted on the Settlement Website, whichever is later. Failure to comply with this two (2) year time limitation will preclude a Monetary Award for that Qualifying Diagnosis, *unless the Settlement Class Member can show substantial hardship that goes beyond the Retired NFL Player's Qualifying Diagnosis and that precluded the Settlement Class Member from complying with the two (2) year deadline, and submits the Claims Package within four (4) years after the date of the Qualifying Diagnosis or after the Settlement Class Supplemental Notice is posted on the Settlement Website, whichever is later.*

*See* Doc 6481-1 (Settlement Agreement) at Section 8.3(a)(i)(emphasis added).

### III. STANDARD OF REVIEW

Under Section 27.1 of the Settlement Agreement, this Court has continuing and exclusive jurisdiction over all parties, including the Claims Administrator and the Special Master, with respect to the terms of the Settlement and has authority to resolve any disputes arising thereof upon motion to the Court. *See* Doc 6481-1 (Settlement Agreement) at Section 27.1. The

Settlement Agreement further provides that in resolving such disputes, the Court will make a final and binding determination based upon a showing by the appellant of clear and convincing evidence. *Id.* at Section 9.8. In its discretion, the Court may be assisted by any member of the Appeals Advisor Panel and/or an Appeals Advisory Panel Consultant. *Id.*

## IV.     ARGUMENT

"The Court has general equitable power to modify the terms of a class action settlement." *Sutton v. Hopkins County*, 2009 U.S. Dist. LEXIS 95229, *8 (W.D. KY 2009)(citing *In re CENDANT Corp.*, 189 F.R.D. 321, 323 (D.N.J. 1999)). "Until the fund created by the settlement is actually distributed, the court retains its traditional equity powers…to protect unnamed, but interested persons." *Zients v. LaMorte*, 459 F.2d 628, 630 (2d Cir. 1972). "A Court may assert this power to allow late-filed proofs of claim and late-cured proofs of claim." *Id.; see also In re "Agent Orange" Product Liability Litig.*, 689 F. Supp. 1250, 1263 (E.D.N.Y. 1988); Manual For Complex Litig. § 30.47 at 248 (3d ed. 1995). Courts considering requests to extend deadlines for filing proofs of claim and other settlement documents generally subject the request to a "good cause" or "excusable neglect" analysis. *Kyriazi v. W. Elec. Co.*, 647 F.2d 388, 396 (3d Cir. 1981); *In re CENDANT Corp.*, 189 F.R.D. at 323 (citations omitted).

Fed. R. Civ. P. 60(b) provides that on motion and just terms, the court may relieve a party or its legal representative from a final judgment, order or proceeding in the case of mistake, inadvertence, surprise, excusable neglect or any other reason that justifies relief. Fed. R. Civ. P. 60(b)(1) and (6). The determination of whether a party's neglect is "excusable" is an equitable one, in which courts are to take into account all relevant circumstances surrounding a party's failure to meet a deadline. *Chemetron Corp. v. Jones*, 72 F.3d 341, 349 (3d Cir. 1995)(citing *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993)). In *Pioneer*, the U.S.

Supreme Court identified several factors to consider in evaluating "excusable neglect", including the danger of prejudice to the non-moving party, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. *Pioneer Inv. Servs.*, 507 U.S. at 395; *see also Nara v. Frank*, 488 F.3d 187, 193 (3d Cir. 2007).

