# EXHIBIT A

# ANAPOLWEISS

Sol H. Weiss
One Logan Square  130 N. 18th Street, Suite 1600
Philadelphia, PA  19103
sweiss@anapolweiss.com
(215) 735-2098 Direct Dial
(215) 875-7700 Direct Fax

July 11, 2017

Claims Administrator
NFL Concussion Settlement
PO Box 25369
Richmond, VA 23260

Re:    Appeal of Notice of Denial of Monetary Award Claim
        Holmes #950000708

Dear Sir/Madam:

Please accept this letter as our official Appeal of Notice of Denial of Monetary Award Claim. Ronald Holmes played 8 seasons (1985-1992) for the NFL, four with the Tampa Bay Buccaneers and four with the Denver Broncos. He was a starting Defensive End for the Broncos in Super Bowl XXIV.

Ronald Holmes died on October 27, 2011.  A routine autopsy was performed by the Pierce County Medical Examiner. His estate obtained the written report that found no abnormal brain findings. It made no mention of any brain tissue being preserved.

Mr. Holmes did exhibit some neurologic deficits in his last years of life. His Estate formally retained counsel in August 2013. Records were gathered to determine if Mr. Holmes had been diagnosed with Dementia or Alzheimer's Disease. The Autopsy report did not find a pathological disease pertinent to this claim. Nevertheless, Counsel contacted the Medical Examiner's Office in May 2014 to inquire about any remaining tissue from the autopsy and we were advised that no brain tissue was preserved. Counsel continued to work on this case seeking and searching other neurology records to qualify the decedent for neurocognitive benefits. Subsequent records did not establish a diagnosis of dementia or Alzheimer's. In April 2015 the family again contacted the medical examiner. At this time, the family was informed in a second follow-up call that brain tissue slides did exist. Arrangements were made to ship the slides from the Pierce County Medical Examiner's Office to the University of Pittsburgh in June 2015. Dr.

July 11, 2017
Page 2

Hamilton, a well-regarded neuro-pathologist received the slides, studied them and issued a Report on August 4, 2015. Dr. Hamilton's report confirms that Mr. Holmes died with CTE. (See Neuropathology Consultation Report attached).

Based on the foregoing the Estate acted prudently when it discovered the existence of contemporaneous tissue slides. Until April 2015, the Estate believed no brain tissue had been preserved. The Holmes' Estate should not be penalized by the confusion in the Pierce County Medical Examiner's Office. There is no real prejudice to the NFL Parties because Ronald Holmes died from CTE in 2011 and the Estate through counsel diligently sought to obtain the slides. *See Ragguette v. Premier Wines & Spirits*, 691 F.3d 315 (3d Cir. 2012)(citing *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993)(holding that relief from a judgment or order is available under Fed. R. Civ. P. 60(b) upon a showing of "excusable neglect" taking into account all relevant circumstances, including prejudice to the non-movant, the length of the delay, the reason for the delay, including whether it was within reasonable control of the movant, and whether the movant acted in good faith); *see also Avon Contrs., Inc. v. Sec'y of Labor*, 372 F.3d 171 (3d Cir. 2004)(finding excusable neglect due to factors outside the moving party's control and the movant's late discovery of same); *Mays v. Wakefern Food Corp.*, 2002 U.S. Dist. LEXIS 14119 (E.D. Pa. 2002)(finding excusable neglect where, despite diligence, plaintiff was unable to meet case deadlines).

Mr. Holmes lived and died in Washington. Washington law provides that the statute of limitations applicable to a wrongful death action (3 years) *is automatically tolled* until the decedent's family has a reasonable cause to believe that the decedent was a victim of a wrongful death. *White v. Johns Manville Corp.*, 103 WN. 2d 344 (1985). This principle of law is, of course, embodied in Section 6.2 (b) of the Settlement Agreement which provides:

> (b)    A Representative Claimant of a deceased Retired NFL Football Player will be eligible for a Monetary Award only if the deceased Retired NFL Football Player died on or after January 1, 2006, or if the Court determines that a wrongful death or survival claim filed by the Representative Claimant would not be barred by the statute of limitations under applicable state law as of: (i) the date the Representative Claimant filed litigation against the NFL (and, where applicable, NFL Properties) relating to the subject matter of these lawsuits, if such a wrongful death or survival claim was filed prior to the Settlement Date; or (ii) the Settlement Date, where no such suit has previously been filed.

In accordance with applicable law, the Death by CTE claim would be tolled until the discovery of the preserved tissue. The action pursued by the Holmes' Estate is not time-barred under Washington law and Section 6.2(b) governs the resolution of this matter. The language of Section 6.3(f) should be equitably applied under the unique facts of this case. We also attach a declaration from Josh Cohan, an associate working on the Holmes file, which confirms this Firm and the client's due diligence in learning of the decedent's causative fatal illness (CTE).

July 11, 2017
Page 3

We respectfully request that the denial of benefits be overruled.


Very truly yours,


Sol H. Weiss


SHW/bmb

## Declaration of Joshua C. Cohan, Esq.

I, Joshua C. Cohan, declare as follows:

1. I am an associate lawyer at Anapol Weiss located at 130 N. 18ᵗʰ Street, Suite #1600, Philadelphia, PA 19103.
2. As an associate attorney my responsibilities included individual client supervision for In Re: National Football League Players' Concussion Injury Litigation. This included the claim involving former NFL player Ronald Holmes (deceased).
3. In an effort to confirm a post-mortem diagnosis of CTE, on March 28, 2014, I requested that my paralegal, James Mahan, contact the Medical Examiner's office that performed Mr. Holmes' autopsy to determine if any of Mr. Holmes' brain tissue had been preserved.
4. Mr. Mahan informed me on two separate occasions that no brain tissue had been preserved.
5. On May 21, 2014, I emailed Mr. Holmes' family to advise them that we had contacted the Medical Examiner's office and that they informed us that none of Mr. Holmes' brain tissue was preserved. I then proceeded to collect additional medical records in an effort to determine if Mr. Holmes had been diagnosed with dementia or Alzheimer's disease. No such diagnoses were ever made.
6. In April of 2015, I spoke with Mr. Holmes' family and they informed me that they had recently contacted the Medical Examiner's office and that the office was unsure whether any of Mr. Holmes' brain tissue was preserved. Mr. Holmes' family later informed me that they learned that some of Mr. Holmes' brain tissue was preserved. This was the first time that I or anyone at Anapol Weiss learned, contrary to what we were told in May 2014 by the Pierce County Medical Examiner's Office, that Mr. Holmes' brain tissue was preserved.
7. Mr. Holmes' family requested that they handle obtaining and testing the samples. The family did receive the report from Ronald L. Hamilton M.D. Associate Professor of Pathology ,University of Pittsburgh School of Medicine on or about August 4,2015.

_____
Joshua C. Cohan, ESQ.
Declarant

Date: July 11, 2017