# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br>**ALL ACTIONS PENDING AND ALL CLAIMS ASSERTED AGAINST ANY RIDDELL DEFENDANT** | **Hon. Anita B. Brody** |

**RIDDELL DEFENDANTS'[1] BRIEF IN SUPPORT OF
MOTION TO DISMISS THE PLAINTIFFS' SECOND AMENDED MASTER
ADMINISTRATIVE COMPLAINT AND AMENDED SHORT FORM COMPLAINTS[2]**

---

[1] For convenience only, "Riddell" or "Riddell defendants" refers collectively to the defendants Riddell, Inc., All American Sports Corporation, Riddell Sports Group, Inc., BRG Sports, Inc. (f/k/a Easton-Bell Sports, Inc.), BRG Sports, LLC (f/k/a Easton-Bell Sports, LLC), EB Sports Corp., and BRG Sports Holdings Corp. (f/k/a RBG Holdings Corp.), without waiver of their position that these are separate entities whom the plaintiffs have improperly lumped together and refer to as one entity.

The plaintiffs have amended the case style to reflect the new entity names for the entities previously known as Easton-Bell Sports, Inc. and Easton-Bell Sports, LLC. The plaintiffs also, in what appears to be a typographical error, refer to the formerly known entity for BRG Sports Holdings Corp. as "BRG Holdings Corp." The former entity name was actually RBG Holdings Corp. The Riddell defendants have no objection to amending the case style to reflect the new entity names identified in this footnote.

[2] The Riddell defendants reserve the right to address all plaintiff-specific claims and short-form complaints at the appropriate time, pursuant to this Court's 10/24/17 Order (ECF No. 8472), which specifically reserves such plaintiff/SFC-specific challenges for a later round of motions practice.

# TABLE OF CONTENTS

Tab

INTRODUCTION ................................................................................................ 1

RELEVANT BACKGROUND ........................................................................... 6

ARGUMENT ..................................................................................................... 10

I.    The plaintiffs fail to adequately allege a conspiracy between any Riddell defendant and the NFL or any other entity, as their claim is facially implausible and factually unsupported. ............................................................ 12

II.    The plaintiffs' fraud-based claims fail because they lack the requisite factual support and particularity. .................................................................. 15

    A.    The plaintiffs fail to state a claim for fraud or fraudulent concealment. ............. 16

    B.    The negligent misrepresentation claim is insufficient as a matter of law. ........... 22

III.    The plaintiffs fail to provide any of the most basic yet essential information to support any of their product liability claims, thereby requiring their dismissal as well. ..................................................................................... 23

    A.    The plaintiffs' design defect and warranty claims fail as the SAMAC lacks facts to support the existence of a defect for every helmet model over a period of 62 years or how any supposed defect caused a plaintiff's injury. ................................................................ 24

    B.    The plaintiffs' warnings claim fails for lack of facts to support either defect, causation, or duty. ................................................................ 27

IV.    The plaintiffs fail to state a claim for negligence and negligent marketing because they fail to state facts sufficient to support duty, breach, and causation. ........... 30

    A.    The plaintiffs' broad negligence claims fail. ..................................................... 30

    B.    The negligent-marketing claim fails for the same reasons as the warnings claim. ....................................................................................... 31

V.    The SAMAC as a whole requires dismissal because it fails to provide requisite notice to the defendants of their alleged individual roles in any wrongful conduct, improperly lumping together all of the Riddell entities, both with each other and at times with the NFL. ................................................................ 32

VI.    The plaintiffs allege no plausible basis for punitive damages. ......................... 34

VII.    The plaintiffs' SAMAC-SFCs are all deficient because they fail to provide the necessary details about their claims to adequately state a claim. ................................... 35

VIII.   The plaintiffs' claims are time-barred because the plaintiffs did not file suit within four years of accrual of their causes of action under any theory. ........................ 36

        A.      Most, if not all, of the 203 plaintiffs' fraud and conspiracy claims are time-barred because they do not relate back........................................................ 37

        B.      The plaintiffs' allegations further show their claims under any theory are time-barred........................................................................................................... 38

IX.     The Court should strike the claims by individuals who attempt to assert them for the first time by filing a SAMAC-SFC. ......................................................................... 42

X.      The claims of plaintiffs who did not file SAMAC-SFCs against Riddell should be dismissed. ....................................................................................................................... 43

        CONCLUSION ................................................................................................................... 44

# TABLE OF AUTHORITIES

## Cases

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*
404 F.3d 566 (2d Cir. 2005)...................................................................... 22
*Allegrino v. Conway E & S, Inc.*
No. 09-CV-1507, 2010 WL 3943939, at *11 (W.D. Pa. Oct. 6, 2010) .................................. 34
*Allen v. Andersen Windows, Inc.*
913 F. Supp. 2d 490 (S.D. Ohio 2012) ................................................................ 42
*Archie v. Pop Warner Little Scholars, Inc.*
No. 16-cv-6603, 2017 WL 3084160, at *14 (C.D. Cal. May 12, 2017) ................................ 39
*Arnlund v. Smith*
210 F. Supp. 2d 755 (E.D. Va. 2002) ................................................................ 17
*Ashcroft v. Iqbal*
556 U.S. 662, 678 (2009)........................................................ 10, 12, 15, 34
*Bartol v. Barrowclough*
251 F. Supp. 3d 855 (E.D. Pa. 2017) ............................................................... 13
*Bekins v. AstraZeneca Pharms. LP*
239 F. Supp. 3d 1220 (S.D. Cal. 2017)................................................... 39, 40, 41, 42
*Belville v. Ford Motor Co.*
13 F. Supp. 3d 528 (S.D. W. Va. 2014)........................................................ 17, 18, 20
*Black v. Cmty. Educ. Cntrs., Inc.*
No. 13-6102, 2014 WL 859313 .................................................................... 22
*Bolick v. Ne. Indus. Servs. Corp.*
666 F. App'x 101 (3d Cir. 2016) .................................................................. 33
*Boring v. Google Inc.*
362 F. App'x 273 (3d Cir. 2010) .................................................................. 34
*Cada v. Baxter Healthcare Corp.*
920 F.2d 446 (7th Cir. 1990) ................................................................ 40, 41
*Carpenter v. Sikorsky Aircraft Corp.*
101 F. Supp. 3d 911 (C.D. Cal. 2015) .............................................................. 24
*Corcoran v. N.Y. Power Auth.*
35 F. Supp. 376 (S.D.N.Y. 1996).................................................................. 38
*Cordell Consultant, Inc. Money Purchase Plan & Trust v. Abbott*
561 F. App'x 882 (11th Cir. 2014) ................................................................ 12
*Core Commc'ns, Inc. v. Verizon Maryland LLC*
744 F.3d 310 (4th Cir. 2014) .................................................................... 16
*Donachy v. Intrawest U.S. Holdings, Inc.*
No. 10-4038 (RMB/KMW), 2012 WL 869007, at *2 (D.N.J. Mar. 14, 2012)....................... 17
*Dunson v. Cordis Corp.*
No. 16-CV-03076-SI, 2016 WL 3913666, at *6 (N.D. Cal. July 20, 2016)........................... 28
*Dura Pharms. v. Broudo*
544 U.S. 336 (2005)............................................................................. 27
*Dzik v. Bayer Corp.*
846 F.3d 211 (7th Cir. 2017) .................................................................... 44

*E.g., In re Trasylol Prods. Liab. Litig.*
No. 08-MD-01928, 2010 WL 6098571, at * 12 (S.D. Fla. Mar. 16, 2010) ............................ 36

*Egli v. Strimel*
No. 14-cv-6204, 2015 WL 5093048, at *6 (E.D. Pa. Aug. 28, 2015) .................................... 21

*Evans v. Ariz. Cardinals Football Club, LLC*
No. 16-cv-1030, 2017 WL 2118316, at *2 (N.D. Cal. May 15, 2017)................................ 3, 31

*Evans v. Arizona Cardinals Football Club, LLC*
231 F. Supp. 3d 342 (N.D. Cal. 2017) .................................................................................... 11

*Faheem v. GlaxoSmithKline LLC*
No. 11–695 (*In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, MDL 1871 (Doc. No.
2522)), 2012 WL 3205620, at * 2 (E.D. Pa. Aug. 7, 2012)................................................... 38

*Flord v. Brown Williamson Tobacco Corp.*
159 F. Supp. 2d 823 (E.D. Pa. 2001) ...................................................................................... 22

*Foster v. Am. Home Prods. Corp.*
29 F.3d 165 (4th Cir. 1994) ..................................................................................................... 22

*Frederico v. Home Depo*
507 F.3d 188 (3d Cir. 2007)..................................................................................................... 16

*Giannaris v. Cheng*
219 F. Supp. 2d 687 (D. Md. 2002) ......................................................................................... 22

*Glover v. F.D.I.C.*
698 F.3d 139 (3d Cir. 2012)..................................................................................................... 38

*Gomez v. Pfizer, Inc.*
675 F. Supp. 2d 1159 (S.D. Fla. 2009) .................................................................................... 25

*Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*
2010 WL 338219, at *8 (Del. Ch. Jan. 29, 2010) ................................................................... 11

*Grinage v. Mylan Pharm., Inc.*
840 F. Supp. 2d 862 (D. Md. 2011) ......................................................................................... 28

*Guerrero v. Gates*
442 F.3d 697 (9th Cir. 2006) .............................................................................................. 40, 42

*Hayduk v. Lanna*
775 F.2d 441 (1st Cir. 1985) .................................................................................................... 22

*Herrington v. Johnson & Johnson Consumer Cos.*
No. C 09-1597, 2010 WL 3448531, at *11 (N.D. Cal. Sept. 1, 2010) ..................................... 20

*Hill v. Cray Research, Inc.*
864 F. Supp. 1070 (D.N.M. 1991) ........................................................................................... 25

*Hoffman v. Lincoln Gen. Ins.*
303 F. App'x 77 (3d Cir. 2008) ................................................................................................ 13

*Hook v. Whiting Door Mfg. Corp.*
No. CV 3:15-281, 2016 WL 3676812, at *4 (W.D. Pa. July 6, 2016) ..................................... 34

*Huskey v. Ethicon*
29 F. Supp. 3d 736 (S.D. W. Va. 2014).................................................................................... 28

*In Nat'l Football League Players' Concussion Injury Litig.*
307 F.R.D. 351 (E.D. Pa. 2015).................................................................................................. 7

*In re Asbestos Prod. Liab. Litig.*
543 F. App'x 202 (3d Cir. 2013) .............................................................................................. 44

*In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*
   2014 WL 2011239 ........................................................................................ 38
*In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*
   *MDL 1871*, No. 07–md–1871, 2014 WL 2011239, at *1 (E.D. Pa. May 16, 2014) ................ 36
*In re Bausch & Lomb Inc.*
   2007 WL 3046682, at *7 (D.S.C. Oct. 11, 2007) ................................................. 10
*In re Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.*
   856 F. Supp. 2d 904 (E.D. Ky. 2012) ............................................................ 26
*In re Ford Motor Co., Speed Control Deactivation Switch Prods. Liab. Litig.*
   No. 05-md-01718, 2007 WL 2421480 (E.D. Mich. Aug. 24, 2007) ................................... 15
*In re Fosamax (Alendronate Sodium) Prod. Liab. Litig.*
   852 F.3d 268 (3d Cir. 2017) ..................................................................... 37
*In re Fosamax (Alendronate Sodium): Prod. Liab. Litig.*
   No. 08-08 JAP LHG, 2014 WL 1266994, at *1 (D.N.J. Mar. 26, 2014) .............................. 37
*In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*
   966 F. Supp. 1525 (E.D. Mo. 1997) ..................................................... 15, 16, 21
*In re Hai Lecong*
   679 F. App'x 526 (9th Cir. 2017) ............................................................... 16
*In re Hydroxycut Mktg. & Sales Practices Litig.*
   No. 09-md-2087, 2010 WL 2232151, at *4 (S.D. Cal. June 3, 2010) ............................... 17
*In re McNeil Consumer Healthcare, Mkt. & Sales Practices Litig.*
   No. 2:10-md-02190 2011 WL 2802854 (E.D. Pa. July 15, 2011) ................................ 15, 18
*In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*
   623 F.3d 1200 (8th Cir. 2010) .................................................................. 10
*In re Nat'l Football League Players' Concussion Injury Litig.*
   842 F. Supp. 2d 1378 (J.P.M.L. Jan. 31, 2012) ................................................. 37
*In re Orthopedic Bone Screw Prod. Liab. Litig.*
   193 F.3d 781 (3d Cir. 1999) .................................................................... 15
*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*
   460 F.3d 1217 (9th Cir. 2006 ................................................................... 43
*In re Sagent Tech., Inc., Derivative Litig.*
   278 F. Supp. 2d 1079 (N.D. Cal. Aug. 15, 2003) ................................................ 32
*In re Wyse Tech. Sec. Litig.*
   744 F. Supp. 207 (N.D. Cal. 1990) ............................................................. 14
*In re Zofran (Ondansetron) Prods. Liab. Litig.*
   2017 WL 1458193, at *4–5 (D. Mass. Apr. 24, 2017) ............................................ 10
*In re Zofran (Ondansetron) Prods. Liab. Litig.*
   No. 1:15-md-2657-FDS, 2017 WL 1458193, at *6 (D. Mass. Apr. 24, 2017) ........................ 22
*In re Zyprexa Prods. Liab. Litig.*
   Nos. 04-md-1596, 06-cv-2782, 2009 WL 5062114, at *13 (E.D.N.Y. Dec. 10, 2009) ........... 36
*Knight v. Jewett*
   3 Cal. 4th 296 (1992) ......................................................................... 31
*Knoppel v. St. Jude Med. Inc.*
   No. SACV 13-383 JVS ANX, 2013 WL 3803612, at *2 (C.D. Cal. May 7, 2013) ................ 30
*Koch v. Christie's Int'l PLC*
   699 F.3d 141, 157 (2d Cir. 2012) .............................................................. 40

vi

*Lightning Lube, Inc. v. Witco Corp.*
  4 F.3d 1153 (3d Cir. 1993) ............................................................................... 19
*Lister v. Bill Kelley Athletic, Inc.*
  137 Ill. App. 3d 829 (1985) ............................................................................. 19
*Lowe v. Sporicidin Intern.*
  47 F.3d 124 (4th Cir. 1995) ............................................................................. 28
*Lukovsky v. City & Cty. of San Francisco*
  535 F.3d 1044 (9th Cir. 2008) ......................................................................... 41
*Lum v. Bank of Am.*
  361 F.3d 217 (3d Cir. 2004) ............................................................................ 16
*Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*
  351 F. Supp. 2d 436 (M.D.N.C. 2005) ............................................................ 22
*Martin v. Medtronic, Inc.*
  No. 115CV00994DADMJS, 2017 WL 825410, at \*12 (E.D. Cal. Feb. 24, 2017) ................. 28
*Mauvais-Jarvis v. Wong*
  2013 IL App (1st) 120070, ¶¶ 110, 116 ........................................................... 36
*McClain v. Citizen's Bank, N.A.*
  57 F. Supp. 3d 438 (E.D. Pa. 2014) ................................................................. 34
*McClain v. Metabolife Intern., Inc.*
  193 F. Supp. 2d 1252 (N.D. Ala. 2002) ........................................................... 31
*McCullough v. Peeples*
  No. 3:14-CV-123, 2015 WL 1000223, at \*7–8 (W.D. Pa. Mar. 5, 2015) ............... 34
*MDNet, Inc. v. Pharmacia Corp.*
  147 F. App'x 239 (3d Cir. 2005) ..................................................................... 17
*Mehr v. Féderation Internationale de Football Ass'n*
  115 F. Supp. 3d 1035 (N.D. Cal. 2015) ........................................................... 31
*Mellon Bank Corp. v. First Union Real Estate Equity & Mortg. Investments*
  951 F.2d 1399 (3d Cir. 1991) .......................................................................... 16
*Merritt v. Countrywide Fin. Corp.*
  No. 09-CV-01179-BLF, 2015 WL 5542992, at \*11 (N.D. Cal. Sept. 17, 2015) .......... 13
*Meyers v. Donnatacci*
  531 A.2d 398 (N.J. Super. Ct. Law Div. 1987) ................................................ 31
*Migliori v. Boeing N. Am., Inc.*
  114 F. Supp. 2d 976 (C.D. Cal. 2000) ............................................................. 40
*Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*
  536 F. App'x 558 (6th Cir. 2013) .................................................................... 19
*Mrla v. Fannie Mae*
  No. No. 2:2015-cv-13370, ECF No. 18 (E.D. Mich. July 21, 2016) ..................... 25
*Myre v. Meletio*
  307 S.W.3d 839 (Tex. Ct. App. 2010) ............................................................. 16
*Next Century Commc'ns Corp. v. Ellis*
  318 F.3d 1023 (11th Cir. 2003) ....................................................................... 16
*Nunnally v. Artis*
  254 Va. 247 (1997) .......................................................................................... 39
*O'Neil v. Crane Co.*
  53 Cal. 4th 335 (2012) .............................................................................. 19, 30

