IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE | No. 2:12-md-02323-AB |
| | MDL No. 2323 |
| PLAYERS' CONCUSSION INJURY LITIGATION | Hon. Anita Brody |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,<br>                Plaintiffs, | Civ. Action No.  14-00029-AB |
|     v. | |
| National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br>                Defendants. | |

Notice of Motion requesting that the Court issue an Order directing class counsel, sub-class counsel and the additional Law Firms who provided common benefit work on behalf of the settlement class to negotiate with one another in good faith, in an attempt to reach a universal recommendation that may be presented to the Court for consideration in determining the appropriate allocation of the common benefit fund.

1. The facts of this case are very well known to the Court and to the interested parties and there is no need to reiterate the procedural history of the litigation.

2. Under the terms of the amended Settlement Agreement submitted to the Court under date of February 13, 2015, the NFL parties agreed to pay reasonable attorney fees and expenses to Plaintiff attorneys who performed work that benefited the Settlement Class, so long as the fee application would not exceed $112.5 million.

3. On February 13, 2017, co-lead counsel petitioned the Court for expenses totaling $5,682,779.18 and fees totaling $106,817,220.62.

4. Subsequent to the February 13, 2017 filing, co-lead counsel Christopher Seeger, Esquire, was asked by the Court to submit his recommendation as to the allocation of common benefit fees and expenses for the 24 law firms that worked to provide a benefit to the global settlement class.

5. On October 10, 2017, the Court provided all interested parties the ability to file a response to Mr. Seeger's recommended fee allocation. Responses by the interested Parties were filed with the Court on or before October 27, 2017. Thirteen (13) briefs were filed by seventeen (17) law firms opposing co-lead counsel's recommendation.

6. Separate and apart from Mr. Seeger's recommendation and the responses to that recommendation, the Court appointed Professor William B. Rubenstein to serve as an expert witness on attorney fees and directed Professor Rubenstein to opine on contingent fee percentages and the reasonableness of requiring class members or their attorneys to contribute monies towards a common benefit fund for future administrative and legal work on the 65-year settlement term. The Court *did not* request Professor Rubinstein to provide a recommendation on the independent issue of common benefit fees, so any global recommendation from all interested Parties could only benefit the Court in determining the appropriate fee allocation.

7. No party to this litigation can deny the importance of open communication, fair discussion and the power of negotiating rather than using judicial resources to determine the fee allocation issue.

8. Through judicial discretion, the Court has the ability to order the interested Parties who are entitled to common benefit funds to convene in an attempt to present to the Court a unified recommendation regarding the allocation of fees.  This alternative could diminish the likelihood that a Party or Parties would contest the Court's final determination of the allocation. The negotiation would also provide the Court with a unified recommendation from all interested Parties.

9. Given that the substantive litigation in the matter has been ongoing since 2011 and has involved the time and efforts of many attorneys, it only seems fair and reasonable that the attorneys who performed work on behalf of the global settlement class have the opportunity to sit down in order to facilitate discussion amongst them, possibly eliminating barriers to a resolution through good faith negotiations, allowing for a

unified fee allocation recommendation to be submitted to the Court. This can only assist the Court in making a final determination.

10. Negotiation is the first method of choice for problem-solving and trying to reach a mutually acceptable agreement on the fee allocation will provide the Court with a unified recommendation, hopefully limiting future litigation and possible delay.

11. By ordering the interested parties to negotiate in good faith, there becomes a real possibility of the Parties reaching a global resolution with regard to the fee allocation issue. This alternative dispute option has no downside and can only promote judicial efficiency and decrease any delay that might occur due to any one law firm who is unhappy with the Court's final determination of the allocation. No attorney in the litigation should be subjected to any further delay in the payment of expenses and the fees they incurred for working so diligently over the course of the past six (6) years.

12. In reviewing both Mr. Seeger's fee recommendation, as well as the responses from the seventeen (17) law firms, it is evident that many of the firms are overly confident in their positions and naturally have a basic tendency towards self-serving interpretation with regard to the value of their work. A Court ordered negotiation will also provide for face to face discussions between the Parties and this environment may in fact lead to a fair, reasonable and global recommendation of the fee allocation to the Court, further promoting judicial efficiency.

13. Conventional negotiations that have been Court-ordered have shown to be productive and often times negate the Court from having to decide the issue at hand. This is evident by looking back at the Court's recommendation that the NFL Parties and Plaintiffs settle the matter instead of risking an unfavorable ruling by the Court on preemption. Additionally, by recommending that the Parties negotiate a universal recommendation with regard to the fee allocation issue, each party would have an incentive to compromise in order to reach a final resolution and avoid the possibility of further delay.

14. In summary, I respectfully request that the Court direct all interested Parties who have been approved for common benefit funds to gather and negotiate in good faith in order to reach a global recommendation on the allocation of common benefit funds.

15. I declare under penalty of perjury that the foregoing is true and correct.

                                               Executed this 26th day of January 2018

                                                /s/ Craig R. Mitnick, Esquire

                                               _____

                                               CRAIG R. MITNICK, Esquire