**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>            Plaintiffs,<br><br>            v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>            Defendants. | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**CO-LEAD CLASS COUNSEL'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR AN ORDER (1) PROHIBITING THE CAMBRIDGE
ENTITIES FROM SEEKING REPAYMENT OF ADVANCES TO CLASS MEMBERS
RELATED TO ASSIGNMENT AGREEMENTS THROUGH MEANS OTHER THAN
THOSE IDENTIFIED IN THE COURT'S DECEMBER 8, 2017 EXPLANATION AND
ORDER [ECF NO. 9517],  AND FROM SPREADING MISINFORMATION
CONCERNING THE EXPLANATION AND ORDER;
(2) REQUIRING CORRECTIVE DISCLOSURES;
(3) COMPELLING PRODUCTION BY THE CAMBRIDGE ENTITIES OF ALL
DOCUMENTS RELATING TO CLASS MEMBERS' RETIREMENT FUNDS BEING
HELD BY THEM AND ACCOUNTINGS AS TO SUCH FUNDS; AND
(4) DIRECTING THE CAMBRIDGE ENTITIES TO RETURN TO CLASS MEMBERS
THEIR RETIREMENT FUNDS HELD AS COLLATERAL RELATED TO
ASSIGNMENT AGREEMENTS,
<u>ALONG WITH EARNINGS AND INTEREST THEREON</u>**

Co-Lead Class Counsel ("Class Counsel") respectfully submits this memorandum in support of his motion for an order (1) prohibiting the Cambridge Entities[1] from seeking repayment of advances to Class Members related to assignment agreements through means other than those identified in the Court's December 8, 2017 Explanation and Order [ECF No. 9517] ("Explanation and Order") and from spreading misinformation concerning the Explanation and Order; (2) requiring corrective disclosures; (3) compelling production by the Cambridge Entities of all documents relating to Class Members' retirement funds being held by them and accountings as to such funds; and (4) directing the Cambridge Entities to return to Class Members their retirement funds held as collateral related to assignment agreements, along with earnings and interest thereon ("Motion").

After the issuance of the Court's Explanation and Order, a concerned Class Member, referred to herein as Mr. Smith,[2] who had purportedly entered into an assignment agreement with Cambridge, contacted Class Counsel and reported that he had been told by representatives of Cambridge that, as a result of the Court's Explanation and Order, he and other Class Members

---

[1]     The "Cambridge Entities" or "Cambridge" include the following: Cambridge Capital Group, LLC; Cambridge Capital Advisors LLC; Cambridge Capital Partners, LP; Cambridge Capital Group Equity Option Opportunities, LP; Cambridge Capital Holdings; Cambridge Capital Funding, Inc.; Your Case, LLC; and their present and former directors, officers, partners, employees, contractors, agents, consultants, affiliates, successors and assigns, including, but not limited to Addys Walker, Gail Milon, and Phillip T. ("Tim") Howard.

[2]     The pseudonym is being used to protect the Class Member's identity in this public filing, but Class Counsel will provide it to the Court on request.  Furthermore, to be clear, Mr. Smith is not the same Class Member identified as John Doe in Co-Lead Class Counsel's: (1) Motion to Compel Corrective Disclosures by Phillip Timothy Howard, Esquire (a/k/a Dr. Tim Howard, J.D., Ph.D.) and Howard & Associates, P.A.; (2) Motion to Compel Mr. Howard, Howard & Associates, P.A.; and Cambridge Capital Group, LLC, Gail Milon, Mr. Howard, and Jeff Kahn to Respond to Respective Discovery Requests Propounded upon Them; and (3) Notice to the Court of Certain Conduct by Mr. Howard and his Related Entities, dated September 12, 2017 [ECF No. 8371] ("Motion to Compel Howard and Cambridge").

who had entered into assignment agreements with Cambridge must repay the advanced funds back to Cambridge forthwith.  In addition, the Cambridge representatives told Mr. Smith that Cambridge intended to take ownership of portions of the Class Members' retirement funds (and/or the interest therefrom) that the Class Members had placed with Cambridge as investments (Individual Retirement Account ("IRA") rollover monies from the NFL's or its Member Clubs' 401(k) Plan(s)) as repayment as to those who could not otherwise immediately repay Cambridge the advanced monies.  Mr. Smith recorded a telephone conversation of December 21, 2017, that he had with Adyss Walker and Gail Milon of Cambridge, during which the aforementioned inaccurate representations were made.  Mr. Smith provided the audiofile to Class Counsel, who had it transcribed.  *See* Declaration of Christopher A. Seeger, dated January 25, 2018 ("Seeger Decl."), Exhibit A ("Ex. A") (transcription of telephone conversation between Class Member, Mr. Smith and his wife, and Addys Walker and Gail Milon) and *id.*, at ¶4.

