## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | Case No. 2:12-md-02323-AB MDL No. 2323 |
| | Hon. Anita B. Brody |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*, | |
| Plaintiffs, | CIVIL ACTION NO. 14-cv-29-AB |
| v. | |
| National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc., | |
| Defendants. | |

## SURREPLY OF THE STERN LAW GROUP, MOKARAM LAW FIRM, AND THE BUCKLEY LAW GROUP TO THE REPORT OF PROFESSOR WILLIAM B. RUBENSTEIN

Howard Langer
Edward Diver
Peter Leckman
LANGER GROGAN & DIVER, P.C.
Three Logan Square, Ste. 4130
1717 Arch Street
Philadelphia, PA 19103
(215) 320-5660

Respondents the Stern Law Group, Mokaram Law Firm, and the Buckley Law Group respectfully submit this surreply to Professor Rubenstein's reply to the responses to his initial report. Professor Rubenstein has substantially changed his recommendation to increase his proposed cap on IRPA fees from 15% to 22%. While Respondents welcome the increase, it highlights the arbitrariness and inappropriateness of Professor Rubenstein's approach, which, without explanation, remains divorced from the market rates he determined were reached in an efficient market. He relies instead on highly uncertain estimates and intuitions about what is fair. He also continues to take unexplained analytic shortcuts that lead him to recommend a cap that is inconsistent with his own approach. The Court should not set aside private contracts made in a highly efficient market based on his flawed analysis.[1]

## I.    The Reply Confirms the Flaws in Professor Rubenstein's Approach

The basic justification for Professor Rubenstein's change to his proposed cap for IRPAs is the fact that actuarial estimates of the overall value of the settlement have changed. Under his analysis, this has an indirect effect on the amount he can recommend for IRPAs. Because the fixed amount allocated for class-counsel fees is only 11% of the new estimate (down from 15.6%), he can increase the amount recovered by IRPAs and keep the total under his target of 33%. Reply at 3-4.

This arbitrary change confirms that his whole approach represents an irrational means of determining the upper bounds of a reasonable IRPA fee. Setting aside a private fee agreement requires a conclusion that it "has resulted in such an enrichment at the expense of the client that it offends a court's sense of fundamental fairness and equity." *McKenzie Const., Inc. v. Maynard*, 758 F.2d 97, 101 (3d Cir. 1985). What percentage class counsel's fee is ultimately calculated to

---

[1] Respondents are prepared to present the opinion of Stephen A. Saltzburg, a recognized expert in attorney-fee issues. He was appointed by Judge Becker to be co-chair of the Third Circuit Task Force on Selection of Class Counsel, whose 2002 report remains an important and authoritative source today. *See* http://www.ca3.uscourts.gov/sites/ca3/files/final report of third circuit task force.pdf.

be of the overall settlement has nothing to do with the fairness and equity of IRPA contracts, which are determined by the risks and rewards of undertaking representation, the services provided to clients, and the value obtained. That is especially so here, because the actuarial calculations have changed only because of the change in estimates of the number of claims that will be paid over the period of the settlement. Yet the reasonableness of an individual player's agreement with his attorney has nothing to do with how many *other* players are compensated under the settlement, especially since the settlement is uncapped. The changed estimate did not alter the level of service any individual player has obtained or will obtain either from class counsel or from his individual counsel, and it is unlikely to have significant effects on the risks and rewards of any player's individual case. Nor, of course, will those factors be affected if—or rather, *when*—the actuarial estimates change in the future.[2] Yet Professor Rubenstein proposes to set a rate for individuals today based on highly uncertain and constantly changing estimates of what will happen to other class members over future decades.[3]

The arbitrariness of Professor Rubenstein's approach is increased by the fact that the changing actuarial estimates apply only indirectly to the IRPAs. It is because the new classwide estimates changed class counsel's estimated percentage that the IRPAs, in turn, are subject to a different cap. It is hard to imagine an analysis more distant from what is relevant in determining whether a private fee agreement should be set aside as unfair.

