UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | Case No. 12-md-2323 (AB)<br><br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>        Plaintiffs,<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>        Defendants. | **Hon. Anita B. Brody** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**SURREPLY OF X1LAW TO THE EXPERT REPORT OF
<u>PROFESSOR WILLIAM B. RUBENSTEIN</u>**

In accordance with this Court's January 23, 2018 Order [ECF No. 9576] granting leave, X1Law respectfully submits this Surreply to Professor William B. Rubenstein's Reply [ECF No. 9571] to the Responses to his Expert Report of (the "Report").

**<u>Professor Rubenstein's Updates</u>**

In his Reply, Professor Rubenstein provided three updates to his Report:

- If the Court were to award Class Counsel the entire $112.5 million fee and expense request, their fees would amount to approximately 11% of the total value of the settlement.

- In light of the estimated 11% Class Counsel fee, the Court should set a cap on all contingent fee contracts at 22% of the class member's MAF payment.

- A 2% set-aside only as a last resort.

*See* Reply, ECF No. 9571, p. 2.

## 11% Class Counsel Fee and 22% Contingent Fee Cap

X1Law disagrees with Professor Rubenstein's analysis and recommendation that the Court should set a presumptive 22% cap on all contingent fee contracts.  As previously argued[1] in numerous responses: (a) the common benefit fee is separate from individually retained plaintiff's attorneys ("IRPAs") contingency fees; (b) the analysis presupposes arbitrary numbers; and (c) a presumptive cap on IRPA contingent fee contracts weakens the "watchdog" role IRPAs play as contemplated by the Settlement Agreement.

## 2% Set Aside Only as a Last Resort to Fund Future Work

X1Law agrees with Professor Rubenstein that a 2% set-aside should only be ordered as a last resort, with the caveat that Professor Rubenstein provided good reasons why a 2% set-aside should never be resorted to. Professor Rubenstein recommends that a 2% set-aside of Retired Player awards should only be ordered as a last resort.  However, ordering a 2% set-aside, even as a last resort, will necessarily result in taking 2% of all unrepresented Retired Players' awards and 2% of IRPA contingency fees.  Professor Rubenstein offered a number of alternatives that could be put in place ahead of a 2% set aside which, if implemented, would ensure that a 2% set aside never becomes necessary.

The purpose of a 2% set-aside is to pay Co-Lead Class Counsel's ("CLCC") fees for additional work after the Settlement.  According to the January 3, 2018 Declaration of Chris Seeger, one of the disputes with the NFL requiring his firm's representation is the "generally consistent" language in the Settlement Agreement:

> Another dispute with the NFL has been over what diagnostic criteria satisfy the pre- Effective Date "generally consistent" language in Section 6.4(b) and Exhibit A-1 of the Settlement Agreement relating to Qualifying Diagnoses for purposes of demonstrating Level 1.5 and Level 2 Neurocognitive Impairment. *See* ECF No. 6481-1, at 37, 106-08. The NFL has argued that the impairment levels that drive

---

[1] The extensive briefing by numerous parties in response to Professor Rubenstein's report addresses in detail the Class Counsel fee assumption, separate nature of common benefit fees versus contingency fees and cap on contingent fee agreements, and need not be repeated.

the BAP, which are narrow, should guide, whereas I maintain that a more generous and inclusive standard, the "dementia" diagnosis, should guide. We have submitted statements to the Special Masters on this issue in support of individual Class Members in connection with appeals of monetary award determinations.

See ¶6 Seeger Declaration, ECF No. 9552-1.

The "generally consistent" standard is critical to Retired Players with Dementia Diagnosis Claims. In support of its argument for the entire 5% set-aside or future attorney's fees [*see* ECF No. 9552, p.11], CLCC cites its opposition to the NFL regarding the "generally consistent" standard in the Settlement Agreement. *See* ¶6 Seeger Declaration, ECF No. 9552-1. However, this exact issue was raised throughout numerous filings[2] aimed at debunking the NFL's unsupported position that the BAP impairment requirements (as opposed to requirements "generally consistent" with the BAP requirements per the Settlement Agreement) guide pre-effective date diagnosis. Each time, CLCC rigorously opposed and sided with the NFL. *See*, CLCC & NFL Joint Response, ECF No. 8432.

CLCC is now first making the same arguments (that were raised last August) on a case by case basis to the Special Master. At the time, CLCC filed a joint motion with the NFL requesting an extension of time [ECF No. 8302] to respond to a motion [ECF No. 8267] addressing failure to recognize "generally consistent" in the Claims Process. Instead, CLCC addressed predatory lending[3] claims directly to the Court, and the Court entered orders that precluded certain practices and provided Class Wide relief. At the September hearing regarding predatory practices, CLCC indicated that the Settlement was "working perfectly" and on other occasions indicated that the settlement process was straightforward and simple. It is not clear whether CLCC collaborated with other Class Counsel to contemporaneously investigate and address the "generally consistent" issue while CLCC pursued predatory practices.

---

[2] *See* ¶¶13, 14 ECF No. 8267, p. 5.
[3] Ensuring that Retired Players get paid is, at minimum, equally as important as policing predatory lending practices and potentially usurious no-recourse loan transactions.

