IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION LITIGATION  _____  THIS DOCUMENT RELATES TO: ALL ACTIONS | § § § § § § § § § No. 12-md-2323 (AB)  MDL No. 2323 |

**SURREPLY RESPONDING TO THE REPLY OF PROFESSOR WILLIAM B. RUBENSTEIN TO RESPONSES TO EXPERT REPORT (ECF 9571)**

Lubel Voyles LLP, Provost Umphrey Law Firm LLP, Washington & Associates PLLC, and The Canady Law Firm respectfully file this Surreply to Professor William B. Rubenstein's Reply to Responses to Expert Report (ECF 9571), as invited by the Court's January 23, 2018 Order.

Professor Rubenstein's task in this fee dilemma is untenable. He is to assist the Court in crafting a fee award that will do no harm to the former NFL Players. But, a presumptive cap on private fee contracts, a disincentive to representation, unnecessarily hurts former NFL Players now that we know (a) nuances and flaws in the Settlement favor the NFL; (b) the NFL is contesting claims and payments, at a higher rate than Class Counsel anticipated,[1] and; (c) the actual participation (monetary awards made) is breath-takingly low—so low as to call into question every statistical measure the parties and the Court relied upon, because none of those past measures reflect today's reality. For these reasons, the private attorneys who represent players via contracts should not have their fees capped.

---

[1] For the most part, the delay and fight over claims has been caused by the NFL. The NFL has executed a strategy to oppose and delay claims, particularly Level 1.5, Level 2, and Alzheimer's claims. The NFL has reinterpreted the Settlement, amended the Settlement to suit its desires, and refused to agree on reasonable measures that will streamline the process. Instead, every claim must be litigated on a case by case basis. No longer does co-lead counsel Christopher Seeger announce that the players do not need a lawyer. Never has competent counsel for the players been more vital.

1

The attorneys' fee dispute has percolated for almost a year. Co-Lead Class counsel's position on fees, a race against settlement awards, is "pay me now and pay me later." Specifically, pay me now a fee and a performance bonus coincidentally exhausting the present $112.5 fee fund; and pay me later by setting aside 5% of every dollar awarded to any former NFL player in the future to pay the fees I anticipate incurring.[2] The private lawyers' solution is to (a) pay reasonably incurred Class fees now but no performance bonus until and unless success, through Settlement implementation, is a reality rather than a statistical fiction; and **thereby** (b) grow the fee fund for the benefit of players' future legal needs; and, **as a further result**, (c) postpone an unnecessary set-aside from the players' private counsel fees that will create a disincentive to represent and deprive those players of individualized advocacy when it is needed most.

Professor Rubenstein was not tasked with deciding when Class Counsel is paid or how much, though he also questioned whether an invested fee fund would better serve Class Members under the circumstances. But, on task, Professor Rubenstein tried to make the ultimate math work for the players based upon assumptions about what the Court might do. However, Professor Rubenstein's math ignores the elephant in the room: The value of the Settlement depends upon NFL players' claims qualifying for payment, which the early data shows is not happening.

Recall that Professor Rubenstein's mathematical fee-equation does not involve dollars and cents; it is a percentage of the whole.[3] But, Professor Rubenstein has fallen

---

[2] The current posture of the class counsel common benefit fee request is set forth in Co-Lead Counsel's proposed allocation, which provides more than 75% of the award to Seeger Weiss and its co-counsel, none of whom (on information and belief) represent any individual players. Were the Court to follow Seeger Weiss' request, a very small percentage of the common benefit fee award will go to firms who actually represent player-claimants, and the majority of the award will go to those who do not.

[3] He begins with a 33.33% total fee. *See* ECF 9571, p. 3 n. 7. Then, Professor Rubenstein assumes, that the Court will award Class Counsel what is requested - $112.5MM. But, Professor Rubenstein must translate that $112.5 into a percentage. Using an arbitrary present "value of the settlement" Professor Rubenstein has, in a single paragraph, revised downward the assumed percentage to Class Counsel from 15.6% to 11.5%. Professor Rubenstein still assumes that Class Counsel will

into the same trap that Class Counsel has set for the Court by their premature request for fees: Professor Rubenstein has used as "the whole" or the "value of the settlement" *as projected*, without regard to whether those projections being achieved in reality.  Because the data shows the projections are not being achieved, the "value of the settlement" that Class Counsel uses and that Professor Rubenstein uses is Monopoly money.

