# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>Hon. Anita B. Brody |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>                    Plaintiffs,<br><br>                v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.<br>                    Defendants. | Civ. Action No.: 14-cv-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Hon. Anita B. Brody |

**MEMORANDUM OF LAW OF THE NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC IN OPPOSITION TO SETTLEMENT CLASS MEMBER JEFFREY HOLMES' BRIEF IN SUPPORT OF MOTION FOR <u>RELIEF FROM A JUDGMENT OR ORDER PURSUANT TO FED. R. CIV. P. 60</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Table of Authorities ................................................................................................. ii

Preliminary Statement ............................................................................................. 1

Background ............................................................................................................... 3

      A.     Factual Background ................................................................................ 3

      B.     Procedural History ................................................................................ 4

Argument ................................................................................................................. 6

I. THE SPECIAL MASTER'S DECISION IS NOT REVIEWABLE ...................... 6

II. PETITIONER IS NOT ENTITLED TO EQUITABLE RELIEF UNDER RULE 60 OR
     RULE 6 ................................................................................................................. 7

      A.     Rule 60 and Rule 6 Do Not Allow a Court to Modify Negotiated and
              Approved Terms of a Settlement Agreement. ....................................... 8

      B.     Petitioner's Motion Fails for the Independent Reason That He Cannot
              Establish "Good Cause" or "Excusable Neglect" ................................ 11

III. PETITIONER IS NOT ENTITLED TO EQUITABLE TOLLING ..................... 15

Conclusion ............................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Agent Orange Product Liab. Litig.*,
   689 F. Supp. 1250 (E.D.N.Y. 1988) .................................................................................10

*Blue Diamond Coal Co.* v. *Trustees of UMWA Combined Benefit Fund*,
   249 F.3d 519 (6th Cir. 2001) .........................................................................................12

*In re Cendant Corp. Prides Litig.*,
   189 F.R.D. 321 (D.N.J. 1999)...........................................................................................8

*In re Cendant Corp. Prides Litig.*,
   233 F.3d 197 (3d Cir. 2000)..........................................................................................8, 9

*Dahingo* v. *Royal Caribbean Cruises, Ltd.*,
   312 F. Supp. 2d 440 (S.D.N.Y. 2004)............................................................................11

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab.*
   *Litig.*,
   2017 WL 937735 (E.D. Pa. Mar. 9, 2017)....................................................................15

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab.*
   *Litig.*,
   92 F. App'x 890 (3d Cir. 2004) .....................................................................................13

*Drippe* v. *Tobelinski*,
   604 F.3d 778 (3d Cir. 2010)...........................................................................................12

*Ehrheart* v. *Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010).............................................................................................8

*Grace* v. *City of Detroit*,
   145 F.R.D. 413 (E.D. Mich. 1992) ...............................................................................14

*In re Gypsum Antitrust Cases*,
   565 F.2d 1123 (9th Cir. 1977) .......................................................................................10

*Inmates of Suffolk Cty. Jail* v. *Rufo*,
   No. 71-cv-00162, 2015 WL 6958070 (D. Mass. Nov. 10, 2015) ..................................12

*In re ML-Lee Acquisition Fund II*,
   1999 WL 184135 (D. Del. 1999)..........................................................................9, 10, 13

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
   246 F.3d 315 (3d Cir. 2001)...........................................................................................14

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Oshiver* v. *Levin, Fishbein, Sedran & Berman,*
    38 F.3d 1380 (3d Cir. 1994)................................................................15

*Pigford* v. *Johanns,*
    416 F.3d 12 (D.C. Cir. 2005)..............................................................13

*Pioneer Inv. Servs. Co.* v. *Brunswick Assocs. Ltd.,*
    507 U.S. 380 (1993)............................................................................11

*Sullivan* v. *DB Investments, Inc.,*
    667 F.3d 273 (3d Cir. 2011)..................................................................9

*Sutton* v. *Hopkins,*
    No. 03-cv-003, 2009 WL 3294843 (W.D. Ky. Oct. 13, 2009).............10

*In re Vitamins Antitrust Litig.,*
    99-md-0197, 2002 U.S. Dist. LEXIS 25790 (D.D.C. Feb. 21, 2002)....10

