UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JEFFREY HOLMES**, as Administrator of the Estate of his father, **RONALD HOLMES**, and in his individual capacity, and on behalf of his father's heirs and next of kin,<br><br>**PLAINTIFF,**<br><br>V.<br><br>**NATIONAL FOOTBALL LEAGUE,**<br><br>**DEFENDANT**. | CIVIL ACTION NO. 2:13-cv-05031-AB<br><br>CIVIL ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED<br><br>Related to MDL-2323<br>*IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION*<br><br>Related to 11-cv-05209-AB<br>*Easterling, et al. v. National Football League, Inc.* |

## PETITIONER'S REPLY IN SUPPORT OF MOTION FOR RELIEF FROM A JUDGMENT OR ORDER PURSUANT TO FED. R. CIV. P. 60

The NFL does not dispute that Ronald Holmes played in the NFL for eight years and died with CTE on October 27, 2011. Nor does the NFL dispute that but for the 3 ½ month delay in obtaining his father's post-mortem CTE diagnosis—which was not previously disclosed to the Petitioner—the Petitioner's claim would have been approved by the Claims Administrator. The NFL's opposition to Petitioner's claim is part of a larger strategy to oppose and eliminate legitimate claims by taking a hard-line approach in refusing to construe the Settlement Agreement in a fair and efficient manner to further the settlement's primary purpose of compensating former NFL Players or their legal representatives. Statistics from the first year of the claims process show that the NFL has largely avoided its forecasted financial obligations under the Settlement Agreement, in part, by raising objections associated with unreasonable interpretations of settlement terms and forcing the parties to litigate many more claims than it has

1

allowed the Administrator to pay without objection. While there may undoubtedly be some asserted claims that should not be honored, it is almost certain than no other instance will be found to rest upon the unique extenuating circumstances of this claim, and therefore, it is quite obvious that recognizing the Petitioner's claim will not "substantially change the negotiated bargain of the parties". In truth, honoring the instant claim will further the intent of the parties to provide fair compensation to the estates of NFL Players who died with CTE during the applicable time period.  Weighing the equities at stake, the NFL should not be permitted to benefit from the fortuitous circumstances that caused the Holmes family to miss the Qualifying Diagnosis deadline.

**I.     ARGUMENT**

    **A. This Court has Authority to Review the Legal Basis for the Special Master's Denial of Petitioner's Claim**

Petitioner is not asking this Court to review the Special Master's factual determinations because there is <u>no</u> dispute as to the Special Master's conclusion that the Decedent obtained a Qualifying Diagnosis after the Final Approval Date.  The instant Motion is properly before this Court because the Special Master's denial of Petitioner's claim rests on the *legal* conclusion that equitable tolling or other equitable relief is not available to the Petitioner under the unique facts presented. This legal determination is clearly reviewable.  *See* Doc. 6871 (July 13, 2016 Order Appointing Special Master) at 5 ("Pursuant to Fed. R. Civ. P. 53(f)(4), the Court will review de novo any objection to the Master(s)' conclusions of law."); *see also* Doc 6481-1 (Settlement Agreement) at Section 27.1 (providing that the Court has authority to resolve any disputes with respect to the terms of the Settlement upon motion to the Court).

### B. This Court has Authority to Implement the Settlement in an Equitable Manner

"In a class action settlement, a court retains special responsibility to see to the administration of justice… [c]onsequently, far from serving a merely ministerial function with respect to the disposition of a class action settlement, when parties avail themselves of the District Court to implement such a settlement, the District Court may use its traditional powers to implement the settlement fairly and in accordance with its usual role." *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 194, 194 (3d Cir. 2000). As acknowledged in the Manual for Complex Litigation:

> In cases where the settlement provides for a specified payment to each qualifying class member—either a flat sum or an amount determined according to a formula—settling defendants will have an interest in maximizing the extent to which class members are found to be disqualified or have their claims reduced, diminishing the total amount to be paid… The equitable powers of the court may be invoked to deal with other problems that commonly arise during the administration of the settlement but may not be covered by the terms of the agreement…

