# EXHIBIT A

into the same trap that Class Counsel has set for the Court by their premature request for fees: Professor Rubenstein has used as "the whole" or the "value of the settlement" *as projected*, without regard to whether those projections being achieved in reality. Because the data shows the projections are not being achieved, the "value of the settlement" that Class Counsel uses and that Professor Rubenstein uses is Monopoly money.

The Court does not need to guess about whether the projections about the "Whole" are fact or fiction. Comparing, by compensable category, the pre-settlement forecasted payments for Year 1 with the Actual Year 1 payments, the disconnect is clear:

| Category (% incidence such category represents of the Whole, *see* ECF 6423-21, (Ex. JJ, p. 5) | NFL Year 1 **Forecasted** Payments (ECF 6168 Ex. F) | **Actual** Year 1 Payments (ECF 9571, Ex. A, p. 7 |
|---|---|---|
| ALS (.5 %) | 17 Claims, $42.7 million | 14 Claims, $36.5 million |
| CTE (1.3%) | 51 Claims, $50.24 million | 36 Claims, $36.215 million |
| Parkinson's (.4 %) | 14 Claims, $7.1 million | 12 Claims, $4.72 million |
| Alzheimer's (48%) | 153 Claims, $70.655 million | 25 Claims, $11.59 million |
| Level 2 (49%) | 111 Claims, $38.64 million | 1 Claim, $1.5 million |
| Level 1.5 (0% as all assumed in Level 2) | 319 Claims, 33.64 million | 3 Claims, 1.5 million |
| Total Claims Paid | 665 Claims | Less than 100 |
| Total Amount Paid | $242.9 million | $95.192 million |

---

receive $112.5 – the denominator is unchanged. Instead, the math is based entirely upon a new, higher "value of the settlement." The value of the settlement is based upon an "updated actuarial report from Co-Lead Counsel Seeger Weiss" opining that "[p]articipation rates in the final, as-approved Settlement program substantially exceed those initially projected . . . and, as a result the anticipated Net Present Value is expected to be substantially greater than previously projected." ECF 9552-1, p. 2. The numerator, the value of the settlement, has gone from $$1,088,500,000 to $1,512,500,000. So, as the argument goes, Class Counsel is really only seeking 11.5%. And, so, to keep the former NFL players from paying more than 33.33%, private fee contracts can be presumptively capped at 22%, not 15%.

Moreover, and in in event, there is no basis to link a cap on contract rates to the Class Counsel fee award. One is separate from the other, and the Court wisely uncoupled the two when it uncapped Settlement. The fee award will not subtract from how much will go to players in this Settlement, and reducing contract rates will have an adverse effect on the representation of the players by experienced and able lawyers, who are now vital.

3