**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO: ALL OPT OUT ACTIONS PENDING AGAINST DEFENDANTS NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC | Hon. Anita B. Brody<br>ORAL ARGUMENT<br>REQUESTED |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED MASTER ADMINISTRATIVE LONG-FORM COMPLAINT FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ............................................................................................................................5

I.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE NFL
      DEFENDANTS................................................................................................................5

      A.    Choice of Law Does Not Preclude Dismissal of Plaintiffs' Claims .....................5

      B.    Plaintiffs' Fraud-Based Claims Are Fatally Flawed ...............................................8

            1.    Plaintiffs Have Not Adequately Alleged Reliance.....................................8

            2.    Plaintiffs Have Not Adequately Alleged Fraudulent Intent.....................12

            3.    Plaintiffs Have Not Adequately Alleged Causation.................................13

      C.    Plaintiffs' Negligence-Based Claims Are Fatally Flawed ..................................15

            1.    Plaintiffs Fail to State a Claim for Negligence .......................................15

            2.    Plaintiffs Fail to State Claims for Negligent Marketing, Negligent
                  Hiring, and Negligent Retention/Supervision..........................................16

      D.    Plaintiffs' Conspiracy Claim Is Fatally Flawed.................................................19

      E.    Plaintiffs Fail to State Claims Against NFLP and NFLF....................................22

II.   PLAINTIFFS' CLAIMS ARE TIME-BARRED ............................................................23

      A.    The Discovery Rule Did Not Toll Plaintiffs' Claims ..........................................24

      B.    The Doctrine of Fraudulent Concealment Did Not Toll Plaintiffs' Claims ..........27

      C.    The Filing of *Easterling* v. *National Football League* Did Not Toll
            Plaintiffs' Claims ...............................................................................................31

III.  PLAINTIFFS' REQUEST FOR LEAVE TO RE-PLEAD SHOULD BE DENIED........34

IV.   THE CLAIMS OF SETTLEMENT CLASS MEMBERS AND NON-
      COMPLIANT PLAINTIFFS SHOULD BE DISMISSED .............................................34

CONCLUSION.......................................................................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abecassis* v. *Wyatt*,
   902 F. Supp. 2d 881 (S.D. Tex. 2012)................................................................26

*ACA Fin. Guar. Corp.* v. *Goldman, Sachs & Co.*,
   25 N.Y.3d 1043 (2015)................................................................9

*American Pipe & Construction Co.* v. *Utah*,
   414 U.S. 538 (1974) ................................................................31

*Aquilino* v. *Philadelphia Catholic Archdiocese*,
   884 A.2d 1269 (Pa. Super. Ct. 2005) ................................................................28

*Archie* v. *Pop Warner Little Scholars, Inc.*,
   No. 16-cv-6603, 2017 WL 3084160 (C.D. Cal. May 12, 2017)................................24

*Aubrey* v. *Sanders*,
   346 F. App'x 847 (3d Cir. 2009) ................................................................10

*Bailey-El* v. *Fed. Bureau of Prisons*,
   246 F. App'x 105 (3d Cir. 2007) ................................................................18

*Barela* v. *Showa Denko K.K.*,
   No. 93-cv-1469, 1996 WL 316544 (D.N.M. Feb. 28, 1996)................................32

*Basic* v. *Levinson*,
   485 U.S. 224 (1988) ................................................................10

*Bergstein* v. *Stroock & Stroock & Lavan LLP*,
   187 Cal. Rptr. 3d 36 (Ct. App. 2015)................................................................29

*Brandow Chrysler Jeep Co.* v. *DataScan Techs.*,
   511 F. Supp. 2d. 529 (E.D. Pa. 2007)................................................................23

*Buckland* v. *Threshold Enters., Ltd.*,
   155 Cal. App. 4th 798 (Cal. Ct. App. 2007)................................................................9

*Byers* v. *Follmer Trucker Co.*,
   763 F.2d 599 (3d Cir. 1985) ................................................................33

*Cangemi* v. *Advocate S. Suburban Hosp.*,
   845 N.E.2d 792 (Ill. App. Ct. 2006)................................................................28

*Cervantes* v. *City of San Diego*,
   5 F.3d 1273 (9th Cir. 1993) ................................................................31

*Chudasama* v. *Mazda Motor Corp.*,
    123 F.3d 1353 (11th Cir. 1997)............................................................................10

*Cisco Sys., Inc.* v. *STMicroelectronics, Inc.*,
    77 F. Supp. 3d 887 (N.D. Cal. 2014)..................................................................18

*City of Philadelphia* v. *Beretta U.S.A. Corp.*,
    277 F.3d 415 (3d Cir. 2002) ................................................................................19

*In re Colgate-Palmolive Softsoap Antibacterial Hand Soap*
*Mkt. & Sales Prac. Litig.*,
    No. 12-cv-2320, 2013 WL 1332097 (D.N.H. Apr. 2, 2013) ................................6

*Conneen* v. *Amatek, Inc.*,
    238 F. Supp. 3d 652 (E.D. Pa. 2017)..................................................................25

*Cruz* v. *Bank of New York Mellon*,
    No. EDCV 14-1605-GW, 2015 WL 12781226 (C.D. Cal. Jan. 6, 2015)..............25

*Daley* v. *A.W. Chesterton, Inc.*,
    37 A.3d 1175 (Pa. 2012)......................................................................................26

*DeAngelis* v. *Widener Univ. Sch. of Law*,
    No. 97-cv-6254, 1998 WL 54333 (E.D. Pa. Jan. 13, 1998) ................................24

*DeCoursey* v. *Am. Gen. Life Ins. Co.*,
    822 F.3d 469 (8th Cir. 2016) ..............................................................................28

*Duerson* v. *Nat'l Football League, Inc.*,
    No. 12-cv-2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012)..............................6

*Dunmore* v. *Babaoff*,
    386 N.W.2d 154 (Mich. Ct. App. 1985)..............................................................28

*Easterling* v. *National Football League*,
    No. 11-5209 (E.D. Pa.)........................................................................................31

*Eaves* v. *Designs for Finance, Inc.*,
    785 F. Supp. 2d 229 (S.D.N.Y. 2011) ................................................................14

*Engalla* v. *Permanente Med. Grp., Inc.*,
    15 Cal. 4th 951 (1997)........................................................................................11

*Brown ex rel. Estate of Brown* v. *Philip Morris Inc.*,
    228 F. Supp. 2d 506 (D.N.J. 2002) ....................................................................10

*Evans* v. *Ariz. Cardinals Football Club, LLC*,
    252 F. Supp. 3d 855 (N.D. Cal. 2017)............................................................6, 14

*In re Fifth Judicial Dist. Asbestos Litig.*,
    784 N.Y.S.2d 829 (N.Y. Sup. Ct. 2004)................................................................9

*Fine* v. *Checcio*,
    870 A.2d 850 (Pa. 2005)................................................................ 23, 25, 31

*Floyd* v. *Brown & Williamson Tobacco Corp.*,
    159 F. Supp. 2d 823 (E.D. Pa. 2001)................................................................9

*In re Fosamax Products Liability Litig.*,
    694 F. Supp. 2d 253 (S.D.N.Y. 2010)................................................................32, 33

*Fox* v. *Ethicon Endo-Surgery, Inc.*,
    110 P.3d 914 (Cal. 2005)................................................................25

*Georgine* v. *Amchem Prods., Inc.*,
    83 F.3d 610 (3d Cir. 1996)................................................................6

*Giannone* v. *Ayne Inst.*,
    290 F. Supp. 2d 553 (E.D. Pa. 2003)................................................................18

*Gleason* v. *Borough of Moosic*,
    15 A.3d 479 (Pa. 2011)................................................................25, 26

*Guerrero* v. *Gates*,
    442 F.3d 697 (9th Cir. 2006)................................................................30

*In re Imprelis Herbicide Mktg., Sales Prac. & Prods. Liab. Litig.*,
    No. 11-MD-2284, 2015 WL 7575910 (E.D. Pa. Nov. 25, 2015)................................................................37

*Int'l Fund Mgmt. S.A.* v. *Citigroup, Inc.*,
    822 F. Supp. 2d 368 (S.D.N.Y. 2011)................................................................10

*Kalan* v. *Farmers & Merch. Tr. Co. of Chambersberg*,
    No. 15-cv-1435, 2015 WL 7887893 (E.D. Pa. Dec. 3, 2015)................................................................6

*Kaufman* v. *Cohen*,
    760 N.Y.S.2d 157 (N.Y. App. Div. 2003)................................................................30, 31

*Krapf* v. *St. Luke's Hospital*,
    4 A.3d 642 (Pa. Super. Ct. 2010)................................................................28

*In re Kreisel*,
    399 B.R. 679 (Bankr. C.D. Cal. 2008)................................................................14

*In re Linerboard Antitrust Litig.*,
    223 F.R.D. 335 (E.D. Pa. 2004)................................................................32

*Lazar* v. *Superior Ct.*,
    12 Cal. 4th 631 (1996)............................................................................................13

*Maestas* v. *Sofamor Danek Grp., Inc.*,
    33 S.W.3d. 805 (Tenn. 2000)..................................................................................32

*McClean* v. *Djerassi*,
    84 A.3d 1067 (Pa. Sup. Ct. 2013) ..........................................................................28

*McGowan Inv'rs LP* v. *Keefe Bruyette & Woods, Inc.*,
    540 F. Supp. 2d 571 (E.D. Pa. 2008)......................................................................37

*Migliori* v. *Boeing N. Am., Inc.*,
    97 F. Supp. 2d 1001 (C.D. Cal. 2000) ....................................................................26

*Mirkin* v. *Wasserman*,
    5 Cal. 4th 1082 (1992)............................................................................................10

*In re Nat'l Football League Players' Concussion Injury Litig.*,
    307 F.R.D. 351 (E.D. Pa. 2015)..............................................................................32

*NECA-IBEW Pension Tr. Fund* v. *Lewis*,
    607 F. App'x 79 (2d Cir. 2015) ..............................................................................26

*In re Niaspan Antitrust Litig.*,
    42 F. Supp. 3d 735 (E.D. Pa. 2014) ........................................................................29

*Ochs* v. *Woods*,
    117 N.E. 305 (N.Y. 1917)..............................................................................11, 12

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
    193 F.3d 781 (3d Cir. 1999) ......................................................................................7

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
    MDL No. 1014, 1997 WL 186325 (E.D. Pa. Apr. 16, 1997) ....................................6

*Panayotides* v. *Rabenold*,
    35 F. Supp. 2d 411 (E.D. Pa. 1999) ........................................................................21

*Peel* v. *BrooksAmerica Mortg. Corp.*,
    788 F. Supp. 2d 1149 (C.D. Cal. 2011)....................................................................12

*Portwood* v. *Ford Motor Co.*,
    701 N.E.2d 1102 (Ill. 1998)....................................................................................32

*Premium Assignment Corp.* v. *City Cab Co.*,
    No. 060157, 2005 WL 1706976 (Pa. Com. Pl. July 15, 2005)..................................9

*Pulli* v. *Ustin*,
    24 A.3d 421 (Pa. Super. Ct. 2011) .......................................................................30

*R.J. Reynolds Tobacco Co.* v. *Martin*,
    53 So.3d 1060 (Fla. Dist. Ct. App. 2010) ..................................................... 11, 12

*Reginella Constr. Co.* v. *Travelers Cas & Sur. Co. of Am.*,
    971 F. Supp. 2d 470 (W.D. Pa. 2013) .................................................................18

*In re Resorts Int'l, Inc.*,
    181 F.3d 505 (3d Cir. 1999) ................................................................................12

*In re Rhone-Poulenc Rorer, Inc.*,
    51 F.3d 1293 (7th Cir. 1995) ................................................................................7

*Robinson* v. *Dalton*,
    107 F.3d 1018 (3d Cir. 1997) ..............................................................................33

*Ross* v. *Louise Wise Services, Inc.*,
    868 N.E.2d 189 (N.Y. 2007) ...............................................................................30

*Royal Mile Co.* v. *UPMC*,
    No. 10-cv-1609, 2013 WL 5436925 (W.D. Pa. Sept. 27, 2013).....................28, 30

*Salzo* v. *Bedding Showcase, Inc.*,
    656 N.Y.S.2d 236 (N.Y. App. Div. 1997) ...........................................................18

*Sch. Dist. of Allentown* v. *Marshall*,
    657 F.2d 16 (3d Cir. 1981) ..................................................................................33

*Schmidt* v. *Skolas*,
    770 F.3d 241 (3d Cir. 2014) ................................................................................25

*Shields* v. *Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d. Cir. 1994) ...............................................................................13

