# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br>ALL OPT OUT ACTIONS PENDING AGAINST DEFENDANTS NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC | Hon. Anita B. Brody<br><br>ORAL ARGUMENT REQUESTED |

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED MASTER ADMINISTRATIVE LONG-FORM COMPLAINT ON PREEMPTION GROUNDS

# Table of Contents

**Page**

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT ............................................................................................................................... 5

I. SECTION 301 OF THE LMRA PREEMPTS  PLAINTIFFS' CLAIMS AGAINST
   THE NFL ............................................................................................................................... 5

   A. Plaintiffs' Distorted Standard for Section 301 Preemption Has No Basis in Law ............ 5

   B. Resolution of Plaintiffs' Negligence-Based Claims  Requires Interpretation of the
   Terms of the CBAs .............................................................................................................. 7

      1. The NFL's Duty, If Any, Cannot Be Assessed Absent an Interpretation of the
      CBAs ............................................................................................................................ 8

      2. The Case Law Compels Preemption of Plaintiffs' Negligence-Based Claims........... 13

   C. Resolution of Plaintiffs' Fraud-Based Claims  Requires Interpretation of the
   Terms of the CBAs ............................................................................................................ 17

   D. Retirees and Gap Players Are Not Exempt from the LMRA's Preemptive Force .......... 20

   E. The Seaus Are Not Exempt from the LMRA's Preemptive Force .................................. 22

      1. Section 301 Preempts the Seaus' Claims Regardless of Whether They Can
      File a Grievance ........................................................................................................... 22

      2. Section 301 Preempts Purportedly "Independent" Wrongful Death Claims............. 28

   F. Plaintiffs' Claims Against the NFL Arise Under the CBAs .............................................. 30

II. PLAINTIFFS' PREEMPTED CLAIMS SHOULD BE DISMISSED ................................... 32

III. ESTOPPEL IS UNWARRANTED ....................................................................................... 35

CONCLUSION .......................................................................................................................... 36

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aetna, Inc.* v. *Health Diagnostic Lab., Inc.*,
    15-cv-1868, 2015 WL 9460072 (E.D. Pa. Dec. 28, 2015) ....................................................18

*Allis-Chalmers Corp.* v. *Lueck*,
    471 U.S. 202 (1985) ..........................................................................................................6, 27, 34

*Anderson* v. *Coca Cola Bottling Co. of N.Y.*,
    772 F. Supp. 77 (D. Conn. 1991) ..................................................................................................23

*Antol* v. *Esposto*,
    100 F.3d 1111 (3d Cir. 1996) ..................................................................................................6, 31

*Asyali* v. *Sheraton Palace Hotel*,
    No. 92-cv-2924, 1993 WL 137303 (N.D. Cal. Apr. 22, 1993) ...............................................23

*Atwater* v. *Nat'l Football League Players' Ass'n*,
    626 F.3d 1170 (11th Cir. 2010) ..................................................................................... passim

*Aubrey* v. *Sanders*,
    No. 07-cv-0137, 2008 WL 4443826 (W.D. Pa. Sept. 26, 2008) ...............................................17

*Ballard* v. *Nat'l Football League Players Ass'n*,
    123 F. Supp. 3d 1161 (E.D. Mo. 2015) ........................................................................... passim

*Beidleman* v. *Stroh Brewery Co.*,
    182 F.3d 225 (3d Cir. 1999) .................................................................................15, 20, 27, 35

*Benavidez* v. *Sandia Nat'l Labs*,
    212 F. Supp. 3d 1039 (D.N.M. 2016) .......................................................................................10

*Boatwright* v. *Pac. Gas & Elec. Co.*,
    No. 16-cv-02378, 2017 WL 3579569 (N.D. Cal. July 6, 2017) ...............................................23

*Boogaard* v. *Nat'l Hockey League*,
    211 F. Supp. 3d 1107 (N.D. Ill. 2016) .....................................................................................10

*Brown* v. *Nat'l Football League*,
    219 F. Supp. 2d 372 (S.D.N.Y. 2002) .......................................................................................16

*Bush* v. *St. Louis Reg'l Convention*,
    No. 16-cv-250, 2016 WL 3125869 (E.D. Mo. Jun. 3, 2016) ...................................................16

*Butts* v. *Lane*,
  No. 95-cv-01849, 1996 WL 163000 (N.D. Cal. Mar. 11, 1996) ...........................................24

*Carpenter* v. *BMW of N. Am., Inc.*,
  No. 99-cv-214, 1999 WL 415390 (E.D. Pa. Jun. 21, 1999) ...................................................19

*Castorena* v. *Gen. Elec.*,
  238 P.3d 209 (Idaho 2010)................................................................................................29

*Caterpillar, Inc.* v. *Williams*,
  482 U.S. 386 (1987).................................................................................................. passim

*Cavallaro* v. *UMass Mem'l Healthcare, Inc.*,
  678 F.3d 1 (1st Cir. 2012)................................................................................................17

*Chipman* v. *Nelson*,
  No. 11-cv-2770, 2016 WL 4943843 (E.D. Cal. 2016) ....................................................26, 28

*Chmiel* v. *Beverly Wilshire Hotel Co.*,
  873 F.2d 1283 (9th Cir. 1989) .........................................................................................22, 23

*Comer* v. *Kaiser Found. Health Plan, Inc.*,
  45 F.3d 435 (9th Cir. 1994) ...............................................................................................29

*Connecticut* v. *YP Advert. & Publ'g LLC*,
  No. 16-cv-1424, 2017 WL 810279 (D. Conn. Mar. 1, 2017) .................................................32

*Coronel* v. *U.S. Nat. Res., Inc.*,
  No. SA-04-VA-0804, 2005 WL 831843 (W.D. Tex. 2005)...................................................13

*Dent* v. *Nat'l Football League*,
  No. C 14-02324, 2014 WL 7205048 (N.D. Cal. Dec. 17, 2014)............................................14, 26

*DeSilva* v. *N. Shore-Long Island Jewish Health Sys., Inc.*,
  No. 10-cv-1341, 2012 WL 748760 (E.D.N.Y. Mar. 7, 2012).................................................34

*Duerson* v. *Nat'l Football League*,
  No. 12-cv-2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012)...................................... passim

*Ellison* v. *Spectrastar*,
  91 F.3d 151 (9th Cir. 1996) ...............................................................................................29

*Espinoza* v. *Cargill Meat Sols. Corp.*,
  622 F.3d 432 (5th Cir. 2010) ..............................................................................................12

*Exal Corp.* v. *Roeslein & Assocs., Inc.*,
  No. 12-cv-01830, 2012 WL 4754748 (N.D. Ohio Oct. 2, 2012)............................................34

*Fagundes* v. *GTE Cal. Inc.*,
    No. 95-cv-1130, 1995 WL 295828 (N.D. Cal. May 8, 1995)...............................................24

*Franchise Tax Bd.* v. *Constr. Laborers Vacation Trust for S. Cal.*,
    463 U.S. 1 (1983).............................................................................................................25

*Gaines* v. *Krawczyk*,
    354 F. Supp. 2d 573 (W.D. Pa. 2004)..............................................................................18

*Givens* v. *Tenn. Football, Inc.*,
    684 F. Supp. 2d 985 (M.D. Tenn. 2010)......................................................................33, 34

*Gnagey Gas & Oil Co.* v. *Pa. Underground Storage Tank Indemnification Fund*,
    82 A.3d 485 (Pa. Commw. Ct. 2013) ...............................................................................18

*Gray* v. *Keystone Steel & Wire Co.*,
    No. 08-cv-1197, 2009 WL 187895 (C.D. Ill. Jan. 21, 2009).............................................34

*Green* v. *Bimbo Bakeries USA*,
    77 F. Supp. 3d 980 (N.D. Cal. 2015) ...............................................................................10

*Green* v. *Pro Football, Inc.*,
    31 F. Supp. 3d 716 (D. Md. 2014) ...................................................................................10

*Guerrero* v. *Hovensa LLC*,
    259 F. App'x 453 (3d Cir. Dec. 21, 2007)........................................................................20

*Haber* v. *Chrysler Corp.*,
    958 F. Supp. 321 (E.D. Mich. 1997).................................................................................24

*Harper* v. *Am. Red Cross Blood Servs.*,
    153 F. Supp. 2d 719 (E.D. Pa. 2001) ...............................................................................15

*Henderson* v. *Merck & Co.*,
    998 F. Supp. 532 (E.D. Pa. 1998) ......................................................................................6

*Holmes* v. *Nat'l Football League*,
    939 F. Supp. 517 (N.D. Tex. 1996) ..................................................................................33

*Horowitz* v. *Am. Intern. Grp. Inc.*,
    No. 10-cv-4408, 2012 WL 3332375 (2d Cir. Aug. 15, 2012) .............................................8

*Int'l Bhd. of Elec. Workers* v. *Hechler*,
    481 U.S. 851 (1987)..................................................................................................12, 35

*Int'l Fund Mgmt. S.A.* v. *Citigroup Inc.*,
    822 F. Supp. 2d 368 (S.D.N.Y. 2011)..............................................................................19

*Jurevicius* v. *Cleveland Browns Football Club*,
   No. 09-cv-1804, 2010 WL 8461220 (N.D. Ohio Mar. 31, 2010) ........................................... 16

*Kline* v. *Security Guards, Inc.*,
   386 F.3d 246 (3d Cir. 2004) ...................................................................................................... 6, 31

*Laborers Health & Welfare Trust Fund for N. Cal.* v. *Advanced Lightweight Concrete Co.*,
   484 U.S. 539 (1988) ...................................................................................................................... 25

*Levy* v. *Verizon Info. Servs., Inc.*,
   498 F. Supp. 2d 586 (E.D.N.Y. 2007) ........................................................................................ 33

*Lingle* v. *Norge Div. of Magic Chef, Inc.*
   486 U.S. 399 (1988) ...................................................................................................................... 34

*Manning* v. *Boston Med. Ctr. Corp.*,
   725 F.3d 34 (1st Cir. 2013) .......................................................................................................... 27

*Martin* v. *Watkins*,
   No. 10-cv-423, 2010 WL 5371341 (W.D. Va. Dec. 22, 2010) .................................................. 26

*Maxwell* v. *Nat'l Football League*,
   No. 11-CV-08394, Order (C.D. Cal. Dec. 8, 2011), ECF No. 58 ................................... passim

*Metro. Edison Co.* v. *NLRB*,
   460 U.S. 693 (1983) ...................................................................................................................... 27

*Metro. Life Ins. Co.* v. *Taylor*,
   481 U.S. 58 (1987) ........................................................................................................................ 29

*Mid-South Grizzlies* v. *Nat'l Football League*,
   550 F. Supp. 558 (E.D. Pa. 1982) .............................................................................................. 11

*Negron* v. *Oxford Airport Tech. Servs.*,
   No. 08-cv-4326, 2009 WL 50158 (E.D. Pa. Jan. 7, 2009) ......................................................... 28

*Nelson* v. *Nat'l Hockey League*,
   20 F. Supp. 3d 650 (N.D. Ill. 2014) ........................................................................................... 14

*In re Nat'l Hockey League Players Concussion Injury Litig.*,
   189 F. Supp. 3d 856 (D. Minn. 2016) ............................................................................. passim

*Ochs* v. *Woods*,
   117 N.E. 305 (N.Y. 1917) ............................................................................................................ 19

*Oddo* v. *Bimbo Bakeries USA, Inc.*,
   No. 16-cv-04267, 2017 WL 2172440 (D.N.J. May 17, 2017) .................................................. 35

*Olguin* v. *Inspiration Consol. Copper Co.*,
    740 F.2d 1468 (9th Cir. 1984) ...................................................................23

*Oliver* v. *Riddell*,
    No. 16-cv-04760, 2016 WL 7336412 (N.D. Ill. Jul. 19, 2016) ..............................10

*Pagano* v. *Bell Atlantic-New Jersey, Inc.*,
    988 F. Supp. 841 (D.N.J. 1997) ...................................................................32

*Peek* v. *Phila. Coca-Cola Bottling Co.*,
    No. 97-cv-3372, 1997 WL 399379 (E.D. Pa. Jul. 16, 1997) ......................13, 15, 35

*Pingel* v. *Gen. Elec. Co.*,
    No. 14-cv-0632, 2014 WL 7334588 (D. Conn. Dec. 19, 2014) ..............................8

*Price* v. *Georgia-Pacific Corp.*,
    99 F. Supp. 2d 1162 (N.D. Cal. 2000) ...........................................................24

*Pruell* v. *Caritas Christi*,
    645 F.3d 81 (1st Cir. 2001)...........................................................................26

*R.J. Reynolds Tobacco Co.* v. *Martin*,
    53 So. 3d 1060 (Fla. Dist. Ct. App. 2010) .......................................................19

