#108                                                                                                                                                    2012s-49

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS,
## EASTERN DIVISION

| | |
|---|---|
| TREGG DUERSON, Personal Representative of the Estate of DAVID R. DUERSON, Deceased, | ECF Document |
| | Civil Action: 12-cv-2513 |
| Plaintiff, | Judge James F. Holderman |
| v. | |
| NATIONAL FOOTBALL LEAGUE, et al. | |
| Defendants. | |

### MOTION TO REMAND

Plaintiff, TREGG DUERSON, Personal Representative of the Estate of DAVID R. DUERSON, Deceased, moves this Court for the entry of an Order, pursuant to 28 U.S.C. §1447(c), remanding this case to the Circuit Court of Cook County. In support Plaintiff states:

1. On February 23, 2012, Plaintiff filed this action in the Circuit Court of Cook County, Illinois.

2. On March 13, 2012, Defendant, NFL, was served.

3. On April 5, 2012, Defendants filed Notice of Removal, indicating that this Court has jurisdiction over the matter because it raises questions "arising under the constitutional laws or practices of the United States." 28 U.S.C. §1331.

4. According to Defendants' Notice of Removal, "the relationship between the NFL and Dave Duerson was governed by Collective Bargaining Agreements ("CBAs") that were executed and operative during his career."

5. Plaintiff moves to Remand, as there was no operative CBA at the times Duerson was damaged due to the NFL's negligence.

6. As resolution of Plaintiff's claims do no not require interpretation of a non-existent CBA, his claims are not preempted and no federal question jurisdiction exists.

WHEREFORE, Plaintiff respectfully requests this Court enter an order, pursuant to 28 U.S.C. §1447(c), granting Plaintiff's Motion to Remand this case to the Circuit Court of Cook County, Illinois.

Respectfully submitted,

*/s/ Thomas A. Demetrio*

Thomas A. Demetrio
René A. Torrado, Jr.
William T. Gibbs
Corboy & Demetrio, P.C.
Attorneys for Plaintiff
33 North Dearborn Street
Suite 2100
Chicago, Illinois 60602
(312) 346-3191
Firm I.D. No. 108

**CERTIFICATE OF SERVICE**

I, Thomas A. Demetrio, hereby certify that on April 18, 2012, a true and correct copy of Plaintiff's Motion to Remand was filed via CM/ECF, which caused notice to be sent to all counsel of record:

| | |
|---|---|
| Dan K. Webb<br>Robert L. Michels<br>Joseph L. Motto<br>Nicole Wrigley<br>WINSTON & STRAWN LLP<br>35 West Wacker Drive<br>Chicago, Illinois 60601<br>(312) 558-5600 | Brad S. Karp<br>PAUL, WEISS, RIFKIND, WHARTON &<br>GARRISON LLP<br>1285 Avenue of the Americas<br>New York, New York 10019<br>(212) 373-3000 |
| Thomas P. Branigan<br>Nicholas G. Even<br>BOWMAN AND BROOKE LLP<br>50 West Big Beaver Road, Suite 600<br>Troy, Michigan 48084<br>(248) 687-5300 | John J. Pappas, Sr.<br>LAW OFFICES PAPPAS, HEALY &<br>  PAPPAS LLC<br>30 West Monroe Street, Suite 800<br>Chicago, Illinois 60603<br>(312) 782-5363 |

Dated: April 18, 2012       By: __/s/ *Thomas A. Demetrio*__

#108                                                                                                2012s-49

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS,
# EASTERN DIVISION

| | |
|---|---|
| TREGG DUERSON, Personal Representative of the Estate of DAVID R. DUERSON, Deceased, | ECF Document |
| | Civil Action: 12-cv-2513 |
| Plaintiff, | Judge James F. Holderman |
| v. | |
| NATIONAL FOOTBALL LEAGUE, et al. | |
| Defendants. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO REMAND

Plaintiff, TREGG DUERSON, Personal Representative of the Estate of DAVID R. DUERSON, Deceased, moves this Court for the entry of an Order, pursuant to 28 U.S.C.§ 1447(c), remanding this case to the Circuit Court of Cook County, Illinois. In support thereof, Plaintiff states:

