**Objection of the NFL Parties to the Special Master's Ruling on**
**<u>Application of the Definition of Eligible Season to Game Day Roster Designations</u>**

The National Football League and NFL Properties LLC (the "NFL Parties") respectfully submit this Objection to the Special Master's Ruling on Application of the Definition of Eligible Season to Game Day Roster Designations (the "Special Master Ruling," Doc No. 9513) because that Ruling erroneously interpreted the Settlement Agreement definitions of "Eligible Season" and "Active List." Pursuant to Federal Rule of Civil Procedure 53(f)(4) and this Court's July 13, 2016 order appointing the Special Masters, this Court reviews *de novo* objections to the Special Master's conclusions of law, including the interpretation of Settlement Agreement terms. (Doc. No. 6871.)

## <u>INTRODUCTION</u>

The Settlement Agreement negotiated by the NFL Parties and Co-Lead Class Counsel is clear: It provides credit for an Eligible Season only to Retired NFL Football Players who were on a Member Club's 45-player roster[1]—its "Active List"—and therefore eligible to play on game day, unless the Club declared that player inactive due to a concussion or head injury.

Specifically, as explained below, the Settlement Agreement definition of an "Eligible Season" distinguishes between those players able to play in a game—that is, those on the Member Club's 45-player "game-day" roster—and those who were not able to play in a game—that is, those players on the Club's 53-player "seasonal" roster. To that end, the Settlement Agreement states that, in order to earn credit for an Eligible

---

[1]   The size of these respective roster sizes changed over time, but the NFL Parties refer herein to the "45" and "53" player rosters for ease of reference. By way of background, and as an illustrative example, the structure of a 53-player roster, with 45 players active for game day, began in 1993. (*See* Ex. 1, Declaration of Ken Fiore ¶ 6.) Later, the 2011 Collective Bargaining Agreement expanded the game-day roster from 45 players to 46, while keeping the broader 53-player roster in place. (*Id.* ¶ 8.) Because of the non-static nature of these roster sizes, the Parties did not define the Active List in the Settlement Agreement by reference to a given number of players.

Season under the Settlement's terms, a player must show that he was on a Member Club's "Active List"—namely, players on the 45-player game-day roster—on the date of three or more regular or post season games, *or* on the Active List on the date of one such game and then spent two games on the injured reserve list *or inactive list due to a concussion or head injury*.

The Settlement Agreement's definition of the Active List confirms the point:  It is the list of players "eligible" to play for a Member Club "on a particular game day"—the key distinction between a player on the 45-player roster (someone who is eligible to play) and the remaining eight players on the 53-player roster who have been deemed ineligible to play, namely those on the "inactive list."  These interpretations are the only explanations of the Settlement Agreement's defined terms that do not render meaningless provisions of the Settlement Agreement and are consistent with the facts of NFL roster operation.

The Special Master Ruling, by contrast, erroneously determined that a player who was placed on the inactive list *on game day*—even when *not* due to a concussion or head injury—earns credit towards an Eligible Season because he purportedly was on the "Active List" "on the day of" the game, even if he was not eligible to play in the game. To give meaning to the language of the Settlement that provides credit to a player only when placed on the inactive list *due to a concussion or head injury*, the Special Master Ruling held that such limitation would apply when a player was placed on the inactive list prior to game day.  The Special Master's interpretation of the Settlement Agreement, however, is belied by the plain meaning of the Settlement Agreement and the facts.

*First*, the Special Master Ruling ignores entirely the word "eligible" in the "Active List" definition. By definition, players placed on the inactive list, at any time, are ineligible to play. Thus, only players on the 45-player roster are eligible to play on game day and are on the Active List.

*Second*, because the Special Master incorrectly interpreted the Settlement's Active List to mean the 53-player seasonal roster on the day of a Member Club's game, that interpretation impermissibly renders meaningless the Settlement provision that provides credit toward an Eligible Season *only* when a Member Club places a player on the inactive list or injured reserve list *due a concussion or head injury*. Specifically, all players on the inactive list remain on the 53-player seasonal roster, and therefore, under the Special Master Ruling, would be on the "Active List" on game day and receive Eligible Season credit. For example, under this interpretation of the Active List, a player placed on the inactive list on Wednesday due to an *ankle injury* still would be on the Active List "on the day of" the game and thus earn credit toward an Eligible Season. The Special Master Ruling noted that such result would be contrary to the terms of the Settlement Agreement (*see* Special Master Ruling at 5), which therefore confirms the error of the Special Master's interpretation of the Settlement Agreement definition for the Active List.

