## RESPONSE IN OPPOSITION TO NFL PARTIES' OBJECTION TO THE SPECIAL MASTER'S RULING ON THE "ELIGIBLE SEASON" DEFINITION

Representative Claimant ███████ files her Opposition to the NFL Parties' Objection

to Special Master Pritchett's application of the "Eligible Season" definition (D.E. 9513, dated Dec.

5, 2017), asking the Court to affirm the ruling and stating the following in support[1]:

### OVERVIEW[2]

███████ a defensive back drafted by ███████, played five, full seasons on their 53-

man roster beginning in 2007-08.  At the conclusion of that same preseason training camp, his

college teammate ███████–who never made the 53-man roster—signed with the ███████

practice squad.  ███ and ███ literally played the same position. Their roles were

indistinguishable, Monday through Saturday; both practiced daily, receiving daily head-hits.  On

Sundays, however, only ███, as a member of the team's Active List, was eligible to play in

games.  Nine weeks into the season, the team released ███ from its practice squad, while ███

remained on the Active List throughout a 20-week regular and post-season.  In this real-life

example, the NFL's rejected application of operative Settlement Agreement ("SA") terms would

have resulted in only ███'s, not ███'s, receiving of any Eligible Season ("ES") credit.  ███

would have received one-half ES; ███████, on the other hand, who played *on the actual team*,

on its Active List for all 20 regular and post-season weeks, would have accrued zero ESs.  As the

Special Master ruled, indeed, this "would lead to an absurd result."  Ruling, at 8.

Beyond simply leading to an absurd result, the NFL's proposed application also radically

departs from the plain meaning of SA §§ 2.1(a) ("Active List") and (kk) ("ES").  These provisions

---

[1] Ms. ███ incorporates by reference and attaches as Exhibits: her Statement of Appeal (Ex "A"); class counsel's briefing as ordered by SM Pritchett (Ex "B"), and SM Pritchett's ruling.

[2] Ms. ███ avoids recapitulating the entirety of the arguments below, referring the Court to the attached briefing while focusing this overview on those issues raised by the NFL Parties' Objection.

allow for ES accrual in one of two ways: *either* by (a) spending three or more regular or post-season games on an "Active List" (the list of "all players physically present, eligible, and under contract to play for a Member Club on a particular game day within *any* applicable roster or squad limits", as defined by the NFL Constitution applicable to the given player); or (b) spending one of these game-weeks on the Active list and two or more inactive due from head injury and/or off of a roster entirely and on "Injured Reserve"[3] due to head injury.  As explained below and supported by a former NFL Executive of the Year (*ex.* "A"), ███████ met the ES criteria under this straightforward, plain-language application of these terms.  The team chose not to play him, but he remained eligible[4] for play each week.[5]

The NFL objects to the Special Master's ruling through two arguments.  First, it asks the Court to ignore the definition of Active List within Section 17.2 of the NFL Constitution & Bylaws, applicable for 07-08, and interpose a separately-defined term from a separate section (17.3) of that NFL Constitution: "45-player Active List."  But the term "45-player Active List" is literally nowhere within the SA, and nowhere is discussed in the SA in terms of eligibility.  The SA references *only* an applicable Constitution's definition of Active List, further describing such an

---

[3] NFL Constitutions denominate three lists through which to categorize fully-rostered (*e.g.*, non-practice squad) players: Active; Reserve (*e.g.*, injuries, retirement, military service); and Exemption (*e.g.*, suspension, death.) Players suffering serious injury are removed from team Active Lists altogether, and placed onto the "Reserve/Injured" list, colloquially known as "Injured Reserve" or "IR."  The IR list is altogether separate from the Active List.

