# SEEGERWEISS LLP

March 15, 2018

**Via ECF**
Honorable Anita B. Brody
United States District Judge
Eastern District of Pennsylvania
601 Market Street
Philadelphia, PA 19106

      Re:    *In re National Football League Players' Concussion Injury Litigation*,
              No. 12-md-2323-AB
              Co-Lead Class Counsel's Response to letters at ECF Nos. 9764 & 9766

Dear Judge Brody:

      As Co-Lead Class Counsel, I write in response to the letter to the Court from counsel for Thrivest Specialty Funding, LLC ("Thrivest"), dated March 9, 2018, requesting a conference "to clarify the intended scope of the Court's Explanation and Order and, to the extent the Court intended it to apply to Thrivest or to dispose of the [Motion to Direct Claims Administrator to Withhold [ECF No. 8470] ("Motion to Withhold")], to request clarification both with respect to Thrivest's appellate rights and the Claims Administrator's implementation of the Court's directives."  ECF No. 9764, at 1-2.  Subsequently, counsel for the RD Legal Entities wrote to the Court on March 12, 2018, *see* ECF No. 9766, and joined in the request for a conference in order to address the issues raised by Thrivest, as well as requesting to be heard on issues raised in RD Legal's Motion for a Stay Pending Appeal [ECF No. 9761].

      I do not oppose the requests for a conference.  Assuming that the Court grants the requests of Thrivest and RD Legal, I respectfully request that the conference be held on the same day as the hearing to address issues related to the Cambridge Entities, which is currently set for April 2, 2018. ECF No. 9750.[1]

      Further, with the limitation set forth below, and as will be detailed and qualified in our formal response, I do not oppose RD Legal's Motion for a Stay Pending Appeal regarding the December 8, 2017 Explanation and Order determining that purported assignments were void, invalid and without force and effect, pursuant to the terms of the finally-approved Settlement Agreement, and the February 20, 2018 Order detailing administratively how the Claims Administrator should handle purported assignments.  My non-opposition is limited to application of the stay to Class Members' purported assignment arrangements with RD Legal only.  To be clear, I do not agree that application of the December 8, 2017 and February 20, 2018 Orders should be

---

[1]  As noted in the Status Report to the Court regarding the Cambridge Entities and the issue of retirement monies, Ms. Milon of Cambridge Capital Group has represented that the Cambridge Entities still have not retained alternative counsel since Mr. Black refused to continue as counsel, and she is requesting a continuance.  *See* ECF No. 9778.

stayed as to any other Third-Party Funders. With the sole exception of RD Legal, no funder has appealed the December 8, 2017 Order. Because the time to appeal that Order has passed, I do not agree that a stay should apply to any other Third-Party Funders. I plan to set forth my position in a formal response to RD Legal's Motion to Stay, which response is due by March 21, 2018.

As to Thrivest's assertions contained in its letter, I submit that the Explanation and Order, dated December 8, 2018, was abundantly clear. The Explanation and Order did reference RD Legal by name in connection with Judge Preska's referral of the discrete issue of whether the Settlement Agreement in this case prohibited assignments, which this Court held that it did. Nevertheless, in the prefatory paragraph and elsewhere in the Explanation and Order, this Court refers to the attempts by Third-Party Funders, in general, to enter into assignments that were prohibited under the "unambiguous language of the Settlement Agreement." ECF No. 9517, at 1.

Thrivest makes much of the fact that its counsel contacted the Clerk of Court, who confirmed that Class Counsel's Motion to Withhold has not yet been marked as decided. Of course, that is no surprise, because the Explanation and Order decided the issues related to assignments, but not the entitlement to percentage contingency fees by claims services providers, Case Strategies Group (formerly, NFL Case Consulting) and Legacy Pro Sports. As such, the Motion to Withhold could not be marked as decided.

Nevertheless, the Explanation and Order did resolve the issues presented in Class Counsel's Motion to Withhold, as related to purported assignments and the Third-Party Funders who attempted to enter into such prohibited assignments with Class Members. The Motion to Withhold is moot as to Third-Party Funders.

Further, Thrivest took full advantage of the opportunity to file a brief in response to the Motion to Withhold. That Thrivest did not participate in the briefing related to Judge Preska's referral of the assignment issue before her related to RD Legal is immaterial. For Thrivest to claim a lack of notice and an opportunity to be heard is disingenuous. Thrivest briefed the issues that were unambiguously decided in the Explanation and Order. This Court heard Thrivest's arguments; it simply did not agree with them.

Specifically, as to the first of the three aspects upon which it seeks clarification, Thrivest begins with a faulty premise. The Court did not find "assignment agreements void necessitating rescission," as Thrivest contends. ECF No. 9764, at 2. Bolstered by a misstatement of this Court's determination related to rescission, Thrivest then cites case law and argues that it is entitled to statutory interest of 9% per annum under New York law. The case cited by Thrivest does include the language Thrivest quotes, but it does not stand for the proposition that "even where a contract is void *ab initio*, New York law requires the payment of 9% statutory interest," ECF No. 9764, at 2, as one might think from reading Thrivest's letter. *See 11 S. Laundry, Inc. v. MCD Assets, LLC*, 39 Misc. 3d 1218(A), 972 N.Y.S.2d 143 (table), 2013 N.Y. Slip Op. 50658(U) 2013 WL 1788022, at *6 (N.Y. Sup. Ct., Westchester Co. Apr. 18, 2013).

