# Law Offices of Raul J. Sloezen, Esquire
Member of New York and New Jersey Bars

| **New Jersey Office** | **New York Office** |
|---|---|
| 18 Hasbrouck Ave     Emerson, New Jersey 07630 | 475 Tuckahoe Road, Suite 207   Yonkers, New York  10710 |
| Telephone: (973) 928-6821      Fax: (201) 606-8203 | Telephone: (646) 278-4146          Facsimile: (646) 277-1154 |
| Cellular: (201) 658-6483   Email: rjsloezen@gmail.com | *Please Reply to the New Jersey Office* |

March 16, 2018

Via ECF
United States District Judge
Eastern District of Pennsylvania
601 Market Street
Philadelphia, PA 19106

      Re:    Cash4Cases, Inc. Contracts/NFL Players' Concussion Injury Litigation: No.: 2:12-md-02323-AB

Dear Judge Brody,

I am the attorney for Cash4Cases, Inc., ("C4C") and Atlas Legal Funding I, LP, Atlas Legal Funding II, LP, Atlas Legal Funding III, LP and Atlas Legal Funding, LLC (the "Atlas Entities") regarding the above-captioned matter. This letter is submitted in order to join in the request by Thrivest Specialty Funding, LLC ("Thrivest") to schedule a conference regarding the Court's Orders dated December 8, 2017 and February 20, 2018 and the Motion for a Stay Pending Appeal filed by RD Legal Funding Partners, LLC, RD Legal Finance LLC, RD Legal Funding, LLC and Roni Dersovitz ("RD"). It is also submitted in response to the letter electronically filed yesterday by Co-Lead Class Counsel, Christopher A. Seeger, Esq. ("Seeger") At the outset, it should be noted that none of the arguments raised herein should be imputed to RD or Thrivest.

Both Atlas and C4C were named in the Motion to Withhold Funds filed by Mr. Seeger but were not included in the Motion that was directed at RD (the "RD Motion").  Importantly, neither the RD Motion, nor the Motion to Withhold specifically addressed the validity of the C4C or Atlas contracts.

C4C and Atlas jointly filed a Motion to Intervene for the sole purpose of opposing the Motion to Withhold, attaching their opposition to  the Motion to Withhold on jurisdictional grounds, in part for the ability to appeal a decision on the Motion to Withhold that might be considered detrimental to C4C and Atlas.  The Court has not ruled on either the Motion to Withhold or the Motion to Intervene. Mr. Seeger states in his letter dated March 15, 2018 that the Motion to Withhold was made moot by the Court's December 8, 2017 Order and therefore, there is no need to rule on the Motion to Withhold. However, the Court has never ruled on the Motion to Intervene, leaving C4C and Atlas in "limbo".

In the letter submitted by Thrivest, Mr. Buckley noted that Thrivest did not participate in the briefing leading up to the December 8, 2017 Order and, therefore, it was not clear that the order applied to Thrivest. Additionally, Thrivest raised three other issues: 1) whether the Court's order finding the assignment contracts void and therefore, subject to rescission, is improper because the

Third Party Funder is entitled to a return of the status quo, i.e., position prior to the contract and return of all monies paid out plus 9% statutory interest; 2) the calculation of the amount of money to be returned to the Third Party Funder, i.e., does that amount include paid to satisfy tax liens, judgments or other obligations on behalf of Class Members; and 3) that the "Rules Governing Assignment of Claims" promulgated by the Claims Administrator, deprives the Third Party Funder of an opportunity to be heard, but also fails even to provide the funder with notice.

Mr. Seeger stated in his letter yesterday that he does not oppose the request for a conference and that he does not oppose the Motion for a Stay Pending Appeal, with certain limitations, but only as to RD. The reason for this, according to Mr. Seeger, is that none of the other Third Party Funders filed a Motion for a Stay, nor have they filed an appeal of the December 8, 2017 Order. According to Mr. Seeger, those non-appealing Third Party Funders are therefore subject to the December 8, 2017 Order. C4C and Atlas respectfully disagree.

The Court has yet to grant or deny the Motion to Intervene of C4C and Atlas. They are non-parties. As a general matter, only parties to a lawsuit or those that properly become parties may appeal an adverse judgment. *Marino v. Ortiz,* 484 U.S. 301 (1988); *U.S. v. Stoerr,* 695 F.3d 271 (3rd Cir. 2012). In *Marino,* the U.S. Supreme Court noted that there are exceptions to the rule that only a party may file an appeal of a ruling, but noted that the better practice is for such a non-party to seek intervention for purposes of appeal, as denials of such motions are, of course, appealable. C4C and Atlas attempted to do this, but the Court has not addressed that motion.

Furthermore, the December 8, 2017 Order was not a final order. A district court's decision is considered final for purposes of appellate jurisdiction when it ends litigation on the merits and leaves nothing for the court to do but execute judgment; conversely, if the order specifically contemplates further activity by the District Court beyond the ministerial, it is not considered final. *See Berke v. Bloch,* 242 F.3d 131 (3rd Cir. 2001).

Here, the December 8, 2017 Order clearly stated, "Further instructions to the Claims Administrator will follow." This clearly contemplates further action by the Court.

In Mr. Seeger's response to Thrivest's letter, he stated, "As to the second and third aspects upon which Thrivest seeks clarification, these issues are probably best dealt with through input from the Claims Administrator and the Special Masters, who developed and promulgated the forms and rules relating to assignments, either at, or in advance of, the conference." (p. 4.) Mr. Seeger's own letter, therefore, suggests that the disbursement of the settlement funds was not a "ministerial act" since forms and rules had to be set up as a result of the December 8, 2017 Order.

