## Law Offices of Raul J. Sloezen, Esquire
### Member of New York and New Jersey Bars

| New Jersey Office | New York Office |
|---|---|
| 18 Hasbrouck Ave        Emerson, New Jersey 07630 | 475 Tuckahoe Road, Suite 207  Yonkers, New York  10710 |
| Telephone: (973) 928-6821        Fax: (201) 606-8203 | Telephone: (646) 278-4146        Facsimile: (646) 277-1154 |
| Cellular: (201) 658-6483  Email: rjsloezen@gmail.com | *Please Reply to the New Jersey Office* |

March 14, 2018

Via email & Express Mail
BrownGreer, PLC
250 Rockets Way
Richmond, Virginia 23231

> Re:    Cash4Cases, Inc. Contracts/NFL Players' Concussion Injury Litigation: No.:
> 2:12-md-02323-AB

Dear Mr. Brown,

I am the attorney for Cash4Cases, Inc., ("C4C") regarding the above captioned matter. I am writing to you for clarification of the Waiver Relinquishing Rights Under Attempted Assignment (the "Waiver") and to put your office on notice of all of C4C's claims to a portion of the Settlement Proceeds of several Class Members.

As you know, on December 8, 2017, the Honorable Anita B. Brody signed an Order which purportedly addressed RD Legal Funding's assignments, or attempts to assign, the proceeds from the NFL Settlement. In that Order, Judge Brody found that, "[u]nder the Settlement Agreement, the Claims Administrator is prohibited from paying a Class Member's monetary award to any third party that holds an assignment or an attempted assignment (" 'Third-Party Funder' ").

That decision arose out of the referral from the Honorable Loretta A. Preska, in the case captioned *C.F.P.B., et al v. RD Legal Funding, LLC, et al.*, No. 17-cv-890 (S.D.N.Y. Sept. 8, 2017), ECF No.45. In a separate motion filed by Class Counsel, Christopher Seeger, Esq. ("Seeger") sought to prohibit your office from distributing funds to Third-Party Funding companies, i.e., C4C and other companies (in addition to RD). ("The Motion to Withhold") In response to this Motion to Withhold, C4C filed a Motion to Intervene for the sole purpose of opposing the Motion to Withhold.

Although the Court's 12/8/2017 Order stated that your office was prohibited from providing payment to a Third-Party Funder, that Order did not decide the Motion to Withhold (which C4C moved to intervene to oppose) nor did it decide C4C's Motion to Intervene.

The 12/8/2017 Order, the Court states that any purported assignment agreement is "void, invalid and of no force and effect." However, the 12/8/2017 Order goes on to say that "under the principle of rescission, Class Members should return to the Third-Party Funder the amount already paid to them."

Subsequent to the 12/8/2017 Order, Judge Brody issued another order on 2/20/2018, where she "Ordered that the Claims Administrator pay directly to the Settlement Class Member any and all

Monetary Awards in cases where there has been an improper assignment of any right or claim pursuant to Section 30.1 of the Settlement Agreement."

Article XXVII, section 27.1(a) of the NFL Settlement Agreement states that "Notwithstanding any contrary law applicable to the underlying claims, this Settlement Agreement and the Releases hereunder will be interpreted and enforced in accordance with the laws of the State of New York, without regard to conflict of law principles." Similarly, ¶ 24 of C4C's Contracts also require the use of New York law in interpreting the Contracts.

The C4C Contracts include a clause addressing a court determination that part of the contract is void. Specifically, ¶24 of C4C's contract states that "[i]f any provisions of this Agreement shall be declared unenforceable, void or invalid by a court of competent jurisdiction, such void or invalid provisions shall not in any way impair the whole Agreement, the remaining provisions shall remain in full force and effect."

As a result of that clause, there are two (2) issues raised: 1) how much is C4C entitled to under the principles of rescission; and 2) whether, despite the voiding of the assignment provision, C4C is still entitled to payment pursuant to the remaining terms of the Contracts.

### 1. Amount C4C is entitled to under theory of Rescission

Regarding the issue of rescission, *Lenel Systems International, Inc. v. Smith*, 966 N.Y.S.2d 618 (4th Dept. 2013) stated:

> Rescission is an equitable remedy (*see Singh v. Carrington*, 18 A.D.3d 855, 857, 796 N.Y.S.2d 668), which "rests on the equitable principle that a person shall not be allowed to enrich himself [or herself] unjustly at the expense of another" (*Miller v. Schloss*, 218 N.Y. 400, 407, 113 N.E. 337). The effect of rescission "is to declare [a] contract void from its inception and to put or restore the parties to status quo" (*Cusack v. American Defense Sys., Inc.*, 86 A.D.3d 586, 588, 927 N.Y.S.2d 381).

