UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>      Plaintiffs,<br><br>      v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>      Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF CO-LEAD CLASS COUNSEL ANAPOL WEISS FOR A HEARING TO SEEK COURT INTERVENTION ON THE PROCESSING OF CERTAIN CLAIMS**

**INTRODUCTION**

In 2011, the undersigned Co-Lead Class Counsel, Anapol Weiss, filed a class action lawsuit in this Court styled "Easterling et al. v. The National Football League". One of the plaintiffs to that lawsuit was Wayne Radloff and his wife. The Radloffs and the thousands of other former retired NFL football players and their families, who ultimately joined this lawsuit as it evolved into one of the nation's largest-ever personal injury/wrongful death class actions, fought for a fair resolution of their legal grievances until this Honorable Court and the appellate

court gave their approval to a settlement plan intended to provide fair compensation to those who have suffered severe and continuing neuro-cognitive injury, and in some cases lost their lives to a disease process now known as CTE.

In February 2017, almost six (6) years after filing their lawsuit against the NFL, the Radloffs were permitted to file a Claim Form seeking compensation for the harm suffered.  Over the next 13 months, the Radloffs have faced endless delays and at times complete indifference to their undeniable right to fair compensation.  This inexcusable delay is documented below. Undoubtedly, the Radloffs are not alone.  And, for these reasons, the Plaintiffs have filed this Motion requesting that this Honorable Court schedule a Hearing to Compel the Claims Administrator to establish more transparent and streamed-lined processing for determining retired players' claims.

As specified below, claims involving Dementia and Alzheimer's Disease have been unreasonably and inexcusably delayed, from the instance the Claims Administrator began accepting applications for compensation.  Class member Wayne Radloff and his wife, who were in the group of players that first sued the NFL in this Court, have not had their claim fairly and promptly assessed and resolved.  [The Radloffs have agreed to waive confidentiality of Wayne's medical records for the benefit of all class members in order to highlight in this Motion the harm they have suffered.]

**The Timeline Warranting Court Intervention**

In November 2017, the Court received a "Joint Status Report" detailing certain facts regarding the implementation of the Settlement Program.  [ECF No. 8881.]  For some odd reason, this Report stated that the Claims Process "opened on March 23, 2017".  In fact, your movant and others first submitted their Registration Forms on February 14, 2017.  Confirmation

by the Settlement Administrator of movant's Registration was sent on March 23, 2107. [1]  In this

Report, it was represented to the Court that as of November 2017, ten months after Registration

opened, over 1400 Retired NLF players had submitted Claim Packages.  However, only 140

players had received compensation for the harm they had suffered 10% of those players who had

submitted claim packages.  Using simple math only 14 players a month have been approved for a

cash award.  This Report noted that the NFL had, as of that date, initiated 40% of the appeals of

the Settlement Administrator's (SA) determinations. [2]

Wayne Radloff played for the Atlanta Falcons in the years 1985 - 1989.  He then played

for the San Francisco 49ers in 1990 and 1991.  Mr. Radloff suffered multiple concussive and

sub-concussive injuries.  Mr. Radloff retired from the NFL when he was 30 years old.  In 2003,

Mr. Radloff (at age 41) began treating with Dr. Bozeman Sherwood for "increasing difficulty . . .

with ability to focus, memory loss and overall ability to concentrate. . . . The worsening of his

condition has led to depression which is causing further deterioration." [Claim Package Doc ID

#112721.]  Dr. Sherwood's diagnosis and treatment of Mr. Radloff between 1997 and 2009 was

documented in a filing identified as Claim Package Doc ID #124482.  Dr. Sherwood informed

the SA that he referred Mr. Radloff to a neurologist, Dr. George Warner.  Id.  Dr. Sherwood

further advised the SA that the patient records for Mr. Radloff were no longer available because

he moved his practice to another state and did not secure those records.  [Claim Package Doc ID

---

[1]     As a class member and an injured player, Wayne Radloff brings this Motion on his behalf
and on behalf of other retired players who question the efficacy and fairness of procedures
established that do not appear in the four corners of the Settlement Agreement, as well as other
bureaucratic procedures created "on the fly" without providing appropriate notice to retired
players or their counsel.

[2]     For example, on January 18, 2018, a document was published entitled "Rules Governing
Statute of Limitations Proceedings".  These rules were published without prior Notice to Class
members who were, therefore, deprived of any opportunity to comment upon them.

