# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE; NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | Case No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>The Honorable Anita B. Brody |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>        Defendants. | **REPLY MEMORANDUM OF RD LEGAL FUNDING, LLC, RD LEGAL FINANCE, LLC, RD LEGAL FUNDING PARTNERS, LP, AND RONI DERSOVITZ IN SUPPORT OF MOTION FOR STAY PENDING APPEAL** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

BROTMAN LAW
ELLEN C. BROTMAN, ESQ.
  *ebrotman@ellenbrotmanlaw.com*
One South Broad Street, Suite 1500
Philadelphia, PA 19107
ebrotman@ellenbrotmanlaw.com
Telephone:  (215) 609 3247

BOIES SCHILLER FLEXNER LLP
DAVID K. WILLINGHAM (*pro hac vice*)
  dwillingham@bsfllp.com
MICHAEL D. ROTH (*pro hac vice*)
  mroth@bsfllp.com
JEFFREY M. HAMMER (*pro hac vice*)
  jhammer@bsfllp.com
725 South Figueroa Street, 31st Floor
Los Angeles, California 90017-5524
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

Attorneys for RD LEGAL FUNDING, LLC; RD LEGAL FINANCE, LLC; RD LEGAL FUNDING PARTNERS, LP; and RONI DERSOVITZ

4832-1462-2047.6

## **TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ..............................................................................................................1

II. DEVELOPMENTS FOLLOWING THE FILING OF RD LEGAL'S MOTION ...............3

    A. Co-Lead Class Counsel Reverses Positions on the Motion for Stay ........................3

    B. Stewart Sends RD Legal a Waiver of Rights Form with an April 12 Deadline ...................................................................................................................5

III. THE COURT SHOULD STAY ITS ORDERS PENDING APPEAL ................................6

    A. RD Legal Is Entitled to a Stay Under Rule 62(d) As a Matter of Right ..................6

    B. Declining to Issue a Stay or Requiring a Bond Would Grant a Windfall to Stewart and Other Sellers, and Thus Would Fail to Preserve the Status Quo ..........................................................................................................................10

    C. The Court Lacked Jurisdiction to Issue the February 20 Order .............................11

IV. CONCLUSION .................................................................................................................13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acierno v. New Castle Cty.*,
    40 F.3d 645 (3d Cir. 1994)..................................................................................................8

*Am. Mfrs. Mut. Ins. Co. v. Am. Broad.-Paramount Theatres, Inc.*,
    87 S. Ct. 1 (1966)................................................................................................................6

*Anderson v. City of Philadelphia*,
    No. 86-7571,
    1987 WL 17743 (E.D. Pa. Sept. 29, 1987) .........................................................................8

*Bank of N.S. v. Pemberton*,
    964 F.Supp. 189 (1997) ......................................................................................................8

*Becker v. United States,*
    451 U.S. 1306 (1981)..........................................................................................................6

*Borrell v. Bloomsburg Univ.*,
    No. 3:CV-12-2123,
    2016 WL 3595794 (M.D. Pa. July 5, 2016)....................................................................7, 8

*Botman Int'l, B.V. v. Int'l Produce Imps., Inc.*,
    No. 99-civ-5088,
    2006 WL 263619, at *2 (E.D. Pa., Jan. 31, 2006) ..............................................................8

*Cong. Talcott v. Gruber*,
    No. CIV. A. 89-4172,
    1992 WL 1747112 (E.D. Pa. July 20, 1992).......................................................................6

*Cottillion v. United Ref. Co.*,
    No. 09-civ-140E,
    2014 WL 7344005 (W.D. Pa. Dec. 23, 2014)............................................................6, 7, 9

*Fontroy v. Beard*,
    No. CIV.A.02-2949,
    2007 WL 1810690 (E.D. Pa. June 21, 2007) .....................................................................8

*Griggs v. Provident Consumer Disc. Co.*,
    459 U.S. 56 (1982)............................................................................................................11

*HCB Contractors v. Rouse & Assocs.*,
    168 F.R.D. 508 (E.D. Pa. 1995) ....................................................................................9, 10

