# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE RETIRED PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS PENDING AND ALL CLAIMS ASSERTED AGAINST ANY RIDDELL DEFENDANT | Hon. Anita B. Brody |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE RIDDELL DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED MASTER ADMINISTRATIVE LONG-FORM COMPLAINT BASED ON LMRA § 301 PREEMPTION**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................. 1

II.   RELEVANT BACKGROUND .............................................................................. 4

      A.    The Riddell Defendants' Fraudulent and Self-Serving Cover-Up of Known
            Neurological Risks Substantially Contributed to the Injuries and Harm
            Suffered by the Players and their Families. ............................................. 5

      B.    The Collective Bargaining Agreements Are Outside the SAC and Are
            Irrelevant to the Riddell Defendants. ...................................................... 8

III.  LEGAL STANDARD.......................................................................................... 18

IV.   ARGUMENT ....................................................................................................... 21

      A.    The Players' Claims Against the Riddell Defendants Do Not Depend
            Upon and Are Not Intertwined with the Interpretation of Any Term of Any
            CBA. ....................................................................................................... 21

            1.    The Players allege misconduct outside of and unrelated to CBAs. ......... 21

            2.    The Riddell Defendants' failure to conduct analysis under the
                  specific laws at issue or the CBAs purportedly at issue is a
                  threshold problem with their motion.......................................... 23

            3.    Fraud-based claims are not preempted. .................................... 24

                  a.    The Riddell Defendants misstate the elements of fraudulent
                        concealment and non-disclosure................................... 25

                  b.    The Riddell Defendants misstate how the Players have
                        alleged, and will prove, justifiable reliance. ............... 27

                  c.    The Riddell Defendants' other arguments relating to
                        Plaintiffs' fraud-based claims fail............................... 29

            4.    Negligence-based claims are not preempted........................... 31

            5.    Other claims are not preempted. ............................................. 34

      B.    Riddell's Cases Are Distinguishable and its Attempt to Distinguish
            Authority Favorable to Plaintiffs Fails. ................................................. 35

      C.    At Minimum, the Riddell Defendants' Motion Should Be Deferred
            Pending Discovery. ............................................................................... 36

V.    CONCLUSION.................................................................................................... 37

# TABLE OF AUTHORITIES

**Page**

### Cases

*Aetna, Inc. v. Health Diagnostic Lab., Inc*.,
  2015 U.S. Dist. LEXIS 172003 (E.D. Pa.  Dec. 28, 2105) ..................................................... 26

*Allis-Chalmers Corp. v. Lueck*,
  471 U.S. 202 (1985) ................................................................................................................ 38

*Atwater v. NFLPA*,
  626 F.3d 1170 (11th Cir. 2010) ............................................................................................. 27

*Aubrey v. Sanders*,
  No. 07-cv-0137, 2008 WL 4443826 (W.D. Pa. Sept. 26, 2008) ........................................... 27

*Ballard v. NFPLA*,
  123 F. Supp. 3d 1161 (E.D. Mo. 2015) ................................................................................. 32

*Beidleman v. Stroh Brewery Co.*,
  182 F.3d 225 (3d Cir. 1999) ................................................................................................... 38

*Benavidez v. Sandia National Labs*,
  212 F. Supp. 3d 1039 (D. N.M. 2016) ................................................................................... 22

*Berda v. CBS Inc.*,
  881 F.2d 20 (3d Cir. 1989) ............................................................................................... 19, 20

*Bortz v. Noon*,
  729 A.D.2d 555 (Pa. 1999) ..................................................................................................... 27

*Christie v. Public Serv. Elec. & Gas Co.*,
  No. Civ. 04-5978, 2006 WL 462588 (D.N.J. Feb. 24, 2006) ................................................ 39

*DeSilva v. North Shore-Long Island Jewish Health Sys., Inc.*,
  No. 10-cv-1341, 2012 WL 748760 (E.D.N.Y. Mar. 7, 2012) ................................................ 40

*Dougherty v. Hooker Chem. Corp.*,
  540 F.2d 174 (3d Cir. 1976) ................................................................................................... 36

*Duncan v. Icenogle*,
  873 F. Supp. 579 (1994) ......................................................................................................... 32

*Exal Corp. v. Roeslein & Assocs., Inc.*,
  No. 4:12-CV-01830, 2012 WL 4754748 (N.D. Ohio Oct. 2, 2012) ...................................... 40

*Fort Halifax Packing Co. v. Coyne*,
  482 U.S. 1 (1987) .................................................................................................................... 20

*Givens v. Tenn. Football, Inc.*,
  684 F. Supp. 2d 985 (M.D. Tenn. 2010) ........................................................................... 32, 36

# TABLE OF AUTHORITIES
## (continued)

Page

*Glatts v. Crozer-Keystone Health Sys.*,
645 F. Supp. 2d 446 (E.D. Pa. 2009) .................................................................. 34

*Green v. Bimbo Bakeries USA*,
77 F. Supp. 3d 980 (N.D. Cal. 2015) .................................................................. 23

*Green v. Pro Football, Inc.*,
31 F. Supp. 3d 716 (D. Md. 2014) ........................................................ 23, 25, 36

*In re National Hockey League Players' Concussion Injury Litig.*,
189 F. Supp. 3d 856 (D. Minn. 2016) ................................................... 20, 22, 25

*In re Resorts Int'l, Inc.*,
181 F.3d 505 (3d Cir. 1999) ................................................................................ 28

*In re Toyota Motor Corp.*,
No. 10-02151, 2012 WL 12929769 (C.D. Cal. May 5, 2012) .............................. 29

*JM Mechanical Corp. v. United States*,
716 F.2d 190 (3d Cir. 1983) ................................................................................ 39

*Kline v. Security Guards, Inc.*,
386 F.3d 246 (3d Cir. 2004) ................................................................................ 19

*LaMeau ex rel. Crnkovich v. City of Royal Oak*,
No. 289947, 2012 WL 3590043 (Mich. Ct. App. Aug. 21, 2012) ........................ 24

*Lyon v. Ranger III*,
858 F.2d 22 (1st Cir. 1988) ................................................................................. 37

*M.S. v. Cedar Bridge Military Academy*,
904 F.Supp.2d 399 (M.D. Pa. 2012) ................................................................... 25

*Manti's Transp., Inc. v. C.T. Lines, Inc.*,
68 A.D.3d 937 (N.Y. App. Div. 2009) ................................................................. 27

*Matlin Patterson ATA Holdings, LLC v. Fed. Express Corp.*,
87 A.D. 3d 836 (N.Y. App. Div. 2011) ................................................................ 27

*Maxwell v. Nat'l Football League*,
No. CV 11-08394 (C.D. Cal. Dec. 8, 2011) .................................................. 34, 35

*Ochs v. Woods*,
117 N.E. 305 (N.Y. 1917) ................................................................................... 28

*Oliver v. Riddell*,
2016 WL 7336412 (N.D. Ill. Jul. 19, 2016) ........................................................ 22

*Prost v. Caldwell Store, Inc.*,
187 A.2d 273 (Pa. 1963) ..................................................................................... 33

# TABLE OF AUTHORITIES
### (continued)

**Page**

*R.J. Reynolds Tobacco Co. v. Martin*,
    53 So. 3d 1060 (Fla. App. 2010) ................................................................. 30

*R.W. v. Manzek*,
    888 A.2d 740 (Pa. 2005) ............................................................................. 37

*Roberts v. Estate of Barbaglio*,
    531 A.2d 1125 (Pa. Super. Ct. 1987) .......................................................... 26

*Rycoline Prods., Inc. v. C & W Unlimited*,
    109 F.3d 883 (3d Cir. 1997) ....................................................................... 20

*Sherwin v. Indianapolis Colts., Inc.*,
    752 F. Supp. 1172 (N.D.N.Y. 1990) ..................................................... 32, 36

*Small v. Lorillard Tobacco Co., Inc.*,
    252 A.D.2d 1 (N.Y. App. 1998) ................................................................. 29

*Van Dongen v. CNinsure Inc.*,
    951 F. Supp. 2d 457 (S.D.N.Y. 2013) ........................................................ 28

*Varacallo v. Mass. Mut. Life Ins. Co.*,
    752 A.2d 807 (N.J. App. 2000) ................................................................... 29

*Vasquez v. Super. Ct.*,
    484 P.2d 964 (Cal. 1971) ............................................................................ 29

## Statutes

29 U.S.C. § 185 .......................................................................................... 1, 18

29 U.S.C. § 185(a) ......................................................................................... 18

Plaintiffs ("Plaintiffs" or "Players") respectfully request that the motion to dismiss the Second Amended Master Administrative Long-Form Complaint ("SAC") on preemption grounds (Dkt. No. 9574) filed by Defendants ALL AMERICAN SPORTS CORPORATION, EASTON-BELL SPORTS, INC., EASTON-BELL SPORTS, LLC, EB SPORTS CORP., RBG HOLDINGS CORP., RIDDELL SPORTS GROUP, INC., and RIDDELL, INC. ("Riddell" or "Riddell Defendants" or "Defendants") be denied.

