UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | NO. 2:12-MD-02323-AB<br><br>MDL NO. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | Civ. Action No. 14-00029-AB |

THIS DOCUMENT RELATES TO:
ALL ACTIONS

MOTION TO JOIN CLASS COUNSEL LOCKS LAW FIRM'S REQUEST TO APPOINT ADMINISTRATIVE COUNSEL AND REQUEST FOR A HEARING TO SEEK COURT INTERVENTION ON THE SETTLEMENT IMPLEMENTATION AND THE PROCESSING OF CLAIMS

1. The undersigned Mitnick Law Office respectfully requests to join the Motion of Class

    Counsel, Locks Law Firm to be named administrative Class Counsel and for a hearing to

seek Court intervention on the Settlement implementation and the processing of claims arising out of the NFL Concussion Settlement.

2. Mitnick Law office individually represents over 240 retired NFL players and is co-counsel with Locks Law Firm for an additional 1000 plus players, totaling representation and interest in excess of 1200 potential claimants. From personal knowledge and experience, Locks Law Firm's submission truly and accurately details the ever increasing defects of the Settlement claim process and the deceptive practices and undue influence of the NFL in the implementation of the Settlement. As an attorney who represents a mass number of retired players and as the primary attorney who traveled the country, assisting Class Counsel in educating the global community of Retired Players on the terms of the Settlement Agreement, securing a 99% endorsement of the Settlement, it is time that the NFL parties stop inhibiting the Claim Administration process and start protecting the Players who were faithful to the League and who were guaranteed independence in the Claim process by all Parties to the Settlement Agreement.

3. The Settlement terms that were set out in detail in the revised Settlement Agreement have fundamentally changed without the consent of the very individuals who were to be the beneficiaries of the Agreement, the Retired Players . The Settlement belongs to those players and their families. They are who matters most. The Locks Law Firm's dedication to this litigation and their experience in past Settlement implementation warrants their appointment as Administrative counsel. This Settlement was negotiated in good faith by co-lead counsel, however given the actions of the NFL throughout the implementation process thus far, one must consider whether the NFL negotiated in good faith as well.

The actions of the NFL speak volumes to their true intentions and those actions warrant the appointment of Administrative counsel and Court intervention.

4. As specified in Locks Law Firm's application to the Court, claims involving level 1.5 and level 2.0 dementia, as well as claims for retired players who have been diagnosed with Alzheimer's disease have been unreasonably and often inexcusably delayed or denied from the onset of the claims administration process.

5. The facts as set forth in counsel's submission to the Court are almost an identical set of facts experienced by this office with regard to numerous claims that have been delayed by audit, appealed by the NFL, or outright denied by the Claim Administrator for reasons already set forth in Lock's memorandum to the Court.

6. A further and telling example of an egregious situation is the claim of a 61 year old retired player who *received* a monetary award $1,150,000 for Alzheimer's disease at the age of 58 from the AAP. The award was then appealed by the NFL Parties who question "causation" (which was specifically waived by the NFL in the Settlement Agreement). Skillfully written, the NFL in its appeal of this Retired Player states the following:

> "Far from taken in "bad faith," the NFL Parties' argument appealing Mr. ▮▮▮▮ claim—i.e., that the diagnosing physician's failure to rule out Mr. ▮▮▮▮ lithium use, sleep disorder, chronic headaches, and depression as the causes of his condition rendered his Alzheimer's diagnosis invalid…"

> "While the Criteria for Research Guidelines may be more restrictive in certain areas, Co-Lead Class Counsel's statement with respect to mixed etiologies is simply untrue. The Diagnostic Guidelines identify in a separate section (omitted from Co-Lead Class Counsel's statement) additional "differential diagnos[e]s," or other etiologies that are incompatible with an Alzheimer's diagnosis. (Diagnostic Guidelines, Ex. 1 at 48.) These differential diagnoses include, among others, things" include a variety of physical diseases," and "a depressive disorder": Differential diagnosis. Consider: a depressive disorder (F30-F39); delirium (F05); organic amnesic syndrome (F04); other primary dementias, such as in Pick's Creutzfeldt-Jakob or Huntington's disease (F02.0); secondary dementias

   associated with a variety of physical diseases, toxic states, etc. (F02.8); mild, moderate or severe mental retardation (F70-F72)".

   The NFL memorandum was written by an attorney representing the NFL who is not a physician. It is incomprehensible that the NFL is questioning a board certified, authoritative neurologist's findings, as well as the AAP's finding of Alzheimer's through a monetary award to the Retired Player. I don't know of a more appropriate example of "bad faith" dealings in this matter.

7. Another example of the disingenuous intent of the NFL concerns a unnamed Retired Player who is 67 years old and has been diagnosed with Alzheimer's disease since turning 63 years old.  The Player is currently institutionalized in a Alzheimer's facility and has been given only several years to live. Even though this player's condition and "story" were utilized in *a-day-in-the-life-of* video that was submitted to the Court by Co-Lead counsel in consideration of final settlement, his claim was denied after being reviewed by the Claim Administrator because the AAP Physician did not find that his qualifying diagnosis was made by an appropriate physician.  Under the terms of the Settlement Agreement, his claim was resubmitted by another one of his treating and diagnosing physicians. Subsequent to this re-submitted claim to the Claims Administrator, the Player received a notice of audit delaying the matter once again indefinitely. The matter has been ongoing since his initial claim was submitted in April of 2017. One year later, no award or payment has been made. The Player's condition has become more severe and the frustration and disappointment that this player and his family have experienced is inexcusable.

8. The arguments as set forth in Locks Law Firm's submission to the Court attesting to the problems with the Settlement implementation are accurate, continuing and non-

discriminatory in their effect on Retired players everywhere. After educating over 10,000 players around the Country to the Settlement terms from the time of preliminary approval through the time of final approval, it can be attested to that terms as set out in the Settlement Agreement are far different than the terms currently in place today. Mitnick Law Office respectfully requests to be joined in the Motion for the appointment of Administrative Counsel and for Court intervention.

WHEREFORE, the undersigned counsel on behalf of Plaintiffs represented by Mitnick Law office seek to join in the application for a public hearing before this Court to enforce the true terms of the Settlement terms and to appoint Locks Law Firm as Administrative Counsel in the matter.

DATED: March 29, 2018

Respectfully submitted

/s/ *Craig R. Mitnick*

_____
MITNICK LAW OFFICE
Craig R. Mitnick
*Attorney for Plaintiffs*

## CERTIFICATION OF SERVICE

I hereby certify that on March 29, 2018, I caused the foregoing Motion to be filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF System, which will provide electronic notice to all counsel and parties.

DATED: March 29, 2018          */s/ Craig R. Mitnick*
                                                                               MITNICK LAW OFFICE