IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION LITIGATION | § § § § § § § § § | No. 12-md-2323 (AB)  MDL No. 2323 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | | |

## Memorandum in Support of Movants' Joinder in the Motion of Class Counsel, the Locks Law Firm, for Appointment of Administrative Class Counsel (ECF 9786)

Come now, The Alexander Objectors and Lubel Voyles, LLP (hereinafter "Movants") and file this their memorandum in support of joinder in the Motion of Class Counsel, the Locks Law Firm, for Appointment of Administrative Counsel (ECF 9786) as follows:

### A. Introduction

1.  A few days ago, on March 30, a headline in the Boston Globe read: "Billion-dollar NFL Concussion Settlement on the 'Brink of Collapse.'"

2.  The headline is dramatic. Nonetheless, it is a headline founded upon facts. The fact is: The settlement implementation to date represents a fundamental failure in the exchange of promises embodied in the plain language of the Settlement Agreement that this Court found to be a fair substitute to trial by jury.

3.  In less dramatic tone, but nonetheless urgent, the Locks Law Firm ("LLF") amply outlines that "the Settlement Agreement . . . is in danger of failing in its execution." *See* ECF 9786, p. 1. LLF, which is heavily invested in the success of this Settlement, wants to save the Settlement from its current implementation derailment and, therefore, has asked this Court to appoint LLF as Administrative Class Counsel. Movants join the request.

1

### B. *The Settlement is off the tracks*

4. In a prior filing with the Court (ECF 9588), Movants illustrated that the current claims administration falls woefully short of the forecasts the NFL presented to the Court in the largest compensable settlement categories: Alzheimer's; Level 2 neurocognitive impairment; and Level 1.5 neurocognitive impairment. According to Co-Lead Class Counsel's filings, these settlement categories represent 97% of the total participants (registrants) in the settlement. Thus, the objective claims-administration data shows the Settlement has suffered an enormous derailment:

| Category (% incidence such category represents of the Whole, *see* ECF 6423-21, (Ex. JJ, p. 5) | NFL Year 1 **Forecasted** Payments (ECF 6168 Ex. F) | **Actual** Year 1 Payments (ECF 9571, Ex. A, p. 7 as of January, 2018) |
|---|---|---|
| Alzheimer's (**48% of all class members**) | 153 Claims, $70.655 million | 25 Claims, $11.59 million |
| Level 2 (**49% of all class members**) | 111 Claims, $38.64 million | 1 Claim, $1.5 million |
| Level 1.5 (0% as all assumed in Level 2) | 319 Claims, 33.64 million | 3 Claims, 1.5 million |
| Total Claims | 584 Claims forecasted to be paid within the first year | Less than 30 actually paid |

5. Yesterday's April 2, 2018 update on the NFL Concussion Settlement website reveals *the trajectory is downward*:

- Of the 301 Alzheimer's claims submitted, 55 have been paid;
- Of the 477 Level 2 claims submitted, 2 have been paid;
- Of the 648 Level 1.5 claims submitted, 4 have been paid;
- Of the 1,737 total claims in all categories that have been submitted, 156 or 9% have been paid;
- Of those same 1,737 total claims, 527 are currently held in audit.

*See* NFL Concussion Website, Claims Report, Table 1 (Location of All Monetary Award Claims).

6. Did the NFL mislead the Court? Did the NFL mislead Co-Lead Class Counsel? This Settlement is not merely about concussions leading to ALS or Parkinson's. It is Settlement about paying claims for the signature disease of football – neurodegenerative disease

caused by head injury in football based on the clinical symptoms the disease presents. The NFL and Co-Lead Class Counsel persuaded the vast majority of Class Members to participate in this settlement upon the representation that, balancing the risks of litigating (which would include proving causation and damages by a preponderance of the evidence) against the certainties of a settlement, a settlement would be better for all Class Members. Yet, under the settlement, 97% of the Former NFL Players in the Settlement face a burden constructed by the NFL more akin to a beyond a reasonable doubt burden to obtain a settlement award. And, the NFL and the Appeals Advisory Panel (AAP) have injected causation into the claims review process, which is a direct violation of the Settlement and defeats the *quid pro quo* of Settlement.

