**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,<br>　　　　　　　　　　Plaintiffs,<br>　　　v.<br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br>　　　　　　　　　　Defendants. | **Hon. Anita B. Brody** |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

**April 5, 2018**　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Anita B. Brody, J.**

## MEMORANDUM

Over the past year, the Court has focused on the implementation of the Settlement Agreement. Now that implementation is in progress, it is time to focus on attorneys' fees. There are four key issues for the Court to decide:

  (1) the total amount for the common benefit fund;

  (2) the allocation of the common benefit fund among Class Counsel;

  (3) the amount, if any, to be set aside for attorneys' fees incurred in the implementation of this complex Settlement Agreement and the possible need for future attorneys' fees throughout the 65-year term of the Agreement; and

  (4) the reasonableness of the amount of fees to be paid by individual Class Members from their Monetary Awards to individually retained plaintiffs' attorneys ("IRPAs").

In this opinion, I will address the first issue, the total amount for the common benefit fund. The fourth issue, relating to IRPA contingent fee agreements will be addressed in another

1

opinion also filed today. The second and third issues relating to allocation and funding for future implementation will be determined at a later date.

Class Counsel has petitioned the Court for $112.5 million in reasonable costs and attorneys' fees. I will award to Class Counsel the requested amount comprised of $106,817,220.62 in attorneys' fees and $5,682,779.38 in costs. The attorneys' fee portion of the award amounts to approximately 11% of the total value of the Settlement.

Class Counsel also has petitioned the Court to holdback 5% of all Monetary Awards to pay for past and future work implementing the Settlement. I currently do not have enough information to predict the amount of compensation Class Counsel will need for implementation. Therefore, as a precaution, I reserve judgment on the holdback request, and the Claims Administrator will continue to holdback 5% of each Award.[1]

## I. BACKGROUND

This case began as an aggregation of lawsuits brought by former Players against the NFL Parties for head injuries sustained while playing NFL football. On January 31, 2012, the MDL was formed and proceedings were centralized in this Court. The parties spent almost two years briefing complex motions to dismiss and engaging in intense negotiations before a preliminary class action settlement was submitted for approval. On January 14, 2014, the Court denied preliminary approval over concerns as to the adequacy of the proposed $675 million settlement fund in light of uncertainty regarding the magnitude of damages.

On April 22, 2015, after crucial revisions were made to the Settlement, the Court granted final approval under Federal Rule of Civil Procedure 23(b)(3). The revised Settlement Agreement established an *unlimited* fund to compensate retired NFL Players, valued then at

---

[1] The Court hopes to address this issue once more data regarding the scope of implementation work is available—ideally in one year.

close to $1 billion. The Agreement also included other benefits to Class Members such as an uncapped Baseline Assessment Program, valued at $75 million, a $10 million Education Fund, and funding for a Claims Administrator to process Monetary Awards.

The Settlement Agreement also provided for the NFL Parties to pay "Class Counsel's attorneys' fees and reasonable costs," without objection, up $112.5 million. Settlement Agreement § 21.1, ECF No. 6481-1 at 77-78. This same provision of the Settlement Agreement allowed Class Counsel to petition the Court for a holdback "up to five percent (5%) of each Monetary Award and Derivative Claimant Award to facilitate the Settlement program and related efforts of Class Counsel." *Id.* at 78.

On April 18, 2016, the Third Circuit approved the Settlement Agreement. Petitions for review by the United States Supreme Court were sought by objectors and denied. On January 6, 2017, the Agreement became final upon the expiration of the time to file a Supreme Court rehearing petition.

On February 13, 2017, Co-Lead Class Counsel filed a fee petition, on behalf of the entire Class Counsel, seeking the full $112.5 million provided for by the Settlement Agreement for reasonable expenses and attorneys' fees. Fee Petition Mem. 3, ECF No. 7151-1. The petition filed by Co-Lead Class Counsel also seeks the 5% holdback of each Monetary Award to pay for costs and fees associated with implementing the Settlement.[2] In response to Co-Lead Class Counsel's petition, more than 20 objections were filed, with most of the concerns relating to the 5% holdback request. On April 10, 2017, Co-Lead Class Counsel filed an Omnibus Reply to all objections. Omnibus Reply, ECF No. 7464. A request for discovery related to the fee petition was also filed by an objector, and Co-Lead Class Counsel responded.

