**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,<br>                              Plaintiffs,<br>          v.<br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br>                              Defendants. | **Hon. Anita B. Brody** |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

April  5, 2018                                                                                         Anita B. Brody, J.

**MEMORANDUM**

Over the past year, the Court has focused on the implementation of the Settlement Agreement.  Now that implementation is in progress, it is time to focus on attorneys' fees.  There are four key issues for the Court to decide:

(1) the total amount for the common benefit fund;

(2) the allocation of the common benefit fund among Class Counsel;

(3) the amount, if any, to be set aside for attorneys' fees incurred in the implementation of this complex Settlement Agreement and the possible need for future attorneys' fees throughout the 65-year term of the Agreement; and

(4) the reasonableness of the amount of fees to be paid by individual Class Members from their Monetary Awards to individually retained plaintiffs' attorneys ("IRPAs").

1

This last issue impacts on the Monetary Awards to be distributed to individual Class Members and will be addressed below.[1]

On September 14, 2017, I appointed Professor William B. Rubenstein of Harvard Law School as an expert witness on attorneys' fees, covering the issues of (1) fees to be paid to individually retained plaintiffs' attorneys ("IRPAs") and (2) Class Counsel's 5% holdback request. Professor Rubenstein then issued an Expert Report covering those topics. Interested parties were given the opportunity to respond to the Expert Report. Professor Rubenstein then filed a reply to the interested parties' responses to the Expert Report. Lastly, several interested parties filed sur-replies to Professor Rubenstein's reply.

For the reasons set forth below, after considering the recommendations of Professor Rubenstein and the viewpoints of interested parties, I adopt the conclusions of Professor Rubenstein and order that IRPAs' fees be capped at 22% plus reasonable costs. I further adopt Professor Rubenstein's suggestion that IRPAs and Class Members be allowed to file petitions seeking upward or downward deviations from this fee cap. Such deviations, however, will only be granted in exceptional or unique circumstances.

**I.  BACKGROUND**

In his Expert Report, Professor Rubenstein provided extensive background on IRPAs' involvement in this litigation. Expert Report 2-12, ECF No. 9526. Most importantly, Professor Rubenstein explained the special circumstances related to IRPAs in this case:

> While Class Counsel represent the interests of all class members in the aggregate, many individual class members also have their own lawyers. This MDL encompassed thousands of individual lawsuits filed by hundreds of players who were represented individually (or in groups) by their own lawyers. Moreover, other players (or their families) retained individual counsel to represent them in

---

[1]  Because the amount of fees to be paid to Class Counsel impacts the calculation of the fee cap addressed in this opinion, the common benefit fund opinion has also been filed today.

>  the course of the class action proceedings.  The class action settlement foreclosed all individual cases, except for those pursued by players who opted out of the settlement, and the class action notice advised players that, "You do not have to hire your own attorney."  Nonetheless, about half (47% or 9,477 out of 20,376) of the parties that have registered for payment through the class action settlement are represented by their own attorneys.

*Id.* at 7-8 (footnotes omitted).

## II. DISCUSSION

### A. The Authority to Impose a Fee Cap

I adopt Professor Rubenstein's conclusion that a court has the authority to impose a fee cap derived from both the power of a court presiding over an MDL or class action and the ability of a court to review individual fee awards. *Id.* at 12-19.

In MDLs and class actions, "district courts have routinely capped attorneys' fees *sua sponte*." *In re World Trade Center Disaster Site Litig.*, 754 F.3d 114, 126 (2d Cir. 2014); *see also In re: Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico, on Apr. 20, 2010*, No. 10-md-2179 (E.D. La. June 15, 2012) (order setting caps on individual attorneys' fees), ECF No. 6684 at 2; *In re Vioxx Prod. Liab. Litig.*, 650 F. Supp. 2d 549, 553-54, 558-59 (E.D. La. 2009). In complex mass litigation, "excessive fees can create a sense of overcompensation and reflect poorly on the court and its bar," negatively impacting "[p]ublic understanding of the fairness of the judicial process." *In re Zyprexa Prod. Liab. Litig.,* 424 F. Supp. 2d 488, 493-94 (E.D.N.Y. 2006). Consequently, courts must curb such excessive or unreasonable fees to safeguard the public's perception of the courts and the legitimacy of the legal system's handling of massive MDLs and class actions. The way to curb such fees is with a cap.

