UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>    Plaintiffs,<br><br>    v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>    Defendants. | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**CO-LEAD CLASS COUNSEL'S RESPONSE TO FORMER NFL
PLAYER-CLAIMANTS' MOTION TO PROHIBIT *EX PARTE*
INTERVIEWS WITH THEIR TREATING PHYSICIANS**

Co-Lead Class Counsel, Christopher A. Seeger, hereby responds to the Motion of Neurocognitive Football Lawyers, LLC to Prohibit *Ex Parte* Interviews with Former NFL Player-Claimants' Treating Physicians. For the reasons set forth below, as well as those reasons set forth in the Claims Administrator's response being filed today, the motion should be denied.

Challenging the authority of the Claims Administrator to contact and interview diagnosing physicians, the Neurocognitive Football Lawyers' motion appears designed to restrict the Claims Administrator's authority to conduct audits to detect and prevent potential fraud in claims. The Neurocognitive Football Lawyers' motion, however, reveals a complete ignorance of the audit process and the Claims Administrator's appropriate use of its authority.

In every settlement claims program, there is concern that some claimants, their attorneys, and/or others working on their behalf, will attempt to obtain awards to which they are not entitled under the terms of the settlement program. As a result, settlement claims programs, including this one, generally utilize an audit process to detect and prevent fraud. In this settlement program, the audit process is expressly provided for in the Amended Settlement Agreement.

Sections 8.6(b), 10.3(b) and 10.4 of the Amended Settlement Agreement, as well as the Rules Governing the Audit of Claims promulgated by the Special Masters, establish the Claims Administrator's authority to establish processes to prevent and detect fraud, and conduct audits of specific claims or groups of claims regarding potential fraud, misrepresentations, omissions, or concealment of material facts by, among others, the physicians providing the Qualifying Diagnosis or other healthcare providers. Specifically, Section 10.3(b) states:

> Co-Lead Class Counsel, Counsel for the NFL Parties, and the Claims Administrator will establish and implement procedures to detect and prevent fraudulent submissions to, and payments of fraudulent claims from, the Monetary Award Fund.

In addition, Rule 7 of the Rules Governing the Audit of Claims provides, in relevant part:

> (b) Specific Claims or Groups of Claims: An Audit by the Claims Administrator of a Claim or a group of Claims under Sections 8.6(b), 10.3(b) or 10.4 of the Settlement Agreement based on the Claims Administrator's own detection processes or from information received from Co-Lead Class Counsel, Counsel for the NFL Parties or any third-party regarding fraud, misrepresentations, omissions, or concealment of material facts relating to Claims by a Settlement Class

>Member submitting a Claim, the physician providing the Qualifying Diagnosis or other healthcare provider, a lawyer, law firm or anyone acting on behalf of the Settlement Class Member, or any other party.

Accordingly, Neurocognitive Football Lawyers are complaining about an audit process that is expressly provided for in the Amended Settlement Agreement and for which the Claims Administrator has the authority to establish procedures.

Under the Amended Settlement Agreement and the Rules Governing the Audit of Claims, the Claims Administrator is tasked with determining whether there is a reasonable basis to support a finding that there has been a misrepresentation, omission, or concealment of a material fact in a Claims Package submitted seeking a Monetary Award.  In order to make that determination, it is necessary for the Claims Administrator to communicate with, or least attempt to communicate with, the physicians under audit investigation to obtain relevant facts.  With a developed investigation, the Claims Administrator can determine whether or not there is a reasonable basis to support a finding that a diagnosing physician misrepresented, omitted, or concealed material facts when submitting a Diagnosing Physician Certification form under penalty of perjury.  If the Claims Administrator neglects to afford the diagnosing physicians the opportunity to provide information, one can easily imagine that the law firm representing those players involved in the affected claims would challenge the investigation conducted by the Claims Administrator on the basis that the diagnosing physicians lacked the opportunity to address the allegations against them.

Accordingly, recognizing the importance of the Claims Administrator's need to obtain as much information as possible from physicians who are the subject of audit investigations, the Special Masters specifically gave the Claims Administrator the authority to require physicians to submit records and other information (see Rule 10 of the Rules Governing the Audit of Claims). More importantly, Rule 10 states that all of the Claims Administrator's requests for information in

connection with an audit "will have the force and effect of a subpoena under Fed. R. Civ. P. 45 . . . ." and that the "Claims Administrator has the authority to take testimony . . . it deems reasonably necessary to complete the Audit." That provision clearly establishes the Claims Administrator's authority to speak with physicians who are under audit investigation.

Movant's reliance on <u>In Re: Vioxx Products Liability Litigation</u>, 2130 F.R.D. 473 (E.D.La. 2005) to support its position that *ex parte* interviews of patients' treating physicians should be prohibited during the audit process of this settlement program is misplaced and somewhat ironic. In fact, Co-Lead Class Counsel served as Lead Counsel in the Vioxx litigation and can state unequivocally that the issue of *ex parte* interviews of patients' treating physicians had nothing to do with the audit process of the settlement program. Rather, the *ex parte* interview issue arose with respect to the discovery phase of the litigation. In addition to this firm's involvement, BrownGreer served as the Claims Administrator for the Vioxx settlement program and conducted the same type of *ex parte* interviews of claimants' treating physicians during the audit process that movant now seeks to prohibit. The Vioxx court was fully aware of and permitted those *ex parte* interviews. Perhaps Neurocognitive Football Lawyers was unaware of the roles that Co-Lead Class Counsel and BrownGreer played in the Vioxx litigation and settlement before filing their brief. In any event, the cases cited by movants are distinguishable and offer no support for movant's request that the Claims Administrator be prohibited from speaking with the players' diagnosing physicians.

## CONCLUSION

For the foregoing reasons, as well as the reasons stated in the Claims Administrator's response, Neurocognitive Football Lawyers' Motion to Prohibit Ex Parte Interviews with Treating

Physicians should be denied. In order to conduct effective audits, as required and authorized by the Amended Settlement Agreement and the Rules Governing the Audit of Claims, the Claims Administrator must have the authority to contact players' diagnosing physicians.

Dated: April 9, 2018                                          Respectfully submitted,

/s/ Christopher A. Seeger
Christopher A. Seeger
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey 07660
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

*Co-Lead Class Counsel*

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing response was served electronically via the Court's electronic filing system on the date below upon all counsel of record in this matter.

Dated: April 9, 2018

/s/ *Christopher A. Seeger*
Christopher A. Seeger