# Exhibit B



**S**EEGER**W**EISS**LLP**

550 Broad Street, Newark, NJ 07102      P 973.639.9100      F 973.639.9393      www.seegerweiss.com

November 17, 2017

**_VIA EMAIL_**
Gene Locks, Esq.
Locks Law Firm
The Curtis Center
Suite 720 East
601 Walnut Street
Philadelphia, PA 19106

Re: **_NFL Concussion Settlement_**

Dear Gene:

I write concerning your November 6, 2017 memorandum (a copy of which is attached) which BrownGreer forwarded to my firm and the Special Masters. In your memo, you purport to lay out a number of problems with the implementation of the Settlement's claims review process. While your memo broadly challenges perceived interference by the NFL in this process, you falsely suggest that my firm has agreed with certain provisions that would adversely affect players, contrary to the terms of the Settlement Agreement.

As you know, we hold nearly weekly settlement administration calls in which your partner, David Langfitt, participates. Given the misstatements in your memo, it is almost impossible to believe that he saw it before it was sent. If he did, I then question the value of keeping him involved in our calls. I address each of your points in turn.

1. **The Affidavit Issue.** You are wrong. The Settlement Agreement requires corroboration of functional impairment (this is, of course, the same Settlement Agreement that you signed off on). One merely needs to show corroboration at the time the doctor renders the diagnosis—it does not have to be an affidavit. In pre-effective date claims, corroboration may take other forms and the failure to provide a corroborating affidavit is not a fatal flaw.

2. **The Functional Impairment Requirement.** This is explained in #1 above.

3. **Applying the Strict BAP Criteria to Pre-Effective Date Claims.** You are wrong. In fact, Seeger Weiss has specifically opposed the interpretation that you contend we have endorsed. Co-Lead Class Counsel has fought for the interpretation negotiated and has filed appeals on this issue supporting the proposition you say we are against.

**New York**          **Newark**          **Philadelphia**

4.     **The AAP's Standard of Review.**  We have appealed the NFL's attempt to require that the players meet a "generally equivalent" standard rather than the "generally consistent" standard for diagnoses rendered outside of the BAP.  Though we attempted to reach agreement with the NFL on this point so that we could provide the Claims Administrator and AAPs with joint guidance from the parties, we were unable to reach such agreement.  We anticipate that the issue will be determined by the Special Masters through pending appeals, which incorporate our position.

5.     **The Downgrading of a Claim.**  You are wrong in this assertion too.  Seeger Weiss has never instructed the AAPs that they could not use their judgment to downgrade diagnoses.  In fact, we have sought to enable just that practice.  To that end, we have been negotiating the diagnosis downgrading issue with the NFL (there is a proposal pending), and have further raised the issue with the Special Masters.

6.     **Incapacity of Diagnosing Physician.**  My firm is well aware of this issue and has, through negotiations with the NFL, reached agreement that there are situations, short of death, where the diagnosing physician should be deemed sufficiently "unavailable" such that accommodations need to be made to ensure that players do not get penalized.  As you are aware, the NFL has agreed to review claims where this is an issue on a case-by-case basis.  We have also alerted the Special Masters to this issue.  To the extent the NFL takes an unreasonable stance on any claim, we will formally raise the issue to the Special Masters (on appeal or otherwise) to ensure that these players are treated fairly.

7.     **The Raw Scores.**  As you know, circumstances have arisen with certain post-approval-date testing practices that are regrettable, and have heightened concerns about potential fraud.  Such concerns, if not responsibly addressed, threaten to indiscriminately penalize otherwise valid claims.  Neuropsychologists as a matter of professional practice and care maintain the raw scores for the tests they administer, so we anticipate no general issue in producing those scores.  Nonetheless, there will undoubtedly be good cause for the absence of such scores in many cases.  We are working through proposals to balance fraud concerns while protecting valid claims.

8.     **The NFL's Actuarial Report.**  Your complaint on this issue is not clear.

9.     **Taking the Full Thirty Days.**  The Settlement Agreement expressly gives the NFL, the player, and Co-Lead Class Counsel 30 days to appeal the notice of decision (see Section 9.7(a)).  I think we need to focus on those issues where the NFL may not be abiding by the letter or spirit of Settlement Agreement.  This is not one of those issues.

10.    **Payment for a Lesser Diagnosis and a Simultaneous Appeal.**  The Settlement Agreement states that the player will receive payment only after all appeals and/or audits have been resolved (see Section 9.3(a)). This is not an issue where the NFL is not living up to the letter or spirit of the Settlement Agreement.

      11.    **Co-Morbidity.**  We are well aware of this issue and will be filing an appeal in the near future in an appropriate case.

      12.    **Earliest Date of Possible Diagnosis.**  We have raised this issue with the NFL and directly with the Special Masters.  As a result, the NFL did agree to review cases where this issue is present on a case-by-case basis.  The Special Master has urged that such review by the NFL—as with all implementation issues—must proceed on a good faith basis.  We are closely monitoring this issue and will pursue relief should the need arise.

Very truly yours,

Christopher A. Seeger

cc:    Special Master Jo-Ann M. Verrier
       Special Master Wendell E. Pritchett
       Orran Brown
       Roma Petkauskas
       David Smith
       David Langfitt, Esq.

<u>MEMORANDUM</u>
<u>11-06-2017</u>

FROM:     Gene Locks
          David D. Langfitt

TO:       Orran Brown
          Roma Petkauskas
          David Smith

Re:       NFL Settlement Implementation

---

      This addresses the systemic problem with the implementation of the NFL Players Concussion Settlement Agreement. We provide below twelve examples of how that problem has delayed valid claims, benefited the NFL, and caused discontent among the retired players.

      The systemic problem is the NFL's incessant micro-management of the process and its delay and denial by refusing to agree on disputed issues with Seeger Weiss ("Seeger"). The result is that the majority of pre-effective date claims, particularly dementia claims, are subject to indefinite delay. Even on a case-by-case basis, the NFL refuses to agree on a just result.

      Below are twelve examples causing undue delays Locks Law Firm ("LLF") believes arise from NFL's micro-management and refusal to agree to practical and just solutions that will avoid delay and confusion. LLF also offers its brief solution to each example. We seek to be brief here, but will provide a more fulsome position and greater detail on each of these examples if asked.

## EXAMPLES OF THE SYSTEMIC PROBLEMS

      1.    **The Affidavit Issue**. The now notorious third-party corroborating affidavit issue has produced unfounded deficiencies and delays in almost every pre-effective date dementia claim. NFL Counsel and Seeger decided long ago that an affidavit that corroborates functional impairment in the player in connection with a dementia claim must be dated before or during the date of diagnosis. Nothing in the Settlement Agreement supports this "Affidavit Rule," and that fact has been laid bare by nearly every lawyer who has submitted a dementia claim to date.

            **LLF Solution**: The Affidavit Rule is <u>not</u> warranted, not supported by the Settlement Agreement, and an unannounced amendment to the Agreement. The Court or Special Master should strike it on that basis.

2.     **The Functional Impairment Requirement.**  Under the Agreement, a pre-effective date diagnosis needs no corroborating affidavit.  If, in the opinion of BrownGreer, there is sufficient indicia of reliability with respect to the diagnosis (a term LLF has set forth in many letters that respond to alleged deficiencies), then BrownGreer can deem the functional impairment criteria satisfied, and no corroboration is needed.

> **LLF Solution:** The Court or Special Master should issue an Order that BrownGreer has the authority to make these decisions.  If the NFL does not agree in any given case, NFL can appeal the award.

3.     **Applying the Strict BAP Criteria to Pre-effective Date Claims.**  The NFL Counsel and Seeger instructed BrownGreer to deem deficient all pre-effective date claims if they do not conform to the literal requirements of the BAP criteria.  That standard of review is contrary to the Agreement.  It is not how pre-effective date claims are reviewed by the AAP under section 6.4(b) of the Agreement.  It therefore cannot be how BrownGreer reviews pre-effective date claims.  This has created a flood of purported deficiencies and delays, particularly for dementia claims.

> **LLF Solution:** The Court or Special Master should instruct BrownGreer to follow the AAP standard of review under 6.4(b) of the Agreement.  If the NFL wants to appeal individual cases as not meeting that standard, it can do so.

4.     **The AAP's Standard of Review.**  NFL Counsel has tried to impose on the AAP (through appeals and otherwise) a different standard of review that is contrary to the language set forth in section 6.4(b) of the Settlement Agreement.  The NFL has argued that a pre-effective date diagnosis must be "generally equivalent" to the BAP criteria.  That is not true and not within section 6.4(b), which states that the AAP member is to review the diagnosis based on principles generally consistent with the BAP criteria, but the diagnosis does not have to use the same criteria or documentation requirements as the BAP.

> **LLF Solution:** The Court or Special Master should issue an Order in consultation with BrownGreer that clearly and unequivocally sets forth the proper standard of review and leaves to the judgment of the AAP member the decision whether to approve or deny a claim.

5.     **The Downgrading of a Claim.**  NFL Counsel and Seeger instructed the AAP that it could not use its own judgment to grant a monetary award for a lesser diagnosis if the medical records supported the decision.  This is known as the "downgrading" of a claim.  This is unfair to the players and prevents AAP members from using their own medical judgment.

> **LLF Solution:** The Court or Special Master should issue an Order that the AAP may use its sound judgment under the proper standard of review to decide whether the medical records in any pre-effective date claim support a greater or lesser qualifying diagnosis.

6.    <u>Incapacity of Diagnosing Physician</u>.  This is persistent problem under section 8.2 and 8.3.  There are many instances where the diagnosing physician is unavailable because he/she does not live in this country, no longer practices medicine, is too infirm, or is legally restrained from signing a DPC.  But the doctor is not dead or deemed incompetent by a court of law.  The NFL refuses to agree to any practical solution that is quick and simple.  In several instances, players were diagnosed long ago by a major university neurologist and placed on the 88 Plan.  Even in those cases, the NFL delayed any agreement for five months and then insisted that sending the players through the BAP and to an MAF physician was the only thing NFL could agree to.

       <u>LLF Solution</u>: Allow BrownGreer the authority to waive the signature requirement if in BrownGreer's judgment (based on an indicia of reliability test) the diagnosis is valid.  If the NFL disagrees with BrownGreer's assessment, it can appeal the award.  If the player disagrees, he can appeal the denial.

7.    <u>The Raw Scores</u>.  NFL has instructed BrownGreer to gather all raw scores from every pre-effective date neuropsychological test.  This is unnecessary and should be reserved only for claims where BrownGreer thinks there is a colorable basis to question the accuracy or validity of the neuropsychological work.

       <u>LLF Solution</u>: The Court or Special Master should instruct BrownGreer that it may seek raw scores if, in its judgment, it believes it has questions about the quality or validity of the neuropsychological testing in any given case.  If the NFL has the same questions regarding any given claim, it can use its audit rights to seek the raw scores.

8.    <u>The NFL's Actuarial Report</u>.  NFL has instructed BrownGreer to use an NFL actuarial report as valid data to challenge and investigate pre-effective date claims.  The NFL's report cannot be used for any purpose.  It was created for the NFL, and the NFL paid for it in an attempt to convince the Court not to uncap the Settlement and that the Monetary Award Fund will never exceed the original $675 million.  It is biased, based on limited data, and wholly unreliable for any medical purpose.

       <u>LLF Solution</u>: The Court or Special Master should instruct BrownGreer that it may not use the NFL actuarial report for any purpose.

9.    <u>Taking the Full Thirty Days</u>.  The NFL delays a full thirty (30) days before revealing whether it will file an appeal of a monetary award.  NFL can surely decide quickly which monetary awards it will <u>not</u> appeal.  If NFL moves with greater haste, the player's Award can move more quickly through the payment process.

       <u>LLF Solution</u>: Narrow the time to 10 days for the NFL to provide a list to BrownGreer of monetary awards it will <u>not</u> appeal.

-3-

10. **Payment for a Lesser Diagnosis and a Simultaneous Appeal**. The NFL and Seeger cannot agree on whether a retired player may accept a monetary award, receive payment for that award, and then appeal aspects of the qualifying diagnosis that the AAP or BrownGreer disallowed.

> **LLF Solution**: The Court or Special Master should issue an Order that this kind of partial appeal is allowed, and the player may receive the lesser monetary award while his appeal for a greater award is pending.

11. **Co-Morbidity**. In its appeals, NFL Counsel has asked the Special Master to disallow Alzheimer's Disease and Parkinson's Disease claims on the grounds that there can be no co-morbidity and all possible co-morbidities must be ruled before a diagnosis can be made. The NFL's position is contrary to science. *See e.g., Clinicopathological Evaluation of Chronic Traumatic Encephalopathy in Players in American Football*, Journal of the American medical Assn., page 366, (2017). Co-morbidities are common in this population; autopsy results prove it.

> **LLF Solution**: The Court or Special Master should issue an Order that a finding of a co-morbidity in any qualifying diagnosis is not a basis to deny the claim.

12. **Earliest Date of Possible Diagnosis**. There are claims that have arisen and will arise where a neurologist has in her or his possession medical records that show the manifestation of a qualifying disease at an earlier date that the date of encounter. On information and belief, NFL Counsel has taken the position that those records cannot serve as the basis for dating the qualifying diagnosis before the date of encounter with the neurologist signing the DPC. This is unfair to the player and contrary to medical practice.

> **LLF Solution**: The Court or Special Master should issue an Order that allows both BrownGreer and the AAP the authority to consider the earlier medical records and approve the claim on the earlier date if in their judgment, the diagnosis for that earlier date is reliable.

GENE LOCKS

-4-