**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc., <br><br> Defendants. | Civil Action No. 2:14-cv-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**MOLOLAMKEN LLP AND HANGLEY ARONCHICK'S RESPONSE TO THE NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC'S MOTION FOR THE APPOINTMENT OF A SPECIAL INVESTIGATOR**

From the very beginning of their involvement in this case, counsel for the Faneca Objectors – MoloLamken LLP and Hangley Aronchick Segal Pudlin & Schiller – have championed fairness for the class. They fought hard to secure the very best deal possible, even after Co-Lead Class Counsel had concluded (incorrectly) that the NFL had nothing more to give. They also worked to ensure that the Final Settlement was tested in the crucible of adversarial litigation and found to be fair, reasonable, and adequate.

In that spirit of ensuring a fair, effective settlement, counsel for the Faneca Objectors now request that, if the Court agrees with the NFL that a Special Investigator is necessary, counsel for the Faneca Objectors be appointed to fill that role. They know the case, the settlement, and the

issues inside-out, and they have a proven track record of vigorously representing the interests of the former players.  Those former players are entitled to settlement administration untainted by fraud.  The fairness of the process must be jealously protected; fraudulent claims waste or steal settlement resources and slow down the claims process for deserving class members.  At the same time, a Special Investigator must not be – and cannot be perceived as – a tool of the NFL, meant to harass deserving class members and deprive them of legitimate claims.  The Faneca Objectors' knowledge of the details of the settlement, their demonstrated commitment to fairness for the class, and their credentials in conducting complex investigations make them a perfect fit for this sensitive and critical job.

## ARGUMENT

### I.    Counsel for the Faneca Objectors Have the Credibility To Serve as Special Investigator Because They Have Consistently – and Successfully – Fought on Behalf of Class Members

Without question, the settlement in this case was a tremendous accomplishment.  Class members suffering from devastating neurological conditions will now have access to medical treatment and will be compensated for their injuries.  Class members who are not presently suffering will have access to a baseline assessment, which will help to promptly detect future decline and facilitate early medical intervention.  However, fraudulent claims may now threaten that achievement – victimizing deserving, cognitively impaired class members and causing delays.  *See, e.g.*, Dkt. 9880-1 at 5.  Such fraud is particularly offensive when it is orchestrated or encouraged by officers of the court, or by the health care professionals whose job it is under the settlement to evaluate class members' conditions.  *See* Dkt. 9885 at 34-35 & nn.27-28.

At the same time, any audit process presents the potential for abuse.  *See* Dkt. 9885 at 28; Dkt. 6201 at 77 (Faneca Objection describing hazards of settlement's audit provisions).  Thus, to be effective, any Special Investigator must demonstrate a loyalty to the fair administration of the

settlement for the benefit of the class and a willingness to ensure that the NFL does not abuse the audit process as a means of denying or delaying legitimate claims.  Counsel for the Faneca Objectors have done precisely that.[1]

With the exception of Co-Lead Class Counsel himself, no lawyer in this litigation has done more for the settlement class than counsel for the Faneca Objectors.  As this Court knows, the Final Settlement that the Court approved on April 22, 2015 was not the same settlement that Co-Lead Class Counsel submitted for preliminary approval on June 25, 2014 (the "Revised Settlement").  That Revised Settlement resulted from "months of intense, hard fought, arms length negotiations" between Class Counsel and the NFL, Dkt. 6463 at 9:11-12, and was a tremendous accomplishment on counsel's part.  But, in fact, it was not actually the "best overall deal" that could be achieved for the class.  *Id.* at 39:19.  The NFL had more to give.  *See* Dkt. 8726 at 4-5.  It was the Faneca Objectors who pressed for and obtained those additional benefits for the class – over the ***opposition*** of Class Counsel.

Faneca Objectors' counsel knew there was room for significant improvement even after this Court had given its preliminary approval to the Revised Settlement:  *First*, the Revised Settlement awarded no eligible-season credit for seasons played in NFL Europe, reducing monetary awards for veterans of that league and effectively excluding over 2,000 class members from the Baseline Assessment Program ("BAP").  Dkt. 7070-1 at 17-18, 22-26.  *Second*, the Revised Settlement risked exhaustion of the BAP Fund by imposing a $75-million cap without any guarantee that all class members would receive a baseline assessment.  *Id.* at 17-18, 21-22.

---

[1] Appointment of objectors' counsel as Special Investigator would not present any conflict of interest.  Counsel for the Faneca Objectors do not represent any class member in connection with the submission of a claim.  To the contrary, counsel's representation of objectors in this litigation favors their appointment as Special Investigator:  It demonstrates their willingness to challenge the NFL in furtherance of fairer and more generous settlement terms, credibly assuring class members that the audit process will not become a vehicle of the NFL's obstruction and delay.

*Third*, the Revised Settlement set a preliminary-approval cut-off date for the death of class members who would be eligible to receive the Death with CTE benefit. *Id.* at 17-18, 26-27. And, *fourth*, the Revised Settlement imposed a non-waivable $1,000 fee for class members to appeal an adverse claim determination. *Id.* at 17-18, 27-28. Co-Lead Class Counsel persuaded this Court to give preliminary approval to the Revised Settlement and, with the NFL, urged the Court to provide final approval as well. The Faneca Objectors stood in their way.

The Faneca Objectors attacked the deficiencies of the Revised Settlement with evidentiary support and highly developed legal arguments. For example, the Faneca Objectors were the only class members to oppose preliminary approval, submitting a 47-page opposition just one week after Co-Lead Class Counsel filed the Revised Settlement. *See* Dkt. 7070-1 at 9-10. That opposition noted the Revised Settlement's failure to adequately compensate Death with CTE, voiced concern over the Revised Settlement's inequitable treatment of NFL Europe, and questioned the need for unnecessary procedural hurdles like the appeal fee. *Id.* The Faneca Objectors built upon those arguments in their 85-page objection, which identified the four major deficiencies in the Revised Settlement (among others). *Id.* at 12. In support of those arguments, the Faneca Objectors submitted declarations from two of the world's premier researchers concerning CTE and neurodegenerative disease, Dr. Robert Stern and Dr. Sam Gandy. *Id.* Beyond those expert declarations, the Faneca Objectors submitted a fact declaration concerning conditions in NFL Europe, Dkt. 6201-17, and over 700 pages of documentary evidence, including dozens of scientific articles documenting the connection between neurodegenerative disease and repetitive head injury. Dkt. 7070-1 at 12-13. No other objector submitted such extensive scientific evidence, and no other objector procured even a single original expert declaration.

At the Court's request, counsel for the Faneca Objectors coordinated objectors' arguments at the fairness hearing and presented the lead argument. Dkt. 7070-1 at 14-15. They identified the four main deficiencies in the Revised Settlement and offered specific proposals curing each defect. *Id.* at 15. Following the fairness hearing, the Faneca Objectors submitted ***more*** scientific evidence, including additional declarations from Dr. Stern and Dr. Gandy, as well as expert declarations from ***nine*** additional scientists and researchers – all among the most prominent minds in the fields of psychiatry, neurology, and neuropsychology. *Id.* at 15-16.

Indeed, even Co-Lead Class Counsel has applauded the efforts of counsel for the Faneca Objectors and the quality of their representation. The Faneca Objectors' counsel, he said, were "probably the best lawyer[s] in the group." Columbia Law School, *Posner on Class Action: NFL Concussion Case Study*, YouTube, at 43:27-44:35 (Mar. 16, 2018), https://youtu.be/qdVMEoA GFyc?t=2607. He called their efforts "a big deal" that resulted in "a lot of process and a lot of structure, which . . . helped make this [settlement] really successful." *Id.*

The Faneca Objectors' efforts paid off for the class. On February 2, 2015, this Court issued an order explaining that it had "reviewed . . . the objections to final approval of the [Revised Settlement] . . . and the arguments . . . at the . . . Fairness Hearing." Dkt. 6479 at 1. The Court concluded that, "[a]fter reviewing these submissions and arguments," certain "changes would enhance the fairness, reasonableness, and adequacy" of the settlement. *Id.*

Those changes – to which the NFL ultimately agreed, *see* Dkt. 6481 – included direct responses to the four main deficiencies the Faneca Objectors had identified:

- <u>*Credit for NFL Europe*</u>. The Final Settlement awarded one-half an eligible season for each season played in NFL Europe, increasing the value of monetary awards for veterans of NFL Europe and making some 2,300 players eligible to participate in the BAP. Dkt. 7070-1 at 17-18, 22-26.

- *BAP Fund Guarantee*.  The Final Settlement also guarantees a baseline assessment for every eligible player, notwithstanding the $75-million cap.  Dkt. 7070-1 at 17-18.  As Co-Lead Class Counsel has explained, "given the higher-than-projected Class participation rate, the **NFL will likely have to spend more than $75 million on the BAP**."  Dkt. 9552 at 3 (emphasis added) (citation omitted).

- *Death with CTE*.  The Final Settlement extended the deadline to be eligible for a Death with CTE benefit by nine months, from the date of preliminary approval to the date of final approval.  Dkt. 7070-1 at 17-18.

- *Hardship Waiver of Appeal Fee*.  The Final Settlement now permits waiver of the $1,000 appeal fee for class members experiencing financial hardship, ensuring that financially needy class members whose claims were erroneously denied – but whose appeals would have been deterred by the $1,000 fee – still receive what they are due.  Dkt. 7070-1 at 17-18, 27.[2]

Even beyond those benefits, the Faneca Obectors' work "sharpen[ed] the issues and debate on the fairness of the settlement," *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 358 (N.D. Ga. 1993), and "add[ed] value to the class action settlement process" by "transforming the fairness hearing into a truly adversarial proceeding," *In re Cardinal Health, Inc. Sec. Litig.*, 550 F. Supp. 2d 751, 753 (S.D. Ohio 2008).

---

[2] All told, the Faneca Objectors secured as much as $122.6 million of additional benefit for the class, a calculation that must consider "the total funds made available" to the class, "whether claimed or not."  *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007); *see also* Dkt. 7366 at 10-16.  Eligible Season credit for NFL Europe brought $36.8 million in additional benefit to the class.  Dkt. 8726 at 4 & n.2; *see* Dkt. 7070-1 at 22-26; Dkt. 7366 at 3; Dkt. 7550 at 6.  (Even Co-Lead Class Counsel's actuarial expert recognizes the value of this enhancement:  He valued it at $41 million in additional payouts to the class.  Dkt. 7464-12 at 7.)  The guarantee that every eligible class member will receive a baseline assessment is worth up to $29.6 million in additional benefits.  Dkt. 8726 at 4; *see* Dkt. 7070-1 at 21-22; Dkt. 7366 at 3; Dkt. 7550 at 6-7.  Extending the Death with CTE deadline created an estimated $44.6 million in value for the class.  Dkt. 8276 at 4; *see* Dkt. 7070-1 at 26-27; Dkt. 7366 at 3; Dkt. 7550 at 7-9.  And waiving the appeal fee in cases of financial hardship will yield an estimated $11.6 million in payments to financially needy class members who may not have appealed otherwise.  Dkt. 8726 at 4; *see* 7070-1 at 27-28; Dkt. 7366 at 3; Dkt. 7550 at 9-10.

As Judge Lee H. Rosenthal has remarked, the objectors in this case were "vigorously and well represented."[3]  Counsel for the Faneca Objectors were the driving force behind that effort. They helped deliver a settlement that was fair for the class and that will bring improved health and medical treatment to thousands of NFL veterans who otherwise would have been excluded from the Settlement's benefits, whose recovery otherwise would have been unjustly reduced, or who otherwise would have been unable to appeal an erroneous claim denial.  In doing so, they have demonstrated their loyalty to a settlement that is fair, and fairly implemented, as well as their willingness to challenge the NFL – traits critical to ensuring the credibility of any Special Investigator.

## II.     Counsel for the Faneca Objectors Have Already Demonstrated Efficiency in Advancing Class Interests

Not only have counsel for the Faneca Objectors been effective in advancing the interests of the class, they have shown this Court that they can work efficiently.  Recognizing that delay only prolonged the suffering of class members in need of the settlement's benefits, the Faneca Objectors often pushed for expedited briefing schedules and filed their papers well in advance of the due date.  *See* Dkt. 7070-1 at 4-5.  Still, their filings addressed the relevant issues in greater depth and with far more evidence than any other objector.  *See, e.g.*, *id.* at 8-20.  Indeed, the Faneca Objectors achieved their tremendous class benefit with a lodestar of about $4 million.  *Id.* at 47-48.  By contrast, counsel for the class plaintiffs spent ***nine times that amount*** – $36 million – on ***pre-settlement*** activities of uncertain benefit to the class.  *See* Dkt. 8726 at 11.  And the vast majority of class plaintiffs' post-settlement activity was focused on ***opposing*** the Faneca Objectors' (ultimately successful) efforts to improve the settlement for the class.  That counsel

---

[3] Columbia Law School, *Posner on Class Action: NFL Concussion Case Study*, YouTube, at 21:27-21:33 (Mar. 16, 2018), https://youtu.be/qdVMEoAGFyc?t=1287.

for the Faneca Objectors could extract an additional $122.6 million in benefit from the NFL on top of a settlement then valued at almost $1 billion, while incurring lodestar fees of only $4 million, is a testament to their efficiency and effectiveness.  They would bring the same vigor and efficiency to the role of Special Investigator if appointed by this Court.

Finally, counsel for the Faneca Objectors have the familiarity with the settlement and the underlying scientific issues that would be necessary to evaluate and root out fraudulent claims.[4] Indeed, they submitted expert declarations from more scientific and medical experts than any party in this case.  *See* Dkt. 7070-1 at 15-16.

## III. Counsel for the Faneca Objectors Have the Experience Necessary To Serve Effectively as Special Investigator

The Faneca Objectors' counsel have the experience and know-how to uncover fraud through efficient, thorough investigations.  Steven F. Molo and other attorneys at MoloLamken have conducted countless internal investigations for companies large and small.[5]  Indeed, Mr. Molo is a co-author of the seminal treatise on the topic, *Corporate Internal Investigations*.  Mr. Molo, who began his career as a prosecutor, has also represented dozens of clients in criminal investigations, including senior government officials and corporate executives.  Among the members of the firm available to participate in this representation are:

- Megan Cunniff Church, who immediately prior to joining MoloLamken as a partner served as the Deputy Chief of the Financial Crimes Section for the United States Attorney's Office for the Northern District of Illinois;[6]

---

[4] As Co-Lead Class Counsel points out, even some attorneys with leadership positions in this MDL have betrayed an ignorance of the fundamental workings of the settlement for which they now claim so much credit.  *See* Dkt. 9885 at 16-18, 32-33 & n.26 (describing how clients of the Locks Law Firm and other firms assigned their monetary awards, in contravention of an express settlement prohibition against doing so); Dkt. 7708 (describing Craig Mitnick's misunder-standing of settlement).

[5] *See* http://www.mololamken.com/lawyers-11.html.

[6] *See* http://www.mololamken.com/lawyers-98.html.

- Jessica Ortiz, a partner whose accomplishments include years of investigative and trial experience as an Assistant United States Attorney for the Southern District of New York, including several years as Chief of the Narcotics Unit;[7] and

- Justin Shur, a partner and former Deputy Chief of the Public Integrity Section of the U.S. Department of Justice's Criminal Division, who in private practice has spearheaded internal investigations for numerous corporations and institutions.[8]

Counsel at Hangley Aronchick would bring additional expertise. If appointed, this will not be the first time they have been called upon to assist a court in the oversight of complex litigation. William Hangley has been sought out for a quite similar assignment in the past.[9]  He has recently served as Special Discovery Master in one complex case – *Heraeus Medical GmbH v. Esschem, Inc.*, No. 2:14-cv-05169 (E.D. Pa.) (Rufe, J.) – and continues his years-long service in a consolidated group of cases – *Johnson v. SmithKline Beecham Corp.*, No. 2:11-cv-005782 (E.D. Pa.) (Diamond, J.) – in which he has repeatedly been called upon to investigate and

---

[7] *See* http://www.mololamken.com/lawyers-81.html.

[8] *See* http://www.mololamken.com/lawyers-35.html.

[9] Mr. Hangley and his firm were also selected (a selection approved by Judge Bartle) to investigate and pursue remedies for fraudulently submitted claims in the fen-phen settlement. *See In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 236 F. Supp. 2d 445 (E.D. Pa. 2002). Regrettably, a non-client conflict forced the firm to rescind its acceptance of the engagement. Mr. Hangley has also served the courts as Chair of the Third Circuit Lawyers Advisory Committee and on the Advisory Committee on Federal Evidence Rules of the United States Judicial Conference.

address allegations of attorney misconduct.[10]   Michele Hangley has served as a Special

Discovery Master in the Philadelphia Commerce Court.[11]

*          *          *

Counsel for the Faneca Objectors have consistently and unflaggingly advocated for the

class throughout this case and have pursued with vigor a settlement that is fair and reasonable.

Fraudulent claims driven by unscrupulous attorneys and medical professionals may now be

jeopardizing the effectiveness of that settlement, slowing down the claims process for deserving

claimants – the vast majority of the class – and consuming the attention of this Court, the Special

Masters, the Claims Administrators, and Co-Lead Class Counsel.[12]   Counsel for the Faneca

---

[10] *See Johnson v. SmithKline Beecham Corp.*, No. 2:11-cv-005782, 2014 WL 6851277 (E.D. Pa. Dec. 4, 2014), *report and recommendation adopted*, 2015 WL 1004308 (E.D. Pa. Mar. 9, 2015) (28 U.S.C. § 1927 sanctions); *Johnson v. SmithKline Beecham Corp.*, No. 2:11-cv-005782, 2016 WL 4426164 (E.D. Pa. Aug. 10, 2016) (inquiry regarding voluntary and informed nature of 28 proposed partial dismissals); *Johnson v. SmithKline Beecham Corp.*, No. 2:11-cv-005782, 2017 WL 2729272 (E.D. Pa. Jan. 23, 2017), *report and recommendation adopted*, 2017 WL 2720183 (E.D. Pa. June 23, 2017) (contested motions to withdraw); *Johnson v. SmithKline Beecham Corp.*, No. 2:11-cv-005782, Dkt. 588 (E.D. Pa. Feb. 26, 2018), *report and recommendation adopted*, Dkt. 593 (E.D. Pa. Mar. 14, 2018) (accusations of evidence tampering).

[11] *Ratner v. Iron Stone Real Estate Fund I, L.P.*, Phila. Court of Common Pleas, Commerce Program, March Term, 2017, No. 1497 (Glazer, J.).

[12] The NFL has suggested that some class members "appear to have been knowing participants in the fraud." Dkt. 9879 at 10. The bigger threat, however, is the risk that unscrupulous lawyers and medical professionals have made neurocognitively impaired class members unwitting participants in an attempt to profit from the settlement. Contingency fee payments derived from large Monetary Award payments create strong incentives for individual lawyers to orchestrate fraud. (The Faneca Objectors' counsel, by contrast, will be paid – if at all – from the Attorneys' Fees Qualified Settlement Fund. *See* Dkt. 7070-1 at 45.) Sadly, some evidence already suggests that class members are being manipulated into submitting false or fraudulent claims. *See, e.g.*, Dkt. 9880-1 at 2-3. Still other counsel have participated in, or at least allowed, their clients to assign their Monetary Award to a third-party funder. *See, e.g.*, Dkt. 8371 (motion to compel corrective disclosures by Howard & Associates, P.A.); Dkt. 9885 at 32-34 & n.26. As this Court is well aware, such assignments are prohibited under the settlement, and the participation or acquiescence of class members' lawyers in those deals is ethically dubious. Both this Court and Co-Lead Class Counsel have rightfully condemned these actions, and the Faneca Objectors' counsel as Special Investigator would make it a priority to investigate law firms, medical professionals, and others who are exploiting class members.

Objectors can help alleviate that burden efficiently, leveraging their substantial efforts to benefit the class in an effort to root out fraud where it exists and to quickly close investigations and audits where it does not.

## **CONCLUSION**

Counsel for the Faneca Objectors respectfully request that, if the Court believes a Special Investigator is necessary, they be appointed to fill that role.

Dated:  April 27, 2018

Respectfully Submitted,

*/s/ Steven F. Molo*

William T. Hangley
Michele D. Hangley
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square
18th & Cherry Streets
27th Floor
Philadelphia, PA  19103
(215) 496-7001 (telephone)
(215) 568-0300 (facsimile)
whangley@hangley.com
mdh@hangley.com

Steven F. Molo
Thomas J. Wiegand
MOLOLAMKEN LLP
430 Park Ave.
New York, NY  10022
(212) 607-8160 (telephone)
(212) 607-8161 (facsimile)
smolo@mololamken.com
twiegand@mololamken.com

Eric R. Nitz
MOLOLAMKEN LLP
600 New Hampshire Ave., NW
Washington, DC  20037
(202) 556-2000 (telephone)
(202) 556-2001 (facsimile)
enitz@mololamken.com

*Counsel for the Faneca Objectors*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2018, I caused the foregoing Response to the National Football League and NFL Properties LLC's Motion for the Appointment of a Special Investigator to be filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel and parties.

*/s/ Steven F. Molo*