# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>Hon. Anita B. Brody |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>    Plaintiffs,<br><br>    v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>    Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

**MOTION FOR RECONSIDERATION OF THE
DENIAL OF THE LOCKS LAW FIRM'S MOTION FOR
<u>APPOINTMENT OF ADMINISTRATIVE CLASS COUNSEL</u>**

Locks Law Firm ("LLF") respectfully submits this Motion for Reconsideration, which includes the Declaration of Gene Locks and the Expert Opinion of Alfred Putnam, partner and former Chairman and CEO of the firm of Drinker, Biddle & Reath, attached as Exhibit 1 and Exhibit 2, respectively. LLF asks that the Court reconsider its denial of LLF's Motion for Appointment of Administrative Class Counsel (ECF No. 9786). Specifically, LLF asks that the Court withdraw its adverse finding and reprimand on the issue of third-party funders and then reserve

1

judgment on the balance of this motion until after completion of the hearing scheduled for May 15, 2018 concerning class benefit fees and the Court's Explanation and Order relating to the Third Party Funder Litigation (ECF No 9531) along with any appropriate briefing that may follow that hearing.

## PRELIMINARY STATEMENT

In its April 18 Order denying LLF's Motion for Appointment of Administrative Class Counsel, the Court identified one of the grounds for its ruling as follows:

- The Locks Firm's role in facilitating Third-Party Funding Agreements to Class Members prohibited under the Settlement Agreement. This undermines any claim by the Locks Firm that it would be able to faithfully administer the Agreement.

ECF No. 9890, at 2. The issue of third-party funding agreements formed no part of LLF's motion, and LLF was not reasonably on notice that the issue might be pertinent. The matter was raised for the first time in the response brief of Co-Lead Counsel Chris Seeger. Prior to the filing of the Seeger response, this Court had denied LLF the opportunity to file any reply to any response brief. As a consequence, this Court has made a finding of fact adverse to LLF on the issue of third-party funding agreements and has cast aspersions on LLF's good faith in its administration of the Settlement Agreement on behalf of the class and its individual clients, all without giving the firm any opportunity to submit evidence, reply to the arguments of Mr. Seeger, or otherwise be heard on the issue.

This fact is all the more troubling in light of this Court's March 28, 2018 Order (ECF No. 9833) — issued a week after LLF filed its motion — requiring all

2

attorneys serving in a representative capacity for the class (including LLF) to produce documents and answer questions relating to the issue of third-party funding agreements and to participate in a May 15 hearing on that subject in relation to class benefit fees. In other words, the Court has issued a finding adverse to LLF without hearing from the firm on the very isuue as to which it has asked LLF and other firms to produce documents, answer questions, and participate in a hearing. This creates the appearance that the Court has prejudged the results of that exercise before reviewing the evidence and hearing from counsel.

The grounds for this Motion for Reconsideration are twofold.

First, it was a "clear error of law," *Simon Wrecking Co. v. AIU Insurance Co.*, 541 F. Supp. 2d 714, 715–716 (E.D. Pa. 2008) (Brody, J.), for the Court to issue a finding on the issue of "The Locks Firm's role in facilitating Third-Party Funding Agreements to Class Members" and to use that finding as one of the grounds for denying LLF's motion without giving the firm any opportunity to be heard on that issue, submit evidence, or refute the arguments and assertions made by Mr. Seeger on which the Court appears to have based its finding.

Second, insofar as the Court continues to view the issue of third-party funding as relevant to the disposition of LLF's Motion for Appointment of Administrative Class Counsel, LLF requests the opportunity to submit "new evidence" concerning these matters "that was not available when the court" denied LLF's motion. *Id*. As Part II describes below, that new evidence will establish the following propositions: (1) LLF had no reasonable notice and no actual belief that the Settlement Agreement prohibited players from obtaining advances on their

3

monetary awards from third-party funders; indeed, the firm had affirmative indications from Co-Lead Counsel Chris Seeger that advances on monetary awards were not prohibited; (2) LLF assisted clients with such advances only at the urgent request of the clients and only after informing clients of the significant downsides of these funding arrangements and counseling against them; (3) LLF ceased all assistance with such funding arrangements when the Court issued its order finding those arrangements prohibited by the Settlement Agreement; (4) LLF never profited from any funding arrangement; and (5) LLF acted responsibly, ethically, and in good faith at all times. Some of this new evidence was within LLF's possession when it filed the Motion for Appointment of Administrative Class Counsel but the firm had no notice that the evidence would be relevant, meaning that it was not "available" for purposes of the motion as filed. Other evidence was not available under any standard when LLF filed its motion. LLF summarizes this evidence in Part II and in the Declaration of Gene Locks and offers a more complete submission in conjunction with its response to the Court's Order requiring answers to questions and production of documents. ECF No. 9833.

Given the relationship between these two matters created by the Court's Order denying the motion, LLF asks that the Court withdraw its finding against LLF on the issue of third-party funding agreements and then reserve judgment on the balance of this Motion for Reconsideration until after the May 15 hearing and any appropriate briefing that may follow that hearing.

**ARGUMENT**

I. **This Court Made a Clear Error of Law When it Reprimanded LLF, Issued a Finding Adverse to the Firm, and Relied on that Finding as One Ground for Denying the Motion, All Without Giving LLF Any Opportunity to be Heard on the Issue.**

When this Court issued a finding in an unsealed order accusing LLF of conduct that "undermines any claim by the Locks Firm that it would be able to faithfully administer the Agreement," ECF No. 9890, at 2, it publicly impugned the professionalism of the firm. When this Court relied on that finding in the text of its order as one ground for denying LLF's Motion for Appointment of Administrative Class Counsel, it treated that finding not merely as a critical comment but as a reprimand. And when this Court issued that reprimand and relied on that finding as one ground for denying LLF's motion without giving the firm any notice or opportunity to be heard on the issue, it committed a clear error of law.

The Third Circuit has emphasized the serious harm done to members of the Bar when a court issues a reprimand in an unsealed order. Commentary that impugns the good faith of a lawyer "directly undermines [the attorney's] professional reputation and standing in the community. That is far from an insignificant affront. A lawyer's reputation is one of his[/her] most important professional assets." *Adams v. Ford Motor Co.*, 653 F.3d 299, 305 (3d Cir. 2011) (citations omitted; second alteration in original). The dispute in *Adams* involved the actions taken by a federal magistrate court in response to complaints from a juror about a lawyer who contacted the juror following a verdict. The magistrate judge found that the communication was improper after a cursory hearing on short notice

in which the lawyer received no advance warning of the possibility of a reprimand. While the magistrate judge did not impose any formal sanctions, he did make a finding in an unsealed order that the lawyer had engaged in "misconduct" and referred the matter to the local bar association for investigation. *See id*. at 303. The Third Circuit held that both the substance of that ruling and the process the magistrate judge employed in reaching it constituted reversible error.

This Court has not referred any issues concerning third-party funding agreements and LLF to the bar association (and, we respectfully suggest, could not properly do so), but the harm worked by its charge of bad faith is no less serious. The Third Circuit has emphasized the gravity of the interests at stake when a court issues a reprimand, even when the court does not impose sanctions or undertake other formal disciplinary action. Judicial censure "bears a greater resemblance to a reprimand than a comment that is merely critical of [attorney] behavior," the Third Circuit explained, when it "carries with it a degree of formality," as is "clearly" the case when "the assessment of [the attorney's] conduct appears in an unsealed court order" and forms part of the basis for that order. *Id*. at 306.

*Adams* holds that it is imperative that lawyers receive adequate notice of the possibility of censure and an opportunity to be heard before a court issues such a reprimand. These are the minimum demands of the Due Process Clause in most settings, and the ordinary requirements of due process are heightened in a case like this because of the serious and irreparable injury that an unjust judicial reprimand can inflict on a lawyer's professional reputation.

> An opportunity to be heard is "especially important" where a lawyer or firm's reputation is at stake because sanctions "act as a symbolic statement about

6

>   the quality and integrity of an attorney's work—a statement which may have a tangible effect upon the attorneys' career." As noted above when we referenced the availability of the internet, modern search engines and web sites oriented toward allowing consumers to voice displeasure about experiences they have had exponentially increase the impact of such sanctions on a professional's reputation and career. Moreover, such complaints are not unlike a cybernetic zombie that lives on in cyberspace long after any underlying dispute has been resolved—even if it is resolved to the ultimate satisfaction of the consumer (or client).

*Id*. at 308–309 (quoting *Fellheimer, Eicher & Braverman, P.C., v. Charter Tech, Inc.*, 57 F.3d 1215, 1227 (3d Cir. 1995)). As the Third Circuit said in a case involving the imposition of formal sanctions, lack of adequate notice that deprives an attorney of the opportunity to be heard can be an "exceptional circumstance[]" warranting the granting of a motion for reconsideration or the reopening of a final order in such a case because the lawyer's "professional reputation is at stake." *Dashner v. Riedy*, 197 Fed. Appx. 127, 132, 133 (3d Cir. 2006). In another sanctions case, the Third Circuit held that a district court violated due process when it notified an attorney that it was considering the imposition of sanctions under one source of authority, 28 U.S.C. § 1927, but "it [was] not as clear [the attorney] had notice that the court was considering" another sanction it ultimately issued through its inherent powers, one that required the attorney "to attach his scarlet letter to his *pro hac vice* admissions." In re *Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 278 F.3d 175, 192–193 (3d Cir. 2002). *See also Fellheimer*, 57 F.3d at 1225 (holding that "notice of the precise sanctioning tool that the court intends to employ" is generally required).

The motion that LLF filed on March 20, 2018 for appointment of administrative class counsel related to the serious and persistent problems that the firm sees on a daily basis in the administration of the Settlement Agreement as it

7

continues to advocate for the class and its individual clients in the face of obstruction by the NFL. Third-party funding arrangements had nothing to do with LLF's motion, and at the time the firm moved for appointment of administrative class counsel it was not on notice that the Court saw any connection between the two issues. Neither was the firm on notice that the Court was even considering the idea that LLF had engaged in any improper conduct when, prior to the Court's December 2017 order, the firm responded to the needs of clients who had requested its assistance in securing needed funding. At the time LLF filed its motion, the Court had given no such indication, and so far as LLF is aware, the Court had no information at that time about any assistance the firm provided to its clients on advances from third-party lenders.

The question of third-party funding came up only in the response of Co-Lead Counsel Chris Seeger. In advance of Mr. Seeger's filing of that response, this Court forbade LLF from offering any reply. Mr. Seeger then made a series of accusations against LLF concerning the issue of third-party funding. ECF No. 9885 at 16–17. This Court then issued a ruling apparently based solely on the representations of Mr. Seeger with no opportunity for the firm to be heard on the issue.

The Court's finding that LLF's role in assisting its clients with third-party funding "undermines any claim by the Locks Firm that it would be able to faithfully administer the Agreement" is a reprimand issued in an unsealed order and used as one ground for the denial of the underlying motion. That reprimand was issued without the notice and opportunity to be heard that due process requires and that the Third Circuit has held to be "especially important where a lawyer or firm's

reputation is at stake." *Adams*, 653 F.3d at 608; *see also Dasher*, 197 Fed. Appx. at 132–133; In re *Prudential*, 278 F.3d at 192–193. And, as Part II summarizes, a full presentation of evidence will demonstrate that the Court's finding was erroneous. LLF respectfully submits that these actions by the Court constituted a "clear error of law," *Simon Wrecking Co. v. AIU Insurance Co.*, 541 F. Supp. 2d 714, 715–716 (E.D. Pa. 2008) (Brody, J.) requiring that the Court grant this Motion for Reconsideration.

**II.     LLF Must be Given an Opportunity to Present New Evidence on the Issue of Third-Party Funding Agreements.**

In response to the Court's March 28 order (ECF No. 9833), LLF is making an extensive submission on the issue of advances to clients from third-party funders, including documents and communications relating to funding arrangements requested by individual clients, the declaration of Gene Locks with exhibits, and an expert opinion on professional responsibility and ethics offered by Alfred Putnam (a copy of which is also attached to this Motion for Reconsideration as Exhibit 2). These materials will establish facts including, without limitation, the following:

- Prior to the Court's December 2017 Explanation and Order relating to the Third Party Funder Litigation (ECF No 9531), LLF was not on notice, and in fact did not believe, that § 30.1 of the Settlement Agreement titled "No Assignment of Claims" or any other provision of the settlement had any bearing on advances that players might secure from third-party funders against their expected awards under the settlement.

- There were multiple indications that the settlement language did not apply to such funding arrangements, including (i) the absence of any notice to that effect in any communication to lawyers or players from this Court or from Co-Lead Counsel Seeger; (ii) the absence of any mention of the issue in the notice sent to the class pursuant to Federal Rule of Civil Procedure 23(e) detailing the benefits and trade-offs of the Settlement Agreement; (iii) an "Update on the Settlement" sent by Mr. Seeger to class members on July 19,

- 2016 urging that players be "cautious" if approached by lenders who might charge excessive rates and advising former players not to pursue such funding arrangements, but giving no indication that such funding arrangements are prohibited by the Settlement Agreement, thus indirectly indicating that such advances are permitted and must be treated by Co-Lead Counsel as the subject of advice and guidance rather than a categorical prohibition; and (iv) LLF's familiarity with other settlement agreements in mass personal injury cases, including some in which Mr. Seeger was counsel, where similar language prohibiting "Assignment of Claims" was included and there was no indication that such language prohibited class members from obtaining advances on their monetary awards under the settlement.

- At the time he helped draft the Settlement Agreement, Mr. Seeger occupied a fiduciary role as a member of the Board of Directors of Esquire Financial Holdings ("EFH"). According to public statements by EFH, Board Members for EFH also serve on the Board of Directors of Esquire Bank, a wholly-owned subsidiary of EFH, though these statements post-date the time Mr. Seeger says that he left the Board of EFH (May 2016) so it is unclear whether that shared Board structure was in place prior to his departure. Esquire marketed advances on monetary awards under the Settlement Agreement to former players during the relevant time period, and it did so with encouragement and assistance from Mr. Seeger. Those funding arrangements included language requiring that players agree to "assignment of rights" of their monetary compensation under the Settlement Agreement, language similar or identical to that contained in other funding arrangements. On their face, these advances from Esquire appear to be equally prohibited by the Court's December 2017 order, which is based on language in § 30.1 prohibiting class members from assigning "**any**  rights or claims relating to the subject matter of the Class Action Complaint" (emphasis added).

- LLF never solicited business on behalf of third-party funders, never urged clients to obtain funding arrangements from third-party funders, and never profited in any way from any relationship with third-party funders or the decision of any client to obtain an advance from a funder.

- Whenever an LLF client came to the firm seeking advice or assistance in relation to an advance on their expected award under the settlement, the firm spent considerable time with each client explaining the significant downsides and disadvantages to such funding arrangements and advising the client to consider alternatives. In some cases, the clients followed LLF's advice and decided against obtaining advances. In others, the clients' needs were so urgent and their options so few that they decided they needed to pursue an advance despite the significant downsides. In every case, the decision to obtain an advance was the client's, reached after consultation with LLF about the reasons not to pursue such funding. In many cases, it was the possibility of ruinous consequences — homelessness, a catastrophic and

10

irreversible decline in health; the dissolution of a family — that impelled the client to seek an advance despite the firm's words of caution.

- When clients did decide to seek an advance despite LLF's advice to the contrary, the firm would sign the required documents indicating that LLF would transfer funds from the player's future award to the funder in accordance with the terms of the advance. In some cases, the firm also assisted the client in gathering and transmitting the supporting documentation needed to complete the application process. And in some cases, the firm made efforts on behalf of the client to negotiate a lower rate from the funders and otherwise promote the interests of the client pursuing the advance.

- Following the issuance of this Court's December 2017 Explanation and Order relating to the Third Party Funder Litigation (ECF No 9531), LLF informed its clients that it can no longer provide assistance on advances against future monetary awards under the settlement and has in fact provided no such assistance of any kind.

- Throughout the relevant time period, LLF drew no distinction and was aware of no basis for any distinction under the Settlement Agreement between the validity of advances offered by most funders and advances offered by Esquire Bank. Neither does LLF know of any basis for distinguishing between the two types of funding arrangements under the Court's December 2017 order interpreting § 30.1. Both types of funding arrangement included "assignment of rights" to monetary awards under the settlement.

- On April 23, 2018, the Claims Administrator and the Special Masters issued a Notice of Assignment Review Determination to several LLF clients in which they opined that advances issued by Esquire Bank do not constitute prohibited assignments under § 30.1 of the Settlement Agreement. The Claims Administrator and Special Masters listed five reasons to explain their determination. None of those reasons relates to the language of § 30.1 of the Settlement Agreement, either on its face or as interpreted in this Court's December 2017 Order. While LLF respects the diligence and good faith of the Claims Administrator and the Special Master, the firm remains in doubt concerning the validity of Esquire advances that include language requiring "assignment of rights" to monetary benefits under the settlement.

- In the expert opinion of Alfred Putnam (attached to this motion as Exhibit 2), drawing on his expertise on matters of professional responsibility and ethics, LLF has taken no improper actions in relation to advances from third-party funders and has faithfully executed its duties to its clients.

Some of the evidence establishing the facts described above was within LLF's possession when it filed its Motion for Appointment of Administrative Class Counsel, but because the firm had no notice that these matters would be relevant to that motion and was denied the opportunity to reply when Mr. Seeger introduced the issue in his response, the evidence was not "available" for purposes of the motion. Other evidence establishing these facts was not available under any standard. Some evidence did not yet exist, as with the April 23, 2018 determination of the Claims Administrator and the Special Masters. Other evidence was not known to LLF and was not reasonably knowable, as with the growing body of evidence concerning the role of Mr. Seeger in promoting funding arrangements for Esquire Bank and the impropriety of impugning the good faith efforts of LLF in assisting its clients with advances that include "assignment of rights" to monetary payments when Esquire Bank advances also include "assignment of rights" to monetary payments.

The Court made a finding adverse to LLF on these matters without the benefit of any of this evidence and issued a reprimand to the firm in an unsealed order that formed one ground for its denial of the Motion for Appointment of Administrative Class Counsel. The proffer above, describing evidence that LLF is submitting in response to the Court's March 28 Order (ECF No. 9833) and can develop further and supplement as needed, along with the Declaration of Gene Locks with attached exhibits and the Expert Opinion of Alfred Putnam (attached as Exhibits 1 and 2), constitutes "new evidence that was not available when the court" denied LLF's motion, *Simon Wrecking Co. v. AIU Insurance Co.*, 541 F. Supp. 2d 714, 715–716 (E.D. Pa. 2008) (Brody, J.), and warrants the relief requested here.

## **CONCLUSION**

There are two issues at stake in this Motion for Reconsideration. First, there is the harm imposed by the Court's public reprimand of LLF on the issue of third-party funding, issued without notice or opportunity to be heard and creating the appearance that the Court has prejudged an issue as to which it has ordered LLF and other firms to produce documents, answer questions, and participate in an upcoming hearing. Second, there is the denial of the Motion for Appointment of Administrative Class Counsel, which this Court indicated was based in part on its adverse finding on the third-party funding issue. Given the current posture of these proceedings, LLF respectfully makes two requests.

First, LLF asks that the Court withdraw its adverse finding on the third-party funding issue in its denial of the Motion for Appointment of Administrative Class Counsel, ECF No. 9890. Whatever findings the Court may make on that issue after reviewing the responses to its March 28 order, conducting the May 15 hearing, and considering any appropriate briefing, the finding in its April 18 Order — issued without notice or opportunity to be heard and without the benefit of the evidence that LLF can provide — will linger like "a cybernetic zombie that lives on in cyberspace long after any underlying dispute has been resolved" unless it is promptly withdrawn. *Adams v. Ford Motor Co.*, 653 F.3d 299, 309 (3d Cir. 2011).

Second, LLF asks that the Court reserve judgment on the balance of this Motion for Reconsideration until after the May 15 hearing and any appropriate briefing that may follow that hearing. As the proffer in Part II and the attached

13

Exhibits demonstrate, it will be apparent to the Court after a full opportunity to review the evidence and hear from the parties that there is no basis for any adverse finding against LLF on the issue of third-party funding and hence no grounds for concluding that the firm would not "be able to faithfully administer the Agreement." ECF No. 9890, at 2.

The Locks Law Firm urges this Court to grant the Motion for Reconsideration on the terms described above.

Dated: May 1, 2018                     Respectfully submitted,

/s/ Gene Locks
Gene Locks, Esq.
LOCKS LAW FIRM
The Curtis Center
Suite 720 East
601 Walnut Street
Philadelphia, PA 19106
Phone: 215-893-3423
Fax: (215) 893-3444
glocks@lockslaw.com
dlangfitt@lockslaw.com

Tobias Barrington Wolff
Professor of Law,
 University of Pennsylvania Law School*
3501 Sansom Street
Philadelphia, PA 19104
Phone: 215-898-7471
twolff@law.upenn.edu

 *For identification purposes only

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of May, 2018, I caused the foregoing Motion for Reconsideration, to be served via the Electronic Case Filing (ECF) system in the United States District Court for the Eastern District of Pennsylvania, on all parties registered for CM/ECF in the above-captioned matter.

/s/ Gene Locks
Gene Locks, Esq.