# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF PENNSYLVANIA

| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | NO. 2:18-md-02323-AB<br><br>MDL NO.2323 |
|---|---|
| Kevin Turner and Shawn Wooden, on behalf Of themselves and others similarly situated,<br><br>Plaintiffs,<br>V<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br>Defendants | No. 2:12-md-02323-AB<br><br>MDL NO. 2323 |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Hon. Anita B. Brody |

## DECLARATION OF GENE LOCKS IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE DENIAL OF THE LOCKS LAW FIRM'S MOTION FOR APPOINTMENT OF ADMINISTRATIVE CLASS COUNSEL

GENE LOCKS declares pursuant to Section 28 U.S.C., Section 1748, based upon

personal knowledge, information and belief, the following:

1. As Class Counsel I am familiar with the Amended Class Action Settlement

   Agreement ("Settlement Agreement") in this case, including Section 30.1, titled

   "No Assignment of Claims".

1

2. On or about December 8, 2017 I learned that Judge Brody had issued an Explanation and Order on that date, ruling that Section 30.1 of the Settlement Agreement prohibited the assignment of settlement benefits and invalidating all agreements reached by members of the class with funding companies.

3. Prior to December 8, 2017 Explanation and Order neither I nor anyone in my Firm knew or believed that the Settlement Agreement prohibited transaction with funding companies.

4. No client of the Locks Law Firm has accepted an advance from any Funding Company, including Esquire Bank, since September, 2017.

5. Throughout the last ten years, I have been generally aware of numerous other mass tort settlement agreements that contain similar clauses that broadly prohibit assignments.

6. I am not aware of any other settlement in which a similar clause has been held to prohibit transactions with funding companies.

7. At some time shortly after July 19, 2016, I learned that Mr. Seeger had mailed a letter to all members of the class. In that letter, among other things, he warned class members about accepting high interest loans from "predatory lenders." Mr. Seeger stated "if you are able to resist borrowing against any payments you might be eligible for under the settlement, you should." He did not refer to assignments, nor did he state that such loans are prohibited by the Settlement Agreement. This letter gave me and the other members of my firm reason to believe that such transactions

2

were not prohibited by the Settlement Agreement. *See* letter from C. Seeger dated July 19, 2016, attached hereto as Exhibit 1.

8. I am aware that Mr. Seeger requested that a program be developed for Esquire Bank to advance money to members of the Class in this litigation, that Mr. Seeger and his partner played a role in developing that program, and that Mr. Seeger was a member of the Board of Directors of Esquire Financial Holdings, Inc. until he resigned that position in May, 2016.

9. I am also aware that contracts for advances on monetary awards from Esquire Bank include language requiring players to execute an "assignment of rights" to Esquire for their awards under the settlement. On their face, monetary advances from Esquire Bank and monetary advances from other lenders appear equally incompatible with the Court's December, 2017 interpretation of Section 30.1 of the settlement. The fact that Co-Lead Counsel Seeger was involved in facilitating advances on monetary awards to former players that include "assignment of rights" to Esquire Bank makes clear that, at the very least, the Locks Law Firm had no reason to believe prior to the Court's December, 2017 Order that advances on monetary awards that included "assignment of rights" language were prohibited by the Settlement. *See* Craig Mitnick letter of April 16, 2018 to the Honorable Anita Brody and attachments thereto, attached at Exhibit 2. *See* also Reply Declaration of Christopher S. Seeger (ECF doc. 9113-1.

10. I and my partners have been in regular contact with many members of the Plaintiffs' Executive Committee (PEC) and Plaintiffs' Steering Committee (PSC) throughout the course of this litigation. At no time prior to September, 2017 did

3

anyone mention to any of us the possibility that transactions with funding companies were prohibited by the Settlement Agreement.

11. In his Opposition to the Locks Law Firm's Motion for Appointment of Administrative Class Counsel and his accompanying declaration, to which we were not permitted a reply, Mr. Seeger made a number of allegations against our Firm and me personally which were misleading and devoid of merit. Since they were not referenced in this Court's Order denying the motion, I will not specifically address them at this time. I would welcome the opportunity to do so.

12. Neither I nor anyone in my Firm anticipated that the issue regarding funding companies would be raised in Opposition to the Locks Law Firms' Motion for Appointment as Administrative Counsel.

13. The Locks Law Firm made a timely request for an opportunity to file a reply to any opposition to its motion. That request was denied. As a result, the Firm has had no opportunity to be heard on the issue of monetary advances from third-party funders in conjunction with the Motion for Appointment of an Administrative Class Counsel.

I declare under penalty of perjury that the foregoing is true and corrected.

Executed May 1, 2018.

LOCKS LAW FIRM

BY: _____

GENE LOCKS, ESQUIRE
Atty. I.D. #12969
Locks Law Firm
601 Walnut Street, Ste 720 East
Philadelphia, Pa. 19106
215-893-3434

4

# Exhibit 1



# SEEGERWEISSLLP

77 Water Street, New York, NY 10005 · P 212.584.0700 · F 212.584.0799 · www.seegerweiss.com

July 19, 2016

Re: NFL Concussion Settlement Update

I am writing to you as Co-Lead Class Counsel for the NFL Concussion Litigation Settlement with three important points:

- I want to update you on the status of the Settlement.
- I want to advise you that if you, or a Retired NFL Football Player close to you, might be suffering from one of the degenerative conditions for which a monetary award is available, you should seek immediate consultation with a qualified medical professional.
- I want to make you aware that certain persons might be seeking to take advantage of you and other class members.

## UPDATE ON THE SETTLEMENT

As you are likely aware, in April 2015, Judge Anita Brody entered a Final Order approving the Settlement. However, certain Settlement Class Members who objected to the Settlement appealed that ruling. In April 2016, the Third Circuit affirmed Judge Brody's Final Order and approved the Settlement in full (see the order at www.NFLConcussionSettlement.com). Shortly after the Third Circuit's opinion, some of the objecting Settlement Class Members filed a request asking the Third Circuit to reconsider its decision, which was denied. However, those objectors may still petition the United States Supreme Court to review the Third Circuit's decision. The Supreme Court has discretion to accept or decline any such petition. While none of them have done so yet, they have until 90 days after the request for rehearing by the Third Circuit was denied to do so. The Settlement will not become effective until after all possible appeals are resolved in favor of the Settlement or the time to seek further review has run out.

The appeals by objecting Settlement Class Members have delayed implementation of the Settlement, including the opportunity for all Settlement Class Members to register for the Settlement and apply for monetary awards, and Retired NFL Football Players to participate in the Baseline Assessment Program. However, now that the Settlement has been affirmed by the

New York                    Newark                    Philadelphia

0007406

NFL Concussion Settlement Update
Page 2

Court of Appeals and that court has also declined the request for rehearing, we are hopeful that those who previously objected to the Settlement will take no additional action to further delay the Settlement benefits.

## YOU CAN SEEK DIAGNOSES FOR MEDICAL CONDITIONS NOW

Assuming the objectors do not seek review by the Supreme Court, the only question that remains is *when* the Settlement will open for registration and start providing benefits to the Settlement Class, not *if* it will. Accordingly, if you believe that you, or a Retired NFL Football Player close to you, might be suffering from one of the degenerative conditions for which a monetary award is available, consultation with a qualified medical professional should be sought immediately. Persons who are qualified under the Settlement to make such a diagnosis at this time (and until the Settlement becomes effective) are board-certified neurologists, board-certified neurosurgeons, and other board-certified neuro-specialist physicians. As a reminder, the qualifying diagnoses from these medical specialists for which monetary claims can be made are: ALS, Parkinson's Disease, Alzheimer's Disease, Level 2 Neurocognitive Impairment (i.e., moderate Dementia), Level 1.5 Neurocognitive Impairment (i.e., early Dementia).

As of the date of this letter, over 9,100 persons, including Retired NFL Football Players and their family members, have "signed up" to receive more information about when registration for the Settlement will open. If you have not already done so, I urge you to contact the Claims Administrator and provide your contact information. You can do so at the official Settlement website, www.NFLConcussionSettlement.com, at the link "Sign Up for Future Information," by emailing ClaimsAdministrator@NFLConcussionSettlement.com, or by calling (855) 887-3485. Also, you can use each of these sources to receive more information about the Settlement, including updates as to the status of the appeals and when registration begins.

## BE CAUTIOUS IF SOMEONE APPROACHES YOU ABOUT THE SETTLEMENT

Some of you may be approached by persons who see an opportunity to enrich themselves with your valuable Settlement benefits. There are persons and organizations that offer loans secured by future settlement payments. These loans typically carry excessive interest rates, sometimes over 3% a month, which allow even small "advances" to quickly snowball into substantial debt. These practices are sometimes referred to as predatory lending. We are very concerned that some of you may be the victim of these predatory lending practices. Though the promise of cash-in-hand can be tempting, especially during difficult financial times, if you are able to resist borrowing against any payments you might be eligible for under the Settlement, you should. We are hopeful that the Settlement will be open for registration before the end of the year and that claims for monetary awards for Qualifying Diagnoses can begin shortly thereafter.

NFL Concussion Settlement Update
Page 3

You might also be approached by lawyers who are promising to represent you on what appear to be very favorable terms. If you are already represented by legal counsel, a decision to change counsel should be made carefully. Please consider commitments made by your current lawyers for you and your case, the efforts undertaken in representing you, and the work they might have done in bringing your claims this far. Moreover, you might also have obligations to your current lawyer. Depending on your state of residence and the terms of any retainer agreement with your lawyer, you may be responsible for costs and time that were expended by your lawyer on your behalf before you terminated or changed counsel. If you are not already represented by legal counsel, be assured that you do not require legal counsel to register for and receive benefits under the Settlement, and you should consider carefully the qualifications of the person now offering to represent you.

It is a great honor to continue to represent you as Co-Lead Class Counsel.

Very Truly,

Christopher A. Seeger
Co-Lead Class Counsel

# Exhibit 2



**MITNICK LAW OFFICE**
A LITIGATION AND CLAIM RESOLUTION FIRM

1-877-MITNICK
www.MitnickLawOffice.com

**New Jersey Office**
35 Kings Highway East
Haddonfield, NJ 08033
P. 856.427.9000
F. 856.429.2438

Reply to New Jersey Office

**Philadelphia Office**
123 South Broad Street Suite 2500
Philadelphia, PA 19109
P. 215.769.9000
F. 856.429.2438

April 16, 2018

The Honorable Anita Brody
US DISTRICT COURT - EASTERN DISTRICT OF PA
James A. Byrne US Courthouse
601 Market St., Room 7613
Philadelphia, PA 19106-1717

    RE:   NFL Concussion Settlement
           No. 2:12-md-02323-AB  /  MDL No. 2323

Dear Judge Brody:

On Friday, April 13, 2018 I received electronic service of "Mr. Seeger's "Opposition to the Motion of Locks Law Firm for appointment of Administrative Counsel". After reviewing the filing, I felt obligated let alone compelled to respond to the allegations that Mr. Seeger crafted against my Firm, Mitnick Law Office, as well as against me personally.

In his filing, Mr. Seeger specifically attacked my integrity through an allegation whereby he asserts that I solicited players on behalf of Thrivest funding group, one of the funding companies involved in an ongoing matter with the Court. In his response to the Lock's motion, Mr. Seeger attached an email from my office contending to be a solicitation by me on behalf of the funding group. The substance of the email sent by me to my clients addressed the status of the litigation at the time and then provided information for those players or families who were considering funding. Prior to the funding information being provided, the email clearly stated "I do not recommend traditional funding companies who charge exorbitant rates". Again, the email was sent to my clients for informational purposes only and was in no way intended as a solicitation on behalf of any perspective funding Company.

What is equally as bothersome is the fact that while Mr. Seeger attempts to construct the inaccurate inference that I had a personal or professional relationship with Thrivest, he intentionally fails to mention in his filing that he personally solicited me in August of 2016 to assist Esquire Bank, another funding entity for which he held a seat on the board of directors. I was asked by Mr. Seeger to "meet with and assist Esquire in developing a funding program for Retired Players". Mr. Seeger never disclosed to me that he was either an active member of Esquire's Board of Directors or that he had recently resigned from that position, while possibly still holding an interest in the Company. Either way, the fact was extremely disturbing to me when I eventually found out about the conflict due to the fact that I had met with two of

**A LITIGATION AND CLAIM RESOLUTION FIRM**

The Honorable Anita Brody
RE:    NFL Concussion Litigation
April 16, 2018
Page 2

Esquire's executives in my office for a substantial period of time and had assisted
them with developing a funding formula for their proposed Concussion funding
program. I also assisted Esquire at Mr. Seeger's suggestion while never being advised
that any eventual funding Agreement would contain an "Assignment" clause. I have
attached the relevant correspondence with Mr. Seeger and Esquire, as well as the
Esquire funding agreement which includes the assignment language. In any event,
why Mr. Seeger felt that it was necessary to include irrelevant, partial and inaccurate
information in his response to the Lock's motion can only be construed as malignant
on his part.

       I must also note that contrary to Mr. Seeger's misguided assertions of
solicitation by me on behalf of Thrivest, only 2 of the 1100 retired players who I
represent obtained funding from Thrivest. That fact speaks volumes to the inaccuracy
of Mr. Seeger's suggestions of solicitation. In any event, again, I have no idea what any
of this has to do with the opposition to Locks Law Firm's request to become
Administrative Counsel, or my Firm's joinder to that motion.

       There is no legitimate reason why Mr. Seeger needs to practice in an unfair and
bias manner, or attempt to discredit other attorneys involved in this litigation. The
merits of the Settlement, the protection of the Players, fundamental fairness to all of
the attorneys involved in the matter should always be primary. If Mr. Seeger could
simply reflect on the dictates of common courtesy, the practice of law in this matter
would be far less contentious and the administration of justice for the Retired Players
better served.

       Hopefully, Mr. Seeger will consider these words before he chastises another
attorney, especially one who has always put their clients first and one who has
constantly promoted the Settlement for which Mr. Seeger negotiated.

       I thank your Honor for her time and consideration.

                                                    Respectfully,

CRM/sjg                                             CRAIG R. MITNICK

**Monday, April 16, 2018 at 10:07:41 AM Eastern Daylight Time**

**Subject:** RE: Intro

**Date:** Monday, August 1, 2016 at 10:22:40 AM Eastern Daylight Time

**From:** Ari Kornhaber

**To:** 'Craig Mitnick'

Craig:

I apologize for the multiple messages/emails, but I'm reaching out to you again at the suggestion of Chris Seeger. Have you been getting my messages or are you away, etc? Anyway, please let me know if we can schedule a few minutes to talk. I would greatly appreciate it.

-----Original Message-----
From: Craig Mitnick [mailto:craig@craigmitnick.com]
Sent: Friday, February 13, 2015 12:49 PM
To: Ari Kornhaber
Cc: Chris Seeger; craig mitnick
Subject: Re: Intro

Ari is a pleasure to meet you. At least informal leave this way. And I have a feeling we'll get to meet each other personally real soon. Chris thank you very much for the introduction. Sorry I am running around today because I have an event at my home tonight for 35 kids that are on my son's crew team so I am available sporadically. Whenever you have a chance please call me on my cell phone at 609-868-2800 and if you receive my voicemail, know that I will call you right back. I have my phone with me and will throughout the rest of the day. I look forward to hearing from you. And again, Chris thank you much for the introduction

Sent from my iPhone

On Feb 13, 2015, at 9:52 AM, Ari Kornhaber <Ari.Kornhaber@esqbank.com> wrote:
Thank you Chris. Craig, I look forward to speaking with you. I'm am available today other than from 12:30-1:30.

Sent from my BlackBerry 10 smartphone on the Verizon Wireless 4G LTE network.

Original Message
From: Chris Seeger
Sent: Friday, February 13, 2015 6:49 AM
To: craig mitnick
Cc: Ari Kornhaber
Subject: Intro

Craig, I want to introduce you to a very close friend, Ari Kornhaber, who I think can help you out with all kinds of banking needs and who works for a bank with a special relationship to the plaintiffs' bar. I'd like to get you both on the phone for 2 mins. Any time work today?

Sent from my iPhone

Please consider the environment before printing this email.

Confidentiality Notice: The information contained in this e-mail and any attachments are privileged, confidential and protected from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or duplication of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately and delete it from any drives or storage media and destroy any printouts of the e-mail and attachment.

Please Note: Emails sent to this address may be read by a designated Esquire Bank employee.

**Monday, April 16, 2018 at 10:10:33 AM Eastern Daylight Time**

**Subject:** Fw: Allan ▆▆

**Date:** Friday, September 16, 2016 at 6:42:15 PM Eastern Daylight Time

**From:** Ayal Glezer

**To:** Craig Mitnick

**CC:** Ari Kornhaber, Ave Doyle

Craig,

I ran the calc by Seeger and Buchanan today.  David had a couple of suggestions that I will run by you.

Also, see below regarding ▆▆▆.  Did you discuss the new foe players with altzheimer and dementia to get a power of attorney? I believe they are required under the settlement agreement to sign the release with a power of attorney, so will be needed anyhow.

**From:** Ave Doyle <Ave.Doyle@esqbank.com>
**Sent:** Friday, September 16, 2016 2:44 PM
**To:** Ari Kornhaber; Ayal Glezer
**Subject:** Allan Clark

Hi

I spoke with Mr ▆▆ and explained we are finishing up the paperwork .  He understands

I did ask for him to confirm his ailment and he did state Parkinson's and Alzheimers. I asked if he had set up any power of attorneys or representatives and he has not .

Lets discuss our next steps.

Ave

**Ave Doyle |** *SVP & Retail Director*
233 Broadway, Ste 820 | New York, NY 10279
Direct: 212.286.3030 | Cell: 718.986.8561 | Fax: 212.286.9052

esquirebank.com

**Please consider the environment before printing this email.**

*Confidentiality Notice: The information contained in this e-mail and any attachments are privileged, confidential and protected from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or duplication of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately and delete it from any drives or storage media and destroy any printouts of the e-mail and attachment.* **Please Note: Emails sent to this address may be read by a designated Esquire Bank employee.**

**Monday, April 16, 2018 at 10:22:43 AM Eastern Daylight Time**

**Subject:** NFL Calc Sheet v 11.xlsx

**Date:** Monday, September 19, 2016 at 2:23:34 PM Eastern Daylight Time

**From:** Ayal Glezer

**To:** Craig Mitnick

**CC:** David Buchanan

**Attachments:** NFL Calc Sheet v 11.xlsx

Hi Craig,

I made the changes we discussed earlier and incorporated David Buchanan's suggestions as well to the attached calc sheet.

David – I could not find the pay grid by year other than the one with range of years that we looked at on Friday.

Thank you both for assisting the bank in putting together this loan program.

AG

**\*\*Please note the new address below\*\***

**Ayal Glezer** | *Chief Lending Officer*
233 Broadway, Ste 820 | New York, NY 10279
Direct: 212.286.3030 | Cell: 212.671.0712 | Fax: 212.286.9052

esquirebank.com

ATTENTION CUSTOMERS: For your protection, please remember to mask sensitive data, such as account numbers and tax identification numbers on all emails (e.g. for SS# XXX-XX-1234, for TIN XX-XXX1234, for acc. # XXXXXX1234)

**Please consider the environment before printing this email.**
*Confidentiality Notice: The information contained in this e-mail and any attachments are privileged, confidential and protected from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or duplication of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately and delete it from any drives or storage media and destroy any printouts of the e-mail and attachment.*
**Please Note: Emails sent to this address may be read by a designated Esquire Bank employee.**

 **ESQUIRE° BANK**

100 Jericho Quadrangle, Suite 100
Jericho, NY 11753
800.996.0213



Loan Number          1150001160
Date          July 11, 2017

Dear ▊▊▊▊▊▊

Thank you again for choosing Esquire Bank for your financing needs. Your application has been approved and we will now start the process to close your loan. Included in this loan package are the following:

- Post Settlement Loan Note & Security Agreement
  - To be signed and notarized by yourself and your Power of Attorney agent
- Term Page
- Itemization
  ∘ Including Lenders / Liens / Judgments to be paid
- Wire Instruction Form
  ∘ Please verify the wire instructions for your account with your bankers
- Spousal / Family Consent
- Survey
- Privacy Notice

Please review all pages for accuracy and initial each page at the lower right hand corner. Once completed, the original loan package is to be returned to:

> Esquire Bank
> 100 Jericho Quadrangle, Suite 100
> Jericho, NY 11752
> Attention: Consumer Lending

Once the original package is returned to our offices, we will then complete the closing process and notify you once your loan is to be funded. Should you have any questions regarding this matter, or any of the information contained herein, please feel free to contact Esquire Bank directly at 212.286.3030 or via facsimile at 212.286.9052.

Sincerely,

Esquire Bank
Consumer Lending

 **ESQUIRE° BANK**

(800) 996-0213
www.esquirebank.com

100 Jericho Quadrangle, Suite 100
Jericho, NY 11753

## *Post Settlement Loan Note & Security Agreement*

| Loan Number | 1150001160 | | Date | July 11, 2017 |
| Borrower | | | | |

## *TRUTH IN LENDING DISCLOSURE*

| ANNUAL PERCENTAGE RATE The cost of my credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost me. | AMOUNT FINANCED The amount of credit provided to me on my behalf. | TOTAL OF PAYMENTS The amount I will have paid after I have made all scheduled payments. |
|---|---|---|---|
| 9.00% | $6,957.90 | $77,310.00 | $84,267.90 |

My payment schedule will be: (It means an estimate)

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE |
|---|---|---|
| 1 | $84,267.90 | July 11, 2018 |

**Security:** I am giving a security interest in the proceeds from the Litigation matter identified on the next page under the heading "Security for Loan."

**Late Charge:** If a payment is late, I will be charged 5% of the payment, but not more than $5.00 for each payment.

**Prepayment:** I will not have to pay a premium if I pay off my loan at any time prior to or at maturity.

**Additional Information:** See the rest of this document for additional information about nonpayment, default, any required repayment in full before the maturity date and prepayment.

**Itemization of the Amount Financed:** See below for Itemization of the Amount Financed.

In this note, the words "I," "me," "mine" and "my" or "undersigned" mean the Borrower. The word "Bank" means ESQUIRE BANK.

**REPAYING MY LOAN:** To repay my loan, I promise to pay to the order of the Bank the sum of: $77,310.00

**Seventy Seven Thousand Three Hundred Ten Dollars**

plus interest at the rate of: 9.00% per year.

Borrower
Address          
City/State/Zip Code
Telephone

Interest will be charged beginning on the day of this note and continuing until the full amount of the term loan has been paid. I will pay the term loan on the earlier of (a) the day I receive the proceeds from the Litigation, or (b) the date that is twelve (12) months from the date of this Agreement. Each payment accepted by the Bank will be applied first on account on accrued interest and then on account of reduction in principal.

**ASSIGNMENT OF LITIGATION PROCEEDS AND OTHER PROPERTY:** As collateral security for my loan, I assign to the Bank my entire right, title and interest to all funds that I am entitled to receive under, in connection with or as a result of the Litigation (as described on the next page).

This assignment shall be a continuing one and shall be effective for any renewal of the above loan and/or deposit account, until the loan balance is entirely paid.

**WITHDRAWAL BY BANK:** The Bank is hereby authorized to withdraw any amounts on deposit in any account at the Bank, including accrued interest, if the undersigned defaults in any of the undersigned's debts to the Bank.

**APPLICATION OF FUNDS:** The Bank may apply the amounts withdrawn to any and all of my debts, including interest, collection costs and attorney's fees, if any. I understand the Bank will pay any remaining amounts to me, if my debts to the Bank are less than the amount in the Account. I will continue to be liable to the Bank if the amount in the Account is less than the amount of my debts to the Bank.

This assignment shall be a continuing one and shall be effective for any renewal of the above loan and/or deposit account, until the loan balance is paid in full.

**SIGNATURES AND ACKNOWLEDGEMENT OF RECEIPT:** I have received and read a copy of this document and understand and agree to its provisions including those on the following pages.



Borrower's Signature



Agent

Client Initial

Bank Initial _____

**IMPORTANT – CONSUMER IS BOUND BY THE TERMS OF ALL PAGES**

# ⚖ ESQUIRE® BANK

(800) 996-0213
www.esquirebank.com

100 Jericho Quadrangle, Suite 100
Jericho, NY 11753

Loan Number
Borrower
Note Date      July 11, 2017

State of                              )
                                     ) ss.:
County of                            )

On the 20th day of ___July___ in the year 2017 before me, the undersigned, a Notary Public in and for said State, personally appeared                Darrell Bruce Irvin          , personally known to me to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individal or the person upon behalf of which the individul acted, exected the instrument.

Notary Public
(Notarial Seal)

My Commission expires: 01/04/2018

My Appointment Expires
JANUARY 04, 2018

State of                              )
                                     ) ss.:
County of                            )

On the 20th day of ___July___ in the year 2017 before me, the undersigned, personally appeared          Sandra Lynn Irvin          personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity as Attorney in Fact for                Darrell Bruce Irvin          , by virtue of a power of attorney executed the 20th day of ___July___, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public
(Notarial Seal)

My Commission expires: 01/04/2018 .

NOTARY PUBLIC
STATE OF WASHINGTON

My Appointment Expires
JANUARY 04, 2018

1150001160

# 𝔸𝔸 Esquire' Bank



### READ CAREFULLY – BORROWER IS BOUND BY THE TERMS OF ALL PAGES

**PLACE OF PAYMENT:** I will make payments to the Bank at 320 Old Country Road, Ste 101, Garden City, NY 11530, or at any of the Bank's branches, or by mail to the address shown in the billing statement.

**PREPAYING MY LOAN:** I have the right to prepay the entire unpaid portion of the loan at any time. If I do pay off my loan within the first 60 days I will pay the Bank interest on the unpaid portion of the loan up to the day I repay, plus a prepayment premium equal to:       0.00%       of the amount prepaid.

**LATE CHARGES:** If I do not make any monthly payment within 10 days after it is due, I will pay a late charge of 5% (5 cents for every $1.00) of the past due amount, but no more than $5.00 per payment.

**SECURITY FOR LOAN:** To protect the Bank if I default on my loan, I pledge and hereby grant to the Bank a security interest and lien on all of my right, title and interest in and to any and all amounts to be paid, whether by settlement, judgment or otherwise, in connection with or as a result of the following lawsuit in which I am the plaintiff(s) (the "Litigation"):

**Title of Action:**              _____vs the National Football League Player's Concussion Litigation



NFL Registration_____

The Bank can apply any of this property against what I owe. I will take any and all actions required to perfect the Bank's security interest in the property securing this loan. I will promptly execute and deliver all further instruments and documents, and take all further action that may be necessary or desirable or that Bank may request, including but not limited to sending notices to third parties that any payments in connection with the Litigation be directed to the Bank, in order to perfect and protect any security interest granted under this Note and Security Agreement or to enable the Bank to exercise and enforce its rights and remedies under this Note and Security Agreement with respect to any of the property securing this loan. The Bank may file any and all documents, including but not limited to a Uniform Commercial Code financing statement, to evidence and perfect its security interest and lien in the proceeds of the Litigation and my other property.

**REPRESENTATIONS:** I represent that:

The Litigation has been fully and unconditionally settled, and is not subject to appeal, revocation or change.

The net amount due me in connection with the Litigation, after payment of all attorneys fees, disbursements, structured settlement and other charges is:       **$656,000.00** (the "Net Amount").

No person or party has any right of set off or security interest or other claim of any kind against the Net Amount other than the Bank.

**DEFAULT:** I will be in default and the Bank can require that I immediately pay the unpaid portion of the loan plus interest without notice or demand to me if:

   I do not make any payment on time; or

   I make any false or misleading statement on the application for this loan; or

   I become insolvent or go bankrupt; or

   The Bank is served with legal papers concerning money which I owe to others as debts or taxes; or

   I die; or

   I break any agreement or promise I have made in this note or any other agreement with the Bank; or

   Anything happens which the Bank believes endangers the property given as security or anyone else makes a claim of any kind against the property; or

   Anything happens which the Bank believes reduces my ability to repay this loan.

Client Initial

Page 4 of 13

If the Bank requires full payment because of the occurrence of a default, I hereby waive presentment, demand for payment and notice of dishonor.

**ENFORCEMENT OF NOTE**: The Bank can delay enforcing or waive any of its rights under this note without losing them. The Bank can only waive its rights under this note in writing signed by the Bank. If the Bank fails to exercise any of its rights on one or more occasions, it may still exercise them on any other occasion. The Bank can also accept late payments or partial payments even though marked "Paid in Full" or otherwise without losing any rights under this note.

**COLLECTION COSTS AND LAWSUITS**: If the Bank uses an attorney to collect this loan, I agree to pay the Bank expenses of collection, reasonable attorney's fees and court costs. I also agree that I will not be entitled to a jury trial in any lawsuit between the Bank and me involving this loan, and that if the Bank sues me I will not assert in that same lawsuit any claim I may have against the Bank.

**BLANK SPACES AND CORRECTIONS**: The Bank can fill in any blank spaces in this note, date when the Bank makes the loan and correct errors without notifying me.

**LAW THAT APPLIES**: This loan was made in the State of New York and shall be governed by New York State law.

**SUBMISSION TO JURISDICTION**. I hereby irrevocably submit to the jurisdiction of the United States District Court in the Eastern District of Pennsylvania, or, only if there is no federal subject matter jurisdiction, in any state court in the County of Nassau in the State of New York over any action or proceeding arising out of or related to this Post Settlement Loan Note & Security Agreement, and agree with Bank that personal jurisdiction rests with such courts for purposes of any action on or related to this Post Settlement Loan Note & Security Agreement. I hereby waive personal service by manual delivery and agree that service of process may be made by prepaid certified mail directed to me at the address for notices under this Post Settlement Loan Note & Security Agreement, or at such other address as may be designated in writing by me to the Bank, and that upon mailing of such process such service will be effective as if I was personally served. I agree that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any manner provided by law. I further waive any objection to venue in any such action or proceeding on the basis of inconvenient forum. I agree that any action on or proceeding brought against Bank shall only be brought in such courts.

**NOTICE OF FURNISHING OF NEGATIVE INFORMATION**: We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

Client
Initial

1150001160

# ⚖ Esquire® Bank

(800) 996-0213
www.esquirebank.com

100 Jericho Quadrangle, Suite 100
Jericho, NY 11753

## ITEMIZATION OF AMOUNT FINANCED

**Loan #**
**Borrower Name**



| | |
|---|---|
| Loan Amount | $77,310.00 |
| | |
| **Prepaid Finance Charges** | |
| Application fee | $0.00 |
| Other | $0.00 |
| | |
| **Amount Financed** | $77,310.00 |
| | |
| Amount deposited to your Esquire account | $0.00 |
| | |
| Amount paid to others on your behalf | |
| - | $0.00 |
| - | $0.00 |
| - | $0.00 |
| - | $0.00 |
| - | $0.00 |
| - | $0.00 |
| | |
| Balance of proceeds given to you directly | $77,310.00 |

**Client Initial**

1150001160

# 🜂 ESQUIRE° BANK

(800) 996-0213
www.esquirebank.com

100 Jericho Quadrangle, Suite 100
Jericho, NY 11753

**NOTICE OF LIEN**

TO:

Craig Mitnick Law Office
35 Kings Highway East
Haddonfield, NJ 08033
(215) 769-9000

You are hereby notified that on 07/11/17 ▓▓▓▓▓▓▓▓ whose address is ▓▓▓▓▓▓▓▓▓▓
("Assignor"), in conjunction with that certain litigation settlement entered into in the matter of:

▓▓▓▓▓▓▓ vs the National Football League Player's Concussion Litigation

NFL Registration ▓▓▓▓▓▓

Claimant granted to Esquire Bank a security interest in and lien on all of the claimant's right, title and interest in and lien on all of all funds Claimant is to entitled to receive under, in connection with or as a result of the above litigation matter (" Proceeds") as collateral for claimant's loan from Esquire Bank ("Lender"). Pursuant to Claimant's Post Settlement Loan Note & Security Agreement to Lender, Claimant is obligated to repay the loan in full upon receipt of Proceeds and hereby directs you to make payment of Proceeds directly to Lender. As such, you are hereby instructed that prior to any Proceeds being released to Claimant, you must issue payment to Esquire Bank by electronic transfer, certified funds or a check from your attorney trust account made payable to Esquire Bank in the amount of the Proceeds and to deliver such payment to the address set forth below for Esquire Bank. You are further instructed and acknowledge that any distribution made to Claimant or any third party of Claimant prior to satisfying Esquire Bank's Lender's lien as set forth above shall act as a violation of this Notice of Lien and shall result in you being held legally liable for damages and attorney fees, in addition to any losses suffered by Esquire Bank Lender hereunder.

Payment of the Proceeds must be delivered as follows:

Esquire Bank
320 Old Country Road
Garden City, New York 11530
Attn:       Lending Department
Tax I.D. No.       34-2065079

Claimant:

By:                    7/19/17
                       Date

Address:
Address:

                       Date

Lender:       Esquire Bank
              100 Jericho Quadrangle, Suite 100
              Jericho, NY 11753

By:                    Date

Client Initial

Loan #       1350001160

# 🔱🔱 ESQUIRE° BANK

(800) 996-0213
www.esquirebank.com

100 Jericho Quadrangle, Suite 100
Jericho, NY 11753

**ATTORNEY ACKNOWLEDGEMENT**

Borrower: 

The undersigned is the attorney of record in the below captioned case.

I acknowledge the existence of Esquire Bank's loan to Borrower (if funded) and that such loan is based on the settlement proceeds and information set forth below, and further acknowledge notice of the fact that Borrower has granted Esquire Bank a Security Interest and Lien in the proceeds of the below captioned case as a consequence of Borrower's Loan Note & Security Agreement with Esquire Bank.

I acknowledge that pursuant to the Loan Note & Security Agreement, Borrower has directed that a portion of his or her proceeds be paid to Esquire Bank to satisfy a loan. I further acknowledge that I will honor the terms of the Loan Note & Security Agreement.

In addition, I know of no other lien in this case as a result of funding similar in nature to Esquire Bank with priority over Esquire Bank's lien that will remain after funding of the Esquire Bank loan to Borrower, except as noted in the itemization of Amount Financed, and I acknowledge that Borrower's Loan Note & Security Agreement prohibits the Borrower from creating any other liens resulting from funding similar in nature to Esquire Bank.

Prior to making any distribution to Borrower, I will contact Esquire Bank to ascertain the amount due Esquire Bank and will not pay any portion of Borrower's settlement proceeds to Borrower or on Borrower's behalf (other than attorney's fees and disbursements for this case and any prior liens) until Esquire Bank's lien is satisfied in full, unless Esquire Bank has received all amounts it is due (as determined by Esquire Bank) directly from the NFL Concussion Settlement Administrator, in which case this firm's obligation to make payment to Esquire Bank hereunder shall be extinguished.

Unless payment of all amounts due Esquire Bank (as determined by Esquire Bank) is made to Esquire Bank, I understand that marking a check or accompanying letter to the effect of a release of claim or "in full satisfaction", will not have a legal effect and that Esquire Bank is authorized to deposit said check without prejudice to its rights to collect payment in full.

The undersigned represents that this case has settled but I have not yet received the settlement proceeds into my escrow account:

 vs the National Football League Player's Concussion Litigation

I further acknowledge that the following information provided by my firm to Esquire Bank is true and accurate to the best of my knowledge:

| Gross Award | | $888,000 |
|---|---|---|
| Attorney Fees | -10.0% | (88,800) |
| MDL Assessment | 0.0% | 0 |
| Advances Costs & Expenses | -1.1% | (10,000) |
| Medical Expenses | -15.0% | (133,200) |
| Worker Comps Liens / Other Liens | 0.0% | 0 |
| Structured Settlement | 0.0% | 0 |
| Advanced to Client to Date | 0.0% | 0 |
| **NET PROCEEDS TO BORROWER** | | **656,000** |
| ED Existing Loan | | 0 |
| EB Existing Loan | | 0 |
| EB Existing Loan | | 0 |
| Proposed Loan | | 77,310 |
| **Total Loans To Esquire** | | **77,310** |

---

**Attorney Signature**                                    **Date**

Print Name: _____



1150001160



# ⚖ Esquire°Bank

(800) 996-0213
www.esquirebank.com

100 Jericho Quadrangle Suite 100
Jericho , NY 11753

Borrower ▬▬▬▬▬▬▬▬

Loan Number ▬▬▬▬▬▬

Borrower Address ▬▬▬▬▬▬

Date        July 11, 2017

## Loan Closing Instructions

Assuming your loan is approved by Esquire Bank, please indicate below how you would prefer to receive your loan proceeds. Following the completion of all underwriting, approval and closing requirements, the funds will be forwarded as described below. Any changes to your selection must be communicated to Esquire Bank no later than the third day prior to funding. Please note the bank account must be in your name.

Please fund my loan by (Please select one method):

1) ☐ Cashier Check

☐ Mail        ☐ Picked up by me in person at an Esquire Branch

If by Mail, please mail to my home address as stated above, or my new home address as follows:

Home Address        _____

_____

OR

2) ☑ Wire Transfer as follows:

**Account Holder Name(s)** ▬▬▬▬▬▬▬

**Name of Bank** ▬▬▬▬▬

**Branch Address** ▬▬▬▬▬

**Branch Phone #** ▬▬▬▬▬

**\*ABA Wire #** ▬▬▬▬▬

**\*Please confirm the #
with your Bank**

**Account #** ▬▬▬▬▬

**Account Type**    ☐ Checking    ☒ Savings

**Borrower's Signature** ▬▬▬▬▬

1150001160



# ⚖ ESQUIRE' BANK

Rev. 6/2016

| FACTS | WHAT DOES ESQUIRE BANK<br>DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share and protect your personal information. Please read this notice carefully to understand what we do. |
| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br><br>• Social Security Number and income<br>• Account balances and transaction history<br>• Credit history and credit scores<br><br>When you are *no longer* our customer, we continue to share your information as described in this notice. |
| How? | All financial companies need to share customers' personal information to run their everyday businesses. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Esquire Bank chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Esquire Bank share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes – such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| For our marketing purposes – to offer our products and services to you | Yes | No |
| For joint marketing with other financial companies | Yes | No |
| For our affiliates' everyday business purposes – information about your transactions and experiences | No | We don't share |
| For our affiliates' everyday business purposes – information about your creditworthiness | No | We don't share |
| For nonaffiliates to market to you | No | We don't share |

| Questions? | Call 800-996-0213 go to www.esquirebank.com |
|---|---|



## Page 2

| Who We Are | |
|---|---|
| Who is providing this notice? | Esquire Bank. |

| What We Do | |
|---|---|
| How does Esquire Bank protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. Our employees are trained on the importance of maintaining the confidentiality of customer information. |
| How does Esquire Bank collect my personal information? | We collect your personal information, for example, when you<br>• Open an account or deposit money<br>• Pay your bills or apply for a loan<br>• Use your credit or debit card<br>We also collect your personal information from others, such as credit bureaus, affiliates or other companies. |
| Why can't I limit all sharing? | Federal law gives you the right to limit only<br>• Sharing for affiliates' everyday business purposes –information about your creditworthiness<br>• Affiliates from using your information to market to you<br>• Sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. |

| Definitions | |
|---|---|
| Affiliates | Companies related by common ownership or control. They can be financial and non-financial companies.<br>• Esquire Bank does not share with our affiliates. |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and non-financial companies.<br>• Esquire Bank does not share with nonaffiliates so they can market to you. |
| Joint Marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>• Our joint marketing partners include insurance and financial service companies. |

COMP-005 rev 6/2016

