# EXHIBIT "1"



**CFS** **CREATIVE FINANCING SOLUTIONS, LLC.**
*Pre–Settlement Funding • Law Firm Financial Products*

July 18, 2017

Mr. Thomas V. Girardi
Girardi & Keese
1126 Wilshire Boulevard
Los Angeles, CA 90017

**RECEIVED**

**JUL 20 2017**

**GIRARDI & KEESE**

Mr. Michael McGlamry
Pope McGlamry
3391 Peachtree Road, Suite 300
Atlanta, GA 30326

Re: ████████████ vs. NFL (Concussion Settlement Case)

Dear Sirs:

It has come to my attention that ████████████ a former client of the law firm of Bennett & Heyman, P.A. in Baltimore, MD, is presently being represented by you in the settlement of the NFL concussion litigation case.

While Mr. Bennett was engaged with Bennett & Heyman, he took a cash advance against his potential recovery in this case. The contract was executed on June 6, 2014. In doing so, he agreed to have his attorney at the time place a lien against the recovery in favor of this firm. Additionally, Mr. Bennett agreed in writing to withhold on our behalf the amount owed at that time based on ████████████ obligation. In so doing your firm would remit a law firm trust account check directly to us to satisfy the lien.

I am writing to you to formally notify you of ████████████ arrangement with our firm. If you could kindly acknowledge your compliance with this directive by the client and his former attorney, it would be greatly appreciated.

If there are any questions regarding this please address them to me personally.

Regards,

John Friedson, President

Enclosures
cc: Mr. Roger Bennett, Esquire

15 W. Montgomery Ave., Suite 102 • Rockville, Maryland 20850
(301) 610-0600   Fax: (301) 610-0601

## COMBINED PRE-SETTLEMENT FACTORING AND SECURITY AGREEMENT

This Agreement entered into at Rockville, Maryland, this 06 day of June, 2014, between ███████████████ ███████████████ and Creative Financing Solutions, LLC. (hereinafter called "Factor"), a Maryland Limited Liability Company whose address is 6264 Montrose Road, Rockville, Maryland 20852. In consideration of the mutual covenants set forth herein Client and Factor agree as follows:

### I. DEFINITIONS

"Action" means the lawsuit filed by Client.

"Attorney" means Client's attorney(s) of record in the Action.

"Collateral" means all of the property, real or personal, tangible or intangible, given as security pursuant to Section 7.01 hereof for the obligations of client under this agreement. "Insolvent" means all of the property to any person or entity, that such person's or entity's liabilities exceed such person's or entity's assets and/or such person or entity is not generally paying his or its debts as they become due.

"Recovery" means Client's right to any monetary recovery, whether by settlement, arbitration award, judgment or otherwise, based on any claim(s) now pending or hereafter threatened or asserted in the Action, after deduction of Attorney's fees and expenses related to the Action pursuant to Client's fee agreement with Attorney.

### II. PURCHASE OF ACCOUNTS RECEIVABLE

2.01 Client hereby assigns Factor as absolute owner, and Factor hereby purchases and accepts from Client on the terms and conditions set forth and incorporated herein, without recourse to Client; except as hereinafter set forth, the first $2,500.00 of the Recovery. The purchase price for this assignment is $ PLUS FEE (see Addendum I attached), the receipt and sufficiency of which are hereby acknowledged by Client. If the Client does not receive any Recovery by settlement, arbitration award, judgment or otherwise, or if there is a Recovery but there is no money left after the deduction of attorney's fees, Client owes Factor nothing and will not have to pay any money. Factor's entitlement under this Agreement to money from Client is

1

entirely contingent on Client's successful Recovery, and Factor has no recourse against Client in the event of no Recovery.

2.02 Client agrees to provide Factor with a Notice of Assignment in a form satisfactory to Factor and which is signed by Client's Attorney.  Said Notice of Assignment will direct the Attorney to disburse to Factor, without offset of any kind, the full amount of the Recovery assigned to Factor hereunder.  It shall be Client's obligation to ensure that the Notice of Assignment form is duly executed by Attorney and returned to Factor prior to disbursement of any funds to Client by Factor.

2.03 Factor will assume the risk of any losses resulting from problems associated with collection of the assigned Recovery.  The Foregoing notwithstanding, such assumption by Factor of the risk of problems will not be effective upon the occurrence of any of the following:

   (a)  Breach of any representations or warranties or covenants contained herein;
   (b)  Contribution to or aggravation by Client of the collection problem;
   (c)  The existence of any dispute of any kind, regardless of validity, between Client and Attorney;
   (d)  Assertion by a third party of a claim of loss, lien, subrogation right or offset of any kind against Client or Factor; or
   (e)  Any case where the Attorney has not duly signed and returned to Factor a Notice of Assignment form.

### III. WARRANTIES AND REPRESENTATIONS OF CLIENT

In order to induce Factor to enter into this Agreement, and with full knowledge that the truth and accuracy of the warranties and representations set forth in this Agreement are being relied upon by Factor since time is of the essence, Client warrants and represents to Factor now, and during the terms of this Agreement, that:

3.01 Client has the power to execute and deliver this Agreement and to execute and deliver to Factor any and all documents required to be executed and delivered hereunder.

3.02 As of the date of this Agreement, Client is not insolvent.

2

3.03 Client has good title to the Recovery, free and clear of
     all mortgages, liens and encumbrances, covenants or
     restrictions.

3.04 The Recovery being sold to Factor has not heretofore been
     pledged, sold or assigned to any person, firm, corporation
     or other entity, nor has any security interest in such
     Recovery been granted to, or obtained by, any person or
     entity.

3.05 There are no agreements, verbal or written, between Client
     and Attorney, or any other party, which would prohibit the
     sale of the Recovery by Client to Factor.

3.06 The execution and performance by Client of the terms and
     provisions of this Agreement, or any other documents
     required to be delivered hereunder, will not violate any
     indenture, agreement or other instrument to which Client is
     a party, or by which Client is bound, or be in conflict
     with, result in breach of, or constitute (with due notice
     or lapse of time or both) a default under, or result in the
     creation or impositions of any lien, charge or encumbrance
     of any nature whatsoever upon any of the property or assets
     of Client pursuant to any such indenture, agreement or
     instrument, except as provided in this Agreement.

3.07 There is no action, suit or proceeding at law or in equity
     or by or before any governmental instrumentality or other
     agency now pending or, to the knowledge of Client,
     threatened against or affecting Client which, if adversely
     determined, would have a material adverse effect on the
     business, operations, properties, assets or condition,
     financial or otherwise, of Client.

3.08 Client is not a party to any material agreement or
     instrument or subject to any restriction adversely
     affecting its business, properties or assets, operations or
     condition, financial or otherwise.  Client is not in
     default in the performance, observance or fulfillment of
     any of the material agreement or instrument to which it is
     a party.

3.09 Except as disclosed in writings to Factor, there is no fact
     known to Client which materially adversely affects the

                                                                    3

business, operations or conditions of client of any of its properties.

## IV. CONDITIONS TO FACTOR'S OBLIGATIONS HEREUNDER

The obligation of Factor to perform its obligations hereunder to the following conditions precedent:

4.01 The representations and warranties set forth in Article III hereof shall be true and correct on and as of the date hereof, and of no default as specified in Article VII hereof, nor any event which upon notice of lapse of time or both would constitute such an Event of Default, shall have occurred as of the date of this Agreement.

## V. AFFIRMATIVE COVENANTS BY CLIENT

Client covenants and agrees that, from the date hereof and until termination of this Agreement and performance of all of Client's obligations hereunder, Client will, unless otherwise agreed to in writing by Factor:

5.01 Promptly, from time to time, permit Factor to inspect his records regarding the Action. Client further agrees to waive the attorney/client privilege with regard to inquires made by Factor or its agent to his/her counsel relating to the status of any negotiations, settlement discussions and/or any litigation pending that involves the "Action" that is the subject matter of this agreement.

5.02 Promptly notify Factor of any development which would materially adversely affect the business of Client, its properties or affairs or the ability of Client to perform any obligations under this Agreement, or any other document delivered in connection therewith.

5.03 Promptly advise Factor of any material adverse change in Client's conditions, financial or otherwise, and of the occurrence of any Event of Default by Client as defined in Article VII hereof, and of the occurrence of any event which upon notice or lapse of time, or both, would constitute such an event of Default.

5.04 Promptly notify Factor of any settlement, judgment, arbitration award or other final disposition of the Action.

4

5.05 Fulfill all obligations under Client's agreement with Attorney.

5.06 In the event that Client hires new attorney(s) to represent Client in the "Action" described herein then the Client will notify the new attorney(s) of this Agreement and direct the new attorney(s) to sign an additional Notice Of Assignment satisfactory to the Factor upon the signing of a new fee agreement but no later than thirty (30) days after new counsel has been hired. If Client fails to obtain the signatures of the new attorneys on a Notice of Assignment as required, Factor may notify the new attorney of this Agreement and Factor's rights in the proceeds including Factor's right to institute appropriate legal proceedings to enforce Factor's rights under this Agreement in the state or Federal courts of Maryland. Client specifically waives all questions of personal jurisdiction or venue for purposes of carrying out Factor's right to enforce the terms of this agreement.

5.07 Client agrees that in the event it is necessary for Factor to incur expenses or file proceedings to enforce, establish or clarify his rights under this Agreement then Client shall pay Factor its reasonable expenses relating to such efforts to enforce, establish or clarify his rights, including but not limited to reasonable attorney's fees.

5.08 Hold in trust and safekeeping, and immediately turn over to Factor, any payment on the Recovery purchased by Factor whenever any such payment, whether cash, check (payable to Client, Factor or both), money order or other form of payment, comes into Client's possession.

## VI. NEGATIVE COVENANTS

Client covenants and agrees that, until termination of this Agreement and performance by Client of all of its obligations hereunder, unless Factor shall otherwise consent in writing, it will not directly or indirectly:

6.01 Create, incur, assume or suffer to exist any pledge, lien, charge or other encumbrance of any nature whatsoever against the Recovery.

5

6.02 Interfere in any fashion or under any circumstances with any of Factor's right under this Agreement.

6.03 Factor or sell any other parts of the Recovery except to Factor during the term of this Agreement.

6.04 Pledge the credit of Factor to any person or entity for any purpose whatsoever.

## VII. SECURITY INTEREST

7.01 As a further inducement for Factor to enter into this Agreement, Client hereby grants to Factor, as security for the repayment of any and all of Client's obligations hereunder, a security interest in all of Client's Recovery, accounts, inventory, instruments, documents, contract rights, chattel paper, general intangibles and the proceeds there of (including any insurance proceeds), now and hereafter owned by Client, or in which Client now or hereafter may have any rights, wherever situated and whenever acquired.

## VIII. DEFAULTS

8.01 Upon the occurrence of any of the following events (each of which is herein sometimes called an "Event of Default"):

    (a)  If Client shall fail to pay any of its obligations to
         Factor when due;
    (b)  If Client confesses inability to continue performance
         in accordance with this Agreement;
    (c)  If any representation or warranty made herein or in
         any report, assignment, certificate, financial
         statement or other instrument furnished in connection
         with this Agreement, shall prove to be false or
         misleading in any material respect;
    (d)  If Client shall fail to perform any covenant,
         condition or agreement contained herein;
    (e)  If Client or any other person liable in whole or in
         part for payment or performance of the obligations
         contained herein shall (i) apply for or consent to
         appointment of a receiver, trustee, custodian or
         liquidator of it or any of its property, (ii) admit in
         writing its inability to pay its debts as they mature,
         (iii) make a general assignment for the benefit of

6

creditors, (iv) be adjudicated bankrupt or insolvent
or be the subject of an order for relief under Title 7
or 11 of the United States Code or (v) file a
voluntary petition in bankruptcy, or a petition or an
answer seeking reorganization or an arrangement with
creditors to take advantage of any bankruptcy,
reorganization, insolvency, adjustment of debt,
dissolution or liquidation law or statute, or an
answer admitting the material allegations of a
petition filed against it in any proceeding under any
such law, or if a corporate action shall be taken for
the purpose of effecting any of the foregoing;

(f)  If any order, judgment or decree shall be entered,
without the application, approval or consent of Client
by any court of competent jurisdiction, approving a
petition seeking reorganization of Client or
appointing a receiver, trustee, custodian or
liquidator of Client, or of all or substantial part of
the assets of Client;

(g)  If there occurs any attachment of any deposits or
other property of Client in the hands or possession of
Factor;

then, and in every such Event of Default and at any time
thereafter during the continuance of such event, Factor may
take any one or more of the following actions: (i) charge
back to Client all outstanding Recovery and declare all
obligations secured hereby immediately due and payable;
(ii) enforce the security interest given hereunder pursuant
to the Uniform Commercial Code or any other law; (iii)
require Client to assemble the Collateral and the records
pertaining to the Recovery and make them available to
Factor at a place designated by Factor; (iv) enter the
premises of Client and take possession of the Collateral
and of the records pertaining to the Recovery and any other
Collateral; (v) grant extensions, compromise claims and
settle the Recovery for less than the face value, all
without prior notice to Client; (vi) use, in connection
with any assembly or disposition of the Collateral, a
trademark, trade name, copyright, patent right or technical
process used or utilized by Client; (vii) retain any
surplus realized to cover Client's obligations to Factor
and hold Client liable for any deficiency as provided in
the Uniform Commercial Code (viii) offset any funds held by
Factor in any reserve account for obligations of Clients to
Factor including but not limited to legal fees or other

7

costs associated with the collection of the Recovery; or pursue any other remedy at law or equity which Factor may have.

## IX. MISCELLANEOUS

9.01 This Agreement and all covenants, agreements, representations and warranties made herein, shall survive the purchase by Factor of the Recovery hereunder, and shall continue in full force and effect, so long as Client shall have any obligations to Factor hereunder. Whenever in this Agreement any of the parties hereto is referred to, such reference shall be deemed to include the heirs, personal representatives, legal representatives, successors and assigns of such parties, and all covenants promises and agreements in this Agreement contained, by or on behalf of Client, shall insure to the benefit of the successors and assigns of Factor.

9.02 Once Factor has purchased any part of the Recovery, payment on such Recovery is the sole property of Factor.

9.03 The prevailing party shall be entitled to reimbursement of any and all legal expenses and reasonable attorneys fee which it may incur as a result of either Client or Factor enforcing this Agreement.

9.08 This Agreement shall inure to the benefit of and be binding upon the heirs, executors, administrators, successors and assigns of the parties hereto.

9.09 No failure on the part of Factor to exercise, and no delay in exercising and no course of dealing with respect to, any right, power or remedy under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise by Factor of any right, power or remedy under this Agreement preclude any other right, power or remedy. The remedies in this Agreement are cumulative and are not exclusive of any other remedies provided by law.

9.10 This Agreement shall be construed in accordance with and governed by the laws of the State of Maryland. Unless otherwise defined herein, or unless the context otherwise requires, all terms used herein which are defined in the

8

Maryland Uniform Commercial Code have the meaning therein stated.

9.11 Client hereby consents to the personal jurisdiction of the courts of the State of Maryland and the United States District Court for the District of Maryland, for the purpose of any suit, action or other proceeding arising out of any of its obligations hereunder or with respect to the transactions contemplated hereby and expressly waives any and all objections it may have as to the jurisdiction or venue in any such courts. Client and Factor also waive trial by jury in any action brought on or with respect to the Agreement.

9.12 All notices and communications hereunder shall be given or made to the parties at their respective addresses as the addressee may hereafter specify for the purpose by written notice to the other party. Such notices and other communications will be effectively given only if and when given in writing and delivered at the address set forth herein or duly deposited in the mails with first-class postage or delivered via facsimile transmission with all charges prepaid.

9.13 If any provision hereof is held invalid, illegal or unenforceable in any jurisdiction, for any reason whatsoever, the other provisions hereof shall remain in full force and effect in such jurisdiction and to that end provisions hereof are declared to be severable and the remaining provisions shall be liberally construed in favor of Factor.

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto all as of the day and year first above written.

John Friedson, Managing Member

9

Addendum I

This agreement is to serve as an Addendum to the Combined Pre-Settlement Factoring and Security Agreement between ███████████ and Creative Financing Solutions, LLC. It is understood between these two parties that the purchase price for the assignment (fee) will be as follows: if payment to this firm occurs within 0-60 days from the date of the contract $375; 61-120 days $750; 121-180 days $1,125; 181-240 days $1,500; 241-300 days $1,875; 301-365 days $2,250 and $175 for each 30 days thereafter (in whole or in part) in addition to the amount accrued to that date.

Agreed to: June 06, 2014

Creative Financing Solutions, LLC.
John Friedson, President

## Notice of Assignment

To My Attorney(s) of Record: Roger Bennett, Esquire, Regarding a complaint filed in US District CT for the Northern District of MD, Case no. ELH14CV0365, Willie J. Germany, Jr., Plaintiff v. NFL, et.al, Defendants.

I,                         hereby advise you that I have assigned to Creative Financing Solutions, LLC, a Maryland Limited Liability Company all of my rights, title and interest in and to the first $2,500.00 *PLUS fee (see ADDENDUM I attached) of any monetary recovery (after deduction of your fees and costs pursuant to our fee agreement), whether by settlement, arbitration award, judgment or otherwise, based on any claim(s) now pending or hereafter threatened or asserted in the above-referenced civil action.

You are hereby irrevocably directed to disburse directly to Creative Financing Solutions, LLC, 6264 Montrose Road, Rockville, MD 20852, without offset of any kind, the first $2,500,00 *PLUS fee (see ADDENDUM I attached) of any monetary recovery related to the above-referenced civil action (after deduction of your fees and costs pursuant to our fee agreement). By your signature hereon, you assert to Creative Financing Solutions, LLC, that there are no other statutory or non-statutory liens, now or anticipated, except as listed on the application. You further agree to notify (per paragraphs 6.01, 6.02 and 6.03) Creative Financing Solutions, LLC in the event other liens not yet anticipated come to your attention prior to the execution of such.

You also agree to recognize the waiver of attorney/client privilege as stated in Paragraph 5.01 of the Combined Pre-Settlement Factoring Agreement dated between myself and Creative Financing Solutions, LLC. By doing so you agree to provide Creative Financing Solutions, LLC, or its agents, upon request, all information relating to the status of any negotiations, settlement discussions and/or any litigation pending that involves the "Action" that is the subject of this agreement only. You further agree that in the event your services are terminated by me prior to the conclusion of the above matter that you shall notify Creative Financing Solutions, LLC. of that fact, within five (5) days, and provide them with the name of any other attorney, law firm or other entity you believe may be acting on my behalf in the above matter.

Dated this 06 day of June, 2014

ACKNOWLEDGED AND AGREED TO THIS 06 DAY OF June, 2014
LAW FIRM: Bennett & Heyman, P.A.

By Attorney: Roger Bennett

10

## Consent for Release of Information

I, ███████████ give you, Roger Bennett, my attorney
of record, permission to release documents and information
contained/regarding my case file to:

CREATIVE FINANCING SOLUTIONS LLC.

Date: 6/06/14   ███████



Joseph Biles          Fax: (636) 417-4081          To:          Fax: (213) 481-1554          Page 1 of 8  03/20/2017 6:36 PM

199 Main Street, 8th Floor
White Plains, NY 10601
(866) 709-1100 Phone
(866) 417-4081 Fax

## FAX - CONFIDENTIAL (Case ID: 518897)

| To: | Nicole F. De Vanon ,Esq. | From: Wensley McKenney |
|---|---|---|
| Fax: | (213) 481-1554 | Date: 20 Mar 2017 |
| Re: | ▮▮▮▮▮▮ | Pages: 7 |

Dear  Nicole F. De Vanon,

I have attached our Cash Advance Agreement and Letter of Instruction for your client, ▮▮▮▮▮▮▮▮. Please have your client execute where indicated.  We also require your signature under the Attorney Acknowledgement of Exhibit A. We appreciate your efforts in helping your client, ▮▮▮▮▮▮ secure funding.

### INSTRUCTIONS

1. Sign where designated. Fax documents to (866) 417 4081 or Email to joseph@glofin.com. **(Please reference Case ID 518897 in your fax or email)**
2. We try to be flexible so if you have questions regarding any of the language, please contact me to have your changes approved.
3. File one copy to clients file and clearly indicate that an Assignment & Security Interest has been issued to **GLOBAL FINANCIAL CREDIT.**
4. Thank the client and wish them good luck in their case on behalf of everyone at GLOBAL FINANCIAL!!

Sincerely,

*Wensley McKenney*

Wensley McKenney
Managing Member
GLOBAL FINANCIAL CREDIT, LLC

Page 1    20 Mar 2017

RECEIVED TIME  MAR. 20.   2:35PM



## CASH ADVANCE AGREEMENT (Case ID: 518897)

THIS AGREEMENT is entered into on this date, 20 Mar 2017, between [REDACTED] (hereinafter 'Seller'), residing in null, CA, and GLOBAL FINANCIAL CREDIT, LLC, a Delaware Limited Liability Company (hereinafter 'Purchaser'), with its principal place of business at 199 Main Street, 8th Floor, White Plains, NY 10601. Purchaser and Seller are collectively referred to as 'Parties' and singularly as 'Purchaser' and 'Seller' respectively;

WHEREAS, Seller is engaged in a pending legal claim and/or lawsuit as a result of injuries arising out of a Personal Injury, Worker Compensation or other legal claim ('Legal'); and

WHEREAS, Seller does not have sufficient funds to proceed with the Legal Claim and is unsure of the amount of time until completion of the Legal Claim and;

WHEREAS, Seller has contacted the Purchaser voluntarily and not as a result of any solicitation on the part of Purchaser;

WHEREAS, Seller agrees not to share this agreement with anyone other than Purchaser or legal counsel that represents Seller in connection with the Legal Claim;

WHEREAS, Seller has been advised that Purchaser is a provider of funds of last resort and that other funding sources may be less expensive and that Seller should seek funding for current, necessary expenses elsewhere, other than from Purchaser, if at all possible; and

WHEREAS, Seller recognizes this Cash Advance Agreement to be a high-risk cash advance from the potential legal claim proceeds and not a loan, and further acknowledges that Purchaser may make a substantial profit on this Agreement; and

WHEREAS, the Parties agree to the following terms and conditions under which this Agreement shall be performed;

NOW, THEREFORE, in consideration of these promises, the Parties hereto agree as follows:

## ARTICLE I: TERMS OF CASH ADVANCE

In consideration for the cash advance of $ 2,425 DOLLARS ('Cash Advance') provided to the Seller by the Purchaser, the Seller hereby assigns a security interest in the potential future proceeds of his/her Legal Claim amount ('Proceeds' hereinafter defined as the gross amount of recovery from the Legal Claim less the Seller's attorney's fee and actual case preparation costs) equal to the Cash Advance, plus a monthly fee equal to 2.79% ('Monthly Fee') to be calculated as follows: The Monthly Fee will be calculated on a daily basis by multiplying the corresponding daily fee of 0.093% (2.79%/30 days) by the total outstanding amount due Purchaser on the previous day. In addition, a one-time Minimum Return Fee ('MRF') of $ 425 will be deducted from the Cash Advance and a $ 2,000 advance amount ('Advance Amount') will be provided to the Seller. A Cap will be placed on the Monthly Fee so that the total repayment amount by Seller will never exceed $ 7,275 dollars. Any recovery from derivative claims or cases are also to be included in Proceeds described above. A Closing Fee of $50 will be added to the Seller's final balance due. Seller agrees that a Voice Recorded Agreement ('VRA') will be considered legally valid and used to secure future advances. The VRA will be subject to the same terms and conditions of this agreement and/or the terms outlined in the VRA.

Seller assigns merely as security interest in the specific amount described above from the Proceeds of the Legal Claim, not the actual rights to pursue the Legal Claim. Seller retains control of the Legal Claim, and all decisions regarding legal strategy shall remain with the Seller and his or her attorney. Purchaser shall have no influence over the Legal Claim. Both Seller & Purchaser agree that the obligation to pay the partial assignment of the Legal Claim is speculative, without recourse and contingent upon the successful resolution of the Legal Claim, and any successor claims and/or litigation arising out of the same facts, or arising out of the conduct of the Legal Claim. If no recovery arises from the Legal Claim, the Purchaser shall receive nothing. Seller further acknowledges that no debt to the Purchaser is created until there is a .

successful resolution in the Legal Claim.

## ARTICLE II: DISTRIBUTION OF CASH ADVANCE AND FEES

In consideration for the Advance Amount, at the time of settlement and/or resolution of the Seller's Legal Claim, the Purchaser will receive the Cash Advance plus the Monthly Fee, defined above. Seller acknowledges and understands that Purchaser will be paid in full prior to Seller receiving any funds from the proceeds
Seller agrees that if the subject Legal Claim is to be settled or otherwise satisfied via a Structured Settlement, the initial disbursement of proceeds due pursuant to the Structured Settlement and payable by the defendant or defendant's insurance carrier in the Legal Claim must be sufficient to pay and must be used to pay all monies due the Purchaser pursuant to this Agreement

## ARTICLE III: LOSER PAYS

If either party to this agreement brings litigation/arbitration against the other party, the non-prevailing party shall reimburse the prevailing party's costs and expenses (including reasonable legal fees) incurred by the prevailing party as it pertains to such litigation/arbitration. If Seller breaches any of the terms of this agreement or fails to make payments when due under this agreement, Seller shall pay all of the Purchasers costs & expenses, including reasonable legal fees, incurred by the Purchaser enforcing the terms of this agreement or collecting any payment due under this agreement.

## ARTICLE IV: PURCHASER'S RIGHT TO GIVE NOTICE

Only in the event that Seller is no longer represented by the law firm listed on Exhibit A will Purchaser have the right to send a notice of lien & security interest against Proceeds of the Legal Claim to any and all applicable insurance carriers or attorney(s) in order to protect Purchaser's interest in this matter. Regardless of whether Seller has legal representation, Seller irrevocably instructs insurer to satisfy the partial assignment directly with Purchaser before releasing any settlement funds to Seller.

## ARTICLE V: ACCURACY OF INFORMATION & REPRESENTATIONS

Seller warrants and represents that, to the best of its knowledge, all information supplied to Purchaser as well as Seller's Attorney(s) shall be in all material respects complete, true and correct and shall not omit to state any material facts necessary to make such information not materially misleading. If it is found out at a future date that Seller has in any way lied or misrepresented the Purchaser or the Seller's Attorney(s) then this would be considered fraud and Purchaser reserves all rights allowable at Law and Equity to recoup entire Cash Advance plus reasonable attorney's fees and costs from Seller and agrees to relinquish all rights to the non recourse benefit of this agreement and hereby personally guarantees to Purchaser all amounts due under this agreement. Seller warrants he or she has not received a cash advance from another company.

## ARTICLE VI: RIGHT OF CANCELATION

SELLER MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OR FURTHER OBLIGATION WITHIN 120 BUSINESS HOURS (5 BUSINESS DAYS) OF THE EXECUTION OF THIS AGREEMENT, provided that the Seller must return the exact amount advanced to Seller simultaneously with the rescission. Seller may complete the cancellation by returning funds to Purchaser in form of (a) un-cashed check (b) return wire transfer or (c) bank draft sent to Purchaser's business address. NEW YORK CONSUMER'S RIGHT TO CANCELLATION: SELLER MAY CANCEL THIS AGREEMENT

WITHOUT PENALTY OF FURTHER OBLIGATION WITHIN 5 BUSINESS DAYS FROM THE DATE YOU RECEIVE FUNDING FROM PURCHASER.

## ARTICLE VII: BUYOUT OF CASH ADVANCE & MONTHLY FEES

The Seller will retain the option to buy-out the entire Cash Advance and Fees as set forth in Article II of this Agreement to Purchaser at any time prior to the Settlement Date and distribution of the Proceeds at his/her discretion applying the same Cash Advance & Monthly Fees as if the claim settled. Purchaser expressly reserves the right to assign this Cash Advance to any individual, corporation, or any entity recognized under United States or International law.

## ARTICLE VIII: ENTIRE AGREEMENT & UNDERSTANDING

This Agreement constitutes the entire agreement between the parties and there are no representations, warranties, covenants or obligations except as set forth herein. Both Parties agree that a faxed copy of this document is considered original. This Agreement supersedes all prior and contemporaneous agreements, understandings, negotiations, or discussions, written or oral, of the parties hereto, relating to any transaction contemplated by this agreement, however, this Agreement does not supersede any previously executed Cash Advance Agreement(s) between Seller & Purchaser. The Seller acknowledges that he/she has relied on his/her own judgment in executing this document and has read it without duress. Seller acknowledges that the terms of this Agreement have been drafted and negotiated by both the Seller and the Purchaser, and that all questions have been answered to the Seller's satisfaction.

## ARTICLE IX: ARBITRATION AGREEMENT

By signing this Agreement Purchaser and Seller acknowledge and agree that if a dispute of any kind arises out of this Agreement or the application therefore or any document relating thereto, either Purchaser or Seller may elect to have that dispute resolved by binding arbitration as set forth in this Article. If either Party elects to proceed by arbitration, both parties will lose their rights to go to court to assert or defend their rights under this agreement. The Parties rights will instead be determined by one or more neutral arbitrators and not a judge or jury. Arbitration decisions are as enforceable as any court order and are subject to very limited review by a court. Any arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted. Parties agree that any such arbitration shall take place under the auspices of the American Arbitration Association ("AAA") in a location that is reasonably convenient to both parties. If we cannot agree on a location, the determination will be made by the American Arbitration Association. Parties agree that any arbitration may also be conducted by telephone or other electronic transmission. Parties agree that the procedural rules of the AAA and the substantive laws of the state of New York shall be applied in all events. In order to initiate an arbitration to resolve a claim, dispute or controversy Seller or Purchaser must notify the other party in writing by certified mail (the "Demand"), which must: (a) briefly explain the dispute, (b) list the name, address and phone number of the both Parties, (c) specify the amount of money involved, (d) state the preferred hearing locale, and (e) state what you want to resolve the dispute. Party submitting Demand must send two copies of the demand to the AAA at 1633 Broadway, 10F, New York, NY 10019, Phone (585) 387-9450, along with the appropriate administrative fee/deposit.

## ARTICLE X: SEVERABILITY

If a court finds any provision of this Agreement invalid or unenforceable as applied to any circumstance, the remainder of this agreement and the application of such provision to other persons or circumstances shall be interpreted so as best to effect the intent of the parties hereto. The parties further agree to replace any such void or unenforceable provision of this agreement with a valid and enforceable provision which will achieve, to the extent possible, the economic, business and

Page 4   20 Mar 2017

other purposes of the void or unenforceable provision. This article is intended to provide a court of competent jurisdiction with the ability to 'blue pencil' this agreement so as to render it lawful, to the broadest extent possible, and is specifically applicable but not limited to the financial provisions of Article I

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by their duly authorized officers. This agreement and its principle terms have been explained to me and all questions that I may have about this transaction have been answered. This has been done both in English and _____, the language I speak best. Before you sign this agreement, you should obtain the advice of your attorney. You are entitled to a fully executed copy of this agreement.

GLOBAL FINANCIAL CREDIT, LLC
(a Delaware Limited Liability Company)

Date:  20 Mar 2017

Wensley McKenney - Purchaser

Date:  20 Mar 2017

## Exhibit A
## LETTER OF INSTRUCTION

20 Mar 2017

Case ID:518897

Nicole F. De Vanon ,Esq.
Girardi | Keese
1126 Wilshire Boulevard
Los Angeles,CA,

Dear Nicole F. De Vanon,

I ▮▮▮▮▮▮▮▮▮▮ hereby instruct Nicole F. De Vanon &/or Girardi | Keese, or any subsequent attorney(s) that may represent me, to place a consensual lien & security interest against any and all of the future settlement proceeds due to me from the legal claim(s)/case(s) in which you represent me. I irrevocably instruct you to protect and satisfy this consensual lien & security interest per the terms of the attached Cash Advance Agreement ('Agreement') which I have entered into with Global Financial Credit, LLC ('Global'). If any legal counsel representing me decides to challenge the terms of this Letter or the attached agreement, I instruct you to hold all funds in your trust account until the dispute has been resolved. If a lien is not legally allowable on my case, please understand I have nonetheless agreed to pay Global when my case settles. Failure to pay in a timely manner will result in significant financial harm to me. I also instruct you to provide Global with periodic updates on my case.

Should there be a dispute in the amount owed Global, I instruct you not to release any funds to me until the dispute is resolved. I instruct you not to share this letter or the attached agreement with anyone unless you are ordered to do so by a court of law. In the event that you no longer represent me, I instruct you to provide Global with applicable insurance and/or attorney information in order for them to protect their assignment/lien. I have read the Agreement and fully understand my obligations. If any checks sent in my name, I hereby grant you limited power of attorney to endorse and deposit my check into your trust account and pay Global in full before releasing any funds to me.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## ATTORNEY ACKNOWLEDGMENT

I, Nicole F. De Vanon, acknowledge receipt of this Letter from my client. I will honor the instructions from my client. Should my representation with this client terminate, I will contact Global, without delay, and provide applicable insurance and/or new attorney information. Should there be a dispute in the amount due and owing, I will protect the funds that Global asserts is owed until resolution of the dispute. I represent that ▮▮▮▮▮▮▮▮▮ claim is still pending in active status and that presently there are no motions for a final disposition and that the claim is being vigorously defended. I will not share the attached agreement with any third party unless I am ordered to do so by a court of law. I represent that to the best of my knowledge ▮▮▮▮▮▮▮ has NOT previously received a cash advance (from anyone other than Global) against his/her legal claim similar to the attached Agreement. I represent that this advance is not being used to pay either fees or expenses of this case.

_____
Nicole F. De Vanon, Esq.

How should we contact your office for case updates?

_____

Email is Preferred (or Fax)

→ or to provide new counsel information.

Page 6   20 Mar 2017

## Exhibit B
## Advance & Repayment Terms Agreement
Parties: 518897 is Seller and Global Financial Credit, LLC is the Purchaser.

| | | |
|---|---|---|
| Advance Amount to Seller | $2,900.00 Balance Due 3 Months | $2,686.61 |
| Balance Due at Execution | $2,425.00 Balance Due 6 Months | $2,922.01 |
| Monthly Fee | 2.79% Balance Due 12 Months | $3,454.59 |
| | Capped Due after 33 Months | $7,275.00 |

## Please follow these 2 easy steps:

### 1. Check ☑ One of the following Boxes below

**MoneyGram.**

☑

SAME DAY CASH PICKUP!!! $35
MAX- $5,000
(Fill in Information Below)

**DIRECT DEPOSIT**

☐

ACH Direct Deposit Not Wire. $25
Funds post Next Business Day
(Fill in Information Below)

**UPS**

☐

Delivery (M-F)
☐ Overnight $35
☐ Sat. Delivery $75
☐ Regular Mail Free

### 2. ATTENTION: Below MUST be filled out before release of money
* Fees are deducted from the Final Approval Amount

| | | |
|---|---|---|
| Social Security Number | | DOB |
| Name: (Check issued to) | | Phone |
| Street | Apt    City | State    Zip |

**MoneyGram.**

Check one :  ☑ Driver Lic.   ☐ State ID.   ☐ Passport.   ☐ Gov't ID.   ☐ Alien ID.

Name on ID :

Number on ID :

State ID. :

State of MoneyGram Pickup :        Exp of ID :

Terms: In the event that Seller receives a financial recovery from the legal claim as mentioned in the Non-Recourse Cash Advance Agreement and Seller receives funds prior to Purchaser's assignment & security interest being satisfied in full, Seller grants Purchaser the right to effect one or more ACH debit entries, as needed, from Seller's bank to satisfy outstanding assignment & security interest balance due Purchaser in full.

## In a sentence or two please describe how we've helped you in your time of need.

*Thanks I really needed the favor*

By signing below, I, Brandon Jamison, agree to the terms of the Exhibit B and understand that I am responsible for the information that I have provided on this ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ delivery or transfer of monies, so long as it follows the instructions provided by the Seller.

Page 7   20 Mar 2017

## Release

This agreement and mutual release ('agreement') is made between Global Financial Credit, LLC ('GLOBAL'), located at 199 Main Street, 8th Floor, White Plains, NY 10601, together with its successors and/or assigns (collectively 'GLOBAL'), and {0} ('Plaintiff'), together with his/her/their successors, heirs and/or assigns.

Whereas, under the terms of one or more prior agreement(s) (the 'Prior Agreements') Plaintiff assigned to GLOBAL an interest in the proceeds of Plaintiff's anticipated recovery, by settlement, judgment or otherwise (the 'Recovery'), on Plaintiff's case/claim/litigation which was then pending ('the Case');

Whereas, the Case has been tried, settled, or otherwise resolved, and GLOBAL is entitled to receive certain closing fees ('Closing Fees'), pursuant to the Prior Agreements.

Whereas, GLOBAL is willing to waive a portion of the Closing Fees in exchange for certain warranties and representations of the Plaintiff, which are more fully described and defined herein;

Now therefore, in full consideration of the mutual promises and agreements set forth herein, to include but not be limited to GLOBAL's waiver of a portion of the Closing Fees to which it is entitled pursuant to the Prior Agreements, the parties agree as follows:

1.    Plaintiff and GLOBAL hereby mutually release, hold harmless, covenant not to sue or participate in any suit, and forever discharge each other collectively and individually, including their respective affiliates, legal representatives, agents, officers, owners, directors, predecessors, administrators, personal representatives, heirs, successors and assigns of and from any and all disputes, which shall include all actions, causes of action, suits, debts, sums of money, covenants, contracts, damages, judgments, and demands, of every nature whatsoever, whether known or unknown, in law or equity, which they ever had since the beginning of time, now have, or hereafter can, shall or may have. 'Any and all disputes' for purpose of this agreement is intended to be given the broadest possible interpretation, and shall include but not be limited to any claims Plaintiff may claim arising pursuant to Plaintiff's purported inclusion in a certified class action matter.

2. In consideration for the mutual promises and the general releases each party is providing herein, GLOBAL agrees it will waive some amount Closing Fees in order to expedite conclusion of Plaintiff's Recovery and finalize Plaintiff's obligations pursuant to the Prior Agreements in an expedited fashion.

3. Plaintiff represents and warrants that he/she has had the full opportunity to consult with counsel and review with counsel the within agreement, and as a result fully and completely understands its terms and consequences.

4. This agreement for accord and satisfaction, settlement agreement and/or general release shall be governed, interpreted, and enforced by, and in accordance with, the laws of the state of New York, without giving effect to the conflict of laws principles thereof.

5. The date on which GLOBAL waives of a portion of the Closing Fees pursuant to this Agreement, as evidenced by GLOBAL's acceptance of final payment from Plaintiff pursuant to the Prior Agreements, shall constitute the effective date of this Agreement. Any complaints, claims and/or causes of action related to the Prior Agreements are moot and are barred by the doctrine of accord and satisfaction. Accordingly, this agreement supersedes all prior agreements with respect to the subject matter hereof and the releases contained herein.

IN WITNESS WHEREOF, the Parties have affixed their signatures.

Global Financial Credit, LLC, by Wensley McKenney
Ref CaseID: 518897

Page 8   20 Mar 2017



199 Main Street, 8th Floor
White Plains, NY 10601
(866) 709-1100 Phone
(866) 417-4081 Fax

## FAX - CONFIDENTIAL (Case ID: 518897 )

| To: | Nicole F. De Vanon ,Esq. | From: Wensley McKenney |
|---|---|---|
| Fax: | (213) 481-1554 | Date: 26 Jan 2017 |
| Re: | ▊▊▊▊▊ | Pages: 7 |

Dear Nicole F. De Vanon,

I have attached our Cash Advance Agreement and Letter of Instruction for your client, ▊▊▊▊▊▊ Please have your client execute where indicated. We also require your signature under the Attorney Acknowledgement of Exhibit A. We appreciate your efforts in helping your client, ▊▊▊▊▊▊ secure funding.

### INSTRUCTIONS

1. Sign where designated. Fax documents to (866) 417 4081 or Email to joseph@glofin.com. **(Please reference Case ID 518897 in your fax or email)**

2. We try to be flexible so if you have questions regarding any of the language, please contact me to have your changes approved.

3. File one copy to clients file and clearly indicate that an **Assignment & Security Interest has been issued to GLOBAL FINANCIAL CREDIT.**

4. Thank the client and wish them good luck in their case on behalf of everyone at GLOBAL FINANCIAL!!

Sincerely,

*Wensley McKenney*

Wensley McKenney
Managing Member

GLOBAL FINANCIAL CREDIT, LLC



## CASH ADVANCE AGREEMENT (Case ID: 518897)

THIS AGREEMENT is entered into on this date, 26 Jan 2017, between ▮▮▮▮▮▮ (hereinafter 'Seller'), residing in null. ▮▮ and GLOBAL FINANCIAL CREDIT, LLC, a Delaware Limited Liability Company (hereinafter 'Purchaser'), with its principal place of business at 199 Main Street, 8th Floor, White Plains, NY 10601. Purchaser and Seller are collectively referred to as 'Parties' and singularly as 'Purchaser' and 'Seller' respectively;

WHEREAS, Seller is engaged in a pending legal claim and/or lawsuit as a result of injuries arising out of a Personal Injury, Worker Compensation or other legal claim ('Legal'); and

WHEREAS, Seller does not have sufficient funds to proceed with the Legal Claim and is unsure of the amount of time until completion of the Legal Claim;

WHEREAS, Seller has contacted the Purchaser voluntarily and not as a result of any solicitation on the part of Purchaser;

WHEREAS, Seller agrees not to share this agreement with anyone other than Purchaser or legal counsel that represents Seller in connection with the Legal Claim;

WHEREAS, Seller has been advised that Purchaser is a provider of funds of last resort and that other funding sources may be less expensive and that Seller should seek funding for current, necessary expenses elsewhere, other than from Purchaser, if at all possible; and

WHEREAS, Seller recognizes this Cash Advance Agreement to be a high-risk cash advance from the potential legal claim proceeds and not a loan, and further acknowledges that Purchaser may make a substantial profit on this Agreement; and

WHEREAS, the Parties agree to the following terms and conditions under which this Agreement shall be performed;

NOW, THEREFORE, In consideration of these promises, the Parties hereto agree as follows:

### ARTICLE I: TERMS OF CASH ADVANCE

In consideration for the cash advance of $ 3,595 DOLLARS ('Cash Advance') provided to the Seller by the Purchaser, the Seller hereby assigns a security interest in the potential future proceeds of his/her Legal Claim amount ('Proceeds' hereinafter defined as the gross amount of recovery from the Legal Claim less the Seller's attorney's fee and actual case preparation costs) equal to the Cash Advance, plus a monthly fee equal to 2.99% ('Monthly Fee') to be calculated as follows: The Monthly Fee will be calculated on a daily basis by multiplying the corresponding daily fee of 0.1% (2.99%/30 days) by the total outstanding amount due Purchaser on the previous day. In addition, a one-time Minimum Return Fee ('MRF') of $ 595 will be deducted from the Cash Advance and a $ 3,000 advance amount ('Advance Amount') will be provided to the Seller. A Cap will be placed on the Monthly Fee so that the total repayment amount by Seller will never exceed $ 10,785 dollars. Any recovery from derivative claims or cases are also to be included in Proceeds described above. A Closing Fee of $50 will be added to the Seller's final balance due. Seller agrees that a Voice Recorded Agreement ('VRA') will be considered legally valid and used to secure future advances. The VRA will be subject to the same terms and conditions of this agreement and/or the terms outlined in the VRA. Seller assigns merely as security interest in the specific amount described above from the Proceeds of the Legal Claim, not the actual rights to pursue the Legal Claim. Seller retains control of the Legal Claim, and all decisions regarding legal strategy shall remain with the Seller and his or her attorney. Purchaser shall have no influence over the Legal Claim.

Both Seller & Purchaser agree that the obligation to pay the partial assignment of the Legal Claim is speculative, without recourse and contingent upon the successful resolution of the Legal Claim, and any successor claims and/or litigation arising out of the same facts, or arising out of the conduct of the Legal Claim. If no recovery arises from the Legal Claim, the Purchaser shall receive nothing. Seller further acknowledges that no debt to the Purchaser is created until there is a successful resolution in the Legal Claim.

 

## ARTICLE II: DISTRIBUTION OF CASH ADVANCE AND FEES

In consideration for the Advance Amount, at the time of settlement and/or resolution of the Seller's Legal Claim, the Purchaser will receive the Cash Advance plus the Monthly Fee, defined above. Seller acknowledges and understands that Purchaser will be paid in full prior to Seller receiving any funds from the proceeds. Seller agrees that if the subject Legal Claim is to be settled or otherwise satisfied via a Structured Settlement, the initial disbursement of proceeds due pursuant to the Structured Settlement and payable by the defendant or defendant's insurance carrier in the Legal Claim must be sufficient to pay and must be used to pay all monies due the Purchaser pursuant to this Agreement

## ARTICLE III: LOSER PAYS

If either party to this agreement brings litigation/arbitration against the other party, the non-prevailing party shall reimburse the prevailing party's costs and expenses (including reasonable legal fees) incurred by the prevailing party as it pertains to such litigation/arbitration. If Seller breaches any of the terms of this agreement or fails to make payments when due under this agreement, Seller shall pay all of the Purchasers costs & expenses, including reasonable legal fees, incurred by the Purchaser enforcing the terms of this agreement or collecting any payment due under this agreement.

## ARTICLE IV: PURCHASER'S RIGHT TO GIVE NOTICE

Only in the event that Seller is no longer represented by the law firm listed on Exhibit A will Purchaser have the right to send a notice of lien & security interest against Proceeds of the Legal Claim to any and all applicable insurance carriers or attorney(s) in order to protect Purchaser's interest in this matter. Regardless of whether Seller has legal representation, Seller irrevocably instructs Insurer to satisfy the partial assignment directly with Purchaser before releasing any settlement funds to Seller.

## ARTICLE V: RIGHT OF CANCELATION

SELLER MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OR FURTHER OBLIGATION WITHIN 120 BUSINESS HOURS (5 BUSINESS DAYS) OF THE EXECUTION OF THIS AGREEMENT, provided that the Seller must return the exact amount advanced to Seller simultaneously with the rescission. Seller may complete the cancellation by returning funds to Purchaser in form of (a) un-cashed check (b) return wire transfer or (c) bank draft sent to Purchaser's business address. NEW YORK CONSUMER'S RIGHT TO CANCELLATION: SELLER MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OF FURTHER OBLIGATION WITHIN 5 BUSINESS DAYS FROM THE DATE YOU RECEIVE FUNDING FROM PURCHASER.

## ARTICLE VI: BUYOUT OF CASH ADVANCE & MONTHLY FEES

The Seller will retain the option to buy-out the entire Cash Advance and Fees as set forth in Article II of this Agreement to Purchaser at any time prior to the Settlement Date and distribution of the Proceeds at his/her discretion applying the same Cash Advance & Monthly Fees as if the claim settled. Purchaser expressly reserves the right to assign this Cash Advance to any individual, corporation, or any entity recognized under United States or International law.

## ARTICLE VII: ENTIRE AGREEMENT & UNDERSTANDING

This Agreement constitutes the entire agreement between the parties and there are no representations, warranties, covenants or obligations except as set forth herein. Both Parties agree that a faxed copy of this document is considered original. This Agreement supersedes all prior and contemporaneous agreements, understandings, negotiations, or discussions, written or oral, of the parties hereto, relating to any transaction contemplated by this agreement, however, this Agreement does not supersede any previously executed Cash Advance Agreement(s) between Seller & Purchaser. The Seller acknowledges that he/she has relied on his/her own judgment in executing this document and has read it without duress. Seller acknowledges that the terms of this Agreement have been



drafted and negotiated by both the Seller and the Purchaser, and that all questions have been answered to the Seller's satisfaction.

## ARTICLE VIII: ARBITRATION AGREEMENT

By signing this Agreement Purchaser and Seller acknowledge and agree that if a dispute of any kind arises out of this Agreement or the application therefore or any document relating thereto, either Purchaser or Seller may elect to have that dispute resolved by binding arbitration as set forth in this Article. If either Party elects to proceed by arbitration, both parties will lose their rights to go to court to assert or defend their rights under this agreement. The Parties rights will instead be determined by one or more neutral arbitrators and not a judge or jury. Arbitration decisions are as enforceable as any court order and are subject to very limited review by a court. Any arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted. Parties agree that any such arbitration shall take place under the auspices of the American Arbitration Association ("AAA") in a location that is reasonably convenient to both parties. If we cannot agree on a location, the determination will be made by the American Arbitration Association. Parties agree that any arbitration may also be conducted by telephone or other electronic transmission. Parties agree that the procedural rules of the AAA and the substantive laws of the state of New York shall be applied in all events. In order to initiate an arbitration to resolve a claim, dispute or controversy Seller or Purchaser must notify the other party in writing (the "Demand"), which must: (a) briefly explain the dispute, (b) list the name, address and phone number of the both Parties, (c) specify the amount of money involved, (d) state the preferred hearing locale, and (e) state what you want to resolve the dispute. Party submitting Demand must send two copies of the demand to the AAA at 1633 Broadway, 10F, New York, NY 10019, Phone (585) 387-9450, along with the appropriate administrative fee/deposit.

## ARTICLE IX: SEVERABILITY

If a court finds any provision of this Agreement invalid or unenforceable as applied to any circumstance, the remainder of this agreement and the application of such provision to other persons or circumstance shall be interpreted so as best to effect the intent of the parties hereto. The parties further agree to replace any such void or unenforceable provision of this agreement with a valid and enforceable provision which will achieve, to the extent possible, the economic, business and other purposes of the void or unenforceable provision. This article is intended to provide a court of competent jurisdiction with the ability to 'blue pencil' this agreement so as to render it lawful, to the broadest extent possible, and is specifically applicable but not limited to the financial provisions of Article I

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by their duly authorized officers.

This agreement and its principle terms have been explained to me and all questions that I may have about this transaction have been answered. This has been done both in English and _____, the language I speak best. Before you sign this agreement, you should obtain the advice of your attorney. You are entitled to a fully executed copy of this agreement.

GLOBAL FINANCIAL CREDIT, LLC
(a Delaware Limited Liability Company)

Date: 26 Jan 2017

Wensley McKenney - Purchaser

Date: 26 Jan 2017

**Exhibit A**
**LETTER OF INSTRUCTION**

28 Jan 2017                                                                 Case ID:618897

Nicole F. De Vanon ,Esq.
Girardl | Keese
1126 Wilshire Boulevard
Los Angeles,CA,

Dear Nicole F. De Vanon,

I, ████████ hereby instruct Nicole F. De Vanon &/or Girardl | Keese, or any subsequent attorney(s) that may represent me, to place a consensual lien & security interest against any and all of the future settlement proceeds due to me from the legal claim(s)/case(s) in which you represent me. I irrevocably instruct you to protect and satisfy this consensual lien & security interest per the terms of the attached Cash Advance Agreement ('Agreement') which I have entered into with Global Financial Credit, LLC ('Global'). If any legal counsel representing me decides to challenge the terms of this Letter or the attached agreement, I instruct you to hold all funds in your trust account until the dispute has been resolved. If a lien is not legally allowable on my case, please understand I have nonetheless agreed to pay Global when my case settles. Failure to pay in a timely manner will result in significant financial harm to me. I also instruct you to provide Global with periodic updates on my case.

Should there be a dispute in the amount owed Global, I instruct you not to release any funds to me until the dispute is resolved. I instruct you not to share this letter or the attached agreement with anyone unless you are ordered to do so by a court of law. In the event that you no longer represent me, I instruct you to provide Global with applicable insurance and/or attorney information in order for them to protect their assignment/lien. I have read the Agreement and fully understand my obligations. If any checks sent in my name, I hereby grant you limited power of attorney to endorse and deposit my check into your trust account and pay Global in full before releasing any funds to me.

Sincerely

████████████████████

**ATTORNEY ACKNOWLEDGMENT**

I, Nicole F. De Vanon, acknowledge receipt of this Letter from my client. I will honor the instructions from my client. Should my representation with this client terminate, I will contact Global, without delay, and provide applicable insurance and/or new attorney information. Should there be a dispute in the amount due and owing, I will protect the funds that Global asserts is owed until resolution of the dispute. I represent that ████████ claim is still pending in active status and that presently there are no motions for a final disposition and that the claim is being vigorously defended. I will not share the attached agreement with any third party unless I am ordered to do so by a court of law. I represent that to the best of my knowledge ████████ has NOT previously received a cash advance (from anyone other than Global) against his/her legal claim similar to the attached Agreement. I represent that this advance is not being used to pay either fees or expenses of this case.



How should we contact your office for case updates?

Email.

Nicole F. De Vanon, Esq.                                Email is Preferred (or Fax)

→OR to provide new counsel information.

**Exhibit B**

**Advance & Repayment Terms Agreement**

Parties: 518897 is Seller and Global Financial Credit, LLC is the Purchaser.

| | | |
|---|---|---|
| Advance Amount to Seller | $3,000.00 Balance Due 3 Months | $3,932.26 |
| Balance Due at Execution | $3,595.00 Balance Due 6 Months | $4,309.61 |
| Monthly Fee | 2.99% Balance Due 12 Months | $5,171.41 |
| | Capped Due after 33 Months | $10,785.00 |

**Please follow these 2 easy steps:**

**1. Check ☑ One of the following Boxes below**

| MoneyGram. | DIRECT☐DEPOSIT | UPS |
|---|---|---|
| ☑ | ☐ | ☐ |
| SAME DAY CASH PICKUP!!! $35 | ACH Direct Deposit Not Wire. $25 | Delivery (M-F) |
| MAX- $5,000 | Funds post Next Business Day | ☐ Overnight $35 |
| (Fill in information Below) | (Fill in information Below) | ☐ Sat. Delivery $75 |
| | | ☐ Regular Mail Free |

**2. ATTENTION: Below MUST be filled out before release of money**

**\* Fees are deducted from the Final Approval Amount**

| | | | | |
|---|---|---|---|---|
| Social Security Number | ███████ | | DOB | ████ |
| Name: (Check issued to) | ███████ | | Phone | ████ |
| Street ████ | Apt █ | City ████ | State ████ | Zip ████ |

**MoneyGram.**

| | | | | | |
|---|---|---|---|---|---|
| Check one : | ☑ Driver Lic. | ☐ State ID. | ☐ Passport. | ☐ Gov't ID. | ☐ Alien ID. |
| Name on ID : | ████████ | | Number on ID : | ████████ | |
| State ID : | | State of MoneyGram Pickup : | ████ | Exp of ID : | ████ |

Terms: Balances due above include the $50 closing fee, which may be waived if the Seller signs a release at case closing. In the event that Seller receives a financial recovery from the legal claim as mentioned in the Non-Recourse Cash Advance Agreement and Seller receives funds prior to Purchaser's assignment & security interest being satisfied in full, Seller grants Purchaser the right to effect one or more ACH debit entries, as needed, from Seller's bank to satisfy outstanding assignment & security interest balance due Purchaser in full.

**In a sentence or two please describe how we've helped you in your time of need.**

*It's a blessing because I really need it and I'm really grateful for you guys helping me out. When I get mine you will get*

*yours thanks*

By signing below, I, Brandon Jamison, agree to the terms of the Exhibit B and understand that I am responsible for the information that I have provided on this form. Purchaser is not responsible for any problem in delivery or transfer of monies, as long as it follows the instructions provided by the Seller

████████████████

Global Financial Credit, LLC, by Wensley
McKenney - Purchaser

Page 6    26 Jan 2017



## Release

This agreement and mutual release ('agreement') is made between Global Financial Credit, LLC ('GLOBAL'), located at 199 Main Street, 8th Floor, White Plains, NY 10601, together with its successors and/or assigns (collectively 'GLOBAL'), and {0} ('Plaintiff'), together with his/her/their successors, heirs and/or assigns.

Whereas, under the terms of one or more prior agreement(s) (the 'Prior Agreements') Plaintiff assigned to GLOBAL an interest in the proceeds of Plaintiff's anticipated recovery, by settlement, judgment or otherwise (the 'Recovery'), on Plaintiff's case/claim/litigation which was then pending ('the Case');

Whereas, the Case has been tried, settled, or otherwise resolved, and GLOBAL is entitled to receive certain closing fees ('Closing Fees'), pursuant to the Prior Agreements.

Whereas, GLOBAL is willing to waive a portion of the Closing Fees in exchange for certain warranties and representations of the Plaintiff, which are more fully described and defined herein;

Now therefore, in full consideration of the mutual promises and agreements set forth herein, to include but not be limited to GLOBAL's waiver of a portion of the Closing Fees to which it is entitled pursuant to the Prior Agreements, the parties agree as follows:

1. Plaintiff and GLOBAL hereby mutually release, hold harmless, covenant not to sue or participate in any suit, and forever discharge each other collectively and individually, including their respective affiliates, legal representatives, agents, officers, owners, directors, predecessors, administrators, personal representatives, heirs, successors and assigns of and from any and all disputes, which shall include all actions, causes of action, suits, debts, sums of money, covenants, contracts, damages, judgments, and demands, of every nature whatsoever, whether known or unknown, in law or equity, which they ever had since the beginning of time, now have, or hereafter can, shall or may have. 'Any and all disputes' for purpose of this agreement is intended to be given the broadest possible interpretation, and shall include but not be limited to any claims Plaintiff may claim arising pursuant to Plaintiff's purported inclusion in a certified class action matter.

2. In consideration for the mutual promises and the general releases each party is providing herein, GLOBAL agrees it will waive some amount Closing Fees in order to expedite conclusion of Plaintiff's Recovery and finalize Plaintiff's obligations pursuant to the Prior Agreements in an expedited fashion.

3. Plaintiff represents and warrants that he/she has had the full opportunity to consult with counsel and review with counsel the within agreement, and as a result fully and completely understands its terms and consequences.

4. This agreement for accord and satisfaction, settlement agreement and/or general release shall be governed, interpreted, and enforced by, and in accordance with, the laws of the state of New York, without giving effect to the conflict of laws principles thereof.

5. The date on which GLOBAL waives of a portion of the Closing Fees pursuant to this Agreement, as evidenced by GLOBAL's acceptance of final payment from Plaintiff pursuant to the Prior Agreements, shall constitute the effective date of this Agreement. Any complaints, claims and/or causes of action related to the Prior Agreements are moot and are barred by the doctrine of accord and satisfaction. Accordingly, this agreement supersedes all prior agreements with respect to the subject matter hereof and the releases contained herein.

IN WITNESS WHEREOF, the Parties have affixed their signatures.

Global Financial Credit, LLC, by Wensley McKenney
Ref CaseID: 518897

From: Kevin Confoy    Fax: (866) 898-7014    To:    Fax: (213) 481-1864    Page 2 of 2 03/23/2017 9:52 AM



A Leader in Litigation Financing

199 Main St; 8th Floor
White Plains, NY 10601
Tax ID: 13-4214889

www.glofin.com

\* Surgery Funding          \* Living Expenses          \* Trial Expenses

# PAYOFF AMOUNT

## Security Interest and Assignment Satisfaction

3/23/2017

Nicole F. De Vanon
Girardi | Keese
1126 Wilshire Boulevard
Los Angeles, CA 90017

*Fax:*   *(213) 481-1564*

**Ref** ███████████          **Case ID:** ███████

Dear Nicole F. De Vanon,

This letter is to inform you of the current Lien Payoff Amount due to Global Financial Credit, LLC (tax ID 13-4214889) against the above referenced plaintiff.

The final payoff amount which is shown below is good through the date specified. If a check is mailed after that date, then please use the per diem figure below to calculate the final amount due or call me at the number listed below.

## Payoff due before:          4/20/2017          $6,492.00

## Payoff per day after:          4/20/2017          $6.30

Please mail our check to:

Global Financial Credit
P.O. Box 392455
Pittsburgh, PA 15251-9455

Sincerely,

*Kevin Confoy*
Finance Manager
kevin@glofin.com
(866) 709-1100 Ext. 118

## *Financing Justice*

fax: 888.898.4912

RECEIVED TIME  MAR. 23.  5:50AM



vin Confoy      Fax: (866) 890-7014          To:              Fax: (213) 481-1554       Page 1 of 2 03/23/2017 8:52 AM

# Facsimile Cover Sheet

**To:**
**Company:**
**Phone:**
**Fax:** (213) 481-1554

**From:** Kevin Confoy
**Company:** Global Financial Credit, LLC
**Phone:** (888) 841-1331 * 118
**Fax:** (866) 890-7014

**Date:** 03/23/2017
**Pages including this cover page:** 2

**Comments:**

Updated Global payoff on ██████████

ParkSettlement NFL Fund 1
1025 Westchester Avenue
Suite 313
White Plains, NY 10604

*29*
March 18, 2017

Mr. Fred D. Heather
Glaser Weil LLP
425 California Street
San Francisco, CA 94104

Re:  ("Client")

Attached are the documents that ParkSettlement NFL Fund 1 (hereinafter "ParkSettlement") requires to be reviewed and executed in order to enter into a transaction with the Client. Please return all pages.

Please note that Exhibit A requires an attorney's signature (page 2), and all items below must be returned to PARKSETTLEMENT prior to funding;

1. *Sale and Purchase Agreement* PARKSETTLEMENT requires Client's initials in the bottom right corner, Client's notarized signature and Client's Power of Attorney notarized signature

1. *Exhibit 2 Irrevocable Directive and Authorization*. PARKSETTLEMENT requires Client's notarized signature and Client's Power of Attorney notarized signature

2. *Wire instructions* require Client's bank info and Client's notarized signature. *** PLEASE NOTE WE CANNOT WIRE OR ACH FUNDS TO A PREPAID DEBIT CARD OR A 3RD PARTY

3. Photograph of a *voided check* where funds will be deposited to be sent to originator PARKSETTLEMENT.

4. *Exhibit A Attorney Acknowledgement and Notice of Assignment* needs to be executed by the Client's Attorney. If there is more than one Attorney, please fill out Exhibit C.

PARKSETTLEMENT must receive proof of identification (i.e. driver's license, passport, etc.) for the Client prior to funding

 Initial here

PARKSETTLEMENT SHALL NOT BE BOUND BY THE PURCHASE & SALE, ASSIGNMENT &
EQUITABLE LIEN AGREEMENT UNTIL IT IS FULLY EXECUTED BY YOUR CLIENT TOGETHER
WITH THE ATTORNEY ACKNOWLEDGMENT, AND PARKSETTLEMENT MAY CANCEL THIS
TRANSACTION WITHOUT LIABILITY AT ANY TIME PRIOR TO PROVIDING FUNDING

## SALES AND PURCHASE AGREEMENT

(Non-Recourse Finance Transaction)

This Sales and Purchase Agreement (the "Agreement") is entered into this March 15, 2017 by
and between █████████ NFL Player ID Number █████
█████████████████ and his agents, successors in interest, heirs, executors, representatives
and assigns (collectively, the "Seller") and ParkSettlement NFL Fund 1, a limited liability
company organized under the laws of New York, with its principal place of business located at
1025 Westchester Avenue, Suite 311, White Plains, NY 10604, and its representatives,
successors and assigns (collectively, the "Purchaser" or "ParkSettlement").

WHEREAS, on the United States District Court for the Eastern District of Pennsylvania entered
a Final Order and Judgment approving the settlement in the matter of *In re National Football
League Players' Concussion Injury Litigation, No. 2:12-md-02323* (the "Settlement"), which
Final Order and Judgment remains under appeal;

WHEREAS, █████████ is an eligible claimant in the Settlement and has an anticipated financial
award in the amount of $600,000.00, (the "Estimated Award"), which shall be paid upon the
resolution of any remaining appeals to the Final Order and Judgment;

WHEREAS, Seller has agreed to assign and sell, and, pursuant to the terms of this Agreement,
Purchaser has agreed to acquire, all rights, title, benefits, and interests of Seller in and to a
portion of the Estimated Award equal to: $114,000.00 (the "Purchased Asset"), which
compounds at a rate of 1.65% per month until the Purchased Asset (as increased over time) has
been paid to the Purchaser in full. The amount of the Purchased Asset will increase over time as
set forth in Section 2 of this Agreement;

WHEREAS, the parties agree that this sale is without recourse against the Seller. This means that
in the event the Purchaser does not receive the full Purchased Asset as set forth in this
Agreement, and except if the reason Purchaser does not receive the full Purchased Asset is due to
a breach of this Agreement by the Seller, the Seller shall have no personal obligation to the
Purchaser to pay any portion of the Purchased Asset not received by the █████

2

WHEREAS, the parties intend for the transactions contemplated herein to constitute to a valid sale of the Purchased Asset, and not a loan.

NOW, THEREFORE, in consideration of the mutual covenants, representations and warranties contained in this Agreement, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Purchaser and Seller hereby agree as follows:

1. Disclosure of Fees and Expenses. Seller has requested that Purchaser purchase a portion of Seller's Estimated Award for the Net Purchase Price (as defined below) and Purchaser and Seller agree that the following is a complete and accurate disclosure of all fees and expenses associated with the transactions contemplated in this Agreement:

| | |
|---|---|
| Estimated Award: | $600,000.00 |
| Purchase Price *(this is the amount being paid to Seller in exchange for the PARKSETTLEMENT Purchase Amount, prior to the deduction of any fees)*: | $114,000.00 |
| Originator Fee: | $10,097.00 |
| Processing Fee: | $3,420.00 |
| Pay off of Previous Advance (Exhibit D): | $40,000.00 |
| Other Fees (Wire) | $30.00 |
| Total Purchase Price Paid to Seller (the "Net Purchase Price"): | $60,453.00 |

3

2.  **Amount of Purchased Asset.** The amount of the Purchased Asset will increase over time as set forth in this Section 2.

*Schedule will commence [handwritten]*

| | | | |
|---|---|---|---|
| 1 | 09/15/2017 | $125,761.92 | |
| 2 | 10/15/2017 | $127,836.99 | |
| 3 | 11/15/2017 | $129,946.30 | |
| 4 | 12/15/2017 | $132,090.41 | |
| 5 | 01/15/2018 | $134,269.90 | |
| 6 | 02/15/2018 | $136,485.36 | |
| 7 | 03/15/2018 | $138,737.37 | |
| 8 | 04/15/2018 | $141,026.53 | |
| 9 | 05/15/2018 | $143,353.47 | |
| 10 | 06/15/2018 | $145,718.80 | |
| 11 | 07/15/2018 | $148,123.16 | |
| 12 | 08/15/2018 | $150,567.20 | |
| 13 | 09/15/2018 | $153,051.55 | |
| 14 | 10/15/2018 | $155,576.91 | |
| 15 | 11/15/2018 | $158,143.92 | |
| 16 | 12/15/2018 | $160,753.30 | |
| 17 | 01/15/2019 | $163,405.73 | |
| 18 | 02/15/2019 | $166,101.92 | |
| 19 | 03/15/2019 | $168,842.60 | |

\*\* Fees continue to accrue at a rate of 1.65% compounded monthly after this date until PARKSETTLEMENT is paid in full. There is a minimum of the first 6 months of interest; thereafter, it is in 1 month increments.

2.1  **Assignment, Consideration, Right of First Refusal and Payment of Purchased Asset.** Seller hereby agrees to sell and assign to Purchaser all of his rights, title and interests in and to the Purchased Asset and any future payments made in satisfaction of the Purchased Asset. Seller furthers agrees and represents that his interests in the Purchased Asset that are being assigned and sold to Purchaser are free and clear of any claim, charge, easement, encumbrance, covenant, security interest, lien, option, pledge, rights of others, or restriction or adverse interests imposed

4



by law, equity, contract or otherwise (collectively "Encumbrances") in favor of, or obtained by third parties other than those specially set forth in this Agreement.

2.2.   In consideration for the purchase of the Purchased Asset, Purchaser agrees to pay Seller the Net Purchase Price.

2.3.   Seller agrees that Purchaser may deduct the fees set forth in Section 1 of this Agreement in the amount of $13,547.00.

2.4.   Seller hereby grants to the Purchaser a right of first refusal to purchase any or all-remaining amounts in respect of the Estimated Award. Seller shall give Purchaser written notice of all other offers to purchase a portion of the Estimated Award, and Purchaser may accept or decline such offer within 45 days following receipt of such notice.  In the event the Seller seeks to or obtains any funding in respect to the Estimated Award from a source other than the Purchaser, such event shall be deemed to be an event of default under Section 4 hereof. In the event that Seller should obtain any such financing (after the Purchaser declines to purchase any such amount), all amounts due under this Agreement in respect to the Purchased Asset shall be paid in full before any such financing is obtained.

2.5.   Payment by Seller to Purchaser of the Purchased Asset shall be made in accordance and pursuant to the procedures set forth in Section 5.

2.6.   The amount of the Purchased Asset payable to Purchaser shall be as set forth in Section 2 herein.

3.   General Terms of the Purchase and Sale.

3.1.   Absolute Sale. Seller absolutely assigns, conveys, sells, sets over, transfers, and warrants to Purchaser all rights, title, benefits, and interests of Seller in and to:

3.1.1.   The Purchased Asset, including without limitation, all rights to payment of or on account of the Purchased Asset, and all proceeds of the Estimated Award until Seller has fully delivered the Purchased Asset; and

5



3.1.2. All rights of Seller to ask for, demand, sue for, collect, receive, and enforce payment of the Estimated Award and to enforce all other covenants and obligations in connection with the Estimated Award, and the rights and remedies of Seller, in respect of the Estimated Award, until Purchaser has received the entire Purchased Asset, in each instance free and clear of all claims, liens, interests and encumbrances.

3.2. <u>Payment of Net Purchase Price</u>. As consideration for Seller's assignment and sale of the Purchased Asset and other rights transferred herein to Purchaser, Purchaser hereby agrees to pay to Seller, within three (3) business days after the date of this Agreement, the Net Purchase Price by wire transfer pursuant to the wiring instructions for Seller.

3.3. <u>Distribution of Purchased Asset to Purchaser</u>. No later than fifteen (15) business days after Seller's receipt (or receipt by Seller's attorney on behalf of Seller) of any portion of the Estimated Award, Seller shall distribute, or cause to be distributed, all such collections and receipts to Purchaser, prior to paying any expenses of Seller or making any other distributions of any nature whatsoever, until Purchaser has received the Purchased Asset in full. Until Purchaser has received in full the entire amount of the Purchased Asset in accordance with the terms of this Agreement, the Estimated Award shall be held by Seller or Seller's attorney on behalf of Seller, in trust for Purchaser.

3.4. <u>True Sale</u>. Seller and Purchaser intend and agree that the transactions contemplated in this Agreement shall constitute a true sale and absolute transfer of the Purchased Asset to Purchaser, thereby providing Purchaser with the full risks and benefits of ownership of the Purchased Asset, and each of Seller and Purchaser agrees that this transaction shall be reflected on their respective books and records in a manner consistent with this intent and agreement.

3.5. <u>Re-characterization of Transaction</u>. Notwithstanding that Seller and Purchaser intend that this transaction be an asset sale, in the event that such sale and assignment ever is characterized as a loan or other financial accommodation other than an asset sale, or that such sale shall for any reason be ineffective or unenforceable as such, as determined in a judicial, administrative or other proceeding, Seller shall be deemed to have granted to Purchaser a first-priority security interest within the meaning of Article 9 of the Uniform Commercial Code in effect as of the date hereof in the State of New York (the "<u>UCC</u>") in any of Seller's rights, title, benefits, and interests in and to the Estimated Award and all proceeds thereof in order to secure Purchaser's advance of the Net Purchase Price and Seller's obligation to deliver the Purchased Asset to Purchaser. Purchaser may, at its option and in addition to all other rights provided to Purchaser

6

in this Agreement, and without Seller's authorization, signature or consent, file financing statements (including continuations and amendments thereto) under the UCC, to perfect Purchaser's rights under this of this Agreement rights in and to the Purchased Asset.

3.6.    Representation by Counsel. Seller is represented by an attorney of his own choosing, in connection with the transactions contemplated herein and his interests in the Estimated Award. Seller has reviewed this Agreement and the terms of the transactions contained herein with his attorney.

3.7.    Delivery of Purchased Asset.

3.7.1. Seller agrees that it shall deliver to Purchaser the Purchased Asset as set forth in Section 2 of this Agreement, and that such payment shall be made to Purchaser from any funds received in full or in partial receipt of the Estimated Award, regardless of the source of those funds, before any payment is made from the Estimated Award to the Seller, or any other person except the Purchaser.

3.7.2. Seller shall irrevocably direct its attorney and/or representative responsible for the disbursement of the Seller's Estimated Award to deliver to Purchaser the Purchased Asset prior to Seller receiving any payment from the Estimated Award in accordance with the terms of this Agreement.

3.7.3. Whether the Purchased Asset is received in a lump sum or in multiple payments, Purchaser's right to receive the full Purchased Asset shall be in priority and senior to Seller's, or any other third parties', right to receive any portion of the Estimated Award.

3.8.    Limitations on Purchaser's Recourse. If the Estimated Award amount is less than anticipated, and is insufficient to allow Seller to deliver to Purchaser the full Purchased Asset, then the amount of the Purchased Asset shall be reduced to the Estimated Award with no recourse to Seller for any remaining balance. For the avoidance of doubt, if Seller receives no amount of the Estimated Award then Seller shall owe nothing to Purchaser, and shall have no obligation to deliver the Purchased Asset to Purchaser.

3.9.    Authorization to Undertake Background and Credit Reports. Seller hereby authorizes and gives Purchaser permission, from time-to-time, to conduct a comprehensive review of Seller's background, including but not limited to obtaining consumer credit reports and information originator reports about Seller. Seller understands that the reports may include information, such as: credit ratings, verification of social security number; current and previous residences;

7

employment history; education; any lawsuits or criminal history; birth records; motor vehicle records; and information from public records.

4.    Seller's Representation and Warranties. Seller hereby represents and warrants to Purchaser, as of the date hereof, and until the Purchase Price has been delivered in full to Purchaser, the following:

4.1.  Absolute Ownership. Seller owns all rights, title, and interests in the Estimated Award and acknowledges that it is selling and assigning the Purchased Asset to the Purchaser. Seller is legally entitled to the Estimated Award, and owns the Estimated Award free and clear of all Encumbrances.

4.2.  No Prior Transactions. Seller has the unrestricted right to assign the Purchased Asset to Purchaser, and Seller has not previously sold or assigned the Estimated Award, in whole or in part, to any other party. Upon Purchaser's payment in full to Seller of the Net Purchase Price, Purchaser shall own all of the Purchased Asset free and clear of all Encumbrances or other adverse interests of any nature whatsoever.

4.3.  Competency to Contract. Seller has the legal capacity and mental competency to understand this Agreement and its terms and effects, to contract, to execute this Agreement and to perform all duties set forth within the terms of this Agreement and is doing so voluntarily and of his own free will.

4.4.  No Conflicts. Seller is under no contractual obligations or other restrictions that are or could be adverse to Purchaser's interests with regard to the terms of this Agreement and Seller's assignment and sale of the Purchased Asset. Seller warrants that the execution, delivery and performance of this Agreement, and the consummation of the transactions contemplated in this Agreement, does not violate any law, rule, regulation, order, other agreement, or other instrument to which Seller is a party or is otherwise bound, including the Settlement.

4.5.  No Bankruptcy. There are no bankruptcy or insolvency proceedings in progress or in prospect, either personally or with regard to any entity owned by Seller, in whole or in part, that could affect the Seller's right to receive the Estimated Award.

8

4.6.  No Proceedings. Seller is not the subject of or party to any legal proceeding, including one that could in any way adversely affect the terms of this Agreement, the Estimated Award, and the Purchaser's right, title, or interest in and to the Purchased Asset. No portion of the Estimated Award has been or is in jeopardy of being subject to a levy or any type of other adverse interest.

4.7.  Accuracy of information. The information Seller has provided to Purchaser contained in this Agreement, as well as any information given to Purchaser by Seller prior to the date of this Agreement is true, accurate and complete in all respects. Seller acknowledges Purchaser has relied and will continue to rely on this information in acquiring, protecting and otherwise dealing with the Purchased Asset.

4.8.  No Acts or Omissions. Seller has not engaged in any acts or conduct, or made any omissions that could potentially result in Purchaser receiving less than the full amount of the Purchased Asset, and that there are no other parties that hold a similar interest in the Estimated Award.

4.9.  Payment of Taxes. Seller has paid all federal, state and local taxes due through the date this Agreement is to be executed, or, has made adequate and acceptable terms for any tax payment due with the appropriate tax agency responsible for accepting such payment, and in no event has or will Seller permit all portion of the Purchased Asset to be used for the satisfaction of any such obligation.

4.10.  No Tax Liens; Other Obligations. There are no outstanding: (1) tax liens or judgments against Seller or the Estimated Award, (ii) no obligations owed by Seller to any county, city or state government entity; or (iii) any other liens owed to the United States Government or other person or entity for any social service or other benefit that Seller has received and is obligated to pay; including but not limited to child support and/or alimony.

4.11.  Legally Binding Agreement. Seller had read this entire Agreement and possesses the mental capacity to understand the terms set forth in this Agreement. Seller further understands that once he signs this Agreement it will become a legally binding contract pursuant to which Seller will have forever assigned and sold a portion of the Estimated Award received as financial recovery from their legal claim in connection with the *In Re: National Football League Players' Concussion Injury Litigation No. 2:12-md-02323-AB* litigation.

9

4.12. Expenses of Transaction. Seller understands that in exchange for receiving the Net Purchase Price now from the Purchaser in connection with the transactions contemplated in this Agreement, instead of waiting to receive the Estimated Award, there is a cost to be paid by Seller. Seller further acknowledges that the financial costs associated with assigning and selling a portion of the Estimated Award is accurately summarized in Section 1. For the avoidance of doubt, Seller understands that he is accepting $60,453.00 as the purchase price for the sale of $114,000.00, and that the difference between these two amounts is $53,547.00, which amount will continue to increase until the Purchased Asset has been Delivered to the Purchaser in full.

4.13. Independent Judgment. Seller has carefully read this Agreement in its entirety; (ii) Seller has had an adequate opportunity to consider this Agreement and to consult with independent counsel of his choice regarding its terms; (iii) Seller understands all of the terms hereof; (iv) Seller has relied wholly upon his individual judgment, belief and knowledge of the nature, extent and effect of the terms contained in the Agreement, including the summary of financial terms contained herein; (v) Seller voluntarily assents to all of the terms and conditions contained herein; and (vi) Seller is authorized to sign this Agreement.

4.14 None of the representations or warranties made by Seller contains any untrue statement of a material fact or omits to state any material fact necessary in order to make the statements contained herein or therein, in the light of the circumstances under which made, not misleading.

5. Covenants of Seller. Seller covenants to Purchaser as follows:

5.1. Collection. Seller shall use its best efforts to collect the Estimated Award and take all steps to make it available to the Purchaser for delivery of the Purchased Asset. Without limiting all other provision herein, within 15 days following Seller's or its attorney's receipt of the Estimated Award or all portions thereof, Seller or its attorney shall pay to the Purchaser the Purchased Asset (as calculated in accordance with Section 2) until paid in full.

5.2. No Reduction or Modification. Seller shall not negotiate or enter into any agreement to reduce or modify the Estimated Award.

5.3. Notification of Changes. Seller shall immediately notify the Purchaser terms of the Estimated Award as it applies to the Seller.



10

5.4.  Obligation to Update. Upon request of the Purchaser, Seller shall provide Purchaser with updates, including status and documentation changes, if any, in respect of the litigation, Estimated Award, or the Purchased Asset.

5.5.  Additional Documents and Actions. Seller shall execute such additional documents and take such further action as may be reasonably necessary or desirable for the Purchaser to perfect any and all interests of the Purchaser in respect of the Purchased Asset;

5.6.  Tax Liens. If the Seller becomes a party to any tax lien dispute with any governmental agency or incurs any judgments against it, Seller shall immediately notify Purchaser of same.

5.7.  Payment of Taxes. Seller shall promptly pay all federal, state or all other taxes relating to him or his properties.

5.8.  No 1099. Seller will not issue any Form 1099 to Purchaser in connection with the Purchased Asset.

5.9.  Change In Counsel. Seller shall immediately notify Purchaser in writing if there is any change in his/her legal or other representation.

5.10.  Other Advances Not Permitted. Seller acknowledges that Seller may not solicit or accept funding or advances against the Estimated Award from any other source or funding companies unless and until the entire Purchased Asset is delivered to Purchaser.

5.11.  Notice of Assignment to Seller's Attorney. Seller shall request that the attorney representing Seller in connection with the litigation review and sign the Attorney Acknowledgement and Notice of Assignment attached hereto as Exhibit A. If Seller changes his attorney subsequent to the execution of this Agreement, Seller shall have a continuing obligation to obtain an Attorney Acknowledgement and Notice of Assignment from the newly retained attorney or attorneys. Failure to do so with all subsequent attorneys shall be deemed an immediate default hereunder and the Purchased Asset shall become immediately due and payable.

11

5.12. Case Updates. In the event that the Seller or his attorney fail to provide updates and or relevant information regarding Seller's claim for the Estimated Award pursuant to the settlement of the litigation, Purchaser shall be entitled to contact the Seller's attorney directly to inquire about the status of the settlement and timing of payment of the Estimated Award.

6.   Closing Conditions. The payment of the Purchase Price to the Seller is contingent upon the occurrence of all of the following conditions:

6.1.   Accuracy of Representations and Warranties. The accuracy of Seller's representations and warranties contained herein.

6.2.   Documents. Seller shall have obtained the signature of his attorney on Exhibit A, and executed and provided his attorney with an executed copy of Exhibit B.

6.3.   Disclosures and Acknowledgments. Seller shall have individually reviewed each provision of this Agreement, and initialed each page to certify that he has read an understood all provisions on that page.

7.   Breaches by Seller.

7.1.   The occurrence of any of the events listed below shall constitute a breach of this Agreement:

7.1.1.   Seller breaches any representation or warranty contained in this Agreement;

7.1.2.   Seller fails to satisfy any covenant contained in this Agreement;

7.1.3.   Seller files for bankruptcy;

7.1.4.   Seller incurs any federal, state or other tax lien or judgment;

7.1.5.   Seller fails to stay current for any federal, state or other tax payment due;



12

7.1.6.  Seller becomes the subject of a civil lien and/or civil judgment relating to him or his properties;

7.1.7.  Seller engages in any other action or behavior that could encumber the Seller's Estimated Award or the Purchased Asset; or

7.1.8.  Seller fails to immediately notify Purchaser of receipt of any partial payment of the Estimated Award and fails to pay that amount to Purchaser (or the balance of any amount still due for the Purchased Asset) in accordance with the terms of this Agreement.

7.2.  Cure Period. If a breach occurs with regard to any representation or warranty set forth herein of which Purchaser becomes aware, Purchaser agrees to give Seller notice of such breach and Seller shall have a five (5) day period to cure any such breach.

7.3.  Right to Injunction. Purchaser and Seller agree that in addition to any other legal rights and remedies allowable to Purchaser for any breach by Seller, Purchaser shall be entitled to enforce Seller's obligations hereunder by court injunction, or court ordered affirmative action, which injunction or ordered action may also serve to restrain a future breach of this Agreement if there is reasonable ground to believe that such a breath is threatened.

7.4.  Termination by Purchaser. If Seller breaches this Agreement, Purchaser may terminate its obligations under this Agreement and shall be entitled to the immediate delivery in full from Seller of the Purchased Asset, as well as all costs, fees and expenses incurred by Purchaser in connection with enforcing its rights under this Agreement. For avoidance of doubt, the notice and cure periods applicable to breaches are solely set forth in Section 7.2 above.

7.5.  Fees and Expenses. Seller shall pay to Purchaser all costs and expenses incurred by Purchaser (including third party fees, reasonable attorney's fees and court costs) to enforce its rights under the terms of this Agreement.

8.  Miscellaneous Provisions

8.1.  Notice. ANY required notice set forth herein by either party shall be in writing and (i) delivered by overnight courier, (ii) certified mail, or (iii) transmitted by facsimile and confirmed

13

by a similar mailed writing, to the following address (email is specifically excluded as a proper form of notice):

To Purchaser:
ParkSettlement NFL Fund 1
1025 Westchester Avenue
Suite 311
White Plains, NY 10604

To Seller:



8.2.  **Right to Claim Not Transferred; Use of Funds.** The parties to this Agreement acknowledge the following: (i) the Purchaser is not acquiring the Seller's right to pursue a claim in connection with the underlying litigation resulting in the settlement; (ii) the Net Purchase Price for the Purchased Asset will be used for immediate economic and personal necessities or other purposes that Seller deems important; (iii) the Seller or other class representative has already made a claim in the underlying litigation, and that, pending final resolution of any remaining appeals, the Seller's claim in the underlying litigation has been settled; and (iv) Seller and Purchaser acknowledge Purchaser will in no way be involved in or have any influence over the decisions made by Seller and his attorney in connection with the Seller's claim, and that the right to make those decisions remains solely with Seller and Seller's attorney.

8.3.  **Bankruptcy.** Seller is not presently, nor intends to be, a party to any action or proceeding for relief under any federal or state bankruptcy or insolvency law or appointment of a trustee or receiver for all or any portion of Seller's assets including the Estimated Award. In the event Seller commences or has commenced against it, any case, or other proceeding, pursuant to any bankruptcy, insolvency or similar law prior to full delivery of the Purchased Asset, Seller shall cause the Purchased Asset amount to be categorized as an asset of Purchaser and not of Seller. In no event shall Seller permit the Purchased Asset to be described as a debt obligation of Seller in any such proceeding, except as may be required by law.

14

8.4. <u>Pledge Rights</u>. Seller relinquishes any rights to sell, assign, pledge or transfer any rights in the Purchased Asset that it is entitled to from the settlement other than to Purchaser.

8.5. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument. A faxed signature of this Agreement shall be effective to bind such party to the terms hereof, but an original of such signature shall be promptly forwarded to the other party.

8.6. <u>Integration</u>. This Agreement constitutes the complete agreement and understanding of the parties with respect to the subject matter hereof, supersedes any prior agreements or understandings of the parties (whether oral or written) with respect to the subject matter hereof and may be amended only in a writing signed by the parties.

8.7. <u>Enforceability of Agreement</u>. If any provision of this Agreement is held to be illegal, void or unenforceable, such provision shall be of no force or effect. However, the illegality or unenforceability of such provision shall have no effect upon, and shall not impair the legality or enforceability of, any other provision of this Agreement.

8.8. <u>Construction</u>. For purposes of construction, this Agreement shall be deemed to have been jointly drafted by the respective parties and their counsel, and the rule of construction of contracts that ambiguities are construed against the drafting party shall not be applied against any person.

8.9. <u>Governing Law</u>. This Agreement shall be construed in accordance with and be governed by the laws of the State of New York without regard to conflicts of laws principles.

8.10. <u>Successors and Assigns</u>. This Agreement is binding upon, and, shall inure to the benefit of the parties, and their respective heirs, executors, administrators, successors and assigns.

8.11. <u>Additional Documents</u>. As a condition to Purchaser's obligations hereunder, Seller has provided Purchaser with executed copies of the following documents: (1) Irrevocable Authorization and Directive, attached hereto as <u>Exhibit A</u>; (2) Attorney Acknowledgement and

15

Notice of Assignment, as Exhibit B; and (3) a letter from Seller's primary physician attesting to Seller's mental competency.

8.12. Indemnification. Seller will indemnify Purchaser for any and all claims, losses, liabilities, obligations, damages, penalties, judgments, suits, causes of action, and related costs and expenses of any nature (including reasonable attorney's fees and courts costs) suffered by Purchaser arising from or relating to Seller's breach of any representation, warranty, covenant or other obligation contained herein or any claim asserted against Purchaser relating to this Agreement, except for claims asserted against Purchaser resulting directly from Purchaser's gross negligence or willful misconduct).

8.13. No Assignment. To protect PARKSETTLEMENT against the possibility of disputes with third parties, I will not hereafter sell, assign or grant any interest in or to the Proceeds to anyone nor permit the attachment of any lien in, to or upon the Proceeds. ANY assignment, sale, conveyance, hypothecation, encumbrance, security interest or lien, or attempt to do any of the foregoing by me without PARKSETTLEMENT's express written permission in violation of this Section 8.13 shall be wholly void and of no effect.

8.14. Survival. Seller's obligation to indemnify the Purchaser shall survive the termination of this Agreement.

8.15. Execution. This Agreement has been duly executed by the Seller and Purchaser and represents their respective legal, valid and binding obligations, enforceable in accordance with its terms for the benefit of the parties hereto and their respective successors-in-interest, heirs, executors, representatives, successors and assigns.

8.16. Assignment. Purchaser and any party to whom Purchaser assigns this Agreement may assign its rights, title, and interests in and to this Agreement including the Purchased Asset without any further authorization or approval from Seller. Furthermore:

8.16.1. If Purchaser assigns its rights to a third party, Purchaser shall not be responsible to Seller and Seller may look solely to such third party for performance of this Agreement.

16

8.16.2.   Upon request of Purchaser or assignee of Purchaser, Seller shall execute and deliver any documents, as either party reasonably requires, for performance of this Agreement.

8.16.3.   In no event shall Seller be permitted to assign its rights and obligations under this Agreement.

8.17.   No Originators.  Seller has not engaged any originator in connection with this Agreement other than the one who submitted an intake sheet ("Originator"), who is representing me pursuant to a separate originator agreement. I acknowledge and agree that Purchaser may (but shall not be obligated to): (i) pay to Originator any fees due under such originator agreement ("Originator Fee"); and (ii) deduct such Originator Fee from the Purchase Price. I agree to indemnify Purchaser for any and all loss or damage, which Purchaser sustains by reason of my use of any originator, including but not limited to attorneys' fees and cost incurred by Purchaser.

8.18.   Rescission.  Seller may rescind this Agreement within five (5) business days following the Seller's execution of this Agreement, without penalty or further obligation, by providing written notice to the Purchaser at the address provided in this Agreement by no later than 5:00 p.m. EDT on the 5th business day.

8.19.   Dispute Resolution.  Notwithstanding anything to the contrary herein, Purchaser and Seller unconditionally agree that any dispute, controversy or claim arising out of, or relating in any way to this purchase and sale Agreement, including without limitation, any dispute concerning the construction, validity, interpretation, enforceability, alleged breach by either party, and/or any other term set forth in the Agreement shall be exclusively resolved by binding arbitration. Such arbitration shall be initiated by Purchaser or Seller submitting the dispute to the American Arbitration Association within 30 days of written notice to the other party. Within thirty (30) days of notice of a dispute, Purchaser and Seller agree to meet at an agreed upon location in NY to attempt to resolve the dispute in good faith without the necessity of moving forward with binding Arbitration though the American Arbitration Association. Should the dispute not be resolved between the parties within 60 days of the above referenced meeting, either party may seek remedies exclusively through a binding arbitration request to the American Arbitration Association and/or one of their representatives. Both parties to this Agreement agree that if arbitration becomes necessary, the process and procedure including naming of the arbitrator's shall be governed by American Arbitration Association's suggested guidelines and/or procedures.

17

The final decision made through the Arbitration shall be binding on both parties. Either Purchaser or Seller may apply (in the event of an urgent issue) to a New York State or federal court for interim or emergency relief, including without limitation a proceeding to compel arbitration as set forth above. ANY arbitration shall be conducted within the jurisdiction of the State of New York. The laws of the State of New York shall be applied in any arbitration proceeding, without regard to principles of conflict of laws. It is the intent of the parties that, barring extraordinary circumstances, arbitration proceedings will be concluded within one hundred and twenty 120 days from the date the arbitrator/s are appointed. The arbitrators may extend this time limit in the interests of justice. Except as may be required by law, neither party nor its representatives may disclose the existence, content, or results of any arbitration hereunder without the express prior written consent of both Purchaser and Seller. Both Purchaser and Seller shall exchange a copy of any exhibits intended for use at the arbitration hearing and shall identify each witness who will testify at the arbitration, with a summary of the anticipated testimony of such witness to later than ten (10) days before the arbitration hearing. The arbitrator shall award interest from the time of the dispute/breach to the time of the arbitration award at the rate of interest that, if this transaction was re-characterized as a loan, is equal to the maximum rate permitted by law in the State of New York. The cost of the arbitration proceeding shall be borne by the unsuccessful party to the arbitration. The arbitrator shall issue his or her decision based on sound legal principles.

8.20. Enforcement of Arbitration Decision. It is specifically understood and agreed to by the parties that either of them may enforce any award rendered pursuant to the arbitration provisions of this section by moving to compel the award in the appropriate New York court. Further, the parties agree that the arbitrator shall have authority to grant injunctive or other forms of equitable relief to either party.

8.21. Amendments/Modifications Binding; No Beneficiaries. All amendments to, or modifications of, this Agreement shall be binding upon the parties, despite any lack of separate or additional consideration therefore, so long as such amendments or modifications shall be in writing and signed by Seller and Purchaser. The parties acknowledge and agree that, except for assignee of Purchaser, which is specifically intended to be third-party beneficiaries under the terms of this Agreement, there are no other third-party beneficiaries of any promises, obligations or representations made herein.

8.22. Complete Understanding.

18

SELLER UNDERSTANDS THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT IS A COMPLEX FINANCIAL TRANSACTION. BY SIGNING THIS AGREEMENT, SELLER IS ASSIGNING ITS RIGHTS TO A PORTION OF THE AWARD THAT SELLER MAY RECEIVE IN REGARD TO THE CASE. IN RETURN FOR SELLER'S ASSIGNMENT, SELLER WILL RECEIVE AN IMMEDIATE CASH PAYMENT THAT IS SIGNIFICANTLY LESS THAN THE PORTION OF THE AWARD THAT SELLER IS ASSIGNING. SELLER IS STRONGLY ENCOURAGED BEFORE SIGNING THIS AGREEMENT TO CONSULT WITH AN ATTORNEY AND/OR TRUSTED FINANCIAL ADVISOR OF SELLER'S CHOICE, WHO CAN ASSIST SELLER IN DETERMINING WHETHER THIS TRANSACTION WILL BEST FULFILL SELLER'S FINANCIAL NEEDS AND OBJECTIVES AND PROTECT SELLER'S INTERESTS IN THE EVENT SELLER CHOOSES TO PROCEED WITH THIS TRANSACTION.

9.23. Prior Funding Agreements. ANY and all-prior receipt of funds of a similar nature are disclosed below. You must check the appropriate box:

I have NOT received any funds from any person in a transaction of a nature similar to that contemplated by this Agreement.

OR

☐ I have received funds in a transaction of a nature similar to that contemplated by this Agreement prior to receiving funds from PARKSETTLEMENT as listed below. I acknowledge and agree that PARKSETTLEMENT may (but shall not be obligated to): (i) pay to such persons the aggregate amount due under such other agreements (collectively, the "Payoff Amount"); and (ii) to deduct the Payoff Amount from the Total Funded Amount

| Name of Other Party | Date of Funding: | Funding Amount | Payoff Amount: |
|---|---|---|---|
| Escrow for Bankruptcy Trustee | | | $40,000.00 |

9.24. Confidentiality. The Seller agrees to keep this Agreement confidential and not to disclose the existence of this Agreement or its terms, except as required by law.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first written above.

SELLER IS AWARE OF THE LI
DISCLOSED BANKRUTCY CURR

Initial here

NOTARY

State of _____
County of _____

On this, the _____ day of _____, 2017, before me _____ known to me
the undersigned officer, personally appeared _____ known to me
(or satisfactorily proven) to be the person whose name subscribed to the within instrument,
and acknowledged that he executed the same for the purposes therein contained.

I witness whereof, I hereby set my and official seal

_____
Notary Public

My commission expires: _____

(NOTARIAL SEAL)

**SEE ATTACHED**

NOTARY

State of _____
County of _____

On this, the _____ day of _____, 2017, before me _____
the undersigned officer, personally appeared Tui Cook, known to me
(or satisfactorily proven) to be the person whose name subscribed to the within instrument,
and acknowledged that he executed the same for the purposes therein contained.

I witness whereof, I hereby set my and official seal

_____
Notary Public

My commission expires: _____
(NOTARIAL SEAL)

**SEE ATTACHED**

PURCHASER:

20

here

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    **CIVIL CODE § 1189**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California        )
County of _Ventura_        )
On _March 29, 2017_ before me, _Ryon K. Roberts_
       Date                              Here Insert Name and Title of the Officer
personally appeared ███████████████████
                                          Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

> RYAN K. ROBERTS
> Commission # 2096461
> Notary Public - California
> Ventura County
> My Comm. Expires Jan 14, 2019

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                Signature of Notary Public

_Place Notary Seal Above_

───────────────────── OPTIONAL ─────────────────────
Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**
Title or Type of Document: _Settlement Agreement pg 70_
Document Date: _N/A_ _____ Number of Pages: _75_
Signer(s) Other Than Named Above: _N/A_

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _____          Signer's Name: _____
☐ Corporate Officer — Title(s): _____          ☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General                   ☐ Partner — ☐ Limited ☐ General
☐ Individual      ☐ Attorney in Fact               ☐ Individual      ☐ Attorney in Fact
☐ Trustee         ☐ Guardian or Conservator        ☐ Trustee         ☐ Guardian or Conservator
☐ Other: _____                   ☐ Other: _____
Signer Is Representing: _____             Signer Is Representing: _____

©2016 National Notary Association · www.NationalNotary.org · 1-800-US NOTARY (1-800-876-6827)    Item #5907

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

**CIVIL CODE § 1189**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of Ventura )

On March 29, 2017 before me, Ryan K. Roberts,
     *Date*                   *Here Insert Name and Title of the Officer*

personally appeared ▮▮▮▮▮▮▮▮
                   *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
         *Signature of Notary Public*

RYAN K. ROBERTS
Commission # 2099461
Notary Public - California
Ventura County
My Comm. Expires Jan 14, 2019

*Place Notary Seal Above*

---
**OPTIONAL**
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: Settlement Agreement pg. 20 POA
Document Date: N/A     Number of Pages: 38
Signer(s) Other Than Named Above: N/A

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2016 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

PARKSETTLEMENT

By:_____

Name:_____

Title:_____


EXHIBIT A

ACKNOWLEDGMENT AND NOTICE OF ASSIGNMENT

Glaser Weil LLP
Mr. Fred D. Heather
425 California Street
San Francisco, CA 94104

RE:    *In Re: National Football League Players' Concussion Injury Litigation*
*No. 2:12-md-02323-AB*

21

 iat here

I have been engaged to represent ████████ in regard to his pending claim in the matter of *In Re: National Football League Players' Concussion Injury Litigation* (the "Concussion Litigation"), arising out of the U.S. federal court in the Eastern District of Pennsylvania, docketed under No. 2:12-md-02323-AB, and his potential receipt of a financial settlement thereunder (the "Award").

All capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in that certain Non-Recourse Sales and Purchase Agreement date March 15, 2017 by and between ParkSettlement NFL Fund 1 as Purchaser and ████████ as Seller (the "Sales Agreement").
████████

I acknowledge that on March ~~15~~ 29, 2017, ████████ "Client"), assigned and transferred to Purchaser, on a non-recourse basis, a portion of his estimated Award to which he may be entitled under the terms of the settlement of the Concussion Litigation.

I further understand the portion of the estimated Award from the Concussion Litigation or otherwise required by law that Client has sold, assigned and transferred to Purchaser pursuant to the Sales Agreement is the amount of $114,000.00; however, the amount of the Estimated Award sold, assigned and transferred to Purchaser increases over time, and Section 2 of the SaleAgreement shall be determinative of the exact amount purchased by Purchaser (such amounts collectively referred to hereinafter as the "Purchased Asset").

As the attorney of record for Client in the Concussion Litigation, I will receive all proceeds of the Award on behalf of Seller and, I am responsible for the final distribution of Client's Award based on my engagement letter with Seller in connection with the Concussion Litigation. As such, I acknowledge that the Sales Agreement entitles Purchaser to an amount of the Award equal to the Purchased Asset, and constitutes an encumbrance that must be satisfied prior to any funds from such Award being distributed to Client personally, or to any other third party.

I also acknowledge receipt of a document titled "Irrevocable Authorization and Directive," signed by Client, which obligates me to direct and pay funds equal to the Purchased Asset to Purchaser prior to making any distribution to Client personally, or to any other third party.

I agree to comply with the directions set forth in the "Irrevocable Authorization and Directive." I agree to distribute an amount equal to the Purchased Asset to the Purchaser from the proceeds of the Award in accordance with the Irrevocable Authorization and Directive before any other

22

monies that are the subject of the Award are made to Client personally, or to any other third party.

Further, I agree to disburse any and all such payments constituting the Purchased Asset directly to Purchaser by certified check from my law firm's IOLTA account, or via wire or ACH within fifteen (15) days of my firm's receipt of the funds representing Client's Award pursuant to the settlement of the Concussion Litigation. I further agree that no monies shall be paid to any third parties from the Award prior to Purchaser recovering the payment of the Purchased Asset from the Award.

Additionally, I acknowledge I have received Client's authorization to confer with representatives of Purchaser in regard to any aspect of this Acknowledgement and Notice of Assignment, the Sales Agreement, the Irrevocable Authorization and Directive, and/or any other aspects the transactions contemplated hereby and thereby.

In order to induce Purchaser to consummate the transactions contemplated herein and purchase the Purchased Asset, I hereby make the following limited representations and warranties:

1. Other than as listed immediately below, I have no knowledge (after making inquiry of Client) of any liens, judgments, lawsuits (other than the Concussion Litigation itself), orders, garnishments or other encumbrances of any nature whatsoever, which do now or could in the future encumber Client's anticipated Award for settlement of the Concussion Litigation:

2. ANY and all monies received on behalf of Client in regard to his Concussion Litigation settlement award shall be deposited into my firm's IOLTA account prior to any distribution to Client or any other parties. My engagement letter with Client provides that the Award payable to Client shall be paid to my firm's IOLTA account and the relevant provisions of the engagement letter relating to it have not been modified.

3. Purchaser will be the first priority payee for distributions from my firm's IOLTA account for Client's Award pursuant to the Concussion Litigation or otherwise required by law, and Purchaser shall receive payment in an amount equal to the Purchased Asset before any funds are distributed to Client personally, or to any other third party.

4. If at any time prior to full payment of the Purchased Asset to Purchaser I no longer represent Client with respect to the matters addressed herein, I will provide Purchaser with notice

23



of the change in Client's representation, and the name of Client's subsequent attorney(s) (if
known to me) within fifteen (15) days of such change occurring.

Glaser Weil LLP
Mr. Fred D. Heather
425 California Street
San Francisco, CA 94104

_____

Mr. Fred D. Heather

_____

Date

EXHIBIT B

IRREVOCABLE AUTHORIZATION AND DIRECTIVE

Glaser Weil LLP
Mr. Fred D. Heather
425 California Street
San Francisco, CA 94104

24



March 15, 2017

RE:                    Award in the matter of In re: National Football League Player's Concussion
                       Injury Litigation; Docket No: 2:12-md-02323-AB

Dear Mr. Fred D. Heather:

I write to inform you that I have entered into a binding Non-Recourse Sales and Purchase
Agreement dated March 15, 2017 (the "Sales Agreement") with ParkSettlement NFL Fund 1
("PARKSETTLEMENT") pursuant to which I sold and assigned the amount of $114,000.00, of
my anticipated award arising out of the matter of In re: National Football League Player's
Concussion Injury Litigation; Docket No: 2:12-md-02323-AB (the "Award"). The amount of the
Award sold and assigned to Purchaser is subject to change, and Section 2 of the Sales Agreement
shall be determinative of the exact amounts owed (such amounts referred to hereinafter as the
"Purchased Asset"). Capitalized terms otherwise not defined herein shall have the same
meanings ascribed to them in the Sales Agreement. The Sales Agreement is attached hereto as
Exhibit A.

Pursuant to the terms of the Sales Agreement, I agreed to send to you this letter; accordingly, I
hereby give you (and any other attorney at your firm representing me in regard to the above
captioned matter) my express authorization, as my attorney, to follow the instructions set forth
below with regard to any and all payments received on my behalf, in connection with the matter
captioned above.

My instructions are as follows:

1. I authorize and direct you to pay the amount of the Purchased Asset to PARKSETTLEMENT,
no later than fifteen (15) business days following the receipt of any and all award monies
received by you on my behalf or otherwise required by law, in whole or in part, arising out of In
re: National Football League Player's Concussion Injury Litigation; Docket No: 2:12-md-
02323-AB in which you represent me, and before any such funds are disbursed to me personally,
or to any other third party, I direct you, or a representative of your firm, to contact Marc

25

Waldman, principal of PARKSETTLEMENT for a current pay off amount of the Purchased Asset.

I further direct you to pay the Purchased Asset to PARKSETTLEMENT through a check written from your IOLTA account, by certified funds, or through electronic transfer. Payments should be sent to

ParkSettlement NFL Fund 1
1025 Westchester Avenue
Suite 311
White Plains, NY 10604

2. I authorize and direct you, or a representative of your firm, to personally notify a representative of PARKSETTLEMENT, in writing, of the total amount of any portion of my Award that is received by you, including the date upon which the funds were received, as well as a breakdown of the anticipated disbursements from the Award.

3. I authorize and direct you and or a representative of your firm familiar with this matter, to provide to Marc Waldman, principal of PARKSETTLEMENT of the status of my claim and the anticipated date of the receipt of my Award, as may be requested by either of them from time to time.

4. I authorize and direct you to notify Marc Waldman, principal of PARKSETTLEMENT, upon becoming aware of any lien, judgment, lawsuit or encumbrance of any nature that could in any way affect, delay or diminish the disbursement of my financial Award.

5. I authorize you to provide Marc Waldman, principal of PARKSETTLEMENT, prompt notice of any change in your firm's representation of me or any changes in our engagement letter.

6. I authorize you to provide information to Marc Waldman, principal of PARKSETTLEMENT, relating to the status of the Concussion Litigation, my participation in same and other information that he may reasonable request (provided by you).

26

Please be advised that this Authorization and Directive is irrevocable, binding and may only be ................... nt of PARKSETTLEMENT.

................... peration.

NOTARY

State of _____
County of _____

On this, the _____ day of _____, 2017, before me _____, the undersigned officer, personally appeared _____, known to me (or satisfactorily proven) to be the person whose name subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

I witness whereof, I hereby set my and official seal

Notary Public _____

**SEE ATTACHED**

NOTARY

State of _____
County of _____

On this, the _____ day of _____, 2017, before me _____
the undersigned officer, personally appeared Tot Cook, known to me
(or satisfactorily proven) to be the person whose name subscribed to the within instrument,
and acknowledged that he executed the same for the purposes therein contained.

I witness whereof, I hereby set my and official seal

Notary Public _____

My commission expires: _____

**SEE ATTACHED**

27

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**  CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of Ventura )

On March 29, 2017, before me, Ryan K. Roberts,
　　　　Date　　　　　　　　　Here Insert Name and Title of the Officer

personally appeared ███████████████
　　　　　　　　　　　　　Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

> RYAN K. ROBERTS
> Commission # 2096451
> Notary Public - California
> Ventura County
> My Comm. Expires Jan 14, 2019

Signature _____
　　　　　　Signature of Notary Public

Place Notary Seal Above

———— OPTIONAL ————

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: Settlement Agreement  pg 27
Document Date: N/A　　　　　　　　Number of Pages: 38
Signer(s) Other Than Named Above: N/A

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2016 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)　Item #5907

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    CIVIL CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                  )
County of Ventura _____ )

On March 24, 2017 _____ before me, Ryan K. Roberts _____
      *Date*                                          *Here Insert Name and Title of the Officer*

personally appeared ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
                                        *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

> RYAN K. ROBERTS
> Commission # 2096461
> Notary Public - California
> Ventura County
> My Comm. Expires Jan 14, 2019

Signature _____
                     *Signature of Notary Public*

          *Place Notary Seal Above*
————————————— **OPTIONAL** —————————————
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: Settlement Agreement pg. 27 _____
Document Date: N/A _____ Number of Pages: 38 _____
Signer(s) Other Than Named Above: N/A _____

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _____          Signer's Name: _____
☐ Corporate Officer — Title(s): _____          ☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General          ☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact          ☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator          ☐ Trustee ☐ Guardian or Conservator
☐ Other: _____          ☐ Other: _____
Signer Is Representing: _____          Signer Is Representing: _____

©2016 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)    Item #5907

(NOTARIAL SEAL)

28



WIRING INSTRUCTION

TO: ParkSettlement NFL Fund 1
FROM: ▮▮▮▮▮

I hereby direct ParkSettlement NFL Fund 1, to forward the net amount to which I am entitled pursuant to my Sale and Purchase Agreement via bank wire or ACH to the account below. I will also send a photo of a voided check from the same account below to my Originator to verify account and ABA routing information.

BANK NAME:
BANK LOCATION:          **SEE ATTACHED**
BANK TELEPHONE NUMBER:
ACCOUNT NUMBER:
ABA ROUTING NUMBER: ▮▮▮▮▮▮▮▮▮▮▮▮▮
ACCOUNT NAME: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
ACCOUNT HOLDER ADDRESS: ▮▮▮▮▮▮▮▮▮▮▮▮

DATED this ___ day of _____, 2017

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

NOTARY

State of
County of

On this, the _____ day of _____ 2017, before me _____,
the undersigned officer, personally appeared Toi Cook, known to me          **SEE ATTACHED**
(or satisfactorily proven) to be the person whose name subscribed to the within instrument,
and acknowledged that he executed the same for the purposes therein contained.

I witness whereof, I hereby set my and official seal
Notary Public

My commission expires: _____
(NOTARIAL SEAL)

29

_____Initial here

# CHASE ⬡

## Customer Information for Incoming Wire Transfers

We have created this guide to explain some key terms and standard information that may be required for another person to send you a wire transfer payment. It is not an agreement by the bank to accept or transmit the wire transfer payment.

---

**Key Terms**

**ABA Routing/Transit Number** - used in the US to identify financial institutions.

**SWIFT Code** – unique identification code for a bank/branch; used for an international transfer.

---

Provide the following information to the person sending the wire:

 **DOMESTIC WIRES**
  ✓ Provide Chase Bank's ABA Routing/Transit Number ▇▇▇▇▇▇

☐ **INTERNATIONAL WIRES**
  ✓ Provide Chase Bank's SWIFT Code ▇▇▇▇▇▇▇

**Note: CHASUS33XXX** can also be provided; XXX can be replaced by a specific BIC (Bank Identifier Code) if known by the customer.

| | |
|---|---|
| Your Chase Account Number (if using a Chase Loan, Investment or other Non-Deposit acct number do NOT enter it here; enter it in "Other Information" & indicate the type of account to be credited): | Your Name as it Appears on the Account to be credited: |
| Amount of the Wire: | Receiving Bank Name:  **Chase** |
| For Domestic transfers, Chase ABA Routing/Transit Number: ▇▇▇▇▇▇  For International transfers, Chase Swift Code ▇▇▇▇▇▇ can be replaced by a specific BIC (Bank Identifier Code) if known by the customer) | Receiving Branch Address: 1014 S Westlake Blvd Ste 18 Westlake Village, CA 91361 805-379-2452 |
| Other Information: | |

---

**Important!**

- Incoming funds will be credited based *solely* on the Account Number you provide. BE CERTAIN you confirm that the Account Number is correct.
- Any error or incomplete information may result in the wire going to the wrong person or being delayed, which could result in the loss of funds.
- Incoming funds may be deposited into the checking or savings account or may be applied as a payment to the loan or line of credit.
- Incoming funds cannot be credited to a Chase Liquid Prepaid Card.
- Incoming funds may take 1 full business day before the funds are received from the sender.
- Sender's bank may request Chase's address for incoming wires. Address is 270 Park Ave., New York, NY 10017.

M1208-01  (12/14)

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**　　　　　　　　**CIVIL CODE § 1189**

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California )
County of Ventura )

On March 29, 2017 before me, Ryan K. Roberts
　　　　Date　　　　　　　　　　　　　Here insert Name and Title of the Officer

personally appeared ▮▮▮▮▮▮▮▮
　　　　　　　　　　　　　　　Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

RYAN K. ROBERTS
Commission # 2096461
Notary Public - California
Ventura County
My Comm. Expires Jan 14, 2019

Signature _____
　　　　　　Signature of Notary Public

*Place Notary Seal Above*

---------- **OPTIONAL** ----------

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: Settlement Agreement Pg 29
Document Date: N/A　　　　　　　　　　　Number of Pages: 38
Signer(s) Other Than Named Above: N/A

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

---

©2016 National Notary Association · www.NationalNotary.org · 1-800-US NOTARY (1-800-876-6827)　Item #5907

## GENERAL POWER OF ATTORNEY

KNOW ALL PERSONS BY THESE PRESENT:

That I, ▮▮▮▮ an adult resident citizen of ▮▮▮▮▮▮▮▮▮▮ residing at ▮▮▮▮▮▮▮ have made, constituted and appointed, and by these presents do make, constitute and appoint, ▮▮▮▮ my true and lawful attorney to act as follows, that is to say:

1.  Disposition of Property. To sell, assign, transfer, convey, exchange, deed, mortgage, pledge, lease, let, license, demise, remise, quitclaim, bargain or otherwise dispose of any or all of my real estate, stocks, bonds, evidences of indebtedness and other securities and other personal tangible and intangible or mixed property, or any custody, possession, interest or right therein at public or private sale, upon such terms, consideration, and conditions as my said attorney shall deem advisable and to execute, acknowledge and deliver such instruments and writings of whatsoever kind and nature as may be necessary, convenient or proper in the premises.

2.  Collection of Debts. To demand, collect, recover, sue for, receive and give receipt or release for any monies, debts, dividends, interests, royalties, legacies, annuities, demands, discounts, income, rents, profits, securities or other property of any sort, now or hereafter due or becoming due to me or to which I may be or hereafter become entitled.

3.  Endorsements.

a)  To endorse and negotiate for any and all purposes all promissory notes, bills of exchange, checks, drafts or other negotiable or non-negotiable paper payable to me or to my order;

b)  To endorse for transfer all certificates of stock, bond or other securities;

c)  To endorse and cash United States Savings Bonds and notes.

4.  Executing Government Vouchers. To execute vouchers in my behalf for any and all allowances, compensation and reimbursements properly payable to me by the Government of the United States or any agency or department thereof.

5.  Depositing Money and Other Property. To deposit in my attorney's or my name, or jointly in both our names, in any banking institution, funds or property, and to withdraw any part or all of my deposits at any time made by me in my behalf.

30

6.     Borrowing Money. To borrow money in my name when deemed necessary to my said attorney upon such terms as to my said attorney appear proper and to execute such instruments as may be requisite for such purpose.

7.     Acquisition of Property. To buy, receive, lease, accept or otherwise acquire in my name and for my account property, real, personal or mixed, upon such terms, considerations and conditions as my said attorney shall think proper.

8.     Recovering Possession of Property. To eject, remove or relieve tenants or other persons from, and recover possession of, any property, real, personal or mixed in which I now or hereafter may have an interest.

9.     Litigation. To institute, maintain, defend, compromise, arbitrate or otherwise dispose of, any and all actions, suits, attachments or other legal proceedings for or against me.

10.    Tax Returns. To prepare and execute any tax returns, including, but not limited to, Federal income tax returns, State income tax returns, Social Security tax returns, and Federal and State information and estimated returns; to execute any claims for refund, protests, applications for abatement, petitions to the United States Board of Tax Appeals or any other Board or Court, Federal or State, consents and waivers to determination and assessment of taxes and consents and waivers agreeing to a later determination and assessment of taxes than is provided by statute of limitations; to receive and endorse and collect any checks in settlement of any refund of taxes; to examine and to request and receive copies of any tax returns, reports and other information from the United States Treasury Department or any other taxing authority, Federal or State, in connection with any of the foregoing matters.

11.    Automobiles. To execute and deliver to the proper persons and authority any and all documents, instruments and papers necessary to effect proper registration of any automobile in which I now or may hereafter have an interest, or the sale thereof and transfer of legal title thereto as required by law, and to collect and receipt for all monies paid in consideration of such sale and transfer.

FURTHER, I do authorize my aforesaid attorney to execute, acknowledge and deliver any instrument under seal or otherwise, and to do all things necessary to carry out the intent hereof, hereby granting unto my said attorney full power and authority to act in and concerning the premises as fully and effectually as I may do if personally present.

PROVIDED, however, that all business transacted hereunder for me or for my account shall be transacted in my name, and that all endorsements and instruments executed by my said attorney for the purpose of carrying out the foregoing powers shall contain my name, followed by that of my said attorney and the designation "attorney-in-fact".

31

 nitial here

This Power of Attorney shall not be affected by any subsequent disability or incompetence.

I further declare that any act or thing lawfully done hereunder by my said attorney shall be binding on myself and my heirs, legal and personal representatives and assigns, whether the same shall have been done either before or after my death, or other revocation of this instrument, unless and until reliable intelligence or notice thereof shall have been received by my said attorney.

IN WITNESS WHEREOF, I have hereunto set my hand Mult̲ , 20 1 7 .

Witnesses: Dean Bernstein
32123 Lindero Canyon Rody Suite 205, Westlake Village, Cu 91361

Name and Address Jim Townsend
32123 Lindero Canyon Road, Suite 205

Name and Address Westlake Village, Ca 91361

STATE OF _____

COUNTY OF _____

PERSONALLY came and appeared before me, the undersigned authority in and for the jurisdiction aforesaid, the within named _____ , who acknowledged to me that he signed, executed and delivered the foregoing Power of Attorney on the day and year therein mentioned.

GIVEN under my hand and official seal of office, this the _____ day of _____ , 20___.

_____

**SEE ATTACHED**                    NOTARY PUBLIC

My Commission Expires:

32

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**        CIVIL CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California          }

County of Ventura _____ }

On March 29, 2017 before me, Ryan K. Roberts _____
     *Date*               *Here Insert Name and Title of the Officer*

personally appeared ▮▮▮▮▮ DEAN DORNSTEIN , JIM TOWNSEND
                                *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                  *Signature of Notary Public*

**RYAN K. ROBERTS**
Commission # 2096451
Notary Public - California
Ventura County
My Comm. Expires Jan 14, 2019

*Place Notary Seal Above*

──────── OPTIONAL ────────

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: Settlement Agreement pg 38

Document Date: N/A _____ Number of Pages: 38

Signer(s) Other Than Named Above: N/A

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual   ☐ Attorney in Fact
☐ Trustee   ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual   ☐ Attorney in Fact
☐ Trustee   ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2015 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

EXHIBIT C

ACKNOWLEDGMENT AND NOTICE OF ASSIGNMENT

RE:     *In Re: National Football League Players' Concussion Injury Litigation*
        *No. 2:12-md-02323-AB*

I have been engaged to represent ▓▓▓▓ in regard to his pending claim in the matter of *In Re:
National Football League Players' Concussion Injury Litigation* (the "Concussion Litigation"),
arising out of the U.S. federal court in the Eastern District of Pennsylvania, docketed under No.
2:12-md-02323-AB, and his potential receipt of a financial settlement thereunder (the "Award").

All capitalized terms not otherwise defined herein shall have the same meanings ascribed to them
in that certain Non-Recourse Sales and Purchase Agreement date March 15, 2017 by and
between ParkSettlement NFL Fund 1 as Purchaser and ▓▓▓▓ as Seller (the "Sales
Agreement").

I acknowledge that on March 15, 2017, ▓▓▓▓ "Client"), assigned and transferred to
Purchaser, on a non-recourse basis, a portion of his estimated Award to which he may be entitled
under the terms of the settlement of the Concussion Litigation.

I further understand the portion of the estimated Award from the Concussion Litigation that
Client has sold, assigned and transferred to Purchaser pursuant to the Sales Agreement is the
amount of $114,000.00; however, the amount of the Estimated Award sold, assigned and
transferred to Purchaser increases over time, and Section 2 of the Sale Agreement shall be
determinative of the exact amount purchased by Purchaser (such amounts collectively referred to
hereinafter as the "Purchased Asset").

As the attorney of record for Client in the Concussion Litigation, I will receive all proceeds of
the Award on behalf of Seller and, I am responsible for the final distribution of Client's Award
based on my engagement letter with Seller in connection with the Concussion Litigation. As

33

such, I acknowledge that the Sales Agreement entitles Purchaser to an amount of the Award equal to the Purchased Asset, and constitutes an encumbrance that must be satisfied prior to any funds from such Award being distributed to Client personally, or to any other third party.

I also acknowledge receipt of a document titled "Irrevocable Authorization and Directive," signed by Client, which obligates me to direct and pay funds equal to the Purchased Asset to Purchaser prior to making any distribution to Client personally, or to any other third party.

I agree to comply with the directions set forth in the "Irrevocable Authorization and Directive." I agree to distribute an amount equal to the Purchased Asset to the Purchaser from the proceeds of the Award in accordance with the Irrevocable Authorization and Directive before any other monies that are the subject of the Award are made to Client personally, or to any other third party.

Further, I agree to disburse any and all such payments constituting the Purchased Asset directly to Purchaser by certified check from my law firm's IOLTA account, or via wire or ACH within fifteen (15) days of my firm's receipt of the funds representing Client's Award pursuant to the settlement of the Concussion Litigation. I further agree that no monies shall be paid to any third parties from the Award prior to Purchaser recovering the payment of the Purchased Asset from the Award.

Additionally, I acknowledge I have received Client's authorization to confer with representatives of Purchaser in regard to any aspect of this Acknowledgement and Notice of Assignment, the Sales Agreement, the Irrevocable Authorization and Directive, and/or any other aspects the transactions contemplated hereby and thereby.

In order to induce Purchaser to consummate the transactions contemplated herein and purchase the Purchased Asset, I hereby make the following limited representations and warranties:

1. Other than as listed immediately below, I have no knowledge (after making inquiry of Client) of any liens, judgments, lawsuits (other than the Concussion Litigation itself), orders, garnishments or other encumbrances of any nature whatsoever, which do now or could in the future encumber Client's anticipated Award for settlement of the Concussion Litigation:

2. ANY and all monies received on behalf of Client in regard to his Concussion Litigation settlement award shall be deposited into my firm's IOLTA account prior to any distribution to Client or any other parties. My engagement letter with Client provides that

34

Client shall be paid to my firm's IOLTA account and the relevant provisions of the engagement letter relating to it have not been modified.

3.  Purchaser will be the first priority payee for distributions from my firm's IOLTA account for Client's Award pursuant to the Concussion Litigation, and Purchaser shall receive payment in an amount equal to the Purchased Asset before any funds are distributed to Client personally, or to any other third party.

4.  If at any time prior to full payment of the Purchased Asset to Purchaser I no longer represent Client with respect to the matters addressed herein, I will provide Purchaser with notice of the change in Client's representation, and the name of Client's subsequent attorney(s) (if known to me) within fifteen (15) days of such change occurring.

_3/29/2017_
Date

35



## EXHIBIT D

### ACKNOWLEDGMENT AND NOTICE OF ASSIGNMENT

RE:     *In Re: National Football League Players' Concussion Injury Litigation*
        *No. 2:12-md-02323-AB*

I have been engaged to represent       in regard to his pending claim in the matter of *In Re: National Football League Players' Concussion Injury Litigation* (the "Concussion Litigation"), arising out of the U.S. federal court in the Eastern District of Pennsylvania, docketed under No. 2:12-md-02323-AB, and his potential receipt of a financial settlement thereunder (the "Award").

All capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in that certain Non-Recourse Sales and Purchase Agreement date March 15, 2017 by and between PurkSettlement NFL Fund 1 as Purchaser and      as Seller (the "Sales Agreement").

I acknowledge that on March 29, 2017,     "Client"), assigned and transferred to Purchaser, on a non-recourse basis, a portion of his estimated Award to which he may be entitled under the terms of the settlement of the Concussion Litigation.

I further understand the portion of the estimated Award from the Concussion Litigation that Client has sold, assigned and transferred to Purchaser pursuant to the Sales Agreement is the amount of $114,000.00; however, the amount of the Estimated Award sold, assigned and transferred to Purchaser increases over time, and Section 2 of the Sale Agreement shall be determinative of the exact amount purchased by Purchaser (such amounts collectively referred to hereinafter as the "Purchased Asset").

As the attorney of record for Client in the Concussion Litigation, I will receive all proceeds of the Award on behalf of Seller and, I am responsible for the final distribution of Client's Award based on my engagement letter with Seller in connection with the Concussion Litigation. As

36

such, I acknowledge that the Sales Agreement entitles Purchaser to an amount of the Award equal to the Purchased Asset, and constitutes an encumbrance that must be satisfied prior to any funds from such Award being distributed to Client personally, or to any other third party.

I also acknowledge receipt of a document titled "Irrevocable Authorization and Directive," signed by Client, which obligates me to direct and pay funds equal to the Purchased Asset to Purchaser prior to making any distribution to Client personally, or to any other third party.

I agree to comply with the directions set forth in the "Irrevocable Authorization and Directive." I agree to distribute an amount equal to the Purchased Asset to the Purchaser from the proceeds of the Award in accordance with the Irrevocable Authorization and Directive before any other monies that are the subject of the Award are made to Client personally, or to any other third party.

Further, I agree to disburse any and all such payments constituting the Purchased Asset directly to Purchaser by certified check from my law firm's IOLTA account, or via wire or ACH within fifteen (15) days of my firm's receipt of the funds representing Client's Award pursuant to the settlement of the Concussion Litigation. I further agree that no monies shall be paid to any third parties from the Award prior to Purchaser recovering the payment of the Purchased Asset from the Award.

Additionally, I acknowledge I have received Client's authorization to confer with representatives of Purchaser in regard to any aspect of this Acknowledgement and Notice of Assignment, the Sales Agreement, the Irrevocable Authorization and Directive, and/or any other aspects the transactions contemplated hereby and thereby,

In order to induce Purchaser to consummate the transactions contemplated herein and purchase the Purchased Asset, I hereby make the following limited representations and warranties:

1.  Other than as listed immediately below, I have no knowledge (after making inquiry of Client) of any liens, judgments, lawsuits (other than the Concussion Litigation itself), orders, garnishments or other encumbrances of any nature whatsoever, which do now or could in the future encumber Client's anticipated Award for settlement of the Concussion Litigation;

2.  ANY and all monies received on behalf of Client in regard to his Concussion Litigation settlement award shall be deposited into my firm's IOLTA account prior to any distribution to Client or any other parties. My engagement letter with Client provides that ████████████████████

37

Client shall be paid to my firm's IOLTA account and the relevant provisions of the engagement letter relating to it have not been modified.

3.      Purchaser will be the first priority payee for distributions from my firm's IOLTA account for Client's Award pursuant to the Concussion Litigation, and Purchaser shall receive payment in an amount equal to the Purchased Asset before any funds are distributed to Client personally, or to any other third party.

4.      If at any time prior to full payment of the Purchased Asset to Purchaser I no longer represent Client with respect to the matters addressed herein, I will provide Purchaser with notice of the change in Client's representation, and the name of Client's subsequent attorney(s) (if known to me) within fifteen (15) days of such change occurring.

3-29-2017

Date

38





3/29/2017

ParkSettlement NFL Fund 1
1025 Westchester Avenue
Suite 311
White Plains, NY 10604

February 25, 2017

Mr. Fred D. Heather
Glaser Weil LLP
10250 Constellation Blvd., 19th
Floor
Los Angeles, CA 90067

Re: ███████████ ("Client")

Attached are the documents that ParkSettlement NFL Fund 1 (hereinafter "ParkSettlement") requires to be reviewed and executed in order to enter into a transaction with the Client. Please return all pages.

Please note that Exhibit A requires an attorney's signature (page 2), and all items below must be returned to PARKSETTLEMENT prior to funding:

1. *Sale and Purchase Agreement* PARKSETTLEMENT requires Client's initials in the bottom right corner, Client's notarized signature and Client's Power of Attorney notarized signature

1. *Exhibit 2 Irrevocable Directive and Authorization.* PARKSETTLEMENT requires Client's notarized signature and Client's Power of Attorney notarized signature

2. *Wire instructions* require Client's bank info and Client's notarized signature. *** PLEASE NOTE WE CANNOT WIRE OR ACH FUNDS TO A PREPAID DEBIT CARD OR A 3RD PARTY

3. Photograph of a *voided check* where funds will be deposited to be sent to originator PARKSETTLEMENT.

4. *Exhibit A Attorney Acknowledgement and Notice of Assignment* needs to be executed by the Client's Attorney. If there is more than one Attorney, please fill out Exhibit C.

PARKSETTLEMENT must receive proof of identification (i.e. driver's license, passport, etc.) for the Client prior to funding.

 Initial here

PARKSETTLEMENT SHALL NOT BE BOUND BY THE PURCHASE & SALE, ASSIGNMENT & EQUITABLE LIEN AGREEMENT UNTIL IT IS FULLY EXECUTED BY YOUR CLIENT TOGETHER WITH THE ATTORNEY ACKNOWLEDGMENT, AND PARKSETTLEMENT MAY CANCEL THIS TRANSACTION WITHOUT LIABILITY AT ANY TIME PRIOR TO PROVIDING FUNDING

## SALES AND PURCHASE AGREEMENT
(Non-Recourse Finance Transaction)

This Sales and Purchase Agreement (the "Agreement") is entered into this February 25, 2017 by and between, ▮▮▮▮ NFL Player ID Number ▮▮▮▮ ▮▮▮▮ and his agents, successors in interest, heirs, executors, representatives and assigns (collectively, the "Seller") and ParkSettlement NFL Fund 1, a limited liability company organized under the laws of New York, with its principal place of business located at 1025 Westchester Avenue, Suite 311, White Plains, NY 10604, and its representatives, successors and assigns (collectively, the "Purchaser" or "ParkSettlement").

WHEREAS, on the United States District Court for the Eastern District of Pennsylvania entered a Final Order and Judgment approving the settlement in the matter of *In re National Football League Players' Concussion Injury Litigation, No. 2:12-md-02323* (the "Settlement"), which Final Order and Judgment remains under appeal;

WHEREAS, ▮▮▮▮ is an eligible claimant in the Settlement and has an anticipated financial award in the amount of $1,900,000.00, (the "Estimated Award"), which shall be paid upon the resolution of any remaining appeals to the Final Order and Judgment;

WHEREAS, Seller has agreed to assign and sell, and, pursuant to the terms of this Agreement, Purchaser has agreed to acquire, all rights, title, benefits, and interests of Seller in and to a portion of the Estimated Award equal to: $165,000.00) (the "Purchased Asset"), which compounds at a rate of 1.75% per month until the Purchased Asset (as increased over time) has been paid to the Purchaser in full. The amount of the Purchased Asset will increase over time as set forth in Section 2 of this Agreement;

WHEREAS, the parties agree that this sale is without recourse against the Seller. This means that in the event the Purchaser does not receive the full Purchased Asset as set forth in this Agreement, and except if the reason Purchaser does not receive the full Purchased Asset is due to

2

 initial here

a breach of this Agreement by the Seller, the Seller shall have no personal obligation to the Purchaser to pay any portion of the Purchased Asset not received by the Seller; and

WHEREAS, the parties intend for the transactions contemplated herein to constitute to a valid sale of the Purchased Asset, and not a loan.

NOW, THEREFORE, in consideration of the mutual covenants, representations and warranties contained in this Agreement, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Purchaser and Seller hereby agree as follows:

1. <u>Disclosure of Fees and Expenses</u>. Seller has requested that Purchaser purchase a portion of Seller's Estimated Award for the Net Purchase Price (as defined below) and Purchaser and Seller agree that the following is a complete and accurate disclosure of all fees and expenses associated with the transactions contemplated in this Agreement:

| | |
|---|---|
| Estimated Award: | $1,900,000.00 |
| Purchase Price *(this is the amount being paid to Seller in exchange for the PARKSETTLEMENT Purchase Amount, prior to the deduction of any fees)*: | $165,000.00 |
| Originator Fee: | $8,250.00 |
| Processing Fee: | $4,950.00 |
| Pay off of Previous Advance (Exhibit C): | |
| Other Fees (Wire) | $30.00 |
| Total Purchase Price Paid to Seller (the | $151,770.00 |

3

Initial here

"Net Purchase Price");

2.    Amount of Purchased Asset. The amount of the Purchased Asset will increase over time as set forth in this Section 2.

| | | |
|---|---|---|
| 1 | 08/25/2017 | $183,100.89 |
| 2 | 02/25/2018 | $203,187.49 |
| 3 | 08/25/2018 | $225,477.63 |
| 4 | 02/25/2019 | $250,213.06 |
| 5 | 08/25/2019 | $277,662.02 |
| 6 | 02/25/2020 | $308,122.20 |

** Fees continue to accrue at a rate of 1.75% compounded monthly after this date until PARKSETTLEMENT is paid in full. There is a minimum of the first 6 months of interest; thereafter, it is in 6 month increments.

2.1    Assignment, Consideration, Right of First Refusal and Payment of Purchased Asset. Seller hereby agrees to sell and assign to Purchaser all of his rights, title and interests in and to the Purchased Asset and any future payments made in satisfaction of the Purchased Asset. Seller furthers agrees and represents that his interests in the Purchased Asset that are being assigned and sold to Purchaser are free and clear of any claim, charge, easement, encumbrance, covenant, security interest, lien, option, pledge, rights of others, or restriction or adverse interests imposed by law, equity, contract or otherwise (collectively "Encumbrances") in favor of, or obtained by third parties other than those specially set forth in this Agreement.

2.2.    In consideration for the purchase of the Purchased Asset, Purchaser agrees to pay Seller the Net Purchase Price.

2.3.    Seller agrees that Purchaser may deduct the fees set forth in Section 1 of this Agreement in the amount of $13,230.00.

2.4.    Seller hereby grants to the Purchaser a right of first refusal to purchase any or all-remaining amounts in respect of the Estimated Award. Seller shall give Purchaser written notice of all other offers to purchase a portion of the Estimated Award, and Purchaser may accept or decline such

4

 Initial here

offer within 45 days following receipt of such notice. In the event the Seller seeks to or obtains any funding in respect to the Estimated Award from a source other than the Purchaser, such event shall be deemed to be an event of default under <u>Section 4</u> hereof. In the event that Seller should obtain any such financing (after the Purchaser declines to purchase any such amount), all amounts due under this Agreement in respect to the Purchased Asset shall be paid in full before any such financing is obtained.

2.5.   Payment by Seller to Purchaser of the Purchased Asset shall be made in accordance and pursuant to the procedures set forth in <u>Section 5</u>.

2.6.   The amount of the Purchased Asset payable to Purchaser shall be as set forth in <u>Section 2</u> herein.

3.     <u>General Terms of the Purchase and Sale.</u>

3.1. <u>Absolute Sale.</u> Seller absolutely assigns, conveys, sells, sets over, transfers, and warrants to Purchaser all rights, title, benefits, and interests of Seller in and to:

3.1.1.   The Purchased Asset, including without limitation, all rights to payment of or on account of the Purchased Asset, and all proceeds of the Estimated Award until Seller has fully delivered the Purchased Asset; and

3.1.2.   All rights of Seller to ask for, demand, sue for, collect, receive, and enforce payment of the Estimated Award and to enforce all other covenants and obligations in connection with the Estimated Award, and the rights and remedies of Seller, in respect of the Estimated Award, until Purchaser has received the entire Purchased Asset, in each instance free and clear of all claims, liens, interests and encumbrances.

3.2.   <u>Payment of Net Purchase Price.</u> As consideration for Seller's assignment and sale of the Purchased Asset and other rights transferred herein to Purchaser, Purchaser hereby agrees to pay to Seller, within three (3) business days after the date of this Agreement, the Net Purchase Price by wire transfer pursuant to the wiring instructions for Seller.

5

 Initial here

3.3. Distribution of Purchased Asset to Purchaser. No later than fifteen (15) business days after Seller's receipt (or receipt by Seller's attorney on behalf of Seller) of any portion of the Estimated Award, Seller shall distribute, or cause to be distributed, all such collections and receipts to Purchaser, prior to paying any expenses of Seller or making any other distributions of any nature whatsoever, until Purchaser has received the Purchased Asset in full. Until Purchaser has received in full the entire amount of the Purchased Asset in accordance with the terms of this Agreement, the Estimated Award shall be held by Seller or Seller's attorney on behalf of Seller, in trust for Purchaser.

3.4. True Sale. Seller and Purchaser intend and agree that the transactions contemplated in this Agreement shall constitute a true sale and absolute transfer of the Purchased Asset to Purchaser, thereby providing Purchaser with the full risks and benefits of ownership of the Purchased Asset, and each of Seller and Purchaser agrees that this transaction shall be reflected on their respective books and records in a manner consistent with this intent and agreement.

3.5. Re-characterization of Transaction. Notwithstanding that Seller and Purchaser intend that this transaction be an asset sale, in the event that such sale and assignment ever is characterized as a loan or other financial accommodation other than an asset sale, or that such sale shall for any reason be ineffective or unenforceable as such, as determined in a judicial, administrative or other proceeding, Seller shall be deemed to have granted to Purchaser a first-priority security interest within the meaning of Article 9 of the Uniform Commercial Code in effect as of the date hereof in the State of New York (the "UCC") in any of Seller's rights, title, benefits, and interests in and to the Estimated Award and all proceeds thereof in order to secure Purchaser's advance of the Net Purchase Price and Seller's obligation to deliver the Purchased Asset to Purchaser. Purchaser may, at its option and in addition to all other rights provided to Purchaser in this Agreement, and without Seller's authorization, signature or consent, file financing statements (including continuations and amendments thereto) under the UCC, to perfect Purchaser's rights under this of this Agreement rights in and to the Purchased Asset.

3.6. Representation by Counsel. Seller is represented by an attorney of his own choosing, in connection with the transactions contemplated herein and his interests in the Estimated Award. Seller has reviewed this Agreement and the terms of the transactions contained herein with his attorney.

3.7. Delivery of Purchased Asset.

6

 Initial here

3.7.1. Seller agrees that it shall deliver to Purchaser the Purchased Asset as set forth in Section 2 of this Agreement, and that such payment shall be made to Purchaser from any funds received in full or in partial receipt of the Estimated Award, regardless of the source of those funds, before any payment is made from the Estimated Award to the Seller, or any other person except the Purchaser.

3.7.2. Seller shall irrevocably direct its attorney and/or representative responsible for the disbursement of the Seller's Estimated Award to deliver to Purchaser the Purchased Asset prior to Seller receiving any payment from the Estimated Award in accordance with the terms of this Agreement.

3.7.3. Whether the Purchased Asset is received in a lump sum or in multiple payments, Purchaser's right to receive the full Purchased Asset shall be in priority and senior to Seller's, or any other third parties', right to receive any portion of the Estimated Award.

3.8. Limitations on Purchaser's Recourse. If the Estimated Award amount is less than anticipated, and is insufficient to allow Seller to deliver to Purchaser the full Purchased Asset, then the amount of the Purchased Asset shall be reduced to the Estimated Award with no recourse to Seller for any remaining balance. For the avoidance of doubt, if Seller receives no amount of the Estimated Award then Seller shall owe nothing to Purchaser, and shall have no obligation to deliver the Purchased Asset to Purchaser.

3.9. Authorization to Undertake Background and Credit Reports. Seller hereby authorizes and gives Purchaser permission, from time-to-time, to conduct a comprehensive review of Seller's background, including but not limited to obtaining consumer credit reports and information originator reports about Seller. Seller understands that the reports may include information, such as: credit ratings, verification of social security number; current and previous residences; employment history; education; any lawsuits or criminal history; birth records; motor vehicle records; and information from public records.

4. Seller's Representation and Warranties. Seller hereby represents and warrants to Purchaser, as of the date hereof, and until the Purchase Price has been delivered in full to Purchaser, the following:

4.1. Absolute Ownership. Seller owns all rights, title, and interests in the Estimated Award and acknowledges that it is selling and assigning the Purchased Asset to the Purchaser. Seller is legally entitled to the Estimated Award, and owns the Estimated Award free and clear of all Encumbrances.

7

Initial here

4.2.   No Prior Transactions. Seller has the unrestricted right to assign the Purchased Asset to Purchaser, and Seller has not previously sold or assigned the Estimated Award, in whole or in part, to any other party. Upon Purchaser's payment in full to Seller of the Net Purchase Price, Purchaser shall own all of the Purchased Asset free and clear of all Encumbrances or other adverse interests of any nature whatsoever.

4.3.   Competency to Contract. Seller has the legal capacity and mental competency to understand this Agreement and its terms and effects, to contract, to execute this Agreement and to perform all duties set forth within the terms of this Agreement and is doing so voluntarily and of his own free will.

4.4.   No Conflicts. Seller is under no contractual obligations or other restrictions that are or could be adverse to Purchaser's interests with regard to the terms of this Agreement and Seller's assignment and sale of the Purchased Asset. Seller warrants that the execution, delivery and performance of this Agreement, and the consummation of the transactions contemplated in this Agreement, does not violate any law, rule, regulation, order, other agreement, or other instrument to which Seller is a party or is otherwise bound, including the Settlement.

4.5.   No Bankruptcy. There are no bankruptcy or insolvency proceedings in progress or in prospect, either personally or with regard to any entity owned by Seller, in whole or in part, that could affect the Seller's right to receive the Estimated Award.

4.6.   No Proceedings. Seller is not the subject of or party to any legal proceeding, including one that could in any way adversely affect the terms of this Agreement, the Estimated Award, and the Purchaser's right, title, or interest in and to the Purchased Asset. No portion of the Estimated Award has been or is in jeopardy of being subject to a levy or any type of other adverse interest.

4.7.   Accuracy of Information. The information Seller has provided to Purchaser contained in this Agreement, as well as any information given to Purchaser by Seller prior to the date of this Agreement is true, accurate and complete in all respects. Seller acknowledges Purchaser has relied and will continue to rely on this information in acquiring, protecting and otherwise dealing with the Purchased Asset.

8

 Initial here

4.8. No Acts or Omissions. Seller has not engaged in any acts or conduct, or made any omissions that could potentially result in Purchaser receiving less than the full amount of the Purchased Asset, and that there are no other parties that hold a similar interest in the Estimated Award.

4.9. Payment of Taxes. Seller has paid all federal, state and local taxes due through the date this Agreement is to be executed, or, has made adequate and acceptable terms for any tax payment due with the appropriate tax agency responsible for accepting such payment, and in no event has or will Seller permit all portion of the Purchased Asset to be used for the satisfaction of any such obligation.

4.10. No Tax Liens; Other Obligations. There are no outstanding: (1) tax liens or judgments against Seller or the Estimated Award, (ii) no obligations owed by Seller to any county, city or state government entity; or (iii) any other liens owed to the United States Government or other person or entity for any social service or other benefit that Seller has received and is obligated to pay; including but not limited to child support and/or alimony.

4.11. Legally Binding Agreement. Seller had read this entire Agreement and possesses the mental capacity to understand the terms set forth in this Agreement. Seller further understands that once he signs this Agreement it will become a legally binding contract pursuant to which Seller will have forever assigned and sold a portion of the Estimated Award received as financial recovery from their legal claim in connection with the *In Re: National Football League Players' Concussion Injury Litigation No. 2:12-md-02323-AB* litigation.

4.12. Expenses of Transaction. Seller understands that in exchange for receiving the Net Purchase Price now from the Purchaser in connection with the transactions contemplated in this Agreement, instead of waiting to receive the Estimated Award, there is a cost to be paid by Seller. Seller further acknowledges that the financial costs associated with assigning and selling a portion of the Estimated Award is accurately summarized in Section 1. For the avoidance of doubt, Seller understands that he is accepting $151,770.00 as the purchase price for the sale of $165,000.00, and that the difference between these two amounts is $13,230.00, which amount will continue to increase until the Purchased Asset has been Delivered to the Purchaser in full.

4.13. Independent Judgment. Seller has carefully read this Agreement in its entirety; (ii) Seller has had an adequate opportunity to consider this Agreement and to consult with independent

9

 Initial here

counsel of his choice regarding its terms; (iii) Seller understands all of the terms hereof; (iv) Seller has relied wholly upon his individual judgment, belief and knowledge of the nature, extent and effect of the terms contained in the Agreement, including the summary of financial terms contained herein; (v) Seller voluntarily assents to all of the terms and conditions contained herein; and (vi) Seller is authorized to sign this Agreement.

4.14    None of the representations or warranties made by Seller contains any untrue statement of a material fact or omits to state any material fact necessary in order to make the statements contained herein or therein, in the light of the circumstances under which made, not misleading.

5.      Covenants of Seller. Seller covenants to Purchaser as follows:

5.1.   Collection. Seller shall use its best efforts to collect the Estimated Award and take all steps to make it available to the Purchaser for delivery of the Purchased Asset. Without limiting all other provision herein, within 15 days following Seller's or its attorney's receipt of the Estimated Award or all portions thereof, Seller or its attorney shall pay to the Purchaser the Purchased Asset (as calculated in accordance with Section 2) until paid in full.

5.2.   No Reduction or Modification. Seller shall not negotiate or enter into any agreement to reduce or modify the Estimated Award.

5.3.   Notification of Changes. Seller shall immediately notify the Purchaser of any change in the terms of the Estimated Award as it applies to the Seller.

5.4.   Obligation to Update. Upon request of the Purchaser, Seller shall provide Purchaser with updates, including status and documentation changes, if any, in respect of the litigation, Estimated Award, or the Purchased Asset.

5.5.   Additional Documents and Actions. Seller shall execute such additional documents and take such further action as may be reasonably necessary or desirable for the Purchaser to perfect any and all interests of the Purchaser in respect of the Purchased Asset;

5.6.   Tax Liens. If the Seller becomes a party to any tax lien dispute with any governmental agency or incurs any judgments against it, Seller shall immediately notify Purchaser of same.

 Initial here

5.7. <u>Payment of Taxes.</u> Seller shall promptly pay all federal, state or all other taxes relating to him or his properties.

5.8. <u>No 1099.</u> Seller will not issue any Form 1099 to Purchaser in connection with the Purchased Asset.

5.9. <u>Change in Counsel.</u> Seller shall immediately notify Purchaser in writing if there is any change in his/her legal of other representation.

5.10. <u>Other Advances Not Permitted.</u> Seller acknowledges that Seller may not solicit or accept funding or advances against the Estimated Award from any other source or funding companies unless and until the entire Purchased Asset is delivered to Purchaser.

5.11. <u>Notice of Assignment to Seller's Attorney.</u> Seller shall request that the attorney representing Seller in connection with the litigation review and sign the Attorney Acknowledgement and Notice of Assignment attached hereto as <u>Exhibit A</u>. If Seller changes his attorney subsequent to the execution of this Agreement, Seller shall have a continuing obligation to obtain an Attorney Acknowledgement and Notice of Assignment from the newly retained attorney or attorneys. Failure to do so with all subsequent attorneys shall be deemed an immediate default hereunder and the Purchased Asset shall become immediately due and payable.

5.12. <u>Case Updates.</u> In the event that the Seller or his attorney fail to provide updates and or relevant information regarding Seller's claim for the Estimated Award pursuant to the settlement of the litigation, Purchaser shall be entitled to contact the Seller's attorney directly to inquire about the status of the settlement and timing of payment of the Estimated Award.

6. <u>Closing Conditions.</u> The payment of the Purchase Price to the Seller is contingent upon the occurrence of all of the following conditions:

6.1. <u>Accuracy of Representations and Warranties.</u> The accuracy of Seller's representations and warranties contained herein.

11


Initial here

6.2. Documents. Seller shall have obtained the signature of his attorney on Exhibit A, and executed and provided his attorney with an executed copy of Exhibit B.

6.3. Disclosures and Acknowledgments. Seller shall have individually reviewed each provision of this Agreement, and initialed each page to certify that he has read an understood all provisions on that page.

7. Breaches by Seller.

7.1. The occurrence of any of the events listed below shall constitute a breach of this Agreement:

7.1.1. Seller breaches any representation or warranty contained in this Agreement;

7.1.2. Seller fails to satisfy any covenant contained in this Agreement;

7.1.3. Seller files for bankruptcy;

7.1.4. Seller incurs any federal, state or other tax lien or judgment;

7.1.5. Seller fails to stay current for any federal, state or other tax payment due;

7.1.6. Seller becomes the subject of a civil lien and/or civil judgment relating to him or his properties;

7.1.7. Seller engages in any other action or behavior that could encumber the Seller's Estimated Award or the Purchased Asset; or

7.1.8. Seller fails to immediately notify Purchaser of receipt of any partial payment of the Estimated Award and fails to pay that amount to Purchaser (or the balance of any amount still due for the Purchased Asset) in accordance with the terms of this Agreement.

12

 Initial here

7.2. Cure Period. If a breach occurs with regard to any representation or warranty set forth herein of which Purchaser becomes aware, Purchaser agrees to give Seller notice of such breach and Seller shall have a five (5) day period to cure any such breach.

7.3. Right to Injunction. Purchaser and Seller agree that in addition to any other legal rights and remedies allowable to Purchaser for any breach by Seller, Purchaser shall be entitled to enforce Seller's obligations hereunder by court injunction, or court ordered affirmative action, which injunction or ordered action may also serve to restrain a future breach of this Agreement if there is reasonable ground to believe that such a breach is threatened.

7.4. Termination by Purchaser. If Seller breaches this Agreement, Purchaser may terminate its obligations under this Agreement and shall be entitled to the immediate delivery in full from Seller of the Purchased Asset, as well as all costs, fees and expenses incurred by Purchaser in connection with enforcing its rights under this Agreement. For avoidance of doubt, the notice and cure periods applicable to breaches are solely set forth in Section 7.2 above.

7.5. Fees and Expenses. Seller shall pay to Purchaser all costs and expenses incurred by Purchaser (including third party fees, reasonable attorney's fees and court costs) to enforce its rights under the terms of this Agreement.

8. Miscellaneous Provisions

8.1. Notice. ANY required notice set forth herein by either party shall be in writing and (i) delivered by overnight courier, (ii) certified mail, or (iii) transmitted by facsimile and confirmed by a similar mailed writing, to the following address (email is specifically excluded as a proper form of notice):

To Purchaser:
ParkSettlement NFL Fund 1
1025 Westchester Avenue
Suite 311
White Plains, NY 10604

To Seller:

13

 Initial here

8.2. <u>Right to Claim Not Transferred; Use of Funds</u>. The parties to this Agreement acknowledge the following: (i) the Purchaser is not acquiring the Seller's right to pursue a claim in connection with the underlying litigation resulting in the settlement; (ii) the Net Purchase Price for the Purchased Asset will be used for immediate economic and personal necessities or other purposes that Seller deems important; (iii) the Seller or other class representative has already made a claim in the underlying litigation, and that, pending final resolution of any remaining appeals, the Seller's claim in the underlying litigation has been settled; and (iv) Seller and Purchaser acknowledge Purchaser will in no way be involved in or have any influence over the decisions made by Seller and his attorney in connection with the Seller's claim, and that the right to make those decisions remains solely with Seller and Seller's attorney.

8.3. <u>Bankruptcy</u>. Seller is not presently, nor intends to be, a party to any action or proceeding for relief under any federal or state bankruptcy or insolvency law or appointment of a trustee or receiver for all or any portion of Seller's assets including the Estimated Award. In the event Seller commences or has commenced against it, any case, or other proceeding, pursuant to any bankruptcy, insolvency or similar law prior to full delivery of the Purchased Asset, Seller shall cause the Purchased Asset amount to be categorized as an asset of Purchaser and not of Seller. In no event shall Seller permit the Purchased Asset to be described as a debt obligation of Seller in any such proceeding, except as may be required by law.

8.4. <u>Pledge Rights</u>. Seller relinquishes any rights to sell, assign, pledge or transfer any rights in the Purchased Asset that it is entitled to from the settlement other than to Purchaser.

8.5. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument. A faxed signature of this Agreement shall be effective to bind such party to the terms hereof, but an original of such signature shall be promptly forwarded to the other party.

8.6. <u>Integration</u>. This Agreement constitutes the complete agreement and understanding of the parties with respect to the subject matter hereof, supersedes any prior agreements or

14

 Initial here

understandings of the parties (whether oral or written) with respect to the subject matter hereof and may be amended only in a writing signed by the parties.

8.7.    Enforceability of Agreement. If any provision of this Agreement is held to be illegal, void or unenforceable, such provision shall be of no force or effect. However, the illegality or unenforceability of such provision shall have no effect upon, and shall not impair the legality or enforceability of, any other provision of this Agreement.

8.8.    Construction. For purposes of construction, this Agreement shall be deemed to have been jointly drafted by the respective parties and their counsel, and the rule of construction of contracts that ambiguities are construed against the drafting party shall not be applied against any person.

8.9.    Governing Law. This Agreement shall be construed in accordance with and be governed by the laws of the State of New York without regard to conflicts of laws principles.

8.10.   Successors and Assigns. This Agreement is binding upon, and, shall inure to the benefit of the parties, and their respective heirs, executors, administrators, successors and assigns.

8.11.   Additional Documents. As a condition to Purchaser's obligations hereunder, Seller has provided Purchaser with executed copies of the following documents:  (1) Irrevocable Authorization and Directive, attached hereto as Exhibit A; (2) Attorney Acknowledgment and Notice of Assignment, as Exhibit B; and (3) a letter from Seller's primary physician attesting to Seller's mental competency.

8.12.   Indemnification. Seller will indemnify Purchaser for any and all claims, losses, liabilities, obligations, damages, penalties, judgments, suits, causes of action, and related costs and expenses of any nature (including reasonable attorney's fees and courts costs) suffered by Purchaser arising from or relating to Seller's breach of any representation, warranty, covenant or other obligation contained herein or any claim asserted against Purchaser relating to this Agreement, except for claims asserted against Purchaser resulting directly from Purchaser's gross negligence or willful misconduct).

15

Initial here

8.13.  No Assignment. To protect PARKSETTLEMENT against the possibility of disputes with third parties, I will not hereafter sell, assign or grant any interest in or to the Proceeds to anyone nor permit the attachment of any lien in, to or upon the Proceeds. ANY assignment, sale, conveyance, hypothecation, encumbrance, security interest or lien, or attempt to do any of the foregoing by me without PARKSETTLEMENT's express written permission in violation of this Section 8.13 shall be wholly void and of no effect.

8.14.  Survival. Seller's obligation to indemnify the Purchaser shall survive the termination of this Agreement.

8.15.  Execution. This Agreement has been duly executed by the Seller and Purchaser and represents their respective legal, valid and binding obligations, enforceable in accordance with its terms for the benefit of the parties hereto and their respective successors-in-interest, heirs, executors, representatives, successors and assigns.

8.16.  Assignment. Purchaser and any party to whom Purchaser assigns this Agreement may assign its rights, title, and interests in and to this Agreement including the Purchased Asset without any further authorization or approval from Seller. Furthermore:

8.16.1.  If Purchaser assigns its rights to a third party, Purchaser shall not be responsible to Seller and Seller may look solely to such third party for performance of this Agreement.

8.16.2.  Upon request of Purchaser or assignee of Purchaser, Seller shall execute and deliver any documents, as either party reasonably requires, for performance of this Agreement.

8.16.3.  In no event shall Seller be permitted to assign its rights and obligations under this Agreement.

8.17.  No Originators. Seller has not engaged any originator in connection with this Agreement other than the one who submitted an intake sheet ("Originator"), who is representing me pursuant to a separate originator agreement. I acknowledge and agree that Purchaser may (but shall not be obligated to): (i) pay to Originator any fees due under such originator agreement ("Originator Fee"); and (ii) deduct such Originator Fee from the Purchase Price. I agree to

16

Initial here

indemnify Purchaser for any and all loss or damage, which Purchaser sustains by reason of my use of any originator, including but not limited to attorneys' fees and cost incurred by Purchaser.

8.18. Rescission. Seller may rescind this Agreement within five (5) business days following the Seller's execution of this Agreement, without penalty or further obligation, by providing written notice to the Purchaser at the address provided in this Agreement by no later than 5:00 p.m. EDT on the 5th business day.

8.19. Dispute Resolution. Notwithstanding anything to the contrary herein, Purchaser and Seller unconditionally agree that any dispute, controversy or claim arising out of, or relating in any way to this purchase and sale Agreement, including without limitation, any dispute concerning the construction, validity, interpretation, enforceability, alleged breach by either party, and/or any other term set forth in the Agreement shall be exclusively resolved by binding arbitration. Such arbitration shall be initiated by Purchaser or Seller submitting the dispute to the American Arbitration Association within 30 days of written notice to the other party. Within thirty (30) days of notice of a dispute, Purchaser and Seller agree to meet at an agreed upon location in NY to attempt to resolve the dispute in good faith without the necessity of moving forward with binding Arbitration though the American Arbitration Association. Should the dispute not be resolved between the parties within 60 days of the above referenced meeting, either party may seek remedies exclusively through a binding arbitration request to the American Arbitration Association and/or one of their representatives. Both parties to this Agreement agree that if arbitration becomes necessary, the process and procedure including naming of the arbitrator's shall be governed by American Arbitration Association's suggested guidelines and/or procedures. The final decision made through the Arbitration shall be binding on both parties. Either Purchaser or Seller may apply (in the event of an urgent issue) to a New York State or federal court for interim or emergency relief, including without limitation a proceeding to compel arbitration as set forth above. ANY arbitration shall be conducted within the jurisdiction of the State of New York. The laws of the State of New York shall be applied in any arbitration proceeding, without regard to principles of conflict of laws. It is the intent of the parties that, barring extraordinary circumstances, arbitration proceedings will be concluded within one hundred and twenty 120 days from the date the arbitrator/s are appointed. The arbitrators may extend this time limit in the interests of justice. Except as may be required by law, neither party nor its representatives may disclose the existence, content, or results of any arbitration hereunder without the express prior written consent of both Purchaser and Seller. Both Purchaser and Seller shall exchange a copy of any exhibits intended for use at the arbitration hearing and shall identify

17

 Initial here

each witness who will testify at the arbitration, with a summary of the anticipated testimony of such witness to later than ten (10) days before the arbitration hearing. The arbitrator shall award interest from the time of the dispute/breach to the time of the arbitration award at the rate of interest that, if this transaction was re-characterized as a loan, is equal to the maximum rate permitted by law in the State of New York, The cost of the arbitration proceeding shall be borne by the unsuccessful party to the arbitration. The arbitrator shall issue his or her decision based on sound legal principles.

8.20. Enforcement of Arbitration Decision. It is specifically understood and agreed to by the parties that either of them may enforce any award rendered pursuant to the arbitration provisions of this section by moving to compel the award in the appropriate New York court. Further, the parties agree that the arbitrator shall have authority to grant injunctive or other forms of equitable relief to either party.

8.21. Amendments/Modifications Binding; No Beneficiaries.    All amendments to, or modifications of, this Agreement shall be binding upon the parties, despite any lack of separate or additional consideration therefore, so long as such amendments or modifications shall be in writing and signed by Seller and Purchaser. The parties acknowledge and agree that, except for assignee of Purchaser, which is specifically intended to be third-party beneficiaries under the terms of this Agreement, there are no other third-party beneficiaries of any promises, obligations or representations made herein.

8.22. Complete Understanding.

SELLER UNDERSTANDS THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT IS A COMPLEX FINANCIAL TRANSACTION. BY SIGNING THIS AGREEMENT, SELLER IS ASSIGNING ITS RIGHTS TO A PORTION OF THE AWARD THAT SELLER MAY RECEIVE IN REGARD TO THE CASE. IN RETURN FOR SELLER'S ASSIGNMENT, SELLER WILL RECEIVE AN IMMEDIATE CASH PAYMENT THAT IS SIGNIFICANTLY LESS THAN THE PORTION OF THE AWARD THAT SELLER IS ASSIGNING. SELLER IS STRONGLY ENCOURAGED BEFORE SIGNING THIS AGREEMENT TO CONSULT WITH AN ATTORNEY AND/OR TRUSTED FINANCIAL ADVISOR OF SELLER'S CHOICE, WHO CAN ASSIST SELLER IN DETERMINING WHETHER THIS TRANSACTION WILL BEST FULFILL SELLER'S FINANCIAL NEEDS AND OBJECTIVES AND PROTECT SELLER'S INTERESTS IN THE EVENT SELLER CHOOSES TO PROCEED WITH THIS TRANSACTION.

18

 Initial here

9.23. Prior Funding Agreements. ANY and all prior receipt of funds of a similar nature are disclosed below. You must check the appropriate box:

I have NOT received any funds from any person in a transaction of a nature similar to that contemplated by this Agreement.

OR

☐ I have received funds in a transaction of a nature similar to that contemplated by this Agreement prior to receiving funds from PARKSETTLEMENT as listed below. I acknowledge and agree that PARKSETTLEMENT may (but shall not be obligated to): (i) pay to such persons the aggregate amount due under such other agreements (collectively, the "Payoff Amount"); and (ii) to deduct the Payoff Amount from the Total Funded Amount

| Name of Other Party | Date of Funding: | Funding Amount | Payoff Amount: |
|---|---|---|---|

9.24. Confidentiality. The Seller agrees to keep this Agreement confidential and not to disclose the existence of this Agreement or its terms, except as required by law.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first written above.

SELLER:

By [redacted]

Printed Name: [redacted]

NOTARY

State of ___Colorado___
County of ___Denver___

On this, the __02__ day of __March__, 2017 before me, __Joshua Pinkham__ ___Tawnya Sue Arnold__
the undersigned officer, personally appeared [redacted] , known to me
(or satisfactorily proven) to be the person whose name subscribed to the within instrument,
and acknowledged that he executed the same for the purposes therein contained.

I witness whereof, I hereby set my and official seal

19

JOSHUA PINKHAM
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20154045706
My Commission Expires May 17, 2020

[redacted] nitial here

Notary Public

My commission expires: May 17, 2020

     (NOTARIAL SEAL)

JOSHUA PINKHAM
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20164018906
My Commission Expires May 17, 2020

By: _____
Printed Name: Tawnya Sue Arnold ATTORNEY-IN-FACT for ████████

NOTARY

State of ████████
County of ████████

On this, the ___0𝑡ℎ___ day of ___March___, 2017, before me ████████ ;
the undersigned officer, personally appeared Johnnie Morton, known to me
(or satisfactorily proven) to be the person whose name subscribed to the within instrument,
and acknowledged that he executed the same for the purposes therein contained.

I witness whereof, I hereby set my and official seal

Notary Public

My commission expires: May 17, 2020
(NOTARIAL SEAL)

JOSHUA PINKHAM
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20164018906
My Commission Expires May 17, 2020

PURCHASER:

PARKSETTLEMENT

By: _____

Name: _____

Title: _____

20

████ Initial here

EXHIBIT A

## ACKNOWLEDGMENT AND NOTICE OF ASSIGNMENT

Glaser Weil LLP
Mr. Fred D. Heather
425 California Street
San Francisco, CA 94104

RE: *In Re: National Football League Players' Concussion Injury Litigation*
*No. 2:12-md-02323-AB*

I have been engaged to represent ▮▮▮▮▮▮ ("Client") in regard to his pending claim in the
matter of *In Re: National Football League Players' Concussion Injury Litigation* (the
"Concussion Litigation"), arising out of the U.S. federal court in the Eastern District of
Pennsylvania, docketed under No. 2:12-md-02323-AB, and his potential receipt of a financial
settlement thereunder (the "Award"). I do not represent the Client in this Sales Agreement, nor
have I reviewed the agreement with him.

All capitalized terms not otherwise defined herein shall have the same meanings ascribed to them
in that certain Non-Recourse Sales and Purchase Agreement date February 25, 2017 by and
between ParkSettlement NFL Fund 1 as Purchaser and ▮▮▮▮▮▮ as Seller (the "Sales
Agreement").

I acknowledge that on February 25, 2017, ▮▮▮▮▮▮ assigned and transferred to
Purchaser, on a non-recourse basis, a portion of his estimated Award to which he may be entitled
under the terms of the settlement of the Concussion Litigation. I make no representation if Client
will actually qualify for the settlement.

I further understand the portion of the estimated Award from the Concussion Litigation that
Client has sold, assigned and transferred to Purchaser pursuant to the Sales Agreement is the
amount of $165,000.00; however, the amount of the Estimated Award sold, assigned and
transferred to Purchaser increases over time, and Section 2 of the Sale Agreement shall be
determinative of the exact amount purchased by Purchaser (such amounts collectively referred to

21



itial here

hereinafter as the "Purchased Asset"). Purhased Asset specifically exclude any amount for attorney fee and expense and shall never be used to pay back the Purchased Asset.

As the attorney of record for Client in the Concussion Litigation, I will receive all proceeds of the Award on behalf of Seller and, I am responsible for the final distribution of Client's Award based on my engagement letter with Seller in connection with the Concussion Litigation. As such, I acknowledge that the Sales Agreement entitles Purchaser to an amount of the Award equal to the Purchased Asset, and constitutes an encumbrance that must be satisfied prior to any funds from such Award being distributed to Client personally, or to any other third party, subject to applicable laws.

I also acknowledge receipt of a document titled "Irrevocable Authorization and Directive," signed by Client, which obligates me to direct and pay funds equal to the Purchased Asset to Purchaser prior to making any distribution to Client personally, or to any other third party, subject to applicable laws.

I agree to comply with the directions set forth in the "Irrevocable Authorization and Directive." I agree to distribute an amount equal to the Purchased Asset to the Purchaser from the proceeds of the Award in accordance with the Irrevocable Authorization and Directive before any other monies that are the subject of the Award are made to Client personally, or to any other third party, subject to applicable laws.

Further, I agree to disburse any and all such payments constituting the Purchased Asset directly to Purchaser by certified check from my law firm's IOLTA account, or via wire or ACH within a reasonable period of time in keeping with my law firm's normal practice pursuant to the settlement of the Concussion Litigation or otherwise required by law. I further agree that no monies shall be paid to any third parties from the Award to the extent payment to such third parties would leave less than adequate funds to fully pay back the Purchased Asset. In such an event, I agree to hold funds, not including any fees and expenses, in trust until the issue is resolved with the third party.

Additionally, I acknowledge I have received Client's authorization to confer with representatives of Purchaser in regard to any aspect of this Acknowledgement and Notice of Assignment, the Sales Agreement, the Irrevocable Authorization and Directive, and/or any other aspects the transactions contemplated hereby and thereby.

22

nitial here

In order to induce Purchaser to consummate the transactions contemplated herein and purchase the Purchased Asset, I hereby make the following limited representations and warranties:

1. Other than as listed immediately below, I have no knowledge (after making inquiry of Client) of any liens, judgments, lawsuits (other than the Concussion Litigation itself), orders, garnishments or other encumbrances of any nature whatsoever, which do now or could in the future encumber Client's anticipated Award for settlement of the Concussion Litigation;

2. ANY and all monies received on behalf of Client in regard to his Concussion Litigation settlement award shall be deposited into my firm's IOLTA account prior to any distribution to Client or any other parties. My engagement letter with Client provides that the Award payable to Client shall be paid to my firm's IOLTA account and the relevant provisions of the engagement letter relating to it have not been modified.

3. Purchaser will be the first priority payee for distributions from my firm's IOLTA account for Client's Award pursuant to the Concussion Litigation or otherwise required by law, and Purchaser shall receive payment in an amount equal to the Purchased Asset before any funds are distributed to Client personally, or to any other third party.

4. To the extent payment to such third party would leave less than adequate funds I agree to hold funds in trust, (not including any fees and expenses) until the issue is resolved.

5. If at any time prior to full payment of the Purchased Asset to Purchaser I no longer represent Client with respect to the matters addressed herein, I will provide Purchaser with notice of the change in Client's representation, and the name of Client's subsequent attorney(s) (if known to me) within fifteen (15) days of such change occurring.

Glaser Weil LLP
Mr. Fred D. Heather
425 California Street
San Francisco, CA 94104

_____

3/7/2017
Date

23

 nitial here

EXHIBIT B

## IRREVOCABLE AUTHORIZATION AND DIRECTIVE

Glaser Weil LLP
Mr. Fred D. Heather
425 California Street
San Francisco, CA 94104


February 25, 2017

RE: ███████████ *Award in the matter of In re: National Football League Player's Concussion Injury Litigation; Docket No: 2:12-md-02323-AB*

Dear Mr. Fred D. Heather:

I write to inform you that I have entered into a binding Non-Recourse Sales and Purchase Agreement dated February 25, 2017 (the "Sales Agreement") with ParkSettlement NFL Fund 1 ("PARKSETTLEMENT") pursuant to which I sold and assigned the amount of $165,000.00,of my anticipated award arising out of the matter of In re: National Football League *Player's Concussion injury Litigation; Docket No: 2:12-md-02323-AB* (the "Award"). The amount of the Award sold and assigned to Purchaser is subject to change, and Section 2 of the Sales Agreement shall be determinative of the exact amounts owed (such amounts referred to hereinafter as the "Purchased Asset"). Capitalized terms otherwise not defined herein shall have the same meanings ascribed to them in the Sales Agreement. The Sales Agreement is attached hereto as Exhibit A.

24

 Initial here

Pursuant to the terms of the Sales Agreement, I agreed to send to you this letter; accordingly, I hereby give you (and any other attorney at your firm representing me in regard to the above captioned matter) my express authorization, as my attorney, to follow the instructions set forth below with regard to any and all payments received on my behalf, in connection with the matter captioned above.

My instructions are as follows:

1. I authorize and direct you to pay the amount of the Purchased Asset to PARKSETTLEMENT, no later than fifteen (15) business days following the receipt of any and all award monies received by you on my behalf, in whole or in part, arising out of *In re: National Football League Player's Concussion Injury Litigation; Docket No: 2.12-md-02323-AB* in which you represent me, and before any such funds are disbursed to me personally, or to any other third party. I direct you, or a representative of your firm, to contact Marc Waldman, principal of PARKSETTLEMENT for a current pay off amount of the Purchased Asset.

I further direct you to pay the Purchased Asset to PARKSETTLEMENT through a check written from your IOLTA account, by certified funds, or through electronic transfer. Payments should be sent to

ParkSettlement NFL Fund 1
1025 Westchester Avenue
Suite 311
White Plains, NY 10604

2. I authorize and direct you, or a representative of your firm, to personally notify a representative of PARKSETTLEMENT, in writing, of the total amount of any portion of my Award that is received by you, including the date upon which the funds were received, as well as a breakdown of the anticipated disbursements from the Award.

3. I authorize and direct you and or a representative of your firm familiar with this matter, to provide to Marc Waldman, principal of PARKSETTLEMENT of the status of my claim and the

25

 Initial here

3. I authorize and direct you and or a representative of your firm familiar with this matter, to provide to Marc Waldman, principal of PARKSETTLEMENT of the status of my claim and the anticipated date of the receipt of my Award, as may be requested by either of them from time to time.

4. I authorize and direct you to notify Marc Waldman, principal of PARKSETTLEMENT, upon becoming aware of any lien, judgment, lawsuit or encumbrance of any nature that could in any way affect, delay or diminish the disbursement of my financial Award.

5. I authorize you to provide Marc Waldman, principal of PARKSETTLEMENT, prompt notice of any change in your firm's representation of me or any changes in our engagement letter.

6. I authorize you to provide information to Marc Waldman, principal of PARKSETTLEMENT, relating to the status of the Concussion Litigation, my participation in same and other information that he may reasonable request (provided by you).

Please be advised that this Authorization and Directive is irrevocable, binding and may only be altered by the express written consent of PARKSETTLEMENT.

I thank you in advance for your cooperation.

NOTARY

State of ___Colorado___
County of ___Denver___

Joshua Pinkham

On this, the __02__ day of __March__, 2017, before me ~~twelve Six Arnold~~ the undersigned officer, personally appeared __Tavana Su Arnold__, known to me (or satisfactorily proven) to be the person whose name subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

I witness whereof, I hereby set my and official seal

Notary Public

```
JOSHUA PINKHAM
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20154016988
My Commission Expires May 17, 2020
```

26

 initial here

My commission expires: May 17, 2020

(NOTARIAL SEAL)

By: _____

Printed Name: Tawnya Sue Arnold ATTORNEY-IN-FACT for ████

NOTARY

State of ___Colorado___
County of ___Denver___

On this, the _02_ day of _March_, 2017 before me _Joshua Pinkham_, the undersigned officer, personally appeared ████ known to me (or satisfactorily proven) to be the person whose name subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

I witness whereof, I hereby set my and official seal.

_____
Notary Public

My commission expires: May 17, 2020
(NOTARIAL SEAL)

```
        JOSHUA PINKHAM
        NOTARY PUBLIC
      STATE OF COLORADO
     NOTARY ID 20164019908
   My Commission Expires May 17, 2020
```

27

████ Initial here

WIRING INSTRUCTION

TO: ParkSettlement NFL Fund 1
FROM: ███████████

I hereby direct ParkSettlement NFL Fund 1, to forward the net amount to which I am entitled pursuant to my Sale and Purchase Agreement via bank wire or ACH to the account below. I will also send a photo of a voided check from the same account below to my Broker to verify account and ABA routing information.



DATED this _02_ day of _March_ ___, 2017

███████████

NOTARY

State of
County of

On this, the _02_ day of _March_ ___ 2017, before me _Joshua Pinkham_
the undersigned officer, personally appeared ███████████ known to me
(or satisfactorily proven) to be the person whose name subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

I witness whereof, I hereby set my and official seal
Notary Public

My commission expires: _May 17, 2020_
(NOTARIAL SEAL)

```
JOSHUA PINKHAM
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20164014008
My Commission Expires May 17, 2020
```

28

 Initial here

## GENERAL POWER OF ATTORNEY

KNOW ALL PERSONS BY THESE PRESENT:

That I ▮▮▮▮▮ an adult resident citizen of ▮▮▮▮▮ residing at ▮▮▮▮ ▮▮▮▮ have made, constituted and appointed, and by these presents do make, constitute and appoint, Tawnya Sue Arnold my true and lawful attorney to act as follows, that is to say:

1.     Disposition of Property. To sell, assign, transfer, convey, exchange, deed, mortgage, pledge, lease, let, license, demise, remise, quitclaim, bargain or otherwise dispose of any or all of my real estate, stocks, bonds, evidences of indebtedness and other securities and other personal tangible and intangible or mixed property, or any custody, possession, interest or right therein at public or private sale, upon such terms, consideration, and conditions as my said attorney shall deem advisable and to execute, acknowledge and deliver such instruments and writings of whatsoever kind and nature as may be necessary, convenient or proper in the premises.

2.     Collection of Debts. To demand, collect, recover, sue for, receive and give receipt or release for any monies, debts, dividends, interests, royalties, legacies, annuities, demands, discounts, income, rents, profits, securities or other property of any sort, now or hereafter due or becoming due to me or to which I may be or hereafter become entitled.

3.     Endorsements.

a)     To endorse and negotiate for any and all purposes all promissory notes, bills of exchange, checks, drafts or other negotiable or non-negotiable paper payable to me or to my order;

b)     To endorse for transfer all certificates of stock, bond or other securities;

c)     To endorse and cash United States Savings Bonds and notes.

4.     Executing Government Vouchers. To execute vouchers in my behalf for any and all allowances, compensation and reimbursements properly payable to me by the Government of the United States or any agency or department thereof.

29

 initial here

5.     Depositing Money and Other Property. To deposit in my attorney's or my name, or jointly in both our names, in any banking institution, funds or property, and to withdraw any part or all of my deposits at any time made by me in my behalf.

6.     Borrowing Money. To borrow money in my name when deemed necessary to my said attorney upon such terms as to my said attorney appear proper and to execute such instruments as may be requisite for such purpose.

7.     Acquisition of Property. To buy, receive, lease, accept or otherwise acquire in my name and for my account property, real, personal or mixed, upon such terms, considerations and conditions as my said attorney shall think proper.

8.  .   Recovering Possession of Property. To eject, remove or relieve tenants or other persons from, and recover possession of, any property, real, personal or mixed in which I now or hereafter may have an interest.

9.     Litigation. To institute, maintain, defend, compromise, arbitrate or otherwise dispose of, any and all actions, suits, attachments or other legal proceedings for or against me.

10.     Tax Returns. To prepare and execute any tax returns, including, but not limited to, Federal income tax returns, State income tax returns, Social Security tax returns, and Federal and Federal income tax returns, State income tax returns, Social Security tax returns, and Federal and State information and estimated returns; to execute any claims for refund, protests, applications for abatement, petitions to the United States Board of Tax Appeals or any other Board or Court, Federal or State, consents and waivers to determination and assessment of taxes and consents and waivers agreeing to a later determination and assessment of taxes than is provided by statute of limitations; to receive and endorse and collect any checks in settlement of any refund of taxes; to examine and to request and receive copies of any tax returns, reports and other information from the United States Treasury Department or any other taxing authority, Federal or State, in connection with any of the foregoing matters.

11.     Automobiles. To execute and deliver to the proper persons and authority any and all documents, instruments and papers necessary to effect proper registration of any automobile in which I now or may hereafter have an interest, or the sale thereof and transfer of legal title thereto as required by law, and to collect and receipt for all monies paid in consideration of such sale and transfer.

FURTHER, I do authorize my aforesaid attorney to execute, acknowledge and deliver any instrument under seal or otherwise, and to do all things necessary to carry out the intent hereof, hereby granting unto my said attorney full power and authority to act in and concerning the premises as fully and effectually as I may do if personally present.

30

 Initial here

PROVIDED, however, that all business transacted hereunder for me or for my account shall be transacted in my name, and that all endorsements and instruments executed by my said attorney for the purpose of carrying out the foregoing powers shall contain my name, followed by that of my said attorney and the designation "attorney-in-fact".

This Power of Attorney shall not be affected by any subsequent disability or incompetence.

I further declare that any act or thing lawfully done hereunder by my said attorney shall be binding on myself and my heirs, legal and personal representatives and assigns, whether the same shall have been done either before or after my death, or other revocation of this instrument, unless and until reliable intelligence or notice thereof shall have been received by my said attorney.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this the _O2_ day of ___March___, 20_17_.

Witnesses: #1 _Chris Breeda_ #2 _Jay Savage_

Name and Address _Chris Breeda___ 700 Colorado Blvd Denver, CO 80206

Name and Address _Jay Savage__ 700 colorado Blvd Denver, Co 80206

STATE OF __Colorado__

COUNTY OF __Denver__

PERSONALLY came and appeared before me, the undersigned authority in and for the jurisdiction aforesaid, the within named ▮▮▮▮▮▮▮, who acknowledged to me that he signed, executed and delivered the foregoing Power of Attorney on the day and year therein mentioned.

GIVEN under my hand and official seal of office, this the _O2_ day of __March__, 20_17_.

31

▮▮▮ Initial here

NOTARY PUBLIC

My Commission Expires:

___May 17, 2020___

> JOSHUA PINKHAM
> NOTARY PUBLIC
> STATE OF COLORADO
> NOTARY ID 20156013908
> My Commission Expires May 17, 2020

## EXHIBIT C

### ACKNOWLEDGMENT AND NOTICE OF ASSIGNMENT

RE:    *In Re: National Football League Players' Concussion Injury Litigation*
*No. 2:12-md-02323-AB*

RE:    *In Re: National Football League Players' Concussion Injury Litigation*
*No, 2:12-md-02323-AB*

I have been engaged to represent ▮▮▮▮▮▮ ("Client") in regard to his pending claim in the matter of *In Re: National Football League Players' Concussion Injury Litigation* (the "Concussion Litigation"), arising out of the U.S. federal court in the Eastern District of Pennsylvania, docketed under No. 2:12-md-02323-AB, and his potential receipt of a financial settlement thereunder (the "Award"). I do not represent the Client in this Sales Agreement, nor have I reviewed the agreement with him.

All capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in that certain Non-Recourse Sales and Purchase Agreement date February 25, 2017 by and between ParkSettlement NFL Fund 1 as Purchaser and ▮▮▮▮▮▮ as Seller (the "Sales Agreement").

32

 Initial here

I acknowledge that on February 25, 2017, ▮▮▮▮▮▮▮ assigned and transferred to Purchaser, on a non-recourse basis, a portion of his estimated Award to which he may be entitled under the terms of the settlement of the Concussion Litigation. I make no representation if Client will actually qualify for the settlement.

I further understand the portion of the estimated Award from the Concussion Litigation that Client has sold, assigned and transferred to Purchaser pursuant to the Sales Agreement is the amount of $165,000.00; however, the amount of the Estimated Award sold, assigned and transferred to Purchaser increases over time, and Section 2 of the Sale Agreement shall be determinative of the exact amount purchased by Purchaser (such amounts collectively referred to hereinafter as the "Purchased Asset"). Purchased Asset specifically exclude any amount for attorney fee and expense and shall never be used to pay back the Purchased Asset.

As the attorney of record for Client in the Concussion Litigation, I will receive all proceeds of the Award on behalf of Seller and, I am responsible for the final distribution of Client's Award based on my engagement letter with Seller in connection with the Concussion Litigation. As such, I acknowledge that the Sales Agreement entitles Purchaser to an amount of the Award equal to the Purchased Asset, and constitutes an encumbrance that must be satisfied prior to any funds from such Award being distributed to Client personally, or to any other third party, subject to applicable laws.

I also acknowledge receipt of a document titled "Irrevocable Authorization and Directive," signed by Client, which obligates me to direct and pay funds equal to the Purchased Asset to Purchaser prior to making any distribution to Client personally, or to any other third party, subject to applicable laws.

I agree to comply with the directions set forth in the "Irrevocable Authorization and Directive." I agree to distribute an amount equal to the Purchased Asset to the Purchaser from the proceeds of the Award in accordance with the Irrevocable Authorization and Directive before any other monies that are the subject of the Award are made to Client personally, or to any other third party, subject to applicable laws.

Further, I agree to disburse any and all such payments constituting the Purchased Asset directly to Purchaser by certified check from my law firm's IOLTA account, or via wire or ACH within a reasonable period of time in keeping with my law firm's normal practice pursuant to the

33

 Initial here

settlement of the Concussion Litigation. I further agree that no monies shall be paid to any third parties from the Award to the extent payment to such third parties would leave less than adequate funds to fully pay back the Purchased Asset. In such an event, I agree to hold funds, not including any fees and expenses, in trust until the issue is resolved with the third party.

Additionally, I acknowledge I have received Client's authorization to confer with representatives of Purchaser in regard to any aspect of this Acknowledgement and Notice of Assignment, the Sales Agreement, the Irrevocable Authorization and Directive, and/or any other aspects the transactions contemplated hereby and thereby.

In order to induce Purchaser to consummate the transactions contemplated herein and purchase the Purchased Asset, I hereby make the following limited representations and warranties:

1. Other than as listed immediately below, I have no knowledge (after making inquiry of Client) of any liens, judgments, lawsuits (other than the Concussion Litigation itself), orders, garnishments or other encumbrances of any nature whatsoever, which do now or could in the future encumber Client's anticipated Award for settlement of the Concussion Litigation:

2. ANY and all monies received on behalf of Client in regard to his Concussion Litigation settlement award shall be deposited into my firm's IOLTA account prior to any distribution to Client or any other parties. My engagement letter with Client provides that the Award payable to Client shall be paid to my firm's IOLTA account and the relevant provisions of the engagement letter relating to it have not been modified.

3. Purchaser will be the first priority payee for distributions from my firm's IOLTA account for Client's Award pursuant to the Concussion Litigation, and Purchaser shall receive payment in an amount equal to the Purchased Asset before any funds are distributed to Client personally, or to any other third party.

4. To the extent payment to such third party would leave less than adequate funds I agree to hold funds in trust, (not including any fees and expenses) until the issue is resolved.

5. If at any time prior to full payment of the Purchased Asset to Purchaser I no longer represent Client with respect to the matters addressed herein, I will provide Purchaser with notice of the change in Client's representation, and the name of Client's subsequent attorney(s) (if known to me) within fifteen (15) days of such change occurring.

34

 Initial here

Glaser Weil LLP
Mr. Fred D. Heather
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067

_____

Mr. Fred D. Heather

_____

Date

_____

_____

Date

EXHIBIT D

35

Initial here

ACKNOWLEDGMENT AND NOTICE OF ASSIGNMENT

RE:   *In Re: National Football League Players' Concussion Injury Litigation*
*No. 2:12-md-02323-AB*

RE:   *In Re: National Football League Players' Concussion Injury Litigation*
*No. 2:12-md-02323-AB*

I have been engaged to represent ████████████ ("Client") in regard to his pending claim in the matter of *In Re: National Football League Players' Concussion Injury Litigation* (the "Concussion Litigation"), arising out of the U.S. federal court in the Eastern District of Pennsylvania, docketed under No. 2:12-md-02323-AB, and his potential receipt of a financial settlement thereunder (the "Award"). I do not represent the Client in this Sales Agreement, nor have I reviewed the agreement with him.

All capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in that certain Non-Recourse Sales and Purchase Agreement date February 25, 2017 by and between ParkSettlement NFL Fund 1
as Purchaser and ████████████ as Seller (the "Sales Agreement").

I acknowledge that on February 25, 2017, ████████████ assigned and transferred to Purchaser, on a non-recourse basis, a portion of his estimated Award to which he may be entitled under the terms of the settlement of the Concussion Litigation. I make no representation if Client will actually qualify for the settlement.

I further understand the portion of the estimated Award from the Concussion Litigation that Client has sold, assigned and transferred to Purchaser pursuant to the Sales Agreement is the amount of $165,000.00; however, the amount of the Estimated Award sold, assigned and

36

Initial here

transferred to Purchaser increases over time, and Section 2 of the Sale Agreement shall be determinative of the exact amount purchased by Purchaser (such amounts collectively referred to hereinafter as the "Purchased Asset"). Purhased Asset specifically exclude any amount for attorney fee and expense and shall never be used to pay back the Purchased Asset.

As the attorney of record for Client in the Concussion Litigation, I will receive all proceeds of the Award on behalf of Seller and, I am responsible for the final distribution of Client's Award based on my engagement letter with Seller in connection with the Concussion Litigation. As such, I acknowledge that the Sales Agreement entitles Purchaser to an amount of the Award equal to the Purchased Asset, and constitutes an encumbrance that must be satisfied prior to any funds from such Award being distributed to Client personally, or to any other third party, subject to applicable laws.

I also acknowledge receipt of a document titled "Irrevocable Authorization and Directive," signed by Client, which obligates me to direct and pay funds equal to the Purchased Asset to Purchaser prior to making any distribution to Client personally, or to any other third party, subject to applicable laws.

I agree to comply with the directions set forth in the "Irrevocable Authorization and Directive." I agree to distribute an amount equal to the Purchased Asset to the Purchaser from the proceeds of the Award in accordance with the Irrevocable Authorization and Directive before any other monies that are the subject of the Award are made to Client personally, or to any other third party, subject to applicable laws.

Further, I agree to disburse any and all such payments constituting the Purchased Asset directly to Purchaser by certified check from my law firm's IOLTA account, or via wire or ACH within a reasonable period of time in keeping with my law firm's normal practice pursuant to the settlement of the Concussion Litigation. I further agree that no monies shall be paid to any third parties from the Award to the extent payment to such third parties would leave less than adequate funds to fully pay back the Purchased Asset. In such an event, I agree to hold funds, not including any fees and expenses, in trust until the issue is resolved with the third party.

Additionally, I acknowledge I have received Client's authorization to confer with representatives of Purchaser in regard to any aspect of this Acknowledgement and Notice of Assignment, the Sales Agreement, the Irrevocable Authorization and Directive, and/or any other aspects the transactions contemplated hereby and thereby.

37

 Initial here

In order to induce Purchaser to consummate the transactions contemplated herein and purchase the Purchased Asset, I hereby make the following limited representations and warranties:

1.  Other than as listed immediately below, I have no knowledge (after making inquiry of Client) of any liens, judgments, lawsuits (other than the Concussion Litigation itself), orders, garnishments or other encumbrances of any nature whatsoever, which do now or could in the future encumber Client's anticipated Award for settlement of the Concussion Litigation.

2.  ANY and all monies received on behalf of Client in regard to his Concussion Litigation settlement award shall be deposited into my firm's IOLTA account prior to any distribution to Client or any other parties. My engagement letter with Client provides that the Award payable to Client shall be paid to my firm's IOLTA account and the relevant provisions of the engagement letter relating to it have not been modified.

3.  Purchaser will be the first priority payee for distributions from my firm's IOLTA account for Client's Award pursuant to the Concussion Litigation, and Purchaser shall receive payment in an amount equal to the Purchased Asset before any funds are distributed to Client personally, or to any other third party.

4.  To the extent payment to such third party would leave less than adequate funds I agree to hold funds in trust, (not including any fees and expenses) until the issue is resolved.

5.  If at any time prior to full payment of the Purchased Asset to Purchaser I no longer represent Client with respect to the matters addressed herein, I will provide Purchaser with notice of the change in Client's representation, and the name of Client's subsequent attorney(s) (if known to me) within fifteen (15) days of such change occurring.

Glaser Weil LLP
Mr. Fred D. Heather
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067

_____

Mr. Fred D. Heather

_____

Date

38

 Initial here

_____

_____
Date

39

 Initial here

