UNITED STATED DISTRICT COURT<br>FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | Case No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden,<br>*on behalf of themselves and others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | Civ. Action No.: 14-cv-00029-AB |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

<strong>MEMORANDUM OF LAW IN SUPPORT OF<br>EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND<br>ORDER TO SHOW CAUSE WHY COURT SHOULD NOT ENTER<br>PERMANENT INJUNCTION</strong>

I.     **INTRODUCTION**

Co-Lead Class Counsel ("Class Counsel") respectfully submits this Memorandum of Law in support of the accompanying Motion for entry of a Temporary Restraining Order ("TRO") to prevent Third-Party Funder, Thrivest Specialty Funding, LLC ("Thrivest"), from proceeding with an arbitration it commenced against a Class Member[1] on April 11, 2018 in Philadelphia, Pennsylvania, bearing American Arbitration Association Case No. 01-18-0001-4765 (the "Arbitration").  The Court has the authority to issue the requested relief, pursuant to the All Writs

---

[1]     Class Counsel will provide the Class Member's identity to the Court *in camera* upon request.  Class Counsel recognizes that Thrivest disclosed the Class Member's identity in its filing yesterday (ECF No. 9923), however, Class Counsel does not believe such public disclosure was appropriate and chooses not to repeat it.

1

Act, 28 U.S.C. § 1651(a), and this Court's continuing and exclusive jurisdiction over the Settlement Agreement (ECF No. 6481-1) and any disputes arising related thereto, in accordance with the terms of the Settlement Agreement which are expressly incorporated in this Court's Amended Final Order and Judgment approving it.  *See In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351 (E.D. Pa. 2015), *amended final order and judgment entered*, No. 2:12-MD-02323-AB, 2015 WL 12827803 (May 8, 2015) (ECF No. 6534).  Class Counsel seeks a TRO halting the Arbitration forthwith and an Order to Show Cause why Thrivest should not be permanently enjoined from proceeding with this Arbitration, any other arbitration, or any separate state court action against the Class Members in connection with assignment agreements that this Court has already determined are void, invalid and of no force and effect.  A proposed order is submitted herewith.

## II.   **BACKGROUND**

A copy of Thrivest's Demand for Arbitration, and the attachments thereto (the "Arbitration Demand"), are attached as Exhibit 1 to the accompanying Declaration of Christopher A. Seeger, dated May 1, 2018 (the "Seeger Decl.").  Because Thrivest sought emergency interim relief in the Arbitration, an initial scheduling teleconference was held on April 27, 2018, and Thrivest's request for emergency relief will be heard on May 4, 2018 at 1:00 p.m.  *See* Seeger Decl., at ¶¶ 2, 5, 7. Accordingly, Class Counsel requests expedited relief in this Court and moves by Order to Show Cause.

In connection with the Arbitration, Thrivest contends that the arbitrator should ignore this Court's Orders dated December 8, 2017 and February 20, 2018.  Despite months of briefing before this Court, in which Thrivest participated as an Objector,[2] and a pending appeal to the Third

---

[2]      *See* ECF Nos. 8876, 8879, 8943, 9762.

Circuit, in which Thrivest chose not to participate, Thrivest is now attempting in a collateral arbitration proceeding to convince the arbitrator that (i) its Non-Recourse Finance Transaction, Sale and Purchase Agreement, dated December 8, 2016, between Thrivest and the Class Member (the "Purchase Agreement") (attached as Exhibit A to the Arbitration Demand) is still valid and enforceable, despite this Court's Orders that hold otherwise.  *See* Explanation and Order, dated Dec. 8, 2017 at 5 (ECF No. 9517) (the "Explanation and Order") (holding that the Settlement Agreement prohibits assignments of Monetary Awards and such assignments are "void, invalid and of no force and effect"); Order, dated Feb. 20, 2018 (ECF No. 9749) (directing the Claims Administrator to pay directly to the Settlement Class Member any and all Monetary Awards in cases where there has been found an improper assignment of any right or claim pursuant to Section 30.1 of the Settlement Agreement).

During the initial Arbitration scheduling conference, Attorney Robert Wood, as individually-retained counsel for the Class Member, advised the arbitrator that Class Counsel would file the present Motion for injunctive relief, and the arbitrator asked to be notified immediately if the Court rules on this Motion prior to the hearing on May 4, 2018 at 1:00 p.m.  *See* Seeger Decl. ¶¶ 2, 5, 7.  In the Arbitration, Thrivest seeks (i) a declaratory judgment that the Purchase Agreement is valid and enforceable (despite the Explanation and Order determining that it is "void, invalid and of no force and effect"); (ii) damages for purported breach of the Purchase Agreement; (iii) an award of emergency interim relief, whereby the Class Member would be ordered to pay into his attorney's escrow account $750,000 of his award (once received) pending final disposition of the arbitration; and (iv) an award of attorney's fees and costs of the Arbitration.

As the Court is aware, the parties and several Third-Party Funders (as defined in the Explanation and Order), including Thrivest, have thoroughly briefed the issues Thrivest raises in

the Arbitration.  *See*, *e.g.*, Letter from Thrivest to the Court, dated Mar. 9, 2018 (ECF No. 9764); Letter from Class Counsel to the Court, dated Mar. 15, 2018 (ECF No. 9780).  It is important to note that, having been accorded Objector status by this Court on November 2, 2017 (ECF No. 8879), allowing it to file an objection (ECF No. 8943) to the motion of Class Counsel seeking to have the Claims Administrator withhold funds purportedly owed to Third-Party Funders and claims services providers (ECF No. 8470), thereby relieving Thrivest of the need to formally intervene, Thrivest took no formal action[3] after this Court entered the Explanation and Order, which plainly and unequivocally ruled that the Settlement Agreement prohibits all assignments – not just those purportedly entered into as between Class Members and RD Legal Funding, LLC, the untenable position taken by Thrivest.  Nor did Thrivest take any action after this Court issued the follow-up Order on February 20, 2018, directed to the Claims Administrator, as other Third-Party Funders did.  *See* ECF No. 9794 (Notice of Appeal by Cash4Cases and Atlas Legal Funding entities).  For Thrivest to now seek arbitration and, indeed, emergency relief from the arbitrator is patent forum-shopping.

Allowing Thrivest's Arbitration against the Class Member to proceed would waste time and resources, result in inconsistent awards, or result in independent and potentially contradictory legal conclusions.  If Thrivest is permitted to pursue collateral proceedings in an end run around this Court's Explanation and Order, and the rescission procedure established therein, there would likely be multiple future arbitrations or state court actions by other Third-Party Funders (as defined

---

[3] Instead of appealing or moving for reconsideration, Thrivest instead belatedly wrote a letter to the Court.  ECF No. 9764.  Yesterday, undoubtedly because individually-retained counsel for the Class Member, Mr. Wood, advised Thrivest and the arbitrator that Class Counsel intended to file the instant Motion to halt the arbitration, *see* Seeger Decl. at ¶ 7, Thrivest wrote and filed via ECF a letter to the Claims Administrator and Special Masters (ECF No. 9923), attempting to reargue to those Court appointees the assignment issue already decided by the Court.

in the Explanation and Order) on this issue, and the awards likely would be inconsistent. This outcome would waste time and resources. Further, if these future proceedings were heard by different arbitrators, each could come to their own independent and potentially contradictory conclusions. This is the very result that the All Writs Act is designed to avoid. Because of the risk of harm to other Class Members, the Court should enjoin Thrivest from pursuing arbitration or a state court action on this issue.

There is no material difference between the Thrivest Purchase Agreement and the assignment agreements that the Court set forth as examples of the types of agreements that were improper, which were attached to its December 13, 2017 Notice and Attachments (ECF No. 9531) that was the follow up to the Explanation and Order.

Accordingly, the Claims Administrator also determined that the Thrivest assignment was improper, pursuant to its procedures. *See* Waiver Relinquishing Rights Under Attempted Assignment (attached as Exhibit L to the Arbitration Demand); Claims Administrator's Rules Governing Assignment of Claims (attached as Exhibit J to the Arbitration Demand). In the Explanation and Order, the Court expressly ruled that the provision of the Settlement Agreement prohibiting assignment of claims, also prohibits assignment of a Class Member's monetary awards. Explanation and Order at 3. Thrivest now seeks to make these same arguments in the Arbitration, but, as the Court has stated, these types of arguments are tantamount to "linguistic backflips." *See* Explanation and Order at 4 n.6.

III.  **ARGUMENT**

A.  **Thrivest Should Be Enjoined from Proceeding with this Arbitration, Other Arbitrations or any Collateral State Court Action**

Permanent injunctive relief should be granted under the All Writs Act, 28 U.S.C. 1651(a), or alternatively a preliminary injunction should be granted under Rule 65 of the Federal Rules of

Civil Procedure.  Under Rule 65, the four factors that a court must consider in determining whether to grant a preliminary injunction are: (1) whether the movant has demonstrated reasonable probability of eventual success in the litigation; (2) whether the movant has demonstrated that it will be irreparably injured *pendente lite* if relief is not granted to prevent a change in the *status quo*; (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.  *Ortho Pharm. Corp. v. Amgen, Inc.*, 882 F.2d 806, 812-13 (3d Cir. 1989); *see also Bear, Stearns & Co. v. Lavin*, No. 9206785, 1993 WL 56061, at *1 (E.D. Pa. Mar. 1, 1993) (granting preliminary injunction enjoining arbitration proceedings).

In this case, the Class Member has a high likelihood of success on the merits, as the Thrivest Purchase Agreement is substantially similar to the type of agreement specifically described in Explanation and Order and attached to the Notice and Attachments.  The Class Member will be irreparably injured if Thrivest is successful in obtaining the broad relief it requests in the Arbitration, as it seeks a determination of substantive rights contrary to this Court's rulings. Also, Thrivest and the other Third-Party Funders will not be damaged, as the Explanation and Order is being appealed by RD Legal Funding, LLC to the Third Circuit (*see* ECF Nos. 9558, 9755), and that appeal is proceeding apace.  Appellants have filed their opening brief, and appellees' answering brief is due on May 25, 2018.

The public interest and the goals of multidistrict litigation weigh in favor of uniform results that will be promoted by having this Court resolve this issue.  Also, "a party seeking arbitration may waive its right to arbitration when the party opposing the arbitration demonstrates sufficient prejudice arising from the delay of the party seeking arbitration in making its demand."  *Gray Holdco, Inc. v. Cassady*, 654 F.2d 444, 451 (3d Cir. 2011). "[A] party should not be allowed to delay its demand for arbitration and use federal court proceedings to test the water before taking a

swim." *Id.* at 453 (internal quotation marks omitted).  Having been accorded Objector status in this MDL and then failing to avail itself of that status to litigate the validity of its putative assignments, Thrivest should not be allowed to now seek contrary relief in arbitration.  This Court resolved the issue and the appropriate method of challenging that ruling was a timely appeal.

Therefore, the Court should enter an injunction pursuant to the All Writs Act, 28 U.S.C. § 1651(a), to halt Thrivest's backdoor attack on the Court's ruling.  As the Second Circuit noted, "[i]njunctions issued under the authority of the All Writs Act stem from very different concerns than those motivating preliminary injunctions governed by Federal Rule of Civil Procedure 65.  Preliminary injunctions under Rule 65 are designed to preserve the status quo between the parties before the court pending a decision on the merits of the case at hand." *In re Baldwin United Corp. (Single Premium Deferred Annuities Ins. Litig*.), 770 F.2d 328, 338-39 (2d Cir. 2001).   An injunction issued under the All Writs Act, however, is "needed to prevent third parties from thwarting the court's ability to reach and resolve the merits of the federal suit before it." *Id.*  Furthermore, "there is a difference between the power to enjoin an unrelated nonparty pursuant to the All Writs Act and the narrower authority delineated by Rule 65(d), which confines the application of injunctions to parties, 'their officers, agents, servants, employees, and attorneys, and [to] those persons in active concert or participation with them who receive actual notice of the order.'" *Id.*

In the context of the All Writs Act, "courts have recognized that injunctions exist outside of the traditional injunction framework governed by Fed. R. Civ. P. 65." *Ackerman v. Exxon Mobil Corp*., 734 F.3d 237 (4th Cir. 2013); *accord Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004) ("The requirements for a traditional injunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by

the Act, is grounded in entirely separate concerns.") (citing *United States v. N.Y. Tel. Co.,* 434 U.S. at 174) (upholding injunction under All Writs Act without regard to traditional four factors)). Courts can therefore issue injunctions pursuant to the All Writs Act "if doing so would be 'necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law,' 28 U.S.C. § 1651(a), and provided that the terms of the injunction are sufficiently 'specific and definite' to apprise the party enjoined of the conduct which is prohibited and that the party enjoined receive notice of the injunction entered against them." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 JG, 2014 WL 4966072, at *32 (E.D.N.Y. Oct. 3, 2014).

The injunction that Class Counsel requests here satisfies these requirements. Class Counsel requests that the Court enjoin Thrivest from proceeding with this Arbitration, any other arbitrations, or any separate state court action against Class Members in connection with assignment agreements that this Court has already determined are void, invalid and of no force and effect, and from misrepresenting the effect of the Settlement Agreement and the Explanation and Order to arbitrators or state court judges. This action is necessary and appropriate in aid of the Court's efficient administration of the Settlement, and to prevent (1) confusion among Class Members, (2) circumvention if not outright violation of the Explanation and Order, and (3) unlawful taking of Class Members' monetary awards.

Entry of an injunction will also discourage other Third-Party Funders from communicating false interpretations of the Explanation and Order to Class Members in an effort to recoup monies under agreements that the Court has declared are void, invalid, and of no force and effect. An injunction protecting the affected Class Member (and prospectively others as well) and otherwise safeguarding the integrity of the class action process is therefore appropriate.

8

**B.      This Court Has Jurisdiction over Thrivest**

This Court has subject matter jurisdiction over this matter pursuant to the All Writs Act, 28 U.S.C. § 1651(a).  The All Writs Act permits courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions[.]"  28 U.S.C. § 1651(a).  The All Writs Act permits this Court to retain jurisdiction over its previously issued orders in the Settlement.  Pursuant to the Court's continuing and exclusive jurisdiction under Article XXVII of the NFL Concussion Settlement Agreement (as amended, the "Settlement Agreement"), this Court retained jurisdiction over the class settlement and its enforcement, and the Amended Final Order and Judgment reiterated this continuing jurisdiction.  *See* ECF Nos. 6481-1 (at 95), 6534 (at 8 ¶17).  It is undisputed that Thrivest is attempting to arbitrate with someone who is a Class Member, and therefore someone over whom this Court stands as a fiduciary.  Because Thrivest's claims are barred by the Court's ruling interpreting the anti-assignment provision of the Settlement Agreement, an injunction is required to protect the Class Member from collateral proceedings.

MDL judges, particularly those presiding over a certified class, possess authority over parties and nonparties, as related to the Settlement and the administration thereof, over which they preside, under the MDL statute, 28 U.S.C. § 1407, Fed. R. Civ. P. 23(d), and the All Writs Act, 28 U.S.C. § 1651. "Where, as here, a district court retains exclusive jurisdiction over settlement agreements and distribution of settlement funds pursuant to those agreements, it may issue orders necessary to protect the settlement from threats by both parties *and non-parties*."  *In re Visa Check/Mastermoney Antitrust Litig.*, No. CV-96-5238 (JG), 2006 WL 1025588, at *4 (E.D.N.Y. Mar. 31, 2006) (citing *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d at 336 (emphasis added)); *In re Payment Card*, 2014 WL 4966072, at *31.

Indeed, in *Visa Check*, the court held that because the non-parties' "contracts with class members plainly affect the administration of the settlements and the distribution of the settlement funds, the All Writs Act authorize[d] the relief sought by Lead Counsel." 2006 WL 1025588, at *5. In that case, the third party was Spectrum, a claim-filing and fund recovery service for commercial class actions, which sought to "entice class members to retain Spectrum to administer their claims and … to purchase their claims outright." *Id.* at *1. Quoting the Supreme Court, the *Visa Check* court held that "'[t]he power conferred by the [All Writs] Act extends, under appropriate circumstances, to persons who, though *not parties to the original action* or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice'….[including] declar[ing] contracts between third parties and class members void." *Id.* at *5 (quoting *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174 (1977)) (emphasis added).

The *Visa Check* court emphasized its intimate involvement with the litigation, the settlement and the administration of the settlement, and recognized its power to be proactive vis-à-vis third parties seeking to involve themselves with class members in order to profit from the settlement funds:

> I have presided over this action since 1996. With the express consent of all parties, I played an active role in the settlement discussions and have maintained an active role in the administration of the settlement.… The settlement of a long, hard-fought case has given those class members a tangible interest in settlement funds. I have an affirmative obligation to protect those interests…. The nature of the Court's interest is as simple as it is strong: the class members must not be misled. Where false or misleading statements are used to solicit business from them, I have no intention to sit by and relegate them to a cause of action for breach of contract or fraud. To do otherwise-that is, *to say that I am powerless to take steps, both proactive and reactive, to protect each class member's interest in the settlement funds, even when I know they are being misled-would be an abdication of responsibility. It would also erode the class members' and the public's respect for the settlements themselves, and for the process that produced them.*

*Id.* at \*4 (emphasis added); *see also*, *e.g.*, *In re Payment Card*, 2014 WL 4966072, at \*1 (court's "clear" authority and "strong" obligation to safeguard class members permitted it to permanently enjoin third-party claims filing companies from filing claims if they knowingly made material false or misleading statements in order to solicit business).  This Court has been similarly proactive throughout the implementation phase of this litigation and is likewise far from powerless to take steps to protect Class Members from third parties in furtherance of the Court's fiduciary duties and authority under Rule 23.  It is fully empowered to exercise jurisdiction over Thrivest and order it to terminate the Arbitration.

The All Writs Act frequently has been used in the context of class action settlements in which the federal court has entered an injunction against relitigation and has retained jurisdiction to "guard the integrity of its prior rulings."  *See Pacheco De Perez v. AT&T Co.*, 139 F.3d 1368, 1379-80 (11th Cir. 1998); *see also Yonkers Racing Corp. v. City of Yonkers*, 858 F.2d 855, 863 (2d Cir. 1988) (holding that the All Writs Act may provide for jurisdiction in exceptional circumstances, e.g., where removal is necessary in order to protect the integrity of a federal consent decree).  Federal courts consistently have held that they are entitled to exercise jurisdiction under the All Writs Act in cases involving "consent decrees or complex class litigation that would be undermined by actions in other [state] courts."  *Hyatt Corp. v. Stanton*, 945 F. Supp. 675, 692 (S.D.N.Y. 1996).

In a multidistrict litigation, the court requires complete control over the action and has the authority to take appropriate steps to prevent interference with or frustration of its orders.  As the Second Circuit in *In re Baldwin-United Corp.* noted, "the need to enjoin conflicting state proceedings arises because the jurisdiction of a multi-district court is 'analogous to that of a court in an *in rem* action or in a school desegregation case, where it is intolerable to have conflicting

11

orders from different courts.'"  770 F.2d at 337 (quoting treatise).  In effect, this Court has before

it "a class action proceeding so far advanced that it [is] the virtual equivalent of a res over which

the district court require[s] full control."  *Id.; see also In re Diet Drugs*, 282 F.3d 220, 235 n.12

(3d Cir. 2002) ("courts have analogized complex litigation cases to actions in rem"); *Battle v.

Liberty Nat'l Life Ins. Co.*, 877 F.2d 877, 882 (11th Cir. 1989) ("This lengthy, complicated

litigation is the virtual equivalent of a res."); *In re PaineWebber Ltd. Partnerships Litig.*,  No. 94-

civ-8547, 1996 WL 374162, *3 (S.D.N.Y. July 1, 1996); *In re Asbestos School Litig.*, No. 83-

0268, 1991 WL 61156, *3 (E.D. Pa. Apr. 16, 1991); *see also In re Fraser*, 75 F. Supp. 2d 572

(E.D. Tex. 1999) (retaining continuing jurisdiction over comprehensive settlement agreement and

noting that federal court may bar litigation of the removed action); *White v. Nat'l Football League*,

41 F.3d 402, 409 (8th Cir. 1994) (noting that "the ability to facilitate the present settlement by

enjoining related suits of absent class members is ancillary to jurisdiction over the class action

itself), *abrogated on other grounds by Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997).

        In this case, issuing an injunction under the All Writs Act to prohibit Thrivest's Arbitration

is proper.  By entry of an injunction, this Court is merely furthering the exclusive and continuing

jurisdiction it retained pursuant to the Amended Final Order and Judgment to enforce the terms of

the Settlement and prevent Third-Party Funders from pursuing claims relating to the awards to

Class Members in any other forum.  This Court's intimate familiarity with the underlying issues

places it in the best position to interpret, enforce and protect its own orders.  *See*, *e.g.*, *Fraser*, 75

F. Supp. 2d at 577; s*ee also In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355,

367-68 (3d Cir. 2001) ("A district court has the power to enforce an ongoing order against

relitigation so as to protect the integrity of a complex class settlement over which it retained

jurisdiction."); *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 204 (3d Cir. 1993) (affirming

injunction preventing plaintiffs, their attorneys, agents and employees, and class they purported to represent from taking any further steps in prosecution of their claims in state court, or from initiating similar litigation in any other forum).

    **C.**    **Thrivest's Claims in the Attempted Arbitration Are Barred by the Explanation and Order**

Thrivest's claims are barred by the Explanation and Order, and, therefore, enjoining the Arbitration is proper.  Thrivest's reliance in the Arbitration Demand on *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010), for the proposition that even where the validity of the contract to arbitrate is at issue, the matter must be left to the arbitrator, is misplaced.  As subsequent Supreme Court authority has noted, under "the proper framework for deciding when disputes are arbitrable," a court "may only order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute" and "the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce."  *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010); *see also Nieto v. 2249 Corp.*, No. 16 Civ. 7947 (LAP), 2018 WL 1737220, *6 n.3 (S.D.N.Y. Mar. 22, 2018) ("*Granite Rock*, decided after *Rent-A-Center*, controls the type of formation issue the Plaintiffs raise.").  This Court already resolved the formation issue – it determined that the assignment agreements are void, invalid and of no force and effect, including any arbitration clauses contained therein.

IV.     **CONCLUSION**

For the foregoing reasons, the Court should enter an Order, substantially in the form of the accompanying Proposed Order, and direct Thrivest to halt the Arbitration forthwith and to show cause why the permanent injunction requested therein should not issue.

Dated: May 2, 2018                                        Respectfully submitted,

                                                          /s/Christopher A. Seeger
                                                          Christopher A. Seeger
                                                          SEEGER WEISS LLP
                                                          55 Challenger Road, 6th Floor
                                                          Ridgefield Park, NJ 07660
                                                          Tel: (212) 584-0700
                                                          Fax: (212) 584-0799
                                                          cseeger@seegerweiss.com

                                                          *Co-Lead Class Counsel*