UNITED STATED DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | Case No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>                              Plaintiffs,<br><br>                    v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br><br>                              Defendants. | Civ. Action No.: 14-cv-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**DECLARATION OF CHRISTOPHER A. SEEGER IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY COURT SHOULD NOT ENTER PERMANENT INJUNCTION**

CHRISTOPHER A. SEEGER makes the following declaration pursuant to 28 U.S.C. § 1746:

1.      I am an attorney at law and a founding member of the firm Seeger Weiss LLP.  I have been appointed by this Court as Co-Lead Class Counsel in the above-captioned multidistrict litigation.  The matters set forth in this Declaration are based on my review of my firm's files concerning this matter and my personal knowledge.

2.      I submit this Declaration in support of the Emergency Motion for Temporary Restraining Order and Order to Show Cause Why Court Should Not Enter Permanent Injunction, which seeks a Temporary Restraining Order to prevent Third-Party Funder, Thrivest Specialty Funding, LLC ("Thrivest"), from proceeding with an arbitration it commenced against a Class

Member (whose identity I will provide to the Court *in camera* upon request) [1] on April 11, 2018 in Philadelphia, Pennsylvania, bearing American Arbitration Association Case 01-18-0001-4765 (the "Arbitration"), which is presently scheduled to go forward on Friday, May 4, 2018 at 1:00 p.m.; and also seeks an Order to Show Cause why Thrivest should not be preliminarily enjoined from proceeding with this Arbitration, any other arbitration, or any separate state court action against any Class Member in connection with an assignment agreement because this Court has already determined that purported assignments are void, invalid and of no force and effect.

3.　　A true copy of Thrivest's Demand for Arbitration, and the attachments thereto (the "Arbitration Demand"), are attached hereto as Exhibit 1 (the Class Member's name and other identifying information have been redacted).

4.　　As shown in the Arbitration Demand, Thrivest sought emergency interim relief in the Arbitration.

5.　　Because Thrivest sought emergency interim relief in the Arbitration, an initial scheduling teleconference was held on April 27, 2018, and Thrivest's request for emergency relief is presently set to be heard on May 4, 2018 at 1:00 p.m.

6.　　Accordingly, the Motion seeks expedited relief in this Court and moves by proposed Order to Show Cause.

7.　　During the initial Arbitration scheduling conference, the Class Member's attorney advised the arbitrator that Co-Lead Class Counsel would file the present Motion for injunctive relief, and the arbitrator asked to be notified immediately if the Court rules on this Motion prior to the hearing presently set for May 4, 2018 at 1:00 p.m.

---

[1]　　I recognize that yesterday, before Seeger Weiss had an opportunity to file this Motion, Thrivest made the Class Member's name public with its filing.  Nevertheless, as I do not believe such disclosure is appropriate, I am not revealing the Class Member's identity herein.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on May 2, 2018.

*/s/ Christopher A. Seeger*
Christopher A. Seeger

# Exhibit 1



**AMERICAN ARBITRATION ASSOCIATION®** | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

**COMMERCIAL ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

*For Consumer or Employment cases, please visit www.adr.org for appropriate forms.*

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

| | |
|---|---|
| Name of Respondent: ▓▓▓▓▓▓▓ | Name of Representative (if known): Robert C. Wood, Esquire |
| Address: ▓▓▓▓▓▓▓ | Name of Firm (if applicable): The Law Offices of Robert C. Wood/Wood Law Limited |
| | Representative's Address: 68 North High Street, Building B, Suite 202 |
| City: ▓▓ State: ▓▓ Zip Code: ▓▓ | City: New Albany State: OH Zip Code: 43054 |
| Phone No.: ▓▓▓▓ Fax No.: | Phone No.: (614) 252-3146 Fax No.: |
| Email Address: | Email Address: rwood@woodlaw.com |

The named claimant, a party to an arbitration agreement which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

Brief Description of the Dispute:

# See attached Demand for Arbitration and Application for Emergency Interim Relief

| | |
|---|---|
| Dollar Amount of Claim: $ in excess of $650,000 | Other Relief Sought:<br>☑ Attorneys Fees ☑ Interest ☑ Arbitration Costs<br>☐ Punitive/ Exemplary ☑ Other Emergency Interim Relief (see attached) |
| Amount enclosed: $ 5,000 | In accordance with Fee Schedule: ☐ Flexible Fee Schedule ☑ Standard Fee Schedule |

Please describe the qualifications you seek for arbitrator(s) to be appointed to hear this dispute:

## Commercial lawyer within 25 miles of Philadelphia, PA (19103).  Class action experience a plus.

| | |
|---|---|
| Hearing locale: Philadelphia, PA | (check one) ☐ Requested by Claimant ☑ Locale provision included in the contract |
| Estimated time needed for hearings overall:<br>4 hours or days | Type of Business: Claimant: Specialty Finance<br>Respondent: |
| Are any parties to this arbitration, ▓▓▓▓▓▓▓ ent company, from different countries than each other? No. | |
| Signature (may be signed by a rep ▓▓▓▓▓▓▓ | Date: April 11, 2018 |
| Name of Claimant: Thrivest Specialty Funding, LLC | Name of Representative: Peter C. Buckley and Mark J. Fanelli, Esquires |
| Address (to be used in connection with this case):<br>Eight Tower Bridge 161 Washington Street, Suite 240 | Name of Firm (if applicable): Fox Rothschild LLP |
| | Representative's Address: 2000 Market Street, 20th Fl. |
| City: Conshohocken State: PA Zip Code: 19428 | City: Philadelphia State: PA Zip Code: 19103 |
| Phone No.: (267) 457-4540 Fax No.: 866-697-7352 | Phone No.: (215) 299-2854 Fax No.: (215) 299-2150 |
| Email Address: jgenovesi@thrivest.com | Email Address: pcbuckley@foxrothschild.com; mfanelli@foxrothschild.com |

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100 Voorhees, NJ 08043. At the same time, send the original Demand to the Respondent.

*Please visit our website at www.adr.org if you would like to file this case online. AAA Case Filing Services can be reached at 877-495-4185.*

**FOX ROTHSCHILD LLP**
BY:  PETER C. BUCKLEY, MARK J. FANELLI, ESQUIRES
IDENTIFICATION NOS.  93123, 321283
2000 MARKET STREET, 20TH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
TEL:  (215) 299-2854
FAX:  (215) 299-2150                              ATTORNEYS FOR CLAIMANT
E-MAIL: pbuckley@foxrothschild.com                THRIVEST SPECIALTY
FUNDING, LLC

THRIVEST SPECIALTY FUNDING, LLC,

                        Claimant,

            v.                                    **DEMAND FOR ARBITRATION**

████████████

                        Respondent.

TO:    ████████████
       ████████████
       ████████████

### DEMAND FOR ARBITRATION AND
### APPLICATION FOR EMERGENCY INTERIM RELIEF

Claimant Thrivest Specialty Funding, LLC ("Thrivest") demands arbitration against Respondent ████████████ under their Non-Recourse Finance Transaction, Sale and Purchase Agreement (the "Agreement") for declaratory judgment and breach of contract.  In view of the immediate and irreparable damage that will result if the disputed portion of ██████ award in the NFL Concussion Settlement is not escrowed pending resolution of this arbitration, Thrivest seeks emergency interim relief directing ██████ to escrow $750,000 from his award (once received) in his attorney's trust account pending the arbitrator's final award.

## INTRODUCTION

An 11-year veteran of the NFL, Respondent ███ was diagnosed with amyotrophic lateral sclerosis (ALS) in October 2016. At the time, ███ owed the IRS nearly $200,000 on account of unpaid income taxes from 2008, 2011 and 2012—with interest and penalties accruing daily. ███ needed immediate financial assistance. He expected $3.5 million from the NFL Concussion Settlement, but knew he would have to wait; he could not even submit his claim until March 2017 and everyone expected delay. So, like many other putative members of the class on whose behalf Class Counsel negotiated the NFL Concussion Settlement, ███ sought an advance against his expected recovery to help bridge his financial gap.

There were numerous lenders and funding companies providing advances at the time, but ███ chose Thrivest. Thrivest offered the lowest rate (19% per annum) for any non-recourse transaction—meaning that ███ would have no obligation to repay the advance if his claim was denied and that his other assets need not be tapped in the event of a shortfall. Thrivest clearly disclosed the terms of the arrangement and obtained assurances from ███ treating neurologist regarding his diagnosis and capacity to understand the transaction. ███ attorney, Robert C. Wood, Esquire ("Attorney Wood"), notarized and acknowledged the documents and his wife consented. Thrivest advanced $500,000 of ███ expected $3.5 million recovery; ███ used $192,253.89 to satisfy his IRS liens and received $282,746.11 (the remainder less transaction fees) to use as he saw fit.[1]

By all indications, ███ was a satisfied customer. He never complained and his attorney provided regular updates on the status of his claim to Thrivest. But, in March 2018, after the

---

[1] The advance accrued and compounded monthly at a 19% per annum rate with the maximum repayment amount capped at $880,194.29, the equivalent of three years' worth of accrued returns.

Claims Administrator approved ▉ award, ▉ told Thrivest that he would not honor his promise to repay Thrivest its return due under the Agreement. Instead, ▉ gave Thrivest an ultimatum—either waive its rights under the Agreement by April 12, 2018 and recover only principal, or receive no repayment whatsoever.

▉ purported to justify his "about face" by referencing a decision from the Court in the NFL Concussion Litigation. The decision (which has been appealed) was a response to a certified question from another case, but it also purported to invalidate all transactions advancing NFL Concussion Settlement awards structured as assignments, finding them contrary to a provision in the NFL Concussion Settlement prohibiting assignment of claims. Merits of the decision aside, the case law is clear that the Court lacked jurisdiction over Thrivest's Agreement with ▉. ▉ had agreed to AAA arbitration as the exclusive method of dispute resolution in the Agreement, including for disputes over the validity of the Agreement. As the Supreme Court of the United States has ruled, where—such as here—parties have agreed to arbitrate disputes concerning a contract, including as to its validity, those challenges must be left to the arbitrator to decide. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010) ("even … where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of the contract—we nonetheless require the basis of challenge be directed specifically to the agreement to arbitrate before the court will intervene").

The Court lacked jurisdiction over Thrivest's Agreement with ▉ under both the Federal Arbitration Act and Rule 23(d) of the Federal Rules of Civil Procedure, which does not permit Class Counsel to pursue substantive relief against non-parties in the context of settlement administration. Moreover, without ever reviewing ▉ specific Agreement, the Court incorrectly interpreted it as containing an assignment of ▉ claims against the NFL or rights

3

in the Claims Administration Process, when the Agreement actually only assigns ▮▮▮ interest in certain proceeds of the NFL Concussion Litigation.  Thrivest brings this arbitration seeking a declaration that its Agreement with ▮▮▮ is valid and enforceable and for breach of its terms. Moreover, because of Thrivest's priority interest in a portion of ▮▮▮ recovery and concerns about dissipation of the amount in controversy (which Thrivest expects ▮▮▮ will receive directly from the Claims Administrator in the very near future), Thrivest seeks an interim award compelling ▮▮▮ to escrow the disputed funds in his attorney's trust account.  Absent this emergency relief under Rule 38 of the AAA Commercial Arbitration Rules and Mediation Procedures, Thrivest stands to lose its entire investment.

## PARTIES

1.     Claimant Thrivest is a Delaware limited liability company with its principal place of business at Eight Tower Bridge, 161 Washington Street, Suite 240, Conshohocken, Pennsylvania 19428.

2.     Respondent ▮▮▮ is an adult individual, a member of the class of former NFL players in the NFL Concussion Litigation, and a citizen of the State of ▮▮▮ whose last known address is ▮▮▮▮▮▮▮▮▮.

## JURISDICTION AND VENUE

3.     The Agreement between Thrivest and ▮▮▮ contains a clause designating AAA arbitration as the exclusive method of dispute resolution (the "Arbitration Clause") as follows:

> Dispute Resolution.   Notwithstanding anything to the contrary herein, Buyer and Seller unconditionally agree that any dispute, controversy or claim arising out of, or relating in any way to this purchase and sale Agreement, including without limitation, any dispute concerning the construction, *validity*, interpretation, *enforceability, alleged breach by either party*, and/or any other term set forth in the Agreement *shall be exclusively resolved by binding arbitration* upon Buyer or Seller submitting the dispute to the

4

American Arbitration Association within 30 days of written notice
to the other party.[2]

*See* Agreement at Section 6(z) (Exhibit A) (emphasis added).

4.      Thrivest and ██████ selected Pennsylvania law as governing the arbitration and agreed that the arbitration "shall be conducted within the jurisdiction of the Commonwealth of Pennsylvania;" as such, Thrivest requests that AAA designate Philadelphia as the location for the arbitration. *Id.*

5.      In the Arbitration Clause, Thrivest and ██████ expressed their intent that, "barring extraordinary circumstances, arbitration proceedings will be concluded within one hundred and twenty 120 days from the date the arbitrator/s are appointed."[3] *Id.*

6.      The Arbitration Clause obligates the "unsuccessful party" to bear the cost of the arbitration proceeding and Section 5(d) of the Agreement requires ██████ to pay "all costs and expenses incurred by [Thrivest] (including reasonable attorney's fees) paid to enforce the terms of the Agreement" in the event of a breach by ████. *See id.* at Section 5(d) and 6(z).

## FACTUAL BACKGROUND

A.      **January 2012 – April 2015: The NFL And A Class Of Former Players Litigate And Later Resolve The NFL Concussion Litigation.**

7.      On January 31, 2012, after many former NFL players had sued the league for concussion-related injuries throughout the country, the Honorable Anita Brody of the United States District Court for the Eastern District of Pennsylvania consolidated the disperse actions into a

---

[2] Although the Arbitration Clause encourages a pre-arbitration meeting in Philadelphia for the purpose of discussing resolution, such a meeting is not practicable in view of ██████ health and the impending April 12, 2018 deadline imposed by ████ for Thrivest to accept rescission of the Agreement. Moreover, ██████ attorney confirmed that mediation would not be productive considering ████ position that he need not comply with his obligations under the Agreement because, he claims, it is null and void.

[3] The Arbitration Clause is silent on the number of arbitrators.  Thrivest requests one arbitrator in accordance with Rule 12 of the AAA Rules.

single class action under her jurisdiction; that action became known as the NFL Concussion Litigation. *See In re: National Football League Players' Concussion Injury Litigation*, No. 2:12-md-02323-AB, MDL No. 2323 (E.D. Pa.).

8.      Later, after three years of intense disagreement and failed compromise, the class of former players and the NFL reached a resolution; the Court approved the Settlement Agreement on April 22, 2015 (the "Settlement Agreement"), but it did not become effective until January 7, 2017.

9.      The Settlement Agreement contained a matrix through which a player could seek compensation based on the nature and extent of his injuries and the longevity of his NFL career through an adversarial process supervised by a claims administrator (the "Claims Administration Process").

10.     Under the heading "No Assignment of Claims," the Settlement Agreement prohibited Class Members from assigning "any rights or claims relating to the subject matter of the Class Action Complaint":

> No Assignment of Claims. Neither the Settlement Class nor any Class or Subclass Representative or Settlement Class Member has assigned, will assign, or will attempt to assign, to any person or entity other than the NFL Parties *any rights or claims relating to the subject matter of the Class Action Complaint*. Any such assignment, or attempt to assign, to any person or entity other than the NFL Parties any rights or claims relating to the subject matter of the Class Action Complaint will be void, invalid, and of no force and effect and the Claims Administrator shall not recognize any such action.

*See* Settlement Agreement at 30.1 (emphasis added).

**B.** **April 2015 – March 2017: Hundreds Of Putative Class Members Obtain Critical Financial Assistance Through Advances On Their Expected Recovery Years Before The Claims Administration Process Even Opens.**

11.     Almost immediately after the Court approved the Settlement Agreement, Class Members—many of whom had been facing financial ruin due to the injuries at issue in the litigation—sought advances on their expected recoveries.

12.     Some advances were structured as loans with recourse against the Class Member's other assets in the event of a shortfall in the expected award; in those cases, the Class Member typically assigned the lender an interest in the proceeds of the NFL Concussion Settlement as security for his repayment obligations.

13.     Other advances were structured as non-recourse sale transactions where the funding company provided cash in exchange for an assignment of future proceeds from the NFL Concussion Settlement (if and when received). In those cases, the Class Member was obligated to repay the advance only from the settlement proceeds and thus the funding company bore additional risk—either that the player's claim might be denied altogether or that his award might be less than expected.

14.     To the best of Thrivest's knowledge and information, none of the hundreds of post-settlement advances was structured as an assignment of the player's rights in the NFL Concussion Litigation or the player's causes of action against the NFL.

15.     Throughout the remainder of 2015, the entirety of 2016, and most of 2017, these advances from third-party lenders and funding companies provided Class Members with the only financial relief available from the NFL Concussion Settlement because the claims submission process did not even open until March 23, 2017.

**C.** **October 19, 2016: Respondent ▮ Is Diagnosed With Amyotrophic Lateral Sclerosis (ALS) Amid Serious Financial Trouble.**

16.     On October 19, 2016, Respondent ▮—a veteran of 11 NFL seasons with the Detroit Lions, Kansas City Chiefs, and Atlanta Falcons—was diagnosed with Amyotrophic Lateral Sclerosis (ALS) by doctors at his alma mater, The Ohio State University.

17.     Fifty-two years old at the time, ▮ was facing serious financial problems when he received the diagnosis, including two IRS tax liens totaling nearly $200,000 which grew daily with interest and penalties.[4]

18.     Without immediate access to the $3.5 million he expected to receive from the NFL Concussion Settlement, ▮ turned to Thrivest for help.

**D.** **November – December 2016: ▮ Approaches Thrivest Seeking An Advance On His $3.5 Million Expectancy; After Receiving Assurances From ▮ Neurologist, Thrivest Advances $500,000 To Satisfy ▮ IRS Obligations And Provide Financial Stability; ▮ Wife And Attorney Acknowledge The Agreement.**

19.     In November 2016, ▮ approached Thrivest seeking a cash advance against his expected recovery in the NFL Concussion Litigation.

20.     At the time, Thrivest had the lowest rate of return (19% per annum) of any funding company offering non-recourse advances against proceeds from the NFL Concussion Settlement, and ▮ was incurring daily interest and penalties on his obligations to the IRS.

21.     Thrivest projected that ▮ would receive $3.5 million based on his ALS diagnosis and 11 years of service in the NFL; ▮ requested an advance that would net him

---

[4] On March 11, 2010, the IRS filed a tax lien against ▮ for $104,966.00 for failing to pay federal income taxes for the 2008 tax year. On November 10, 2015, the IRS filed a second tax lien against ▮ for $75,528.00 for failing to pay federal income taxes for the 2011 and 2012 tax years. After interest and penalties, ▮ owed a total of $195,591.97 to the IRS as of late 2016 and that amount would have continued to grow with additional interest and penalties if not for Thrivest's advance.

$450,000 after satisfying his obligations to the IRS and transaction fees,[5] but Attorney Wood later asked Thrivest to cap its advance at $500,000 total.

22.     To confirm ██████ diagnosis and capacity to make independent legal and financial decisions, Thrivest sought the opinion of ██████ treating neurologist at Ohio State, Kevin Weber, M.D. ("Doctor Weber").

23.     Doctor Weber confirmed ██████ ALS diagnosis and his professional opinion that ██████ disease "has in no way impaired [██████] ability to make his own legal, medical, and financial decisions." *See* Physician's Statement of Mental Competency (Exhibit B).

24.     Moreover, based on a review of ██████ medical records, Doctor Weber indicated that ████ has never "lacked capacity to make independent legal, medical and financial decisions." *Id.*

25.     Based on Doctor Weber's assurances, Thrivest agreed to provide ████ a $500,000 advance on terms clearly summarized on the first page of the Agreement:

---

[5] The transaction fees included lien and judgment searches. ████ did not disclose his IRS obligations to Thrivest, but Thrivest discovered them through its due diligence.

DISCLOSURE STATEMENT

| | |
|---|---|
| **Distribution:** | |
| The financial portion of the Settlement that the Seller is personally entitled to: | $3,500,000.00 |
| | |
| **TSF Distribution:** | |
| The portion of the Distribution that is being sold by the Seller and purchased by Buyer: | $ 880,194.29 |
| | |
| **The TSF Purchase Price amount:** | |
| The dollar amount being paid to the Seller by Buyer as consideration for the sale of the TSF Distribution (as set forth in Exhibit B hereof): | $ 500,000.00 |
| Payoff of prior liens and judgments: | $ 192,253.89 |
| Net payment to Seller: | $ 282,746.11 |

| Transaction Fees (which shall not be deemed to be interest (if this agreement is characterized as a loan) to be paid by Seller: | |
|---|---|
| Origination Fee | $ 2,455.00 |
| Application Fee | $ 200.00 |
| Underwriting Fee | $ 4,910.00 |
| Due Diligence Fee | $ 7,365.00 |
| Lien/Judgment Search Fee | $ 4,910.00 |
| Broker Fee | WAIVED |
| Legal Fee | $ 4,910.00 |
| Closing Fee | $ 250.00 |
| Total Transaction Fees: | $ 25,000.00 |

*See* Agreement (Exhibit A).

26.     ████ signed the Agreement on December 19, 2016 and his wife ████ signed a "Spousal Acknowledgment and Consent" that same day, acknowledging the transaction with Thrivest. *See* Spousal Acknowledgment and Consent (Exhibit C).

27.     At closing, Thrivest paid $192,253.89 to satisfy ████ IRS obligations;[6] ████ received the remainder of the $500,000 advance less Thrivest's transaction costs.

28.     Attorney Wood notarized ████ signature on the Agreement, attesting that ████ "acknowledged that he executed the same for the purposes therein contained." *See* Agreement at 4 (Exhibit A).

29.     In connection with the Agreement, ████ signed a "Limited Irrevocable Power of Attorney," which transferred authority to deposit checks payable to ████ from the NFL

---

[6] The IRS agreed to accept $192,253.89 to satisfy ████ total liability of $195,591.97.

Concussion Settlement to Thrivest; Attorney Wood notarized ███ signature on that document as well. *See* Limited Irrevocable Power of Attorney (Exhibit D) ("I understand that by executing this Power of Attorney, I am giving up the right to endorse and deposit the Payments, except as otherwise authorized by Buyer. This Power of Attorney may not be revoked or changed except upon the prior written consent of TSF.").

30.    ███ also executed a "Certification," wherein he certified (under penalty of perjury) the accuracy of all of his statements in the Agreement—including his representation to Thrivest in Section 3(c) that he "has the unrestricted right to assign the TSF Distribution;" once again, Attorney Wood notarized his signature. *See* Certification of ███████ (Exhibit E).

31.    And, to make clear to Attorney Wood his intent to comply with the Agreement, ███ executed an "Irrevocable Authorization and Directive," among other things, directing Attorney Wood to update Thrivest about the status of his claim and to remit payment directly to Thrivest within days of receiving the settlement award; Attorney Wood notarized ███ signature on that document and, in addition, executed his own "Attorney Acknowledgment and Notice of Assignment" acknowledging his awareness of the Agreement. *See* Irrevocable Authorization and Directive (Exhibit F); Attorney Acknowledgment and Notice of Assignment (Exhibit G).

32.    The Thrivest Agreement provided ███ with critical financial assistance more than fifteen (15) months before he could even submit his claim to the Claims Administrator and more than two years before his claim would ultimately be approved in March 2018.

E.   **February 2017 – February 2018: As** ████ **Waits For His Claim To Be Processed, Class Counsel Attacks "Assignment" Transactions, The Court Purports To Invalidate Them, And The Special Masters Implement A Process To That End Without Any Notice To Third-Party Funders.**

33.   On February 7, 2017, the New York Consumer Financial Protection Bureau ("CFPB") commenced an action against RD Legal Funding, LLC, RD Legal Finance, LLC, RD Legal Funding Partners, LP, and Roni Dersovitz (collectively "RD Legal") for allegedly engaging in predatory lending in connection with the NFL Concussion Settlement. *See CFPB, et al. v. RD Legal Funding, LLC, et al.*, No. 17-cv-00890 (S.D.N.Y.) (the "RD Legal Action").[7]

34.   RD Legal made advances to putative class members at rates significantly higher than those charged by Thrivest and so the CFPB asserted that RD Legal structured the transactions as assignments to avoid New York's usury laws.

35.   Although the RD Legal Action remains pending, a subsequent decision by the United States Court of Appeals for the Third Circuit involving a non-recourse purchase of future litigation proceeds makes clear that "a transaction that neither guarantees the lender an absolute right to repayment nor provides it with security for the debt is not a loan, and as a result, cannot be subject to New York's usury laws." *See Obermayer, Rebmann, Maxwell & Hippel v. West, et al.*, No. 16-1376, 2018 WL 1074310, *2 (3d Cir., Feb. 27, 2018).

36.   Due to the nature of the CFPB's allegations in the RD Legal Action, the United States District Court for the Southern District of New York considered whether the Settlement Agreement prohibited Class Members from assigning proceeds of the NFL Concussion Settlement to RD Legal in exchange for a cash advance.

---

[7] Thrivest is not involved in the RD Legal Action.

37.     Ultimately, the Court in the RD Legal Action sought guidance from Judge Brody, certifying that limited question for her input on September 8, 2017, well after ███ had executed the Agreement and benefitted from Thrivest's advance.

38.     During briefing on that certified question in the NFL Concussion Litigation, Class Counsel filed a "Motion to (1) Direct Claims Administrator to Withhold Any Portions of Class Member Monetary Awards Purportedly Owed to Certain Third Party Lenders and Claims Services Providers, and (2) Direct Disclosure to Claims Administrator of Existence of Class Member Agreements with All Third Parties" on October 23, 2017 (the "Motion to Withhold"). *See* Dkt. No. 8470.

39.     Purporting to act on behalf of affected Class Members but without any express authorization to pursue remedies against third-party funding companies and, to the best of Thrivest's knowledge, in the absence of any complaints from Thrivest's customers, Class Counsel sought to interfere with any advance that had been structured as an assignment of proceeds from the NFL Concussion Settlement.[8]

40.     Class Counsel argued that certain third-party funding companies (including Thrivest) had structured their transactions as assignments to skirt usury limitations; Class Counsel did not attack transactions structured as loans even though they typically contain assignments of a security interest in the proceeds of the NFL Concussion Settlement.[9]

---

[8] Post-settlement assignments are common in class actions and mass tort litigation. At the time of the Settlement Agreement in April 2015, it was widely known that players would seek to assign a portion of their expectancy in view of the anticipated delay in the Claims Administration Process. Notwithstanding, Class Counsel waited more than eighteen (18) months to file his Motion to Withhold.

[9] The usury laws do not apply because of the non-recourse, contingent nature of the repayment obligation in Thrivest's Agreement with ███; however, those laws demonstrate the reasonableness of Thrivest's 19% per annum return and prove that Thrivest did not structure its $500,000 advance to ███ as an assignment to avoid usury.

13

41.     Although Thrivest was not a party to the NFL Concussion Litigation, Class Counsel sent Thrivest a copy of his Motion to Withhold, purporting to serve it via e-mail on Thrivest's attorney even though sending an e-mail to counsel clearly did not comply with the Federal Rules of Civil Procedure in view of Thrivest's non-party status.

42.     Concerned about Class Counsel's attempt to, in essence, begin a new class action against third-party funding companies under the umbrella of the Claims Administration Process in the NFL Concussion Litigation, Thrivest sought and was granted an opportunity to object to the Motion to Withhold (while never acceding to the Court's jurisdiction).

43.     On November 16, 2017, Thrivest objected to Class Counsel's attempt to interfere with its agreements through the Claims Administration Process, arguing that the Court's authority over settlement administration under Federal Rule 23(d) is limited to procedural, not substantive, relief—especially when Thrivest was not even a party to the case. *See* Fed. R. Civ. P. 23(d); *see also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 (1981) (holding that Rule 23(d) "authorizes notice to protect Class Members' right to participate in the litigation[, and] it does not authorize substantive orders."); *Cobell v. Kempthorne*, 455 F.3d 317, 323-25 (D.C. Cir. 2006) (holding that district courts should not exercise their procedural authority under Rule 23(d) "without a *specific record* showing by the moving party of the particular abuses by which it is threatened.") (emphasis added).

---

Under New York law (which governs the Settlement Agreement), the maximum rate of interest for a transaction that guarantees an absolute right of repayment—i.e., a "loan"—is sixteen percent (16%) per annum. See McKinney's Banking Law §14-a[1]; McKinney's General Obligations Law §5-501[1]. It is, therefore, reasonable to expect a rate in excess of 16% per annum where there is a risk that repayment might never be obligated, as is the case with Thrivest's non-recourse advance. In addition, New York recognizes that larger transactions bear more risk and so, for loans or forbearances in the amount of two hundred fifty thousand dollars ($250,000) or more, the civil usury cap does not apply and the only limitation is the 25% per annum limit in the criminal usury statute. See McKinney's General Obligations Law §5-501[6(a)]; McKinney's Penal Law §190.42.

44.     Moreover, because Thrivest's agreements contain an arbitration clause and class action waiver, Thrivest asserted that the Federal Arbitration Act and United States Supreme Court precedent precluded the Court from assuming jurisdiction and issuing omnibus relief. *See Preston v. Ferrer*, 522 U.S. 346, 349 (2008) (noting FAA established "a national policy favoring arbitration when the parties contract for that mode of dispute resolution"); *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) (invalidating law conditioning enforcement of arbitration agreements on availability of class action procedure because it "interfere[d] with the fundamental attributes of arbitration").

45.     On December 8, 2017, Judge Brody issued an "Explanation and Order," providing the following answer to the question certified by the Court in the RD Legal Action: "yes, the NFL Concussion Litigation Settlement Agreement forbids assignments of settlement benefits." *See* December 8 Explanation and Order (Exhibit H).

46.     Judge Brody explained her interpretation of Section 30.1 of the Settlement Agreement with the following syllogism:

> Section 30.1 prevents a Settlement Class Member from assigning "any rights or claims relating to the subject matter of the Class Action Complaint." *Id.* The subject matter of the Class Action Complaint includes the allegations that directly produced the Settlement Agreement and its ***monetary claim structure***. Thus, any ***monetary claims under the Settlement Agreement*** are "relat[ed] to" the Class Action Complaint, and assignment of those claims is prohibited.

*See* December 8 Explanation and Order at 3-4 (Exhibit H) (emphasis added).[10]

---

[10] Thrivest asserts that ▮▮▮▮ and its other customers did not assign their "monetary claims under the Settlement Agreement," but rather that they assigned the proceeds of their claims and thus Thrivest disagrees with Judge Brody's reasoning, which purports to give ▮▮▮▮ the benefit of his own purported breach of the Settlement Agreement. *See Citibank, N.A. v. Tele/Resources, Inc.*, 724 F.2d 266, 268 (2d Cir. 1983) ("[a]ssignments that violate a personal covenant prohibiting assignments give[] rises to a cause of action for damages against the assignor, but [are] otherwise enforceable."). In other words, Thrivest was not a party to the Settlement Agreement and so if anyone breached the Settlement Agreement through the

47.    The December 8 Explanation and Order, however, went far beyond merely responding to the certified question; it purported to void all advances that had been structured as assignments and, citing "the principle of rescission," said that "Class Members should return to the Third-Party Funder the amount already paid to them … if the Third-Party Funder is willing to accept rescission and execute a valid waiver relinquishing any claims or rights under the entire agreement creating the assignment or attempted assignment."[11] *See* December 8 Explanation and Order at 5 (Exhibit H).

48.    The December 8 Explanation and Order did not address Thrivest's jurisdictional arguments under Rule 23(d) or the FAA, nor did it dispose of Class Counsel's Motion to Withhold (which remains pending on the docket).[12]

49.    Nevertheless, the Special Masters (appointed by the Court to supervise the Claims Administration Process) thereafter issued "Rules Governing Assignment of Claims," which purport to implement the December 8 Explanation and Order in a way that impacts the substantive

transaction, it was ███ who represented that he had authority to assign an interest in the proceeds of the settlement.

[11] Even if the Court had jurisdiction to void all advances structured as assignments in the context of the administration of the class action settlement (which it did not), under New York law (which governs the Settlement Agreement), rescission is an equitable remedy available to "place the parties where they were before the vitiated contract was made." *See 11 S. Laundry, Inc. v. MCD Assets, LLC*, 927 N.Y.S.2d 143, 2013 N.Y. Slip Op., at *6 (N.Y. Gen. Term Apr. 18, 2013). Moreover, even where a contract is void *ab initio*, New York law requires the payment of 9% statutory interest to ensure that no party "be placed in a better position after rescission than when the contract was executed." *See Id.* at *6; *see also* CPLR § 5004 (articulating statutory interest rate in New York as 9% annum). In view of the passage of so much time and ███ use of Thrivest's advance (including to end the rapid accumulation of interest and penalties to the IRS), it would be difficult—if not impossible—to return Thrivest and ███ to their positions before the Agreement and, undoubtedly, ███ would be placed in a better position.

[12] The Court issued another Order on February 20, 2018, directing the Claims Administrator to pay awards directly to Class Members (and not to their attorneys) where the Claims Administrator has notice of an assignment transaction. *See* Exhibit I. This avoided placing the attorneys in jeopardy of violating their obligations under Rule 1.15 of the Rules of Professional Conduct. *See e.g.,* Ohio RPC 1.15. Once again, the Court's February 20 Order did not dispose of Class Counsel's Motion to Withhold.

rights of third-party funders such as Thrivest.[13]  *See* Rules Governing Assignment of Claims (the "Assignment Rules") (Exhibit J).

50.    The Assignment Rules create a never-before-seen process whereby a Class Member submits his agreement with a third-party funder for review and the Claims Administrator and Special Masters determine, without any notice to or input from the third-party funder, whether the agreement is an invalid assignment under the terms of the Settlement Agreement as interpreted by the December 8 Explanation and Order.  *See* Assignment Rules at 2-3.

51.    Only after the Claims Administrator and Special Masters decide that the third-party funder's agreement is an invalid assignment do the Assignment Rules purport to involve the affected funding company, but then, only to the extent that the Class Member provides the funder with notice of an opportunity to accept rescission by waiving its rights under the agreement in exchange for return of principal only.[14]

**F.    March 12, 2008 – Present:  Without Thrivest's Knowledge Or Participation, The Claims Administrator Purports To Invalidate Thrivest's Agreement With ▮▮▮; ▮▮ Presents Thrivest With The "Waiver Option;" Attorney Wood Asserts That The Agreement Is Void And That ▮▮ Will Not Honor His Obligations Upon Receipt Of His Award.**

52.    Since closing the Agreement on December 16, 2016 (including throughout the public briefing on Class Counsel's Motion to Withhold), neither ▮▮ nor Attorney Wood ever expressed any concern about ▮▮ Agreement with Thrivest; in fact, both ▮▮ and Attorney Wood expressed their appreciation for Thrivest's transparency and fairness.

---

[13] Not only are the Assignment Rules a further violation of Rule 23(d) and the FAA, but also they violate fundamental due process rights in that they purport to adjudicate Thrivest's rights without notice or an opportunity to be heard.

[14] Perhaps in recognition of their lack of jurisdiction over the third-party funders, the Special Masters rely on the Class Members to interact with the third-party funders under the Assignment Rules. The Assignment Rules contemplate a 30-day period from notice until the "waiver deadline," however, in practice, the Class Members' delay has resulted in less time.

53.     On March 20, 2018, Attorney Wood telephoned Thrivest to indicate that ▮▮▮▮ claim had been approved and that he would soon receive his award under the NFL Concussion Settlement.

54.     Attorney Wood also indicated, however, that the Claims Administrator and Special Masters had issued a "Notice of Assignment Review Determination" on March 12, 2018, purporting to invalidate Thrivest's Agreement with ▮▮▮▮ pursuant to the Court's December 8 Explanation and Order and in accordance with the Assignment Rules.[15] *See* Notice of Assignment Review Determination (Exhibit K).

55.     Respondent ▮▮▮▮ and Attorney Wood were supposed to inform Thrivest of the Notice of Assignment Review Determination and present the Waiver Relinquishing Rights Under Attempted Assignment immediately upon receipt on March 12, 2018, but they delayed more than a week before finally sharing the documents on March 20, 2018.

56.     Attorney Wood said that Thrivest's "only option" was to sign and return the "Waiver Relinquishing Rights Under Attempted Assignment" by the deadline of April 12, 2018. *See* Waiver Relinquishing Rights Under Attempted Assignment (Exhibit L).

57.     Later on March 20, Thrivest's counsel telephoned Attorney Wood to remind him and ▮▮▮▮ of their promises and that the Agreement designated AAA arbitration as the exclusive venue for dispute resolution, including for disputes involving validity or enforceability.

58.     Attorney Wood asserted that the Agreement no longer exists in view of the December 8 Explanation and Order ("There is no agreement," he said), indicating that ▮▮▮▮

---

[15] To date, Thrivest has never received a copy of ▮▮▮▮ actual "Notice of Assignment Review Determination" from Attorney Wood, which highlights the inherit due process defects with the Claims Administrator's Assignment Rules. Therefore, Thrivest attaches a redacted "Notice of Assignment Review Determination" as an exemplar for the arbitrator's consideration.

would not honor his obligations to Thrivest and reiterating ███ view that Thrivest would not be paid except in connection with the "waiver process" initiated by the Claims Administrator.

59.     Because the Agreement is valid and enforceable obligating ███ to repay Thrivest for its $500,000 advance pursuant to the Agreement's clear terms, and because any dispute regarding the Agreement's validity or enforceability can only be decided by an arbitrator, Thrivest brings this arbitration for declaratory relief and breach of contract.

60.     And, because the Agreement provides Thrivest with a first priority security interest in the proceeds of ███ award (once received from the Claims Administrator) and there is a danger that ███ will dissipate the award before this arbitration is decided, Thrivest seeks emergency interim relief order directing ███ to escrow $750,000 of his award in his attorney's trust account pending final disposition of this arbitration.[16]

## COUNT I
## ACTION FOR DECLARATORY JUDGMENT

61.     Thrivest incorporates by reference the preceding paragraphs of this Demand.

62.     As a result of the December 8 Explanation and Order, the Assignment Rules, and ███ assertion (through Attorney Wood) that "there is no agreement," there exist questions concerning the validity, enforceability and construction of the Agreement suitable for declaratory relief.

63.     The Arbitration Clause reserves to the arbitrator exclusive jurisdiction over such questions.

---

[16] Thrivest recognizes that ███ needs and deserves compensation from the NFL Concussion Settlement and thus seeks to enjoin disposition of only that amount necessary to secure ███ s obligations under the Agreement through the expected duration of this proceeding. As of September 30, 2018, ███ will owe Thrivest $706,421.84 under the Agreement. Thrivest is requesting $750,000 to provide some security for the costs of arbitration and attorney's fees which are available under the Agreement if Thrivest prevails.

64.     Accordingly, Thrivest seeks a declaration that the Agreement is valid and enforceable, and that ▮▮▮▮ is bound by the promises he made in the Agreement in exchange for the $500,000 advance that Thrivest provided to him in December 2016.

65.     Paragraph 2(d) of the Agreement speaks to the possibility that ▮▮▮▮ assignment of future proceeds from the NFL Concussion Settlement might "for any reason be ineffective or unenforceable as such," and provides, in such circumstances, that the transaction shall be re-characterized as a loan with a security interest in the proceeds of the NFL Concussion Settlement on the terms set forth therein.

66.     In the alternative, to the extent that the arbitrator finds that the Agreement is for any reason ineffective or unenforceable as an assignment, Thrivest seeks a declaration that Section 2(d) operates to re-characterize the transaction on the terms set forth therein.

67.     Thrivest reserves the right to seek additional declaratory relief as is just and proper for the resolution of this dispute.

WHEREFORE, Thrivest demands a declaration in its favor and against ▮▮▮▮ as set forth above, together with an award of attorney's fees and the costs of this arbitration proceeding.

## COUNT II
## BREACH OF CONTRACT

68.     Thrivest incorporates by reference the preceding paragraphs of this Demand.

69.     The Agreement is a valid and enforceable contract between ▮▮▮▮ and Thrivest.

70.     Thrivest complied with its obligations under the Agreement by providing ▮▮▮▮ with a $500,000 advance on the terms and conditions set forth in the Agreement.

71.     ▮▮▮▮ breached his obligations under the Agreement, among other things, by:

        a.      Failing to use his "best efforts to collect the TSF Distribution and take all steps to make it available to [Thrivest] when due;"

20

b.      Failing to "immediately notify [Thrivest] of any change in the terms of the Settlement as it applies to [████];"

c.      Refusing to honor his repayment obligations under the Agreement and, instead, presenting Thrivest with the "waiver form" and demanding that Thrivest waive its rights under the Agreement in exchange for a return of principal only; and

d.      To the extent that the arbitrator finds that the Agreement is for any reason ineffective or unenforceable as an assignment, misrepresenting that he "has the unrestricted right to assign the TSF Distribution."

72.      ████ breaches as set forth above have harmed Thrivest.

WHEREFORE, Thrivest demands an award in its favor and against ████ in an amount to be determined at the time of the award but presently in excess of $650,000, together with an award of attorney's fees and the costs of this arbitration proceeding.

## COUNT III
## EMERGENCY INTERIM RELIEF

73.      Thrivest incorporates by reference the preceding paragraphs of this Demand.

74.      AAA Rule 38 permits an emergency arbitrator to award emergency interim relief where immediate and irreparable loss or damage would result in the absence of such relief.

75.      The Agreement provides Thrivest with a first priority security interest in the proceeds of ████ award (once received from the Claims Administrator).

76.      The Agreement contemplates that Attorney Wood will receive the proceeds of the award from the Claims Administrator and pay the amount due to Thrivest directly from his trust account before remitting the balance to ████ in accordance with the Irrevocable Authorization and Directive signed by ████ and the Attorney Acknowledgement signed by Attorney Wood; this

process was designed to provide Thrivest with security due to its concern that ▮ would dissipate the award if provided control over it before satisfying his obligations to Thrivest.

77.      Because of the February 20 Order directing the Claims Administrator to pay awards directly to Class Members (and not to their attorneys), Thrivest will be deprived of this security and there is a danger that Thrivest might vindicate its rights under the Agreement in this arbitration but never recover the funds due from ▮.

78.      Consistent with the expectations of the parties set forth in the Agreement, so as to preserve the status quo pending ultimate resolution of this dispute, and in view of the danger that ▮ will dissipate the award in view of his health and financial circumstances, Thrivest seeks emergency interim relief directing ▮ to escrow $750,000 of his award (once received) in his attorney's trust account pending final disposition of this arbitration.

WHEREFORE, Thrivest demands emergency interim relief directing ▮ to escrow $750,000 of his award (once received) in his attorney's trust account pending the arbitrator's final award, together with an award of attorney's fees and the costs of this arbitration proceeding.

*Peter C. Buckley*

Peter C. Buckley, Esquire (PA ID No. 932123)
Mark J. Fanelli, Esquire (PA ID No. 321283)
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, Pennsylvania 19103
Tel:     (215) 299-2854
Fax:     (215) 299-2150
pbuckley@foxrothschild.com

*Attorneys for Claimant,*
*Thrivest Specialty Funding, LLC*

Dated:  April 11, 2018

# EXHIBIT A

# NON- RECOURSE FINANCE TRANSACTION
# (SALES AND PURCHASE AGREEMENT)

This **PURCHASE AGREEMENT** (this "Agreement") is entered into this 8th of December, 2016 by and between, ▮▮▮▮▮▮▮▮, who resides at ▮▮▮▮▮▮▮▮, and his/her agents, successors in interest, heirs, executors, representatives, successors and assignors ( hereinafter referred to collectively as "Seller"), and Thrivest Specialty Funding, LLC, a Delaware Limited Liability Company with its principal place of business located at 2 Penn Center Plaza, 1500 JFK Blvd., Suite 220, Philadelphia, PA 19102, and its' representatives, successors and assignors (hereinafter referred to collectively as the "Buyer").

*WHEREAS*, on April 22, 2015 the United States District Court for the Eastern District of Pennsylvania entered a Final Order and Judgment approving the Settlement in the matter of *In re: National Football League Player's Concussion Injury Litigation; Docket No: 2:12-md-02323-AB / MDL No. 2323* (the "Settlement"). ▮▮▮▮▮ is an eligible claimant in the *Settlement* and has an anticipated financial award in the amount of $3,500,000.00 (the "Distribution").

*WHEREAS*, Seller has agreed to assign and sell, and Buyer has agreed to acquire and purchase, pursuant to the terms of this Agreement, all rights, title, benefits, and interests of Seller in and to the Distribution (as defined herein) until Buyer has collected $500,000.00 plus a 19% per annum investment return thereon accruing and compounding monthly (the "TSF Distribution") including all rights to payment of or on account of the TSF Distribution, and all proceeds of the Distribution until Buyer has collected the TSF Distribution.

*WHEREAS*, the parties agree that a true and accurate summary of the financial terms of this sale are accurately reflected in the Disclosure Statement below. (The Disclosure Statement shall be referred to herein as the "Disclosure Statement).

## DISCLOSURE STATEMENT

| | |
|---|---|
| **Distribution:** | |
| The financial portion of the Settlement that the Seller is personally entitled to: | $3,500,000.00 |
| | |
| **TSF Distribution:** | |
| The portion of the Distribution that is being sold by the Seller and purchased by Buyer: | $ 880,194.29 |
| | |
| The TSF Purchase Price amount: | |
| The dollar amount being paid to the Seller by Buyer as consideration for the sale of the TSF Distribution (as set forth in Exhibit B hereof): | $ 500,000.00 |
| Payoff of prior liens and judgments: | $ 192,253.89 |
| Net payment to Seller: | $ 282,746.11 |

| Transaction Fees (which shall not be deemed to be interest (if this agreement is characterized as a loan) to be paid by Seller: | | |
|---|---|---|
| Origination Fee | $ | 2,455.00 |
| Application Fee | $ | 200.00 |
| Underwriting Fee | $ | 4,910.00 |
| Due Diligence Fee | $ | 7,365.00 |
| Lien/Judgment Search Fee | $ | 4,910.00 |
| Broker Fee | | WAIVED |
| Legal Fee | $ | 4,910.00 |
| Closing Fee | $ | 250.00 |
| Total Transaction Fees: | $ | 25,000.00 |

*WHEREAS*, Seller is the holder of economic claims of loss for which Seller is entitled to

1

▮▮▮▮
*Initial here*

receive consideration payable in connection with the Settlement (collectively, the "Distribution") and, for purposes of this Agreement, the Distribution (a) shall include (i) any monetary or non-monetary consideration (including the value of any non-monetary consideration) payable to, or on behalf of, Seller in connection with the Settlement (whether by suit, judgment, settlement, or otherwise), (ii) any consequential, actual, punitive, exemplary, or treble damages on account thereof, and (iii) any interest awarded or later accruing on the foregoing, and (b) shall be calculated and determined without taking into consideration and prior to deduction of (i) any taxes payable by Seller in connection with the Distribution, (ii) setoffs of any kind, including setoffs in respect of any claim or counterclaim asserted against Seller by any person, or (iii) fees and/or expenses incurred in connection with the Settlement or the collection of any Distribution; and

*WHEREAS*, the parties agree that this sale is without recourse against the Seller (other than by a breach as defined in this Agreement below). This means that in the event that the Buyer does not receive the full TSF Distribution as agreed upon in the Agreement, the Seller shall have no personal obligation to the Buyer to pay any portion of the TSF Distribution that is not received by the Buyer.

*NOW, THEREFORE*, in consideration of the above premises and the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties, intending to be legally bound, hereby agree as follows:

## 1.   ASSIGNMENT, CONSIDERATION, RIGHT OF FIRST REFUSAL AND PAYMENT OF THE TSF DISTRIBUTION.

Seller hereby agrees to sell and assign to Buyer, his or her interest in the TSF Distribution and any future payments made in satisfaction of the TSF Distribution. Seller furthers agrees and represents that his/her interests in the TSF Distribution that are being assigned and sold are free and clear of any adverse interests in favor of, or obtained by third parties other than those liens/judgments specially set forth in this Agreement.

(a) In consideration for the purchase of the TSF Distribution, Buyer agrees to pay Seller the sum of $500,000.00 (Five Hundred Thousand Dollars and No Cents) (the TSF Purchase Price as stated in the Disclosure Statement).

(b) Seller agrees that Buyer may withhold from the TSF Purchase Price the amount of $192,253.89 to repay the current outstanding lien(s)/judgment(s) along with any penalties and interest that may have accrued with reference to the IRS Federal Tax Lien.

(c) Seller agrees that Buyer may deduct the Transaction Fees set forth in the Disclosure Statement the amount of $25,000.00 from the TSF Purchase Price.

(d) Seller hereby grants to the Purchaser a right of first refusal to purchase any or all remaining amounts in respect of the Award Amount. In the event the Seller seeks to or obtains any funding in respect to the Award Amount from a source other than the Buyer, such event shall be deemed to be an event of default under Section 4 hereof. In the event that Seller should obtain any such financing (after the Buyer declines to purchase any such amount), all amounts due under this Agreement in respect to the TSF Distribution shall be paid in full before any such financing is obtained.

(e) Payment of the TSF Distribution shall be made in accordance and pursuant to the "Additional Documents" set forth in section 5.

(f) The TSF Distribution amount is set forth in Exhibit B hereto and made a part hereof and is denoted as the Repayment Schedule.

**2.    GENERAL TERMS OF THE PURCHASE AND SALE**

(a)  Seller absolutely assigns, conveys, sells, sets over, transfers, and warrants to Buyer all rights, title, benefits, and interests of Seller in and   to:

> (i)    The TSF Distribution, all rights to payment of or on account of the TSF Distribution, and all proceeds of Distribution until Buyer has collected the TSF Distribution; and
>
> (ii)   All rights of Seller to ask for, demand, sue for, collect, receive, and enforce payment of the Distribution and to enforce all other covenants and obligations in connection with the Distribution payable to Seller, and the rights and remedies of Seller, in respect of the Distribution, until Buyer has collected the TSF Distribution (collectively, the "<u>Purchased Property</u>"), in each instance free and clear of all claims, liens, interests and encumbrances (collectively, "<u>Adverse Interests</u>").

(b)  As consideration for Seller's assignment and sale of the Purchased Property to Buyer (the "<u>Transaction</u>"), Buyer hereby agrees to pay to Seller, within three (3) business days after the date of this Agreement, $500,000.00 (the "<u>TSF Purchase Price</u>") by wire transfer pursuant to the wiring instructions for Seller (the date on which such payment is made, the "<u>Payment Date</u>").

(c)  Within three (3) business days after Seller's collection and receipt, or the collection and receipt on Seller's behalf, of any Distribution, Seller shall distribute, or cause to be distributed, all such collections and receipts to Buyer, prior to paying any expenses of Seller or making any other distributions, until Buyer has received the TSF Distribution in full. Until disbursement in accordance with the terms of this Section 2(c), Seller shall hold the Purchased Property and other Distributions in trust for Buyer. Seller and Buyer intend and agree that the Transaction shall constitute a true sale and absolute transfer of the Purchased Property to Buyer, thereby providing Buyer with the full risks and benefits of ownership of the Purchased Property, and each of Seller and Buyer agrees that the this transaction shall be reflected on their respective books and records in a manner consistent with this intent and agreement.

(d)  Notwithstanding that Seller and Buyer intend that this transaction to be a true sale, in an abundance of caution, in the event that such sale and assignment ever is characterized as a loan or other financial accommodation and not as a true sale, or that such sale shall for any reason be ineffective or unenforceable as such, each as determined in a judicial, administrative or other proceeding (any of which, a "re-characterization"), Seller hereby grants to Buyer a first-priority security interest within the meaning of Article 9 of the Uniform Commercial Code in effect as of the date hereof in the Commonwealth of Pennsylvania (the "<u>UCC</u>") in all of Seller's rights, title, benefits, and interests in and to the Distribution and any proceeds thereof in order to secure Buyer's advance of the TSF Purchase Price and Seller's obligation to pay the sum of (i) the Purchase Price, together with (ii) interest thereon from the day of disbursement of the TSF Purchase Price to the date of repayment in an amount equal to the TSF Purchase Price multiplied by (A) 19% per annum, accruing daily and compounding annually, or (B) if less, the maximum rate permitted by applicable law. Buyer may, at its option and in addition to all other rights provided to Buyer in this Agreement, and without Seller's signature or further authorization by Seller, file financing statements (including continuations and amendments thereto) under the UCC, to perfect Buyer's rights under this of this Agreement in Buyer's rights in and to the Distribution.

(e)  Seller is represented in its interest in the Settlement by Robert C. Wood, Esq. on behalf of Law Offices of Robert C. Wood, 68 North High Street, Building B, Suite 202, New Albany, OH 43054;

3



Initial here

(f)     Buyer and Seller fully acknowledge that this transaction is a true sale and assignment of the TSF Distribution and the full benefits of the transaction and assignment apply to the sale. Buyer and Seller acknowledge that even though Buyer is entitled to all of the benefits associated with the sale, Seller remains responsible for all obligations, representations, warranties, covenants and liabilities and expenses explicitly (and not explicitly) set forth in this Agreement and in respect to the Distribution.

(g) Seller agrees that it shall pay to Buyer the TSF Distribution as set forth in this Agreement and reflected accurately in the Disclosure Statement and that payment shall be made to Buyer from any funds received in full or in partial satisfaction of the Distribution, regardless of the source of those funds, before any payment is made from the Distribution to the Seller, or any other person.

(h) Seller irrevocably directs its attorney and/or representative responsible for the disbursement of the Seller's Distribution to pay Buyer the TSF Distribution prior to Seller receiving any payment from the Distribution in accordance with the terms of this Agreement.

(i) Whether the TSF Distribution is received in a lump sum or in multiple payments, Buyer's right to receive the full TSF Distribution shall be in priority and senior to Seller's right to receive any portion of the Distribution.

(j) If the Distribution amount is less than the anticipated amount and is insufficient to pay Buyer the TSF Distribution , then Buyer will be limited to the lesser Distribution received with no recourse to Seller for any remaining balance;

(k) If Seller recovers no money from the Distribution, the Seller shall owe nothing to the Buyer.

(l) In the event the Award Amount is insufficient to repay the TSF Distribution, then Buyer shall be entitled to recover any balance due, after the Award Amount has been distributed, from any related actions, including, but not limited to, any Federal or State causes of actions relating to, or in connection with, Seller's Claim and/or derivative claim.

3.     **SELLER REPRESENTATIONS AND WARRANTIES**

(a) Seller warrants and represents that Seller owns all right, title, and interest in the Distribution and acknowledges that it is selling and assigning the TSF Distribution to the Buyer.

(b) Seller warrants that Seller is legally entitled to the Distribution for which it has represented, and Seller further warrants that it owns the Distribution free and clear of any other liens, judgments and/or security interests than those set forth in Section 1 of this Agreement.

(c) Seller warrants that Seller has the unrestricted right to assign the TSF Distribution to Buyer and that it has not previously sold or assigned the Distribution, in whole or in part, to any other party. Upon Buyer's payment in full to Seller of the TSF Purchase Price, Buyer shall own all of the TSF Distribution, free and clear of liens, judgments, or other adverse interests.

(d) Seller warrants that Seller has the legal capacity and the mental competency to execute this Agreement and to perform all duties set forth within the terms of this Agreement and that it is doing so voluntarily and of its own free will.

(e) Seller warrants that Seller is under no contractual obligations or other restrictions that are adverse to Buyer's interests with regard to the terms of this Agreement and Seller's assignment and sale of the TSF Distribution. Seller warrants that the execution, delivery and performance of this Agreement, and the consummation of the transaction contemplated in this Agreement, does not

4

violate any law, rule, regulation, order, other agreement, or other instrument. Seller warrants that there are no bankruptcy or insolvency proceedings in progress or in prospect, either personally or with regard to any entity owned, in whole or in part, that could affect the Distribution.

(f) Seller warrants that Seller is not the subject of any legal proceeding that could in any way adversely affect the terms of this Agreement, the Distribution, and the Buyer's right, title, or interest in the Distribution. Seller further warrants that the Distribution has not been and is not in jeopardy of being subject to a levy or any type of other adverse interest.

(g) Seller warrants that of the information Seller has provided to Buyer that is contained in this Agreement, as well as any information given prior to this Agreement is true, accurate and complete in all respects. Seller further acknowledges that Buyer has relied and will continue to rely on this information in acquiring, protecting and otherwise dealing with the TSF Distribution.

(h) Seller warrants that Seller has not engaged in any acts or conduct, or made any omissions that could potentially result in Buyer receiving less than the full amount of the TSF Distribution, and that there are no other parties that hold a similar interest in the Distribution.

(i) Seller warrants that Seller has paid all federal, state and local taxes due through the date this Agreement is to be executed, or, has made adequate and acceptable terms for any tax payment due with the appropriate tax agency responsible for accepting such payment.

(j) Seller warrants that there are no outstanding: (i) tax liens or judgments against Seller or the Distribution, (ii) no obligations owed by Seller to any County, City or State Government entity; or (iii) any other liens owed to the United States Government or other person or entity for any social service or other benefit that Seller has received and is obligated to pay; including but not limited to child support and/or alimony.

(k) Seller warrants that Seller possesses the mental capacity to understand the terms set forth in this Agreement. Seller further understands that once it signs this Agreement it will become a legally binding document whereby Seller will have forever assigned and sold a portion of their financial recovery from their legal claim. Seller understands that in exchange for receiving money now from the Buyer, instead of waiting to receive it later, there is a cost to be paid by Seller. Seller further acknowledges that the financial cost associated with assigning and selling a portion of Seller's financial recovery is accurately summarized in the Disclosure Statement. Seller acknowledges that Seller has reviewed and fully understands the Disclosure Statement and the financial benefits and costs reflected with the sale. Seller further warrants that Seller is of legal age to enter into the Agreement and has the authority to accept its terms.

4. **COVENANTS OF SELLER**

Seller covenants and agrees with Buyer, as follows:

(a) Seller shall use its best efforts to collect the TSF Distribution and take all steps to make it available to the Buyer when due;

(b) Seller shall not negotiate or enter into any agreement to reduce or modify the TSF Distribution;

(c) Seller shall immediately notify the Buyer of any change in the terms of the Settlement as it applies to the Seller;

(d) Upon request of the Buyer, Seller shall provide Purchaser with updates, including status and documentation changes, if any, in respect of the Settlement, Distribution, or the TSF

Distribution;

(e) Seller shall execute such additional documents and take such further action as may be reasonable necessary for the Buyer to perfect any and all interests of the Buyer in respect of the TSF Distribution;

(f) If the Seller becomes a party to any tax lien dispute with any governmental agency or incurs any judgement against it, Seller shall immediately notify Buyer of same.

(g) Sell shall promptly pay all federal and state taxes.

(h) Seller will not issue any Form 1099 to Buyer in connection with the TSF Distribution.

(i) Seller shall notify Buyer in writing if there is any change in his/her legal of other representation.

5.  **BREACH BY SELLER**

(a) A breach of this Agreement shall occur upon one of the following events:

 i. Seller breaches any representation or warranty contained in this Agreement. If a breach occurs with regard to any representation or warranty set forth herein, Buyer agrees to give Seller a five (5) day period to cure any breach.

 ii. Seller files for bankruptcy;

 iii. Seller incurs any federal, state or other tax lien or judgment;

 iv. Seller fails to stay current in any federal, state or other tax payment due;

 v. Seller becomes the subject of a civil lien and/or civil judgment;

 vi. Seller becomes indebted to any present or former spouse for support, maintenance or similar obligations, or become indebted to any child or to a guardian of any child for any child support or similar payments;

 vii. Seller is convicted of a felony involving a crime of fraud, theft, perjury, or moral turpitude;

 viii. Seller engages in any other action or behavior that could encumber the Seller's Distribution.

 ix. Seller fails to immediately notify Buyer of receipt of any partial payment of the Distribution and fails to pay that amount to Buyer (or the balance of any amount still due to Buyer) in accordance with the terms of this Agreement.

 x. Seller breaches Section 1(g) of this Agreement.

(b) Buyer and Seller agree that in addition to any other legal rights and remedies available to Buyer for any breach by Seller, Buyer shall be entitled to enforce Seller's obligations hereunder by court

6



injunction, or court ordered affirmative action, which injunction or ordered action may also serve to restrain a future breach of this Agreement if there is reasonable ground to believe that such a breach is threatened.

(c) If Seller breaches this Agreement, Buyer may terminate their obligations under this Agreement and shall be entitled to the full payment from Seller of the TSF Distribution as, plus interest calculated at 19% per annum or the maximum rate permitted by law in the event this transaction is re-characterized as a loan, whichever is less, calculated from the date of payment of the TSF Purchase Price to the date of repayment.

(d) If Seller breaches this Agreement, Seller shall pay to Buyer all costs and expenses incurred by Buyer (including reasonable attorney's fees) paid to enforce the terms of the Agreement.

(e) If Seller breaches this Agreement, Seller shall notify its attorney, representative, or agent responsible for the distribution of the TSF Distribution to issue payment to Buyer in order to satisfy Seller's obligations under this Agreement. Buyer may further directly notify Seller's attorney or representative responsible for the TSF Distribution and request that such attorney or representative make direct payment of all monies due and owing to Buyer without any further authorization by Seller.

6.  **MISCELLANOUS PROVISIONS**

(a) Any required notice set forth herein by either party shall be in writing and (i) delivered by overnight courier, (ii) certified mail, or (iii) transmitted by facsimile and confirmed by a similar mailed writing, to the following address (email is specifically excluded as a proper form of notice):

> As to Buyer:
> Thrivest Specialty Funding, LLCSF
> 2 Penn Center Plaza, 1500 JFK Blvd
> Suite 220 Philadelphia, PA, 19102,
> ATTN: Joseph Genovesi

> As to Seller:



(b) <u>Right to Sue.</u> The parties to this Agreement acknowledge (i) the Buyer is in no way acquiring the Seller's right to sue in regard the Settlement, (ii) the TSF Purchase Price received by Seller from Buyer will be used for immediate economic and personal necessities or other purposes that Seller deems important, (iii) the Seller or other class representative has already made the claim in the Settlement and the claim in the Settlement has been settled, (iv) Seller and Buyer acknowledge Buyer will in no way be involved in or influence the decisions Seller and its attorney make in connection with the Seller's claim and that the right to make those decisions remains solely with Seller and Seller's attorney.

(c) <u>Bankruptcy.</u> Seller is not presently, nor intends to be, a party to any action or proceeding for relief under any federal or state bankruptcy or insolvency law or appointment of a trustee or receiver for all or any portion of Seller's assets including the Distribution. In the event Seller commences or has commenced against it, any case, or other proceeding, pursuant to any bankruptcy, insolvency or similar law prior to full payment of the TSF Distribution amount, Seller shall cause the TSF Distribution amount to be categorized as an asset of Buyer and not of Seller. In no event shall Seller

permit Buyer's share to be described as a debt obligation of Seller in any such proceeding, except as may be required by law.

(d) Pledge Rights. Seller hereby relinquishes any rights to sell, assign, pledge or transfer any rights in the TSF Distribution that it is entitled to from the Settlement other than to Buyer.

(e) Other Advances. Seller acknowledges that Seller may not solicit or accept funding or advances against the TSF Distribution from any other source or funding company unless and until Thrivest Specialty Funding, LLC, is first paid in full.

(f) Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument. A faxed signature of this Agreement shall be effective to bind such party to the terms hereof, but an original of such signature shall be promptly forwarded to the other party.

(g) Integration. This Agreement constitutes the complete agreement and understanding of the parties with respect to the subject matter hereof, supersedes any prior agreements or understandings of the parties (whether oral or written) with respect to the subject matter hereof and may be amended only in a writing signed by the parties.

(h) Enforceability of Agreement. If any provision of this Agreement is held to be illegal, void or unenforceable, such provision shall be of no force or effect. However, the illegality or unenforceability of such provision shall have no effect upon, and shall not impair the legality or enforceability of, any other provision of this Agreement.

(i) Construction. For purposes of construction, this Agreement shall be deemed to have been jointly drafted by the respective parties and their counsel, and the rule of construction of contracts that ambiguities are construed against the drafting party shall not be applied against any person.

(j) Governing Law. This Agreement shall be construed in accordance with and be governed by the laws of the Commonwealth of Pennsylvania without regard to conflicts of laws principles.

(k) Successors and Assigns. This Agreement is binding upon, and shall inure to the benefit of, the parties, and their respective heirs, executors, administrators, successors and assigns.

(l) The Parties Joint Representations and Warranties. Each party hereto represents and warrants that (i) it has carefully read this Agreement in its entirety; (ii) it has had an adequate opportunity to consider this Agreement and to consult with independent counsel of its choice regarding its terms; (iii) it understands all of the terms hereof; (iv) it has relied wholly upon its individual judgment, belief and knowledge of the nature, extent and effect of the terms contained in the Agreement, including the summary of financial terms set out in the Disclosure Statement contained herein; (v) it voluntarily assents to all of the terms and conditions contained herein; and (vi) it is authorized to sign this Agreement on behalf of the party for whom it has executed this Agreement.

(m) Attorney Review. Seller has been advised by Buyer to discuss this matter and to review this Agreement with an attorney prior to signing it. Seller acknowledges that it has either received such counsel, or has expressly waived it.

(n) Additional Documents. As a condition to Buyer's obligations hereunder, Seller has provided Buyer with an executed copies of the following documents: (1) Irrevocable Authorization and Directive; (2) Limited Irrevocable Power of Attorney; (3) Attorney Acknowledgment   and   Notice of

8

Assignment; (4) Certification of Seller; (5) Spousal Consent; and (6) Medical doctor's letter attesting to mental competency.

(o) Notice of Assignment by Seller's Attorney. Seller shall make a demand of his or her attorney to acknowledge and sign the Attorney Acknowledgement and Notice of Assignment. . If Seller changes his or her attorney subsequent to the execution of this Agreement, Seller shall have a continuing obligation to demand the newly retained attorney acknowledge and sign a new Attorney Acknowledgement and Notice of Assignment under the terms set forth in subsection (u) above. If Seller fails to obtain such attorney's signature, Buyer shall have the right to maintain and enforce its rights under the Agreement.

(p) Case Updates. In the event that the Seller and or its attorney fail to provide updates and or relevant information regarding the Settlement claim to Buyer, Buyer shall be entitled to notify the Seller's attorney to inquire about the status of the Award Amount, a Settlement claim and/or the Seller's Distribution from the Settlement.

(q) Indemnification. Seller agrees to indemnify Buyer for any and all claims, losses, liabilities, obligations, damages, penalties, judgments, suits, causes of action, and related costs and expenses of any nature (including attorney's fees) suffered by Buyer due to Seller's misrepresentation, breach of warranty, or failure to perform any covenant of this Agreement.

(r) Execution. This Agreement has been properly executed by the Seller and represents the Seller's legal, valid and binding obligation, enforceable in accordance with its terms and inures to the benefit of the parties hereto and their respective successors-in-interest, heirs, executors, representatives, successors and assigns.

(s) Assignment. Buyer and any party to whom Buyer assigns this Agreement may assign its right, title, and interest in and to this Agreement including the TSF Distribution without any further authorization or approval from Seller. Furthermore:

    a. If Buyer assigns its rights to a third party, Buyer shall not be responsible to Seller and Seller may look solely to such third party for performance of this Agreement.

    b. Upon request of Buyer or assignee of Buyer, Seller shall execute and deliver any documents, as either party reasonably requires, for performance of this Agreement.

    c. In no event shall Seller be permitted to assign its rights in this Agreement.

(t) Prior Funding. In the event Seller has received prior funding from Buyer this Agreement does not supersede the amounts due pursuant to any prior funding agreement between Seller and Buyer, unless specifically set forth herein, and the terms and payoff schedule of such prior agreement are incorporated herein.

(u) Fraud or Misrepresentation. If Seller has made a material misstatement, or committed a fraudulent or criminal act either in connection with this transaction or in a matter that would adversely and significantly impact the funding of the TSF Purchase Price, Buyer shall have the right to file for a Declaratory Judgment in order to determine whether such statement or act was fraudulent. In the event that a court and or arbitrator determines that Buyer was fraudulently induced into entering into this Agreement, Buyer shall be entitled to recover the amount of the TSF Purchase Price, plus legal interest rate from the date of this Agreement, plus attorneys' fees and costs.

(v) Buyer Risk Factors. Seller acknowledges and understands that the cost of entering into this Agreement is expensive and that the Buyer is taking a significant risk engaging in this purchase

and sale transaction. Seller is advised by Buyer to explore other sources of funding, including loans that may be available to Seller at more favorable terms.

(w) <u>Seller Review.</u> Seller has had a full and complete opportunity to consult with an attorney and/or other advisors before entering into this Agreement. This Agreement and its terms have been fully explained to Seller and all questions that Seller might have about this transaction and/or Agreement have been fully explained.

(x) <u>No Brokers.</u> I represent and warrant that I have not used any broker in connection with this Agreement other than N/A ("Broker"), who is representing me pursuant to a separate broker agreement. I acknowledge and agree that Buyer may (but shall not be obligated to): (i) pay to Broker any fees due under such broker agreement ("Broker Fee"); and (ii) deduct such Broker Fee from the Purchase Price. I agree to indemnify Buyer for any and all loss or damage which Buyer sustains by reason of my use of any broker, including but not limited to attorneys' fees and cost incurred by Buyer.

(y) <u>Rescission.</u> Seller may rescind this Agreement within five (5) business days following the Seller's execution of this Agreement, without penalty or further obligation.

(z) <u>Dispute Resolution.</u> Notwithstanding anything to the contrary herein, Buyer and Seller unconditionally agree that any dispute, controversy or claim arising out of, or relating in any way to this purchase and sale Agreement, including without limitation, any dispute concerning the construction, validity, interpretation, enforceability, alleged breach by either party, and/or any other term set forth in the Agreement shall be exclusively resolved by binding arbitration upon Buyer or Seller submitting the dispute to the American Arbitration Association within 30 days of written notice to the other party. Within thirty (30) days of notice of a dispute, Buyer and Seller agree to meet at an agreed upon location in Philadelphia, PA to attempt to resolve the dispute in good faith without the necessity of moving forward with binding Arbitration though the American Arbitration Association. Should the dispute not be resolved between the parties within 60 days of the above referenced meeting, either party may seek remedies exclusively through a binding arbitration request to the American Arbitration Association and/or one of their representatives. Both parties to this Agreement agree that if arbitration becomes necessary, the process and procedure including naming of the arbitrator/s shall be governed by American Arbitration Association's suggested guidelines and/or procedures. The final decision made through the Arbitration shall be binding on both parties. Either Buyer or Seller may apply (in the event of an emergent issue) to a Pennsylvania state or federal court for interim or emergent relief, including without limitation a proceeding to compel arbitration as set forth above. Any arbitration shall be conducted within the jurisdiction of the Commonwealth of Pennsylvania. The laws of the Commonwealth of Pennsylvania shall be applied in any arbitration proceeding, without regard to principles of conflict of laws. It is the intent of the parties that, barring extraordinary circumstances, arbitration proceedings will be concluded within one hundred and twenty 120 days from the date the arbitrator/s are appointed. The arbitrator/s may extend this time limit in the interests of justice. Except as may be required by law, neither party nor its' representative/s may disclose the existence, content, or results of any arbitration hereunder without the express prior written consent of both Buyer and Seller. Both Buyer and Seller shall exchange a copy of all exhibits intended for use at the arbitration hearing and shall identify each witness who will testify at the arbitration, with a summary of the anticipated testimony of such witness no later than ten (10) days before the arbitration hearing. The arbitrator shall award interest from the time of the dispute/breach to the time of the arbitration award at the rate of interest if this transaction is re-characterized as a loan at the maximum rate permitted by law in the Commonwealth of Pennsylvania. The cost of the arbitration proceeding shall be borne by the

2

unsuccessful party to the arbitration.

(aa) It is specifically understood and agreed to by the parties that either of them may enforce any award rendered pursuant to the arbitration provisions of this section by moving to compel the award in the appropriate Pennsylvania court. Lastly, the parties agree that the arbitrator shall have authority to grant injunctive or other forms of equitable relief to either party.

(bb) SELLER HEREBY WAIVES THE RIGHT TO CONSOLIDATE UNDER ANY MULTI DISTRICT LITIGATION OR OTHER CONSOLIDATION, OR BECOME PART OF A CLASS ACTION, OR ANY OTHER PROCEEDING, CONTROVERSY, ARBITRATION AND/OR DISPUTE OF ANY NATURE INVOLVING ANY PERSON OR ENTITY WHO IS NOT A PARTY TO THIS AGREEMENT. WHETHER ANY CLAIM HEREUNDER IS DECIDED BY ARBITRATION OR BY TRIAL BY A JUDGE, THE PARTIES AGREE AND UNDERSTAND THAT THE EFFECT OF THIS AGREEMENT IS THAT THEY ARE GIVING UP THE RIGHT TO TRIAL BY JUSRY TO THE EXTENT PERMITTED BY APPLICABLE LAW.

(cc) <u>IMPORTANT NOTICE</u>

SELLER UNDERSTANDS THAT THIS IS A COMPLEX FINANCIAL TRANSACTION. BY SIGNING THIS AGREEMENT, SELLER IS ASSIGNING ITS RIGHTS TO A PORTION OF THE AWARD THAT SELLER MAY RECEIVE IN REGARD TO THE CASE. IN RETURN FOR SELLER'S ASSIGNMENT, SELLER WILL RECEIVE AN IMMEDIATE CASH PAYMENT THAT IS SIGNIFICANTLY LESS THAN THE PORTION OF THE AWARD THAT SELLER IS ASSIGNING. SELLER IS STRONGLY ENCOURAGED BEFORE SIGNING THIS AGREEMENT TO CONSULT WITH AN ATTORNEY AND/OR TRUSTED FINANCIAL ADVISOR OF SELLER'S CHOICE, WHO CAN ASSIST SELLER IN DETERMINING WHETHER THIS TRANSACTION WILL BEST FULFILL SELLER'S FINANCIAL NEEDS AND OBJECTIVES AND PROTECT SELLER'S INTERESTS IN THE EVENT SELLER CHOOSES TO PROCEED WITH THIS TRANSACTION.

(dd) The Seller agrees to keep this Agreement confidential and not to disclose the existence of this Agreement or its terms, except as required by law.

The Buyer and Seller named below do hereby agree to all of the terms set forth above and contained within this Agreement and signed on this 8th day of December, 2016:

BUYER: THRIVEST SPECIALTY FUNDING, LLC

By: _Joseph R. Genovesi_            Date: _____

Title: _____President/CIO_____

SELLER: ████████

By: ████████            Date: _12/19/16_

Notary Acknowledgment appears on the next page



3

STATE OF OHIO ):
COUNTY OF FRANKLIN ) SS:

On this, the _____ 19th _____ day of _____ DECEMBER, 20 16 before me
_____ Robert C. Wood _____ the undersigned officer, personally appeared
_____, known to me (or satisfactorily proven) to be the
person whose name subscribed to the within instrument, and acknowledged that he
(he/she/they) executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

_____
Notary Public

Printed Name: _____ Robert C. Wood _____

My Commission Expires:

_____

ROBERT C. WOOD
Attorney at Law
Notary Public, State of Ohio
My Commission Has No Expiration
Section 147.03 R.C

Last Page of Agreement

4

Initial here

## **Exhibit B -- Repayment Schedule**

### TSF Distribution Due if Repaid by:

| | | | |
|---|---|---|---|
| December 31, 2016 | $507,916.67 | June 30, 2018 | $673,901.99 |
| January 31, 2017 | $515,958.68 | July 31, 2018 | $684,572.10 |
| February 28, 2017 | $524,128.03 | August 31, 2018 | $695,411.16 |
| March 31, 2017 | $532,426.72 | September 30, 2018 | $706,421.84 |
| April 30, 2017 | $540,856.81 | October 31, 2018 | $717,606.85 |
| May 31, 2017 | $549,420.38 | November 30, 2018 | $728,968.96 |
| June 30, 2017 | $558,119.53 | December 31, 2018 | $740,510.96 |
| July 31, 2017 | $566,956.42 | January 31, 2019 | $752,235.72 |
| August 31, 2017 | $575,933.23 | February 28, 2019 | $764,146.12 |
| September 30, 2017 | $585,052.18 | March 31, 2019 | $776,245.10 |
| October 31, 2017 | $594,315.50 | April 30, 2019 | $788,535.65 |
| November 30, 2017 | $603,725.50 | May 31, 2019 | $801,020.80 |
| December 31, 2017 | $613,284.49 | June 30, 2019 | $813,703.63 |
| January 31, 2018 | $622,994.82 | July 31, 2019 | $826,587.27 |
| February 28, 2018 | $632,858.91 | August 31, 2019 | $839,674.90 |
| March 31, 2018 | $642,879.17 | September 30, 2019 | $852,969.75 |
| April 30, 2018 | $653,058.09 | October 31, 2019 | $866,475.10 |
| May 31, 2018 | $663,398.18 | November 30, 2019 | $880,194.29 |

NOTE: If distribution of the TSF Distribution amount has not been paid to TSF by the last date of the above repayment schedule, the TSF Distribution amount will continue to accrue at the same rate as described in the Non-Recourse Purchase Agreement until distribution occurs.

# EXHIBIT B

# Physician's Statement of Mental Competency

Date:

To Whom It May Concern:

███████ born on ███████ has been a patient under the care of this medical practice since
_10/5/16_ (*INSERT DATE*). He has been seen on a regular basis throughout this time. Medical records
indicate that at no time during her care has he lacked capacity to make independent legal, medical, and
financial decisions.

███████ was diagnosed on _10/19/16_ (*INSERT DATE*) with *Amyotrophic lateral sclerosis*
(*INSERT MEDICAL CONDITION*). However, it is my professional opinion that this has in no way impaired his
ability to make his own legal, medical, and financial decisions.

Feel free to contact me at (419) 283-8343 (*INSERT DOCTOR PHONE NUMBER*) if you require further
information.

Sincerely,

_____          *Kevin Hebar, MD*
Signature of Physician                    Printed Name of Physician

# EXHIBIT C

## SPOUSAL ACKNOWLEDGMENT AND CONSENT

All capitalized terms not otherwise defined here shall the same meanings ascribed to them in that certain Non-Recourse Purchase Agreement dated December 8, 2016 by and between Thrivest Specialty Funding, LLC ("TSF"), as Buyer and the undersigned, as Seller (the "Agreement").

I, ███████████, hereby acknowledge the following:

1.      I am the spouse of ███████████, who is the Seller under the Agreement.

2.      I have read and understood the terms of, and been provided with, a copy of the Agreement;

3.      By virtue of the Agreement, my spouse has assigned $880,194.29 (Eight Hundred Eighty Thousand One Hundred Ninety Four Dollars and 29 Cents) of his or /her interest in the Distribution in the matter entitled In Re: National Football League Players' Concussion Injury Litigation to TSF; and

4.      To the best of my knowledge, my spouse (a) is not involved in any bankruptcy, insolvency or other legal proceedings that could affect his or her assets; (b) has paid or made adequate provision for payment of all federal, state and local taxes that are due; (c) has no tax or other governmental liens against him or her or his or her interest in the Award; (d) is not indebted to me or any former spouse for support, maintenance or similar obligations; and (e) has not transferred or assigned, and has no plans to transfer or assign, any portion of his or her interest in the Award to any other party or person.

5.      As the spouse of the Seller, I hereby acknowledge the transaction set forth in the Agreement and waive any right, title or interest, I may have had, may have now or may have in the future in the Award, the Distribution or the TSF Distribution.

The undersigned has executed this Acknowledgment and Consent as of December 8, 2016.

BY: 
            Printed Name
            Signature

Notary acknowledgement appears on the next page

STATE OF O HIO                }:
                                               SS:
COUNTY OF FRANKLIN }

On this, the ___19th___ day of ___DECEMBER___, 20_16_ before me
___Robert C. Wood___, the undersigned officer, personally appeared
███████████████████████, known to me (or satisfactorily proven) to be the
person whose name subscribed to the within instrument, and acknowledged that ___SHE___
(he/she/they) executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_____
                Notary Public

Printed Name: ___Robert C. Wood___

My Commission Expires:

ROBERT C. WOOD
Attorney at Law
Notary Public, State of Ohio
My Commission Has No Expiration
Section 147.03 R.C.

# EXHIBIT D

## LIMITED IRREVOCABLE POWER OF ATTORNEY

I, ███████████, appoint Joseph Genovesi, or any other Managers, Members or Officers of Thrivest Specialty Funding, LLC (*Buyer*) with a principal office located at 2 Penn Center Plaza, 1500 JFK Blvd. Suite 220, Philadelphia PA 19102 ("TSF"), as my true and lawful attorney/legal representative for the following purposes: All capitalized terms herein and not otherwise defined herein shall have the same meanings ascribed to them in that certain Non-Recourse Purchase Agreement dated December 8, 2016, by and between the undersigned, as Seller, and TSF, as Buyer (the "Agreement").

*DISTRIBUTION FIRST POSITION CLAUSE*:

Specifically, to endorse and deposit any and all checks, drafts and/or other means of payment (the "Payments") payable to me with respect to my Award Amount in the matter associated with the In RE: National Football League Players' Concussion Injury Litigation (the "Funds"), a portion of which I sold and assigned to Buyer pursuant to the Agreement.

I understand that by executing this Power of Attorney, I am giving up the right to endorse and deposit the Payments, except as otherwise authorized by Buyer. This Power of Attorney may not be revoked or changed except upon the prior written consent of TSF.

BY: ███████████████          DATE: _12/19/16_

STATE OF OHIO              }:
                                          SS:
COUNTY OF FRANKLIN    }

On this, the _19th_ day of _DECEMBER_ 20 _16_, before me _Robert C. Wood_, the undersigned officer, personally appeared ███████████████, known to me (or satisfactorily proven) to be the person whose name subscribed to the within instrument, and acknowledged that _he_ (he/she/they) executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_Robert C. Wood_
Notary Public

Printed Name: _Robert Wood_

My Commission Expires: _____

ROBERT C. WOOD
Attorney at Law
Notary Public, State of Ohio
My Commission Has No Expiration
Section 147.03 R.C.

# EXHIBIT E

## CERTIFICATION OF WILLIAM WHITE

Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in that certain Non-Recourse Purchase Agreement dated December 8, 2016 by and between Thrivest Specialty Funding, LLC ("TSF"), as Buyer and the undersigned, as Seller (the "Agreement").

I, ▆▆▆▆▆▆▆ , hereby certify that all of my statements in the Agreement and the ancillary documents that I have provided to TSF, including but not limited to the Limited Irrevocable Power of Attorney and the document entitled "TSF Client Intake Application", are true and correct and that I know that I am subject to punishment (perjury) if any of those statements are willfully false.

BY: ▆▆▆▆▆▆▆▆▆▆         DATE: 12/19/16

STATE OF OHIO          }:
                                       SS:
COUNTY OF FRANKLIN     }

On this, the 19th day of DECEMBER 20 16, before me Robert C. Wood , the undersigned officer, personally appeared ▆▆▆▆▆▆▆▆▆▆ , known to me (or satisfactorily proven) to be the person whose name subscribed to the within instrument, and acknowledged that he (he/she/they) executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_____
        Notary Public

Printed Name: _Robert Wood_

My Commission Expires:

ROBERT C. WOOD
Attorney at Law
Notary Public, State of Ohio
My Commission Has No Expiration
Section 147.03 R.C.

# EXHIBIT F

<u>IRREVOCABLE AUTHORIZATION AND DIRECTIVE</u>

Law Offices of Robert C. Wood
Attn: Robert C. Wood, Esq.
68 North High St.
Building B, Suite 202
New Albany, OH 43054

December 8, 2016:

RE: ▮▮▮▮▮▮▮▮▮  Financial Award in the matter of In re: National Football League Player's
Concussion Injury Litigation; Docket No: 2:12-md-02323-AB / MDL No. 2323

Please be advised that I have entered into a binding Non-Recourse Sales and Purchase
Agreement with Thrivest Specialty Funding, LLC ("TSF") pursuant to which I sold and assigned
the amount of $880,194.29 (Eight Hundred Eighty Thousand One Hundred Ninety Four Dollars
and 29 Cents) of my anticipated Award arising out of the matter of *In re: National Football
League Player's Concussion Injury Litigation; Docket No: 2:12-md-02323-AB / MDL No. 2323.*
Capitalized terms otherwise not defined herein shall have the same meanings ascribed to them in
that certain Non-Recourse Purchase Agreement dated December 8, 2016, by and between the
undersigned, as Seller, and TSF as Buyer. The Agreement is attached hereto as Exhibit A.

As part of the terms of that Agreement, I agreed to send to you this letter. Accordingly, I hereby
give you (and any other attorney representing me in regard to the above captioned matter) my
direct and express authorization, as my attorney, to follow the instructions set forth below with
regard to any and all payments received on my behalf, in connection with the captioned matter.

The Instructions are as follows:

1.  I authorize and direct you to pay the amount of $880,194.29 (Eight Hundred Eighty
    Thousand One Hundred Ninety Four Dollars and 29 Cents) to TSF, no later than five
    (5) business days following the receipt of any and all Award monies received by you
    on my behalf, in whole or in part, arising out of *In re: National Football League
    Player's Concussion Injury Litigation; Docket No: 2:12-md-02323-AB / MDL No.
    2323* in which you represent me, before making any disbursements to me personally
    from the Award until the entire $880,194.29 (Eight Hundred Eighty Thousand One
    Hundred Ninety Four Dollars and 29 Cents)is received by TSF. I further direct you to
    pay those funds due Thrivest Specialty Funding, LLC through a check written from
    your attorney trust account, by certified funds, or through electronic transfer.
    Payments should be sent to:

Thrivest Specialty Funding, LLC
2 Penn Center Plaza
1500 JFK Blvd, Suite 220
Philadelphia, PA 19102

2. I authorize and direct you, or a representative of your law firm, to personally notify TSF in writing of the total amount of any portion of my Award that is received by you, including the date upon the funds were received, as well as breakdown of anticipated disbursements from the Award.

3. I authorize and direct you and or a representative of your firm familiar with this matter, to provide to Joseph Genovesi, the President of TSF, the status of my claim, as requested by him from time to time.

4. I authorize and direct you to notify Joseph Genovesi, President of TSF upon becoming aware of any lien, judgment, or lawsuit that could in any way affect the disbursement of my financial Award.

Please be advised that this Authorization and Directive is irrevocable, binding and may only be altered by the express written consent of TSF.

I thank for you in advance for your anticipated cooperation. Thank you.

Printed Name: _____          Signature: _____

This document is executed and entered into as of _December_ _19_, 2016.

Notary Acknowledgement appears on the next page

STATE OF OHIO ):

COUNTY OF Franklin )     SS:

On this, the ____19th____ day of ____December____, 20 16, before me ____Robert C Wood____, the undersigned officer, personally appeared ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆____, known to me (or satisfactorily proven) to be the person whose name subscribed to the within instrument, and acknowledged that ____he____ (he/she/they) executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_Robert Wood_
Notary Public

Printed Name: Robert C Wood

My Commission Expires:

ROBERT C. WOOD
Attorney at Law
Notary Public, State of Ohio
My Commission Has No Expiration
Section 147.03 R.C.

*IRREVOCABLE AUTHORIZATION AND DIRECTIVE*

# EXHIBIT G

## ATTORNEY ACKNOWLEDGMENT AND NOTICE OF ASSIGNMENT

Attorney Name:  Attn: Robert C. Wood, Esq.
Firm Name:    Law Offices of Robert C. Wood
Address:     68 North High St.
         Building B, Suite 202
         New Albany, OH 43054

In Re: National Football League Players' Concussion Injury Litigation
    No. 2:12-md-02323-AB / MDL No. 2323

I represent ▮▮▮▮▮▮▮ in regard to his or her pending claim in the matter of In Re: National Football League Players' Concussion Injury Litigation, arising out of the U.S. federal court in the Eastern District of Pennsylvania, docketed under No. 2:12-md-02323-AB / MDL No. 2323.

All capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in that certain Non-Recourse Payment Agreement dated December 08, 2016 by and between Thrivest Specialty Funding, LLC, as Buyer and the undersigned, as Seller (the "Agreement").

I acknowledge that on December 08, 2016, ▮▮▮▮▮▮▮ ("Client"), assigned and transferred to the Buyer a portion of his or her anticipated financial award to which he or she is entitled to under the terms of the NFL Concussion Litigation by entering into a *Sales and Purchase Agreement* with TSF. I did not represent him/her, nor was I was involved in negotiating and/or advising Mr. ▮▮▮▮ in regard to that transaction.

I further understand that the portion of the anticipated financial Award that my Client has assigned and transferred to TSF pursuant to the *Sales and Purchase* Agreement is the amount of $880,194.29 (Eight Hundred Eighty Thousand One Hundred Ninety Four Dollars and 29 Cents) (NOTE: The amount assigned to TSF is subject to change, please refer to Exhibit B - Repayment Schedule for the exact amount owed).

As the attorney of record for Mr. ▮▮▮▮ in the NFL Concussion Litigation, I am responsible for the final distribution of my Client's award, if in fact he or she receives one. As such, I acknowledge that there is now a priority encumbrance that must be satisfied to TSF before any monies can be distributed to ▮▮▮▮▮▮▮ personally, or to any other third party.

I also acknowledge receipt of a separate document titled "Irrevocable Authorization and Directive" which has been signed by my Client.

I agree to comply with the directions set forth in the aforementioned "Irrevocable Authorization and Directive". I agree to distribute $880,194.29 (Eight Hundred Eighty Thousand One Hundred Ninety Four Dollars and 29 Cents) (NOTE: The amount assigned to TSF is subject to change,

please refer to Exhibit B – Repayment Schedule for the exact amount owed) to TSF from the proceeds of the Award in accordance with the Irrevocable Authorization and Directive before any other monies that are the subject of the Award are made to my Client personally, or to any other third party.

Further, I agree to disburse any and all such payments directly to TSF by certified check from my or my law firm's attorney trust account or electronically within five (5) days of my receipt of such payments. Additionally, I acknowledge that I have received my Client's full consent to speak with a TSF authorized representative in regard to any aspect of his or her claim regarding the NFL Concussion Claim.

Below are my additional true and accurate representations and warranties with respect to this transaction:

1.  I do not have any knowledge of any liens, judgments or other encumbrances currently attaching to, or that might be attached to on my Client's anticipated NFL Concussion award other than those listed below.

    - Federal Tax Lien - $192,253.89

2.  Any and all monies that I receive on behalf of my Client in regard to his or her NFL Concussion claim  shall be deposited into my law firm's IOLTA trust account prior to any distribution to my Client and other parties (including TSF) that have encumbrances on the Distribution.

3.  TSF will be listed as priority lienholder and its encumbrance shall be satisfied before any monies are distributed to Mr. ██████ personally, or any other third party.

4.  If at any time I no longer represent Mr. ██████ with respect to his or her NFL Concussion claim, I will provide TSF with notice of same and the name of the superseding attorney (if known by me) within five (5) days of being relieved as attorney of record.

Law Offices of Robert C. Wood
Attn: Robert C. Wood, Esq.
68 North High St.
Building B, Suite 202
New Albany, OH 43054

BY: _____          DATE: __12/19/16__
        Robert C. Wood, Esq.

# EXHIBIT H

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

IN RE: NATIONAL FOOTBALL LEAGUE
PLAYERS' CONCUSSION INJURY
LITIGATION

No. 2:12-md-02323-AB

MDL No. 2323

THIS DOCUMENT RELATES TO:

ALL ACTIONS

Hon. Anita B. Brody

## EXPLANATION AND ORDER

It has come to the Court's attention that members of the class or their representatives

have assigned or attempted to assign monetary claims to third parties. Under the unambiguous

language of the Settlement Agreement, Settlement Class Members[1] are prohibited from assigning

or attempting to assign their monetary claims to third parties, and any agreement making such an

assignment or attempt to assign is void, invalid and of no force and effect. Additionally, under

the Settlement Agreement, the Claims Administrator is prohibited from paying a Class

Member's monetary award to any third party that holds an assignment or an attempted

assignment ("Third-Party Funder").[2]

The purpose of the anti-assignment provision is to protect the interests of Class Members

by recognizing that Class Members receiving monetary awards are by definition cognitively

---

[1] Reference to Class Members includes any Class or Subclass Representative. *See* Settlement
Agreement § 30.1.

[2] The Claims Administrator, BrownGreer, has already made an official statement that it will not
recognize the assignment of any monetary claims. *See* NFL Concussion Settlement Website,
Frequently Asked Questions 5.31, available at https://www.nflconcussionsettlement.com/Un-
Secure/FAQDetails.aspx?q=67#67.

1

impaired. As the fiduciary of the Class, it is the Court's obligation to enforce this provision of
the Settlement Agreement.

## BACKGROUND

The administration of large settlements can provide unique challenges to the legal system
as a whole, and the administration of the NFL Concussion Settlement has certainly been no
exception. The issue before the Court was first raised by litigation before Judge Loretta A.
Preska in the Southern District of New York. In that litigation, the Consumer Financial
Protection Bureau ("CFPB") and the People of the State of New York ("NYAG") brought suit
against RD Legal Funding, RD Legal Finance, LCC, RD Legal Funding Partners, LP, and Roni
Dersovitz (collectively, "RD Legal"). As part of that suit, RD Legal[3] asserted that assignments of
Class Member's monetary claims are permitted under the NFL Concussion Settlement
Agreement. Upon learning of that assertion, Co-Lead Class Counsel, Chris Seeger, filed an
amicus memorandum before Judge Preska disputing RD Legal's claims. *See CFPB, et al. v. RD
Legal Funding, LCC, et al.*, No. 17-cv-890 (S.D.N.Y. Sept. 8, 2017), ECF No. 45.

Judge Preska was presented with the question of whether "the *NFL Concussion Litigation*
settlement agreement forbids assignments of settlement benefits." Order at 4, *RD Legal Funding*,
No. 17-cv-890 (S.D.N.Y. Sept. 8, 2017), ECF No. 59. Judge Preska referred that question to this
Court because it implicates the administration of the settlement and the interpretation of the
Settlement Agreement—over which this Court has continuing jurisdiction. *See* Settlement
Agreement § 27.1, ECF No. 6481-1 ("Any disputes or controversies arising out of, or related to,
the interpretation, implementation, administration, and enforcement of this Settlement
Agreement will be made by motion to the Court."); *see also In re Nat. Football League Players'*

---

[3] RD Legal is a Third-Party Funder purports to have purchased assignments of Class Member's
monetary claims.

*Concussion Injury Litig.*, 307 F.R.D. 351, 426 (E.D. Pa. 2015) ("The Court retains continuing

and exclusive jurisdiction over this action including jurisdiction over . . . all Settlement Class

Members . . . .").[4]

## DISCUSSION

The Settlement Agreement is interpreted under New York Law, Settlement Agreement §

27.1(a), ECF 6481-1, and New York law allows parties to void assignments of contractual rights

so long as the anti-assignment language is unambiguous, *Neuroaxis Neurosurgical Associates,*

*PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 352 (S.D.N.Y. 2013) (collecting cases).

In order to protect Class Members, the Settlement Agreement unambiguously prohibits

Class Members from assigning claims or attempting to assign claims and renders any such

assignment void, invalid and of no force and effect.

> Section 30.1 No Assignment of Claims. Neither the Settlement Class nor any
> Class or Subclass Representative or Settlement Class Member has assigned, will
> assign, or will attempt to assign, to any person or entity other than the NFL
> Parties any rights or claims relating to the subject matter of the Class Action
> Complaint. Any such assignment, or attempt to assign, to any person or entity
> other than the NFL Parties any rights or claims relating to the subject matter of
> the Class Action Complaint will be void, invalid, and of no force and effect and
> the Claims Administrator shall not recognize any such action.

Settlement Agreement, ECF No. 6481-1.

The above section bars the assignment of a Class Member's monetary claims—as can be

shown by a simple syllogism. Section 30.1 prevents a Settlement Class Member from assigning

"any rights or claims relating to the subject matter of the Class Action Complaint." *Id.* The

subject matter of the Class Action Complaint includes the allegations that directly produced the

Settlement Agreement and its monetary claim structure. Thus, any monetary claims under the

---

[4] To address the question, Co-lead Class Counsel, the CFPB, NYAG, and RD Legal submitted
briefs to this Court. *See* ECF No. 8380.

3

Settlement Agreement are "relat[ed] to"[5] the Class Action Complaint, and assignment of those claims is prohibited.[6]

Therefore, under the Settlement Agreement, Class Members are prohibited from assigning or attempting to assign any monetary claims, and any such purported assignment is void, invalid and of no force and effect. Furthermore, the Settlement Agreement instructs that the Claims Administrator shall not recognize any such action taken by a Settlement Class Member. Thus, Class Members simply cannot enter into a binding agreement that assigns or attempts to assign their claims. A Third-Party Funder that failed to perform proper due diligence before deciding to enter such an agreement is prohibited from now reaping the benefit of the contract.

---

[5] Under New York state law, the phrase "relating to" is commonly given broad scope. *See, e.g., Coregis Ins. Co. v. Am. Health Found., Inc.,* 241 F.3d 123, 128 (2d Cir. 2001) (defining "related to" broadly—and more broadly than "arising out of").

[6] RD Legal argues that the assignment of a Class Member's monetary claim is permissible under the Settlement Agreement. Two main arguments are given, but neither is persuasive.

RD Legal performs linguistic backflips trying to demonstrate that the phrase "rights or claims relating to the subject matter of the Class Action Complaint" does not include Class Members' *monetary claims* and is instead limited to Class Members' *tort claims.* RD Legal's argument fails because its entire analysis is predicated on excising the phrase "relating to" from its interpretation of the Settlement Agreement's text. *See* RD Legal Mem. 10-12, ECF No. 8435 (repeating the phrase "subject matter of the Class Action Complaint" without discussing, at all, the meaning or existence of the preceding words "relating to"). The phrase "relating to" expands the definition of "subject matter of the Class Action Complaint" to include monetary claims under the settlement agreement. RD Legal evades discussing this important phrase, and therefore, its definition of the "plain meaning" of the Settlement Agreement is incorrect.

Also, RD Legal argues that Article 9 of the Uniform Commercial Code invalidates any attempts to restrict the assignment of payments stemming from a legal settlement. RD Legal argues that under Article 9, parties cannot restrict assignment of "a general intangible," which includes settlement proceeds. RD Legal Mem. 8-9, ECF No. 8435. Even if Article 9 covers the Settlement Agreement, the monetary claims under the agreement would be excluded by New York's version of the UCC.

The invalidation of anti-assignment provisions does not apply to "a claim or right to receive compensation for injuries." N.Y. U.C.C. Law § 9-408(d)(1). Clearly, an award that pays money for suffering head concussions is "compensation for injuries." Therefore, New York's UCC provisions allow for parties to create terms that prevent assignment of settlement claims, and RD Legal's argument that the Settlement Agreement cannot restrict assignment under the UCC fails.

4

Thus, based on the above reasoning, the answer to Judge Preska's question is: yes, the *NFL Concussion Litigation* Settlement Agreement forbids assignments of settlement benefits.

**CONCLUSION**

The Claims Administrator is instructed to inquire of every Class Member, who is eligible for an award, as to whether that Class Member has made an assignment or attempt to assign. Every such class member must provide a verified response to the Claims Administrator. If an assignment or attempt to assign has been made, the Class Member must also submit to the Claims Administrator any documents related to the transaction, including any documents signed by the Class Member's attorney.

To the extent that any Class Member has entered into an agreement that assigned or attempted to assign any monetary claims, that agreement is void, invalid and of no force and effect. Class Members receiving awards are, by definition, cognitively impaired. A Third-Party funder entering an agreement with a Class Member would obviously know that simple fact. Additionally, the anti-assignment language in the Settlement Agreement clearly states the intent that Class Members are unable to make assignments. Thus, the Court has little sympathy for a Third-Party Funder that will not receive a return on its "investment." Nevertheless, under the principle of rescission, Class Members should return to the Third-Party Funder the amount already paid to them. Accordingly, if the Third-Party Funder is willing to accept rescission and execute a valid waiver relinquishing any claims or rights under the entire agreement creating the assignment or attempted assignment, then the Claims Administrator will be authorized to withhold—from the Class Member's monetary award—the amount already paid to the Class Member under the agreement and return it to the Third-Party Funder.

Further instructions to the Claims Administrator will follow. So **ORDERED**.

5

s/Anita B. Brody

_____

ANITA B. BRODY, J.
          12/8/2017

_____

DATE

Copies **VIA ECF** on _____ to:                    Copies **MAILED** on _____ to:

6

# EXHIBIT I

## IN THE UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | **Hon. Anita B. Brody** |

## ORDER

**AND NOW,** this _20th_ day of February, 2018, pursuant to this Court's continuing and

exclusive jurisdiction under Article XXVII of the NFL Concussion Settlement Agreement (the

"Settlement Agreement"), it is **ORDERED** that the Claims Administrator pay directly to the

Settlement Class Member any and all Monetary Awards in cases where there has been found an

improper assignment of any right or claim pursuant to Section 30.1 of the Settlement Agreement.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:                    Copies **MAILED** on _____ to:

1

# EXHIBIT J



**CONCUSSION SETTLEMENT**
IN RE NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION
No. 2 12-md-02323 (E.D. Pa.)

# RULES GOVERNING
# ASSIGNMENT OF CLAIMS

## TABLE OF CONTENTS

**Page**

**TITLE I:  GENERAL**..........................................................................................................1

     Rule 1.   The Purpose of These Rules............................................................1
     Rule 2.   Adoption of These Rules.................................................................1
     Rule 3.   Definitions Used in These Rules......................................................1

**TITLE II:  ASSIGNMENT REVIEW** ...................................................................................2

     Rule 4.   Third-Party Funder Transactions Subject to Assignment Review...................2
     Rule 5.   Assignment Review........................................................................2
     Rule 6.   Review Criteria ............................................................................3

**TITLE III:  PROCESS FOR ASSIGNMENTS** .......................................................................3

     Rule 7.   Waiver Form ................................................................................3
     Rule 8.   Payment Steps ..............................................................................3

NFL CONCUSSION SETTLEMENT

## RULES GOVERNING ASSIGNMENT OF CLAIMS

### TITLE I:  GENERAL

**Rule 1.    The Purpose of These Rules.**  These Rules govern the analysis of transactions involving a Settlement Class Member and a person or entity other than the NFL Parties to determine whether the transaction is an assignment of rights or claims prohibited by Section 30.1 of the Settlement Agreement and the Court's Explanation and Order entered on December 8, 2017 (Document 9517) and the implementation of that Explanation and Order.

**Rule 2.    Adoption of These Rules.**  The Special Masters have adopted these Rules in the exercise of their duties pursuant their appointment by the Court in its July 13, 2016 Order (Document 6871).  The Special Masters may amend these Rules at any time *sua sponte* or after request by the Claims Administrator and such input from Co-Lead Class Counsel, the NFL Parties and the Claims Administrator as the Special Masters deem appropriate.

**Rule 3.    Definitions Used in These Rules.**  All capitalized terms used in these Rules will have the meanings given to them in the Settlement Agreement.  In addition:

(a) "Collateralized Loan" means a Third-Party Funder Transaction determined not to be a Prohibited Assignment.

(b) "Explanation and Order" means the Explanation and Order entered by the Court on December 8, 2017 (Document 9517), regarding the application of Section 30.1 of the Settlement Agreement to monetary claims under the Settlement Agreement.

(c) "Monetary Claims" means a Monetary Award, Supplemental Monetary Award or Derivative Claimant Award in the Settlement Program.

(d) "Notice of Assignment Review Determination" means a notice the Claims Administrator will issue after determining with a Special Master whether a Third-Party Funder Transaction is a Prohibited Assignment or is a Collateralized Loan.

(e) "Prohibited Assignment" means a Third-Party Funder Transaction determined to be an assignment, or attempt to assign, by a Settlement Class Member of Monetary Claims that is void, invalid, and of no force and effect and that shall not be recognized by the Claims Administrator, pursuant to Section 30.1 of the Settlement Agreement and the Explanation and Order.

(f) "Settlement Agreement" means the Amended Class Action Settlement Agreement dated as of June 25, 2014, as amended on February 13, 2015 (the "Settlement Agreement") and approved in the Court's May 8, 2015 Amended Final Approval Order and Judgment (Document 6534).



(g) "Settlement Class Member" means a Retired NFL Football Player (or the Representative Claimant of a deceased or incompetent Retired NFL Football Player), or a Derivative Claimant, which is how this term is defined in the Settlement Agreement.

(h) "Settlement Program" means the program for benefits for Settlement Class Members established under the Settlement Agreement.

(i) "Special Master" and "Special Masters" mean any one or both of the two Special Masters appointed by the Court in its July 13, 2016 Order (Document 6871) or appointed in any subsequent Order of the Court.

(j) "Third-Party Funder" is a person or entity that engaged in a Third-Party Funder Transaction with a Settlement Class Member.

(k) "Third-Party Funder Transaction" is any agreement, contract, document, or arrangement between a Settlement Class Member and a Third-Party Funder involving the actual or potential advance or transfer of funds from the Third-Party Funder to the Settlement Class Member, disclosed to the Claims Administrator before payment of a Monetary Claim to that Settlement Class Member.

(l) "Waiver Form" means the Waiver Relinquishing Rights Under Attempted Assignment contemplated in the Explanation and Order.

## TITLE II:  ASSIGNMENT REVIEW

**Rule 4.    Third-Party Funder Transactions Subject to Assignment Review.**  The Explanation and Order requires the Claims Administrator to ask all Settlement Class Members eligible for payment on a Monetary Claim whether they have assigned or attempted to assign their Monetary Claim.  To receive payment from the Claims Administrator, an eligible Settlement Class Member must complete, sign and submit to the Claims Administrator a Sworn Statement: Status of Assignment of Monetary Claim (SWS-5).  If a Settlement Class Member indicates on this Sworn Statement that he/she has assigned or attempted to assign any settlement benefits from his/her Monetary Claim to a Third-Party Funder or borrowed any funds against his/her Monetary Claim as collateral, the Settlement Class Member must provide to the Claims Administrator all documents relating to that Third-Party Funder Transaction.  The Claims Administrator may require the Settlement Class Member and/or the Third-Party Funder to submit such documents and information as the Claims Administrator deems necessary for its review of a Third-Party Funder Transaction under these Rules, by such deadline as the Claims Administrator sets.

**Rule 5.    Assignment Review.**  The Claims Administrator will review each Third-Party Funder Transaction with a Special Master to determine whether the Third-Party Funder Transaction is a Prohibited Assignment or is a Collateralized Loan and will notify the affected Settlement Class Member of that decision by issuing a Notice of Assignment Review Determination.  If the Settlement Class Member or Third-Party Funder wishes to challenge the decision, it will be presented to the other Special Master for review, along with any argument

2



offered by the Settlement Class Member or Third-Party Funder for the Special Master's consideration. The final decision of the Special Master is not appealable to the Court, unless the Special Master or the Court finds that it involves a conclusion of law and that the objecting party has standing to pursue review by the Court.

**Rule 6.    Review Criteria.** The Claims Administrator and the Special Masters will assess the terms of a Third-Party Funder Transaction to determine whether they reflect the attributes of a Prohibited Assignment under the Explanation and Order. In general, a Third-Party Funder Transaction constitutes a Prohibited Assignment where there is an express assignment of a Monetary Claim. The Claims Administrator and the Special Masters will consider attributes of the transaction to assess the fairness and commercial reasonableness of its terms and whether they reflect the type of transaction the Court found invalid in its Explanation and Order.

## TITLE III: PROCESS FOR PROHIBITED ASSIGNMENTS

**Rule 7.    Waiver Form.** On any Prohibited Assignment, the Claims Administrator will issue a Waiver Form for the Third-Party Funder to sign and return within 30 days to (a) indicate the amount advanced to the Settlement Class Member that has not been repaid to the Third-Party Funder and (b) to rescind the Prohibited Assignment and relinquish all claims relating to it. The Claims Administrator will send this Waiver Form to the lawyer for a represented Settlement Class Member and directly to the Third-Party Funder if the Settlement Class Member is not represented by a lawyer. The Waiver Form includes an attachment for the Settlement Class Member to sign and return to the Claims Administrator indicating agreement with the amount of the funds advanced stated by the Third-Party Funder in the Waiver Form.

**Rule 8.    Payment Steps.** The Claims Administrator will follow these steps to pay a Monetary Claim with a Prohibited Assignment:

(a) **No Complete Waiver:** If the Claims Administrator has not received a timely complete Waiver Form signed by the Third-Party Funder, the Claims Administrator will direct the Trustee to pay the Monetary Claim to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court.

(b) **Complete Waiver:** If the Claims Administrator has received a timely complete Waiver Form signed by the Third-Party Funder and the Settlement Class Member agrees with the amount advanced that has not been repaid, the Claims Administrator will direct the Trustee to pay that amount to the Third-Party Funder and pay the balance to the Settlement Class Member, subject to all payable liens and other applicable deductions under the Settlement Agreement and any Orders of the Court. If the Settlement Class Member has not agreed to the amount advanced that has not been repaid, the Claims Administrator and a Special Master will determine the correct amount from the materials submitted.

(c) **Payment to Settlement Class Members:** The Claims Administrator will direct the Trustee to pay Monetary Claims with a Prohibited Assignment directly to the Settlement Class Member, whether represented by a lawyer or proceeding *pro se*.

3



# EXHIBIT K

# NFL **CONCUSSION SETTLEMENT**

IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION
No. 2:12-md-02323 (E.D. Pa.)

## NOTICE OF ASSIGNMENT REVIEW DETERMINATION

### DATE OF NOTICE: ▮▮▮▮▮▮▮

| I. SETTLEMENT CLASS MEMBER INFORMATION | |
|---|---|

| Settlement Program ID | ▮▮▮▮▮ | | | |
|---|---|---|---|---|
| **Name** | First ▮▮▮ | M.I. | Last | ▮▮▮▮▮ |
| **Settlement Class Member Type** | ▮▮▮▮▮▮▮ | | | |
| **Lawyer** | ▮▮▮▮▮ | | | |

## II. EXPLANATION OF ASSIGNMENT REVIEW DETERMINATION

This Notice is an official communication from the Claims Administrator for the NFL Concussion Settlement Program. Under the Court's Explanation and Order entered on December 8, 2017 (Document 9517) (the "Explanation and Order"), the Claims Administrator is required to ask all eligible Settlement Class Members whether they have assigned or attempted to assign their monetary claim. To receive payment, eligible Settlement Class Members must provide a verified response by completing, signing and submitting a Sworn Statement: Status of Assignment of Monetary Claim (SWS-5) to the Claims Administrator.

You indicated on your SWS-5 form that you assigned or attempted to assign settlement benefits from your monetary claim to a third-party, or borrowed funds using your monetary claim as collateral.

The Claims Administrator and the Special Master appointed by the Court in its July 13, 2016 Order (Document 6871) have reviewed the documents you submitted related to the attempted assignment or loan secured by your monetary claim, as shown in Section III below. **We determined that this transaction is an assignment that is prohibited by Section 30.1 of the Settlement Agreement and the Explanation and Order.** The Assignment Review Summary in Section III below explains more about this determination.

## III. ASSIGNMENT REVIEW SUMMARY

| 1. | **Name of Third Party-Funder:** | ▮▮▮▮▮▮ |
|---|---|---|
| 2. | **Document ID(s) of Assignment/Loan Documents:** These are the Document ID references of the Assignment/Loan Documents you provided, which have been uploaded to the NFL Concussion Settlement Program Portal. | ▮▮▮ ▮▮▮ |
| 3. | **Assignment Review Findings:** We determined these transactions are prohibited assignments for these reasons: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | |

## IV.   HOW TO CONTACT US WITH QUESTIONS OR FOR HELP

If you are a Settlement Class Member, consult with your lawyer if you have questions or need assistance.  If you are a lawyer, call or email your designated Firm Contact for assistance.  For more information about the Settlement Program, visit the official website at www.NFLConcussionSettlement.com to read the Frequently Asked Questions or download a copy of the complete Settlement Agreement.

# EXHIBIT L

# NFL CONCUSSION SETTLEMENT

IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION
No. 2:12-md-02323-AB D. Part

## WAIVER RELINQUISHING RIGHTS UNDER ATTEMPTED ASSIGNMENT

### DEADLINE FOR RECEIPT OF COMPLETED WAIVER: APRIL 12, 2018

In the Explanation and Order dated 12/8/17 (the "Order"), the Court ruled that any agreement entered into by a Class Member that assigned or attempted to assign monetary claims is void and invalid. The Claims Administrator is prohibited from paying a Class Member's monetary award to any third-party that holds an assignment or attempted assignment ("Third-Party Funder").

The Order provides an opportunity for Third-Party Funders to accept rescission. To do so, Third Party Funders must execute this Waiver Relinquishing Rights Under Attempted Assignment (this "Waiver"), thereby relinquishing any claims to rights under the agreement that created the assignment or attempted assignment, and return it to the Claims Administrator within 30 days of the date that the Claims Administrator issued it. This deadline is printed in the banner heading above.

The Claims Administrator will withhold – from the Class Member's monetary award – the amount of money that the Third-Party Funder has already paid to the Class Member and that the Class Member has not returned to the Third-Party Funder, if:

1. The Third-Party Funder has provided a completed, signed Waiver to the Claims Administrator; and

2. The Class Member confirms the monetary amount indicated in Section III below.

If the Class Member is represented by a lawyer, the Third-Party Funder must submit the completed, signed Waiver to the Class Member's lawyer.

If the Class Member is not represented by a lawyer, the Third-Party Funder must submit the completed, signed Waiver directly to the Claims Administrator.

### I.   SETTLEMENT CLASS MEMBER INFORMATION

| Settlement Program ID | ████████ | | | |
|---|---|---|---|---|
| Name | First ████████ | M.I. ██ | Last ████████ | |
| Settlement Class Member Type | Retired NFL Football Player | | | |
| Lawyer | Wood Law Limited | | | |

### II.   THIRD-PARTY FUNDER INFORMATION

| Name | |
|---|---|
| Employer Identification Number | EIN  \|__\|__\| - \|__\|__\|__\|__\|__\|__\|__\| |
| Address | Street |
| | City ____ State ____ Zip Code ____ |

| Name of Authorized Business Representative | |
|---|---|
| Title of Authorized Business Representative | |
| Email Address | |
| Phone Number | ( \|  \|  \| ) \|  \|  \|  \| - \|  \|  \|  \| |

### III.   DETAILS OF AGREEMENT(S) BETWEEN THIRD-PARTY FUNDER AND CLASS MEMBER

**Name and Date of Agreement(s) Between Third-Party Funder and Class Member.** Enter the names (*e.g.*, Funding Agreement, Promissory Note, Security Agreement, etc.) of the agreements between the Third-Party Funder and the Class Member in which the Class Member assigned or attempted to assign a monetary claim to the Third-Party Funder, together with the effective dates of those agreements.  If one transaction includes multiple agreements, list them all.  If there are more than five agreements, list additional agreements on a separate page.

| Name of Agreement Document | Effective Date of Agreement |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |

| | |
|---|---|
| **Amount Third-Party Funder Paid to Class Member.**  Enter the total amount of money that the Third-Party Funder has already paid to the Class Member. | $_____ |
| **Amount Class Member Has Returned to Third-Party Funder.**  If applicable, enter the total amount of money that the Class Member has returned to the Third-Party Funder. | $_____ |

**NOTE:  Upon receipt of this completed Waiver signed by the Third-Party Funder and the Attachment A signed by the Class Member, the Claims Administrator will withhold the amount the Third-Party Funder has paid to the Class Member, minus any amount the Class Member has returned to the Third-Party Funder, from the Class Member's Monetary Award payment and direct that amount to the Third-Party Funder.**

### IV.   ACCEPTANCE OF RESCISSION AND WAIVER RELINQUISHING RIGHTS UNDER ATTEMPTED ASSIGNMENT

By signing this Waiver and accepting the amount noted at Section III above, the Third-Party Funder accepts rescission and relinquishes any and all claims or rights under each and every agreement, in its entirety, between the Class Member and the Third-Party Funder creating the assignment or attempted assignment.  The Third-Party Funder will not seek any further payment from the Class Member, the Class Member's estate, or any other party, by any collection method, as a result of the agreement(s) noted above and certifies by signing this Waiver that the Third-Party Funder accepts the amount noted as full and complete repayment of any and all amounts due from the Class Member.  Additionally, the Third-Party Funder waives any and all claims against the Class Member's attorney, the Claims Administrator, and the Trustee of the Settlement Trust Account.

| V. | PAYMENT ELECTION INFORMATION FOR THIRD-PARTY FUNDER | |
|---|---|---|
| **Payment Method** | Wire Transfer ☐      Check ☐ | |
| V(A). | REQUIRED INFORMATION TO RECEIVE PAYMENT BY WIRE TRANSFER (Complete only if Payment Method selected is Wire Transfer) | |
| 1. | BANK NAME | |
| 2. | BANK ABA ROUTING NUMBER | |
| 3. | ACCOUNT NAME | |
| 4. | ACCOUNT NUMBER | |
| 5. | INTERMEDIARY BANK NAME (IF APPLICABLE) | |
| 6. | INTERMEDIARY BANK ABA ROUTING NUMBER (IF APPLICABLE) | |
| 7. | FOR FURTHER CREDIT INSTRUCTION (IF APPLICABLE) | |
| V(B). | REQUIRED INFORMATION TO RECEIVE PAYMENT BY CHECK (Complete only if Payment Method selected is Check) | |
| 1. | PAYEE NAME | |
| 2. | MAILING ADDRESS | Street / City / State / Zip Code |

| VI. | SIGNATURE OF THIRD-PARTY FUNDER |
|---|---|

This Waiver is an official document submitted in connection with the Class Action Settlement in *In re: National Football League Players' Concussion Injury Litigation, MDL No. 2323*. By signing this Waiver, the Third-Party Funder accepts rescission and relinquishes any claims or rights under the entire agreement between the Class Member and the Third-Party Funder creating the assignment or attempted assignment. **By signing below, I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that all information provided in this Waiver is true and correct to the best of my knowledge, information and belief.**

| Signature | | Date | |
|---|---|---|---|
| Printed Name | First | M.I. | Last |
| Title | | | |

| VII. | HOW TO SUBMIT THIS WAIVER |
|---|---|

Complete this Waiver fully, sign it and submit it to the Claims Administrator. You may submit this Waiver using one of these methods:

| By Online Portal: | Go to your secure online portal with the Claims Administrator and upload this signed PDF. |
|---|---|
| By Email: | ClaimsAdministrator@NFLConcussionSettlement.com |
| By Mail: | NFL Concussion Settlement<br>Claims Administrator<br>P.O. Box 25369<br>Richmond, VA 23260 |
| By Delivery: | NFL Concussion Settlement<br>c/o BrownGreer PLC<br>250 Rocketts Way<br>Richmond, VA 23231 |



## WAIVER RELINQUISHING RIGHTS UNDER ATTEMPTED ASSIGNMENT ATTACHMENT A

In the Explanation and Order dated 12/8/17 (the "Order"), the Court ruled that any agreement entered into by a Class Member that assigned or attempted to assign monetary claims is void and invalid. The Claims Administrator is prohibited from paying a Class Member's monetary award to any third-party that holds an assignment or attempted assignment ("Third-Party Funder").

The Order provides an opportunity for Third-Party Funders to accept rescission. This means that they will accept the return of the funds they extended to you in lieu of enforcing the purported agreement you entered into with the Third-Party Funder  To accept rescission, Third Party Funders must execute a Waiver Relinquishing Rights Under Attempted Assignment (the "Waiver"), thereby relinquishing any claims to rights under the agreement that created the assignment or attempted assignment.

The Claims Administrator will withhold – from your monetary award – the amount of money that the Third-Party Funder has already paid to you and that you have not returned to the Third-Party Funder, if:

1. The Third-Party Funder has provided a completed, signed Waiver to the Claims Administrator; and

2. You confirm the monetary amount indicated in Section III of the Waiver.

You must sign this Attachment A to confirm the amount indicated in Section III of the Waiver.

### SIGNATURE OF SETTLEMENT CLASS MEMBER

This Attachment A to the Waiver is an official document submitted in connection with the Class Action Settlement in *In re: National Football League Players' Concussion Injury Litigation, MDL No. 2323.* **By signing below, I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that all information provided in the Waiver is true and correct to the best of my knowledge, information and belief.**

| Signature by Settlement Class Member | | | Date | |
|---|---|---|---|---|
| **Printed Name** | First | M.I. | Last | |

## CERTIFICATE OF SERVICE

I, Peter C. Buckley, hereby certify that on the date below, I served true and correct copies of the foregoing Demand for Arbitration and Application for Emergency Interim Relief via certified mail and electronic mail on Counsel for Respondent ▬▬▬▬▬▬▬ at the following addresses:

Robert C. Wood, Esquire
The Law Offices of Robert C. Wood
68 North High Street
Building B, Suite 202
New Albany, Ohio 43054

E-mail:  rwood@rwoodlaw.com

_____
Peter C. Buckley, Esquire

Dated:  April 11, 2018