UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | Civ. Action No.: 14-cv-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC'S MOTION
<u>FOR THE APPOINTMENT OF A SPECIAL INVESTIGATOR</u>**

The National Football League and NFL Properties LLC (together, the "NFL Parties") respectfully submit this reply memorandum of law in further support of their Motion for the Appointment of a Special Investigator.

The NFL Parties' moving brief demonstrated the pressing need for a Special Investigator to combat the widespread fraud infecting the NFL Concussion Settlement and to assist the Court, the Special Masters, and the Settlement Administrators in ensuring that deserving retired NFL football players are promptly compensated in accordance with the

terms of the Settlement Agreement.  (*See* NFL Parties' Br. in Supp. Mot. for Appointment of Special Investigator, ECF No. 9880-1 ("NFL Parties' Br.").)

Co-Lead Class Counsel, which represents the interests of the Settlement Class and its members, has no objection to a Special Investigator, noting, correctly, that there is "evidence of misconduct on the part of certain medical professionals and law firms."  (Co-Lead Class Counsel's Resp. to Mot. for Appointment of Special Investigator at 1, ECF No. 9917 ("Co-Lead Class Counsel Br.").)  Likewise, the Claims Administrator has indicated that it has no objection to the appointment of a Special Investigator.

Despite support for a Special Investigator by the main parties to the Settlement Agreement, however, two law firms that represent certain Settlement Class Members—including Settlement Class Members whose very claims are the subject of ongoing audits as well as adverse findings by the Claims Administrator—oppose the appointment of a Special Investigator.  (*See* Podhurst's Resp. to Mot. Seeking Appointment of Special Investigator, ECF No. 9919 ("Podhurst Br."); The Locks Law Firm's Resp. to Mot. for Appointment of Special Investigator, ECF No. 9916 ("Locks Br.")) (together, the "Oppositions").  Significantly, neither of the Oppositions disputes the Court's authority to appoint a Special Investigator.  They simply contend that a Special Investigator is unnecessary and will complicate the Settlement Program.  But the undisputed facts are to the contrary, and both objections therefore should be rejected.

1. **The Existence of Widespread Fraud Supports the Appointment of a Special Investigator**

The Oppositions contend that a Special Investigator is not necessary to prevent, deter, and investigate fraud.  (*See* Podhurst Br. at 3, ECF No. 9919; Locks Br. at 2, ECF No. 9916.)  But they fail even to address—much less rebut—the overwhelming

evidence of fraud already uncovered by the Claims Administrator and detailed in the NFL Parties' moving brief.  That evidence—about which there is no dispute—makes plain that this is not merely a matter of "a few cases of suspected fraud." (Podhurst Br. at 3, ECF No. 9919.)  Quite the opposite:  The independent Claims Administrator has made adverse audit findings with respect to *more than 400 claims (or nearly 25% of the total claims submitted*), and those claims are associated with dozens of different law firms, neurologists, and neuropsychologists.  (*See* NFL Parties' Br. at 2–3.)  The Claims Administrator also has recommended the permanent disqualification from the Settlement Program of more than a dozen neurologists and neuropsychologists and is continuing to investigate more than 200 claims based on the existence of red flags or other signs of potential fraud.  (*See id.* at 2.)  Moreover, there is extensive evidence—also catalogued in the NFL Parties' moving brief and undisputed by the Oppositions—demonstrating that the conduct was intentional and, indeed, that a number of Settlement Class Members knowingly participated in the misconduct, including by intentionally making false statements about, or deliberately concealing, employment and other activities that they knew were inconsistent with (and would therefore undermine) their self-reported impairment and purported diagnoses.  (*See id.* at 3–4.)

In short, the predicate for the appointment of a Special Investigator is undisputed and indisputable.

## 2. The Fraudulent Conduct is Severe and Pervasive

The Oppositions and Co-Lead Class Counsel's response suggest that the NFL Parties may be overstating the severity and scope of the misconduct.  (*See* Co-Lead Class Counsel Br. at 2, 4, ECF No. 9917; Podhurst Br. at 3, ECF No. 9919).  Again, the facts are to the contrary.  Although the Claims Administrator's audits are focused on the

3

question of whether a claim included a misstatement, omission, or concealment of a material fact, there can be no serious dispute that the conduct at issue involves outright *fraud*, including, among other things: lawyers coaching players on how to cheat the neuropsychological tests, a player purposely showing up for his evaluation hungover and on Valium while deliberately concealing that from the evaluating physician, a neuropsychologist certifying under penalty of perjury that she spent over 130 hours evaluating eight players in a single day (including on New Year's Eve), a neurologist reporting identical vital signs for over 20 players, and retired players falsely claiming they cannot work due to their purported cognitive impairment when in fact they are working and participating in other activities at odds with their self-reported impairment. The Claims Administrator's findings detailed in the NFL Parties' moving brief demonstrate that the fraud is egregious and widespread, further supporting the need for a Special Investigator.

### 3. A Special Investigator Will Assist, Not Distract, the Claims Administrator, the Special Masters and the Court

The Oppositions assert that the NFL Parties' motion is premised on the argument that "the Claims Administrator and Special Masters are not up to the task." (Podhurst Br. at 3, ECF No. 9919.) Not true. The Claims Administrator has been highly effective in identifying signs of potential fraud and carrying out investigative audits, but its mandate is narrow in scope. The Claims Administrator's audits are designed to determine only whether there is a reasonable basis to support a finding of a misrepresentation, omission, or concealment of a material fact. Once the Claims Administrator makes that determination, it refers its Audit Report to the Special Masters for review and findings and the imposition of remedies. The Claims Administrator does

*not* continue the investigation to determine whether the subjects of the audit acted intentionally or to determine the full scope or extent of any misconduct.

Once an Audit Report is referred to the Special Masters, it is up to them to review the Report, make findings, and order appropriate relief, including making findings as to whether the misrepresentation, omission, or concealment at issue was intentional. A Special Investigator is necessary to support the Special Masters in this task and enable them to discharge these duties by providing additional investigative resources to help determine questions of intent, ascertain the full scope of any fraud and the identity of the participants, and recommend appropriate remedies. That additional investigative work will enable the Special Masters to consider the full range of potential remedies to ensure the integrity of the Program, safeguard against the payment of fraudulent claims, and provide meaningful deterrence.

The Special Investigator is also necessary to expand the resources of the Claims Administrator, as necessary, in its audit work, given the very significant number of claims that have raised concerns about fraud of varying degrees.

Given the breadth and severity of the misconduct identified to date and the number of potentially fraudulent claims still under investigation, the need for the services and expertise of a Special Investigator is patent.

**4. A Special Investigator Will Expedite, Not Delay, Claims Processing**

The Oppositions and Co-Lead Class Counsel's response express concern that a Special Investigator may complicate the settlement process, create a "bottleneck," or result in "radical change" and a "reallocation of the duties and responsibilities assigned to the Special Masters and the Claims Administrator." (Podhurst Br. at 3, ECF No. 9919; Co-Lead Class Counsel Br. at 4, ECF No. 9917; *see* Locks Br. at 2, ECF No. 9916.) These

5

concerns demonstrate a misunderstanding of the Settlement Agreement and the NFL Parties' motion. The appointment of a Special Investigator does not alter a single term of the Settlement Agreement. It would simply provide the Claims Administrator, the Special Masters, and the Court with more resources, investigative tools, and expertise to do what they already are charged with doing in preserving the integrity of the Settlement Agreement and imposing remedies where the facts support them.

As for the suggestion that a Special Investigator will create delay, the opposite is in fact the case: To the extent there has been delay in claims processing, it is in large measure the result of the extraordinary number of potentially fraudulent claims filed by dishonest lawyers and doctors (and even some players) clogging the system. The Special Investigator will alleviate, not compound, this problem. Indeed, Co-Lead Class Counsel recognizes the significant efficiency gains from a Special Investigator, noting that it will "free up valuable resources so that other claims can be more efficiently reviewed on their merits." (Co-Lead Class Counsel Br. at 3, ECF No. 9917.)

It should not be lost on this Court that the only two law firms that oppose the NFL Parties' motion have a self-interest in protesting additional investigative resources. Together, they represent nine claimants whose claims are the subject of ongoing audit investigations, and five claimants whose claims are the subject of adverse audit findings by the Claims Administrator. All of those claims would potentially be subject to further investigation by the Special Investigator, as well as additional remedies, including potentially the forfeiting of attorneys' fees.[1]

---

[1] Co-Lead Class Counsel objects in a footnote to the NFL Parties' recommendation that the Special Investigator be permitted to engage in *ex parte* communications with Co-Lead Counsel and the NFL Parties, but identifies no reason why the Special Investigator's

5. **The Special Investigator Should be an Independent Party, Not a Law Firm Previously Involved on Behalf of Retired Players in this Very Case**

The law firms of MoloLamken LLP and Hangley Aronchick Segal Pudlin & Shiller filed a response to the NFL Parties' motion to argue that "a Special Investigator must not be—and cannot be perceived as—a tool of the NFL," and that their firms' experience representing players in the litigation underlying the NFL Concussion Settlement qualify them to be appointed as the Special Investigator. (*See* MoloLamken LLP and Hangley Aronchick's Resp. to Mot. for Appointment of Special Investigator at 1–2, ECF No. 9918 ("MoloLamken Br.").)

To be sure, the Special Investigator should be independent and not be perceived as biased in favor of or against any party. For that precise reason, the past involvement of these two law firms obviously disqualifies them from acting as the Special Investigator. (*See* MoloLamken Br. at 1, 3–8 (discussing MoloLamken and Hangley Aronchick's significant involvement in the litigation underlying the Settlement).)

---

ability to discharge its duties should be restricted in that way. (*See* Co-Lead Class Counsel Br. at 3–4 n.2, ECF No. 9917.) If the Special Investigator believes, for example, that *ex parte* communications are necessary to avoid compromising the integrity of a particular investigation, there is no valid reason to prohibit the Special Investigator from doing so. Indeed, under the Audit Rules adopted by the Special Masters, the Claims Administration has discretion whether to disclose information it receives from one party to the other party. (*See* Rules Governing the Audit of Claims 7(c) (Jan. 26, 2018).) The Special Investigator should be given the same discretion, as other courts have done in analogous circumstances. *See, e.g.*, Order at 2–3, *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mex., on Apr. 20, 2010*, No. MDL 2179 (E.D. La. July 2, 2013) (appointing Louis Freeh to investigate misconduct in the Settlement Program and authorizing him "to communicate *ex parte* with the Court and the parties, without notice, as he deems necessary and appropriate for the performance of his duties").

## CONCLUSION

For the foregoing reasons and those set forth in their opening brief, the NFL Parties respectfully request that their motion be granted and that the Court promptly appoint a Special Investigator to carry out the responsibilities described herein.

Dated: May 7, 2018

                              Respectfully submitted,

                              PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
/s/  Brad S. Karp
Brad S. Karp
Bruce Birenboim
Lynn B. Bayard
Richard C. Tarlowe
1285 Avenue of the Americas
New York, NY 10019-6064
Tel:   (212) 373-3000
Email: bkarp@paulweiss.com

*Attorneys for Defendants the National Football League and NFL Properties LLC*

## CERTIFICATE OF SERVICE

    I, Brad S. Karp, hereby certify that on the 7th day of May 2018, I electronically transmitted a true and correct copy of the foregoing document, REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE NATIONAL FOOTBALL LEAGUE AND NFL PROPERTIES LLC'S MOTION FOR THE APPOINTMENT OF A SPECIAL INVESTIGATOR, to the Clerk of the Court using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all attorneys of record who are ECF registrants.

Dated:  May 7, 2018                            /s/ Brad S. Karp
                                                  Brad S. Karp