

Fox Rothschild LLP
ATTORNEYS AT LAW

2000 Market Street
20th Floor
Philadelphia, PA 19103-3222
Tel (215) 299-2000  Fax (215) 299-2150
www.foxrothschild.com

PETER C. BUCKLEY
Direct No:  215.299.2854
Email: PBuckley@FoxRothschild.com

May 8, 2018

**VIA ECF AND HAND DELIVERY**

The Honorable Anita B. Brody
United States District Court for the Eastern District of Pennsylvania
James A. Byrne U.S. Courthouse
601 Market Street, Room 7613
Philadelphia, Pennsylvania 19106-1751

Re:     *Thrivest Specialty Funding, LLC v. William White*,
        No. 18-cv-1877 (E.D. Pa.) ("Thrivest v. White")

        *In Re: National Football League Players' Concussion Injury Litigation*,
        No. 12-md-023230 (E.D. Pa.) (the "NFL Concussion Class Action")

I represent Thrivest Specialty Funding, LLC ("Thrivest") in the above-referenced matters presently pending before Your Honor.

Thrivest respectfully submits this letter brief in advance of the May 9, 2018 hearing in the NFL Concussion Class Action on Class Counsel's request to enjoin Thrivest from proceeding with the arbitration captioned Thrivest Specialty Funding, LLC v. White, AAA No. 01-18-0001-4765 (the "Arbitration").[1]

---

[1] Class Counsel asks the Court to enjoin not only Thrivest's pending arbitration against White, but also future as-yet-unfiled arbitrations against other class members. The Court already resisted Class Counsel's invitation to expand this proceeding beyond any legal or logical boundary when it limited the scope of its temporary restraining order to enjoin only the hearing scheduled for May 4, 2018 in the Arbitration. The Court should reject Class Counsel's request for an omnibus injunction for the reasons set forth herein, but also because, in the absence of any actual case or controversy between Thrivest and other class members,

A Pennsylvania Limited Liability Partnership

California      Colorado     Connecticut    Delaware      District of Columbia    Florida      Illinois
Minnesota       Nevada       New Jersey     New York      Pennsylvania            Texas        Washington



*Thrivest Specialty Funding, LLC v. William E. White*
No. 18-cv-01877 (E.D. Pa.)
May 8, 2018
Page 2


By letter dated May 4, 2018 (Dkt. 9968), Thrivest asked the Court to combine the scheduled hearing on Class Counsel's request for an injunction with a hearing on Thrivest's Complaint to Compel Arbitration in <u>Thrivest v. White</u>.  Thrivest's submission is also in support of its request to compel respondent William E. White ("White") to arbitrate their dispute in the Arbitration.

### <u>RELEVANT BACKGROUND</u>

**1.    White Approaches Thrivest Seeking An Advance On His $3.5 Million Expectancy In The NFL Concussion Class Action; Thrivest Provides A $500,000 Non-Recourse Advance To Satisfy White's IRS Obligations And Provide Financial Stability.**

An 11-year veteran of the NFL, White was diagnosed with amyotrophic lateral sclerosis (ALS) in October 2016; at the time, White owed the IRS nearly $200,000 because of unpaid income taxes from 2008, 2011 and 2012—with interest and penalties accruing daily.  <u>See</u> Declaration of Thrivest President Joseph R. Genovesi ("Genovesi Declaration") at ¶¶7, 11-12, attached.  White needed immediate financial assistance.  He expected $3.5 million from the settlement in the NFL Concussion Class Action, but knew he would have to wait; he could not even submit his claim until March 2017 and everyone expected delays due to the massive scale of the settlement.  So, like many other putative members of the class, White sought an advance against his expected recovery to help bridge his financial gap.

There were numerous lenders and funding companies providing advances at the time.  White chose Thrivest.  Thrivest offered the lowest rate (19% per annum) for any non-recourse transaction— meaning White would have no obligation to repay the advance if his claim was denied and he need not tap his other assets in the event of a shortfall in his award.[2]  Thrivest projected that White

---

such an all-encompassing injunction would constitute an impermissible advisory opinion in violation of Article III of the Constitution.

[2] Although not applicable because of the non-recourse, contingent nature of White's repayment obligation under the Agreement, New York's usury laws provide relevant context for Thrivest's rate.  <u>See</u> <u>Obermayer, Rebmann, Maxwell & Hippel v. West, et al.</u>, No. 16-1376, 2018 WL 1074310, *2 (3d Cir., Feb. 27, 2018) ("Thus, a transaction that neither guarantees the lender an absolute right to repayment nor provides it with security for the debt is not a loan, and as a result, cannot be subject to New York's usury laws.").  In New York, the maximum rate of interest for a transaction that guarantees an absolute right of repayment—i.e., a "loan"—is sixteen percent (16%) per annum.  <u>See</u> McKinney's Banking Law §14-a[1]; McKinney's



*Thrivest Specialty Funding, LLC v. William E. White*
No. 18-cv-01877 (E.D. Pa.)
May 8, 2018
Page 3

would receive $3.5 million based on his ALS diagnosis, age at the time of diagnosis, and 11 years of service in the NFL; White requested an advance that would net him $450,000 after satisfying his obligations to the IRS and transaction fees,[3] but his attorney—Robert Wood, Esquire ("Attorney Wood") — asked Thrivest to cap its advance at $500,000 total.   See Genovesi Declaration at ¶¶8, 13.

To confirm White's diagnosis and capacity to make independent legal and financial decisions, Thrivest sought the opinion of White's treating neurologist at Ohio State, Kevin Weber, M.D. ("Doctor Weber").   See Genovesi Declaration at ¶¶9-10.   Doctor Weber confirmed White's ALS diagnosis and his professional opinion that White's disease "has in no way impaired [White's] ability to make his own legal, medical, and financial decisions;" moreover, based on a review of White's medical records, Doctor Weber indicated that White has never "lacked capacity to make independent legal, medical and financial decisions."   See Physician's Statement of Mental Competency, Exhibit B to Genovesi Declaration.

Based on Doctor Weber's assurances, Thrivest agreed to provide White a $500,000 advance on terms clearly summarized on the first page of their Sales and Purchase Agreement (the "Agreement"):

---

General Obligations Law §5-501[1].  New York recognizes, however, that larger transactions bear more risk and so, for loans or forbearances in the amount of two hundred fifty thousand dollars ($250,000) or more, the civil usury cap does not apply and the only limitation is the 25% per annum limit in the criminal usury statute.  See McKinney's General Obligations Law §5-501[6(a)]; McKinney's Penal Law §190.42. Considering the amount of the advance ($500,000) and the non-recourse, contingent nature of the obligation, Thrivest's 19% per annum rate was more than reasonable.

[3] The transaction fees included, among other due diligence and underwriting expenses, lien and judgment searches.  White did not disclose his IRS obligations to Thrivest, but Thrivest discovered them through its due diligence.  See Genovesi Declaration at ¶12.



Fox Rothschild LLP
ATTORNEYS AT LAW

*Thrivest Specialty Funding, LLC v. William E. White*
No. 18-cv-01877 (E.D. Pa.)
May 8, 2018
Page 4

| DISCLOSURE STATEMENT | |
|---|---|
| **Distribution:** | |
| The financial portion of the Settlement that the Seller is personally entitled to: | $3,500,000.00 |
| **TSF Distribution:** | |
| The portion of the Distribution that is being sold by the Seller and purchased by Buyer: | $ 880,194.29 |
| **The TSF Purchase Price amount:** | |
| The dollar amount being paid to the Seller by Buyer as consideration for the sale of the TSF Distribution (as set forth in Exhibit B hereof): | $ 500,000.00 |
| Payoff of prior liens and judgments: | $ 192,253.89 |
| Net payment to Seller: | $ 282,746.11 |
| **Transaction Fees** (which shall not be deemed to be interest (if this agreement is characterized as a loan) to be paid by Seller: | |
| Origination Fee | $    2,455.00 |
| Application Fee | $       200.00 |
| Underwriting Fee | $    4,910.00 |
| Due Diligence Fee | $    7,365.00 |
| Lien/Judgment Search Fee | $    4,910.00 |
| Broker Fee | WAIVED |
| Legal Fee | $    4,910.00 |
| Closing Fee | $       250.00 |
| Total Transaction Fees: | $  25,000.00 |

See Agreement at 1, Exhibit A to Genovesi Declaration.  White initialed each page and signed the Agreement on December 19, 2016.  See Agreement (Exhibit A).  Attorney Wood notarized White's signature on the Agreement, attesting that White "acknowledged that he executed the same for the purposes therein contained."  Id.  Genovesi signed the Agreement on behalf of Thrivest electronically.  See id. at ¶14.

Thrivest advanced $500,000 of White's expected $3.5 million recovery; White used $192,253.89 to satisfy his IRS liens and received $282,746.11 (the remainder less 5% transaction fees) to use as he saw fit with no financial obligation to Thrivest unless and until he received an award in the NFL Concussion Class Action.  See Genovesi Declaration at ¶18.



*Thrivest Specialty Funding, LLC v. William E. White*
No. 18-cv-01877 (E.D. Pa.)
May 8, 2018
Page 5

**2.     Under The Non-Recourse Agreement, White's Obligation To Transfer The TSF Distribution To Thrivest Does Not Exist Until White Receives His Monetary Award (i.e., The Distribution), Payment Of Which By The Claims Administrator Extinguishes White's Monetary Claims Under The Settlement Agreement.**

The Agreement is a true sale of a portion of White's anticipated financial award in the NFL Concussion Class Action.  See Agreement at Section 1(a) ("In consideration for the purchase of the TSF Distribution, [Thrivest] agrees to pay [White] the sum of $500,000.00").  The Agreement defines White's "anticipated financial award [from the NFL Concussion Class Action] in the amount of $3,500,000" as the "Distribution."  Id. at First Whereas Clause.

White sold a portion of the Distribution, defined in the Agreement as the "TSF Distribution," to Thrivest.  Id. at Second Whereas Clause.  The amount of the TSF Distribution varies over time and is set forth on Exhibit B to the Agreement; if paid before May 31, 2018, the TSF Distribution is $663,398.18.  See id. at Exhibit B.  In Section 2(g) of the Agreement, White agreed to "pay to [Thrivest] the TSF Distribution as set forth in [the] Agreement … and that payment shall be made to [Thrivest] from any funds ***received*** in full or partial satisfaction of the Distribution … before any payment is made from the Distribution to [White]."  Id. at Section 2(g) (emphasis added).

The Agreement is non-recourse, meaning "[i]f the Distribution amount is less than the anticipated amount and is insufficient to pay [Thrivest] the TSF Distribution, then [Thrivest] will be limited to the lesser Distribution ***received*** with no recourse to [White] for any remaining balance."  Id. at Section 1(j) (emphasis added).  Similarly, "if [White] ***recovers no money*** from the Distribution, [White] shall owe nothing to [Thrivest]."  Id. at Section 1(k) (emphasis added).  Indeed, White's obligation to transfer the TSF Distribution to Thrivest "within three (3) business days" arises only after White's "***collection and receipt*** … of any Distribution."[4]  Id. at 2(c) (emphasis added).  In

---

[4] In connection with the Agreement, White also signed a "Limited Irrevocable Power of Attorney" (the "Limited POA"), which transferred authority to deposit checks payable to White from the NFL Concussion Settlement to Thrivest; Attorney Wood notarized White's signature on that document as well.  See Limited POA, Exhibit D to Genovesi Declaration ("I understand that by executing this Power of Attorney, I am giving up the right to endorse and deposit the Payments, except as otherwise authorized by Buyer.  This Power of Attorney may not be revoked or changed except upon the prior written consent of TSF.").  The Limited POA did not give Thrivest any authority to participate in the claims administration process or to deal directly with the NFL or the Claims Administrator on White's behalf; indeed, Thrivest's authority under the Limited POA expressly began only after White received payment for his claim.



*Thrivest Specialty Funding, LLC v. William E. White*
No. 18-cv-01877 (E.D. Pa.)
May 8, 2018
Page 6

this way, White's financial obligation to Thrivest **begins** only after he has received his monetary award in the NFL Concussion Class Action—i.e., the Distribution.[5]

White's receipt of a monetary award in the NFL Concussion Class Action, in turn, represents the **end** of White's rights and claims against the NFL or under the Settlement Agreement in the NFL Concussion Class Action, at least with respect to the "Qualifying Diagnosis" for which White received the award—here, ALS.[6]  As such, the TSF Distribution does not even exist until after White's claim under the Settlement Agreement has been extinguished.

By not opting out of the Settlement Agreement in the NFL Concussion Class Action (the "Settlement Agreement"), White agreed to release the "Released Parties" from the "Released Claims" in exchange for, among other things, "all compensation and benefits for which [he qualifies] under [the Settlement Agreement]."  See Settlement Agreement at 14.2(b), Section 18 (Dkt. 6481-1).  In other words, White gave up "any rights or claims relating to the subject matter of the Class Action Complaint" in exchange for the rights and claims set out in the Settlement Agreement.  See Settlement Agreement at 30.1.

Pursuant to Article VI, White qualified for a "Monetary Award" under the Settlement Agreement because of his ALS diagnosis and years of NFL Service.  See id. at Article VI; see also id. at Exhibit A-3 (Monetary Award Grid).  Under Section 9.3 of the Settlement Agreement, however, the Claims Administrator could not pay White his award until the claims administration process had been exhausted, including any appeal, audit, fraud investigation, or other process relating to liens or derivative claims.  See id. at Section 9.3.  In short, White was not entitled to be paid "pursuant to the requirements and criteria set forth in [the] Settlement Agreement" until his claim was "final." See id. at Section 3.1(a) ("the NFL Parties will … [p]ay all **final** Monetary Awards"); see also Section 4.3(a)(iv) (decision on appeal by "the Court or Special Master shall be final and binding").

---

[5] Similarly, after the title "**ASSIGNMENT** OF LITIGATION PROCEEDS AND OTHER PROPERTY," Esquire Bank's loan documents contain an assignment of a security interest in "all funds that I am entitled **to receive** under, in connection with or as a result of the [NFL Concussion Class Action];" and, later, those same documents make clear that the security interest attaches to "amounts **to be paid**."

[6] The Settlement Agreement provides White with other benefits—for example, through the "Education Fund"—however, those non-monetary benefits are not covered by White's Agreement with Thrivest and thus not at issue here.



*Thrivest Specialty Funding, LLC v. William E. White*
No. 18-cv-01877 (E.D. Pa.)
May 8, 2018
Page 7

As a result and by operation of the release contained in the Settlement Agreement, after the Claims Administrator distributed a monetary award to White because of his ALS diagnosis, White no longer had any further rights or claims relating to his ALS diagnosis in the NFL Concussion Class Action or pursuant to the Settlement Agreement.

As such, White's obligation to transfer the TSF Distribution to Thrivest within three days of receiving his award did not arise until *after* White's participation in the claims administration process had *ended*.  Indeed, the TSF Distribution did not even exist until after White's claims had been extinguished.  In short, Thrivest stands completely outside of the claims administration process with no right to be paid until after the claims administration process is over.

**3.      White's Core Promise To Transfer The TSF Distribution (Once Received) In Exchange For $500,000 Is Severable From Any Purported Assignment Of White's Rights Or Claims Against The NFL Or Under The Settlement Agreement.**

As set forth above, White sold the TSF Distribution to Thrivest in exchange for $500,000, but had no financial obligation to Thrivest until *after* receiving his monetary award from the Claims Administrator at the end of the claims administration process.  As such, White's promise to transfer the TSF Distribution to Thrivest could not—and did not—interfere with administration of the NFL Concussion Class Action settlement.

To the extent that other language in the Agreement could be interpreted as assigning greater rights, that language can be declared "void or unenforceable" without impairing White's core promise to transfer the TSF Distribution after receiving his award because White and Thrivest agreed to the following severability clause in the Agreement (the "Severability Clause"):

> Enforceability of Agreement.  If any provision of this Agreement is held to be illegal, void or unenforceable, such provision shall be of no force or effect. However, the illegality or unenforceability of such provision ***shall have no effect upon, and shall not impair the legality or enforceability of***, any other provision in this Agreement.

See Agreement at Section 6(h) (emphasis added).



*Thrivest Specialty Funding, LLC v. William E. White*
No. 18-cv-01877 (E.D. Pa.)
May 8, 2018
Page 8

In this regard, Section 2 of the Agreement sets forth the "general terms of the purchase and sale" with Section 2(a) divided into subparts that describe a series of interests conveyed by White in exchange for Thrivest's $500,000 consideration.  Id. at Section 2.

Through Section 2(a)(i), White "assigns, conveys, *sells*, … transfers … *to [Thrivest]* all rights, title, benefits, and interests of [White] in and to *[t]he TSF Distribution*."  Id. at Section 2(a)(i) (emphasis added).  This is White's promise to transfer the TSF Distribution to Thrivest upon receipt of his award, which marks the end of the claims administration process under the Settlement Agreement.  Because the TSF Distribution does not exist until White receives his award from the Claims Administrator, this promise exists wholly outside of the claims administration process.  Thus, White's core promise to transfer the TSF Distribution could not—and did not— interfere with administration of the NFL Concussion Class Action settlement, or, moreover, involve an assignment of rights or claims against the NFL.

Section 2(a)(i) goes on to refer to White's transfer of "all rights to payment of or on account of the TSF Distribution, and all proceeds of [the] Distribution until [Thrivest] has collected the TSF Distribution."  See id. at Section 2(a)(i).  Section 2(a)(ii) conveys additional interests that would allow Thrivest to enforce White's rights in the Distribution if it was determined that White had a right to the Distribution, but the Distribution was somehow not paid.  To the extent that this language could be interpreted as violating Section 30.1 of the Settlement Agreement, the Severability Clause directs that these "suspenders" be ignored so as to preserve the "belt"— White's core promise to transfer the TSF Distribution on receipt in exchange for the $500,000 paid to him by Thrivest in December 2016.

Indeed, White promised to hold the TSF Distribution "in trust for [Thrivest];" and, the timing of payment provision makes clear that White's obligation to transfer the asset arises only after he receives his award from the Claims Administrator.  As such, to the extent Thrivest's Agreement is interpreted as also assigning additional rights to participate in the NFL Concussion Class Action or the claims administration process, those provisions are surplusage to White's core promise to transfer the TSF Distribution once the claims administration process is over and he has received it.  Indeed, Thrivest did not participate in the administration of White's claim by the Claims Administrator and only became aware of White's award when White demanded that Thrivest waive its rights under the Agreement in exchange for a return of principal only.[7]

---

[7] The Claims Administrator has implemented a process that is contrary to law.  Under New York law, which governs the Settlement Agreement, rescission is an equitable remedy to "place the parties where



*Thrivest Specialty Funding, LLC v. William E. White*
No. 18-cv-01877 (E.D. Pa.)
May 8, 2018
Page 9

White executed a "Certification," wherein he certified (under penalty of perjury) the accuracy of all of his statements in the Agreement—including his representation to Thrivest in Section 3(c) of the Agreement that he "has the unrestricted right to assign the TSF Distribution."   See Certification, Exhibit C to Genovesi Declaration.  Interpreting White's promise to transfer the TSF Distribution as severable from the other provisions in Section 2(a) would be consistent with White's sworn statement.  More to the point, however, it would also be consistent with the Court's December 8, 2017 Explanation and Order (the "Explanation and Order")—wherein the Court concluded that the Settlement Agreement prohibits assignment of "monetary claims **under the Settlement Agreement**"—because, by definition, the TSF Distribution does not exist until White's monetary claim under the Settlement Agreement has been satisfied by the Claims Administrator. See Explanation and Order (Dkt. 9517) at 3-4 (emphasis added).[8]

_____

they were before the vitiated contract was made."   See 11 S. Laundry, Inc. v. MCD Assets, LLC, 927 N.Y.S.2d 143, 2013 N.Y. Slip Op., at *6 (N.Y. Gen. Term Apr. 18, 2013).  As such, even where a contract is void *ab initio*, New York law requires the payment of 9% statutory interest to ensure that no party "be placed in a better position after rescission than when the contract was executed."   See id. at *6; see also CPLR § 5004 (articulating statutory interest rate in New York as 9% annum).  Thus, by purporting to require Thrivest and others to accept return of principal without imposing statutory interest, the Claims Administrator is implementing a process that is contrary to New York law.  Moreover, by purporting to invalidate Thrivest's Agreement without notice and an opportunity to be heard, the Claims Administrator has run afoul of fundamental notions of due process guaranteed by the Constitution.

[8] The Court issued the Explanation and Order in response to a "certified question" from the United States District Court for the Southern District of New York.  There is no process whereby one Federal court can certify a question to another Federal court.  Indeed, Federal courts have "virtually [an] unflagging obligation . . . to exercise the jurisdiction given them."   See Colorado River Conservation Dist. v. United States, 424 U.S. 800, 817 (1976).  And, while the MDL Rules permit courts to transfer "one or more common questions of fact [that] are pending in different district . . . for coordinated or consolidated **pretrial proceedings**," see 28 U.S.C. § 1407(a), they do not permit the procedure urged by Class Counsel and adopted by the New York Court here.    Indeed, the cases cited by Class Counsel in the Southern District of New York—Landis v. N. Am. Co., 299 U.S. 248 (1936); In re World Trade Ctr. Disaster Site Litig., 722 F.3d 483 (2d Cir. 2013); and In re Orthopedic Bone Screw Prod. Liab. Litig., 79 F.3d 46 (7th Cir. 1996)—address a district's inherent power to manage its docket and efficiently resolve cases involving issues of discovery, not substantive rights.



*Thrivest Specialty Funding, LLC v. William E. White*
No. 18-cv-01877 (E.D. Pa.)
May 8, 2018
Page 10

The Court need not—and should not—parse these important distinctions, however, because White and Thrivest agreed to arbitrate disputes concerning the validity and enforceability of their Agreement and, moreover, decided not to resolve their differences through class action or multi-district litigation. Nevertheless, in view of the potential of this ambiguity in the Court's Explanation and Order to ignite other conflicts, the Court should clarify that its analysis is limited to purported assignments of rights and claims against the NFL or in the claims administration process, while making clear that Section 30.1 of the Settlement Agreement does not prohibit the sale, transfer or assignment of settlement proceeds after those rights and claims have been extinguished through payment of a monetary award.

**4.      White And Thrivest Agreed To Arbitrate Disputes About The Validity And Enforceability Of Their Agreement And, Moreover, To A Class Action And Multi-District Litigation Waiver.**

The Agreement between White and Thrivest contains a clause designating AAA arbitration as the exclusive method of dispute resolution (the "Arbitration Agreement"), including for controversies relating to the validity or enforceability of the Agreement:

> Dispute Resolution. Notwithstanding anything to the contrary herein, Buyer and Seller unconditionally agree that any dispute, controversy or claim arising out of, or relating in any way to this purchase and sale Agreement, including without limitation, any dispute concerning the construction, *validity*, interpretation, *enforceability*, *alleged breach by either party*, and/or any other term set forth in the Agreement *shall be exclusively resolved by binding arbitration* upon Buyer or Seller submitting the dispute to the American Arbitration Association within 30 days of written notice to the other party.

See Agreement at Section 6(z), Exhibit A to Genovesi Declaration (emphasis added). White and Thrivest selected Pennsylvania law as governing the arbitration and agreed that the arbitration "shall be conducted within the jurisdiction of the Commonwealth of Pennsylvania." Id. The Arbitration Agreement provides that either party "may apply (in the event of an emergent issue) to a Pennsylvania state or federal court for interim or emergent relief, including without limitation a proceeding to compel arbitration." Id. White affixed his initials "WW" to both pages on which the Arbitration Agreement appears in the Agreement. See id.

The Agreement also contains a conspicuous class action and multi-district litigation waiver (the "Class Action/MDL Waiver") in capital letters:



*Thrivest Specialty Funding, LLC v. William E. White*
No. 18-cv-01877 (E.D. Pa.)
May 8, 2018
Page 11

> ***SELLER HEREBY WAIVES THE RIGHT TO CONSOLIDATE UNDER ANY
> MULTI DISTRICT LITIGATION*** OR OTHER CONSOLIDATION, ***OR
> BECOME PART OF A CLASS ACTION***, OR ANY OTHER PROCEEDING,
> CONTROVERSY, ARBITRATION AND/OR ***DISPUTE OF ANY NATURE
> INVOLVING ANY PERSON OR ENTITY WHO IS NOT A PARTY TO THIS
> AGREEMENT***.

See id. at Section 6(bb) (emphasis added). As with every page of the Agreement, White affixed his initials "WW" to the page on which the Class Action/MDL Waiver appears in the Agreement. See id.

Although Class Counsel and White contend that the "No Assignment of Claims" provision in the Settlement Agreement invalidates the entire Agreement, neither disputes that White signed the Agreement after affixing his initials to every page.

Despite Doctor Weber's contemporaneous Statement of Mental Competency, Class Counsel has made wild, unsupported assertions about White's mental state: "the mental state of Mr. W[hite], by the way, Your Honor, who has ALS, is very sick."[9] See Transcript of May 4, 2018 Telephonic Conference at 6:2-4. In view of Doctor Weber's Statement and White's eloquent invocation at the April 25, 2018 memorial for Ohio State University football coach Earle Bruce and other recent television interviews,[10] Thrivest asserts that neither Class Counsel, nor White can make a credible

---

[9] These verifiably false representations to the Court highlight the danger of allowing Class Counsel to represent individual class members on issues of fact that are not suitable for class-wide adjudication.

[10] On September 30, 2017, White addressed the Ohio State football team before their game against Rutgers. Afterward, the *Columbus Dispatch* interviewed White about his message to the team. See "Interview with William White," *Columbus Dispatch*, Sept. 30, 2017, available at https://www.youtube.com/watch?v=QGguhGWPxWg.

On November 21, 2017, NBC's Columbus affiliate featured White in a story about his ALS diagnosis. In the story, White admitted that he is still physically active, regularly works out, and raises money for ALS research. See "Former Buckeye William White talks about fight with ALS," NBC4 WCMH-TV Columbus, Nov. 21, 2017, available at https://www.youtube.com/watch?v=Ld1vVoTr05o.

More recently, on April 25, 2018, White delivered a stirring invocation at the memorial for former Ohio State Football Coach Earle Bruce. See "Celebration of the Life of Earle Bruce," Ohio State University,



*Thrivest Specialty Funding, LLC v. William E. White*
No. 18-cv-01877 (E.D. Pa.)
May 8, 2018
Page 12

case that somehow a lack of capacity prevented White from agreeing to arbitration or to waive adjudication of disputes in the class action/MDL context.

### ARGUMENT

The Court should deny Class Counsel's request to enjoin the Arbitration through the NFL Concussion Class Action. Class Counsel requests relief that is not only barred by the Arbitration Agreement and Class Action/MDL Waiver, but also beyond the scope of the Court's authority to oversee the claims administration process under Rule 23(d) and to supervise and enforce the Settlement Agreement under the All Writs Act. Indeed, White's financial obligation to Thrivest and the disputed asset itself (the TSF Distribution) did not even *exist* until after the Claims Administrator paid White his award, extinguishing his monetary claim under the Settlement Agreement. The Court should reject Class Counsel's invitation to control the proceeds of the settlement even after they are in White's hands. Doing so would be unprecedented, but, moreover, would imply that "monetary claims under the Settlement Agreement" exist even after the Claims Administrator makes final payment—calling into doubt the scope of the release at the heart of the class-wide resolution.

On the contrary, in accordance with United States Supreme Court precedent upholding the enforceability of—and preference for—private dispute resolution, the Court should enter an order in Thrivest v. White directing White to arbitrate the parties' dispute before AAA. Only an arbitrator can decide how the "No Assignment of Claims" provision in the Settlement Agreement impacts the validity and enforceability of the Agreement. While there may be some question about the enforceability of certain assignment language in the Agreement (albeit irrelevant to White's core promise to transfer the TSF Distribution on receipt), neither the Arbitration Agreement, nor the Class Action/MDL Waiver even contain the word "assign." Accordingly, there is no credible argument that the "No Assignment of Claims" provision somehow invalidates those standalone provisions in the Agreement.

What's more, unless Thrivest and others similarly situated agree to "waive" rights under agreements that Class Counsel contends have already been invalidated completely by the Court's

available at https://www.youtube.com/watch?v=gGzsecfPQjk, (starting at 10:08). After addressing the gathering, White gave a substantive one-on-one interview about Coach Bruce's legacy. See "Former OSU coaches, players honor Earle Bruce," *Columbus Dispatch*, Apr. 25, 2018, available at https://www.youtube.com/watch?v=D4skXEx7yoc.



*Thrivest Specialty Funding, LLC v. William E. White*
No. 18-cv-01877 (E.D. Pa.)
May 8, 2018
Page 13

Explanation and Order,[11] failure to clarify the intended scope of that decision will spawn protracted litigation between funding companies and class members in some forum, including likely appeals to the United States Court of Appeals for the Third Circuit. As such, the Court should clarify that its Explanation and Order is limited only to purported assignments of rights and claims against the NFL or in the claims administration process, while making clear that Section 30.1 of the Settlement Agreement does not prohibit the sale, transfer or assignment of settlement proceeds after those rights and claims have been extinguished through payment of a monetary award.

1.      **The "No Assignment Of Claims" Provision Does Not Impact The Parties' Agreement To Arbitrate Issues Of Validity and Enforceability And So The Court Must Direct White To Proceed With The Arbitration And Deny Class Counsel's Requested Injunction.**

Class Counsel and White challenge the *validity* of the Agreement on the whole under the "No Assignment of Claims" provision, not the *formation* of the Arbitration Agreement. Only an arbitrator has jurisdiction to decide validity under the plain terms of the Arbitration Agreement and so the Court should deny Class Counsel's request for an injunction in the NFL Concussion Class Action and compel White to arbitrate in Thrivest v. White.

"Challenges to the validity of arbitration agreements upon such grounds as exist at law or in equity for the revocation of any contract can be divided into two types." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 (2006). The first type "challenges specifically the validity of the agreement to arbitrate," while the second attacks "the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." Id. In Buckeye Check Cashing, the Supreme Court addressed the second type of challenge after a customer attacked a check cashing agreement (including its arbitration provision), arguing that a "usurious finance charge" rendered the agreement invalid. See id. Noting that "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the

---

[11] If the agreements are "void, invalid and of no force and effect," then why would a funding company need to waive its rights under the agreement to effect rescission? And, if the funding company does not agree to the waiver, does that mean that the class member gets to keep his advance without any recourse whatsoever? The funding company cannot have more rights in a claims administration process for which it has not right to participate than it does outside of that process, but that is the very result urged here.



*Thrivest Specialty Funding, LLC v. William E. White*
No. 18-cv-01877 (E.D. Pa.)
May 8, 2018
Page 14

contract," the Supreme Court reaffirmed that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration cause, must go to the arbitrator." Id. at 445, 449.

So too here. The Arbitration Agreement does not even contain the word "assign," and so there is no conceivable argument that the "No Assignment of Claims" provision in the Settlement Agreement has any effect on the parties' specific decision to resolve disputes through arbitration. Accordingly, and because White's challenge to the validity and enforceability of the Agreement on the whole undoubtedly falls within the ambit of the Arbitration Agreement, the Court must compel, rather than enjoin, the Arbitration. See Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 69 (2010) ("a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate").

With reference to Granite Rock Co. v. Int'l Bhd. Of Teamsters, 561 U.S. 287, 297 (2010), and Nieto v. 2249 Corp., 2018 WL 1737220, *6 n.3 (S.D.N.Y., Mar. 22, 2018), Class Counsel asserts that "[t]his Court has already resolved the *formation issue*—it determined that the assignment agreements are void, invalid and of no force and effect, including any arbitration clauses contained therein." See Memorandum of Law at 13 (Dkt. 9924-1) (emphasis added). Class Counsel misrepresents the nature of the "formation issue" in Granite Rock and Nieto, which related not to the *validity* of an agreement, but rather to whether an agreement was ever *formed* in the first instance.

Nieto involved employees who did not speak English and who contested their signatures on the relevant employment agreements. See Nieto, 2018 WL 1737220 at *3, 5 ("the making of an arbitration agreement is a non-arbitrable issue"). Thus, there was "an issue of fact as to the *making of the agreement for arbitration*" itself, which required a trial. See id. at *4, n.3 (emphasis added) (distinguishing "formation issue" raised by plaintiffs in Nieto from challenge to validity of agreement on the whole discussed in Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 72 (2010)). Here, there is no doubt that White and Thrivest agreed to the Arbitration Agreement.

Likewise, Granite Rock Co. involved formation—not validity—of an agreement. 561 U.S. at 287 (2010). In Granite Rock, there was a labor strike after a collective bargaining agreement had expired. Id. at 293-94. Eventually, the parties agreed to end the strike and return to work under a new collective bargaining agreement that contained not only an arbitration clause and a "no strike" clause, but also an effective date as of the end of the old agreement. Id. at 305-306. There, the parties disagreed over whether there was a collective bargaining agreement—and thus an agreement to arbitrate—in place during the interim period (between the new and the old agreements) such that a claim for damages for breach of the "no strike" clause could "arise under"



*Thrivest Specialty Funding, LLC v. William E. White*
No. 18-cv-01877 (E.D. Pa.)
May 8, 2018
Page 15

an existing agreement.  <u>Ibid.</u>  In short, the Supreme Court said that the ratification dispute must be decided by the Court and not the arbitrator because it turned on whether an agreement had been formed at the time of the strike.  <u>See id.</u> at 305.  There are no complex ratification questions here—White's initials on the relevant pages and the parties' signatures at the back of the Agreement are as undisputed as they are obvious.

The Federal Arbitration Act "places arbitration agreements on equal footing with other contracts . . . and requires courts to enforce them according to their terms."  <u>Rent-A-Center</u>, 130 S. Ct. at 2776.  And, this Court has recognized that "Federal law prescribes a strong presumption to arbitrate when contracts contain arbitration provisions."  <u>See</u> <u>Renfrew Centers, Inc. v. UNI/CARE Sys. Inc.</u>, 920 F. Supp. 2d 572, 575 (E.D. Pa. 2013) (Brody, J.).  That strong presumption applies here and mandates arbitration of the parties' dispute.  The Court must compel White to arbitrate and deny Class Counsel's requested injunction; binding Supreme Court precedent does not support any other outcome.

2.     **The Class Action/MDL Waiver Prohibits Adjudication Of These Issues In The NFL Concussion Class Action, But The Court Can Nevertheless Compel Arbitration In Thrivest v. White.**

In this same way, the Court lacks jurisdiction over Class Counsel's request for an injunction in the NFL Concussion Class Action because White waived adjudication of disputes in that forum through the Class Action/MDL Waiver.

Since its decision in <u>AT&T Mobility LLC v. Concepcion</u>, the Supreme Court has vigorously defended the validity of class action waivers in arbitration agreements. 131 S. Ct. 1740, 1748 (2011) (invalidating a law conditioning enforcement of arbitration on the availability of class procedure because that law "interfere[d] with the fundamental attributes of arbitration"); <u>see also</u> <u>American Express Co. v. Italian Colors Restaurant, et al.</u>, 133 S. Ct. 2304, 2309-10 (2013) (holding antitrust laws do not invalidate class action waivers).  Indeed, this Court has acknowledged that class action waivers prevent class wide disposition of issues "arising under" contractual agreements, such as Thrivest's agreement with White.  <u>See</u> <u>Torres v. CleanNet, U.S.A., et al.</u>, 90 F. Supp. 3d 369, 381-82 (E.D. Pa. 2015) (Brody, J.) (holding that "[t]here is absolutely no contractual basis from which to conclude that the parties agreed to class arbitration.  Therefore, *the class action waiver prevents classwide arbitration, and Torres must arbitrate his claims on an individual basis.*") (emphasis added).



*Thrivest Specialty Funding, LLC v. William E. White*
No. 18-cv-01877 (E.D. Pa.)
May 8, 2018
Page 16

While the Court lacks jurisdiction to grant Class Counsel's requested injunction in the NFL Concussion Class Action, Thrivest's Complaint to Compel Arbitration in <u>Thrivest v. White</u> complies with the terms of the Class Action/MDL Waiver and the Arbitration Agreement, which permits either party to seek to compel arbitration if the other refuses.  Thus, the Court has jurisdiction under that caption to decide arbitrability and to direct White to proceed with the Arbitration.

**3.     Class Counsel's Attempt To Adjudicate Thrivest's Rights Under The Agreement In The Context Of Class Administration Violates Rule 23(d)'s Prohibition Against Substantive Relief.**

By enjoining the Arbitration, Class Counsel seeks to deprive Thrivest of any remedy under its Agreement with White—in essence, to compel a forfeiture of the $500,000 Thrivest paid to White in exchange for the TSF Distribution and a complete relinquishment of Thrivest's claim to the asset.  Thrivest is not even a party to the NFL Concussion Class Action.  Class Counsel never served Thrivest with original process.  White never filed a complaint.  Yet, purportedly in the context of the Court's power to oversee class action settlements, Class Counsel has positioned this proceeding as capable of deciding Thrivest's substantive rights to payment under the Agreement and access to the chosen forum.  Rule 23(d) does not reach that far.

Rule 23(d) authorizes district courts to impose procedural conditions on representative parties and intervenors in class actions to ensure that: (1) Class Members are receiving adequate representation; (2) the matter is being properly resolved; and (3) Class Members are protected from abusive communications during litigation.  <u>See</u> Fed. R. Civ. P. 23(d); <u>see also</u> <u>Gulf Oil Co. v. Bernard</u>, 452 U.S. 89, 102 (1981); <u>Cobell v. Kempthorne</u>, 455 F.3d 317, 323-25 (D.C. Cir. 2006).  The "rule contemplates not substantive relief of the kind [Class Counsel seeks] here, but only notice of procedural matters."  <u>See</u> <u>Cobell</u>, 455 F.3d at 324-25 (holding that Rule 23(d) "authorizes notice to protect Class Members' right to participate in the litigation[, but] it does not authorize substantive orders"); <u>see also</u> <u>In re School Asbestos Litig.</u>, 842 F.2d 671, 682 (3d Cir. 1988).[12]

---

[12] District courts should not exercise their procedural authority under Rule 23(d) "without a **specific record** showing by the moving party of the particular abuses by which it is threatened." <u>See</u> <u>Gulf Oil Co.</u>, 452 U.S. at 102 (emphasis added).  District courts must also find that the basis for relief and the relief sought are consistent with the policies of Rule 23, and represent the narrowest possible means to protect the representative parties.  <u>See</u> <u>In re School Asbestos Litig.</u>, 842 F.2d at 682.



*Thrivest Specialty Funding, LLC v. William E. White*
No. 18-cv-01877 (E.D. Pa.)
May 8, 2018
Page 17

As demonstrated above, Thrivest stands completely outside of the claims administration process. Thrivest's right to the TSF Distribution under the Agreement—indeed, the TSF Distribution itself—does not even exist until after the Claims Administrator has paid White his monetary award and extinguished his claim under the Settlement Agreement—and the Court's jurisdiction under Rule 23(d). Thrivest did not interfere with White's ability to participate in the settlement; indeed, Thrivest's advance provided White with financial stability while he waited for his distribution to come. Moreover, despite the Claims Administrator's attempt to involve Thrivest in the settlement by requesting a waiver of its rights under the Agreement in exchange for direct payment, Thrivest stayed on the sidelines while White pursued his claim to completion.

Far from a procedural order about non-party communications, Class Counsel seeks to adjudicate Thrivest's right to an asset presently valued in excess of $650,000 and to deprive Thrivest of the parties' chosen forum. In <u>Cobell</u>, the D.C. Circuit Court of Appeals recognized that communications designed to "protect trust beneficiaries from making poor decisions based on faulty information unrelated to the litigation itself" are beyond the Court's power to issue procedural relief under Rule 23(d). 455 F.3d at 323. Merits of White's decision to seek an advance aside, if the Court lacks authority even to communicate substantively with class members about decisions outside of the settlement, then surely the Court cannot adjudicate Thrivest's rights under the Agreement in the context of settlement administration.

The Court should reject Class Counsel's invitation to decide Thrivest's substantive rights under the Agreement under the guise of administering the settlement pursuant to Rule 23(d).

**4.      The Court's Authority Under The All Writs Act Does Not Permit Control Of The TSF Distribution After White Receives His Award; Moreover, The Court Lacks An Independent Source Of Jurisdiction And Its All Writs Power Does Not Overcome The Specific Mandate Of The Federal Arbitration Act.**

Class Counsel has repeatedly referenced the Court's authority under the All Writs Act as authorizing the Court to enjoin the Arbitration either to enforce the Court's Order approving the Settlement Agreement or to effectuate the reasoning in its Explanation and Order concerning "assignments." Neither, however, provides the Court with jurisdiction over Thrivest's Arbitration



*Thrivest Specialty Funding, LLC v. William E. White*
No. 18-cv-01877 (E.D. Pa.)
May 8, 2018
Page 18

against White—especially in view of the FAA's mandate with respect to the parties' agreement to arbitrate.[13]   The Court should deny the requested writ enjoining the Arbitration.

The All Writs Act is not an independent source of jurisdiction.   See United States v. Apple, 851 F.3d 238, 244 (3d Cir. 2017).   In other words, "a court has subject matter jurisdiction over an application for an All Writs Act order only when it has subject matter jurisdiction over the underlying order that the All Writs Act order is intended to effectuate." Ibid.

---

[13] Even if the All Writs Act provided authority to consider Class Counsel's request to enjoin the Arbitration, the Court should nevertheless decline to exercise that authority.   The All Writs Act allows district courts to "issue all writs *necessary or appropriate* in aid of their respective jurisdictions and agreeable to the usages and principles of law."   See 28 U.S.C. § 1651(a) (emphasis added).   A writ is "necessary or appropriate" within the meaning of the All Writs Act based on the following three factors: (1) whether the requested writ "unreasonabl[y] burdens" the writs' subject; (2) whether the requested writ is "necessary" or "essential to the fulfillment of the purpose" for which a previous order has been issued; and (3) whether the writs' subject is a "third-party so far removed from the underlying controversy that its assistance could not be permissibly compelled."   United States v. New York Tel. Co., 434 U.S. 159, 174-78 (1977) accord In re Apple, Inc., 149 F. Supp. 3d 314, 351 (E.D.N.Y. 2016).

Here, Class Counsel seeks to unreasonably burden Thrivest by depriving Thrivest of its substantive rights under the Agreement—including to arbitrate in accordance with the Arbitration Agreement and to a remedy in the event White refuses to transfer the TSF Distribution.

Moreover, the requested injunction is neither necessary, nor essential, to fulfill the purpose of the Court's prior orders.   As has been demonstrated, Thrivest stood on the sidelines during administration of White's claim under the Settlement Agreement.   That process is now over, and so there is no need to issue a writ to protect White's ability to participate in the settlement.   Similarly, a writ is neither necessary nor essential to enforce the Court's Explanation and Order to the extent that it sought to invalidate any purported assignment of rights or claims against the NFL or in the claims administration process.   Through the Arbitration, Thrivest seeks only to enforce its rights in the TSF Distribution now that White has received it and his monetary claim against the NFL and under the Settlement Agreement has been extinguished.

Indeed, the All Writs Act does not authorize Class Counsel to bring what is in essence a new class action against Thrivest, a non-party, under the guise of enforcing its prior orders.   Thrivest's claim to the TSF Distribution exists wholly outside of the Court's administration of the settlement, which ends when the Claims Administrator pays White's monetary award and extinguishes White's rights and claims under the Settlement Agreement.



*Thrivest Specialty Funding, LLC v. William E. White*
No. 18-cv-01877 (E.D. Pa.)
May 8, 2018
Page 19

Contrary to Class Counsel's assertion that the Settlement Agreement vests the Court in the NFL Concussion Litigation with jurisdiction over Thrivest, Section 27.1 of the Settlement Agreement logically limits the Court's continuing jurisdiction to "the Parties and their counsel, all Settlement Class Members, the Special Master, BAP Administrator, Claims Administrator, Liens Resolution Administrator, Appeals Advisory Panel, Appeals Advisory Panel Consultants and Trustee with respect to the terms of the Settlement Agreement." See Settlement Agreement at Section 27.1. Thus, neither the Settlement Agreement, nor the Court's Order approving it, give the Court jurisdiction over Thrivest—which was neither a party to the NFL Concussion Litigation, nor a party to the Settlement Agreement.

Moreover, while the Court has jurisdiction over the claims administration process including the settlement fund, that jurisdiction ended in White's case when the Claims Administrator paid White his monetary award and extinguished White's claims under the Settlement Agreement. Class Counsel's proffered interpretation of the All Writs Act would give the Court power over the proceeds of the settlement in perpetuity and call into question whether White's monetary claims were ever extinguished—jeopardizing the release at the heart of the class action settlement. Through the Arbitration, Thrivest seeks only to pursue rights in an asset (the TSF Distribution) that did not exist until after the Court relinquished jurisdiction over White's award. Thus, there is no basis for jurisdiction under the All Writs Act to enjoin the Arbitration.

Of importance in view of the interplay with the FAA, "[t]he All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. ***Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling.***" Pennsylvania Bureau of Correction v. United States Marshals Service, 474 U.S. 34, 43 (1985) (emphasis added); see also Carlisle v. United States, 517 U.S. 416, 429 (1996). Here, the FAA specifically addresses the particular issue at hand—whether to enjoin or compel arbitration. Accordingly, Supreme Court precedent prevents the Court from using the All Writs Act to circumvent the FAA—which, as set forth above, mandates arbitration here. See Pennsylvania Bureau of Correction, 474 U.S. at 43 (holding that the All Writs Act "does not authorize [courts] to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate.").

Class Counsel's reliance on the unreported opinion in In re Visa Check/Mastermoney Antitrust Litig., is misplaced. No. 96-cv-5238, 2006 WL 1025588, at *1 (E.D.N.Y. Mar. 31, 2006). In Visa Check, Spectrum Settlement Recovery LLC ("Spectrum Settlement Recovery") "act[ed] as an administrator of a merchant's claim to participate in the settlement," but used "fraudulent and



*Thrivest Specialty Funding, LLC v. William E. White*
No. 18-cv-01877 (E.D. Pa.)
May 8, 2018
Page 20

misleading solicitations to entice class members to execute agency contracts." Id. at *2 (emphasis added). Approximately 4,800 class members entered into "claims filing and fund recovery" contracts with Spectrum Settlement Recovery. Ibid. Once retained, Spectrum Settlement Recovery attempted to delay payments to class members so that it could sign additional contracts and earn additional fees. Id. at *3. Based on these findings and Spectrum Settlement Recovery's active disruption of settlement administration, the Court declared the contracts "voidable" at the election of the class member using its power under the All Writs Act. See id. at *8.

Unlike Spectrum Settlement Recovery, Thrivest did not purport to act as White's agent or participate in the claims administration process in any way. On the contrary, Thrivest stayed on the sidelines awaiting White's receipt of an award from the Claims Administrator, which extinguished White's claim under the Settlement Agreement and triggered White's obligation to transfer the TSF Distribution for the first time. Indeed, while Spectrum Settlement Recovery caused class-wide disruption, Thrivest actively sought to avoid interference with the claims administration process, pursuing relief through the Arbitration only after White had refused to honor his obligation to transfer the TSF Distribution on receipt.[14] These distinctions are important because the Court's authority under the All Writs Act to enforce the settlement does not permit the Court to reach beyond final payment of White's claim by the Claims Administrator to enjoin an arbitration merely because it involves settlement proceeds. That logic would give the Court the power to control how White spends his award in perpetuity, which is clearly beyond the Court's jurisdiction.

Moreover, the Visa Check Court did not analyze arbitrability or a class action/MDL waiver. And, unlike Thrivest which paid White $500,000 in December 2016 for the TSF Distribution, Spectrum Settlement Recovery had yet to substantially perform under its claims filing and fund recovery agreements. Even under the egregious circumstances present there, the Court did not void the agreements altogether (as Class Counsel urges here), instead declaring them "voidable" at the class member's election—and, then, only after the class member stated under penalty of perjury

---

[14] Thrivest commenced the Arbitration only after White issued an ultimatum—accept rescission and return of principal only or face the prospect of recovering nothing for its $500,000 consideration. Pursuant to the terms of the Arbitration Agreement, Thrivest had no other forum in which it could pursue relief.



*Thrivest Specialty Funding, LLC v. William E. White*
No. 18-cv-01877 (E.D. Pa.)
May 8, 2018
Page 21

that it had relied on Spectrum's false and misleading statements when entering the agreement. See id. at *7.

The Arbitration will decide the parties' rights in the TSF Distribution, an asset that is, by definition, outside of the reach of the Court's authority in the NFL Concussion Class Action. The Court should reject Class Counsel's request to enjoin the Arbitration under the All Writs Act because it lacks jurisdiction and, moreover, because the injunction is inconsistent with the specific mandates of the FAA.

## CONCLUSION

In the history of federal jurisprudence, ***"there are very few reported cases in which a federal court has enjoined arbitration."*** In re Piper Funds, Inc., Institutional Gov't. Income Portfolio Litig., 71 F.3d 298, 302-03 (8th Cir. 1995) (emphasis added) (lifting an injunction barring arbitration and reversing the district court because it held that the possibility of receiving an adverse ruling from an arbitrator that might "jeopardize the carefully negotiated class action settlement [is] . . . an insufficient basis upon which to limit a [claimant]'s rights under the FAA.").[15]

In accordance with Supreme Court precedent under the FAA, Thrivest respectfully requests that the Court deny Class Counsel's request for an injunction in the NFL Concussion Class Action and grant Thrivest's complaint to compel arbitration in Thrivest v. White.

Respectfully submitted,

Peter C. Buckley

---

[15] Here, there not even a concern that the Arbitration will impact the settlement in the NFL Concussion Class Action. Indeed, the issue in the Arbitration—ownership of the TSF Distribution—by definition, exists wholly outside of that settlement because White did not possess the TSF Distribution until after his claims in the settlement had been satisfied and extinguished.



*Thrivest Specialty Funding, LLC v. William E. White*
No. 18-cv-01877 (E.D. Pa.)
May 8, 2018
Page 22

Enclosure (Genovesi Declaration with Exhibits)

cc:    Chambers (via fax without enclosure)
       All Counsel of Record (via ECF with enclosure)
       Christopher Seeger, Esquire (also via e-mail without enclosure)
       TerriAnne Benedetto, Esquire (also via e-mail without enclosure)
       Robert Wood, Esquire (also via e-mail without enclosure)