# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**CO-LEAD CLASS COUNSEL'S MEMORANDUM IN SUPPORT OF MOTION FOR AN ORDER (1) SANCTIONING THE CAMBRIDGE ENTITIES FOR FAILURE TO COMPLY WITH THE COURT'S FEBRUARY 20, 2018 ORDER [ECF NO. 9750], WHICH DIRECTED THEM TO PRODUCE ACCOUNTINGS FOR CLASS MEMBERS' RETIREMENT FUNDS INVESTED WITH CAMBRIDGE; (2) ORDERING CAMBRIDGE TO IMMEDIATELY RETURN THE RETIRTMENT MONIES AND EARNINGS THEREON TO CLASS MEMBERS AND TO PRODUCE THE ACCOUNTINGS; (3) APPOINTING AN ACCOUNTANT, WHOSE FEES SHALL BE BORNE BY CAMBRIDGE, TO REVIEW THE ACCOUNTINGS AND REPORT TO THE COURT AS TO THEIR ACCURACY; (4) COMPELLING CAMBRIDGE TO DISCLOSE ACCOUNTINGS AND ALL DOCUMENTS RELATED TO NON-QUALIFIED FUNDS OF CLASS MEMBERS INVESTED WITH CAMBRIDGE; (5) COMPELLING CERTAIN CURRENT AND FORMER OFFICERS OF CAMBRIDGE TO SUBMIT TO DEPOSITIONS; AND (6) SETTING A FURTHER HEARING TO DETERMINE <u>WHETHER OTHER RELIEF IS APPROPRIATE</u>**

## I.    **INTRODUCTION**

Co-Lead Class Counsel ("Class Counsel") appeared before this Court at a hearing held on April 2, 2018, *see* ECF Nos. 9844, 9850, 9909, and presented the evidence submitted in the Motion to Prohibit filed on January 26, 2018,[1] to prevent the Cambridge Entities[2] from engaging in self-help and violating the Court's December 8, 2017 Explanation and Order [ECF No. 9517].

Also presented at the April 2, 2018 hearing was additional information that Class Counsel had received or uncovered, reviewed, and found to be significant after the filing of the Motion to Prohibit, including certain documents and information produced by the Cambridge Entities in accordance with the Court's February 20, 2018 Order [ECF No. 9750].[3]  Since the April 2, 2018 Hearing, additional documents have come into Class Counsel's possession – some being documents provided by Class Members and others produced in response to a subpoena served on third party, Millennium Trust Company – that this Court may find helpful in ruling upon Class

---

[1]    "Motion to Prohibit" is used herein as shorthand for the motion filed on January 26, 2018 and entitled Co-Lead Class Counsel's Motion for an Order (1) Prohibiting the Cambridge Entities from Seeking Repayment of Advances to Class Members related to Assignment Agreements through means other than Those Identified in the Court's December 8, 2017 Explanation and Order [ECF No. 9517], and from Spreading Misinformation concerning the Explanation and Order; (2) Requiring Corrective Disclosures; (3) Compelling Production by the Cambridge Entities of All Documents relating to Class Members' Retirement Funds Being Held by Them and Accountings as to Such Funds; and (4) Directing the Cambridge Entities to Return to Class Members Their Retirement Funds Held as Collateral related to Assignment Agreements, along with Earnings and Interest Thereon [ECF No. 9578].

[2]    The "Cambridge Entities" or "Cambridge" include the following: Cambridge Capital Group, LLC; Cambridge Capital Advisors LLC; Cambridge Capital Partners, LP; Cambridge Capital Group Equity Option Opportunities, LP; Cambridge Capital Holdings; Cambridge Capital Funding, Inc.; Your Case, LLC; and their present and former directors, officers, partners, employees, contractors, agents, consultants, affiliates, successors and assigns, including, but not limited to Addys Walker, Gail Milon, and Phillip T. ("Tim") Howard.

[3]    The PowerPoint presentation shown to the Court and the transcript of the April 2, 2018 hearing are attached to the Declaration of Christopher A. Seeger in support of Motion for Sanctions, dated May 7, 2018 ("Seeger Decl."), as Exhibits 1 and 2 ("Exs. 1 & 2"), respectively.

Counsel's prior Motion to Prohibit and the instant motion related to the Cambridge Entities.  Class Counsel files this follow-up motion, a Motion for Sanctions,[4] consistent with the Court's direction at the April 2, 2018 hearing,[5] in order to place all of the relevant evidence formally on the record and to request that the Court order specific further relief.

In short, despite the receipt of additional documents and information, Class Counsel and the affected Class Members remain in the dark as to present custodian of the Class Members' IRA rollover monies – Millennium Trust Company or the Cambridge Entities – and how much is in each Class Member's account.  The Cambridge Entities have yet to produce the accountings of the retirement monies that this Court ordered them to produce over two months ago, on February 20, 2018 [ECF No. 9750].  They and those individuals who control the Cambridge Entities should not be permitted to continue to ignore or to flout the Court's Orders and to stall the production of the accountings and the return of Class Members' retirement monies and income earned thereon. Class Counsel seeks sanctions against the Cambridge Entities and, should the stall tactics continue, discovery in order to determine whether sanctions against certain individuals, including attorney Phillip Timothy ("Tim") Howard, are also appropriate.  Class Counsel hopes that the imposition of sanctions, and the possibility that further sanctions will be imposed, will persuade those

---

[4]     The full title of the instant Motion is the Motion for an Order (1) Sanctioning Cambridge Entities for Failure to Comply with the Court's February 20, 2018 Order [ECF No. 9750], which Directed Them to Produce Accountings for Class Members' Retirement Funds Invested with Cambridge; (2) Ordering Cambridge to Immediately Return the Retirement Monies and Earnings Thereon and to Produce the Accountings; (3) Appointing an Accountant, Whose Fees Shall Be Borne by Cambridge, to Review the Accountings and Report to the Court as to Their Accuracy (4) Compelling Cambridge to Disclose Accountings and All Documents Related to Non-Qualified Funds of Class Members Invested with Cambridge; (5) Compelling Certain Current and Former Officers of Cambridge to Submit to Depositions; and (6) Setting a Further Hearing to Determine whether Other Relief Is Appropriate ("Motion for Sanctions").

[5]     *See* Seeger Decl., Ex. 2, at 36 ("write all those things to me and ask … for what the remedy is").

controlling the retirement monies to return them, in full, including the income earned, to Class Members without further delay.

II.      **FACTS**

      A.      **Cambridge's Threat of Self-Help Following the Court's Issuance of Its Explanation and Order of December 8, 2017, Holding That the Assignment Agreements Between Class Members and Third Party Funders Were "Void, Invalid and of No Force and Effect"**

As detailed in the Motion to Prohibit [ECF No. 9578], a Class Member reported to Class Counsel that during a December 21, 2017 telephone call, a principal of the Cambridge Entities, Addys Walker, had threatened to engage in self-help in direct contravention of the Court's December 8, 2017 Order.[6]  Specifically, the Class Member had entered into two arrangements with Cambridge – (1) an assignment agreement under which he received a cash advance in exchange for selling a much higher amount of his future monetary award to Cambridge; and (2) an "investment" arrangement under which he cashed out his 401(k) with the NFL, specifically, the NFL Player Second Career Savings Plan, and rolled those monies over as IRA-rollover funds and "invested" the monies with Cambridge.  During the telephone conversation, Mr. Walker told the Class Member that because this Court had ruled that the assignment agreements were void, Cambridge was simply going to take a portion of the Class Member's 401(k) monies that he had "invested" with Cambridge as repayment for the monies advanced.  *See* ECF No. 9578-1 (Memo. in Support of Motion to Prohibit), at 5-7[7] and ECF No. 9578-2 (Transcript of 12/21/2017 telephone conversation between Class Member, Mr. Walker and Ms. Milon), at 6-42.

---

[6]      The Court permitted Cambridge principal, Gail Milon, who was also on the call between the Class Member and Mr. Walker, to listen to the April 2, 2018 hearing by phone.  Ms. Milon also has been Class Counsel's contact regarding Cambridge's alleged efforts to comply with the Court's February 20, 2018 Order directing Cambridge to produce accountings.

[7]      Page numbers referenced are to the ECF-assigned page numbers.

As a result of receiving this information, as well as reports from distressed Class Members who, as of January 2018, had been unable to obtain their retirement money back or even their account balances from Cambridge, despite repeated requests, Class Counsel filed the Motion to Prohibit. The account balances remain a mystery and the funds have not been returned to Class Members.

**B.** **The Number of Class Members Affected and the Amounts of Retirement and Other Monies Invested**

Tim Howard, former President of Cambridge, previously represented 234 Class Members and currently represents 110 Class Members[8] in this litigation.[9] Of the original 234 Class Members he represented, 88 had entered into assignment agreements – 26 with the Cambridge Entities and the remaining with Global Financial and Beacon Legal. *See* Seeger Decl. at ¶ 4.

In total, there were 32 Class Members with assignment agreements with the Cambridge Entities. In addition to the 26 Class Members who had individually retained Howard & Associates, the others who entered into assignment agreements with the Cambridge Entities had individually retained Gibbs & Parnell (one of the four firms referring to themselves as Neurocognitive Football Lawyers), Simona Farrise, and Weisberg & Associates.[10] *Id.* at ¶ 5.

---

[8]    According to information available on the Claims Portal, since the April 2, 2018 hearing, 124 Class Members discharged Mr. Howard as their individually-retained counsel. *See* Seeger Decl. at ¶ 4.

[9]    It is noteworthy that Mr. Howard has not completed the submission of a claim for even one of his clients. *See* Seeger Decl. at ¶ 4.

[10]    Based upon our review of Claims Administrator data, *see* Seeger Decl. at ¶ 7, it appears that most of the Class Members previously represented by Weisberg & Associates are now represented by Shenaq, PC, "a leading boutique law firm focused **exclusively** on representing retired NFL football players and their representatives in connection with their claims under the NFL Concussion Settlement." *See* http://shenaqpc.com/ (last accessed on May 7, 2018; emphasis in original).

Ten Class Members who have assignment agreements with the Cambridge Entities, including the Class Member involved in the telephone call with Addys Walker, also "invested" IRA rollover monies with Cambridge.  *See* letter, dated March 27, 2018, from Ms. Milon to the Court and Class Counsel, at Seeger Decl., Ex. 3 (Class Members' names have been redacted).  Six of those ten Class Members with retirement monies invested with Cambridge, who were formerly represented by Mr. Howard, are now represented by Shenaq, P.C.  *See supra* n. 10 and Seeger Decl. at ¶ 7.  Mr. Shenaq presently represents 216 Class Members.  Prior to March 2018, the Claims Administrator did not have record of his representing any Class Members.  *See* Seeger Decl. at ¶ 7.  Mr. Shenaq is also Partner and Co-Founder of Park Laureate Partners, which "specializes in assisting law firms in obtaining working capital and case specific financing for individual cases and mass tort dockets."  *See* http://www. parklaureatepartners.com/professionals/ (last accessed on May 7, 2018).  Class Counsel do not know whether there is any financial arrangement between Mr. Howard and Mr. Shenaq.

According to Cambridge, the total amount of retirement monies originally invested with it by Class Members is $3,123,743.36.  When the additional $471,940 in non-qualified funds are included,[11] the total amount of money originally "invested" with Cambridge by Class Members is at least $3,595,683.36.  Seeger Decl., Ex. 3; *see also* ECF No. 9778-1 (under seal).  The income earned on the investments remains unknown.  *See infra* Sections II.F and II.G.

---

[11]    Class Counsel does not know how many other Class Members, in addition to those five who invested retirement monies with Cambridge, invested non-retirement monies (i.e., non-qualified funds) with Cambridge.  *See* Seeger Decl. at ¶ 11; *id.*, Ex. 3 (March 27, 2018 Milon letter referencing existence of other Class Members with non-qualified funds invested with Cambridge).  As such, part of the relief that Class counsel seeks through this motion is an order requiring Cambridge to disclose that information.

C.   **Tim Howard, in His Capacity as Both a Lawyer and Financial Advisor, Actively Encouraged His Clients to Enter into High-Risk Investment Arrangements Using Their Retirement Monies and Assignment Arrangements with Cambridge**

In an email from Cambridge, which was signed by Tim Howard, J.D., Ph.D., Don Warner Reinhard,[12] and others, dated December 18, 2016, Mr. Reinhard told Class Members the following:

> As we discussed, *Dr. Howard and I* and our team continue to develop Cambridge Capital Group to provide an unmatched model of services which includes *investment management*, wealth planning, estate planning, wills, trust creation, life insurance, supplemental health insurance, *and loans* to meet the unique needs of retired professional athletes.  Additionally, *ancillary legal services* for little or no additional costs via our direct association with *Howard & Associates PA* makes our creative model unmatched in the marketplace.

ECF No. 8371-13 (emphasis added); *see also* ECF No. 8371-14 (Dec. 23, 2016 email from Messrs. Howard and Reinhard and others regarding investment management and ancillary legal services, as well as tax services through a CPA working "with our team who has a tremendous amount of expertise in the inner workings of the IRS."); *see infra* Section II.H (concerning Cambridge's mishandling of one Class Member's attempted IRA rollover).

On February 27, 2017, Mr. Howard sent an email, as President of Cambridge Capital Group, "formally introduc[ing] Gail Milon as the Managing Vice President of Cambridge Capital Group."  ECF No. 8371-26, at 3.  In an email response to a Class Member who had entered into an assignment arrangement with Cambridge, Mr. Howard, from his Howard & Associates/Howard

---

[12]    Mr. Reinhard was previously sanctioned by the Securities and Exchange Commission.  *In re Don Warner Reinhard*, Admin. Proceeding File No. 3-13280, S.E.C. Release No. 3139, 100 S.E.C. Docket 731, 2011 WL 121451 (Jan. 14, 2011); *Commission Bars Don Warner Reinhard from Association with Any Broker, Dealer, or Investment Adviser*, SEC News Digest 2011-10-6, 2011 WL 121486 (Jan. 14, 2011).  *See* Seeger Decl., Ex. 4; *see also SEC v. Reinhard*, No. 09-10213, 352 F. App'x 309, 2009 WL 3448849 (11th Cir. Oct. 28, 2009).  Mr. Reinhard is presently incarcerated for Aggravated Child Abuse.  *See* ECF No. 9578-2, at 55-60.

Justice email account, advised the client about his monthly advance monies, specifically that "his account has been reviewed and is clear.  Your wire will go out this afternoon."  *Id*. at 2-3.

In a June 23, 2017 email from Howard & Associates to "all retired NFL Players," including both Howard & Associates' clients and others, Class Members were advised that, "if you do qualify for the NFL Concussion Settlement *we can refer you to independent cash advance programs* that may offer immediate cash based upon your proposed settlement."  ECF No. 8371-11 (emphasis added).

Both as a lawyer representing Class Members and as President of Cambridge, Mr. Howard actively encouraged (1) the assignments so that Class Members could receive cash advances and (2) so-called investment opportunities with Cambridge.  He encouraged the investment of Class Members' retirement monies, despite the possibility that the Class Members might be suffering from dementia, and despite the level of financial risk involved, as stated in the Private Offering Memorandum:

> THE INVESTMENT APPROACH AND TRADING TECHNIQUES USED BY THE FUND INVOLVE A HIGHER DEGREE OF RISK THAN THAT ASSOCIATED WITH LESS AGGRESSIVE INVESTMENT ALTERNATIVES. AN INVESTMENT IN THE FUND IS THEREFORE NOT AN APPROPRIATE INVESTMENT FOR ANYONE UNABLE TO BEAR SUBSTANTIAL RISK OR REQUIRING LIQUIDITY AND SHOULD NOT BE VIEWED AS A COMPLETE DIVERSIFIED INVESTMENT PROGRAM.
> * * *
> INVESTMENT OBJECTIVE AND APPROACH – The objective of the Fund will be to generate capital gains and interest income primarily from investment and trading in mortgage backed securities ("MBS") and derivatives, asset backed securities ("ABS") and derivatives, US and International private and public debt securities ("USI") and derivatives, and litigation settlement claims ("LS").
> * * *
> THE OFFERING – The Fund is currently offering limited partnership interests with a current minimum investment by each subscriber of $100,000 ….
>
> RISKS AND SUITABILITY – Purchase of a limited partnership interest in the Fund should be deemed to be an aggressive growth investment and is not intended as a complete investment program. *An investment in the fund is designed only for*

> *investors who have adequate means of providing for their needs and contingencies*
> *without relying on distributions or withdraws from their Fund accounts, who are*
> *financially able to maintain their investment and who can afford the loss of their*
> *investment.  There can be no assurances that the Fund will achieve its investment*
> *objectives.  See "Certain Risks".*  <u>Investment in the Fund is available exclusively</u>
> <u>to sophisticated persons and entities that have a net worth in excess of $2,000,000,</u>
> <u>qualify as "accredited investors,"</u> ….

*See* Seeger Decl. Ex. 5 (Cambridge Capital Partners L.P. Private Offering Memorandum for

Offering of Limited Partnership Interests) (italics in original; underlined emphasis added).  These

targeted Class Members neither were in the stated financial positions nor had the sophistication in

financial matters to be suitable for this high-risk investment, particularly when they were to be

using funds rolled over from their 401(k) accounts.  *See* Seeger Decl. at ¶ 14.

      As noted above, the Class Members represented by Mr. Howard who "invested" their

retirement monies with Cambridge also had entered into assignment agreements with Cambridge.

For a lawyer to encourage a client possibly suffering from dementia, who was so desperate for

immediate cash that he would enter into a high interest rate assignment arrangement in order to

obtain immediate cash advances, to also enter into such a risky investment using his *retirement*

*monies*, is simply beyond the pale, particularly where the lawyer was affiliated with the investment

firm.

      **D.**    <u>**Tim Howard Undertook Efforts to Appear as Though He Had Divested**</u>
          <u>**Himself from All Involvement or Interest in Cambridge**</u>

      Of course, once Class Counsel became aware of the assignment agreements and began

conducting discovery in accordance with the Court's July 19, 2017 Notice & Order [ECF No.

8037], both Howard & Associates and Cambridge attempted to rewrite history and claim that they

never endorsed the assignment agreements.  *See* ECF No. 8371-4 (Aug. 1, 2017 email from Ms.

Milon, stating that "CCG's fiduciary duty is to insure maximum returns on investments and

maximum recoveries for your financial security.  Going forward, as you have been previously

informed via email or in private conversations, for most of you, the current amounts of the monthly advance contracts are not suitable or prudent to your financial future.")[13]; ECF No. 8371-5, at 4 (Aug. 8, 2017 email from Mr. Howard, on Howard & Associates' letterhead:  "The law firm is providing notice that the NFL Concussion Settlement process has begun and payments will begin over the next few months.  As previously recommended, advances on your claims are not advised as they are very expensive.").[14]

Both Mr. Howard and (former) counsel for the Cambridge Entities, Martin L. Black,[15] have asserted that Cambridge Capital Group, LLC and Cambridge Capital Advisors LLC were dissolved.  *See* State of Florida, Dep't of State certificates of dissolution, attached to Mr. Black's letter, dated Aug. 24, 2017, to Class Counsel; and Mr. Howard's Notice of Filing Verification of Non-Ownership, dated Sept. 15, 2017, respectively, at ECF No. 8371-10 [at 1-4] and ECF No. 8379.  According to Gail Milon, "[u]pdated ethics research and communications with the Florida Bar required that Dr. Tim Howard not have any ownership, management, interest or control, and he has complied with same."  *See* letter dated Mar. 29, 2018 from Ms. Milon to the Court and

---

[13]     At this point, in August 2017, Cambridge still listed on its email signature line the four Howard & Associates law office addresses, in Tallahassee, Jacksonville and Fort Lauderdale, Florida and Cambridge, Massachusetts, as its addresses.  Mr. Howard now represents his law firm address in Tallahassee as 3522 Thomasville Road, Suite 500, instead of the former 2120 Killarney Way.  *See* Seeger Decl., Ex. 28.  Similarly, as per Ms. Milon's letters, *see* Seeger Decl. Exs. 3 & 6, Cambridge also moved from 2120 Killarney to the same building as Mr. Howard's law firm, 3522 Thomasville Road, but, at Suite 505.

[14]     Unlike most of the other Third-Party Funders that entered into assignment agreements with Class Members, the Cambridge Entities structured the assignments to pay the Class Members in monthly advances, rather than advancing one lump sum.

[15]     As previously noted in the Motion to Prohibit, Mr. Black has since attempted to withdraw as counsel for the Cambridge Entities, without formally requesting and obtaining leave of Court and/or finding substitute counsel.  *See* ECF Nos. 9778-5 to 9778-7.  He failed to appear at the April 2, 2018 hearing.  *See* Seeger Decl., Ex. 6 (Mar. 29, 2018 Milon letter noting that she did not agree to allow Mr. Black to withdraw as counsel for Cambridge).

Class Counsel, attached to Seeger Decl. as Ex. 6.  Mr. Black represented that Cambridge Capital Group LLC "was dissolved pursuant to a confidential sale and dissolution agreement entered into early this year.  The company was sold to Mr. Addys Walker[.]"  ECF No. 8371-10.

As noted above, Ms. Milon maintained that Mr. Howard has no *interest*, as well as no ownership, management or control in Cambridge.  In September 2017, however, Mr. Howard had admitted to being "one of approximately 20 investors into Cambridge Capital companies." ECF No. 8379, at 7, ¶ 5.  In all likelihood, the twenty investors in the Cambridge Capital companies that Mr. Howard references would seemingly also include the ten Class Members with retirement monies invested with Cambridge whose funds are the subject of this Motion and the prior Motion to Prohibit, and who Mr. Howard individually represented.

**E.**     **Changes to Officers of Cambridge Entities, Creation of New Cambridge Entities and Tim Howard's Continuing Involvement Through His Mother-In-Law, Lois Koons, as Well as Through Gail Milon and Addys Walker**

Prior to the August 2017 dissolution of the Florida Cambridge Entities, in March 2017, and the alleged sale of Cambridge to Mr. Walker, Mr. Howard filed Articles of Amendment for Cambridge Capital Group LLC and Cambridge Capital Advisors, LLC, which he signed.  The changes included the removal of Phillip T. Howard as President and the addition of Lois Koons as the new President for both entities.  Ms. Koons is Mr. Howard's 83-year old mother-in-law.  *See* Seeger Decl., Exs. 7 & 8.

Additionally, Gail Milon was added as the Vice President and Authorized Member for Cambridge Capital Group LLC and Cambridge Capital Advisors, LLC.  Ms. Milon was also substituted for Mr. Howard as the Registered Agent for each company.  Finally, the principal office address was changed from 2120 Killarney Way in Tallahassee, which was also the address for Mr.

Howard's law firm, Howard & Associates, to a new principal office in Tallahassee, 1400 Village Square Boulevard, Suite 3-268.  *See* Seeger Decl., Exs. 7 and 8.

Another of Mr. Howard's companies, Your Case, LLC, had the same address as the new address for Cambridge Capital Group LLC and Cambridge Capital Advisors, LLC, namely, 1400 Village Square Boulevard, Suite 3-268, in Tallahassee.  Mr. Howard was listed as the Registered Agent and Addys Walker was listed as the President.  *See* Seeger Decl., Ex. 9.  Class Counsel included Your Case, LLC in the definition of the "Cambridge Entities" in the January 26, 2018 filing of the Motion to Prohibit.  *See* ECF No. 9578, at 2 n. 1.  It is likely not fortuitous that Your Case, LLC, which had been created in February 2017, was voluntarily dissolved on February 22, 2018, shortly after the Motion to Prohibit was filed and two days after the Court's February 20, 2018 Order directing Cambridge to produce documents and accountings related to the Class Members' retirement funds invested with Cambridge.

Meanwhile, new Cambridge Entities were being created in Nevada, all at the same Davonte Ranch Parkway address in Reno, and many involving Mr. Howard's mother-in-law, Ms. Koons, Ms. Milon, Mr. Walker, Mr. Howard, and another Cambridge corporate entity, as follows:

| **Company Name** | **Officers** | **Date of Creation** | **Address** |
|---|---|---|---|
| Cambridge Capital Group, LLC | - Lois Koons<br>- Gail Milon | 4/10/2017 | 59 Davonte Ranch Parkway Suite B#245<br>Reno, Nevada |
| Cambridge Capital Wealth Advisors, LLC | - Gail Milon | 5/2/2017 | 59 Damonte Ranch Parkway Suite B, 245<br>Reno, Nevada |
| Cambridge Capital Group Advisors, LLC | - Lois Koons<br>- Gail Milon<br>- Addys Walker<br>- Jeff Kahn | 6/28/2017 | 59 Damonte Ranch Parkway Suite B<br>Reno, Nevada |

| A&T Development, LLC | - Cambridge Development Partners LLC<br>- Tim Howard<br>- Addys Walker<br>- TTSM, Inc | 10/19/2017 | 59 Davonte Ranch Parkway Suite B-245 Reno, Nevada |
|---|---|---|---|
| Chronicles, LLC | - Tim Howard<br>- Tom Parnell | 10/25/2017 | 59 Davonte Ranch Parkway Suite B-245 Reno, Nevada |

Seeger Decl., Exs. 10 - 14.[16]

Thus, although Mr. Howard allegedly divested himself of any interest or involvement with Cambridge, the addition of his mother-in-law, Lois Koons, as an officer in numerous existing Cambridge Entities coincided with his alleged divestiture and her inclusion as an officer in Cambridge Entities newly created in Nevada followed that alleged divestiture. Additionally, Ms. Milon and Mr. Walker continued to serve as officers along with Ms. Koons.

In October 2017, Mr. Howard was involved as an officer in the creation of a new entity, namely, A&T Development, LLC, with Mr. Walker and another Cambridge Entity also serving as officers. Seeger Decl., Ex. 13. It is reasonable to assume that the "A" and "T" refer to "Addys" and "Tim." This entity was created and included a Cambridge Entity as an officer after Mr. Howard represented to this Court that he had divested himself of the Cambridge Entities, they had been sold to Mr. Walker, and that Mr. Howard had no control over them. The creation of this new company in partnership with Mr. Walker and another Cambridge Entity appears to belie that representation.

Also in October 2017, Mr. Howard was involved as an officer in the creation of another new company, Chronicles, LLC, at 59 Damonte Ranch Parkway, Suite B-245. Seeger Decl., Ex.

---

[16]     There are also several Cambridge Entities with Massachusetts residency. Seeger Decl., Exs. 15 - 18.

14.  The other officer of that company is Tom Parnell.  One of the law firms that signed off on its clients' assignment agreements with Cambridge was Gibbs & Parnell.  Gibbs & Parnell is one of the law firms going by the moniker of Neurocognitive Football Lawyers, which represents 188 Class Members.  Thomas Parnell is a principal of Gibbs & Parnell.  *See* Seeger Decl. at ¶¶ 5-6. Although Class Counsel does not know for certain whether the Tom Parnell who is an officer of Chronicles, LLC is the same as Thomas Parnell of Gibbs & Parnell, it is likely that they are the same person.  Assuming, as it appears, that such is the case, Mr. Howard was likely also teaming up in business ventures with other lawyers who represent Class Members having entered into assignments with Cambridge.

  **F.**  **Cambridge's Continued Failure to Comply with the Court's February 20, 2018 Order Directing It to Produce Accountings of Class Members' Investments**

  Cambridge produced what it contended initially were "[u]naudited accounting documents of all funds (not just retirement funds) provided to Cambridge Entities by each Class Member," on March 1, 2018.  *See* Status Report, dated Mar. 15, 2018, and Exhibit A thereto, which was submitted to the Court under seal [ECF No. 9778, 9778-1, 9778-2].  Class Counsel responded to Ms. Milon on March 7, 2018 and advised her that the documents that Cambridge produced were not accountings of the current values on the accounts, but merely recitations of the original amounts withdrawn from the 401(k) accounts, NFL Players Second Career Savings Plan,[17] and transferred for investment with Cambridge.  *See* ECF No. 9778-3.  Ms. Milon stated that she would produce the account information by March 26, 2018.  *See* ECF No. 9778-4.  On March 27, 2018,

---

[17]  *See* Seeger Decl., Exs. 19 and 20 (copies of checks drawn on the NFL Players Second Career Savings Plan for Player Nos. 5 and 10 in the amounts of $619,111.98 and $316,059.98, respectively, payable to Millennium Trust Company FBO [For the Benefit of] Player Nos. 5 and 10, and list address as Suite 125, 2120 Killarney Way, Tallahassee, Florida – the former Tallahassee address of Howard & Associates).

again, Ms. Milon produced only a list of the Class Members and the amounts Cambridge received

from them – not the current account balances.  In her letter to Class Counsel, dated March 27,

2018, and in her letter to the Court and Class Counsel, dated March 29, 2018, Ms. Milon

represented that the investments were "not liquid," that "expedit[ing] liquidation would harm the

class members investments" and that it will take "8 weeks" to finalize the audit, which will

determine each individual account balance.  *See* Seeger Decl., Exs. 3 & 6.

Class Counsel has no specific information as to where the funds are invested or the types

of investments, despite having inquired of Cambridge, and despite having received documents

from Millennium.  Cambridge has not explained why expediting liquidation would harm the Class

Members' investments.  Class Counsel, however, suspects that the Class Members' retirement

monies may have been used to pay cash advances to Class Members with assignment arrangements

with Cambridge.

Because the Court determined that the assignment agreements are void, the Third-Party

Funders, like Cambridge, will not be enjoying the fruits of the exorbitant interest rates associated

with the assignments that they had expected.  Cambridge may be in the position where it no longer

has the Class Members' retirement monies (because it used the monies for cash advances) and it

now will not be receiving portions of the Class Members' monetary awards under its assignment

agreements.  As such, Cambridge can no longer expect to use the proceeds from assignments to

replace the funds taken from the Class Members' invested retirement accounts and also to pay the

promised income on those invested retirement monies.  This is speculation, however, until

Cambridge actually complies with the Court's February 20 Order.

Because Class Counsel is now skeptical that any accountings ultimately produced by

Cambridge will be accurate, it is suggested that the Court should appoint an accountant to review

the accountings, when produced, and report to the Court as to their accuracy.  It is further suggested that the costs should be borne by Cambridge.

Additionally, if the above-suggested scenario is, in fact, the case, and Cambridge does not have the funds to repay the Class Members, Class Counsel would seek to pierce the corporate veil and hold Cambridge's current and former officers accountable.  In connection therewith, Class Counsel seeks the authority to conduct depositions of Tim Howard, Lois Koons, Gail Milon, and Addys Walker, as well as others involved, if necessary.

G.  **Representations by Cambridge to Class Members That Their Investments Were Earning Significant Income, However, the Earnings Were Unrealized and Not Substantiated by Millennium's Documents**

Cambridge previously advised Class Members that their invested retirement monies had made significant earnings.  For instance, Player No. 5 rolled over $610,061.95 from his 401(k) account in May of 2016.  *See* Seeger Decl., Ex. 19 (Check for Player No. 5 from NFL Player Second Career Savings Plan Account).  As of December 31, 2016, seven months later, his investment was purportedly worth $751,432.50, a gain of $132,370.55, or a 39.29% average annual percent return.  *Id.*, Ex. 21 (Cambridge Portfolio Summary for Player No. 5, as of Dec. 31, 2016).  Player No. 1 invested $299,950.00 (in two separate Cambridge accounts, Cambridge Capital Partners and Cambridge Capital Group Equity Opportunities LP) after January 1, 2016.  Less than a year later, as of December 31, 2016, his accounts were worth $360,064.78, a gain of $60,114.78.  *Id.*, Ex. 22, at MTC 000194.  Curiously, however, according to Millennium Trust Company, the cumulative balance for Player No. 1's account for the following year, as of December 31, 2017, was the same, $360,064.78, with unrealized cumulative gains of $60,114.78.  *Id.*, Ex. 22, at MTC 000254.

Millennium states that it receives the details on any income the invested funds earned from Cambridge. Specifically, internal Millennium documents reveal that Player No. 10 evidently contacted Millennium in January 2018 to attempt to find out the balance on his account. Millennium advised him "values are updated by the sponsor [Cambridge] and he should reach out to know a true up to date value." Seeger Decl., Ex. 23, at MTC 002037.

Thus, although Class Counsel was hopeful that Millennium's production of documents in response to the subpoena served would reveal the true account balances for Class Members with retirement monies invested with the Cambridge Entities, such was not the case.

**H.** **Millennium Apparently Resigned as Custodian for Some or All of the Class Members' Accounts, But, Class Members Have Not Received the Distributions of the Retirement Funds; and for Some, Millennium Never Served as Custodian because Mr. Howard Failed to Effectuate Proper Rollover of the Funds Such That They Maintained Status as IRA Funds**

As a result of the receipt of Millennium's document production and also documents produced by Class Members after the April 2, 2018 hearing, Class Counsel learned that Cambridge had been paying the fees charged by Millennium to act as custodian of the funds. Beginning in the fall of 2017, however, after Class Counsel began to investigate the Third-Party Funders, consistent with the Court's Notice & Order of July 19, 2017 [ECF No. 8037], Cambridge evidently stopped paying the fees. For example, Millennium's internal notes related to Player No. 1 indicate that the past due fee notices began in October 2017, and the note for February 22, 2018 provides as follows:

> We recently [have] been resigned as of this past Tuesday, 2/20/2018, due to the non-payment of annual fees on the account. The sponsor confirmed they were the ones who paid the client's annual account fees. Sponsor/TPA Gail Milon is requesting if we can either reverse resignation on these accounts due to the sponsor's failure to pay fees, or if client can open brand new account and re-register the asset back into MTC.

Seeger Decl., Ex. 24, at MTC 000001.

Player No. 1 also provided Class Counsel with copies of a letter and corresponding documents from Millennium, dated February 7, 2018,[18] one for each of his accounts with Cambridge Capital Partners LP and with Cambridge Capital Group Equity Options Opp, L.P. Seeger Decl., Ex. 25.  The subject line of the letter is:  "Important Notice: Asset Distribution and Potential Tax Consequences," and the letter provides in pertinent part that:

> We are distributing the asset(s) referenced above to you, at the **last reported value**, through the enclosed Assignment of Interest.  By assigning all interest to you, Millennium Trust Company is no longer holding custody of your asset(s), and your asset(s) is deemed as having been distributed from your Millennium account as of the date of this letter.  If you have sponsor-provided information regarding a more current value, please furnish it to us within 10 business days …

*Id.* at SCMPRODCAMB-PLYR1_000001 (emphasis in original).[19]  Most importantly, Player No. 1 represented to Class Counsel that *he did not receive a check for the monies that allegedly were distributed*.  Additionally, he represents that the account balances reflected by Millennium - $100,470.43 and $259,594.35 – are approximately $77,000 short.  He maintains that his deposits were $437,500, and not the approximately $360,000 reflected on the Millennium documents.

---

[18]   The Class Member did not provide Class Counsel with a copy of this letter until after the April 2, 2018 hearing.

[19]   Similarly, Player No. 5 provided Class Counsel with an email that he received from Millennium, dated April 17, 2018, stating:

> We are writing as a courtesy to remind you that your Annual Account Fees are now severely past due.  Please be advised that your payment in the amount of $580.00 is due within 10 days of the date of this notice.

> Failure to make this payment may result in our resignation on your account.  If we are forced to resign on your account due to unpaid fees, it may result in a complete distribution of your investments and you will be responsible for any taxes or IRS penalties that may apply.  Please keep in mind that is distribution to you may be a taxable event.

Seeger Decl., Ex. 26.

Seeger Decl. ¶ 35.  According to Gail Milon's letter, dated March 27, 2018, Player No. 1 "invested" $249,950 in retirement monies and $137,000 in non-retirement monies with Cambridge, for a total of $386,950.  *See* Seeger Decl., Ex. 3.  As such, putting aside the earnings on the investments, Cambridge, Millennium, and the Class Member do not even agree as to the original amounts invested.

As to Player No. 9, despite his having executed the IRA rollover paperwork in February 2016, and his believing that he had successfully rolled over the 401(k) monies from the NFL Player Second Career Savings Plan, evidently Cambridge failed to properly shepherd him through the process.  On Millennium's internal document concerning communications as between Millennium and Player No. 9 and Gail Milon, the Millennium employee wrote, as of August 9, 2017:

> Spoke with Gail Milon[,] the new TPA for Cambridge Partners regarding the client's account.  The client NFL plan issued a check to the client which he then deposited with Cambridge directly.  The client assumed it was a rollover.  Explained that this is not a rollover because Cambridge is not an IRA custodian.  Advised her to have the client talk to his accountant regarding this or call IRS.

Seeger Decl., Ex. 27, at MTC 001933; *see also id.* at MTC 001934, entry for Mar. 3, 2017 ("Client called in to inquire about what was in his account.  Confirmed that account has zero balance. … He claims he rolled over a check from a previous 401k for roughly $325k.  He mentioned that Tim Howard helped him send the funds to Cambridge."); *id.*, entry for Mar. 8, 2017 ("He took $325k from his 401k & sent it to Tim Howard @ Cambridge Capital.  He does not own the asset in his IRA.  He will reach out to Tim Howard to assist him on where the funds are.").  So, it appears that Tim Howard and Cambridge mishandled the client's retirement monies such that they did not maintain IRA status – thus, likely resulting in tax consequences.

I.   **Assuming that the Retirement Monies Are Not Liquid because They Were Used to Pay Other Class Members' Cash Advances under the Void Assignment Agreements with Cambridge, and Assuming Cambridge Lacks the Funds to Be Able to Refund the Class Members Their Retirement Monies, the Corporate Veil Should Be Pierced and Former and Current Officers of Cambridge Should Be Liable to Repay the Class Members Their Retirement Funds**

Cambridge had been paying the annual fees to custodian, Millennium, as the "sponsor" for the Class Members who had their IRA monies (or other monies) "invested" in the Cambridge products.  *See* Seeger Decl., Ex. 24.  When Cambridge learned that the assignment agreements were being challenged and then were declared by the Court to be void, invalid, and of no force and effect, they apparently stopped paying the fees.  Class Counsel believes that they stopped paying the fees because their expectations of high rates of return related to the assignment agreements were dashed and those assignment agreements *were* the "investments" that the retirement monies had underwritten – the retirement monies were used to pay for the cash advances.  As such, the Cambridge products, like Cambridge Capital Partners LP and with Cambridge Capital Group Equity Options Opp, L.P., are now virtually worthless.  The best that Cambridge can hope is that it recoups the advances paid (likely using the retirement funds) under the rescission process that the Court set forth in the December 8, 2017 Order.  That might not occur for some time, however, because it is not likely that all Class Members who received advances pursuant to assignments with Cambridge are in line to receive monetary awards in the near future.

Ostensibly, the reason that Millennium cannot tell Class Members how much is in their accounts and the reason why it did not send checks to the Class Members when it resigned from their accounts is because the money is not actually held by Millennium.  Millennium invested the funds back into the Cambridge products, i.e, transferred the money to Cambridge, on the Class Members' behalf.   Therefore, in all likelihood, though Class Counsel cannot be certain,

Millennium would not have the money to refund the Class Members their "invested" retirement monies, even were the Court to order same.

As such, Class Counsel seeks in the alternative, to have Cambridge's former and current officers pay the Class Members their money back.  If the money cannot be returned to the Class Members forthwith by Cambridge or Millennium, then discovery should be permitted to explore the possibility of piercing the corporate veil and the current and former officers' ability to cover the refunds.

## III.     **ARGUMENT**

Class Counsel set forth in the Memorandum in support of the Motion to Prohibit the case law and other support for this Court's broad authority to act to enjoin and regulate the conduct of those attempting to interfere with Settlement and to mislead and profit unfairly from Class Members.  In short, as the MDL court presiding over the res that is the Monetary Award Fund, with fiduciary duties to the Class Members who have *both* assignment agreements and so-called investments with Cambridge, this Court clearly possesses the jurisdiction and the power to order Cambridge and its current and former principals to return the Class Members' retirement monies with interest or earnings on the investments.  Class Counsel will not repeat those arguments here, but, rather, incorporates the prior Memorandum herein by reference.  *See* ECF No. 9578-1.  Class Counsel respectfully requests that the Court order the Cambridge Entities to pay, or to direct Millennium to pay, the Class Members all of their retirement monies "invested" with Cambridge, along with earnings and interest thereon.

As noted above, should it be determined that Cambridge and Millennium do not possess the Class Members' funds, then discovery should be permitted, including the depositions of Tim Howard, Gail Milon, Addys Walker, and Lois Koons, in order to gather more information about

the chain of custody of the retirement funds, each individual's culpability concerning the mishandling of funds, and whether the facts are such that a piercing of the corporate veil is appropriate.  With respect to Mr. Howard, in his dual role as individually retained counsel and financial advisor, there may be facts, distinct from that which would be sufficient to allow for piercing of the corporate veil, that might separately render him liable to repay the funds, and his deposition would be designed to explore those facts as well.

This Court already recognized its authority to order the Cambridge Entities to produce documents and more importantly, to produce accountings revealing each Class Member's current account balance.  Additionally, because the Cambridge Entities have flouted this Court's February 20, 2018 Order directing them to produce accountings of the Class Members' retirement funds, monetary sanctions are warranted.  *See* Fed. R. Civ. P. 16(f) and 37; *Republic of Philippines v. Westinghouse Electric Corp.*, 43 F.3d 65, 73 (3d Cir.1994) (courts have the "*inherent* authority to impose sanctions upon those who would abuse the judicial process") (emphasis in original).

When the accountings are finally produced by Cambridge, it would undoubtedly be helpful to the Court to appoint an accountant to review the accountings and provide a report to the Court as to their accuracy, particularly in light of the previously discussed discrepancies as between Cambridge and at least one Class Member as to the initial amount he rolled over and invested with Cambridge.  Cambridge should bear the costs of the accountant.

Additionally, since it is now known that certain Class Members invested monies other than retirement funds in the Cambridge Entities – so-called "non-qualified" funds, *see* Seeger Decl., Ex. 3 – Class Counsel seeks to have the Court order Cambridge to produce documents and accountings concerning those monies.

Finally, Class Counsel respectfully requests that the Court set a further hearing to address the matters discussed herein.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should issue an order consistent with the proposed order submitted herewith.


Dated:  May 8, 2018                                    Respectfully submitted,


                                                       <u>*/s/ Christopher A. Seeger*</u>
                                                       Christopher A. Seeger
                                                       SEEGER WEISS LLP
                                                       55 Challenger Road, 6th Floor
                                                       Ridgefield Park, NJ  07660
                                                       Telephone: (212) 584-0700
                                                       Fax: (212) 584-0799
                                                       <u>cseeger@seegerweiss.com</u>

                                                       *Co-Lead Class Counsel*