# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS PENDING AGAINST ANY RIDDELL DEFENDANT | **Hon. Anita B. Brody** |

**RIDDELL DEFENDANTS'[1] REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE PLAINTIFFS' SECOND AMENDED MASTER ADMINISTRATIVE COMPLAINT AND AMENDED SHORT FORM COMPLAINTS[2]**

---

[1] For convenience only, "Riddell" or "Riddell defendants" refers collectively to the defendants Riddell, Inc., All American Sports Corporation, Riddell Sports Group, Inc., BRG Sports, Inc. (f/k/a Easton-Bell Sports, Inc.), BRG Sports, LLC (f/k/a Easton-Bell Sports, LLC), EB Sports Corp., and BRG Sports Holdings Corp. (f/k/a RBG Holdings Corp.), without waiver of their position that these are separate entities whom the plaintiffs have improperly lumped together and refer to as one entity.

[2] This reply brief does not address Riddell's motion to strike the SAMAC-SFCs of those asserting claims against Riddell for the first time. While this relief was discussed in Riddell's opening brief, Riddell also moved separately for it. (ECF No. 9573.) The plaintiffs responded to Riddell's motion to strike (ECF Nos. 9539, 9594) and Riddell filed a reply brief (ECF No. 9607). Since the issue was briefed separately and not mentioned in the plaintiffs' response to Riddell's motion to dismiss the plaintiffs' SAMAC and SAMAC-SFCs (ECF No. 9823), Riddell does not address the issue in this reply brief. Riddell reserves all arguments on its pending motion to strike.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

ARGUMENT ......................................................................................................3

I.   The plaintiffs fail to show that any detailed choice-of-law analysis is necessary for the Court to determine that the plaintiffs' SAMAC is deficient and requires dismissal...........................................................................................................3

II.  The plaintiffs fail to show that they state sufficient facts to support their claims. ..........................................................................................................................6

   A.   The plaintiffs' SAMAC lacks facts necessary to state a claim for conspiracy and their opposition brief confirms they have no such facts. ..................................6

   B.   The plaintiffs' fraud and negligent misrepresentation claims are deficient and plaintiffs fail to show otherwise. ....................................................................8

      1.   The plaintiffs fail to satisfy the requirements of Rule 9(b)..............................8

      2.   The plaintiffs lack facts to support reliance and causation. ...........................12

      3.   The plaintiffs fail to provide facts to support that Riddell owed a duty, which is required for their fraud-by-omission claim. ......................................15

   C.   The plaintiffs fail to show that they have adequately alleged facts to support required elements of their product liability and general negligence claims. .........16

      1.   The plaintiffs fail to identify any defect. .....................................................16

      2.   The plaintiffs fail to allege facts to support causation. ...................................18

      3.   The plaintiffs fail to allege facts to support duty. ...........................................19

      4.   The plaintiffs' negligent marketing claim fails...............................................20

   D.   The plaintiffs fail to show how the SAMAC survives when it improperly lumps all of the Riddell entities together with each other and at times, with the NFL. ...................................................................................................20

   E.   The plaintiffs fail to rebut Riddell's argument that their SAMAC-SFCs lack the requisite facts to support their claims. ...........................................................21

III. The plaintiffs fail to rebut Riddell's showing that the vast majority of their claims are untimely, and their claims are not saved by any tolling doctrine or by relation back...........................................................................................................21

   A.   The plaintiffs' boilerplate assertion of discovery-rule tolling fails to support application of that principle to save their facially time-barred claims..................22

   B.   The plaintiffs' rote assertion of alleged fraudulent-concealment tolling fails. ..........................................................................................................................25

   C.   Relation back is inapplicable. ..............................................................................28

IV. The plaintiffs' lack of response as to those who failed to file SAMAC-SFCs as ordered requires dismissal of those actions. ............................................................30

V.  The plaintiffs fail to rebut that they lack facts sufficient to support punitive damages..................................................................................................................30

CONCLUSION.....................................................................................................................30

# TABLE OF AUTHORITIES

## Cases

*Am. Planned Comtys., Inc. v. State Farm Ins. Co.*
   28 F. Supp. 2d 964 (E.D. Pa. 1998) ...................................................................... 16

Bell Atl. Corp. v. Twombly
   550 U.S. 544 (2007) ............................................................................... 6, 7, 8

*Burtch v. Milberg Factors, Inc.*
   662 F.3d 212 (3d Cir. 2011) ................................................................................ 6

*Byrnes v. DeBolt Transfer, Inc.*
   741 F.2d 620 (3d Cir.1984) ................................................................................ 9

*Car Carriers, Inc. v. Ford Motor Co.*
   745 F.2d 1101 (7th Cir. 1984) .......................................................................... 14

*Cetel v. Kirwan Fin. Group, Inc.*
   460 F.3d 494 (3d Cir. 2006) .............................................................................. 27

*Collins v. Marsh*
   No. 2:12-cv-51-MHT, 2012 WL 1058998, at *2 (M.D. Ala. Mar. 6, 2012) ............................ 6

*Com. of Pa. ex rel Zimmerman v. PepsiCo., Inc.*
   836 F.2d 173 (3d Cir. 1988) .............................................................................. 14

*Corcoran v. N.Y. Power Auth.*
   935 F. Supp. 376 (S.D.N.Y. 1996) ....................................................................... 28

*Craftmatic Sec. Litig. v. Kraftsow*
   890 F.2d 628 (3d Cir. 1989) .............................................................................. 10

*Daley v. A.W. Chesterton, Inc.*
   37 A.3d 1175 (Pa. 2012) .................................................................................. 24

*Gartin v. S & M NuTec LLC*
   245 F.R.D. 429 (C.D. Cal. 2007) ........................................................................ 13

*Glover v. F.D.I.C.*
   698 F.3d 139 (3d Cir. 2012) .............................................................................. 28

*Gnagey Gas & Oil Co., Inc. v. Pa. Underground Storage Tank Indem. Fund*
   82 A.3d 485 (Pa. Commw. Ct. 2013) ..................................................................... 16

*Hollander v. Brown*
   457 F.3d 688 (7th Cir. 2006) ............................................................................ 23

*In re Chrysler-Dodge-Jeep Ecodiesel Mkt., Sales Prac., & Prods. Liab. Litig.*
   No. 17-02777, 2018 WL 1335901, at *57–58 (N.D. Cal. Mar. 15, 2018) ............................... 15

*In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mkt. & Sales Prac. Litig.*
   No. 12-2320, 2013 WL 1332097, at * 1 (D. N.H. Apr. 2, 2013) ....................................... 5

*In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*
   966 F. Supp. 1525 (E.D. Mo. 1997) ...................................................................... 9

*In re Orthopedic Bone Screw*
   MDL No. 1014, 1997 WL 186325, at *9–12 (E.D. Pa. Apr. 16, 1997) .................................. 4

*In re Processed Egg Prod. Antitrust Litig.*
   No. 08-MD-02002, 2011 WL 5980001, at *2 (E.D. Pa. Nov. 30, 2011) ........................... 22, 26

*In re Resorts Int'l, Inc.*
   181 F.3d 505 (3d Cir. 1999) .............................................................................. 13

*In re Rhone-Poulenc Rorer, Inc.*
  51 F.3d 1293 (7th Cir. 1995) ........................................................................ 5
*In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*
  MDL No. 19956, 2009 WL 2940081, at *7 (D.N.J. Sept. 11, 2009) ........................ 4
*In re Toyota Motor Corp.*
  2012 WL 12929769, at *20 (C.D. Cal. May 4, 2012) ......................................... 14
*In re Tyco Int'l Ltd.*
  MDL No. 02-1334-B, 2007 WL 1703023, at *24 (D.N.H. June 11, 2007).................. 4
*In re Wyse Tech. Secs. Litig.*
  744 F. Supp. 207 (N.D. Cal. 1990) .................................................................. 8
*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Relevant Prods.*
  *Liab. Litig.*
  No. 09-cv-20003, 2010 WL 3937414, at *4–5 (S.D. Ill. Oct. 4, 2010) ..................... 4
*In re Zofran (Ondansetron) Prods. Liab. Litig.*
  No. 1:15-md-2657-FDS, 2017 WL 1458193, at *6 (D. Mass. Apr. 24, 2017)............. 15
*Int'l Fund Mgmt. S.A. v. Citigroup, Inc.*
  822 F. Supp. 2d 368 (S.D.N.Y. 2011) ............................................................. 13
*Kaufman v. i–Stat Corp.*
  165 N.J. 94 (2000) ....................................................................................... 13
*Ladyansky v. Cooper Wheelock, Inc.*
  No. 11-CV-102, 2012 WL 1071187, at *4 (E.D. Pa. Mar. 29, 2012)...................... 28
*Laskowski v. Brown Shoe Co.*
  No. 3:14-cv-01812, 2015 WL 1286164, at *4 (M.D. Penn. Mar. 20, 2015) ............. 10
*Long v. Wilson*
  393 F.3d 390 (3d Cir. 2004) .......................................................................... 29
*Migliori v. Boeing N. Am., Inc.*
  97 F. Supp. 2d 1001 (C.D. Cal. 2000) ............................................................. 25
*Mirkin v. Wasserman*
  5 Cal.4th 1082 (1993) .................................................................................. 13
*Montanez v. Sec'y Pa. Dep't of Corr.*
  773 F.3d 472 (3d Cir. 2014) .......................................................................... 28
*Montich v. Miele USA, Inc.*
  849 F. Supp. 2d 439 (D. N.J. 2012) .................................................................. 9
*NECA-IBEW Pension Tr. Fund v. Lewis*
  607 F. App'x 79 (2d Cir. 2015) ...................................................................... 25
*Nelson v. Cty. of Allegheny*
  60 F.3d 1010 (3d Cir. 1995) .......................................................................... 28
*Ogbudimkpa v. Ashcroft*
  342 F.3d 207 (3d Cir. 2003) .......................................................................... 29
*Payne v. A.O. Smith Corp.*
  578 F. Supp. 733 (S.D. Ohio 1983) ................................................................. 28
*Protica, Inc. v. iSatori Tech., LLC*
  No. 1-CV-1105, 2012 WL 1071223, at *5 (E.D. Pa. Mar. 30, 2012)...................... 16
*Schmidt v. Skolas*
  770 F.3d 241 (3d Cir. 2014) ..................................................................... 23, 24

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*
   742 F.2d 786 (3d Cir. 1984) .................................................................................. 10
*Small v. Lorillard Tobacco Co., Inc.*
   679 N.Y.S.2d 593 (1998) ...................................................................................... 14
*Song Fi, Inc. v. Google, Inc.*
   No. 14-cv-5080, 2016 WL 1298999, at *6 (N.D. Cal. Apr. 4, 2016) .................................... 6, 8
*Sung Tran v. Delavau, LLC*
   No. 07-cv-3550, 2008 WL 2051992, at *10 (E.D. Pa. 2008) .................................... 7
*Swietlowich v. Bucks County*
   610 F.2d 1157 (3d Cir. 1979) .................................................................................. 23
*Tese-Milner v. Diamond Trading Co.*
   No. 04 CIV. 5203, 2011 WL 4501336, at *8 (S.D.N.Y. Sept. 29, 2011) ................................ 28
*United States ex rel. Budike v. PECO Energy*
   897 F. Supp. 2d 300 (E.D. Pa. 2012) ...................................................................... 10
*Van Dongen v. CNinsure, Inc.*
   951 F. Supp. 2d 457 (S.D.N.Y. 2013) ...................................................................... 13
*Varacallo v. Mass. Mut. Life Ins. Co.*
   332 N.J. Super. 31 (2000) ...................................................................................... 13
*Vasquez v. Sup. Ct.*
   4 Cal.3d 800 (1971) .............................................................................................. 13
*Weaver v. Chrysler Corp.*
   172 F.R.D. 96 S.D.N.Y. 1997) ................................................................................ 9
*Zinser v. Accufix Research Inst., Inc.*
   253 F.3d 1180 (9th Cir. 2001) ................................................................................ 5

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 4, 25
Fed. R. Civ. P. 15(a)(2) ............................................................................................. 29
Fed. R. Civ. P. 8 ............................................................................................ 1, 3, 15, 25
Fed. R. Civ. P. 9(b) .......................................................................................... passim

**Other Authorities**

16 Am. Jur. 2d Conspiracy § 50 ............................................................................... 6
Restatement (Second) of Torts § 551 ........................................................................ 16

## INTRODUCTION

Instead of rebutting the arguments in Riddell's motion to dismiss with law and facts, the plaintiffs devote their opposition brief to knocking down straw men, ignoring the law and arguments in Riddell's motion, misstating the allegations in their SAMAC, and persisting with a parade of conclusory labels. The plaintiffs fail to show why the Court should allow their overreaching, factually-unsupported, and facially time-barred claims to continue. It should not.

The plaintiffs' inability to rebut Riddell's motion is evident in their opposition's focus on the marketing of Revolution-line helmets and their flawed argument that the SAMAC survives solely because of the claims about the Revolution helmets. In addition to the fact that the plaintiffs' pleadings lack allegations that a plaintiff actually wore a Revolution-line helmet or relied on any marketing statements about Revolution helmets, the plaintiffs' pleadings show that 75% percent of the player-plaintiffs could not have worn a Revolution helmet at any time when they played professional football because the Revolution was not being sold when they played. And an even greater percentage (85%) of the player-plaintiffs could not have relied on any marketing about the Revolution helmet because, as the plaintiffs' pleadings show, those players retired before the marketing campaign started. The plaintiffs offer no explanation why their SAMAC should survive based on allegations that cannot possibly be relevant to the overwhelming majority of plaintiffs.

The plaintiffs' other arguments as to why their claims survive are equally flawed. The plaintiffs argue Riddell should have conducted full choice-of-law analyses on every claim. But as explained in Riddell's opening brief, a choice-of-law analysis is not necessary for a Court to determine that a complaint is deficient under Rules 8 and 9(b). Further, as Riddell previously explained, no choice-of-law analysis is necessary to show that the plaintiffs' claims fail on a basic level because they lack sufficient facts on fundamental elements where state law does not differ.

With respect to their far-fetched conspiracy theory against Riddell, the plaintiffs fail to identify any conspiratorial agreement between any Riddell entity (much less all of them) and the NFL or anyone else. Instead, in their opposition brief, the plaintiffs point to benign allegations and conclusory statements which they attempt to elevate to a conspiracy based on nothing more than innuendo and factually devoid labels. For example, the plaintiffs argue in their opposition that they state a claim for conspiracy because Riddell worked with the NFL and NOCSAE "to conceal the danger of concussions." But they offer no facts to support that any of the entities were working together as part of an agreement to conceal information about the dangers of concussions—rather than as entities merely working in same industry. Indeed, the only actual agreements the plaintiffs identify in their SAMAC are completely facially innocuous—an agreement to make Riddell-branded helmets the "official helmet of the NFL" and to provide free helmets to NFL clubs.

The plaintiffs' opposition also fails to explain why their fraud-based claims should survive. Essentially conceding they don't allege their fraud-based claims with the necessary particularity required by Rule 9(b), the plaintiffs argue they should be entitled to a "relaxed standard" of Rule 9(b) because they allege fraud by omission and because corporate information is within Riddell's control. But the "relaxed" Rule 9(b) standard is not a "no particularity standard." The plaintiffs' SAMAC lacks any specificity to state a claim for fraud by omission even under a "relaxed" 9(b) standard, such as what representations the plaintiffs relied on that omitted any information, how the plaintiffs were misled, or which entities were responsible for the omissions.

The plaintiffs further fail to rebut that their SAMAC is devoid of facts on necessary elements of their fraud-based and product liability claims as demonstrated in Riddell's opening brief. For example, the plaintiffs point to no facts in their SAMAC to support the required element of reliance on their fraud-based claims. Instead they argue reliance should be presumed; but the

law does not support a presumption on necessary elements like reliance. Additionally, on their product liability claims, the plaintiffs fail to explain how they adequately state a design defect or allege causation based on their claim that Riddell helmets did not protect against concussive injuries, when they allege in their SAMAC no helmet can prevent those injuries.

The plaintiffs also fail to rebut Riddell's showing that the vast majority of their claims are untimely and are not saved by tolling or relation back. The plaintiffs insist that this issue requires choice-of-law analyses, but they don't explain why, and they fail to rebut Riddell's showing that regardless of their legal theory, nearly every state applies at most a four-year statute of limitations, which would bar their claims. Further, the plaintiffs point to no well-pled facts, as required, to support that any discovery rule or tolling saves their claims. Their relation-back argument as to their fraud- and conspiracy-based claims likewise fails, as they continue to ignore that they affirmatively abandoned those claims in 2012, thereby precluding relation back.

## ARGUMENT

## I. The plaintiffs fail to show that any detailed choice-of-law analysis is necessary for the Court to determine that the plaintiffs' SAMAC is deficient and requires dismissal.

The plaintiffs' argument that Riddell must conduct choice-of-law analyses to prevail on its motion is flawed for several reasons. For starters, federal pleading standards, including Rules 8 and 9(b), unquestionably apply to their claims.[3] The face of their SAMAC shows that the plaintiffs' claims are deficient under federal pleading standards and Supreme Court precedent. No choice-of-law analysis is necessary to conclude that the plaintiffs lack factual support to state plausible claims, satisfy the heightened particularity of Rule 9(b), or put the defendants on fair notice.

Also, as Riddell explained in its opening brief, choice-of-law analyses are unnecessary to determine that the plaintiffs lack necessary facts to state plausible claims. Indeed, Riddell cited

---

[3] (*See, e.g.* Riddell's Br. in Supp. of Mot. to Dismiss ("Defs.' Br.") 10 n.33 (citing cases); ECF No. 9575-1.)

opinions from numerous courts recognizing where there is no conflict between relevant states' laws, a choice-of-law analysis is unnecessary at the 12(b)(6) stage.[4] Many other courts have reached the same conclusion.[5] Here, the SAMAC facially lacks support on fundamental elements of their claims, such as causation, under any potentially applicable state law. Indeed, other than with respect to a few non-dispositive issues, the plaintiffs do not identify any conflict in the laws.

In response, the plaintiffs ignore the law Riddell (and the NFL) cited, and they cite no authority to support that a detailed choice-of-law analysis is required before dismissal under Rule 12(b)(6). Instead, the plaintiffs cite a few decisions that are either irrelevant or actually support Riddell's arguments. For example, the plaintiffs argue that *In re Orthopedic Bone Screw* required a full choice-of-law analysis before considering a motion to dismiss.[6] To the contrary, that court dismissed one claim in part after determining that most states would not recognize the claim— *without* conducting any detailed choice-of-law analysis.[7] And it withheld ruling on another of defendants' arguments where it determined state law "differ[ed] widely" on the issue.[8] In other words, where the court did not find differences in state law on an issue, it ruled on the motion to dismiss without conducting a choice-of-law analysis. Similarly, in *In re Colgate-Palmolive Softsoap*, the court denied a motion to dismiss based on a lack of choice-of-law analysis only after recognizing numerous material differences in the core elements of the plaintiffs' consumer protection and breach-of-warranty claims—for example, that some states require notice on a

---

[4] (*Id.* at 11 n.35 (citing cases).)

[5] *See In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Relevant Prods. Liab. Litig.*, No. 09-cv-20003, 2010 WL 3937414, at *4–5 (S.D. Ill. Oct. 4, 2010) (explaining that court did not need to conduct a lengthy choice-of-law analysis where an element existed regardless of the applicable state law); *In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, MDL No. 19956, 2009 WL 2940081, at *7 (D.N.J. Sept. 11, 2009) (finding a choice-of-law analysis unnecessary at motion-to-dismiss stage); *In re Tyco Int'l Ltd.*, MDL No. 02-1334-B, 2007 WL 1703023, at *24 (D.N.H. June 11, 2007) (declining to conduct choice-of-law analysis where laws were "substantively identical").

[6] (Pls.' Opp'n to Riddell's Mot. to Dismiss ("Pls.' Br.") 11, ECF No. 9823.)

[7] *In re Orthopedic Bone Screw*, MDL No. 1014, 1997 WL 186325, at *9–12, 17–18 (E.D. Pa. Apr. 16, 1997).

[8] *Id.*

breach of warranty while others do not.[9] Unlike in *In re Colgate*, where there were material differences in the laws of the states at issue, no choice-of-law analysis is necessary here because—as numerous courts have recognized yet the plaintiffs ignore—there is no material variance among the states on the fundamental core elements of the plaintiffs' claims, e.g., duty, reliance, causation.

The plaintiffs also misinterpret Riddell's arguments and ascribe assertions that Riddell did not make. For instance, the plaintiffs argue "Riddell asks this Court to apply Pennsylvania and New York law,"[10] even though Riddell did no such thing. Instead, Riddell cited law from various states, and where possible, to treatises and cases collecting the law of multiple states.

The plaintiffs also set up a straw man, asserting that Riddell argues there are no variations in the common law from state to state.[11] Riddell said no such thing. Rather, from the inception of this litigation, Riddell has explained that the plaintiffs' claims are governed by different states' laws and will, if permitted to proceed, require full choice-of-law analyses. Indeed, the law the plaintiffs cite comes from Riddell's prior briefing,[12] yet they misapply it, as none of it addresses whether a choice-of-law analysis is required before resolving a motion to dismiss like Riddell's motion. The plaintiffs' argument fails to grasp that while their claims should not proceed to trial without choice-of-law analyses, the Court can dismiss them without one where the complaint's failures exist at a fundamental level.[13] If a choice-of-law analysis was necessary at the pleading stage for every complaint potentially involving the law of more than one state, the most incomprehensible and deficient complaints could survive dismissal even if too unintelligible to

---

[9] *In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mkt. & Sales Prac. Litig.*, No. 12-2320, 2013 WL 1332097, at * 1 (D. N.H. Apr. 2, 2013).
[10] (Pls.' Br. 11, ECF No. 9823.)
[11] (*Id.* at 12.)
[12] (Mot. to Sever 20 (arguing, "as courts have recognized, the laws of negligence and products liability 'all differ in some respects from state to state'" and citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1188 (9th Cir. 2001); *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300-01 (7th Cir. 1995)), ECF No. 3593-1.)
[13] *Supra* n.3, 4.

allow for a choice-of-law analysis. The plaintiffs offer nothing to support that absurd result.

**II.    The plaintiffs fail to show that they state sufficient facts to support their claims.**

    **A.    The plaintiffs' SAMAC lacks facts necessary to state a claim for conspiracy and their opposition brief confirms they have no such facts.**

While the plaintiffs abandon their fanciful claims that Riddell engaged in a conspiracy with the federal government and international corporations, they persist in attempting to litigate their settled claims against the NFL[14] by attempting to hold Riddell liable for the alleged actions of the NFL through vague and far-fetched conspiracy theories. But as Riddell explained in its opening brief, the plaintiffs provide no facts to establish that any Riddell defendant—much less all Riddell defendants—entered into any conspiratorial agreement.

A conspiracy requires an agreement to commit an unlawful act or a lawful act by unlawful means.[15] Merely alleging two entities are engaged in the same scheme or common goal, or that two businesses engaged in parallel conduct, is not enough.[16] As courts have explained, while parallel or common business conduct may be consistent with a conspiracy, it is equally consistent with non-conspiratorial conduct.[17] Thus, as the Supreme Court stated in *Twombly*, "[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."[18] For a conspiracy claim to survive, a plaintiff must provide facts to support the existence of an agreement to commit bad acts—i.e., a conspiratorial agreement. The "mere incantation of the words 'conspiracy' or

---

[14] All but eight plaintiffs pursuing claims against Riddell have settled with the NFL.

[15] *See, e.g.*, 16 Am. Jur. 2d Conspiracy § 50.

[16] *E.g.*, *Twombly*, 550 U.S. at 556–57 (holding that parallel business conduct is not enough for a claim of conspiracy); *Collins v. Marsh*, No. 2:12-cv-51-MHT, 2012 WL 1058998, at *2 (M.D. Ala. Mar. 6, 2012) (dismissing plaintiff's conspiracy claim' plaintiff merely alleged defendants had a common goal, scheme, or purpose, which was not enough); *Song Fi, Inc. v. Google, Inc*. No. 14-cv-5080, 2016 WL 1298999, at *6 (N.D. Cal. Apr. 4, 2016) (dismissing conspiracy claim where plaintiffs merely labeled ordinary business dealings as a conspiracy).

[17] *E.g.*, *Burtch v. Milberg Factors, Inc*., 662 F.3d 212, 227 (3d Cir. 2011) (quoting *Twombly*).

[18] *Twombly*, 550 U.S. at 556–57.

'acted in concert' does not talismanically satisfy" pleading standards.[19]

The plaintiffs argue their SAMAC adequately states a conspiracy because they allege the NFL, Riddell, and NOCSAE "worked together to conceal the danger of concussions."[20] But the only facts they provide of these entities agreeing to do anything or "working together" don't support that they were doing so for any unlawful purpose. Indeed, the only agreement the plaintiffs discuss in their SAMAC and opposition is a marketing and licensing agreement between Riddell and the NFL, which is lawful on its face.[21] Indeed, there is nothing unlawful about an agreement to, as plaintiffs claim: make Riddell-branded helmets the "official helmet of the NFL"; to employ an "individual [to] ensure all equipment under the deal to be the safest possible"; or for Riddell to provide "the NFL free helmets for any club where more than 80% of players wear Riddell."[22]

The plaintiffs point to one other supposed agreement to support their conspiracy claims: "the 1969 formation of NOCSAE."[23] But again, nowhere do the plaintiffs allege any facts to support that Riddell entered into any agreement with NOCSAE (or anyone else)—much less an agreement for any unlawful purpose or to do anything by any unlawful means. Instead, the plaintiffs allege only that Riddell participated in the formation of NOCSAE and had "voting power on the NOCSAE Board of Directors."[24] And the allegation the plaintiffs assert describes the "conspiratorial nature" of the relationship between NOCSAE and Riddell is testimony from an expert that "the NFL and NOCSAE try pretty hard to work together," with no mention of Riddell and nothing accusing or implying these entities were working together for any wrongful purpose.[25]

The plaintiffs' allegations amount to (1) two facially innocuous relationships: a licensing

---

[19] See, e.g., id. at 556–57; Sung Tran v. Delavau, LLC, No. 07-cv-3550, 2008 WL 2051992, at *10 (E.D. Pa. 2008).
[20] (Pls. Br. 13, ECF No. 9823.)
[21] (SAMAC 8, 16 & ¶ 157, ECF No. 8927.)
[22] (Id. at 8.)
[23] (Pls.' Br. 13, ECF No. 9823.)
[24] (SAMAC ¶ 130, ECF No. 8927.)
[25] (Id. at ¶ 134.)

agreement and a working relationship between Riddell and an industry group that promulgated standards for athletic equipment; and (2) conclusory allegations that the NFL, the industry group, and Riddell were all working to conceal the dangers of concussions. Their allegations consist of nothing more than "neutral facts and conclusory allegations," which are insufficient to state a claim for conspiracy.[26] Indeed the plaintiffs provide nothing to connect the two facially innocent relationships with the conclusory allegations of nefarious activities. And even if the plaintiffs had alleged facts to support that all three entities were working to conceal the dangers of concussions— and to be clear, they have not—their allegations would only amount to allegations of a common scheme or parallel business conduct insufficient to identify a conspiratorial agreement.[27]

Further, the plaintiffs do not even attempt to rebut their failure to allege any facts about the circumstances of a supposed conspiratorial agreement, including when, how, and where the agreement was made, or "how [Riddell] worked with the other conspirators."[28] The plaintiffs also ignore that they fail to allege which of the seven Riddell defendants were part of the conspiracy, and they don't explain how all of them were part of a 60-year conspiracy even though the entities existed at different times over that period. With no facts describing which entities were part of the conspiracy or when or how it was formed, the plaintiffs' conspiracy claim cannot survive.

**B.    The plaintiffs' fraud and negligent misrepresentation claims are deficient and plaintiffs fail to show otherwise.**

**1.    The plaintiffs fail to satisfy the requirements of Rule 9(b).**

Riddell showed that the plaintiffs' fraud-based claims fail at the most basic level because they are nothing more than conclusory labels and boilerplate assertions, with no facts of the "who,

---

[26] *In re Wyse Tech. Secs. Litig*., 744 F. Supp. 207, 208 (N.D. Cal. 1990).

[27] *E.g.*, *Twombly*, 550 U.S. at 556–57.

[28] *See, e.g.*, *Song Fi*, 2016 WL 128999, at *6 (dismissing conspiracy claim against two defendants given that the plaintiff failed to allege facts sufficiently as to how the defendants worked with alleged co-conspirators).

what, where, and how." The SAMAC compounded this failure by improperly lumping the Riddell defendants together, with no particularized facts as to their involvement in the alleged fraud.[29]

The plaintiffs assert that factual support for their fraud-based claims is unnecessary because they allege fraud by omission.[30] But even if the standards of Rule 9(b) are *somewhat* relaxed in omission cases, much more is needed than the vague, conclusory statements the SAMAC provides, such as that "[d]efendants and co-conspirators concealed and downplayed the true risks associated with MTBI."[31] Rule 9(b) requires in omission cases that a plaintiff plead the essential elements with some level of specificity.[32] For instance, a plaintiff should plead what representations were made and relied on that omit information.[33] A plaintiff also should identify the manner in which the representation misled the plaintiff and the persons responsible for the failure to disclose.[34]

But the plaintiffs provide no level of specificity here. Nowhere do they identify any representations containing omitted information that the plaintiffs relied on, how the plaintiffs were misled, or what entities were responsible for the failure to disclose. The plaintiffs' arguments that "the relevant time period," "Riddell," and "the dangers of concussions," satisfies Rule 9(b)'s when, who, and what requirements,[35] are absurd. Simply alleging in conclusory fashion that seven different Riddell entities—many of which did not even exist for substantial periods covered by the SAMAC—concealed information over six decades about the risks of concussions, is not enough to meet the requirements of 9(b) or even a "relaxed" version of it.

Additionally, while the plaintiffs apparently concede that Rule 9(b) requires them to

---

[29] (Defs.' Br. 17, n. 64 (citing cases).)

[30] (Pls.' Br. 16, ECF No. 9823.)

[31] (*Id.* at 71.) *See, e.g.*, *Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 626 (3d Cir.1984) ("We agree, of course, that fraud, and thus fraudulent concealment, must be pleaded with particularity.").

[32] *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 453 (D.N.J. 2012).

[33] *Id.*

[34] *E.g.*, *In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1536 (E.D. Mo. 1997) (citing *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 101 (S.D.N.Y. 1997)).

[35] (Pls.' Br. 16, ECF No. 9823.)

identify which of the defendants was responsible for the fraud at issue, they insist that they cannot meet this requirement—and should therefore be excused from it—because they do not know the "details of Riddell's corporate organization."[36] But, while the requirements of 9(b) are occasionally relaxed in circumstances where information is exclusively and peculiarly within the defendant's control—usually in cases of securities fraud and other cases involving complex corporate activity—to obtain the benefit of a relaxed standard, a plaintiff must demonstrate "that *specific information* is in the exclusive control of the defendant"[37] and explain why that is the case.[38] Indeed, in the case cited by the plaintiffs, *U.S. ex. Rel. Budike*, the court explained that "pleaders must allege that the necessary information lies within defendants' control, and their allegations must be accompanied by a statement of the facts upon which the allegations are based."[39] The plaintiffs don't identify any specific information supposedly within Riddell's exclusive control and they don't assert any facts to support such an allegation. Moreover, the plaintiffs continue to ignore that Riddell has informed them multiple times that many of the Riddell entities did not even exist at all times during the more than 60 years their claims span, even attaching publicly available documents demonstrating those facts.[40]

The plaintiffs further argue that they meet the requirements of Rule 9(b) based on their allegations regarding the Revolution helmets and their later marketing claim as reducing "the incidence of concussions by 31%." They assert the marketing statement is "prima facie evidence of fraud as to the Plaintiffs who wore the Revolution (i.e., Plaintiffs who played after 2002)."[41] Their argument has several flaws. For starters, none of the plaintiffs allege they wore a Revolution-

---

[36] (*Id.* at 17.)
[37] *E.g.*, *Laskowski v. Brown Shoe Co.*, No. 3:14-cv-01812, 2015 WL 1286164, at *4 (M.D. Penn. Mar. 20, 2015) (emphasis added) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).
[38] *Id.*  (citing *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989)).
[39] *United States ex rel. Budike v. PECO Energy*, 897 F. Supp. 2d 300, 316 (E.D. Pa. 2012).
[40] (*E.g.*, Request Judicial Notice in Supp. Mot. to Sever, ECF Nos. 3594, 3594-1; Mot. to Sever, ECF No. 3593.)
[41] (Pls.' Br. 16–17, ECF No. 9823.)

line helmet or were exposed to—much less relied on—the later marketing for that helmet line. The plaintiffs nonetheless argue that the Revolution-related allegations are universally relevant to those who played after 2002, when the Revolution line of helmets debuted. But as the SAMAC shows, the Revolution marketing campaign did not begin until 2006,[42] *after* 141 of the 205 player-plaintiffs with fraud claims ended their professional football careers.[43] In other words, nearly 70% of the player-plaintiffs with fraud claims could not have relied on statements about the Revolution at any relevant time, and for the other roughly 30% of plaintiffs with fraud claims, the plaintiffs' pleadings include nothing to support that they were exposed to statements about the Revolution or relied on them. There is also nothing in the plaintiffs' SAMAC or individual SAMAC-SFCs to support that all plaintiffs who played after 2002 wore a Revolution helmet.

Additionally, the plaintiffs fail to explain the basis for their fraud claim with respect to the Revolution. If a player-plaintiff was exposed to and relied on the statement that the Revolution helmets were capable of a 31% reduction in the incidence of concussion (which none of the plaintiffs say they did), he necessarily knew that the helmets did *not* prevent or eliminate all concussions, and that there is a still a risk of concussive injury.

Further, the plaintiffs argue that they satisfy Rule 9(b) because the Revolution marketing claims are "also evidence that Riddell fraudulently marketed and sold its earlier helmets as well, because the methods Riddell used to validate the Revolution . . . are the same Riddell used for earlier helmets such as the VSR-4"[44] This argument is both nonsensical and unsupported. The SAMAC contains no factual allegations regarding marketing of the VSR-4 or other helmets, nor

---

[42] (SAMAC ¶ 284, ECF No. 8927.)
[43] The 203 plaintiffs with fraud-based claims Riddell initially identified did not include two later-discovered plaintiffs with fraud-based claims in their SAMAC-SFCs filed only in individual dockets and not the master docket. Riddell reserves the right to move to dismiss those claims for failure to comply with the Court's order and any other grounds.
[44] (Pls.' Br. 17, ECF No. 9823.)

any marketing dating back to the 1960s up to 2006. There are also absolutely no facts to establish who, what, when, where, how or anything else for any supposed pre-Revolution marketing. Moreover, as explained above, the plaintiffs have not even explained why the Revolution marketing was relevant to any of them. Yet they try to leverage their irrelevant and deficient claims to support that they are entitled an *inference of fraud* such that they should not be required to plead any facts to support fraud claims with respect to earlier helmet models. This grossly overreaching effort shows the plaintiffs have only deficient, conclusory allegations with nothing more to support their far-fetched fraud claims.

### 2. The plaintiffs lack facts to support reliance and causation.

The plaintiffs' fraud-based claims also fail because they fail to allege facts to support reliance and causation, as Riddell explained in its opening brief. The plaintiffs assert no facts to show that the plaintiffs would have been exposed to or relied on any omitted statements. They also fail to explain with any facts what they would have done differently if they had the information they say Riddell didn't provide them and how that would have prevented their alleged injuries.

As for the marketing claims about the Revolution helmets, the plaintiffs fail to allege that any plaintiffs were exposed to or relied on those marketing claims or that any of those plaintiffs even wore a Revolution-line helmet. And as explained above, their pleadings show that most of them could not have relied on the marketing or worn a Revolution helmet. The plaintiffs fail to explain how they could have justifiably relied on marketing claims about helmets for a sport they were no longer playing, or how statements about a helmet they couldn't have worn could possibly be causally related to their injuries.

The plaintiffs argue reliance can be inferred.[45] But that they would have been exposed to

---

[45] (Pls.' Br. 19–20, ECF No. 9823.)

any statements by Riddell or that they would have relied on them is not inferable from the facts alleged. As explained in Riddell's opening brief, the plaintiffs' SAMAC is subject to dismissal for failing to allege reliance—a necessary element of a common-law fraud claim under any state's law.[46] The cases cited by the plaintiffs do not support that they are entitled to any presumption of reliance here. For example, the court *In re Resorts* stated only that a fact finder could reasonably find reliance when considering clear and convincing evidence supporting reliance.[47] The case had nothing to do with pleading reliance. Moreover, unlike the situation there, the plaintiffs have not pled any facts supporting a reasonable inference of reliance. The *Van Dongen* case cited by the plaintiffs also fails to support their position; it is a federal securities case[48]—and courts have explained that common law fraud claims are distinguishable from federal securities fraud claims and the presumption available for those claims is "not appropriate in the common law context."[49] The other cases cited by the plaintiffs similarly support no presumption of reliance here.[50]

The plaintiffs further argue reliance can be inferred because the Revolution marketing and the "campaign of deception waged via the MTBI Committee" came from "an authoritative source

---

[46] (Defs.' Br. 19–20, ECF No. 9575-1); *see also Mirkin v. Wasserman*, 5 Cal.4th 1082, 1092–1093 (1993) (explaining that "California courts have always required plaintiffs in actions for deceit to plead and prove the common law element of actual reliance and that actual reliance must also be pleaded and proved in cases averring fraud by omission").

[47] *In re Resorts Int'l, Inc*., 181 F.3d 505, 510 (3d Cir. 1999).

[48] *Van Dongen v. CNinsure, Inc.*, 951 F. Supp. 2d 457 (S.D.N.Y. 2013).

[49] *E.g.*, *Gartin v. S & M NuTec LLC*, 245 F.R.D. 429 (C.D. Cal. 2007) (explaining that "unlike in securities fraud class actions, reliance is not presumed for common-law fraud claims"); *Int'l Fund Mgmt. S.A. v. Citigroup, Inc*., 822 F. Supp. 2d 368, 387 (S.D.N.Y. 2011) (explaining that "[t]he requisite reliance [for common-law fraud] is actual reliance, not the presumed reliance of a Section 10(b) action" and dismissing plaintiffs' common law fraud claim because the allegation of reliance was "too conclusory to state a claim to relief").

[50] The *Varacallo* case cited by the plaintiffs addressed only the very narrow question of whether, for purposes of certifying a class action, a plaintiff must offer direct proof that an entire class relied on a representation that omitted facts to induce action by the plaintiffs. *Varacallo v. Mass. Mut. Life Ins. Co.*, 332 N.J. Super. 31, 49 (2000). Additionally, the named plaintiff in the case established he had read the misstatements and took action as a result. *Id.* Moreover, the case was decided before the supreme court in that state (New Jersey) issued a later opinion rejecting a plaintiff's contention that proof of individual reliance was unnecessary for a common law fraud claim. *Kaufman v. i–Stat Corp*., 165 N.J. 94, 97 (2000). In another case cited by the plaintiffs, *Vasquez*, the court found that actual reliance could be proved on a class-wide basis when the plaintiffs alleged that they could demonstrate that the exact same misrepresentations were made to each member of the class without individual testimony the same statement "was recited by rote to every member of the class." *Vasquez* v. *Sup. Ct.*, 4 Cal.3d 800, 811–812 (1971).

and/or [was] so pervasive that plaintiffs could not help but be exposed."[51] But the cases they cite do not support any presumption of reliance based on allegations of pervasive marketing.[52] Moreover, the plaintiffs fail to explain how those among them who were no longer playing football when Revolution marketing began could possibly have relied on any such marketing statements. The plaintiffs also allege no facts to support that Riddell was responsible for statements made by the NFL's MTBI Committee. Their argument should be rejected outright.

The plaintiffs also don't defend their failure to allege facts plausibly supporting causation on their fraud-based claims. They do not explain *how* if Riddell had told them what they claim Riddell omitted, it would have prevented their injuries.[53] While the plaintiffs argue it is inferable they "would have better protected themselves on the field, stopped playing football entirely, or sought medical attention . . ."[54], they provide nothing to support those statements. They don't explain how they would have better protected themselves, much less how that would have made any difference. That they would have stopped playing football also is not a fair inference, especially given that they also request an inference based on the plaintiffs continuing to have played football. The plaintiffs also don't explain what more medical attention they would have sought out; nor do they explain how that would have made any difference to them. Moreover, the plaintiffs cannot amend their SAMAC to allege these things with an opposition brief.[55]

---

[51] (Pls.' Br. 19, ECF No. 9823.)

[52] *See, e.g.*, *Small v. Lorillard Tobacco Co., Inc*., 679 N.Y.S. 2d 593, 599–600 (1998) (finding presumption of reliance did not apply where plaintiffs did not point to any specific advertisement or pronouncement or group of misrepresentations and there was press coverage of research on nicotine addiction; and explaining that presumption of reliance should not be presumed where a variety of factors could have influenced a class member's decision to enter into transaction); *In re Toyota Motor Corp*., No. 8:10ML012151, 2012 WL 12929769, at *20 (C.D. Cal. May 4, 2012) (relying on *Lorillard* and recognizing that in a case where plaintiffs alleged they saw the defendant's advertisements, reliance could be presumed because the defendant controlled all information about the transaction).

[53] (*See* Defs.' Br. 21 (explaining why fraud-based claims fail on issue of causation), ECF No. 9575-1.)

[54] (Pls.' Br. 19, ECF No. 9823.)

[55] *See Com. of Pa. ex rel Zimmerman v. PepsiCo., Inc*., 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (alteration in original)) (quoting *Car Carriers, Inc. v. Ford Motor Co*., 745 F.2d 1101, 1107 (7th Cir. 1984)).

The plaintiffs essentially concede that they do not plead facts to support causation—arguing that they do not need to do so because facts necessary for causation are "not susceptible to mass administrative pleading."[56] But, as Riddell has explained, master complaints are subject to the requirements of Rules 8 and 9(b), and an MDL provides no exception. Moreover, the plaintiffs could have asserted facts to support specific causation in their SAMAC-SFCs, but they did not do so.[57] The plaintiffs' SAMAC along with their SAMAC-SFCs are their operative pleadings and not meaningless procedural vehicles.[58] They contain their claims and if insufficient are subject to dismissal like any other complaint.

### 3. The plaintiffs fail to provide facts to support that Riddell owed a duty, which is required for their fraud-by-omission claim.

As Riddell explained, the plaintiffs' fraud-by-omission claims fail because they provide no facts to support that Riddell owed them a duty to warn about the medical consequences of repetitive head trauma.[59] The plaintiffs respond that choice-of-law analyses are necessary because state law "varies dramatically" on the issue of a duty to disclose, and that some states require no duty.[60] But the law does not vary in any way material to Riddell's argument, and the plaintiffs' cited law does not support their arguments.

For example, in *In re Chrysler-Dodge-Jeep*, the court discussed the law in various states on the duty to disclose in fraud-by-omission cases, demonstrating that all 16 states discussed required a duty to disclose or active concealment of material facts.[61] Additionally, in *American*

---

[56] (Pls.' Br. 20, ECF No. 9823.)

[57] *In re Zofran (Ondansetron) Prods. Liab. Litig.*, No. 1:15-md-2657-FDS, 2017 WL 1458193, at *6 (D. Mass. Apr. 24, 2017) (explaining while a master complaint cannot be expected to "include every case specific detail . . . any particularized allegation of fraud applicable only as to an individual"—for example, a claim involving specific misrepresentations—"should normally be set forth in the individual short form complaint").

[58] (*See* CMO-4, at 1 ¶ 1(a), ECF No. 98.)

[59] (Defs.' Br. 19–20, 29, ECF No. 9575-1.)

[60] (Pls.' Br. 18, ECF No. 9823.)

[61] *In re Chrysler-Dodge-Jeep Ecodiesel Mkt., Sales Prac., & Prods. Liab. Litig.*, No. 17-02777, 2018 WL 1335901, at *57–58 (N.D. Cal. Mar. 15, 2018).

*Planned Communities, Inc.*, which the plaintiffs also cited, the court merely recognized that in Pennsylvania, an insurer can be liable for fraud when it intentionally fails to disclose material information.[62] Indeed, in Pennsylvania, contrary to plaintiffs' implications, a duty to speak *is* an element of a fraud-by-omission claim.[63]

Here, the plaintiffs have not alleged facts to support active concealment by Riddell. They allege fraud by silence—that Riddell failed to notify them and the public of the dangers of latent brain disease—but such a theory requires a duty on Riddell's part to speak.[64] Yet, the plaintiffs have alleged no facts to support a duty on the part of any of the Riddell entities to provide general medical advice to them or the public. Riddell, Inc., as a product manufacturer, may owe a duty to warn of its "products' dangerous propensities."[65] The plaintiffs establish no more than that in their SAMAC.

**C.    The plaintiffs fail to show that they have adequately alleged facts to support required elements of their product liability and general negligence claims.**

**1.      The plaintiffs fail to identify any defect.**

As Riddell explained in its opening brief, the plaintiffs' failure to identify which helmet models they wore when they played football, any defect in those helmets, and what warnings they received and are at issue is fatal to all of their product liability claims.

The plaintiffs argue that they do not need to identify the helmets they wore or provide more facts regarding any alleged design defects because "all models sold by Riddell and worn by Players" were defective because they were "never designed to protect against concussive

---

[62] *Am. Planned Comtys., Inc. v. State Farm Ins. Co.*, 28 F. Supp. 2d 964, 968 (E.D. Pa. 1998).

[63] *See, e.g.*, *Protica, Inc. v. iSatori Tech., LLC*, No. 1-CV-1105, 2012 WL 1071223, at *5 (E.D. Pa. Mar. 30, 2012). Pennsylvania also recognizes the tort of fraudulent concealment where there has been intentional "active concealment" as opposed to mere silence. *Gnagey Gas & Oil Co., Inc. v. Pa. Underground Storage Tank Indem. Fund*, 82 A.3d 485, 501 (Pa. Commw. Ct. 2013).

[64] (Defs.' Br. 19, n.73 (citing cases and Restatement (Second) of Torts § 551).)

[65] (Defs.' Br. 19, n.75 (citing cases).)

16

injuries."[66] This vague, bare-bones assertion is insufficient to identify a defect across numerous helmet models over many decades as explained in Riddell's opening brief because it provides no facts explaining how or what was inadequate with any particular design.

Additionally, the plaintiffs' broad theory that Riddell's helmets were defective for not protecting against the risk of concussions makes absolutely no sense given the plaintiffs' assertions in *their* SAMAC that "NO HELMET CAN PREVENT A CONCUSSION" and that all helmets "are ineffective in decreasing the rotational forces that result in MTBI . . . and/or subclinical MTBI and/or diffuse brain injury."[67] In other words, the plaintiffs assert that their sole defect theory is that Riddell helmets are not "designed to protect against concussive injuries." But they also assert that it is impossible for any helmet to protect against concussive injuries. The plaintiffs make no attempt—despite Riddell raising the issue in its opening brief—to explain *how* if *no* helmet can prevent a concussion or brain injury, a helmet design can be defective for failure to protect against a concussion or brain injury.

The plaintiffs do not even try to explain their contradictory and incoherent defect theory. Instead, their opposition offers only deflection, asserting that "Riddell displays serious panache when it argues that its products could not be defective because no helmet can prevent a concussion, when Riddell said the exact opposite to market and sell the Revolution helmet."[68] Nothing in their statement is accurate. Riddell did not argue helmets cannot be defective—it explained why the plaintiffs fail to adequately plead a defect. And no one has claimed Riddell marketed the Revolution as preventing concussions—the plaintiffs assert Riddell marketed the helmet line as being able to reduce the incidence of concussions by 31%.

---

[66] (Pls.' Br. 21, ECF No. 9823.)
[67] (SAMAC ¶¶ 229, 275, ECF No. 8927.)
[68] (Pls.' Br. 22, ECF No. 9823.)

The plaintiffs also inaccurately assert "Riddell argues that Plaintiffs' design defect claims require an allegation of a specific feasible alternative design."[69] Riddell did not argue that all plaintiffs must plead an alternative feasible design. Rather, Riddell pointed out that it was the plaintiffs who included alternative feasible design as a theory for their design defect claim in their SAMAC—and then offered no facts to back it up. The plaintiffs fail to address Riddell's actual argument, thereby conceding they have not adequately stated an alternative feasible design.

### 2.     The plaintiffs fail to allege facts to support causation.

As Riddell explained, the plaintiffs' product liability claims fail because they provide no facts to explain how any alleged defects or warnings caused their injuries.[70] In response, the plaintiffs argue that that "had Riddell designed, manufactured, and sold a helmet that was effective at reducing or eliminating concussions, then Plaintiffs would not have suffered some or all of the concussions or sub-concussive hits they incurred."[71] But the plaintiffs don't allege that in their SAMAC, and that conclusion is not inherent in their allegations, especially given that they allege no helmet can prevent concussions.[72] The plaintiffs offer nothing to explain how the helmet designs were a proximate cause of their injuries if helmets cannot prevent the injuries they sustained.

Moreover, their conclusory statement is insufficient to support causation because they offer nothing to explain how the helmets could have been designed to prevent concussions. Similarly, the plaintiffs' conclusory argument that had Riddell warned them of defects, the plaintiffs "would not have played football without the knowledge of the risks they were taking" is not something they allege in their SAMAC, and even if it was, does not support causation. Indeed, it does not

---

[69] (*Id*.)
[70] (Defs.' Br. 24–30.)
[71] (*Id*.)
[72] (SAMAC ¶¶ 229, 275, ECF No. 8927.)

explain how or why a different warning would have prevented their injuries.[73]

### 3. The plaintiffs fail to allege facts to support duty.

As explained above with respect to the plaintiffs' fraud claims, the plaintiffs offer nothing to support expanding the duties of a product manufacturer to warn about the medical consequences of an injury. The plaintiffs argue that "Riddell assumed a duty to act . . . [when] it voluntarily undertook to study and report on the neurological risks to NFL players via the fraudulent MTBI Committee."[74] But their SAMAC is devoid of facts plausibly supporting this assertion. Instead, in their SAMAC, other than conclusorily with no facts, the plaintiffs allege that the NFL, not Riddell, created the MTBI Committee to research and study brain injuries in NFL players.[75] And while they claim in their opposition brief that "Riddell was heavily involved with the fraudulent MTBI Committee," they point to no facts to support that statement.[76] Indeed, the paragraphs of the SAMAC they cite in support are allegations that a committee member worked as a defense expert for Riddell in product liability litigation, and a conclusory and confusing statement that "RIDDELL benefitted from and orchestrated NFL Charities' propagation of self-serving, industry-funded and falsified research through the MTBI Committee to support its often ridiculed positions on exposure to repetitive head-trauma."[77] The plaintiffs' argument on this point fails.

On the issue of duty, the plaintiffs also assert that "Riddell argues that publicly available information obviated the need for any warnings."[78] Again, they misconstrue Riddell's arguments. Riddell argued: "[T]he plaintiffs plead no facts plausibly supporting that the defendants would have had any reason to believe the players did not know about, or have access to—or their trainers,

---

[73] (Defs.' Br. 28, n. 111.)
[74] (Pls.' Br. 23, ECF No. 9823.)
[75] (SAMAC ¶ 169, ECF No. 8927.)
[76] (Pls.' Br. 6, ECF No. 9823.)
[77] (*Compare id.* at 6 (citing SAMAC ¶¶ 174–76, 185, 196), *with* SAMAC ¶¶ 174–76, 185, 196.)
[78] (Pls.' Br. 22, ECF No. 9823.)

team physicians, personal physicians, and other health care providers did not have access to—the publicly available information they cite about the effects of concussive and sub-concussive injury such that the Riddell defendants could reasonably be argued to have a duty to warn."[79] In their opposition, the plaintiffs do not dispute that they lack any facts on this issue.

### 4.       The plaintiffs' negligent marketing claim fails.

Riddell showed that the plaintiffs' "negligent marketing" claim fails for the same reasons as their warnings and negligent misrepresentation claims—because they fail to state facts plausibly supporting causation or duty.[80] It also showed that the plaintiffs' allegations as to the Revolution's marketing provide no support for a negligent marketing claim given that none of the player-plaintiffs allege they wore a Revolution-line helmet or relied on any marketing for it, and further that any such marketing couldn't possibly be relevant to the 141 of 205 player-plaintiffs asserting negligent marketing claims who ended their football careers before any Revolution marketing occurred. The plaintiffs ignore these points in their opposition brief, thereby conceding them.

### D.      The plaintiffs fail to show how the SAMAC survives when it improperly lumps all of the Riddell entities together with each other and at times, with the NFL.

Riddell explained that the Court should dismiss the plaintiffs' SAMAC for the sole reason that it fails to put the defendants on notice of which allegations pertain to which defendants. The plaintiffs' response is unclear, but to the extent they argue that they fail to distinguish between the defendants because information that would allow them to do so is within the defendants' exclusive control, their argument is unsupported. The plaintiffs offer no explanation as to what information is within the Riddell defendant's exclusive control that would enable them to identify which defendants were involved in which alleged conduct, and they provide nothing to support they are

---

[79] (Defs.' Br. 29, ECF No. 9575-1.)
[80] (*Id*. 30–32.)

entitled to ignore the separate legal existence of the defendants. Further, they simply ignore the ample publicly available information that the various Riddell entities did not exist at every time during the more than 60 years their claims span.[81] The law does not support their approach here.[82]

   **E.    The plaintiffs fail to rebut Riddell's argument that their SAMAC-SFCs lack the requisite facts to support their claims.**

   Riddell showed the plaintiffs' SFC template is deficient, including because it does not require them to identify the helmets the plaintiffs wore or warnings they received, how they acquired their helmets, information regarding their injuries, or other necessary facts to put Riddell on proper notice of the claims against it.[83] The plaintiffs do not refute this. The plaintiffs likewise ignore Riddell's showing as to the impropriety of their shotgun pleading incorporating all prior allegations into every count in their complaint. Their silence on these issues concedes them.

**III.    The plaintiffs fail to rebut Riddell's showing that the vast majority of their claims are untimely, and their claims are not saved by any tolling doctrine or by relation back.**

   Riddell's opening brief showed that the vast majority (at least) of the plaintiffs' claims are facially time barred, given that their head injuries necessarily occurred more than four years before even the first of them initiated this litigation.[84] In response, the plaintiffs primarily argue that the Court cannot address this argument without performing a detailed choice-of-law analysis.[85] Yet they fail to explain why that would be necessary given they neither deny nor rebut Riddell's showing that, with only minimal exceptions, the limitations periods applicable to their claims are (at most) four years on their personal injury claims, regardless of the underlying legal theory.[86]

---

[81] (*See, e.g.*, Request Judicial Notice in Supp. of Mot. to Sever, ECF Nos. 3594, 3594-1; Mot. to Sever, ECF No. 3593; Order n.2 (later vacated by Order, ECF No. 6740) (acknowledging that "certain Riddell Defendants may not have been in existence at the time some plaintiffs played in the NFL"), ECF No. 6706.)
[82] (Defs.' Br. 32, nn.127, 128 (citing cases), ECF No. 9575-1.)
[83] (Defs.' Br. 35, ECF No. 9575-1.)
[84] (*Id.* at 36–42.)
[85] (Pls.' Br. 24, ECF No. 9823.)
[86] (*See* Defs.' Br. 36–37, ECF No. 9575-1.)

Instead, the plaintiffs persist in the same tactics that pervade their entire brief, including ignoring the law and mischaracterizing Riddell's arguments. For example, they ask the Court to consider "the absurdity of Riddell's citation (in footnote 141) of a 1970 intermediate Michigan appellate court decision for the proposition that *every state* would apply a 'personal injury' four-year statute of limitations to a fraud claim."[87] In truth, Riddell cited that authority along with multiple other sources for the general proposition that limitations periods typically track the nature of the alleged harm done.[88] The plaintiffs provide nothing to rebut that statement or principle, nor do they refute Riddell's showing that—with the exception of four states—the statutes of limitations for personal injury claims such as the plaintiffs is four years or less.[89]

### A.   The plaintiffs' boilerplate assertion of discovery-rule tolling fails to support application of that principle to save their facially time-barred claims.

Riddell showed that the plaintiffs' one-paragraph, boilerplate discovery-rule allegation was insufficient, as it failed to provide any well-pled facts showing how and when the alleged delayed discovery happened, and why the plaintiffs were unable to discover their claims earlier.[90] The plaintiffs' various attempts to rebut this showing fail for several reasons.

First, the plaintiffs protest that they do not need to affirmatively plead their claims are timely, and that the Court cannot "allocate the burden of invoking the discovery rule" onto them.[91] This argument is accurate in a general sense, but it ignores that it was *the plaintiffs* who invoked the discovery rule, in implicit acknowledgement that their claims are facially time barred.[92] In other words, their invocation of the discovery rule acknowledges that "the applicability of the

---

[87] (Pls.' Br. 24, ECF No. 9823.)
[88] (Defs.' Br. 36 & n.141, ECF No. 9575-1.)
[89] (*Id.* 36 & n.140.)
[90] (*Id.* 38–39.)
[91] (Pls.' Br. 25, ECF No. 9823.)
[92] *See In re Processed Egg Prod. Antitrust Litig.*, No. 08-MD-02002, 2011 WL 5980001, at *2 (E.D. Pa. Nov. 30, 2011) (dismissing for lack of facts sufficient to support tolling where, "[o]stensibly anticipating ruffled feathers over time-bar issues," plaintiffs had attempted "to preempt this defense by invoking the fraudulent concealment doctrine")).

discovery rule *is* . . . evident on the face of the complaint . . . ."[93] Their response brief only further confirms this, where they assert that "the Complaint clearly alleges the discovery rule applies."[94] Having attempted to invoke the discovery rule, it was incumbent on the plaintiffs to plead facts sufficiently supporting it. They failed to do so. Instead, they effectively pleaded themselves out of court by alleging facts sufficient to establish Riddell's limitations defense.[95]

Indeed, their allegedly injurious head impacts necessarily occurred during their football careers, which in the vast majority of cases ended many years or decades ago. If, as the plaintiffs conclusorily assert, their claims did not accrue and the statute of limitations was tolled beyond the end of their football careers, then they must allege facts to support such tolling.[96] They don't.

Second, the plaintiffs assert their actions are solely based on purported "latent brain disease" that only recently manifested.[97] Putting aside the lack in either the SAMAC or the SAMAC-SFC of any well-pled facts as to this alleged delayed manifestation with respect to any individual plaintiffs, their argument ignores that their complaint asserts Riddell is strictly liable for design defect because its helmets supposedly failed "to protect against concussive injuries."[98] The plaintiffs further allege their helmets were unmerchantable because they failed to protect the

---

[93] *See Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014).

[94] (Pls.' Br. 25 n.8, ECF No. 9823.) In their footnote 8, the plaintiffs also attempt to distinguish one of Riddell's cited cases by characterizing the SAMAC as merely an "administrative pleading." (*Id.*) The plaintiffs are unclear what they mean by this. However, their comment ignores that by operation of numerous Court orders, the SAMAC along with an individual's SAMAC-SFC supersede any plaintiff's prior complaint and together form the operative and controlling complaint for that plaintiff. Thus, to the extent they are suggesting that they need not comply with their obligations to properly plead the discovery rule should they wish to rely on it, they are incorrect.

[95] *E.g., Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) (citing *Hollander v. Brown,* 457 F.3d 688, 691 n.1 (7th Cir. 2006), as supporting that dismissal may be appropriate when "the plaintiff effectively pleads herself out of court by alleging facts that are sufficient to establish the defense").

[96] *Swietlowich v. Bucks County*, 610 F.2d 1157, 1162 (3d Cir. 1979) (stating while reviewing a motion to dismiss, that "[w]henever suit is filed after the limitations period, as it has in this case, the burden is on the plaintiff to establish that the statute has been tolled"); *Brandow Chrysler Jeep Co. v. DataScan Techs.*, 511 F. Supp. 2d. 529, 535 (E.D. Pa. 2007) (explaining that to survive the motion plaintiffs must "allege facts tending to show that they were unable to identify their claim through the exercise of reasonable diligence").

[97] (Pls.' Br. 25, ECF No. 9823.)

[98] (SAMAC ¶ 382(f), ECF No. 8927.)

players "from brain injury and the cognitive effects of concussive injury."[99] Likewise, they allege Riddell failed to warn them of the "means available to reduce and/or minimize the risk of concussive brain injuries when using their helmets."[100] The plaintiffs ignore these allegations. Regardless, the limitations periods on their claims based on such concussive injuries—which they maintain they should not have sustained—began to run when they sustained those concussive injuries.[101] And that necessarily occurred (at the very latest) when their playing careers ended, which, as Riddell showed was more than four years ago for the vast majority of the plaintiffs.

The plaintiffs' "latent brain disease" position is further eroded by their concession that such an argument may apply, at most, to only "some of the Plaintiffs."[102] This concession only highlights the insufficiency of their attempts to invoke delayed discovery, given that they fail even to identify as to whom among them the discovery rule purportedly applies. Instead, they attempt to shield their time-barred claims from dismissal by obfuscation. Further, the plaintiffs' reliance on *Daley* is misplaced. First, the *Daley* case was an asbestos-exposure case and the plaintiffs have stated no facts and provided no explanation as to why the ruling in that case is relevant to them.[103] Second, as the NFL pointed out in its briefing, *Daley* concerned the "separate disease rule" under Pennsylvania law, which allows a plaintiff to bring a second suit if she or he "is diagnosed with a malignant disease, and later diagnosed with a separate and distinct malignant disease caused by the same asbestos exposure."[104] Here, the SAMAC alleges concussive brain injury that has or can develop into additional symptoms and diseases; not separate and distinct injuries.[105]

---

[99] (*Id.* ¶ 398.)

[100] (*Id.* ¶ 388.)

[101] *E.g.*, *Schmidt v. Skolas*, 770 F.3d 241, 250 (3d Cir. 2014).

[102] (Pls.' Br. 25 ("Further, at the time of the head impacts, some of the Plaintiffs did not suffer from the devastating disease that occurred long after the Players had retired from professional football."), ECF No. 9823.)

[103] *Daley v. A.W. Chesterton, Inc.*, 37 A.3d 1175 (Pa. 2012).

[104] *Id.* at 357–58.

[105] (SAMAC ¶ 366 (alleging Riddell failed to disclose "risks of brain injuries caused by concussive and subconcussive impacts, including, but not limited to, the resulting negative neurological effects and conditions, including the

Third, the plaintiffs' reliance on a summary-judgment-denial case for their assertion that application "of the discovery rule ordinarily is a question of fact" misses the mark.[106] Riddell is not moving for summary judgment. Rather, this motion addresses the (in)sufficiency of the plaintiffs' attempt to invoke the discovery rule under Rules 8 and 12(b)(6). As a matter of pleading, and before they could ever hope to present the delayed-discovery issue to the jury, the plaintiffs must plead sufficient facts plausibly supporting such delayed discovery. Riddell cited law for this requirement,[107] none of which the plaintiffs refute. Yet neither of the plaintiffs' pleadings provide any of the required information, and instead provide only one generic, boilerplate paragraph.[108]

Fourth, the plaintiffs ignore the facts Riddell pointed out from their SAMAC that negate their attempted boilerplate invocation of delayed discovery. For example, Riddell referred to the plaintiffs' citations to "publicly available studies dating back many years as supporting a link between repetitive head impacts and brain injuries."[109] Nowhere in their response on the discovery rule do the plaintiffs explain why they could not have discovered sooner this and other publicly available information cited throughout their complaint.[110]

**B.      The plaintiffs' rote assertion of alleged fraudulent-concealment tolling fails.**

As with the discovery rule, Riddell showed that the plaintiffs failed to plead sufficient facts plausibly supporting their attempted invocation of fraudulent-concealment tolling.[111] The plaintiffs likewise fail to rebut Riddell's showing on this issue. Indeed, the plaintiffs' shortcomings on this

---

increased risk of developing one or more serious, latent, neurodegenerative diseases or conditions including, but not limited to, CTE, and symptoms therefrom including but not limited to, inter alia, dementia, ALS . . ."), ECF No. 8927.)
[106] (*See* Pls.' Br. 25–26, ECF No. 9823.)
[107] (*E.g.*, Defs.' Br. 39 & nn.155, 157, ECF No. 9575-1.)
[108] (SAMAC ¶ 27, ECF No. 8927.)
[109] (Defs.' Br. 39, ECF No. 9575-1.)
[110] *NECA-IBEW Pension Tr. Fund v. Lewis*, 607 F. App'x 79, 81 (2d Cir. 2015) (affirming dismissal where "a reasonably diligent plaintiff would have had sufficient information" from publicly available sources to be on notice); *Migliori v. Boeing N. Am., Inc.*, 97 F. Supp. 2d 1001, 1011 (C.D. Cal. 2000) ("Where publicity and information concerning an issue are generally available, the Court may impute knowledge of that information to a plaintiff.").
[111] (Defs.' Br. 40–41, ECF No. 9575-1.)

issue are even more glaring given that fraudulent-concealment tolling requires the plaintiffs to plead the supporting facts *with particularity*.[112] The plaintiffs have failed to plead any facts supporting fraudulent-concealment tolling, much less with the requisite particularity.

As with their attempted defense of the discovery rule, the plaintiffs' defense as to fraudulent-concealment tolling ignores Riddell's arguments and showings.[113] For example, Riddell explained that the plaintiffs failed to provide sufficiently pled, particularized facts showing "some fraudulent concealment, some active conduct by the defendant *above and beyond* the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing on time," and that they instead relied merely on the same allegations of conduct underlying their fraud- and conspiracy-based claims.[114] The plaintiffs' response not only doesn't refute this requirement, it actually confirms Riddell's point. Indeed, rather than pointing to any alleged conduct by Riddell "above and beyond the wrongdoing upon which" they base their claim, the plaintiffs confirm they rely solely on the same alleged conduct on which they base their fraud claims.[115]

The plaintiffs also ignore and thereby fail to rebut Riddell's showing that their SAMAC affirmatively disproves their assertions of supposed fraudulent concealment—for example, by repeatedly citing the publicly available medical literature containing the very information they assert was fraudulently concealed.[116] Similarly, the plaintiffs' assertion that their claims were tolled until "at Minimum, 2010"[117] is further proved false by the declaration testimony they

---

[112] (*Id.* at 40 (citing cases)); *see also In re Processed Egg Prod. Antitrust Litig.*, No. 08-MD-02002, 2011 WL 5980001, at *3 (E.D. Pa. Nov. 30, 2011) ("To invoke equitable tolling through fraudulent concealment at the pleading stage. . . a plaintiff must allege particularized facts sufficient to suggest '(1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to her lack of reasonable due diligence.'").

[113] (*See* Pls.' Br. 26–28, ECF No. 9823.)

[114] (Defs.' Br. 41–42, ECF No. 9575-1.)

[115] (Pls.' Br. 27, ECF No. 9823.)

[116] (*See* Defs.' Br. 40–42, ECF No. 9575-1.)

[117] (Pls.' Br. 26, ECF No. 9823.)

submitted asserting that the supposed architect of this litigation—Jason Luckasevic—was prepared to file these actions *in 2007*.[118] The plaintiffs don't acknowledge this damning admission.

As with their response on the discovery rule, the plaintiffs similarly misplace their reliance on cases discussing when and how the sufficiency of evidence in support of fraudulent-concealment tolling should be judged.[119] For example, they cite a decision from this Court observing that trial courts should "leave material factual issues regarding tolling for the jury."[120] But in that case, this Court was addressing whether to grant summary judgment, not the sufficiency of the complaint's allegations. Unlike in that case, the issue here is whether, at this preliminary pleading phase, the plaintiffs have pled sufficient particularized facts as required to support their attempt to invoke fraudulent-concealment tolling. They have not.

The only conduct by Riddell within the limitations period to which the plaintiffs point is the Revolution marketing and the "31% concussion-reduction claim."[121] While the plaintiffs baldly label that marketing fraudulent, they fail to explain how it "actively misled" them, much less how it prevented them "from recognizing the validity" of their claims "within the limitations period."[122]

The plaintiffs further point to no well-pled, particularized facts satisfying the requirement to show that their ignorance as to their alleged claims was not attributable to their "lack of reasonable due diligence in attempting to uncover the relevant facts."[123] The only purported active concealment by Riddell that they point to is the Revolution marketing campaign, which ran for a few years beginning in 2006.[124] They fail to explain how marketing the Revolution helmets as providing a 31% reduction in the incidence of concussions caused any players "to relax vigilance

---

[118] (Defs.' Br. 41, ECF No. 9575-1.)

[119] (*See* Pls.' Br. 27–28, ECF No. 9823.)

[120] (*Id.* (quoting *Hoppe v. SmithKline Beecham Corp.*, 437 F. Supp. 2d 331, 336 (E.D. Pa. 2006) (Brody, J.)).)

[121] (Pls.' Br. 26, ECF No. 9823.)

[122] *See, e.g.*, *Cetel v. Kirwan Fin. Group, Inc.*, 460 F.3d 494, 509 (3d Cir. 2006).

[123] *Id.*

[124] (SAMAC ¶¶ 284, 319, ECF No. 8927.)

or deviate from the right of inquiry" as to their alleged claims—let alone with respect to those former players who never could have worn a Revolution-line helmet, nor could have seen any marketing for it because they retired years or decades earlier.[125]

### C.   Relation back is inapplicable.

Riddell explained that the claims of all but four[126] of the plaintiffs pursuing fraud and conspiracy are unquestionably time barred because they do not relate back.[127] In response, the plaintiffs raise several arguments, none of which have merit.

First, the plaintiffs assert that their claims relate back because their fraud- and conspiracy-based claims share "a common core of operative facts" with their AMAC.[128] But, they must show their amended claims relate back,[129] and that "the already commenced action sufficiently embraces the amended claims so that defendants are not unfairly prejudiced" by the assertion of claims otherwise time-barred.[130] Moreover, when amendments "significantly alter the nature of the proceeding," relation back is inappropriate.[131] This is why, in similar circumstances wherein plaintiffs have alleged merely product liability claims, courts have rejected attempts to relate back fraud/conspiracy-based allegations in an amendment.[132] Relation back is also improper where a plaintiff affirmatively abandons a liability theory.[133] In response, the plaintiffs mention only their original master complaint—the MAC—while they ignore that while their MAC contained fraud

---

[125] *Montanez v. Sec'y Pa. Dep't of Corr.*, 773 F.3d 472, 481 (3d Cir. 2014) (citations omitted).

[126] These are the plaintiffs whose careers ended after 2012. There are two additional plaintiffs not previously identified whose careers ended after 2012. They are Kevin Bradley Burnett and Adrian Lynn Robinson. The Riddell defendants reserve the right to pursue and maintain all defenses to these and other individual plaintiff claims.

[127] (SAMAC at 37–38, ECF No. 9575-1.)

[128] (Pls.' Br. 28, ECF No. 9823.)

[129] *See Ladyansky v. Cooper Wheelock, Inc.*, No. 11-CV-102, 2012 WL 1071187, at *4 (E.D. Pa. Mar. 29, 2012).

[130] *Nelson v. Cty. of Allegheny*, 60 F.3d 1010, 1014 (3d Cir. 1995).

[131] *Glover v. F.D.I.C.*, 698 F.3d 139, 146 (3d Cir. 2012) (citations omitted).

[132] *See, e.g., Corcoran v. N.Y. Power Auth.*, 935 F. Supp. 376, 392–93 (S.D.N.Y. 1996); *Payne v. A.O. Smith Corp.*, 578 F. Supp. 733, 737 (S.D. Ohio 1983).

[133] *See Tese-Milner v. Diamond Trading Co.*, No. 04 CIV. 5203, 2011 WL 4501336, at *8 (S.D.N.Y. Sept. 29, 2011).

and conspiracy claims against Riddell, their AMAC affirmatively *abandoned* those claims.[134] And they ignore that the law precludes reliance on relation back to resurrect long-abandoned claims.

Second, the plaintiffs assert that because the Court granted them leave to amend, the Court "necessarily rejected" Riddell's arguments, and, as a result, that the SAMAC "was an appropriate amendment to earlier-filed complaints is now the law of the case."[135] This is an unsupported leap and misconstrues the law-of-the-case doctrine. Primarily, that the Court granted leave under Rule 15 over Riddell's objection means nothing. Courts routinely overrule oppositions to leave to amend in favor of addressing any such concerns on a Rule 12 motion or otherwise. Indeed, this is often seen as consistent with the rule's instruction that courts should "freely give leave,"[136] and leave should be "liberally granted,"[137] In addition, the Court's one-sentence order[138] made no ruling on the merits as to relation back or the propriety of the plaintiffs' attempts to resurrect their abandoned claims. The plaintiffs' attempt to read into that limited order any such merits resolution is merely wishful thinking. Their attempt to invoke "law of the case" is therefore misplaced.[139]

Third, the plaintiffs' assertion there are "unique circumstances" that should allow them to resurrect their abandoned claims is likewise unfounded.[140] For example, they assert they were "ready to proceed against both the NFL and Riddell in 2012"[141]—but in 2012, their operative complaint omitted any fraud and conspiracy claims against Riddell. The plaintiffs also ignore that the SFC process provided an opportunity to write in additional claims, yet none of the plaintiffs

---

[134] (*See* Pls.' Br. 28, ECF No. 9823.)

[135] (*Id.* at 28–29.)

[136] Fed. R. Civ. P. 15(a)(2).

[137] *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

[138] (ECF No. 8451.)

[139] The plaintiffs' own case warns against establishing the law of the case on an issue not fully addressed, emphasizing that "courts may refuse to infer decisions on issues that were barely presented, or from summary decisions." *Ogbudimkpa v. Ashcroft*, 342 F.3d 207, 210 n.7 (3d Cir. 2003); *see also Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 848 n. 6 (6th Cir. 2000) (refusing to infer the law of the case).

[140] (Pls.' Br. 29, ECF No. 9823.)

[141] (*Id.*)

with timely SFCs wrote in the fraud and conspiracy claims they attempt to pursue now. And the plaintiffs don't explain why, even with the NFL settlement, they sat on their hands for over five years before seeking leave to pursue long-abandoned fraud- and conspiracy-based claims.

## IV.    The plaintiffs' lack of response as to those who failed to file SAMAC-SFCs as ordered requires dismissal of those actions.

Riddell provided a list of plaintiffs[142] who abandoned their claims by not filing SAMAC-SFCs and explained why their claims should be dismissed with prejudice for failure to comply with the Court's order requiring SAMAC-SFCs by December 4.[143] The plaintiffs have not contested the request for dismissal with prejudice of all 580 plaintiffs on Riddell's updated list.[144]

## V.    The plaintiffs fail to rebut that they lack facts sufficient to support punitive damages.

Other than in one footnote, in which the plaintiffs assert they adequately allege they are entitled to punitive damages because they state claims for fraud,[145] the plaintiffs do not address Riddell's arguments that they must set forth sufficient facts—as opposed to conclusory assertions—to support a plausible showing of intentional, reckless, or malicious wrongdoing.[146] They also ignore that they contradict their own assertions of willful and wanton conduct by their description of Riddell's decades-long history of innovation in helmet design and safety features.

## CONCLUSION

The SAMAC is the plaintiffs' third attempted complaint against Riddell. Because the plaintiffs have shown with their opposition that after all this time they are still unable to state plausible claims against Riddell, and they fail to explain how they would do so in an amendment, their SAMAC should be dismissed with prejudice and without leave to amend.

---

[142] (Defs.' Br., App'x 4, ECF No. 9575-5.)
[143] (Defs.' Br. 43–44, ECF No. 9575-1.)
[144] Riddell provided an updated list of the 580 plaintiffs who did not file SAMAC-SFCs. (Appx. 4 (amended), ECF No. 9729-1.) For convenience, Riddell attaches that updated appendix to this reply brief.
[145] (Pls.' Br. 21 n.7, ECF No. 9823.)
[146] (*See* Defs.' Br. 34, n.132, ECF No. 9575-1.)

Dated: May 14, 2018

Respectfully Submitted,

*/s/ Paul G. Cereghini*_____

Paul G. Cereghini
Thomas C. Howard
BOWMAN AND BROOKE LLP
2901 N. Central Avenue
Suite 1600
Phoenix, AZ 85012
Telephone: (602) 643-2300
Facsimile: (602) 248-0947
paul.cereghini@bowmanandbrooke.com
thomas.howard@bowmanandbrooke.com

Robert L. Wise
Eden M. Darrell
BOWMAN AND BROOKE LLP
901 E. Byrd Street, Suite 1650
Richmond, VA 23219
Telephone: (804) 649-8200
Facsimile: (804) 649-1762
rob.wise@bowmanandbrooke.com
eden.darrell@bowmanandbrooke.com

Thomas P. Wagner
MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN
2000 Market St.
Suite 2300
Philadelphia, PA 19103
Telephone: (215) 575-4562
Facsimile: (215) 575-0856
tpwagner@mdwcg.com

Attorneys for Defendants Riddell, Inc., All American Sports Corporation, Riddell Sports Group, Inc., BRG Sports, Inc. (f/k/a Easton-Bell Sports, Inc.), BRG Sports, LLC (f/k/a Easton-Bell Sports, LLC), EB Sports Corp., and BRG Sports Holdings Corp. (f/k/a RBG Holdings Corp.).

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 14, 2018, the foregoing was electronically filed and served via ECF on all counsel of record registered to receive service via the Court's CM/ECF system.

_\_/s/ Paul G. Cereghini_____