# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS PENDING AND ALL CLAIMS ASSERTED AGAINST ANY RIDDELL DEFENDANT | **Hon. Anita B. Brody** |

**RIDDELL'S[1] REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE PLAINTIFFS' SECOND AMENDED MASTER ADMINISTRATIVE LONG-FORM COMPLAINT BASED ON LMRA § 301 PREEMPTION**

---

[1] For convenience only, "Riddell" refers collectively to the following defendants: Riddell, Inc., All American Sports Corporation, Riddell Sports Group, Inc., BRG Sports, Inc. (f/k/a Easton-Bell Sports, Inc.), BRG Sports, LLC (f/k/a Easton-Bell Sports, LLC), EB Sports Corp., and BRG Sports Holdings Corp. (f/k/a RBG Holdings Corp.).

# TABLE OF CONTENTS

Tab

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 4

I.   The plaintiffs' attempts to evade preemption analysis on procedural grounds fail. .......... 4

  A.   The plaintiffs misstate the standards applicable to this preemption analysis. ................................................................................................... 4

  B.   A detailed and full choice-of-law analysis is not required before dismissing the plaintiffs' claims as preempted. ..................................................... 6

  C.   Matching individual plaintiffs to CBA provisions is unnecessary for this preemption analysis at this time. ............................................................ 7

  D.   Riddell's motion is timely and can be decided before discovery. ......................... 8

II.   The plaintiffs' reply fails to rebut Riddell's showing that their claims are preempted. ................................................................................................... 9

  A.   Resolving the plaintiffs' negligence-based claims requires interpretation of the CBAs. ...................................................................................... 10

  B.   Resolving the plaintiffs' fraud-based claims requires interpretation of the CBAs. ....................................................................................... 14

  C.   The plaintiffs' derivative claims are similarly preempted. ................................. 18

  D.   The plaintiffs fail to rebut other aspects of their claims that require interpretation of the CBAs and thereby trigger preemption. .............................. 19

III.   The plaintiffs' attempts to distinguish Riddell's cases fail, while the cases the plaintiffs cite are themselves materially distinguishable and don't support their arguments. .............................................................................................. 20

  A.   The plaintiffs' attempt to distinguish Riddell's cases rests on a fundamentally incorrect premise. .................................................................... 20

  B.   The plaintiffs' own cited case law is itself distinguishable and otherwise unhelpful. ..................................................................................... 21

CONCLUSION ............................................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**

*Aetna, Inc. v. Health Diagnostic Lab. Inc.*
No. CV 15-1868, 2015 WL 9460072 (E.D. Pa. Dec. 28, 2015) ............................................. 16

*Allis-Chalmers Corp. v. Lueck*
471 U.S. 202 (1985) ........................................................................................... 4, 5, 11, 21

*Atwater v. Nat'l Football League Players Ass'n*
626 F.3d 1170 (11th Cir. 2010) ............................................................................... 15

*Ballard v. Nat'l Football League Players Ass'n*
123 F. Supp. 3d 1161 (E.D. Mo. 2015) ................................................................... 7, 9

*Beidleman v. Stroh Brewery Co.*
182 F.3d 225 (3d Cir. 1999) ................................................................................... 5, 12

*Benavidez v. Sandia National Laboratories*
212 F. Supp. 3d 1039 (D.N.M. 2016) ................................................................... 23, 24

*Boogaard v. Nat'l Hockey League*
211 F. Supp. 3d 1107 (N.D. Ill. 2016) ......................................................................... 12

*Caterpillar Inc. v. Williams*
482 U.S. 386 (1987) .................................................................................................. 11

*Duerson v. Nat'l Football League, Inc.*
No. 12 C 2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012) ......................................... passim

*Givens* v. *Tenn. Football, Inc.*
684 F. Supp. 2d 985 (M.D. Tenn. 2010) ........................................................................ 9

*Green v. Bimbo Bakeries USA*
77 F. Supp. 3d 980 (N.D. Cal. 2015) ........................................................................... 24

*Green v. Pro Football, Inc.*
31 F. Supp. 3d 716 (D. Md. 2014) ............................................................................... 23

*Gulley v. Gen. Motors, LCC*
285 F. Supp. 3d 1047 (M.D. Tenn. 2018) ..................................................................... 24

*Holmes v. Nat'l Football League*
939 F. Supp. 517 (N.D. Tex. 1996) ............................................................................... 9

*In re National Hockey League Players' Concussion Injury Litigation*
189 F. Supp. 3d 856 (D. Minn, 2016) ........................................................................... 23

*Kline v. Security Guards, Inc.*
386 F.3d 246 (3d Cir. 2004) ......................................................................................... 21

*LaMeau ex rel. Crnkovich v. City of Royal Oak*
No. 289947, 2012 WL 3590043 (Mich. Ct. App. Aug. 21, 2012) ....................................... 7

*Levy v. Verizon Info. Servs., Inc.*
498 F. Supp. 2d 586 (E.D.N.Y. 2007) ............................................................................ 9

*Maxwell, et al. v. Nat'l Football League, et al.*
No. 2:11-cv-08394 (C.D. Cal. Jul. 19, 2011) ........................................................... 13, 14

*Nat'l Football League Players Ass'n*
123 F. Supp. 3d 1161 (E.D. Mo. 2015) ........................................................................... 7

*Oliver v. Riddell, Inc.*
No. 1:16-cv-04760, 2016 WL 7336412 (N.D. Ill. July 19, 2016) ................................... 21, 22

*Pagano v. Bell Atlantic-New Jersey, Inc.*
988 F. Supp. 841 (D.N.J. 1997) ..................................................................................... 9

*Roberts v. Estate of Barbagallio*
  531 A.2d 1125 (Pa. Super. Ct. 1987) ........................................................................... 16
*Rosario v. First Mgmt. LLC*
  247 F. Supp. 3d 560 (E.D. Pa. 2017) ................................................................. 5, 9, 12
*Sherwin v. Indianapolis Colts, Inc.*
  752 F. Supp. 1172 (N.D.N.Y. 1990) ........................................................................... 15
*Smith v. Houston Oilers Inc.*
  87 F.3d 717 (5th Cir. 1996) ......................................................................................... 9
*Smith v. Nat'l Football League Players Ass'n*
  No. 4:14CV01559, 2014 WL 6776306 ....................................................................... 12
*Stringer v. Nat'l Football League*
  474 F. Supp. 2d 894 (S.D. Ohio 2007) ........................................................ 5, 10, 14, 23
*Williams v. Nat'l Football League*
  582 F.3d 863 (8th Cir. 2009) ..................................................................................... 15

**Other Authorities**
Restatement (Second) of Torts § 550 (1977) ................................................................ 16

# INTRODUCTION

In its opening brief, Riddell showed that the plaintiffs' claims against it in their Second Amended Master Administrative Complaint[2] are all preempted.[3] In particular, Riddell showed that the entirety of the plaintiffs' complaint asserts a contrived and far-fetched purportedly decades-long conspiracy between the NFL defendants and Riddell—one in which these parties were supposedly inextricably intertwined such that each is liable for all of the actions of the other. Riddell also both showed, as did the NFL, that the plaintiffs' claims depend on elements of alleged duty and reasonable reliance, which are impossible to assess without interpreting various provisions of the Collective Bargaining Agreements (CBAs) in effect when the players sustained their alleged head injuries.[4] Riddell further showed that because the plaintiffs have chosen to frame their complaints such that there is no daylight between the NFL and Riddell, they cannot separate Riddell from the NFL when it comes to preemption.

In their response,[5] the plaintiffs offer only a mass of inconsistent and contradictory arguments, while at the same time ignoring many of Riddell's arguments and the governing law. For example, the plaintiffs criticize Riddell for referring to and relying on the NFL's arguments and briefing in certain spots.[6] Yet, in their next breath, they revert to the pattern and practice in their SAMAC-Riddell of tying the NFL at the hip with Riddell as alleged co-conspirators and joint tortfeasors, working at all times in lockstep.[7]

---

[2] Hereafter, the "SAMAC-Riddell," ECF No. 8927.

[3] (Riddell's Br. in Supp. of Mot. to Dismiss the Pls.' Second Am. Master Admin. Long-Form Compl. Based on LMRA § 301 Preemption ("Defs.' Br."), ECF No. 9574-1.)

[4] (*Generally id.*)

[5] (*Generally* Pls.' Mem. of Law in Opp'n to the Riddell Defs.' Mot. to Dismiss Pls.' Second Am. Master Admin. Long-Form Compl. Based on LMRA § 301 Preemption ("Pls.' Br."), ECF No. 9825.)

[6] (*E.g.*, *id.* at 1.)

[7] (*E.g.*, *id.* at 2–4, 6–7.)

Similarly, the plaintiffs assert that Riddell fails to identify specific CBA provisions that require interpretation and thereby mandate preemption.[8] Yet their argument ignores that Riddell specifically cited numerous such provisions,[9] and referred to and relied on the NFL's brief for even more.[10] Indeed, later in their response, the plaintiffs acknowledge this—and thereby implicitly concede the error of their earlier assertion to the contrary.[11]

The plaintiffs also argue that Riddell failed to identify any relevant "actual dispute" over any CBA provisions.[12] This is incorrect on its face, as Riddell provided numerous examples of unavoidable disputes that would require interpretation of particular CBA provisions.[13] Then, the plaintiffs contradict their own argument by including a chart of the plaintiffs' proffered understanding of two dozen CBA provisions cited by both the NFL and Riddell as requiring interpretation.[14] For example, while plaintiffs claim they weren't provided medical information concerning the potential risks of head impacts, many of the cited CBA provisions specifically address requirements for medical providers, trainers, and club physicians, requirements for ambulances and physical examinations, and the establishment of committees for the purpose of evaluating player health and safety (among others).[15] Yet as to each and every one of these and other CBA provisions, the plaintiffs offer their one-sided interpretations, concluding that these provisions all have "[n]othing to do with cover-up of known long-term and serious neurological

---

[8] (*Id.* at 24.)

[9] (*E.g.*, Defs.' Br. 2, 5–8 nn. 18–32, ECF No. 9574-1.)

[10] (*E.g.*, *id.* at 6 & n.17.)

[11] (*See* Pls.' Br. 9, ECF No. 9823.)

[12] (*E.g.*, *id.* at 19.)

[13] (*See, e.g.*, Defs.' Br. 25-26 (describing how Riddell will argue that the CBA's health and welfare provisions should be interpreted to charge NFL Clubs, team physicians, and others with the same duties the plaintiffs attempt to foist on Riddell, while players will argue they should not be interpreted to absolve Riddell of liability); 32–33 (describing in the context of punitive damages how Riddell will argue that their actions were reasonably in light of the array of duties and responsibilities assigned to others in the CBAs while the plaintiffs will argue to the contrary), ECF No. 9574-1.)

[14] (Pls.' Br. 9–18, ECF No. 9823.)

[15] (*Id.*)

injuries or voluntary assumption of duties."[16] In other words, their own arguments show the existence of the very sort of interpretive disputes they assert are lacking.

In addition, their entire chart starts with the conceptually inaccurate premise that the cited CBA provisions are "inapplicable" because the plaintiffs interpret them as placing "[n]o duties on NFL or Riddell Defendants."[17] Whether a CBA provision places a specific duty on the NFL or Riddell is inapposite and non-dispositive of the preemption analysis. What matters, rather, is whether assessing issues such as the degree of care Riddell owed in exercising any alleged duties will require interpretation of one or more CBA provisions. As Riddell showed, it will.

At the same time that the plaintiffs present conflicting and contradictory positions, they don't dispute many of Riddell's arguments and showings. For example, the plaintiffs don't dispute that, based on how they pled their SAMAC-Riddell and their intertwining of Riddell with the NFL as alleged co-conspirators and joint tortfeasors, "in resolving the claims against Riddell, there is simply no separating Riddell and the NFL."[18] As Riddell explained, "[n]owhere is this more evident than by comparing the SAMAC-Riddell with the SAMAC-NFL, which shows the two complaints are largely identical."[19] The plaintiffs don't dispute either of these statements.

Nor do the plaintiffs present any legitimate basis on which to separate Riddell from the NFL when it comes to preemption. Indeed, the plaintiffs never dispute that if their claims against the NFL are deemed preempted, then that conclusion likewise adheres to the NFL's alleged co-conspirator, Riddell. In their concurrently filed opposition to Riddell's motion to dismiss for failure to state a claim, the plaintiffs assert that "coconspirators are liable for the acts of one another"[20] and "Riddell is liable not only for its own actions—but also for the acts taken by the NFL in

---

[16] (*Id.*)
[17] (*Id.*)
[18] (Defs.' Br. 21, ECF No. 9574-1.)
[19] (*Id.*)
[20] (Pls.' Opp'n to Riddell Defs.' Mot. to Dismiss for Failure to State a Claim 2, ECF No. 9823.)

furtherance of the conspiracy."[21] Obviously, then, if the claims against the NFL are preempted for the reasons it explains, the plaintiffs conspiracy claims against Riddell are similarly preempted.

**ARGUMENT**

**I.    The plaintiffs' attempts to evade preemption analysis on procedural grounds fail.**

**A.    The plaintiffs misstate the standards applicable to this preemption analysis.**

The plaintiffs preface their argument by reciting generalized statements—and misstatements—concerning the standards applicable to an LMRA section 301 analysis such as this.[22] For example, they assert that Riddell must show that the plaintiffs' claims "require this Court to resolve an *actual dispute* over the meaning of a *specific provision* of" a CBA,[23] citing *Kline v. Security Guards, Inc.*[24] in support with the implication that it contains a different standard than what Riddell presented. It does not. Rather, as with the controlling Supreme Court precedent Riddell cited, *Kline* provides that when "resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law."[25] Under that standard, the court in *Kline* determined there was no preemption because the defendants had not identified any specific provision that would require interpretation.[26]

By contrast, here, Riddell (like the NFL) cited numerous provisions that would require interpretation.[27] Riddell showed numerous examples of how there would necessarily be "interpretive disputes" about those provisions, thereby requiring the Court's interpretation of them

---

[21] (*Id.* at 14–15.)
[22] (*See* Pls.' Br. 18–20, ECF No. 9825.)
[23] (*Id.* at 19.)
[24] 386 F.3d 246, 256–61 (3d Cir. 2004).
[25] *Id.* at 252 (quoting *Allis-Chambers Corp. v. Lueck*, 471 U.S. 202 (1985));  (*see also* Defs.' Br. 17–18 & nn.91–92 (quoting *Allis-Chambers*, 471 U.S. at 213, 220), ECF No. 9574-1).
[26] *Id.* at 256–61.
[27] (Defs.' Br. 6–8, ECF No. 9574-1; Mem. of Law of Defs. Nat'l Football League and NFL Props. LLC in Supp. of Mot. to Dismiss Pls.' Second Am. Master Admin. Long-Form Compl. on Preemption Grounds ("NFL Br.") 7–12, ECF No. 8403-1.)

to discern the correct one.[28] The plaintiffs themselves, with their lengthy chart of many of the cited CBA provisions accompanied by the plaintiffs' suggested interpretations, confirm the existence of such interpretive disputes over specific CBA provisions.[29] In short, resolving the claims at issue here goes far beyond mere "parallelism" with or "consultation" of a CBA, as the plaintiffs suggest.[30]

In addition, the plaintiffs argue that Riddell does "not distinguish between, and in some ways appear to confuse, complete preemption and ordinary preemption."[31] They return to this point later in the brief, arguing that analogous cases cited in Riddell's brief are distinguishable because they were opinions on complete preemption following motions to remand, while the current motion to dismiss concerns ordinary preemption.[32] While there may be a procedural difference between complete and ordinary preemption, there is no substantive distinction between their tests that is relevant to this motion. Consistent with Supreme Court precedent, the plaintiffs' claims are preempted because they are inextricably intertwined with and require interpretation of identified CBA provisions.[33] Cases have used this same standard to find preemption in both motions to remand and to dismiss.[34] The plaintiffs' asserted distinction between complete and ordinary preemption is therefore one without a difference for purposes of this motion. The plaintiffs fail to show otherwise.

---

[28] (Defs.' Br. 23–32, ECF No. 9574-1; *see also* NFL Br. 18–37, ECF No. 8403-1.)

[29] (Pls.' Br. 9–18, ECF No. 9825.)

[30] (*See id.* at 19.)

[31] (*Id.* at 20 n.7.)

[32] (*Id.* at 31–33 (discussing *Duerson v. Nat'l Football League, Inc.*, No. 12 C 2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012), *Maxwell v. Nat'l Football League*, No. 2:11-cv-08394 (C.D. Cal. Dec. 8, 2011) C.D. Cal. Dec. 8, 2011, and *Stringer v. Nat'l Football League*, 474 F. Supp. 2d 894 (S.D. Ohio 2007).)

[33] (Defs.' Br. 17–18 & nn.91–92 (quoting *Allis-Chambers*, 471 U.S. at 213, 220), ECF No. 9574-1.)

[34] *See, e.g.*, *Duerson*, 2012 WL 1658353 (denying motion to remand); *Rosario v. First Mgmt. LLC*, 247 F. Supp. 3d 560, 569 (E.D. Pa. 2017) (dismissing preempted claims); *Beidleman v. Stroh Brewery Co.*, 182 F.3d 225, 237 (3d Cir. 1999) (affirming denial of motion to remand and grant of motion to dismiss preempted claims).

**B.    A detailed and full choice-of-law analysis is not required before dismissing the plaintiffs' claims as preempted.**

Citing numerous cases, Riddell showed that a detailed choice-of-law analysis was unnecessary to resolve this motion, because evaluating just the fundamental elements of the plaintiffs' claims that are universal across jurisdictions—such as existence of a duty, breach, and justifiable reliance—calls for interpretation of CBA provisions and therefore triggers preemption.[35] In opposition, the plaintiffs argue that a full choice-of-law analysis is necessary before considering preemption, including because "an idiosyncratic difference between two laws may matter for this specific analysis," citing one unpublished Michigan appellate decision in support.[36] They are incorrect for several reasons.

First, the plaintiffs rebut their own argument. In the very section where they raise this issue, they also state that "all states impose a duty to disclose the material information that the Riddell Defendants covered-up and lied about."[37] By their own admission then, if determining the scope and degree of care for this duty imposed by "all states" requires interpretation of CBA provisions— as Riddell and the NFL have shown it does[38]—then a detailed choice-of-law analysis is unnecessary.

Similarly, in their opposition to Riddell's motion to dismiss for failure to state a claim, the plaintiffs acknowledged and highlighted the overarching universal elements of their claims, writing: "These are staple common law tort claims sounding in negligence, products liability, and fraud [that] naturally give rise to inherently fact-bound questions such as whether, under the circumstances, a defendant had a duty, whether it was breached, whether the defendant knew of, and concealed, material information." Riddell agrees that the plaintiffs' claims share these basic

---

[35] (Defs.' Br. 23 & n. 117, 27 & n.134, ECF No. 9574-1.)
[36] (Pls.' Br. 23–24, ECF No. 9825); *see also* Mich. Ct. R. 7.215(C)(2).
[37] (Pls.' Br. 23, ECF No. 9825.)
[38] (Defs.' Br. 23–32, ECF No. 9574-1; NFL Br. 18–37, ECF No. 8403-1.)

fundamental elements. Indeed, as the *Duerson* court noted, "a negligence claim in all states requires, in some form, the existence of a duty, the breach of that duty, causation, and damages."[39]

Second, the plaintiffs misplace their reliance on the unpublished Michigan intermediate court opinion, *LaMeau*.[40] That case had nothing to do with CBAs or preemption under LMRA section 301, and it mentions neither. Rather, it involved a negligence claim arising out of a plaintiff decedent crashing his motorized scooter into a wire stretched across a sidewalk, and the opinion addresses whether the contractor who installed the wire owed any duty to the decedent separate and apart from its duties created by its contract with the city to install the wire.[41] In short, *LaMeau* stands only for the unremarkable proposition that a party cannot rely on a contract with another party to exempt it from its general duty of care to third parties.[42] The plaintiffs fail to explain how this case or its holding relates to the issues here, much less how it undermines the basic proposition as recognized by *Duerson* and numerous other cases resolving preemption issues without a detailed choice-of-law analysis where there exist high-level, shared foundational elements in claims such as the plaintiffs'.[43]

### C.   Matching individual plaintiffs to CBA provisions is unnecessary for this preemption analysis at this time.

The plaintiffs also state that preemption is inappropriate because "Riddell, like the NFL, makes no effort to match players to the relevant CBAs."[44] Doing so is unnecessary for Riddell's motion. As shown by the NFL and Riddell's briefs, the majority of the provisions Riddell relies

---

[39] *Duerson*, 2012 WL 1658353, at *3; (*see also* Defs.' Br.  23 & n.117, 27 & n.134, ECF No. 9574-1).

[40] (Pls.' Br. 24 n.8, ECF No. 9825.)

[41] *LaMeau ex rel. Crnkovich v. City of Royal Oak*, No. 289947, 2012 WL 3590043, at *1–3 (Mich. Ct. App. Aug. 21, 2012).

[42] *Id.* at *3.

[43] *Duerson*, 2012 WL 1658353, ; *see also Ballard v. Nat'l Football League Players Ass'n*, 123 F. Supp. 3d 1161, 1168–69 (E.D. Mo. 2015)stringer (stating duty is element of "any action for negligence"). To be certain, a full, detailed choice-of-law analysis may be required at a later stage should any claims survive dismissal. But it is not necessary to conduct such an analysis at this stage to resolve that, given the fundamental elements of the plaintiffs' claims, they are preempted.

[44] (Pls.' Br. 24, ECF No. 9825.)

on in its preemption motion appear with substantially similar language in multiple CBAs, dating back to the 1990s, 1980s, or before.[45] As examples, the requirement for certified physicians and trainers[46] and the formation of the Joint Committee on Player Safety and Welfare to evaluate the safety aspects of playing equipment run through CBAs dating back to 1982, with related obligations commencing with the 1970 CBA.[47]

Plaintiffs also ignore that the preemption analysis as to most plaintiffs is functionally identical, and therefore, matching individual plaintiffs to the specific CBA provisions that apply to them is, at most, an administrative step that can be accomplished later. Further, no plaintiff has argued individually that a given CBA provision is inapplicable to them, despite the opportunity to do so.

### D.    Riddell's motion is timely and can be decided before discovery.

The plaintiffs argue that Riddell's motion cannot be decided before discovery and that Riddell has not met the standard for dismissal based on the face of the complaint.[48] Their arguments for delay lack merit.

First, to the extent the plaintiffs are arguing the Court may not consider the CBAs on a motion to dismiss or grant Riddell's motion based on them at this stage, authority states otherwise. The plaintiffs cite cases where courts, for one reason or another, declined to find preemption before discovery.[49] Those cases do nothing to refute that, as shown throughout Riddell's opening brief

---

[45] (*See* Defs.' Br. 6–8, ECF No. 9574-1; NFL Br. 7–12, ECF No. 8403-1.)
[46] (1982 CBA Art. XXXI § 1; 1993 CBA Art. XLIV § 1; 2006 CBA Art. XLIV § 1; 2011 CBA Art. 39 § 1(a)), reserved rights for players to control and pursue their own medical care, (1982 CBA Art. XXXI §§ 3–4; 1993 CBA Art. XLIV §§ 3–4; 2006 CBA Art. XLIV §§ 3–4; 2011 CBA Art. 39 §§ 4–5.)
[47] (1982 CBA Art. XI (emphasis added); 1993 CBA Art. XIII § 1(a); 2006 CBA Art. XIII § 1(a); 2011 CBA Art. 50 § 1(a), (c); *see also* 1970 CBA Art. V; 1977 CBA Art. XI.)
[48] (Pls.' Br. 36, ECF No. 9825.)
[49] (*Id.* at 36–37.)

and this reply, numerous courts have decided preemption motions before discovery in cases with substantially similar facts and claims.[50]

Second, their assertion that preemption is not apparent on the face of the complaint because the plaintiffs themselves did not cite to or append the CBAs[51] also ignores the numerous cases both Riddell and the NFL have cited showing that courts can and do refer to properly incorporated CBAs, even where the complaint itself does not reference the CBAs.[52]

Third, while they baldly assert the Court should wait for discovery, they fail to explain what any discovery would entail, much less how or why any such discovery would change the analysis or outcome. The Court has the plaintiffs' claims, it has the CBAs, and it has the parties' briefing, which shows an abundance of disputes and the need for substantial interpretation of multiple CBA provisions in resolving the plaintiffs' claims. No discovery is needed.

## II.    The plaintiffs' reply fails to rebut Riddell's showing that their claims are preempted.

In its opening brief, Riddell showed that the plaintiffs' claims are inextricably intertwined with the CBAs because they contain elements whose resolution requires interpretation of CBA provisions. Riddell also showed that SAMAC-Riddell so entangles the NFL with Riddell—premising the entire complaint on the joint "NFL/RIDDELL story" of collaborative fraud[53]—that

---

[50] *See Duerson,* 2012 WL 1658353; *Stringer*, 474 F. Supp. 2d 894; *Ballard*, 123 F. Supp. 3d at 1172; *Smith*, 2014 WL 6776306; (*see also* NFL Reply 32–33, ECF No. 9665 (collecting cases granting motions to dismiss on preemption grounds, and citing *Conn. v. YP Advert. & Publ'g LLC*, No. 16-cv-1424, 2017 WL 810279, at *8 (D. Conn. Mar. 1, 2017); *Pagano v. Bell Atlantic-New Jersey, Inc.*, 988 F. Supp. 841, 847 n.3 (D.N.J. 1997); *Levy v. Verizon Info. Servs., Inc.*, 498 F. Supp. 2d 586, 595 n.8 (E.D.N.Y. 2007); *Smith v. Houston Oilers Inc.*, 87 F.3d 717, 722 (5th Cir. 1996); *Givens* v. *Tenn. Football, Inc.*, 684 F. Supp. 2d 985, 992 (M.D. Tenn. 2010); *Holmes v. Nat'l Football League*, 939 F. Supp. 517, 528 (N.D. Tex. 1996); *Sherwin v. Indianapolis Colts, Inc.*, 752 F. Supp. 1172, 1179 (N.D.N.Y. 1990)).)
[51] (Pls.' Br. 36–37, ECF No. 9825.)
[52] (*See* NFL Br. 5 n.3 (citing cases), ECF No. 8403-1); *see also Duerson*, 2012 WL 1658353, *Rosario* v. *First Mgmt. LLC*, 247 F. Supp. 3d 560, 569–70 (E.D. Pa. 2017)  ("perfectly proper" for defendant to attach CBA to Rule 12(b)(6) motion and rely on it in arguing preemption); *Ballard* v. *Nat'l Football League Players Ass'n*, 123 F. Supp. 3d 1161, 1166 (E.D. Mo. 2015) (taking judicial notice of CBAs for motion to dismiss).
[53] (SAMAC-Riddell ¶¶ 9, 12, 15, ECF No. 8927.)

the claims against the two defendants must share the same fate regarding preemption. The plaintiffs

fail to rebut effectively the first point and essentially ignore the second.

    **A.**    **Resolving the plaintiffs' negligence-based claims requires interpretation of the CBAs.**

Riddell's motion and memorandum showed that plaintiffs' negligence-based claims are

preempted. The SAMAC-Riddell broadly alleges that the NFL and Riddell owed a duty to protect

players from the harms of football and warn them of the consequences of head injuries. As Riddell

and the NFL related, CBA provisions assign duties to monitor and advise on player health and

safety to NFL clubs, club physicians, team doctors, committees, the players themselves, and other

parties.[54] Whether Riddell owed the plaintiffs the duties alleged, what the scope of those duties

was, what degree of care was owed in exercising those duties, and whether Riddell acted

reasonably in discharging such duties cannot be considered "in a vacuum" that ignores these

provisions.[55] Interpretation of CBA terms is necessary to define the duty underlying plaintiffs

negligence claims and thus, they are preempted.

In response, the plaintiffs argue that their claims originate from common-law principles,

not CBA provisions, and that the cases Riddell cites finding preemption in similar situations are

distinguishable because they had different procedural postures or underlying facts.[56] In support of

the first argument, the plaintiffs state that Riddell's alleged duties are based in common law

principles, "spring[ing] from their voluntary undertakings and their design, manufacture, and

marketing of their products,"[57] and that the SAMAC-Riddell's "historical facts" establish "that the

---

[54] (Defs.' Br. 23–32, ECF No. 9574-1; NFL Br. 18–37, ECF No. 8403-1.)
[55] *Stringer v. Nat'l Football League*, 474 F. Supp. 2d 894, 909–10 (S.D. Ohio 2007).
[56] (Pls.' Br. 31–33, ECF No. 9825.)
[57] (*Id.* at 31 (citation omitted).)

NFL and the Riddell defendants assumed a duty of care independent of the Clubs and doctors whose duties the CBAs govern."[58]

As mentioned above, the plaintiffs argue under the wrong prong of the preemption analysis. In particular, the plaintiffs repeatedly argue that their claims cannot be preempted because they don't "arise under" the CBAs.[59] But "arising under" a CBA is merely one way a claim can trigger preemption.[60] The plaintiffs simply ignore that LMRA section 301 compels preemption equally as to claims that are inextricably intertwined with or substantially dependent on an analysis of CBA provisions.[61]

Riddell has not argued that the plaintiffs' claims arise under particular CBA provisions. Rather, Riddell has shown that the plaintiffs' claims are preempted as they are inextricably intertwined with, and substantially dependent on, interpretations of them. For example, the pervasive question of duty that runs throughout the plaintiffs' claims—including the constituent considerations of the scope and degree of care owed in light of the allotment of responsibilities to others under the CBAs—is inextricably intertwined with and requires substantial interpretation of each of the two dozen CBA provisions plaintiffs themselves enumerate in the lengthy chart included in their brief.

---

[58] (*Id.* at 32.)

[59] (*Id.* at 21 ("Adjudication of the Players' claims does not require interpretation of any CBA provision and the claims do not arise out of any CBA."); 31 (labelling the CBA provisions "irrelevant" because "they impose duties on Clubs and Club doctors" rather than Riddell); 31–32 (arguing that Riddell has assumed a common-law duty, independent of any duties asserted by CBA provisions).)

[60] *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) ("Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement."); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985) ("[T]o preserve this uniformity, even suits based on torts, rather than on breach of collective bargaining agreements, are governed by federal law if their evaluation is 'inextricably intertwined with consideration of the terms of [a] labor contract.'").

[61] *Caterpillar*, 482 U.S. at 394; *Duerson v. Nat'l Football League, Inc.*, No. 12 C 2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012) (stating that preemption can occur "even if the duty on which the claim is based arises independently of the CBA, so long as resolution of the claim requires interpretation of the CBA.")

Additionally, the plaintiffs' allegation that Riddell and the NFL "voluntarily undert[ook]" a duty likewise does not control the preemption analysis.[62] The plaintiffs cite no authority legitimately supporting that their "voluntary undertaking" argument provides any safe harbor from preemption. Moreover, player health and safety stakeholders include the NFL, NFL clubs, team physicians, trainers, committees staffed with experts and player representatives, and the players themselves. Regardless of whether it was prescribed or voluntarily assumed, the extent of Riddell's alleged duty to the players must be evaluated in the context of the same or similar duties the CBAs impose on these other parties.

The plaintiffs next try to distinguish three analogous cases cited in the NFL and Riddell's briefs—*Duerson*, *Maxwell*, and *Stringer*.[63] The plaintiffs argue that these cases are inapplicable because they decided remand rather than dismissal motions and because the underlying complaints in these three cases alleged different legal theories than the SAMAC-Riddell.[64] First, as discussed earlier, the procedural posture is unimportant. Regardless of whether the analysis is performed in the context of remand or dismissal, substantial interpretation of CBA provisions requires preemption.[65]

Second, contrary to the plaintiffs' attempts to paint them as different, all three cases contained the same or similar alleged duties as those in the SAMAC-Riddell. *Duerson* and *Maxwell* were both transferred into this litigation due to their similarities in factual allegations and

---

[62] *See Boogaard v. Nat'l Hockey League*, 211 F. Supp. 3d 1107, 1110–11 (N.D. Ill. 2016) (finding negligence claim based on voluntarily assumed duty for player safety preempted because determining the scope of the duty required interpretation of CBA terms); *Smith v. Nat'l Football League Players Ass'n*, No. 4:14CV01559, 2014 WL 6776306, at *2 (E.D. Mo. Dec. 2, 2014) (finding preemption even though the plaintiffs "state their claims are based on a duty the NFLPA assumed voluntarily and separately from the CBA").

[63] (Pls.' Br. 31–33, ECF No. 9825.)

[64] (*Id.*)

[65] *See, e.g.*, *Rosario* v. *First Mgmt. LLC*, 247 F. Supp. 3d 560, 569 (E.D. Pa. 2017) (dismissing preempted claims); *Beidleman v. Stroh Brewery Co.*, 182 F.3d 225, 237 (3d Cir. 1999) (affirming denial of motion to remand and grant of motion to dismiss preempted claims).

negligence-based claims against the NFL and Riddell.[66] The negligence count that the court analyzed for preemption in *Duerson* alleged "that the NFL is liable for negligently causing his brain damage and death by failing to fulfil its duty to ensure his safety."[67] Just as here, the plaintiff argued that the NFL's duty did not depend on or arise from the CBAs.[68] The court acknowledged that "may be true, but it misses the point. . . . [P]reemption is still possible even if the duty on which the claim is based arises independently of the CBA, so long as resolution of the claim requires interpretation of the CBA."[69]

Likewise, the *Maxwell* complaint alleged that the NFL owed "an independent tort duty to invoke rules that protect the health and safety of its players," and the case arose "from the [NFL's] failure to warn and protect NFL players . . . against the long-term brain injury risks associated with football-related concussions."[70] In denying remand the court determined that, at a minimum, CBA provisions assigning duties to team physicians and trainers "must be taken into account in determining the degree of care owed by the NFL."[71] Contrary to the plaintiffs' claims, for purposes of preemption, the factual allegations and duties alleged in *Duerson* and *Maxwell* are not functionally different than those in the SAMAC-Riddell. Those courts applied the same analysis relevant here, finding that various CBA provisions required substantial interpretation to evaluate the duties of care allegedly owed.

In attempting to distinguish *Stringer*, the plaintiffs again focus on the wrong aspect of the cases, emphasizing the plaintiff's specific injury over the alleged duty underlying the suit. Stringer

---

[66] (*See* Transfer Order (*Duerson*), at 1 (J.P.M.L Aug. 3, 2012), ECF No. 169; Transfer Order (*Maxwell, et al.*), at 1 (J.P.M.L. Jan. 31, 2012), ECF No. 61.) C.D. Cal. Dec. 8, 2011
[67] *Duerson*, 2012 WL 1658353, at *3.
[68] *Id.* at *4.
[69] *Id.*
[70] (Compl. ¶¶ 114, 541, *Maxwell, et al. v. Nat'l Football League, et al.*, No. 11-cv-08394 (C.D. Cal. Jul. 19, 2011), ECF No. 1.)
[71] (Order at 2, *Maxwell*, No. 11-cv-08394, ECF No. 58.)

alleged that the NFL had breached an alleged duty "to use ordinary care in overseeing, controlling, and regulating practices, policies, procedures, equipment, [and] working conditions . . . to minimize the risk of heat-related illness."[72] Like the plaintiffs here, Stringer argued that this duty arose from common law principles, based on the NFL's "voluntary act gratuitously undertaken."[73] The court agreed, yet nonetheless found Stringer's claims preempted because the alleged duty required interpretation of CBA terms.[74] Regardless of the specific injury, Stringer alleged a comparable duty as these plaintiffs and made comparable arguments against preemption. That conclusion finding the negligence-based claims against the NFL preempted is equally applicable here, which is why the court in *Maxwell* found *Stringer* "persuasive" and applied its reasoning to substantially similar facts and duties as alleged in the SAMAC-Riddell.[75]

### B. Resolving the plaintiffs' fraud-based claims requires interpretation of the CBAs.

In its opening brief, Riddell showed the plaintiffs' fraud-based claims (fraud, fraudulent concealment, civil conspiracy, and warranty) require interpretation of CBA provisions for two reasons.[76]

First, their allegations of omission and concealment depend on Riddell's alleged duty to disclose health and safety information to the plaintiffs. As both Riddell and the NFL discussed— and as with the plaintiffs' negligence allegations—the nature and extent of this alleged duty cannot be determined without considering the obligations imposed by the CBA's health and safety provisions.[77]

---

[72] *Stringer v. Nat'l Football League*, 474 F. Supp. 2d 894, 899 (S.D. Ohio 2007).
[73] *Id.* at 904.
[74] *Id.* at 904–06.
[75] (Order at 1–2, *Maxwell*, No. 11-cv-08394, ECF No. 58.)
[76] The plaintiffs' warranty claim is preempted in a similar manner to the fraud claims, as its resolution requires evaluating the plaintiffs' reasonable reliance. *See infra*.
[77] (Defs.' Br. 23–32, ECF No. 9574-1; NFL Br. 18–37, No. 8403-1.)

Second, Riddell further showed that determining whether the plaintiffs justifiably relied on any silence or omission by Riddell requires interpretation of the many CBA provisions obliging other parties such as NFL clubs, team physicians, and trainers to monitor players and advise them on their injury, symptoms, treatment, and return-to-play.[78]

In response, the plaintiffs argue that Riddell misstates the law, that the SAMAC-Riddell adequately alleges a duty to disclose, and that their fraud claims do not require a duty to disclose. These arguments miss the mark. The plaintiffs begin by stating that the defendants "conflate misrepresentation with concealment, focusing on the duty-to-speak element that only the latter claim implicates."[79] Riddell is not sure of the basis for this assertion—it argued only that "fraudulent concealment and omission generally require a duty to disclose," and did not assert that the same duty was required for a misrepresentation claim.[80]

To the extent the plaintiffs are attempting to recast their fraud claims as solely based on affirmative misrepresentations, the SAMAC-Riddell tells otherwise. Besides expressly bringing a count for fraudulent concealment, the general allegations and the fraud count repeatedly allege omission and concealment.[81] Likewise, in their opposition to Riddell's motion to dismiss for failure to state a claim, the plaintiffs state that all their claims require analysis of "whether, under

---

[78] *See Williams v. Nat'l Football League*, 582 F.3d 863, 881 (8th Cir. 2009) ("The Players' misrepresentation claims (fraud, constructive fraud, and negligent misrepresentation) are also preempted because the Players cannot demonstrate the requisite reasonable reliance to prevail on their claims without resorting to the CBA and the Policy."); *see also Atwater v. Nat'l Football League Players Ass'n*, 626 F.3d 1170, 1183 (11th Cir. 2010) (negligent misrepresentation claim preempted because "whether Plaintiffs reasonably relied on Defendants' alleged misrepresentations is substantially dependent on the CBA's language"); *Sherwin v. Indianapolis Colts, Inc.* 752 F. Supp. 1172, 1178 (N.D.N.Y. 1990) (fraud claim preempted because "the court cannot resolve plaintiff's fraud and negligent misrepresentation claims without reference to" provisions of the CBA establishing "duty of a club physician, and arguably the club," to inform player of adverse physical conditions); (*see also* NFL Br. 33–35, No. 8403-1).

[79] (Pls.' Br. 25 & n.11, ECF No. 9825.)

[80] (Defs.' Br. 24, ECF No. 9574-1.)

[81] (*See, e.g.*, SAMAC-Riddell ¶¶ 8 (Riddell "acted in concert with the NFL and NFL P and subsequently agreed to engage in tortious and injurious conduct to conceal material facts"); 69 ("The NFL joined forces with NFL P and RIDDELL to conspire and conceal." ); 366 ( Riddell breached their duty by "failing to disclose material information to Plaintiffs"); 367 ("RIDDELL Defendants concealed material facts and information"); 369 (plaintiffs "reasonably relied upon Defendants' fraudulent omission of material fact"), ECF No. 8927.)

the circumstances, a defendant had a duty, whether it was breached, whether a defendant knew of, and concealed, material information . . . ."[82]

Indeed, immediately after implying that their fraud claims do not involve an affirmative duty to speak, the plaintiffs next argue that they adequately alleged such a duty to speak on these issues.[83] Whether the plaintiffs have adequately alleged a duty to disclose, however, is the subject of the motion to dismiss for failure to state a claim, and irrelevant to preemption. What matters for this motion is, assuming those claims are not otherwise dismissed, that resolving the issues related to Riddell's alleged duties—including the scope of those duties, the degree of care owed, and whether Riddell acted reasonably in discharging any such duties—requires substantial interpretation of numerous CBA provisions.

The plaintiffs further argue that their fraudulent-omission claims do not require a duty to disclose, citing Pennsylvania cases drawing a distinction between active concealment and mere silence.[84] They provide no support for their assertion that "[o]ther states where the Players reside or played are in accord." And the Pennsylvania cases on which they rely are distinguishable because they concern transactional relationships where one party withheld material information from the other party to the transaction, which is wholly distinguishable.[85] Furthermore, even were this doctrine to apply, interpretation of CBA provisions is still necessary to determine whether the plaintiffs reasonably relied upon any concealment.

---

[82] (Pls.' Opp'n to Riddell Defs.' Mot. to Dismiss for Failure to State a Claim 3, ECF No. 9823.)

[83] (*See* Pls.' Br. 25, ECF No. 9825.)

[84] (Pls.' Br. 25–26, ECF No. 9825.)

[85] *See Aetna, Inc. v. Health Diagnostic Lab. Inc.*, No. CV 15-1868, 2015 WL 9460072, at *1, 5 (E.D. Pa. Dec. 28, 2015) (the defendant provided false billing documents to make Aetna overpay for services rendered); *Roberts v. Estate of Barbagallio*, 531 A.2d 1125 1127–28 (Pa. Super. Ct. 1987) (the defendant real estate agent withheld knowledge of formaldehyde insulation during property sale); Restatement (Second) of Torts § 550 (1977) ("One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other."); (*see also* Reply Mem. of Law in Further Supp. of Defs. Nat'l Football League and NFL Props. LLC's Mot. to Dismiss Pls.' Second Am. Master Admin. Long-Form Compl. on Preemption Grounds ("NFL Reply") 18 n.10, ECF No. 9665.)

As to Riddell's showing that the need to evaluate the element of reliance similarly triggers preemption,[86] the plaintiffs respond that reliance may be presumed.[87] Yet they cite no law supporting their ability to rely on a presumption of reliance with respect to common-law fraud claims such as theirs. Instead, they rely on inapposite laws (e.g., federal securities laws) and irrelevant procedural postures (e.g., analysis on class certification).[88] None of their cited cases rebuts the more on-point holdings that Riddell cited, involving preemption of claims based on the need to interpret CBA provisions with respect to assessing reasonable reliance.[89]

The plaintiffs' final two arguments on reliance are nonstarters.

First, they argue that the CBAs are not relevant as to reliance because there is "no allegation or evidence that any Player *did* rely on any CBA provision."[90] This is a total red herring. The issue is not whether the players relied on the CBA. The issue is whether the players reasonably relied on anything Riddell did or did not say in light of the rights, duties, and obligations imposed by the CBAs on the players, their trainers, coaches, team physicians, clubs, the various committees, the league, and many others.

Second, they argue that "reliance may be inferred where affirmative misrepresentations—here, the Riddell Defendants' campaign of deception—come from an authoritative source and/or are so pervasive that Plaintiffs could not help but be exposed."[91] But contrary to the law they rely on, including *In re Toyota Motor Corp.*, their own allegations contradict that Riddell "effectively controlled all the information about the transaction"[92]—to the contrary, the plaintiffs allege that the information Riddell supposedly withheld about the long-term risks from repeated head impacts

---

[86] (Defs.' Br. 24–26, ECF No. 9574-1.)
[87] (Pls.' Br. 27–28, ECF No. 9825.)
[88] (*Id.*)
[89] (Defs.' Br. 25 & n.125, ECF No. 9574-1.)
[90] (Pls.' Br. 27, ECF No. 9825.)
[91] (*Id.* at 28.)
[92] (*Id.*)

is and has been widely known for decades.[93] And the plaintiffs' attempt to analogize Riddell's limited marketing campaign for the Revolution-line that ran from 2006 to 2014[94]—and which none of the plaintiffs allege they ever saw—to the "the decades-long," "saturation advertising" at issue in the tobacco industry cases they cite similarly falls flat.[95]

Contrary to their legally and factually unsupported assertion, reliance is neither presumed nor satisfied here. Rather, that issue would have to be resolved, and doing so would require substantially interpreting numerous CBA provisions, further triggering preemption.

Finally, in a footnote, the plaintiffs assert that Riddell cannot claim that their warranty claim "requires the same proof as fraud, although they appear to suggest such a conflation."[96] The plaintiffs ignore that it is they who allege reasonable reliance as an element of their warranty claim.[97] In other words, it is the plaintiffs who have conflated their fraud claims with their warranty claims, and in so doing have shown their warranty claims to be preempted the same as with their fraud-based claims given the need for substantial interpretation of the CBAs in evaluating the reasonableness of that reliance.

### C.    The plaintiffs' derivative claims are similarly preempted.

As Riddell showed, the plaintiffs' derivative wrongful-death, survival-action, and loss-of-consortium claims against it are identical to those against the NFL, and to avoid repeating those arguments, Riddell adopted those same arguments.[98] Despite this, the plaintiffs argue that Riddell did "not acknowledge" those claims and "effectively concede that they should stand."[99] They are

---

[93] (See, e.g., SAMAC-Riddell ¶¶ 105, 116, 118, 146, 211, 214–21, 241–43, 251, ECF No. 8927.)
[94] (See id. ¶¶ 284, 319.)
[95] (See Pls.' Br. 28 (citing In re Tobacco II Cases, 207 P.3d 20, 40–41 (Cal. 2009), and others), ECF No. 9825.)
[96] (Id. at 24 n.9.)
[97] (SAMAC-Riddell ¶ 399, ECF No. 8927.)
[98] (Defs.' Br. 31 n.157, ECF No. 9574-1.)
[99] (Pls.' Br. 34, ECF No. 9825.)

incorrect. And even considering the plaintiffs' response to the NFL's incorporated arguments, for the reasons the NFL stated, the plaintiffs are incorrect.[100]

**D.   The plaintiffs fail to rebut other aspects of their claims that require interpretation of the CBAs and thereby trigger preemption.**

The plaintiffs assert that the Riddell failed to explain how or why consideration of the plaintiffs' "claim" for punitive damages also compels preemption.[101] To the contrary, Riddell explained that "any constitutionally permissible consideration of punitive damages would have to allow Riddell to point to the CBAs and their duties and obligations imposed on others—the players, their teams, their coaches, their physicians, their trainers, their union, the league, and more—to show that Riddell's alleged conduct was not, for example, reprehensible, wanton, or in flagrant disregard of the players' rights," citing supporting case law.[102] The plaintiffs ignore—and thus fail to rebut—this showing of preemption based on their punitive damages "claim."

In addition, Riddell observed the obvious point that any assessment of third-party fault—such as that of anyone with duties owed under the CBAs would necessarily require interpreting the scope of those duties under the CBAs.[103] The plaintiffs' response is a convoluted and contorted discussion of joint and several liability, with no relevance to the preemption analysis whatsoever.[104] The plaintiffs' off-base discussion misses the mark entirely, and provides no rebuttal to Riddell's points.

---

[100] (*See* NFL Reply 22 n.16, 28–30, ECF No. 9665.)
[101] (Pls.' Br. 34, ECF No. 9825.)
[102] (Defs.' Br. 32–33, ECF No. 9574-1.)
[103] (*Id.* at 32.)
[104] (Pls.' Br. 34, ECF No. 9825.)

**III.    The plaintiffs' attempts to distinguish Riddell's cases fail, while the cases the plaintiffs cite are themselves materially distinguishable and don't support their arguments.**

   **A.    The plaintiffs' attempt to distinguish Riddell's cases rests on a fundamentally incorrect premise.**

The plaintiffs assert that Riddell's cited case law is unavailing "for one or more reasons."[105]

None of those "reasons" hold water.

First, the plaintiffs attempt to distinguish Riddell's cases by saying those cases involve "claims expressly relying on a CBA provision or claims implicating the union's representation."[106] But they don't identify to which cases they are referring, nor do they explain why any particular facts of any of those unidentified cases negate any general propositions of law for which Riddell cited those cases.

Second, the plaintiffs argue Riddell's cases are distinguishable to the extent they were "post-discovery or in a remand posture."[107] Again, they don't identify to which cases they refer, nor do they cite any authority to support that either of their observations about the posture of those unidentified cases has any bearing on their support for Riddell's arguments.

Third, the plaintiffs again ignore the proper preemption analysis by attempting to distinguish Riddell's cases to the extent those cases—again, unidentified—involved a plaintiff "effectively" turning "a contract claim into a negligence claim, typically without alleging unintentionally tortious conduct." Despite whatever esoteric grounds the plaintiffs proffer to attempt to differentiate the facts of other cases, the Supreme Court and the Third Circuit have explained clearly that the analysis hinges on whether resolution of the plaintiffs' claims— regardless of their nature—is inextricably intertwined with or substantially dependent on

---

[105] (*Id.* at 35.)
[106] (*Id.*)
[107] (*Id.*)

interpretation of CBA provisions.[108] The plaintiffs' attempts to distinguish Riddell's cases on irrelevant grounds thus fails.

**B.      The plaintiffs' own cited case law is itself distinguishable and otherwise unhelpful.**

The plaintiffs outline a "line of recent authority" purportedly finding that "where, as here, a plaintiff alleges independent misconduct involving duties under state common-law, preemption is not appropriate."[109] The premise of this section is misplaced, because preemption analysis requires a case-by-case assessment on the facts, not blind adherence to factually distinguishable cases.[110] Regardless, the cases cited do not support the plaintiffs' arguments, and in some instances, actually support Riddell's position.

First, the plaintiffs refer to *Oliver v. Riddell, Inc.,* block-quoting a paragraph from that court's opinion.[111] Riddell anticipated the plaintiffs would attempt to reply on *Oliver* and in its opening brief showed that *Oliver* was fundamentally different from this case. Primarily, the NFL was not a party in *Oliver*, the complaint in *Oliver* did not contain the extensive allegations of the "NFL/RIDDELL story," with many joint actions and duties shared between the two defendants, and the SAMAC-Riddell's counts include many allegations of NFL and joint NFL-Riddell conduct absent from the *Oliver* complaint, including entirely new counts such as Negligent Marketing.[112]

In response, the plaintiffs argue that the SAMAC-Riddell contains the same claims the court in *Oliver* found non-preempted, and that the presence of many more allegations of joint conduct and including the NFL as a defendant should not alter the court's analysis or conclusion. They are incorrect.

---

[108] *See, e.g.*, *Kline v. Security Guards, Inc.*
386 F.3d 246, 252 (3d Cir. 2004) (citing *Allis-Chambers Corp. v. Lueck*, 471 U.S. 202 (1985)).
[109] (Pls.' Br. 21–23, ECF No. 9825.)
[110] *Allis-Chambers*, 471 U.S. at 220.
[111] (Pls.' Br. 21 (citing *Oliver*, 2016 WL 7336412 at *3–4), ECF No. 9825.)
[112] (Defs.' Br. 34–35, ECF No. 9574-1.)

The plaintiffs' arguments fail to account for the extent which the SAMAC-Riddell—unlike the *Oliver* complaint—enmeshes the alleged conduct of the NFL and Riddell. The SAMAC-Riddell centers around a massive purported fraud and conspiracy perpetrated by the NFL, Riddell, and other parties. The plaintiffs here have alleged joint conduct between the two sets of defendants (and others) to such an extent that the SAMAC-Riddell and SAMAC-NFL are largely identical, often word for word.[113] The *Oliver* court's statement that "[w]hether the NFL had certain duties of disclosure or care is (again) simply irrelevant because the NFL's conduct does not compose any part of Plaintiff's fraudulent concealment claim"[114] is therefore not accurate with regard to the SAMAC-Riddell and its joint allegations. In *Oliver*, the court found that the "complaint centers on the duties and obligations of a third party helmet manufacturer—not the NFL and its players."[115] The SAMAC-Riddell centers on the NFL and Riddell's alleged joint fraud and conspiracy.

Additionally, as Riddell pointed out, the *Oliver* court's decision was incorrect. The court's conclusion that interpretation of CBAs was not necessary because "either Riddell helmets were dangerously defective, or they were not; and either Riddell and the NFL agreed to hide those dangers by funding/conducting sham studies, or they did not"[116] ignores many key considerations, such as justifiable reliance and causation. The CBAs would have to be interpreted to determine whether they required others—e.g., team physicians, trainers, etc.—to provide information on helmets' limitations in preventing concussive or sub-concussive head impacts and whether the players justifiably—or even actually—relied on Riddell for such information, and whether Riddell's actions were a proximate cause.

---

[113] (*Compare, e.g.*, SAMAC-NFL ¶¶ 7–16, 43–102, 107–40, 141–322, ECF No. 8026, *with* SAMAC-Riddell ¶¶ 7–16, 58–115, 116–43, 146–244, 245–317, ECF No. 8927.)

[114] *Oliver*, 2016 WL 7336412 at *4.

[115] *Id.* at *3.

[116] *Id.*

The plaintiffs next cite *In re National Hockey League Players' Concussion Injury Litig*ation,[117] arguing the court there determined that LMRA section 301 did not preempt the plaintiffs' claims.[118] To the contrary, the court there found that it could not determine preemption at that time because the defendants based their argument not just on the complaint and CBAs, but also on "numerous other documents—meeting minutes, letters, memoranda, and reports . . . [that] constitute cherry-picked evidence."[119] The court therefore reserved ruling on preemption until a later date. Here, Riddell bases its motion solely on the SAMAC-Riddell and the CBAs, which numerous courts have found are proper to consider on a motion to dismiss for preemption.[120]

The rest of the cases are even more distinguishable and less helpful to the plaintiffs. *Green v. Pro Football, Inc.*[121] was decided under an inapplicable line of precedent finding that claims by NFL players for intentional torts such as assault and battery are not preempted because "[i]nterpretation of the CBA 'is not required to determine either whether a duty of care exists or to define the nature and scope of that duty' for these types of claims."[122] *Green* and the rest of this line of cases and are not relevant to the plaintiffs' claims here.

*Benavidez v. Sandia National Laboratories*[123] actually supports Riddell's position, as it found that preemption was warranted when determining what constituted "outrageous" conduct under intentional infliction law required consideration of the employer's associated duties under

---

[117] 189 F. Supp. 3d 856, 867 (D. Minn. 2016).
[118] (Pls.' Br. 22, ECF No. 9825.)
[119] *In re NHL*, 189 F. Supp. 3d at 869.
[120] *See, e.g., Duerson v. Nat'l Football League, Inc*, No. 12 C 2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012) *Stringer v. Nat'l Football League*, 474 F. Supp. 2d 894, 909–10 (S.D. Ohio 2007).
[121] 31 F. Supp. 3d 716 (D. Md. 2014).
[122] *Id.* at 727 (citing *Lee v. Pfeifer*, 916 F. Supp. 501, 509 (D. Md. 1996)); *see id.* at 726–28 (collecting cases).
[123] 212 F. Supp. 3d 1039 (D.N.M. 2016).

the CBA.[124] The remaining cases involved significantly different claims and facts than alleged here.[125]

In short, the cases cited by the plaintiffs are unhelpful and materially distinguishable. And the plaintiffs fail to distinguish the case law cited by Riddell supporting that their claims preempted.

## CONCLUSION

For the foregoing reasons, Riddell respectfully requests the Court to grant its motion and dismiss the SAMAC-Riddell (ECF No. 8927) with prejudice.


Dated: May 14, 2018                    Respectfully submitted,

                                       */s/ Paul G. Cereghini*
                                       Paul G. Cereghini
                                       Thomas C. Howard
                                       BOWMAN AND BROOKE LLP
                                       2901 N. Central Avenue, Suite 1600
                                       Phoenix, AZ  85012
                                       Telephone: (602) 643-2300
                                       Facsimile: (602) 248-0947
                                       paul.cereghini@bowmanandbrooke.com
                                       thomas.howard@bowmanandbrooke.com

---

[124] *Id.* at 1079–81.
[125] *See Green v. Bimbo Bakeries USA*, 77 F. Supp. 3d 980 (N.D. Cal. 2015) (finding no preemption required to resolve dispute over terms of an alleged oral agreement); *Gulley v. Gen. Motors, LCC*, 285 F. Supp. 3d 1047, 1054 (M.D. Tenn. 2018) (citing Tenn. Code Ann. § 50–1–312) (interpretation of CBA terms unnecessary for claim under Tennessee's handgun statute).

Robert L. Wise
Eden M. Darrell
BOWMAN AND BROOKE LLP
901 East Byrd Street, Suite 1650
Richmond, VA  23219
Telephone: (804) 649-8200
Facsimile: (804) 649-1762
rob.wise@bowmanandbrooke.com
eden.darrell@bowmanandbrooke.com

Thomas P. Wagner
MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN
2000 Market Street, Suite 2300
Philadelphia, PA  19103
Telephone: (215) 575-4562
Facsimile: (215) 575-0856
tpwagner@mdwcg.com

Attorneys for Defendants

CERTIFICATE OF SERVICE

The undersigned certifies that on May 14, 2018, the foregoing Riddell's Reply Brief in Support of Motion to Dismiss the Plaintiffs' Second Amended Master Administrative Long-Form Complaint Based on LMRA § 301 Preemption was electronically filed and served via ECF on all counsel of record registered to receive service via the Court's CM/ECF system.

                                        /s/ Paul G. Cereghini