UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE | ) | 12-MDL-2323-AB |
| PLAYERS' CONCUSSION INJURY | ) | |
| LITIGATION | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| KEVIN TURNER and SHAWN WOODEN, | ) | |
| on behalf of themselves and | ) | |
| others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NATIONAL FOOTBALL LEAGUE and | ) | |
| NFL PROPERTIES, LLC, | ) | |
| successor-in-interest to | ) | |
| NFL Properties, Inc., | ) | Philadelphia, PA |
| | ) | May 2, 2018 |
| Defendants. | ) | 2:43:54 p.m. |


TRANSCRIPT OF TELEPHONE CONFERENCE
BEFORE THE HONORABLE ANITA B. BRODY
UNITED STATES DISTRICT JUDGE


APPEARANCES:


| | |
|---|---|
| For the Plaintiff Jim Finn, et al. | CHRISTOPHER SEEGER, ESQUIRE SEEGER, WEISS, LLP 6th Floor 55 Challenger Road Ridgefield, NJ 07660 |
| For the Plaintiff Jim Finn, et al. | TERRIANNE A. BENEDETTO, ESQUIRE SEEGER, WEISS, LLP 55 Challenger Road Ridgefield, NJ 07660 |

APPEARANCES: (continued)


For Non-Party:            PETER C. BUCKLEY, ESQUIRE
Thrivest Specialty        FOX ROTHSCHILD, LLP
Funding, LLC              20th Floor
                          2000 Market Street
                          Philadelphia, PA  19103



Audio Operator:           JAMES F. G. SCHEIDT



Transcribed by:           DIANA DOMAN TRANSCRIBING, LLC
                          P.O. Box 129
                          Gibbsboro, New Jersey  08026-0129
                          Office:  (856) 435-7172
                          Fax:     (856) 435-7124
                          Email:    dianadoman@comcast.net



Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

I N D E X

ARGUMENT:                                              PAGE

        By Mr. Seeger                           4, 10, 16

        By Ms. Buckley                             7, 11

        By Ms. Benedetto                            5, 7


RULING BY THE COURT:                                   PAGE

   By Judge Brody                                      17

1        (The following was held in open court at 2:43 p.m.)

2              MR. SCHEIDT: We're on now, Your Honor.

3              THE COURT:  Mr. Seeger, it's your request for a

4    TRO.

5              MR. SEEGER:  Right, Your Honor.  Also with me, just

6    for the record, is Terri Benedetto from my office.

7              THE COURT: Okay.

8              MR. SEEGER: So, Your Honor, as you know -- as you

9    know, the Court had entered an Order dealing with funding

10   arrangements of the type that are being used by Thrivest in

11   this case.  We believe, and I don't think there's any real

12   dispute by Mr. Buckley, that's Thrivest is subject to the

13   Court's Order making the finding that these agreements

14   violated the settlement agreement and that they're void, not

15   voidable, but void.  The Court also offered a procedure where

16   if the lenders wanted to recover, you know, their -- their

17   principal, they could come in and sign a waiver agreement.

18   Thrivest in the case of -- and we may have to seal this later,

19   Your Honor, but I'll just put the argument out there.  There's

20   a class member by the name of William White, --

21             THE COURT:  Why don't we -- why don't we --

22             MR. SEEGER:  -- who has received a monetary award --

23             THE COURT:  -- well, can we -- one second.  Let's

24   call him "W" here and -- and can we -- can we --

25             MR. SEEGER:  Okay.

1           THE COURT:  -- can I -- can I redact that in the

2    transcript?  Well, go ahead with it.

3           MS. BENEDETTO:  Your Honor, I believe -- I believe

4    Mr. Buckley filed something on Thrivest's behalf yesterday on

5    ACF that enclosed that particular class member we're talking

6    about's name.

7           THE COURT:  Oh.

8           MS. BENEDETTO:  So, it's already out there.

9           THE COURT:  Oh, okay.  All right.  But, let's call

10   him "W" for the rest of the -- rest of the hearing.  Okay.  Go

11   on.

12          MR. SEEGER: Let's all play it safe here.  So, all

13   right.  So, we'll call him Mr. W.

14          THE COURT:  Yes.

15          MR. SEEGER:  He's a class member, who has received

16   an award for probably one of the most serious injuries covered

17   by the settlement which is ALS.  As I said, Thrivest did not

18   sign the waiver and has chosen to take another path.  They

19   filed an arbitration statement and -- and, you know, look,

20   they're just serious consequences here that I would like to

21   really cut to the chase on.

22          One is if -- if the arb -- if the arbitrator finds

23   in favor of Thrivest, not only will Mis -- Mr. W have to put

24   up $750,000 that I can assure you he does not have, he's going

25   to stuck paying their attorney's fees, that's number -- number

1    one.  What perhaps should be number one is the one thing you

2    cannot have in a class action or in a multi-district

3    litigation are attorneys attempting to do an end-around Court

4    Orders and that's what this is.  This is an attempt to get

5    around your Order, Your -- Your Honor, and to haul Mr. W. into

6    a State Court Arbitration, hoping that he can get declaratory

7    relief, that you got it wrong, and force us --

8              THE COURT: (Recording malfunction).

9              MR. SEEGER: We think that under Rule 65 you can

10   clearly grant the TRO in this and ultimately, we'll seek

11   permanent injunction under the All Writs Act.  If you -- when

12   -- when we have an opportunity to -- to spend more time on

13   this, if you look at the All Writs Act cases, they deal with

14   fact patterns almost identical -- identically analogous to

15   this where somebody is trying to frustrate the purpose of a

16   Federal Court Order in an MDL or a class action and go around

17   it and go into State Court or go through an arbitration

18   proceeding for the purpose of getting around a Court Order.  I

19   just don't think that you can allow that to happen here.

20             The Court's ruled on this already.  An alternative

21   was offered to Thrivest.  They didn't take advantage of it.

22   Also, they were given opportunity to weigh on this -- weigh in

23   on this before Your Honor before -- after you had -- I believe

24   you gave them objector status before you had entered the Order

25   voiding the agreement with the lenders.  And, then again, they

1    had an opportunity to weigh in on all this when you entered

2    the Order basically instructing Brown Greer to withhold these

3    payments.  As far as I know at this point, I could be wrong

4    and Terri can correct me, I don't think that they filed

5    anything on that.  And --

6              MS. BENEDETTO:  Well, they did not appeal --

7              MR. SEEGER:  -- now they're --

8              MS. BENEDETTO:  -- as others had.

9              MR. SEEGER:  -- (inaudible).

10             THE COURT:  They did not appeal.  Okay.  And I

11   assume that the 30 day appeal period is -- has -- has

12   expired?

13             MS. BENEDETTO:  It has.

14             THE COURT:  Okay.  All right.  Let me hear from you,

15   Mr. Buckley.

16             MR. BUCKLEY:  Thank you, Your Honor.  Let me start

17   as a threshold and that is there's no jurisdiction here either

18   in the class action or for this TRO in the context of a class

19   action.  The -- Thrivest is not a party to the NFL Concussion

20   litigation.  It's not a party to the settlement agreement.

21   It's not encumbered by the ambit of the Court's authority and

22   jurisdiction under the settlement agreement.  It's not

23   referenced in Section, I think it's 27.1, which talks about

24   the Court's continuing jurisdiction.

25             Moreover, not only does the Court lack jurisdiction

1   over Thrivest for those reasons, if Thrivest is a defendant

2   here, Thrivest has not been served with original process.

3   There is no complaint and, frankly, Mr. Seeger, as Class

4   Counsel, does not have standing to sue Thrivest.  The --

5   indeed, the agreement that's at issue here, and that's a

6   fundamental agreement, you know, a fundamental issue.  The

7   agreement between Thrivest and Mr. W. has not only an

8   arbitration clause which reserves the question of validity of

9   the agreement to an arbitrator, but it also has a class

10  action -- action and multi-district litigation waiver.

11          And the Supreme Court of the United States has

12  upheld both.

13          With respect to the arbitration clause, there's a

14  distinction between questions of formation that the Court may

15  have jurisdiction over, such as whether somebody had, you

16  know, understood the agreement that they were entering into,

17  or whether, you know, an agreement was actually reached and

18  questions as to validity of the entire agreement.  And the

19  Rent-A-Center case makes clear that when you're arguing about

20  the validity of the entire agreement and not formation of the

21  arbitration agreement, that that's a separate question that

22  must be decided by the arbitrator.

23          In other words, unless you make a specific challenge

24  to the arbitration agreement, those issues are for the

25  arbitrator to decide.  The issue of validity is for the

1    arbitrator to decide.

2            And to the extent that there's a question about Mr.

3    W's capacity to enter into this agreement, in other words did

4    he form an arbitration agreement, you know, I respectfully

5    disagree that he was, in any way, incapacitated.  Mr. W.

6    had -- was diagnosed with ALS, which is not a -- which does

7    not, at least in its early stages, impact the individual's

8    mental capacity.  And the -- this agreement was signed by his

9    neurologist who said he has capacity to enter into the

10   agreement and it was notarized by his attorney.  In fact,

11   just last Wednesday --

12           THE COURT:  Who was his attorney?  Who was his a --

13   one second.  Who was his attorney in this?

14           MR. BUCKLEY:  Robert Wood, who is rep --

15   representing Mr. W. in the arbitration.  And, indeed, Your

16   Honor, just last Wednesday, Mr. W. delivered an eloquent

17   invocation at the memorial service for former Ohio State

18   football coach, Earle Bruce and he was interviewed on T.V. by

19   the local news.  And he appeared as --

20           THE COURT:  This is irrel -- I don't care what --

21           MR. BUCKLEY:  -- speakable --

22           THE COURT:  -- I don't care what -- one second.

23   Let's -- let's not do this.  That has noth -- that is

24   irrelevant to me.  I don't care who interviewed whom.  Let's

25   talk about the issues in this case.  I'm listening to you; but

1    you're not going to be able to argue that.  Go on.

2              MR. BUCKLEY:  Okay.  But, the issue, Your Honor, is

3    whether the agreement that Mr. W. and Thrivest entered was

4    valid.  And that's an issue that Mis -- that -- that Mr.

5    Seeger has raised, but that Mr. W. has not raised.  But, even

6    to the extent that that issue is properly before anyone, it's

7    an issue that Mr. W. and Thrivest specifically agree would be

8    decided by an arbitrator not by the Court.  And, so, to the

9    extent that Your Honor's December 8 Order could be viewed as

10   impacting that question, it can't impact that question as to

11   parties that agreed to arbitrate disputes about the validity

12   of the agreement because the Supreme Court has said those

13   disputes are properly before an arbitrator.

14             THE COURT:  I'm famil -- I'm familiar with the

15   arbitration law.  Mr. Seeger, are you familiar with Mr.

16   Wood?

17             MR. SEEGER:  I mean I met him by telephone after

18   Mr. Buckley filed the arbitration agreement, and I told him I

19   wanted to help.  And he's authorized me to do so.  I also --

20             THE COURT: Oh, well wait a minute.  Let's get him on

21   the phone.

22             MR. SEEGER:  -- (inaudible).

23             THE COURT:  So, because Mr. Buckley you said that --

24   that -- that -- that Mr. Wood is opposed to this.  Did you

25   not?

1          MR. BUCKLEY:  No, I -- I think Mr. Wood is very much

2     in favor of anything that would allow his client to keep the

3     money that Thrivest paid to him in exchange for --

4          THE COURT:  So, in other words, he's --

5          MR. BUCKLEY:  -- PSFS (phonetic) distribution.

6          THE COURT:  You didn't say that.  Mr. Buckley,

7     that's not what was said to me.  What was said to me is that

8     he approves of what you're doing and you may have made a

9     mistake; but, that's what you said.  So, the answer is --

10         MR. BUCKLEY:  Well, let me correct --

11         THE COURT:  One second.  Mr. Wood is -- is Mr.

12    Seeger correct that Mr. Wood approves of the position that Mr.

13    Seeger is taking; is that correct?

14         MR. BUCKLEY:  That's my understanding, Your Honor.

15         THE COURT:  All right.  That's what I wanted to --

16         MR. BUCKLEY:  What I had mentioned earlier -- what I

17    had mentioned earlier was that Attorney Wood was the same

18    attorney who was working with Mr. W. in December 2016 when Mr.

19    W. signed the agreements with Thrivest and, in fact, Mis --

20    Attorney Wood notarized those agreements --

21         THE COURT:  Okay.

22         MR. BUCKLEY:  -- and, also, signed an

23    acknowledgment.

24         THE COURT:  All right.  I understand your position.

25         MR. BUCKLEY:  And that's what I was referring to.

1          THE COURT:  All right.  That's okay.  Don't worry

2     about that.

3          MR. BUCKLEY:  So, -- so, the other thing I wanted

4     to bring to the Court's attention was that yesterday, after

5     Attorney Wood had indicated that he objected to the

6     jurisdiction of the arbitrator, we filed a complaint to

7     compel arbitration in the Western District of Pennsylvania,

8     which is halfway between where we are and where Mr. Wood is

9     and where -- where Mr. Whi -- Mr. W. is, and that is docketed

10    in the Western District of Pennsylvania, but has not been

11    assigned a Judge.

12          THE COURT:  Okay.  All right.

13          MR. SEEGER:  Your Honor, can I respond to a couple

14    of things?

15          THE COURT:  Well, sure.  First, --

16          MR. BUCKLEY:  I -- I had -- I wanted to respond to a

17    few more things that Mr. Seeger --

18          MR. SEEGER:  Sorry.

19          MR. BUCKLEY:  -- had said.

20          MR. SEEGER:  Okay.  I'm sorry.  I thought you were

21    done.

22          MR. BUCKLEY:  This is not an end-run around the

23    Court's Order.  The Court did not have jurisdiction to issue

24    Orders with respect to Thrivest's agreement with Mr. W. which

25    resolved -- or which reserved to an arbitrator exclusive

1    jurisdiction to determine the validity of the agreement

2    including any challenge to whether the entire agreement as a

3    whole is invalid due to the "no assignment of claims"

4    provision in the settlement agreement.

5                        (Transcriber change)

6            MR. BUCKLEY:  The -- indeed the no assignment of

7    claims provision has no application to the arbitration clause

8    in Mr. W's agreement with Thrivest and therefore it could not

9    possibly invalidate the arbitration agreement.

10           So, we're really dealing here not with the

11   substantive issue that Your Honor has opined on in the

12   December 8th Order, but with a jurisdictional issue and that

13   is who under Thrivest's agreement with White and the Supreme

14   Court's precedent under the <u>FAA</u> has the authority to determine

15   whether White's agreement -- whether W's agreement with

16   Thrivest is valid.

17           And, I submit to the Court that the Supreme Court is

18   clear that where the validity of the entire agreement is

19   challenged and where there is not a specific challenge as to

20   the agreement to arbitrate, that that challenge -- that that

21   dispute or that challenge or controversy regarding the

22   validity of the agreement must be resolved not by the Court,

23   but by an arbitrator --

24           THE COURT:  All right.  Okay.

25           MR. BUCKLEY:  -- and, you know --

1          THE COURT:  One second.  One second.  Let me just

2    ask you a few things.  What is the -- what Court is the -- you

3    said it was -- there was a -- there's also a State Court

4    action.  What Court was that brought in?

5          MR. BUCKLEY:  There's no State Court action, Your

6    Honor.  There is a -- a complaint to compel arbitration that

7    was filed yesterday in the Western District of Pennsylvania --

8          THE COURT:  What's the --

9          MR. BUCKLEY:  -- Federal Court.

10          THE COURT:  What's the number of that case?

11          MR. BUCKLEY:  I will look for it, Your Honor, as

12    we're talking here.  I think that the way that the Western

13    District handles these things, they are initially filed under

14    a general docket and then assigned to a specific Judge.

15          I'm not sure if they give you a separate case number

16    then, but the case number that the case was assigned when it

17    was filed is 05-MC-02025, and I'd be happy to share a copy of

18    the complaint that we filed.

19          We still don't have a as-filed version because I

20    understand that the Western District is backed up.  When last

21    we checked we were number seven in the queue.

22          THE COURT:  Okay.  All right.  Mr. Seeger, would you

23    like to respond?

24          MR. SEEGER:  Yeah, I'll be brief.  I mean, the class

25    action waiver argument is a waste of time because we're not

Seeger - Argument                          15

1   suing Thrivest in a class action so I'm -- I'm not going to

2   spend -- and, I mean, maybe I will in the future but right now

3   that's not an issue.

4          As to the Court's jurisdiction, all the cases are

5   very, very straightforward on this, Supreme Court cases on

6   down.  The settlement is a race which is before this Court,

7   Your Honor.  You have the complete jurisdiction over it under

8   the -- under applicable law as well as the settlement

9   agreement, so to say that you have no jurisdiction to enforce

10  orders makes absolutely no sense.

11         You obviously do and the All Writs Act gives you

12  that power as well, the -- and you have the power to enjoin

13  all collateral litigation so there's -- there's really no

14  question on that.

15         I'm not really sure what's gained by the argument

16  about the arbitration provision because although Mr. Buckley

17  talks about this <u>Rent-A-Car</u> decision, there's also the <u>Granite</u>

18  <u>Rock</u> decision which is Supreme Court decision -- 561 US 287,

19  2010 decision which basically talks about how you frame this

20  issue.

21         So the bottom line here, without going through that

22  case and boring everybody on it, is you have -- you have

23  voided the entire agreement including his arbitration

24  provision.  And you have the ability -- he could have --

25  Thrivest very simply could have taken the deal that was

1    offered in the Court's order.

2              They chose not to do that thinking clearly that they

3    could get around your order by running and arbitrating an

4    agreement that you have held void ab initio.  So, I mean, I

5    think that we've clearly got the basis for a TRO and

6    ultimately we will for a permanent injunction against this

7    kind of activity.  If others see this happen --

8              THE COURT:  Well, as I read your papers --

9              MR. SEEGER:  -- they're going to try to do the same

10   thing.

11             THE COURT:  Mr. Seeger, I read -- I read your -- I

12   have read your submission and my understanding was that there

13   was something going on May 4th.  Would you like to tell me

14   what that was?  Was there any -- was there any --

15             MR. SEEGER:  On May 4th --

16             THE COURT:  Was there something before an

17   arbitrator?  Or, Mr. Buckley?  Forthrightness to the Court.

18             MR. BUCKLEY:  Yes, Your Honor, I can address that.

19             THE COURT:  What?

20             MR. BUCKLEY:  Retired Judge Steven I. Platt in

21   Maryland has been assigned as the emergency arbitrator by

22   Triple A.  He has scheduled an emergency hearing on Thrivest's

23   request that Mr. White escrow the disputed assets with

24   Attorney Wood until the merits of the arbitration are decided

25   and -- and the hearing on that is scheduled for this Friday at

1   1:00 p.m.

2           THE COURT:  That's what I thought.  Okay, that's

3   what your papers said, Mr. Seeger.

4           MR. BUCKLEY:  Your Honor, I would --

5           THE COURT:  Yes?  Okay.

6           MR. BUCKLEY:  Your Honor, I would like to address

7   Mr. Seeger's last comments about the Granite Rock case.

8           THE COURT:  All right, look, let me tell you what

9   I'm going to do because I have a TRO in front of me and I

10  believe that my order has been -- that Trivest has

11  circumvented my order and I will grant the TRO in relation to

12  the arbitration because that's what I know has been -- has

13  actually been filed.

14          So there is an active TRO which has been granted

15  relating to the -- to the hearing that you're having on Friday

16  and it is enjoined from proceeding.

17          Mr. Seeger, that's what I'm doing as of today.

18  We're going to have a hearing on the one -- let's see, on May

19  -- May the -- if you can both make it, May the 9th at 11:00 in

20  the morning on this -- on my TRO because that's within ten

21  days, and I expect you both to be in Court unless both of you

22  cannot -- cannot make it at that time and then I'll do it the

23  following week or whenever else I can make it.  What's your

24  schedules?

25          MR. SEEGER:  Your Honor, this is for Seeger, I --

 1    would it be possible to do it on the 10th or --

 2              THE COURT:  No --

 3              MR. SEEGER:  -- or maybe the day after that --

 4              THE COURT:  No, I can't do it.  I'm going to be away

 5    the 10th and the 11th --

 6              MR. SEEGER:  Okay.

 7              THE COURT:  -- so I can't do it.

 8              MR. SEEGER:  Okay.  Okay.

 9              THE COURT:  And how about you, Mr. Buckley, can you

10    do it at that time?

11              MR. BUCKLEY:  I can be there on the 9th, Your Honor.

12    I still have issues about whether -- who's my opposing party

13    and what case I'm in.

14              THE COURT:  You're in -- you're in my case -- you're

15    in my case and you are enjoined from continuing with

16    arbitration and your client is enjoined.  Now, if you don't

17    like that I guess there's only one remedy, but that is my --

18    the Order of the this Court.

19              So there's no question about it, that is the Order

20    of this Court.  You are enjoined to proceed and the

21    arbitration is enjoined from proceeding.  So I am having a

22    hearing on Wednesday, May the 9th at 11:00 in the morning and

23    I will hear from both sides at that time.

24              MR. BUCKLEY:  Your Honor, may I ask a question?

25              THE COURT:  That depends what it is.

 1          MR. BUCKLEY:  Has --

 2          THE COURT:  You can ask a question.

 3          MR. BUCKLEY:  Has Your Honor ruled on Mr. -- has

 4  Your Honor ruled on Mr. Seeger's motion to withhold to which

 5  we filed an objection?

 6          THE COURT:  Motion to -- I don't know about that.  I

 7  don't know --

 8          MS. BENEDETTO:  Well, our position, Your Honor, is

 9  that that was -- that was mooted by Your Honor's December 8th

10  Order as to --

11          THE COURT:  I don't -- I don't know about that.

12          MS. BENEDETTO:  -- as to the third-party funders.

13          THE COURT:  All right, I don't know that.  All I

14  know is if you need a further Order of the Court, Mr. Seeger,

15  you're going to have to request it.  I don't know.  Right now

16  I am ruling on your request for a temporary restraining order,

17  and it's granted, okay?

18          MR. BUCKLEY:  Will you be issuing an Order, Your

19  Honor?

20          THE COURT:  It's an Order of the Court, right this

21  minute.  Is it going to be a --

22          MR. BUCKLEY:  So you're not going to be issuing a

23  separate --

24          THE COURT:  It is an Order of the Court.  It is an

25  Order of the Court and you are a member of this bar and you

1   are bound by this Order of the Court, Mr. Buckley.

2           And when I get to -- to issue a written Order, it

3   will say that the request for an injunction to enjoin the

4   arbitration is granted -- temporarily enjoin the TR -- we're

5   granting -- the TRO is granted.  That's what it will say, so

6   I'm not signing the Order that Mr. Seeger proposed because

7   it's too -- it goes too far.  Right now I am enjoining the

8   arbitration, okay?  Did you understand that Order, Mr.

9   Buckley?

10          MR. BUCKLEY:  I do, Your Honor.

11          THE COURT:  Okay.  All right, thank you very much --

12          MR. SEEGER:  Thank you, Your Honor.

13          THE COURT:  -- and we will see you on the 9th.  Bye.

14          MS. BENEDETTO:  Thank you.

15          (Matter concluded, 3:05 p.m.)

16                       *  *  *  *  *

17

18

19

20

21

22

23

24

25

1                    **C E R T I F I C A T I O N**

2              We, Lisa Wilson and Diane Gallagher, court

3    approved transcribers, certify that the foregoing is a correct

4    transcript from the official electronic sound recording of the

5    proceedings in the above-entitled matter.

6    _____

7    LISA WILSON

8    _____          _____

9    DIANE GALLAGHER                            DATE

10   DIANA DOMAN TRANSCRIBING, LLC