# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323<br>**Hon. Anita B. Brody**<br><br>Civ. Action No. 14-00029-AB |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>            Plaintiffs,<br><br>            v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>            Defendants. | |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

## OPPOSITION OF CO-LEAD CLASS COUNSEL TO MOTION OF THE ALEXANDER OBJECTORS AND LUBEL VOYLES, LLP FOR RECONSIDERATION/NEW TRIAL

### I.      INTRODUCTION

What an odd motion.  As developed below, there is no cognizable request for relief here, only a last-ditch attempt by some longstanding Objectors to throw more sand in the gears.  The Alexander Objectors want a "new trial" from this Court's award of attorneys' fees in a class action settlement.  The Motion cannot be a request for a new trial, because there never was one.  This bizarre request also cannot be a Rule 59(e) motion to amend the judgment because it seeks to vacate a fee award altogether.  Nor could this be a proper motion for reconsideration, because

under the Court's Local Rules that must be filed within 14 days.  Moreover, these Objectors have already filed their notice of appeal, so they will have their hearing in the Third Circuit.

Specifically, the Alexander Objectors and the law firm of Lubel Voyles, LLP ("Movants") filed a motion for "reconsideration/new trial" (ECF No. 9926) ("Motion") that attacks the Court's April 5, 2018 decision (i) awarding the full $112.5 million in attorneys' fees and costs requested in Co-Lead Class Counsel's February 2017 common benefit fee petition (while reserving an allocation among counsel of the $106,817,220.62 fee component of that award pending a now-concluded May 15, 2018 hearing); and (ii) reserving a final determination on the amount of any holdback or set-aside from Class Members' Monetary Awards for the purpose of funding common benefit work performed in furtherance of the Settlement's implementation (while maintaining the provisional holdback of five percent from such awards pending that determination).  *See* ECF Nos. 9860-61; *see also* ECF Nos. 9833, 9970 (hearing Orders).[1]  The Motion also attacks the Court's separate decision, issued the same day, that accepted Professor William B. Rubenstein's recommendation and adopted a presumptive 22 percent cap on the fees of Class Members' individually-retained counsel.  *See* ECF Nos. 9862-63.[2]

The Motion, putatively filed pursuant to Rule 59 of the Federal Rules of Civil Procedure, is really a motion for reconsideration under this District's Local Rules because it seeks to revisit the Court's ruling with respect to arguments that were previously raised.  As such, the Motion was filed beyond the 14-day deadline for reconsideration motions set forth in the Local Rules.  In any

---

[1] The Motion does not challenge the Court's incentive/case contribution awards to the three present and past Class Representatives.

[2] One day after filing the Motion, Movants separately filed a Notice of Appeal from the Court's decisions to the Third Circuit.  *See* ECF No. 9960.  That appeal has been assigned docket no. 18-2012 in the Third Circuit.  Thus, Movants are attacking the Court's April 5 decisions on two separate fronts.

event, Movants fail to satisfy the high standard required for the Court to change its rulings.  Thus, even if timely, the Motion fails because it is a long-disfavored attempt at a do-over.  The Court should accordingly deny it.

## II.     DISCUSSION

### A.  The Court Should Deny the Motion as Untimely Filed

Movants caption their motion in part as one for a "new trial" under Rule 59.  But there was no trial here – jury or non-jury.  Hence Rule 59 is inapplicable.  *See Parks v. Ford*, 68 F.R.D. 305, 307 n.2 (E.D. Pa. 1975) ("Rules 59(a) and 59(c) deal with motions for new trials.  No trial was held in the instant case, and thus these rules are inapposite.").  Movants also invoke Rule 59(e).  *See* ECF Nos. 9926 (at 1), 9926-1 (at 3, 12).  That rule, though – which provides for motions to alter or amend judgments – is inapplicable to post-judgment applications for attorneys' fees.  *See White v. New Hampshire Dep't of Emp't Sec.*, 455 U.S. 445, 450-51 (1982) (Rule 59(e) "was adopted to mak[e] clear that the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment"; "a request for attorney's fees . . .  raises legal issues collateral to the main cause of action – issues to which Rule 59(e) was never intended to apply") (citation, internal quotation marks, and footnotes omitted); *see also* Fed. R. Civ. P. 59(e), 1946 advisory comm. note (Rule 59(e) "deals only with alteration or amendment *of the original judgment* in a case") (emphasis added); *Jackson v. Maui Sands Resort, Inc.*, No. 1:08 CV 2972, 2009 WL 10688203, at *1-2 (N.D. Ohio Apr. 23, 2009) (Rule 59(e) held inapplicable to award of attorneys' fees; treating 59(e) motion as motion for reconsideration).

In reality, the Motion is purely one for reconsideration in order to reverse this Court's rulings respecting attorneys' fees.  Indeed, the Motion is concurrently captioned as one for "*Reconsideration*/New Trial."  ECF Nos. 9926 (at 1), 9926-1 (at 1) (emphasis added).  A perusal

of the body of Movants' supporting memorandum confirms that the Motion merely seeks to revisit rulings with which Movants are dissatisfied.  *See* Section II.B, *infra*.

Because the Motion is solely one for reconsideration, under this Court's Local Rules, it should have been filed within fourteen days of the Court's April 5 decisions (that is, by April 19, 2018).  *See* E.D. Pa. Civ. R. 7.1(g).  Movants, however, filed it on May 2, 2018, which was twenty-eight days after the Court's decisions.  It appears that Movants concurrently couched the Motion as one for "new trial" and invoked Rule 59(a) and (e) so as to avail themselves of the more generous 28-day deadline in Rules 59(b) and (e), even though there was no "trial" of any kind and the fee petition proceedings long postdate the Court's May 8, 2015 Amended Final Order and Judgment. The Court should see through this subterfuge and accordingly deny the Motion as out of time.

## B.   Movants Improperly Seek Nothing More Than a Do-Over

Even were the Motion timely, the Court should reject it because it is nothing more than a repackaging of arguments previously made.

It is well settled that a motion for reconsideration is not to "be used to give a litigant a 'second bite at the apple' as to an argument on which it previously did not succeed."  *Romero v. Allstate Ins. Co.*, 1 F. Supp. 3d 319, 429 (E.D. Pa. 2014); *accord Jarzyna v. Home Properties, L.P.*, 185 F. Supp. 3d 612, 622 (E.D. Pa. 2016) ("[M]otion[s] for reconsideration . . . may not be used to rehash arguments which have already been briefed by the parties and considered and decided by the Court.") (citation and internal quotation marks omitted); *U.S. Claims, Inc. v. Flomenhaft & Cannata, LLC*, 519 F. Supp. 2d 515, 526 (E.D. Pa. 2006) (reconsideration motion is not properly "grounded on a request that a court rethink a decision it has already made") (citation and internal quotation marks omitted); *The Limited, Inc. v. Cigna Ins. Co.*, 228 F. Supp. 2d 574, 582 (E.D. Pa. 2001) (reconsideration motions are "not to be used merely as an opportunity to reargue issues that

4

the court has already analyzed and determined"), *aff'd*, 29 F. App'x 88 (3d Cir. 2002); *Gen. Elec. Capital Corp. v. Stone*, No. 04-1691, 2005 WL 746420, at *1 (E.D. Pa. Mar. 29, 2005) ("A motion for reconsideration is not an opportunity for an unsuccessful party to rehash arguments previously considered by the Court.").

Indeed, one of the reasons why reconsideration motions are generally disfavored is that "they tend to waste time on issues that have been, or should have been, decided previously." *Spear v. Fenkell*, No. 13-02391, 2015 WL 5582761, at *4 (E.D. Pa. Sept. 21, 2015) (internal citation omitted).  The Motion is a textbook illustration of this kind of abuse.  It simply rehashes a slew of arguments – such as whether time records should be produced, that awarding fees on the basis of the percentage-of-the-common fund method is premature here because the Settlement cannot be reliably valued and related challenges to the Settlement's valuation, whether a multiplier should be applied to the lodestar of Co-Lead Class Counsel and others who performed common benefit work, whether there should be a holdback or set-aside from Monetary Awards for the purpose of compensating implementation-phase common benefit work, and whether there ought to be a cap on individually-retained lawyers' fees, *see* Brief[3] at 3-30 – that Movants previously raised, either in direct response to Class Counsel's fee petition, in motions that they filed related to the fee petition, or in response to Professor Rubenstein's Report.  *Compare* ECF No. 9926-1 *with* ECF Nos. 7355, 7533, 7534, 8395, 8396-1, 8449, 9554.

Nor is the Motion viable merely because Movants have tweaked previous arguments, cited additional cases, or labelled the Court's holdings as manifestly or clearly erroneous.  *See Romero*, 1 F. Supp. 3d at 429 ("A litigant that fails in its first attempt to persuade a court to adopt its position may not use a motion for reconsideration either to attempt a new approach or correct mistakes it

---

[3] "Brief" refers to the memorandum of law in support of the Motion (ECF No. 9926-1).

made in its previous one.") (citation and internal quotation marks omitted); *Borough of Lansdale v. PP & L, Inc.*, 503 F. Supp. 2d 730, 734 (E.D. Pa. 2007) (no basis for reconsideration when party merely revisits issues already decided by citing different case law under guise of pointing to manifest error).

Similarly, even were it proper as a motion under Rule 59(e), the Motion nonetheless fails because Movants point to no newly discovered evidence, intervening change in the law, or need to correct a manifest or clear error of law or fact or prevent manifest injustice. *E.g.*, *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011); *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010); *Blue Mountain Mushroom Co. v. Monterey Mushroom, Inc.*, 246 F. Supp. 2d 394, 398 (E.D. Pa. 2002).[4]  Rather, what they do is dress up their mere disagreement with the Court's determinations as manifest or clear error.

Co-Lead Class Counsel will not engage in a page-by-page, point-by-point, subpoint-by-subpoint refutation of every one of Movants' rambling arguments.   A detailed discussion is unnecessary and unwarranted because Co-Lead Class Counsel has refuted all of those arguments in sundry earlier filings,[5] and one of the arguments (namely, with respect to the presumptive cap on individual attorneys' fees; *see* Brief at 27-30) does not even pertain to the common benefit fee petition and the holdback request.  Instead, Co-Lead Class Counsel will address Movants' principal contention concerning the Court's review of time records *in camera*, and then briefly touch on

---

[4] Although Movants concurrently style the Motion as a Rule 59(a) motion for "new trial," such a motion may be granted only where (1) the verdict is against the weight of the evidence, (2) there have been substantial errors in the admission of evidence or in the court' instructions to the jury, or (3) counsel engaged in improper conduct that had a prejudicial effect upon the jury. *Stainton v. Tarantino*, 637 F. Supp. 1051, 1078 (E.D. Pa. 1986) (citing cases).  Because there was no trial here, none of these grounds is remotely applicable.

[5] *See* ECF Nos. 7464 (at 15-30), 7606 (at 14-25), 8440, 8934 (at ¶¶ 17, 103-08), 9552 (at 4-11).

Movants' other key points.  If the Alexander Objectors want to raise all of these issues again, they should save them for their appeal.

### 1.   The Court's Review of Time Records *In Camera* Was Proper

Movants first complain that the Court's *in camera* review of the time records of Co-Lead Class Counsel and other firms having performed common benefit work (ECF No. 9860, at 15) resulted in a "manifest injustice."  Brief at 3-11.  That argument is completely devoid of merit.

The Court's review of time records *in camera* was entirely proper.  *In camera* review of billing records guards against privileged or confidential matters being divulged.  *See Team Sys. Int'l, LLC v. Haozous*, No. 16-6277, 2017 WL 3616326, at *3 (10th Cir. Aug. 23, 2017) (citing cases).  Courts often review time records *in camera*.  *E.g.*, *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 623 (8th Cir. 2017) (district court reviewed time records *in camera* in connection with percentage-of-the-fund fee application); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 188 (W.D.N.Y. 2005); *Seiffer v. Topsy's Int'l, Inc.*, 80 F.R.D. 272, 278 (D. Kan. 1978); *Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*, No. 3:14-CV-00645-ST, 2016 WL 54678, at *2 (D. Or. Jan. 5, 2016); *Pabst v. Genesco Inc.*, No. C 11-01592 SI, 2012 WL 3987287, at *1 (N.D. Cal. Sept. 11, 2012); *FTR Consulting Grp. ex rel. Cel-Sci Corp. v. Advantage Fund II Ltd.*, No. 02 CIV. 8608 (RMB), 2005 WL 2234039, at *2 (S.D.N.Y. Sept. 14, 2005).

Movants' assertion that the *in camera* review violated what they call the "Open Access Doctrine" is specious.  *See* Brief at 11.  The case upon which they rely, *In re Cendant Corp. Litig.*, 260 F.3d 183 (3d Cir. 2001), is inapposite.  *Cendant* involved a district court's sealing of bids for appointment as lead counsel in a PSLRA case – which the Third Circuit held to be a violation of the public's right to open access to the courts because those bids were judicial records.  *See id.* at

192-98.  That is a far cry from time records – which are the property of counsel, not judicial records – being reviewed *in camera* because of the confidential information they often contain.

Nor did Movants have any right to pore over time records.  *See Cassese v. Williams*, 503 F. App'x 55, 58 (2d Cir. 2012) ("[W]e are aware of no authority holding that class counsel must open its books to objectors for inspection by virtue of filing a fee motion.").  Their continued insistence on public disclosure of time records once again manifests their obdurate refusal to accept that this is a constructive common fund, not a fee-shifting, case, and a percentage-of-recovery analysis therefore applied to the aggregate fee award.  *See* ECF Nos. 7151-1 (at 39-40 (citing cases)), 7464 (at 19-20 (same)).  The Court so found.  ECF No. 9860, at 5-6.

That being the case, a lodestar cross-check "need entail neither mathematical precision nor bean-counting."  *In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005).  A cross-check is "'not a full-blown lodestar inquiry'" and "does not trump the primary reliance on the percentage of common fund method."  *Id*. at 306 n.16, 307 (quoting *Report of the Third Circuit, Selection of Class Counsel*, 208 F.R.D. 340, 423 (2002)); *accord In re Cendant Corp. Litig.*, 264 F.3d 201, 285 (3d Cir. 2001) (cross-check entails "an *abbreviated* calculation of the lodestar amount") (emphasis added); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) ("[W]here used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court."); ECF No. 7606, at 24-25 (citing additional cases).[6]

---

[6] In any event, the Court did not rubber stamp the lodestar information reflected in firms' time records.  It noted that although the hours claimed were reasonable, the hourly rates billed by some firms were not, and it accordingly employed a blended billing rate in conducting its cross-check, resulting in a reduced lodestar of approximately $36.1 million (as compared to the approximately $40.6 million claimed, *see* ECF No. 7464-1, at 2 (¶ 2), or a multiplier of 2.96 – which was still well with the norm in this Circuit. ECF No. 9860, at 15-16.

For this reason, Movants were not entitled to examine firms' time records or notice of the Court's *in camera* review.[7]  *See In re Diet Drugs*, 582 F.3d 524, 539 (3d Cir. 2009) (rejecting objection that district court, which performed lodestar cross-check, "should have considered and made public Class Counsel's individual billing records," approving reliance on time summaries, and noting that consideration of individual billing records is a "time-consuming process"); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 342 (3d Cir. 1998) (where lodestar calculation was employed merely as cross-check, district court acted within its discretion in denying discovery of time records); *see also In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, No. 1:08-WP-65000, 2016 WL 5338012, at *18 (N.D. Ohio Sept. 23, 2016) (objectors "ha[d] no right to see Class Counsel's fee and expense records," especially where "any such review by objectors would not affect the Court's ultimate conclusion").

The scrutiny of time records that Movants desire would only have resulted in needless prolongation of the fee proceedings as Movants followed up with yet more contrived or persnickety objections.  More fundamentally, it is simply inconsistent with a rough validation of the asserted lodestar that is performed in a lodestar cross-check.  In short, far from being manifestly erroneous, the Court's review of time records *in camera* was eminently proper.

## 2. <u>Movants' Remaining Arguments Have Already Been Thoroughly Addressed</u>

Also without merit is Movants' insistence that a percentage of the recovery analysis was inappropriate because the Settlement cannot be reliably valued at present.  *See* Brief at 12-24.

Movants' suggestion that the Court should adopt a wait-and-see approach and further delay an award of common benefit fees until there is further information about whether Monetary Awards are being issued in line with projections is unavailing.  *First*, there is no requirement that

---

[7] Movants do not explain what purpose having notice of the *in camera* review would have served.

9

payment of fees must await the distribution of settlement proceeds to class members. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 479-80 (S.D.N.Y. 1998) (settlement not objectionable merely because attorneys' fees would be disbursed before class members' receipt of their allocations) (citing cases); *see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-98 (11th Cir. 1999) (no requirement that court must consider only actual payout to class in determining attorneys' fees). *Second*, a court need not be in a position to make a pinpoint calculation of the value of the recovery for the class; a reasonable estimate suffices. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d at 334. *Third*, even under Movants' lower valuation of the Settlement in their earlier submissions, the fees requested (and subsequently awarded) would be equivalent to under 15 percent of the recovery – well within norms, even for so-called "mega-fund" cases. *See* ECF No. 7464, at 21.

At any rate, Co-Lead Class Counsel has already refuted Movants' contentions about the Settlement's valuation, including the secondary carping of Movants and others that the Settlement is either failing or yielding results below expectations.[8] *See* ECF Nos. 7464 (at 15-21), 8440 (at 7-8), 9552 (at 4-5), 9552-1 (at 5-12), 9885 (at 2-5, 7-8). According to the Claims Administrator's most recent status report filed with the Court, as of April 10, 2018, there were 377 payable Monetary Award claims, representing a total of $411,273,005 in awards. ECF No. 9882-1, at 22 (Decl. ¶ 33). Five weeks later, the most current data available on the dedicated Settlement website reflect that, as of May 14, 2018, there have been 411 payable Monetary Award claims, representing a total of $423,903,292 in awards. *See* www.nflconcussionsettlement.com (last accessed May 16,

---

[8] Movants have shifted gears. Previously, they disputed Co-Lead Class Counsel's valuation of the Settlement and offered their own, lower one. Now that Co-Lead Class Counsel has twice adduced updated expert valuation reports showing that the Settlement has a higher value than originally projected (*see* ECF Nos. 7464-12 [at 4-5], 9552-1 [at 6-8]), Movants contend that any valuation of the Settlement would be speculative. *Compare* ECF No. 7355, at 34-38 *with* Brief at 12-13.

2018).  More importantly, the Court has already implicitly (and correctly) rejected Movants'
argument, noting that "money [is] now flowing to Class Members."  ECF No. 9860, at 4.  Movants'
suggestion that the Court has awarded fees merely on the basis of 20,000+ registrations under the
Settlement (Brief at 19) is thus sheer nonsense.   Simply put, the Settlement *is* working and *can* be
reliably valued, and Movants demonstrate nothing to the contrary save their *ipse dixit*.[9]

Movants' complaints about the imposition of a set-aside from Monetary Awards (Brief at
24-27) can quickly be dismissed.  The fundamental shortcoming in their arguments is that the
Court has *not* adopted a set-aside.  Rather, the Court expressly reserved decision on the set-aside
request while provisionally maintaining a five-percent holdback until such time as it acquires more
information in order to determine precisely how much money will be needed to compensate
implementation-related common benefit work over the Settlement's lengthy lifespan.  *See* ECF
No. 9862, at 17-18.[10]

Nor, contrary to Movants' uninformed characterization, is the implementation work
"unspecified."  *See* Brief at 24.  Co-Lead Class Counsel has provided much detail concerning the
extensive implementation work performed, and has also explained the need to fund the transition
of implementation oversight to other counsel over the 65-year course of the Settlement.  *See* ECF
Nos. 7151-2 (at 32-35 [¶¶ 107-18]), 7464 (at 32-44), 8447 (at 15-19 [¶ 20]), 9552 (at 6-9).

Movants' assertion that no set-aside is warranted because the initial January 2014
settlement did not call for one and the operative February 2015 Settlement neither increased the

---

[9] That a number of Monetary Awards are the subject of audit (*see* Brief at 20, complaining of
"quagmire" of audits) does nothing to alter the salient fact that the Settlement is delivering promised
benefits.  Measures put in place to ferret out potential fraud maintain the Settlement's integrity and in no
way render its benefits illusory.

[10] The Court also stated that, in accordance with Professor Rubenstein's recommendation, it plans
to set aside some portion of the common benefit fee award for the purpose of compensating implementation-
related work.  *See* ECF No. 9860, at 18.

Class's recovery nor imposed any additional obligations on Co-Lead Class Counsel (Brief at 25-26) is equally uninformed.  To begin with, a rejected settlement agreement should have no bearing on the set-aside request.  That aside, Co-Lead Class Counsel has already explained that the operative Settlement Agreement both (a) enhanced the Class's recovery by uncapping the Monetary Award Fund (thereby ensuring that every Class Member demonstrating a Qualifying Diagnosis will receive the Monetary Award for which he is eligible without fear of the Monetary Award Fund's exhaustion); and (b) altered the dynamics of Co-Lead Class Counsel's interactions with the NFL in that it created an incentive for the NFL to vigorously challenge claims and seek more restrictive interpretations of the Settlement in order to minimize its outlay over the Settlement's 65-year course, thereby requiring greater than anticipated work by Co-Lead Class Counsel to combat those efforts.  ECF No. 9552, at 6-8.

Finally, Movants' arguments concerning the Court's adoption of a presumptive 22 percent cap on individual attorneys' fees (Brief at 27-30) concern an issue as to which Co-Lead Class Counsel has taken no position.  Therefore, no substantive response is necessary.  The only point that Co-Lead Class Counsel will make with respect to Movants' protest against the individual counsel fee cap is that their accusation that he has a conflict of interest in representing the Class whereas privately-retained lawyers are "unconflicted advocate[s]" (Brief at 27) – an argument that they already raised, *see* ECF No. 9554, at 6 – is vacuous.  Co-Lead Class Counsel and his firm have repeatedly advocated on behalf of and assisted both individual Class Members and individually-retained counsel on a wide range of issues and matters – in many instances where Class Members' individual counsel have failed to even return their telephone calls.  *E.g.*, ECF Nos. 8447 (at 15, 17-18 [¶¶ 20(g), (e)], 9552 (at 6-9), 9885 (at 7-14, 18-18, 21-23, 29-30).  Moreover, as the Court already found, the extensive common benefit work performed by Co-Lead Class

Counsel and others reduced the amount of work required of individually-retained private counsel and financially benefitted those lawyers, "even though they did not bear the costs."  ECF No. 9862, at 4-5.

If anything, instead of continuing to carp about the Settlement's value, Movants have Co-Lead Class Counsel to thank for having demonstrated that the value is substantially greater than Professor Rubenstein had originally estimated, and that because the aggregate common benefit fee award amounts to just under 11 percent of that value, a cap of 22 percent on individually-retained lawyers' fees, rather than the 15 percent that he had initially recommended, was appropriate.  *See* ECF No. 9571, at 3-4.  Thus, individually-retained counsel will directly benefit from the evidence that Co-Lead Class Counsel adduced concerning the Settlement's valuation, earning nearly 47 percent more in fees on their retainers than they might otherwise have.

### III.   CONCLUSION

For the foregoing reasons, the Court should deny the Motion.

Date:  May 16, 2018

Respectfully submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
cseeger@seegerweiss.com
Telephone:  (212) 584-0700

***CO-LEAD CLASS COUNSEL***

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was served on all counsel of record via the

Court's ECF system on May 16, 2018

<u>*/s/ Christopher A. Seeger*</u>
Christopher A. Seeger