UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Hon. Anita B. Brody |

**EXPLANATION AND ORDER**

In order to effectuate its prior orders regarding the NFL Concussion Class Action Settlement Agreement, the Court permanently enjoins Thrivest Specialty Funding, LLC from seeking arbitration regarding the validity of its funding agreement with Settlement Class Member William White.

**BACKGROUND**

The Court has previously held that—based on the unambiguous language of the Settlement Agreement—any assignment or attempted assignment of a Settlement Class Member's monetary claims to a Third-Party Funder is "void, invalid and of no force and effect." Dec. 8, 2017 Explanation and Order 1, ECF No. 9517. Based on that determination by the Court, the Claims Administrator began requesting all funding agreements between Class Members about to receive a monetary award to determine if those agreements are prohibited assignments or attempted assignments. The Settlement Agreement mandates that the Claims Administrator take this action by stating that "the Claims Administrator shall not recognize any [assignment or

1

attempt to assign]." Settlement Agreement § 30.1. If the Claims Administrator determines that an agreement is an improper assignment or attempted assignment, it provides an opportunity for the Third-Party Funder to voluntarily accept rescission of the agreement and recover its principle. Otherwise, the determination that the agreement is an invalid assignment or attempted assignment stands, and the Class Member is paid the full monetary award.

On December 16, 2016,[1] Thrivest Specialty Funding, LLC ("Thrivest") entered into a funding agreement that "assign[ed] and [sold]" a portion of Settlement Class Member William White's monetary claim to Thrivest in exchange for a $500,000 payment, minus a $192,253.89 deduction for a prior tax lien and a $25,000 charge for transaction fees. *See* ECF No. 9924-2 at 29. Under the funding agreement, Mr. White would owe Thrivest the $500,000 plus interest at 19% per year, compounded monthly, after he received a monetary award from the Settlement. If Mr. White never received a monetary award, then he would not owe Thrivest any additional payments—assuming he did not breach the agreement in other ways.[2]

After the Settlement became effective, Mr. White submitted a claim and qualified for a monetary award. On March 12 2018, the Claims Administrator issued a Notice of Assignment Review Determination regarding the funding agreement between Thrivest and Mr. White. The Claims Administrator determined that the funding agreement was invalid as an assignment or attempted assignment of Mr. White's monetary claims under the Settlement Agreement.

---

[1] For reference, the Third Circuit affirmed the Settlement Agreement on April 16, 2016, and the Agreement became effective on January 6, 2017 after the United States Supreme Court denied certiorari and the time to file a rehearing petition expired.

[2] For example, Mr. White could breach the funding agreement by filing for bankruptcy. Funding Agreement § 5(a)(ii), ECF No. 9924-2, at 6. Any breach by Mr. White would allow Thrivest to request direct payment of Mr. White's monetary claim. *See id.* § 5(c).

Therefore, Thrivest was given the option of rescission and was required to respond by April 12, 2018.

On April 11, 2018, Thrivest filed a Demand for Arbitration and Application for Emergency Relief with the American Arbitration Association.[3] In arbitration, Thrivest seeks a declaration that the funding agreement is "valid and enforceable," as well as damages for breach of contract and emergency interim relief requiring Mr. White to escrow $750,000 of his monetary award. The arbitration was scheduled to go forward on May 4, 2018. However, on May 2, 2018, Co-Lead Class Counsel filed an emergency motion for a temporary restraining order ("TRO"). ECF No. 9924. That day, the Court conducted a telephone conference with both Co-Lead Class Counsel and Thrivest regarding the motion. During the call, the Court granted the TRO enjoining the arbitration and then issued an order memorializing the ruling and scheduling a hearing for May 9, 2018 on whether a permanent injunction should issue. ECF No. 9925. After the hearing on May 9, the Court extended the TRO for good cause until May 23, 2018. ECF No. 9976.

**DISCUSSION**

Thrivest is enjoined from seeking arbitration against Mr. White regarding the validity of the Third-Party funding agreement. The Court has the power to issue the injunction under the All Writs Act. The All Writs Act authorizes a federal court to issue "all writs necessary or appropriate in aid of [its] jurisdiction[ ] and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). It empowers a federal court "to issue such commands . . . necessary or appropriate to effectuate and prevent the frustration of orders . . . ." *United States v. New York*

---

[3] The funding agreement contains a broad arbitration clause. *See* Funding Agreement § 6(z).

*Telephone Co.,* 434 U.S. 159, 172 (1977). It also allows for injunctions over third parties. *See id.* at 174.

The All Writs Act, however, "does not itself confer any subject matter jurisdiction, but rather only allows a federal court to issue writs 'in aid of' its existing jurisdiction." *United States v. Apple MacPro Computer*, 851 F.3d 238, 244 (3d Cir. 2017), *cert. denied sub nom. Doe v. United States*, No. 17-7387, 2018 WL 2186251 (U.S. May 14, 2018). Therefore, a court has subject matter jurisdiction for an All Writs Act injunction only when it has subject matter jurisdiction over the underlying order that the All Writs Act injunction is effectuating. *Id*.

Here, the Court is effectuating its order granting final approval of the Settlement Agreement and therefore has jurisdiction over the dispute. If a court retains jurisdiction over a settlement agreement in an order, then a violation of the settlement agreement is a violation of the order, and a court has jurisdiction to enforce the agreement. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994); *Roberson v. Giuliani*, 346 F.3d 75, 82 (2d Cir. 2003) ("Under *Kokkonen,* when the district court retained jurisdiction, it necessarily made compliance with the terms of the agreement a part of its order so that 'a breach of the agreement would be a violation of the order.'" (quoting 511 U.S. at 381)); *accord In re Phar-Mor, Inc. Sec. Litig.*, 172 F.3d 270, 274 (3d Cir. 1999). When the Court granted final approval it explicitly retained "continuing and exclusive jurisdiction to interpret, implement, administer and enforce the Settlement Agreement, and to implement and complete the claims administration and distribution process." *In re Nat. Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 426 (E.D. Pa. 2015).

Because a Third-Party funding agreement that assigns or attempts to assign a Class Member's monetary award violates Section 30.1 of the Settlement Agreement, the Court has

jurisdiction to enforce the Agreement and prevent the violation. As laid out in the Court's December 8, 2017 Explanation and Order, the Settlement Agreement unambiguously prohibits the assignment of monetary claims. The only way to prevent breach of the Settlement Agreement, and violation of the final approval order, is to examine and invalidate assignment agreements. The Court—through the Claims Administrator—did just that regarding the funding agreement between Thrivest and Mr. White. Now Thrivest seeks to relitigate the issue of the funding agreement's validity through arbitration. Thus, the Court finds it necessary and appropriate to enjoin the arbitration proceeding.[4]

It is also necessary and appropriate for a court to use its power under the All Writs Act to prevent collateral attacks on the "system of remedies specified in [a] class action settlement." *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99, 104 (3d Cir. 2002). Here, the Court properly invalidated the funding agreement as required by the Settlement Agreement's terms. Consequently, Thrivest cannot collaterally attack that determination through arbitration. Such an attack is an improper assault on the terms of the Settlement Agreement, which requires the Claims Administrator to reject any assignment or attempted assignment. *See* Settlement Agreement § 30.1 ("[T]he Claims Administrator shall not recognize any [assignment or attempt to assign].") Therefore under the Settlement Agreement's system of remedies, the Claims Administrator has the authority to determine whether a funding agreement is an invalid

---

[4] The All Writs act grants a court the power to enjoin arbitration proceedings. *See Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 985 F.2d 1067, 1070 (11th Cir. 1993) (per curiam) (affirming an injunction of an arbitration); *see also In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 141 (2d Cir. 2011) (stating that district courts have the authority to enjoin arbitration when "such authority appears necessary in order for a court to enforce the terms of the parties' own agreement, as reflected in a settlement agreement").

assignment or attempted assignment. A collateral attack of that determination via arbitration is impermissible.[5]

"[W]here the plain terms of a court order unambiguously apply . . . they are entitled to their effect." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 150 (2009). The Settlement Agreement—incorporated into an order of the Court—prohibits assignments or attempted assignments of monetary claims. The Court, through the Claims Administrator, has the power to adjudicate whether an agreement is an assignment or an attempted assignment, and if it is, the Court has the power to invalidate the agreement. Under the All Writs Act, the Court can take all actions necessary to enforce that determination. Therefore, Thrivest is permanently enjoined from seeking arbitration against Mr. White regarding the validity of the funding agreement.

So **ORDERED**.

                                                                     s/Anita B. Brody

                                               _____
                                             ANITA B. BRODY, J.
                                                                 5/22/2018
                                             _____
                                             DATE

Copies **VIA ECF** on _____ to:                    Copies **MAILED** on _____ to:

---

[5] Thrivest argues that the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, requires that the arbitration be allowed to proceed. The FAA provides for the "unmistakably clear congressional purpose that [an] arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). That is not the problem at issue here where Thrivest is attempting to use arbitration to collaterally attack a court-approved Settlement Agreement. There is no question that a private agreement by parties cannot violate a prior Court order. Hence, the arbitration clause in the funding agreement cannot strip the Claims Administrator of the authority to determine if an agreement is an assignment and therefore invalid.