TOBIAS BARRINGTON WOLFF
ATTORNEY AND PROFESSOR OF LAW

PENN LAW SCHOOL
3501 SANSOM STREET
PHILADELPHIA, PA 19104
215-898-7471
TWOLFF@LAW.UPENN.EDU

May 22, 2018

The Honorable Anita Brody
7613 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106–1744

*In re: National Football League Players' Concussion Injury Litigation*
No. 2:12-md-02323-AB; MDL No.2323; Civ. Action No. 14-00029-AB

Dear Judge Brody:

Thank you again for permitting me to address the Court on behalf of the Locks Law Firm at the May 15 hearing on common benefit fees. I write to follow up on two points.

First, I want to avoid any confusion that might arise from the remarks that Mr. Seeger made in his response to me, which he began by saying: "Spoken like a law professor who has not been involved in this case and has no idea what actually happened" or words to that effect. As I believe Mr. Seeger is aware, my involvement in this litigation began at around the same time that his did. In 2012, I was one of two class action experts brought in to discuss the potential Rule 23 obstacles in the case at a gathering of the firms that now serve as class counsel and PSC / PEC members in the offices of Co-Lead Counsel Anapol Weiss. The other expert at that meeting was Professor William Rubenstein, whom this Court appointed last year to write an opinion on attorney fees. I have been providing input to the Locks Law Firm at every stage of the case since that 2012 meeting and, as Mr. Locks indicated when he introduced me at the hearing, I have served as counsel to the firm on submissions to this Court relating to attorney fees for about a year and a half now.

Second, the Court will recall that I spent part of my time at the hearing discussing the best process to employ in resolving disagreements over the fee allocation going forward. Picking up on three principles introduced by Mr. Seeger in his opening remarks, I pointed to the importance of the "transparency" that Mr. Seeger emphasized, agreed with Mr. Seeger that Judge Bartle's work in the *Diet Drugs* litigation "laid the foundation" and serves as a model for this Court, and confirmed his observation that we work "under a microscope" and should employ a process for fee allocation that matches the innovative features of the settlement that this Court has superintended. Those principles suggest that the Court should use Judge Bartle's work as a foundation once again by setting some guiding principles to standardize lodestar rates and ensure equity in the multiplier structure among class

TOBIAS BARRINGTON WOLFF
ATTORNEY AND PROFESSOR OF LAW

counsel and PSC/PEC members and then charge a committee of class counsel with negotiating a consensus allocation on common benefit issues.

In discussions with some of the lawyers who spoke after me at the hearing, the Court indicated from the Bench that there might be further work to do on process and suggested at one point that it might be useful to receive a two or three page submission on the matter. With the Court's permission, I would like to submit the balance of this letter on that subject on behalf of LLF.

Judge Bartle employed a three-stage process in *Diet Drugs* to ensure a fair and appropriate allocation of common-benefit fees. *See* In re *Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 553 F. Supp. 2d 442 (E.D. Pa. 2008). First, Judge Bartle required all firms (including Lead Counsel) to submit common-benefit fee applications to be examined for any necessary adjustments, including adjustments to rates for attorney time. The Judge then issued an interim distribution of common-benefit fees. As Judge Bartle explained, "continuing work . . . needed to be done" both in assessing the final fee requests and in paying benefits to claimants through the settlement itself. *Id.* at 459. Judge Bartle then established a Fee and Cost Allocation Committee to undertake negotiations among the firms and arrive at an agreed allocation. *See id.* Using the committee structure as a foundation, Class Counsel Michael Fishbein led the effort to reach agreement among firms and attorneys submitting fee requests. (Gene Locks also served as Class Counsel in *Diet Drugs* and could provide additional detail about that process.) The results of those efforts were memorialized in a Compendium of Agreements that Class Counsel presented to Judge Bartle as a proposed resolution of most outstanding fee disputes. *See id.* at 460–461. The signatories embraced an approach in which they would waive objections, accept a negotiated allocation of fees on a percentage basis, and agree to have a portion of the total fee award set aside in a reserve fund for future common-benefit work that might be needed in the continued administration of the settlement. *See id.* at 461–462.

There is still ample opportunity to implement a similar process in this case. In *Diet Drugs*, Judge Bartle explained that he issued the interim award of common benefit fees and used a committee-based approach in order to avoid contentious allocation disputes in that massive MDL, where a substantial portion of the settlement benefits due to the class remained to be paid at the time of the fee petition. An interim award is appropriate here for similar reasons. After providing guidance about standardization of attorney billing rates for the calculation of an adjusted lodestar figure and setting aside a portion of the common benefit fees for the cost of future settlement administration, this Court could order that a percentage of the adjusted lodestar (perhaps 20%) be paid now as an interim award to common benefit applicants without any multiplier and later deduct that amount from the final fee allocation. The Court could then direct Class Counsel and Subclass Counsel to form a fee allocation committee and conduct negotiations to reach consensus on an equitable approach to setting multipliers for class counsel and

PSC/PEC members and specifying how time by firm attorneys, firm paralegals, and contract attorneys will be accounted for in the lodestar.

There is every reason to believe that a fee allocation committee can achieve consensus on most disputed questions among most of the firms submitting common benefit time. Co-Lead Counsel Sol Weiss, Class Counsel Gene Locks, and Sub-Class Counsel Dianne Nast and Arnold Levin were all participants in *Diet Drugs* and joined in the consensus fee allocation in that case. The remaining areas of disagreement in the present case are substantial and require focused attention, but they are certainly no more contentious than was the case in *Diet Drugs*, which involved a larger number of firms making claims against a larger common benefit award that was being issued from two separate attorney-fee funds.

The benefits of adapting Judge Bartle's fee allocation procedure to this case are clear. While a fee allocation committee is unlikely to eliminate all objections and subsequent appeals, it will significantly reduce those inefficiencies and minimize the burden on this Court. Equally important, a consensus fee allocation will foster greater confidence among the population of former players and their spouses who make up the community of interest in this proceeding. That perception of legitimacy is particularly important in this case, where the level of engagement among class members is high. As Mr. Seeger said in his opening remarks last week, this case is under a microscope. The non-transparent, unilateral process by which Mr. Seeger arrived at his proposed fee allocation will not stand up well under that scrutiny, but there is still time to build on the preliminary work that Mr. Seeger has done and achieve a consensus resolution using the precedent set by Judge Bartle as a guide.

The profession, the academy, and the judiciary will all look to the work of this Court as a model in future mass personal injury cases. The procedures for allocating common-benefit fees should manifest the same care that the Court has already displayed in guiding and structuring this innovative settlement. A consensus-based approach that resolves substantially all fee disputes will reflect positively on the Court, strengthen trust and confidence among former players and their families, and reduce the likelihood of time-consuming and disruptive appeals.

Respectfully submitted,

Tobias Barrington Wolff
On behalf of the Locks Law Firm

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of May, 2018, I caused the foregoing Letter Brief to be served via the Electronic Case Filing (ECF) system in the United States District Court for the Eastern District of Pennsylvania, on all parties registered for CM/ECF in the above-captioned matter.

/s/ Tobias Barrington Wolff
Tobias Barrington Wolff, Esquire