## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323<br>**Hon. Anita B. Brody**<br><br>Civ. Action No. 14-00029-AB |
| Kevin Turner and Shawn Wooden,<br>*on behalf of themselves and*<br>*others similarly situated*,<br><br>      Plaintiffs,<br><br>      v.<br><br>National Football League and<br>NFL Properties LLC,<br>successor-in-interest to<br>NFL Properties, Inc.,<br><br>      Defendants. | |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

## OPPOSITION OF CO-LEAD CLASS COUNSEL TO MOTION TO STAY ENFORCEMENT OF ATTORNEYS' FEE ALLOCATION ORDER PENDING APPEAL

### I.      INTRODUCTION

The Alexander Objectors and the law firm of Lubel Voyles, LLP ("Movants") have moved for a stay pending appeal of the Court's May 24, 2018 Explanation and Order (ECF No. 10019). The Explanation and Order followed up on the Court's April 5, 2018 Memorandum and its Order of that same date (ECF Nos. 9860-61) by allocating $85,619,446.79 of its award of

$108,442,700.12 in attorneys' fees to 26 law firms and individual counsel who performed common benefit work or provided other contributions on behalf of the Class.[1]

The Court should deny a stay.  Movants have no likelihood of success on their appeal of the Court's April 5 decision.  As Co-Lead Class Counsel has demonstrated time and again, Movants' arguments in opposition to a fee award – including their latest salvo, an untimely and groundless motion for "reconsideration/new trial" (ECF No. 9926) – are utterly devoid of merit. In several instances (such as their inane evidentiary objections to the common benefit fee petition) their contentions have bordered on the frivolous.  Given the deferential abuse of discretion standard of review that Movants must overcome, their appeal has virtually no prospect of success. Consequently, a stay would only result in unwarranted delay for the firms that performed common benefit work over the last six years, which are finally receiving compensation for that work.

Nor have Movants even attempted to show that they would be irreparably harmed in the absence of a stay.  Their assertion of harm faced by the Class in the event of a distribution of fees is contrived.  Conversely, counsel who stand to receive a common benefit fee award would be substantially injured by a stay in that their fees would be held up for the resolution of a baseless appeal.  Finally, the public interest would be disserved by staying a distribution of fees to await the outcome of a meritless appeal that furthers no interest save the barrow agenda of these longstanding objectors, who unsuccessfully fought the underlying Settlement and have pursued a relentless campaign against the common benefit fee petition.

---

[1]  As of this date, Movants have filed an appeal only from the Court's April 5 decision awarding common benefit fees and its concurrent decision issued the same day imposing a presumptive cap of 22 percent on individually-retained attorneys' fees.  *See* ECF Nos. 9860, 9861, 9862, 9863 (April 5, 2018); ECF No. 9960 (May 3, 2018).  They have filed required docketing papers in connection with that appeal, and counsel for both sides have entered appearances.  *See In re Nat'l Football League Players' Concussion Injury Litig.*, No. 18-2012 (3d Cir.).  The issuance of a briefing schedule is expected shortly.  Movants have not yet filed an appeal from the Court's May 24, 2018 Explanation and Order (ECF No. 10019).

## II.    DISCUSSION

### A.  Applicable Standard

In order to determine whether a stay pending appeal is merited, the Court looks to whether (1) the movant has made a strong showing that it is likely to succeed on the merits; (2) it is likely that the movant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.  *E.g.*, *Hilton v. Braunskill*, 481 U.S. 770, 776-77 (1987) (citing authorities); *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015); *Kathleen S. v. Dep't of Pub. Welfare*, 10 F. Supp. 2d 476, 477-78 (E.D. Pa. 1998) (citing cases); *AARP v. EEOC*, 390 F. Supp. 2d 437, 462 (E.D. Pa. 2005) (Brody, J.).  The party seeking a stay bears the burden of making this showing.  *In re BP Oil, Inc.*, 509 F. Supp. 802, 810 (E.D. Pa. 1981).

As developed below, under this four-factor test, Movants' stay request fails resoundingly.

### B.  Movants Have Next to No Probability of Success

Movants' bid for a stay founders on the very first prong of the test.  They have virtually no chance of success of demonstrating that this Court abused its discretion in (1) awarding common benefit attorneys' fees and a reimbursement of common benefit costs and expenses (ECF No. 9860), and (2) allocating the attorneys' fees portion of the April 5 award (ECF No. 10019).[2]  Far

---

[2]  Courts' decisions awarding fees in class actions are reviewed only for an abuse of discretion. *E.g.*, *In re Diet Drugs*, 582 F.3d 524, 538 (3d Cir. 2009); *In re AT & T Corp.*, 455 F.3d 160, 163 (3d Cir. 2006); *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 727 (3d Cir. 2001); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998); *see also Dungee v. Davison Design & Dev. Inc*, 674 F. App'x 153, 156 (3d Cir. 2017) (abuse of discretion standard applies to district court's choice of fee methodology in awarding fees to class counsel).  Therefore, to succeed on appeal, Movants will have to demonstrate that this Court's decisions represent an abuse of its discretion.

3

from being "fundamentally flawed" (Mem. [ECF No. 10022-1] at 3),[3] the Court's decisions were manifestly correct.

Movants maintain that they have a strong likelihood of success for the reasons outlined in their motion for reconsideration/new trial, and incorporate the arguments in that motion by reference.  *Id*.  Specifically, they argue that the Court erred in (i) using a percent-of-recovery fee methodology in valuing the settlement and awarding fees; (ii) affording no "transparency or rigor" in conducting the fee proceedings; (iii) "depleting the settlement's fee fund to the point that the Court must take money directly from the Class Members' net recovery to ensure that future fees are paid"; and (iv) "compromising Class Member[s]' access to independent representation via an effective and presumptive 17% private fee cap."  *Id*. at 3-4.  None of these points withstands minimal scrutiny.[4]

*First*, in previous submissions, whether in response to Movants' sundry filings or the filings of other counsel, Co-Lead Class Counsel has refuted Movants' onslaught of arguments in opposition to a common benefit fee award and the requested set-aside or holdback from Monetary Awards.  *E.g*., ECF Nos. 7464 (at 15-30), 7606 (at 14-25), 8440, 8934 (at ¶¶ 17, 103-08), 9552 (at 4-11), 9996 (at 1-12).  In particular, Co-Lead Class Counsel has demonstrated the eminent soundness of a percentage-of-recovery approach in constructive common fund cases such as this and that the Settlement is capable of valuation – and, in fact, has adduced evidence that the Settlement's value exceeds the projections at the time that the Court approved it.  *See* ECF Nos.

---

[3] "Mem." refers to pages of Movants' "Memorandum in Support of Motion to Stay Enforcement of Attorneys' Fee Allocation Order (ECF 10019) Pending Appeal [a]nd Request for Expedited Consideration" (ECF No. 10022-1).

[4] Insofar as Movants incorporate the arguments in their untimely May 2, 2018 motion for reconsideration/new trial (ECF Nos. 9926, 9926-1) by reference (Mem. at 3), Co-Lead Class Counsel correspondingly adopts his response to that motion by reference.  *See* ECF No. 9996.

7464 (at 15-21), 7464-12 (at 4-5), 8440 (at 7-8), 9552 (at 4-5), 9552-1 (at 5-12), 9885 (at 2-5, 7-8), 9996 (at 10-11).

*Second*, as for "transparency and rigor," there can be no genuine dispute that the Court afforded ample process here. The Court permitted copious briefing in connection with both the fee petition itself and the matter of a common benefit fee award allocation, and it convened a hearing (*see* ECF Nos. 9997, 10015) with respect to the latter. In all, the fee petition proceedings spanned no fewer than fifteen months. To the extent that Movants continue to complain about the Court not having required the public production of the time records furnished by counsel who performed common benefit work and the Court's review of those records *in camera*, Co-Lead Class Counsel has explained that Movants had no right of access to time records, especially in a percentage-of-the-fund case such as this, where a lodestar analysis is employed only as a rough cross-check. *See* ECF No. 9996, at 7-9.

*Third*, Movants' assertion that the Court has "deplet[ed] the settlement's fee fund" (Mem. at 4) is bizarre. That contention completely disregards that the Court has left not less than $22,823,253.33 in the Attorneys' Fees Qualified Settlement Fund ("AFQSF") (along with interest accruing thereon) as available funds for compensating implementation-related work. *See* ECF No. 10019, at 25. The Court has *not* made a determination on Co-Lead Class Counsel's separate request for a holdback from Class Members' Monetary Awards, stating that the request is premature at present and that Court requires additional information before it can render a determination on that request, which it will take up again at a later date. ECF Nos. 9860 (at 2 & n.1, 8-9, 17), 10019 (at 4 n.2). Thus, the AFQSF has not been "deplete[ed]." The Court has imposed a five-percent holdback only provisionally, out of an abundance of caution. *See* ECF Nos. 9860 (at 18), 10019 (at 4 n.2).

To the extent that Movants continue to question the implementation-related work being performed (and to be performed), Co-Lead Class Counsel has provided much detail concerning that extensive work (including greater than anticipated work resulting from the altered dynamics of Co-Lead Class Counsel's dealings with the NFL created by the uncapped nature of the settlement that was ultimately approved) and has explained the need to fund the transition of implementation oversight to other counsel over the 65-year course of the Settlement.  *See* ECF Nos. 7151-2 (at 32-35 [¶¶ 107-18]), 7464 (at 32-44), 8447 (at 15-19 [¶ 20]), 9552 (at 6-9).

Finally, the merits of the Court's ruling on the matter of a cap on individually-retained attorneys' fees are irrelevant to its common benefit fee award and therefore should have no bearing on whether the distribution of common benefit fees should proceed.  At any rate, although Co-Lead Class Counsel has taken no position on the individual fee cap issue, Movants' contention that the fee cap adopted by the Court compromises Class Members' access to independent representation (Mem. at 4) is unfounded.  No evidence was adduced to show that Class Members will be unable to obtain individual representation as a result of a cap.  More importantly, Movants' argument ignores that the amount of work required of all individually-retained private counsel has been reduced by the extensive common benefit work performed by Co-Lead Class Counsel and others, and a cap on individual fees justly prevents free-riding by individual counsel who stand to benefit from that work while not having borne the costs.  *See* ECF No. 9862, at 4-5.

**C.  Movants Face No Irreparable Harm**

Nor have Movants demonstrated irreparable harm.  Indeed, they face none – and do not even argue it.  The only harm they point to is the alleged harm that Class Members will suffer because of the alleged depletion of the AFQSF once it is exhausted.  That is specious because it is

simply implausible that the more than $22.8 million remaining in the AFQSF will be dissipated during the pendency of Movants' appeal.

The mere fact that, assuming a stay is denied, funds will be distributed to the counsel listed in the Court's May 24 Explanation and Order does not rise to irreparable harm. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 479 (S.D.N.Y. 1998) ("Numerous courts have directed that the entire fee award be disbursed immediately upon entry of the award, or within a few days thereafter."). Indeed, as a general matter, mere dissipation of funds is not irreparable harm. *See Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) ("The key word in this consideration is *irreparable.* Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.") (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1964)) (internal citation and quotation marks omitted; emphasis in original).

In any event, wiring instructions that have been sent to each firm or counsel designated for distributions under the Explanation and Order require a written commitment to return funds in the event of a reversal on appeal, which will help ensure that distributed funds are recovered in the unlikely event that Movants' appeal is successful. Declaration of Christopher A. Seeger, dated May 31, 2018, at ¶ 4; *see Brady v. Airline Pilots Ass'n, Int'l*, No. 02-2917 (JEI/KMW), 2014 WL 12767679, at *1 (D.N.J. Dec. 16, 2014) (allowing class counsel to withdraw portion of its allocated share from settlement fund where class counsel agreed to make repayment in event of objectors' success on appeal); *cf. In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, No. 1:08-WP-65000, 2016 WL 5338012, at *20 (N.D. Ohio Sept. 23, 2016) ("Nearly all quick-pay clauses

. . . contain reversionary language, requiring counsel to return the fees paid if the award is reversed on appeal."); *Brown v. Hain Celestial Grp., Inc.*, No. 3:11-CV-03082-LB, 2016 WL 631880, at *10 (N.D. Cal. Feb. 17, 2016) ("The plaintiffs' counsel has the option of being paid fees before resolution of any appeal; they also must return them immediately if the settlement is overturned on appeal."). Plainly, there would be no irreparable harm if awards in accordance with the Explanation and Order are distributed in the meantime.[5]

### D.  The Remaining Factors Also Militate Against a Stay

Turning to the final two criteria, a stay would substantially injure the affected counsel who performed common benefit work. They labored for six years on behalf of the Class and would have to wait many more months to be compensated for their endeavors.

Similarly, the public interest does not favor a stay. The public interest would not be served by holding the distribution of well-earned fees hostage to an utterly meritless appeal. Put another way, Movants' meritless appeal is only one more facet of their longstanding campaign to throw sand in the gears; it vindicates no public interest.

Movants contend that Class Members are entitled to a transparent fee process (Mem. at 4), but Class Members received precisely that here. Finally, Movants' contention that a stay would "[a]llow[] an appeal to test the process before giving away Class Members' settlement money" (*id.*) is disingenuous. It is not Class Members' settlement money that will be "giv[en] away."

---

[5] Contrary to Movants' suggestion, the Third Circuit in *In re Diet Drugs*, 582 F.3d 524 (3d Cir. 2009), did not counsel that the practical difficulties associated with administering a redistribution of fees in the event of an appellate reversal *ipso facto* warrants a stay. Rather, the Court of Appeals simply noted that the objector-appellant who complained about such difficulties had never even bothered to seek a stay. *See* 582 F3d at 552. At any rate, given the written undertaking that firms and counsel designated for awards will have to provide in order to receive funds, *see supra* at 6, there would be no practical difficulties to untangle here.

Rather, common benefit attorneys' fees are being paid directly by the NFL.  *See* Settlement

Agreement, as Amended § 21.1, ECF No. 6481-1, at 81-82 (Feb. 13, 2015).[6]

**E.  If the Court Is Inclined to Grant a Stay, Movants Should Be Ordered to Post a Supersedeas Bond, in Accordance with Fed. R. Civ. P. 62(d)**

Movants contend that the Court should exercise its discretion to waive the supersedeas

bond requirement of Fed. R. Civ. P. 62(d).[7]  The Alexander Objectors, through their counsel, have

acted time and again to thwart both Class Counsel's fee petition as well as the underlying

Settlement.  Given their obstructionist tactics, they should not be entitled to the favorable exercise

of discretion that might be afforded an ordinary litigant who appeals an unfavorable judgment

requiring that litigant to pay money damages.

There is a perfected judgment determining that Class Counsel are entitled to the fees that

are being held in the AFQSF.  *See* ECF No. 10019, at 1, 25-26 ("On April 5, 2018, I issued a

Memorandum Opinion awarding Class Counsel $106,817,220.62 in attorneys' fees;" "[I]t is

**ORDERED** that the Fund Administrator for the [AFQSF] shall pay each of the firms listed below

---

[6] Movants contend that the Court's allocation order is subject to the automatic fourteen-day stay of enforcement of judgments under Rule 62(a) of the Federal Rules of Civil Procedure.  Mem. at 2 (citing *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 230-31 (5th Cir. 2008)).  Rule 62(a) however, is inapplicable where, as here, there is no pending judgment against Movants that is subject to execution.  *See Bishop v. Deputy*, No. 01-753-SLR, 2003 WL 22284037, at *4 (D. Del. Sept. 29, 2003), *aff'd*, 95 F. App'x 462 (3d Cir. 2004).  The *High Sulfur* case upon which Movants rely is distinguishable because, there, the Fifth Circuit was troubled by the district court having conducted fee allocation proceedings *ex parte*.  *See* 517 F.3d at 231-32.  At any rate, this Court is not bound by Fifth Circuit law.

[7] Movants' citation to the hypothetical situation discussed in *In re Diet Drugs*, 582 F.3d at 552 for support as to the alleged appropriateness of waiving the supersedeas bond requirement is unavailing.  *See Naughton v. Harmelech*, No. 09-CV-5450 (KM)(MAH), 2016 WL 7045712, at *1 (D.N.J. Dec. 1, 2016) (citing *Diet Drugs,* but noting that "[t]he Court of Appeals for the Third Circuit has not squarely addressed whether a district court may waive the bond requirement.").  Distinguishing his own opinion in *Munoz v. City of Philadelphia*, 537 F.Supp.2d 749 (E.D. Pa.), noting that he waived the supersedeas bond requirement in that case because it "would have caused an unnecessary waste of taxpayers' money," Judge Bartle denied a request for a waiver in *Evergreen Comm. Power, LLC v. Riggs Distler & Co., Inc.*, No. 10–728, 2012 WL 2974891, at *2 (E.D. Pa. July 19, 2012).

the amounts, as set forth below, from the AFQSF.…  It is further **ORDERED** that each of the law firms listed above shall cooperate with the Fund Administrator of the AFQSF to effectuate this Order.").  Movants have no legal claim to the awarded fees, and are seeking to obstruct the Court-ordered distribution.  The fees have been awarded to Class Counsel, who will be denied their use for the pendency of an appeal that could take a year to resolve, should the Court grant a stay.  Under such circumstances, a supersedeas bond is fully warranted and there is no justification for a waiver of that requirement.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny a stay.  If the Court, however, determines that a stay is appropriate, Movants should be required to post a supersedeas bond.

Date:  May 31, 2018

Respectfully submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
cseeger@seegerweiss.com
Telephone:  (212) 584-0700

*CO-LEAD CLASS COUNSEL*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all counsel of record via the

Court's ECF system on May 31, 2018.


*/s/ Christopher A. Seeger*
Christopher A. Seeger