## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,<br><br>                                        Plaintiffs,<br><br>v .<br><br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br>                                        Defendants. | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br><br><br>Hon. Anita B. Brody |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |

## STEVEN ANTHONY SMITH'S
## PETITION FOR DEVIATION FROM THE FEE CAP

In accordance with this Court's Orders dated April 5, 2018 (ECF No. 9863) and May 3, 2018 (ECF No. 9956), Steven Anthony Smith (the "Petitioner" or "Steven Smith") and his claimant representative Chie T. Smith ("Chie Smith) submit the following Petition for Deviation from the Fee Cap.  Podhurst Orseck, P.A. (the "Respondent" or "Podhurst") asserted a 25% Attorney Lien against Steven Smith's monetary award on January 6, 2017, which has resulted in a $1,250,000 holdback for the Podhurst lien by the Claim Administrator.

As required by Rule 11 of the Rules Governing Petitions for Deviation from the Fee Cap (*see* ECF no. 9956), the Petitioner submits as follows:

## I.        The Extent of the Deviation Sought.

Steven Smith seeks a downward deviation requiring that no amount of individual attorney's fees or expenses is paid to Podhurst. As demonstrated below, Podhurst already has sought and been awarded $6,048,169 in fees and $771,128 in expenses as class counsel for their common benefit work, which included all of Podhurst's time representing Steven Smith. (*See* ECF Nos. 10019 and 9860).

## II.       A Brief Statement of the Exceptional or Unique Circumstances for which the Court should Allow a Deviation from the Presumptive Fee Cap.

Steven Smith himself is an exceptional and unique circumstance. At just thirty-seven (37) years old, Steven Smith was diagnosed with Amyotrophic Lateral Sclerosis ("ALS") in August of 2002. By 2006, Steven Smith became dependent on a ventilator, feeding tube and was completely paralyzed. Steven Smith's wife Chie Smith took on the role as his full-time caretaker along with the support of their two children, Dante and Jazmin Smith, minors at the time, due the financial burden placed on their family.

On January 25, 2012, Chie Smith, signed a retainer agreement with Podhurst, as durable power of attorney for Steven Smith on a contingency fee basis (ECF No. 7365-1) after receiving a phone call from Ricardo Martinez of Podhurst offering to represent them. She was not familiar with Podhurst prior to this phone call.  Surprisingly, Podhurst never visited Steven Smith in his hospital bed in his Dallas home in spite of the severity of his condition and obvious value he brought as a "face" in the plight for former players suffering from brain injury. Steven Smith is unequivocally one of, if not the most, medically severe and tragic stories in this Settlement.

At that time a motion for consolidation as a MDL was pending, and ultimately on or about January 31, 2012 this MDL was formed and Podhurst served as Class Counsel. On or

about February 3, 2012, Chie Smith signed an additional retainer agreement with Podhurst also on a contingency fee basis (ECF No. 7365-6) which contained the following language:

> "If any claims are certified as a class action and successfully resolved through a settlement or final judgment, the attorneys' fees and costs for the claims will be awarded by the Court or other tribunal. Such Court-awarded attorneys' fees and costs shall override the terms of this contract concerning attorneys' fees and costs with respect to those claims, and the client will not be responsible for the above-referenced 40% fee or additional 5% fee for any recovery on those claims."

Petitioner and Chie Smith proceeded with the understanding that the language in this Authority to Represent, the only legible copy of the two, reflected the payment terms under both Authority to Represent agreements.

Chie Smith subsequently signed a Supplemental Retainer Agreement (ECF No. 7365-8) as Steven Smith agreed to serve in the role of Class Representative at Podhurst's request. Such Supplemental Retainer supports Podhurst's intent to utilize Steven Smith as Class Representative to represent the common interests of the members of the Class as a whole. In addition, Podhurst authored, presented to Petitioner for signature and filed with the Court an affidavit of Steven Smith dated April 15, 2016 declaring "…that I am ready, able and willing to step into the shoes of my fellow Retired NFL Football Player, Kevin Turner, as the Subclass 2 Representative, to perform whatever tasks are necessary to insure the fair and adequate representation of the Subclass 2 Class Members going forward. During the period of representation by Podhurst did not review any medical records, interview any family members or strategize on pursuing an individual claim. The only conversations with Podhurst involved the Smiths involvement in a common benefit case. The Smiths primarily received the email blasts sent by Podhurst to all of their clients. Chie Smith reached out to Co-Lead Counsel Christopher Seeger on several occasions with questions about the Settlement and her relationship with Podhurst during Podhurst's representation of the Smiths.

As Class Counsel, all of the fees and costs generated or incurred by Podhurst from the inception of the representation until July 19, 2016, the date of Podhurst's termination (ECF 7365-2), were related solely to Podhurst's representation of the Settlement Class where services were performed for the common benefit of the Settlement Class Members. Podhurst performed no material work for Steven Smith separate and distinct from the common-benefit work performed for the Class.  They did not work on an individual case for the Smiths; they only worked on a common benefit case that would include the Smiths.

Following the termination of their retainer agreements with Podhurst, Steven and Chie Smith have been represented on a *pro bono* basis by Catherina Watters. After the January 7, 2017 Effective Date of the Settlement Agreement, Watters prepared, litigated and collected on behalf of the Smiths the Monetary Award claim and determination, including resolving an Assignment of Interest deemed prohibited by the Settlement Terms, which was executed under the advice of Podhurst, preparing a Medicare hardship request and waiver, and resolving other delays in the Claims Process.

Following the MDL status conference on April 25, 2012 in this matter, the Court approved and appointed a Plaintiffs' Executive Committee ("PEC") which, among others, included attorney Steven C. Marks from Podhurst.  Later, upon motion by the PEC, the Court by Case Management Order No. 5 dated September 11, 2012, established a protocol for submission and review of attorneys' fees and expenses for payment of common-benefit work if a Common Benefit Fund later were established. (*See* ECF No. 3710). Under CMO No. 5, attorneys performing common-benefit work were required to submit an initial time and expense report for the period of the inception of this MDL case (January 31, 2012) through September 30, 2012.

Thereafter, counsel were required to submit time and expense reports for common-benefit work on a quarterly basis.

On April 22, 2015, this Court granted final approval of the Settlement Agreement. On April 18, 2016, the Third Circuit approved the Settlement Agreement.  After Petitions for review were denied by the United States Supreme Court, January 7, 2017 was established as the Effective Date of the Settlement Agreement.

On February 13, 2017 Co-Lead Class Counsel, on behalf of all Class Counsel, filed a fee petition requesting the full $112.5 Million contemplated by the Settlement Agreement.  Included in this fee petition was a Declaration of Steven C. Marks ("Marks' Declaration"), in which it was represented (a) that Podhurst performed from inception through July 15, 2016 common-benefit services worth $3,005,744 and (b) that Podhurst incurred costs and expenses totaling $771,128. (*See* ECF No. 7151-8) With respect to Steven Smith, the Marks Declaration stated:

> Paragraph 23: . . . "Early in the settlement process it became apparent to the Committee that we would need class representatives to serve in what was determined to be two subclasses: symptomatic former players and asymptomatic former players. I was tasked with vetting the background and medical records of hundreds of former players to identify suitable class representatives. This task entailed investigating their backgrounds, interviewing family and friends, and conducting detailed research into their player histories to make sure that they were adequate and proper class representatives."

Steven Smith deserves exceptional and unique treatment by the Court to deviate from the presumptive 22% fee cap, due to the fact that all of the time invested and expenses incurred by Podhurst involving Steven Smith, including inviting Chie Smith to attend a Fairness Hearing in New York and procuring a "day in the life of" video of Steven Smith were undertaken to advance the interests of the Settlement Class, and all fees for such time and reimbursement for expenses have been awarded by the Court.  Podhurst provided no services (and thus incurred

zero expenses) to Steven and Chie Smith in the claims process of the Settlement Agreement.  As

it is Podhurst's burden to establish that any fee charged to Steven Smith is a reasonable fee, it is

apparent from the date range of the engagement that any time spent on individual legal

representation, if any, could only be *de minimus*; thus no separate individual additional fee

should be awarded to Podhurst.

In an email dated July 14, 2016, Podhurst attorney Stephen Rosenthal responds to Steven

and Chie Smith's request for clarification on payment of fees under their original contingency

fee agreements, clearly distinguishing common benefit services and individual services for its

clients and clearly using the terms "future work" and "additional work" to refer to the type of

services that will render compensation for fees under individual fee contracts.

"Once the settlement is truly final, we do hope to get paid a fee for our firm's
contribution to the overall effort on behalf of all class members." "As far as individual fee
contracts with clients, you are of course not alone in asking the important question of how the fee
for future work done on behalf of individual clients will be handled."  We expect that the Court,
or the Settlement Claims Administrator, will probably set a range that it considers to be a fair fee
percentage for the additional work each firm does for its individual clients (which will include
things like preparing the client's paperwork for the BAP process, making the case for the
maximum possible payout applicable to each case on the settlement grid, advising the client and
dealing with any medical experts through that process, and handling any objections or appeals of
the individual case that may be necessary)."  We fully anticipate that the fee percentage that will
be established as the appropriate rate for the additional work we will do for each client's
individual case, to actually secure your monetary recovery, will be <u>less</u> than the percentage stated
in our contracts that were written 5-6 years ago" (ECF No. 7365-4).

Furthermore, Respondent attests that "Podhurst attorneys and staff spoke with his doctors

and collected, organized, and reviewed Smith's medical records and information pertaining to

insurance liens." This is contrary to statements provided by Steven Smith's doctors (attached as

Exhibit "A". Again, there is no evidence that Podhurst performed any individual work on behalf

of the Smiths.

**III.    The Payment Terms of the Original Contingency Fee Agreement as Understood by the Petitioner.**

The original and only contingency fee agreements executed by Steven Smith and Chie

Smith with Podhurst provided for a contingency fee of 40% of any recovery, plus an additional

5% after institution of any appellate proceedings.  It is the understanding of Petitioners as

previously stated in Paragraph II, that no fees would be taken out of Steven Smith's monetary

award based on the representations made to Petitioner by Podhurst and the language contained in

the contingency fee agreements themselves.

**IV.    A Statement Declaring under Penalty of Perjury that the Petitioner has Informed the Respondent, or his Attorney, if Represented, that the Petition for Deviation is being filed with the Court and that the Petitioner has Served the Respondent with a Copy of the Petition for Deviation.**

The Petitioner, through its undersigned counsel, hereby declares under penalty of perjury,

that the Respondent, Podhurst, has been informed via ECF filing in this Court, along with a US

Mail delivery of this Petition for Deviation from the Fee Cap filed in this matter.

Respectfully submitted,

*/s/ Joe H. Tucker, Jr.*
Joe H. Tucker, Jr. (PA 56617)
Kevin L. Golden (PA 94210)
**Tucker Law Group**
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: (215) 875-0609
Fax: (215) 559-6209
jtucker@tlgattorneys.com
kgolden@tlgattorneys.com

*/s/ Catherina Watters*
Catherina Watters (CA 206317)
(admitted *pro hac vice*)
P.O. BOX 2252
Orinda, CA 94563

(925) 548-2232
catherina@changwatters.com

*ATTORNEYS FOR STEVEN A. SMITH*

Dated: June 1, 2018

## **CERTIFICATE OF SERVICE**

I, Joe H. Tucker, Jr., hereby certify that a copy of the foregoing document was filed

through the Court's ECF system on June 1, 2018, and that such filing generates a notice of filing

that constitutes service on all counsel of record.


/s/ Joe H. Tucker, Jr.
Joe H. Tucker, Jr.

# EXHIBIT "A"

Gary L. Tunell, M.D.
Steven P. Herzog, M.D.
Alan W. Martin, M.D.
N. Bruce Jenevein, M.D.
Daragh Heitzman, M.D.

TEXAS NEUROLOGY, P.A.

6301 GASTON AVENUE • SUITE 100 • WEST TOWER
DALLAS, TEXAS 75214
TEL (214) 827-3610, FAX (214) 827-1054
HIPAA FAX (214) 821-4017
www.texasneurology.com

Waleed H. El-Feky, M.D.
C. Fish Greenfield, M.D.
Gincy Samuel, M.D.
Dixie J. Woolston, PhD
Maria Philip, M.D.

To: Whom it may concern

From: Texas Neurology

As of 04/17/2017 we have not received any medical request paperwork from attorney Steve Marks Podhurst Orseck regarding patient Steve Smith.

4/13/2017                                               MyChart - Inbox

Name: Steven A. Smith | DOB: 8/30/1964 | MRN: 90020855 | PCP: Asked - No PCP

# re:Question

___

To:      Steven A. Smith

From:    Katherine Scott, RRT

Received:   4/13/2017 11:36 AM CDT

___

Good morning,

Steve's chart shows no record of being contacted by a law firm. Patient confidentiality laws are very clear. In order to protect patient confidentiality, we would be unable to even acknowledge Steve as being a pt in our clinic, , let alone provide any form of medical information without your or his prior consent.


---- Message ----
From: Steven A. Smith
Sent: 4/13/2017 10:34 AM CDT
To: Joseph Viroslav, MD
Subject: re:Question

Hi Dr. V,

Since 2012 we have been plaintiffs in a civil lawsuit with the NFL. We would like to know if our attorney, Steven Marks or a representative such as a paralegal with Podhurst- Orseck based in Miami, Florida has contacted your offices anytime between Feb 2012-Jul 2017 requesting Steve's medical history. Approx. how many times did they contact you for information pertaining to Steve? Any and all information is greatly appreciated. Please feel free to contact me if you have any questions. Thank you.

Chie Smith

MyChart® licensed from Epic Systems Corporation, © 1999 - 2015.