# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS CONCUSSION INJURY LITIGATION | |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated, Plaintiffs, v. National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc., Defendants. | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## PETITION FOR DEVIATION FROM FEE CAP BY THE ESTATE OF WALLY HILGENBERG

Petitioner Eric Hilgenberg, as trustee of the estate of Wally Hilgenberg (the "Hilgenberg Estate"), pursuant to the Court's Orders dated April 5, 2018 (ECF No. 9863) and May 3, 2018 (ECF No. 9956), submits the following Petition for Deviation from the Fee Cap set by the Court. Petitioner was previously represented by Respondent Anapol Weiss ("Respondent"), which representation was terminated by the Hilgenberg Estate on July 18, 2017. In response, on July 26, 2017, Respondent asserted an attorneys' lien of 23% "which includes the 5% hold back for future work on settlement implementation." (ECF No. 8136.) The Claims Administrator has withheld $644,000 towards Respondent's lien, as well as an additional 5% ($140,000) for future common benefit work.

1

### A. The Extent of the Deviation Sought.

The Hilgenberg Estate seeks a deviation from the presumptive cap from 22% to 5%. Respondent has already been awarded $4,643,590 by the Court in common benefit fees. (ECF No. 10019.) Given that Respondent had limited involvement with the Hilgenberg Estate, allowing this deviation will avoid an additional windfall of $616,000 to Respondent, but allow for reasonable compensation for the minimal risks associated with the Hilgenberg Estate's claim.[1]

### B. Statement of the Exceptional or Unique Circumstances for which the Court should allow a Deviation from the Presumptive Fee Cap.

The Hilgenberg Estate should be allowed a deviation from the presumptive fee cap because Respondent performed *de minimis* work on its behalf and awarding Respondent a 22% recovery – or $616,000 – would be an unreasonable and unjust windfall.

The Hilgenberg Estate signed a contingency fee agreement with Respondent on January 24, 2012 – less than a week before this MDL was established. On January 30, 2012, the Hilgenberg Estate provided Respondent (through a paralegal, Ted Pepin) with all relevant information it needed to file a complaint on the estate's behalf. Respondent completed and signed a complaint on the Hilgenberg Estate's behalf *that day*. (See Case No. 12-cv-00598, ECF No. 1.) Respondent filed the complaint on February 3, 2012. (Id.) The Hilgenberg Estate thereafter collected and provided Wally Hilgenberg's medical records to Respondent (again coordinating through Mr. Pepin). The Hilgenberg Estate then received only sporadic, mass email updates about the status of this action. The Hilgenberg Estate also encountered difficulties in obtaining updates as to specific questions of their claim from Respondent.

---

[1] The Hilgenberg Estate expects, once Respondent has detailed the time it spent specifically for the Hilgenberg Estate (see ECF. No. 9956, Rule 16(a)(2)), that a 5% award (of $140,000) will represent more than reasonable compensation for the Respondent.

On July 18, 2017, the Hilgenberg Estate terminated its attorney-client relationship with Respondent. The Hilgenberg Estate thereafter completed, without Respondent's involvement, the claim submission process.[2] That included completion of claim forms, obtaining certification forms, providing medical records, answering the Claims Administrator's questions, and otherwise completing the claim submission process.

At the time the estate's complaint was filed, the MDL had been established and the work required to complete the estate's complaint was, based on the information provided by the estate to Respondent, minimal at best. Respondent spent an insignificant amount of time for the benefit of the Hilgenberg Estate specifically. Rather, the work Respondent performed for the Hilgenberg Estate was almost exclusively common benefit work. Allowing Respondent to collect $616,000 (and potentially $756,000, if the Court awards Respondent the full 5% holdback for future work[3]) would result in an unreasonable and unjust windfall to the Respondent. The Hilgenberg Estate believes that, given the circumstances and the common benefit funds already awarded to Respondent, it should not be required to provide any additional compensation to Respondent. However, as a gesture of good faith, the Hilgenberg Estate respectfully requests that the Court deviate from the presumptive fee cap and award Respondent only 5% of the estate's recovery.

C.    **The Payment Terms in the Original Contingency Fee Agreement as Understood by the Hilgenberg Estate.**

The payment terms of the original contingency fee agreement, as understood by the Hilgenberg Estate, provided for a contingency fee of 35% of the recovery, plus fees and costs

---

[2] At the time that the Hilgenberg Estate terminated Respondent's representation, Respondent had registered the estate for claim submission.

[3] The Hilgenberg Estate previously objected to the 5% withholding, as well as the enforcement of the CFA. (ECF No. 7360.) Given that the Hilgenberg Estate has already received its award, there is no future work anticipated of Respondent and allowing the 5% withholding is a further harm to the state.

incurred by the Respondent.  The Hilgenberg Estate also understood, under the terms of the contingency fee agreement, that if the Respondents services were terminated, that Respondent would receive "reasonabl[e] compensat[ion.]"

Once the Hilgenberg Estate terminated Respondent's representation, Respondent asserted an attorneys' lien of 23% of the estate's recovery, which lien was meant to "include[] the 5% hold back for future work on settlement implementation."  (ECF No. 8136.) [4]

### D.   A Statement Declaring under Penalty of Perjury that the Hilgenberg Estate has informed the Respondent that the Petition for Deviation is being filed with the Court and that the Petition has served the Respondent with a Copy of the Petition for Deviation.

The Hilgenberg Estate, through its undersigned counsel, hereby declares under penalty of perjury, that the Respondent, Anapol Weiss, has been made aware of the foregoing petition by ECF Filing and that the Hilgenberg Estate has also served the Respondent with a courtesy copy of the Petition by way of pre-paid First Class U.S. Mail.

Respectfully submitted,

**TUCKER LAW GROUP, LLC**

Dated: June 1, 2018         By: /s/ Joe H. Tucker, Jr.
                                Joe H. Tucker, Jr., Esquire
                                Kevin L. Golden, Esquire
                                Ten Penn Center
                                1801 Market Street, Suite 2500
                                Philadelphia, PA 19103
                                (215) 875-0609
                                *Attorneys for Eric Hilgenberg, as Trustee of the Estate of Wally Hilgenberg*

---

[4] Despite Respondent's request for a lien of 23% to include the 5% holdback for future work, the Claims Administrator is currently withholding both an attorney lien of 23% ($644,000) and a holdback of 5% for future work ($140,000), for a total lien of 28%.

**CERTIFICATE OF SERVICE**

    I, Joe H. Tucker, Jr., hereby certify that a copy of the foregoing document was filed through the Court's ECF system on June 1, 2018, and that such filing generates a notice of filing that constitutes service on all counsel of record.

                                                     /s/ Joe H. Tucker, Jr.
                                                     Joe H. Tucker, Jr.