IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL § <br> LEAGUE PLAYERS' CONCUSSION § <br> LITIGATION § <br> _____ § <br> § <br> § <br> THIS DOCUMENT RELATES TO: § <br> ALL ACTIONS § | No. 12-md-2323 (AB) <br><br> MDL No. 2323 |

**Movants' Reply in Support of Their Motion to Stay Enforcement of Attorneys' Fee Allocation Order (ECF 10019) Pending Appeal and Request for Expedited Consideration**

The Alexander Objectors and Lubel Voyles, LLP ("Movants") file this reply in spport of their Motion to Stay Enforcement of the Court's Attorneys' Fee Allocation Order (ECF 10019) pending appeal of that order (ECF 10036), as well as the underlying but related orders (i) awarding common benefit fees (ECF 9860/9861), (ii) maintaining a 5% holdback from Class Members' recoveries for future fees (ECF 7151), and (iii) presumptively limiting the effective IRPA fee recovery to 17% (ECF 9862/9863).

## REPLY

Movants have asked that the Court maintain the *status quo* with respect to the $112.5 Fee Fund pending an appeal of the Court's decisions about the disposition of that fund. It is not remarkable that Co-Lead Class Counsel pleads for immediate disbursement of $86.5 million on the claim that Movants' appeal has no merit; the chief, one-year strategy of Co-Lead Class Counsel in this fee dispute amounts to no more than name calling and

1

character assassination of anyone who voices any legal opposition.[1]  But, Movants have brought a legitimate and respectful challenge in law.

What is remarkable is Co-Lead Class Counsel's comparison of the harm to be suffered by each party in the absence of a stay:  Class Counsel, it is urged, *deserve* the $85.6 million now; the Class Members, the argument continues, are unimpacted by that percent-of-recovery reward.  Co-Lead Class Counsel's position defies the settlement terms and reality.  The Fee Fund is all that the NFL will contribute toward fees for the 65-year life of this Settlement and Class Counsel asked for all of it in year one.  Class Members are directly taxed for fees when the Fee Fund is gone and, in recognition of that reality, the Court is already holding Class Members' funds in preparation for the inevitable.  This request for stay asks that the Court hold the Fee Fund intact, allowing it to multiply, while the Court of Appeals determines whether invasion of Class Members' money is, in fact, inevitable.

**1**.     **The appellate issues are meritorious and the Third Circuit will not accord full deference to this Court on most of the issues presented.**

Co-Lead Class Counsel rests its assessment on the unlikelihood of Movants' success on appeal upon a mistaken belief that the Third Circuit will

---

[1] Co-Lead Class Counsel attempts to characterize Movants as the lone obstacles to the course charted by the Court.  The Court knows well that the opposite true.  Co-Lead Class Counsel stands alone on most of the fee issues, including the 5% holdback necessitated (even prophylactically) by the $112.5 Petition for Fees.  For example, Co-Lead Class Counsel Sol Weiss argued the 5% holdback wasn't necessary (ECF 9548)  And, Class Counsel Gene Lockes argued neither $112.5 million fees nor a 5% holdback were necessary (ECF 9579) ("it would be premature for the Court to issue an award of all or substantially all common benefit fees at this stage). The Court's appointed expert urged that 5% was not necessary and, at a minimum was excessive, particularly if some of the Fee Fund was held and invested (ECF9526, p. 1; ECF 9571, p. 4)  And, Movants were among the first, in March, 2017 (ECF 7355, pp 57-58), to challenge the 5% holdback and urge that the Court invest some of the Fee Fund for regeneration.  But, still, the Court is holding the 5% as sought by Co-Lead Counsel Seeger, alone.  Movants' challenge is not rogue.

2

apply an abuse of discretion standard. (ECF 10031, p. 3 n. 2) Not so. In fact, most of the merits of Movants' appeal will be governed by a less deferential standard of review.

For example, Movants challenge *the standard* by which the Court awarded fees in this case; the Court's decisions on the standard for calculating attorneys' fees are subject to **plenary** (no deference) review in the Third Circuit. *See In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 299 (3d Cir.2005). So, the Court's first substantive fee decision—that "the case is most appropriately reviewed as a 'common fund'" (ECF 9860, p. 5)—is accorded no deference on appeal. The Court's decision to use percent-of-recovery under the circumstances of this Settlement Agreement[2] is unprecedented, particularly as the Court and Class Counsel agree this fee does not come from a "common fund." *See In re NFL*, 307 F.R.D. 351, 374 (E. D. Pa. 2015) (citing Settlement § 21.1 and stating "[a] fee award in this case will not come from a common fund"); *see also* ECF 7151, Co-Lead Class Counsel stating "[t]he instant case does not involve either an application for assessment of fees against the defendant pursuant to a fee-shifting statute, or a traditional common fund out of which payment of fees are sought").

Understandably, the Court has observed Class Cousel's many hours of effort on behalf of former NFL Players and wishes to compensate those efforts. An interim lodestar would have accomplished just that. Instead, the Court has followed Co-Lead Class Counsel's entreaties to speculate on the value of a Settlement Agreement solely from pre-Settlement actuarial data and

---

[2] Those circumstances are: The settlement is uncapped. The value of the Settlement is unknowable because even registered Class Members are not guaranteed any payment, the value is computed entirely upon actuarial data generated pre-settlement; and the actuarial data for 97% of the Class Members is an extrapolation inasmuch as the disease category is a Settlement Agreement fiction.

3

registrants to award Class Counsel a substantial percentage of a recovery that has not—and may not be—realized. A challenge to the Court's use of percent-of-recover, without analysis of other, fiscally prudent methods to conserve the fund, is at the heart of this appeal. Class Members' funds should not be at risk during this *bona fide* challenge to methodology.

Further, Movants challenge *the process* by which the Court arrived at a fee award of $112.5 million; an allocation of $85 million solely for Class Counsel's negotiation of the settlement; a 5% tax on Class Members' recoveries; and a cap on private counsel fees. In particular Movants challenge (i) the lack of open access, (ii) the failure to afford discovery, and (iii) the failure to establish an orderly fee review required by the Settlement Agreement.

Specifically, faced with a $112.5 million Fee Petition that would completely drain the fund, Movants sought a Fee Fund Case Management Order pursuant to the Settlement Agreement (ECF 7176; ECF 6087, ¶ 14, stating that "motions for an award of attorneys' fees and reasonably incurred costs, as contemplated by the Parties in Section 21.1 of the Settlement Agreement, may be filed at an appropriate time to be determined by the Court, after the Effective Date of the Settlement Agreement"). Movants also sought leave to serve fee-petition discovery (ECF 7534) in order to cross-examine the only evidence ever proffered on "reasonableness" of fees—Co-Lead Class Counsel Mr. Seeger's statement that he "deemed all work being billed reasonable, necessary, and non-duplicative" *See* ECF No. 7152-2 at ¶¶ 72-73, 75.

Movants also sought "open access" to Class Counsel's contemporaneously-maintained fee data between 2012 and 2017 (ECF 8396). The Court had ordered that data maintained quarterly and audited (ECF 3710,

4

Case Management Order No. 5, p. 3, 9).  Class Members' Monetary Award Fund presumably paid for such audits, but none of that information was ever filed or supplied to Class Members.

Ultimately, the Court refused to make the CMO data public (ECF 9510). Yet, the Court based its $112.5 million award order (EFC 9860) and its $86.5 million allocation order (10019) on lodestar data suppled *in camera* upon the Court's *sua sponte* request (ECF 9860, p. 15). Co-Lead Class Counsel never urged a privilege over those records and Co-Lead Class Counsel gave Class Members no notice that the records were tendered to the Court.  But, based upon those records, the Court found that the hours Class Counsel had alleged were spent on common benefit to the class to be fair, reasonable, and presumably nonduplicative. *Id*.; *see See Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983) (holding that to arrive at a reasonable number of hours worked, the court must excise those hours deemed excessive, redundant, or otherwise unnecessary); *see also Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir.1983) (explaining that Class Counsel must properly delegate tasks so that "a Michelangelo [does] not charge Sistine Chapel rates for painting a farmer's barn").  The process lacked transparency and rigor.

As an additional process problem, the Court appointed a Rule 706 expert on certain fee questions.  Movants pointed out the expert's conflict of interest—having served as a paid expert for Class Counsel (ECF 8350, pp. 7-9). Class Counsel admitted the conflict (ECF 8372, "This is to advise the Court that on February 7, 2012, I, Sol H .Weiss, retained William Rubenstein to work with and give advice to the Plaintiff's Steering Committee."). Therefore, the Court ordered that the parties would have a chance to depose the expert under Fed. R. Civ. P. 706 to explore the conflict (ECF 8376, "All parties will have an opportunity to respond to Professor Rubenstein's report

5

in writing and, pursuant to the provisions of FRE 706(b)(2), any party may depose Professor Rubenstein about his opinion after his report is submitted."). The Court changed course, however, once the expert filed a report (ECF 9527). Though the expert did not address the conflict in that report, the Court denied Movants a deposition despite repeated requests (ECF 9356, 9554, 9558 n. 5) The expert, Professor Rubenstein, opined that the Court was authorized to cut private fees in order to ensure Class Counsel's fees did not cause overall fees to be excessive (ECF9526; ECF 9571). And, Profesor Rubenstein ultimately opined that if the Court determined to tax Class Members' recoveries to pay future fees, that tax should not exceed 2% (ECF 9571).

The Third Circuit does not afford full "'first-hand observation[]' deference to district court decisions that implicate open access." *See In re Cendant Corp.*, 260 F.3d 183, 197 (3d Cir. 2001). Therefore, Class Members' funds should not be at risk during this *bona fide* challenge to a process that excluded Class Members from meaningful and adversarial participation in the process.

Finally, the Court's construction of the Settlement Agreement, including the common benefit fee process and the 5% holdback process will also receive plenary review by the Third Circuit. *See In re Cendant Corp. Prides Litig.,* 233 F.3d 188, 193 (3d Cir.2000) (holding that "contract construction, that is, the legal operation of the contract, is a question of law mandating plenary review").

**II.   Irreparable harm will befall Class Members if there is no stay.**

First, Co-Lead Class Counsel persists in its illogical attempts to uncouple the Fee Fund from Class Members' settlement money. *See* ECF10031, p. 8 (Arguing that "[i]t is not Class Members' settlement money that will be give[n] away"). These funds are inextricably intertwined because

6

once the Fee Fund is gone, all fees and expenses are paid directly by Class Members.  And, according to Co-Lead Class Counsel, the Court has already awarded the entire fee fund, even though only $85.6 million of that sum has been allocated.  As such, the entire $112.5 million Fee Fund has been awarded to twelve attorneys in twenty-six law firms.

As *prima facie* proof of the link between fees and Class Member money, the Court is already holding back 5% of every Class Members' monetary recovery as insurance against full depletion of the Fee Fund.  Co-Lead Class Counsel's answer to that reality is pure speculation: "[I]t is simply implausible that the more than $22.8 million remaining in the [Fee Fund] will be dissipated during the pendency of Movants' appeal"[3]  (ECF 10031, p. 6-7)  Co-Lead Class Counsel completely misses the point.  The Court is prophylactically holding Class Members' money *because*, based upon the status of the Fee Fund, the Court cannot be sure the money will not be necessary.  Thus, for the protection of future fees, the Court is depriving the most injured former NFL Players use of 5% of their money.  These are former players with ALS, Alzheimer's, and Parkinson's.  In this first year, the NFL Concussion website shows that the Court has held $21,919,882 in settlement money from players without any forecast or promise about when or whether or how, during the 65-year settlement, those funds might be returned.  Most of those players will never have a chance to use that money—even if the

---

[3] Co-Lead Class Counsel apparently forgets that the Court has already pledged a large sum of that $22.8 million.  Class Counsel has already requested, and the Court has approved as reasonable, payment for 6,830 hours "implementation" fees through September, 2017. (ECF 9860, p. 15).  Those fees are not part of the $85.6 million.  As such, *assuming* that the Court only awards lodestar for implementation work (instead of additional percent of the recovery) and *assuming* that the Court awards the blended rate of $623.05 (ECF 9860, p.16) instead of the $985 rate sworn to by Co-Lead Class Counsel (ECF 7171, Addendum No. 1) but found unreasonable by the Court, Class Counsel has already depleted the Fee Fund by an additional $4.26 million for less than a year of work up to September, 2017.

7

decision is reversed on appeal.  It is imminently reasonable for the Court to prophylactically withhold fees, not for 65 years, but for the duration of an appeal, so that Class Members' funds are preserved for their benefit.

Then, Co-Lead Class Counsel urges that there is no irreparable harm to Class Members, including Movants, if the Court distributes the $85.6 million from the Fee Fund now because Class Counsel must make a "written commitment to return funds in the event of a reversal on appeal" (ECF10031, p. 6-7).  Co-Lead Class Counsel forgets that the *interest* that will be earned on that $85.6 million during the appeal approaches $1 million.  Class Counsel make no promise to refund fees plus interest lost by the distribution "in the event of a reversal on appeal." That money will be irrevocably lost to Class Members.

## III. Class Counsel could have avoided any harm they claim they will suffer if the Court stays distribution of the full $86.5 million pending appeal.

The Court issued the original order awarding Class Counsel $106 million in fees on April 5, 2018 (ECF 9860). Movants timely appealed that order on May 3, 2018 (ECF 9960). *Subsequently*, on May 15, 2018, the Court held an allocation hearing.  Knowing there was an appeal pending, Co-Lead Class Counsel could have asked the Court to award, at a minimum or in the interim, its lodestar fee pending an appeal. But, it did not. Stated differently, Co-Lead Class Counsel does not and cannot argue that it is harmed by not receiving the bonus on top of its lodestar.  Instead, Co-Lead Class Counsel complains of harm in delay of "compensation for [ ] work" (ECF 10031, p. 2).  That is, hours reasonably worked multiplied by a reasonable rate.

8

## PRAYER

Movants ask the Court to stay the enforcement of its allocation Order (ECF 10019) and the underlying, related orders awarding common benefit fee (ECF 9860/9861) and maintaining a 5% holdback from Class Members' recoveries for future fees (ECF 7151); and the Court's Order/Memorandum Opinion (ECF 9862/9863) presumptively limiting the effective IRPA fee recovery to 17%.

Date: June 1, 2018                                                       Respectfully Submitted,

| | |
|---|---|
| Mickey Washington | */s/ Lance H. Lubel* <br> Lance H. Lubel |
| Texas State Bar No.: 24039233 | Texas State Bar No.: 12651125 |
| WASHINGTON & ASSOCIATES, PLLC | Adam Voyles |
| 2019 Wichita Street | Texas State Bar No.: 24003121 |
| Houston, Texas 77004 | LUBEL VOYLES LLP |
| Telephone: (713) 225-1838 | 675 Bering Dr.., Suite 850 |
| Facsimile: (713) 225-1866 | Houston, TX 77057 |
| Email: mw@mickeywashington.com | Telephone: (713) 284-5200 |
| | Facsimile: (713) 284-5250 |
| James Carlos Canady | Email: lance@lubelvoyles.com |
| Texas State Bar No.: 24034357 | adam@lubelvoyles.com |
| THE CANADY LAW FIRM | |
| 5020 Montrose Blvd., Suite 701 | |
| Houston, TX 77006 | |
| Telephone: (832) 977-9136 | |
| Facsimile: (832) 714-0314 | |
| Email: ccanady@canadylawfirm.com | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2018, I filed the foregoing through the Court's CM/ECF system, which will provide electronic notice to all counsel of record and constitutes service on all counsel of record.

                                              */s/ Lance H. Lubel*
                                              Lance H. Lubel