## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION,**<br><br>**Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,**<br><br>**Defendants.** | **Civil Action No.:  2:12-md-02323-AB** |

---

**BRIEF OF NON-PARTIES, CAMBRIDGE CAPITAL GROUP, LLC, CAMBRIDGE CAPITAL ADVISORS, LLC, CAMBRIDGE CAPITAL PARTNERS, LP, CAMBRIDGE CAPITAL GROUP EQUITY OPTION OPPORTUNITIES, LP, CAMBRIDGE CAPITAL HOLDINGS, CAMBRIDGE CAPITAL FUNDING, INC., GAIL MILON, AND PHILLIP TIMOTHY HOWARD, IN OPPOSITION TO CO-LEAD COUNSEL'S MOTION FOR SANCTIONS AND OTHER RELIEF [DOCKET ENTRY No. 9974]**

---

**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
1300 Mt. Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962
(973) 993-8100
Attorneys for Non-Parties, Cambridge Capital Group, LLC, Cambridge Capital Advisors, LLC, Cambridge Capital Partners, LP, Cambridge Capital Group Equity Option Opportunities, LP, Cambridge Capital Holdings, Cambridge Capital Funding, Inc., Gail Milon, and Phillip Timothy Howard

Of Counsel:

  John P. Leonard, Esq.

On the Brief:

  William N. Aumenta, Esq.
  Joyce E. Boyle, Esq.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND .......................................... 4

    A.  Discovery Directed to Cambridge and Howard .................................................. 4

    B.  The Cambridge Entities and Howard's Responses to the Discovery Demands................. 4

    C.  Class Counsel's Motion to Compel ..................................................................... 5

    D.  Howard and the Cambridge Entities' Responses to the Numerous Misstatements
        Contained in the Motion to Compel and Oppositions to Said Motion ............... 5

    E.  The October 3, 2017, Document Production by Howard...................................... 6

    F.  The Court's Order on the Motion to Compel........................................................ 6

    G.  The Court's Order dated December 8, 2017 ........................................................ 6

    H.  Class Counsel's Motion to Prohibit ..................................................................... 6

    I.  The Court's Order dated February 20, 2018, Relative to the Motion to Prohibit ............... 8

    J.  Cambridge's March 1 and 2, 2018, Document Production.................................... 8

    K.  Class Counsel's Request for Clarification Regarding the March 1, 2018, Document
        Production and the Cambridge Entities' Response Thereto ................................. 9

    L.  The Cambridge Entities' March 13, 2018, Response to Class Counsel's Request for
        Clarification and New Additional Requests for Documents and Information................... 9

    M.  The Cambridge Entities' Continued Efforts to Comply with the Court's Directive to
        Provide Relevant Discovery.................................................................................. 9

    N.  The April 2, 2018, Hearing ................................................................................ 11

    O.  The Cambridge Entities' Correspondence to the Court Following the April 2, 2018,
        Hearing................................................................................................................ 11

    P.  The Motion for Sanctions filed by Class Counsel ............................................. 11

LEGAL ARGUMENT .......................................................................................................... 12

  POINT ONE ....................................................................................................................... 12

THE RELIEF SOUGHT BY CLASS COUNSEL IN THE MOTION FOR SANCTIONS IS
UNWARRANTED AND SHOULD BE DENIED IN ITS ENTIRETY ................................. 12

        A.  There is No Legal or Factual Basis for the Imposition of Sanctions Against
            Cambridge or Howard ...................................................................... 13

        B.  The Request for the Return of Retirement Monies and Earnings to Class Members is
            Premature and Based on Speculation ................................................ 18

i

      i.    The Audiotape On Which Class Counsel Relies is Likely an Illegal  .Recording, and Constitutes Hearsay and/or Inadmissible Evidence ................................... 18

      ii.    The Reinhard Communications Are Similarly Unreliable and/or Constitute Inadmissible Hearsay ...................................................................................... 20

      iii.   The Relief Sought is Supported Solely By Pure Speculation .......................... 21

          1.   The Injunctive Relief Sought By Class Counsel is Neither Necessary Nor Appropriate and Not Supported By Applicable Law ............................... 23

C.    The Requested Relief for the Retention of an Auditor at Cambridge's Expense is Moot ...................................................................................................................... 27

D.    The Proposed Order Sets Forth a Deadline for the Production of Documents Relating to Non-Qualified Funds and the Scheduling of a Further Hearing .......................... 27

E.    The Depositions of the Current and Former Officers of Cambridge Are Premature .................................................................................................................. 27

CONCLUSION ........................................................................................................................ 28

## TABLE OF AUTHORITIES

Page(s)

CASES

Ashcroft v. Iqbal,
     556 U.S. 662 (2009).............................................................................................21

Bailey v. McMahon,
     2012 WL 1246147 (M.D.Pa. 2012) ...................................................................14

Banks v. Beard,
     2013 WL 3773837 (M.D.Pa. 2013) ...................................................................14

Continental Group, Inc. v. Amoco Chemicals Corp.,
     614 F.2d 351 (3d. Cir. 1980)..............................................................................24

Cottingham v. Tutor Perini Building Corp.,
     2016 WL 54916 (E.D.Pa. 2016) ...................................................................24, 26

Ctr. Capital Corp. v. PRA Aviation, LLC,
     2014 WL 1281060 (E.D. Pa. Mar. 31, 2014)......................................................24

Diaz v. Rucker,
     2016 WL 8735711 (E.D.Pa. 2016) .....................................................................21

Federal Trade Commission v. Vantage Point Services, LLC,
     266 F.Supp.3d 648, 654 (W.D.N.Y. 2017) .........................................................19

Flaherty v. M.A. Bruder & Sons, Inc.,
     202 F.R.D. 137 (E.D.Pa. 2001)...........................................................................13

Georgine v. Amchem Products, Inc.,
     1995 WL 561297 (E.D.Pa. 1995) .................................................................24, 26

In re Anthracite Coal Antitrust Litigation,
     82 F.R.D. 364 (M.D.Pa. 1979).....................................................................13, 15

In re Jimmy John's Overtime Litig.,
     877 F.3d 756 (7th Cir. 2017).............................................................................24

In re Visa Check/Mastermoney Antitrust Litigation,
     2006 WL 1025588 (E.D.N.Y. Mar. 31, 2006)..........................................25, 26, 27

iii

Ohio Citizens for Responsible Energy, Inc. v. NRC,
  479 U.S. 1312 (1986) ................................................................................23

Omnipoint Communications, Inc. v. Common Council of the City of Peekskill,
  202 F.Supp.2d 210 (S.D.N.Y. 2002) ..........................................................19

Republic of Philippines v. Westinghouse Electric Corp.,
  43 F.3d 65 (3rd Cir. 1994) .............................................................14, 15, 17

Scarborough v. Eubanks,
  747 F.2d 871 (3rd Cir. 1984) .....................................................................13

United States v. Massachusetts Industrial Finance Agency,
  162 F.R.D. 410..........................................................................................13

Zurich Am. Ins. Co. v. Superior Court for the State of Cal.,
  326 F.3d 816 (7th Cir. 2003) ......................................................................23

**STATUTES**

All Writs Act, 28 U.S.C. § 1651 ...................................................................23, 26

Fla. Stat. Ann. § 934.03 ..................................................................................19

18 Pa. C.S.A., Pa. St., Pt. II, Art. F, Ch. 57, Subch.B, § 5703, et seq. .........19

**RULES**

Fed.R.Evid. 602 ..............................................................................................19

Fed.R.Civ.Pro. 65............................................................................23, 24, 26

## PRELIMINARY STATEMENT

Non-parties, Cambridge Capital Group, LLC, Cambridge Capital Advisors, LLC, Cambridge Capital Partners, LP, Cambridge Capital Group Equity Option Opportunities, LP, Cambridge Capital Holdings, Cambridge Capital Funding, Inc. (collectively, "Cambridge"), Gail Milon ("Milon"), and Phillip Timothy Howard ("Howard") (collectively, "Respondents"), respectfully submit this brief in opposition to the Motion for Sanctions filed by Co-Lead Class Counsel Christopher Seeger ("Class Counsel").

At its core, the Motion for Sanctions involves nothing more than a simple discovery dispute between Class Counsel and Respondents – all non-parties to the instant litigation - relative to the production of an accounting of fund documentation.  Rather than seek discovery-related relief, Class Counsel relies upon inflammatory and sharply disputed statements about the Respondents in making an outrageous leap to a request for sanctions at bar.  Contrary to Class Counsel's suggestion, Cambridge, Howard and Milon have complied with their discovery obligations.  They have provided written responses to Class Counsel's discovery requests and produced thousands of pages of documents, and kept Class Counsel and the Court informed of their progress along the way.  Recognizing their ongoing discovery obligations, Respondents will continue to produce any additional responsive information as it becomes available.  As for an accounting of the fund documentation as sought by the Order dated February 20, 2018, Cambridge produced the requested accounting documents in March 2018.  Nevertheless, because Class Counsel has requested an audited accounting, Cambridge retained an outside management company and Certified Public Accountant to create the requested audited materials.  As previously communicated to Class Counsel and the Court, the production of such an accounting

1

has necessitated the re-creation and automation of the fund documentation due to the previous recordkeeping practices of the fund, which Respondents have been diligently attempting to remedy.   Respondents will provide the complete audited accounting to Class Counsel immediately upon receipt of same.

In short, this is in no way a situation where Respondents have flatly failed to comply with discovery demands or acted in bad faith with regard to their discovery obligations.   Rather, Respondents have (i) provided multiple responses to Class Counsel's discovery requests and made numerous document productions; (ii) taken a sustained proactive approach in retaining and fully cooperating with an outside management company and Certified Public Accountant to re-create the fund documentation and prepare the requested accounting; (iii) provided regular updates to Class Counsel and the Court concerning  the discovery produced and any remaining discovery;  and (iv) repeatedly offered to work collaboratively with Class Counsel to accomplished his purported discovery objectives.   Accordingly, Class Counsel's unfounded request for the imposition of sanctions is simply misplaced.

Troublingly, the overwhelming majority of the Motion for Sanctions involves contested allegations that are wholly unrelated to the discovery dispute at issue.  In fact, the Motion for Sanctions is littered with unsupported issues and inflammatory assertions, such as the claim of self-help by Cambridge and Howard, which rest solely on speculation, conjecture of counsel hearsay and simply not true.  Class Counsel's disturbing attempt to distract the Court and expand his mandate by distorting the record with inadmissible postulations should not be further countenanced.

For the reasons set forth herein, Cambridge, Milon and Howard respectfully request that

2

the Court deny the Motion for Sanctions in its entirety.  In furtherance of its documented efforts to fully comply with Class Counsel's purported discovery concerns, Respondents have submitted for the Court's consideration a form of order denying the Motion and establishing a discovery schedule to address the subject accounting and any related issues.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    Discovery Directed to Cambridge and Howard

By Order dated July 19, 2017, the Court granted Class Counsel leave to seek discovery from third-party fund providers.  (ECF 8037).  Nearly a month later, on August 10, 2017, Class Counsel propounded interrogatories and document demands on the Cambridge Entities[1] seeking, in pertinent part, (i) documents and information regarding communications and agreements by and between former NFL players who are members of the class action captioned In Re: National Football League Players' Concussion Injury Litigation ("NFL Retired Players"), and the Cambridge Entities and Howard; (ii) the nature of the relationship between the parties; and (iii) the services provided by the Cambridge Entities and Howard to the NFL Retired Players.  (ECF 8371, Exhs. E and F).

### B.    The Cambridge Entities and Howard's Responses to the Discovery Demands

On August 24, 2017, Martin Black, Esq. ("Black"), then-counsel for the Cambridge Entities, provided written responses and objections to the discovery demands.  (ECF 8371, Exh. H)

Also, on August 25, 2017, representing himself pro se[2], Howard responded to the interrogatories and provided responsive information regarding agreements and communications

---

1  The "Cambridge Entities" is  defined in Class Counsel's moving papers (ECF 9974, p. 2) as  Cambridge Capital Group, LLC, Cambridge Capital Advisors, LLC, Cambridge Capital Partners, LP, Cambridge Capital Group Equity Option Opportunities, LP, Cambridge Capital Holdings, Cambridge Capital Funding, Inc., Your Case, LLC, and their present and former directors, officers, partners, employees, contractors, agents, consultants, affiliates, successors and assigns, including, but not limited to Addys Walker, Gail Milon and Phillip Timothy Howard.  As noted above, for purposes of this motion, this firm represents the Cambridge Capital Group, LLC, Cambridge Capital Advisors, LLC, Cambridge Capital Partners, LP, Cambridge Capital Group Equity Option Opportunities, LP, Cambridge Capital Holdings, Cambridge Capital Funding, Inc., Gail Milon and Phillip Timothy Howard.

2  While Black served as counsel for the Cambridge Entities, which included Howard with regard to his limited involvement with the Cambridge Entities, Howard  represented himself with regard to any discovery demands  directed to him  in his individual capacity as counsel for any relevant NFL Retired Players and his law firm, Howard & Associates, PA.

4

with the NFL Retired Players, contact information for the NFL Retired Players, expert agreements with medical providers, the contingency fee arrangement, and travel and medical services that he believed he could provide without violating the attorney-client privilege and work product doctrine.  Recognizing his continuing discovery obligation, Howard indicated that he would provide supplemental responses if he received authorization from his clients to release the requested information and/or if there was a determination as to the applicability of the raised privileges and objections. (ECF 8371, Exh. G).

C.     **Class Counsel's Motion to Compel**

On September 12, 2017, Class Counsel filed a Motion to Compel seeking more specific answers to discovery and a determination as to the objections raised by Howard and Black, among other relief.  However, the majority of the motion was not devoted to the discovery dispute at all, but instead characteristically included a series of inflammatory and unsubstantiated remarks about Howard and the Cambridge Entities.  (ECF 8371).

D.     **Howard and the Cambridge Entities' Responses to the Numerous Misstatements Contained in the Motion to Compel and Oppositions to Said Motion**

On September 13, 2017, Howard responded to the Motion to Compel by, among other things, indicating that he would provide additional responsive information if the Court determined that any such production would not violate applicable privileges or objections. Further, Howard revised his previous answers to discovery based on his understanding that one former client, referenced as John Doe in Class Counsel's Motion to Compel, waived any applicable attorney-client privilege.  Moreover, in an effort to be forthcoming with information, Howard dispelled several misstatements contained in the Motion to Compel, even though their

5

subject matter was entirely irrelevant to the discovery dispute. (ECF 8373).

On September 18, 2017, Howard filed a brief in opposition to the Motion to Compel. (ECF 8386). On September 19, 2017, Black filed opposition to the Motion to Compel on behalf of the Cambridge Entities. (ECF 8389).

### E. The October 3, 2017, Document Production by Howard

On October 3, 2017, Howard produced information and documents regarding Retainer Agreements and Power of Attorney with NFL Retired Players. (Exh. D to the Leonard Cert.)

### F. The Court's Order on the Motion to Compel

On October 19, 2017, the Court entered an Order requiring discovery responses on or before November 3, 2017. The Court denied the remainder of the relief sought by Class Counsel in the Motion to Compel. (ECF 8466).

### G. The Court's Order dated December 8, 2017

On December 8, 2017, the Court entered an Explanation and Order ruling that NFL Retired Players who qualify as class members entitled to a settlement, are prohibited from assigning or attempting to assign their monetary claims to third parties and that any agreement in that respect is void. (ECF 9517). That decision has been appealed and is currently pending before the Third Circuit Court of Appeals. (Third Circuit Court of Appeals Docket Nos. 2018-cv-1040, 2018-cv-1482 and 2018-cv-1639).

### H. Class Counsel's Motion to Prohibit

On January 26, 2018, Class Counsel filed a motion seeking an order (1) prohibiting the Cambridge Entities from seeking repayment of advances to Class Members related to assignment agreements through means other than those identified in the Court's December 8, 2017

6

Explanation and Order and from disseminating misinformation concerning the Explanation and Order; (2) requiring corrective disclosures; (3) compelling production of all documents related to, and an accounting of, Class Members' retirement funds being held by the Cambridge Entities and (4) directing the Cambridge Entities to return to Class Members their retirement funds held as collateral related to assignment agreements, along with earnings and interest ("Motion to Prohibit[3]").  (ECF 9578).  Based purely on speculation and hearsay, Class Counsel then made the incredible leap of asserting that the Cambridge Entities had engaged in self-help relative to the Explanation and Order dated December 8, 2017, and repayment of advances made to NFL Retired Players by the Cambridge Entities by withholding certain retirement funds.  Without any proof whatsoever that any such retirement funds were withheld, Class Counsel asked that the Court prohibit the Cambridge Entities from seeking repayment of advances to Class Members related to assignment agreements and/or direct the Cambridge Entities to return to Class Members their retirement funds held as collateral related to assignment agreements, along with earnings and interest.

Correspondence between Class Counsel and Black regarding the alleged self-help only serves to underscore the speculative and unsubstantiated nature of the relief sought.  (ECF 9578, Exhs. E and F).  Specifically, in response to Class Counsel's inquiries as to whether the Cambridge Entities engaged in self-help, Black unequivocally represented to the Court that they had neither engaged in self-help nor taken ownership over retirement accounts to offset monies the Cambridge Entities had advanced to NFL Retired Players.  Ibid.

---

3  Given the overlap of relief sought in the Motion for Sanctions (ECF 9974) and Motion to Prohibit (ECF 9578), and Class Counsel's reliance on the legal argument contained in the Motion to Prohibit relative to the relief sought in the Motion for Sanctions (ECF 9974, p. 21), this submission serves as opposition to both motions.

## I.      The Court's Order dated February 20, 2018, Relative to the Motion to Prohibit

By Order dated February 20, 2018, the Court directed the Cambridge Entities to "stand still" pending resolution of the motion, including refraining from contact with the Class Members and "neither mov[ing] nor tak[ing] ownership of the retirement assets of any class member."  The Court further directed the Cambridge Entities to produce (i) all documents related to the retirement monies received from the Class Members and (ii) a complete accounting of all retirement funds provided to the Cambridge Entities by the Class Members by March 2, 2018. Also, the Court indicated that a final determination would not be made prior to a hearing scheduled on April 2, 2018.  (ECF 9750).

## J.      Cambridge's March 1 and 2, 2018, Document Production

On March 1, 2018, in the first of five separate productions, the Cambridge Entities produced a comprehensive  accounting of funds provided to them by NFL Retired Players as well as approximately 600 pages of documents including, but not limited to, payment summaries, documents from its custodian, Millennium Trust Company ("Millennium"), relevant Subscription Agreement and Power of Attorney documents and files for five (5) NFL Retired Players.  (ECF 9778-2)

On March 2, 2018, Milon produced files for an additional five (5) NFL Retired Players. (ECF 9778-5)

By correspondence dated March 5, 2018, Milon, the current Managing Vice President of Cambridge Capital Group, LLC, forwarded the documents to Class Counsel and advised that it appeared that Black had withdrawn as counsel for the Cambridge Entities.  (ECF 9778, Exh. E).

8

**K.**     **Class Counsel's Request for Clarification Regarding the March 1, 2018, Document Production and the Cambridge Entities' Response Thereto**

In a letter dated March 7, 2018, Class Counsel wrote to Milon requesting clarification as to the document production and made additional requests for documents and information from the Cambridge Entities.  Class Counsel also sought an update regarding a comprehensive audit of the relevant files, which was initiated and commissioned by Cambridge Capital Group, LLC.[4] (ECF 9778, Exh. C).

On the same date, Milon produced supplemental documents from the file of one of the NFP Retired Players.  Exhibit E to the Leonard Cert.

**L.**     **The Cambridge Entities' March 13, 2018, Response to Class Counsel's Request for Clarification and New Additional Requests for Documents and Information**

Shortly thereafter, on March 13, 2018, Milon responded to Class Counsel that she would need adequate time to respond to the additional requests for information and documents given the voluminous nature of the newly sought information.  Milon also noted that she was experiencing difficulty retaining counsel for the Cambridge Entities and notified Class Counsel that she would be seeking an adjournment of the April 2, 2018, hearing so as to allow the Cambridge Entities sufficient time to respond to the issues before the Court.  (ECF 9778, Exh. D).

**M.**     **The Cambridge Entities' Continued Efforts to Comply with the Court's Directive to Provide Relevant Discovery**

On March 27, 2018, Milon again wrote to Class Counsel and provided additional information regarding the audit, the non-qualified funds of the NFL Retired Players,

---

4  As noted below, Milon retained an accountant to conduct an audit and accounting of the fund.  Bill Bogan, Jr. of Bogan Public Management Co. is performing the audit and has provided correspondence to that effect in support of Cambridge and Howard's opposition to the Motion for Sanctions. See, Certification of John P. Leonard, Esq. dated June 4, 2018 ("Leonard

9

Millennium's role with regard to the recordkeeping, and attached the Private Offering Memorandum for Cambridge Capital Partners, LP.  Exhibit F to the Leonard Cert.

On March 29, 2018, Milon wrote to the Court and Class Counsel to provide additional updates regarding the litigation and compliance with the Court's Order to produce relevant documents and information.  Further, Milon indicated that she would appear by telephone at the April 2, 2018, hearing.  Milon also provided background information as to the management of the fund and, in particular, Donald Reinhard's[5] involvement with the fund, the impact of his involvement on the completeness and accuracy of the fund documentation, and resulting difficulty experienced by Cambridge Capital Group, LLC with regard to the re-creation and automation of the fund documentation relative to compliance with the discovery demands.  (ECF 9974, Exh. 1).   Milon also produced the following documents: the Limited Partnership Agreement for Cambridge Capital Partners (CCP), the Limited Partnership Agreement for Cambridge Capital Group (CCGEOO); the Investment Management Services Agreement for CCP; the Investment Management Services Agreement for CCGEOO, the ADV filing with FINRA and Letter to Judge Brody.  Exhibit G to the Leonard Cert.

---

Cert."), Exhibit A.

[5]  In their Motion to Prohibit, Class Counsel relies upon certain communications of Donald Reinhard ("Reinhard"), a convicted felon who is currently incarcerated.  (ECF 9578, pp. 9-10)(Reinhard's communications to a class member while he was incarcerated dated January 16th and 20th, 2018; our research reveals that Reinhard was incarcerated on December 12, 2017).  It is disingenuous of Class Counsel to now ignore the obvious difficulties experienced by Cambridge and Howard with regard to the production of information and documents due, in no small part, to Reinhard's mismanagement and absconding with relevant financial documents upon his termination from the fund and yet cite to communications from Reinhard in support of his unfounded arguments.

### N.        The April 2, 2018, Hearing

At the hearing on April 2, 2018[6], Milon voluntarily appeared via telephone. While Milon was permitted to listen in on the hearing, she was not permitted to speak on behalf of the Cambridge Entities to the issues pending before the Court.  Of note, during the hearing, Class Counsel admitted that Cambridge had "turned over relevant documents" and that the Cambridge Entities were in the process of conducting an audit of the fund through an accountant.  Class Counsel also acknowledged that she had only recently issued a subpoena to Millennium and that the timeframe in which Millennium had to respond to the subpoena had not yet passed.  (ECF 9850).  Further, Class Counsel admitted that her understanding of the alleged facts was based on pure speculation in stating that they "surmise[d] this is what happened".  Ibid.

### O.        The Cambridge Entities' Correspondence to the Court Following the April 2, 2018, Hearing

As further evidence of her good faith and intention to fulfill any discovery obligations owed to Class Counsel, on April 12, 2018, Milon provided an additional update to the Court and Class Counsel following the April 2, 2018, hearing.  Milon responded to several inquiries made by Class Counsel in previous correspondence and also provided information to refute several misstatements made by Class Counsel.

### P.        The Motion for Sanctions filed by Class Counsel

On May 8, 2018, Class Counsel filed the Motion for Sanctions, the details of which are discussed below.

---

6  Cambridge and Howard hereby object to the PowerPoint presentation introduced to the Court during the April 2, 2018, hearing.  The presentation is premised upon hearsay, unsubstantiated statements, and conjecture of  counsel. For example, the presentation does not contain any facts in the record to substantiate Class Counsel's claims that either Cambridge or Howard has engaged in self-help.  Indeed, it could not because no such self-help has occurred.  Cambridge and Howard also object to the extent  that Class Counsel relies upon said presentation in support of its Motion for Sanctions.

## LEGAL ARGUMENT

## POINT ONE

## THE RELIEF SOUGHT BY CLASS COUNSEL IN THE MOTION FOR SANCTIONS IS UNWARRANTED AND SHOULD BE DENIED IN ITS ENTIRETY

In the Motion for Sanctions, and without any basis in fact or law, Class Counsel seeks to

persuade this Court that an Order should be entered:

(1) Imposing sanctions against the Cambridge Entities for failure to comply with the Court's February 20, 2018 Order [ECF No. 9750];

(2) Compelling Cambridge to immediately return the retirement monies and any earnings thereon to Class Members and to produce the accountings;

(3) Appointing an accountant, whose fees shall be borne by Cambridge, to review the accountings and report to the Court as to their accuracy;

(4) Compelling Cambridge to provide an accounting and any documents related to non-qualified funds of Class Members invested with Cambridge;

(5) Compelling certain current and former officers of Cambridge to submit to depositions; and

(6) Scheduling a hearing to determine whether other relief is appropriate.

(ECF 9974)

As discussed below, the relief sought by Class Counsel is entirely unwarranted and

unsubstantiated.    The overwhelming majority of the motion disingenuously focuses on

misleading and inflammatory statements intended only to distract the Court from the core issue,

namely: whether there has been a violation of this Court's discovery Order warranting the

imposition of sanctions.   As discussed below, at considerable time and expense, Respondents

have continuously made good faith efforts to comply with all discovery demands propounded by

Class Counsel and have already undertaken the retention of an outside accountant to perform an audit in order to produce the accounting requested by Class Counsel. However, Class Counsel conveniently glosses over Respondents' irrefutable compliance with their discovery obligations to paint a misplaced picture of dilatoriness that he contends gives rise to sanctions. Nothing could be further from the truth. Given the applicable case law and the ongoing good faith efforts undertaken by Respondent to comply with the Court's directives, sanctions are simply not appropriate.

**A.      There is No Legal or Factual Basis for the Imposition of Sanctions Against Cambridge or Howard**

While a court has discretion to issue sanctions for failure to comply with discovery orders, that discretion is not without limits. See Flaherty v. M.A. Bruder & Sons, Inc., 202 F.R.D. 137, 141 (E.D.Pa. 2001). Several factors should be weighed when considering the propriety of discovery sanctions, which include: (1) the extent of a party's personal responsibility; (2) a history of dilatoriness; (3) whether the attorney's conduct was willful and in bad faith, (4) the meritoriousness of the claim; (5) prejudice to the other party; and (6) appropriateness of alternative sanctions. Id. (citing Scarborough v. Eubanks, 747 F.2d 871 (3rd Cir. 1984)); see also, United States v. Massachusetts Industrial Finance Agency, 162 F.R.D. 410, 412 (noting that any order imposing sanctions on a party for failure to comply with a discovery order must be preceded by a finding that the party acted willfully or in bad faith so as to obstruct the discovery by the opposing party); In re Anthracite Coal Antitrust Litigation, 82 F.R.D. 364, 368 (M.D.Pa. 1979)).

Moreover, any sanction imposed should be just and must be specifically related to the

particular claim or claims at issue in the order to provide discovery violated by the offending party. Banks v. Beard, 2013 WL 3773837, *9 (M.D.Pa. 2013). The Court should assess the culpability of the offending party and the prejudice to the party seeking sanctions. Id.; see also, Bailey v. McMahon, 2012 WL 1246147, *10 (M.D.Pa. 2012).

In support of their request for harsh sanctions for allegedly "flouting" this Court's February 20, 2018, Order, Class Counsel cites to a single case - Republic of Philippines v. Westinghouse Electric Corp., 43 F.3d 65, 73 (3rd Cir. 1994). Class Counsel relies upon the Republic of Philippines case for the principle that courts have the "*inherent* authority to impose sanctions upon those who would abuse the judicial process." See Class Counsel's Brief, p. 22 (emphasis in original). While this general proposition is true, Class Counsel carefully avoided an important balance of the Court's discussion on the imposition of sanctions. When it comes to the "inherent" power of the Court, the Third Circuit stated, in pertinent part:

> Of course, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." "A primary aspect of [a district court's] discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." Thus, a district court must ensure that there is an adequate factual predicate for flexing its substantial muscle under its inherent powers, and must also ensure that the sanction is tailored to address the harm identified. In exercising its discretion under its inherent powers, the court should be guided by the same considerations that guide it in the imposition of sanctions under the Federal Rules. First, the court must consider the conduct at issue and explain why the conduct warrants sanction…Obviously, a pattern of wrongdoing may require a stiffer sanction than an isolated incident; a grave wrongdoing may compel a more severe sanction than might a minor infraction; and wrongdoing that actually prejudices the wrongdoer's opponent or hinders the administration of justice may demand a stronger response than wrongdoing that, through good fortune or diligence of court or counsel, fails to achieve its untoward object. Furthermore, there may be mitigating factors that

14

> must be accounted for in shaping the court's response.
>
> Second, having evaluated the conduct at issue, the district court must specifically consider the range of permissible sanctions and explain why less severe alternatives to the sanction imposed are inadequate or inappropriate.

Id. at 74 (citations omitted).

In the Republic of Philippines case, the District Court found that the Republic of the Philippines was harassing witnesses who had testified against it in a suit brought in Federal Court in New Jersey.  Thus, the Court enjoined the Republic from continuing this course of harassment. The plaintiff appealed.  On appeal, the Third Circuit observed, among other things, that the District Court failed to identify what alternative sanctions were available other than an injunction and failed to explain why those options would not have achieved the results desired.  Ultimately, the Third Circuit reversed the decision, vacated the sanctions that were imposed, and remanded for a redetermination of sanctions. Id. at 81.

In applying the foregoing legal precedent to the instant matter, it cannot be seriously disputed that sanctions against the respondents are neither warranted nor appropriate.  First, Class Counsel fails to make any showing that Cambridge and Howard have acted willfully or in bad faith with regard to their discovery obligations.  In re Anthracite Coal Antitrust Litigation, supra. In fact, the record demonstrates that the exact opposite is true – Respondents have acted in good faith in providing numerous responses to the discovery demands and complying with requests for relevant information including, but not limited to, the following:

- Written responses to the interrogatories and document demands propounded by Class Counsel on Cambridge and Howard (ECF 8391, Exh. H and ECF 8371, Exh. G);

15

- Correspondence dated August 25, 2017, from Howard to Class Counsel providing information responsive to the discovery propounded (ECF 8371, Exh. G);

- Additional responsive information in Howard's opposition to Class Counsel's Motion to Compel (ECF 8386);

- An October 3, 2017, production by Howard enclosing Retainer Agreements and Power of Attorney as to NFL Retired Players (Exhibit D to the Leonard Cert.);

- The March 1 and 2, 2018, document productions made by Milon including but not limited to a comprehensive accounting of funds provided to Cambridge by NFL Retired Players, payment summaries, documents from Millennium, relevant Subscription Agreement and Power of Attorney documents and files for five (5) NFL Retired Players. (ECF 9778-2) On March 2, 2018, Milon produced files for an additional five (5) NFL Retired Players (ECF 9778-5);

- Milon's March 7, 2018, supplemental document production from the file of one of the NFL Retired Players  (Exhibit E to the Leonard Cert.);

- Milon's correspondence to Class Counsel dated March 27, 2018, providing additional information responsive to the discovery demands and attaching the Private Offering Memorandum for Cambridge Capital Partners, LP (Exhibit F to the Leonard Cert.);

- Milon's correspondence to Class Counsel dated March 29, 2018, providing additional information responsive to the discovery demands and production of the Limited Partnership Agreement for Cambridge Capital Partners (CCP), the Limited Partnership Agreement for Cambridge Capital Group (CCGEOO); the Investment Management Services Agreement for CCP; the Investment Management Services Agreement for CCGEOO, the ADV filing with FINRA and Letter to Judge Brody. (Exhibit G to the Leonard Cert.);

- Milon's participation in the April 2, 2018, hearing before the Court (ECF 9850);

Additionally, Milon has provided additional information and responses to Class Counsel's requests for clarification as to the documents already produced, and is in the process of determining if Cambridge is in possession of any information or documentation responsive to

16

supplemental discovery[7] requests even though Class Counsel never formalized or properly served supplemental demands on Cambridge. (ECF 9778, Exh. D). Moreover, Cambridge has been proactive in retaining an independent auditor, at its sole cost and expense, so it can produce the fund accounting requested by Class Counsel.

Not surprisingly, in their moving papers, Class Counsel makes little to no mention of the efforts undertaken and documents already provided by Respondents. If they had, it would expose the true nature of the instant motion, which is the functional equivalent of a motion compelling more specific answers to discovery, and would highlight the unnecessary and inappropriate inclusion of the remaining arguments contained in the motion in an attempt to impose sanctions on compliant non-parties to this litigation.

Second, there are several mitigating factors for the Court to consider including the difficulties faced by Respondents with regard to the fund management issues, the legal representation over the past several months, the re-creation and automation of the fund documents in order for an audit to be completed and finalized, and the fact that Milon is the sole manager currently working at Cambridge Capital Group, LLC. In light of the foregoing, the mitigating factors dictate that sanctions are simply not warranted. See Republic of Philippines v. Westinghouse Electric Corp., supra.

Third, there are alternate solutions available to ensure that any remaining discovery, if any, is produced in a timely manner to Class Counsel including, but not limited to, future court

---

7  In its correspondence dated March 7, 2018 (ECF 9778, Exh. C), Class Counsel requested supplemental discovery from Cambridge including, but not limited to, documents referenced under the "split" column heading, information regarding Bank of America and Millennium, contact information for Millennium and identification of other financial institutions maintaining class members' IRA monies or non-retirement funds and a copy of all "versions" of the Limited Partnership Agreement and Private Offering Memorandum. Clearly, sanctions are not appropriate when Class Counsel serves supplemental discovery, and, in doing so, circumvents applicable Court Rules in properly serving the discovery.

conferences to review the status of discovery especially considering that Respondents are now represented by counsel.  Ibid.

Respondents have already represented that an audit is currently underway.  According to the accountant, the audit should be completed by July 31, 2018.  See Exhibit A to the Leonard Cert.  As such, Respondents have included with their opposition a proposed Order, which provides for the production of the accounting and audit results by a date certain and a deadline to produce any remaining discovery, if any.

**B.      The Request for the Return of Retirement Monies and Earnings to Class Members is Premature and Based on Speculation**

The crux of Class Counsel's argument is that Cambridge and Howard should return the retirement monies and earnings to Class Members based on Class Counsel's misplaced *assumptions* that Cambridge and Howard have engaged in self-help and improper activities.  .  In support of these *assumptions*, Class Counsel relies upon 1) the alleged content of a potentially illegally obtained audiotape and 2) unsubstantiated statements made by a former manager of Cambridge who is currently incarcerated for aggravated child abuse.  As discussed below, this "evidence" is founded upon wholly unreliable sources, constitutes inadmissible evidence, lacks authenticity, and is otherwise improper.

**i.      The Audiotape On Which Class Counsel Relies is Likely an Illegal Recording, and Constitutes Hearsay and/or Inadmissible Evidence**

As noted above, in support of their motion, Class Counsel relies upon an audiotape recording of an alleged discussion held on December 17, 2017, between Addys Walker, a former manager of the fund that was dismissed, "Mr. Smith", a NFL Retired Player, and Milon.  (ECF 9578, Exh. A).  However, Class Counsel has made no showing that the audiotape was legally

recorded.  Pennsylvania, the venue of the instant matter, and Florida, the state from which Milon and Walker conducted the alleged phone conversation, follow the "two-party consent" rule, which requires the consent of every party to a phone call or conversation in order to make the recording lawful.  See 18 Pa. C.S.A., Pa. St., Pt. II, Art. F, Ch. 57, Subch. B, §5703, *et. seq.*, and Fla. Stat. Ann. § 934.03.  Neither Cambridge nor Milon provided such consent and, as such, Class Counsel has made absolutely no showing that the audiotape was legally recorded.  In light of the foregoing, the reliance on the audiotape in support of Class Counsel's position is astounding.

Moreover, the content of the audiotape constitutes inadmissible hearsay.  It is well-established that a declarant is not competent to testify to matters beyond his or her personal knowledge.  See Fed.R.Evid. 602 ("[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter").  Here, all that has been provided is an unauthenticated transcript of an audiotape prepared by Class Counsel, which purports to contain a conversation among third-parties.  Class Counsel was not a party to the conversation and, therefore, cannot possible testify as to the veracity of the recording's contents.  An attorney's affidavit or declaration not based on personal knowledge carries no weight.  Federal Trade Commission v. Vantage Point Services, LLC, 266 F.Supp.3d 648, 654 (W.D.N.Y. 2017); see also, Omnipoint Communications, Inc. v. Common Council of the City of Peekskill, 202 F.Supp.2d 210 (S.D.N.Y. 2002)(held that those portions of an attorney's affidavit contains conclusory statements of law or information not possibly based on personal knowledge are stricken and will be disregarded).  Furthermore, Class Counsel has not demonstrated that the audiotape can be authenticated.  Therefore, the audiotape cannot

possibly be relied upon and should be disregarded by the Court.  Most importantly, the actions alleged never occurred.

> **ii.     The Reinhard Communications Are Similarly Unreliable and/or Constitute Inadmissible Hearsay**

Class Counsel also relies upon communications allegedly transmitted by Reinhard, a former manager of the fund, to NFL Retired Player(s) in support of their position that Cambridge and/or Howard have engaged in self-help.  (ECF 9578, Exhs. B and C).

As an initial matter, Reinhard is currently incarcerated for aggravated child abuse and not subject to examination in open court.  Class Counsel's reliance on Reinhard's alleged communications, while incarcerated, is wholly disingenuous.  As previously communicated to Class Counsel and the Court, Cambridge and Howard have demonstrated that certain fund documentation needs to be re-created and automated due to Reinhard's previous mismanagement and absconding with original financial records causing delays in the production of the fund accounting.  Class Counsel has not challenged this position and conveniently glossed over Reinhard's potential credibility issues and those associated with his alleged communications.  Instead, Class Counsel opts to rely upon Reinhard's unauthenticated communications in an attempt to bolster their unsupported theory that Cambridge and Howard have engaged in self-help.  They have not done so and these litigation tactics should be flatly rejected by the Court.

Furthermore, these alleged communications contain absolutely no statements or information that support the self-help theory, much less, the outrageous position that Cambridge or Howard has used retirement monies to pay back advances made to NFL Retired Players.  (ECF 9578, Exhs. B and C).  In any event, the alleged communications constitute inadmissible hearsay

for the same reasons as the audiotape as outlined above (*i.e.*, Class Counsel has not certified that they have personal knowledge of the communications).

For the foregoing reasons, Class Counsel has provided no evidence that Cambridge or Howard have engaged in self-help or used retirement monies to pay back advances made to NFL Retired Players. Accordingly, the requested relief should be denied.

### iii.        The Relief Sought is Supported Solely By Pure Speculation

The remainder of the claims made by Class Counsel is irrelevant and based upon pure speculation and conjecture of counsel. Such arguments include, but are not limited to: that Cambridge and Howard ignored or circumvented the rescission procedure outlined in the Explanation and Order dated December 8, 2017[8]; the location of the Cambridge entities[9]; Ms. Lois Koons' alleged involvement with the fund[10]; the involvement of the entity, Chronicles, LLC ("Chronicles"), relative to the fund[11] and the complete accounting of the fund[12].

Unquestionably, in order for the Court to grant the relief sought by Class Counsel relative to the claims of self-help, there must be credible and relevant evidence to warrant said relief. See generally, Diaz v. Rucker, 2016 WL 8735711 (E.D.Pa. 2016)(internal citation omitted)(a plaintiff cannot support his/her claims "merely on subjective suspicions and unsupported speculation"); see also, Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(conclusory allegations are insufficient to support a facially plausible claim; the facts asserted must allow the court "to draw the reasonable

---

8 Since Cambridge and Howard have not engaged in self-help or used retirement monies to pay back  advances made to NFL Retired Players, they could not have violated the rescission procedures noted in the Explanation and Order dated December 8, 2017.
9 Without any legal or factual support, Class Counsel desperately insinuates that the location of the Cambridge Entities has any bearing on the relief sought in the instant motion.  Clearly, it does not.
10  Class Counsel improperly suggests, without factual or legal basis, that Ms. Koons was involved with the management of the Cambridge Entities and makes absolutely no showing that any such involvement would be improper in the first instance.
11 Milon previously informed Class Counsel that Chronicles was wholly unrelated to the Cambridge Entities.
12  Class Counsel's arguments regarding the NFL Retired Players' account balances is pure speculation pending the results of

inference that the defendant is liable for the misconduct alleged"); (ECF 9974; pp. 14, 15, 19, 20)(Class Counsel's own brief is strewn with terms and qualifiers, such as [a]ssuming, speculative, likely, skeptical, suspects, appears, and in all likelihood, that uncover the speculative and assumptive nature of the motion).

Once stripped of those unsubstantiated and irrelevant arguments, the motion contains absolutely no credible evidence that Cambridge or Howard have engaged in any type of self-help. Instead, the record is clear that in response to Class Counsel's inquiries, Black stated unequivocally that the Cambridge Entities had neither engaged in self-help nor taken ownership over retirement accounts to offset monies the Cambridge Entities had advanced to NFL Retired Players[13].  (ECF 9578, Exhs. E and F).  See also, the Declarations of Howard and Milon attached to the Leonard Cert. as Exhibits B and C, respectively.   Along those lines, Class Counsel provides absolutely no evidence that Cambridge or Howard have failed to comply with the "stand still" provisions contained in the February 20, 2018, Order.  (ECF 9750).

Accordingly, there is no basis for the relief sought by Class Counsel with regard to the claim of self-help.

---

the audit currently being undertaken by Cambridge.
13 The specific inquiries made by Class Counsel were whether Cambridge was "currently engaging in, or advising Retired NFL Football Players that it intends to engage in, the following conduct, either: [p]roceeding to seek repayment now from Retired NFL Players for any monies advanced to them by Cambridge or [t]aking ownership of retirement account monies to offset any monies Cambridge has advanced to Retired NFL Players."  Black's response was "**No**" as to both questions (bold in original). (ECF 9578, Exh. E).  Further, Black indicated in the letter that he spoke with Howard, Milon and Walker regarding the inquiries made by Class Counsel.

1.      **The Injunctive Relief Sought By Class Counsel is Neither Necessary Nor Appropriate and Not Supported by Applicable Law**

In addition to the relief sought in the Motion for Sanctions, Class Counsel seeks a permanent injunction against Cambridge and Howard in their Motion to Prohibit regarding the alleged dissemination of misinformation concerning the Explanation and Order dated December 8, 2017; requiring corrective disclosures as to the alleged misinformation; and prohibiting Cambridge and Howard from seeking repayment of advances to NFL Retired Players related to assignment agreements through means other than those outlined in the Explanation and Order dated December 8, 2017.  Class Counsel asserts that the All Writs Act grants authority to the Court to issue the injunction sought here.  For the reasons outlined below, the injunctive relief must be denied.

The All Writs Act, 28 U.S.C. § 1651, allows federal courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." (emphasis added).  However, federal courts do not have carte blanche to issue injunctive relief under the All Writs Act as, "[such] relief. . .is to be used 'sparingly and only in the most critical and exigent circumstances'."  Ohio Citizens for Responsible Energy, Inc. v. NRC, 479 U.S. 1312, 1313 (1986)(Scalia, L., in chambers).

Additionally, prior to issuance of an injunction, "a district court must still determine whether an injunction is an appropriate exercise of its authority."  Zurich Am. Ins. Co. v. Superior Court for the State of Cal., 326 F.3d 816, 825 (7th Cir. 2003).  In that regard, one of the considerations a court must make is whether Rule 65 and the traditional requirements to grant injunctive relief apply to injunctions sought under the All Writs Act.  See Fed.R.Civ.Pro. 65

As a general rule, a plaintiff seeking a preliminary injunction must demonstrate several requisite elements: (1) that he is likely to succeed on the merits, (2) there is no adequate remedy at law, (3) he is likely to suffer irreparable harm absent such relief, (4) the balance of equities tips in his favor, and (5) an injunction is in the public interest.  Ctr. Capital Corp. v. PRA Aviation, LLC, 2014 WL 1281060, at *3 (E.D. Pa. Mar. 31, 2014).   On the issue as to whether those requirements must be met in issuing an injunction under the All Writs Act, there is a circuit split.  The First, Fourth, and Fifth Circuits agree that Rule 65 and traditional injunction rules apply while the Second and Eleventh Circuits have held otherwise.  In re Jimmy John's Overtime Litig., 877 F.3d 756, 770, n.11 (7th Cir. 2017).

While the Third Circuit has not definitively ruled on this issue, in Cottingham v. Tutor Perini Building Corp., 2016 WL 54916 (E.D.Pa. 2016), the Eastern District of Pennsylvania followed a Third Circuit decision, Continental Group, Inc. v. Amoco Chemicals Corp., 614 F.2d 351, 358 (3d. Cir. 1980), in requiring that at least one of the traditional requirements, a showing of irreparable harm, be met when determining whether to issue an injunction under the All Writs Act.  Specifically, the Court relied upon the Continental case for the proposition that in order for a preliminary injunction to issue "more than a risk of irreparable harm must be demonstrated. The requisite for injunctive relief has been characterized as a clear showing of immediate irreparable injury. . .".  Id. (emphasis added). The court ultimately granted defendants' request to enjoin the parallel state court action but did so on the basis that there was a showing of immediate irreparable harm by defendants.  See also, Georgine v. Amchem Products, Inc., 1995 WL 561297, n. 23 (E.D.Pa. 1995)(applying traditional requirements of Rule 65 to injunction sought under All Writs Act notwithstanding the fact that the Third Circuit has not yet ruled on

this issue).

Additionally, one of the cases heavily relied upon by Class Counsel with regard to its requested relief for an injunction, In re Visa Check/Mastermoney Antitrust Litigation, 2006 WL 1025588 (E.D.N.Y. Mar. 31, 2006), only serves to support Cambridge and Howard's position.  In Visa Check, the issue to be decided by the court was a request for injunctive relief from class counsel against Spectrum Settlement Recovery, LLC ("Spectrum"), a claim filing and fund recovery service for commercial class actions, relating to alleged "false and misleading statements to entice class members to retain Spectrum to administer their claims and. . .to purchase their claims outright." Id. at 1.  In class counsel's initial application to the Court, they sought a "declaration that any contracts between Spectrum and class members were void and an injunction prohibiting Spectrum from soliciting class members and requiring it to correct the misstatements it made to class members." Id. at 2.  The court referred the application to a Special Master to determine if Spectrum made misstatements to class members.  Ibid.  While the Special Master found that Spectrum had, in fact, made misrepresentations, she also recommended that the court refrain from granting the injunctive relief against Spectrum.  The court adopted the recommendations of the Special Master, did not grant the injunctive relief and allowed class counsel to publish and transmit a corrective disclosure to class members.  Ibid. While the court eventually did grant an injunction against Spectrum, it was only after a new series of alleged misrepresentations and the "repeated dissemination" of same that formed the basis of the court's decision.  Id. at 7.

In the instant matter, the injunctive relief sought is not justified as it is neither

"necessary" nor "appropriate" under the circumstances present here. 28 U.S.C. § 1651. Specifically, as outlined in detail above, Cambridge and Howard have represented, through prior counsel and their own declarations provided herewith, that they have not engaged in self-help or taken any retirement monies to pay back advances made to NFL Retired Players. Furthermore, Class Counsel has provided absolutely <u>no credible facts</u> to support their theories or the requested relief.

Furthermore, Class Counsel fails to mention that there is a Circuit split as to whether the requirements set forth in Rule 65 apply to injunctions sought under the All Writs Act. While the Third Circuit has not definitively ruled on this issue, in <u>Cottingham v. Tutor Perini Building Corp.</u>, 2016 WL 54916, <u>supra</u>, and <u>Georgine v. Amchem Products, Inc.</u>, 1995 WL 561297, <u>supra</u>, the Eastern District of Pennsylvania considered some or all of the Rule 65 injunction requirements when determining whether to grant injunctive relief under the All Writs Act. As Class Counsel has made absolutely no showing that they have met any of the Rule 65 requirements, the requested relief must be denied.

Additionally, the <u>Visa Check</u> case only serves to support Cambridge and Howard's position in that the court declined to grant injunctive relief even after a Special Master's determination that Spectrum made misrepresentations to class members. Here, there has been no hearing or assignment of special counsel to determine whether any misstatements were made by Cambridge or Howard and/or if any misstatements were disseminated to any NFL Retired Players. Also, in <u>Visa Check</u>, it was alleged that Spectrum made numerous and repeated misrepresentations to class members. In the instant matter, Class Counsel bases their requested relief on a potentially illegally recorded audiotape and communications from an imprisoned

26

former manager of the fund, which contain no support for the claim of self help.  Accordingly, Class Counsel's reliance on the <u>Visa Check</u> case is clearly misplaced.

> ### C.   The Requested Relief for the Retention of an Auditor at Cambridge's Expense is Moot

As noted above, Cambridge Capital Group, LLC has already retained an accountant to perform an audit of the fund at its expense.  Therefore, the requested relief is moot.  Furthermore, Bill Bogan of Bogan Public Management Co. notes in his correspondence to the Court in support of Cambridge and Howard's opposition to the herein motion that the audit should be completed by July 31, 2018.  Cambridge and/or Howard will provide the accounting upon receipt.  <u>See</u> <u>also</u>, Exhibit C to the Leonard Cert.

> ### D.   The Proposed Order Sets Forth a Deadline for the Production of Documents Relating to Non-Qualified Funds and the Scheduling of a Further Hearing

The relief seeking a deadline for the production of documents relating to non-qualified funds and the scheduling of a further hearing are also rendered moot by the proposed Order submitted herewith which contains provisions for same.

> ### E.   The Depositions of the Current and Former Officers of Cambridge Are Premature

Pending the production of the fund accounting, any depositions sought by Class Counsel are premature, as acknowledged by Class Counsel in their own papers.  (ECF 9974, p. 16). Accordingly, Cambridge and Howard respectfully request that the Court deny the requested relief.

## **CONCLUSION**

For the reasons set forth herein, Cambridge and Howard respectfully request that the Motion for Sanctions be denied in its entirety.   Accordingly, enclosed for the Court's consideration is a proposed form of Order denying the  motion and setting forth a schedule for the production of the pending accounting and any remaining discovery, if any.

**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
Attorneys for Non-Parties, Cambridge Capital Group, LLC, Cambridge Capital Advisors, LLC, Cambridge Capital Partners, LP, Cambridge Capital Group Equity Option Opportunities, LP, Cambridge Capital Holdings, Cambridge Capital Funding, Inc., Gail Milon and Phillip Timothy Howard

Date:   June 4, 2018                      By:   ___/s/ John P. Leonard_____
                                                    John P. Leonard

3587203

28