UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**CO-LEAD CLASS COUNSEL'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR SANCTIONS AND OTHER RELIEF REGARDING THE CAMBRIDGE ENTITIES [ECF NO. 9974] AND IN RESPONSE TO THE CAMBRIDGE ENTITIES' OPPOSITION BRIEF [ECF NO. 10041]**

It has now been more than three months since this Court issued its February 20, 2018 Order [ECF No. 9750] directing the Cambridge Entities[1] to produce accountings of the Class Members'

---

[1] The entities and persons to whom the terms "Cambridge Entities" or "Cambridge" or "Respondents" apply in this reply memorandum are adopted from Co-Lead Class Counsel's Memorandum in Support of Motion for Sanctions ("Opening Memorandum"). *See* ECF No. 9974-1, at 2 n.2.

retirement funds "invested" with Cambridge by March 2, 2018. Additionally, the affected Class Members have been asking the Cambridge Entities for months to provide their account balances and/or to simply return their retirement funds to them, along with the earnings. Cambridge has neither produced the accountings, nor returned the retirement funds to Class Members.[2] As such, sanctions are appropriate for the continuing violation of that directive in the Court's February 20, 2018 Order.

The arguments contained in the Respondents' Opposition [ECF No. 10041],[3] and the supporting declarations [ECF No. 10041-1], are unavailing. The Court should summarily reject the proposed order [ECF No. 10041-2] they submitted.[4]

---

[2] As noted in Co-Lead Class Counsel's Opening Memorandum, Millennium Trust Company ("Millennium") has resigned some of the accounts and relinquished custody for failure to pay fees, but retirement monies have not been returned to the Class Members. *See* ECF No. 9974-1, at 17-19; ECF No. 9974-2, at 6 ¶¶ 33-35, at 191, 195-98. Moreover, it appears that the retirement monies may have lost the "qualified status," which was the reason, as per Ms. Milon, that Cambridge employed Millennium as its "third-party record keeper" in the first place. *See* ECF No. 9974-2, at 77. (References to page numbers herein are to the ECF-stamped page numbers at the top of each page, rather than to the actual page numbers at the bottom of each page of the original document.)

[3] New counsel, John P. Leonard, evidently does not represent Addys Walker, Lois Koons, Jeffrey Kahn, Your Case, LLC, or any other of the Cambridge Entities' present and former directors, officers, partners, employees, contractors, agents, consultants, affiliates, successors and assigns. *See* ECF No. 10041, at 10 n.1.

[4] Without seeking leave of Court to respond nunc pro tunc to the Motion to Prohibit [ECF No. 9578], which was filed on January 26, 2018, the Respondents simply state that their Opposition should be deemed a response to both the Motion for Sanctions and the Motion to Prohibit. *See* ECF No. 10041, at 13 n.3; *see also id.* at 29-33 (opposing the Motion to Prohibit to the extent it seeks injunctive relief). They also submit a proposed order seeking to deny the relief sought in the Motion to Prohibit. The Court should reject as out of time, their belated attempt to oppose the Motion to Prohibit and decline to grant any of the relief sought in their proposed order. Should the Court be inclined to consider the Respondents' belated arguments on the Motion to Prohibit, the undersigned respectfully requests an opportunity to submit a reply.

**Cambridge Has Not Produced the Key and Most Basic Information – Current Account Balances and How and Where the Retirement Funds Are Invested**

On March 27, 2018, Cambridge's Managing Vice President, Gail Milon, represented that Bill Bogan, Jr. CPA, CGFO, CPFO of Bogan Public Management Company had been hired to conduct an audit and that the "audit should be finalized in *8 weeks*" – ostensibly, by the end of May 2018.  ECF No. 9974-2, at 76 (emphasis added).  Eight weeks have come and gone.  Ignoring Ms. Milon's prior representation,[5] with the filing of their June 4, 2018 Opposition [ECF No. 10041], the Cambridge Entities now claim it will take an *additional* eight weeks – specifically, until July 31, 2018 – for Mr. Bogan to complete his audit.  ECF No. 10041, at 33; ECF No. 10041-1, at 4.  This additional and unjustified further delay should not be countenanced.

Cambridge also disingenuously claims that it already has provided the accountings ordered by the Court and complains that Co-Lead Class Counsel asks for more than what the Court ordered, i.e., what it refers to as "audited accountings."  ECF No. 10041, at 7 ("As for an accounting of the fund documentation as sought by the Order of dated February 20, 2018, Cambridge produced the requested accounting documents in March 2018.  Nevertheless, because Class Counsel has requested an audited accounting, Cambridge retained an outside management company and Certified Public Accountant to create the requested audited materials.").  Cambridge's position that this Court's Order required it only to produce the documentation it produced in March, which were merely recitations of the amounts that Class Members initially "invested" with Cambridge two or more years ago, is indefensible.  *See* ECF Nos. 9778-1 ("accountings" produced by

---

[5]   Respondents refer to the March 27th letter from Ms. Milon multiple times in their brief, but, fail to mention that Ms. Milon represented in that letter that Mr. Bogan had already been retained at that time and that his audit was expected to take eight weeks from late March.  *Compare* ECF No. 10041, at 15 and 22 (sixth bullet point), *with* ECF No. 9974-2, at 76.

Cambridge submitted Under Seal with Co-Lead Class Counsel's March 15, 2018 Status Report); 9778-3 (Seeger letter, dated March 7, 2018, noting that only a listing of the deposited amounts had been provided); 9974-2, at 11-12 (redacted examples of what Cambridge produced in March and represented to be "accountings").  *See also* n. 15, *infra*, for a discussion of a similarly obtuse reading of the Court's February 20, 2018 Order by Cambridge.

Co-Lead Class Counsel made clear in his letter to Ms. Milon, dated March 7, 2018, which was attached as Exhibit C to the Status Report filed on March 15, 2018, that the mere listing of the amounts that the Class Members rolled over from their 401(k) plans, which together totaled over $3 million, and "invested" as IRA rollover funds with Cambridge, was insufficient:

> Finally, we do not view these "accountings" as sufficient in terms of complying with the Court's directive in the February 20, 2018 Order requiring Cambridge to "produce complete accounting of all retirement funds provided to Cambridge Entities." Some monies have been deposited for over two years. The balances on the accounts cannot simply be the amounts deposited. Please provide the current balance information, including the interest and/or the gains/losses from initial deposits, based upon the present value of each Class Member's investment(s), and describe the nature of the investment(s). We also do not view these "accountings" as sufficient because, as noted above, where the funds are being held, with whom they are invested, who controls the investments, and how the funds are invested has not been provided."

ECF No. 9778-3, at 2.  Cambridge continues to delay and make excuses in order to avoid answering the simple, yet fundamental, questions:  how much is currently in each Class Member's account and, specifically, how and where are the monies invested?[6]  This is the type of information that a proper financial institution should maintain on an ongoing basis and should be able to report to its investors without delay.

---

[6]     Ms. Milon represented in her March 27, 2018 letter that "[q]ualified funds are forwarded to Millennium Trust to maintain its 'qualified status' and subsequently forwarded to Cambridge Capital where the funds are disbursed into investments."  ECF No. 9974-2, at 77.  Co-Lead Class Counsel inquired, but Cambridge has yet to identify these investments.

That an entity holding retirement funds cannot provide its investors with this information in a timely manner is inexcusable. Indeed, even absent the Court's Order, Cambridge would be obligated to provide its investors with this information.

**Cambridge Blames Mr. Reinhard, Who Left Cambridge Over One Year Ago, for Cambridge's Inability To Produce Account Balances**

Cambridge repeatedly attempts to blame its delay on the assertion that "certain fund documentation needs to be re-created and automated due to Reinhard's previous mismanagement and absconding with original financial records causing delays in the production of the fund accounting." ECF No. 10041, at 26.[7] By Mr. Howard's own account, however, Mr. Reinhard's association with Cambridge ended over a year ago. ECF No. 10041-1, at 8 ¶ 10 (as per Mr. Howard's Declaration, "[i]n February 2017, Mr. Reinhard was discharged and left his position with Cambridge Capital Group when he was charged with certain crimes[.]"). Cambridge cannot use Mr. Reinhard's conduct indefinitely as an excuse for its continuing delays in producing the Class Members' account balances.

Moreover, Mr. Howard and Cambridge cannot be heard to seek shelter in Mr. Reinhard's alleged malfeasance. It was Mr. Howard who put Mr. Reinhard in that position in the first instance

---

[7] Cambridge repeatedly contends that Co-Lead Class Counsel relied upon communications from Mr. Reinhard to a Class Member to support the contention that Cambridge threatened to engage in self-help. *See*, *e.g.*, ECF No. 10041, at 26 ("Class Counsel also relies upon communications allegedly transmitted by Reinhard, a former manager of the fund, to NFL Retired Player(s) in support of their position that Cambridge and/or Howard have engaged in self-help."). To the contrary, Co-Lead Class Counsel cited to Mr. Reinhard's communications to make the point that *even he* had provided periodic account valuations to the Class Members, whereas the current Cambridge management has not. *See* ECF No. 9578-1, at 10 ("Notably, even the former head of Cambridge, the presently incarcerated Don Warner Reinhard, expressed concern that those presently running Cambridge had not provided the Class Members with 'a complete understanding and a detailed report of all assets that the limited partnership is invested in and a complete understanding of your account value.'").

and recommended Cambridge to his Class Member clients.[8]  Mr. Howard was one of two "sole shareholders" of Cambridge Capital Advisors LLC and the President at the time of the issuance of the Private Offering Memorandum ("POM") and thus, was responsible for placing Mr. Reinhard in the position of investment manager of the Fund.  Mr. Reinhard's sanctioning by the SEC was recognized in that POM.  ECF No. 9974-2, at 111.  Due diligence by Mr. Howard, though, also should have revealed Mr. Reinhard's 2009 criminal conviction and related incarceration in connection with his guilty plea on seven counts of the criminal indictment related to bank and income tax fraud, which, coupled with the SEC's determination that "it is in the public interest to bar Reinhard from association with any broker, dealer, or investment advisor," should have prevented Mr. Reinhard from ever being given that position.  ECF 9974-2, at 91.  *See* ECF No. 9974-1, at 7 n.12; 9974-2, at 78-92; *see also United States v. Reinhard*, 407 F. App'x 389 (11th Cir. 2011) (affirming bank fraud conviction, following guilty plea for failure to disclose assets to a bankruptcy trustee, along with sentence of 51 months' incarceration, but reversing as to restitution component of sentence); *United States v. Reinhard*, Nos. 4:08cr49-RH/CAS, 4:11cv589-RH/CAS, 2014 WL 3891298 (N.D. Fla. Aug. 8, 2014).  To be clear, neither Mr. Howard nor the POM disclosed Mr. Reinhard's 2009 criminal conviction and incarceration.

---

[8]   *See* ECF No. 8371-13, at 2 (in an email signed by Tim Howard, Don Warner Reinhard and others, Class Members were advised: "Dr. Howard and I and our team continue to develop Cambridge Capital Group to provide an unmatched model of services which includes *investment management, wealth planning, estate planning*, wills, trust creation, life insurance, supplemental health insurance, and loans to meet the unique needs of retired professional athletes.  Additionally, ancillary legal services for little or no additional costs via our direct association with Howard & Associates PA makes our creative model unmatched in the marketplace.") (emphasis added).

**Though It Has Not Produced Account Balance Information, Cambridge Denies that the Self-Help Threatened by Addys Walker Actually Occurred**

Cambridge repeatedly denies that the self-help threatened by Addys Walker actually occurred.[9] The Cambridge Entities suggest that Class Counsel and the Court should rely upon the "unequivocal[] represent[ation]" of former attorney for Cambridge, Martin L. Black, that Cambridge "had neither engaged in self-help nor taken ownership over retirement accounts to offset monies the Cambridge Entities had advanced to NFL Retired Players." ECF No. 10041, at 7. The Court is well-acquainted with Mr. Black, who ceased to represent Cambridge without seeking or obtaining leave of court to do so, and without substitution of counsel. His representation is simply not credible, and as discussed below, must have been uninformed.

Furthermore, Cambridge's assertion that it can maintain with certainty that the self-help has not occurred defies logic. Given that Cambridge is not yet able to tell this Court or the affected Class Members even how much money is in each account, it cannot know whether the self-help occurred. Cambridge, through Mr. Black, has represented that Mr. Howard sold Cambridge to Addys Walker, ECF 8371-10, at 3 ("Cambridge Capital Group LLC [] no longer exist[s] and was dissolved pursuant to a confidential sale and dissolution agreement entered into early this year. The company was sold to Mr. Addys Walker, and he is the corporate representative ….").

---

[9] Cambridge contends that the audiotaped conversation during which Mr. Walker threatened self-help, upon which Co-Lead Class Counsel relied, may be an illegal recording, citing to the laws of Pennsylvania and Florida, which are "two-party consent" states. ECF No. 10041, at 24-25. Mr. Smith, however, was *in Georgia* when he participated in and taped the conversation. *See* Reply Declaration of Christopher A. Seeger, dated June 14, 2018 ("Seeger Rep. Decl."), at ¶ 9. Georgia is a "one-party consent" state. *See* Ga. Code §§ 16-11-62(1), 16-11-66. The applicable law is the state in which the recording is made. *See Larrison v. Larrison*, 750 A.2d 895, 898 (Pa. Super. Ct. 2000) (holding that New York had the greater interest in permitting someone in New York to tape a telephone conversation upon one-party consent). Additionally, federal law permits recording telephone calls and in-person conversations with the consent of only one of the parties. *See* 18 U.S.C. § 2511(2)(d).

Moreover, Ms. Milon admits that, for a time, Mr. Walker led Cambridge. ECF No. 9974-2, at 126 ("Mr. Addys Walker was assigned to temporarily lead the fund due to his private investigative experience, claimed entrepreneurial skills, and experience in raising capital. However, he lacked experience in finance and management, did not manage the fund effectively, and has since resigned.").[10] As such, Cambridge cannot be sure that Mr. Walker did not engage in self-help, as he threatened to do, while he was at the helm.[11] Disclosure of the Class Members' current account balances is the first step to determining whether self-help, in fact, occurred.

### Co-Lead Class Counsel Now Has Evidence that Respondents "Invested" Class Members' Retirement Monies in the Now-Void Assignment Agreements with Cambridge

Previously, Co-Lead Class Counsel had surmised that the retirement monies were invested in the assignment agreements into which Cambridge had entered with Class Members and that Cambridge used these retirement monies to fund the advances paid in connection with the now-void assignments. *See* ECF No. 9974-1, at 15 ("Class Counsel, however, suspects that the Class Members' retirement monies may have been used to pay cash advances to Class Members with assignment arrangements with Cambridge."). Although the account balances remain a mystery, just last week, one of the affected Class Members provided an email chain from Mr. Howard, spanning May 26, 2017 to June 16, 2017, along with attachments, demonstrating that what Co-Lead Class Counsel had surmised was, in fact, accurate. *See* Seeger Rep. Decl. at Ex. 29.

---

[10] This also begs the question as to why either Mr. Walker, with his lack of experience, or Mr. Reinhard, with his criminal background, was ever put in charge of these Class Members' retirement funds.

[11] Current counsel for Cambridge has made it clear that he does not represent Mr. Walker. ECF No. 10041, at 10 n.1. As such, the representation that the self-help did not occur while Mr. Walker was in charge cannot be substantiated, particularly in view of the fact that Cambridge has yet to provide the account balances.

Mr. Howard, writing from his Howard & Associates' email address, on June 16, 2017, provided the Class Member with attached portfolio valuations for the period January 1, 2017 through May 31, 2017,[12] for two of Cambridge's investment vehicles – Cambridge Capital Group Equity Option Opportunities LP and Cambridge Capital Partners LP – allegedly valued at over $12.55 million. *Id.* at SCMPRODCAMB-PLYR5_000030-36. Agreements with Class Members were listed as the vast majority of the "investments,"[13] and included the names of 51 Class Members, in addition to the names of nine of the ten Class Members with invested retirement monies, and the amounts that the Cambridge Entities had advanced to each Class Member.[14] The agreements included: Lump Sum Advance Agreements at 3.5% and 4% monthly; Swap Contracts Valuation Growth at 16.6% monthly; Travel Costs Advance Valuation Growth at 6% monthly; and NFL Medical/Tobacco Litigation Costs at 4.5% monthly. *Id.* The now-void assignment agreements are clearly the "investments" in which Class Members placed their retirement funds.

---

[12] The fact that this email, with the portfolio valuations attached, was sent in June 2017 from Mr. Howard's law firm email address calls into question the veracity of the averment in his Declaration that "[a]s I am no longer an officer or owner of Cambridge Capital Group, I am not in possession of any such accounting records." ECF No. 10041-1, at ¶ 21. Mr. Howard and Howard & Associates cannot claim that firm emails are not retained for at least a year, so he undoubtedly has this email and attachments and could have produced them. Likely, there are others.

[13] Among the investment vehicles for Cambridge Capital Partners, LP, there are also some real estate loans listed, to two property companies, one of which is Seascape Properties. *See* Seeger Reply Decl. at 29, at SCMPRODCAMB-PLYR5_000033. According to the State of Florida, Division of Corporations, the President and Vice President of Seascape Properties of North Florida, Inc. were, respectively, Mr. Howard and his wife, Jennifer Howard. *See* Seeger Rep. Decl. at Ex. 30. So, Class Members' retirement monies were used to make loans to the Howards' real estate company.

[14] To protect the Class Members' identities, their names have been replaced with "Player No.," if the Class Member is one of the ten with their retirement monies invested. If he is not one of the ten, his Settlement Program Identification Number ("SP ID") is utilized. A unique SP ID number was issued to every Class Member upon registration. Co-Lead Class Counsel will produce the unredacted version, in camera, upon the Court's request.

The "valuation growth" for the Swap Contracts was 199.2% Annual Return and for the Lump Sum Advance Contracts, the Annual Return was 48%. Now that the assignment agreements have been declared to be void, these expected rates of return, which are larger than most of the other third party funders' rates on their assignment agreements, are no longer realizable.

Moreover, Mr. Howard's purported divestment from Cambridge was a ruse. Mr. Howard, who at the time was these ten affected Class Members' individually retained lawyer, was providing at least one of those clients with detailed information about his Cambridge investments in June 2017 – a point in time at which he asserts he had already relinquished management and control of Cambridge. *See* ECF No. 9974-2, at 128-139 (Articles of Amendment, dated March 2017, substituting Lois Koons for Mr. Howard as President of two Cambridge Entities); ECF No. 8379 (Mr. Howard's previously-filed Notice of Verification of Non-Ownership, Non-Management and Dissolution of Companies, with attached Certificates showing dissolution as of May 3, 2017). In the initial cover email dated May 26, 2017, Mr. Howard advised Ms. Milon, Mr. Walker and Jeffrey Kahn that "[w]e will get these numbers into a spreadsheet so that compounding automatically takes place for each contract and each month. … Other than [minor edits], these are good to go." Seeger Reply Decl. at Ex. 29, at SCMPRODCAMB-PLYR5_000030. Plainly, Mr. Howard was in control of Cambridge in June 2017.

**Sanctions Are Necessary and Appropriate**

Respondents claim that sanctions are unwarranted and that depositions, including that of Mr. Howard, are unnecessary. They detail again and again in their Opposition all of the documents they produced and go on about how they allegedly have acted in good faith in producing those documents,[15] but the key pieces of information to which the Class Members are entitled, and that

---

[15]   Co-Lead Class Counsel had to press Cambridge to produce the POM [ECF No. 9974-2, at

the Court ordered be produced, remain secreted. Furthermore, Cambridge had generated and must possess the portfolio valuations that Howard sent to a Class Member in June 2017, but failed to produce same – either for that or any other time period. It was Millennium and the Class Members who produced the portfolio valuation documents that were submitted as Exhibits 21 and 22 to the May 8, 2018 Declaration of Christopher A. Seeger. ECF No. 9974-2, at 174-77. Those documents, however, only revealed the individual Class Member's initial investment and purported gains. Neither Cambridge nor Mr. Howard produced a single document related to the valuations of the portfolios, nor revealed the actual investment instruments in which the Class Members had invested their retirement funds.

---

94-123] that was referenced in other documents Cambridge produced. *See* ECF No. 9778-3, at 3 ("the documents that are noticeably absent from every file are … the Private Offering Memorandum"). Thereafter, upon production of the POM, Ms. Milon claimed to have "misinterpreted" and to have believed that Cambridge was required only to produce documents that the Class Members had provided to Cambridge, i.e., not any documents Cambridge generated related to the Class Members' investments, a rather obtuse interpretation of the Court's February 20, 2018 Order. ECF No. 10041-1, at 31 ("My apologies for my 'misinterpretation' of your request. As you stated: All documents related to retirement monies that Cambridge Entities 'has received from Class Members.' The attached documents were not received from Class Members. I forwarded to you what was received from Class Members."). The Court's Order was abundantly clear:

> On or before March 2, 2018 Cambridge Entities must produce:
> - All documents related to retirement monies that Cambridge Entities has received from Class Members; and
> - The complete accounting of all retirement funds provided to Cambridge Entities by each Class Member. …

ECF No. 9750 at ¶ 3. If one were to follow Cambridge's interpretation of the Order, then, the complete accountings were to have been provided *by the Class Members*, an absurd reading. Cambridge's interpretation of the Order to require only the production of information and documents related to the initial amounts the Class Members deposited with Cambridge, rather than the current accounts balances, as discussed above, is only slightly less absurd than Ms. Milon's interpretation as to the documents Cambridge was required to produce.

11

Despite their protestations to the contrary, Respondents have "flatly failed to comply with discovery demands [and] acted in bad faith." ECF No. 10041, at 8. Indeed, they have flatly failed to comply with a Court Order directing the accountings to be produced by March 2, 2018. The "assess[ment of] the culpability of the offending party and the prejudice to the party seeking sanctions," the analysis that Respondents advance, *see id.*, at 20 (citing cases), clearly supports the imposition of sanctions.

**What Cambridge's Opposition Brief Fails To Address Is Telling**

Consistent with the above conduct, the Opposition Brief filed on behalf of the Respondents [ECF No. 10041] is notable also for what it fails to address entirely, or what it merely glosses over, in its 28 pages:

(1) Transfer of Clients from Howard & Associates to Shenaq PC – Co-Lead Class Counsel noted in his Opening Memorandum that six (there are now seven, *see* Seeger Rep. Decl. at ¶ 5) of the Class Members with retirement monies invested with Cambridge had switched representation from Mr. Howard to Mr. Shenaq, which over 100 other Class Members have done as well, and commented that he was unaware as to whether there is a financial arrangement between Mr. Howard and Mr. Shenaq. Co-Lead Class Counsel noted, however, Mr. Shenaq's role as a partner in Park Laureate Partners, which lends money to law firms. *See* ECF Nos. 9974-1, at 5-6; 9974-2, at 3 ¶ 7. Mr. Howard claims in his Declaration to "currently" represent 250 Class Members. ECF No. 10041-1, at 6 ¶ 2. That, however, is not true. Although he may have represented almost 250 Class Members at one time, he now represents only 90, as per the Claims Administrator's information contained on the portal. *See* Seeger Reply Decl. at ¶ 4. The Respondents' Opposition is silent as to the Shenaq firm issues, despite the fact that

many of Mr. Howard's former clients, in addition to those with retirement monies invested in Cambridge, are now represented by Mr. Shenaq.

(2) <u>Class Members Were Not Suitable Investors for Cambridge Investments</u> – Respondents fail to address Co-Lead Class Counsel's contention that the Class Members, who had been individually represented by Mr. Howard, were not sophisticated investors and did not have sufficient other wealth, as per Cambridge's POM, such that they should have been gambling with their retirement funds in an investment such as the Cambridge Entities.  *See* ECF No. 9974-1, at 8-9.

(3) <u>Florida State Bar</u> - Mr. Howard has repeatedly represented to this Court (and purportedly also to the Florida State Bar) that he terminated his interest in and control over Cambridge, despite, as discussed above, and in Co-Lead Class Counsel's Opening Memorandum, certain facts that tend to show his continuing involvement.  Mr. Howard's letter to the Florida State Bar inquiring about his affiliation with Cambridge was attached as Exhibit A to Mr. Howard's Declaration [ECF No. 10041-1, at 13], and the response he received from the Bar was referenced at paragraph 12 of his Declaration.  *Id.* at 8 ¶ 12. Curiously, though, that response from the Bar was not attached as an Exhibit, nor was any further documentation that Mr. Howard likely submitted to the Bar evidencing his alleged termination of affiliation with Cambridge.

(4) <u>A & T Development, LLC</u> – Although Respondents' Opposition mentions one of the companies in which Mr. Howard was involved that was discussed in Co-Lead Counsel's Opening Memorandum, namely, Chronicles, LLC, *see* ECF No. 10041, at 27, 27 n.11, it ignores entirely the most relevant, later-created Nevada corporation – A & T Development, LLC.  The managing members of A & T Development, LLC are

Mr. Howard, Addys Walker, and Cambridge Development Partners LLC. ECF No. 9974-2, at 153. A & T was created in October 2017, after Mr. Howard had allegedly cut all ties with Cambridge.

(5) <u>Mr. Howard's Mother-in-Law, Lois Koons</u> – Not denying that Ms. Koons is, in fact, Mr. Howard's mother-in-law, Respondent's Opposition states that "Class Counsel improperly suggests, without factual or legal basis, that Ms. Koons was involved with the management of the Cambridge Entities[.]" ECF No. 10041, at 27 n.10. In fact, Ms. Koons was substituted for Mr. Howard, as President of two Cambridge Entities, by Mr. Howard, himself, in March of 2017. ECF No. 9974-2, at 128-39. She was also named as a managing member, along with Ms. Milon, of newly created Cambridge Entities in Nevada in 2017. *Id.* at 143-51. These facts were put before the Court to call into question Mr. Howard's representation that he had terminated his affiliation with Cambridge, and to provide sufficient support for the Court to authorize his deposition, absent a return of the invested retirement funds. Respondents offer nothing to rebut this evidence, suggesting that Mr. Howard's deposition would be enlightening.

(6) <u>Millennium's Resigning Certain Class Member's Retirement Accounts</u> – As noted in Co-Lead Class Counsel's Opening Memorandum and as supported by the exhibits, Cambridge ceased paying Millennium the fees to act as custodian of the retirement accounts; as a result, Millennium represented to the Class Members that it was resigning the accounts and returning the investment monies, but the Class Members did not have their retirement funds returned to them. *See* ECF No. 9974-1, at 17-19; ECF No. 9974-2, at 186-207. The Respondents' Opposition ignores these facts.

(7) <u>April 12, 2018 Correspondence from Gail Milon</u> – Respondents' Opposition references a letter from Ms. Milon to the Court and Class Counsel, dated April 12, 2018.  ECF No. 10041, at 17.  Co-Lead Class Counsel did not receive this letter.  Seeger Rep. Decl. at ¶ 10.  Oddly, although Ms. Milon's Declaration specifically references her March 27 and March 29 letters, it makes no mention of the April 12 letter and it is not attached to the declarations.  *See* ECF 10041-1, at 15-18.

For the foregoing reasons and those set forth in the Seeger Reply Declaration, and Co-Lead Class Counsel's Opening Memorandum and the supporting exhibits [ECF No. 9974], the Court should issue an order consistent with the proposed order previously submitted by Co-Lead Class Counsel [ECF No. 9974-3].

Dated:  June 14, 2018                                              Respectfully submitted,


*/s/ Christopher A. Seeger*
Christopher A. Seeger
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

*Co-Lead Class Counsel*

## **CERTIFICATE OF SERVICE**

      I, Christopher A. Seeger, hereby certify that a true and correct copy of the foregoing reply and supporting declaration were served electronically via the Court's electronic filing system on the date below upon all counsel of record in this matter.


Dated: June 14, 2018                                                                                     Respectfully submitted,

                                                                                                          */s/ Christopher A. Seeger*
                                                                                                         Christopher A. Seeger