UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE RETIRED PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br><br>███████, Concussion Settlement ID No. ████████ | Hon. Anita B. Brody |

### OBJECTION TO THE SPECIAL MASTER'S MAY 31, 2018 RULING

████████ respectfully submits this Objection to the Special Master's May 31, 2018 Ruling (the "Ruling"), which erroneously granted the NFL's untimely appeal with no meaningful explanation. **Ex. 1**. In making the Ruling, the Special Master cryptically stated that the "Special Master was assisted by a member of the Appeals Advisory Panel and/or an Appeal Advisory Consultant." (Id.). There is no indication what the analysis from either member of the AAP or AAC to the Special Master was or why it was different from numerous prior approvals of ███ ████████ claim – award approvals from the Claims Administrator; the Advisory Physician Panel; the audit process and the Claims Administrator again. As a matter of law, this Court did not establish the position of Special Master in order to provide another opportunity for the Claims Administrator to audit its own decision. The Court created a clear schedule of assignments and responsibilities under the Court's authority to oversee this class action settlement. This schedule of assignments is governed by the Settlement Agreement, and the rules of the road should not change now after that agreement was carefully negotiated and agreed upon.

Here, ▇▇▇▇▇▇▇ claim had already passed the increased scrutiny of an initial review by the Claims Administrator, including an internal review by the Advisory Physicians Panel; then, followed by a full audit by the Claims Administrator in which the diagnosing neurologist was interviewed and five years of medical records and employment records were reviewed. ▇▇ ▇▇▇▇▇▇ claim passed all three of these rigorous reviews and his claim was approved a second time after providing a litany of further information. The NFL then challenged the monetary award on grounds that are not stated in any description of the underlying Settlement Agreement, and now introduces a new set of requirements to monetary awards under the settlement that were never negotiated by the Class Counsel and the NFL and were never approved by the Court.

Nevertheless, the Special Master, charged with review of the NFL's appeal, then inexplicably requested records from one disability provider previously hired by NFL to contest ▇▇▇▇▇▇▇▇ permanent disability claim. In addition, the Special Master "adopted" undisclosed advice from an undisclosed member of the AAP and reversed the twice- approved award without any explanation.

The Special Master unilaterally declared that this "adopted" determination amounted to a "factual determination and is final and binding." However, the only objection raised by the NFL to ▇▇▇▇▇▇▇▇ twice-approved claim is rooted in an improper reading and application of the Settlement Agreement. Because this is the NFL's only objection, then it was the only objection t that could properly be considered by the Special Master. However, this objection does not on its face seem to bear any relation to the objection raised by NFL in its Appeal. If the Court upholds this Ruling by the Special Master, it will be contradicting every system the Settlement Agreement put into place to make a determination on this claim – the Claims Administrator; the AAP and the audit process.

The Special Master did not have the authority to invite this other participant in the process to participate in the Appeal determination. There is no basis in law of fact for the Special Master's determination. This ruling is against the weight of the law and is capricious and arbitrary and therefore, is an improper "conclusion of law that" this Court must review *de novo* and correct pursuant to Federal Rule of Civil Procedure 53(f)(4).

## FACTS

Class Member ▓▓▓▓▓▓▓ is a thirty-six year old man with a nine year history in the NFL as a defensive lineman playing for multiple teams[1]. On April 11, 2017, Class member ▓▓▓▓▓▓▓ submitted a Pre-effective Date claim, supported by a thirty (30) page neurological report and opinion that ▓▓▓▓▓▓▓ suffered from 1.5 deficit (mild-moderate dementia) as a result of the repetitive head trauma suffered as a professional football player. The July 10, 2015 report was authored by Michael A. Lobatz, M.D.[2], a world renowned expert in concussions and a Board Certified Neurologist[3]. In addition, ▓▓▓▓▓▓▓ submitted a psychological report by Dr. Laura Hopper, using an accepted set of measurements also independently demonstrated that ▓▓▓▓▓▓▓ suffered a 1.5 deficit (mild to moderate dementia).

The claim first was analyzed and approved by the Claims Administrator and then it was sent to a second level of approval by the Appeals Advisory Panel[4], pursuant to Section 5.13 of

---

[1] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

[2] Dr. Michael Lobatz is a neurologist in Carlsbad, California and is affiliated with multiple hospitals in the area, including Scripps La Jolla Hospitals and Scripps Memorial Hospital-Encinitas. He received his medical degree from University of Illinois College of Medicine and has been in practice for more than 20 years.

[3] It is attached as **Ex. 2**.

[4] Appeals Advisory Panel "means a panel of physicians, composed of, in any combination, five (5) board-certified neurologists, board-certified neurosurgeons, and/or other board-certified neuro-specialist physicians agreed to and jointly recommended by Co-Lead Class Counsel and Counsel for the NFL Parties, and appointed by the Court, any one of whom is eligible to advise the Court or the Special Master with respect to medical aspects of the Class Action Settlement and to perform the other duties of the Appeals Advisory Panel set forth in this Settlement Agreement." Section 2.1 (g).

the Amended Settlement Agreement. According to the Amended Settlement Agreement, after the Appeals' Advisory Panel approved the submission, the decision should be "final and binding":

> "[t]he decision of the Appeals Advisory Panel member as to whether the Retired NFL Football Player has Level 1 Neurocognitive Impairment, Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, or none, will be final and binding, except a claim for a Monetary Award or Derivative Claimant Award relying on such diagnosis may still be appealed, as set forth in Section 9.5. The member of the Appeals Advisory Panel must support the decision with a Diagnosing Physician Certification."

*See* Amended Settlement Agreement Section 5.13.

Based upon the final and binding determination of the Appeals Advisory Panel, the Claims Administrator agreed that ▮▮▮▮▮ suffered a 1.5 deficit and made a monetary award in the amount of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ on July 20, 2017, finding that he is entitled to recover under the settlement and that he currently qualifies for a 1.5 recovery. **Ex. 3**. Under the Agreement, the NFL had 30 days (until August 21, 2017 because August 20 is a weekend) to appeal. The NFL did not appeal at that time.

▮▮▮▮▮ was advised that his Claim was the subject of a random 10% audit by the Claims Administrator. As part of the audit, on September 7, 2017, the ▮▮▮▮ produced 5 years of medical records and 5 years of employment records. The Claims Administrator interviewed Dr. Lobatz. During the interview, Dr. Lobatz made clear that he did not rely on the Hopper report to formulate his opinion that ▮▮▮▮▮ suffered from a 1.5 deficit. Dr. Lobatz explained to the Claims Administrator's representatives that his opinion was independent of Dr. Hopper's testing. In his written opinion, he refers to multiple bases for his opinion including, Dr. Hopper, a psychiatric evaluation in December 2014, the Amen Clinic, Dr. Fink, and the Crosby Center "document evidence of functional impairments, depression and anxiety that are generally consistent with the criteria set forth in the National Alzheimer's Coordination Center's Clinical

Dementia Rating Scale (CDR) 1.5 (Neurocognitive impairment) in the areas of Community Affairs, Home and Hobbies and personal care."

Dr. Lobatz's opinions are also based on the CT scans of ▓▓▓▓ brain, the medical records, medical exams and testing Dr Lobatz performed over a four year period. The Lobatz Neurologist Report was submitted to support this **Pre-effective Date claim**.[5]

On December 4, 2017, for the second time (and three separate reviews consisting of the Claims Administrator, the AAP, and an audit) ▓▓▓▓ claim was approved.  He was, again, awarded ▓▓▓▓ **Ex. 4**.  The Rules Governing Appeals of Claims Determinations purport to govern the appeals' process.  Rule 34 of those Rules state:

> **Rule 34. Claim in Audit.** If the Claims Administrator places a Claim in Audit at any time, the processes on Appeal and any time periods in these Rules applicable to the Appeal will be suspended until the conclusion of the Audit.

Despite having no pending appeal to "suspend," because August 21, 2017 (30 days following the initial Claim award) had come and gone, the NFL, nevertheless, filed a novel appeal on January 3, 2018.  **Ex. 5.**

## ARGUMENT

### A.     The NFL's Appeal is Untimely as a Matter of Law.

The NFL needed to appeal the initial claim by August 21, 2017, and it did not.  Rule 34 only suspends time periods for appeals that are pending. It even states that "any time periods in these Rules applicable to **the Appeal** will be suspended." Rule 34 (emphasis added).  An appeal that has not been filed cannot be "suspended." Thus, the NFL's purported appeal on January 3,

---

[5] ▓▓▓▓ counsel offered to let the Special Master interview Mr. Lobatz to answer any questions under oath in its response to the NFL's claim objection.  The Special Master did not take up the offer, apparently opting to talk to a member of the AAP in private.

2018, is untimely as a matter of law and it should be rejected and dismissed.          award in full should be re-instated by this Court.

      **B.**     **The NFL's Appeal is Based on an Unlawful Reading of the Amended Settlement Agreement.**

Nothing in the Settlement Agreement requires a claimant to submit a Pre-effective Date Claim with anything more than the opinion of a Board Certified neurologist or Board Certified neuropsychiatrist or neurophysician. Under 6.3(d) of the Settlement Agreement, there is no requirement for anything other than the report of a Board Certified neurologist or other medical doctor. There is no mention of a requirement for a neuropsychological report, let alone one using a certain set of T scores for analytical purposes. The NFL is unlawfully inserting requirements into the settlement agreement that simply do not exist. That is not a factual issue – it's an issue of law this Court must correct.

The NFL refers to a BAP test that has nothing to do with a Pre-effective Claim. Under the precise terms of the Amended Settlement Agreement, the claimants who submitted Pre-effective Date claims were not required to undergo a BAP test. That comparison is illogical here, since the Claimant is asked to follow the instructions as set forth in the Amended Settlement Agreement, which ▇▇▇▇ did.

The Settlement Agreement does not require a neuropsychologist report or T scores for a Pre-effective Date submission. The NFL is trying (again) to change the terms of the deal to make it more difficult for players to get paid under the settlement. That is certainly not what was envisioned by counsel who negotiated this settlement or the Court who approved the Agreement. Because this error involves contract enforcement of clear terms, this is a matter of law for the intercession by the Court. *See Doe v. The Trustees of the University of Penn.*, 270 F. Supp.3d 799, 811 (E.D. Pa. 2017)("The meaning of an unambiguous written instrument presents a

**question of law for resolution by the court**.")(emphasis added)(*quoting Murphy v. Dusquesne Univ. of the Holy Ghost*, 777 A.2d 418, 430 (Pa. 2001).

The Settlement Agreement specifically states that "[t]he decision of the Appeals Advisory Panel member as to whether the Retired NFL Football Player has Level 1 Neurocognitive Impairment, Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, or none, will be final and binding" under Section 5.13. "Final and Binding" means without question and unable to be appealed in this instance.  Under the terms of the language in the Amended Settlement Agreement, the NFL should not be permitted to come before this Court and question the validity of the diagnosis.

That section of the Agreement reserves the right of the NFL to question the monetary award.  But, the monetary award is based on a number of factors including: playing time, time on a roster, playing with a recognized team.  The NFL does not appeal those findings.  There is no basis for the NFL's Appeal of the Qualified Diagnosis 1.5, which the Appeals Advisory Panel approved, as did the Claims Administrator during his audit.

The NFL's Appeal is not warranted based on the terms of the Amended Settlement Agreement.  There is not and never was a requirement that the Pre-effective date claims have support from neuropsychological testing.  To now claim otherwise and attack a 2014 report psychological report prepared before the settlement became effective is inexcusable.  The NFL has failed to make a showing by clear and convincing evidence, as required by Section 9.8 of the Agreement, that the Appeals Advisory Panel and the Claims Administrator were wrong when they accepted the opinion of Dr. Lobatz that ▮▮▮▮▮▮ suffered from mild to moderate dementia (qualifying as 1.5).  These opinions are diagnostically consistent with that which is

required under Section 6.4(b) of the Agreement. Therefore, the NFL's ground for reversal of the Monetary Award has no merit.

The NFL knows and has reason to know that those suffering from repetitive head trauma decline over time. Dr. Lobatz has cared for ▇▇▇▇ for more than four years and the doctor told the Claims Administrator who interviewed him during the second large audit that the doctor had clinically observed a neurocognitive decline in ▇▇▇▇ over the period of time he had treated him. And, that in his opinion based to a reasonable degree of scientific certainty, ▇ ▇▇▇▇ suffered from neurocognitive deficits attributable to his repetitive head trauma suffered while playing professional football. Dr. Lobatz highlighted the fact that ▇▇▇▇ suffered significant and visible bleeds on the brain consistent with the trauma suffered. And, he explained to the Claims Administrator that the neuropsychological analysis, while interesting, was not as clear evidence of specific brain trauma as were those brain bleeds and the growing symptoms he observed over four years. Dr. Lobatz's opinion was in fact strengthened and supported by his continuous treatment and examinations of ▇▇▇▇.

As a matter of law, the NFL appeal raises no argument or evidence that could ever meet the "clear and convincing" legal standard. Thus, this Court must vacate the Special Master's ruling and reinstate ▇▇▇▇ award.

   C. **The Special Master's Undisclosed Analysis Should Not Reverse ▇ ▇▇▇▇ Award Approved under the Terms of the Settlement Agreement.**

A member of the AAP has no authority to advise the Special Master to read new terms into the Settlement Agreement. It is unclear what analysis was adopted by the Special Master from the AAP member or the AA consultant.

The only issue that could be considered by the Special Master on appeal was the precise issue raised by the NFL in its appeal. The only way to agree with the NFL would be to re-write

the Settlement Agreement or interpret it in an unlawful way.  This Court should not set a precedent of claims being determined behind closed doors with no way of knowing how the determination was made or who made it. The Special Master's ruling should not be permitted to stand.

## CONCLUSION

For all of the stated reasons, the Special Master's Ruling should be vacated and the NFL Appeal should be denied.  Class member ▮▮▮▮▮▮▮▮ should be entitled to receive his full monetary award immediately.

Dated: June 21, 2018                                Respectfully submitted,

Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
415.956.1000

By: /s/ Wendy R. Fleishman
Wendy R. Fleishman

## CERTIFICATE OF SERVICE

    I, hereby certify that on June 21, 2018, I electronically filed OBJECTION TO THE SPECIAL MASTER'S MAY 31, 2018 RULING with the Clerk of the United States District Court for the Eastern District of Pennsylvania using the CM/ECF system, which shall send electronic notification to all counsel of record.

_____
Wendy R. Fleishman