# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Hon. Anita B. Brody |

## EXPLANATION AND ORDER

Representative Claimant Jeffrey Holmes ("Claimant"), the son of Ronald Holmes, filed a Monetary Award claim in the Settlement Program based on his father's "Death with CTE" diagnosis. His claim for a Monetary Award was denied by the Claims Administrator because the underlying CTE diagnosis was untimely. The denial was affirmed by the Special Master. Holmes' now seeks relief from that denial via a motion under Federal Rule of Civil Procedure 60(b). I deny Holmes' motion.

**BACKGROUND**

    **A. NFL Concussion Litigation Settlement Agreement**

A more comprehensive recap of the NFL Concussion Litigation Settlement Agreement and its provisions is available in a prior memorandum of the Court. *See In re Nat'l Football League Players Concussion Injury Litig.*, 307 F.R.D. 351, 361-70 (E.D. Pa. 2015). Relevant for the purposes of this Order, the Settlement Agreement provides that representative claimants are

eligible to file claims for a "Death with CTE" Monetary Award. Settlement Agreement § 6.3(a), ECF No. 6481-1.

The Settlement Agreement states the requirements for a Monetary Award for Death with CTE:

> A Qualifying Diagnosis of Death with CTE shall be made only for Retired NFL Football Players who died prior to the Final Approval Date, through a post-mortem diagnosis made by a board-certified neuropathologist *prior to the Final Approval Date* [April 22, 2015], provided that a Retired NFL Football Player who died between July 7, 2014 and the Final Approval Date shall have until 270 days from his date of death to obtain such a post-mortem diagnosis.

*Id.* § 6.3(f) (emphasis added). Additionally, Death with CTE is defined in an Exhibit incorporated into the Settlement Agreement, and that definition includes the same diagnosis deadline. *Id.*, Ex. 1 at 5 ("For Retired NFL Football Players who died prior to the Final Approval Date, a post-mortem diagnosis of CTE made by a board-certified neuropathologist *prior to the Final Approval Date* [April 22, 2015] . . . ." (emphasis added)). Furthermore, to successfully pursue a Monetary Award, a claimant with a valid Death with CTE diagnosis must first register for the Settlement Agreement by August 7, 2017 and then submit a Monetary Award claim by February 6, 2019. *See* Revised Supplemental Notice 2-3, ECF No. 7112-3.

The Settlement Agreement explicitly provides that class members can be excused from certain filing deadlines. A late registration will be accepted if a claimant can show "good cause" for the tardiness. Settlement Agreement § 4.2(c). Similarly, a late-filed Monetary Award claim will be accepted if the untimeliness was caused by a "substantial hardship." *Id.* § 8.3(a)(i). On the other hand, no such provisions exist for the Death with CTE diagnosis deadline.

B. **Holmes' Claim and Procedural History**

Ronald Holmes, a Retired Player and Settlement Class Member, died on October 27, 2011. According to the Claimant, after Ronald Holmes' death, a routine autopsy was performed by the local medical examiner in Tacoma, Washington. Pet. Br. 2, ECF No. 9570-2. At the time, the examiner's office did not document any abnormal brain findings nor did it note the preservation of any brain tissue. *Id*. In August 2013, the Holmes family hired Co-lead Class Counsel Anapol Weiss[1] to pursue Ronald Holmes' claims against the NFL. *Id*. at 3. Not until March 2014, seven months later, did Holmes' counsel ask the Tacoma medical examiner's office whether any of Ronald Holmes' brain tissue had been preserved. *Id*. The office reported no preserved brain tissue. *Id*.

Then, in at some point in April 2015, the Holmes family—not its counsel—contacted the Tacoma medical examiner and were informed that brain tissue from Ronald Holmes' autopsy did exist. *See* Decl. Joshua C. Cohen, Esq. ¶ 6, ECF No. 9570-3. The Holmes family—on its own—handled obtaining and testing the brain tissue, and on August 4, 2015, Ronald Holmes was provided a post-mortem Death with CTE diagnosis by a board-certified neuropathologist. *Id*. at ¶ 7. The Death with CTE diagnosis was made over three months after the Settlement Agreement's April 22, 2015 deadline. On April 11, 2017, Ronald Holmes' son, Jeffrey Holmes, filed a *timely claim* for a Monetary Award with the Claims Administrator based on the *untimely diagnosis*. *See* Pet. Br. 3.

On June 13, 2017, the Claims Administrator rejected Holmes' Monetary Award claim because the Death with CTE diagnosis was untimely. Notice of Denial of Monetary Award Claim, ECF No. 9570-4. On December 22, 2017, the denial was affirmed by the Special Master.

---

[1] Anapol Weiss would later be involved in finalizing the terms of the Settlement Agreement.

Post-Appeal Notice of Denial of Monetary Award Claim, ECF No. 9570-6. On January 19, 2018, Jeffrey Holmes filed the present motion under Federal Rule of Civil Procedure 60(b), requesting that the Court cure the untimely Death with CTE diagnosis based on equitable principles. Pet. Mot., ECF No. 9570. The NFL Parties responded in opposition to the motion. Opp. Mem., ECF No. 9592.

**DISCUSSION**

Because the Death with CTE diagnosis deadline is an integral, bargained-for provision of the Settlement Agreement, the Court will deny Holmes' request for relief. Holmes seeks equitable relief under Federal Rule of Civil Procedure 60(b)(1), which states that a "court may relieve a party . . . from a final judgment, order, or proceeding . . . for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect." A district court "has the general equitable power to modify the terms of a class action settlement." *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 194 (3d Cir. 2000). When a party seeks relief for untimely claims or opt-out requests under a settlement agreement, the Third Circuit has utilized the "excusable neglect" standard from Rule 60. *See In re Orthopedic Bone Screw Prod. Liab. Litig.*, 246 F.3d 315, 321–22 (3d Cir. 2001) (stating that the "excusable neglect" standard "provides the analysis for consideration of untimely claims for inclusion in a class action settlement."); *see also In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, 92 F. App'x 890, 893 (3d Cir. 2004) (applying "excusable neglect" analysis to a late opt-out request). The Third Circuit, however, has not extended the use of the "excusable neglect" standard in the class settlement context to situations that do not involve late filings. *See, e.g.*, *In re Ins. Brokerage Antitrust Litig. (MDL 1663)*, 374 F. App'x 263, 265 (3d Cir. 2010) (applying excusable neglect to a late opt-out

request); *In re Cendant Corp. Prides Litig.*, 311 F.3d 298, 300 (3d Cir. 2002) (*Cendant II*) (applying excusable neglect to a late-filed claim).

Thus, in cases that involve *timely* filings and the application of substantive terms that the parties have clearly negotiated, a court should be more restrained in exercising its equitable powers. *See Cendant*, 233 F.3d at 197 (finding that the district court had the power to extend a filing deadline, in part, because the deadline was created by the court and was not the product of the parties' negotiation); *In re ML-Lee Acquisition Fund II*, No. CIV.A.92-60-JJF, 1999 WL 184135, at *2 (D. Del. Mar. 23, 1999) (acknowledging the equitable power to modify a settlement agreement but choosing not to when the result would "substantially modif[y] the understanding negotiated between Plaintiffs and Defendants"); *accord Dahingo v. Royal Caribbean Cruises, Ltd.*, 312 F. Supp. 2d 440, 447 (S.D.N.Y. 2004) "[Courts] can modify terms of a settlement agreement that were not the product of negotiation and compromise by the parties."). When late filings are not involved, "[g]enerally, a court cannot rewrite a settlement agreement." *See* 4 W. Rubenstein, Newberg on Class Actions § 12:23 (5th ed. 2018).

Here, Holmes timely registered and filed a timely claim for a Monetary Award. The untimely aspect of Holmes' claim, under the terms of the Settlement Agreement, was the underlying CTE diagnosis. The Parties clearly negotiated for a strict diagnosis deadline for each Death with CTE claim as a substantive requirement. I will not perform the "excusably neglect" analysis, and instead I will look to the terms of the Settlement Agreement to determine if granting relief is appropriate.

The Death with CTE definition was a contentious issue that was negotiated heavily by the Parties and received intense scrutiny. *See, e.g.*, NFL Parties' Final Approval Mem. 77-80, ECF No. 6422; Co-Lead Class Counsel's Final Approval Reply Br. 16-29, ECF No. 6467. The

diagnosis deadline in the Death with CTE definition was part of "the bargain struck by the parties." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 444 (3d Cir. 2016), *as amended* (May 2, 2016) (discussing objections to the definition of the Death with CTE claim). Based on that bargain, to meet the substantive requirements to qualify for a Death with CTE Monetary Award, a Class Member must adhere to the diagnosis deadline. *See* Settlement Agreement, Ex. 1 at 5.

Notably, the Parties failed to include any way for a claimant to cure a tardy CTE diagnosis. *Cf. Cendant*, 233 F.3d at 194 (finding that the agreement anticipated the need for an extension of time for claimants to properly file claims—indicating that the deadline was "flexible"). On the other hand, the Parties did include ways for Class Members to cure late-filed registrations and late-filed Monetary Award claims. *See* Settlement Agreement § 4.2(c) (allowing for late registration if "good cause" is shown); *id.* § 8.3(i) (allowing for the filing of late Monetary Award claims based on "substantial hardship"). Extending the Death with CTE diagnosis deadline would circumvent the Parties' negotiated, substantive terms and applying the "excusable neglect" standard to alter those terms would be inappropriate.

Even if the Court were to apply the "excusable neglect" standard here, the result would be the same.[2] The factors for "excusable neglect" are 1) the danger of prejudice to the nonmovant; 2) the length of the delay and its potential effect on judicial proceedings; 3) the reason for the delay, including whether it was within the reasonable control of the movant; and 4) whether the movant acted in good faith. *Bone Screw*, 246 F.3d at 322–23 (citing *Pioneer Inv. Servs. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 395 (1993)).

---

[2] The Court reiterates that the "excusable neglect" analysis would apply to late-filed claims, late registrations, and late opt-out requests. *See* 4 W. Rubenstein, Newberg on Class Actions § 12:23 ("[C]ourts have found it within their equitable authority to permit class members who filed *untimely claims* to participate in the settlement." (emphasis added)).

The first factor—prejudice to the nonmovant—weighs heavily against relief because extending the diagnosis deadline would alter a crucial, negotiated term of the Settlement Agreement. As outlined below, the contentious negotiations surrounding the definition of Death with CTE indicates that the NFL Parties would be highly prejudiced absent strict enforcement of that definition. Also, allowing relief would impose the possibility of additional liability on the NFL Parties because the settlement is uncapped—providing further prejudice.

The second factor—length of delay and effect on judicial proceedings—is less relevant in a case that does not involve a late filing. Here, the length of delay relates to the substantive nature of the claim itself, not the facilitation of judicial proceedings. Whether the diagnosis was timely or late does not affect court proceedings. Instead, the deadline for a Death with CTE diagnosis is a negotiated requirement that provides certainty to the NFL Parties and additional confidence that a diagnosis is based on more recent evidence.

The third factor—the reason for the delay—does not weigh clearly for or against relief. Holmes alleges that error by the medical examiner's office led him to first learn of the available brain tissue in April 2015. While it may have been reasonable for Holmes to rely on the initial representation that no brain tissue existed in March 2014, if there was any doubt as to the accuracy of that representation, Holmes should not have waited over a year to ask again. A Death with CTE diagnosis provides a possible value of $4 million, more than enough money to incentivize a more thorough and timely investigation. Also, Holmes was represented by Co-Lead Class Counsel Anapol Weiss and clearly on notice of the terms of the Settlement Agreement— including the diagnosis deadline. *See Nat'l Football League*, 821 F.3d at 436 (finding class notice and its distribution sufficient). The Court is sympathetic to the alleged facts here, but finds that this factor does not favor Holmes.

The final factor—good faith—weighs in Holmes' favor. There is no allegation or reason to believe that Holmes or his counsel failed to act in good faith. But, based on equitable principles this factor is more a reason to deny relief otherwise deserved than to provide an independent basis for it. *See Bone Screw*, 246 F.3d at 329. Therefore, the good faith is afforded little weight on its own. Ultimately, the factor of prejudice weighs heavily against Holmes while the other factors do not strongly point in his favor. Holmes cannot establish "excusable neglect."

"[S]ettlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995). The Court will not disturb the Parties' clear, bargained-for language by exercising its equitable powers to cure Holmes' claim.

# ORDER

**AND NOW**, this _28th__ day of June, 2018, it is **ORDERED** that Jeffrey Holmes' Motion for Relief from a Judgment or Order Pursuant to Fed. R. Civ. P. 60 (ECF No. 9570) is **DENIED**.

s/Anita B. Brody

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:     Copies **MAILED** on _____ to: