**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

IN RE: NATIONAL FOOTBALL LEAGUE
PLAYERS' CONCUSSION INJURY
LITIGATION

Kevin Turner and Shawn Wooden,
*on behalf of themselves and others
similarly situated,*

      Plaintiffs,

        v.

National Football League and
NFL Properties LLC, successor-in-interest to
NFL Properties, Inc.,

      Defendants.

No. 2:12-md-02323-AB

MDL No. 2323

Hon. Anita B. Brody, U.S.D.J.

**THRIVEST SPECIALTY FUNDING, INC.'S BRIEF
IN SUPPORT OF ITS MOTION FOR BOND PENDING APPEAL**

**FOX ROTHSCHILD LLP**

Peter C. Buckley, Esquire
Eric E. Reed, Esquire
Mark J. Fanelli, Esquire
Attorney I.D. Nos. 93123, 204692, 321283
2000 Market Street, 20th Floor
Philadelphia, Pennsylvania 19103-3222
Tel: (215) 299-2854
Fax: (215) 299-2150

*Attorneys for Thrivest Specialty Funding, LLC*

Dated:  June 29, 2018

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................. 2

ARGUMENT ........................................................................................................... 5

      I.     Requiring Bond Pending Appeal Is Appropriate Under Rule 62(c) ...................... 5

            A.    Likelihood of Success on Appeal .............................................. 6

            B.    Irreparable Injury ...................................................................... 9

            C.    Balance of Harms....................................................................... 10

            D.    Public Interest ............................................................................ 11

      II.    Rule 65 Also Supports Requiring of a Bond ......................................... 11

      III.   The All Writs Act Does Not Excuse the Bond Requirement................................ 14

CONCLUSION......................................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

**Cases**

AARP v. E.E.O.C.,
390 F. Supp. 2d 437 (E.D. Pa. 2005) .......................................................................6

Adkins v. Nestle Purina PetCare Co.,
779 F.3d 481 (7th Cir. 2015) ...............................................................................16

In re Baldwin-United Corp.,
770 F.2d 328 (2d Cir. 1985)...........................................................................14, 15

Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
910 F.2d 1049 (2d. Cir. 1990)........................................................................12, 13

Buckeye Check Cashing, Inc. v. Cardegna,
546 U.S. 440 (2006).........................................................................................7, 8

Centauri Shipping Ltd. v. Western Bulk Carriers KS,
528 F. Supp. 2d 186 (S.D. N.Y. 2007).....................................................................9

Chicago Title Ins. Co. v. Lexington & Concord Search and Abstract, LLC,
513 F. Supp. 2d 304 (E.D. Pa. 2007) .....................................................................12

Clark v. U.S. Bank Nat'l Ass'n,
2004 WL 2591239 (E.D.Pa. 2004) ........................................................................6

Combustion Sys. Servs., Inc. v. Schuylkill Energy Resources, Inc.,
153 F.R.D. 73 (E.D.Pa. 1994)...............................................................................6

Constructors Assoc. of Western Pa. v. Kreps,
573 F.2d 811 (3d. Cir. 1978)................................................................................6

Dean Witter Reynolds, Inc. v. Byrd,
470 U.S. 213 (1985)........................................................................................8, 11

Don Post Studios, Inc. v. Cinema Secrets, Inc.,
148 F.Supp.2d 572 (E.D.Pa. 2001) ......................................................................13

Elliott v. Kiesewetter,
98 F.3d 47 (3d Cir. 1996).....................................................................................9

Epic Sys. Corp. v. Lewis,
_ U.S. ___, 2018 WL 2292444, at *1, 6 (May 21, 2018) .......................................7

<u>Florida Medical Ass'n, Inc. v. U.S. Dept. of Health, Ed., and Welfare,</u>
601 F.2d 199 (5th Cir. 1979) ..........................................................14, 15, 16, 17, 18

<u>Harris v. Pernsley,</u>
654 F. Supp. 1057 (E.D. Pa. 1987) ...........................................................................6

<u>Hilton v. Braunskill,</u>
481 U.S. 770 (1987) ...................................................................................................6

<u>Hoxworth v. Blinder, Robinson & Co., Inc.,</u>
903 F.2d 186 (3d Cir. 1990) ..........................................................................9, 11, 12

<u>Instant Air Freight Co. v. C.F. Air Freight, Inc.,</u>
882 F.2d 797 (3d. Cir. 1989) ...................................................................................12

<u>In re Jimmy John's Overtime Litig.,</u>
877 F.3d 756 (7th Cir. 2017) ...........................................................14, 16, 17, 18

<u>Medafrica Line, S.P.A. v. American West African Freight Conf.,</u>
654 F. Supp. 155 (S.D.N.Y. 1987) ..........................................................................12

<u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,</u>
460 U.S. 1 (1983) ................................................................................................8, 11

<u>Pennsylvania Bureau of Corr. v. United States Marshals Serv.,</u>
474 U.S. 34 (1985) ...............................................................................................7, 17

<u>Rent-A-Center, West, Inc. v. Jackson,</u>
561 U.S. 63 (2010) .....................................................................................................8

<u>Sprint Comm's Co., L.P. v. CAT Comm's Intern., Inc.,</u>
335 F.3d 235 (3d. Cir. 2003) ...................................................................................12

<u>U.S. v. Yielding,</u>
657 F.3d 722 (8th Cir. 2011) ............................................................................14, 18

<u>W.R. Grace & Co. v. Local Union 759,</u>
461 U.S. 757 (1983) .................................................................................................12

<u>Zurich Am. Ins. Co. v. Superior Court for the State of Cal.,</u>
326 F.3d 816 (7th Cir. 2003) ...................................................................................17

**Statutes**

28 U.S.C. § 1651(a) ...................................................................................... *passim*

Federal Arbitration Act ......................................................................................4, 7, 8

Fair Labor Standards Act ...................................................................................14, 16

National Labor Relations Act ..................................................................................7

**Other Authorities**

11 Charles A. Wright & Arthur P. Miller, *Federal Practice and Procedure* § 2904
   (3d ed) ......................................................................................................5

11 Charles A. Wright & Arthur P. Miller, *Federal Practice and Procedure* § 2954
   (3d ed) ....................................................................................................12

Fed. R. App. P. 8 ...................................................................................2, 5

Fed. R. Civ. P. 62 ............................................................................... *passim*

Fed. R. Civ. P. 62(b) ..............................................................................6

Fed. R. Civ. P. 62(c) ....................................................................2, 5, 6, 8, 11

Fed. R. Civ. P. 65 ............................................................................... *passim*

Fed. R. Civ. P. 65(c) ....................................................................2, 1, 11, 12

## INTRODUCTION

As the Court is aware, non-party Thrivest Specialty Funding, LLC ("Thrivest") advanced funds to NFL Concussion Settlement Class Member William White under a Sales and Purchase Agreement ("Agreement") between Thrivest and Mr. White. Citing the Court's rulings, Mr. White repudiated his obligations under the Agreement, including his obligation to transfer the TSF Distribution to Thrivest upon receipt of his award. Thrivest sought to arbitrate its dispute with Mr. White, relying on the Agreement's arbitration provision.

Although Thrivest has no contract with the Class and did not seek to arbitrate against the Class, Class Counsel moved to enjoin Thrivest from arbitrating its claim against Mr. White. The Court entered a temporary restraining order and, on May 22, 2018, entered an Explanation and Order enjoining Thrivest from "seeking arbitration regarding the validity of its funding agreement with Settlement Class Member William White." The Court did not enjoin Mr. White from spending the funds advanced by Thrivest, nor did the Court require Mr. White, the Class, or Class Counsel to post a bond or other security pending disposition of Thrivest's appeal of the Explanation and Order to the Third Circuit. As a result, Thrivest is wholly unprotected against Mr. White's dissipation of the disputed funds and the consequences of a wrongful injunction. Moreover, if the disputed amount is not bonded or the disputed funds escrowed, Thrivest could be left without a remedy should Thrivest prevail in its appeal and subsequent arbitration against Mr. White. Neither Rule 62, Rule 65, nor the All Writs Act allow for such an outcome.

For these reasons, Thrivest respectfully requests that the Court enter an Order requiring the posting of a bond in the amount of $788,535.65 (representing Mr. White's projected contractual obligation at the end of the appeal exclusive of attorneys' fees and expenses), or alternate equivalent security, pending disposition of the appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

An 11-year veteran of the NFL, Mr. White was diagnosed with amyotrophic lateral sclerosis (ALS) in October 2016.  At the time, Mr. White owed the IRS nearly $200,000 because of unpaid income taxes from 2008, 2011 and 2012—with interest and penalties accruing daily. Mr. White needed immediate financial assistance.  He expected $3.5 million from the NFL Concussion Settlement, but knew he would have to wait; he could not even submit his claim until March 2017 and everyone expected delay.  So, like many other putative members of the class on whose behalf Class Counsel negotiated the NFL Concussion Settlement, Mr. White sought an advance against his expected recovery to help bridge his financial gap.

There were numerous lenders and funding companies providing advances at the time, but Mr. White chose Thrivest.  Thrivest offered the lowest rate (19% per annum) for any non-recourse transaction—meaning that Mr. White would have no obligation to repay the advance if his claim was denied and that his other assets need not be tapped in the event of a shortfall.  Thrivest clearly disclosed the terms of the arrangement and obtained assurances from Mr. White's treating neurologist regarding his diagnosis and capacity to understand the transaction.  Mr. White's attorney, Robert C. Wood, Esquire, notarized and acknowledged the documents, and his wife consented.  On December 8, 2016, Mr. White and Thrivest entered into the Agreement, which contained an arbitration clause and class action/multi-district litigation waiver.  Thrivest advanced $500,000 of Mr. White's expected $3.5 million recovery; Mr. White used $192,253.89 to satisfy his IRS liens, and received $282,746.11 (the remainder less transaction fees).

By all indications, Mr. White was satisfied with the transaction.  He never complained and his attorney provided regular updates on the status of his claim to Thrivest.  But, in March 2018, after the Claims Administrator approved his award, Mr. White told Thrivest that he would not

honor his promise to transfer the TSF Distribution[1] to Thrivest once he received his award.  Instead, Mr. White gave Thrivest an ultimatum—either waive its rights under the Agreement by April 12, 2018 and recover only principal, or receive no repayment whatsoever.  Mr. White purported to justify his "about face" by referencing a decision from this Court in the NFL Concussion Class Action.  The decision was a December 8, 2017 Explanation and Order that is currently on appeal to the Third Circuit at Nos. 18-1040 and 18-1482—was a response to a "certified" question from a Court in another case.  The Court invalidated all transactions advancing NFL Concussion Settlement awards structured as "assignments," finding them contrary to a provision in the NFL Concussion Settlement prohibiting the assignment of "any rights or claims relating to the subject matter of the Class Action Complaint."

Relying on the Agreement's arbitration provision at Section 6(z), Thrivest commenced an arbitration against Mr. White for breach of the Agreement, declaratory judgment and emergency interim relief: Thrivest Specialty Funding, LLC v. White, AAA No. 01-18-0001-4765 (the "Arbitration").  Citing the December 8, 2018 Explanation and Order, Mr. White objected to the arbitrator's jurisdiction.  Thrivest filed an action seeking to compel arbitration: Thrivest v. White, No. 18-1877 (E.D. Pa.).[2]  In response, Class Counsel sought a temporary and permanent injunction in the NFL Concussion Class Action, seeking to forbid Thrivest from proceeding with the Arbitration and, in essence, to deprive Thrivest of its only available forum.

---

[1]      White sold a portion of his award, defined in the Agreement as the "TSF Distribution," to Thrivest; the amount of the TSF Distribution varies over time and is set forth on Exhibit B to the Agreement.

[2]      Thrivest v. White remains pending before the Court.  On May 24, 2018, Thrivest docketed a request for clarification regarding the disposition of the case, particularly as to whether the Court would docket in Thrivest v. White the May 22, 2018 Explanation and Order from the Class Action. 18-cv-1877 Doc. No. 11.  The Court has not addressed that request, which Thrivest renews.

Shortly before the emergency arbitrator was set to hear Thrivest's application for emergency interim relief, which sought to escrow the TSF Distribution pending resolution of the Arbitration, the Court entered a temporary injunction.  The Court did not require Mr. White, the Class, or Class Counsel to post a bond in issuing the injunction.  At the hearing on Class Counsel's request for a permanent injunction, Class Counsel conceded the making of an arbitration agreement, but argued that the Court's power under the All Writs Act to enforce the Settlement Agreement in the NFL Concussion Class Action authorized the Court to permanently enjoin the Arbitration notwithstanding the provisions of the Federal Arbitration Act ("FAA") and Supreme Court precedent applying the FAA.  The Court agreed with Class Counsel, and in a May 22, 2018 Explanation and Order, enjoined Thrivest from "seeking arbitration regarding the validity of its funding agreement with Settlement Class Member William White."  Because of the Court's ruling, AAA suspended the Arbitration.

Thrivest appealed the May 22, 2018 Explanation and Order to the Third Circuit, where it is pending as No. 18-2184.  The Third Circuit is also hearing two consolidated appeals addressing related issues raised by RD Legal Funding Partners, LP, RD Legal Finance, LLC, RD Legal Funding, LLC and Roni Dersovitz (collectively "RD Legal").   See Case Nos. 18-1040 and 18-1482.  Cash4Cases, Inc., Atlas Legal Funding, LLC, Atlas Legal Funding I, LLP, Atlas Legal Funding II, LLP, and Atlas Legal Funding III, LP ("Cash4Cases"), took the other appeal.  See Case No. 18-1639.

The TSF Distribution continues to accrue until Mr. White transfers it to Thrivest in satisfaction of his obligations.  See e.g., Agreement at 1(f), Exhibit B.  If paid by June 30, 2018, the TSF Distribution is $673,901.99.  Id. at Exhibit B.  In the Third Circuit, the average duration of civil cases from filing to disposition is approximately 10 months and 12 days.  See U.S. Court

of Appeals for the Third Circuit Practice Guide, Federal Bar Association, 2012, at 25.  If this appeal follows the standard track and experiences the average duration, disposition will not occur until April 2019 at which point the TSF Distribution will be $788,535.65 (if paid before April 30, 2019).

Given this, and because Mr. White's financial needs may otherwise prompt expenditure of the advanced funds, Thrivest attempted to negotiate with Mr. White for a bond or other arrangement to reasonably protect Thrivest's interests pending appeal.  Mr. White declined to consider any such arrangement.

## ARGUMENT

## I. Requiring Bond Pending Appeal Is Appropriate Under Rule 62(c)

Thrivest respectfully moves the Court under Fed. R. Civ. P. 62(c), and Fed. R. App. P. 8 for an order requiring Mr. White, the Class, or Class Counsel to post a bond in the amount of $788,535.65, representing the projected TSF Distribution at the estimated conclusion of the Third Circuit appeal, pending disposition of the appeal.

Rule 62(c) empowers the Court to preserve Thrivest's rights pending the appeal of the May 22, 2018 Explanation and Order:

> Injunction Pending an Appeal. While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

Fed. R. Civ. P. 62(c).  The provision "codifies the inherent power of courts to make whatever order is deemed necessary to preserve the status quo and to ensure the effectiveness of the eventual judgment."  11 Charles A. Wright & Arthur P. Miller, Federal Practice and Procedure § 2904 (3d ed).

The "standard for obtaining an injunction pending appeal is identical to the standard for granting a preliminary injunction." Clark v. U.S. Bank Nat'l Ass'n, 2004 WL 2591239, *2 (E.D.Pa. 2004). The United States Supreme Court in Hilton v. Braunskill, 481 U.S. 770, 776 (1987), listed four factors for courts to consider in deciding whether to issue a stay pending an appeal: (1) whether the applicant for stay has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent the requested relief; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) whether the public interest favors the requested relief. No one factor is dispositive; "Rather, proper judgment entails a delicate balancing of all elements." Harris v. Pernsley, 654 F. Supp. 1057, 1059 (E.D. Pa. 1987) (quoting Constructors Assoc. of Western Pa. v. Kreps, 573 F.2d 811, 835 (3d. Cir. 1978)).

A.    **Likelihood of Success on Appeal**

The Court need not conclude that it erred in order to grant the requested relief. "Although the Court will not concede that it committed error, this Court cannot conclude that Plaintiff has no reasonable possibility of success on the merits of its post trial motions or appeals." Combustion Sys. Servs., Inc. v. Schuylkill Energy Resources, Inc., 153 F.R.D. 73, 74 (E.D.Pa. 1994) (Granting stay of execution under Rule 62(b) where "The issues presented to the jury in this matter were complex and it is difficult for this Court to predict what the Court of Appeals might do."). Similarly, Thrivest "need not show an absolute probability of success" in order to receive relief under Rule 62(c) when denying the stay will "utterly destroy the status quo, irreparably harming" Thrivest, but granting the relief will cause "relatively slight" harm to the opposing party. AARP v. E.E.O.C., 390 F. Supp. 2d 437, 462-63 (E.D. Pa. 2005) (Staying permanent injunction under Rule 62(c)). The current status quo, as best known to Thrivest, is that Mr. White has received his payment from the NFL Concussion Settlement and thus has an opportunity to spend it. As

6

addressed below, Mr. White's growing obligation, coupled with a diminishing ability to satisfy that obligation and a complete absence of security, leaves Thrivest exposed to the irreparable harm of an uncollectible judgment, as measured against the relatively lesser burden of purchasing a bond or escrowing the disputed amount.

The Court is familiar with Thrivest's arguments regarding the merits of the matter on appeal, i.e., the validity of the Agreement. As previously briefed, Thrivest maintains that the Court's jurisdiction does not extend to the Agreement because Mr. White's obligation only arises if and when he receives payment from the NFL Concussion Settlement, at which point the Court's role as to Mr. White would have expired. "The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. ***Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling.***" Pennsylvania Bureau of Corr. v. United States Marshals Serv., 474 U.S. 34, 43 (1985) (emphasis added). Here, the FAA specifically addresses and controls the arbitration issue at hand. The Supreme Court of the United States recently reaffirmed that concept in Epic Sys. Corp. v. Lewis, ____ U.S. ___, 2018 WL 2292444, at *1, 6 (May 21, 2018). The Court rejected arguments that the National Labor Relations Act overrode the FAA such that employees should be exempted from class and collective action waivers in their employment agreements, and stated, "[t]he parties before us contracted for arbitration. They proceeded to specify the rules that would govern their arbitrations, indicating their intention to use individualized rather than class or collective action procedures. And this much ***the Arbitration Act seems to protect pretty absolutely.***" Id. at *6 (emphasis added).

Voluminous case law indicates that challenges to the Agreement's validity are properly reserved to the arbitrator. See Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444

(2006). This is because, "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract," such that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration cause, must go to the arbitrator." Id. at 445, 449. See also Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 69 (2010) ("a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate").

Concerns about multiple forums considering the substantive issue are insufficient to overcome contractual arbitration rights. The FAA directs that arbitrable disputes be severed from non-arbitrable disputes to the extent necessary to enforce agreements to arbitrate. The prospect of an arbitrator reaching a different conclusion than the Court is not a basis to invalidate an otherwise enforceable arbitration agreement. See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) ("[T]he [FAA] requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums."); Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20 (1983) ("[The FAA] requires piecemeal resolution when necessary to give effect to an arbitration agreement.").

Respectfully, the Court's decision is erroneous in that it deprives Thrivest of its arbitration rights under the FAA, exceeds any jurisdiction afforded under the All Writs Act, and erroneously continues jurisdiction following the distribution of settlement proceeds. Thrivest recognizes that the Court is unlikely to reverse its prior rulings. However, the issues surrounding the interplay between the All Writs Act, the FAA, and the Court's class action jurisdiction are sufficiently complex to warrant Rule 62(c) relief pending the appeal.

8

### B.   **Irreparable Injury**

Monetary injury may suffice to establish irreparable harm necessary to warrant Rule 62 relief pending an appeal in situations in which the party that might ultimately be ordered to pay monetary damages is insolvent or facing imminent bankruptcy, or is in a perilous financial state. Centauri Shipping Ltd. v. Western Bulk Carriers KS, 528 F. Supp. 2d 186 (S.D. N.Y. 2007). Similarly, the Third Circuit recognizes that a district court has the power to protect a future damages remedy through injunctive relief.   See Elliott v. Kiesewetter, 98 F.3d 47, 57 (3d Cir. 1996) ("A district court is clearly permitted to consider the likelihood that a defendant will be able to pay a judgment in determining whether to enter an asset freeze order.").  See also Hoxworth v. Blinder, Robinson & Co., Inc., 903 F.2d 186 (3d Cir. 1990).  In Hoxworth, the Third Circuit upheld the district court's finding that the plaintiff would suffer irreparable harm if a preliminary injunction encumbering the assets of a securities dealer were not entered, given that the defendant faced administrative proceedings in multiple jurisdictions and would likely be otherwise unable to satisfy a judgment. Id. at 206.

Here, Mr. White's exposure to Thrivest will continue to grow during the pendency of the appeal.  The Agreement provides that the TSF Distribution continues to accrue until White transfers it to Thrivest in satisfaction of his obligations. See Agreement at 1(f), Exhibit B.  If paid by June 30, 2018, the TSF Distribution is $673,901.99.  Id. at Exhibit B.  The average duration of civil cases from filing to disposition in the Third Circuit is approximately 10 months and 12 days. See U.S. Court of Appeals for the Third Circuit Practice Guide, Federal Bar Association, 2012, at 25.  If the appeal follows the standard duration, disposition will not occur until April 2019.  At that point, the TSF Distribution will be $788,535.65 (if paid before April 30, 2019).  See Agreement at Exhibit B.

There is no indication that Mr. White's ability to satisfy the TSF Distribution will track his growing exposure during the appeal.[3]  The Court did not conduct an evidentiary hearing prior to issuing either injunction, but one can reasonably conclude that Mr. White's medical expenses will mount and his capacity to work will diminish as his ALS progresses.  Thus, Thrivest may prevail on its appeal only to lack any effective collection remedy from Mr. White.  Thrivest respectfully submits that, absent a bond or other security, it faces a significant likelihood of irreparable harm.

C.      **Balance of Harms**

In deciding whether injunctive relief is appropriate, the Court must balance the hardships to the respective parties.  Thrivest seeks only to be secured pending the disposition of its appeal. Thrivest directs its request for security primarily to Mr. White because Thrivest's Agreement is with Mr. White, it advanced funds to Mr. White, and it sought to arbitrate against Mr. White. However, Thrivest's primary concern is to secure its interests pending disposition of the appeal, and is open to other approaches that satisfy that objective.

To the extent that posting a bond presents a financial hardship to Mr. White, this only reinforces the irreparable harm issue addressed above.  However, to the extent that the Class, or Class Counsel, wishes to post the bond, escrow funds, or post other security sufficient to address those interests, Thrivest is open to such solutions.[4]  In any event, the balance of the harms—the very real risk of nonpayment compared to posting security—favors Thrivest's requested relief.

---

[3]      Indeed, during the hearing on Class Counsel's request for a temporary injunction on the eve of the hearing on Thrivest's application for emergency interim relief, Class Counsel "assure[d]" the District Court that White "does not have" the $750,000 that Thrivest sought to escrow pending disposition of the Arbitration.  See Transcript Excerpt 5:22-6:1.

[4]      Mr. White has personal counsel apart from Class Counsel.  Nonetheless, Class Counsel appeared on behalf of the Class seeking to enjoin the arbitration.  While procedurally odd given

###### D.     Public Interest

As indicated in <u>Dean Witter</u>, <u>Moses H. Cone</u>, and, more recently, in <u>Epic Systems</u>, the public interest favors the enforcement of arbitration agreements.  Rule 62(c) and Rule 65(c) (addressed below) and the equitable concepts they embody reflect the public interest in not leaving appellants without a remedy should they prevail on appeal.  The public interest favors securing Thrivest's interest pending the disposition of the appeal.

For all of these reasons, Thrivest respectfully submits that the Court require adequate security pending appeal under Rule 62(c).

## II.     Rule 65 Also Supports Requiring of a Bond

The Court did not undertake a traditional injunction analysis either in issuing the temporary or permanent injunction in this case.  That was an error.  <u>See Hoxworth</u>, 903 F.2d at 196 ("a district court commits reversible error when it fails to require the posting of a security bond by the successful applicant for a preliminary injunction.").  Accordingly, Rule 65(c) also supports the requirement of a bond pending disposition of the appeal.  In fact, Rule 65 ***requires*** a bond as a condition of an injunction:

> Security. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

Fed. R. Civ. P. 65(c).  "The purpose of this provision is to enable a restrained or enjoined party to secure indemnification for any costs, usually not including attorney's fees, and any damages that

---

that Thrivest sought only to arbitrate its claim against Mr. White, Thrivest welcomes the participation of the Class or Class Counsel in posting security for the injunction.

are sustained during the period in which a wrongfully issued equitable order remains in effect."
11 Charles A. Wright & Arthur P. Miller, Federal Practice and Procedure § 2954 (3d ed) (citations
omitted). "A party has been 'wrongfully enjoined' under Fed. R. Civ. P. 65(c) if it is ultimately
found that the enjoined party had at all times the right to do the enjoined act." Blumenthal v.
Merrill Lynch, Pierce, Fenner & Smith, Inc., 910 F.2d 1049, 1054 (2d. Cir. 1990) (citing Medafrica
Line, S.P.A. v. American West African Freight Conf., 654 F. Supp. 155, 156 (S.D.N.Y. 1987)).

"Although the amount of the bond is left to the discretion of the court, the posting
requirement is not." Chicago Title Ins. Co. v. Lexington & Concord Search and Abstract, LLC,
513 F. Supp. 2d 304, 322 (E.D. Pa. 2007) (citing Hoxworth, 903 F.2d at 210). "A party injured
by the issuance of an injunction later determined to be erroneous has no action for damages in the
absence of a bond." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 804 (3d. Cir.
1989)(quoting W.R. Grace & Co. v. Local Union 759, 461 U.S. 757, 770 n. 14 (1983)). In addition
to securing compensation to the enjoined party in the event the injunction is overturned, the bond
"serves to inform the plaintiff of the price they can expect to pay if the injunction was wrongfully
issued." Id. at 805. Once the court sets the bond and conditions the injunction on the posting of
the bond, "The applicant may base its decision [to accept injunctive relief] on whether it wants to
expose itself to liability up to the bond amount." Sprint Comm's Co., L.P. v. CAT Comm's Intern.,
Inc., 335 F.3d 235, 204 (3d. Cir. 2003) (rejecting retroactive increase in bond in conjunction with
dissolution of two-year-old injunction).

Applying these concepts, the Third Circuit in Hoxworth vacated the trial court's allowance
of a no-bond injunction that enjoined the transfer of funds. Hoxworth, 903 F.2d at 210 ("To the
extent that the district court's holding is based on a determination that complying with the
preliminary injunction raised no risk of harm to these defendants, that determination is clearly

erroneous.").  Similarly, in <u>Blumenthal</u>, the Third Circuit reversed the trial court's order enjoining registered representatives from using customer records following their separation from Merrill Lynch, because the representatives "had at all times the right to do business with their Merrill Lynch clients."   <u>Blumenthal</u>, 910 F.2d at 1055 (remanding for determination of wrongful injunction damages up to the amount of the bond).[5]

The concerns here, on appeal from a permanent injunction, are the same as those that existed at the preliminary injunction stage, and are addressed by Rule 65.  Thrivest asks this Court to require a bond or other security sufficient to secure Thrivest's rights pending the outcome of the appeal as Rule 65 and the equitable concepts it embodies require.  As addressed above, Mr. White's obligation to Thrivest under the Agreement grows with the passage of time, while his ability to satisfy that obligation only diminishes.   The current situation—with Thrivest enjoined from arbitrating its contract claim against Mr. White, and the Court essentially relieving Mr. White from his payment obligation—essentially immunizes Mr. White and could leave Thrivest without recourse should its Third Circuit appeal succeed.  This is fundamentally unfair and contrary to Rule 65.

---

[5]      Case law also supports the proposition that a bond may not cap the wrongfully enjoined party's recovery in the event the injunction is overturned.  In cases of bad faith, for example, the tortfeasor who wrongfully secured an injunction "will not be permitted to cap its damages to the extent of the posted bond."  <u>Don Post Studios, Inc. v. Cinema Secrets, Inc.</u>, 148 F.Supp.2d 572, 575 (E.D.Pa. 2001)("In this case, plaintiffs filed a frivolous, objectively unreasonable lawsuit and sought an injunction on the basis of a copyright that plaintiffs knew to be invalid in order to gain a marketplace advantage over their competitor.").  Here, while some security is preferable to no security, the bond amount should reflect the full measure of recovery available to Thrivest in the event that its Third Circuit appeal succeeds.

## III.    The All Writs Act Does Not Excuse the Bond Requirement

The Court cited the All Writs Act in issuing the May 22, 2018 Explanation and Order enjoining Thrivest from arbitrating its dispute with Mr. White.  The provision states, "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  Even if applicable in lieu of Rules 62 or 65, the All Writs Act does not support a no-bond injunction on the facts of this case.

The Third Circuit has not ruled on whether an injunction issued under the All Writs Act is subject to the requirements of Rules 62 or 65.  The case law in other Circuits is mixed.  Compare U.S. v. Yielding, 657 F.3d 722 (8th Cir. 2011) (affirming All Writs Act no-bond injunction against funds transfers) and In re Baldwin-United Corp., 770 F.2d 328 (2d Cir. 1985) (affirming no-bond All Writs Act injunction against state enforcement actions on same securities violations that were the subject of a pending federal multidistrict litigation) with Florida Medical Ass'n, Inc. v. U.S. Dept. of Health, Ed., and Welfare, 601 F.2d 199 (5th Cir. 1979) (when injunction is the relief sought, court cannot sidestep Rule 65 and issue injunction under All Writs Act or ancillary jurisdiction) and In re Jimmy John's Overtime Litig., 877 F.3d 756 (7th Cir. 2017) (All Writs Act does not empower Court to enjoin competing actions under the Fair Labor Standards Act ("FLSA"); party seeking injunction must satisfy Rule 65 considerations).

While the Third Circuit has not definitively stated whether injunctions under the All Writs Act must meet Rule 62 or 65 requirements, the concerns raised in the present Motion more closely track those in the cases that require satisfaction of the injunction factors in deciding whether to issue an injunction and on what terms.  Yielding, for example, is readily distinguishable.  There, the court enjoined a convicted violator of the federal Anti-Kickback Statute from transferring funds from an unrelated litigation and ordered them applied to the convicted defendant's restitution

14

obligation.  Yielding, 657 F.3d at 726-27.  The Court did not apply Rule 62 or 65, but the Civil Rules would not apply in a criminal case in the first instance, nor could a convicted criminal reasonably expect the protection of a bond in exchange for an order enforcing restitution as part of a criminal sentence.

In re Baldwin-United Corp. is similarly distinguishable.  There, the state actions essentially duplicated the pending multidistrict litigation – the state actions sought restitution and monetary recovery from the same defendants for the same conduct that gave rise to the multidistrict litigation, which funds would be paid over to its impacted citizens, i.e., the plaintiffs in the consolidated class actions.  770 F.2d at 333.  The case is also distinguishable in that the state enforcement actions, if allowed, could potentially dissipate the defendants' assets and thwart the already-negotiated settlement that the federal court sought to preserve.  The present Motion does not implicate such concerns.  Thrivest seeks no recovery from the NFL.  Mr. White has already negotiated his resolution with the NFL per the Settlement Agreement.  Mr. White has already received the benefit of the Court's resolution of the merits – he received or is in the process of receiving payment from the NFL.  Unlike the situation in In re Baldwin-United Corp., Thrivest's attempt to adjudicate its separate contract dispute with Mr. White does not endanger or even interfere with the performance of the Settlement Agreement.

On the other side of the ledger, the Fifth Circuit in Florida Medical Ass'n vacated the trial court's injunction under the All Writs Act because the trial court failed to offer any injunction analysis.  As the Fifth Circuit noted, "With few exceptions, the Federal Rules of Civil Procedure provided the procedures to be followed in United States district courts."  601 F.2d at 202.  The trial court in in Florida Medical Ass'n cited the All Writs Act in enjoining the government from publishing a list of physicians who treated Medicare beneficiaries, and the amount of

15

reimbursements the physicians received.  The trial court issued a temporary restraining order that the parties had extended by agreement, but then cited the All Writs Act and ancillary jurisdiction in extending the injunction pending disposition of the merits.  Id. at 201.

The trial court reasoned that the injunction was necessary and supported by the All Writs Act because publication of the list prior to resolution of the merits would moot the controversy. Id.  The Fifth Circuit vacated, noting the absence of an injunction analysis and that the All Writs Act "does not authorize a district court to promulgate an ad hoc procedural code whenever compliance with the Rules proves inconvenient."  Id.  "While publication of the list would appear to moot the controversy, Rule 65 provides sufficient protection for the jurisdiction of the district court."  Id.

Here, Class Counsel essentially asked the Court to follow the trial court in Florida Medical Ass'n and use the All Writs Act to enjoin the arbitration because, Class Counsel suggested, the arbitration jeopardizes the settlement.  The Court could and should have reviewed Class Counsel's injunction request under Rules 62 and 65, including bond issues.

Similarly, the trial court in In re Jimmy John's relied on the All Writs Act to enjoin opt-in FLSA plaintiffs from proceeding with their claims against franchisee employers pending disposition of the already-pending claims against the franchisor.  The franchisor and trial court's concerns in issuing the injunction included the avoidance of inconsistent rulings in multiple jurisdictions.  877 F.3d at 760.  The Seventh Circuit was not moved:

> At bottom, this argument amounts to nothing more than a fear that the district courts presiding over the franchise cases might reach a final decision on the merits before this case or, at the very least, make legal determinations that could affect the present litigation. However, "the potential effect of one suit on the other does not justify an injunction."

Id. at 766 (quoting Adkins v. Nestle Purina PetCare Co., 779 F.3d 481, 484 (7th Cir. 2015)).

16

The Seventh Circuit rejected the suggestions that the All Writs Act allowed the trial court to bypass an injunction analysis. Id. at 769-70 ("Jimmy John's argues that these omissions were not an abuse of discretion because Rule 65 and the traditional injunction factors do not apply to injunctions issued under the All Writs Act. Jimmy John's is mistaken."). Even if the All Writs Act had empowered the trial court to issue an anti-suit injunction, such injunctions "must also be supported by the traditional equitable requirements such as irreparable harm for which there is no adequate remedy at law." Id. at 770 (quoting Zurich Am. Ins. Co. v. Superior Court for the State of Cal., 326 F.3d 816, 825 (7th Cir. 2003)).

This outcome is consistent with the Supreme Court's guidance that "[t]he All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. *Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling.*" Pennsylvania Bureau of Correction, 474 U.S. at 43 (emphasis added). The All Writs Act "does not authorize [courts] to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." Id. Rules 62 and 65 address whether to require a bond when issuing an injunction and so the Court must follow that authority, notwithstanding its reference to the All Writs Act.

As in Florida Medical Ass'n and in In re Jimmy John's demonstrate, even assuming its application to the present facts, the All Writs Act does not empower the Court to issue an injunction without following the Civil Rules. This is because, even under a broad construction of its mandate, the All Writs Act only empowers the Court to act as necessary or appropriate *in aid of its jurisdiction*:

> Even if the district court had authority to issue the anti-suit injunction under the All Writs Act or its inherent equitable powers, that would not end our inquiry. "[A] district court must still determine whether an injunction is an appropriate exercise of its

17

> authority." . . . "[P]ower alone is insufficient to sustain the entry of an injunction.  We must also determine whether the injunction was a proper expression of that authority."

In re Jimmy John's, 877 F.3d at 769 (citations omitted).  In other words, a conclusion that the All Writs Act applies is a different question from whether it allows an injunction on these facts, which itself is a different question from whether the All Writs Act allows an injunction without a bond. The May 22, 2018 Explanation and Order does not address these issues.  Following the Civil Rules would.

In this case, as in Florida Medical Ass'n and in In re Jimmy John's, Class Counsel sought and obtained injunctive relief against Thrivest.  Injunctive relief was not ancillary to some pre-existing claim against Thrivest—unlike in Yielding, there are no claims against Thrivest in this case as Thrivest is not even a party to the case.  Class Counsel's efforts as against Thrivest extend no farther than the request for injunctive relief.  As in Florida Medical Ass'n and in In re Jimmy John's, this places the matter squarely within Rules 62 and 65.  Instead of even attempting a showing under the Rules, Class Counsel convinced the Court to rely on the All Writs Act to fashion an ad hoc procedural remedy.  Thrivest respectfully submits that the reasoning expressed by the Fifth Circuit and the Seventh Circuit in Florida Medical Ass'n and in In re Jimmy John's is sound, and that the injunction analysis should have followed the Civil Rules, including the bond requirement.

Such a result also comports with the principles of equity that generally govern equitable relief.  Injunctions seek to preserve the status quo pending a decision on the merits, and to preserve the parties' interests pending that decision.  That is precisely the issue here, as Thrivest seeks only to maintain an available remedy should it prevail in its appeal.  A win before the Third Circuit,

only to have no fund against which to collect, would be the pyrrhic victory that Rules 62 and 65 seek to avoid.

## CONCLUSION

The All Writs Act did not empower the Court to enjoin Thrivest in this case.  Even if it did, no injunction should have issued without adequate security.  Thrivest respectfully requests that the Court direct the posting of a bond or alternative security as indicated in the accompanying proposed order.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

*/s/ Peter C. Buckley*

Peter C. Buckley, Esquire
Eric E. Reed, Esquire
Mark J. Fanelli, Esquire
Attorney I.D. Nos. 93123, 204692, 321283
2000 Market Street, 20th Floor
Philadelphia, Pennsylvania 19103-3222
Tel: (215) 299-2854
Fax: (215) 299-2150

*Attorneys for Thrivest Specialty Funding, LLC*

Dated:  June 29, 2018

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

IN RE: NATIONAL FOOTBALL LEAGUE
PLAYERS' CONCUSSION INJURY
LITIGATION

---

Kevin Turner and Shawn Wooden,
*on behalf of themselves and others
similarly situated*,

       Plaintiffs,

         v.

National Football League and
NFL Properties LLC, successor-in-interest to
NFL Properties, Inc.,

       Defendants.

---

No. 2:12-md-02323-AB

MDL No. 2323

Hon. Anita B. Brody, U.S.D.J.

## <u>CERTIFICATE OF SERVICE</u>

     I, Peter C. Buckley, filed the foregoing on June 29, 2018 using the Court's ECF system,

which will provide notice and a copy to counsel of record.


                        */s/ Peter C. Buckley*
                        Peter C. Buckley, Esquire