# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>　　　　Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## FIRST VERIFIED PETITION OF CO-LEAD CLASS COUNSEL CHRISTOPHER A. SEEGER FOR AN AWARD OF POST-EFFECTIVE DATE COMMON BENEFIT ATTORNEYS' FEES AND COSTS

Pursuant to this Court's May 24, 2018 Explanation and Order (ECF No. 10019), Co-Lead Class Counsel Christopher A. Seeger ("Co-Lead Class Counsel") respectfully submits this First Verified Petition for an Award of Post-Effective Date Common Benefit Attorneys' Fees and Costs.

Based on the work undertaken from January 7, 2017, the Effective Date of the Settlement, to May 24, 2018, firms contributing to the common benefit of the Class dedicated over 13,500 hours for a lodestar at the blended rates set by the Court (*see* ECF No. 10019, at 7 n.4) of $8,559,179.97 and incurred $926,244.04 in expenses.

**SUMMARY OF WORK COMPLETED - EFFECTIVE DATE TO MAY 24, 2018**

As was outlined in and submitted with the initial Petition for an Award of Attorneys' Fees, Reimbursement of Costs and Expenses, Adoption of Set-Aside of Each Monetary Award and Derivative Claimant Award, and Case Contribution Awards for Class Representatives (ECF No. 7151), implementation of the Settlement Program necessarily began many months prior to the Effective Date. *Id.* at 25-26.  Immediately after the Effective Date, several milestones demanded increasing dedication and commitment by Seeger Weiss and other firms to ensure that the Settlement's benefits were timely delivered to the Retired NFL Football Players and their families. Among the early components that had to be launched were:  the commencement of registration on February 6, 2017; the opening of the Monetary Award Fund ("MAF") Claims Portal on March 23, 2017; the creation and unveiling of the national networks of neurologists and neuropsychologists authorized to make post-Effective Date diagnoses on April 7, 2018; and the commencement of the Baseline Assessment Program ("BAP") on June 6, 2017.[1]

As of July 9, 2018, over 20,500 Settlement Class Members have registered in the Settlement Program, over 1,900 Claim Packages have been submitted, 489 Notices of Monetary Awards have issued, worth over $475 million; and over 7,200 BAP examinations have been scheduled and over 5,700 appointments have been attended. *See*

---

[1]      Co-Lead Class Counsel already outlined this work in submissions made to the Court after the Effective Date, including in Co-Lead Class Counsel's Omnibus Reply in Further Support of Petition for Award of Attorneys' Fees and Reimbursement of Expenses, Adoption of Set-Aside from Monetary and Derivative Claimant Awards, and Case Contribution Awards for Class Representatives, and in Opposition to Objectors' Cross-Petitions for Awards of Attorneys' Fees and Expenses (ECF No. 7464, at 24-33),  the Declaration of Christopher A. Seeger in Support of Proposed Allocation of Common Benefit Attorneys' Fees, Payment of Common Benefit Expenses, and Payment of Case Contribution Awards to Class Representatives (ECF No. 8447, at 14-19), and the Opposition of Co-Lead Class Counsel Christopher A. Seeger to Motion of the Locks Firm for Appointment of Administrative Class Counsel (ECF No. 9885, at 7-14).

www.nflconcussionsettlement.com (last accessed July 10, 2018).  These successes are not mere happenstance.  Since the Effective Date, Seeger Weiss has worked tirelessly with other Class Counsel on numerous important matters, in coordination with the Administrators, the Special Masters, and the Court—and both cooperatively with and, as circumstances dictate, against the NFL—to facilitate and oversee the Settlement.  The centerpiece of these efforts has been the weekly call Seeger Weiss hosts with the NFL Parties, the Claims Administrator, the BAP Administrator and the Lien Resolution Administrator, where ongoing issues and progress are hashed out.  The 99th of these weekly calls took place on July 9, 2018.  Work on the Settlement has been a daily and ongoing matter, requiring the dedication of many of Seeger Weiss' attorneys and paraprofessionals, and focused around certain key areas that are summarized in the sections that follow.

Ensuring Inclusive, Class Member-Friendly Registration and Claims Processes:  After delivering supplemental notice to the Class, Seeger Weiss dedicated hundreds of hours to the negotiation and development of the registration forms and procedures, in order to ensure that the process was efficient and accessible so that no eligible Class Member would be denied entry into the Settlement Program.  Seeger Weiss undertook substantial efforts to drive registration, including appearances by Mr. Seeger at many NFL Alumni and annual NFL events across the country, hosting live webinar sessions and countless interviews by local and national media outlets, and responding, along with other Seeger Weiss attorneys and paralegals, to hundreds of calls from Retired NFL Football Players and their families.  These efforts inured to the Class' benefit.  The number of Retired NFL Football Players and family members who registered far exceeded all projections:

20,504 Settlement Class Members timely registered (as of July 9, 2018), including over 17,200 Retired NFL Football Players and Representative Claimants.

Seeger Weiss worked with the Claims Administrator to continually update the Settlement's dedicated website ("Settlement Website"), including its "Frequently Asked Questions" ("FAQs") section, so as to ensure that Class Members have easy access to the most up-to-date information and clear guidance on the Settlement Program.  Late in 2017, at the direction of the Court, Seeger Weiss worked for weeks with the Special Masters, the Claims Administrator, the BAP Administrator, the Lien Resolution Administrator, and the NFL to create an entirely revised and expansive set of FAQs that, in February of this year became the "rules of the road" for the Settlement, ensuring the Settlement Program remains accessible and transparent.  (ECF Nos. 8930, 9137).  Class Counsel also submitted comments on the FAQs.  Seeger Weiss also worked on revisions to the Settlement Website as new phases began, and additional forms, procedures, and other documents were prepared for Class Members, such as those relating to the BAP Program and the appeals process.

Moreover, Seeger Weiss worked with counsel for the NFL Parties, the Administrators, and the Special Masters to ensure that all forms needed to submit a claim were prepared, and that they were all-inclusive and easily understood.  Seeger Weiss drew on Class Counsel for input in the process of developing many of the forms used in the Settlement.  Additionally, Seeger Weiss worked with the Claims Administrator, the NFL Parties, and the Special Masters to launch the on-line claims portal, which guides Class Members through the claims submission process.  To make sure that Class Members receive all the support they deserve and need, Seeger Weiss continues to respond to hundreds of calls each month from Retired NFL Football Players and their families about the Settlement and its Claims Process.

Also, Seeger Weiss is constantly monitoring the progress of the Settlement Program's claims process in order to introduce improvements where possible to guarantee that all eligible claims are paid and every Settlement Class Member and lawyer representing Class Members receives any needed guidance.

Selection of Appeals Advisory Panel Members and Appeals Advisory Panel Consultants:  Seeger Weiss worked diligently for months so that the April 7, 2017 deadline for the recommendation of neurologists and neuropsychologists to serve as Appeals Advisory Panel ("AAP") members and consultants ("AAPC") was met.  That process included identifying and interviewing potential candidates, and working with counsel for the NFL until the settling parties agreed on the recommendations to be made to the Court for appointment to those bodies.  Seeger Weiss reached out to Class Counsel in the course of identifying and vetting potential candidates, so that Class Counsel could provide their input on the review of the candidates for these two bodies.  As the Court is aware, these medical providers have been reviewing certain claims where the diagnoses were made prior to the Effective Date in order to determine whether they are Qualifying Diagnoses under the terms of the Settlement.  These medical providers are also providing input and advice to the Special Masters as issues relating to medicine arise in the course of their duties, including in Appeals of Notices of Monetary Awards or Notices of Denials of Monetary Awards, or reviewing appeals that are remanded by the Special Masters for review of newly-provided medical records and documentation.  In some instances, they will resolve disputes between BAP Providers as to the existence (or not) of a Qualifying Diagnosis.  Working with the Claims Administrator and the NFL Parties, Seeger Weiss has undertaken ongoing efforts to ensure that these Court-appointed medical professionals have a complete understanding of their responsibilities in the Settlement

Program, including, most importantly, their review of the Claim Packages for pre-Effective Date Qualifying Diagnoses.

Toward the end of 2017, it became apparent that the volume of claims, like registrations, exceeded projections, and one member of the AAP was not able to dedicate sufficient time to his responsibilities.  Accordingly, the decision was made to remove that one member of the AAP and add two new members.  The same process as with the initial selection of members was followed, leading to the appointment of two new AAP members (and the removal of the one AAP Member) on March 6, 2018 (ECF No. 9757).  Seeger Weiss continually monitors the needs of the Settlement, including the potential need to add additional members of the AAP or AAPC.

Selection and Orientation of Hundreds of Individuals to Serve as Qualified BAP Providers and Qualified MAF Physicians and Maintenance of These Physician Networks:  The time-consuming vetting process associated with the selection of Qualified BAP Providers and Qualified MAF Physicians included a detailed review of each provider's curriculum vitae and application, as well as in-depth internet searches to ensure the qualifications of each candidate.  Seeger Weiss has been engaged in this effort on virtually a daily basis since before the Effective Date with the assistance of Class Counsel, and Seeger Weiss and the other relevant parties, including some of Class Counsel, expect to continue to recruit and contract with additional physicians and providers going forward.  These were daunting tasks, but they were successfully accomplished prior to the initial launch of the MAF Physician network and preliminary establishment of the BAP Provider network in June of 2017.

Working with the BAP Administrator, the Claims Administrator, the NFL Parties and its own experts, Seeger Weiss developed the services agreement that each physician and provider will

need to sign to serve in the networks.  Through this same process, the settling parties prepared the manuals that are being and will be used by each of the Administrators to train the physicians and providers on the medical aspects of the Settlement, including the testing regimen at the heart of the BAP Program and what constitutes a Qualifying Diagnosis for purposes of qualifying for Monetary Awards.

Moreover, Seeger Weiss continually monitors and reviews these networks to make certain that Retired NFL Football Players are receiving the care and services that they deserve under the Settlement.

Oversight of the Claim Process and Monetary Award Determinations:  With the Claims Process currently well into its second year, and hundreds of Monetary Award determinations already issued, Seeger Weiss dedicated hundreds of hours in actively monitoring and supporting the Claims Process to ensure that Class Members are receiving the benefits that were negotiated on their behalf.  Seeger Weiss held regular calls with Class Counsel in this process to discuss implementation of the Settlement.  This oversight included on-going reporting and requests for information from the Claims Administrator and reviewing every determination by a member of the AAP to ensure that the panel is correctly following the terms of the Settlement Agreement. When issues arose regarding the AAP's application of the Settlement Agreement, Seeger Weiss raised those issues with the Claims Administrator and the NFL.  The settling parties then negotiated the language of a guidance memorandum to be sent to the AAP on that particular issue.  Seeger Weiss' ongoing engagement with Class Members and their counsel provided further bases and guidance on the needs of the Claims Process.

Seeger Weiss is also supporting the petitions of Representative Claimants for Retired NFL Players who were diagnosed with a Qualifying Diagnosis, but died before January 1, 2006.   For these claims to proceed to review on the merits, the Court needs to determine whether they are timely under the applicable state's law.  Seeger Weiss has submitted many Statements in support of the Representative Claimants' submissions in those proceedings.

Additionally, as with any program of this magnitude and duration, a sophisticated audit program was negotiated and implemented.  Seeger Weiss negotiated protections for the interests of Class Members in the rules and procedures governing the audit process, so as to make certain that meritorious claims are not unduly caught up with claims that are properly the subject of further examination by the Claims Administrator and, if warranted, the Special Masters.  As part of these rules and procedures, Seeger Weiss monitors the progress of audit investigations and provides formal input as to each juncture in the process, including submissions to the Special Masters for those claims that are referred for decision.

Seeger Weiss has protected and will continue to protect the interests of Class Members by monitoring the wider operation of the Settlement Program and addressing, with the Claims Administrator, all types of issues as they arise.


Appeals of Claims Determinations:  Seeger Weiss has, and will continue, to monitor all Monetary Award determinations to provide guidance to Class Members, assess whether Co-Lead Class Counsel should appeal any of the adverse determinations or, in those cases where an appeal from a determination is taken, either by a Class Member or the NFL Parties, to assess whether Co-Lead Class Counsel should file a Statement regarding the appeal.  Through this active engagement, Seeger Weiss' goal is to make sure that Class Members' entitlement to benefits is not restricted or

foreclosed outright by parsimonious interpretations of the Settlement Agreement or by meritless appeals taken by the NFL.  Whether through submitting Statements in support of a Class Member on appeal or through direct support of unrepresented Class Members and individual counsel, Seeger Weiss has pursued, among other things:  a properly inclusive interpretation of the "generally consistent" standard underpinning diagnoses made outside of the BAP; appropriate deference to diagnosing physicians, particularly those in the BAP and MAF physician networks; curtailed use by the NFL of data related to other claims; assurance that NFL appeals are not taken in "bad faith" so that claims are improperly delayed; and making sure that evidence offered on appeal, such as social media postings offered by the NFL, is subjected to the scrutiny appropriate to unauthenticated hearsay.  Indeed, the many appeals in which Seeger Weiss submitted a statement in support of a Retired NFL Football Player's position and other submissions to the Special Masters concerning disputes about implementation of the Settlement ultimately culminated in the FAQs that issued in February of this year.  (ECF No. 9137).

BAP Examinations and Supplemental Benefits:  Development of the BAP network was only the first step in implementing the BAP benefits for eligible Retired NFL Football Players.  Seeger Weiss is monitoring the implementation of the BAP so that examinations are promptly scheduled and all appropriate medical standards are followed for the Retired NFL Football Players.  In coordination with the BAP Administrator, Seeger Weiss also worked toward the implementation of BAP Supplemental Benefits for those Retired NFL Football Players who are diagnosed with Level 1 Neurocognitive Impairment through their BAP examinations.

<u>Fielding Calls from, and Supporting, Class Members and Lawyers Representing Class Members</u>: In addition to all of the above, Seeger Weiss has responded to hundreds of telephone calls each month from Class Members and lawyers representing Class Members.  The calls involve virtually every conceivable issue concerning the Settlement.  Of note, in the weeks leading up to the August 7, 2017 registration deadline, Seeger Weiss was deluged with telephone calls from Class Members (and even non-Class Members) and counsel representing Class Members with questions concerning the registration process.  Seeger Weiss handled every call and was able to assist numerous Class Members in successfully registering under the Settlement.  Seeger Weiss is providing the same level of support for Class Members through the Claims Process and any other aspect of the Settlement Program in which Class Members may be involved.  Class Counsel also receive calls from Class Members' counsel and Class Members who are not represented by individual counsel.

Seeger Weiss also fielded calls from Class Members and their family members concerning the potentially misleading third-party solicitations and deceptive practices in the wake of the issuance of the Notice designed to clear up confusion disseminated in accordance with the Court's June 12, 2017 Order (ECF No. 7814), and the Court's Notice and Order of July 19, 2017 (ECF No. 8037), setting a September 19, 2017 hearing (ECF Nos. 8392-93, 8410) to address deceptive practices.  Seeger Weiss expects that these calls will continue as the ongoing investigation develops.


<u>Efforts to Protect Class Members from Third-Party Profiteers</u>:  Seeger Weiss began its investigation into misleading solicitations and improper practices in early 2017.  As Co-Lead Class Counsel, Seeger Weiss was particularly concerned that profiteers might confuse or unduly

influence Class Members, who might be more susceptible to deceptive tactics by reason of neurocognitive impairments, other ailments, age, financial distress, or some combination of all of these factors.

Pursuant to the Court's July 19, 2017 Order, Seeger Weiss directed discovery at over three dozen separate groups of funders, claims services providers, certain Retired NFL Football Players, and even law firms. Seeger Weiss propounded written discovery requests, met and conferred with the respondents' counsel, received and reviewed documents and information, conducted depositions, and filed motions to compel against those persons and entities refusing to comply with the discovery requests. Most of these entities mounted spirited defenses against these efforts. Seeger Weiss presented its findings to the Court at the hearing held on September 19, 2017. ECF Nos. 8392, 8410. Additionally, Seeger Weiss created and provided to the Court a spreadsheet identifying all of the Class Members who will purportedly owe portions of their potential future Monetary Awards to one or more of these factions. ECF No. 8410, at 10, 13-14. Following the September 19th hearing, Seeger Weiss continued to seek discovery from additional entities whose identities became known, and continued to pursue motion practice against those third parties, including successfully opposing an attempted interlocutory appeal (ECF No. 8461; *see* ECF No. 8433) and moving for an order directing the Claims Administrator to withhold portions of future monetary awards allegedly owed to third parties until their entitlement to same could be determined (ECF Nos. 8470, 9113), which was vigorously opposed by numerous third parties (ECF Nos. 8825, 8910, 8932, 8933, 8939, 8940, 8941, 8942, 8943).

In particular, Seeger Weiss sought to challenge third-party funders' advances to Class Members against their anticipated Monetary Awards that seek to circumvent state usury laws by cleverly packaging the loans as assignments or partial assignments of the anticipated award (or

11

portion thereof).  Seeger Weiss sought to participate as *amicus curiae* in an action in the Southern District of New York when it learned that agreements between Class Members and one of the third-party funders were the subject of that case and that the Settlement Agreement might be interpreted by another court.  Alternatively, Seeger Weiss proposed that the district court presiding over that action refer the question of the putative assignments' validity to this Court for resolution (ECF No. 8197).

After the issue of these putative assignments was brought to the Court's attention, Seeger Weiss successfully argued that the putative assignments violate Section 30.1 of the Settlement Agreement (ECF Nos. 8434, 8457).  In Orders entered on December 8, 2017 (ECF No. 9517) and February 20, 2018 (ECF No. 9749), the Court agreed with Seeger Weiss' position and, respectively, declared the putative assignment agreements void, as prohibited by the Settlement Agreement, and directed the manner in which the Claims Administrator was to handle the voiding of these assignment contracts.  These Orders resulted in multiple third-party funders' appeals to the Third Circuit from these Orders (ECF Nos. 9558, 9755, 9794)[2]; motions to stay in this Court (ECF No. 9761) and in the Third Circuit; and a motion for a temporary restraining order and for a permanent injunction to prevent one funder from employing arbitration against the affected Class Member as an end-run around the Court's rulings, which resulted in the Court entering an Order enjoining the arbitration (ECF No. 10011), an Order that has also been appealed to the Third Circuit (ECF No. 10027).

Seeger Weiss has spent and will continue to focus significant, high-level attorney resources in briefing and arguing these motions and appeals.  Meanwhile, in late 2017, Seeger Weiss learned

---

[2]   These appeals are currently pending.  Briefing in connection with the appeals taken by the RD Legal entities was recently completed.  *See In Re NFL Players' Concussion*, Nos. 18-1040 & 18-1482 (3d Cir. reply brief filed June 7, 2018).

that one of the entities that had purported to enter into assignment agreements with Class Members had also encouraged Class Members to "invest" their retirement monies in that funder's investment portfolio. Following the Court's ruling that the assignments were void, a manager at that funder threatened a Class Member that the funder would engage in self-help and convert his and other Class Members' retirement funds as a means of obtaining repayment of the monies advanced under the now-void assignments. This new, and very troubling development, has thus far required Seeger Weiss to engage in discovery (ECF Nos. 9750, 9778), two rounds of motion practice, and a hearing (ECF Nos. 9578, 9850, 9974, 10078) – and the matter will continue to command Seeger Weiss' attention until it is resolved.

These efforts to protect Class Members will likely continue into the future for some time, as detailed herein, both in the investigative aspect, and, in the enforcement and/or effectuation of remedies that the Court has fashioned and may fashion in the future to protect Class Members from these profiteers.

## KEYSTONE ACCOMPLISHMENTS ON BEHALF OF CLASS MEMBERS

The thousands of hours that Seeger Weiss along with Class Counsel dedicated to the aforementioned work were hours well invested for the benefit of the Class. Although the importance of the tasks discussed above is self-evident, a few of the key successes along the way make clear the value of the work of Seeger Weiss, among other firms, for the common benefit of the Class. These keystone successes include:

The Earlier Date for a Qualifying Diagnosis: The question of determining the date of a Qualifying Diagnosis had been an issue from the beginning of the claims process. The issue is significant

because, under the Settlement's compensation matrix, once a player reaches the age of 45, his potential Monetary Award decreases every year.  Therefore, a difference of even one year in the date of the Qualifying Diagnosis can translate into a substantial decrease in the amount of a Monetary Award.  The NFL's position was, and still is, that the earliest that the date of a Qualifying Diagnosis can be is the date that the diagnosing physician first personally examined the player.  It was Seeger Weiss' position, however—as reflected in briefing for the Special Masters on the issue—that diagnosing physicians, based on their personal examination of the player, as well as a review of that player's existing medical records, may properly determine that the player began suffering from a Qualifying Diagnosis beginning on a date earlier than the initial personal examination by the diagnosing physician, and if so, that the use that earlier date as the date of the Qualifying Diagnosis is appropriate.  The Special Masters accepted Seeger Weiss' position in the FAQs that they promulgated in early February 2018.  Specifically, FAQ 93 allows physicians to use their "sound clinical medical judgment" to determine whether the player's diagnosed conditions "existed at a date earlier than the date of personal examination of the Player by the physician making the diagnosis and signing the DPC [Diagnosing Physician Certification ("DPC") (i.e., medical certification)] form."

MAF Physicians' Ability to Rely on Historic Neuropsychological Records:  The NFL and Co-Lead Class Counsel had sharply differing views as to whether Qualified MAF Physicians could rely on historic neuropsychological testing when making a dementia diagnoses (Level 1.5 and Level 2), or whether they were required to send the player for new neuropsychological testing.  This testing included earlier neuropsychological testing for one of the NFL benefit plans, such as the 88 Plan.  The NFL's position was that a Qualified MAF Physician could rely only on

neuropsychological testing that was conducted at the direction of the Qualified MAF Physician. Seeger Weiss advocated through submissions before the Special Master for recognition of and respect for the medical judgment of the Qualified MAF Physicians and allowing them to rely on historic neuropsychological testing if they found it to be reliable, particularly when the testing was part of one of the NFL benefits plans.  The Special Masters accepted this position and FAQ 102 now gives the Claims Administrator the discretion "to decide whether to accept neuropsychological testing from other sources based on the unique facts and circumstances of a particular claim," so long as it is less than 12 months old.  Similarly, FAQs 93 and 111 permit the use of earlier neuropsychological testing under the 88 Plan or another NFL benefit plan.

Accommodating the "Unavailability" of Diagnosing Physician or Medical Records:  Under the Settlement Agreement, one of the few express exceptions to the requirement that the player submit a Diagnosing Physician Certification from the Diagnosing Physician is if the Diagnosing Physician died, or was declared incompetent or legally incapacitated, before the Effective Date.  Similarly, the only exception to the requirement that the player submit medical records reflecting the claimed diagnosis was if the records were destroyed or lost by reason of a *force majeure* type event.  For every claim that fit easily into these exceptions, there were some where the Diagnosing Physician is still alive and competent but unavailable as a practical matter, or where medical records are no longer available due to a variety of reasons, including routine destruction of older records.  These claims were vulnerable to denial under the terms of the Settlement Agreement.  Seeger Weiss was initially able to secure the NFL's consent to look at such circumstances on a case-by-case basis rather than categorically rejecting claims affected by them, and Seeger Weiss dedicated many hours to reviewing each Claim Package and negotiating with the NFL.  In some of these claims,

Seeger Weiss had disputes with the NFL that were irreconcilable – either because of the burden placed on the Class Member by the only accommodation that the NFL was willing to offer, or because of the NFL's refusal to offer an accommodation.  The Special Masters ultimately took up this issue and, in FAQ 115, gave the Claims Administrator the discretion to decide whether the Diagnosing Physician Certification and medical records requirements should be excused in particular cases.

Providing for the Downgrading of Qualifying Diagnoses to Speed Awards:  Early in the claims process, Seeger Weiss realized that there would be situations in which a player's claim may be denied with respect to the asserted Qualifying Diagnosis, but that there was sufficient evidence in the Claim Package to support a different Qualifying Diagnosis.  For example, a player submits a claim for Level 2 Neurocognitive Impairment (moderate dementia) but the evidence supports only a Level 1.5 Neurocognitive Impairment (early dementia).  Under the Settlement Agreement, that claim would be subject to denial and the player would either need to file an appeal, or a *de novo* claim for a Monetary Award based on an asserted Level 1.5 Neurocognitive Impairment.

Accordingly, in an effort to streamline the process and avoid needless appeals and re-applications, Co-Lead Class Counsel proposed that the AAP should have the ability to approve a claim for a lesser Qualifying Diagnosis or for the asserted Qualifying Diagnosis but with a later diagnosis date.  After much negotiation, the NFL agreed, in part, to "downgrading," but only in very limited circumstances.  As a result, Seeger Weiss raised the issue with the Special Masters, who agreed and promulgated FAQ 137, giving the AAP the discretion to "downgrade" claims without restriction.

The Definition of "Eligible Season" and the Full 53-Man Active List:   At the heart of the Settlement benefits is the "Eligible Season," which stands as a proxy for exposure to concussive and sub-concussive hits.   The number of Eligible Seasons is thus a key driver in the amount of a Monetary Award and drives a Retired NFL Football Player's eligibility for participation in the BAP.   A full Eligible Season is earned for each year that a Retired NFL Football Player was on the Active List for at least three games.   The NFL, however, took the rigid position that uninjured players who were listed as "inactive" on game day would earn nothing toward an Eligible Season, even though they were shoulder-to-shoulder in practice during the prior week with all of the other Active List players.   As the Court is aware, Seeger Weiss, alongside attorney Brad Sohn,[3] advocated for parity in treatment of all Retired Players on the Active List up to game day.   After Seeger Weiss prevailed on behalf of the Class Members before the Special Master (ECF No. 9713), the NFL filed objections to the Special Master's Ruling in this Court (ECF No. 9754-1).   The Court overruled that objection, making the final and binding determination that the more reasonable (and expansive) definition of "Active List" should apply (ECF No. 9754).   This victory has already resulted in a substantial increase in at least one Monetary Award and has increased the number of players eligible for the BAP.

---

[3]      Although Mr. Sohn was representing his individual client in the appeal and subsequent briefing before the Court relating to the definition of "Eligible Seasons," Seeger Weiss solicited his collaboration and engagement for the common benefit of the Class.   Accordingly, Seeger Weiss is including Mr. Sohn's time on the issue of Eligible Season with this Fee Petition in order to compensate him for that work because it conferred a common benefit on the Class.

**SUMMARY OF HOURS & LODESTAR AND EXPENSES INCURRED**

Seeger Weiss collected and reviewed common benefit time and expenses submitted from Class Counsel and attorney Brad Sohn.  It reviewed all of the time entries and expenses submitted, and re-reviewed its own, in order to exercise billing judgment as to both the reasonableness of the submissions and whether the work performed and expenses incurred genuinely relate to the Settlement's implementation.   After conducting this review (and re-review), Seeger Weiss circulated the adjusted lodestar to each firm one week prior to the instant filing for an opportunity to comment and reach agreement.  Based on its thorough review, and in light of the work that this time represents, Seeger Weiss requests a fee award of $8,559,179.97 based on the blended rates established by the Court, and $926,244.04 for reimbursement of expenses, to be allocated as follows[4]:

| Firm | Total Hours | Blended Rate Lodestar[5] | Expenses | Total Award Requested |
|------|-------------|--------------------------|----------|-----------------------|
| *Anapol Weiss* | 137.7 | $104,424.80 | $161.310.17 | $265,734.97 |
| *Brad Sohn Law Firm* | 38.4 | $29,120.64 | | $29,120.64 |
| *Levin Sedran & Berman* | 73.3 | $55,587.05 | $406.87 | $55,933.92 |

---

[4]      As with the common benefit fee petition filed in February 2017 (ECF No. 7151; *see* ECF No. 9860, at 15), Co-Lead Class Counsel and Class Counsel stand ready to submit their supporting time records to the Court for its *in camera* review.

[5]      As directed by the Court, the lodestar sought utilizes the blended rate used in the May 24, 2018 Allocation Order.  Accordingly, the billing rate for partners is $758.35.  The billing rate for "of counsel" attorneys is $692.50.  The billing rate for associates is $486.67.  The billing rate for contract attorneys is $537.50.  The billing rate for paralegals is $260.00.  *See* ECF No. 10019, at 7 n.4. Attached hereto as Exhibit "A" is a chart setting forth the above totals and breaking down each firm's the common benefit hours by professional rank.

| *Locks Law Firm* | 670 | $508,094.50 | | $508,094.50 |
| *NastLaw* | 80.1 | $49,251.77 | $1,422.74 | $50,674.51 |
| *Podhurst Orseck* | 287.6 | $173,313.42 | $18,062.98 | $191,376.40 |
| *Prof. Issacharoff* | 36.3 | $27,528.10 | | $27,528.10 |
| *Seeger Weiss* | 12,2230.1 | $7,611,859.69 | $745,041.28 | $8,356,900.97 |

## CONCLUSION

WHEREFORE, the undersigned, as Co-Lead Class Counsel, respectfully requests that the Court approve this First Petition for Post-Effective Date Attorneys' Fees and Costs and award $9,485,424.01. which reflects $8,559,179.97 in lodestar based on the blended rates established by the Court and $926,244.04 in expenses, to be paid from the Attorneys' Fees Qualified Settlement Fund, and allocated as set forth in the above table.

Date:  July 10, 2018

Respectfully submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
cseeger@seegerweiss.com
Telephone:  (212) 584-0700

***CO-LEAD CLASS COUNSEL***

**<u>VERIFICATION</u>**

CHRISTOPHER A. SEEGER declares, under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746, that he is the Petitioner in this matter, has read the foregoing First Verified Petition of Co-Lead Class Counsel Christopher A. Seeger for an Award of Post-Effective Date Common Benefit Attorneys' Fees and Costs, and knows the contents thereof, and that the same are true to his personal knowledge, information, and belief. Executed this 10th day of July, 2018.

*/s/ Christopher A. Seeger*
CHRISTOPHER A. SEEGER

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on all counsel of record via the

Court's ECF system on July 10, 2018

*/s/ Christopher A. Seeger*
Christopher A. Seeger