# Exhibit E

CASE NO. 18-1482 & 18-1040

# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

In re: National Football League Players' Concussion Injury Litigation

---

Appeal From The United States District Court,
Eastern District of Pennsylvania
Case No. 2:12-md-02323-AB, Hon. Anita B. Brody

---

# EMERGENCY MOTION OF APPELLANTS RD LEGAL FUNDING PARTNERS, LP, RD LEGAL FINANCE, LLC, RD LEGAL FUNDING, LLC, AND RONI DERSOVITZ FOR STAY PENDING APPEAL

---

**BOIES SCHILLER FLEXNER LLP**
David K. Willingham
Michael D. Roth
Jeffrey M. Hammer
725 South Figueroa Street, 31st Floor
Los Angeles, California 90017-5524
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

**BROTMAN LAW**
Ellen C. Brotman
One South Broad Street, Suite 1500
Philadelphia, PA 19107
Telephone: (215) 609-3247

Attorneys for Appellants RD Legal
Funding Partners, LP, RD Legal
Finance, LLC, RD Legal Funding, LLC,
and Roni Dersovitz

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ....................................................................2

II.   BACKGROUND ...................................................................5

    A.    The CFPB Action and the Referral Order..............................5

    B.    The District Court's December 8 Order.................................8

    C.    The District Court's February 20 Order.................................8

    D.    The Special Masters' Rules Governing Assignment of Claims............9

    E.    RD Legal Files a Motion for Stay Pending Appeal ............................10

    F.    Stewart Sends RD Legal a Waiver of Rights Form with an April
        12 Deadline..........................................................................11

    G.    The District Court Denies RD Legal's Motion for Stay ...................12

III.  THE COURT SHOULD STAY THE DISTRICT COURT'S
      ORDERS WITHOUT REQUIRING THE POSTING OF A BOND ..........12

    A.    The Orders Are the Equivalent of a Money Judgment ......................13

    B.    No Bond Is Required Because the Disputed Funds Are Being
        Held by the Claims Administrator .....................................16

IV.   EVEN IF THE ORDERS WERE NOT THE EQUIVALENT OF A
      MONEY JUDGMENT, A STAY WOULD STILL BE
      WARRANTED............................................................................18

V.    CONCLUSION...........................................................................22

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Am. Mfrs. Mut. Ins. Co. v. Am. Broad.-Paramount Theatres, Inc.*,
    87 S. Ct. 1 (1966)............................................................................12

*Becker v. United States*,
    451 U.S. 1306 (1981) .......................................................................4

*Cottillion v. United Ref. Co.*,
    No. 09-civ-140E,
    2014 WL 7344005 (W.D. Pa. Dec. 23, 2014) ...............................13

*Council of Alt. Political Parties v. Hooks*,
    121 F.3d 876 (3d Cir. 1997) ....................................................20, 21

*Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*,
    636 F.2d 755 (D.C. Cir. 1980)........................................................16

*Griggs v. Provident Consumer Disc. Co.*,
    459 U.S. 56 (1982)....................................................................3, 19

*Hebert v. Exxon Corp.*,
    953 F.2d 936 (5th Cir. 1992) .........................................................13

*HCB Contractors v. Rouse & Assocs.*,
    168 F.R.D. 508 (E.D. Pa. 1995) ....................................................16

*In re Diet Drugs*,
    582 F.3d 524 (3d Cir. 2009) .........................................................16

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
    79 F.3d 46 (7th Cir. 1996) .............................................................18

*In re Trans World Airlines, Inc.*,
    18 F.3d 208 (3d Cir. 1994) ......................................................4, 14

*Munoz v. City of Philadelphia*,
    537 F. Supp. 2d 749 (E.D. Pa. 2008).............................................16

*Republic of Philippines v. Westinghouse Elec. Corp.*,
    949 F.2d 653 (3d Cir. 1991) ........................................................................18

*Supinski v. United Parcel Serv., Inc.*,
    No. 3:06-CV-00793,
    2012 WL 2905458 (M.D. Pa. July 16, 2012) ...............................................13

## **Other Authorities**

11 Wright & Miller, Fed. Prac. & Proc. Civ.
    § 2905 (3d ed. Apr. 2017) ............................................................................12

11A Charles Alan Wright, et al., Federal Practice and Procedure
    § 2948.1 (3d ed. updated Apr. 2016) ......................................................20, 21

Appellants RD Legal Funding Partners, LP, RD Legal Finance, LLC ("FINCO"), RD Legal Funding, LLC, and Roni Dersovitz (collectively, "RD Legal") request a stay pursuant to Federal Rule of Appellate Procedure 8(a) and Federal Rule of Civil Procedure ("Rule") 62(d) of the District Court orders (ECF Nos. 9517 and 99749) that are subject to this appeal.

RD Legal is not a named party in the underlying NFL Players' Concussion Injury multi-district litigation ("MDL") pending in the Eastern District of Pennsylvania. RD Legal is, however, a party in the case *CFPB v. RD Legal Funding, LLC*, No. 1:17-cv-890-LAP (S.D.N.Y.) (the "CFPB Action"). In an unprecedented procedure, the district court in the New York CFPB Action referred one issue pending in a motion to dismiss to the district court presiding over the Pennsylvania MDL, and the Pennsylvania District Court proceeded to answer that question, adjudicate issues beyond that question, and then create an extrajudicial procedure to invalidate seven RD Legal contracts valued at more than $3.4 million, as well as approximately 1,000 other contracts by other entities (who were also not parties to the Pennsylvania MDL) worth exponentially more than the RD Legal contracts. The propriety of these procedures—none of which are authorized by the Federal Rules of Civil Procedure or any other law—is directly at issue in this appeal, as well as the merits of the District Court's decisions.

1

Case 2:12-md-02323-AB   Document 9732-5   Filed 07/13/18   Page 7 of 29

RD Legal thus asks this Court to stay the novel process implemented by the District Court while this Court reviews the propriety of that process and the merits of the decisions implementing it.  Because at least $665,234.45 of the funds that are at issue on appeal are scheduled to be distributed on April 12, 2018, RD Legal requests that the Court rule on this Motion on an expedited basis pursuant to Federal Rule of Appellate Procedure 27 and Local Appellate Rule 27.7.

## I.    INTRODUCTION

RD Legal's business includes purchasing interests in future proceeds from legal settlements and judgments on a nonrecourse basis.  In this case, FINCO entered into agreements (the "Assignment Agreements") with seven former NFL players (the "Players") for the purchase of a portion of their anticipated awards from a settlement fund in the underlying MDL action that is being administered by a Claims Administrator.

Although RD Legal is not a party to the underlying Pennsylvania MDL, the judge in the New York CFPB Action in which RD Legal *is* a party—after "consult[ing]" with the judge in the underlying MDL action—referred to the Pennsylvania District Court a discrete issue that was the subject of a pending motion to dismiss.  (Ex. 1.)  Without any legal basis to accept jurisdiction, and over RD Legal's objection, the District Court accepted jurisdiction and held that the Assignment Agreements are void (the "December 8 Order").  (Ex. 2, ECF No.

2

9517.)  The District Court did not direct the disbursement of any settlement proceeds, but rather fashioned an optional rescission remedy and stated that "[f]urther instructions to the Claims Administrator will follow."  (*Id*. at 5.)

RD Legal appealed the December 8 Order but—despite having been divested of jurisdiction over "those aspects of the case involved in the appeal," *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)—the District Court issued a second order directing the Claims Administrator to distribute settlement proceeds "where there has been found an improper assignment of any right or claim" (the "February 20 Order").  (Ex. 3, ECF No. 9749.)  RD Legal appealed the February 20 Order as well (which, with the December 8 Order, are referred to as the "Orders").

Because the Orders invalidate the Assignment Agreements and direct the distribution of the funds at issue, they are the equivalent of a money judgment.  RD Legal thus requested that the District Court stay the enforcement of its Orders under the "automatic" stay provisions of Rule 62(d) and—because the funds are being held by the Claims Administrator and there is no risk of non-payment following the outcome of the appeal—excuse the posting of a supersedeas bond.  (Ex. 4, ECF No. 9761.)[1]

---

[1] *See also* Exs. 5-6, ECF Nos. 9790 and 9793 (Oppositions to Motion to Stay) and Ex. 7, ECF No. 9811 (Reply in Support of Motion to Stay).

The District Court denied RD Legal's request, asserting that Rule 62(d) does not apply because its Orders "do not create money awards."  (Ex. 8, ECF No. 9812 at 1 n.1.)  Taken together, however, the Orders clearly direct the disbursement of funds without the need for any further order from the District Court, and thus are monetary in nature and subject to Rule 62(d).  *See In re Trans World Airlines, Inc.*, 18 F.3d 208, 213-14 (3d Cir. 1994).  The parties have all treated the Orders as a money judgment—and the Claims Administrator is preparing to distribute funds pursuant to the Orders—and, even in opposing RD Legal's request for stay, did not dispute that Rule 62(d) applies.

A stay under Rule 62(d) is "automatic," *Becker v. United States*, 451 U.S. 1306, 1308 (1981), and the stay should have been granted without the requirement of a supersedeas bond.  A stay poses no risk that the funds at issue will be unavailable to distribute to the Players in the event the Orders are affirmed.  The Claims Administrator is holding all of the disputed funds, and those funds are more than sufficient to compensate the Players for any amount that they could possibly be entitled to, regardless of the outcome of the appeal.  Because a stay would preserve the status quo while the Court determines whether the Orders were correctly decided, and there is no risk that the Players will not be fully compensated at the conclusion of the appeal, a stay should be granted without the posting of a supersedeas bond.

4

The District Court maintains that its Orders are not subject to Rule 62(d) because they did not decide the validity of the Assignment Agreements, but merely "provide direction to the Claims Administrator in addressing agreements that it determines to be assignments or attempted assignments." (Ex. 8, ECF No. 9812 at 1 n.1.) This *post hoc* explanation—which ignores that the December 8 Order already invalidated that Assignment Agreements—only confirms that the District Court has strayed far from what is permissible under the law by purporting to establish an extrajudicial process that empowers the Claims Administrator, under the apparent guidance of Special Masters, to adjudicate the validity of the Assignment Agreements and hundreds of other contracts without providing notice, an opportunity to be heard, or any of the other procedural safeguards that are required before depriving RD Legal and other third-party funders of their contractual interest in significant amounts of money. A stay is thus warranted to maintain the status quo and reign in a process that the District Court has hastily implemented and threatens to dissipate the funds in dispute.

## II.  BACKGROUND

### A.  *The CFPB Action and the Referral Order*

The District Court approved a Class Action Settlement Agreement in the underlying MDL action on May 8, 2015 ("Settlement Agreement"). Between December 2015 and November 2016, FINCO entered into Assignment Agreements

with seven former NFL players, whereby FINCO paid the Players more than $1.6 million in exchange for portions of their anticipated settlement proceeds.  The table below sets forth for each Player the (i) purchase price paid by FINCO; (ii) amount purchased by FINCO that is in dispute on appeal; (iii) total anticipated award; and (iv) unassigned amount that is not in dispute and which the Players will receive regardless of the outcome of the appeal:

| Player | Initial Payment by FINCO to Player | Amounts Assigned to FINCO (Disputed Amount) | Total Anticipated Awards | **Unassigned Amount (Undisputed Amount)** |
|--------|-----------|-----------|-----------|-----------|
| No. 1 | $202,460.31 | $425,166.00 | $1,500,000 | **$ 1,074,834.00** |
| No. 2 | $343,120.53 | $665,234.45 | $2,470,000 | **$ 1,804,765.55** |
| No. 3 | $249,574.46 | $510,000.00 | $1,500,000 | **$    990,000.00** |
| No. 4 | $249,574.46 | $510,000.00 | $1,500,000 | **$    990,000.00** |
| No. 5 | $242,857.14 | $510,000.00 | $1,500,000 | **$    990,000.00** |
| No. 6 | $242,857.14 | $510,000.00 | $1,500,000 | **$    990,000.00** |
| No. 7 | $100,000.00 | $300,000.00 | $1,500,000 | **$ 1,200,000.00** |

(ECF Nos. 8310-9 and 8310-10.)  The settlement proceeds for all Players are still being held by the Claims Administrator and have not been distributed.

On February 7, 2017, the Consumer Financial Protection Bureau and New York Attorney General (collectively, the "CFPB") filed the CFPB Action against RD Legal in the Southern District of New York.  In that enforcement action—which is pending before the Honorable Loretta A. Preska and is not part of the underlying MDL—the CFPB alleges that RD Legal misled the Players by entering

into the Assignment Agreements even though settlement proceeds allegedly are not assignable under an anti-assignment clause in the Settlement Agreement.

On May 15, 2017, RD Legal filed a Motion to Dismiss the CFPB Action pursuant to Rule 12(b)(6), arguing, among other things, that the anti-assignment clause does not prohibit the Assignment Agreements and that, even if it did, the existence of that clause would not transform the transactions into extensions of credit, which is necessary to invoke federal subject matter jurisdiction.

On July 25, 2017, Co-Lead Class Counsel in the underlying MDL action submitted a letter in the CFPB Action requesting leave to file an amicus brief to address the interpretation of the Settlement Agreement or, in the alternative, that the court refer to the Eastern District of Pennsylvania the question of whether the Settlement Agreement prohibits the Assignment Agreements.

On September 8, 2017, Judge Preska, after "consult[ing] with Judge Brody," granted Co-Lead Class Counsel's alternative request over RD Legal's objection, and referred to the District Court "the question of whether the NFL Concussion Litigation settlement agreement forbids assignments of settlement benefits" (the "Referral Order").  (Ex. 1, CFPB Action, ECF 59 at 4.)  RD Legal, Co-Lead Class Counsel, and the CFPB filed briefs addressing the procedural propriety and the merits of the question in the Referral Order.

### B.     The District Court's December 8 Order

On December 8, 2017, the District Court issued an "Explanation and Order" with respect to the Referral Order and held that, "under the Settlement Agreement, Class Members are prohibited from assigning or attempting to assign any monetary claims," and that "any such purported assignment is void, invalid and of no force and effect."  (Ex. 2, ECF No. 9517 at 4.)  The December 8 Order instructed the Claims Administrator "to inquire of every Class Member" and obtain a "verified response" "as to whether that Class Member has made an assignment or attempt to assign."  (*Id.* at 5.)  The Order further states that "if the Third-Party Funder is willing to accept rescission and execute a valid waiver relinquishing any claims or rights under the entire agreement creating the assignment or attempted assignment, then the Claims Administrator will be authorized to withhold—from the Class Member's monetary award—the amount already paid to the Class Member under the agreement and return it to the Third-Party Funder."  (*Id.*)  The Order states that "[f]urther instructions to the Claims Administrator will follow."  (*Id.*)  On January 4, 2018, RD Legal filed a timely Notice of Appeal.  (ECF No. 9559.)

### C.     The District Court's February 20 Order

On February 20, 2018, the District Court issued an order directing "that the Claims Administrator *pay directly* to the Settlement Class Member any and all Monetary Awards in cases where there has been found an improper assignment"

under the Settlement Agreement.  (Ex. 3, ECF No. 9749 (emphasis added).)  The

Court issued the February 20 Order *sua sponte* and without any notice to the

parties or an opportunity to be heard.  Under the Orders, should a funding company

not agree to waive its claims and foreclose pursuit of its rights under the

assignment agreements, the Claims Administrator has been ordered to pay all

funds subject to those agreements directly to the Players.  No further District Court

action is contemplated.  On March 5, 2018, RD Legal filed a timely Notice of

Appeal of the February 20 Order.  (ECF No. 9755.)  On March 9, 2018, this Court

consolidated the appeals of the Orders.  (Case No. 18-1482.)

> ### D.     *The Special Masters' Rules Governing Assignment of Claims*

The Special Masters appointed by the District Court in July 2016 (ECF No.

6871), have published "Rules Governing Assignment of Claims" (the "Assignment

Rules").  https://www.nflconcussionsettlement.com/SettlementPgmRules.aspx.

The Assignment Rules purport to effectuate the December 8 Order by

implementing a procedure for the Special Masters to determine whether a

"transaction is an assignment of rights or claims prohibited by Section 30.1 of the

Settlement Agreement and the Court's [December 8 Order]."  *Id.* at 1.  In the event

a transaction is determined to be an assignment, and thus prohibited under the

December 8 Order, the Assignment Rules provide a mechanism to (a) pay the

settlement proceeds directly to the NFL Players (as directed in the February 20

9

Order) or, (b) if a third-party funder waives certain rights, to rescind the assignment and refund the funding advances and pay the remainder to the players. *Id.* at 3.

### E. RD Legal Files a Motion for Stay Pending Appeal

On March 7, 2018, RD Legal filed a motion pursuant to Rule 62(d), requesting that the District Court stay the Orders during the appeal ("Motion for Stay"). (Ex. 4, ECF No. 9761.)

On March 15, 2018, Co-Lead Class Counsel notified the Court that it "do[es] not oppose RD Legal's Motion for a Stay Pending Appeal . . . ." (ECF 9780 at 1.) Co-Lead Class Counsel placed no conditions on this position, other than to state that its "non-opposition is limited to application of the stay to Class Members' purported arrangements with RD Legal only." (*Id.*)

Upon receiving notice of Co-Lead Class Counsel's position, counsel for RD Legal asked if it would stipulate to a stay as to RD Legal. In response, Co-Lead Class Counsel changed its position and conditioned a stipulation upon receiving a "material benefit" to the sellers (Ex. 6, ECF No. 9793 at 2) in the form of RD Legal's agreement to waive certain rights under the Assignment Agreements. Because RD Legal would not agree to the waiver, Co-Lead Class Counsel opposed RD Legal's request for a stay despite its prior representation to the District Court.

Co-Lead Class Counsel, however, did not dispute the applicability of Rule 62(d).
(*See id.*; Ex. 7, ECF No. 9811 at Ex. 1.)

### F.   Stewart Sends RD Legal a Waiver of Rights Form with an April 12 Deadline

Pursuant to an Assignment Agreement, dated January 26, 2016, RD Legal
paid Andrew Stewart—one of the seven Players—a lump sum payment of
$343,120.53; in exchange Stewart assigned to RD Legal $665,234.45 of his
anticipated total award of $2,470,000.  (ECF No. 8301-9 at 22-44.)  The
unassigned portion of Stewart's anticipated Settlement Award—the amount to
which Stewart is entitled regardless of the outcome on appeal—is $1,804,765.55.
Thus, no matter how or when the appeal is decided, Stewart stands to receive at
least $2,147,886.08 ($1,804,765.55 + $343,120.53).[2]

On March 13, 2018, RD Legal received from counsel for Stewart a
document entitled "Waiver Relinquishing Rights Under Attempted Assignment"
("Waiver") pursuant to "instructions from the Claims Administrator."  (Ex. 7, ECF
No. 9811 at Ex. 2.)  The transmittal letter states that "the Court ruled in its Order
dated December 8, 2017" that RD Legal's agreement with Stewart "is void and
invalid" and that RD Legal may accept a rescission of its agreement, subject to the
terms of the Waiver, and that the deadline for returning a completed Waiver is

---

[2]  In the event Stewart's assignment agreement is upheld, he will also be entitled to
an additional lump sum payment from RD Legal in an amount set by contract
based on the date of RD Legal's receipt of payment.

April 12, 2018.  (*Id.*)  If a stay is not issued prior to that date, RD Legal will be

required either to (a) execute the Waiver and relinquish its rights under the

Assignment Agreement, or (b) decline to execute the Waiver and risk never

recouping the amounts to which RD Legal is entitled, regardless of whether it

prevails on appeal.

### G.   *The District Court Denies RD Legal's Motion for Stay*

On March 26, 2018, the District Court issued a one-page order denying the

Motion for Stay, including RD Legal's alternative request for a temporary stay

pending this application.  (Ex. 8, ECF No. 9812.)  Without citation to any legal

authority, the District Court stated in a footnote that Rule 62(d) "is inapplicable

here because the Orders appealed by RD Legal do not create money awards . . . .

No judgment as to whether RD Legal is or is not ultimately entitled to money has

been made by the Court."  (*Id.*)

## III.   THE COURT SHOULD STAY THE DISTRICT COURT'S ORDERS WITHOUT REQUIRING THE POSTING OF A BOND

RD Legal is entitled to a stay of a money judgment "as a matter of right" so

long as it either (a) posts a supersedeas bond, or (b) establishes that a bond is not

required to preserve the status quo.  11 Wright & Miller, Fed. Prac. & Proc. Civ.

§ 2905 (3d ed. Apr. 2017); *see also Am. Mfrs. Mut. Ins. Co. v. Am. Broad.-*

*Paramount Theatres, Inc.*, 87 S. Ct. 1, 3 (1966) ("[A] party taking an appeal from

the District Court is entitled to a stay of a money judgment as a matter of right.");

*Cottillion v. United Ref. Co.*, No. 09-civ-140E, 2014 WL 7344005, at *2 (W.D. Pa.

Dec. 23, 2014) ("[T]he party posting the bond is entitled to a stay as of right; the

court has no discretion to deny the stay itself, but only to fix the amount of (or to

waive) the bond." (quoting *Frommert v. Conkright*, 639 F.Supp.2d 305, 308

(W.D.N.Y. 2009))); *Supinski v. United Parcel Serv., Inc.*, No. 3:06-CV-00793,

2012 WL 2905458, at *6 (M.D. Pa. July 16, 2012) ("The stay provisions of Rule

62(d) are 'automatic.'").

Taken together, the Orders hold that the Assignment Agreements are invalid

and direct the disbursement of funds, and thus are the equivalent of a money

judgment.  In addition, no bond is required to preserve the status quo because there

is no risk that the disputed funds—which are being held by the Claims

Administrator, not RD Legal—will be unavailable to the seven Players following

the outcome of the appeal.

    **A.**    ***The Orders Are the Equivalent of a Money Judgment***

The Orders are monetary in nature and thus subject to the automatic stay

provisions in Rule 62(d).  *See, e.g.*, *Hebert v. Exxon Corp.*, 953 F.2d 936, 938 (5th

Cir. 1992) (explaining application of Rule 62(d) turns on "whether the judgment

involved is monetary or nonmonetary").

> We find no support for the proposition that a judgment
> for money is not entitled to an automatic stay pursuant to
> Rule 62(d) simply because it takes the form of a
> declaratory judgment. . . . *The applicability of Rule 62(d)*

> *turns not on that distinction, but on whether the judgment*
> *involved is monetary or nonmonetary . . . .*

*Id.* (emphasis added).

In *In re Trans World Airlines, Inc.*, 18 F.3d 208 (3d Cir. 1994), this Court

considered the applicability of Rule 62(d) to a declaratory judgment ordering the

immediate disbursement to Trans World Airlines of $8.36 million deposited in the

bankruptcy court's registry account. *Id.* at 213. Relying on *Hebert* and its

progeny, this Court concluded that the disbursement order was a money judgment

for purposes of Rule 62(d). *Id.* at 213-14 ("[The] court's judgment is best

understood as money judgment for stay purposes when it resolves ultimate issue in

dispute of who . . . should recover a sum certain of money.") (citing *In re Miranne*,

94 B.R. 413, 415 (E.D. La.), *aff'd*, 861 F.2d 1278 (5th Cir. 1988)).

Similarly, here, there can be no doubt that the combined effect of the Orders

is the equivalent of a money judgment ordering the immediate disbursement of

funds: (1) the December 8 Order finds RD Legal's contracts void and

unenforceable, and (2) the February 20 Order directs the Claims Administrator to

disburse the settlement proceeds directly to a Settlement Class Member "where

there has been found an improper assignment." (Exs. 2, 3, ECF Nos. 9517, 9749.)

In denying RD Legal's Motion for Stay, the District Court stated that its

Orders "do not create money awards," and that "[n]o judgment as to whether RD

Legal is or is not ultimately entitled to money has been made by the Court." (Ex.

14

8, ECF No. 9812.)  In its Orders, however, the District Court recognized that RD
Legal claimed under its agreements "to have purchased assignments of Class
Member's monetary claims" (Ex. 2, ECF No. 9517 at 2 n.3) and held that any
"agreement that assigned or attempted to assign any monetary claims," *i.e.*, RD
Legal's Assignment Agreements, "is void, invalid and of no force and effect."  (*Id.*
at 5.)  The Order clearly purports to adjudicate the enforceability of RD Legal's
agreements, which is how Co-Lead Class Counsel,[3] Stewart,[4] and the Claims
Administrator[5] have interpreted the Order.  Although Co-Lead Class Counsel and
Stewart opposed RD Legal's Motion to Stay, neither of them disputed that the
Orders are subject to Rule 62(d).  (Exs. 5, 6, ECF Nos. 9790, 9793.)

    The Orders do not contemplate any further order or action by the District
Court prior to disbursement of the settlement proceeds; the Orders are essentially
self-executing.  Taken together, the Orders are a judgment directing the
disbursement of the specific funds in dispute, and are thus a money judgment

---

[3] ECF No. 9780 (describing the December 8 Order as "determining that purported assignments were void, invalid and without force and effect").

[4] Ex. 7, ECF No. 9811 at Ex. 2 ("As you know, the Court ruled in its Order dated December 8, 2017 that this agreement [between RD Legal and Stewart] is void and invalid.").

[5] Ex. 5, ECF No. 9790 at 3 ("The Court voided these agreements in its December 8 Order and the Claims Administrator has confirmed that Mr. Stewart's agreement with RD Legal constituted a Prohibited Assignment.").

subject to the automatic stay provisions of Rule 62(d).  *In re Trans World Airlines, Inc.*, 18 F.3d at 213-14.

> **B.      No Bond Is Required Because the Disputed Funds Are Being Held by the Claims Administrator**

While ordinarily an appellant must post a supersedeas bond to obtain a stay as a matter of right under Rule 62(d), "courts may forego that requirement when there are other means to secure the judgment creditor's interests."  *In re Diet Drugs*, 582 F.3d 524, 552 (3d Cir. 2009) (citations omitted).  "The purpose of requiring the posting of a supersedeas bond is 'to preserve the status quo during the pendency of an appeal,'" *HCB Contractors v. Rouse & Assocs.*, 168 F.R.D. 508, 511-12 (E.D. Pa. 1995) (quoting *Schreiber v. Kellogg*, 839 F. Supp. 1157, 1159 (E.D. Pa. 1993)), and if the status quo can be maintained without posting a bond, it should not be required.  *See also, e.g.*, *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760 (D.C. Cir. 1980) (explaining court has discretion to forego bond requirement where bond is unnecessary "to secure the appellee from loss" during the appeal).  Accordingly, in *Munoz v. City of Philadelphia*, 537 F. Supp. 2d 749 (E.D. Pa. 2008), the court stayed execution on a judgment against the City of Philadelphia and the Philadelphia Redevelopment Authority without the filing of a supersedeas bond because "there is no basis to think that prompt payment will not take place should the judgment be sustained on appeal." *Id.* at 752.

16

Here, no supersedeas bond should be required because the disputed funds are being held by the Claims Administrator and thus the Players who contracted with RD Legal face absolutely no risk that funds will be unavailable for distribution in the event the Orders are affirmed on appeal. Rather than preserve the status quo by securing the Players' recovery, requiring a bond would *upset* it by forcing RD Legal to post a bond for funds already being held by a neutral third party and which under no circumstance would RD Legal be responsible for paying directly.

Stewart argued to the District Court that RD Legal should be required to post a bond for the interest he could earn on the $665,234.45 in disputed funds being held by the Claims Administrator. (Ex. 5, ECF No. 9790 at 5-6.) But Stewart made no argument to explain any entitlement, at all, to receive interest on those funds. In addition, Stewart ignored that RD Legal *already paid* Stewart $343,120.53 (which RD Legal would be entitled to under principles of rescission), and makes no attempt to explain how hypothetical interest on the $665,234.45 in disputed funds could exceed the $343,120.53 payment. In other words, Stewart wants to keep his $343,120.53 payment from RD Legal, receive the $1,804,765.55 in unassigned funds, receive the $665,234.45 in assigned funds, and have RD Legal bond theoretical interest on the $665,234.45 in disputed funds. He wants to

parlay his $2,470,000 award into a return of $2,813,120.53, plus interest. That is a

windfall that RD Legal should not be required to bond.

## IV. EVEN IF THE ORDERS WERE NOT THE EQUIVALENT OF A MONEY JUDGMENT, A STAY WOULD STILL BE WARRANTED

Even if the lower court's Orders do not constitute a final judgment for

money, a stay would still be warranted under the four-factor test that applies to

requests for stays of non-money judgments.[6]

**Likelihood of Success.** While the Orders are flawed in numerous respects,[7]

the Orders should be vacated—and thus RD Legal is likely to succeed on appeal—

for the threshold reason that the District Court lacked jurisdiction to even issue the

Orders. As to the December 8 Order, there is no legal authority that permits a

district court in one jurisdiction to refer to a second district court in another

jurisdiction the adjudication of a single issue from a motion pending before the

first district court. In *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 79 F.3d 46,

47-48 (7th Cir. 1996), the primary authority cited in the Referral Order, the court

---

[6] The four factors are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991). Co-Lead Class Counsel and Stewart maintained that these factors must be satisfied under Rule 62, but they incorrectly relied upon the standard for a stay under Rule *62(c)*, not 62(d). (*See* Exs. 5, 6, ECF Nos. 9790, 9793.)

[7] RD Legal will address on appeal the errors reflected in the Orders.

merely held that it was permissible for a district presiding over the multi-district litigation to decide motions for protective orders filed by third parties in another district court regarding discovery sought in the MDL—not to refer a single issue for adjudication, and certainly not a single issue in a motion pending in a case that is not part of the MDL.

The unprecedented Referral Order alone is enough to warrant a stay.  The District Court did not have a case or controversy pending before it to warrant its adjudication of the Assignment Agreements, did not have subject matter jurisdiction over any dispute involving RD Legal, and did not have personal jurisdiction over RD Legal (which conducts no business in Pennsylvania whatsoever).  The District Court certainly did not have authority to create an extrajudicial procedure by giving the Claims Administrator the authority to adjudicate the enforceability of the Assignment Agreements.

The District Court also lacked jurisdiction to issue the February 20 Order. Following the appeal of the December 8 Order, the Court was divested of jurisdiction over "those aspects of the case involved in the appeal," *Griggs*, 459 U.S. at 58, *i.e.*, the effect of the Settlement Agreement on the Assignment Agreements and any corresponding determination regarding the distribution of funds that are subject to the Assignment Agreements.  The Court thus lacked

jurisdiction to issue the February 20 Order directing the disbursement of the funds at issue in this appeal.

**Irreparable Injury.**  The District Court now states that its Orders do not adjudicate the enforceability of the Assignment Agreements, but rather "interpret the Settlement Agreement to provide direction to the Claims Administrator in addressing agreements that it determines to be assignments or attempted assignments."[8]  (Ex. 8, ECF No. 9812.)  The District Court purports to establish an extrajudicial procedure whereby the Claims Administrator adjudicates not only the validity of RD Legal's Assignment Agreements, but, according to Co-Lead Class Counsel, more than "nine hundred (and possibly over 1,000)" such contracts (ECF No. 8470-1 at 4) without providing any notice or opportunity to be heard to RD Legal or other third-party funders, and no remedy in the event of an adverse determination.  This novel procedure—which operates outside of the judicial process—violates the procedural due process rights guaranteed by the Fifth Amendment and thus constitutes irreparable harm.  *See Council of Alt. Political Parties v. Hooks*, 121 F.3d 876, 883 (3d Cir. 1997) (explaining that irreparable harm "clearly follows" from showing of constitutional deprivation); 11A Charles

---

[8]  This rationale is belied by the fact that RD Legal's Assignment Agreements were the catalyst for the Referral Order, and when the December 8 Order invalidated the Assignment Agreements, the District Court was not merely interpreting a settlement agreement, but was applying that interpretation to RD Legal's contracts and invalidating them.

Alan Wright, et al., Federal Practice and Procedure § 2948.1 (3d ed. updated Apr. 2016) ("When an alleged deprivation of a constitutional right is involved, . . . most courts hold that no further showing of irreparable injury is necessary.").

**Fairness and Public Interest.** Finally, the balance of equities and the public interest weigh in favor of a stay. Indeed, fairness and the public interest favor a clarification on the scope of a District Court's authority to adjudicate issues not properly before it and create new extrajudicial procedures to resolve those issues. Moreover, a stay would place only minimal hardship on the Players: the Claims Administrator would still be permitted to distribute to the Players the undisputed amounts—which range from $990,000 to $1.8 million—and there is no risk that the disputed funds will be unavailable for immediate distribution to the Players in the event they prevail on appeal. And to the extent the public interest is implicated at all, it weighs in favor of a stay: "the public interest clearly favors the protection of constitutional rights." *Hooks*, 121 F.3d at 883-84.

\*   \*   \*

As explained above, the December 8 and February 20 Orders combine to work as a money judgment entitling RD Legal to an automatic stay as a matter of right. Even if the Orders do not act as a money judgment—and instead authorize an extrajudicial process for the adjudication of millions of dollars of contract rights—a stay is warranted to ensure that the Fifth Amendment due process rights

21

Case 2:16-md-02738-AB   Document 9132-5   Filed 07/18/18   Page 27 of 29

of non-parties are not being infringed by the unprecedented procedure created by the District Court.

## V.      CONCLUSION

For the reasons above, RD Legal respectfully requests that the Court stay the District Court's December 8 and February 20 Orders during the pendency of the appeal.


DATED:  March 28, 2018          Respectfully submitted,

BOIES SCHILLER FLEXNER LLP


By ___/s/ Michael D. Roth_____
   MICHAEL D. ROTH
Attorneys for Appellants RD Legal Funding
Partners, LP, RD Legal Finance, LLC, RD
Legal Funding, LLC, and Roni Dersovitz

Case 2:12-md-02323-AB   Document 10132-5   Filed 07/18/18   Page 28 of 29

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel certifies that this brief uses a proportionally spaced Times New Roman typeface, 14-point, and that the text of the brief contains 5,197 words according to the word count provided by Microsoft Word, as required by Federal Rule of Appellate Procedure 27.


DATED:  March 28, 2018          BOIES SCHILLER FLEXNER LLP



By  _____/s/ Michael D. Roth_____
          MICHAEL D. ROTH
     Attorneys for Appellants RD Legal Funding
     Partners, LP, RD Legal Finance, LLC, RD
     Legal Funding, LLC, and Roni Dersovitz

Case 2:12-md-02323-AB   Document 10132-5   Filed 07/18/18   Page 29 of 29

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing Emergency

Motion of Appellants RD Legal Funding Partners, LP, RD Legal Finance, LLC,

RD Legal Funding, LLC, and Roni Dersovitz for Stay Pending Appeal was served

electronically via the Court's electronic filing system on the date below upon all

counsel of record in this matter.

Dated:  March 29, 2018                          Respectfully submitted,


                                                s/Michael D. Roth

BROTMAN LAW                                     BOIES SCHILLER FLEXNER LLP
ELLEN C. BROTMAN, ESQ.                          DAVID K. WILLINGHAM
  *ebrotman@ellenbrotmanlaw.com*                MICHAEL D. ROTH
One South Broad Street, Suite 1500              JEFFREY M. HAMMER
Philadelphia, PA 19107                          725 South Figueroa Street, 31st Floor
Telephone: (215) 609 3247                       Los Angeles, California 90017-5524
                                                Telephone: (213) 629-9040
                                                Facsimile: (213) 629-9022

                                                Attorneys for RD LEGAL
                                                FUNDING, LLC; RD LEGAL
                                                FINANCE, LLC; RD LEGAL
                                                FUNDINGPARTNERS, LP; and
                                                RONI DERSOVITZ