**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE:  NATIONAL FOOTBALL LEAGUE<br>PLAYERS' CONCUSSION INJURY LITIGATION | NO. 2:18-md-02323-AB<br><br>MDL NO.2323 |
| Kevin Turner and Shawn Wooden, on behalf<br>Of themselves and others similarly situated,<br><br>Plaintiffs,<br>V<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL<br>Properties, Inc.,<br>Defendants | No. 2:12-md-02323-AB<br><br>MDL NO. 2323 |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | Hon. Anita B. Brody |

**MEMORANDUM IN SUPPORT
OF MOTION TO STRIKE OBJECTION OF THE NFL TO
POST-APPEAL MONETARY AWARD DETERMINATION**

## Introduction

Class Counsel, The Locks Law Firm, respectfully submits this Memorandum in support of its Motion to Strike the bad faith Objection[1] of the NFL to Special Master Wendell Pritchett's decision to uphold the Monetary Award granted to the Class Member by the Claims Administrator and the AAP.

---

[1] The NFL committed to this Court and the Class to execute and implement the Settlement Agreement in good faith.  Here, however, the NFL seeks to appeal an un-appealable factual finding by Special Master Wendell Pritchett by re-characterizing it as legal issue.  For that reason, The Locks Law Firm respectfully requests that the Court strike the Objection as a bad faith attempt to delay, obstruct, and obfuscate a valid and legitimate claim the Claims Administrator, the AAP, and the Special Master have approved for payment.

The NFL has violated the Settlement Agreement and Rule 32 of the Rules Governing Appeals by appealing an un-appealable finding of fact by Special Master Pritchett. In bad faith, the NFL is seeking to create a new layer of obstruction after the AAP and Special Master Pritchett have approved a valid and legitimate claim. For those reasons, the Locks Law Firm respectfully requests that the Court grant the Motion and strike the Objection as improper.

### Discussion

On July 10, 2018, counsel for the NFL sent to Claims Administrator BrownGreer its Objection ("the NFL Objection"), attached hereto (in redacted form) as Exhibit 1, and stated:

> Pursuant to Rule 32 of the Rules governing appeals of claim determinations, the NFL Parties attach an objection to the Special Master's decision concerning the monetary award claim determination for [name redacted].

Rule 32 of the Rules Governing Appeals of Claim Determinations, however, does not allow the NFL Objection. It is titled Objections to a Conclusion of Law and a Decision by the Special Master. Subsection A of Rule 32 states as follows:

> A party to the appeal wishing to object to a **conclusion of law** by a special master will present such objection in an objection to special master decision of up to ten pages submitted to the Claims Administrator on a portal or in hard copy within 20 days after the date of notice of the Special Master's decision under Rule 29 setting forth the arguments in support of the objection. (Emphasis added.)

Rule 32 is attached as Exhibit 2. A plain reading shows that the NFL may file an objection to a conclusion of law by Special Master Pritchett, but not to a finding of fact. Special Master Pritchett made clear in his Post-Appeal Notice of Monetary Award Claim Determination for the Class Member, dated June 20, 2018 and attached hereto (in redacted

form) as Exhibit 3, that "The Special Master's decision is a <u>factual determination</u> and is final and binding." (Emphasis added). As such, the NFL has no right to object, but has done so anyway. For that reason alone, the Locks Law Firm respectfully requests that the Court strike the Objection.

The NFL Objection is consistent with the NFL's pattern of bad faith attempts to deny and delay the payment of legitimate claims. The claim in this case was filed on June 27, 2017, more than one year ago. Not until March 13, 2018 did the AAP affirm the Qualifying Diagnosis and BrownGreer issue a Notice of Monetary Award, attached as Exhibit 4. The NFL appealed the Award on April 12, 2018 and lost via the Post-Appeal Notice of Monetary Award Determination on June 20, 2018. *See* Exhibit 3. The very day that the Class Member was to be placed in the approval list for issuance of a settlement check (July 10), the NFL sent the NFL Objection to BrownGreer.

The immediate result is that the Class Member, who has a serious, debilitating brain disease the Claims Administrator, the AAP, and Special Master Pritchett have approved as a Qualifying Diagnosis, will not be paid for an undetermined time, because the NFL seeks to further litigate the claim. This is a violation of the NFL's good faith obligations under the Settlement Agreement and the plain language of Rule 32. Should the NFL be permitted to proceed with this improper Objection, it will succeed in placing yet another roadblock in the path of BrownGreer's and Special Master Pritchett's ability to pay valid and approved claims.

## Conclusion

The Locks Law respectfully requests that the Court Strike the NFL Objection and enter the Proposed Order that orders BrownGreer to pay the Class Member within the month of July, which is when he would be paid absent the improper NFL Objection.

Dated: July 17, 2018                          Respectfully submitted,

/s/ Gene Locks
Gene Locks, Esq.
David D. Langfitt, Esq.
LOCKS LAW FIRM
The Curtis Center
Suite 720 East
601 Walnut Street
Philadelphia, PA 19106
Phone: 215-893-3423
Fax: (215) 893-3444
glocks@lockslaw.com
dlangfitt@lockslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of July, 2018, I caused the foregoing Motion to Strike, to be served via the Electronic Case Filing (ECF) system in the United States District Court for the Eastern District of Pennsylvania, on all parties registered for CM/ECF in the above-captioned matter.


/s/ Gene Locks
Gene Locks, Esq.

# Exhibit 1

# L⌐ LOCKS LAW FIRM

**Mike Leh <mleh@lockslaw.com>**

---

## Fwd: NFL Parties' Objection to the Special Master's Decision Concerning the Monetary Award Claim Determination for ▮▮▮▮▮▮▮

1 message

---

**Margaret Langfitt <mlangfitt@lockslaw.com>**                              Thu, Jul 12, 2018 at 10:03 AM
To: Mike Leh <mleh@lockslaw.com>

Begin forwarded message:

> **From:** "Burns, Douglas" <dburns@paulweiss.com>
> **Date:** July 10, 2018 at 4:03:30 PM EDT
> **To:** Orran Brown <OBrown@browngreer.com>, Jennifer Goodwin <jgoodwin@browngreer.com>
> **Cc:** "Karp, Brad S" <bkarp@paulweiss.com>, "Birenboim, Bruce" <bbirenboim@paulweiss.com>, "Bayard, Lynn B" <lbayard@paulweiss.com>, "Tarlowe, Richard" <rtarlowe@paulweiss.com>, Scott George <sgeorge@seegerweiss.com>, Michael Rosenberg <MRosenberg@seegerweiss.com>, "dlangfitt@lockslaw.com" <dlangfitt@lockslaw.com>
> **Subject:** NFL Parties' Objection to the Special Master's Decision Concerning the Monetary Award Claim Determination for▮▮▮▮▮▮▮

Orran and Jennifer,

Pursuant to Rule 32 of the Rules Governing Appeals of Claim Determinations, the NFL Parties attach an Objection to the Special Master's Decision Concerning the Monetary Award Claim Determination for ▮▮▮▮ ▮▮▮▮▮

Respectfully submitted,

Counsel for the NFL Parties

**Douglas Burns | Associate**
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
+1 212 373 3403 (Direct Phone) | +1 212 492 0403 (Direct Fax)
dburns@paulweiss.com | www.paulweiss.com

This message is intended only for the use of the Addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately.

---

7/12/2018          Locks Law Firm Mail - Fwd: NFL Parties' Objection to the Special Master's Decision Concerning the Monetary Award Claim Determinatio...

Objection.pdf
51K

### The NFL Parties' Objection to the Special Master's Decision
### Concerning the Monetary Award Claim Determination for █████████

The National Football League and NFL Properties LLC (the "NFL Parties") respectfully submit this Objection to the Special Master's determination that claimant █████████'s Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment, rendered less than three weeks prior to the Effective Date of the Settlement Agreement, was based on evaluation and evidence "generally consistent" with the diagnostic criteria set forth in the Settlement Agreement for diagnoses rendered in the Baseline Assessment Program (the "BAP"). That conclusion—subject to *de novo* review by this Court—was erroneous.

The Special Master incorrectly interpreted the Settlement Agreement's "generally consistent" language to permit precisely the type of disparity it was intended to prevent: treating identically-situated retired NFL players differently depending on whether they were evaluated within or outside of the BAP. Mr. ██████ took the full BAP baseline neuropsychological test battery and failed to meet the Settlement Agreement's objective diagnostic criteria for that test battery to qualify for a Level 1.5 diagnosis under the BAP. Yet, because Mr. ████████'s diagnosis occurred prior to the Settlement's Effective Date, rather than in the context of the BAP, the Special Master concluded that, based on the "generally consistent" provision, Mr. ██████ was nevertheless entitled to a Qualifying Diagnosis. That conclusion was incorrect, and, accordingly, this Court should deny Mr. ████████'s claim.

### INTRODUCTION

There is no factual dispute that Mr. ████████ took the identical tests administered in the BAP (*see* Doc. No. 172101 at 3 (noting that "the testing administered . . . was 100% consistent with the BAP battery")), and that based on the results of those tests and the type

of evidence presented to corroborate his functional impairment, he would not be entitled to a Qualifying Diagnosis in the BAP. Put differently, it is undisputed that any retired player evaluated (for free) under the BAP who took the same test battery, presented the same evidence of functional impairment, and received the same test results as Mr. Fullwood would not receive a Qualifying Diagnosis. Yet, the Special Master's interpretation of the "generally consistent" standard would entitle Mr. ███████ to compensation merely because his diagnosis occurred three weeks prior to the Effective Date instead of in the context of the BAP. The "generally consistent" provision cannot reasonably be interpreted to permit that type of anomaly and, in fact, was specifically intended to avoid it by ensuring that all retired players are placed on equal footing whether evaluated within or outside of the BAP. For this reason, the Special Master's interpretation of a material term of the Settlement Agreement was in error and contrary to this Court's intent in approving the BAP diagnostic criteria as fair, reasonable and adequate over the objections of Settlement Class Members.

For these reasons, and those set forth below, the NFL Parties respectfully request that the Court reverse the Special Master's ruling and deny Mr. ██████'s claim.

## BACKGROUND

### A.    The Settlement Agreement's Definition of Level 1.5 Impairment

The Settlement Agreement's heavily-negotiated definition for a diagnosis of Level 1.5 Neurocognitive Impairment (*i.e.*, early dementia) in the BAP requires, among other things, evidence of moderate to severe cognitive decline in accordance with standardized neuropsychological testing protocols set forth in the Settlement Agreement. (*See* Settlement Agreement, Ex. A-1 at 2.) On that neuropsychological testing, a retired player in the BAP must meet specific, objective impairment criteria in the form of specified test

2

scores, based on his premorbid intellectual functioning, in at least two of five cognitive domains. (*Id.*) When a retired player does not corroborate his reported functional impairment with documentary evidence such as medical records or employment records, one of those two domains must be either the Executive Function or Learning and Memory domain. The Settlement Agreement permits players diagnosed outside of the BAP to receive a Level 1.5 diagnosis only if it is "based on evaluation and evidence generally consistent with the diagnostic criteria" for the BAP. (*Id.*)

**B.    The Level 1.5 Diagnosis of** ███████████

███████████'s claim package included a neurological report by neurosurgeon Dr. ███████, who evaluated Mr. ███████ on December 20, 2016, less than three weeks prior to the Effective Date of the Settlement Agreement. Dr. ███████ expressly relied on a December 14, 2016 neuropsychological report by Dr. ███████

Dr. ███████ conducted a clinical neurological evaluation during which he documented Mr. ███████'s self-reported cognitive and functional abilities, consulted Dr. ███'s neuropsychological evaluation report, and reviewed three third-party affidavits authored by Mr. ███████'s friend, step-daughter, and wife. (*See* Doc. No. 91029 at 9-10, 27-37.) There is no indication that Dr. ███████ reviewed any documentary evidence not generated for litigation or claim purposes—such as medical or employment records— regarding Mr. ███████'s functional impairment. As such, the BAP diagnostic criteria would require not only that Mr. ███████'s neuropsychological testing establish the requisite level of impairment in two domains, but that one of those domains be either the Executive Function or Learning and Memory domain. However, Dr. ███'s neuropsychological evaluation—which included the Settlement Program's BAP battery of

tests—showed that Mr. ██████ had no impairment in either of those domains. (Doc. No. 91029 at 17.)[1]

Nonetheless, Dr. ██████ diagnosed Mr. ██████ with Level 1.5 Neurocognitive Impairment (*see id.* at 9-10), and Mr. ██████ submitted a Claim Package relying on that diagnosis. The NFL Parties appealed the claim award, and the Special Master denied that appeal. The NFL Parties object to that determination because the Special Master's legal interpretation of "generally consistent" improperly permits a Settlement Class Member like Mr. ██████ to receive a Qualifying Diagnosis outside of the BAP even though he was administered the BAP testing battery and indisputably failed to satisfy the BAP impairment criteria for that specific test battery. The Special Master's conclusion reflects a clear misinterpretation of the Settlement Agreement's terms, conflicts with basic principles of fairness and subverts the intent of the "generally consistent" provision.

## ARGUMENT

**I.    The Special Master's Decision Was a Legal Determination on the Interpretation of a Contractual Term**

In order to consider and deny the NFL Parties' appeal of Mr. ██████'s claim determination, the Special Master had to interpret the meaning of the Settlement term "generally consistent" in the context of Mr. ██████'s neuropsychological testing, which was facially insufficient to meet the BAP Settlement criteria for Level 1.5 Neurocognitive Impairment. Despite the assertion in Mr. ██████'s Post-Appeal Notice of Monetary Claim Determination that "[t]he Special Master's decision is a factual determination and is

---

[1]    Dr. ██ otherwise found that Mr. ██████ had no impairment in the Visual-Perceptual domain, met the BAP diagnostic criteria for Level 1.5 impairment in the Complex Attention domain, and met the impairment criteria for Level 2 in the Language domain. (*Id.*)

final and binding," the Special Master's interpretation of "generally consistent" is a conclusion of law that may be reviewed *de novo* by the Court.[2]

The Settlement Agreement is a contract that is subject to the general principles of contract interpretation. *See, e.g., Greco* v. *Dep't of the Army*, 852 F.2d 558, 560 (Fed. Cir. 1988) ("It is axiomatic that a settlement agreement is a contract."). Under those principles, the interpretation of an unambiguous term in a settlement agreement is considered a conclusion of law. *See In re Johns-Manville Corp.*, 759 F.3d 206, 214 (2d Cir. 2014) ("The interpretation of unambiguous settlement-agreement terms is a question of law subject to de novo review."); *see also Langton* v. *Johnston*, 928 F.2d 1206, 1220 (1st Cir. 1991) (holding that "interpretation of a consent decree between private parties . . . is akin to a contractual interpretation, and is thus largely a conclusion of law"). When a Court or other quasi-judicial body (such as a Special Master) interprets a term in a settlement agreement solely "according to its terms and without reliance on extrinsic evidence, its interpretation is a question of law which is subject to plenary review." *White* v. *Nat'l Football League*, 899 F. Supp. 410, 413 (D. Minn. 1995) (reviewing, under New York law,[3] a Special Master's ruling that renegotiated player contracts were not considered "new contracts" under the terms of a settlement agreement and a collective bargaining agreement).

In Mr. ███████'s appeal determination, there is no indication that the Special Master relied on any parol or extrinsic evidence in order to interpret the Settlement Agreement term "generally consistent" in the context of Mr. ███████'s

---

[2]  *See* Rule 32(d) of Rules Governing Appeals of Claim Determinations; Order Appointing Special Masters at 5, July 13, 2016 ("Pursuant to Fed. R. Civ. P. 53(f)(4), the Court will review de novo any objection to the Master(s)' conclusions of law."), ECF No. 6871.

[3]  Under Section 27.1(a), the NFL Concussion Settlement Agreement also is to "be interpreted and enforced in accordance with the laws of New York, without regard to conflict of law principles."

neuropsychological testing.  Instead, the Special Master interpreted the term based solely on his erroneous understanding of the plain meaning of the Settlement Agreement's language.   Thus, the Special Master's interpretation of "generally consistent" is a conclusion of law that is subject to this Court's review. *See White*, 899 F. Supp. at 413 (holding that because "there is no indication that [the Special Master] relied upon parole or extrinsic evidence in interpreting the CBA" and "the Special Master's decision is based upon the language of the CBA and New York case law," the Special Master made a conclusion of law that the court reviewed *de novo*).

Moreover, whether or not the Special Master's conclusion is reviewable under Rule 32(d) of the Rules Governing Appeals, this Court expressly retained "continuing and exclusive jurisdiction to interpret, implement, administer and enforce the Settlement Agreement" in accordance with its terms.  (Am. Final Order and J. § 17, ECF No. 6534; *see also* Settlement Agreement § 20.1(n).)  As such, this Court has the authority to consider and determine the proper interpretation of a material term of the Settlement Agreement.

## II.    The Special Master's Application of "Generally Consistent" Violates the Language and Intent of the Settlement as well as Basic Principles of Fairness

Settlement Class Members who exhibit the *same* results based on the *same* testing regime and present the *same* type of corroboration of functional impairment should not be treated differently.  The Special Master's interpretation of the "generally consistent" clause for diagnoses of Level 1.5 Neurocognitive Impairment would mean, however, that a retired player who is evaluated pursuant to the same test battery required for the BAP may obtain a Qualifying Diagnosis outside of the BAP even when he would not receive a Qualifying Diagnosis if he underwent the same testing and provided the same corroboration for his functional impairment in the BAP.  This erroneous interpretation of what "generally

6

consistent" was intended to mean under the contractual terms of the Settlement Agreement would impermissibly dilute the criteria for Qualifying Diagnoses and permit recovery before progression to the level of impairment approved for compensation—a complete change to the Agreement.

As this Court is aware, the Parties consulted with leading medical experts to negotiate the Level 1.5 and 2 Injury Definitions, including the diagnostic criteria. These definitions and criteria were central issues in the Court's approval of the Settlement Agreement. In fact, Co-Lead Class Counsel responded to objectors by arguing that the impairment cutoffs were "based on well-established methods and reasonable criteria."[4] Co-Lead Class Counsel touted the reliability of the "objective" test results, citing to expert testimony that the criteria are "reasonable and scientifically well-founded" and stating "when the BAP test battery (and related thresholds) for neurocognitive impairments has been applied in testing with retired players, it performs as intended. . . . a patient who will satisfy Level 1.5 Injury Definitions by testing is most likely to be in the early stages of dementia." *Id.* at 86 (internal citations omitted).

In turn, this Court ruled that objectors were "misguided" because "[b]oth the cognitive and functional cutoffs are drawn directly from well-established sources."[5] The Court noted that a player without compensable impairment may progress to Level 1 (*i.e.,* moderate cognitive impairment), which triggers BAP Supplemental Benefits, and then later progress further to dementia (*i.e.,* Level 1.5 or 2), for which Monetary Awards are

---

[4] Mem. of Law in Support of Class Pls.' Mot. for an Order Granting Final Approval of the Settlement and Certification of Class and Subclass 85, ECF No. 6423-1.

[5] *In re Nat'l Football League Players' Concussion Injury Litig.,* 307 F.R.D. 351, 403 (E.D. Pa. 2015), *amended* No. 2:12-MD-02323-AB, 2015 WL 12827803 (May 8, 2015), *and aff'd* 821 F.3d 410 (3d Cir. 2016), *as amended* (May 2, 2016).

available.  (*Id.* at 403-04.)  The Court also concluded that "[n]umerous empirical studies show that these [BAP] tests are effective at identifying impairment, especially in persons who have sustained brain injury" and that "[it] would be very difficult for any significant neurological abnormalities to escape an examination of this breadth." (*Id.* at 412.)

Moreover, the Settlement Agreement's BAP diagnostic criteria were crafted to ensure the reliability of reports of functional impairment.  The Parties agreed that the most reliable corroboration is documentary evidence in the form of medical records, employment records, or other objective reports not generated for litigation or claim purposes.  When a retired player does not provide such documentary evidence, the Parties agreed to establish stricter diagnostic criteria to receive a Qualifying Diagnosis—requiring claimants to meet the requisite levels of neuropsychological impairment in either the Executive Function or Learning and Memory domain and to provide a third-party affidavit corroborating the functional impairment.

The "generally consistent" provision for retired players who receive diagnoses outside of the BAP was intended to place all retired players on equal footing, whether evaluated within or outside of the BAP, and before or after the Effective Date.  The Parties recognized that an evaluating physician may have used different testing methods prior to the Effective Date and that evaluative techniques likely will continue to evolve over the term of the Settlement Agreement; the "generally consistent" provision was thus intended to ensure that players seen outside of the BAP are not prejudiced.

But that provision does not, and cannot, mean that when the administered testing regime is the same as that set forth in the BAP, a physician who evaluated a retired player outside of the BAP can unilaterally change the corresponding, judicially-approved

impairment and diagnostic criteria, permitting a retired player to receive a Qualifying Diagnosis even though that same player would not have received the diagnosis had he taken the exact same testing with the exact same test results and provided the exact same corroborating materials of functional impairment in the BAP. The Special Master's interpretation of "generally consistent" in this context subverts its intended purpose, and prejudices retired players who participate in the free BAP by subjecting them to a more restrictive diagnostic standard on the same set of tests than retired players who pay for their own examinations. Not only is that position contrary to fundamental fairness, but it also harms the integrity of the Settlement Program.

The facts regarding Mr. ███████'s claim highlight the erroneous nature of the legal determination. Dr. ██'s neuropsychological evaluation—on which Dr. ███████ specifically relied—used the BAP test battery. Under the BAP diagnostic criteria, Mr. ███████'s test results failed to meet the Settlement Agreement's threshold T scores for Level 1.5 Neurocognitive Impairment in either the Executive Function or Learning and Memory domains. Yet, that is precisely what the BAP impairment criteria require given that the only corroboration of functional decline was in the form of third-party affidavits from friends and family.[6] Thus, under the BAP criteria, there can be no reasonable dispute

---

[6]   In his opposition to the NFL Parties' appeal, Mr. ███████ argued that he provided corroborating evidence in the form of the third-party affidavits and Dr. ███████'s in-person CDR evaluation and interview of Mr. ███████'s wife. (*See* Doc. No. 172101 at 1-3.) But it is Dr. Dagnew's evaluation that must be corroborated; thus, Dr. ███████'s evaluation cannot satisfy the documentary evidence requirement. The third-party affidavits would be sufficient under the BAP *only if* Mr. ███████ met the requisite level of impairment in either the Executive Function or Learning and Memory domains, which he did not.

Mr. ███████ also confused the standard for corroborating evidence by stating that "even within the BAP, the diagnosing physician has the discretion to use his best judgment as to what is and is not sufficient corroborating evidence of functional decline." (*Id.* at 1-2.) Although diagnosing physicians in the BAP have the discretion to determine the sufficiency of corroborating evidence, they *do not* have the latitude to determine that a third-party affidavit is acceptable when the Settlement Agreement's diagnostic criteria specifically state otherwise.

that Mr. ████ would not have qualified for a Level 1.5 diagnosis. (*See* Settlement Agreement Ex. A-1 at 2.)  Nonetheless, despite the fact that Mr. ████ was administered the BAP test battery and failed to obtain the scores necessary for a Qualifying Diagnosis under the BAP criteria, Dr. ████ diagnosed Mr. ████ with Level 1.5 Neurocognitive Impairment. (*See* Doc. No. 91029 at 9-10.)  Under these circumstances, that diagnosis was not based on evaluation and evidence "generally consistent" with the BAP impairment criteria.

As this Court recognized in the approval process, the Settlement's design is to allow retired players to be examined periodically over its term so that they may receive diagnoses if their cognitive health progressively declines.  By interpreting "generally consistent" to allow physicians outside the BAP to reject the BAP diagnostic criteria when the testing is identical to that of the BAP, the Special Master has permitted recovery in advance of when the Court-approved testing indicates the Settlement Agreement should provide compensation.  Such interpretation is not the benefit of the NFL's bargain.

## CONCLUSION

For the reasons set forth herein, the NFL Parties respectfully request that the Court reverse the Special Master's decision and deny Mr. ████'s claim.

Dated:  July 10, 2018                     Respectfully submitted,

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP

/s/ Brad S. Karp
Brad S. Karp
Bruce Birenboim
Lynn B. Bayard
Douglas M. Burns
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email:  bkarp@paulweiss.com

*ATTORNEYS FOR THE*
*NATIONAL FOOTBALL LEAGUE*
*AND NFL PROPERTIES LLC*

# Exhibit 2





1/18/18

**Rule 31.   Finality of the Special Master's Decision.** The Special Master's decision on an Appeal is final and binding on the Settlement Class Member(s), the Parties to the Appeal and the Claims Administrator and is not subject to appeal or review by the Court, except that pursuant to Fed. R. Civ. P. 53(f)(4) and the Court's July 13, 2016 Order appointing the Special Masters, the Court will review *de novo* (that is, anew) any objection to the Special Master's conclusions of law.  The Special Master will identify in each decision any issue the Special Master determines to be a conclusion of law to which a Party to the Appeal may object and have reviewed by the Court.

**Rule 32.   Objections to a Conclusion of Law in a Decision by the Special Master.**

(a) A Party to the Appeal wishing to object to a conclusion of law by the Special Master will present such objection in an Objection to Special Master Decision of up to 10 pages submitted to the Claims Administrator on a Portal or in hard copy within 20 days after the date of notice of the Special Master's decision under Rule 29, setting forth the arguments in support of the Objection.

(b) The other Parties to the Appeal may respond with up to 10 pages to the Objection to Special Master Decision, submitted to the Claims Administrator on a Portal or in hard copy within 20 days after the date of the Objection, setting out the arguments in response to the Objection.

(c) Exhibits to these submissions are permitted, but no party may refer to or attach any evidence that was not in the Record on Appeal before the Special Master.  When submitting an Objection or response to an Objection, the submitting party must mail or deliver the submission to any Party to the Appeal not using a Portal.

(d) The Court will review *de novo* (that is, anew) an Objection to Special Master Decision and may affirm, modify or reverse the Special Master's decision and order such other and further relief as the Court deems appropriate.  The Claims Administrator will serve the Court's decision on the Parties to the Appeal.  The Court's decision is final and not subject to further review by appeal or otherwise

**Rule 33.   Publishing the Decisions by the Special Master and Court on Appeals.** The Special Master and the Court will designate in a decision on an Appeal whether the decision is to be published or unpublished.  The Claims Administrator will post in an aggregated set de-identified copies of each published decision on the official website of the Settlement Program and on the Portal of each Portal user.  In addition to their preclusive effect under Rule 27, published decisions of the Special Master and the Court will have precedential value in the Settlement Program on the issues and principles determined in the decision, which means they will serve as guidance for the consideration of the same or similar issues and principles in subsequent Appeals.

**Rule 34.   Claim in Audit.** If the Claims Administrator places a Claim in Audit at any time, the processes on Appeal and any time periods in these Rules applicable to the Appeal will be suspended until the conclusion of the Audit.



# Exhibit 3

# NFL CONCUSSION SETTLEMENT
IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION
No. 2:12-md-02323 (E.D. PA)

## POST-APPEAL NOTICE OF MONETARY AWARD CLAIM DETERMINATION
DATE OF NOTICE: June 20, 2018

### I. SETTLEMENT CLASS MEMBER INFORMATION

| Settlement Program ID | ████████ | | |
|---|---|---|---|
| Name | First ████ | M.I. | Last ██████ |
| Settlement Class Member Type | Retired NFL Football Player | | |
| Lawyer | Gene Locks | | |
| Asserted Qualifying Diagnosis | Level 1.5 Neurocognitive Impairment | | |
| Appellant | NFL | | |
| Appellee | Settlement Class Member | | |

### II. EXPLANATION OF CLAIM DETERMINATION

This Notice is an official communication from the Claims Administrator for the NFL Concussion Settlement Program. The Special Master reviewed the appeal and determined the following, which is final and binding:

Appeal denied. Appellant did not show clear and convincing evidence of error in the Claims Administrator's decision. The Special Master's decision is a factual determination and is final and binding.

### III. MONETARY AWARD SUMMARY

| | | |
|---|---|---|
| 1. | **Monetary Award Grid Amount:** This is the starting point for your Monetary Award based on age at time of the Qualifying Diagnosis as explained in Exhibit A-3 of the Settlement Agreement. The full Monetary Award Grid is available in the Documents tab located under the Information menu of the public website. | $586,903.00 |
| 2. | **Deduction for Offsets:** This is a downward adjustment of your Monetary Award for any applicable Offsets as explained in Section 6.7(b)-(e) of the Settlement Agreement. | $117,380.60 |
| 3. | **Monetary Award Amount After Offsets:** This is the amount of your Monetary Award after subtracting any applicable deductions for Offsets. | $469,522.40 |
| 4. | **Deduction for Potential Derivative Claimant Awards:** No Derivative Claimant timely registered with the Settlement Program under Section 4.2(c) of the Settlement Agreement based on a relationship with you. | $0.00 |
| 5. | **Monetary Award Amount After Derivative Claimant Award Deduction:** This is the amount of your Monetary Award after subtracting any applicable deduction for a Potential Derivative Claimant Award. | $469,522.40 |

| 6. | **Five Percent Deduction of Monetary Award for Common Benefit Fees:** Co-Lead Class Counsel filed a motion with the Court on February 13, 2017, asking that 5% of all Monetary Awards be set aside to provide future Common Benefit Fees for attorneys who did work to facilitate the Settlement. The Court has not ruled on that motion.  If the Court denies the motion or authorizes a withholding percentage less than the requested 5% and that ruling becomes final, we will return the appropriate funds to you. | $23,476.12 |
|---|---|---|
| 7. | **Deduction for Finalized Liens:**  This is the amount deducted from your Monetary Award to satisfy any valid Liens with final reimbursement amounts, as explained in Sections 9.1(c)(ii) and 11.3(c)-(h) of the Settlement Agreement. | $3,878.22 |
| 8. | **Deduction of Holdback for Pending Liens:**  This is a holdback amount deducted from your Monetary Award for any Liens with unresolved final amounts, as explained in Section 11.3(g)-(h) of the Settlement Agreement. After the Lien Resolution Administrator has finalized these Lien amounts, this holdback will be used to pay them and any excess will be sent to you. | $0.00 |
| 9. | **Net Payment Amount:**  This is the amount payable to you after all deductions listed above. | $442,168.06 |

### IV. LIENS

As set forth in Article XI of the Settlement Agreement, the Lien Resolution Administrator, with our assistance, is administering the process to verify and satisfy Liens against your Monetary Award. If you or the Lien Resolution Administrator identified a Lien asserted against your Monetary Award or a third party asserted a Lien against your Monetary Award and the Lien Resolution Administrator or we have confirmed the validity and final amount of those Lien (s), we are required to deduct from your Monetary Award the Lien amount shown in Section III, Row 6 of this Notice.

If the final amount needed to resolve a Lien has not yet been determined, Section III, Row 7 of this Notice shows the amount withheld from your Monetary Award as directed by Section 11.3(g)-(h) of the Settlement Agreement. That holdback amount will be used to pay the final Lien amount(s) and any excess will be paid to you.

You will receive a notice of each non-medical Lien, along with the assertion documents, and you will be given the opportunity to dispute each non-medical Lien before we pay it.  In general, you also will have the opportunity to dispute Liens of Governmental Payors, Medicare Part C or Part D Programs, and/or private healthcare Insurers identified pursuant to Article XI of the Settlement Agreement after the Lien Resolution Administrator has determined the final repayment amount needed to satisfy all such Liens that may be associated with your Monetary Award.  After the Lien Resolution Administrator determines the final repayment amount needed to satisfy any Liens by Governmental Payors, Medicare Part C or Part D Programs, and private healthcare insurers who claim a Lien against your Monetary Award, you will receive the Final Report of Lien Resolution Administrator, which will contain instructions on how to dispute the fact or amount of those Liens if you disagree with them.  If, however, you received a Qualifying Diagnosis of Level 1.5 or Level 2 Neurocognitive Impairment and are or were a beneficiary of a Medicare Part A and/or Part B Program, you will not have a right to dispute the fact or amount of any Medicare Part A and/or Part B Liens that may be asserted against your Monetary Award, as the Lien amounts for those Qualifying Diagnoses were established through a global agreement with CMS, and the Settlement Agreement does not grant you the right to dispute them.

**If you are receiving Medicare Part A and/or Part B benefits, do not contact Medicare regarding any potential reimbursement obligations against your Monetary Award.**  The Lien Resolution Administrator is working directly with the Centers for Medicare and Medicaid Services Central Office to resolve Medicare Part A and/or Part B reimbursement obligations in connection with this Settlement and contacting Medicare may result in duplicate recovery efforts.

### V. PAYMENT OF THE MONETARY AWARD

The Trustee will pay the Monetary Award amount as reflected in this Notice after completion of the processes required by Section 9.3(a) of the Settlement Agreement: (1) the expiration of all appeal deadlines or resolution of filed appeals (Sections 9.7 and 9.8) and (2) claim audits and fraud investigations (Section 10.3).  To receive your payment, you must submit to us:

(1) **Payment Election Form.** If a lawyer represents you in this Settlement Program, he or she must choose how to receive the funds on your behalf. The Payment Election Form is available on the Forms section of the Official NFL Concussion Settlement Program website. If you are not represented by a lawyer and you are a Portal user, you can log into your Portal account and fill out the Payment Election Form to select your payment method.

(2) **Form W-9.** If a lawyer represents you in this Settlement Program, he or she must submit a "Form W-9 – Request for Taxpayer Identification Number and Certification." This form is published by the IRS and is used for legal entities receiving payment to provide their Taxpayer Identification Numbers and certify that they are accurate. If you are not represented by a lawyer, you do not need to provide a Form W-9.

(3) **Statement of Attorney Fees and Expenses.** If you are represented by a lawyer, a Statement of Attorney Fees and Expenses signed by your lawyer. The Statement of Attorney Fees and Expenses is required under the Court's Order entered September 7, 2017, which directs all lawyers who represent Class Members to provide the Claims Administrator with a statement of their contingency fees, the amount of their expenses, and a verification that those fees and expenses are reasonable. This form is not required if you do not have a lawyer.

(4) **Sworn Statement: Status of Assignment of Claim (SWS-5).** The SWS-5 is required under the Court's Explanation and Order entered December 8, 2017, which requires the Claims Administrator to ask all eligible Settlement Class Members whether they have assigned or attempted to assign their Monetary Award or Derivative Claimant Award claim. At the Court's instruction, you, and not your lawyer (if you have one), must complete and sign the SWS-5.

See the FAQ on what you need to do to receive payment of an award on the Official NFL Concussion Settlement Program website for more information or to get a copy of these payment forms.

If this Monetary Award payment reflects a deduction for Derivative Claimant Awards or a deduction or holdback in connection with Liens, as listed in Section III, Rows 7 and 8 of this Notice, and if it is determined that you are owed some or all of such deduction and/or holdback, they will be paid to you.

## VI. HOW TO CONTACT US WITH QUESTIONS OR FOR HELP

If you are represented by a lawyer, consult with your lawyer if you have questions or need assistance. If you are unrepresented and have any questions about this Notice or need help, contact us at 1-855-887-3485 or send an email to ClaimsAdministrator@NFLConcussionSettlement.com. If you are a lawyer, call or email your designated Firm Contact for assistance. For more information about the Settlement program, visit the official website at www.NFLConcussionSettlement.com to read the Frequently Asked Questions or download a copy of the complete Settlement Agreement.

## MONETARY AWARD CALCULATION ATTACHMENT

### SETTLEMENT CLASS MEMBER INFORMATION

| Settlement Program ID | ████████ | | |
|---|---|---|---|
| Name | First ████ | M.I. | Last ███████ |
| Settlement Class Member Type | Retired NFL Football Player | | |
| Lawyer | Gene Locks | | |

### A. MONETARY AWARD GRID AMOUNT

| | FACTOR | FINDING |
|---|---|---|
| 1. | **Qualifying Diagnosis:**  Diagnosis supported by Diagnosing Physician Certification Form and medical records. | Level 1.5 Neurocognitive Impairment |
| 2. | **Age at Time of Qualifying Diagnosis:** | 53 |
| 3. | **Monetary Award Grid Amount:**  Calculated based on the full Monetary Award Grid. | $586,903.00 |

### B. OFFSETS

Section 6.7 of the Settlement Agreement requires that a Monetary Award be adjusted downward for any applicable Offsets.  If you are subject to multiple Offsets, they are applied individually and in a serial manner to the Monetary Award.  For example, if the Monetary Award before Offsets is $100,000, and there are two 10% Offsets, the Monetary Award will be reduced by a total of 19% [$100,000 – 10% Offset = $90,000; $90,000 – 10% Offset = $81,000].

| | FACTOR | FINDING | OFFSET % | REVISED MONETARY AWARD GRID AMOUNT |
|---|---|---|---|---|
| | **Number of Eligible Seasons:** An Offset applies if the Settlement Class Member had fewer than five Eligible Seasons. | 4.00 | -20.00% | $469,522.40 |

This Table shows how we calculated your number of Eligible Seasons.  Section 6.7(c) of the Settlement Agreement states that each earned Eligible Season and each earned half of an Eligible Season will be added together to reach the total number of Eligible Seasons except that credit cannot be given for more than one Eligible Season per year (with each year defined to include any spring World League of American Football, NFL Europe League, or NFL Europa League season, and the following fall NFL season).

| 1. | | LEAGUE | MEMBER CLUB/TEAM | YEAR | SQUAD TYPE | GAMES | ELIGIBLE SEASONS |
|---|---|---|---|---|---|---|---|
| | a. | | | 1987 | Active List | 12 | 1.00 |
| | b. | | | 1988 | Active List | 14 | 1.00 |
| | c. | | | 1989 | Active List | 16 | 1.00 |
| | d. | | | 1990 | Active List | 8 | 1.00 |
| | | Total Seasons | | | | | 4.00 |

| | FACTOR | FINDING | OFFSET % | REVISED MONETARY AWARD GRID AMOUNT |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| 2. | **Medically diagnosed Stroke occurring prior to Qualifying Diagnosis:** | No | 0.00% | $469,522.40 |
| 3. | **Medically diagnosed Traumatic Brain Injury occurring prior to Qualifying Diagnosis:** | No | 0.00% | $469,522.40 |
| 4. | **Non-Participation in Baseline Assessment Program ("BAP"):** An Offset applies if you were a Retired NFL Football Player in Subclass 1 and did not participate in the BAP, unless you have a Qualifying Diagnosis of ALS or received any Qualifying Diagnosis prior to the BAP examination deadline. | No | 0.00% | $469,522.40 |
| 5. | **Monetary Award Amount After Offsets:** | | $469,522.40 | |

### C. DERIVATIVE CLAIMANT AWARD

Section 6.7(a) of the Settlement Agreement requires that 1% of the Monetary Award Grid Amount after any downward adjustment for Offsets be deducted if there are any valid Derivative Claimant Awards. As explained in Section III, Row 4 of this Notice, we have deducted this amount if any Derivative Claimants have timely registered with the Settlement Program. If there are not any names in the table below, that means no Derivative Claimants registered.

| | Derivative Claimant Award: | | $0.00 |
|---|---|---|---|
| | **DERIVATIVE CLAIMANT NAME** | **PURPORTED RELATIONSHIP TO RETIRED NFL FOOTBALL PLAYER** | **DATE DERIVATIVE CLAIMANT CLAIM PACKAGE RECEIVED/DUE** |
| 1. | | | |

### D. DEDUCTION FOR COMMON BENEFIT FEES

| **Five Percent Deduction of Monetary Award for Common Benefit Fees:** Co-Lead Class Counsel filed a motion with the Court on February 13, 2017, asking that 5% of all Monetary Awards be set aside to provide future Common Benefit Fees for attorneys who did work to facilitate the Settlement. The Court has not ruled on that motion. If the Court denies the motion or authorizes a withholding percentage less than the requested 5% and that ruling becomes final, we will return the appropriate funds to you. | $23,476.12 |
|---|---|

### E. LIENS

The Settlement Agreement requires that we deduct amounts sufficient to satisfy all valid Liens identified under Article XI prior to paying your Monetary Award. This Section identifies each Lien asserted against your Monetary Award and shows either the final amount needed to resolve each valid Lien or the current holdback amount needed to satisfy those Liens where the final amount remains pending. Liens identified under Holdback for Pending Liens are not yet finalized. Liens identified under Deduction for Finalized Liens are resolved and will be paid to the appropriate lienholder by the Lien Resolution Administrator or the Claims Administrator.

### MEDICAL LIENS

| 1. | **PENDING LIENS** | | **HOLDBACK FOR PENDING LIENS** |
|---|---|---|---|
| | a. | | $0.00 |
| 2. | **FINALIZED LIENS** | | **DEDUCTION FOR FINALIZED LIENS** |

| | | | |
|---|---|---|---|
| | a. | Medicare Parts A-B - Medicare | $2,268.04 |
| | b. | Medicaid - GA | $0.00 |
| | c. | Private Healthcare Insurance 1 - Aetna | $0.00 |
| | d. | Private Healthcare Insurance 1 - Cigna Corporation | $1,610.18 |
| 3. | | Total Holdback for Pending Liens plus Deduction for Finalized Liens | $3,878.22 |
| **NON-MEDICAL LIENS** | | | |
| 4. | | **PENDING LIENS** | **HOLDBACK FOR PENDING LIENS** |
| | a. | | |
| 5. | | **FINALIZED LIENS** | **DEDUCTION FOR FINALIZED LIENS** |
| | a. | | |
| 6. | | Total Holdback for Pending Liens plus Deduction for Finalized Liens | $0.00 |
| **F.  MONETARY AWARD** | | | |
| **Net Payment Amount:** This is your payment amount as adjusted for all applicable Offsets, Derivative Claimant Awards, Common Benefit Fee deductions, and Lien deductions/holdbacks listed above. | | | $442,168.06 |

# Exhibit 4

# NFL CONCUSSION SETTLEMENT
THE NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION
NO. 2:12-md-02323 (E.D. Pa.)

## NOTICE OF MONETARY AWARD CLAIM DETERMINATION
DATE OF NOTICE: March 13, 2018
DEADLINE TO APPEAL: April 12, 2018

## I. SETTLEMENT CLASS MEMBER INFORMATION

| | |
|---|---|
| **Settlement Program ID** | █████████ |

| Name | First ███ | M.I. | Last ███████ |
|---|---|---|---|

| | |
|---|---|
| **Settlement Class Member Type** | Retired NFL Football Player |
| **Lawyer** | Gene Locks |
| **Qualifying Diagnosis** | Level 1.5 Neurocognitive Impairment |

## II. EXPLANATION OF CLAIM DETERMINATION

This Notice is an official communication from the Claims Administrator for the NFL Concussion Settlement Program. We reviewed your Claim Package and determined that you are entitled to a Monetary Award as shown in Section III. The Attachment at the end of this Notice explains more about how we calculated your Monetary Award.

## III. MONETARY AWARD SUMMARY

| | | |
|---|---|---|
| 1. | **Monetary Award Grid Amount:** This is the starting point for your Monetary Award based on age at the time of the Qualifying Diagnosis as explained in Exhibit A-3 of the Settlement Agreement. The full Monetary Award Grid is available in the Documents tab located under the Information menu of the public website. | $575,000.00 |
| 2. | **Deduction for Offsets:** This is a downward adjustment of your Monetary Award for any applicable Offsets as explained in Section 6.7(b)-(e) of the Settlement Agreement. | $115,000.00 |
| 3. | **Monetary Award Amount After Offsets:** This is the amount of your Monetary Award after subtracting any applicable deductions for Offsets. | $460,000.00 |
| 4. | **Deduction for Potential Derivative Claimant Awards:** No Derivative Claimant timely registered with the Settlement Program under Section 4.2(c) of the Settlement Agreement based on a relationship with you. | $0.00 |
| 5. | **Monetary Award Amount After Derivative Claimant Award Deduction:** This is the amount of your Monetary Award after subtracting any applicable deduction for a Potential Derivative Claimant Award. | $460,000.00 |

| | | |
|---|---|---|
| 6. | **Five Percent Deduction of Monetary Award for Common Benefit Fees:** Co-Lead Class Counsel filed a motion with the Court on February 13, 2017, asking that 5% of all Monetary Awards be set aside to provide future Common Benefit Fees for attorneys who did work to facilitate the Settlement. The Court has not ruled on that motion. If the Court denies the motion or authorizes a withholding percentage less than the requested 5% and that ruling becomes final, we will return the appropriate funds to you. | $23,000.00 |
| 7. | **Deduction for Finalized Liens:** This is the amount deducted from your Monetary Award to satisfy any valid Liens with final reimbursement amounts, as explained in Sections 9.1(c)(ii) and 11.3(c)-(h) of the Settlement Agreement. | $3,878.22 |
| 8. | **Deduction of Holdback for Pending Liens:** This is a holdback amount deducted from your Monetary Award for any Liens with unresolved final amounts, as explained in Section 11.3(g)-(h) of the Settlement Agreement. After the Lien Resolution Administrator has finalized these Lien amounts, this holdback will be used to pay them and any excess will be sent to you. | $0.00 |
| 9. | **Net Payment Amount:** This is the amount payable to you after all deductions listed above. | $433,121.78 |

## IV. YOUR RIGHT TO APPEAL THIS DETERMINATION

If you have a good faith belief that the calculation of your Monetary Award as set forth in Rows 1-3 of Section III of this Notice is incorrect, Section 9.5 of the Settlement Agreement allows you to appeal this determination to the Court. You may submit an appeal by clicking the Appeal Monetary Award button on your secure online Portal and following the instructions provided. You must submit evidence to support your appeal. Any written statement may not be more than 10 double-spaced pages. You must do so on or before the Deadline to Appeal stated at the top of this Notice.

You may not appeal the deductions in Rows 4, 6, 7, or 8 of Section III of this Notice. You may, however, dispute: (1) any Derivative Claimants who have registered and/or submitted a claim based on their relationship to you by submitting a Form for Challenge to Derivative Claimant; and/or (2) your obligation to satisfy certain Liens or the repayment amount of certain Liens that may be associated with your Monetary Award, as described in Section VI below.

If you decide to appeal the Monetary Award calculation, you must pay a fee of $1,000 using the online PayPal option or by check made payable to the NFL Claims Administrator. This fee will be refunded to you if your appeal is successful. If you are unable to pay the $1,000 fee, you may make a hardship request to us to waive the fee and will have to submit financial information showing a sufficient hardship.

If paying the $1,000 Appeal Fee by check, mail the check to the address below.

NFL Concussion Settlement
Claims Administrator
P.O. Box 25369
Richmond, VA  23260

The Court or the Special Master appointed by the Court to oversee the administration of the Settlement Program will decide your appeal based upon a showing by you of clear and convincing evidence. The Court's decision will be final and binding. The Special Master's factual determinations will be final and binding, but you or Co-Lead Class Counsel or the NFL Parties may object to any of the Special Master's conclusions of law, which will then be subject to *de novo* (*i.e.,* a new) review by the Court.

If an appeal is not submitted on or before the deadline stated at the top of this Notice, the determination in this Notice will become final except that we may revise the Monetary Award to make necessary adjustments based on any further investigation of the claim, including any audit authorized by Section 10.3 of the Settlement Agreement. We will notify you if the Monetary Award Claim Determination changes prior to payment. Any such change will allow for an appeal of that change only.

## V. CO-LEAD CLASS COUNSEL AND NFL PARTIES' RIGHT TO APPEAL THIS DETERMINATION

Section 9.5 of the Settlement Agreement gives Settlement Class Members (as discussed in Section IV above), Co-Lead Class Counsel, and the NFL Parties the right to appeal our determination on entitlement to a Monetary Award and/or the calculation of a Monetary Award.  If any of the foregoing parties chooses to appeal, it must do so by the Deadline to Appeal stated at the top of this Notice and must provide a written copy of its Appeals Form and any supporting evidence to each of the foregoing parties and us.

If an appeal is taken by one of the foregoing parties, any of the other parties may submit a written opposition (not to exceed 10 double-spaced pages) no later than 30 days after receipt of the Appeals Form.  The party taking the appeal is not permitted to submit a reply.

Co-Lead Class Counsel may also submit a written statement (not to exceed 10 double-spaced pages) in response to an appeal no later than 15 days after receipt of the Appeals Form or your written opposition to an NFL appeal, and you and the NFL may each submit a reply to any such submission by Co-Lead Class Counsel.

## VI. LIENS

As set forth in Article XI of the Settlement Agreement, the Lien Resolution Administrator, with our assistance, is administering the process to verify and satisfy Liens against your Monetary Award.  If you or the Lien Resolution Administrator identified a Lien asserted against your Monetary Award or a third party asserted a Lien against your Monetary Award and the Lien Resolution Administrator or we have confirmed the validity and final amount of those Lien(s), we are required to deduct from your Monetary Award the Lien amount shown in Section III, Row 7 of this Notice.

If the final amount needed to resolve a Lien has not yet been determined, Section III, Row 8 of this Notice shows the amount withheld from your Monetary Award as directed by Section 11.3(g)-(h) of the Settlement Agreement.  That holdback amount will be used to pay the final Lien amount(s) and any excess will be paid to you.

You will receive a notice of each non-medical Lien, along with the assertion documents, and you will be given the opportunity to dispute each non-medical Lien before we pay it.  In general, you also will have the opportunity to dispute Liens of Governmental Payors, Medicare Part C or Part D Programs, and/or private healthcare insurers identified pursuant to Article XI of the Settlement Agreement after the Lien Resolution Administrator has determined the final repayment amount needed to satisfy all such Liens that may be associated with your Monetary Award.  After the Lien Resolution Administrator determines the final repayment amount needed to satisfy any Liens by Governmental Payors, Medicare Part C or Part D Programs, and private healthcare insurers who claim a Lien against your Monetary Award, you will receive the Final Report of Lien Resolution Administrator, which will contain instructions on how to dispute the fact or amount of those Liens if you disagree with them.  If, however, you received a Qualifying Diagnosis of Level 1.5 or Level 2 Neurocognitive Impairment and are or were a beneficiary of a Medicare Part A and/or Part B Program, you will not have a right to dispute the fact or amount of any Medicare Part A and/or Part B Liens that may be asserted against your Monetary Award, as the Lien amounts for those Qualifying Diagnoses were established through a global agreement with CMS, and the Settlement Agreement does not grant you the right to dispute them.

**If you are receiving Medicare Part A and/or Part B benefits, do not contact Medicare regarding any potential reimbursement obligations against your Monetary Award.**  The Lien Resolution Administrator is working directly with the Centers for Medicare and Medicaid Services Central Office to resolve Medicare Part A and/or Part B reimbursement obligations in connection with this Settlement and contacting Medicare may result in duplicate recovery efforts.

## VII. PAYMENT OF THE MONETARY AWARD

The Trustee will pay the Monetary Award amount as reflected in this Notice after completion of the processes required by Section 9.3(a) of the Settlement Agreement: (1) the expiration of all appeal deadlines or resolution of filed appeals (Sections 9.7 and 9.8) and (2) claim audits and fraud investigations (Section 10.3).  To receive your payment, you must submit to us:

**(1) Payment Election Form.** If a lawyer represents you in this Settlement Program, he or she must choose how to receive the funds on your behalf. The Payment Election Form is available on the Forms section of the Official NFL Concussion Settlement Program website. If you are not represented by a lawyer and you are a Portal user, you can log into your Portal account and fill out the Payment Election Form to select your payment method.

**(2) Form W-9.** If a lawyer represents you in this Settlement Program, he or she must submit a "Form W-9 – Request for Taxpayer Identification Number and Certification." This form is published by the IRS and is used for legal entities receiving payment to provide their Taxpayer Identification Numbers and certify that they are accurate. If you are not represented by a lawyer, you do not need to provide a Form W-9.

**(3) Statement of Attorney Fees and Expenses.** If you are represented by a lawyer, a Statement of Attorney Fees and Expenses signed by your lawyer. The Statement of Attorney Fees and Expenses is required under the Court's Order entered September 7, 2017, which directs all lawyers who represent Class Members to provide the Claims Administrator with a statement of their contingency fees, the amount of their expenses, and a verification that those fees and expenses are reasonable. This form is not required if you do not have a lawyer.

**(4) Sworn Statement: Status of Assignment of Claim (SWS-5).** The SWS-5 is required under the Court's Explanation and Order entered December 8, 2017, which requires the Claims Administrator to ask all eligible Settlement Class Members whether they have assigned or attempted to assign their Monetary Award or Derivative Claimant Award claim. At the Court's instruction, you, and not your lawyer (if you have one), must complete and sign the SWS-5.

See the FAQ on what you need to do to receive payment of an award on the Official NFL Concussion Settlement Program website for more information or to get a copy of these payment forms.

If this Monetary Award payment reflects a deduction for Derivative Claimant Awards or a deduction or holdback in connection with Liens, as listed in Section III, Rows 7 and 8 of this Notice, and if it is determined that you are owed some or all of such deduction and/or holdback, they will be paid to you.

## VIII. HOW TO CONTACT US WITH QUESTIONS OR FOR HELP

If you are represented by a lawyer, consult with your lawyer if you have questions or need assistance. If you are unrepresented and have any questions about this Notice or need help, contact us at 1-855-887-3485 or send an email to ClaimsAdministrator@NFLConcussionSettlement.com. If you are a lawyer, call or email your designated Firm Contact for assistance. For more information about the Settlement program, visit the official website at www.NFLConcussionSettlement.com to read the Frequently Asked Questions or download a copy of the complete Settlement Agreement.

## MONETARY AWARD CALCULATION ATTACHMENT

### SETTLEMENT CLASS MEMBER INFORMATION

| Settlement Program ID | █████████ | | | |
|---|---|---|---|---|
| Name | First ████ | | M.I. ██ | Last ████ |
| Settlement Class Member Type | Retired NFL Football Player | | | |
| Lawyer | Gene Locks | | | |

### A. MONETARY AWARD GRID AMOUNT

| | FACTOR | FINDING |
|---|---|---|
| 1. | **Qualifying Diagnosis:** Diagnosis supported by Diagnosing Physician Certification Form and medical records. | Level 1.5 Neurocognitive Impairment |
| 2. | **Age at Time of Qualifying Diagnosis:** | 53 |
| 3. | **Monetary Award Grid Amount:** Calculated based on the full Monetary Award Grid. | $575,000.00 |

### B. OFFSETS

Section 6.7 of the Settlement Agreement requires that a Monetary Award be adjusted downward for any applicable Offsets. If you are subject to multiple Offsets, they are applied individually and in a serial manner to the Monetary Award. For example, if the Monetary Award before Offsets is $100,000, and there are two 10% Offsets, the Monetary Award will be reduced by a total of 19% [$100,000 – 10% Offset = $90,000; $90,000 – 10% Offset = $81,000].

| | FACTOR | FINDING | OFFSET % | REVISED MONETARY AWARD GRID AMOUNT |
|---|---|---|---|---|
| 1. | **Number of Eligible Seasons:** An Offset applies if the Settlement Class Member had fewer than five Eligible Seasons. | 4.00 | -20.00% | $460,000.00 |

This Table shows how we calculated your number of Eligible Seasons. Section 6.7(c) of the Settlement Agreement states that each earned Eligible Season and each earned half of an Eligible Season will be added together to reach the total number of Eligible Seasons except that credit cannot be given for more than one Eligible Season per year (with each year defined to include any spring World League of American Football, NFL Europe League, or NFL Europa League season, and the following fall NFL season).

| | | LEAGUE | MEMBER CLUB/TEAM | YEAR | SQUAD TYPE | GAMES | ELIGIBLE SEASONS |
|---|---|---|---|---|---|---|---|
| | a. | | | 1987 | Active List | 12 | 1.00 |
| | b. | | | 1988 | Active List | 14 | 1.00 |
| | c. | | | 1989 | Active List | 16 | 1.00 |
| | d. | | | 1990 | Active List | 8 | 1.00 |
| | | Total Seasons | | | | | 4.00 |

| FACTOR | FINDING | OFFSET % | REVISED MONETARY AWARD GRID AMOUNT |
|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| 2. | **Medically diagnosed Stroke occurring prior to Qualifying Diagnosis:** | No | 0.00% | $460,000.00 |
| 3. | **Medically diagnosed Traumatic Brain Injury occurring prior to Qualifying Diagnosis:** | No | 0.00% | $460,000.00 |
| 4. | **Non-Participation in Baseline Assessment Program ("BAP"):** An Offset applies if you were a Retired NFL Football Player in Subclass 1 and did not participate in the BAP, unless you have a Qualifying Diagnosis of ALS or received any Qualifying Diagnosis prior to the BAP examination deadline. | No | 0.00% | $460,000.00 |
| 5. | **Monetary Award Amount After Offsets:** | | $460,000.00 | |

| C.   DERIVATIVE CLAIMANT AWARD |
|---|

Section 6.7(a) of the Settlement Agreement requires that 1% of the Monetary Award Grid Amount after any downward adjustment for Offsets be deducted if there are any valid Derivative Claimant Awards. As explained in Section III, Row 4 of this Notice, we have deducted this amount if any Derivative Claimants have timely registered with the Settlement Program. If there are not any names in the table below, that means no Derivative Claimants registered.

| Derivative Claimant Award: | | $0.00 |
|---|---|---|
| | **DERIVATIVE CLAIMANT NAME** | **PURPORTED RELATIONSHIP TO RETIRED NFL FOOTBALL PLAYER** | **DATE DERIVATIVE CLAIMANT CLAIM PACKAGE RECEIVED/DUE** |
| 1. | | | |

| D.   DEDUCTION FOR COMMON BENEFIT FEES |
|---|

| **Five Percent Deduction of Monetary Award for Common Benefit Fees:** Co-Lead Class Counsel filed a motion with the Court on February 13, 2017, asking that 5% of all Monetary Awards be set aside to provide future Common Benefit Fees for attorneys who did work to facilitate the Settlement. The Court has not ruled on that motion. If the Court denies the motion or authorizes a withholding percentage less than the requested 5% and that ruling becomes final, we will return the appropriate funds to you. | $23,000.00 |
|---|---|

| E.   LIENS |
|---|

The Settlement Agreement requires that we deduct amounts sufficient to satisfy all valid Liens identified under Article XI prior to paying your Monetary Award. This Section identifies each Lien asserted against your Monetary Award and shows either the final amount needed to resolve each valid Lien or the current holdback amount needed to satisfy those Liens where the final amount remains pending. Liens identified under Holdback for Pending Liens are not yet finalized. Liens identified under Deduction for Finalized Liens are resolved and will be paid to the appropriate lienholder by the Lien Resolution Administrator or the Claims Administrator.

| MEDICAL LIENS | | |
|---|---|---|
| 1. | **PENDING LIENS** | **HOLDBACK FOR PENDING LIENS** |
| | a. | | $0.00 |
| 2. | **FINALIZED LIENS** | **DEDUCTION FOR FINALIZED LIENS** |

| | | | |
|---|---|---|---|
| | a. | Medicare Parts A-B - Medicare | $2,268.04 |
| | b. | Medicaid - GA | $0.00 |
| | c. | Private Healthcare Insurance 1 - Aetna | $0.00 |
| | d. | Private Healthcare Insurance 1 - Cigna Corporation | $1,610.18 |
| 3. | | Total Holdback for Pending Liens plus Deduction for Finalized Liens | $3,878.22 |
| **NON-MEDICAL LIENS** | | | |
| 4. | | **PENDING LIENS** | **HOLDBACK FOR PENDING LIENS** |
| | a. | | |
| 5. | | **FINALIZED LIENS** | **DEDUCTION FOR FINALIZED LIENS** |
| | a. | | |
| 6. | | Total Holdback for Pending Liens plus Deduction for Finalized Liens | $0.00 |
| **F. MONETARY AWARD** | | | |
| Net Payment Amount:  This is your payment amount as adjusted for all applicable Offsets, Derivative Claimant Awards, Common Benefit Fee deductions, and Lien deductions/holdbacks listed above. | | | $433,121.78 |