## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE:  NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | :  :  : | No. 2:12-md-02323-AB |
| | : | MDL No. 2323 |
| | : | Hon. Anita B. Brody |
| THIS DOCUMENT RELATES TO: | :  : | |
| ALL ACTIONS | :  : | |

## CLAIMS ADMINISTRATOR STATUS REPORT NO. 2

## I.        INTRODUCTION

1.       *The Purpose and Scope of this Status Report.*  BrownGreer PLC, the Court-appointed Claims Administrator of the Settlement Program established under the Class Action Settlement Agreement in this litigation, submits this Status Report No. 2 to apprise the Court and the public on the implementation of its duties as the Claims Administrator and developments since the first Status Report filed on April 13, 2018 (Document 9882) ("Status Report No. 1").  To avoid burdening the Court and the record with repeating that comprehensive background, we invite all readers to refer to Status Report No. 1, which is posted to the Settlement Website (under "Information," click "Documents" and then "Status Reports and Court Notices"), for information on the progress of the Settlement Program until that time.

## II.       PROGRAM REPORTS

2.       *Overview of Posted Reports.*  On July 16, 2018, we began posting a new "NFL Settlement Program Summary Report" to combine what has been three reports into one

Summary Report to cover both registrations and claims.  A copy of the first Summary Report is attached as Exhibit 1.  We designed this new Summary Report to be clearer and easier to follow.  We update the Summary Report each week and post it to the Settlement Website at https://www.nflconcussionsettlement.com/ReportsList.aspx.  This new Summary Report contains 11 sections:

    (a) **Section 1 – Timely Registrations:**  This pie chart shows how many Settlement Class Members have timely registered in the Program, by type of Settlement Class Member.

    (b) **Section 2 – Registration Notices Issued by Type:**  This is a bar chart with the total number of Registration Notices we have issued as eligible for the BAP, adverse determinations and those who have not yet finished their attempted registrations.

    (c) **Section 3 – Monetary Award Claims Submitted:**  This pie chart depicts how many Retired NFL Football Players and Representative Claimants have submitted Claim Packages for Monetary Awards.

    (d) **Section 4 – Qualifying Diagnosis Asserted in Monetary Award Claims:**  A bar chart on the Qualifying Diagnosis asserted in those Monetary Award claims.  Claims in the "Unknown/Multiple" category failed to state a Qualifying Diagnosis or asserted more than one.

    (e) **Section 5 – Qualifying Diagnosis Date Asserted in Monetary Award Claims:**  These pie charts show numbers of claims for each type of Qualifying Diagnosis made before the Effective Date or after the Effective Date.

    (f) **Section 6 – Notices Issued on Monetary Award Claims:**  A bar chart of notices we have sent out after claims processing based on the latest notice as payable, denied, denied after Audit or incomplete.  The chart also shows how many of the payable and denied claims have been appealed.

    (g) **Section 7 – Payable Claims Summary:**  This bar chart provides the number and dollar amount of claims that have received a Notice of Monetary Award, payments to Retired NFL Football Players and Representative Claimants and payments to lienholders from amounts withheld from Monetary Awards.

    (h) **Section 8 – Status of Monetary Award Claims:**  This table shows where each Monetary Award claim we have received stands at this time in the Settlement Program process, also based on the last notice issued or the most recent action taken on the claim.  To give a snapshot of current statuses, a claim is counted only once in one category.  This is what the statuses mean:

(1) *In Review Process at Claims Administrator (Row 1)*:  We are reviewing the Claim Package after an initial submission or a response to a notice requesting additional information and/or documents.

(2) *Notice Will Issue Tomorrow (Row 2)*:  We or an AAP member has completed a review and a notice with the outcome of that review will be issued to the Settlement Class Member (or his or her lawyer, if represented) the day after the date of the report.

(3) *Needs Special Master Statute of Limitations Review (Row 3)*:  The Special Masters must decide whether the claim submitted on behalf of a Retired NFL Football Player who died before January 1, 2006, is time-barred under the applicable statute of limitations.

(4) *Last Notice Was for Incomplete Claim Package (Row 4)*:  We are waiting for the Settlement Class Member (or his or her lawyer, if represented) to respond to one of our notices requesting additional information and/or documents.  As explained in Paragraph 24 of this Status Report, we have issued notices for missing materials on 1,298 total claims, but most of those claims fall into other categories in this Section 8 of the Summary Report.

(5) *Ready for Review by AAP (Row 5)*:  These claims are being reviewed by an AAP doctor or are awaiting such review.

(6) *Last Notice Was Award Notice (Row 6)*:  We issued a payable Notice of Monetary Award Claim Determination and the award has not been appealed (though the deadline to appeal has not expired), is not in Audit and has not yet been put on a Funding Request to be paid.

(7) *Last Notice Was Denial Notice (Row 7)*:  We sent a denial notice on the claim and the denial has not yet been appealed (though the deadline to appeal has not expired) and the claim is not in Audit.

(8) *On Appeal Now (Row 8)*:  The Settlement Class Member, Co-Lead Class Counsel and/or the NFL Parties have appealed an award or denial notice to the Special Masters and the appeal process is ongoing.

(9) *In Audit Investigation* (Row 9):  The Claim Package is in our Audit investigation under Sections 10.3 and 10.4 of the Settlement Agreement to determine if there has been misrepresentation, omission, or concealment of a material fact.

(10) *In Audit - Failure to Provide Information (Row 10)*:  The claim is in Audit but the investigation is stalled because a healthcare provider, lawyer, or

3

Retired NFL Football Player refuses to cooperate and provide information necessary for the investigation.

(11) *Adverse Audit Report with the Parties for Review (Row 11)*[1]:  We determined there is a reasonable basis to support a finding that there has been a misrepresentation, omission or concealment of a material fact made in connection with the Claim Package and have presented to Co-Lead Class Counsel and the NFL Parties an Adverse Audit Report for their review under Audit Rule 16.

(12) *Adverse Audit Report Awaiting Response from Those Audited (Row 12)*:  One or both of Co-Lead Class Counsel and the NFL Parties consented or did not object to referral of our Adverse Audit Report and the Special Masters have accepted the Report for further proceedings under Audit Rule 18.  The affected parties have been notified and may submit responses to the Report.

(13) *Adverse Audit Report with the Special Masters for Review (Row 13)*:  The Special Masters are considering the Record of the Audit Proceeding to determine whether there has been misrepresentation, omission, or concealment of a material fact relating to the Claim Package.

(14) *Denied After Audit (Row 14)*:  The Special Masters, pursuant to Audit Rules 27 and 31, directed that claims subject to an Adverse Audit Report be denied.

(15) *Final Denial (Row 15)*:  The claim has been denied in the claims process and the denial was not appealed or has been upheld by the Special Master after appeal.

(16) *Withdrawn (Row 16)*:  The Settlement Class Member (or his or her lawyer, if represented) withdrew the claim and asked us to stop processing it.  No further action is taken on a claim that has been withdrawn.

(17) *Ready for Next Month's Payment List (Row 17)*:  The claim has not yet been paid but is ready to be included on a Funding Request, which we prepare and send to Co-Lead Class Counsel and the NFL Parties by the 10th of each month.

(18) *On this Month's Payment List (Row 18)*:  The claim has not yet been paid but was included on the current Funding Request and will receive payment soon, unless reasons intervene to cause a delay in payment.

---

[1] The "Parties" are the parties to the Settlement Agreement, Co-Lead Class Counsel and the NFL Parties.  Our contacts with Co-Lead Class Counsel are at Seeger Weiss LLP.  We work with counsel for the NFL Parties at Paul, Weiss, Rifkind, Wharton & Garrison LLP.

(19) *Paid (Row 19)*:  The Trustee has paid the claim.

**(i)  Section 9 – Status of all Appeals on Monetary Award Claims:**  A table of all appeals we have ever received to payable and denied claims by the Settlement Class Member or NFL Parties and the status of all those appeals. The numbers in this Section 9 are higher than the number of appeals shown in Section 6 because Section 6 shows appeals only on claims with a current payable or denied notice.  Claims that have reached other statuses after an appeal are not included in Section 6 but are included in this Section 9.

**(j)  Section 10 – Reasons in Notices of Denial Issued on Monetary Award Claims:**  This table identifies by Qualifying Diagnosis type every reason why a Monetary Award claim has been denied.  It also shows the total number of times each denial reason has been used in a denial notice.  Some claims were denied for more than one reason.

**(k)  Section 11 – Monetary Award Payments:**  This table breaks down by Qualifying Diagnosis how many claims have received a Notice of Monetary Award and where each of those claims stands in the payment cycle.  Row 5 shows the number and dollar amount of payments made in the Program (a) directly to Settlement Class Members or their lawyers, (b) to the Lien Resolution Administrator for the resolution of outstanding medical Liens on behalf of Settlement Class Members, (c) to non-medical lienholders on behalf of Settlement Class Members and (d) to third-party funders that have accepted rescission of prohibited assignments entered into with Settlement Class Members.  These are payments actually out the door; amounts we have been required to withhold for possible Liens are not included here but will be after those Liens are fixed and paid.

To combine the three reports into one and make them easier to use, we also removed some parts of the old reports.  Table 1 summarizes where data from the old charts or tables can now be found in the new Summary Report and which items are no longer shown and why:

| Table 1 | SUMMARY OF CHANGES TO POSTED REPORTS | |
|---|---|---|
| | **OLD CHART/TABLE** | **WHERE IN NEW SUMMARY REPORT** |
| **1.** | **Registration Report** | |
| (a) | Chart 1 (Timely Registrations) | Section 1 (Timely Registrations) |
| (b) | Table 1 (Registrations Received After Deadline) | No longer included because the Registration Deadline passed nearly a year ago on August 7, 2017; all Registrations reviewed and sent notices; Registration details seemed to be of less current interest or significance at this stage. |
| (c) | Chart 2 (Registration Notices Issued by Type) | Section 2 (Registration Notices Issued by Type) |
| (d) | Chart 3 (Registration Notice Challenge Filed by Settlement Class Member Type) | |
| (e) | Table 2 (Summary of Registration Challenge Results) | |
| (f) | Chart 4 (Registration Notice Challenge or Appeal Filed as a Percentage of All Registrants) | No longer shown, for the reasons stated in 1(b) above. |
| (g) | Table 3 (Reasons for Adverse Determinations) | |
| (h) | Chart 5 (Registration Profile of All Settlement Class Members) | |
| **2.** | **Claims Report** | |
| (a) | Chart 1 (Claims Submitted) | Section 3 (Monetary Award Claims Submitted) |
| (b) | Chart 2 (Qualifying Diagnosis Alleged for Monetary Award Claims) | Section 4 (Qualifying Diagnosis Asserted in Monetary Award Claims) |
| (c) | Chart 3 (Qualifying Diagnosis Date) | Section 5 (Qualifying Diagnosis Date Asserted in Monetary Award Claims) |
| (d) | Chart 4 (Notices Issued on Monetary Award Claims) | Section 6 (Notices Issued on Monetary Award Claims) |
| (e) | Chart 5 (Payable Claims Summary) | Section 7 (Payable Claims Summary) |
| (f) | Table 1 (Status of Appealed Monetary Award Claims) | Section 9 (Status of All Appeals on Monetary Award Claims) |
| (g) | Table 2 (Reasons in Notices of Denial Issued on Monetary Award Claims) | Section 10 (Reasons in Notices of Denial Issued on Monetary Award Claims) |
| (h) | Chart 6 (Claim Profile of All Settlement Class Members) | No longer shown, as representation status and the method used to submit claims is not of general interest. |

| Table 1 | SUMMARY OF CHANGES TO POSTED REPORTS | |
|---|---|---|
| | **OLD CHART/TABLE** | **WHERE IN NEW SUMMARY REPORT** |
| (i) | Table 3 (Derivative Claimant Notices Issued) | These details on Derivative Claimants no longer appear.  Derivative Claimant 1% awards are taken out of the Retired NFL Football Player's or Representative Claimant's Award.  Derivative Claim statuses are not of general interest or significant in assessing the overall state of the Program. |
| (j) | Table 4 (Notice of Derivative Claimant Award Determination Detail) | |
| (k) | Table 5 (Reasons in Notices of Denial of Derivative Claim) | |
| (l) | Table 6 (Deductions Listed on Notices of Monetary Award) | Removed to eliminate unnecessary confusion; deductions listed in Award Notices does not tell us who has been paid what; this level of detail seemed distracting and not helpful. |
| (m) | Table 7 (Monetary Award Payments) | Section 11 (Monetary Award Payments) |
| **3.** | **Summary of Registrations and Claims Submitted** | |
| (a) | Chart 1 (Timely Registrations) | Section 1 (Timely Registrations) |
| (b) | Chart 2 (Registration Outcomes) | Section 2 (Registration Notices Issued by Type) |
| (c) | Chart 3 (Claims Submitted) | Section 3 (Monetary Award Claims Submitted) |
| (d) | Chart 4 (Qualifying Diagnosis Alleged for Monetary Award Claims) | Section 4 (Qualifying Diagnosis Asserted in Monetary Award Claims) |
| (e) | Chart 5 (Qualifying Diagnosis Date) | Section 5 (Qualifying Diagnosis Date Asserted in Monetary Award Claims) |
| (f) | Chart 6 (Monetary Award Results and Payments) | Section 7 (Payable Claims Summary) |
| (g) | Status of Appealed Monetary Award Claims | Section 9 (Status of All Appeals on Monetary Award Claims) |
| (h) | Chart 7 (Other Key Statistics) | Taken out as not relevant or of general interest (% represented by lawyer and % making Registration challenges) or included in other Sections of the new Summary Report (Sections 8 and 9) |

### III.    REGISTRATION

**3.**    *Registration Submissions.*  With the passing of the Registration Deadline on

August 7, 2017, the only persons who can register now are (a) Representative Claimants for

deceased, incompetent, or incapacitated Retired NFL Football Players; (b) Derivative

Claimants; and (c) Retired NFL Football Players who have good cause to be allowed to

register late.  We break down the total number of timely registrations in Section 1 of the Summary Report.  Table 2 shows changes in registration numbers since our Status Report No. 1:

| Table 2 | REGISTRATIONS | | |
|---|---|---|---|
| | **TYPE OF SETTLEMENT CLASS MEMBER** | **AS OF 4/10/18** | **AS OF 7/16/18** | **CHANGE** |
| 1. | Retired NFL Football Player | 15,983 | 15,965 | -18 |
| 2. | Representative Claimant | 1,224 | 1,253 | +29 |
| 3. | Derivative Claimant | 3,273 | 3,286 | +13 |
| **4.** | **Totals** | **20,480** | **20,504** | **+24** |

The number of Retired NFL Football Players went down by 18 from Status Report No. 1 because (a) 17 were replaced by Representative Claimants (14 through the substitution process and three because they told us they selected the wrong Settlement Class Member Type during their initial registrations) and (b) one withdrew his registration because he determined he was not a Retired NFL Football Player under the terms of the Settlement Agreement.  To move incomplete registrations along, we set May 31, 2018, as the deadline to submit the required information and/or documents and notified all affected Settlement Class Members (or their lawyers) about that deadline.  On June 1, 2018, we sent adverse Notices of Registration Determination to 151 persons who did not finish out their attempted registrations by that deadline.  Those persons may challenge our determinations within 60 days of the date of their Notices, which is July 31, 2018.

    4.    *Late Registrations.*  We are responsible for determining whether registrations submitted after August 7, 2017 can be accepted.  The good cause exception under Section 4.2(c)(i) of the Settlement Agreement permits:  (a) a Representative Claimant to register within 180 days after a court or other official appoints him or her as the authorized

representative of a deceased or legally incapacitated or incompetent Retired NFL Football Player; (b) a Representative Claimant to register on behalf of a Player who died or became legally incapacitated or incompetent after timely registering himself; and (c) a Derivative Claimant to register within 30 days of when the associated Player (or his Representative Claimant) submits a Claim Package.  An attempted registration that is not one of these three things requires us to determine if good cause exists to allow the late submission.  The Rules Governing Registration Determinations and Appeals explain how we decide if there are grounds for good cause relief.  As of July 16, 2018, we had received 214 late registrations and approved 95 (44%) of them for good cause.  The 119 (56%) we found could not qualify as timely may challenge that to us within 60 days of the date of their Notices and then, if unsuccessful, have the right to appeal to the Special Master.  The NFL Parties also may challenge our timeliness decisions.

5. ***Centralized Process for Appointment of Representative Claimants and Derivative Claimant Representatives.***  As of July 16, 2018, the Special Masters had approved 369 petitions from persons to serve as the Representative Claimant of a deceased or legally incapacitated or incompetent Retired NFL Football Player, which represents 47 new approvals since Status Report No. 1.  We set May 31, 2018, as the deadline for persons with incomplete petitions to submit the required Centralized Process documents and notified all affected Settlement Class Members (or their lawyers) about that deadline.  Afterwards, 64 proposed Representatives did not submit all documents required for approval using the Centralized Process by the deadline.  On June 1, 2018, we sent adverse Notices of Registration Determination to these proposed Representatives, who may challenge those determinations within 60 days after the Notice (July 31, 2018).  If a proposed Representative

does not elect to challenge his or her adverse determination, he or she may submit a new registration within 180 days after he or she is ordered by a court or other official to be the authorized representative of a Retired NFL Football Player.  Since Status Report No. 1, the Special Masters have approved one new petition from a proposed Derivative Claimant Representative, and they so far have approved the only three such petitions we received for Derivative Claimants who are minors.

6.   ***NFL Research on Playing History and Registration Notices.***  Through our efforts with the NFL Parties on NFL employment histories, as of July 16, 2018, we had been able to confirm that 366 Retired NFL Football Players are eligible for the BAP who would not otherwise have proved sufficient NFL experience and that 731 registrants are in fact Retired NFL Football Players.  Table 3 shows changes in these numbers from Status Report No. 1:

| Table 3 | OUTCOMES FROM NFL PLAYING RESEARCH REQUESTS | | | |
|---|---|---|---|---|
| | OUTCOME | AS OF 4/10/18 | AS OF 7/16/18 | CHANGE |
| 1. | Confirmed Retired NFL Football Player Status | 534 | 731 | +197 |
| 2. | Confirmed Eligible for the BAP | 355 | 366 | +11 |

We show Registration Notices and BAP eligibility in Section 2 of the Summary Report on the Settlement Website.  As of July 16, 2018, we had issued a Registration Notice to 20,502 unique Settlement Class Members, an increase of 26 since Status Report No. 1.  Of those, 12,812 Retired NFL Football Players are eligible to participate in the BAP.  We work closely with the BAP Administrator to provide immediate information on all Retired NFL Football Players who may participate in the BAP.

7.      *Registration Challenges.*  If a Settlement Class Member or the NFL Parties disagree with our Registration determination, they may challenge the determination within 60 days after the date of our Notice of Registration Determination.  As of July 16, 2018, we had received 332 challenges.  Table 4 shows the Registration determinations that have been challenged and our determinations on those challenges:

| Table 4 | CHALLENGES OF OUR REGISTRATION DETERMINATIONS | | | | |
|---|---|---|---|---|---|
| | ISSUE | NUMBER | WHO CHALLENGED | CHALLENGE GRANTED | CHALLENGE DENIED |
| 1. | Not a Retired NFL Football Player | 40 | Settlement Class Member | 18 | 22 |
| 2. | Not Eligible for the BAP | 229 | Settlement Class Member | 66 | 163 |
| 3. | Not Properly Registered | 47 | Settlement Class Member | 39 | 8 |
| 4. | Granted Good Cause Extension for Untimely Registration | 9 | NFL | In Review | In Review |
| 5. | Denied Good Cause Extension for Untimely Registration | 6 | Settlement Class Member | In Review | In Review |
| 6. | Not a Valid Derivative Claimant Relationship | 1 | Settlement Class Member | 0 | 1 |
| 7. | Totals | 332 | | 123 | 194 |

Our decisions on these challenges may be appealed to the Special Masters.  Table 5 shows the appeals made from Registration challenge determinations and Special Master rulings thus far:

| Table 5 | APPEALS OF OUR REGISTRATION CHALLENGE DETERMINATIONS | | | | |
|---|---|---|---|---|---|
| | ISSUE | NUMBER | WHO APPEALED | DETERMINATION UPHELD | DETERMINATION OVERTURNED |
| 1. | Not a Retired NFL Football Player | 2 | Settlement Class Member | 2 | 0 |
| 2. | Not Eligible for the BAP | 24 | Settlement Class Member | 22 | 2 |
| 3. | Not a Valid Derivative Claimant Relationship | 1 | Settlement Class Member | 1 | 0 |
| 4. | Totals | 27 | | 25 | 2[2] |

## IV.   COMMUNICATIONS CENTER FOR THE PROGRAM

**8.**   ***Our Contact Activity.***  Since our contact center opened on February 6, 2017, we have handled 55,571 total communications (as of July 16, 2018), including 35,205 calls made or received and 17,937 emails to us at ClaimsAdministrator@NFLConcussionSettlement.com. Between April 10, 2018, and July 16, 2018, we handled 4,523 total communications.

**9.**   ***Law Firm Contacts.***  Our Law Firm Contacts are assigned to 492 different law firms or lawyers representing Settlement Class Members in the Program.

**10.**   ***Newsletters.***  On June 19, 2018, we issued our first edition of "Insights," a newsletter we developed to present information about the Settlement Program in a more appealing manner.  There are two versions, one for lawyers and one for unrepresented Settlement Class Members.  We email these to people we have email addresses for and mail them to people who have not provided us with email addresses.  We will issue these newsletters monthly to highlight different topics and points of interest.  In addition to sending them by email or mail, we

---

[2] These two were the result of the 53-Man Roster decision issued on December 5, 2017 (Document 9513).

post these newsletters to the Settlement Website (under "Information" click "Documents" and

then "Newsletters").

      **11.**     *Settlement Program Website.*  We regularly update the Settlement Website to

reflect progress and changes to the Program.  We have made these updates since Status Report

No. 1:

    (1) On May 10, 2018, we added four new Court Orders (https://www.nflconcussionsettlement.com/Documents.aspx).[3]

    (2) On May 14, 2018, we published an Alert about the annual inflation adjustment to Monetary Award amounts (https://www.nflconcussionsettlement.com/Alerts.aspx) and a new Monetary Award Grid with the adjusted Monetary Award values as of January 7, 2018.[4]

    (3) On June 19, 2018, we posted an Alert about the Rules Governing Registration Determinations and Appeals and changes to the FAQs regarding those Rules.[5]

    (4) On June 19, 2018, we included a new section on the Documents page (https://www.nflconcussionsettlement.com/Documents.aspx) called "Newsletters," where we put monthly newsletters that we send out to lawyers and unrepresented Settlement Class Members.[6]

    (5) On June 22, 2018, we incorporated bookmarks in the Settlement Agreement PDF to make it easier for Settlement Class Members and lawyers to locate particular sections.

    (6) On June 28, 2018, we uploaded two Orders that the Court entered on June 27, 2018 (https://www.nflconcussionsettlement.com/Documents.aspx).[7]  The Order Regarding Payment of Attorneys' Fees and Expenses rescinds two of the Court's previous Orders regarding Attorneys' Fees and Expenses (Documents 8357 and 8358).

---

[3] The four were:  (1) Order Capping IRPA Fees at 22% (Document 9863, filed April 5, 2018); (2) Order Awarding Class Counsel Attorneys' Fees and Class Representative Incentive Awards from the Common Benefit Fund (Document 9861, filed April 5, 2018); (3) Order Providing Additional Duty to the Special Masters (Document 9913, filed April 26, 2018); and (4) Order Adopting Rules Governing Petitions for Deviation from the Fee Cap (Document 9956, filed May 3, 2018).

[4] We discuss the annual inflation adjustment more fully in Paragraph 30 of this Status Report.

[5] The Rules and FAQs are covered in Paragraphs 17 and 20 of this Status Report.

[6] Paragraph 10 of this Status Report discussed these newsletters.

[7] The two Orders were:  (1) Order Regarding Withholdings for the Common Benefit Fund (Document 10104); and (2) Order Regarding Payment of Attorneys' Fees and Expenses (Document 10103).

(7) On July 16, 2018, we added another Order that the Court, through the Special Masters, entered on July 13, 2018 (Document 10136).[8]  The Order, which relates to our Audit investigations, is discussed more in Paragraph 37 of this Status Report.

(8) On July 17, 2018, we put up an Alert about the new Summary Report posted to the Settlement Website on July 16, 2018, which we discuss more fully in Paragraph 2 of this Status Report.

In the time since Status Report No. 1, the Program's Home page had 16,750 unique visits, and as of July 16, 2018, there were 340,701 unique visits, with representation from all 50 states as determined by IP Addresses, since it became publicly available on July 7, 2014.

## V.  <u>QUALIFIED MAF PHYSICIANS</u>

**12.**   *Establishing, Maintaining and Expanding the MAF Network.*  We continue to identify and contact providers, collect Provider Applications, verify credentials, submit applicants to the Parties for approval and contract with approved Qualified MAF Physicians, in conjunction with the BAP Administrator.  We add Qualified MAF Physicians to the posted list as these steps are completed.  As of July 16, 2018, we had expanded the posted list to include 145 of the total 181 approved Qualified MAF Physicians and will add the remaining 36 potential Qualified MAF Physicians as we are able to get signed contracts back from them.  We have final contracts with 143 Qualified MAF Physicians in or near 40 of the 53 target cities closest to where the majority of living Retired NFL Football Players reside, and we are in the contracting stages with an additional 38 potential Qualified MAF Physicians.  Table 6 shows the changes in these numbers since Status Report No. 1:

---

[8] We review the Special Masters' authority to issue Orders in Paragraph 18 of this Status Report.

| Table 6 | QUALIFIED MAF PHYSICIANS | | | |
|---|---|---|---|---|
| | DATA POINT | AS OF 4/10/18 | AS OF 7/16/18 | CHANGE |
| 1. | Total Approved Physicians | 184 | 181 | -3 |
| 2. | Approved – On Posted List | 149 | 145 | -4 |
| 3. | Approved – Not Yet Posted | 35 | 36 | +1 |
| 4. | Final Contracts in Place | 139 | 143 | +4 |
| 5. | Target Cities Represented | 38 | 40 | +2 |
| 6. | Potential Physicians | 45 | 38 | -7 |

The total number of approved Qualified MAF Physicians has decreased since Status Report No. 1 because, although 10 new physicians have been added, 13 were removed because they decided not to participate, left their practice, or were terminated from participating in the Program. Settlement Class Members and lawyers can locate Qualified MAF Physicians using the MAF Physician Locator Tool on the Settlement Website.

13.     *Implementing the MAF Network.*  If we determine a Qualified MAF Physician is not performing at the appropriate level or has engaged in questionable conduct, we have discretion to suspend or terminate him or her under Rules 15 and 16 of the Rules Governing Qualified MAF Physicians.  As of July 16, 2018, we had terminated two Qualified MAF Physicians and sent a Notice of Termination to a third, with an effective date of August 8, 2018.

## VI.     THE AAP AND AAPC

14.     *The AAP.*  Under FAQ 138, adopted on February 5, 2018, AAP members may, where they find that a claimed Qualifying Diagnosis is not supported by the records, approve a Qualifying Diagnosis that is less severe medically or with a lower Award amount under the Monetary Award Grid if supported by the medical records on the claim.  The AAP members have approved a lower level diagnosis on 20 new claims.

15

15.     *The AAPC.*  As of July 16, 2018, we had assigned 266 claims to the AAPC based on requests by AAP members.

## VII.   <u>SPECIAL MASTERS</u>

16.     *Our Engagement with the Special Masters*.  We work closely with the Special Masters to ensure the Settlement is faithfully implemented and administered using best practices. Since Status Report No. 1, we have had five regularly-scheduled calls to discuss policy and operational issues and now have held 51 such calls with the Special Masters.  We have many other calls and exchange countless emails with them to address issues as they arise.  The Special Masters have the final say in how the Settlement is implemented, subject only to the Court's oversight.

17.     *Program Rules.*  In Status Report No. 1, we listed seven sets of Rules approved by the Special Masters.  Since then, the Special Masters approved:

(a) Adding sentences at the end of Rules 4(b) and 21 of the Rules Governing the Audit of Claims to address confidentiality concerns for proceedings involving multiple Settlement Class Members or groups of Settlement Class Members and when the Replies of the Parties are due if there are multiple Settlement Class Members filing Rule 20 submissions at different times.[9]

(b) The Rules Governing Petitions for Deviation from the Fee Cap, which became effective on May 3, 2018, after the Court entered an Order adopting them (Document 9956).

(c) The Rules Governing Qualified MAF Physicians, which became effective on June 4, 2018, and were posted to the Settlement Website and portals on June 7, 2018.

---

[9] We posted the Rules Governing the Audit of Claims with these changes on May 8, 2018.  Rule 4(b) now says: "Notwithstanding the foregoing, to preserve the confidentiality of Claims Information, in any Audit Proceeding involving multiple Settlement Class Members, the submissions of one Settlement Class Member or group of Settlement Class Members will not be served by portal or by mail on the other Settlement Class Members in the Audit Proceeding."  Rule 21 now provides:  "In any Audit Proceeding involving multiple Settlement Class Members with different dates for their Rule 20 submissions, the 20 days for Co-Lead Class Counsel and the NFL Parties to submit their Reply Memorandums will begin to run after the date of the last such submission by any Settlement Class Member."

(d) Replacing the previously-posted Rules Governing Registration Appeals with the Rules Governing Registration Determinations and Appeals, which now cover, in addition to appeals, how we review registrations, challenges to Registration determinations and determine whether there are grounds to accept late registrations based on a showing of good cause.  We posted an Alert about the revised Registration Rules on June 19, 2018, the same day we replaced the Rules on the Settlement Website.

(e) Shortening the response time from 30 days to 15 days in Rule 16 of the Rules Governing the Audit of Claims.[10]

There now are nine sets of Rules, all of which are available on the Settlement Website by clicking the "Settlement Program Rules" Quick Link icon on the Home page and on the online portals of law firms, lawyers and *pro se* Settlement Class Members.

18.    ***Additional Duty of the Special Masters.***  On April 26, 2018, the Court entered an Order (Document 9913) giving the Special Masters authority to adjudicate motions referred to them by the Court related to Settlement implementation.  The Special Masters may issue orders, reports, or recommendations and must file them electronically in the ECF system.  Parties who disagree with a Special Master order, report, or recommendation may file an objection within 14 days of such order, report, recommendation.  The Court reviews *de novo* all factual findings and conclusions of law made by the Special Masters on matters of Settlement implementation.

## VIII.   PROCEDURES AND FREQUENTLY ASKED QUESTIONS

19.    ***Coordination with the Parties.***  We have conducted 11 more weekly policy and operational issues calls with the Parties after Status Report No. 1, and, as of July 16, 2018, had done 100 such calls in this Program since April 19, 2016.  We also have other calls, meetings and emails with the Parties on particular interpretation or operational issues that arise.  Where we do

---

[10] We put the Rules Governing the Audit of Claims with this change on the Settlement Website on July 17, 2018.

not have consensus among the Parties on an issue, we consult the Special Masters to determine the best practices approach to address it, while still honoring the terms of the Settlement Agreement.

20. *Frequently Asked Questions.* Since Status Report No. 1, we added a new category with 30 FAQs addressing the process by which lawyers and Settlement Class Members can request deviations from the Court-ordered cap on attorneys' fees (titled Petitions for Deviation from Fee Cap). There now are 333 FAQs covering 15 categories. We also made substantive revisions to nine FAQs already on the Settlement Website:

(a) FAQ 30 (May I still register in the Settlement as a Retired NFL Football Player?), where we discuss good cause relief and the Rules Governing Registration Determinations and Appeals;

(b) FAQ 31 (May I still register in the Settlement as a Representative Claimant?), where we discuss good cause relief and the Rules Governing Registration Determinations and Appeals;

(c) FAQ 32 (May I still register in the Settlement as a Derivative Claimant?), where we discuss good cause relief and the Rules Governing Registration Determinations and Appeals;

(d) FAQ 35 (Are there any rules covering registration determinations and appeals?), where we made updates to refer to the Rules Governing Registration Determinations and Appeals instead of the previously-posted Rules Governing Registration Appeals;

(e) FAQ 300 (When will I receive payment for my Monetary Award or Derivative Claimant Award?), where we added information about assignments and attempts to assign[11];

(f) FAQ 122 (I received a Qualifying Diagnosis through the BAP. Do I have to do anything else to receive a Monetary Award?), where we no longer say that we will work with the BAP Administrator to get documents directly from Qualified BAP Providers;

(g) FAQ 123 (I received a Qualifying Diagnosis from a Qualified MAF Physician. Do I have to do anything else to receive a Monetary Award?), where we no

---

[11] This was FAQ 270 before we added the 30 new FAQs.

longer say that we will reach out to the physicians to get documents on behalf of Settlement Class Members;[12]

(h) FAQ 69 (What are BAP Supplemental Benefits?), where we added details provided by the BAP Administrator; and

(i) FAQ 71 (How much will my BAP Supplemental Benefits cover?  Is there a limit?), where we added details provided by the BAP Administrator.

These FAQs are the "rules of the road" and contain links to other tools and resource guides posted to the Settlement Website to help Settlement Class Members and their lawyers navigate the Program.  The FAQs are available under the Information tab on the Settlement Website and also can be accessed by clicking the "Frequently Asked Questions" Quick Link icon on the Home page.  The banner at the top of the page contains a link to a printable PDF version of the full set of FAQs.

### IX.   MONETARY AWARD CLAIMS

21.   ***Total Claims Received.***  We show the total Monetary Award claims we have received in Section 3 of the Summary Report on the Settlement Website.  Since Status Report No. 1, we have received 161 new Monetary Award claims, giving us 1,918 Monetary Award Claim Packages from registered Retired NFL Football Players and Representative Claimants. We have claims from 11.1% of registered Players (or their Representative Claimants).  We receive about 12 new Monetary Award claims each week.  Of the 161 claims submitted by Retired NFL Football Players or Representative Claimants since April 10, 2018, 45% (73) were based on pre-Effective Date diagnoses, while 37% (60) were for post-Effective Date diagnoses.[13] That is a higher percentage of post-Effective Date diagnoses than we reported in Status Report

---

[12] While we may still reach out to the BAP Administrator and Qualified MAF Physicians under limited circumstances, it is ultimately the Settlement Class Member's responsibility to obtain everything needed to complete the Claim Package and support the claimed Qualifying Diagnosis.
[13] These numbers do not add up to 100% because 28 of the claims we received were for unknown diagnoses.

No. 1, when 80% of claims were based on pre-Effective Date diagnoses and only 13% were for post-Effective Date diagnoses.  We highlight the asserted Qualifying Diagnoses and diagnosis dates in Sections 4 and 5 of the Summary Report on the Settlement Website.

22.     ***Incomplete Claim Packages***.  In Status Report No. 1, we explained that the Parties had approved 138 items that make a claim incomplete, of which 64 are mandatory (meaning we cannot go forward to review the claim without the item and are compelled to deny the claim as incomplete if we do not receive it within the 120 days that the Settlement Agreement allows for Settlement Class Members to send in missing elements of a Claim Package) and 74 are optional (meaning they do not have to be cured for the claim to move forward and do not lead to denial if not submitted).[14]  On June 25, 2018, the Parties agreed to our request to remove 24 of these reasons.  There now are 114 items that make a claim incomplete, of which 48 are mandatory and 66 are optional.

23.     ***Monetary Award Claims Reviewed by the AAP***.  As of July 16, 2018, there were 205 claims in or still requiring AAP review.

24.     ***Notices for Missing Materials***.  As of July 16, 2018, we had sent one or more notices requesting additional documents or information on 1,298 of the 1,918 Monetary Award claims, which is 83 more claims than we reported in Status Report No. 1.[15]  More of the Level 1.5 and Level 2 claims are missing materials than claims for the other Qualifying Diagnoses, as shown in Table 7:

---

[14] The mandatory items relate to fundamental elements of a complete Claim Package, like the Claim Form, HIPAA Form, Diagnosing Physician Certification Form and medical records reflecting the Qualifying Diagnosis.  Optional items, such as what type of doctor made the diagnosis and certain types of medical records documenting the Qualifying Diagnosis (*e.g*., raw scores), make the claim stronger but are not fundamental elements of a complete Claim Package.

[15] Depending on the type of review that led to it, the notice is called a Notice of Preliminary Review or a Notice of Request for Additional Documents.

| Table 7 | | NOTICES FOR MISSING MATERIALS | | | | | | | |
|---------|--|-------------------------------|--|--|--|--|--|--|--|
| | CLAIMS | CTE | ALS | ALZHEIMER'S DISEASE | PARKINSON'S DISEASE | LEVEL 2 | LEVEL 1.5 | MULTIPLE/ UNKNOWN [16] | TOTAL |
| 1. | Total Submitted | 82 | 41 | 333 | 113 | 521 | 715 | 113 | 1,918 |
| 2. | Notice Issued | 19 | 21 | 202 | 61 | 365 | 525 | 105 | 1,298 |
| 3. | % Missing Materials | 23% | 51% | 61% | 54% | 70% | 73% | 93% | 68% |

So far, 69% of Settlement Class Members who received a notice requesting additional documents have responded to the notice. Settlement Class Members take an average of about 60 days to do so. When they do, we review what they send us to see if it cures the problem. Missing raw scores, problems with the medical records (*e.g.*, whether they are from the diagnosing doctor, issues related to functional impairment and neuropsychological testing, missing pages, etc.) and defects in the Diagnosing Physician Certification Forms have been the most common problems. Section 6 of the Summary Report on the Settlement Website shows how many claims last received a notice requesting additional documents/information.

    **25.**   *Eligible Seasons*. In Paragraph 6 above we described the work we do on Eligible Seasons during Registration. This calculation is also necessary in claims review. We pre-credit Claim Packages with Eligible Seasons from data we collected from NFL.com and what the NFL Parties have provided us. If a Settlement Class Member alleges additional Eligible Seasons, we analyze the Player's submitted documents and search the internet for

---

[16] These "Multiple/Unknown" claims are ones where the Settlement Class Member asserted more than one Qualifying Diagnosis or the claim is so incomplete that we cannot tell what Qualifying Diagnosis is claimed. We can process and pay a person for only one Qualifying Diagnosis. All of these claims by nature are incomplete because we need to know what Qualifying Diagnosis should be used. We soon will issue notices on the eight claims that had not yet received one as of July 16, 2018.

evidence of his participation in the seasons or games asserted.  If that does not work, we ask the NFL to provide information pursuant to Section 9.1(a) of the Settlement Agreement and share the NFL's findings with Settlement Class Member.  As of July 16, 2018, we had confirmed additional Eligible Seasons for 26 Settlement Class Members (an increase of three since Status Report No. 1), who will receive larger Monetary Awards because of this research.

26.   ***Statute of Limitations Matters***.  The Rules Governing Statute of Limitations Proceedings explain how the Special Masters make determinations as to whether claims submitted by Representative Claimants on behalf of Retired NFL Football Players who died before January 1, 2006 are barred by the statute of limitations, as specified in Section 6.2(b) of the Settlement Agreement.  As of July 16, 2018, we had received 362 registrations from Representative Claimants that may require the statute of limitations analysis, 67 of whom had submitted a Claim Package.  Statute of Limitations Rule 7 requires that a Claim Package be complete before a statute of limitations proceeding may begin.  Of the 67 Claim Packages we have:  (a) 25 are complete and assert a potentially compensable Qualifying Diagnosis if the claim is not time-barred under Section 6.2(b); (b) 15 are incomplete but still within their deadlines to submit missing items; and (c) 27 have been denied for failing to cure deficiencies or for not asserting a compensable diagnosis.  Table 8 summarizes the changes to these numbers since Status Report No. 1:

| Table 8 | STATUS OF CLAIMS REQUIRING STATUTE OF LIMITATIONS ANALYSIS | | | | | | |
|---|---|---|---|---|---|---|---|
| | STATUS | NUMBER | | | % | | |
| | | AS OF 4/10/18 | AS OF 7/16/18 | CHANGE | AS OF 4/10/18 | AS OF 7/16/18 | CHANGE |
| 1. | Complete - Potentially Compensable Qualifying Diagnosis | 19 | 25 | +6 | 39% | 37% | -2% |
| 2. | Incomplete – Within Deadline to Submit Missing Items | 13 | 15 | +2 | 26% | 22% | -4% |
| 3. | Denied – Deficient or No Compensable Qualifying Diagnosis | 17 | 27 | +10 | 35% | 40% | +5% |
| 4. | Totals | 49 | 67 | +18 | 100% | | |

We have issued a Notice of Commencement of Statute of Limitations Proceeding under Statute of Limitations Rule 16 to the 25 Representative Claimants with a complete Claim Package to start the briefing process under the Statute of Limitations Rules.  That briefing was concluded on June 11, 2018, for the first 10 claims, which allows the Special Masters to rule on these statute of limitations issues under Statute of Limitations Rule 26.  Of the remaining 15 claims, 10 will conclude the briefing process on July 24, 2018, and five have later deadlines to conclude the briefing process before the Special Masters can rule on this issue.

27.     *Monetary Award Denials*.  As of July 16, 2018, we had 375 denials on Monetary Award claims (150 more since Status Report No. 1), 81 of which were appealed by the Settlement Class Member, as shown in Table 9:

| Table 9 | MONETARY AWARD DENIALS | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| CLAIMS | CTE | ALS | ALZHEIMER'S DISEASE | PARKINSON'S DISEASE | LEVEL 2 | LEVEL 1.5 | MULTIPLE/ UNKNOWN | TOTAL |
| Total Submitted | 82 | 41 | 333 | 113 | 521 | 715 | 113 | 1,918 |
| Denied | 7 | 2 | 40 | 9 | 77 | 166 | 74 | 375 |
| % Denied | 9% | 5% | 12% | 8% | 15% | 23% | 65% | 20% |

Section 10 of the Summary Report on the Settlement Website shows the reasons for these denials.  Overall, the AAP found 211 (56%) of these claims not medically eligible and others were denied because a fundamental requirement in the Settlement Agreement was not satisfied (*e.g.*, date of death for a Death with CTE claim) or because Settlement Class Members did not provide the mandatory information and/or documents we requested through our notices.

28. ***Monetary Awards and Payments.***

(a) We show Monetary Awards and payments in Sections 7 and 11 of the Summary Report on the Settlement Website.  As of July 16, 2018, we had issued Notices of Monetary Award for 499 claims totaling $485,634,235 in gross awards.[17]  We request funding from the NFL Parties by the 10th of every month for claims that have received a Notice of Monetary Award for which the appeals process is complete (or the appeal deadline passed with no appeal) and there is no other reason to delay paying the claim (*e.g.*, Audit, unresolved bankruptcy issues, deceased claimants, etc.).  Of the 499 claims with Notices of Monetary Award, 378 had reached the point where we had requested funding from the NFL Parties.  As of July 16, 2018, the NFL Parties had deposited into the Settlement Fund $329,684,044 for 337 claims and not yet funded 41 claims because they were still within the applicable review

---

[17] The amount of these 499 Notices of Monetary Award includes the 1% of Awards allocated to eligible Derivative Claimants.  See Paragraph 29 of this Status Report.

period.  Of the 337 Monetary Award claims for which the NFL had deposited funds, the Program had, as of July 16, 2018, paid 324 a total of $280,878,970.  The remaining 13 claims that the NFL funded were not yet ready for payment, primarily because the withholdings for potential Liens, together with the 5% deduction for the Common Benefit Fund, exceeded the gross award amount.  For the 324 Retired NFL Football Players and Representative Claimants who had been paid as of July 16, 2018, we have also disbursed $16,013,637, which constitutes 5% of all Monetary Award payments, to the Attorneys' Fees Qualified Settlement Fund in accordance with the Court's June 27, 2018 Order Regarding the Common Benefit Fund (Document 10104).  Finally, we are required to withhold money for unresolved Liens and for third-party funders that may accept rescission of prohibited assignments (as described further in Paragraph 31).  Table 10 shows where the $280,878,970 paid by the Settlement Program went:

| Table 10 | MONETARY AWARD PAYMENTS | |
|---|---|---|
| | ISSUED TO | AMOUNT |
| 1. | Settlement Class Members (or their lawyers, if represented) | $278,925,304 |
| 2. | Lien Resolution Administrator (for resolution of outstanding medical Liens on behalf of Settlement Class Members) | $1,477,496 |
| 3. | Non-medical lienholder of Settlement Class Member | $101,100 |
| 4. | Third-party funders (who have accepted rescission of prohibited assignments they had with Settlement Class Members) | $375,071 |
| 5. | Total | $280,878,970 |

(b) Table 11 shows the changes in figures for payments and claims with Notices of Monetary Award since Status Report No. 1:

| Table 11 | MONETARY AWARD CHANGES SINCE STATUS REPORT NO. 1 | | | | | | |
|---|---|---|---|---|---|---|---|
| | **STATUS** | **NUMBER** | | | **AMOUNT** | | |
| | | **AS OF 4/10/18** | **AS OF 7/16/18** | **CHANGE** | **AS OF 4/10/18** | **AS OF 7/16/18** | **CHANGE** |
| 1. | Notice of Monetary Award Issued | 377 | 499 | +122 | $411,273,005 | $485,634,235 | +$74,361,230 |
| 2. | Paid | 187 | 324 | +137 | $171,624,754 | $280,878,970 | +$109,254,216 |

Of the 499 claims with Notices of Monetary Award, 92 (18%) have been appealed (80 by the NFL Parties and 12 by the Settlement Class Member).  This is 50 more appeals (45 by the NFL Parties and five by Settlement Class Members) than we described in Status Report No. 1.  We show the status of appealed Monetary Award claims in Section 9 of the Summary Report on the Settlement Website.

29.     *Derivative Claimants*.  As of July 16, 2018, we had received 502 Derivative Claim Packages, which is an increase of 48 since Status Report No. 1.  Table 12 shows the status of these claims:

| Table 12 | STATUS OF DERIVATIVE CLAIMS | | |
|---|---|---|---|
| | **STATUS** | **NUMBER** | **%** |
| 1. | Paid ($468,395) | 56 | 11% |
| 2. | Award Notice Issued but Not Paid ($203,169) | 56 | 11% |
| 3. | Awaiting Notice of Derivative Claimant Award Determination | 8 | 2% |
| 4. | Final Denial – Deceased Derivative Claimant | 4 | <1% |
| 5. | Successful Player Challenge – Not Eligible for Award | 6 | 1% |
| 6. | Derivative Claimant Challenge – Pending Determination | 5 | <1% |
| 7. | Withdrawn | 4 | <1% |
| 8. | Derivative Claim Package Receipt Notice Issued (no action required because the associated Player has not yet submitted a claim, or his claim status was not final) | 363 | 72% |
| 9. | **Totals** | **502** | **100%** |

Since Status Report No. 1, 21 more Derivative Claimants were paid, we issued 57 more Notices of Derivative Claimant Award and we denied one Derivative Claimant.

30. **_Annual Inflation Adjustment_.**  Under Section 6.9 of the Settlement Agreement, on January 7 of each year the Special Masters may direct an inflation adjustment to the Monetary Award amounts, not to exceed 2.5%, based on consideration of the Consumer Price Index for Urban Consumers.  On May 7, 2018, the Special Masters authorized a 2.07% upward adjustment to the Grid amounts for all Awards paid after January 7, 2018.  The amounts in the Monetary Award Grid on the Settlement Website now include that increase.  Notices of Monetary Award issued after May 11, 2018 show the updated Monetary Award amounts.  The Program has issued true-up payments for the 2.07% totaling $2,053,307.10 to 180 Settlement Class Members who were paid an Award after January 7, 2018.  There are seven additional Settlement Class Members for whom we have requested funding but have not issued true-up payments.  We are pushing to get all these true-up payments out.  They are held up by Lien issues from the Lien Resolution Administrator on whether the true-up payments will require additional Medicare Lien payments, or the Player passed away after the initial payment was issued, or the player cannot yet be paid for other reasons.

31. **_Handling of Attempted Assignments on Claims_.**

(a) As of July 16, 2018, we had received 391 signed SWS-5s (Sworn Statement: Status of Assignment of Monetary Claim) from eligible Settlement Class Members.  We are required to get an SWS-5 from every payable Settlement Class Member to find out if the Settlement Class Member has attempted to assign a claim in exchange for money from a Third-Party Funder.  Table 13 shows how many Settlement Class Members indicated on their

SWS-5s that they assigned or attempted to assign any settlement benefits and the change in those numbers since Status Report No. 1:

| Table 13 | SIGNED SWS-5 ASSIGNMENT RESPONSES | | | | | |
|---|---|---|---|---|---|---|
| | **RESPONSE** | **NUMBER** | | | **%** | | |
| | | AS OF 4/10/18 | AS OF 7/16/18 | CHANGE | AS OF 4/10/18 | AS OF 7/16/18 | CHANGE |
| 1. | No Assignment or Attempt to Assign | 190 | 365 | +175 | 92% | 93% | +1% |
| 2. | Assigned or Attempted to Assign | 16 | 26 | +10 | 8% | 7% | -1% |
| 3. | **Totals** | **206** | **391** | **+185** | **100%** | | |

(b) If a Settlement Class Member has assigned or attempted to assign any settlement benefits from his or her monetary claim to a third-party funder or borrowed any funds against his or her monetary claim as collateral, he or she also must provide to us all documents relating to that transaction (a "Third-Party Funder Transaction").  We review each Third-Party Funder Transaction with the Special Masters to determine whether it is an assignment that is prohibited under Section 30.1 of the Settlement Agreement and the Explanation and Order (a "Prohibited Assignment") and notify the affected Settlement Class Member of that decision in a Notice of Assignment Review Determination.  As of July 16, 2018, we had reviewed 26 Third-Party Funder Transactions (an increase of 16 since Status Report No. 1), 16 of which are Prohibited Assignments (an increase of nine since Status Report No. 1).

(c) On any Prohibited Assignment, we issue a Waiver Relinquishing Rights Under Attempted Assignment contemplated in the Explanation and Order ("Waiver Form") for the third-party funder to sign and return within 30 days to:  (a) indicate the amount advanced to the Settlement Class Member that has not been repaid to the third-party funder; and (b) rescind the Prohibited Assignment and relinquish all claims relating to it.  We send this

Waiver Form to the lawyer for a represented Settlement Class Member and directly to the third-party funder if the Settlement Class Member is not represented by a lawyer.  The Waiver Form includes an attachment for the Settlement Class Member to sign and return to us showing agreement with the information the third-party funder provided in the Waiver Form.  As of July 16, 2018, we had issued 11 Waiver Forms (an increase of four since Status Report No. 1) and received four completed, signed Wavier Forms from third-party funders (no change since Status Report No. 1).

32.     ***Petitions for Deviation from the Fee Cap.***  On April 5, 2018, the Court entered an Order adopting a cap on attorneys' fees of 22% of an award, subject to a common benefit holdback, plus reasonable costs (Document 9863).  Under that Order, either a Settlement Class Member or a lawyer may file a petition asking the Court to grant a downward or upward deviation from the fee cap due to exceptional or unique circumstances. The Court referred all petitions for deviation to the Honorable David R. Strawbridge, United States Magistrate Judge for the Eastern District of Pennsylvania.  Since that referral, we worked closely with Magistrate Judge Strawbridge and the Special Masters to create and implement the Rules Governing Petitions for Deviation from the Fee Cap, adopted by the Court on May 3, 2018 (Document 9956), that include a petition resolution process we administer for the Court.  We help with that docket, deadlines and extensions, the record of petition documents and transmitting them to the Court, scheduling and arranging hearings, and serving the affected parties with copies of all document submissions and Court rulings. As of July 16, 2018, we had received seven petitions for deviation, one of which has been withdrawn.  We are holding $1,127,465.22 pending resolution of three Petitions.  The other

three Petitions will be resolved by the Court through the Attorneys' Lien dispute process because the claims also are subject to disputed Attorney's Liens.

33. ***Non-Medical Liens Process and Attorneys' Lien Disputes.*** Table 14 summarizes non-medical Lien data as of July 16, 2018 and changes to those numbers since Status Report No. 1:

| Table 14 | | NON-MEDICAL LIEN SUMMARY | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | LIEN TYPE | NUMBER ASSERTED | | | NOTICES OF LIEN ISSUED | | | DISPUTED BY SETTLEMENT CLASS MEMBER | | |
| | | AS OF 4/10/18 | AS OF 7/16/18 | CHANGE | AS OF 4/10/18 | AS OF 7/16/18 | CHANGE | AS OF 4/10/18 | AS OF 7/16/18 | CHANGE |
| 1. | Attorneys' Lien | 824 | 876 | +52 | 285 | 301 | +16 | 217 | 288 | +71 |
| 2. | Child Support | 316 | 326 | +10 | 35 | 38 | +3 | 16 | 35 | +19 |
| 3. | Judgment | 36 | 52 | +16 | 9 | 11 | +2 | 5 | 9 | +4 |
| 4. | Tax | 13 | 47 | +34 | 1 | 1 | 0 | 0 | 0 | 0 |
| 5. | **Totals** | **1,189** | **1,301** | **+112** | **330** | **351** | **+21** | **238** | **332** | **+94** |

We have paid $101,100 for a resolved Child Support Lien. We have not yet paid any other type of non-medical Lien but on 17 Settlement Class Members who have been paid Awards, we are holding $5,703,466.05 for disputed Attorneys' Liens and $30,074.64 for a disputed Child Support Lien. If a Settlement Class Member consents to a non-medical Lien or resolves a dispute with the lienholder or through the Attorneys' Liens dispute process, we will pay the non-medical Lien after the affected Settlement Class Member becomes eligible for payment in accordance with the Settlement Agreement and any Court orders regarding Settlement implementation.

## X.   AUDIT

34. ***No Finding of Misrepresentation, Omission, or Concealment.*** As of July 16, 2018, we had determined there was no misrepresentation, omission, or concealment in 173

claims after full Audit and then closed the Audit and returned the claims to the normal review process.  This is 70 more claims than the 103 we reported in Status Report No. 1.

35.    ***Reports of Adverse Finding in Audit.***  Since Status Report No. 1, we have issued to the Parties two additional Reports of Adverse Finding in Audit.  As of July 16, 2018, we had issued to the Parties 10 such Audit Reports, affecting 497 Monetary Award claims, all of which we later referred to the Special Masters.  The Special Masters accepted our referrals on eight of the 10 Audit Reports and are still considering whether to accept our referrals on the remaining two Audit Reports.  The 10 Audit Reports include three neurologists, 12 neuropsychologists and two law firms.

36.    ***Active Audit Investigations.***  We have other Audit investigations underway that we are pushing to conclude as soon as possible.  As of July 16, 2018, we were still investigating 223 claims.  Of these claims, 191 were part of one of nine larger investigations of claims with similar characteristics.  We are evaluating the remaining 32 claims individually.

37.    ***Order on Investigative Authority.***  On July 13, 2018, the Special Masters, pursuant to the authority granted them by the Court (Document 9913), entered an Order related to Audit investigations (Document 10136).  The Order denied a law firm's objections to our investigative practice of directly contacting Settlement Class Members' reported health care providers to obtain information or opinions to conclude an Audit and confirmed our authority to investigate all facts that bear upon the integrity and reliability of Claim Packages by obtaining relevant information or documents from any person or entity, including Retired NFL Football Players, their families and representatives, health care providers, lawyers, and/or claims service providers.  The Special Masters directed us to hold

a Claim Package and suspend further processing if anyone refuses to provide information requested in an Audit investigation and noted our authority to deny a claim under Section 10.3(b)(ii) of the Settlement Agreement and Rule 11 of the Rules Governing the Audit of Claims when a person unreasonably fails or refuses to cooperate with an Audit investigation.

## XI.   CONCLUSION

38.   ***General Status.***  We have 155,361 documents, including notices we have issued, stored on Settlement Class Members, which is 11,704 more than when we filed Status Report No. 1.  As of July 16, 2018, we had issued 33,251 notices (2,003 more since Status Report No. 1) of various kinds (Registration, claims, appeals, Audit, etc.) to 20,880 different persons since March 23, 2017.  We have developed and programmed over 70 different types of notices and forms that are used in the Program.

Respectfully submitted,

**CLAIMS ADMINISTRATOR**

By:   _____/s/ Orran L. Brown, Sr._____
        Orran L. Brown, Sr.
        Virginia State Bar No.:  25832
        BrownGreer PLC
        250 Rocketts Way
        Richmond, Virginia  23231
        Telephone:  (804) 521-7201
        Facsimile:  (804) 521-7299
        Email:  obrown@browngreer.com

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Claims Administrator Status Report No. 2 was filed electronically on this 24th day of July, 2018, and was served electronically upon Class Counsel, Counsel for the NFL Parties and all counsel of record by the United States District Court for the Eastern District of Pennsylvania's electronic filing system.

      /s/ Orran L. Brown, Sr.
Orran L. Brown, Sr.
Virginia State Bar No.:  25832
BrownGreer PLC
250 Rocketts Way
Richmond, Virginia  23231
Telephone:  (804) 521-7201
Facsimile:  (804) 521-7299
Email:  obrown@browngreer.com