IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION LITIGATION | § § § § § § § § § | No. 12-md-2323 (AB) <br><br> MDL No. 2323 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | | |

**Alexander Objectors' Opposition to Co-Lead Class Counsel's First Verified Petition for an Award of Post-Effective Date Common Benefit Attorneys' Fees and Costs**

## I. Introduction

The Alexander Objectors respectfully oppose Co-Lead Class Counsel's First Post-Effective Date Fee Petition seeking $9,484,424.01 ($8,559,179.97 in fees and $926,244.04 in costs). According to this Court's appointed expert, Professor William B. Rubenstein, the $112.5 million Fee Fund set aside by the NFL "should be sufficient to fund past, present, and future [attorney] work" on this settlement "so long as certain safeguards are put into place." ECF 9571, p. 5. Exactly sixty days ago, the Court distributed $85,619,466.79 out of the $112.5 million. The Court explicitly held "the remaining funds in reserve to pay Class Counsel for their services in supporting the class **through the implementation of the 65-year term of this Agreement.**" ECF 10019, p. 1. Placing the remainder in an interest-bearing account, opined Professor

Rubenstein, will allow the Fee Fund to regenerate at $1,000,000 per year to the end of the 65-year life of the settlement. ECF 9571, p. 5.

Co-Lead Class Counsel's Post-Effective Date Fee Petition—clearly titled its "First"—reflects an intent to thwart the Court's plan to grow the Fee Fund. As Professor Rubenstein predicted, safeguards are essential to avoid prematurely draining the Fee Fund. The Court has already put those safeguards in place: Case Management Order No. 5 Re: Submission of Plaintiffs' Time and Expense Reports and Appointment of An Auditor ("CMO 5"). ECF 3710. The Court need only enforce them here:

1. CMO 5, entered by the Court at Co-Lead Class Counsel's request, states its purpose to foster accountability and transparency; the present fee petition disregards those principles.

2. CMO 5 requires documentation of fees and expenses; the present fee petition supplies none.

3. CMO 5 forbids double billing; the present fee petition demonstrably bills for services already paid.

4. CMO 5 mandates common benefit fees for work that benefits the common good; the present fee petition seeks funds for work that does not benefit the Class Members as a whole.

Only by safeguarding the remainder of the Fee Fund will the fund grow sufficiently to handle future fees. If the Fee Fund cannot regenerate according to Professor Rubenstein's recommendation, future fees will be paid from a percentage of Class Member recoveries. Professor Rubenstein's opinion is

that a 5% holdback for these fees is not necessary. In fact, all Class Counsel agree the 5% holdback should not be necessary for future fees, except Co-Lead Class Counsel. Notably, Co-Lead Class Counsel seeks 88% of the $9.5 million sought here. Although the Court has awarded and allocated a generous bonus for work achieving and implementing, the Court should not continue to award fees without public substantiation.

The Alexander Objectors ask the Court to deny the fee petition in its present form because Co-Lead Class Counsel fails to support its petition and seeks fees that are both double-billed and over-billed. In the alternative, the Alexander Objectors ask the Court to

> (a) direct the Court's auditor, Alan B. Winikur CPA/ABV/CFF, to review the CMO 5 data to determine whether the fees sought are reasonable, nonduplicative, and otherwise meet the Court's CMO 5 criteria; and

> (b) direct a fee committee to review the CMO 5 data and report (1) whether post-effective date fees should be capped in light of the nature of the work being performed and (2) what portion of the fees sought are attributable to the third-party funding issues and, therefore, properly taxed to those litigants alone, as suggested by Professor Rubenstein (*See* Professor Rubenstein Reply, ECF 9571 p. 5 n. 13); or

> (c) permit independent, limited fee-petition discovery.

## II. Argument

A.  Safeguarding the Fee Fund - Case Management Order No. 5

Professor Rubenstein recommends the Court put safeguards or controls in place to preserve the Fee Fund for the 65-year life of the Settlement. In other words, Class Counsel needs a budget. But, Class Counsel has steadfastly refused to forecast how much money is necessary to implement this Settlement Agreement. Class Counsel has no plan. Class Counsel has no incentive to exercise economic restraint. As an example, Co-Lead Class Counsel seeks in this Petition $1,366,518.78 for 2433.5 hours of paralegal work over approximately fourteen months. The day to day implementation services can be accomplished by qualified attorneys and paralegals with oversight by class counsel at substantially reduced rates. The Philadelphia Bar Association Community Legal Services suggested range of hourly attorney rates between $180 (under 2 years) -$650 (over 25 years) and paralegal rates of $115-$140 based on Philadelphia market survey. The paralegal billing rate used by fee petitioners exceeds the suggested range by more than $100 per hour.

As long as Class Counsel is spending "other people's" money, money held for them in escrow, Class Counsel is not likely to formulate a budget. As long as Class Counsel's billing statements are not subject to Class Member scrutiny, Class Counsel is not likely to exercise business judgment about who performs what services and for how long. There is approximately $20 million remaining in that fund. The Court cannot safeguard the remainder of the Fee Fund by allowing Class Counsel to present serial fee petitions without some assurance that there is an implementation business plan going forward. Stated

differently, each Class Member is facing a potential 5% tax or holdback to replenish the Fee Fund if it is exhausted. If the implementation services that Class Counsel is providing do not further each Class Member's interest by at least 5%, then the trade does not benefit anyone but Class Counsel. Unchecked attorney services that drain the Fee Fund and deprive it of the potential to regenerate is the antithesis of the fiscal safeguards the Court contemplated in CMO 5, but has not yet utilized.

In September, 2012, the Court placed all Class Counsel on notice of the compensable categories of fees and expenses. (ECF 3710, CMO 5). It was the purpose of the early request to establish such a protocol, according to Co-Lead Class Counsel; that is, to "ensure only reasonable and necessary fees and costs inuring to the benefit of all plaintiffs are incurred." (ECF 3698, p. 3). The Court specifically articulated the purpose of such a protocol: "[T]o guide the payment of fees and expenses to attorneys performing common-benefit work" and "help ensure this matter is efficiently prosecuted for the benefit of former-player plaintiffs without unnecessary duplication or undue costs or fees." (ECF 3710). Documentation was the touchstone for protecting Class Members from duplication and overbilling. Specifically, by CMO 5, the Court ordered Class Counsel to use the following form to document its time:

Attachment A

[Summary Time Report form for NFL PLAYERS' CONCUSSION INJURY LITIGATION, MDL NO. 2323, with columns for Timekeeper Name, Professional Status, Current Hourly Rate, Pleadings/Motions/Briefs & Legal Research, Preparing & Responding to Discovery Requests, Factual Research and Analysis, Document Analysis, Depositions (Including Preparation), Officially-Called Meetings of Counsel, Common Benefit Case Management, Court Appearances, Trial Preparation & Trial, Appeals, Settlement, Current Time Reported (Hours x Hourly Rate), and Cumulative Time Reported (Hours x Hourly Rate). All rows show 0.00 totals. Professional Status legend: P-Partner, A-Associate, OC-Of Counsel, PL-Paralegal, LC-Law Clerk.]

The Court also specifically itemized those time categories that were non-compensable (EFC 3710, pp. 3-4). As relevant here, the Court ordered that the following were not compensable:

- Time entries that are incomplete or provide insufficient detail;
- Time billed by multiple people in the same firm, unless justified by the work that has been assigned to the firm in relation to the particular task;
- Time that is duplicative or excessive in relation to the work assigned;
- Read and review time for persons not overseeing or directly participating in a project;
- Time related to litigation the claims of individual clients;
- Clerical time, including time spent preparing hearing or meeting notebooks, copying, filing, making travel arrangements or calendaring dates;

On expenses, CMO 5 gave Class Counsel a list of compensable categories such as long-distance telephone or postage. But, the Court also ordered that certain expenses were **non-compensable** (p. 6-7). For example, as relevant

6

to this fee petition, the Court said that the following expenses would not be reimbursed: duplicative expenses, undocumented expenses and expenses related to non-compensable time.

This Court should not approve any requests for attorneys' fees until provided with a satisfactory business plan detailing the common benefit work remaining and how the current funds from the $112.5 million in the qualified attorneys fee fund can be utilized to pay for such effort without tapping into class members awards. The Petition should be denied.

B. The First Post-Effective Date Fee Petition should be denied because Co-Lead Class Counsel fails to support the petition with any documentation of the work alleged performed or the expenses alleged incurred.

Federal Rule Civil Procedure 23(h) authorizes an award of "reasonable attorney fees." Fed. R. Civ. P. 23(h). The Third Circuit achieves a reasonable attorney fee by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Washington v. Phila. City Ct. of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996). "In calculating the second part of the lodestar determination, the *time* reasonably expended," a district court should "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Pa. Envtl. Def. Found. v. Canon-McMillan Sch. Dist.*, 152 F.3d 228, 232 (3d Cir. 1998); *see also Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (holding that to arrive at a reasonable number of hours worked, the court must excise those hours deemed excessive, redundant, or otherwise unnecessary). Co-Lead Class Counsel's new fee petition renders it impossible to conduct that review.

To support the $9.5 million Fee Petition, Co-Lead Class Counsel

supplied a one-sentence verification and a one-page chart listing Firms seeking payment, with the "Professional Rank" of the individual, the hours alleged worked and the total amount sought including expenses. The chart does not disclose the billing rates. The chart does not disclose dates or a range of dates for the hours alleged worked. The chart does not disclose the identity of the individual alleged to have performed the service(s).

None of the law firms or attorneys have submitted a single time record to support the 13,553.5 claimed hours of work. None of the law firms or attorneys have submitted a receipt, a cancelled check; or even a list of expenditures to support the $926,244.04 in expenses alleged incurred.

The lack of documentation, alone, is sufficient for this Court to deny the subject fee petition. It is undisputed that this fee petition is to be analyzed as a pure lodestar. The Court has, by CMO 5, made the difficult decisions about not only what is compensable, but the process by which Class Counsel must transparently document adherence to compensable categories. Co-Lead Class Counsel supplies none of that documentation.[1] But, even without CMO 5, the Third Circuit requires that Class Counsel prove their entitlement to fees; a demand for payment is insufficient.[2] CMO 5 tracks the Third Circuit

---

[1] Co-Lead Class Counsel cannot simply "stand ready" to tender supporting documents *in camera* to meet movants' burden of proof. *See* ECF 10128 p. 18 n. 4; *see also,* for example, ECF 7606, p. 15. If Co-Lead Class Counsel needs to meet the movants' proof with confidential documents, there is a presumption of access that must be overcome and "the burden is on the party who seeks to overcome the presumption of access to show that the interest in secrecy outweighs the presumption.'" *LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d 216, 220-21 (3d Cir. 2011) (quoting *In re Cendant Corp.,* 260 F.3d 183, 190 (3d Cir. 2001). Co-Lead Class Counsel has never articulated a reason that time sheets are confidential in a proceeding where the party seeks attorneys' fees.

[2] The Manual for Complex Litigation echoes the Third Circuit authority stating that "the party seeking fees has the burden of submitting sufficient information to justify the

pronouncement a court should not compensate fees that are excessive, redundant or otherwise unnecessary. See *Rose v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). And, CMO 5 accumulates the data upon which a Third Circuit lodestar analysis is founded (1) the number of hours reasonably expended on the litigation to multiply by (2) a reasonable hourly rate. *See Washington v. Phila. City Ct. of Common Pleas*, 89 F.3d at 1035. "[A] district court may not set attorneys' fees based upon a generalized sense of what is customary or proper, but rather must rely upon the record." *Coleman v. Kaye*, 87 F.3d 1491, 1510 (3d Cir. 1996).

C.     This First Post-Effective Date Fee Petition should be denied because Co-Lead Class Counsel seeks payment for work performed from January, 2017 to September, 2017 that has already been considered and paid by this Court – it is double billing.

By this $9.5 million First Post-Effective Date Fee Petition, Co-Lead Class Counsel discloses that the "work undertaken" and at issue in the petition occurred "from January 7, 2017, the Effective Date of the Settlement, to May 24, 2018." (ECF 10128, p. 1) However, this Court considered Class Counsel's work undertaken from January 7, 2017 to September, 2017 in granting the prior fee petition. (ECF 10019, p. 15 stating "[additionally, Class Counsel has submitted 6,830 hours for implementation through September 2017). Any hours for "work undertaken" between January 7, 2017 and September, 2017 are hours double billed.

The Court need not rely solely upon the statement in the Court's order to know that these hours are double billed. In an October, 2017 supplemental filing, Co-Lead Class Counsel submitted a declaration stating: "After Final

---

requested fees and taxable costs" and applicants must provide full documentation of hours and rates." The Manual for Complex Litigation (Fourth) § 21.724 (2004).

9

Approval, my firm took a similar lead on the implementation of the Settlement which became effective on January 7, 2017. My firm submitted 21,044 hours for a lodestar of $18,124,869.10 and reported $1,498,690.99 in common benefit expenses." (ECF 8447, p. 12).

That same declaration described the "work undertaken" in eight categories:

> a. Work to Ensure Class Member-Friendly Registration and Claims Processes; b. Selection of Appeals Advisory Panel Members and Appeals Advisory Panel Consultants; c. Selection and Orientation of Hundreds of Individuals to Serve as Qualified BAP Providers and Qualified MAF Physicians and Maintenance of These Physician Networks; d. Oversight of the Claim Process and Monetary Award Determinations; e. Appeals of Claims Determinations; f. BAP Examinations; g. Fielding Calls from Class Members and Lawyers Representing Class Members; h. Efforts to Combat the Dissemination of Misinformation to Class Members and Other Forms of Exploitation of Class Members.

(ECF 8447, pp. 15-190)

The present fee petition seeks compensation for "work undertaken," for the following categories only, as excerpted with track changes for comparison:

> a. Work to Ensure Class Member-Friendly Registration and Claims Processes; b. Selection of Appeals Advisory Panel Members and Appeals Advisory Panel Consultants; c. Selection and Orientation of Hundreds of Individuals to Serve as Qualified BAP Providers and Qualified MAF Physicians and Maintenance of These Physician Networks; d. Oversight of the Claim Process and Monetary Award Determinations; e. Appeals of Claims Determinations [3]; f. BAP Examinations and Supplemental

---

[3] According to the NFL Concussion Website, there are 98 appeals filed by one party or the other; however, Class Counsel has not filed anything in 80% of them. Note, too, that Co-Lead Class Counsel attributes his appellate efforts to "a properly inclusive interpretation of 'generally consistent' standard; this is one of the issues that movant's counsel urged pre-

10

Benefits; g. Fielding Calls from Class Members and Lawyers Representing Class Members; h. Efforts to Protect Class Members from Third-Party Profiteers[4].

(ECFF 10128, pp. 3-12)

The Court can see that these submissions—one seeking payment for hours through September, 2017 and the second, post $50 million distribution, seeking payment for fees January, 2017 to March, 2018, inclusive—are virtually identical. Even the original petition for fees contains similar descriptions of work undertaken as justification for pre-February, 2017 services. Co-Lead Class Counsel's Declaration is replete with implementation services that are now also the subject of the new petition. *See* ECF 7151-2, p. 25.

The Court should deny this First Post-Effective Date Fee Petition without prejudice to resubmission of nonduplicative, reasonable hours.

D. This First Post-Effective Date Fee Petition should be denied because Co-Lead Class Counsel seeks payment upon unreasonable rates, as already determined by this Court.

In its First Post-Effective Date Fee Petition, Co-Lead Class Counsel states that movant "utilizes the blended rate used in the May 24, 2018 Allocation Order." Petition, p. 18 n. 5. It is true that as part of the Court's

---

Settlement clarification on to avoid post-Settlement interpretation. Co-Lead Class Counsel disregarded the pre-Settlement suggestion and Class Members are now asked to pay for it.

[4] This category is modified somewhat to highlight Co-Lead Class Counsel's effort to spearhead challenges to third-party profiteers who "might confuse or unduly influence [susceptible] Class Members through third-party advances to Class Members against their anticipated Monetary Awards. Remarkably, the third-party advance on Class Members' recoveries appears to have been conceived by Co Lead Class Counsel, himself. *See* Exhibit 2, Email from Co-Lead Class Counsel Christopher Seeger introducing Plaintiff's counsel Mitnick to Ari Kornhaber of Esquire Bank for Plaintiffs' financing needs."

11

lodestar cross check in the Allocation Order the Court (a) found Class Counsel's billing rates to be unreasonable and (b) found that "blending the rates of all partners, associates, and paralegals produces an average rate of $623.05 per hour.[5] (ECF 10019 pp. 15-16). It is not true that Co-Lead Class Counsel has utilized that blended rate found to be fair in connection with the current fee petition.

| Firm Total Hours | Total Lodestar | Rate applied |
|---|---|---|
| Anapol Weiss – 137.7<br>– Partners: 137.7 hours | $104,424.80 | $758.35 |
| Brad Sohn[6] Law Firm – 38.4<br>– Partners: 38.4 hours | $29,120.64 | $758.35 |
| Levin Sedran and Berman -73.3<br>– Partners: 71 hours<br>– "Counsel": 2.3 hours | $55,587.05 | $758.35 |
| Locks Law Firm - 670<br>– Partners: 670 hours | $508,094.50 | $758.35 |
| NastLaw – 80.1<br>– Partners: 37.8 hours<br>– Associate: 42.3 hours | $49,251.77 | $614.88 |
| Podhurst Orseck – 287.6<br>– Partners: 187.8 hours<br>– Associate: 9.1 hours | $173,313.42 | $602.62 |

---

[5] Moreover, even if Co-Lead Class Counsel is purporting to re-calculate a blended rate based upon, Co-Lead Class Counsel completely departs from the Court's methodology. Specifically, Co-Lead Class Counsel has calculated a "blended rate" by firm, not across the board as the Court did. The Court will recall that the reason for the blended rate was as part of the cross check computation was that "the billing rates submitted by these law firms varied greatly." (ECF 10019, p. 15). As such, the Court averaged between all firms, not firm by firm.

[6] The Court should note two important points about Mr. Sohn's $29,120.64 efforts. First, it is undisputed that the hours Mr. Sohn worked, he worked for an individual client; Co-Lead Class Counsel has made the unilateral decision to retroactively compensate Mr. Sohn from the common benefit fund. Second, Mr. Sohn, whose hours are being billed at $758.35 appears to be the same Mr. Sohn who served as a law clerk for Podhurst Orseck and, in connection with the first fee petition, was billed at the rate of $295, commensurate with the paralegal rate. (ECF 7151-8, Exhibit I)

| | | |
|---|---|---|
| – Paralegal: 90.7 hours | | |
| Prof. Issacharoff – 36.3<br>    – Partners: 36.3 hours | $27,528.10 | 758.35 |
| Seeger Weiss – 13,552.5<br>    – Partners: 6,438.1 hours<br>    – "Counsel": 2,246.2 hours<br>    – Associates: 1,112.3 hours<br>    – Paralegals: 2,433.5 hours | $7,611,859.69 | $561.66 |

The Court did not suggest that any blended rate would be used in a pure lodestar. And, it should not. The Court can see from the table above that many, many of the hours being expended during "implementation" efforts are services provided by paralegals. Using a blended rate raises the compensation for such paralegal services from, for example, $260.00 per hour to a rate higher than an associates' rate. *See* Petition, p. 18 n. 5. As such, Seeger Weiss is being compensated for paralegal work in the amount of $1,366,518.78. Co-Lead Class Counsel cites no case in which any Court has used a "blended rate" for an actual lodestar award.

The Court should deny this First Post-Effective Date Fee Petition without prejudice to resubmission with actual, but reasonable rates for work along the guidelines of CMO 5.

E.  In the alternative, the Court should refer the First Post-Effective Date Fee Petition to either Mr. Alan Winikur or a Fee Committee for review of CMO data and use of strategies to preserve the Fee Fund for the benefit of all Class Members.

If the Court does not deny the petition, without prejudice, outright for its failure to provide support and its double and overbilling, the Court should nonetheless provide transparency in the review of Co-Lead Class Counsel's new fee petition by applying CMO 5 to it via data and auditor. **Where the Court has a process in place, such as CMO 5, and then fails to follow that**

13

**process, there is no transparency.** *See* Exhibit 1, June 15, 2018 Declaration of Christopher A. Seeger, *In re: Zimmer Durom Hip Cup Products Liability Litigation*, MDL 2158, 2:90-cv-04414, ECF 986-2, p. 3 (averring that other lawyers failure to comply with Case Management Order No. 3, "pre-specified guidelines" was not normal or usual for a fee process and deprived the procedure of transparency). Instead, "it is normal for fee committees to be organized who analyze common benefit claims and ultimately reach consensus amongst all the lawyers who contributed to the process." *See* Exhibit 1, June 15, 2018 Declaration of Christopher A. Seeger, *In re: Zimmer Durom Hip Cup Products Liability Litigation*, MDL 2158, 2:90-cv-04414, ECF 986-2, p. 3.

It is, in fact, normal to afford transparency in the fee process. That is the reason the Court entered CMO 5. That is the reason the Court appointed an auditor. His services should be employed at this time.

Further, as a part of the Court's effort to conserve the Fee Fund for the next sixty-three years, the Court should consider taxing third-party funders whose arrangements are found to be improper with the fees incurred in challenging them. This is the suggestion of the Court's expert, Professor Rubenstein. (ECF 9571 p. 6 n. 19).

If the Court determines not to deny this First Post-Effective Date Fee Petition, the Court should refer the Fee Petition to either Mr. Alan Winikur or a Fee Committee for review of CMO data and use of strategies to preserve the Fee Fund for the benefit of all Class Members. Either independent review, with an eye toward conserving the fee fund and performing a critical analysis of reasonable fees and rates could afford the necessary transparency.

F.    In the event the Court declines to deny or refer the First Post-Effective Date Fee Petition, the Court should permit limited fee-petition discovery.

The above requests for review by Court-appointed experts or a Fee Committee would likely result in compensation from the Settlement.  As an alternative, the Court should permit limited fee-petition discovery to be conducted by objectors[7] – at the Alexander Objectors cost (no fee) only and save expenses that would otherwise fall to the Settlement or Class Members. The discovery might be in the form of written questions or an oral deposition.

Section 21.724 of The Manual for Complex Litigation specifically contemplates such discovery where, as here, a petition for fees in not supported: If there is a request for discovery to support an objection to a motion for attorney fees, the court should consider "the completeness of the material submitted in support of the fee motion, which depends in part on the fee measurement standard."  The Manual for Complex Litigation (Fourth) § 21.724 (2004).

The Alexander Objectors previously sought this discovery because Co-Lead Class Counsel provided no data or backup for fees sought.  Co-Lead Class Counsel suggested that such data was not necessary for a "back of the envelope" lodestar cross check.  Now, on this pure lodestar analysis, the data is necessary.  Because Co-Lead Class Counsel has provided nothing for this Court to review in satisfaction of movants' burden of proof, the Court should permit the Alexander Objectors to conduct limited fee discovery.

---

[7] The Alexander Objectors incorporate, by reference their prior Motion for Leave to Conduct Fee-Petition Discovery (ECF 7534).

## Prayer

For the reasons stated above, Co-Lead Class Counsel's First Post-Effective Date Fee Petition should be denied.

Dated: July 24, 2018                                   Respectfully submitted,

/s/ Lance H. Lubel

| | |
|---|---|
| Charles L. Becker, Esq. | Lance H. Lubel, Esq. |
| KLINE & SPECTER, PC | Texas Bar No. 12651125 |
| 1525 Locust Street, 19th Floor | Adam Q. Voyles |
| Philadelphia, Pennsylvania 19102 | Texas Bar No. 24003121 |
| Telephone: (215) 772-1000 | LUBEL VOYLES LLP |
| Facsimile: (215) 772-1359 | 675 Bering Dr., Suite 850 |
| Email: Chip.Becker@KlineSpecter.com | Houston, Texas 77057 |
| | Telephone: (713) 284-5200 |
| Mickey L. Washington, Esq. | Facsimile: (713) 284-5250 |
| WASHINGTON & ASSOCIATES PLLC | Email: lance@lubelvoyles.com |
| 2019 Wichita Street | Email: adam@lubelvoyles.com |
| Houston, Texas 77004 | |
| Telephone: (713) 225-1838 | |
| Facsimile: (713) 225-1866 | |
| Email: mw@mickeywashington.com | |

*Attorneys for Appellants*

### CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2018, I filed the foregoing through the Court's CM/ECF system, which will provide electronic notice to all counsel of record and constitutes service on all counsel of record.

/s/  Lance  H. Lubel
Lance H. Lubel