UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE: ZIMMER DUROM HIP CUP PRODUCTS LIABILITY LITIGATION | * * * * * * * | MDL 2158<br><br>2:09-cv-04414 (DFW)(SCM)<br><br>JUDGE SUSAN D. WIGENTON |
| ****************************************** | * | |

THIS DOCUMENT RELATES TO: ALL CASES

### DECLARATION OF CHRISTOPHER A. SEEGER

I, Christopher A. Seeger, hereby declare as follows:

1. I submit this Declaration in support of Plaintiffs' Brief in Support of Their Motion For Reconsideration and To Stay the Court's June 7 Order Concerning Common Benefit Fees (hereinafter the "Order").

2. I am the founding partner of the law firm, Seeger Weiss LLP, located at 55 Challenger Road, Ridgefield Park, New Jersey 07660.

3. I was appointed Plaintiffs' Co-Liaison Counsel by the Court on September 23, 2010, pursuant to Case Management Order No. 1 [Doc. No. 17]. Since that time, I have been an active participant in the litigation.

4. Beginning in 2010 and continuing into 2011, while the litigation was still in its early stages, I, along with other plaintiff's attorneys, engaged in settlement discussions with Defendant's counsel and was successful in resolving nearly one hundred claims. It was my belief that the case was on its way to early and productive global resolution. Indeed, these discussions laid the groundwork for what would later become the global Settlement Program for all claimants.

5. Approximately one year later, the law firm of Waters & Kraus, LLP, joined the MDL litigation. Instead of working cooperatively with existing MDL leadership to finalize a global and early resolution, Waters & Kraus implemented a different agenda which, I believe, was solely focused on developing its own inventory of cases for trial under the mistaken belief that the settlement framework we were

Exhibit 1

developing was not generous enough. Because of this, Defendants – unfortunately - suspended settlement discussions with all plaintiffs.

6. From March 2013 through 2015, Waters & Kraus conducted discovery and tried four of its cases, although only one of them was tried in this MDL. Three of the four trials resulted in a defense verdict. The lone plaintiff verdict was subsequently thrown out by trial court and is presently on appeal. During this time period, no plaintiff was able to engage in settlement discussions with defendants. Put simply, Waters & Kraus' decision to pursue a litigation strategy in the face of a defendant that was already positioned to settle claims, proved disastrous and contrary to the interests of the MDL – substantively and from a time perspective.

7. In the Fall of 2015, Defendant's counsel and myself, along with Plaintiffs' Co-Liaison Counsel, James E. Cecchi, and Co-Settlement Counsel, Richard D. Meadows, commenced negotiations for what would become the global Settlement Program offered by Defendant to all claimants.

8. These negotiations lasted for several months before an agreement on the size, scope, and criteria for the Settlement Program were reached. Settlement counsel engaged in numerous meetings and countless phone calls, and throughout this process, we advised the Court of our progress. The Settlement Program was presented to the Court for approval and then announced and offered to all claimants in February 2016. Over the next two and a half years, I, and other attorneys from my firm, assisted scores of plaintiffs and plaintiff's attorneys in enrolling in the Settlement Program. Further, we responded to countless questions regarding the settlement procedures and in some instances, helped resolve disputes between enrolled plaintiffs and Defendant's counsel. The Settlement Program was very successful, resulting in resolution of more than 450 claims, which constitute the vast majority of Zimmer Durom Cup claims before this Court.

9. By contrast, the firms who were allocated common benefit fees pursuant to Your Honor's June 7, 2018, Order [Doc. 983], initially objected to and sought to delay the Settlement Program, once again under the mistaken belief that they could somehow achieve a more generous result. Ultimately, Waters & Kraus did enroll their clients in the settlement program. Put simply, the decision to obstruct the MDL and the initial settlement program resulted in an unfortunate and unnecessary delay of clients receiving recompense here.

2

10. Rather than contributing to the common benefit of all plaintiffs, Waters & Kraus arguably diminished the value of their claims, particularly given the lapse of time between the original settlement discussions and the Settlement Program ultimately approved by this Court, which this firm and others negotiated despite Waters & Krauss' obstructionist tactics.

11. Nevertheless, on April 18, 2018, Waters & Kraus, LLP, along with two other movants, requested that this Court approve common benefit fees for their respective firms [Doc. 972-1].

12. On April 20, 2018, I filed an opposition to their motion [Doc. 973], arguing that the procedure utilized by the movants failed to include all MDL counsel who may have contributed to the common benefit of all plaintiffs. Further, the procedure lacked transparency and failed to follow any pre-specified guidelines. Indeed, the expenses submitted by movants were not reviewed by anyone other than the submitting firms. I believe the process utilized by Waters & Kraus and the other movants failed to comply with Case Management Order No. 3 and certainly did not comply with the normal and usual processes that are undertaken in cases such as this. By way of example only, it is normal for fee committees to be organized who analyze common benefit claims and ultimately reach consensus amongst all the lawyers who contributed to the process.

13. Under Your Honor's June 7, 2018, Order, Waters & Kraus and the other movants were allocated a total of $3,230,137.82 in fees and expenses (excluding prior expense allocations). This amount constitutes more approximately 66 percent of the common benefit fund – a result that is demonstrably unfair to those lawyers who actually provided the benefit to this litigation over many, many years.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 15, 2018.

_____
Christopher A. Seeger

3