UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Hon. Anita B. Brody |

**EXPLANATION AND ORDER**

Class Member Andrew Stewart entered into an assignment agreement with Third-Party Funder RD Legal. After Stewart was approved for a Monetary Award, RD Legal sought rescission of the agreement and receipt of the money it originally paid to Stewart absent any interest. Stewart filed a motion to direct the Claims Administrator to pay him a portion of the rescission amount. The Claims Administrator has sought interpleader with the Court to determine the proper disbursement of the funds.

I deny Stewart's motion and direct the Claims Administrator to pay RD Legal the full rescission amount.

**BACKGROUND**

    **A.  The *NFL Concussion Litigation* Settlement Agreement and Assignments of Monetary Claims**

On December 8, 2017, the Court entered an Explanation and Order addressing the assignment of monetary claims to Third-Party Funders. Explanation and Order, ECF No. 9517. The Court determined that under Section 30.1 of the Settlement Agreement any assignment or

1

attempted assignment of a Class Member's monetary claims to a third-party is "void, invalid and of no force and effect." *Id*. at 3. Additionally, the Court provided that under the principle of rescission Third-Party Funders that entered into a prohibited assignment agreement should be afforded an opportunity to recoup the initial payment to a Class Member. *Id*. at 5. As the Court stated:

> If the Third-Party Funder is willing to accept rescission and execute a valid waiver relinquishing any claims or rights under the entire agreement creating the assignment or attempted assignment, then the Claims Administrator will be authorized to withhold—from the Class Member's monetary award—the amount already paid to the Class Member under the agreement and return it to the Third-Party Funder.

*Id*. The Court has also ordered the Claims Administrator to pay any Monetary Award directly to Class Members in situations where Class Members have entered into a prohibited assignment agreement with a Third-Party Funder, but the Funder has not agreed to rescission. *See* February 20, 2018 Order, ECF No. 9749.

The Claims Administrator has taken steps to implement the Court's directives regarding assignment agreements. It has created Rules Governing Assignment of Claims, which were adopted by the Special Masters and posted to the official settlement website on February 22, 2018. Resp. Statement of Claims Administrator 2, ECF No. 10137; No. 18-md-2323, ECF No. 56. Under the Rules, the Claims Administrator requires every Class Member that qualifies for a Monetary Award to disclose whether he has entered into an assignment agreement or borrowed funds against his monetary claim. Rules Governing Assignment of Claims 2, ECF No. 10137-1. If he has, the Class Member must submit any such agreement for review. *Id*. Then, the Claims Administrator and a Special Master review the document to determine whether it is a prohibited assignment with a Third-Party Funder. *Id*. at 2-3. If it is a prohibited assignment, then the Claims Administrator provides the Third-Party Funder with the option of rescission to recover the

amount initially paid to the Class Member without interest. *See id*. at 3. Before rescission is finalized, the Class Member can dispute the rescission amount, and then the Claims Administrator and a Special Master will determine how much to pay the Third-Party Funder. *Id*. Conversely, if the Third-Party Funder rejects rescission, then the Class Member is directly paid the full Monetary Award—absent attorneys' fees and any other valid liens. *See id.*

Thus, based on the Explanation and Order and the Claims Administrator's Rules, Third-Party Funders that entered into a prohibited assignment agreement with a Class Member have two options if the Class Member is approved for a Monetary Award. Either the Third-Party Funder can accept rescission and recover the principle payment to the Class Member, or the Third-Party Funder can reject rescission and face the strong possibility that it will be unable to recoup anything from the Class Member.

### B. Events Leading to Stewart's Motion

In October 2014, Andrew Stewart entered into a funding agreement with Ludas Capital for $108,000 at an annualized interest rate of 31.8%. October 2014 Stewart Agreement 1, No. 18-md-2323, ECF No. 55-1. About two months later, in December 2014, he entered into a second agreement with Ludas Capital for $77,000—also at a 31.8% rate. December 2014 Stewart Agreement 1, No. 18-md-2323, ECF No. 55-1. At some point Ludas Capital transferred its interest in both funding agreements to Peachtree Financial LLC. Stewart Mem. 1-2, No. 18-md-2323, ECF No. 53-1. In January 2016, Stewart entered into another funding agreement, this time with RD Legal Finance, LLC. *Id*. at 2. In that agreement, RD Legal was obligated to "pay to [Stewart] the sum of $343,120.53." Michael D. Roth Decl., Ex. 5-B at 2, No. 18-md-2323, ECF No. 54-1.

As part of the funding agreement, Stewart and RD Legal agreed that RD Legal was to use a portion of the $343,120.53 to pay off the money that Stewart owed to Peachtree—including interest. *Id*. Of the $343,120.53, RD Legal paid $270,000 directly to Peachtree to satisfy the previously outstanding lien against Stewart from his prior funding agreements. *Id*. Ex. 5-C. The $270,000 payment to Peachtree encompassed the initial $180,000[1] in payments made to Stewart by Ludas Capital, plus $90,000 in fees and interest that had accrued. Stewart Mem. 3. The remaining $73,120.53 out of the $343.120.53 was paid directly to Stewart by RD Legal. *See id.*

Like most litigation funding agreements, Stewart only owed RD Legal if and when he received a Monetary Award. Thus, Stewart's obligation to RD Legal was not triggered until October 3, 2017, when he was notified by the Claims Administrator that he was entitled to a $700,000 Monetary Award. *Id*. at 1. Stewart was eventually scheduled to be paid on February 15, 2018 as part of Funding Request No. 13. *Id*.

Prior to Stewart's scheduled payment, the Claims Administrator examined his funding agreement with RD Legal and determined it to be a prohibited assignment. *See* Resp. Statement of Claims Administrator 3. Consequently, the Claims Administrator issued notice to RD Legal that it could opt for rescission of the agreement. *Id*. RD Legal agreed to rescission and expected to be paid the total sum that it had paid to Stewart in the amount of $343,120.53. *Id*. Stewart, however, stated that he disagreed with the amount to be paid to RD Legal—the entire $343,120.53. *Id*. Because of the dispute, the Claims Administrator withheld the entire $343,120.53 from Stewart's Monetary Award.

---

[1] The Court is unsure of Stewart's math. The prior agreements with Ludas Capital indicate that he received $108,000 and $77,000 respectively for a total of $185,000. *See* October 2014 Stewart Agreement 1; December 2014 Stewart Agreement 1. RD Legal does not challenge Stewart's claimed amount. Regardless, that amount is irrelevant given the Court's ruling that RD Legal gets the full rescission value requested.

Before the Claims Administrator could reach a decision, Stewart filed the present motion to compel the Claims Administrator to pay him $90,000 out of the $343,120.53 rescission amount proposed by RD Legal. Stewart Mot., No. 18-md-2323, ECF No. 53.[2] RD Legal filed a response in opposition, RD Legal Opp. Mem., No-18-md-2323, ECF No. 54, and Stewart filed a reply, Stewart Reply, No-18-2323, ECF No. 55. Then, the Claims Administrator filed a statement in response seeking interpleader and guidance from the Court in determining the proper rescission amount. Resp. Statement of Claims Administrator, ECF No. 10137; No. 18-md-2323, ECF No. 56.

**DISCUSSION**

RD Legal is entitled to $343,120.53—the full rescission amount that it requested. As the Court has previously stated, it has broad jurisdiction over disputes regarding assignment agreements between Class Members and Third-Party Funders because assignment agreements violate the Settlement Agreement that is incorporated in the Court's final approval order. May 22, 2018 Explanation and Order 4, ECF No. 10011; *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994). Additionally, just as the Court has the power to examine and alter attorneys' contingent fee agreements to ensure reasonableness, *see In re Nat'l Football League Players' Concussion Injury Litig.*, No. 2:12-MD-02323-AB, 2018 WL 1658808, at *2 (E.D. Pa. Apr. 5, 2018), it has the power to examine and alter funding agreements that directly affect Class Members' Monetary Awards to ensure that such agreements are reasonable. Consequently, the Court can impose terms of rescission upon parties that have entered into a prohibited assignment agreement.

---

[2] Stewart filed his motion on the alternate *NFL Concussion Litigation* docket, No. 18-md-2323. Stewart should have filed his motion on the standard docket, No. 12-md-2323.

The Court's rescission approach is based on equitable principles, and equitable rescission seeks to restore the "status quo ante." *See Motor Vehicle Mfrs. Ass'n v. State of New York*, 550 N.E.2d 919, 922 (N.Y. 1990). Status quo ante is defined as "[t]he situation that existed before something else (being discussed) occurred." *Status quo ante*, Black's Law Dictionary (10th ed. 2014). When dealing with a contract, the status quo ante is the situation that existed before the contract was formed between the parties at hand. *See Erie Telecommunications, Inc. v. City of Erie, Pa.*, 853 F.2d 1084, 1092 (3d Cir. 1988).

Here, when applying rescission, the Court seeks to restore the status quo ante between Stewart and RD Legal. Thus, it must look at the situation that existed when Stewart and RD Legal entered into the assignment agreement. In so doing, the rescission amount becomes obvious. To restore the status quo ante between RD Legal and Stewart, RD Legal must receive the entire $343,120.53 that it paid to Stewart pursuant to the assignment agreement.

Stewart argues that RD Legal should only be paid $253,120.53 in rescission because the full $343,120.53 includes RD Legal's payments to Peachtree for interest and fees on Stewart's prior agreements. Stewart claims that the interest and fees paid to Peachtree amounted to $90,000. Stewart Mem. 3. He argues that he does not owe the $90,000 in interest and fees because the original Ludas Capital agreements—that were transferred to Peachtree—were prohibited assignments.

Applying the principles of rescission that the Court has laid out above shows the flaw in Stewart's logic. The agreements with Ludas that then were transferred to Peachtree cannot be considered to determine the status quo ante when Stewart entered into the assignment agreement with RD Legal. Those prior agreements are neither before the Court nor the Claims Administrator, and the Court will not "look through" Stewart's agreement with RD Legal to

6

determine the validity of the underlying lien paid by RD Legal. Stewart is only entitled to the status quo ante at the time of his agreement with RD Legal. Because of the agreement, Stewart received from RD Legal a benefit of $343,120.53—including $72,120.53 paid directly to Stewart and $270,000 paid to Peachtree on Stewart's behalf. To get back to his position before the agreement with RD Legal, Stewart must repay the full benefit he received. Therefore, Stewart's motion is denied.

The Court imposes the terms of rescission under its authority to enforce the Settlement Agreement and directs the Claims Administrator to pay RD Legal $343,120.53.

**ORDER**

**AND NOW**, this 25th_ day of July, 2018, it is **ORDERED** that Stewart's Motion to Require Claims Administrator to Pay Remaining Amount of Monetary Award is **DENIED**.

It is further **ORDERED** that the Claims Administrator must pay RD Legal $343,120.53.

s/Anita B. Brody

_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:                Copies **MAILED** on _____ to: