# Exhibit B

From: John P. Leonard [mailto:jleonard@mdmc-law.com]
Sent: Wednesday, August 01, 2018 12:28 PM
To: TerriAnne Benedetto <TBenedetto@seegerweiss.com>
Cc: Alfred R. Brunetti <abrunetti@mdmc-law.com>; Sheryl Giardina <sgiardina@mdmc-law.com>; Chris Seeger
<CSeeger@seegerweiss.com>; Colleen Barnes <CBarnes@seegerweiss.com>
Subject: Re: In Re: NFL Players' Concussion Injury Litigation

Hi Terri -

I am told by Cambridge that additional reports from their auditor will be forthcoming.  I will forward those to you as soon as we
receive them.

John


THE INFORMATION CONTAINED IN THIS MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE
DESIGNATED RECIPIENTS NAMED ABOVE. This message may be an attorney-client communication, and as such is privileged and
confidential. If the reader of this message is not the intended recipient, you are hereby notified that you have received this
document in error and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have
received this communication in error, please notify us immediately by reply e-mail message or by telephone and delete the
original message from your e-mail system and/or computer database.


P Please consider the environment before printing this e-mail.


On Aug 1, 2018, at 11:24 AM, TerriAnne Benedetto <TBenedetto@seegerweiss.com<mailto:TBenedetto@seegerweiss.com>>
wrote:

John,

The Court's Order of February 20, 2018 directed Cambridge to produce, among other things, "[t]he complete accounting of all
retirement funds provided to Cambridge Entities by each Class Member."  Further, the Order directs Co-Lead Class Counsel to
"provide each involved Class Member his own accounting and [to] provide to the Court, under seal, all accounting documents."
ECF No. 9750 (emphasis added).  Among other deficiencies, the documents provided do not indicate how much is currently in
each individual Class Member's account.

Below is an excerpt of your colloquy with the Court during our July 11, 2018 telephonic conference:

THE COURT: Okay. All right. I'm going to have a conference by telephone at two o'clock in the afternoon on August the 14th. And
I expect all of that information, Mr. Leonard, to be with Ms. Benedetto.  And if, in fact, it hasn't been delivered as you just
promised with each and every member of the class that has invested with you, I expect an audited submission to – a report due
to Ms. Benedetto by the -- by the end of July, July 28th, is that correct? Is that the date you said you could do it?

MR. LEONARD: That's -- whatever the accountant said in his letter, we submitted, yes. It's going to be an accounting of every
member and their account and where the money went –

Trans. July 11, 2018, at 13 (emphasis added).  A copy of the transcript is attached.

We will be advising the Court that Cambridge has failed to comply with the Court's Order, when delivering the documents provided under seal.

Thank you,

TerriAnne Benedetto
Partner
Seeger Weiss LLP
1515 Market Street
Suite 1380
Philadelphia, PA 19102
(t) 215-564-2300<tel:(215)%20564-2300>
(d) 215-553-7981<tel:(215)%20553-7981>
(f) 215-851-8029<tel:(215)%20851-8029>

From: Sheryl Giardina [mailto:sgiardina@mdmc-law.com]
Sent: Wednesday, August 1, 2018 9:34 AM
To: Chris Seeger <CSeeger@seegerweiss.com<mailto:CSeeger@seegerweiss.com>>; TerriAnne Benedetto <TBenedetto@seegerweiss.com<mailto:TBenedetto@seegerweiss.com>>
Cc: John P. Leonard <jleonard@mdmc-law.com<mailto:jleonard@mdmc-law.com>>; Alfred R. Brunetti <abrunetti@mdmc-law.com<mailto:abrunetti@mdmc-law.com>>
Subject: In Re: NFL Players' Concussion Injury Litigation

Per John Leonard's instruction, attached please find the reports of the auditors retained by Cambridge Capital which were received last evening. Needless to say, if you have any questions, please do not hesitate to contact Mr. Leonard.

<image001.png>

Sheryl Giardina
Paralegal
McElroy, Deutsch, Mulvaney & Carpenter, LLP

https://linkprotect.cudasvc.com/url?a=https%3a%2f%2fwww.mdmc-law.com&c=E,1,mp_TT3Rmta0NhXhVHp3KjTNWMa6gk6_bZ6j4xKPSD1Nad5gd5i7C04ZSWzz04q5DImLbvIUfrGyfmjPP8GEEFi-Zkyi9fB3YD2xY43xy5blE5HibE5KG&typo=1<https://linkprotect.cudasvc.com/url?a=http%3a%2f%2fwww.mdmc-law.com&c=E,1,bFl26GtjSphXLsDMmucRI37z9haudDOkS71a56_vfM2AEP6j44Mh7fiTi3FdeqP35QfOP5H3HF37mpBKSNcR_VqR6uEDjwYPDTPRutJG_RFR8A7H_PB-&typo=1>
1300 Mt. Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-2075

<image002.gif>sgiardina@mdmc-law.com<mailto:sgiardina@mdmc-law.com>
<image004.jpg>Download vCard<https://linkprotect.cudasvc.com/url?a=http%3a%2f%2fwww.mdmc-law.com%2ftasks%2fsites%2fmdmc%2fassets%2ffile%2fvCard2.cfm%3femail%3dsgiardina%40mdmc-law.com&c=E,1,J4tK3VNMrfYG7YBt0ALD4vcndRhwUgNW2FOSG6cpRCp0JONHdX20snf5SEDu0ZwHQt_Vpqtfi0Tg9BJ0J5nh3mVgji6DHjS1gLrJ927XiAwN9l6Z6a4,&typo=1>
<image005.gif>973-425-8772
<image006.gif>973-425-0161

New Jersey<https://linkprotect.cudasvc.com/url?a=http%3a%2f%2fwww.mdmc-law.com%2foffices%2f%3fstate%3dNJ&c=E,1,VoRzHt-pc0xXoTXXjnDO8Nrqy-RM5haPLI9ZGHUDNtSBXkpPf6ny2-

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE | ) | 12-MDL-2323-AB |
| PLAYERS' CONCUSSION INJURY | ) | |
| LITIGATION | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| KEVIN TURNER and SHAWN WOODEN, | ) | |
| on behalf of themselves and | ) | |
| others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NATIONAL FOOTBALL LEAGUE and | ) | |
| NFL PROPERTIES, LLC, | ) | |
| successor-in-interest to | ) | |
| NFL Properties, Inc., | ) | Philadelphia, PA |
| | ) | July 11, 2018 |
| Defendants. | ) | 2:09 p.m. |

TRANSCRIPT OF TELEPHONE CONFERENCE
BEFORE THE HONORABLE ANITA B. BRODY
UNITED STATES DISTRICT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Class Plaintiffs: | TERRIANNE A. BENEDETTO, ESQUIRE<br>SEEGER WEISS, LLP<br>1515 Market Street<br>Suite 1380<br>Philadelphia, PA   19102 |
| For Tim Howard and Cambridge Capital Group, LLC: | JOHN P. LEONARD, ESQUIRE<br>McELROY, DEUTSCH, MULVANEY &<br>CARPENTER, LLP<br>1300 Mount Kemble Avenue<br>Morristown, NJ   07962 |

Audio Operator:            JAMES F. G. SCHEIDT


Transcribed by:            DIANA DOMAN TRANSCRIBING, LLC
                           P.O. Box 129
                           Gibbsboro, New Jersey  08026-0129
                           Office:  (856) 435-7172
                           Fax:     (856) 435-7124
                           Email:     dianadoman@comcast.net


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

3

1                          I N D E X

2

3    ARGUMENT:                                        PAGE

4      Re:  Motion for production of documents

5           By Ms. Benedetto                        5, 11

6           By Mr. Leonard                              8

7    RULING:

8      Re:  Motion for production of documents

9           By Judge Brody                             13

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                              Colloquy                          4

1          (The following telephone conference was held at 2:09

2     p.m.)

3               THE COURT:  Because we're going to be on the record,

4     who's on the phone?

5               MS. BENEDETTO:  Terrianne Benedetto from Seeger

6     Weiss for class plaintiffs, Your Honor.

7               THE COURT:  Who --

8               MR. LEONARD:  Good afternoon, Your Honor.  John

9     Leonard on behalf of Tim Howard and Cambridge Capital.

10              THE COURT:  One second.  One moment, please.  And,

11    Mr. Leonard, what firm are you from?

12              MR. LEONARD:  McElroy, Deutsch, Mulvaney and

13    Carpenter, Your Honor.

14              THE COURT:  Okay.  And are you a member of our -- of

15    our bar here?

16              MR. LEONARD:  I've been admitted pro hac vice.

17              THE COURT:  Oh, you have.  Okay.  That's all I

18    wanted to know.  I was going to tell you that you do it after

19    this conference if you haven't done it so far.  Okay?

20              MR. LEONARD:  Okay.  Okay.

21              THE COURT:  All right.  Now, this is your -- Ms.

22    Benedetto, this is your motion.  Would you like -- would you

23    like to argue it to me in front of Mr. Leonard who's now made

24    an appearance or --

25              MS. BENEDETTO:  Yes, Your Honor.

1        THE COURT:  All right.  Okay.

2        MS. BENEDETTO:  Okay.  So, Your Honor, we're here

3   because Cambridge still has not complied with the Court's

4   February 20th, 2018 order in which the Court had directed

5   Cambridge to turn over accounting for the ten class members

6   with retirement moneys, 401(k) rollovers invested at

7   Cambridge.  And they produced certain documents but they

8   haven't produced the documents that would show where and how

9   the moneys are invested.

10        Now, we still don't have -- we still don't know how

11  much is in each class member's account, but we do now know

12  based upon a document produced by a class member about a week

13  before our reply brief was due and which we submitted with our

14  reply brief which was Exhibit 29, we do know that what we had

15  suspected might be true is, in fact, true.

16        And that is that these class members' retirement

17  moneys were "invested in" the assignment agreements that

18  Cambridge entered into with class members, some 51 class

19  members other than the ten class members whose retirement

20  moneys were invested.

21        THE COURT:  Say that again -- explain that to me a

22  little better, if you don't mind, Ms. Benedetto.  What

23  happened to it?

24        MS. BENEDETTO:  Sure.  Sure, Your Honor.  So we

25  finally got this document from one of the ten class members

Benedetto - Argument                                    6

1    which was an email from Mr. Howard dated June 16th of 2017,

2    and that is attached as Exhibit 29 to our reply papers, and it

3    attaches the Cambridge Capital Partners portfolio valuation

4    and the Cambridge Capital Equity Options Opportunities

5    portfolio valuation.

6            And that indicates that where -- that the -- the

7    portfolio in which would be the class members' retirement

8    money were invested were actually the assignment agreements

9    that Cambridge had entered into with other class members, the

10   assignment agreements that Your Honor has now declared are

11   void.

12           So these class members' retirement moneys were used

13   to fund the cash advances that other class members received

14   under these assignment agreements.

15           Cambridge worked a little bit differently than the

16   other third-party funders that we're familiar with.  The other

17   third-party funders basically under the assignment agreements,

18   purchased a portion of the class members' potential future

19   monetary award for an immediate cash payment of significantly

20   less than the amount of the award that they were purchasing.

21           What Cambridge did was to provide the class members

22   who entered into assignment agreements with them with monthly

23   cash advances.  So now we know that that's where these ten

24   gentlemen's retirement moneys went.  We still don't know how

25   Cambridge initially was -- Your Honor had ordered them to

1    produce the accountings by March the 2nd.

2            Ms. Gail Milon had represented that a CPA, Mr. Bill

3    Bogan had been hired and that he would be able to produce the

4    audited accountings by the end of May.  And then in their

5    responsive papers that Cambridge filed in opposition to our

6    motion for sanctions, they've now said that Mr. Bogan needs

7    until July 31st to produce these audited accountings.

8            So we still don't know how much money Cambridge is

9    alleging is in each one of those class member's retirement

10   moneys investments.  We fear that it's either zero or close to

11   that because they used their money to pay these advances under

12   the now void assignment agreements.  And because the

13   assignment agreements are void, Cambridge is not going to be

14   making back the money that it had expected to make under the

15   exorbitant interest rates on the assignment agreements.

16           THE COURT:  Well, yes, but they will get back -- if

17   it's void, they will get back whatever they paid -- whatever

18   they -- I mean, they should get back whatever they -- whatever

19   they advanced.  Isn't that correct?

20           MS. BENEDETTO:  Assuming that Cambridge is willing

21   to enter into the rescission that's provided for in Your

22   Honor's December 8th order and also only at such time when

23   these -- when these class members with whom Cambridge entered

24   into these assignment agreements actually get a monetary

25   award.  Some of those, it might not be for years from now --

1    from now, if ever.

2              So -- and our fear is that -- that these gentlemen's

3    retirement moneys are gone, but we don't know that because,

4    you know, we can't get the information from Cambridge.

5    Frankly, they should have -- the document that I got from a

6    class member that was produced as our Exhibit 29 should have

7    been produced by Cambridge when it did the document

8    production.  And we -- we didn't get it from them.

9              THE COURT:  All right.  Okay.  Well, I certainly

10   think that that has to be done.  Let me hear from you, Mr.

11   Leonard.

12             MR. LEONARD:  Sure.  Thank you, Your Honor.  At the

13   outset, I'd like to apologize, because I was told yesterday

14   this was a conference.  Quite frankly, I didn't realize this

15   was a motion as I explained to I believe it was Your Honor's

16   clerk vis-a-vis email.  I'm actually on vacation, so I don't

17   have the papers with me.

18             But let me say this.  Class counsel sent out

19   discovery requests.  This is a motion looking for sanctions

20   for failure to respond to --

21             THE COURT:  Not only sanctions.  The most important

22   thing right now -- I'll decide sanctions -- is to get them the

23   information they ask for.  And when --

24             MR. LEONARD:  Absolutely, Your Honor.

25             THE COURT:  -- and that's my -- that's my goal, and

1   I'm not going to -- I'm going to be dogged about it until I

2   get the -- until they get the information so that they can

3   make out their case.  Right now it sounds a little bit --

4   well, from what -- what the plaintiff has said, this is --

5   these are very serious allegations if you have actually used

6   their retirement money to pay for other advances.

7            MR. LEONARD:  Advances, Your Honor, right.

8            THE COURT:  Okay.

9            MR. LEONARD:  So with -- with respect to the

10  information, Cambridge and Mr. Howard have both given all the

11  information they have.  And I realize class counsel --

12           THE COURT:  How could they have all the information?

13  They want -- she wants to know, and I think rightly so, what

14  happened to the retirement money that was taken from these

15  people who you now know through the NFL head concussion case

16  and given to basically other class members.  Is my

17  interpretation correct, Ms. Benedetto?

18           MS. BENEDETTO:  Yes, Your Honor.

19           THE COURT:  Okay.  She's entitled to know that.

20  What happened to the money?

21           MR. LEONARD:  Your Honor, nobody's saying they're

22  not entitled to know that.  What we are saying is that the

23  financial information that they have, and these folks whose

24  money -- there's 27 investors, okay, 15 of which are NFL

25  players, ten of which have qualified funds that are at issue

1    here, all of those investors are in a number of different

2    things.  Not everybody's into advances, not everybody's not in

3    advances and some are --

4         THE COURT:  All right.  I want to know all those

5    players, exactly what happened to the money.  There's no

6    reason --

7         MR. LEONARD:  And that's exactly --

8         THE COURT:  Yes.

9         MR. LEONARD:  -- Your Honor, that's exactly what's

10   going on, and with regard to our opposition papers we

11   submitted, so Cambridge has gone out and retained a well-

12   regarded separate and distinct certified accountant to do an

13   audit of all of the documents.  We provided that with our

14   opposition papers.

15        That's being paid for by Cambridge, and Mr. Howard

16   quite frankly, and that entire analysis will be done no later

17   than July 31 or a little more than two weeks from now.  I

18   mean, they are literally going back and forensically going

19   back and piecing it together.

20        As we pointed out in our papers, one of the problems

21   we had, and class counsel is very familiar with this, is an

22   individual providing them information or information, a Don

23   Reinhard, is currently incarcerated who was there and left.

24   He was the person setting out these investment vehicles.  He

25   left with all the documents, absconded, basically trying to

1   set up a mirror company like Cambridge and take all of the

2   Cambridge investors.

3          Cambridge has been scattering, trying to piece these

4   records together, and they've had to bring in forensic people

5   to do that.  They had given class counsel what they had.  I

6   understand.  I understand they want more.  I understand you

7   want more, Your Honor.  They want more.

8          But they have given what they have to give, and

9   they've gone out and retained an outside accounting firm to go

10  through and recreate the documents Mr. Reinhard has absconded

11  with so that every penny is accounted for.  Nobody is --

12  nobody is sitting there -- nobody has absconded with their

13  money.  Their money has been invested --

14          MS. BENEDETTO:  Your Honor, may --

15          MR. LEONARD:  -- in a number of items.

16          THE COURT:  Yes, you can respond.

17          MS. BENEDETTO:  -- may I respond, Your Honor?

18          THE COURT:  Yes.

19          MS. BENEDETTO:  Mr. Reinhard left the company as per

20  Mr. Howard in February of 2017, over a year ago.  Mr. Howard

21  sent an email which is our Exhibit 29, on June 16th of 2017,

22  so four months after Mr. Reinhard left allegedly with all

23  these documents, sending this class member these portfolio

24  valuation details.

25          And not only that, why didn't Mr. Howard and

1   Cambridge produce what is our Exhibit 29?  Why did I have to

2   get it from a class member?

3           THE COURT:  Okay.  None of those things is very

4   good.  What I -- I think the only thing I can do at this point

5   is -- and I will decide sanctions on it but not at the moment.

6   What date are you going to produce this?  I have you on the

7   record now, Mr. Leonard.  What date are you going to produce

8   this information to Ms. Benedetto?

9           MR. LEONARD:  As I said in the opposition papers,

10  Your Honor, and we submitted a statement from the certified

11  accountant doing it, the information will be provided no later

12  than July 31 or two weeks from -- whatever random date is --

13          THE COURT:  Okay.  I'm going to -- Ms. Benedetto, I

14  am going to be away for a while -- for a little period of

15  time, and I'm going to set up -- let me see what I can do.

16  Yes.  Let's have a conference at ten o'clock on -- let's see,

17  one second -- let's have a conference on -- are you going to

18  be here for the conference on the 14th -- Tuesday, the 14th of

19  August?

20          MR. LEONARD:  That hasn't been --

21          MS. BENEDETTO:  Your Honor, are you speaking to me,

22  Ms. Benedetto?

23          THE COURT:  Yes.

24          MS. BENEDETTO:  I can -- I'm available on August

25  14th.  I can certainly be here.

1          THE COURT:  Okay.  All right.  I'm going to have a

2     conference by telephone at two o'clock in the afternoon on

3     August the 14th.  And I expect all of that information, Mr.

4     Leonard, to be with Ms. Benedetto.

5          And if, in fact, it hasn't been delivered as you

6     just promised with each and every member of the class that

7     has invested with you, I expect an audited submission to -- a

8     report due to Ms. Benedetto by the -- by the end of July, July

9     28th, is that correct?  Is that the date you said you could do

10    it?

11         MR. LEONARD:  That's -- whatever the accountant said

12    in his letter, we submitted, yes.  It's going to be an

13    accounting of every member and their account and where the

14    money went --

15         THE COURT:  All right.

16         MR. LEONARD:  -- yes.

17         THE COURT:  Okay.  I expect it to be in Ms.

18    Benedetto's hand by July 28th.  What?  July 31st, I'm sorry.

19    July 31st, I expect it to be in Ms. Benedetto's hand.  Ms.

20    Benedetto will then have two weeks to review it, and we'll be

21    back on the phone on the record, and we'll have to see where

22    we go from there.

23         I expect this to be in Ms. Benedetto's hand by July

24    31st.  And when I come back, I expect -- I expect to hold you

25    responsible, Mr. Leonard, that you will deliver what -- what

1    you allege that you're going to deliver.  Okay?

2              MR. LEONARD:  Okay, Your Honor.

3              THE COURT:  All right.

4              MS. BENEDETTO:  Yes, Your Honor.

5              THE COURT:  Thank you.

6              MS. BENEDETTO:  Thank you.

7              THE COURT:  Okay.

8         (The telephone conference concluded at 2:23 p.m.)

9                          *  *  *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          **C E R T I F I C A T I O N**

2

3

4          I, Lois A. Vitarelli, court approved transcriber,

5   certify that the foregoing is a correct transcript from the

6   official electronic sound recording of the proceedings in the

7   above-entitled matter.

8

9

10

11

12   _____   July 18, 2018

13   LOIS A. VITARELLI

14   DIANA DOMAN TRANSCRIBING, LLC

15

16

17

18

19

20

21

22

23

24

25