UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB <br> MDL No. 2323 <br> **Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*, <br><br>    Plaintiffs, <br><br>    v. <br><br> National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc., <br><br>    Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**CO-LEAD CLASS COUNSEL'S REPLY TO THE ALEXANDER OBJECTORS' OBJECTIONS TO FIRST VERIFIED PETITION FOR AN AWARD OF <u>POST-EFFECTIVE DATE COMMON BENEFIT ATTORNEYS' FEES AND COSTS</u>**

The sole objections to the First Verified Petition of Co-Lead Class Counsel for an Award of Post-Effective Date Common Benefit Attorneys' Fees and Costs (ECF No. 10128) ("First Implementation Phase Petition") were those filed by the so-called Alexander Objectors and their counsel, Lance H. Lubel (ECF No. 10165) ("Objections"). The Objections are simply the latest part of an unrelenting campaign to thwart the compensation of those counsel who secured and defended the Settlement, and now have for the last year and a half have assiduously overseen its

successful launch, with over half a billion dollars in Monetary Award determinations rendered.[1] In large part, the Objections simply recycle earlier arguments, ignoring the fact that this Court has already rejected them, either explicitly or implicitly.  The Court should overrule them.

*The "Fee Fund" Is Protected – CMO-5*

Objectors make a scattershot attack on the efficiency of Co-Lead Class Counsel's work on the Settlement that reflects sheer ignorance of the extensive work that has been done (which a simple perusal of the public docket would quickly demonstrate) and largely on the rejected contention that CMO-5 (ECF No. 3710) is not being complied with.  Objections at 4-7; *see* ECF No. 9510 (Order denying Alexander Objectors' motion to compel compliance with CMO-5).  As is clear in the narrative in the First Implementation Phase Petition describing the work undertaken since the Effective Date, Co-Lead Class Counsel followed the mandates of CMO-5.  As with the initial Fee Petition, Co-Lead Class Counsel reviewed the time and expenses submitted by each firm and challenged any time or expense that was not properly submitted under CMO-5.

Objectors' concern with the amount of work undertaken by Class Counsel since the Effective Date evinces their failure to read the First Implementation Phase Petition or appreciate the challenges posed by this long-term Settlement Program and the commitments needed to get it up and fully running.  Much of the work described in the petition will not need to be continued or repeated in the future or will be performed on a much-diminished scale going forward.  Such work included the demands of establishing the registration and claims processes, selection of the members of the AAP and AAPC, and building the physician networks for the MAF and BAP.  In advocating on behalf of Class Members, Co-Lead Class Counsel has also briefed some key disputes with the NFL over fundamental terms of the Settlement Agreement, such as the definition

---

[1] *See* www.nflconussionsettlement.com (last accessed Aug. 2, 2018).

of Eligible Season or the "generally consistent" standard at the heart of diagnoses made outside of the BAP. Similarly, the work Co-Lead Class Counsel that has done to protect Class Members from deceptive practices and prohibited lending arrangements should be winding down in the near future, especially once the Third Circuit resolves the appeals of this Court's rulings with respect to prohibited assignments of Monetary Awards.

Such crucial, but admittedly time-demanding tasks will not figure as prominently, if at all, in future fee petitions. Instead, future post-Effective Date fee petitions will reflect only that time dedicated to the continuing support of the Settlement and advocacy for Class Members as they seek to participate in the benefits of the Settlement. Put in layman's terms, these initial efforts were tantamount to the "startup" costs entailed in launching an enterprise and are not likely to recur. To be sure, at every juncture, there may be unanticipated issues that develop and demand extensive attention (such as the third-party funding issue or briefing of disputes with the NFL), in which Co-Lead Class Counsel will engage with the same efficiency and advocacy as he has to date. As can reasonably be forecast at present, however, future implementation-phase fee and expense petitions should be for markedly lower amounts.

The submission to the Court reflects efficient use of resources to ensure that the Settlement delivers the benefits promised to the Retired NFL Football Players and their families. No doubt, the Court will raise any concerns it has with any of the submissions before rendering a decision on the petition.

*The Implementation Work Is Fully Documented*

Next, Objectors make the baseless accusation that "Co-Lead Class Counsel fails to support the petition with any documentation." Objections at 7. The First Implementation Phase Petition was based on the records submitted by each of the firms that were asked to undertake common-

benefit work since the Effective Date of the Settlement.  These records were reviewed and, after discussion with each firm, any items that could not be properly submitted under CMO-5 were not considered and were removed from the submission.  The work undertaken since the Effective Date is described in detail over the course of fifteen pages in the First Implementation Phase Petition.  In addition, the underlying time records from each firm have been provided to the Court for *in camera* review.[2]

Objectors' demand for the hourly rate of each timekeeper is also unavailing.  In the May 24, 2018 Allocation Order (ECF No. 10019), the Court fixed the hourly rate that was to be used by each type of timekeeper (partner, counsel, associate, and paralegal).  *See infra* at 6.  Similarly, the petition makes clear that the "range of dates for the hours allegedly worked" is from the

---

[2]  Objectors once again take issue with the submission of time records *in camera* (Objections at 8 & n.1), but as Co-Lead Class Counsel has noted on several occasions, that is entirely proper.  *In camera* review of billing records guards against privileged or confidential matters being divulged, *Team Sys. Int'l, LLC v. Haozous*, No. 16-6277, 2017 WL 3616326, at *3 (10th Cir. Aug. 23, 2017) (citing cases), and courts often review time records *in camera*, *e.g.*, *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 623 (8th Cir. 2017); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 188 (W.D.N.Y. 2005); *Seiffer v. Topsy's Int'l, Inc.*, 80 F.R.D. 272, 278 (D. Kan. 1978).  Besides, Objectors have no right to pore over time records as a general matter.  *See Cassese v. Williams*, 503 F. App'x 55, 58 (2d Cir. 2012) ("[W]e are aware of no authority holding that class counsel must open its books to objectors for inspection by virtue of filing a fee motion.").  That is especially so here, where any fees that the Court awards will be dispensed out of the funds that the NFL has *already* voluntarily paid directly into the AFQSF, pursuant to sections 21.1 and 23.7 of the Settlement Agreement (ECF No. 6481-1, at 81-82, 90).  Contrary to Objectors' assumption, that any implementation-phase common benefit fees will not be awarded as a percentage of the recovery but, rather, will be based on firms' lodestars does not transform this into the equivalent of a fee-shifting petition.  In a typical fee-shifting application, a party responsible for payment of fees stands in an adversarial relationship with respect to the petition and therefore has the right to question the reasonableness of petitioning counsel's lodestar in order to minimize its exposure.  *E.g.*, *Fickinger v. C.I. Planning Corp.*, 646 F. Supp. 622, 633 (E.D. Pa. 1986) (noting interest of "fee-shifting statutory defendants in contesting the amount of the fee"); *Henderson v. Crimmins*, 147 F. Supp. 3d 780, 790 (N.D. Iowa 2015) ("Under a fee-shifting dispute, defendants are entitled to the same efficiencies reasonably expected by a fee-paying plaintiff.").  Such is not the case here.

Effective Date (January 7, 2017) to May 24, 2018.  Ultimately, the Court is familiar with the work done since the Effective Date to implement the Settlement and by Class Counsel to advocate on behalf of Class Members.

*There Is No "Double-Billing"*

Objectors accuse Co-Lead Class Counsel of double-billing for work that was already the subject of the initial fee petition (ECF No. 7151).  Objections at pp. 9-11.  That is baseless.  The initial fee petition was filed on February 13, 2017 and reflected only work performed prior to the Effective Date.  Indeed, most of the time and expenses reported by firms in support of the initial Fee Petition was through on July 15, 2016, shortly before the appeals challenging the Settlement's final approval wound their way to the Supreme Court.  Moreover, the Court made clear in the Allocation Order that the First Implementation Phase Petition could seek compensation only for work performed and expenses incurred since the Effective Date.[3]  *See* ECF No. 10019, at 25.  To be sure, some of the implementation work (e.g., establishing the registration and claims processes) began before the Effective Date and is discussed in both fee submissions, but it was not billed twice.   No time was submitted in both the initial Fee Petition and the First Post-Effective Date Fee Petition.

---

[3] If anything, given that some firms' supporting declarations in the February 2017 fee petition reported time only through July 15, 2016 and the Court's directive that the First Implementation Phase Petition was to reflect only common benefit time and expenses since the Effective Date, (i.e., January 7, 2017), Class Counsel have reported time and expenses that could not be considered for the initial fee petition or for the instant petition.

*The First Implementation Phase Petition Uses the Rates Set by the Court*

Objectors maintain that Co-Lead Class Counsel's use of the rates set by the Court is unreasonable.[4] Objections at 11-13. That argument disregards the Allocation Order, in which the Court prescribed that "Class Counsel should adopt the blended billing rates used in the present allocation." ECF No. 10019, at 25. The Court specifically delineated those billing rates: "The average billing rate for partners is $758.35. The average billing rate for 'of counsel' attorneys is $692.50. The average billing rate for associates is $486.67. The average billing rate for contract attorneys is $537.50. The average billing rate for paralegals is $260.00." *Id.*, at 7 n.4. Objectors wrongly focus on the blended rate that the Court had used in its earlier determination of the overall combined lodestar *solely for cross-check purposes* (ECF No. 9860, at 16), rather than the specific rates prescribed for each category of timekeeper for purposes of both allocation of the common benefit fee award and compensation of implementation-related common benefit work.[5]

---

[4] With respect to Objectors' concerns about the time dedicated by Brad Sohn in connection with the dispute over the definition of Eligible Seasons (Objections at 12 n.6), Mr. Sohn's time reflected in the First Implementation Phase Petition relates solely to his coordinated efforts with Co-Lead Class Counsel, not matters such as his work on drafts of his client's briefing and communications with his client. Mr. Sohn's specific work in collaborating with Co-Lead Class Counsel conferred a common benefit on the Class and rightly deserve to be compensated as such.

[5] If anything, use of that earlier blended rate would mandate a larger award for most firms. Thus, for example, if Seeger Weiss' total 13,552 hours were compensated at the $623.05 lodestar cross-check blended rate employed by the Court in its April 5, 2018 decision, Seeger Weiss would have over $8.44 million in lodestar for professional and para-professional time rather than $7.6 million. The overall lodestar for all firms claimed in the First Implementation Phase Petition would increase by nearly $1 million.

Ultimately, Objectors' arguments boil down to an attack on the processes established by the Court for awards of attorneys' fees and costs in this litigation and a disregard for its rulings. As with the initial fee petition and allocation, the Court entrusted Co-Lead Class Counsel to prepare submissions for consideration by the Court, and it will review the record before it, detailing the time and expenses dedicated to the Settlement implementation since the Effective Date by Class Counsel  In so doing, the Court can evaluate and weigh both the services to and the interests of the Settlement Class.  Objectors' demands for appointment of a fee committee or an auditor to review time records (Objections at 13-14) are no more meritorious now than they were before the Court made its initial common benefit fee award.  Their alternative demand for discovery (Objections at 15) similarly has no more to commend it.[6]  The First Implementation Fee Petition is based on an efficient use of resources in furtherance of Class Members' interests.  The Court is familiar with the efforts undertaken to roll out the Settlement Program and is well situated to make an informed determination as to the reasonableness of this petition.

---

[6]    This Court has generally refused to allow discovery in connection with class counsel fee petitions.  *See In re Linerboard Antitrust Litig.*, MDL 1261, 2010 WL 3928638, at * 5 (E.D. Pa. Oct. 5, 2010) (citing cases); *see also* David F. Herr, *Annotated Manual for Complex Litigation (Fourth)* § 14.224, at 240 (rev. ed. 2016) ("Discovery in connection with fee motions should rarely be permitted"; advisable where "attorneys make competing claims to settlement fund designated for the payment of fees") (footnote omitted).

## CONCLUSION

Based on the foregoing, the Court should overrule the Alexander Objectors' Objections and approve the First Implementation Phase Petition.

Date:  August 3, 2018                                       Respectfully submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
cseeger@seegerweiss.com
Telephone:  (212) 584-0700

***CO-LEAD CLASS COUNSEL***

## **CERTIFICATE OF SERVICE**

I, Christopher A. Seeger, hereby certify that a true and correct copy of the foregoing reply was served electronically via the Court's electronic filing system on the date below upon all counsel of record in this matter.

Dated: August 3, 2018                                             Respectfully submitted,

                                                                                     */s/ Christopher A. Seeger*
                                                                                     Christopher A. Seeger