UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br>                    Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties, LLC, *successor-in-interest to NFL Properties, Inc.*,<br>                    Defendants. | No. 14-cv-00029-AB |
| THIS DOCUMENT RELATES TO:<br><br>*Martin* v. *Kansas City Chiefs Football Club, LLC*<br><br>*Lewis* v. *Kansas City Chiefs Football Club, LLC* | <br><br>No. 14-cv-3381<br><br>No. 14-cv-1995 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT KANSAS CITY CHIEFS FOOTBALL CLUB INC.'S MOTION TO DISMISS THE COMPLAINT <u>FILED BY SETTLEMENT CLASS MEMBER ANITA MARTIN</u>**

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii
PRELIMINARY STATEMENT .......................................................................................... 1
BACKGROUND .................................................................................................................. 2
    A.    Settlement Agreement ............................................................................... 2
    B.    Plaintiff Anita Martin ............................................................................... 5
ARGUMENT ........................................................................................................................ 7
    I.    PLAINTIFF'S CLAIM WAS RELEASED UNDER THE SETTLEMENT
        AGREEMENT AND SHOULD BE DISMISSED ...................................... 7
    II.    PLAINTIFF'S CLAIM IS BARRED BY THE FINAL ORDER AND JUDGMENT
        AND SHOULD BE DISMISSED ............................................................. 11
CONCLUSION .................................................................................................................... 13

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Chartener* v. *Provident Mut. Life Ins. Co.*,
  No. 02-cv-8045, 2004 WL 1091027 (E.D. Pa. May 13, 2004) ........................................ 12

*In re Diet Drugs Prods. Liab. Litig.*,
  MDL No. 1203, 2008 WL 732028 (E.D. Pa. Mar. 18, 2008) ............................................ 8

*Durkin* v. *Shields*,
  No. 92-cv-1003, 1997 WL 808651 (S.D. Ca. June 5, 1997) ............................................ 12

*In re: Imprelis Herbicide Mktg., Sales Prac. & Prods. Liab. Litig.*,
  No. 11-md-2884, 2014 WL 6901120 (E.D. Pa. Dec. 5, 2014) .......................................... 8

*In re: Imprelis Herbicide Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  No. 11-md-2884, 2015 WL 7575910 (E.D. Pa. Nov. 25, 2015) ........................................ 7

*In re Imprelis Herbicide Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  Nos. 11-md-2884, 11-cv-7599, 2014 WL 348593 (E.D. Pa. Jan. 31, 2014) .................... 10

*Marmon Coal Co.* v. *Dir., Office of Workers' Comp. Programs*,
  726 F.3d 387 (3d Cir. 2013) .............................................................................................. 12

*McGowan Inv'rs LP* v. *Keefe Bruyette & Woods, Inc.*,
  540 F. Supp. 2d 571 (E.D. Pa. 2008) ............................................................................. 7, 8

*In re Nat'l Football League Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016) ........................................................................................... 3, 9

*In re PaineWebber Ltd. P'ships Litig.*,
  147 F.3d 132 (2d Cir. 1998) .............................................................................................. 10

*In re Processed Egg Prods. Antitrust Litig.*,
  130 F. Supp.3d 945 (E.D. Pa. 2015) ................................................................................. 10

*In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*,
  177 F.R.D. 216 (D.N.J. 1997) ............................................................................................ 8

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  164 F.R.D. 362 (S.D.N.Y. 1996) ...................................................................................... 10

*Pyle* v. *N.Y. Life Ins. Co.*,
  No. 07-cv-00360, 2008 U.S. Dist. LEXIS 21638 (W.D. Pa. Mar. 19,
  2008) ........................................................................................................................... 11, 12

*Toscano* v. *Conn. Gen. Life Ins. Co.*,
    288 F. Appx. 36 (3d Cir. 2008) .................................................................................... 12

*In re WorldCom, Inc. Secs. Litig.*,
    No. 02-cv-3288, 2005 WL 1048073 (S.D.N.Y. May 5, 2005) ........................................ 10

Defendant the Kansas City Chiefs Football Club, Inc. (the "Chiefs") respectfully submits this memorandum of law in support of its motion to dismiss the Complaint by Settlement Class Member Anita Martin ("Martin") in *Martin* v. *Kansas City Chiefs Football Club, LLC*, No. 14-cv-3381 (E.D. Pa.) (ECF No. 1-1, Ex. A) and *Lewis* v. *Kansas City Chiefs Football Club, LLC*, No. 14-cv-1995, and the Short Form Complaint by Martin in *Martin* (ECF No. 4) and in *In re: National Football League Players Concussion Injury Litigation*, 12-md-2323 (E.D. Pa. July 27, 2017) (ECF No. 8171).

## PRELIMINARY STATEMENT

Martin's putative claim—released under the Class Action Settlement Agreement and dismissed with prejudice under this Court's Final Order and Judgment approving it—is barred by the Settlement Agreement and claim preclusion, and should be dismissed.

Martin is a Derivative Claimant and Settlement Class Member who is subject to this Court's continuing and exclusive jurisdiction, and who, through the Court-approved Settlement Agreement, released any claims that "could have been asserted in the Class Action," as well as any claims against the Chiefs relating to "head, brain and/or cognitive injury," "concussions and/or subconcussive events," "chronic traumatic encephalopathy" ("CTE"), and loss of consortium.  The Settlement's notice program comported with due process and the Federal Rules, and plainly advised Martin that she would be bound by the Settlement Agreement's terms unless she opted out of the Settlement Class by October 14, 2014; Plaintiff chose not to do so.  Nonetheless, she now purports to assert the very claim that she released in the Settlement.  It is well settled that Plaintiff cannot re-litigate a claim she voluntarily released, and her claim should therefore be dismissed.

Moreover, the Court's April 2015 Final Order and Judgment dismissed all "Related Lawsuits" pending in MDL 2323, *including the action Martin is attempting to litigate here*. Even if the Final Order and Judgment had not expressly dismissed Martin's lawsuit, her claims would nonetheless be barred under the doctrine of claim preclusion. The Final Order and Judgment expressly dismissed all claims that Settlement Class Members, including Plaintiff, asserted or that they "could have . . . asserted in the Class Action Complaint or in any other Related Lawsuit." Martin's purported claim falls squarely within the Final Judgment's dismissal because she alleges purported "concussive and subconcussive" head injuries—including, "upon [Martin's] information and belief," CTE—sustained as a result of playing in the National Football League (the "NFL"). Thus, the doctrine of claim preclusion bars Martin's attempt to re-litigate that claim now.

Accordingly, because Martin's claim—asserted both in her original complaint (filed in *Martin* and consolidated with *Lewis*) and in her Short Form Complaint (filed in *Martin* and in MDL 2323)—was released by the Settlement and dismissed by the Final Order and Judgment, she fails to state a claim upon which this Court may grant relief, and her claim should therefore be dismissed.

## BACKGROUND

**A.     Settlement Agreement**

On July 7, 2014, this Court issued an order preliminarily approving the Class Action Settlement between the NFL and NFL Properties LLC (collectively, "the NFL Parties"), and the proposed Settlement Class, consisting of:

> All living NFL Football Players who, prior to the date of the Preliminary Approval and Class Certification Order [July 7, 2014], retired, formally or informally, from playing professional football with the NFL or any Member Club . . . ("Retired NFL Football Player"); . . . and [s]pouses, parents, children who are dependents, or any other persons who properly under applicable state

2

   law assert the right to sue independently or derivatively by reason of their relationship with a Retired NFL Football Player ('Derivative Claimants').

(Order ¶¶ 2(a), ECF No. 6084 (emphasis added); *see also* Class Action Settlement Agreement (as amended, the "Settlement Agreement") §§ 1.1, 2.1, ECF No. 6481-1.)  Pursuant to the Court's order, the NFL Parties disseminated notice to the Settlement Class, describing, among other things, the terms of the Settlement Agreement and the deadlines for opting out.  (Order ¶ 4, ECF No. 6084.)

   After significant briefing and a full fairness hearing, this Court issued its Final Order and Judgment on April 22, 2015 (as amended on May 8, 2015) approving the Settlement Agreement, certifying the Settlement Class, and concluding that the settlement notice program "satisf[ied] the requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e) [and] the United States Constitution . . . , and constituted the best notice practicable under the circumstances."  (Am. Final Order & J. ¶¶ 2–4, 7, ECF No. 6534.)  Following an appeal by certain objectors, the Third Circuit affirmed the Court's Final Order and Judgment, stating unequivocally that "the District Court was right to certify the class and approve the settlement."  *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 420 (3d Cir. 2016).

   Under the terms of the Settlement approved by this Court and affirmed by the Third Circuit, Settlement Class Members had the right to opt out of the class until October 14, 2014.  (Order ¶ 4(g), ECF No. 6084.)  Those who did not opt out are bound by the Settlement Agreement's terms and the Court's Final Order and Judgment.  Pursuant to the Settlement Agreement, Settlement Class Members "waive[d] and release[d] . . . the Released Parties . . . from any and all past, present and future claims," whether "contingent or non-contingent, known or unknown, suspected or unsuspected, foreseen or unforeseen, matured or unmatured,

accrued or unaccrued, liquidated or unliquidated," that related in any way to, among other claims, those (i) "arising out of, or relating to, head, brain and/or cognitive injury, as well as any injuries arising out of, or relating to, concussions and/or subconcussive events," (ii) "arising out of, or relating to, CTE," (iii) "arising out of, or relating to, loss of support, services, consortium, companionship, society, or affection, or damage to familial relations," or (iv) that "could have been asserted in the Class Action Complaint or in any Related Lawsuit." (Settlement Agreement § 18.1(a); Am. Final Order & J. ¶ 11, ECF No. 6534; *see also* Am. Final Order & J. ¶ 10 ("expressly incorporat[ing]" the Settlement Agreement's release provisions into the Final Order and Judgment), ECF No. 6534.) The "Released Parties" expressly include "each of the Member Clubs," among other entities. (Settlement Agreement § 2.1(bbbb).) This Court retained "continuing and exclusive jurisdiction" over the Settlement Agreement and Settlement Class Members, including "continuing and exclusive jurisdiction to interpret, implement, administer and enforce the Settlement Agreement." (Am. Final Order & J. ¶ 17, ECF No. 6534; *see also* Settlement Agreement § 27.1 ("Any disputes or controversies arising out of, or related to, the interpretation, implementation, administration, and enforcement of this Settlement Agreement will be made by motion to the Court. In addition . . . each Settlement Class Member [is] hereby deemed to have submitted to the exclusive jurisdiction of this Court for any suit, action, proceeding, or dispute arising out of, or relating to, this Settlement Agreement.").) Finally, the Court's Final Order and Judgment expressly incorporated the Settlement Agreement's terms and dismissed with prejudice the claims asserted, or that could have been asserted, in the Class Action Complaint and all "Related Lawsuits," a term covering all actions, including Martin's here, "brought by

one or more Releasors against one or more Released Parties pending in the Court." (Settlement Agreement § 2.1(zzz); *see also* Am. Final Order & J. ¶ 8, 15–16, ECF No. 6534.)

### B. Plaintiff Anita Martin

Martin is a Settlement Class Member whose former spouse, Christopher Martin, was a Retired NFL Football Player who played NFL football from 1983 to 1994, including playing for the Chiefs from 1988 to 1993. (*See* Short Form Compl. ¶ 14, (July 27, 2017), ECF No. 8171 ("Martin SFC"); *see also* Martin SFC, Appx. A ¶ 8; Order ¶ 2(a)(iii), ECF No. 6084 (defining Derivative Claimant Settlement Class Members as persons suing "by reason of their relationship with a Retired NFL Football Player").) Martin and Christopher Martin were married from 1986 to 2006. (Martin SFC, App'x A ¶ 43.)

On January 9, 2014, Martin served the Chiefs with an action in Missouri state court, which the Chiefs timely removed. (Notice of Removal ¶ 1, *Martin* v. *Kansas City Chiefs Football Club, Inc.*, No. 14-cv-132 (W.D. Mo. Feb. 7, 2014), ECF No. 1.) The complaint asserted a claim for loss of consortium arising out of the Chiefs' purported negligence and fraud, which allegedly caused Christopher Martin to sustain "multiple concussive and subconcussive head injuries" and, "upon information and belief," CTE. (Martin SFC, Appx. A ¶¶ 3, 42–47.) Martin alleged that the Chiefs knew or should have known of the purported link between "repetitive head trauma in football and neurological diseases, including CTE, [but] never warned Mr. Martin and instead willfully misrepresented and/or concealed the risks." (*See id.*, Appx. A ¶ 38.) As a result of her ex-husband's alleged injuries, Martin alleges that she lost the "services, support, maintenance, guidance, companionship and comfort of her ex-husband," "spen[t] money for medical care and household care of treatment of her ex-husband," and was deprived of "the earnings of her ex-husband." (*Id.* Appx. A ¶ 46.)

5

On March 13, 2014, the United States District Court for the Western District of Missouri consolidated Martin's action with that of her ex-husband (*Lewis* v. *Kansas City Chiefs Football Club, LLC*, No. 14-cv-1995), also pending in the same court. (Order at 2, *Martin* v. *Kansas City Chiefs Football Club, Inc.*, No. 14-cv-132 (W.D. Mo. Mar. 13, 2014), ECF No. 32.) On June 9, 2014, the Judicial Panel on Multidistrict Litigation transferred the consolidated actions to this Court as part of *In re: National Football League Concussion Injury Litigation*, MDL No. 2323 ("MDL 2323"), holding that the actions shared numerous common questions of law and fact with the actions already pending in MDL 2323. *See* Order at 1, MDL 2323 (J.P.M.L. June 9, 2014), ECF No. 625. The deadline for opting out of the Settlement passed several months later, on October 14, 2014, but Martin—who has been represented by counsel ever since she filed her petition in January 2014—chose not to exercise her right to opt out.[1] (NFL Concussion Settlement: Opt Out Report, Ex. 1 at 5, ECF No. 6340-1.) Nonetheless, Martin continues to press her claim against the Chiefs, and most recently, on July 27, 2017, she filed a Short Form Complaint in her underlying action (*Martin* v. *Kansas City Chiefs Football Club, LLC*) and in MDL 2323, which incorporated by reference the allegations and claim asserted in her state court petition.

\*     \*     \*

For the reasons set forth below, the Chiefs respectfully request that this Court dismiss Plaintiff's claim—which is barred by the plain terms of the Settlement's releases and this Court's Final Order and Judgment—with prejudice.

---

[1] Martin's ex-husband, Christopher Martin, timely opted out of the Settlement Agreement on October 14, 2014. (*See* NFL Concussion Settlement: Opt Out Report, Ex. 1 at 5, (Nov. 3, 2014), ECF No. 6340-1 (listing timely opt outs).)

6

## ARGUMENT

The Court should dismiss Martin's claim—asserted both in her original complaint (filed in *Martin*) and in her Short Form Complaint (filed in *Martin* and in MDL 2323)—because it was released under the terms of the Settlement Agreement and dismissed with prejudice by this Court's Final Order and Judgment.

### I. PLAINTIFF'S CLAIM WAS RELEASED UNDER THE SETTLEMENT AGREEMENT AND SHOULD BE DISMISSED

It is well settled that "[a]n individual claim by a person who was a class member in a prior class action suit is barred by a settlement of the class action where the settlement includes a release applicable to his later individual action." *McGowan Inv'rs LP v. Keefe Bruyette & Woods, Inc.*, 540 F. Supp. 2d 571, 576 (E.D. Pa. 2008) (Brody, J.); *see also In re: Imprelis Herbicide Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 11-md-2884, 2015 WL 7575910, at *1, 3 (E.D. Pa. Nov. 25, 2015) (granting, *inter alia*, a motion to dismiss where plaintiff was "a class member who is properly bound by the Settlement"). A prior release bars a plaintiff's current claim where it (1) applies to the plaintiff; (2) circumscribes the asserted claims; and (3) is legally enforceable. *McGowan Inv'rs LP*, 540 F. Supp. 2d at 576. That is precisely the case here. Plaintiff is indisputably a Settlement Class Member who could have opted out of the Settlement Class, but did not. The Settlement's release unambiguously bars the football-related head injury claim she asserts here, and the Settlement is legally enforceable, as this Court and the Third Circuit have found.

Martin plainly falls within the definition of Settlement Class Member—namely, as a Derivative Claimant whose claim for loss of consortium arises from her status as ex-wife of Christopher Martin, himself a Retired NFL Football Player who ended his 6-year NFL career in 1993. *See supra* at § B. Although Christopher Martin opted out of the

7

Settlement, Plaintiff did not, and she is therefore bound by its provisions, including those provisions releasing (i) "all past, present and future claims" against the Chiefs "arising out of, or relating to, head, brain and/or cognitive injury, as well as any injuries arising out of, or relating to, concussions and/or subconcussive events . . . [or] CTE," or (ii) claims "arising out of, or relating to, loss of support, services, consortium, companionship, society, or affection, or damage to familial relations." (Settlement Agreement § 18.1; *see also* Settlement Agreement § 2.1(bbbb) (defining "Released Parties").) Here, Martin not only alleges that her ex-husband suffered from head injuries (including, upon information and belief, CTE), but also that her own damages are the result of being deprived of her ex-husband's services, companionship, and earnings because of those injuries. (*See* Martin SCF, Appx. A ¶ 46.) This claim is unquestionably covered by the Settlement's releases, and Martin's claim is therefore barred and should be dismissed. *See In re: Imprelis Herbicide Mktg., Sales Prac. & Prods. Liab. Litig.*, No. 11-md-2884, 2014 WL 6901120, at *1–3 (dismissing claims of plaintiffs who had released their claims in connection with a class action settlement); *McGowan Inv'rs LP*, 540 F. Supp. 2d at 576 (settlement class member's claim was "barred by a settlement of the class action where the settlement include[d] a release applicable to his later individual action."); *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 177 F.R.D. 216, 229 (D.N.J. 1997) ("As part of the Final Order and Judgment, this Court entered a permanent injunction prohibiting class members, or those acting on their behalf, from pursuing separate lawsuits involving claims covered by the Settlement," and the Court therefore "has the power to dismiss actions either brought before the Court or, pursuant to 28 U.S.C. § 1407, transferred to the Court by the MDL Panel."); *see also In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, 2008 WL 732028, at *1 n.2, 5 (E.D. Pa. Mar. 18, 2008) (treating defendant's "motion

8

as one to enforce . . . [the] Class Action Settlement" and dismissing claims brought by settlement class members who failed to opt out of the settlement or who otherwise released their claims).

Plaintiff had ample opportunity to exclude herself from the Settlement if she wished to litigate against the Chiefs. The Notice Program—explaining the terms of the Settlement and the procedure and deadline for opting out—was adequate and satisfied the requirements of due process, as both this Court and the Third Circuit held. (Am. Final Order & J. ¶¶ 2–4, 7, ECF No. 6534) ("The Court finds that the dissemination of the Settlement Class Notice . . . constituted the best notice practicable under the circumstances."); *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 435–36 (3d Cir. 2016) ("The District Court found that the content of the class notice and its distribution to the class satisfied Rule 23 and due process. . . . We agree.").) The notice distributed under the program warned, in no uncertain terms, that "[u]nless you exclude yourself (opt out) from the Settlement . . . , you cannot sue the NFL Parties, the Member Clubs, or related individuals and entities." (*See* Long-Form Notice at 15, ECF No. 6093-1; *see also* Short-Form Notice at 1, ECF No. 6093-2 ("If you want to keep your right to sue the NFL, you must exclude yourself from the Class by **October 14, 2014**." (emphasis in original).) Plaintiff cannot now avoid the clear effect of her choice not to submit a timely opt out request—a choice she made while represented by counsel.[2] To hold otherwise would prejudice the settling parties by undermining the

---

[2] Plaintiff's counsel likely received *actual* notice of the Settlement. The Judicial Panel on Multidistrict Litigation transferred Martin's case to MDL 2323 in June 2014, *see supra* § B, and pursuant to MDL 2323's Case Management Order #1, counsel in all transferred cases "must immediately take steps to register to file on ECF in the Eastern District of Pennsylvania." (CMO #1 ¶¶ 1, 7 (Mar. 6, 2012), ECF No. 4.) In the month following Martin's transfer, the settling parties filed a copy of the Settlement Agreement on ECF in MDL 2323 (ECF No. 6087), and also filed copies of the Settlement notice that ultimately was sent to Settlement Class Members (ECF No. 6086). As such, Martin's counsel either received actual notice of these filings through ECF—notice attributable to Martin herself—or failed to abide by this Court's CMO #1.

9

Settlement's finality and rewriting its terms—which were the subject of careful negotiations and a bargained-for exchange—and would deprive the Released Parties of the benefit of their bargain. Indeed, courts have repeatedly strictly enforced the terms of such agreements—including opt-out deadlines—for precisely this reason; to grant exceptions from bargained-for deadlines and procedures would prejudice defendants and "would undermine the finality of judgments entered [in class actions] and . . . discourage settlement of such actions." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 371–72 (S.D.N.Y. 1996); *see also In re Imprelis Herbicide Mktg., Sales Pracs. & Prods. Liab. Litig.*, Nos. 11-md-2884, 11-cv-7599, 2014 WL 348593, at *3–4 (E.D. Pa. Jan. 31, 2014) (denying request to extend opt-out deadline in light of prejudice to defendant, including among other factors "the potential for future requests from similarly situated class members"); *In re WorldCom, Inc. Secs. Litig.*, No. 02-cv-3288, 2005 WL 1048073, at *6 (S.D.N.Y. May 5, 2005) (finding that defendants would suffer "considerable prejudice . . . if the deadline for the opt out period is not enforced"); *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) ("Opt-out deadlines ensure that parties to a class action can rely on the membership of a class becoming fixed by a specified date and that such members will be bound by the resulting outcome of the legal proceedings.").[3]

---

[3] This prejudice would be especially acute where, as here, "the settlements had special provisions that permitted the defendants to terminate the settlements based on the number of opt-outs, so even a single additional opt-out would impair the bargained–for value of the settlements." *In re Processed Egg Prods. Antitrust Litig.*, 130 F. Supp.3d 945, 954 (E.D. Pa. 2015); (Settlement Agmt. § 16.1 ("[T]he NFL Parties will have the absolute and unconditional right, in their sole good faith discretion, to unilaterally terminate and render null and void this Class Action Settlement and Settlement Agreement for any reason whatsoever following notice of Opt Outs and prior to the Fairness Hearing.").

## II.   PLAINTIFF'S CLAIM IS BARRED BY THE FINAL ORDER AND JUDGMENT AND SHOULD BE DISMISSED

This Court's Final Order and Judgment bars Martin's claim here for at least two reasons.

*First*, the Court's Final Order and Judgment not only approved the Settlement but also expressly dismissed all "Related Lawsuits," (Am. Final Order & J. ¶ 16, ECF No. 6534), including any "actions brought by one or more Releasors against one or more Released Parties pending in the Court." (Settlement Agmt. § 2.1(zzz).)  Plaintiff's action here, *Martin* v. *Kansas City Chiefs Football Club, LLC*, 14-cv-3381, is such an action.  Not only is Plaintiff a Releasor, as discussed above (*see supra* at I), but her action against a Released Party, the Chiefs, was pending in MDL 2323 at the time of the Court's order.  As such, this Court *has already* dismissed Plaintiff's *Martin* action, and her attempts to continue litigating it by— among other things, filing a Short Form Complaint in MDL 2323 and in *Martin*—are improper.  *See* Order at 1–3 (Apr. 12, 2017), ECF No. 7477 (ordering *Opt Outs with pending claims* in MDL 2323 to file Short Form Complaints in MDL 2323 and in their underlying litigation).

*Second*, even if Martin's action were still pending (and it is not), the Final Order and Judgment would bar her claim against the Chiefs based on her ex-husband's "concussive and subconcussive" football-related head injuries under the doctrine of claim preclusion because the Final Order and Judgment dismissed all Settlement Class Members' claims with prejudice.  (*See* Am. Final Order & J. ¶¶ 10, 15, ECF No. 6534); *see also Pyle* v. *N.Y. Life Ins. Co.*, No. 07-cv-00360, 2008 U.S. Dist. LEXIS 21638, *47 (W.D. Pa. Mar. 19, 2008) ("Because a class member's individual claim 'merges into the judgment granting relief,' thereby 'extinguishing' the class member's individual claim, the doctrine of *res judicata* bars

11

any subsequent claims by a class member already litigated by the court rendering the judgment on the class action settlement."). Claim preclusion bars a plaintiff's claim where there is (1) a final judgment on the merits on a lawsuit; (2) involving the same parties or their privies; and (3) a separate suit is based on the same cause of action. *See Marmon Coal Co.* v. *Dir., Office of Workers' Comp. Programs*, 726 F.3d 387, 394 (3d Cir. 2013). Each element is met here.

First, the Court's Final Order and Judgment approving the Settlement Agreement and dismissing all claims—whether asserted or that "could have been asserted in the Class Action Complaint or any other Related Lawsuit"—indisputably constitutes a final judgment on the merits. (*See* Settlement Agreement § 18.1; Am. Final Order & J. ¶¶ 10, 19, ECF No. 6534); *see also Toscano* v. *Conn. Gen. Life Ins. Co.*, 288 F. Appx. 36, 38 (3d Cir. 2008) ("Judicially approved settlement agreements are considered final judgments on the merits for purposes of claim preclusion."). Second, Plaintiff's putative action (*i.e.*, the *Martin* action) involves the "same parties or their privies" as those involved in the Class Action Settlement because, as discussed above, Martin was part of the Settlement Class and did not opt out, and the Settlement covered the NFL and all other "Released Parties," including the Chiefs. *See supra* at § B. Third, Martin's putative action is a separate "suit based on the same cause of action" asserted (and settled) by the Settlement Class—namely, loss of consortium arising from head injuries or CTE allegedly sustained in connection with NFL play. Accordingly, Plaintiff's putative claim should be dismissed pursuant to the doctrine of claim preclusion. *See Pyle*, 2008 U.S. Dist. LEXIS 21638 at *47; *Chartener* v. *Provident Mut. Life Ins. Co.*, No. 02-cv-8045, 2004 WL 1091027, at *2 (E.D. Pa. May 13, 2004); *see also Durkin* v. *Shields*, No. 92-cv-1003, 1997 WL 808651, at *8–9, 11 (S.D. Ca. June 5, 1997) (holding

12

that issue preclusion barred argument that derivative shareholder claims were released without adequate consideration where the settlement had already been approved as fair).

## **CONCLUSION**

For the reasons stated, the Chiefs respectfully request that the Court dismiss with prejudice Settlement Class Member Martin's Complaint filed in *Martin* v. *Kansas City Chiefs Football Club, Inc.*, 14-cv-132 (E.D. Pa.) (ECF No. 1-1, Ex. A) and *Lewis* v. *Kansas City Chiefs Football Club, LLC*, and the Short Form Complaint filed in *Martin* (ECF No. 4) and in MDL 2323 (ECF No. 8171).[4]

Dated: September 27, 2018

Respectfully submitted,

/s/ Brad S. Karp
Brad S. Karp
Bruce Birenboim
Lynn B. Bayard
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Main: 212.373.3000
Fax: 212.757.3990
bkarp@paulweiss.com
bbirenboim@paulweiss.com
lbayard@paulweiss.com

*Attorneys for the Kansas City Chiefs Football Club, LLC*

---

[4] The Chiefs also incorporate and adopt the arguments set forth in the NFL Defendants' Motion to Dismiss the Second Amended Master Administrative Complaint on Preemption Grounds (ECF Nos. 8403, 9665) and Motion to Dismiss the Second Amended Master Administrative Complaint for Failure to State a Claim (ECF Nos. 8404, 9664), which provide additional reasons why Martin's claims should be dismissed.