# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br><br>*Hernandez* v. *National Football League, et al.* | No. 18-cv-00464-AB |

## MEMORANDUM OF LAW OF DEFENDANTS NATIONAL FOOTBALL LEAGUE, THE NATIONAL FOOTBALL LEAGUE FOUNDATION, AND NFL PROPERTIES LLC IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

# TABLE OF CONTENTS

**Page**

Table of Authorities ............................................................................................ ii

PRELIMINARY STATEMENT ............................................................................ 1

BACKGROUND ................................................................................................ 5

    A.    The NFL Collective Bargaining Agreements .................................... 6

    B.    The Complaint................................................................................ 7

ARGUMENT ..................................................................................................... 9

I.    Section 301 of the LMRA Preempts Plaintiff's Claims................................. 9

    A.    Resolution of Plaintiff's Claims Against the NFL Substantially Depends Upon Interpretation of the Terms of the CBAs.............................. 10

        1.    Resolution of Plaintiff's Claims Requires Interpretation of Numerous CBA Provisions Addressing Player Health and Safety........................................................................... 12

        2.    The Case Law Confirms that Plaintiff's Claims Substantially Depend Upon an Interpretation of the Terms of the CBAs .............. 16

    B.    Plaintiff's Claims Against the NFL Arise Under the CBA........................... 19

    C.    Section 301 Preempts Plaintiff's Claims Against NFLP and NFLF............. 20

    D.    Plaintiff's Claim Is Subject to the Exclusive Jurisdiction of the Eastern District of Pennsylvania in MDL 2323 ............................ 21

    E.    Plaintiff's Arguments in Support of Remand Lack Merit............................ 22

        1.    The Complaint Is Based on Conduct Occurring During Hernandez's NFL Career ................................................. 23

        2.    Plaintiff's Fraudulent Concealment Claim Requires a Duty to Disclose and Reasonable Reliance...................................... 24

        3.    Preemption Does Not Require Contractual Privity.......................... 26

        4.    Plaintiffs Misstates the Relevant Legal Standard for Preemption ...................................................................... 27

II.    Plaintiff Is Not Entitled To Costs or Attorneys' Fees ................................... 31

CONCLUSION ................................................................................................. 32

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Allis-Chalmers* v. *Lueck*,
    471 U.S. 202 (1985) ...................................................................................... 9, 19

*Antol* v. *Esposto*,
    100 F.3d 1111 (3d Cir. 1996) ............................................................................ 9

*Atwater* v. *Nat'l Football League Players' Ass'n*,
    626 F.3d 1170 (11th Cir. 2010) ................................................................. 15, 18

*Ballard* v. *Nat'l Football League Players' Ass'n*,
    123 F. Supp. 3d 1161 (E.D. Mo. 2015) ...................................... 15, 16, 17, 23

*Beal* v. *Broadard*,
    No. SUCV200205765C, 2005 WL 1009632 (Mass. Sup. Ct. Feb. 4, 2005) ................. 25

*Beidleman* v. *Stroh Brewery Co.*,
    182 F.3d 225 (3d Cir. 1999) ...................................................................... 9, 31

*Boogaard* v. *Nat'l Hockey League*,
    126 F. Supp. 3d 1010 (N.D. Ill. 2015) ............................................................ 19

*Brown* v. *Nat'l Football League*,
    219 F. Supp. 2d 372 (S.D.N.Y. 2002) .................................................... 5, 6, 30

*Bush* v. *St. Louis Reg'l Convention*,
    No. 16-cv-250, 2016 WL 3125869 (E.D. Mo. June 3, 2016) .......................... 30

*Carrier* v. *Riddell, Inc.*,
    721 F.2d 867 (1st Cir. 1983) (Breyer, J.) ....................................................... 20

*Caterpillar Inc.* v. *Williams*,
    482 U.S. 386 (1987) ......................................................................................... 9

*Cipriano* v. *Phila. Newspapers, Inc.*,
    No. 98-cv-4751, 1999 WL 135111 (E.D. Pa. Mar. 12, 1999) ........................ 10

*Clarett* v. *Nat'l Football League*,
    369 F.3d 124 (2d Cir. 2004) ............................................................................. 6

*Corazzini* v. *Litton Loan Servicing LLP*,
    No. 09-cv-0199, 2010 WL 1132683 (N.D.N.Y. Mar. 23, 2010) .................... 11

*Cullen* v. *E.H. Friedrich Co.*,
    910 F. Supp. 815 (D. Mass. 1995) ................................................................. 26

*Davis* v. *Bell Atl.-W. Virginia, Inc.*,
   110 F.3d 245 (4th Cir. 1997) ............................................................................ 6

*Dent* v. *Nat'l Football League*,
   No. 15-1543 (9th Cir. Sept. 6, 2018) ............................................................. 29

*Doe* v. *Medeiros*,
   168 F. Supp. 3d 347 (D. Mass. 2016) ............................................................ 11

*Dubai Islamic Bank* v. *Citibank, N.A.*,
   126 F. Supp. 2d 659 (S.D.N.Y. 2000) ........................................................... 11

*Duerson* v. *Nat'l Football League*,
   No. 12-cv-2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012) ................. passim

*Eyssi* v. *City of Lawrence*,
   416 Mass. 194 (1993) ..................................................................................... 27

*Garcia* v. *Federics*,
   No. 200400576, 2007 WL 2367672 (Mass. Super. Ct. July 9, 2007) ....... 11, 27

*Givens* v. *Tenn. Football, Inc.*,
   684 F. Supp. 2d 985 (M.D. Tenn. 2010) ...................................................... 2, 18

*Gottbetter* v. *Crone Kline Rinde, LLP*,
   162 A.D.3d 579 (N.Y. App. Div. 2018) ...................................................... 11, 25

*Great N. Ins. Co.* v. *Paino Assocs.*,
   364 F. Supp. 2d 7 (D. Mass. 2005) ................................................................ 11

*Green* v. *Arizona Cardinals Football Club*,
   21 F. Supp. 3d 1020 (E.D. Mo. 2014) ........................................................... 28

*Green* v. *Pro Football, Inc.*,
   31 F. Supp. 3d 714 (D. Md. 2014) ............................................................. 30, 31

*Guthrie* v. *Raytheon Co.*,
   No. 98–4749, 2002 WL 1592509 (Mass. Super. July 12, 2002) ................... 27

*Hall* v. *Live Nation Worldwide, Inc.*,
   146 F. Supp. 3d 1187 (C.D. Cal. 2015) ........................................................... 6

*Hernandez* v. *Nat'l Football League*,
   17-cv-11812 (D. Mass.) .................................................................................. 32

*Holmes* v. *Nat'l Football League*,
   939 F. Supp. 517 (N.D. Tex. 1996) ................................................................ 19

*Int'l Bhd. of Elec. Workers* v. *Hechler*,
    481 U.S. 851 (1987) ............................................................................................. 10

*Jeffers* v. *D'Allessandro*,
    681 S.E.2d 405 (N.C. Ct. App. 2009) ............................................................... 18

*Jupin* v. *Kask*,
    849 N.E.2d 829 (Mass. 2006) ........................................................................... 11

*Jurevicius* v. *Cleveland Browns Football Co. LLC*,
    No. 09-cv-1803, 2010 WL 8461220 (N.D. Ohio 2010)................................... 30

*Kurns* v. *A.W. Chesterton, Inc.*,
    620 F.3d 392 (3d Cir. 2010)................................................................ 10, 12, 31

*Laskowski* v. *U.S. Dep't of Veterans Affairs*,
    918 F. Supp. 2d 301 (M.D. Pa. 2013) ............................................................. 27

*Martin* v. *Franklin Capital Corp.*,
    546 U.S. 132 (2005)......................................................................................... 32

*Maxwell* v. *Nat'l Football League*,
    No. 11-cv-08394 (C.D. Cal. Dec. 8, 2011) ............................................. passim

*McPherson* v. *Tenn. Football, Inc.*,
    No. 07-cv-0002, 2007 WL 5445124 (M.D. Tenn. May 31, 2007) .................. 30

*In re Nat'l Football League Players' Concussion Injury Litig.*,
    307 F.R.D. 351 (E.D. Pa. 2015) ...................................................................... 28

*Oliver* v. *Riddell, Inc.*,
    No. 16-cv-4760, 2016 WL 7336412 (N.D. Ill. July 19, 2016)............... 21, 28, 29

*Palsgraf* v. *Long Island R.R.*,
    162 N.E. 99 (N.Y. 1928) .................................................................................. 20

*Pudlowski* v. *St. Louis Rams, LLC*,
    829 F.3d 963 (8th Cir. 2016)............................................................................. 6

*Robertson* v. *Gaston Snow & Ely Bartlett*,
    536 N.E.2d 344 (Mass. 1989) .......................................................................... 24

*Sahin* v. *Sahin*,
    758 N.E.2d 132 (Mass. 2001) .................................................................... 11, 24

*Sena* v. *Com.*,
    629 N.E.2d 986 (Mass. 1994) .......................................................................... 26

*Seron* v. *Maltagliati*,
   No. 961132, 1998 WL 1284176 (Mass. Super. Ct. Apr. 28, 1998) ............................... 27

*Sherwin* v. *Indianapolis Colts, Inc.*,
   752 F. Supp. 1172 (N.D.N.Y. 1990) ........................................................................ passim

*Smith* v. *Houston Oilers, Inc.*,
   87 F.3d 717 (5th Cir. 1996) ............................................................................................ 19

*Smith* v. *Nat'l Football League Players' Ass'n*,
   No. 14-cv-01559, 2014 WL 6776306 (E.D. Mo. Dec. 2, 2014) ............................. 16, 24

*Stringer* v. *Nat'l Football League*,
   474 F. Supp. 2d 894 (S.D. Ohio 2007) ..................................................................... passim

*Trans Penn Wax Corp.* v. *McCandless*,
   50 F.3d 217 (3d Cir. 1995) ............................................................................................. 25

*Tynes* v. *Buccaneers Ltd. P'ship*,
   134 F. Supp. 3d 1351 (M.D. Fla. 2015) .......................................................................... 30

*United Ass'n of Journeymen* v. *Local 334*,
   452 U.S. 615 (1981) .......................................................................................................... 6

*United Steelworkers of Am.* v. *Rawson*,
   495 U.S. 362 (1990) ................................................................................................... 19, 27

*USX Corp.* v. *Adriatic Ins. Co.*,
   345 F.3d 190 (3d Cir. 2003) ............................................................................................. 6

*Westmoreland Hosp. Ass'n* v. *Blue Cross of W. Pa.*,
   605 F.2d 119 (3d Cir. 1979) ............................................................................................. 6

*Williams* v. *Nat'l Football League*,
   582 F.3d 863 (8th Cir. 2009) ..................................................................... 15, 16, 18, 19

*Zinman* v. *Prudential Ins. Co. of Am.*,
   909 F. Supp. 279 (E.D. Pa. 1995) (Brody, J.) ................................................................ 31

**STATUTES**

28 U.S.C. § 1331 ...................................................................................................................... 5

28 U.S.C. § 1441 ...................................................................................................................... 5

28 U.S.C. § 1446(a) ................................................................................................................. 6

28 U.S.C. § 1447(c) ................................................................................................................ 31

29 U.S.C. § 185(a) ........................................................................................................... 9

Labor Management Relations Act § 301 ....................................................... passim

**OTHER AUTHORITIES**

14D Mass. Prac. § 17.60 ................................................................................................. 25

14D Mass. Prac. § 17.64 ............................................................................................ 24, 25

Fed. R. Civ. P. 41 (d) ...................................................................................................... 32

Restatement (Second) of Torts § 550 .......................................................................... 26

Restatement (Second) of Torts § 551 .......................................................................... 26

Defendants National Football League ("NFL"), the National Football League Foundation ("NFLF"), and NFL Properties LLC ("NFLP," and together with the NFL and NFLF, the "NFL Defendants"), respectfully submit this memorandum of law in opposition to the motion to remand brought by A.H. ("Plaintiff"), the daughter of former NFL player Aaron Hernandez ("Hernandez") through her guardian.

## PRELIMINARY STATEMENT

As demonstrated in the NFL Defendant's separate motion, Plaintiff is a Settlement Class Member whose claims should be dismissed.[1]  In addition, Plaintiff's motion to remand should be denied because Plaintiff's claims—contending that the NFL Defendants breached duties to reduce the risks of head injuries to Hernandez, and to warn Hernandez about such risks—are preempted by federal labor law.  Thus, this Court has federal subject matter jurisdiction, and removal was proper.  *See, e.g.*, *Duerson* v. *Nat'l Football League*, No. 12-cv-2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012); *Maxwell* v. *Nat'l Football League*, Order, No. 11-cv-08394 (C.D. Cal. Dec. 8, 2011), ECF No. 58.

Hernandez's relationship with the NFL Defendants was governed by two collective bargaining agreements and accompanying NFL Constitution and Bylaws (together, the "CBAs").  The CBAs include terms specifically addressing player health and safety, as well as player medical care.  For example, the CBAs delegate to the NFL's Clubs and their medical staff the responsibility for treating player injuries, including making "return to play" decisions, and the CBAs delineate players' rights to benefits in the event of injury.

Like all collective bargaining agreements, these CBAs are governed by section 301 ("Section 301") of the Labor Management Relations Act ("LMRA").  Section 301 ensures

---

[1]   *See* Defs. Mem. of Law in Supp. of Mot. to Dismiss Compls. filed by Settlement Class Members Tracy Scroggins, Rose Stabler, and A.H. § I.A (Aug. 17, 2018), ECF No. 10.

that labor disputes are resolved under a uniform body of federal labor law and adjudicated in accordance with CBA grievance procedures.  Thus, Section 301 completely preempts state law claims—including tort claims based in negligence or fraud—the resolution of which is substantially dependent upon interpreting the terms of, or that arise under, a CBA, such as Plaintiff's claim here.  In denying remand motions, federal courts repeatedly have found that claims against the NFL and its Clubs, like those here, are preempted by Section 301 because their resolution requires interpretation of CBA provisions, including provisions relating to player health and safety.  *See, e.g.*, *Duerson*, 2012 WL 1658353; *Givens* v. *Tenn. Football, Inc.*, 684 F. Supp. 2d 985 (M.D. Tenn. 2010); *Maxwell*, No. 11-cv-08394, Order at 1–2.  For the same reasons, federal jurisdiction is proper here.

Plaintiff's claims hinge on allegations that the NFL Defendants had a duty to "reduce injury risks in football" and failed to "disclose[] the risks of the game."  (Notice of Removal, Ex. A: Civil Action Compl. ¶¶ 16, 348, ECF No. 1 (the "Complaint").)  These claims would require the Court to ascertain what duties, if any, the NFL Defendants owed to Hernandez, and the scope of those duties, to determine whether the NFL Defendants acted reasonably. Because the CBAs allocate responsibility—for treating player injuries generally, and making "return to play" decisions specifically—to Clubs and their medical staff, a court cannot assess the existence or scope of the NFL Defendants' alleged duties without interpreting the CBA provisions assigning these responsibilities.  Plaintiff's claims therefore are preempted by Section 301.

As two district courts considering similar claims have held, these "physician provisions" of the CBAs "must be taken into account in determining the degree of care owed by the NFL and how it relates to the NFL's alleged failure to establish guidelines or policies to

protect the mental health and safety of its players." *Maxwell*, No. 11-CV-08394, Order at 2; *see also Duerson*, 2012 WL 1658353, at \*4 (determining that any duty to warn imposed on the Clubs and their physicians under the CBA to protect player health and safety "would be one factor tending to show that the NFL's alleged failure to take action to protect [NFL players] from concussive brain trauma was reasonable"). These provisions on player health and safety likewise are integral to the resolution of Plaintiff's fraud-based claims, which rest upon the NFL's purported breach of its alleged duty to disclose to Hernandez the risks of repetitive head injuries—a duty that cannot be ascertained or measured without first considering the allocation of obligations regarding player health and safety assigned in the CBAs. Nor can a court determine whether Hernandez justifiably relied on information provided by the NFL without first interpreting the CBAs' health and safety provisions that allocate to Club physicians the task of providing injury-related information to players, including the risks of continuing to play football.

Plaintiff's claims also cannot proceed in state court because, as a Settlement Class Member, she has not only released them, but also agreed to submit any related disputes to the exclusive jurisdiction of this Court. Pursuant to the Court's Amended Final Order and Judgment in *In re: National Football League Concussion Injury Litigation*, 12-md-2323 (E.D. Pa.) ("MDL 2323"), the Court has continuing and exclusive jurisdiction over all Settlement Class Members— including all NFL Players, like Hernandez, who had retired from the NFL by July 2014, and their Derivative Claimants, such as Plaintiff—and thus remand should be denied.

Plaintiff's remand motion reflects a fundamental misunderstanding of the law governing preemption as well as an unconvincing recasting of the allegations in her own Complaint.

First, Plaintiff attempts to skirt Hernandez's years as an NFL player—and thus the

CBAs—by arguing that Plaintiff's claims relate to alleged misconduct over the entirety of Hernandez's life.  But this argument mischaracterizes the Complaint, which plainly asserts claims based on alleged misconduct during Hernandez's NFL career, based on purported duties that could only have been owed to Hernandez in his capacity as an NFL player who played pursuant to the terms of the CBAs.

Second, Plaintiff argues that her fraudulent concealment claim is not preempted because it purportedly does not require her to prove a duty to disclose or reasonable reliance, and thus, according to Plaintiff, does not require interpretation of the CBAs.  The law of Massachusetts—the State in which Plaintiff asserted her claims—holds otherwise, however, as a duty to disclose and reasonable reliance *are* required elements of fraud claims premised on nondisclosures, such as Plaintiff's claim here.

Third, Plaintiff attempts to avoid preemption by claiming that she was not in "contractual privity" with the NFL Defendants, and that her claim is "independent" of the CBAs. But this argument, like the rest, ignores the relevant legal standard.  LMRA preemption does not depend on the status of the parties, but rather on whether the resolution of the claims at issue requires interpretation of the CBAs.  To prevail on her claims here, Plaintiff will have to prove that the NFL Defendants owed duties *to Hernandez*, failed to act reasonably in carrying out those duties, and that Hernandez reasonably relied on the NFL Defendants' alleged misstatements and omissions. Resolution of all of these elements substantially depends on interpretation of numerous terms of the CBAs.

Fourth, Plaintiff attacks the relevance of specific CBA provisions cited by the NFL Defendants on the basis that she does not allege violations of them.  But preemption does not require that Plaintiff allege direct violations of specific CBA provisions; the standard is

whether resolution of Plaintiff's claims substantially depends upon an interpretation of the CBAs.  That is the case here.

In sum, because Plaintiff's claims are completely preempted, removal was proper under 28 U.S.C. §§ 1331 and 1441.  Accordingly, Plaintiff's remand motion should be denied.

## BACKGROUND

The NFL is an unincorporated association of 32 Member Clubs that promotes, organizes, and regulates the sport of professional football in the United States.  *Stringer* v. *Nat'l Football League*, 474 F. Supp. 2d 894, 898 (S.D. Ohio 2007).  NFLP is a Delaware limited liability company headquartered in New York that represents the NFL and its Clubs "for the licensing of their trademarks and logos." (www.nfl.info/NFLConsProd/Welcome/cpAgreement.htm; Compl. ¶¶ 25–26.)  NFLF is a non-profit, 501(c)(3) entity headquartered in New York.  (Compl. ¶ 28.)  Plaintiff, who brings this action through her guardian, is the daughter of former NFL player Hernandez.  (*Id*. ¶¶ 22–23.)  Hernandez played NFL football from 2010 through the 2012–13 season and was diagnosed after his death with chronic traumatic encephalopathy ("CTE") allegedly caused by "repetitive subclinical and clinical blows" to the head while playing football.  (*Id*. ¶¶ 2, 339, 348 (Torts I-V).)[2]

---

[2]  This summary is based on the allegations of Plaintiff's October 16, 2017 complaint (the "Complaint")—the factual averments of which the NFL Defendants assume to be true for purposes of this motion only—and, where applicable, public records and documents integral to Plaintiff's claims, including the 2006 and 2011 CBAs (in effect from March 8, 2006 to March 10, 2011 and August 4, 2011 through the 2020 season, respectively), attached as exhibits to the accompanying Declaration of Dennis L. Curran, dated October 15, 2018 and cited in the form "Ex. __."  This Court may consider the CBAs in adjudicating this motion.  *See Duerson* v. *Nat'l Football League*, No. 12-cv-2513, 2012 WL 1658353, at *4 (N.D. Ill. May 11, 2012) (considering CBAs in connection with motion to remand); *Maxwell* v. *Nat'l Football League*, Order at 1–2, No. 11-cv-08394 (C.D. Cal. Dec. 8, 2011), ECF No. 58 (same); *see also Brown* v. *Nat'l Football League*, 219 F. Supp. 2d 372, 383–84, 385–87 (S.D.N.Y. 2002) (considering CBA provisions in order to adjudicate NFL's motion to dismiss).

A.    __The NFL Collective Bargaining Agreements__

The relationship between the NFL Defendants and Hernandez is defined by the CBAs that were operative during Hernandez's NFL career.   The CBAs are the product of exhaustive arm's-length negotiations between the NFL Management Council ("NFLMC"), the exclusive bargaining representative of the NFL, and the National Football League Players' Association ("NFLPA"), the exclusive bargaining representative of NFL players.  As "the union for professional football players," the NFLPA "[r]epresents all players in matters concerning . . . working conditions and protects their rights as professional football players." (https://www.nflplayers.com/about.)  The CBAs negotiated by the NFLPA and NFLMC, along with the NFL Constitution and Bylaws to which the NFLPA agreed to be bound, "represent[] the complete understanding of the parties on all subjects covered [t]herein."  (Ex. 1, 2011 CBA Art. 2 § 4(a); Ex. 2, 2006 CBA Art. III § 1.)[3]  The CBAs cover a broad range of subjects affecting the terms and conditions of employment for NFL players, and expressly address player medical care

---

Plaintiff argues that because the NFL Defendants did not attach the CBAs to their notice of removal, the Court should not consider them.  (Remand Mem. at 14–15.)  Plaintiff is mistaken.  All that is required in a notice of removal is "*a short and plain statement of the grounds for removal.*"  28 U.S.C. § 1446(a) (emphasis added); *see Pudlowski* v. *St. Louis Rams, LLC*, 829 F.3d 963, 964–65 (8th Cir. 2016) (vacating remand order on ground that lower court improperly refused to consider post-removal affidavits, holding that the notice of removal properly contained a short and plain statement for the grounds for removal and "did not need to be accompanied by a submission of evidence"); *Hall* v. *Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1198 n.31 (C.D. Cal. 2015) (allowing unattached CBA to be considered for removal, stating that "in determining whether removal jurisdiction exists, the court is not limited to documents attached to the notice of removal").  Here, the CBAs merely provide further detail supporting the "short and plain statement" of the basis for jurisdiction asserted in the NFL Defendants' timely removal notice, which expressly stated an intent to submit the CBAs once Plaintiff contested removal.  (Notice of Removal at 4 n.4 (Feb. 6, 2018), ECF No. 1-1.)  Plaintiff's inapposite citation to *Westmoreland Hosp. Ass'n* v. *Blue Cross of W. Pa.*, 605 F.2d 119 (3d Cir. 1979) does not address whether a CBA can be considered on a remand motion.  In fact, the Third Circuit there held that federal jurisdiction existed because plaintiffs' "complaint was based in part on federal statutes," such that it was "immaterial that at trial appellants relied solely on state law principles to make their case."  *Id.* at 124.  Moreover, any defect—and there is none—is easily cured by NFL Defendants' submission of the CBAs here.  *See USX Corp.* v. *Adriatic Ins. Co.*, 345 F.3d 190, 205 n.12 (3d Cir. 2003) (holding that later-filed affidavits could be considered on motion to remand).

3    *Brown*, 219 F. Supp. 2d at 386 (The NFL "Constitution was bargained over and included within the scope of the CBA."); *Sherwin* v. *Indianapolis Colts, Inc.*, 752 F. Supp. 1172, 1177 (N.D.N.Y. 1990) ("The standard player agreement, which is used for every NFL player as required by Article XII, section 1 of the [1982] CBA, is effectively incorporated by reference in that article."); *see also Clarett* v. *Nat'l Football League*, 369 F.3d 124, 142 (2d Cir. 2004); *Davis* v. *Bell Atl.-W. Virginia, Inc.*, 110 F.3d 245 (4th Cir. 1997); *United Ass'n of Journeymen* v. *Local 334*, 452 U.S. 615, 627 (1981).

and safety, rule-making, protective equipment, and dispute resolution.  Appendix A sets forth examples of these provisions.

The CBAs delegate to the NFL's Member Clubs and their medical staff the responsibility for treating player injuries.  For example, the CBAs provide that Club physicians are responsible for making return to play decisions and advising players of the risk of continued performance, and set forth the qualifications for Club medical staff.  (*See* App'x A § A.)  The CBAs also set forth player rights and obligations related to medical care, for example, the right to investigate the adequacy of medical care provided by a Club physician and to obtain a second medical opinion.  (*See id.* § B.)  In addition, the CBAs set forth the manner in which rules, including rules concerning player safety, are promulgated, enforced, and amended (*see id.* § C); include numerous provisions regarding players' rights to compensation and benefits in the event of injuries (*see id.* § D); provide an exclusive dispute resolution procedure for disputes arising under the CBAs; and bar players from bringing suit against the NFL relating to the CBAs or NFL playing rules.  (*See id.* § E.)

## B.     The Complaint

This is Plaintiff's second action against the NFL Defendants based on the same alleged conduct.  She dismissed her previous lawsuit, filed in the United States District Court for the District of Massachusetts, following its conditional transfer to the Eastern District of Pennsylvania for consolidation with the more than 30 actions currently before the Honorable Anita B. Brody as MDL 2323.  Plaintiff filed the instant action on October 16, 2017 in Massachusetts Superior Court, and on November 14, 2017, the NFL Defendants removed the action to the District of Massachusetts.  On February 6, 2018, the Judicial Panel on Multidistrict Litigation transferred this action to this Court for coordinated and consolidated pretrial proceedings as part of MDL 2323.

The Complaint—spanning 351 paragraphs and 86 pages—alleges a widespread (and far-fetched) conspiracy that purportedly took place for "decades" in which the NFL Defendants, Riddell, the tobacco industry, "international corporations," and even, it appears, the U.S. government all allegedly conspired together to conceal information about head injuries and mislead players into believing it was safe to return to play following a concussion. (Compl. ¶¶ 7, 91–129, 181, 186, 214, 220–21, 307.)   The Complaint alleges that the NFL Defendants had "superior knowledge of football's cognitive and behavioral risks" and owed a purported duty to "reduce injury risks in football," and that NFLP owed a duty "to ensure that the equipment and materials it licensed and approved was of the highest possible quality and sufficient to protect [Hernandez] from injury."   (*Id*. ¶ 348.)   The Complaint alleges that the NFL Defendants breached these duties to Hernandez by, among other things, failing to "disclose[] the risks of the game," "never act[ing] on the issues of mild traumatic brain injury," and by negligently or fraudulently "conclud[ing] that it was appropriate for players who suffered a concussion to return to play in the same game or practice in which the concussion occurred" and that concussed players "were not at greater risk of suffering future concussions."   (*Id*. ¶¶ 9, 16, 19, 163, 259.) The Complaint also alleges that the NFL Defendants breached their duties by "agree[ing] to engage in a long-term plan to conceal material information about football's link to CTE and other neurological/neurobehavioral conditions" (*id*. ¶ 174), failing to adequately track and report head injuries (*id.* ¶¶ 200, 210, 326–27), negligently licensing protective equipment (*id.* ¶¶ 21, 348), negligently hiring, retaining and supervising a member of the MTBI Committee (*id.* ¶ 348), and "fundamentally by failing to actually seek to reduce injury risks in football."   (*Id*. at Tort III(d).)  At bottom, the fundamental theory behind Plaintiff's claims is that the NFL Defendants breached a duty to protect players from returning to play prematurely post-injury by, among

other things, engaging in "sham science" to conceal the long-term risks of head injuries.  (*See, e.g.*, *id.* ¶ 19.)

Plaintiff purports to seek loss of consortium damages based on several enumerated torts that allegedly were the proximate cause of Hernandez's CTE:  conspiracy, fraudulent concealment, and negligence against the NFL Defendants and Riddell; "negligent hiring/retention/supervision" against the NFL and Riddell; "negligence—licensing" against NFL, NFLP, and Riddell; and failure to warn against Riddell.  (*Id.* ¶¶ 1, 348–51.)

## ARGUMENT

## I.
## SECTION 301 OF THE LMRA PREEMPTS PLAINTIFF'S CLAIMS

Section 301 of the LMRA completely preempts all state law claims, the resolution of which is "substantially dependent" upon or "inextricably intertwined" with an interpretation of the terms of a collective bargaining agreement, or that arise under a collective bargaining agreement.  29 U.S.C. § 185(a) (codifying section 301(a)); *Allis-Chalmers* v. *Lueck*, 471 U.S. 202, 213 (1985); *see also Beidleman* v. *Stroh Brewery Co.*, 182 F.3d 225, 231–32 (3d Cir. 1999); *Antol* v. *Esposto*, 100 F.3d 1111, 1117 (3d Cir. 1996).  If the resolution of *any one* of Plaintiff's claims substantially depends upon an interpretation of the terms of (or if a claim arises under) the CBA, federal subject matter jurisdiction exists, and removal was proper.  *See, e.g.*, *Duerson*, 2012 WL 1658353, at *6.  Moreover, as long as at least one federal claim is present, this Court has supplemental jurisdiction over the remaining claims.  *See e.g.*, *id.*

Complete preemption under Section 301 of the LMRA is "an 'independent corollary' to the well-pleaded complaint rule . . . that [ ] 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'"  *Caterpillar Inc.* v. *Williams*, 482 U.S. 386, 393 (1987) (citation omitted).  Plaintiff cannot

"evad[e] the pre-emptive force of § 301 by casting her claim as a state-law tort action," *Int'l Bhd. of Elec. Workers* v. *Hechler*, 481 U.S. 851, 862 (1987). Under the "artful pleading" doctrine, the Court may "look beyond the plaintiff's allegations to the substance of the plaintiff's complaint because a plaintiff may not defeat removal by failing to plead necessary federal questions." *Cipriano* v. *Phila. Newspapers, Inc.*, No. 98-cv-4751, 1999 WL 135111, at *3 (E.D. Pa. Mar. 12, 1999) (internal quotation omitted). What matters is "the gravamen of the plaintiffs' claims," and the plaintiffs "may not merely rebrand a claim in order to avoid preemption." *Kurns* v. *A.W. Chesterton, Inc.*, 620 F.3d 392, 398 n.8 (3d Cir. 2010).

Here, consistent with a long line of cases holding that player tort claims against the NFL and/or its Clubs are preempted under Section 301, the substance of the Complaint makes clear that the resolution of Plaintiff's claims substantially depends upon interpretation of CBA provisions, or the claims arise out of the CBAs. Accordingly, Plaintiff's claims are completely preempted, and federal jurisdiction is proper.

**A.    Resolution of Plaintiff's Claims Against the NFL**
     **<u>Substantially Depends Upon Interpretation of the Terms of the CBAs</u>**

All of Plaintiff's claims against the NFL are premised, at their core, on the NFL's purported duties to "reduce injury risks in football," "to disclose the risks of the game" and of repetitive head injuries, and to adequately track and report head injuries, and on its alleged conclusions about the appropriateness of players returning to play in the same game in which they sustained head injuries. (Compl. ¶¶ 7–9, 16, 17, 348.) These allegations strike at the heart of the myriad health and safety provisions of the CBAs and plainly require interpretation of them.

Plaintiff's claims against the NFL for negligence and negligent hiring/retention/supervision all require Plaintiff to establish that the NFL assumed, and then

breached, a duty of care.  *See Jupin* v. *Kask*, 849 N.E.2d 829, 834–35 (Mass. 2006) (negligence);

*Doe* v. *Medeiros*, 168 F. Supp. 3d 347, 353, 355 (D. Mass. 2016) (negligent hiring); *Great N.*

*Ins. Co.* v. *Paino Assocs.*, 364 F. Supp. 2d 7, 20 (D. Mass. 2005) (negligent

retention/supervision); *Garcia* v. *Federics*, No. 200400576, 2007 WL 2367672, at *3 (Mass.

Super. Ct. July 9, 2007) (loss of consortium claims predicated on negligence require proof of a

breach of duty owed to the decedent); *see also Dubai Islamic Bank* v. *Citibank, N.A.*, 126 F.

Supp. 2d 659, 667 (S.D.N.Y. 2000) (negligence under New York law); *Corazzini* v. *Litton Loan*

*Servicing LLP*, No. 09-cv-0199, 2010 WL 1132683, at *8 (N.D.N.Y. Mar. 23, 2010) (negligent

hiring under New York law).[4]  Plaintiff's claims for fraudulent concealment and civil conspiracy

(premised on fraudulent concealment) similarly require proof of a duty to disclose.  *See, e.g.*,

*Sahin* v. *Sahin*, 758 N.E.2d 132, 138 n.9 (Mass. 2001) ("Fraud by omission requires both

concealment of material information and duty requiring disclosure."); *Gottbetter* v. *Crone Kline*

*Rinde, LLP*, 162 A.D.3d 579, 580 (N.Y. App. Div. 2018) ("To state a claim for fraudulent

concealment, a plaintiff must allege that the defendant had a duty to disclose material

information and failed to do so. . . .").  These claims are thus preempted because determining

whether the NFL in fact owed any such duties to Hernandez, assessing the scope of any such

duties, and deciding whether the NFL acted reasonably in discharging any such duties would

substantially depend upon an interpretation of the health and safety provisions of the CBAs.[5]

---

[4]   This Court need not conduct a choice of law analysis at this stage.  *See Duerson*, 2012 WL 1658353, at *3 (choice of law "largely irrelevant" to LMRA preemption).  The NFL Defendants primarily cite to the substantive law of Massachusetts, the state in which Plaintiff filed her action and the alleged place of Hernandez's death, and New York, the NFL Defendants' domicile, but expressly reserve all arguments and defenses with respect to choice of law.

[5]   As such, contrary to Plaintiff's argument that the NFL's preemption arguments are in the nature of a defense (Remand Mem. at 10, 22–23, 25, 28), she will need to establish *as part of her affirmative case* the existence and scope of the alleged duties, as well as a failure by the NFL to carry out such duties with reasonable care—all of which are elements of her claims that require interpretation of the CBA.  *See Duerson*, 2012 WL 1658353, at *5.

1.     **Resolution of Plaintiff's Claims Requires Interpretation**
        **of Numerous CBA Provisions Addressing Player Health and Safety**

The CBAs contain numerous provisions that delegate certain responsibilities for player health and safety to NFL committees, the NFL's Member Clubs and their medical staff, and the NFLPA (or the players themselves), and these provisions would need to be interpreted to resolve Plaintiff's claims.

First, the CBAs assign to the Clubs and their medical staff responsibility for treating player injuries, determining recovery times, making return-to-play decisions, and warning players of the risks of continued performance.  (*See* App'x A § A.)[6]  A court would need to determine the scope of the duties placed on the Clubs and their medical staff in order to assess the scope of any duty on the NFL's part, or the NFL's failure to exercise reasonable care.  For example, if Hernandez's alleged medical conditions were ones that could "significantly affect[] [his] performance or health" (*id.*), the Clubs' medical staff may have had a duty to inform him, which "would be one factor tending to show that the NFL's alleged failure to take action to protect [Hernandez] from concussive brain trauma was reasonable."  *Duerson*, 2012 WL 1658353, at *4.

Similarly, regarding the NFL's allegedly negligent conclusions regarding players with head injuries returning to play, the CBAs provide that "[a]ll determinations of recovery time for . . . injuries" are to be made "by the club's medical staff and in accordance with the club's

---

[6]   Plaintiff asserts that the Complaint's allegations are not related to the medical treatment of players' injuries. (Remand Mem. at 22.)  But this argument is (as discussed above) undermined by the Complaint's allegations, which link Hernandez's injuries to his career as a professional football player, and thus squarely place in issue questions of whether the NFL and/or the Clubs had a duty to treat Hernandez's on-field head injuries or warn him of the risk of such injuries, the scope of such purported duties, and whether the NFL properly exercised such duties.  Indeed, Plaintiff also relies on various studies of *NFL player injuries*.  (*See* Remand Mem. at 22, 26.)  Moreover, Plaintiff's attempt to rebrand her claim to omit explicit reference to player medical care *per se* is merely artful pleading and cannot defeat preemption.  *See Kurns* v. *A.W. Chesterton, Inc.*, 620 F.3d 392, 398 n.8 (3d Cir. 2010) (noting that one "may not merely rebrand a claim in order to avoid preemption"); *see also infra* at § I.E.4.

medical standards" and give Club physicians discretion to determine the medical care appropriate for player injuries. (*See* App'x A § A.)  Thus, such provisions "must be taken into account in determining the degree of care owed by the NFL" and its alleged failure to protect player safety. *See Maxwell*, No. 11-cv-08394, Order at 2.  Moreover, if the Clubs and their medical staff had a duty to accurately diagnose, record, and track data on player injuries (*see* App'x A § A), that necessarily would impact the extent to which the NFL's alleged failure to do so was reasonable. *See Maxwell*, No. 11-cv-08394, Order at 1–2 (finding preemption of claims based on allegations that the NFL failed "to ensure accurate diagnosis and recording of concussive brain injury so the condition can be treated in an adequate and timely manner").

Further, the CBA provisions requiring Clubs to provide physicians and ambulances at all games and pay certain medical costs for their players, and requiring Club physicians to perform a pre-season physical examination, could be interpreted "to impose a duty on the NFL's clubs to monitor a player's health and fitness to continue to play football," such that the "NFL could reasonably rely on the clubs to notice and diagnose player health problems arising from playing in the NFL." *Duerson*, 2012 WL 1658353, at *4.  In addition, the CBAs impose certification and compliance requirements on Club medical staff, including provisions requiring that head trainers be certified by the National Athletic Trainers Association and that Club physicians be certified in sports medicine, and requiring compliance with relevant laws and standards. (*See* App'x A § A.)  If, as part of these certification and compliance requirements— and attendant education, training, and experience—Club trainers and physicians received instruction or guidance on the risks of repetitive head impacts, then the degree of care owed by the NFL in warning players about these issues necessarily would be diminished. *See Maxwell*, No. 11-cv-08394, Order at 2 ("CBA provisions relating to the teams' athletic trainers" would

need to be taken into account in resolving plaintiff's concussion-related claims); *Stringer*, 474 F. Supp. 2d at 910 ("If, by virtue of the certification process, the trainers are fully prepared to handle heat-related illnesses, the degree of care owed by the NFL in publishing the Hot Weather Guidelines is diminished.").

Regarding the NFL's alleged failure to "reduce injury risks in football," the CBAs expressly address responsibility for promulgating, reviewing, and investigating playing rules that affect player health and safety, which would need to be interpreted in order to determine the scope of any duty on the NFL's part to make the game safer.  (*See* App'x A § C.)  The CBAs also provide NFL players and the NFLPA with additional rights relating to health and safety issues, including rights over their own individualized medical treatment and rights to investigate broader issues of player safety, which would need to be interpreted to assess the scope of the NFL's duties, including any duty to disclose health-related risks or to investigate safety issues. (*See id.* § B.)  In addition, the joint Accountability and Care Committee, including the NFLPA Executive Director, was established to provide guidance regarding player medical care, including on the prevention, surveillance, and treatment of injuries associated with professional football. (*See id.* § A.)  To the extent that this Committee has certain duties to research player injuries, it bears directly on the scope of the NFL's alleged duties.

Finally, resolution of whether the NFL breached its purported duty to properly hire, retain, or supervise any member of the MTBI Committee would require interpretation of CBA provisions addressing the duty to warn and creating committees responsible for player safety issues.  (*See id.* §§ A, C.)  If Club medical staff, the NFLPA, or a CBA-created committee were tasked to provide information regarding, or to examine, "repetitive subclinical and clinical blows to the head (or MTBI)," (Compl. ¶ 348), then the duties owed by the NFL in hiring and

14

retaining members of the MTBI Committee would be diminished.  *See Ballard* v. *Nat'l Football League Players' Ass'n*, 123 F. Supp. 3d 1161, 1172 (E.D. Mo. 2015) (because alleged duty to properly staff MTBI Committee was "derived from the CBAs and not owed to the public at large," negligent hiring and retention claims preempted).

Simply put, "the degree of care owed [by the NFL] cannot be considered in a vacuum," but must be calibrated according to the scope of the duties contractually delegated to others by the CBAs.  *Stringer*, 474 F. Supp. 2d at 910.[7]

Resolution of Plaintiff's fraudulent concealment and civil conspiracy claims—premised on the NFL's alleged concealment of the risks of repetitive head injuries—substantially depends upon an interpretation of the CBAs for an additional reason:  the Court cannot determine whether Hernandez justifiably relied on information provided by the NFL without first interpreting the CBAs' health and safety provisions, which define the obligations of the NFL, Clubs and their physicians, and players regarding player health and safety, and which—as the parties bargained—expressly delegate those duties to the Clubs and their medical staff.  *See e.g.*, *Williams* v. *Nat'l Football League*, 582 F.3d 863, 881 (8th Cir. 2009) (finding fraud claims "preempted because the Players cannot demonstrate the requisite reasonable reliance to prevail on their claims without resorting to the CBA and the Policy"); *Atwater* v. *Nat'l Football League*

---

[7]     Plaintiff also argues that the NFL conceded, during oral argument in *Dent* v. *Nat'l Football League*, No. 15-15143 (9th Cir. Dec. 15, 2016), *https://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000010751*, that the CBA provisions prescribing duties to NFL teams, personnel, and players cannot form the basis for LMRA preemption.  Plaintiff has completely mischaracterized the NFL's position.  At oral argument in *Dent*, the NFL's counsel was presented with a wholly inapposite hypothetical that, like Plaintiff's hypothetical involving an attempt by General Electric to invoke LMRA preemption based on the NFL CBAs (Remand Mem. at 2), is not remotely relevant here.  The NFL Defendants' relationship to the NFL CBAs is obviously very different than that of a third party like General Electric—as Plaintiff recognizes when she acknowledges that the NFL, unlike General Electric, has duties under certain CBAs—and Plaintiff concedes, as she must, that even "non-CBA-signatories can, in theory, assert federal jurisdiction based on the CBA and LMRA."  (Remand Mem. at 24; *see also Atwater* v. *Nat'l Football League Players' Ass'n*, 626 F.3d 1170, 1177–78 (11th Cir. 2010) (defendant's status as non-signatory "not dispositive" of preemption analysis because the "relevant question for preemption purposes is . . . whether Plaintiffs' state-law claims . . . would require the court to apply or interpret the CBA").)

*Players' Ass'n*, 626 F.3d 1170, 1183 (11th Cir. 2010); *Sherwin* v. *Indianapolis Colts, Inc.*, 752 F. Supp. 1172, 1177–78 (N.D.N.Y. 1990).

For example, a court cannot determine whether Hernandez justifiably relied on the NFL's alleged misrepresentations and omissions without first interpreting the CBA provisions designating Club medical staff responsible for treating player injuries and informing players about such injuries, among other provisions.  (*See* App'x A §§ A, B.)  A court could reasonably determine, as courts have in similar recent cases, that Hernandez's purported reliance on the NFL to provide generic warnings regarding brain injuries was unreasonable if the parties to the CBA had already determined that warnings were to be provided by the Club physician, or that committees (including NFLPA representatives) had responsibility to ensure player safety. *See Ballard*, 123 F. Supp. 3d at 1170 (negligent misrepresentation claim preempted because players' justifiable reliance on NFLPA's statements about risks of head impacts depended upon interpretation of CBAs); *Smith* v. *Nat'l Football League Players' Ass'n*, No. 14-cv-01559, 2014 WL 6776306, at *8 (E.D. Mo. Dec. 2, 2014) (same); *see also Williams*, 582 F.3d at 881.

\*      \*      \*

In sum, resolution of Plaintiff's claims substantially depends on an interpretation of the CBA's terms.

### 2.    The Case Law Confirms that Plaintiff's Claims Substantially Depend Upon an Interpretation of the Terms of the CBAs

A long line of NFL preemption cases have held that resolution of player-injury claims substantially depends on CBA terms addressing player safety.  For example, in *Duerson*, plaintiff alleged, as here, that the NFL assumed a duty to its players "to ensure [their] safety," and breached this duty by, among other things, "failing to educate players about the risks of concussions and the dangers of continuing to play after suffering head trauma . . . , and failing to

16

implement policies to prevent [plaintiff] from returning to play with his injuries."  2012 WL 1658353, at *1, *3; (*cf.* Compl. ¶ 348).  Rejecting plaintiff's arguments that this states a free standing, independent state law tort claim, the court held that because one could "plausibly interpret [CBA] provisions [on player health and safety] to impose a duty on the NFL's clubs to monitor a player's health and fitness to continue to play football," such that the "NFL could then reasonably exercise a lower standard of care in that area itself," plaintiff's claims were preempted by federal labor law.  *Duerson*, 2012 WL 1658353, at *4.  In *Maxwell*, the court considered similar claims and held that because the "CBA places primary responsibility for identifying . . . physical conditions on the team physicians," the "physician provisions of the CBA must be taken into account in determining the degree of care owed by the NFL and how it relates to the NFL's alleged failure to establish guidelines or policies to protect the mental health and safety of its players."  *Maxwell*, No. 11-cv-08394, Order at 1–2.

> Further, in *Stringer* v. *National Football League*, the court held that a negligence claim against the NFL—premised on the NFL's alleged failure to ensure "adequate care and monitoring of players suffering from heat-related illness" and "regulation of . . . return to practice"—was preempted because the "CBA places primary responsibility for identifying [certain] physical conditions on the team physicians," and those provisions "must . . . be taken into account in determining the degree of care owed by the NFL and what was reasonable under the circumstances."  474 F. Supp. 2d at 903–04, 910–11.  And in a recent case brought by players against the NFLPA concerning the union's alleged concealment of risks associated with head impacts, the court found the players' negligent misrepresentation, negligence, and negligent hiring and retention claims all preempted by Section 301.  *See Ballard*, 123 F. Supp. 3d at 1170–72 (NFLPA's alleged duty to disclose purported links between football injuries and

neurocognitive problems, and players' reliance, would "necessarily require an analysis of the various CBAs").

*Duerson*, *Maxwell*, *Stringer*, and *Ballard* are all consistent with numerous other decisions holding that NFL player claims against the NFL or its Clubs relating to duties addressed in the CBAs are preempted because their resolution would require interpretation of CBA terms. *See*, *e.g.*, *Givens*, 684 F. Supp. 2d at 990–91 ("The questions raised by the Complaint, such as whether a physician's failure to advise a player of his medical condition should be imputed to the club or whether the club has a duty independent of the physician to advise a player of his medical condition, are 'inextricably intertwined' with the provisions of the CBA."); *Sherwin*, 752 F. Supp. at 1177–78 (former player's claims that Club provided negligent medical treatment and fraudulently concealed the extent of player's injury were preempted because Club "did not owe a duty to provide medical care to the plaintiff independent of the relationship established in the [CBAs]"); *Jeffers* v. *D'Allessandro*, 681 S.E.2d 405, 412 (N.C. Ct. App. 2009) (former NFL player's negligent retention claim against Club concerning knee surgery preempted because resolution was substantially dependent upon an analysis of CBA provisions setting forth Clubs' and players' rights and duties in connection with medical care); *see also Atwater*, 626 F.3d at 1182 (former players' negligence and negligent misrepresentation claims preempted because court "would . . . have to consult the CBA to determine the scope of the legal relationship between Plaintiffs and the NFL and their expectations based upon that relationship"); *Williams*, 582 F.3d at 881 (negligence claim against the NFL preempted because "whether the NFL . . . owed the Players a duty to provide . . . a warning [that a supplement contained a banned substance under the NFL Drug Policy] cannot be determined without examining the parties' legal relationship and expectations as established by the CBA and the

18

Policy"); *Smith* v. *Houston Oilers, Inc.*, 87 F.3d 717, 719–21 (5th Cir. 1996) (players' claims for coercion, duress, extortion, and assault and battery preempted); *Holmes* v. *Nat'l Football League*, 939 F. Supp. 517, 527–28 (N.D. Tex. 1996) (player's claims for fraudulent inducement, intentional infliction of emotional distress, breach of implied covenant of good faith and fair dealing, and invasion of privacy preempted); *cf. Boogaard* v. *Nat'l Hockey League*, 126 F. Supp. 3d 1010, 1019 (N.D. Ill. 2015) (plaintiff's claims that NHL breached duty to keep players safe, including from brain trauma, preempted because scope of any duty on NHL's part depended on interpretation of CBA).

**B.      Plaintiff's Claims Against the NFL Arise Under the CBA**

Plaintiff's claims against the NFL also are preempted by Section 301 because they are premised on rights and obligations that arise under the CBA. *See Allis-Chalmers*, 471 U.S. at 213 ("state-law rights and obligations that do not exist independently of [collective bargaining] agreements" are preempted); *Williams*, 582 F.3d at 874.

The CBAs establish the duties of the NFL and its Clubs to provide medical care to NFL players. (*See* App'x A § A.)  Similarly, the CBAs acknowledge the role of the NFL and its Clubs in implementing and enforcing rules regarding professional football generally, and health and safety-related rules in particular, providing that the NFL and its Clubs have the obligation to amend all NFL playing rules and to address safety issues relating to playing equipment.  (*See id.* § C.)  The 2011 CBA also provides that the NFL will establish an electronic medical records system.  (*Id.* § A.)  Thus, the NFL's alleged duty to "reduce injury risks in football" (Compl. ¶ 348 (Tort III(b))) would expressly arise under the CBAs.

That this purported function arises under the CBAs is confirmed by the fact that no such duty exists independent of the CBAs; the NFL does not owe duties to promulgate rules regarding player health and safety to "every person in society."  *See United Steelworkers of Am.*

v. *Rawson*, 495 U.S. 362, 371 (1990) (holding a state law right arises outside of a CBA where defendant is "accused of acting in a way that might violate the duty of reasonable care owed to every person in society"); *Sherwin*, 752 F. Supp. at 1178 (finding fraud claim arose under CBA because "[t]he Colts owed a duty to . . . provide truthful information regarding medical treatment . . . only to their players covered by the standard player agreement and the CBA," not "to every person in society" ); *but see Stringer*, 474 F. Supp. 2d at 908.  Indeed, negligence-based duties are strictly limited to a determinate person or class of persons to whom, based on their relationship, injury is the foreseeable result of defendant's actions.  *See Palsgraf* v. *Long Island R.R.*, 162 N.E. 99, 100 (N.Y. 1928); *Carrier* v. *Riddell, Inc.*, 721 F.2d 867, 868–69 (1st Cir. 1983) (Breyer, J.) (citing *Palsgraf* and dismissing negligence claim under Massachusetts law for failure to allege "any special actions or special relationships" between plaintiff and defendant).

In sum, Plaintiff's claims substantially depend upon an interpretation of the terms of, or arise under, the CBA, and thus are preempted.

## C.      Section 301 Preempts Plaintiff's Claims Against NFLP and NFLF

Plaintiff's claims against NFLP and NFLF for negligence, fraudulent concealment, and civil conspiracy also are preempted because their resolution requires interpretation of the CBAs.  Plaintiff makes very few substantive factual allegations specific to NFLP or NFLF.  Indeed, three of Plaintiff's six claims are directed *en masse* against "all defendants."  (*See* Compl., ¶ 348 (Torts I-III).)  Even Plaintiff's purported negligence claim against NFLP, based on an alleged "duty to ensure that the equipment and materials it licensed and approved was of the highest possible quality and sufficient to protect [Hernandez] from the risk of injury," is not immune from Plaintiffs' undifferentiated pleading approach, since the Complaint directs the exact same allegation at the NFL.  (*See* Compl., ¶ 348 (Tort IV(b)).)  In

any event, these claims are preempted because they will require the Court to interpret the CBAs' terms allocating responsibility for treating player injuries and implementing safety-related rules and regulations among the NFL, its Clubs, and the NFLPA.  (*See supra* § I.A.)  In addition, the CBAs establish the Joint Committee on Player Safety and Welfare specifically to address and review, among other issues, helmets and other protective equipment.  (App'x A § C.)  Thus, the scope of any duty on NFLP's (or the NFL's) part to license or market adequately protective equipment can be assessed only by reviewing and interpreting the Joint Committee's concomitant duty with respect to "playing equipment."  Thus, for these reasons and those explained above, Plaintiff's claims against the NFLP and NFLF, too, are preempted.[8]

## D.   Plaintiff's Claim Is Subject to the Exclusive Jurisdiction of the Eastern District of Pennsylvania in MDL 2323

Critically, as explained at length in the NFL Defendants' motion to dismiss, Plaintiff also cannot proceed in state court because she is a Settlement Class Member unquestionably bound by the terms of the Class Action Settlement Agreement in MDL 2323 and subject to this Court's exclusive jurisdiction.  (*See* Defs. Mem. of Law in Supp. of Mot. to

---

[8]   Plaintiff cites *Stringer*'s holding that a negligence claim, based on a purported duty "to ensure that the players had safe equipment," was not preempted.  (Remand Mem. at 23); *Stringer*, 474 F. Supp. 2d at 912.  The *Stringer* court, however, relied on two faulty premises in reaching this holding.  First, the court found the claim was not inextricably intertwined with the CBA because—although the CBA plainly establishes the "Joint Committee" for the "'purpose of discussing the player safety and welfare aspects of playing equipment'"—the "NFL Defendants are not members of that committee and are not required to adopt [its] recommendations."  *Id.* at 912 (quoting CBA).  But, as discussed, regardless of whether the NFL Defendants are members of the Committee, it is impossible to determine the scope of the NFL Defendants' purported duty—or whether they acted "reasonably" with regard to playing equipment—without first considering the express "purpose" of the Committee and the equipment-related duties imposed on its members.  Second, the *Stringer* court determined that "the CBA imposes no duty on [the NFL Defendants] to ensure that the equipment . . . adequately protects from . . . injury[.]"  *Id.*  But, as noted above, numerous CBA provisions in fact do delegate responsibility to the NFL, its Clubs, and the NFLPA for reviewing, investigating, and implementing equipment-related rules and regulations.  *See supra* at I.A.1.

Plaintiff also cites *Oliver* v. *Riddell, Inc.*, No. 16-cv-4760, 2016 WL 7336412 (N.D. Ill. July 19, 2016), arguing that the CBAs cannot preempt claims against the NFLP and NFLF because they are not mentioned in the CBAs.  (Remand Mem. at 20, 23, 24–25.)  As explained above, *see supra* n.7, even if true, that omission is irrelevant where, as here, the Court will need to interpret the CBA provisions concerning the Joint Committee's duty to discuss "playing equipment" when determining the scope of the NFLP's duty in licensing such equipment, and because, as Plaintiff concedes, a party's non-signatory status is no bar to an assertion of LMRA preemption.

Dismiss the Compls. Filed by Settlement Class Members Tracy Scroggins, Rose Stabler, and A.H. § I.A (Aug. 17, 2018), ECF No. 10.)  Because Hernandez was no longer on a roster or under contract and was not seeking active employment with any NFL Member Club as of the date of Preliminary Approval, he is a Retired NFL Football Player, and Plaintiff, his daughter, is thus a Derivative Claimant, and in turn a Settlement Class Member, as those terms are defined in the Class Action Settlement Agreement.  (*See id.*; *see also* Class Action Settlement Agreement, as amended Feb. 13, 2015, §§ 1.1, 2.1(ee), 2.1(ffff), 9.4(b), ECF No. 6481-1 (the "Settlement Agreement").)  All Settlement Class Members released their claims against the NFL Defendants, including claims "arising out of, or relating to, CTE," and so Plaintiff's claims are barred.  (*Id.* § 18.1(a)(iv).)  Moreover, this Court retained "continuing and exclusive jurisdiction" over the Settlement Agreement and Settlement Class Members, including "continuing and exclusive jurisdiction to interpret, implement, administer and enforce the Settlement Agreement."  (Am. Final Order & J. ¶ 17 (May 8, 2015), ECF No. 6534; *see also* Settlement Agreement § 27.1 ("Any disputes or controversies arising out of, or related to, the interpretation, implementation, administration, and enforcement of this Settlement Agreement will be made by motion to the Court.  In addition . . . each Settlement Class Member [is] hereby deemed to have submitted to the exclusive jurisdiction of this Court for any suit, action, proceeding, or dispute arising out of, or relating to, this Settlement Agreement.").)  As such, although Plaintiff disputes— inexplicably—that her action is in clear violation of the Settlement Agreement, MDL 2323 is the proper forum to address that issue, which is now pending before the Court in connection with the NFL Defendants' motion to dismiss.

E.   **Plaintiff's Arguments in Support of Remand Lack Merit**

Plaintiff's arguments in opposition—ignoring settled preemption law and mischaracterizing her claim and the relevant legal standards—widely miss the mark.

1.      **The Complaint Is Based on Conduct
Occurring During Hernandez's NFL Career**

Plaintiff's principal argument in support of remand is that her claim is based on the NFL Defendants' "voluntarily assumed" duties to the "general public" and to "all members of society" and alleged "self-serving scientific research" released during Hernandez's life, while Hernandez's "late-in-life football-exposures coincid[ing] with his [NFL] employment" are merely "incidental" to her claim.  (Remand Mem. at 1, 12–13, 22, 28; Compl. ¶ 348.)  But Plaintiff's factual allegations belie that argument, and settled law rejects it.  For example, Plaintiff repeatedly refers to the activities of "*the NFL's* Mild Traumatic Brain Injury Committee" (*see, e.g.*, *id.* ¶ 13 (emphasis added)), which allegedly described itself and its work as "conducting studies to determine the effects of concussions on the long-term health *of NFL players*."  (*Id.* ¶ 256 (emphasis added).)  She also alleges that her claim is based on the NFL Defendants' purported conduct occurring over "the entirety of [Hernandez's] life" and "the entirety of decedent's football lifetime," periods of time that necessarily include *Hernandez's NFL career*.  (Remand Mem. at 6, 13, 18, 24; *see also* Compl. ¶¶ 337-39, 348.)

Despite Plaintiff's attempts to downplay Hernandez's years of play in the NFL, Plaintiff's claims against the NFL, at their core, fundamentally turn on duties the NFL could only have owed to professional football players, such as Hernandez, to implement adequate rules, regulations, and guidelines regarding, and to otherwise adequately protect, player health and safety.  (*See* Compl. ¶¶ 21, 221, 348.)  Such purported duties to protect Hernandez in his capacity as an NFL player arise out of the CBAs, or are substantially dependent upon an interpretation of the CBAs, and are thus preempted.  *Ballard*, 123 F. Supp. 3d at 1171 (noting that "the pleadings allege that the MTBI Committee produced findings that were deceptive to the NFL players *and the public at large*, [but] they repeatedly state that the MTBI was focused on

undermining studies relating to *NFL players'* response to concussions" and so are preempted (emphasis added)).

Moreover, it is both "exceedingly implausible" and contrary to the Complaint's own allegations for Plaintiff to contend that her claims are limited to the period preceding Hernandez's NFL career. *Duerson*, 2012 WL 1658353, at *3. Because "the CBAs were in effect during at least some of the events alleged in the complaint," and because, as shown above, resolution of Plaintiff's claims substantially depend upon an interpretation of the terms of, or her claims arise under, the CBAs, her claims are preempted. *Id.* at *3 (rejecting plaintiff's effort to artificially limit the time period to which his complaint related); *see Smith*, 2014 WL 6776306, at *7 (finding preemption where "the relevant events occurred at least at some point during each of Plaintiffs' [NFL] careers").

### 2. Plaintiff's Fraudulent Concealment Claim Requires a Duty to Disclose and Reasonable Reliance

Plaintiff's attempt to avoid preemption, by arguing that her fraudulent concealment claim requires neither a duty to disclose nor reasonable reliance under Massachusetts law, fares no better. (Remand Mem. at 20–21.)

Because Plaintiff's claim is based on an alleged failure to warn of or disclose the purported risks of head impacts in football (*see* Compl. ¶¶ 9, 16, 19, 336, 348), she must prove a duty to disclose and reasonable reliance. *See Sahin*, 758 N.E.2d at 138 n. 9; *Robertson* v. *Gaston Snow & Ely Bartlett*, 536 N.E.2d 344, 349–50 (Mass. 1989); 14D Mass. Prac. § 17.64; *see also Gottbetter*, 162 A.D.3d at 580. As explained above, the Court would need to interpret the CBAs to determine the scope of any such duty, the degree of care owed, and reasonable reliance. Plaintiff's claim is therefore preempted.

In support of her argument that Massachusetts law does not require these

elements, Plaintiff cites *Beal* v. *Broadard*, No. SUCV200205765C, 2005 WL 1009632 (Mass. Sup. Ct. Feb. 4, 2005).  (Remand Mem. at 21.)  But *Beal* holds no such thing.  *Beal* involved a misrepresentation claim (styled as a claim for "deceit" and not "concealment") relating to child molestation by a Bible study instructor in which "the plaintiffs allege[d] that the defendants' conduct amounted to an implied *representation* of fitness."  *See id.* at *7 (emphasis added).  In analyzing the misrepresentation claim, the court focused solely on whether defendants' representations were actionable statements of *fact* or non-actionable statements of *opinion*; the court did *not* consider, much less hold, that a duty to speak need not be proven in a case of fraudulent concealment or that reliance need not be "reasonable."  *Id*.[9]

Plaintiff also cites a treatise on Massachusetts law for the proposition that fraudulent concealment does not require a duty.  (Remand Mem. at 21.)  But this treatise in fact underscores that a duty *is* required for such claims: "In addition [to concealment], it must be established that the *defendant owed to the plaintiff a fiduciary duty or other similar relation of trust and confidence that required disclosure*."  14D Mass. Prac. § 17.64 (emphasis added); *see also* 14D Mass. Prac. § 17.60 (plaintiff bringing a fraud claim "must establish that he in fact relied on the defendant's misrepresentation in acting or refraining from acting, and that his reliance was justifiable or reasonable").[10]

Equally unfounded is Plaintiff's assertion that "Massachusetts law adheres to the Restatement of Torts § 550, which imposes no 'duty of care' for either conspiracy or for intentionally concealing."  (Remand Mem. at 20.)  In fact, § 550, which expressly concerns only

---

[9]   Unsurprisingly, no court has relied on *Beal* for the propositions Plaintiff claims it stands for.

[10]   Plaintiff cites to *Trans Penn Wax Corp.* v. *McCandless*, 50 F.3d 217 (3d Cir. 1995) in arguing that reliance is not "a question of CBA interpretation."  (*See* Remand Mem. at 20.)  However, *Trans Penn* simply found that there can be no preemption absent a need to interpret the CBA and that such interpretation was not necessary to assess reasonable reliance on the particular facts of that case.  By contrast, the Court will need to interpret the CBAs here to determine if Hernandez's alleged reliance on the NFL Defendants was reasonable in light of the CBAs' allocations of responsibility.  *See supra* at § I.A.

"business transaction[s]," simply provides that a defendant is "subject to the same liability" for intentional concealment as for "stated nonexistence of [a] matter."  Restatement (Second) Torts § 550.  It nowhere suggests that a duty to disclose is not an element of concealment.  Indeed, the very next section of the Restatement, § 551, which Plaintiff somehow neglects to discuss, expressly states that a person is liable for nondisclosure "if, but only if, he is under a *duty to the other to exercise reasonable care to disclose* the matter in question" or if he fails to "exercise *reasonable care to disclose*" certain facts.  Restatement (Second) Torts § 551 (emphasis added).

In sum, because Massachusetts's law, like that of other states, is clear that a duty and reasonable reliance are required elements of Plaintiff's fraudulent concealment claim, her claim is preempted because its resolution substantially depends upon an interpretation of the CBAs.

### 3.    Preemption Does Not Require Contractual Privity

Plaintiff also argues that her "loss-of-parental-consortium claim" is not preempted because she never "had a contractual relationship with the Defendants," she "never played football at all, much less professionally," and her injury is "untied to the CBA."  (Remand Mem. at 1, 11, 18.)  Again, Plaintiff misses the mark.  The Court would need to interpret the CBAs in resolving her claims *regardless* of her non-player status, and so her claims are preempted.

Although Plaintiff repeatedly suggests otherwise, loss of consortium claims, which require proof of an underlying tort, are subject to Section 301 preemption.  *Sena* v. *Com*., 629 N.E.2d 986, 994 (Mass. 1994).  "Exempting loss of consortium claims from preemption would inject into the labor relations area precisely the inconsistency that the preemption doctrine originally sought to eliminate.  If the underlying claim is preempted, the loss of consortium claim must also be barred."  *Cullen* v. *E.H. Friedrich Co.*, 910 F. Supp. 815, 826 (D. Mass. 1995) (dismissing spouse's loss of consortium claim because other spouse's underlying claims were

preempted); *Guthrie* v. *Raytheon Co.*, No. 98–4749, 2002 WL 1592509, at *7 (Mass. Super. July 12, 2002) (same); *Laskowski* v. *U.S. Dep't of Veterans Affairs*, 918 F. Supp. 2d 301, 331 (M.D. Pa. 2013) (loss of consortium claims are derivative claims that can only survive if the injured spouse's claim survives); *see also Rawson,* 495 U.S. 362 (Idaho wrongful death action brought by miners' survivors preempted by LMRA because union's duty to inspect mine arose from CBA).[11]

        To prevail on her claims—which are derivative of alleged negligence and fraud against Hernandez—Plaintiff will need to establish, among other things, (i) that the NFL Defendants owed Hernandez a duty to protect him from certain injuries and warn him about certain risks, (ii) the scope of that duty, (iii) that the NFL Defendants failed to discharge that duty reasonably, (iv) that such failure proximately caused injury to Hernandez, and (v) that Hernandez was justified in relying on the NFL Defendants' purported omissions. *See Garcia*, 2007 WL 2367672, at *3; *Seron* v. *Maltagliati*, No. 961132, 1998 WL 1284176, at *1 (Mass. Super. Ct. Apr. 28, 1998). As discussed above, resolution of these questions requires interpretation of numerous CBA provisions allocating responsibilities to NFL Clubs, the NFLPA, and the players themselves regarding player health and safety, including treatment of player injuries and making return-to-play decisions. *See supra* § I.A.

### 4. Plaintiffs Misstates the Relevant Legal Standard for Preemption

        In a misguided attempt to avoid removal, Plaintiff also attacks, one by one, various CBA provisions referenced in the NFL Defendants' notice of removal, arguing that "[n]one" of these provisions "suggest the existence of any legal duties raised *by the Complaint*

---

[11]    Plaintiff cites *Eyssi* v. *City of Lawrence*, 416 Mass. 194 (1993) for the proposition that a loss of consortium claim is "independent . . . even where the spouse was subject to workers' compensation exclusivity"; but such holding is irrelevant to whether a loss of consortium claim is *preempted* where the underlying claim is preempted under Section 301. (Remand Mem. at 19–20.)

and within the CBA, or raised *by the Complaint* and implied by the CBA."  (Remand Mem. at 25.)  This argument lacks merit.  A plaintiff need not allege direct violations of specific CBA provisions for preemption to apply; preemption applies not only where the plaintiff's claim arises out of a CBA provision but also where plaintiff's claim is substantially dependent on or inextricably intertwined with the interpretation of the terms of a CBA.  That is precisely the case here.

Plaintiff, however, cites *Green* v. *Arizona Cardinals Football Club*, 21 F. Supp. 3d 1020, 1030 (E.D. Mo. 2014), in arguing that a duty regarding medical care "is 'nondelegable,'" (Remand Mem. at 22), but the NFL is not arguing that its purported duties are or are not delegable; the point is that the scope of any purported duty requires interpretation of the CBA.  Moreover, *Green*—which the Court characterized as "an outlier"—is inapposite and was wrongly decided.  *See In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 392 n.46 (E.D. Pa. 2015).[12]

Plaintiff's citation to *Oliver* v. *Riddell, Inc.* is likewise unavailing.  In *Oliver*, the court's decision turned on the fact that the NFL was *not* a defendant in that case, making clear that the "complaint centers on the duties and obligations of a third party helmet manufacturer— *not the NFL and its players*."  No. 16-cv-4760, 2016 WL 7336412, at *3 (N.D. Ill. July 19, 2016) (emphasis added).  Here, of course, the claims against the NFL Defendants very much "center[] on the duties and obligations" of the "NFL and its players," and are qualitatively different from those against Riddell, a third-party helmet manufacturer.  Indeed, *Oliver* observed that "the

---

[12]   *Green* involved an interpretation of Missouri common law regarding the duty of an employer, which is not at issue here, and squarely conflicts with Eighth Circuit precedent providing that, under Missouri law, an employer's common law duties are negotiable, and thus interpretation of the as-negotiated scope of those duties in a CBA requires preemption.  (*See* Kan. City Chiefs Football Club, Inc. & Ariz. Cardinals Football Club, LLC's Joint Opp'n to Pls.' Mot. to Remand, *In re: Nat'l Football League Players' Concussion Injury Litig.* § II.A, 12-md-2323 (Sept. 25, 2017), ECF No. 8405.)

CBAs contain many provisions pertaining to the NFL's duty to monitor player health and equipment," but declined to find preemption of claims against Riddell because "the relevant question is not whether *the NFL* lived up to its standard of care under the CBAs." *Id.* (emphasis added). By contrast, that is *precisely* the question here, and *Oliver* fails to support Plaintiff's argument against preemption. Moreover, *Oliver* actually *endorses* the NFL Defendants' argument in recognizing that a court *would* need to interpret a CBA where it could be relevant to determine the applicable degree of care owed to a plaintiff, *id.* at *4, a showing Defendants have made here in relation to Hernandez. *See supra* § I.A.

Plaintiff's notice of supplemental authority concerning *Dent* v. *National Football League*, No. 15-1543 (9th Cir. Sept. 6, 2018), is similarly misguided. (Pl.'s Notice of Supplemental Authority (Sept. 6, 2018), ECF No. 12.) As explained in the NFL Defendants' response to Plaintiff's notice, incorporated by reference here, the Ninth Circuit's holding—that claims premised on the alleged violation of *state and federal statutes* conferring *non-negotiable* statutory rights governing the direct distribution of controlled substances were not preempted— has no bearing on whether the claims here—based on *negotiable common law duties*—are preempted. (Defs.' Response to Pl.'s Letter (Sept. 13, 2018), ECF No. 13.) Here, the Court would need to interpret the CBAs to determine, among other things, whether the NFL assumed a duty of care regarding player health and safety, the scope of any such duty in light of contractual assignments of duties to Clubs and their medical staff, whether the NFL acted reasonably or negligently in light of any such duty, and whether Hernandez was justified in relying on the NFL's alleged statements or omissions. (*Id.*) No state or federal statutes, conferring non-negotiable statutory rights and establishing a statutorily mandated duty of care, are at issue here.

As such, *Dent* is inapposite.[13]

Plaintiff's claim that "[a]t least eleven courts have allowed state claims to proceed in the face of challenges under" a particular provision of the NFL CBAs, (Remand Mem. at 26 & n.9), is equally misguided.  The cases Plaintiff cites either do not even reference the supposed CBA provision mentioned by Plaintiff, or they involve claims bearing no resemblance to Plaintiff's claim here, such as premises liability claims.[14]  These cases are easily distinguishable from Plaintiff's claims here, which concern the alleged undisclosed risks of head impacts and are thus closely tied to CBA provisions regarding treatment, diagnosis, and monitoring of player injuries, which many courts have agreed forms a basis for LMRA preemption.  *See, e.g.*, *Sherwin*, 752 F. Supp. at 1177–78.

Regarding several CBA provisions relating to medical care, Plaintiff argues both that "clinical medical care[] is a subject alien to the Plaintiff's claim," and that the Complaint's allegations pertain only to "non-clinical research disseminated to the world by Defendants [with] no nexus to NFL team medical care."  (Remand Mem. at 22, 26.)  Plaintiff's argument— rebranding her claim to omit explicit reference to player medical care *per se*, and drawing a nonsensical line between player medical care and "non-clinical research" concerning player

---

[13]   As further set forth in the NFL Defendants' response, the *Dent* decision also turned on unique aspects of California law, considerations unique to the controlled substances context, and plaintiffs' allegations (however implausible) of direct statutory violations by the NFL.  (Defs.' Response to Pl.'s Letter (Sept. 13, 2018), ECF No. 13.)  In any event, *Dent* is an out-of-circuit decision that was wrongly decided, out of step with the weight of authority, and should not be followed.  (*See id.*; *supra* § I.A.1 (collecting cases finding preemption against the NFL and/or its Clubs).)  Indeed, the Ninth Circuit recognized that its decision was in direct conflict with decisions of two other circuits, which it failed to distinguish persuasively from the case at bar.  (*See* ECF No. 13.)

[14]   *See, e.g.*, *Bush* v. *St. Louis Reg'l Convention*, No. 16-cv-250, 2016 WL 3125869 (E.D. Mo. June 3, 2016) (claims relating to conditions of playing facility); *Tynes* v. *Buccaneers Ltd. P'ship*, 134 F. Supp. 3d 1351 (M.D. Fla. 2015) (claims relating to MRSA outbreak at training facility); *Green* v. *Pro Football, Inc.*, 31 F. Supp. 3d 714 (D. Md. 2014) (claims relating to bounty program); *Jurevicius* v. *Cleveland Browns Football Co. LLC*, No. 09-cv-1803, 2010 WL 8461220 (N.D. Ohio 2010) (claims relating to staph infection at training facility); *McPherson* v. *Tenn. Football, Inc.*, No. 07-cv-0002, 2007 WL 5445124 (M.D. Tenn. May 31, 2007) (claims relating to negligent supervision of opposing team's mascot); *Brown*, 219 F. Supp. 2d 372 (claims relating to weighted penalty flag thrown by referee).

medical issues and care—is merely artful pleading and cannot defeat preemption.  *See Kurns*, 620 F.3d at 398 n.8 (a plaintiff "may not merely rebrand a claim in order to avoid preemption.").  Here, the underlying nature of the claim is that the NFL Defendants allegedly failed to disclose, and to protect Hernandez from, the risks of repetitive head injuries.  As discussed above, this claim is preempted because its resolution requires interpretation of the myriad CBA provisions governing player medical care.  *See Sherwin*, 752 F. Supp. at 1177–78.[15]  Moreover, the research Plaintiff references concerned health and safety issues of NFL players, and thus it hardly lacked a "nexus to NFL team medical care."  (*See* Remand Mem. at 22, 26.)[16]

## II.
## PLAINTIFF IS NOT ENTITLED TO COSTS OR ATTORNEYS' FEES

Plaintiff requests costs and attorneys' fees pursuant to 28 U.S.C. § 1447(c) (Remand Mem. at 30–31).  Plaintiff offers no basis for this request—and there is none.  The NFL Defendants had more than an "objectively reasonable basis for seeking removal."  *See Martin* v. *Franklin Capital Corp.*, 546 U.S. 132, 136 (2005) ("[A]bsent unusual circumstances, attorney's fees should not be awarded [under § 1447(c)] when the removing party has an objectively reasonable basis for removal.").  Because removal was proper here, as explained above, the

---

[15]  Plaintiff's citation to *Green* v. *Pro Football, Inc.*, 31 F. Supp. 3d 714 (D. Md. 2014), (*see* Remand Mem. at 21), does not support her argument; its holding that a conspiracy claim based on an illegal "bounty" program was not preempted does not stand for the proposition that conspiracy claims—which are always based on agreements to commit unlawful acts—can *never* be preempted.  *See, e.g., Beidleman* v. *Stroh Brewery Co.*, 182 F.3d 225, 236 (3d Cir. 1999) (conspiracy claim preempted under Section 301).

[16]  Plaintiff is also incorrect when she argues that the NFL is somehow "estopped"—apparently on the basis of issue preclusion—from arguing Section 301 preemption, based on two decades-old arbitration decisions having nothing to do with preemption.  (Compl. ¶¶ 86–90.)  Plaintiff's argument fails because she does not even attempt to show that the elements of issue preclusion are met:  she cannot show that either the issue of Section 301 preemption is identical to the issues actually litigated and determined in the referenced arbitrations (the only arguably relevant issue in those arbitrations was the arbitrability of claims against individual doctors, which is irrelevant here) or that the relevant determinations in those cases were essential to the judgments (they were mere *dicta*).  *See Zinman* v. *Prudential Ins. Co. of Am.*, 909 F. Supp. 279, 282 (E.D. Pa. 1995) (Brody, J.) (citing *Burlington N. R.R. Co.* v. *Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231 (3d Cir. 1995)).  Moreover, Plaintiff's estoppel allegations are contrary to the wealth of NFL-related preemption case law cited above, and should be disregarded, as described in detail in the NFL and NFLP's motion to dismiss briefing in this MDL, briefing that the NFL Defendants respectfully incorporate by reference here.  (*See In re:  Nat'l Football League Players' Concussion Injury Litig.*, 12-md-2323 (ECF Nos. 7767, 8403-1).)

Court should deny Plaintiff's request. Indeed, it is the NFL Defendants that are entitled to seek costs against Plaintiff under Rule 41 of the Federal Rules of Civil Procedure on the grounds that Plaintiff's claims here are identical to those asserted in her previously filed, and voluntarily dismissed, action in the United States District Court for the District of Massachusetts. *See* Fed. R. Civ. P. 41 (d) ("If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court . . . may order . . . costs of that previous action."); *see also Hernandez* v. *Nat'l Football League*, 17-cv-11812 (D. Mass.).

## CONCLUSION

For the reasons set forth above, the NFL Defendants respectfully submit that Plaintiff's motion to remand should be denied.

Dated: October 16, 2018                  Respectfully submitted,

/s/ Brad S. Karp
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Brad S. Karp
Bruce Birenboim
Lynn B. Bayard
1285 Avenue of the Americas
New York, NY 10019-6064
Tel:    (212) 373-3000
Email:  bkarp@paulweiss.com

*Attorneys for NFL Defendants*

*Appendix A*

A. **Player Medical Care Provisions**

- "If a Club physician advises a coach or other Club representative of a player's serious injury or career threatening physical condition which significantly affects the player's performance or health, the physician will . . . advise the player in writing." (Ex. 1, 2011 CBA Art. 39 § 1(c); *see also* Ex. 2, 2006 CBA Art. XLIV § 1.)

- "All determinations of recovery time for major and minor injuries must be by the club's medical staff and in accordance with the club's medical standards" for players categorized as "Reserve/Injured" on the Reserve List. (Ex. 3, 2010 NFL Constitution and Bylaws Art. XVII § 17.16(E).)

- "[I]f Player is injured in the performance of his services under this contract and promptly reports such injury to the Club physician or trainer, then Player will receive such medical and hospital care during the term of this contract as the Club physician may deem necessary . . . ." (Ex. 1, 2011 CBA App'x A, Standard Player Contract ¶ 9; Ex. 2, 2006 CBA App'x C, Standard Player Contract ¶ 9.)

- "[A]ll other physicians retained by a club to treat players shall be board-certified in their field of medical expertise. . . . Any Club medical physician . . . hired after the effective date of this Agreement must also have a Certification of Added Qualification . . . in Sports Medicine." (Ex. 1, 2011 CBA Art. 39 § 1(a).)

- "[A]ll Club physicians and medical personnel shall comply with all federal, state, and local requirements, including all ethical rules and standards established by any applicable government and/or other authority that regulates or governs the medical profession in the Club's city." (Ex. 1, 2011 CBA Art. 39 § 1(c).)

- "All athletic trainers employed or retained by Clubs . . . must be certified by the National Athletic Trainers Association . . . .  Each Club must have at least two full-time athletic trainers.  All part-time athletic trainers must work under the direct supervision of a certified athletic trainer." (Ex. 1, 2011 CBA Art. 39 § 2; *see also* Ex. 2, 2006 CBA Art. XLIV § 2.)

- "The home team shall provide a physician and an ambulance at each game available to both teams.  Said ambulance facilities shall be located at or adjacent to the stadium, with the driver in attendance in the ambulance for the use of both competing teams." (Ex. 2, 2010 NFL Constitution and Bylaws Art. XIX § 19.5.)

- "The NFL shall develop and implement an online, 24-hour electronic medical record system within 24 months of the effective date of this Agreement or such longer period as the parties may agree." (Ex. 1, 2011 CBA Art. 40 § 3.)

- "The parties agree to establish an Accountability and Care Committee, which will provide advice and guidance regarding the provision of preventive, medical, surgical, and rehabilitative care for players by all clubs.  The Committee shall consist of the NFL Commissioner and the NFLPA Executive Director (or their designees).  In addition, the Commissioner and Executive Director shall each appoint three additional members of the Committee, who shall be knowledgeable and experienced in fields relevant to health care for professional athletes." (Ex. 1, 2011 CBA Art. 39 § 3(a).)

- "The [Accountability and Care] Committee shall . . . develop a standardized preseason and postseason physical examination and educational protocol to inform players of the primary risks associated with playing professional football and the role of the player and the team medical staff in preventing and treating illness and injury in professional athletes; . . . conduct research into prevention and treatment of illness and injury commonly experienced by professional athletes . . . [and] assist in the development and maintenance of injury surveillance and medical records systems . . . ."  (Ex. 1, 2011 CBA Art. 39 § 3(c).)

- "If any player submits a complaint to the [Accountability and Care] Committee regarding Club medical care, the complaint shall be referred to the League and the player's Club, which together shall determine an appropriate response or corrective action if found to be reasonable." (Ex. 1, 2011 CBA Art. 39 § 3(d).)

- "Each Club shall use its best efforts to ensure that its players are provided with medical care consistent with professional standards for the industry."  (Ex. 1, 2011 CBA Art. 39 § 3(e).)

## B.  Player Rights and Obligations Related to Medical Care

- "The NFLPA shall have the right to commence an investigation before the Joint Committee [on Player Safety and Welfare] if the NFLPA believes that the medical care of a team is not adequately taking care of player safety."  (Ex. 1, 2011 CBA Art. 50 § 1(d); Ex. 2, 2006 CBA Art. XIII § 1(d).)

- "A player will have the opportunity to obtain a second medical opinion," and the Club shall bear the "responsibility for the costs of [these] medical services."  (Ex. 1, 2011 CBA Art. 39 § 4; *see also* Ex. 2, 2006 CBA Art. XLIV § 3.)

- "A player will have the right to choose the surgeon who will perform surgery . . . . Any such surgery will be at Club expense . . . ."  (Ex. 1, 2011 CBA Art. 39 § 5; Ex. 2, 2006 CBA Art. XLIV § 4.)

- "Each player will undergo the standardized minimum pre-season physical examination . . . which will be conducted by the Club physician(s) . . . ."  (Ex. 1, 2011 CBA Art. 39 § 6; Ex. 2, 2006 CBA Art. XLIV § 5.)

- "Player will undergo a complete physical examination by the Club physician upon Club request, during which physical examination Player agrees to make full and complete disclosure of any physical or mental condition known to him which might impair his performance under this contract . . . ."  (Ex. 1, 2011 CBA App'x A, Standard Player Contract ¶ 8; Ex. 2, 2006 CBA App'x C, Standard Player Contract ¶ 8.)

- "A player may examine his medical and trainers' records in the possession of the Club or Club physician two times each year, once during the preseason and again after the regular season.  Any player or former player may obtain a copy of his medical or trainer's records without charge upon request during the offseason.  A player's personal physician may . . . inspect the player's medical and trainers' records in consultation with the Club physician or have copies of such medical and trainers' records forwarded to such player's personal physician."  (Ex. 1, 2011 CBA Art. 40 § 2(a); Ex. 2, 2006 CBA Art. XLV § 2.)

## C. <u>Player Safety Provisions</u>

- "Playing rules may be amended or changed at any Annual Meeting by the affirmative vote of not less than three-fourths or 21, whichever is greater, of the members of the League, provided the proposed amendment or change has been presented to the League in writing fifteen (15) days prior to the Annual Meeting or a recessed session thereof, or provided the proposed amendment or change carries the unanimous approval of a duly appointed standing committee of the League vested with the authority to make a recommendation on proposed playing rules changes, in which case notice of at least 12 hours prior to the vote is required; and further provided that all playing rules proposals from clubs must be submitted in writing to the League office a minimum of thirty (30) days in advance of any Annual Meeting of the League.  Otherwise unanimous consent is required for any amendment to the Playing Rules."  (Ex. 3, 2010 NFL Constitution and Bylaws Art. XI § 11.2.)

- "A Joint Committee on Player Safety and Welfare . . . will be established for the purpose of discussing the player safety and welfare aspects of playing equipment, playing surfaces, stadium facilities, playing rules, player-coach relationships, and any other relevant subjects."  (Ex. 1, 2011 CBA Art. 50 § 1(a); Ex. 2, 2006 CBA Art. XIII § 1(a).)

- "If the NFLPA believes that the adoption of a playing rule change would adversely affect player safety," it may seek to investigate and "request an advisory decision by [an] arbitrator[]" regarding the proposed rule change.  (Ex. 1, 2011 Art. 50 § 1(c); Ex. 2, 2006 CBA Art. XIII § 1(c).)

- "The NFLPA will have the right to appoint two persons to attend those portions of the annual meeting of the NFL Competition Committee dealing with playing rules to represent the players' viewpoint on rules.  One of the appointees shall have a

vote on all matters considered at the meeting which relate to playing rules." (Ex. 1, 2011 CBA Art. 50 § 2; Ex. 2, 2006 CBA Art XIII § 2.)

## D.  **Player Benefits**

- "A player . . . will receive an Injury Protection benefit . . . [when the] player . . . [has] been physically unable, because of a severe football injury in an NFL game or practice, to participate in all or part of his Club's last game of the season of injury, as certified by the Club physician . . . ." (Ex. 1, 2011 CBA Art. 45 § 1; Ex. 2, 2006 CBA Art. XII  § 1.)

- "The parties agree to . . . establish a . . . plan . . . to provide medical benefits to former Players who are . . . determined . . . to have dementia." (Ex. 2, 2006 CBA Art. XLVIII-D § 1; *see also* Ex. 1, 2011 CBA Art. 58.)

- "[T]he Disability Plan will be amended to provide a benefit for those eligible Players . . . who have a permanent, neuro-cognitive impairment . . . ." (Ex. 1, 2011 CBA Art. 65 § 1.)

- *See also* Ex. 1, 2011 CBA Art. 30; Ex. 2, 2006 CBA Art. XXIII (Termination Pay); Ex. 1, 2011 CBA Art. 41; Ex. 2, 2006 CBA Art. LIV (Workers' Compensation); Ex. 1, 2011 CBA Art. 61; Ex. 2, 2006 CBA Art. LI (Supplemental Disability Benefits); Ex. 1, 2011 CBA Art. 66; Ex. 2, 2006 CBA Art. LII (Benefits Arbitrator); Ex. 1, 2011 CBA Art. 58; Ex. 2, 2006 CBA Art. XLVIII-D (88 Benefit); Ex. 1, 2011 CBA Art. 45; Ex. 2, 2006 CBA Art. XII (Injury Protection Benefit).

## E.  **Grievance Procedures**

- "Any dispute (hereinafter referred to as a 'grievance') arising after the execution of this Agreement and involving the interpretation of, application of, or compliance with, any provision of this Agreement, the NFL Player Contract, the Practice Squad Player Contract, or any applicable provision of the NFL Constitution and Bylaws or NFL Rules pertaining to the terms and conditions of employment of NFL players, will be resolved exclusively in accordance with the procedure set forth in this Article, except wherever another method of dispute resolution is set forth elsewhere in this Agreement." (Ex. 1, 2011 CBA Art. 43 § 1; Ex. 2, 2006 CBA Art. IX § 1.)

- The 2006 and 2011 CBAs expressly forbid players from bringing "any suit against . . . the NFL or any Club with respect to any claim relating to any conduct permitted by [the CBAs] . . . or any term of [the CBAs]" or "the Constitution and Bylaws of the NFL." (Ex. 1, 2011 CBA Art. 3 § 2; Ex. 2, 2006 CBA Art. IV § 2.)

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certified that a true copy of the foregoing Memorandum of Law of Defendants National Football League, the National Football League Foundation, and NFL Properties LLC in Opposition to Plaintiff's Motion to Remand, the Declaration of Dennis L. Curran, and the associated exhibits were served electronically via the Court's electronic filing system on the 16th day of October, 2018, upon all counsel of record.


Dated:  October 16, 2018                   <u>      /s/ Brad S. Karp      </u>
                                                            Brad S. Karp