**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | **No. 2:12-md-02323-AB**<br>**MDL No. 2323**<br><br> **Hon. Anita B. Brody** |
| **THIS DOCUMENT RELATES TO:** | **JURY TRIAL DEMANDED**<br>**ORAL ARGUMENT**<br>**REQUESTED** |
| **2:12-md-02323-AB (as applicable)**<br>**18-cv-0464 (*A.H. v. NFL et al*)** | |

## MEMORANDUM OF LAW OF PLAINTIFF A.H. IN OPPOSITION TO DEFENDANTS' PURPORTEDLY INCORPORATED MOTIONS TO DISMISS ON PREEMPTION AND FOR FAILURE TO STATE A CLAIM

Because the NFL, NFLP, and NFLC (collectively, the "Defendants") removed this action in error, the Court should never have to reach Defendants' implied Motion to Dismiss (No. 18-464, D.E. 5, p. 19 n.11) (purporting to incorporate related motion-to-dismiss briefing) for lack of subject-matter jurisdiction.[1] Plaintiff's Motion to Remand, challenging the Court's subject-matter jurisdiction over the entire case (D.E. 3) presents the logically prior issue. Resolution of the remand motion will also obviate most of this motion to dismiss for a substantive reason: a decision that the Defendants failed to meet their burden to establish federal question jurisdiction—because A.H.'s state law claims are not completely preempted by § 301 of the LMRA—also eliminates the Defendants' lead contention on their motion to dismiss- LMRA preemption. Even if the Court

---

[1] Defendants have never argued specifically—nor could they—that Plaintiff A.H.'s complaint fails to plausibly allege a Massachusetts-law loss-of-parental-consortium claim, in light of her highly-detailed pleading, alleging notably that the decedent was a victim of tortious conduct, and that she—as his child—experienced a loss of consortium in light of the third-party negligence. *See* No. 2:18-464, D.E. 1. Nor can Defendants rely on a statute of limitations defense here, where death occurred in May of 2017. Unless Defendants move specifically to dismiss A.H.'s action under Rule 12(b)(6) for non-preemption-related failure to state a claim, Plaintiff will rely on the Complaint.

were to reach these issues, none of the arguments the Defendants purport to incorporate by reference warrant dismissal, particularly before affording A.H. the benefit of discovery.

OVERVIEW

After A.H. sued them in state court for her loss of parental consortium, Defendants removed, arguing that federal jurisdiction existed through the LMRA. Eleven months later, Defendants moved for a dismissal of A.H.'s action on account of a purported prior, final judgment on the merits; they argued she became a class member through the filing her 2017 lawsuit. Therein, Defendants further attempted to "incorporate and adopt" separately-made—*e.g.* unrelated to A.H.—dismissal arguments. Those contended (as we can best understand) either that the Court must dismiss for a *lack* of federal-subject matter jurisdiction (Rule 12(b)(1)), or alternatively, that it must dismiss on the face of the complaint (Rule 12(b)(6)), due to the affirmative defense of LMRA preemption. These arguments would fail, to the extent the Court could reach them, and to the extent Defendants have not already waived them.

Through any of the available Rule 12(b) lenses, Defendants' preemption argument is unripe; the differing LMRA preemption tests would either require factual development, or would counsel against dismissal at present. Although courts can properly consider extrinsic information under some of these tests, in those instances, *both sides* must have the opportunity to develop supporting or rebutting facts in those circumstances. Through the lone exception, a facial LMRA-preemption challenge, the Court, bound to construe allegations as true and in the non-movant's favor, could not consider any of the Defendants' CBA. Particularly in light of the recent *Dent* Opinion, this latter path, provides exceptionally little help for Defendants. Simply none of these paths suggest preemption. Precisely why Defendants have creatively spliced together what are

divergent frameworks; their re-invented rules let them invoke their CBA, re-cast Plaintiff's allegations, and still stave off discovery.

Plaintiff shall not waste valuable space in recapitulating much of the legal argument that the Court has already considered at length, nor what she has already detailed in her motion to remand concerning "The Pertinent Facts Alleged in the Complaint" and "the Claims Asserted Against." (Mot. to Remand (D.E. 10149 ("Mot. Remand") at pp. 3-9.) That discussion forms an equally important backdrop to the arguments in response to the proposed application of these motions to dismiss over her operative pleading, and A.H. respectfully incorporates it here by reference. In addition, A.H. respectfully incorporates the opt-out opposition briefing, her own counsel's supplement to that earlier briefing, the Kansas City remand briefing, and the Seau counsel's supplement to this briefing.[2] Here, A.H. will focus on those issues requiring further refinement, most notably, the legal standards at issue.

<u>ARGUMENT</u>

## I.    PROPERLY FRAMING THE INQUIRY ON THIS UNUSUAL MOTION TO DISMISS.

A footnote within their class-membership dismissal motion claims that Defendants seek dismissal on additional grounds with respect to A.H., which they purport to accomplish through fleeting reference to last year's opt-out briefing.

We first challenge the propriety of footnoting wholly separate briefing from other actions in the fashion Defendants have attempted. *See Toscano v. Dep't of Pers. of New Jersey*, CIV. 3:08-CV-3779, 2009 WL 3335065, at *1 (D.N.J. Oct. 15, 2009) ("Defendant's motion is insufficiently specific to allow this Court to give it a thorough evaluation on its merits. All motions to the Court must 'state with particularity the grounds for seeking the order.' Fed.R.Civ.P. 7(b)(1)(B). This

---

[2] *See* D.E. 9518, 9522, 9825, 9823, D.E. 9521, D.E. 7963, 7966, and D.E. 9524, respectively.

particularity requirement ensures that when a motion comes before a court, the court will comprehend its basis and have "enough information to process the motion correctly." *Registration Control Systems, Inc. v. Compusystems, Inc.,* 922 F.2d 805, 807–08 (Fed. Cir. 1990).") Plaintiff does not even have notice as to (a) which pleading Defendants claim they have moved to dismiss (*i.e.*, the opt-out complaint or the removed, operative Massachusetts complaint) nor (b) which procedural rule Defendants' motion travels under: Rule 12(b)(1) or 12(b)(6). These failings require that Plaintiff guess at Defendants' argument in order to respond; this alone should suffice to deny Defendants' motion.

    A.    DEFENDANTS HAVE NOT APPLIED THEIR SEPARATE ARGUMENTS TO THIS ACTION.

To the extent Defendants have sought dismissal of A.H.'s action based upon the Opt-Out Plaintiffs' Second Amended Master Administrative Complaint (the "SAMAC"), this approach is procedurally and substantively flawed. The opt-out briefing concerned a separate universe of actions. Those Rule 12(b) motions sought the dismissal of a separate administrative pleading: Opt-Out Plaintiffs' Second Amended Master Administrative Complaint (the "SAMAC.") *See* No. 2:18-464, D.E. 4-1, at p. 19, n.11. At no point did Defendants' moving papers seek to dismiss A.H.'s removed, state-court complaint; indeed, it was not before the Court at the time of this filing. *See* No. 2:12-md-2323, D.E. 8403-1, at p. 19, n.11. Moreover, A.H.'s operative pleading is distinct from the SAMAC in numerous, critical respects. And as Defendants never dispute (because they cannot), this state-court complaint remains the operative pleading unless the Court denies remand. The Court seems to have recognized as much previously, in partitioning *Hernandez* from this very sluice of opt-out actions and recognizing that Defendants' *reply* raised "unique" issues. *See* D.E. 9758 (Notice regarding *Hernandez* and *Robinson*) at 2. If the footnote in question represents

Defendants' intention to dismiss A.H.'s non-existent SAMAC complaint, then the cart has been placed dramatically ahead of the horse.

On the other hand, to the extent that Defendants are asking the Court, if unenergetically, to simply apply what they advanced elsewhere onto A.H.'s separate, state-court complaint, then this, too, ought to pose similarly fatal problems. Once more: the two pleadings are not identical. Yet Defendants never attempt to explain how their arguments would apply with equal force upon A.H. She has filed a one-count complaint arising only from a loss of parental consortium. *See discussion at* Mot. Remand, pp. 11, 17-18. Defendants' SAMAC briefing gives short shrift to unrelated consortium claims. It does so under the inapplicable legal premise that consortium claims were derivative. Consortium rights may often be derivative under a majority of state's laws. But not in Massachusetts. Massachusetts makes very clear that such a claim is *not* derivative and that is instead, an independent, substantive right. *See id.*

It would be as improper to impute the SAMAC-related argument onto A.H. before the Court determines jurisdiction as it would be to impute Defendants' related-but-distinct opt-out-preemption arguments onto the removed complaint.

B.   WHICH PROCEDURAL RULE GOVERNS DEFENDANTS' MOTION TO DISMISS ON PREEMPTION GROUNDS?

It is critically important to recognize that not all preemption analysis is created equal. At oral argument regarding opt-outs, the Court already observed that "you can [dispose of a preemption motion without discovery] … whether it's appropriate in this case is another story…" And indeed it is entirely true that not *every* preemption motion requires discovery. Generally, remand motions contesting LMRA jurisdiction implicate the complaint, the removal notice, and the CBA. *See* Mot. Remand, at p. 14 (the Court considers the state court record at the time of removal.) But Rule 12(b) LMRA motions are governed by entirely different standards.

As authority cited by the Defendants very clearly reveals, *See* D.E. 9665 at pp. 34-35, n. 20 (citing *Oddo v. Bimbo Bakeries USA, Inc.*, No. 16-cv-04267, 2017 WL 2172440, at *2–4 (D.N.J. May 17, 2017)), the strictures of LMRA preemption differ and depend on the form of the motion to dismiss (facial and factual challenges; jurisdictional and substantive defenses *see id.*) Each differently impacts the burden of proof, as well as the documents and evidence considered. Yet Defendants' Motion to Dismiss on Preemption Grounds never indicates whether it travels under 12(b)(1) or Rule 12(b)(6). We need to know the answer because of these separate and divergent analytical frameworks. Even if Defendants have moved under both rules "in the alternative"[3], the Court would still need to untangle the two rules and perform separate analyses.

### 1.   *Rule 12(b)(1)*

First, it should be made clear that the LMRA defense likely proceeds under 12(b)(6). In this action, and distinct from federally-filed cases before the Court through the opt-out briefing, Defendants have *sought out federal jurisdiction by removing this state-court action to federal court*; in doing so, they have already presumed the existence of federal jurisdiction under the LMRA in their removal notice. *See* No. 18-464, D.E. 1 (Defs'. Notice of Removal), ¶ 6. Thus, their motion to dismiss asserts preemption as a defense to the viability of A.H.'s state law claims. A finding of preemption in this context would be equivalent to a choice-of-law ruling.[4] It does not

---

[3] In the Defendants' Reply in Further Support of their Motion to Dismiss on Preemption Grounds (D.E. 9665, pp. 34-35, n. 20), they take a straw-man approach to Mr. Johnson's argument, and imply they have moved to dismiss under each rule in the alternative.

[4] For instance, a preempted state law claim that partially "depend[s] for its resolution" on the interpretation of a CBA provision means that "federal law would govern the interpretation of the agreement, but the separate state-law analysis would not thereby be preempted." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 n.12 (1988). Alternatively, a wholly preempted claim may still be "treated as a § 301 claim," *Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 863 (1987); *accord United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372 (1990); *Bartholomew v. AGL Res., Inc.*, 361 F.3d 1333, 1342 (11th Cir. 2004). It is a separate question whether such a claim would then be covered by an arbitration provision in the CBA. *See Bartholomew*, 361 F.3d at 1342.

even automatically entail dismissal. *See id.* Particularly where Defendants themselves concede they have not compelled arbitration, and where they have chosen to raise other defenses first.[5]

Only to the extent that Defendants' LMRA-preemption argument turns on compliance with the grievance procedure—and seeks to compel arbitration, which it hardly seems to do (*see* D.E. 9665 at p. 34 ("… the NFL has not independently moved to compel arbitration …")—could the motion travel under Rule 12(b)(1).  Had Defendants' motion levied a factual challenge to the Complaint based on non-compliance with the grievance procedure, the Court could venture beyond the pleadings to properly consider portions of the CBA. But in such an instance, A.H. would enjoy—by right—a factual rebuttal. It would make disposition impossible at this time, and particularly where the grievance procedure does not apply to A.H. whatsoever.

To the extent that Defendants' LMRA-preemption argument levied only a facial challenge on these same grounds, the Complaint itself would need to form the basis for their argument; the Court would not be able to reach the CBA, because here, the Complaint clearly delineates relationships between Defendants and Plaintiff that are independent. *See Oddo*, at \*2-4.

## 2.    *Rule 12(b)(6)*

To the extent that the LMRA preemption defense proceeds under Rule 12(b)(6), not Rule 12(b)(1), this too, implicates critically different rules. Defendants' LMRA preemption argument rests heavily on a document that is outside the four corners of the Complaint: their CBA. Under Rule 12(b)(6), extrinsic documents may *only* be considered through a narrow exception that does not apply here: if "plaintiff's claims are based on the document." *Pension Benefit Guaranty*

---

[5] To the extent that a 12(b)(1) motion were one seeking to dismiss for failure to exhaust grievance procedures (a motion to compel arbitration, *see SuperMedia v. Affordable Elec., Inc.*, 565 Fed. App'x 144, 147-148 (3rd Cir. 2014)), Defendants' decision to litigate claims heavily in the courts, raise significant merits defenses, and delay eleven months to compel arbitration from the time A.H. filed her action all suggest they have waived any theoretical right they had.

*Corporation v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993). But in deciding whether the document forms the basis for Plaintiff's claim, it must consider only the four corners of A.H.'s Complaint. She is a toddler who never played football raising a more than colorable state law claim. That her claims were arguably contractual would be a defense, and not part of her affirmative claim unless Defendants could show the CBA as essential to *Plaintiff's own construction of her complaint*.[6] As extrinsic evidence outside the complaint, the NFL's "attempt to insinuate factual matter" by presenting their CBA at the pleadings stage is improper. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."); *Gray v. Keystone Steel & Wire Co.*, No. 08-1197, 2009 WL 187895, at *1 (C.D. Ill. Jan. 21, 2009) (refusing to "consider the excerpts of the CBA" where complaint itself did not expressly "refer to the CBA"). Simply, a Rule 12(b)(6) challenge to A.H.'s action would fall short, as the face of her complaint does not reveal the basis for any rights she has sued upon as contractual.

## II.   *DENT V. NFL* FORECLOSES DEFENDANTS' LMRA PREEMPTION ARGUMENTS.

Beyond those cases repeatedly referenced in the litigation of this issue over the past five-plus years, an appellate court has finally spoken on the specific issue of LMRA preemption in connection with the NFL's CBA and personal injury claims. *See* No. 15-15143 (9th Cir. Sept. 6, 2018). Defendants have sought to minimize the significance of *Dent*, calling it wrongfully decided, characterizing it as out-of-step with a handful of district court opinions, and even suggesting it may create a circuit-split (based on a case involving the NFLPA as a defendant and another case

---

[6] Stated differently: remand and 12(b)(1) allow Defendants to argue that a pleading's essence implicates their CBA. Under Rule 12(b)(6) analysis, one would need to view allegations and inferences in the light most favorable to Plaintiff. Thus it could not reach the CBA.

concerning an active player's CBA-mandated suspension.) In fact, it is squarely on point and readily distinguishable from those others.

In *Dent*, Defendants (NFL and NFLP) also represented by Mr. Clement[7], relied on identical CBA language in arguing unsuccessfully for the 12(b) LMRA preemption of near-identical claims. Defendants' arguments for LMRA preemption in *Dent* had significantly more merit on their face than they do here. The *Dent* plaintiffs' claims and allegations turned expressly on medical treatments rendered to acutely injured NFL players. For example, the *Dent* Plaintiffs alleged that doctors over-prescribed controlled substances and that the NFL acted carelessly in supervising these activities. This directly implicated the question of the CBA's duty of medical care.

Application of that same CBA language over the claims plead in *Hernandez* is far more attenuated. The gist of *Hernandez* is that the Defendants knew or should have known that football might kill or catastrophically injury football players (children, amateurs, and professionals alike), yet acted carelessly—or worse—in broadly marketing their game, disseminating safety messages to the football universe, and in undertaking purportedly scientific research alleged by A.H. to have been—in fact—sham-research. In other words, A.H.'s claims don't concern medical care *at all*. Once more: what Defendants seek to do—as evidenced by their lengthy citation to District Court orders we have addressed in separate briefing—is dismiss claims against the NFL, NFLP, and NFLC, by and through arguments that belong only to its clubs. And though we disagree that these same arguments, if raised by clubs, would fare any better (*e.g., Green v. Arizona Cardinals Football Club*, 21 F.Supp. 3d 1020 (E.D. Mo. 2014), A.H. didn't sue the clubs. *Dent* squarely

---

[7] Mr. Clement's arguments mirrored those he presented to this Court almost exactly. *See Dent v. NFL*, No. 15-15143 (9th Cir. Dec. 15, 2016) (oral argument) *Last viewed on February 17, 2018 and available at*: https://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000010751.

rejects the "you can't state a claim against the NFL without looking to the clubs' duties" argument as a valid preemption argument; it clarifies that this is, if a weak one, a 12(b)(6) argument.

Belying Defendants' notion that nuances in state law somehow materially contributed to *Dent's* outcome, the opinion's reference to "California law" fairly clearly references California to signify that the claims are common law tort claims; there is nothing exotic about California's approach as compared to Pennsylvania or Massachusetts. In fact, the point made by the Court is a precise point that we also make in our briefing under applicable law: the premise of their entire preemption defense is that the NFL's tort obligations have been altered by their separate contract with their clubs. *Compare Dent*, at 25 *with* No. 18-464, D.E. 5 (Plf's Mot. to Remand) at 22. But that is a legally incorrect premise under *any* state's laws.

To the extent that Defendants characterize the purported "central question" in *Dent* as being whether the LMRA preempts claims premised on the alleged violation of statutes illegal conduct, we would also disagree. Although clearly, *Dent* substantially analyzes statutory negligence (*per se*), we would disagree with the implied assertion that this analysis would therefore be less critical in the case here. First, Plaintiffs' claims derive largely from wrongful death, survival, and consortium statutes. Second, as the *Oliver* court observed when declining to preempt essentially the same complaint also drafted by me, "the 'illegal act' is the establishment of sham research committees." *Oliver v. Riddell, Inc.*, No. 16-cv-4760, 2016 WL 7336412 at *6 (N.D. Ill. Jul. 19, 2016). That analysis applies will full force here as well, favoring the identical result.

Moreover, the negligence-*per-se* analysis comprises only a portion of *Dent's* words on LMRA preemption in the context of the NFL's CBA. *Dent* also gives lengthy treatment to the LMRA preemption of common-law claims.[8] And while Defendants may claim that *Dent* reveals a

---

[8] *Dent* addresses a bevy of common-law claims and finds each of them non-LMRA-preempted. It specifically addresses: negligent hiring/retention (pp. 22-23); negligent misrepresentation (pp. 23-24); disclosure obligations under

"critical distinction" with respect to LMRA preemption of common-law claims and two other preemption opinions concerning the CBA (*Williams*-Eighth Circuit and *Atwater*-Eleventh Circuit), it is a different distinction than the one they present. *Dent* distinguishes each of these authorities. *See n.1.*

It is of course true that each of those Circuits found common-law claims preempted, but as *Dent* counsels in rejecting Mr. Clement's arguments, "unlike *Atwater* and *Williams*, no CBA provisions address the subject matter of the litigations … **even arguably** …" (*Emphasis added.*) In *Atwater*, the NFLPA was sued; not the NFL. This distinction is critical, often overlooked, and distinguishing unto itself: with respect to NFLPA claims, the contract (*e.g.*, the CBA) quite literally forms the *only* relationship between the NFLPA and its own players, an important fact likely also critical in *Ballard*. Moreover, the *Atwater* case concerned an alleged violation of an express term within the CBA. In *Williams*, active players sued the NFL regarding drug-related suspensions from employment. In neither action did those defendants raise the medical-care provision in the applicable CBA to defend against later-accruing injury claims. That was exactly the case in *Dent*, as it is exactly the case here. Further casting doubt on the applicability of those authorities to injury and death-related claims, *Tynes v. Buccaneers Limited Partnership*, 134 F.Supp. 3d 1351 (M.D. Fla. 2015), which we have cited, was also decided under Eleventh Circuit law and after *Atwater*. Defendants cited to *Atwater*, but the District Court found that Tynes's common-law negligence claims concerning an infection caused by allegedly unreasonably dirty medical facility were beyond the scope of LMRA preemption.

<u>CONCLUSION</u>

---

the CBA (for the purposes of fraudulent misrepresentation and omission, p.25) and discusses the elements successfully plead without preemption (p. 26); fraudulent concealment (pp. 27-28); consortium claims (p. 28); and it suggests the analysis for the teams would be no different, in its approval (p.20 n.8) of the District Court's non-preemption of the identical claims against the individual teams (the member clubs.) Notably, we have plead each one of these claims and believe the same result applies here.

WHEREFORE in light of the foregoing Plaintiff asks the Court to deny Defendants'
motions, and in the alternative, for leave to amend her complaint.

Respectfully submitted,

Dated: October 16, 2018

*/s/ Bradford Rothwell Sohn*
Admitted *Pro Hac Vice*
The Brad Sohn Law Firm, PLLC
2600 S. Douglas Road, Suite 1007
Coral Gables, FL 33134
786.708.9750 Office
305.397.0650 Facsimile

THE BAEZ LAW FIRM
23 South Osceola Ave.
Orlando, FL 32801
407-705-2626
jose@baezlawfirm.com
*Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY this 16th day of October, 2018 that true and accurate copies of the

foregoing Notice was served via ECF and electronic mail to all counsel of record.


_____/s/ Bradford R. Sohn

Bradford R. Sohn, Esq.