UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE RETIRED PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br><br>███████ Concussion Settlement ID No. 260006736 | Hon. Anita B. Brody |

### OBJECTION TO SPECIAL MASTER'S OCTOBER 11, 2018 RULING

███████. respectfully objects to the Special Master's October 11, 2018 Ruling (the "Order")(attached hereto as Exhibit 1) and requests that the Court reinstate Claimant's full award immediately, together with interest and attorneys' fees. Now that the Special Master has finally explained the rationale in overturning ███████ thrice-approved award[1], it is clear that the Special Master is erroneously misapplying clear terms of the Settlement Agreement and *sui sponte* is raising an entirely new standard for approval of pre-effective date players' claims under the Settlement. Moreover, the Special Master relied on matters outside the scope of the appeal and addressed and adopted arguments that were never raised in the claims process below. This is a matter of law that must be corrected by the Court under the unambiguous terms of the Settlement Agreement.

**The Special Master Used a "Generally Consistent" Analysis
That Does Not Apply to the Pre-Effective Date Diagnosis made Here.**

In overruling three prior approvals of ███████ claim, the Special Master (based on advice of the same AAP Panel who ironically had approved ███████ award twice before)

---

[1] See Doc. 10094, ███████ Objection to Special Master's May 31, 2018 Ruling for background. Claimant incorporates that entire filing herein.

concluded that "there is clear and convincing evidence that Claimant's diagnosis was not *generally consistent with* the Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment as defined in the Settlement Agreement." (Emphasis provided) (Special Master's Order, p.3). However, the "generally consistent" language pointed to by the Special Master **does not apply** to ▇▇▇▇ claim, because ▇▇▇▇ brings a claim for injuries that were diagnosed prior to the Effective Date of the Settlement. And under the clear terms of the Settlement Agreement, there was no requirement for a neuropsychological test under the applicable section of the Settlement Agreement. The Special Master acknowledges in the first paragraph of his Order that ▇▇▇▇ "received a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment by a Board Certified Neurologist, Dr. Michael Lobatz, on June 3, 2015, prior to the Effective Date of the Settlement Agreement." That admission should end the dispute as a matter of law under the clear terms of the Settlement Agreement. ▇▇▇▇ claim falls under Section 6.3(d) of the Settlement Agreement, not Section 6.3(b).

Section 6.3(d) of the Settlement Agreement states as follows:

> (d) **Prior to the date of the Preliminary Approval and Class Certification Order**, a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, or ALS shall be made only by board-certified neurologists, board certified neurosurgeons, or other board certified neuro-specialist physicians, or otherwise qualified neurologists, neurosurgeons, or other neuro specialist physicians, except as set forth in Section 6.3(e).[2]

Settlement Agreement, Section 6.3(d)  (Emphasis supplied).

There is no requirement for anything other than the report of a Board Certified neurologist or other board certified neo-specialist physician.  There is no mention of a requirement for a neuropsychological report, let alone one using a certain set of T scores that are

---

[2] Section 6.3(e) relates to players who died prior to the Effective Date, not at issue in this claim.

to be utilized by the MAF and BAP providers for analytical purposes. There is no mention of MAF or BAP-approved providers that must diagnose the impairment. And, there is no mention of "Exhibit 1" where the reference to "generally consistent" lies.

    Contrast Section 6.3 (b), which clearly does not apply here but states:

> (b) **Following the Effective Date**, a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, or ALS shall be made only by Qualified MAF Physicians, except that a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment or Level 2 Neurocognitive Impairment may also be made by Qualified BAP Providers as set forth in Section 5.2 and consistent with the term of Exhibit 1 (Injury Definitions).

Settlement Agreement, Section 6.3(b)  (Emphasis supplied).

    Using this improper standard, the Special Master then has to go all the way to Exhibit 1 under Level 1.5 Neurological Impairment, Section (a)(iii) to find that a player must exhibit functional impairment "generally consistent with the criteria set forth in the National Alzheimer's Coordinating Center's Clinical Dementia Rating (CDR) scale …." *See* Settlement Agreement Exhibit 1. However, **Exhibit 1 never comes into play in Section 6.3(d),** under which ▮▮▮▮▮▮▮▮ claim must be analyzed. And, the no one below mentioned the CDR standard. The first time, the CDR standard is mentioned in this claim is by the Special Master on this appeal.

    The Special Master's reading of the Settlement Agreement makes Section 6.3(d) meaningless. The Special Master's Order improperly follows 6.3(b), without any explanation, rather than applying the standard that the parties agreed upon and the Courts approved, that Section 6.3(d) has to do with the claims asserted by retired players based upon diagnosis made before the Settlement became effective. ▮▮▮▮▮▮▮▮ complied with Section 6.3(b) and

received a qualifying diagnosis from a world-renowned specialist in the field.[3] The Special Master has no authority to unilaterally apply new requirements on ▮▮▮▮ or to turn a pre-effective diagnosis into a post-effective date diagnosis.

▮▮▮▮ agreed to the Settlement Agreement as written – not some changing document that alters terms at the whim of the NFL or the Special Master.

## CONCLUSION

▮▮▮▮ relied on the terms of the Settlement Agreement in making a decision to agree to the settlement at all. His award has been approved, then approved again, then audited and approved a third time. He has followed his end of the bargain under the Settlement Agreement. He has been waiting for nearly a year-and-a-half after his claim was first approved for the Settlement Agreement to be followed by other parties. The Special Master's Belated Explanation makes clear that the Special Master is not applying Section 6.3(d) under the terms of the Settlement Agreement. This Court must now intervene to ensure ▮▮▮▮ receives what he bargained for.

Dated: October 26, 2018

Respectfully submitted,

By: /s/ Wendy R. Fleishman
Wendy R. Fleishman

Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

---

[3] Dr. Lobatz stands by his diagnosis even after reviewing the objections and arguments from the NFL. See Exhibit 2 attached hereto. While this letter was not prepared in time to become a part of the record earlier, ▮▮▮▮ provides it here.

## CERTIFICATE OF SERVICE

I, hereby certify that on October 26, 2018, I electronically filed OBJECTION TO THE SPECIAL MASTER'S October 11, 2018 RULING with the Clerk of the United States District Court for the Eastern District of Pennsylvania using the CM/ECF system, which shall send electronic notification to all counsel of record.

<i><u>/s/ Wendy R. Fleishman</u></i>

1638405.1