# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br>　　　　　　　　　Plaintiffs,<br><br>　　　　　　v.<br><br>National Football League and NFL Properties, LLC, *successor-in-interest to NFL Properties, Inc.*,<br>　　　　　　　　　Defendants. | No.  14-cv-00029-AB |
| THIS DOCUMENT RELATES TO:<br><br>*Martin* v. *Kansas City Chiefs Football Club, LLC* | No. 14-cv-3381 |
| *Lewis* v. *Kansas City Chiefs Football Club, LLC* | No. 14-cv-1995 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT KANSAS CITY CHIEFS FOOTBALL CLUB INC.'S MOTION TO DISMISS THE <u>COMPLAINT FILED BY SETTLEMENT CLASS MEMBER ANITA MARTIN</u>**

# **TABLE OF CONTENTS**

        **Page**

TABLE OF AUTHORITIES ..................................................................................................ii  
PRELIMINARY STATEMENT.............................................................................................1  
ARGUMENT ..........................................................................................................................2  
CONCLUSION .......................................................................................................................8

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Am. Exp. Fin. Advisors Secs. Litig.*,
    672 F.3d 113 (2d Cir. 2011) ............................................................................................... 7

*Bowman* v. *UBS Fin. Servs., Inc.*,
    No. 04-cv-3525, 2007 WL 1456037 (N.D. Cal. May 17, 2007) ....................................... 4

*Boyd* v. *Nat'l Football League*,
    No. 12-cv-92 (E.D. Pa. Apr. 11, 2012) ............................................................................. 3

*In re Deepwater Horizon*,
    819 F.3d 190 (5th Cir. 2016) ............................................................................................ 6

*Demint* v. *NationsBank Corp.*,
    208 F.R.D. 639 (M.D. Fla. 2002) ..................................................................................... 4

*In re Diet Drugs Prods. Liability Litig.*,
    92 F. App'x 890 (3d Cir. 2004) ........................................................................................ 7

*In re Dvi, Inc. Secs. Litig.*,
    No. 03-cv-5336, 2016 WL 1182062 (E.D. Pa. Mar. 28, 2016) ..................................... 6, 7

*In re Imprelis Herbicide Mktg., Sales Pracs. & Prods. Liability Litig.*
    ("*Imprelis I*"), 11-md-2884, 2014 WL 348593 (E.D. Pa. Jan. 31, 2014) .................. passim

*In re Imprelis Herbicide Mktg., Sales Practices and Prods. Liab. Litig*,
    No. 11-md-2884, 2014 WL 6901120 (E.D. Pa. Dec. 5, 2014) ......................................... 6

*In re Ins. Brokerage Antitrust Litig.*,
    282 F.R.D. 92 (D.N.J. 2012) ............................................................................................ 3

*In re Linerboard Antitrust Litig.*,
    223 F.R.D. 357 (E.D. Pa. 2004) ....................................................................................... 5

*McCubbrey* v. *Boise Cascade Home & Land Corp.*,
    71 F.R.D. 62 (N.D. Cal. 1976) ......................................................................................... 5

*In re Nat'l Football League Players' Concussion Injury Litig.*,
    307 F.R.D. 351 (E.D. Pa. 2015) .................................................................................... 4, 5

*In re Processed Egg Prod. Antitrust Litig.*,
    130 F. Supp. 3d 945 (E.D. Pa. 2015) ............................................................................... 7

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*,
   177 F.R.D. 216 (D.N.J. 1997) .................................................................................... 4, 6

*In re Prudential Secs. Inc. Ltd. P'ships Litig.*,
   164 F.R.D. 362 (S.D.N.Y. 1996), *aff'd*, 107 F.3d 3 (2d Cir. 1996) ................................... 4

*Sloan* v. *Winn Dixie Raleigh, Inc.*,
   25 F. App'x 197 (4th Cir. 2002) ................................................................................. 3, 4

*US W., Inc.* v. *Bus. Disc. Plan, Inc.*,
   196 F.R.D. 576 (D. Colo. 2000) ...................................................................................... 5

*In re WorldCom, Inc. Secs. Litig.*,
   No. 02-cv-3288, 2005 WL 1048073 (S.D.N.Y. May 5, 2005) .......................................... 4

Defendant, the Kansas City Chiefs Football Club, Inc. ("Defendant"), respectfully submits this reply memorandum of law in further support of its motion to dismiss Settlement Class Member Anita Martin's ("Martin") putative claim in the above-captioned actions.

## **PRELIMINARY STATEMENT**

As Defendant's moving brief showed, Martin is a Settlement Class Member whose putative claim for loss of consortium is barred by the release in the Settlement Agreement and the doctrine of claim preclusion and should therefore be dismissed.

Martin does not dispute that her putative claim is encompassed by the Settlement Agreement's release, that she received notice of the opt-out requirements under that Agreement, or that she failed to file an opt-out request by the deadline. Instead, in her eleventh-hour opposition—filed after she missed yet another deadline and was given a second chance to respond to Defendant's motion—Martin argues that she "effectively" opted out because her ex-husband opted out and that her pre-settlement filing of an individual lawsuit, and subsequent actions nearly three years after the opt-out deadline, evidenced an intent to opt out, thus excusing her failure to formally request exclusion from the Settlement Class. None of these arguments has merit.

First, like every other Settlement Class Member, Martin was required to opt out, individually, if she wished to pursue claims against any released party: the Settlement Agreement made no exceptions for "consolidated" cases (indeed, *all* of the cases before the Court were consolidated in this multi-district litigation) or for Derivative Claimants. Second, it is well settled that the pre-settlement filing of an individual lawsuit does not constitute evidence of a plaintiff's intent to opt out of a class action settlement. And third, actions taken nearly *three years* after the opt-out period are irrelevant to Martin's intent to timely opt out of the settlement, and, to the extent these actions are construed as belated requests for exclusion, they were inexcusably delayed.

Accordingly, because Martin did not opt out of the Settlement Class directly, indirectly, formally, or informally, and because any request for exclusion more than three years later is inexcusably delayed, Martin is a Settlement Class Member, and her putative claim should be dismissed.

## ARGUMENT

Martin's putative claim for loss of consortium should be dismissed because it was released under the terms of the Settlement Agreement and dismissed with prejudice by this Court's Final Order and Judgment. In her opposition brief, Martin does not deny that she failed to request exclusion from the Settlement Class or that her putative claim is squarely encompassed by the Settlement Agreement's release. Rather, Martin argues that she "effectively" opted out through her ex-husband, and that her filing of a pre-settlement lawsuit and filings in that lawsuit nearly three years after the opt out deadline sufficiently indicated her intent to opt out. These arguments fail as a matter of settled law.

*First*, Martin argues—without support—that she did not need to individually opt out because her case was "consolidated with and derivative of" her ex-husband's, and so his opt-out request "also had the effect of opting out" her claim. (Opp. Br. at 5.) But the consolidation of Martin's case with her ex-husband's prior to transfer to this MDL and her status as a Derivative Claimant under the Settlement did not in any way excuse her obligation to opt out individually if she wished to maintain her right to pursue litigation against any of the parties released under the Settlement Agreement. In the first place, it is worth noting that Martin never suggests that she relinquished control over her lawsuit to her ex-husband (she did not), nor does she suggest that her ex-husband attempted to include Martin in his opt-out request (he did not—and it would have been

2

improper, in any event).[1]  Under the plain language of the Settlement Agreement, *any* Settlement Class Members (including Derivative Claimants such as Plaintiff) seeking to pursue claims against any released party were required to "timely and properly" opt out by submitting a written request that stated "*I* wish to exclude *myself* from the Settlement Class" and bore their personal signature.[2] (Class Action Settlement Agreement (as amended, the "Settlement Agreement") § 14.2(a)–(b), ECF No. 6481-1 (emphasis added).)  Martin was no differently situated than any other Settlement Class Member or Derivative Claimant—including plaintiffs in the many multi-plaintiff lawsuits consolidated before the Court at the beginning of the opt-out period—each of whom independently had to choose whether to remain in the Settlement Class or opt out.[3]  If consolidation had the force Plaintiff suggests, then any plaintiff in one of those cases could "effectively" opt out all the others by filing a single opt out notice, which plainly was not permissible.  *See In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 118–19 (D.N.J. 2012) (finding that because "'[o]pting out is an individual right [that] must be exercised individually,'" plaintiff "may opt out of this Settlement Agreement, but may not request exclusion on behalf of any other potential class members" (quoting *In re Diet Drugs*, 282 F.3d 220, 241 (3d Cir. 2002)); *cf. Sloan* v. *Winn Dixie Raleigh, Inc.*, 25 F. App'x 197, 198–99 (4th Cir. 2002) (rejecting class member's argument that he was covered by class representative's opt-out).

---

[1] Indeed, the fact that Martin and her ex-husband are divorced is critical:  it would be unreasonable to assume that either one controls the other or that they would act in similar ways, and Martin's filing of her own separate lawsuit demonstrates her independence from him and underscores her independent obligation to opt out.

[2] As explained in Defendant's moving brief, the Settlement Agreement and Settlement Class Notice—approved by this Court and the Third Circuit—could not have been clearer in explaining the requirements to opt out of the Settlement Class, and Martin does not deny that she received notice of these requirements.  (*See* Def.'s Br. at 9–10.)

[3] For example, in a case involving 365 plaintiffs, only 16 ultimately decided to opt out.  *Compare, e.g.*, Am. Compl., *Boyd* v. *Nat'l Football League*, No. 12-cv-92 (E.D. Pa. Apr. 11, 2012), ECF No. 8 (listing 365 plaintiffs), *with* Eighth Opt Out Report, Ex. 1 (Apr. 21, 2015), ECF No. 6507-1 (showing only 16 out of 365 *Boyd* plaintiffs opted out).

*Second*, Martin argues that her failure to file a timely opt-out request should be excused because her pending lawsuit—filed months before preliminary approval and the start of the opt-out period—supposedly gave Defendant sufficient notice of her intent to opt out. Martin is simply wrong. "It is well-established that pendency of an individual action does not excuse a class member from filing a valid request for exclusion," particularly where that lawsuit, like Martin's here, was filed *before* the start of the opt-out period. *In re Prudential Secs. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362 (S.D.N.Y. 1996), *aff'd*, 107 F.3d 3 (2d Cir. 1996); *see, e.g.*, *Sloan*, 25 F. App'x at 199 (rejecting argument that lawsuit filed prior to opt-out period was sufficient notice of intent to opt out); *In re Imprelis Herbicide Mktg., Sales Pracs. & Prods. Liability Litig.* ("*Imprelis I*"), 11-md-2884, 2014 WL 348593, at *6 (E.D. Pa. Jan. 31, 2014) (same); *Bowman* v. *UBS Fin. Servs., Inc.*, No. 04-cv-3525, 2007 WL 1456037, at *2 (N.D. Cal. May 17, 2007) (same); *In re WorldCom, Inc. Secs. Litig.*, No. 02-cv-3288, 2005 WL 1048073, at *5, 7 (S.D.N.Y. May 5, 2005) (same); *Demint* v. *NationsBank Corp.*, 208 F.R.D. 639, 641 (M.D. Fla. 2002) (same); *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 177 F.R.D. 216, 238 (D.N.J. 1997) (same). Martin was hardly unique in having filed her own individual litigation: she was one of "about 5,000" plaintiffs who had "filed over 300 substantially similar lawsuits" that were pending in the MDL prior to preliminary approval. *In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 361 (E.D. Pa. 2015). Under Martin's theory, each of these plaintiffs would be deemed to have opted out, which would be flatly inconsistent with the clear requirements of the Settlement Agreement and Notice instructing all Settlement Class Members—including those with pending litigation—that they must opt out in order to pursue their claims. (*See* Long-Form Notice at 17, ECF No. 6093-1 ("If you want to *maintain your own lawsuit* relating to the claims released by the Settlement, then you must exclude yourself (opt out) on or before **October 14, 2014**." (emphasis

in original)); *see also id.* at 2 (warning that opting out "*is the only option that allows you to participate in any other lawsuit . . .* about the claims in this case" (emphasis added)); *id.* at 15 ("Unless you exclude yourself (opt out) from the Settlement . . . *you cannot sue the NFL Parties, the Member Clubs, or related individuals and entities, or be part of any other lawsuit . . . .* This means you *give up your right to continue to litigate* any claims related to this Settlement." (emphasis added)).) Since the overwhelming majority of the 5,000 plaintiffs with pending pre-settlement litigation chose *not* to opt out, there can be no argument that the mere pendency of Martin's pre-settlement lawsuit gave Defendant *any* notice—much less sufficient notice—of her intent to opt out. *In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. at 361, 369–70 (as of final approval only "208 Class Members submitted requests to exclude themselves from the settlement"); *see Imprelis I*, 2014 WL 348593, at *4 (noting that "many plaintiffs who filed individual lawsuits chose not to opt out" and thus pending lawsuit was not sufficient notice of plaintiff's intent to opt out).[4]

*Finally*, by Martin's own admission, she took no action whatsoever regarding her claim in the nearly three years following the opt-out deadline and the publication of the first opt-out list. Yet she now argues that three actions in 2017—her counsel's telephonic participation in the March 27, 2017 opt-out organizational meeting, her filing of a short-form complaint on July

---

[4] Martin has not cited a single case in which the pendency of a pre-settlement lawsuit was found to provide sufficient notice to defendant of an intent to opt out. While Martin cites *McCubbrey* v. *Boise Cascade Home & Land Corp.*, 71 F.R.D. 62 (N.D. Cal. 1976), that case holds no such thing. *McCubbrey* held that plaintiffs who had filed lawsuits *after* preliminary approval but *before* the end of the opt-out period had demonstrated a sufficient intent to opt out. *Id.* at 70–71. With respect to plaintiffs who filed pre-settlement lawsuits (as Martin did here), the court found they were not bound by the settlement only because the settlement notice was inadequate (clearly not the case here). *Id.* at 68–69 (notice found inadequate for failing to specify that exclusion requirements were mandatory and failing to warn that failure to request exclusion would terminate pending lawsuits); *see also US W., Inc.* v. *Bus. Disc. Plan, Inc.*, 196 F.R.D. 576, 585 (D. Colo. 2000) (distinguishing *McCubbrey* on this basis and rejecting argument that lawsuit filed prior to distribution of settlement notice indicated a desire to opt out). Nor does Martin's other case, *In re Linerboard Antitrust Litig.*, 223 F.R.D. 357 (E.D. Pa. 2004), support her arguments; that case merely cited the standard and did not address the question of whether a pre-settlement lawsuit suffices as evidence of intent to opt out.

27, 2017, and her filing of a one-page document (the same day) purporting to join in the remand motion filed by her ex-husband and his fellow plaintiffs—provided sufficient evidence of her intent to opt out nearly three years earlier. (Opp. Br. at 4.) However, actions she or her counsel took *after* the opt-out deadline are irrelevant to Martin's intent to opt out. *See In re Deepwater Horizon*, 819 F.3d 190, 196–97 (5th Cir. 2016) (finding post-deadline actions by plaintiff months after the opt-out deadline irrelevant to whether he "informally" opted out, and further rejecting argument that pre-deadline litigation conduct sufficed as notice of intent to opt out where attorney had actual notice of settlement); *see also In re Imprelis Herbicide Mktg., Sales Practices and Prods. Liab. Litig*, No. 11-md-2884, 2014 WL 6901120, at *6–7 (E.D. Pa. Dec. 5, 2014) (strictly enforcing class settlement against plaintiffs who failed to opt out despite their filing of lawsuits five-to-seven months after fairness hearing). Further, these events were not merely after the deadline: they were nearly *three years* later. To the extent that Martin now contends that they constituted belated requests for exclusion, her failure to take any action sooner is inexcusable. *See, e.g.*, *In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 177 F.R.D. at 236 (denying belated opt-out requests made "within months of the opt-out deadline" due to inexcusable neglect); *In re Dvi, Inc. Secs. Litig.*, No. 03-cv-5336, 2016 WL 1182062, at *8–9 (E.D. Pa. Mar. 28, 2016) (denying belated opt-out requests due to inexcusable neglect where plaintiffs took no action prior to fairness hearing and "never clearly requested exclusion" until three months after opt-out deadline); *Imprelis I*, 2014 WL 348593, at *6 (denying belated opt-out request because counsel's failure to take action for several months after opt-out deadline was inexcusable neglect).[5]

---

[5] Martin argues that the "Court also understood Plaintiff to have opted out" in granting permission for her counsel to participate telephonically in the March 2017 opt-out organizational meeting (Opp. Br. at 4), but the mere administrative act of permitting Martin's lawyer to appear telephonically at a court conference does not constitute a ruling on Martin's Settlement Class Member status, the merits of which were not before the Court at that time. Further, although Defendant rejects the proposition that administrative filings have any bearing on the merits of Martin's status as a Settlement Class Member, to the extent the Court places any weight on Martin's counsel's participation in the March 27, 2017 opt-out organizational meeting, it must be noted that the Order issued after that meeting attached a

6

In addition, allowing Martin to opt out at this late date would considerably prejudice Defendant. A settling defendant is entitled to the certainty that these bargained-for requirements and deadlines provide, and is prejudiced where settlement class members are allowed to opt out long after defendant understood the potential exposure that remained after settlement. *See, e.g.*, *In re Am. Exp. Fin. Advisors Secs. Litig.*, 672 F.3d 113, 130 (2d Cir. 2011) ("There is, moreover, little doubt that [defendant] would suffer prejudice if [plaintiff] were permitted to opt out of the Class Settlement three years late, as it would be exposed to liability that it had every reason to think had been foreclosed by the entry of the Settlement Agreement."); *In re Dvi, Inc. Secs. Litig.*, 2016 WL 1182062, at *8 (finding prejudice on grounds that "opt-out deadline . . . was a negotiated, express term of the [settlement] by which Defendants sought to achieve finality and thereby financial certainty" and "[a]llowing [plaintiffs] to belatedly opt out now would increase Defendants' potential financial obligations"). Such prejudice is heightened in cases like this one where a settling defendant has the ability to terminate the settlement based on the number of opt-outs, as "even a single additional opt-out would impair the bargained-for value of the settlements." *In re Processed Egg Prods. Antitrust Litig.*, 130 F. Supp. 3d 945, 954 (E.D. Pa. 2015); *see In re Diet Drugs Prods. Liability Litig.*, 92 F. App'x 890, 894 (3d Cir. 2004) (finding prejudice due to single belated opt-out request because "being able to determine the total number of initial opt-outs by a certain date was essential to the deal between [defendant] and the class"); *Imprelis I*, 2014 WL 348593, at *3, 6 (rejecting argument that "one additional opt-out" did not prejudice defendant even without other pending requests to extend deadline or any "similarly situated class members who would be likely to come out of the proverbial woodwork"). Under these circumstances, even

---

list of pending actions involving Opt-Out Plaintiffs, which did *not* include Martin's individual action (the only individual action in which Martin made the filings she references). (*See* Order at 7-8 (Apr. 12, 2017), ECF No. 7477.)

7

if the Court were to consider Martin's submissions as a belated request for exclusion, the Court should exercise its significant discretion to deny such untimely and prejudicial requests. *Imprelis I*, 2014 WL 348593, at *3 ("Where [the district court's] equitable powers are exercised in the form of case management decisions in a complex class action, district court discretion is at its greatest." (quoting *In re Ins. Brokerage Antitrust Litig.*, 374 F. App'x 263, 266 (3d Cir. 2010))).

\* \* \*

Martin has provided no valid justification for failing to comply with the opt-out requirements of which she had notice, and there can be no doubt that permitting exclusion at such a late date would cause considerable prejudice to Defendant. Martin is a Settlement Class Member and her putative claim should be dismissed.

## CONCLUSION

For the foregoing reasons, and those set forth in Defendant's moving papers, Defendant respectfully requests that the Court dismiss with prejudice Martin's putative claims in the above-captioned actions.

Dated: November 1, 2018                                         Respectfully submitted,

/s/ Brad S. Karp
Brad S. Karp
Bruce Birenboim
Lynn B. Bayard
Claudia Hammerman
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Main: 212.373.3000
Fax: 212.757.3990
bkarp@paulweiss.com
bbirenboim@paulweiss.com
lbayard@paulweiss.com
chammerman@paulweiss.com

*Attorneys for the Kansas City Chiefs Football Club, LLC*

9

## **CERTIFICATE OF SERVICE**

      It is hereby certified that a true copy of the foregoing document was served electronically via the Court's electronic filing system on the 1st day of November, 2018, upon all counsel of record.

Dated:  November 1, 2018　　　　　　*/s/ Brad S. Karp*
　　　　　　　　　　　　　　　　　　Brad S. Karp