# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO:<br><br>*Hernandez* v. *National Football League, et al.* | No. 18-cv-00464-AB |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF NFL DEFENDANTS' MOTION TO DISMISS THE COMPLAINT FILED BY SETTLEMENT CLASS <u>MEMBER A.H.</u>

# **TABLE OF CONTENTS**

**Page**

Table of Authorities ............................................................................................ii

PRELIMINARY STATEMENT......................................................................... 1

ARGUMENT ...................................................................................................... 4

    I.   THIS COURT SHOULD DECIDE THE THRESHOLD QUESTION OF
          PLAINTIFF'S SETTLEMENT CLASS MEMBER STATUS BEFORE REACHING
          ANY OTHER ISSUES. .............................................................................. 4

   II. PLAINTIFF IS A SETTLEMENT CLASS MEMBER WHO RELEASED HER
         CLAIMS UNDER THE SETTLEMENT AGREEMENT.......................................... 7

      A.   Plaintiff Is a Settlement Class Member Because Her Father is a Retired NFL
           Football Player Settlement Class Member ............................................... 7

      B.   Plaintiff Is a Settlement Class Member Because She is a Derivative Claimant
           Under the Settlement Agreement ....................................................... 11

      C.   As a Settlement Class Member, Plaintiff Is Bound by the Settlement's Releases. 12

  III. THE ARGUMENTS INCORPORATED BY REFERENCE BY NFL
         DEFENDANTS' OPENING BRIEF PROVIDE ADDITIONAL GROUNDS FOR
         DISMISSAL............................................................................................ 15

CONCLUSION .................................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Allis-Chalmers* v. *Lueck*,
  471 U.S. 202 (1985) .......................................................................................... 19

*Antol* v. *Esposto*,
  100 F.3d 1111 (3d Cir. 1996) ........................................................................... 19

*Ballard* v. *Nat'l Football League Players Ass'n*,
  123 F. Supp. 3d 1161 (E.D. Mo. 2015) ............................................... 17, 18, 20

*Beidleman* v. *Stroh Brewery Co.*,
  182 F.3d 225 (3d Cir. 1999) ............................................................................. 19

*Bethlehem Steel Corp.* v. *U.S.*,
  108 F. Supp. 2d 449 (E.D. Pa. 2000) ............................................................... 10

*Bliss* v. *Sanguinet*,
  No. 12-cv-10123, 2013 WL 3334728 (D. Mass. June 24, 2013) ..................... 12

*In re Bolar Pharm. Co., Gen. Drug Consumer Litig.*,
  MDL No. 849, 1994 WL 326522 (E.D. Pa. July 5, 1994) ......................... 2, 5, 6

*Brown* v. *Nat'l Football League*,
  219 F. Supp. 2d 372 (S.D.N.Y. 2002) .............................................................. 17

*Buck* v. *Hampton Twp. Sch. Dist.*,
  452 F.3d 256 (3d Cir. 2006) ............................................................................. 17

*Cadle Co.* v. *Vargas*,
  771 N.E.2d 179 (Mass. App. Ct. 2002) ............................................................ 10

*Commonwealth* v. *Hernandez*,
  BRCR2013-00983 (Mass. Super. Ct. Aug 22, 2013) .......................................... 8

*Dent* v. *Nat'l Football League*,
  No. 15-15143 (9th Cir. Sept. 6, 2018) .................................................. in passim

*In re Diet Drugs Prods. Liab. Litig.*,
  226 F.R.D. 498 (E.D. Pa. 2005) ....................................................................... 14

*In re Diet Drugs Prods. Liab. Litig.*,
  282 F.3d 220 (3d Cir. 2002) ............................................................................... 6

*Duerson* v. *Nat'l Football League*,
  No. 12-cv-2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012) ........... 17, 19, 20

*Essyi* v. *City of Lawrence*,
     416 Mass. 194 (1993) ........................................................................................ 12

*Gardner* v. *LaFarge Corp.*,
     No. 99-cv-10176, 2007 WL 1695609 (E.D. Mich. June 12, 2007) ................................ 14

*GCNSC Chestnut Hill, LLC* v. *Schrader*,
     2018 WL 1582555 (D. Mass. March 31, 2018) .............................................................. 15

*Givens* v. *Tenn. Football, Inc.*,
     684 F. Supp. 2d 985 (M.D. Tenn. 2010) ....................................................................... 20

*Harris* v. *McCrackin*,
     Nos. 2:03-cv-3845-23, 2006 WL 1897038 (D.S.C. 2006) ............................................... 14

*Holmes* v. *Nat'l Football League*,
     939 F. Supp. 517 (N.D. Tex. 1996) ............................................................................... 17

*In re Imprelis Herbicide Mktg., Sales Pracs. & Prods. Liab. Litig.*,
     MDL No. 2284, 2014 WL 6901120 (E.D. Pa. Dec. 5, 2014) ............................... 2, 5, 6, 7

*In re: Imprelis Herbicide Mktg., Sales Pracs. & Prods. Liab. Litig.*,
     No. 11-md-2884, 2015 WL 7575910 (E.D. Pa. Nov. 25, 2015) ...................................... 12

*Jeffers* v. *D'Allessandro*,
     681 S.E.2d 405 (N.C. Ct. App. 2009) ........................................................................... 20

*Lieberman* v. *Corporacion Experienca Unica, S.A.*,
     226 F. Supp. 3d 451 (E.D. Pa. 2016) ............................................................................ 10

*LVP Assocs. L.L.C.* v. *Bank of China*,
     No. 17-cv-5274, 2017 WL 5514523 (S.D.N.Y. Nov. 16, 2017) ...................................... 10

*Mastrovincenzo* v. *City of New York*,
     435 F.3d 78 (2d Cir. 2006) .......................................................................................... 10

*Maxwell* v. *Nat'l Football League*,
     No. 11-CV-08394 (C.D. Cal. Dec. 8, 2011) ............................................................ 17, 20

*McGowan Inv'rs LP* v. *Keefe Bruyette & Woods, Inc.*,
     540 F. Supp. 2d 571 (E.D. Pa. 2008) ............................................................................ 12

*Mullane* v. *Cent. Hanover Bank & Tr. Co.*,
     339 U.S. 306 (1950) .................................................................................................... 13

*In re Nat'l Football League Players' Concussion Injury Litig.*,
     307 F.R.D. 351 (E.D. Pa. 2015) ................................................................................... 14

iii

*In re Nat'l Football League Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016).................................................................. 13

*Oddo* v. *Bimbo Bakeries USA, Inc.*,
    No. 16-cv-04267, 2017 WL 2172440 (D.N.J. May 17, 2017)........................ 18

*In re Prudential Ins. Co. of Am. Sales Prac. Litig.*,
    261 F.3d 355 (3d Cir. 2001).................................................................... 6

*Rosario* v. *First Mgmt. LLC*,
    247 F. Supp. 3d 560 (E.D. Pa. 2017) ...................................................... 17

*Sharon* v. *City of Newton*,
    769 N.E.2d 738 (Mass. 2002) .......................................................... 14, 15

*Sherwin* v. *Indianapolis Colts, Inc.*,
    752 F. Supp. 1172 (N.D.N.Y. 1990) ................................................... 18, 20

*Smith* v. *Nat'l Football League Players' Ass'n*,
    No. 14-cv-1559, 2014 WL 6776306 (E.D. Mo. 2014).................................. 20

*Stringer* v. *Nat'l Football League*,
    474 F. Supp. 2d 894 (S.D. Ohio 2007)..................................................... 20

*Voss* v. *Rolland*,
    592 F.3d 242 (1st Cir. 2010) .................................................................. 14

**STATUTES**

28 U.S.C. § 1651 ........................................................................................ 6

Mass. Gen. Laws Ann. ch. 265, § 2 (West 2014) ............................................. 8

**OTHER AUTHORITIES**

3 Newberg on Class Actions § 8:36 (5th ed.) .................................................. 13

American Heritage College Dictionary (4th ed. 2002) ........................................ 9

Federal Rules of Civil Procedure 12(b)(1)........................................... 15, 17, 18

Federal Rules of Civil Procedure 12(b)(6)........................................... 15, 17, 18

Federal Rules of Civil Procedure 23 .............................................................. 13

Federal Rules of Civil Procedure 60(b) .......................................................... 12

Webster's New Universal Unabridged Dictionary (unabr. ed. 1996)...................... 9

Defendants the National Football League, NFL Properties LLC, and the NFL Foundation (collectively, the "NFL Defendants") respectfully submit this reply memorandum of law in support of their motion to dismiss the Complaint of Settlement Class Member A.H. in *Hernandez* v. *National Football League, et al.*, No. 18-cv-00464-AB.[1]

## PRELIMINARY STATEMENT

As the NFL Defendants' moving brief showed, Plaintiff is a Settlement Class Member whose putative loss of consortium claims are barred by the release in the Settlement Agreement and the doctrine of claim preclusion and therefore should be dismissed.

In an effort to salvage her barred claim from dismissal, Plaintiff argues that the Court lacks jurisdiction to hear the NFL Defendants' motion and that she is not a Settlement Class Member.  None of her arguments has merit.

*First*, Plaintiff's invitation for the Court to decide her pending remand motion before addressing the NFL Defendants' motion to dismiss would serve no purpose whatsoever beyond wasting the parties' (and the Court's) time and resources.  There is no question that this Court—*and only this Court*—has jurisdiction to answer the critical question presented in the NFL Defendants' motion to dismiss:  whether Plaintiff is a Settlement Class Member who is prosecuting her consortium claim in violation of the Settlement's releases and this Court's

---

[1]    The NFL Defendants' moving brief sought dismissal of the claims of Settlement Class Members Tracy Scroggins, Rose Stabler, and A.H.  Since the NFL Defendants filed their brief, Tracy Scroggins has voluntarily dismissed his claim and Rose Stabler failed to respond to the NFL Defendants' motion or the Court's subsequent order to show cause.  *See* Stipulation of Dismissal, *Scroggins* v. *Nat'l Football League*, 16-cv-2058 (E.D. Pa. Oct. 9, 2018), ECF No. 18; *see generally* Order to Show Cause, *Scroggins* v. *Nat'l Football League*, 16-cv-2058 (E.D. Pa. Oct. 22, 2018), ECF No. 19.

Plaintiff A.H. filed two briefs in response to the NFL Defendants' motion, one purportedly responding to the NFL Defendants' arguments on this motion (Pl.'s Mem ("Pl.'s First Mem."), ECF No. 10307) and one purportedly addressing a footnote in the NFL Defendants' moving brief that incorporated by reference the NFL Defendants' Motion to Dismiss the Second Amended Master Administrative Complaint on Preemption Grounds (ECF Nos. 8403, 9665) and Motion to Dismiss the Second Amended Master Administrative Complaint for Failure to State a Claim (ECF Nos. 8404, 9664) (Pl.'s Mem ("Pl.'s Second Mem."), ECF No. 10308).  This reply memorandum responds to both.

dismissal orders.  If Plaintiff is a Settlement Class Member (and she is), then there is no need to address remand because "the Court need not have subject matter jurisdiction over [Plaintiff's] . . . action" to prevent her from prosecuting a claim she released under the Settlement Agreement.  *In re Imprelis Herbicide Mktg., Sales Pracs. & Prods. Liab. Litig.*, MDL No. 2284, 2014 WL 6901120, at *5 (E.D. Pa. Dec. 5, 2014); *see also In re Bolar Pharm. Co., Gen. Drug Consumer Litig.*, MDL No. 849, 1994 WL 326522, at *5–6 (E.D. Pa. July 5, 1994).  Indeed, even if this Court were to remand Plaintiff's action, the parties would still wind up right back before this Court arguing over whether Plaintiff is a Settlement Class Member.

*Second*, Plaintiff twists, contorts, and ignores the Settlement Agreement's language in arguing that she is not a Settlement Class Member.  Plaintiff admits that her father, former New England Patriots player Aaron Hernandez, was in prison awaiting trial on murder charges on July 7, 2014, but she nonetheless argues that he was not a Retired NFL Football Player Settlement Class Member because, she claims, he intended to pursue an NFL career sometime in the future, if exonerated and released.  But a mere desire to return to the NFL in the future is irrelevant.  The plain language of the Settlement Agreement provides that Hernandez was a Retired NFL Football Player Settlement Class Member unless he was under contract with an NFL Club (which he was not) or was seeking "*active* employment" with a Club.  Under any common-sense reading of the term, Hernandez simply could not have been seeking "active employment," from a jail cell, where he could not have participated in tryouts, or attend practices, games, or any other Club events.

Plaintiff next argues that even if her father is a Settlement Class Member, she is not one because her Massachusetts loss of consortium claim is "independent" and because

a minor can repudiate a contract.  Neither argument, however, holds water.  The Settlement Agreement expressly defines Settlement Class Members who are Derivative Claimants to include "children . . . assert[ing] the right to sue *independently* or derivatively by reason of their relationship with a . . . deceased Retired NFL Football Player." (Class Action Settlement Agreement (as amended, the "Settlement Agreement") § 2.1(ee), ECF No. 6481-1 (emphasis added); *see also id.* §§ 1.1, 2.1(jjjj)).)  Further, it is well settled that minors who are members of a settlement class are bound by releases in class action settlement agreements.

Plaintiff then argues that even if she is a Settlement Class Member, she is not bound by the Settlement because she did not receive actual notice of the Settlement Agreement, and that it would therefore violate her due process rights to hold her to its terms. But that is not the law.  It is not necessary that each Settlement Class Member receive actual notice; all that is required is that the notice program be reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections, which happened here, as both this Court and the Third Circuit held.

Plaintiff also submits a separate brief in response to a single footnote in the NFL Defendants' opening brief, which incorporated by reference the NFL Defendants' Motion to Dismiss the Second Amended Master Administrative Complaint on Preemption Grounds (ECF Nos. 8403, 9665) and Motion to Dismiss the Second Amended Master Administrative Complaint for Failure to State a Claim (ECF Nos. 8404, 9664).  If the Court concludes (as we submit it should) that A.H. is a Settlement Class Member whose claims are barred by the Settlement Agreement, there is no reason whatsoever for the Court to consider either the question of preemption[2] or the other bases for dismissal raised by the NFL

---

[2]   The law is clear that the Court need not have subject matter jurisdiction over Plaintiff's action in order to prevent her from prosecuting claims she released under the Settlement Agreement. (*See infra* pp. 5–6.)

Defendants by separate motion.  In all events, Plaintiffs' arguments in this separate brief can be dispatched quickly.   First, Plaintiff argues that the NFL Defendants' incorporated arguments are inapplicable because they relate to the Second Amended Master Administrative Complaint (the "SAMAC"), not to A.H.'s complaint; but the SAMAC superseded A.H.'s complaint under this Court's April 12, 2017 order and, in any case, the NFL Defendants' arguments apply equally to her complaint, which is substantially identical to the SAMAC. Second, Plaintiff argues that reliance on the NFL CBAs is inappropriate; but courts routinely consider CBAs in deciding motions to dismiss on preemption grounds.  Finally, Plaintiff's reliance on *Dent* v. *National Football League*, No. 15-15143 (9th Cir. Sept. 6, 2018), ECF No. 52, is misplaced, since it is a non-binding, out-of-circuit decision that rejected the NFL Defendants' preemption arguments in circumstances materially different than those presented here.

For these reasons and the reasons below, this Court should dismiss Plaintiff's putative consortium claim with prejudice.

## ARGUMENT

### I.   THIS COURT SHOULD DECIDE THE THRESHOLD QUESTION OF PLAINTIFF'S SETTLEMENT CLASS MEMBER STATUS BEFORE REACHING ANY OTHER ISSUES.

Plaintiff argues that "the Court does not have jurisdiction over A.H.'s Massachusetts consortium claim" and invites the Court to remand Plaintiff's action to state court without deciding the threshold question raised by the NFL Defendant's motion: whether Plaintiff is a Settlement Class Member who is prosecuting her consortium claim in violation of the Settlement's releases and the Amended Final Order and Judgment.  Plaintiff's argument ignores the plain language of the Settlement Agreement and settled law.

Plaintiff concedes, as she must, that this Court has jurisdiction—and, indeed, is the *only* Court with jurisdiction—to decide Plaintiff's Settlement Class Member status.  The Settlement Agreement is clear that this Court has "continuing and exclusive jurisdiction" over the Settlement Agreement and Settlement Class Members, including "continuing and exclusive jurisdiction to interpret, implement, administer and enforce the Settlement Agreement."  (Am. Final Order & J. ¶ 17, ECF No. 6534; *see also* Pl.'s First Mem. at 7); *see also In re Bolar*, 1994 WL 326522, at *2 (holding that "[t]he court has ancillary jurisdiction to enforce the settlement and the Order and Final Judgment" where, as here, it "explicitly retained jurisdiction" for the purpose of enforcing and administering the settlement agreement).  Indeed, "*[a]ny disputes* or controversies arising out of, or related to, the interpretation, implementation, administration, and enforcement of this Settlement Agreement *will be made by motion to the Court*," and "each Settlement Class Member [is] hereby *deemed to have submitted to the exclusive jurisdiction of this Court* for any suit, action, proceeding, or dispute arising out of, or relating to, this Settlement Agreement."  (Settlement Agreement § 27.1 (emphasis added).)

The NFL Defendants' instant motion to dismiss Plaintiff's claims because she is a Settlement Class Member who has released these claims is plainly a "dispute . . . arising out of . . . the interpretation" and "enforcement . . . of [the] Settlement Agreement" that, as Plaintiff recognizes, *only this Court* has jurisdiction to resolve.  (*Id.*)  Plaintiff "cite[s] to no case law that would divest this Court of the power to decide whether [she is a] class member[] in a Class Action Settlement over which this Court has explicitly retained jurisdiction and to enforce that judgment against [her]."  *In re Imprelis*, 2014 WL 6901120, at *5.  Indeed, the Court has ample authority to dispose of Plaintiff's action—notwithstanding the remand

motion—because "the Court *need not have subject matter jurisdiction* over [Plaintiff's] . . .

action" to prevent her from prosecuting a claim she released under the Settlement Agreement.

*Id.* at *5 (emphasis added) (enjoining settlement class members from prosecuting their state

court action asserting released claims); *see also In re Bolar*, 1994 WL 326522, at *5–6

(same).[3]

Plaintiff's Settlement Class Member status is a threshold question that will

have to be decided before the merits of her claim can be considered.  Plaintiff's reliance on *In*

*re Imprelis* is misplaced.  There, the court in fact *enforced* a release in a class action settlement

and barred several plaintiffs from prosecuting their individual actions—including one in

which the plaintiffs, like A.H. here, previously argued that the federal court lacked subject

matter jurisdiction.  *In re Imprelis*, 2014 WL 6901120, at *4–6.  Plaintiff argues that the *In re*

*Imprelis* court "first remanded and only later granted an injunction" (Pl.'s First Mem. at 7),

suggesting that the parties here should follow that unduly complicated process, but omits the

key distinction between this case and *In re Imprelis*: the question of whether plaintiffs' claims

were precluded by the class action settlement *was not before the court* at the time of remand

and was raised only later.  *In re Imprelis*, 2014 WL 6901120, at *3.  Once raised, the court

---

[3]     *In re Imprelis* and *In re Bolar* were decided under the All Writs Act, which authorizes a federal court to
"issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages
and principles of law."  28 U.S.C. § 1651.  These cases, consistent with settled law, hold that a federal court
may enjoin a state court proceeding where "the state court proceeding so interferes with a federal court's
consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to
decide that case," particularly where a court is administering a class action settlement.  *In re Diet Drugs*
*Prods. Liab. Litig.*, 282 F.3d 220, 236, 238 (3d Cir. 2002) (holding that where a court is overseeing a
potential class action settlement, "[t]he threat to the federal court's jurisdiction posed by parallel state actions
is particularly significant . . . such that it is likely that almost any parallel litigation in other fora presents a
genuine threat to the jurisdiction of the federal court"); *In re Prudential Ins. Co. of Am. Sales Prac. Litig.*,
261 F.3d 355, 360–61, 368 (3d Cir. 2001) (upholding order enjoining state court proceeding addressing the
same subject matter as claims that were released as part of a final class settlement order entered in federal
court); *see also In re Bolar*, 1994 WL 326522, at *5–6 (holding that federal courts have the authority to
issue injunctions to enforce previously issued federal court injunctions).

concluded that it alone had jurisdiction to decide whether plaintiffs were settlement class members and issued an injunction enforcing the settlement's releases against them. *Id.* at *5. This Court should reach the same result on this motion, where the question is squarely presented and ripe for consideration. Declining to address it now—as Plaintiff suggests— would only delay the inevitable and waste judicial resources in the process.

In short: the NFL Defendants' motion to dismiss turns on whether Plaintiff is a Settlement Class Member, a question this Court—and only this Court—has jurisdiction to answer, and this Court need not, and should not, wait to answer this critical question.[4]

## II. PLAINTIFF IS A SETTLEMENT CLASS MEMBER WHO RELEASED HER CLAIMS UNDER THE SETTLEMENT AGREEMENT.

Despite Plaintiff's misguided arguments to the contrary, she is a Settlement Class Member because (i) her father, Hernandez, was a Settlement Class Member who is a Retired NFL Football Player, and (ii) her claim against the NFL Defendants arises from her relationship with her father, making her a Settlement Class Member who is a Derivative Claimant.

### A. Plaintiff Is a Settlement Class Member Because Her Father is a Retired NFL Football Player Settlement Class Member

As explained in the NFL Defendants' moving brief, the Settlement Agreement defines Retired NFL Football Player Settlement Class Members, in relevant part, as persons who, as of July 7, 2014:

> [(i)] were formerly on any roster . . . of any such Member Club or league
> *and [(ii)] no longer are under contract to a Member Club and [(iii)] are*
> *not seeking active employment as players with any Member Club.* . . .

---

[4]    Although the NFL Defendants have moved to dismiss Plaintiff's claim, they request that, in the unlikely event the Court determines that it lacks jurisdiction to dismiss A.H.'s claim, the Court issue an injunction barring Plaintiff from prosecuting her claim, which Plaintiff's own case law makes clear the Court unquestionably has the authority to do. (*See supra* at pp. 6–7; *see also supra* note 2.)

(Order ¶¶ 2(a), ECF No. 6084 (emphasis added); *see also* Settlement Agreement §§ 1.1, 2.1(ffff), ECF No. 6481-1.)

As to the first two elements, Plaintiff concedes that, as of the relevant date, her father, Aaron Hernandez, was neither on any Club's roster or under contract with any Club. (Pl.'s First Mem. at 4.)  However, she claims that Hernandez may have intended to pursue "*future* NFL employment."  (*See id.* at 3, 8–9.)  To accept Plaintiff's argument would be to rewrite the Settlement Agreement's language.  The third element of the definition is clear:  the question is not whether Hernandez had a desire to play football again in the *future*, but rather whether he was seeking "*active* employment" with a Club as of July 7, 2014, which he plainly could not have done.

It is undisputed that, as of July 2014, Hernandez was confined to prison.  On June 26, 2013, Hernandez was charged with first degree murder—a charge with a mandatory sentence of *life without parole*—and five gun-related offenses.  *See Commonwealth* v. *Hernandez*, BRCR2013-00983 (Mass. Super. Ct. Aug 22, 2013); *see also* Mass. Gen. Laws Ann. ch. 265, § 2 (West 2014).  He was denied bail the next day, and thus would remain incarcerated indefinitely until his trial, which did not begin until January 2015.  *Id.*[5]  To state the obvious: while in jail, Hernandez could not have participated in training camp, attended practices, played in games, or engaged in any other relevant marker of *active* NFL employment.

The NFL Standard Player Contract confirms the plain language, common sense interpretation that "active employment" requires a player to be able to actually show up in

---

[5]   Following trial, Hernandez was convicted of the homicide offense and two of the gun-related offenses, and given the statutorily mandated sentence of life in prison without parole.  *Commonwealth* v. *Hernandez*, BRCR2013-00983 (Mass. Super. Ct. Aug 22, 2013).

person at Club events.  The NFL's Standard Player Contract provides that a "Player will report *promptly for and participate fully in* Club's [practices and games]."  (Decl. of Dennis Curran Supp. Defs.' Remand Opp'n, Ex. 1, 2011 CBA App'x A, Standard Player Contract ¶ 2, ECF No. 10306-1 (emphasis added); *see also id.* ¶ 18 ("This contract will be valid and binding upon Player and Club *immediately* upon execution." (emphasis added)).)  Hernandez— imprisoned and facing trial on murder charges—was incapable of doing any such thing.[6]  For this same reason, Hernandez could not have been included on any Club's Active List, which is made up of players eligible, and expected to, participate in practices and games, further illustrating that Hernandez could not have sought "*active* employment" while incarcerated. (*See id.*, Ex. 3, 2010 Constitution and Bylaws Art. XVII § 17.2 (stating that a Club's Active List "consist[s] of all players [under contract] *eligible* to play in any preseason, regular season, playoff, championship, or postseason game" (emphasis added)).)  The basic dictionary definition of "active" as "[m]arked by or involving direct participation" further illustrates that "active" employment refers to a player's present ability to directly perform the duties of the job.  *See active*, The American Heritage College Dictionary (4th ed. 2002); *active*, Webster's New Universal Unabridged Dictionary (unabr. ed. 1996) ("engaged in action, characterized by energetic work, participation, etc.").[7]

---

[6]   Although this is a legal question that can be decided without reference to the news articles cited by Plaintiff, it is worth observing that those articles *support* the fact that Hernandez could not obtain *active employment* with an NFL club as of July 7, 2014.  *See* John Breech, *NFL: No Team Can Sign Hernandez Without Goodell's Approval*, CBS Sports (June 27, 2013), https://www.cbssports.com/nfl/news/nfl-no-team-can-sign-hernandez-without-goodells-approval/ (explaining that "there's a 0.0 percent chance that any team would sign Hernandez before the resolution of his case").

[7]   Plaintiff argues that the NFL Defendants' interpretation of the definition of Retired NFL Football Player means that "all players not under contract were class members" and renders the exception for those "seeking" employment pure surplusage.  (Pl.'s First Mem. at 9.)  Not so.  The NFL Defendants' interpretation simply gives a common-sense meaning to the term "active employment," arguing that, under the specific circumstances presented here, Hernandez could not have been seeking "*active* employment" with a Club while jailed for an indeterminate period of time.  That does not mean the exception is illusory,

Plaintiff's focus on Hernandez's *future* employment prospects (however speculative) is misplaced, and runs afoul of well accepted principles of contract interpretation by reading the word "active" out of the definition entirely, "render[ing it] surplusage." *LVP Assocs. L.L.C.* v. *Bank of China*, No. 17-cv-5274, 2017 WL 5514523, at *8 (S.D.N.Y. Nov. 16, 2017).   Indeed, under Plaintiff's strained and illogical interpretation, Hernandez could have been "seeking active employment" *no matter how many decades-long his prison term or how hopeless his chances of release*.   In other words, if Hernandez were serving a 25-year prison term (or even a life term), he *still* would not be a Retired NFL Football Player under Plaintiff's interpretation, as long as he wanted to play in the NFL again at some unspecified time in the future.   Such an absurd interpretation of the Settlement Agreement defies common sense and should be disregarded.   *See, e.g.*, *Mastrovincenzo* v. *City of New York*, 435 F.3d 78, 104 (2d Cir. 2006) ("[W]hen interpreting contracts under New York state law . . . words should be given the meanings ordinarily ascribed to them and absurd results should be avoided."); *Lieberman* v. *Corporacion Experienca Unica, S.A.*, 226 F. Supp. 3d 451, 464 (E.D. Pa. 2016) ("[W]here the plain meaning of a contract term would lead to an interpretation that is absurd and unreasonable, Pennsylvania contract law allows a court to construe the contract otherwise in order to reach the only sensible and reasonable interpretation of the contract."); *Cadle Co.* v. *Vargas*, 771 N.E.2d 179, 183 (Mass. App. Ct. 2002) (holding that common sense is a part of contract interpretation and the court should not apply certain text "if common sense tells us that the result would be absurd or unreasonable").[8]

---

as it could embrace a player who is not under contract but, nevertheless, seeking employment with a Club and ready, willing, and *able* to appear for tryouts, practice, and games.

[8]   Although Plaintiff suggests otherwise, whether Hernandez was a Retired NFL Football Player, as defined by the Settlement Agreement, is a purely legal question appropriate for resolution at this early stage.   *See Bethlehem Steel Corp.* v. *U.S.*, 108 F. Supp. 2d 449, 452 (E.D. Pa. 2000) (explaining that "in determining the legal effect an agreement will have on an event the parties did not foresee, the process is construction,"

For these reasons, Hernandez was a Settlement Class Member as a matter of law, and under the terms of the Settlement Agreement, Plaintiff necessarily is as well.

### B.   Plaintiff Is a Settlement Class Member Because She is a Derivative Claimant Under the Settlement Agreement

Because Hernandez is a Settlement Class Member, it follows that Plaintiff, his daughter, is a Settlement Class Member who is a Derivative Claimant.  Plaintiff's arguments to the contrary are without merit.  (Pl.'s First Mem. at 9–11.)

*First*, Plaintiff misstates the NFL Defendants' opening brief and asserts that "Defendants do not argue that A.H. was a class-member at the time of the settlement's agreement."  (Pl.'s First Mem. at 9.)  But that is *exactly* what the NFL Defendants argue.  (Defs.' Mem. at 5–6.)  The Settlement defines a "Derivative Claimant" Settlement Class Member to include "children who are dependents[] or any other persons who properly under applicable state law assert the right to sue independently or derivatively by reason of their relationship with a . . . deceased Retired NFL Football Player."  (Settlement Agreement §§ 1.1, 2.1(ee); *see also* Am. Final Or. & J. ¶¶ 2(a), ECF No. 6084.)  Filing the instant lawsuit did not "transmogrif[y]" or "alchemize" Plaintiff into a Derivative Claimant (Pl.'s First Mem. at 10): she always was one.  Because Plaintiff's "right to sue" the NFL Defendants arises from "[her] relationship with" her father, a "deceased Retired NFL Football Player," she has been a Derivative Claimant ever since the Settlement Agreement defined the term.  (Settlement Agreement § 2.1(ee).)[9]

---

a question of law, "not interpretation," a question of fact).  Plaintiff *concedes* that Hernandez was incarcerated awaiting trial on homicide charges on July 7, 2014.  (Pl.'s First Mem. at 4 ("On July 7, 2014, Hernandez was indeed incarcerated.").)  Nothing more is required to reach the question of contract construction at issue here.

[9]   To the extent that Plaintiff is arguing that the term "Derivative Claimant" refers only to claimants who had pending lawsuits against the NFL Defendants at the time of the Settlement Agreement, that plainly is wrong, as it would exclude absent class members from the Settlement Class entirely.

*Second*, Plaintiff argues that her loss of consortium claim is "independent" of her father's claim under Massachusetts law (Pl.'s First Mem. at 10), but even if true, her claim's "independence" is irrelevant to the question of whether she is a Settlement Class Member.   Under the express terms of the Settlement Agreement, a Derivative Claimant includes persons, such as Plaintiff, suing "*independently* or derivatively."   (Settlement Agreement § 2.1.)   Plaintiff's cases do not suggest otherwise, and instead, stand for the unremarkable proposition that Massachusetts treats loss of consortium claims as independent claims under certain circumstances, none of which have any bearing on Plaintiff's status as a Settlement Class Member. *See, e.g.*, *Essyi* v. *City of Lawrence*, 416 Mass. 194 (1993) (holding that a child can assert a loss of consortium claim even if the parent has already asserted a claim); *Bliss* v. *Sanguinet*, No. 12-cv-10123, 2013 WL 3334728, at *9 (D. Mass. June 24, 2013) (describing father's loss of consortium claim as independent, but dismissing it because his wife and children did not have valid tort claims).[10]

### C.  As a Settlement Class Member, Plaintiff Is Bound by the Settlement's Releases

It is well settled that "[a]n individual claim by a person who was a class member in a prior class action suit is barred by a settlement of the class action where the settlement includes a release applicable to his later individual action." *McGowan Inv'rs LP* v. *Keefe Bruyette & Woods, Inc.*, 540 F. Supp. 2d 571, 576 (E.D. Pa. 2008) (Brody, J.); *see also In re: Imprelis Herbicide Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 11-md-2884, 2015 WL 7575910, at *1, 3 (E.D. Pa. Nov. 25, 2015) (granting, *inter alia*, a motion to dismiss

---

[10]   Plaintiff purports to reserve her right to seek an amended final judgment under Federal Rule of Civil Procedure 60(b) and/or collateral review "in light of due process considerations" if the Court holds Plaintiff to be a Settlement Class Member.  (Pl. First Mem. at 5 n.7.)  These motions would be futile because, as demonstrated herein, Plaintiff was an absent class member who received adequate process.  (*Infra* at II.C.) The NFL Defendants reserve all rights, arguments, and defenses related to such motions.

where plaintiff was "a class member who is properly bound by the Settlement").  Plaintiff does not contest this black-letter proposition, nor does she contest that the Settlement Agreement's release covers loss of consortium claims or claims relating to CTE.  (*See* Defs.' Mem. 11–12.)  Rather, Plaintiff argues enforcing that release here would violate her due process rights because she did not receive actual notice of the Settlement.  (Pl.'s First Mem. at 11–12.)  Not so.

Due process does not require that each class member receive actual notice of a putative class action settlement, so long as notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane* v. *Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); 3 Newberg on Class Actions § 8:36 (5th ed.) ("With regard to all challenges to notice, a critical point is that neither Rule 23 nor the Constitution requires that a class member actually receive notice: notice suffices if it is reasonably calculated to reach the absent parties.  Challenges to notice in class actions are therefore challenges to the notice program the class action court adopted, not to the individual receipt of notice by a class member herself.").  Both this Court and the Third Circuit expressly held that the Settlement's notice program satisfied the requirements of Rule 23 and due process.  (Am. Final Order & J. ¶¶ 2–4, 7, ECF No. 6534) ("The Court finds that the dissemination of the Settlement Class Notice . . . constituted the best notice practicable under the circumstances."); *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 435–36 (3d Cir. 2016) ("The District Court found that the content of the class notice and its distribution to the class satisfied Rule 23 and due process. . . .  We agree.").)  The notice distributed under the program warned, in no uncertain terms, that "[u]nless you exclude yourself (opt out) from the Settlement . . . , you

cannot sue the NFL Parties, the Member Clubs, or related individuals and entities." (*See* Long-Form Notice at 15, ECF No. 6093-1; *see also* Short-Form Notice at 1, ECF No. 6093-2 ("If you want to keep your right to sue the NFL, you must exclude yourself from the Class by **October 14, 2014**." (emphasis in original).)

Although A.H. is a minor, it is well settled that minors may be part of a settlement class and will be bound by the terms of the release.[11] *See In re Diet Drugs Prods. Liab. Litig.*, 226 F.R.D. 498, 510 n.18 (E.D. Pa. 2005) (noting that children were potential derivative claimants in an approved class action settlement); *Voss* v. *Rolland*, 592 F.3d 242, 251–55 (1st Cir. 2010) (finding that a proposed class action settlement, which would bind certain children, was fair and reasonable); *Harris* v. *McCrackin*, Nos. 2:03-cv-3845-23, 2006 WL 1897038, at *8 (D.S.C. 2006) ("The settlement involves settlement of minors' claims, . . . and this Court specifically approves all minor settlements entered as part of the class settlement."); *see also Gardner* v. *LaFarge Corp.*, No. 99-cv-10176, 2007 WL 1695609, at *8 (E.D. Mich. June 12, 2007) (finding settlement fair to minor settlement class members, noting that their interests would be adequately represented by their parents or legal guardians, and further finding that "the minors have suffered no prejudice by the absence of a guardian ad litem"). Further, this Court, in the course of approving the Settlement Agreement, expressly recognized that the Settlement Class would include Derivative Claimants who are dependent children. *In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 365 (E.D. Pa. 2015).[12]

---

[11] A.H. is therefore bound by the terms of the release and her claims are subject to dismissal and are barred by claim preclusion. (Defs.' Mem. at 10–12.)

[12] Plaintiff argues that even if she is bound by the Settlement's release, she is free to repudiate it. However, Plaintiff's cases—neither of which involved class action settlements—are inapposite. In *Sharon* v. *City of Newton*, 769 N.E.2d 738 (Mass. 2002), the court held that the plaintiff could *not* repudiate a release she signed while a minor because her parent also signed the release on her behalf. *Id.* at 746. Indeed, as the

During the opt-out period, Plaintiff's rights and interests were represented by her mother, who acts as her guardian (*see* Compl. ¶ 4, *Hernandez* v. *Nat'l Football League*, No. 18-cv-00464 (E.D. Pa. Oct. 16, 2017) ("A.H. Compl.")) and who could have, on behalf of A.H., requested exclusion from the Settlement Class.  A.H.'s mother did not do so, and A.H. cannot repudiate that choice now.

## III. THE ARGUMENTS INCORPORATED BY REFERENCE BY NFL DEFENDANTS' OPENING BRIEF PROVIDE ADDITIONAL GROUNDS FOR DISMISSAL.

Plaintiff also submitted a separate brief purportedly to respond to the arguments the NFL Defendants incorporated by reference, namely, the arguments in the NFL Defendants' Motions to Dismiss the SAMAC on Preemption Grounds and for Failure to State a Claim[13] (the "Opt-Out Briefing").  As a threshold matter, the Court need not reach these issues because the case can be disposed of on the independently dispositive ground that Plaintiff is a Settlement Class Member as discussed above.  In any event, Plaintiff's primary contentions are (1) the arguments in the incorporated Opt-Out Briefing have no bearing on Plaintiff because those arguments relate to the Second Amended Master Administrative Complaint (the "SAMAC"), not to A.H.'s complaint; (2) the Opt-Out Briefing's reliance on the NFL CBAs is inappropriate under either Rule 12(b)(1) or 12(b)(6) of the Federal Rules of Civil Procedure; and (3) the recent out-of-circuit, non-binding decision in *Dent* v. *National*

---

court explained, a parent may bind her child to a contract because the "law presumes that fit parents act in furtherance of the welfare and best interests of their children."  *Id.* at 746.  So too here, where Plaintiff's mother and guardian could protect her interests.  Plaintiff also cites *GCNSC Chestnut Hill, LLC* v. *Schrader*, 2018 WL 1582555, at *6–8 (D. Mass. March 31, 2018), but that case—holding that a child's valid contract containing an arbitration clause could bind her parents in a wrongful death action, even though they were not parties to the contract—is also inapposite.

[13]   *See* ECF Nos. 8403, 8404, 9664, 9665.

*Football League*, No. 15-15143 (9th Cir. Sept. 6, 2018) rejected the NFL Defendants'
preemption arguments. (Pl.'s Second Mem. at 2–10.) These arguments lack merit.

*First*, Plaintiff is mistaken when she claims that the Opt-Out Briefing—which
applies to the SAMAC—does not apply to her operative complaint because the SAMAC is
A.H.'s operative complaint. When the Judicial Panel on Multidistrict Litigation transferred
A.H.'s action to *In re NFL Football Players' Concussion Injury Litigation*, 12-md-2323
("MDL 2323") on February 5, 2018, the SAMAC superseded her complaint and became the
operative complaint in Plaintiff's action. Transfer Order, *Hernandez* v. *Nat'l Football
League*, 17-cv-12244 (D. Mass. Feb. 5, 2018), ECF No. 51. This Court's April 12, 2017
Order, expressly provided that all "complaints that are filed by individual Opt Out Plaintiffs
in cases that are coordinated and/or consolidated in this MDL after the date of this Order, shall
be deemed to be *amended, restated and superseded* by . . . the [SAMAC]." (Order ¶ 6 (Apr.
12, 2017), ECF No. 7477.) Importantly, the Court's order defined "Opt Out Plaintiffs" to
include not only persons who requested exclusion from the Settlement Class but also *anyone*
"with pending claims in MDL 2323," a category into which Plaintiff indisputably falls. (*See
id.* at 1 n.1.) As such, the Opt-Out Briefing, incorporated by reference here by the NFL
Defendants, applies squarely to Plaintiff's operative complaint.

Moreover, even if the SAMAC were not Plaintiff's operative complaint, the
arguments in the Opt-Out Briefing apply equally to Plaintiff's individual complaint, which is
substantially identical to the SAMAC. (*E.g.*, *compare* SAMAC ¶¶ 7–16 *with* A.H. Compl.
¶¶ 3–20; *compare* SAMAC at 5–8, *with* A.H. Compl. at 8–10; *compare* SAMAC ¶¶ 84, 91
101–182, 193–331, *with* A.H. Compl. ¶¶ 91–336; *compare* SAMAC ¶¶ 336–346, 357–383,
397–408, *with* A.H. Compl. ¶ 348.)

*Second*, Plaintiff argues that the Opt-Out Briefing fails to establish that Plaintiff's claims are preempted by Section 301 of the Labor Management and Relations Act (the "LMRA") because the briefing, and its reliance on the NFL Collective Bargaining Agreements, fails to comply with the procedural requirements of Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Pl.'s Second Mem. at 4–7.)  The NFL Defendants' Opt-Out Briefing already addresses this meritless procedural argument, which Plaintiff's attorney here already advanced on behalf of Opt-Out Plaintiff Ted Johnson.  (*See* Opt-Out Pl. Ted Johnson's Supp. Opp'n Mem. to Defs' 12(b)(6) Mots. at 3–4, ECF No. 9521; Defs.' Mem. Supp. Mot. Dismiss SAMAC on Preemption Grounds at 5 n.3, ECF No. 8403; Defs.' Reply Mem. Supp. Mot. Dismiss SAMAC on Preemption Grounds at 7 n.2, 34 n.20, ECF No. 9665.)

In any event, Plaintiff's argument fails.  Courts routinely consider CBAs in adjudicating motions to dismiss under Rule 12(b), where, as here, the CBAs are integral to Plaintiff's claims and their authenticity is not subject to dispute.  *See  Buck* v. *Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); *Brown* v. *Nat'l Football League*, 219 F. Supp. 2d 372, 383–84, 385–87 (S.D.N.Y. 2002) (considering CBA provisions in order to adjudicate NFL's motion to dismiss); *Holmes* v. *Nat'l Football League*, 939 F. Supp. 517, 520 n.2 (N.D. Tex. 1996) (same); *Duerson* v. *Nat'l Football League*, No. 12-cv-2513, 2012 WL 1658353, at *4 (N.D. Ill. May 11, 2012) (considering CBAs in connection with motion to remand); Order at 1–2, *Maxwell* v. *Nat'l Football League*, No. 11-CV-08394, (C.D. Cal. Dec. 8, 2011), ECF No. 58 (same); *see also Rosario* v. *First Mgmt. LLC*, 247 F. Supp. 3d 560, 569–70 (E.D. Pa. 2017) (finding it "perfectly proper" for defendant to attach CBA to Rule 12(b)(6) motion and rely on it in arguing preemption); *Ballard* v. *Nat'l Football League Players Ass'n*, 123 F. Supp. 3d 1161, 1166 (E.D. Mo. 2015) (taking judicial notice of CBAs in adjudicating motion

to dismiss).  Moreover, courts have dismissed claims as preempted by the LMRA under both Rule 12(b)(1) and 12(b)(6), and the NFL Defendants are free to move in the alternative.  *See Ballard*, 123 F. Supp. 3d at 1166 (motion to dismiss for failure to state a claim); *Sherwin* v. *Indianapolis Colts, Inc.*, 752 F. Supp. 1172, 1175 (N.D.N.Y. 1990) (motion to dismiss for lack of subject matter jurisdiction); *Oddo* v. *Bimbo Bakeries USA, Inc.*, No. 16-cv-04267, 2017 WL 2172440, at *2–4 (D.N.J. May 17, 2017) (observing that courts apply both rules in LMRA preemption context).

*Third*, Plaintiff vastly overstates the importance of a recent Ninth Circuit decision, *Dent*, No. 15-15143 (9th Cir. Sept. 6, 2018).[14]  Contrary to Plaintiff's contention that *Dent* is "squarely on point" (Pl.'s Second Mem. at 8), the case involved materially different circumstances and is distinguishable in critical ways.  *Dent* involved allegations "that the NFL . . . illegally distributed controlled substances" to players, and the holding turned on the court's view that "none of the CBAs impose . . . a duty to exercise reasonable care in the distribution of medications" and "no CBA provisions directly address the subject of the litigation."  (*Dent*, No. 15-15143, at 13, 15, 26.)  The *Dent* court therefore concluded that the plaintiffs' claims did not arise out of or substantially depend upon an interpretation of the CBAs and LMRA preemption did not apply.  (*Dent*, No. 15-15143, at 9–28.)  Here, however, the CBA provisions cited in the NFL Defendants' briefing *do* "directly address the subject of the litigation."  (*Id.* at 26.)

As explained in the NFL Defendants' Opposition to Plaintiff's remand motion, numerous CBA provisions delegate responsibility for return to play decisions and determination of recovery times, govern the promulgation and enforcement of playing rules,

---

[14]   *See generally* Defs.' Resp. to Suppl. Authority, (Sept. 13, 2018), ECF No. 10257.

address disclosures to players of the risks of continued performance and treatment of player injuries, and establish the Accountability and Care Committee to, among other things, develop a protocol to inform players of the risks of playing football, research the prevention and treatment of common injuries, and develop injury surveillance systems.  (*See* Defs.' Remand Opp'n at 10–16, ECF No. 10306.)  Thus, in order to determine the existence and scope of the duties alleged by Plaintiff, whether the NFL acted with reasonable care, and whether Hernandez reasonably relied on the NFL Defendants' alleged misstatements and omissions, the Court would need to interpret these provisions, and thus Plaintiff's claim is preempted by the LMRA.  *See Allis-Chalmers* v. *Lueck*, 471 U.S. 202, 213 (1985); *Beidleman* v. *Stroh Brewery Co.*, 182 F.3d 225, 231–32 (3d Cir. 1999); *Antol* v. *Esposto*, 100 F.3d 1111, 1117 (3d Cir. 1996); *Duerson* v. *Nat'l Football League*, No. 12-cv-2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012); (*see also* Defs.' Remand Opp'n at 10–16; A.H. Compl. ¶¶ 5, 21, 221, 326, 348; SAMAC ¶¶ 16, 42, 178, 235, 237, 282, 339, 343, 367 (alleging that the NFL had a duty "to reduce injury risks in football" and to warn players of the risks of repetitive hits; alleging that the NFL improperly concluded that concussed players could return to play; alleging the failure to track and report head injuries; and alleging that players justifiably relied on the NFL's alleged misrepresentations concerning the risks of head injuries).)

   *Dent* is distinguishable for another key reason: unlike A.H., the plaintiffs in *Dent* asserted a negligence per se theory based on alleged "violat[ions of] state and federal laws governing prescription drugs."  (*Dent*, No. 15-15143, at 14.)  Under that theory, "whether the NFL breached its duty to handle drugs with reasonable care can be determined by comparing the conduct of the NFL to the requirements of the statutes at issue" and thus "there is no need to look at, let alone interpret, the CBAs."  (*Id.* at 16.)  Put another way, "liability

for a negligence claim *alleging violations of federal and state statutes* does not turn on how the CBAs allocated duties among the NFL, the teams, and the individual doctors," because "[t]he parties to a CBA cannot bargain for what is illegal." (*Id.* at 19 (emphasis added).)  By contrast, A.H. has alleged *no* violations of any federal or state statutes, and therefore, there are *no* statutes that the Court could consult to ascertain the applicable standard of care owed by the NFL Defendants.  Instead, the standard of care applicable to Plaintiff's claim must come from the CBAs, and resolution of her claim thus turns on an interpretation of the CBAs, specifically, how the CBAs allocated duties and responsibilities among the NFL, its Clubs, individual doctors, the players' union, and the players themselves. (*See, e.g.*, Defs.' Mem. Supp. Mot. Dismiss SAMAC on Preemption Grounds at 22–37, ECF No. 8403.)

Moreover, although Plaintiff argues that *Dent* "forecloses" Defendants' preemption arguments (Pl.'s Second Mem. at 7), it does no such thing.  *Dent* is an out-of-circuit decision that not only has no binding effect on this Court but is also against the weight of authority.  Apart from *Dent*, virtually every case that has dealt with concussions or neurological injuries in football—as A.H.'s claim does—or other similar health and safety issues involving the NFL or its Member Clubs, has found preemption because of the need to interpret the terms of the CBAs in order to resolve plaintiffs' claims. *See, e.g.*, *Ballard*, 123 F. Supp. 3d 1161; *Smith* v. *Nat'l Football League Players' Ass'n*, No. 14-cv-1559, 2014 WL 6776306 (E.D. Mo. 2014); *Duerson*, 2012 WL 1658353; Order, *Maxwell*, No. 11-CV-08394; *see also Givens* v. *Tenn. Football, Inc.*, 684 F. Supp. 2d 985, 989–92 (M.D. Tenn. 2010); *Stringer* v. *Nat'l Football League*, 474 F. Supp. 894, 908–11 (S.D. Ohio 2007); *Sherwin*, 752 F. Supp. at 1178–79; *Jeffers* v. *D'Allessandro*, 681 S.E.2d 405, 412 (N.C. Ct. App. 2009). *Dent* did not overrule any of these cases; nor (with the exception of *Maxwell*) could it have.

20

## CONCLUSION

For the reasons stated, the NFL Defendants respectfully request that the Court dismiss with prejudice the claim asserted by Settlement Class Member A.H. in *Hernandez* v. *National Football League, et al.*, No. 18-cv-00464-AB.

Dated: November 15, 2018                     Respectfully submitted,

/s/ Brad S. Karp
Brad S. Karp
Bruce Birenboim
Lynn B. Bayard
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Main: 212.373.3000
Fax: 212.757.3990
bkarp@paulweiss.com
bbirenboim@paulweiss.com
lbayard@paulweiss.com

*Attorneys for the NFL Defendants*

21