UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 12-md-02323-AB<br><br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO: | |
| *Martin* v. *Kansas City Chiefs Football Club, LLC* | No. 14-cv-3381 |
| *Lewis* v. *Kansas City Chiefs Football Club, LLC* | No. 14-cv-1995 |

**DEFENDANT KANSAS CITY CHIEFS FOOTBALL CLUB INC.'S OPPOSITION
TO SETTLEMENT CLASS MEMBER ANITA MARTIN'S MOTION TO OPT OUT
OF CLASS ACTION SETTLEMENT AGREEMENT**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................ii
PRELIMINARY STATEMENT...........................................................................................1
BACKGROUND ..................................................................................................................2
ARGUMENT ........................................................................................................................4
    I.   Martin's Mistaken Belief That She "Effectively" Opted Out Is Not a Valid Reason for Her Delay ..........................................................................................5
    II.  The Length of Martin's Delay Is Inexcusable................................................9
    III. Martin's Delay Will Prejudice Defendant...................................................10
    IV. Martin's Claimed "Good Faith" Does Not Excuse Her Neglect................11
CONCLUSION ...................................................................................................................12

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Advanced Estimating Sys., Inc.* v. *Riney*,
   130 F.3d 996 (11th Cir. 1997)......................................................................................... 8

*In re Am. Exp. Fin. Advisors Secs. Litig.*,
   672 F.3d 113 (2d Cir. 2011)........................................................................................... 10

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act
   (ERISA) Litig.*,
   No. 09-md-2058, 2013 WL 2443748 (S.D.N.Y. June 5, 2013)................................... 5, 8

*Bowman* v. *UBS Fin. Servs., Inc.*,
   No. C-04-3525, 2007 WL 1456037 (N.D. Cal. May 17, 2007)................................. 10, 11

*DaSilva* v. *Esmor Corr. Servs. Inc.*,
   215 F.R.D. 477 (D.N.J. 2003).......................................................................................... 5

*In re Diet Drugs Prods. Liab. Litig.*,
   92 Fed. Appx. 890 (3d Cir. 2004) ........................................................................... 5, 8, 11

*In re Dvi, Inc. Secs. Litig.*,
   No. 03-5336, 2016 WL 1182062 (E.D. Pa. Mar. 28, 2016)...................................... 10, 11

*In re Imprelis Herbicide Mktg., Sales Prac. & Prods. Liab. Litig.*,
   Nos. 11-md-02884, 11-cv-7599, 2014 WL 348593 (E.D. Pa. Jan. 31,
   2014) ..................................................................................................................... 7, 10, 11

*In re Ins. Brokerage Antitrust Litig.*,
   282 F.R.D. 92 (D.N.J. 2012)............................................................................................ 7

*In re Kaplan*,
   482 Fed. Appx. 704 (3d Cir. 2012) .................................................................................. 5

*In re Lashinger*,
   No. 97-15113, 1999 WL 409389 (Bankr. E.D. Pa. June 15, 1999) ................................. 7

*In re Processed Egg Prods. Antitrust Litig.*,
   130 F. Supp. 3d 945 (E.D. Pa. 2015) ............................................................................. 11

*In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*,
   177 F.R.D. 216 (D.N.J. 1997)........................................................................................ 10

*Ragguette* v. *Premier Wines & Spirits*,
   691 F.3d 315 (3d Cir. 2012)....................................................................................... 9, 12

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Routes 202 & 309 & Novelties Gifts, Inc.* v. *Kings Men*,
   No. 11-cv-5822, 2014 WL 899136 (E.D. Pa. Mar. 7, 2014).............................................. 6

*Sloan* v. *Winn Dixie Raleigh, Inc.*,
   25 Fed. Appx. 197 (4th Cir. 2002) ..................................................................................... 7

Defendant, the Kansas City Chiefs Football Club, Inc. ("Defendant" or the "Chiefs"), respectfully submits this memorandum of law in opposition to Settlement Class Member Anita Martin's ("Martin" or "Plaintiff") motion to opt out of the Class Action Settlement Agreement, as amended, ECF No. 6481-1 (the "Settlement Agreement").

## **PRELIMINARY STATEMENT**

For the first time, *four years*, one month, and one day after the deadline to opt out of the Settlement Class, Settlement Class Member Anita Martin asks this Court to excuse her substantial and unjustifiable delay and allow her to opt out at this late date. Her belated request—effectively her third bite at the apple in seeking to salvage her barred claims—should be denied as untimely. Martin concedes she has never before requested to opt out, yet attempts to justify this failure as "excusable neglect" due to a purported belief that she had "effectively" opted out through her ex-husband and thus did not need to opt out individually.

There certainly is neglect here, but it is not excusable. First, as shown in the Chiefs' prior briefing, Martin's claimed belief is facially inconsistent with the clear terms of the Settlement Agreement. Opting out is an individual obligation, and the Agreement and the Class Notice—in clear, unambiguous, and judicially approved language—described the steps necessary for any individual Settlement Class Member to opt out. It was incumbent on Martin and her counsel to read and comply with these opt-out instructions if Martin wished to maintain her claims against the Chiefs. There is no dispute that Martin had notice of the opt-out requirements, and it is well settled that a misunderstanding of the law or the relevant rules does not constitute excusable neglect. Second, courts regularly deny belated opt-out requests as untimely even when made within a few months of the deadline: here, Martin waited a full four years. Further, to permit Martin to opt out at this late date would significantly prejudice the Chiefs, who were entitled to rely on the bargained-for certainty that the opt-out deadline provided. Finally, even assuming that

Martin acted in good faith, that does not excuse her neglect. Martin's failure to timely opt out, her failure to correct this deficiency and request permission to opt out belatedly at any point in the past four years, and her failure to respond timely to the Chiefs' motion to dismiss (or to argue excusable neglect when she finally did so), exhibit a pattern of neglect that should not be rewarded. Martin failed to comply with the opt-out requirements, and must accept the consequences—of which she and her counsel were on notice—of her inaction.

## **BACKGROUND**

On December 27, 2013, Plaintiff filed her individual action, which was consolidated with that of her ex-husband, a Retired NFL Football Player, on March 13, 2014, and then transferred to this Court on June 9, 2014 as part of *In re: National Football League Concussion Injury Litigation, MDL No. 2323* ("MDL 2323"). (*See* Pl.'s Mem. at 3); Order at 1, MDL 2323 (J.P.M.L. June 9, 2014), ECF No. 625.[1] Nearly seven months after the filing of Martin's individual action, on July 7, 2014, this Court issued an order preliminarily approving the Settlement Agreement. (Order, ECF No. 6084.) Pursuant to the Court's order, Co-Lead Class Counsel disseminated notice to the Settlement Class, describing, among other things, the terms of the Settlement Agreement and the deadline for opting out, October 14, 2014, as well as the fact that failure to opt out would bar Settlement Class Members (including Derivative Claimants) from any further litigation against the Released Parties. (Order ¶ 4, ECF No. 6084); Long-Form Notice at 2, ECF No. 6093-1 (warning that opting out "*is the only option that allows you to participate in any other lawsuit . . .* about the claims in this case" (emphasis added)); *id.* at 15 ("Unless you

---

[1] The Chiefs previously filed a motion to dismiss Martin's putative claims on the ground that she is a Settlement Class Member. (ECF No. 10282.) The Chiefs' opening and reply briefs in support of that motion—which the Chiefs expressly incorporate by reference in their entirety here—summarize the procedural history and terms of the Settlement Agreement in additional detail. (Def.'s Mot. to Dismiss Br. at 2–6, ECF No. 10282-1; Def.'s Mot. to Dismiss Reply Br. at 2–5, ECF No. 10319.)

exclude yourself (opt out) from the Settlement . . . *you cannot sue the NFL Parties, the Member Clubs, or related individuals and entities, or be part of any other lawsuit . . . . This means you give up your right to continue to litigate* any claims related to this Settlement . . . ." (emphasis added)); *id.* at 16 (providing that any Settlement Class Members, including Derivative Claimants, wishing to pursue claims against any released party were required to opt out by submitting a written request on or before October 14, 2014 that stated "*I* wish to exclude *myself* from the Settlement Class" and bore their personal signature and a copy of their driver's license, among other requirements (emphasis added)).

Martin did not exercise her right to opt out and thus did not appear on the initial list of opt-outs published on November 3, 2014, though her ex-husband—who filed a timely opt-out request—did. (*See* Opt Out Report, Ex. 1 at 5, ECF No. 6340-1.) The Court subsequently issued an order granting final approval of the Settlement, accompanied by publication of a final list of opt-outs, on which Martin's name again failed to appear while her ex-husband's was included. (*See generally* Am. Final Order & J., ECF No. 6534; Posting of List of Opt Outs Pursuant to Final Order & J., Ex. 1, ECF No. 6533-1.) For more than two years following the opt-out deadline and the publication of the opt-out list, Martin took no action regarding her putative lawsuit.

On September 27, 2018, the Chiefs moved to dismiss Martin's complaint on the ground that she is a Settlement Class Member who never exercised her right to opt out and whose putative claims are barred by the release in the Settlement Agreement and the doctrine of claim preclusion. (Def.'s Mot. to Dismiss Br. at 1-2, ECF No. 10282-1.) Martin failed to respond to Defendant's motion. The Court then, *sua sponte*, issued an order to show cause why Martin's complaint should not be dismissed. (Order, ECF No. 10303.) Only after receiving this second chance did Martin eventually respond, on October 22, 2018, arguing both that she had "effectively"

opted out through her ex-husband and that her pre-settlement filing of an individual lawsuit and subsequent actions nearly three years after the opt-out deadline evidenced an intent to opt out that should excuse her failure to formally do so. (*See generally* Pl.'s Mot. to Dismiss Opp'n Br., *Martin v. Kansas City Chiefs Football Club, LLC*, No. 14-cv-3381 ("*Martin*"), ECF No. 9.) Defendant timely filed a reply brief rebutting those arguments. (*See generally* Def.'s Mot. to Dismiss Reply Br., ECF No. 10319.) Then, on November 15, Martin filed this new motion requesting, for the first time, exclusion from the Settlement Class. She simultaneously filed a motion requesting permission to file a surreply in response to Defendant's motion to dismiss, raising substantially identical arguments as those in the instant motion. (Pl.'s Mot. for Leave to File Sur-Reply, *Martin*, ECF No. 11.)[2]

## ARGUMENT

It is undisputed that Martin's putative claim is encompassed by the Settlement Agreement's release, that Martin received notice of the opt-out requirements under that Agreement, and that she failed to opt out by the deadline. It also is undisputed that during the four-year period following the opt-out deadline and the publication of the opt-out list—a list on which her name did not appear—Martin never formally requested exclusion from the Settlement Class before filing the instant motion. Martin's argument to opt out at this late date—focusing once again on the irrelevant facts that her action was consolidated with that of her ex-husband, who timely opted out; that she had filed a pre-settlement lawsuit; and that her counsel took certain actions in 2017 in connection with that lawsuit—breaks no new ground and instead simply repackages what she said in opposition to the Chiefs' motion to dismiss. Whereas, in response to the motion to dismiss, Martin argued that these circumstances "effectively" opted Martin out of

---

[2] The Court granted Martin's request to file a surreply on November 20, 2018. (Order, ECF No. 10341.)

4

(or evidenced her intent to opt out of) the Settlement Class, here, she cites these circumstances as purported evidence of her "excusable neglect" in failing to opt out. In fact, Martin's belated attempt to seek exclusion from the Settlement Class cannot satisfy the excusable neglect standard.[3]

Courts consider four factors in determining whether a party seeking belatedly to opt out has carried her burden of showing excusable neglect: "[1] the danger of prejudice to the non-moving party; [2] the length of the delay and its potential effect on judicial proceedings; [3] the reason for the delay, including whether it was in the reasonable control of the movant; and [4] whether the movant acted in good faith." *In re Diet Drugs Prods. Liab. Litig.*, 92 Fed. Appx. 890, 893 (3d Cir. 2004) (*quoting Pioneer Inv. Servs. Co.* v. *Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)); *DaSilva* v. *Esmor Corr. Servs. Inc.*, 215 F.R.D. 477, 483 (D.N.J. 2003) ("Establishing 'excusable neglect' is the movant's burden."). These factors weigh decisively against a finding of excusable neglect here, and Martin has failed to carry her burden of showing otherwise.

### I. Martin's Mistaken Belief That She "Effectively" Opted Out Is Not a Valid Reason for Her Delay

As the Third Circuit has stated, the third factor (reason for delay) is the most critical, and Martin faces a heavy burden, as "a party claiming excusable neglect will, in the ordinary course, lose" where they have failed "to follow the clear dictates of a court rule" such as the opt-out deadline here. *In re Kaplan*, 482 Fed. Appx. 704, 707 (3d Cir. 2012) (quotation omitted); *see also In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 09-md-2058, 2013 WL 2443748, at *6 (S.D.N.Y. June 5, 2013) (noting that "reason for delay is the most critical consideration, and that the equities will rarely if ever favor a party who fails to

---

[3] Indeed, the Chiefs anticipated and substantively refuted Martin's current arguments in connection with the motion to dismiss briefing—establishing that any attempt by Martin to belatedly seek exclusion from the Settlement Class would fail under the excusable neglect standard. (*See* Def.'s Mot. to Dismiss Reply Br. at 5–6, ECF No. 10319.)

5

follow the clear dictates of a court rule . . . even if all the other factors tip in the movant's favor" (quotation omitted)).  As noted above, there is no dispute that Martin not only failed to follow the clear dictates of the Settlement Agreement, but also failed to take any corrective action whatsoever in the four years since the opt-out deadline.  Martin's excuse for her substantial delay is her claim that she believed she had opted out of the Settlement Class, despite not having submitted a request to do so, because her ex-husband opted out.  (Pl.'s Mem. at 5.)  Such a mistaken belief, however, does not constitute excusable neglect, and thus Martin's arguments must fail.

First, because Martin and her counsel received notice of the opt-out deadline, of the relevant requirements, and of the consequences of failing to opt out, there is no question that "the delay . . . was entirely avoidable and within [Martin's and her counsel's] control," which weighs heavily against a finding of excusable neglect.  *Routes 202 & 309 & Novelties Gifts, Inc.* v. *Kings Men*, No. 11-cv-5822, 2014 WL 899136, at *6 (E.D. Pa. Mar. 7, 2014) (noting that in such situations "a court may rely primarily on the third *Pioneer* factor [reason for the delay]" (quotation omitted)).  Further, as explained in Defendant's recent reply brief, Martin's claimed belief that she did not need to opt out individually in order to pursue her claims is contrary to law and to the express language in the Settlement Agreement (and the Class Notice, approved by this Court and the Third Circuit and received by Martin) providing clearly and unmistakably that each Settlement Class Member had the *individual obligation* to opt out if he or she wished to litigate claims released under that Agreement.  (*See* Def.'s Mot. to Dismiss Reply Br. at 2–3, ECF No. 10319; Settlement Agreement § 14.2(a)–(b) (providing that any Settlement Class Members, including Derivative Claimants, wishing to pursue claims against any released party were required to "timely and properly" opt out by submitting a written request that stated "*I* wish to exclude *myself* from the Settlement Class" and bore their personal signature and a copy of their driver's license (emphasis

6

added))); *supra* at 2–3; *see also In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 118–19 (D.N.J. 2012) (finding that because "'[o]pting out is an individual right [that] must be exercised individually,'" plaintiff "may opt out of this Settlement Agreement, but may not request exclusion on behalf of any other potential class members" (quoting *In re Diet Drugs*, 282 F.3d 220, 241 (3d Cir. 2002)); *cf. Sloan* v. *Winn Dixie Raleigh, Inc.*, 25 Fed. Appx. 197, 198 (4th Cir. 2002) (rejecting class member's argument that he was covered by class representative's opt-out).

Given the clear terms of the Settlement Agreement and Class Notice as well as established law, Martin's alleged belief that her ex-husband's opt-out excused her from her obligation to opt out individually was clearly mistaken, as further evidenced by Martin's failure— in any of her three briefs filed to date—to cite a single case that might justify her position. (*See* Def.'s Mot. to Dismiss Reply Br. at 2–3, ECF No. 10319 (explaining why consolidation of Martin's case is no different than consolidation of other cases in MDL 2323 and is irrelevant to her individual obligation to opt out).)[4] Courts are clear that "misunderstanding of the law is not a basis to find excusable neglect," nor is misreading or ignorance of the relevant rules. *In re Lashinger*, No. 97-15113, 1999 WL 409389, at *2–3 (Bankr. E.D. Pa. June 15, 1999). This is especially so here, where Martin was *represented by counsel* at the time, and her counsel had the obligation to review the Settlement Agreement and Class Notice and to advise Martin of the need to submit an individual, timely opt-out request to preserve her right to continue to litigate against the Chiefs. Her counsel apparently failed to do so—a failure for which Martin, not the Chiefs, is accountable, and which "is not a justification that will excuse" Martin. *In re Imprelis Herbicide*

---

[4] In fact, as explained in Defendant's recent reply brief, there is no reasonable basis for Martin's claimed "belief" that her ex-husband's timely opt out request covered her separate lawsuit: first, Martin never ceded control of her separate lawsuit to her ex-husband; second, her ex-husband's opt-out did not purport to include Martin within its ambit; and third, the very fact that they are divorced and filed separate lawsuits only underscores the unreasonableness of assuming that either one purported to speak or act for the other (which would have been legally ineffective in any event). (Def.'s Mot. to Dismiss Reply Br. at 2 & n.1, ECF No. 10319.)

7

*Mktg., Sales Prac. & Prods. Liab. Litig.*, Nos. 11-md-02884, 11-cv-7599, 2014 WL 348593, at *6 (E.D. Pa. Jan. 31, 2014) ("*Imprelis I*") (finding inexcusable neglect where counsel received filed opt-out list, from which its client was missing, yet took more than three months to take action, noting that "a client is accountable for the acts and omissions of its chosen counsel"); *see In re Diet Drugs*, 92 Fed. Appx. at 894 (finding inexcusable neglect where plaintiff and counsel "both had actual and constructive notice of the [opt-out] deadline" yet mistakenly failed to file opt-out form); *Advanced Estimating Sys., Inc.* v. *Riney*, 130 F.3d 996, 999 (11th Cir. 1997) ("[C]ounsel's misunderstanding of the law cannot constitute excusable neglect."); *In re Bank of Am. Corp.*, 2013 WL 2443748, at *8 (putative opt-out failed to establish excusable neglect when it "apparently showed minimal interest in taking corrective action or even following up on numerous red flags").[5]

In a last-ditch attempt to justify her mistaken belief that she had "effectively" opted out of the Settlement Class as a result of her ex-husband's opt-out, Martin asserts that she will receive no award under the Settlement Agreement because a Derivative Claimant, such as Martin, is entitled to an award "if and only if . . . the Retired NFL Football Player through whom the

---

[5] Martin also points to three actions in 2017—her counsel's telephonic participation in the March 27, 2017 opt-out organizational meeting, her filing of a short-form complaint on July 27, 2017, and her filing of a one-page document (on the same day) purporting to join in the remand motion filed by her ex-husband—but she does not explain how these actions are relevant, other than perhaps to show that she continued to hold her mistaken belief that her ex-husband "effectively" opted her out. (Pl.'s Mem. at 6, 8.) As explained in Defendant's recent reply brief, there is no merit to Martin's suggestion that the administrative act of allowing her counsel to participate in a conference telephonically meant that the Court "agreed" that Martin had "effectively" opted out through her ex-husband, as the merits of Martin's Settlement Class Member status were not before the Court at that time. (Def.'s Mot. to Dismiss Reply Br. at 6 n.5, ECF No. 10319 (also noting that order issued after opt-out conference attached a list of pending opt-out cases that did not include Martin's individual action).) In addition, as explained in Defendant's reply, actions taken subsequent to the opt-out deadline are irrelevant to Martin's intent to opt out (*id.* at 6), and to the extent that Martin or her lawyer thought they were, that mistaken understanding of the law does not constitute excusable neglect for the reasons described above. Martin's brief also alludes to her pre-settlement lawsuit, but does not further elaborate on how that supports a finding of excusable neglect. (Pl.'s Mem. at 5–6 & 5 n.3 (incorporating arguments from opposition to motion to dismiss).) As explained in Defendant's recent reply brief, it is well settled that the pendency of a pre-settlement lawsuit neither excuses a class member from opting out nor suffices to manifest intent to opt out (Def.'s Mot to Dismiss Reply Br. at 4–5, ECF No. 10319), and thus to the extent Martin is suggesting that her or her counsel's mistaken belief to the contrary justifies her four-year delay in requesting exclusion, that argument fails for the same reasons.

8

relationship is the basis of the claim . . . has received a monetary award," and thus, due to her ex-husband's opt-out, she will not be able to submit a claim or receive compensation. (Settlement Agreement § 7.2; Pl.'s Mem. at 7.) Martin's circumstances, however, are no different from other Derivative Claimants, whose prospect for an award is entirely dependent on the actions of the relevant Retired NFL Football players—for example, Derivative Claimants who cannot receive an award because the relevant Retired NFL Football Players did not timely register for benefits under the Agreement. Rather than excusing her inaction, the clear provisions of the Settlement Agreement—which make Martin's eligibility for a monetary award entirely dependent on her ex-husband's actions—should have prompted her and her counsel to protect her rights. There was nothing preventing Martin or her counsel from inquiring, prior to the deadline, whether her ex-husband intended to opt out and, if so, taking the necessary steps to follow suit. Moreover, there was nothing preventing Martin or her counsel from taking immediate action once the initial opt-out list was published on November 3, 2014, with her ex-husband's name included and hers conspicuously absent. (Opt Out Report, Ex. 1 at 5, ECF No. 6340-1; *see also* Timely Opt Out Requests Containing All Info. Required by § 14.2(c) at 3, ECF No. 6533-1.) Thus, Martin has known *for four years* that, despite her ex-husband's opt-out, she herself was not considered to be a timely opt-out, yet she never took any steps before now to seek relief. It is Martin, and not the Chiefs, who must bear the consequences of her inaction. *See Ragguette* v. *Premier Wines & Spirits*, 691 F.3d 315, 332–33 (3d Cir. 2012) (citing movant's "manifest lack of diligence . . . and, in particular, the multiple opportunities she had to discover [her] failure . . . and then to attempt to remedy such a clear and serious mistake" in finding inexcusable neglect).

## II.  The Length of Martin's Delay Is Inexcusable

Martin's request to opt out of the Settlement Class comes more than four years too late. Courts regularly deny such belated requests as inexcusable, including those made much

9

closer to the deadline than Martin's request here. *See, e.g.*, *In re Am. Exp. Fin. Advisors Secs. Litig.*, 672 F.3d 113, 130 (2d Cir. 2011) (request submitted "three years late" denied due to inexcusable neglect); *see also In re Prudential Ins. Co. of Am. Sales Pracs. Litig.*, 177 F.R.D. 216, 236 (D.N.J. 1997) (requests made "within months of the opt-out deadline" denied due to inexcusable neglect); *Imprelis I*, 2014 WL 348593, at *6 (request made several months after deadline denied due to inexcusable neglect); *In re Dvi, Inc. Secs. Litig.*, No. 03-5336, 2016 WL 1182062, at *3, *8 (E.D. Pa. Mar. 28, 2016) (request made three months after deadline denied due to inexcusable neglect); *Bowman* v. *UBS Fin. Servs., Inc.*, No. C-04-3525, 2007 WL 1456037, at *3 (N.D. Cal. May 17, 2007) (request nearly seven months after deadline denied due to inexcusable neglect). Indeed, this Court denied a request for exclusion made after the March 2017 opt-out organizational conference where, unlike Martin, the individual had *attempted* to file a timely opt out request but had failed to include his telephone number on his opt-out request form. (*See* Order at 1 (Oct. 4, 2017), ECF No. 8439 (denying untimely July 14, 2017 opt-out request of Settlement Class Member Gregory Bingham).) Therefore, the four years' delay here weighs heavily against a finding of excusable neglect.

### III.  Martin's Delay Will Prejudice Defendant

As explained in Defendant's recent reply brief (Def.'s Mot. to Dismiss Reply Br. at 7–8, ECF No. 10319), this factor also weighs against a finding of excusable neglect because allowing Martin to opt out at this late date would considerably prejudice Defendant, who was entitled to the certainty that these bargained-for requirements and deadlines provide and will be prejudiced if Martin, a Settlement Class Member, is allowed to opt out long after Defendant understood the potential exposure remaining after the Settlement was finally approved. *See, e.g.*, *In re Am. Exp. Fin. Advisors Secs. Litig.*, 672 F.3d at 130 ("There is, moreover, little doubt that [defendant] would suffer prejudice if [plaintiffs] were permitted to opt out of the Class Settlement

three years late, as it would be exposed to liability that it had every reason to think had been foreclosed by the entry of the Settlement Agreement."); *In re Dvi, Inc. Secs. Litig.*, 2016 WL 1182062, at *8 (finding prejudice on grounds that "opt-out deadline . . . was a negotiated, express term of the [settlement] by which Defendants sought to achieve finality and thereby financial certainty" and "[a]llowing [plaintiffs] to belatedly opt out now would increase Defendants' potential financial obligations"); *Bowman*, 2007 WL 1456037, at *3 (finding prejudice because defendant would "have to expend resources defending against claims that it reasonably understood were foreclosed by" final approval of class settlement).[6] Martin does not even address this prong of the excusable neglect standard, and thus appears to concede the considerable prejudice to Defendant.

### IV. Martin's Claimed "Good Faith" Does Not Excuse Her Neglect

As for the final prong of the excusable neglect standard, while the Chiefs do not have a basis to accuse Martin of acting in bad faith, it should be noted that "'good faith' includes demonstrable respect for the Court's case management orders, deadlines, procedures, and decisions." *Imprelis I*, 2014 WL 348593, at *6. Martin's pattern of repeatedly missing deadlines and failing to take corrective action, starting with her noncompliance with the opt-out requirements, "demonstrate[s] insufficient respect in that regard and may actually stand as a problematic example for others." *Id.* (finding inexcusable neglect where counsel failed to take action for several months after opt-out deadline). Moreover, "even if there was no reason to

---

[6] Such prejudice is heightened where, as here, the settling defendants had the right to terminate the settlement based on the number of opt-outs, as "even a single additional opt-out would impair the bargained-for value of the settlements." *In re Processed Egg Prods. Antitrust Litig.*, 130 F. Supp. 3d 945, 954 (E.D. Pa. 2015); *see In re Diet Drugs*, 92 Fed. Appx. at 894 (finding prejudice due to single belated opt-out request because "being able to determine the total number of initial opt-outs by a certain date was essential to the deal between [defendant] and the class"); *Imprelis I*, 2014 WL 348593, at *3 (rejecting argument that "one additional opt-out" did not prejudice defendant even without other pending requests to extend deadline or any "similarly situated class members who would be likely to come out of the proverbial woodwork"); *see also* Settlement Agreement § 16.1.

11

believe that [Martin] ever acted in bad faith, we cannot conclude that she was so careful and vigilant as to overcome the weight of the reason for the delay factor." *Ragguette*, 691 F.3d at 332–33 (holding that excusable neglect did not exist in light of movant's "manifest lack of diligence . . . and, in particular, the multiple opportunities she had to discover" and "remedy" her error, and explaining that "a ruling [of excusable neglect] in the current circumstances could be read as condoning and even rewarding otherwise avoidable mistakes—and even outright incompetence—on the part of even experienced attorneys").

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny Martin's untimely request to opt out of the Settlement Class.

Dated: November 29, 2018

Respectfully submitted,

/s/ Brad S. Karp
Brad S. Karp
Bruce Birenboim
Lynn B. Bayard
Claudia Hammerman
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Main: 212.373.3000
Fax: 212.757.3990
bkarp@paulweiss.com
bbirenboim@paulweiss.com
lbayard@paulweiss.com
chammerman@paulweiss.com

*Attorneys for the Kansas City Chiefs Football Club, LLC*

## CERTIFICATE OF SERVICE

It is hereby certified that a true copy of the foregoing document was served electronically via the Court's electronic filing system on the 29th day of November, 2018, upon all counsel of record.


Dated: November 29, 2018             */s/ Brad S. Karp*
                                      Brad S. Karp