## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>　　　Plaintiffs,<br><br>　　　　　v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>　　　Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

## SECOND VERIFIED PETITION OF CO-LEAD CLASS COUNSEL CHRISTOPHER A. SEEGER FOR AN AWARD OF <u>POST-EFFECTIVE DATE COMMON BENEFIT ATTORNEYS' FEES AND COSTS</u>

Pursuant to this Court's May 24, 2018 Explanation and Order (ECF No. 10019), directing the filing of implementation-phase common benefit fee petitions at six-month intervals, and subsequent to the First Verified Petition for an Award of Post-Effective Date Common Benefit Attorneys' Fees and Costs (ECF No. 10128) ("First Post-Effective Date Petition"), Co-Lead Class Counsel Christopher A. Seeger ("Co-Lead Class Counsel" or "Seeger Weiss") respectfully submits this Second Verified Petition for an Award of Post-Effective Date Common Benefit Attorneys' Fees and Costs.

Based on the work undertaken from May 25, 2018, the first date after the close of the time period covered by the First Post-Effective Date Petition,[1] to November 30, 2018, Seeger Weiss and other Class Counsel who have undertaken work for the common benefit of the Class dedicated over 4,378 hours, resulting in a lodestar (calculated using the blended rates set by the Court; *see* ECF No. 10019, at 7 n.4) of $2,895,044.17, and have incurred $300,590.26 in expenses.

## SUMMARY OF WORK COMPLETED - MAY 25, 2018 TO NOVEMBER 30, 2018

As was discussed in the First Post-Effective Date Petition, with the launch of the Settlement, Class Counsel undertook several long-term projects to ensure that the Settlement's benefits could be delivered to the Retired NFL Football Players and their families.  These efforts ranged from driving registration to exceed projected expectations to the preparation of all the policies, documents, and forms that would be used for registration, the submissions of claims, and the BAP.  Although the foundational work necessary to establish this 65-year settlement was largely completed by the time of the First Post-Effective Date Petition, several substantive matters above and beyond the monitoring and oversight of the Settlement continued to demand the attention of Co-Lead Counsel and other Class Counsel.  Additionally, monitoring the Settlement Program to ensure that it continues to deliver the promised benefits to the Settlement Class has continued to require sundry efforts.

Among these efforts were revisions to the MAF and BAP policies and documentation, monitoring and oversight of the medical professionals in the network of Qualified MAF Physicians and BAP Providers, support of Class Members not only through the Claims Process but also on

---

[1] The First Post-Effective Date Petition covered the period from January 7, 2017 to May 24, 2018.  *See* ECF No. 10128 at 1.

appeals, ongoing support of unrepresented Class Members and individual counsel, and work toward determining the best use of the $10 million Education Fund toward implementing the programs and research tools contemplated for the Fund.[2]

Additionally, as with the First Post-Effective Date Petition, Co-Lead Class Counsel and other Class Counsel became engaged in certain significant work that was unanticipated, but which was essential to ensure the integrity of the Settlement Program and the benefits negotiated for the Retired NFL Football Players and their families.  Most notably, this work included defending the Special Masters' unfettered discretion to consult with members of the AAP when deciding appeals and protecting the clinical judgment of Qualified MAF Physicians to make dementia diagnoses that are "generally consistent" with the negotiated BAP criteria, even if those diagnoses are not "identical" to those under the BAP criteria.

As of November 30, 2018, over 20,500 Class Members had registered for the Settlement Program, over 2,100 Claim Packages had been submitted, 712 Notices of Monetary Awards had been issued, worth over $585 million; and nearly 8,850 BAP examinations had been scheduled for nearly 4,650 players and over 7,950 appointments had been attended as of January 7, 2019.[3]  *See*

---

[2] Much of this continuing work on the Settlement continues to be focused on non-recurring (and often unforeseen) implementation issues rather than purely ongoing oversight and maintenance of the Settlement Program.  In its April 5, 2018 Memorandum addressing the aggregate award of common benefit fees and expenses, the Court noted that it hoped to address the question of the nature and amount of ongoing work to determine the funds that will be appropriate for the duration of the program, including the potential need for the imposition of a holdback from monetary awards for the purpose of compensating future implementation-phase work.  *See* ECF No. 9860 at 2, 17-18 & n.1.  Co-Lead Class Counsel expects to be able to better estimate the nature and amount of work that will be demanded by the Settlement Program on a long-term basis in the next post-Effective Date fee petition, which will be due by July 10, 2019.

[3] Historic statistics related to the MAF are available on the Settlement Website.  *See* www.nflconcussionsettlement.com/Reports_Statistics.aspx (last accessed Jan. 8, 2019).  Historic BAP statistics are not maintained on the Settlement Website.  The Settlement Website however,

www.nflconcussionsettlement.com/Reports_Statistics.aspx (last accessed Jan. 8, 2019).  These successes are not mere happenstance.  Seeger Weiss has worked tirelessly with other Class Counsel on numerous important matters, in coordination with the Administrators, the Special Masters, and the Court—and both cooperatively with and, as circumstances have warranted, against the NFL— to facilitate and oversee the Settlement.  The linchpin of these efforts has been the weekly call that Seeger Weiss hosts with the NFL Parties, the Claims Administrator, the BAP Administrator and the Lien Resolution Administrator, where ongoing issues and progress in resolving them are hashed out.  Some 115 of these weekly calls had taken place by the November 30, 2018 closing date of this petition.  Work on the Settlement has been a daily matter, requiring the dedication of several Seeger Weiss attorneys and paraprofessionals, and has focused around certain key areas that are summarized in the sections that follow.

Oversight of the Claims Process and Monetary Award Determinations:  With the Claims Process in its second year, and hundreds of Monetary Award determinations already issued, Seeger Weiss dedicated hundreds of hours in actively monitoring and supporting the Claims Process to ensure that Class Members are receiving the benefits that were negotiated on their behalf.  This oversight included ongoing reporting and requests for information from the Claims Administrator and reviewing every claim determination by a member of the AAP or the Claims Administrator to ensure that they are correctly following the terms of the Settlement Agreement.  Co-Lead Class Counsels' and other Class Counsel's continuing engagement with Class Members and their counsel provided further bases and guidance on the needs of the Claims Process.

---

reported that over 8,500 BAP examinations had been scheduled for nearly 4,500 players and over 7,600 appointments had been attended as of November 30, 2018.

Moreover, Co-Lead Class Counsel is supporting the petitions of Representative Claimants for Retired NFL Players who were diagnosed with a Qualifying Diagnosis but who died before January 1, 2006.  For these claims to proceed to review on the merits, the Court needs to determine whether they are timely under the applicable state's law.  *See* ECF No. 6481-1 at 35 (Settlement Agreement § 6.2(b)).  Co-Lead Class Counsel has submitted many Statements in support of the Representative Claimants' submissions respecting that category of claims.

Furthermore, a sophisticated audit program was negotiated and implemented.  Just as it had negotiated protections for the interests of Class Members in the rules and procedures governing the audit process, Seeger Weiss has remained engaged with ongoing audits, including through the submission of Statements regarding referrals to the Special Masters and replies in those proceedings taken up by the Special Masters, to make certain that meritorious claims are not unduly caught up in the audit process and to ensure that the focus of any inquiry be on only those parties (e.g., medical and legal professionals) that have been shown to have undertaken potential fraud against the Settlement program.  Besides its work in helping to craft these rules and procedures, Seeger Weiss monitors the progress of audit investigations and provides formal input at each juncture.

Co-Lead Class Counsel has protected and will continue to protect the interests of Class Members by monitoring the wider operation of the Settlement Program and addressing with the Claims Administrator all types of issues as they arise.

Appeals of Claims Determinations:  Seeger Weiss continues to monitor all Monetary Award determinations to provide guidance to Class Members; assess whether Co-Lead Class Counsel should appeal any of the adverse determinations; and, in those cases where an appeal from a

determination is taken, either by a Class Member or the NFL Parties, to determine whether Co-Lead Class Counsel should file a Statement respecting the appeal.   Through this active engagement, Seeger Weiss' goal is to make sure that Class Members' entitlement to benefits is not restricted or foreclosed outright by parsimonious interpretations of the Settlement Agreement or by meritless appeals taken by the NFL.   Whether through submitting Statements in support of a Class Member on appeal or through direct support of unrepresented Class Members and individual counsel, Co-Lead Class Counsel has pursued, among other things:   a properly inclusive interpretation of the "generally consistent" standard underpinning diagnoses made outside of the BAP; appropriate deference to diagnosing physicians, particularly those in the BAP and MAF physician networks; assurance that any appeals by the NFL are not taken in bad faith, thereby improperly delaying the payment of Monetary Awards;   making sure that evidence offered on appeal, such as social media postings offered by the NFL, is subjected to the scrutiny appropriate to unauthenticated hearsay; the appropriate use of neuropsychological screening tests when reviewing the merits of a claim; and the application of the proper diagnostic standards in cases wherein the Retired Player is deceased, which may differ from the diagnostic standards for living Retired Players.

Ensuring Inclusive, Class Member-Friendly Claims Processes:  After first setting up the Claims Process and the development of the fundamental forms and procedures, as well as negotiation and advocacy for the Frequently Asked Questions that serve as the "rules of the road" for the Settlement, Co-Lead Class Counsel continued to engage with the Claims Administrator, the BAP Administrator, the Lien Resolution Administrator, and the NFL Parties to prepare new guidance materials, revise existing forms, and prepare additional forms as new developments demanded.

Co-Lead Class Counsel worked with the Claims Administrator to continually update the Settlement's dedicated website ("Settlement Website"), so as to ensure that Class Members have easy access to the most up-to-date information and clear guidance on the Settlement Program. These efforts included a complete redesign of the Settlement Website late in 2018 to ensure that the increased volume of information concerning the Settlement Program in general and the Claims Process in particular remain easily accessible.

Co-Lead Class Counsel continues to monitor the progress of the Claims Process in order to introduce improvements where possible to guarantee that all eligible claims are paid and all Class Members and (where applicable) their individual counsel receive any needed guidance.


Maintenance of the Networks of Qualified BAP Providers and Qualified MAF Physicians:  The vetting process associated with the selection of Qualified BAP Providers and Qualified MAF Physicians including a detailed review of each provider's curriculum vitae and application, as well as in-depth internet searches to verify the qualifications of each candidate, continued after the First Post-Effective Date Petition because the Claims and BAP Administrators are constantly seeking to address unanticipated needs for neurologists and neuropsychologists in certain regions.  Seeger Weiss has been engaged in this effort on a continuing basis.

Working with the BAP Administrator, the Claims Administrator, the NFL Parties and its own experts, Co-Lead Class Counsel developed amendments to the manuals that are being used by each of the Administrators to train the physicians and providers on the medical aspects of the Settlement.  Similarly, Co-Lead Class Counsel continually monitors and reviews these networks to make certain that Retired NFL Football Players are receiving the care and services to which they are entitled under the Settlement.

<u>BAP Examinations and Supplemental Benefits</u>:   Maintenance of the BAP network of Providers was only one aspect of ensuring delivery of the full range of BAP benefits for eligible Retired NFL Football Players.   Seeger Weiss is monitoring the implementation of the BAP so that examinations are scheduled with increased efficiency and all appropriate medical standards are followed. Moreover, in coordination with the BAP Administrator, Co-Lead Class Counsel worked toward the implementation of BAP Supplemental Benefits for those Retired NFL Football Players whose BAP examinations yield a diagnosis of Level 1 Neurocognitive Impairment.   As of November 30, 2018, 50 players had received Level 1 diagnoses and were either in the process of selecting their BAP Provider who will be overseeing their treatment and benefits, or were already receiving their Supplemental Benefits.   These benefits include a range of therapeutics, pharmaceuticals, and diagnostic and imaging services, and required additional contracting with BAP Providers as well as with those entities outside of the BAP network of Providers who will provide many of the services.   Working with the BAP Administrator, the Claims Administrator, the NFL Parties, and its own experts, Seeger Weiss developed the services agreement that each physician and supplemental provider will need to sign to serve as Supplemental Providers.

In addition, since the First Post-Effective Date Petition, several visually-impaired Retired NFL Football Players sought to participate in the BAP.   Because many of the tests that make up the BAP test battery require that the test subject be able to see, Co-Lead Class Counsel, with the support and assistance of its expert, undertook to negotiate an amended battery of neuropsychological tests that would accommodate visually-impaired Retired NFL Football Players.

Appointment of Additional Appeals Advisory Panel Members:  As the Court is aware, Appeals Advisory Panel ("AAP") members and AAP Consultants serve several functions in the Settlement, including review of many pre-Effective Date diagnoses, re-review of claims that were subject to appeal but remanded by the Special Masters for further consideration in light of new documentation submitted on appeal, resolution (in some instances) of disputes between BAP Providers as to the existence (or not) of a Qualifying Diagnosis, and consultation with the Special Masters as issues relating to medicine arise in the course of their duties.

Toward the middle of 2018, it became apparent that the volume of claims and the related need for AAP claims review and consultation by the Special Masters and the Claims Administrator exceeded projections (driven largely by the unexpectedly high number of registrations that were received and approved).  Accordingly, the decision was made to add two additional members to the AAP.  As with each of the prior candidates, the Settling Parties identified and interviewed potential candidates until the Settling Parties agreed on the recommendations to be made to the Court for appointment to the AAP.  On September 5, 2018, the Court approved the appointment of two new AAP members (ECF No. 10248).

Fielding Calls from, and Supporting, Class Members and Counsel Representing Class Members: In addition to all of the above, Seeger Weiss has responded to hundreds of telephone calls each month from Class Members and attorneys representing Class Members.  The calls involve virtually every conceivable issue concerning the Settlement, including the Claims Process, matters relating to post-Effective Date examinations through the BAP and MAF, liens, and appeals.  Seeger Weiss handled every call and was able to assist numerous Class Members in successfully navigating the Claims Process and, when appropriate, assisted unrepresented Class Members in gathering

necessary documents, including medical records, and completing their claims packages so that their claims can be promptly reviewed and, where meritorious, approved.  Seeger Weiss was similarly engaged with counsel representing Class Members, answering questions they had about the Claims Process, the Settlement Website's Frequently Asked Questions (which guide the Claims Process), and otherwise offering support to ensure that meritorious claims are properly submitted and paid.

Efforts to Protect Class Members from Third-Party Profiteers:  Co-Lead Class Counsel has continued to stand up for Class Members whom litigation funders lured into putative assignments of their prospective Monetary Awards.[4]  It completed the Third Circuit briefing of the appeals taken by several third-party funders who are challenging the Court's declaration that their putative assignment agreements were void.  *See* ECF Nos. 9558, 9755, 9794, 10027, 10141 (notices of appeal filed by various funders).  Related to these appeals was Co-Lead Class Counsel's successful briefing of sundry district court and Third Circuit motions (for stay pending appeal, imposition of bond, or expedition of appeal) that the funders filed.  *E.g.*, ECF No. 9812 (denying RD Legal entities' motion for stay pending appeal; also denied by the Third Circuit on Apr. 10, 2018), ECF No. 10232 (denying Thrivest's motion for imposition of bond; also denied by the Third Circuit on Nov. 6, 2018).  The Third Circuit has tentatively calendared the oral argument for these appeals (which were briefed separately but consolidated for purposes of disposition) for January 23, 2019.

---

[4]   As the Court is already well aware from the briefing of the assignment issues, these putative purchases of Class Members' prospective awards at steep discounts (usually exceeding 50%) were cleverly packaged as what are, in effect, advances against the awards at usurious rates of interest.  *See* ECF No. 8434 at 7 & n.2.

On May 7, 2018, the Court directly instructed Class Counsel Gene Locks to attempt to negotiate a global resolution with all funders that entered into assignments with Class Members as a potential alternative to the rescission remedy that the Court afforded Class Members in its December 8, 2017 Explanation and Order (ECF No. 9517).  Mr. Locks and his partner David Langfitt worked over many months with more than 25 funders, the Special Masters, and the Claims Administrator to ensure that a separate resolution protocol will be and is being implemented case by case in a manner that is fair to all Class Members.  Mr. Locks gave regular status reports to Special Master Verrier and worked directly with the Claims Administrator as he negotiated with these funders to develop a draft protocol to resolve disputes over the agreements.  He also directly reported to the Court on multiple occasions.  *See*, *e.g.*, ECF Nos. 10212, 10233.  The protocol is now in place as part of the Settlement Program and offers an alternative means for Class Members to protect their rights under the Settlement Agreement.  A vast majority of funders have cooperated and agreed to the protocol rather than engage in further litigation.[5]

Continuing to press for discovery following the filing of a motion for sanctions against certain funders – namely, the so-called Cambridge Entities and attorney Tim Howard (who was also one of their principals), who had encouraged Class Members to "invest" their retirement monies in that funder's investment portfolio – Seeger Weiss obtained an accounting showing that the monies had been used to pay cash advances to those entering into void assignment agreements with that funder.  *See* ECF Nos. 10186, 10210.  Co-Lead Class Counsel's related motion for

---

[5]  One such funder, Walker Preston Capital Holdings LLC, availed itself of the Third-Party Funding Resolution Protocol and voluntarily dismissed the Third Circuit appeal that it had filed. ECF No.  10317; *see* ECF No. 10174.

sanctions (ECF No. 9974) remains pending.  Meanwhile, governmental entities are believed to be actively investigating the Cambridge Entities' activities.

Education Fund and Medical Research Library:  Co-Lead Class Counsel and the NFL Parties began exploring organizations that support safety and injury protection in football and may be appropriate recipients of proceeds from the $10 million Education Fund that was established as part of the Settlement.  *See* ECF No. 6481-1 at 68 (Settlement Agreement, art. XII).  The Settling Parties are considering organizations that benefit youth who are just now starting to participate in tackle football as well as those that are focused on the players who have made it further along the path to professional play and retirement from professional play.

Similarly, the Settlement Agreement contemplated that the medical records and information that would be generated through the free BAP examinations provided to consenting and eligible Retired NFL Football Players would be made available for medical research.[6]  *Id.* at 33 (Settlement Agreement § 5.10(a)).  During the late summer of 2018, Seeger Weiss commenced efforts with Columbia University, the BAP Administrator, the Claims Administrator, its own expert, and the NFL Parties to establish a medical research library that will gather, systematically organize, and maintain the medical information that the BAP Administrator is collecting from the BAP Examinations.

## KEYSTONE ACCOMPLISHMENTS ON BEHALF OF CLASS MEMBERS

Although the importance and benefit to the Class of the tasks discussed above are self-evident, a few of the key successes along the way illustrate the value of the work performed by

---

[6]  As further provided in the Settlement Agreement, player confidentiality will be maintained.

Seeger Weiss and other Class Counsel for the common benefit of the Class. These keystone successes include:

- **Special Masters' Use of AAP on Appeals** – In response to a number of Special Masters' denials of its appeals of monetary awards in claims involving diagnoses rendered by MAF Physicians and BAP Providers, the NFL submitted a letter-brief to the Special Masters, asserting that they should overturn the denials of its appeals because they had not consulted with the AAP in reaching their decisions. The NFL took the position that the Special Masters are required to consult with the AAP in all appeals involving medical issues. Co-Lead Class Counsel submitted an opposing letter-brief, pointing out that although the Settlement Agreement *permits* the Special Masters to consult with the AAP on appeals, it does not mandate it but, rather, leaves such consultation solely to the discretion of the Special Masters. The Locks Firm also submitted a coordinated response on behalf of all the individual counsel representing the Players' who were subject to the appeal. The Special Masters rejected the NFL's position, and the NFL has now appealed. Co-Lead Class Counsel and the Locks Law Firm filed responding briefs. That appeal is pending.

- **"Generally Consistent" Appeal** – The NFL initially appealed a number of Monetary Awards in which the diagnoses were rendered by MAF Physicians, contending that the players' test results did not satisfy the BAP diagnostic criteria. Co-Lead Class Counsel filed statements in support of a number of the players who were the subject of the NFL's appeals, arguing that the Settlement Agreement's "generally consistent" standard, applicable to all diagnoses rendered outside of the BAP, expressly does not require the player to satisfy the BAP diagnostic criteria. The Special Masters denied all of the NFL's appeals and the NFL filed objections to the Special Masters' decisions. Co-Lead Class Counsel filed a brief in opposition to the NFL's objections.

The Special Masters denied the NFL's objections.  The NFL then appealed the Special Masters' ruling to this Court and Co-Lead Class Counsel filed additional briefing in opposition to the NFL's appeal.  *See* ECF No. 10361 (notice of Jan. 10, 2019 hearing, appending parties' submissions).  The Court had scheduled oral argument on that matter for January 10, 2019 (the date of filing of the instant petition), ECF No 10361, but cancelled the hearing following the NFL's withdrawal of its appeal.  ECF No. 10370.

- **Appointment of a Special Investigator** – On May 30, 2018, the Court heard argument on the NFL's motion for appointment of a Special Investigator.  ECF Nos. 10029-30, 10146; *see* ECF No. 9880.  Acknowledging that such an appointment could further the efficient functioning of the Settlement Program by serving as a valuable source of information for the Special Masters and the Claims Administrator in rendering the determinations for which they are responsible, and by freeing up valuable resources so that claims can be more efficiently reviewed on their merits, Co-Lead Class Counsel did not object to the appointment of a Special Investigator.  At the same time, however, it argued for a clearly-delineated scope of authority and accountability were the Court to make such an appointment, asserting that the Special Investigator's role be purely investigatory and that he or she not be permitted to render any adjudication, determination, or formal findings concerning Monetary Award claims.  Co-Lead Class Counsel also noted that the Settlement's audit and anti-fraud provisions were already working effectively to weed out dubious claims.  ECF No. 9917 at 1-3.  Initially, the Court deferred decision on the motion unless and until the Special Masters or the Claims Administrator "alert the Court . . . that a Special Investigator is needed to faithfully implement the Settlement Agreement."  ECF No. 10114.

Once the Special Masters formally requested such an appointment (ECF No. 10253) and the Court granted the NFL's Motion (ECF No. 10255), Co-Lead Class Counsel advocated for an order

of appointment that would protect the interests of Class Members with meritorious claims.  The Court's Order appointing Judge Stengel as Special Investigator reflects its mindfulness of the concerns that Co-Lead Class Counsel expressed.  *See* ECF No. 10355 (Order Appointing Special Investigator, carefully delineating his authority out of concern that the appointment not chill participation in the Claims Process).   Thus, although it did not spur the appointment of a Special Investigator – which was opposed outright by two Class Counsel out of genuine concerns for Class Members (ECF Nos. 9916, 9919) – Co-Lead Class Counsel acted to balance the interests of, on the one hand, guarding the integrity of the Claims Process by ferreting out suspect claims while, on the other hand, protecting the Class by ensuring that the appointment of such an official does not compromise the efficient and timely payment of meritorious Monetary Award claims.

- **Resolution of Putative Assignments Taken by Numerous Third-Party Funders –** As discussed at pages 10-11 above, the successful negotiation of a Third-Party Funding Resolution Protocol affords an alternative remedy to that of rescission provided in the Court's December 8, 2017 Explanation and Order.  Although not all third-party funders have agreed to the protocol and the aforementioned Third Circuit appeals of certain funders remain to be adjudicated, the negotiation of the protocol provides a fair, reasonable, and mutually satisfactory resolution to Class Members and the funders, thereby affording relief to the many Class Members who entered into such putative assignments of their prospective Monetary Awards and limiting, if not avoiding altogether, the need for further judicial intervention.  As the Court is already well aware, third-party funder issues have commanded a substantial amount of its attention.

### SUMMARY OF HOURS & LODESTAR AND EXPENSES INCURRED

Seeger Weiss collected and reviewed common benefit time and expenses submitted from other Class Counsel.  It reviewed all of the time entries and expenses submitted, and re-reviewed its own, in order to exercise billing judgment as to both the reasonableness of the submissions and whether the work performed and expenses incurred genuinely relate to the Settlement's implementation.   Based on its thorough review, and in light of the work that this time represents, Co-Lead Class Counsel requests a fee award of $2,895,044.17 based on the blended rates established by the Court, and $300,590.26 for reimbursement of expenses, to be allocated as follows[7]:

| Firm | Total Hours | Blended Rate Lodestar[8] | Expenses | Total Award Requested |
|------|------------|--------------------------|----------|-----------------------|
| Levin Sedran & Berman | 19.1 | $14,102.56 | $55.00 | $14,157.56 |
| Locks Law Firm | 545.6 | $413,755.76 | | $413,755.76 |
| Podhurst Orseck | 62.2 | $45,973.33 | $2,887.99 | $48,861.32 |
| Prof. Samuel Issacharoff | 22.8 | $17,290.38 | | $17,290.38 |
| Seeger Weiss | 3,728 | $2,403,922.14 | $297,647.27[9] | $2,701,569.41 |

---

[7]   As with the common benefit fee petition filed in February 2017 (ECF No. 7151; *see* ECF No. 9860, at 15) and the First Post-Effective Date Petition filed on July 10, 2018 (ECF No. 10128), Co-Lead Class Counsel and Class Counsel stand ready to submit their supporting time records to the Court for *in camera* review.

[8]   As directed by the Court, the lodestar billed employs the blended rates that the Court prescribed in its May 24, 2018 allocation order.  Accordingly, the billing rate for partners is $758.35; the rate for "counsel" or "of counsel" attorneys is $692.50; the rate for associates is $486.67; the rate for contract attorneys is $537.50; and the rate for paralegals is $260.00.  *See* ECF No. 10019 at 7 n.4.  Attached hereto as Exhibit "A" is a chart setting forth the above totals and breaking down each firm's common benefit hours by professional rank.

[9]   The bulk of these expenses are $285,612.52 in professional fees, including the fees of Co-Lead Class Counsel's consulting experts.

## CONCLUSION

WHEREFORE, the undersigned, as Co-Lead Class Counsel, respectfully requests that the Court approve this Second Post-Effective Date Fee Petition for Post-Effective Date Attorneys' Fees and Costs and award $3,195,634.43, which reflects $2,895,044.17 in attorneys' fees based on the blended rates established by the Court, and $300,590.26 for reimbursement of expenses, to be paid from the Attorneys' Fees Qualified Settlement Fund, and allocated as set forth in the above table.

Date:  January 10, 2019

Respectfully submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
cseeger@seegerweiss.com
Telephone:  (212) 584-0700

***CO-LEAD CLASS COUNSEL***

**<u>VERIFICATION</u>**

CHRISTOPHER A. SEEGER declares, under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746, that he is the Petitioner in this matter, has read the foregoing Second Verified Petition of Co-Lead Class Counsel Christopher A. Seeger for an Award of Post-Effective Date Common Benefit Attorneys' Fees and Costs, and knows the contents thereof, and that the same are true to his personal knowledge, information, and belief. Executed this 10th day of January, 2019.

*/s/ Christopher A. Seeger*
CHRISTOPHER A. SEEGER

## **CERTIFICATE OF SERVICE**

I, Christopher A. Seeger, hereby certify that a true and correct copy of the foregoing was served electronically via the Court's electronic filing system on the date below upon all counsel of record in this matter.


Dated: January 10, 2019                                  Respectfully submitted,

                                                         */s/ Christopher A. Seeger*
                                                         Christopher A. Seeger