**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated,<br><br>                              Plaintiffs,<br><br>                    v.<br><br>National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc.,<br><br>                              Defendants. | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| THIS DOCUMENT RELATES TO:<br>Lien ID 664 | |

**OBJECTIONS BY THE ESTATE OF KEVIN TURNER TO
THE REPORT AND RECOMMENDATION OF MAGISTRATE STRAWBRIDGE**

Pursuant to Rule 22 of the *Rules Governing Attorneys' Liens* (ECF No. 9760) ("Rules"), Paul Raymond Turner, personal representative of the estate of Kevin Turner (the "Turner Estate"), submits these Objections to the January 7, 2019 Report and Recommendation ("R&R") of Magistrate Strawbridge (Doc. No. 10368)[1] addressing the lien dispute between the Turner Estate and Podhurst Orseck, P.A. ("Podhurst").

---

[1] A copy of the January 7, 2019 Report and Recommendation (Doc. No. 10368) is attached as **Exhibit A**.

## SPECIFIC OBJECTIONS TO THE PROPOSED FINDINGS
## <u>AND RECOMMENDATIONS</u>

The Turner Estate submits the following specific objections as more fully explained below:

The evidence Podhurst submitted to Magistrate Strawbridge was insufficient to support the amount of the fee award decision and, thus, the conclusion in the R&R to award Podhurst 15.5% ($775,000) of the Kevin Turner Monetary Award as its fee was arbitrary, capricious, based upon conjecture, contrary to Lien Rule 17 and Deviation Rule 14, and contrary to District Court and Third Circuit precedent.

Pursuant to Fed. R. Civ. P. 72(b)(3), the Court's review is *de novo*; *see also Hartley v. Pocono Mount. Reg. Police Dep't*, 2007 WL 906180 *1 (M.D. Pa. Mar. 22, 2007) (discussing court's review standard).

## <u>INTRODUCTION</u>

Having already received over $6 million in Court-approved fees as Class Counsel, Podhurst has sought an additional 22% of Kevin Turner's Monetary Award.[2]  To support this disputed request, Podhurst submitted its Contingent Fee Agreement ("CFA") and initially a schedule of 18.25 hours of vaguely described tasks that Podhurst argues, but does not prove, it provided for Kevin Turner's individual benefit.  While Magistrate Strawbridge properly rejected Podhurst's argument that it is entitled to enforcement of its CFA up to the 22% presumptive cap set by this Court, and although we agree Magistrate Strawbridge applied the correct legal analysis in an effort to determine a reasonable fee, the amount of the award of 15.5% reflected in the R&R is not supported by the evidence in the record.

---

[2] Reduced by the 5% hold back, the total Podhurst has sought is $850,000.

The Court should modify the amount determined in the R&R and deny Podhurst's lien request for two reasons. *First*, Podhurst did not prove with sufficient credible evidence that specific tasks were performed for Turner's individual benefit, rather than for the common benefit of the class, and thus has not satisfied the Rules and precedent that specifically govern this dispute. *Second*, Podhurst has not satisfied its burden of proving that it would be fair and reasonable to take from the Turner Estate a fee in the amount of $775,000 when Magistrate Strawbridge approved at best as individual work little more than sixty (60) hours of legal services by Podhurst, if one quantifies the categories of legal services determined to be for individual work for the Turner Estate listed in his R&R, pages 45-50, described *infra*. Podhurst's lodestar for sixty (60) hours of legal services, at the reduced blended hourly rate of $596 per hour[3], would equal approximately $36,000. This Court can not approve an individual fee award to Podhurst of 15.5% of the Monetary Award, which is $775,000, for the limited individual work Judge Strawbridge determined was performed by Podhurst from the evidence submitted, as that would be awarding Podhurst a lodestar multiplier[4] of over 20, and result in an excessive and unreasonable fee.

---

[3] Podhurst submitted 4,510.80 hours of tasks for common benefit work with a lodestar of $3,005,744.50. The District Court determined that Podhurst rates exceeded approved average rates for common benefit work in this action and awarded Podhurst $6,048,169.49 in fees based upon a 2.25 multiplier on their adjusted lodestar. Accordingly, the reduced blended hourly rate approved by the District Court for Podhurst was $596 per hour. S*ee* Doc. No. 10019 at 19.

[4] "However, we accept, as the District Court did when it allocated common benefit fees (*see* Doc. No. 10019) .   .   . and we recognize that Podhurst received a 2.25 multiplier for the common benefit work they performed." N.T. 10/3/2018 at 40.

## ARGUMENT

I.      **Podhurst Has Not Satisfied its Burden of Proving that it is Entitled to Substantial Individual Representation Fees.**

Like Judge Strawbridge, this Court is guided in its analysis by the submission requirements set forth in Rule 14(a) and the factors of reasonableness considered in the *McKenzie* case.  Foremost, Rule 14(a) provides a list of the items to be provided to the Claims Administrator.  While the list, by its terms, perhaps is not intended to be all-inclusive, the Rule states clearly what "must"[5] be served:

(1) A statement of all issues in dispute;

(2) A chronology of the tasks performed by the attorney, the date each task was performed, and the time spent on each task;

* * *

(6) Any exhibits

* * *

Because Podhurst's scant submission to the Claims Administrator and Magistrate Strawbridge falls short of what is required to meet its burden to establish entitlement to an individual fee, the R&R result must be overturned.  At the Hearing, Podhurst introduced Rosenthal-1[6], which they described as a partial reconstruction of time for Kevin Turner containing the date, time keeper, description of tasks and time spent totaling 20.3 hours.   A copy of Rosenthal-1 is attached as **Exhibit B**.

---

[5] Whether Judge Strawbridge considered the Rule 14(a) requirements as being merely illustrative, the R&R states that attorneys "should provide" written evidence to support the "time spent on each task."  R&R p. 19.  But because the Rule is mandatory at least as to the specified items, any failure to provide complete information is non-compliance by the attorney who has the burden of proof to establish what amount of work actually was performed.

[6] N.T 10/3/2018 at 55.

**A.**     **Podhurst Has Failed to Document Sufficiently Its Individual Work for Kevin Turner so as to Prove It Was Anything but *De Minimus*.**

Podhurst has not provided a complete, comprehensive chronology of each of the tasks performed by attorney, the date each task was performed, and the time spent on each task for Turner's individual benefit, which it must do under Rule 14(a)(2).[7] Podhurst's limited submission should not be deemed sufficient to comply with, nor should Podhurst be permitted to avoid, the plain text of Rule 14(a); thus, the deficient submission cannot serve as a basis for a substantial individual representation fee. That a purported lien arises from a CFA is not alone enough to escape the Rule's requirements. The Rules adopted by the Court—which Class Counsel presumably helped draft or oversaw[8]—were designed to avoid such circumstances. Otherwise, virtually every attorney lien dispute would be left to reasonableness arguments over what work was done under a CFA to justify the fee without sufficient credible written evidence in the record.

As Podhurst itself stated over a year before the Court adopted Rule 14(a)(2): "the Court has been made aware that attorneys intend to enforce their private contingency fee agreements." ECF No. 7071 at 16; *see also* Rubenstein Report at 28 (noting 617 different contract rates among filings he and his assistants reviewed). And requiring attorneys to detail their work with greater specificity here than in a typical contingency fee dispute helps the Court to ensure that attorneys do not extract liens from clients for common-benefit work, which the Court has prohibited.

---

[7] Podhurst's supplemental statement, Rosenthal-1, attempts to clear up its initial submission with some effort to associate timekeepers with tasks. Like its original, the exhibit was compiled in an attempt after the fact to reconstruct records of its work for Kevin—records that Podhurst admits it never kept to begin with.

[8] Mr. ROSENTHAL:  .   .   . "[I]n reading the rules for this proceeding, because it said it was an evidentiary hearing where additional record could be made, that's  - - that's what we're operating on.   .   .   ." THE COURT: "I – you caught me at a weak moment when we had the telephone conference - - or somebody did, whoever it was. I understand." N.T. 10/3/2018 at 117.

Podhurst cannot be allowed to claim any compensation for any of the unnamed and/or unquantified tasks in its attempted reconstruction of those tasks.  As it is, the total *potential* scope of the work at issue comprises from the written submission, at most, 20.3 hours of tasks.[9] But Judge Strawbridge's R&R plainly goes well beyond these documented hours to improperly provide $775,000 to Podhurst for its supposed individual work for Kevin Turner.

**B.      Podhurst Has Not Shown That the Tasks it Describes were for Kevin Turner's substantial Individual Benefit and the R&R Improperly Considers Matters Outside the Submitted Record.**

The Court has prohibited Podhurst from seeking fees for "tasks undertaken for the Settlement class as a class, or for tasks performed by an attorney that replicate such common benefit tasks, or for any other tasks performed for the common benefit of the Settlement Class Members." Rule 3(a). Judge Strawbridge recognized this as well.  *See, e.g.*, at 24, 26.  Podhurst has not shown that the few tasks for which it submitted reconstructed time were for Turner's substantial individual benefit separate from his fellow players, such as to warrant such a substantial fee award.

**1.      The R&R largely disregards Podhurst's submission of its actual tasks and time**

While the R&R briefly mentions the documentation that Podhurst submitted to weakly attempt to comply with this Rule (*e.g.*, R&R, pp. 29, 48 n.25), it is plain that the ultimate substantial fee award determined does not bear any direct relationship to the time, tasks, and descriptions that Podhurst submitted.[10]  The R&R primarily discusses and offers suggestions

---

[9] *See* Rosenthal-1

[10] In n.25, the R&R references a statement from Podhurst of working "hundreds of hours . . . not accounted for" but there is no evidence to support this naked statement to determine, even if true, how much of that time could be attributable to individual work, separate and distinct from common benefit work. Indeed, Magistrate Strawbridge in the R&R rejected Podhurst's statement concerning "hundreds of hours" recognizing Podhurst's role as Class Counsel and

about what work may have taken place at various time periods or for various activities in the case, perhaps based upon prior submissions of pleadings to and orders of the Court, but in doing so the R&R either places great significance on the fact that Podhurst has already been compensated for those items (*id*. at 9, 40–42, 53)[11] or that there must be some undefined allocation among all of Podhurst's clients.  *Id*. at 40–41.   However, while this dispute process is to be cabined by the record submitted to the Claims Administrator, the R&R does not refer to specific evidence within or outside of Podhurst's submissions to the Claims Administrator for support of its conclusions that justify 15.5% of the Monetary Award.   As a consequence, any award over $250,000[12] to Podhurst [roughly 60 hours times $600/hour times a single digit lodestar multiplier[13] to account for the risks involved] cannot be supported by the Dispute Record.

---

Kevin Turner's role as Subclass Representative, "Podhurst . . . acting for the common benefit – has already been paid for the work performed supporting Turner, we may not consider a duplication of that time or work on our review of an IRPA fee for reasonableness"  *Id*. at 48.

[11] Podhurst received a 2.25 lodestar multiplier for their common benefit work.  *Id*. at 40.

[12] ALS Monetary Award claims are "exceptional and unique" in comparison to all other Monetary Award claims, which should warrant a substantial downward adjustment to the 22% presumptive fee cap, unless the IRPA truly can demonstrate they did commensurate work to earn the fees on these limited but much higher awards. On the NFL Concussion Settlement Website, www.nflconcussionsettlement.com in Section 11 of the Summary Report (as of 1/14/19), out of a total of 757 Monetary Awards for all categories of claims, only 35 were Monetary Awards for ALS, which equates to 4.6%.  Also based upon 757 total Monetary Awards for a total payout of $611,402,777, the average amount of a Monetary Award currently is $807,665.   A 22% fee to an IRPA on the amount of an average award equals $177,686.   However, the total amount of the Monetary Awards for the 35 ALS claimants equals $92,466,616, which equates to $2,641,903 on average.    By comparison, a 22% fee on an average ALS award equals $581,218, over three times the amount of the average on all awards.  For this Court to carry out its duty to fairly and justly implement this settlement program, extraordinary and excessive  IRPA fee awards from this limited group of SCMs must not be permitted to avert a windfall to IRPAs to the detriment of the SCM.

[13] Seeger Weiss, which took on the greatest risk of all Class Counsel, was awarded by the District Court the highest lodestar multiplier of 3.5 in this action for their common benefit work. S*ee* Doc. No. 10019 at 21.

2.     **The R&R recognizes that the bulk of Podhurst's efforts have been compensated by its prior attorney fee award.**

The R&R is clear that Podhurst cannot recover on an individual basis that for which it has been compensated as Class Counsel. R&R at 25–26, 40.   Moreover, the R&R reflects that most of the considerations or factors taken into account do not permit a conclusion that Podhurst's efforts were solely to benefit Turner individually.   *See Id.* at 40–41, 45–46, 48–49, 51, 52–54. As the R&R states, Podhurst deemed its work advising Turner of the details of the settlement, helping present an effective media message, and reviewing of medical records as a common (not individual) benefit. *Id.* at 41–42.   And its pre-MDL work was included in the request for common benefit fees as well.   *Id.* at 40.

3.     **Work performed by Podhurst, which the R&R determined benefited Turner individually, at most totals approximately sixty (60) hours.**

(a) **Legal research pre-MDL**

The R&R determined that pre-MDL work performed by Podhurst to research the legal bases necessary to bring a successful lawsuit against the NFL should be compensated as individual work.   However, the R&R required this work to be prorated among all other Podhurst clients. R&R at 45.   Podhurst submitted insufficient, or really no evidence, to quantify the total amount of this work[14], but if the Court were to credit even 500 hours for a few months of this work, no more than five (5) hours should be prorated to Turner for individual work in this R&R, as Podhurst had about 100 clients[15] at the time Turner became a client.

---

[14] "All I know is that I personally spent the summer of 2011 researching preemption issues . . . ." N.T 10/3/2018 at 28.

[15] Turner signed a CFA with Podhurst on January 18, 2012. N.T. 10/3/2018 at 27.   "On January 20, 2012, the complaint was amended to add Turner as well as others, increasing the number of plaintiffs to 98." *Id* at 41.

**(b) Filing the lawsuit**

Here again the R&R determines that the amended complaint Podhurst filed in the Southern District of Florida on January 20, 2012, which included Turner who was only retained two days prior, is considered individual work, prorated over all Podhurst clients.   R&R at 46. Podhurst did not submit any evidence as to the amount of time involved drafting this complaint, but since it was initially filed on December 2011, at best no more than another 500 hours for a few more months could be allocated to its drafting.  Once these hours are prorated as the R&R determined, at best another five (5) hours could be attributable to Turner for individual work.

**(c) Medical Records**

 Even if the Court considers the review of medical records as something attributed to individual work for Turner, the R&R properly determined that in Turner's case, the review was necessarily less labor-intensive due to the clarity of Turner's existing diagnosis.   R&R at 46. Podhurst's written submission of the amount of time involved with Turner's medical records is limited to 0.5 hours for a January 13, 2012 teleconference with Turner and 1.5 hours on March 15, 2012 for a conference with Dr. Cantu attended by a Podhurst law clerk.[16]  No time entries or other evidence was submitted by Podhurst for the amount of time anyone actually reviewed Turner's records, but the total time for this category of medical records review is likely not in excess of a total of 10-15 hours.

**(d) The Day in the Life Video**

The R&R determined that Podhurst's work involved in the creation of a day in the life video for Turner had a dual purpose, serving both their common benefit work and Turner's individual case.  R&R at 47.   The record contains no evidence regarding the total amount of

---

[16] *See* Rosenthal-1.

9

hours this work took, but if it took a few days to a week, or 30-40 hours total, then under the R&R only 15-20 hours would be attributable to individual work for Turner.

### (e) The workers' compensation litigation and extremis deposition

Several tasks are identified in Rosenthal-1 relating to Podhurst's work in connection with a workers' compensation case in which Turner was represented by separate (*i.e.*, not Podhurst) counsel. The R&R determined that all of this work is attributable to Turner's individual case. R&R at 48. However, Podhurst identified only 5.75 hours of tasks in this category along with several other tasks without hours assigned involving mainly email communications.[17]  Giving Podhurst the benefit of additional time for such unassigned tasks, no more than a total of 10 hours of time should be attributable to Turner's individual case for this work. *See* N.T 10/3/2018 at 59-62.

### (f) Advice to Turner throughout the litigation

The R&R determined Podhurst's claim of their extensive interactions with Turner could *not* be attributable to Turner's individual case, as Podhurst has already been paid for its work acting for the common benefit. R&R at 48. Reference was made to a 2.0 hour conference with Turner on January 25, 2012, a teleconference on May 5, 2012 for an unspecified amount of time, telephone calls and emails on June 9, 2013 and 2.0 hours for a meeting with Turner on August 23, 2013, along with Marks' oral argument, not testimony subject to cross exam, that "there are hundreds of hours . . . not accounted for." The R&R disallowed and did not consider any of these tasks as work attributable to Turner's individual case, so no amount of time can be quantified for consideration in this category.

---

[17]  *See* Rosenthal-1: On May 16, 2012 Podhurst records 0.75 hours, On May 24, 2012 Podhurst records 0.5 hours, on June 1, 2012 Podhurst records 0.5 hours, on July 14, 2012 Podhurst records 0.5 hours, on July 18, 2012 Podhurst records 0.5 hours and on July 30, 2012 Podhurst records 3.0 hours, "listening in on deposition and taking notes".

### (g) Loan agreement negotiation

The R&R determined to divide the work done equally between Podhurst and Polsinelli for a credit line loan for Turner for purposes of Turner's individual claim.  R&R at 49.   The time submission from Podhurst lists 0.75 hours on August 6, 2015 for a communication between a Podhurst paralegal and Turner concerning Esquire Bank.  Again, giving Podhurst the benefit of assuming they actually incurred a total of perhaps five (5) hours rather than the 0.75 hours in evidence would be generous, given Podhurst's lack of credible evidence to support it.

### (h) Support in personal matters

The R&R also gave Podhurst credit in Turner's individual case for time Podhurst incurred assisting Turner with his NFL "Plan 88" and disability application, but noted "very little time is reported to have been spent on these tasks."  R&R at 49.   Podhurst's written submission, Rosental-1, lists only 1.5 hours on November 13, 2013 spent by a Podhurst  paralegal assisting with filling out disability forms.   Accordingly, the maximum amount of time Magistrate Strawbridge could have extrapolated in this approved category from the written submission is about five (5) hours.   Other work Podhurst submitted for consideration in Turner's individual case was given little or no weight in the R&R, including time spent soliciting Turner as a new client and for resolving conflicts with other law firms attempting to retain Turner.  R&R at 50. Thus, the 1.5 hours on September 26, 2011, 1.0 hours on December 16, 2011, and 1.0 hours on January 17, 2012 contained in Rosenthal-1 were not credited toward Turner's individual case.

### 4.    The *McKenzie* factors cannot support the 15.5% award

As Judge Strawbridge acknowledges (R&R at 21), the quality of the work performed is almost impossible to discern, as Podhurst has failed to document its work in a manner compliant with applicable Rules.  Perhaps the reason for lack of documented tasks is more straightforward -

- Podhurt was not doing any individual work for vast periods of time as Podhurst conceded at the Hearing:

> "MR. ROSENTHAL: .  .  .  And then the case went on this big hiatus of proposed class settlement til final approval and effective date, which lasted years and *effectively made no work available to do on an individual basis* because everything was frozen or uncertain.  .  .  . " [R&R at 58 (e*mphasis added*).]

But Podhurst does describe the few tasks it performed in primarily administrative terms; most tasks are brief internal or external communications, and there is virtually no work product developed for Kevin's individual claims.  Podhurst's greatest specific task was three hours spent listening to (but not participating in) a deposition in a case in which Kevin was represented by different counsel.  The result obtained for Kevin derives almost entirely from the common-benefit work of class counsel in this case.  R&R at 53.  Podhurst's contribution in securing that result is at best debatable, given the distinction drawn by the Court between individual and common-benefit work: The IRPAs' work here involves the shepherding of their clients through the claims process of the Settlement Agreement.[18]  Podhurst did not do this for Kevin; undersigned counsel did so *pro bono*.

## II.    Conclusion

Podhurst ultimately bears the burden of proving the reasonableness of its request for 22% from the estate of its most prominent, vital Class Representative.  Podhurst has not met that burden.  Further, even accepting Magistrate Strawbridge's determination of the categories of work Podhurst performed attributable to Turner's individual case, a reasonable fee award to Podhurst which is fair and equitable to the Turner Estate cannot reach the level of 15.5%, 10%,

_____

[18] *See* Doc. No. 9862 at 7.

7.5% or even barely 5% of the Monetary Award given the evidence submitted – which reflects a scant sixty (60) or so hours at best performed as individual work.

For the foregoing reasons, the Turner Estate respectfully requests that this Court overturn the R&R's conclusion, modify the award to a reasonable dollar amount for the work performed as supported by the evidence in the Dispute Record, and thereby grant the Turner Estate's Petition for Deviation (Doc. No. 10092).

Dated: 1/22/2019                                Respectfully submitted,

                                                */s/ R. Montgomery Donaldson*
                                                R. Montgomery Donaldson  (PA 63400)
                                                Robert A. Penza (admitted *pro hac vice*)
                                                **POLSINELLI PC**
                                                222 Delaware Avenue
                                                Suite 1101
                                                Wilmington, Delaware 19801
                                                (302) 252-0920
                                                (302) 252-0921 (FAX)
                                                rmdonaldson@polsinelli.com
                                                rpenza@polsinelli.com

                                                **ATTORNEYS FOR ESTATE OF KEVIN TURNER**