IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | |
| Kevin Turner and Shawn Wooden, on behalf of themselves and others similarly situated, | No. 2:12-md-02323-AB |
| Plaintiffs, | MDL No. 2323 |
| v. | **Hon. Anita B. Brody** |
| National Football League and NFL Properties, LLC, successor-in-interest to NFL Properties, Inc., | |
| Defendants. | |
| THIS DOCUMENT RELATES TO: Lien ID 19 | |

**OBJECTIONS BY STEVEN A. SMITH AND CHIE T. SMITH TO
THE REPORT AND RECOMMENDATION OF MAGISTRATE STRAWBRIDGE**

Pursuant to Rule 22 of the *Rules Governing Attorneys' Liens* (ECF No. 9760) ("Rules"),

Steven A. Smith and Chie T. Smith (the "Smiths") submit these Objections to the January 7, 2019

Report and Recommendation ("R&R") of Magistrate Strawbridge (Doc. No. 10368) addressing

the lien dispute between the Smiths and Podhurst Orseck, P.A. ("Podhurst").

**SPECIFIC OBJECTIONS TO THE PROPOSED FINDINGS
AND RECOMMENDATIONS**

The Smiths submit the following specific objections as more fully explained *infra*:

The evidence Podhurst submitted to Magistrate Strawbridge was insufficient to support the amount of the fee award decision and, thus, the conclusion in the R&R to award Podhurst 17%, which equates to $850,000, of Steven Smith's Monetary Award as its fee was arbitrary, capricious, based upon conjecture, contrary to Lien Rule 17 and Deviation Rule 14, and contrary to District Court and Third Circuit precedent.

Pursuant to Fed. R. Civ. P. 72(b)(3), the Court's review is *de novo*; *see also Hartley v. Pocono Mount. Reg. Police Dep't*, 2007 WL 906180 *1 (M.D. Pa. Mar. 22, 2007) (discussing court's review standard).

## INTRODUCTION

Having already received over $6 million in Court-approved fees as Class Counsel, Podhurst has sought an additional 22% of Steven Smith's Monetary Award. To support this disputed request, Podhurst submitted its Contingent Fee Agreement ("CFA") and initially in its Statement of Dispute a schedule of 28 hours of vaguely described tasks (without a timekeeper) and argues, but does not prove, it provided quality work for Steven Smith's individual benefit. While Magistrate Strawbridge properly rejected Podhurst's argument that it is entitled to enforcement of its CFA up to the 22% presumptive cap set by this Court, and although we agree Magistrate Strawbridge applied the correct legal analysis in an effort to determine a reasonable fee, the amount of the award of 17% reflected in the R&R is not supported by the evidence in the record.

The Court should modify the amount determined in the R&R and deny Podhurst's lien request for two reasons. First, Podhurst did not prove with sufficient credible evidence that quality work with regard to specific tasks were in fact performed for Steven Smith, and in addition performed for his individual benefit, rather than for the common benefit of the class. Podhurst has not satisfied the Rules and precedent that specifically govern this dispute. Second, Podhurst has not satisfied its burden of proving that it would be fair and reasonable to take from Steven Smith

2

a fee in the amount of $850,000 when Magistrate Strawbridge approved at best as individual work the 29.7 hours Podhurst submitted (during the hearing process) (*see* attached Exhibit A) plus unquantified time reviewing no more than 160 pages of medical records and unquantified time negotiating the Esquire Bank Loan. For argument's sake, if we consider a total of sixty (60) hours of approved legal services by Podhurst (**doubling** the originally submitted 29.7 hours to include and account for the review of medical records and negotiating the Esquire loan, in addition to Podhurst's actual submitted time), a lodestar, at the reduced blended hourly rate of $596 per hour, would equal approximately $35,760. This Court cannot approve an individual fee award to Podhurst of 17% of the Monetary Award, which is $850,000, for the limited amount of individual work determined by Judge Strawbridge was performed by Podhurst from the evidence submitted, as that would be awarding Podhurst a lodestar multiplier of over 23.7, and result in an excessively unreasonable fee.

## **ARGUMENT**

### I. Podhurst Has Not Satisfied its Burden to Prove that it is Entitled to substantial Individual Representation Fees

Just as Judge Strawbridge, this Court is guided in its analysis by the submission requirements set forth in Rule 14(a) and the factors of reasonableness considered in the *McKenzie* case. Foremost, Rule 14(a) provides a list of the items to be provided to the Claims Administrator. While the list, by its terms, perhaps is not intended to be all-inclusive, the Rule states clearly what "must" be served:

(1) A statement of all issues in dispute;

(2) A chronology of the tasks performed by the attorney, the date each task was performed, and the time spent on each task;

* * *

(6) Any exhibits

3

* * *

Because Podhurst's extremely limited submission to the Claims Administrator and Magistrate Strawbridge falls short of what is required to meet its burden to establish entitlement to an individual fee, the R&R result must be overturned. At the Hearing, Podhurst introduced their second submission of time spent entitled "Partial Reconstructed Time for Steve Smith" which contained the date, time keeper, description of tasks and time spent totaling 29.7 hours (*see* attached Exhibit A).

                    **A.**    **Podhurst Has Failed To Sufficiently Document Its Individual Work As Anything But De Minimus.**

Podhurst has not provided a complete comprehensive chronology of each of the tasks performed by attorney, the date each task was performed, and the time spent on each task for Steven Smith's individual benefit, which it must do under Rule 14. In fact, of the 29.7 hours submitted, only 0.3 hours of services were performed by an attorney, 5 hours were performed by a paralegal, and 24.4 hours were performed by a law clerk who had not yet become licensed to practice law(Christopher S. Prater admitted to FL Bar 9/2012) (*see* attached Exhibit A).   In addition, this 24.4 hours is attributed to researching and drafting a Motion for Leave to Depose Steven Smith. Evidence of this work product has never been produced by Podhurst. Judge Strawbridge also refers to services that Podhurst reported relating to personal matters specifically advice relating to copyright on a book and referral for a Trust attorney. These tasks were documented in Exhibit A as work performed by Partner, Steven Marks at a total of 0.3 hours of time spent on recommending a trust attorney and 0.2 hours performed by a paralegal on copyrighting a book.

This limited submission should not be permitted to avoid, nor deemed sufficient to comply with, the plain text of Rule 14(a) as a basis to obtain a substantial individual representation fee.

4

That a purported lien arises from a CFA is not alone enough to escape the Rule's requirements. The Rules adopted by the Court—which Class Counsel presumably helped draft or oversaw— were inevitably designed to avoid such circumstances. Otherwise, virtually every attorney's lien dispute would be left to reasonableness arguments over what work was done under a CFA to justify the fee without sufficient credible written evidence in the record.

As Podhurst itself stated over a year before the Court adopted Rule 14(a)(2): "the Court has been made aware that attorneys intend to enforce their private contingency fee agreements." ECF No. 7071 at 16; *see also* Rubenstein Report at 28 (noting 617 different contract rates among filings he and his assistants reviewed). And requiring attorneys to detail their work with greater specificity here than in a typical contingency fee dispute helps the Court to ensure that attorneys do not extract liens from clients for common-benefit work, which the Court has prohibited here.

Podhurst cannot be allowed to claim any compensation for any of the unnamed and/or unquantified tasks in its attempted reconstruction of those tasks. As it is, the total *potential* scope of the work at issue comprises from the written submission, at most, 29.7 hours of tasks (*see attached* Exhibit A). But Judge Strawbridge's R&R plainly goes well beyond these documented hours to improperly provide $850,000 to Podhurst for its supposed individual work for Steven Smith.

> **B.**   **Podhurst Has Not Shown That the Tasks it Describes were for Steven Smith's substantial Individual Benefit and the R&R Improperly Considers Matters Outside the Submitted Record**

The Court has prohibited Podhurst from seeking fees for "tasks undertaken for the Settlement class as a class, or for tasks performed by an attorney that replicate such common benefit tasks, or for any other tasks performed for the common benefit of the Settlement Class Members." Rule 3(a). Judge Strawbridge recognized this as well. (R&R, *e.g.*, pp. 24, 26.) Podhurst has not shown that the few tasks for which it submitted reconstructed time were for Steven Smith's

substantial individual benefit separate from other class members, to warrant such a substantial fee award.

1.       **The R&R largely disregards Podhurst's submission of its actual tasks and time spent**

While the R&R briefly mentions the documentation that Podhurst submitted to weakly attempt compliance with this Rule (R&R, *e.g.*, pp. 29, 48 n.25), it is plain that the ultimate substantial fee award determined does not bear direct relationship to the time, tasks, and descriptions that Podhurst submitted. Podhurst claims it spent numerous hours for Steven Smith's individual benefit but did not and cannot account for those hours and asks the Court to award them fees based on this undocumented time. There is no evidence to support this naked statement to determine, even if true, how much of that time could be attributable to individual work, separate and distinct from common benefit work. The R&R primarily discusses and offers suggestions about what work may have taken place at various time periods or for various activities in the case, perhaps based upon prior submissions of pleadings to and orders of the Court. But the R&R does not refer to specific evidence within or outside of Podhurst's submissions to the Claims Administrator for support of its conclusions that justify 17% of the Monetary Award. As a consequence, anything awarded over $250,000 to Podhurst [roughly 60 hours times $600/hour times a single digit lodestar multiplier to account for the risks involved] cannot be supported by the Dispute Record. (Seeger Weiss was awarded the highest lodestar multiplier of 3.5 in this action for their common benefit work and they took on the greatest risk of all Class Counsel *see* Doc. No. 10019 at 21).

2.       **Work performed by Podhurst, which the R&R determined benefited Steven Smith individually, when quantified is at best approximately sixty (60) hours.**

        **(a) Filing the lawsuit**

6

The R&R determines that the amended complaint Podhurst filed in the Southern District of Florida on January 20, 2012, did not include Steven Smith as he was retained on January 25, 2012. Therefore, the work involved in drafting this complaint cannot be charged or prorated to Steven Smith. Podhurst did not submit any evidence as to the amount of time involved drafting the amendment to the *Jones* complaint on February 3, 2012 to include Steven Smith in the lawsuit. The R&R acknowledges that 135 other individual plaintiffs in addition to the Smiths were added to the lawsuit in this complaint and therefore any work claimed to be on Steven's individual behalf must be prorated among the other 135 plaintiffs. It is also noted that Steven Smith retained Podhurst on January 25, 2012 just six days before the NFL's motion for consolidation of the MDL was granted.

### (b) Medical Records

Even if the Court considers the review of medical records as something attributed to individual work for Turner, the R&R properly determined the review of Steven Smith's records was necessarily less labor intensive due to Steven's existing diagnosis since 2002. Podhurst did not submit any time entries for the amount of time anyone actually reviewed his records, but the total time for this category of medical records review is likely not in excess of a total of 5-10 hours based on the 144 pages of hospital records and another dozen pages of records Podhurst received as documented in "Exhibit 1-Palacio Declaration with Exhibits" submitted by Podhurst during the hearing process and attached to Podhurst's Statement Of Dispute.[1]

### (c) Day in the Life Video and Work as Class Representative

---

[1] Because that Exhibit was already submitted to the Claims Administrator by Podhurst and includes medical records and other private information, those documents are not attached hereto but, to the extent the Court needs this Exhibit, the Smiths will submit them promptly upon request of the Court.

The R&R determined that Podhurst's work involved in the creation of a day in the life video for Steven Smith had a dual purpose, their common benefit work and Steven's individual case. Podhurst discounts the significance Steven Smith played in promoting the interests of the Class as a whole and the impact Steven Smith has had on this settlement and each and every class member's case. Steven Smith is unequivocally the most extreme case of ALS among all class members in this settlement, having suffered since 2002 with this disease. Podhurst cannot argue that Steven Smith was not a good candidate for Class Representative and at the same time ask him to serve as Class Representative to fill the shoes of Kevin Turner when Kevin became too ill to serve. Steven Smith's condition had not changed. The fact that he was never appointed in that capacity is irrelevant. It is evident that Podhurst viewed Steven Smith as a fit for Class Representative early on in their representation.

It would be a dishonor to Steven Smith's legacy and more than 16 years of suffering from ALS to allow Podhurst to classify their services as for his individual benefit of Steven Smith and not for the common benefit of all class members. When the greatest fear of all class members is to be diagnosed with ALS and live in Smith's shoes. Podhurst has provided insufficient evidence of pursuing any individual claim apart from the settlement for Steven Smith. The option was never presented. It is unjust for Podhurst to downplay Steven Smith's role as a Class Representative simply because he was never officially appointed in that capacity. Steven Smith's story resonates with the entire Class, with Co-Lead Class Counsel, with the Court and the public at large. He is and has always been perceived as a prominent face of the settlement. Steven Marks of Podhurst specifically noted the public work done by Chic Smith to help advance the strategy for the benefit of the class (R&R p. 69). Examples of actions consistent with a class representative were

8

participation in the Day in the Life Video and attendance at the Fairness Hearing on behalf of the class.

Further, Judge Strawbridge states that IRPAs must be credited for work performed for their client that was reasonably deemed necessary at the time, even where the work ultimately became unnecessary (R&R p. 22). It is questionable whether Steven Smith's Day in the Life Video was necessary at the time in the Fall of 2012 when a video shot by HBO's Real Sports with Bryant Gumbel had already been published and made publicly available on August 17, 2010 documenting Steven's journey with ALS, the severity of his condition and impact on his life and family. At that time, Steven had already been suffering for 8 years from ALS. He was already dependent on a respirator since 2006, dependent on a feeding tube, and completely paralyzed. His condition could not physically get much worse than that and hasn't changed significantly from 2010 to 2012 to 2019. For these reasons, Podhurst's claim that the video was reasonably necessary for Steven Smith's individual claim fails.

### (d) Loan agreement negotiation

Podhurst's greatest specific task (aside from the Motion for Leave to Depose Steven Smith) was negotiating the Esquire Bank loan for the Smiths, terms of which negotiated by Podhurst were ultimately deemed prohibited by the Claims Administrator and the cause of a significant delay in the initial distribution of Steven Smith's monetary award. Attorney Watters submitted 4.7 hours of time spent on renegotiating the loan terms and satisfying the Court and Claims Administrator's requirements in order to resolve payment on the Esquire lien and move forward with distribution of the Smiths' award. Podhurst submitted 2.0 hours of reconstructed time spent by a paralegal in connection with this loan and claims additional unquantified work performed by attorney Roy Altman for negotiating the loan (*see* "Exhibit 1-Palacio Declaration with Exhibits" submitted by

Podhurst). Regardless of whether that additional time can be sufficiently quantified, any time that was submitted by Podhurst in connection with producing or negotiating this loan must be balanced by the work of Watters, as without her work to renegotiate the loan terms, such loan would have been prohibited under the settlement.

   3.   The *McKenzie* factors cannot support the 17% award

As Judge Strawbridge acknowledges, the quality of the work performed is almost impossible to discern, as Podhurst has failed to document its work in a manner compliant with the applicable Rules. Podhurst describes the few tasks it performed in primarily administrative terms; most tasks are brief internal or external communications, and there is virtually no evidence of work product developed for Steven Smith's individual claims, only claims made by Podhurst that various work was performed.

**II.   Conclusion**

It is ultimately Podhurst's burden to prove the reasonableness of its request for 22% from Steven Smith's monetary award. Podhurst has not met that burden. Further, even accepting Magistrate Strawbridge's determination of the categories of work Podhurst performed attributable to Steven Smith's individual case, a reasonable fee award to Podhurst which is fair and equitable cannot reach the level of 17%, 10%, or even 5% of the Monetary Award, from the evidence submitted of far less than sixty (60) or so hours at best performed as individual work.

As the Smiths' attorney and wife of a class member in this Settlement, I pray that this Court strongly considers my above arguments. As I've represented the Smiths *pro bono* in this litigation for over 2 years now, I have no financial gain or incentive other than seeing the Smiths receive a fair result. It is Podhurst's burden to prove their time spent on individual work for Steven Smith. It is Podhurst's duty to explain the terms of the individual retainer agreements and provide clear responses to the Smiths' questions and concerns throughout their representation. Podhurst's failure

10

to meet these expectations cannot be overlooked and Podhurst's claims of time spent cannot be accepted and quantified arbitrarily without sufficient evidence and must meet the specific parameters of Rule 14 established by the Court.

For the foregoing reasons, the Smiths respectfully request that this Court overturn the R&R's conclusion, modify the award to a reasonable dollar amount for the work performed as supported by the evidence in the Dispute Record, and thereby grant the Smith's Petition for Deviation.

Dated: 1/21/2019

Respectfully submitted,

/s/Catherina Watters_____
Catherina Watters, Esquire (CA 206317)
(admitted *pro hac vice*)
P.O. Box 2252
Orinda, CA 94563
(925) 548-2232
(407) 351-5159 (FAX)
catherina@changwatters.com

/s/ Kevin L. Golden
Joe H. Tucker, Jr., Esquire
Kevin L Golden, Esquire
**Tucker Law Group**
Ten Penn Center
1801 Market Street, Suite 2500
Philadelphia, PA 19103
jtucker@tlgattorneys.com
kgolden@tlgattorneys.com
Tel: (215) 875-0609
Fax: (215) 559-6209

**ATTORNEYS FOR STEVEN A. SMITH AND CHIE T. SMITH**

# EXHIBIT A

Podhurst Orseck, P.A.
Partial Reconstructed Time for Steve Smith

| Date | Time Keeper | Detail Description | Time Spent |
|------|-------------|--------------------|------------|
| 5/31/2012 | GP | Preparation of Letter to Joseph Viroslav MD - requesting Steve Smith medical records | |
| 6/12/2012 | CSP | Research Motion for Leave to Depose Steve Smith to preserve testimony | 4.8 |
| 6/13/2012 | CSP | Preparing and revising Motion for Leave to Depose Plaintiff Steve Smith | 6.1 |
| 6/14/2012 | CSP | Continued researching Motion for Leave to Depose Steve Smith | 2.6 |
| 6/15/2012 | CSP | Rewrote majority of Motion to Depose Steve Smith to preserve his testimony after covnersation with RMC | 5.7 |
| 6/19/2012 | CSP | Began compiling cases used in Motion for Leave to Deposit Steve Smith into a binder | 1.2 |
| 8/31/2012 | CSP | Revise Motion for Leave to Depose Steve Smith | 2.5 |
| 9/5/2012 | CSP | Finalize Motion for Leave to Depose Steve Smith | 1.5 |
| 9/10/2012 | GP | Telephone call with Chie Smith - Day In the Life video | 0.5 |
| 9/11/2012 | GP | Telephone call with Chie Smith - Day In the Life video | 0.3 |
| 10/1/2012 | GP | Telephone call with Danny Ford - Re: Steve Smith Day in the Life video | 0.4 |
| 12/18/2012 | GP | Preparation 2nd request to Joseph Viroslav MD requesting Steve Smith medical records | |
| 6/17/2015 | GP | Preparation Steve Smith Bio | 0.7 |
| 8/4/2015 | GP | Review Medicare Payouts for Steve Smith | 0.6 |
| 8/26/2015 | GP | Telephone call with Esquire Bank - Re: Steve & Chie Smith | 0.6 |
| 8/27/2015 | GP | Telephone call with Esquire Bank - Re: Steve & Chie Smith | 0.4 |
| 9/14/2015 | GP | Telephone call with Chie Smith | 0.3 |
| 12/8/2015 | GP | Steve Smith Loan Closing | 1 |
| 1/6/2016 | GP | Respond to email from Steve Smith re: Copyrighting a Book | 0.2 |
| 1/19/2016 | GP | Emails exchange with Chie Smith Re: ALS Treatment Breakthrough | 0.3 |
| 1/21/2016 | SCM | Recommendation for Trust Attorney in Texas Re: Establishing Steve Smith Revocable Trust | 0.3 |
| 5/4/2016 | GP | Email to Chie Smith Re: Status of Appeal | 0.2 |

Time Keepers:

| | |
|---|---|
| SCM | Steven C. Marks - Parnter |
| CSP | Christopher S. Prater - Law Clerk |
| GP | Gina Palacio - Senior Paralegal |

Exhibit A