IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION LITIGATION § § § § § § § § § THIS DOCUMENT RELATES TO: ALL ACTIONS | No. 12-md-2323 (AB)<br><br>MDL No. 2323 |

ALEXANDER OBJECTORS' OPPOSITION TO CO-LEAD
CLASS COUNSEL'S SECOND VERIFIED PETITION FOR
AN AWARD OF POST-EFFECTIVE DATE COMMON
BENEFIT ATTORNEYS' FEES AND COSTS

Pending before the Court in the above referenced matter is the Second Verified Petition of Co-Lead Class Counsel for an Award of Post-Effective Date Common Benefit Attorneys' Fees and Costs (the "Second Petition") (ECF 10374). The Alexander Objectors oppose the Second Petition and respectfully submit the following response in opposition thereto.

## INTRODUCTION

Less than two years into a 65-year settlement, Class Counsel has already depleted almost 90% of the $112.5 million common benefit fund ("Fee Fund") this Court said was "to be used to pay Class Counsel for [i] securing and [ii] implementing" the settlement over the course of the next six decades. (*See* ECF 10378, at 1; *see also* ECF 9860, at 2). The $112.5 million Fee Fund, opined the Court's appointed expert, Professor William B. Rubenstein, "should be sufficient to

fund past, present, *and* future [attorney] work" so long as appropriate safeguards are in place (ECF 9571, at 5) (emphasis added).  As such, the Court awarded $85.6 million of the fund to Class Counsel "for their work in securing" the settlement (ECF 10019, at 1) and directed that the remainder of the fund ($22.8 million at the time) be held "in reserve to pay Class Counsel for their services in supporting the class *through the implementation of the 65-year term*" of the settlement (ECF 10019, at 4, 25) (emphasis added). Two years in, however, only $13.4 of the entire $112.5 million Fee Fund remains.

From the $22.8 million set aside by the Court for implementation, and in response to Co-Lead Class Counsel's First Verified Petition for An Award of Post-Effective Date Common Benefit Attorneys' Fees and Costs (ECF 10128; the "First Petition"), the Court recently awarded Class Counsel $9.4 million for fees and expenses they claimed were incurred between January 2017 and May 2018 (*See* ECF 10378). Co-lead Class Counsel's Second Petition seeks an additional $3.2 million for fees and expenses allegedly incurred over a 6-month period between May and November 2018 (ECF 10374).

Collectively, the First and Second Petitions confirm Class Counsel—left largely unrestrained and with little Class Member oversight and an apparently-unlimited (and undisclosed) budget—are burning through funds set aside for the settlement's 65-year term at more than $500,000 per month. At that pace, and if the

Second Petition is granted, the remaining $10.2 million set aside for implementation will be exhausted in less than two years, approximately 61 years before the end of the settlement's 65-year term.

Prematurely draining the Fee Fund is contrary to the Court's plan—and Professor Rubenstein's recommendation—to grow the fund over time through investment. If the Fee Fund is exhausted (and it is clearly headed that way), the Class Members will bear the burden of future implementation fees and expenses via the five percent (5%) holdback. Seeking to avoid that result, and given the size of the $112.5 million Fee Fund, Professor Rubenstein (and the majority of Class Counsel) opposed the 5% holdback.[1] But, whether intentional or not, at the current burn rate, Class Counsel will tap into the estimated $40 million generated by the 5% holdback[2] to pay for "implementation" in a couple of years.

If this was a business, and it had been allocated $22.8 million to invest and spend over the course of the next 60+ years, there would be a plan in place, coupled

---

[1] As Professor Rubenstein observed, (i) there is nothing in the settlement agreement suggesting "that the $112.5 million fee award was only meant to fund counsel's work up to the effective date of the settlement;" (ii) there is no support in the law "for the argument that class counsel only do implementation work for extra money;" and (iii) "the $112.5 million magnitude of Class Counsel's aggregate fee request … undercuts the argument that it only funds work securing the settlement, but that counsel must be paid extra to implement it." (ECF 9526, at 33).

[2] *See* ECF 9860, at 17; ECF 9526, at 33-34. As of January 14, 2019, there are approximately $425 million in paid claims. Thus, the current value of the 5% holdback is approximately $21 million, which, of course, would remain a part of the Class Members' recoveries if the $112 million Fee Fund is not exhausted.

with incentives to exercise business judgment and economic restraint. To our knowledge, however, Co-Lead Class Counsel has never provided an estimate of the amount of work that will be required in the future (*see*, ECF 9860, at 17), nor has Co-Lead Class Counsel advised the Court or the Class Members of any efforts to manage the legal efforts in a manner that preserves or maximizes the monies set aside for ongoing implementation legal fees and expenses.

In any event, for the reasons set forth herein, the Alexander Objectors ask the Court to deny the Second Petition in its present form. For one, Co-Lead Class Counsel again fails to support the petition with any documentation of the work allegedly performed or the expenses allegedly incurred. Moreover, the Court should reject any further requests for attorneys' fees or expenses until provided with a satisfactory plan detailing the common benefit work remaining and how the remaining funds from the $112.5 million Fee Fund can be utilized to pay for such efforts without tapping into Class Members' awards. After all, the settlement was sold, in part, based on the idea that the NFL was establishing a separate fund to compensate Class Counsel for their fees and expenses.[3]

---

[3] *See, e.g.*, ECF 6073, at 13, 24, 41 (citing cases recognizing "the value in the defendant agreeing to bear all administrative costs and counsel fees;" claiming "the NFL Parties remain responsible to provide all of the funding for … class attorneys' fees;" and noting that "[u]nlike traditional common fund cases where attorneys' fees are obtained directly from the common fund, the Settlement Class is further benefitted by the separate payment of Class attorneys' fees by the NFL Parties"); ECF 5634-5, at 26 ("Having the NFL Parties pay Class attorneys' fees and reasonable

## ARGUMENT

For many of the same reasons advanced in opposition to the First Petition, the Court should deny the Second Petition.[4] The Second Petition, for example, lacks any documentation supporting the requested fees ($2,895,044.17) or the alleged expenses ($300,590.26), rendering it is impossible to conduct the required review.[5] The Second Petition does include two charts allegedly summarizing each firm's common benefit hours and expenses (ECF 10374, at 16 and Ex. A). Noticeably absent from the petition, however, is any proof supporting those charts. Neither chart discloses the actual billing rates, the dates or a range of dates for the hours allegedly worked, the identity of the individual alleged to have performed the service(s), or how the work was divided between partners, "of counsel," associates, or paralegals. None of the law firms or attorneys have submitted a single time record

---

incurred costs separate from the $760 million is another very significant benefit to Settlement Class Members.").

[4] We incorporate by reference the arguments and authorities set forth in the Alexander Objectors' Opposition to Co-Lead Class Counsel's First Verified Petition for an Award of Post-Effective Date Common Benefit Attorneys' Fees and Costs (See ECF 10165).

[5] *See* Fed. R. Civ. P. 23(h) (authorizing an award of "reasonable attorney fees"); *see also Washington v. Phila. City Ct. of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996) (confirming a reasonable attorney fee is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate); *Pa. Envtl. Def. Found. v. Canon-McMillan Sch. Dist.*, 152 F.3d 228, 232 (3d Cir. 1998) ("In calculating the second part of the lodestar determination, the *time* reasonably expended," a district court should "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary").

to support the claimed hours of work. None of the law firms or attorneys have submitted a receipt, a cancelled check; or even a list of expenditures to support the expenses alleged incurred.[6] The lack of documentation alone supports denial of the petition.[7]

The Second Petition, again like the First, also seeks payment upon facially unreasonable rates. In support of the petition, Co-Lead Class Counsel again cites the "blended lodestar rates" cited by the Court in its May 24, 2018 allocation order (ECF 10374, at 16 n. 8). While it is true the Court's lodestar cross check utilized certain average rates, it is not true that the Court "directed" that those rates be used in connection with a pure lodestar.

Moreover, the day to day implementation services can be accomplished by qualified attorneys and paralegals with oversight by Class Counsel at substantially reduced rates. By way of example, and as previously noted, the Philadelphia Bar

---

[6] We are told that much of the expense ($285,612.52) is for "Co-Lead Class Counsel's consulting experts," but no other information is provided.

[7] There is an Order in place to promote transparency: CMO 5. But, it has been ignored. Nevertheless, Co-Lead Class Counsel states he "stands ready" to make the supporting records available for *in camera* inspection (ECF 10374, at 16 n. 7). But Co-Lead Class Counsel "standing ready" to tender supporting documents *in camera* does not meet movants' burden of proof. If Co-Lead Class Counsel needs to utilize confidential documents, there is a presumption of open access that must be overcome and "the burden is on the party who seeks to overcome the presumption of access to show that the interest in secrecy outweighs the presumption.'" *LEAP Sys., Inc. v. MoneyTrax, Inc*., 638 F.3d 216, 220-21 (3d Cir. 2011), quoting *In re Cendant Corp*., 260 F.3d 183, 190 (3d Cir. 2001). Co-Lead Class Counsel has failed to articulate a reason that time sheets are confidential in a proceeding where the party seeks attorneys' fees.

Association Community Legal Services suggested range of hourly attorney rates between $180 (under 2 years) -$650 (over 25 years) and paralegal rates of $115-$140 based on Philadelphia market survey. The paralegal billing rate used in the Second Petition ($260) exceeds the suggested range by more than $100 per hour.[8]

In any event, without documentation confirming who performed what service (as directed by CMO 5), it is impossible to determine whether the rates charged are reasonable. For this reason, too, the Second Petition should be denied.

Finally, and in the alternative, we re-urge our request that the Court either (i) refer the Second Petition (and any future fee petitions) to an auditor or fee committee for review of the supporting CMO 5 data and use of strategies to preserve the Fee Fund for the benefit of all Class Members,[9] or (ii) permit limited fee-petition discovery to be conducted by objectors[10] (*See* ECF 10165, at 13-15).

## PRAYER

For the reasons stated above, Co-Lead Class Counsel's Second Petition should

---

[8] A paralegal billing at $260, working approximately 7 hours/day, 5 days/week for a year would generate fees of more than $450,000.

[9] "[I]t is normal for fee committees to be organized who analyze common benefit claims and ultimately reach consensus amongst all the lawyers who contributed to the process." *See* ECF 10165, Ex. 1, June 15, 2018 Declaration of Christopher A. Seeger, *In re: Zimmer Durom Hip Cup Products Liability Litigation*, MDL 2158, 2:90-cv-04414, ECF 986-2, p. 3.

[10] Section 21.724 of The Manual for Complex Litigation specifically contemplates such discovery where, as here, a petition for fees in not supported: If there is a request for discovery to support an objection to a motion for attorney fees, the court should consider "the completeness of the material submitted in support of the fee motion, which depends in part on the fee measurement standard." The Manual for Complex Litigation (Fourth) § 21.724 (2004).

be denied.

Dated: January 24, 2019

Respectfully submitted,

*/s/ Lance H. Lubel*

Charles L. Becker, Esq.
KLINE & SPECTER, PC
1525 Locust Street, 19th Floor
Philadelphia, Pennsylvania 19102
Telephone: (215) 772-1000
Facsimile: (215) 772-1359
Email: Chip.Becker@KlineSpecter.com

Mickey L. Washington, Esq.
WASHINGTON & ASSOCIATES PLLC
2019 Wichita Street
Houston, Texas 77004
Telephone: (713) 225-1838
Facsimile: (713) 225-1866
Email: mw@mickeywashington.com

Lance H. Lubel, Esq.
Texas Bar No. 12651125
Adam Q. Voyles
Texas Bar No. 24003121
LUBEL VOYLES LLP
5020 Montrose, Suite 800
Houston, Texas 77006
Telephone: (713) 284-5200
Facsimile: (713) 284-5250
Email: lance@lubelvoyles.com
Email: adam@lubelvoyles.com

*Attorneys for Appellants*

CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2019, I filed the foregoing through the Court's CM/ECF system, which will provide electronic notice to all counsel of record and constitutes service on all counsel of record.

*/s/  Lance  H. Lubel*
Lance H. Lubel