UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| THIS DOCUMENT RELATES TO:<br><br>**PAUL R. TURNER**<br>**as PERSONAL REPRESENTATIVE**<br>**of the ESTATE OF KEVIN TURNER**<br><br>v.<br><br>**PODHURST ORSECK, P.A.**<br><br>LIEN ID: 664 | |

**RESPONSE OF PODHURST ORSECK, P.A. TO OBEJCTIONS
BY THE ESTATE OF KEVIN TURNER TO THE
REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE STRAWBRIDGE**

In accordance with Federal Rule of Civil Procedure 72(b)(2) and Rules 12 and 25(d) of the Amended Rules Governing Attorney's Liens (ECF No. 10283), Podhurst Orseck, P.A ("Podhurst") submits this response in opposition to the Estate of Kevin Turner's ("the Estate's") misguided Objections (ECF No. 10387, herein after "Estate Obj.") to Magistrate Judge Strawbridge's reasonable resolution of this attorney-client fee dispute.

The Estate's Objections proceed from the legally erroneous premise that the Magistrate Judge's discretion to award a contingency fee within the cap set by this Court is limited to circumstances in which the attorney can itemize all work for the client and where the contingency fee cross-checks with the lodestar value of that work. That is neither how contingency fee representation works, nor what the law of this Circuit requires, nor what any prior ruling by this

Court required of individually retained plaintiff attorneys ("IRPAs").  The Magistrate Judge ably developed a framework for assessing the value of an IRPA's work in this litigation utilizing the factors endorsed by the Third Circuit as guideposts.  While the fee awarded to Podhurst is below that which we sought, we cannot say that the Magistrate Judge's approach was legally mistaken or unreasonable.  The Estate's challenge fails to prove otherwise.

## BACKGROUND

This proceeding arises from the January 18, 2012 contingency fee contract between Podhurst and Kevin Turner, which was signed before the creation of the MDL.  (ECF No. 7071-2.)[1]  As compensation for Podhurst's legal services, Turner agreed to pay "40% of any recovery" plus "[a]n additional 5% of any recovery after institution of any appellate proceeding."  Prior to the Court's Order capping the fee percentage in individual fee agreements at 22% (ECF No. 9863) ("Fee Cap Order"), Podhurst voluntarily reduced its fee percentage to 25% (ECF No. 7071 at 2).  For more than four years, Podhurst zealously represented Turner under this contingency agreement, investing substantial amounts of time and resources with the knowledge that it would not receive any compensation unless Turner prevailed on his claims.

As the Court is aware, the operative settlement in this action was filed on June 25, 2014.  (ECF No. 6073.)  Turner, who was diagnosed with Amyotrophic Lateral Sclerosis ("ALS") in June 2010, was appointed the representative of Sub-Class 2, the discrete group of retired NFL players who had received a Qualifying Diagnosis prior to date of preliminary approval and thus would be entitled to a Monetary Award if the settlement won approval.  The Court granted final approval of

---

[1] Two other law firms, James E. Doddo, P.A. and Bradley K. Blank, Esq., are also parties to the contract.  These firms agreed to be responsible and available to Turner for consultation, to participate and assist in the preparation of the case, and to bear full responsibility for the legal representation as well.

2

the Settlement on April 22, 2015.  (ECF No. 6510.)  At this time, Podhurst still represented Turner under the January 18, 2012 contingency fee agreement.  Sadly, Turner died from ALS on March 24, 2016, just a few weeks before the Third Circuit affirmed the Court's final approval of the Settlement.  *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410 (3d Cir. 2016), *cert. denied sub nom. Gilchrist v. NFL*, 137 S. Ct. 591 (2016).

Following Turner's death, Podhurst recognized the need to modify the contingency fee agreement to add the endorsement of the legal representative of the Turner Estate.  Podhurst requested that Turner's father, Paul Raymond Turner, execute a simple endorsement to the contract on behalf of the Estate.  The Turner Estate, through its counsel, refused to ratify the contract that Turner had and expressed the view that Podhurst was not entitled to any fee under the contract.  In explaining why it felt that there was no longer any role for Podhurst to play that would warrant a contractual fee, the Turner Estate expressed the view that there was no longer any realistic risk that the award for Turner under the Settlement would not occur:

> I agree with Judge Ambro's Appellate decision that this class action settlement is fair, even if it is not perfect. Accordingly, *there is little risk now* that any further procedural challenges will be able to disturb the Class Action Settlement Agreement reached by the parties, approved by Judge Brody and now affirmed by the Appellate Court. *This settlement agreement is going to happen*, I want the Estate to receive the full award when it is soon to be available, so that Kevin's estate planning intentions can be fulfilled.

(ECF No. 7029-9 (May 3, 2016 email from Robert Penza to Steven Marks) (emphasis added).  The Turner Estate requested that Podhurst sign an amended contract that waived any claim to compensation from the Turner Estate's Monetary Award.

Because Podhurst would not accede to the Turner Estate's inflexible demand that the firm completely waive its right to any fees from the Monetary Award, the Turner Estate filed a motion requesting that the Court declare that its agreement with Turner was "superseded by the

3

certification of a national class" and that Podhurst was not entitled to collect any fee from Turner's Monetary Award. (ECF No. 7029 at 2, 4.) Podhurst responded in opposition to the Turner Estate's motion, explaining why Podhurst has the right to a contract-based fee alongside whatever common-benefit fee the Court awards for common-benefit work. (ECF No. 7071.)

After issuing its Fee Cap Order (ECF Nos. 9860)—which ratified that law firms could receive private contractual fees and common-benefit fees within the limits established by the Court—the Court denied the Turner Estate's motion "without prejudice to the Class Member's right to file a Petition for Deviation from the Fee Cap[.]" (ECF No. 9984).

The Turner Estate subsequently filed a Petition for Deviation (ECF No. 10025) and both Podhurst and the Turner Estate filed Statements of Dispute in accordance with the Rules Governing Lien Disputes. The Turner Estate again took the extreme position that Podhurst should not receive any fee for its four years of work representing Kevin, while Podhurst sought its contractual fee, as modified by the Court's Fee Cap Order. In its submission, Podhurst explained that, although it kept detailed time records of its work on common benefit tasks, to comply with Case Management Order No. 5 (ECF No. 3710), which was limited to common benefit time, the firm did not maintain time records for its work for individual clients, in keeping with its traditional way of handling contingency fee cases. *See* N.T. at 103;[2] Podhurst Statement of Dispute at 11.

After holding a hearing on the dispute on October 3, 2018, and carefully reviewing the evidence and arguments presented, the Magistrate Judge issued a detailed Report and Recommendation on January 7, 2019, ruling that Podhurst should receive 15½ % of the Monetary Award as its fee, and that the entire 5% holdback for common benefit work should be deducted

---

[2] Citations to "N.T." refer to the Notes of Testimony or transcript of the hearing held before the Magistrate Judge on October 3, 2018.

4

from Podhurst's fee. The Magistrate Judge summarized the work that Podhurst did for Turner "that benefitted [him] individually":

> Podhurst represented Turner for more than four years – from before the MDL was formed through much of the appellate process. Podhurst has presented evidence that they: (a) performed extensive legal research in advance of the litigation; (b) filed the lawsuit against the NFL; (c) assembled and reviewed his medical records; (d) created a Day in the Life video for use in future litigation, (e) advised Turner on collateral litigation that might impact this case and attempted to obtain an *in extremis* deposition to preserve Turner's testimony for future litigation; (f) supported Turner in his understanding of the negotiations and the Settlement Agreement; (g) assisted the family in obtaining a loan while they awaited payment of the Award; and (h) other personal matters. Although some work for Turner was co-extensive of work performed by Podhurst as Class Counsel, we reject Turner's argument that all the work performed in that time was exclusively common benefit work for which Podhurst has already been paid. As detailed here, these were services that benefited Turner individually.

R & R at 45. The Turner Estate then filed objections to the Magistrate Judge's Report and Recommendation, giving rise to these proceedings before the Court. (ECF No. 10387.)

## ARGUMENT

**I.  The Report and Recommendation Correctly Applies a "Top-Down" Approach to Assessing the Reasonableness of the Contingency Fee.**

While the Estate purports to agree that "Magistrate [Judge] Strawbridge applied the correct legal analysis" (Estate Obj. at 2), its arguments are in tension with that apparent concession. The Estate's Objections presuppose, incorrectly, that the law requires IRPAs to justify their contractual fees from the ground up, so to speak, by documenting each task they performed for their individual client and then assessing the fair hourly rate for that work. (Estate Obj. at 6 (arguing that the fee can only be based on "documented hours" and "[ ]quantified tasks").)

The Magistrate Judge recognized, however, that the governing law of this Circuit recognizes that such a lodestar-based approach is inappropriate to assessing the reasonableness of what are, after all, *contingency fee* agreements ("CFAs"):

5

>    In conducting this case-by-case analysis, however, we cannot use a strict lodestar analysis to evaluate a CFA. *McKenzie* [*Constr., Inc. v. Maynard*], 823 F.2d [43], 47, n.3 [(3d Cir. 1987)] (stating that lodestar analysis is inapplicable to contingency fee contracts); *see also Dunn* [*v. H.K. Porter Co., Inc.*], 602 F.2d [1105], 1111 [(3d Cir. 1979)] (rejecting the argument that it was inappropriate to assess the reasonableness of an IRPA fee agreement by comparing it to the fee paid by unrepresented class members (calculated under a *Lindy* [*Bros. Builders, Inc. of Phila. v. Am. Radiator & Std. Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973)] analysis)). These are CFAs, so it is not proper to use the rates that could have been obtained based under an hourly fee agreement to evaluate their reasonableness.

R & R at 19. This reasoning properly drew upon Third Circuit law which specifically rejects challenges to contingency fees claimed to be far in excess of the applicable lodestar. *See McKenzie*, 823 F.2d at 47 n.3 (rejecting argument that contingency fee "could not be tolerated" because it was "thirteen times the lodestar" because "[l]odestar analysis … does not apply to a contractual contingent fee agreement") (internal quotation marks omitted); *Dunn*, 602 F.2d at 1112 ("We therefore believe that the courts should be loathe to intrude into a contractual relationship between an attorney and client, and that a comparison between the contractual fee and the *Lindy* fee … is an inappropriate ground for invalidation of a contingent fee arrangement.").

While the Magistrate Judge acknowledged that the Lien Rules adopted in this case instruct IRPAs to "provide written evidence of 'the time spent on each task,'" he noted that the Court "seek[s] this information only to the extent that the amount of time spent on a project can be an indicator of the substantiality of the effort required by the IRPA to perform the task." *Id*. (quoting Lien Rule 17).[3] Thus, where an IRPA did not "prepare contemporaneous billing records," in view of having been retained pursuant to a contingency fee agreement, *see Mulholland v. Kerns*, 822 F. Supp. 1161, 1169 (E.D. Pa. 1993) (observing that "[i]n contingency fee cases, attorneys

---

[3] It bears noting that the Lien Rules were not adopted (March 6, 2018) until well after Turner died (March 24, 2016) and his Estate later refused to sign a representation agreement with Podhurst (August 15, 2016), such that at no point during Podhurst's representation of Turner was there ever a requirement that the firm keep time records for work done for an individually represented client.

6

often fail to keep the sort of detailed time records that they do when billing on an hourly basis"), the Magistrate Judge reasoned that attorneys' "estimates of the time devoted to a task" could nonetheless "aid" the Court's assessment of the nature of the work performed.  R & R at 19 n.10.

Consistent with this correct understanding of the law, the Magistrate Judge eschewed the Estate's bottom-up approach and instead adopted a top-down approach, starting with the contingency fee percentage in the contract, as capped by this Court (as the presumptively reasonable maximum, given the incidence of the common-benefit fee), and then adjusting the fee downward from that number where aspects of the representation amounted to less than a full measure of the work that substantially contributed to the client's recovery.  The Magistrate Judge thus analyzed each of the *McKenzie* factors with respect to the principal areas of work which it has found IRPAs to handle in this MDL and made reductions where appropriate.  *See* R & R at 24 (listing factors); *id*. at 11-25, 51 (explaining methodology).

The Magistrate Judge properly recognized that the assessment of the reasonableness of the fee is "by its very nature, difficult to define" and the factors difficult to apply.  R & R at 12-13 (quoting *McKenzie Constr., Inc. v. Maynard*, 758 F.2d 97, 102 (3d Cir. 1985) ("*McKenzie I*")).  It requires, for instance, "an assessment of whether and to what degree th[e IRPA's] effort contributed to the result," *id*. at 21, as well as how the contingency fee squares with the "'court's sense of fundamental fairness and equity,'" *id*. at 25-26 (quoting *McKenzie I*, 758 F.2d at 101).  The Magistrate Judge recognized that such considerations do not lend themselves to mathematical precision, but rather "the exercise of informed discretionary judgment" *id.* at 17; *see* N.T. at 105 (Magistrate Judge observing that the law allows "a lot of latitude, a lot of equitable discretion with respect to determining reasonability under the overall circumstances of the case").

7

Applying this matrix of considerations to Podhurst's representation of Turner, the Magistrate Judge credited Podhurst for certain factors and made reductions for others. Its reasoning is summarized in the chart that follows:

| **Factors supporting the capped contract fee** | **Factors warranting reductions** |
|---|---|
| **1. The CFA at the time of contracting** ||
| The CFA was reasonable given that Turner first interviewed Podhurst in 2011 and signed "very early in this litigation" in January 2012. R &R at 35. The risk taken during this period was significant. *Id*. at 15. Podhurst filed suit on behalf of Turner before the MDL was formed. *Id*. at 36. | |
| **2. The CFA at time of execution – impact of changed circumstances** ||
| "Podhurst … spent months prior to filing researching the legal issues that would be faced in the litigation." *Id.* at 39. Such pre-MDL work was not submitted to the Court as part of the common-benefit fee application. *Id*. at 40 | But this work was "in part, common benefit work." *Id*. at 40. Economies of scale, from having numerous clients, make "[o]nly a portion of … this work … fairly attributable" to Turner. *Id*. at 41. |
|  | Turner's role as Subclass Representative meant that some of Podhurst's work for him was common-benefit work rather than IRPA work: namely, keeping him informed about the terms of the Settlement Agreement, advising him about public appearances. *Id*. at 41-42. |
|  | The Estate's termination of the CFA prior to the claim submission process "resulted in a reduction in their obligation to their client." *Id*. at 43. |
| **3. The results obtained.** ||
| The Estate received the highest award on the MAF grid ($5 million). *Id*. at 44. | |
| **4. The quality of the work performed.** ||
| "Podhurst performed at the highest level," but the focus is on whether the work "had a substantial effect on achieving the result obtained." *Id*. at 44. | |

| | |
|---|---|
| ***(a) Legal research pre-MDL***<br>"We recognize the skill and quality of the legal work performed by Podhurst in this capacity."  *Id*. at 45. | "… but we must prorate the value among the[] other Podhurst clients."  *Id*. at 45. |
| ***(b) Filing the lawsuit***<br>Adding Turner to the S.D. Fla. suit in January 2012 was done for Turner's benefit individually.  *Id*. at 46. | |
| ***(c) Medical records***<br>Review of Turner's medical records and conferences with his treating physician, Dr. Cantu, in early 2012 were "performed for Turner's individual benefit."  *Id*. at 46. | |
| ***(d) The Day in the Life Video***<br>"[T]his work … would have benefitted Turner had this case proceeded independently from the class action."  *Id*. at 47. | And it also "benefitted the class."  "This video served a dual purpose and we credit it as such."  *Id*. at 47. |
| ***(e) The workers compensation litigation and in extremis deposition***<br>Podhurst's work representing Turner in connection with his deposition in a worker's compensation case implicating his head injuries, and in seeking to secure the NFL's agreement to take an *in extremis* deposition in this case "was important work" "clearly … for Turner's individual benefit."  *Id*. at 47. | |
| ***(f) Advice to Turner throughout the litigation***<br>Podhurst's Marks "testified … [to] 'hundreds of hours'" spent advising Turner.  *Id*. at 48 n.25 (quoting N.T. 10/18/18 at 107). | Due to Podhurst's role as Class Counsel and Turner's role as Subclass Representative, "Podhurst's IRPA obligations relating to supporting Turner while negotiations and appeals were pending must be reduced."  *Id*. at 48. |
| ***(g) Loan agreement negotiation***<br>Podhurst "worked intensively in negotiating a fair lending agreement for Turner."  *Id*. at 49. | But the Polsinelli firm (successor counsel) also played an active role in the loan negotiation, so "[w]e divide the work equally between the two firms."  *Id*. at 49. |
| ***(h) Support in personal matters***<br>Podhurst advised Turner on the NFL's "Plan '88" disability application and matters regarding his ex-wife.  *Id*. at 49. | |

9

| | |
|---|---|
| *(i) Remaining work* | After the Estate terminated Podhurst, Polsinelli performed the remaining work necessary for the Estate to obtain the MAF award. *Id*. at 50. |
| **5. The substantiality of the work** | |
| "Looking at Podhurst's work, it is clear they provided high quality services … and that there were substantial risks at the time Podhurst was engaged as counsel." *Id*. at 52. | But as to several factors, Podhurst's work done for Turner "in its Class Counsel role" was more substantial than as an IRPA: <br> (a) **Review of medical records**: a "modest reduction in Podhurst's IRPA fee" is warranted due to the pre-existence of a clear diagnosis of Turner's condition. *Id*. at 52. <br> (b) **Support for individual client:** "this work was substantially performed as Class Counsel and Podhurst was already paid as such." *Id*. at 53. <br><br> In other areas, the Polsinelli firm handled work: <br> (c) **Shepherding client through claims process:** performed by Polsinelli. *Id*. at 53. <br> (d) **Assisting client with loan**: divided between Podhurst and Polsinelli. *Id*. at 54. |

In consideration of these myriad factors, the Magistrate Judge arrived at the conclusion that a fair and reasonable contingency fee for Podhurst's work as IRPA in this case is 15.5%. Although this fee represents a 29.5% reduction from the full 22% fee Podhurst sought, we have not objected to it because the Magistrate Judge's analysis is, in the end, a reasonable adjudication of the multivariate *McKenzie* considerations.

## II. The Magistrate Judge's Findings Are Supported in the Record

The Estate challenges the sufficiency of the evidence supporting Podhurst's showing of its work for Turner, but each of the factors for which the Magistrate Judge credited Podhurst's work is supported by the record. As demonstrated in the section above, the Estate is legally mistaken to insist that the fee can be justified solely through "quantif[ying]" the services performed

10

based on evidence of reconstructed hours for specific tasks (Estate Obj. at 3).  Moreover, the Estate's subsidiary arguments—all flowing from its legally mistaken premise—also fail for various reasons.

The Estate first asserts that because Podhurst did not "provide[] a complete, comprehensive chronology of each of the tasks performed by attorney," Podhurst did not even "meet its burden to establish entitlement to an individual fee."  Estate Obj. at 4, 5.  The Estate predicates this argument upon Lien Rule 14(a) (which is now Rule 17(a) in the Amended Rules Governing Lien Disputes), which calls for the submission of a chronology of work performed and exhibits.  But Podhurst *did* comply with the rule, as best it could, including an attempted reconstruction of a sample of its time in its Statement of Dispute and through a supplemental submission to the Magistrate Judge.  What this objection ignores is that reconstructed time records are not the *only* way of proving that substantial work was done for the benefit of a settlement class member.  The Magistrate Judge realized this, given the reality that "some IRPAs may not have prepared contemporaneous billing records" (R & R at 19 n.10), a practice made reasonable by the fact that they were retained pursuant to a contingency fee agreement.  Those records "*can* be an indicator of the substantiality of … effort," *id*. at 19 (emphasis added), but there are other ways of proving work that was done:  namely, through court filings, representations made to the Court, documentary evidence and testimony.

Podhurst, in keeping with its typical practice in contingent fee cases, did not track its time spent on individual work for Turner.  N.T. at 54, 103.[4]  This practice, as the Magistrate Judge noted, is common among plaintiffs' firms.  R & R at 19 n.10; *see also Mulholland*, 822 F. Supp.

---

[4] Once the MDL was established and Podhurst began doing common benefit work, it did maintain contemporaneous records of *that* work, because the Court required it.  *See* ECF No. 3710 (Case Mgmt. Order No. 5).

11

at 1169. Many firms representing Class Members in this MDL did not keep contemporaneous time records of their IRPA work. *See* Exhibit A (Notice of Joinder); ECF No. 10383 at 14 n.13. Podhurst candidly advised the Magistrate Judge that where it could not recreate a specific itemization of work done for Turner, especially one with a good-faith estimate of the time it took to complete, the firm did not attempt to list it in its Statement of Dispute. N.T. at 54. Contrary to the Estate's speculation (Estate Obj. at 5), Podhurst had no role in developing the lien rules, least of all one regarding record-keeping that is inconsistent with its practice and that of most plaintiff's lawyers.[5]

Instead, Podhurst's counsel represented to the Magistrate Judge during the hearing the extent of the work the firm did for Turner. Podhurst's counsel expressly made their representations as "a proffer" and added that if further record development was required, it was prepared to do so during the hearing. N.T. at 58. The proffers described substantial Podhurst work at various stages of the individual representation of Turner. *See* N.T. at 25 (Mr. Rosenthal: "I can say that with personal knowledge and Mr. Marks can as well because we spent an awful lot of time . . . studying it"); *id*. at 28 (Mr. Rosenthal: "I personally spent the summer of 2011 researching the preemption issues"); *id*. at 33 (Mr. Rosenthal: offering to "swear to" representation regarding the degree of risk Podhurst perceived at the time of contract); *id*. at 60 (Mr. Rosenthal: regarding work done with Turner concerning attempt at arranging his deposition in this case in coordination with pending deposition in his worker's compensation case: "I did speak … to Kevin about it -- I cannot

---

[5] The Estate bases its errant "presum[ption]" on a colloquy with the Magistrate Judge which it simply misinterprets. *See* Estate Obj. at 5 & n.8. The telephone conference that Magistrate Strawbridge referenced in that quoted colloquy was not any conference in which the Lien Rules were being formulated (Podhurst was never consulted on such a project), but rather a scheduling conference in the *Smith v. Podhurst Orseck P.A.* lien proceeding that happened to have been held shortly before the *Turner* evidentiary hearing.

swear how many times at this point because too many years have gone by and I didn't keep records of it, I just have my emails with the lawyer that I was dealing with."); *id*. at 62 (Mr. Rosenthal: "there was a flurry of activity for several months around this issue … advising the client"); *id*. at 103 (Mr. Marks: "I could say this without equivocation, under oath, under a lie detector, I've spent hundreds – not tens, hundreds of hours on Kevin's individual case."); *id*. at 103 (Mr. Marks: "there are hundreds of hours that are not accounted for . . . and I say that under oath"); *id*. at 108 (same).

The Estate did not object to proceeding in that fashion, accepting Podhurst's counsel's representations as officers of the Court. Had the Estate voiced the slightest objection, or contested the veracity of Podhurst's representations in open court, Podhurst was prepared to have each of its two counsel who were present at the hearing put on the testimony of the other, and the Estate could have cross-examined them if it so desired. Given the Estate's acquiescence to the manner in which the evidentiary hearing proceeded, it waived any argument that these representations of counsel were not of sufficient evidentiary competence. *Cf. Dougherty v. Marshalls of MA, Inc.*, No. 08-CV-3443, 2011 WL 1562251, at *9 (E.D. Pa. Apr. 26, 2011), *aff'd*, 460 F. App'x 132 (3d Cir. 2012) ("[I]t is a "well recognized rule of evidence" that "evidence to which a timely objection is not made becomes competent.") (internal quotation marks omitted); *United States v. Cain*, 617 F.3d 271, 293 (2d Cir. 2012) (relying on counsel's representation to resolve attorney-client issue); *United States v. Levy*, 25 F.3d 146, 154 (2d Cir. 1994) (same). The Magistrate Judge appropriately credited these uncontested factual representations of counsel concerning matters about which they had personal knowledge.

The Estate ignores all of this information when it assails the Magistrate Judge's conclusions as "not [being] supported by the evidence in the record," Estate Obj. at 2, or "go[ing] well beyond these *documented* hours," *id*. at 6 (emphasis added). This attack treats Podhurst's

proffers about the extent of the work it did for Turner individually as if they did not exist – and as though the Estate did not acquiesce in the proffer. Similarly, the Estate's contention that "the R&R does not refer to specific evidence without or outside of Podhurst's submissions to the Claims Administrator," Estate Obj. at 7, elides the Report and Recommendation's numerous citations to Podhurst's various evidentiary proffers. *See, e.g.*, R & R at 37 (citing N.T. at 28); *id*. at 39 (same); *id*. at 47 (citing N.T. at 59); *id*. at 48 (citing N.T. at 61-62); *id*. at 48 n.25 (citing N.T. at 107); *id*. at 49 (citing N.T. at 50); *id*. at 48 n.25 (citing N.T. at 107); *id*. at 49 (citing N.T. at 62).

Those proffers of work done put meat on the bones of the records of partially reconstructed time, which were submitted under oath in Podhurst's Statement of Dispute (at 16), and expanded upon without objection in hearing exhibit "Rosenthal-1," *see* R & R at 3, 36. In addition, the Magistrate Judge had before it and/or drew upon additional evidence that helped illustrate some of Podhurst's work. Among them were five documents Podhurst introduced during the hearing without objection: three Podhurst emails spanning July 14-30, 2012 discussing strategy concerning the interplay between Turner's deposition in his worker's compensation case and the proposed *in extremis* deposition in the MDL, *see* N.T. at 114 (hearing Exs. "Rosenthal-4," "Rosenthal-5," and "Rosenthal 6"),[6] plus correspondence between Podhurst and the Estate's counsel in August and September 2015 evidencing work Podhurst had done to help secure Turner a loan from Esquire Bank, *see* N.T. at 3, 119 (hearing Exs. "Rosenthal-7" and "Rosenthal-8"). The record also contains or references Steven Marks's sworn declaration filed in the MDL (ECF No. 7151-8), the pre-MDL complaint Podhurst filed for Turner in the Southern District of Florida, the short-form complaint Podhurst filed for Turner in the MDL, and Podhurst's CFA with Turner,

---

[6] These exhibits, which were submitted to the Magistrate Judge (N.T. at 114), were apparently not marked, *see id.* at 3 ("Transcriber's note"), but the Claims Administrator has indicated that they are being submitted via its portal with the Court as part of the Dispute Record.

evidencing the date of retention. In addition, the Estate's personal representative, Turner's father, testified at the hearing he was not "aware of a single time that [Mr. Marks] wasn't there for Kevin … didn't answer his questions[.]" N.T. at 88. In short, the record was sufficient to allow the Magistrate Judge to reach the conclusion that it did concerning the quality and substantiality of the work Podhurst performed for Turner individually.

The Estate also takes liberties with its characterization of some of the Magistrate Judge's conclusions. For instance, it makes the wholly inaccurate assertion that the Magistrate Judge was unable to evaluate the quality of Podhurst's work for Turner. Estate Obj. at 11 ("As Judge Strawbridge acknowledges (R&R at 21), the quality of the work performed is almost impossible to discern, as Podhurst has failed to document its work …"). In fact, the Magistrate Judge repeatedly complimented the quality of Podhurst's work for Turner. R & R at 44 ("Podhurst performed at the highest level"); *id*. at 45 ("We recognize the skill and quality of the legal work performed by Podhurst in this capacity"); *id*. at 52 ("Looking at Podhurst's work, it is clear they provided high quality services … and that there were substantial risks at the time Podhurst was engaged as counsel."). Similarly, the Estate contends that the Magistrate Judge "rejected" Podhurst's proffer that there are "hundreds of hours" of work on Turner's individual case not accounted for in the partially reconstructed time records. Estate Obj. at 6 n.10. But the Magistrate Judge accepted the proffer, even labeling it "testi[mony]," R & R at 48 n.25, and merely concluded that time spent consulting Turner "must be reduced" because of the different hats (individual versus class) that both Podhurst and Turner were wearing, *id*. at 48.

The Estate also makes the broad-brush allegation that Podhurst failed to delineate its work for his case individually from common-benefit work. (Estate Obj. at 6.) This argument ignores that all of the evidence Podhurst introduced in the record was individualized work for

15

Turner.  *See* Podhurst Stmt. of Dispute at 11-14; N.T. 50-63.  Furthermore, Podhurst offered to produce its detailed common-benefit time records to the Magistrate Judge for *in camera* review as additional assurance that the individual work for Smith was not included in the firm's lodestar for common-benefit time.  *See* Podhurst's Resp. to Estate's Stmt. of Dispute at 5 n.1; N.T. at 54, 106.  Neither the Magistrate Judge – nor the Estate for that matter – desired to review them.[7]  Finally, the Estate's argument butts up against the Magistrate Judge's care in reducing the fee where certain tasks may have been performed in part in Podhurst's role as Class Counsel.  *See* R & R at 38-54.  In short, the Estate's accusation that the Report and Recommendation fails to account properly for individual versus common-benefit work is baseless.

        The Estate also argues, in a lengthy footnote, that ALS cases should be treated differently as a category and that IRPAs in such cases should be put to a higher burden to obtain a fee.  Estate Obj. at 7 n.12.  This argument was never raised before the Magistrate Judge, so it is not proper to raise for the first time before this Court.  *See Kern v. Schuylkill Intermediate Unit 29*, No. 3:08–CV–1601, 2010 WL 3632664, at *2 (M.D. Pa. Sept.13, 2010) (deeming claim to be waived when not raised before the magistrate judge) (citing *Laborers' Int'l Union of N. Am., AFL–CIO v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994); *Jiminez v. Barnhart*, 47 F. App'x 684, 685 (3d Cir. 2002)); *Hubbard v. Pleasant Valley Sch. Dist.*, No. 3:03–CV–797, 2006 WL 42093, at *3 (M.D. Pa. Jan.6, 2006) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.") (quoting *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996)); *see also* E.D. Pa. Local R. 72.1(IV)(c).  In any event, this argument is not well taken.  The risk-to-reward ratio is an inherent part of the contingency fee structure, such that the prospect of an IRPA earning a higher fee incentivizes the taking on of greater risk and expense,

---

[7] If this Court wishes to review them, Podhurst renews its offer to submit them *in camera*.

particularly at the initial phase of this litigation, when Turner met with and later retained Podhurst, *see* R & R at 36.  This Court was certainly aware of both the size of potential recoveries for Class Members and the actuarial data regarding the likely infrequency of top-dollar recoveries when it issued its ruling capping IRPA fees.  *See* ECF No. 9526 (Rubenstein Rep.) at 23.

In the end, the record supports the Magistrate Judge's conclusion that Podhurst rendered substantial representation of Turner over the course of more than four years at the "highest" quality, R & R at 44.  While Podhurst retains its belief that its services to Turner merit a fee higher than the 15.5% the Magistrate Judge ultimately recommended, we recognize that the assessment of the fairness of a fee is necessarily an "exercise [in] informed discretionary judgment" (R & R at 17), and defer to the Magistrate Judge's reasonable weighing of the various considerations in arriving at that figure.

However, the Magistrate Judge's decision to tax Podhurst with the *full* 5% holdback, R & R at 54, was mistaken and results in an undue reduction in a fee that was already reduced to take into account work done by successor counsel after Podhurst was terminated.  The Magistrate Judge reduced Podhurst's fee for work performed by Polsinelli.  *Id.* at 35, 43, 44, 49, 50-51, 53-54. Yet the incidence of the 5% holdback was not prorated between both IRPA counsel, Podhurst and Polsinelli.  The fact that Polsinelli is representing the Estate *pro bono* is of no moment, since for holdback purposes the circumstances are no different from the Class Member representing himself *pro se*.  In those instances, the holdback is deducted "directly from the Award" to the Class Member.  ECF 9860 (April 5, 2018 Order) at 18; *accord* ECF No. 9526 (Expert Rep. of Wm. B. Rubenstein) at 34 ("[F]or unrepresented parties, the 5% would come out of their recovery and reduce it accordingly.").  Therefore, justice requires the Estate, which terminated Podhurst without cause before the firm could complete the representation, to shoulder that portion of the holdback

17

that is not fairly allocable to Podhurst. Since the Magistrate Judge reduced Podhurst's fee by 29.5% from the full capped 22% fee, in large part based on work Polsinelli did for the Estate after Podhurst's termination, Podhurst should bear only 70.5% of the 5% holdback (or 3.525%) and the Estate the remaining 29.5% (or 1.475%).

## CONCLUSION

For the foregoing reasons, the Estate's Objections should be overruled and the Report and Recommendation should be adopted with the exception of an apportionment of the 5% holdback.

DATED:  February 5, 2019

Respectfully submitted,

PODHURST ORSECK, P.A.
SunTrust International Center
One S.E. 3rd Ave, Suite 2300
Miami, FL 33131
Telephone: (305) 358-2800
Fax: (305) 358-2382

By: */s/ Steven C. Marks*
STEVEN C. MARKS
Fla. Bar. No. 516414
Email: smarks@podhurst.com
STEPHEN F. ROSENTHAL
Fla. Bar No. 131458
Email: srosenthal@podhurst.com
MATTHEW P. WEINSHALL
Fla. Bar No. 84783
Email: mweinshall@podhurst.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 5, 2019, I caused the foregoing document to be filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel and parties.

*/s/ Steven C. Marks*
Steven C. Marks, Esq.