## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| THIS DOCUMENT RELATES TO:<br><br>**PODHURST ORSECK, P.A.**<br><br>**v.**<br><br>**SMITH**<br><br>LIEN ID:  19 | |

### RESPONSE OF PODHURST ORSECK, P.A. TO OBEJCTIONS BY STEVEN A. SMITH AND CHIE T. SMITH TO THE REPORT AND RECOMMENDATION OF MAGISTRATE [JUDGE] STRAWBRIDGE

In accordance with Federal Rule of Civil Procedure 72(b)(2) and Rules 12 and 25(d) of the Amended Rules Governing Attorney's Liens (ECF No. 10283), Podhurst Orseck, P.A ("Podhurst") submits this response in opposition to Steven Smith's misguided Objections (ECF No. 10399, hereinafter "Smith Obj.") to Magistrate Judge Strawbridge's reasonable resolution of this attorney-client fee dispute.[1]

---

[1] The Objections are styled as being asserted by both Steven and Chie Smith, even though the lien dispute only concerns Podhurst's lien against Steven Smith's Award.  Chie Smith received a separate Derivative Claimant Award, pursuant to different contract covering a spouse's loss of consortium claim, and Podhurst did not pursue a lien against it.  R & R at 61 & n.34.  Chie Smith has a power of attorney for Steven Smith due to his severe disability but lacks standing in her personal capacity to object to the Report and Recommendation.  When we refer to "Smith," that shall mean Steven Smith.

Smith's Objections proceed from the legally erroneous premise that the Magistrate Judge's discretion to award a contingency fee within the cap set by this Court is limited to circumstances in which the attorney can itemize all work for the client and where the contingency fee cross-checks with the lodestar value of that work.  That is not how contingency fee representation works, nor what the law of this Circuit requires, nor what any prior ruling by this Court required of individually retained plaintiff attorneys ("IRPAs").  The Magistrate Judge ably developed a framework for assessing the value of an IRPA's work in this litigation utilizing the factors endorsed by the Third Circuit as guideposts.  While the fee awarded to Podhurst is less than we sought, we cannot say that the Magistrate Judge's approach was legally mistaken or unreasonable.  Smith's challenge fails to prove otherwise.

## **BACKGROUND**

This dispute arises from the January 25, 2012 contingency fee contract between Podhurst and Steven Smith.  (ECF No. 7365-1.)[2]   As compensation for Podhurst's legal services, Smith agreed to pay "40% of any recovery" plus "[a]n additional 5% of any recovery after institution of any appellate proceeding."  *Id.*  Prior to the Court's Order capping the fee percentage in individual fee agreements at 22% (ECF No. 9863) ("Fee Cap Order"), Podhurst voluntarily reduced its fee percentage to 25%.  For more than four years, Podhurst zealously represented Smith under this contingency agreement, investing substantial amounts of time and resources with the knowledge that it would not receive any compensation unless Smith prevailed on his claims.

As the Court is aware, the operative Settlement in this action was filed on June 25, 2014. (ECF No. 6073.)  Smith, who was diagnosed with Amyotrophic Lateral Sclerosis ("ALS") in 2002,

---

[2] One other law firm, James E. Doddo, P.A., is also a party to the contract.  The Doddo firm agreed to be responsible and available to Steven for consultation, to participate and assist in the preparation of the case, and to bear full responsibility for the legal representation as well.

was a member of Sub-Class 2, the discrete group of retired NFL players who had received a Qualifying Diagnosis prior to date of preliminary approval and thus would be entitled to a Monetary Award if the settlement won approval.  Indeed, because Smith was a member of and considered representing Sub-Class 2, Mrs. Smith signed a Supplemental Retainer Agreement with Sub-Class counsel, Nastlaw, LLC, "as agent for" Smith pursuant to a Statutory Durable Power of Attorney dated September 24, 2015, for the express purpose of representation "in all matters pertaining to class certification and all common class issues after certification."  (ECF No. 7365-8.)   The Supplemental Retainer Agreement expressly referenced and ratified the "Authority to Represent Agreement [with Podhurst] executed in January 2012," stating: "This Supplemental Retainer Agreement does not alter or amend the Authority to Represent Agreement in any way." *Id*. at 1.

The Court granted final approval of the Settlement on April 22, 2015.  (ECF No. 6510.) The Third Circuit affirmed the Court's final approval of the Settlement on April 18, 2016.  *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410 (3d Cir. 2016), *cert. denied sub nom. Gilchrist v. NFL*, 137 S. Ct. 591 (2016).  At that time, Podhurst still represented Smith under the January 25, 2012 contingency fee agreement.

Podhurst was then terminated without cause.  Smith expressed "appreciat[ion]," just before terminating the firm, for the "professional manner in which … the Podhurst attorneys have performed."  ECF 7365-5 at 2 (July 18, 2016 email).  But he decided to terminate the firm on that date due to his "understanding that we do not need an attorney to participate in the settlement." *Id*.; *see also* N.T. 10/24/18 at 59-60. Smith then filed a notice of joinder (ECF No. 7365) in the motion to resolve an attorney's fee dispute filed by the Estate of Kevin Turner (ECF No. 7029), arguing that the contingency fee agreement was superseded by the Settlement and that Podhurst

was not entitled to collect any contract-based fee from Smith's Monetary Award. Podhurst responded in opposition to the Estate of Kevin Turner's motion as well as Smith's notice of joinder, explaining why Podhurst has the right to a contract-based fee alongside whatever common-benefit fee the Court awards for common-benefit work. (ECF No. 7071; ECF No. 7465.)

After issuing its Fee Cap Order (ECF Nos. 9860)—which ratified that law firms could receive private contractual fees and common-benefit fees within the limits established by the Court—the Court denied Smith's motion "without prejudice to the Class Member's right to file a Petition for Deviation from the Fee Cap[.]" (ECF No. 9984.)

Smith subsequently filed a Petition for Deviation (ECF No. 10037), and both Podhurst and Smith filed Statements of Dispute in accordance with the Rules Governing Lien Disputes. Smith again took the extreme position that Podhurst should not receive any fee for its four years of work representing him, while Podhurst sought its contractual fee, as modified by the Court's Fee Cap Order. *See* R & R at 58 (Smith sought downward departure to a fee of 0%). In its submission, Podhurst explained that, although it kept detailed time records of its work on common benefit tasks, to comply with Case Management Order No. 5 (ECF No. 3710), which was limited to common benefit time, the firm did not maintain time records for its work for individual clients, in keeping with its traditional way of handling contingency fee cases. *See* N.T. 10/24/18 at 68-70, 78, 139-40, 146-47; N.T. 11/16/18 at 94-95, 108;[3] Podhurst Statement of Dispute at 11.

---

[3] Citations to "N.T." refer to the Notes of Testimony or transcript of the hearings held before the Magistrate Judge on October 24, 2018, and November 16, 2018.

After holding hearings on the dispute on October 24, 2018, and November 16, 2018, and carefully reviewing the evidence and arguments presented, the Magistrate Judge issued a detailed Report and Recommendation on January 7, 2019, ruling that Podhurst should receive 17% of the Monetary Award as its fee, and that the entire 5% holdback for common benefit work should be deducted from Podhurst's fee. The Magistrate Judge based the ruling on fewer than all of the evidence Podhurst submitted in advance of, or during, the evidentiary hearing. There is some dispute concerning the full extent of the record before the Magistrate Judge.[4] Irrespective of that dispute, there was evidence Podhurst submitted, and which the Magistrate Judge accepted, which is not referenced explicitly in the Report and Recommendation.

The Magistrate Judge summarized the work that Podhurst did for Smith "that benefitted [him] individually":

> Podhurst represented Smith for more than four years – from before the MDL was formed through much of the appellate process. Podhurst has presented evidence that they: (a) performed extensive legal research in advance of the litigation; (b) filed the lawsuit against the NFL; (c) assembled and reviewed his medical records; (d) created a Day in the Life video for use in future litigation and attempted to obtain an *in extremis* deposition to preserve Smith's testimony for future litigation, (e) advised Smith on collateral litigation that might impact

---

[4] Prior to the first day of the evidentiary hearing, Podhurst submitted additional documents from its file to the Claims Administrator. Due to some problem with the Claims Administrator's server, the submission was not timely transmitted to the Magistrate Judge before the hearing, leading the Magistrate Judge to provisionally preclude introduction of that evidence. *See* N.T. 10/24/18 at 93-94, 103-09. By the time of the second day of the hearing, several weeks later, the confusion had been resolved and the Magistrate Judge accepted those documents. *See* N.T. 11/16/18 at 87, 92.

In addition, during the first day of the hearing Podhurst also sought to introduce a second group of evidentiary materials which had not been submitted in advance. *See* N.T. 10/24/18 at 129-31, 206. The Magistrate Judge disallowed those exhibits, even though they were the subject of testimony and argument and the rules were ambiguous about the deadline for submission of evidence for use in an evidentiary hearing. *See, e.g.*, N.T. 11/16/18 at 54-55. In connection with the continuation of the hearing several weeks later, Podhurst submitted a third set of evidentiary materials which the Magistrate Judge also refused to admit, but which were clearly marked as Court Exhibits A, B and C. *See* N.T. 11/16/19 at 19-21, 82-87, 104-05. These three Exhibits are attached as Exhibits A, B, and C to this response, and may be considered by the Court, *see* Fed. R. Civ. P. 72(b)(3).

this case; (f) supported Smith in his understanding of the negotiations and the Settlement Agreement; (g) assisted the family in obtaining a loan while they awaited payment of the Award; and (h) resolved other personal matters. Although some work for Smith was co-extensive of work performed by Podhurst as Class Counsel, we reject Smith's argument that all the work performed was exclusively common benefit work for which Podhurst has already been paid. As detailed here, these were services that benefited Smith individually.

R & R at 72-73.   Smith then filed objections to the Magistrate Judge's Report and Recommendation, giving rise to these proceedings before the Court.

## **ARGUMENT**[5]

The Magistrate Judge reached a legally correct and factually reasonable resolution of this attorney's fee dispute.  Smith's challenges to the Report and Recommendation proceed from an erroneous legal premise, ignore parts of the record, and fail to persuade.  It is also notable what Smith does *not* challenge:  his prior contention that his January 25, 2012 fee contract with Podhurst did not govern.  The Magistrate Judge rejected that position.  *See* R & R at 54, 59-61.  By not objecting to that ruling, Smith has abandoned that argument.  *See* 28 U.S.C. § 636(b)(1) (only requiring review of "*those portions* of the report or specified proposed findings or recommendations to which objection is made") (emphasis added); *M. v. Falmouth Sch. Dep't*, 847 F.3d 19, 25 (1st Cir. 2017) ("[O]nly those issues fairly raised by the objections to the magistrate's report are subject to review in the district court and those not preserved by such objection are precluded on appeal.") (internal quotation marks omitted); *accord King v. Rubenstein*, 825 F.3d 206, 223 (4th Cir. 2016).

---

[5] Smith's arguments are copied almost verbatim from the objections filed by the Estate of Kevin Turner (ECF 10387), to the point that they mistakenly cite passages of the Report and Recommendation discussing facts pertaining to the Estate of Turner dispute (Smith Obj. at 6 (citing R & R at 29, 48 n.25)) and even refer to "individual work done for Turner," *id*. at 7, when they plainly mean Smith.  As a result, our response naturally tracks much of our response to the Estate of Turner's Objections.

I.     **The Report and Recommendation Correctly Applies a "Top-Down" Approach to Assessing the Reasonableness of the Contingency Fee.**

While Smith purports to agree that "Magistrate [Judge] Strawbridge applied the correct legal analysis" (Smith Obj. at 2), his arguments are in tension with that apparent concession. The Objections presuppose, incorrectly, that the law requires IRPAs to justify their contractual fees from the ground up, so to speak, by documenting each task they performed for their individual client and then assessing the fair hourly rate for that work. (Smith Obj. at 5 (arguing that the fee can only be based on "documented hours" and "[ ]quantified tasks").)

The Magistrate Judge recognized, however, that the governing law of this Circuit recognizes that such a lodestar-based approach is inappropriate to assessing the reasonableness of what are, after all, *contingency fee* agreements ("CFAs"):

> In conducting this case-by-case analysis, however, we cannot use a strict lodestar analysis to evaluate a CFA. *McKenzie* [*Constr., Inc. v. Maynard*], 823 F.2d [43], 47, n.3 [(3d Cir. 1987)] (stating that lodestar analysis is inapplicable to contingency fee contracts); *see also Dunn* [*v. H.K. Porter Co., Inc.*], 602 F.2d [1105], 1111 [(3d Cir. 1979)] (rejecting the argument that it was inappropriate to assess the reasonableness of an IRPA fee agreement by comparing it to the fee paid by unrepresented class members (calculated under a *Lindy* [*Bros. Builders, Inc. of Phila. v. Am. Radiator & Std. Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973)] analysis)). These are CFAs, so it is not proper to use the rates that could have been obtained based under an hourly fee agreement to evaluate their reasonableness.

R & R at 19. This reasoning properly drew upon Third Circuit law which specifically rejects challenges to contingency fees argued to be far in excess of the applicable lodestar. *See McKenzie*, 823 F.2d at 47 n.3 (rejecting argument that contingency fee "could not be tolerated" because it was "thirteen times the lodestar" because "[l]odestar analysis … does not apply to a contractual contingent fee agreement") (internal quotation marks omitted); *Dunn*, 602 F.2d at 1112 ("We therefore believe that the courts should be loathe to intrude into a contractual relationship between

7

an attorney and client, and that a comparison between the contractual fee and the *Lindy* fee … is an inappropriate ground for invalidation of a contingent fee arrangement.").

While the Magistrate Judge acknowledged that the Lien Rules adopted in this case instruct IRPAs to "provide written evidence of 'the time spent on each task,'" he noted that the Court "seek[s] this information only to the extent that the amount of time spent on a project can be an indicator of the substantiality of the effort required by the IRPA to perform the task." *Id*. (quoting Lien Rule 17).[6] Thus, where an IRPA did not "prepare contemporaneous billing records," in view of having been retained pursuant to a contingency fee agreement, *see Mulholland v. Kerns*, 822 F. Supp. 1161, 1169 (E.D. Pa. 1993) (observing that "[i]n contingency fee cases, attorneys often fail to keep the sort of detailed time records that they do when billing on an hourly basis"), the Magistrate Judge reasoned that attorneys' "estimates of the time devoted to a task" could nonetheless "aid" the Court's assessment of the nature of the work performed.  R & R at 19 n.10.

Consistent with this correct understanding of the law, the Magistrate Judge eschewed Smith's bottom-up approach and instead adopted a top-down approach, starting with the contingency fee percentage in the contract, as capped by this Court (as the presumptively reasonable maximum, given the incidence of the common-benefit fee), and then adjusting the fee downward from that number where aspects of the representation amounted to less than a full measure of the work that substantially contributed to the client's recovery.  The Magistrate Judge thus analyzed each of the *McKenzie* factors with respect to the principal areas of work which it has

---

[6]  It bears noting that the Lien Rules were not adopted (March 6, 2018) until well after Smith terminated his representation by Podhurst (July 19, 2016), such that at no point during Podhurst's representation of Smith was there ever a requirement that the firm keep time records for work done for an individually represented client.

found IRPAs to handle in this MDL and made reductions where appropriate.  *See* R & R at 24 (listing factors); *id*. at 11-25, 62-81 (explaining methodology).

The Magistrate Judge properly recognized that the assessment of the reasonableness of the fee is "by its very nature, difficult to define" and the factors difficult to apply.  R & R at 12-13 (quoting *McKenzie Constr., Inc. v. Maynard*, 758 F.2d 97, 102 (3d Cir. 1985) ("*McKenzie I*")).  It requires, for instance, "an assessment of whether and to what degree th[e IRPA's] effort contributed to the result," *id*. at 21, as well as how the contingency fee squares with the "'court's sense of fundamental fairness and equity,'" *id*. at 25-26 (quoting *McKenzie I*, 758 F.2d at 101).  The Magistrate Judge recognized that such considerations do not lend themselves to mathematical precision, but rather "the exercise of informed discretionary judgment" (R & R at 17).

Applying this matrix of considerations to Podhurst's representation of Smith, the Magistrate Judge credited Podhurst for certain factors and made reductions for others.  Its reasoning is summarized in the chart that follows:

| **Factors supporting the capped contract fee** | **Factors warranting reductions** |
|---|---|
| **1. The CFA at the time of contracting** | |
| The court accepts "the reasonableness of the contract at the time of signing," in January 2012.  At that time, "the legal risks in this litigation were substantial," and "Podhurst took on that risk when they filed the necessary pleadings" for Smith in the suit in the S.D. Fla.  R & R at 63-66. | |
| **2. The CFA at time of execution – impact of changed circumstances** | |
| "Podhurst … spent months prior to the filing of their initial lawsuit researching the legal issues that would be faced in the litigation." *Id*. at 65.  Such pre-MDL work was not submitted to the Court as part of the common-benefit fee application.  *Id*. at 67-68 | But this work was "in part, common benefit work."  *Id*. at 68.  Economies of scale, from having numerous clients, make "[o]nly a portion of … this work … fairly attributable to our reasonableness analysis of the fee agreement with Smith.  *Id*. at 68. |

| 3. The results obtained. | |
|---|---|
| Smith received the highest award on the MAF grid ($5 million). *Id.* at 71. | |
| **4. The quality of the work performed.** | |
| "Podhurst performed at the highest level," but the focus is on what work Podhurst did "that had the most substantial effect on achieving the result obtained." *Id.* at 72. | |
| ***(a) Legal research pre-MDL***<br>"We recognize the skill and quality of the legal work performed by Podhurst in this capacity." *Id.* at 73. | "… but we must prorate the value among the[] other Podhurst clients." *Id.* at 73. |
| ***(b) Filing the lawsuit***<br>Adding Smith to the S.D. Fla. suit on February 8, 2012 was done for Smith's benefit individually. *Id.* at 73. | "Recognizing the need to divide the value among Podhurst's clients, we consider this work applied to Smith individually." *Id.* at 73. |
| ***(c) Medical records***<br>Podhurst obtained and reviewed Smith's "voluminous" medical records. *Id.* at 73-74. "We accept Podhurst's assertion that it did not perform a thorough review of Smith's medical records in th[e] vetting process [of identifying class representatives], and therefore the time as was spent should … be considered IRPA work." *Id.* at 70. | |
| ***(d) The Day in the Life Video and the in extremis deposition***<br>"Undoubtedly, this work would have benefitted Smith had this case proceeded independently from the class action." It "was shot in part" out of "concern[] that something could happen to Smith that would have rendered him unavailable …" *Id.* at 70.<br><br>Podhurst's "attempt to obtain an *in extremis* deposition to ensure Smith's testimony could be preserved" was "an attempt to advance the interests of their individual client, should the matter proceed as an individual case at a future date." *Id.* at 74. "This is the type of quality work we would expect from prudent counsel in this litigation. We credit this as work performed for Smith's individual case." *Id.* | "But . . . the video was also procured to benefit the class, and would be available for that purpose as well." *Id.* at 70. "The video served a dual purpose and we credit it as such." *Id.* at 74. |

| | |
|---|---|
| *(e) Other litigation*<br>At Smith's request, Podhurst reviewed the *Dryer v. NFL* publicity-rights class action litigation "to assess if there was any possible collateral impact on this litigation." *Id.* at 74. "We characterize this, partially at least, as IRPA work." *Id.* at 75. | |
| *(f) Advice to Smith throughout the litigation*<br>"Podhurst advised Smith about the status of the negotiations and appeals throughout this litigation." *Id.* at 75. "We … recognize that almost all of the support Smith received in understanding the litigation was provided by Podhurst, in their role as IRPA, not Class Counsel." *Id.* at 75-76. | |
| *(g) Loan agreement negotiation*<br>Podhurst "have demonstrated that they worked intensively in negotiating a fair lending agreement for Smith." *Id.* at 76. | |
| *(h) Support in personal matters*<br>Podhurst provided "services that relate to several personal matters for Smith that were not directly related to this litigation[.]" Id. at 76. | "[T]here may be some challenges as to whether this is proper IRPA work, and … these efforts were not substantial[.]" *Id.* at 76. |
| *(i) Remaining work* | After Smith terminated Podhurst, Watters performed the remaining work necessary for Smith to obtain the MAF award, repay loans, etc. *Id.* at 77. |
| **5. The substantiality of the work** | |
| "Looking at Podhurst's work, it is clear they provided high quality services … and that there were substantial risks at the time Podhurst was engaged as counsel." *Id.* at 78. | As to several factors Smith challenged, small reductions are warranted:<br>   *(a) Review of medical records*: a "modest reduction in Podhurst's IRPA fee" is warranted due to the pre-existence of a clear diagnosis of Smith's condition. *Id.* at 79.<br>   *(b) Support for individual client:* Smith "did with some regularity receive advice as to the status of his individual case" from Podhurst. *Id.* at 79. But because "for a very brief period of time, Smith was being advised by Class Counsel . . . due to his role as [potential replacement] Subclass Representative … a small reduction to |

| | account for this … is necessary." *Id*. at 79-80.<br><br>In other areas, Watters handled the work:<br>   *(c)* ***Shepherding client through claims process:*** performed by Watters. *Id*. at 80.<br>   *(d)* ***Support for clients seeking a loan***: Although Podhurst "demonstrate[d] that [its] work in negotiating the loan provided a substantial benefit to Smith," because Watters subsequently dealt with having to renegotiate it, the court "recognizes the work provided by both Podhurst and Watters relating to this factor." *Id*. at 80-81. |
|---|---|

In consideration of these myriad factors, the Magistrate Judge arrived at the conclusion that a fair and reasonable contingency fee for Podhurst's work as IRPA in this case is 17%, "primarily because of the work that was performed by Waters supporting Smith in the claims submission process" and also because "the contribution of Class Counsel was slightly more substantial in this individual litigation," *id*. at 81, due to Podhurst's dual role as Class Counsel for s short period in its representation of Smith. Although this fee represents a 22.7% reduction from the full 22% fee Podhurst sought, we have not objected to it because the Magistrate Judge's analysis is, in the end, a reasonable adjudication of the multivariate *McKenzie* considerations.

## II. The Magistrate Judge's Findings Are Supported in the Record

Smith challenges the sufficiency of the evidence supporting Podhurst's showing of its work for him, but each of the factors for which the Magistrate Judge credited Podhurst's work is supported by the record. As demonstrated in the section above, Smith is legally mistaken to insist that the fee can only be justified by attempting to quantify the lodestar for the services performed based on evidence of reconstructed hours for specific tasks (Smith Obj. at 3). Moreover, Smith's

subsidiary arguments—all flowing from his legally mistaken premise—also fail for various reasons.

Smith first asserts that because Podhurst did not "provide[] a complete, comprehensive chronology of each of the tasks performed by attorney, the date … performed, and the time spent on each task[,]" Podhurst did not even "meet its burden to establish entitlement to an individual fee." Smith Obj. at 4, 5.  Smith predicates this argument upon Lien Rule 14(a) (which is now Rule 17(a) in the Amended Rules Governing Lien Disputes), which calls for the submission of a chronology of work performed and exhibits.  But Podhurst *did* comply with the rule, as best it could, including an attempted reconstruction of a sample of its time in its Statement of Dispute and through a supplemental submission to the Magistrate Judge.  What this objection ignores is that reconstructed time records are not the *only* way of proving that substantial work was done for the benefit of a settlement class member.  The Magistrate Judge realized this, given the reality that "some IRPAs may not have prepared contemporaneous billing records" (R & R at 19 n.10), a practice made reasonable by the fact that they were retained pursuant to a contingency fee agreement.  Those records "*can* be an indicator of the substantiality of … effort," *id*. at 19 (emphasis added), but there are other ways of proving work that was done:  namely, through court filings, representations made to the Court, documentary evidence and testimony.

Podhurst, in keeping with its typical practice in contingent fee cases, did not track its time spent on individual work for Smith.  N.T. 10/24/18 at 68-70, 78, 139-40, 146-47; N.T. 11/16/18 at 94-95, 108.[7]  This practice, as the Magistrate Judge noted, is common among plaintiffs' firms.  R & R at 19 n.10; *see also Mulholland*, 822 F. Supp. at 1169; N.T. 10/24/18 at 67.  Many

---

[7] Once the MDL was established and Podhurst began doing common benefit work, it did maintain contemporaneous records of *that* work, because the Court required it.  *See* ECF No. 3710 (Case Mgmt. Order No. 5).

firms representing Class Members in this MDL did not keep contemporaneous time records of their IRPA work.  *See* Exhibit D (Notice of Joinder dated Nov. 13, 2018);[8] ECF No. 10383 at 14 n.13.  Podhurst candidly advised the Magistrate Judge that where it could not recreate a specific itemization of work done for Smith, especially one with a good-faith estimate of the time it took to complete, the firm did not attempt to list it in its Statement of Dispute.  *See* N.T. 11/16/18 at 95, 108.  Contrary to Smith's speculation (Smith Obj. at 5), Podhurst had no role in developing the lien rules, least of all one regarding record-keeping that is inconsistent with its practice and that of most plaintiff's lawyers.[9]

In the absence of detailed time records, Podhurst instead introduced evidence representative of the work it did for Smith over the course of more than four years, elaborated upon by the live testimony of two partners at the firm, a sworn declaration by a third partner, and a sworn declaration from the lead paralegal who handled the *Smith* file.  That evidence came in the form of (1) a partial reconstruction of time, created by looking back at records that could be located and from which a conservative estimate could be generated, *see* Declaration of Georgina Palacio

---

[8] The Notice of Joinder, signed by five other law firms on the Plaintiff's Steering Committee, including one other Class Counsel, was submitted to the Claims Administrator on November 13, 2018, in advance of the second day of the hearing, held on November 16, 2018.  Although the Magistrate Judge refused to take cognizance of the filing, *see* N.T. 11/16/18 at 6-7, it was presented and thus forms part of the record before this Court.

[9]   Smith copied this assertion wholesale from the Estate of Turner's Objections but deleted the explanatory footnote that the Estate dropped to explain the basis for *its* speculation.  *Compare* Smith Obj. at 5 *with* Turner Estate Obj. at 5 n.8.  The Turner Estate misinterpreted the Magistrate Judge's colloquy cited in that footnote because it pertained to a telephonic scheduling conference between the Magistrate Judge, Podhurst, and counsel for another settlement class member in a different lien dispute that the Turner Estate's counsel *see* not a party to.  That scheduling conference happened to have been in *this* case, and Smith's counsel participated in it.  Smith's counsel therefore knows that the Magistrate Judge had merely announced to counsel a change in his pre-hearing procedures for the submission of exhibits.  Smith's uncritical adoption of the Turner Estate's (already mistaken) speculation about Podhurst's involvement in establishing the Lien Rules is, besides irresponsible, utterly baseless.

¶ 6 (Podhurst Ex. 1); (2) documents and emails from the firm's *Smith* file, *see* Exs. A-F to Palacio Decl.; Ex. A to Podhurst's Response to Smith's Stmt. of Dispute; (3) certain documents previously filed on the Court's docket, including sworn declarations; (4) the Declaration of Roy Altman (Podhurst Ex. 2); *see* N.T. 11/16/18 at 92-93 (discussing declaration); (5) Smith's own affidavit from 2016, ECF 7365-7; and (6) testimony of Steven Marks and Stephen Rosenthal taken at the two hearing sessions.[10]

Smith accuses the Magistrate Judge of having "[i]mproperly consider[ed] [m]atters [o]utside the [s]ubmitted [r]ecord," Smith Obj. at 5, and "not refer[ring] to specific evidence . . . for support of its conclusions," *id*. at 6.  The former accusation is wholly undeveloped in Smith's papers and inhabits the realm of baseless speculation.  The latter ignores that the Report and Recommendation meticulously draws upon evidence developed in the dispute record.  *See, e.g.*, R & R at 64 (citing N.T. 10/24/18 at 17); *id*. at 65 (citing N.T. 10/24/18 at 42); *id*. at 66 (citing Podhurst Hearing Exs. E, F); *id*. at 67 (citing N.T. 10/24/18 at 28); *id*. at 70 (citing N.T. 10/24/18 at 89-96, 186); *id*. (citing N.T. 10/24/18 at 179-183); *id*. at 74 (citing N.T. 10/24/18 at 117); *id*. (citing N.T. 10/24/18 at 91); *id*. at 75 (citing N.T. 10/24/18 at 122 & Podhurst Hearing Ex. D); *id*. at 76 (citing N.T. 10/24/18 at 98-99 & Podhurst Hearing Ex. B).

The record evidence of work Podhurst performed for Smith individually fully supports the Magistrate Judge's conclusions that Podhurst ably handled all of the categories of work

---

[10]  The Magistrate Judge took the additional precaution of asking Podhurst's counsel to state that their representations of fact during argument were made under penalty of perjury pursuant to 28 U.S.C. § 1746.  N.T. 10/24/18 at 76-77; N.T. 11/16/18 at 16-17.  The Magistrate Judge also invited Smith's counsel to cross-examine both of Podhurst's counsel, which she did.

expected of an IRPA, save the filing of the monetary claim, since Podhurst had been terminated

before it could do that.[11]   Specifically, that work primarily entailed:

(a)   Conducting pre-MDL legal research concerning individual claims against the NFL and filing those claims on behalf of Smith, N.T. 10/24/18 at 42;

(b)   Gathering and reviewing Smith's medical records from his treating physicians, N.T. 10/24/18 at 109, 114-17; Podhurst Hearing Ex. F;

(c)   Communicating with Smith about his concussion history, N.T. 10/24/18 at 109-13; ECF 7524-2;

(d)   Commissioning a day in the life video of Smith and his family in October 2012 for use at trial if Smith did not survive, and working with the videographer on the content of the video, N.T. 10/24/18 at 73, 89-91, 94-96, 110, 183, 185-86; Ex. E to Palacio Decl.;

(e)   Conducting legal research about, and negotiating with NFL counsel over, the taking of an *in extremis* deposition of Smith in 2012, N.T. 10/24/18 at 73-74; N.T. 11/16/18 at 100-01;

(f)   Advising Smith as to his opt-out rights from the class settlement, N.T. 11/16/18 at 104-05; Court's Ex. C;

(g)   Reviewing the publicity-rights class settlement in *Dryer v. NFL* at Smith's request to advise him on his rights and ascertain how the release might affect his rights vis-à-vis his claims in this litigation, N.T. 10/24/18 at 74-75, 120-24; Ex. D to Palacio Decl.;

(h)   Procuring a loan for Smith based on his claim through prolonged and extensive negotiations with Esquire Bank over the course of six months in 2015, N.T. 10/24/18 at 98-99, 142; Altman Decl. (Podhurst Ex. 1); and

(i)   Communicating generally with the Smiths to keep them abreast of developments during the life of the case, N.T. 10/24/18 at 97, 129, 217; N.T. 11/16/18 at 107-08; Palacio Decl. (Podhurst Ex. 1), ¶ 3; ECF 7365-7 at 4.

---

[11]   Smith's counsel admitted that the task she performed of filing the MAF claim in his case was extraordinarily easy since it was an open and shut, longstanding ALS diagnosis.  *See* N.T. 11/16/18 at 31-32.

Although Podhurst's counsel could not swear to any particular estimate of the amount of time the firm's work on Smith's individual representation consumed, they represented that it consumed "hundreds and hundreds of hours."  N.T. 11/16/18 at 95; *see id.* at 107-08; *see also* N.T. 10/24/18 at 97.  Indeed, the consistent representation that Podhurst provided to Smith over more than four years was never a concern or issue, until the summer of 2016 when Chie Smith became convinced that IRPAs were not legally entitled to a contractual fee and terminated the relationship.  As Chie Smith admitted, the Smiths "maintained a good relationship [with Podhurst] until the very end."  N.T. 11/16/18 at 201; *see also* N.T. 10/24/18 at 128, 151.

Smith also makes the wholly inaccurate assertion that the Magistrate Judge was unable to evaluate the *quality* of Podhurst's work for Turner.  Smith Obj. at 10 ("As Judge Strawbridge acknowledges (R&R at 21), the quality of the work performed is almost impossible to discern, as Podhurst has failed to document its work …").  In fact, the Magistrate Judge repeatedly complimented the quality of Podhurst's work for Smith.  R & R at 72 ("Podhurst performed at the highest level"); *id*. at 73 ("We recognize the skill and quality of the legal work performed by Podhurst in this capacity"); *id*. at 74 ("This is the type of quality work we would expect from prudent counsel in this litigation"); *id*. at 78 ("Looking at Podhurst's work, it is clear they provided high quality services … and that there were substantial risks at the time Podhurst was engaged as counsel.").

Smith also makes the broad-brush allegation that Podhurst failed to delineate its work for his case individually from common-benefit work.  Smith Obj. at 2, 6.  This argument simply ignores that virtually all of the evidence Podhurst introduced in the record was individualized work for Smith, and the testimony and declarations bear that out.  Furthermore, Podhurst offered to produce its "meticulous" detailed common-benefit time records to the Magistrate Judge for *in*

*camera* review as additional assurance that the individual work for Smith was not included in the firm's lodestar for common-benefit time. *See* Podhurst's Resp. to Smith's Stmt. of Dispute at 7 n.4; N.T. 10/24/18 at 62. Neither the Magistrate Judge—nor Smith for that matter—desired to review them. *See* N.T. 10/24/18 at 62; N.T. 11/16/18 at 110.[12] Finally, Smith's argument butts up against the Magistrate Judge's care in reducing the fee where it could not say with confidence that certain tasks were not performed, in part, in Podhurst's role as Class Counsel or for the firm's other clients as a group. *See* R & R at 68-69, 73-75, 78-81. In short, Smith's accusation that the Report and Recommendation fails to account properly for individual versus common-benefit work is baseless.

The record supports the Magistrate Judge's conclusion that Podhurst rendered substantial representation of Smith over the course of more than four years at the "highest" quality, R & R at 72. While Podhurst retains its belief that its services to Smith merit a fee higher than the 17% the Magistrate Judge ultimately recommended, we recognize that the assessment of the fairness of a fee is necessarily an "exercise [in] informed discretionary judgment" (R & R at 17), and defer to the Magistrate Judge's reasonable weighing of the various considerations in arriving at the 17% figure.

However, the Magistrate Judge's decision to tax Podhurst with the *full* 5% holdback, *id*. at 81, was mistaken and results in an undue reduction in a fee that was already reduced to take into account work done by successor counsel after Podhurst was terminated. The Magistrate Judge reduced Podhurst's fee for work performed by Watters. R & R at 76-78, 80-81. Yet the incidence of the 5% holdback was not prorated between both IRPA counsel, Podhurst and Watters. The fact that Watters is representing Smith *pro bono* is of no moment, since for holdback purposes the

---

[12] If this Court wishes to review them, Podhurst renews its offer to submit them *in camera*.

18

circumstances are no different from the Class Member representing himself *pro se*.  In those instances, the holdback is borne "directly from the Award" to the Class Member.  ECF 9860 (April 5, 2018 Order) at 18; *accord* ECF No. 9526 (Expert Rep. of Wm. B. Rubenstein) at 34 ("[F]or unrepresented parties, the 5% would come out of their recovery and reduce it accordingly.").  If the Court does not allocate the holdback fairly between the terminated IRPA and the class member (or his successor counsel), it would create a (further) perverse incentive for class members to terminate their IRPAs on the eve of submitting their MAF claims.  Justice therefore requires Smith, who terminated Podhurst without cause before the firm could complete the representation, to shoulder that portion of the holdback that is not fairly allocable to Podhurst.  Since the Magistrate Judge reduced Podhurst's fee by 22.7% from the full capped 22% fee, in large part based on work Watters did for Smith after Podhurst's termination, Podhurst should bear only 77.3% of the 5% holdback (or 3.865%) and Smith the remaining 22.7% (or 1.135%).

## <u>CONCLUSION</u>

For the foregoing reasons, Smith's Objections should be overruled and the Report and Recommendation should be adopted with the exception of an apportionment of the 5% holdback.

DATED:  February 5, 2019        Respectfully submitted,

        PODHURST ORSECK, P.A.
        SunTrust International Center
        One S.E. 3rd Ave, Suite 2300
        Miami, FL 33131
        Telephone: (305) 358-2800
        Fax: (305) 358-2382

        By: */s/ Steven C. Marks*
        STEVEN C. MARKS
        Fla. Bar. No. 516414
        Email: smarks@podhurst.com
        STEPHEN F. ROSENTHAL
        Fla. Bar No. 131458
        Email: srosenthal@podhurst.com
        MATTHEW P. WEINSHALL
        Fla. Bar No. 84783
        Email: mweinshall@podhurst.com

        *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2019, I caused the foregoing document to be filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, which will provide electronic notice to all counsel and parties.

        */s/ Steven C. Marks*
        Steven C. Marks, Esq.