# EXHIBIT D

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |

THIS DOCUMENT RELATES TO:
ATTORNEY'S LIEN DISPUTES

**CHIE T. SMITH v.**
**PODHURST ORSECK P.A.**

**LIEN ID: 19**

**PAUL R. TURNER v.**
**PODHURST ORSECK P.A.**

**LIEN ID: 664**

## NOTICE OF JOINDER

We understand that evidentiary hearings were recently held in the above-referenced *Turner* and *Smith* lien disputes. We further understand that whether counsel—who were required to maintain detailed time records with respect to common-benefit time—should also have kept similar detailed time records for work on individual cases pursuant to individual contracts, was raised. For the Court's benefit, we are filing this notice to advise the Court that such detailed records are not typically kept for individual case work pursuant to individual contingency fee contracts. The time spent on an individual contingency fee case is not the barometer of our work; rather, that is determined solely by the results we obtain for our clients. Because our individual contracts in this case call for contingency fees, requiring reconstruction

of time records to justify contractual contingency fees would be extremely unfair. There are several reasons why such a focus is unfair and not based on a real plaintiff's law practice.

First, each of us represents a number of individual clients. In addition to individualized work with and for our individual clients, we have also performed and provided services that have inured to each of our individual clients. These services include, but are not limited to, group meetings; webinars; seminars; conference calls; and general information and updates. Furthermore, we performed tasks on behalf of all of our clients that we would have performed even if we only had a single client. For example, performing system and file maintenance; monitoring and reviewing the MDL docket and individual e-filing (now in excess of 15,000 entries); reviewing and responding to general motions, orders and notices; and training for working with the claims and lien administrators as part of developing an expertise in the settlement administration. Every bit of this work has been done for and benefitted each client we represent, but it is not generally billed to each specific client.

Second, the fundamental economic bargain underlying contingency fee contracts counsels against considering the specific number of hours spent on individual cases. Both sides to a contingency fee agreement assume the risk that the contingent fee will be greater or less than an hourly fee, paid contemporaneously and regardless of the results, would have been. In reality, some cases end up requiring much more work and some end up requiring less. The uncertainty at the outset of litigation and the substantial risk that no fees will be paid absent a recovery factors into the reasonableness of the contingency percentage. *See Angino v. Jeffrey R. Lessin & Associates*, 131 A.3d 502, 508 (Pa. Super. 2016) ("[A]ttorneys are allowed to enter into contingency fee agreements because they provide attorneys with the potential for a higher fee, which compensates the attorney for assuming the risk of nonpayment for services in the event a

case is lost . . . .  Clients, however, are largely shielded from incurring a financial loss resulting from an unfavorable outcome.").  To reduce a contingency fee after-the-fact based on the number of hours spent on a case would undercut the economic basis of the agreement.  In this case, such a practice would also incentivize case poaching and fee manipulation by clients and other lawyers.  Having accepted the reality of contingent compensation, with the substantial risk of no compensation whatsoever, fundamental fairness mandates that attorneys be compensated on the contingency basis under which they actually worked for years.

Moreover, the Court's Order presumptively capping individual contingency fees at 17% of an award (22% less the 5% common-fund holdback) already accounts for efficiencies gained through the class settlement.  To further reduce such fees based on the number of hours spent on a case would be inconsistent with the Court's directive that deviations from the presumptive cap are limited to "exceptional or unique circumstances."  (ECF No. 9863.)  If downward deviations are entertained on the basis of a client's assertion that not enough time was spent on the individual case, particularly when the accepted practice among plaintiffs' attorneys is to not keep detailed time records for contingency cases, the Court will be flooded with unwarranted petitions for deviation, contrary to the Court's Order limiting deviations to exceptional or unique circumstances.  This problem would be magnified if clients are permitted to terminate their attorneys to avoid paying a contingency fee.  The Restatement (Third) of the Law Governing Attorneys considers this issue:

> Allowing a discharged or withdrawing lawyer to recover compensation under a fee contract with a client is sometimes more appropriate than fee forfeiture or recovery of fair value and contractual compensation. The most common situation calling for such treatment is where the client discharges a contingent-fee lawyer without cause just before the contingency occurs, perhaps in order to avoid paying the contractual percentage fee.

3

Am. L. Institute, 1 Restatement (Third) of the Law Governing Attorneys § 40, comment c (2000).

For similar reasons, case law examining the quantum meruit value provided by a terminated contingency fee attorney also generally takes into consideration more than the hours billed on a case. *See, e.g.*, *Angino*, 131 A.3d at 511 (holding that "merely multiplying the hourly rate by the number of hours worked may be too narrow of an approach" and the court should "take into consideration the particular circumstances of the case before it, including the complexity of the litigation and the results achieved"); *Mager v. Bultena*, 797 A.2d 948, 960-61 (Pa. Super. 2002) ("In addition to the labor and time involved, other factors must be taken into consideration, such as the character of services rendered, the importance of the litigation, the skill necessary, the standing of the attorney, the benefit derived from the service rendered and the ability of the client to pay, as well as the amount of money required.").

Contingent fee contracts are just that – contingent. Such contracts are contingent on the case outcome and not based on hourly work done. More importantly though, in trying to determine what a law firm has done regarding a particular case, individual time records miss the point. Reviewing individual case time records in successful cases will almost always undervalue the work done by the law firm and the risk undertaken—particularly in this litigation. Here, where the contractual contingency fee amount has already been substantially limited to account for class action efficiencies, to invite, let alone entertain, case-by-case arguments for further reductions based upon requiring plaintiffs' counsel to justify their contingency fee amount via detailed time records would undermine the ability of former NFL players—and all potential plaintiffs—to obtain competent counsel. The enforceability of contingency-fee agreements should not be further undermined by individual, *post hoc* time record cross-checks, as without

contingency fees, most individuals could not access the legal system, no matter how compelling their claims.

Accordingly, individual-case time records should not be requested or considered in determining lien disputes as to attorneys' fees in this case.

Dated: November 13, 2018 Respectfully submitted,

| /s/ Steven C. Marks<br>Steven C. Marks, Esq.<br>Stephen F. Rosenthal, Esq.<br>Ricardo M. Martinez-Cid, Esq.<br>Matthew P. Weinshall, Esq.<br>**PODHURST ORSECK, P.A.**<br>One S.E. 3rd Ave, Suite 2300<br>Miami, Florida 33131<br>Tel.: (305) 358-2800<br>smarks@podhurst.com<br>srosenthal@podhurst.com<br>rmartinez-cide@podhurst.com<br>mweinshall@podhurst.com | /s/ Gene Locks<br>Gene Locks, Esq.<br>David Langfitt, Esq.<br>**LOCKS LAW FIRM**<br>601 Walnut Street, Suite 720<br>Philadelphia, PA 19106<br>Tel.: (215) 893-3434<br>glocks@lockslawpa.com<br>dlangfitt@lockslaw.com |
| --- | --- |
| /s/ Anthony Tarricone<br>Anthony Tarricone, Esq.<br>Evan Katin-Borland, Esq.<br>**KREINDLER & KREINDLER LLP**<br>750 Third Avenue<br>New York, NY 10017<br>Tel.: (212) 973-3479<br>atarricone@kreindler.com<br>ekatinborland@kreindler.com | /s/ Michael L. McGlamry<br>Michael L. McGlamry, Esq.<br>**POPE McGLAMRY**<br>3391 Peachtree Road, Suite 300<br>PO Box 19337 (31126-1337)<br>Atlanta, GA 30326<br>mmcglamry@pmkm.com |
| /s/ Derriel C. McCorvey<br>Derriel C. McCorvey<br>**McCORVEY LAW, LLC**<br>102 Versailles Blvd. Suite 620<br>Lafayette, LA 70501<br>Tel.: (337) 291-2431<br>derriel@mccorveylaw.com | /s/ Charles Zimmerman<br>Charles Zimmerman<br>**ZIMMERMAN REED LLP**<br>1100 IDS Center, 80 South 8th Street<br>Minneapolis, MN 55402<br>Tel.: (612) 341-0400<br>charles.zimmerman@zimmreed.com |