IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO: | Hon. Anita B. Brody |
| *A.H., et al. v. National Football League, et al.* | No. 18-464 |
| *Scroggins, et al. v. National Football League* | No. 16-2058 |

**February 14, 2019**                                                                                                  **Anita B. Brody, J.**

<u>MEMORANDUM</u>

Defendants the National Football League, the National Football League Foundation, and the NFL Properties (LLC) (collectively, the "NFL Parties") move to dismiss the Complaint filed by Plaintiff A.H.[1] A.H. brings a claim against the NFL Parties for loss of consortium related to injuries her father, Aaron Hernandez ("Hernandez"), sustained while playing professional football for the NFL. The NFL Parties contend that A.H.'s claim should be dismissed because she is a class member in the NFL Concussion Settlement (the "Settlement") and did not opt out

---

[1] Because A.H. is a minor, she will be referred to by her initials.

1

of the class. Consequently, her claim is precluded by the Settlement under the doctrine of res judicata. A.H. argues that because Hernandez is not a "Retired Football Player" within the meaning of the Settlement, A.H. is not a Class Member and her claim is not precluded by the Settlement. A.H. also argues that it is improper to determine claim preclusion on the NFL Parties' Motion to Dismiss, because A.H. has a pending motion to remand and because the parties dispute relevant facts. I will grant the Motion.[2]

I. **BACKGROUND**

A. **The NFL Head Concussion MDL**

In July 2011, retired football players began filing lawsuits against the NFL Parties. These suits alleged, among other things, that the NFL Parties breached their duties to the players by failing to take reasonable actions to protect players from the chronic risks created by concussive and sub-concussive head injuries and that the NFL Parties concealed those risks from those players. Since that time, more than 5,000 former players and their family members have filed over 300 substantially similar lawsuits. These lawsuits have been consolidated before me as a multidistrict litigation ("NFL Concussion MDL"), pursuant to 28 U.S.C. § 1407. *See* MDL Panel Transfer Order, Jan. 31, 2012, ECF No.1 (*NFL Concussion MDL*).

---

[2] The NFL Parties' have also moved to dismiss the complaints filed by Tracy Scroggins and Rose Stabler. After the NFL's motion was filed, Scroggins voluntarily dismissed his claims. *See* ECF No. 18, Oct. 9, 2018 (*Scroggins, et al. v. NFL*). Stabler did not respond to the NFL Parties' motion or to a subsequent order to show cause why the motion should not be granted as unopposed. *See* ECF No. 19, Oct. 22, 2018 (*Scroggins, et al. v. NFL*). The NFL Parties' motion will be denied as moot with respect to Scroggins and granted as unopposed with respect to Stabler.

B. **The Class Action Settlement**

On July 7, 2014, I entered an order granting preliminary approval of the Settlement between the NFL Parties and a proposed Settlement Class. Order ¶¶ 1-2, ECF No. 6084 (*NFL Concussion MDL*). The proposed Class consisted of three groups of people:

- All living NFL Football Players who, prior to the date of the Preliminary Approval and Class Certification Order [July 7, 2014], retired, formally or informally, from playing professional football with the NFL or any Member Club . . . or were formerly on any roster . . . of any such Member Club or league and who no longer are under contract to a Member Club and are not seeking active employment as players with any Member Club, whether signed to a roster or signed to any practice squad, developmental squad, or taxi squad of a Member Club ("Retired NFL Football Players");

- Authorized representatives . . . of deceased or legally incapacitated or incompetent Retired NFL Football Players ("Representative Claimants"); and

- Spouses parents, children who are dependents, or any other persons who properly under applicable state law assert the right to sue independently or derivatively by reason of their relationship with a Retired NFL Football Player ("Derivative Claimants").[3]

Order ¶¶ 2(a), ECF No. 6084 (*NFL Concussion MDL*).

The Settlement contained a broad release of claims by Class Members against the NFL Parties. Each Class Member released any claims against the NFL Parties that "could have been asserted in the Class Action Complaint or any other Related lawsuit." Settlement Agreement § 18.1(a)(i). The Settlement explicitly released, among others, claims "arising out of, or relating to, head, brain, and/or cognitive injury, as well as any injuries arising out of, or relating to, concussions and/or subconcussive events;" claims "arising out of, or relating to, CTE [Chronic Traumatic Encephalopathy]"; and claims "arising out of, or relating to, loss of support, services,

---

[3] A.H. is a Derivative Claimant. *See infra* Section III(C)(1).

consortium, companionship, society, or affection, or damage to familial relations." Settlement Agreement §§ 18.1(a)(ii)-(iv).[4]

The preliminary approval order also directed the implementation of the notice program proposed by the parties. The notice program informed Class Members of their rights under the Settlement and told them that if they did not affirmatively opt out of the Settlement by October 14, 2014, they would be bound by the Settlement's release. Class Members had approximately 90 days to decide whether to opt out.

On April 22, 2015 (as amended on May 8, 2015), I issued a Final Order and Judgment approving the Settlement and certifying the Settlement Class. I found that the notice program complied with both Rule 23 and due process. *See In re NFL Players' Concussion Injury Litig.*, 307 F.R.D. 351, 383-86 (E.D. Pa. 2015) (finding that the Long-Form Notice "was written in plain and straightforward language" and "apprised all Class Members of . . . the opportunity to opt out the Settlement; and the binding effect of a class judgment on Class Members"). The Third Circuit affirmed the Final Order and Judgment, including my finding that the notice program complied with both Rule 23 and due process requirements. *See In re NFL Players' Concussion Injury Litig.*, 821 F.3d 410, 535-36 (3d Cir. 2016) (observing that "[t]he notice . . . outlined the rights of players to . . . potentially opt out. If a retired player chose to opt out, he would not benefit from the settlement but would not release his claims against the NFL.").

C.  **The Settlement's Notice Program**

The notice program included direct individual notice to identifiable Retired NFL Football Players and their heirs and paid publication in various media sources. The Notice was publicized through full-page advertisements in *Ebony, People, Sports*

---

[4] This release was expressly incorporated into my Final Order and Judgment approving the Settlement. *See In re NFL Players' Concussion Injury Litig.*, 307 F.R.D. 351, 425 (E.D. Pa. 2015).

*Illustrated,* and *Time*; thirty-second television commercials on ABC, CBS, CNN, and other television stations; and ads on popular internet sites. The Claims Administrator also established a Settlement Website containing links to the Long-Form Notice and the Settlement and providing answers to frequently asked questions. Plaintiffs' notice expert estimated that this plan would reach approximately 90% of Class Members. Additionally, the formal notice program was supplemented by the extensive news coverage of the NFL concussion litigation and the Settlement.

Both a Long-Form Notice and Summary Notice were distributed, and both were written in plain and straightforward language. The Long-Form Notice included the full definition of Retired NFL Football Players, and specified that the Class included players who "were formerly on any roster . . . and no longer are under contract to a Member Club and are not seeking active employment as a player with any Member Club . . . ." Long-Form Notice at 8. In addition, the Long-Form Notice stated that "the Settlement Class does not include current NFL Players." *Id*. The Notices also explicitly stated that Derivative Claimants—including children—were included in the Settlement Class. *See* Summary Notice at 1 ("The Settlement Class includes immediate family members of retired players . . . ."); Long-Form Notice at 6 ("The Settlement may affect your rights if you are . . . an individual with a close legal relationship with a retired player of those leagues, such as a spouse, parent, or child."); Long-Form Notice at 8 ("This Settlement Class includes . . . [s]pouses, parents, dependent children, or any other persons who . . . assert the right to sue independently or derivatively by reason of their relationship with a living or deceased Retired NFL Football Player.").

Among other things, the notice program informed class members that if they did not individually opt out of the Settlement before the deadline (October 14, 2014), they would lose

their right to sue the NFL Parties. *See, e.g.,* Summary Notice at 1 ("All Settlement Class members will be bound by the Settlement and give up the right to sue the NFL individually. If you want to keep your right to sue the NFL, you must exclude yourself from the class by **October 14, 2014**."); Long-Form Notice at 2 ("[opting out] is the only option that allows you to participate in any other lawsuit against the NFL Parties about the claims in this case . . . .").

The Notice materials repeatedly directed readers to sources that could answer any questions they had about the Settlement. The Long-Form Notice directed readers asking "What if I am not sure whether I am included in the Settlement Class?" to call a toll-free support number, visit the Settlement website, send questions to a P.O. Box, or consult their own attorney. Long-Form Notice at 9. Both the Summary Notice and the Long-Form Notice contained a banner at the bottom of each page instructing those with "Questions?" to call the toll-free support number or visit the Settlement Website. The Long-Form Notice also included five warnings that the Long-Form Notice was only a summary, and that readers should look to the Settlement for specific details. *See* Long-Form Notice at 2, 6, 7, 15, 19 ("This Notice is only a summary of the Settlement Agreement and your rights. You are encouraged to carefully review the complete Settlement Agreement [on the Settlement Website]."). Finally, the Long-Form Notice included contact information for class counsel. *See* Long-Form Notice at 23.

### D. Hernandez and A.H.

Aaron Hernandez played football for the New England Patriots, an NFL team, for three seasons starting in 2010. Compl. ¶2. The Patriots released him from his contract in 2013. Pl.'s Mem. in Opp'n at 2. He did not play professional football after his contract was terminated. *See* Compl. ¶ 337. On August 22, 2013, a grand jury for the Bristol County Superior Court in Massachusetts returned a six-count indictment for Hernandez. The charges included murder and

various firearm offenses. *Com. v. Hernandez*, No. 1373CR00983, Dkt. No. 1 (Mass. Super. Ct.) On September 6, 2013, Hernandez was arraigned and pled not guilty to all six charges. *Id*. at Dkt. No. 3.1 Hernandez was held without bail until his trial. *Id.* at Dkt No. 7. On July 22, 2014, the Superior Court scheduled Hernandez's trial for January 20, 2015. *Id*. at Dkt. No. 93. From January 20, 2015 to April 15, 2015, Hernandez's jury trial was held in the Bristol County Superior Court. *Id*. at Dkt. Nos. 257-339. On April 15, 2015, the jury returned a verdict of guilty on the murder charge and two of the firearm charges. *Id*. at Dkt. No. 339. Hernandez was sentenced to life without the possibility of parole. *Id*. On June 25, 2015, Hernandez's post-verdict motion "for required finding of not guilty on counts 1 and 2 or for other Relief" was denied. *Id*. at Dkt. No. 381. On April 14, 2017, Hernandez was found not guilty on another, unrelated, murder charge. *Com. v. Hernandez*, No. 1484CR10417, Dkt. No. 264 (Mass. Super. Ct.) On April 19, 2017, Hernandez committed suicide. Compl. ¶341. On August 17, 2017, Boston University's School posthumously diagnosed Hernandez with CTE. *Id*.

A.H., Hernandez's minor daughter, was born on November 6, 2012. Compl. ¶¶ 22, 347. She lives with her mother, Shayanna Jenkins. *Id*. at ¶ 22.

### E. The Present Litigation

On October 16, 2017, A.H. filed the present lawsuit in Massachusetts Superior Court. She brings a loss of parental consortium claim against the NFL Parties,[5] alleging that, as a result of the NFL Parties' civil conspiracy, fraudulent concealment, and negligence, A.H. was "deprived of the love affection, society, and companionship of her father while he was alive." Compl. ¶¶348-351.

---

[5] A.H. also names Riddell Inc., the manufacturer of the helmets worn by NFL football players, and related entities as defendants. Because only the NFL Parties have moved to dismiss A.H.'s claims, I will not address A.H.'s claims against the Riddell Defendants.

On November 14, 2017, the NFL Parties timely removed the lawsuit to the U.S. District Court for the District of Massachusetts. Notice of Removal, ECF No. 1-1 (*A.H. v. NFL*). On February 6, 2018, the Judicial Panel on Multidistrict Litigation transferred both actions to this Court as part of the NFL Concussion MDL, finding that the actions shared numerous questions of fact with those already pending in the MDL. *See* Original R. at 3-5, ECF No. 1 (*A.H v. NFL*). On July 18, 2018, A.H. filed a Motion to Remand the case back to Massachusetts state court. Mot. to Remand, ECF No. 5 (*A.H. v. NFL*). On August 17, 2018, pursuant to a briefing schedule ordered by this Court, the NFL Parties filed the present Motion to Dismiss. Mot. to Dismiss, ECF No. 10 (*A.H. v. NFL*).

## II.   LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

To survive dismissal, a complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must engage in the following analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there

are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (quoting *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011)).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a 'document *integral to or explicitly relied* upon in the complaint' may be considered . . . ." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). Thus, a court may consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### III.  DISCUSSION

The NFL Parties argue that A.H.'s claims should be dismissed because she is a Settlement Class Member who failed to timely opt out, and thus her claims are precluded by the Settlement under the doctrine of res judicata. A.H. argues (1) that the Court cannot decide claim preclusion before addressing her pending motion to remand; (2) that claim preclusion cannot be determined on this motion to dismiss because determining whether A.H.'s claim is precluded requires factual determinations; and (3) that A.H. is not a Settlement Class Member because her father was not a Retired Football Player under the terms of the Settlement.

### A. It is Proper to Decide Claim Preclusion Before Addressing Subject Matter Jurisdiction

A district court need not determine whether it has jurisdiction over a case before finding that the case is barred by claim preclusion. While "a federal court may not rule on the merits of

an action without first ascertaining whether it has subject matter jurisdiction to do so[,]" dismissing a case on claim preclusion grounds is "not technically a judgment on the merits." *Hoffman v. Nordic Nats., Inc.*, 837 F.3d 272, 277 (3d Cir. 2016) (citing *Comm'r of Internal Revenue v. Sunnen*, 333 U.S. 591, 597 (1948)).  Therefore, even though A.H. has a pending motion to remand, I may determine claim preclusion before addressing subject matter jurisdiction.

### B. It is Proper to Decide Claim Preclusion on this Motion to Dismiss

Res judicata may afford the basis for a Rule 12(b)(6) dismissal when the defense is "'apparent on the face of the complaint.'" *Hoffman*, 837 F.3d at 280 (quoting *Rycoline Prods.*, 109 F.3d 883, 886 (3d Cir. 1997)).  "[T]his means simply that the district court is limited to the materials properly before it on a motion to dismiss, which may include public records and materials embraced by the complaint." *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir. 2008). *See also Weinberg v. Scott E. Kaplan, LLC*, 699 F. App'x 118, 120 n.3 (3d Cir. 2017) ("With respect to affirmative defenses, such as res judicata, dismissal is proper if application of the defense is apparent on the face of the complaint; we may also look beyond the complaint to public records, including judicial proceedings."); *Hoffman*, 837 F.3d at 280 and n.52 (observing that public records, including prior court proceedings, can be considered by a court determining claim preclusion on a 12(b)(6) motion).

"The ultimate purpose of this rule is to avoid factual contests at the motion to dismiss stage." *Hoffman*, 837 F.3d at 280. Thus, even if claim preclusion is not apparent from the complaint itself and public records, it may nonetheless be decided on a motion to dismiss when there are no factual disputes, and where a district court is deciding the preclusive effect of its own prior decision. *Id*.

Here, it is proper to decide claim preclusion on the NFL Parties' Motion to Dismiss because claim preclusion is apparent on the face of the complaint. The only facts relevant to claim preclusion are the dates of Hernandez's confinement and the content of the Settlement Agreement, both of which are public records. Nothing else is needed to determine claim preclusion, because A.H.'s class membership status can be determined solely from these sources and from the Complaint. *See infra* Section III(C)(1)(a).

Even if claim preclusion were not apparent on the face of the complaint, it would be proper to decide claim preclusion at this stage. There are no disputes of relevant facts, and the NFL Parties' motion asks this Court to decide the preclusive effect of its own prior decision. Under either approach endorsed by the Third Circuit, it is proper to decide claim preclusion on the NFL Parties' Motion to Dismiss.

### C. <u>Res Judicata Bars A.H.'s claims</u>

Claim preclusion, or res judicata, bars a plaintiff's claim when there has been: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Duhaney v. Attorney Gen.*, 621 F.3d 340, 347 (3d Cir. 2010) (internal quotation marks omitted). "It is now settled that a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action. This is true even though the precluded claim was not presented, and could not have been presented, in the class action itself." *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F. 3d. 355, 366 (3d Cir. 2001). Applying res judicata and claim preclusion as a consequence of class action settlement agreements "serves the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that prevent

relitigation of settled questions at the core of a class action." *Id.* (internal quotation marks omitted).

The NFL Concussion Settlement was a final judgment on the merits. *See Rein v. Providian Fin. Corp.*, 270 F.3d 895, 903 (9th Cir. 2001) ("A judicially approved settlement agreement is considered a final judgment on the merits."); *see also Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008) (same). The NFL Parties are a named party to the Settlement Agreement. *See* Settlement Agreement Section 2.1(bbbb)(i).

Therefore, the remaining issues are (1) whether A.H. is a party bound by the Settlement, i.e. whether the Settlement Agreement and this lawsuit involve the same parties or their privies; and (2) whether A.H.'s cause of action against the NFL Parties and the Settlement are the same cause of action, i.e. whether this suit is based on the same cause of action

### 1. A.H. is a Derivative Claimant and a Class Member

A final judgment in a properly conducted class action can preclude the claims of all class members who do not timely opt out of the class action, even if those class members were not named parties to the original action. *See Smith v. Bayer Corp.*, 564 U.S. 299, 314 (2011) (noting that "unnamed members of a class action [may] be bound, even though they are not parties to the suit"); *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984) ("[U]nder elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation."). This Court's certification of the class in the NFL Concussion Class Action and approval of the Settlement Agreement were both affirmed by the Third Circuit. *In re National Football League Players Concussions Injury Litig.*, 821 F.3d 410 (3d Cir. 2016). The Third Circuit specifically found that the Settlement's notice program complied with Rule 23 and due process. *See id.* at 435 (agreeing with this

Court's finding that the notice was "the best . . . practicable under the circumstances" and was "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"). Therefore, because the NFL Concussion Class Action was properly conducted, all Class Members are bound by the Settlement Agreement and subject to its preclusive effect.

The Settlement Agreement defines the Settlement Class as "all Retired NFL Football Players, Representative Claimants and Derivative Claimants" who do not "timely and properly exercise the right to be excluded from the Settlement Class." Settlement Agreement §§ 1.1(a-b). The Settlement Agreement defines "Derivative Claimants" as "spouses, parents, children who are dependents, or any other persons who properly under applicable state law assert the right to sue independently or derivatively by reason of their relationship with a Retired NFL Football Player or deceased Retired NFL Football Player." Settlement Agreement § 2.1(ee).

A.H. asserts a claim against the NFL Parties "by reason of [her] relationship" with Hernandez, her father, because she brings a claim for loss of parental consortium.[6] A.H. did not opt out of the Settlement. *See* NFL Concussion Settlement: Opt Out Report, Ex. 1 at 5, (Nov. 3, 2014), ECF No. 6340-1 (*NFL Concussion MDL*) (listing timely opt outs). Therefore, if Hernandez was a Retired Football Player under the terms of the Settlement, A.H. is a Settlement Class Member.[7]

---

[6] A.H. suggests that she is not a Derivative Claimant because loss of consortium is an independent, rather than derivative, cause of action under Massachusetts law. Pl.'s Mem. in Opp'n at 10. However, the Settlement Agreement specifically includes parties who "assert the right to sue independently" for loss of consortium in the definition of Derivative Claimants. Settlement Agreement § 2.1(ee).

[7] To the extent that A.H. is arguing that she is not bound by the Settlement because she is a minor, courts routinely certify classes consisting entirely of children. *See, e.g. DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1201 (10th Cir. 2010); *Marisol A. v. Giuliani*, 126 F.3d 372, 379-80 (2d Cir. 1997). A.H. has cited to no case law suggesting that minors cannot be bound by class action settlements. In addition, the Settlement Agreement explicitly named "children" as members of the Class, and the Third Circuit was

### a. Hernandez is a Retired NFL Football Player Within the Meaning of the Settlement

The Settlement Agreement defines "Retired NFL Football Players" as:

> all living NFL Football players who, prior to the date of the Preliminary Approval and Class Certification Order [July 7, 2014], [1] retired, formally or informally, from playing professional football with the NFL or any Member Club . . . or [2] were formerly on any roster, including preseason, regular season, or postseason, of any such Member Club or league and who no longer are under contract to a Member Club and are not seeking active employment as players with any Member Club, whether signed to a roster or signed to any practice squad, developmental squad, or taxi squad of a Member Club.

Settlement Agreement § 2.1(ffff). The Settlement definition of "Retired NFL Football Players" thus encompasses not only players who were formally or informally retired, but also those who—at the time of preliminary approval and preliminary class certification—had (1) formerly been on an NFL roster, (2) were no longer under contract to an NFL team, and (3) were not seeking active employment as players with any NFL team.

The parties do not contest that, as of July 7, 2014—the date of the preliminary approval and class certification order—Hernandez had formerly been on an NFL roster and was no longer under contract to an NFL team. Hernandez played football for the New England Patriots for three seasons starting in 2010. Compl. ¶2. The Patriots released him from his contract in 2013.[8] Pl.'s Mem. in Opp'n at 2. He did not play professional football after his contract was terminated. *See* Compl. ¶ 337 (noting that Hernandez played football for approximately 19 years beginning in approximately 1995).

---

aware of this when it affirmed the certification of the class, the approval of the Settlement, and the notice program. *See In re National Football League Players Concussions Injury Litig.*, 821 F.3d at 425 (noting that "children" are included in the definition of "Derivative Claimants").

[8] A court deciding a motion to dismiss may consider concessions made by the plaintiff in her response to a motion to dismiss. *Arturet-Velez v. R.J. Reynolds Tobacco Co.,* 429 F.3d 10, 13 n.2 (1st Cir. 2005).

The crux of the issue is whether Hernandez was "seeking active employment" as an NFL football player as of July 7, 2014. He was not. On this date, Hernandez had been imprisoned—without bail—for nearly a year, was awaiting trial for murder and related gun charges, and was facing a possible sentence of life without parole. The trial did not begin until January 2015. These facts are squarely inconsistent with "seeking active employment" with an NFL team.

To be "seeking" something requires an individual to engage in active steps toward the object he seeks. To merely wish for or intend something is distinct from actually seeking it: a seeker must "go in search of "or "try to bring about" the thing he seeks. *See, e.g.*, OED Online, http://www.oed.com/view/Entry/174794 (last visited February 13, 2019) (defining to "seek" as "To go in search or quest of; to try to find, look for" and "To try to obtain (something advantageous); to try to bring about or effect (an action, condition, opportunity, or the like)").

As an initial matter, A.H. has not pled that Hernandez was "seeking active employment" as of July 7, 2014. Nor has A.H. pled that Hernandez was taking any active steps amounting to "seeking" employment as an NFL player, such as signing with an agent, making it known to teams that he was available to be signed, engaging in active negotiations with teams, and/or trying out for teams. It is plaintiff's burden to allege sufficient facts in the complaint to "raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555. A.H. has not met this burden. All of the relevant facts in the Complaint and in public records show that Hernandez could not have been seeking active employment as an NFL football player on July 7, 2014, because he was incarcerated and awaiting trial.[9]

---

[9] A.H. does cite to a statement from a purported public record suggesting that Hernandez intended to return to football at some point in the future. *See* Pl.'s Mem in Opp'n at 3. The statement, which is from a source claiming to be a close friend of Hernandez's, says that "since Friday's verdict" Hernandez had "been talking about the NFL and going back to play even if it wasn't with the Pats." A.H. states that this

A.H. does allege, in her response to the NFL Parties' Motion to Dismiss, that Hernandez "had hardly abandoned his intent to keep playing NFL football" and that he "actively voiced an intent to return to the NFL." Pl.'s Mem in Opp'n at 4-5. But "voicing an intent" to be employed at some future date does not equate "seeking active employment." Even if this were alleged in the Complaint—which it was not—it is immaterial to whether Hernandez is a "Retired Football Player." The Settlement does not require that a Retired Football Player *permanently* ceased "seeking active employment." It requires that, as of July 7, 2014, a Retired Football Player was not *at that time* seeking active employment. Hernandez's status as a "Retired Football Player" is determined only by whether or not he was "seeking active employment" as of July 7, 2014. Because he was not—and could not have been—he is a "Retired Football Player" under the terms of the Settlement.

It makes sense that A.H. has not alleged that Hernandez was "seeking active employment" as of July 7, 2014, because it would have been impossible for him to do so. While he was incarcerated, Hernandez could not have been "going in search of" or "trying to bring about" active employment as a professional football player. He was being held without bail and awaiting trial on a charge carrying a sentence of life without parole. Indeed, as of July 7, 2014, Hernandez did not even know when his trial would take place. (His trial was not scheduled until two weeks after the Preliminary Approval Date.) Without knowing when, if ever, he would be able to be employed as an NFL player (a job which undeniably requires physical presence, and

---

statement is from an unidentified "Massachusetts State Department of Corrections record" but does not provide a citation to the source of the excerpt or provide any details that could be used to identify or authenticate this statement. Even if the Court could consider this statement, however, it has no bearing on whether Hernandez is a Retired Football Player, because it is unrelated to whether Hernandez was "seeking active employment" as of July 7, 2014.

16

which cannot be performed by an incarcerated person), Hernandez could not have been seeking active employment.[10]

Because A.H. did not plead that Hernandez was taking active steps towards employment as an NFL football player as of July 7, 2014, and because it would have been impossible for Hernandez to do so while indefinitely incarcerated, Hernandez is a Retired Football Player within the meaning of the Settlement. This makes A.H., who brings her loss of consortium claim against the NFL Parties by virtue of her relationship with Hernandez, a Derivative Claimant.[11]

## D. A.H.'s Action Against the NFL Parties and the Settlement are the Same Cause of Action

Because the NFL Parties were parties to the Settlement, A.H. is a Class Member bound by the Settlement, and the Settlement was a final judgment on the merits, the only remaining issue is whether A.H.'s action and the Settlement are the same cause of action.

The "bounds of preclusion after a settlement" are determined by the "express terms of a settlement agreement, not merely the terms of the judgment." *Toscano*, 288 F. App'x at 38. *See also In re Prudential*, 261 F. 3d. at 366 (examining the text of a settlement release to determine its claim preclusive effect). In applying a settlement for preclusive effect, "a court may permit

---

[10] A.H. argues that this conclusion renders the term "seeking active employment" surplusage. Pl.'s Mem. in Opp'n at 8-9. This is not the case. Plaintiff is correct that not all players who were not under contract on July 7, 2014 are Class Members. A former player who was not under contract in July 2014, but who was seeking active employment at that time by taking concrete steps to return to professional football would *not* be Class Member. Hernandez is a Retired Class Member not only because he was not under contract on July 7, 2014 but also because, crucially, he was not seeking active employment at that time.

[11] As a Derivative Claimant, A.H. could only recover under the Settlement if Hernandez (or his authorized representative under applicable law acting as a Representative Claimant) timely registered for the Settlement, submitted evidence of a Qualifying Diagnosis, and received a Monetary Award. A.H. would be eligible to receive one percent of that award. *See* Settlement Agreement §§ 7.2-7.3. None of these events occurred.

17

the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action . . . ." *TBK Partners Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982). *See also Freeman v. MML Bay State Life Ins. Co.*, 445 F. App'x 577, 579 (3d Cir. 2011) ("The key inquiry is whether the factual predicate for future claims is identical to the factual predicate underlying the settlement agreement.").

The Settlement release plainly encompasses A.H.'s claims. It released all claims that "could have been asserted in the Class Action Complaint or any other Related lawsuit," and explicitly released claims arising out of or related to head injuries, claims arising out of or related to CTE, and claims for loss of consortium. Settlement §§ 18.1(a)(i-iv). A.H.'s complaint alleges these precise claims: that Hernandez "experienced repeated traumatic head impacts" during his professional football career, that these head injuries contributed to Hernandez's development of CTE, and that the NFL Parties' conspiracy, negligence, and fraud resulted in Hernandez "suffer[ing] damages that prevented him from rendering love, affection, society, and companionship to his daughter." Compl. at ¶¶ 339-348. The cause of action A.H. asserts (loss of consortium) is one of the causes of action released by the Settlement. In addition, the factual predicate to A.H.'s claims is identical to the factual predicate underlying the settlement agreement: whether the NFL Parties knew of the risks created by concussive and sub-concussive head injuries, failed to take reasonable action to protect players from those risks, and fraudulently concealed those risks from players.

The Settlement's release was approved by this Court and the Third Circuit. It is consistent with other releases given preclusive effect by the Third Circuit. *See, e.g. In re Prudential*, 261 F.3d at 367; *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1562 (3d Cir.

1994); *see also Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 494 (3d Cir. 2017) ("It is not unusual for a class settlement to release all claims arising out of a transaction or occurrence.").

Allowing A.H.'s suit to proceed would be allowing the "relitigation of settled question at the core" of the NFL Settlement. Because A.H.'s claim is squarely within the scope of the Settlement's release, it is the "same cause of the action" as the Settlement, and her claim is precluded.

### IV. CONCLUSION

A.H. is a Derivative Claimant—and thus a Settlement Class Member—because she brings a loss of consortium claim by virtue of her relationship with her father, who is a Retired Football Player under the terms of the Settlement Agreement. Because she is a party to the Settlement and because her claim is the same cause of action as the Settlement Agreement, her claim is precluded by res judicata. The NFL Parties' Motion to Dismiss A.H.'s Complaint will be granted.

s/Anita B. Brody

_____
ANITA B. BRODY, J.

COPIES VIA ECF 2/14/2019