**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE:  NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | : : : : | No. 2:12-md-02323-AB |
| | : | MDL No. 2323 |
| | : | Hon. Anita B. Brody |
| THIS DOCUMENT RELATES TO: | : : | |
| ALL ACTIONS | : : | |
| | : | |

## <u>CLAIMS ADMINISTRATOR STATUS REPORT NO. 4</u>

### I.     <u>INTRODUCTION</u>

1.     ***The Purpose and Scope of this Status Report.***  BrownGreer PLC, the Court-appointed Claims Administrator of the Settlement Program established under the Class Action Settlement Agreement in this litigation, submits this Status Report No. 4 to apprise the Court on the implementation of its duties as the Claims Administrator and developments since Status Report No. 3 filed on November 1, 2018 (Document 10318).  Our earlier Status Reports are posted to the Settlement Website (under "Documents," click "Other Court Filings").  We do not repeat here what we covered in them.  All numbers and other information in this Status Report No. 4 are as of February 11, 2019.  We will cover developments after that date in future reports.

### II.     <u>MONETARY AWARD CLAIMS</u>

2.     ***Total Claims Received.***  Section 3 of the Summary Report on the Settlement Website shows the total Monetary Award claims submitted.  We have received 594 new Monetary Award claims since Status Report No. 3, bringing the total to 2,644 Monetary Award

Claim Packages from Retired NFL Football Players and Representative Claimants (15.3% of registered Players (or their Representative Claimants)).  The February 6, 2019 Claim Package submission deadline for pre-Effective Date diagnoses has passed.  We received 328 new Monetary Award claims from February 4 through February 6, 2019, of which 208 (63%) were for pre-Effective Date diagnoses and one was for a post-Effective Date diagnosis; the other 119 new claims that came in over those three days did not tell us what diagnosis date they assert and we will not know that until we review these claims and go back to the Settlement Class Members to ask for more information.  From January 1 to February 3, 2019, we had received 152 new claims, which was an average of about 32 claims per week.  Before the spike in claims leading up to the deadline, we had been receiving about 10 claims per week.  Of all 2,644 Monetary Award claims we received, 1,890 (71%) rest on pre-Effective Date diagnoses, while 472 (18%) are for post-Effective Date diagnoses, of which 88 (19% of the 472) were made in the Baseline Assessment Program ("BAP") and 384 (81% of the 472) were made by Qualified MAF Physicians.  We highlight the asserted Qualifying Diagnoses and diagnosis dates in Sections 4 and 5 of the Summary Report on the Settlement Website.  We also show the current status of all Monetary Award claims based on the last notice or action taken in Section 8 of the Summary Report on the Settlement Website.

3.   *Monetary Awards and Payments.*

(a) We show Monetary Awards and payments in Sections 7 and 11 of the Summary Report on the Settlement Website.  We have issued Notices of Monetary Award for 779 claims totaling $618,768,460.[1]  We request funding from the NFL Parties by the 10th of each month for claims that have received a Notice of Monetary Award for which the appeals

---

[1] The amount of these 779 Notices of Monetary Award includes the 1% of Awards allocated to eligible Derivative Claimants.  See Paragraph 14 of this Status Report.

process is complete (or the appeal deadline has passed with no appeal) and that are not in Audit.[2]  Of the 779 claims with Notices of Monetary Award, 702 reached the point of funding from the NFL Parties, which had deposited $499,393,980 into the Monetary Award Fund for 610 claims and not yet funded 92 claims because they were within the funding deadline for the January and February Funding Requests.  Of the 610 Monetary Award claims for which the NFL Parties had deposited funds, the Program paid 569 claims for a total of $425,221,431.  The remaining 41 funded claims were not yet ready for payment when we submitted the most recent Disbursement Request; some have not been paid because they have been stayed by the Court's November 16, 2018 (Document 10337) or December 10, 2018 (Document 10356) Order, some have holds preventing payment, some do not have a submitted Payment Election Form or SWS-5, and some have holdbacks for potential Liens which, together with the 5% deduction for the Common Benefit Fund, exceeded the gross award amount.  For the 569 Retired NFL Football Players and Representative Claimants who have been paid, the Trustee sent $23,175,624 (5% of those Monetary Awards), to the Attorneys' Fees Qualified Settlement Fund, in accordance with the Court's June 27, 2018 Order Regarding the Common Benefit Fund (Document 10104).  Finally, we are required to withhold money for unresolved Liens and for third-party funders that may accept rescission of prohibited assignments (as described further in Paragraph 15).  Table 1 shows the distribution of the $425,221,431 paid by the Settlement Program and compares those totals to those reported in Status Report No. 3:

---

[2] We submitted the January 2019 Funding Request on January 14, 2019, to allow the Special Masters to set the annual inflation adjustment based on data for the full year before we made the request.  We sent the February 2019 Funding Request on February 11, 2019, because the 10th fell on a Sunday.  The NFL Parties have 30 days from the date of the Funding Request to fund the amount requested.

| Table 1 | MONETARY AWARD PAYMENTS | | | |
|---|---|---|---|---|
| | **PAID TO** | **AS OF 10/15/18** | **AS OF 2/11/19** | **CHANGE** |
| 1. | **Settlement Class Members** (or their lawyers on their behalf, if represented) | $344,361,427 | $416,958,080 | +$72,596,653 |
| 2. | **Medical Lienholders** (on behalf of Settlement Class Members to the Lien Resolution Administrator to resolve medical Liens when a final Lien resolution amount is determined) | $2,542,909 | $2,771,502 | +$228,593 |
| 3. | **Non-Medical Lienholders** (on behalf of Settlement Class Members to lienholders to resolve non-medical Liens) | $540,239 | $3,301,972 | +$2,761,733 |
| 4. | **Third-Party Funders** (on behalf of Settlement Class Members to Third-Party Funders who have accepted rescission of and/or terminated prohibited assignments that they had entered into with Settlement Class Members) | $862,805 | $2,189,876 | +$1,327,071 |
| 5. | **Totals** | **$348,307,380** | **$425,221,431** | **+$76,914,051** |

(b) Table 2 shows the changes in figures for payments and claims with Notices of Monetary Award since Status Report No. 3:

| Table 2 | MONETARY AWARD CHANGES SINCE STATUS REPORT NO. 3 | | | | | |
|---|---|---|---|---|---|---|
| | **STATUS** | **HOW MANY** | | | **AMOUNT** | | |
| | | **AS OF 10/15/18** | **AS OF 2/11/19** | **CHANGE** | **AS OF 10/15/18** | **AS OF 2/11/19** | **CHANGE** |
| 1. | Notice of Monetary Award Issued | 649 | 779 | +130 | $569,314,153 | $618,768,460 | +$49,454,307 |
| 2. | Paid | 419 | 569 | +150 | $348,307,380 | $425,221,431 | +$76,914,051 |

Of the 779 claims with Notices of Monetary Award, 143 (18%) have been appealed (112 by the NFL Parties and 31 by the Settlement Class Member).  This is 25 more appeals (12 by the NFL Parties and 13 by Settlement Class Members) than we described in Status Report No. 3.

4

We show the status of appealed Monetary Award claims in Section 9 of the Summary Report on the Settlement Website.

    4.    *Monetary Award Claims Reviewed by the AAP.*

(a) There are 43 claims in or still requiring Appeals Advisory Panel ("AAP") review, which is 15 fewer than the 58 we reported in Status Report No. 3.  The AAP has reviewed 733 pre-Effective Date diagnosis Monetary Award claims, approving 395 (54%) of those claims.[3]  Under FAQ 138 ("Can I be found eligible for a Monetary Award based on a Qualifying Diagnosis that is different than the one I claimed?"), the AAP has found a lower level diagnosis (meaning a Qualifying Diagnosis that is less severe medically or with a lower Award amount under the Monetary Award Grid) on 40 claims (an increase of 17 since Status Report No. 3).

(b) We have assigned 397 claims (an increase of 61 since Status Report No. 3) to the Appeals Advisory Panel Consultants ("AAPC") based on requests by AAP members for their input on Level 1.5 and Level 2 Neurocognitive Impairment Qualifying Diagnoses or the neuropsychological testing supporting an Alzheimer's Disease diagnosis.  The AAPC has completed 353 reviews (89%) and provided their assessments to the AAP.  An AAPC member is reviewing the other pending claims.

    5.    *Notices for Missing Materials*.  We have sent one or more notices requesting additional documents or information on 1,482 Monetary Award claims, which is 154 more claims than we reported in Status Report No. 3.  More of the Level 1.5 and Level 2 claims are missing materials than claims for the other Qualifying Diagnoses, as shown in Table 3:

---

[3] Broken down by Qualifying Diagnosis, the AAP members approved 98% of Death with CTE claims, 95% of ALS claims, 78% of Alzheimer's claims, 91% of Parkinson's claims, 28% of Level 2 claims and 36% of Level 1.5 claims.

| Table 3 | | NOTICES FOR MISSING MATERIALS | | | | | | | |
|---------|------|-----|-----|-----|-----|-----|-----|-----|-----|
| | CLAIMS | CTE | ALS | ALZHEIMER'S DISEASE | PARKINSON'S DISEASE | LEVEL 2 | LEVEL 1.5 | MULTIPLE/ UNKNOWN[4] | TOTAL |
| 1. | Total Submitted | 115 | 51 | 469 | 148 | 660 | 946 | 255 | 2,644 |
| 2. | Notice Issued | 19 | 23 | 258 | 74 | 389 | 588 | 131 | 1,482 |
| 3. | % Missing Materials | 17% | 45% | 55% | 50% | 59% | 62% | 51% | 56% |

So far, 74% of the Settlement Class Members who received a notice requesting additional documents have responded to the notice.  Settlement Class Members take an average of about 55 days to respond.  We receive approximately 10 to 15 responses to these notices each week and review each reply to determine if it cures the problem.  Of those that responded, 46% cured the problem.  Section 6 of the Summary Report on the Settlement Website shows how many claims last received a notice requesting additional documents/information.

      **6.**     *Statute of Limitations Matters.*

      (a) The Rules Governing Statute of Limitations Proceedings explain how the Special Masters make determinations as to whether claims submitted by Representative Claimants on behalf of Retired NFL Football Players who died before January 1, 2006, are barred by statutes of limitations, as specified in Section 6.2(b) of the Settlement Agreement.  We have received 369 Registration Forms from Representative Claimants that may require a statute of limitations analysis, but 134 individuals did not properly register because of uncured incompleteness reasons or the player was not a Settlement Class Member because he did not

---

[4] These "Multiple/Unknown" claims are ones where the Settlement Class Member asserted more than one Qualifying Diagnosis or the claim is so incomplete that we cannot tell what Qualifying Diagnosis is claimed.  We process and pay a person for only one Qualifying Diagnosis per claim submission.  All of these claims by definition are incomplete because we need to know which Qualifying Diagnosis should be used.  We soon will issue notices on the 124 claims that had not yet received one as of February 11, 2019.  The number of claims in this group without a notice is larger than usual because of the high volume of Claim Packages we received through the February 6, 2019 deadline for claims based on pre-Effective Date diagnoses.

play NFL Football as required by the Settlement Agreement.  Of those Settlement Class Members who are registered, 122 submitted Claim Packages, 46 of those since January 1, 2019.  Rule 7 of the Rules Governing Statute of Limitations Proceedings requires that a Claim Package be complete before a statute of limitations proceeding may begin.  Of the 122 Claim Packages we received:  (a) 42 are complete and assert a potentially compensable Qualifying Diagnosis if the claim is not time-barred under Settlement Agreement Section 6.2(b); (b) 11 are incomplete but still within the Settlement Class Members' deadlines to submit missing items; (c) 36 have been denied for failing to cure deficiencies or for not asserting a compensable Qualifying Diagnosis; and (d) 33 are under review because we received them around the February 6, 2019 deadline for pre-Effective Date claims.  Table 4 summarizes the changes to these numbers since Status Report No. 3:

| Table 4 | STATUS OF CLAIMS REQUIRING STATUTE OF LIMITATIONS ANALYSIS | | | | | |
|---|---|---|---|---|---|---|
| | STATUS | HOW MANY | | | % | | |
| | | AS OF 10/15/18 | AS OF 2/11/19 | CHANGE | AS OF 10/15/18 | AS OF 2/11/19 | CHANGE |
| 1. | Complete - Potentially Compensable Qualifying Diagnosis | 33 | 42 | +9 | 46% | 34% | -13% |
| 2. | Incomplete – Within Deadline to Submit Missing Items | 3 | 11 | +8 | 4% | 9% | +5% |
| 3. | Denied – Deficient or No Compensable Qualifying Diagnosis | 35 | 36 | +1 | 49% | 30% | -19% |
| 4. | Under Review | 0 | 33 | +33 | 0% | 27% | +27% |
| 5. | Totals | 71 | 122 | +51 | 100% | | |

We have issued a Notice of Commencement of Statute of Limitations Proceeding under Statute of Limitations Rule 16 to the 42 Representative Claimants with complete Claim Packages to start the briefing process under the Rules.  The Special Masters will not rule on

these until all claims presenting this issue have been fully briefed, to permit all affected Representative Claimants to be heard before any ruling and allow for the consideration of all arguments in a uniform and efficient manner.

(b) On January 15, 2019, we provided Co-Lead Class Counsel with mailing and email addresses for 155 Representative Claimants who registered a deceased Retired NFL Football Player for the Program but had not yet submitted a Claim Package.  Co-Lead Class Counsel sent these Representative Claimants a letter or email reminding them of the February 6, 2019 Claim Package submission deadline.

7.    ***Monetary Award Denials.***  There have been 580 denials of Monetary Award claims for reasons other than an Audit (75 more since Status Report No. 3), as shown in Table 5:[5]

| Table 5 | | MONETARY AWARD DENIALS | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | CLAIMS | CTE | ALS | ALZHEIMER'S DISEASE | PARKINSON'S DISEASE | LEVEL 2 | LEVEL 1.5 | MULTIPLE/ UNKNOWN | TOTAL |
| 1. | Total Submitted | 115 | 51 | 469 | 148 | 660 | 946 | 255 | 2,644 |
| 2. | Denied | 9 | 1 | 61 | 8 | 140 | 259 | 102 | 580 |
| 3. | % Denied | 8% | 2% | 13% | 5% | 21% | 27% | 40% | 22% |

Sections 6 and 10 of the Summary Report on the Settlement Website show these denials and the reasons for them.  Overall, the AAP found 339 (58%) of these claims did not reflect a valid Qualifying Diagnosis.  Other claims were denied because a fundamental requirement in the Settlement Agreement was not satisfied (*e.g.*, date of death for a Death with CTE claim) or because Settlement Class Members did not provide the mandatory information and/or documents we requested in our notices and outreach efforts.  When an AAP member denies a

---

[5] We discuss Audit denials in Paragraph 11 of this Status Report.

claim, we include in the notice comments from that AAP member explaining why.  When a claim is denied on other grounds, we typically call or email the Settlement Class Member (or his or her lawyer, if represented) to explain why the claim is being denied and discuss options for resubmitting the claim, appealing the denial, or withdrawing the claim until the claimant can obtain the missing mandatory information and/or documents.  Our denial notices explain all appeal rights and that another claim may be submitted if circumstances change or if the claimant receives a new diagnosis from a Qualified MAF Physician or after a BAP exam.  Settlement Class Members have appealed 123 of the 580 denials.

### III.    QUALIFIED MAF PHYSICIANS

**8.    *Establishing and Maintaining the MAF Network.***

(a) We continue to identify and contact providers, collect applications, verify credentials, submit applicants to the Parties for approval and contract with approved Qualified MAF Physicians, in conjunction with the BAP Administrator.  We recently sought candidate recommendations from the AAP and received six potential leads that we are actively pursuing. We add Qualified MAF Physicians to the posted list as these steps are completed.  The posted list includes 127 of the total 153 approved Qualified MAF Physicians.  We will add the remaining 26 potential Qualified MAF Physicians when we receive signed contracts back from them.  We have final contracts with Qualified MAF Physicians in or near 41 of the 53 target cities closest to where the majority of living Retired NFL Football Players reside.  Table 6 shows the changes in these numbers since Status Report No. 3:

| Table 6 | QUALIFIED MAF PHYSICIANS | | |
|---|---|---|---|
| | DATA POINT | AS OF 10/15/18 | AS OF 2/11/19 | CHANGE |
| 1. | Total Approved Physicians | 167 | 153 | -14 |
| 2. | Approved – On Posted List | 131 | 127 | -4 |
| 3. | Approved – Not Yet Posted | 36 | 26 | -10 |
| 4. | Target Cities Represented | 41 | 41 | 0 |

Settlement Class Members and lawyers can locate Qualified MAF Physicians using the MAF Physician Locator Tool on the Settlement Website.  We explain in sub-paragraph (b) below why the total number of approved physicians went down by 14 (Row 1 of Table 6).

(b) Three facilities with 13 total physicians withdrew from consideration to be Qualified MAF Physicians because they are fully occupied serving as Qualified BAP Providers.  Four additional physicians from four different facilities withdrew from the Program for other reasons.  The Parties approved three new Qualified MAF Physicians since Status Report No. 3 and we secured their signed contracts and added them to the posted list of Qualified MAF Physicians.  These three new physicians partially offset the 17 who withdrew.

### IV.    AUDIT

**9.    *Closed Audits.*** We have concluded the Audit investigations of 369 claims.  Table 7 summarizes the reasons for these closures and changes in the numbers since Status Report No. 3:

| Table 7 | CLOSED AUDITS | | |
|---|---|---|---|
| | REASON FOR CLOSURE | AS OF 10/15/18 | AS OF 2/11/19 | CHANGE |
| 1. | No Finding of Misrepresentation, Omission, or Concealment; or Special Masters Directed Result | 165 | 261 | +96 |
| 2. | Claim Withdrawn by Settlement Class Member | 53 | 108 | +55 |
| 3. | **Totals** | **218** | **369** | **+151** |

10.     *Reports of Adverse Finding in Audit.*  Since Status Report No. 3, we have issued to the Parties four additional Reports of Adverse Finding in Audit, bringing the total to 16 such Audit Reports affecting 511 Monetary Award claims, 15 of which were then referred to the Special Masters.  The Parties are reviewing the one Audit Report not yet referred to the Special Masters.  These 16 Audit Reports concern three neurologists, 12 neuropsychologists, two law firms, five individual Settlement Class Members and one claims preparation company.  The Special Masters accepted our referrals on eight of the 15 Audit Reports referred to them, which concern 11 neuropsychologists, three neurologists and one law firm; rejected our referral on one Audit Report covering one neuropsychologist; and are considering whether to accept six, which concern one law firm and five individual Settlement Class Members.

11.     *Special Master Decisions.*  Since Status Report No. 3, the Special Masters have issued findings in two additional Audit Proceedings, both dated October 25, 2018.  In one, they disqualified Dr. Ena Andrews, a neurologist, from participating in the Program, which means no claims may be submitted in reliance on her diagnoses.  In the other, they ruled on the Audit Report regarding father-son duo Drs. Robert Martinez and Robert C. Martinez (the "Martinez Doctors"), both neurologists.  The Special Masters did not disqualify the Martinez Doctors, but their decision canceled all Award and Denial Notices issued for claims based on their diagnoses and directed special processing of the claims through a single AAP member and a single AAPC.  Copies of the Special Masters' decisions are published on the Settlement Website (under "Documents" click "Special Master" below "Published Decisions").  We have denied 190 claims after Audit based on decisions by the Special Masters disqualifying certain neurologists and neuropsychologists from participating

in the Program.[6]  Sections 6 and 8 of the Summary Report on the Settlement Website show these denials.  A Settlement Class Member whose claim is denied after Audit may submit a new claim if based on a Qualifying Diagnosis that does not rely on records or opinions from disqualified doctors.

12.    ***Ongoing Audit Investigations.***  We have other Audit investigations underway affecting 170 claims (106 fewer than the 276 we reported in Status Report No. 3), of which 163 are subject to four group investigations of claims with similar characteristics and seven are individual claims.  There are 110 claims in the group investigations on hold according to the Special Masters' July 13, 2018 Order on Audit investigations (Document 10136) because one or more parties in the Audit have refused to provide information necessary to advance the Audit.

13.    ***Order Appointing Special Investigator.***  On September 11, 2018, the Special Masters requested that the Court appoint a Special Investigator so they could faithfully implement the Settlement Agreement and move toward the prompt payment of all valid claims (Document 10253).  The Court granted this request on September 12, 2018 (Document 10255).  On December 10, 2018, the Court appointed the Honorable Lawrence F. Stengel (Retired) as Special Investigator and outlined his authority and scope of work in an Order (Document 10355).

## V.    DERIVATIVE CLAIMANTS

14.    ***Derivative Claims.***

(a) We have received 558 Derivative Claim Packages, which is an increase of 35 since Status Report No. 3.  Table 8 shows the status of these claims:

---

[6] The 190 denials are associated with one disqualified neurologist (Dr. Ena Andrews, 47 claims) and two neuropsychologists, Dr. Serina Hoover (139 claims) and Dr. August Dolan-Henderson (4 claims).

| Table 8 | DERIVATIVE CLAIMS | | |
|---|---|---|---|
| | **STATUS** | **HOW MANY** | **%** |
| 1. | Paid ($683,473) | 138 | 25% |
| 2. | Award Notice Issued but Not Paid ($147,729) | 35 | 6% |
| 3. | Denied – Deceased Derivative Claimant | 4 | <1% |
| 4. | Denied – Untimely Derivative Claim Package | 12 | 2% |
| 5. | Successful Player Challenge – Not Eligible for Award | 8 | 1% |
| 6. | Derivative Claimant Challenge – Pending Final Determination | 9 | 2% |
| 7. | Withdrawn | 8 | 1% |
| 8. | Derivative Claim Package Receipt Notice Issued (no action required because the associated Player has not yet submitted a claim, or his claim status was not final) | 344 | 62% |
| 9. | **Totals** | **558** | **100%** |

Since Status Report No. 3, 59 more Derivative Claimants were paid, we issued 26 more Notices of Derivative Claimant Award and we denied 11 Derivative Claimants.

(b) On January 10, 2019, we posted a new version of the Overview of Derivative Claimant Process to the Reference Guides page on the Settlement Website.  This document now explains in Section G how we will handle Supplemental Derivative Claimant Awards, including who may potentially share 1% of a Retired NFL Football Player's Supplemental Monetary Award and the steps for determining a Derivative Claimant's eligibility.

## VI.   OTHER CLAIM PROCESSES

15.   *Handling of Attempted Assignments of Claims.*

(a) We have received 796 signed SWS-5s (Sworn Statement:  Status of Assignment of Monetary Claim) from eligible Settlement Class Members telling us whether they had attempted to assign a claim in exchange for money from a third-party funder, as shown in Table 9:

| Table 9 | | SIGNED SWS-5 ASSIGNMENT RESPONSES | | | | | |
|---|---|---|---|---|---|---|---|
| | **RESPONSE** | **HOW MANY** | | | **%** | | |
| | | **AS OF 10/15/18** | **AS OF 2/11/19** | **CHANGE** | **AS OF 10/15/18** | **AS OF 2/11/19** | **CHANGE** |
| 1. | No Assignment or Attempt to Assign | 504 | 727 | +223 | 92% | 91% | -1% |
| 2. | Assigned or Attempted to Assign | 42 | 69 | +27 | 8% | 9% | +1% |
| 3. | **Totals** | **546** | **796** | **+250** | **100%** | | |

(b) If a Settlement Class Member has attempted to assign any settlement benefits from his or her Monetary Award claim to a third-party funder, or borrowed any funds against his or her claim as collateral, he or she also must provide to us all documents relating to that transaction (a "Third-Party Funder Transaction"), unless the third-party funder has submitted a Declaration of Consent to Substitution to participate in the Third-Party Funding Resolution Protocol, as described in Paragraph 15(d) below.  We review each Third-Party Funder Transaction that is not subject to the Third-Party Funding Resolution Protocol with the Special Masters to determine whether it is an assignment prohibited by Section 30.1 of the Settlement Agreement and the Court's December 8, 2017 Explanation and Order (Document 9517) (a "Prohibited Assignment") and notify the affected Settlement Class Member of that decision in a Notice of Assignment Review Determination.  We have reviewed 50 Third-Party Funder Transactions (an increase of 14 since Status Report No. 3), 35 of which are Prohibited Assignments (an increase of 12 since Status Report No. 3).  Another 19 Third-Party Funder Transactions did not require our review because the third-party funder submitted a Declaration of Consent to Substitution to participate in the Third-Party Funding Resolution Protocol.

(c) On any Prohibited Assignment that has not been terminated by agreement between the Settlement Class Member and the funder, and that is not subject to the Third-Party

Funding Resolution Protocol described in Paragraph 15(d) below, we issue a Waiver Relinquishing Rights Under Attempted Assignment contemplated in the Explanation and Order ("Waiver Form") for the third-party funder to sign and return within 30 days to: (a) indicate the amount advanced to the Settlement Class Member that has not been repaid to the third-party funder; and (b) rescind the Prohibited Assignment and relinquish all claims relating to it. We send this Waiver Form to the lawyer for a represented Settlement Class Member and directly to the third-party funder if the Settlement Class Member is not represented by a lawyer. The Waiver Form includes an attachment for the Settlement Class Member to sign and return to us showing agreement with the information the third-party funder provided in the Waiver Form. We have issued 30 Waiver Forms (an increase of 11 since Status Report No. 3) and received 17 completed, signed Waiver Forms from third-party funders (an increase of seven since Status Report No. 3).

(d) In addition, we provide a Third-Party Funding Resolution Protocol to third-party funders and affected Settlement Class Members as we learn of Monetary Awards subject to an attempted assignment. A funder may elect to participate in it by submitting a Declaration of Consent to Substitution, a template of which is available on the Settlement Website. By completing all necessary forms, the third-party funder and Settlement Class Member agree that the Prohibited Assignment and any rights held under it are terminated. We have implemented the terms of the Protocol to successfully terminate six transactions between third-party funders and Settlement Class Members.

16. ***Petitions for Deviation from the Fee Cap.*** There are no changes since Status Report No. 3. We have received seven Petitions for Deviation, one of which was withdrawn.

The Court resolved one of the remaining six Petitions for Deviation; the other five are pending final resolution.

**17.**     *Non-Medical Liens Process and Attorneys' Lien Disputes.*

(a) On January 7, 2019, Magistrate Judge Strawbridge issued a Report and Recommendation applying five factors to analyze a lawyer's performance under a contingency fee contract and resolve Attorneys' Liens Disputes:  (1) reasonableness of the contingency fee contract at the time it was signed; (2) reasonableness of the contingency fee contract at the time the lienholder seeks enforcement; (3) results obtained by the lawyer; (4) quality of representation; and (5) substantiality of the work.  Two of the three affected Settlement Class Members filed objections to the Report and Recommendation based on the application of the factors to the evidence in the Dispute Record.  The Court will review the Report and Recommendation, as well as the objections and responses thereto, and issue a final decision accepting, rejecting, or modifying its findings.  Magistrate Judge Strawbridge issued a Memorandum Opinion and Order on January 18, 2019, applying the same factors to resolve a separate Attorney's Lien Dispute.

(b) Table 10 summarizes Non-Medical Lien assertions, notices and disputes by Lien type and changes to those numbers since Status Report No. 3:[7]

---

[7] Non-Medical Liens are:  (a) Attorneys' Liens (pay lawyers their fees and costs for work they did representing Settlement Class Members individually in the NFL concussion litigation and/or the Settlement Program); and (b) Other Liens, which include Child Support Liens (for unpaid child support), Tax Liens (for unpaid taxes) and Judgment Liens (for money owed under a final judgment entered by a federal or state court in a lawsuit).  The Lien Resolution Administrator handles Medical Liens.

| Table 10 | | NON-MEDICAL LIENS SUMMARY | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | LIEN TYPE | LIENS ASSERTED | | | NOTICES OF LIEN ISSUED BY CLAIMS ADMINISTRATOR | | | LIENS DISPUTED BY SETTLEMENT CLASS MEMBERS | | |
| | | AS OF 10/15/18 | AS OF 2/11/19 | CHANGE | AS OF 10/15/18 | AS OF 2/11/19 | CHANGE | AS OF 10/15/18 | AS OF 2/11/19 | CHANGE |
| 1. | Attorneys' | 901 | 930 | +29 | 319 | 331 | +12 | 279 | 278 | -1 |
| 2. | Child Support | 330 | 339 | +9 | 40 | 40 | 0 | 28 | 23 | -5 |
| 3. | Judgment | 55 | 58 | +3 | 11 | 13 | +2 | 9 | 11 | +2 |
| 4. | Tax | 48 | 48 | 0 | 1 | 1 | 0 | 0 | 0 | 0 |
| 5. | **Totals** | **1,334** | **1,375** | **+41** | **371** | **385** | **+14** | **316** | **312** | **-4** |

(c) Table 11 summarizes the Non-Medical Lien holdbacks by Lien type:

| Table 11 | | NON-MEDICAL LIEN HOLDBACKS | | |
|---|---|---|---|---|
| | LIEN TYPE | MONETARY AWARDS AFFECTED | MONETARY AWARD AMOUNTS | LIEN HOLDBACKS |
| 1. | Attorneys' | 18 | $28,265,064.40 | $4,978,777.29 |
| 2. | Child Support | 2 | $2,368,024 | $28,826.47 |
| 3. | Judgment | 0 | N/A | N/A |
| 4. | Tax | 0 | N/A | N/A |
| 5. | **Totals** | **20** | **$30,633,088.40** | **$5,007,603.76** |

(d) Table 12 summarizes the Non-Medical Lien payments by Lien type:

| Table 12 | | NON-MEDICAL LIEN PAYMENTS | | |
|---|---|---|---|---|
| | LIEN TYPE | MONETARY AWARDS AFFECTED | MONETARY AWARD AMOUNTS | LIEN PAYMENTS |
| 1. | Attorneys' | 12 | $18,015,870.33 | $1,408,753.37 |
| 2. | Child Support | 6 | $7,069,305 | $304,652.40 |
| 3. | Judgment | 1 | $3,222,009 | $1,588,566.32 |
| 4. | Tax | 0 | N/A | N/A |
| 5. | **Totals** | **19** | **$28,307,184.33** | **$3,301,972.09** |

## VII.   COMMUNICATIONS CENTER FOR THE PROGRAM

**18.**   ***Our Contact Activity.***  Since our contact center opened on February 6, 2017, we have handled 64,895 total communications, including 41,252 calls made or received and 20,591 emails to us at our Claims Administrator email box.  Since Status Report No. 3, we handled 5,683 such total communications.  On February 6, 2019, which was the deadline to submit claims for pre-Effective Date diagnoses, we extended our Call Center hours from 8:00 p.m. to 12:00 midnight Eastern Time to be available for any last-minute Claim Package submission questions.

**19.**   ***Law Firm Contacts.***  Our Law Firm Contacts are assigned to 513 different law firms or lawyers representing Settlement Class Members in the Program.  This is 12 more law firms or lawyers than we reported in Status Report No. 3.  The calls and emails handled by the Law Firm Contacts are part of the total contact activity described in Paragraph 18 above.

**20.**   ***Newsletters.***  Since Status Report No. 3, we issued four more monthly editions of our "Insights" newsletter (October, November and December 2018, and January 2019).  In each one, we covered the February 6, 2019 Claim Package submission deadline for pre-Effective Date diagnoses.  In the October, November and December 2018 editions, we covered the June 6, 2019 BAP exam deadline for Retired NFL Football Players born on or before June 6, 1974.  We work with the BAP Administrator and the Lien Resolution Administrator to include material about the BAP and Medical Liens in the newsletters.  We send the newsletters to unrepresented Settlement Class Members and lawyers by email or mail.  We also post them to the Settlement Website (under "Documents" click "Newsletters").  We invite all lawyers and Settlement Class Members to send us suggested topics for our newsletters.

21.  ***Settlement Program Website.***  We regularly update the Settlement Website to reflect progress and changes to the Program.  We have made these changes since Status Report No. 3:

(1) Launched a fresh look for the website on November 7, 2018.  Users can search all content on the website to find what they are looking for.

(2) Redesigned how we display published Court and Special Master decisions.  When we launched the new website on November 7, 2018, there was a single "Published Decisions" page that had two bookmarked PDFs, one with the decisions by the Court, and another with decisions by the Special Masters.  On December 6, 2018, we changed this to put the published Court and Special Master decisions on separate pages.  From the Documents menu option, under "Published Decisions" users can select either "Court" or "Special Master."  The decisions are broken down by subject and presented separately with a unique title, decision date and description.

(3) Posted seven new decisions the Court or Special Masters designated should be published.

(4) Developed and posted a new Guide to Liens in the Settlement Program and replaced the existing Monetary Award Grid and Overview of Derivative Claimant Process on the Reference Guides page at https://www.nflconcussionsettlement.com/Reference_Guides.aspx.[8]

(5) Added two new Court Orders to the Court Orders and Opinions page at https://www.nflconcussionsettlement.com/Court_Orders_Opinions.aspx.  The two were:  (1) Order Directing that Appeal Materials be Submitted to the Claims Administrator (Document 10329, filed November 14, 2018); and (2) Order Appointing Special Investigator (Document 10355, filed December 10, 2018).[9]

(6) Put Magistrate Judge Strawbridge's Report and Recommendation for Resolving Attorneys' Liens Disputes (Document 10368, filed January 7, 2019) on the Other Court Filings page at https://www.nflconcussionsettlement.com/Other_Court_Filings.aspx.

(7) Posted six new Alerts (https://www.nflconcussionsettlement.com/Alerts.aspx).  The first, dated November 7, 2018, describes our launch of the redesigned Settlement Website.  The second, dated November 21, 2018, provides a warning about a scam targeting Settlement Class Members.  The third, dated January 2, 2019, explains the Third-Party Funding Resolution Protocol.[10]  The fourth, dated January 14, 2019, discusses the 2019 inflation adjustment to Monetary Award amounts.  The fifth, dated January 17, 2019, describes a Report and Recommendation issued by Magistrate

---

[8] We discuss in Paragraph 14(b) of this Status Report changes to the Overview of Derivative Claimant Process.
[9] We discuss the appointment of a Special Investigator in Paragraph 13 of this Status Report.
[10] We discuss the Protocol more in Paragraph 15(d) of this Status Report.

Judge Strawbridge on resolving Attorneys' Liens disputes.  The sixth, dated January 24, 2019, announces our launch of the Supplemental Claim submission process.

(8) Added two new forms to the Payment Forms page at https://www.nflconcussionsettlement.com/Payment.aspx.[11]

(9) Added a new "Supplemental Monetary Awards" section to the Claims Forms page at https://www.nflconcussionsettlement.com/Claims.aspx.  This new section includes materials for submitting Supplemental Claims.

(10) Put on the Home and Login pages a reminder about the February 6, 2019 Claim Package submission deadline with a link to a letter from Co-Lead Class Counsel.

Since Status Report No. 3, the Program's Home page has had 15,098 more unique visits, giving us 371,073 total unique visits, coming from 189 countries and all 50 of the United States.

## VIII.   SPECIAL MASTERS

**22.** ***Our Work with the Special Masters.***  Since Status Report No. 3, we had seven more regularly-scheduled calls to discuss policy and operational issues, and have held 64 such calls with the Special Masters to date.  We have many other calls and exchange countless emails with them to address issues as they arise.  The Special Masters have the final say in how the Settlement is implemented, subject only to the Court's oversight.  We are currently working with the Special Masters and Court on how best to implement the Court's January 9, 2019 Order regarding Qualified MAF Physicians who deviate from the BAP testing protocols and diagnostic criteria to make Level 1.5 or Level 2 Neurocognitive Impairment diagnoses (Document 10370).

**23.** ***Program Rules.***  Since Status Report No. 3, there were no changes to Rules previously adopted in the Program.  All nine sets of Rules are available on the Settlement Website (under "Documents," click "Governing Rules") and on the online portals of law firms, lawyers and *pro se* Settlement Class Members.

---

[11] We added:  (1) Waiver Relinquishing Rights Under Attempted Assignment; and (2) Termination and Release Agreement.

24.     *Decisions.*   Since Status Report No. 3, the Special Masters issued four new decisions and designated them to be published.  We post these rulings to the Settlement Website (under "Documents," click "Special Master" below "Published Decisions").  Two of these four new rulings were Monetary Award appeals and two were from Audit Proceedings.[12]  The Special Masters have so far issued five published Monetary Award appeal decisions and five Audit decisions.

### IX.     PROCEDURES AND FREQUENTLY ASKED QUESTIONS

25.     *Coordination with the Parties.*   We conducted 11 more weekly policy and operational issue calls with the Parties after Status Report No. 3 and have held 123 such calls in this Program since April 19, 2016.  We also have other calls, meetings and emails with the Parties on particular interpretation or operational issues that arise.  Where we do not have consensus among the Parties on an issue, we consult the Special Masters to determine the best practices approach, while still honoring the terms of the Settlement Agreement.

26.     *Frequently Asked Questions*.   Since Status Report No. 3, we did not add any new FAQs.  We did, however, make substantive revisions to these FAQs already on the Settlement Website:

> (a) FAQ 52 ("Is there a deadline for taking the BAP exam?"), to provide more clarification on what it means to "take" the exam for those subject to the June 6, 2019 deadline; and

> (b) FAQs throughout the 15 categories, to update references and path links for the redesigned Settlement Website.

"FAQs" is one of the options in the green menu bar on the Settlement Website.  These FAQs contain links to other tools and resource guides posted on the Settlement Website to help

---

[12] We discuss the two Audit decisions in Paragraph 11 of this Status Report.

Settlement Class Members and their lawyers navigate the Program.  The banner at the top of the page contains a link to a printable PDF version of the full set of FAQs.

## X.   REGISTRATION

**27.   *Registration Submissions.***

(a) Sections 1 and 2 of the Summary Report on the Settlement Website cover Registration.  Table 13 here shows changes in the number of timely Registration submissions since our Status Report No. 3:

| Table 13 | TIMELY REGISTRATION SUBMISSIONS | | |
|---|---|---|---|
| | TYPE OF SETTLEMENT CLASS MEMBER | AS OF 10/15/18 | AS OF 2/11/19 | CHANGE |
| 1. | Retired NFL Football Players | 15,958 | 15,938 | -20 |
| 2. | Representative Claimants | 1,262 | 1,294 | +32 |
| 3. | Derivative Claimants | 3,294 | 3,295 | +1 |
| 4. | **Totals** | **20,514** | **20,527** | **+13** |

The number of Retired NFL Football Players (Row 1) went down by 20 from Status Report No. 3 because 21 were replaced by Representative Claimants, and one, which we had found untimely, was later found timely by the Special Master after a Registration Appeal.  Of the 20,527 persons who sent us timely Registration materials, we issued Registration notices to 20,524.[13]  Of the 20,524 who we issued notices to, we were able to confirm that 19,366 of them are Settlement Class Members under the Settlement Agreement, of whom 12,828 are Retired NFL Football Players eligible to participate in the BAP.[14]  The other 1,158 persons have incomplete registrations or are not Settlement Class Members under the Settlement Agreement because of one or more of these reasons:  (1) they were on an Active Roster as of

---

[13] The other three did not receive Registration notices because they were still under Registration review.

[14] In Paragraph 28 of this Status Report we explain an Eligible Seasons change that caused eight new Retired NFL Football Players to be found eligible for the BAP.

July 7, 2014; (2) they did not play "NFL Football" as defined in the Settlement Agreement; (3) they opted out of the Settlement Program; (4) they did not provide us with the information or support required by the Settlement Agreement to register, after several notices from us and up to 150 days to turn it in; or (5) they tried to register as a Derivative Claimant but did not have a relationship with the Retired NFL Football Player by which they had a right under applicable state law to sue independently or derivatively.

(b) We are responsible for determining whether registrations submitted after August 7, 2017, that do not meet one of the good cause exceptions specified in Section 4.2(c)(i) of the Settlement Agreement can otherwise be accepted under the Rules Governing Registration Determinations and Appeals.  We have made determinations on 247 such late Registrations and found that 133 (54%) of them presented good reasons to be allowed to register late. Table 14 shows the change in these numbers since Status Report No. 3:

| Table 14 | LATE REGISTRATIONS | | | |
|---|---|---|---|---|
| | STATUS | AS OF 10/15/18 | AS OF 2/11/19 | CHANGE |
| 1. | Accepted as Timely | 99 | 133 | +34 |
| 2. | Not Accepted as Timely[15] | 125 | 114 | -11 |
| 3. | Totals | 224 | 247 | +23 |

(c) Settlement Class Members who disagree with our Registration determinations may object to them by sending us a challenge.  The NFL Parties also may challenge our timeliness decisions.  We have received 370 challenges, which is 18 more than we reported in Status Report No. 3.  Table 15 explains these challenges and what happened to them:

---

[15] There are two reasons for the decrease in Row 2 of Table 14: (1) one Retired NFL Football Player had our untimely determination overturned on appeal; and (2) we no longer count Representative Claimants here who have cured their original Registration deficiencies related to missing or insufficient documents authorizing them as a legal representative of a deceased or legally incapacitated or incompetent Retired NFL Football Player, or are in the process of acquiring a court order appointing them as the authorized representative of a deceased Retired NFL Football Player.

| Table 15 | CHALLENGES OF OUR REGISTRATION DETERMINATIONS | | | | |
|---|---|---|---|---|---|
| | ISSUE | HOW MANY | WHO CHALLENGED | CHALLENGE SUCCESSFUL | CHALLENGE NOT SUCCESSFUL |
| 1. | Not a Retired NFL Football Player | 46 | Settlement Class Member | 23 | 23 |
| 2. | Not Eligible for the BAP | 243 | Settlement Class Member | 75 | 168 |
| 3. | Not Properly Registered | 53 | Settlement Class Member | 44 | 9 |
| 4. | Granted Good Cause Extension for Untimely Registration | 9 | NFL | 1 | 8 |
| 5. | Denied Good Cause Extension for Untimely Registration | 17 | Settlement Class Member | 4 | 13 |
| 6. | Not a Valid Derivative Claimant | 2 | Settlement Class Member | 0 | 2 |
| 7. | Totals | 370 | | 147 | 223 |

Those who are not successful in challenging Registration determinations to us may appeal our decision to the Special Masters.  Table 16 shows the appeals thus far and the Special Masters' rulings on them:

| Table 16 | APPEALS OF OUR DECISIONS ON REGISTRATION CHALLENGES | | | | |
|---|---|---|---|---|---|
| | ISSUE | HOW MANY | WHO APPEALED | DECISION UPHELD | DECISION OVERTURNED |
| 1. | Not a Retired NFL Football Player | 3 | Settlement Class Member | 3 | 0 |
| 2. | Not Eligible for the BAP | 26 | Settlement Class Member | 24 | 2 |
| 3. | Not a Valid Derivative Claimant Relationship | 1 | Settlement Class Member | 1 | 0 |
| 4. | Denied Good Cause Extension for Untimely Registration | 3 | Settlement Class Member | 2 | 1 |
| 5. | Totals | 33 | | 30 | 3[16] |

---

[16] These two were the result of the 53-Man Roster decision issued on December 5, 2017 (Document 9513).

28.     *Change on Calculating Half an Eligible Season.*   Section 2.1(kk) of the

Settlement Agreement sets out several ways to calculate a Retired NFL Football Player's

Eligible Seasons and half an Eligible Season to be able to participate in the BAP.   One method

allows us to credit a Player with half an Eligible Season if he was on a Member Club's practice,

developmental, or taxi squad for at least eight regular season games.   We recently clarified with

the Parties that a bye week counts as a game for practice squad players.   To implement this

clarification, we worked with the NFL Parties to identify 36 Retired NFL Football Players who

were on a practice squad for seven games and a bye week in a season and did not already have

credit for half an Eligible Season for that year.   We assigned all 36 half an Eligible Season for

that year.   This gave eight of those 36 half an Eligible Season for the first time, making them

eligible for the BAP for the first time.   On January 30, 2019, we sent them new Registration

notices showing this half an Eligible Season and their BAP eligibility.

29.     *Centralized Process for Appointment of Representative Claimants and*

*Derivative Claimant Representatives.*   The Special Masters have approved 385 petitions

from persons to serve as the Representative Claimant of a deceased or legally incapacitated

or incompetent Retired NFL Football Player and three petitions from Derivative Claimant

Representatives to act on behalf of minor Derivative Claimants.   This is nine new

Representative Claimant approvals since Status Report No. 3.   There have been no new

Derivative Claimant Representatives since Status Report No. 3.

## XI.    OTHER FUNCTIONS

**30.    *Online Portals*.**

(a) On December 6, 2018, we added surveys to the Pro Se, Law Firm, AAP/AAPC and Qualified MAF Physician Portals.[17]  These surveys let users give us feedback about their experiences, which we will use to enhance our services.  We invite and encourage all Settlement Class Members and lawyers who use a portal to complete the surveys, give us their honest opinions and offer suggestions for improvement.  Overall, the feedback we received through the surveys has been positive, particularly on how easy the online claim submission process is and how helpful our deadline reminder emails are for responding to notices on time.  We are looking into suggested improvements to the document upload feature and access to past notices.

(b) On January 10, 2018, we posted a message on the Home page of Pro Se and Law Firm portals about the February 6, 2019 Claim Package submission deadline.

## XII.    CONCLUSION

**31.    *General Status*.**  We have 173,550 documents (14,005 gigabytes, or 14 terabytes of data), including notices we have issued, stored on Settlement Class Members, which is 10,695 more than when we filed Status Report No. 3.  We have issued 35,129 notices (968 more since Status Report No. 3) of various kinds (Registration, claims, appeals, Audit, etc.) to 20,930 different persons since March 23, 2017, and developed and programmed over 70 different types of notices and forms that are used in the Program.

---

[17] In the Pro Se Portal, we issued the survey only for Retired NFL Football Players and Representative Claimants who submitted Claim Packages, as they are more frequent users than persons who have registered only.  In the Law Firm Portal, each person who has a login ID to access a particular law firm's portal may participate.

Respectfully submitted,

**CLAIMS ADMINISTRATOR**

By:   /s/ Orran L. Brown, Sr.

Orran L. Brown, Sr.
Virginia State Bar No.:  25832
BrownGreer PLC
250 Rocketts Way
Richmond, Virginia  23231
Telephone:  (804) 521-7201
Facsimile:  (804) 521-7299
Email:  obrown@browngreer.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Claims Administrator Status Report No. 4 was filed electronically on this 15th day of February, 2019, and was served electronically upon Class Counsel, Counsel for the NFL Parties and all counsel of record by the United States District Court for the Eastern District of Pennsylvania's electronic filing system.

       <u>  /s/ Orran L. Brown, Sr.  </u>
Orran L. Brown, Sr.
Virginia State Bar No.:  25832
BrownGreer PLC
250 Rocketts Way
Richmond, Virginia  23231
Telephone:  (804) 521-7201
Facsimile:  (804) 521-7299
Email:  obrown@browngreer.com