UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | Case No. 12-md-2323 (AB)<br><br>MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>    Plaintiffs,<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>    Defendants. | **Hon. Anita B. Brody** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**MOTION FOR COURT INTERVENTION TO
STOP MULTIPLE AUDITS OF SETTLEMENT CLASS MEMBERS
THAT VIOLATE THE SETTLEMENT AGREEMENT**

Retired NFL Players, Identified by SCM Program ID's, 950001367, 100000328, 900000835, 100000978, 100001053, 900003656, 100002971, 900003916, 900005730, 100004998, 100005793, 100006318, 100006364, 100006825, 900009395, 110020412, 900009941, 950000168, 900011914, 100009522, 100010585, 100010859, 100011009, 100011127, 100012053, 100012125, 950000167, 1000013111, 100013967, 100014232, 100014253, 100014709 (collectively "Movants") file this Motion for Court Intervention to Stop Multiple Audits of Settlement Class Members that Violate the Settlement Agreement and incorporated Memorandum of Law (the "Motion"), and in support state as follows:

**Summary of the Motion**

1. Brown Greer, the Claims Administrator[1] in this action, is applying procedures to audit claims in a manner that: (a) rewrites the terms of the Settlement Agreement [ECF No. 6481-1], approved on April 22, 2015 and amended May 8, 2015, to the detriment of the Movants; and (b) eviscerates the due process protections built into the Settlement Agreement and Settlement Process. After the following actions[2] by the Claims Administrator:

- issuing Notices of Deficiency;
- issuing 1st Notices of Preliminary Review;
- issuing Notices of Audit and conducting an Audit;
- issuing a Notice of Concluded Audit after determining there was no indicia of fraud;
- allowing the Pre-effective date claims to proceed to the Appeals Advisory Panel;
- issuing 2nd Notices of Preliminary Review;
- issuing Notices of Denial of certain Claims;
- allowing Claimants to appeal the Denials;
- allowing the NFL to reply to the appeals; and
- issuing Notices of 2nd Audits and conducting another audit;

the Claims Administrator then asserted that Movants' Claims for Monetary Award were being audited again for a second time. Notably, Movants' Claims had already been audited and cleared the audit with no finding of fraud.

2. The Claims Administrator waited approximately twenty days after the NFL filed replies to certain Movants' appeals, close in time to when the Special Master's determination of the appeals would be issued, and then asserted a Second Audit against the Claims which stopped

---

[1] The defined terms in this Motion have the same meaning as the defined terms in the Settlement Agreement.
[2] *See* Chart attached as Exhibit 1 identifying these events.

the progression of the Claims.

3. The complete lack of authority or support in the Settlement Agreement and Rules Governing the Audit of Claims (the "Audit Rules") for conducting multiple audits of the same Claims, especially Claims that were already audited and cleared by the Claims Administrator on March 23, 2018, is eclipsed only by the Claims Administrator's arbitrary and capricious application of the Audit Rules that deprive Movants of their substantive due process rights. The Settlement Agreement provides for a single Audit of a Claim, not multiple Audits of the same Claim. Put simply, the Claims Administrator's application of Settlement Agreement and the Audit Rules in support of conducting multiple audits of the same claim is not provided for by the plain language of the Audit Rules or the Settlement Agreement.

4. This Court has repeatedly held that the Retired NFL Players and their families must comply with the terms of the Settlement Agreement, and refused to allow Retired NFL Players to modify the terms and conditions of the Settlement Agreement even when the result was undesirable:

- Court Order dated June 28, 2018 denying Claimant's request:

> Notably, the Parties failed to include any way for a claimant to cure a tardy CTE diagnosis. *Cf. Cendant*, 233 F. 3d at 194 (finding that the agreement anticipated the need for an extension of time for claimants to properly file claims – indicating that the deadline was "flexible"). On the other hand, the Parties did include ways for Class Members to cure late-filed registrations and late-filed Monetary Award claims. *See* Settlement Agreement §4.2 (c) (allowing for late registration if "good cause" is shown); *id*. §8.3(i) (allowing for the filing of late Monetary Award claims based on "substantial hardship"). Extending the Death with CTE diagnosis deadline would circumvent the Parties' negotiated, substantive terms and applying the "excusable neglect" standard to alter those terms would be inappropriate.

*See* Order, ECF No. 10108 at page 6.

- Court Order dated October 26, 2017 denying Claimant's request:

> Before Plaintiff can attempt the extraordinary action of modifying the Settlement Agreement, she must first show that she would be entitled to

> recover but for the Death with CTE diagnosis deadline. To make that demonstration, Plaintiff must submit her claim to the Claims Administrator, along with all of the required documentation. If her claim fails, she can go through the appeals process and raise any issues as to why she is entitled to relief—including, but not limited to, the notice issue raised in her motion to modify.
>
> *See* Order, ECF No. 8557.

5. Movants respectfully request that the Court require that the Settlement Agreement be enforced according to its terms and enter an order directing the Claims Administrator to release Movants' Claims from Audit and precluding the Claims Administrator from conducting multiple Audits of the same Claim.

**Procedural Background of Claims Process**

6. Movants prepared a chart (the "Chart") illustrating the chronology events in the Settlement Process that each Movant has been forced to endure from the date of submittal of their Claims Packages. A copy of the Chart is attached as Exhibit 1.

7. **Submittal of Claims Packages –** on June 27, 2017 and June 28, 2017: Movants' Counsel submitted numerous claims packages on behalf of the Movants (the "Claims Packages") to the Claims Administrator under the Amended Class Action Settlement Agreement (MDL ECF No. 6481-1) (approved on April 22, 2015 and amended May 8, 2015, the "Settlement Agreement").

8. **Deficiency Notices:** The Claims Administrator issued a Notice of Claims Package Deficiency for numerous Claims Packages submitted for approval of awards under the Settlement Agreement. The Deficiency Notices contain purported deficiencies alleged by the Claims Administrator. A single redacted Notice of Claims Package Deficiency (the "Deficiency Notice") for Settlement Program ID No. 900003916 is attached as Exhibit 2.

9. **First Notice of Preliminary Review – August 24, 2017:** Next the Claims Administrator issued Notices of Preliminary Review ("PR Notice"), which essentially were re-issued and re-packaged Deficiency Notices. A redacted PR Notice for Settlement Program ID No.

900003916 is attached as Exhibit 3.

10. Additionally, for all claims listed in the Chart provided under Exhibit 1, the portal (the "Claims Portal") through which the Claimants upload information and documents, which is controlled, monitored and administered by the Claims Administrator, has had removed from it the "Notices of Deficiencies" and the subsequent "Notices of Preliminary Review" without explanation. A copy of each of these notices which were removed from the Claims Portal is attached as Exhibits 2 and 3.

11. Despite the fact that the notices were issued, a recent printout of the Claims Portal for Settlement Program ID No. 900003916 provides that the Notice of Deficiency and Notice of Preliminary Review no longer appear in the Claims Portal and have been removed. A printout of Claims Portal entries for Settlement Program ID No. 900003916 is attached as Exhibit 4. The only indication that the notices ever existed are the notices (attached as Exhibits 1 and 2), and an earlier August 25, 2017 printout of Claims Portal entries for Settlement Program ID No. 900003916, which lists the Notice of Preliminary Review but not the Notice of Deficiency. The Claims Portal falsely depicts the Claim Package submission and then jumps to the Notice of Audit, which displays an inaccurate history of the claim's activity log. *See* Exhibit 4. The Claims Administrator removed "Notices of Deficiencies" and "Notices of Preliminary Review" for all Movants, not just Movant with Settlement Program ID No. 900003916.

12. **Notices of Audit:** The Claims Administrator then decided to place Movants' Claims into Audit. A copy of a redacted Audit notice is attached as Exhibit 5.

13. **Notices of Concluded Audit -March 23, 2018:** After months in Audit, and Movants' complete compliance with requests concerning the investigation, the Claims Administrator issued 37 Notices of Concluded Audit indicating that there was no reasonable basis to support a finding of a misrepresentation, concealment or omission of material fact and Movants'

Claims were removed from the First Audit. A copy of Movants' redacted Notices of Concluded Audit is attached as Exhibit 6.

14. **Second Notices of Preliminary Reviews -March 30, 2018:** However, a week later the Claims Administrator issued a Second Notice of Preliminary Review ("Notice PR 2"), which essentially were re-packaged Deficiency Notices. A copy of a redacted Notice PR 2 is attached as Exhibit 7.

15. **Notices of Denial of Claims:** The Claims Administrator then denied the Claims. A copy of a redacted Notice of Denial is attached as Exhibit 8.

16. **Appeals by Settlement Class Members:** A number of Movants paid their $1,000.00 fees and filed their appeals, other Movants intend to appeal once the Claims Administrator lifts the Second Audit and allows such filing in the Claims Portal. A copy of a redacted appeal is attached as Exhibit 9.

17. **NFL Replies to Appeals:** The NFL filed Replies to a number of the filed Appeals, some of which are probably also pending due to the Second Audit. See a copy of a redacted NFL reply to Appeal, which is attached as Exhibit 10.

18. **Second Audits – August 29, 2018:** Just days ahead of the Special Master's ruling on the Appeals, the Claims Administrator issued another 37 Notice(s) of Audit and began conducting a second round of Audits of the Claims. A copy of the Second Audit Notice is attached as Exhibit 11.

19. **Responses to Second Audits:** Claimants are only allowed 90 days within which to respond to an Audit (or have their claims denied in their entirety and with finality) and provided responses. Much of what was requested in the First Audits was requested again in the Second Audits. *See* the Chart, Exhibit 1.

**Neither the Settlement Agreement nor Audit Rules Allow the Claims Administrator to Conduct Multiple Audits of the Same Claim Package.**

20. Neither the settlement agreement nor audit rules provide for multiple audits by the Claims Administrator. First, Section 10.3(d) of the Settlement Agreement provides the terms of the deal with respect to Audits of Claims Packages by the Claims Administrator:

> (d) In addition, the Claims Administrator will audit Claim Packages that: (i) seek a Monetary Award for a given Qualifying Diagnosis when the Retired NFL Football Player took part in the BAP within the prior 365 days and was not diagnosed with that Qualifying Diagnosis during the BAP baseline assessment examination; (ii) seek a Monetary Award for a given Qualifying Diagnosis when the Retired NFL Football Player submitted a different Claim Package within the prior 365 days based upon a diagnosis of that same Qualifying Diagnosis by a different physician, and that Claim Package was found not to qualify for a Monetary Award; and (iii) reflect a Qualifying Diagnosis made through a medical examination conducted at a location other than a standard treatment or diagnosis setting (*e.g.*, hotel rooms).

*See* Settlement Agreement, ECF No. 6481-1, p. 60.

21. The parties negotiated and agreed to the language contained Section 10.3(d), which identifies three circumstances under which the Claims Administrator may audit Claims Packages. Section. The parties further agreed under Section 10.3(g) that the Claims Administrator shall analyze the claim data and determine whether there was a misrepresentation, omission or concealment:

> (g) When auditing a Settlement Class Member's claim for a Monetary Award or Derivative Claimant Award, the Claims Administrator will review the records and information relating to that claim and determine whether the Claim Form or Derivative Claim Form misrepresents, omits, and/or conceals material facts that affect the claim.

*See* Settlement Agreement, ECF No. 6481-1, p. 61.

22. However, nowhere in the Settlement Agreement do the parties agree to multiple audits of Claims. Section 10.3(d) does not provide the Claims Administrator authority to conduct multiple audits of the same Claim. Rather, Section 10.3(h) provides that, upon conclusion of an audit where there is no finding of misrepresentation, omission or concealment, the claim process

shall proceed subject to each party's respective right to appeal:

> (h) If, upon completion of an audit, the Claims Administrator determines that there has not been a misrepresentation, omission, or concealment of a material fact made in connection with the claim, the process of issuing a Monetary Award or Derivative Claimant Award, subject to appeal, will proceed.

*See* Settlement Agreement, ECF No. 6481-1, p. 61.

23. In other words, the Claims Administrator is charged with auditing a claim. When the Claims Administrator concludes an audit of a claim without making a determination of fraud, the audit process related to that claim is over and the process of issuing a Monetary Award proceeds, subject only to each party's respective right to appeal the determination of a Monetary Award. The process of issuing a Monetary Award is not subject to a second audit of the claim, or a re-audit of the same records and information in support of the claim, or a purportedly "unrelated" audit under the guise of auditing some related component part of a claim such as a Claimant's diagnosis, physician or attorney.

24. The Audit Rules must be applied in accordance with the Settlement Agreement and not in a manner that would violate its terms. Any application of the Audit Rules that would allow for a Second Audit violates the plain language of the Settlement Agreement. Nothing in the Audit Rules provides for multiple audits of claims and any attempt to apply the Audit Rules in support of a Second Audit violates the Settlement Agreement.

**The Claims Administrator's Application of the Audit Rules Violates the Principles of Justice and Fair Play and Eviscerates any Notion of Due Process.**

25. Despite the clear language in the Settlement Agreement, the Claims Administrator persists against the Class by conducting multiple audits without authority. In support of the Second Audit the Claims Administrator cites Audit Rule 8, which provides as follows:

> **Rule 8. The Effect of an Audit on Claims Processing Deadlines.** The claims processing deadlines in the Settlement Agreement are suspended, at the time the Claims Administrator places a Claim in Audit, wherever the

>Claim is at the time in the review, appeal or payment process. **The Claims Administrator may place a Claim in Audit at any time**, regardless of its processing or payment status, even if previously found payable or paid. A Claim in Audit cannot be paid until the Audit is concluded without an adverse finding as to the Claim. [Emphasis added].

*See* Audit Rule 8, a copy of which is attached as Exhibit 12.

26. The Claims Administrator asserts that its authority to "place a Claim in Audit at any time" means that it may place a Claim in Audit *multiple times*, and asserts that Audit Rule 8 allows it to conduct multiple audits of the same claim at any time during the Claims Process, effectively moving a final determination outside a Claimant's reach. In response to questions from the undersigned requesting the basis supporting a Second Audit, the Claims Administrator asserted that Rule No. 8 of the Audit Rules provides that "we may place a claim in Audit at any time. There is nothing prohibiting us from conducting more than one Audit of a claim." *See* September 4, 2018 Email from James Hoban of BrownGreer, attached as Exhibit 13.

27. However, the application of the Audit Rules asserted by the Claims Administrator provides the Claims Administrator unbridled authority to stop the Claims Process and move the Claims into a never-ending procedural black hole with no definitive endpoint. The Claims Administrator's application of the Audit Rules allows the Claims Process to continue *ad infinitum* at the Claims Administrator's sole discretion, which effectively eliminates Movants' due process rights under the Settlement Agreement.

28. This self-granted purported "authority" to conduct multiple Audits of the same Claim at any time allows the Claims Administrator to stop the Claims Process and prevent payment of Claims with no proffer, stated basis, oversight or checks and balances. The only oversight is

by the NFL who may conduct financial audits[3] of the Claims Administrator under Section 10.2(a)(vii) of the Settlement Agreement.

29. Moreover, Section 10.2(a)(vii) illustrates the complete lack of support in the Settlement Agreement for the Claims Administrator's position that it may conduct multiple Audits of the same claim at any time it chooses. The Settlement Agreement specifically allows the NFL to conduct multiple *audits* of the Claims Administrator in Section 10.2(a)(vii), which provides "Audit(s) may be conducted at any time during the Monetary Award Fund." [Emphasis added]. *See* Settlement Agreement, ECF No. 6481-1, p. 58.

30. In contrast, Audit Rule 7 provides for "[a]n Audit by the Claims Administrator of a Claim or a group of Claims . . .." *See* Audit Rule 7, Exhibit 12. The plain language of the Settlement Agreement and Audit Rules do not allow for multiple Audits of the same Claim by the Claims Administrator, only ***an Audit (singular)***. The fact that multiple financial ***Audits*** of the Claims Administrator's financials by the NFL are provided under the Settlement Agreement further clarifies the lack of ambiguity. Where the parties intended to agree to multiple audits they did so. *See* Exhibit 12.

31. The Claims Administrator's unsupported application of the Audit Rules allowing for multiple random audits of the same claim at any time the Claims Administrator chooses is the textbook definition of arbitrary and capricious, finds no support in the Settlement Agreement, was never agreed upon by Movants and must be stopped.

---

[3] Section 10.2(a)(vii) of the Settlement Agreement provides the NFL authority to audit the Claims Administrator at any time. The NFL Parties may elect, at their own expense, to cause an audit to be performed by a certified public accountant of the financial records of the Claims Administrator, and the Claims Administrator shall cooperate in good faith with the audit. Audits may be conducted at any time during the term of the Monetary Award Fund. Complete copies of the audit findings report will be provided to the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), Co-Lead Class Counsel, and Counsel for the NFL Parties.

**The Claims Administrator Already Conducted an Audit of Movants' Claims and Issued 37 Notice(s) of Concluded Audit Finding No Fraud.**

32.     The Claims Administrator cleared Movants' Claims from Audit in March of 2018 and cannot now conduct a Second Audit. The Claims Administrator audited Movants' Claims and, on March 23, 2018, issued a Notice of Concluded Audit for each Movant.  All 37 Notices of Concluded Audit provides as follows:

> This Notice is an official communication from the Claims Administrator for the NFL Concussion Settlement Program. We previously told you that your claim was in Audit under Section 10.3 of the Settlement Agreement and the Rules Governing the Audit of Claims ("Audit Rules") adopted by the Special Masters.
>
> **Under Audit Rule 14, this Notice is to inform you that we have concluded our Audit of your claim and determined that there is not a reasonable basis to conclude that there has been a misrepresentation, omission, or concealment of a material fact.** We will resume processing your claim from the point at which we suspended review because of the Audit. If we already have issued a determination notice for your claim and the deadline to appeal the determination had not yet expired when we began the Audit, or if you had already appealed the determination, we have preserved your right to appeal or stayed the appeal process. We soon will issue a new determination notice for any claim not yet in the appeal process, and for any claim in the appeal process, we will resume processing the appeal. [**Emphasis added**].

*See* Notices of Concluded Audit, Exhibit 6.

33.     For all of Movant's Claims, the Claims Administrator specifically stated: "**Under Audit Rule 14, this Notice is to inform you that we have concluded our Audit of your claim and determined that there is not a reasonable basis to conclude that there has been a misrepresentation, omission, or concealment of a material fact.**"   *See id*, Exhibit 6.

34.     In addition, Movants suspect upon information and belief that the Second Audit was based on the termination of Board Certified Neurologist Dr. Nicholas Suite, M.D., an MAF Physician who performed a records review of all of Movants' Claims, in conjunction with another housekeeping issue in the Claims Portal.  Dr. Suite performed a records review of Retired NFL Players, which is the reason his name is included on the Claim Form.

35.     However, the Claims Administrator indicated that MAF Physician Dr. Suite was not allowed to perform a records review of Retired NFL Players and insisted that an in-person

examination was required and that the Diagnosing Physician must perform an examination. The Claims administrator alleged that Movants' Claims were incomplete until Movants submitted Diagnosing Physician Certification Forms from a doctor who examined Movants. *See* Declaration of Orran L. Brown, Sr., ECF No. 8432-1, p. 3. The Claims Administrator indicated Movants may submit a Diagnosing Physician Certification Form from one of the board certified non-MAF neurologists who examined Movants before the effective date, or Dr. Suite could conduct an examination and submit a Diagnosing Physician Certification Form. *See* Declaration of Orran L. Brown, Sr., ECF No. 8432-1, p. 3.

36. Movants elected to provide the examining diagnosing physician's certifications, which were accepted by the Claims Administrator. For clarity, Movants note that Dr. Suite's name remains on the Claim Forms in the Claims Portal, and that the Claim Forms were amended by the submission of the Diagnosing Physician Certification Forms by the examining board certified non-MAF neurologists at the direction of the Claims Administrator.

37. The Second Audits were commenced on August 29, 2018. Shortly after on September 7, 2018, Dr. Suite was provided a notice of termination and terminated on October 7, 2018. Dr. Suite's termination was "at-will" and not conducted in an emergent manner, nor due to suspicion of fraud. In fact in March of 2018, the Claims Administrator indicated that Dr. Suite did not commit fraud. The Claims Administrator did question Dr. Suite's competence to diagnose dementia in March of 2018 but never provided notice to the Settlement Class Members.

38. Moreover, in April of 2018, Orran Brown filed a Declaration with the court [ECF No. 9882-1] in which he stated:

> We continue to identify and contact providers, collect Provider Applications, verify credentials, submit applicants to the Parties for approval and contract with approved Qualified MAF Physicians, in conjunction with the BAP Administrator, whose work has been instrumental in this process … [a]fter a Qualified MAF Physician has contracted with us, we go over with him or her the Settlement's diagnostic

> criteria for each Qualifying Diagnosis, as well as procedural issues related to MAF appointments and the documents required to support each type of Qualifying Diagnosis.

*See* Declaration, ECF No. 9882-1, p. 8.

39. In the Declaration, Mr. Brown does not identify concerns with Dr. Suite or any other MAF physician. However, he indicates an issue with an AAP member and asserts that the AAP member in question will be replaced due to concerns:

> As the AAP members progressed with the reviews of these claims, it became clear that one of them was not able to devote this amount of time to the Program. Therefore, in November 2017, we began working with the Parties to identify additional AAP candidates, contact them and coordinate calls as we had done previously.

*See id* at pages 8-9.

40. Where Mr. Brown had an issue he indicated as much and took action. However, no action was taken with respect to Dr. Suite until September. Dr. Suite was identified on the approved MAF Physician list until September 7, 2018, at which time he was identified on the list with a new line indicating his upcoming October 7, 2018 termination.

41. All of Movants' Claims in the Second Audit contain a records review by Dr. Suite without an in-person examination, which is the very same process as an AAP review. Dr. Suite agreed with the examining physician in the cases he reviewed, Dr. Suite was not advised, instructed nor informed this type of "confirming consultation" was prohibited, nowhere does the Settlement Agreement prohibit a records review or require an in-person examination to obtain a Qualifying Diagnosis.

42. The NFL has relentlessly fought to hold Claimants to standards that are not contained in the Settlement Agreement and allowing a Second Audit of the Claims that have already been audited and cleared for fraud in a written Notice of Concluded Audit furthers the NFL's agenda while denying Claimants the benefit of the Settlement they bargained for. The

Claims Administrator cannot be allowed to apply the Audit Rules in a manner inconsistent with their plain meaning or contrary to the Settlement Agreement and must not be allowed to Audit the same Claims more than once.

### **The Claims Administrator's Application of the Audit Rules is a Material Change to the Settlement Agreement made without Notice to the Class.**

43. The Claims Administrator's assertion that it has the right to audit the same claim multiple times is a substantive change to the terms and conditions contained in the Settlement Agreement and amounts to a *de facto* amendment. The unapproved additional language, among other additions explained below, has a material adverse impact on the rights of the Class Members, as a whole and more specifically the Movants. However, notice of a proposed amendment to the affected Class Members has not been provided as required under the law (and under the Settlement Agreement).

44. The obvious and repeated pattern of delay works against the Claimants subjected to discovery and forced to duplicate efforts to provide the Claims Administrator duplicate documents and information under a tight deadline. The Claims Administrator consistently demands responses in thirty days and threatens an outright and final denial for non-compliance. Aside from the unwarranted Second Audit, the repeated dejection and stress placed on brain damaged Claimants is not at all contemplated under the Settlement Agreement.

45. Movants have already complied with and survived the Claims Administrator's First Audits. Now, Movants' substantive due process rights to finality are trampled by the Claims Administrator's Second Audits … and third audits … and fourth audits … and as many audits as the Claims Administrator decides to conduct until Movants die or give up. Multiple audits are not what Movants agreed to under the Settlement Agreement and must be stopped.

### *Notice of Settlement to the Class Under Rule 23*

46. The Court in *In re Diet Drugs, Sales Practices & Prods. Liab. Litig.* MDL 1203,

226 F.Supp.2d 498 (E.D. Pa. March 15, 2005). ("*Diet Drugs*"), identified personal jurisdiction and notice requirements that must be met to amend a class settlement:

> Reasonable notice combined with an opportunity to be heard and withdraw from the class satisfy the due process requirements of the Fifth Amendment. … In addition, in a settlement class maintained under Rule 23(b)(3), class notice must meet the requirements of both Federal Rules of Civil Procedure 23(c)(2) and 23(e). Under Rule 23(c)(2), notice to the class must be "the best practicable notice under the circumstances, including individual notice to all members who can be identified through reasonable effort. The Rule also requires that the notice indicate an opportunity to opt out, that the judgment will bind all class members who do not opt out and that any member who does not opt out may appear through counsel. Rule 23(e) requires that notice of a proposed settlement must inform class members: (1) of the nature of the pending litigation; (2) of the settlement's general terms; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the Fairness Hearing [citations omitted].

*See Diet Drugs*, 226 F.Supp.2d at 517-518 (the court held, among other things, that the Seventh Amendment to Settlement Agreement, which materially changed settlement by reducing payouts to certain eligible class members and eliminating certain opt out rights, met notice requirements and was fair, adequate and reasonable).

47. The Court in *Diet Drugs* further explained that "the notice document must describe, in detail, the nature of the proposed settlement, the circumstances justifying it, and the consequences of accepting and opting out of it." *See id*.

### *Notice of Settlement upon Amendment or Modification*

48. With respect to an amendment to a Settlement Agreement, notice "is only required where the amendment to the settlement agreement would have a material adverse effect on the rights of class members." *See In re Diet Drugs Prods. Liability Litig.,* No. 99–20593, 2010 WL 2735414, at *6 (E.D.Pa. July 2, 2010) (in MDL where notice of Tenth Amendment to Settlement Agreement and opportunity to object was provided to class, Court approved amendment as fair, adequate and reasonable). The class must be provided notice of an amendment or modification if

it will materially alter a previously approved settlement agreement. *See In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 175 n. 10, 182 (3d Cir.2013) (held, among other things, that "supplemental notice should be provided to the class if the settlement is materially altered on remand").

49. Paragraph 18 of the Amended Final Order and Judgment entered on May 8, 2015 provides: "Without further approval from the Court, and without the express written consent of Class Counsel and Counsel for the NFL Parties, the Settlement Agreement is not subject to any change, modification, amendment, or addition." *See* Settlement Agreement, ECF No. 6534.

**Movants Participated in the Claims Process as Ordered by the Court but the Process has Been Manipulated to the Detriment of Movants.**

50. Counsel for Movants submitted numerous claims packages to the Claims Administrator under the Settlement Agreement. On or about November 3, 2017, the Court entered an order which provided that "movants must proceed through the Claims Administration process, and if the claims are denied, movants must follow the proper appeals process". *See* November 3, 2019 Order, ECF No. 8882. Movants have participated in the Claims Process but the Claims Administrator has changed the rules to the detriment of Movants.

51. Specifically, the Claims Administrator has applied the Audit Rules in a manner that is inconsistent with the terms of the Settlement Agreement, amounting to a *de facto* amendment: **"[W]e may place a claim in Audit at any time. There is nothing prohibiting us from conducting more than one Audit of a claim."** *See* September 4, 2018 Email from James Hoban of BrownGreer, attached as Exhibit 13.

52. Applying the Audit Rules and Settlement Agreement in a manner not provided for and not supported by the plain language, has a material adverse effect on Movants' substantive rights changing the Claims Process into a black hole devoid of the bargained for terms of the Settlement Agreement and subjecting Movants to the arbitrary whims of the Claims Administrator.

53. By imposing an application of the Audit Rules that does not exist in and conflicts

with the Settlement Agreement, the Claims Administrator has implemented additional requirements that:

      (a)    allow the Claims Administrator to continue the Claims Process forever simply by issuing another audit "at any time" it so desires, eviscerating Movants' due process rights;

      (c)    add substantive requirements Movants did not agree to; and

      (d)    make it more difficult to obtain payment, prove a claim and potentially will result in the inability to prove a claim.

Such a change cannot be implemented except by formal amendment to the Settlement Agreement including proper notice to the affected Class Members due to the material adverse effect on the rights of the Movants. No notice of any amendment of the Claims Administrator's unsupported application of the Settlement Agreement and Audit Rules was provided, and therefore, the unsupported application for multiple audits is not allowed.[4]

54.    **"This Settlement Agreement is our playbook, this is what we put to work. We make this program successful because we administer it – we implement it the way it's written, the way the Court approved it, and we do it quickly and we do it correctly."** *See* Youtube video: www.youtube.com/watch?v+mQ2643vSroU&t=1060 (June 29, 2017 statement by Claims Administrator Orran Brown at Miami Dolphins players town hall meeting).

55.    Having now participated in the process, Movants' experience is that the Settlement Agreement is not being implemented the way it is written and approved and is not being implemented quickly or correctly. It is being implemented in a manner that benefits the NFL and detriments the Class.

---

[4] Section 6.3(c) of the Settlement Agreement further provides that no modifications of Qualifying Diagnosis "can be made absent written agreement between Co-Lead Class Counsel and Counsel for the NFL Parties and approval by the Court… ."

**Conclusion**

56. Movants have been stuck in the unauthorized Second Audits going on six months with no end in sight. The Second Audits are not provided for under the Settlement Agreement and have stopped the process and prevented Claimants from obtaining a Monetary Award.

57. While the Claims Administrator has stopped the process for Movants, over the same period of time the NFL has relentlessly attacked the Settlement Agreement attempting to re-write the "Generally Consistent" standard and asking the court to require the Special Master to mandatorily consult the AAP (who have consistently applied the BAP standard to the detriment of Claimants) on all appeals.

58. The Second Audits of Movants' respective Claims, which were responded to in a timely fashion by the Movants, purports to ferret out "fraud", which was already determined not to exist, and cleared through the Notices of Concluded Audits. Wherein, the Claims Administrator already determined in the First Audits that there had not been a misrepresentation, omission, or concealment of a material fact made in connection with the Movants' Claims.

59. If allowed to proceed, the Claims Administrator has applied the Settlement Agreement and Rules in a manner that grant itself unbridled power to conduct multiple audits at any time creating a never-ending claims process. That is not what the Settlement Agreement provides and is simply not acceptable under any legal standard.

60. Movants and their families are left bewildered asking how multiple Audits for fraud have taken precedence over the diagnoses of board certified neurologists (one of whom is an MAF Physician vetted and approved by the parties, the BAP administrator and the Claims Administrator) and paying the Retired NFL Players and their families.

WHEREFORE, Movants respectfully request that this Honorable Court enter an order: (a) compelling administration of the Settlement Agreement according to its terms; (b) prohibiting

multiple Audits of the same Claim; (c) requiring disclosure of the specific factual basis upon which an Audit is warranted in any pending and future Audits; (d) requiring the suspension from the MAF list any MAF Physician who is under investigation; and (e) for all other relief this Court deems necessary.

Dated:  February 24, 2019

Respectfully Submitted,

Patrick J. Tighe
Attorneys for Plaintiffs/Movants
X1LAW, P.A.f/k/a Patrick J. Tighe, P.A.
721 US Highway 1, Ste 121
North Palm Beach, FL 33408
Phone: 561-537-3319
Fax: 561-537-7193
Pat@X1LAW.com
Florida Bar No. 568155

Attorneys for Plaintiffs/Movants
MGS LAW, P.A.
601 Heritage Drive, Suite 141
Jupiter, FL  33458
Phone: 561-620-5460
michael@mgs2law.com
Florida Bar No. 0783471

*s/ Michael St. Jacques*
Michael G. St. Jacques, II

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2019, the foregoing document was electronically filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, and that the filing is available for downloading and viewing from the electronic court filing system by counsel for all parties.

**MGS LAW, P.A.**

*s/ Michael St. Jacques*
**MICHAEL G. ST. JACQUES, II**