UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | Case No. 12-md-2323 (AB) |
| | MDL No. 2323 |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*, | **Hon. Anita B. Brody** |
| Plaintiffs, | |
| National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc., | |
| Defendants. | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**AMENDED REPLY TO CLAIMS ADMINISTRATOR'S RESPONSE TO RETIRED NFL PLAYERS' MOTION TO STOP MULTIPLE AUDITS OF SETTLEMENT CLASS MEMBERS THAT VIOLATE THE SETTLEMENT AGREEMENT**

Retired NFL Players Identified by their SCM Program ID's in their Motion (collectively "Movants") file this Amended Reply to the Claims Administrator's Response (the "Response") [ECF No. 10488] and Amended Response [ECF No. 10503] to the Motion for Court Intervention to Stop Multiple Audits of Settlement Class Members that Violate the Settlement Agreement and incorporated Memorandum of Law (the "Motion"), and in support state as follows:

**I.   The Claims Administrator's Response fails to cite authority that allows it to conduct multiple audits of the same Claim.**

The Claims Administrator's[1] twenty-eight page Response can be summarized by the fact

---

[1] The defined terms in this Motion have the same meaning as the defined terms in the Settlement Agreement.

that it fails to identify a single sentence in the Settlement Agreement or Rules Governing the Audit of Claims (the "Audit Rules") that permits multiple audits of the same Claim. No such authority exists or was provided to the Claims Administrator. The Response purports to explain the process and cites rules and sections of the Settlement Agreement in an attempt to muster support for its misapplication of the clear terms and conditions contained in the Settlement Agreement and Audit Rules. However, not one term of the Settlement Agreement or Audit Rules provides authority for multiple audits. The Response sometimes postures as though there is support, citing a ruling by the Special Master or an Audit Rule, but none provide the authority asserted by Claims Administrator.

While lacking authority, the Response contains numerous misstatements of fact regarding X1Law that were not corrected by the Claims Administrator's Amended Response. The Response (and Amended Response) further misstates the relief requested by Movants and paints advocacy as dissention, as attempts to "circumvent established processes." These are all distractions from the heart of the issue – the Claims Administrator's application of the Settlement Agreement and Audit Rules are not "mere processes" for the administration of Claims. Movants are not required to blindly follow this misapplication of the Settlement Agreement. Multiple audits of the same Claim is a substantive change to the Settlement Agreement and eliminates Movants due process rights.

## II. Movants only request that the Settlement Agreement be followed.

The Claims Administrator asserts in the Response that: "On February 24, 2019, X1Law filed its present Motion asking that we be prohibited from auditing Doctor 1." The Claims Administrator's assertion is false. X1LAW's motion request that the Court: "(a) compel administration of the SA according to its terms; (b) prohibit multiple audits of the same claim; (c)

require disclosure of the specific factual basis upon which an audit is warranted in any pending further audits; (d) require the suspension from the MAF list any MAF Physician who is under investigation…." Movants further requested "that the Court require that the Settlement Agreement be enforced according to its terms and enter an order directing the Claims Administrator to release Movants' Claims from Audit and precluding the Claims Administrator from conducting multiple Audits of the same Claim." This Court has consistently ruled in favor of enforcing the plain language of the Settlement Agreement and, in certain instances, prevented parties from stretching the language to create new rights that do not exit.

In this instance, the Section 10.3(h) of the Settlement Agreement explains what happens after an Audit. Nevertheless, the Claims Administrator repeatedly states in the Response by supposition, conjecture and unsupported assertion that it has authority to do things that are not provided for under the Settlement Agreement but fails to cite to the language that provides such authority. Moreover, in all 28 pages of the Response, the Claims Administrator failed to address Section 10.3(h):

> (h) If, upon completion of an audit, the Claims Administrator determines that there has not been a misrepresentation, omission, or concealment of a material fact made in connection with the claim, the process of issuing a Monetary Award or Derivative Claimant Award, subject to appeal, will proceed.

*See* Settlement Agreement, ECF No. 6481-1, p. 61.

On page 21 of the Response, the Claims Administrator cites the Motion implying that Movants took an unsupported position: "When the Claims Administrator concludes an audit of a claim without making a determination of fraud, the audit process ... is over" and "[t]he process of issuing a Monetary Award is not subject to a second audit of the claim, or a re-audit of the same

records and information . . ..."  Contrary to the implication, Movants paraphrase Section 10.3(h) which states exactly what happens at the end of an Audit.

The Response feigns outrage at Movants' audacity for suggesting that the Settlement Agreement means what it says, if there has not been a determination of fraudulent behavior then the Claims Process proceeds, subject only to appeal.  Sections of the Response are carefully crafted to invite the reader to question reality and second-guess what she knows to be true, to consider whether the sun actually rises in the west and sets in the east.  Unfortunately, many of the assertions contained in the Response are factually incorrect and none of them bear on the issue before the Court – whether the Settlement Agreement provides that the Claims Administrator is empowered to conduct multiple audits of the same claim.

### III.     Rebuttal of certain inaccurate claims regarding X1Law

Lacking any authority under the Settlement Agreement to conduct multiple audits, the Response attempts to discredit X1Law as a renegade firm, rogue operators taking every opportunity to cheat the Settlement Program, throw one past the Claims Administrator and generally game the system.  The Response (which lacks a single exhibit, supporting evidence or anything other than the Claims Administrator's bare "allegations") contains numerous misstatements of fact and, even worse, implication that actions not at all precluded under the Settlement Agreement are impermissible heresy.  The Claims Administrator's inaccurate assertions are too numerous to address each but can be addressed in further detail is the Court so requires.

#### a.     Inaccurate allegation that X1Law changed the Claims:

The Claims Administrator asserts that X1Law "would like to exempt a once-audited claim from any further scrutiny, even if the claim changes after the first audit, as its claims did, and even

if we learn new information completely unrelated to the first audit." X1Law did not "change the claims" or provide new information or attempt to bamboozle the Claims Administrator. X1Law contacted the Claims administrator and was discussing these very issues, which were not clear, in July and August of 2017 as demonstrated in the Declarations of Claims Administrator in September 2017. *See* 9/28/17 Brown Declaration, ECF No. 8432-1 and 9/28/17 Smith Declaration, ECF No. 8432-2.

X1Law followed the direction of the Claims Administrator and selected one of the two options specifically identified by Orran Brown, Esq. in his Declaration. *See* Declaration of Orran L. Brown, Sr., ECF No. 8432-1, p. 3. X1Law added DPC's from Doctor 1 in the portal, prior to claims submission, took them down when it determined to take a different course with their claims, used DPC's by Doctor 2, were instructed this was not allowed, were directed by the Claims Administrator how to remedy the problem, remedied the problems and submitted the claims. The Claims Administrator is manipulating the sequence of events (which were accurately identified in the Motion) to imply the appearance of wrongdoing and lend creditability to the unauthorized practice of conducting multiple audits of the same Claim.

The Claims Administrator further asserts on page 24, paragraph 2 of the Response: "[T]hat is especially true when a law firm changes key elements of its claims to avoid the issue raised in an audit investigation." Again, this is simply not true and if the Court finds this relevant X1Law requests an evidentiary hearing to disprove any assertion that the key elements of any claim were changed.

Moreover, the Claims Administrator is anything but forthcoming with respect to identifying the basis for an audit. Movants would need to understand the basis or focus of an Audit to avoid that the issue raised. Unlike the instant Motion heading that clearly identifies the subject,

an Audit is merely named "audit" without any identifying information as to the focus of the audit. The audits in question requested employment and/or health care history and there was no disclosure as to the concerns underlying an audit. David Smith, Esq. of Claims Administrator stated the following in his Declaration:

> Audit Notice Issued to X1Law Client. Mr. Tighe began the call asking about the Notice of Audit of Claim X1Law received on August 11, 2017, for Settlement Program ID 100006825 ("Player A"). He wanted to know why Player A was selected for audit, stated that he believed only eligible claims could be audited, and asked whether this claim was eligible for compensation. **I informed Mr. Tighe that Player A's claim had not yet been found eligible, the Claims Administrator can audit claims under Section 10.3(b) of the Settlement Agreement at any time**, and that he was confusing Section 10.3(b) with the mandatory ten percent audit of payable claims required by Section 10.3(c). **Mr. Tighe asked why Player A's claim was selected for audit. I responded that I did not know the exact reason at that time but would find out from the audit team.** I reminded X1Law that it must respond to the audit notice or the claim could be denied for non-cooperation under Section 10.3(b)(ii). The Response Date on the Notice of Audit of Claim was September 11, 2017, and the firm timely responded with the requested materials.
>
> *See* 9/28/17 Smith Declaration, ECF No. 8432-2.

X1Law did not change the Claims, Doctor 1's diagnosis was the basis for Doctor 2's diagnosis. When no other options were available X1Law followed the instruction of the Claims Administrator, nothing more.

    **b.**     **Implication that X1Law improperly promoted Doctor 1:**

On page 10, subsection C(2) of the Response the Claims Administrator alleges as follows:

> There was considerable history with X1Law and Doctor 1. On December 30, 2016, Patrick Tighe of X1Law had emailed us recommending Doctor 1 to serve as a Qualified MAF Physician. He also contacted us on later occasions to promote him. Doctor 1 submitted his Qualified MAF Physician application to us on January 9, 2017.

The Claims Administrator insinuates that referral of a physician to serve as an MAF was somehow untoward. X1Law had a professional relationship with Doctor 1 and recommended him

to the Claims Administrator as a possible MAF Physician. Emails between X1LAW and the Claims Administrator, support X1Law's position.

X1Law also recommended several other physicians to the Claims Administrator for the MAF program. The attached emails demonstrate complete transparency with the Claims Administrator and demonstrate that the Claims Administrator thanked X1Law. The Claims Administrator reached out to Doctor 1 and began the process to qualify him as an MAF Physician. On pages 10 and 11 of the Response, the Claims Administrator cites two actions against Doctor 1 that it found concerning and asserts those as reasons why Doctor 1 was not selected as an MAF Physician (and further comments on bad reviews).

The Claims Administrator fails to acknowledge that both incidents occurred over 30 years before submission of Doctor 1's application to the Claims Administrator. The Qualified MAF Physician's Manual further sets forth requirements for MAF approval:

> **A. Introduction.**
>
> A Qualified MAF Physician is a board-certified neurologist, board-certified neurosurgeon, or other board-certified neuro-specialist physician, who is part of an approved list of physicians authorized to make Qualifying Diagnoses under the terms of the NFL Concussion Settlement Agreement (the "Settlement"). You have been selected and approved to serve as a Qualified MAF Physician for the Settlement in part because you meet the following requirements:
>
> 1. Possess a current, active, unrestricted state license;
> 2. Hospital staff privileges are not revoked and have not been restricted within the past five years;
> 3. Are covered by proper insurance under state law;
> 4. Are not excluded from participation in any federal or state healthcare program;
> 5. Medical license has not been subject to any disciplinary action or any restrictions within the past five years;
> 6. Were never convicted of a crime of dishonesty; and
> 7. Have not served on or after April 22, 2015, as a litigation expert consultant or expert witness for a Retired NFL Football Player who has opted out of the Settlement, or his, her or its counsel, in connection with litigation relating to the injuries and/or conduct addressed in the *In re National Football League Players' Concussion Injury Litigation*. The list of Retired NFL Football Players who have opted out of the Settlement can be found on the Settlement Program website by clicking on this link: https://www.nflconcussionsettlement.com/CourtDocs.aspx.

Doctor 1 was never convicted of a crime of dishonesty and his medical license had not been subject to any disciplinary action or any restrictions within the ***past five years***. So, two

incidents over 30 years ago, and one or two bad yelp reviews (most of the reviews are positive for the doctor and the negatives are regarding office staff, not him personally), resulted in disqualification of Doctor 1 as an MAF Physician.

If the Claims Administrator's stated criterion for identifying Qualified MAF Physician's (or disqualifying Doctor 1) was applied uniformly then it stands to reason that no MAF who was granted the position had similar issues in her history as Doctor 1.  Regardless, the Claims Administrator invited referrals from IRPA's of physicians to serve as MAFs and X1Law responded. Any implication that X1Law's actions were untoward are not accurate.  To the extent any of this is relevant, the Court would need to conduct an evidentiary hearing to discern the facts.

## IV.     Conclusion

The Claims Administrator is not allowed to conduct multiple audits.  It has other powers to investigate fraud and take measure to protect the process but it cannot apply the Settlement Agreement in a manner which eliminates due process rights.

Dated:  April 1, 2019

Respectfully Submitted,

Patrick J. Tighe
Attorneys for Plaintiffs/Movants
X1LAW, P.A.f/k/a Patrick J. Tighe, P.A.
721 US Highway 1, Ste 121
North Palm Beach, FL 33408
Phone: 561-537-3319
Fax: 561-537-7193
Pat@X1LAW.com
Florida Bar No. 568155

Attorneys for Plaintiffs/Movants
MGS LAW, P.A.
601 Heritage Drive, Suite 141
Jupiter, FL  33458
Phone: 561-620-5460
michael@mgs2law.com
Florida Bar No. 0783471

*s/ Michael St. Jacques*
Michael G. St. Jacques, II

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 1, 2019, the foregoing document was electronically filed with the United States District Court for the Eastern District of Pennsylvania via the Court's CM/ECF system, and that the filing is available for downloading and viewing from the electronic court filing system by counsel for all parties.

        **MGS LAW, P.A.**

        *s/ Michael St. Jacques*
        **MICHAEL G. ST. JACQUES, II**