# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br>MDL No. 2323 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | Hon. Anita B. Brody |

## ORDER IN AID OF IMPLEMENTATION OF THE SETTLEMENT AGREEMENT: RULES GOVERNING QUALIFIED MAF PHYSICIANS

The goal of the Settlement Agreement is to provide benefits to Settlement Class Members who are eligible for compensation according to its terms, but not pay awards to anyone who is not eligible. Safeguarding the integrity of the claims process is crucial to implementing the Settlement with honor.

All Settlement Class Members seeking an award should be aware that, to safeguard the integrity of the Settlement Program, a claim must be carefully assessed before the payment of an award. The assessment may include consultations with employers, review of tax filings and other publicly available information, and assessment of the Retired NFL Football Player's engagement in daily living. In some instances, an investigation for fraud or misrepresentation may be warranted.

The neurologists, neurosurgeons and other neuro-specialists selected to serve as Qualified MAF Physicians are approved by both Co-Lead Class Counsel and Counsel for the NFL Parties because of their exemplary education, training, board certifications, experience and credentials in the medical community. Following the provisions of the Settlement Agreement, a Qualified

MAF Physician may render diagnoses of Retired NFL Football Players for the Qualifying Diagnoses that qualify for Monetary Awards (other than Death with CTE) and are the only physicians authorized[1] to make a Qualifying Diagnosis of Alzheimer's Disease, Parkinson's Disease, or Amyotrophic Lateral Sclerosis. Each Qualified MAF Physician performs a crucial and indispensable role in the successful implementation of the Settlement Agreement, the provision of Settlement benefits to Retired NFL Football Players and their families, and the correct application of the provisions of the Settlement Agreement.

This Order is entered pursuant to the Court's continuing and exclusive jurisdiction over the implementation and administration of the Class Action Settlement Agreement under Paragraph 17 of the Court's May 8, 2015 Amended Final Order and Judgment (ECF No. 6534) approving the Settlement Agreement.

To implement the Court's Order of January 9, 2019 (ECF No. 10370) regarding the diagnosis by Qualified MAF Physicians of Level 1.5 and Level 2 Neurocognitive Impairment and to facilitate the efficient and successful operation of the network of Qualified MAF Physicians, this 11th day of April, 2019, it is **ORDERED** that the attached Rules Governing Qualified MAF Physicians, developed by the Special Masters and the Claims Administrator, are **ADOPTED**. These Rules may be amended from time to time, with the approval of the Special Masters.

*Anita B Brody*
ANITA B. BRODY, J.

Copies **VIA ECF** on:

O:\ABB 2019\L - Z\NFL_order adopting new MAF rules.docx

---

[1] After January 7, 2017.

# NFL CONCUSSION SETTLEMENT
*IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION*
No. 2:12-md-02323 (E.D. Pa.)

# RULES GOVERNING QUALIFIED MAF PHYSICIANS

4/10/19

## TABLE OF CONTENTS

**PAGE**

TITLE I: INTRODUCTION ....................................................................................................... 1

    Rule 1.    The Purpose of These Rules. ................................................................................ 1

    Rule 2.    Adoption of These Rules. ..................................................................................... 1

    Rule 3.    Definitions Used in These Rules. .......................................................................... 1

TITLE II: ENGAGEMENT AND TRAINING ........................................................................ 2

    Rule 4.    Execution of Participating Qualified MAF Physician Agreement. ........................ 2

    Rule 5.    Required Education Before Rendering Services as a Qualified MAF Physician. ....................................................................................................... 2

    Rule 6.    Continuous Education. .......................................................................................... 2

TITLE III: GENERAL PROCEDURES .................................................................................... 3

    Rule 7.    Publication of Status as a Qualified MAF Physician. ........................................... 3

    Rule 8.    Scheduling of MAF Examinations with Settlement Class Members. .................... 3

    Rule 9.    150-Mile Rule for MAF Examinations. ................................................................. 3

    Rule 10.    Neuropsychological Testing. ................................................................................ 3

    Rule 11.    Information on All MAF Appointments. .............................................................. 4

    Rule 12.    Information on Charges and Insurance. ................................................................ 4

    Rule 13.    Avoidance of Questionable Practices. .................................................................. 5

TITLE IV: PERFORMANCE OF MAF EXAMINATIONS .................................................... 6

    Rule 14.    MAF Examinations of Retired NFL Football Players. ........................................ 6

    Rule 15.    Employment Activities of the Retired NFL Football Player. ............................... 6

    Rule 16.    Activities of the Retired NFL Football Player Outside the Home. ....................... 6

TITLE V: QUALIFYING DIAGNOSES .................................................................................... 6

    Rule 17.    Submissions to the Claims Administrator on a Qualifying Diagnosis. ................ 6

    Rule 18.    Provision of Results to the Retired NFL Football Player. .................................... 7

TITLE VI: ADDITIONAL PROCEDURES FOR LEVEL 1.5 AND LEVEL 2 QUALIFYING DIAGNOSES ..................................................................................................... 7

    Rule 19.    Neuropsychological Testing Used for Qualifying Diagnoses of Level 1.5 Neurocognitive Impairment or Level 2 Neurocognitive Impairment. .................... 7



    Rule 20.   Qualifying Diagnoses that Deviate from the BAP Diagnostic Criteria. ................... 7

**TITLE VII: ASSISTANCE BY THE CLAIMS ADMINISTRATOR** ........................................ 8

    Rule 21.   Analysis of Claims Based on Diagnoses from Qualified MAF Physicians. ............. 8

    Rule 22.   Assistance by the Claims Administrator in the Operation of the Network of Qualified MAF Physicians. ........................................................................................ 8

    Rule 23.   AAP Leadership Council. ........................................................................................ 9

    Rule 24.   MAF Steering Committee. ...................................................................................... 9

    Rule 25.   Follow-Up Actions with a Qualified MAF Physician. ............................................. 9

    Rule 26.   Suspension of a Qualified MAF Physician. ........................................................... 10

    Rule 27.   Termination of a Qualified MAF Physician. ......................................................... 10

NFL CONCUSSION SETTLEMENT

> **RULES GOVERNING QUALIFIED MAF PHYSICIANS**

### TITLE I: INTRODUCTION

**Rule 1. The Purpose of These Rules.** These Rules govern the operation and implementation of the network of Qualified MAF Physicians in the Settlement Program established under Section 6.5(a) of the Settlement Agreement, which requires the Claims Administrator to "establish and maintain a list of Qualified MAF Physicians eligible to provide Qualifying Diagnoses" and that "each Qualified MAF Physician shall be approved by Co-Lead Class Counsel and Counsel for the NFL Parties."

**Rule 2. Adoption of These Rules.** The Special Masters have adopted these Rules in the exercise of their duties pursuant to their appointment by the Court in its July 13, 2016 Order (Document 6871). The Special Masters may amend these Rules at any time *sua sponte* or after request by Co-Lead Class Counsel, the NFL Parties or the Claims Administrator and such input from Co-Lead Class Counsel, the NFL Parties and the Claims Administrator as the Special Masters deem appropriate.

**Rule 3. Definitions Used in These Rules.** All capitalized terms used in these Rules have the meanings given to them in the Settlement Agreement. In addition:

(a) "AAP Leadership Council" means the advisory group of two AAP members described in Rule 23.

(b) "BAP Test Battery" means the neuropsychological test battery prescribed in Ex. 2 to the Settlement Agreement used in the Baseline Assessment Program.

(c) "Claim" means any Claim Package (or portion of a Claim Package) submitted to the Claims Administrator seeking or relating to a Monetary Award or Supplemental Monetary Award, or a Derivative Claim Package (or any portion of a Derivative Claim Package) submitted to the Claims Administrator seeking a Derivative Claimant Award.

(d) "Examining Neuropsychologist" means the neuropsychologist to whom a Qualified MAF Physician has referred a Retired NFL Football Player for neuropsychological testing and evaluation or the neuropsychologist who conducted previous neuropsychological testing on the Retired NFL Football Player on which a Qualified MAF Physician is permitted to rely under the Settlement Agreement, these Rules or as directed by the Claims Administrator.

(e) "MAF Examination" means the in-person examination and evaluation of a Retired NFL Football Player by a Qualified MAF Physician and the provision of a diagnosis and the other actions required by these Rules as to the examination, evaluation and diagnosis.



(f) "MAF Steering Committee" means the advisory group of up to 10 Qualified MAF Physicians described in Rule 24.

(g) "Portal" means the online system created by the Claims Administrator for the exchange of materials and information between Qualified MAF Physicians and the Claims Administrator in the Settlement Program.

(h) "Settlement Agreement" means the Amended Class Action Settlement Agreement dated as of June 25, 2014, as amended on February 13, 2015 (the "Settlement Agreement") and approved in the Court's May 8, 2015 Amended Final Approval Order and Judgment (Document 6534).

(i) "Settlement Program" means the program for benefits for Settlement Class Members established under the Settlement Agreement.

(j) "Special Master" and "Special Masters" mean any one or both of the two Special Masters appointed by the Court in its July 13, 2016 Order (Document 6871) or appointed in any subsequent Order of the Court.

## TITLE II: ENGAGEMENT AND TRAINING

**Rule 4.  Execution of Participating Qualified MAF Physician Agreement.** The Qualified MAF Physician must sign the Participating Qualified MAF Physician Agreement and return it to the Claims Administrator within 60 days after the Claims Administrator sends the Agreement to the Qualified MAF Physician, unless the Claims Administrator extends that period.

**Rule 5.  Required Education Before Rendering Services as a Qualified MAF Physician.** The Claims Administrator will adopt and issue such checklists, newsletters, guidance documents, training materials and other informational materials and methodologies as it determines will assist Qualified MAF Physicians in the understanding and application of the Settlement Agreement and compliance with its terms. Before conducting MAF Examinations of any Retired NFL Football Players, a Qualified MAF Physician must:

(a) Review and become familiar with: (1) these Rules; (2) the Qualified MAF Physician Manual; and (3) any other materials provided by the Claims Administrator; and

(b) Participate in orientation and training sessions as directed by the Claims Administrator.

**Rule 6.  Continuous Education.** A Qualified MAF Physician must participate in on-going and refresher training at the direction of the Claims Administrator to maintain understanding of the Settlement Program diagnostic criteria and learn about developments in the Program affecting service as a Qualified MAF Physician. The Claims Administrator will attempt to provide courses that qualify for continuing medical education (CME) credits in the Qualified MAF Physician's jurisdiction.



## TITLE III: GENERAL PROCEDURES

**Rule 7.    Publication of Status as a Qualified MAF Physician.**  A Qualified MAF Physician may publicize his or her status as a Qualified MAF Physician in announcements, on a website and in promotional materials, in a professional manner and using content approved by the Claims Administrator or as approved by the Special Masters. Others may use such content to publicize the Qualified MAF Physician network and Qualified MAF Physicians with the permission of the Special Masters. No person or party other than the National Football League or appropriate Member Club may make any use of the logos or other tradename or trademarked materials of the National Football League or any Member Club.

**Rule 8.    Scheduling of MAF Examinations with Settlement Class Members.**  Except as modified by these Rules, a Qualified MAF Physician may follow his or her normal policies for scheduling, sending reminders and communicating with the Settlement Class Member relating to an MAF Examination.

**Rule 9.    150-Mile Rule for MAF Examinations.**  The MAF Examination of a Retired NFL Football Player must occur in a medical office or facility by a Qualified MAF Physician whose practice is located within 150 miles of the Retired NFL Football Player's primary residence. A Qualified MAF Physician may not perform an MAF exam in a location other than his or her regular practice without prior approval from the Claims Administrator. The Claims Administrator may grant a request by a Retired NFL Football Player for an exception to this 150-Mile Rule where:

(a) No Qualified MAF Physician within 150 Miles: No Qualified MAF Physician is located within 150 miles of the Retired NFL Football Player's primary residence.

(b) No Qualified MAF Physician Available: The wait time for an appointment with a Qualified MAF Physician within 150 miles of the Retired NFL Football Player's primary residence exceeds 100 days.

(c) Doctor-Patient Relationship: The Retired NFL Football Player and the Qualified MAF Physician have a current or pre-existing doctor-patient relationship arising from treatment or other services by the Qualified MAF Physician to the Retired NFL Football Player.

(d) Other Circumstances: Such other circumstances that, in the Claims Administrator's discretion, warrant an exception to the 150-Mile Rule.

**Rule 10.   Neuropsychological Testing.**

(a) **Appropriate Neuropsychologists:** If neuropsychological testing is required as part of the MAF Examination of a Retired NFL Football Player, the Qualified MAF Physician must refer the Retired NFL Football Player to an Examining Neuropsychologist who: (1) is a Qualified BAP Provider; or (2) the Claims Administrator previously has approved use of the neuropsychologist by the Qualified MAF Physician as an Examining Neuropsychologist.

3

4/10/19



- **(b) 50-Mile Rule for Examining Neuropsychologists:** The practice of the Examining Neuropsychologist must be located within 50 miles of the office of the Qualified MAF Physician and the examination must occur in an office or medical facility of that practice. An Examining Neuropsychologist may not perform the examination in a location other than his or her regular practice without prior approval from the Claims Administrator. The Claims Administrator has discretion to grant exceptions to this general rule, upon request by a Qualified MAF Physician, under the circumstances set forth in Rule 9 for exceptions to the 150-Mile Rule for Qualified MAF Physicians.

- **(c) Previous Neuropsychological Testing**: If the Qualified MAF Physician receives results of prior neuropsychological testing performed by a Qualified BAP Provider, the testing must have been performed within one year before the date of the Qualifying Diagnosis. If the Qualified MAF Physician receives results of neuropsychological testing performed by a neuropsychologist other than the neuropsychologist to whom the Qualified MAF Physician referred the Retired NFL Football Player or a Qualified BAP Provider, or if neuropsychological testing was performed more than a year before the date of the Qualifying Diagnosis, the Qualified MAF Physician must contact the Claims Administrator before using the results of that neuropsychological testing as a basis for impairment (as opposed to baseline information to compare against contemporaneous neuropsychological testing) when rendering a Qualifying Diagnosis.

- **(d) Use by a Qualified MAF Physician of Reports from the Examining Neuropsychologist:** A Qualified MAF Physician is to consider the conclusions of an Examining Neuropsychologist but is to determine what weight to be given to them, based upon the Qualified MAF Physician's sound medical judgment. If the Qualified MAF Physician disagrees with the conclusions of the Examining Neuropsychologist, the Qualified MAF Physician should confer with the Examining Neuropsychologist, make a diagnosis based on the sound medical judgment of the Qualified MAF Physician and explain to the Claims Administrator the basis of the diagnosis.

**Rule 11. Information on All MAF Appointments.** A Qualified MAF Physician will provide the Claims Administrator information about each MAF Examination, including the Retired NFL Football Player's name, the date of the appointment and the result of the appointment, including whether he or she found a Qualifying Diagnosis or no diagnosis, what the diagnosis was, whether additional testing is needed before a diagnosis can be rendered, and such other information and records as required by the Claims Administrator.

**Rule 12. Information on Charges and Insurance.** The Qualified MAF Physician will provide to the Claims Administrator complete, accurate and current information regarding: (a) the fee and types of expenses charged by the Qualified MAF Physician for an MAF Examination; (b) whether the Qualified MAF Physician accepts insurance for an MAF Examination; and (c) whether the fees and charges vary depending on whether the Retired NFL Football Player has insurance or is self-pay and, if so, in what respects.

4

4/10/19



**Rule 13.  Avoidance of Questionable Practices.**  A Qualified MAF Physician must perform all actions relating to the Settlement Program to the best of his or her professional ability and integrity and avoid any impropriety or the appearance of impropriety.  In addition to that general standard, a Qualified MAF Physician specifically cannot:

- (a) Accept from a Settlement Class Member or his or her lawyer, law firm or any other person or entity any payment (except for the provision of services rendered), gifts, trips, dinners, entertainment, or anything else of value that could be perceived as a conflict of interest;

- (b) Be influenced in his or her methodology for performing MAF examinations or rendering diagnoses by a Settlement Class Member's lawyer, law firm or any other person or entity;

- (c) Communicate solely with a Settlement Class Member's lawyer, law firm or any other person or entity to the exclusion of the Settlement Class Member, except with regard to administrative items such as scheduling or medical record requests, without the express prior written permission from the Claims Administrator;

- (d) Predict, guarantee or assure the Settlement Class Member or his or her lawyer, law firm or any other person or entity, before examining the Retired NFL Football Player, that he or she will render a Qualifying Diagnosis;

- (e) Enter into an agreement, contract, business or financial arrangement with a lawyer, law firm or any other person or entity regarding the evaluation of a Settlement Class Member other than for the payment of the usual and customary charge for the medical examination;

- (f) Sign a Diagnosing Physician Certification Form for a Retired NFL Football Player whom he or she did not personally examine;

- (g) Allow a Settlement Class Member or his or her lawyer, law firm or any other person or entity to complete a Diagnosing Physician Certification Form on behalf of a Qualified MAF Physician or for the Qualified MAF Physician to sign;

- (h) Refer or recommend a lawyer, law firm or any other representative or entity to a Settlement Class Member;

- (i) Use the information learned during an MAF Examination in his or her research, writing, or other professional activities without the express prior written permission from the Claims Administrator;

- (j) Conduct an MAF Examination at a location other than a standard treatment or diagnosis setting (*e.g.*, hotel rooms) without the express prior written permission from the Claims Administrator; or

5

4/10/19



(k) Conduct an MAF Examination or render any diagnosis on a Retired NFL Football Player represented by a lawyer or law firm for whom or for which the Qualified MAF Physician provides services as a consulting or testifying expert witness.

A Qualified MAF Physician who engages in any of the actions prohibited by this Rule must report them to the Claims Administrator immediately. After considering such report and any such information the Claims Administrator receives in any manner, the Claims Administrator may terminate the Qualified MAF Physician immediately from participating in the Program.

## TITLE IV: PERFORMANCE OF MAF EXAMINATIONS

**Rule 14. MAF Examinations of Retired NFL Football Players.** A Qualified MAF Physician must perform MAF Examinations in accordance with: (a) the Settlement Agreement, including the Injury Definitions in Exhibit 1 to the Settlement Agreement; (b) these Rules; (c) the Qualified MAF Physician Manual and any other instructions and materials provided by the Claims Administrator; and (d) sound medical judgment. A Qualifying Diagnosis rendered by a Qualified MAF Physician must comply with (a) through (d) of this Rule and must be based on the Qualified MAF Physician's independent assessment of the Retired NFL Football Player and analysis of any testing results and applicable medical and other records concerning the Retired NFL Football Player.

**Rule 15. Employment Activities of the Retired NFL Football Player.** As part of an MAF Examination, a Qualified MAF Physician must obtain from the Retired NFL Football Player and any person serving as an informant providing information about the Retired NFL Football Player complete information regarding any employment and business activities in which the Retired NFL Football Player is involved at the time of the MAF Examination and/or during the five years preceding the date of the MAF Examination.

**Rule 16. Activities of the Retired NFL Football Player Outside the Home.** As part of an MAF Examination, a Qualified MAF Physician must obtain from the Retired NFL Football Player and any person serving as an informant providing information about the Retired NFL Football Player complete information regarding any social, community, recreational or other activities by the Retired NFL Football Player outside the home around the time of the MAF Examination, whether these activities have changed over the five years preceding the date of the MAF Examination and, if so, how they have changed. An informant must explain in detail the informant's relationship with the Retired NFL Football Player.

## TITLE V: QUALIFYING DIAGNOSES

**Rule 17. Submissions to the Claims Administrator on a Qualifying Diagnosis.** If the Qualified MAF Physician determines that the Retired NFL Football Player has a Qualifying Diagnosis, the Qualified MAF Physician must document the Qualifying Diagnosis and submit to the Claims Administrator: (a) a completed and signed MAF Diagnosing Physician Certification form; and (b) all medical records supporting the Qualifying Diagnosis, including: (1) a report



summarizing and explaining the Qualified MAF Physician's evaluation of the Player, the conduct of the MAF Examination and the basis for the finding of a Qualifying Diagnosis; (2) any CDR questionnaire/worksheet completed by the Qualified MAF Physician or the neuropsychologist for evaluating the Player's functional impairment; (3) any documentary evidence or third-party sworn affidavit corroborating the Player's functional impairment that the Qualified MAF Physician reviewed in making the diagnosis; (4) any neuropsychological testing evaluation the Qualified MAF Physician reviewed or relied on to make the diagnosis; (5) any historical medical records from other healthcare providers and any other records and materials the Qualified MAF Physician reviewed or relied on to make the diagnosis; (6) any other imaging or test results the Qualified MAF Physician reviewed or relied on to make the diagnosis; (7) such other explanations and materials as the Claims Administrator may require in connection with all MAF Examinations or with respect to a particular MAF Examination. Each Qualified MAF Physician must preserve all supporting medical records relating to the Qualifying Diagnosis for the longer of (a) 10 years after the date of the examination resulting in the Qualifying Diagnosis or (b) the period of time required under applicable state and federal laws.

**Rule 18.   Provision of Results to the Retired NFL Football Player.**  Upon the request of a Retired NFL Football Player or his authorized representative, a Qualified MAF Physician will give a copy of the MAF Diagnosing Physician Certification form and related medical records to the requesting party.

## TITLE VI:  ADDITIONAL PROCEDURES FOR LEVEL 1.5 AND LEVEL 2 QUALIFYING DIAGNOSES

**Rule 19.   Neuropsychological Testing Used for Qualifying Diagnoses of Level 1.5 Neurocognitive Impairment or Level 2 Neurocognitive Impairment.**  If a Qualified MAF Physician determines that the Retired NFL Football Player has a Qualifying Diagnosis of Level 1.5 or Level 2 Neurocognitive Impairment, the neuropsychological testing evaluation submitted to the Claims Administrator on the Retired NFL Football Player must identify the tests that were administered by the Qualified MAF Physician and/or the Examining Neuropsychologist and must include raw scores, scaled scores and T scores from those tests.

**Rule 20.   Qualifying Diagnoses that Deviate from the BAP Diagnostic Criteria.**  To the extent that a Qualified MAF Physician and/or the Examining Neuropsychologist making a Qualifying Diagnosis of Level 1.5 or Level 2 Neurocognitive Impairment uses diagnostic criteria that differ from those set forth in the Settlement Agreement for Level 1.5 (*i.e.*, early dementia) or Level 2 (*i.e.*, moderate dementia) Neurocognitive Impairment diagnosed in the Baseline Assessment Program, the Qualified MAF Physician must explain in writing, in the method prescribed by the Claims Administrator and to the satisfaction of the Claims Administrator, any deviation from the BAP diagnostic criteria and must obtain information from the Examining Neuropsychologist as is necessary to provide a complete explanation. Deviation from the BAP diagnostic criteria occurs and an explanation must be provided when:

(a) **BAP Test Battery Results:** The Retired NFL Football Player was administered the complete BAP Test Battery used in the Baseline Assessment Program and the resulting test scores do not meet the thresholds necessary to support the Qualifying

7

4/10/19



Diagnosis under the BAP criteria in Settlement Agreement Ex. 2.

**(b) Incomplete BAP Test Battery:** The neuropsychological test battery administered to the Retired NFL Football Player was not the complete BAP Test Battery.

**(c) Additional Testing:** The neuropsychological tests administered to the Retired NFL Football Player included tests that are not part of the BAP Test Battery.

**(d) Performance Validity Testing:** The Retired NFL Football Player was assigned scores or results indicating that the player failed two or more of the embedded and/or stand-alone performance validity measures in the neuropsychological test battery and/or where the application of the clinical criteria for assessing performance validity under Slick *et al.* otherwise indicates that the test data may not be a valid reflection of his optimal level of neurocognitive functioning.

**(e) Other Circumstances:** The Claim Package presents other matters that the Claims Administrator determines deviate from the diagnostic criteria set forth in the Settlement Agreement and/or present significant questions about the Qualifying Diagnosis or diagnostic work of the diagnosing physician or supporting neuropsychologist.

## TITLE VII: ASSISTANCE BY THE CLAIMS ADMINISTRATOR

**Rule 21.   Analysis of Claims Based on Diagnoses from Qualified MAF Physicians.** The Claims Administrator monitors Claim Packages received based on Qualifying Diagnoses made by Qualified MAF Physicians to assess and assist with compliance with the Settlement Agreement and these Rules.

**Rule 22.   Assistance by the Claims Administrator in the Operation of the Network of Qualified MAF Physicians.** The Claims Administrator assists in the operation of the network of Qualified MAF Physicians by these actions:

**(a) Portal Activity:** Monitors the use by each Qualified MAF Physician of his or her Portal with the Claims Administrator, provision of appointment information, scheduled and reported appointments, and the other matters covered by these Rules.

**(b) Complete Claim Packages:** Analyzes any questions raised in its Claims Review regarding provision by Qualified MAF Physicians of complete materials and explanations on Qualifying Diagnoses and other matters affecting compliance with the Settlement Agreement and these Rules.

**(c) Claim Outcomes:** Analyzes the outcomes in Claims Review, Audit and Monetary Award Appeals on all diagnoses made by a Qualified MAF Physician and any feedback from the AAP and AAPC on any claims they have reviewed involving Qualifying Diagnoses made by Qualified MAF Physicians.



**(d) Public Information:** Monitors public statements, publications, or general mentions about the Qualified MAF Physicians on the internet and investigates potential violations of the Participating Qualified MAF Physician Agreement or ethical issues.

**(e) Inquiries from Settlement Class Members:** Follows up on questions from Settlement Class Members and their representatives regarding the operation of the network of Qualified MAF Physicians.

**(f) Issues Raised by the Court, Special Masters or Parties:** Follows up on questions and suggestions regarding scheduling, availability, or other aspects of the delivery of services by Qualified MAF Physicians as raised by the Court, Special Masters, Co-Lead Class Counsel and/or counsel for the NFL Parties.

**Rule 23.   AAP Leadership Council.**   Two AAP Members serve as the Claims Administrator's AAP Leadership Council to provide the Claims Administrator advice and assistance on any medical issues arising in the monitoring of the work of Qualified MAF Physicians. This includes review of specific claims or groups of claims at the Claims Administrator's request to determine compliance by Qualified MAF Physicians with the Settlement Agreement and these Rules and whether a Claim Package reflects and supports the Qualifying Diagnosis stated in the Diagnosing Physician Certification form. The AAP Leadership Council is appointed by and works at the Claims Administrator's direction, as overseen by the Special Masters.

**Rule 24.   MAF Steering Committee.**   The Claims Administrator may be assisted by a group of not more than 10 Qualified MAF Physicians who serve as the Claims Administrator's MAF Steering Committee to render advice and assistance on providing peer-to-peer feedback to Qualified MAF Physicians and suggestions to the Claims Administrator on how to improve the operations and performance of the network of Qualified MAF Physicians. The MAF Steering Committee is appointed by and works at the Claims Administrator's direction, as overseen by the Special Masters.

**Rule 25.   Follow-Up Actions with a Qualified MAF Physician.**

**(a) Additional Guidance:** If an operational or performance issue identified by the Claims Administrator is one on which the Qualified MAF Physician may benefit from additional guidance or training, the Claims Administrator reviews the matter with him or her and provides any needed refresher training or instructions, with input and involvement by a member of the AAP Leadership Council and/or the MAF Steering Committee as appropriate. Such training may be done live in-person, by phone, or online, depending on the issues and physician involved. If the Qualified MAF Physician is also a Qualified BAP Provider, the Claims Administrator consults with the BAP Administrator on all matters involving that physician to coordinate the Claims Administrator's analysis and response.

**(b) Changes by the Qualified MAF Physician:** If, after consultation with the Claims Administrator, a Qualified MAF Physician determines he or she would like to change a diagnosis already made and the Claims Administrator has a Monetary Award claim

9



resting on that diagnosis that has not been paid, the Claims Administrator may place an MAF Monitoring Hold on the claim to stay issuing notices or denials or payments on the claim. After receiving any such changes from the Qualified MAF Physician, the Claims Administrator will process the claim accordingly, which may lead to retraction and replacement of previous notices issued on the claim. Neither the Claims Administrator, the AAP Leadership Council, nor the MAF Steering Committee may at any time direct a Qualified MAF Physician to alter a diagnosis or to render a particular diagnosis.

**Rule 26. Suspension of a Qualified MAF Physician.** If the Claims Administrator determines there is a need to do so, the Claims Administrator may suspend the Qualified MAF Physician from participation in the Program for a period of up to 90 days by sending written notice of suspension to the Qualified MAF Physician. During the suspension period, the Claims Administrator will add a notation to the Qualified MAF Physician's name on the list of Qualified MAF Physicians posted on the Settlement Website to explain that the Qualified MAF Physician is suspended and is not authorized to make Qualifying Diagnoses or sign Diagnosing Physician Certification Forms as a Qualified MAF Physician while suspended. The Claims Administrator will not accept any Qualifying Diagnoses based on examinations during a suspension period. Any Settlement Class Members the Qualified MAF Physician sees or communicates with during this period of suspension must be informed that his or her privileges have been suspended and that he or she is not qualified to render Qualifying Diagnoses in support of Claims. On or before the end of the suspension period, the Claims Administrator will restore the Qualified MAF Physician to active status on the posted list or take such other action as the Claims Administrator determines appropriate.

**Rule 27. Termination of a Qualified MAF Physician.** The Participating Qualified MAF Physician Agreement provides that either party to that Agreement may in its sole discretion terminate the Agreement by providing 30 days' prior written notice to the other party. Under this provision, the Claims Administrator may terminate the Qualified MAF Physician from participation in the Program by giving the Qualified MAF Physician a written notice with a termination date 30 days after the date of the notice. In that instance, the Claims Administrator adds a notation to the Qualified MAF Physician's name on the list of Qualified MAF Physicians posted on the Settlement Website to explain that the physician's appointment as a Qualified MAF Physician will end on the termination date. The Participating Qualified MAF Physician Agreement also allows the Claims Administrator to terminate a Qualified MAF Physician immediately upon a finding of fraudulent diagnoses. The Claims Administrator has discretion to have the AAP and/or the AAPC review a diagnosis by a terminated Qualified MAF Physician on any Monetary Award claim that has not been paid to determine whether the Settlement Class Member qualifies for a Monetary Award and then issue such notices as are appropriate.

