# Exhibit 4

(f) A Qualifying Diagnosis of Death with CTE shall be made only for Retired NFL Football Players who died prior to the Final Approval Date, through a post-mortem diagnosis made by a board-certified neuropathologist prior to the Final Approval Date, provided that a Retired NFL Football Player who died between July 7, 2014 and the Final Approval Date shall have until 270 days from his date of death to obtain such a post-mortem diagnosis.

Section 6.4   Qualifying Diagnosis Review by Appeals Advisory Panel.

(a) A member of the Appeals Advisory Panel must review, as set forth in Section 6.4(b), Qualifying Diagnoses made prior to the Effective Date by:

(i) A board-certified neurologist, board-certified neurosurgeon, or other board-certified neuro-specialist physician, who is not a Qualified MAF Physician, between July 1, 2011 and the Effective Date;

(ii) A neurologist, neurosurgeon, or other neuro-specialist physician, who is not board-certified but is otherwise qualified; and

(iii) A physician who is not a Qualified MAF Physician and who is not otherwise identified in Section 6.4(a)(i)-(ii) but who has sufficient qualifications (i) in the field of neurology to make a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, Alzheimer's Disease, Parkinson's Disease, or ALS, or (ii) in the field of neurocognitive disorders to make a Qualifying Diagnosis of Level 1.5 Neurocognitive Impairment or Level 2 Neurocognitive Impairment.

(b) If a review of a Qualifying Diagnosis by a member of the Appeals Advisory Panel is required by Section 6.4(a), the contents of the Claim Package relevant to the Qualifying Diagnosis, including the Claim Form, the Diagnosing Physician Certification, medical records supporting and reflecting the Qualifying Diagnosis, and any other related materials concerning the Qualifying Diagnosis, shall be submitted to a member of the Appeals Advisory Panel for review. The Appeals Advisory Panel member will determine whether the Retired NFL Football Player or deceased Retired NFL Football Player has the Qualifying Diagnosis reported in the Diagnosing Physician Certification, or, where there is no Diagnosing Physician Certification as set forth in Section 8.2(a), reported in the Claim Package submitted by the Representative Claimant. The Appeals Advisory Panel member shall review the Qualifying Diagnosis based on principles generally consistent with the diagnostic criteria set forth in Exhibit 1 (Injury Definitions), including consideration of, without limitation, the qualifications of the diagnosing physician, the supporting medical records and the year and state of medicine in which the Qualifying Diagnosis was made. The Appeals Advisory Panel member also shall confirm that the Qualifying Diagnosis was made by an appropriate physician as set forth in Section 6.3. For the avoidance of any doubt, the review of whether a Qualifying Diagnosis is based on principles generally consistent with the diagnostic criteria set forth in Exhibit 1 (Injury Definitions) does not require identical

diagnostic criteria, including without limitation, the same testing protocols or documentation requirements.

(i) The review by a member of the Appeals Advisory Panel under this subsection, absent extraordinary circumstances impacting the schedule of such member, shall be completed within forty-five (45) days of the date on which he or she receives a Settlement Class Member's file, except such time limit may be altered to the extent the volume of files warrants, either by agreement between Co-Lead Class Counsel and Counsel for the NFL Parties, subject to approval by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof), or by application by Co-Lead Class Counsel or Counsel for the NFL Parties to the Court. The Qualifying Diagnoses shall generally be reviewed in the order in which they are received.

Section 6.5   Qualified MAF Physicians

(a) Within ninety (90) days after the Effective Date, the Claims Administrator will establish and maintain a list of Qualified MAF Physicians eligible to provide Qualifying Diagnoses. Each Qualified MAF Physician shall be approved by Co-Lead Class Counsel and Counsel for the NFL Parties, which approval shall not be unreasonably withheld. To the extent a Retired NFL Football Player is examined by a Qualified MAF Physician, such visit and examination shall be at the Retired NFL Football Player's own expense.

(b) The Claims Administrator will select Qualified MAF Physicians based on the following criteria: (a) education, training, licensing, credentialing, board certification, and insurance coverage; (b) ability to provide the specified examinations necessary to make Qualifying Diagnoses; (c) ability to provide all required examinations and services in a timely manner; (d) insurance accessibility; and (e) geographic proximity to Retired NFL Football Players. Under no circumstances will a Qualified MAF Physician be selected or approved who has been convicted of a crime of dishonesty, or who is serving on or after the Final Approval Date as a litigation expert consultant or expert witness for an Opt Out, or his, her or its counsel in connection with litigation relating to the subject matter of the Class Action Complaint. If selected and approved, under no circumstances shall a Qualified MAF Physician continue to serve in that role if convicted of a crime of dishonesty and/or thereafter retained as a litigation expert consultant or expert witness for an Opt Out, or his, her or its counsel in connection with litigation relating to the subject matter of the Class Action Complaint.

(c) In order to be eligible for selection, each Qualified MAF Physician must provide the following information to the Claims Administrator: (a) state professional license number; (b) National Provider Identifier; (c) board-certification information; (d) evidence of proper licensing and insurance coverage under applicable state laws; (e) experience, including number of years as a healthcare provider; (f) primary and additional service locations; (g) mailing and billing addresses; (h) tax identification information; (i) ability to provide all required examinations and services in a timely manner; (j) capacity for new patients; (k) appointment accessibility; (l) languages spoken;

(i) Settlement Class Members may make a hardship request to the Claims Administrator and ask that the fee of One Thousand United States dollars (U.S. $1,000) be waived for good cause. The Claims Administrator will require that the Settlement Class Member provide such financial information as may be necessary to decide the request to waive the fee, which request shall be approved or denied in the Claims Administrator's sole discretion.

(b) The NFL Parties may appeal Monetary Award or Derivative Claimant Award determinations in good faith. To the extent that Co-Lead Class Counsel believe that the NFL Parties are submitting vexatious, frivolous or bad faith appeals, Co-Lead Class Counsel may petition the Court for appropriate relief.

Section 9.7   Submissions on Appeals

(a) The appellant must submit to the Court his or her notice of appeal, using an Appeals Form to be agreed upon by Co-Lead Class Counsel and the NFL Parties and provided by the Claims Administrator, with written copy to the appellee(s) Settlement Class Member or the NFL Parties (as applicable), Co-Lead Class Counsel, and to the Claims Administrator, no later than thirty (30) days after receipt of a Notice of Monetary Award Claim Determination or Notice of Derivative Claimant Award Determination. Appellants must present evidence in support of their appeal, and any written statements may not exceed five (5) single-spaced pages in length.

(b) The appellee(s) may submit a written opposition to the appeal no later than thirty (30) days after receipt of the Appeals Form. This written opposition must not exceed five (5) single-spaced pages in length. The Court will not deem the lack of an opposition to be an admission regarding the merits of the appeal. The appellant may not submit a reply.

(c) Co-Lead Class Counsel may submit a written statement in support of or opposition to the appeal no later than fifteen (15) days after receipt of the Appeals Form or an appellee's written opposition. This written statement must not exceed five (5) single-spaced pages in length. The Court will not deem the lack of a statement to be an admission regarding the merits of the appeal. The appellant and appellee(s) may each submit a reply.

Section 9.8   Review and Decision.   The Court will make a determination based upon a showing by the appellant of clear and convincing evidence. The Court may be assisted, in its discretion, by any member of the Appeals Advisory Panel and/or an Appeals Advisory Panel Consultant. The decision of the Court will be final and binding.

(a) Appeals Advisory Panel and Appeals Advisory Panel Consultants

(i) Within ninety (90) days after the Effective Date, Co-Lead Class Counsel and Counsel for the NFL Parties will agree to, and jointly recommend to the Court for appointment, the members of the Appeals Advisory Panel

48

there are multiple Derivative Claimants asserting valid claims based on the same subject Retired NFL Football Player, the Claims Administrator will divide and distribute the Derivative Claimant Award among those Derivative Claimants pursuant to the laws of the domicile of the Retired NFL Football Player (or his Representative Claimant, if any).

## ARTICLE VIII
## Submission and Review of Claim Packages
## and Derivative Claim Packages

Section 8.1   All Settlement Class Members applying for Monetary Awards or Derivative Claimant Awards must submit Claim Packages or Derivative Claim Packages to the Claims Administrator.

Section 8.2   Content

(a)   The content of Claim Packages will be agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties, and will include, without limitation: (i) a Claim Form with the Personal Signature of the Retired NFL Football Player (or Representative Claimant) either on the Claim Form or on an acknowledgement form verifying the contents of the Claim Form; (ii) a Diagnosing Physician Certification; (iii) medical records reflecting the Qualifying Diagnosis; (iv) a HIPAA-compliant authorization form; and (v) records in the possession, custody or control of the Settlement Class Member demonstrating employment and participation in NFL Football.

(i)   Representative Claimants of Retired NFL Football Players who died prior to the Effective Date do not need to include a Diagnosing Physician Certification in the Claim Package if the physician who provided the Qualifying Diagnosis, as set forth in Exhibit 1, also died prior to the Effective Date or was deemed by a court of competent jurisdiction legally incapacitated or incompetent prior to the Effective Date. Instead, the Representative Claimant must provide evidence of that physician's death, incapacity or incompetence and of the qualifications of the diagnosing physician. For the avoidance of any doubt, all other content of Claim Packages must be submitted, including medical records reflecting the Qualifying Diagnosis.

(ii)   In cases where a deceased Retired NFL Football Player received a Qualifying Diagnosis but the medical records reflecting the Qualifying Diagnosis are unavailable because of a force majeure type event (*e.g.*, flood, hurricane, fire), the Claims Administrator, upon petition by the Representative Claimant, may determine the Claim Package to be valid without the medical records if the Representative Claimant makes a showing of a reasonable effort to obtain the medical records from any available source and presents a certified death certificate referencing the Qualifying Diagnosis made while the Retired NFL Football Player was living. For the avoidance of any doubt, the Claims Administrator has the sole discretion to determine the sufficiency of this showing, subject to the appeal rights set forth in Section 9.5. If the unavailability of medical records also causes the diagnosing physician to be unable to provide a Diagnosing Physician Certification, the Claims Administrator, upon petition by

the Representative Claimant, and in addition to the presentation of a certified death certificate referencing the Qualifying Diagnosis made while the Retired NFL Football Player was living, may instead allow an accompanying sworn affidavit from the diagnosing physician attesting to the reasons why the diagnosing physician is unable to provide a Diagnosing Physician Certification without the medical records. The Claims Administrator has the sole discretion to determine the sufficiency of this showing, subject to the appeal rights set forth in Section 9.5.

(iii) In cases where a Retired NFL Football Player has received a Qualifying Diagnosis and the diagnosing physician who provided the Qualifying Diagnosis, as set forth in Exhibit 1, has died or has been deemed by a court of competent jurisdiction legally incapacitated or incompetent prior to the Effective Date, or otherwise prior to completing a Diagnosing Physician Certification, the Retired NFL Football Player (or his Representative Claimant, if applicable) may obtain a Diagnosing Physician Certification from a separate qualified physician for the Qualifying Diagnosis as specified in Exhibit 1 based on an independent examination by the qualified physician and a review of the Retired NFL Football Player's medical records that formed the basis of the Qualifying Diagnosis by the deceased or legally incapacitated or incompetent physician. If the same Qualifying Diagnosis is found by both doctors, the date of Qualifying Diagnosis used to calculate Monetary Awards shall be the date of the earlier Qualifying Diagnosis.

(b) The content of Derivative Claim Packages will be agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties, and will include, without limitation: (i) a Derivative Claim Form with the Personal Signature of the Derivative Claimant either on the Derivative Claim Form or on an acknowledgement form verifying the contents of the Derivative Claim Form; and (ii) records sufficient to verify the relationship with the subject Retired NFL Football Player or deceased Retired NFL Football Player that properly and legally provides the Derivative Claimant the right under applicable state law to sue independently and derivatively.

(c) All statements made in Claim Forms, Derivative Claim Forms, any acknowledgement forms, and Diagnosing Physician Certifications will be sworn statements under penalty of perjury.

(d) Each Settlement Class Member has the obligation to submit to the Claims Administrator all of the documents required in Section 8.2 to receive a Monetary Award or Derivative Claimant Award.

Section 8.3   Submission

(a) Settlement Class Members must submit Claim Packages and Derivative Claim Packages to the Claims Administrator in accordance with Section 30.15.

(i) Claim Packages must be submitted to the Claims Administrator no later than two (2) years after the date of the Qualifying Diagnosis or

40

within two (2) years after the Settlement Class Supplemental Notice is posted on the Settlement Website, whichever is later. Failure to comply with this two (2) year time limitation will preclude a Monetary Award for that Qualifying Diagnosis, unless the Settlement Class Member can show substantial hardship that extends beyond the Retired NFL Football Player's Qualifying Diagnosis and that precluded the Settlement Class Member from complying with the two (2) year deadline, and submits the Claim Package within four (4) years after the date of the Qualifying Diagnosis or after the Settlement Class Supplemental Notice is posted on the Settlement Website, whichever is later.

(ii) Derivative Claim Packages must be submitted to the Claims Administrator no later than thirty (30) days after the Retired NFL Football Player through whom the relationship is the basis of the claim (or the Representative Claimant of a deceased or legally incapacitated or incompetent Retired NFL Football Player through whom the relationship is the basis of the claim) receives a Notice of Monetary Award Claim Determination that provides a determination that the Retired NFL Football Player (or his Representative Claimant) is entitled to a Monetary Award. Failure to comply with this time limitation will preclude a Derivative Claimant Award based on that Monetary Award.

(b) Each Settlement Class Member will promptly notify the Claims Administrator of any changes or updates to the information the Settlement Class Member has provided in the Claim Package or Derivative Claim Package, including any change in mailing address.

(c) All information submitted by Settlement Class Members to the Claims Administrator will be recorded in a computerized database that will be maintained and secured in accordance with all applicable federal, state and local laws, regulations and guidelines, including, without limitation, HIPAA. The Claims Administrator must ensure that information is recorded and used properly, that an orderly system of data management and maintenance is adopted, and that the information is retained under responsible custody. The Claims Administrator will keep the database in a form that grants access for claims administration use, but otherwise restricts access rights, including to employees of the Claims Administrator who are not working on claims administration for the Class Action Settlement.

(i) The Claims Administrator and Lien Resolution Administrator, and their respective agents, representatives, and professionals who are administering the Class Action Settlement, will have access to all information submitted by Settlement Class Members to the Claims Administrator and/or Lien Resolution Administrator necessary to perform their responsibilities under the Settlement Agreement.

(ii) All information submitted by Settlement Class Members to the Claims Administrator will be treated as confidential, as set forth in Section 17.2.

Section 8.4    Preliminary Review

(a)    Within forty-five (45) days of the date on which the Claims Administrator receives a Claim Package or Derivative Claim Package from a Settlement Class Member, the Claims Administrator will determine the sufficiency and completeness of the required contents, as set forth in Section 8.2. To the extent the volume of claims warrants, this deadline may be extended by agreement between Co-Lead Class Counsel and Counsel for the NFL Parties, subject to approval by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof).

(b)    The Claims Administrator will reject a claim submitted by a Settlement Class Member, subject to the cure provisions of Section 8.5, if the Claims Administrator has not received all required content.

Section 8.5    Deficiencies and Cure. For rejected Claim Packages or Derivative Claim Packages, the Claims Administrator will send a Notice of Deficiency to the Settlement Class Member, which Notice will contain a brief explanation of the Deficiency(ies) giving rise to rejection of the Claim Package or Derivative Claim Package, and will, where necessary, request additional information and/or documentation. The Claims Administrator will make available to the Settlement Class Member through a secure online web interface any document(s) with a Deficiency needing correction or, upon request from the Settlement Class Member, will mail the Settlement Class Member a copy of such document(s). The Notice of Deficiency will be sent no later than forty-five (45) days from the date of receipt of the Claim Package or Derivative Claim Package by the Claims Administrator. To the extent the volume of claims warrants, this deadline may be extended by agreement between Co-Lead Class Counsel and Counsel for the NFL Parties, subject to approval by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof). The Notice of Deficiency will contain a recommendation for how, if possible, the Settlement Class Member can cure the Deficiency, and will provide a reasonable deadline not less than 120 days (from the date the Notice of Deficiency is sent to the Settlement Class Member) for the Settlement Class Member to submit Deficiency cure materials. Within that time period, the Settlement Class Member will have the opportunity to cure all Deficiencies and provide any requested additional information or documentation, except that the failure to submit timely a Claim Package or Derivative Claim Package in accordance with the terms of this Settlement Agreement cannot be cured other than upon a showing of substantial hardship as set forth in Section 8.3(a)(i). Any Claim Package or Derivative Claim Package that continues to suffer from a Deficiency identified on the Notice of Deficiency following the submission of documentation intended to cure the Deficiency will be denied by the Claims Administrator.

Section 8.6    Verification and Investigation

(a)    Each Settlement Class Member claiming a Monetary Award or Derivative Claimant Award will authorize the Claims Administrator and/or Lien Resolution Administrator, as applicable, consistent with HIPAA and other

applicable privacy laws, to verify facts and details of any aspect of the Claim Package or Derivative Claim Package and/or the existence and amounts, if any, of any Liens. The Claims Administrator or Lien Resolution Administrator, at its sole discretion, may request additional documentation, which each Settlement Class Member agrees to provide in order to claim a Monetary Award or Derivative Claimant Award.

(b)   The Claims Administrator will have the discretion to undertake or cause to be undertaken further verification and investigation, including into the nature and sufficiency of any Claim Package or Derivative Claim Package documentation, including, without limitation, as set forth in Section 10.3.

## ARTICLE IX
## Notice of Claim Determinations, Payments, and Appeals

Section 9.1   Monetary Award Determination.   Based upon its review of the Claim Package, and the results of any investigations of the Settlement Class Member's claim, the Claims Administrator will determine whether a Settlement Class Member qualifies for a Monetary Award and the amount of any such Award. In order to decide whether a Settlement Class Member is entitled to a Monetary Award, and at what level, the Claims Administrator will determine whether the Retired NFL Football Player or deceased Retired NFL Football Player has a Qualifying Diagnosis according to the Diagnosing Physician Certification, including consideration of, without limitation, the qualifications of the diagnosing physician, or in the case of a deceased Retired NFL Football Player diagnosed by a deceased physician, as set forth in Section 8.2(a)(i), according to the supporting medical records. If the Claims Administrator determines that there is a Qualifying Diagnosis, it will determine the level of Monetary Award based on the Monetary Award Grid (attached as Exhibit 3) and a review of the Diagnosing Physician Certification for the age at the time of the Qualifying Diagnosis, and will review the Claim Package, including the Claim Form and medical records reflecting the Qualifying Diagnosis, for information relating to all other Offsets, and must apply all applicable Offsets to the Monetary Award. For the avoidance of any doubt, the Claims Administrator has no discretion to make a Monetary Award determination other than as set forth above.

(a)   Evidence of NFL Employment and Participation.   To the extent that the Claims Administrator determines that the Settlement Class Member has provided in the Claim Package insufficient evidence of the Retired NFL Football Player's NFL employment and participation to substantiate the claimed Eligible Seasons, the Claims Administrator will request that the NFL Parties and Member Clubs provide any employment or participation records of the Retired NFL Football Player in their reasonable possession, custody or control, which the NFL Parties and Member Clubs will provide in good faith. The Claims Administrator will consider all of the evidence provided to it by the Retired NFL Football Player and the NFL Parties and Member Clubs in determining the appropriate number of Eligible Seasons to apply to the Retired NFL Football Player's claim. The Claims Administrator shall credit only the Eligible Seasons substantiated by the overall evidence. To the extent there is no objective evidence regarding an Eligible Season claimed by the Retired NFL Football Player

beyond his sworn statement, the Claims Administrator will take into account the reasons offered by the Retired NFL Football Player for the lack of such objective evidence in arriving at its final decision.

(i) The assertion of NFL employment and participation in more than one (1) Eligible Season, however, must be substantiated by the Retired NFL Football Player with objective evidence beyond his sworn statement, the sufficiency of which shall be in the Claims Administrator's discretion. In the event there is no objective evidence of NFL employment and participation in more than one (1) Eligible Season, the Claims Administrator may credit the Retired NFL Football Player with one (1) or fewer Eligible Seasons consistent with Section 9.1(a).

(b) <u>Timing of Monetary Award Determination</u>. The Claims Administrator will make such determination and will send a corresponding Notice of Monetary Award Claim Determination to the Settlement Class Member and the NFL Parties no later than sixty (60) days from the later of: (i) the date when a completed Claim Package that is free from all Deficiencies is received by the Claims Administrator; (ii) the date, if any, when all Deficiencies with a Settlement Class Member's Claim Package have been deemed cured by the Claims Administrator; (iii) the date, if any, on which the additional information or documentation identified in the Notice of Deficiency, if applicable, has been timely provided to the Claims Administrator; (iv) the date of a decision by a member of the Appeals Advisory Panel under Section 8.6(b); or (v) the date on which the Settlement Class Member no longer has the right to cure such Deficiencies or provide additional information or documentation, in accordance with Section 8.5; provided, however, that to the extent the volume of claims warrants, these deadlines may be extended by agreement between Co-Lead Class Counsel and Counsel for the NFL Parties, subject to approval by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof).

(c) <u>Notice Content</u>

(i) Notices of Monetary Award Claim Determination that provide an adverse determination will include a short statement regarding the reasons for the adverse determination and information regarding how the Settlement Class Member can appeal the determination, as set forth in Section 9.7. An adverse Notice of Monetary Award Claim Determination does not preclude a Settlement Class Member from submitting a Claim Package in the future for a Monetary Award should the Retired NFL Football Player's medical condition change. The Claims Administrator shall develop reasonable procedures and rules to ensure the right of Settlement Class Members to submit a Claim Package for the same or different Qualifying Diagnoses in the future, while preventing unwarranted repetitive claims that do not disclose materially changed circumstances from prior claims made by the Settlement Class Member.

(ii) Notices of Monetary Award Claim Determination that provide a determination that the Settlement Class Member is entitled to a Monetary Award will provide: (a) the net amount of that Monetary Award after application of Offsets; (b) a listing of the Offsets applied to that Monetary Award; (c) the Lien

Resolution Administrator's determination of any amount deducted from the Monetary Award to satisfy identified Liens, as set forth in ARTICLE XI; or the Lien Resolution Administrator's determination of the "holdback" amount to be deducted from the Monetary Award under which identified Liens shall be resolved, as set forth in ARTICLE XI; (d) information regarding how the Settlement Class Member can appeal the Monetary Award determination, as set forth in Section 9.7; and (e) information regarding the timing of payment, as set forth in Section 9.3.

(d) <u>NFL Parties' and Co-Lead Class Counsel's Review of Claim Packages</u>. If a Notice of Monetary Award Determination provides a determination that the Settlement Class Member is entitled to a Monetary Award, the Claims Administrator will make the Settlement Class Member's Claim Package and the review determinations available to the NFL Parties and Co-Lead Class Counsel.

Section 9.2    <u>Derivative Claimant Award Determination</u>. Based upon its review of the Derivative Claim Package, and the results of any investigations of the Derivative Claimant's claim, the Claims Administrator will determine whether a Derivative Claimant qualifies for a Derivative Claimant Award, as set forth in Section 7.3.

(a) <u>Timing of Derivative Claimant Award Determination</u>. The Claims Administrator will make such determination and will send a corresponding Notice of Derivative Claimant Award Determination to the Settlement Class Member and the NFL Parties no later than thirty (30) days from the later of: (i) the date when a completed Derivative Claim Package that is free from all Deficiencies is received by the Claims Administrator; (ii) the date when all Deficiencies with a Settlement Class Member's Derivative Claim Package have been determined by the Claims Administrator to be satisfactorily cured; (iii) the date, if any, on which the additional information or documentation identified in the Notice of Deficiency, if applicable, has been timely provided to the Claims Administrator; or (iv) the date on which the Settlement Class Member no longer has the right to cure such Deficiencies or provide additional information or documentation, in accordance with Section 8.5; provided, however, that to the extent the volume of claims warrants, these deadlines may be extended by agreement between Co-Lead Class Counsel and Counsel for the NFL Parties, subject to approval by the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof).

(b) <u>Notice Content</u>

(i) Notices of Derivative Claimant Award Determination that provide an adverse determination will include a short statement regarding the reasons for the adverse determination and information regarding how the Settlement Class Member can appeal the determination, as set forth in Section 9.7. An adverse Notice of Derivative Claimant Award Determination does not preclude a Derivative Claimant from submitting a Derivative Claim Package in the future for a Derivative Claimant Award should the Retired NFL Football Player receive a

45

Supplemental Monetary Award or succeed on an appeal of a previously denied claim for a Monetary Award.

(ii) Notices of Derivative Claimant Award Determination that provide a determination that the Settlement Class Member is entitled to a Derivative Claimant Award will provide: (a) the amount of that Derivative Claimant Award; (b) the Lien Resolution Administrator's determination of any amount deducted from the Derivative Claimant Award to satisfy identified Liens, as set forth in ARTICLE XI; or the Lien Resolution Administrator's determination of the "holdback" amount to be deducted from the Derivative Claimant Award under which identified Liens will be resolved, as set forth in ARTICLE XI; (c) information regarding how the Derivative Claimant can appeal the Derivative Claimant Award determination, as set forth in Section 9.7; and (d) information regarding the timing of payment, as set forth in Section 9.4.

(c) <u>NFL Parties' and Co-Lead Class Counsel's Review of Derivative Claim Packages</u>. If a Notice of Derivative Claimant Award Determination provides a determination that the Settlement Class Member is entitled to a Derivative Claimant Award, the Claims Administrator will make the Settlement Class Member's Claim Package and the review determinations available to the NFL Parties and Co-Lead Class Counsel.

Section 9.3    <u>Remuneration and Payment of Monetary Awards</u>.

(a) The Claims Administrator will promptly pay any Monetary Awards to Settlement Class Members who qualify under the terms of the Monetary Award Grid and all applicable Offsets after the Claims Administrator sends a Notice of Monetary Award Claim Determination; provided, however, any such payment will not occur until after the completion of the processes for (i) appealing Monetary Award determinations, as set forth in Section 9.7; (ii) auditing claims and investigating claims for fraud, as set forth in Section 10.3; (iii) identifying and satisfying Liens, as set forth in ARTICLE XI; and (iv) determining if any Derivative Claimants have filed timely, and are entitled to, Derivative Claimant Awards based on their relationship with the subject Retired NFL Football Player. Such payment shall be made consistent with Section 23.3(b)(iv) of this Settlement Agreement.

(b) In connection with a Monetary Award issued to a Representative Claimant, the Claims Administrator will abide by all substantive laws of the domicile of such Representative Claimant concerning distribution and will not issue payment until the Claims Administrator has received from the Settlement Class Member proof of such court approvals or other documents necessary to authorize payment. Where short form procedures exist concerning such distribution that do not require domiciliary court approval or supervision, the Claims Administrator is authorized to adopt those procedures as part of the claims administration process applicable to such Representative Claimant. The Claims Administrator also is authorized to adopt procedures as are approved by the Court to aid or facilitate in the payment of claims to minor, incapacitated or incompetent Settlement Class Members or their guardians.

(c) Upon the completion of the Monetary Award Fund term, as set forth in Section 6.10, the Court shall determine the proper disposition of any funds remaining in the Monetary Award Fund consistent with the purpose of this Settlement, including to promote safety and injury prevention with respect to football players and/or the treatment or prevention of traumatic brain injuries.

Section 9.4   Remuneration and Payment of Derivative Claimant Awards

(a) The Claims Administrator will promptly pay any Derivative Claimant Awards to Settlement Class Members who qualify; provided, however, any such payment will not occur until after expiration or completion of: (i) the time period for Derivative Claimants to file Derivative Claim Packages, as set forth in Section 8.3(a)(ii), has expired; (ii) the process for appealing Derivative Claimant Awards, including appeals by any other Derivative Claimants asserting claims based on the same Retired NFL Football Player, as set forth in Section 9.7; (iii) the process for auditing claims and investigating claims for fraud, set forth in Section 10.3; and (iv) the process for identifying and satisfying Liens, as set forth in ARTICLE XI. Such payment shall be made consistent with Section 23.3(b)(iv) of this Settlement Agreement.

(b) In paying a Derivative Claimant Award to a minor, the Claims Administrator will abide by all substantive laws of the domicile of such Settlement Class Member concerning distribution and will not issue payment until the Claims Administrator has received from the Settlement Class Member proof of such court approvals or other documents necessary to authorize payment. Where short form procedures exist concerning such distribution that do not require domiciliary court approval or supervision, the Claims Administrator is authorized to adopt those procedures as part of the claims administration process applicable to such Settlement Class Members. The Claims Administrator also is authorized to adopt procedures as are approved by the Court to aid or facilitate in the payment of claims to minor, incapacitated or incompetent Settlement Class Members or their guardians.

Section 9.5   Scope of Appeals.   The Claims Administrator's determination as to whether a Settlement Class Member is entitled to a Monetary Award or Derivative Claimant Award under this Settlement Agreement, and/or the calculation of the Monetary Award or Derivative Claimant Award, is appealable by the Settlement Class Member, Co-Lead Class Counsel, or the NFL Parties based on their respective good faith belief that the determination by the Claims Administrator was incorrect.

Section 9.6   Appellant Fees and Limitations

(a) Any Settlement Class Member taking an appeal will be charged a fee of One Thousand United States dollars (U.S. $1,000) by the Claims Administrator that must be paid before the appeal may proceed, which fee will be refunded if the Settlement Class Member's appeal is successful. If the appeal is unsuccessful, the fee will be paid to the Settlement Trust for transfer by the Trustee into the Monetary Award Fund.

(i) Settlement Class Members may make a hardship request to the Claims Administrator and ask that the fee of One Thousand United States dollars (U.S. $1,000) be waived for good cause. The Claims Administrator will require that the Settlement Class Member provide such financial information as may be necessary to decide the request to waive the fee, which request shall be approved or denied in the Claims Administrator's sole discretion.

(b) The NFL Parties may appeal Monetary Award or Derivative Claimant Award determinations in good faith. To the extent that Co-Lead Class Counsel believe that the NFL Parties are submitting vexatious, frivolous or bad faith appeals, Co-Lead Class Counsel may petition the Court for appropriate relief.

Section 9.7    Submissions on Appeals

(a) The appellant must submit to the Court his or her notice of appeal, using an Appeals Form to be agreed upon by Co-Lead Class Counsel and the NFL Parties and provided by the Claims Administrator, with written copy to the appellee(s) Settlement Class Member or the NFL Parties (as applicable), Co-Lead Class Counsel, and to the Claims Administrator, no later than thirty (30) days after receipt of a Notice of Monetary Award Claim Determination or Notice of Derivative Claimant Award Determination. Appellants must present evidence in support of their appeal, and any written statements may not exceed five (5) single-spaced pages in length.

(b) The appellee(s) may submit a written opposition to the appeal no later than thirty (30) days after receipt of the Appeals Form. This written opposition must not exceed five (5) single-spaced pages in length. The Court will not deem the lack of an opposition to be an admission regarding the merits of the appeal. The appellant may not submit a reply.

(c) Co-Lead Class Counsel may submit a written statement in support of or opposition to the appeal no later than fifteen (15) days after receipt of the Appeals Form or an appellee's written opposition. This written statement must not exceed five (5) single-spaced pages in length. The Court will not deem the lack of a statement to be an admission regarding the merits of the appeal. The appellant and appellee(s) may each submit a reply.

Section 9.8    Review and Decision.    The Court will make a determination based upon a showing by the appellant of clear and convincing evidence. The Court may be assisted, in its discretion, by any member of the Appeals Advisory Panel and/or an Appeals Advisory Panel Consultant. The decision of the Court will be final and binding.

(a) Appeals Advisory Panel and Appeals Advisory Panel Consultants

(i) Within ninety (90) days after the Effective Date, Co-Lead Class Counsel and Counsel for the NFL Parties will agree to, and jointly recommend to the Court for appointment, the members of the Appeals Advisory Panel

48

and the Appeals Advisory Panel Consultants. Under no circumstances may a member of the Appeals Advisory Panel or an Appeals Advisory Panel Consultant have been convicted of a crime of dishonesty, or serve, on or after the Final Approval Date, as a litigation expert consultant or expert witness in connection with litigation relating to the subject matter of the Class Action Complaint for a party, a Member Club, or an Opt Out, or his, her or its counsel. If selected and approved, under no circumstances shall an Appeals Advisory Panel member or Appeals Advisory Panel Consultant continue to serve in that role if convicted of a crime of dishonesty and/or thereafter retained as an expert consultant or expert witness in connection with litigation relating to the subject matter of the Class Action Complaint by a party, a Member Club, or an Opt Out, or his, her or its counsel.

      (ii) Co-Lead Class Counsel and Counsel for the NFL Parties will jointly retain the members of the Appeals Advisory Panel and the Appeals Advisory Panel Consultants appointed by the Court.

      (iii) Upon request of the Court or the Special Master, the Appeals Advisory Panel will take all steps necessary to provide sound advice with respect to medical aspects of the Class Action Settlement.

      (iv) The Court will oversee the Appeals Advisory Panel and the Appeals Advisory Panel Consultants, and may, in its discretion, request reports or information from the Appeals Advisory Panel or the Appeals Advisory Panel Consultants.

      (v) Compensation of the Appeals Advisory Panel and Appeals Advisory Panel Consultants, at a reasonable rate for their time agreed to by Co-Lead Class Counsel and Counsel for the NFL Parties, will be paid out of the Monetary Award Fund, except that compensation of an Appeals Advisory Panel member or Appeals Advisory Panel Consultant will be paid out of the BAP fund for reviewing and advising the Court whether a Retired NFL Football player has Level 1 Neurocognitive Impairment, Level 1.5 Neurocognitive Impairment, Level 2 Neurocognitive Impairment, or none, in cases where there are conflicting diagnoses by Qualified BAP Providers.

      (vi) Members of the Appeals Advisory Panel or the Appeals Advisory Panel Consultants may be replaced by joint motion made by Co-Lead Class Counsel and Counsel for the NFL Parties, or for cause by motion of either Co-Lead Class Counsel or Counsel for the NFL Parties, upon order of the Court. If any member of the Appeals Advisory Panel or an Appeals Advisory Panel Consultant resigns, dies, is replaced, or is otherwise unable to continue in his or her position, Co-Lead Class Counsel and Counsel for the NFL Parties will agree to and jointly recommend a new proposed member for appointment by the Court.

    (b) <u>Conflicts of Interest</u>. Within ninety (90) days after the Effective Date, Co-Lead Class Counsel, Counsel for the NFL Parties, and the Special Master will establish and implement procedures to promptly detect and resolve possible conflicts of interest between members of the Appeals Advisory Panel or Appeals

Advisory Panel Consultants, on the one hand, and an appellant or appellee(s), on the other hand. Co-Lead Class Counsel and Counsel for the NFL Parties, subject to approval of the Special Master (or the Court after expiration of the term of the Special Master and any extension(s) thereof) may modify such procedures in the future, if appropriate. For the avoidance of any doubt, employment of the Special Master by any Party as an expert in unrelated matters will not constitute a conflict of interest.

(c) Liability. The Parties, Class Counsel, Counsel for the NFL Parties, and the Special Master, and their respective Affiliates, will not be liable for any act, or failure to act, of a member of the Appeals Advisory Panel or an Appeals Advisory Panel Consultant.

## ARTICLE X
## Class Action Settlement Administration

Section 10.1    Special Master

(a)    Appointment and Oversight

(i) The Motion for Preliminary Approval of the Class Action Settlement filed by Class Counsel will request that the Court appoint, in consultation with Co-Lead Class Counsel and Counsel for the NFL Parties, a Special Master pursuant to Federal Rule of Civil Procedure 53.

(ii) It is the intention of the Parties that the Special Master will perform his or her responsibilities and take all steps necessary to faithfully oversee the implementation and administration of the Settlement Agreement. The Special Master shall be appointed for a term of five (5) years commencing on the Effective Date. The term of the Special Master shall be extended, or a new Special Master shall be appointed, for additional five-year terms for the life of the Settlement Agreement, unless the Court determines, in consultation with Co-lead Class Counsel and Counsel for the NFL Parties, that the Special Master's role is no longer necessary.

(iii) The Special Master will maintain at all times appropriate and sufficient bonding insurance in connection with his or her performance of responsibilities under the Settlement Agreement. The cost for this insurance will be paid out of the Monetary Award Fund.

(iv) The Court may, at its sole discretion, request reports or information from the Special Master. The Special Master will be responsible for reporting and providing information to the Court at such frequency and in such a manner as the Court directs. The Claims Administrator may assist with such reports if requested by the Special Master.

(v) Following the five (5) year term of the Special Master, and any extension(s) thereof, oversight of the administration of the Class Action Settlement will revert to the Court.

(b) <u>Roles and Responsibilities</u>

(i) The Special Master will, among other responsibilities set forth in this Settlement Agreement:

(1) Provide reports or information that the Court may, at its sole discretion, request from the Special Master, who will be responsible for reporting and providing information to the Court at such frequency and in such a manner as the Court directs;

(2) Oversee complaints raised by Co-Lead Class Counsel, Counsel for the NFL Parties, the BAP Administrator, Claims Administrator and/or the Lien Resolution Administrator regarding aspects of the Class Action Settlement;

(3) Hear appeals of registration determinations, if requested by the Court, as set forth in Section 4.3(a)(iv);

(4) Oversee the BAP Administrator, Claims Administrator and Lien Resolution Administrator, as set forth in Section 5.6(a)(iv), Section 10.2(a)(iv), and Section 11.1(a)(iv), and receive monthly and annual reports from those Administrators; and

(5) Oversee fraud detection and prevention procedures, and review and decide the appropriate disposition of potentially fraudulent claims as further specified in Section 10.3(i).

(c) <u>Compensation and Expenses</u>. Annual compensation of the Special Master will not exceed Two Hundred Thousand United States dollars (U.S. $200,000). The annual compensation and reasonable out-of-pocket costs and expenses of the Special Master directly incurred as a result of the performance of his or her responsibilities will be paid out of the Monetary Award Fund. Either Co-Lead Class Counsel or Counsel for the NFL Parties may challenge the reasonableness of the Special Master's out-of-pocket costs and expenses, in which case the Court will determine the reasonableness of such costs and expenses. If the Court determines that any costs and expenses are unreasonable, the Special Master will not be paid for such costs and expenses or, if such costs and expenses have already been paid, the Special Master will refund that amount to the Monetary Award Fund.

(d) <u>Replacement</u>. The Court, in its discretion, can replace the Special Master for good cause. If the Special Master resigns, dies, or is otherwise unable to continue employment in this position, Co-Lead Class Counsel and Counsel for the NFL Parties may file a motion for the appointment by the Court of a new Special Master.

(e) <u>Conflicts of Interest</u>. Within ninety (90) days after the Effective Date, Co-Lead Class Counsel, Counsel for the NFL Parties, and the Special Master will establish and implement procedures to promptly detect and resolve possible conflicts of interest between the Special Master, on the one hand, and Settlement Class