UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION<br><br>Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated*,<br><br>      Plaintiffs,<br><br>      v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>      Defendants.<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody**<br><br>Civ. Action No. 14-00029-AB |

**CO-LEAD CLASS COUNSEL'S MEMORANDUM IN SUPPORT OF MOTION OF
CLASS COUNSEL FOR RECONSIDERATION OF
<u>THE COURT'S APRIL 11, 2019 ORDER CONCERNING RULES 9 AND 10(B)</u>**

Co-Lead Class Counsel, Christopher Seeger, partially joins in the Motion by Gene Locks, Sol Weiss and Steven C. Marks ("the Locks Group")[1] requesting reconsideration of the Court's April 11, 2019 Order in so far as it adopts Rules 9 and 10(b) of the revised Rules Governing Qualified MAF Physicians.  Rules 9 and 10(b), which among other things, impose a "150-Mile Rule" for MAF examinations and a "50-Mile Rule" for MAF neuropsychological examinations should not have been adopted as mandatory provisions. Co-Lead Class Counsel requests that

---

[1] ECF No. 10582, referred to herein as the "Locks Memo."

certain revisions be made to Rules 9 and 10(b) to address the potential negative impact those rules would have on Retired Players if those mile restrictions were mandatory.

## Argument

I. **Rule 9 ("150-Mile Rule for MAF Examinations") and Rule 10(b) ("50-Mile Rule for Examining Neuropsychologists") Should Not Be Mandatory Provisions.**

The Court states in its April 11, 2019 Order that "(s)afeguarding the integrity of the claims process is crucial to implementing the settlement with honor." (4/11/19 Order at 1). Co-Lead Class Counsel wholeheartedly agrees with the Court's statement and appreciates that the revised Rules Governing Qualified MAF Physicians, including Rules 9 and 10(b), were developed by the Special Master and Claims Administrator at the Court's request, and were adopted by the Court in its April 11, 2019 Order, is an effort to further that goal. Accordingly, Co-Lead Class Counsel does not object to the revised Rules Governing Qualified MAF Physicians to the extent that any of them are necessary and tailored to achieve the desired goal.

However, the Court need not impose a mandatory "150-Mile Rule" (Rule 9) or the "50-Mile Rule (Rule 10(b)) on Retired Players to achieve the goal of "safeguarding the integrity of the claims process." As the Locks Group's motion papers highlight, appropriate safeguards to ensure the integrity of the Settlement Program are already in place (Locks Memo. at 9, 12). Specifically, the AAP's review of claims, the Audit process, the Appeals process, the Special Masters review of claims, and the recently appointed Special Investigator, are all currently in place and have been extremely effective in safeguarding the integrity of the Settlement Program. The mandatory miles restrictions imposed by Rules 9 and 10(b) simply are unnecessary.

One impetus for the adoption of Rules 9 and 10(b) may have been certain claims that were subject to the NFL's recent appeals from the Special Master's rulings. But these claims were

largely supported by Qualifying Diagnoses rendered by only two Qualified MAF Physicians who examined Retired Players who had travelled long distances for their MAF examinations. Co-Lead Class Counsel is aware of and sensitive to the issues raised in those appeals.  However, as the Court is aware, both of the Qualified MAF Physicians implicated in the appeals have been terminated from the program.  The Court should not allow the actions of two former Qualified MAF Physicians to drive the imposition of mandatory restrictions on those Retired Players who have not yet been examined through the MAF.

As the Locks Group's motion correctly points out, there are many valid reasons why a player may be willing to travel more than 150 miles to see a particular Qualified MAF Physician. (Locks Memo. at 7-8). Absent a fraud concern, there is no reason to question a Retired Player's decision to be examined by the Qualified MAF Physician of his choosing.  Rather, the focus needs to be on the accuracy of the Qualifying Diagnosis rendered by the party-approved Qualified MAF Physician, not on whether that Qualified MAF Physician's office is located within a specified radius of the Retired Player's primary residence.  There is no evidence that the accuracy of a Qualifying Diagnosis rendered by a Qualified MAF Physician in any way correlates to the distance traveled by a Retired Player for his examination. In any event, as stated earlier, if there is any issue about the validity of a Qualifying Diagnosis, regardless of where the Qualified MAF Physician and/or Examining Neuropsychologist are located, the Settlement Program already has sufficient safeguards to examine the validity of the Qualifying Diagnosis and to ensure the integrity of the process.

II. **Certain Revisions Should Be Made to Rules 9 and 10(b) Before They Are Implemented**

Two important revisions should be made to Rules 9 and 10(b) before they are implemented. First, as previously argued, the miles restrictions should not be mandatory.  Accordingly, the first

revision that should be made is to replace the word "must" with "should generally" so that Rule 9[2] would read:

> The MAF Examination of a Retired Football Player **should generally** occur in a medical office or facility by a Qualified MAF Physician whose practice is located within 150 miles of the Retired NFL Football Player's primary residence . . .

The proposed change from "must" to "should generally" would still put Retired Players on notice that they should attempt to use a "local" Qualified MAF Physician, but that they still have the right to see a Qualified MAF Physician of their choosing. If that change is not made, and it remains mandatory as opposed to a recommendation, many players will effectively lose their right to select the Qualified MAF Physician they want to use. That is because, upon information and belief, over 1,700 Retired Players live within 150 miles of **only one** Qualified MAF Physician. The recruitment of Qualified MAF Physicians and the staffing of the network of Qualified MAF Physicians was not made with such a geographic restriction in mind. Therefore, under Rule 9 as currently adopted, those 1,700+ Retired Players have absolutely no choice but to see the one "local" Qualified MAF Physician. That result is unfair to those Retired Players. The Parties never intended to force any Retired Player, let alone 1,700+ players, to use one specific Qualified MAF Physician. That is exactly what would happen if Rule 9 is implemented in its current form.

In addition, the Rule 9 mandatory restriction is contrary to the MAF process as negotiated by the Parties and approved by the NFL. Specifically, Retired Players seeking to obtain a Qualifying Diagnosis through the MAF are advised to go to the "MAF Physician Locator" tab on the portal to view a list of the nearest Qualified MAF Physician's based on the Retired Player's zip code. The whole idea behind this process, as envisioned in the Settlement Program, is that the

---

[2] The same corresponding change ("must" replaced with "should") is also proposed for Rule 10(b) and the same concerns articulated regarding Rule 9 apply with equal force to Rule 10(b).

Retired Player can select any one of the listed Qualified MAF Physicians. To prohibit Retired Players from being able to make a choice is contrary to the MAF process as agreed to by the Parties. Importantly, as distinct from the BAP examinations, Retired NFL Football Players are required to pay the cost of the MAF examinations. Thus, under the Rules, as revised, Retired Players would have no real choice in the selection of a Qualified MAF Physician, but would still be responsible for paying whatever that particular Qualified MAF Physician decides to charge.

Consistent with making the change from "must" to "should generally" discussed above, Rules 9 and 10(b) should be revised to make it clear that the Claims Administrator may not deny any claim supported by a Qualifying Diagnosis rendered by a Qualified MAF Physicians simply because the Qualified MAF Physician and/or the Examining Neuropsychologist are not located close enough to the Retired Player. Rather, the Rules should require that every Qualifying Diagnosis rendered by a Qualified MAF Physician and submitted in support of a Claim Package be reviewed on its merits. After that merits review, the Claims Administrator has the right to deny the claim if the Qualifying Diagnosis is not supported by the medical evidence. However, the Claims Administrator does not have the right to deny a claim administratively solely based on the failure to comply with Rules 9 and/or 10(b). As stated earlier, the Claims Administrator's focus must be on the accuracy of the Qualifying Diagnosis rendered by the party-approved Qualified MAF Physician, rather than the number of miles between that Qualified MAF Physician's office and the Retired Player's primary residence.

**Conclusion**

For all the foregoing reasons, the undersigned respectfully requests that the Court revise Rules 9 and 10(b) of the Rules Governing Qualified MAF Physicians in accordance with Co-Lead Counsel's request.

Dated: April 25, 2019

Respectfully submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
cseeger@seegerweiss.com
Telephone:  (212) 584-0700

***CO-LEAD CLASS COUNSEL***

## **CERTIFICATE OF SERVICE**

I, Christopher A. Seeger, hereby certify that a true and correct copy of the foregoing was served electronically via the Court's electronic filing system on the date below upon all counsel of record in this matter.

Dated: April 25, 2019                                            Respectfully submitted,

                                                                                */s/ Christopher A. Seeger*
                                                                                Christopher A. Seeger