UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION | No. 2:12-md-02323-AB<br><br>MDL No. 2323<br><br>**Hon. Anita B. Brody** |
| Kevin Turner and Shawn Wooden, *on behalf of themselves and others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>National Football League and NFL Properties LLC, successor-in-interest to NFL Properties, Inc.,<br><br>Defendants. | Civ. Action No. 14-00029-AB |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**STECKLER GRESHAM COCHRAN PLLC'S REPLY IN SUPPORT OF ITS MOTION TO RELEASE THE 5% HOLDBACK AND REQUEST FOR EXPEDITED HEARINGS**

Steckler Gresham Cochran PLLC ("SGC") on behalf of its clients, and all others similarly situated with Parkinson's, Alzheimer's, ALS, or Death with CTE (collectively, the "Undisputed Diagnoses"), files this Reply in Support of Its Motion to Release the 5% Holdback and Request for Expedited Hearings, and would show the Court as follows:

SGC's Motion to Release the 5% Holdback and Request for Expedited Hearings (the "Motion") is not untimely, waived, or merely "a partial objection to Co-Lead Class Counsel's set-aside application," as Class Counsel contends. [ECF No. 10596 at 3]. SGC filed a timely objection on March 27, 2017 [ECF No. 7353], which was never heard by this Court. Instead, more than two

years after this Court adopted Class Counsel's **provisional** set-aside, which received more than a dozen objections,[1] it has become clear that SGC's concerns, as well as several other class members' concerns, regarding the unfairness of the set-aside are justified. *See, e.g.*, [ECF Nos. 7464 at 45-47; 7353 at 1-3]. Namely, that Class Counsel continues to tie up money needed by the sickest claimants by insisting on the 5% holdback. Class Counsel has failed to show any concern for or understanding of the very ill individuals who *need* the money. Life expectancy and care are real issues wholly ignored by Class Counsel.

Since Class Counsel petitioned this Court "for an award of attorneys' fees and reimbursement of costs and litigation expenses for their work up to date in this litigation" in the form of a 5% holdback in February 2017, the nature of the NFL and Class Counsel's involvement in the claims process has become apparent: diagnoses and claims for Levels 1.5 and 2 Neurocognitive Impairment has generated nearly all of the litigation, where Class Counsel has the *opportunity* to perform work on behalf of class members in the claims settlement process, while the Undisputed Diagnoses require virtually no time, money, or work on behalf of Class Counsel and generally do not even afford Class Counsel the opportunity to perform any work.

The approval rates for the respective diagnoses provide a useful and empirical illustration:

| | |
|---:|:---|
| Death with CTE: | 62% |
| ALS: | 66% |
| Alzheimer's: | 59% |
| Parkinson's: | 74% |
| Level 2 Neurocognitive Impairment: | 19% |
| Level 1.5 Neurocognitive Impairment: | 20%[2] |

The approval rates are alarmingly higher in the Undisputed Diagnoses because the Settlement Agreement streamlined the process for those claims, essentially requiring nothing more than an

---

[1] *See* ECF Nos. 7205, 7299, 7344, 7346, 7351, 7353, 7359, 7360, 7367, 7371, 7373, 7375, 7401-1.
[2] NFL Settlement Program Summary Report (As Of 5/6/19) §§ 8, 11, attached hereto as Exhibit A.

**SGC's Reply in Support of its Motion to Release the 5% Holdback and Request for Expedited Hearings**

2

approved physicians' diagnosis of one of the four Undisputed Diagnoses for a claimant to be paid. On the other hand, diagnosing Neurocognitive Impairment is far more subjective resulting in many objections, audits, and appeals where Class Counsel may, but certainly does not have to, step in and perform actual work on behalf of those class members. Indeed, Class Counsel has only filed a total of 33 statements in the 342 appeals to date, which is less than 10%.[3]

Other statistics further support SGC's argument. As of May 6, 2019, there are 22 claims on appeal, 19 of which are for Neurocognitive Impairment.[4] There are 58 claims in audit investigation, 57 of which are for Neurocognitive Impairment.[5] There are 178 claims that have been referred to the Special Investigator by the Special Master, 175 of which are for Neurocognitive Impairment.[6] It is clear that SGC is not presupposing that the class members with the Undisputed Diagnoses "will not need to avail themselves of the appeals process, which *could* well require assistance from Class Counsel." [ECF No. 10596 at 5] (emphasis added). Instead, the numbers speak for themselves and show that the Undisputed Diagnoses are rarely appealed due to the objective, check-the-box nature of the diagnosis and claims process with respect to those particular diseases. And the numbers further show that Class Counsel only "assist" class members in the appeals process *less than ten percent of the time*. Thus, Class Counsel's argument that "the asserted lack of benefit to the [Undisputed Diagnoses] . . . class members presupposes that they will not need to avail themselves of the appeals process, which could well require assistance from class counsel[]" lacks merit. *See* [ECF 10596 at 5].

---

[3] Exhibit A, § 9.
[4] Exhibit A, § 8.
[5] *Ibid.*
[6] *Ibid.*

**SGC's Reply in Support of its Motion to Release the 5% Holdback and Request for Expedited Hearings**

3

Class Counsel also argues they are entitled to the holdback for the Undisputed Diagnoses without doing any work for those class members because, without the creation of the Settlement's implementation structure, no class member could benefit from the Settlement. [ECF 10596 at 5]. However, Class Counsel has already been compensated more than $100 million for the implementation of the Settlement Agreement. There has been $660,937,749 in notices of monetary awards to date, which Class Counsel insists they are entitled to 5% of, or more than $33,000,000, for essentially performing no work.[7]

Class Counsel attempts to justify this windfall in the declaration of Christopher A. Seeger [ECF No. 10596-1] by pointing out *two* occasions in which Class Counsel has obtained favorable results for class members with Undisputed Diagnoses. [ECF No. 10596-1 at 2]. Class Counsel notes that his office has assisted class members with Undisputed Diagnoses "who do not have counsel." *Id.* Class Counsel's office presumably has a contingency fee or other agreement with those class members. Thus, Class Counsel is claiming that they are entitled to the monies received by representing those individual class members plus a 5% holdback of their claim value.

The fact of the matter is Class Counsel insists it should be compensated to the tune of $33 million for performing little to no work. While Class Counsel's position is remarkably ambitious, this Court cannot, in good conscience, allow such a windfall.

Dated: May 10, 2019                                   Respectfully submitted,

                                                      /s/ *Dean Gresham*
                                                      Dean Gresham (TX Bar No. 24027215)
                                                      Bruce W. Steckler (TX Bar No. 00785039)
                                                      Stuart Cochran (TX State Bar No. 24027936)
                                                      **STECKLER GRESHAM COCHRAN, PLLC**
                                                      12720 Hillcrest Rd., Suite 1045

---

[7] Exhibit A, § 11.

**SGC's Reply in Support of its Motion to Release the 5% Holdback and Request for Expedited Hearings**

Dallas, Texas 75230  
Telephone: (972) 387-4040  
Facsimile: (972) 387-4041  
dean@stecklerlaw.com  
bruce@stecklerlaw.com  
stuart@stecklerlaw.com  

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Reply in Support of Motion to Release the 5% Holdback and Request for Expedited Hearings* was served on all counsel of record via the Court's ECF system on May 10, 2019.

/s/ *Dean Gresham*  
Dean Gresham