# Exhibit 1

# RULES GOVERNING QUALIFIED MAF PHYSICIANS

## TITLE I: INTRODUCTION

**Rule 1. The Purpose of These Rules.** These Rules govern the operation and implementation of the network of Qualified MAF Physicians in the Settlement Program established under Section 6.5(a) of the Settlement Agreement, which requires the Claims Administrator to "establish and maintain a list of Qualified MAF Physicians eligible to provide Qualifying Diagnoses" and that "each Qualified MAF Physician shall be approved by Co-Lead Class Counsel and Counsel for the NFL Parties." The Special Masters and the Claims Administrator acknowledge that for the remaining 63-year life of the Settlement Program, the vast majority of Claims will derive from an MAF Examination, and that, therefore, the Settlement Program cannot exist without the voluntary participation of Qualified MAF Physicians. The Special Masters and the Claims Administrator have a responsibility to ensure that Retired NFL Players continue to have access to quality physicians at costs that are not prohibitive.

**Rule 2. Adoption of These Rules.** The Special Masters have adopted these Rules in the exercise of their duties pursuant to their appointment by the Court in its July 13, 2016 Order (Document 6871). The Special Masters may amend these Rules at any time *sua sponte* or after request by Co-Lead Class Counsel, the NFL Parties or the Claims Administrator and such input from Co-Lead Class Counsel, the NFL Parties and the Claims Administrator as the Special Masters deem appropriate.

**Rule 3. Definitions Used in These Rules.** All capitalized terms used in these Rules have the meanings given to them in the Settlement Agreement. In addition:

(a): "BAP Test Battery" means the neuropsychological test battery prescribed in Ex. 2 to the Settlement Agreement used in the Baseline Assessment Program.

(c) "Claim" means any Claim Package (or portion of a Claim Package) submitted to the Claims Administrator seeking or relating to a Monetary Award or Supplemental Monetary Award, or a Derivative Claim Package (or any portion of a Derivative Claim Package) submitted to the Claims Administrator seeking a Derivative Claimant Award.

(d) "Examining Neuropsychologist" means the neuropsychologist to whom a Qualified MAF Physician has referred a Retired NFL Football Player for neuropsychological testing and evaluation or the neuropsychologist who conducted previous neuropsychological testing on the Retired NFL Football Player on which a Qualified MAF Physician is permitted to rely under the Settlement Agreement, these Rules or as directed by the Claims Administrator.

(e): "MAF Examination" means the in-person examination and evaluation of a Retired NFL Football Player by a Qualified MAF Physician for the purpose of an independent diagnosis and the other actions required by these Rules.

-1-

(f) "MAF Steering Committee" means the advisory group of up to 10 Qualified MAF Physicians described in Rule 24.

(g) "Portal" means the online system created by the Claims Administrator for the exchange of materials and information between Qualified MAF Physicians and the Claims Administrator in the Settlement Program.

(h) "Settlement Agreement" means the Amended Class Action Settlement Agreement dated as of June 25, 2014, as amended on February 13, 2015 (the "Settlement Agreement") and approved in the Court's May 8, 2015 Amended Final Approval. Order and Judgment (Document 6534).

(i) "Settlement Program" means the program for benefits for Settlement Class Members established under the Settlement Agreement.

(j) "Special Master" and "Special Masters" mean any one or both of the two Special Masters appointed by the Court in its July 13, 2016 Order (Document 6871) or appointed in any subsequent Order of the Court.

## TITLE II: ENGAGEMENT AND TRAINING

**Rule 4. Execution of Participating Qualified MAF Physician Agreement.** The Qualified MAF Physician must sign the Participating Qualified MAF Physician Agreement and return it to the Claims Administrator within 60 days after the Claims Administrator sends the Agreement to the Qualified MAF Physician, unless the Claims Administrator extends that period.

**Rule 5. Required Education Before Rendering Services as a Qualified MAF Physician.** The Claims Administrator will adopt and issue such checklists, newsletters, guidance documents, training materials and other informational materials and methodologies as it determines will assist Qualified MAF Physicians in the understanding and application of the Settlement Agreement and compliance with its terms. Before conducting MAF Examinations of any Retired NFL Football Players, a Qualified MAF Physician must:

(a) Review and become familiar with: (1) these Rules; (2) the Qualified MAF Physician Manual; and (3) any other materials0 provided by the Claims Administrator; and

(b) Participate in orientation and training sessions as directed by the Claims Administrator.

**Rule 6. Continuous Education.** A Qualified MAF Physician must participate in ongoing and refresher training at the direction of the Claims Administrator to maintain understanding of the Settlement Program diagnostic criteria and learn about developments in the Program affecting service as a Qualified MAF Physician. The Claims Administrator will attempt to provide courses that qualify for continuing medical education (CME) credits in the Qualified MAF Physician's jurisdiction.

## TITLE III: GENERAL PROCEDURES

**Rule 7. Publication of Status as a Qualified MAF Physician.** A Qualified MAF Physician may publicize his or her status as a Qualified MAF Physician in announcements, on a website and in promotional materials, in a professional manner and using content approved by the Claims Administrator or as approved by the Special Masters. Others may use such content to publicize the Qualified MAF Physician network and Qualified MAF Physicians with the permission of the Special Masters. No person or party other than the National Football League or appropriate Member Club may make any use of the logos or other tradename or trademarked materials of the National Football League or any Member Club.

**Rule 8. Scheduling of MAF Examinations with Settlement Class Members.** Except as modified by these Rules, a Qualified MAF Physician may follow his or her normal policies for scheduling, sending reminders and communicating with the Settlement Class Member relating to an MAF Examination.
To implement the specific recommendation made by Seeger Weiss LLP:

**Rule 9. 150-Mile Rule for MAF Examinations.** The Claims Administrator and Special Masters encourage Retired NFL Football Players to obtain an MAF Examination in a medical office or facility by a Qualified MAF Physician located within 150 miles of the Retired NFL Football Player's residence. There are many reasons for this advice, not least of which is the medical and health benefit to the Retired Player of returning to that MAF physician for re-evaluation and treatment in the future. Therefore, choosing an MAF physician geographically close is a help, not a hindrance to the Retired Player. Many Retired Players will not receive a Qualifying Diagnosis upon a first examination. Rather, the neurodegenerative diseases from which some Retired Players suffer are progressive in nature and require careful monitoring over time. The overall purpose of the Settlement and MAF Program is to facilitate and encourage the medical monitoring process. The 150-Mile Rule is not mandatory but encouraged for the following reasons:

   (a) A Qualified MAF Physician located reasonably close to a Retired Player's home is more easily accessible to the Retired Player over time.

   (b) Establishing a Doctor-Patient Relationship with an MAF physician who is reasonably close geographically will help create a long-term medical care relationship that should and often does help the Retired Player.

   (c) Every MAF Qualifying Diagnosis, regardless of location, shall be reviewed on its merits, with a focus on the accuracy of the diagnosis. The number of miles between the Qualified MAF Physician's office and the Retired NFL Player's primary residence shall be irrelevant.

**Rule 10. Neuropsychological Testing.**

   **(a) Appropriate Neuropsychologists:** If neuropsychological testing is required as part of the MAF Examination of a Retired NFL Football Player, the Qualified MAF Physician should use an Examining Neuropsychologist who: (1) is a Qualified BAP

-3-

Provider; or (2) the Claims Administrator previously has approved use of the neuropsychologist by the Qualified MAF Physician as an Examining Neuropsychologist.

**(b): Rule for Examining Neuropsychologists:** The examination by an Examining Neuropsychologist must occur in an office or medical facility of that practice. An Examining Neuropsychologist may perform the examination in a location other than his or her regular practice as long as that location is used by another neuropsychologist or neurologists approved under the BAP or MAF programs.

**(c) Previous Neuropsychological Testing:** If the Qualified MAF Physician receives results of prior neuropsychological testing performed by a Qualified BAP Provider, the testing must have been performed within one year before the date of the Qualifying Diagnosis. If the Qualified MAF Physician receives results of neuropsychological testing performed by a neuropsychologist other than a qualified BAP the Qualified MAF Physician must contact the Claims Administrator before using the results when rendering a Qualifying Diagnosis.

**(d) Use by a Qualified MAF Physician of Reports from the Examining Neuropsychologist:** A Qualified MAF Physician is to consider the conclusions of an Examining Neuropsychologist but is to determine what weight to be given to them, based upon the Qualified MAF Physician's sound medical judgment. If the Qualified MAF Physician disagrees with the conclusions of the Examining Neuropsychologist, the Qualified MAF Physician should confer with the Examining Neuropsychologist, make a diagnosis based on his/her sound medical judgment, and explain the basis of the diagnosis in his/her diagnostic report.

**Rule 11. Information on All MAF Appointments.** A Qualified MAF Physician will provide the Claims Administrator information about each MAF Examination, including the Retired NFL Football Player's name, the date of the appointment and the result of the appointment, including whether he or she found a Qualifying Diagnosis or no diagnosis, what the diagnosis was, if any, whether additional testing is needed before a diagnosis can be rendered, and such other information and records as required by the Claims Administrator. These records shall remain confidential. Under no circumstances shall any of these medical records be made available to the Parties, except to the extent they become available separately though a filed claim by the Retired Player.

**Rule 12. Information on Charges and Insurance.** The Qualified MAF Physician will provide to the Claims Administrator complete, accurate and current information regarding: (a) the fee and types of expenses charged by the Qualified MAF Physician for an MAF Examination; (b) whether the Qualified MAF Physician accepts insurance for an MAF Examination; and (c) whether the fees and charges vary depending on whether the Retired NFL Football Player has insurance or is self-pay and, if so, in what respects.

**Rule 13. Avoidance of Questionable Practices.** A Qualified MAF Physician must perform all actions relating to the Settlement Program to the best of his or her professional ability and integrity and avoid any impropriety or the appearance of

-4-

impropriety. In addition to that general standard, a Qualified MAF Physician specifically cannot:

(a) Accept from a Settlement Class Member or his or her lawyer, law firm or any other person or entity any payment (except for the provision of services rendered), gifts, trips, dinners, entertainment, or anything else of value that could be perceived as a conflict of interest;

(b) Be influenced in his or her methodology for performing MAF examinations or rendering diagnoses by a Settlement Class Member's lawyer, law firm or any other person or entity;

(c) Communicate solely with a Settlement Class Member's lawyer, law firm or any other person or entity without the permission of the Settlement Class Member, except with regard to administrative items such as scheduling or medical record requests.;

(d) Predict, guarantee or assure the Settlement Class Member or his or her lawyer, law firm or any other person or entity, before examining the Retired NFL Football Player, that he or she will render a Qualifying Diagnosis;

(e) Enter into an agreement, contract, business or financial arrangement with a lawyer, law firm or any other person or entity regarding the evaluation of a Settlement Class Member other than for the payment of the usual and customary charge for the medical examination;

(f) Sign a Diagnosing Physician Certification Form for a Retired NFL Football Player whom he or she did not personally examine;

(g) Allow a Settlement Class Member or his or her lawyer, law firm or any other person or entity to complete a Diagnosing Physician Certification Form on behalf of a Qualified MAF Physician or for the Qualified MAF Physician to sign, except to the extent the work is administrative and performed under the instruction and oversight of the MAF Physician;

(h) Refer or recommend a lawyer, law firm or any other representative or entity to a Settlement Class Member;

(i) Use the information learned during an MAF Examination in his or her research, writing, or other professional activities without the express prior written permission from the Claims Administrator;

(j) Conduct an MAF Examination at a location other than a standard treatment or diagnosis setting *(e.g.,* hotel rooms) without the express prior written permission from the Claims Administrator; or

(k) Conduct an MAF Examination or render any diagnosis on a Retired NFL Football Player represented by a lawyer or law firm for whom or for which the Qualified MAF Physician provides services as a consulting or testifying expert witness, without prior

permission, which shall not be unreasonably withheld, from the Claims Administrator.

A Qualified MAF Physician who engages in any of the actions prohibited by this Rule must report them to the Claims Administrator immediately. After considering such report and any such information the Claims Administrator receives in any manner, the Claims Administrator may terminate the Qualified MAF Physician immediately from participating in the Program.

## TITLE IV: PERFORMANCE OF MAF EXAMINATIONS

**Rule 14. MAF Examinations of Retired NFL Football Players.** A Qualified MAF Physician must perform MAF Examinations in accordance with: (a) the Settlement Agreement, including the Injury Definitions in Exhibit 1 to the Settlement Agreement; (b) these Rules; (c) the Qualified MAF Physician Manual and any other instructions and materials provided by the Claims Administrator; and (d) sound medical judgment. A Qualifying Diagnosis rendered by a Qualified MAF Physician must comply with (a) through (d) of this Rule and must be based on the Qualified MAF Physician's independent assessment of the Retired NFL Football Player and analysis of any testing results and applicable medical and other records concerning the Retired NFL Football Player.

**Rule 15. Employment Activities of the Retired NFL Football Player.** As part of an MAF Examination, a Qualified MAF Physician must obtain from the Retired NFL Football Player and any person serving as an informant providing information about the Retired NFL Football Player complete information regarding any employment and business activities in which the Retired NFL Football Player is involved at the time of the MAF Examination and/or during the five years preceding the date of the MAF Examination.

**Rule 16. Activities of the Retired NFL Football Player Outside the Home.** As part of an MAF Examination, a Qualified MAF Physician must obtain from the Retired NFL Football Player and any person serving as an informant providing information about the Retired NFL Football Player complete information regarding any social, community, recreational or other activities by the Retired NFL Football Player outside the home around the time of the MAF Examination, whether these activities have changed over the five years preceding the date of the MAF Examination and, if so, how they have changed. An informant must explain in detail the informant's relationship with the Retired NFL Football Player.

## TITLE V: QUALIFYING DIAGNOSES

**Rule 17: Submissions to the Claims Administrator on a Qualifying Diagnosis.** If the Qualified MAF Physician determines that the Retired NFL Football Player has Qualifying Diagnosis, the Qualified MAF Physician must document the Qualifying Diagnosis and submit to the Claims Administrator: (a) a completed and signed MAF Diagnosing Physician Certification form; and (b) all medical records supporting the Qualifying Diagnosis, including: (1) a report summarizing and explaining the Qualified MAF Physician's evaluation of the Player, the conduct of the MAF Examination and the

basis for the finding of a Qualifying Diagnosis; (2) any CDR questionnaire/worksheet completed by the Qualified MAF Physician or the neuropsychologist for evaluating the Player's functional impairment; (3) an documentary evidence or third-party sworn affidavit corroborating the Player's functional impairment that the Qualified MAF Physician reviewed in making the diagnosis; (4) any neuropsychological testing evaluation the Qualified MAF Physician reviewed and relied on to make the diagnosis; (5) any historical medical records from other healthcare providers and any other records and materials the Qualified MAF Physician reviewed and relied on to make the diagnosis; (6) any other imaging or test results the Qualified MAF Physician reviewed and relied on to make the diagnosis; (7) such other explanations and materials as the Claims Administrator may reasonably require in connection with all MAF Examinations or with respect to a particular MAF Examination. Each Qualified MAF Physician must preserve all supporting medical records relating to the Qualifying Diagnosis for the longer of (a) 10 years after the date of the examination resulting in the Qualifying Diagnosis or (b) the period of time required under applicable state and federal laws.

**Rule 18: Provision of Results to the Retired NFL Football Player.** Upon the request of a Retired NFL Football Player or his authorized representative or attorney, a Qualified MAF Physician will give a copy of the MAF Diagnosing Physician Certification form and related medical records to the requesting party.

## TITLE VI: ADDITIONAL PROCEDURES FOR LEVEL 1.5 AND LEVEL 2 QUALIFYING DIAGNOSES

**Rule 19. Neuropsychological Testing Used for Qualifying Diagnoses of Level 1.5 Neurocognitive Impairment or Level 2 Neurocognitive Impairment.** If a Qualified MAF Physician determines that the Retired NFL Football Player has a Qualifying Diagnosis of Level 1.5 or Level 2 Neurocognitive Impairment, the neuropsychological testing evaluation submitted to the Claims Administrator on the Retired NFL Football Player must identify the tests that were administered by the Qualified MAF Physician and/or the Examining Neuropsychologist and must include raw scores, scaled scores and T scores from those tests.

**Rule 20. Qualifying Diagnoses that Deviate from the BAP Diagnostic Criteria.** To the extent that a Qualified MAF Physician and/or the Examining Neuropsychologist making a Qualifying Diagnosis of Level 1.5 or Level2 Neurocognitive Impairment uses diagnostic criteria that differ from those set forth in the Settlement Agreement for Level 1.5 (*i.e.*, early dementia) or Level 2 (*i.e.*, moderate dementia) Neurocognitive Impairment diagnosed in the Baseline Assessment Program, the Qualified MAF Physician must explain in his or her written diagnostic report why in his or her judgment the diagnosis rendered is generally consistent with the BAP diagnostic criteria and BAP neuropsychological test protocol. Under FAQ 100, the "generally consistent" standard allows deviation from the BAP diagnostic criteria and BAP neuropsychological protocol. Under this new rule, the MAF physician is required to explain, for example:

(a) why the diagnostic result is "generally consistent" with BAP diagnostic criteria, even though it deviates from the exact scoring system required under the BAP Test Battery;

    **(b)** Why the diagnostic result is "generally consistent" with BAP diagnostic criteria even though the neuropsychological test battery administered to the Retired NFL Football Player was not exactly and precisely the same as the BAP Test Battery and/or

    **(c)** Why performance validity test results, in substance and/or in scoring, were not exactly and precisely the same as required by the BAP test battery, but the MAF physician determined that the test results were valid.

If, for any reason, the Claim Package presents other matters that the Claims Administrator determines deviate from the diagnostic criteria set forth in the BAP Injury Definitions, the Claims Administrator may request additional information and an explanation from the MAF physician regarding those matters. This Rule 20 recognizes that successful implementation of the Settlement requires that MAF physicians have the freedom to use their best clinical judgment in evaluating a Retired Player and, therefore, nothing in this Rule 20 or in any of these Rules shall give the Claims Administrator, AAP, or the MAF Steering Committee, the discretion to unreasonably burden MAF physicians in the performance of their obligations and in the exercise of their sound medical judgment.

## TITLE VII: ASSISTANCE BY THE CLAIMS ADMINISTRATOR

**Rule 21. Analysis of Claims Based on Diagnoses from Qualified MAF Physicians.** The Claims Administrator monitors Claim Packages received based on Qualifying Diagnoses made by Qualified MAF Physicians to assess and assist with compliance with the Settlement Agreement and these Rules.

**Rule 22. Assistance by the Claims Administrator in the Operation of the Network of Qualified MAF Physicians.** The Claims Administrator assists in the operation of the network of Qualified MAF Physicians by these actions:

    **(a) Portal Activity:** Monitors the use by each Qualified MAF Physician of his or her Portal with the Claims Administrator, provision of appointment information, scheduled and reported appointments, and the other matters covered by these Rules.

    **(b) Complete Claim Packages:** Analyzes any questions raised in its Claims Review regarding provision by Qualified MAF Physicians of complete materials and explanations on Qualifying Diagnoses and other matters affecting compliance with the Settlement Agreement and these Rules.

    **(c) Claim Outcomes:** Analyzes the outcomes in Claims Review, Audit and Monetary Award Appeals on all diagnoses made by a Qualified MAF Physician and any feedback from the AAP and AAPC on any claims they have reviewed involving Qualifying Diagnoses made by Qualified MAF Physicians.

    **(d) Public Information:** Monitors public statements, publications, or general mentions about the Qualified MAF Physicians on the internet and investigates

potential violations of the Participating Qualified MAF Physician Agreement or ethical issues.

**(e) Inquiries from Settlement Class Members:** Follows up on questions from Settlement Class Members and their representatives regarding the operation of the network of Qualified MAF Physicians.

**(f) Issues Raised by the Court, Special Masters or Parties:** Follows up on questions and suggestions regarding scheduling, availability, or other aspects of the delivery of services by Qualified MAF Physicians as raised by the Court, Special Masters, Co-Lead Class Counsel and/or counsel for the NFL Parties.

**Rule 23: MAF Advice.** Two or more members of the MAF Steering Committee, set forth below in Rule 24, may serve from time to time to provide the Claims Administrator advice and assistance on medical issues arising in the diagnostic work submitted by other Qualified MAF Physicians in connection with Claims. The Claims Administrator shall designate the MAF physicians based on their demonstrated expertise in the MAF program.

**Rule 24: MAF Steering Committee.** The Claims Administrator may be assisted by a group of not more than 10 Qualified MAF Physicians who serve as the Claims Administrator's MAF Steering Committee to render advice and assistance on providing peer-to-peer feedback to Qualified MAF Physicians and suggestions to the Claims Administrator on how to improve the operations and performance of the network of Qualified MAF Physicians. The MAF Steering Committee is appointed by and works at the discretion of the Claims Administrator, as overseen by the Special Masters.

### Rule 25: Follow-Up Actions with a Qualified MAF Physician.

**(a) Additional Guidance:** If an operational or performance issue identified by the Claims Administrator is one on which the Qualified MAF Physician may benefit from additional guidance or training, the Claims Administrator reviews the matter with him or her and provides any needed refresher training or instructions, with input and involvement by a member of the AAP Leadership Council and/or the MAF Steering Committee at the sole discretion of the Claims Administrator. Involvement by the selected MAF physicians and/or the MAF Steering Committee shall be limited to medical issues only, and at no time shall any member of the MAF Leadership Council and/or the MAF Steering Committee attempt to pressure the Qualified MAF Physician or second-guess a clinical determination. Such training may be done live in-person, by phone, or online, depending on the issues and physician involved. If the Qualified MAF Physician is also a Qualified BAP Provider, the Claims Administrator consults with the BAP Administrator on all matters involving that physician to coordinate the Claims Administrator's analysis and response.

**(b) Changes by the Qualified MAF Physician:** If, after such consultation or training described in Rule 25(a) occurs, a Qualified MAF Physician determines he or she would like to change a diagnosis already made, the Claims Administrator may place an MAF Monitoring Hold on the claim to stay issuing notices or denials or payments on the claim. Under this Rule 25, it is the responsibility of the Claims

-9-

Administrator to consult, instruct, and/or train the Qualified MAF Physician **before** granting a Monetary Award. After receiving any such changes from the Qualified MAF Physician, the Claims Administrator will process the claim accordingly. Neither the Claims Administrator, the AAP Leadership Council, nor the MAF Steering Committee may at any time direct a Qualified MAF Physician to alter a diagnosis or to render a particular diagnosis, and if pressure to alter or determine a diagnosis occurs, then the Claimant and/or the Qualified MAF Physician may appeal to the Special Masters either by personal letter or through the Claimant's personal representative or attorney.

**Rule 26. Suspension of a Qualified MAF Physician.** If the Claims Administrator determines there is a need to do so, the Claims Administrator may suspend the Qualified MAF Physician from participation in the Program for a period of up to 90 days by sending written notice of suspension to the Qualified MAF Physician. During the suspension period, the Claims Administrator will add a notation to the Qualified MAF Physician's name on the list of Qualified MAF Physicians posted on the Settlement Website to explain that the Qualified MAF Physician is suspended and is not authorized to make Qualifying Diagnoses or sign Diagnosing Physician Certification Forms as a Qualified MAF Physician while suspended. The Claims Administrator will not accept any Qualifying Diagnoses based on examinations during a suspension period. Any Settlement Class Members the Qualified MAF Physician sees or communicates with during this period of suspension must be informed that his or her privileges have been suspended and that he or she is not qualified to render Qualifying Diagnoses in support of Claims. On or before the end of the suspension period, the Claims Administrator will restore the Qualified MAF Physician to active status on the posted list or take such other action as the Claims Administrator determines appropriate, except that the Claims Administrator may not damage the reputation of the Qualified MAF Physician, or a former Qualified MAF Physician, except to report any criminal or fraudulent behavior to the State Medical Board.

**Rule 27: Termination of a Qualified MAF Physician.** The Participating Qualified MAF Physician Agreement provides that either party to that Agreement may in its sole discretion terminate the Agreement by providing 30 days' prior written notice to the other party. Under this provision, the Claims Administrator may terminate the Qualified MAF Physician from participation in the Program by giving the Qualified MAF Physician a written notice with a termination date 30 days after the date of the notice. In that instance, the Claims Administrator adds a notation to the Qualified MAF Physician's name on the list of Qualified MAF Physicians posted on the Settlement Website to explain that the physician's appointment as a Qualified MAF Physician will end on the termination date. The Participating Qualified MAF Physician Agreement also allows the Claims Administrator to terminate a Qualified MAF Physician immediately upon a finding of fraudulent diagnoses, as determined by the Special Masters after the Qualified MAF Physician has had fair opportunity to be heard. In the event of fraud, the Claims Administrator must notify any Claimant who is affected by the determination and give the Claimant, his personal representative, and his attorneys the option to either withdraw his Claim or permit review, in accordance with the above Rules, by the Claims Administrator. Any Monetary Award claim that has been paid already may not be reviewed or disturbed, but the Claims Administrator has discretion to review a diagnosis by a terminated Qualified MAF Physician on any Monetary Award claim that has not

been paid to determine whether the Settlement Class Member qualifies for a Monetary Award and then issue such notices as are appropriate.