Petitioner's request satisfies a "good cause" analysis and each of the *Pioneer* factors: there is no material prejudice to the NFL because the Decedent was diagnosed with CTE based on brain tissue samples taken during an autopsy performed well before the Qualifying Diagnosis deadline and Petitioner timely submitted his Claims Package, Petitioner's delay in obtaining the Qualifying Diagnosis was minimal (approximately three and a half months), and the delay was due solely to circumstances outside of Petitioner or Counsel's control—namely the medical examiner's misrepresentation as to whether brain tissue samples had been preserved following Ronald Holmes' autopsy. Moreover, Petitioner and Counsel exercised due diligence in investigating the existence of and eventually obtaining the brain tissue preserved at the time of the autopsy for evaluation once its existence was discovered. The totality of the circumstances clearly establish "good cause" for the brief delay in obtaining Decedent's Qualifying Diagnosis and warrant a finding of "excusable neglect" under Fed. R. Civ. P. 60(b)(1). *Wallace v. Powell*, 2013 U.S. Dist. LEXIS 89176 (M.D. Pa. June 24, 2013)(finding "excusable neglect" and directing a claims committee to accept two plaintiffs' claims after the claims committee failed to receive timely proof of claims forms for their participation in a court-approved settlement); *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1128 (9th Cir. 1977)(affirming district judge's decision that he "would have discretion to permit a claim and allow a late claim when there's good and sufficient cause shown therefor"); *see also* In re Vitamins Antitrust Litig., 2002 U.S. Dist.

LEXIS 25790 (D.D.C. 2002)(finding "excusable neglect" and permitting class member to opt-out of settlement class beyond deadline).

Petitioner is not asking this Court to "rewrite the terms" of the Settlement Agreement. Courts have clear discretion to apply equitable tolling when class members submit claims that are technically untimely under the written terms of a settlement agreement. *In re Diet Drugs (Phentermine/Fenfluramine/ Dexfenfluramine) Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 34005, *27-28 (E.D. Pa. Mar. 9, 2017). In *In re Diet Drugs Prods. Liab. Legit.*, this Court considered whether equitable tolling was warranted when a class member sought relief from the denial of her claim due to her failure to meet a settlement matrix's statute of limitations. *Id.* at *27-8. Though it found that equitable tolling was not justified in the particular circumstances of that case, this Court acknowledged and applied the Third Circuit's three-factor test for equitable tolling <u>before</u> reaching that conclusion:

> Finally we review the determination of the Arbitrator that Ms. Schlager's 2014 stroke did not toll the statute of limitations set by CAP 16 as to her claim. Ms. Schlager argues that it should have been assumed that serious complications would occur following the stroke of a 77-year-old person such as Ms. Schlager. According to her, the deadline set by CAP 16 should have been tolled due to her serious health issues. Our Court of Appeals has identified three principal, non-exclusive situations in which equitable tolling may be appropriate: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; *(2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights*; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994). The plaintiff bears the burden of presenting facts necessary to justify equitable tolling. *Byers v. Follmer Trucking Co.*, 763 F.2d 599, 600-01 (3d Cir. 1995); *Smith v. Shared Medical System*, 2004 U.S. Dist. LEXIS 14306, 2004 WL 1656635 at * 4 (E.D. Pa. July 23, 2004). The record does not demonstrate how or why her medical condition prevented her from submitting a completed Green Form within the deadlines set forth by CAP 16.

8

*Id.* (emphasis added).

Here, unlike the claimant in *In re Diet Drugs Prods. Liab. Legit.*, Petitioner has made a clear showing that he was prevented from asserting his rights in some extraordinary way. For this additional reason, Petitioner has established, through clear and convincing evidence, that this Court should set aside the Special Master's denial of Petitioner's claim.

V.   **CONCLUSION**

For all of the foregoing reasons, Petitioner respectfully requests that this Court set aside the Special Master's Denial of Petitioner's Monetary Award Claim and enter the attached Order compelling the Claims Administrator to recognize the Decedent's Qualifying Diagnosis of CTE as timely.

Dated: January 19, 2018                    RESPECTFULLY SUBMITTED,

/s/ Sol H. Weiss
Sol H. Weiss, Esquire (I.D. 15925)
Larry E. Coben, Esquire (I.D. 17523)
**ANAPOL WEISS**
One Logan Square, 130 N 18th St.
Suite 1600
Philadelphia, Pennsylvania 19103
(215) 735-1130 Telephone
sweiss@anapolweiss.com
*Co-Lead Class Counsel*