*Ojeda v. Louisville Ladder, Inc.*
  410 F. App'x 213 (11th Cir. 2010) ............................................................ 25
*Payne v. A.O. Smith Corp.*
  578 F. Supp. 733 (S.D. Ohio 1983) .......................................................... 38
*Pluto v. Searle Labs.*
  294 Ill. App. 3d 393 (1997) ...................................................................... 19
*Pooshs v. Phillip Morris USA, Inc.*
  No. C 04-1221, 2013 WL 2252471, at *9 (N.D. Cal. May 22, 2013) .............. 22, 31
*Porter v. Allstate Ins. Co.*
  585 N.Y.S.2d 465, 466 (App. Div. 2d Dep't 1992) .................................... 34
*Reese v. Ford Motor Co.*
  499 F. App'x 163 (3d Cir. 2012) .............................................................. 24
*Regents of the Univ. of Cal. v. Aisen*
  CASE NO. 15–cv–1766, 2016 WL 4096078, at *3 (S.D. Cal. Apr. 22, 2016) .......... 32
*Rosa v. City of Seaside*
  675 F. Supp. 2d 1006 (N.D. Cal. 2009) .................................................... 28
*Rosa v. Taser Int'l, Inc.*
  684 F.3d 941 (9th Cir. 2012) .................................................................... 28
*Rutherford v. FIA Card Servs., N.A.*
  No. CV 11-04433 DDP MANX, 2012 WL 993885, at *2 (C.D. Cal. Mar. 23, 2012) ............ 24
*S.F. v. Archer-Daniels-Midland*
  2014 WL 1600414, at *1 (W.D.N.Y. Apr. 21, 2014) .................................. 27
*Salvio v. Amgen, Inc.*
  810 F. Supp. 2d 745 (W.D. Pa. 2011) ...................................................... 31
*Scarnati v. Brentwood Borough Police Dept.*
  2013 WL 5806472 (W.D. Pa. Oct. 29, 2013) ............................................ 13
*See Ironworkers Local Union 68 v. AstraZeneca Pharm., LP*
  634 F.3d 1352 (11th Cir. 2011) ................................................................ 10
*Smith v. Gilles*
  184 N.W.2d 271 (Mich. App. 1970) ........................................................ 36
*Smith v. Lincoln Ben. Life Co.*
  395 F. App'x 821 (3d Cir. 2010) .............................................................. 22
*Stephen v. Ford Motor Co.*
  134 Cal. App. 4th 1363 (2005) ................................................................ 26
*Sung Tran v. Delavau, LLC*
  No. 07-cv-3550, 2008 WL 2051992, at *10 (E.D. Pa. 2008) ...................... 14
*Timpte Indus., Inc. v. Gish*
  286 S.W.3d 306 (Tex. 2009) .................................................................... 26
*Travelers Indem. Co. v. Cephalon, Inc.*
  32 F. Supp. 3d 538 (E.D. Pa. 2014) ........................................................ 15
*Tredennick v. Bone*
  647 F. Supp. 2d 495 (W.D. Pa. 2007) ................................................ 17, 18
*Trooien v. Mansour*
  608 F.3d 1020 (8th Cir. 2010) ................................................................ 22
*Tuosto v. Philip Morris USA Inc.*
  No. 05-cv-9384, 2007 WL 2398507, at *9 (S.D.N.Y. Aug. 21, 2007) .......... 19

*Twombly Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007)...................................................................................................... passim
*Van Duzer v. U.S. Bank Nat. Ass'n*
   995 F. Supp. 2d 673 (S.D. Tex. 2014) ................................................................................. 16
*Wallner v. JPMorgan Chase Bank, N.A.*
   No. G043238, 2010 WL 5407360, at *5 n.7 (Cal. Ct. App. Dec. 30, 2010) ........................... 34
*Weisblatt v. Minn. Mut. Life Ins. Co.*
   4 F. Supp. 2d 371 (E.D. Pa. 1998) ...................................................................................... 22
*Williamson v. General Dynamics Corp.*
   208 F.3d 1144, n. 3 (9th Cir. 2000) .................................................................................... 16

## Statutes

28 U.S.C. §1407 ...................................................................................................................... 48
Cal. Civ. Proc. Code § 335 ....................................................................................................... 40
Mich. Comp. Laws § 600.2946 ................................................................................................. 29
Minn. Stat. § 541 ..................................................................................................................... 40
Miss. Code Ann. § 11-1-63 ....................................................................................................... 29
Mo. Rev. Stat. § 516.20 (2016) ................................................................................................. 40
N.D. Cent. Code § 28-01-16(5) ................................................................................................. 40

## Other Authorities

16 Am. Jur. § 50 ....................................................................................................................... 15
1A American Law of Torts § 5:26 .............................................................................................. 37
22 Am. Jur. Damages § 559 ...................................................................................................... 35
41 Am. Jur. 2d Husband and Wife §§ 219, 227 (2005) ............................................................. 43
57A Am. Jur. 2d Negligence § 71 .............................................................................................. 31
*Madden & Owen on Products Liability* § 16:1 (3rd ed. 2011) .................................................. 37
Restatement (Second) of Torts § 388 ....................................................................................... 32
Restatement (Second) of Torts § 551 ....................................................................................... 20
Restatement (Second) of Torts § 908 ....................................................................................... 35

# INTRODUCTION

Since 2012, when the plaintiffs filed their amended master complaint, their claims against Riddell have been garden-variety product liability design and warnings claims. In early 2017, however, the NFL's settlement went into effect, and the overwhelming majority of the plaintiffs in this litigation signed on to take part in and receive benefits from that settlement. Shortly thereafter, there was a change in the plaintiffs' leadership. With it came an entirely new approach with respect to the claims against Riddell, and a second amended master administrative complaint (SAMAC) with amended short-form complaints (SAMAC-SFCs).

No longer is this litigation against Riddell what it has been for the past six years. Instead, the plaintiffs' SAMAC spins a fanciful tale—spanning six decades or more—in which all seven "Riddell defendants" conspired alongside the NFL and its related entities, as well as the United States government, Honda, and other unnamed international corporations to deprive the plaintiffs of publicly available information. No longer do the plaintiffs seek to hold Riddell liable on product liability claims as a helmet manufacturer. Instead, their SAMAC seeks to impose liability for duties going far beyond that, and to hold Riddell liable alongside the NFL as joint perpetrators of a "massive" fraud and conspiracy they label as the "NFL/RIDDELL story." In short, the plaintiffs' SAMAC bears no resemblance to the plaintiffs' claims as they existed since 2012. It is, instead, an entirely different attack in which the plaintiffs have fused together their claims against the Riddell defendants and the NFL.

The plaintiffs' prior complaint—their amended master administrative complaint (AMAC)—was both procedurally and substantively deficient in its own right, and would have required dismissal when the time came for that. Their SAMAC, however, builds on those deficiencies and takes them to an extreme in a pleading that is wildly overreaching, hopelessly

1

vague, factually unsupported, contradictory, and facially time-barred. It should be dismissed in its entirety.

As with their AMAC, the plaintiffs' product liability claims and allegations against Riddell remain deficient. They still lack essential facts, like basic allegations identifying the products they used, what warnings and instructions they received, and when and how they were allegedly injured. And they still fail to explain how Riddell helmets were defective for the more than six decades that the players' careers spanned. But their product liability allegations comprise only a small fraction of their SAMAC, whereas the vast bulk of this new complaint is dedicated to their far-fetched conspiracy theory involving the NFL, Riddell, and many others. And unlike their AMAC, in which the claims against the NFL were discrete and segregated from those against Riddell— which led the Court at one time to express its view that the claims against Riddell were a "separate case"—the SAMAC now re-entangles the claims against the NFL with those against Riddell, in an attempt to perpetuate the same fraud and conspiracy claims the majority of these plaintiffs have already settled against the NFL.

In seeking leave to amend, the plaintiffs told the Court that their SAMAC merely "supplements" their AMAC "by providing additional factual support about the conduct being alleged and by describing the harm caused to each individual Plaintiff."[3] Their representation and characterization of their SAMAC is not accurate.

The SAMAC does far more than merely supplement their prior garden-variety product liability claims. In sensationalized fashion, the SAMAC proclaims to present "an unparalleled story in American sports history." Far from an attempt to comply with applicable pleading rules,

---

[3] (Mem. in Supp. of Pls.' Mot. for Leave to File SAMAC 5, ECF No. 7557-1.)

2

the SAMAC is merely an attempt to advance "some advocacy-based agenda,"[4] rife with innuendo, and devoid of factually supported and legally cognizable claims.

At the same time, despite its bloat, the SAMAC provides nothing in the way of factual support with respect to "each individual Plaintiff," as promised. And that is the very heart of the problem with the plaintiffs' SAMAC; despite its length and verbosity, it fails its most basic obligation—to provide the defendants with proper notice of each of the plaintiffs' claims and the factual bases for them against each defendant, as required by the Federal Rules. For example, the SAMAC devotes 163 paragraphs to the NFL and a multitude of non-parties, with no discernable connection to Riddell, other than by the conclusory label of "co-conspirator" or with the generic catch-all label of "defendants."

Most of the plaintiffs with remaining claims against Riddell haven't adopted the SAMAC's far-fetched fraud and conspiracy claims. In fact, while the SAMAC focuses almost entirely on the plaintiffs' concocted "NFL/RIDDELL story," fewer than a third of the plaintiffs—only 203 out of 772—checked boxes for those claims in their SAMAC-SFCs. Apparently, the SAMAC's drafters have failed to convince even a majority of plaintiffs to sign on to these imagined allegations. However, because of the plaintiffs' improper "shotgun pleading" method of having each successive count incorporate *all prior allegations and counts*, even those plaintiffs who did not check a box on their SAMAC-SFC for "fraud" (as most did not) nonetheless incorporated every single fraud allegation—as well as the entire "fraud" count—if, for example, they checked a box for strict liability or breach of warranty.[5] In other words, the operative complaint for a plaintiff pursuing only breach of warranty nonetheless includes hundreds of paragraphs of the alleged "NFL/Riddell" fraud and conspiracy story. As a result, it is impossible from the SAMAC and the

---

[4] *Evans v. Ariz. Cardinals Football Club, LLC*, No. 16-cv-1030, 2017 WL 2118316, at *2 (N.D. Cal. May 15, 2017).
[5] (*E.g.*, SAMAC ¶¶ 381, 395 ("Plaintiffs reallege each and every allegation set forth in all preceding paragraphs as fully set forth herein."), ECF No. 8927.)

SAMAC-SFCs to discern which facts—from among hundreds of paragraphs—any particular plaintiff is asserting in support of that plaintiff's individual claims.

As another example of how the plaintiffs' improper pleading deprives Riddell of fair notice, the SAMAC contains an entire section on the Riddell Revolution helmet,[6] first introduced in 2002, and a marketing campaign for it that first began in 2006.[7] The overwhelming majority of these former players—581 of 772—*ended* their playing careers before the Revolution was even available in 2002. Even more—657 of 772—ended their football careers before the Revolution's marketing campaign began in 2006. For the scores of players who ended their careers before 2002 and 2006, allegations concerning the Revolution and its marketing campaign are irrelevant. Yet, those allegations—along with the rest—are incorporated into every count by every plaintiff.

Material pleading deficiencies such as these—and many more—pervade the plaintiffs' complaint, infecting all their claims. As another example, because of their improper lumping together of all seven Riddell defendants as merely one collective entity, the plaintiffs fail to provide the required notice under Rule 8—much less, under the heightened pleading requirements of Rule 9(b)—as to which defendant supposedly did what to whom, and when, and how. This is despite the Court's acknowledgment that "certain Riddell Defendants may not have been in existence at the time some plaintiffs played in the NFL."[8] Similarly, the plaintiffs make no attempt to explain which Riddell defendants supposedly entered a conspiracy, when, and for what unlawful purpose. And again, their SAMAC-SFCs do nothing to remedy these deficiencies.

At this point, further amendment would be futile, as the overwhelming majority of the plaintiffs—674 out of 772—ended their football careers before 2006, more than four years before

---

[6] (SAMAC ¶¶ 269–92, ECF No. 8927.)
[7] The Revolution helmet is one of many different Riddell helmet models and the only helmet model the plaintiffs specially identify in their SAMAC. Still, none of them allege they wore a Revolution helmet.
[8] (Order n.2 (later vacated by Order, ECF No. 6740), ECF No. 6706.)

even the first of these lawsuits, leaving their claims time barred under nearly every state's statute of limitations. The fraud and conspiracy claims fare no better—the plaintiffs long ago abandoned these claims by dropping them from their AMAC in 2012. And the plaintiffs' attempts to invoke tolling principles fail for the same reason their claims in general fail—the lack of well-pled allegations to support any tolling theory. This pleading deficiency is unsurprising, though, given the admission that one of the plaintiffs' lead attorneys (representing more than half of the 772 plaintiffs) "was prepared and ready to file a lawsuit on behalf of some former players *in 2007*."[9]

On top of all these pleading deficiencies, the docket is further clogged with scores of filings by individuals who are not properly plaintiffs in this litigation, including 85 individuals who filed only SAMAC-SFCs against Riddell, but never filed any underlying original complaint. Such claims are not only procedurally impermissible, but they are time barred as well, and should be stricken. And on the flip side, there are many more who have abandoned their claims by not filing a SAMAC-SFC by the Court's December 4, 2017 deadline, requiring their dismissal as well.

In some circumstances, where the facts and claims are amenable, a master complaint along with short-form complaints may present a workable approach to coordinated litigation. However, the same rules that apply to an individual action apply to claims pursued in an MDL, and plaintiffs cannot circumvent federal pleading requirements simply because claims are coordinated in an MDL. Nor can they properly assert in mass fashion claims that require particularized and individualized allegations, such as fraud- and conspiracy-based claims.

Here, the plaintiffs have shown that they cannot properly plead their claims using a mass/master complaint vehicle. This was apparent with respect to their AMAC. It is even clearer with their SAMAC, by which they only move farther away from the rules. For a multitude of

---

[9] (Decl. of Bennet Omalu 3 (attached to expert report of William B. Rubenstein and stating that Jason Luckasevic, counsel for more than half of the plaintiffs proceeding against Riddell defendants "was prepared and ready to file a lawsuit on behalf of some former players in 2007"), ECF No. 9547-1 (emphasis added).)

reasons as shown below (as well as in Riddell's preemption motion), the Court should dismiss the plaintiffs' SAMAC and SAMAC-SFC, with prejudice. To the extent any plaintiffs' claims survive dismissal and they still wish to proceed against Riddell, the Court should require them to do so only by separate, individual, rules-compliant complaints.

### RELEVANT BACKGROUND

In June of 2012, the plaintiffs filed a master administrative complaint (MAC) against the NFL and Riddell.[10] Per Case Management Order-4, the MAC, along with any short-form complaint, would be the controlling pleading as to every plaintiff, superseding and replacing their original complaints, and traveling back with any plaintiffs whose claims survived following termination of these coordinated pretrial proceedings.[11]

The MAC largely comprised allegations directed at the NFL, including allegations that the league exerted improper influence over the game of football, mythologized and marketed violence through the media and NFL Films, and acquired yet concealed specialized knowledge regarding risks associated with repetitive head injuries.[12] As to Riddell, the MAC included comparatively few factual allegations—only 14 paragraphs, compared with 205 as to the NFL—with the majority of the Riddell facts merely recounting the history of its numerous safety innovations for football helmets.[13] The MAC asserted all product liability theories against Riddell (strict liability for design and manufacturing defects, failure to warn, and negligence), with the exception of one count combining conspiracy/fraud claims against "all Defendants." Yet that one count focused entirely on the NFL, with no mention of Riddell individually or with any particularity, and no facts showing Riddell engaged in a conspiracy or fraud.

---

[10] (MAC, ECF No. 83.)
[11] (CMO-4 ¶ 1(a), ECF No. 98.)
[12] (MAC ¶¶ 41–245, ECF No. 83.)
[13] (*Compare id.* ¶¶ 41–245, *with id.* ¶¶ 383–96.)

Before the plaintiffs filed the MAC, Riddell objected to the entire master complaint and SFC process, pointing out this process failed to provide information essential to evaluating the plaintiffs' individual claims, including the models of Riddell helmets worn, facts concerning what warnings they received, facts concerning their alleged injuries and causation, and other facts relevant to their alleged defect, proximate cause, choice-of-law, and time-bar determinations.[14] Notwithstanding these objections, the plaintiffs refused to amend this process.

Shortly after filing the MAC, the plaintiffs filed their amended master administrative complaint (AMAC) in July 2012.[15] The AMAC asserted the same general product liability claims against Riddell, but dropped Riddell from the fraud and conspiracy count, leaving that claim directed solely against the NFL. None of the plaintiffs in their SFCs—including those plaintiffs who joined this MDL after the AMAC was filed—wrote in fraud or conspiracy claims, even though they had the opportunity to do so.[16] Like the MAC before it, the AMAC (and accompanying SFCs) superseded and replaced all plaintiffs' original complaints.[17] The AMAC remained the operative pleading here for the next five years.

After filing the AMAC, the plaintiffs settled their claims against the NFL, including claims that the NFL concealed information about repetitive head injuries and misled "players, coaches, trainers, and the public," which the Court approved in April 2015.[18] The settlement became final

---

[14] Letter from Paul Cereghini, attorney for the Riddell defendants, to Sol Weiss, Christopher Seeger & Jeannine Kenney, attorneys for the plaintiffs (June 13, 2012) (on file with author).

[15] (ECF No. 2642.)

[16] As a vestige of the superseded MAC, two plaintiffs with fraud and conspiracy claims asserted in their SAMAC incorrectly used the original template that listed Count XVIII for "Civil Conspiracy/Fraudulent Concealment" as being against "All Defendants." But that template short form complaint was improper under the AMAC and did not make clear that the claims were against the Riddell defendants in any event. None of the other plaintiffs used that template or wrote in fraud or conspiracy claims.

[17] (ECF. No. 98 ¶ 1(a).)

[18] *In Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351 (E.D. Pa. 2015).

and began implementation in January 2017. All but eight of the plaintiffs pursuing claims against Riddell are parties to and are in line to receive benefits from the NFL settlement.[19]

Following the implementation of the NFL settlement, the Court convened an organizational conference with respect to "all claims against Riddell," during which it expressed the view that the "case of the plaintiffs versus Riddell" is "a separate case" from claims against the NFL.[20] The plaintiffs did not disagree. The Court then allowed the plaintiffs to seek leave to amend their complaint against Riddell. The plaintiffs did so, proposing a second amended master administrative complaint (SAMAC), which, they represented, merely "supplements the previous Amended Complaint's claims by providing additional factual support about the conduct being alleged and by describing the harm caused to each individual Plaintiff."[21]

Riddell opposed the proposed amendment on numerous grounds, including that, contrary to the plaintiffs' representations, the SAMAC did far more than merely "supplement" the prior complaint. As Riddell showed, the proposed SAMAC re-entangled Riddell with the NFL in a wide-ranging conspiracy and fraud theory spanning six decades, and also sought to expand the alleged duties and liability beyond that limited to the players' NFL careers, to include their entire lives. Instead of the meager 14 paragraphs of facts and 3 counts asserted against Riddell in the AMAC, the SAMAC included over 300 paragraphs of alleged facts along with 14 counts, including claims for conspiracy, fraud, fraudulent concealment, negligent misrepresentation, and others not found in the AMAC.[22] Riddell also showed that, contrary to the plaintiffs' representation, the SAMAC failed to provide any additional factual support as to individual

---

[19] (*See* App. 1 (listing all plaintiffs who filed SAMAC-SFCs in December 2017 who were previously plaintiffs in this MDL with claims against one or more Riddell defendant; with opt-out plaintiffs designated.)
[20] (ECF. No. 7561; 5/9/17 Conf. Audio File, ECF No. 7623.)
[21] (Mem. in Supp. of Pls.' Mot. for Leave to File SAMAC 5, ECF No. 7557-1.)
[22] (SAMAC, ECF No. 8927.)

plaintiffs.[23] Riddell further opposed the amendment, among other reasons, on grounds of futility since the fraud and conspiracy-based claims were time-barred because the plaintiffs had long since abandoned them.[24] The plaintiffs filed nothing in reply. The Court granted leave, allowing the plaintiffs to file their SAMAC (which they did), and any plaintiffs wishing to proceed with claims against any Riddell defendants to file SAMAC-SFCs.[25]

In all, 772 plaintiffs filed SAMAC-SFCs.[26] Even though their SAMAC is devoted largely to conspiracy, fraud, and misrepresentation theories, fewer than a third of the plaintiffs—203 out of 772—checked boxes for those counts in their SAMAC-SFCs.[27] All of the plaintiffs are pursuing at least one product liability claim through their SAMAC-SFCs—i.e., for strict liability/design defect, failure to warn, negligence, and/or breach of warranty.

By its October 24, 2017 order, the Court provided that Riddell could move to dismiss, including under Rules 8, 9(b), and 12, in addition to moving to dismiss on the grounds of preemption, which it does separately.[28] The Court has provided a separate process for "motions as to any individual, player-specific SFC-Riddell after resolution of motions filed against the SAMAC-Riddell." Per the Court's orders, this motion is directed at the pleading and other deficiencies as to the SAMAC together with the SAMAC-SFCs on a global or mass scale, whereas any individualized motions practice with respect to a particular plaintiff is reserved for later, if necessary after resolution of Riddell's two motions to dismiss.

---

[23] (Riddell's Mem. of Law in Opp'n to the Pls.' Mot. for Leave to File Second Am. Master Admin. Compl. and Am. Short Form Compl. Template Against the Riddell Defs. 22–24, ECF No. 7849.)

[24] (*See generally* ECF No. 7849)

[25] (ECF No. 8472 (emphasis added).)

[26] (*See* App. 1).)

[27] (*See* App. 2 (listing plaintiffs who filed SAMAC-SFC in December 2017 who were previously plaintiffs against one or more Riddell defendants and who checked off fraud, conspiracy, negligent misrepresentation, and negligent marketing in their SAMAC-SFCs).)

[28] (Order, ECF No. 8472.)

## ARGUMENT[29]

A Rule 12(b)(6) motion should be granted if the complaint lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[30] A complaint containing no more than "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement" is inadequate.[31] Plausibility requires that a plaintiff provide sufficient "factual content" for the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[32]

These standards apply equally to complaints filed in multi-district litigations. As courts recognize, the "creation of an MDL proceeding does not suspend the requirements of the Federal Rules of Civil Procedure, nor does it change or lower the requirements of those rules."[33]

The plaintiffs will likely argue that choice-of-law analyses are required at this stage for the Court to determine if the plaintiffs have stated viable claims—as they did in opposing the NFL's motion to dismiss. Any suggestion that the Riddell defendants must conduct complex choice-of-law analyses in a 45-page brief for 772 plaintiffs—whose claims are based on football play for teams across the country in at least 23 states over a span of 60 years[34]—is both unworkable and incorrect for multiple reasons.

---

[29] The Riddell defendants reserve all plaintiff-specific arguments and defenses, including with respect to loss of consortium plaintiffs, and will—at the appropriate time pursuant to this Court's 10/24/17 Order (ECF No. 8472)—address any claims that are allowed to proceed.

[30] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[31] *Id.*; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3rd Cir. 2011).

[32] *Iqbal*, 556 U.S. at 678.

[33] *In re Zofran (Ondansetron) Prods. Liab. Litig.*, 2017 WL 1458193, at *4–5 (D. Mass. Apr. 24, 2017). *See Ironworkers Local Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1359–60, 1370 (11th Cir. 2011) (following *Iqbal* and *Twombly* to affirm dismissal of MDL consolidated complaint); *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1206–07 (8th Cir. 2010), (following *Twombly* to dismiss MDL master complaint on preemption and Rule 8 grounds); *In re Bausch & Lomb Inc*., 2007 WL 3046682, at *7 (D.S.C. Oct. 11, 2007) (following *Twombly* to dismiss MDL class action complaint).

[34] (*See* App. 1.) The Riddell defendants do not argue by this statement that where the plaintiffs played is necessarily determinative of the law that governs all or any of their claims.

First, any such suggestion would ignore that the plaintiffs themselves prevent a full choice-of-law analysis at this time due to their failure to allege facts sufficient to do so—facts such as where they sustained their head injuries; where they purchased or obtained their helmets; where they resided at the time they sustained their injuries; where they saw or heard any alleged misrepresentations; among other facts. Since the outset of this litigation, Riddell has asked that the plaintiffs plead their claims to provide such facts. The plaintiffs have steadfastly refused. The plaintiffs should not be heard now to insist on an analysis that their deficient pleading prevents.

Second, a full choice-of-law analysis is unnecessary at this preliminary stage because it is apparent from the face of the plaintiffs' complaint—their SAMAC together with the SAMAC-SFC—that their claims fail under any state's laws.[35] They lack factual support on the fundamental elements of their claims, such as duty and causation. They are facially implausible. And under any potentially applicable statute of limitations, the overwhelming majority of the plaintiffs' claims are time-barred.

A choice-of-law analysis may be necessary at some point if any plaintiffs' claims are permitted to proceed (and the plaintiffs will need to assert player-specific facts to make those determinations). But that analysis is unnecessary now to discern that the plaintiffs' boilerplate allegations asserted in their SAMAC and individual SAMAC-SFCs fail to state claims under Rules 8 and 9(b), and that the Court should therefore dismiss them entirely.

---

[35] *See, e.g.*, *Duerson v. Nat'l Football League, Inc.*, No. 12 C 2513, 2012 WL 1658353, at *3 (N.D. Ill. May 11, 2012) (recognizing that a choice-of-law determination was not necessary because, for example, "a negligence claim in all states requires, in some form, the existence of a duty, the breach of that duty, causation, and damages.") (citations omitted); *Evans v. Arizona Cardinals Football Club, LLC*, 231 F. Supp. 3d 342, 351 (N.D. Cal. 2017) (deciding motion to dismiss on state law claims without conducting choice of law analysis because while at a later stage there would be significant choice of law questions, the court did "not need to resolve such questions to decide whether the amended complaint adequately plead[ed] the elements in question with the required particularity"); *cf. Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*, 2010 WL 338219, at *8 (Del. Ch. Jan. 29, 2010) (declining to conduct any choice of law analysis where the laws of potentially relevant states were generally substantially the same as they related to the issues in the case (even though they differed in some respects) and because the laws "all would produce the same decision no matter which state's law [was] applied . . . a choice of law analysis would be superfluous").

I.     **The plaintiffs fail to adequately allege a conspiracy between any Riddell defendant and the NFL or any other entity, as their claim is facially implausible and factually unsupported.**

The plaintiffs attempt to hold Riddell liable for the same conduct they long ago asserted against solely the NFL—a defendant that all but eight of these plaintiffs have settled their claims against—by now charging that Riddell fraudulently conspired with the NFL (and many others) over the course of 60 years to withhold publicly available information from the plaintiffs, the medical community, and the public at large. This far-fetched conspiracy claim lacks sufficient factual support, is facially implausible, and is prolix and contradictory. Additionally, their conspiracy claim fails because the plaintiffs don't adequately allege any actionable underlying claim. Moreover, as explained in section VIII, the plaintiffs' conspiracy claims (along with their fraud-based claims) are time-barred as they don't relate back.

A claim of civil conspiracy generally requires allegations that two or more persons agreed to commit an unlawful act, or to commit a lawful act by unlawful means.[36] Civil conspiracy claims fail where a plaintiff alleges only conclusory, vague, or general allegations,[37] such as conclusory allegations of an agreement that fail to identify the details surrounding the alleged agreement.[38] Rather, a conspiracy claim requires the plaintiff to "assert facts from which a conspiratorial agreement can be inferred."[39] As the Supreme Court explained in *Twombly Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Iqbal*, such a claim requires "enough factual matter (taken as true) to suggest that an agreement was made, in other words, plausible grounds to infer an

---

[36] *See, e.g.*, 16 Am. Jur. 2d Conspiracy § 50; *Cordell Consultant, Inc. Money Purchase Plan & Trust v. Abbott*, 561 F. App'x 882, 886 (11th Cir. 2014) (discussing conspiracy elements under Florida law).
[37] *DDR Const. Servs.*, 770 F. Supp. 2d 627, 659 (S.D.N.Y. 2011); *see also Credit Ins. Consultants, Inc. v. Gerling Glob. Reinsurance Corp. of Am.*, 210 F. Supp. 2d 980, 986 (N.D. Ill. 2002) ("Mere conclusory allegations of a combination of acts as a conspiracy is not enough to state a claim for conspiracy").
[38] *Twombly*, 550 U.S. at 556–57.
[39] *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (citations omitted).

agreement."[40] A district court should dismiss such a claim where the conspiracy allegations are implausible on their face.[41]

On its face, their wild theory of a sweeping, 60-year conspiracy between Riddell, the NFL, the federal government, Honda and other international corporations,[42] and others is implausible.[43] Indeed, the plaintiffs rely exclusively on conclusory allegations and labels, on unsupported innuendo, and on mere attorney argument to construct their absurd fallacy. And instead of well-pled facts with support, the plaintiffs' conspiracy allegations span 63 pages, laying out an incoherent web of accusations aimed largely at the NFL and replete with allegations that are irrelevant to any Riddell defendant.[44] This is insufficient under federal pleading standards.[45]

Additionally, and putting aside the conclusory and nonspecific allegations, the plaintiffs provide no facts to plausibly support that Riddell entered into an agreement for any unlawful purpose, or for a lawful purpose by unlawful means, as required. Instead, the plaintiffs allege things like: Riddell "[a]greed with NFL P to an exclusive marketing agreement making the 'official helmet of the NFL' the RIDDELL-branded helmet, and requiring as part of this deal, that an individual would ensure all equipment under this deal to be the safest possible";[46] "[a]greed with

---

[40] *Id.* (internal quotation marks omitted).

[41] *See Twombly*, 550 U.S. 544; *see also Scarnati v. Brentwood Borough Police Dept.*, 2013 WL 5806472 (W.D. Pa. Oct. 29, 2013) (dismissing complaint because it rested on a highly implausible theory of conspiracy); *Hoffman v. Lincoln Gen. Ins.*, 303 F. App'x 77, 78 (3d Cir. 2008) (dismissing conspiracy claim for incoherency).

[42] (SAMAC ¶ 60, ECF No. 8927.)

[43] *See Bush v. Adams*, No. 07-cv-4936, 2009 WL 197550, at *6 (E.D. Pa. Jan. 27, 2009) (dismissing conspiracy allegations as "implausible").

[44] (SAMAC 15–78, ECF No. 8927.)

[45] *See, e.g.*, *Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 860 (E.D. Pa. 2017) (recognizing that the Third Circuit has criticized the "shotgun pleading approach," which among other things includes complaints that are conclusory, vague, and replete with immaterial facts; and dismissing the plaintiff's complaint after finding that it was a "shotgun pleading" in violation of Rule 8(a)(2)) (citing *Hyson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1031 n.13 (3d Cir. 1988)); *Merritt v. Countrywide Fin. Corp.*, No. 09-CV-01179-BLF, 2015 WL 5542992, at *11 (N.D. Cal. Sept. 17, 2015) (explaining that complaints containing allegations that are "argumentative, prolix, replete with redundancy, and largely irrelevant are disfavored because they unfairly burden litigants and judges with the task of identifying a plaintiff's claim").

[46] (SAMAC 8, ECF No. 8927.)

NFL and NFL P to participate in and fund the MTBI Committee";[47] "agree[d] around April 1989 to provide helmets sufficient to protect from the risk of injury;"[48] "[i]n return for providing free and discounted helmets, pads and jerseys to each NFL team, RIDDELL received the exclusive right to display its logo during NFL games on the helmets of those players who chose to wear the RIDDELL brand."[49] None of these allegations plausibly support an agreement entered into for any unlawful purpose, or through an unlawful means. At most, they recount a mere business relationship between one or more of the defendants and the NFL. That coupled with mere legal conclusions of a "conspiracy" is not enough to state a claim for conspiracy under any state's laws.[50]

Moreover, the plaintiffs provide no facts to establish that an actual agreement was made. There are no allegations in their SAMAC about which of the seven Riddell defendants allegedly entered into the conspiracy, much less which individuals took part in forming the conspiracy, where the alleged conspiratorial agreement was entered into, how the agreement was entered into, or any details about acts the parties allegedly agreed to as part of the supposed conspiracy. The lack of facts as to the formation of this alleged conspiracy is even more glaring considering the 60-year sweep of the plaintiffs' theory, as well as the Court's recognition that "certain Riddell Defendants may not have been in existence at the time some plaintiffs played in the NFL."[51] As courts have recognized, "mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy" pleading standards for a conspiracy claim.[52] Yet, these buzzwords are all the plaintiffs provide.

---

[47] (*Id.*)
[48] (*Id.* at 16.)
[49] (*Id.* ¶ 159.)
[50] *See, e.g.*, *In re Wyse Tech. Sec. Litig.*, 744 F. Supp. 207, 208 (N.D. Cal. 1990) ("By alleging only neutral facts and conclusory allegations, plaintiffs have failed to disclose any basis for concluding that defendants violated any securities law, committed any fraud, or conspired to commit any fraud.")
[51] (Order n.2 (holding vacated by Order, ECF No. 6740), ECF No. 6706.)
[52] *Sung Tran v. Delavau, LLC*, No. 07-cv-3550, 2008 WL 2051992, at *10 (E.D. Pa. 2008).

14

The plaintiffs' conspiracy claim is further deficient because the plaintiffs fail to state a viable underlying claim.[53] They base their conspiracy claim on their claims of fraud and fraudulent concealment, but as explained in the sections below, their SAMAC falls well short of stating a claim for those or any other torts. Thus, their dependent conspiracy claim likewise fails.

The plaintiffs' conspiracy claim presents nothing but mere legal conclusions and labels. As the Supreme Court has stated, that is insufficient.[54] The Court should therefore dismiss the plaintiffs' conspiracy claim, as well as strike—as immaterial and superfluous under Rule 12(f)— all allegations directed to this non-existent conspiracy and this unsupported claim.

## II.     The plaintiffs' fraud-based claims fail because they lack the requisite factual support and particularity.

Rule 9(b) requires that, in addition to pleading the core elements, a plaintiff must plead fraud-based claims with a heightened level of particularity.[55] This requirement applies to MDL proceedings just as it does in any action alleging fraud.[56] Here, across all elements, the plaintiffs fail to plead their fraud-based claims with the requisite particularity, requiring their dismissal. They don't allege facts showing who said what to whom, when, or by what means. They lump plaintiffs together, defendants together, and the alleged "co-conspirators" together. They don't allege facts to support reliance or causation. On every level, the SAMAC fails state facts plausibly supporting any fraud-based claims. This failure requires dismissal of these claims.

---

[53] *See, e.g.*, *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999) ("[W]e are unaware of any jurisdiction that recognizes civil conspiracy as a cause of action requiring no separate tortious conduct."); 16 Am. Jur. 2d Conspiracy § 50 ("[I]f the acts alleged to constitute the underlying wrong provide no cause of action, then neither is there a cause of action for the conspiracy itself.").

[54] *See Iqbal*, 556 U.S. 662; *Twombly*, 550 U.S. 544.

[55] Fed. R. Civ. P. 9 (b); *Travelers Indem. Co. v. Cephalon, Inc.*, 32 F. Supp. 3d 538, 550 (E.D. Pa. 2014).

[56] *See, e.g.*, *In re McNeil Consumer Healthcare, Mkt. & Sales Practices Litig.*, No. 2:10-md-02190 2011 WL 2802854 (E.D. Pa. July 15, 2011) (dismissing consolidated complaint in its entirety for lack of standing and noting that fraud claims were not pled with particularity); *In re Gen. Motors Corp.*, 966 F. Supp. at 1534–35 (holding that allegations of fraud in master complaint were insufficient under Rule 9(b)); *In re Ford Motor Co., Speed Control Deactivation Switch Prods. Liab. Litig.*, No. 05-md-01718, 2007 WL 2421480 (E.D. Mich. Aug. 24, 2007) (granting motion to dismiss claims in master complaint, including fraud claims).

### A.       The plaintiffs fail to state a claim for fraud or fraudulent concealment.

The required elements for a claim of fraud generally include a false representation of material fact that was known by the defendant to be false, a defendant's intention to induce the plaintiff, justifiable reliance, and causation.[57] The required elements of a claim for fraudulent concealment generally include a legal duty to disclose a material fact, that the plaintiff could not discover without defendant disclosing it, intentional concealment, and causation.[58]

The Rule 9(b) particularity required as to the circumstances constituting alleged fraud include pleading facts to show "the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."[59] Additionally, a plaintiff must include "who made a misrepresentation to whom and the general content of the misrepresentation."[60]

For fraud claims premised on concealment, a plaintiff must allege what the omissions were, the persons responsible for the failure to disclose, the context of the omissions and the manner in which they misled the plaintiff, and what the defendant obtained through the fraud.[61] The purpose of these heightened pleading requirements for claims alleging fraud is to ensure defendants have enough information to formulate a defense, protect defendants from frivolous suits, eliminate fraud

---

[57] *See, e.g.*, *In re Hai Lecong*, 679 F. App'x 526, 528–29 (9th Cir. 2017) (discussing fraud under California law); *Mellon Bank Corp. v. First Union Real Estate Equity & Mortg. Investments*, 951 F.2d 1399, 1409 (3d Cir. 1991) (same under Pennslyvania law); *Van Duzer v. U.S. Bank Nat. Ass'n*, 995 F. Supp. 2d 673, 693–94 (S.D. Tex. 2014) (same, Texas); *Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1027 (11th Cir. 2003) (same, Georgia).

[58] *See, e.g.*, *Williamson v. General Dynamics Corp.*, 208 F.3d 1144, n. 3 (9th Cir. 2000) (discussing elements under California law); *Myre v. Meletio*, 307 S.W.3d 839, 843 (Tex. Ct. App. 2010) (discussing fraudulent concealment under Texas law and explaining that "[f]raud by omission is a subcategory of fraud because the omission or non disclosure may be as misleading as a positive misrepresentation of fact where a party has a duty to disclose"); *Core Commc'ns, Inc. v. Verizon Maryland LLC*, 744 F.3d 310, 324 (4th Cir. 2014) (discussing the elements under Maryland law).

[59] *Frederico v. Home Depo*, 507 F.3d 188, 200 (3d Cir. 2007).

[60] *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004), *abrogated on other grounds by*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

[61] *E.g.*, *In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1536 (E.D. Mo. 1997) (citing *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 101 S.D.N.Y. 1997)).

actions in which all facts are learned after discovery, and protect defendants from harm to their goodwill and reputation.[62]

Additionally, where "allegations of fraud are brought against multiple defendants, the complaint must plead with particularity . . . the [specific] allegations of fraud applicable to each defendant."[63] "A complaint that 'lumps' together numerous defendants does not provide sufficient notice of which defendants" allegedly engaged in the fraudulent conduct.[64]

The plaintiffs' fraud-based claims fail on every score, requiring their dismissal.

First, the claims lack sufficient facts to support the "who, what, where, how, and why" of their fraud allegations as required under Rule 9(b). They don't identify with any specificity any misrepresentations or fraudulent statements made by any particular Riddell defendant. Instead, the plaintiffs make only broad and conclusory assertions, such as that the Riddell defendants—without identifying which one(s)—"misrepresent[ed] material information from players and the general public about [a] link between repetitive head trauma and chronic brain damage,"[65] and, even more vaguely, that "[d]efendants and co-conspirators concealed and downplayed the true risks associated with MTBI."[66] Nowhere do they explain what particular misstatements or omissions were made to the entire group of hundreds of plaintiffs whose careers spanned from 1968 to 2014. Their mere conclusory assertions of misrepresentation and omission are insufficient.[67] And to the

---

[62] *E.g.*, *Belville v. Ford Motor Co.*, 13 F. Supp. 3d 528, 543 (S.D. W. Va. 2014) (citations omitted).

[63] *Donachy v. Intrawest U.S. Holdings, Inc.*, No. 10-4038 (RMB/KMW), 2012 WL 869007, at *2 (D.N.J. Mar. 14, 2012).

[64] *Tredennick v. Bone*, 647 F. Supp. 2d 495, 501 (W.D. Pa. 2007), *aff'd*, 323 F. App'x 103 (3d Cir. 2008); *see also MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005) ("Where multiple defendants are involved, the complaint must plead with particularity by specifying the allegations of fraud applying to each defendant.") (citing *Cinalli v. Kane*, 191 F. Supp. 2d 601, 609 (E.D. Pa. 2002)); *Arnlund v. Smith*, 210 F. Supp. 2d 755, 760 (E.D. Va. 2002) ("A plaintiff must identify, with particularity, each defendant's culpable conduct; defendants cannot be grouped together without specification of which defendant committed which wrong (internal quotations and punctuation omitted).)

[65] (SAMAC ¶ 59, ECF No. 8927)

[66] (*Id.* ¶ 71.)

[67] *See, e.g.*, *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-md-2087, 2010 WL 2232151, at *4 (S.D. Cal. June 3, 2010) (dismissing of fraudulent concealment claim under 12(b)(6) and 9(b) based on fact that plaintiffs' allegations were "conclusory rather than factual statements").

extent the plaintiffs rely on marketing statements made as to the Revolution helmet to assert fraud—which is unclear from their SAMAC—the plaintiffs don't allege that any of them were exposed to or relied on those representations, that they wore a Revolution helmet, nor anything else to connect any such statements to their claimed injuries.[68]

The plaintiffs also don't identify which of the seven Riddell defendants made the alleged statements or concealed any information, much less identify specific individuals responsible for the alleged statement or omissions. They similarly don't state when or where any alleged misrepresentations were made, or in what form.

Here, the missing "who, what, when, where, and how" facts are all the more critical given that the plaintiffs' allegations and the NFL playing careers of the plaintiffs asserting conspiracy span over six decades.[69] When and how an alleged misrepresentation was made by a Riddell defendant, or when and how a piece of known information was allegedly concealed, is essential to determining whether any particular plaintiff has a cause of action.

The plaintiffs' approach of lumping all seven Riddell defendants together as one entity only amplifies the impropriety and deficiency of their fraud claims under Rule 9(b).[70] Indeed, as Riddell has already shown,[71] as the Court acknowledged,[72] many of the defendants did not exist until the 2000's—one of them (EB Sports Corp.), not until 2006, after the playing careers had ended for the vast majority of the former players alleging fraud (141 of 203).

---

[68] *See, e.g., Belville*, 13 F. Supp. 3d at 546  (dismissing fraud claim and pointing out that while the plaintiffs quoted various promotional materials, they never said that "they saw, read, or heard these particular statements").

[69] (*See* App. 2 (showing that the 203 player-plaintiffs bringing fraud and fraudulent concealment claims allege that their careers spanned from 1968 to 2014).)

[70] *Tredennick*, 647 F. Supp. 2d at 501  ("[W]here multiple defendants are involved, the complaint should inform each defendant of the nature of his alleged participation in the fraud."); *see also In re McNeil*, 2011 WL 2802854, at *18–19  (explaining that the plaintiffs allegations which often refer to the defendants interchangeably lack the requisite specificity to satisfy heightened pleading requirements).

[71] (*See* Riddell defendants' request for judicial notice filed in support of its motion to sever (ECF No. 3594) and related attachments.)

[72] (Order n.2 (ruling vacated by Order, ECF No. 6740), ECF No. 6706.)

Second, with respect to their fraudulent concealment claims, the plaintiffs also don't plead facts to support that any Riddell defendant owed them a duty to disclose.[73] The plaintiffs hinge their concealment claims on a duty to warn about dangers inherent in the game of football and about the medical consequences of repetitive head trauma. But the plaintiffs allege no facts to establish that Riddell, Inc., as a helmet manufacturer, owed them any duty to warn about the inherent dangers from playing football, much less that any of the other Riddell defendants owed them such duty.[74] Further, the plaintiffs don't allege facts to support that any of the entities they lump together as "defendants" owed them a duty to provide general medical advice. As courts have recognized, even as to a product manufacturer like Riddell, Inc, a duty to warn generally is limited to "the product's dangerous propensities."[75]

Third, the plaintiffs also don't plead reliance adequately. They state only generally and conclusorily that they "reasonably relied" and "justifiably relied" on the alleged statements and omissions.[76] They fail, however, to identify any supposed statements on which they supposedly relied, to state when they heard and relied on those statements, or to provide any facts as to the circumstances under which they were exposed to any alleged misrepresentations.[77] Their failure

---

[73] *See, e.g.*, *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993) (explaining that a duty to disclose as necessary for a fraud by concealment claim, will not be implied unless a disclosure is necessary to make a previous statement true or the parties share a special relationship); Restatement (Second) of Torts § 551 (explaining that disclosure is only required where defendant knows information whose nondisclosure will make earlier partial or ambiguous statement of facts to become misleading or where defendant is in a fiduciary or special relationship with plaintiff); *Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 536 F. App'x 558, 568 (6th Cir. 2013) ("Unlike a fraudulent- misrepresentation claim, a fraudulent-concealment (fraud by omission) claim is grounded in a duty to disclose." (internal quotation marks and citation omitted).)

[74] *See Lister v. Bill Kelley Athletic, Inc.*, 137 Ill. App. 3d 829, 835 (1985) (explaining that a football helmet manufacturer does not have a duty to warn about "inherent dangers" from playing football because football helmets are "merely a type of protective equipment" rather than products "which themselves each caused the injury complained of").

[75] *See, e.g.*, *Pluto v. Searle Labs.*, 294 Ill. App. 3d 393, 396 (1997) (explaining a manufacturer's duty to warn under Illinois law); *O'Neil v. Crane Co.*, 53 Cal. 4th 335, 351 (2012) (explaining that under California law a manufacturer generally has a duty to warn consumers about the hazards inherent in their own products, and not from use of the products they manufacture generally).

[76] (*E.g.*, SAMAC ¶¶ 192, 334, 368, 369, ECF No. 8927.)

[77] *See, e.g.*, *Tuosto v. Philip Morris USA Inc.*, No. 05-cv-9384, 2007 WL 2398507, at *9 (S.D.N.Y. Aug. 21, 2007) (dismissing fraud claim for failure to adequately plead reliance); *Herrington v. Johnson & Johnson Consumer Cos.*,

to provide this information leaves their reliance assertions as nothing more than unsupported legal conclusions, dooming both their fraud and fraudulent concealment claims.[78]

The plaintiffs conclusorily assert that, in "reliance on the misrepresentations made by Defendants, Plaintiffs were induced into using the helmets."[79] In addition to failing to identify the particular statements on which any individual plaintiff over this period spanning several decades saw or relied on, the plaintiffs also don't identify what helmets they were supposedly induced into using. Again, this missing factual support is critical, given that their claims span decades and, by their own complaint, numerous materially different models of helmet designs, with different features, and different iterations of warnings.[80]

Further, the plaintiffs' statement that they "would have taken protective measures or sought the diagnosis and treatment they needed"[81] had they known that there was a "link between concussions and brain injury" is nothing more than another legal conclusion, devoid of plausible factual support and insufficient to plead reliance. They provide no explanation of what "protective measures" they would have taken or how they would have done anything differently with respect to medical treatment or anything else. This is insufficient to plead justifiable reliance.[82]

---

No. C 09-1597, 2010 WL 3448531, at *11 (N.D. Cal. Sept. 1, 2010) (finding that plaintiffs' misrepresentation claims failed because the plaintiffs did not plead "the circumstances in which they were exposed to the alleged misrepresentations upon which they relied"); *Belville*, 13 F. Supp. 3d at 544–46  (dismissing plaintiffs' fraud claims because plaintiffs failed to state that they actually saw, heard, or relied on any of the reports or statements made in deciding to purchase their vehicle; and the plaintiffs assertion "they were influenced by general themes of safety and reliability . . . is insufficient under Rule 9(b)").

[78] *See, e.g.*, *In re General Motors Corp.*, 966 F. Supp. at 1536 (finding that the plaintiffs "failed to plead their claims for fraudulent concealment with the specificity required by Rule 9(b)" in part because they failed to explain "if, when, where or how they read any of [the defendant's] representations").

[79] (SAMAC ¶ 360, ECF No. 8927.)

[80] (*Id.* ¶ 390; AMAC ¶¶ 384–86 (discussing the evolution of the helmet and acknowledging the significant changes in helmet design since the early 1950s), ECF No. 2642.)

[81] (*Id.* ¶ 362.)

[82] *See Tiberius Capital, LLC v. PetroSearch Energy Corp.*, No. 09-cv-10270, 2011 WL 1334839, at *6 (S.D.N.Y. Mar. 31, 2011) (dismissing because the plaintiff "repeatedly asserts that it relied on Defendants' misrepresentations, but it never alleges what action it would not have engaged in or forwent but for the misrepresentations").

Fourth, in addition to all the other missing allegations required under Rule 9(b) for their fraud-based claims, the plaintiffs also don't adequately state that any alleged misrepresentations or omissions caused their alleged injuries. While the plaintiffs claim that they were "induced" by the defendants' misrepresentations or "misrepresentations by omission" into wearing helmets, they don't explain how that caused their injuries. In other words, they don't explain what they would have done differently if they had known the allegedly omitted information, or how that would have prevented their injuries.[83] The plaintiffs' lack of particularity is only amplified by the fact that they have pled 60 years' worth of alleged conduct, but without attempting to connect any particular conduct to any particular plaintiffs. As a result, there are scores of allegations of conduct occurring long after certain players retired, as well as allegations of conduct predating players' NFL careers—in some case, even their birth—by years and even decades. For example, to the extent any plaintiffs intend to rely on representations concerning the Revolution helmet—which none of them allege they wore, and none of them allege they relied on—they fail to explain how those representations could possibly be relevant to the 108 of the 203 former players alleging fraud who ended their playing careers *before* the Revolution went on the market in 2002, or to the 141 former players who ended their careers before the Revolution marketing campaign began in 2006.[84]

That the plaintiffs have attempted to use a master complaint and that this is an MDL proceeding doesn't excuse the plaintiffs' failure to plead their fraud-based claims as required.[85] If not in the master complaint, plaintiff-specific allegations relevant to their fraud claims should have gone in their SAMAC-SFCS. As one court explained in a product liability MDL considering fraud

---

[83] *See Egli v. Strimel*, No. 14-cv-6204, 2015 WL 5093048, at *6 (E.D. Pa. Aug. 28, 2015) ("To withstand a Rule 12(b)(6) motion to dismiss a fraud claim brought under Pennsylvania law, a plaintiff must allege . . . the resulting injury was proximately caused by the reliance.")
[84] (*See* App. 2 (showing plaintiffs with fraud claims as to former players whose careers ended in 2001 or earlier); SAMAC ¶ 284 (discussing marketing campaign for the Riddell Revolution beginning in 2006).)
[85] *See, e.g.*, *In re Gen. Motors Corp.*, 966 F. Supp. at 1534–35.

claims at the pleading stage, while a master complaint cannot be expected to "include every case-specific detail . . . any particularized allegation of fraud applicable only as to an individual"—for example, a claim involving specific misrepresentations—"should normally be set forth in the individual short form complaint."[86] The plaintiffs' failure to include any specific facts relevant to their fraud claims —either in their SAMAC or their SAMAC-SFCs—is fatal to their claims.

### B.    The negligent misrepresentation claim is insufficient as a matter of law.

Generally, a claim for negligent misrepresentation requires a misrepresentation of material fact, made under circumstances in which the misrepresenting party should have known its falsity, with an intent to induce another to act, and which resulted in injury to a party acting in justifiable reliance on the misrepresentation.[87] Where recognized, negligent misrepresentation claims based on omissions or non-disclosures require an affirmative duty to disclose, such as a fiduciary or confidential relationship between the parties.[88]

Courts often apply Rule 9(b) to negligent misrepresentation claims where the heart of the claim is really fraud.[89] Even where courts decline to apply Rule 9(b), they nonetheless require plaintiffs to plead negligent misrepresentation with a "degree of specificity." [90] While the Court

---

[86] *In re Zofran (Ondansetron) Prods. Liab. Litig.*, No. 1:15-md-2657-FDS, 2017 WL 1458193, at *6 (D. Mass. Apr. 24, 2017).

[87] *Smith v. Lincoln Ben. Life Co.*, 395 F. App'x 821, 824 (3d Cir. 2010) (laying out common law elements of negligent misrepresentation under Pennsylvania law); *see also Foster v. Am. Home Prods. Corp.*, 29 F.3d 165, 171 (4th Cir. 1994) (stating elements under Maryland law).

[88] *See, e.g.*, *Pooshs v. Phillip Morris USA, Inc.*, No. C 04-1221, 2013 WL 2252471, at *9 (N.D. Cal. May 22, 2013) (explaining that under California law in general the tort of negligent misrepresentation only extends to affirmative statements and that a claim for negligent concealment requires a special relationship between the parties creating a duty to disclose); *Weisblatt v. Minn. Mut. Life Ins. Co.*, 4 F. Supp. 2d 371, 380 (E.D. Pa. 1998) (discussing duty to speak for negligent misrepresentation claim under Pennsylvania law).

[89] *See, e.g.*, *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 583 (2d Cir. 2005); *Trooien v. Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010); *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985) (noting that Rule 9(b) applies to all cases in "in which fraud lies at the core of the action"); *Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 351 F. Supp. 2d 436, 447 (M.D.N.C. 2005); *Giannaris v. Cheng*, 219 F. Supp. 2d 687, 694-95 (D. Md. 2002).

[90] *E.g.*, *Flord v. Brown Williamson Tobacco Corp.*, 159 F. Supp. 2d 823, 834 (E.D. Pa. 2001) (dismissing negligent misrepresentation claim for failure to pled allegations concerning the specific misrepresentations); *Black v. Cmty. Educ. Cntrs., Inc.*, No. 13-6102, 2014 WL 859313, at *6 & n.6 (dismissing the plaintiff's negligent misrepresentation claim because the plaintiff failed to allege the instances of mischaracterization with specificity and failed to allege she relied on any misrepresentations to her detriment).

should require Rule 9(b) particularity given that the crux of the plaintiffs' SAMAC is alleged fraud, the plaintiffs' complaint fails regardless, as they haven't pled sufficient facts to support the elements of negligent misrepresentation with any level of specificity.

As explained above with respect to the fraud claims, the plaintiffs provide no facts plausibly supporting the essential elements of their negligent misrepresentation claim, including identifying the specific misrepresentations or omissions at issue, the facts showing justifiable reliance, or causation with respect to the plaintiffs individually. And with respect to the claims based on concealment, the plaintiffs provide no facts plausibly supporting that any Riddell defendant owed any of them a duty to disclose anything.

Their negligent misrepresentation claim likewise suffers from the same flaws as in their other claims, such as the lack of any facts to explain how conduct with respect to, for example, the Revolution helmet sold in 2002 and marketing in 2006 could possibly be relevant to former players whose careers ended—in some cases, decades—before those events.[91] As with their other claims, the plaintiffs offer insufficient facts, and instead only generic conclusions and labels.

## III.   The plaintiffs fail to provide any of the most basic yet essential information to support any of their product liability claims, thereby requiring their dismissal as well.

At the most fundamental level, the plaintiffs' product liability claims fail because nowhere—neither in the SAMAC, nor the SAMAC-SFCs—have the plaintiffs provided even the most basic information essential to such a claim: what helmet model(s) they used, what warnings they received, what the defect was in their particular helmet or warning, how the product caused their injury, and what injuries they allegedly sustained. Some of these plaintiffs' claims have been pending for over six years, yet even with this third version of their complaint, the plaintiffs still

---

[91] One-hundred-and-eight of the 203 player-plaintiffs bringing negligent misrepresentation claims ended their careers before 2002 as alleged in their SAMAC SFCs. (*See* App. 2.)

fail to provide this most basic yet essential information, and instead speak only in the most vague and generic terms.

This pleading failure is exacerbated by the mass-fashion in which the plaintiffs' plead their claims in the SAMAC—with allegations spanning decades of different helmet designs and warnings—as well as the improper SAMAC-SFC by which players merely check a box to say they wore an unidentified model of Riddell helmet at some unstated point in time during their NFL careers, and now have undisclosed symptoms that they attribute to head injuries. The law requires more, and it requires dismissal the product liability claims.

A.    **The plaintiffs' design defect and warranty claims fail as the SAMAC lacks facts to support the existence of a defect for every helmet model over a period of 62 years or how any supposed defect caused a plaintiff's injury.**

While all but five of the plaintiffs filing SAMAC SFCs are claiming strict liability for design defect,[92] and 196 of them assert breach of implied warranty, none of them identify any particular helmet model(s) these former players supposedly wore during their NFL careers. Instead, in their SAMAC-SFCs, the plaintiffs simply checked a box stating that the former player "wore one or more helmets designed and/or manufactured by the Riddell Defendants during one or more years Plaintiff played in the NFL and/or AFL."[93] This lack of one of the most basic facts in a product liability case—i.e., product identification—is all the more glaring considering the

---

[92] Because the breach of implied warranty claims require factual allegations to support many of the same elements as design defect—like defect and causation—they are addressed generally in this section. *See, e.g.*, *Reese v. Ford Motor Co.*, 499 F. App'x 163, 166 (3d Cir. 2012) ("The elements that prove a breach of the implied warranty of merchantability are essentially the same as those to recover on a strict products liability claim.") The plaintiffs' breach of warranty claims are further deficient given that the plaintiffs fail to assert any facts to establish under what states' laws they bring their claims, among other reasons. *See, e.g.*, *Rutherford v. FIA Card Servs., N.A.*, No. CV 11-04433 DDP MANX, 2012 WL 993885, at *2 (C.D. Cal. Mar. 23, 2012) (dismissing complaint and requiring repleading where "the omission of certain facts from Plaintiff's complaint renders it difficult for this court to make a choice of law determination"); *Carpenter v. Sikorsky Aircraft Corp.*, 101 F. Supp. 3d 911, 929 (C.D. Cal. 2015) (granting motion to dismiss and requiring the plaintiffs to "plead with greater specificity the alleged wrongful conduct by each of the defendants" in conformity with "the substantive law that Plaintiffs contend applies").
[93] (SAMAC-SFC template ¶15, ECF No. 7762-3.)

temporal scope of the plaintiffs' SAMAC (over 60 years), and the fact that these hundreds of players obviously wore very different models of Riddell helmet over that expansive time period.[94]

Instead of identifying the helmets they wore, consistent with their overall pleading approach, the plaintiffs lump together six decades worth of helmet designs, and refer to them only generally, offering mere conclusory assertions that their helmets were all defective and unreasonably dangerous because they did not provide "adequate protection against the foreseeable risk of concussive brain injury."[95] This is insufficient.[96]

Attempting to assert a claim for product defect without identifying the allegedly defective product is inherently deficient. The plaintiffs then compound their error by directly undercutting their own defect theory. They contend that "NO HELMET CAN PREVENT A CONCUSSION," and that helmets "are ineffective in decreasing the rotational forces that result in MTBI [mild traumatic brain injury] and/or subclinical MTBI and/or diffuse brain injury."[97] Yet they don't explain how, if *no* helmet can prevent a concussion or MTBI, a helmet design can be defective for failing to protect against a concussive injury or MTBI. Thus, on their face, the plaintiffs' defect claims are implausible, confusing, and contradictory, warranting dismissal on this ground alone.[98]

---

[94] (*See, e.g*, AMAC ¶¶ 384–86  (discussing the evolution of the helmet and acknowledging the significant changes in helmet design since the early 1950s), ECF No. 2642.)

[95] (SAMAC ¶ 382, ECF No. 8927.)

[96] *See, e.g*., *Ojeda v. Louisville Ladder, Inc*., 410 F. App'x 213, 215 (11th Cir. 2010) (recognizing that a plaintiff's statement that a ladder was defective because of "improper design, shape, size, and configuration" was a legal conclusion); *Gomez v. Pfizer, Inc*., 675 F. Supp. 2d 1159, 1163 (S.D. Fla. 2009) (finding that allegations that pharmaceutical products "were defectively designed and/or manufactured because [their] intended use resulted in a substantial and unreasonable likelihood of causing Stevens-Johnson syndrome, which rendered [them] unreasonably dangerous for [their] intended use," amounted to no more than "bare legal conclusions").

[97] (SAMAC ¶¶ 229, 275, ECF No. 8927.)

[98] *Cf, e.g*., *Mrla v. Fannie Mae*, No. No. 2:2015-cv-13370, ECF No. 18 (E.D. Mich. July 21, 2016) (finding that pleading violated Rule 11 when factual assertions could not coexist, and explaining, "[e]ither foreclosure occurred <u>during</u> negotiations for the loan modification or foreclosure occurred <u>after</u> the loan modification was granted") (emphasis in original); *Hill v. Cray Research, Inc*., 864 F. Supp. 1070, 1080 (D.N.M. 1991) ("The flexibility of modern pleading should not be confused with an open-ended license to plead alternative causes of action that are untenable.")

Additionally, the plaintiffs point to two Riddell helmet models they assert had insufficient padding to protect against concussive injuries.[99] They fail, however, to identify which (if any) of the plaintiffs allegedly wore those helmet models.

Moreover, many states require that a plaintiff plead facts in support of an alternative feasible design to state a design defect claim.[100] On this score, the plaintiffs again offer nothing more than the bald and unsupported conclusion that a "safer alternative design was economically and technologically feasible at the time the product left the control of the Riddell Defendants."[101] This conclusory assertion is not only insufficient, it is confusing given the plaintiffs' assertion that "no helmet can prevent a concussion." The plaintiffs offer no facts to reconcile their inherently conflicting positions. Nor do they offer any facts to support the notion that an allegedly safer and technologically feasible design existed at every point in time for more than sixty years.

The plaintiffs also fail to explain how any alleged defect in the design of the helmets caused them harm, which is a necessary link under any state's product liability law.[102] While the plaintiffs offer allegations about the padding and materials used in the liner systems, and how different materials are purportedly better at absorbing certain types of impacts,[103] they offer nothing to connect these assertions to their situations and their injuries. Indeed, their allegations about liner materials are meaningless given that the plaintiffs don't allege what types of impacts they experienced or how the choice of liner materials caused their injury. In other words, they allege no

---

[99] (SAMAC ¶ 382(f), ECF No. 8927.)

[100] *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009) (explaining elements under Texas law); Miss. Code Ann. § 11-1-63(f)(ii) (providing that alternative feasible design is an essential element of a design-defect claim); Mich. Comp. Laws § 600.2946(2) (providing that alternative feasible design is required for design defect claim).

[101] (SAMAC ¶ 384, ECF No. 8927.)

[102] *See, e.g.*, *In re Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.*, 856 F. Supp. 2d 904, 908 (E.D. Ky. 2012) ("[I]t is well-settled law that a threshold requirement of any products-liability claim is that the plaintiff assert that the defendant's product caused the plaintiff's injury.") (citation and internal quotation marks omitted); *Stephen v. Ford Motor Co.*, 134 Cal. App. 4th 1363, 1373 (2005) (explaining that plaintiff must establish that "the design defect, and not something else, caused the plaintiff's injury").

[103] (SAMAC ¶¶ 277, 290–92, ECF No. 8927.)

facts to explain how any alleged defects, as opposed to something else, proximately caused their injuries.[104] And as discussed above, the plaintiffs contradict any reasonable inference that alleged design defects were the proximate cause for their injuries by contending that *no* helmet can prevent concussions or brain injury.[105] In other words, if no helmet could have prevented their injuries, then the design of any Riddell helmet was not the proximate cause of their alleged injuries.

In general, pleading causation is not a rudimentary exercise completed with barebones and conclusory language. Alleging sufficient facts to plausibly support causation is all the more important where, as here, specific causation presents a "daunting question," and the plaintiffs will face "stiff challenges surmounting" the issue of causation.[106]

The SAMAC lacks even the most basic factual allegations necessary to plausibly support a claim for design defect or breach of implied warranty under any states' law. The Court should therefore likewise dismiss these claims.

**B.      The plaintiffs' warnings claim fails for lack of facts to support either defect, causation, or duty.**

In general, whether based on negligence or strict liability, a failure-to-warn claim requires pleading facts to support that the defendant failed to warn about a known (or should-have-known) risk or unreasonably dangerous propensity in its product, and that such failure caused or was a

---

[104] *See, e.g.*, *Twombly*, 550 U.S. at 557  (requiring factual allegations to establish which of several alternate causes was responsible for the plaintiff's injury); *Dura Pharms. v. Broudo*, 544 U.S. 336, 346 (2005) (upholding dismissal for failure to adequately plead proximate causation); *S.F. v. Archer-Daniels-Midland*, 2014 WL 1600414, at *1 (W.D.N.Y. Apr. 21, 2014) (dismissing product liability case where plaintiff alleged high fructose corn syrup caused her diabetes after recognizing that diabetes is disease that may have many causes and the plaintiff failed to state sufficient facts to establish that the high fructose corn syrup present in the foods she listed in her complaint led to her disease).

[105] (SAMAC ¶¶ 229, 275, ECF No. 8927.)

[106] (*See* Mem. Op. 60, 67, ECF No. 6509; *id.* at 69 (the Court noting that plaintiffs "also face serious hurdles establishing causation).)

substantial factor in causing a plaintiff's harm.[107] Courts properly reject attempts to plead causation by using boilerplate language without any facts.[108]

Primarily, the warnings claim fails for the same reason their design defect claims fail—the failure to identify the warnings they received and allege were defective. As with the design-based allegations, the warnings allegations acknowledge that Riddell helmets' warnings changed over the years.[109] Yet just as they failed to identify what helmets they wore, the plaintiffs don't identify what warnings they were provided.

The plaintiffs likewise provide no facts plausibly supporting any causal link between the warnings on Riddell helmets and the plaintiffs' alleged injuries. Instead, they offer only the conclusory statement that as "a result of the RIDDELL Defendants' failure to warn, Plaintiffs have sustained permanent injuries."[110] They provide nothing to explain how a different warning would have changed the outcome with respect to their alleged injuries.[111] Instead, they make the conclusory and vague statement that they "would have taken protective measures or sought the diagnosis and treatment they needed"[112] had they known that there was a "link between

---

[107] *See, e.g.*, *Rosa v. City of Seaside*, 675 F. Supp. 2d 1006, 1011–12 (N.D. Cal. 2009), *aff'd sub nom. Rosa v. Taser Int'l, Inc.*, 684 F.3d 941 (9th Cir. 2012); *Huskey v. Ethicon*, 29 F. Supp. 3d 736 (S.D. W. Va. 2014) ("To recover on a failure-to-warn claim a plaintiff must establish that inadequate warnings rendered a product unreasonably dangerous and caused the plaintiff's injuries."); Restatement (Third) of Torts: Prods. Liab. §§ 1, 2(c) (1998).

[108] *See, e.g.*, *Dunson v. Cordis Corp.*, No. 16-CV-03076-SI, 2016 WL 3913666, at *6 (N.D. Cal. July 20, 2016) (dismissing failure to warn claim where the plaintiff failed to provide facts showing that the warning recipient "would have acted differently upon receipt of proper warnings"); *Lowe v. Sporicidin Intern.*, 47 F.3d 124, 131 (4th Cir. 1995) (upholding dismissal of failure to warn claim because the plaintiff's "sole allegations as to causation were the very general assertions that 'as a direct and proximate result of the allegations set forth in' the summarily pleaded counts"). While a few states provide a rebuttable presumption for strict liability failure to warn claims that a plaintiff would have read and heeded an adequate warning if it had been given, a plaintiff still must allege facts to show that heeding the warning would have made a difference with respect to his injuries. *See, e.g.*, *Grinage v. Mylan Pharm., Inc.*, 840 F. Supp. 2d 862, 868 (D. Md. 2011) ("Maryland courts recognize a presumption with regard to causation, that plaintiffs would have heeded a legally adequate warning had one been given. This presumption does not, however, relieve a plaintiff of the requirement that she adequately allege causation in the first place." (internal citations and quotation marks omitted)).

[109] (SAMAC ¶ 390, ECF No. 8927.)

[110] (*Id.* ¶ 394.)

[111] *See, e.g.*, *Martin v. Medtronic, Inc.*, No. 115CV00994DADMJS, 2017 WL 825410, at *12 (E.D. Cal. Feb. 24, 2017) (dismissing in part because the plaintiff "fails to allege any non-conclusory facts explaining how defendants' alleged manufacturing defect and failure to warn resulted in plaintiff's injuries").

[112] (*E.g.*, SAMAC ¶ 362, ECF No. 8927.)

concussions and brain injury."[113] Their bald assertion only invites more questions: what protective measures? How would those have made a difference? And how would an earlier diagnosis have made any difference? The SAMAC provides no facts to answer these questions.

Additionally, the plaintiffs criticize the version of warnings provided beginning in 2002 because it "does not warn about the later life cognitive effects of concussive injury."[114] Aside from highlighting the variations in warnings provided and the need for individual plaintiffs to identify the warnings they received, the plaintiffs' assertion does nothing to advance their warnings claim. They present nothing to support a duty on Riddell's part to warn about non-product-related medical sequelae of an injury. Nor do they provide any facts or bases to support that duties owed include warning about potential long-term consequences of certain injuries, thereby expanding the duties of a product manufacturer into those of medical professionals. The law doesn't support the plaintiffs' reach.

Moreover, the plaintiffs plead no facts plausibly supporting that the defendants would have had any reason to believe the players did not know about, or have access to—or their trainers, team physicians, personal physicians, and other health care providers did not have access to—the publicly available information they cite about the effects of concussive and sub-concussive injury[115] such that the Riddell defendants could reasonably be argued to have a duty to warn. As with their design defect claims, the plaintiffs' warnings claim lacks sufficient facts plausibly supporting it, and the Court should likewise dismiss it.

---

[113] (*Id.* ¶ 358.)
[114] (*Id.* ¶ 390.)
[115] (*See, e.g.*, *id.* ¶¶ 105, 116, 118, 146, 211, 214–21, 241–43, 251)

**IV.     The plaintiffs fail to state a claim for negligence and negligent marketing because they fail to state facts sufficient to support duty, breach, and causation.**

**A.     The plaintiffs' broad negligence claims fail.**

A negligence claim generally requires allegations that a defendant breached a duty it owed to the plaintiff, and the breach proximately caused the plaintiff's injury.[116] For the plaintiffs' negligence claims based on its product liability theories, those claims fail for all of the reasons discussed above—i.e., the plaintiffs fail to state facts plausibly supporting a design defect, causation, or a duty owed.[117]

Further, the plaintiffs' broad negligence claims based on a supposed duty by these defendants to "inform the Plaintiffs, the athletic community, the medical community and the public at large of the risk of concussions and long-term brain damage" fails on its face.[118] The plaintiffs offer nothing to support such a sweeping expansion of duties on the part of a helmet manufacturer like Riddell, Inc. to those with whom it has no connection, much less to those like "the medical community." A product manufacturer like Riddell, Inc.'s duties are, at most, to its consumers who may be foreseeably injured by use of its products, not those who have no interaction with its products.[119] Nor have the plaintiffs provided any facts plausibly supporting that the defendants voluntarily assumed duties owed to the entire public at large with respect to the risks inherent in the game of football by "accumulat[ing] knowledge about head injuries to players, and the

---

[116] 57A Am. Jur. 2d Negligence § 71**Error! Bookmark not defined.**.

[117] *See, e.g.*, *Knoppel v. St. Jude Med. Inc.*, No. SACV 13-383 JVS ANX, 2013 WL 3803612, at *2 (C.D. Cal. May 7, 2013) (pointing out that under a negligence theory of products liability a plaintiff must allege duty, breach, causation, and a defect in the product, and dismissing the plaintiffs' strict liability, negligence, and breach of warranty claims based in product liability because the complaint did not describe "how any of the three devices were defective in a way that caused [the plaintiff's] injury").

[118] (SAMAC ¶ 66, ECF No. 8927.)

[119] *See, e.g.*, *O'Neil v. Crane Co.*, 53 Cal. 4th 335, 362 (2012) (recognizing that a manufacturer generally has no liability for harm caused by another manufacturer's product); Restatement (Second) of Torts § 388 (explaining that duty extends "to those whom the supplier should expect to use the chattel . . . or to be endangered by its probable use.")

associated health risks therefrom."[120] These are just more examples of the plaintiffs' fanciful pleading, evidencing not any realistic attempt at pleading viable claims, but instead "some advocacy-based agenda"[121] untethered to facts and unsupported by law.[122]

**B.      The negligent-marketing claim fails for the same reasons as the warnings claim.**

The plaintiffs "negligent marketing" claim is the same as their warnings and negligent misrepresentation claims, and it fails for the same reasons. Indeed, for their negligent marketing claims, the plaintiffs allege the defendants are liable because they didn't "warn of the potential negative effects of brain injuries caused by the game and their products," and didn't "adequately address the continuing health risks associated with concussive events."[123] Because the plaintiffs haven't adequately stated facts plausibly supporting either causation or duty (as discussed above in the sections regarding failure to warn and negligence), their negligent marketing claims based on the same general theory also fail.[124] Moreover, many states don't recognize claims for negligent marketing.[125] But even assuming the plaintiffs could state a separate claim for negligent marketing,

---

[120] (SAMAC ¶ 66, ECF No. 8927)

[121] *See Evans*, 2017 WL 2118316, at *2.

[122] *See, e.g.*, *Knight v. Jewett*, 3 Cal. 4th 296, 315–16 (1992) (finding that there is no duty to prevent risks that are inherent in a sport); *Mehr v. Féderation Internationale de Football Ass'n*, 115 F. Supp. 3d 1035, 1066 (N.D. Cal. 2015), *appeal dismissed* (Sept. 22, 2015) (dismissing negligence claim against US Soccer and finding that, even with allegations that the defendant was aware of concussion-reduction best practices and had instituted a concussion protocol for national team players, the "Plaintiffs have identified no facts in their opposition that support a claim that U.S. Soccer has specifically undertaken to take actions to eliminate risks inherent in the sport of soccer or to reduce the risk of injury from improper concussion management"); *Meyers v. Donnatacci*, 531 A.2d 398 (N.J. Super. Ct. Law Div. 1987) (finding that trade association did not assume a duty to warn consumers of the danger of shallow diving simply by promulgating safety standards for residential in-ground swimming pools).

[123] (SAMAC ¶ 348 (d), (e), ECF No. 8927.)

[124] *See, e.g.*, *Pooshs v. Phillip Morris USA, Inc.*, No. C 04-1221, 2013 WL 2252471, at *7–8 (N.D. Cal. May 22, 2013) (explaining that the plaintiff's negligent marketing claim was subsumed by the misrepresentation and failure-to-warn claims as it was just simply a restatement of the failure-to-warn claim); *Salvio v. Amgen, Inc.*, 810 F. Supp. 2d 745, 751–52 (W.D. Pa. 2011) (pointing out that Pennsylvania does not recognize separate claims for negligent marketing and analyzing plaintiff's claim under failure to warn theory).

[125] *See, e.g.*, *id.*; *McClain v. Metabolife Intern., Inc.*, 193 F. Supp. 2d 1252, 1257 (N.D. Ala. 2002) (explaining there is no separate cause of action under Alabama law for negligent marketing).

they haven't alleged sufficient facts to support one, and their claims would fail for the same reasons as their misrepresentation and warnings claims.

Additionally, the allegations as to the Revolution helmet's marketing provide no support for negligent-marketing, given that the plaintiffs assert no facts to explain how their allegations concerning this marketing—which they assert began only in 2006—could possibly be relevant with respect to the 141 former players (of the 203 with negligent marketing claims) who ended their football careers before 2006, which is more than half of the plaintiffs who checked boxes for negligent marketing.[126]

Moreover, no player-plaintiff alleges he even wore a Revolution helmet, much less that he was exposed to or relied on marketing for the Revolution helmet. In short, the plaintiffs' fail to allege sufficient facts to connect the Revolution and its marketing to any of them, and provide nothing to explain the relevance of the allegations to their claims. For numerous reasons, the negligent marketing claim likewise requires dismissal.

**V.   The SAMAC as a whole requires dismissal because it fails to provide requisite notice to the defendants of their alleged individual roles in any wrongful conduct, improperly lumping together all of the Riddell entities, both with each other and at times with the NFL**.

A complaint that lumps all the defendants together and fails to distinguish their conduct violates Rule 8 because such allegations fail to give adequate notice to the defendants as to what they did wrong.[127] Moreover, as the Third Circuit has recognized, a complaint may be "too voluminous and unfocused to be intelligible as to which claims pertain to which defendants

---

[126] A total of 203 checked boxes for negligent marketing; 141 ended their careers before 2006. (*See* App. 2).

[127] *Regents of the Univ. of Cal. v. Aisen*, CASE NO. 15–cv–1766, 2016 WL 4096078, at *3 (S.D. Cal. Apr. 22, 2016) (citing to numerous decisions from multiple jurisdictions that stand for this proposition); *In re Sagent Tech., Inc., Derivative Litig.*, 278 F. Supp. 2d 1079, 1094 (N.D. Cal. Aug. 15, 2003) ("A complaint that lumps together thirteen 'individual defendants,' where only three of the individuals was alleged to have been present for the entire period of the events alleged in the complaint, fails to give 'fair notice' of the claim to those defendants.").

[where] the complaint nearly always refers throughout to the 'defendants' as a whole without alleging which defendant or defendants performed which actions."[128]

Throughout their 102-page complaint, the plaintiffs refer collectively to the "Defendants" or the "Riddell Defendants." While they acknowledge the legal differences between the different Riddell entities and their distinct corporate existences, the plaintiffs make no distinction between the alleged wrongful conduct of the Riddell entities, nor do they explain who did what, when, much less by which individuals within any of these entities. For example, the plaintiffs don't identify which of the defendants allegedly played roles in "[f]or almost sixty years . . . actively and continuously den[ying] any link between MTBI sustained by NFL players and other athletes while playing football games . . ."[129] According to the plaintiffs, all of the defendants did everything alleged, at all times. The unexplained role of the various Riddell defendants named over the course of the 60-year period covered by the plaintiffs' allegations is particularly problematic given that, as public records show, the majority of the defendants did not exist at the time the player-plaintiffs played or ended their careers.[130]

Not only do the plaintiffs improperly lump the Riddell defendants together, they lump them together with the NFL, making it impossible to discern for what exactly Riddell is allegedly responsible. For example, while they make no allegations to support that any Riddell defendant played any role in developing the game of football, nonetheless they allege that "Defendants developed, licensed, and marketed *the game* without disclosing the truth about the real risks and dangers."[131] There are no facts whatsoever to support that the Riddell defendants—any of them—

---

[128] *Bolick v. Ne. Indus. Servs. Corp.*, 666 F. App'x 101, 104 (3d Cir. 2016).
[129] (SAMAC ¶ 72, ECF No. 8927.)
[130](Order n.2 (later vacated by Order, ECF No. 6740), ECF No. 6706.; App. 1 (showing that 541 of the 772 of the player-plaintiffs ended their careers before 2000).)
[131] (SAMAC ¶ 12, ECF No. 8927.)

developed, licensed, or marketed the game of football. Again, whatever advocacy-based agenda the plaintiffs may have, it finds no basis in law or fact.

The plaintiffs' lumping of all defendants together under one collective term and their failure to differentiate between them deprives the defendants of fair notice as to the claims against each of them. For this additional reason, the plaintiffs' SAMAC violates Rule 8, requiring its dismissal.

## VI.    The plaintiffs allege no plausible basis for punitive damages.

In general, where even permitted by the applicable state's law, punitive damages are only available if a plaintiff can establish wrongdoing that was intentional, willful or wanton, or malicious.[132] To assert a right to punitive damages under *Twombly* and *Iqbal*, a plaintiff must set forth sufficient facts—as opposed to conclusory assertions—to support a plausible showing of intentional, reckless, or malicious wrongdoing.[133]

As an initial matter, the plaintiffs' "Count XIII" for punitive damages requires dismissal because punitive damages are a form of relief, not an independent cause of action.[134] Further, their punitive damages request lacks sufficient facts to satisfy federal pleading standards and to support any such award. Moreover, the plaintiffs contradict their own conclusory allegations of willful and wanton conduct by their description of warnings provided with Riddell helmets regarding brain injury and concussion,[135] and the facts showing a decades-long history of innovation in helmet

---

[132] *E.g.*, 22 Am. Jur. Damages § 559; Restatement (Second) of Torts § 908(2) (punitive damages only available for conduct that is "outrageous because of the defendant's evil motive or his reckless indifference to the rights of others").
[133] *See Boring v. Google Inc.*, 362 F. App'x 273, 283 (3d Cir. 2010); *Hook v. Whiting Door Mfg. Corp.*, No. CV 3:15-281, 2016 WL 3676812, at *4 (W.D. Pa. July 6, 2016) (dismissing punitive damages request containing "conclusory statements and not factual averments sufficient to state a plausible claim for relief"); *McCullough v. Peeples*, No. 3:14-CV-123, 2015 WL 1000223, at *7–8 (W.D. Pa. Mar. 5, 2015); *Allegrino v. Conway E & S, Inc.*, No. 09-CV-1507, 2010 WL 3943939, at *11 (W.D. Pa. Oct. 6, 2010).
[134] *See, e.g.*, *McClain v. Citizen's Bank, N.A.*, 57 F. Supp. 3d 438, 443 (E.D. Pa. 2014); *Wallner v. JPMorgan Chase Bank, N.A.*, No. G043238, 2010 WL 5407360, at *5 n.7 (Cal. Ct. App. Dec. 30, 2010); *Porter v. Allstate Ins. Co.*, 585 N.Y.S.2d 465, 466 (App. Div. 2d Dep't 1992).
[135] (*See* SAMAC ¶¶ 152, 280, ECF No. 8927.)

design and safety features.[136] The plaintiffs present no facts to plausibly support an award of punitive damages in light of these affirmative allegations of good company conduct.

## VII.   The plaintiffs' SAMAC-SFCs are all deficient because they fail to provide the necessary details about their claims to adequately state a claim.[137]

As discussed above, the SFCs do nothing to provide any useful information concerning any individual plaintiff's claims on any level. They don't identify helmets worn, or warnings received. They don't provide any particularized facts to support the information as required under Rule 9(b). Moreover, given the plaintiffs' shotgun-pleading approach of incorporating all prior allegations into each and every succeeding count in their complaint, even where individual plaintiffs have checked only certain boxes for certain claims, they nonetheless incorporate each and every factual allegation preceding the last count for which they checked a box.[138]

As an intended accompaniment to the SAMAC as together comprising an individual plaintiff's complaint, the SAMAC-SFCs goal should have been to provide the player-specific information to provide the defendants with fair notice of the individual plaintiff's claims against them. The plaintiffs' SAMAC-SFC fails in this essential purpose. Along with the SAMAC, the SAMAC-SFC likewise requires dismissal.

Moreover, the plaintiffs have shown they are incapable of pleading claims properly using a master and SFC approach. Their claims, especially as they have so drastically reconstructed them, are simply not amenable to a mass complaint, and their proposed rudimentary template SFCs. Should any claims survive dismissal, they require separate and appropriately individualized

---

[136] (See, e.g., AMAC ¶ 386(a)–(m) (chronicling Riddell innovations since 1950), ECF No. 2642.)

[137] This brief addresses the inadequacies of the SAMAC-SFCs as a whole. The Riddell defendants reserve all plaintiff-specific arguments and defenses and will address any that are allowed to proceed at the appropriate time pursuant to this Court's 10/24/17 Order (ECF No. 8472).

[138] (E.g., SAMAC ¶ 395 (showing that a plaintiff checking a box for breach of warranty thereby incorporates "each and every allegation" in the preceding 394 paragraphs), ECF No. 8927.)

pleadings—especially any fraud or conspiracy-based claims that may survive dismissal with prejudice.

## VIII.  The plaintiffs' claims are time-barred because the plaintiffs did not file suit within four years of accrual of their causes of action under any theory.[139]

Most states—all but four—have statutes of limitations for personal injury claims that are four years or less.[140] Generally, those limitations periods apply whether the claim is based on negligence, fraud, conspiracy, or something else.[141] Some states have a discovery rule that tolls the statute of limitations for personal injury actions until a reasonable person should have been on notice of the cause of injury. But even in a discovery-rule state, a plaintiff must allege facts to establish that a discovery rule applies.[142]

The plaintiffs' claims here are time-barred, as they all expired at the latest four years after the plaintiffs ended their playing careers, and no discovery rule saves their claims. Because there

---

[139] The Riddell defendants are using four years four purposes of this motion on the SAMAC since all but four states have a statute of limitations that is four or fewer years. But most or all of plaintiffs' claims may be barred by shorter statute of limitations periods. The Riddell defendants reserve all defenses and the right to move to dismiss those claims individually pursuant to this Court's October 24, 2017 order.

[140] *See, e.g., In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, *MDL 1871*, No. 07–md–1871, 2014 WL 2011239, at *1 (E.D. Pa. May 16, 2014) (recognizing that the statutes of limitations for personal injury claims in 31 states (including Arizona, Florida, Illinois, Louisiana, Michigan, Pennsylvania, and Texas) is four or fewer years, except for Missouri); *see also* Cal. Civ. Proc. Code § 335.1 (providing that there is a two-year statute of limitations for personal injury claims in California). The states with statutes of limitations greater than four years are: (1) Maine, which has a six-year statute of limitations for personal injury. 14 Me. Rev. Stat. Ann. § 752 (2015); 11 Me. Rev. Stat. Ann. § 2-725(2) (2015); (2) Minnesota, which has a four-year statute of limitations for strict liability, and a six-year statute of limitations for negligence. Minn. Stat. § 541.05, subds. 1, 2; (3) Missouri, which has a five-year statute of limitations for personal injury. Mo. Rev. Stat. § 516.20 (2016); and (4) North Dakota, which has a six-year statute of limitations for personal injury claims. N.D. Cent. Code § 28-01-16(5).

[141] *See, e.g.*, 1A American Law of Torts § 5:26 ("Courts have held that the nature of the harm done, rather than the plaintiff's characterization of the action, is the determining factor in construing conflicting limitations provisions."); *Smith v. Gilles*, 184 N.W.2d 271, 273 (Mich. App. 1970) (finding claim founded on either contract or fraud but alleging personal injury was subject to three-year personal injury statute of limitations); *Mauvais-Jarvis v. Wong*, 2013 IL App (1st) 120070, ¶¶ 110, 116 (finding that the statute of limitations for conspiracy is based on the underlying claim). Personal injury claims generally accrue at the time of injury. *Madden & Owen on Products Liability* § 16:1 (3rd ed. 2011).

[142] *E.g., In re Trasylol Prods. Liab. Litig.*, No. 08-MD-01928, 2010 WL 6098571, at * 12 (S.D. Fla. Mar. 16, 2010) ("In order to benefit from application of the discovery rule, Plaintiffs must have pled facts to show: (1) the time and manner of discovery; and (2) the inability to have made earlier discovery despite reasonable diligence."); *In re Zyprexa Prods. Liab. Litig.*, Nos. 04-md-1596, 06-cv-2782, 2009 WL 5062114, at *13 (E.D.N.Y. Dec. 10, 2009) (recognizing that under California law a plaintiff must allege: (1) the time and manner of discovery, and (2) the circumstances excusing a delayed discovery, in order to invoke the discovery rule).

is no indication of even a rare exception for a plaintiff to be able to show based on an outlier statute of limitations that applies to his claims that his claims are not time-barred, the Court should dismiss all of the plaintiffs' claims as time-barred unless a plaintiff can show cause why his claim arises under a statute of limitations that is greater than four years and is not time barred.[143]

A.    **Most, if not all, of the 203 plaintiffs' fraud and conspiracy claims are time-barred because they do not relate back.**

As the Riddell defendants explained in opposing the plaintiffs' motion for leave to amend,[144] the plaintiffs' fraud and conspiracy claims are barred by the statute of limitations because they do not relate back. Primarily, fraud and conspiracy claims with respect to Riddell have not been a part of this litigation since 2012, when the plaintiffs *dropped* those claims from the MAC in favor of their AMAC. The plaintiffs provide nothing to support asserting these claims now, six years after they disappeared from this litigation.

Moreover, while a discovery rule under the law of some states may postpone the running of the limitations period in certain circumstances—none of which have been pled here—the 199 out of 203[145] plaintiffs pursuing fraud and conspiracy claims for former players whose careers ended before 2012 can't plausibly argue under any discovery rule or other theory that their claims for fraud or conspiracy accrued only after this MDL was formed in 2012.[146] Indeed, based on their own allegations, there was undoubtedly enough information in the public realm to put them on

---

[143] *See. e.g.*, *In re Fosamax (Alendronate Sodium): Prod. Liab. Litig.*, No. 08-08 JAP LHG, 2014 WL 1266994, at *1 (D.N.J. Mar. 26, 2014), *vacated on other grounds sub nom. In re Fosamax (Alendronate Sodium) Prod. Liab. Litig.*, 852 F.3d 268 (3d Cir. 2017) (dismissing plaintiffs who had failed to respond to the court's order to show cause why their claims were not preempted)

[144] (ECF No. 7849.)

[145] (*See* App. 2 (showing 199 plaintiffs pursuing fraud and conspiracy claims whose careers ended before 2012 and whose fraud and conspiracy claims should be dismissed as undoubtedly time-barred. The four plaintiffs whose careers ended after 2012 are Larry Croom, Grady Jackson, Renauld Williams, and Adrian Awasom. The Riddell defendants reserve the right to pursue and maintain all defenses to individual plaintiff claims, including statute of limitations defenses as to the claims of those four plaintiffs).)

[146] *In re Nat'l Football League Players' Concussion Injury Litig.*, 842 F. Supp. 2d 1378 (J.P.M.L. Jan. 31, 2012) (establishing this MDL).

37

notice of their claims as of when this MDL was formed.[147] Accordingly, the plaintiffs' fraud and conspiracy claims expired at the latest during the pendency of this litigation—or four years after ending their playing careers, which was in 2012 for all but four of the plaintiffs pursuing fraud and conspiracy claims.[148]

The only way these 199 plaintiffs' claims could be saved is if they relate back, and they do not. As Riddell explained in opposing leave to amend, relation back is unavailable when amendments like the ones here "significantly alter the nature of the proceeding."[149] Indeed, other courts have rejected attempts to relate back fraud and conspiracy-based allegations in an amended complaint where plaintiffs had previously only brought product liability claims,[150] as the plaintiffs did here in the AMAC. Because the plaintiffs' fraud and conspiracy claims cannot relate back, they are time-barred and should be dismissed.

### B.  The plaintiffs' allegations further show their claims under any theory are time-barred.

As explained above, the statute of limitations for personal injury actions, regardless of the theory, in nearly every state is four years or less; and the claims accrue at the time of injury. Here, the plaintiffs' claims accrued at the time they experienced their head impacts, which was at the very latest, when their football careers ended. Here, the vast majority of these former players—

---

[147] *See, e.g.*, *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 2014 WL 2011239, at *1 & *Faheem v. GlaxoSmithKline LLC*, No. 11–695 (*In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, MDL 1871 (Doc. No. 2522)), 2012 WL 3205620, at * 2 (E.D. Pa. Aug. 7, 2012) (together explaining that the statute of limitations for plaintiffs from non-discovery rule states started to run on the date of their injury and for plaintiffs from discovery rule states, it had started to run by 2007, when the MDL had formed and there was enough information in the public realm to put them on notice). (*See also* SAMAC ¶¶ 105, 116, 118, 146, 211, 214–21, 241–43, 251, 253, 255, 265, 267, 274, 298 (discussing many publicly available studies regarding head trauma and concussions dating back many decades), ECF No. 8927.)

[148] To be clear, and as argued elsewhere, the statute of limitations on their claims expired earlier. But there can be no argument under any discovery rule or other theory, that they had not run within four years of the plaintiffs filing their lawsuits (unless a plaintiff can show that his claim is subject to one of the three statutes of limitations that is six years, and even then his claim may be barred for other reasons, which Riddell reserves the right to argue later).

[149] *Glover v. F.D.I.C.*, 698 F.3d 139, 146 (3d Cir. 2012).

[150] *See, e.g.*, *Corcoran v. N.Y. Power Auth.* 935 F. Supp. 376, 392–93 (S.D.N.Y. 1996); *Payne v. A.O. Smith Corp.*, 578 F. Supp. 733, 737 (S.D. Ohio 1983).

674 out of 772—ended their football careers in 2006, more than four years before the first complaint in this MDL was filed in 2011.[151] Their claims are therefore time barred.[152]

On a global basis, the plaintiffs all attempt to assert tolling under the "discovery rule,"[153] which many states don't recognize.[154] Beyond that, the plaintiffs provide no facts to support applying this rule, much less on an individual basis. Indeed, they provide no facts—neither in the SAMAC nor in their SAMAC-SFCs—regarding the time and manner of the alleged delayed discovery, nor any facts to show why any individual plaintiff could not have discovered and pursued his claims sooner.[155]

The plaintiffs do, however, cite to numerous materials and information sources showing their claims are time barred. For example, they cite publicly available studies dating back many years as supporting a link between repetitive head impacts and brain injuries.[156] Yet the plaintiffs don't explain or allege facts to show why, through the exercise of reasonable diligence, they could not have discovered this publicly available information.[157]

---

[151] The first complaint did not toll the statute of limitations for any plaintiffs filing their claims. Rather, for simplicity at this stage, this date is used because anyone who ended their playing career more than four years before that date is barred by the statute of limitations.

[152] The remaining plaintiffs' claims are likely barred by applicable statutes of limitations as well, and Riddell reserves all defenses and the right to move to dismiss those claims individually at the appropriate stage.

[153] (SAMAC ¶ 27, ECF No. 8927.)

[154] *See, e.g., Nunnally v. Artis*, 254 Va. 247, 253 (1997) (recognizing that Virginia does not have a discovery rule for personal injury claims).

[155] *See Archie v. Pop Warner Little Scholars, Inc.*, No. 16-cv-6603, 2017 WL 3084160, at *14 (C.D. Cal. May 12, 2017) (dismissing putative class claims of former football players for failure to allege "specific facts that show how and when the discovery happened and why Plaintiffs were unable to make the discovery earlier despite reasonable diligence"); *Bekins v. AstraZeneca Pharms. LP*, 239 F. Supp. 3d 1220, 1225 (S.D. Cal. 2017) (finding plaintiff failed to plead facts to apply the discovery rule under California law because the complaint lacked any facts regarding the timing or manner of discovery, and that the plaintiff conducted an investigation into the cause of her injury).

[156] (*See* SAMAC ¶¶ 105, 116, 118, 146, 211, 214–21, 241–43, 251, 253, 255, 265, 267, 274, 298, ECF No. 8927.)

[157] *See Bekins*, 239 F. Supp. 3d at 1225  ("Plaintiff does not allege facts evicting her inability to have made earlier discovery even if shad conducted a reasonably diligent investigation."); *Archie*, 2017 WL 3084160, at *14  (plaintiffs did not plead "specific facts that show how and when the discovery happened and why Plaintiffs were unable to make the discovery earlier despite reasonable diligence") (internal quotation marks and citations omitted).

The plaintiffs also conclusorily invoke tolling under fraudulent concealment and equitable/fraudulent estoppel.[158] But those likewise are to no avail. Fraudulent concealment and equitable estoppel are functionally interchangeable doctrines.[159] They toll the statute of limitations when the defendant, through active conduct above and beyond the wrongdoing upon which the plaintiff's claim is filed, prevents the plaintiff from suing in time.[160] Moreover, a plaintiff must allege facts including the date of discovery, the manner of discovery, and the justification for the failure to discover earlier "with the same particularity as with a cause of action for fraud."[161] Additionally, fraudulent concealment does not apply if "the plaintiff is unable to learn of the relevant facts through no fault of the defendant;" rather, "the defendant must be responsible for plaintiff's inability to find the relevant facts."[162]

The plaintiffs have pled no facts plausibly supporting either doctrine to toll the limitations bar. As discussed above, the plaintiffs have not stated any facts with particularity about when the plaintiffs discovered their claims, the manner of discovery, or the justification for the failure to discover them earlier.[163] They also fail to state any facts showing that they used "due diligence in an attempt to uncover the facts."[164] Instead, the plaintiffs plead only conclusory statements that they could not discover their causes of action "because of Defendants' active concealment of the true nature of the risks and dangers,"[165] which they fail to explain. This is not sufficient.

---

[158] (SAMAC ¶¶ 23–26, ECF No. 8927.)

[159] *Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2006); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990); *see also Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (discussing duty to exercise reasonable diligence to investigate after put on inquiry notice as prerequisite for equitable tolling as well as fraudulent concealment).

[160] *E.g.*, *Guerrero*, 442 F.3d at 706; *Cada*, 920 F.3d at 45.

[161] *Bekins*, 239 F. Supp. 3d at 1226  (citations and internal quotations marks omitted); *also Guerrero*, 442 F.3d at 706–07  ("The plaintiff must demonstrate that he relied on the defendant's misconduct in failing to file in a timely manner and must plead with particularity the facts which give rise to the claim of fraudulent concealment.") (citations omitted).

[162] *Migliori v. Boeing N. Am., Inc.*, 114 F. Supp. 2d 976, 985 (C.D. Cal. 2000).

[163] *Bekins*, 239 F. Supp. at 1226.

[164] *Id.*

[165] (SAMAC ¶ 27, ECF No. 8927.)

Further, the plaintiffs' own allegations undercut any assertion of fraudulent concealment or estoppel. The SAMAC describes publicly available research purportedly demonstrating a link between repetitive head impacts and long-term brain injuries beginning nearly a century ago.[166] The availability of these studies shows the defendants didn't stop the plaintiffs from discovering or pursuing their claims, as they allege. And the plaintiffs plead nothing to plausibly support that had they exercised due diligence, they would not have been able to access any of this publicly available information.[167]

Moreover, the plaintiffs recently filed a declaration stating that Jason Luckasevic—an attorney representing more than half of the 772 plaintiffs pursuing claims against the Riddell defendants and the self-proclaimed architect of this litigation—"was prepared and ready to file a lawsuit on behalf of some former players *in 2007*."[168] The fact that an attorney representing the majority of the plaintiffs here was ready to file these actions as early as 2007 shows the plaintiffs' fraudulent concealment assertions for what they are—unsupported legal conclusions, and wrong ones, at that.

Furthermore, fraudulent concealment and equitable estoppel generally cannot be premised on the same conduct by the defendant that underlies the plaintiffs' substantive claim.[169] To invoke these doctrines, the plaintiff must plead "some fraudulent concealment, some active conduct by

---

[166] (*Id.* ¶¶ 62–63, 105, 116, 118, 146, 211, 214-21, 241-43, 251, 253, 255, 265, 267, 274, 298.)

[167] *See, e.g.*, *Bekins*, 239 F. Supp. 3d at 1227 (rejecting plaintiff's claim of fraudulent concealment where the plaintiff did not allege any facts demonstrating that had she exercised due diligence in investigating the cause of her kidney failure, she would not have been able to access any of the literature describing the association between her injuries and the drugs at issue).

[168] (Decl. of Bennet Omalu 3, ECF No. 9547-1 (emphasis added).)

[169] *See Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1052 (9th Cir. 2008) ("The primary problem with plaintiffs' argument is that their alleged basis for equitable estoppel is the same as their cause of action."); *Cada*, 920 F.2d at 451 ("Fraudulent concealment in the law of limitations presupposes that the plaintiff has discovered, or, as required by the discovery rule, should have discovered, that the defendant injured him, and denotes efforts by the defendant-above and beyond the wrongdoing upon which the plaintiff's claim is founded-to prevent the plaintiff from suing in time.")

the defendant *above and beyond* the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time."[170] The plaintiffs likewise fail this requirement.

The SAMAC's fraudulent concealment and estoppel allegations assert that the defendants "had access to decades-worth of science and research linking concussions and subconcussive blows to latent brain disease,"[171] but "concealed the true character, quality, and nature of the risks and dangers and knowingly made misrepresentations about the characteristics, risks, and dangers."[172] These are merely the same allegations of conduct underlying the plaintiffs' substantive fraud-based and conspiracy claims. As such, they cannot support tolling.[173]

The overwhelming majority, if not all, of the plaintiffs' claims are barred by any potentially applicable statute of limitations. Therefore, the Court should dismiss their claims unless a plaintiff can show cause that he has a unique case and his claims are not time-barred. Indeed, doing so would greatly winnow down, if not altogether end, this coordinated litigation.[174]

## IX.    The Court should strike the claims by individuals who attempt to assert them for the first time by filing a SAMAC-SFC.

As explained in the Riddell defendants' concurrently filed motion to strike, 85 individuals are attempting to either join this MDL for the first time or join in the claims against the Riddell defendants for the first time by filing SAMAC-SFCs.[175] Their filings are entirely improper, as this

---

[170] *Bekins*, 239 F. Supp. 3d at 1226 (S.D. Cal. 2017) (citations and internal quotation marks omitted; emphasis in original).

[171] (SAMAC ¶ 23, ECF No. 8927.)

[172] (*Id.* ¶ 26; *see also id.* ¶¶ 20–25.)

[173] *See, e.g., Guerrero*, 442 F.3d at 707  ("Guerrero has failed to plead with particularity any additional fraudulent behavior on the part of the defendants that would excuse his delay in bringing this suit."); *Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 510 (S.D. Ohio 2012) (rejecting equitable estoppel argument because the plaintiffs allegations at most only described basis for relief and not a basis for applying equitable estoppel, and explaining that the plaintiff needed to show a misrepresentation that induced her to forgo filing suit).

[174] The plaintiffs' loss-of-consortium claims fail for all of the same reasons laid out above because they are derivative of their spouse's claims. *See, e.g.*, 41 Am. Jur. 2d Husband and Wife §§ 219, 227 (2005). The Riddell defendants reserve the right to address all plaintiffs-specific loss of consortium claims at the appropriate time pursuant to this Court's 10/24/17 Order (ECF No. 8472).

[175] The names of these filers are listed on Appendix 3.

Court's order only provided that plaintiffs with pending claims against the Riddell defendants could file SAMAC-SFCs.[176]

Moreover, 39 of these 85 individuals have no pending claims in this MDL against any defendant, having never filed a complaint in a transferor court. These filers cannot join this MDL by filing a short-form complaint.[177] Further, even ignoring the gross impropriety of these filings, statutes of limitations bar these individual's claims, as they have long since run during the pendency of this litigation, regardless of when the former players ended their playing careers.

For these reasons, and those set forth in the accompanying motion to strike, the Riddell defendants request that the Court strike the SAMAC-SFCs for individuals listed on Appendix 3, and to the extent there is anything to dismiss, that the Court dismiss their claims against the Riddell defendants.

## X.  The claims of plaintiffs who did not file SAMAC-SFCs against Riddell should be dismissed.[178]

The Court ordered that any "individual Plaintiffs who wish to proceed with their claims against any of the Riddell Defendants *must* each file an individual Short Form Complaint . . . on both the [master] docket and the applicable underlying docket for the given action on or before December 4, 2017."[179] Many plaintiffs who had previously filed short-form complaints against one or more of the Riddell defendants did not file SAMAC-SFCs by the Court's deadline, thereby abandoning any claims against Riddell.

---

[176] (Order, Oct. 24, 2017 (providing that plaintiffs "wish[ing] to proceed with their claims against any of the Riddell Defendants must each file [SAMAC-SFCs] . . . on both the [master] docket and the applicable underlying docket for the given action"), ECF No. 8472); *see In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217 (9th Cir. 2006) (affirming MDL district court's dismissal of claims of plaintiffs who did not comply with case management order).

[177] *See* 28 U.S.C. §1407(a) ("transfers shall be made by the judicial panel on multidistrict litigation").

[178] The Riddell defendants also reserve the right to move to dismiss the claims of plaintiffs who failed to comply with prior Court orders regarding filing short form complaints at the appropriate time.

[179] (ECF No. 8472 (emphasis added).)

Consistent with its authority to administer this coordinated litigation,[180] the Court should therefore dismiss with prejudice with respect to Riddell the actions of those plaintiffs listed on the attached Appendix 4 who have did not file a SAMAC-SFC by December 4, 2017.[181]

## CONCLUSION

For these reasons, the Riddell defendants respectfully request that the Court dismiss the plaintiffs' second amended master administrative complaint and accompanying short form complaints in their entirety with prejudice, strike the purported short form complaints of the 85 individuals attempting to join this MDL by asserting claims against the Riddell defendants for the first time, and dismiss the claims of all plaintiffs who have abandoned their claims and did not file new short form complaints against the Riddell defendants by December 4, 2017.

---

[180] *See, e.g.*, *Dzik v. Bayer Corp.*, 846 F.3d 211, 216 (7th Cir. 2017) (quoting *In re Asbestos Prods. Liab. Litig. (No. VI)*, 718 F.3d 236, 243, 246–48 (3d Cir. 2013) (citations omitted) ("District courts handling complex, multidistrict litigation 'must be given wide latitude with regard to case management' in order to achieve efficiency. That discretion extends to dismissing individual suits for noncompliance with the court's orders, including discovery orders.")); *In re Asbestos Prod. Liab. Litig.*, 543 F. App'x 202, 203 (3d Cir. 2013) (upholding district court's dismissal of plaintiffs who failed to comply with the court's Administrative Order requiring submission of complete exposure histories).

[181] The Riddell defendants do not concede by this statement that any of those plaintiffs had existing valid claims, as many of them never served any of the Riddell defendants and tried to assert claims against the Riddell defendants for the first time in short form complaints improperly directly filed in this MDL. Regardless of their previous status, the claims are now abandoned and should be dismissed with prejudice.

Dated: January 19, 2018

Respectfully submitted,

*/s/ Paul G. Cereghini*
Paul G. Cereghini
Thomas C. Howard
BOWMAN AND BROOKE LLP
2901 N. Central Avenue, Suite 1600
Phoenix, AZ  85012
Telephone: (602) 643-2300
Facsimile: (602) 248-0947
paul.cereghini@bowmanandbrooke.com
thomas.howard@bowmanandbrooke.com

Robert L. Wise
Eden M. Darrell
BOWMAN AND BROOKE LLP
901 East Byrd Street, Suite 1650
Richmond, VA  23219
Telephone: (804) 649-8200
Facsimile: (804) 649-1762
rob.wise@bowmanandbrooke.com
eden.darrell@bowmanandbrooke.com

Thomas P. Wagner
MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN
2000 Market Street, Suite 2300
Philadelphia, PA  19103
Telephone: (215) 575-4562
Facsimile: (215) 575-0856
tpwagner@mdwcg.com

Attorneys for Defendants

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on January 19, 2018, the foregoing Riddell Defendants'
Brief in Support of Motion to Dismiss the Plaintiffs' Second Amended Master Administrative
Long-Form Complaint and Amended Short-Form Complaints and the exhibits in support thereof
were electronically filed and served via ECF on all counsel of record registered to receive service
via the Court's CM/ECF system.

                  /s/ Paul G. Cereghini