Mr. Smith and other Class Members have repeatedly requested that Cambridge provide them with accountings concerning the retirement monies provided to Cambridge for investment purposes, but, to date, Cambridge has not provided an accounting to Mr. Smith.  Mr. Smith also provided Class Counsel with emails that he had received from a former principal of Cambridge, Don Warner Reinhard, concerning Cambridge's current management's handling of the retirement funds and the failure to provide accountings.  *See* Seeger Decl., Exs. B and C.

The representations that Cambridge has been making, described in detail below, as to the meaning and impact of the Court's Explanation and Order, are directly contrary to the plain language of the Explanation and Order.  The Court made clear that the purported assignment agreements are "void, invalid and of no force."  ECF No. 9517, at 5.  Thus, Class Members who entered into same owe nothing presently to the putative assignees.

The Court, however, also provided that "if the Third-Party Funder is willing to accept rescission and execute a valid waiver relinquishing any claims or rights under the entire agreement creating the assignment or attempted assignment, then *the Claims Administrator will be authorized to withhold* – from the Class Member's monetary award – the amount already paid to the Class Member under the agreement and return it to the Third-Party Funder." *Id.* (emphasis added).   That is, the Court ordered that Third-Party Funders would be entitled to receive repayment of the amounts of monies advanced to Class Members under the purported assignment agreements (without interest) if two conditions are met:  (1) the Third-Party Funder signs a waiver accepting rescission of the agreement, and (2) the Class Member is awarded a monetary award.  The first condition is explicit in the Explanation and Order.  The second is implicit, but clearly necessary because the Explanation and Order directs that the Third-Party Funders signing such waivers are to receive the repayment from the Claims Administrator, not from the Class Members themselves.   As such, a favorable Monetary Award Claim Determination is a necessary prerequisite to the possibility of rescission under the protocol set up by the Court's Explanation and Order.  Cambridge's misrepresentations to Mr. Smith ignore both of these prerequisites to its recoupment of monies advanced to Class Members.

Finally, nothing in the Court's Explanation and Order authorizes resort to self-help.  To suggest, as Cambridge does, that the taking of Class Members' invested retirement funds or interest thereon, which Cambridge has threatened, is somehow authorized by the Court's Explanation and Order is clear overreach.

Class Counsel seeks to have the Court adopt the proposed order submitted in connection with this Motion in order to prevent Cambridge from misrepresenting to Class Members that *they* must repay Cambridge any advanced funds now, and to prevent Cambridge from taking (or

threatening to take unless immediate repayment is received) Class Members' invested retirement funds or interest thereon as repayment under the purported authority of the Court's Explanation and Order.  Also, Class Counsel seeks to have corrective disclosures disseminated to those Class Members who entered into purported assignment agreements with Cambridge and posted on the Settlement Website to dissuade any other Third-Party Funders from (a) misrepresenting to Class Members the meaning and implications of this Court's Explanation and Order and/or (b) attempting to engage in the type of self-help (or threats of self-help) that Cambridge has represented to Class Members it is entitled under the Explanation and Order.  Additionally, Class Counsel also seeks to compel Cambridge to produce all documents relating to Class Members' retirement funds being held by them and accountings as to such funds.  Finally, Class Counsel requests that the Court direct the Cambridge Entities to return to Class Members their retirement funds held as collateral related to the void assignment agreements, along with earnings and interest thereon.

## I.     FACTS

Addys Walker of Cambridge made the following inaccurate representations, among others, during a telephone conversation between Mr. Walker and Gail Milon, also of Cambridge, and Mr. and Mrs. Smith, on December 21, 2017:

- "[A] federal judge, signed a court order that says that you-all are to pay back every dime that we gave you but we don't get any interest. … But with that said, that means she cancelled the contract … that means every dime you borrowed, *you owe us now*. … if you don't have the money to give back, *the money that was in there, that was in the 401(k), then becomes actually the property of the companies ….*"  Seeger Decl., Ex. A, at 3 (emphasis added).

4

- "[Judge Brody] says none of you-all had the compensity (sic) or understanding enough to have signed the contract so, therefore, you-all basically should not have anybody charge you interest on the money and, therefore, *you-all need to give all the money back*." *Id.* at 7 (emphasis added).

- Regarding the interest from Mr. Smith's IRA monies allegedly now belonging to Cambridge, Mr. Walker said: "We talked with our attorney. He said basically at this point any money that you have in which somebody signed an agreement saying that you can use their money as leverage against the money they have is *money that belongs to us until this is overturned*." *Id.* at 13 (emphasis added).

- Mrs. Smith pressed Mr. Walker, noting that the 401(k) money was only collateral in the event the NFL lawsuit fell through and that did not happen. Mr. Walker responded: "No. See you're again talking about a contract that don't [sic] exist anymore based on Judge Brody. Judge Brody says that contract does not matter. So you're talking about the stipulation that was in the agreement. As of right now, Judge Brody said there is no agreement. *You-all just owe the money back, period*, and she don't want to hear any more about it." *Id.* at 14 (emphasis added).

- As per Mr. Walker, "… as far as [Judge Brody's] concerned, none of these guys have the capacity to understand what they've signed and therefore, *anything they've signed, including a signed contract saying give me interest on the money I put in or money that I've received that I have to pay interest back on, does not exist because they don't have the capacity to make a decision to make money nor get money.* … there is no interest as far as she is concerned because what she said was, just like you're not capable of receiving money … *you don't get any money from the interest*

because … if you can understand the contract that would get you paid interest, you understand the contract that should have made you able to pay back interest. *You can't have it just one way*. … So that's what we were trying to explain to her, you're hurting players who actually took it upon themselves to also invest so they could make money and she said, no, they wouldn't understand how to do that. And so they don't get any money from – any interest they would have invested because they wouldn't have understood the contract." *Id.* at 17-19 (emphasis added).

- Walker further stated "… you got to read this order so you can see [Judge Brody]'s saying you are stupid and you don't know what you got from us." *Id.* at 26.

- Concerning his communications with other Third-Party Funders, Walker told Mr. Smith the following: "So what I suggested to the group, I'm talking to other funders, is what we need to do is invest in paying some of these doctors who have actually set out and understand CTE to be able to sit in front of this judge and say to her you're out of your freaking mind. They don't have to be retarded, just they have CTE." *Id.* at 32.

Thus, Cambridge has misrepresented to Mr. Smith (and presumably other Class Members as well) that the Explanation and Order declared that Cambridge is entitled to immediate reimbursement from Class Members of monies that it advanced to them. Clearly, it did not. The Court predicated a Third-Party Funder's recoupment of the advanced monies upon the entity's willingness to sign a waiver *and* upon the Claims Administrator being in the position to pay a monetary award to the Class Member with whom the Third-Party Funder had entered into a purported assignment agreement. ECF No. 9517, at 5 ("[T]he Claims Administrator will be authorized to withhold—from the Class Member's monetary award—the amount already paid to

the Class Member under the agreement and return it to the Third-Party Funder.").  The latter prerequisite is necessarily contingent upon the Class Member receiving a Qualifying Diagnosis, making a Claim, and obtaining a Monetary Award Determination from which the Claims Administrator could withhold funds equal to the amount of funds advanced to the Class Member by the Third-Party Funder.  Absent such circumstances, the Explanation and Order does not provide for the Third-Party Funder's recoupment of the advanced monies.

To be clear, because the Settlement is designed to provide monetary awards to those Class Members qualifying for same over the next 65 years, plainly, not all of the Class Members are presently impaired and some may not manifest a Qualifying Diagnosis for decades, if ever. As such, the Claims Administrator cannot, as a practical matter, withhold monies from monetary awards yet to be determined.[3]  Consequently, the Explanation and Order does not provide a protocol for Third-Party Funders to recoup advanced funds in the short term directly from Class Members not presently manifesting a Qualifying Diagnosis.  These obvious facts, however, as well as several others,[4] are lost on Cambridge's management.

---

[3]  Class Counsel does not know what, if anything, Cambridge did to assess whether a Class Member to whom it advanced funds was likely to receive a monetary award and the timing of same.

[4]  Indeed, as reflected in the last bullet excerpt above, not only are Cambridge's representatives making misrepresentations concerning the Court's Explanation and Order, both as to its content and ramifications, they are under the misconception that the Settlement compensates CTE per se, in the living, and seemingly under the impression that CTE can be diagnosed in the living.

Furthermore, Mr. Walker's lack of understanding is also evidenced by what he did not say.  Mr. Walker never mentioned during the call that the Explanation and Order is directed at a specific type of funding arrangement—an assignment—one that is specifically precluded by the Settlement Agreement, as the Explanation and Order explicitly held.

At any rate, the Explanation and Order does not, and need not, provide a mechanism for every Third-Party Funder to recoup funds advanced to every Class Member through a purported assignment. After all, the Court determined that "[t]o the extent that any Class Member has entered into an agreement that assigned or attempted to assign any monetary claims, that agreement is void, invalid and of no force and effect." *Id.* Therefore, Cambridge's attempt to use the Explanation and Order as a license to seek immediate reimbursement of funds, directly from Class Members, through misrepresentations, should not be countenanced.

Additionally, Cambridge's threats to Mr. Smith (and potentially other Class Members) that it intends to engage in self-help by taking ownership of Class Members' retirement funds (and/or interest thereon) provided to, and held by, Cambridge for purposes of being "invested," as a means of obtaining immediate repayment of monies advanced under purported assignment agreements similarly should not be countenanced.[5] Certainly, Cambridge should be precluded from representing to Class Members that this Court's Explanation and Order authorizes this type of self-help.

Moreover, to facilitate tracking of these retirement monies in order to ensure that they are not being (or have not already been) transferred to Cambridge, either without a Class Member's

---

[5] In an effort to discover more about the contention that Cambridge received and purportedly "invested" IRA-rollover monies, Class Counsel sent a letter to counsel for Cambridge. Seeger Decl., Ex. D. In response, Cambridge's counsel admitted that Cambridge is holding retirement account monies of Class Members. *Id.*, Ex. E. Although he denied that Cambridge was seeking repayment now from Class Members for advanced monies or taking ownership of retirement account monies to offset the advances, *see id.*, in light of the statements by Addys Walker and the continuing refusal by Cambridge to provide detailed accountings of the retirement monies to Class Members, as well as to keep the Court informed concerning the communications and activity occurring in the wake of the Court's Explanation and Order, Class Counsel determined it was appropriate to file the instant Motion. Class Counsel also deemed it prudent to act swiftly and forego further discovery efforts for fear that Cambridge would move the monies in the interim.

consent, or with his consent but based upon misrepresentations, Class Counsel seeks an order from the Court directing Cambridge to produce to Class Counsel all documents related to these "invested" retirement funds, and to provide Class Members, Class Counsel and the Court with detailed accountings of these funds.  Notably, even the former head of Cambridge, the presently incarcerated Don Warner Reinhard,[6] expressed concern that those presently running Cambridge had not provided the Class Members with "a complete understanding and a detailed report of all assets that the limited partnership is invested in and a complete understanding of your account value."  Seeger Decl., Ex. B, at 1 (Reinhard Jan. 16, 2018 email).

Mr. Reinhard initially sent an email to all Class Member "investors" with Cambridge on January 12, 2018 concerning the breakdown in his relationship with his "business partner at Cambridge Capital Group," Tim Howard, and to update them (albeit, somewhat vaguely) on the status of the criminal charges against him and his incarceration.  *Id.*, at 3 (Reinhard Jan. 12, 2018 email).  He further stated the following in an email to Mr. Smith, dated January 16, 2018:

> I am very disheartened to hear what you are saying about the communication of your 401k rollover proceeds that were invested in the limited partnerships of Cambridge Capital Group.  Those funds were invested in multiple types of structured legal settlements as well as mortgages and other private loans.  Some of these legal settlements included settlement advances to selective players who were fully qualified to reduce any potential risk.  Rest assured, the assets that I invested in were solid and unless they've been changed there should not be any concern.… I also have received no information from the auditor who was supposed to be completed in mid-August with the audit for 2016.

*Id.*, at 1.  On January 20, 2018, Mr. Reinhard sent another email to all of the Class Member "investors," including Mr. Smith, stating the following:

> While I provided each of you with an approximate account valuation as of 6/30/2017 because CCG's new management had failed to do so at 3/31 and 6/30

---

[6]     According to records from Bay County, Florida, on January 4, 2018, Don Reinhard pled nolo contendere to the charge of aggravated child abuse, and was sentenced to 60 months' incarceration, less time served of 319 days.  Seeger Decl., Ex. F.

as required by the LP Private Placement Memorandums, some of you have requested if I can provide an update because CCG still has not provided any evaluation information for any of 2017. This is appalling and shocking and a very serious concern I have. This is also one of the primary concerns I have that I spoke to you about in my email sent Tuesday.

Based on my knowledge of the limited partnership portfolio assets and assuming Tim Howard and CCG have not made dramatic changes that I am unaware of, I feel safe in projecting that your account value should have increased another 18% to 20% for 7/1/2017 to 12/31/2017.

Again this is only a projection as I cannot seem to get any kind of response from CCG or the auditor as he refuses to communicate with me. …

*Id.*, Ex. C.

As a result of the discovery authorized by the Court's Order of July 19, 2017 [ECF No. 8037], ensuing motion practice, and the Court's issuance of the Order, dated October 19, 2017 [ECF No. 8466], granting Class Counsel's motion to compel Mr. Howard and the Cambridge Entities to respond to discovery requests, Class Counsel received responses from Cambridge to the document requests, on or about November 11, 2017, including assignment agreements between Cambridge and over thirty Class Members. *Id.*, ¶ 5. Class Counsel remains in the dark, though, as to which of these Class Members, in addition to Mr. Smith, transferred 401(k) rollover IRA monies to Cambridge to "invest" and the terms of same because those documents were not produced. Production of these documents and a detailed accounting by Cambridge would shed light on this issue.

Furthermore, as per his comment in the last bullet above, Mr. Walker and the other Third-Party Funders are discussing amongst themselves the impact of the Court's Explanation and Order and the actions they are taking or intend to take in response. In recognition of the possibility that other Third-Party Funders are mistakenly or deliberately misconstruing the Explanation and Order in the same manner as Mr. Walker – as a license to seek immediate

reimbursement of funds advanced to Class Members under assignment agreements directly from the Class Members themselves (as opposed to seeking reimbursement from the Claims Administrator upon the issuance of a Monetary Award Claim Determination) – Class Counsel seeks an order allowing for corrective disclosures so as to clarify for Cambridge, the other Third-Party Funders, and Class Members that such is not the case.

Finally, because the Court already has declared the assignment agreements to be "void, invalid and of no force and effect," ECF No. 9517, at 5, it is inappropriate for Cambridge to retain as collateral for these void agreements the retirement funds of Class Members.  As such, Class Counsel requests that the Cambridge Entities be ordered to return to Class Members their retirement funds held as collateral, along with earnings and interest thereon.

## II.   <u>ARGUMENT</u>

### A.   **The Court Clearly Has the Inherent Power to Enforce Its Explanation and Order and to Prevent It from Being Misconstrued**

Cambridge went far further than engaging in improper communications with Class Members concerning the Settlement itself.  It made false and misleading statements to Class Members specifically related to this Court's Explanation and Order, which was designed to address prior misinterpretations of "unambiguous language of the Settlement Agreement" by Cambridge and other Third-Party Funders, concerning the Settlement's prohibition on assignments.  ECF No. 9517, at 1.[7]  Cambridge is using the misrepresentations to attempt to circumvent this Court's unambiguous rulings.  This Court is empowered to correct these misleading statements and to ensure that its Explanation and Order is not misconstrued by anyone.  Indeed, "[i]t is inherent in the power of this Court to enforce its own orders."  *HSH*

---

[7]   Although the Explanation and Order specifically references, by name, only Third-Party Funder RD Legal, it plainly applies to all Third-Party Funders that attempted to enter into assignment agreements with Class Members.

*Nordbank v. M/V AHMETBEY*, No. Civ.A. 03-3520, 2004 WL 359977, at *6 (E.D. Pa. Jan. 30, 2004) (citing *Chambers v. Nasco Co.*, 501 U.S. 32, 44 (1991)); *accord EEOC v. U.S. Steel Corp.*, 877 F. Supp. 2d 278, 282 n.5 (W.D. Pa. 2012) ("This Court has the inherent authority to interpret its own orders.").

**B.      The Court Has Broad Authority to Prohibit and Regulate Improper Communications with Class Members Pursuant to Federal Rule of Civil Procedure 23(d) and the All Writs Act and Should Exercise That Authority to Enjoin These Improper Communications and Compel Corrective Disclosures**

As Class Counsel has reiterated in numerous briefs presented to this Court over the past year, this Court has authority over third-party interlopers seeking to profit from this Settlement, at Class Members' expense.  District courts have broad discretionary powers under Fed. R. Civ. P. 23(d) to supervise communications with class members.  Rule 23(d), in relevant part, states:

> **Conducting the Actions.**
>
> (1) ***In General.***  In conducting an action under this rule, the court may issue orders that:
>> . . .
>> (B) require – to protect class members and fairly conduct the action – giving appropriate notice to some or all class members of:
>>> (i)    any step in the action …

Fed. R. Civ. P. 23(d)(1)(B)(i); *see Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 171 (1989); *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100-01 (1981).

Courts have long recognized the potential for abuse that may occur when a party or its counsel communicate with members of a class or proposed class.  *See Gulf Oil Co.*, 452 U.S. at 99-100; *In re Sch. Asbestos Litig.*, 842 F.2d 671, 679-80 (3d Cir. 1988); *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 601-02 (2d Cir. 1986); *Kleiner v. First Nat'l Bank of Atlanta*, 751

F.2d 1193, 1201-03 (11th Cir. 1985).[8]   Specifically, misleading communications to class members regarding the litigation pose a significant threat to the fairness of the proceedings, the fundamental rights of parties, the adequacy of representation, and the general administration of justice generally.   *In re Sch. Asbestos Litig.*, 842 F.2d at 680; *see also Waldo v. Lakeshore Estates, Inc.*, 433 F. Supp. 783, 790-91 (E.D. La. 1977) ("Unapproved communications to class members that misrepresent the status or effect of the pending action also have an obvious potential for confusion and/or adversely affecting the administration of justice.") (footnote omitted), *appeal dismissed*, 579 F.2d 642 (5th Cir. 1978).

Because of the potential for abuse, many courts have found that this power to regulate communications to class members is adjunct to the authority of the courts themselves.   District courts have "both the duty and the broad authority to ... enter appropriate orders governing the conduct of counsel and parties."   *Gulf Oil Co.*, 452 U.S. at 100; *In re Sch. Asbestos Litig.*, 842 F.2d at 679-80.   "The judge has ultimate control over communications among the parties, *third parties*, or *their agents* and class members on the subject matter of the litigation to ensure the integrity of the proceedings and the protection of the class."   David F. Herr, *Annotated Manual for Complex Litigation, Fourth* §21.33, at 355 & n.917 (rev. ed. 2017) (hereafter "MCL") (emphasis added); *accord In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, No. 05-MD-1720, 2014 WL 4966072, at *31 (E.D.N.Y. Oct. 3, 2014) (same).   "The court may take curative action – such as requiring the distribution of corrective notices or entering injunctive relief – where misleading or false statements are made to class members."

---

[8]   As the Eleventh Circuit noted in *Kleiner*, commercial speech that is "untruthful or misleading … has no claim on first amendment immunity.…   Commercial speech merits constitutional safeguards only to the extent it is accurate, in keeping with its purpose of insuring the free flow of reliable information crucial to independent decisionmaking."   *Kleiner*, 751 F.2d at 1204 (citing *Central Hudson Gas Co. v. Pub. Serv. Comm'n,* 447 U.S. 557, 566 (1980), and *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.,* 425 U.S. 748, 771 (1976)).

*Id.*; *accord* MCL §21.33, at 355 & n.917 ("Corrective or prophylactic notice to potential class members may be ordered at any stage of the proceedings[.]").

There can be no genuine dispute that the Court has the authority to regulate communications and take curative action.  MDL judges possess authority over parties and non-parties, as related to the Settlement and the administration thereof, over which they preside, under the MDL statute, 28 U.S.C. § 1407, Fed. R. Civ. P. 23(d), and the All Writs Act, 28 U.S.C. § 1651.  "Where, as here, a district court retains exclusive jurisdiction over settlement agreements and distribution of settlement funds pursuant to those agreements, it may issue orders necessary to protect the settlement from threats by both parties *and non-parties*."  *In re Visa Check/Mastermoney Antitrust Litig.*, No. CV-96-5238 (JG), 2006 WL 1025588, at *4 (E.D.N.Y. Mar. 31, 2006) (citing *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 336 (2d Cir. 1985) (emphasis added)); *In re Payment Card*, 2014 WL 4966072, at *31; *accord* MCL § 21.33, at 355.

Indeed, in *Visa Check*, the court held that because the non-parties' "contracts with class members plainly affect the administration of the settlements and the distribution of the settlement funds, the All Writs Act authorize[d] the relief sought by Lead Counsel."  2006 WL 1025588, at *5.  In that case, the third party was Spectrum, a claim-filing and fund recovery service for commercial class actions, which sought to "entice class members to retain Spectrum to administer their claims and … to purchase their claims outright."  *Id.* at *1.  Similarly, here, Cambridge purported, pursuant to its assignment contracts with Class Members to "purchase from [the Class Member] Seller a portion of the Proceeds (the 'Purchased Property') for monetary consideration (the 'Purchase Price')."  *See* ECF No. 8371-19.  This Court already has

exercised its authority over non-parties in declaring these assignment agreements to be "void, invalid and of no force and effect."  ECF No. 9517, at 5.

In *Visa Check*, the court ordered that corrective notice be sent to all class members who had entered into contracts with Spectrum in order to notify the class members that the contracts could be voided without legal ramifications within a specified time period if class members submitted affidavits indicating they had relied upon Spectrum's misleading marketing materials in entering into the contracts.  Quoting the Supreme Court, the *Visa Check* court held that "'[t]he power conferred by the [All Writs] Act extends, under appropriate circumstances, to persons who, though *not parties to the original action* or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice."  *Id.* at *5 (quoting *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174 (1977)) (emphasis added).

The *Visa Check* court emphasized its intimate involvement with the litigation, the settlement and the administration of the settlement, and recognized its power to be proactive vis-à-vis third parties seeking to involve themselves with class members in order to profit from the settlement funds:

> I have presided over this action since 1996.  With the express consent of all parties, I played an active role in the settlement discussions and have maintained an active role in the administration of the settlement.…  The settlement of a long, hard-fought case has given those class members a tangible interest in settlement funds.  I have an affirmative obligation to protect those interests….  The nature of the Court's interest is as simple as it is strong: the class members must not be misled.  Where false or misleading statements are used to solicit business from them, I have no intention to sit by and relegate them to a cause of action for breach of contract or fraud.  To do otherwise-that is, *to say that I am powerless to take steps, both proactive and reactive, to protect each class member's interest in the settlement funds, even when I know they are being misled-would be an abdication of responsibility. It would also erode the class members' and the public's respect for the settlements themselves, and for the process that produced them.*

*Id.* at *4 (emphasis added).   This Court has been similarly proactive throughout the implementation phase of this litigation and is likewise far from powerless to take steps to protect Class Members from third parties' misconduct.   It is fully empowered to exercise jurisdiction over Cambridge and order it to (1) cease and desist in making false statements to Class Members concerning what, if anything, Cambridge is authorized to do consistent with the Court's Explanation and Order; and (2) produce documents related to "invested" retirement funds to Class Counsel and accountings as to all Class Members' retirement funds "invested" with Cambridge and related in any way to the Settlement.   *See Jack Faucett Assocs., Inc. v. AT&T*, No. 81-1804, 1985 WL 25746, at *8 (D.D.C. Oct. 18, 1985) (ordering third-party claims processing companies to produce copies of agreements and assignments with class members, solicitation letters and other communications and lists); *McWilliams v. Advanced Recovery Sys., Inc.*, 176 F. Supp. 3d 635, 642 (S.D. Miss. 2016) (third-party attorneys who attempted to "poach" members of certified class by sending solicitation letters were subject to court's jurisdiction).[9]

### C.   This Court Has Expressly Acknowledged Its Fiduciary Duty to Protect the Interests of Class Members

This Court has expressly, repeatedly, acknowledged its fiduciary duty to protect the interests of Class Members, a principle deeply ensconced in caselaw,[10] most recently in the

---

[9]      *See also in re Synthroid Marketing Litig.*, 197 F.R.D. 607, 610 (N.D. Ill. 2000) ("An injunction, where necessary to protect the court's earlier orders . . . is authorized under the All Writs Act, 28 U.S.C. § 1651(a).   That power extends to non-parties.") (citing *United States v. N.Y. Tel. Co.*, 434 U.S. at 174 and *United States v. Silva*, 140 F.3d 1098, 1104 (7th Cir. 1998)).

[10]      *E.g.*, *Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992) ("[T]he courts have a duty to protect the interests of absent class members."); *In re Lucent Techs., Inc., Secs. Litig.*, 307 F. Supp. 2d 633, 641 (D.N.J. 2004) ("A court is obliged to protect class members'[] interests[.]"); *Valente v. Pepsico, Inc.*, 89 F.R.D. 352, 357 (D. Del. 1981) (noting "the Court's special duty to protect the interests of absent class members in administering a settlement"); *Tolmasoff v. Gen.*

16

Explanation and Order.  ECF No. 9517, at 2 ("As the fiduciary of the Class, it is this Court's obligation to enforce … the Settlement Agreement"); *accord* ECF No. 8037, at 3 (ordering hearing on third-party deceptive practices after noting that it is "a fiduciary of the Settlement Class Members, responsible for protecting the Settlement Class Members").  Under Federal Rule of Civil Procedure 23(d), a district court may impose conditions on the parties and their counsel in a class action.  Fed. R. Civ. P. 23(d)(1)(C) ("In conducting an action under this rule, the court may issue orders that … impose conditions on the representative parties or intervenors"); *see Allied Sanitation, Inc. v. Waste Mgmt. Holdings, Inc.*, 97 F. Supp. 2d 320, 330 (E.D.N.Y. 2000) (noting "the broad reach of the supervisory powers granted to the courts under Rule 23(d)"); *Peil v. Nat'l Semiconductor Corp.*, 86 F.R.D. 357, 366 (E.D. Pa. 1980) ("the Court may intervene, if appropriate, pursuant to its inherent power to protect the class members"); *duPont v. Wyly*, 61 F.R.D. 615, 623 (D. Del. 1973) (noting "the broad powers of supervision conferred upon the Court by Rule 23(d)"); *see also*, *e.g.*, *In re Payment Card*, 2014 WL 4966072, at *1 (court's "clear" authority and "strong" obligation to safeguard absent class members permitted it to permanently enjoin third-party claims filing companies from filing claims if they knowingly made material false or misleading statements in order to solicit business).

Moreover, it has long been held that a federal court has inherent power to render relief and that "equitable remedies are a special blend of what is necessary, what is fair, and what is workable."  *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973); *see generally Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946) ("Power is . . . resident in the District Court . . . to do

---

*Motors, LLC*, No. 16-11747, 2016 WL 3548219, at *10 (E.D. Mich. June 30, 2016) ("The court must protect the interests of absent class members, and Rule 23(d) gives the judge broad administrative powers to do so, reflecting the equity origins of class actions.") (citation, internal quotation marks, and emphasis omitted).

equity[.] . . . In addition, the court may go beyond the matters immediately underlying its equitable jurisdiction and decide whatever other issues and give whatever other relief may be necessary under the circumstances.") (citation and internal quotation marks omitted).   For instance, where entitlement to funds is in dispute or where there is a need to preserve funds pending further order, courts can direct that funds be placed in escrow.   *See Am. Trucking Assocs., Inc. v. Cray*, 483 U.S. 1306, 1310 (1987) (ordering escrow of disputed tax revenues pending adjudication on constitutionality of tax); *Zebrowski v. Hanna*, 973 F.2d 1001, 1004-05 (1st Cir. 1992) (district court had inherent authority to order mortgage payments placed into escrow).   Therefore, this Court has the equitable power to compel Cambridge to produce all documents and accountings as to Class Members' "investments" with Cambridge in light of Cambridge's threat to take possession of these monies and/or the interest thereon under the purported auspices of this Court's Explanation and Order.   *See* Seeger Decl., Ex. A, at 18-19 ("there is no interest [on your 401(k) investment] as far as [Judge Brody] is concerned because what she said was, just like you're not capable of receiving money … you're not capable of paying us back for the money we gave you as far as interest is concerned because you do not have the ability to understand the contract.… You don't get to get any money from the interest because … [y]ou can't have it just one way.").   Finally, since this Court already has determined that the assignment agreements are void, this Court has the power to order Cambridge to return to Class Members their retirement funds held as collateral related to assignment agreements, along with earnings and interest thereon

### D.     The Standard Is Met for a Permanent Injunction

As the Second Circuit noted, "[i]njunctions issued under the authority of the All Writs Act stem from very different concerns than those motivating preliminary injunctions governed

by Federal Rule of Civil Procedure 65.  Preliminary injunctions under Rule 65 are designed to preserve the status quo between the parties before the court pending a decision on the merits of the case at hand."  An injunction issued under the All Writs Act, however, is "needed to prevent third parties from thwarting the court's ability to reach and resolve the merits of the federal suit before it."  Furthermore, "there is a difference between the power to enjoin an unrelated non-party pursuant to the All Writs Act and the narrower authority delineated by Rule 65(d), which confines the application of injunctions to parties, 'their officers, agents, servants, employees, and attorneys, and [to] those persons in active concert or participation with them who receive actual notice of the order.'"  *In re Baldwin United Corp. (Single Premium Deferred Annuities Ins. Litig*.), 770 F.2d 328, 338-39 (2d Cir. 2001).

In the context of the All Writs Act, "courts have recognized that injunctions exist outside of the traditional injunction framework governed by Fed. R. Civ. P. 65."  *Ackerman v. Exxon Mobil Corp*., 734 F.3d 237 (4th Cir. 2013); *accord Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004) ("The requirements for a traditional injunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns.") (citing *United States v. N.Y. Tel. Co.,* 434 U.S. at 174) (upholding injunction under All Writs Act without regard to traditional four factors)).  Courts can therefore issue injunctions pursuant to the All Writs Act "if doing so would be 'necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law,' 28 U.S.C. § 1651(a), and provided that the terms of the injunction are sufficiently 'specific and definite' to apprise the party enjoined of the conduct which is prohibited and that the party enjoined receive notice of the injunction entered against them."  *In re Payment Card*, 2014 WL 4966072, at *32.

The injunction that Class Counsel requests here satisfies these requirements. Class Counsel requests that the Court enjoin the Cambridge Entities from continuing to disseminate misleading and deceptive communications regarding the Explanation and Order and from engaging in self-help by taking Class Members' retirement funds as repayment for the monies advanced under the assignment agreements. This action is necessary and appropriate in aid of the Court's efficient administration of the Settlement, and to prevent (1) confusion among Class Members, (2) violation of the Explanation and Order, and (3) unlawful taking of Class Members' retirement monies under the purported auspices of the Explanation and Order. Entry of an injunction will also discourage other Third-Party Funders from communicating false interpretations of the Explanation and Order to Class Members in an effort to recoup monies under agreements that the Court has declared are void, invalid, and of no force and effect.

In the instant matter, Cambridge's misrepresentations have obstructed the orderly process contemplated by this Court. An injunction protecting Class Members and otherwise safeguarding the integrity of the class action process is therefore appropriate. *See* MCL § 21.33, at 300 n.917 ("Corrective or prophylactic notice to potential class members may be ordered under Rule 23(d)(2) at any stage of the proceedings"). Injunctive relief is required because "[e]ven if Class counsel were in a position to know that misleading or false communications would be made … beforehand, which it is not, the damage may be done in an instant." *In re Payment Card Interchange Fee,* 2014 WL 4966072, at *33.

III.    <u>**CONCLUSION**</u>

For the foregoing reasons, the Court should enter an order in substantially the form of the proposed order submitted herewith.

Dated:  January 26, 2018                                        Respectfully submitted,


<u>/s/ Christopher A. Seeger</u>
Christopher A. Seeger
SEEGER WEISS LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
*cseeger@seegerweiss.com*

***Co-Lead Class Counsel***

21