Professor Rubenstein's insistence on calculating the IRPA cap in terms of the remainder after class counsel's fees are subtracted from an amount he has deemed reasonable is particularly inappropriate because class counsel's fee is entirely separate from class members' benefits. Professor Rubenstein defends his approach in a footnote, contending that it is justified because class counsel fees "must be counted as part of the class's recovery regardless of how the

---

[2] In fact, Professor Rubenstein's approach would create a new kind of risk: actuarial risk.
[3] More precisely, he proposes to set the level above which a privately-negotiated fee is unfair and unreasonable on the basis of these ever-changing estimates about other attorneys and other players.

settlement is structured."[4] Reply at 3 n.8.

Yet it is one thing to say that these fees are, in some sense, part of class members' recovery and another to assume that there is no difference at all between separate fees and fees determined as a percentage of the recovery. The latter proposition does not follow from the former, and it is contrary to the long-standing recognition, including by this Court and the Third Circuit, of the significance of separate fees resulting from negotiations after class members' benefits are determined.[5] So long as it is done in good faith and without collusion (unlike in Professor Rubenstein's example), separate fees eliminate conflicts between counsel and their clients (and their clients' representatives). This is especially significant where, as here, the overall value of the settlement is uncertain. If counsel obtains a fee that is somewhat more or less than they would receive under a simple percentage analysis, then no one is able to claim unfairness or inequity, because class counsel has not bargained away others' interests for its fee.

Yet Professor Rubenstein's approach would eliminate any distinction between fees negotiated separately from class recoveries and fees negotiated as part of the overall settlement value. In fact, under his analysis, it does not matter if it is the result of explicitly trading of class members' claims for attorneys' fees because in all events, it is ultimately just a "part of the class's recovery," and the size of the fee is either reasonable or not. Indeed, under his analysis, class counsel *did* bargain away others' interests for their own fees—namely the IRPAs' fees—yet no one knew it.[6] It is unfair to IRPAs to have their fees reduced in this manner, and the fact that

---

[4] One problem with his analysis is the example that constitutes the sole bases for his conclusion. It involves an attorney who has violated his agreement with his own client—which expressly provides that the attorneys' fee is to be determined as a percentage of the overall recovery—through apparent collusion with the defendant. That is entirely inapt in this context, where there is no contractual term specifying how class fees are to be determined and "[t]here is simply no evidence in the negotiation process or the final terms of the settlement that class counsel bargained away the claims of retired players in return for their own fees." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 447 (3d Cir. 2016).

[5] *See NFL Concussion Litig.*, 821 F.3d at 447; 307 F.R.D. at 387.

[6] As Respondents discussed previously, the result of reframing the settlement in this fashion is to create just the kind of conflict the settlement avoided—making it necessary to litigate the class fee not on its own terms, but as a portion of the overall fees. And Professor Rubenstein has done so in a way that can

fees are, in some sense, "part of the class's recovery" does not change this.

The closest Professor Rubenstein comes to analyzing relevant factors like risk and workload is his acknowledgement that he had previously underestimated them.[7] Risk and workload are key factors determining market prices. When courts are required to ascertain reasonable fees, the primary task is to determine what an efficient market would generate. *See, e.g.*, *Student Public Interest Research Group v. AT & T Bell Lab.*, 842 F.2d 1436, 1442 (3d Cir. 1988) (Becker, J.) ("Market rates have served as the prime focus of our inquiry in ascertaining reasonable attorneys' fees.") (collecting cases). Yet here, though he acknowledges that the market has been efficient, Professor Rubenstein engages in an analysis that does not look to the market and is inconsistent with it. Indeed, Professor Rubenstein's increased cap is still lower than the average market rate of contracts entered into *after* the settlement. There is no basis in either of his reports for the conclusion that these agreements—entered into with full knowledge of the work performed by class counsel and their expected compensation, and with the clear understanding that IRPAs would be paid according to their individual agreements—are fundamentally unfair or inequitable.[8] To the contrary, as the product of an efficient market with no identified market failures, the market rate is the standard by which fairness is to be determined.[9]

---

only work to the detriment of IRPAs—neither class members nor their attorneys had any incentive to challenge the class fee, and Professor Rubenstein has assumed that it is reasonable, notwithstanding that his position implies that it represents the bargaining away of IRPA fees.

[7] *See* Reply at 4. His only use of this recognition is to support the altered cap number that he arrived at by subtracting his new estimate of class counsel's percentage.

[8] This is not to suggest that individual agreements that deviate significantly from market rates, or that were formed under particular circumstances, may not involve unfairness or inequity.

[9] The same problem continues to apply to Professor Rubenstein's overall proposed cap of 33%. He claims that this figure was adequately supported in his initial report. Reply at 3 n.7. But the reasons given there are all reasons that make 33% sound like a reasonable amount to him; they do not represent analysis of risk or highlight any market failures. Moreover, his admission that he underestimated risk and workload in his initial report undermines his claim that the 33% number he reached there is appropriate.

**II.      Professor Rubenstein's Simplistic Calculations Are Erroneous**

Finally, Professor Rubenstein has repeated his less-than-meticulous approach to calculating rates within his framework. The intuition driving his recommendation is that players should not pay more than 33% of their recovery in fees. The 22% is derived by subtracting class counsel's share from that number. But his math is wrong, because class counsel's percentage is a portion of the *overall* settlement value, while IRPAs recover a percentage only of the MAF payments their clients are awarded, not including the other benefits, including class counsel fees, that Professor Rubenstein is so insistent must be treated as "part of the class's recovery."

The difference is significant. Capping rates at 22% would leave IRPAs with only 17.6% of the overall settlement value using these numbers. If IRPAs got 27.7% of the MAF recoveries, overall fees would not exceed 33% of the settlement value.[10] Notably, that figure is only marginally below the 29% Professor Rubenstein calculated to be the average agreed IRPA fee. Leaving existing agreements in place would result in overall fees of 34.1%—hardly a level that represents the kind of fundamental unfairness that would justify rewriting private agreements, especially given the decades'-long time horizon of representation involved in this case.[11]

Professor Rubenstein again acknowledges that he has taken a shortcut here, but again provides no real explanation for his failure to do the correct math. Instead, he simply states that "[t]he 22% figure is more transparently obvious to class members and sufficient in the context of this case." Reply at 4 n.9. In fact, it is the opposite of transparent—it is wrong. And he provides zero basis for the conclusory statement that it is "sufficient in the context of this case." To the contrary, the entire recommendation is built on the idea that overall fees should not exceed 33%, yet his recommendation results in overall fees of 28.5%, a fact he never acknowledges, much less justifies.

---

[10] Thirty-three percent of the overall value of $982.2 million is $324.1 million. Subtracting $106.8 million for class fees leaves $217.3 million, which is 27.7% of the estimated MAF ($785 million).

[11] It is also substantially below the 40% rate the market had set for individual cases prior to the MDL.

Dated: January 30, 2018                     By:        */s/Howard Langer*

                                                Howard Langer
                                                Edward Diver
                                                Peter Leckman
                                                LANGER GROGAN & DIVER, P.C.
                                                Three Logan Square, Ste. 4130
                                                1717 Arch Street
                                                Philadelphia, PA 19103
                                                Tele: (215) 320-5660

## <u>CERTIFICATE OF SERVICE</u>

I, Howard Langer, hereby certify that I caused to be served a true and correct copy of the within and foregoing surreply of the Stern Law Group, Mokaram Law Firm, and the Buckley Law Group to the report of Professor William B. Rubenstein on this date upon all counsel of record via the Court's Electronic Case Filing system.

Dated: January 30, 2018      /s/ Howard Langer
               Howard Langer