CLCC and the NFL further successfully advocated against having the Court rule on the Claims Administration issues. *See* Order Denying, ECF No. 8882. Rather than efficiently oppose the attempt to eliminate the "generally consistent" standard in the Settlement Agreement in one fell swoop, CLCC took the position that it must be case by case basis through the Claims Process. Now, CLCC cites the need to oppose the NFL's position on the "generally consistent" standard in support of CLCC's assertion that a 5% set-aside from unrepresented Retired Players' awards and IRPA fees is necessary. However, it does not make sense to take any percentage of Retired Players' award money and deposit it into a fund earmarked to pay CLCC's fees to do repeatedly what it could have done once, but opposed.

CLCC's opposition to the earlier motions and refusal to address attempts to eliminate the "generally consistent" standard resulted in a clogged Claims Process, delayed payment to Retired Players and emboldened the attack on terms that are good for Retired Players:

- No Class-Wide ruling has been made precluding attacks on the "generally consistent" standard, leaving the Settlement Agreement susceptible to constant assault. One example is Updated FAQ No. 68, which adds a requirement for neuropsychological testing and deletes the "generally consistent" standard contained in § 1.3(b) of Settlement Agreement Exhibit, ECF No. 6481-1, p. 107. The changes create new hurdles for Retired NFL Players to meet to obtain a Monetary Award, and do not conform to the Settlement Agreement. *See* ECF No. 9557 for comparison of FAQ 68 to § 6.3(b). The purpose of the FAQ is to assist Retired Players, not elimination of the "generally consistent" standard, which only hurts Retired Players.

- The absence of a Class-Wide ruling has further left the NFL unchecked, and within its rights, to repeatedly challenge the plain language of the Settlement Agreement akin to the Claims Administrator's arguments [s*ee* ECF Nos. 8432-1, p.15-16 and 8432-2, p.4, 6-7].

- The January 29, 2018 Monetary Award Claims Report, which is attached as **Exhibit A**, indicates that there have been 2,040 Claims Submitted and 110 Paid Claims. To date, only there are only 110 Paid Claims.

- Of the mere 110 Paid Claims, only 4 are "Dementia Diagnosis" Claims (Level 1.5 and Level 2.0 Neurocognitive Impairment). Specifically, 1 is a Claim for Level 2.0 Neurocognitive Impairment and 3 are Claims for Level 1.5 Neurocognitive Impairment.

- Of the Submitted Claims, more than half (1,054) are Dementia Diagnosis Claims (Level 1.5 and 2.0 combined). Despite that Dementia Diagnosis Claims make up more than half the Submitted Claims, only 22 have been approved and only 4 have been marked as Paid Claims.

- The data from the Claims Administrator, indicating that only 4 of 1,054 Dementia Diagnosis Claims have been marked as Paid Claims, demonstrates how effectiveness of the attack on the "generally consistent" standard – the standard under which Dementia Diagnosis Claims outside the BAP are to be evaluated.

If left unchecked, the log jam of claims and attempts to revise the Settlement Agreement will continue to prevent Retired Players from being paid.

CLCC's opposition [*see* ECF No.8432] to motions aimed at addressing wholesale the issues with the Claims Process contributed to the above facts. Now, CLCC address the "generally consistent" issues piecemeal, and requests that the Class Members and IRPAs pay a full 5% set-aside, creating a multi-million dollar fun to pay CLCC's fees for future work. However, as Professor Rubenstein points out, CLCC is adverse to the Class with respect to the 2% set-aside [s*ee* ECF No. 9571, p.8]. Future attorney's fees to pay CLCC should be pursued from the NFL [*see* ECF No. 9571, p.6,], not the Retired Players or their IRPAs. There is no need for a 2% set-aside, it would only promote inefficiency and is unfair to the Retired Players.

## Conclusion

X1Law respectfully requests that the Court refrain from adopting an across the board presumptive 22% cap on all contingent fee contracts and deny any all set-asides. Instead, the Court should allow IRPA contingent fee contracts to remain in place and allow CLCC to apply to the NFL for payment of additional fees for future work.

Dated: January 30, 2018

Respectfully Submitted,

| | |
|---|---|
| Patrick J. Tighe | Attorneys for Plaintiffs/Movants |
| Attorneys for Plaintiffs/Movants | LOREN & KEAN LAW |
| X1LAW, P.A. f/k/a Patrick J. Tighe, P.A. | 7111 Fairway Drive, Suite 302 |
| 721 US Highway 1, Ste 121 | Palm Beach Gardens, FL  33418 |
| North Palm Beach, FL 33408 | Phone: 561-615-5701 |
| Phone: 561-537-3319 | Fax: 561-615-5708 |
| Fax: 561-537-7193 | mstjacques@lorenkeanlaw.com |
| Pat@X1LAW.com | Florida Bar No. 0783471 |
| Florida Bar No. 568155 | |
| | *s/ Michael St. Jacques* |
| | Michael G. St. Jacques, II |

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2018, the foregoing document was electronically filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, and that the filing is available for downloading and viewing from the electronic court filing system by counsel for all parties.

**LOREN & KEAN LAW**

*s/ Michael St. Jacques*
**MICHAEL G. ST. JACQUES, II**