The Court does not need to guess about whether the projections about the "Whole" are fact or fiction. Comparing, by compensable category, the pre-settlement forecasted payments for Year 1 with the Actual Year 1 payments, the disconnect is clear:

| Category (% incidence such category represents of the Whole, *see* ECF 6423-21, (Ex. JJ, p. 5) | NFL Year 1 **Forecasted** Payments (ECF 6168 Ex. F) | **Actual** Year 1 Payments (ECF 9571, Ex. A, p. 7 |
|---|---|---|
| ALS (.5 %) | 17 Claims, $42.7 million | 14 Claims, $36.5 million |
| CTE (1.3%) | 51 Claims, $50.24 million | 36 Claims, $36.215 million |
| Parkinson's (.4 %) | 14 Claims, $7.1 million | 12 Claims, $4.72 million |
| Alzheimer's (48%) | 153 Claims, $70.655 million | 25 Claims, $11.59 million |
| Level 2 (49%) | 111 Claims, $38.64 million | 1 Claim, $1.5 million |
| Level 1.5 (0% as all assumed in Level 2) | 319 Claims, 33.64 million | 3 Claims, 1.5 million |
| Total Claims Paid | 665 Claims | Less than 100 |
| Total Amount Paid | $242.9 million | $95.192 million |

---

receive $112.5 – the denominator is unchanged.  Instead, the math is based entirely upon a new, higher "value of the settlement."  The value of the settlement is based upon an "updated actuarial report from Co-Lead Counsel Seeger Weiss" opining that "[p]articipation rates in the final, as-approved Settlement program substantially exceed those initially projected . . . and, as a result the anticipated Net Present Value is expected to be substantially greater than previously projected." ECF 9552-1, p. 2. The numerator, the value of the settlement, has gone from $$1,088,500,000 to $1,512,500,000. So, as the argument goes, Class Counsel is really only seeking 11.5%.  And, so, to keep the former NFL players from paying more than 33.33%, private fee contracts can be presumptively capped at 22%, not 15%.

Moreover, and in in event, there is no basis to link a cap on contract rates to the Class Counsel fee award.  One is separate from the other, and the Court wisely uncoupled the two when it uncapped Settlement. The fee award will not subtract from how much will go to players in this Settlement, and reducing contract rates will have an adverse effect on the representation of the players by experienced and able lawyers, who are now vital.

3

The problem is not merely that less than half of what was projected has been paid. The chart tells so much more. ALS, CTE, and Parkinson's claims, which together represent 2.2% of the total claims ("the Whole") forecast, are somewhat on par with the forecast. But the other claims—those representing 97% of the Whole—depart from the forecast by more than 95%. Stated differently, if Alzheimer's, Level 2 and Level 1.5 claims are approved and paid at this rate going forward, then the projections of the value of the settlement are off by 95%. And, if the value of the settlement is off by 95%, but Class Counsel is paid $112.5, the only victors in this Settlement are the NFL and Class Counsel.

The Court also need not guess about why these projections are off. Co-Lead Class Counsel hinted at the disconnect in February, 2017 with its fee petition:

| | |
|---|---|
| Declaring "Mission Accomplished", Co-Lead Class Counsel wants a fee for legal services incurred negotiating a settlement with the NFL and a performance bonus for the "groundbreaking global resolution" they achieved. ECF 7151, p. 5 | But, "anticipating substantial future efforts," including providing assistance in administrative appeals to those *without private lawyers*, Co-Lead Class Counsel wants the Court to hold back an additional 5% of every dollar awarded to each former NFL player for the future legal services of Class Counsel Also, ECF 7151. pp. 59, 62 |

Eleven months later, the "groundbreaking global resolution" is falling short of the forecast and is requiring more "future efforts" than Co-Lead Class Counsel anticipated:

| | |
|---|---|
| Co-Lead Class Counsel revises the projected value of the settlement based upon increased *registrations* to cast the percentage bonus sought in a better mathematical light.[4] ECF 9552-1, p. 2. | Co-Lead Class Counsel reveals that the 5% set aside is all the more important because Class Counsel are dealing with NFL contests on monetary awards, thus, appeals have resulted in "many disputed issues between the Settling Parties." Also, ECF 9552, ¶¶ 5-7 |

The former NFL Players' fight for compensation has just begun. The NFL is

---

[4] Movants renew their previously-articulated objections (ECF. 7533) to the methodology used by Thomas Vasquez Ph.D. Movants incorporate those objections and the declaration of Dr. Jamshid Loft as the January 3, 2018 "analysis" suffers the identical flaws as the April, 2017 analysis.

4

predictably waging war, via appeal, claim by claim to ensure that the uncapped "Whole" is less than the $675 million it originally agreed to pay.  Co-Lead Class Counsel's race to be paid both (a) a bonus for a good settlement and (b) a set aside for re-litigating under a poor settlement has led to Professor Rubenstein's recommendation to presumptively cap private fee-contracts.

But the analysis is backwards.  The battle field is individual claims and appeals and the recommendation leaves the players without their individual lawyers. Privately-contracted lawyers are the only lawyers working for the former NFL Players whose interest in obtaining actual monetary recovery is aligned in lock-step with the former NFL Players represented.  Class counsel seeks payment now and later without regard to proven success.  Capping a privately-contracted fee drives private lawyers out of the process.  Though the Class notices invited the players to hire private counsel despite the absence of a need to do so, Co-Lead Class Counsel has acknowledged that, at most, it anticipated assisting private counsel in the appeals that are now driving the Settlement.  Driving private lawyers out of the process deprives the former NFL Player client of individualized representation [5] submitting a claim and litigating an appeal against the NFL.[6] And, driving private counsel out of the process dries up former NFL Player access to advanced "litigation costs" to file appeals and obtain second-level diagnoses, that the Settlement requires each player to pay out of pocket.  Class counsel does not advance those costs.

The Court should reject the recommendation on presumptively capping private fee-contracts and also reject a set aside of anything above zero.

---

[5] In that connection, Movants reurge their request to depose Professor Rubenstein under Rule 706 (ECF 9536, 9554) and now seek leave to serve discovery on Co-Lead Class Counsel for all data, all submissions to the Master, any rulings or recommendations concerning settlement interpretation, redacted to protect player identity, as this data is material to Movants' claims' submissions and anticipated appeals.  This Settlement should be interpreted and applied consistently from player to player.

[6] The Court has already declined to provide settlement-interpretation rulings on a Class-wide basis, preferring individualized appeals.  *See, e.g.* ECF 8882.

Dated: January 30, 2018                             Respectfully Submitted,

/s/ Lance H. Lubel
Lance H. Lubel
Texas State Bar No.: 12651125
Adam Voyles
Texas State Bar No.: 24003121
Justin R. Goodman
Texas State Bar No.: 24036660
LUBEL VOYLES LLP
675 Bering Dr., Suite 850
Houston, TX 77057
Telephone: (713) 284-5200
Facsimile: (713) 284-5250
Email: lance@lubelvoyles.com
adam@lubelvoyles.com
jgoodman@lubelvoyles.com

/s/ Matthew C. Matheny
Matthew C. Matheny
Texas State Bar No. 24039040
mmatheny@pulf.com
Jacqueline Ryall
jryall@pulf.com
PROVOST UMPHREY
LAW FIRM, L.L.P.
Attorney at Law
Post Office Box 4905
Beaumont, Texas 77704
(409) 835-6000
(409) 838-8888 - Fax Number

/s/ Mickey Washington
Mickey Washington
Texas State Bar No.: 24039233
WASHINGTON & ASSOCIATES
2019 Wichita Street
Houston, Texas 77004
Telephone: (713) 225-1838
Facsimile: (713) 225-1866
Email: mw@mickeywashington.com

/s/ James C. Canady
James Carlos Canady
Texas State Bar No.: 24034357
THE CANADY LAW FIRM
5020 Montrose Blvd., Suite 701
Houston, TX 77006
Telephone: (713) 284-5204
Facsimile: (713) 284-5250
Email: ccanady@canadylawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on all counsel of record via the Court's ECF system on January 30, 2018.

*/s/ Lance H. Lubel*
Lance H. Lubel