*Wallace* v. *Powell,*
    2013 WL 3214648 (M.D. Pa. June 24, 2013).......................................10

*Zients* v. *LaMorte,*
    459 F.2d 628 (2d Cir. 1972)................................................................10

**OTHER AUTHORITIES**

Charles A. Wright, et al., 4B Fed. Prac. & Civ. Proc. § 1165 (4th ed. 2017)..............................12

Fed. R. Civ. P. 6 ............................................................................ passim

Fed. R. Civ. P. 60 .......................................................................... passim

Defendants National Football League and NFL Properties LLC (collectively, the "NFL Parties") respectfully submit this memorandum of law in opposition to the motion and accompanying brief of Settlement Class Member Jeffrey Holmes ("Petitioner") for relief from a judgment or order pursuant to Fed. R. Civ. P. 60 ("Rule 60") ("Pet. Br."). (*See* Petitioner's Motion and Brief in Support of Motion for Relief from a Judgment or Order Pursuant to Fed. R. Civ. P. 60, ECF Nos. 9570, 9570-2.)

## **Preliminary Statement**

The Claims Administrator denied Petitioner's claim submitted on behalf of Retired NFL Football Player Ronald Holmes based on a Qualifying Diagnosis of Death with Chronic Traumatic Encephalopathy (or "CTE"). Petitioner appealed, and the Special Master affirmed the Claims Administrator's denial of the claim because the claim failed to meet the definition of CTE under the plain and unambiguous terms of the Settlement Agreement. Significantly, Petitioner does not dispute that finding. Instead, Petitioner concedes that his claim falls outside the Settlement Agreement's definition of a Qualifying Diagnosis, but nevertheless asks this Court to overturn the Special Master's denial of his claim under Rule 60's "excusable neglect" standard.[1] Petitioner's argument is meritless and his motion should be denied.

As a threshold matter, the Special Master's decision includes no conclusions of law and therefore is not reviewable. Pursuant to the Settlement Agreement, as approved by this Court and affirmed by the Third Circuit, and as supplemented by this Court's July 13, 2016 Order appointing the Special Masters, where, as here, a Settlement Class Member appeals a claim determination and the Special Masters deny the appeal based on determinations of fact, that decision is final and binding. (*See* Class Action Settlement Agreement (as amended

---

[1] While Petitioner states that his motion is brought under Rule 60, he cites cases pertaining also to Fed. R. Civ. P. 6 ("Rule 6"). For completeness, the NFL Parties address relief under both rules.

February 13, 2015) § 9.8, ECF No. 6481-1 (the "Settlement Agreement"); *see also* July 13, 2016 Order by Judge Brody at 5, ECF No. 6871 (the "July 13, 2016 Order").)  Because the Special Master denied Petitioner's appeal on the basis of a clear factual determination, that decision is final and binding and Petitioner's Motion should be denied.

Even assuming the Settlement Agreement permitted review of the Special Master's decision, however, the relief requested by Petitioner falls well outside the bounds of equitable relief allowed under either Rule 60 or Rule 6.  Petitioner is not seeking relief from a procedural deadline.  Petitioner is asking this Court to disregard a key substantive provision of the Settlement Agreement by modifying the definition of a Qualifying Diagnosis of Death with CTE.  As the Third Circuit has repeatedly held, the federal rules do not allow courts to modify a negotiated and bargained-for settlement term, particularly where, as here, the term is a fundamental, core definition agreed to by the Parties and approved by the Court and the Court of Appeals as fair, reasonable and adequate.

In any event, Petitioner fails to satisfy the standards required to establish equitable relief—*i.e.*, "good cause" or "excusable neglect"—under Rules 60 or 6.  Expanding the definition of CTE beyond the negotiated definition and thereby modifying the scope of the NFL Parties' liability under the uncapped Settlement Agreement would result in substantial and unfair prejudice to the NFL Parties.  The Third Circuit has routinely rejected claims of "good cause" or "excusable neglect," where, as here, allowing such relief would expand the obligations of and cause significant prejudice to the non-moving party.

Lastly, Petitioner's suggestion that the equitable tolling doctrine should apply here is equally meritless.  Equitable tolling is a doctrine that applies only to requested relief from statutes of limitations.  But here, there is no statute of limitations issue.  Rather, Petitioner is

attempting to modify the substantive criteria required to establish a Qualifying Diagnosis under the Settlement Agreement.  Equitable tolling is thus entirely inapplicable to Petitioner's claim.

For these reasons, and those set forth herein, Petitioner's motion should be denied in its entirety.

## **Background**

### A.    **Factual Background**

The criteria necessary to establish a Qualifying Diagnosis constitute a fundamental component of the heavily negotiated Settlement Agreement approved by this Court and the Third Circuit; indeed, the definitions of the Qualifying Diagnoses determine whether a claimant may be compensated.  Those definitions are set forth in Section 6.3(f) of the Settlement Agreement and the Injury Definitions in Exhibit 1 to the Settlement Agreement.  (*See* Settlement Agreement, Section 6.3(f) & Injury Definitions, Exhibit 1 at 5.)  The definition of CTE, the diagnosis at issue here, is as follows:

> For Retired NFL Football Players who died prior to the Final Approval Date, a post-mortem diagnosis of CTE made by a board-certified neuropathologist **prior to the Final Approval Date**, provided that a Retired NFL Football Player who died between July 7, 2014 and the Final Approval Date shall have until 270 days from his date of death to obtain such a post-mortem diagnosis.

(*See id.*, Exhibit 1 at 5 (emphasis added); *see also id.*, § 6.3(f).)  Thus, the date of diagnosis to establish a Qualifying Diagnosis of CTE is firmly embedded in, and is a key component of, the definition of that diagnosis.

The Parties agreed, after lengthy negotiations, that compensation would be provided only to retired players who met clearly defined criteria, which in the case of

Mr. Holmes, included a diagnosis of CTE according to the above definition.[2]

Petitioner concedes, as he must, that his claim does not meet that definitional requirement.  Mr. Holmes died on October 27, 2011 and received a routine autopsy by the Pierce County Medical Examiner in Tacoma, Washington that did not list any abnormal brain findings or reference preservation of any brain tissue.  (Pet. Br. at 2.)  In August 2013, the Holmes family retained Anapol Weiss as counsel to pursue any potential claims against the NFL Parties.  (*Id.* at 3.)  However, Anapol Weiss did not contact the medical examiner's office to inquire about any remaining brain tissue until seven months later, in March 2014.  (*See* Pet. Mot. ¶ 7.)  After purportedly being told that no brain tissue remained, the Holmes family contacted the medical examiner again one year later, in April 2015, at which time they were advised that the brain tissue slides in fact existed.  (*Id.* ¶ 9.)  The Holmes family sent the slides for evaluation by Dr. Ronald Hamilton in June 2015; Dr. Hamilton then diagnosed Jeffrey Holmes with CTE on August 4, 2015—over three months after the Final Approval Date.  (*See id.* ¶¶ 10-11; *see also* Settlement Agreement, § 6.3(f), Injury Definitions, Exhibit 1 at 5.)

B.   **Procedural History**

Petitioner filed a claim for a Qualifying Diagnosis of CTE on April 11, 2017, as the Representative Claimant for the estate of Ronald Holmes.  (*See* Pet. Br. at 3.)  The Claims Administrator reviewed Petitioner's Claim Package and, on June 13, 2017, issued a Notice of Claim Denial because Petitioner did not meet the required definition for a Qualifying Diagnosis of CTE under Section 6.3(f) and Exhibit 1 of the Settlement Agreement; that is, there was no

---

[2]   As Petitioner correctly notes, the Parties elsewhere expressly negotiated to allow for certain relief in specific situations where a Retired NFL Football Player or his legal representative are unable to meet certain deadlines for submitting Claim Packages, or certain medical records become unavailable, including for reasons such as "a force majeure type event," *see* Section 8.2(ii), or "substantial hardship," *see* Section 8.3(a)(i).  This is not such an instance.  Rather, Petitioner here is unable to satisfy the definitional requirement for a Qualifying Diagnosis of CTE.  The Parties did not negotiate for any exceptions to, or relief from, this requirement; nor is there any exception provided for in the Settlement Agreement.

post-mortem diagnosis of CTE made by a board-certified neuropathologist prior to the Final

Approval Date.  (*See* Notice of Claim Denial, Pet. Mot., Ex. B, ECF No. 9570-4.)

On July 11, 2017, Petitioner appealed that Notice of Denial, setting forth many of

the same arguments included in the pending motion.  (*See* Pet. Notice of Appeal, Pet. Mot,

Ex. A, ECF No. 9570-3.)  In response, the NFL Parties opposed the appeal on August 21, 2017.

(*See* NFL Parties' Opp., Pet. Mot., Ex. C, ECF Doc. 9570-5.)  On December 22, 2017, the

Special Master issued a Post-Appeal Notice of Denial of Monetary Award Claim that denied

Petitioner's appeal.  (*See* Special Master's Post-Appeal Notice of Denial of Monetary Award

Claim ("Post-Appeal Notice of Denial," Pet. Mot., Ex. D, ECF Doc. 9570-6.)  The Special

Master concluded that:

> [Petitioner] died on or before July 7, 2014, but did not receive a
> post-mortem diagnosis of Death with CTE before the Final
> Approval Date of the Settlement Agreement, which was April 22,
> 2015.  Section 6.3(f) of the Settlement Agreement requires that a
> Qualifying Diagnosis of Death with CTE be made before the Final
> Approval Date of the Settlement Agreement if the Retired NFL
> Football Player died before July 7, 2014.

(*Id*.)  The Special Master's decision thus was based solely on a factual determination—namely,

when Mr. Holmes died and when he received his CTE diagnosis—and not on any conclusion of

law.  Pursuant to this Court's July 13, 2016 Order:

> *If an appeal is referred to the Master(s), the parties agree,*
> *pursuant to Fed. R. Civ. P. 53(f)(3)(B), that the factual*
> *determinations of the Master(s) will be final and binding*.  Pursuant
> to Fed. R. Civ. P. 53(f)(4), the Court will review de novo any
> objection to the Master(s)' conclusions of law.

(*See* the July 13, 2016 Order at 5 (emphasis added).)  Consistent with that Order, the Post-

Appeal Notice of Denial states that the determination is "final and binding."  (*See id.*)

Nevertheless, Petitioner filed the instant motion.

**Argument**

**I.**

**THE SPECIAL MASTER'S DECISION IS NOT REVIEWABLE**

The Settlement Agreement and this Court's subsequent order appointing the Special Master provide—clearly and unambiguously—the process for review of submitted claims and appeals of claim determinations.  Pursuant to that process, the Special Master's denial of Petitioner's appeal—based solely on findings of fact—was final and binding, and unreviewable by this Court.  Accordingly, this Court should deny Petitioner's Motion.

The Settlement Agreement's procedure for review of submitted claims was agreed to by the Parties, including Petitioner's counsel, and affirmed by this Court and the Third Circuit as fair, reasonable and adequate.  That process includes review by an independent Claims Administrator, the right to appeal the Claims Administrator's determination by the claimant, the NFL Parties, or Co-Lead Class Counsel, and review of that appeal by the Court or the Special Masters, who were appointed by this Court to oversee the administration of the Settlement Agreement.  (*See* Settlement Agreement, § 10.1.)  By agreement of the Parties, and as ordered by this Court, the Special Masters' factual conclusions on appeals of claim determinations are "final and binding."  (*See id*. § 9.8; July 13, 2016 Order at 5.)

Here, the determination of the Special Master is crystal clear.  The Special Master upheld the Claims Administrator's denial on the sole basis of its factual finding that there was no post-mortem diagnosis of CTE made prior to the Final Approval Date, and that, as a result, Petitioner had failed to meet the definitional requirements of the Qualifying Diagnosis alleged.  In so ruling, the Special Master did not interpret the Settlement Agreement or make any other conclusion of law.  For that reason, the Special Master's order denying Petitioner's claim

correctly stated that its decision was "final and binding."  (*See* Post-Appeal Notice of Denial at 1.)

Accordingly, Petitioner's motion for review of that decision is procedurally improper and, as a threshold matter, should be denied on that basis alone.

**II.**

**PETITIONER IS NOT ENTITLED TO
EQUITABLE RELIEF UNDER RULE 60 OR RULE 6**

Petitioner does not dispute that his claim failed to satisfy the definitional requirements for a diagnosis of Death with CTE under the unambiguous terms of the Settlement Agreement.  Instead, Petitioner asks the Court to substantively modify those definitional requirements by granting what he characterizes as equitable relief under Rule 60 or Rule 6's "good cause" or "excusable neglect" standard.[3]  Such relief is plainly inappropriate for two independent reasons.

*First*, neither Rule 60 nor Rule 6 allows for the type of relief Petitioner seeks here.  Those rules allow a court, for good cause, to modify a term or deadline only where parties affirmatively subject themselves to a court's jurisdiction for that purpose and not, as here, to modify a settlement term that was negotiated and bargained for by the Parties, and approved by the Court.

*Second*, even assuming either rule could provide the requested relief, Petitioner fails to establish the requisite "good cause" or "excusable neglect."  The law is clear that "good cause" or "excusable neglect" cannot be established where, as here, the relief would unfairly

---

[3]   Specifically, Rule 60(b)(1) and Rule 60(b)(6) provide that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding" for the reason of "mistake, inadvertence, surprise, or excusable neglect," or for "any other reason that justifies relief."  *See* Fed. R. Civ. P. 60(b)(1) & 60(b)(6), respectively.

7

expand the agreed-to obligations of, and thereby prejudice, the non-moving party (here, the NFL Parties).

**A.      Rule 60 and Rule 6 Do Not Allow a Court to Modify Negotiated and Approved Terms of a Settlement Agreement.**

Relying primarily on the district court's opinion in *In re Cendant Corp. Prides Litig.*, Petitioner argues that this Court has "general equitable power to modify the terms of a class action settlement." 189 F.R.D. 321, 323 (D.N.J. 1999). Yet, this power applies only in specific circumstances, none of which is present here.

As the Third Circuit has routinely held—including on appeal from the district court's opinion in *In re Cendant Corp. Prides Litig.*—a court may modify settlement terms only where the parties "affirmatively subjected themselves to the Court's jurisdiction" for that purpose, including to extend court-mandated deadlines, but not where doing so changes "the bargained-for terms" negotiated by the parties in reaching a settlement agreement. *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 194, 197 (3d Cir. 2000).

Petitioner's claim that he is not asking this Court to "rewrite the terms" of the Settlement Agreement is incorrect. (Pet. Br. at 8.) That, in fact, is precisely what he is asking. Rather than seeking relief for a claim that is "technically untimely," Petitioner is asking this Court specifically to modify, or provide an exception to, the clear terms of the heavily negotiated and agreed-to definition of the Qualifying Diagnosis of CTE. (*Id.*) Such relief is not permitted. As the Third Circuit has explained, "[a] district court is not a party to the settlement, nor may it modify the terms of a voluntary settlement agreement between parties." *Ehrheart* v. *Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010).

Petitioner fails to acknowledge this distinction articulated repeatedly by the Third Circuit between claims asking for relief from court-imposed deadlines, where such equitable

relief may be appropriate, and claims seeking to alter the negotiated-for and agreed-to terms of a settlement agreement, which fall outside the scope of permitted relief.

For example, in *In re Cendant Corp. Prides Litig.*, the Third Circuit explained that "where the parties affirmatively subjected themselves to the Court's jurisdiction by seeking its assistance in administering the settlement and deliberately left the important dates to the Court's discretion without a time-of-the-essence clause, . . . the District Court had the power to modify the terms of the Stipulation originally set by the Court and had discretion to allow late-filed and late-cured claims." 233 F.3d at 197. The Court also noted that the parties had provided an explicit procedure for "curing" rejected claims, finding that "the explicit inclusion of a mechanism in the Stipulation for curing deficient claims . . . underscores the flexibility of that deadline." *Id.* at 194.

In the same case, the Third Circuit clarified that, on the other hand, relief would not be appropriate where it would "substantially change the negotiated bargain" of the parties:

> This is one crucial way in which this case is distinguishable from *In re ML-Lee Acquisition Fund II,* 1999 WL 184135 (D. Del. 1999). In *ML-Lee,* the District Court for the District of Delaware was asked to use its equitable powers to make incidental modifications to a settlement agreement. It declined to do so, while recognizing that it possessed those equitable powers. The court held that under the circumstances of the instant case, equitable principles do not require the court to modify the Settlement Agreement. <u>The court specifically found that the parties negotiated and bargained for the deadline to submit forms and the date by which to respond to requests to cures, and that to provide time extensions would, under the specific facts there, substantially change the negotiated bargain.</u>

*Id.* at 193, n.5 (internal citations omitted and emphasis added); *see also Sullivan* v. *DB Investments, Inc.*, 667 F.3d 273, 312 (3d Cir. 2011) ("It is well established that settlement agreements are creatures of private contract law." (internal quotation omitted)).

9

Petitioner's cited precedent falls squarely in the former category, *i.e.*, relating to technically untimely claims, and so is inapposite here.   Indeed, each case cited by Petitioner consists of instances in which a court modified a term or deadline that was not bargained for, or did not alter the bargained-for obligations of either party.   For example, in *Sutton* v. *Hopkins*, claimant alleged that she did not receive adequate notice of the proposed class action settlement and claim form, and so was entitled to relief from the deadline set by the court.   No. 03-cv-003, 2009 WL 3294843, at *1 (W.D. Ky. Oct. 13, 2009).   Similarly in *Wallace* v. *Powell*, claimants mailed claim forms prior to the deadline set by the court, but for some reason they were not received.   2013 WL 3214648, at *1 (M.D. Pa. June 24, 2013).   The court noted in granting relief under Rule 60(b)(1) that while "requiring a claimant to adhere to class deadlines is eminently reasonable," the movant provided "compelling circumstances" because his brother's form was received despite both being mailed at the same time.   *Id.* at *3.   *In re Gypsum* also involved the late filing of claims.   *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977).   In that case, however, the court in fact denied the claim, noting that while it was a "regrettable conclusion," there had to be a "cutoff point" for late claims.   *Id.*[4]

By contrast, here, as in *In re ML-Lee Acquisition Fund*, the parties engaged in "grueling and hard fought settlement negotiations, culminating in the very detailed and very specific Settlement Agreement."   1999 WL 184135 at *2; *see also* Final Approval Memorandum, ECF No. 6509 at 9 (explaining that the negotiations here were "intense, vigorous,

---

[4]   *See also In re Agent Orange Product Liab. Litig.*, 689 F. Supp. 1250, 1262 (E.D.N.Y. 1988) (pertaining to the court's administration of the settlement program, including as relating to late applications for reinstatement as class members and class members who missed the filing deadline because they were veterans who were "unaware"); *Zients* v. *LaMorte*, 459 F.2d 628, 630 (2d Cir. 1972) (allow class members who had not received any notice of the class action or notice of hearing on the settlement to submit claims, where the fund had not been distributed, the scheduled hearing to determine the validity of claims had not occurred, and the court still retained reserve jurisdiction over effectuation of the settlement agreement); *In re Vitamins Antitrust Litig.*, 99-md-0197, 2002 U.S. Dist. LEXIS 25790 (D.D.C. Feb. 21, 2002) (allowing class member to opt-out of deadline set by the court where no substantial prejudice would result to defendants).

and sometimes quite contentious," with support from "well-qualified medical experts" to advise on difficult questions) (the "Final Approval Mem."). A core component of the final, approved Settlement Agreement is a specific definition of the Qualifying Diagnosis of CTE, heavily negotiated and agreed to by the Parties. Both sides were "well aware" of the impact of this definition during negotiations, and "were presumably satisfied that the [definition] ultimately agreed upon took reasonable account of these concerns." *Dahingo* v. *Royal Caribbean Cruises, Ltd.*, 312 F. Supp. 2d 440, 446 (S.D.N.Y. 2004). Allowing Petitioner to create an exception to that definition would thus inappropriately modify "the product of negotiation and compromise by the parties." *Id.* at 447. Rules 60 and 6 simply do not provide for such alteration of agreed-to and negotiated-for terms. *See id.* at 446. (concluding that "because class settlements are contracts, courts do not generally have the authority to modify them on the basis of equitable principles alone").

In sum, because Petitioner's requested relief would alter a core definitional term negotiated-for and agreed-to by the Parties, equitable relief is inappropriate under the clear precedent articulated by the Third Circuit and Petitioner's Motion should be denied.

**B.    Petitioner's Motion Fails for the Independent Reason That He Cannot Establish "Good Cause" or "Excusable Neglect"**

Even if Rules 60 or 6 could provide relief in instances such as this one, which they cannot, Petitioner nonetheless fails to establish "good cause" or "excusable neglect."

Under the balancing test set forth in *Pioneer Inv. Servs. Co.* v. *Brunswick Assocs. Ltd.*, 507 U.S. 380 (1993), which has been adopted by the Third Circuit, the determination of "good cause" or "excusable neglect" is an equitable one, in which courts take into account all relevant circumstances surrounding a party's failure to meet a deadline, including "the danger of prejudice . . . the length of the delay and its potential impact on judicial proceedings, the reason

for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."  *Drippe* v. *Tobelinski*, 604 F.3d 778, 785 (3d Cir. 2010) (quoting *Pioneer*, 507 U.S. at 395).

Petitioner shoulders the burden of proving "good cause" or "excusable neglect." *See* Charles A. Wright, et al., 4B Fed. Prac. & Civ. Proc. § 1165 (4th ed. 2017) (indicating that the burden is on movant for relief under Rule 6(b) to show both "cause" and "excusable neglect").  In addition, the bar for relief is particularly high where, as here, the movant seeks relief in "a class action [because] a too liberal application of Rule 60(b) would undermine the finality of judgments entered in such actions and would discourage their settlement."  *Inmates of Suffolk Cty. Jail* v. *Rufo*, No. 71-cv-00162, 2015 WL 6958070, at *2 (D. Mass. Nov. 10, 2015); *see also Blue Diamond Coal Co.* v. *Trustees of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001) ("[R]elief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation.  This is especially true in an application of subsection (6) of Rule 60(b) . . . ."  (internal quotations omitted)).

Petitioner attempts to satisfy this stringent standard by arguing that:  (i) there is no material prejudice to the NFL Parties because the decedent was diagnosed based on brain samples taken before the date of diagnosis required in the CTE definition; (ii) Petitioner timely submitted his Claim Package; and (iii) the delay was "minimal."  (Pet. Br. at 7.)  These arguments all fall far short.

As an initial matter, despite Petitioner's claim to the contrary, clear and substantial prejudice would result to the NFL Parties should this Court grant Petitioner's Motion. The Settlement Agreement was the product of hard-fought, arms-length negotiations, during which the NFL Parties agreed to compensate Qualifying Diagnoses based on the specific

definitions approved by the Parties, including Petitioner's counsel, and affirmed by this Court and the Third Circuit as fair, reasonable and adequate.  To change the terms of the Settlement Agreement, and expand the definition of the Qualifying Diagnosis of CTE beyond the agreed-to definition, would thus directly violate the agreed-to obligation of the NFL Parties to compensate only claimants who satisfied the negotiated definition of the Qualifying Diagnosis of CTE, which includes as a key part of that definition, without exception, the date the diagnosis was made.  *See In re ML-Lee Acquisition Fund II*, 1999 WL 184135 at *2 (finding prejudice to defendants where modifying the agreement would cost defendants "additional money, over and above what they agreed to during the settlement negotiations in this case.")

The Third Circuit and other courts have consistently declined to allow equitable relief in such circumstances, where doing so prejudices the non-moving party out of negotiated-for rights and unfairly extends the scope of agreed-to liabilities.  *See, e.g.*, *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 92 F. App'x 890 (3d Cir. 2004) (finding that plaintiffs' failure to file a timely opt-out would unduly prejudice defendant because "with millions of members in the class, the potential prejudice of allowing an exception to the initial opt-out deadline could extend beyond this case and have detrimental effects on the settlement and MDL" and would prejudice defendant's ability to accurately calculate opt-outs to the settlement and in anticipating damages); *Pigford* v. *Johanns*, 416 F.3d 12, 21 (D.C. Cir. 2005) ("If the district court had granted the requested relief from the deadlines, the government would have lost the benefit of its bargain—certainty and finality as to its maximum liability as of the agreed upon date—while the claimant class would have recovered the bargained-away right to compensation for claimants filing review petitions beyond the stipulated deadlines (as extended by the court).").

This is particularly true in cases such as this one, where the settlement fund is without limit.  If this Court grants Petitioner's Motion, the NFL Parties will be faced not just with increasing liability here, but an uncapped potential expansion of liability, as any other Settlement Class Member may present a similar motion.  For these exact reasons, the court in *Grace* v. *City of Detroit* found that equitable relief was improper.  145 F.R.D. 413 (E.D. Mich. 1992).  Notably, the claimant there relied on the same cases, with the same supporting arguments, as Petitioner in this case, which the court rejected as unpersuasive:

> Unlike the cases cited by Plaintiff, *Zients, supra*, and *In re Gypsum Antitrust Cases, supra*, in this case there is no fixed settlement fund.  Every tardy claim accepted would be an expansion of Defendant City's liability for a reason not originally ordered.  The total sum of Defendant's liability is yet to be determined, and increases with each successive claimant.  The Court did not originally order, nor did Plaintiffs request, that tardy class members *with explanations* be accepted.  If that were the case, the class could continue to grow *ad infinitum*, and a large part of the benefit of a class action suit would be lost.  Moreover, Defendant City would be faced with the neverending expansion of its liability, as more class members with equally worthy explanations appeared, during the course of the litigation.  To allow the tardy claims in the second category would only serve to prejudice Defendant.

*Id.* at 417-18*; cf. In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 323 (3d Cir. 2001) (allowing recovery because, while "the expansion of the plaintiff class in the ordinary class action will be to the detriment of the defendant, here the liability . . . has been capped," and inclusion of claimant and "those of others similarly situated, has no effect on the amount [defendant] will pay to those aggrieved by its products").

In addition, while Petitioner's Motion fails to establish "good cause" or "excusable neglect" on the sole basis that relief here would unfairly prejudice the NFL Parties, the delay here also was far from "minimal."  (Pet. Br. at 7.)  Rather, counsel waited seven months after being appointed to even contact the medical examiner for the requested brain tissue.

Then, after being told that none existed, the family waited an additional year before contacting the medical examiner again, and then an additional three months to send the brain tissue once it was identified, despite being fully aware at that time of the criteria to establish a Qualifying Diagnosis of CTE.  (Pet. Mot. ¶¶ 5-10.)  Simply put, there is no excuse for the significant delay.

Thus, Petitioner's Motion should be denied for the additional reason that he cannot establish "good cause" or "excusable neglect."

### III.

### <u>PETITIONER IS NOT ENTITLED TO EQUITABLE TOLLING</u>

Lastly, Petitioner seems to suggest that equitable tolling applies here, by citing *In re Diet Drugs*, a case from the Third Circuit that in fact denied such relief.  (*See* Pet. Br. at 8 (citing *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 2017 WL 937735, at *5 (E.D. Pa. Mar. 9, 2017)).)

Once again, Petitioner misses the point.  In *In re Diet Drugs*, equitable tolling was requested to modify the statute of limitations imposed.  *See* 2017 WL 937735 at *5.  Here, by contrast, the issue is not whether the statute of limitations had run on Petitioner's claim.  Rather, the issue is whether Petitioner meets the definition for establishing the Qualifying Diagnosis of CTE under the requirements negotiated for in the Settlement Agreement.  Petitioner does not, nor can he request, under a doctrine that applies to statute of limitation claims, that this Court alter a bargained-for, material term built into the Settlement Agreement.  *Cf. Oshiver* v. *Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994) (analyzing, prior to applying the equitable tolling doctrine, the form of the time limitation, and concluding that equitable tolling could be applied because the time limitations at issue were "analogous to a statute of limitations and are, therefore, subject to equitable modifications, such as tolling.").  Petitioner's motion for relief

15

under the equitable tolling doctrine, as with the other forms of equitable relief requested, should thus be denied.

## Conclusion

For the foregoing reasons, the NFL Parties respectfully request that the Court deny Petitioner's Motion in its entirety.

Dated: February 2, 2018

Respectfully submitted,

/s/ Brad S. Karp
PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
Brad S. Karp
Bruce Birenboim
Lynn B. Bayard
Sarah A. Istel
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
bkarp@paulweiss.com

*Attorneys for Defendants the National Football
League and NFL Properties LLC*

16

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that a true copy of the foregoing Memorandum of Law of the National Football League and NFL Properties LLC in Opposition to Settlement Class Member Jeffrey Holmes' Motion for Relief From a Judgment or Order Pursuant to Fed. R. Civ. P. 60 was served electronically via the Court's electronic filing system on the 2nd day of February 2018, upon all counsel of record.

Dated:  February 2, 2018

/s/ Brad S. Karp
Brad S. Karp