Manual For Complex Litig. § 30.47 at 246, 248 (3d ed. 1995). Here, the Court unquestionably has authority to ensure that the settlement is implemented in an equitable manner. As acknowledged by the Third Circuit, while "there is no question that in the distribution of a large class action settlement fund, 'a cutoff date is essential and at some point the matter must be terminated,' application of this principle must not be so rigid as to preclude recovery by a deserving claimant." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315 (3d Cir. 2001), *rev'd on other grounds*, *Fanning v. United States*, 346 F.3d 386 (3d Cir. 2003)(internal citations omitted).

### C. The Recognition of Petitioner's Claim Will Further the "Negotiated Bargain of the Parties"

The NFL primarily argues that equitable relief is inappropriate because the recognition of Petitioner's claim would "substantially change the negotiated bargain of the parties" and improperly "expand the obligations" of the NFL. The record confirms the exact opposite is true. The NFL agreed to an uncapped settlement valued by some at $675 million. Though it forecasted payments of $242.9 million during the first year of the claims process, *the fund actually distributed less than half that amount at just $95.192 million*. *See* the Chart Prepared by Lance H. Lubel Comparing First Year Forecasted Payments to Actual Payments, attached as Exhibit A.[1] Of the 51 CTE claims and $50.24 million forecasted for the first year, the Claims Administrator has approved just 36 CTE claims and authorized the distributed $36.215 million. *Id*. This significant discrepancy between forecasted and actual liabilities is not happenstance; a recent claims report confirms that the NFL is contesting claims at a significantly higher rate than expected. *See* Doc. 9571 (Monetary Awards Claims Report as of January 16, 2018) at 12.

Thus, it is the former NFL players, <u>not the NFL</u>, who have not gotten what they bargained for under the Settlement Agreement. This distinction renders the cases relied on by the NFL inapposite, as those cases concerned situations where the recognition of a late claim would have materially altered a defendant's agreed upon liabilities. *See e.g. In re Cendant Corp. Prides Litig.*, 233 F.3d 188 at 194-96 (affirming the district court's conclusion "that it could, without upsetting the bargained-for terms of the Stipulation, modify particular dates to file and cure claims" in part because the defendant's "bargained-for agreement to make available up to $341,000,000+ of Rights remain[ed] unchanged with the time extension."); *In re Ml-Lee*

---

[1] While Petitioner does not endorse all of the facts set forth in the Lubel submission (Doc. 9588), this data certainly evidences that at the current rate, the NFL's liabilities will fall far short of the negotiated bargain between the parties.

4

*Acquisition Fund II, L.P.*, 1999 U.S. Dist. LEXIS 4084, *8 (D. Del. Mar. 22, 1999)(refusing to extend settlement deadline because "the addition of each ineligible Unit [would] cost the Lee Defendants additional money, over and above what they agreed to during the settlement negotiations in this case."); *see also Sutton v. Hopkins Cty.*, 2009 U.S. Dist. LEXIS 95229, *9 (W.D. Ky. Oct. 9, 2009)(permitting late claim where "Defendants cannot prove harm given that the original limit of Defendants' financial obligation has not been expanded.")[2]

### D. A Finding of Excusable Neglect Will Not "Open the Floodgates" to Untimely Claims

The NFL's cries of "uncapped potential expansion of liability" not only ignore the fact that its financial liabilities have thus far paled in comparison to its own forecasts, but rest on mere speculation that other class members will successfully obtain similar exceptions to the settlement terms.  A finding of excusable neglect with respect to the delay in obtaining the Decedent's CTE diagnosis will not sanction untimely claims from other class members.  This is particularly so because the dates specified in the Qualifying Diagnosis definition for CTE have lapsed, rendering it unlikely that the Claims Administrator will receive additional CTE claims.  Moreover, the highly unique situation presented by Petitioner—being misled by the medical examiner as to whether brain tissues were preserved following the Decedent's autopsy—renders it almost statistically impossible that other class members will come forward with a similarly compelling request for equitable relief.  Indeed, a recent Monetary Awards Claim Report confirms that Petitioner's CTE claim is the <u>only</u> CTE claim denied because the death occurred before July 7, 2014 but the Qualifying Diagnosis was made after Final Approval.  *See* Doc. 9571

---

[2] *Ehrheart* v. *Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) is even less applicable to the case at hand, as it concerned a defendant who sought to back out of a settlement agreement due to a legislative development following preliminary approval, not a class member's request for equitable relief.

5

(Monetary Awards Claims Report as of January 16, 2018) at 13.  Moreover, the Court has authority to serve as "gate-keeper" with respect to any additional motions asserting excusable neglect with respect to settlement deadlines, further ensuring that the NFL is not subjected to undue liability.

### E. Petitioner Has Clearly Established "Good Cause" and "Excusable Neglect"

The NFL argues in a vacuum that the Petitioner has failed to establish "good cause" or "excusable neglect" for the brief delay in obtaining the Decedent's Qualifying Diagnosis.  In addition to exaggerating the "financial prejudice" it would experience through the recognition of Petitioner's claim, the NFL suggests fault in counsel's decision to contact the Pierce County medical examiner in March 2014 rather than at some earlier unspecified date.  The NFL's suggestion that this "delay" played any role in the overall timeline leading to the diagnosis lacks merit.  Had counsel been informed in March 2014 that brain tissue samples existed, there is no question that Petitioner would have had ample time to meet the April 2015 Qualifying Diagnosis deadline.  Moreover, the Holmes family acted prudently in reaching out to the medical examiner in April 2015 in a last-ditch attempt to find out if brain tissue had been preserved and in submitting the samples for evaluation once their existence was discovered.  It is well-established that the "excusable neglect" standard requires the court to consider all relevant circumstances surrounding a party's failure to meet a deadline.  *Chemetron Corp. v. Jones*, 72 F.3d 341, 349 (3d Cir. 1995)(citing *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993)).  Here, those relevant circumstances include the fact that both counsel and Petitioner were misled as to the existence of brain tissue samples until the very month of the Qualifying Diagnosis deadline.

Finally, numerous courts have found a delay of this nature to be "insignificant" under the excusable neglect standard. *See e.g*. *Nelson v. AvalonBay Cmtys*., Inc., 2017 U.S. Dist. LEXIS 204880, *6 (D.N.J. Dec. 13, 2017)(four month delay); *In re Orthopedic Bone Screw Prods. Liab. Litig*., 246 F.3d at 324 (seven month delay); *Sutton*, 2009 U.S. Dist. LEXIS 95229 at *10 (eight month delay).

## II.     CONCLUSION

For all of the foregoing reasons, and those stated in Petitioner's opening Brief, Petitioner respectfully requests that this Court set aside the Special Master's Denial of Petitioner's Monetary Award Claim and compel the Claims Administrator to recognize the Decedent's Qualifying Diagnosis of CTE as timely.

Dated: February 9, 2018

RESPECTFULLY SUBMITTED,

/s/ Sol H. Weiss
Sol H. Weiss, Esquire (I.D. 15925)
Larry E. Coben, Esquire (I.D. 17523)
**ANAPOL WEISS**
One Logan Square, 130 N 18th St.
Suite 1600
Philadelphia, Pennsylvania 19103
(215) 735-1130 Telephone
sweiss@anapolweiss.com
***Co-Lead Class Counsel***

## **CERTIFICATE OF SERVICE**

I, Sol H. Weiss, hereby certify that, on February 9, 2018, Petitioner's Reply in Support of Motion for Relief from a Judgment or Order Pursuant to Fed. R. Civ. P. 60 was filed and made available via CM/ECF to all counsel of record.

        **ANAPOL WEISS**

        /s/ Sol H. Weiss
        Sol H. Weiss