*Shropshear* v. *Corp. Council of the City of Chi.*,
    275 F.3d 593 (7th Cir. 2001) ...............................................................................30

*Small* v. *Lorillard Tobacco Co.*,
    252 A.D.2d 1 (N.Y. App. Div. 1998) ..................................................................11

*Song Fi, Inc.* v. *Google, Inc.*,
    No. 14-cv-5080, 2016 WL 1298999 (N.D. Cal. Apr. 4, 2016).............................21

*Spellman* v. *Benjamin Moore & Co.*,
    No. 1112 WDA 2016, 2017 WL 2675943 (Pa. Super. Ct. June 9, 2017) ...............8

*Suffolk Cty. Water Auth.* v. *Dow Chem. Co.*,
   991 N.Y.S.2d 613 (App. Div. 2014) .................................................................26

*Swietlowich* v. *Bucks County*,
   610 F.2d 1157 (3d Cir. 1979).........................................................................23

*In re Tobacco II Cases*,
   207 P.3d 20 (Cal. 2009).................................................................................11

*In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*,
   MDL No. 19956, 2009 WL 2940081 (D.N.J. Sept. 11, 2009) ...............................6

*In re Toyota Motor Corp.*,
   No. 10-02151, 2012 WL 12929769 (C.D. Cal. May 4, 2012)..............................11

*Twersky* v. *Yeshiva Univ.*,
   993 F. Supp. 2d 429 (S.D.N.Y. 2013) .............................................................27

*In re Tyco Int'l Ltd.*,
   MDL No. 02-1334-B, 2007 WL 1703023 (D.N.H. June 11, 2007)........................6

*In re United Parcel Serv., Air-In-Ground Mktg. & Sales Prac. Litig.*,
   580 F. App'x 543 (9th Cir. 2014), *as amended* (July 25, 2014).........................6

*Van Dongen* v. *CNinsure Inc.*,
   951 F. Supp. 2d 457 (S.D.N.Y. 2013) .............................................................10

*Varacallo* v. *Mass. Mut. Life Ins. Co.*,
   752 A.2d 807 (N.J. App. Div. 2000) ...............................................................11

*Vasquez* v. *Sup. Ct.*,
   484 P.2d 964 (Cal. 1971)...............................................................................11

*Wade* v. *Danek Med., Inc.*,
   182 F.3d 281 (4th Cir. 1999) .....................................................................32, 33

*Wilhelm* v. *Pray, Price, Williams & Russel*,
   186 Cal. App. 3d 1324 (Cal. Ct. App. 1986) ......................................................9

*Williams* v. *Countrywide Fin. Corp.*,
   No. 2:16-cv-04166, 2017 WL 986517 (C.D. Cal. Mar. 13, 2017)........................32

*Williams* v. *Syed*,
   782 A.2d 1090 (Pa. Commw. Ct. 2001) ...........................................................19

*In re Wyse Tech. Secs. Litig.*,
   744 F. Supp. 207 (N.D. Cal. 1990) .................................................................21

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Relevant Prods.*
*Liab. Litig.,*
    No. 09-cv-20003, 2010 WL 3937414 (S.D. Ill. Oct. 4, 2010) .................................................6

*Zafarana* v. *Pfizer Inc.,*
    724 F. Supp. 2d 545 (E.D. Pa. 2010) ..................................................................................20

*Com. of Pa. ex rel Zimmerman* v. *PepsiCo., Inc.,*
    836 F.2d 173 (3d Cir. 1988) .............................................................................................17

**OTHER AUTHORITIES**

2 Legal Malpractice § 20:2 (2018) .............................................................................................6

2 Newberg on Class Actions §§ 4:58, 4:60 ......................................................................... 10, 11

31 Williston on Contracts § 79:14 (4th ed) ..............................................................................6

Dan B. Dobbs, Paul T. Hayden and Ellen M. Bublick, The Law of Torts §§ 124,
    664 (2d ed.) .....................................................................................................................7

Howard O. Hunter, 19.41 Procedural and Substantive Distinction, Modern Law of
    Contracts (2017) ..............................................................................................................6

Rules Advisory Comm. Note, 39 F.R.D. 69 (1966) ..................................................................11

Defendants National Football League ("NFL") and NFL Properties LLC ("NFLP" and, together with the NFL, the "NFL Defendants") respectfully submit this reply memorandum in support of their motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the Second Amended Master Administrative Long-Form Complaint (the "Complaint" or "SAC") for failure to state a claim.[1]

## PRELIMINARY STATEMENT

The NFL Defendants' moving papers demonstrated that the SAC—full of boilerplate, but short on substance—should be dismissed because it fails to state a claim and most of Plaintiffs' claims are time barred.  Plaintiffs' opposition brief does not refute that showing.

Recognizing as much, Plaintiffs first attempt to avoid dismissal by faulting the NFL Defendants for not conducting a choice of law analysis.  But it is well settled that courts need not address choice of law before considering a motion to dismiss unless there is a true conflict between potentially applicable laws.  Here, Plaintiffs fail to identify a single such

---

[1] This reply brief addresses arguments raised in the briefs filed by Lead Counsel for Opt Out Plaintiffs (ECF No. 9522 ("Pls.' Br.")), Plaintiffs Tyler Seau, Sydney Seau, Jake Seau, Gina Seau as guardian ad litem for H. Seau, and Bette Hoffman (together with the parents of Junior Seau, the "Seaus") (ECF No. 9523 ("Seau Br."), joined by the parents of Junior Seau (ECF No. 9544)), and Plaintiff Ted Johnson (ECF No. 9521 ("Johnson Br.")) in opposition to the NFL Defendants' motion to dismiss the Complaint for failure to state a claim.  As used herein, "Plaintiffs" refers collectively to all opt-outs with pending claims against the NFL Defendants, including the Seaus, Ted Johnson, and the family members and representatives of Adrian Robinson (the "Robinsons"), although certain arguments made and claims brought by those specific Plaintiffs in their respective individual filings are addressed individually.  In addition, the Judicial Panel on Multidistrict Litigation recently transferred another action, *Hernandez* v. *Nat'l Football League*, No. 18-cv-464 (E.D. Pa.), to this MDL, and thus the claims in that case are superseded by the SAC and should be dismissed for the reasons set forth in the NFL Defendants' motions to dismiss, and also because Hernandez is a Settlement Class Member whose claims are barred under the Settlement Agreement.  *See infra* § IV.

Plaintiffs' brief states that there are "88 Opt Out Plaintiffs," but refers to a schedule of opt-outs listing 94 individuals, not 88.  (*See* Pls.' Br. at 2 n.2; Fleischman Decl. Ex. 1.)  Neither number, however, accurately reflects the total number of Opt Out Plaintiffs, which this Court defined as "non-Settlement Class Member plaintiffs with pending claims in MDL 2323."  (Order at 1 n.1, ECF No. 7477.)  Of the 94 individuals listed in Plaintiffs' schedule, only 43 were party to previously filed lawsuits against the NFL Defendants in this MDL, and an additional four have filed Short Form Complaints, despite not having previously filed lawsuits against the NFL Defendants.  The remaining 47 have no pending claims against the NFL Defendants in this MDL and thus are not covered by the SAC.

conflict.  Indeed, they make no attempt to dispute that the core elements of their claims are the same across all states.  For good reason.  There are no material variations among the requisite fundamental elements lacking in Plaintiffs' fraud, negligence, and conspiracy claims.

On the merits, Plaintiffs' opposition arguments fare no better.

First, as the NFL Defendants' moving brief showed, Plaintiffs have not pleaded facts sufficient to support multiple elements of their fraud-based claims, let alone with the particularity required by Rule 9(b).  For example, Plaintiffs have not alleged reliance because they have not alleged that they heard or saw (or would have heard or seen) any of the NFL Defendants' alleged omissions or misstatements.  Because Plaintiffs cannot adequately plead reliance, they try to rely on inapposite presumptions to excuse their failure.  But, as courts across the country have repeatedly held, these presumptions—for example, the reliance presumption available to federal securities fraud plaintiffs—have no application in cases like this one.  Indeed, permitting plaintiffs in ordinary common law fraud cases to plead reliance through presumptions would replace Rule 9(b)'s particularity regime with one in which plaintiffs need not even plead facts.  That is not the law, and Plaintiffs' purported reliance allegations fall woefully short of settled pleading standards.  So, too, do Plaintiffs' conclusory allegations of fraudulent intent, which lack any factual support.  And Plaintiffs' claim that causation is "not susceptible to mass administrative pleading" cannot defend Plaintiffs' pleading deficiencies:  Plaintiffs had ample opportunity to plead factual allegations of causation in the SAC and Plaintiffs' Short Form Complaints.  That the NFL Defendants can test the merits during discovery, as Plaintiffs assert, does not absolve Plaintiffs of settled pleading requirements or cure the SAC's fatal flaws.

Second, as the NFL Defendants demonstrated, Plaintiffs' negligence claims either are preempted (to the extent they are asserted by Plaintiffs in their capacity as former NFL

players) or deficient (to the extent they are brought by Plaintiffs in their capacity as members of the general public, to whom the NFL Defendants owe no duty).  In opposition, Plaintiffs now assert only that the NFL Defendants owe a duty to NFL players and effectively concede that they have not pleaded that the NFL Defendants owed a duty to the general public; thus, their claims are preempted.  The NFL Defendants also showed that Plaintiffs have not alleged the requisite elements of their negligent marketing, negligent hiring, and negligent retention/supervision claims.  Again, Plaintiffs do not dispute the NFL Defendants' argument, and instead recast these as claims founded on the same theory as their ordinary negligence claim—namely, that the NFL Defendants voluntarily undertook a duty of care to protect players.  But Plaintiffs may not amend their complaint through their opposition brief, and even if they could, dismissal still would be appropriate because these reinvented claims are duplicative of Plaintiffs' general negligence claim and are otherwise insufficiently pleaded.

Third, Plaintiffs have not stated a claim for civil conspiracy.  In their moving brief, the NFL Defendants demonstrated that Plaintiffs' allegation of a multi-decade international conspiracy involving the federal government was completely implausible and, in any event, inadequately alleged.  Unable to defend that conspiracy, Plaintiffs now purport to assert a conspiracy solely involving the NFL Defendants and Riddell, but still fail to state a claim for conspiracy.  Plaintiffs' allegations hinge solely on two innocuous, lawful activities occurring decades apart: the formation of the National Operating Committee on Standards for Athletic Equipment ("NOCSAE"), a non-profit self-regulatory organization concerning helmet standards, in which neither the NFL nor Riddell has any financial, governing, or ownership interest, and a 1989 trademark licensing agreement permitting the use of NFL marks on Riddell helmets and the

sale of mini replica helmets.  The NFL's participation in these lawful activities does not support a conspiracy claim.

Fourth, Plaintiffs' defense of their claims against NFLP—which, as the NFL Defendants' moving brief showed, are predicated solely on a handful of allegations of innocuous conduct—amounts to a promise that discovery will surely undercover something nefarious.  That is not enough to satisfy Plaintiffs' obligation to plead facts to support their claims.

Fifth, as the NFL Defendants demonstrated, Plaintiffs seek redress for injuries sustained during their NFL careers, but because most Plaintiffs ended their careers more than six years before filing suit, their claims are untimely.  Plaintiffs' attempt to avoid dismissal on statute of limitations grounds by invoking a litany of tolling doctrines does not save their time-barred claims, because no such doctrines apply here.  The discovery rule is available only where a plaintiff can plead facts sufficient to establish why he could not discover his injury earlier.  Here, Plaintiffs' conclusory pleading nowhere alleges, as the law requires, facts showing what diligence Plaintiffs undertook, when they discovered their alleged injuries, or why they were unable to discover the existence of a potential link between repeated subconcussive hits and traumatic brain injuries through ordinary diligence.  Indeed, their own pleading is replete with examples of publicly available information concerning this purported connection.  Fraudulent concealment tolling is similarly unavailable because Plaintiffs have not pleaded facts sufficient to show that the NFL Defendants undertook any affirmative act of concealment intended to prevent Plaintiffs from bringing suit, that Plaintiffs could not have discovered their claims sooner, or that the alleged concealment was separate and distinct from the acts underlying Plaintiffs' core fraud claims.  Finally, Plaintiffs' argument that the filing of *Easterling* v. *National Football League* should toll the statutes of limitations governing Plaintiffs' claims fails

both because Plaintiffs have not demonstrated that class action tolling applies as a matter of law and because, even if such tolling were available, it would not save the majority of Plaintiffs' claims, which were untimely long before *Easterling* was filed in 2011.

Finally, Plaintiffs should not, as they improperly request, get yet another opportunity to plead their claims, having already had the opportunity to file Short Form Complaints incorporating any unique "allegations, claims, theories of recovery and/or prayers for relief."  Nor should the Court countenance the failure of nine Plaintiffs to file Short Form Complaints in the ten months since the Court's April 12, 2017 order instructed them to do so (or in the more than four months since the NFL Defendants identified their failure).  And, finally, the Court should dismiss the claims of Settlement Class Members who now purport to assert opt-out claims despite not having opted out of the Settlement Class.

For these reasons, the NFL Defendants respectfully request that this Court dismiss the SAC with prejudice.

## ARGUMENT

## I.
## PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE NFL DEFENDANTS

The NFL Defendants' moving brief demonstrated that Plaintiffs have not adequately alleged their claims.  Nothing in Plaintiffs' opposition brief—relying on conclusory (and contradictory) allegations, invoking inapposite legal doctrines, and attempting improperly to amend their claims through briefing—cures the flaws in Plaintiffs' claims.

## A.    Choice of Law Does Not Preclude Dismissal of Plaintiffs' Claims

Plaintiffs' first argument—that the NFL Defendants' motion should be denied for failing to argue choice of law—has no basis in the law.  Plaintiffs have not cited, and cannot cite, any authority for a rule requiring denial of motions to dismiss if defendants do not conduct a

choice of law analysis.[2]   Indeed, courts (including MDL courts) regularly deem choice of law analyses unnecessary where there is no true conflict between the potentially applicable laws, because the substantive laws are the same in material respects.  *See, e.g.*, *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Relevant Prods. Liab. Litig.*, No. 09-cv-20003, 2010 WL 3937414, at *4–5 (S.D. Ill. Oct. 4, 2010) (applying California law and determining that the court "need not undertake a lengthy choice of law analysis" where an element of plaintiffs' claims existed "regardless of which state's substantive law governs and regardless of the theory of recovery").[3]

---

[2]   As explained in the NFL Defendants' opening brief, the elements of Plaintiffs' claims are substantially similar across the various states, but for ease of reference, the NFL Defendants cited primarily to the law of the forum (Pennsylvania) and the law of the state in which the NFL Defendants are domiciled and which is the likely "center of gravity" for the alleged misconduct (New York).  (Defs.' Br. at 11 n.9, ECF No. 8404-1.)

[3]   *See also Evans* v. *Ariz. Cardinals Football Club, LLC*, 252 F. Supp. 3d 855, 859 (N.D. Cal. 2017) (finding choice of law analysis unnecessary where "the substantive elements [of the claim] are the same" in both states); *Duerson* v. *Nat'l Football League, Inc.*, No. 12-cv-2513, 2012 WL 1658353, at *3 (N.D. Ill. May 11, 2012) (deeming a choice of law analysis unnecessary for negligence claim because "a negligence claim in all states requires, in some form, the existence of a duty, the breach of that duty, causation, and damages"); *In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, MDL No. 19956, 2009 WL 2940081, at *7 (D.N.J. Sept. 11, 2009) ("It is unnecessary . . . to conduct a choice of law analyses at [the motion to dismiss] stage because, as explained below, for each of Plaintiffs' claims, there is either no conflict of law or the Plaintiffs' claims fail under any of the possible applicable laws."); *In re Tyco Int'l Ltd.*, MDL No. 02-1334-B, 2007 WL 1703023, at *24 (D.N.H. June 11, 2007) (declining to conduct choice of law analysis where laws were "substantively identical").  The cases Plaintiffs cite in purported support of their argument are not to the contrary, either because the court in fact *granted* in part defendant's motion to dismiss without performing a choice of law analysis, *see In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL No. 1014, 1997 WL 186325, at *11 (E.D. Pa. Apr. 16, 1997) (dismissing portions of conspiracy claim that failed under a "national majority rule"), or because it first determined that a conflict existed, *see Georgine* v. *Amchem Prods., Inc.*, 83 F.3d 610, 627 (3d Cir. 1996) (denying certification of settlement class because, *inter alia*, objectors demonstrated numerous conflicts); *In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mkt. & Sales Prac. Litig.*, No. 12-cv-2320, 2013 WL 1332097, at *1 (D.N.H. Apr. 2, 2013) (denying motion to dismiss because "the elements of the plaintiffs' claims differ from state to state" and "courts . . . interpret those elements differently").  To the extent Plaintiffs rely on *Kalan* v. *Farmers & Merch. Tr. Co. of Chambersberg*, No. 15-cv-1435, 2015 WL 7887893 (E.D. Pa. Dec. 3, 2015) and *In re United Parcel Serv., Air-In-Ground Mktg. & Sales Prac. Litig.*, 580 F. App'x 543 (9th Cir. 2014), *as amended* (July 25, 2014), to suggest otherwise, this reliance is misplaced.  Those cases involved claims and rules that can vary substantially across different states: breach of fiduciary duty and legal malpractice in *Kalan*, and the doctrine of unconscionability and the statute of limitations for breach of contract claims, fraud, and unjust enrichment in *In re UPS*.  *See, e.g.*, 2 Legal Malpractice § 20:2 (2018) (standard of care owed by attorneys to clients varies by state); Howard O. Hunter, 19.41 Procedural and Substantive Distinction, Modern Law of Contracts (2017) ("States vary in their requirements for finding unconscionability."); 31 Williston on Contracts § 79:14 (4th ed.) (statutes of limitations for breach of contract actions range between two and ten years).  Neither case creates any rule requiring denial of the NFL Defendants' motion here, where Plaintiffs have not pleaded universal and fundamental elements of fraud and

That is the case here.  Neither Plaintiffs nor the Seaus have identified—in more than 50 pages of briefing—the existence of *any* actual conflicts in the substantive laws governing Plaintiffs' claims.  Regarding negligence, for example, Plaintiffs do not identify a single element of their claims where potentially applicable state laws conflict.  Instead, they cite to Judge Posner's observation that small differences between the negligence laws in different states *can* be relevant to a conflict of laws analysis.  (*See* Pls.' Br. at 14.)  But Judge Posner made this observation in the context of a case alleging a "novel" theory of negligence that bears no resemblance to this case, where Plaintiffs allege garden variety negligence claims, the core elements of which are universally recognized.  *See In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1296, 1300 (7th Cir. 1995).  Regarding fraud, Plaintiffs do not identify any potential conflicts between the laws of different states; indeed, the Seaus concede that New York and California law do not conflict.  (*See* Seau Br. at 14 n.8.)[4]  Moreover, the sufficiency of Plaintiffs' fraud claims is governed by Rule 9(b), which requires Plaintiffs to plead the basic undisputed elements of such claims with particularity, regardless of which state's law applies.  Regarding conspiracy, Plaintiffs also do not identify any conflicts; in fact, they concede that New York law does not recognize civil conspiracy absent the existence of an underlying tort and do not identify *any* states where a conspiracy claim can stand absent an independent underlying wrong.  (*See* Pls.' Br. at 24; *see also In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999) ("[W]e are unaware of any jurisdiction that recognizes civil conspiracy as a cause of

---

negligence claims like reliance, causation, and the existence of a duty, *see* Dan B. Dobbs, Paul T. Hayden and Ellen M. Bublick, The Law of Torts §§ 124, 664 (2d ed.) (listing elements of negligence and fraud claims), and where most of their claims are time-barred under any state's law.

[4]     Notwithstanding the Seau's inability to identify any conflicts in the laws that might govern their substantive claims, NFL Defendants concede, for purposes of this motion only, that California law applies to their claims. For the reasons set forth below, however, California law does not save the Seaus' claims.

action requiring no separate tortious conduct.").)   In sum, Plaintiffs' briefs do more to demonstrate the *absence* of any conflict than the existence of one.[5]

## B.    Plaintiffs' Fraud-Based Claims Are Fatally Flawed

Plaintiffs' fraud-based claims (fraud, fraudulent concealment, and negligent misrepresentation)—lacking essential elements of justifiable reliance, fraudulent intent,[6] and causation—fail to state a claim.  None of Plaintiffs' opposition arguments has merit.

### 1.    Plaintiffs Have Not Adequately Alleged Reliance

As the NFL Defendants explained in their opening brief, Plaintiffs have not pleaded reliance in anything other than boilerplate terms because they do not allege—in the SAC or in any Short Form Complaint—that any Plaintiff ever saw any of the NFL Defendants' allegedly fraudulent statements (or would have seen the alleged omissions), much less that they relied on them.   Moreover, Plaintiffs could not have relied on alleged fraud or concealment occurring after their careers ended.  (Defs.' Br. at 13–15.)  In response, Plaintiffs argue that their failure to comply with Rule 9(b) does not warrant dismissal because reliance here should be "presumed" or "inferred."  (Pls.' Br. at 19–2l; Seau Br. at 16–17.)[7]  That is not the law.

Reliance is an essential element of any fraud claim; thus, long-settled law requires Plaintiffs to allege facts sufficient to demonstrate that they took (or refrained from taking) some

---

[5]    Also telling of the absence of any conflict here is that Plaintiffs were free to file individual briefs raising unique issues applicable to their claims, such as which state's law they contend governs each of their claims and why their claims are salvaged under that state's laws.  (*See* Order ¶¶ 3–5, ECF No. 8030.)  That only the Seaus—who ultimately did not identify any conflicts in the substantive laws governing their claims—did so only underscores that Plaintiffs' argument cannot forestall dismissal here.

[6]    Although negligent misrepresentation claims do not require fraudulent intent, they do require reliance and causation.  *Spellman* v. *Benjamin Moore & Co.*, No. 1112 WDA 2016, 2017 WL 2675943, at *5 (Pa. Super. Ct. June 9, 2017).

[7]    The Seaus also argue that dismissal is inappropriate because the reasonableness of reliance is ordinarily an issue of fact.  (Seau Br. at 17 n.10.)  But the NFL Defendants do not argue that the Seaus have not alleged *reasonable* reliance; they argue that the Seaus, like the other Plaintiffs, have not alleged reliance *at all*.  (Defs.' Br. at 13–15.)

step because of the alleged omission or misrepresentation. *See Wilhelm* v. *Pray, Price, Williams & Russel*, 186 Cal. App. 3d 1324, 1331–32 (Cal. Ct. App. 1986) ("Plaintiffs must show 'actual' reliance, i.e., that the representation was an 'immediate cause' that altered their legal relations."); *In re Fifth Judicial Dist. Asbestos Litig.*, 784 N.Y.S.2d 829, 833 (N.Y. Sup. Ct. 2004) ("Reliance is to fraud what proximate cause is to negligence," and it requires that "but for the representation plaintiff would not have acted or refrained from acting").  Reliance is adequately pleaded where plaintiff alleges facts demonstrating that he actually heard or saw the purported misstatement, or would have seen or heard it in the case of an omission. *See, e.g.*, *ACA Fin. Guar. Corp.* v. *Goldman, Sachs & Co.*, 25 N.Y.3d 1043, 1045 (2015) (reliance adequately pleaded where defendant allegedly lied directly to plaintiff in response to direct question); *Buckland* v. *Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 807 (Cal. Ct. App. 2007) ("Actual reliance is also an element of fraud claims based on omission: the plaintiff must establish that had the omitted information been disclosed, [he or she] would have been aware of it and behaved differently.") (alterations in original), *rev'd on other grounds*, *Kwikset Corp.* v. *Superior Court*, 51 Cal. 4th 310, 335–36 (2011).  The SAC and Short Form Complaints contain no such allegations (Defs.' Br. at 12–15), as Plaintiffs have conceded by failing to cite any in opposition and requesting leave to amend (Pls.' Br. at 21), and thus Plaintiffs' fraud claims should be dismissed, *see Floyd* v. *Brown & Williamson Tobacco Corp.*, 159 F. Supp. 2d 823, 833 (E.D. Pa. 2001) (dismissing "vague and conclusory" allegations of reliance); *Premium Assignment Corp.* v. *City Cab Co.*, No. 060157, 2005 WL 1706976, at *1 (Pa. Com. Pl. July 15, 2005) (dismissing fraud claim for failure to plead reliance because "simply averring that 'Plaintiff justifiably relied on the Defendant's misrepresentation' is not enough to comply with the specificity requirements of pleading fraud").[8]

---

[8]    The Seaus point only to conclusory allegations, such as the boilerplate statement that "Plaintiffs reasonably

Recognizing their inability to plead any facts demonstrating reliance, Plaintiffs attempt to rely on presumptions and inferences of reliance from inapposite case law. First, Plaintiffs cite the rebuttable presumptions of reliance applicable to federal securities fraud claims.[9] But those presumptions—serving the specific policy goals of the federal securities laws, "in part designed to *add to* the protections provided investors by the common law"—apply only to omissions and misstatements affecting the price of covered securities (often litigated on a class-wide basis), not to ordinary common law fraud claims brought by individual plaintiffs. *Basic* v. *Levinson*, 485 U.S. 224, 244 n.22, 248–49 (1988) (emphasis added); *see also Int'l Fund Mgmt. S.A.* v. *Citigroup, Inc.*, 822 F. Supp. 2d 368, 387 (S.D.N.Y. 2011) (rejecting application of the *Affiliated Ute* presumption to common law fraud claim because "[t]he Section 10(b) presumptions serve the specific prophylactic purposes of the federal securities laws, [and] are *not appropriate in the common law context*") (emphasis added); 2 Newberg on Class Actions §§ 4:58, 4:60 (explaining that "[w]hat these [securities law] presumptions do, quite simply, is enable class certification" and that such presumptions generally are limited to the securities realm).[10]

---

relied to their detriment" (*see* Seau Br. at 16 (citing SAC ¶ 347)), which are insufficient.

[9]   *See Van Dongen* v. *CNinsure Inc.*, 951 F. Supp. 2d 457 (S.D.N.Y. 2013).

[10]   *See also Aubrey* v. *Sanders*, 346 F. App'x 847, 849–50 (3d Cir. 2009) (noting that "the Supreme Court in *Basic* distinguished common law fraud from federal securities fraud claims" and that "in more than twenty intervening years since *Basic*, Pennsylvania has not recognized a fraud on the market theory of liability in common law fraud claims"); *Chudasama* v. *Mazda Motor Corp.*, 123 F.3d 1353, 1369 n.39 (11th Cir. 1997) (rejecting argument that "[b]ecause Mazda subjected 'the whole market' to its deceptive advertising . . . reliance should be presumed" because "[t]he fraud on the market theory of securities law . . . is based on concepts and policies that simply do not apply in a products liability case"); *Brown ex rel. Estate of Brown* v. *Philip Morris Inc.*, 228 F. Supp. 2d 506, 518–19 (D.N.J. 2002) (rejecting plaintiffs' attempt to "list[] various public and nonpublic statements of defendants and other tobacco companies and ask[] the Court to allow an inference that decedent relied on these statement to his detriment" because the fraud on the market presumption did not apply to common law fraud); *Mirkin* v. *Wasserman*, 5 Cal. 4th 1082, 1093–94, (1992) ("'[T]he body of law that has developed under Rule 10b-5 is not sufficiently analogous to the law of fraud to justify its importation into the latter.").

Second, Plaintiffs cite class action cases in which courts presume class-wide reliance where (i) that reliance is proven by the lead plaintiff, and (ii) plaintiffs can prove that fraudulent misrepresentations or omissions are common across the entire class.[11]  Again, this presumption—serving a specific policy goal to prevent "individual inquiries [from] . . . becom[ing] the predominant issue[] in a [class action] fraud case," 2 Newberg on Class Actions §§ 4:58, 4:60 (5th ed.)—does not apply where, as here, Plaintiffs, whose careers span decades in the NFL and whose claims are not susceptible to class-wide adjudication, are pursuing their opt-out claims on an individual basis and "there [is] a material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed," Rules Advisory Comm. Note, 39 F.R.D. 69, 103 (1966) (explaining circumstances in which class adjudication of fraud claims is inappropriate under Rule 23).

Third, Plaintiffs rely on cases involving distinguishable facts—for example, cases where plaintiffs in fact alleged that they or their agents heard or saw the alleged misrepresentations[12] or were directly exposed to misleading advertising campaigns,[13] cases considering the sufficiency of *evidence* presented at trial rather than the sufficiency of a

---

[11]   *See, e.g.*, *Vasquez* v. *Sup. Ct.*, 484 P.2d 964 (Cal. 1971) (granting class certification); *Varacallo* v. *Mass. Mut. Life Ins. Co.*, 752 A.2d 807 (N.J. App. Div. 2000) (reversing order denying motion for class certification where identical misstatement made to every class member); *Small* v. *Lorillard Tobacco Co.*, 252 A.D.2d 1 (N.Y. App. Div. 1998) (denying class certification and holding presumption of reliance did not apply where "plaintiffs had a reasonable opportunity to discovery facts about the transaction beforehand using ordinary intelligence").

[12]   *Engalla* v. *Permanente Med. Grp., Inc.*, 15 Cal. 4th 951 (1997) (fraudulent statements reviewed by plaintiffs' employer in its capacity as agent selecting health insurance plan); *Ochs* v. *Woods*, 117 N.E. 305 (N.Y. 1917) (fraudulent statement made to plaintiff).

[13]   *In re Toyota Motor Corp.*, No. 10-02151, 2012 WL 12929769 (C.D. Cal. May 4, 2012) (plaintiffs saw fraudulent ads, in case involving statutory claims for false advertising); *In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009) (same); *R.J. Reynolds Tobacco Co.* v. *Martin*, 53 So.3d 1060 (Fla. Dist. Ct. App. 2010) (same). Plaintiffs' reliance on these cases to suggest that they need not "plead [reliance] with an unrealistic degree of specificity" (Pls.' Br. at 21 (quoting *In re Tobacco II*, 207 P.3d at 40)) is likewise misplaced. In *Tobacco II*, the court held that the plaintiff class had standing under California's unfair competition statute because lead plaintiffs had met their pleading burden by alleging exposure to a prolonged advertising campaign.  That case has no application here, where Plaintiffs are asserting non-statutory common law claims and have failed to allege any facts showing that they saw the alleged misstatements or omissions.

plaintiff's *pleadings*,[14] or cases involving discrete transactions where plaintiffs complied with allegedly fraudulent terms of a contract.[15]  Such cases are inapposite here, where Plaintiffs have failed to plead, as they must, that they read or saw the NFL's alleged misstatements, or would have read or seen the NFL's alleged omissions.

Simply put, Plaintiffs' attempt to stretch these presumptions of reliance beyond the limited purposes for which they were created runs afoul of Rule 9(b) and the Supreme Court's holdings in *Twombly* and *Iqbal*.  Expanding the securities and class action presumptions in the manner Plaintiffs propose would permit plaintiffs to plead reliance in this manner in *all* fraud cases, effectively allowing plaintiffs to plead reliance without particularity (in conflict with Rule 9(b)), and indeed without alleging *any* facts at all (in conflict with *Twombly* and *Iqbal*). Plaintiffs provide no support whatsoever for this radical departure from the Federal Rules and Supreme Court precedent.  And there is none.

In sum, Plaintiffs have not alleged—let alone adequately—the essential element of reliance.

### 2.    Plaintiffs Have Not Adequately Alleged Fraudulent Intent

Nor have Plaintiffs adequately pleaded fraudulent intent.

---

[14]    *See, e.g.*, *In re Resorts Int'l, Inc.*, 181 F.3d 505, 510 (3d Cir. 1999) (finding *no* reasonable reliance despite numerous misrepresentations by defendant to plaintiffs); *Martin*, 53 So.3d 1060 (Fla. Dist. Ct. App. 2010) (affirming jury verdict for plaintiff, including determination that plaintiff had adequately proved reliance); *Ochs*, 117 N.E. 305 (century-old case merely holding that jury had sufficient evidence to find that plaintiff was induced into transaction).

[15]    *See Peel* v. *BrooksAmerica Mortg. Corp.*, 788 F. Supp. 2d 1149, 1162 (C.D. Cal. 2011) (case involving alleged omission in mortgage payment schedule where, although plaintiffs did not expressly allege that they had read the payment schedule, they had made payments in accordance with it); *Ochs*, 117 N.E. 305 (case involving allegation that defendant made fraudulent statement to induce plaintiff to enter into and perform under bilateral contract).  Unlike here, *Peel* arose in a transactional context that did not involve an alleged decades-long concealment, or general public statements, where the nexus between the NFL Defendants' words and Plaintiffs' actions are significantly more attenuated.

Plaintiffs do not acknowledge, much less contest, that showing (*see* Defs.' Br. at 15–16); indeed, they offer no defense of their pleading deficiencies at all.  Instead, Plaintiffs simply repeat their conclusory refrain that the NFL knew by the 1960s that football increased the risk of brain injuries and that the MTBI Committee was "biased" and a "sham."  (Pls.' Br. at 21–22.)  These conclusory allegations are entirely devoid of factual support, and thus do not come close to alleging the requisite element of intent to deceive.  *See Shields* v. *Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d. Cir. 1994) (affirming decision dismissing fraudulent intent allegation where plaintiff had "couple[d] a factual statement with a conclusory allegation of fraudulent intent" instead of "alleg[ing] facts that would give rise to a strong inference that defendants knew or recklessly disregarded" the alleged falsity of their statements); *Lazar* v. *Superior Ct.*, 12 Cal. 4th 631, 645 (1996) (affirming dismissal where plaintiff made only "general and imprecise" boilerplate allegation of fraudulent intent).  The Seaus offer a similarly sparse response, pointing to a mere two paragraphs alleging that the NFL Defendants intended for Plaintiffs to rely on the MTBI Committee's research.  (Seau Br. at 16–17.)  They do not, however, identify a single fact to show that the NFL Defendants actually knew their statements were false, and thus have not alleged fraudulent intent.[16]

### 3.    Plaintiffs Have Not Adequately Alleged Causation

Plaintiffs' attempts to defend their pleading of causation—relying on the same boilerplate from the SAC—fare no better.  In response to the NFL Defendants' showing (Defs.' Br. at 16–17), Plaintiffs all but concede that they have not met their pleading burden—offering

---

[16]   The sole statement that the Seaus identify—NFL General Counsel Jeff Pash's statement that "the Commissioner believes that if players are given the proper information, they can make good choices about their equipment and safety" (SAC ¶ 308)—was made on Christmas of 2009, Junior Seau's last season in the NFL.  (*See id.*; Seau Short Form Compl. ¶¶ 14–15, ECF No. 8166.)  Thus, even assuming what the Seaus make no serious attempt to establish—that the NFL's innocuous statement was made with fraudulent intent—Plaintiffs' pleadings contain no factual allegations explaining how Seau relied on it or how it caused Seau's injuries.

only the bare assertion that a causal connection between their purported injuries and the alleged fraud is "plausible"—and instead argue that their claims are "not susceptible to a mass administrative pleading" and that, "[a]s is typical in mass tort cases, expert discovery will be necessary to establish (or negate) general and specific causation."  (Pls.' Br. at 22.)  These arguments do not salvage their claims.

In the first instance, merely claiming in one's brief that there is a "plausible" causal connection between an alleged fraud and an alleged injury is insufficient; under settled law, Plaintiffs must allege facts sufficient to support such a causal connection.  *See Evans*, 252 F. Supp. 3d at 860 (holding that plaintiffs could not "plead the causation element of their concealment claim simply by pointing to some" injury and "baldly asserting their belief that" there was a causal connection).  Plaintiffs have not done so.  Moreover, it is no excuse that the SAC is a "mass administrative pleading," because Plaintiffs had the opportunity to plead specific facts regarding causation in their Short Form Complaints.  (*See* Order ¶¶ 1–2, ECF No. 8030.) They did not.  Further, neither the fact that Plaintiffs intend to rely on experts to *prove* causation nor that the NFL Defendants will have the opportunity to take the discovery needed to *disprove* causation excuse Plaintiffs' failure adequately to *plead* (either in the SAC or Short Form Complaints) facts alleging causation.  *See Eaves* v. *Designs for Finance, Inc.*, 785 F. Supp. 2d 229, 251 n.14 (S.D.N.Y. 2011) ("The standard on a Rule 12(b)(6) motion . . . is not speculation as to what discovery will reveal, but rather the sufficiency of factual allegations in the complaint" (citing *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678–79 (2009) (stating that conclusory allegations do not "unlock the doors of discovery"))); *In re Kreisel*, 399 B.R. 679, 692 (Bankr. C.D. Cal. 2008) (dismissing fraud claim because, "[a]lthough the Counterclaim's vocabulary

asserts causation, there are no allegations that indicate actual damages proximately caused by actual reliance on Counter-Defendants' alleged misrepresentations").[17]

*     *     *

In sum, because Plaintiffs have not adequately alleged reliance, fraudulent intent, or causation, Plaintiffs have failed to state viable fraud-based claims.

## C.   Plaintiffs' Negligence-Based Claims Are Fatally Flawed

The NFL Defendants' moving brief showed that Plaintiffs' negligence-based claims (negligence, negligent marketing, negligent hiring, and negligent retention/supervision) fail because they are preempted or because Plaintiffs have not alleged essential elements of those claims. Plaintiffs' attempt to salvage these claims are unavailing.

### 1.   Plaintiffs Fail to State a Claim for Negligence

The NFL Defendants showed that Plaintiffs' negligence claims are preempted to the extent they are asserted in Plaintiffs' capacity as NFL players and fail to state a claim to the extent that they are premised on duties owed by the NFL Defendants to the general public. (Defs.' Br. at 18–20; Defs.' Preemption Br. at 18–31.)  In opposition, Plaintiffs effectively concede that the NFL Defendants do not owe a duty to the general public.  (*See* Pls.' Preemption Br. at 35 n.19, ECF No. 9522 (agreeing that the NFL Defendants' duty is limited by the scope of its undertaking); Pls.' Br. at 15–16 (making no argument, and citing no authority, supporting the existence of a duty to the general public, and arguing that the NFL's research into the effects of MTBIs was limited to "the neurological risks to *NFL Players*" (emphasis added)).)

---

[17]   The Seaus argue that they have adequately pleaded a duty to disclose for purposes of their fraudulent concealment claim (Seau Br. at 17–18), but that claim nonetheless fails because the Seaus, like the other Plaintiffs, have failed to plead the other elements of their fraud-based claims. *See supra* pp. 8–15.

The individual opposition briefs submitted by the Seaus and Johnson similarly lack sufficient allegations of a duty to the public.  The Seaus' claims purport to allege only a duty to Junior Seau, a former player, and the Seaus' opposition makes no attempt to argue for any broader duty.  (*See generally* Seau Br.)  Nor could it.  And although Johnson "expressly" bases his claims on "his being a member of the general public" (Johnson Br. at 1, ECF No. 9521), his Short Form Complaint does not identify facts sufficient to establish the existence of a duty to the public, and his opposition brief does not cite any authority establishing the existence of such a wide-ranging duty as a matter of law.  (*See generally id.*; Johnson Short Form Compl., ECF No. 8027.)

In sum, Plaintiffs' negligence claims premised on a duty to the public should be dismissed.

### 2.    Plaintiffs Fail to State Claims for Negligent Marketing, Negligent Hiring, and Negligent Retention/Supervision

In their moving brief, the NFL Defendants also demonstrated that Plaintiffs have not alleged the elements necessary to state claims for negligent marketing, negligent hiring, and negligent retention/supervision.  For example, Plaintiffs' failure to allege that the NFL Defendants owed any marketing-related duties to NFL players or to explain how the NFL Defendants' marketing of football to *fans* caused injuries to NFL *players* dooms Plaintiffs' negligent marketing claim, if such a claim exists at all.  (Defs.' Br. at 24–27.)  Similarly, Plaintiffs have not stated claims for negligent hiring or negligent retention/supervision because they have not alleged that the purportedly tortious acts were undertaken by NFL employees, much less that the NFL was or should have been aware of the responsible employees' propensity for such tortious actions or that the tortious acts occurred outside the scope of the employees' employment.  (*Id.* at 20–24.)

16

Plaintiffs do not dispute *any* of the NFL Defendants' legal arguments.  Instead, Plaintiffs argue that their negligent marketing, negligent hiring, and negligent retention/supervision claims are "ordinary negligence" claims and fault the NFL Defendants for treating them as "novel freestanding claims."  (Pls.' Br. at 17, 18.)  But the SAC expressly asserts separate causes of action for these "freestanding negligence claims" (*see* SAC Count III, Count VI, Count VII), and Plaintiffs may not use their opposition to the NFL Defendants' motion to dismiss as an opportunity to amend the SAC.  *See Com. of Pa. ex rel Zimmerman* v. *PepsiCo., Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (alteration in original)) (quoting *Car Carriers, Inc.* v. *Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).  Thus, for the reasons set forth in the NFL Defendants' opening brief, Plaintiffs' negligent marketing and negligent hiring and supervision/retention claims fail and should be dismissed.[18]

In any event, even as recast, Plaintiffs' claims fail.  First, by Plaintiffs' own admission, they are duplicative of the SAC's main negligence claim.  (SAC Count IV.)  Indeed, Plaintiffs explicitly argue in their opposition brief that their negligent marketing, negligent hiring, and negligent retention/supervision claims are "based upon the same voluntary undertaking theory that support [*sic*] Plaintiffs' basic negligence claims" (Pls.' Br. at 16, 18), and

---

[18]   Plaintiffs' argument regarding their negligent hiring and retention/supervision claims is particularly unclear.  Plaintiffs state that the NFL Defendants' argument that this claim should be dismissed because Plaintiffs have not alleged that the MTBI Committee members were acting outside of the scope of their employment "confuses a claim for ordinary negligence with a freestanding claim based on independent acts of an employee that, because he was acting outsider [*sic*] the scope of his employment, are not susceptible to a vicarious liability theory" and that "[h]ere, the NFL is directly liable for its negligent decisions to hire, retain, and supervise MTBI Committee members who, instead of fairly researching and reporting on MTBIs, engaged in a campaign of disinformation and deception."  (Pls.' Br. at 17.)  To the extent that Plaintiffs are now arguing that the NFL Defendants are liable under a vicarious liability theory, Plaintiffs cannot amend the SAC to assert a *respondeat superior* claim that they have not in fact asserted and for which they have alleged no supporting facts.  To the extent that they now claim that the hiring and retention decisions themselves were negligent, this claim fails because Plaintiffs have not pleaded facts showing how these decisions, as opposed to other intervening acts, caused their injuries.  *See infra* p. 19.

that the underlying alleged conduct was "*part of the NFL's overall failure* to exercise ordinary care in the study and reporting on concussions."   (*Id.* at 16 n.6 (emphasis added).)   This alone warrants dismissal of these claims as duplicative.   *See Cisco Sys., Inc.* v. *STMicroelectronics, Inc.*, 77 F. Supp. 3d 887, 896 (N.D. Cal. 2014) ("If an alleged cause of action adds nothing to the complaint by way of fact or theory of recovery, containing only allegations of other causes of action, it is duplicative and should be dismissed."); *see also Giannone* v. *Ayne Inst.*, 290 F. Supp. 2d 553, 565–66 (E.D. Pa. 2003) (granting motion to dismiss negligent supervision and negligent child abuse claims because they were "encapsulate[d]" into general negligence claim, and thus "duplicative").

Second, Plaintiffs' "negligent marketing" allegations that the NFL Defendants marketed football as safe—which are conclusory at best—are belied by their simultaneous allegations that the NFL Defendants "market[ed] Players as gladiators" and "glorify[ied] the violence of the game."   (*Id.* ¶¶ 54, 72, 354; Pls.' Br. at 18.)   This inherent contradiction in Plaintiffs' own allegations warrants dismissal of this claim.   *See Bailey-El* v. *Fed. Bureau of Prisons*, 246 F. App'x 105, 109 (3d Cir. 2007) (affirming dismissal of *Bivens* claim because "Complaint assert[ed] contradictory allegations"); *Salzo* v. *Bedding Showcase, Inc.*, 656 N.Y.S.2d 236, 237 (N.Y. App. Div. 1997) (dismissing negligence claim due to "plaintiffs' unsupported and often contradictory assertions"); *see also Reginella Constr. Co.* v. *Travelers Cas & Sur. Co. of Am.*, 971 F. Supp. 2d 470, 475 (W.D. Pa. 2013), *aff'd*, 568 F. App'x 174 (3d Cir. 2014) ("If the Court were required to accept contradictory inferences and conclusory allegations as well-pleaded facts, then Rule 12(b)(6) review would be nothing more than the Court alchemizing legally insufficient statements into a plausible cause of action. Such a standard of review is akin to no review at all, and most importantly, is not the law.").   Moreover,

Plaintiffs cite no authority in response to, and do not attempt to rebut, the NFL Defendants' arguments that Plaintiffs have failed to allege any facts supporting any marketing-related duty and that the NFL Defendants may not be held liable for the way *Riddell* designed, manufactured, and marketed its products. (*See* Defs.' Br. at 24–26.)

Third, Plaintiffs' causation arguments are also fatally flawed.  Unable to plead any facts to support a causal connection between the NFL Defendants' marketing efforts or hiring decisions and Plaintiffs' alleged injuries, Plaintiffs fall back on their insufficient refrain that such causation is "entirely plausible" and that "any proximate cause analysis would need to be conducted player-by-player and is not susceptible to resolution on a mass basis." (Pls.' Br. at 18–19.)  But, as was the case with their failure to plead causation for their fraud-based claims, the fact that Plaintiffs cannot *prove* proximate causation on a mass basis does not absolve Plaintiffs of their obligation to *plead facts* that, if true, would establish causation.  *See City of Philadelphia* v. *Beretta U.S.A. Corp.*, 277 F.3d 415, 423 (3d Cir. 2002) (affirming dismissal of negligence claims for failure to plead causation because "a plaintiff who cannot establish some direct relation between the injury asserted and the conduct alleged fails to plead a key element for establishing proximate causation"); *see also Williams* v. *Syed*, 782 A.2d 1090, 1095 (Pa. Commw. Ct. 2001) (granting motion to dismiss where plaintiff pleaded both the existence and breach of duty and damages because plaintiff "allege[d] no facts suggesting a causal relationship between the alleged negligence and the injury").  Again, Plaintiffs' failure to plead facts is particularly telling in this case, where each Plaintiff could have set forth more specific allegations in his Short Form Complaint, but did not. (*See* Order, ¶¶ 1–2, ECF No. 8030.)

**D.**     **Plaintiffs' Conspiracy Claim Is Fatally Flawed**

The NFL Defendants' moving brief also demonstrated that Plaintiffs' civil conspiracy claim—purporting to allege an utterly implausible conspiracy that included

"international corporations such as Honda and even . . . our own federal government" (SAC ¶ 45)—fails to state a claim because Plaintiffs alleged a conspiracy to enhance profits, which fails as a matter of law, and because Plaintiffs have not pleaded the essential elements of conspiracy.  None of Plaintiffs' opposition arguments has merit.

First, in response to the NFL Defendants' showing that Plaintiffs have not stated a conspiracy claim because they alleged that the purported conspiracy's purpose was financial, and not to cause injury (Defs.' Br. at 31), Plaintiffs claim that "the SAC clearly alleges that the purpose of the conspiracy was *solely* to perpetuate" the alleged fraud.  (Pls.' Br. at 23–24 (emphasis added).)  But the SAC belies that claim.  As the NFL Defendants showed, the SAC explicitly alleges that the conspiracy's purpose was "economic" and that the conspiracy was intended to "maximize profits."  (*See* SAC ¶¶ 7, 63, 397.)  Likewise, the SAC alleges that Plaintiffs are entitled to punitive damages in part because  "Defendants' conduct was *motivated by financial gain*" and was thus "at the highest level of reprehensibility."  (*Id.* ¶ 428 (emphasis added); *see also* Pls.' Br. at 22 n.12 (reaffirming claim for punitive damages).)  Plaintiffs' conspiracy claim therefore should be dismissed.  *See Zafarana* v. *Pfizer Inc.*, 724 F. Supp. 2d 545, 559 (E.D. Pa. 2010) (dismissing conspiracy claim under Pennsylvania law because defendants' alleged purpose was to maximize profit).

Second, as the NFL Defendants showed, nowhere in the SAC do Plaintiffs allege basic facts about the alleged conspiracy, most notably when and how it was formed.  (Defs.' Br. at 29–31.)  Although Plaintiffs protest in response—without any citation to their 100-page, 432-paragraph complaint—that they have identified the "what, when, where, why, and how" of the alleged conspiracy (*see* Pls.' Br. at 23), they have not.  Instead, Plaintiffs rely solely on the 1969 formation of NOCSAE and the 1989 trademark licensing agreement with Riddell as factual

allegations purportedly supporting the conspiracy's existence.  (*See* Pls.' Br. at 22–23.)  But mere references to these two unrelated and entirely lawful activities, announced two decades apart, do not constitute factual allegations necessary to state a conspiracy claim.  To plead conspiracy, plaintiff must "provide facts with . . . particularity supporting that [the alleged conspirators] entered into the conspiracy" as well as "how [d]efendants worked with the other conspirators."  *Song Fi, Inc.* v. *Google, Inc.*, No. 14-cv-5080, 2016 WL 1298999, at *6 (N.D. Cal. Apr. 4, 2016).   Simply identifying two ordinary, unrelated business arrangements and conclusorily labelling them conspiratorial, as Plaintiffs do here, is insufficient.   *See id.* (dismissing conspiracy claim despite allegations labelling as conspiratorial ordinary business dealings among alleged co-conspirators because plaintiff failed to allege adequately the existence of a conspiracy); *see also Panayotides* v. *Rabenold*, 35 F. Supp. 2d 411, 420 (E.D. Pa. 1999) (dismissing conspiracy claim despite plaintiffs' identification of actions taken in furtherance of the alleged conspiracy because "Plaintiff does not sufficiently allege that the [defendants] took these alleged actions due to an agreement"); *In re Wyse Tech. Secs. Litig.*, 744 F. Supp. 207, 208 (N.D. Cal. 1990) (dismissing conspiracy claim based on "neutral facts and conclusory allegations").

Finally, as the NFL Defendants explained in their opening brief, civil conspiracy is not a standalone claim; it depends upon and is derivative of a separate underlying tort.  (Defs.' Br. at 32.)  Plaintiffs do not dispute this point (indeed, they concede that this is the law in New York and are silent as to the law elsewhere).  And, for the reasons stated above, Plaintiffs fail to state a claim for any tort.  Thus, because Plaintiffs' fraud- and negligence-based claims fail, Plaintiffs' conspiracy claim does as well.

**E.**     **Plaintiffs Fail to State Claims Against NFLP and NFLF**

Plaintiffs' claims against NFLP for negligent marketing, negligence, fraud, fraudulent concealment, and civil conspiracy are equally deficient.

As explained in the NFL Defendants' opening brief, Plaintiffs' claims against NFLP should be dismissed because they rely on identical, undifferentiated allegations against multiple entities (the NFL, NFLP, and Riddell).  (Defs.' Br. at 33–34.)  Plaintiffs' sole response to try to show otherwise relies on a single allegation that NFLP was the entity that entered into the 1989 licensing agreement with Riddell.  (*See* Pls.' Br. at 24–25.)  But the mere existence of this lawful agreement provides no support—let alone the requisite factual allegations to state a viable claim—for Plaintiffs' myriad claims against NFLP.  (*See* Defs.' Br. at 33–34.)  Moreover, and as also explained above, Plaintiffs' assertion that discovery will (supposedly) justify their claim is not a defense to dismissal of deficient claims.  *See supra* Section I.B.3.

For similar reasons, to the extent that the Robinsons, whose claims are consolidated in this MDL, purport to assert claims for negligent marketing, fraud, civil conspiracy, fraudulent concealment, wrongful death, survival, and loss of consortium against the National Football League Foundation ("NFLF"), a non-profit entity not named as a defendant in the SAC, such claims should be dismissed for failure to state a claim.  The Robinsons also have not alleged any duties owed by NFLF (or breach of such duties), distinct from the alleged duties owed by the NFL, and there are no substantive allegations in the SAC (and none in the Robinsons' proposed Short Form Complaint or even their now-superseded individual complaint[19]) specific to NFLF other than to allege that NFLF received and distributed grant money.  (*See, e.g.*, SAC ¶¶ 45, 56; *see also* Ex. A to Reply in Supp. Pls.' Mot. Remand, ECF No.

---

[19]     (Compl. in Civil Action, *Robinson* v. *Nat'l Football League, Inc.*, No.17-cv-2736 (E.D. Pa. May 15, 2017).)

8947.)  For the reasons described above and in the NFL Defendants' moving brief with respect to NFLP, these allegations are insufficient to state any separate claims against NFLF.

## II.
## PLAINTIFFS' CLAIMS ARE TIME-BARRED

Beyond failing to state a claim, the claims of most Plaintiffs are barred by the applicable statutes of limitations.

As the NFL Defendants' moving brief showed, personal injury claims based on negligence accrue "when plaintiff could have first maintained the action to a successful conclusion," *i.e.*, "when the injury is inflicted," *Fine* v. *Checcio*, 870 A.2d 850, 857 (Pa. 2005), and have limitations periods ranging from one to six years.  (*See* Defs.' Br. at 34–35).  Thus, the claims of any Plaintiff who ended his career prior to the 2005 season expired (at the absolute latest) no later than early 2011.  (*See id.*)  Second, Plaintiffs' own allegations demonstrate that their fraud and negligent misrepresentation claims are barred by the relevant statutes of limitations, which are at most six years, because, as Plaintiffs allege, they knew or with reasonable diligence could have known of the purported link between repetitive head impacts and brain injuries years, if not decades, before they brought suit.  (*See id.* at 38–39.)

Acknowledging that their claims are stale, Plaintiffs attempt to rely on a hodge-podge of tolling doctrines, including the discovery rule, the fraudulent concealment doctrine, and class action tolling, in an attempt to revive claims of players who, in many cases, ended their NFL careers decades ago.  None, however, saves their claims.[20]

---

[20] Even in the context of a motion to dismiss, Plaintiffs bear the burden of demonstrating that tolling applies.  *See Swietlowich* v. *Bucks County*, 610 F.2d 1157, 1162 (3d Cir. 1979) (stating, in discussing the lower court's ruling on a motion to dismiss, that "[w]henever suit is filed after the limitations period . . . the burden is on the plaintiff to establish that the statute has been tolled"); *Brandow Chrysler Jeep Co.* v. *DataScan Techs.*, 511 F. Supp. 2d. 529, 535 (E.D. Pa. 2007) (stating, again in the context of a motion to dismiss, that "[p]laintiffs asserting the applicability of the discovery rule bear the burden of showing why it should apply to the pending case," and to survive the motion plaintiffs must "allege facts tending to show that they were unable to identify their claim

A.    **The Discovery Rule Did Not Toll Plaintiffs' Claims**

It is well settled that a plaintiff invoking the discovery rule must plead facts establishing why he could not have discovered his injuries sooner.  As the NFL Defendants' moving brief showed, Plaintiffs' conclusory assertion that they "had no realistic ability to discern that the symptoms they were experiencing were linked to . . . the blows to the head they suffered during play" (SAC ¶ 26) does not come close to meeting this burden, as it lacks any "specific facts that show how and when the discovery [of that linkage] happened and why Plaintiffs were unable to make the discovery earlier 'despite reasonable diligence.'"  (*See* Defs.' Br. at 36 (quoting *Archie* v. *Pop Warner Little Scholars, Inc.*, No. 16-cv-6603, 2017 WL 3084160, at \*14 (C.D. Cal. May 12, 2017)).)[21]  In opposition, Plaintiffs nevertheless argue that the discovery rule tolled their claims until at least 2010, "when the NFL acknowledged the concussion crisis . . . and re-populated the MTBI Committee."  (Pls.' Br. at 25–27; *see also* Seau Br. at 11–13.)  That argument has no merit.

Acknowledging as much, Plaintiffs first attempt to defer resolution of the issue, arguing that "[a]pplication of the discovery rule ordinarily is a question of fact" that cannot be decided on a motion to dismiss.  (Pls.' Br. at 26.)  Even some of Plaintiffs' authority, however, holds that dismissal is appropriate where a plaintiff fails to allege adequately why the discovery

---

through the exercise of reasonable diligence"); *DeAngelis* v. *Widener Univ. Sch. of Law*, No. 97-cv-6254, 1998 WL 54333, \*2 (E.D. Pa. Jan. 13, 1998) (granting motion to dismiss because plaintiff's "tolling argument [was] without merit," stating that although "[g]enerally, a statute of limitations provides an affirmative defense," "[t]he burden shifts to the plaintiff . . . when she asserts that the statute is tolled by fraud").

[21]    Plaintiffs attempt to distinguish *Archie* by arguing that there, the discovery rule was first raised in plaintiffs' opposition to the motion to dismiss, not the complaint, and the statute of limitations issue only applied to one plaintiff's allegations.  (Pls.' Br. at 26 n.14.)  The number of plaintiffs affected is entirely irrelevant, however, and the court there expressly held that "the discovery rule's requirement of pleading specific facts that show how and when the discovery happened and why Plaintiffs were unable to make the discovery earlier 'despite reasonable diligence'" applied "*even if* [the discovery rule] were asserted in the [complaint]." *Archie*, 2017 WL 3084160, at \*14 (emphasis added).  Plaintiffs also suggest that the fact that the SAC is an "administrative pleading dealing with the claims of dozens of Plaintiffs" somehow excuses them from adequately pleading the applicability of the discovery rule (Pls.' Br. at 26 n.14), but Plaintiffs ignore the fact that here, they have also filed Short Form Complaints in which they had every opportunity to include more specific allegations.

rule applies.  *See Schmidt* v. *Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) (recognizing that otherwise time-barred claims may be dismissed on a motion to dismiss where it is clear from the face of the complaint that the discovery rule does not apply).[22]  That is precisely the case here, where neither the SAC nor the Short Form Complaints contains any specifics as to when Plaintiffs first discovered their symptoms, or what diligence, if *any*, they undertook to discover their claims sooner.  Indeed, in requesting leave to file amended Short Form Complaints (*see* Pls.' Br. at 27), Plaintiffs essentially concede these fatal pleading failures.

Moreover, assuming (as we must) that Plaintiffs' allegations are true, those same allegations also show that Plaintiffs were on notice of their injuries long before 2010.  Plaintiffs allege that since as early as the 1950s and 1960s, there was a "substantial body of medical and scientific evidence" demonstrating "neuro-cognitive injuries in the sport of football as a result of MBTI [sic]."  (First Am. Compl. ¶ 7, *Seau* v. *Nat'l Football League*, No. 37-2013-00031265 (Cal. Super. Ct. Feb. 4, 2013); *see also* SAC ¶¶ 45, 49, 91, 238–40 (alleging that publicly available studies dating back *decades* purportedly recognized a link between repetitive head impacts and brain injuries).)  Thus, according to Plaintiffs' own allegations, they had "reason to at least suspect that a type of wrongdoing ha[d] injured them," and were fully capable of discovering their injuries through the exercise of reasonable diligence.  *Fox* v. *Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 920 (Cal. 2005); *see also Cruz* v. *Bank of New York Mellon*, No. EDCV 14-1605-GW, 2015 WL 12781226, at *3 (C.D. Cal. Jan. 6, 2015) ("[W]hen the plaintiff

---

[22]  Plaintiffs also cite *Conneen* v. *Amatek, Inc.*, 238 F. Supp. 3d 652 (E.D. Pa. 2017), *Gleason* v. *Borough of Moosic*, 15 A.3d 479 (Pa. 2011), and *Fine*, 870 A.2d 850, but even those cases recognize that "[w]here . . . reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law."  *Conneen*, 238 F. Supp. 3d at 658–59 (quoting *Fine*, 870 A.2d at 858–59); *see also Gleason*, 15 A.3d at 485–86 ("Pennsylvania courts have not hesitated, where appropriate, to find as a matter of law that a party has not used reasonable diligence in ascertaining his or her injury and its cause, thus barring the party from asserting his or her claim under the discovery rule.").

has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to [its] investigation (such as public records or corporation books), the statute commences to run." (quoting *Parsons* v. *Tickner*, 31 Cal. App. 4th 1513, 1525 (Cal. Ct. App. 1995))); *Gleason*, 15 A.3d at 485 ("[T]he question in any given case is not, what did the plaintiff know of the injury done him? But, what might he have known, by the use of the means of information within his reach . . . ." (quoting *Fine*, 870 A.2d at 858)).[23]

Finally, Plaintiffs argue that although they may have suffered head impacts during their NFL careers, "it was not until recently that they began to suffer the impact of latent brain disease such as CTE (Pls.' Br. at 26), which triggered the running of the statute of limitations. But the case Plaintiffs cite as support for this argument, *Daley* v. *A.W. Chesterton, Inc.*, 37 A.3d 1175 (Pa. 2012), is not a discovery rule case. Instead, it concerns the "separate disease rule," which applies only where the second injury is "separate and distinct" from the first. *Id.* at 1189. Here, the SAC makes clear that the Plaintiffs' alleged latent injuries are not separate and distinct from Plaintiffs' alleged head impacts, but are instead merely an "outgrowth, maturation or complication of the original" injury. *Suffolk Cty. Water Auth.* v. *Dow Chem. Co.*, 991 N.Y.S.2d 613, 621 (App. Div. 2014) (quoting *DiStefano* v. *Nabisco, Inc.*, 282 N.Y.S.2d 444, 446 (App. Div. 2001)) (finding separate disease rule, or "two-injury rule," inapplicable); *see also, e.g.*, SAC ¶ 343 ("The MTBI Committee knew or should have known that repetitive blows to the head, concussions and subconcussive impacts would result in both an immediate impact as well as

---

[23]  *See also NECA-IBEW Pension Tr. Fund* v. *Lewis*, 607 F. App'x 79, 81 (2d Cir. 2015) (affirming dismissal of a claim as time-barred because publicly available information put plaintiffs on notice); *Migliori* v. *Boeing N. Am., Inc.*, 97 F. Supp. 2d 1001, 1011 (C.D. Cal. 2000) ("Where publicity and information concerning an issue are generally available, the Court may impute knowledge of that information to a plaintiff."); *cf. Abecassis* v. *Wyatt*, 902 F. Supp. 2d 881, 900 (S.D. Tex. 2012) ("In this case, there is no dispute as to what was in the published media reports. The party invoking fraudulent concealment is generally considered to have constructive knowledge of publicly available information." (collecting cases)).

latent diseases that could occur within a few days, weeks, months and many years as a result of these strikes to the brain."), ¶ 390 (discussing the alleged "risks of brain injuries caused by concussive and subconcussive impacts, . . . including the increased risk of developing one or more serious, latent, neurodegenerative diseases or conditions including, but not limited to, CTE, and symptoms therefrom including but not limited to, *inter alia*, dementia, ALS, Alzheimer's, and Parkinson's and other neurodegenerative diseases, and the debilitating symptoms from each of them"), ¶ 398 (discussing the alleged link between "concussions, subconcussive impacts and repetitive head trauma [and] emotional distress, cognitive impairment, intellectual deficits and latent brain disease and neurodegenerative brain disease").

In sum, Plaintiffs have failed to meet their burden to establish that the discovery rule tolls their claims.

**B.** **The Doctrine of Fraudulent Concealment Did Not Toll Plaintiffs' Claims**

The fraudulent concealment tolling doctrine is equally inapplicable to Plaintiffs' claims.

First, as the NFL Defendants explained in their moving brief, fraudulent concealment typically tolls the statute of limitations only where the "fraud, misrepresentations, or deception [is] affirmative and specifically directed at preventing the plaintiff from bringing suit; failure to disclose the basis for potential claims is not enough, nor are broad misstatements to the community at large." (*See* Defs.' Br. at 39–41 (quoting *Twersky* v. *Yeshiva Univ.*, 993 F.

Supp. 2d 429, 442 (S.D.N.Y. 2013), *aff'd*, 579 F. App'x 7 (2d Cir. 2014)).)[24]  Even under

Pennsylvania law, on which Plaintiffs rely (*see* Pls.' Br. at 27), fraudulent concealment requires

an "affirmative independent act of concealment upon which the plaintiff justifiably relied,"

*Royal Mile Co.* v. *UPMC*, No. 10-cv-1609, 2013 WL 5436925, at *43 (W.D. Pa. Sept. 27, 2013)

(quoting *Pulli* v. *Ustin*, 24 A.3d 421, 426 (Pa. Super. Ct. 2011)).[25]  The cases are clear that even

a defendant's "general assurances that a situation or condition . . . is normal do[es] not rise to the

level of fraudulent concealment where the plaintiff's own common sense should inform him that

he has been injured"; plaintiffs must show that they were specifically misled into foregoing suit.

*Aquilino* v. *Philadelphia Catholic Archdiocese*, 884 A.2d 1269, 1278–79 (Pa. Super. Ct. 2005)

(no fraudulent concealment even where priest told sexual abuse victim that his actions were

sanctioned by God and was later transferred to different parish, because plaintiff did not allege

that he made any inquiries to archdiocese or was misled into foregoing suit).  Tellingly, where

courts have tolled claims based on fraudulent concealment, the alleged deception has been far

more explicit than that alleged here.  *See, e.g.*, *Krapf* v. *St. Luke's Hospital*, 4 A.3d 642, 648–50

(Pa. Super. Ct. 2010) (upholding denial of summary judgment based on fraudulent concealment

tolling where hospital indicated cause of death was consistent with patients' diseases despite

knowing, after lengthy internal review, that nurse had in fact killed the patients by administering

---

[24]  *See also, e.g.*, *DeCoursey* v. *Am. Gen. Life Ins. Co.*, 822 F.3d 469, 475 (8th Cir. 2016) ("For fraudulent concealment to toll a limitations period, 'there must be something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action.'"  (quoting *Owen* v. *Gen. Motors Corp.*, 533 F.3d 913, 920 (8th Cir. 2008))); *Cangemi* v. *Advocate S. Suburban Hosp.*, 845 N.E.2d 792, 804 (Ill. App. Ct. 2006) (stating that plaintiffs must allege "affirmative acts by the defendant which were designed to prevent, and in fact did prevent, the discovery of the claim" (quoting *Foster* v. *Plaut*, 625 N.E.2d 198, 203 (Ill. App. Ct. 1993))); *Dunmore* v. *Babaoff*, 386 N.W.2d 154, 156 (Mich. Ct. App. 1985) ("Fraudulent concealment means employment of artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action.  The acts relied on must be of an affirmative character and fraudulent."  (quoting *De Haan* v. *Winter*, 241 N.W. 923, 924 (Mich. 1932))).

[25]  *See also* *McClean* v. *Djerassi*, 84 A.3d 1067, 1072 (Pa. Sup. Ct. 2013) ("[M]ere silence in the absence of a duty to speak cannot suffice to prove fraudulent concealment [for purposes of tolling the statute of limitations]."  (quoting *Lange* v. *Burd*, 800 A.2d 336, 339 (Pa. Super. Ct. 2002))).

unauthorized medications).  There are simply no allegations in the SAC that satisfy this high bar.

Rather, all Plaintiffs offer is the conclusory argument that "the NFL's decades-long campaign of

fraudulent omissions and misstatements tolled their claims, at minimum, until the NFL's 2010

change-of-heart."  (Pls.' Br. at 27.)  That is not enough.

Second, even in the extreme circumstances in which the fraudulent concealment

doctrine applies, it tolls claims "*only* for that period during which the claim is undiscovered by

plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have

discovered it."  *Bergstein* v. *Stroock & Stroock & Lavan LLP*, 187 Cal. Rptr. 3d 36, 58 (Ct. App.

2015) (emphasis added).  As described above, according to the SAC, Plaintiffs were on notice of

their injuries and the NFL Defendants' alleged fraud long before 2010 and have not pleaded any

specifics as to when they first discovered their symptoms or what diligence, if any, they

undertook to discover them sooner.  *See supra* pp. 25–26.  This failure alone bars Plaintiffs from

invoking the fraudulent concealment doctrine.  *See In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d

735, 749 (E.D. Pa. 2014) ("Generally, a plaintiff who fails to allege any due diligence is virtually

foreclosed from invoking the fraudulent concealment doctrine. . . .  Included in this pleading

requirement is that a plaintiff allege the specific date on which she learned of her injury."

(quoting *In re Processed Egg Prods. Antitrust Litig.*, MDL No. 2002, 2011 WL 5980001, at *14

(E.D. Pa. Nov. 30, 2011) and *In re Processed Egg Prods. Antitrust Litig.*, 931 F. Supp. 2d 654,

658 (E.D. Pa. 2013))).

Third, fraudulent concealment does not apply where, as here, defendant's

allegedly fraudulent act that prevented suit is the same act as that which forms the basis for the

underlying claim.  Although Plaintiffs scoff at this rule, they neither cite to any cases to support a

contrary view nor explain how their proffered rule would not render the tolling doctrine

superfluous, since under their theory every fraudulent concealment claim would *per se* be tolled. That is not the law.  (*See* Defs.' Br. at 40–41)[26]; *see also Kaufman* v. *Cohen*, 760 N.Y.S.2d 157, 167 (N.Y. App. Div. 2003) (stating that a separate act is required, "otherwise, the mere assertion of an underlying fraudulent act would always trigger equitable estoppel and render the discovery accrual rule for fraud actions superfluous").  Furthermore, while Plaintiffs attempt to distinguish the cases the NFL Defendants cite in their opening brief on the grounds that they either did not involve fraud claims or they involved acts of misconduct with a clear end date, these distinctions are irrelevant.  The NFL Defendants' cases unequivocally hold that, for tolling to apply, defendant must engage in a separate, independent act of concealment.  *See Ross* v. *Louise Wise Services, Inc.*, 868 N.E.2d 189, 198 (N.Y. 2007) ("[P]laintiff may not rely on the same act that forms the basis for the claim—the later fraudulent misrepresentation must be for the purpose of concealing the former tort[.]"  (citing *Zumpano* v. *Quinn*, 849 N.E.2d 926 (N.Y. 2006), and *Rizk* v. *Cohen*, 535 N.E.2d 282 (N.Y. 1989))); *Pulli* v. *Ustin*, 24 A.3d 421, 426 (Pa. Super. Ct. 2011) (stating that "defendant must have committed some affirmative independent act of concealment upon which the plaintiff justifiably relied"); *see also Royal Mile Co.*, 2013 WL 5436925, at *43 (requiring an "affirmative independent act of concealment"); *Kaufman*, 760 N.Y.S.2d at 167 ("[E]quitable estoppel does not apply where the misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis of plaintiff's underlying substantive cause of action.").  The relevant holdings from those decisions were not dependent in any way on the nature of the underlying torts—with the exception of *Kaufman*, in which the

---

[26]  *See also Guerrero* v. *Gates*, 442 F.3d 697, 706 (9th Cir. 2006) ("[F]raudulent concealment . . . halts the statute of limitations when there is 'active conduct by a defendant, *above and beyond the wrongdoing upon which the plaintiff's claim is filed*, to prevent the plaintiff from suing in time.'"  (emphasis added) (quoting *Santa Maria* v. *Pac. Bell*, 202 F.3d 1170, 1176–77 (9th Cir. 2000))); *Shropshear* v. *Corp. Council of the City of Chi.*, 275 F.3d 593, 595 (7th Cir. 2001) ("Fraudulent concealment . . . denotes efforts by the defendant, *above and beyond the wrongdoing upon which plaintiff's claim is founded*, to prevent, by fraud or deception, the plaintiff from suing in time."  (emphasis added)).

court specifically found the aforementioned "limitation on the doctrine of equitable estoppel *applicable in the fraud context*," 760 N.Y.S.2d at 167 (emphasis added)—nor on whether or not the alleged misconduct had a clear end date.

Fourth, Plaintiffs' argument that the application of the fraudulent concealment doctrine is a question of fact that cannot be decided on a motion to dismiss fails for the same reasons that Plaintiffs' identical argument failed in the context of the discovery rule.  As the cases cited by Plaintiffs acknowledge, dismissal is appropriate where, as here, "reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause," *Fine*, 870 A.2d at 858, or it is "evident from the face of the complaint . . . that the plaintiff [can]not prevail, as a matter of law, on the equitable tolling issue." *Cervantes* v. *City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993).[27]  Because reasonable minds would not differ that Plaintiffs should have known of their claims, *see supra* p. 29, and because Plaintiffs have failed as a matter of law to demonstrate that the NFL Defendants engaged in an independent act of concealment specifically deceiving Plaintiffs into foregoing suit, *see supra* pp. 29–31, dismissal is appropriate.

In sum, Plaintiffs have failed to meet their burden to establish that the fraudulent concealment doctrine tolls their claims.

## C.     The Filing of *Easterling* v. *National Football League* Did Not Toll Plaintiffs' Claims

Finally, Plaintiffs rely primarily on *American Pipe & Construction Co.* v. *Utah*, 414 U.S. 538 (1974), to argue that the filing of the class action complaint in *Easterling* v.

---

[27]  Even assuming for argument's sake that Plaintiffs' claims could have been tolled under the doctrine of fraudulent concealment (or the discovery rule) until 2010—a proposition that the NFL Defendants expressly contest—numerous claims might nevertheless be time-barred because they were filed too long after that date and because, as explained below, class action tolling does not apply.  The NFL Defendants reserve all rights to assert such arguments at a later date, to the extent that the Court denies their motion.

*National Football League*, No. 11-5209 (E.D. Pa.), tolled their claims.   (Pls.' Br. at 30–33.)
Once again, Plaintiffs' argument is without merit.

As this Court has explained previously, and as Plaintiffs acknowledge, "*American Pipe* itself does not apply because the doctrine deals only with federal statutes of limitations, and the Class Action Complaint included only state law claims."   *In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 419 n.90 (E.D. Pa. 2015).   Moreover, even those states that have adopted *American Pipe* often do not apply it cross-jurisdictionally.   (*See* Defs.' Br. at 37); *Williams* v. *Countrywide Fin. Corp.*, No. 2:16-cv-04166, 2017 WL 986517, at *8 (C.D. Cal. Mar. 13, 2017) ("California does not recognize *American Pipe* tolling in cases where a plaintiff pursues claims afforded by the law of one jurisdiction (*i.e.*, California state court), in the courts of another jurisdiction (*i.e.*, federal district court).").[28]

Plaintiffs ignore these cases and fail to meet their burden—as the proponents of tolling—to establish that the filing of *Easterling* tolled their claims.   Rather, Plaintiffs simply fault the NFL Defendants for not themselves engaging in a full state-by-state *American Pipe* analysis, notwithstanding Plaintiffs' apparent inability to cite *any* authority for the proposition that the NFL Defendants are required to engage in such a state-by-state analysis,[29] or to identify any state that has adopted *American Pipe*, let alone a state that recognizes such tolling cross-

---

[28]   *See also Wade* v. *Danek Med., Inc.*, 182 F.3d 281, 287 (4th Cir. 1999) (holding that Virginia does not permit equitable tolling during the pendency of a class action in another court and compiling cases from other jurisdictions holding the same); *In re Fosamax Prods. Liab. Litig.*, 694 F. Supp. 2d 253, 258 (S.D.N.Y. 2010) (noting that "few states . . . currently recognize cross-jurisdictional class action tolling"); *Maestas* v. *Sofamor Danek Grp., Inc.*, 33 S.W.3d 805, 806 (Tenn. 2000) ("We decline to adopt the doctrine of cross-jurisdictional tolling."); *Portwood* v. *Ford Motor Co.*, 701 N.E.2d 1102, 1105 (Ill. 1998) (rejecting cross-jurisdictional tolling); *Barela* v. *Showa Denko K.K.*, No. 93-cv-1469, 1996 WL 316544, at *4 (D.N.M. Feb. 28, 1996) (same).

[29]   Plaintiffs cite a lone case, *In re Linerboard Antitrust Litig.*, 223 F.R.D. 335 (E.D. Pa. 2004), in which the court conducted a limited state-by-state analysis.   That analysis, however, included only five states; here, Plaintiffs seemingly demand that the NFL Defendants provide an analysis of all fifty.   Moreover, the court in *In re Linerboard* did not speak to whether a defendant *must* engage in such an analysis on a motion to dismiss. Indeed, as noted above, *see supra* note 20, it is *plaintiff* that bears the burden of establishing that tolling of the applicable statutes of limitations applies.

jurisdictionally. (*See* Pls.' Br. at 31–32.)   Similarly, although Plaintiffs conclusorily claim, without *any* authority in support, that "most states, even ones that do not apply *American Pipe per se*, would find [their] claims tolled here under similar principles" (Pls.' Br. at 32), their position is demonstrably incorrect.  *See In re Fosamax Prods. Liab. Litig.*, 694 F. Supp. 2d at 258 (recognizing that although several states permit tolling during the pendency of a class action in their own courts, few states recognize such tolling cross-jurisdictionally); *Wade*, 182 F.3d at 287 (same).

Moreover, Plaintiffs do not address the NFL Defendants' fundamental argument: that the statute of limitations for most of Plaintiffs' claims expired long before *Easterling* ever was filed.  (*See* Defs.' Br. at 34–35, 37.)  Thus, even if the Court were to determine that class action tolling applies, dismissal of most Plaintiffs' claims still would be appropriate because neither the discovery rule nor fraudulent concealment tolling applies to save their long-stale claims.

As a last resort, Plaintiffs invoke "general principles of equity" and the Court's "inherent power to oversee its docket" (Pls.' Br. at 32–33), but neither gives the Court the power to overrule state statutes of limitations here.  Indeed, Plaintiffs do not cite a single case in which a court used its inherent power to oversee its docket to save otherwise time-barred claims.  And although Plaintiffs cite two cases discussing the application of equitable tolling, they fail to note that courts have emphasized that "[p]laintiffs have the burden of establishing the facts necessary to justify equitable tolling," *Byers* v. *Follmer Trucker Co.*, 763 F.2d 599, 600–01 (3d Cir. 1985), and that "restrictions on equitable tolling . . . must be scrupulously observed," *Sch. Dist. of Allentown* v. *Marshall*, 657 F.2d 16, 19 (3d Cir. 1981), as it is "a remedy available only sparingly and in extraordinary situations."  *Robinson* v. *Dalton*, 107 F.3d 1018, 1023 (3d Cir.

1997).  Plaintiffs come nowhere close to establishing the facts necessary to meet this burden here.

## III.
### PLAINTIFFS' REQUEST FOR LEAVE TO RE-PLEAD SHOULD BE DENIED

Throughout their brief, Plaintiffs attempt to escape the pleading deficiencies discussed above by seeking leave to amend their Short Form Complaints.  (*See* Pls.' Br. at 21 n.9, 22 n.11, 27, 28.)  Plaintiffs have already had ample opportunity to plead their claims, and they cite no law to support their request to re-plead at this late hour simply because Plaintiffs opted to file Short Form Complaints that are devoid of meaningful detail.  Thus, respectfully, the Court should deny these requests.

## IV.
### THE CLAIMS OF SETTLEMENT CLASS MEMBERS AND NON-COMPLIANT
### PLAINTIFFS SHOULD BE DISMISSED

This Court's April 12 Order stated in no uncertain terms that "each Opt Out Plaintiff *shall file a Short Form Complaint* . . . on or before fifteen (15) days after the Court's Order granting the motion for leave."  (Order ¶ 5, Apr. 12, 2017, ECF No. 7477 (emphasis added).)  That deadline was later extended to July 27, 2017.  (Order ¶ 1, July 18, 2017, ECF No. 8030.)  Yet nine Plaintiffs with pending claims against the NFL Defendants in this MDL *still* have not filed Short Form Complaints, despite having had every opportunity to do so, even *after* the NFL Defendants pointed out this deficiency.[30]  Plaintiffs ask the Court to turn a blind eye to these clear violations of the Court's orders, vaguely asserting that "many or most" of those that

---

[30]   Since the NFL Defendants filed their opening brief, Joel Steed filed a Short Form Complaint on December 15, 2017.  (Opt Out Pl. Short Form Compl. Against NFL Defs. (Joel Steed), ECF No. 9533.)  Also, Plaintiffs in *Robinson* v. *National Football League*, 17-cv-2736 (E.D. Pa.) submitted a proposed Short Form Complaint after the fact, attaching it to their reply in further support of their motion to remand on November 24, 2017.  (Ex. A to Reply in Further Support of Pls.' Mot. to Remand, *Robinson*, ECF No. 9.)  The NFL Defendants do not concede that these Short Form Complaints are timely filed.

failed to file are "likely" *pro se*.  (Pls.' Br. at 33.)  Plaintiffs, however, cite no authority whatsoever to support their request.  As such, the claims of these Plaintiffs should be dismissed.

In addition, as the NFL Defendants explained in their opening brief, to the extent that the SAC purports to assert claims against the NFL Defendants on behalf of Tracy Scroggins and Rose Stabler, such claims should be dismissed because both individuals are Settlement Class Members who chose not to opt out of the Settlement Agreement and are thus bound by its terms, including terms waiving and releasing the claims they assert here against the NFL Defendants.  (*See* Defs.' Br. at 42–43.)[31]  Plaintiffs appear to concede this point, choosing not to address it whatsoever in their opposition.  Accordingly, the Court should dismiss the claims of Mr. Scroggins and Ms. Stabler for this reason as well.

Finally, after the NFL Defendants submitted their opening brief, the Judicial Panel on Multidistrict Litigation transferred another action improperly filed by a Settlement Class Member, A.H., to this Court.  (*See* Transfer Order, *In re Nat'l Football League Concussion Injury Litig.*, MDL 2323 (J.P.M.L. Feb. 1, 2018), ECF No. 704 ("A.H. Transfer Order").)  Like Mr. Scroggins and Ms. Stabler, A.H. is a Settlement Class Member, and her claims must be dismissed.  This Court has exclusive jurisdiction to resolve this threshold issue (*see* Am. Final Order and J. ¶ 17, ECF No. 6534), which was one of the grounds cited by the Panel in transferring the case to MDL 2323.  (*See* A.H. Transfer Order at 2.)

The Settlement Class includes both Retired NFL Football Players, defined to include "living NFL Football Players who, prior to the date of the Preliminary Approval and Class Certification Order [July 7, 2014], . . . were formerly on any roster . . . of any such Member Club . . . and who are no longer under contract to a Member Club and are not seeking

---

[31]     Indeed, Plaintiff Scroggins has registered for the settlement.

active employment as players with any Member Club," and their Derivative Claimants, defined to include "children who are dependents, . . . who properly under applicable state law assert the right to sue independently or derivatively by reason of their relationship with a Retired NFL Football Player."  (Am. Final Order & J. ¶ 2, ECF No. 6534.)

A.H. is the minor daughter of the late Aaron Hernandez, who last played NFL football in 2012 and was released by the New England Patriots in 2013 after being arrested for homicide.  As of July 7, 2014, Mr. Hernandez was incarcerated and awaiting trial.[32]  As such, because he was not on any NFL roster and was unable to seek active employment as a player with any Member Club as of that date, he is a Retired NFL Football Player as defined under the Settlement Agreement.  A.H. has asserted the right to sue by reason of her familial relationship with Mr. Hernandez, and thus she is a Derivative Claimant and Settlement Class Member. (Compl. ¶ 347, *Hernandez* v. *Nat'l Football League*, No. 1782-cv-01279 (Mass. Super. Ct. Oct. 16, 2017).)  Neither A.H. nor Mr. Hernandez opted out of the Settlement Agreement, the deadline for which expired on October 14, 2014.  (*See* Order ¶ 4.g, July 7, 2014, ECF No. 6084.) A.H. therefore is bound by the Settlement Agreement and its "waive[r] and release [of] . . . all past, present and future claims" related in any way to "concussions and/or subconcussive events" or "CTE" (including for loss of consortium).  (Class Action Settlement Agreement (as amended) § 18.1, ECF No. 6481-1; Am. Final Order & J. ¶ 10, ECF No. 6534.)  Those are precisely the claims A.H. purports to assert here, in direct violation of the Settlement Agreement.  (*See, e.g.* Compl. ¶ 348, *Hernandez* v. *Nat'l Football League*, No. 1782-cv-01279 (Mass. Super. Ct. Oct. 16, 2017); *see* A.H. Transfer Order at 1 (finding that A.H.'s claims "involve[] common questions of fact with the actions previously transferred to MDL No. 2323").)  Thus, her claims should be

---

[32]   (*See* Mem. in Supp. NFL Defs.' Mot. Stay 6–7, 10–11, *Hernandez* v. *Nat'l Football League, et al.*, No. 17-cv-12244 (D. Mass. Nov. 15, 2017), ECF No. 10.)

dismissed. *See McGowan Inv'rs LP* v. *Keefe Bruyette & Woods, Inc.*, 540 F. Supp. 2d 571, 576 (E.D. Pa. 2008) (Brody, J.) ("An individual claim by a person who was a class member in a prior class action suit is barred by a settlement of the class action where the settlement includes a release applicable to his later individual action."); *see also In re Imprelis Herbicide Mktg., Sales Prac. & Prods. Liab. Litig.*, No. 11-MD-2284, 2015 WL 7575910, at *1–3 (E.D. Pa. Nov. 25, 2015) (granting motion to enforce class action settlement where plaintiff "is a class member who is properly bound by the settlement").[33]

## **CONCLUSION**

For the foregoing reasons, the NFL Defendants respectfully submit that the SAC should be dismissed with prejudice.

---

[33] A.H. has attempted to dispute that she is a Settlement Class Member.  (*See* Pl.'s Opp. to Mot. Stay, *Hernandez*, No. 17-cv-12244 (D. Mass. Nov. 20, 2017), ECF No. 20.)  Although the NFL Defendants already have shown that this argument lacks merit (*see* Mem. in Supp. NFL Defs.' Mot. Stay § I, *Hernandez*, No. 17-cv-12244, ECF No. 10 (D. Mass. Nov. 15, 2017); NFL Defs.' Reply Mem. in Supp. Mot. Stay, *Hernandez*, No. 17-cv-12244 (D. Mass. Dec. 11, 2017), ECF No. 37), if the Court so requests, the NFL Defendants are prepared to file a separate motion to dismiss A.H.'s claims as well as the claims of Mr. Scroggins and Ms. Stabler.

Dated: February 12, 2018

Respectfully submitted,

_____*/s/ Brad S. Karp*_____

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Brad S. Karp
Bruce Birenboim
Lynn B. Bayard
1285 Avenue of the Americas
New York, NY 10019-6064
Tel:   (212) 373-3000
Email:  bkarp@paulweiss.com

PEPPER HAMILTON LLP
Sean P. Fahey
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
Tel:   (215) 981-4000

*Attorneys for Defendants National Football League
and NFL Properties LLC*

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that a true copy of the foregoing document was served electronically via the Court's electronic filing system on the 12th day of February, 2018, upon all counsel of record.

Dated:  February 12, 2018                    */s/ Brad S. Karp*
                                                              Brad S. Karp