*Ry. Labor Execs. Ass'n* v. *Pittsburgh & Lake Erie R.R. Co.*,
    858 F.2d 936 (3d Cir. 1988)..........................................................................25

*Republic Steel Corp.* v. *Maddox*,
    379 U.S. 650 (1965)....................................................................................27

*In re Resorts Int'l, Inc.*,
    181 F.3d 505 (3d Cir. 1999)..........................................................................19

*Roberts* v. *Estate of Barbagallio*,
    531 A.2d 1125 (Pa. Super. Ct. 1987) .............................................................18

*Rogers* v. *Tyson Foods, Inc.*,
    308 F.3d 785 (7th Cir. 2002) ........................................................................25

*Rosario* v. *First Mgmt. LLC*,
    247 F. Supp. 3d 560 (E.D. Pa. 2017) .......................................................7, 15, 35

*Ruiz* v. *Podansky*,
    237 P.3d 584 (Cal. 2010) .............................................................................28

*Rutledge* v. *Int'l Longshoremen's Ass'n*,
    701 F. App'x 156 (3d Cir. 1999) ...................................................................20

*Scott* v. *New United Motor Mfg. Inc.*,
   632 F. Supp. 891 (N.D. Cal. 1986) ...................................................................25

*Shane* v. *Greyhound Lines, Inc.*,
   868 F.2d 1057 (9th Cir. 1989 ..........................................................................28

*Sherwin* v. *Indianapolis Colts, Inc.*,
   752 F. Supp. 1172 (N.D.N.Y. 1990) ..........................................17, 31, 33, 35

*Sluder* v. *United Mine Workers of Am., Int'l Union*,
   892 F.2d 549 (7th Cir. 1989) ............................................................................12

*Small* v. *Lorillard Tobacco Co.*,
   252 A.D.2d 1 (N.Y. Ct. App. 1998) ................................................................19

*Smith* v. *Houston Oilers Inc.*,
   87 F.3d 717 (5th Cir. 1996) ..............................................................................33

*Smith* v. *Nat'l Football League Players' Ass'n*,
   No. 14-cv-1559, 2014 WL 6776306 (E.D. Mo. 2014) ...............................10, 20, 33

*Stellar* v. *Allied Signal, Inc.*,
   98 F. Supp. 3d 790 (E.D. Pa. 2015) .................................................................16

*Stringer* v. *Nat'l Football League*,
   474 F. Supp. 2d 894 (S.D. Ohio 2007) ................................................. passim

*In re Tobacco II Cases*,
   207 P.3d 20 (Cal. 2009) ...................................................................................19

*In re Toyota Motor Corp.*,
   No. 10-ml-02151, 2012 WL 12929769 (C.D. Cal. May 4, 2012) .........................18

*In re U.S. Healthcare, Inc.*,
   193 F.3d 151 (3d Cir. 1999)..............................................................................15

*United Steelworkers of Am.* v. *Rawson*,
   495 U.S. 362 (1990)........................................................................28, 29, 31

*Van Dongen* v. *CNinsure Inc.*,
   951 F. Supp. 2d 457 (S.D.N.Y. 2013).............................................................18

*Varacallo* v. *Mass. Mut. Life Ins. Co.*,
   752 A.2d 807 (N.J. App. Div. 2000) ...............................................................19

*Vasquez* v. *Superior Court*,
   484 P.2d 964 (Cal. 1971) .................................................................................19

*Wanland* v. *Los Gatos Lodge, Inc.*,
   230 Cal. App. 3d 1507 (Cal. App. 1991)...............................................................24

*Wright* v. *Universal Mar. Serv. Corp.*,
   525 U.S. 70 (1998).................................................................................................27

*Young* v. *Anthony's Fish Grottos, Inc.*,
   830 F.2d 993 (9th Cir. 1987) .................................................................................22

*Com. of Pa. ex rel. Zimmerman* v. *PepsiCo., Inc.*,
   836 F.2d 173 (3d Cir. 1988)...................................................................................20

## STATUTES AND OTHER AUTHORITIES

Labor Management Relations Act, Section 301 .................................................... passim

Mark A. Rothstein, et al., 2 Employment Law § 9:19 (5th ed.) ............................22, 24

Restatement (Second) of Torts § 550...........................................................................18

William B. Rubenstein, 2 Newberg on Class Actions §§ 4:58, 4:60 (5th ed.) ............19

Defendants National Football League ("NFL") and NFL Properties LLC ("NFLP," and together with the NFL, the "NFL Defendants") respectfully submit this reply memorandum in further support of their motion to dismiss the Second Amended Master Administrative Long-Form Complaint (the "Complaint" or "SAC") on preemption grounds pursuant to Section 301 of the Labor Management Relations Act (the "LMRA").[1]

## PRELIMINARY STATEMENT

As the NFL Defendants' moving brief showed, Section 301 preempts Plaintiffs' claims and requires their dismissal.  None of Plaintiffs' opposition arguments—misstating labor preemption law and mischaracterizing their claims—supports a contrary conclusion.

Plaintiffs are not ordinary plaintiffs bringing personal injury claims against unrelated parties.  Rather, they are professional athletes pursuing claims fundamentally about workplace safety in a unionized setting in which safety issues loom large and have been the subject of collective bargaining for decades.  In that context, under long-settled law, Plaintiffs' remedies lie in the uniform federal labor law and its unique procedural scheme, not in the disparate common law of various states.

As described in detail in the NFL's moving brief, since 1968, the collective bargaining agreements (the "CBAs") and the NFL Constitution and Bylaws (the "Constitution") have set forth the terms and conditions of employment of NFL players and the rules that govern

---

[1]  This reply brief addresses arguments raised in the briefs filed by Lead Counsel for Opt Out Plaintiffs (ECF No. 9522 ("Pls.' Br.")), Plaintiffs Tyler Seau, Sydney Seau, Jake Seau, Gina Seau as guardian ad litem for H. Seau, and Bette Hoffman (together with the parents of Junior Seau, the "Seaus") (ECF No. 9523 ("Seau Br."), joined by the parents of Junior Seau (ECF No. 9544)) and Plaintiff Ted Johnson (ECF No. 9521 ("Johnson Br.")) in opposition to the NFL Defendants' motion to dismiss the Complaint on preemption grounds.  As used herein, the term "Plaintiffs" includes the Seaus, although certain arguments made by the Seaus are addressed separately.  *See infra*, § I.E.  In addition, the Judicial Panel on Multidistrict Litigation recently transferred another action, *Hernandez* v. *Nat'l Football League*, No. 18-cv-464 (E.D. Pa.), to this MDL, and thus the claims in that case are superseded by the SAC and should be dismissed for the reasons set forth in the NFL Defendants' motions to dismiss, and also because Hernandez is a Settlement Class Member whose claims are barred under the Settlement Agreement.  (*See* Reply Mem. in Supp. Defs.' Mot. Dismiss SAC for Failure to State a Claim at § IV, ECF No. 9664 (filed contemporaneously).)

professional football, and include numerous provisions governing player health and safety.  The CBAs, for example, provide that the NFL's Member Clubs and their medical staffs have the responsibility for treating player injuries, including determining injury recovery times, deciding when players may return to play, and advising the players of the risks of continued performance.

Thus, to determine whether the NFL breached a purported "dut[y] to safeguard Player health" (Pls.' Br. at 20; *see also* SAC ¶¶ 16, 51, 95), an element of all of Plaintiffs' negligence-based and fraud-based claims, the Court would need to interpret the CBA provisions setting forth the player safety responsibilities of the Member Clubs and their physicians because any duty owed by the NFL could not be defined or considered without also taking into account the "physician provisions" of the CBAs.  As numerous courts have held, "determining the degree of care owed by the NFL and how it relates to the NFL's alleged failure to establish guidelines or policies to protect the mental health and safety of its players" cannot be ascertained without a consideration of the nature and scope of the duties that these provisions impose.  *Maxwell* v. *Nat'l Football League*, No. 11-CV-08394, Order at 1–2 (C.D. Cal. Dec. 8, 2011), ECF No. 58; *see Duerson* v. *Nat'l Football League*, No. 12-cv-2513, 2012 WL 1658353, at *4 (N.D. Ill. May 11, 2012); *Stringer* v. *Nat'l Football League*, 474 F. Supp. 2d 894, 910–11 (S.D. Ohio 2007).

Faced with multiple CBA provisions addressing player health and safety and these on-point precedents compelling preemption of all of their claims, Plaintiffs resort to distortion of the governing preemption law and their own Complaint—all to no avail.

First, Plaintiffs attempt to narrow the standard for labor preemption to "actual dispute[s]" over the meaning of CBA provisions.  (Pls.' Br. at 18.)  That is not the law.  Long-standing Supreme Court and Third Circuit precedent provides for preemption of claims whose

resolution substantially depends on an analysis of the terms of a CBA or that are founded on rights created by a CBA. For the reasons above, that is precisely the case here.

Second, Plaintiffs argue that their claims are predicated on duties that were "voluntarily assumed," and thus the CBA provisions cited by the NFL Defendants (and relied on by numerous courts to preempt similar claims) are irrelevant to those duties. But those provisions are, in fact, relevant for the reasons explained in the NFL Defendants' moving brief because they must be interpreted in order to define the scope of the NFL Defendants' duties with respect to player health and safety, the very duties implicated by Plaintiffs' claims here. Even claims predicated on a "voluntary undertaking" theory are preempted if their resolution requires interpretation of a CBA, as Plaintiffs' do here.

Third, Plaintiffs attempt to avoid preemption by arguing that the NFL's purported liability does not depend on the duties of the NFL's Member Clubs but instead on the doctrine of joint and several liability. But the possibility that the Clubs and NFL might all owe players duties or potentially be liable is wholly irrelevant to whether the scope of the NFL's alleged duty depends on an interpretation of the CBAs. As explained in the NFL Defendants' moving brief, resolution of those threshold questions about the existence and scope of the NFL's alleged duties substantially depends on an interpretation of the CBA provisions allocating certain relevant responsibilities to the Clubs. *See Maxwell*, No. 11-CV-08394, Order at 1–2; *Duerson*, 2012 WL 1658353, at *4.

Fourth, Plaintiffs argue that their fraud claims are not preempted because they purportedly are premised on affirmative misrepresentations instead of fraudulent concealment. But the SAC belies that assertion, making clear that Plaintiffs' claims fundamentally sound in fraudulent concealment and omission. And, as the NFL's moving brief showed, fraudulent

concealment claims in fact hinge on an alleged disclosure duty, which, as explained above, cannot be measured without first considering the CBAs' health and safety provisions, including those allocating to Club physicians the task of informing players of the risks of continuing to play football.  In any event, this Court also could not determine whether Plaintiffs justifiably relied on any information provided by the NFL—an element of both a fraudulent concealment and misrepresentation claim—without first interpreting the CBAs' health and safety provisions allocating to Club physicians the task of providing injury-related information to players, including information relating to the risks of continuing to play football.

   Finally, Plaintiffs argue that claims of retired players or those who played only when no CBA was in effect cannot be preempted.  Those arguments also fail because, in addition to ignoring the fact that the SAC alleges misconduct by the NFL Defendants during Plaintiffs' careers under CBAs (whether they played initially under a CBA or not), they ignore the fact that the CBAs place responsibility on all players themselves for seeking medical care during retirement, and thus the CBAs in effect at the time of the alleged misrepresentations must be interpreted to resolve whether any retiree Plaintiffs reasonably relied on the NFL and the scope of any retirement-related duty.

   As for the Seaus' arguments for a special exemption from settled preemption law—because, as they claim, preemption would leave them without any forum for relief, and because they assert purportedly "independent" state law claims—they have no merit.  The lack of a remedy is irrelevant to the preemption analysis—indeed, it is the practical consequence of most preemption holdings—and the Seaus are incorrect that their wrongful death claims are "independent" of the CBAs.  They still will need to establish the existence of an underlying duty

owed to Junior Seau, and breach of such a duty, thus requiring interpretation of the CBAs for the same reasons as the underlying negligence and fraud claims.

In a final attempt to fend off dismissal, Plaintiffs argue that preempted claims need not be dismissed at this stage and should await discovery, but no further "factual development" is necessary for this Court to hold (like numerous others have without discovery) that Plaintiffs' claims are preempted and therefore should be dismissed.

Accordingly, the NFL Defendants respectfully submit that their motion to dismiss the SAC on preemption grounds should be granted.

## ARGUMENT

## I.

## SECTION 301 OF THE LMRA PREEMPTS PLAINTIFFS' CLAIMS AGAINST THE NFL

As the NFL's moving brief demonstrated, Section 301 of the LMRA preempts Plaintiffs' claims for two reasons:  (1) resolution of Plaintiffs' claims substantially depends upon an analysis of numerous CBA provisions addressing player health and safety; and (2) Plaintiffs' claims are based on duties that arise out of the CBAs.  None of Plaintiffs' opposition arguments has merit.

### A.   Plaintiffs' Distorted Standard for Section 301 Preemption Has No Basis in Law

As an initial matter, Plaintiffs' supposed preemption standard—an "actual dispute" about a specific provision in a CBA—has no grounding in law.

The Supreme Court has long held that § 301 preempts all state law claims (1) whose resolution "substantially depend[] on analysis of a collective bargaining agreement" *or* (2) that are "founded directly on rights created by collective-bargaining agreements." *Caterpillar, Inc.* v. *Williams*, 482 U.S. 386, 394 (1987).  (*See* Defs.' Br. in Supp. Mot. Dismiss. at 19, ECF

No. 8403-1 ("Defs.' Br.").)  The Third Circuit is no different.  *See Kline* v. *Security Guards, Inc.*, 386 F.3d 246, 253 (3d Cir. 2004) (quoting *Caterpillar*).  LMRA preemption is rooted in "the need for uniform interpretation" of CBA terms, *Antol* v. *Esposto*, 100 F.3d 1111, 1115 (3d Cir. 1996), which is particularly critical in situations like this where employees and management operate in multiple jurisdictions subject to a single, nationwide CBA and thus the content of that agreement and the "legal consequences . . . intended to flow from" it "must be resolved by reference to uniform federal law." *Henderson* v. *Merck & Co.*, 998 F. Supp. 532, 536 (E.D. Pa. 1998) (citing *Allis-Chalmers Corp.* v. *Lueck*, 471 U.S. 202, 211 (1985)).  That uniform federal law is to be applied via the parties' agreed-upon grievance procedures—"it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance." *Allis-Chalmers*, 471 U.S. at 220.

Plaintiffs ignore this controlling precedent in arguing for a more stringent, manufactured-for-this-case standard that would limit preemption to "an *actual dispute* over the meaning of a *specific provision* of a [CBA]."  (Pls.' Br. at 8, 18; *see also* Seau Br. at 14–15.) But there is no such standard.  In supposed support, Plaintiffs invoke dicta from *Kline*, 386 F.3d at 257, but the holding in *Kline* that claims stemming from an employer's allegedly unreasonable electronic surveillance were not preempted was based on defendants' failure to point to *any* specific CBA provision concerning surveillance and thus requiring interpretation.  Here, by contrast, the CBAs expressly address the central duty at issue in this case, namely the NFL's alleged duty "to protect its players from unreasonable risk of harm" (Pls.' Br. at 4), and thus the relevant CBA provisions must be interpreted in order to resolve Plaintiffs' claims.  Moreover, *Kline* affirmed the proper standard:  that putative state law claims whose resolution requires interpretation of a CBA are preempted.  386 F.3d at 253.

In any event, even if Plaintiffs' heightened standard were accepted, their claims still would be preempted:  here, the parties, in fact, proffer conflicting interpretations of the CBAs, resulting in an "actual dispute."  Plaintiffs purport to avoid interpreting the CBAs by dismissing the relevance of the CBA provisions addressing player health and safety—including by inserting a nine-page chart analyzing those very provisions—and insisting that those provisions were not cited in the SAC and are inapplicable.  (Pls.' Br. at 9–17.)  But that argument simply reflects one interpretation of the CBAs.  As the NFL Defendants' moving brief makes clear, the NFL has a competing interpretation:  the CBAs, in comprehensively assigning roles and responsibilities for regulating player safety, create a scheme in which the duties of any single actor, including the NFL, can be defined only by assessing the overall allocation of duties.  These differing readings of the relevant provisions thus illustrate the bona fide interpretive dispute that, even under Plaintiffs' misguided standard, warrants preemption.

In sum, claims are preempted when their resolution substantially depends upon interpretation of the terms of a CBA—a standard easily satisfied here, as detailed below.

**B.     Resolution of Plaintiffs' Negligence-Based Claims
        Requires Interpretation of the Terms of the CBAs**

As numerous courts have already held, resolution of Plaintiffs' negligence-based claims substantially depends upon interpretation of numerous CBA provisions relating to player medical care and player safety.[2]  Plaintiffs' efforts to refute that showing—arguing that the CBA

---

[2]   Despite Plaintiffs' argument to the contrary, it is appropriate for the Court to consider the CBAs on this motion, as they are integral to Plaintiffs' claims and their authenticity is not subject to dispute.  (*See* Defs.' Br. at 5 n.3 (citing cases).)  *See also Rosario* v. *First Mgmt. LLC*, 247 F. Supp. 3d 560, 569–70 (E.D. Pa. 2017) ("perfectly proper" for defendant to attach CBA to Rule 12(b)(6) motion and rely on it in arguing preemption); *Ballard* v. *Nat'l Football League Players Ass'n*, 123 F. Supp. 3d 1161, 1166 (E.D. Mo. 2015) (taking judicial notice of CBAs in adjudicating motion to dismiss).  Plaintiffs also mention that the NFL was not a signatory to all relevant CBAs (Pls.' Br. at 8 n.3; Seau Br. at 10 & 17 n.10), but it is well settled that this does not defeat preemption.  *See Atwater* v. *Nat'l Football League Players' Ass'n*, 626 F.3d 1170, 1177 (11th Cir. 2010); *Stringer* v. *Nat'l Football League*, 474 F. Supp. 2d 894, 902 (S.D. Ohio 2007).

provisions are not relevant because their claims are based on "voluntarily assumed" duties, and that the NFL's duties do not depend on the duties of the Clubs—are unavailing and only underscore the centrality of the CBAs to the resolution of their claims.

### 1.   The NFL's Duty, If Any, Cannot Be Assessed Absent an Interpretation of the CBAs

As the NFL's moving brief demonstrated, the CBAs expressly address duties central to this case—namely, duties "to warn Players about the dangers of playing with concussive and sub-concussive injuries" (Pls.' Br. at 33), "to protect players . . . from unreasonable harm," and to "reduce injury risks in football." (Defs.' Br. at 21–25; SAC ¶¶ 16, 51.)  In adjudicating Plaintiffs' claims, it is impossible for the Court to assess the relationship between Plaintiffs and the NFL concerning medical care—and thus the scope of the duty, if any, owed by the NFL to Plaintiffs—without interpreting the CBAs to assess the duties of the players

---

In another attempt to distract from the merits of the preemption analysis, Plaintiffs argue that the NFL should have conducted a plaintiff-by-plaintiff choice of law analysis.  Plaintiffs are wrong.  A choice of law analysis is unnecessary for purposes of this motion because Plaintiffs do not dispute that under *any* state's common law, their claims require a legal duty and reliance, which is all that is relevant for the preemption analysis.  *See Horowitz* v. *Am. Intern. Grp. Inc.*, No. 10-cv-4408, 2012 WL 3332375, at *1 n.2 (2d Cir. Aug. 15, 2012) (declining to conduct choice of law analysis where there was "little difference" between New York and California law); *Duerson*, 2012 WL 1658353, at *3 (choice of law inquiry "largely irrelevant" to preemption because "a negligence claim in all states requires . . . the existence of a duty"); *Pingel* v. *Gen. Elec. Co.*, No. 14-cv-0632, 2014 WL 7334588, at *6 (D. Conn. Dec. 19, 2014) (where states' laws are "substantially similar . . . the district court need not resolve the typically thorny choice of law question"); *Ballard* v. *Nat'l Football League Players Ass'n*, 123 F. Supp. 3d 1161, 1168–69 (E.D. Mo. 2015) (finding negligence claims preempted under LMRA without conducting choice of law analysis, stating that duty is element of "any action for negligence").  Plaintiffs suggest that "there may be additional arguments for rejecting LMRA preemption" under certain states' laws, but other than citing a miscellaneous Michigan case, do not attempt to set forth what those "additional arguments" might be, much less demonstrate that any particular state law applies to any particular Plaintiff, or that any relevant conflict exists.  (Pls.' Br. at 23 n.8)

Plaintiffs also incorrectly argue that "the NFL makes no effort to match Players to the relevant CBAs" (*id.* at 23.), ignoring the fact that the NFL Defendants submitted a detailed Appendix (ECF No. 8403-3) listing the CBAs applicable to each Plaintiff and their dates of play, thus providing information not before the court in *In re Nat'l Hockey League Players' Concussion Injury*, 189 F. Supp. 3d 856 (D. Minn. 2016) ("*In re NHL*"), cited by Plaintiffs.  Plaintiffs argue that the 2011 CBA might apply only to certain individuals, but the NFL Defendants' motion does not rely solely on the 2011 CBA:  there are numerous provisions in other CBAs that govern the health and safety issues implicated by Plaintiffs' claims.  (*See* Defs.' Br. at 7–12.)  And in any event, each Plaintiff was free to argue individually that a given CBA provision is inapplicable to them; none have done so.

8

and Clubs.  (Defs.' Br. at 21–25.)  For example, assessing the existence or scope of the NFL's duty to warn or protect would require the Court to interpret the CBAs to determine the scope of the duties placed on the Clubs' medical staffs.  Thus, if Plaintiffs' alleged medical conditions were ones that "could be significantly aggravated by continued performance," the Clubs' medical staffs may have had a duty to warn players before returning to play, which "would be one factor tending to show that the NFL's alleged failure to take action to protect [them] from concussive brain trauma was reasonable." *Duerson*, 2012 WL 1658353, at *4.  Similarly, to assess whether the NFL acted unreasonably in concluding that concussed players could return to play (SAC ¶ 235), the Court would first need to interpret the scope of the duty imposed by the CBA provisions providing that "[a]ll determinations of recovery time for . . . injuries" are to be made "by the Club's medical staff and in accordance with the Club's medical standards."  (Ex. 13, 1980 Supp. to NFL Constitution Art. XVII[3]); *see Maxwell*, No. 11-CV-08394, Order at 1–2. Further, the NFLPA and the players also have rights and obligations under the CBAs, and those provisions also would need to be interpreted in order to resolve Plaintiffs' claims.  (*See* Defs.' Br. at 25–28.)

In opposition, Plaintiffs first argue that the numerous CBA provisions cited by the NFL are irrelevant to their claims because the NFL's alleged duties arise from a "voluntary undertaking" purportedly independent of the CBAs.  As the NFL Defendants' moving brief showed, however, those provisions *are* relevant because they must be interpreted in order to determine whether the NFL Defendants owed any of the alleged duties, and the scope of such duties, as many courts have so held.  (*See id.* at 21–30.)  Even duties undertaken voluntarily must be calibrated in light of the duties of others, and if assessing the scope of these duties requires

---

[3]    Citations in the form "Ex. __" refer to the exhibits to the September 25, 2017 Declaration of Dennis L. Curran, filed with the NFL Defendants' moving brief.  (ECF No. 8403-4.)

interpretation of a CBA, a claim is preempted.  Thus the "voluntary undertaking" of a duty is not dispositive of LMRA preemption.  *See Smith* v. *Nat'l Football League Players' Ass'n*, No. 14-cv-1559, 2014 WL 6776306, at *6, 9 (E.D. Mo. 2014) (finding preemption despite plaintiffs' argument that "undertakings by Defendants were voluntary assumptions of duty"); *Boogaard* v. *Nat'l Hockey League*, 211 F. Supp. 3d 1107, 1110–11 (N.D. Ill. 2016) (negligence claim preempted because scope of league's voluntarily assumed duty to protect player depended on CBA interpretation).   And Plaintiffs' "line of recent authority" (Pls.' Br. at 20) purportedly declining to find preemption of claims based on common law duties does not establish otherwise, because the disparate cases they cite are inapposite and contrary to decades of precedent holding tort claims against the NFL and its Member Clubs preempted.  (*See* Defs. Br. at 21, 28–31.)[4]

Next, Plaintiffs argue that the NFL's duties nevertheless do not depend on the duties of the NFL's Member Clubs and their medical staffs, resting on the unremarkable propositions that joint tortfeasors may be held jointly and severally liable for damages resulting from their alleged negligence and that the NFL's liability depends on "fact questions about any warning that occurred."  (Pls.' Br. at 35.)  While a party can be jointly liable for a breach of a

---

[4]     *Benavidez* v. *Sandia Nat'l Labs.*, 212 F. Supp. 3d 1039, 1074 (D.N.M. 2016) and *Green* v. *Bimbo Bakeries USA*, 77 F. Supp. 3d 980, 985 (N.D. Cal. 2015) merely stand for the undisputed proposition that preemption is warranted if the terms of the CBA must be interpreted.  In *Benavidez*, the court declined to find preemption of an intentional infliction of emotional distress claim (not at issue here) under one theory, noting that such claims are not uniformly accepted as susceptible to preemption, after *finding* preemption as to an alternative theory. The cited language from *Green* merely stated one alternative prong of the preemption standard, which was *not* the prong at issue; rather, the court found that no CBA interpretation was required to adjudicate claims based on an alleged oral agreement.  In *Oliver* v. *Riddell*, No. 16-cv-04760, 2016 WL 7336412, at *3 (N.D. Ill. Jul. 19, 2016), the court in fact noted that "the CBAs contain many provisions pertaining to NFL's duty to monitor player health and equipment," but its decision turned on the fact that the NFL was not a party, thus the case did not concern "whether the NFL lived up to its standard of care under the CBAs" because "the complaint centers on the duties and obligations of a third party helmet manufacturer—not the NFL and its players."  And in *Green* v. *Pro Football, Inc.*, 31 F. Supp. 3d 716, 727 (D. Md. 2014), the court's finding of no preemption as to a conspiracy claim based on an illegal bounty program hardly stands for the proposition that a conspiracy claim never can be preempted, particularly one involving conspiracy to engage in fraudulent concealment (thus requiring proof of a disclosure duty and justifiable reliance) such as the conspiracy alleged here.  As discussed *infra*, *In re NHL*, 189 F. Supp. 3d at 868, 880, did not find no preemption, it merely deferred the question after deciding not to take judicial notice of the CBAs (and thus precluding any determination of whether resolution of the claims would be "substantially dependent" on those CBAs).

duty, depending on the facts, that is only true *if it has that duty in the first place*, and also depends on the scope of that duty, and whether it breached that duty.

Here, there is no support for Plaintiffs' argument—in the CBAs or fact—that the NFL owes a duty completely independent from its Clubs.  Together, the NFL (which is bound by the CBAs) and its 32 Member Clubs (to whom relevant duties are ascribed by the CBAs) engage in a joint enterprise to promote professional football in the United States, including the scheduling and production of football games, the employment of professional football players, and the establishment of rules for the game.  *See Mid-South Grizzlies* v. *Nat'l Football League*, 550 F. Supp. 558, 562 (E.D. Pa. 1982); (*see, e.g.*, Ex. 4, 1977 CBA Art. I § 2; Ex. 5, 1982 CBA Art. I § 2); *see also Atwater* v. *Nat'l Football League Players Ass'n*, 626 F.3d 1170, 1177–78 (11th Cir. 2010) ("[T]he NFL is bound by the CBA's terms.").  Plaintiffs' effort to separate the NFL from its Member Clubs is not only artificial, but also unavailing because the NFL's own duties to players cannot be assessed independently of the Clubs' duties to players.  Unlike some employers who owe a general duty to workers *and the public* to keep the premises safe, issues related to player health and return-to-play involve duties unique to players and addressed by the CBAs.  Indeed, the duties of the parties obviously would be very different were collective bargaining and the resulting agreements not involved.  But they are involved and central to the resolution of Plaintiffs' claims, as described above.

That is why numerous courts—in this and other contexts—have properly and repeatedly concluded that the NFL's conduct concerning player health and safety "cannot be considered in a vacuum," but "must be considered in light of pre-existing contractual duties imposed by the CBA on the individual NFL clubs concerning the general health and safety of the NFL players."  *Stringer*, 474 F. Supp. 2d at 910; *see also Maxwell*, No. 11-CV-08394, Order at

1–2; *Duerson*, 2012 WL 1658353, at *4.   (*See* Defs.' Br. at 21, 28–31 (collecting cases).) Importantly, Plaintiffs concede (Pls.' Br. at 32–33), as they must, that the CBAs address the Clubs' duties:  this is precisely the arrangement the players bargained for, assigning the NFL and the Clubs (and, in some instances, the players and their Union) their respective responsibilities. Plaintiffs, after agreeing to this structure, cannot evade preemption simply by suing the NFL, rather than the Clubs, because any consideration of the NFL's duty to players requires an evaluation of the Clubs' duties *under the CBAs.*

In sum, where, as here, a duty has been allocated as part of the collective bargaining process, courts routinely hold claims preempted where determining the scope of the duty owed to plaintiffs substantially depends upon an interpretation of CBA terms.  *See Atwater*, 626 F.3d at 1182 (to evaluate a player's negligence claims court first "ha[d] to consult the CBA to determine the scope of the legal relationship between Plaintiffs and the NFL and their expectations based upon that relationship"); *see also Int'l Bhd. of Elec. Workers* v. *Hechler*, 481 U.S. 851, 862 (1987) ("In order to determine the Union's tort liability . . . a court would have to ascertain, first, whether the collective-bargaining agreement in fact placed an implied duty of care on the Union . . . and, second, the nature and scope of that duty[.]"); *Espinoza* v. *Cargill Meat Sols. Corp.*, 622 F.3d 432, 444 (5th Cir. 2010) (holding that plaintiff's negligence claim arising out of a workplace injury was preempted because "to define the scope of Cargill's legal duty for purposes of a negligence claim" required interpretation of the CBA's worker safety provisions); *Sluder* v. *United Mine Workers of Am., Int'l Union*, 892 F.2d 549, 554 (7th Cir. 1989) ("In order to define the scope of the duty assumed by the union, it would be necessary to establish the precise responsibility assumed by the union . . . .   [I]t would not be possible to define . . . the scope of the union's duty without reference to the collective bargaining agreement

12

that governs the relationship between the company and the union."); *Peek* v. *Phila. Coca-Cola Bottling Co.*, No. 97-cv-3372, 1997 WL 399379, at *5 (E.D. Pa. Jul. 16, 1997) ("[C]laims . . . [are] preempted where reference to a collective bargaining agreement is necessary to determine whether a duty of care exists or to define the nature and scope of that duty . . . .").  That is no less true when the party to whom the duty is assigned by the CBA is not the defendant, because the provision still must be interpreted to assess the degree of care owed by the defendant.  *See, e.g.*, *Coronel* v. *U.S. Nat. Res., Inc.*, No. SA-04-VA-0804, 2005 WL 831843, at *2 (W.D. Tex. 2005) (holding negligence claim against employer preempted where CBA provisions establishing "that responsibility for workplace safety is shared among employees, the Union, and the Company" must be interpreted to assess the scope of each party's duty in order "to ascertain the nature and scope of the duty of care upon" the employer).

Simply put, the Court could not possibly determine whether the NFL acted negligently without interpreting the numerous CBA provisions that specifically describe the duties and obligations of Club physicians and trainers.  (*See* Defs.' Br. at 22–31).  *See also Maxwell*, No. 11-CV-08394, Order at 1–2; *Duerson*, 2012 WL 1658353, at *4.[5]

## 2.      The Case Law Compels Preemption of Plaintiffs' Negligence-Based Claims

Plaintiffs also fail in their effort to scale the wall of precedent finding virtually identical claims against the NFL preempted.  (*See* Defs.' Br. at 21, 28–31 (collecting cases).)

First, although Plaintiffs assert that neither the *Duerson* nor *Maxwell* complaints contained "historical facts" that the NFL assumed a duty stemming from common law (Pls.' Br. at 37–38; Seau Br. at 17), that is wrong as a matter of fact and irrelevant as a matter of law.  In

---

[5]    Plaintiffs misinterpret the NFL's reference to CBA provisions regarding committees.  (Defs.' Br. at 27–28.)  The NFL is not arguing that these provisions must be interpreted simply because the MTBI Committee is also a committee.  Rather, the point is that these CBA provisions allocate responsibility concerning player injury and safety issues, including potential duties regarding researching player injuries and protective equipment, and thus must be interpreted in determining the scope of the NFL's duties here.

fact, the *Maxwell* complaint is rife with allegations of the NFL's purported historical conduct and alleged common law duties.  (*See, e.g.*, *Maxwell*, Compl. ¶¶ 118, 527, 529, No. 11-cv-08394 (C.D. Cal. Jul. 19, 2011), ECF No. 1.)

Second, Plaintiffs also mistakenly contend that the *Duerson* and *Maxwell* plaintiffs relied on legal theories that "implicate[d] the legal duties of Clubs and doctors."  (Pls.' Br. at 38.)  In fact, both sets of plaintiffs there argued, as Plaintiffs do here, that the NFL's duty was independent of any duties in the CBAs.  *See Duerson*, 2012 WL 1658353, at *4 (noting plaintiff's argument that NFL's duty did not depend on CBAs); *Maxwell* Compl. ¶ 541 (alleging NFL owed "an independent tort duty to invoke rules that protect the health and safety of its players").[6]  Third, Plaintiffs' argument that the allegations in *Maxwell* and *Duerson* differ significantly from those in the SAC is belied by their own opposition papers.[7]  Indeed, the JPML transferred *Duerson* to this MDL because "[l]ike the MDL No. 2323 actions, the *Duerson* action involves allegations that defendants are liable for, *inter alia*, failing to warn and protect players from the long-term risk of concussions."  *In re:  Nat'l Football League Players' Concussion Injury Litig.*, MDL No. 2323,  Transfer Order (*Duerson*), at 1 (J.P.M.L Aug. 3, 2012), ECF No. 169; *see also In re:  Nat'l Football League Players' Concussion Injury Litig.*, MDL No. 2323, Transfer Order (*Maxwell, et al.*), at 1 (J.P.M.L. Jan. 31, 2012), ECF No. 61 (*Maxwell* and other

---

[6]   Although the Seaus contend that *Duerson*'s finding that the NFL's duties were "tempered" by the Clubs' duties has been rejected by "other courts" (Seau Br. at 18 n.12), they cite only to *In re NHL*, 189 F. Supp. 3d at 879. This is misleading at best; *In re NHL* is the *only* case to have disagreed with that holding, thus rendering it an outlier in the face of considerable precedent finding preemption in cases like *Duerson* and this one.  Indeed, at least two other courts have rightly cited *Duerson* favorably.  *See Dent* v. *Nat'l Football League*, No. C 14-02324, 2014 WL 7205048, at *9 (N.D. Cal. Dec. 17, 2014); *Nelson* v. *Nat'l Hockey League*, 20 F. Supp. 3d 650, 657 (N.D. Ill. 2014).

[7]   *Compare* Pls.' Br. at 4 (citing the NFL's failure "to warn Players about the dangers of concussive and sub-concussive impacts") *with Maxwell* Compl. ¶ 114 ("This action arises from the [NFL's] failure to warn and protect NFL players . . . against the long-term brain injury risks associated with football-related concussions"); *Duerson*, No. 12-cv-2513,  Compl. ¶ 23(b) (N.D. Ill. Apr. 5, 2012), ECF No. 1-1 (citing the NFL's alleged "[f]ail[ure] to warn Dave Duerson and other NFL Players of the potential long-term impact of suffering numerous concussive head traumas").

actions "share factual issues arising from [similar] allegations against the NFL").

Fourth, Plaintiffs attempt to distinguish *Duerson* and *Maxwell* because both courts were deciding remand motions, rather than motions to dismiss.  (Pls.' Br. at 37; Seau Br. at 18 n.11.)  That argument widely misses the mark.  The preemption test in *Duerson* and *Maxwell*— whether plaintiffs' claims were substantially dependent on interpretation of the CBAs—is precisely the standard that applies to dismissal on preemption grounds and is easily satisfied here.  *See Rosario* v. *First Mgmt. LLC*, 247 F. Supp. 3d 560, 569 (E.D. Pa. 2017); *Harper* v. *Am. Red Cross Blood Servs.*, 153 F. Supp. 2d 719, 721–22 (E.D. Pa. 2001).  Thus, where, as here, Plaintiffs' claims are completely preempted, they must be dismissed.  *See, e.g.*, *Beidleman* v. *Stroh Brewery Co.*, 182 F.3d 225, 237 (3d Cir. 1999) (affirming denial of motion to remand and order granting motion to dismiss because claims were completely preempted); *Peek*, 1997 WL 399379, at *6 (denying motion to remand and dismissing claims as completely preempted).[8]

Fifth, although Plaintiffs attempt to distinguish *Stringer* by asserting that the heat stroke at issue there was different from the injuries alleged here, that is not the proper inquiry. What makes *Stringer* "persuasive" authority, *Maxwell*, Order at 1, is the fact that the duties alleged there were materially similar to those alleged here:  in *Stringer*, the court held preempted allegations that the NFL had breached its alleged duty "to use ordinary care in overseeing, controlling, and regulating practices, policies, procedures, equipment, [and] working conditions . . . to minimize the risk of heat-related illness" by "failing to establish regulations" ensuring "adequate care and monitoring of players suffering from heat-related illness" and "regulation of . . . return to practice."  *Stringer*, 474 F. Supp. 2d at 899, 903–04.  Here, Plaintiffs contend that

---

[8]   Plaintiffs' suggestion that the NFL Defendants have conflated complete and ordinary preemption (Pls.' Br. at 20 n.6) is unfounded.  If anything, the standard for complete preemption, which confers subject matter jurisdiction, could be viewed as higher than that for ordinary preemption, which constitutes a federal defense to a state law claim.  *See In re U.S. Healthcare, Inc.*, 193 F.3d 151, 160 (3d Cir. 1999).  Plaintiffs' claims are completely preempted, and thus should be dismissed.

the NFL breached its alleged duty to warn players of the "risks and dangers of repetitive head injuries, concussions, and subconcussive blows" by, among other things, "failing to impose safety regulations to prevent or mitigate long-term brain damage" and "conclud[ing] that it was appropriate for players who suffered a concussion to return to play in the same game." (SAC ¶¶ 25, 53, 235.) Such claims are directly analogous to those in *Stringer* and preempted for the same reasons. Plaintiffs' claims are also directly analogous to the common law claims found preempted in *Williams* premised on allegations that the NFL "voluntarily undertook" to warn plaintiffs about dietary supplements. *Williams*, 582 F.3d at 881. The court held those claims preempted because "whether the NFL . . . owed the Players a duty to provide . . . a warning cannot be determined without examining the parties' legal relationship and expectations as established by the CBA and the [Drug] Policy." *Id.* So too, here.[9]

---

[9]    The cases on which Plaintiffs rely provide them no aid, and none support the proposition that resolution of their claims here will not require interpretation of the CBAs. *Jurevicius* v. *Cleveland Browns Football Co.* held that plaintiff's claims were not preempted because the relevant CBA established a duty to disclose player medical conditions, *not* the safety conditions of team facilities at issue in the case. No. 09-cv-1803, 2010 WL 8461220, at *12 (N.D. Ohio Mar. 31, 2010). Here, Plaintiffs' claims are squarely based on an alleged duty to disclose medical conditions. (*See* SAC ¶ 25 (the NFL Defendants owed a "duty to disclose to Plaintiffs the true character, quality, and nature of risks and dangers of repetitive head injuries")); *see also Duerson*, 2012 WL 1658353, at *5 (distinguishing *Jurevicius* because "[i]n this case, by contrast, Duerson's claims relate to a player's physical condition, and thus are affected by the CBA provisions"). Indeed, *Jurevicius* held that claims for constructive fraud and breach of fiduciary duty required interpretation of the CBA and were preempted. *Jurevicius*, 2010 WL 8461220, at *15. Similarly, in *Hendy* v. *Losse*, an unreported case of no precedential value under Ninth Circuit law, the court dismissed the argument that the CBA provisions might lower the Club's duty to exercise due care by stating that "the argument is in the nature of a defense," which does not lead to preemption under the well-pleaded complaint rule. No. 89-55430, 1991 WL 17230, at *2 (9th Cir. Feb. 12, 1991). As the *Duerson* court noted, the *Hendy* court's conclusion is "unfounded" because "[e]stablishing the standard of care that a defendant must meet to avoid liability is an element of a negligence claim that the plaintiff must establish, not a defense." *Duerson*, 2012 WL 1658353, at *5. Nor are *Bush* v. *St. Louis Reg'l Convention*, No. 16-cv-250, 2016 WL 3125869 (E.D. Mo. Jun. 3, 2016), a slip-and-fall case concerning a Club's invitee liability, and *Brown* v. *Nat'l Football League*, 219 F. Supp. 2d 372 (S.D.N.Y. 2002), a case involving a penalty flag thrown by a referee, relevant here. The Seaus cite *Stellar* v. *Allied Signal, Inc.*, which involved an employer's common law duty not at issue here, but that case conceded that a court may find LMRA preemption if a CBA modifies a purportedly independent duty in some way. 98 F. Supp. 3d 790, 801–02 (E.D. Pa. 2015) (noting that defendant had not identified a CBA provision that so modified the duty at issue). The court also acknowledged that preemption can apply when plaintiff has waived common law claims against his employer or agreed to submit such claims to arbitration, as is the case here. *See id.*

**C.      Resolution of Plaintiffs' Fraud-Based Claims
          Requires Interpretation of the Terms of the CBAs**

    Like their preempted negligence claims, Plaintiffs' fraud claims—alleging that the
NFL "fraudulently concealed" and "failed to provide honest information on the risk of latent
brain injury" (Pls.' Br. at 4)—hinge on the nature and extent of an alleged disclosure duty owed
to Plaintiffs by the NFL.  *Aubrey* v. *Sanders*, No. 07-cv-0137, 2008 WL 4443826 (W.D. Pa.
Sept. 26, 2008) ("[W]hile concealment may constitute fraud, mere silence is not sufficient in the
absence of a duty to speak." (citation omitted)).  Here, as the NFL's moving brief details, the
NFL's alleged duty to speak cannot be assessed without first considering the obligations
regarding player health and safety imposed by the CBAs.  (*See, e.g.*, Ex. 6, 1993 CBA Art. XLIV
§ 3; Defs.' Br. at 32); *see also Sherwin* v. *Indianapolis Colts, Inc.*, 752 F. Supp. 1172, 1178
(N.D.N.Y. 1990) (claims that the Club fraudulently concealed the extent of former player's
injury preempted because their resolution required interpretation of CBA provisions).  Nor can
the Court determine whether Plaintiffs justifiably relied on information provided by the NFL
without first interpreting the CBAs' health and safety provisions, such as provisions allowing
players to obtain second medical opinions at Club expense.  *See, e.g.*, *Cavallaro* v. *UMass
Mem'l Healthcare, Inc.*, 678 F.3d 1, 6 (1st Cir. 2012) (fraud and negligent misrepresentation
claims preempted because CBA provisions were relevant to determining reasonableness of
plaintiffs' reliance); *Williams*, 582 F.3d at 881 (fraud claims "preempted because the Players
cannot demonstrate the requisite reasonable reliance to prevail on their claims without resorting
to the CBA"); *see also Atwater*, 626 F.3d at 1183; (Defs.' Br. at 33–34).  Thus, Plaintiffs' fraud
claims are preempted.

    In opposition, Plaintiffs first argue that misrepresentation claims do not require a
showing of a duty to speak.  (Pls.' Br. at 24 n.11.)  But Plaintiffs' alleged fraud claims are

fundamentally founded on omissions and concealment rather than specific misrepresentations, and thus require a duty to disclose.  (*See, e.g.*, SAC Count X ("Fraudulent Concealment"); ¶¶ 102 (alleging a failure to warn and concealment of risks); 153 (alleging a "long-term plan to conceal material information"), 334 (alleging NFL "willfully and intentionally concealed" risks from Plaintiffs); 366 (alleging omission of material information).)[10]  To the extent that Plaintiffs allege that the NFL Defendants should have said more, or were insufficiently clear, in any disclosures regarding the risks of head impacts, that would require the Court to interpret the existing disclosure duties in the CBAs, and thus Plaintiffs' claims are preempted.  (Defs.' Br. at 32–36.)

Plaintiffs next argue that reliance somehow can be inferred and thus the CBAs are not relevant.  In support, Plaintiffs provide no authority whatsoever holding that a court should presume or infer reliance in adjudicating common law fraud-based claims like Plaintiffs' here. Rather, they cite inapposite cases involving completely different claims or procedural postures: *statutory* claims such as federal securities claims (where reliance is presumed), rebuttable inferences of reliance at the class certification stage, or review of jury awards,[11] which implicate

---

[10]   To the extent that Plaintiffs are relying on an affirmative misrepresentation theory, their fraud claims should be dismissed as insufficiently pleaded.  (*See* Defs.' Br. in Support of Mot. to Dismiss for Failure to State a Claim at 13–17.)  Plaintiffs purport to rely on a purported "distinction between active concealment and mere silence" in Pennsylvania law, but to the extent they are arguing that "concealment" does not require proof of a duty, such a theory—to the extent that it even is recognized under Pennsylvania law—is inapplicable here, where Plaintiffs' claims do not arise in a transactional context, and fail to allege in any non-conclusory fashion that the NFL intentionally prevented Plaintiffs from acquiring information or engaged in "deceptive acts or contrivances" to prevent an investigation.  *See Gnagey Gas & Oil Co.* v. *Pa. Underground Storage Tank Indemnification Fund*, 82 A.3d 485, 501 (Pa. Commw. Ct. 2013); *see also Aetna, Inc.* v. *Health Diagnostic Lab., Inc.*, 15-cv-1868, 2015 WL 9460072, at *4–5 (E.D. Pa. Dec. 28, 2015) (scheme to provide plaintiff with false documents to cause overpayment); *Roberts* v. *Estate of Barbagallo*, 531 A.2d 1125 (Pa. Super. Ct. 1987) (concealment of formaldehyde insulation in real estate transaction despite federal ban, local guideline, and realty board's recommendation of disclosure); *see also* Restatement (Second) of Torts § 550, cmt. a–b (1977); *Gaines* v. *Krawczyk*, 354 F. Supp. 2d 573, 587 (W.D. Pa. 2004) (concealment "is limited to contracts and other forms of contractual relationships. . .[a]nd even in such settings a duty to speak does not normally arise between the parties in the absence of a confidential or fiduciary relationship").  In any event, even if Plaintiffs did allege that the NFL intentionally prevented them from acquiring information, the court still would need to interpret the specific CBA provisions addressing the players' rights to such information.  (*See* Defs.' Br. at 33–35.)

[11]   *See Van Dongen* v. *CNinsure Inc.*, 951 F. Supp. 2d 457 (S.D.N.Y. 2013) (involving federal securities claims); *In re Toyota Motor Corp.*, No. 10-ml-02151, 2012 WL 12929769, at *20, 21 (C.D. Cal. May 4, 2012)

unique policy considerations that have no bearing on proof of reliance in actions asserting common law fraud claims such as Plaintiffs'. *See Int'l Fund Mgmt. S.A.* v. *Citigroup Inc.*, 822 F. Supp. 2d 368, 387 (S.D.N.Y. 2011) (distinguishing presumption of reliance in securities context from common law fraud, where no such presumption applies); *Carpenter* v. *BMW of N. Am., Inc.*, No. 99-cv-214, 1999 WL 415390, at *3 (E.D. Pa. Jun. 21, 1999) (same); William B. Rubenstein, 2 Newberg on Class Actions §§ 4:58, 4:60 (5th ed.) (discussing unique policy behind presumption of reliance in certifying class actions, noting "courts have been reluctant to adopt such a presumption outside the securities realm").   Notably, two of Plaintiffs' cases actually *dismissed* fraud claims for failure to establish reliance.[12]   Plaintiffs' argument that reliance "may be presumed" in cases involving omissions also is belied by the holding of *Williams* that reasonable reliance on the NFL's alleged failure to warn about a dietary supplement required interpretation of the CBA.[13]   582 F.3d at 882.   Simply put, Plaintiffs are not excused from the requirement of proving that they justifiably relied on the NFL's alleged misstatements or omissions, and as explained above and in the NFL's opening brief, such a

---

(addressing reliance under New York's false advertising statute and separately holding that common law fraudulent concealment claims *did* require showing of individual reliance); *In re Tobacco II Cases*, 207 P.3d 20 (Cal. 2009) (addressing plaintiffs' standing to bring false advertising claims under California's Unfair Competition Law); *Varacallo* v. *Mass. Mut. Life Ins. Co.*, 752 A.2d 807, 817 (N.J. App. Div. 2000) (class certification); *Vasquez* v. *Superior Court*, 484 P.2d 964, 973 (Cal. 1971) (same); *R.J. Reynolds Tobacco Co.* v. *Martin*, 53 So. 3d 1060, 1069 (Fla. Dist. Ct. App. 2010) (post-trial, merely holding that there was "abundant evidence" in record from which jury could infer plaintiff's "reliance on pervasive misleading advertising campaigns"); *Ochs* v. *Woods*, 117 N.E. 305 (N.Y. 1917) (century-old case merely holding that jury had sufficient evidence to find that plaintiff was induced into transaction).

[12]   *See Small* v. *Lorillard Tobacco Co.*, 252 A.D.2d 1, 8–9 (N.Y. Ct. App. 1998) ("[r]eliance on defendants' misrepresentations will *not* be presumed where plaintiffs had a reasonable opportunity to discover the facts about the transaction beforehand by using ordinary intelligence," and reliance was not established in light of extensive publicly available information (emphasis added)); *see also In re Resorts Int'l, Inc.*, 181 F.3d 505, 511 (3d Cir. 1999) (finding "there simply was no reliance, reasonable or otherwise").

[13]   Plaintiffs' attempt to distinguish *Williams* (Pls.' Br. at 28) is futile, as the cited portion of the opinion concerned a statutory claim distinct from Plaintiffs' here, whereas the court later found that plaintiffs' common law claims, including for fraud and negligent misrepresentation, *did* require interpretation of the CBA, rejecting the argument that such claims "involve[d] purely factual questions about the NFL's conduct."   582 F. 3d at 881.

finding would require interpretation of the CBAs.  (Defs.' Br. at 34–36.)[14]

Accordingly, Plaintiffs' fraud-based claims are preempted.

**D.**      **Retirees and Gap Players Are Not Exempt from the LMRA's Preemptive Force**

Plaintiffs' argument that their claims are not preempted because they are retirees or played during a period not governed by any CBA (*see* Pls.' Br. at 20 n.7, 29, 34) also fails.

First, regarding Plaintiffs' retiree argument, because each of Plaintiffs' claims is premised on alleged conduct that occurred while they played in the NFL, resolution of those claims would require the Court to interpret provisions of the CBAs that were operative during Plaintiffs' careers—in other words, when they were active.  Thus, their retiree status, now, is irrelevant.  *See Smith*, 2014 WL 6776306, at *7.  Plaintiffs nevertheless argue that the NFL "failed to provide honest information on the risk of latent brain injury to allow the retired players to obtain proper diagnostic information that would facilitate mitigation and treatment of the injuries."  (Pls.' Br. at 4.)  But there are virtually no allegations in the SAC specifically addressing the post-retirement period, and Plaintiffs cannot use their opposition brief to amend their complaint.  *See Com. of Pa. ex rel. Zimmerman* v. *PepsiCo., Inc.*, 836 F.2d 173, 181 (3d

---

[14]    Plaintiffs attempt to distinguish *Atwater* (Pls.' Br. at 25 n.12) because that court found preemption of investment-related claims based on the need to interpret a CBA provision stating that players were solely responsible for their finances.  626 F.3d at 1181.  But just as the disclaimer required interpretation in *Atwater* because it assigned responsibility for the complained-of conduct to the players themselves, so, too, must the CBAs health and safety provisions be interpreted here because they also assign responsibility for the complained-of conduct.  The holding of *Atwater* thus contradicts Plaintiffs' position.  Plaintiffs also disingenuously argue that *Smith* and *Ballard* are inapposite because they involved duty of fair representation claims against a union.  (Pls.' Br. at 29.)  It is true that those cases considered preemption on that basis, but they did so *separately*, *later* finding plaintiffs' negligent misrepresentation claims preempted by the LMRA because of the need to interpret the CBA to determine the reliance element, as is the case here.  *Smith*, 2014 WL 6776306, at *8; *Ballard*, 123 F. Supp. 3d at 1169–70.  The Seaus' misleading assertion that preemption "has no application to the instant fraud claims," (Seau Br. at 18 n.11 citing *Rutledge* v. *Int'l Longshoremen's Ass'n*, 701 F. App'x 156, 164 (3d Cir. 2017), blatantly overstates the holding of that case, which certainly does not stand for the proposition that fraud claims can never be preempted in the Third Circuit.  *See Beidleman* v. *Stroh Brewery Co.*, 182 F.3d 225, 231–34 (3d Cir. 1999) (fraud claim preempted because its resolution required interpretation of the CBA); *Guerrero* v. *Hovensa LLC*, 259 F. App'x 453, 458 (3d Cir. Dec. 21, 2007) (same).  *Rutledge* in fact recognized that fraud claims "may require interpretation of the CBA," and moreover did not address justifiable reliance.

Cir. 1988).  And even if the SAC contained such an allegation, it is belied by the remainder of

the SAC, which makes clear that Plaintiffs' claims hinge on the period when they were active

players, *i.e.*, their football careers.  *See Duerson*, 2012 WL 1658353, at *3 (rejecting plaintiff's

effort to artificially limit the time period to which his complaint referred).  In any event, the

scope of any post-retirement disclosure duty—and Plaintiffs' purported reliance—cannot be

assessed absent an interpretation of the CBA provisions addressing the players' own duties and

post-retirement benefits, which cover medical care and compensation for such medical care for

eligible retirees, including, for example, in the case of "dementia" (*see, e.g.*, Ex. 10, 2006 CBA

Art. XLVIII-D § 1), and "disability."  (*See, e.g.*, Ex. 3, 1970 CBA Art. VI § 2(c)(2); Ex. 4, 1977

CBA Art. XXXI § 8(d); Ex. 5, 1982 CBA Art. XXXIV § 8(b); Ex. 6, 1993 CBA Art. XLVII §

4(C), Art. LI.)  Plaintiffs dismiss these CBA provisions as "remedial," but that itself is an

interpretation of them, confirming that Plaintiffs' allegations are preempted.  *See, e.g.*, *Atwater*,

636 F.3d at 1185.  If these provisions are interpreted to allocate to the NFL the duty to pay for

qualified care—and to allocate to retirees the responsibility for seeking such care—then the duty

of care that Plaintiffs allege here would be reduced.  Similarly, the Court cannot determine

whether Plaintiffs reasonably relied on information provided by the NFL during retirement

without interpreting these provisions.  *See id.* at 1183.

   Next, Plaintiffs argue that the claims of those players who retired before 1968 or

who played exclusively between 1987 and 1993 are not preempted because no CBA was in

effect at those times.[15]  But, as explained above, to the extent that Plaintiffs' claims also concern

the post-retirement period, they are preempted because the CBAs in effect at the time that the

---

[15]    Plaintiffs identify Roosevelt Grier, Patrick J. Kelly II, Pete Lamana, and Jimmy Lesane as opt-outs who played
when no CBA was in effect.  (Pls.' Br. at 20 n.7.)  However, none of these individuals has pending claims
against the NFL Defendants.

NFL allegedly made misrepresentations to retirees must be interpreted to resolve, among other things, whether the retirees reasonably relied on the NFL and the NFL's alleged duty to them.

**E.**        **The Seaus Are Not Exempt from the LMRA's Preemptive Force**

Seeking special treatment that the law does not afford them, the Seaus raise two additional arguments against preemption:  that dismissal would leave them without any forum for relief and would not serve the purposes of Section 301, and that they assert purportedly unique "independent" state law claims.  Neither has merit.[16]

> **1.**        **Section 301 Preempts the Seaus' Claims Regardless of Whether They Can File a Grievance**

It is well recognized that the result of Section 301 preemption "often means that [plaintiff] has no remedy left, because either the time for filing a grievance under the contract or the . . . statute of limitations for section 301 actions will have long since passed."  Mark A. Rothstein, et al., 2 Employment Law § 9:19 (5th ed.); *see also Young* v. *Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 998, 1000 (9th Cir. 1987) (probationary employee's claims preempted even though he lacked access to CBA grievance procedures because preemption may be found "even if federal law fails to provide the plaintiff with remedies available under state law" (citing *Avco Corp.* v. *Aero Lodge No. 735*, 390 U.S. 557, 560–61 (1968))).  Thus, Section 301 preemption "displace[s] entirely any state cause of action," *even if* "*the relief sought by the plaintiff could be obtained only in state court.*"  *Williams*, 482 U.S. at 391 n.4, 394 (emphasis added); *see also Chmiel* v. *Beverly Wilshire Hotel Co.*, 873 F.2d 1283 (9th Cir. 1989) (claims preempted despite

---

[16]   Although the Seaus are the only wrongful death claimants who have asserted these arguments, they are equally unavailing as to any other wrongful death claimants.  Further, Plaintiffs suggest that the NFL Defendants have argued preemption of wrongful death, survival, and loss of consortium claims only insofar as they sound in negligence (Pls.' Br. at 40; Seau Br. at 11), but they are mistaken.  Because such claims are not substantive in themselves, they are preempted for the same reasons as the underlying torts upon which they depend:  to the extent that Plaintiffs' wrongful death, survival, or loss of consortium claims are grounded in fraud or fraudulent concealment, they are derivative of, and preempted for the same reasons as, the underlying fraud-based claims.  (*See* Defs.' Br. § I.A.3.)

probationary employees having no access to grievance procedure); *Boatwright* v. *Pac. Gas & Elec. Co.*, No. 16-cv-02378, 2017 WL 3579569, at *5 (N.D. Cal. July 6, 2017) (claims preempted "regardless of whether [plaintiff] had access to the grievance process"); *Anderson* v. *Coca Cola Bottling Co. of N.Y.*, 772 F. Supp. 77, 81 (D. Conn. 1991) (claim preempted, noting "[i]t is also irrelevant that the CBA offers plaintiff no effective remedy because of his probationary status").  Courts have repeatedly rejected arguments to the contrary.  *See, e.g.*, *Williams*, 482 U.S. at 391 n.4 (expressly rejecting appellate court's reasoning that a case cannot be completely preempted unless plaintiff has a remedy); *Chmiel*, 873 F.2d at 1287 ("Although this court at one time stated that a case could not be removed to federal court on complete preemption grounds unless the federal cause of action relied upon provided the plaintiff with a remedy, this analysis has been squarely rejected by the Supreme Court."); *Asyali* v. *Sheraton Palace Hotel*, No. 92-cv-2924, 1993 WL 137303, at *4 (N.D. Cal. Apr. 22, 1993) (rejecting argument that "because the [CBA] provides for no grievance/arbitration procedure to resolve disputes, [plaintiff's] state law claims are not preempted").

The Seaus attempt to skirt this well-established precedent that the lack of a remedy is no bar to preemption by arguing that preemption would leave them without a "forum for relief."  (Seau Br. at 3, 4.)  But the distinction between a "remedy" and a "forum" makes no difference.  Lack of a forum is but one of any number of obstacles to relief—such as lack of standing, stale claims, or inadequate proof of an element of one's claims—and if any one of these basic requirements is missing, then plaintiff can no more obtain relief than if she lacked access to a forum in which to seek relief in the first place.  Similarly, the reason for a given plaintiff's lack of access to the grievance process—whether it be non-signatory status or failure to commence a timely grievance—is irrelevant for purposes of Section 301.  *See Olguin* v.

*Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1476 (9th Cir. 1984); 2 Employment Law § 9:19.  Treating these situations differently, as the Seaus request, would lead to the untenable, and unsupportable, result that the Court could dismiss the claims of Junior Seau's estate representative (who stands in the shoes of Junior Seau, who irrefutably had a forum for relief under the Seaus' analysis) but sustain the claims asserted by the Seau family—even though both sets of claims arise from the same alleged misconduct, concern the same injuries to the decedent, and require interpretation of the same CBA provisions.

Tellingly, the Seaus have not cited a single case rejecting preemption of a wrongful death claim purporting to arise from injury to an employee covered by a CBA, nor are the NFL Defendants aware of any case holding that such a claim is somehow exempt from LMRA preemption.  Indeed, the Seaus' cited cases are distinguishable because they involve employees who, unlike Junior Seau, were not in a union or were not covered by any CBA at the time of defendant's alleged conduct, and so, unlike the Seaus, resolution of their claims therefore could not substantially depend upon interpretation of any CBA.  *See Haber* v. *Chrysler Corp.*, 958 F. Supp. 321, 328–29 (E.D. Mich. 1997) (non-union employee's termination-related claims not preempted where for previous two decades his position was not covered by a CBA); *Fagundes* v. *GTE Cal. Inc.*, No. 95-cv-1130, 1995 WL 295828, at *3 (N.D. Cal. May 8, 1995) (employee's termination-related claims not preempted where she previously withdrew from union membership and, thus, CBA coverage); *Wanland* v. *Los Gatos Lodge, Inc.*, 230 Cal. App. 3d 1507, 1517 (Cal. App. 1991) (employee's termination-related claims not preempted where managerial position was not covered by CBA); *see also Butts* v. *Lane*, No. 95-cv-01849, 1996 WL 163000, at *5 (N.D. Cal. Mar. 11, 1996) (employee's claims not preempted where her individual employment contract was not a CBA); *cf. Price* v. *Georgia-Pacific Corp.*, 99 F. Supp.

2d 1162 (N.D. Cal. 2000) (involving terminated non-union employee's claim for breach of an oral employment contract that did not involve duty requiring interpretation of the CBA).[17]  By contrast, Junior Seau indisputably was covered by the CBAs at the relevant time, and thus the Seaus' claims *do* substantially depend upon an interpretation of the CBAs.  *See supra* § I.A–B.

The rest of the Seaus' cases are equally inapposite.  In *In re NHL*, the court in fact reserved its determination on preemption for a later stage of the litigation, rendering the portion relied on by the Seaus mere dicta.  189 F. Supp. 3d at 869 n.6, 870.  Moreover, even if *In re NHL*'s dicta were somehow binding (and it is not), the NFL Defendants respectfully submit that *In re NHL* was wrongly decided because it would lead to the nonsensical results described above—and unsurprisingly, no court has cited it for the proposition on which the Seaus rely.  Plaintiffs also rely on two cases that stand for the unremarkable proposition that in order for a federal statute to completely preempt a state-law claim, the statute must provide a federal private right of action.  *See Rogers* v. *Tyson Foods, Inc.*, 308 F.3d 785 (7th Cir. 2002); *Ry. Labor Execs. Ass'n* v. *Pittsburgh & Lake Erie R.R. Co.*, 858 F.2d 936 (3d Cir. 1988).  That is irrelevant here.  Unlike the statutes in those two cases, the LMRA creates a federal right of action for breaches of labor agreements.  *See Laborers Health & Welfare Trust Fund for N. Cal.* v. *Advanced Lightweight Concrete Co.*, 484 U.S. 539, 549 n.16 (1988); *Franchise Tax Bd.* v. *Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23 (1983).  In fact, *Rogers* expressly distinguished statutes conferring complete preemption, like the LMRA, from statutes like the one at issue, and also noted that a "federal cause of action need not provide the same remedies as the preempted state cause of action" and that "complete preemption can exist even where a particular

---

[17]   Moreover, all but one of these cases is based on the questionable decision *Scott* v. *New United Motor Mfg. Inc.*, 632 F. Supp. 891 (N.D. Cal. 1986) or its progeny, but *Scott* was decided prior to (and contrary to) the wealth of caselaw discussed above, including the Supreme Court's landmark decision in *Caterpillar Inc.* v. *Williams*, 482 U.S. 386 (1987), which recognized that preemption could apply even if the relief sought was available only in state court.  These cases' holdings are therefore as suspect as *Scott*'s.

plaintiff seeks a remedy that Congress chose not to provide." 308 F.3d at 790. Likewise, *Pruell* v. *Caritas Christi* held that Section 301 preemption would not apply if plaintiffs were "non-union workers *unaffected by any CBA*," 645 F.3d 81, 83 (1st Cir. 2001) (emphasis added), but the Seaus' claims are very much affected by—indeed, as above, their resolution substantially depends upon an analysis of—the CBAs here because their claims depend on establishing that the NFL Defendants owed a duty to Junior Seau, and the scope of such duty, which considerations require interpretation of the numerous health and safety provisions in the CBAs. *See Chipman* v. *Nelson*, No. 11-cv-2770, 2016 WL 4943843 (E.D. Cal. 2016); (Defs.' Br. at 31–32).

Nor is it relevant that the Seaus are not signatories to the CBAs, as "[t]he individual status of the plaintiff or defendant as signatory does not inform the Court's [Section 301 preemption] inquiry." *Martin* v. *Watkins*, No. 10-cv-423, 2010 WL 5371341, at *4 n.2 (W.D. Va. Dec. 22, 2010) (non-signatory plaintiff's claims preempted because resolution required CBA interpretation); *see also Atwater*, 626 F.3d at 1177–78 ("courts have governed their determinations on . . . preemption by the necessity of referring to a CBA for resolution of the claim rather than by the individual status of the defendant"). Although the Seau Children argue there somehow is a distinction between non-signatory plaintiffs and non-signatory defendants, (Seau Br. at 5 n.1), that is not the case. In fact, claims asserted against the NFL by non-signatory spouses or heirs of former NFL players have been held to be preempted. *See Stringer*, 474 F. Supp. 2d at 909–10; *Dent* v. *Nat'l Football League*, No. 14-cv-02324, 2014 WL 7205048, at *9 (N.D. Cal. Dec. 17, 2014).

In addition, the Seaus argue that "dismissal of the[ir] claims does not serve any policy that § 301 preemption protects," but that argument also misses the mark. (Seau Br. at 13.)

The Seaus are correct that uniform application of federal labor law and enforcement of private grievances are the two animating policies behind Section 301, but they are incorrect that dismissal does not serve these purposes.  Remanding the Seaus' claims, as they ask, would seriously undermine the LMRA's policy of ensuring uniform interpretation of CBAs by haphazardly placing state courts in charge of interpreting the CBA provisions identified by the NFL, risking potentially inconsistent interpretations, and subjecting the NFL to inconsistent duties.  This is precisely the "disruptive influence" that Section 301 was designed to prevent. *Beidleman*, 182 F.3d at 232.  Moreover, to the extent the Seaus argue that the Court should simply apply federal law instead of dismissing their claims, this is at odds with black-letter law: when Section 301 applies, plaintiff's claim "must either be treated as a § 301 [contract] claim, or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp.*, 471 U.S. at 220.

Dismissing the Seaus' claims also serves the LMRA's policy of "ensuring enforcement of private grievance in industrial labor." (*See* Seau Br. at 13.)  Even assuming that the Seaus are correct that they could not file a grievance, finding preemption would be consistent with LMRA policy favoring enforcement of privately agreed-upon dispute resolution provisions in CBAs.  *See, e.g.*, *Republic Steel Corp.* v. *Maddox*, 379 U.S. 650, 653 (1965).  To the extent that the Seaus argue that the CBAs could only have waived their statutory wrongful death claims if the waiver was clear and unmistakable (Seau Br. at 9 n.4), they misstate the law.  The Seaus cite *Wright* v. *Universal Mar. Serv. Corp.*, 525 U.S. 70 (1998), *Metro. Edison Co.* v. *NLRB*, 460 U.S. 693 (1983), and *Manning* v. *Boston Med. Ctr. Corp.*, 725 F.3d 34 (1st Cir. 2013), but each case concerned waiver of a *federal statutory right* and therefore has no application here.  *See Manning*, 725 F.3d at 51 (unlike with federal claims, the "LMRA exerts a strong preemptive effect over state law causes of action").

### 2.    Section 301 Preempts Purportedly "Independent" Wrongful Death Claims

The Seaus' next argument—that their wrongful death claims are "independent" of the CBAs because they are "independent" statutory claims under California law and thus not preempted, fares no better.  As an initial matter, the Seaus repeatedly argue that their claims are "independent" and "separate" from any claims that could have been asserted by Junior Seau, but their claims are less "independent" than they would have the Court believe, because "[a]lthough a wrongful death claim is an independent action, wrongful death plaintiffs may be bound by agreements entered into by decedent that limit the scope of the wrongful death action," including arbitration agreements.  *Ruiz* v. *Podansky*, 237 P.3d 584, 593 (Cal. 2010) (granting defendants' petition to compel arbitration of all wrongful death claims asserted by decedent's wife and children where decedent had entered into an arbitration agreement with defendants).  That is the case here, where the CBAs, to which Junior Seau was bound, "limit the scope of the [Seaus'] wrongful death action."  *Id.*  But in any event, whether the Seaus' claims are "independent" or derivative under California law is irrelevant to whether the claims are *independent of the CBAs*, such that their resolution does not require interpretation of them.  Here, the Seaus' claims are far from independent of the CBAs.  Because their claims arise out of alleged duties owed to Junior Seau, *see Chipman*, 2016 WL 4943843, at *13, the Seaus' claims are preempted for the same reasons as Plaintiffs' negligence and fraud-based claims:  establishing the existence and scope of those duties requires interpretation of the CBAs.

It is well established that Section 301 preempts even purportedly "independent" state statutory claims.  *See United Steelworkers of Am.* v. *Rawson*, 495 U.S. 362, 366–72 (1990) (independent Idaho wrongful death action preempted by Section 301); *Shane* v. *Greyhound Lines, Inc.*, 868 F.2d 1057, 1064 (9th Cir. 1989) (independent Washington wrongful death claim preempted by Section 301); *Negron* v. *Oxford Airport Tech. Servs.*, No. 08-cv-4326, 2009 WL

50158, at *3–5 & n.4 (E.D. Pa. Jan. 7, 2009) (independent Pennsylvania wrongful death claim preempted by Railway Labor Act).  In fact, contrary to the Seaus' claim that "the NFL has not provided a single decision wherein independent statutory claims for wrongful death, like the Seau Children's, were preempted by the LMRA" (Seau Br. at 12), *Rawson* is just such a case. (Defs.' Br. at 32.)  The Seaus try to distinguish *Rawson* on the ground that it "never raised, nor did the court address, whether the Idaho wrongful death claims were independent statutory rights" (Seau Br. at 12), but the Idaho Supreme Court itself has held that Idaho wrongful death claims are independent and in fact those claims were modeled after the wrongful death claims of California.  *See Castorena* v. *Gen. Elec.*, 238 P.3d 209, 218 (Idaho 2010).  Moreover, the Supreme Court expressly stated that Section 301 preempts even such purportedly "independent" claims, *Rawson*, 495 U.S. at 369–72, thus rejecting the Seaus' claim that so-called "independent" statutory claims are exempt from preemption.   The Seaus also argue that *Rawson* is distinguishable because plaintiff's claim there "required substantive interpretation of the CBA" and therefore was not "independent" of the CBAs (Seau Br. at 12), but Plaintiffs' claims too, just like those in *Rawson*, *do* require such interpretation.  *See supra* § I.B & I.C.

In addition, numerous courts have expressly held that California wrongful death claims are subject to complete preemption under the Employee Retirement Income Security Act of 1974 ("ERISA"), a statute whose preemptive scope is similar to Section 301.  *See, e.g., Ellison* v. *Spectrastar*, 91 F.3d 151 (9th Cir. 1996) (California wrongful death claim preempted by ERISA); *Comer* v. *Kaiser Found. Health Plan, Inc.*, 45 F.3d 435 (9th Cir. 1994) (same); *see also Metro. Life Ins. Co.* v. *Taylor*, 481 U.S. 58, 65 (1987) (noting that legislative history on the preemption provision of ERISA stated that "[a]ll such actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under

29

section 301 of the [LMRA]").

Finally, the Court should reject the Seaus' invitation to create a "special" preemption analysis for "independent" state statutory claims. There is no special standard for analyzing such claims, and the Seaus' cases in supposed support (some of which do not even involve state statutory rights) merely stand for the uncontroversial principle that Section 301 preempts state law claims only if the resolution of those claims substantially depends upon an interpretation of a CBA, or if they arise out of a CBA—in other words, if the claims are not "independent" of the CBA. That is precisely the case here.

**F.     Plaintiffs' Claims Against the NFL Arise Under the CBAs**

As the NFL's moving brief showed, Plaintiffs' claims are preempted for a second, independent reason:  they arise under the CBA. Plaintiffs' claims are founded directly on the CBAs, as they hinge on the NFL's purported role as "the guardian of player safety" and its purported failure to institute rule changes to address player injuries. (Defs.' Br. at 38.) Plaintiffs' arguments to the contrary are unavailing.

Plaintiffs argue that the CBA rulemaking provisions merely set forth hypothetical "rule-making potential." (Pls.' Br. at 41.) But that is precisely the point:  because Plaintiffs fault the NFL for failing to impose regulations to protect against injury, these rule-making provisions thus are the source of the very duties that Plaintiffs alleged were breached. (*See* Defs.' Br. at 37–40.) Plaintiffs further argue that "[n]egligence is situational," drawing an odd analogy to a car accident (Pls.' Br. at 42.), which only supports the proposition that the NFL's duties do not arise from thin air; they arise from the CBAs which define the NFL's relationship to players. (Defs.' Br. at 37–40.) Indeed, Plaintiffs appear to concede as much by arguing that "[t]he NFL's negligence and fraud turns on their assumption of duties, their superior knowledge, and their cover-up and misrepresentations *to the Players*." (Pls.' Br. at 43 (emphasis added).) Because

the CBAs set forth the specific duties governing the relationship between the NFL and Plaintiffs *that are relevant here*—duties to safeguard player health and safety, as opposed to the duty to drive one's car safely—Plaintiffs claims thus arise from the CBAs.[18]

Thus, for example, in *Rawson*, the Supreme Court held preempted a claim based on the union's alleged duty—to use care in conducting an inspection of the mine—that arose under the terms of a CBA providing for the relevant inspection.  495 U.S. at 371, 374–75.  The Court expressly rejected an argument nearly identical to Plaintiffs' "assumption of duty" theory here, namely, that "Idaho law placed a duty of care on the Union because the Union did, in fact, actively inspect the mine, and the Union could be held liable for the negligent performance of that inspection" without reference to the CBA.  *Id.* at 370.  Rather, the Court found plaintiffs' claims preempted because "[t]his is not a situation where the Union's delegates are accused of acting in a way that might violate the duty of reasonable care owed to every person in society," thus, it was clear that plaintiffs' claims "cannot be described as independent of the collective-bargaining agreement."  *Id.* at 371.  Plaintiffs argue that *Rawson* is inapplicable because they do not identify the CBAs as the source of the NFL's duties, but as discussed above and in the NFL's moving papers, it is clear that the alleged duties upon which Plaintiffs based their claims are duties that arise, if at all, under those provisions of the CBA addressing rule-making and player health and safety, and thus are preempted.  (Defs.' Br. at 38-40.)  *See Rawson*, 495 U.S. at 371.  Indeed, the court in *Sherwin* similarly emphasized, citing *Rawson*, that a Club's duties relating to medical care and informing players about medical treatment and diagnoses, were not duties

---

[18]    Plaintiffs further claim that the NFL has cited the wrong standard in arguing alternatively that claims founded directly on rights arising under CBAs are preempted.  (Pls.' Br. at 40.)  That assertion is similarly unfounded.  Consistent with binding Supreme Court precedent, the Third Circuit recognizes that " § 301 'governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective bargaining agreement.'"  *Kline*, 386 F.3d at 253 (quoting *Caterpillar*, 482 U.S. at 394); *Antol*, 100 F.3d at 1117.

"owed to every person in society," but rather were owed only to players pursuant to the CBA. 752 F. Supp. at 1178.[19]

## II.

## PLAINTIFFS' PREEMPTED CLAIMS SHOULD BE DISMISSED

As a last resort, Plaintiffs contend that this Court should not dismiss their claims "at this early stage, pre-discovery," and Plaintiff Johnson suggests that a preemption finding should not result in dismissal.  (Pls.' Br. at 48; *see* Johnson Br. at 4.)  These arguments lack merit.  First, Plaintiffs' assertion that courts require "a fuller factual development prior to ruling on preemption" (Pls.' Br. at 49) is mistaken.  Where, as here, a defendant has moved to dismiss a complaint on LMRA preemption grounds, the complaint and CBAs are the only documents that the court need analyze.  *See, e.g.*, *Connecticut* v. *YP Advert. & Publ'g LLC*, No. 16-cv-1424, 2017 WL 810279, at *8 (D. Conn. Mar. 1, 2017) (denying request for "further factual development," denying remand and dismissing claims preempted by Section 301); *Pagano* v. *Bell Atlantic-New Jersey, Inc.*, 988 F. Supp. 841, 847 n.3 (D.N.J. 1997) (granting motion to

---

[19]  Plaintiffs fail to respond to the NFL Defendants' showing that the claims against NFLP must be dismissed, other than citing to sections of the SAC that conclusorily state that NFLP "negligently licensed protective equipment" (SAC at 6), discuss NFLP's trademark licensing agreement with Riddell, and lump NFL and NFLP together without differentiating the two.  Plaintiffs thus fail to identify any duty owed by NFLP other than a purported duty with respect to licensing of protective equipment.  Thus, because, as shown above and in the NFL Defendants' moving brief, Plaintiffs' claims against the NFL are preempted, so, too, are their claims against NFLP, notwithstanding *Stringer*'s erroneous holding (*see* Defs.' Br. at 42 n.16).

In addition, as previously explained, the claims of plaintiffs in *Robinson* v. *Nat'l Football League, Inc.*, No. 17-cv-2736 (E.D. Pa.), consolidated in this MDL, are superseded by the SAC and thus should be dismissed as preempted and for failure to state a claim (*see* Defs.' Br. at 6 n.4).  To the extent that the *Robinson* plaintiffs assert claims against National Football League Foundation ("NFLF"), not named in the SAC, those claims are preempted as well.  Just as is the case with NFLP, the *Robinson* plaintiffs have failed to specify any duties owed by NFLF (or breach of such duties) as distinct from the NFL, and there are very few substantive allegations in their complaint (and none in their proposed Short Form Complaint) specific to NFLF other than to allege that NFLF received and distributed grant money.  *See* Notice of Removal, *Robinson* v. *Nat'l Football League*, No. 17-cv-2736 (E.D. Pa. Jun. 16, 2017), ECF No. 1; Ex. A to Reply in Further Support of Pls.' Mot. to Remand, *Robinson*, ECF No. 9.  Thus, to adjudicate any claims against NFLF (to the extent they even exist), a court would need to assess the scope of any alleged duty according to the scope of the preexisting duties in the CBAs, and so they are preempted.  (*See* Defs.' Br. §§ I.A, II.)

dismiss and disallowing discovery where claims were preempted by Section 301); *Levy* v. *Verizon Info. Servs., Inc.*, 498 F. Supp. 2d 586, 595 n.8 (E.D.N.Y. 2007) (dismissing preempted claims, rejecting plaintiffs' contention "that they would need additional discovery"). Thus, both the *Duerson* and *Maxwell* courts, without the aid of discovery, adjudicated motions to remand raising preemption questions identical to those here, in each case determining that plaintiff's claims were preempted. *See Duerson*, 2012 WL 1658353, at *6; *Maxwell*, No. 11-cv-08394, Order at 2; *see also Smith*, 2014 WL 6776306, at *9 (same); *Ballard*, 123 F. Supp. 3d at 1172 (granting pre-discovery motion to dismiss on preemption grounds); *see also Smith* v. *Houston Oilers Inc.*, 87 F.3d 717, 722 (5th Cir. 1996) (affirming dismissal of complaint on preemption grounds); *Givens* v. *Tenn. Football, Inc.*, 684 F. Supp. 2d 985, 992 (M.D. Tenn. 2010) (granting motion to dismiss on preemption grounds); *Holmes* v. *Nat'l Football League*, 939 F. Supp. 517, 528 (N.D. Tex. 1996) (same); *Sherwin*, 752 F. Supp. at 1179 (same). There is no need for discovery to rule on the preemption issue here.

Ignoring this abundant and instructive case law, Plaintiffs instead rely on *In re NHL*, in which the court reserved decision on preemption and declined to take judicial notice of the CBAs (and thus could not determine whether resolution of the claims "substantially depended" upon their interpretation). Notably, the court's decision was based in large part on defendant's reliance on "cherry-picked documents" including "meeting minutes, letters, memoranda, and reports" that the court determined "are not embraced by the pleadings" and on defendant's failure to "point[] to any such provisions or requirements" imposed by the CBA. 189 F. Supp. 3d at 869, 872. That is far from the case here. Moreover, the *NHL* decision is contrary to a long line of cases holding that player injury claims against the NFL and its Member Clubs are preempted (*see* Defs.' Br. at 28–30), and is thus an outlier in this area that,

respectfully, should carry no persuasive weight.  Indeed, in another case involving concussion-related claims, the same judge granted a motion to dismiss on preemption grounds, relying in part on specific CBA provisions cited by defendants.  *Ballard*, 123 F. Supp. 3d at 1169 & n.8.  The other cases cited by Plaintiffs are inapposite.  *See Exal Corp.* v. *Roeslein & Assocs., Inc.*, No. 12-cv-01830, 2012 WL 4754748, at *3 (N.D. Ohio Oct. 2, 2012) (addressing motion to dismiss based on preemption by the Uniform Trade Secrets Act); *DeSilva* v. *N. Shore-Long Island Jewish Health Sys., Inc.*, No. 10-cv-1341, 2012 WL 748760, at *10–11 (E.D.N.Y. Mar. 7, 2012) (acknowledging that preemption "can be decided based upon the pleadings" but stating it was "unclear" whether CBA interpretation would be required where actual notice of uncompensated work was alleged, CBA provision would not change statutory obligation to pay overtime, and certain CBA provisions were only relevant for damages); *Gray* v. *Keystone Steel & Wire Co.*, No. 08-cv-1197, 2009 WL 187895, at *1 (C.D. Ill. Jan. 21, 2009) (finding that CBA was not "central" to Title VII claim).  Here, of course, the CBAs are central to Plaintiffs' claims and the resolution of those claims clearly would require interpretation of the CBAs.  No "factual development" will change that outcome.

Second, permitting clearly preempted claims such as these to proceed would violate the settled law of labor preemption, which is premised on the principle "that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance."  *Allis-Chalmers*, 471 U.S. at 220.  Thus, "because preempted claims must first be presented through the arbitration procedure established in a collective bargaining agreement, those claims should be dismissed."  *Givens*, 684 F. Supp. 2d at 991–92.  That the NFL has not independently moved to compel arbitration (Pls.' Br. at 47) is irrelevant.[20]

---

[20]   Plaintiff Johnson invokes a footnote in *Lingle* v. *Norge Div. of Magic Chef, Inc.*, which simply affirms the distinction between claims (such as those here) whose resolution substantially depends upon an interpretation of

## III.

## ESTOPPEL IS UNWARRANTED

As explained in the NFL Defendants' moving brief, Plaintiffs' estoppel argument lacks merit. Plaintiffs do not show otherwise in opposition.

Plaintiffs first claim that the issue in the cited arbitrations (which did not involve Section 301 preemption at all) of "whether state-law personal injury claims are arbitrable under the CBA" is the same issue before the Court here. (Pls.' Br. at 46.) Not so. Here, the salient question is whether resolution of Plaintiffs' claims requires interpretation of the CBAs, or whether their claims arise under those CBAs, such that they are preempted; the arbitrability of a claim is not part of the preemption analysis. (Defs.' Br. at 45.) [21] Plaintiffs next argue that the "argument that state-law tort claims are not subject to the CBA was one of the NFL's *substantive* defenses in *Sampson* and *Henderson*, and one that the arbitrators accepted." (Pls.' Br. at 47.) Even if that were true, Plaintiffs fail to explain—because they cannot—how the arbitrability of a negligence claim against a team doctor would be dispositive of whether Henderson was entitled

---

the terms of a CBA and must be dismissed, and those that require mere reference to the CBA (*e.g.*, to calculate wages for damages purposes). *See* 486 U.S. 399, 413 n.12 (1988); (Johnson Br. at 4). Where, as here, the resolution of state law claims requires interpretation of the terms of a CBA, or the claims arise out of duties created by the CBA, dismissal is required. *See, e.g.*, *Hechler*, 481 U.S. at 859 (reviewing dismissal of preempted negligence claim); *Beidleman*, 182 F.3d at 237 (affirming dismissal of fraudulent concealment claim); *Peek*, 1997 WL 399379, at *6 (dismissing negligence claims as preempted); *Rosario*, 247 F. Supp. 3d at 569 (dismissing statutory claim as preempted). Plaintiff Johnson also suggests that the NFL Defendants' motion is "procedurally deficient" in moving pursuant to Rules 12(b)(1) and 12(b)(6). (Johnson Br. at 2.) Not so. Courts have dismissed claims as preempted by the LMRA under both rules, and the NFL Defendants are free to move in the alternative. *See Ballard*, 123 F. Supp. 3d at 1166 (motion to dismiss for failure to state a claim); *Sherwin*, 752 F. Supp. at 1175 (motion to dismiss for lack of subject matter jurisdiction); *Oddo* v. *Bimbo Bakeries USA, Inc.*, No. 16-cv-04267, 2017 WL 2172440, at *2–4 (D.N.J. May 17, 2017) (observing that courts apply both rules in LMRA preemption context).

[21] (Defs.' Br. at 45.) Plaintiffs concede that the *Sampson* arbitration involved third party doctors but argue that *Henderson* involved a team doctor. That does not make *Henderson* any more relevant. The arbitrator's passing comment in *Henderson* that a negligent discharge claim would not be arbitrable was not "essential" to the ultimate judgment—indeed the arbitrator himself indicated that it was "not the crucial issue in the case"— because it was not dispositive of the player's entitlement to an injury protection benefit. (Defs.' Br. at 44; NFL Defs.' Leave Opp. at 14–15, ECF No. 7767.) And Plaintiffs are incorrect that the *Sherwin* court "did not appear to advert to the fact" that the doctor in *Henderson* was a team doctor. *See* 752 F. Supp. at 1179 (referring to "a *team physician's* discharge of the player from his supervision" in *Henderson* (emphasis added)).

to an injury protection benefit or how the arbitrability of a negligence claim against a third party doctor would be dispositive of whether the Oilers provided Sampson inadequate care.  Thus Plaintiffs have failed to show that those findings were anything other than dicta.  Ultimately, Plaintiffs fall back on the argument that the decisions "undercut the NFL's substantive positions," but two decades-old arbitration decisions surely have no persuasive impact compared to the weight of authority in the NFL Defendants' favor.  (*See* NFL Defs.' Leave Opp. at 12–19, ECF No. 7767; *see also* Defs.' Br. § III.)

## CONCLUSION

For the foregoing reasons, and those set forth in the NFL Defendants' moving papers, the NFL Defendants respectfully submit that Section 301 preempts Plaintiffs' claims, and, as a result, the SAC should be dismissed with prejudice.

Dated: February 12, 2018

Respectfully submitted,

*/s/ Brad S. Karp*
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Brad S. Karp
Bruce Birenboim
Lynn B. Bayard
1285 Avenue of the Americas
New York, NY 10019-6064
Tel:     (212) 373-3000
Email: bkarp@paulweiss.com

PEPPER HAMILTON LLP
Sean P. Fahey
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
Tel:     (215) 981-4000

*Attorneys for Defendants National Football League and NFL Properties LLC*

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that a true copy of the foregoing document was served electronically via the Court's electronic filing system on the 12th day of February, 2018, upon all counsel of record.


Dated:  February 12, 2018          _____ */s/ Brad S. Karp* _____
                                    Brad S. Karp