## FACTS

Tregg Duerson filed this cause of action pursuant to the Wrongful Death Act, 740 ILCS 180/1, et. seq., seeking wrongful death damages for the death of his father, former NFL Player, David R. Duerson ("Duerson"). (Plaintiff's Complaint at Law Attached as Exhibit A). Six separate counts were pled:

- Count I: NFL's Negligence During Duerson's NFL Playing Career Caused Brain Damage and Death;
- Count II: NFL's Fraudulent Concealment of Linkage Between Brain Trauma Sustained During NFL Playing Career and Permanent Brain Damage Caused Death;
- Count III: NFL League Officers and Members of its MTBI Committee Conspired to Publish and Profess False Information to Its Players and Retirees;
- Count IV: NFL's Negligence in Protecting and/or Warning its Retiree Caused Death;
- Count V: Riddell's Strict Liability for Failing to Warn that its Helmet Design Would Not Prevent Concussion Caused CTE and Death;
- Count VI: Riddell's Negligence in Failing to Warn that its Helmet Design Would Not Prevent Concussion Caused CTE and Death.

(Ex. A at Counts I - VI.)

The Complaint specifically alleged, in Count I, that following documented concussions in 1988, 1990 and 1992, the NFL never warned Duerson that playing through concussions could, and would, cause permanent brain damage. (Ex. A at Count I, ¶ 13.) The cumulative effect of

1

Dave Duerson's concussive brain trauma and/or playing through these brain traumas during his NFL playing career caused the neuro-degenerative disease, Chronic Traumatic Encephalopathy ("CTE"), to develop in his brain. (Ex. A at Count I, ¶ 19.) CTE caused, or contributed to cause, Dave Duerson's death. (Ex. A at Count I, ¶ 20.)

Plaintiff alleged, and the NFL concedes, that at the time of all three documented concussions (i.e., 1988, 1990, and 1992), the NFL was operating outside of a Collective Bargaining Agreement (i.e., 1987 - 1993). (Ex. A at Count I, ¶ 28; Def's fn #1 on p. 3 of Def's Notice of Removal.)

The NFL removed this case from the Circuit Court of Cook County, averring that the six-count Wrongful Death Complaint confers federal question jurisdiction because "the relationship between the NFL and Dave Duerson was governed by CBAs that were executed and operative during his career," *even though these Agreements admittedly were not in force at the time of Duerson's documented concussions.* (See Def's Notice of Removal at ¶ 4.) The NFL contends that the expired CBA requires exclusive jurisdiction in the Federal Court system, where supplemental jurisdiction will be asserted over the accompanying Counts and allegations. The sole basis for removal articulated in the NFL's Notice is the alleged jurisdiction of this Court under 28 U.S.C. § 1331, because the action is, according to the NFL, founded on a claim "arising under the constitution laws or treaties of the United States." Such is not the case.

## ARGUMENT

As has been stated by current NFL Commissioner, Roger Goodell, "There is nothing more important to the NFL than the safety of our players, and there is no issue of greater importance when it comes to player safety than the effective prevention, diagnosis and treatment

2

of concussions." (Ex. A at Count I, ¶ 10.) The NFL voluntarily assumed a duty to Duerson to keep him reasonably safe during his NFL career and to provide him with the most up-to-date medical information on all issues, including brain trauma. (Ex. A at Count I, ¶ 22.) Its duty was not guided by, influenced by, nor governed by expired or subsequently created Collective Bargaining Agreements.

Plaintiff does not plead breach of contract claims; does not claim that the NFL violated a Collective Bargaining Agreement; and does not claim any cause of action pursuant to § 301 of the Labor Management Relations Act ("LMRA"). (*See* Ex. A.) Neither the 1982 Collective Bargaining Agreement (that expired prior to Duerson's diagnosed concussions) nor the 1993 Collective Bargaining Agreement (that was negotiated subsequent to Duerson's improperly managed concussions) needs to be consulted, reviewed, or interpreted in order to determine the merit of the Wrongful Death claims brought by his Estate.

Defendants argue that Plaintiff's claims arise under or require interpretation of an expired CBA and therefore are preempted by §301 of the LMRA, conferring exclusive jurisdiction within the Federal Courts. This legal stretch requires intense judicial scrutiny, and, upon such review, mandates remand.

"A case must be remanded to state court...if the sole basis of federal jurisdiction is a preemption defense, and the court finds preemption insufficient to confer federal question jurisdiction." *Horton v. Cigna Individual Financial Services, Co.*, 825 F. Supp. 852, 854 (N.D.Ill. 1993). If a plaintiff can prove all the elements of his state-law claim without an interpretation of the Collective Bargaining Agreement, then the claim exists independently of the Collective Bargaining Agreement. *Lingle v. Norge Div. Of Magic Chef, Inc.*, 486 U.S. 399, 409-

3

10 (1988). None of the allegations in Plaintiff's Complaint require interpretation of a Collective Bargaining Agreement *that had expired.*

## I. Federal Question Jurisdiction Standard

This Court is charged with beginning its analysis with a strong presumption in favor of remand. *Kokkonen v. Guardian Life Ins. Co. Of Am.*, 511 U.S. 375, 378 (1994). The District Court must "jealously guard" its jurisdiction against abuse by parties who may not comprehend the constitutional importance of federal jurisdiction. *In the Shell Oil Co.*, 966 F.2d 1130, 1133 (7th Cir. 1992); *Stemmons v. Toyota Tsusha America, Inc.*, 802 F. Supp. 195, 197 (N.D. Ill. 1992). Accordingly, when a defendant removes a case to Federal Court, this Court must "remain vigilant to ensure the presence of jurisdiction even though the parties may disregard the subject (or, worse, try to sneak one by the judge)." *Shell*, 966 F.2d at 1133.

"A 'preemption' defense cannot be the basis of the original federal jurisdiction necessary for removal." *Horton*, 825 F. Supp. at 854. As the removal statute is strictly construed, any issues of doubt are resolved in favor of remand. *See Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993).

## II. An Expired Collective Bargaining Agreement Does Not Confer Federal Jurisdiction on this Court

The NFL concedes, in its Notice of Removal, that during the time of Duerson's documented concussions, the 1982 CBA had expired and that the League operated without a CBA agreement in place for six seasons. (Defendant's Notice of Removal at ¶5, n.1.) However, in a footnote referencing a District Court's footnote, the NFL posits that "[c]ertain provisions of the expired CBA, including the arbitration provision, remained in effect." (Id.) Its entire

4

removal is based upon this inherently inconsistent legal anomaly.

The NFL ignores precedent from federal courts across the United States, including district courts in the Seventh Circuit, holding that an expired Collective Bargaining Agreement <u>cannot</u> serve as the basis for preemption resulting in federal question jurisdiction. *Pattern Makers' Pension Trust Fund v. Badger Pattern Works, Inc.*, 615 F. Supp. 792, 799 (N.D. Ill. 1985) (holding that claims arising out of an expired CBA do not grant jurisdiction under NLRA § 301); *see also United Food & Commercial Workers Int'l Union v. Gold Star Sausage Co.*, 897 F. 2d 1022 (10th Cir. 1990); *Derrico v. Sheehan Emergency Hospital*, 844 F. 2d 22, 25 (2d Cir. 1988); *Int'l Bros. of Elec. Workers, Local Plans A&B v. Nanco Elec.*, 790 F. 2d 59, 60 (8th Cir. 1986); *Office & Professional Employees Insurance Trust Fund v. Laborers Funds Administrative Office, Inc.*, 783 F. 2d 919, 921 (9th Cir. 1986).

Defendant's reliance on *Sherwin v. Indianapolis Colts, Inc.,* is troubling as the case fails to support the NFL's claimed proposition that the terms of the 1982 CBA remained in effect past the expiration of the agreement. The *Sherwin* court did not decide the issue of whether the expired CBA governed the relationship between the parties. Rather the court merely noted, in a footnote, that the plaintiff did not dispute the issue. *Sherwin*, 752 F. Supp. 1172, 1174-75, n.2 (N.D.N.Y. 1990).

Unlike *Sherwin*, there was no such assent by Dave Duerson, and certainly none exists from his heirs, who were not signatories to the CBA. (Ex. A.)

Plaintiff fervently disputes the applicability of the expired CBA to their claims of relief. Neither the expired 1982 CBA nor the unripe 1993 CBA governs the relationship between the parties and therefore, this Court lacks subject matter jurisdiction over this case.

5

### III. Plaintiff's Claims Arise Solely Under State Law and Require No Interpretation of the Expired or Unripe Collective Bargaining Agreements.

Section 301 is a jurisdictional statute under which '[s]uits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). Section 301 only preempts state law claims which are either: (1) founded on rights created by a collective bargaining agreement or (2) substantially dependent on analysis of such an agreement. *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 371-72 (1990). Where a plaintiff can prove all elements of his state-law claim without necessity of contract interpretation, then his claim is independent of the collective bargaining agreement and is not preempted by § 301. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407, 409-10 (1988).

In order to find federal question jurisdiction pursuant to §301 of the LMRA, the federal question must appear on the face of the well-pled complaint, not by way of a defense. *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987). "A *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." *Id.*

Plaintiff's causes of action consist of freestanding claims dependent upon traditional state law elements of tort, and not on any purported CBA. Plaintiff does not seek to enforce any terms or provisions of a CBA, nor were any such agreements in effect at the time of Defendant's negligence in dealing with documented concussions or the manifestation of the damage resulting

6

from this behavior.[1]

### A. Count I of Plaintiff's Complaint is Pled Pursuant to Common Law Tort Principles

The Supreme Court "has repeatedly advised that 'it would be inconsistent with congressional intent . . . to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Brown v. National Football League*, 219 Fed. Supp. 2d 372 (S.D.N.Y. 2002) citing *Allis-Chalmers v. Lueck*, 471 U.S. 202, 211-212 (1985); *Hawaiian Airlines v. Norris*, 512 U.S. 246, 260 (1994); *Livadas v. Bradshaw*, 512 U.S. 107, 123-24 (1994). In fact, just this week, the Supreme Court denied *certiorari* in an NFL Member Club's appeal of a state court's finding of no preemption in a case filed by an NFL player against the Member Club. *See Cleveland Browns Football Co., LLC v. Bentley*, 2012 U.S. LEXIS 2969, *cert. denied.*, 80 BNA USLW 3496 (U.S. Apr. 16, 2012) (No. 11-1008); Petition for Writ of Certiorari, *Cleveland Browns Football Co., LLC v. Bentley*, (U.S.) (No. 11-1008), 2012 WL 486889 (Member Club's argument that "because Bentley was rehabilitating from an injury he suffered as a Browns player during training camp, the CBA defines the relationship between the parties and controls their respective duties and responsibilities, including the types of information, if any, that needs to be disclosed in connection with such treatment" was rejected); *see also Bentley v. Cleveland Browns Football Co.*, 194 Ohio App. 3d 826 (Ohio Ct. App. 2011) (holding "it would be unnecessary to analyze the CBA to resolve the claims that arose from

---

[1] Plaintiff's Complaint at Law alleged that Dave Duerson's CTE was not discovered until May 2, 2011, nearly twenty years after his retirement. (Ex. A at Count I, ¶31; Count II, ¶10.) The NFL, therefore, seeks removal of a case in which (1) there was no CBA at the time of its alleged negligence and (2) Dave Duerson was not a member of the bargaining unit at the time his damage was discovered.

7

contracting the staph infection at the Cleveland Browns' facility").

Plaintiff's Complaint at Count I[2], effectively pleads common-law tort liability without any reference to, or innuendo regarding, the 1982 Collective Bargaining Agreement. The elements of duty, breach, causation damages are readily apparent:

First, duty - "The NFL professes that there is nothing more important to the League than player safety, and that the effective prevention, diagnosis, and treatment of concussions is its greatest player safety issue." (Ex.A at Count I, ¶ 10.) In this vein, the NFL had a duty to Duerson to keep him reasonably safe and to provide him with the most up-to-date medical information on all issues, including brain trauma. (See Ex. A at Count I, ¶ 22.)

Second, breach - The NFL breached its assumed duty to protect the health and safety of its player, Dave Duerson, by:

    a. Failing to educate players, including DAVE DUERSON, coaches and medical professionals about concussions - what they are, what symptoms to look for, and what to do if a player suspects he or a teammate has had a concussion;

    b. Failing to warn DAVE DUERSON and other NFL Players of the potential long-term impact of suffering numerous concussive head traumas;

    c. Failing to warn DAVE DUERSON and other NFL Players of the consequences of playing through the concussions and/or their symptoms;

    d Failing to ensure rapid, accurate diagnosis of DAVE DUERSON's concussive brain injuries during his playing career;

    e. Failing to establish sideline concussion assessment protocol to assist

---

[2] The NFL bases removal upon Count I of Plaintiff's Complaint at Law. Counts II - IV deal with the NFL's duties to its retirees, which the NFL seemingly concedes, are not governed by the CBA. *See Atwater v. Nat'l Football League*, 626 F.3d 1170, 1184 (11th Cir. 2010); www.nflplayers.com/About-us/FAQs/Former-Player-FAQs ("retired players are not part of the bargaining unit").

8

     team physicians and trainers in their initial assessment of brain trauma;

 f. Failing to implement policies to prevent DAVE DUERSON from returning to a game or practice in which he sustained a head injury, in order to prevent harmful repetitive brain trauma;

 g. Failing to require that DAVE DUERSON be cleared by both a team physician and by an independent neurological or neuro-physiological consultant prior to resuming football activities after suffering a concussion;

 h. Failing to regulate and monitor practices, games, equipment and medical care so as to minimize the long-term risk associated with repetitive brain injuries suffered by DAVE DUERSON;

 i. Failing to monitor and record DAVE DUERSON's concussive head traumas during his NFL career; and

 j. Failing to protect DAVE DUERSON from suffering devastating concussive head traumas.

(Ex. A. at Count 1, ¶23.)

  Third, causation - Following documented concussions in 1988, 1990 and 1992, the NFL never warned Duerson that playing through concussions could, and would, cause permanent brain damage. (Ex. A at Count I, ¶13.) Duerson played through the documented concussions and their associated symptoms because he was not told of the consequences. (Ex. A at Count I, ¶16.) The cumulative effect of Duerson's concussive brain trauma and/or playing through these brain traumas during his NFL playing career caused the neuro-degenerative disease, CTE, to develop in his brain. (Ex. A at Count I, ¶19.) CTE caused, or contributed to cause, Duerson's death. (Ex. A at Count 1, ¶20.) If the NFL had taken the necessary steps to oversee and protect Duerson by warning him of the dangers of head traumas, and educating and training in the recognition, prevention and treatment of concussive brain injuries, then Duerson would not have suffered dangerous repetitive head trauma after concussion, would have recovered more rapidly,

9

and would not have sustained permanent damage to his brain which contributed to cause his death. (Ex. A at Count 1, ¶25.)

Fourth, damages - "As a result of the NFL's failures, DAVE DUERSON's children, Tregg Duerson, Chase Duerson, Brock Duerson and Tayler Duerson, have lost the love, affection, care, attention, companionship, comfort, guidance and protection their father provided, and each has experienced grief and sorrow due to his passing." (Ex. A at Count 1, ¶26.)

In its Notice of Removal, the NFL points to provisions contained in the 1982 CBA, which, again, was not operable when Duerson was damaged, that it argues touch upon the duty aspect of these claims of negligence:

- Article XI, § 8-9:

    Two players appointed by the NFLPA will have the right to attend those portions of the annual meeting of the NFL Competition Committee dealing with playing rules in a non-voting capacity to represent the players' viewpoint on such rules.

    Immediately following the NFL annual meeting, the NFLPA will be given notice of all proposed playing rule changes . . . if the NFLPA believes that the adoption of a playing rule change would adversely affect player safety, the NFLPA may call for a meeting of the Joint Committee within two weeks to discuss such proposed rule change . . .

- Article XXXI, § 1-2:

    Each club will have a board certified orthopedic surgeon as one of its club physicians . . . If a club physician advises a coach or other club representative of a player's physical condition which could adversely affect the player's performance or health, the physician will also advise the player.

    All full-time head trainers and assistant trainers hired after the date of execution of this agreement will be certified by the National Athletic Trainers Association. All part-time trainers must work under the direct supervision of a certified trainer.

(1982 CBA Art. XI, § 8-9, Art. XXXI, § 1-2.)

10

Clearly, provisions regarding permission of attendance at annual meetings or the presence of orthopedic surgeons and qualification of trainers do not speak to the issues raised in Count I of Plaintiff's Complaint. That the NFL failed to fulfill its self-imposed commitment to its greatest player safety issue - concussions - has nothing to do with the cited provisions of the expired CBA. Contrary to the NFL's current spin, the plain language of these provisions (and the CBA as a whole) indicates that issues relating to the appropriate handling of concussions were never contemplated by the CBA.

### B. Plaintiff's Claims Do Not Require Interpretation of the CBA

The NFL cited certain cases that have recently been removed from state court in California as a support for removal of this case. First, none of the *Pear*, *Barnes*, or *Maxwell* plaintiffs included state wrongful death claims, and none of the plaintiffs in those cases argued that since they played during the NFL era which operated without a Collective Bargaining Agreement, there was no federal question jurisdiction.

Second, and more importantly, the NFL conveniently failed to address recent appellate and district court opinions finding that NFL player claims against the NFL or its member clubs are not preempted. *See Jurevicious v. Cleveland Browns Football Co.*, No. 1:09 CV 1803, 2010 U.S. Dist. LEXIS 144096 (Mar. 31, 2010); *Hendy v. Losse*, No. 89-55430, 1991 U.S. App. LEXIS 2141, *4-7 (9th Cir. Feb. 12, 1991); *Stringer v. NFL*, 474 F. Supp. 2d 894 (S.D.Ohio 2007); *see also McPherson v. Tennessee Football Inc.*, No. 3:07-0002, 2007 U.S. Dist. LEXIS 39595 (May 31, 2007) (remanding negligence claims for injuries suffered by a visiting player, caused by a team mascot negligently operating a golf cart on the field, during pre-game workouts); *Brown v. NFL*, 219 F. Supp. 2d 372 (S.D.N.Y. 2002) (remanding negligence claims

11

because they rely solely on interpretation of the ordinary concepts of negligence); *Brocail v. Detroit Tigers, Inc.*, 268 S.W.3d 90, 102 (Tex. App. 2008) (holding a major league baseball player's tort claim for failure to provide reasonable medical care not preempted).

In *Jurevicius*, the Court remanded fraud and negligent misrepresentation claims that were based on allegations of affirmative misrepresentations concerning staph infections at the Browns Training Facility. 2010 U.S. Dist. LEXIS 144096 at *2-3. The district court concluded that those claims were not preempted because they did not require interpretation of the CBA. *Id.* at *35-36. In its analysis, the district court stressed that absent language addressing a specific duty, the Collective Bargaining Agreement need not be interpreted and cannot be said to govern. *Id.* at *33.

In *Hendy*, a negligent hiring and retention claim was not preempted because it did not require the interpretation of the CBA because the plaintiff's well-pled complaint alleged failure to use due care rather than a failure to hire "a board certified orthopedic surgeon" as required by the Collective Bargaining Agreement. 1991 U.S. App. LEXIS 2141 at *5. The plaintiff's claims for intentional and negligent withholding of medical information alleged that the co-defendant doctor misrepresented that the plaintiff was fit to play. *Id.* at *7. The court again held that the claims were not preempted because the duty to disclose arose from the state-law doctrine of informed consent and did not assert any violation of the CBA. *Id.* at *7-8.

Even in *Stringer*, the case so heavily relied on by Defendant, the negligence claim was not preempted because the Collective Bargaining Agreement failed to specify a duty to protect against heat-related illness, the alleged cause of the plaintiff's injury. 474 F. Supp. 2d at 904.

Here, as illustrated above, Count I of the complaint stands alone as a state tort cause of

12

action, without any need for consulting an expired CBA.

IV.     **The Arguments and Purported Precedent Cited by the NFL in Its Notice of Removal Fail to Address the Critical Issues Facing this Court in Determining Whether Federal Question Jurisdiction Exists.**

The NFL's argument that certain provisions of an expired CBA limits its liability is a defense to Plaintiff's claim; it does not have any effect on the question of whether federal jurisdiction exists for Plaintiff's claims. As stated above, "a case may not be removed to Federal Court on the basis of a federal defense, including the defense of preemption . . . " *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also Stringer*, 474 F. Supp. 2d at 900 ("[N]either a tangential relationship to the CBA, nor [a] defendant's assertion of the contract as an affirmative defense [can] turn an otherwise independent claim into a claim dependent on the labor contract" (internal citations omitted)).

*United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, is a seminal case that found preemption on the basis that the underlying claim arose from the collective bargaining agreement. 495 U.S. 362 (1990). Survivors of miners killed in an underground fire sued the miner's union for negligently inspecting the mines. *Id.* The Court decided that the negligent inspection claim was controlled by a collective bargaining agreement and consequently preempted by LMRA §301. *Id.* at 364. This duty to inspect could not be categorized as a state-law tort because it was created by the collective bargaining agreement. *Id.* at 366. In fact, the survivors of the miners based their claim on the collective bargaining agreement, alleging "that the Union was negligent in its role as 'enforcer of an agreement negotiated between [sic] [the Union] on behalf of the deceased miners.'" *Id.* at 369.

Here, the CBA did not layout a duty to adequately protect players from the long-term

13

risks of repetitive concussive trauma. This duty arises from common law principles and the NFL's acknowledgment of its voluntary undertaking.

Defendant mistakenly interprets *United Steelworkers of Am., v. Rawson*, stating that duties independent of collective bargaining agreements consist only of duties owed to every member of society. However, *Stringer v. National Football League*, explained:

> The holding in *Rawson* was not dependent on a finding that the duty allegedly violated was owed only to the miners as opposed to "every person in society." Instead, the Court found that the wrongful death claim was preempted because [i]f the Union failed to perform a duty in connection with inspection, it was a duty arising out of the collective-bargaining agreement signed by the Union as the bargaining agent for the miners." 474 F. Supp 2d 894, 909 (S.D. Ohio 2007).

The sole purpose of preemption in this regard is to ensure "that the meaning given a contract phrase or term be subject to uniform federal interpretation." *Allis-Chambers Corp*, 471 U.S. at 211.

Where there are no contract phrases or terms to interpret, there is no preemption. Here, nothing in the 1982 Collective Bargaining Agreement speaks to, or touches upon, the handling of concussive brain traumas. Further, nothing in an expired CBA could plausibly be interpreted to determine the specific issues of this case.

## CONCLUSION

For years, the NFL, either intentionally or with a reckless disregard for the safety of its players, ignored concussions. Now that it has been called to the carpet to respond to a player's family for the damage it caused, it wishes to play jurisdictional games by averring that its Collective Bargaining Agreements speak to the issue. The NFL's current position is that while it was pretending that players were not suffering irreparable brain damage as a result of its utter

14

indifference to concussive brain trauma, its Collective Bargaining Agreements specifically delineated duties regarding the effective handling of concussions. Its own Commissioner's statements expressly contradict this vacuous contention.

The simple fact is that neither the 1982 nor the 1993 CBAs (1) were in effect when Dave Duerson sustained documented concussions and (2) will be of any assistance in analyzing the duty of the NFL to keep Dave Duerson reasonably safe after documented concussions and/or to provide him with the most up-to-date medical information on all issues, including brain trauma. As such, this state law claim should be remanded for adjudication in the Circuit Court of Cook County.

WHEREFORE, Plaintiff respectfully requests this Court to grant Plaintiff's Motion to Remand this case to the Circuit Court of Cook County, Illinois.

> Respectfully submitted,
>
> /s/    Thomas A. Demetrio

Thomas A. Demetrio
René A. Torrado, Jr.
William T. Gibbs
Corboy & Demetrio, P.C.
Attorneys for Plaintiff
33 North Dearborn Street
Suite 2100
Chicago, Illinois 60602
(312) 346-3191
Firm I.D. No. 108

## CERTIFICATE OF SERVICE

I, Thomas A. Demetrio, hereby certify that on April 18, 2012, a true and correct copy of Plaintiff's Memorandum of Law in Support of Motion to Remand was filed via CM/ECF, which caused notice to be sent to all counsel of record:

| | |
|---|---|
| Dan K. Webb<br>Robert L. Michels<br>Joseph L. Motto<br>Nicole Wrigley<br>WINSTON & STRAWN LLP<br>35 West Wacker Drive<br>Chicago, Illinois 60601<br>(312) 558-5600 | Brad S. Karp<br>PAUL, WEISS, RIFKIND, WHARTON &<br>GARRISON LLP<br>1285 Avenue of the Americas<br>New York, New York 10019<br>(212) 373-3000 |
| Thomas P. Branigan<br>Nicholas G. Even<br>BOWMAN AND BROOKE LLP<br>50 West Big Beaver Road, Suite 600<br>Troy, Michigan 48084<br>(248) 687-5300 | John J. Pappas, Sr.<br>LAW OFFICES PAPPAS, HEALY &<br>PAPPAS LLC<br>30 West Monroe Street, Suite 800<br>Chicago, Illinois 60603<br>(312) 782-5363 |

Dated: April 18, 2012                    By: ___/s/ *Thomas A. Demetrio*___