*Third*, the Special Master's interpretation of the Settlement Agreement also rested on the false factual premise that Member Clubs placed players on the inactive list earlier in the week than game day. (*See id.*) But since 2001, Member Clubs can *only* place a player on the inactive list *on game day*. Thus, at the least, the Special Master Ruling renders the "due to a concussion or head injury" provision meaningless because, under

the Special Master Ruling, all inactive players since 2001—regardless of the injury—will be on the "Active List" "on the day of" the game under the Special Master's erroneous ruling.

Finally, although the Parties could have negotiated to provide Eligible Season credit for players who practiced during the week but were placed on the inactive list each game day, that is not what occurred.  Such line drawing always ensues in the negotiation of settlements, and the NFL Parties are entitled to enforce the Agreement as intended, negotiated and judicially approved.

For these reasons, and those set forth below, the NFL Parties respectfully request that the Court overrule the Special Master Ruling and order that the Settlement Agreement's definitions of Eligible Season and Active List be enforced as negotiated and agreed to by Co-Lead Class Counsel and the NFL Parties, as set forth herein.

## **BACKGROUND**

### A.   The Settlement Agreement's Definitions of Eligible Season and Active List

Under the Settlement Agreement, an Eligible Season means "a season in which a Retired NFL Football Player or deceased Retired NFL Football Player was: (i) on a Member Club's Active List on the date of three (3) or more regular season or postseason games; or (ii) on a Member Club's Active List on the date of one (1) or more regular or postseason games, and then spent at least two (2) regular or postseason games on a Member Club's injured reserve list *or inactive list due to a concussion or head injury*." (Settlement Agreement § 2.1(kk) (emphasis added).)

The Settlement Agreement defines Active List as "the list of all players physically present, *eligible* and under contract *to play for a Member Club on a particular game day*

within any applicable roster or squad limits set forth in the applicable NFL or American Football League Constitution and Bylaws."  (Settlement Agreement § 2.1(a) (emphasis added).)

Although NFL roster sizes have changed over time, since 1993, Member Clubs have maintained a 53-player roster for the regular season (the seasonal roster), and further reduce their roster of players eligible to play on game day to the 45-player (and, since 2011, 46-player) "Active List" or game-day roster.  (Ex. 1, Fiore Decl. ¶¶ 6, 8.)  The Member Club must place the other 7 or 8 players who are on the seasonal roster onto the inactive list for the game—which renders them ineligible to play, or to participate in warm-ups, dress in uniform, or represent the team in pregame ceremonies.  (*Id*. ¶ 7.)[2]  In other words, consistent with the Parties' intent to credit an Eligible Season only to those players who actually were eligible to play in a game, the Settlement Agreement's Eligible Season and Active List definitions distinguish between players who were *active* for games (and eligible to play) and those players who were *inactive* for games.

The Settlement Agreement language specifying the *eligibility to play* on a particular game day is critical because the term "Active List" as used in the NFL Constitution and Bylaws—as opposed to in the NFL Settlement Agreement—can have either a broad or narrow meaning depending on how it is used.  At its broadest, "Active List" under the NFL Constitution and Bylaws means all players eligible to play during the *season*—whether the preseason, regular season or postseason.  (*See*, *e.g.*, Exhibit 1, 2006 NFL Constitution and Bylaws § 17.2.)  But as stated above, "Active List" is also the

---

[2]  *See also* Exhibit 1, 2006 NFL Constitution and Bylaws § 17.3 (ninety minutes prior to kickoff on game day, "each club is required to establish its 45-player Active List for the game by notifying the Referee of the players on its Inactive List for that game").  These rules are also embedded in the Player Personnel Handbook governing roster operations.  (Ex. 1, Fiore Decl. ¶ 3.)

term used in the NFL Constitution and Bylaws to refer specifically to the 45-player roster eligible to play in a *particular game*.   The Settlement Agreement specifically and expressly defined Active List to capture that narrower meaning and distinguish between players who are eligible and ineligible to play on game day.

### B.       The Special Master Ruling

The Special Master Ruling interpretation of the "Eligible Season" and "Active List" definitions deviated from their plain and intended meaning by erroneously concluding that *any* Retired NFL Football Players who were on the 53-player seasonal roster "on the calendar day of their Club's particular regular season or postseason game shall receive credit toward that game for the purposes of calculating an Eligible Season, even when the Player was placed on the Inactive or Injured Reserve Lists prior to the start of the game."  (Special Master Ruling at 8.)   In purported support, the Special Master relied heavily on the temporal part of the Eligible Season definition requiring the player to be on the Active List "on the date of" a game, and the Active List definition requiring the player to be present, eligible and under contract to play "on a particular game day." (*Id*. at 6-7.)  The Special Master misunderstood the "on the date of" and "on a particular game day" language to mean that if a player was on the 53-player seasonal roster the morning of a game, but placed on the inactive list prior to the game—which would indisputably make him ineligible to play on game day—that player would still somehow be on the Active List for purposes of receiving an Eligible Season.

In turn, with an express understanding that such broad interpretation could not read out of the Eligible Season definition the provision that credits only games for which a player was on the inactive list "due to concussion or head injury," the Special Master held that such provision would still be given effect if it is the applicable rule for crediting

players placed on the inactive list on days *prior to the date of the game*. (*Id*. at 5.)  But since 2001, Member Clubs can *only* place a player on the inactive list on the day of the game. (Ex. 1, Fiore Decl. ¶ 11.)[3]  Simultaneously, Member Clubs deem a player "eligible" to play by establishing the 45-player roster—that is, the Active List for game day—by notifying the referee of the players on the inactive list.

For the reasons below, the Special Master's stretched interpretation of the Settlement Agreement's language conflicts with the Settlement Agreement's plain meaning, the law, and the facts.

## ARGUMENT

### I.   The Settlement Agreement Definitions Are Clear and Unambiguous

Section 27.1(a) of the Settlement Agreement provides that the Settlement Agreement "will be interpreted and enforced in accordance with the laws of the State of New York, without regard to conflict of law principles."   Under New York law, settlement agreements are interpreted like any other contract, and courts are bound to the "plain terms" of the contract and must interpret the contract according to the intent of the parties if such intent is "discernible from the plain meaning of the provisions of the agreement." (Special Master Ruling at 4-5 (quoting various controlling case law).)   In addition, the contract must be interpreted in a manner that does not render any of its provisions meaningless.  (Special Master Ruling at 5; *see also In re G-I Holdings, Inc*., 755 F.3d 195, 202 (3d Cir. 2014) (holding "[a] court should interpret the contract in such a way as to not render any of its provisions illusory or meaningless").)

---

[3]   For the 1993 through 2000 seasons, Member Clubs placed four players on the inactive list on Friday and then another four players on game day. (*Id*. ¶ 11.)  For the 1988 through 1992 seasons, Member Clubs established the 45-player active list and a two-player inactive list on the business day prior to the game. (*Id*.)  For the majority of prior seasons, there was no inactive list, with limited exceptions and varying structures. (*See id*. ¶ 9.)

Here, the Settlement Agreement unambiguously reflects the intent of the Parties to award Eligible Season credit to those players eligible to play in the game and only to those ineligible because of a specific type of injury—a concussion or head injury. That intent is made clear by the Settlement's definition of Active List, which specifically and expressly incorporates the requirement that the player is "*eligible*" to play "*on a particular game day*." (Settlement Agreement § 2.1(a) (emphasis added).) The concept of playing eligibility distinguishes those players declared *active* for play (*i.e.*, on the 45-player game-day roster) as opposed to *inactive* (*i.e.*, on the 53-player seasonal roster but not on the 45-player roster) for the game. Indeed, the very purpose of the NFL's inactive list is to reduce the 53-player seasonal roster to 45 players eligible for the game. (*See* Ex. 1, Fiore Decl. ¶ 7.)

For this reason, the Settlement Agreement is clear that, contrary to the Special Master Ruling (at 6-7), the Active List is limited to those players actually eligible to play in the game on game day—the 45-player roster—and an Eligible Season is awarded to only those players unless they are on the inactive list because of a concussion or head injury. Nowhere do those definitions state, as they easily could have, that players placed on the inactive list for any reason on game day still receive an Eligible Season. To the contrary, the Settlement Agreement is clear that the only limited path towards Eligible Season credit is for a player on the inactive list because of a concussion or head injury.

## II.   The NFL's Interpretation Is the Only One That Does Not Render Meaningless a Contract Provision and Is Consistent With the Facts

Tellingly, the NFL's interpretation of the defined terms is the only one that does not render other provisions meaningless and the only one consistent with the facts of NFL roster operation.

*First*, the Special Master's alternative interpretation of the Settlement Agreement's definition of Active List to mean the 53-player seasonal roster as of the "calendar day" of the game would render meaningless the Settlement provision that only provides players on the inactive list *due to a concussion or head injury* with credit towards an Eligible Season because the players on the 53-player roster who are deemed ineligible would receive credit when inactive for *any* reason.  This is because players on the inactive list *remain on the 53-player seasonal roster*.  (Ex. 1, Fiore Decl. ¶ 10.)  Thus, if Active List is interpreted to mean the 53-player roster, as the Special Master erroneously ruled, an inactive player is *always* on the Active List "on the date of" a game, regardless of the day of the week the Club placed him on the inactive list, and therefore would always receive Eligible Season credit under the Special Master's interpretation. Moreover, under the Special Master Ruling, any player declared ineligible and thus "inactive" the morning of a game would earn Eligible Season credit regardless of the reason he was declared inactive.

*Second*, the Special Master's interpretation rested on the flawed premise that Member Clubs placed players on the inactive list earlier in the week than game day.  (*See* Special Master Ruling at 5.)  But since 2001, Member Clubs can *only* place a player on the inactive list *on game day*.  (Ex. 1, Fiore Decl. ¶ 11.)  For these players, there can be no distinction that credits players towards an Eligible Season when placed on the inactive list due a concussion of head injury on game day but not if placed on the inactive list earlier in the week.

In sum, because the *only* interpretation of the Settlement Agreement that does not render meaningless the inactive list limiting provision, and is consistent with fact, is that

"Active List" means the 45-player roster eligible to play on game day, then "the NFL's interpretation of this provision must control" under basic rules of contract interpretation. The Special Master Ruling conceded as much by stating "[t]he Special Master concurs that unless there is a possible interpretation of § 2.1(kk) that credits all games in which a Player was placed on the Inactive List 'on the date of' the game *without* rendering superfluous the provision crediting a specified subset of games spent on the Inactive List, then the NFL's interpretation of this provision must control."  (*Id*. at 5.)

**III.**   **The Line Drawing in the Settlement Agreement Was Fair and Approved**

The NFL Parties do not contest that the negotiated parameters of an Eligible Season result in a player on the practice squad for a season earning 0.5 Eligible Seasons while a player who was on the 53-player seasonal roster yet never made a 45-player Active List for game day earns no Eligible Season credit.  There was—and always will be—line-drawing that occurs in this type of Settlement.  But as the Court wrote with respect to training camp and preseason participants who do not receive Eligible Season credit, "[w]hile the Settlement may have been more generous if [those] Retired Players received Eligible Season credit," "the lack of credit does not render the Settlement unfair."  *See In re Nat'l Football League Players' Concussion Injury Litig*., 307 F.R.D. 351, 410 (E.D. Pa. 2015), *amended* No. 2:12-MD-02323-AB, 2015 WL 12827803 (E.D. Pa. May 8, 2015), *and aff'd* 821 F.3d 410 (3d Cir. 2016), as amended (May 2, 2016). The NFL Parties are entitled to the benefit of their bargain.

## CONCLUSION

For the reasons set forth herein, the NFL Parties respectfully request that the Court reverse the Special Master Ruling and adopt the NFL Parties' interpretations of the Settlement Agreement definitions of "Eligible Season" and "Active List."

Dated:  January 12, 2018

Respectfully submitted,

PAUL, WEISS, RIFKIND,
    WHARTON & GARRISON LLP

*/s/ Brad S. Karp*
Brad S. Karp
Bruce Birenboim
Lynn B. Bayard
Douglas M. Burns
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email:  bkarp@paulweiss.com

*ATTORNEYS FOR THE*
*NATIONAL FOOTBALL LEAGUE*
*AND NFL PROPERTIES LLC*

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : : : | No. 2:12-md-02323-AB |
| | : | MDL No. 2323 |
| | : : | **Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated,* Plaintiffs, | : : : : : | CIVIL ACTION NO: 14-00029-AB |
| v. | : : | |
| National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc., Defendants. | : : : : : : | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | : : : : | |

## DECLARATION OF KENNETH FIORE

I, Kenneth Fiore, hereby declare as follows:

1.      I am Vice President, Player Personnel at the National Football League.  I have personal knowledge of the facts set forth herein and if called and sworn as a witness, I could and would testify competently thereto.

2.      The Player Personnel Department at the National Football League oversees the operation of Member Club rosters and contracting, including transactions through which Member Clubs sign and release players, or place players on various roster lists, including the Active, Inactive, Reserve/Injured, Reserve/Physically Unable to Perform, Reserve/Non-Football Illness/Injury, Reserve/Suspended, Practice Squad, Exempt, and Future lists.  I submit this declaration to provide the Court with an understanding of how Member Clubs' rosters have

operated in recent decades where relevant to the "Eligible Season" and "Active List" definitions under the Class Action Settlement Agreement (as amended on February 13, 2015).

3.   The detailed rules governing roster construction are included in the annual Player Personnel Handbook provided to Member Clubs.  The general rules are also included in the Constitution and Bylaws of the National Football League and, in certain areas, the Collective Bargaining Agreements governing NFL football.

4.   As a general matter, each NFL Member Club is permitted to keep only a certain number of players on its roster each season.  In addition, each Member Club must further reduce its roster of players who are eligible to play in a specific game.

5.   For several decades, the Constitution and Bylaws has referred to both the list of players eligible to play during a season, and the list of players eligible to play in specific games, as the "Active List."  For this reason, these designations are often referred to colloquially by the number of players they allow, such as the "53-player roster" or "45-player roster" as opposed to the term Active List.

6.   The seasonal Active List consists of all players under contract to a given Member Club who are eligible to play in any preseason, regular season, or postseason game.  The seasonal Active List for the regular season fluctuated in size between 45 players and 49 players over several decades before increasing to its current 53-player limit beginning with the 1993 NFL season.

7.   In turn, Member Clubs each week must decide which players on the seasonal Active List will be placed on the Active List for a given game and which players will be placed on the Inactive List.  Member Clubs establish the Active List by informing the referee which players are on the Inactive List for that game.  The players on the Active List for a game are eligible to play.  The players on the Inactive List for a game generally are not eligible to play, or

2

to participate in game day warm-ups, dressing in game uniforms on game days, or representing their Clubs in pregame ceremonies. For the purposes of this Declaration, I do not address certain exceptions, such as for a third quarterback.

8.      The size of the Active List and Inactive List for a given game also has fluctuated over time. Most recently, the 2011 Collective Bargaining Agreement governing NFL football increased the Active List for a game to 46 players from 45 players, thereby reducing the number of players placed on the Inactive List each game from eight players to seven players.

9.      This general Active List/Inactive List structure has been in place since the 1987 season. Prior to that time, the structure varied. For example, Member Clubs maintained both an Active List and an Inactive List for each game during the 1977 and 1982 seasons, but the Inactive List did not exist for the 1978-1981 and 1983-86 NFL seasons.

10.      When the NFL has maintained the Active List/Inactive List structure, players placed by their Member Clubs on the Inactive List for a game remain on the seasonal Active List. For example, in the 2006 NFL season, Clubs maintained a 53-player seasonal Active List and a 45-player Active List for a given game. Put another way, the eight players placed by a Member Club on the Inactive List for a given game remained on the 53-player seasonal Active List.

11.      In addition, the timing of when Member Clubs are permitted to place players on the Inactive List for a game has changed over time. Beginning with the 2001 NFL season, Member Clubs have been permitted to place players on the Inactive List *only on game day*. From 1993 through the 2000 NFL season, Member Clubs placed four players on the Inactive List on the Friday of a game week and another four players on the Inactive List on game day. For certain earlier NFL seasons, such as from 1988 through 1992, Member Clubs placed players on the Inactive List on the business day prior to the game.

I, Kenneth Fiore, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on this 22 day of December, 2017.

Kenneth Fiore