[4] As the NFL points out, at various times throughout the roughly 85 NFL league-years governed by the SA, this structure has changed. *See, Obj.*, at 1, n.1; 14.  For the majority of league-years at issue, some players would be designated "inactive" on calendar dates other than game-day. Regardless, during ██████ ES at issue, as the Special Master also found, he was eligible to play on the date of the game. the Active List definition refers only to those "eligible" to play in games; not those who actually did play.  This Circuit has long observed the distinction between being *eligible* for something versus actually doing it. *See, e.g., United Steelworkers of Am. v. Crane Co.,* 605 F.2d 714, 718 (3rd Cir. 1979) (differentiating pension-eligibility from actual payment of benefits). ██████ remained *eligible* for play, the team's decision *not to actually* play him does not change his eligibility.

[5] Importantly, it frequently happens in the modern NFL that teams "stash" still-developing talents (like ████ in his rookie year) on their Active Lists rather than signing them to practice squads. This prevents other teams from offering these players full, Active List contracts, per CBA rules.  Nevertheless, he was healthy and available all season.

2

Active List as encompassing "*any*" applicable roster or squad limits, *e.g.*, the full roster which is eligible to play.  And while the NFL attempts to explain away—what is at best—an astonishing lack of clarity as being for "ease of reference" and due to the fact that "game day rosters changed at various points in time", this is belied by the comprehensive nature of the SA and further by the fact that it certainly could have referenced the phrase "game day rosters" within § 2.1(a); yet it did no such thing.  Second, the NFL contends that the Special Master's application of these terms renders the latter portion of § 2.1(kk) meaningless, purportedly because every player now receives Active List credit even when inactive for a game due to non-head-injury.  This is simply incorrect.  As the NFL itself points out, the rules governing timing for teams to designate "inactives" changed over time.  This provision retains meaning because there are literally thousands of players who were designated "inactive" on days other than game days.

Special Master Pritchett's application of these terms is the one most consistent with the letter and spirit of the settlement.  As he explained, this construction does not impair the meaning of either term, because the two ES provisions "can be reasonably interpreted to conclude that players who are first placed on the Inactive list 90 minutes before kickoff *were* on the club's Active List 'on the date of' the game …" Ruling, at 5.  Nevertheless, there will continue to be thousands of examples of players designated inactive on days *other than* game day.  Thus, the term retains meaning and does not merely grant an eligible season to every player, as the NFL Defendants seem to suggest.  For these reasons, the Court should affirm the Special Master's application of these terms.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2013, ▓▓▓▓▓▓▓ became a widow and Representative Claimant, ▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ a mere

20 months removed from five full seasons spent on 53-man active lists, whereupon post-mortem examination revealed CTE.  Although Ms. ▮▮▮▮ originally opted out, she reconsidered and released her claims, relying on a seemingly pre-determined Monetary Award of $4,000,000.[6]  But her claim was erroneously calculated to her $800,000 detriment, using the flawed application of SA terms to deny this ES.  Again, had the family of ▮▮▮▮ received an identical Monetary Award, theirs would have included $400,000 from ▮▮▮▮ participation in *half* of a 2007-08 practice-squad season for the Chargers.  Paradoxically, had ▮▮▮▮ not made the 53-man roster and been a practice player, his widow would have fared better than she did with her husband actually having made the team.  Instead, because he was *on the team*—the NFL's reading of the SA left Ms. ▮▮▮▮ to receive *zero* for the same exposures.  Ms. ▮▮▮▮ raised this result's absurdity on appeal, alongside her straightforward argument on the meaning of "Active List."[7]

She included a supporting and unrebutted declaration (*id*) from the 2001 NFL Executive of the year, which clarified that the operative SA term (Active List) in concert with the *applicable* NFL Constitution and Bylaws[8] meant her husband accrued an ES for 2007-08.  *See id.*  The NFL Defendants rebutted ▮▮▮▮'s Active List status for that year by conflating this constitutionally-derived term with a separate defined-term: "45-player Active List."  As Defendants concede[9], such a differentiation (between two purported active lists) is *nowhere* within the SA, even though—as the Special Master's ruling points out—it certainly could have been, had that been the intent.  As

---

[6] This is of course also true with respect to those SCMs playing only one full season in the NFL on a 53-man Active-Roster, without game-play; these SCMs released their claims, understanding they would be BAP-eligible; under the NFL's reading of the SA, players on the Active 53-man roster, inactive for games get absolutely zero BAP benefit yet released their claims forever.  Their counterparts on practice squads would receive an Eligible half-season.

[7] ▮▮▮▮ Appeal at 1-2.  (*Ex. "A"*).

[8] *See* SA § 2.1(a) ("Active List").

[9] NFL Defendants' Opposition to Statement of Appeal at 2; *see also* NFL 27, n.1.

Ms.⬛⬛⬛'s declarant clarified, ⬛⬛⬛⬛⬛ indeed *was* a member of his team's Active List, and this could be the only reasonable interpretation of "Active List", particularly where the SA never references the separately defined term "45-player Active List."   The NFL further responded, echoed in its objection to the ruling, that unless the applicable constitution's definition for "45-player Active List" was substituted for the definition of "Active List", the SA's definition of ES would be "rendered meaningless."   Special Master Pritchett's ruling rebutted the NFL's flawed reasoning.  As he held, "the plain meaning [] is evident: [] players who were on the Active List on the calendar day of their club's regular or post-season game shall receive credit toward that game for the purposes of calculating an ES, even when that player was placed on the Inactive or Injured Reserve Lists prior to the start of the game."  This left intact meaning in both subparts of § 2.1(kk).

## THE NFL PARTIES' ARGUMENTS ARE UNAVAILING

In objecting to the Special Master's ruling, the NFL Defendants continue to advance their we-really-meant-the-45-player-Active-List argument. As discussed above, this does not comport with the terms as defined within the SA.  If one simply reads the provisions at issue alongside whichever NFL Constitution governs, one can only conclude the regular season Active List to be the 53-man roster.  This list comprises the menu from which coaches select players to play.  The NFL conflates the concept of eligibility to play in a game with the actual event of players playing in games.

As the Special Master wrote, "had the parties intended to specify [this], they could have [done so.]" Ruling, at 7.   Excluding seasons fully spent playing football on active rosters would have been easy to explain to Ms. ⬛⬛⬛ and to numerous class-members forever releasing valuable rights on (what would be) mistaken beliefs as to their MAF awards or BAP-eligibility.  The NFL's

preferred application is simply not fairly read from the plain-text of the SA and applicable Constitution.

Their rendered-meaningless argument fares no better, as the Special Master addressed this issue squarely in his ruling.  First, although the NFL claims the Special Master's ruling would result in all players being counted on the Active List, as the NFL's own submissions reveal (*Obj.*, at 7, n.3, 9) this is plainly not the case.  Possibly for that reason, and for the first time, the NFL Defendants additionally ask the Court, on its *de novo* review of a purely legal question, to reconsider this issue through new *evidence*, claimed to support their argument that the prevailing application renders the purported "limiting" term (ES) meaningless.  *Obj.*, 8-9 (*citing Fiore Decl.*) The Court should decline this invitation as it falls beyond the scope of *de novo* review, *e.g. Mills v. Philadelphia Gas Works*, 264 Fed App'x 239, 241-42 (3rd Cir. 2008) (refusing to consider new affidavits on *de novo* review of summary judgment.)  But even if the Court considered this evidence, the NFL's position would be no less infirm.  The NFL's evidence merely establishes that in many—and indeed most—NFL league years, players could be designated as inactive prior to the date of the game for injury *or* on the date of the game.  Thus, it is simply inaccurate to argue the Special Master's ruling renders meaningless the term "inactive list."

**CONCLUSION**

This Court should affirm the Special Master's ruling and clarify that ███████'s rookie season in 2007-08 spent on the Active List earns his widow the corresponding ES.

Dated: February 9, 2018                                     Respectfully submitted,

                                                            THE BRAD SOHN LAW FIRM, PLLC
                                                            */s/ Bradford Rothwell Sohn*_____
                                                            Bradford R. Sohn
                                                            2600 S. Douglas Road, Suite 1007

Coral Gables, Florida 33134
Telephone: (786) 708.9750
Facsimile: (305) 397-0650
Email: Brad@Sohn.com
ATTORNEY FOR CLAIMANT