Further, this Court specifically stated that "*under the principles of rescission*, Class Members should return to the Third-Party Funder the amount already paid to them." ECF No. 9517,

at 5 (emphasis added). Before making this pronouncement, the Court stated that it "has little sympathy for a Third-Party Funder that will not receive a return on its 'investment.'" The Court also went on to note that should a Third-Party Funder be willing to accept rescission under the terms the Court was offering, that is, no interest[2] and no direct repayment by the Class Member, then, "the Claims Administrator will be authorized to withhold—from the Class Member's monetary award—the amount already paid to the Class Member and return it to the Third-Party Funder." *Id.*[3]

The unreported decision cited by Thrivest, *11 S. Laundry, Inc.* is inapposite, and to the extent it would be applicable, it is more helpful to Class Counsel's position. That case involved a breach of contract and fraudulent inducement action, in which the plaintiffs alleged that their purchase of a laundromat was based upon false representations by the defendant, including the failure of the defendant, who was the owner of the business and partial owner of the building, to inform the plaintiffs that the building was about to be foreclosed upon by the bank. The court agreed with the plaintiffs, holding that they were fraudulently induced into buying the business and that defendant's acts and omissions constituted a material breach. Because the court found that the plaintiffs had been fraudulently induced, they had three options to choose from in electing their damages. The plaintiffs chose rescission of the contract, provided that such did not result in unjust enrichment to the defendants. The court determined that to prevent such unjust enrichment, the restoration order was conditioned upon the defendant returning the plaintiffs' $50,000 deposit, plus 9% statutory interest. Indeed, the *11 S. Laundry* case emphasizes that the remedy of rescission is an equitable one and it is for the Court to balance the equities. That is exactly what this Court did in fashioning a remedy.[4]

---

[2] In criticizing the Claims Administrator, Thrivest argues: "[B]y purporting to require Thrivest and others to accept return of principal without imposing statutory interest, the Claims Administrator is implementing a process that is contrary to New York law." The Court, though, already had made the equitable determination that each Third-Party Funder would not receive a "return on its 'investment,'" and in this respect the Claims Administrator was carrying out the Court's directive.

[3] Thrivest also criticizes the Claims Administrator because "[t]he 'Rules' do not account for the possibility that a Class Member may not recover …[.]" ECF No. 9764, at 3 n.2. By virtue of the fact that the Court fashioned the possible remedy to involve withholding monies from a monetary award by the Claims Administrator, it is evident that the Court anticipated that unless and until the Class Member recovers, the Third-Party Funder gets nothing. That is the deal the Third-Party Funders struck in offering advances on a non-recourse basis.

[4] The *11 S. Laundry* court held:

> Rescission is an equitable remedy; therefore, whenever the court rescinds a contract, it has the duty to place the parties where they were before the vitiated contract was made[.]" … "If complete restoration is impossible the terms upon which rescission will be granted rest within the *sound discretion of the court*[.]" … "*The court should adjust the equities* between the parties to avoid unjust enrichment (CPLR 3004) in order that no one be placed in a better position after rescission than when the contract was executed[.] …

Honorable Anita B. Brody
March 15, 2018
Page 4

      As to the second and third aspects upon which Thrivest seeks clarification, these issues are probably best dealt with through input from the Claims Administrator and the Special Masters, who developed and promulgated the forms and rules relating to assignments, either at, or in advance of, the conference.

      I thank the Court for its consideration of this submission.

                            Respectfully,

                            */s/ Christopher A. Seeger*
                            Christopher A. Seeger
                            *Co-Lead Class Counsel*

cc (via email to counsel not on ECF):

Bridget Giroud, Esquire
Marissa Parker, Esquire
Raul J. Sloezen, Esquire
Martin L. Black, Esquire
Gail Milon
Mark Spund, Esquire
William P. Bray, Esquire
Kenneth Stout, Esquire
Lowell Wayne Finson, Esquire
Matthew Chait, Esquire
Thomas R. Hurd, Esquire
Mark S. Melodia, Esquire
Nipun J. Patel, Esquire
Ricardo A. Reyes, Esquire
Lee M. Epstein, Esquire
James Kim, Esquire

---

      CPLR § 3004 specifically addresses plaintiffs' concern and *allows a court* to "make a tender of restoration a condition of its judgment" and *make such other equitable adjustments in its judgment* so as to avoid unjust enrichment to any party.

2013 WL 1788022, at *6-7 (citing authorities; internal quotation marks omitted; emphasis added).

## **CERTIFICATE OF SERVICE**

It is hereby certified that a true and correct copy of the foregoing was served electronically via the Court's electronic filing system on the date below upon all counsel of record in this matter. True and correct copies of the foregoing were served via email upon the counsel listed as being carbon copied on this letter who are not on ECF.

Dated: March 15, 2018

*/s/ Christopher A. Seeger*
Christopher A. Seeger