Nevertheless, the standing to appeal is a separate concept from Article III standing; a party has Article III standing if it satisfies the "case-or-controversy" requirement, whereas a party has standing to appeal if it is "aggrieved" by the district court's order or judgment. *U.S. v. Stoerr,* 695 F.3d 271 (3rd Cir. 2012) In order for a non-party to file an appeal of an order, they must meet three conditions: 1) equities favour the appeal; 2) non-party has participated in some way in the proceedings before the district court; and 3) the non-party has a stake in the outcome of the district court proceedings, which is discernable from the record. *Caplan v. Fellheimer, et al,* 68 F.3d 828 (3rd Cir. 1995). C4C and Atlas believe that they meet all three of the criteria to file an

appeal. Therefore, C4C and Atlas intend to appeal the Court's February 20, 2018 Order instructing the claims administrator in the coming days if the Court takes no further action.

Additionally, on the morning of March 15, 2018, prior to Mr. Seeger filing his letter, I emailed a letter to Orran Brown, Esq., the Claims Administrator, on behalf of C4C, and asked for clarification of certain issues, many of which were raised in Mr. Buckley's letter. **(See attached letter dated March 15, 2018.)** Of particular importance in that letter, I pointed out to Mr. Brown that ¶24 of C4C's contract states that "[i]f any provisions of this Agreement shall be declared unenforceable, void or invalid by a court of competent jurisdiction, such void or invalid provisions shall not in any way impair the whole Agreement, the remaining provisions shall remain in full force and effect." This clause raises two pivotal issues: 1) how much is C4C entitled to under the principles of rescission; and 2) whether, despite the voiding of the assignment provision, C4C is still entitled to payment pursuant to the remaining terms of the Contracts.

1. **Amount C4C is entitled to under theory of Rescission**

Regarding the issue of rescission, *Lenel Systems International, Inc. v. Smith,* 966 N.Y.S.2d 618 (4th Dept. 2013) stated:

> Rescission is an equitable remedy (*see* Singh v. Carrington, 18 A.D.3d 855, 857, 796 N.Y.S.2d 668), which "rests on the equitable principle that a person shall not be allowed to enrich himself [or herself] unjustly at the expense of another" (*Miller v. Schloss,* 218 N.Y. 400, 407, 113 N.E. 337). The effect of rescission "is to declare [a] contract void from its inception and to put or restore the parties to status quo" (*Cusack v. American Defense Sys., Inc.,* 86 A.D.3d 586, 588, 927 N.Y.S.2d 381).

In some of the contracts entered into by C4C, as well as other Third Party Funders, the companies paid off prior Third Party Funders who previously made advances to the Class Member. Under one reading of the Court's Orders and the Waiver, the only money that would be payable to the Third Party Funder would be the money paid directly to the Class Member. However, under the law of rescission, the Third Party Funder should be paid back the amount paid directly to the Class Member, plus the amount paid to a broker and a prior Third Party Funder. If the Orders and Waiver are interpreted to mean that the Class Member is permitted to retain the funds they originally received from the prior Third Party Funder without the current Third Party Funder receiving reimbursement, this will result in an unjust enrichment of the Class Member, which violates New York's law regarding rescission, and does not restore the status quo.

2. **Amount C4C Entitled to Pursuant to the Contracts**

There are several other major issues that remain unclear from the Court's 12/8/2017 and 2/20/2018 Orders. Specifically, 1) how much will be paid to the Third-Party Funder (i.e., just the amount paid directly a Class Member or the amount paid directly to a Class Member, plus the broker fee that was paid at the direction of the Class Member, plus a payoff to a prior Funding

Company, etc., as discussed above); 2) what happens if the Third Party Funder agrees to accept the principal paid to the client but the Class Member refuses to sign off on the Waiver—does the Administrator just decide to pay all of the settlement proceeds to the Class Member, as suggested by the website, or will the Claims Administrator hold some portion of the proceeds, and, if so, how much?; 3) under those circumstances, will the Claims Administrator retain the amount due pursuant to the Contract, or just the amount paid directly to the Class Member; 4) what is the Claims Administrator's position regarding contracts that account for a court invalidating part of the contract, and therefore may still be enforced by other means?; and 5) what happens if the Class Member does not have an attorney; 6) what happens if the Class Member does not agree on the amount to be paid to the Third Party Funder?

My letter to Mr. Brown went on to analyse the interplay of the December 8, 2017 and February 20, 2018 Orders and Virginia Rule of Professional Conduct 1.15. Specifically, if there is a dispute as to how much should be disbursed back to the Third Party Funder, then Mr. Brown, as a fiduciary, cannot release the funds to the Class Member. Instead, under Rule 1.15, the Claims Administrator must hold those funds or put them into court pending a determination by the appropriate forum. In the case of C4C and Atlas, that appropriate forum is the American Arbitration Association. I have not yet heard back from Mr. Brown regarding my letter.

In order to resolve some of these issues, it is respectfully requested that the Court permit C4C and Atlas to participate in the conference requested by Thrivest. Thank you.

Respectfully,

Raul J. Sloezen, Esq.

RJS/jks

Cc:   Bridget Giroud, Esq.
      Marissa Parker, Esq.
      Christopher A. Seeger, Esq.
      Terri Anne Benedetto, Esq.
      Jaeson Birnbaum
      Bruce Sandys