In some of the contracts entered into by C4C, as well as other Third Party Funders, the companies paid off prior Third Party Funders who previously made advances to the Class Member. Under one reading of the Court's Orders and the Waiver, the only money that would be payable to the Third Party Funder would be the money paid directly to the Class Member. However, under the law of rescission, the Third Party Funder should be paid back the amount paid directly to the Class Member, plus the amount paid to a broker and a prior Third Party Funder. If the Orders and Waiver are interpreted to mean that the Class Member is permitted to retain the funds they originally received from the prior Third Party Funder without the current Third Party Funder receiving reimbursement, this will result in an unjust enrichment of the Class Member, which violates New York's law regarding rescission, and does not restore the status quo.

In addition to recouping the amount paid to a Class Member, money paid to a prior funder and the money paid to a broker, C4C would also be entitled to 9% interest since the date of the contract. *See 11 S. Laundry, Inc. v. MCD Assets, LLC*, 927 N.Y.S.2d 143, 2013 N.Y. Slip Op., at 6 (N.Y.Gen.Term April 18, 2013); *see also* CPLR §5004)

## 2. Amount C4C Entitled to Pursuant to the Contracts

There are several issues that arise regarding the Court's 12/8/2017 and 2/20/2018 Orders. Specifically, 1) how much will be paid to the Third-Party Funder (i.e., just the amount paid directly a Class Member or the amount paid directly to a Class Member, plus the broker fee that was paid at the direction of the Class Member, plus a payoff to a prior Funding Company, etc., as discussed above; 2) what happens if the Third Party Funder agrees to accept the principal paid to the client but the Class Member refuses to sign off on the Waiver, does the Administrator just decide to pay all of the settlement proceeds to the Class Member, as suggested by the website, or will your office hold some portion of the proceeds, and, if so, how much?; 3) under those circumstances, will the Claims Administrator retain the amount due pursuant to the Contract or just the amount paid directly to the Class Member; and 4) what is the Claims Administrators position regarding contracts that account for a court invalidating part of the contract, that that may still be enforced by other means?; 5) what happens if the Class Member does not have an attorney; 6) what happens if the Class Member does not agree on the amount to be paid to the Third Party Funder?

It is my understanding that the NFL Litigation website indicates that if the Class Member and the Third Party Funder cannot agree on the amount, then all of the funds are to be released to the Class Member. Such a position appears to be in violation of Virginia's Rule of Professional Conduct, Rule 1.15(b), which address a lawyer's responsibility when handling funds claimed by third parties. It is my understanding that your office is subject to this rule.

Rule 1.15(a)(1)'s applicability is not limited to funds claimed by a lawyer's client. The subsection states that it refers to "All funds received or held by a lawyer or law firm on behalf of a client or a third party, **or held by a lawyer as a fiduciary**".

Comment 1 of the Rule states that "A lawyer should hold property of others with the care required of a professional fiduciary….For purposes of this Rule, the terms 'fiduciary' includes personal representative, trustee, receiver, guardian, committee, custodian, and attorney-in-fact.".

Rule 1.15(b) goes on to say that a lawyer is required to:

(4) promptly pay or deliver to the client or another as requested by such person the funds, securities, or other properties in the possession of the lawyer that such person is entitled to receive; and

(5) not disburse funds or use property of a client or third party without their consent or convert funds or property of a client or third party, except as directed by a tribunal.

While your office may disburse funds without C4C's agreement in reliance upon 1.15(b)(5), i.e., as directed by a tribunal, it is C4C's position that this provision is not applicable here.

As noted above, Judge Brody signed an Order dated December 8, 2017 declaring all assignment contracts void and stating that the Third Party Funder could accept rescission. The later February 20, 2018 Order indicated that the Claims Administrator is authorized to pay directly to the Class Member any and all Monetary Awards in cases where there has been found an improper assignment of any right or claim pursuant to Section 30.1 of the Settlement Agreement.

C4C was not part of the Motion which resulted in the December 8, 2017 Order and the Court never directly ruled on the C4C Contracts. As noted above, C4C's Contract allow for the possibility that the Contract may be voided on some basis. However, the Contracts also state that if one portion of the contract is held voided, that does not void the whole contract. As a result, C4C asserts that, despite the December 8, 2017 Order declaring all assignment agreements void, C4C's Contracts are valid until further Order.

C4C agrees with the appeal filed by RD Legal Funding regarding the Orders dated 12/8/2017 and 2/20/2018. However, assuming that the 12/8/2017 Order is affirmed and all assignment contracts are considered void on that basis, C4C asserts that the Contracts are still valid in accordance with ¶24 of the Contracts. If that is the case, then C4C and the Class Members have a legitimate dispute as to the amount to be paid to C4C.

Furthermore, if the C4C contract is determined to be an investment, then C4C will be permitted to recover the amount due pursuant to the terms of the contracts. Recently, the Third Circuit, in *Obermayer, Rebmann, Maxwell & Hippel v. John H.C. West, et al.,* No. 16-1376, (3rd Cir. 2/27/2018) addressed a similar contract. There, the court said:

> In New York, a loan recipient is relieved of all payment obligations with respect to a loan that is later found to be usurious. The State's highest has, in no uncertain terms, instructed that New York's '[u]sury laws apply only to loans or forbearances...' Thus, if the transaction in dispute 'is not a loan, there can be no usury, however, unconscionable the contract may be.' Here, the parties dispute whether the arrangements at issue may be properly characterized as loan agreements. Because we find that the underlying transactions were not loan agreements, we hold that they are not governed by New York's usury laws.

The 3rd Circuit went on to say that

> Fast Trak's right to repayment, then, was contingent on the success of the Reed Smith suit and was not absolute. Had West recovered nothing, Fast Trak would have had no contractual right to repayment. Accordingly, the disputed transactions were not "loans" and are therefore, not subject to New York's usury statute. Because the usury statute is inapplicable to the agreements between Fast Trak and West, those agreements are enforceable.

The fact that Judge Brody ruled on the assignment provisions of contracts (without reviewing each of the Third Party Funder contracts) does not mean that C4C's claim to the proceeds is invalid. C4C asserts that they still have a valid claim to the proceeds that your office is holding.

Because of the conflicting positions, i.e., Judge Brody's ruling voiding the contracts in general, and C4C's position that the contracts are still valid aside from the assignment clause, you may believe that you are entitled to disburse funds despite C4C's claim, but that is incorrect. Virginia Legal Ethics Opinion 1865 addressed a similar situation. There the Committee said:

> The Committee understands that there will be occasions when a lawyer may not be able to determine whether a third party is entitled to funds held by the lawyer, for example, when there exists a dispute between the client and the third party over the third party's entitlement. Legal and factual issues may make the third party's claim to entitlement or the amount claimed uncertain. *Rule 1.15(b)(4) and (5) does not require the lawyer to make that determination.* When faced with competing demands from the client and third party the lawyer must be careful not to unilaterally arbitrate the dispute by releasing the disputed funds to the client. Conversely, a lawyer should not disburse the client's funds to a third party if the client has a non-frivolous dispute with the third party. When the client and a third party have a dispute over entitlement to the funds, the lawyer should hold the disputed funds in trust for a reasonable period of time or interplead the funds into court.

Here, the 12/8/2017 and 2/20/2017 Orders voiding the assignment contracts and directing your office to disburse funds, are both under appeal. The 12/8/2017 Order is unclear as to what is meant by rescission, i.e., how much is to be paid to the Third Party Funder, and the rulings improperly direct that your office disburse all funds to the Class Member if the parties are unable to agree on an amount.

Additionally, the Court's orders failed to address the C4C Contracts and all of the applicable sections. Further complicating the matter is the fact that the Class Members and C4C agreed in the Contracts that any determination as to the validity of the C4C Contracts are to be made by an arbitrator.

C4C believes it has a "non-frivolous" dispute with the Class Members as to the amount to be paid to C4C. C4C is providing your office with the complete list of names of the Class Members who have contracts with C4C and the current amount due:

| Entity | Player | State of Residence | Date of Contract(s) | Attorney Signing | Law Firm | Current Amount Due as of March 14, 2018 |
|---|---|---|---|---|---|---|
| Cash4Cases, Inc. | | | | | | |
| | , | North Carolina | 12/6/2016 | Luckasevic, Jason | Goldberg, Persky & White, PC | $48,875.00 |
| | | California | 11/23/2016 | Luckasevic, Jason | Goldberg, Persky & White, PC | $68,272.24 |
| | | Florida | 11/9/2016 | Schroder, Karen Bayer | Robins Cloud, PA | $19,657.65 |
| | | | 6/8/2016 | Parnell, Thomas | Gibbs & Parnell, PA | $7,994.00 |
| | | Texas | 11/29/2016 | Steckler, Bruce | Steckler Gresham Cochran | $18,826.03 |
| | | | 5/18/2016 | Luckasevic, Jason | Goldberg, Persky & White, PC | $15,988.00 |
| | , | Texas | 5/11/2016 | Luckasevic, Jason | Goldberg, Persky & White, PC | $284,050.00 |
| | | California | 5/23/2016 | Luckasevic, Jason | Goldberg, Persky & White, PC | $374,851.94 |
| Total | | | | | | $838,514.86 |

In the event that the Class Members and C4C are unable to reach an agreement as to the amount to be paid to C4C, it is requested that your office hold the amount in dispute pending arbitration between C4C and the Class Member(s).

It is my clients' preference to avoid further litigation, or arbitration, as provided for in the C4C Contracts, if we can get clarification of the Class Administrator's understanding and application of the Court's Orders, as well as how your office will address the issue of the amounts in dispute in the event that a Class Member and C4C do not agree. I look forward to your anticipated cooperation. Thank you.

Very truly yours,

Raul J. Sloezen, Esq.

RJS/jks

Cc:    Jaeson Birnbaum
       TerriAnne Benedetto, Esq. (via email and regular mail)