#132890.]  Dr. George Warner prepared and signed the Pre-Effective Date Diagnosing Physician

Certification Form [Claim Package Doc ID #58761] in which he provided a diagnosis of

Alzheimer's Disease beginning in 2003.  Further, Dr. Warner's records were submitted to the SA

**Chief Complaint**

Mr. Wayne Radloff is a 48-year-old right-handed white male referred by Dr Bozeman Sherwood for evaluation of memory decline issues and cognitive impairments. The patient has been followed by Dr. Sherwood who related increasing difficulties over the past 5-7 years with diminished ability to focus ( impaired concentration and attention ) and memory loss issues. He had been utilizing ADD-type medications which were started in approximately 2003 and were initially of some benefit but have become less effective over time. The patient had no specific history for ADD prior to his career as a

as Claim Package Doc IDs #58762, 78369 and 120848.  The medical records of Dr. Warner, a

Board-Certified Neurologist, contain the following pertinent history: [3/10/2010]

A week later, Dr. Warner saw Mr. Radloff again and made the following entries in his medical

chart:

**Chief Complaint**

Mr. Wayne Radloff is a 48-year-old right-handed white male who returns for a followup evaluation of memory decline issues/ cognitive impairments, affective qualities and behavioral issues. The patient has been followed and treated by Dr. Bozeman Sherwood who reported increasing difficulties over 5 plus years duration with diminished abilities to focus ( poor concentration and attention ) and memory impairment issues. He reportedly has utilized ADD-type medications which were initiated in approximately 2003 and were of some benefit but have become less effective over the years. The patient relates having had no specific history for ADD issues prior to his career as a football player. He has had posttraumatic symptomatologies from multiple traumatic head injuries dating back to college football at Georgia and his career in the NFL. He related approximately 3-4 major head trauma events which included loss of consciousness while having too numerous to count football injuries with impaired level of consciousness qualities. Some of these injuries had associated posttraumatic sequelaes including headaches and memory loss. In the presence of these numerous head traumas,

Additional records from Dr. Warner include #58762 which states in pertinent part:

Mr. Wayne Radloff is a long-standing patient of mine with an unfortunate diagnosis of dementia. Mr. Radloff has documented medical history for memory decline and other associated behavioral issues dating back to 2003 ( patient was ~ 41 years old at early symptomatic onset ) when he was under the management of his primary care ( Dr. Bozeman Sherwood M.D. ). Mr. Radloff's cognitive decline with behavioral and affective/anxiety issues has progressed in a neurodegenerative fashion to a dementia state. He has had neuroimaging with MRI of the brain ( 2010 ) which included neuro-quantitative analysis that revealed hippocampal volume loss to support the early ongoing clinical picture of dementia. Presently, Mr. Radloff's memory disorder has continued to evolve to his current state of dementia felt most likely to represent a traumatic neurodegenerative tauopathy disorder. Clinically, this represents a diagnosis of **dementia with an Alzheimer's type** derived from a traumatic origin.

4

On February 14, 2017, Mr. Radloff and his wife registered to participate in the

Settlement.  [Claim Package Doc ID #16896.]  A month and a half later, on March 23, 2017, the

SA acknowledge the Radloffs' registration.  [Claim Package Doc ID #44309.].  On April 14 and

April 18, 2017, the Radloffs filed the records of Dr. Warner, his physician certification and

requested authorization forms.  [Claim Package Doc IDs #58761, 59714, 59718.]  Sixty days

later, on June 9, 2017, the SA sent a "notice of deficiency" stating that there was an "invalid

signature", and the medical records did not reflect a qualifying diagnosis to 2003.  [Claim

Package Doc ID #78270.]  In response, on June 9, 2017, the Radloffs filed signatures as

requested.  [Claim Package Doc ID #78368.]  The Radloffs also filed a letter from Dr. Sherwood

[Claim Package Doc ID #112721] confirming his treatment of Wayne Radloff for the past 5 to 7

years for increasing difficulty with focus, memory loss and concentration, which has worsened

and led to depression.  The SA remained silent for several months.  In August, 2017, the

Radloffs, in an attempt to wake up the SA filed additional supporting records including a NFL

Physician Report from Dr. Robert Gilbert, a neurologist hired to assess Mr. Radloff's disability

claim.  Dr. Gilbert wrote [Claim Package Doc ID #120846] that Mr. Radloff was disabled

because he has undergone "clinical deterioration in cognitive skills, hippocampal atrophy on

MRI scan suggest dementia probably related to prior concussions".  On August 30, 2017, the

Radloffs submitted a report from Dr. Warner confirming his opinion that Mr. Radloff has been

suffering from Dementia of the Alzheimer's type since 2003.  [Claim Package Doc ID #120848.]

During September and October 2017, the Radloffs filed additional documentation detailing

Wayne's medical diagnosis and also advising that the office records kept by Dr. Sherwood no

longer existed.  [Claim Package Doc IDs #130675 and #132890.]  Aside from acknowledging the

uploading of these materials referenced in paragraphs 19 to 22, the SA continued its silence

through the beginning of November 2017.  In other words, between June and November 2017,

the SA essentially ignored the Radloffs' filings.  On November 1, 2017, the Radloffs' counsel

wrote the SA as follows:

> "As you know, this office represents the families of Mr. Montgomery, Mr. Duranko and Wayne Radloff and his wife. We have been extremely patient in addressing the several inquiries your office has made in responding to our claims. Nevertheless, over the past 60 days we have been troubled by the absence of evidence that these claims are being processed expeditiously. We would prefer to avoid alert the Court to the extraordinary delays that have transpired, but unless your office provides some reassurance that the end is near, we will take appropriate steps to move things along. We hope you appreciate the patience we have shown and that a prompt response will be forthcoming."

On November 2, 2017, the SA responded by writing:

> We understand your concerns and share your desire to resolve the claims expeditiously.  Unfortunately, each of these claims requires an exception under Section 8.2 of the Settlement Agreement.  Where the express requirements in Sections 8.2(a)(i)-(iii) are not met, we present the claim to the Parties to consider whether we can apply an exception anyway.  We cannot unilaterally ignore the language in the Settlement Agreement.  We have presented each of these claims to the Parties for their consideration.  In our summaries, we explained what documents have been submitted, what is missing and why the express Settlement Agreement requirements are not met.

> **Radloff (SPID 100012465):**  We cannot accept the 2003 diagnosis date on Dr. Warner's DPC because we have no 2003 records from him or any other doctor. Section 8.2(a)(iii) requires that the doctor who signs the DPC review records of an earlier diagnosing physician, if the diagnosis date on the DPC is based on those records/that earlier diagnosis.  The earliest records we have from Dr. Warner indicate a 2010 diagnosis.  We cannot excuse the 2003 records under Section 8.2(a)(ii) because Mr. Radloff is still alive, and that exception only applies to Representative Claimants of deceased Retired NFL Football Players.

> After we receive guidance from the Parties, we will process each claim accordingly. We do hope to have this guidance fairly soon but are not able to provide a timeframe. We appreciate your continued patience on these claims and please know that we are doing our best to get them addressed.  We have forwarded your 11/1/17 email to the Parties and you are free to contact them directly on this issue.

This November 2, 2017 email from the SA was the first notice received by Mr. and Mrs. Radloff and other clients that there was some interpretative argument (by an unknown party) that the retired player's medical records furnished 6 months earlier did not comport with the terms of the settlement agreement.  On November 21, 2017, three weeks after the November 2nd email (above), we were informed that the "interpretive issue" was forwarded to "the parties".[3]  Several weeks later, on December 11, 2017, we contacted the SA and were informed that the Radloffs had "qualified for an exception to Section 8.2(a)".  We were further advised that "now the SA would move forward in the claims review process".  Nothing was posted to the portal.  On January 4, 2018, because we had not received any further word from the SA, we asked for an update on the claims of the Radloffs and several other similarly situated players.  No response was provided.  On January 17, 2018, we again contacted the SA and asked for a status on these claims.  The SA responded by writing: "finalizing our review".  Can you confirm for us when Dr. Warner first received the referral to treat the Player and when he first started treating the Player"?  Immediately after receipt of this (incredulous) January 17, 2018 email from the SA, we sent an email advising that Wayne first saw Dr. Warner (as documented in records you have had for over 6 months) on March 10, 2010 and then continued treating with him per the records. Three weeks later on February 2, 2018 we wrote again to ask about the status of this claim.  The SA did not respond.  On March 1, 2018, we wrote again to ask of the status of the claim; the SA responded by indicated it would "get back to you".  As of the date of the filing of this Motion, we have not heard further from the SA aside from a vague comment via telephone that this claim

---

[3]      Such submissions are apparently transmitted in secret.  The players have no information as to what the SA tells "the parties', who are "the parties" or who is responsible for deciding the issue.  This is quite confounding since counsel for Radloff is co-lead counsel and he has had no involvement or notice of this review.

was sent to an "AAP member for review".[4]  That same comment was confirmed in an email that

is attached as **Exhibit C**.

**LEGAL DISCUSSION**

The Settlement Agreement, once publicized by counsel as a unique, ground-breaking

resolution that would be easy to implement has been anything but that.  It has failed to live up to

the promise of providing tangible benefits to the Class.  Class members including the Radloffs

have lived with the disappointment of inexcusable and unexplained delay for more than a year.

The publicly available information shows that claims paid are de minimis compared to

the projections promised by the NFL and co-lead Class Counsel Seeger Weiss.  In a sworn

affidavit, submitted by attorney Christopher Seeger in support of common benefit fees[5] states

that 202 players/player families have been awarded compensation compared to the "submission"

of 2842 claims (1542 claims submitted and more than 1300 in various stages of proceedings),

that's merely 7% of the players who have filed claims for compensation.  [See Seeger's affidavit,

¶ 3.]  The fact that only 7% of the players and families of players who have filed for

compensation have received payments is evidence enough for the Court to hold a public hearing

so that the SA can discuss the seemingly insurmountable hurdles facing injured class members.

This undeniable statistic raises the very important question: "what other retired player and his

family have been waiting a year and have been given the same run-around"?  The claims process

for Mr. Radloff has evolved into a thicket of privately litigated, changing standards for claim

packages, unpredictable and changing standards of review that is not what the Settlement

---

[4]     Attached is a Declaration affirming the facts related to the interactions between the SA and Plaintiffs' counsel's office [**Exhibit B**].

[5]     Members of the Plaintiffs' Executive Committee and Steering Committee have filed objections or counter-proposals.

Agreement promised retired players.[6]  Within this Settlement, the NFL appears to have

employed the same tactics case by case, player by player that it has used in the processing of

player claims for disability benefits under the Collective Bargaining Agreements.  On

information and belief, this is the NFL modus operandi to delay payments and frustrate the

players and their families, hoping they will give up.[7]

The class members and their families have waited years to obtain fair compensation for

the trauma and neuro-cognitive disorders they have suffered at the hands of a multi-billion-dollar

conglomerate that took their safety and health for granted.  Now, despite the brave action of

thousands of players who challenged the most powerful sports industry in the world, and won,

they are losing again!

A trial court before whom a case is pending may enforce a settlement agreement

voluntarily entered into by the parties.  *Berger v. Grace Line, Inc.*, 343 F. Supp. 755, 756

(E.D.Pa.1972), aff'd, 474 F.2d 1339 (3d Cir. 1973).  The authority of the trial court to enforce a

settlement agreement and supervise the execution of the settlement terms is inherently part of its

administrative role in confirming the fairness of the settlement.  District courts enjoy broad

supervisory powers over the administration of class action settlements to assure that the proceeds

---

[6]     The lack of transparency has been self-evident.  Here are examples: (1) after 6 months of
waiting for the approval of their claim, the Radloff's were told by the SA that their application
did not comport with Section 8(a) of the Agreement; yet, until informed of this construction of
the agreement, they were given no notice.  Then, upon notice, they were told the parties would
take up this issue and the Radloffs were not given an opportunity to address this issue.  (2) After
they received notice that an "exemption" was granted to this section of the agreement, they were
told that their claim was unsupportable because their treating neurologist could not rely upon the
opinions of the referring doctor to date Mr. Radloff's Alzheimer's diagnosis to a date before the
neurologist began treatment.  This disclaimer came without any opportunity to learn who made
that decision..
[7]     We respectfully submit that one of the co-lead counsel cannot alone objectively assess
the trajectory of the Settlement and the unreasonableness of the delays incurred.

are equitably distributed.  In *Re "Agent Orange" Prod. Liability Litig.*, 818 F.2d 179, 181 (2nd

Cir. 1987), cert. denied, 487 U.S. 1234 (1988); *In re Royal Dutch/Shell Transp. Sec. Litig.,* 2008

U.S. Dist. LEXIS 124269 *65-66 (N.J.).

Respectfully, this Court must embrace its role as the guardian of this settlement

agreement and rectify the continuing problems of delay and denial so that class members can

finally obtain fair **and** prompt compensation.


DATED:        March 19, 2018

Respectfully submitted,

/s/ Larry E. Coben
**ANAPOL WEISS**
Larry Coben
Sol Weiss.
*Attorneys for Plaintiffs' Radloff*