*Hilton v. Braunskill*,
    481 U.S. 770 (1987)...................................................................................................8

*In re Trans World Airlines, Inc.*,
    18 F.3d 208 (3d Cir. 1994).........................................................................................12

*Munoz v. City of Philadelphia*,
    537 F. Supp. 2d 749 (E.D. Pa. 2008) ..........................................................................9

*Printing & Paper Trades Auxiliary Workers v. Cuneo E. Press, Inc. of Pennsylvania*,
    72 F.R.D. 588 (E.D. Pa. 1976)...................................................................................12

*Sentry Ins. v. Pearl*,
    662 F. Supp. 1171 (E.D. Pa.) ......................................................................................7

*Sheet Metal Workers' Int'l Ass'n Local 19 v. Herre Bros.*,
    198 F.3d 391 (3d Cir. 1999).......................................................................................12

*Showtime/The Movie Channel, Inc. v. Covered Bridge Condo. Ass'n, Inc.*,
    895 F.2d 711 (11th Cir. 1990) ...................................................................................12

*Supinski v. United Parcel Serv., Inc.*,
    No. 3:06-CV-00793,
    2012 WL 2905458 (M.D. Pa. July 16, 2012)..........................................................2, 8

*Susquenita Sch. Dist. v. Raelee S. by & Through Heidi S.*,
    96 F.3d 78 (3d Cir. 1996) ............................................................................................8

*Taylor v. Chevrolet Motor Div. of Gen. Motors Corp.*,
    No. 97-civ-2988,
    1998 WL 525802 (E.D. Pa. Aug. 21, 1998) ................................................................8

*United States v. Burton*,
    543 F.3d 950 (7th Cir. 2008) .....................................................................................12

**Other Authorities**

Fed. R. Civ. Proc. 62(c) ........................................................................................... Passim

Fed. R. Civ. Proc. 62(d) ........................................................................................... Passim

N.Y. C.P.L.R. § 5001(a) .................................................................................................11

11 Wright & Miller, Fed. Prac. & Proc. Civ. § 2905 (3d ed. Apr. 2017) ........................7

RD Legal Funding Partners, LP, RD Legal Finance, LLC ("FINCO"), RD Legal Funding, LLC, and Roni Dersovitz (collectively, "RD Legal") submit this reply in support of RD Legal's Motion for Stay Pending Appeal ("Motion for Stay") in advance of the deadline for such filing because of the serious risk that, absent a stay, the disputed funds that are the subject of RD Legal's appeal will be dissipated.  RD Legal reiterates its request that the Court rule as expeditiously as possible to avoid the dissipation of funds or, if necessary, to permit RD Legal time to seek relief from the Third Circuit Court of Appeals before the ostensible April 12, 2018 distribution date for Andrew Stewart's settlement proceeds.

I.      **INTRODUCTION**

Federal Rule of Civil Procedure ("Rule") 62(d) provides for an automatic stay as a matter of right.  The only discretion granted the Court under Rule 62(d) is whether to require the moving party to post a supersedeas bond and, if one is required, to set the amount of the bond.  In this case, RD Legal established that no bond is required to preserve the status quo because there is no risk that the disputed funds—which are being held by the Claims Administrator, not RD Legal—will be unavailable to the seven NFL Players who contracted with FINCO following the outcome of the appeal.  Given the routine nature of the relief sought by RD Legal, Co-Lead Class Counsel notified the Court eight days ago that he "do[es] not oppose RD Legal's Motion for a Stay Pending Appeal."  (ECF No. 9780 at 1.)

In a complete about-face, however, Co-Lead Class Counsel now opposes a stay.  Co-Lead Class Counsel's sudden change of heart, moreover, was prompted by an unsuccessful attempt to extract a "material benefit" from RD Legal (ECF No. 9793 at 2)—*i.e.*, RD Legal's waiver of certain legal rights under the Assignment Agreements that are the subject of the appeal—in exchange for Co-Lead Class Counsel's non-opposition.  When RD Legal refused,

Co-Lead Class Counsel filed an opposition to the Motion for Stay despite its earlier representation to the Court. Andrew Stewart, one of the former NFL Players who assigned a portion of his Settlement Award to FINCO, also filed an opposition to the Motion for Stay. (ECF No. 9791.)

Although they do not dispute the applicability of Rule 62(d) to the Motion for Stay, the primary ground on which Co-Lead Class Counsel and Stewart oppose a stay is not based on Rule 62(d). Instead, they maintain that, to obtain a stay, RD Legal must satisfy four factors that apply to a request for stay under Federal Rule of Civil Procedure 62(c)—which grants courts discretion to "suspend, modify, restore, or grant an injunction" pending the appeal of an order that grants or denies an injunction—*not* Rule 62(d). The Rule 62(d) standard is clear: if the appellant can establish that a bond is not necessary to preserve the status quo, "[t]he stay provisions of Rule 62(d) are 'automatic.'" *Supinski v. United Parcel Serv., Inc.*, No. 3:06-CV-00793, 2012 WL 2905458, at *6 (M.D. Pa. July 16, 2012) (quoting *Becker v. United States,* 451 U.S. 1306, 1308 (1981)).

Here, a stay poses no risk that the funds at issue will be unavailable to distribute to the NFL Players in the event the Orders are affirmed. The Claims Administrator is holding all of the disputed funds, and those funds are more than sufficient to compensate the players for any amount that they could possibly be entitled to, regardless of the outcome of the appeal. Because a stay would preserve the status quo while the Third Circuit determines whether the December 8 and February 20 Orders were correctly decided, and there is no risk that the players will not be fully compensated at the conclusion of the appeal, a stay should be granted without the posting of a supersedeas bond. Indeed, under these circumstances, the risk that funds will be unavailable to the prevailing party arises only if a stay is *not* granted.

## II. DEVELOPMENTS FOLLOWING THE FILING OF RD LEGAL'S MOTION

### A. *Co-Lead Class Counsel Reverses Positions on the Motion for Stay*

RD Legal filed the Motion for Stay on March 7, 2018.  (ECF No. 9761.)  On March 15, 2018, Co-Lead Class Counsel notified the Court that it "do[es] not oppose RD Legal's Motion for a Stay Pending Appeal . . . ."  (ECF 9780 at 1.)  Co-Lead Class Counsel placed no caveats or conditions on this position, other than to state that its "non-opposition is limited to application of the stay to Class Members' purported arrangements with RD Legal only."  (*Id.*)

Upon receiving notice of Co-Lead Class Counsel's position, counsel for RD Legal asked Co-Lead Class Counsel if it would stipulate to a stay as to RD Legal.  In response, Co-Lead Class Counsel changed its position and conditioned a stipulation upon receiving a "material benefit" to the sellers (ECF No. 9793 at 2) in the form of RD Legal's agreement to waive certain rights under the Assignment Agreements.

In particular, Co-Lead Class Counsel imposed three conditions on a stipulated stay.  (Ex. 1.)  First, it would agree to a stay if RD Legal agreed to seek to expedite its appeal of the Orders.  RD Legal agreed to this condition.  (*Id.*)

Second, it would agree to a stay only if the Claims Administrator were permitted to distribute the unassigned (*i.e.*, undisputed) portions of the settlement awards to the seven class members who entered the Assignment Agreements. (*Id.*)  The unassigned portions of the settlement awards are significant amounts (ranging from $990,000 to $1,804,765.55) that—along with the sizeable purchase price already paid to the players—would guarantee that the players would not experience financial hardship during the pendency of the appeal.  Specifically, the undisputed amounts are as follows:

| Player | Initial Payment by FINCO to Player | Amounts Assigned to FINCO | Players' Total Anticipated Awards | **Unassigned Amount** |
|---|---|---|---|---|
| No. 1 | $202,460.31 | $425,166.00 | $1,500,000 | **$ 1,074,834.00** |
| No. 2 | $343,120.53 | $665,234.45 | $2,470,000 | **$ 1,804,765.55** |
| No. 3 | $249,574.46 | $510,000.00 | $1,500,000 | **$    990,000.00** |
| No. 4 | $249,574.46 | $510,000.00 | $1,500,000 | **$    990,000.00** |
| No. 5 | $242,857.14 | $510,000.00 | $1,500,000 | **$    990,000.00** |
| No. 6 | $242,857.14 | $510,000.00 | $1,500,000 | **$    990,000.00** |
| No. 7 | $100,000.00 | $300,000.00 | $1,500,000 | **$ 1,200,000.00** |

RD Legal agreed to this condition as well.

The third condition, however, would require RD Legal to execute a waiver related to the three Assignment Agreements that include an additional purchase price that FINCO must pay according to a schedule set forth in the Assignment Agreements. Those additional payments are based on the date settlement proceeds are distributed to FINCO—the sooner the settlement funds are distributed and received by FINCO, the greater the additional payment to the players. (*See* ECF No. 8301-9 at 22, 45 and 8301-10 at 2.) As to those three contracts, Co-Lead Class Counsel demanded an agreement that, in the event RD Legal prevails on appeal, RD Legal would pay the additional purchase price as if it had received the assigned funds as of the date on which the Claims Administrator requested funding for each respective seller, and would not seek any other remedy in connection with the assignment contracts, no matter when RD Legal received actual payment and no matter what other actions the players themselves might take to prevent distribution to RD Legal.

Because RD Legal would not agree to waive the rights to which it is entitled under those three Assignment Agreements in the event it prevails on appeal, Co-Lead Class Counsel now opposes RD Legal's request for a stay.

### B. *Stewart Sends RD Legal a Waiver of Rights Form with an April 12 Deadline*

Pursuant to an Assignment Agreement dated January 26, 2016, RD Legal paid Stewart a lump sum payment of $343,120.53 more than two years ago, and in exchange Stewart assigned to RD Legal $665,234.45 of his anticipated award of $2,470,000. (ECF No. 8301-9 at 22-44.) The Assignment Agreement also provides for a second payment by RD Legal to Stewart, depending on when RD Legal receives the amount purchased under the Assignment Agreement. The unassigned portion of Stewart's anticipated Settlement Award—the amount to which Stewart is entitled regardless of the outcome on appeal—is $1,804,765.55. Thus, no matter how or when the appeal is decided, Stewart stands to receive at least $2,147,886.08 ($1,804,765.55 + $343,120.53).

The notarized Assignment Agreement (1) states in plain language the terms of the agreement; (2) is signed by both Stewart and his wife; (3) contains a Certification of Truthfulness signed by Stewart and his wife, attesting to the truthfulness of representations made in the agreement; (4) contains a Spousal Acknowledgment signed by Stewart's wife and stating that she "read and understood the terms of" the agreement and that Stewart "is of sound mind and possesses the appropriate mental capacity to understand the nature and consequences of this Agreement"; and (5) contains two Notices of Assignment signed by Stewart, one addressed to his counsel and one addressed to the Claims Administrator. (ECF No. 8301-9 at 22-44.)

On March 13, 2018, RD Legal received from counsel for Stewart a document entitled "Waiver Relinquishing Rights Under Attempted Assignment" ("Waiver") pursuant to "instructions from the Claims Administrator." (Ex. 2.) The transmittal letter states that RD Legal may accept a rescission of its Assignment Agreement with Stewart, subject to the terms of the Waiver, and that the deadline for returning a completed Waiver is April 12, 2018. If a stay is

not issued prior to that date, RD Legal will be required either to (a) execute the Waiver and relinquish its rights under the Assignment Agreement, or (b) decline to execute the Waiver and risk never recouping the amounts to which RD Legal is entitled, regardless of whether it prevails on appeal.

### III.   THE COURT SHOULD STAY ITS ORDERS PENDING APPEAL

#### A.   *RD Legal Is Entitled to a Stay Under Rule 62(d) As a Matter of Right*

Rule 62(d) provides for an "automatic" stay pending appeal if the appellant either (a) posts a supersedeas bond, or (b) establishes that a bond is not required to preserve the status quo. In contrast, the "four factor" test proffered by Co-Lead Class Counsel and Stewart applies to a stay of an order granting or denying injunctive relief under Rule 62(c), *not* Rule 62(d).  Neither Co-Lead Class Counsel nor Stewart disputes that—in the absence of the more rigorous Rule 62(c) standard—RD Legal easily satisfies its burden for an automatic stay pending appeal.

#### 1.   **The "Four Factor" Test Does Not Apply Under Rule 62(d)**

Co-Lead Class Counsel and Stewart do not dispute that the Court's December 8 and February 20 Orders are the equivalent of a money judgment subject to Rule 62(d). Rule "62(d) provides for an automatic stay pending appeal upon the posting of a supersedeas bond by the appellant." *Cottillion v. United Ref. Co.*, No. 09-civ-140E, 2014 WL 7344005, at *2 (W.D. Pa. Dec. 23, 2014); *see also Becker*, 451 U.S. at 1308 (noting stay provisions of Rule 62(d) are "automatic"); *Am. Mfrs. Mut. Ins. Co. v. Am. Broad.-Paramount Theatres, Inc.*, 87 S. Ct. 1, 3 (1966) ("[A] party taking an appeal from the District Court is entitled to a stay of a money judgment as a matter of right."); *Cong. Talcott v. Gruber*, No. CIV. A. 89-4172, 1992 WL 174711, at *2 (E.D. Pa. July 20, 1992) ("[Rule 62(d)] provides that an appellant may obtain a stay of execution of a final judgment as a matter of right by posting a supersedeas bond.").

"[T]he party posting the bond is entitled to a stay as of right; the court has no discretion to deny the stay itself, but only to fix the amount of (or to waive) the bond." *Cottillion*, 2014 WL 7344005, at *2 (quoting *Frommert v. Conkright*, 639 F.Supp.2d 305, 308 (W.D.N.Y. 2009)); *see also Supinski*, 2012 WL 2905458, at *6 ("The stay provisions of Rule 62(d) are 'automatic.'"); 11 Wright & Miller, Fed. Prac. & Proc. Civ. § 2905 (3d ed. Apr. 2017) ("The stay issues as a matter of right in cases within Rule 62(d).").

Rule 62(c), on the other hand, is not automatic, and states that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Courts analyze a request for stay under Rule 62(c) by applying a four-factor test.[1] *Cottillion*, 2014 WL 7344005, at *1-2 (distinguishing standards under Rules 62(d) and 62(c)); *see also Sentry Ins. v. Pearl*, 662 F. Supp. 1171, 1172-73 (E.D. Pa. 1987), *aff'd*, 833 F.2d 307 (3d Cir. 1987) (noting that, in contrast to a Rule 62(d) stay, "a party appealing an injunctive order [under Rule 62(c)] is not entitled to a stay as of right upon posting a supersedeas bond").

Co-Lead Class Counsel and Stewart contend that the four-factor test under Rule 62(c) applies to RD Legal's Motion under Rule 62(d), but the authorities on which they rely are readily distinguishable. *None* of the cases cited by Co-Lead Class Counsel involve the application of the four-factor test to an application for a stay under Rule 62(d). (*See* ECF No. 9793 at 2-3.) Indeed, in *Borrell v. Bloomsburg Univ.*, No. 3:CV-12-2123, 2016 WL 3595794 (M.D. Pa. July 5, 2016), the court affirmatively *rejected* the non-moving parties' argument that the four-factor test

---

[1] The four factors are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) where the public interest lies." *Cottillion*, 2014 WL 7344005, at *1.

4832-1462-2047.6                           7

should be applied under Rule 62(d). *Id.* at *2 ("The stay provisions of Rule 62(d) are 'automatic.'") (quoting *Supinski*, 2012 WL 2905458, at *6). Moreover, *Acierno v. New Castle Cty.*, 40 F.3d 645 (3d Cir. 1994), did not even involve a motion to stay, but rather the review of "an order granting a preliminary injunction." *Id.* at 652-53. And Co-Lead Class Counsel's two remaining cases involve an application for stay under Rule 62(c), *not* 62(d).[2]

The cases relied upon by Stewart are also inapplicable. The primary case on which Stewart relies, *Botman Int'l, B.V. v. Int'l Produce Imps., Inc.*, 99-civ-5088, 2006 WL 263619, at *2 (E.D. Pa., Jan. 31, 2006) (see ECF No. 9790 at 5-6), is based on a district court case from the Virgin Islands—*Bank of N.S. v. Pemberton*, 964 F.Supp. 189, 190 (D.V.I. 1997)—that quotes the standard for a stay under Rule 62(c) as set forth in *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). *See also Supinski*, 2012 WL 2905458, at *6 (declining to follow *Pemberton*).[3] Stewart also cites *Susquenita Sch. Dist. v. Raelee S. by & Through Heidi S.*, 96 F.3d 78 (3d Cir. 1996), but that case confirms that Stewart is invoking the wrong standard. *Susquenita* did not involve a final monetary judgment subject to Rule 62(d), but a case that was "interlocutory in nature" in which the appellant sought the stay of mandatory injunctive relief ordered by the special education appeals panel. *Id.* at 79-80. The appellant sought a stay under Rule 62(c), not Rule 62(d). *Id.* at 80 n.2.

---

[2] In *Anderson v. City of Philadelphia*, No. 86-7571, 1987 WL 17743 (E.D. Pa. Sept. 29, 1987), the plaintiffs prevailed in their suit "to enjoin the use of" a polygraph test in hiring decisions, and the court stayed the enforcement of its order requiring the defendant to review job applications pending the outcome of the appeal. *Id.* at *2. The case did not involve a money judgment nor the application of Rule 62(d). Likewise, *Fontroy v. Beard*, No. CIV.A.02-2949, 2007 WL 1810690 (E.D. Pa. June 21, 2007), involved the defendants' motion, "pursuant to Fed.R.Civ.P. 62(c), to stay execution of the May 3, 2007 Order enjoining them from opening legal and court mail addressed to inmates outside their presence." *Id.* at *1.

[3] Stewart also cites *Taylor v. Chevrolet Motor Div. of Gen. Motors Corp.*, No. 97-civ-2988, 1998 WL 525802 (E.D. Pa. Aug. 21, 1998) (*see* ECF No. 9790 at 7 n.1), but, like *Botman*, *Taylor* relies on the improper standard in *Pemberton*. *See Taylor*, 1998 WL 525802 at *1.

The weight of authority is clear:  Rule 62(d) "provides for an automatic stay pending appeal" if the appellant posts a supersedeas bond or establishes that the bond requirement should be waived.  *Cottillion*, 2014 WL 7344005 at *2-3.  As discussed below and in RD Legal's Motion for Stay, a bond is unnecessary and thus the Court should stay its December 8 and February 20 Orders pending the outcome of the appeal without requiring the posting of any bond.

### 2. The Court Should Not Require the Posting of a Bond

"The purpose of requiring the posting of a supersedeas bond is 'to preserve the status quo during the pendency of an appeal,'" *HCB Contractors v. Rouse & Assocs.*, 168 F.R.D. 508, 511-12 (E.D. Pa. 1995) (quoting *Schreiber v. Kellogg*, 839 F. Supp. 1157, 1159 (E.D. Pa. 1993)), and if the status quo can be maintained without posting a bond, it should not be required.  *See, e.g.*, *Munoz v. City of Philadelphia*, 537 F. Supp. 2d 749, 752 (E.D. Pa. 2008).  Here, there is absolutely no risk that funds will be unavailable for distribution following the appeal because those funds are being held by the Claims Administrator.  Co-Lead Class Counsel and Stewart do not even address RD Legal's discussion in its Motion of *Munoz v. City of Philadelphia*, in which the court stayed execution on a judgment without the filing of a supersedeas bond because "there is no basis to think that prompt payment will not take place should the judgment be sustained on appeal." *Id.* at 752.  As in *Munoz*, there is no basis here to believe—and Co-Class Counsel and Stewart do not contend—that prompt distribution of the disputed funds will not take place immediately in the event the December 8 and February 20 Orders are affirmed on appeal.

Stewart does not dispute that the funds at issue will be available for distribution following the outcome of the appeal.  Instead, Stewart claims "RD Legal will actually *profit* from a delay because it can lay claim to increasing amounts of Mr. Stewart's Monetary Award for each month

the appeal is pending." (ECF No. 9790 at 4.) This assertion is patently false. There are two outcomes on appeal: (a) the Orders are affirmed, in which case Stewart will receive his full settlement award, less the amount due RD Legal under rescission principles; or (b) the Orders are reversed, in which case Stewart shall receive his full settlement award, less the amount purchased by RD Legal. The supposed "profit" to which Stewart refers is not part of the disputed funds, but rather refers to the additional payment to which *Stewart* is entitled under the latter scenario in the event *RD Legal* prevails on appeal and receives the amount it purchased under the agreements.

The purpose of a bond, however, is to "protect[] the winning party from the possibility of loss resulting from the delay in execution" in the event the judgment is *affirmed* on appeal, *HCB Contractors*, 168 F.R.D. at 512 (granting stay without requiring bond) (internal brackets and quotation marks omitted), *not* in the event the judgment is *reversed*. There is no dispute that the Claims Administrator holds the funds to which Stewart and the other NFL Players are entitled if they prevail on appeal, and thus no bond should be required.

### B. *Declining to Issue a Stay or Requiring a Bond Would Grant a Windfall to Stewart and Other Sellers, and Thus Would Fail to Preserve the Status Quo*

Stewart also contends that RD Legal should be required to post a supersedeas bond for the interest he could earn on the $665,234.45 in disputed funds being held by the Claims Administrator. (ECF No. 9790 at 5-6.) But Stewart makes no argument to explain any entitlement, at all, to receive interest on those funds. In addition, Stewart ignores that RD Legal *already paid* Stewart $343,120.53 (which RD Legal would be entitled to under principles of rescission), and makes no attempt to explain how hypothetical interest on the $665,234.45 in disputed funds could exceed the $343,120.53 payment. In other words, Stewart wants to keep

his $343,120.53 payment from RD Legal, receive the $1,804,765.55 in unassigned funds, receive the $665,234.45 in assigned funds, and have RD Legal bond theoretical interest on the $665,234.45 in disputed funds.  He wants to parlay his $2,470,000 award into a return of $2,813,120.53, plus interest.  That is a windfall that RD Legal should not be required to bond.

As to all seven Class Members, RD Legal has a claim irrespective of whether the agreements are ultimately determined to be enforceable.  In the event the agreements are unenforceable, RD Legal will be entitled to the $1.6 million it paid to the players, plus interest, under rescission principles.  *See* N.Y. C.P.L.R. § 5001(a).  On the other hand, in the event the agreements are determined to be enforceable, RD Legal will be entitled to the $3.43 million in settlement proceeds that are subject to the agreements.  By any measure, RD Legal is entitled to some amount of funds being held by the Claims Administrator.  Those funds, moreover, are not at risk, and are more than sufficient to secure any claim from Stewart or the other players who contracted with RD Legal.

### C. *The Court Lacked Jurisdiction to Issue the February 20 Order*

In addition to issuing an automatic stay to RD Legal as a matter of right under Rule 62(d), the Court should issue a stay because it lacked jurisdiction to issue the February 20 Order after RD Legal filed a notice of appeal of the December 8 Order.  Following the appeal of the Court's December 8 Order, it was divested of jurisdiction over "those aspects of the case involved in the appeal," *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982), *i.e.*, the effect of the Settlement Agreement on the Assignment Agreements and any corresponding determination regarding the distribution of funds that are subject to the Assignment Agreements.

While Stewart claims that the February 20 Order was merely to "aid in the execution of a judgment that has not been superseded" and not subject to *Griggs*, (ECF No. 9790 at 8), that

exception applies when *a party* seeks an order from the court to aid in the execution of a money judgment or its equivalent that has already been entered. This point is illustrated by *Printing & Paper Trades Auxiliary Workers v. Cuneo E. Press, Inc. of Pennsylvania*, 72 F.R.D. 588 (E.D. Pa. 1976)—a case on which Stewart relies (ECF No. 9790 at 8)—in which the court held that it retained jurisdiction to grant the prevailing party's request for a writ of execution on a money judgment pursuant to Rule 69.[4] *Id.* at 590-91.

The December 8 Order alone was not a money judgment subject to execution. Rather, the Court held that any agreement that purports to "assign any monetary claims" is "void, invalid and of no force and effect" and stated that "[f]urther instructions to the Claims Administrator will follow" in order to implement the Court's findings. (ECF No. 9517 at 4-5.) There was no motion or other attempt by a party to execute on a money judgement.

Instead, the February 20 Order was issued *sua sponte* to implement the December 8 Order. Read together, the two Orders are the equivalent of a money judgment that directs the Claims Administrator to disburse the settlement proceeds directly to a Settlement Class Member. *See In re Trans World Airlines, Inc.*, 18 F.3d 208, 213-14 (3d Cir. 1994) (finding a disbursement order the equivalent of a money judgment for purposes of Rule 62(d)). The Court had no jurisdiction, however, to issue the February 20 Order, or any other order, implementing its December 8 Order after that order had been appealed. Accordingly, the Court should stay its

---

[4] Stewart cites three other cases, each of which is inapposite. (ECF No. 9790 at 8.) Two of the cases did not involve an order to "aid in the execution of a judgment" and in both cases the court held that the orders at issue were void for lack of jurisdiction. *Sheet Metal Workers' Int'l Ass'n Local 19 v. Herre Bros.*, 198 F.3d 391, 394 (3d Cir. 1999); *Showtime/The Movie Channel, Inc. v. Covered Bridge Condo. Ass'n, Inc.*, 895 F.2d 711, 713 (11th Cir. 1990). The third case is a criminal sentencing case that has no relevance here. *See United States v. Burton*, 543 F.3d 950, 952 (7th Cir. 2008).

Orders until the Third Circuit has determined whether the Court acted within its jurisdiction and there is a final determination as to whether the assignments were proper or improper.

## IV. CONCLUSION

For the reasons above, RD Legal respectfully requests that the Court stay its Orders during the pendency of the appeals. In the alternative, if the Court denies the Motion for Stay, RD Legal requests the Court order a temporary stay pending RD Legal's application for a stay to the Third Circuit.

Dated this 23rd day of March, 2018.    Respectfully submitted,

/s/ Michael D. Roth
BOIES SCHILLER FLEXNER LLP
MICHAEL D. ROTH

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing Reply Memorandum of Law in Support of Motion for Stay Pending Appeal was served electronically via the Court's electronic filing system on the date below upon all counsel of record in this matter.

Dated:  March 23, 2018

BROTMAN LAW
ELLEN C. BROTMAN, ESQ.
  *ebrotman@ellenbrotmanlaw.com*
One South Broad Street, Suite 1500
Philadelphia, PA 19107
ebrotman@ellenbrotmanlaw.com
Telephone:  (215) 609 3247

Respectfully submitted,

s/Michael D. Roth
BOIES SCHILLER FLEXNER LLP
DAVID K. WILLINGHAM
MICHAEL D. ROTH
JEFFREY M. HAMMER
725 South Figueroa Street, 31st Floor
Los Angeles, California 90017-5524
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

Attorneys for RD LEGAL FUNDING, LLC; RD LEGAL FINANCE, LLC; RD LEGAL FUNDINGPARTNERS, LP; and RONI DERSOVITZ