## I.   <u>INTRODUCTION</u>

In asking this Court to preempt all of Plaintiffs' claims based on § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (the "LMRA"), the Riddell Defendants recast the allegations in the SAC—going so far as to criticize the SAC for its specificity, misapply fundamental preemption principles, and largely copy the NFL defendants' earlier brief. Yet the SAC describes decades of wrongdoing by the Riddell Defendants.  The Riddell Defendants engaged in misconduct along with the NFL and other defendants, and in fact has conspired with each of them to hide known safety risks.  Yet, the Riddell Defendants are distinct entities separate from the NFL defendants, with their own motives for (and benefits arising out of) the wrongdoing, and their preemption arguments are, if anything, even *more* strained than the failed preemption arguments brought by the NFL.[1]

Riddell is not a signatory to any Collective Bargaining Agreement ("CBA"). It is an outsider to the CBAs, with no role in any bargaining, and no obligations or benefits under the CBAs.  While its misconduct directed toward *all* players for its own benefit foreseeably harmed *each* particular Plaintiff here, Riddell did not even interact directly with players, team physicians,

---

[1] Plaintiffs refer this Court to the Opt Out Plaintiffs' Opposition to the Motion to Dismiss under Preemption filed by the NFL and the NFL P (Dkt. No. 9522), and incorporate those arguments here.

coaches or individual Clubs. The claims against Riddell raise classic issues of state law (in particular, negligence, fraud, and also products liability claims) that hold manufacturers liable when they make and knowingly continue to make dangerous products and hide those dangers for their own benefit.   Its arguments in favor of preemption fail.

*First*, Riddell misstates the reach of preemption in its Argument Section I in effectively suggesting that the existence of a CBA wipes out any claim, however unrelated to anything in any CBA.  LMRA preemption exists for the important, but discrete, purpose of facilitating the consistent application of contracts reached via collective bargaining.   It requires careful analysis to establish which if any CBA provisions, are at issue, as well as a determination of the nature of the precise law at issue and how it is proven.  The Supreme Court held in *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988) that mere "parallelism" between facts supporting a grievance under a CBA and a state-law claim does not support preemption. *Lingle*, 486 U.S. at 408, 413 ("we hold that an application of state law is pre-empted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement").  *Id*. at 413.  Based on the correct interpretive principles,[2] there is no basis for this Court to take the extraordinary step of dismissing all claims in the SAC, especially pre-discovery.

*Second,* Riddell errs in its Argument Section II in positing that Plaintiffs' claims are preempted because Riddell conspired with the NFL, the NFL Properties (the "NFL P"), and, at times, the NFL Charities ("NFL C"). The NFL P agreed to ensure that the equipment and materials it licensed and approved were of the highest quality and sufficient to protect the players

---

[2] Since the Class Plaintiffs' and Riddell last briefed this issue approximately five years ago, a number of carefully-reasoned decisions have been issued that well illustrate why preemption is inappropriate here.

from harm.  NFL P was used by the NFL to fund NFL Charities, which in turn, funded "sham" research.  The NFL P worked directly with the Riddell Defendants.  As an initial and dispositive matter, the claims against the NFL defendants are not preempted.  Further, Riddell confuses two different things in resting its argument on the fact that under some circumstances a non-signatory to a CBA can raise a preemption defense when the underlying claims at issue are preempted.  However, here the claims are *not* preempted, and notably Riddell cites no law to support its assertion that the existence of a fraudulent conspiracy *turns non-preempted claims into preempted claims.*  That Riddell engaged in this misconduct as part of a fraudulent conspiracy, instead of simply on its own, does not serve to preempt otherwise non-preempted claims.   No authority says otherwise.  Notably, the sole authority on which Riddell relies for this part of its argument, *Wolf v, Rawlings Sporting Goods Co. Inc.*, No. 10-cv-3713, 2010 WL 4456984 (S.D.N.Y. Oct. 26, 2010), is not an LMRA preemption case at all.[3]

*Third,* Riddell's Argument Section III fails because Riddell, which has the burden on this affirmative defense of preemption, does not show that the any of Plaintiffs' claims are dependent on or intertwined with any CBA provision.  Plaintiffs' claims are based on the common law duties of care and the prohibition against fraud. Those duties of care were repeatedly confirmed (and expressly and voluntarily assumed by Riddell) when Riddell exchanged helmets to the NFL and the NFL P for free in return for free advertising by NFL P and the NFL.  Notwithstanding Riddell's curious argument (which no doubt would come as an unpleasant surprise to its employees and/or investors) that its free advertising provides no value, in fact, Riddell has benefitted tremendously from its misconduct.   It is respectfully submitted that year after year,

---

[3] *Wolf* involved estoppel, not preemption, and the court did not dismiss claims against the helmet manufacturer but instead compelled them to arbitration.  Moreover, unlike here, the claims were intertwined with the applicable contracts.

the Riddell helmets known as the "Official Helmet of the NFL" were shown to millions of avid

football fans and TV viewers.[4]  The intent of the agreements between NFL P, the NFL and

Riddell is clear: the Riddell equipment was to be worn by the Players when the Players played

football in the NFL, and especially when those games were televised, filmed, photographed, or

when the Players made public appearances in uniform in order to advertise.  The Riddell

Defendants' grievous misconduct resulting in harm to hundreds of former players was

foreseeable.  These common-law duties need no interpretative assistance from the CBAs, to

which the Riddell Defendants were never signatories or parties.

*Fourth,* Riddell relies on scant case law, and spends much of its Argument IV (its case-

law section) trying to distinguish a favorable opinion for Plaintiffs in which the court held that

conspiracy claims against Riddell based on its fraudulent cover-up with the NFL were *not*

preempted.  Overall, the few cases Riddell attempts to grapple with do not support its arguments

at all, and actually undermine them.  The claims here are not preempted.

## II.   RELEVANT BACKGROUND

Plaintiffs are retired professional football players who suffered concussive and sub-

concussive head trauma while participating in football games, or training and practice, wearing

Riddell helmets, and who suffer from the subsequent risk and/or symptoms of latent brain injury

from this repetitive head trauma.  SAC ¶8.  Each injured Player has initiated this lawsuit for his

own personal reasons, notwithstanding Riddell Defendant's inappropriate and ill-taken

---

[4] According to Nielsen data cited by ESPN.com, an average of 15 million people have watched
NFL games in the 2017-2018 season, down about 7.5 percent from the 16.2 million average
viewers through Week 6 in 2016-2017, http://www.sportingnews.com/nfl/news/nfl-tv-ratings-
viewership-cbs-fox-stock/17014jc77y5rpzqhoiw8tugx8 (last visited March 26, 2018).

denigrating suggestion that these people already are receiving payments from the NFL and therefore, are simply gold digging by bringing their claims against the Riddell Defendants.

As a result of the accumulation of multiple head traumas the Players suffered while wearing purportedly Riddell helmets to protect their heads, Plaintiffs are suffering latent and/or chronic debilitating brain diseases such as early-onset dementia, amyotrophic lateral sclerosis ("ALS"), chronic traumatic encephalopathy ("CTE"), memory loss, headaches, confusion, severe depression, extreme emotional lability, inability to control their outbursts, anxiety and other serious neurological maladies.  SAC ¶¶8,103,379.

A. **The Riddell Defendants' Fraudulent and Self-Serving Cover-Up of Known Neurological Risks Substantially Contributed to the Injuries and Harm Suffered by the Players and their Families.**

Despite knowing for decades the long-term risks of repeated head traumas in professional football, the helmet manufacturers failed to protect the users of the helmets and failed to warn them of the risks and consequences of the accumulation of head trauma their professional football career entailed.  Riddell Defendants had the best opportunity to warn the players of the risks and dangers of latent brain disease from repetitive head traumas and that the disease symptoms may not surface until long after they left professional football.  But, Riddell ignored its duty and ignored the opportunity:  Riddell failed to take any action to warn the Players.  The Riddell Defendants manufactured and supplied most of the helmets and other personal safety equipment and could have used the supply of that equipment, which indeed did not keep the Players safe, as a way to clearly warn Players.

Left to fend for themselves, some of the Players committed suicide, others sought drugs and alcohol to medicate themselves as a result of the symptoms of the latent brain diseases, others were and are lost and homeless.  These horrible outcomes were predictable, and both the Riddell Defendants and the NFL Defendants knew of these tragic dangers but nonetheless, each

Defendant refused to take any steps to protect any of the retired Players from incurring or exacerbating conditions caused by the accumulation of head traumas.

As set forth in the SAC, the Riddell Defendants acted in concert with the NFL, NFL P, and NFL C to conceal and downplay the dangers and to attain maximum market share and profits from professional football and from the sale of the Riddell Defendants' football gear, while they continued to deceive the Players, their families, and the public that repetitive head trauma did not pose a risk of permanent latent brain injuries.  The Riddell Defendants possessed actual knowledge connecting concussive and sub-concussive blows to the head to brain injuries and disease, yet created elaborate deceptions to conceal the permanent harm that resulted.  *Id.* at ¶¶ 16,57.

The NFL first granted Riddell an exclusive license in 1989.  Through 2011, Riddell has been the only company allowed to display its name on an NFL helmet and to produce miniature souvenir helmets.  While Players technically could wear any helmet they chose, the clubs provided the helmets and uniforms to the Players.  Acting together with the NFL Defendants, the Riddell Defendants developed sham science, and, knowingly developed, licensed, and marketed ineffective harm-reducing technology and equipment.  Defendants funneled millions of dollars in funds to the 501(c)(3) entity that  NFL Defendants owned and ran called NFL Charities in order to gain financial benefit in the process of weaving this elaborate web of deception.  *Id.* at --. Specifically, the Riddell Defendants, along with the NFL, funded and populated a sham committee of "experts" to further the "big lie" that concealed and downplayed the permanent harm from repetitive head trauma. *Id.* at ¶¶ 16,57.   And, at the same time, the Riddell Defendants supplied the helmets prominently worn in the 'films' made by the NFL showing glorified violence to entice and excite the audience. *Id.* at ¶¶85-97.

The Riddell Defendants, together with the NFL and the NFL P, perpetrated a massive

fraud on the Players and the public by, among other things:

- Continuing to conceal a known link between amyotrophic lateral sclerosis and repetitive head trauma in NFL Players by funneling $125,000 to in 501(c)(3) contributions to tobacco-industry-supported neurologist Dr. Stanley Appel to research the link between ALS and football;

- Funneling "Mild Traumatic Brain Injury ("MTBI") grant" money to reputed defense-expert firm Exponent Failure Analysis, Inc., which has previously argued that secondhand smoke did not cause cancer, to devise neuropsychological test protocol under Dr. Robert Fijan, Ph.D.;

- Funneling several hundred thousand dollars per year through the NFL's 501(c)(3) to David C. Viano, a professional defense-side expert in the automotive industry, who spent his entire career testifying for General Motors and other auto manufacturers in product liability lawsuits and has made millions of dollars doing it;

- Funneling "MTBI grant" money to National Operating Committee on Standards for Athletic Equipment ("NOCSAE") to support self-serving research endeavors;

- Publishing a total of 16 papers in the peer-reviewed journal Neurosurgery on "Concussion in Professional Football" premised on knowingly false data sets;

- Agreeing with the NFL entities to provide the safest possible football helmets licensed as the "official helmet of the NFL" with the Riddell name, while knowing that none of these helmets warned or protected against the dangers of latent brain disease;

- Attempting to create a fraudulent "concussion severity index" in the 1990s;

- Knowingly relied upon false data in concussion "epidemiology" research;

- Riddell, NFL, and NFL C (not NFL P) negligently performed voluntarily undertaken duties pertaining to the MTBI-Committee;

- Funneling money through the NFL's 501(c)(3) arm, NFL Charities to the fraudulent "MTBI committee" to support Riddell helmet products as superior, through flawed research at Wayne State University;

- Funneling money with fraudulent "MTBI grant" money to expert witness firms such as the highly controversial "Exponent Failure Analysis," also infamous for its controversial (and discredited) work for Big Tobacco;

- Riddell Defendants and the NFL negligently marketed football and the Riddell "Revolution" helmet;

- NFL P (not NFL; not NFL C) and Riddell breached respective duties to license in non-negligent fashion and to provide equipment sufficient to prevent injury;

- Defendants Riddell and the NFL hired, retained, and supervised Dr. Viano for the purpose of performing non-clinical research; and that they each failed to properly investigate his credentials before retaining him  and/or supervise him as he propagated injurious false science;

- Riddell Defendant placed a defective helmet-label warning claim for omitting CTE, suicidality, and neurodegeneration, among other things.

SAC ¶60.

Indeed, Defendants—all of whom shared financial responsibility for this undertaking—published at least 16 sham science journal articles that made notoriously false conclusions on brain injury as applied not merely to NFL Players but also to teenagers and children. *Id.* at ¶ 60. Plaintiffs placed their trust and confidence in Riddell Defendants to protect them from unknown harms and warn them when their health was in jeopardy—particularly, when it had to do with their brains.  Defendants voluntarily assumed this duty as provisionary of the "safety" helmets. SAC ¶ 64.

### B.    The Collective Bargaining Agreements Are Outside the SAC and Are Irrelevant to the Riddell Defendants.

The SAC does not mention the CBAs, or any CBA provision.  This is unsurprising because the agreements between the NFL Players Association and the Clubs largely related to game- and season-specific issues.  There is no mention of the Riddell Defendants.  This case has *nothing* to do with any provision in any of the Agreements, any Player's entitlement to any

benefit under any CBA, or any issue of representation by NFPLA.  None of the Riddell

Defendants engaged in any labor negotiations with the NFLPA, the clubs, or the Players.

Instead, the Riddell Defendants "engage[d] in tortious and injurious conduct and to

conceal material facts regarding the connection between blows to the head and latent brain

disease" SAC ¶ 8.  Due to the Riddell Defendants' *independent* and *independently actionable*

fraudulent, tortious, and negligent conduct, the Players sustained latent and chronic injuries, even

death.  *Id.*

Although Riddell does not bother to connect its alleged misconduct with any CBA

provision, it does incorporate the NFL defendants' arguments.   Br. at 22-23.  An examination of

these provisions (assuming this Court will even consider matters outside the pleadings) belies the

contention of subject matter overlap:

|   | Provision Cited by NFL in NFL Brief and Adopted by Riddell | Reason(s) Why Provision Inapplicable |
|---|---|---|
| 1 | "If a Club physician advises a coach or other club representative of a player's physical condition which adversely affects the player's performance or health, the physician will also advise the player. If such condition could be significantly aggravated by continued performance, the physician will advise the player of such fact in writing before the player is again allowed to perform on-field activity." | • No duties on NFL or Riddell Defendants.<br><br>• Only duties on individual Clubs and Club personnel.<br><br>• Relates only to active players.<br><br>• Relates to timing and circumstances of returning to active play.<br><br>• Nothing to do with cover-up of known long-term and serious neurological injuries or voluntary assumption of duties. |
| 2 | "All determinations of recovery time for major and minor injuries must be by the club's medical staff and in accordance with the club's medical standards …. The prognosis of the player's | • No duties on NFL or Riddell Defendants.<br><br>• Only duties on individual Clubs |

| Provision Cited by NFL in NFL Brief and Adopted by Riddell | Reason(s) Why Provision Inapplicable |
|---|---|
| recovery time should be as precise as possible." | and Club personnel. <br><br>• Relates only to active players. <br><br>• Relates to timing and circumstances of returning to active play. <br><br>• Nothing to do with cover-up of known long-term and serious neurological injuries or voluntary assumption of duties. <br><br>• No mention of the Riddell Defendants. |
| 3   "[I]f Player is injured in the performance of his services under this contract and promptly reports such injury to the Club physician or trainer, then Player will receive such medical and hospital care during the term of this contract as the Club physician may deem necessary …." | • No duties on NFL or Riddell Defendants. <br><br>• Only duties on individual Clubs and Club personnel. <br><br>• Relates only to active players. <br><br>• Relates to player receipt of medical services in real time for injuries at work. <br><br>• Ignores that the neurological and neurocognitive injuries Plaintiffs suffer were not detectable at the time of active play. <br><br>• Nothing to do with cover-up of known long-term and serious neurological injuries or NFL's assumption of its own duties or Riddell's assumption of its own duties. |
| 4   "Each Club will have a board-certified orthopedic surgeon as one of its Club physicians.  The cost of medical services rendered by Club physicians will | • No duties on NFL or Riddell Defendants. |

| | Provision Cited by NFL in NFL Brief and Adopted by Riddell | Reason(s) Why Provision Inapplicable |
|---|---|---|
| | be the responsibility of the respective Clubs." | <ul><li>Only duties on individual Clubs and Club personnel.</li><li>Relates only to active players.</li><li>Relates to type of real-time medical care provided by Club.</li><li>Nothing to do with cover-up of known long-term and serious neurological injuries voluntary assumption of duties.</li></ul> |
| 5 | "All full-time head trainers and assistant trainers … will be certified by the National Athletic Trainers Association.  All part-time trainers must work under the direct supervision of a certified trainer." | <ul><li>No duties on NFL or Riddell Defendants.</li><li>Only duties on individual Clubs and Club personnel.</li><li>Relates only to active players.</li><li>Relates to trainer qualification.</li><li>Nothing to do with cover-up of known long-term and serious neurological injuries or voluntary assumption of duties.</li></ul> |
| 6 | "The home team shall provide a physician and an ambulance at each game available to both teams; said ambulance facilities shall be located at or adjacent to the stadium, with the driver in attendance in the ambulance for the use of both competing teams." | <ul><li>No duties on NFL or Riddell Defendants.</li><li>Only duties on individual Clubs and Club personnel.</li><li>Relates only to active players.</li><li>Relates to ensuring doctor and ambulance available to competing and home teams.</li><li>Nothing to do with cover-up of known long-term and serious neurological injuries or voluntary</li></ul> |

| | Provision Cited by NFL in NFL Brief and Adopted by Riddell | Reason(s) Why Provision Inapplicable |
|---|---|---|
| | | • assumption of duties. |
| 7 | "[A]ll club physicians and medical personnel shall comply with all federal, state, and local requirements, including all ethical rules and standards established by any applicable government and/or other authority that regulates or governs the medical profession in the Club's city." | • No duties on NFL or Riddell Defendants.<br><br>• Only duties on individual Clubs and Club personnel.<br><br>• Relates only to active players.<br><br>• Highly general statement of commitment to compliance, no specific duties.<br><br>• Nothing to do with cover-up of known long-term and serious neurological injuries or voluntary assumption of duties. |
| 8 | "The NFL shall develop and implement an online, 24-hour electronic medical record system within 24 months of the effective date of this Agreement or such longer period as the parties may agree." | • Part of the 2011 CBA only; facially inapplicable to virtually all of the Plaintiffs here.<br><br>• Uncited language shows it relates to who pays for the development and implementation of a medical record system and whether it is counted as a Player Benefit Cost; no substantive information or suggestion of creating certain kinds of records.<br><br>• Nothing to do with cover-up of known long-term and serious neurological injuries or voluntary assumption of duties. |
| 9 | "The parties agree to establish an Accountability and Care Committee, which will provide advice and guidance regarding the provision of preventive, medical, surgical, and rehabilitative care for players by all clubs.  The Committee | • Part of 2011 CBA only; facially inapplicable to virtually all of the Plaintiffs here.  No mention of the Riddell Defendants. |

| | **Provision Cited by NFL in NFL Brief and Adopted by Riddell** | **Reason(s) Why Provision Inapplicable** |
|---|---|---|
| | shall … develop a standardized preseason and postseason physical examination and educational protocol to inform players of the primary risks associated with playing professional football and the role of the player and the team medical staff in preventing and treating illness and injury in professional athletes; … conduct research into prevention and treatment of illness and injury commonly experienced by professional athletes … [and] assist in the development and maintenance of injury surveillance and medical records systems ….” | • Focus on individual Clubs.<br><br>• Relates only to active players.<br><br>• Nothing to do with cover-up of known long-term and serious and latent neurological injuries or diseases or voluntary assumption of duties. |
| 10 | “If any player submits a complaint to the [Accountability and Care] Committee regarding Club medical care, the complaint shall be referred to the league and the player’s Club, which together shall determine an appropriate response or corrective action if found to be reasonable.” | • Part of 2011 CBA only; facially inapplicable to virtually all of the Plaintiffs here.  No mention of the Riddell Defendants.<br><br>• Relates only to active players.<br><br>• No substantive obligations.<br><br>• Nothing to do with cover-up of known long-term and serious neurological injuries or voluntary assumption of duties. |
| 11 | “Each Club shall use its best efforts to ensure that its players are provided with medical care consistent with professional standards for the industry.” | • No duties on NFL or Riddell Defendants.<br><br>• Only duties on individual Clubs and Club personnel.<br><br>• Relates only to active players.<br><br>• Generalized statement.<br><br>• Nothing to do with cover-up of known long-term and serious neurological injuries or voluntary assumption of duties. |

| | Provision Cited by NFL in NFL Brief and Adopted by Riddell | Reason(s) Why Provision Inapplicable |
|---|---|---|
| 12 | "The NFLPA shall have the right to commence an investigation before the Joint Committee [on Player Safety and Welfare] if the NFLPA believes that the medical care of a team is not adequately taking care of player safety.") | • No duties on NFL or Riddell Defendants.<br><br>• Relates only to active players.<br><br>• Relates to conduct of Club and Club personnel.<br><br>• Nothing to do with cover-up of known long-term and serious neurological injuries or voluntary assumption of duties. |
| 13 | "A player will have the opportunity to obtain a second medical opinion," and the Club shall bear "the responsibility" for "the costs of [these] medical services." | • No duties on NFL or Riddell Defendants.<br><br>• Only duties on individual Clubs.<br><br>• Relates only to active players.<br><br>• Relates to payment.<br><br>• Nothing to do with cover-up of known long-term and serious neurological injuries or voluntary assumption of duties. |
| 14 | "A player will have the right to choose the surgeon who will perform surgery … Any such surgery will be at Club expense[.]" | • No duties on NFL or Riddell Defendants.<br><br>• Only duties on individual Clubs.<br><br>• Relates only to active players.<br><br>• Relates to surgeon selection.<br><br>• Nothing to do with cover-up of known long-term and serious neurological injuries or voluntary assumption of duties. |

| | Provision Cited by NFL in NFL Brief and Adopted by Riddell | Reason(s) Why Provision Inapplicable |
|---|---|---|
| 15 | "[E]ach player will undergo a standardized minimum pre-season physical examination … which will be conducted by the Club physician," and will further undergo a "post-season physical examination" at the request of the player or Club. | • No duties on NFL or Riddell Defendants.<br><br>• Only duties on individual Clubs and Club personnel.<br><br>• Relates only to active players.<br><br>• Relates to pre- and post-season exams.<br><br>• Nothing to do with cover-up of known long-term and serious neurological injuries or voluntary assumption of duties. |
| 16 | "Player will undergo a complete physical examination by the Club physician upon Club request, during which physical examination Player agrees to make full and complete disclosure of any physical or mental condition known to him which might impair his performance under this contract …." | • No duties on NFL or Riddell Defendants, it is an obligation of the Clubs alone.<br><br>• Corollary of above.<br><br>• Relates only to active players.<br><br>• Nothing to do with cover-up of known long-term and serious neurological injuries or voluntary assumption of duties. |
| 17 | "Player may examine his medical and trainers' records in the possession of the Club or Club physician two (2) times each year, once during the pre-season and again after the regular season. Any player or former player may obtain a copy of his medical or trainer's records upon request during the off-season.  Player's personal physician may, upon presentation to the Club physician of an authorization signed by the player, inspect the player's medical and trainers' records [] forwarded to him …." | • No duties on NFL or Riddell Defendants.<br><br>• Only duties on individual Clubs and Club personnel.<br><br>• Relates primarily to active players.<br><br>• Appears only to memorialize likely pre-existing access to personal medical records.<br><br>• Nothing to do with cover-up of |

| | Provision Cited by NFL in NFL Brief and Adopted by Riddell | Reason(s) Why Provision Inapplicable |
|---|---|---|
| | | known long-term and serious neurological injuries or voluntary assumption of duties. |
| 18 | "A Joint Committee on Player Safety and Welfare (hereinafter the 'Joint Committee') [5] will be established for the purpose of discussing the player safety and welfare aspects of playing equipment, playing surfaces, stadium facilities, playing rules, player-coach relationships, and any other relevant subjects." | • No duties on NFL or Riddell Defendants. <br><br> • Relates only to active players. <br><br> • Process for potential rule changes is different from content of rules being memorialized as obligations. <br><br> • Nothing to do with cover-up of known long-term and serious neurological injuries or voluntary assumption of duties. |
| 20 | "If the NFLPA believes that the adoption of a playing rule change would adversely affect player safety," it may seek to investigate and "request an advisory decision by [an] arbitrator[]" regarding the proposed rule change. | • No duties on NFL or Riddell Defendants. <br><br> • Relates only to active players. <br><br> • Relates to union's non-binding abilities with respect to active player safety. <br><br> • Nothing to do with cover-up of known long-term and serious neurological injuries or voluntary assumption of duties. |

---

[5] The Joint Committee was created "for the purpose of discussing, among other things, the player safety and welfare aspects of playing equipment, playing surfaces, and stadium facilities. The Joint Committee does not have the power to commit or bind any of the signatories to the CBA, however, nor does the CBA establish a contractually agreed upon standard of care applicable to Plaintiff's claims." *See, e.g., Bush v. St. Louis Reg'l Convention,* No. 4:16-cv-250, 2016 WL 3125869, at *4 (E.D. Mo. June 3, 2016).

| | **Provision Cited by NFL in NFL Brief and Adopted by Riddell** | **Reason(s) Why Provision Inapplicable** |
|---|---|---|
| 21 | "The NFLPA will have the right to appoint two persons to attend those portions of the annual meeting of the NFL Competition Committee dealing with playing rules to represent the players' viewpoint on rules.  One of the appointees shall have a vote on all matters considered at the meeting which relate to playing rules." | • No duties on NFL or Riddell Defendants.<br><br>• Relates only to active players.<br><br>• Relates to union attendance at NFL Competition Committee.<br><br>• Nothing to do with cover-up of known long-term and serious neurological injuries or voluntary assumption of duties. |
| 22 | "[T]he interpretation of, application of, or compliance with, any provision of" the CBAs, player contracts, or any applicable provision of the Constitution "pertaining to terms and conditions of employment of NFL players," will be resolved exclusively in accordance with agreed-to arbitration procedures.  Moreover, since 1970, "injury grievances" have been subject to arbitration. | • By its terms, relates to CBA provisions.<br><br>• Relates to active players.<br><br>• Nothing to do with cover-up of known long-term and serious neurological injuries or NFL's assumption of its own duties or Riddell defendants' duties. |
| 23 | "[A] player … will receive an injury protection benefit … [when the] player … [has] been physically unable, because of a severe football injury in an NFL game or practice, to participate in all or part of his Club's last game of the season of injury, as certified by the Club physician …." | • No duties on NFL or Riddell Defendants.<br><br>• Involves Clubs and Club personnel.<br><br>• Relates only to active players.<br><br>• Nothing to do with cover-up of known long-term and serious neurological injuries or voluntary assumption of duties. |
| 24 | "The parties agree to design and establish a new plan … to provide medical benefits to former Players who are … determined … to have 'dementia.'" [Amended in 2011: "[T]he Disability Plan will be amended to provide a benefit for | • No duties on NFL or Riddell Defendants.<br><br>• No bearing on whether the NFL breached a duty to protect those |

| **Provision Cited by NFL in NFL Brief and Adopted by Riddell** | **Reason(s) Why Provision Inapplicable** |
|---|---|
| those eligible Players, as defined below, who have permanent, neuro-cognitive impairment . . . ."] | players from the risk of developing latent dementia in the first place.<br><br>• Remedial insurance and health benefits provisions unrelated to tort liability.<br><br>• First and only mention of permanent, neuro-cognitive impairment in 2011.<br><br>• Nothing to do with cover-up of known long-term and serious neurological injuries or voluntary assumption of duties. |

Thus, the CBAs, as relevant here, relate to the roles and obligations of Clubs and Club doctors and trainers having to do with active player fitness and injuries.  Some address generalized, process-oriented, non-binding statements about subjects related to Player safety only at the most general levels and/or rule-making.  Finally, and notably, the sole language even *mentioning* the issues in this case—the reference to neuro-cognitive impairment (Row 24 above)—first appeared in the 2011 CBA, involving a benefit not implemented before then, *and even these provisions say nothing about the duties of protection and mitigation in the first place*.  Dkt. No. 9522, at 17.  Indeed, Riddell does not claim, nor could it claim, that it has obligations under or is a part of any CBA.

## III.   <u>LEGAL STANDARD</u>

The Riddell Defendants have raised the affirmative defense of preemption under § 301 of the LMRA, 29 U.S.C. § 185.  *See* 29 U.S.C. § 185(a) ("[s]uits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district

court of the United States having jurisdiction of the parties").   The Riddell Defendants have the burden to establish that the Players' claims require this Court to resolve an *actual dispute* over the meaning of a *specific provision* of a collective bargaining agreement ("CBA").  *See Kline v. Sec. Guards, Inc.*, 386 F.3d 246, 256-261 (3d Cir. 2004).  *Kline* instructs that a defendant cannot manufacture a non-credible interpretation of a CBA to seek preemption; LMRA preemption requires a "reasonable level of credibility" over a purported dispute.  "Parallelism" between a claim and a CBA does not justify preemption.  *See Lingle*, 486 U.S. at 407-09 (§ 301 preempts a state-law claim only if "resolution" of that claim "requires" the court to construe the CBA; noting that the section "says nothing about the substantive rights" that employees enjoy under state law); *Livadas v. Bradshaw,* 512 U.S. 107, 124 (1994) ("bare fact that a [CBA] will be consulted in the course of state-law litigation" does not justify the defense).

That a CBA provision in some general sense forms "part of the context in which [a] claim must be addressed" does not suffice to get claims dismissed on preemption grounds.  *Kline*, 386 F.3d at 257.  In fact, "even if dispute resolution pursuant to a [CBA]" and "state law" would "require addressing precisely the same set of facts" does not necessarily mean there is preemption.   *Lingle*, 486 U.S. at 409-10; *see also Livadas*, 512 U.S. at 125 (holding that a CBA's relevance to "damages computation" does not justify § 301 preemption).  These principles are consistent with the purpose of the LMRA, which again is to ensure a uniform body of law to resolve labor disputes.  *See Berda v. CBS, Inc.*, 881 F.2d 20, 27 (3d Cir. 1989).[6]  The LMRA does not displace state common-law claims and remedies when a party engages in

---

[6] *Berda* also explained that "the preemption of state law engendered by section 301 is only occasioned when the claim raised 'on the face of the complaint' substantially depends on interpretation" of a CBA.  *Berda*, 881 F.2d at 24.  Thus, to the extent the Riddell Defendants purport to incorporate other Defendants' arguments that the claims "arise out of" CBAs even if they are not intertwined with them or depend on them (an argument Riddell itself does not articulate), the position is inconsistent with applicable law.

tortious or unlawful conduct independent of a CBA.  *See Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21 (1987) (LMRA preemption should not be "lightly inferred" giving it risks usurping "the traditional police power of the State").

In addition, because this case is at the pleading stage, the Riddell Defendants have an additional burden of showing that the preemption defense is "apparent on the face of the complaint."  *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997) (holding that motion to dismiss is not the "proper vehicle" to decide a preemption defense absent its facial application) (internal quotations omitted).  Recently, for example, the court in *In re Nat'l Hockey League Players' Concussion Injury Litig.*, 189 F. Supp. 3d 856, 875 (D. Minn. 2016) denied a LMRA pre-discovery motion as premature.  In so doing, the court illustrated the problems with an attempted preemption defense at the pleading stage:

> [T]he Amended Complaint does not reference any CBAs, and to the extent that Defendant has identified particular provisions that purportedly must be interpreted in order to resolve Plaintiffs' claims, it is questionable whether those CBAs are embraced by the pleadings or are even relevant given that Plaintiffs are retired players who are no longer subject to collective bargaining.

*Id.* (noting the "major fact questions" requires the development of a record).[7]  The Riddell Defendants failed to meet their substantial burden of demonstrating that this Court should dismiss the Players' claims based on the affirmative defense of LMRA preemption.

---

[7] Additionally, the Riddell Defendants do not distinguish between, and in some ways appear to confuse, complete preemption and ordinary preemption.  *See In re Nat'l Hockey League Players' Concussion Injury Litig.*, 189 F.Supp.3d at 864–68. Complete preemption is a jurisdictional doctrine used to remove state claims to federal court.  *Id.* at 864.  "In contrast, ordinary preemption is a federal defense that exists where a federal law has superseded a state law claim." *Id.* (internal citations removed).

IV.   **ARGUMENT**

A.   **The Players' Claims Against the Riddell Defendants Do Not Depend Upon and Are Not Intertwined with the Interpretation of Any Term of Any CBA.**

1.   **The Players allege misconduct outside of and unrelated to CBAs.**

Adjudication of the Players' claims does not require interpretation of any CBA provision and the claims do not arise out of any CBA.  Even putting aside the impropriety of the Riddell Defendants going outside of the SAC on a motion to dismiss as to an affirmative defense, it is noteworthy that the Riddell Defendants have been unable to locate any CBA provision remotely applicable to the Players' claims against Riddell.  *See* Section II(B).

This case is thus squarely within the line of recent authority (including cases post-dating the earlier briefing on this issue before this Court, and one involving the Riddell Defendants) that applies a proper analysis of LMRA preemption and finds that where, as here, a plaintiff alleges independent misconduct involving duties under state common-law, preemption is not appropriate.  As the court stated in *Oliver v. Riddell*, No. 1:16-cv-04760, 2016 WL 7336412 at *3-4 (N.D. Ill. Jul. 19, 2016):

> The "illegal act" in this instance, as alleged in the complaint, is the establishment of sham research committees (funded by both the NFL and Defendants), which in turn created sham studies that grossly inflated the effectiveness of Riddell helmets at mitigating certain kinds of head trauma. . . .  It is difficult to see how or why the CBAs would play a role in this analysis. To be sure, the CBAs contain many provisions pertaining to the NFL's duty to monitor player health and equipment, but the relevant question is not whether the NFL lived up to its standard of care under the CBAs. Rather, the issues are (1) whether Defendants manufactured a dangerous product, as defined by Illinois law, and (2) whether Defendants and the NFL agreed to work together to hide those dangers. Put differently: either Riddell helmets were dangerously defective, or they were not; and either Riddell and the NFL agreed to hide those dangers by funding/conducting sham studies, or they did not. A jury would not even need to glance at the CBAs to determine these facts.

*Id.* (rejecting defendants' preemption arguments). Other recent cases include:

- *In re Nat'l Hockey League Players' Concussion Injury Litig.*, 189 F. Supp. 3d at 867-83 (LMRA did not preempt negligence, fraud, or negligent misrepresentation claims; rejecting virtually identical arguments, in the context of professional hockey, that the Riddell Defendants make here);

- *Gulley v. Gen. Motors, LCC*, No. 1:17-cv-00087, 2018 WL 526747, at *5 (M.D. Tenn. Jan. 16, 2018) (member of UAW bargaining unit said he was terminated for having a handgun in his car; no preemption at the pleading stage because, even if there were multiple reasons for his termination, one of them related to what employee said was a violation of Tenn. law allowing firearms);

- *Benavidez v. Sandia Nat'l Labs*, 212 F. Supp. 3d 1039 (D.N.M. 2016) (illustrating need for careful parsing of CBA language alongside specific state law at issue and how it is proven; holding that while intentional infliction of emotional distress claim for employee's being downgraded was preempted, that same employee's intentional infliction claim based on the employer's belittling her for failing to pass coursework in connection with advancement turned on whether employer's conduct was outrageous under state law and was *not* preempted);

- *Green v. Bimbo Bakeries USA,* 77 F. Supp. 3d 980, 985 (N.D. Cal. 2015) (employee's misrepresentation claims not preempted *even though oral agreement covered the same subjects as the CBA*; "whether a right is independent of a collective bargaining agreement does not depend on whether the claim arises from precisely the same set of facts as a potential claim pursuant to a CBA dispute resolution process, but rather whether the legal character of the claim is such that the right exists separate and apart from any provision in the CBA") (internal citations omitted and emphasis added);

- *Green v. Pro Football, Inc.*, 31 F. Supp. 3d 716, 727 (D. Md. 2014) (football player's battery and civil conspiracy claims not preempted; noting that "professional football players have successfully brought suits for intentional injuries in court systems in the past, unblocked (so to speak) by the existence of a CBA").

These cases—and earlier ones in and out of this precise context—reflect that the courts rolled up their sleeves and did the work, as directed by the Supreme Court and current appellate law, of carefully examining the CBA provisions at issue (often after discovery) alongside the actual claims in the case.

> **2.      The Riddell Defendants' failure to conduct analysis under the specific laws at issue or the CBAs purportedly at issue is a threshold problem with their motion.**

While Defendants' misconduct is unlawful under the laws of any and every jurisdiction, and in fact all states impose a duty to disclose the material information that the Riddell Defendants covered-up and lied about, the Riddell Defendants' scattershot approach to seeking to dismiss every Player's claim for serious injuries is not viable.

In footnote 117, Riddell argues that choice-of-law determinations are premature. Yet, if so, this underscores how preemption arguments are premature. Riddell also argues that Plaintiffs are estopped from raising choice of law because they rightly noted that there are common issues of law in opposing a motion to sever. This confuses two issues: whether claims belong together for purposes of adjudication or certain pre-trial adjudication, and the ultimate legal standards to which any one plaintiff must prove individual claims. It may be that there are numerous common if not identical legal issues, but an idiosyncratic difference between two laws may

matter for this specific analysis.[8]  Riddell elides such differences.  And, the far more serious

problem is that Riddell misstates the law, as discussed further below.

In addition, Riddell, like the NFL, makes no effort to match Players to the relevant CBAs

in their actual analysis.  It is notable that Riddell steers clear of any specific CBA term,

especially since all of the CBAs are inapplicable.  Riddell's imprecise approach in these two

areas is a basis on which to deny the motion altogether or, at minimum, underscores that it

should be dismissed as premature.  *See, e.g.*, *In Re Nat'l Hockey League Players' Concussion*

*Injury*, 189 F. Supp. 3d at 870 (discussing how the questions about the different CBAs and their

applicability, and questions about when causes of action accrued further militated in favor of

denying a motion to dismiss on the pleadings).

### 3.      Fraud-based claims are not preempted.[9]

The Riddell Defendants argue that the Players' fraud-based claims—which it defines to

include negligent misrepresentation, civil conspiracy[10], and breach of warranty—require

interpretation of CBA provisions.  This is incorrect.

---

[8] For example, in various states, there may be additional arguments for rejecting LMRA preemption or whose law counsels against the need to even look at the CBAs.  Some states impose quasi-fiduciary status to certain relationships, in others, "a tortfeasor cannot shift responsibility to another party" by "contract."  *LaMeau ex rel. Crnkovich v. City of Royal Oak*, No. 289947, 2012 WL 3590043, at *4 (Mich. Ct. App. Aug. 21, 2012) (*per curiam*).   Different states may have different rules about comparative fault (which Plaintiffs do believe is relevant here, but about which Riddell argues).

[9] *See* Counts III (negligent misrepresentation), IV (fraud), IX (fraudulent concealment), VII (breach of implied warranty), and VIII (civil conspiracy).  Riddell offers no argument or case law to support its argument that warranty, a prototypical products claim, is preempted (and they cannot claim it requires the same proof as fraud, although they appear to suggest such a conflation).

[10] Recent opinions have rejected preemption of civil conspiracy claims.  *See Green*, 31 F. Supp. 3d at 727, and *Oliver*, 2016 WL 7336412.

### a.    The Riddell Defendants misstate the elements of fraudulent concealment and non-disclosure.

The Riddell Defendants conflate misrepresentation with concealment, focusing on the duty-to-speak element that only the latter claim implicates.[11]  Relatedly, the Riddell Defendants misstate the law of fraudulent concealment and fraud by omission/fraudulent non-disclosure in implying that only certain types of special relationships can give rise to the duty to speak.  In fact where, as here, Defendants have covered-up dangerous *and material* information under circumstances giving rise to the duty to speak (including partial misstatements), there is fraud.

Here, the Players allege that the Riddell Defendants committed fraud by failing to disclose the truth, and orchestrating an affirmative campaign of disinformation about head injuries in football.  Plaintiffs further make clear that the Riddell Defendants' duties  to speak arise due to their: (a) "superior special knowledge, information and access to material scientific research and medical information that Plaintiffs did not have access to, and was not readily available to Plaintiffs and the general public"; (b) their having "voluntarily and gratuitously inserted themselves into the business of studying (and subsequently rendering expert opinions about) the relationship between repetitive head impacts in football and brain injury"; and (c) communicating with Plaintiffs and the public "while completely omitting material information."  SAC ¶¶355,365, 363, 404-414 Even absent a fiduciary or special relationship, the Players' allegations satisfy the requirements of each state's non-disclosure laws.  Courts examine the facts and circumstances of a case to determine whether a duty to speak exists.  For example, under Pennsylvania law, a distinction is recognized between active concealment and mere

---

[11]Affirmative misrepresentations can be fraudulent whether or not a duty to speak exists. *M.S. v. Cedar Bridge Military Acad.*, 904 F.Supp.2d 399, 412 (M.D. Pa. 2012) ("the court may nonetheless impose liability on a defendant who assumes a duty of care by his affirmative actions"); *see also* Section 323 of the Restatement (Second) of Torts.

silence.  *See Aetna, Inc. v. Health Diagnostic Lab., Inc.*, No. 15-cv-1868, 2015 WL 9460072, at

*4-5 (E.D. Pa.  Dec. 28, 2105); *see also Roberts v. Estate of Barbagallo*, 531 A.2d 1125 (Pa.

Super. Ct. 1987) (noting that Pennsylvania common law subsumes, and recognizes, the tort of

fraudulent concealment as stated in the Restatement (Second) of Torts ¶ 550, which imposes

liability on a party who, by concealment or other action, intentionally prevents the other from

acquiring material information).  Other states where the Players reside or played are in accord.[12]

Thus, the Riddell Defendants' fraud claims are not intertwined with, and do not require

interpretation of, any CBA provision.  The Riddell Defendants have not identified (and could not

identify) identify any CBA provision requiring the Riddell Defendants to do anything  at all, let

alone with respect to concussions.  Again, the CBA provisions at issue relate to Clubs and/or

active players and/or simply mention the existence of committees or the ability to make rules,

untethered to the content of any purported actual rules, let alone rules credibly requiring

application here.  There is nothing that remotely refers to the duties of the equipment supplier.

---

[12] Riddell relies on inapposite cases that merely state the existence of a duty to disclose as an element of fraudulent concealment.  None of the cases undermines the well-established law that the duty to speak *arises in the circumstances here for various reasons*.  *See, e.g., Smith v. Ramis*, 647 Fed.App'x 679 (9th Cir. 2016) (unpublished) (affirming summary judgment in legal malpractice case); *Myre v. Meletio*, 307 S.W.3d 839 (Tx. Ct. App. 2010) (post-trial case involving flood-prone residential lots); *Aubrey v. Sanders*, No. 07-cv-0137, 2008 WL 4443826 (W.D. Pa. Sept. 26, 2008) (summary judgment relating to commercial investment context); *Matlin Patterson ATA Holdings, LLC v. Fed. Express Corp.*, 87 A.D. 3d 836 (N.Y. App. Div. 2011) (business dispute; investor did not adequately allege special relationship between company and investor); *Manti's Transp., Inc. v. C.T. Lines, Inc.*, 68 A.D.3d 937 (N.Y. App. Div. 2009) (summary judgment relating to commercial business dispute); *Bortz v. Noon*, 729 A.2d 555 (Pa. 1999) (post- trial context involving circumstances under which real estate brokers are liable for agents' misrepresentations).  *Atwater v. NFLPA*, 626 F.3d 1170 (11th Cir. 2010), involved claims against the NFL in connection with investment advice from third party financial advisors. There was a CBA-mandated career-planning program, and the CBA contained a disclaimer that the players were solely responsible for their own financial affairs.

**b.     The Riddell Defendants misstate how the Players have alleged, and will prove, justifiable reliance.**

The Riddell Defendants argue that the justifiable reliance element of fraud requires the interpretation of the CBA provisions relating to health and safety.  That reliance can be inferred or demonstrated based on a variety of circumstances does not help the Riddell Defendants' arguments.  *See, e.g., In re Resorts Int'l, Inc.*, 181 F.3d 505, 510 (3d Cir. 1999) (reliance inferred "from the various facts and circumstances of a case").  The Riddell Defendants, like the NFL, suggest that because people can (reasonably) rely on a number of things, the CBA *could have been* one of them.  Yet there is no allegation or evidence that any Player *did* rely on any CBA provision, and even were it otherwise it would be arguable whether such reliance would have been reasonable *given the CBA provisions have nothing to do with the allegations in this case*. The CBAs are not relevant to the reliance element of the fraud claims or reasonableness in any context, and certainly have not been shown to be at this early juncture.

Further, reliance on "omitted information may be presumed where such information is material." *Van Dongen v. CNinsure Inc.*, 951 F. Supp. 2d 457, 469 (S.D.N.Y. 2013); *see also Ochs v. Woods*, 117 N.E. 305, 306 (N.Y. 1917) ("It is incumbent upon a plaintiff in an action for deceit through false representations, to show that he was influenced by them.  It does not require very strong proof to establish it.  In most cases, it may be inferred from the circumstances attending the transaction."); *Varacallo v. Mass. Mut. Life Ins. Co.*, 752 A.2d 807, 817 (N.J. App. 2000) (applying "[t]he presumption or inference of reliance and causation, where omissions of material fact are common"); *Vasquez v. Superior Court*, 484 P.2d 964, 973 (Cal. 1971) (*en banc*) ("[I]f the trial court finds material misrepresentations were made to the class members, at least an inference of reliance would arise[.]").  Here, the information the Riddell Defendants had access to and failed to disclose, even before the MTBI Committee ever existed, was undoubtedly

material to a Plaintiff's decision to play football, to keep playing football, and/or to seek medical treatment for latent injuries, the only evidence of which might—*might*—have been generalized symptoms they lacked the information to know was related to their playing career.

Relatedly, reliance may be inferred where affirmative misrepresentations—here, the Riddell Defendants' campaign of deception—come from an authoritative source and/or are so pervasive that Plaintiffs could not help but be exposed.  *See In re Toyota Motor Corp.*,  No. 10-02151, 2012 WL 12929769, at *20 (C.D. Cal. May 4, 2012) (applying New York law, and explaining that where a defendant "effectively controlled all the information about the transaction, . . . Plaintiffs are entitled to a presumption of reliance."); *Small v. Lorillard Tobacco Co., Inc.*, 252 A.D.2d 1, 18 (N.Y. App. 1998) (same); *In re Tobacco II Cases*, 207 P.3d 20, 40-41 (Cal. 2009) (explaining that "where[] a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements"); *R.J. Reynolds Tobacco Co. v. Martin*, 53 So. 3d 1060, 1069 (Fla. App. 2010) (same).

During all times relevant to this case—including but not limited to all times the Players were active players and already suffered from latent conditions caused by their playing career—the Riddell Defendants' knowledge about head injuries, and the associated health risks, was vastly superior to that available to Players.  The Riddell Defendants were given a virtual monopoly by the NFL and NFL P and participated with the NFL Defendants to create the MTBI Committee because it knew it would hide the truth and that its false statements and omissions and would be given credence by the Players and the public at large.  SAC ¶¶70-77  Reliance is satisfied.

c.      **The Riddell Defendants' other arguments relating to Plaintiffs'
fraud-based claims fail.**

The Riddell Defendants' reliance on *Williams v. Nat'l Football League*, 582 F. 3d 863

(8th Cir. 2009) for its argument that fraud claims (as well as Plaintiffs' entitlement to punitive

damages) must rely upon the CBAs is unavailing.  *Williams* involved a steroid testing policy that

was *expressly incorporated* into the CBA at issue.  That alone is a dispositive difference.  Even

so, however, the court there noted that the dispute stemmed from the CBA, but it reasoned that

the legality of the procedures under the statutory claims would be determined based on "the facts

and the procedure that the NFL actually followed with respect to its drug testing" rather than the

meaning of the CBA provision itself.  *Id.* at 876; *but see id.* at 868 (under a different circuit's

law, finding common-law claims preempted that required interpretation of  specific policy

provisions).[13]  Here, by contrast, the duties of Clubs and Club doctors to treat active Player's

injuries and make timing decisions regarding return to play imposes no obligations on the

Riddell Defendants, or any duties on retired Players, and those duties have nothing to do with the

Riddell's longstanding cover up of the dangers of head trauma in football.

The Riddell Defendants, also citing the same cases as the NFL (*Smith v. Nat'l Football

League Players Ass'n*,  4:14-CV-1559 ERW, 2014 WL 6776306, at *1 (E.D. Mo. Dec. 2, 2014)

and *Ballard v. Nat'l Football League Players Ass'n*, 123 F. Supp. 3d 1161 (E.D. Mo. 2015)),

rely on the NFL Defendants' arguments about the NFL's Rulemaking as evidence of preemption.

Yet at least one court has rightly rejected the existence of the Joint Committee on Player Safety

and Welfare as a basis to find preemption.  *See Brown v. Nat'l Football League*, 219 F. Supp. 2d

---

[13] Notably, the Court in *Nat'l Hockey League* distinguished *Williams v. Nat'l Football League* on
the basis it involved active players and specific CBA revisions raised by the players themselves,
but also because that case "was decided after the parties had engaged in discovery and developed
a factual record."  189 F. Supp. 3d at 876.

at 386-87 ("Article XIII §1(c) of the CBA suggests that while the process of rulemaking has been

bargained over and incorporated in the CBA, the content of the NFL Rules has not been made

part of the CBA").  The argument is even weaker with respect to the Accountability and Care

Committee, which was first agreed to be established in 2011.  *Ballard* and *Smith* are inapposite

because involve claims by players against the *union* and that implicate representation issues.

The specific standard for the breach of the duty of fair representation claims against a union—

"when a union's conduct toward a member of the collective bargaining unit is arbitrary,

discriminatory, or in bad faith"—has no application here.  *Ballard*, 123 F. Supp. 3d at 1167.

The other cases the Riddell Defendants cite also involved direct CBA obligations, *e.g.*, trainers'

alleged refusal to disclose a known injury or refusing to share x-ray results.  *See Sherwin v.

Indianapolis Colts., Inc.*, 752 F. Supp. 1172, 1174-78 (N.D.N.Y. 1990) and *Givens v. Tenn.

Football, Inc.*, 684 F. Supp. 2d 985, 990-91 (M.D. Tenn. 2010).

Finally, any discussion of the remedial provisions of insurance benefits made available

via a committee referenced in a CBA has nothing to do with the liability-creating conduct in the

first place.  These and other CBA provisions are completely removed from Riddell's role as

supplier of ineffective and deceptively unsafe equipment.  As stated earlier, there is no

preemption "even if dispute resolution pursuant to a [CBA]" and "state law . . . would require

addressing precisely the same set of facts."  *Lingle*, 486 U.S. at 409-10; *see also Livadas*, 512

U.S. at 125 (holding that a CBA's relevance to "damages computation" does not justify § 301

preemption).  Thus, there is no basis to find that any fraud-based claim is preempted: the core

issues of Defendants' knowledge, intent, and the impact of their conduct on Players do not

require application of the CBAs.  *See Duncan v. Icenogle*, 873 F. Supp. 579, 584 (M.D. Ala.

1994) (rejecting preemption of fraudulent inducement case because plaintiff's claim "focuses on

the conduct of the defendants and not the CBA," and it "centers on the knowledge and intentions

of the employer and not on the construction of the CBA").

### 4.      Negligence-based claims are not preempted.[14]

The Players' negligence claims likewise will not require this Court to interpret any CBA

provision.  The Riddell Defendants like "every person" in society, has a "social duty" to "take

thought and have a care lest his action result in injuries to others." *Prost v. Caldwell Store, Inc.*,

187 A.2d 273, 276 (Pa. 1963) (internal quotations and citations omitted).  The Riddell

Defendants' duties spring from their voluntary undertakings (SAC ¶¶ 323-336, 341) and their

design, manufacture, and marketing of their products (SAC ¶¶ 337-38).

In arguing for preemption, Riddell first purports not to understand the source of its duties,

notwithstanding the clear and detailed pleading, and it then relies on the same CBA provisions it

relies on throughout its brief:  those that are irrelevant because they impose duties on Clubs and

Club doctors, involve active rather than retired Players, and that speak generally to rule-making

capabilities unconnected to any rules actually made.   Most of the cases on which it relies stand

for the general proposition that negligence is a fact-based test, and its football-specific cases are

distinguishable:

Riddell cites repeatedly to two opinions in cases that were folded into the MDL.  *See*

*Duerson v. Nat'l Football League*, No. 12 CV 2513, 2012 WL 1658353 (N.D. Ill. May 11,

2012); *Maxwell v. Nat'l Football League*, No. CV 11-08394, Order (C.D. Cal. Dec. 8, 2011)

(Dkt. No. 58).[15]  As an initial matter, both opinions arose in the procedural posture of denying

motions to remand; neither held that the plaintiffs' claims should be dismissed.  The LMRA

---

[14] *See* Counts I (negligence), II (negligent marketing), III (negligent representation), V (design
defect), VI (failure to warn).  To the extent Riddell duplicates arguments from its fraud section,
Plaintiffs reference the previous section.

[15] Neither involved a fraud claim.

preemption question raised in these cases was related to jurisdiction: where these claims could proceed, not whether these claims could be brought. Further, neither case addressed the legal theories on which Players rely. Here, the SAC alleges historical facts showing that the NFL and the Riddell defendants assumed a duty of care independent of the Clubs and doctors whose duties the CBAs govern. *Duerson's* complaint focused instead on the general duty "to keep [players] reasonably safe." *Duerson,* 2012 WL 1658353 at *4.

The *Maxwell* plaintiffs, on the other hand, premised one of the NFL's alleged duties on the need to collaborate with Club doctors to make medical diagnoses. The court viewed that theory as requiring the "physician provisions of the CBA [to] be taken into account." *Maxwell* at 2. And, because the court was faced with a motion to remand, it needed to address complete preemption with respect to only that one claim. *See id.* The Players' allegations here are not comparable: unlike the plaintiffs in *Duerson* and *Maxwell*, Players here rely on negligence and fraud theories that simply do not implicate the legal duties of Clubs and doctors. This Court should not hold the Players' claims in the SAC preempted based on these cases. *See Glatts v. Crozer-Keystone Health Sys.*, 645 F. Supp. 2d 446, 451 n.6 (E.D. Pa. 2009) (noting that § 301 preemption must rest on "case-by-case" analysis).

In any event, to the extent that *Duerson* and *Maxwell* support the Riddell Defendants' argument, this Court should decline to follow them. As Players have explained, both decisions rested on the same faulty premise as the Riddell Defendants' arguments here: that the Riddell Defendants' common-law duties depended on the separate duties of Clubs and doctors under the CBAs. That premise is unwarranted, rests on speculation the courts in those cases should have rejected, and whose implausibility is manifest in Defendants' use of these cases in this motion.

The Riddell Defendants' reliance on *Stringer v. Nat'l Football League,* 474 F. Supp. 2d 894 (S.D. Ohio 2007), is similarly misplaced. *Stringer* undermines their preemption defense as to Players' claims that the NFL failed to adopt equipment standards reasonably adapted to minimize head trauma in football.  As to other aspects of the opinion, any superficial similarities do not justify preemption here. In *Stringer*, and unlike here, the plaintiffs expressly tied the NFL's duty to those of team trainers by alleging that "'[a]thletic trainers . . . serve as the first line of treatment for . . . heat-related illness.'"  *Stringer*, 474 F. Supp. 2d at 910.  That allegation— and its dependence on CBA provisions governing trainers—led the *Stringer* court to find preemption.  *See id.* at 910-11.

Players here allege the opposite: that the Riddell Defendants had an independent duty unconnected to those of doctors and trainers.  Unlike the acute heat stroke that the player in *Stringer* suffered, neurodegenerative disorders develop gradually and often result from initially asymptomatic sub-concussive impacts.  SAC ¶¶ 8, 22.  Individual trainers were not treating such long-term injuries, and were not able in context to forestall or prevent their development.  The common law places an independent duty to address those injuries on the Defendants.  And, unlike in *Stringer*, that duty does not depend on the legal meaning ascribed to the CBA provisions governing athletic trainers.[16] Because of the type and nature of duties the NFL and the Riddell defendants have and had, the claims are not preempted.

---

[16] *Smith v. Houston Oilers, Inc.*, 87 F.3d 717 (5th Cir. 1996) was appropriately distinguished in the *Green v. Pro Football, Inc.*, 31 F. Supp. 3d 716, 727 (D. Md. 2014) matter as, among other things, being against a party to the CBA that had duties under the CBA.  The Riddell Defendants' other cases (referenced by incorporation by citing the NFL briefing) also involved direct CBA obligations, *e.g.*, trainers' alleged refusal to disclose a known injury or refusing to share x-ray results.  *See Sherwin*, 752 F. Supp. at 1174-78 and *Givens*, 684 F. Supp. 2d at 990-91.

### 5.     Other claims are not preempted.

First, the Riddell Defendants do not acknowledge the wrongful death, survival, and loss of consortium claims (Counts XI, XII, XIII) in their Motion to Dismiss, and effectively concede that they should stand.

Second, the Riddell Defendants offer the catch-all and undeveloped argument in connection with their claims and punitive damages that "numerous other necessary considerations in the plaintiffs' claims" (Mot. at 32) compel preemption, but does not explain how.  The fact that others share fault with Riddell does not create preemption (in fact, the conspiracy here is a reason why there is no preemption).  Riddell discounts joint and several liability, and more fundamentally ignores the point behind it that an increase in wrongdoers does not immunize one particular wrongdoer.  "It is no defense" to an alleged breach of common-law tort duties that "a similar duty rested upon another person."  57A Am. Jur. 2d Negligence § 80; *see also Dougherty v. Hooker Chem. Corp.*, 540 F.2d 174, 178 (3d Cir. 1976).

If it were otherwise, as then-Judge Stephen Breyer observed, individual responsibility would "diminish . . . in direct proportion to" the number of wrongdoers involved. *Lyon v. Ranger III*, 858 F.2d 22, 25-26 (1st Cir. 1988). Thus, the common law calibrates a party's duty to another person by analyzing their "relationship" to that person; the "utility" of their conduct; their ability to "foresee[]" relevant risks; the "consequences of imposing [a] duty"; and the "overall public interest." *R.W. v. Manzek*, 888 A.2d 740, 746-47 (Pa. 2005) (internal quotations omitted).   None of those factors depends on the legal duties of third parties, especially the victimized and defrauded Players themselves, given Riddell's and the NFL's conduct in deceiving *everyone* involved.

**B.**     **Riddell's Cases Are Distinguishable and its Attempt to Distinguish Authority Favorable to Plaintiffs Fails.**

As shown above, the cases that the Riddell Defendants rely on through their brief are generally distinguishable, if not irrelevant, for one or more reasons: (a) the plaintiff brought claims expressly relying on a CBA provision or claims implicating the union's representation, (b) the case is post-discovery or in a remand posture (in that the defendant had used section 301 preemption as the basis for removal and questions over the court's subject matter jurisdiction, implicating jurisdiction-related discovery, were at issue), or (c) the plaintiff had effectively turned a contract claim into a negligence claim, typically without alleging intentionally tortious conduct.

Where, as here, claims are not based on the CBAs, preemption is inappropriate.  *Cf. Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985) (relied on by the Riddell Defendants) (employee's claim for bad-faith handling under the disability plan included in the CBA, from which the employee had applied for and been approved for benefits, preempted, to preserve goal of uniform interpretation of labor contract's terms); *Beidleman v. Stroh Brewery Co.*, 182 F.3d 225 (3d Cir. 1999) (same) (the misrepresentation related to the question of whether the purported CBA was binding and the tortious interference claim related to an attempt to deprive the employees of their benefits in the employment agreement).

Finally, Riddell argues that the *Oliver* case is distinguishable because the NFL was not a defendant in that case and because *Oliver* focused on products liability.  Putting aside that those same patently non-preempted claims are in fact alleged here[17], it cannot be the case, and is not the

---

[17] "Defendants suggest that the CBAs would be needed to determine the requisite duty of care. But for who?  Surely not Defendants since, as discussed above, they are not parties to the CBAs and nothing in the CBAs modifies or controls Defendants' common law duties as a manufacturer."  *Oliver*, 2016 WL 7336412, at *4.  The court went on to observe (arguably in dicta) that "[w]hether the NFL had certain duties of disclosure or care is (again) simply irrelevant

case, that non-preempted claims that are independent of the CBA become preempted because another defendant is involved (especially when that other defendant's claims are not preempted either).   In addition, Riddell's argument that the NFL was absent from the *Oliver* case is mistaken[18]: the NFL may not have been a legal defendant, but it was a factual co-conspirator and the role of the NFL did not change the court's analysis.  The *Oliver* court looked at the products issue and the conspiracy issue together in concluding that "either Riddell helmets were dangerously defective, or they were not; and either  Riddell and the NFL agreed to hide those dangers by funding/conducting sham studies, or they did not.  A jury would not even need to glance at the CBAs to determine these facts."  *Id.* at *3.   Plaintiffs respectfully broaden the Oliver court's turn of phrase:  a jury will not need to look at any CBA to determine any of the facts in this case.

### C.      At Minimum, the Riddell Defendants' Motion Should Be Deferred Pending Discovery.

There is ample basis to *deny* the Riddell Defendants' motion outright, and none to consider granting it pre-discovery.  A motion to dismiss is not the "proper vehicle" for adjudicating an affirmative defense unless the defense is "apparent on the face of the complaint." *Rycoline Prods.*, 109 F.3d at 886 (internal quotations omitted); *cf. JM Mech. Corp. v. United States*, 716 F.2d 190, 197 (3d Cir. 1983) (reversing dismissal of claim based on "matters outside the bounds of the complaint"); *Christie v. Pub. Serv. Elec. & Gas Co.*, No. Civ. 04-5978, 2006 WL 462588, at *7-8 (D.N.J. Feb. 24, 2006) (declining to consider CBA on a motion to dismiss).

---

because the NFL's conduct does not compose any part of Plaintiff's fraudulent concealment claim."  *Id.*  However, this statement does not change the analysis for this Court because the NFL's conduct is also subject to adjudication and not preempted.

[18] Riddell implies that the fact that the NFL was not a defendant was dispositive.  However, the court looked at the fact *in tandem with the fact that* the Riddell Defendants "are admittedly not parties to the CBAs."  *Oliver*, 2016 WL 7336412, at *2 ("these considerations alone strongly counsel against a finding of" preemption) (emphasis added).

Further, even if the Riddell Defendants had demonstrated that Players' claims might ultimately implicate § 301, their argument for dismissing Players' claims now falls well short of meeting that strict standard of dismissal being appropriate on the face of the Complaint.  *See Exal Corp. v. Roeslein & Assocs., Inc.*, No. 4:12-CV-01830, 2012 WL 4754748, at *3 (N.D. Ohio Oct. 2, 2012) (preference for deciding on the merits); *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, No. 10-cv-1341, 2012 WL 748760, at *10-11 (E.D.N.Y. Mar. 7, 2012) (denying motion to dismiss based on § 301 preemption where "unclear" whether CBA interpretation would actually be required).

V.    **CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss should be denied.

Dated:  March 28, 2018

Respectfully Submitted,

By: _____
     Wendy R. Fleishman
Lieff Cabraser Heimann & Bernstein, LLP
Wendy R. Fleishman
Rachel Geman
250 Hudson Street, 8th Floor
New York, New York 10013
Telephone: (212) 355-9000
Facsimile:  (212) 355-9592
wfleishman@lchb.com
rgeman@lchb.com
Lieff Cabraser Heimann & Bernstein, LLP
Andrew R. Kaufman
150 Fourth Avenue, North, Suite 1650
Nashville, TN 37219
Telephone:  (615) 313-9000
Facsimile:   (615) 313-9965
akaufman@lchb.com

Lead Counsel on Behalf of Opt Outs

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: NATIONAL FOOTBALL LEAGUE RETIRED PLAYERS' CONCUSSION INJURY LITIGATION** | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| **THIS DOCUMENT RELATES TO: ALL ACTIONS PENDING AND ALL CLAIMS ASSERTED AGAINST ANY RIDDELL DEFENDANT** | Hon. Anita B. Brody |

## CERTIFICATE OF SERVICE

I, Wendy R. Fleishman, hereby certify that on March 28, 2018, I caused a true and correct copy of the foregoing *Opt Out Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiffs' Second Amended Master Administrative Long-Form Complaint Based on LMRA § 301 Preemption* to be filed via CM/ECF system, in the United States District Court, Eastern District of Pennsylvania, on all parties registered for CM/ECF.

Dated: March 28, 2018

/s/ *Wendy R. Fleishman*
Wendy R. Fleishman