7.   The best evidence that the Settlement implementation is not working is the fact that an Alzheimer's claim featured in the settlement fairness hearing has not yet been approved. Specifically, the Mitnick Law Office recently pointed out that Co-Lead Class Counsel Seeger advertised the "fairness" of the Settlement using the Alzheimer's diagnosis of one of Mitnick's client. Yet, that client's April, 2017 claim remains unpaid as it first faced a challenge and now faces an audit. *See* ECF 9785, pp. 2-3, Motion to Join Co-Lead Counsel Anapol Weiss Request for a Hearing to Seek Court Intervention on the Processing of Certain Claims, filed by The Mitnick Law Office.

8.   The Settlement implementation is not even working for Class Counsel all of whom, other than Co-Lead Class Counsel Seeger, find their claims stuck in a claims administration which the Anapol Weiss firm describes as a "thicket of privately litigated, changing standards for claim packages, unpredictable and changing standards of review, that is not what the Settlement Agreement promised retired players." (ECF 9784[1], Motion of Co-Lead Class Counsel Anapol Weiss for a Hearing to Seek Court Intervention on the Processing of Certain Claims, p. 8).

9.   In addition to the specific delays experienced in these categories, all Class Members face unchecked disparate treatment. Specifically, as the Court knows, the Settlement

---

[1] The Motion was subsequently withdrawn when the claim at issue was paid the day after the filing. *See* ECF 9788.

assigns members of the AAP the responsibility of reviewing certain pre-effective date claims supported by non-Settlement-qualified physicians. *See* Settlement Agreement, 6.4. Yet, there is no established formula for assuring consistency in the rulings of the AAP members. If the Claims Administrator is tracking the AAP rulings for consistency, that information is not publicly available. The Claims Administrator should be required to disclose non-confidential data regarding the rulings to ensure that Class Members are not being treated differently depending upon which AAP receives their claim.

10. Similarly, each claim, each appeal is being administratively adjudicated in complete secrecy. There is no doubt that each claimant is entitled to confidentiality. However, the NFL appeals and the adjudication of those appeals is analogous to blind *stare decisis*. The Class Members claims are being measured against an unpublished benchmark.[2] Neither the NFL, the Claims Administrator, nor the putative spokesperson for Class Members, Co-Lead Class Counsel Seeger will even debate the obvious administrative economy of generically revealing the medical rulings or contract-interpretation rulings that apply or *should apply* equally to all Class Members. This secrecy, this perceived *ad hoc* handling of settlement administration strips the processing of Class Member confidence.

11. The Settlement, as implemented, bears neither the actual nor the perceived benefit of the bargain in its first year. Specifically, this Court approved the Settlement Agreement in this case applying the *Girsh* factors[3] and, upon balancing the risks and benefits to the

---

[2] To date, there has been a single published appellate decision arising from the Settlement interpretation. *See* ECF 9754, Settlement Implementation Determination – the Settlement Agreement Compensates Class Members for Head Injuries Suffered While Playing in the National Football League. We know, however, that there have been at least twenty appeals: 12 by Class Member, 8 by the NFL, 0 by Co-Lead Class Counsel. *See* ECF 8881, p. 3-4. Co-Lead Class Counsel did not even file a response to all of the NFL appeals. *Id.*

[3] In *Girsh v. Jepson,* the Third Circuit noted nine factors to be considered when determining the fairness of a proposed settlement: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 521 F.2d 153, 157 (3d Cir.1975) (internal quotation marks and ellipses omitted).

parties, found the Settlement Agreement to be fair. *See In re Nat'l Football League Players' Concussion Injury Litig.,* 307 F.R.D. at 388–96 (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir.1975)). The Third Circuit echoed the analysis of this Court. *See In re Nat'l Football League Players' Concussion Injury Litig.,* 821 F.2d 410, 437 (3d Cir. 2016).

12. As implemented, however, a retroactive glance at the *Girsh* factors shows that only the NFL has minimized its risk by settlement. Unilateral burdens imposed on the Class via NFL manipulation show that the NFL has essentially entered into a high/low settlement agreement where every claimant *still* has a heightened burden to establish causation and damages to the NFL's satisfaction.

13. If this track record is extended to the life of the Settlement Agreement, it will be an abject failure.

### C.     *Co-Lead Class Counsel Seeger has no incentive to advocate for the Class Members.*

14. As Movants previously illustrated in filings with the Court, Co-Lead Class Counsel Seeger (a) has virtually no claimants or clients and, thus no natural alignment of interest with the Class and (b) has adopted a position on fees that places it in a conflict with the Class Members' best interests.

15. Co-Lead Class Counsel Seeger's contradictory position on fees shows the overreach to the detriment of Class Members.

| Co-Lead Class Counsel wants a <u>percentage bonus</u>, claiming success in registering Former NFL Players as Class Members; Co-Lead Class Counsel Seeger vigorously opposes waiting to assess success of the Settlement on actual Class Member awards. *See* ECF 9552-1, page 2. | Co-Lead Class Counsel wants a <u>percentage surcharge</u> (5% set aside) on every monetary award for post-settlement litigation of NFL contests on monetary awards and appeals that have resulted in "many disputed issues between the Settling Parties." Also, ECF 9552, paragraphs 5-7 |
|---|---|

16. The contradictory positions become all the more suspect when, first, Co-Lead Class Counsel Seeger asked the Court to designate Co-Lead Class Counsel Seeger, itself, as the authority to divide the common benefit fee sought between counsel it believed were entitled

5

to such a fee. Then, Co-Lead Class Counsel Seeger allocated the vast majority of such common benefit fees to itself. Seeger Weiss is, according to Seeger Weiss, primarily responsible for the Settlement Agreement.

17. Co-Lead Counsel Seeger thus faces an implementation dilemma. In order to justify the performance bonus sought, it cannot concede that there are problems in the implementation that were foreseeable. Stated differently, Seeger Weiss cannot concede that there are problems in implementation because that concession would undercut not only the size of the common benefit performance bonus, but also the Seeger Weiss application for the overwhelming and historic portion of that bonus. At this point, Co-Lead Class Counsel Seeger is most literally attempting to profit from its own mistakes. In the interim, Co-Lead Class Counsel must pretend that all is well with the Settlement despite all evidence to the contrary.

18. LLF's request to serve as Administrative Class Counsel presents a stark contrast to Co-Lead Class Counsel Seeger. It is true that LLF has also served as class counsel. Unlike LLF, however, Co-Lead Counsel Seeger does not have the countervailing duty and incentive to individual clients. Seeger has no more than a handful of clients currently participating in the claims administration process. LLF, with more than 1,000 individual clients, is fully invested in the actual success of this settlement; not the perceived or straw-man success through mere registrants.

### D. The Other 97% of the Former NFL Players Need a Voice with an Incentive to Get Claims Paid

19. Telling in LLF's pleadings is the unequivocal reference to LLF's continuing fiduciary obligation to all class members as the thrust of its need to become Administrative Class Counsel. Stated differently, LLF's motion shows that it is in an untenable position - owing a duty to all Class Members but presently hindered in the ability to discharge that duty because Seeger Weiss has refused to allow LLF to become directly involved. *See* ECF 9786, Exhibit H. Evidently, the other class counsel Podurst Orseck and Anapol Weiss, owing the same continuing fiduciary duty, have also been excluded from the

process.

20. LLF didn't rush to the Court for intervention. Instead, LLF first attempted to present its concerns to Co-Lead Class Counsel Seeger and then to BrownGreer. *See* ECF 9786, Exhibit H, I. LLF identified a number of "systemic problems" in the settlement claims administration – problems detrimental to Class Members – *including but not limited to*:

> (1) unilateral Settlement amendment – the pre-effective date corroborating affidavit;
>
> (2) unilateral Settlement amendment – applying strict BAP criteria to all pre-effective date claims, instead of the "generally equivalent" standard under Settlement section 6.4(b);
>
> (3) unilateral Settlement amendment - strict construction of the section 8.2 and 8.3 "signature" provisions to defeat the expectations of the settling parties;
>
> (4) usurpation of AAP discretion – NFL Counsel and Co-Lead Class Counsel Seeger forbidding "downgrading of a claim" by the AAP;
>
> (5) systemic issues – the NFL is litigating through the administrator, using the administrator to conduct discovery; using administrator audits as super appeals; and "ordering" raw data compared to its own litigation actuarial data to suggest fraud or the lack of good faith of neuropsychological work.

*See* ECF 9786, Exhibit H.

21. LLF's efforts to do right by Class Members, like the numerous efforts of Movants, has meet with silence from Co-Lead Class Counsel Seeger. Co-Lead Class Counsel Seeger ignores substantive inquiries. The consequence is that Co-Lead Class Counsel Seeger has ejected all other Class Counsel from the administration and implementation process.

22. Similarly, over the past six months, Co-Lead Class Counsel Seeger has refused to respond to the most basic request for information about settlement administration and implementation from Movant Lubel Voyles. *See* Exhibit A, September 20, 2017 email requesting updated status report for the preceding three months of claims; Exhibit B, October 19, 2107 email follow up requested status for the preceding four months of claims; Exhibit C, February 19, 2018 email requesting non-confidential information regarding Special Master or Claims Administrator interpretation of the Settlement terms and appeals

decisions. In particular, Movant made clear the purpose of the request for information was "to place our own clients in the best possible light given the precedence that is being created." Exhibit C. But, Movants' requests have been met with silence, rendering it impossible for Movants to even know the playing field of the claims process its clients must traverse.

23. As such, not only is Co-Lead Class Counsel Seeger not providing effective advocacy for Movants' clients, it is interfering with Movants' ability to do so. The NFL has access to detailed, back room information that is not being supplied to Class Members individual attorneys. The NFL now has information about the decision makers and prior decisions that informs all of its subsequent challenges, requests for audit, and appeals. In its steadfast refusal to cooperate with a Class Member lawyers, including Class Counsel, Co-Lead Class Counsel Seeger has handed the NFL the ultimate advantage in the claims process.

### E.  Conclusion – The Class Members need Locks Law Firm as their Administrative Voice

24. Class Members are entitled to have a committed advocate in negotiations between "the Settling Parties." Co-Lead Class Counsel Seeger has proven it no longer brings zealous representation to any fight other than the fee fight.

25. LLF's request to serve as Administrative Class Counsel presents an opportunity for the Court to provide a structural protection for the Class by including a class counsel in the claims administration whose incentives are aligned with the interests of an enormous number of clients; who is fully invested in the success of the Settlement – as measured by actual awards, not registrations; who places its fiduciary duty to these Class Members ahead of its own interests; and who has been in the case from the beginning.

26. The Movants, therefore, join in LLF's Motion.

Date: April 3, 2018

                                                                    Respectfully Submitted,

                                                                    */s/ Lance H. Lubel*

| | |
|---|---|
| Mickey Washington<br>Texas State Bar No.: 24039233<br>WASHINGTON & ASSOCIATES, PLLC<br>2019 Wichita Street<br>Houston, Texas 77004<br>Telephone: (713) 225-1838<br>Facsimile: (713) 225-1866<br>Email: mw@mickeywashington.com | Lance H. Lubel<br>Texas State Bar No.: 12651125<br>Adam Voyles<br>Texas State Bar No.: 24003121<br>Justin R. Goodman<br>Texas State Bar No.: 24036660<br>LUBEL VOYLES LLP<br>675 Bering Dr., Suite 850<br>Houston, TX 77057<br>Telephone: (713) 284-5200<br>Facsimile: (713) 284-5250<br>Email: lance@lubelvoyles.com<br>adam@lubelvoyles.com<br>jgoodman@lubelvoyles.com |
| James Carlos Canady<br>Texas State Bar No.: 24034357<br>THE CANADY LAW FIRM<br>5020 Montrose Blvd., Suite 701<br>Houston, TX 77006<br>Telephone: (832) 977-9136<br>Facsimile: (832) 714-0314<br>Email: ccanady@canadylawfirm.com | |

Attorneys for Melvin Aldridge, Trevor Cobb, Jerry W. Davis, Michael Dumas, Corris Ervin, Robert Evans, Anthony Guillory, Wilmer K. Hicks, Jr., Richard Johnson, Ryan McCoy, Emanuel McNeil, Robert Pollard, Frankie Smith, Tyrone Smith, James A. Young Sr., and Baldwin Malcom Frank

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all counsel of record via the Court's ECF system on April 3, 2018.

*/s/ Lance H. Lubel*
Lance H. Lubel