---

[2] Because of this pending request, the Claims Administrator has been withholding 5% of all Monetary Awards while awaiting the Court's decision on this issue.

The Court appointed Professor William B. Rubenstein of Harvard Law School as an expert witness on attorneys' fees, covering the issues of (1) fees to be paid to individually retained plaintiffs' attorneys ("IRPAs") and (2) Class Counsel's 5% holdback request. Professor Rubenstein then issued an Expert Report covering those topics. *See* Expert Report, ECF No. 9526. Interested parties were given the opportunity to respond to the Expert Report. Professor Rubenstein then filed a reply to the interested parties' responses to the Expert Report. Expert Reply, ECF No. 9571. Lastly, several interested parties filed sur-replies to Professor Rubenstein's reply.

The implementation process has been ongoing for over a year. The Monetary Awards claims process began accepting claims on March 23, 2017, and, as of this date, the Claims Administrator has issued notices of payable Monetary Awards in 369 claims for a total value of over $400 million. *See* NFL Concussion Settlement Website, https://www.nflconcussionsettlement.com (last visited April 4, 2018). With money now flowing to Class Members, it is appropriate for the Court to compensate Class Counsel.

## II.   DISCUSSION

Federal Rule of Civil Procedure 23(h) states that a "court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Thus, "a thorough judicial review of fee applications is required in all class action settlements." *In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 819 (3d Cir. 1995). The duty to review fee applications "exists independently of any objection." *In re Cendant Corp. PRIDES Litig.,* 243 F.3d 722, 730 (3d Cir. 2001) (quoting *Zucker v. Occidental Petroleum Corp.,* 192 F.3d 1323, 1328–29 (9th Cir.1999)).

This Court is obligated to protect the interests of the Class, "acting as a fiduciary for the class." *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 307-08 (3d. Cir. 2005) (citing *Cendant*, 264

F.3d at 231); *Report of the Third Circuit Task Force, Court Awarded Attorney's Fees,* 108 F.R.D. 237, 251 (1985). The Settlement Agreement is in accord, stating that disbursement of attorneys' expenses and fees is "subject to the approval of the Court." Settlement Agreement § 21.1, ECF No. 6481-1, at 78. Here, the Parties agreed that the NFL would pay up to $112.5 million in expenses and fees without objection, and Class Counsel has requested that exact amount.

### A. Expenses

Class Counsel has requested the payment of $5,682,779.38 in expenses. Consistent with my fiduciary obligation to review all of Class Counsel's fee requests, I have reviewed the expenses submitted and concluded that they are reasonable. There have been no objections to the expenses requested by Class Counsel. Hence, I will award Class Counsel reimbursement for the expenses submitted.

### B. Attorneys' Fees

Class Counsel has requested $106,817,220.62 in attorneys' fees, which represents approximately 11% of the value of the Settlement Agreement. I will award Class Counsel the requested amount.

There are two methods for determining the reasonableness of attorneys' fees in class actions cases: (1) percentage-of-recovery and (2) lodestar. The use of each varies based on the type of litigation. "Common fund cases . . . are generally evaluated using a 'percentage-of-recovery' approach, followed by a lodestar cross-check." *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 496 (3d Cir. 2017) (citation omitted).

Where, as here, a defendant has voluntarily undertaken the establishment of a separate fund to pay class counsel's costs and fees, the case is most appropriately reviewed as a common fund case. *See, e.g.*, *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d

5

283, 333-34 (3d Cir. 1998); *GM Trucks,* 55 F.3d at 822. Therefore, I will evaluate the request in this case as a common fund by using the percentage-of-recovery approach with a lodestar cross-check.

### 1. Percentage-of-Recovery

The award in this case produces a reasonable percentage-of-recovery of 11%. The percentage-of-recovery approach "compares the amount of attorneys' fees sought to the total size of the fund." *Halley*, 861 F.3d at 496. To determine if the percentage chosen is reasonable, a court must apply the factors found in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) and *Prudential*, 148 F.3d at 338–40, which are:

> (i) the size of the fund created and the number of persons benefitted;
>
> (ii) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel;
>
> (iii) the skill and efficiency of the attorneys involved;
>
> (iv) the complexity and duration of the litigation;
>
> (v) the risk of nonpayment;
>
> (vi) the amount of time devoted to the case by plaintiffs' counsel;
>
> (vii) the awards in similar cases;
>
> (viii) the value of benefits attributable to the efforts of Class Counsel relative to the efforts of other groups, such as government agencies conducting investigations;
>
> (ix) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and
>
> (x) any innovative terms of settlement.

*Halley*, 861 F.3d at 496 (summarizing the *Gunter*/*Prudential* factors).

After a review of all ten factors, I conclude that the balance weighs in favor of awarding $106,817,220.62 million to Class Counsel in attorneys' fees. The performance of Class Counsel

regarding this complex Settlement Agreement has been extraordinary. The fees requested here are well-earned.

>  i. *Size of the fund created and the number of persons benefitted*

Evaluation of this first factor begins with an assessment of the overall value of the Settlement and the number of individuals that benefitted from the class action. There are more than 20,000 Class Members registered to participate in this Settlement.[3] To date, more than 369 claims have been approved worth over $400 million.

The Monetary Award Fund in the Settlement Agreement is uncapped, requiring its value to be estimated using actuarial projections. The actuarial materials for both Class Counsel and the NFL were shared during negotiations and were made publically available. *See In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 364 (E.D. Pa. 2015), *amended sub nom. In re Nat'l Football League Players' Concussion Injury Litig.*, No. 2:12-MD-02323-AB, 2015 WL 12827803 (E.D. Pa. May 8, 2015). An updated analysis was provided in April 2017, which accounted for additional data on registration rates. Initially, the Monetary Award Fund was valued at $950 million. The revised estimate places the value at over $1.2 billion[4] due to higher than expected registration. Importantly, any risk that the Fund is undervalued by the actuarial estimates is borne by the NFL. Therefore, if the level of injury or participation rate is higher than predicted, the value to Class Members will increase accordingly.[5]

---

[3] The deadline to register in the Settlement has passed. The Settlement does allow for late registration upon a showing of good cause.

[4] The net present value of the estimated Monetary Award Fund is $785 million. Co-Lead Class Counsel Response to Expert Report 4, ECF No. 9552-1.

[5] Additionally, the uncapped Monetary Award Fund will also be used to pay costs to compensate the Special Masters, the Appeals Advisory Panel, and the Lien Resolution Administrator. The fees for these services were not calculated as a part of the value of the

7

To fully value the entire Settlement, however, the value of the Monetary Award Fund needs to be combined with the value created by five other provisions: the Baseline Assessment Program, the Education Fund, Notice Costs, Claims Administration, and the Attorneys' Fees Provision. The updated actuarial analysis including these values shows that the total estimated value of the Settlement is approximately $1.5 billion. Co-Lead Class Counsel Response to Expert Report 4, ECF No. 9552-1. To properly value the 65-year Settlement for our purposes though, this Court must use the net present value of the Settlement, which is $982.2 million. *Id*.

> ii. *Presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel*

In evaluating the second factor, I must consider the presence or absence of substantial objections to the Settlement terms and Class Counsel's fee request. As this Court and the Third Circuit have already indicated, the Class reacted favorably to the terms of the Settlement Agreement. Only approximately 1% of Class Members filed objections and only 1% opted out. *In re Nat'l Football League Players Concussion Injury Litig.,* 821 F.3d 410, 438 (3d Cir. 2016), *as amended* (May 2, 2016). As noted above, more than 20,000 Class Members have registered, exceeding the initial actuarial estimates. The positive response is all the more significant because the details of the terms of this Settlement Agreement were widely known and information was made broadly available, thereby allowing well-informed registration decisions.

There are approximately twenty objections to Class Counsel's fee petition. The vast majority of these objections relate to Class Counsel's request for a 5% holdback of Monetary Awards to pay for implementation work. Those objections have been considered, and the Court

---

Monetary Award Fund in the actuarial estimates. These services provide even more value for the Class that is not accounted for in the $1.2 billion estimate.

is reserving decision on Class Counsel's request for a 5% holdback. Thus, many of the concerns raised by the objectors will be addressed at a later date.

Overall, the response to both the Settlement Agreement and to Class Counsel's fee petition has been largely positive. This factor weighs in favor of granting the requested fee award.

    *iii.    Skill and efficiency of the attorneys involved*

In approving the Settlement Agreement, I noted that "[n]o Objector challenges the expertise of Class Counsel. Co–Lead Class Counsel Christopher Seeger has spent decades litigating mass torts, class actions, and multidistrict litigations. . . . Co–Lead Class Counsel Sol Weiss, Subclass Counsel Arnold Levin and Dianne Nast, and Class Counsel Gene Locks and Steven Marks possess similar credentials." *In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. at 373. Class Counsel's performance was praised by retired United States District Court Judge Layn R. Phillips, who mediated the negotiations of this Settlement. Mot. Prelim. Approval, Ex. D, ECF No. 6073-4. Plaintiffs' appellate counsel, Professor Samuel Issacharoff possesses similarly impressive credentials and showed great skill in shepherding the settlement through the Third Circuit appeal and petitions for certiorari in the United States Supreme Court.

No one has taken issue with the skill or efficiency of Class Counsel in securing this Settlement Agreement, nor could they. This factor weighs heavily in Class Counsel's favor.

    *iv.    Complexity and duration of the litigation*

For the fourth factor, I must consider the complex nature of this litigation and the duration of these proceedings. This Settlement was secured without formal discovery, with

9

limited litigation of motions, and with no bellwether trials. But, that does not mean the proceedings were simple.

This "case implicate[d] complex scientific and medical issues not yet comprehensively studied." *In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. at 388. Mediator Judge Phillips, reported on the complexity of the multi-tracked mediation effort that was undertaken to obtain this Settlement. Mot. Prelim. Approval, Ex. D at 3. Class Counsel retained medical experts to advise "the parties on the multiplicity of medical definition issues and other medical aspects of the settlement." *Id.* at 4. Economists and actuaries were also retained to assist "in modeling the likely disease incidence and adequacy of the funding provisions and benefit levels contained in the proposed settlement." *Id*. Though motions practice was limited, Class Counsel was well-informed of the legal hurdles that would be faced if settlement was not reached, including preemption defenses, issues in proving causation, and statute of limitations defenses, to name only a few. *Id.* at 5-7. Class Counsel's deep knowledge of the strengths and weaknesses of the case allowed for intense and very productive negotiations.

Class Counsel mastered the intricacies of this case, creating matrices that maximized Class Member similarities and minimized differences. This allowed for the formation of the Class despite player differences, and it allowed for the relatively quick resolution of this complicated case so that impaired Class Members could receive compensation and access to treatment as quickly as possible. I agree with Class Counsel that this was a "high-risk, long-odds litigation." Fee Petition Mem. 1.

The duration of this case, from filing to the effective date, was about five years. During that time Class Counsel billed more than 50,000 hours. Additionally, Class Counsel will continue

to bill hours as the Settlement is implemented over the next 65 years. This factor weighs in Class Counsel's favor.

      *v.*    *Risk of nonpayment*

The fifth factor is an assessment of the financial health of the defendant and the likelihood that it will be able to satisfy a successful judgment against it. *Rite Aid*, 396 F.3d at 304. The financial solvency of the NFL was not an obstacle in this litigation.

      *vi.*    *Amount of time devoted to the case by plaintiffs' counsel*

In evaluating the sixth factor, I consider the time that Class Counsel has devoted to the case. A review of summaries submitted by the attorneys is sufficient for purposes of this factor. *Accord Rite Aid*, 396 F.3d at 307-08 (endorsing summaries of hours worked for lodestar calculation). Class Counsel has submitted summaries detailing the litigation that required more than 50,000 hours of work.

The litigation in this case would not have reached a settlement within such a short period of time if it were not for the intensive preparation by Class Counsel prior to and during negotiations. As Class Counsel explained, "[t]hose efforts included researching Plaintiffs' claims, developing information about the Class, contesting the NFL Parties' threshold preemption motions, consulting with numerous experts (including medical, economic, and actuarial), exchanging reams of information with the NFL Parties, extensive and spirited mediation, and defending the Settlement at three judicial levels . . . ." Fee Petition Mem. 43 (footnote omitted). Lastly, to reiterate, Class Counsel will remain involved in this case for the entire 65-year term of the Agreement. The time spent in this matter has been extensive and will continue. This factor favors approval of the fee application.

      *vii.*    *Awards in similar cases*

Next, I will compare the award requested in this case with awards in similar actions. *Rite Aid*, 386 F.3d at 303-04. An award of $106,817,220.62 for securing the Settlement Agreement constitutes approximately 11% of the estimated present value of the overall fund ($982.2 million). *See* Expert Reply 2-3. Class Counsel has provided extensive citation to cases both in and outside this district that present similar percentage rates for comparison. *See* Fee Petition Mem. 44-45. Additionally, Class Counsel has provided a study by Professor Brian T. Fitzpatrick, which notes that the average fee award for class settlements is 13.7% nationwide with a median of 9.5%. *Id*. at 47.[6] The 11% award here compares favorably to similar cases, thus this factor favors approval.[7]

      *viii.*    *Value of benefits attributable to the efforts of Class Counsel relative to the efforts of other groups, such as government agencies conducting investigations*

This was not a case "where government prosecutions [laid] the groundwork for private litigation." *In re Diet Drugs*, 582 F.3d 524, 544 (3d Cir. 2009) (citation omitted). This case required a pioneering effort by Class Counsel.

---

[6] One objector urges a narrower review of the cases, suggesting that I compare the fees in this case specifically with the fees in the *Avandia* and *Diet Drugs* cases. Cobb Obj. Mem. 4-6, ECF No. 7401 (citing *In re Avandia Marketing, Sales Practices & Prods. Liab. Litig.*, No. 07-MD-01871 2012, WL 6923367 (E.D. Pa. Oct. 19, 2012); *In re Diet Drugs Prods. Liab. Litig.,* 553 F. Supp. 2d 442 (E.D. Pa. 2008)). I have considered each of those cases and conclude that the fee request here compares favorably. I also believe that a broader view of the cases is a better measure of the fee award than simply comparing the percentage-of-recovery.

[7] Some objectors suggest this is a "mega-fund" case, requiring generally lower fee percentages than present here. Class Counsel argues that this case should not be classified as a "mega-fund." Ultimately, I do not believe that the classification has any significant impact on the evaluation here. Whether this is a "mega-fund" or not, I am obligated to simply apply the "fact-intensive *Prudential/Gunter* analysis." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 331 n.4 (3d Cir. 2011) (quoting *Rite Aid*, 396 F.3d at 303). I have done so.

In fact, Class Counsel was actually fighting *against* prior cases in which the NFL Parties had successfully utilized defenses to obtain pretrial dismissals. *See In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. at 391-92. This litigation required Class Counsel to reinvent the Plaintiff's position by conducting new research, developing experts, and briefing issues without the benefit of previous successful lawsuits.

Some objectors note that certain congressional hearings aided Class Counsel. While those proceedings undoubtedly provided some of the foundation for this litigation, the impact was limited. Overall, this factor strongly supports granting the requested fee.

    ix.    *Percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained*

Assessment of fees for Class Counsel and individually retained plaintiffs' attorneys ("IRPAs") in an MDL/class action is a complicated matter. I have taken great care to compartmentalize the fees sought by Class Counsel for the work done to advance the interests of the Class and the work done by IRPAs to advance the interests of their individual clients. As is discussed in the IRPA fee cap opinion also issued today, the market rates for counsel are important for purposes of that analysis. As is also discussed in that opinion, I have considered the overall fees that are properly paid to *all* attorneys involved in this litigation. I have determined that a 33% overall contingent fee rate for both Class Counsel and IRPAs combined is reasonable. To achieve the 33% overall rate, I presumptively capped IRPA fees at 22%. In light of that determination, Class Counsel's 11% award is reasonable under this factor.

    x.    *Any innovative terms of settlement*

Perhaps the strongest factor weighing in favor of the acceptance of Class Counsel's fee request is the final factor that takes into account the innovative terms of this Settlement Agreement. These terms have been noted throughout this analysis, but they bear repeating.

The 65-year Settlement Agreement in this case is uncapped, ensuring that funding will always be available for Class Members to receive Monetary Awards. It provides a complex matrix for determining Monetary Award amounts. Through this design, the Settlement Agreement ensures that Class Members' common exposure to the risks of concussive hits predominates, while simultaneously addressing any specific differences in impairments. The Agreement also accounts for the NFL Parties' causation concerns by reducing Awards based on a player's age at the time of diagnosis and the number of years played in the NFL.

Recognizing that CTE is an impairment that could not be diagnosed in a living player, the Settlement creatively implements a system to compensate cognitive symptoms associated with CTE instead. CTE "inflicts symptoms compensated by Levels 1.5 and 2 Neurocognitive Impairment and is strongly associated with the other Qualifying Diagnoses in the Settlement." *In re Nat'l Football League Players' Concussion Injury Litig.,* 307 F.R.D. at 400.

Without these innovative terms, a settlement might not have been possible under current Supreme Court precedent. This factor weighs heavily in Class Counsel's favor.

    *xi.   Conclusion*

After looking at all of the *Prudential/Gunter* factors, it is clear that under a percentage-of-recovery analysis the 11% award of $106,817,220.62 million is reasonable.

### 2.   Lodestar Crosscheck

Once the percentage-of-recovery factors are considered, a lodestar cross-check is used to check the valuation. "The lodestar award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate . . . ." *Rite Aid,* 396 F.3d at 305. "The lodestar crosscheck 'is performed by dividing the proposed fee award by the lodestar calculation, resulting in a lodestar multiplier.'" *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 330 n.61 (3d Cir. 2011) (quoting *In re AT & T Corp.,* 455 F.3d 160, 164 (3d Cir.

2006)). "The multiplier endeavors 'to account for the contingent nature or risk involved in a particular case,' and may be adjusted 'to account for particular circumstances, such as the quality of representation, the benefit obtained for the class, [and] the complexity and novelty of the issues presented.'" *Id.* (quoting *AT & T Corp,* 455 F.3d at 164 n.4). Since the lodestar cross-check is "not a full-blown lodestar inquiry," the evaluation can be based on summaries and less precise formulations. *Rite Aid*, 396 F.3d at 307 n.16 (quoting *Report of Third Circuit Task Force, Selection of Class Counsel*, 208 F.R.D. 340, 423 (2002)).

In the fee petition, Class Counsel has requested payment for 51,068 hours. Class Counsel's submission provided documentation for more than twenty firms that worked on this case. Upon my request, Class Counsel has submitted copies of time records from these firms for *in camera* review. Additionally, Class Counsel has submitted 6,830 hours for implementation through September 2017. Thus, the combined hours are 57,898. I determine that the hours submitted by Class Counsel are a fair and reasonable representation of the work performed.

Though the hours submitted are reasonable, the billing rates are not. Early in the litigation, Class Counsel reported that "[p]laintiffs have also reached consensus to establish reasonable uniform hourly rates for all partners, associates and paralegals conducting work that benefits all plaintiffs for purposes of reimbursement for fees from the Common Benefit Fund and for lodestar check against a fee and expense request from any class settlement." Joint Application 8, ECF No. 54. Despite this, the billing rates submitted by these law firms varied greatly. For example, billing rates submitted for partners ranged from $500 per hour to $1,350 per hour.

It is not reasonable that the partner rates submitted by some firms are more than twice the rates submitted by other firms.[8] To avoid this problem with the submitted rates, I will use a blended billing rate, which is endorsed by the Third Circuit. *See Rite Aid,* 396 F.3d at 306. To "blend" rates, a court can simply average the rates of all partners, associates, and paralegals. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 3175924, at *4 (N.D. Cal. July 21, 2017). Here, blending the rates of all partners, associates, and paralegals produces an average rate of $623.05 per hour. Using this blended average, I have calculated that Class Counsel's combined lodestar is $36,073,348.90.

To calculate the multiplier, I must divide the fee award, $106,817,220.62, by the lodestar amount $36,073,348.90. This results in a lodestar multiplier of 2.96, well within the norm for this Circuit, which has noted that multipliers ranging from one to four are frequently awarded. *Prudential*, 148 F.3d at 341 (quoting 3 Herbert Newberg & Alba Conte, Newberg on Class Actions § 14.03 at 14-15 (3d ed. 1992)); *cf. Cendant*, 243 F.3d at 742 (observing a range of reasonable multipliers from 1.35 to 2.99). Considering the risk undertaken by Class Counsel and their extraordinary work in this litigation, I conclude that a multiplier of 2.96 provides strong additional support for approving the requested fee award.[9]

---

[8] Class Counsel provided extensive citation to other cases where billable rates were deemed "reasonable" by a court. In those examples, courts were presented with partner billing rates that varied by approximately $300, as opposed to the $850 divergence here.

[9] Significantly, even though this multiplier is reasonable, it is artificially high. The actual lodestar in this case will continue to increase as Class Counsel bills more hours for settlement implementation. It is likely that a portion of Class Counsel's fee request will be allocated to pay for this future work. Therefore, because the lodestar and lodestar multiplier have an inverse relationship, the multiplier will continue to *decrease* as Class Counsel continues to increase the lodestar by billing hours for implementation.

### C. 5% Holdback Request

Class Counsel has requested that all future implementation work be paid through a holdback of 5% of all Monetary Awards. Based on the projected value of the Monetary Award Fund, this would provide an estimated $40 million to pay for additional costs and fees.[10]  I appointed Professor William B. Rubenstein of Harvard Law School to advise the Court regarding Class Counsel's holdback request.  Professor Rubenstein concluded that this Court should set aside $22.5 million from $112.5 million request to pay for Class Counsel's work to implement the Settlement Agreement and the remaining $90 million should be used to pay Class Counsel for their work in securing the Settlement Agreement. Expert Report 1, ECF No. 9526. Professor Rubenstein suggested that setting aside $22.5 million into an interest bearing account would enable Class Counsel to receive $1 million per year for implementation during the 65-year term of the Settlement. *Id.*[11]

The Court is troubled that the $1 million per year suggested by Professor Rubenstein may be insufficient to pay the costs and fees associated with future implementation of the Settlement. The past year of implementation alone has required Class Counsel to bill well over $5 million in costs and fees. *See* Decl. Chris Seeger 19, ECF No. 8447 (summarizing implementation costs and fees through September 2017). While the Court assumes that Class Counsel's implementation work will decrease as the Settlement progresses, no party or expert has provided the Court with an adequate estimate for the amount of work that will be required in the future.

---

[10]  Class Counsel provided an updated analysis of the Settlement, which estimates the value of the Monetary Award Fund to be $1,297,0000,000, with a net present value of $785,000,000. Co-Lead Class Counsel Response to Expert Report 4. Five percent is, therefore, $39,250,000.

[11] As a last resort, Professor Rubenstein stated that the Court could consider a 2% holdback of Monetary Awards to help pay for implementation. Expert Reply 7-8.

17

Because of this current ambiguity and in an abundance of caution, the Court reserves decision on the 5% holdback request. The Court plans to adopt Professor Rubenstein's recommendation to set aside some portion of the $112.5 million for future implementation work, but the Court simply needs more time to evaluate the situation before making a final determination regarding the amount of a set aside from the $112.5 award and the amount, if any, of a percentage holdback of Monetary Awards. Reserving decision will allow for the accumulation of more data that can be used to more accurately assess future costs and fees. The issue will be revisited at a future point once a clearer picture has emerged. In the meantime, the Claims Administrator will continue to holdback 5% of each Monetary Award as a precautionary measure. The holdback comes directly from the Award if a Class Member is unrepresented by counsel, however, if the Class Member is represented by an IRPA, then the holdback comes from the IRPA's contingent fee.[12]

The Court recognizes the hardship that holding back funds may place on unrepresented Class Members and IRPAs, but the hardship is necessary to ensure the integrity and longevity of the Settlement. The Court hopes and anticipates that the combination of a set aside and a precautionary 5% holdback will provide more than enough money for implementation. If the 5% holdback is more than necessary, then any remaining portion of that amount will be returned to Class Members and IRPAs.

---

[12] In the opinion also released today regarding the IRPA fee cap, I set a presumptive cap of 22%. Therefore, with the 5% holdback, the cap is effectively 17% until this issue is resolved. As noted in that opinion, a 17% cap is still reasonable while keeping the presumptive overall contingent fee payment at 33%—the 5% holdback plus IRPAs' 17% contingent fee and Class Counsel's 11% award. For Class Members without IRPAs, their overall contingent fee payment at this point will be 16%—the 5% holdback plus Class Counsel's 11% award.

### D. Incentive Awards for Class Representatives

As a final matter, Class Counsel seeks incentive awards of $100,000 for each of the Class Representatives in this case: Corey Swinson, Shawn Wooden, and Kevin Turner. There has not been any objection submitted regarding this request. Upon review, I approve the awards. *Accord Brady v. Air Line Pilots Ass'n*, 627 F. App'x 142, 146 (3d Cir. 2015) (approving a $640,000 incentive award as part of a $15.9 million attorneys' fee award).

As was explained by Class Counsel, the work performed by the Class Representatives in this litigation was important. Mr. Swinson was the original representative for Subclass 1, and Mr. Wooden took over that role after Mr. Swinson's passing. Class Counsel reports that both worked closely with Subclass 1 counsel, Arnold Levin, as the terms of the Settlement Agreement were negotiated. After final approval, Mr. Wooden remained actively involved, helping to provide information to other players and their families about the Settlement Agreement. Class Counsel reports that Mr. Turner provided similar support for Subclass 2 counsel, Dianne Nast. Mr. Turner passed away shortly before the Third Circuit affirmed the Settlement Agreement.

I believe that this work provided a great value to the Class. The contributions should be recognized through a payment to Mr. Wooden and payments to the estates of Mr. Turner and Mr. Swinson. Because there have been no objections raised to these disbursements and the Class Representatives' roles will not change going forward, I conclude that these amounts will be paid immediately and prior to allocation of the common benefit fund to Class Counsel.

### III. Conclusion

For these reasons, I conclude that Co-lead Counsel's petition for award of attorneys' fees and reimbursement of expenses for Class Counsel will be granted.[13] The request for a 5%

---

[13] I have not addressed the allocation of this common benefit fund in this opinion. The allocation will be addressed in a separate opinion. At that time, I will review the proposed fee allocation

19

holdback of Monetary Awards remains pending.

                                                    s/Anita B. Brody

                                                    ANITA B. BRODY, J.

---

submitted by Co-Lead Class Counsel, the objections, and Co-Lead Class Counsel's reply. I will also review the fee petitions submitted (ECF Nos. 7070, 7116, 7230, and 8725) and the related responses.