District courts also derive authority to cap fees from their power to review an individual attorney's fee agreement. "Third Circuit law unequivocally supports the proposition that this Court possesses the inherent authority to regulate the contingent fees of lawyers appearing before

3

it and any lawyer representing a class member in this Settlement is clearly subject to this authority." Expert Report 19; *see also McKenzie Constr., Inc. v. Maynard*, 758 F.2d 97, 100 (3d Cir. 1985) [*McKenzie I*] ("[I]n a civil action, a fee may be found to be 'unreasonable' and therefore subject to appropriate reduction by a court . . . ."); *Dunn v. H. K. Porter Co.*, 602 F.2d 1105, 1110 (3d Cir. 1979) ("[W]here there is a fee contract, courts have the general power to override it, and set the amount of the fee." (internal quotation marks omitted)).

### B. The Need for a Fee Cap

I agree with Professor Rubenstein that the circumstances of this litigation require the implementation of a cap. I adopt Professor Rubenstein's conclusion that a fee cap is necessary in this case, because:

> (1) *players with IRPAs are paying two [sets of] lawyers' fees* (2) in a case settled on an aggregate basis (3) following relatively little litigation (4) requiring IRPAs to undertake a modest amount of work . . . for [5] vulnerable clients [6] who may be subject to contingent fees contracts that were either problematic at formation or are no longer reasonable.

Expert Report 26 (emphasis added). The reality is that two sets of attorneys—IRPAs and Class Counsel—have worked to achieve results for individual Class Members. Although some of the work of IRPAs may be considered separate and distinct from the work of Class Counsel, it is undeniable that all IRPAs have benefitted from Class Counsel's work. An assessment of the reasonableness of IRPAs' fees requires a deduction for Class Counsel's work, which reduced the amount of work required of IRPAs. *See Walitalo v. Iacocca*, 968 F.2d 741, 749 (8th Cir. 1992) (acknowledging that class counsel reduced the amount of work required of individual counsel and directing "the district court to review the plaintiffs' fee arrangements with their individual counsel for reasonableness in light of their decreased responsibilities and the fee award to [class] counsel"). This reduction is necessary to prevent a "free-rider problem"—enabling IRPAs to

4

financially benefit from the work of Class Counsel even though they did not bear the costs. *In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 606 (1st Cir. 1992); *cf. In re Vioxx*, 760 F. Supp. 2d at 653 ("[A]s between a common benefit attorney who expended considerable time, resources, and took significant economic risks to produce the fee, and the primary attorney who did not, it is appropriate and equitable that the former receive some economic recognition from the [latter].") Additionally, it is necessary to reduce IRPAs' contingent fees to avoid the problem of Class Members paying twice for the same work—once to Class Counsel and then again to IRPAs.[2]

---

[2] Many of the interested parties contend that Class Counsel's fee has no bearing on Class Members' recoveries because the Settlement is uncapped. Thus, they argue that Class Counsel's fee should not be calculated in the total amount of attorneys' fees attributable to each Class Member. I join Professor Rubenstein in rejecting this argument:

> A simple analogy helps demonstrate why I continue to believe that Class Counsel's contingent fees must be counted as part of the class's recovery regardless of how the settlement is structured. Assume a client hired a lawyer to pursue a tort claim on a one-third contingent fee basis. After some litigation, the lawyer calls the client and says, "Good news, the defendant has agreed to settle the case and you will be getting $1.1 million. Better yet," she continues, "After we settled your case, we negotiated my fee and the defendant separately agreed to pay me $700,000 directly, with not a penny of that coming out of your $1.1 million." At that point, the client might think, "Wait a minute. It appears we are getting $1.8 million in total and my 2/3 share should be $1.2 million and your 1/3 share $600,000, per our retainer agreement." And of course the client would be right. The point of the analogy is not to suggest malfeasance by Class Counsel in this case; the analogy simply drives home the point that, in assessing the reasonableness of the fees being paid by individual class members, Class Counsel's fees must be considered a component of the class's relief. The facts that the parties have set class members' individual recovery levels net of those fees, that the fees were (partially) negotiated separately from the class's recovery, and/or that the NFL has agreed to pay all claims made in the settlement, in no way alter the point, nor are the parties' efforts to distinguish the key Third Circuit precedents convincing.

Expert Reply 3 n.8, ECF No. 9571. Moreover, although the Settlement Agreement is uncapped, the amount of each individual Class Member's Monetary Award is limited by

I further adopt Professor Rubenstein's conclusion that "a one-third contingent fee best approximate[s] the risk and work that the two sets of attorneys (Class Counsel and IRPAs) undertook in this case."[3]  Expert Reply 3, ECF No. 9571.  Because I conclude that an overall contingent fee of 33% is appropriate, and I have concluded in a separate opinion issued today that the fee to be paid to Class Counsel will constitute approximately 11% of the Class's recovery,[4] the fees to be paid to IRPAs will be presumptively capped at 22%.  To ensure that a 22% cap is fair to all parties involved, I must now crosscheck that number with an assessment of the relevant Third Circuit factors, data on contingent fee levels in this case, and data from other cases.

In assessing the reasonableness of contingent fees, the Third Circuit directs courts to consider the "circumstances existing at the time the arrangement is entered into, . . . the quality of the work performed, the results obtained, and whether the attorney's efforts substantially contributed to the result."  *McKenzie Constr., Inc. v. Maynard*, 823 F.2d 43, 45 (3d Cir. 1987)

---

the terms of the Settlement Agreement.  Thus, Class Counsel's fee may have impacted the formula for each individual Monetary Award and must be considered a component of Class Members' relief.

[3] Some interested parties contend that the fee cap selected is arbitrary.  I adopt Professor Rubenstein's recommendation that an overall fee of 33% is appropriate given the nature of the litigation in this case.  This case settled early in the litigation.  As Professor Rubenstein noted:

> Class Counsel settled the entire case after briefing one dispositive motion, without undertaking any formal discovery, without significant motion practice, without summary judgment briefings, and without preparing for, much less engaging in, a class (or even one bellwether) trial; no IRPA will need to undertake these tasks either.  One of the firms designated as Class Counsel itself states that "[t]his is the only mega fund case in which there was no paper discovery, no depositions, no motion practice, no litigation, no trials, no trial activity."

Expert Report 22 (footnote omitted) (internal quotation marks omitted).  Given that, on average, other similar cases capped overall fees at 32.25%, the decision to use 33% is well-founded.  *See, e.g.*, *In re Vioxx*, 650 F. Supp. 2d 549 (implementing a cap of 32% on overall fees in a case settled following six bellwether trials).

[4] The 11% figure is derived from the overall attorneys' fee award ($106,817,220.62) divided by the overall estimated present value of the Settlement ($982,200,000).

6

[*McKenzie II*].  Importantly, a court must consider whether subsequent events have rendered an agreement—that may have been fair at the time of contracting—unfair at the time of enforcement.  *Id*.

I adopt Professor Rubenstein's conclusion that "application of the Third Circuit's reasonableness factors argues in favor of a substantially reduced contingent fee" for IRPAs.  Expert Report 28.  The risks of this litigation changed dramatically throughout the various phases of litigation that were noted by Professor Rubenstein.  I adopt the conclusion that "contingent fee contracts for large percentages entered into earlier in this case's history are no longer reasonable under the case's present circumstances."  *Id.* at 27.

I must also consider "the quality of the work performed, the results obtained, and whether the attorney's efforts substantially contributed to the result."  *McKenzie II*, 823 F.2d at 45.  The work of Class Counsel substantially contributed to the aggregate resolution of this case.  The IRPAs' work here involves the shepherding of their clients through the claims process of the Settlement Agreement.  "An IRPA should be able to serve her client to this level without need of 30-40% of that award."  Expert Report 28.  Therefore, the presumptive cap of 22% is reasonable, and any exceptional or unique circumstances will be accounted for on an individualized basis.

Data on the contingent fees set by IRPAs at various points during this litigation also support a reasonable cap of 22%.  Professor Rubenstein evaluated 640 IRPA contracts in this case and found that the contingent fee rates "range from a low of 15% to a high of 40%, with a median of 30% and a mean of 29%."  *Id*.  As the risk involved in the litigation decreased, the contracted-for rates also decreased.  *Id*. at 28-29.  These later contingent fee rates range between 20-25%.  *Id.* at 29.  Thus, the market rate for IRPAs in this case indicates that a 22% fee cap is reasonable under the current circumstances.

Comparison to fee caps in other cases confirms that a 22% fee cap here is reasonable. As Professor Rubenstein noted:

> Courts in cases with similar settlement structures – *i.e.*, cases involving both central aggregate lawyers and IRPAs – have capped contingent fees in the past. In six such cases, courts set total fee caps (for both the aggregate lawyers and IRPAs) ranging from 20% to 37.18%, with an average of 32.25%; these six data points yielded effective IRPA fees ranging from 18% to 33.5%, with an average of 23.69%. In another set of seven cases, courts more directly capped IRPA rates, with those caps ranging from 5% to 33.33%, with an average of 17.95%. The average IRPA cap across all 13 cases is 20.6%. An eighth court simply awarded IRPAs a flat fee cap of $10,000 for processing claims through the class action settlement.

*Id.* at 30.

In light of these considerations, including the amount of attorneys' fees charged by both Class Counsel and IRPAs, I conclude that a fee cap of 22% for IRPAs is reasonable.[5]

## C. Petitions to Deviate from the Fee Cap

I adopt Professor Rubenstein's conclusion that counsel and their clients should be given the opportunity to petition the Court to deviate from this cap in exceptional or unique circumstances.[6] I further adopt Professor Rubenstein's non-exhaustive list of circumstances that might provide a party a basis to deviate from this presumptive fee. *See id.* at 32-33. As in all

---

[5] As noted in the common benefit fund opinion also issued today, the Court is reserving judgment on Class Counsel's request for a 5% holdback of all Monetary Awards as a precaution to ensure sufficient funds to pay for implementation of the Settlement. Currently, the Claims Administrator is withholding that 5% from the fee of each IRPA. Therefore, while the Court's determination remains pending, this practice will continue. The precautionary 5% withholding effectively lowers the IRPA fee cap to 17% until further notice. The Court hopes that the 5% holdback will not be necessary for implementation. However, even if the effective 17% cap is final, the Court notes that it would also be reasonable based on Professor Rubenstein's calculation that the average direct fee cap for IRPAs is 17.95%, s*ee* Expert Report 30, and his initial recommendation and support for a 15% fee cap, *see id.* at 1.

[6] Certain interested parties contend that the fee cap violates their procedural due process rights. Prior to my decision to institute a fee cap, however, IRPAs were given an opportunity to respond to Professor Rubenstein's recommendations for a fee cap contained in both his initial Expert Report and his Expert Reply. Additionally, they still have the opportunity to petition the Court to deviate from the cap in exceptional or unique circumstances.

8

cases relating to contingent fee agreements, attorneys are required to demonstrate by a preponderance of the evidence that the fee requested is reasonable. *Id.* at 33; *see also McKenzie I*, 758 F.2d at 100. These petitions will be referred to the Honorable David R. Strawbridge, United States Magistrate Judge for the Eastern District of Pennsylvania,[7] for review in accordance with 28 U.S.C. § 636.

## V. CONCLUSION

For the reasons set forth above, fees to IRPAs will be capped at 22% plus reasonable costs unless the terms of a contingent fee contract reflect a rate lower than the 22% fee cap, in which case the lower fee will apply. In exceptional or unique circumstances, the Court will entertain petitions seeking an upward or downward deviation from the presumptive fee cap.

                                          s/Anita B. Brody

                                          _____
                                          ANITA B. BRODY, J.

---

[7] If necessary, these petitions may be referred to another United States Magistrate Judge for the Eastern District of Pennsylvania.

Copies **VIA ECF** on _____ to: